```
                    UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


In the Matter of:             :    Case No, 07-11047
                              :
AMERICAN HOME MORTGAGE        :    Wilmington, Delaware
HOLDINGS, INC., a Delaware    :    August 27, 2008
corporation, et al.,          :    10:00 a.m.
         Debtors.             :
------------------------------


                      TRANSCRIPT OF SALE HEARING
              BEFORE THE HONORABLE CHRISTOPHER SONTCHI
                  UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtors:              SEAN MATTHEW BEACH, ESQ.
                          Young, Conaway, Stargatt & Taylor
                          1000 West Street, 17th Floor
                          Wilmington, Delaware  19801

For Creditors Committee:  MARK POWER, ESQ.
                          Hahn & Hessen
                          488 Madison Avenue
                          New York, New York  10022

Audio Operator:           Al Lugano

Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P.O. Box 129
                          Gibbsboro, New Jersey  08026-0129
                          (856) 435-7172
                          FAX:  (856)  435-7124
                          EMAIL:  dianadoman@comcast.net
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1        COURTROOM DEPUTY:  All rise.

2        THE COURT:  Please be seated.  Sorry for the delay.
3   But everybody is billing except Mr. Harrison, so --

4        MR. BEACH:  Good morning, Your Honor.  May it please
5   the Court, Sean Beach from Young Conaway on behalf of the
6   debtors.  Your Honor, we have a few items on the agenda today.
7   The first item -- well, all items are adjourned, except for
8   the last -- I'm sorry, let me step back.

9        The motion by AH Acquisition for allowance of an
10  admin claim has been adjourned till September 15th, and the
11  debtors and the committee have an objection deadline of
12  September 10th.  That's going forward on the 15th as a status
13  conference.  The parties are going to be talking beforehand to
14  see if they can agree on a consensual scheduling order in
15  connection with that motion.

16       Item number 2, Your Honor, has been adjourned until
17  September 15th.  My agenda appears to skip to item number 4.
18  I believe we have a numbering issue there, but a certificate
19  -- that's the 9019 motion which Your Honor approved yesterday,
20  I believe.

21       Item number 5, Your Honor, is the first lien
22  foreclosure motions.  And I believe certification of counsel
23  has been filed with respect to those.  Which brings
24  us --

25       THE COURT:  Is that your -- was that in your C and O

1  notebook?

2       MR. BEACH: Your Honor, I -- I don't know for sure,
3  but I can check.

4       THE COURT: I don't --

5       MR. BEACH: I think usually the --

6       THE COURT: I haven't gotten that yet, so --

7       MR. BEACH: Okay. I'll -- I'll check when I get
8  back to the office. But I -- I believe those are usually
9  submitted by counsel for --

10      THE COURT: Yes, Ms. Doughty usually sends them
11 over, doesn't she? Or --

12      MR. BEACH: I -- I believe so, yeah.

13      THE COURT: All right. Well, I -- I don't recall
14 getting it, so we'll tentatively continue it to September
15 15th. But, obviously, if I receive the certification, I'll --
16 I'll have a look at it.

17      MR. BEACH: Okay. I'll check on that, Your Honor.
18 Thank you. And that brings us to the last item on the agenda
19 today, Your Honor, which the sale motion with respect to the
20 debtors' performing loans or a majority of the debtors'
21 performing loans.

22      The debtors filed a motion on July 16th. Sale
23 procedures were approved at the hearing on August 5th. There
24 was a deadline to select a stalking horse bidder of August
25 12th. And pursuant to those procedures, the debtors' selected

1  Vantium Capital Markets, L.P. as the stalking horse bidder for
2  this pool of loans.  The final bid deadline for -- for these
3  loans was on August 22nd.
4      And while the debtors had received over 25 parties
5  signing non-disclosure agreements and conducting due
6  diligence, no parties submitted a qualified bid above the
7  stalking horse bid that was submitted by Vantium Capital.  As
8  a result of that, the -- and in consultation with the
9  Committee, the debtors and the Committee determined to cancel
10 the auction which was scheduled for August 26th and are moving
11 forward with the sale to Vantium Capital today, Your Honor.
12     THE COURT:  Okay.
13     MR. BEACH:  With respect to the stalking horse bid,
14 the debtors believe that the bid by Vantium is the highest and
15 best price for these mortgage loans.  We -- the debtors have
16 marketed these mortgage loans and received a number of
17 expressions of interest but, again, no parties submitted
18 qualified bids.
