## EXHIBIT A

Sale Agreement

## PURCHASE AGREEMENT AND BILL OF SALE

This PURCHASE AGREEMENT AND BILL OF SALE (this "Bill of Sale") dated as of July ___, 2008, is made and executed among AMERICAN HOME MORTGAGE CORP., a New York corporation (the "Seller"), and METROCITIES MORTGAGE, LLC, a Delaware ~~corporation~~ limited liability company (the "Purchaser").

## WITNESSETH

WHEREAS, Seller, as debtor and debtor in possession, and certain affiliates of Seller have filed voluntary petitions for relief pursuant to Chapter 11 ("Chapter 11") of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") captioned as *In re: American Home Mortgage Holdings, Inc.*, Chapter 11 Case No. 07-11047 (CSS), jointly administered; and

WHEREAS, Seller has agreed to sell and Purchaser has agreed to purchase the Purchased Assets (as defined below) on the terms and conditions set forth herein and as authorized under section 363 of the Bankruptcy Code and Seller has determined that a sale in accordance with section 363 of the Bankruptcy Code is in the best interests of its creditors and interest holders.

NOW, THEREFORE, for good and valuable consideration to Seller receipt of which is hereby acknowledged, Seller and Purchaser, intending to be legally bound hereby, agree as follows:

1. Sale of Purchased Assets. Subject to the approval of the Bankruptcy Court, Seller hereby assigns, grants, sells, transfers, conveys and delivers to Purchaser, its successors and assigns, forever all of Seller's right, title and interest in and to all of the assets identified on Schedule A attached hereto and incorporated herein (collectively, the "Purchased Assets").

2. Payment of Purchase Price. Contemporaneous with the execution of this Bill of Sale by Purchaser, Purchaser shall deliver the purchase price for the Purchased Assets in the amount of $115,000.00 (the "Purchase Price") to Seller by either certified check or wire transfer. Nothing expressed or implied in this Bill of Sale shall be deemed to be an assumption by Purchaser of any liabilities of Seller. Purchaser does not by this Bill of Sale agree to assume or agree to pay, perform or discharge any liabilities of Seller of any nature, kind or description whatsoever.

3. "As Is Where Is" Transaction. Purchaser hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Purchased Assets. Without in any way limiting the foregoing, Seller hereby disclaims any warranty (express or implied) of merchantability or fitness for any particular purpose as to any of the Purchased Assets. Purchaser further acknowledges that Purchaser has conducted an independent inspection and investigation of the physical condition of the Purchased Assets and all such other matters relating to or affecting the Purchased Assets as

Purchaser deemed necessary or appropriate and that in proceeding with Purchaser's acquisition of the Purchased Assets, Purchaser is doing so based upon such independent inspections and investigations. Accordingly, Purchaser will accept the Purchased Assets "AS IS" and "WHERE IS".

4. <u>Conditions Precedent</u>. The sale of the Purchased Assets pursuant to this Bill of Sale is subject to the approval by the Bankruptcy Court. Within ten (10) business days after the execution of this Bill of Sale by the parties, Seller shall cause to be filed in the Bankruptcy Court, a motion seeking an order of the Bankruptcy Court approving Seller's sale, transfer and conveyance of the Purchased Assets to Purchaser pursuant to this Bill of Sale free and clear of any and all liens, claims, or encumbrances. Seller shall act in a commercially reasonable manner to obtain such order from the Bankruptcy Court. In the event Seller is unable to obtain an order from the Bankruptcy Court approving the sale, transfer and conveyance of the Purchased Assets to Purchaser, Seller shall within three (3) business days return the Purchase Price to Purchaser in the manner such Purchase Price was delivered to Seller.

