# UNREPORTED CASES

Westlaw.

Slip Copy
Slip Copy, 2008 WL 1836950 (Bkrtcy.E.D.N.C.)

Page 1

In re Pridgen
Bkrtcy.E.D.N.C.,2008.
Only the Westlaw citation is currently available.
United States Bankruptcy Court, E.D. North Carolina,
Wilson Division.
In re Randy Scott PRIDGEN Marsha Corbett Pridgen, Debtors.
**No. 007-04531-8-RDD.**

April 22, 2008.

Michael B. Sosna, Craft, Levin & Abney, L.L.P., Rocky Mount, NC, for Debtor.

**ORDER DENYING MOTION TO SET ASIDE**

RANDY D. DOUB, Bankruptcy Judge.
*1 This matter is before the court on the motion of Cary Oil Co., Inc. ("Cary") to set aside the court's order of February 20, 2008 denying Cary's motion for administrative expenses. A hearing was held in Wilson, North Carolina on April 17, 2008. For the reasons set forth, the motion of Cary is denied.

The debtors filed a petition for relief pursuant to chapter 13 of the Bankruptcy Code on December 1, 2007. In Schedule F of their petition, the debtors listed Cary as holding an unsecured nonpriority claim in the amount of $158,429.26 for a gas account for Momeyer Grill & Grocery, a business operated by the debtors. On January 7, 2008, Cary filed an application for administrative expenses in the amount of $36,135.13 pursuant to 11 U.S.C. § 503(b)(9) for purchases of fuel made by the debtors through an agreement with Warren Oil from November 11, 2007 through December 1, 2007. The debtors objected to Cary's claim for an administrative expense, and a hearing was held on February 12, 2008.

At that hearing, both parties were represented by counsel. Evidence was presented regarding the relationship between the debtors and Warren Oil, Warren Oil and Cary, and Cary and the debtors, including the "Petroleum Supply and Administration Agreement" between Cary and Warren Oil, which was admitted into evidence. The testimony of Mr. Pridgen and Mr. Mark Warren, president of Warren Oil, was received and the cross-examination of both witnesses occurred. The court entered an order, holding that the claim of Cary was not administrative, as receipt of the gasoline by the debtors had occurred on November 9, 2007, which was prior to the twenty days preceding the filing of the debtors' petition. The court further found that, after delivery of the gas on November 9, 2007, there was only a two-day period during which gas was pumped at the store, resulting in total sales of $9,992.45, with the remaining gasoline removed from the tanks on November 28, 2007, upon the request of Mr. Pridgen. The court allowed Cary 30 days within which to amend its proof of claim.

On February 28, 2008, Cary filed the pending motion to set aside pursuant to Federal Rule of Bankruptcy Procedure Rule 9023, which incorporates Rule 59 of the Federal Rules of Civil Procedure. In Paragraph 6 of its motion, Cary alleges that "[t]he findings of the court were based upon incomplete and inaccurate testimony by the male Debtor, and as a result, those findings and the conclusions reached are not consistent with the correct facts that would lead to different conclusions." In its motion and through the testimony presented at the hearing on the motion to set aside, Cary questions the court's previous order regarding the delivery and receipt date of the gasoline by the debtor.

At the hearing, Mr. Paul Stephenson, director of dealer operations for Cary, testified that Cary was hired as a contractor by Warren Oil to administer and maintain businesses they had contracted with to sell gasoline and diesel on consignment through those businesses. Mr. Stephenson explained that the typical consignment arrangement in the gasoline business is for dealers to act on behalf of Cary to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy  
Slip Copy, 2008 WL 1836950 (Bkrtcy.E.D.N.C.)

