IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| In re: | ) |
| | ) Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., a Delaware Corp., et. al., | ) Jointly Administered |
| | ) |
| Debtors. | ) Obj. Due: Sept. 24, 2008 at 5:00 p.m. |
| | ) Hrg Date: Oct. 2, 2008 at 11:00 a.m. |

---

**LIMITED OBJECTION OF WATERFIELD SHAREHOLDER LLC AND UNION FEDERAL BANK OF INDIANAPOLIS TO APPROVAL OF DISCLOSURE STATEMENT WITH RESPECT TO THE CHAPTER 11 PLAN OF LIQUIDATION FOR THE DEBTORS DATED AS OF AUGUST 15, 2008**

Waterfield Shareholder LLC ("Waterfield") and Union Federal Bank of Indianapolis ("Union Federal," and collectively, "Objectors") hereby object, pursuant to 11 U.S.C. § 1125 and Fed. R. Bankr. 3017, to the Disclosure Statement Pursuant To Section 1125 Of The Bankruptcy Code With Respect To The Chapter 11 Plan Of Liquidation Of The Debtors Dated As Of August 15, 2008 (the "Disclosure Statement") filed by American Home Mortgage Corp. ("AHM") and certain of its affiliates (collectively, the "Debtors"). In support of this objection, Objectors respectfully represent as follows:

1

## BACKGROUND

1. On September 29, 2006, AHM filed certain litigation (the "Waterfield Litigation")[1] against Union Federal in the United States District Court for the Southern District of New York (the "District Court"). AHM asserts claims arising under a Stock and Mortgage Loan Purchase Agreement between itself, Union Federal, and Waterfield Financial Corporation ("WFC"), dated January 12, 2006 (the "Purchase Agreement"). AHM alleged various claims against Union Federal including breach of contract and negligent misrepresentation with regard to the Purchase Agreement. AHM seeks, *inter alia*, monetary damages, an injunction, declaratory relief, and other relief from Union Federal. AHM has described its claims as amounting to "in excess" of $29 million, and has blocked the release of the $55 million held pursuant to a related escrow agreement (the "Escrow").

2. On August 6, 2007 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

3. Subsequent to the Petition Date, Waterfield and Union Federal sought and obtained relief, under 11 U.S.C. § 362, so as to assert counterclaims

---

[1] The Objectors have included a detailed and accurate description of the Waterfield Litigation and the claims, defenses and counterclaims asserted in that litigation in an attached Exhibit A. For purposes of this objection and administrative efficiency, the Objectors rely upon and incorporate the description of the Waterfield Litigation contained in Exhibit A.

against AHM in the Waterfield Litigation. Union Federal moved to dismiss AHM's complaint, and the District Court dismissed AHM's negligent misrepresentation claims on August 22, 2007. Certain other claims survived, and Union Federal generally denied AHM's remaining claims in its answer. Union Federal also filed counterclaims against AHM asserting, among other things, that AHM had breached the Purchase Agreement and the Escrow Agreement. At the same time, Union Federal asserted a variety of affirmative defenses against AHM's claim, including that any amounts that AHM recovers on its claims must be reduced by the amounts that Union Federal is awarded on its counterclaims. Union Federal seeks damages and other relief from AHM amounting to over $25 million, in addition to the release of the entire escrow, which was part of the purchase price that Union Federal was to receive under the Purchase Agreement.

4. On November 30, 2007, Waterfield, a surviving entity of the transaction set forth in the Purchase Agreement, moved to intervene in the Waterfield Litigation. AHM opposed Waterfield's intervention. On January 10, 2008, the District Court overruled AHM's objection, and granted Waterfield's motion to intervene in the Waterfield Litigation. On January 18, 2008, Waterfield filed its answer, affirmative defenses, and counterclaims against AHM generally denying the allegations in the Complaint, asserting counterclaims and interposing affirmative defenses similar to those asserted by Union Federal. Waterfield also asserted an additional, alternative counterclaim for unjust enrichment against AHM because Union Federal and Waterfield obtained a release of liability that

directly benefits AHM by releasing liability on all mortgage loans that Union Federal sold to EMC Mortgage Corporation before the AHM transaction occurred — mortgage loans on which AHM was required (but then refused) to assume future liability.

