## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x
In re:                                                      : Chapter 11
                                                            :
AMERICAN HOME MORTGAGE                                      : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]          :
                                                            : Jointly Administered
            Debtors.                                        :
                                                            : Hearing Date: TBD
                                                            : Re: Docket Nos. 4687, 4084
----------------------------------------------------------- x

### REPLY OF AMERICAN HOME MORTGAGE SERVICING, INC., FORMERLY KNOWN AS AH MORTGAGE ACQUISITION CO., INC., TO OBJECTION OF MICROSOFT TO PROPOSED PURCHASER'S CURE AMOUNT

American Home Mortgage Servicing, Inc., a Delaware corporation formerly known as AH Mortgage Acquisition Co., Inc. (the "Purchaser"), through its undersigned counsel, hereby submits its reply to the Objection of Microsoft to Proposed Purchaser's Cure Amount [Docket No. 4687] (the "Second Cure Objection"), filed by Microsoft Corporation and Microsoft Licensing GP, formerly known as MSLI, GP (collectively, "Microsoft") on June 17, 2008. In support of this Reply, the Purchaser respectfully represents as follows:

---

[1] The above-captioned debtors and debtors in possession in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation, formerly known as American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

DLI-6205940v4

**Preliminary Statement**

1. Under the order approving the sale of the Debtors' mortgage servicing business to the Purchaser, both the Debtors and the Purchaser have certain responsibilities with respect to curing defaults under contracts to be assumed and assigned in connection with the sale. Microsoft has filed two cure objections, alleging that it is entitled to a cure payment in respect of an assumed contract based on the Debtors' failure to make a $1.4 million payment that was due on July 1, 2007. In its first cure objection, Microsoft asserts that the entire $1.4 million cure payment is allocable to the Debtors. In its Second Cure Objection, however, Microsoft asserts that approximately $600,000 of that amount is allocable to the Purchaser. Under the plain language of the order approving the sale, although the Purchaser is responsible for funding certain cure amounts, that funding requirement is triggered only when the cure amount due results from acts or omissions that occurred after the initial closing of the sale on November 16, 2007. Because the omission Microsoft complains of — the Debtors' alleged failure to make the payment due on July 1, 2007 — clearly occurred before November 16, 2007, the Purchaser is in no way responsible for funding any portion of the resulting cure amount that Microsoft alleges it is owed.

**Background**

2. On October 30, 2007, the Court entered an order [Docket No. 1711] (the "Sale Order"), approving the sale of the Debtors' mortgage loan servicing business to the Purchaser, pursuant to the terms of an Asset Purchase Agreement among certain of the Debtors and the Purchaser dated as of September 25, 2007, as amended. The Sale Order, among other things, authorized the Debtors to assume and assign and/or transfer to the Purchaser certain contracts (collectively, the "Assumed Contracts"), including, among others, the Enterprise Agreement – Volume Licensing (only the license for OS and Office for desktops and OS for

DLI-6205940v4

applications for servers being transferred) (the "Enterprise Agreement").[2] The Sale Order further apportioned the cure amounts related to the Assumed Contracts among the Debtors and the Purchaser such that the Debtors are responsible for all cure amounts (the "Debtors' Cure Amounts") arising from defaults based on acts or omissions occurring prior to the initial closing of the sale on November 16, 2007 (the "Initial Closing"), and the Purchaser is responsible for cure amounts (the "Purchaser's Cure Amounts") arising from defaults based on acts or omissions occurring during the period from the Initial Closing to the final closing of the sale on April 11, 2008 (the "Final Closing"). (Sale Order ¶¶ 35, 36.)[3] The Sale Order includes a schedule (Schedule I), that lists the proposed Debtors' Cure Amounts due as of October 30, 2007 for each Assumed Contract. With respect to the Enterprise Agreement, Schedule I lists the amount due as $0.[4]

3. On January 8, 2008, Microsoft filed the Initial Cure Objection, pursuant to which Microsoft objects to the proposed Debtors' Cure Amount for the Enterprise Agreement listed on Schedule I to the Sale Order. The Initial Cure Objection asserts that the appropriate Debtors' Cure Amount is $1,421,718.97, based on the Debtors' alleged failure to make a payment due on July 1, 2007 in respect of the Enterprise Agreement.

