RE: American Home Mortgage
Holdings, Inc
Chapter 11
Case Number 07-11047 (CSS)

Attached is the documentation that the courts said was missing from my claim. The following documents are attached:
1. National Account Manager Employment Agreement.
2. Email with Excel Spreadsheet attached showing my commission earned for the first 6 months of 2007.

As you can see my July commission was never calculated and subsequently not paid. I filed a claim for the same amount as June because ABC executives were not available at the beginning of August to calculate my July commission. Those executives were Bruce Madden and Al Crisanty. Adam Goldstein was the individual responsible for calculating my commission each month but I could not reach him when we were informed that ABC was closing.

Please accept these documents as proof that my July commission is still owed to me.

Sincerely

Bob Sweeney
696 Woodbine Drive
Carmel, IN 46032
317.573.7609
ufsbbob@msn.com

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., Delaware corporation, et al., | ) Case No. 07-11047 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) |
| | ) Objection Deadline: September 25, 2008 at 4:00 p.m. (ET) |
| | ) Hearing Date: October 2, 2008 at 11:00 a.m. (ET) |

AHM OB17 9/2/2008 (merge2.txnum2) 4000099790 EPIQ Use - 24

SWEENEY, ROBERT E.
696 WOODBINE DR
CARMEL, IN 46033

## NOTICE OF DEBTORS' SEVENTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

TO: SWEENEY, ROBERT E.
696 WOODBINE DR
CARMEL, IN 46033

**Basis For Objection:** No Liability Claim

| | Claim Number | Claim Amount |
|---|---|---|
| Claim to be Expunged | 7469 | $32,581.00 |

No record of alleged unpaid commission. Claimant failed to provide documents to support claim.

The above-captioned debtors and debtors in possession (the "Debtors") have filed the Debtors' Seventeenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 (the "Objection"), a copy of which is attached hereto. The Debtors seek by this Objection to disallow the claim listed above because the Debtors have determined, after review of their books and records, that they have no record of any liability on account of this claim. The Objection seeks to alter your rights by disallowing the claim listed above in the "Expunged Claim" row.

Responses to the Objection, if any, must be filed on or before **September 25, 2008 at 4:00 p.m. (ET)** (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801.

At the same time, you must also serve a copy of the response upon the counsel to the Debtors listed below so that the response is received on or before the Objection Deadline.

A HEARING ON THE OBJECTION WILL BE HELD ON **OCTOBER 2, 2008 AT 11:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 5TH FLOOR, COURTROOM NO. 6, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: September 2, 2008
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Edward J. Kosmowski (No. 3849)
Kara Hammond Coyle (No. 4410)
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6756
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession

## NATIONAL ACCOUNT MANAGER EMPLOYMENT AGREEMENT

This **NATIONAL ACCOUNT MANAGER EMPLOYMENT AGREEMENT** ("Agreement") is made and entered into as of  10 January , 2006, by and between American Brokers Conduit, a division of American Home Mortgage Corp., a New York corporation having a place of business at 538 Broadhollow Road, Melville, NY 11747 (the "Company") and Robert Sweeny (the "Executive").

THE COMPANY AND EXECUTIVE AGREE AS FOLLOWS:

1. **Employment.** The Executive agrees to enter into the employment of the Company as a Vice President and National Account Manager as of the Effective Date, and the Company agrees to employ and compensate the Executive as a Vice President and National Account Manager in accordance with the terms and conditions set forth in this Agreement. The Executive understands and agrees that during the term of the Executive's employment with the Company: (a) The Executive may assist only the Company in the performance of activities contemplated by this Agreement; and (b) The Executive may not engage, participate or become interested, either directly or indirectly, in any business in competition with the Company, in any capacity.

Notwithstanding anything to the contrary herein, this Agreement and the Executive's employment with the Company is contingent upon, and shall not become effective until, the date (the "Effective Date") on which the transaction whereby the Company acquires 100% of the capital stock of Waterfield Financial Corporation ("Waterfield") is completed.

