IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re

AMERICAN HOME MORTGAGE
HOLDINGS, INC., et. al.

           Debtor.

Chapter 11

Case No.: 07-11047 (CSS)

Jointly Administered

RE: Docket No. 5569

**RESPONSE OF GRAND WAILEA RESORT HOTEL & SPA TO DEBTORS'
SEVENTEENTH OMNIBUS OBJECTION TO CLAIMS PURSUANT TO
SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003
AND 3007, AND LOCAL RULES 3007-1**

      Grand Wailea Resort Hotel & Spa ("Wailea"), by and through its counsel, responds to the

Debtor's Seventeenth Omnibus Objection to Claims (the "Objection"; D.I. 5569) filed by

American Home Mortgage Corp. ("Debtor") and states as follows:

## I.    FACTUAL BACKGROUND

      1.      Wailea owns and operates a resort hotel and spa located in Maui, Hawaii.

      2.      On August 6, 2007, the Debtor and its debtor-affiliates (the "Debtors") filed

voluntary petitions for under Chapter 11 of the Bankruptcy Code in this Court.

      3.      The Debtors continue to operate their businesses as debtors in possession pursuant

to Sections 1107(a) and 1108 of the Bankruptcy Code.

      4.      On August 17, 2007, the United States Trustee for Region 3 appointed an Official

Committee of Unsecured Creditors (the "Committee").

### A.    The Contract

      5.      On June 15, 2006, Wailea and the Debtor entered into a Contract dated June 15,

2006 (the "Contract") whereby the Debtor reserved a block of Wailea's rooms for an event

scheduled to occur April 11-20, 2008.  A true and correct copy of the Contract is attached as
Exhibit A.

6.    As a result, Wailea held a total of 1,592 room nights for the Debtor's exclusive
use during April 11-20, 2008.  See Contract at § 10, p. 9.

7.    When the Contract was signed, the Debtor paid a deposit in the amount of
$57,825.70.  See Contract at § 15, p. 11.

8.    In the Contract, the parties agreed that the number of rooms reserved and their
respective rates and the daily resort charge (provided in Section 3 of the Contract) would
generate $610,097 in revenue for Wailea.  In addition, the parties agreed that the planned
banquet food and beverage charges would result in `additional revenue of $308,700.  See
Contract at § 10, p. 9.  The total "Anticipated Room Night and Banquet Food and Beverage
Revenue Figure" was $918,797.[1]

9.    The parties also agreed to liquidated damages in the event of the Debtor's
cancellation of the event.  Section 9.0 ("Room Block and Services Commitment") of the
Contract provides as follows:

> [W]e agree that in the event of cancellation or attrition, the following
> charges, which represent a reasonable effort on behalf of the resort to
> establish its loss prospectively, shall be due as liquidated damages.
> Because the resort reasonably expects to derive revenue from your
> meeting above and beyond that revenue derived from the provision of
> room nights and food and beverage services, and because it is difficult to
> estimate the actual revenue which may be derived from your meeting, the
> amounts due as and for liquidated damages are intended to compensate the
> resort for all of its losses associated with cancellation and/or attrition . . . .

See  Exhibit A at § 9.0, pp. 8-9.

10.    Section 12 of the Contract set forth the appropriate amount of liquidated damages
based upon the date of the Debtor's cancellation.  The closer to the event, the higher the

---

[1] This amount excludes taxes, service charges or commissions.

percentage of the "Anticipated Room Night and Banquet Food and Beverage Revenue Figures"

would be due as liquidated damages for the Debtor's cancellation.

