IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

|  |  |
|---|---|
| In re:  AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al., | : Chapter 11 |
|  | : No. 07-11047 (CSS) |
|  | : Jointly Administered |
|  | : **Hearing Date: 11/12/08 @ 10:00** |
|  | :   **a.m.** |
|  | : **Objection Deadline: 11/5/08** |
| Debtors. | : |

## MOTION OF AMERICAN LIEN FUND, L.P. PURSUANT TO 11 U.S.C. § 362(d) TO ANNUL AUTOMATIC STAY AS TO TAX SALE AND TO LIFT STAY AS TO COUNTERCLAIMS

Without knowledge of the filing of the petition in this bankruptcy matter, American Lien Fund, L.P. ("American Lien") purchased in good faith at a post-petition tax sale a parcel of real property of which debtor American Home Mortgage Servicing, Inc. ("AHM") belatedly claims to be the rightful owner.  To that end, AHM initiated a post-petition lawsuit against American Lien in Georgia state court seeking a declaration that it owns the property, all the while remaining silent about its bankruptcy filing. American Lien hereby moves this Court for an Order annulling the automatic stay imposed under 11 U.S.C. § 362(a) to retroactively authorize the tax sale and lifting the stay to allow American Lien to protect its interests in the property by asserting counterclaims against AHM in the state court lawsuit.

**FACTS**

Property taxes on the property located at 138 Little Street, Atlanta, Fulton County, Georgia (the "Property") for the 2002 tax year were long overdue, which caused writs of fieri facias[1] to be issued on the Property. Vesta Holdings, which is a purchaser, servicer and owner of delinquent county and municipal real estate tax liens, acquired those writs of fieri facias and, pursuant to Ga. Code Ann. § 48-4-40, transferred them to the Sheriff of Fulton County, Georgia for collection by levy and sale of the Property. See Affidavit of Chad Cooper, attached as Exhibit 1, at ¶¶ 2, 3.

On April 4, 2007, the law firm of Pendergast & Jones, P.C. (the "Pendergast Firm") accessed Vesta Holdings' online payoff website in order to obtain a payoff amount for the writs of fieri facias issued on the Property. Id. at ¶ 5. The payoff amount it obtained was $2,098.58 which, if paid to Vesta Holdings, would have satisfied those writs and prevented the Sheriff from levying on and selling the Property. Id. Because that amount was not paid to Vesta Holdings, the Sheriff levied on the Property in compliance

---

[1]    A writ of fieri facias is a writ of execution commanding the sheriff to levy to satisfy the amount of a judgment from the property of the judgment debtor. Bank South, N.A. v. Roswell Jeep Eagle, Inc., 408 S.E.2d 503 (Ga. App. 1991).

with Ga. Code Ann. § 48-4-1, *et seq.* and, on June 24, 2007, seized the Property in advance of a public tax sale.

On June 25, 2007, the Sheriff posted an Entry of Service and a Notice of Tax Levy at the Property and mailed said documents directly to the Property.  See Sheriff's Entry of Service, attached hereto as Exhibit 2.  On July 20, 2007, the Sheriff issued a 20-Day Notice to, among others, AHM and Mortgage Electronic Registration System, Inc. ("MERS")[2] which stated that the 2002 property taxes remained unpaid, a tax execution had been issued on the Property, levy had been made on the Property, and the Property would be sold at a public tax sale on September 4, 2007 unless all outstanding amounts were paid.  See 20-Day Notices, attached hereto as Exhibit 3.  On August 24, 2007, the Sheriff issued 10-Day Notices to both AHM and MERS which essentially reiterated the contents of the July 20, 2007 notices.  See 10-Day Notices, attached hereto as Exhibit 4.

