UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | )   | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., | ) | |
| a Delaware corporation, et al., | ) | Case No. 07-11047 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline: November 5, 2008** |
| | ) | **Hearing Date: November 12, 2008 @ 10:00 am** |

### IRON MOUNTAIN INFORMATION MANAGEMENT, INC.'S SECOND MOTION TO COMPEL PAYMENT OF ADMINISTRATIVE EXPENSES

Iron Mountain Information Management, Inc. ("Iron Mountain") respectfully requests that this Court enter an Order (1) compelling the Debtors to pay Iron Mountain's unpaid invoices for post-petition storage and shredding services rendered under 16 executory contracts in the amount of $170,585.51, plus interest and fees and costs of $3,000.00; and (2) requiring the Debtors to timely pay Iron Mountain's invoices for services rendered after the date of this motion. In further support of its motion, Iron Mountain and states as follows:

### Background

1.  On August 6, 2007 (the "Petition Date") the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.  Prior to and subsequent to the Petition Date, the Debtors have maintained approximately seventeen (17) accounts with Iron Mountain for document and data storage and document shredding at various locations throughout the United States.[1] As

---

[1] On or around October, 2007 the Debtors cured, assumed and assigned one Iron Mountain contract in conjunction with the sale of certain business assets. At the time of the aforementioned asset sale Iron

summarized on Exhibit A, the amount owing for post-petition goods, services and interest under the Remaining Accounts as of September 22, 2008 was $170,585.51.[2]

3. Iron Mountain has submitted invoices to the Debtors for the above amounts in accordance with the parties' executory contracts.

4. In addition to presenting invoices to the Debtors through normal business channels, Iron Mountain also initially brought the problem of unpaid post-petition invoices to the attention of Debtors' counsel in conjunction with Iron Mountain's Objection to Proposed Cure Amount (the "Cure Objection," Docket No. 815) filed with this Court on September 19, 2007. In addition to the Cure Objection, Iron Mountain filed an earlier Motion to Compel Payment of Administrative Claim on December 20, 2007 and more recently filed a Plan Objection on October 17, 2008, due to the Debtor's continued to failure to pay administrative expenses.

5. Before and since filing the Cure Objection, the first Motion to Compel Payment of Administrative Claim and up to the filing of the Plan Objection, Iron Mountain personnel and its counsel have made several requests that the Debtors and/or the non-Debtor purchaser American Home Mortgage Servicing, Inc. ("AHMSI") cure this significant arrearage. Despite such requests, the Debtors have failed and refused to perform their payment obligations with respect to the Remaining Accounts.

6. In addition to the amounts described in paragraph 2 above, Iron Mountain is also entitled to its reasonable attorneys' fees and other costs of collection pursuant to its agreements with the Debtors. Due to the Debtor's failure and refusal to perform its

---

Mountain had identified 15 accounts associated with the Debtors. Subsequently, Iron Mountain identified two additional accounts linked to the Debtors and governed by the contracts After accounting for the one assigned contract, sixteen accounts for various hardcopy and data storage and for shredding services (the "Remaining Accounts") remain either the Debtors' responsibility or the responsibility of a non-Debtor purchaser of certain assets, American Home Mortgage Servicing, Inc.

[2] Iron Mountain's schedule of amounts owed in Exhibit A reflect post-petition arrearages of $188,097.77. Iron Mountain recently resolved the first motion that it filed on December 20, 2007 requesting payment of administrative expense in which it accepted $7,500.00 of the $17,512.26 in disputed charges that were incurred prior to December 17, 2007. Accordingly, the figure on Exhibit A has been reduced by $17,512.26.

2

contractual obligations, Iron Mountain has incurred as of the date of this motion attorneys' fees well in excess of $3,000.00.

7. After accounting for the unpaid post-petition invoices and contractual attorneys' fees, the total administrative expense arrearage as of September 22, 2008 is $173,585.51.

## Argument

8. Iron Mountain is entitled to an administrative priority claim based on the storage and shredding services it has provided to the Debtors' estates because the Bankruptcy Code obligates the Debtors to pay for the amounts requested herein. Specifically, section 503(b)(1)(A) of the Bankruptcy Code provides as follows:

> After notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving their estate, including wages, salaries, or commission for services rendered after the commencement of the case[.]

9. A determination of entitlement to an administrative claim is made by examining whether the debt: "(1) arose from a transaction with the debtor-in-possession [or trustee] as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefited the estate." In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976).

10. Here, all of the charges and expenses, which are the subject of this Motion, are the result of services provided by Iron Mountain for the benefit of the Debtors and their estates in accordance with the parties' contracts.

11. The Debtors' estates have received, and continue to receive, a post-petition benefit from Iron Mountain's services. In particular, the Debtors have been relieved of the burden of storing and protecting hardcopy records. In addition, Iron Mountain has provided periodic post-petition shredding services, protecting confidential records on behalf of the Debtors and its customers. In addition, Iron Mountain has made

numerous pick- ups and deliveries of hardcopy records and/or electronic data in accordance with the Debtors' instructions.

