UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                            . Case No. 07-11047(CSS)
                                  .
  AMERICAN HOME MORTGAGE          .
  HOLDINGS, INC., a Delaware      .
  Corporation, et. al.,           . 824 Market Street
                                  . Wilmington, Delaware  19801
                   Debtors.       .
                                  . October 2, 2008
. . . . . . . . . . . . . . . . . 11:00 a.m.

TRANSCRIPT OF MOTIONS HEARING
BEFORE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:                  Young Conaway Stargatt &
                                  Taylor, LLP
                                  By:  SEAN BEACH, ESQ.
                                       NATHAN D. GROW, ESQ.
                                  The Brandywine Building
                                  1000 West Street, 17th Floor
                                  P.O. Box 391
                                  Wilmington, DE  19899


For Unsecured Creditors Comm:     Blank Rome, LLP
                                  By: DAVID CARICKHOFF, ESQ.
                                  Chase Manhattan Centre
                                  1201 Market Street
                                  Suite 800
                                  Wilmington, DE 19801


For Unsecured Creditors Comm.:    Bifferato, Bifferato &
                                  Gentilotti
                                  By:  CONNOR BIFFERATO, ESQ.
                                  Buckner Building
                                  1308 Delaware Avenue
                                  P.O. Box 2165
                                  Wilmington, DE  19899


Audio Operator:                   Leslie Murin

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

**APPEARANCES (CONT'D):**

For Creditors' Committee:      Hennigan, Bennett & Dorman
By:  MICHAEL MORRIS, ESQ.
865 South Figueroa Street
Suite 2900
Los Angeles, CA  90017

For JP Morgan Chase:      Landis Rath & Cobb, LLP
By:   ADAM G. LANDIS, ESQ.
      MATTHEW McGUIRE, ESQ.
919 Market Street
Wilmington, DE  19801

For WR Recovery Fund III:      Greenberg Traurig, LLP
By: SANDRA G.M. SELZER, ESQ.
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE  19801

For Bank of America:      Potter, Anderson & Corroon,
LLP
By: GABRIEL MacCONAILL, ESQ.
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801

For CA Taxing Authorities:      Law Office of Martha E Romero
By:  MARTHA E. ROMERO, ESQ.
6516 Bright Avenue
Whittier, CA

1          COURT CLERK:  All rise.

2          THE COURT:  Please be seated.  Good morning.

3          MR. GROW:  Good morning, Your Honor.  Nathan Grow

4  from Young, Conaway, Stargatt & Taylor, on behalf of the

5  debtors.

6          Referring to the amended agenda that the debtors

7  filed in connection with this hearing, matters 1 through 17

8  have been adjourned or resolved.

9          Matter 18 is the debtors' 16th omnibus

10  non-substantive objection to claims.  Debtors entered a

11  certificate of no objection and I'd like to thank the Court for

12  reentering the order sustaining the 16th omnibus objection.

13          THE COURT:  Okay.

14          MR. GROW:  Matter number 20 on the amended agenda is

15  the debtors' 13th omnibus substantive objection to claims.  We

16  had a hearing on this objection a few weeks ago, Your Honor,

17  and one of the claims that the debtors objected to was a claim

18  by Waldners Business Environments Inc., claim number 1741.

19  There was -- the basis of this objection was that the debtors

20  were not liable because in consultation with the claimant, the

21  debtors determined that this claim has been resolved.

22          Your Honor asked for more detail regarding this

23  objection at the hearing Waldners had not filed a response, so

24  to follow up, the debtors and Waldners entered into a

25  stipulation which was approved by the Court on December 20th,

1  2007.  It was entered on the docket at number 2662.  I have a

2  copy of that stipulation if Your Honor would like to see it.

3           THE COURT:  No, that's not necessary.

4           MR. GROW:  Okay.  Paragraph one of the stipulation

5  says that Waldners agrees to withdraw their proof of claim.  To

6  date, that has not happened, so the debtors objected.

7           THE COURT:  Okay.  All right, I'll sign the order.

8           MR. GROW:  Okay  A similar situation with objection

9  to a claim by American Corporate Records Center, Inc., claim

10 8520.  Your Honor asked for more information about this one

11 during the hearing on the 13th objection.  The debtors and ACRC

12 entered to a term agreement -- a term sheet which the Court

13 approved on January 30th, 2008.  Paragraph three of this term

14 sheet states that ACRC will relinquish any and all secured

15 claims in the debtors bankruptcy cases.  Claim 8520, which the

16 debtors objected to is a proof of claim for a secured amount

17 and ACRC did not object to the relief requested.

18           THE COURT:  All right.  I'll grant the objection.

19           MR. GROW: Okay.  And then one more issue that's a

20 hold over from the 13th is an objection to a claim by Donna

21 Melli.  This is claim number 6815, the debtors objected on the

22 basis that Donna Melli was not entitled to the $29,000 claim

23 that she asserted on the basis that her employment contract

24 does not state that she's entitled to this amount.

25           I've been in contact with Ms. Melli in regard to her

1 claim, this claim is based on a provision of her employment

2 contract that grants Ms. Melli a bonus and the contract states

3 that she was eligible to receive this bonus on payment dates of

4 March 2007, March 2008, March 2009.

5       Upon information and belief Ms. Melli was paid the

6 first installment in March 2007 and she is claiming the

7 installments that were paid in March 2008 and 2009, however,

8 Ms. Melli's contract states that to receive each installment

9 she needed to be employed on the scheduled payment dates.

10       Ms. Melli's employment with the debtors was

11 terminated on August 3rd 2007, therefore, pursuant to the terms

12 of her contract, Ms. Melli is not entitled to the claimed

13 amount and the debtors request that her claim be expunged.

14       THE COURT:  Okay.

15       MR. GROW:  I have a copy of her employment contract

16 that I can hand up to the Court that Ms. Melli sent to me.

17       THE COURT:  Okay.  Let me see that, actually.

18 Provided the contract says what you've represented it says,

19 I'll grant the motion.

20       MR. GROW:  Okay.  Ms. Melli may be on the phone.  I'm

21 not sure if she wants to be heard.

22       THE COURT:  Ms. Melli?  We have nobody on the phone.

23 Thank you.  Does she concedes your point or does she still --

24       MR. GROW:  I've talked to Ms. Melli on the phone, she

25 concedes that the contract says what it says.

1          THE COURT:  Okay.

2          MR. GROW:  Actually let me hand it up if I may

3    approach.

4          THE COURT:  Yes, please.  Thank you.

5          MR. GROW:  The relevant provision is at the bottom of

6    Page 8 of her employment contract.  I've also handed up the

7    response that she filed.  So, I've spoken with Ms. Melli

8    regarding this and she says upon being hired she was told that

9    she would receive this bonus, however, according to the terms

10   of her contract, she was only to receive the bonus if she was

11   employed on the dates.

12         THE COURT:  Yes.  I'll sign the order, I'll sustain

13   the objection.

14         MR. GROW:  Okay, Your Honor, I have a form of order,

15   a third form of order sustaining the 13th objection that

16   references these three claimants.

17         THE COURT:  Okay.  Thank you.  Before we move on, I

18   think we skipped a number on the agenda.  19?  First lien

19   foreclosures?

20         MR. GROW:  Yes.  A certificate of counsel has been

21   filed on this one and no hearing is required at this time.

22         THE COURT:  Okay.

23         MR. GROW:  Did Your Honor have any questions or --

24         THE COURT:  No, I didn't have any questions, I just

25   was -- wanted to make sure I understood the status.

