UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No. 07-11047(CSS)
                                    .
  AMERICAN HOME MORTGAGE           .
  HOLDINGS, INC., a Delaware       .
  Corporation, et. al.,            . 824 Market Street
                                    . Wilmington, Delaware  19801
                 Debtors.          .
                                    . October 22, 2008
. . . . . . . . . . . . . . . . . 10:10 a.m.

TRANSCRIPT OF MOTIONS HEARING
BEFORE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:                    Young Conaway Stargatt &
                                    Taylor, LLP
                                    By:  SEAN BEACH, ESQ.
                                    The Brandywine Building
                                    1000 West Street, 17th Floor
                                    P.O. Box 391
                                    Wilmington, DE  19899


For Unsecured Creditors Comm:       Blank Rome, LLP
                                    By: DAVID CARICKHOFF, ESQ.
                                    Chase Manhattan Centre
                                    1201 Market Street
                                    Suite 800
                                    Wilmington, DE 19801


For Unsecured Creditors Comm.:      Hahn & Hessen LLP
                                    By:  MARK S. INDELICATO, ESQ.
                                    488 Madison Avenue
                                    14th and 15th Floor
                                    New York, NY  10022



Audio Operator:                     Jennifer Pasierb

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

**APPEARANCES CONTINUED:**


For Creditors' Committee:          Hennigan, Bennett & Dorman
By:  MICHAEL MORRIS, ESQ.
865 South Figueroa Street
Suite 2900
Los Angeles, CA  90017


For JP Morgan Chase:             Landis Rath & Cobb, LLP
By:   ADAM G. LANDIS, ESQ.
         MATTHEW McGUIRE, ESQ.
919 Market Street
Wilmington, DE  19801


For WR Recovery Fund III:      Greenberg Traurig, LLP
By: SANDRA G.M. SELZER, ESQ.
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE  19801


For Bank of America:             Potter, Anderson & Corroon,
LLP
By: GABRIEL MacCONAILL, ESQ.
Hercules Plaza
1313 North Market Street
Wilmington, DE 19801


For Dept. of Justice:           Office of the U.S. Trustee
By:  JOSEPH McMAHON, ESQ.
844 King Street
Suite 2313, Lockbox 35
Wilmington, DE 19801


For Roberts, Wheeler &
O'Brien:                        Margolis Edelstein
By:  JAMES HUGGETT, ESQ.
1500 Grant Building
Pittsburgh, PA  15219


For Grand Wailea Hotel:         Reed Smith, LLP
By: KIMBERLY LAWSON, ESQ.
2500 One Liberty Place
Philadelphia, PA  19103

**APPEARANCES (CONT'D):**

| | |
|---|---|
| For Calyon New York Branch: | Hunton & Williams, LLP<br>By: JASON W. HARBOUR, ESQ.<br>Riverfront Plaza, East Tower<br>951 East Byrd Street<br>Richmond, VA 23219-4074 |
| For Various Servicers: | Draper & Goldberg<br>By: ADAM HILLER, ESQ. |
| For Wells Fargo Funding: | Connolly Bove Lodge & Hutz<br>By: MARC PHILLIPS, ESQ.<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE  19801 |
| For Borrowers' Committee: | Zuckerman Spaeder LLP<br>By:  THOMAS G. MACAULEY, ESQ.<br>1201 Connecticut Avenue, N.W.<br>Suite 1200<br>Washington, D.C.  20036<br><br>Gilbert O'Shinsky LLP<br>By:  STEPHEN WEISBROD, ESQ. |
| For LaSalle Bank, NA: | Werb & Sullivan<br>By:  REGINA A. IORII, ESQ.<br>Tenth Floor<br>300 Delaware Avenue<br>P.O. Box 25046<br>Wilmington, DE 19899 |
| For U.S. Bank: | Dorsey & Whitney, LLP<br>By:  ERIC SCHNABEL, ESQ.<br>1105 N. Market Street<br>Wilmington, DE |
| For Allen & Overy LLP: | Allen & Overy, LLP<br>By: PAMELA CHEPIGA, ESQ.<br>1221 Avenue of the Americas<br>New York, NY |

**APPEARANCES (CONT'D):**

For Quinn Emanuel:                          Quinn, Emanuel, Urquhart,
                                            Oliver & Hedges, LLP
                                            By: HARRISON DENMAN, ESQ.
                                            51 Madison Avenue
                                            New York, NY 10010

For Wells Fargo:                            Sidley Austin
                                            By: D'LISIA BERGERON, ESQ.
                                            787 Seventh Avenue
                                            New York, NY 10019

For Bank of America:                        Kaye Scholer LLP
                                            By: NICHOLAS CREMONA, ESQ.
                                                ANA ALFONSO, ESQ.
                                            425 Park Avenue
                                            New York, NY  10022

For ABN AMRO Bank:                          Milbank, Tweed, Hadley &
                                            McCloy LLP
                                            By: FRED NEUFELD, ESQ.
                                                ROBERT MOORE, ESQ.
                                            1 Chase Manhattan Plaza
                                            New York, NY  10005

For CitiMortgage Inc.:                      Featherstone, Petrie &
                                            DeSisto, LLP
                                            By:  ANDREW J. PETRIE, ESQ.
                                            600 17TH Street
                                            Denver, CO  80202

For Royal Bank of Scotland:                 Dickstein Shapiro LLP
                                            By:  BRIAN GOLDBERG, ESQ.
                                            New York, NY

1          COURT CLERK:  All rise.

2          THE COURT:  Please be seated.  Good morning.

3          MR. BEACH:  Good morning, Your Honor, may it please

4 the Court, Sean Beach from Young, Conaway, Stargatt and Taylor

5 on behalf of the debtors.

6          Your Honor, items 1 through 18 on the agenda have

7 been adjourned.

8          Item number 19 on the agenda is the motion for relief

9 from stay with respect to first lien foreclosures.  Ms. Dowdy

10 asked me this morning to indicate that docket number 6103, it's

11 item number 140 on Schedule 1, may be withdrawn by them and

12 requested that Your Honor not enter the order with respect to

13 that stay relief.

14          THE COURT:  Too late.

15          MR. BEACH:  Okay.

16          THE COURT:  I've been in discussions with her, she

17 needs to file a motion for reconsideration.  If I can't rely on

18 the certifications of counsel, nothing gets done.

19          MR. BEACH:  Understood, Your Honor.

20          Your Honor, with respect to the interim fee request,

21 we submitted a certification of counsel with respect to those,

22 based on a call we received from chambers indicating that there

23 weren't questions to be addressed today.

24          THE COURT:  Okay.  I've got a big pile of mail I

25 haven't gone through yet, so when I get it, I'll sign it.

1          MR. BEACH:  Thank you, Your Honor.

2          With respect to the debtors' 13th omnibus claim

3 objection -- well, with respect to the claim objections

4 generally Your Honor, we did submit a certification of counsel

5 on those based on a conversation that we had with your

6 chambers.  I do have with respect to a couple of these, just

7 some real quick comments.

8          On item number 19 -- I'm sorry, item number 21, the

9 debtors indicated that we were in discussions two draft a

10 consensual form of order on the Luxury mortgage claim and the

11 parties are still in discussions.  We were hoping if it was

12 acceptable to Your Honor, that we would submit a certification

13 of counsel or we would put that over until the next hearing.

14          THE COURT:  That's fine.

15          MR. BEACH:  Same issue in connection with a claim

16 objection, the 19th omnibus claim objection and that's with

17 respect to the RBS Greenwich claim.  We're in discussions over

18 a consensual form of order there.  We do hope to submit that

19 under certification of counsel, otherwise to adjourn that until

20 the next hearing.

21          THE COURT:  Okay.

22          MR. BEACH:  And, I spoke with Ms. Lawson in terms of

23 another claim objection prior to the hearing.  I'm not sure

24 which objection it relates to, but there was an agreement to

25 seek an evidentiary hearing date from Your Honor today.  I,

1  unfortunately, don't have the name of the creditor, do I'd ask

2  Ms. Lawson to give some details on this.

3        MS. LAWSON:  Your Honor, it's the 17th omnibus

4  objection and our client is Grand Wailea Resort Hotel & Spa.

5  And all we wanted to do is see if Your Honor could schedule an

6  evidentiary hearing for that claim.  I did speak to Mr. Beach

7  before the hearing and we were looking to schedule something in

8  early January, if possible.

