## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------- x

In re:                         :     Chapter 11

                              :

AMERICAN HOME MORTGAGE    :     Case No. 07-11047 (CSS)
HOLDINGS, INC.,
a Delaware corporation, et al.,      :     Jointly Administered

                              :

       Debtors.              :     **Sale Procedures Hearing Date:** November 12, 2008 at 4:00 p.m. (ET)
                              :     (Requested)
                              :     **Sale Procedures Objection Deadline:** November 5, 2008 at 4:00 p.m. (ET)
                              :     **Sale Motion Hearing Date:** December 8, 2008 at 10:00 a.m. (ET)
                              :     **Sale Motion Objection Deadline:** December 1, 2008 at 4:00 p.m. (ET)

-------------------------------------------------- x

### MOTION OF THE DEBTORS FOR ORDER: (I) APPROVING SALE PROCEDURES; (II) SCHEDULING A HEARING TO CONSIDER SALE OF CERTAIN SECOND LIEN ASSETS; (III) APPROVING FORM AND MANNER OF NOTICE THEREOF; AND (IV) GRANTING RELATED RELIEF; AND (B)(I) AUTHORIZING THE SALE OF THE SECOND LIEN ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (II) AUTHORIZING AND APPROVING THE ASSET PURCHASE AGREEMENT THERETO; AND (III) GRANTING RELATED RELIEF

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors

in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] hereby submit this

motion (the "Motion"), pursuant to sections 105(a) and 363 of title 11 of the United States Code,

11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 6004 and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for (a) entry of an order, substantially in

the form annexed hereto as Exhibit A (the "Sale Procedures Order"): (i) approving procedures (the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

"Sale Procedures") substantially in the form annexed hereto as Exhibit B with respect to the proposed sale or sales (the "Sale") of certain second lien assets, described herein (collectively, the "Second Lien Assets"), pursuant to the form Asset Purchase Agreement (the "Asset Purchase Agreement"), to be filed prior to the hearing, (ii) scheduling a hearing (the "Sale Hearing") on the Sale of the Second Lien Assets and setting objection and bidding deadlines with respect to the Sale, (iii) approving the form and manner of notice of an auction for the Second Lien Assets (the "Auction"), and (iv) granting related relief; and (b) entry of an order, substantially in the form annexed hereto as Exhibit D (the "Sale Order"):  (i) authorizing the sale of the Second Lien Assets free and clear of liens, claims, encumbrances, and other interests; (ii) authorizing and approving the Asset Purchase Agreement thereto; and (iii) granting related relief.

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, along with Bankruptcy Rules 6004 and 9014.

## BACKGROUND

2.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in possession of their properties and have continued to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

066585.1001

3.      An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007.  No trustee or examiner has been appointed.

4.      In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

5.      The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business.  Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

### THE SECOND LIEN ASSETS

6.      As of September 30, 2008, the Second Lien Assets totaled 1,087 junior loans or junior real property interests with an aggregate unpaid principal balance ("UPB") of approximately $108,982,401.  The Second Lien Assets will be sold on an "as is, where is" basis, substantially pursuant to the terms of the form Asset Purchase Agreement, with bidders submitting bids on the entire pool of Second Lien Assets based on a blended rate multiplied by the total UPB. The Second Lien Assets include the following:

(a)      Non-Performing Second Lien Loans:  These are home equity lines of
         credit or other mortgage loan products secured by a junior interest in

real property where the mortgagor is thirty (30) days or more delinquent in its payment obligations or otherwise in default. The Debtors seek to sell 854 of these loans with a total <u>UPB</u> of approximately $82,589,747; and

(b)  <u>Active Foreclosure Second Lien Loans</u>:  These are Non-Performing Second Lien Loans where the real property is currently subject to an active foreclosure process. The Debtors seek to sell 201 of these loans with a total UPB of approximately $23,119,423; and

(c)  <u>REO Second Lien Interests</u>:  These are junior security interests on real property that has been foreclosed upon and is now real estate owned ("<u>REO</u>") by the party holding a senior security interest. The Debtors seek to sell 32 REO Second Lien Interests with a total UPB of approximately $3,273,231.