19     The pool consists of approximately 235 mortgage
20 loans.  And the purchase price by Vantium is a blended average
21 purchase price of 54 percent of the total unpaid principle
22 balance of 35.3 million.  As of the cutoff date of July 31,
23 2008, Your Honor --
24     THE COURT:  And these are performing loans?
25     MR. BEACH:  Yes, they are, Your Honor.  These --

1  this is, essentially, a scratch-and-dent pool.  These are

2  performing loans that were -- were purchased or re-purchased

3  by the debtors pursuant to loan sales that occurred prior to

4  the petition date.  And given the current market, the debtors

5  believe that this is the best price that we can get for these

6  performing loans at this point.

7           THE COURT:  The market is still soft?

8           MR. BEACH:  I believe it is, Your Honor.  And some

9  of these loans actually had turned non-performing and they're

10 still being purchased by Vantium, but I believe 10 or 12 or so

11 of these did turn non-performing --

12          THE COURT:  All right.

13          MR. BEACH:  -- during the course of this sale.  The

14 anticipated purchase price that would result from the sale of

15 these 235 loans is approximately 19.1 to $19.5 million,

16 depending on some purchase price adjustments.  However, Your

17 Honor, there are 22 loans at this point that the parties agree

18 they still need to work out some document issues.

19          With respect to those loans, under the APA, there is

20 a provision that says that the proceeds with respect to those

21 loans will be placed in escrow for a period of 30 days while

22 the parties try to work that out, and that the proceeds from

23 the sale of those 22 loans can be released as the parties work

24 it out through the escrow arrangement.

25          The -- so the debtors believe at closing tomorrow

1   the -- they will receive approximately 16 million in proceeds
2   directly and another 3 to 3.2 million will be placed in escrow
3   in connection with -- or under the terms of the APA.  Your
4   Honor, the -- these loans are subject to the liens of the DIP
5   lender, and so the -- at least the majority, if not all of the
6   proceeds that will be received from this sale will be used to
7   pay down the DIP.
8           Unless Your Honor has additional questions for me,
9   what I would propose to do is, Mr. Volo (phonetic) is in the
10  courtroom today, and I would propose to do a brief proffer of
11  his testimony in support of the sale to Vantium.
12          THE COURT:  That will be fine.  Just back up a bit.
13  The entire proceeds go to the DIP; is that correct?
14          MR. BEACH:  I believe that's right, unless -- as we
15  stand here today, the outstanding balance on the DIP exceeds
16  what we will get --
17          THE COURT:  What is the outstanding balance?
18          MR. BEACH:  I believe it's approximately 24 million.
19          THE COURT:  All right.  Any objection to the use of
20  a proffer?  Any pending objections, by the way?
21          MR. BEACH:  No, Your Honor.  We had a discussion
22  with the Office of the United States Trustee, just to confirm
23  that the 363-O language and the consumer information language
24  was in the order, and it is in the order.
25          THE COURT:  All right.  You may proceed with your

1  proffer.

2  MR. BEACH: If Mr. Volo would testify today, he
3  would testify that he is the senior vice president of Capital
4  Market's risk management for American Home Mortgage
5  Corporation and has been with the company in that capacity
6  since November 2005.

7  Mr. Volo received a bachelor of science degree in
8  finance from St. John's University in 1986. In his capacity
9  as senior vice president of Capital Market's risk management
10 with the company, Mr. Volo's responsibilities included, among
11 other things, overseeing the management and/or sale of certain
12 mortgage loans and the management of the risk associated with
13 those loans.

14 Additionally, Mr. Volo has worked in the banking and
15 mortgage lending industry for approximately 22 years. Prior
16 to joining American Home, Mr. Volo also worked for 19 years as
17 the senior vice president in risk management with JP Morgan
18 Chase.

19 Mr. Volo would testify that he has reviewed and is
20 familiar with the sale procedures order, the sale procedures
21 and sale motion currently before the Court, and that he was
22 involved in the marketing and sale process with respect to the
23 mortgage loans.

24 Mr. Volo would testify that the debtors engaged in
25 an extensive marketing effort with respect to the mortgage in

1  accordance with the terms of the sale procedures order and
2  sale procedures.  He would testify that in accordance with the
3  sale procedures order, the debtors designated and posted to
4  the debtors intralinks website (phonetic) due diligence
5  information relevant to the mortgage loans, that more than 25
6  parties executed non-disclosure agreements and participated in
7  due diligence.