5. <u>Transfer and Removal of the Purchased Assets</u>. Purchaser agrees that it is solely responsible for arranging and paying for the removal and shipment of the Purchased Assets. Purchaser shall provide to Seller, upon demand, evidence of the following insurance policies with reliable insurance companies for Purchaser and any agent of Purchaser responsible for the removal of all or any portion of the Purchased Assets, and in the following amounts: $2,000,000 combined single limit, $1,000,000 property damage and $1,000,000 comprehensive general liability with contractual liability in the case of all riggers; and $500,000 cargo and $1,000,000 comprehensive general liability in the case of carriers; and such other insurance as may be required by any governmental authority, including workers' compensation insurance. Transfer of the Purchased Assets shall be effective upon the Bankruptcy Court's entry of the order described in Section 4 above (the "<u>Effective Time</u>"). Title to, and risk of loss with respect to, the Purchased Assets shall vest in Purchaser at the Effective Time. Removal of the Purchased Assets shall be completed by Purchaser within ten (10) business days after the Bankruptcy Court issues the order described in <u>Section 4</u> above.

6. <u>No Rights in Third Parties</u>. Nothing expressed or implied in this Bill of Sale is intended to or shall confer upon any party, other than Purchaser and Purchaser's successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Bill of Sale.

7. <u>Successors and Assigns</u>. This Bill of Sale shall bind and inure to the benefit of Seller, Purchaser, and their respective successors and permitted assigns.

8. <u>Governing Law</u>. This Bill of Sale shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law. In the event either party shall institute a legal action as a result of the default in the other party's performance under this Agreement or for any breach of this Bill of Sale, any such action shall be brought exclusively in the Bankruptcy Court.

9. <u>Amendment</u>. This Bill of Sale may be amended, modified, or supplemented only by a written instrument signed by both Purchaser and Seller. No supplement,

2

modification, waiver, or termination of this Bill of Sale shall be binding unless executed in writing by the party to be bound thereby.

        10.    Counterparts; Facsimile Execution. This Bill of Sale may be executed in counterparts, all of which shall constitute the same agreement, notwithstanding that all parties to this Bill of Sale are not signatory to the same or original counterpart. Delivery of an executed counterpart of this Bill of Sale by facsimile shall be equally as effective as delivery of an original executed counterpart. Any party delivering an executed counterpart of this Bill of Sale by facsimile also shall deliver an original executed counterpart of this Bill of Sale, but the failure to deliver an original executed counterpart shall not affect the validity, enforceability and binding effect of this Bill of Sale. Signature and acknowledgement pages may be detached from the counterparts and attached to a single copy of this Bill of Sale to physically form one (1) document.

[Signature Page Follows Immediately]

IN WITNESS WHEREOF, the parties have caused this Bill of Sale to be duly executed as of the day and year first above written.

"Seller":

AMERICAN HOME MORTGAGE CORP.

By: _____
Name: CHRIS CAYACO
Title: EVP


"Purchaser":

METROCITIES MORTGAGE, LLC

By: _____
Name:    Richard S. Loeffler
Title:    CEO

## Schedule A

A. The websites for the marketing portals including the URLs "www.marketingforlife.com" and "www.mp-publicaccess.com", all source code, the data dictionary, user manuals, technical manuals and database model;

B. All software/source code required to create and maintain the loan officer websites with the exception of any Unifi or Human Resource data, including any "Nonpublic Personal Information" as that term is defined in Title V of the Gramm-Leach-Bliley Act of 1999 or any successor federal statute, and the rules and regulations thereunder, all as may be amended or supplemented from time to time, and personally identifiable information protected under and any other applicable law, rule or regulation of any jurisdiction relating to disclosure or use of personal information;

C. The business requirement, functional specification and design documents for the marketing portal upgrade project in process up through July 2007;

D. The following web and database servers: MELPSMKTDBS01 - IBM x345 (867011X), 2x2GHZ Xeon CPU, 4GB Ram, 6 - 36.4 10K HDD MELPSMKTWEB01 - HP Proliant DL360, 2x2.4 GHZ CPU, 2GB Ram, 2 - 36.4GB Drives

E. All existing online marketing collateral materials stored on the "K" drive copied to portable storage device(s), but not including any Nonpublic Personal Information" as that term is defined in Title V of the Gramm-Leach-Bliley Act of 1999 or any successor federal statute, and the rules and regulations thereunder, all as may be amended or supplemented from time to time, and personally identifiable information protected under and any other applicable law, rule or regulation of any jurisdiction relating to disclosure or use of personal information; and

F. All existing loan officer websites excluding personal loan officer information.