Page 2

sell the product owned by Cary, which invoices the dealer after the product has been dispensed through the metering system. The dealers are invoiced on a weekly basis for the gallons and dollars of gasoline sold. Mr. Stephenson testified that the gas belongs to Cary until it is sold to the consumer by the dealer. He indicated that the title to the gasoline does not transfer to the dealer until a sale to the consumer occurs. Mr. Stephenson identified the agreement between Cary and Warren Oil. Cary Exhibit A. In the agreement, Cary agreed to manage Warren's consignment business with dealers based upon the different agreements that Warren had with the dealers. Mr. Stephenson agreed that the language on page 2 of the agreement, "Title to said gasoline and diesel fuel shall remain with Cary until same is pumped from the tank and sold to retail customers," accurately represented the operation between Cary, Warren Oil, and the debtors. Mr. Stephenson testified that the language on p. 3 of the agreement, "Cary shall maintain all said petroleum marketing equipment at the retail gasoline facilities," meant that any equipment owned by Warren on the dealer's premises would be maintained by Cary. On page 6 of the agreement, it is stated, "Provided, that under no circumstances shall Warren be requested to pay for gasoline and diesel fuel until it has been sold at retail." Mr. Stephenson explained that this meant the fuel belongs to Cary until it is sold to a final consumer. Finally, on page 7 of the agreement, it is stated

*2 All sums collected by Consignment Dealers or Warren for gasoline and diesel fuel sold hereunder, less the Consignment Dealers' commissions and Warren's remaining Profit, shall immediately become and remain the sole and exclusive property of Cary, and, until such sums are remitted to Cary by either Warren or the Consignment Dealer, the possession and control thereof by the Consignment Dealer or Warren shall be that of a trustee for the use and benefit of Cary, and not otherwise.

Mr. Stephenson testified that this language also meant that the gasoline belongs to Cary.

Mr. Stephenson testified that the only contract between Cary and the debtors was a credit application between the two parties. The purpose of the agreement was to explain the credit extended to the debtors and to explain the personal guarantees made by them. This was to ensure that Cary received payment from the debtors.

Mr. Stephenson testified that, although the consignment contract does not identify when title to the gasoline passes from one party to the other, it passes from Cary to the dealer and from the dealer to the consumer when it passes through the retailer's equipment.

Mr. Mark Warren, president of Warren Oil, testified that Mr. Stephenson's testimony regarding the agreement between Cary and Warren Oil was accurate. He testified that Mr. Pridgen's parents had been customers of Warren Oil since 1996, and he agreed to begin a relationship with Mr. Pridgen as a favor to his parents. Although Mr. Warren testified that there was no written agreement between Warren Oil and the debtors, he indicated that their business relationship was conducted the same as that between Warren Oil and Mr. Pridgen's parents, with whom a written agreement had been entered. Cary Exhibit E. Mr. Warren agreed that, although there was no written agreement, he had verbally consented to Mr. Pridgen closing his store on Sundays. Mr. Warren indicated, however, that had the debtor chosen to close his store during other normal operating hours, he would have removed his product from the store.

Mr. Warren testified that, as a consignment dealer, title to the gasoline passed from Cary to the dealer based upon the gasoline flowing through the meter. From the time the gasoline flowed from the meter until the consumer paid for it, title was held by the dealer. Therefore, Mr. Warren explained, the gasoline was not received by the debtor until it was sold, which was within the 20 days prior to filing.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 1836950 (Bkrtcy.E.D.N.C.)

Page 3

At the end of testimony, the parties stipulated that the amount of the claim which Cary seeks to have classified as an administrative expense is $8,762.75, based upon the amounts of gas sold during the 20 days prior to the filing of the debtors' complaint.

Counsel for Cary argues that the relationship between Cary and the debtor should be classified as a consignment pursuant to the factors set forth by the North Carolina Court of Appeals in *DKH Corporation v. Rankin-Patterson Oil Company, Inc.*, 131 N.C.App. 126 (1998). In that case, eight factors for consideration were set forth in determining whether a gasoline transaction is a consignment agreement or a sale agreement.

**\*3** When making this determination, these courts have considered several factors including: (1) whether there is an absolute obligation to pay for the goods, (2) whether the purchaser takes title to the goods, (3) whether the purchaser immediately pays for the goods, (4) whether the purchaser sets the resale price, (5) whether the purchaser bears the risk of loss, (6) whether the purchaser insures the goods, (7) whether the purchaser repairs and maintains the goods, and (8) whether the purchaser pays taxes on the goods.

*Id.* at 130 (citations omitted). Counsel argues that all eight factors lean in favor of finding a consignment arrangement in this case. Because the arrangement is a consignment, counsel argues that title to the goods remained with the consignor until sale to the consumer, thereby delaying receipt of the goods by the dealer until sale.