5. Union Federal and Waterfield's counterclaims allege more than $25 million in damages against AHM, in addition to other relief. Union Federal and Waterfield also seek an order from the District Court awarding them the entire $55 million in escrow, which was a part of the purchase price that AHM agreed to pay for WFC and the assets that it obtained.

6. On or about August 15, 2008, the Debtors filed the Disclosure Statement. In the Disclosure Statement, the Debtors spend two full pages recounting their version of the Waterfield Litigation and its procedural history. Disclosure Statement at 41-42. However, that description is inaccurate and outdated, in that it fails to provide a true description of the claims and counterclaims made and the status of certain motions made by the parties. The Objectors contacted counsel for the Debtors in an attempt to have a more fulsome and accurate description of the Waterfield Litigation substituted in the Disclosure Statement. The Objectors even provided proposed language for the Disclosure Statement.

7. The Debtors took the proposed language and modified it. Some of these modifications were acceptable; however, the Debtors also modified, altered and/or deleted the proposed language in such a way that the Debtor's revised

description of the Waterfield Litigation remains inadequate and misleading. For example, the Debtors — in more than one place — describe the type of claims AHM asserts and the alleged damages relating to such claims but refuse to include any specific reference to the amount of damages asserted by the Objectors. Instead, the Debtors merely state that the Objectors state counterclaims in the Waterfield Litigation and seek "damages."

8. After receiving the Debtors' modifications, the Objectors incorporated some of the changes and circulated the revised language to counsel for the Debtors. This revised language provided to the Debtors is attached hereto as Exhibit A. The Objectors understand that the Debtors believe that some of the language in Exhibit A is not acceptable. The Debtors have also indicated that they are going to further modify their proposed language describing the Waterfield Litigation in a new, or amended, version of the Disclosure Statement. The Debtors, however, have not yet made such language available to the Objectors for review and comment. So, as of the date of this objection, the Debtors and the Objectors have not yet agreed to language describing the Waterfield Litigation.

**ARGUMENT**

9. As set forth below, the Disclosure Statement fails to provide adequate information of a kind that would enable a hypothetical reasonable investor or creditor to make an informed judgment about the Plan. Specifically, the Debtors' description of the Waterfield Litigation (even as partially revised by

the Debtors in response to communications with the Objectors) in the Disclosure Statement is inaccurate and misleading by providing vague descriptions of the claims asserted by both parties in the litigation. Under the standard of what constitutes "adequate information" under section 1125(b) of the Bankruptcy Code, the Disclosure Statement fails and, thus, cannot be approved by this Court in the form presented by the Debtors.

10. Before soliciting votes to accept or reject a plan of reorganization, the proponent's disclosure statement must be approved by a court. 11 U.S.C. § 1125(b). Approval will be denied unless the court finds that the disclosure statement contains adequate and accurate information. Id. The Bankruptcy Code defines "adequate information" as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan....

11 U.S.C. § 1125(a)(1).

11. The Bankruptcy Code does not provide a detailed description of what constitutes "adequate information." Congress intended that "precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis." H.R. Rep. No. 595, 95th Cong., 1st Sess. 408 (1977). See also 11 U.S.C. § 1125(a)(1), 1978 Notes; In re A.H. Robins Co. Inc., 880 F.2d 694, 696 (4th Cir.), cert. denied, 493 U.S. 959 (1989) ("The determination of what is

adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court").

12.  In determining whether a disclosure statement is adequate, the courts look for, among other things, information on the following matters: (a) the incidents that precipitated filing the chapter 11 petition; (b) a description of available assets and their value; (c) projections as to the future course of the debtor's business; (d) financial information, data, evaluations or projections relevant to a creditor's decision to accept or reject the plan; (e) information relevant to the risk to creditors under the plan; and (f) an accurate description of litigation likely to arise in a non-bankruptcy context. See In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); In re Scioto Valley Mortgage Co., 88 B.R. 168 (Bankr. S.D. Ohio 1988); In re Metrocraft Publishing Svcs., Inc., 39 B.R. 567 (Bankr. N.D. Ga. 1984); In re A.C. Williams Co., 25 B.R. 173 (Bankr. N.D. Ohio 1982).