---

[2] In its cure objections, Microsoft describes the Enterprise Agreement as "the Enterprise Agreement and related documents under Microsoft No. 01E64704." (Second Cure Objection ¶ 2; Cure Objection of Microsoft [Docket No. 2581] (the "Initial Cure Objection") ¶ 2.)

[3] For the convenience of the Court and parties in interest, the relevant portions of the Sale Order are attached hereto as Exhibit A.

[4] The Debtors also filed a Notice of Interim Period Cure Schedule [Docket No. 2166] on November 26, 2007, which asserts that the Debtors' Cure Amount due in respect of the Enterprise Agreement for the period between October 30, 2007 and the Initial Closing is also $0.

4.   On May 19, 2008, the Debtors filed the Notice of (i) Debtors' Proposed Purchaser's Cure Amounts and (ii) Deadline for Filing Objections to the Proposed Purchaser's Cure Amounts [Docket No. 4084] (the "<u>Purchaser's Cure Notice</u>"), pursuant to which the Debtors notified the counterparties to the Assumed Contracts of the proposed amounts necessary to cure defaults under those contracts arising from acts or omissions that occurred after the Initial Closing through and including the Final Closing. Exhibit A to the Purchaser's Cure Notice lists the proposed Purchaser's Cure Amount due in connection with Microsoft's Enterprise Agreement as $0.

5.   On June 17, 2008, Microsoft filed the Second Cure Objection, objecting to the Purchaser's Cure Amount for the Enterprise Agreement. In its Second Cure Objection, Microsoft asserts, contrary to its Initial Cure Objection, that the appropriate Debtors' Cure Amount should be $807,405.60 (rather than $1,421,718.97, as asserted in the Initial Cure Objection) and the appropriate Purchaser's Cure Amount should be $614,323.50.[5] Microsoft calculates its asserted cure amounts by prorating "the amount due as cure on the [Enterprise Agreement] from its due date on July 7 [sic], 2007 . . . ." (Second Cure Objection ¶ 7.)

### **Microsoft's Second Cure Objection Should Be Overruled**

6.   As an initial matter, the Sale Order makes clear that it is the Debtors — and *not* the Purchaser — that are obligated to make cure payments in connection with the Debtors' assumption of the Assumed Contracts. (Sale Order ¶ 36 ("the Debtors are and remain liable to pay or otherwise satisfy the [Debtors'] Cure Amount, if any, from the Cure Escrow[[6]]

---

[5]   The prorated amounts add up to $1,421,729.10, which is slightly greater than the alleged invoiced amount due of $1,421,718.97.

[6]   Under the Sale Order, the Debtors placed $10 million in an escrow account to satisfy the Debtors' Cure Amounts. To the extent the Debtors' Cure Amounts exceed the amount

DLI-6205940v4

and the Purchaser's Cure Amount, if any, to Counterparties to the Assumed Contracts . . . .").) With respect to the Purchaser's Cure Amounts, the Sale Order states that the Purchaser "shall fund and be liable to the Debtors for all amounts owed, if any, with respect to defaults arising under the Assumed Contracts *with respect to acts or omissions occurring during the period from the Initial Closing until the Final Closing* . . . ." (Sale Order ¶ 36 (emphasis added).) Accordingly, the cure amount due to Microsoft for the Debtors' assumption of the Enterprise Agreement, if any, must be paid by the Debtors from the Cure Escrow, and the Purchaser is obligated to fund or reimburse the Debtors for only those cure amounts, if any, that relate to defaults under the Enterprise Agreement arising from acts or omissions that occurred after the Initial Closing.