2. **At Will.** The Executive understands and agrees that the Executive's employment with the Company shall be at all times "at will" employment. The Company reserves the right to terminate the Executive's employment with the Company at any time for any reason whatsoever, with or without cause. Likewise, the Executive may resign from the Company at any time for any reason. The term of this Agreement shall begin on the Effective Date and shall end on the date it is terminated by either the Company or the Executive.

3. **Duties and Responsibilities.** During the term of this agreement, the Executive shall report to the President of Wholesale with dotted line reporting responsibilities to the Senior Vice Presidents, Regional Production Managers for the Company or to such other officers deemed appropriate by the Company. The Executive will be responsible for, among other duties and responsibilities, developing and implementing a National Account Department for American Brokers Conduit. The Executive will be responsible for identifying key target accounts with either a multi territorial, regional, or national presence and creating a plan of action to increase market share. It is mutually agreed that the Company may, at any time, change the responsibilities of the Executive in the Company's sole discretion.

4. **Duty of Loyalty.** The Executive agrees that during the term of the Executive's employment with the Company, the Executive shall devote the Executive's full business time, attention, best efforts, skill, and ability exclusively to the business of the Company. The Executive agrees to do the Executive's utmost to further the interests of the Company, and agrees not to take any action intended to harm the Company.

The Executive also agrees that, during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, engage, participate, make any financial investment in, or become employed by or render advisory or other services to or for any person, firm, corporation or other business enterprise which is, or is reasonably likely to become engaged, directly or indirectly, in competition with the

Initials _____

Company. The Executive expressly agrees that this section is fair and reasonable and that the Executive is being adequately compensated for agreeing to the terms of this section.

5. **Compensation.** During the term of the Executive's employment hereunder, the Company will pay the Executive compensation, the amount and terms of which are set forth in Addendum A of this Agreement. All computations pursuant to this Agreement shall be made solely by the Company, in accordance with methodologies, policies and procedures which may be in effect from time to time, and which may be changed by the Company at any time in its sole discretion. The Executive acknowledges that the Executive's compensation will be reported to the Internal Revenue Service on a Form W-2, and the Company will withhold taxes from the Executive's pay as required by law. The Executive acknowledges that the Executive is not entitled to extra pay for absences from work, including holidays and sick days, or for overtime, but will be entirely compensated pursuant to the provisions of this section.

6. **Compliance with Company Policies.** The Executive agrees to comply fully with, and be subject to, all of the Company's policies and procedures, including amendments to such policies and procedures adopted by the Company in its sole discretion prior to, on, or subsequent to the Effective Date of this Agreement.

7. **Compliance with Directives.** The Executive agrees that the Executive will comply fully with all lawful instructions, directives, and orders given by the Executive's Regional Manager, an Executive Vice President of the Company, a Division President of the Company, or the President of the Company. The Executive further agrees that the Executive will cooperate at all times with other Company personnel.

8. **Compliance with Laws & Regulations.** The Executive agrees that the Executive will comply with all federal, state, and local laws and regulations applicable to mortgage lending and brokering activities undertaken by the Company and the Executive.

9. **Prohibition against Inaccurate Applications and False Information.** The Executive agrees to not submit loan applications to the Company, or to facilitate in any way, the making of loan applications that are inaccurate or misleading. In addition, the Executive agrees not to create or assist in the creation or submission to the Company of any false information in connection with loan applicants or in connection with real property, including the ownership and value thereof. The Executive agrees to reimburse the Company for any damages it suffers as a result of the Executive's breach of this section . The obligations of the Executive and the rights of the Company with respect to the preceding sentence, shall survive the termination of this Agreement.