      11.     The parties also set forth in great detail their reasons for agreeing to liquidated

damages.  The parties stated as follows:

> When you contract for a block of rooms and meeting facilities and for food and beverage services, those room nights, facilities and services are removed from our inventory and considered sold to you, and the resort makes financial plans based upon the revenues it expects to achieve from your full performance of the contract. It is impossible for the resort to know in advance whether or under what circumstances or at what rates it would be able to resell your contracted room nights, services or facilities if you do not use them, either as the result of a cancellation of your meeting or as the result of less than contracted room block usage or less than contracted usage of food and beverage functions ("attrition").  In most instances, when groups do not use their contracted room nights or services, the resort is unable to resell those room nights or services and even when room nights or services are resold, they are generally not resold at the same rates, may be resold to groups which would have utilized the resort at another time, are not resold to groups that have the same needs as the original group, etc.  Even when rooms or services may be resold, it is costly to re-market the rooms and facilities, and such efforts divert the attention of our sales staff from selling the resort's rooms and facilities at other times.  While your room block has been held out of our inventory, we may have turned away more lucrative groups in order to meet our commitment to you.

See  Exhibit A at § 9.0, pp. 8-9.

     **B.**     **The Debtor's Cancellation and The Liquidated Damages**

      12.     The Debtor cancelled the event on August 2, 2007.  Pursuant to Section 12 of the

Contract, the Debtor owes Wailea liquidated damages in the agreed-upon amount of $665,217.75

(approximately 75% of the "Anticipated Room Night and Banquet Food and Beverage

Revenue").   After subtracting the Debtor's deposit from those liquidated damages, the Debtor

owes Wailea the sum of $607,392.05.[2]

---

[2] Wailea is in the process of filing an amended Proof of Claim reflecting this amount.

C.    **The Proof of Claim, As Amended, and the Objection.**

13.    On August 31, 2007, Wailea filed a proof of claim, seeking payment for the liquidated damages that it suffered as a result of the Debtor's cancellation. In the proof of claim, Wailea asserted the liquidated damages provision in an amount lower than that to which Wailea was actually entitled.

14.    Contemporaneously with the filing of this Response, Wailea has filed an amended proof of claim in the amount of $607,392.05 as provided by the Contract.

15.    On September 2, 2008, the Debtors filed the Objection. In the Objection, the Debtors asserted that (a) they were not liable for the amount stated in the proof of claim and (b) Wailea had failed to provide sufficient documentation to support its Claim.[3]

## II.    WAILEA'S RESPONSE TO THE OBJECTION

16.    Wailea asserts that the Debtors' objection has no merit. The Debtor seeks to re-write the Contract and avoid the liquidated damages to which the Debtor specifically agreed. Not only did the Debtor agree that liquidated damages were appropriate, the Debtor also specifically agreed to the reasons that liquidated damages were appropriate.

A.    **The Liquidated Damages Provision is Enforceable**

17.    According to Hawaii law, "liquidated damages contained in a contract must be enforced if there is a "reasonable relation" between the liquidated damages and the amount of the party's actual damages." OWBR LLC v. Clear Channel Communications, Inc., 266 F.Supp.2d 1214, 1226 (D.Haw. 2003)(citations omitted).

---

[3] Although the Debtors claim that Wailea failed to provide them with documentation in support of the proof of claim, Wailea had provided the Debtors with a copy of the Contract (to which the Debtor was a party).

18.     In this context, liquidated damages are valid and appropriate.  In <u>Techworld Hotel</u>

<u>Assocs., LLC v. NCS Pearson, Inc.</u>, 2003 WL 21664165, at * (D.D.C. July 9, 2003), the court

held that liquidated damages are valid and enforceable in the event of hotel room cancellation

because (i) the parties' various calculations evidenced the difficulty in determining actual

damages and (ii) the anticipated revenue from the sale of food, drink, and other services from the

breaching party (or other guests that the hotel could otherwise have accommodated) constituted

lost business opportunity and damages that were difficult to determine.  <u>Id.</u> at *3.  Upholding the

liquidated damages provision, the court also relied upon the fact that the liquidated damages

provision was bargained for by sophisticated parties and was reasonable in light of the fact that it

contained a "variable calculation of damages" based on "how far in advance a cancellation

occurred."  <u>Id.</u> at *3-4..