Having received no communications or objections from anyone (including AHM and MERS) regarding the tax levy and proposed sale, the Sheriff put the Property up for bid at public sale on September 4, 2007, and American Lien –

---

[2]    As explained *infra*, MERS allegedly acted as an agent for AHM in connection with AHM's dealings with the Property.

through its servicing agent, Georgia Lien Services, Inc. ("Georgia Lien") – was the successful bidder with a winning bid of $141,000.  See Affidavit of Roger Finnegan, attached hereto as Exhibit 5, at ¶ 3; Affidavit of Robert Mahar, attached as Exhibit 6, at ¶ 2.  American Lien obtained a tax deed to the Property from the Sheriff, which Georgia Lien recorded on American Lien's behalf on October 12, 2007.  See Ex. 5 at ¶ 4.  Since then, American Lien has carried and maintained the Property, including paying the city and county taxes for the 2008 tax year.  See id. at ¶ 5.

On May 2, 2008, AHM filed a Complaint against American Lien in the Superior Court of Fulton County, Georgia in a case styled as American Home Mortgage Servicing, Inc. v. American Lien Fund, LP, Civil Action File No. 2008 CV 150122 (the "State Court Action").  A copy of the Complaint in the State Court Action is attached hereto as Exhibit 7.  AHM's Complaint in the State Court Action includes the following allegations:  (i) a prior titleholder of the Property defaulted under the terms of certain loans he obtained from AHM Mortgage to finance his purchase of the Property; (ii) MERS, as nominee for AHM Mortgage, exercised a power of sale contained in a security deed that secured those loans; (iii) AHM purchased the Property at public

sale on June 5, 2007; and (iv) AHM recorded a deed under power of sale for the Property on June 20, 2007.  On information and belief, the Pendergast Firm represented AHM in exercising its power of sale and purchasing the Property, as that firm is listed in the scrivener's legend on the deed under power of sale.  See Ex. 7 at Exhibit D attached thereto.

In its Complaint, AHM seeks a declaration that, due to alleged procedural defects in the tax sale unrelated to AHM's bankruptcy or the stay under Section 362(a), the September 4, 2007 tax sale of the Property was void, American Lien's tax deed for the Property is null and void and should be cancelled from the record, and AHM owns the Property in fee simple and not subject to any rights or claims of American Lien.[3]  **Significantly, nowhere in the Complaint does AHM mention that it filed a petition in bankruptcy on August 6, 2007.**

On July 2, 2008, American Lien filed an Answer in the State Court Action in which it substantially denied the allegations in AHM's Complaint, set forth affirmative

---

[3]    AHM also included in its Complaint a claim for attorneys' fees because American Lien allegedly acted stubbornly litigious and in bad faith, and caused AHM "unnecessary trouble and expense."  AHM failed to include in its Complaint any factual allegations to support those accusations.

defenses, and asserted counterclaims to quiet its title in the Property and to recover its attorneys' fees in light of AHM's frivolous claims.  By letter dated July 2, 2008 from AHM's counsel in the State Court Action (which was not received by American Lien's counsel until July 7, 2008), American Lien and Georgia Lien learned **for the first time** that AHM had filed a bankruptcy petition prior to the September 4, 2007 tax sale.  See Ex. 5 at ¶ 6; Ex. 6 at ¶¶ 4-5; Affidavit of Bradley A. Hutchins, Esquire, attached hereto as Exhibit 8, at ¶¶ 1, 3.   A copy of the July 2, 2008 letter from AHM's counsel is attached hereto as Exhibit 9.  In that letter, AHM's counsel alleged **for the first time** that the tax sale was invalid as a matter of law due to the automatic stay.  American Lien and AHM agreed to stay the State Court Action pending the outcome of the instant motion.

**ARGUMENT**

**A.    The Court should annul the automatic stay for the limited purpose of retroactively authorizing the September 4, 2007 tax sale.**

An action taken by a creditor in violation of Section 362(a)'s automatic stay may be retroactively authorized by a bankruptcy court's annulment of the stay under Section 362(d).  See In re Myers, 491 F.3d 120, 127 (3d Cir. 2007) ("actions in violation of the stay, although void, may

6

nevertheless be reinvigorated through a retroactive annulment of the stay…."; see also In re Siciliano, 13 F.3d 748 (3d Cir. 1994); In re Jones, 222 Fed. Appx. 156 (3d Cir. 2007).  Section 326(d)(1) provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, *annulling*, modifying, or conditioning such stay… for cause…."  (emphasis added).  Because the Bankruptcy Code does not define "cause," courts treat "cause" as a flexible concept generally calling for a fact-intensive, case-by-case balancing test.  See In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997); In re Continental Airlines, Inc., 152 B.R. 420, 424 (D. Del. 1993).