12. The Debtors have not rejected the contracts governing the Remaining Accounts; nor have the Debtors abandoned the records Iron Mountain continues to store on behalf of the Debtor's estates.

13. Fees and costs related to post-petition goods and services provided to the Debtors and their estates continue to accrue at the approximate monthly rate of $30,000.00.

14. Against this backdrop, it would be patently unfair to allow the Debtors to continue shirking their contractual payment obligations. Even if the Debtors were to contend now that they no longer need some or all of the Records, such a determination would not retroactively eliminate the benefit conferred upon the Debtors and their estates or relieve the Debtors of their obligation to pay Iron Mountain's administrative expense claim. See, e.g., In re Grand Union Co., 266 B.R. 621, 625-26 (Bankr. D.N.J. 2001)(warehouseman entitled to administrative expense for storage of goods for debtor).

15. Alternatively, Iron Mountain has given consideration to the Debtors in the form of continued storage, shredding and other services, which entitle it to an administrative expense claim. See In re Grand Union Co., 266 B.R. at 626.

16. Moreover, this Court should find that the Debtors are liable for the amounts requested by Iron Mountain to avoid unjust enrichment of the estates. Under the principles of restitution, Iron Mountain is entitled to an administrative expense claim because Iron Mountain's post-petition storage, shredding, pick up, delivery and other services have provided a benefit to the estate. See United Trucking Service, Inc. v. Trailer Rental Co., (In re United Trucking Service, Inc.), 851 F.2d 159, 162-63 (6th Cir. 1988).

17. Even if Iron Mountain's storage and shredding services did not benefit the Debtors' estates – which they do – Iron Mountain's administrative expense claim should

4

be paid because it arises from the Debtors' wrongful attempt to procure storage and shredding services without making the requisite payment therefor. See Reading v. Brown, 391 U.S. 471 (1968). It would be unfair to deny Iron Mountain its valid administrative expenses while allowing the estate to avoid its contractual obligations.

18. Courts have held that there is a rebuttable presumption that the contract rate is the appropriate rate for calculating an administrative expense. See, e.g., Bio-Med, 131 B.R. at 74 (citing In re Coin Galleries of Am., 72 B.R. 415, 417 (D. Mass. 1987). The Debtors have offered no evidence whatsoever to suggest that the contract rate does not represent the actual, necessary cost and expense of record retrieval, storage, delivery and shredding, associated with the Remaining Accounts.

19. An award of attorneys' fees and costs is appropriate in this case because the governing contracts provide for payment of such fees if necessary to enforce its terms. See e.g., Matter of Custom Millwork, Inc., 35 B.R. 171 (Bankr. D. Haw. 1983).

20. Given the ever-growing magnitude of the amounts owing with respect to post-petition storage and shredding services rendered on the remaining accounts, the entire arrearage should be paid forthwith. Given the Debtors' present inability or unwillingness to pay their bills when due, administrative solvency is rightfully called into question. The immediate cure of this significant post-petition arrearage will provide a small measure of assurance that the Debtors will be able to pay their bills timely going forward.

21. Iron Mountain reserves and does not waive any rights at law or equity that it may have against any of the Debtors or any other affiliate, person or persons in connection with this motion to compel payment of administrative expenses. Other than as set forth in this motion, no other request for payment of the sums set forth herein has been made against the Debtors or any other person or persons. Iron Mountain further reserves all rights and remedies related to the disposal of the Debtors' records under section 7-209 of the Uniform Commercial Code, or otherwise.

## Conclusion

For the foregoing reasons, Iron Mountain respectfully requests that this Court, after proper notice and hearing, enter an Order:

A.    requiring the Debtors to pay, within 10 business days, the total amount of $170,585.51 to Iron Mountain Information Management, Inc., and fees and costs of $3,000.00; and

B.    granting such other relief as is just.

October 24, 2008
Wilmington, Delaware

ARCHER & GREINER, P.C.

*/s/ Charles J. Brown, III*
Charles J. Brown, III (No. 3368)
300 Delaware Avenue, Suite 1370
Wilmington, DE 19801
Telephone: 302.777.4350
Facsimile: 704.343.4352

-and-

Frank F. McGinn, Esq.
David Phalen, Esq.
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
Tel (617) 422-0200
Fax (617) 896-6275

*Counsel to Iron Mountain Information Management, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I caused a true and correct copy of the foregoing document to be served via first class mail, postage prepaid upon the following:

Pauline Morgan, Esq.
Edward J. Kosmowski, Esq.
Maggie Whiteman, Esq.
Young, Conaway, Stargatt & Taylor
1000 West Street, 17th Floor
Wilmington, DE 19801
*(Counsel to Debtor)*

United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035

Bonnie Glantz Fatell, Esq.
David W. Carickhoff, Jr., Esq.
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
*(Counsel to Committee)*

                                      /s/ Charles J. Brown, III
                                      Charles J. Brown, III (# 3368)

Dated: October 24, 2008