1          MR. GROW:  Sorry.

2          THE COURT:  I don't know if I've gotten those yet.

3  Well, let's continue onto the next omnibus, to the extent I

4  never get a signed order, or a certification actually sent to

5  me.  I know that's not your issue.  But I don't like them to

6  drop off the radar screen.  But I expect I'll get hard copies

7  of that this week.

8          MR. GROW:  We'll follow up and make sure that that

9  gets delivered to you if it hasn't been already.

10          THE COURT:  Okay, thank you.

11          MR. GROW:  Item number 21 on the amended agenda is

12  the debtors 15th omnibus objection to claims.  Would Your Honor

13  like me to walk through the objection?

14          THE COURT:  No, that's not necessary and I think we

15  can rely on the supporting affidavit as evidence unless anyone

16  has an objection.  Why don't you should run through any

17  responses you've received and how you want to proceed and then

18  if I have any questions we'll touch on those.

19          MR. GROW:  Okay, great.  The debtors received several

20  responses to the 15th omnibus objection.  On the basis of the

21  responses received, the debtors request that the hearing be

22  adjourned with respect to several of the claimants.  Your

23  Honor, perhaps it would be easier if I could hand up a revised

24  form of order.

25          THE COURT:  Okay.

1          MR. GROW:  You can kind of follow along.  May I

2 approach?

3          THE COURT:  Yes.  Thank you.

4          MR. GROW:  Okay.  As noted in the revised form of

5 order that I just handed up, the debtors wish to adjourn the

6 objection with respect to the claims of the following

7 claimants.  Joseph Dionisio, Ray Palen, California Cleaning

8 Concepts, Kenneth R. Hefner, McDonald Hopkins, LLC, Tammy L.

9 Pederson, Shervonne Powell, T. Crain Houston, Beverly Creswell,

10 John Johnston, Michael Kalmonson, Michael Wheeler, Office Max,

11 Robin Balfour, Grailing J. Carter, and Joshua E. Kappelman.

12          Additionally, I'd like to note for record that the

13 debtors have withdrawn their objection to the claims of the

14 following claimants.  Betty Johns, which is proof of claims

15 number 2600, 2601, 2602 and 2603, and the Department of the

16 Treasury's proof of claim number 1366.

17          THE COURT:  Okay.

18          MR. GROW:  The debtors also received a response from

19 Nancy Levine and we've reached out to Nancy Levine to discuss

20 her claim, debtors objected asking that the Court expunge her

21 claim in full.  After discussions with Nancy Levine, debtors

22 have determined that the appropriate relief should be to reduce

23 her claim to an allowed amount of $5,000 priority.

24          THE COURT:  Is Ms. Levine agreeable?

25          MR. GROW:  Ms. Levine is agreeable to this.

1          THE COURT:  Okay.

2          MR. GROW:  And on the revised form of order, then, we

3  took Ms. Levine's claim from Exhibit A which is an exhibit that

4  would expunge her claim, bumped it to Exhibit C, where her

5  claim will be reduced from the alleged amount, which was a

6  little over 8,000 to 5,000 priority.

7          THE COURT:  Okay.

8          MR. GROW:  And the only other response that we

9  received that I haven't addressed is a response by Rachael

10 Georgas.

11         THE COURT:  Okay.

12         MR. GROW:  Which does not contest the relief

13 requested, instead it states that she agrees to the relief

14 requested.

15         THE COURT:  Okay.  Let me check my notes.

16         MR. GROW:  Okay.

17         THE COURT:  Okay.  Hang on.  So, you say Robin

18 Balfour is off?

19         MR. GROW:  Adjourned.

20         THE COURT:  All right.  Just a few things.  On the

21 employee status as a member of the sales staff and/or

22 management, my understanding is basically because they were

23 members of the sales staff and/or management and, therefore,

24 while entitled to take days off from work, per the policy, they

25 were not entitled to paid vacation days.  And then the policy

1 says, full time, non-exempt, full time commissioned, full time

2 exempt employees and part time employees are eligible for

3 vacation benefits described, however, full time commissioned

4 employees will not receive this benefit.

5       So, what's the -- what did the debtors do to ensure

6 or to make a determination that the claims that sort of fall

7 under this category are full time commissioned employees and

8 specifically when you say sales staff and/or management, do you

9 mean management of the sales department?

10       MR. GROW:  Okay.  Just to be sure of what the

11 question is, Your Honor is asking how did we determine that

12 these employees are commissioned employees --

13       THE COURT:  Yes.

14       MR. GROW:  -- in deciding to allow vacation pay?

15       THE COURT:  To now allow.

16       MR. GROW:  To now allow.  Well, Your Honor, the

17 determination in looking at these claims to decide whether --

18 talking about this specific group of claims, the determination

19 was whether or not these employees were sales employees or

20 whether they were assistant vice presidents or above.

21       THE COURT:  Okay

22       MR. GROW:  And, so I think that's the relevant

23 determination under the policy, to determine whether they are

24 entitled to vacation pay or not.

25       THE COURT:  Right.  And, if they're either of those,

1 they're not entitled to vacation pay?

2 　　　　　MR. GROW:  That's correct.   Sales employees and

3 assistant vice presidents and above.

4 　　　　　THE COURT:  Okay.  So, how did you determine -- I

5 guess assistant VP and above is easy.

6 　　　　　MR. GROW:  VP and above is just by their title, I

7 suppose.

8 　　　　　THE COURT:  And sales is sort of -- how is that sort

9 of --

10 　　　　　MR. GROW:  The debtors and their classification of

11 their employees have a group of their employees classified as

12 sales employees, according to the functions that they perform

13 in their jobs.  It's employees who were engaged in sales.

14 　　　　　THE COURT:  They did.  All right.  Now, Punid Agrawal

15 (phonetic).

16 　　　　　MR. GROW:  Agrawal, I think, yes.

17 　　　　　THE COURT:  Agrawal, is that -- I'm sorry, is that a

18 Ms. or Mr.?

19 　　　　　MR. GROW:  Mr.

20 　　　　　THE COURT:  Mr.  Mr. Agrawal.  Was he with the

21 company before the bankruptcy or he is -- was he somebody --

22 　　　　　MR. GROW:  He is with Kroll, the financial advisor

23 and I believe began working with the company the same time as

24 Kroll, which was before the petition date.

25 　　　　　THE COURT:  Okay.  I'll grant the objection on that

1  basis.

2       MR. GROW:  Thank you, Your Honor.

3       THE COURT:  Just a minute, Mr. Grow.

4       MR. GROW:  Okay.  If it's Ms. Melli on the phone, she

5  may want to be heard in regards --

6       THE COURT:  Yes.  Well, we'll go back.  Do we know

7  who it is?  We don't know who it is.  That's okay.  We'll find

8  out when they check in.

9       UNIDENTIFIED FEMALE SPEAKER:  Thank you for standing

10 by, can I get the name of your court please?

11      COURT CLERK:  Judge Sontchi.  We understand that

12 court call was trying to connect for American Home Mortgage

13 hearing.

14      UNIDENTIFIED FEMALE SPEAKER:  Okay.  Let me go ahead

15 and connect you to that operator.

16      COURT CLERK:  Thank you.

17      UNIDENTIFIED FEMALE SPEAKER:  You're welcome.

18                    (Pause)

19      COURT CALL OPERATOR:  Hi, this is Amber.  I'm going

20 to be the operator assisting you today.