9        THE COURT:  What's the client?

10        MS. LAWSON:  It's the 17th omnibus objection from

11  Grand Wailea.  It's W-a-i-l-e-a.

12        THE COURT:  W-a-i-l --

13        MS. LAWSON:  e-a.

14        THE COURT:  Grand -- do you have a claim number or --

15        MS. LAWSON:  I have a docket number, I don't know the

16  claim number.  It's not listed on here.

17        THE COURT:  I don't have that notebook with me.

18        MS. LAWSON:  I know the docket number for the

19  objection is 6135 and our response is 6137.

20        THE COURT:  Right.  6137.  All right.  What's the

21  issue?

22        MS. LAWSON:  The main issue of dispute is over the

23  liquidated damages provision and whether it's an appropriate

24  remedy and, if so, what's the appropriate calculation of those

25  damages.

1          THE COURT:  Mr. Beach, any objection to scheduling an

2  evidentiary hearing?

3          MR. BEACH:  No, Your Honor.

4          THE COURT:  You need one day, or --

5          MR. BEACH:  That would be sufficient.

6          THE COURT:  Ms. Lawson?  Friday, January 16th at 10

7  a.m. okay?  That work?

8          MS. LAWSON:  Yes, Your Honor, it does for me.

9          THE COURT:  It is the -- okay, now that is the Friday

10 before the three day -- Martin Luther King Jr., holiday, but --

11          MS. LAWSON:  That's okay for me.

12          THE COURT:  -- that's okay?

13          MS. LAWSON:  Yes.

14          THE COURT:  All right.

15          MR. BEACH:  Thank you, Your Honor.

16          MS. LAWSON:  And, Your Honor, as I have no other

17 matters pending, am I be excused?

18          THE COURT:  Yes, of course.  Thank you.  Probably

19 best, Mr. Beach, can you submit an order under certification of

20 counsel, just to make sure people understand.

21          MR. BEACH:  We'll do that, Your Honor.

22          Your Honor, that brings us to item number 24 on the

23 agenda, which is the motion by various services and mortgagees

24 for a motion for blanket relief from the automatic stay.  Both

25 the debtors and the committee filed limited objections to the

1 relief requested in that motion.  But I'll cede the podium to

2 the movants.

3           THE COURT:  Okay.  Mr. Hiller?

4           MR. HILLER:  Good morning, Your Honor.  Your Honor,

5 this is Adam Hiller on behalf of various servicers that have

6 jointly filed a motion that is, in our opinion, long in the

7 coming.  We are hopeful that the Court will be as pleased about

8 the relief that we're seeking as we are.

9           It comes as no surprise to the Court that motions for

10 relief from stay have been extremely voluminous, in this case

11 and as well as some other cases that are currently pending

12 before the bankruptcy court in Delaware.

13           Your Honor is probably also aware that in two cases

14 Judge Carey has entered an order granting blanket relief

15 subject to nearly all of the terms and conditions that are

16 stated in the order proposed here today and that Judge Shannon

17 has taken under advisement a request similar to the one that's

18 being made today in this court, and later today we're having a

19 hearing before Judge Walsh in Mortgage Lenders Network for

20 substantially the same relief.

21           Judge Shannon indicated in the Aegis Mortgage

22 Corporation case, he was taking the matter under advisement

23 because he wanted to speak with the other judges who have cases

24 that may be implicated with similar relief being requested.  I

25 don't know if the Court has had an opportunity to speak with

1  Judge Shannon or if at the end of the day the Court will want

2  to take this matter under advisement, but I just wanted to make

3  sure the Court was aware of what occurred in the Aegis case.

4          Your Honor, the posture of this case is slightly

5  different than in New Century.  New Century was a case in which

6  the plan had been confirmed, the confirmation order had been

7  entered and a trust had taken over the debtors bankruptcy

8  estate.  But other than that, the facts are fairly similar to

9  the case today.

10          The issue that comes before the Court on every

11 individual motion for relief from stay that our office has

12 filed and as you know there have been many, is, it doesn't give

13 the Court really a full flavor of exactly what's going on

14 behind the scenes, so I thought I would take this opportunity

15 to give the Court a quick explanation of what's going on and

16 why we believe that relief from stay should be entered on a

17 blanket basis and who cares why and who cares why not.

18          Because of the fact that the debtors may have an

19 interest in property where there's a senior interest, the

20 exercise of rights and remedies on that senior interest may, in

21 fact, extinguish or otherwise impair, the junior interest.

22 That comes as no surprise to the Court.  Every one of our

23 motions has stated that pretty explicitly.

24          The problem at the outset is that in every state the

25 mortgage process works a little bit differently, or in most

1 states it works a little bit differently.  Sometimes you use

2 different terminology, sometimes you use different instruments,

3 or methods of obtaining and enforcing secured interests in real

4 property.

5         And so our initial dilemma was how to go about

6 seeking relief from stay on a global basis.  Now, there are two

7 issues with getting relief from the automatic stay that would

8 be implicated.  One of them is fairly obvious and one is much

9 more insidious and is really the driving force behind the

10 reason that we proposed the motion, the order that we did today

11 in the particular way that we did and also the reasons for the

12 objections that are in place.

13         The first reason, the obvious one, is that in some

14 instances you simply could not go forward with a foreclosure

15 action while the automatic stay is pending and, therefore, you

16 need relief.  There may be a sheriff, an auctioneer, or even a

17 duty imposed on the secured creditor itself not to go forward

18 with a foreclosure until relief from the automatic stay, in

19 this case, had been granted.

20         The more serious and insidious concern is that very

21 often, if not most of the time, nobody who is actually

22 conducting the foreclosure sale will know about the automatic

23 stay in this case.  And, therefore, they won't necessarily

24 inquire as to whether relief from the automatic stay was

25 granted.

1           And so, what you have is a foreclosure that occurs,

2  either with or without relief from this Court and the property

3  typically will get sold at auction or some other state approved

4  means and it very often will get flipped from owner to owner to

5  owner and at the end of the day there may be, during one of

6  these transactions to convey the property, a title insurer

7  whose clever attorney will go back to the record for the

8  requisite number of years that's required in that jurisdiction,

9  and see that there was an automatic stay in place and then go

10 looking for an order granting relief from it.  And if there

11 wasn't an order granting relief from it, then a reasonable

12 title insurer should conclude that you cannot convey clear

13 title at that point because of the foreclosure that occurred

14 way back when, was in violation of an automatic stay, it was,

15 therefore, void.

16          I'm sure the Court can see the difficulty that could

17 arise under those circumstances, especially when you have

18 different methods and instruments granting mortgages and

19 exercising remedies in connection with mortgages and I'm using

20 the term mortgage colloquially, of course, throughout the

21 country and trying to rely on one form of order that needs to

22 be within a reasonable size and reasonable scope, that will

23 facilitate those foreclosures on a global basis, rather than

24 having to come back to the Court for each one, to make sure

25 that you've worded it properly.

**J&J COURT TRANSCRIBERS, INC.**

1          Now, the Court is aware, we've been coming back to

2    the Court each time to make sure it's been worded properly.

3    But the reason that we had to propose the blanket relief in the

4    expansive scope that we did, was exactly for this reason.  To

5    prevent the possibility that somewhere down the line and this

6    could be years from now, somebody will figure out that a

7    certain kind of mortgage did not fit within the scope and ambit

8    of the Court's blanket relief order and without the ability to

9    verify that, there may be even a title wave, perhaps, of title

10   defects, no pun intended, that will give us, or actually will

11   give our clients a serious headache to have to deal with later.

12         This, of course, would be compounded by the fact

13   that, hopefully, for all parties here in the room, this case

14   won't be pending after a few years and if it turns out that a

15   title defect isn't uncovered until way after this case is

16   closed and the assets of American Home have been distributed

17   and are no more, there may not be a debtor, a committee, even a

18   liquidation trust, if there's a confirmed plan providing for

19   one, that could either consent to annul the automatic stay for

20   such a transaction, or that could even give a position as to

21   whether or not the blanket order was, in fact, intended to

22   include a particular transaction.

23         So, that is sort of a background for why the Court

24   has been seeing these motions, and why they are phrased in a

25   particular way.