7.    Pursuant to the Asset Purchase Agreement or such other agreement as the Debtors may enter into with respect to the Sale, the Debtors propose to sell, assign and transfer the Second Lien Assets to a Successful Bidder,[2] free and clear of all liens, claims, interests and encumbrances (collectively, the "<u>Liens</u>"), other than those expressly assumed by the Successful Bidder. Any and all Liens will attach to proceeds of any sale received by the Debtors with the same validity, priority, force and effect such Liens had on the Second Lien Assets immediately prior to the Sale. The Sale is subject to the Court's approval and the Auction process proposed herein.

8.    The Debtors, with the assistance of their financial advisors have determined that the potential sale of the Second Lien Assets pursuant to the Sale Procedures is a reasonable exercise of their sound business judgment, is consistent with their fiduciary duties to these estates, and will maximize the value of these assets for creditors of these estates.

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Sale Procedures annexed hereto as <u>Exhibit B</u>.

## RELIEF REQUESTED

9.     By this Motion, the Debtors seek the entry of two orders of this Court: (a) the Sale Procedures Order (i) approving the Sale Procedures; (ii) scheduling the Sale Hearing; (iii) approving the form and manner of notice of the Sale Procedures, including the Auction and Sale Hearing; and (iv) granting such other and further relief as is just and proper; and (b) the Sale Order (i) authorizing the Sale of the Second Lien Assets free and clear of Liens to the highest or otherwise best bid received at the Auction; (ii) authorizing and approving the form of Asset Purchase Agreement; and (iii) granting related relief.

### A.    Sale Procedures

10.    The Debtors are proposing the Sale Procedures, in the form annexed hereto as Exhibit B and which are incorporated herein by reference, in an attempt to maximize the realizable value of the Second Lien Assets for the benefit of the Debtors' estates, creditors and other interested parties.  The Sale Procedures contemplate an Auction process pursuant to which bids for the Second Lien Assets will be subject to higher or better offers.  As described more fully in the Sale Procedures, only Qualified Bidders who timely submit Qualified Bids may be eligible to participate in the Auction.

### B.    Notice of Auction

11.    The Debtors seek to have a Bid Deadline of December 3, 2008 at 5:00 p.m. (ET) with the Auction scheduled for December 5, 2008 at 10:00 a.m. (ET) and the Sale Hearing scheduled for December 8, 2008 at 10:00 a.m. (ET).

12.    The Debtors further request, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Sale: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware; (c) be filed with the Clerk of the United States Bankruptcy Court for

the District of Delaware (the "Bankruptcy Court"), 824 Market Street, 3rd Floor, Wilmington,

Delaware 19801, by 4:00 p.m. (ET) on December 1, 2008; and (d) be served so as to be received

by such date and time on: (i) the Debtors; (ii) counsel to the Debtors; (iii) counsel to the

Committee; (iv) counsel to the DIP Lender; and (v) the Office of the United States Trustee.

13.     Not later than two business days after the entry of the Sale Procedures

Order, the Debtors will serve copies of the Notice of Auction, substantially in the form attached

hereto as Exhibit C, the Sale Procedures, and the Sale Procedures Order by mail, postage prepaid

to:  (i) all entities known to have expressed a *bona fide* interest in acquiring the Second Lien

Assets; (ii) counsel to the DIP Lender, (iii) counsel to the Committee; (iv) the Office of the United

States Trustee for the District of Delaware; (v) known entities holding or asserting a security

interest in or lien against any of the Second Lien Assets; (vi) taxing authorities whose rights may

be affected by a sale of the Second Lien Assets; (vii) all government agencies required to receive

notice of proceedings under the Bankruptcy Rules; and (viii) all parties that have requested notice

pursuant to Bankruptcy Rule 2002 as of the date prior to the date of entry of the Sale Procedures

Order.

14.     Not later than five business days after entry of the Sale Procedures Order,

the Debtors will publish the Notice of Auction, substantially in the form attached hereto as

Exhibit C in the national edition of *The Wall Street Journal*.  Additionally, the Debtors will use

commercially reasonable efforts to cause the Notice of Auction to be posted on the Bloomberg

newswire service.