8        He would further testify that, other than the
9  stalking horse bid, no qualified bids were received by the bid
10 deadline.  Mr. Volo would testify that he participated in
11 negotiations with Vantium, is familiar with the Vantium
12 stalking horse bid and that the sale process was fair and
13 reasonable.
14       Mr. Volo would testify that based on his experience,
15 knowledge and participation in the marketing and sale process
16 of the mortgage loans, the sale to Vantium under the terms of
17 the sale agreement represents, in his business judgment, the
18 highest and best value to be obtained for the debtors' estates
19 under the circumstances, and that the additional marketing is
20 not likely to yield any better value.
21       The debtors' execution of the proposed sale
22 agreement with Vantium represents an arm's length agreement
23 and was entered into in good faith.  The proposed purchase
24 price with all the terms and conditions under the sale
25 agreement represents a fair and reasonable price.  Entry into

1   the sale agreement with Vantium is in exercise of the debtors'
2   sound business judgment.  The sale of the mortgage loans to
3   Vantium is in the best interest of the debtors' estates and
4   their creditors.  And that Vantium is not affiliated with nor
5   owns an interest in and is not related in any way to the
6   debtors and is not an insider of the debtors.
7              And that would conclude Mr. Volo's proffer, Your
8   Honor.
9              THE COURT:  Okay.  Does anyone wish to cross-examine
10  the witness?
11             Who -- who's going to service the loans?  Will it
12  continue to be the purchaser?
13             MR. BEACH:  American Home Mortgage Servicing is a
14  party to this agreement as the interim servicer.  And I'm
15  not --
16             THE COURT:  The purchaser can designate -- the
17  purchaser has the power to designate a different servicer if
18  it wishes?
19             MR. BEACH:  That's right, Your Honor.  And I believe
20  there's a -- a 30-day window in which HM Servicing will --
21             THE COURT:  All right.
22             MR. BEACH:  -- do the servicing.
23             THE COURT:  Thank you.  I'll accept the proffer.
24             MR. BEACH:  Your Honor, we did make a few changes to
25  the form sale agreement.

1           THE COURT:  Okay.

2           MR. BEACH:  If I may approach?

3           THE COURT:  Yes.  Before we do that, is anyone going
4  to have any general comments in connection with the sale?  Mr.
5  Power?

6           MR. POWER:  Thank you, Your Honor.  Mark Power from
7  Hahn & Hessen, co-counsel with the Committee.  Your Honor, the
8  Committee worked very closely on this deal with the debtor.
9  This is a buy the Committee really brought to the table.

10          In addition to that, during the auction process, the
11  Committee reached out to approximately 15 other bidders.  And
12  everyone was aware of the deal.  And several of them had
13  already done due diligence.  So the Committee is very
14  satisfied that this auction process was well vetted, and that
15  virtually everybody that we know of in the industry had -- was
16  aware of the transaction and had an opportunity to bid.

17          Your Honor asked a question before about, you know,
18  the pricing.  It's an unusual pool.  This is a pool that has a
19  lot of mobile homes in it, and a few major -- very significant
20  loans that -- like, one of them in Ohio for $3 million and
21  things, which make the pool somewhat unusual and atypical.
22  It's nonconforming.  It wouldn't meet the qualifications of
23  Fannie and Freddie.

24          So when we looked at the pool, while, you know, you
25  would like a better price, the pool itself, the

1  characteristics, it's -- it's a lot of loans.  I think the UPB
2  runs in the $200,000 range.  So when bidders look at it, when
3  they look about what they want to do with it in re-working the
4  loans, there isn't a lot of flexibility.  I think Vantium was
5  an experienced bidder and was comfortable in terms of its due
6  diligence.  It did a lot of due diligence in connection with
7  the transaction.
8            THE COURT:  Okay.
9            MR. POWER:  So the Committee overall supports the
10 debtors' motion and would ask Your Honor to approve it.
11           THE COURT:  All right.  Thank you.  I appreciate
12 that clarification because I was surprised, given that the
13 representation in the motion was that they were performing
14 loans.  But, obviously, performing depends, in addition, on
15 the type of loans and the pool.  And nonconforming loans
16 clearly aren't going to -- aren't going to bring -- at least
17 now, aren't going to bring the kind of recovery that you
18 generally see.
19           All right.  I'll -- I'll look at the order.  You may
20 approach.  Thank you.