Counsel for the debtors argues that there are two issues related to Cary's motion. The first is whether Cary is entitled to a reconsideration of the court's prior order. Counsel argues that Rule 59 requires misapplication of law or the presentation of new facts. Counsel argues that Cary is not entitled to reconsideration because it was present and represented by counsel at the prior hearing, and had an opportunity to present the evidence presented at the second hearing during the first hearing.

Counsel for the debtors argues that, if the court finds Cary is entitled to reconsideration, the second issue is whether they are entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(9). Counsel argues that, although ownership may not have passed to the gasoline until the time at which it was sold to a consumer, § 503(b)(9) does not require transfer of ownership to create an administrative claim. § 503(b)(9) is dependent upon receipt of the goods by the debtor, which, counsel argues, occurred more than 20 days prior to the filing of the petition because that is when the debtor took possession and control of the gasoline.

The Fourth Circuit Court of Appeals held in *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998):

Although Rule 59(e) does not itself provide a standard under which a district court may grant a motion to alter or amend a judgment, we have previously recognized that there are three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance. Similarly, if a party relies on newly discovered evidence in its Rule 59(e) motion, the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding. In general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.

**\*4** (internal citations and quotations omitted). In this case, no evidence was presented at the second hearing which was not available in the first hearing. At the second hearing, Cary was represented by dif-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 1836950 (Bkrtcy.E.D.N.C.)

Page 4

ferent counsel, who made new arguments. Motions under Federal Rules of Civil Procedure Rule 59 serve to correct errors of law or fact, or to consider the impact of newly discovered evidence; they are not to be used by a losing party who failed to raise available arguments or who simply disagrees with the court's decision. Cary's motion for reconsideration stated that the findings of the court in the order entered February 20, 2008, "were based upon incomplete and inaccurate testimony by the male debtor, and as a result, those findings and the conclusion reached are not consistent with the correct facts that would lead to a different conclusion."The male debtor, Mr. Pridgen, was in court for the hearing on the motion for reconsideration, but was not called as a witness to explain his previous "incomplete and inaccurate testimony." Based upon the standards set forth in *Pacific Ins. Co.,* no grounds for reconsideration are present.

Even if there were grounds to set aside the court's prior ruling, the court's finding that there is no administrative claim under 11 U .S.C. § 503(b)(9) would be the same. Section 503(b)(9) allows an administrative claim for

> the value of any goods *received* by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

(emphasis added). The Uniform Commercial Code defines "receipt" of goods as "taking physical possession of them." N.C. Gen.Stat. § 25-2-103(1)(c).

Cary argues that receipt is when the gas passes from the meter to the end of the hose, that title to the gasoline passes to the debtor at that point, and therefore, he is in receipt for purposes of § 503(b)(9). However, there is no written agreement with the debtor setting out terms of delivery, receipt or title terms for a consignment dealer. In fact, the agreement between Cary and Warren Oil provides that Cary Oil retains title until "same is pumped from the tank and sold to retail customers."Cary Exhibit A, page 2.[FN1] The court finds that the testimony supporting the argument that title passes to the dealer from the meter to the end of the hose for receipt purposes is not credible and is not corroborated by the written agreements. Cary Exhibit A. Such facts do not support a finding that the debtors took physical possession of the gas or "received" the gas sold within 20 days before the commencement of the case.[FN2] Therefore, Cary is not entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(9). Cary shall have 10 days from the date of this order to properly amend the proof of claim dated February 6, 2008 as previously ordered on February 20, 2008. Based on the foregoing, the motion of Cary Oil Co., Inc. for reconsideration of the court's order of February 20, 2008 is **DENIED.**

> FN1. No language exists in the documents supporting intervening title to the gasoline or receipt of the gasoline by the debtor who was a consignment dealer, as the gasoline passes from the meter to the end of the hose into the tank of the retail custom- er.

> FN2. Whether the debtor "received" the gasoline on November 9, 2007, as the court held in its order of February 20, 2008, or did not "receive" the gasoline as the gasoline passed from the meter to the end of the gas hose, no receipt occurred during the twenty days prior to the commencement of the case.

**\*5 SO ORDERED.**

Bkrtcy.E.D.N.C.,2008.
In re Pridgen
Slip Copy, 2008 WL 1836950 (Bkrtcy.E.D.N.C.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.