13.  Although each disclosure statement need not contain every item of information set forth above, these criteria provide a useful guide to evaluate the adequacy of information in a disclosure statement. Where, as here, a disclosure statement fails to provide adequate and accurate information concerning certain litigation and the claims asserted in that litigation, courts will deny approval of the disclosure statement. See, e.g., In re New Haven Radio, Inc., 18 B.R. 977 (Bankr. D. Conn. 1982) (disclosure statement failed to provide sufficient information concerning debtor's assets and liabilities, amount and class of claims, and status

of debtor's FCC license); see also Metrocraft, 39 B.R. at 569-71 (disclosure statement omitted information relating to value of debtor's fixtures and equipment, amount of unsecured claims, ability to collect accounts receivable, and estimated return to creditors in chapter 7 liquidation); In re Adana Mortgage Bankers, Inc., 14 B.R. 29 (Bankr. N.D. Ga. 1981) (disclosure statement failed to disclose financial and other information relating to creditor risks under plan).

14.     The Disclosure Statement inaccurately and inadequately describes the Waterfield Litigation. For example, and for purpose of illustration, the Debtors describe a motion by AHM to strike "Union Federal's setoff/recoupment defenses" — without disclosing that the District Court *denied* that motion to strike on July 11, 2008. Disclosure Statement at 42. In addition, the Debtors state in the Disclosure Statement that AHM moved to dismiss Union Federal's counterclaim relating to the Escrow, but fail to add that, on July 10, 2008, AHM withdrew its motion to dismiss. Id. Moreover, the Debtors omit any fulsome description of the counterclaims of Union Federal and Waterfield and the risks to the Debtors' estates from those counterclaims — *i.e.*, counterclaims against AHM of over $25 million and recovery of the $55 million held in the Escrow. And, while the parties attempted to reconcile their descriptions of the Waterfield Litigation, and in fact seemed to correct many of the original inadequacies of the Disclosure Statement, the most recent version proposed by the Debtors still fails to fully disclose the amount of the Objectors' claims and all of the risks associated with the affirmative defenses asserted by the Objectors.

15.     Without such information, the Disclosure Statement is deficient and cannot be used to solicit votes from creditors.  See, e.g., Metrocraft, 39 B.R. at 569-71.  Accordingly, the Disclosure Statement does not contain adequate information and should not be approved in its present form under section 1125(b) of the Bankruptcy Code.

16.     The Disclosure Statement's deficiency as it relates to the description of the Waterfield Litigation could be cured.  As parties in that litigation, the Objectors are uniquely situated to understand the failings of the Disclosure Statement in describing the Waterfield Litigation and to propose alternative and accurate information.  As a means of resolving their objection, the Objectors propose that the Debtors replace their inaccurate description with the description contained in Exhibit A.  This description of the Waterfield Litigation would provide a current, accurate and fulsome description of the litigation and the various claims asserted by all the parties and, thus, provides the kind of information in sufficient detail that would enable the creditors of these estates to make an informed judgment.

## RESERVATION OF RIGHTS

17.     The Objectors reserve the right to further investigate any amended and/or revised version of the Disclosure Statement and present any additional arguments at the hearing on the Disclosure Statement.

## CONCLUSION

18. For the reasons set forth above, the Objectors respectfully request the entry of an order (i) denying approval of the Disclosure Statement and (ii) granting such other and further relief as is just. In the alternative, the Objectors respectfully request the entry of an order requiring the Debtors to substitute the language contained in Exhibit A for the language presently contained in the Disclosure Statement.

Dated: September 24, 2008

                        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                        /s/ Eric M. Davis
                        Eric M. Davis (I.D. No. 3621)
                        Jason M. Liberi (I.D. No. 4425)
                        One Rodney Square
                        P.O. Box 636
                        Wilmington, Delaware 19899-0636
                        (302) 651-3000 (telephone)
                        (302) 651-3001 (facsimile)

                                - and -

                        Eric J. Gorman, Esq.
                        Justin L. Heather, Esq.
                        333 West Wacker Drive
                        Chicago, Illinois 60606
                        (312) 407-0700 (telephone)
                        (312) 407-0411 (facsimile)

                        *Attorneys for Waterfield Shareholder LLC*
                          *& Union Federal Bank of Indianapolis*