7.   As Microsoft itself concedes, the date of the act or omission that gives rise to the alleged default under the Enterprise Agreement is July 1, 2007, when the Debtors allegedly failed to make the $1,421,718.97 payment that Microsoft asserts was due on that date. Microsoft has not — and, indeed, cannot — point to any act or omission occurring after the Initial Closing that caused the Debtors' *prepetition* payment default. According to the plain language of the Sale Order, because the alleged payment default under the Enterprise Agreement occurred before the Initial Closing, the Debtors are responsible for curing that default in its entirety, and the Purchaser has no obligation to fund or reimburse the Debtors for the cure payment Microsoft alleges is owed. Indeed, Microsoft itself asserted in its Initial Cure Objection

---

(continued...)

    escrowed, the Sale Order preserved the rights of the counterparties to the Assumed Contracts to assert general unsecured claims against the Debtors (but not against the Purchaser). (Sale Order ¶ 35.)

that the entire $1,421,718.97 is the appropriate Debtors' Cure Amount in connection with the Enterprise Agreement.

8. To the extent that Microsoft is owed the $1,421,718.97 cure amount it asserts, the entire amount is properly included in the Debtors' Cure Amounts, not the Purchaser's Cure Amounts. Microsoft's Second Cure Objection therefore should be overruled.

Dated: September 25, 2008
Wilmington, Delaware

GREENBERG TRAURIG, LLP

*Victoria W. Counihan*
Victoria W. Counihan (BAR #3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000

and

JONES DAY
Keith C. McDole (TX 13533740)
Daniel P. Winikka (TX 00794873)
2727 North Harwood Street
Dallas, Texas 75201-1515
(214) 220-3939

COUNSEL FOR AMERICAN HOME MORTGAGE SERVICING, INC., FORMERLY KNOWN AS AH MORTGAGE ACQUISITION CO., INC.

## EXHIBIT A

**(Relevant Portions of the Sale Order)**

DLI-6205940v4

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE
| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-11047 (CSS) |
| Debtors. | Jointly Administered |
| | Docket Ref: 11, 674, 865 & 937 |

**ORDER PURSUANT TO SECTIONS 105, 363, 364, 365, AND 503(b) OF THE BANKRUPTCY CODE, AND RULES 2002, 4001, 6004, 6006, 7062, 9007, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (A) APPROVING (i) THE SALE OF THE DEBTORS' MORTGAGE SERVICING BUSINESS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS, (ii) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (B) GRANTING CERTAIN RELATED RELIEF**

This matter coming on to be heard on the Emergency Motion of the Debtors for Orders: (A) (i) Approving Sale Procedures; (ii) Scheduling a Hearing to Consider Sale of Certain Assets Used In the Debtors' Loan Servicing Business; (iii) Approving Form and Manner of Notice Thereof; and (iv) Granting Related Relief; and (B) (i) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (ii) Authorizing and Approving Purchase Agreement Thereto; (iii) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (iv) Granting Related Relief [Docket No. 11] (the "Servicing Sale Motion") and the subsequent Motion of the Debtors

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

30-day period set forth above shall be forever barred from asserting a Transfer Cost Claim. All Setoff Claims (as defined *infra*) with respect to any Assumed Contract must be filed by the Counterparty to such Assumed Contract and served within thirty (30) days of the entry of this Order. Any Person who does not file and serve a Setoff Claim within such 30-day period shall be forever barred from asserting a Setoff Claim.

35. The Initial Cure Amount and the Interim Cure Amount (together with all amounts payable in respect of Transfer Cost Claims and Setoff Claims, the "Sellers' Cure Amount") shall constitute all amounts owed, if any, with respect to defaults relating to the Assumed Contracts relating to acts or omissions that occurred prior to the Initial Closing; provided, however, that the maximum amount of the Sellers' Cure Amount shall be $10,000,000; and provided, further, that all payments on account of and related to the Sellers' Cure Amount shall be limited to and satisfied from the Cure Escrow; and provided, further, that the Debtors, the Committee and the Administrative Agent shall have the right to object to any Sellers' Cure Amount, including, but not limited to, those asserted by any Certain Objector (as designated on Schedule I to this Order) and such Sellers' Cure Amount shall be deemed disputed and may only be allowed pursuant to further Order of the Court. In the event an objection to a Sellers' Cure Amount is filed by the Debtors, the Committee or the Administrative Agent, the procedures for resolving such Sellers' Cure Amount shall be established by a further Order of the Court. In the event the undisputed or allowed Sellers' Cure Amount with respect to all Assumed Contracts exceeds the funds available in the Cure Escrow for the payment thereof (which in no event shall exceed $10,000,000), the right of a Counterparty to an Assumed Contract to assert a general unsecured claim against the Debtors (but not against the Purchaser) with respect to the difference