10. **Benefits.** The Executive is eligible to participate in such benefit programs that the Company may from time to time maintain for employees of the Executive's level. The Company reserves the right to modify, substitute, or eliminate such benefits at any time and in its sole discretion. Benefits available to the Executive will be based on the Executive's tenure at the Company, position at the Company, state and county of residence and other factors determined by the Company. The Executive acknowledges that certain of the Company's optional benefits programs may require the Executive to pay for some or all of the cost of those benefits. The Executive agrees to pay such costs in accordance with the Company's policies.

~~For each month of employment with the Company, the Executive shall be eligible for the reimbursement of expenses in accordance with Exhibit B, attached hereto.~~ *(struck through, initialed)*

11. **Confidential and Proprietary Information; Company Property.** For the purpose of this section, Confidential Information shall mean all information and intellectual property owned by and proprietary

Initials _____

to the Company, including but not limited to marketing programs such as Homebuyers Marketing and Marketing Portal, loan applications, loan files, loan file documents, accounts, customer or client information, including names and contact information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, trade secrets, manuals, business methodology and processes, personal employee information, and cost and pricing policies. All Confidential Information disclosed or provided to the Executive by the Company, or developed or created by the Executive during the term of the Executive's employment with the Company, is, shall become, and shall at all times remain, the sole and exclusive property of the Company. The Executive agrees not to disclose Confidential Information to any other party, except to the extent that such disclosure is reasonably necessary in order for the Executive to perform the Executive's responsibilities as a Vice President and National Account Manager of the Company. The Executive also agrees that he or she will not use Confidential Information for any purpose other than to fulfill the Executive's responsibilities as a Vice President and National Account Manager of the Company.

The Executive acknowledges, understands, and agrees that Confidential Information is of substantial value to the Company and that, in the event of the use or disclosure of such Confidential Information in breach of this Agreement, the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate. Therefore, without prejudice to the rights and remedies otherwise available to the Company, and in addition to such rights and remedies, the Company shall be entitled to equitable relief by way of injunction if Executive breaches or threatens to breach any of the provisions of this Agreement relating to Executive's use or disclosure of any Confidential Information.

The Executive further acknowledges that the Company may provide the Executive with access to or use of equipment or other property owned or leased by the Company ("Company Property"). The Executive agrees to abide by all agreements and policies relating to the use of Company Property, as may be in effect or modified from time to time at the sole discretion of the Company. The Executive further agrees to promptly return in good working condition all Company Property in the Executive's possession upon termination of the Executive's employment with the Company for any reason, and shall be liable for damages, including but not limited to replacement cost, for any financial loss resulting to the Company if Company Property is not returned in such manner.

The Executive agrees that this section shall survive the termination of this Agreement, and that all of the obligations of the Executive set forth in this section shall remain in full force and effect after this Agreement is terminated. The Executive further agrees that, upon termination of this Agreement, he or she will return to the Executive's President or Regional Manager, or if such is not available, to the Company's General Counsel, all Confidential Information (including all copies of Confidential Information) which is then in, or which later comes into, the Executive's possession or custody.

12. **Non-Solicitation; Non-Disparagement.** The Executive agrees that during the term of Executive's employment with the Company, and for a period of one (1) year after termination of the Executive's employment with the Company, whether such termination is voluntary or involuntary, or with or without cause, the Executive shall not, directly or indirectly: (a) influence or advise any other person to employ or solicit for employment anyone who is an employee of the Company; (b) influence or advise any employee of the Company to leave the employment of the Company; and (c) employ, on behalf of any business venture other than the Company, any person who is an employee of the Company. The Executive agrees that during the term of Executive's employment with the Company, the Executive shall not, directly or indirectly, attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining.

Initials _____

The Company and the Executive agree that each will not disparage the other, and that their representatives will not disparage either of the parties to this Agreement.

The Executive expressly agrees that this section is fair and reasonable and that Executive is being adequately compensated for agreeing to the terms of this section. The Executive's obligations as set forth in this section shall survive the termination of this Agreement.