16.     The liquidated damages clause in the Contract is valid and enforceable because it

was a reasonable estimation of the anticipated or actual damages and the amount of the loss

would be difficult to prove because Wailea would never know the precise revenue generated

from the use of other hotel amenities by the Debtor's employees during the event.  As the Debtor

agreed, liquidated damages are appropriate under the Contract because, among other things,

(i) the reserved rooms and meeting facilities and related services were removed from Wailea's

inventory, (ii) Wailea makes financial plans based upon the revenues it expects to achieve from

the Debtor's performance of the Contract, (iii) it is impossible for Wailea to know in advance

whether or under what circumstances or at what rates it would be able to resell the reserved

rooms, services or facilities, (iv) in most instances, Wailea is unable to resell room nights or

services and even when room nights or services are resold, they are generally not resold at the

same rates, may be resold to groups which would have utilized the resort at another time, are not

resold to groups that have the same needs as the original group, (v) it is costly to re-market the rooms and facilities, and such efforts divert the attention of Wailea's sales staff from selling the resort's rooms and facilities at other times, and (vi) while room blocks are held out of Wailea's inventory, it may have to turn away more lucrative groups.  See Contract at § 9.0, pp. 8-9.

17.    Moreover, the liquidated damages are reduced based upon how far in advance the Debtor canceled its event.  This Court should not permit the Debtor, a sophisticated party, to rewrite the Contact and undo the liquidated damages provision to which the parties agreed.

**B.    Wailea Has No Duty To Mitigate Its Damages**

18.    Undersigned counsel for Wailea has been advised that the Debtors take the position that Wailea's claim should be disallowed because Wailea is required to mitigate its damages.  The Debtors are incorrect.

19.    As Judge Posner declared,

> [M]itigation of damages is a doctrine of the law of court-assessed damages, while the point of a liquidated-damages clause is to substitute party assessment; and that point is blunted, and the certainty that liquidated-damages clauses are designed to give the process of assessing damages impaired, if a defendant can force the plaintiff to take less than the damages specified in the clause, on the ground that the plaintiff could have avoided some of them."

Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1291 (7th Cir. 1985); Barrie School v. Patch, 933 A.2d 382, 393 (Md. Ct. App. 2007) ("there exists no duty to mitigate damages where a valid liquidated damages clause exists"); ("mitigation is not proper where there is a valid liquidated damages clause"); Young v. Int'l Brotherhood of Locomotive Eng'rs, 683 N.E.2d 420, 416 (Ohio Ct. App. 1996) ("mitigation is not proper where there is a valid liquidated damages clause"); 22 AM. JUR.2D DAMAGES, § 538 ("If a liquidated damages clause is valid, the nonbreaching party does not have a duty to mitigate damages following breach.  The issue of mitigation is not relevant.").

20.    For the foregoing reason, Wailea is entitled to allowance of its claim in the amount of $607,392.05.

WHEREFORE, Wailea respectfully requests that this Court enter an order (i) overruling the Objection, (ii) allowing Wailea's claims in the amount of $607,392.05l, and (iii) granting such other and further relief to Wailea as is appropriate.

Dated: September 26, 2008
     Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:    /s/ Kurt F. Gwynne
     Kurt F. Gwynne (No. 3951)
     Kimberly E. C. Lawson (No. 3966)
     1201 Market Street
     Suite 1500
     Wilmington, DE 19801
     Telephone: (302) 778-7500
     Facsimile: (302) 778-7575
     E-mail: kgwynne@reedsmith.com
            klawson@reedsmith.com

     and

David J. Harris
Burch, Porter & Johnson PLLC
130 North Court Avenue
Memphis, Tennessee 38103
Telephone: (901) 524-5120
Facsimile:  (901) 524-5024
E-mail:  dharris@bpjlaw.com

Counsel for Grand Wailea
Resort Hotel & Spa