In a case similar to the instant case, where a party seeking annulment allegedly failed to prevent another party from committing acts in violation the automatic stay, the Court of Appeals for the Third Circuit found that the proper method for determining whether "cause" exists to justify annulment of the automatic stay is to "balance the equities."  Myers, 491 F.3d at 129.  The critical factors when "balancing the equities" are:  (i) whether the party seeking annulment was aware of the bankruptcy filing or encouraged violation of the stay; (ii) whether the debtor

engaged in inequitable, unreasonable, or dishonest
behavior; and (iii) whether the party seeking annulment
would be prejudiced.  Id.  Here, all of those factors
militate in favor of annulling the stay to authorize the
September 4, 2007 tax sale.

As set forth in the Facts section *supra* and the
attached Affidavits of Roger Finnegan, Robert Mahar and
Bradley A. Hutchins, neither American Lien nor Georgia Lien
became aware that AHM had filed for bankruptcy until July
7, 2008, when American Lien's counsel received the July 2,
2007 letter from AHM's counsel.  See Ex. 5 at ¶ 6.; Ex. 6
at ¶¶ 4-5; Ex. 8 at ¶¶ 1, 3.  Therefore, American Lien had
**no** knowledge of the bankruptcy when it purchased the
Property at the tax sale, recorded its tax deed, or filed
its Answer with counterclaims in the State Court Action.
Moreover, because neither American Lien nor Georgia Lien
had  knowledge on September 4, 2007 of the bankruptcy,
American Lien necessarily could not have (on its own or
through Georgia Lien) encouraged the Sheriff of Fulton
County to violate the stay by conducting the post-petition
tax sale.  Thus, the first factor enunciated by the Myers
court weighs in favor of retroactively authorizing the tax
sale.

8

In addition, AHM acted inequitably and/or unreasonably in that it knowingly failed to take simple steps to protect itself from the events it now decries as invalid.  AHM clearly had prior knowledge of the levy on the Property and the impending tax sale by virtue of the Sheriff's Entry of Service and Notice of Tax Levy posted at and mailed to the Property, as well as the 20-Day Notices and 10-Day Notices the Sheriff served on AHM and its agent, MERS.  See Facts section *supra*.  AHM's prior knowledge of the levy and tax sale also is evident from the conduct of the Pendergast Firm, which, acting on behalf of AHM, obtained from Vesta Holdings an amount to pay off the writs of fieri facias issued on the Property almost two months **before** the Sheriff seized the Property and five months **before** the tax sale.[4]  See Facts section *supra.*

Despite its indisputable awareness of the delinquent property taxes and the levy on and upcoming sale of the Property, AHM (an entity well versed in the rights of debtors and creditors in relation to, among other things, property tax liens and sales) failed to pay the delinquent taxes on the Property or to advise the Sheriff before the

---

[4]    AHM also had constructive knowledge of the delinquent property taxes, which were of record when it presumably performed title searches on the Property before extending loans to the prior titleholder and foreclosing on the Property.

tax sale that an automatic stay was in place as a result of its bankruptcy filing.  Instead, AHM remained mute and allowed American Lien, an innocent purchaser at the tax sale, to invest its valuable time and resources in purchasing the Property.

After sitting on its hands for eight (8) months, AHM apparently had a sudden change of heart, prompting it to file the State Court Action and forcing American Lien to expend additional funds defending that action, only then to invoke the automatic stay.  In light of AHM's informed decision to do absolutely **nothing** to protect itself in the face of the levy and tax sale (which AHM could have prevented with minimal effort), it would be grossly unfair and patently unreasonable for this Court to adopt AHM's position that the tax sale was invalid due to the automatic stay.  See, e.g., In re Howard, 391 B.R. 511 (Bkrtcy. N.D. Ga. 2008) (finding that equities balance in favor of allowing annulment of stay when, among other things, non-moving party knowingly "fail[ed] to protect its own legal and financial stake" in property sold at post-petition tax sale).  Therefore, the Myers court's second factor weighs in favor of retroactively authorizing the tax sale.