21      COURT CLERK:  I understand we have callers on the

22 line for American Home Mortgage.

23      COURT CALL OPERATOR:  Yes, I do have a couple of

24 people.  Do you need to know their name?

25      COURT CLERK:  Yes. Please let me know who they are

**J&J COURT TRANSCRIBERS, INC.**

1  and then you can go ahead and put them through.

2          COURT CALL OPERATOR:  Okay.  One is Michael Morris.

3          COURT CLERK:  Okay.

4          COURT CALL OPERATOR:  Corey Golgowski (phonetic).

5          COURT CLERK:  Okay.

6          COURT CALL OPERATOR:  Mark Indelicato.

7          COURT CLERK:  Okay.

8          COURT CALL OPERATOR:  Donna Melli.

9          COURT CLERK:  Okay.

10         COURT CALL OPERATOR:  Tina Moss.

11         COURT CLERK:  Okay.

12         COURT CALL OPERATOR:  And Punid Agrawal.

13         COURT CLERK:  Okay, thank you.  You can put them

14  through live.

15         COURT CALL OPERATOR:  Okay, one moment.

16                      (Pause)

17         THE COURT:  This is Judge Sontchi, you're connected

18  to the hearing in Delaware.  We are currently dealing with the

19  item 21 on the agenda which is the 15th omnibus hearing.  I

20  understand Ms. Melli is on the line, is that correct?

21         MS. MELLI:  Yes, I'm here.

22         THE COURT:  Okay.  We already dealt with your issue,

23  but we'll back track and deal with it again, since you're now

24  on the phone.

25         MS. MELLI:  Okay.

1          THE COURT:  My understanding of your position is that

2     you were entitled to some bonuses under your employment

3     contract but Mr. Grow has provided me with a copy of your

4     employment contract which in indicates that in order to be

5     entitled to those bonuses, you had to be employed at the time

6     the were due.  Is that your understanding?

7          MS. MELLI:  Well, they were -- the monies due were

8     monies that I had already earned and when American Home

9     Mortgage wanted me to come there, they said they would make

10    good for that, but they wanted to be able to pay me over three

11    years.  And so, of course, I had no problem with that because

12    that's how things usually get paid out.  And just as long as I

13    stayed employed with them, you know, and didn't leave, was

14    really the intent of it, that I would be paid.

15         I mean, I didn't quit, obviously, and I -- as 13th

16    most profitable in the company at the time, I don't think I was

17    on may way to being fired by any stretch of the imagination.

18    But, of course, I don't know what happened and here we are in a

19    bankruptcy case.

20         THE COURT:  Sure.  And what --

21         MS. MELLI:  I had already earned the money, that's

22    why I felt I should be paid.

23         THE COURT:  -- this was -- I'm sorry.  This was a --

24    what's defined as a welcome bonus, I guess.

25         MS. MELLI:  No, I had that separately.

1          THE COURT:  That's different?

2          MR. GROW:  It's the next paragraph down, Your Honor.

3  The carryover of contingent compensation.

4          THE COURT:  Okay.  Carryover of contingent

5  compensation.  What was the contingent compensation?

6          MS. MELLI:  That I would come -- I had worked with

7  another company and they wanted me to come there and there was

8  monies that I had already earned, that was owed to me.  And

9  instead of waiting and staying at the company, they wanted me

10 to come sooner.  So, I said I would if they paid me money that

11 was owed, which they had no problem doing.

12         MR. GROW:  Your Honor, if I may make a point.

13         THE COURT:  Yes, Mr. Grow.

14         MR. GROW:  The paragraph that addresses this, first

15 of all, characterizes this bonus as contingent.  It states that

16 the employee shall only be eligible to receive this

17 compensation, and then goes on to state that the terms by which

18 she could receive this compensation is that she be employed on

19 the payment dates which were March 2007, March 2008, March 2009

20 and I don't believe that Ms. Melli contends that she was

21 employed either on March 2008, and, obviously, not on March

22 2009.

23         THE COURT:  Well, no, but her argument is that, in

24 effect, she was vested in the bonus and that she was terminated

25 without cause.  But I don't see anything in this paragraph that

1   says she was vested.  It's interesting, it's defined as

2   contingent bonus, but the actual language is, it doesn't say

3   anything.   It's "Employee shall be eligible to receive

4   compensation, which was defined as "carryover contingent

5   bonus", from the company which represents amounts would have

6   received, et cetera, et cetera, but I agree with you that the

7   last sentence, Ms. Melli, is the tricky one.

8             MS. MELLI:  Yes, Your Honor

9             THE COURT:  It says, to receive each installment you

10  must be employed by the company on the scheduled payment date

11  and it doesn't say anything about, unless you were terminated

12  for cause.

13            MS. MELLI:  Right.  And Your Honor, they had -- with

14  other companies, or in the past I should say, that was, if you

15  leave a company, you know, if I would have walked out, they

16  don't want to have to owe you the money, they want to make sure

17  that you were going to stay with them.  And that's you know,

18  how things have worked over at least the ten years that I've

19  been in the business.

20            THE COURT:  Right.  I assume you have a clause in

21  here, Mr. Grow, that says that the document controls?   Entire

22  agreement clause?

23            MR. GROW:  Regardless of whether there is -- well,

24  it's paragraph 22 on Page 5.

25            THE COURT:  Yes, I see it.

1          MR. GROW:  And even without that paragraph, I think

2     it's obvious that she signed an employment contract, her

3     employment has to be governed by the terms of this contract.

4          THE COURT:  Well, what she's basically trying to do

5     is admit parole evidence as to the practices in the industry

6     that she would argue is evidence that the contract doesn't mean

7     what it says, although I only get to admit parole evidence and

8     parole evidence, Ms. Melli, is simply evidence other than the

9     terms of the document.

10          Under contract law, which is governed by -- yes,

11     under New York contract law, in order to figure out what a

12     party's rights and obligations are under a contract, I have to

13     look first to the actual document, and if it's clear and

14     unambiguous on the face of the written words in the document,

15     I'm not allowed to consider any additional evidence, such as

16     conversations that occurred prior to the contract being

17     entered, or practices in the industry or anything like that,

18     unless the document is ambiguous in some way, and then I can

19     hear additional evidence, which will include, for instance,

20     representations that may or may not have been made to you

21     before you entered into the contract or, you know, industry

22     practice, et cetera.

23          The bonus provision is pretty clear, that you must be

24     employed at the time the bonus becomes due in order to receive

25     the payment, and that -- I'm sorry, and that whether or not

1  you're fired for cause or not, doesn't appear to be a factor.

2  An additional strike against you, to put it somewhat bluntly,

3  is there's a provision in the contract under paragraph 22 which

4  basically says the parties agree that I need to look at the

5  contract to make a decision and I don't -- and any other

6  discussions, negotiations, understandings, either in writing or

7  orally between the parties are not relevant.  So I have those

8  two provisions in the contract that are pretty clear.

9          I do have a question, it says that this commission

10  plan, which is what the bonus is contained in, or the bonus

11  provision is contained in, can be modified.  Was the bonus plan

12  ever modified, Ms. Melli?

13          MS. MELLI:  No, it wasn't.

14          THE COURT:  All right.  I'm inclined to grant the

15  objection and disallow the claim based on the terms of the

16  contract.  Do you have anything else that you think might --

17  you want to say or anything you want to say to the Court in

18  connection with this matter?  This is your chance to, you know,

19  tell me what you think.