**J&J COURT TRANSCRIBERS, INC.**

14

1          Now, I mentioned at the outset that the order in this

2   case is very similar to the order that was granted by Judge

3   Carey, or entered by Judge Carey in the New Century case and

4   also in the case of Resnay (phonetic).

5          The one major difference between this proposed order

6   and the one that was approved and entered by Judge Carey, is

7   that this order contains a mechanism for us to obtain a comfort

8   order in the even that for whatever reason a particular service

9   or lien holder believes that the blanket relief order needs to

10  apply to the a particular transaction.

11         And I know, of course, the Court is thinking, well,

12  great, what we're going to do is replace a bunch of lift stay

13  motions with a bunch of certifications of counsel to submit

14  comfort orders, but let me assure the Court, first of all, that

15  it isn't our intention to file a lot of these.  In fact, our

16  hope is not to file more than one, maybe two, per month.

17         The reason that this mechanism works much better than

18  the procedure of just filing a motion for relief from stay each

19  time, dates back to a decision that was made by Judge Carey

20  early in the New Century case, in which the Court held that a

21  party could file a motion relating to more than one property,

22  except that the movant had to be the same movant for all of the

23  properties associated with the motion.

24         And under the ruling, the Court also added, and by

25  the way, when I say movant I'm not talking about servicer, I'm

**J&J COURT TRANSCRIBERS, INC.**

1 talking about lien holder.  Now the Court is well aware by the

2 five or six line titles of some of our clients or at least some

3 of the equity holders, serviced by our client, that very often

4 a servicer will have a portfolio of loans owned by  different

5 lien holders.  And the servicer itself wants to get global

6 relief, but you have to file the motion of reach lien holder.

7 That can make things very complicated.

8       The certification procedure that we're proposing and

9 the order that we're proposing would not limit our ability to

10 seek an order as to a particular movant, but instead will

11 simply grant relief from stay with respect to a particular

12 property.  And in this way, we can propose a single order for

13 the Court to sign, it may have many, many pages of exhibits,

14 just listing just like our multiple property exhibit currently

15 lists, lists various properties, there could be 10, 20, 100

16 pages, but the point is, there's only one order for the Court

17 to sign, it'll get scanned into the docket and it will apply to

18 all the properties that are listed on it and the Court has

19 already granted blanket relief from stay under the procedure

20 that we're dealing with, so it isn't necessary for any party to

21 go through that list and see whether each and every one of

22 those properties is owned by the debtor.  There's no reason for

23 the parties to have to confirm what the parties have already

24 understood to occur, which is that the relief from stay has

25 been granted on a blanket basis.

1          Now, there's one other thing that I wanted to draw
2   the Court's attention to before I cede the podium to the
3   objecting parties.  And that is, the question about, what does
4   it really mean for the debtor to have an interest in property?

5          The issue that has arisen in all of the case and
6   American Home is definitely not an exception, is that you have
7   a debtor that before the petition date usually had assigned
8   loans to a third party.  In other words, American Home often
9   would originate loans, I think I saw in the response that there
10  were billions of dollars of loans being originated, and then
11  would either put them into an asset securitization trust or
12  would assign them to a third party.

13         To give the Court an idea of what is happening here
14  behind the scenes, when they do one of these big assignments of
15  loans by the hundreds or thousands, they don't necessarily
16  execute an actual assignment document for each loan.  Instead,
17  they execute an assignment document that applies to all of the
18  loans and then they set up a mechanism such as a power of
19  attorney for the assignee, to execute an assignment on the
20  assignor's behalf, consistent with the assignment.

21         And the reason that they do that is that there's a
22  procedure for the private industry world to keep track of who
23  owns loans at a particular time, called MERS.  Mortgage
24  Electronic Registration Systems, that does keep track, pretty
25  well, of when loans have gone from place to place.  But they

1 don't record the actual assignments with the land records in

2 the county where the property is situated, usually because of

3 the cost.

4      Now, I'm not saying this is always the way it's done,

5 but this has been a common situation in all of the Chapter 11

6 cases that we've been dealing with this issue on, where

7 American Home may have assigned these loans and believes that

8 it no longer owns the loans, but it simply retained bare legal

9 title because whoever it was that obtained the loans didn't

10 record an assignment.  So, technically, it's still in the name

11 of the debtor if you were to go to the land records.

12      That's a lot of the driving force behind why relief

13 from stay is so obvious in most of these cases, because in most

14 of these loans, the debtor would have no interest any longer,

15 their only interest is bare legal title, and the moment

16 somebody wanted to go out and record one of these assignments,

17 the debtor would have no interest and the debtor has no way to

18 stop them from doing that, nor probably any interest in doing

19 so.

20      So, I wanted to raise that to the Court's attention

21 as well, because to the extent that the Court were to hear

22 argument later that these are valuable assets that the debtors

23 need to protect, we have to parse out actual loans that are

24 being held by the debtors, versus bare legal title in loans

25 that they no longer own and I don't have an exact list of which

1  -- how many loans fall into which category, but my

2  understanding is that in this case, there aren't that many

3  loans left.

4           So, what we would -- we would just ask the Court to

5  remain cognizant of that during argument by the objecting

6  parties.

7           THE COURT:  All right.

8           MR. HILLER:  Does the Court have any questions or

9  issue?

10          THE COURT:   No.  Thank you, Mr. Hiller.

11          MR. HILLER:  Thank you.

12          THE COURT:  Mr. Beach.

13          MR. BEACH:  Good morning, Your Honor.  Again, for the

14  record, Sean Beach on behalf of the debtors.

15          Your Honor, the debtors attempted to address this

16  problem seven months ago, we filed a motion, it was approved by

17  the Court in April.  Apparently the first lien lenders didn't

18  like those procedures and now six months later file a motion to

19  try to get procedures in place that would allow for relief from

20  the stay and to reduce the burden on the Court and the parties

21  in the many hundreds of these motions that have been filed.

22          One of the major problems with what is proposed here

23  is, we've got a motion that says that they want blanket relief

24  to any party, to exercise any remedy against any real property

25  in which the debtors may or may have had an interest at some

1 point.  It's just way too broad.  The debtors are not trying to

2 be an impediment to making this process easier for the Court

3 and easier for the parties and more cost effective for

4 everybody, but we need some limitations in terms of the type of

5 relief that's being granted by this blanket stay relief motion.

6       For instance, under this motion, there can be an

7 argument that this is blanket stay relief for JP Morgan, which

8 is a secured lender of mortgage loans that the debtors own.

9 There could be an argument that it's stay relief for the

10 mortgagee that we have for real property that the debtors still

11 own in Mount Prospect, in Chicago.  It's just way too broad and

12 the debtors have proposed what we believe are some reasonable

13 limitations on this that would allow for the first lien lenders

14 to get the relief they need and, at the same time, not apply so

15 broadly to every other interest that the debtors may have in

16 real property.

17       I do have a black line that was filed with the

18 debtors objection.  I could bring that up --

19       THE COURT:  No, I have it.  I have it.

20       MR. BEACH:  You'll see the first -- in paragraph

21 number two, what we're proposing is, we just limit it to senior

22 mortgagees, the senior liens on real property, related to

23 junior liens that the debtors have, and the debtors do have a

24 number of second lien loans that are still in existence.

25       The other issue that was addressed by Mr. Hiller is

1 in connection with the idea of whether if this -- if an order

2 isn't accepted by a party, if one of these blanket stay relief

3 orders isn't accepted by a party, they want the ability to come

4 back to the Court and get that relief.  They certainly have

5 that ability to file a motion.  The debtors were trying in this

6 form of order that we submitted, to reduce the burden by

7 providing that a certification of counsel mechanism could work

8 as long as any of these first lien lenders would attest to the

9 fact that it is required and what the reasons are that an order

10 of the Court is required, but the debtors do believe that this

11 relief should be very limited and a motion process is probably

12 a fine approach in that regard as well.

13        And so those are the two primary issues the debtors

14 have in connection with this.  We do want a procedure that will

15 be more efficient and cost effective for the parties, but the

16 relief requested is way too broad and it could apply to a

17 number of interests that aren't intended to be addressed by

18 this order.  And as Your Honor knows, once an order is entered

19 like this other parties might try to glom onto it.  It could

20 cost us more money trying to argue that that order was never

21 meant to apply to certain other interests at the end of the

22 day.