**C.    Bid Deadline**

15.     The Debtors propose to accept formal, binding, unconditional, irrevocable

bids (each, a "Bid").  The Debtors request that all Bids be submitted in writing so that they are

actually received no later than 5:00 p.m. (ET) on December 3, 2008 (the "Bid Deadline").

DB02:7514943.2                                                          066585.1001

## AUTHORITY FOR REQUESTED RELIEF

**A.    The Sale is Within the Sound Business**
       **Judgment of the Debtors and Should be Approved**

16.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a

debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary

course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 363 of the Bankruptcy

Code does not set forth a standard for determining when it is appropriate for a court to authorize

the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts in this

Circuit and others have required that the decision to sell assets outside the ordinary course of

business be based upon the sound business judgment of the debtors. See In re Abbotts Dairies of

Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d

389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722

F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.,

(In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware &

Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

17.    The "sound business judgment" test requires a debtor to establish four

elements in order to justify the sale or lease of property outside the ordinary course of business,

namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course

of business, (b) that adequate and reasonable notice has been provided to interested persons, (c)

that the debtors have obtained a fair and reasonable price, and (d) good faith. Abbotts Dairies, 788

F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399

(Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).

In this case, the Debtors submit that the decision to proceed with the Sale of the Second Lien

Assets and the Sale Procedures related thereto are based upon their sound business judgment and

7

should be approved. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

18.    Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

8

19.     The Debtors submit that more than ample business justification exists to sell the Second Lien Assets to the Successful Bidder (or Second Best Bidder) pursuant to the Sale Procedures.  Additionally, the Notice of Auction and the Sale Procedures are designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Second Lien Assets.  Accordingly, the proposed Sale satisfies the second prong of the Abbotts Dairies standard.

20.     Moreover, the Sale Procedures are designed to maximize the value received for the Second Lien Assets.  The process proposed by the Debtors allows for a timely and efficient auction process, while providing bidders and consultants with ample time and information to submit a timely bid.  The Sale Procedures are designed to ensure that the Second Lien Assets will be sold for the highest or otherwise best possible purchase price.  The Debtors are subjecting the value of the Second Lien Assets to market testing and permitting prospective purchasers to bid on the Second Lien Assets.  The proposed Sale will be further subject to a market check through the solicitation of competing bids in a court-supervised Auction process as set forth in the Sale Procedures.  Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Second Lien Assets will be fair and reasonable, and, therefore, the third prong of the Abbotts Dairies standard is satisfied.  As discussed below, the "good faith" prong of the Abbotts Dairies standard is also satisfied here.

**B.      The Sale is Proposed in "Good Faith"
Under Section 363(m) of the Bankruptcy Code**

21.     The Debtors request that the Court find that the Successful Bidder (or Second Best Bidder) is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.

22.     Section 363(m) of the Bankruptcy Code provides, in pertinent part:

9

> The reversal or modification on appeal of an authorization under
> subsection (b) . . . of this section of a sale . . . of property does not affect
> the validity of a sale . . . under such authorization to an entity that
> purchased . . . such property in good faith, whether or not such entity knew
> of the pendency of the appeal, unless such authorization and such sale . . .
> were stayed pending appeal.

11 U.S.C. § 363(m).

      23.     Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets

sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal. By its terms, section 363(m)

of the Bankruptcy Code applies to sales of interests in tangible assets, such as the Second Lien

Assets.

      24.     As required by section 363(m) of the Bankruptcy Code, the Sale Procedures

have been proposed in good faith and provide for both the Debtors and the potential purchaser to

act in good faith in negotiating the Sale. Although the Bankruptcy Code does not define "good

faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated

that "the phrase encompasses one who purchases in 'good faith' and for 'value'." Abbotts Dairies,

788 F.2d at 147. To constitute lack of good faith, a party's conduct in connection with the sale

must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or

an attempt to take grossly unfair advantage of other bidders." Id. (citing In re Rock Indus. Mach.

Corp., 572 F.2d 1195, 1198 (7th Cir. 1978)). See also In re Bedford Springs Hotel, Inc., 99 B.R.