21           MR. BEACH:  Your Honor, the changes in paragraph E
22 were to identify the specific agreement.  And Vantium is the
23 purchaser.  We don't have a second best bidder since no other
24 qualified bidders came to the table.  Paragraph 8, we added
25 claims and interest in a number of areas in that paragraph.

1  We added the interim servicer, since they're no longer a
2  debtor party, in several of the paragraphs.
3             And paragraph 6 was, essentially, a clarification
4  paragraph to deal with the idea that some of the proceeds
5  would go into escrow.  So those mortgage loans -- any party
6  that has a lien -- really, we're talking about the DIP lender
7  that has a lien on the mortgage loans, those liens still exist
8  until the proceeds are released to the debtors, and then they
9  have a lien on those proceeds.
10             THE COURT:  All right.
11             MR. BEACH:  But that the proceeds that are in
12  escrow, no party has a -- a lien on those proceeds.
13             THE COURT:  Okay.
14             MR. BEACH:  Your Honor, just two -- two other
15  clarifications.  Since we received no qualified bids for this
16  pool and since Vantium is the successful bidder in this pool,
17  there will be no expense reimbursements paid in connection
18  with this sale.  As Your Honor may recall, we had authority to
19  pay up to $350,000 in expense reimbursements.
20             THE COURT:  Right.
21             MR. BEACH:  And, in addition, with respect to the
22  purchase price, since there was low level (phonetic) bidding
23  on the -- on these loans, the blended rate for the loans that
24  we expect to close tomorrow is approximately 53 percent.  And
25  I think the blended rate for the loans that are going into

1 escrow is approximately 58 percent. So there's a slightly

2 higher rate for -- purchase price rate for those loans going

3 into escrow. I just wanted to disclose that to the Court.

4         THE COURT: Okay. Very good. Does anyone have any

5 comments on the order? Hearing none, the Court will approve

6 the order based on the evidence.

7         MR. BEACH: Thank you, Your Honor. That concludes

8 our hearing for the day.

9         THE COURT: Okay. I -- frankly, as you know, I was

10 out of the office quite a bit over the summer, and we've had a

11 series of pretty short hearings in this case. I've kind of

12 lost touch, if you will, honestly, with the status of the

13 case. So I'd like to use this -- September 15th, that's the

14 next hearing date?

15         MR. BEACH: That's right, Your Honor.

16         THE COURT: Okay. I'd like to use that, if you

17 would, maybe from the debtor and the Committee, as a 105-D

18 status conference as to sort of where the case is today and,

19 you know, various things like where we are with the

20 destructions of the books and records, where we are with how

21 much -- how many of the assets have been liquidated, what's

22 left.

23         I understand a plan has been filed, actually. I

24 haven't had a chance to look at it yet, but kind of where the

25 plan is, what the plan provides, and where we're headed, and

1   what the time frames are, so I can get back in touch with
2   where the case is.
3           MR. BEACH:  Sure, Your Honor.  And -- and just so
4   you know, we do intend to file a solicitation procedures
5   motion today and ask that the disclosure statement approval be
6   heard on September 15th as well.  So it will be good
7   opportunity, I think, for --
8           THE COURT:  Have you filed a disclosure statement?
9           MR. BEACH:  We did, Your Honor.
10          THE COURT:  Okay.  Well, I'll look at that when it
11  comes in.  And I'll look at your motion just shortly.  But
12  given that we've got disclosure statement that day.  Maybe
13  that will be a good opportunity to sort of go through in a
14  more concise manner then it will be included in the disclosure
15  statement, where the case and where we're headed.
16          MR. BEACH:  Sure, we can do that, Your Honor.
17          THE COURT:  All right.  Very good.  Thank you.
18          MR. BEACH:  Just for the record, we -- we don't need
19  to -- assuming we get the solicitation procedures filed today,
20  we don't believe we need to shorten notice.  We have noticed
21  all creditors of the disclosure statement already, so this
22  would just be the 18-day notice for the solicitation
23  procedures.
24          THE COURT:  Oh, all right. Very good. Okay. All
25  right. Thank you. Anything else?  Thanks very much.  Hearing

1  is adjourned.

2          MR. BEACH:  Thank you.

3          (Proceedings concluded at 10:33 a.m.)

4                    **C E R T I F I C A T I O N**

5

6          I, Brenda Boulden, court approved transcriber,

7  certify that the foregoing is a correct transcript from the

8  official electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11

12  _____          September 10, 2008

13  BRENDA BOULDEN

14  DIANA DOMAN TRANSCRIBING

15

16

17