between the pro rata Sellers' Cure Amount paid by the Debtors to such Counterparty and the allowed Sellers' Cure Amount with respect to such Assumed Contract is preserved.

36. Subject to the APA, the Purchaser shall fund and be liable to the Debtors for all amounts owed, if any, with respect to defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing until the Final Closing (the "Purchaser's Cure Amount"). As between the Debtors and the Counterparties to the Assumed Contracts, pursuant to the requirements of section 365(b)(1) of the Bankruptcy Code or otherwise, the Debtors are and remain liable to pay or otherwise satisfy the Sellers' Cure Amount, if any, from the Cure Escrow, and the Purchaser's Cure Amount, if any, to Counterparties under Assumed Contracts; provided, however, all payments on account of and related to the Sellers' Cure Amount shall be limited to and satisfied from the Cure Escrow and upon the Debtors' receipt of the Purchaser's Cure Amount, the Debtors shall earmark and segregate such funds. Subject to further Order of the Court, the Debtors shall promptly pay any undisputed Purchaser's Cure Amount to the respective Counterparty. Notwithstanding the foregoing and for the avoidance of doubt, the Purchaser shall, in accordance with the terms of the APA, fund and be liable to the Debtors for the Purchaser's Cure Amount. No Person shall be entitled to exercise or assert any right of setoff, recoupment or any defense that arose from any act or omission that occurred prior to the Initial Closing, against any amounts due by such Person to (a) the Sellers on and after the Initial Closing but prior to the Final Closing, or (b) the Purchaser on and after the Initial Closing. All such rights of setoff, offset and/or recoupment, to the extent established pursuant to the terms of this Order (individually a "Setoff Claim" and collectively, the "Setoff Claims"), shall (i) constitute a Sellers' Cure Amount, (ii) be paid

exclusively from the funds in the Cure Escrow, and (iii) be governed by and resolved in accordance with the procedures set forth in paragraphs 33-35 of this Order.

37. Cash shall be released from the Cure Escrow in accordance with the terms of the Cure Escrow Agreement, which are incorporated herein by reference.

38. After the establishment and funding of the Cure Escrow in accordance with the terms of this Order and the payment to a Counterparty of its applicable portion of the Sellers' Cure Amount from the Cure Escrow in accordance with the terms of this Order and the Cure Escrow Agreement, Sellers shall have no further Liability to a Counterparty with respect to such Counterparty's Assumed Contract other than Sellers' obligation to perform such duties under such Assumed Contract that arise from acts or omissions that occurred after the Initial Closing but prior to the assignment or transfer of such Assumed Contract to the Purchaser; provided, however, that after the establishment of the Cure Escrow, no Liability for any Sellers' Cure Amount may be satisfied from the Purchased Assets or Purchaser's Collateral. Other than the Purchaser's obligation with respect to the payment of the applicable Purchaser's Cure Amount, if any, to the Debtors, the Purchaser shall have no Liability to a Counterparty with respect to such Counterparty's Assumed Contract other than the Purchaser's obligation to perform such duties under such Assumed Contract that arise from acts or omissions that occurred on and after the assignment or transfer of such Assumed Contract to the Purchaser.

39. Except as otherwise provided in the APA, notwithstanding anything to the contrary herein, there shall be no rent accelerations, assignment fees, increases, or any other fees or costs charged to the Purchaser or the Sellers as a result of the assumption and assignment or transfer to the Purchaser of an Assumed Contract pursuant to the provisions of this Order, except for reasonable out of pocket costs and expenses incurred by a Counterparty as a result of such