13. **Power of Attorney.** The Executive hereby irrevocably appoints the Company, or any of its authorized agents, as the Executive's attorney-in-fact to act for the Executive and in the Executive's name (in any way the Executive could act in person) with respect to the following powers: (a) to open and review all any and all correspondence, envelopes or packages addressed to the Executive and delivered via the United States Mail or other means to the Company's offices, and to take for itself any currency, checks, drafts, money orders, or other forms of payment enclosed therein to which the Company is or may be entitled; or (b) to deposit any currency and endorse and negotiate any and all checks, drafts, money orders or other forms of payment made payable to the Executive which are the property of the Company.

14. **Insurance.** The Executive agrees that during the term of the Executive's employment with the Company, the Executive will maintain in effect on any and all motor vehicles used by the Executive in the conduct of the Company's business a minimum of $250,000.00 in combined single-limit bodily injury/property damage liability insurance. Executive further agrees to defend, indemnify and hold the Company harmless from and against any and all claims against the Company for injuries or damages caused, or alleged to have been caused, by the Executive while operating any motor vehicle in the course and scope of the Executive's employment with the Company.

15. **Claims or Actions against the Company.** If any civil or criminal complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance is filed, commenced, asserted, issued to, or made against the Company on account of or as a result of any act or omission by the Executive in violation of any of the Company's policies as amended, instructions, directives, or orders, or on account of any act of dishonesty committed by the Executive, the Executive agrees to defend, indemnify, and hold the Company harmless from and against any loss, liability, damages, fines, penalties, costs, or expenses (including reasonable attorneys' fees) incurred by the Company in connection with any such lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance, including any settlement thereof, regardless of whether (a) the Executive is named as a party in any such complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance; (b) the Executive is employed by the Company at the time the loss, liability, damages, cost, or expenses (including reasonable attorneys' fees) is incurred by the Company; or (c) the Company ultimately prevails in, or successfully defends against, the complaint, lawsuit, regulatory action, investigation, subpoena, claim, charge or grievance. This section shall survive the termination of this Agreement.

16. **Acknowledgement.** The Executive represents and warrants that the Executive is not subject to any agreement, order, judgment, or decree of any kind which would prevent the Executive from entering into this Agreement or performing fully the Executive's obligations hereunder. The Executive acknowledges that: (a) it is the Company's policy not to seek access to or make use of trade secrets or confidential business information belonging to other persons or organizations, including but not limited to, competitors or former employers; and (b) the Executive should not, under any circumstances, reveal to the Company or any of its affiliates or make use of trade secrets or confidential business information belonging to any other person or organization. The Executive represents and warrants that the Executive has not violated and shall not violate such instructions.

Initials _MG_

17. **Waiver of Jury Trial.** The Employee waives any right to a trial by jury in any action to enforce or defend any right under this Agreement or any amendment, instrument, document or agreement delivered or to be delivered in connection with this Agreement or arising from any relationship existing in connection with this Agreement, and agrees that any action shall be tried before a court and not before a jury.

18. **Construction.** The titles or headings of the sections of this Agreement are intended for convenience of reference only and are not intended to change, limit, or otherwise affect the meaning or construction of the terms of this Agreement. The term "person" shall include an individual, corporation, partnership, association, or other legal entity. The term "Employer" or "the Company" shall include any affiliate, parent, subsidiary or related company of the Company.

19. **Governing Law.** This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof.

20. **Entire Agreement.** This Agreement, together with the any schedules and Addenda attached hereto, as may be amended or modified from time to time in the Company's sole discretion, constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all prior agreements, discussions, negotiations, or understandings, whether oral or written, between the parties relating to the matters addressed herein.

21. **Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. If any provision of this Agreement, or any portion of any provision of this Agreement, is found to be unlawful or invalid or otherwise unenforceable, all valid and enforceable provisions of this Agreement shall remain in full force and effect.

22. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of, and be enforceable by, the parties hereto and their respective heirs, estates, legal representatives, executors, successors, and assigns.