Finally, American Lien clearly would be prejudiced if annulment were not granted to retroactively authorize the

tax sale. American Lien was a *bona fide* purchaser at a
properly noticed and advertised tax sale. Georgia law
recognizes that, under such circumstances, the interests
and expectations of the public (including American Lien)
would be gravely frustrated if the integrity and finality
of tax deeds could be cavalierly discarded by claimants,
especially those who have slept on their rights. See
National Tax Funding, L.P. v. Harpagon Company, LLC, 586
S.E.2d 235, 239-40 (Ga. 2003) ("[Our government] has a
compelling interest in ensuring that there is a mechanism
by which tax deeds may mature into unencumbered and
marketable fee simple titles.").

In addition, American Lien would lose the ability to
resell the Property at a profit, as well as the
transactional costs it incurred in connection with
researching the Property prior to sale, preparing for and
participating in the tax sale, recording its tax deed, and
maintaining the Property since the tax sale. American Lien
also would be unable to recover the time value of the funds
it invested in the purchase and maintenance of the Property
since the tax sale. Furthermore, American Lien would not
be able to recover the counsel fees it needless incurred to
date in defense of the State Court Action, which would have
been avoided had AHM revealed in its State Court Complaint

the filing of its bankruptcy petition.  Thus, the third

factor in the Myers court's test weighs in favor of

retroactively authorizing the tax sale.

Because all of the factors established by the Third

Circuit in Meyers militate towards retroactively

authorizing the tax sale, the equities of this case tip in

favor of annulling the automatic stay as requested by

American Lien.

**B.    The Court should lift the automatic stay for the
limited purpose of allowing American Lien to prosecute
its counterclaims in the State Court Action.**

As set forth *supra*, Section 362(d)(1) of the

Bankruptcy Code allows the Court to lift or otherwise

modify the automatic stay for "cause."  When there is

litigation pending in another forum, this Court considers

the following factors to determine if cause exists to lift

the stay so that the pending litigation may proceed or

continue:  (i) whether the debtor or its estate will suffer

great prejudice from continuation of the pending

litigation; (ii) whether the hardship to the non-bankrupt

party by maintaining the stay will considerably outweigh

the hardship to the debtor if the stay were lifted; and

(iii) the probability of the non-bankrupt party prevailing

on the merits in the pending litigation.  See In re Pursuit

Athletic Footwear, Inc., 193 B.R. 713, 718 (Bankr. D. Del.

1996); In re Rexene, 141 B.R. 574, 576 (Bankr. D. Del.
1992).

AHM can hardly contend that it would suffer great
prejudice if the stay were lifted to allow American Lien to
pursue its counterclaims in the State Court Action.   AHM
(not American Lien) voluntarily initiated the State Court
Action at a time when it undoubtedly knew it had filed a
bankruptcy petition eight (8) months prior.  "Where a
debtor institutes a lawsuit and then invokes the protection
of [the automatic stay] on a counterclaim, the situation
warrants a very thoughtful scrutiny."   In Matter of Bohack,
599 F.2d 1160, 1168-69 (2d Cir. 1979) (noting that, because
debtor was already suing creditor, lifting stay as to
creditor's counterclaim did not contravene automatic stay's
two central purposes of sparing debtor expense of defending
itself in litigation and protecting against interference
with administration of debtor's estate).

As demonstrated by AHM's post-petition filing of the
State Court Action, AHM "is obviously not concerned with
the spectre of simultaneously pursuing its claims against
[American Lien] while proceeding with its reorganization."
In re Pursuit Athletic Footwear, Inc., 193 B.R. at 719
(lifting automatic stay to allow creditor to pursue its
counterclaims in pending state court action filed pre-

petition where debtor subsequently filed identical
adversary proceeding in bankruptcy). AHM also cannot claim
that lifting the stay would compel it to participate in a
litigation in which it would not otherwise be required to
participate, as AHM has not given any indication that it
intends to stay or forego the State Court Action for the
entirety of this bankruptcy proceeding. In re Jenkins,
2004 WL 768574, *4 (Bankr. S.D. Ga. March 30, 2004)
(finding debtor would not be prejudiced by lifting of stay
to allow creditor to pursue counterclaims in state court
action because debtor, who initiated state court action,
would not be required to litigate in forum where it would
not otherwise have to litigate) (attached hereto as Exhibit
10). Under these circumstances, AHM would not suffer any
prejudice if the stay were lifted to allow American Lien to
prosecute its counterclaims in the State Court Action.