20          MS. MELLI:  Well, I believed and trusted and I still

21  would in the people that employed me because I felt that their

22  intent was honorable, and I do read as you do that last

23  sentence and I understand what you're saying.  And I've done my

24  best, I haven't employed an attorney on my behalf, but I feel

25  the money was earned and owed and I did speak with Mr. Grow in

1   August when he -- they were postponing and they said that they

2   were postponing my date because they wanted to make a

3   settlement with me and that they needed more time, until

4   September to go over the evidence, which I guess I foolishly

5   thought that meant they wanted to come to a term with me.  And

6   I didn't hear anything from anybody until I actually called the

7   court to find out, just by accident, two days ago, that I was

8   scheduled for today.  So, I don't know what else I was supposed

9   to do and how things are supposed to work, but I still feel I

10  earned the money and should get paid.

11          THE COURT:  All right, thank you.  Mr. Grow, can you

12  address the statements in connection with negotiations

13  concerning the objection and Ms. Melli's comments which seem to

14  indicate that she didn't receive notice that we would be going

15  forward today.

16          MR. GROW:  Your Honor, Ms. Melli --

17          THE COURT:  I know you talked to a lot of people, so,

18  remember as best you can.

19          MR. GROW:  Right.  Ms. Melli, to the best of my

20  knowledge, received notice of the 15th omnibus objection when

21  it was filed.  It was originally scheduled for the last hearing

22  date which was 9/15, I believe.  And we filed agenda and then

23  an amended agenda in connection with that hearing.  It stated

24  that the 15th omnibus objection was being adjourned until

25  today.  Ms. Melli would have received notice of that agenda and

1 Ms. Melli and I have had email contact and talked on the phone

2 and I believe that in that conversation it would have come up

3 that the hearing was scheduled for today.

4        THE COURT:  Well, what about her -- and that was at

5 my request that we continued the lat hearing because we had not

6 had not had an opportunity to go through the binders.

7        What about the, I guess there was at least an

8 indication that there might be settlement negotiations, but

9 ultimately, they didn't occur.

10        MR. GROW:  I'm not sure I heard correctly but, Ms.

11 Melli, did you say that you and I talked in August?

12        MS. MELLI:  Yes, we did on August 18th, we you had

13 requested me to send you yet another copy of the contract that

14 I had.

15        MR. GROW:  Oh, of this year.  Okay.  And you said

16 that we had talked about settlement?

17        MS. MELLI:  Yeah, you said that you were having it

18 put off until September, the date, because the client wanted a

19 little more time to look at the documents and that they wanted

20 to settle.  And, then when I called you, that was actually the

21 last conversation we had until a few days ago.

22        MR. GROW:  Okay.  So we talked in August?

23        MS. MELLI:  Yes.

24        MR. GROW:  This was in the 13th omnibus objection.

25 So she would have received notice of the adjournment to

1  September, the adjournment until October.

2          MS. MELLI:  The one -- I did get one for the

3  September one, it came to me Federal Express.  That was the

4  last thing I had gotten -- I mean DHL.

5          THE COURT:  You objected to her claim twice?

6          MR. GROW:  No, I'm sorry, I guess I misstated.  We

7  objected to it in the 13th omnibus objection, rather than the

8  15th, so that was scheduled in -- for a hearing at the

9  beginning of September, I believe.

10          THE COURT:  Well, but this isn't the 13th, we're onto

11  the 15th, right?

12          MR. GROW:  Ms. Melli is back in the 13th, I'm sorry,

13  I --

14          THE COURT:  So, you did object twice.  What was the

15  basis --

16          MR. GROW:  No, we only objected in the 13th, not the

17  15th.

18          THE COURT:  Now I'm confused.  Not that's

19  particularly difficult to do.

20          MR. GROW:  I'm sorry.

21          THE COURT:  But she --

22          MR. GROW:  I think that's my fault.

23          THE COURT:  -- she's on this list -- oh, this is the

24  13th.  I'm sorry.  Oh, because we back tracked.

25          MR. GROW:  Correct.

1          THE COURT:  I'm sorry, okay.

2          MR. GROW:  Correct.

3          THE COURT:  Well, Ms. Melli, I can't make Mr. Grow or

4    his client settle.  Sometimes I wish I could, and it sounds

5    like you did receive some notice, albeit, perhaps, somewhat

6    late and I do understand that the agendas are lengthy and I'm

7    sensitive to the fact that I hold lawyers to a tougher standard

8    than I do pro se on the notice issue.  If I were -- I'm not

9    saying I will, but if I were to give you another month to do

10   something, I mean, what it is that you had planned to do?  And,

11   again, this claim is unsecured, right?

12         MR. GROW:  It would have been partially priority, to

13   10,950.

14         THE COURT:  Partially priority, right.  What is it, I

15   mean do you want to hire a lawyer, do you want time to come up

16   with more evidence, I mean what is it -- because I've got to

17   tell you, I mean today as I sit here, I'm going to grant the

18   objection, based on the clear and unambiguous language of the

19   contract, so is there something you think, and I understand

20   you're not a lawyer, but is there something you think between

21   now and say a month from now that you could dig up, or an

22   argument you could make that would talk me out of it?

23         MS. MELLI:  I don't have more than what's written

24   already.

25         THE COURT:  Okay.  Very good.  Well, Ms. Melli, I'm

**J&J COURT TRANSCRIBERS, INC.**

1  sorry, but based on the evidence and the contract before me, in

2  it's clear and unambiguous terms and the requirements under New

3  York which govern the contract, that I only look to the

4  contract unless it's ambiguous, I am going to have to grant the

5  objection and that will expunge your claim for bonuses in its

6  entirety.

7        This is an unfortunate situation.  There were 7,000

8  employees who were fired on virtually no notice.  There have

9  been literally tens of thousands of homeowners who had to deal

10 with confusion and I wish it were otherwise, and I'm not going

11 to point fingers, I think we're all aware of the difficulties

12 to say the least that the entire globe is facing based on the

13 meltdown of the mortgage industry, to be frank.  And real

14 people with real problems and real bills to pay are

15 unfortunately caught in the middle.

16       But based on the evidence in front of me, I'm sorry

17 to say I will have to expunge your claim.  You can hang on the

18 line if you'd like, you're free to hang up, but before you do

19 that, if you have any questions please -- now is your chance to

20 ask them or maybe I can answer them to the best of my ability.

21       MS. MELLI:  Your Honor, is there any way that I can

22 go about trying to get some of this money back?

23       THE COURT:  Well, any objection to a claim is subject

24 to reconsideration on new evidence.  So, if you dig up

25 something you can always file some sort of paper with the

**J&J COURT TRANSCRIBERS, INC.**

1   court.  I don't know if you'd be entitled to unemployment

2   compensation.  I do know that there is a lawsuit pending, I

3   can't remember the status of it in this case, but there is a

4   lawsuit, class action lawsuit pending under what's called the

5   WARN Act, W-A-R-N, which is an act designed to compensate

6   employees in certain circumstances if they are fired without

7   notice.

8          If you receive anything in connection with that, I

9   encourage you to look at it very carefully.  I don't remember

10  if it's an opt in or an opt out class, but there are some

11  attorneys working in a lawsuit to gather some compensation for

12  employees that were terminated.

13         I'm not saying I'm going to -- I'm not saying who is

14  going to win, I haven't even thought about who is going to win,

15  but that is out there.

16         MS. MELLI:  Okay.

17         THE COURT:  Who represents -- it's got to be Mr. --

18  oh, jeepers.