23        THE COURT:  Okay.  Thank you, Mr. Beach.  Committee,

24 Mr. Powell.  I'm sorry, Mr. Indelicato.

25        MR. INDELICATO:  I've been called worse.  Good

1 morning, Your Honor, Mark Indelicato from Hahn & Hessen on

2 behalf of the committee.

3          Your Honor, let me start out with saying we agree

4 with Mr. Hiller.  We believe an order giving blanket relief

5 from the stay is appropriate.  Our primary concern is that we

6 not create an exception that could swallow the rule and not

7 permit these certifications, because quite honestly, Your

8 Honor, if a title company realizes that all they have to do is

9 say they need, because of whatever push back they're getting

10 from the local authorities in a specific order from this court,

11 to make themselves comfortable, obviously it will grow as time

12 goes on and you'll be seeing more and more of them.

13          Your Honor, that issue, very specifically was

14 addressed by Judge Carey in both the New Century and the Resume

15 orders.  We are both counsel to the liquidating trust in both

16 of those cases and were counsel to the committee beforehand,

17 and what Judge Carey basically said was, he understood the

18 concerns of the movants but he believed that very quickly the

19 title companies would understand that the motion for relief

20 from the stay did apply and that no additional order was

21 necessary and it would, in fact, resolve itself and we quoted

22 Judge Carey's remarks in our objection.

23          So, Your Honor, we would propose that the order be

24 entered, that relief stay be limited as Mr. Beach said, to only

25 the issues, and I think Mr. Hiller's motion really only focuses

1 on the interests in which the debtor has either nominal title

2 or a junior interest and not give the broad relief that he

3 sought in the motion.  We did work and there was an amended

4 order entered in New Century because there was some concern

5 that the language that we used, given the various states and

6 whether it's a deed of trust or it's a title issue, wasn't

7 broad enough or wasn't encompassing enough and if he feels that

8 issue needs to be addressed in formulating this order, we're

9 happy to work with him, but we do believe the order should be

10 entered, we believe it should be a blanket relief from the

11 stay, we believe, if possible, that a notation on the American

12 Home docket should also be entered the way it was done on the

13 New Century and the Resume docket.

14        And, in fact, I believe as the way Judge Carey

15 described it to us, in New Century, the system will not even

16 accept relief stay motions.  If you want to file a relief stay

17 motion we're going to have to make a specific request of the

18 Court and figure out a way of doing it because the system is

19 just not accepting it.  So, we had no assets left in New

20 Century, the motion was filed sort of on the cusp of

21 confirmation so that issue was addressed in and of itself.

22        In Resume, Your Honor, the liquidating trust actually

23 does have a few mortgages which may have some value or may have

24 no value in today's market, but the liquidating trustee made

25 the decision there to rely on the notice procedures that are

1  required under the state law to determine whether or not his

2  rights are being affected.  It was more cost effective to do it

3  that way than to continue dealing with the relief stay motions.

4          THE COURT:  Okay.

5          MR. INDELICATO:  So, Your Honor, the two issues that

6  really concerned Judge Carey was that no other issues -- no

7  other motions be filed, whether it be certification or relief

8  stay motions and, two, that there'd be no indication at the

9  hearing or in the order that state law rights were being

10 affected one way or the other.  We were not at all limiting who

11 was to be noticed, nor were we increasing who was to be

12 noticed, whatever the state law required the state law would

13 govern and in Resume the liquidating trustee ultimately went

14 forward with the motion and the order because he was going to

15 rely on notice under the state law to protect his rights.

16         So, again, Your Honor, we would suggest that the

17 order be entered, and modified to provide that there be no

18 certifications.  Thank you.

19         THE COURT:  All right.  And other than that one

20 modification you're okay with the debtors proposed order or you

21 have some other --

22         MR. INDELICATO:  No, Your Honor, we're okay with the

23 debtors proposed order.

24         THE COURT:  All right, very good.  Mr. Hiller, reply?

25         MR. MACAULEY:  Your Honor, may I be heard?

1          THE COURT:  Oh, I'm sorry, Mr. Macauley, yes, of

2    course you may.

3          MR. MACAULEY:  Your Honor, I'm up here in a strange

4    procedural position, but the U.S. Trustee appointed a Borrowers

5    Committee last night and the first initial meeting for the

6    Borrowers Committee is later today.

7          It turns out that all seven members of the Borrowers

8    Committee happen to be borrowers who engaged in our firm and

9    the Gilbert Randolph firm to file the motion that Your Honor

10   heard at the last omnibus hearing.

11         In reviewing the agenda for this hearing, I couldn't

12   happen but notice this motion and I haven't -- we haven't

13   had a chance, obviously, to speak to any of the parties but it

14   strikes me that if you're going to order potentially blanket

15   leave for servicers to obtain relief in lieu of an American

16   Home junior interest, the concern that a borrower would likely

17   have would be in connection with a potential counterclaim with

18   respect to the particular foreclosure where a servicer doesn't

19   have to come to the court to get relief, but if a borrower

20   wants to defend the foreclosure and raise any sort of

21   counterclaim against American Home, the borrower would have to

22   come back to this court.

23         And I thought, I wanted to just raise that comment

24   for the Court and, perhaps, this would be a good mechanism to

25   address that issue as well.  And once a Borrowers Committee is

1  appointed, of course, the Borrowers Committee could weigh in on

2  that.

3          THE COURT:  All right.

4          MR. MACAULEY:  Thank you.

5          THE COURT:  Thank you.  Anyone else?  Mr. Hiller,

6  reply?

7          MR. HILLER:  Your Honor, let me start by saying that

8  if the Court adopts the certification of counsel procedure that

9  we're proposing, the bulk of the debtors language is fine with

10 us.  Because if it turns out that there are ambiguities in the

11 effect of the blanket relief order, we can simply overcome them

12 with a certification of counsel and an order that says the stay

13 has been lifted, with respect to this particular property.

14          There's been a lot of concern raised about the volume

15 of these orders that would be submitted, but I would not

16 propose to the Court that we submit these kind of orders --

17          THE COURT:  I didn't hear any concern about the

18 volume of orders.

19          MR. HILLER:  Well, it's inherent in the fact that the

20 parties want to impose limitations on when you can use it.  In

21 other words, if you had to use the procedure only when there

22 was a problem, then that expresses the view that the procedure

23 should only be needed when there's actually a statement of

24 there being a problem.

25          THE COURT:  Well, wait a minute.  Wait a minute.  You

1 said the relief granted in this order, shall apply without

2 further order of the court.  A party seeking something else, a

3 party seeking an order specific to a particular party, property

4 or particular properties, may but should not be required to

5 file a -- you say, certification of counsel and all they've

6 added is, attesting that the applicable jurisdiction or agency

7 will not accept the order as proof of the modifications of

8 automatic stay as authority to proceed.  What's wrong with

9 that?

10        MR. HILLER:  Well, there are two things.  First of

11 all, Your Honor, that doesn't -- it fails to address the latent

12 problem that I described at the beginning, which is that

13 sometimes the problem is not a sheriff or an auctioneer

14 refusing to conduct a foreclosure without relief from the

15 automatic stay, but sometimes the question will become

16 transactions down the line, what evidence will the title

17 insurer have that relief from stay had been granted to approve

18 the foreclosure in question.

19        But more broadly, my question to the Court about this

20 is, is there is not a problem why would this extra contingency

21 be needed, because if we're only going to file one or two of

22 these a month and I'm even willing to stipulate to the Court

23 that if you want to put in a provision that says no law firm

24 shall file this kind of certification more than once every two

25 weeks, I'm happy to agree to that, but the point is, file we

1 file an order, one order, and it has one property listed on it,

2 or 150 pages of exhibits listing properties on it, the court

3 has to sign only one order.  The parties don't have to review

4 it, all we have to do is file the order and whether there is an

5 auctioneer that had a problem, whether there was an agency that

6 had a problem or whether there is one of our servicing clients

7 that says, you know, I'm concerned because in the State of

8 Florida we only use installment contract and we're not 100

9 percent sure that the mortgage definition as used in this order

10 applies to installment contracts.  It's not affecting the court

11 at all because the court is signing one order regardless.