302, 305 (Bankr. W.D. Pa. 1989); In re Perona Bros., Inc., 186 B.R. 833, 839 (D.N.J. 1995). Due

to the absence of a bright line test for good faith, the determination is based on the facts of each

case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." In re

Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp.,

572 F.2d 1195, 1998 (7th Cir. 1978)).

DB02:7514943.2
066585.1001

25.    Here, the Sale of the Second Lien Assets is in good faith.  There is no evidence of fraud or collusion in the terms of the Sale.  To the contrary, as discussed throughout this Motion, and as will be further demonstrated at the Sale Hearing, the Asset Purchase Agreement will be the culmination of a solicitation and negotiation process in which all parties will be represented by sophisticated counsel and financial advisors.  No known potential bidder is an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations will be conducted on an arm's length, good faith basis.  With respect to the potential bidders, the Sale Procedures are designed to ensure that no party is able to exert undue influence over the process.  Under the circumstances, the Successful Bidder (or Second Best Bidder) should be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.  Furthermore, the Sale Procedures are designed to prevent the Debtors or the Successful Bidder (or Second Best Bidder) from engaging in any conduct that would cause or permit the Asset Purchase Agreement, or the Sale of the Second Lien Assets to the Successful Bidder (or Second Best Bidder) pursuant thereto and hereto, to be avoided under section 363(n) of the Bankruptcy Code.

26.    All creditors and parties in interest will receive notice of the Sale and will be provided with an opportunity to be heard.  The Debtors submit that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code.

C.    **The Sale Satisfies the Requirements
of Section 363(f) of the Bankruptcy Code**

27.    Under section 363(f) of the Bankruptcy Code, a debtor-in-possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if:  (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party

066585.1001

asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the

purchase price for the property is greater than the aggregate amount of all liens on the property;

(iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim or

interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for

such interest. 11 U.S.C. § 363(f); <u>Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)</u>, 94 B.R.

343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the

disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the

subsections is met). Because the Debtors expect that they will satisfy, at minimum, the second and

fifth of these requirements, if not others as well, approving the sale of the Second Lien Assets free

and clear of all adverse interests is warranted. Furthermore, courts have held that they have the

equitable power to authorize sales free and clear of interests that are not specifically covered by

section 363(f). <u>See, e.g.</u>, <u>In re Trans World Airlines, Inc.</u>, 2001 WL 1820325 at *3, 6 (Bankr. D.

Del. March 27, 2001); <u>Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White</u>

<u>Motor Credit Corp.</u>), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

**D.    Relief from the Ten Day Waiting Period**
**Under Bankruptcy Rules 6004(h) is Appropriate**

28.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,

or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the

court orders otherwise." The Debtors request that the Sale Order be effective immediately by

providing that the ten (10) day stays under Bankruptcy Rules 6004(h) is waived.

29.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an

objecting party to appeal before an order can be implemented. <u>See</u> Advisory Committee Notes to

Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rules 6004(h) and the Advisory Committee

Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten (10)

day stay period, Collier on Bankruptcy suggests that the ten (10) day stay period should be

eliminated to allow a sale or other transaction to close immediately "where there has been no

objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev.

ed. 1988). Furthermore, Collier's provides that if an objection is filed and overruled, and the

objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of

time actually necessary to file such appeal. Id.

   30. The Debtors hereby request that the Court waive the ten-day stay period

under Bankruptcy Rules 6004(h).

**NOTICE**

   31. Notice of this Motion will be provided to: (i) the Office of the United States

Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the DIP Lender;

(iv) all parties who are known to possess or assert a secured claim against the Second Lien Assets;

(v) the Internal Revenue Service; (vi) the U.S. Securities and Exchange Commission; (vii) known

potential bidders; and (viii) all parties entitled to notice under Local Rule 2002-1(b). In light of the

nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request (i) entry of the proposed Sale Procedures Order, substantially in the form attached hereto as Exhibit A, (ii) entry of the proposed Sale Order, substantially in the form attached hereto as Exhibit D and (iii) such other and further relief as the Court deems just and proper.

Dated: 10/31, 2008
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Counsel for the Debtors and Debtors in Possession

DB02:7514943.2

066585.1001