23. **Attorney Fees.** The Executive agrees to pay the reasonable costs and attorney fees incurred by the Company resulting from the Company's successful enforcement of the terms and provisions of this Agreement.

24. **Waiver.** No waiver, or alleged waiver, by the Company of any term, condition, or provision of this Agreement shall be effective for any purpose whatsoever unless such waiver is in writing and signed by a Division President or the President of the Company. No express waiver by the Company of a breach of this Agreement by the Executive shall operate or be construed as a waiver of any subsequent breach of this Agreement by the Executive.

25. **Notices.** All notices required or permitted under this Agreement shall be sufficient if in writing and mailed through the United States Postal Service to the Executive at such residence address on file with the Company, and to the Company, at 538 Broadhollow Road, Melville, New York 11747, Attn: General Counsel.

Initials _____

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

American Home Mortgage Corp.

By: _____
General Counsel

*[signature]*
Executive

047, 24, 0346
Social Security Number

Initials *[initials]*

**NATIONAL ACCOUNT MANAGER EMPLOYMENT AGREEMENT**
Addendum A

The following sets forth ADDENDUM A to the NATIONAL ACCOUNT MANAGER EMPLOYMENT AGREEMENT (the "Agreement") by and between American Brokers Conduit, a division of American Home Mortgage Corp. (the "Company") and Robert Sweeny (the "Executive") dated as of _10 January 2006_

THE COMPANY AND EXECUTIVE AGREE AS FOLLOWS:

1. **Terms and Conditions.** Terms and conditions herein shall be defined by, and are subject to, the Agreement, unless otherwise specifically set forth in this Addendum A.

2. **Compensation.** Section 5 of the Agreement provides that the Company shall compensate the Executive pursuant to this Addendum A. The Executive's total compensation is set forth in this Addendum A.

3. **Term.** The term of this Addendum A shall begin on the Effective Date and shall end on the date that the Executive's employment terminates, pursuant to the Agreement.

4. **Base Salary.** During the term of the Executive's employment with the Company, the Executive shall be paid an annual salary of $150,000.00, which will be paid in accordance with the Company's payroll practices.

5. **Production Bonus.** The Executive shall be eligible to receive a monthly production bonus (the "Production Bonus") in an amount equal to 0.015% (1.5 Basis Points) of the increase in the production volume on all National Account production attributable to the Executive from the commencement of the Executive's employment hereunder. Such increase in the production volume shall be determined in the Company's sole discretion, and all calculations required pursuant to this section shall be made in accordance with methodologies, policies and procedures of the Company which may be in effect from time to time and which may be changed by the Company at any time in its sole discretion. The Production Bonus that the Executive is eligible to receive for a given month shall be payable to the Executive in the following calendar month. To earn and be eligible to receive the Production Bonus, the Executive must be employed with the Company on the scheduled payment dates.

6. **Minimum Compensation.** The Executive shall be eligible to receive minimum compensation of $40,000 per month for each of the Executive's first six (6) months of employment, to be applied against amounts due the Executive pursuant to sections 4 and 5 above ("Minimum Compensation"). If the Executive earns more than the Minimum Compensation in a given month, the Company will pay the Executive the Minimum Compensation plus such excess. To earn and be eligible to receive Minimum Compensation, the Executive must be employed with the Company on the scheduled payment dates.

7. **Retention Bonus.** The Executive shall be eligible for a retention bonus in the amount of $50,000.00 ("Retention Bonus"), which will be paid to the Executive on the first available pay date following the Executive's completion of the Executive's first twelve (12) months of employment hereunder. The Executive will not earn or be eligible to receive the Retention Bonus if the Executive's employment terminates before the completion of twelve (12) months of employment or if the Executive is no longer an employee of the Company as of the scheduled bonus payment date.