In addition, American Lien would suffer hardship if
the stay were not lifted to allow it to advance its
counterclaims against AHM, who (as set forth above) would
suffer no prejudice or hardship if the stay were lifted.
American Lien's current inability to proactively defend and
protect its interests in the State Court Action is a severe
handicap that constitutes a hardship for purposes of this
analysis. See In re Jenkins, 2004 WL 768574, at *4.

14

Finally, American Lien is likely to prevail on the merits in the State Court Action.  AHM's claim in the State Court Action is premised upon its erroneous conclusion that, based on the holding in Canoeside Properties, Inc. v. Livsey, 589 S.E.2d 116 (Ga. 2003), the tax sale and resulting tax deed in the instant matter are void.  AHM fails to appreciate that the holding in Canoeside applies only to **judicial** *in-rem* tax sales conducted pursuant to Ga. Code Ann. § 48-4-75, *et seq*.  The tax sale in this matter was a **non-judicial** sale conducted pursuant to the provisions of Ga. Code Ann. § 48-4-1, *et seq*.  Thus, the Canoeside case has no application here.  See Tharp v. The Harpagon Company, LLC, 604 S.E.2d 156 (2004).

Even assuming *arguendo* that Canoeside applies to the tax sale and tax deed in this case (which it does not), American Lien was a *bona fide* purchaser of the tax deed. Pursuant to Ga. Code Ann. § 9-13-168, an innocent purchaser at a tax sale is bound only to see that the officer selling the property has competent authority to sell and that he is apparently proceeding to sell under the prescribed forms, which Georgia Lien did on American Lien's behalf in this case.  Any other irregularities in the tax sale process or with the tax deed can create questions and liabilities between only the officer selling the property and the

persons interested in the sale.  Thus, the alleged
irregularities raised by AHM in the State Court Action are
a matter it must take up with Fulton County, not American
Lien.  As such, American Lien is likely to prevail on the
merits in the State Court Action.

AHM seeks to render American Lien a defenseless
"sitting duck" by suing it post-petition in Georgia state
court and pursuing its claims in the State Court Action,
but hiding behind the automatic stay when American Lien
asserts its counterclaims.  "The shield of [the automatic
stay], which is procedural and vests no intrinsic interest
in property to the estate, should not be used as a sword to
divest other parties of legitimate interests in property
particularly where the debtor has the knowledge and means
to bring whatever claim he may have for use of the funds on
for prompt hearing."  In re Edgins, 36 B.R. 480, 484 (9th
Cir. 1984).  The Court should not countenance AHM's
inequitable attempt to wield the automatic stay as both a
shield and a sword in the State Court Action, which is a
battle of AHM's own making.  Instead, the Court should
level the playing field by lifting the stay to allow
American Lien to proceed with its counterclaims against
AHM.

In the event the Court is not inclined to lift the stay as requested, American Lien respectfully requests that the Court enjoin AHM from proceeding in the State Court Action so that the issues presented therein may be decided by this Court in the context of an adversary proceeding, in which both American Lien and AHM would be permitted to simultaneously present, defend, prosecute, and protect their interests in the Property.

### CONCLUSION

For the foregoing reasons, American Lien respectfully requests that the automatic stay be annulled to retroactively authorize the September 4, 2007 tax sale and lifted to permit American Lien to prosecute its counterclaims in the State Court Action.  In the alternative, American Lien respectfully requests that the Court enjoin AHM from proceeding in the State Court Action so that the issues presented therein may be decided by this Court in the context of an adversary proceeding.

Respectfully submitted,

/s/   John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
David A. Bilson (#4986)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Tel. (302) 655-4200
Attorneys for Movant
Dated:   October 13, 2008          American Lien Fund, L.P.