19         UNIDENTIFIED MALE SPEAKER:  Mr. Huggett, I believe.

20         THE COURT:  Yeah, Mr. Huggett represents them all.

21         UNIDENTIFIED MALE SPEAKER:  And there are a couple of

22  law firms involved, I don't recall.

23         THE COURT:  Yes, there is an attorney in Delaware,

24  Jim Huggett.

25         MS. MELLI:  Okay.


**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  And maybe real fast, if you'll hang on

2  the line a minute, we'll get you his phone number.

3          MS. MELLI:  All right, thank you, Your Honor,,

4          THE COURT:  You're welcome.  Ms. Gadson, if you're

5  listening, can you bring me my DSBA directory?  Okay.  Mr.

6  Grow, let's -- where were we?  Oh, we were --

7          MR. GROW:  I think we had just finished with the 15th

8  omnibus objections, moving onto the 17th.

9          THE COURT:  I think we were still working on it.

10 See, you're slick there.

11         MR. GROW:  Oh, okay.

12         THE COURT:  That was nice, I like that.

13         MR. GROW:  Sorry, Your Honor.  I thought you had

14 finished all your comment.

15         THE COURT:  No, that's -- make a note of that, Mr.

16 Beach, that was good.  I like that.  I had some specific

17 questions on some claims.

18         Ms. Melli, Mr. Huggett's phone number -- are you

19 there?  Ms. Melli?  Is she still there?

20         MS. MELLI:  I am.

21         THE COURT:  Oh, there you go.  Mr. Huggett, it's Jim

22 Huggett, H-u-g-g-e-t-t, he's at 302 --

23         MS. MELLI:  302.

24         THE COURT:  -- 777 --

25         MS. MELLI:  777.


**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:   4680.

2           MS. MELLI:   4680.

3           THE COURT:   All right.  I wish you all the best

4 ma'am.

5           MS. MELLI:   Thank you very much.

6           THE COURT:   You're welcome.

7           MS. MELLI:   Thank you, Your Honor, bye.

8           THE COURT:   Hefner, Ken Hefner, claim 10242.  Is he

9 someone we continued?

10          MR. GROW:   Let me just double check, but I believe

11 so.

12          THE COURT:   You know, that name sounds familiar here.

13 I'm on the wrong one --

14          MR. GROW:   Did you say 10242?

15          THE COURT:   Yes.

16          MR. GROW:   Yes, that one is adjourned.

17          THE COURT:   Okay.  There's a Judy Nadaha (phonetic),

18 claim 527.  And there are two pieces to it.  I guess there's an

19 NOI bonus and then commissions and your objection addresses the

20 NOI bonus issue because she was not employed on the due date,

21 just like this one, Ms. Melli's, but it doesn't address the

22 commission, $1300 in commissions, I don't believe.

23          MR. GROW:   Your Honor, are you looking at --

24          THE COURT:   527.

25          MR. GROW:   The claim objection or the supplemental

1 affidavit?

2          THE COURT:  I was looking at the -- well, I don't

3 know if I'm looking -- in the affidavit you state that the

4 claimant was not employed on the scheduled payment date for the

5 alleged bonus.  Does the supplemental affidavit say something

6 else?  I'm not sure which one I'm looking at, frankly.

7          MR. GROW:  Supplemental affidavit --

8          THE COURT:  And then we have the affiant on the

9 phone, so --

10          MR. GROW:  Your Honor, if you'll give me a minute I

11 can pull out the proof of claim and take a look at it and see

12 if I can tell you anything more.

13          THE COURT:  Okay.

14                    (Pause)

15          MR. GROW:  This was Exhibit A of the 15th, is that

16 correct?

17          THE COURT:  Yes.

18                    (Pause)

19          THE COURT:  You need to take a look at her

20 attachment.

21          MR. GROW:  Okay.  Your Honor, I see her proof of

22 claim here and the attachment referencing her NOI and other

23 commissions.  Off the top of my head I do not recall the basis

24 for -- do not recall specifically what the basis for objection

25 to these is, although I imagine it was that she was not present

1 on the scheduled payment dates.

2          THE COURT:  Bonus date.

3          MR. GROW:  I'd like to follow up and confirm that.

4          THE COURT:  Yes, let's continue that one.

5          MR. GROW:  Okay.

6          THE COURT:  Moving onto Exhibit C, modified amount a

7 claims.

8          MR. GROW:  Okay.

9          THE COURT:  There's a claim 5561, where the objection

10 is basically -- the math doesn't add up, on the proof of claim,

11 which is true, but if you actually look at the exhibits, the

12 math does add up.

13          MR. GROW:  Could you tell me the name of claimant?

14          THE COURT:  Not without looking, hang on.  Give me a

15 minute.

16                    (Pause)

17          THE COURT:  Katie Bianchi (phonetic).

18          MR. GROW:  Okay.  It looks like the change proposed

19 is 58 cents, it looks like.

20          THE COURT:  It that all that changed?  Sometimes I

21 don't pay that close attention, frankly.  Where's the chart?

22 It's only a 58 cent change?

23          MR. GROW:  Correct.

24          THE COURT:  All right, never mind.  We just spent

25 that.  Why are you reducing claims by 58 cents, Mr. Grow?

1          MR. GROW:  Your Honor, it's a matter, I guess, of

2     just making all of the numbers add up at the end and if we end

3     up 58 cents at the end --

4          THE COURT:  All right.

5          MR. GROW:  -- we might have to go through everything

6     and figure out where that 58 cents went.

7          THE COURT:  Okay.  It's an accounting exercise.

8     Someone else generating these reports?

9          MR. GROW:  Correct.  Through Kroll, in cooperation

10    with the debtors and using our claims administrator to help us

11    put together exhibits.

12         THE COURT:  Moving onto Exhibit G.  There's a claim

13    of Julie Miller, 8805, deferred compensation and unpaid

14    commission that she says she earned between Feb. 7 and August

15    5th.  So she files it as a priority claim and you want to

16    reclassify the priority claim because there's no basis under

17    507.  Why isn't (a)(4) and/or (a)(5) applicable?

18         MR. GROW:  Your Honor, if you could give me just a

19    minute to find the proof of claim here.

20         THE COURT:  Yes.  And, basically, I have the same

21    questions in connection with Keith Wezlowski (phonetic), which

22    is claim 6963, the same issue.

23         By the way, I have many, many fewer comments for the

24    remaining omnibus objections.  I won't put you through too much

25    more.

1          MR. GROW:  Your Honor, just taking a look at this

2    now, I'd like to maybe take a closer look at why 507 in its

3    entirety, does not apply.

4          THE COURT:  Okay.

5          MR. GROW:  So, if we can just adjourn that one.

6          THE COURT:  And that'll be claim 8805 and 6963.

7          MR. GROW:  Okay.

8          THE COURT:  All right, moving onto H.  And these are

9    ones where you're modifying the amount and switching debtors,

10   right?

11         MR. GROW:  And, reclassifying.

12         THE COURT:  Reclassifying and changing debtors, all

13   right.

14         MR. GROW:  Correct.

15         THE COURT:  All right.  Well, there are four where I

16   basically have the same question I just had, and maybe the easy

17   thing is, let's just pull these out and you can look more into

18   them, okay?  I'm going to give you the --

19         MR. GROW:  Okay.  Deferred compensation claims where

20   we're objecting to the priority?

21         THE COURT:  Right.

22         MR. GROW:  Okay.

23         THE COURT:  Some of them are salary, some of them are

24   severance, some of them are accrued vacation pay, some are

25   contributions, some are deferred compensation.