12        And if there isn't a problem, in other words, the

13 parties aren't concerned about something specific, about what's

14 going into that order, then it makes much more sense just to

15 let us use that procedure and it will bog down the court less

16 because what happens if we file a certification and you're

17 concerned it doesn't comply with this language.  If there isn't

18 a problem, I think that would fix this whole mess because if it

19 turns out there were any ambiguities, we could simply file the

20 certification and that would be the end of it.

21        I have -- I needed to point out to the Court one

22 thing about New Century.  There was a procedural glitch in New

23 Century.  There was a last minute change of the hearing date

24 and -- excuse me, the hearing time for that hearing and,

25 unfortunately, our office didn't get notice by fax of it, and

1   so when I showed up for the hearing, the hearing had just

2   finished.  And so when Judge Carey made these observations that

3   counsel was describing to you about title companies needing to

4   be educated and simply understanding that the relief from stay

5   order would apply to them, then when we got to the next hearing

6   and I explained to Judge Carey, on reconsideration, what I've

7   explained to the Court here today, he said, oh, well now that

8   you understand -- now what I understand what the issue is, yes,

9   we can modify the language to make it broader and that was the

10  basis for the entry of the order that was attached to the

11  objection in New Century, reconsidering the prior order

12  granting blanket relief and, you know, applying the terms that

13  had been negotiated between our clients and in that case the

14  post confirmation trust.

15          So, it is very important to us and I wouldn't be

16  nearly as concerned about whether the language was broad enough

17  to include everything, if we simply had the ability every

18  couple weeks or once a month to file, and I'd prefer it be

19  every couple weeks, just so that our clients don't have to wait

20  a month, if they wanted one of these orders, but if we had a

21  very, very occasional ability to file an order that just listed

22  the properties and it wouldn't burden the Court any more.

23          THE COURT:  Okay, thank you, Mr. Hiller.  Mr.

24  Indelicato.

25          MR. INDELICATO:  Your Honor, I don't -- I rise only

1  --

2          THE COURT:    Are we going to fight over what happened

3  in New Century because --

4          MR. INDELICATO:  Well, only because --

5          THE COURT:  -- I don't want to.    Okay.

6          MR. INDELICATO:  -- it's only relevant, so the record

7  is clear, Your Honor, Mr. Hiller made the very same arguments

8  at the second motion before Judge Carey and if wants to tell

9  the story, he has to tell the whole story and he requested that

10  the certification be permitted and Judge Carey denied it a

11  second time.  Judge Carey did agree with him that the language

12  was ambiguous and we worked to clarify the language as we said

13  we would with him at the beginning of the hearing.  If there's

14  a concern that we were not being encompassing enough, we're

15  willing to work with him on the language.  The only issue is

16  the certification.

17          THE COURT:  All right.  You guys sound like Barack

18  Obama and John McCain, you know.   My friend here is lying, no

19  I'm not.  I would never lie.  Let me tell you what really

20  happened with Bill Ayres.  All right.

21          I'm going to grant the motion, which I think everyone

22  agrees should be granted.  This is without prejudice, Mr.

23  Macauley, for the Borrowers Committee to file what they believe

24  in an appropriate motion, in effect, to get the flip side of

25  the relief.  But I'm not going to hold the motion up today for

1   that, and not to put too fine a point on it, I don't think

2   you're actually -- have you filed a motion for -- there's been

3   no meeting so you haven't technically been retained.  Although

4   it's highly likely, I am sure.  Right?   No, I'm not going to

5   say any more.

6           Okay.  I am going to change paragraph five somewhat

7   though, to address both my concerns, essentially not both, to

8   address my concerns, Mr. Beach's and Mr. Indelicato's concerns

9   and Mr. Hiller's concerns, I think.  So here's what I propose

10  for that second sentence.

11          A party seeking an order specific to a particular

12  property, or particular properties, may, but shall not be

13  required to, file a motion for relief from the automatic stay

14  attesting why this order is not sufficient to provide the

15  movant and then (s), to make it clear that it can be movants,

16  with relief, which shall be served only upon counsel for the

17  debtors and committee, et cetera, et cetera.  So, I'm changing

18  -- the important language is, motion for relief from the

19  automatic stay attesting why this order is not sufficient to

20  provide the movants with relief.

21          And, I think that is a broad enough reservation to

22  address the issues Mr. Hiller has. I am not comfortable doing

23  it under certification of counsel.  I don't think it's much of

24  a difference other than you're going to have pay $250 and

25  you're going to have to notice it out for a hearing, but I

1 think that's appropriate and if there are no objections, I'll

2 certainly take it under certification of counsel.

3       If the parties agree, I am willing to put a shortened

4 notice period in there, say ten days or something, but I would

5 only do that upon agreement.

6       MR. HILLER:  Your Honor, Adam Hiller.  The order that

7 you've just modified, is this the --

8       THE COURT:  This is the black line the debtors

9 submitted, which I think -- do you have any other specific

10 comments because I took your comment to be provided, well, you

11 said the certification of counsel which I'm not going to allow,

12 and I've broadened, I hope I've broadened at least the

13 attestment that you need to make in that motion, to say why,

14 basically, this order or the previous order doesn't get done

15 what you need done.  So, if you need to say, well, there's

16 concern that, you know, Florida is an installment contract and

17 whether it's included in the term mortgage by this order, put

18 that in the motion, and we'll be able to address it.  And you

19 can do one motion for the State of Florida, one motion for West

20 Virginia, you know, 50 motions -- 51, we've got to include the

21 District of Columbia, Puerto Rico, Guam, whatever, I don't

22 know.

23       Did you have any other specific comments to the order

24 proposed by the debtor?  The changes are not significant.

25       MR. HILLER:  Your Honor, when I had said that if we

1 were to adopt the certification procedure that we would be fine

2 with the rest of what the debtor had put in, that was solely

3 because we had an easy outlet to confirm that what the debtor

4 had therein applies to all of the mortgages or all of the

5 various types of property interests involved, and if we were

6 going to use that procedure that the Court is referring to, I

7 would prefer to expand the scope of what's covered back to what

8 was in the original order.

9        THE COURT:  No, no, because I am concerned.  I want

10 to address your issues but I am concerned about the breadth.  I

11 think the specific issue that gives rise to yet to be

12 contested, several hundred stay reliefs, or the facts that are

13 set forth in the debtors order, which is the debtor originated

14 a mortgage with a junior lien, and the party with a senior lien

15 needs to foreclose and needs stay relief in order to do that.

16 And I, you know, I have no pleasure in signing 200 orders and

17 then being told not to -- well, no, I won't go into that, but

18 being -- you know, signing 200 orders every three weeks.  You

19 know, and notwithstanding I think we're singlehandedly funding

20 the budget for the judiciary, I don't think that's an

21 appropriate use of resources.

22        MR. HILLER:  I agree, Your Honor.  Then the only

23 comment that I would make is, I'd like the opportunity, since

24 we're going to be working with the language in the debtors form

25 of order, at least to expand the definition of senior mortgage

1  or senior mortgagee or senior lien as used in paragraph two.

2        THE COURT:  All right, well, let's do this.

3        MR. HILLER:   And if I could negotiate that with

4  counsel.

5        THE COURT:  I'd ask for the parties to discuss the

6  terms of an order, including if agreeable, shorten notice on

7  the stay relief motion I'm requiring and submit one under

8  certification of counsel, and if you can't agree, send me

9  dueling orders and I'll pick one.  And please include Mr.

10 Macauley in these discussions, unless and until he's replaced

11 by another law firm.   All right?

12       MR. HILLER:  Thank you, Your Honor, that's all we

13 have.

14       THE COURT:  Okay, thank you.

15       MR. HILLER:  Your Honor, may I be excused from the

16 balance of the hearing?

17       THE COURT:  Of course, yes.

18       MR. HILLER:  Thank you.

19       MR. BEACH:  Your Honor, for the record, Sean Beach

20 for the debtors.  The last item on the agenda today is with

21 respect to the order granting the motion for the appointment of

22 a Borrowers Committee, and the two, I think main points that

23 were to be addressed today are a status conference regarding

24 the appointment and any limitations or restrictions on the

25 retention of professionals for the Borrowers Committee, and

1  then in addition, to setting a disclosure statement hearing and

2  moving that plan process along.

3      Your Honor I have, I know the committee was formed

4  yesterday, I don't have a lot of information on that process,

5  so it may make sense to cede the podium to Mr. McMahon.