Initials _____

8. **Calculation of Addendum A Amounts Due.** All calculations required pursuant to this Addendum A shall be made in the sole discretion of the Company in accordance with methodologies, policies and procedures of the Company which may be in effect from time to time and which may be changed by the Company at any time in its sole discretion.

9. **Non-Payment of Bonuses.** Notwithstanding anything to the contrary in this Addendum A, the Executive shall not earn or be entitled to receive any unpaid bonuses if the Executive is no longer employed by the Company as of the payment date.

IN WITNESS WHEREOF, the parties have executed this Addendum A as of 10 January, 2006.

                                               **American Home Mortgage Corp.**

By: _____
      **General Counsel**

**EXECUTIVE**

Initials _____

## AMENDMENT OF NATIONAL ACCOUNT MANAGER EMPLOYMENT AGREEMENT

This Amendment of National Account Manager Employment Agreement ("Amendment") is made and entered into as of August 1, 2006 ("Effective Date"), by and between American Home Mortgage Corp. (the "Company") and Robert Sweeny (the "Executive"), and amends the Addendum A ("Addendum A") to the National Account Manager Employment Agreement, dated as of January 10, 2006 (the "Agreement"), by and between the Company the Executive.

Whereas the Company and Executive have agreed to amend the Addendum A;

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Section 6 of Addendum A is hereby amended to include the following text, which shall be inserted as the new second sentence of Section 6 of Addendum A:

> "For the period beginning August 1, 2006, the Executive shall be eligible to receive Minimum Compensation per month as follows: (i) $35,000.00 for August 2006; (ii) $31,000.00 for September 2006; (iii) $26,000.00 for October 2006; (iv) $22,000.00 for November 2006; and (v) $17,000.00 for December 2006."

2. Except as herein modified, all terms and conditions of the Agreement and Addendum A shall remain in full force and effect, and by executing this Amendment, the parties hereto ratify and confirm the terms of the Agreement and Addendum A, as modified by the terms of this Amendment.

3. This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, and taken together they shall be considered one agreement.

4. This Amendment shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed as of the date first written above.

American Home Mortgage Corp.

By: _____
General Counsel

_____
Executive



FHA Class
Freinds e-...
**Golf (4)**
**GoToMy... (2)**
Greeting C...
Harry and ...
Head Hunters
**HEAP (1)**
**Herbal... (6)**
Hilton Honors
Hoovers
House
Hud Sponso...
**IKON (2)**
**Import... (6)**
INAMB
Infinite C...
**InfoUSA (1)**
**Isagenix (22)**
Jeremy Ciano
**Jim ... (410)**
**Jim Mc... (1)**
Job Search
Kathy Bultman
**Keith ... (1)**
**Kiplinger (2)**
Larry Vale...
Lauren Hunt
Lisa Ralph
MalwareAlarm
Market Kin...
Marketing ...
MaryAnn Be...
Maureen Deal
Mfg Homes
Mickey Brooks
**Mike G... (4)**
**MMG (3)**
Mortgage C...
**Mortga... (2)**
NAMB-Indy
**Nation... (7)**
National M...
New Company
New folder...
New Home
NFL Alumni
Nicole Mull

- Normandy
- **Oil Re... (2)**
- Paola Kiel...
- PIP
- Postcard M...
- Rainmakers
- RegCure
- Rick Neff
- RightPath ...
- Rodney Bru...
- Sales Genie
- Sandra Wiley
- Sertoma
- Seton Hall
- **Silver... (1)**
- Skymall
- SourceMedia
- Stars Link
- Steve Jaco...
- Susan Silva
- Thats a gift
- Tickets Now
- **Todd D... (1)**
- **Travel (8)**
- Web Confer...
- Wizetrade

Manage folders
Add an e-mail account

- Today
- Mail
- Contacts
- Calendar

Have a fast connection and want more features? Try the full version to see message previews in your inbox. (It's **free**, too.)

© 2008 Microsoft | Privacy | Legal                    Help Central | Account | Feedback