1          And, again, they claim at least that they were earned

2     within the 180 days.  So, here are the ones.  1574, Mary

3     Anderson (phonetic); 2213, Richard Harkwell (phonetic); 1285,

4     Thomas Pekins (phonetic); and 775, Lisa Schreiber (phonetic).

5     Some of these may already be out, I don't know.

6          MR. GROW:  I don't think any of these were adjourned

7     yet.

8          THE COURT:  Okay.  And then I don't have any other

9     questions with regard to this one.  And you can submit a

10    revised order under certification.

11         MR. GROW:  Okay.  That sounds good.  Okay, so we're

12    ready to move onto the 17th omnibus substantive objection to

13    claims?

14         THE COURT:  Yes, yes.

15         MR. GROW:  Okay, Your Honor, we'll make it easy on

16    this one.  The debtors received several responses, we wish to

17    adjourn the 17th omnibus objection with respect to the claims

18    of all of the claimants who responded.

19         This is Drew & Rodgers, Matthew Liang, Robert

20    Sweeney, Grand Wailea Resort Hotel & Spa, Franklin Pacific

21    Finance and American Express Travel Related Svc., Co.  I have a

22    revised form of order that I can hand up, along with a black

23    line if I may approach.

24         THE COURT:  Yes.  My only question was with Drew &

25    Rodgers, so I'll sign it, I'll sign the order as modified.

1          MR. GROW:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3          MR. GROW:  Okay.  Your Honor, that brings us to

4  matter number 23 on the agenda, which is a motion of certain

5  individuals to appoint an official committee of borrowers and

6  this matter has been adjourned until October 8th.  And for the

7  remainder of the agenda, I'd like to cede the podium to Sean

8  Beach.

9          THE COURT:  Okay.  Thank you, Mr. Grow.  Good

10 afternoon, Mr. Beach.

11         MR. BEACH:  Good afternoon, Your Honor, may it please

12 the Court, Sean Beach from Young, Conaway on behalf of the

13 debtors.

14         Your Honor, the next item on the agenda today is a

15 motion for relief from the stay filed by JP Morgan Chase, with

16 respect to certain mortgage loans.  The debtors have been in

17 contact with JP Morgan.  Counsel, Mr. Landis and Mr. McGuire

18 are in the courtroom today.

19         The debtors and the committee both object to this

20 motion and have agreed to go forward today with a scheduling

21 conference.  Based on our conversations, we thought the best

22 approach would be to go forward and request from Your Honor a

23 trial date and then we could work together to, hopefully,

24 submit a certification of counsel with a scheduling order over

25 the coming days.

1          Your Honor, based on our initial discussions, the

2    parties agreed to attempt to get a trial date on or before

3    confirmation but in the debtors' view that should be as close

4    to confirmation as possible.  The debtors intend to request a

5    confirmation date of November 25th, from Your Honor at the

6    hearing scheduled for the disclosure statement, which we hope

7    to go forward next Wednesday.

8          THE COURT:  I thought we already had a date, right?

9    Didn't we already have a date?

10          MR. BEACH:  For confirmation, we had November 12th,

11    the disclosure statement was adjourned once already and I think

12    it might be too tight to keep November 12th.  I think it was

13    tentative date, in any event, that we requested from Your

14    Honor.

15          THE COURT:  Okay.

16          MR. BEACH:  So --

17          THE COURT:  That date will work.  That's fine.

18          MR. BEACH:  November 25th?

19          THE COURT:  I mean, subject to people having an

20    opportunity to say whether they like that or not, but it fits

21    my calendar.

22          MR. BEACH:  Great, Your Honor.  Given that this could

23    be a trial similar to the one Your Honor already presided over

24    with respect to the Bank of America loans.  We think we can get

25    through a trial in a day, but we're hoping, given that

1 confirmation might be a lengthy hearing as well, in fact, I

2 didn't talk to Mr. Landis precisely about this, but I thought

3 if we could get a date on the 24th, perhaps, we can set

4 confirmation and the trial date for the 24th and 25th and,

5 hopefully, conclude both of those matters then.

6       THE COURT:  All right.  I've lost track.  My initial

7 question is, is JP Morgan still an entity that owns itself?

8       MR. LANDIS:  Your Honor, for the record, Adam Landis

9 from Landis Rath and Cobb here on behalf of JP Morgan, and I

10 think JP Morgan is still at the top of the teetering pile.

11       THE COURT:  Okay.  So, they've been -- and I've heard

12 that.  So, they've been an acquirer not an acquiree today.

13       MR. LANDIS:  Thus far.  And, I haven't checked since

14 we've been in court but their credit is still very good with

15 me, Your Honor.

16       THE COURT:  Okay.  So, you have a retainer.

17       MR. LANDIS:  If I might speak to sort of the lift

18 stay motion just briefly.

19       THE COURT:  Sure.

20       MR. LANDIS:  Because I think it all ties into

21 scheduling.  JP Morgan still holds a number of -- there's a

22 warehouse facility and we have 247 loans outstanding, for which

23 we have moved to lift the automatic stay.  We filed the motion

24 on the 10th of September.  The notion is that we think this is

25 a relatively simply matter, Your Honor, with respect to those

1  247 loans.  The amount owing to JP Morgan Chase is in excess of

2  97 million.  The unpaid principle balance is a little higher

3  than 93 million.  We don't think there's ever in this case any

4  chance that JP Morgan is going to get out whole, under any

5  circumstances.

6          Mr. Beach did file an objection on behalf o the

7  debtors and I'll talk about that in a second.  The creditors'

8  committee through its special counsel, filed a paper, they

9  didn't file an objection, they filed a paper essentially saying

10 give them the loans back and let's reserve some issues that we

11 have had some disputes with, with the debtors and the committee

12 in the case, namely, there are disputes ongoing with respect to

13 properties that are real estate owned and how they got that

14 way.

15         You may recall in the context of one of the sales we

16 escrowed proceeds that didn't get paid over to JP Morgan Chase,

17 While we discuss, fight about, try to resolve the entitlement

18 to the REO properties.

19         Putting all that aside, we're talking about 244 loans

20 here that the committee believes should go back to JP Morgan

21 Chase, we should dispose of, deal with.  From our perspective

22 the numbers are pretty clear, the debtors in their paper have

23 advanced what I can only charitably call a novel theory, one I

24 haven't heard before, and I think I admiringly call it the

25 patent theorem pursuant to which the notion is that the value

1  of the loans and the value for adequate protection purposes is

2  the cash flow value of those loans and that's to say that the

3  debtors can adequately protect JP Morgan Chase's interests by

4  continuing to see to it that the proceeds of the loans, not the

5  proceeds of sale, but that the amounts that are collected are

6  flowed through to JP Morgan Chase.

7        THE COURT:  Well, I mean, isn't that the basis on

8  which these loans are bought and sold?

9        MR. LANDIS:  Well, Your Honor, I would say yes and

10  no.  I mean to the extent that there's a package of loans that

11  is sold, either servicing the lease, there's all sorts of

12  considerations that go into how these loans are bought and

13  sold.

14        At the end of the day, however, JP Morgan Chase's

15  interest isn't only the cash flow but in the ultimate

16  disposition of the loans, as a package, in the servicing of the

17  loans potentially, and all sorts of different --

18        THE COURT:  This is a traditional warehouse secured

19  credit facility, it's not a repurchase agreement or anything.