6      THE COURT:  Yes, that would  be helpful.  Yes, thank

7  you, Mr. Beach.  Good morning, Mr. McMahon.

8      MR. McMAHON:  Your Honor, good morning.  Joseph

9  McMahon for the Acting United States Trustee.  May I approach

10  with a copy of the formation notice?

11      THE COURT:  Yes.  Thank you.

12      MR. McMAHON:  Your Honor, I believe we were here on

13  the 8th for the last hearing, at which the Court directed our

14  office to appoint the Borrowers Committee.  Immediately, we

15  requested lists from both the moving parties as well as the

16  debtors with respect to entities that would fall within the

17  ambit of the borrowers class.

18      By Friday, we had decided that we were not going to

19  do a formation meeting that we typically do in Chapter 11

20  cases, bringing people to Wilmington.  Obviously, it didn't

21  make that much sense.  We sent out a letter that Friday, asking

22  for responses by this past Monday as to whether or not they

23  were -- the persons solicited were interested in serving on the

24  committee.

25      Yesterday, we pulled the information together and I

1 want to say at about 5:30 or 6 p.m., last night, filed the

2 notice that's before Your Honor.

3        What we do in these types of situations, where we do

4 a committee by letter solicitation is, we have an

5 organizational meeting just to get the people on the phone and

6 advise them what an official committee is, what we're dealing

7 with, and we have sent out an email indicating that we're going

8 to be having a meeting this afternoon.

9        So, that's all the information I have from an

10 administrative perspective to report to the Court.  While we

11 were hopeful we could have that meeting at an earlier point in

12 time, we wanted to give the borrowers ample time to respond to

13 the solicitation and that's where we're at.

14        THE COURT:  All right.  Maybe if I could heard from

15 -- thank you, Mr. McMahon.

16        MR. McMAHON:  Thank you, Your Honor.

17        THE COURT:  Mr. Macauley, may I hear from you or you

18 co-counsel as to any further information on what's happened or

19 what will happen?

20        MR. MACAULEY:  Well, as Mr. McMahon said, there's an

21 initial meeting at 4 p.m. today and, you know, it would be our

22 hope to, I mean, as the United States Trustee typically

23 instructs the committee how they need to operate and have a

24 chairman and engage counsel, so it would be our -- I haven't

25 had a chance to really speak with Mr. McMahon this morning, but

1  I think it might make sense to have a call with these people

2  shortly after the U.S. Trustee call and proceed forward at that

3  point.

4          THE COURT:  Okay.  And, I think you represented

5  earlier that your firm and your co-counsel's firm, I'm sorry, I

6  forget your co-counsel's name.

7          MR. MACAULEY:  Gilbert, O'Shinsky.

8          THE COURT:  O'Shinsky, you and Mr. O'Shinsky,

9  previously represented all the members of this committee?

10         MR. MACAULEY:  Yes.

11         THE COURT:  Are there any members of the committee

12 present?  No, okay.  All right.  Well, as we discussed at the

13 last hearing and I know you were not in control of the

14 formation process, of course, I wanted to discuss today the

15 scope of the committee's engagement, any limitations that may

16 be necessary in order to -- and that would maybe include fee

17 limitations in order to minimize the prejudice to the debtors

18 estate, and narrowly tailor the cost of a Borrowers Committee

19 which is an usual remedy, to the scope of that committee's

20 participation and I promised that I would schedule a disclosure

21 statement without any further delay.

22         So, let me hear from the debtor and the committee and

23 anyone else that wants to be heard on how we should proceed in

24 connection with those three items and then I'll give you an

25 opportunity to respond.  And at this point, as far as I'm

1 concerned, for purposes of today's hearing, you are

2 individually representing the members of the committee,

3 continuing to do so, as pursuant to your previous retention.

4 So, I don't think there's a standing issue.

5         MR. MACAULEY:  Very well.

6         THE COURT:  Okay.  Mr. Beach.

7         MR. BEACH:  For the record, Sean Beach for the

8 debtors.  Your Honor, the debtors certainly believe that we

9 should move forward on all of these fronts today and if I may

10 just step back for a moment.  In these cases, we're more than

11 14 months along at this point.  These cases were very

12 contentious from the beginning, we've been able to -- one of

13 the major problems we had early on in the case is we had

14 numerous creditors trying to fight over the same assets and

15 we've been able to, through many contested matters, through

16 certain asset liquidations, through negotiations, and

17 settlements been able to essentially marshal billions of

18 dollars with of assets and get to a point where we were able to

19 propose what the debtors believe is a plan, one of the few

20 options in terms of a plan that the debtors believe is

21 available to get these cases to completion and get the assets

22 into a trust.

23         We believe at this point, Your Honor, given the burn

24 in these cases, every month we could be losing 10 percent of

25 the value that would otherwise go to unsecured creditors,

1  including the borrower creditors.  And with that type of burn,

2  despite the debtors efforts to reduce that burn, these cases

3  continue to be contentious, Your Honor saw that there were, I

4  think, approximately 40 objections to the disclosure statement

5  itself.  Many of these were borrowers, I think, probably a

6  quarter of them or more were borrowers who have expressed their

7  concerns.  The debtors believe we've addressed most of those

8  concerns and, hopefully, you know, many of the issues will be

9  resolved before a disclosure statement hearing.

10         But the debtors believe that given the posture of

11  this case, given the fact that if we have a disclosure

12  statement hearing a month from now, say November 25th when we

13  had previously scheduled the confirmation hearing, that would

14  give the Borrowers' Committee's counsel, who we expect, I

15  assume, to get appointed today or tomorrow, over a month to

16  address any issues in connection with the disclosure statement

17  and have negotiations over what they believe should be

18  modifications to the plan.  That would be the time frame that

19  they would have been afforded had we filed the disclosure

20  statement motion today, or the disclosure statement today and

21  wanted to have that hearing scheduled for November.

22         So, Your Honor, in terms of scheduling the disclosure

23  statement, the debtors believe that it should be in November,

24  there's a November 12th hearing.  I understand that might be

25  pushing it a little bit.  There is a November 25th hearing and

1 the debtors believe that it's critical to get that disclosure

2 statement heard in November so that we can move towards a

3 confirmation in December, so that we don't lose the value that

4 we've been able to get set aside for unsecured creditors, under

5 a trust.

6        In terms of what the representation should be for the

7 retention of -- well, for a Borrower's Committee and the

8 retention of professionals, with respect to the Borrowers'

9 Committee, we think that that should be very limited.  Again,

10 we're 14 months into the case, many borrowers have come and

11 been heard in these cases, the debtors have made many changes

12 to orders and have now on a relatively routine basis, been

13 agreeable to stay relief in connection with borrower concerns

14 and those issues have been addressed.

15        So, we think the main issue for the Borrowers'

16 Committee at this point is to represent these borrowers in

17 connection with the disclosure statement and plan and that that

18 should be what the representation is limited to, issues related

19 to the disclosure statement and plan and those can be many

20 issues, Your Honor.  But we don't think we should be revisiting

21 bar dates, we don't believe that we should be revisiting

22 settlements that have been hard fought and expensive to come

23 about in these cases and we don't think the estates can afford

24 revisiting those type of fights that we've had previously in

25 the case already.  Nor do we think it's necessary to protect

1  the interests of borrowers.  We think that the interest of

2  borrowers are protected in the current plan and disclosure

3  statement but are certainly agreeable to sitting down with a

4  Borrowers' Committee and their counsel to address other

5  concerns that they may have in those documents and that we can

6  do that over the next 30 days.

7            In terms of the limitation on, I guess, the cost or

8  addressing the cost issue in connection with the Borrowers'

9  Committee, the debtors believe that there should be a cap on

10  the fees and expenses of professionals for the Borrowers'

11  Committee.  We believe that cap should be in the range of

12  $150,000.  We think that's sufficient for them to address

13  disclosure statement and plan issues and to the extent that

14  they believe that they need additional funds, they can always

15  move for cause in front of this Court, to seek additional funds

16  to address those issues.

17            THE COURT:  Okay.  Thank you.

18            MR. BEACH:    Thank you, Your Honor.

19            THE COURT:  Mr. Indelicato. You can address --

20            MR. INDELICATO:  Thank you, Your Honor.  Mark

21  Indelicato on behalf of the committee.  Your Honor, we agree

22  with many of the statements made by Mr. Beach.  We think the

23  November 25th hearing would be appropriate for a disclosure

24  statement.  That would give the Borrowers' Committee 30 days.