20        MR. LANDIS:  Correct, Your Honor, correct, Your

21  Honor.  So, we think that although we admire the theory, we're

22  going to look at it, we're going to deal with it as we have to,

23  but we think the case ultimately is relatively simple from our

24  standpoint.  It's not going to require a lot of evidence.

25        THE COURT:  So, when do you want trial?

**J&J COURT TRANSCRIBERS, INC.**

1          MR. LANDIS:  Early, Your Honor.  As early as

2   possible.  You know, if you have anything in the middle of

3   November for a day, we'd like to put it on, put our case on and

4   be done with it.  I would like to think we'll have the support

5   of the committee in this, as they file their papers in

6   supporting the lifting of the automatic stay and, hopefully, it

7   won't cost the estate too very much money to deal with this

8   theory that is being advanced.

9          MR. MORRIS:  Your Honor, if I may interrupt, this is

10  Michael Morris of Hennigan, Bennett & Dorman, we're the special

11  counsel for the committee on this matter.

12          We did not endorse granting relief from the automatic

13  stay.  We took no position with respect to the valuation issues

14  and the adequate protection issue, but we did not, and no where

15  in our pleading does it say that we endorse relief from stay. I

16  just want to address that mischaracterization.

17          MR. LANDIS:  Your Honor, it was inadvertent.  I

18  believed in reading their pleading that they don't object to

19  the lifting of the automatic stay.  The issue for us is a

20  simple one.  The debtor is not, itself, servicing these loans,

21  somebody else is and were the debtor ultimately correct in its

22  position, I suppose that somebody else will be servicing these

23  loans for 30 years or for however long they are required to be

24  serviced as we go forward and my understanding in talking to

25  certain committee counsel is that the committee has no interest

1 in seeing that happen.  The idea is to get this kind of

2 resolved and get it done.

3          But if I misspoke, and overstated the special counsel

4 to the committee's position here, I certainly didn't mean to.

5 But my understanding is that the committee has no interest in

6 seeing these loans serviced, ad infinitum, as we go forward.

7          THE COURT:  All right.

8          MR. LANDIS:  So, if Your Honor, we could get a

9 hearing date sometime in the middle of November I think it

10 would be appropriate.  I don't know what Your Honor's calendar

11 looks like but what we want to avoid doing is having this butt

12 up right against confirmation because we are going to likely,

13 if we can't resolve matters, have confirmation objections based

14 on how the debtors intend to treat JP Morgan and the loans, in

15 the context of the plan.  So, we'd like to kind of separate

16 those two issues out.

17          THE COURT:  Okay, thank you.  Mr. Bifferato.

18          MR. BIFFERATO:  Your Honor, Connor Bifferato,

19 proposed special counsel to the committee, Delaware counsel to

20 Mr. Moore and I have not spoke to Mr. Moore about this, but

21 given our conversations, I don't think that he's going to

22 disagree with me on this and I agree with Mr. Beach, that we

23 should about a scheduling order amongst counsel and submit that

24 to the Court under certification.

25          I would, respectfully, suggest, Your Honor, that

1  given the positions that have been advanced to the Court at

2  this point and the status of the debtors and the committee at

3  this point also, that this is a matter that, perhaps, should

4  proceed to mediation before a lot of money is spent on it.

5          If the issues are as straightforward as have been

6  presented by counsel, then, perhaps, and I don't want to be so

7  presumptive as to suggest that the bankruptcy court judges have

8  all the time in the world to deal with this but, perhaps, one

9  of the other bankruptcy court judges might be prevailed upon to

10 sit with us for a few hours and sort this out and prevail upon

11 counsel to work it out, prior to the need for an expansive

12 amount of either discovery or a day of the Court's time for a

13 full blown hearing.

14          THE COURT:  Well, it depends on who did the

15 mediation.  If it was Judge Gross, it wouldn't be a few hours,

16 it's be a few days, going into the wee hours.

17          MR. BIFFERATO:  It could go into the wee hours, but I

18 think that Judge Gross probably would not let us leave without

19 a resolution.

20          THE COURT:  Yes, he's pretty good at that.  Mr.

21 Beach?

22          MR. BEACH:  Your Honor --

23          THE COURT:  Other than Mr. Bifferato's comment about

24 mediation, what I'm hearing is, all I need to decide today is a

25 trial date, right?

**J&J COURT TRANSCRIBERS, INC.**

1          MR. BEACH:  That is right, Your Honor, although I

2    would like to --

3          THE COURT:  All right, well, let's --

4          MR. BEACH:  -- address some of the comments that have

5    been made, I didn't realize there would be some argument with

6    respect to that today, but I don't believe the issues are as

7    simple as Mr. Landis presents them.   There are loans involved

8    that would have to be valued, but there are also construction

9    loans to which JP Morgan got stay relief in December and while

10   JP Morgan indicates that that value is subsumed in the numbers

11   that they have in the documents, it's still unclear to me

12   that's the case because we have not received any indication of

13   whether they've sold those loans or what the value of those

14   approximately 20 million in UPB of loans that JP Morgan

15   received stay relief in December for.

16          In addition to that, as Your Honor has heard, there

17   are significant issues related to real estate owned and whether

18   or not JP Morgan has a perfected security interest in those,

19   but to the extent, as they currently are purporting, they

20   believe that they do have a perfected security interest in

21   those and the numbers there are well in excess of 35 million

22   UPB and they would need to include those in their valuation.

23          With respect to the cash flow model that the debtors

24   believe is the appropriate model in terms of valuing these,

25   it's not all that novel of a theory.   In fact, it's the same

1 theory that the bailout that the government is considering

2 right now is basing that bailout on, and it also relates to the

3 issues that we see in the press regarding the market issues

4 that are being addressed.

5       So, while it may be novel in the case law, the theory

6 of valuing these assets, through a cash flow basis, certainly

7 has a lot of validity to it and the debtors intend to prove

8 that case.

9       And we do need time, there will be an expert witness

10 and we will have fact witnesses as well.  There's going to be

11 document discovery and there will also be depositions, I

12 anticipate.

13       THE COURT:  Look,  haven't you kind of created this

14 issue by continuing to push the Court for confirmation as soon

15 as possible?

16       MR. BEACH: I understand that the debtors have dueling

17 issues, having confirmation as quickly as possible and we are

18 not fighting the idea of having the trial before confirmation.

19 We understand we are making a difficult request to the Court

20 because we are asking for --

21       THE COURT:  Let me ask you this.  Are you definitely

22 not going to use the 12th for confirmation?

23       MR. BEACH:  That's right, Your Honor.  We will not be

24 using that.

25       THE COURT:  Trial will be the 12th at 10 a.m

**J&J COURT TRANSCRIBERS, INC.**

1          MR. LANDIS:  Thank you, Your Honor.

2          THE COURT:  You can work back from that.

3          MR. LANDIS:  We'll work on the form of an order and,

4  you know, we also are going to continue to have discussions

5  outside this courtroom regarding how to best --

6          THE COURT:  Yes.  I'm not going to order mediation at

7  this time.  I mean mediation is helpful, but in my experience,

8  first of all, everybody has to want to mediate, usually for it

9  to work, and second, you know, you need to have some facts

10 under your belt before you can mediate.  So, I expect there

11 will have to be a further exploration, but I am certainly

12 welcome to a request at any time, not even necessarily, a

13 mutual request, if people think it'll be helpful and I can poll

14 my colleagues as to their availability and, of course, we have

15 a mediation -- series of mediators who are available locally

16 and not locally, to handle this kind of dispute.  So, I'll

17 leave that at that and I'll let you guys submit an order under

18 certification of counsel.