25  I have offered Mr. Macauley, if he's the counsel, or whoever is

1   the counsel, that we would work with them to bring them up to

2   speed on any issues that they need to be brought up to speed

3   and if, in fact, it would be appropriate, even to give them

4   some limited access to our financial advisors, BDO, so they

5   could understand at least the financial situation of where the

6   debtor is today, so that we could limit their ramp up time.

7         We also believe, Your Honor, there should be a very

8   narrow scope in their -- at least their engagement initially.

9   We think the primary function that they need to serve over the

10  next 30 to 60 days is the negotiation of the plan and related

11  disclosure statement issues.

12        Out of that there may be other issues that may arise

13  but I would like them to focus on that issue initially.  If

14  they believe there's other things that need to be done once the

15  plan is finalized and they've agreed to it, we can address that

16  issue then.  I wouldn't want them and I think as Mr. Beach

17  articulate, using 20/20 hindsight to revisit all that's

18  transpired in the last 14 months, or reviewing motions that

19  have already been decided by this Court or orders that have

20  already been entered, I don't think that's appropriate, but I

21  do believe based on the Court's ruling that their function

22  should be limited to the negotiation of the plan and how it

23  might affect a borrower.

24        And to the extent there are things occurring over the

25  next 30 to 60 days in the case, obviously, they have the right

1  to review it and give input to the Court, as it effects the

2  borrowers.  We would echo the debtors comments that $150,000

3  cap initially, we think is appropriate.  But obviously subject

4  to coming back to this court if, in fact, there are issues that

5  justify an increase of that cap.

6          We wanted to make sure that at least the committee's

7  point of view was known, and not that there was no cap, or

8  limitations put on at the beginning and then we had to deal

9  with it later on where we thought they did things that were

10 beyond at least what the committee believed was their scope.

11         So, with all of that, Your Honor, we adopt the

12 debtors position and we think a narrow scope with a finite cap,

13 at least initially, is appropriate.

14         THE COURT:  Okay, thank you.  Mr. McMahon, any

15 comments?

16         Mr. McMAHON:  Your Honor, good morning, again, Joseph

17 McMahon for the Acting United States Trustee.  Our inability to

18 get the committee up and running before today's hearing may

19 have created the circumstance where we don't have counsel

20 proposed by the committee here, to speak officially on behalf

21 of it.

22         I don't see any, I guess, harm in terms of having a

23 preliminary discussion with respect to scheduling, scope, you

24 know, and fee matters, given the presence of Mr. Macauley and

25 his co-counsel.  That being said, I think that probably the

1  ultimate entry of a supplemental order on that point should be

2  deferred until the committee meets for the first time.

3          THE COURT:  Okay.

4          MR. McMAHON:  Thank you, Your Honor.

5          THE COURT:  Thank you.  Mr. Macauley, any comments?

6          MR. MACAULEY:  Your Honor, in our papers we talked

7  about having a defined scope for the committee.  I mean they're

8  representing the borrowers, they're not representing the

9  general unsecured creditors generally.  And before the hearing

10  Mr. Indelicato and I had a chance to just talk about some of

11  the ideas that I had, you know, as far as laying out the scope

12  of a committee, along the lines of what was done in First

13  Reliance.

14          You know, certainly the plan and disclosure statement

15  issues are first and foremost because that's where we are in

16  the case.  I think claims and notice issues are obviously

17  something that needs to be addressed somehow, some way.  It may

18  be in connection with the plan, but it's something that the

19  borrowers obviously are going to have an interest in, and since

20  probably, you know, a certain number of the borrowers who were

21  appointed to the committee have not filed a claim in this case

22  and did not receive notice of the bar date.

23          Aside from that, I think a lot of what I listed, you

24  know, sort of flows from the plan.  I mean, the plan is

25  obviously an all encompassing type of issue, but just to list

1 the other things that I had just jotted down on a piece of

2 paper, you know, sale or transfer of assets affecting borrowers

3 adversely.  You know, from what I understand, that's mostly

4 down the pike.

5        Review of debtors information pertaining to borrowers

6 and loans, automatic stay and other case issues relating to

7 borrowers, any litigation not commenced by the debtors or the

8 Creditors' Committee relating to borrowers interests, and any

9 other issues which counsel for the two committees agree that

10 borrower participation is warranted.

11        Obviously, I think that's something that the parties

12 can hammer out and that we can finalize in the form of an

13 engagement, retention application that counsel for Borrowers'

14 Committee would submit to the Court and be heard at one of the

15 November omnibus hearings.

16        With respect to the costs, I think any limitation on

17 fees at this point is premature.  I mean, typically that is

18 something you would address on retention.  We don't think it's

19 a good -- I don't think it's a good idea right now for a couple

20 reasons.  And specifically I think, I mean, the Court at the

21 hearing on the 8th recognized the borrowers interests in making

22 some structural changes to the plan.  And frankly a cap right

23 now would be a disincentive for the debtors and the Creditors'

24 Committee to work with us.  I think when the Court appointed

25 the committee and, you know, my view is, you know, the three

1 parties can kind of get together, but heads and try and come up
2 with a plan that works for everyone.  I think if you put a cap
3 at this point, and you put a short disclosure statement, I
4 think that process really goes by the wayside because if they
5 have a plan on the table, they're going to go forward, they're
6 going to try -- you know, they may listen to us, they may not
7 listen to us.  For us to -- I mean, in their papers they said,
8 you know, it's going to cost us money to get up to speed.
9 Well, if they're working with us to get us up to speed, it's
10 not going to cost nearly as much.

11      On Monday they filed a motion seeking to extend the
12 time to appeal the order that the Court entered directing
13 appointment of the Borrowers' Committee.  I mean, that's
14 obviously, you know, that's a separate cost and I don't know
15 where that would go.   But that's something -- another thing to
16 consider.

17      And, I think, you know, if the parties are serious
18 about limiting costs, they're going to try to and work with us
19 and I think to be able to work effectively, if we're trying to
20 get this thing done in 30 days, I mean it's one thing to revise
21 some language in a disclosure statement and do it in a couple
22 of weeks, but here I think we're going beyond that, and even if
23 you do approve the disclosure statement some time prior to the
24 holidays, then you're looking at a solicitation over the
25 holidays, which strikes me as, in a case where notice is an

1 issue as something -- it's not something that this Court may

2 want to do.  So, our suggestion with respect to the disclosure

3 statement was, you know, sometime in January and I think that

4 would give the parties sufficient time to deal with the issues,

5 to sit down, to see if we can hammer something out, and you

6 know, if not we can address it elsewhere, but at least it gives

7 us a starting point.

8          Going back to the cap, though, I mean the Court has

9 inherent authority to address the retention and compensation of

10 professionals who are being compensated by the estate, so it's

11 certainly something that the Court can revisit later.  I think

12 it's important, though, to sort of get this going on the right

13 foot, get the parties conversing and working together, and I

14 think that's going to solve the fee issue, in and of itself.

15          THE COURT:  All right, thank you.  Mr. Beach, any

16 reply?

17          MR. BEACH:  Your Honor, briefly.  We certainly have

18 no problems putting in a form of order, we're making a

19 representation on the record, that we'll cooperate and assuming

20 we get the appropriate cooperation agreement entered into

21 between the parties, we would be happy to share information

22 and get that committee up to speed, and be as efficient as

23 possible in doing so.  So, in terms of a cap affecting our

24 ability to efficiently get that committee up to speed, I think

25 it's irrelevant to that issue.  And we do believe it's

1  important to, given where we're at in these cases, and given

2  how quickly we think it's critical to get through and to a plan

3  process to be able to get as many as possible in the hands of

4  unsecured creditors, you know, we do think a cap is appropriate

5  and that the scope be limited to the plan process.

6         THE COURT:  Thank you.  Anything further?  Mr.

7  Indelicato?

8         MR. INDELICATO:  Your Honor, just, I don't want to

9  repeat what Mr. Beach said, but Your Honor, I am concerned

10  about a January disclosure hearing date.

11         THE COURT:  That's a non-starter.  You don't have to

12  worry about that.