19         MR. LANDIS:  Thank you, Your Honor.

20         MR. MORRIS:  Thank you, Your Honor.

21         THE COURT:  You're welcome.

22         MR. BEACH:  Your Honor, the 25th and 26th items on

23 the agenda are the disclosure statement solicitation procedures

24 which have been adjourned until next Wednesday.

25         The last item on the agenda, Your Honor, is the

**J&J COURT TRANSCRIBERS, INC.**

1  application --

2          THE COURT:  Well, do we want to talk about a new

3  confirmation date at this point, or do you want to wait until

4  the disclosure statement hearing next week?

5          MR. BEACH:  Well, Your Honor, I'm happy to talk about

6  it now.  The debtors would like to request the 25th as a

7  confirmation hearing date.  We believe that will, assuming

8  that the disclosure statement gets approved next week and I

9  understand that's my assumption, but that, I believe, would

10 give us plenty of time to serve out the balloting materials and

11 get notice published.

12         THE COURT:  Okay.  And you're already on for the

13 25th.

14         MR. BEACH:  Yes, we do have a time for that.

15         THE COURT:  Any objection?  All right, the 25th.

16         MS. ROMERO:  Your Honor, I have a clarification

17 question.  This is Martha Romero, I represent several

18 California taxing authorities.

19         THE COURT:  Yes.

20         MS. ROMERO:  And, I understood that the disclosure

21 statement was continued to today and -- that's what your

22 courtroom deputy told me.  Is that not correct?

23         THE COURT:  That's not correct.  It was -- we had a

24 teleconference yesterday in connection with the motion to

25 appoint a borrower committee and I continued, based on that, I

1 continued both the hearing on the motion to appoint a borrowers

2 committee and the disclosure statement to Wednesday, October

3 8th at nine, eastern.

4          MS. ROMERO:  Okay.  That's six o'clock Pacific time.

5          THE COURT:  Yeah, I know, I'm sorry.

6          MS. ROMERO:  So, that's Wednesday, 10/8, and what's

7 the best way to get notice because I realize that you may have

8 had an emergency teleconference hearing, but I know in the past

9 I've gotten -- I'm on your ECF, or I'm on ECF, so I've gotten

10 notices that it was continued and I didn't get any notice.

11 And so if it's late, you know, if it's late and we're over here

12 in California time, it's kind of hard to figure out when the

13 hearing is actually going forward.

14          THE COURT:  Well, I certainly apologize but there was

15 an amended notice of agenda filed yesterday.  Of course, it

16 could have been late.

17          MS. ROMERO:  Yes, I didn't see anything on my email

18 but I understand the circumstances.  And was there a

19 confirmation hearing just set, Your Honor?

20          THE COURT:  Yes, tentatively set for the --

21          MR. BEACH:  November 25th, at 10 a.m.

22          THE COURT:  November 25th, at 10 a.m.  And I tell

23 you, I usually don't start quite so early as 9 a.m.

24          MS. ROMERO:  I've been noticing that Your Honor, and

25 I appreciate that.

1          THE COURT:  Well, it has nothing to do with you,

2  actually.  But I'm happy to be accommodating.  We're starting

3  early on the 8th because Yom Kippur starts at sundown that day

4  and I --

5          MS. ROMERO:  I understand that, Your Honor.  I saw

6  that on the webpage.

7          THE COURT:  Okay.  So, we're going to finish by 2:30,

8  that's why we're starting a little early and I know it's early

9  for you.  I will tell you that we are going to take the

10 borrower motion to appoint a committee first because it may

11 affect whether the disclosure statement goes forward.  I expect

12 that if I require the U.S. Trustee to appoint a committee of

13 borrowers, I'll then get a request to further continue the

14 disclosure statement hearing.  So, it is --

15         MS. ROMERO:  Okay, so that's 9 a.m.

16         THE COURT:  -- yes.

17         MS. ROMERO;  Eastern time.

18         THE COURT:  Eastern, and it is certainly possible,

19 and I'm not prejudging it, but it's certainly possible the

20 disclosure statement will be further continued.  And I

21 apologize for the mixup.

22         MS. ROMERO:  Okay.  Thank you, Your Honor.

23         THE COURT:  Okay?

24         MS. ROMERO:  Thank you.

25         THE COURT:  Anyone else on the phone that has any

1  issues or questions?  Okay.  Like I said, we'll -- you have

2  permission to go schedule the confirmation hearing for the 25th

3  at this time.

4          MR. BEACH:  Thank you, Your Honor.

5          THE COURT:  And I regret to inform all parties that I

6  have all day the next day available, even though it's the day

7  before Thanksgiving.  Enjoy traveling.

8          MR. BEACH:  Thank you, Your Honor.

9          THE COURT:  I'm not going anywhere.

10         MR. BEACH:  Could I indulge the Court to pencil in

11  that date as well so we could have the two days?

12         THE COURT:  Yes.  We'll give you that date, too.

13         MR. BEACH:  Thank you.

14         THE COURT:  10 a.m.

15         MR. BEACH:  That, I believe, brings us to the last

16  item on the agenda, Your Honor, which is the application to

17  retain Traxi LLC as special litigation financial advisors in

18  connection with litigation surrounding the administrative claim

19  filed by AH Acquisition, in connection with the servicing sale.

20         Your Honor, there were no objections to the retention

21  of Traxi, the debtors were in discussions with the Official

22  Committee of Unsecured Creditors and have agreed to cap the

23  fees and expenses of Traxi at $250,000 and we have made that

24  modification to the form of order.  May I approach with a clean

25  and black line?

1          THE COURT:  Yes.  Any comments from anyone?  Mr.

2  Carickhoff.

3          MR. CARICKHOFF:  Good afternoon, Your Honor.  May it

4  please the Court, David Carickhoff of Blank Rome on behalf of

5  the Creditors' Committee.

6          Your Honor, we do recognize the need to have Traxi in

7  this capacity to address the Wilbur Ross administrative expense

8  claim.  As Mr. Beach indicated, the committee's main concern

9  was the expenses in this case, and we thought that placing a

10  cap on Traxi's fees, subject to being increased with the

11  consent of the committee or further order of the Court, was an

12  appropriate resolution of that concern.

13          THE COURT:  All right.  I assume Traxi is amenable,

14  Mr. Beach?

15          MR. BEACH:  Yes, Your Honor.  We have had discussions

16  with them and they believe the cap is sufficient to allow them

17  to do the work that they need to do with the caveats, again,

18  that it can be increased with the consent of the committee or

19  further order of the Court if that is necessary.  But as of

20  today, they believe that $250,000 should be sufficient.

21          THE COURT:  All right.  Anyone else wish to be heard?

22  I'll sign the order.

23          MR. BEACH:  Thank you, Your Honor.  Unless Your Honor

24  has any questions, that concludes our agenda.

25          THE COURT:  Okay.  I have no questions.  Hearing is

1  adjourned.

2         MR. BEACH: Thank you.

3                    * * * * *

4              **C E R T I F I C A T I O N**

5

6      I, ELAINE HOWELL, court approved transcriber, certify that

7  the foregoing is a correct transcript from the official

8  electronic sound recording of the proceedings in the

9  above-entitled matter and to the best of my ability.

10

11

12

13  /s/ Elaine Howell                Date:  October 28, 2008

14  ELAINE HOWELL

15  J&J COURT TRANSCRIBERS, INC.

16

17

18

19

20

21

22

23

24

25