13         MR. INDELICATO:  Yes.  The costs of this are -- so we

14  do need to have it quickly, so with that, I'll sit down.

15         THE COURT:  Okay.  Well, I made it clear, I believe,

16  at the hearing where I directed the appointment of a Borrowers'

17  Committee, that I was concerned about the continuing costs of

18  running this estate and the timing and while I thought it

19  appropriate under the standards to appoint a Borrowers'

20  Committee, I was concerned about the prejudice to the estate,

21  the cost and delay, as well as, frankly, providing a blank

22  check to an estate paid professional to, in effect, redo the

23  last 14 months of this case.

24         I had hoped that the committee would have been formed

25  in sufficient time to have counsel here, I am not in any way

1 criticizing or being pejorative in anyway to the Office of the

2 U.S. Trustee, it's a herculean task to provide sufficient

3 notice to the number of people involved, as well as to form the

4 committee and I understand a meeting is later today.

5            I actually think that entering an order, and I am

6 prepared to enter an order, defining the scope and fees without

7 prejudice to the right to seek a further order of the Court

8 expanding that limitation, and setting a disclosure statement

9 because I think it will be helpful to the committee this

10 afternoon to decide who to hire and what they need to do, what

11 this committee's role at least preliminarily, will be.

12            So, and I think it's important to set a disclosure

13 statement, so I am going to set the disclosure statement

14 hearing for November 25th and I will not continue that hearing

15 absent consent of the debtors and the Official Committee of

16 Unsecured Creditors.  And we have an overflow date of the 26th,

17 as well, to remind people.

18            I am going to limit at least, again, preliminarily

19 subject to entry of further order of the Court, the scope of

20 the Borrowers' Committee's authorized actions in connection

21 with this case, to four items.  The disclosure statement, the

22 plan of reorganization, any further activities upon the consent

23 of the debtors, the Official Committee and the Borrowers'

24 Committee and any issues relating to the appointment of the

25 committee, including any appeal thereof or retention of

1  counsel.   In effect, the administrative matters involving in

2  actually running the committee.   And I'm going to limit the

3  fees to $250,000.   That includes expenses.   Fees and expenses

4  will be capped at this time at $250,000.

5        I don't think I need to put something in the order

6  that says the parties should cooperate. I think that goes

7  without saying.   Certainly, to the extent they don't cooperate,

8  and it prejudices the committee, that's an issue for how soon a

9  confirmation hearing will be set.

10        I am going to request that an order be entered under

11  certification of counsel upon consultation with whoever is

12  appointed as committee counsel, by the Borrowers' Committee

13  unless it appears that there's going to be some significant

14  delay, in connection with that appointment, and if that's the

15  case, say in the certification of counsel that's the case and

16  I'll consider entering the order even though counsel hasn't

17  been chosen.   I fully expect we'll have counsel by five

18  o'clock.   And I would hope so, because the clock is ticking.

19  I'm sure Mr. McMahon will make the committee aware of that at

20  his conference call at four o'clock.

21        Also I'm sorry, include Mr. McMahon, if you will, if

22  he wishes in the negotiation of the order, or not negotiation,

23  let's say actually putting pen to paper on what I've already

24  ruled.   Any questions, comments?   Mr. McMahon?

25        MR. McMAHON:   Your Honor, on scope, just very

1  briefly.  I know we had a colloquy earlier regarding the

2  borrowers potentially filing a motion for flip side, automatic

3  stay relief and I'm just looking at the scope categories and

4  thinking about --

5        THE COURT:  Well, let's include that, yes.  Let's

6  include that, thank you.

7        MR. McMAHON:  Thank you, Your Honor.

8        THE COURT:  So, you can include matters relating to

9  -- well, matters relating to a global motion for stay relief on

10 behalf of borrowers.  Thank you, Mr. McMahon, for reminding me

11 of that.

12       All right, any further questions about what I ruled?

13 Just to reiterate, disclosure statement, plan further agreement

14 of the debtor committee and Borrowers' Committee, issues

15 relating to the appointment of the committee, including

16 retention of counsel and any appeal thereof.  At this time I am

17 not authorizing -- let's put this into it, at this time I am

18 not authorizing the committee to retain any professionals other

19 than counsel.  I'm not authorizing the retention of a financial

20 professional at this time.

21       And, of course, the issues relating to stay relief,

22 fee and expense limitations of 250,000 and scheduling the

23 disclosure statement for November 25th.  It will not be moved

24 absent consent of the debtor and the Official Committee of

25 Unsecured Creditors.  That's it.  Mr. Macauley.

1           MR. MACAULEY:  Your Honor, the one concern that I

2  would have, which I know, Your Honor, I think would be able to

3  address is, given the short time frame that is anticipated, if

4  there's an issue, if there's an emergent issue that arises, I

5  suspect there would be a mechanism to contact the Court on an

6  emergent basis.

7           THE COURT:  Well, that's always the case and my

8  response is going to be, file a motion to shorten -- I don't

9  think I've ever approved a motion to shorten in connection with

10 retention of a professional, but I think I would consider an

11 exception here, scheduling it for the 12th, if you think that's

12 appropriate, since you'll be -- I assume that Borrowers'

13 Committee will be undertaking a lot of work, very quickly and

14 given the scope of the case, and what's going on, I think it

15 would be appropriate to shorten notice, but just to make it

16 clear to everybody in the room, that is an exception that will

17 not be repeated absent a showing of real cause.  Don't cite

18 this transcript to me.

19           Yes, I mean you always have --  I mean if there are

20 issues that arise, call the Court and we'll set that up.  That

21 goes for everybody in the room.  I understand there are lot of

22 moving parts and just to sort of address one of your issues

23 about being able to negotiate, I think I've given you enough

24 authority at this point and enough money, to get a place at the

25 table.  You can't make the debtor and committee agree or to

1  anything you have to say, you have a place at the table and

2  you'll certainly have a place at the table at the disclosure

3  statement hearing and confirmation.  Okay?  Anything further?

4          MR. MACAULEY:  Thank you.

5          THE COURT:  Yes, sir.

6          MR. HUGGETT:  Your Honor, Jim Huggett, Margolis,

7  Edelstein.  Could I just take a second to talk a little, based

8  on what Mr. Beach --

9          THE COURT:  Yes, of course.

10          MR. HUGGETT:  -- I apologize.  This is with respect

11  to a cert. of counsel that had been filed, I think it was filed

12  half an hour or so before this hearing.  I didn't get a chance

13  to look at it, we're just trying to figure out what it says.

14          THE COURT:  All right, take your time.

15          MR. HUGGETT:  Actually, you know, we can take care of

16  this off, I don't need this hearing to go forward any more.

17          THE COURT:  Well, what shouldn't I sign?

18          MR. HUGGETT:  He's going to provide me with what was

19  submitted, it's no problem at all.

20          THE COURT:  Will you call chambers and let me know if

21  I can sign it, but what does it reflect?

22          MR. BEACH:  Your Honor, I'm not sure what the issue

23  is but we will call chambers and -- it relates to the claim

24  objection and I --

25          MR. HUGGETT:  Yes, there was a certification of

1 counsel filed maybe an hour before the hearing that related to

2 a claim objection.  I represent --

3          THE COURT:  Which one?

4          MR. HUGGETT:  I believe it's the 19th.  So, we'll

5 just take a look at it.  I was just asking him if there was a

6 copy of the order.

7          THE COURT:  All right.  Sorry.  I won't sign any of

8 these claim objection orders until I get a call from Mr.

9 Beach's office.

10          MR. HUGGETT:  We'll take care of this in the hallway.

11 I don't want to delay the hearing any longer.

12          THE COURT:  All right.  Well, then knock on the door

13 and let my chambers now.  I'm sorry, just to revisit this

14 committee thing, I think the way to proceed procedurally is to

15 label it as a supplemental order, to my previous order

16 directing the appointment of the committee.  All right.

17 Anything further?  Thank you.  Hearing adjourned.

18                         * * * * *

19

20

21

22

23

24

25

54

# C E R T I F I C A T I O N

        I, ELAINE HOWELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter and to the best of my ability.


/s/ Elaine Howell               Date:  October 29, 2008
ELAINE HOWELL
J&J COURT TRANSCRIBERS, INC.

**J&J COURT TRANSCRIBERS, INC.**