**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------  x
In re:                                                  :    Chapter 11
                                                        :
AMERICAN HOME MORTGAGE                                   :    Case No.  07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,¹        :
                                                        :    Jointly Administered
                            Debtors.                    :
                                                        :    Ref. Docket. No. 2791
------------------------------------------------------  x
```

**DEBTORS' OBJECTION TO MOTION OF NATIONAL CITY CAPITAL**
**COMMERCIAL CORPORATION FOR ENTRY OF ORDER GRANTING**
**ALLOWANCE AND PAYMENT OF POST-PETITION RENT AS AN**
**ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. § 503(b)(1)(A)**

The above captioned debtors and debtors-in-possession ("AHM" or the

"Debtors") submit this objection (the "Objection") to the Motion for Entry of Order Granting

Allowance and Payment of Post-Petition Rent as an Administrative Expense Pursuant to §

503(b)(1)(A) [Docket No. 2791] (the "Motion") by National City Capital Commercial

Corporation ("National City" or the "Movant").  In support of this Objection, the Debtors

respectfully represent as follows:

**PRELIMINARY STATEMENT**[2]

1.      Simply put, there is no basis to grant National City an administrative

expense claim for the Final Installment Payment.  It is well established that, to be granted

---

[1]  The Debtors (as defined below) in these cases, along with the last four digits of each Debtor's federal tax
identification number, are: American Home Mortgage Holdings, Inc. (6303) ("AHM Holdings"); American Home
Mortgage Investment Corp.  ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage
Acceptance, Inc.  ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home
Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp.  ("AHM Corp."), a
New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited
liability company (1407); Homegate Settlement Services, Inc.  ("Homegate"), a New York corporation (7491); and
Great Oak Abstract Corp.  ("Great Oak"), a New York corporation (8580) (collectively, "AHM" or the "Debtors").
The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]  All capitalized terms used, but not otherwise defined in the Preliminary Statement, shall have the meanings
ascribed to them in the Objection.

administrative expense priority status, National City must demonstrate by a preponderance of the

evidence that the Final Installment Payment arose from a postpetition transaction between

National City and the Debtors, and that such transaction directly and substantially benefitted the

Debtors' estates. National City cannot and has not demonstrated either.

        2.      National City fails to allege, let alone prove, that the Final Installment

Payment arose from a postpetition transaction with the Debtors that directly and substantially

benefited the Debtors' estates. The mere fact that the Final Installment Payment came due after

the Petition Date, which is National City's sole purported basis for elevating the claim to

administrative expense priority status, is insufficient to grant the Final Installment Payment

administrative priority. Put differently, National City has not provided the Debtors or their

estates with any postpetition value or rights that the Debtors did not already have as of the

Petition Date. Accordingly, the Debtors respectfully request that the Court deny the Motion.

## BACKGROUND

**A.**    **General Background**

        3.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with

this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Each Debtor is continuing to operate its

business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

        4.      The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

        5.      On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or

examiner has been appointed.

        

6.    Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business").  Commencing on October 2, 2007, this Court held a hearing to consider the Debtors' motion to sell the Servicing Business.  By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").  The legal or final closing of the Servicing Sale occurred on April 11, 2008.

**B.    Relevant Background**

7.    On or around April 10, 2006, AHM Investment and Oracle USA, Inc. ("Oracle USA") entered into that certain License and Services Agreement (the "License and Services Agreement"), pursuant to which AHM Investment purchased from Oracle USA certain perpetual software licenses and two (2) years of technical support for computer programs used by the Debtors' human resources department to coordinate certain employee benefit programs.

8.    At or around the same time AHM Investment and Oracle USA executed the License and Services Agreement, AHM Investment and Oracle Credit Corporation ("Oracle Credit") executed that certain Payment Plan Agreement No. 4728 (and as later amended, and together with that certain Payment Schedule No. 17965 attached thereto, the "Payment Plan Agreement") pursuant to which the parties agreed that AHM Investment would pay $1,045,440 (the "System Price"), on an installment basis, for the software and technical support.  The System Price consisted of $726,000 for the perpetual licenses and $319,440 for the technical support.  Thus, although AHM Investment, pursuant to the License and Services Agreement,

purchased the software licenses and immediately received the perpetual right to use the software, under the Payment Plan Agreement the System Price would be paid in four (4) equal installments: $261,360 within thirty (30) days of the Payment Plan Agreement being executed; $261,360 on November 1, 2006; $261,360 on May 1, 2007; and $261,360 on November 1, 2007 (each, an "Installment Payment," and collectively, the "Installment Payments").

9.      The Payment Plan Agreement also provided, among other things, that the Installment Payments did not include any applicable taxes and AHM Investment remained responsible for such amounts.  The Payment Plan Agreement further provided that Oracle Credit was permitted to assign its rights to the Installment Payments to a third party, but if Oracle Credit did so, the  assignee would not assume any of Oracle Credit's obligations to AHM Investment and any claims under the Payment Plan Agreement by AHM Investment would be solely against Oracle Credit, and not the assignee.

10.      On May 12, 2006, Oracle Credit notified AHM Investment in writing (the "Assignment Letter") that Oracle Credit assigned its right to the Installment Payments and applicable taxes to National City Vendor Finance, LLC.  The Assignment Letter added sales taxes in the amounts of $76,393.36 and $13,775.85 to the System Price, thereby proportionately increasing the Installment Payments to $283,902.30.  Some time after being assigned Oracle Credit's right to the Installment Payments, National City Vendor Finance, LLC assigned its right to the Installment Payments to National City.  In accordance with the Payment Plan Agreement, National City received the right to the Installment Payments, but did not assume, and is not liable for, any of Oracle Credit's obligations under the Payment Plan Agreement.

11.      Prior to the Petition Date, AHM Investment made the first three (3) Installment Payments required under the Payment Plan Agreement.  The final Installment

DB02:6583597.7                                                                                          066585.1001

Payment of $283,902.30 was due on November 1, 2007 (the "Final Installment Payment").

However, as a result of the commencement of these chapter 11 cases, the Final Installment

Payment was not made by the Debtors.

   12. Subsequent to the Petition Date, in accordance with the perpetual nature of

the software licenses, the Debtors' human resources department made limited use of the software

programs. Beginning around July, 2008, the Debtors completed the process of winding down

their human resources department, and accordingly, discontinued use of the perpetual software

licenses purchased prior to the Petition Date.

   13. On January 25, 2008,[3] National City filed the Motion, seeking an

administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code for the

$283,902.30 Final Installment Payment and immediate payment of such claim.

## OBJECTION

   14. The Final Installment Payment is not entitled to administrative expense

claim under section 503(b) of the Bankruptcy Code because, among other things, (i) the Payment

Plan Agreement is a prepetition agreement; (ii) the fact that the Final Installment Payment came

due postpetition does not constitute a postpetition transaction; and (iii) the Debtors' estates

received no additional rights or value from National City that did not exist as of the Petition

Date.

   15. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice

and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual,

necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1)(A). Priority

statutes, such as section 503 of the Bankruptcy Code, are to be strictly construed to keep

---

[3] The Motion was originally scheduled for the February 28, 2008 omnibus hearing but has been adjourned on
several occasions by agreement of the parties.

administrative expenses at a minimum so as to preserve the estate for the benefit of the creditors. See In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001); see also In re Enron, 279 B.R. 695, 704 (Bankr. S.D.N.Y. 2002) (recognizing that courts strictly construe the terms "actual" and "necessary" to minimize "administrative expense claims thereby preserving the estate to benefit all creditors"). Furthermore, the claimant, and not the debtor, bears the burden of proof in requesting payment under section 503(b) of the Bankruptcy Code, and the standard of proof is a preponderance of the evidence. See In re Goody's Family Clothing, Inc., 392 B.R. 604, 613 (Bankr. D. Del. 2008); In re Valley Media, Inc., 279 B.R. 105,140-141 (Bankr. D. Del. 2002).

16.    "[T]he language of § 503(b), read as a whole, suggests a quid pro quo pursuant to which the estate accrues a debt in exchange for some consideration necessary to the operation or rehabilitation of the estate." Pa. Dep't of Envtl. Res. v. Tri-State Clinical Labs., Inc., 178 F.3d 685, 689-690 (3d Cir. 1999) (holding that fines imposed for postpetition criminal activity are not administrative expenses). Courts have developed a two-part test to determine whether claims should be entitled to administrative priority which requires (1) the claim to arise out of a postpetition transaction between the creditor and debtor-in-possession, and (2) the consideration supporting the claimant's right to payment to be both supplied and beneficial to the postpetition estate and operation of the postpetition business. See In re Unidigital, Inc., 262 B.R. at 288; see also In re Valley Media, Inc., 279 B.R. at 140-141; In re N.Y. Trap Rock Corp., 137 B.R. 568, 572 (Bankr. S.D.N.Y. 1992) (same). Indeed, "[i]t is the substantial contribution to the estate, not the activity . . . that incurs the obligation that must occur in the chapter 11 case." In re Valley Media, Inc., 279 B.R. at 141. A claimant seeking entitlement to administrative expense priority carries the "heavy burden of demonstrating that the costs and fees for which it seeks

payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999).

17.    With respect to the first prong of the test, allowance of an administrative expense claim is only appropriate where "inducement of the creditor's performance *by the debtor-in-possession* [(as opposed to the pre-petition debtor entity)] is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor." In re Jartran, Inc., 732 F.2d 584, 587 (7th Cir. 1984) (emphasis in original).  Such inducement is an essential factor because "administrative priority is granted to post-petition expenses so that third parties will be moved to provide the goods and services necessary for a successful reorganization." Id. at 588; see also In re Valley Media, Inc., 279 B.R. at 141 (stating that "[t]he principal purpose of 11 U.S.C. § 503 is to induce entities to do business with a debtor after bankruptcy by insuring that those entities receive payment for services rendered").

18.    National City bears the burden of demonstrating by a preponderance of the evidence that the Final Installment Payment was incurred as a result of a postpetition transaction between National City and the Debtors (as debtors-in-possession) and that National City provided the Debtors' estates beneficial consideration in exchange for its claimed administrative expense.  It cannot meet this burden.  To deny National City's requested administrative expense claim for the Final Installment Payment, this Court need not go further than the first prong of the test set forth above because National City does not even allege, much less prove, that a postpetition transaction gave rise to the Final Installment Payment.  Instead, the Payment Plan Agreement, executed by the Debtors and Oracle Credit prior to the Petition Date, forms the sole basis for National City's requested administrative expense claim.

19.     Under the Payment Plan Agreement, the Final Installment Payment was due postpetition on November 1, 2007. The simple fact that an installment payment, for an otherwise prepetition transaction, comes due postpetition does not alone justify granting such installment payment administrative priority status under the Bankruptcy Code. In re Valley Media, Inc., 279 B.R. at 141 ("A debt is not entitled to administrative priority merely because the right to payment arises post-petition."); see also In re Mid-Am. Waste Sys., Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999) (same). Therefore, the fact that the Final Installment Payment was due after the Petition Date cannot alone satisfy National City's burden to demonstrate the occurrence of a postpetition transaction. Rather, National City must demonstrate that postpetition it was induced by the Debtors to provide value to their estates that was necessary to a successful liquidation.

20.     National City has not provided postpetition rights to the Debtors' estates that the Debtors did not already have as of the Petition Date. When the Debtors, on April 10, 2006, entered into the License and Services Agreement with Oracle USA, the Debtors purchased and received, along with two (2) years of technical support, the software licenses and the perpetual right to use the software. Simply put, the Debtors maintain the same rights as of the filing of this Objection with respect to the software as they did when they purchased such rights on April 10, 2006, over one year prior to the commencement of the Debtors' chapter 11 cases, irrespective of the fact that the Final Installment Payment was due after the Petition Date.

21.     National City, likewise, has not provided additional value to these estates, yet it seeks administrative priority for the Final Installment Payment. National City was merely assigned the right to collect such payment, and assumed no liability or obligations under the Payment Plan Agreement as a result of that assignment. Therefore, National City cannot

8

demonstrate, as it must, that the Final Installment Payment arose from a postpetition transaction in which National City provided the Debtors' estates with additional value that the estates did not have as of the Petition Date.  Accordingly, National City cannot satisfy its burden to demonstrate the occurrence of a postpetition transaction, and thus the Final Installment Payment is not entitled to administrative expense priority status.

22.    Granting National City an administrative expense claim for the Final Installment Payment would frustrate the principal purpose of section 503 of the Bankruptcy Code, which is "to induce entities to do business with a debtor after bankruptcy by insuring that those entities receive payment for services rendered." In re Valley Media, Inc., 279 B.R. at 141. In In re Valley Media, Inc., on facts analogous to those here, Judge Walsh ruled on the issue of whether a postpetition sale of certain inventory pursuant to prepetition distribution agreements would justify an administrative expense claim.  279 B.R. at 140-41.  Prior to the petition date, the debtor entered into certain distribution agreements with the claimants, pursuant to which the claimants granted the debtor the right to sell the inventory.  After the petition date, and pursuant to the right it received under the various distribution agreements prepetition, the debtor sought bankruptcy court approval to sell the inventory.  The claimants objected to the sale and argued, among other things, that the permission to sell the inventory was a postpetition contribution of value to the debtor's estate and therefore the sale entitled them to an administrative priority claim.

23.    Judge Walsh stated that while the debtor did make postpetition use of certain permissions granted in the prepetition agreement, a "post-petition act does not alone" justify an administrative expense.  Id. at 141.  Rather, there must be a contribution of value to the debtor's estate from a post-petition transaction:

9

> Here the alleged contribution to the estate is the permission to sell. This permission was granted pre-petition along with the delivery of the [inventory]. That permission survived the commencement of the chapter 11 case and became a property right of the estate. There is no post-petition transaction with the [d]ebtor in this case. There is no post-petition service being provided by the [claimants]. And finally, there is no additional value that accrues to the estate under the license other than what already existed as of the commencement of the case. . . .The debtor in possession has not sought any additional performance under the [agreements] and the [claimants] have not delivered additional inventory that would give rise to obligations that did not exist as of the petition date.

Id. Because the debtor was granted the right to sell the inventory prepetition, there was no contribution of value to the debtor's estate from a postpetition transaction, and therefore, Judge Walsh denied the administrative expense claim. Id.; see also In re Jartran, Inc., 732 F.2d at 587-91 (finding that a claim did not arise from a postpetition transaction with the debtor-in-possession because the liability for the costs of advertisements was irrevocably incurred prepetition and there was no postpetition inducement by the debtor).

24.     National City, like the claimants in In re Valley Media, Inc., has not provided additional postpetition value to the Debtors' estates as the Debtors have not received any rights with respect to the software that did not already exist as of the Petition Date. The Debtors possessed perpetual licenses to use the software as of, and after, the Petition Date. The Debtors have used the software on a limited basis since the Petition Date. However, the right to use the software after the Petition Date, like the permission to sell the inventory in In re Valley Media, Inc., is not a postpetition contribution of value to the Debtors' estates that warrants elevating an otherwise prepetition claim to administrative expense priority status. Therefore, the Final Installment Payment should not be entitled to administrative priority.

25.     In sum, National City does not allege, let alone provide evidence of, any facts demonstrating that the Final Installment Payment arises from a postpetition transaction and

that the Debtors were provided with rights or value that they did not have as of the Petition Date. Ironically, National City, through the filing of a proof of claim, acknowledged previously that the payment is not entitled to administrative priority.[4]  Accordingly, for the reasons set forth herein, National City's request for the allowance of an administrative expense claim must be denied because it has failed to satisfy its burden under section 503 of the Bankruptcy Code.

*Remainder of Page Intentionally Left Blank*

---

[4]  See Proof of Claim No. 7936, filed January 9, 2008 and attached hereto as Exhibit A (the "Proof of Claim"). Nothing set forth herein shall prejudice or affect the rights of the Debtors, including their successor or successors in interest, to object to the Proof of Claim on any and all bases.

DB02:6583597.7

066585.1001

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court sustain the

Objection and enter an order (i) denying National City's request for an administrative expense

claim and (ii) granting the Debtors such other and further relief as this Court deems just and

proper.

Dated:  Wilmington, Delaware
       November 5, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

                                          

# **EXHIBIT A**

Proof of Claim

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT | District of Delaware | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor:<br>American Home Mortgage Investment Corp. | Case Number:<br>07-11048 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>National City Commercial Capital Company, LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|

Name and address where notices should be sent:

Lisa M. Moore, Vice President
995 Dalton Avenue, Cincinnati, OH 45203

**Court Claim Number:** _____
*(If known)*

Telephone number:
(513) 455-9603

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)          0000007936

Name and address where payment should be sent (if different from above):

[barcode]

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

| 1. Amount of Claim as of Date Case Filed: $ 283,902.30 | 5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount. |
|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

Specify the priority of the claim.

2. **Basis for Claim:** Goods Sold
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: 4000

   3a. Debtor may have scheduled account as: Oracle Credit
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate ☐ Motor Vehicle ☐ Other
Describe:

Value of Property:$_____ Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date:<br>01/07/2008 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Lisa M. Moore, Vice President     *Lisa M. Moore* | FOR COURT USE ONLY<br><br>FILED / RECEIVED |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

EPIQ BANKRUPTCY SOLUTIONS, LLC

12/10/2007

## LEGAL CALCULATION WORKSHEET

| Account Name | American Home Mortgage Investment Corp. |
|---|---|

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Customer Number | 989703 | | | | | | |
| Lease Number | 72714000 | | | | | | |
| Remaining Payments | | 1 | @ | $ | 282,267.59 | | |
| | | | @ | | | | |
| | | | @ | $ | - | $ | 282,267.59 |
| Interest | | 1 | @ | $ | 1,634.71 | $ | 1,634.71 |
| | | | @ | | | | |
| | | | @ | $ | - | | |
| Short Pays / Pro Rated Rent | | | @ | $ | - | | |
| | | | @ | $ | - | $ | - |
| Sales Tax | | | @ | $ | - | | |
| (if short, pro rated) | | | @ | $ | - | | |
| | | | @ | $ | - | | |
| Late Fees | | | @ | | | | |
| (invoiced but not paid) | | | @ | | | $ | - |
| | | | @ | $ | - | | |
| | | | @ | $ | - | | |
| | | | @ | | | | |
| NSF / Process Fees | | | @ | | | $ | - |
| (Invoiced but not paid) | | | @ | $ | - | | |
| | | | @ | $ | - | | |
| Risk Fees-Insurance | | | @ | | | $ | - |
| (Invoiced but not paid) | | | @ | $ | - | $ | - |
| | | | @ | $ | - | | |
| | | | | $ | - | | |
| Personal Property Tax | | | @ | | | $ | - |
| (Invoiced-not paid) | | | @ | $ | - | | |
| | | | @ | $ | - | | |
| Purchase Option | | | | | | | |
| Sales Tax on Purchase Option | | | | | | | |
| Sub Total | | | | | | $ | 283,902.30 |
| | | | | | | | |
| Security Deposit | | | | | | | |
| Equipment Sale less repo expenses | | | | | | | |
| Payments Made After Default Declared | | | | | | | |
| TOTAL | | | | | | $ | 283,902.30 |

Prepared by:  JSN

ORACLE
FINANCING

## ORACLE CORPORATION MASTER ASSIGNMENT EXHIBIT

Assignor hereby assigns to Assignee, National City Vendor Finance, LLC, subject to the terms and conditions set forth in the Global Financing Program Agreement ("Agreement") between Oracle Credit Corporation ("OCC") and Assignee dated May 19, 2003 all of OCC's rights and interest to all Assigned Payments and other rights as defined under the Agreement

Assigned Funded Payments & Assigned Non-Funded Future Payments are shown on Funding Report.

In accordance with Section 9.4 of the Agreement, Assignor and Assignee agree that scanned images of an executed assignment (or executed faxes or photocopies of an executed copy of this document) used as confirmed original documents upon delivery to OCC. This document may be executed in counterparts, which, when taken together constitute a fully executed document.

| Client Name | Contract Dated | Parts Assigned | Order Dated | Assignor | Discount % | Funded Reserve or Non-Recourse | Assignment Effective Date | Funding Date | Tax Responsibility | Notification Contact | Billing Contact |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cele Orsi, Inc. | PS No. 13081, dated 22-APR-05 to PPA No. 4729 . | All . | Ora Doc #100004 -rev 1 of 1 Dated 04/17/05 | Oracle Credit Corp | 7.70% | Non-Recourse . | 5/12/2005 . | 5/1/2005 . | Reseller . | Ted Direscher ' | Ted Direscher ' |
| Acantum Home Mortgage Investment Corp. | PS No. 17005, dated 11-APR-05, with Amd. No. 1, to PPA No. 4723 | All . | CD 217d005 issued Dated 04/07/05 | Oracle Credit Corp. | 6.50% | Non-Recourse . | 5/12/2005 . | 5/25/2005 . | Oracle USA, Inc. . | Alan Hore . | Sabrina Jones . |

Oracle Credit Corporation

By:

Name: J.L. NELSON

Title: SENIOR DIRECTOR

Date: 5/12/2005

Prepared By: Mary Diaz

National City Vendor Finance, LLC

By: TRISH DiBERNARDI

Name: Trish DiBernardi

Title: V.P.

Date: 5-17-06

If you have any questions, please contact:

**PLEASE NOTE THE FOLLOWING ABBREVIATIONS.**

GLA = General License Agreement
INV = Invoice
MPA = Authorized Payment Agreement
NLOF = Network License Order Form
NSO = Network Server Option
NUA = Network User License Addendum
OC = Oracle Corporation
OCC = Oracle Credit Corporation
OF = Order Document
OF = Order Form
PO = Purchase Order
PPA = Payment Plan Agreement
PPS = Payment Plan Supplement
PS = Payment Schedule
PUA = Project Oracle Network License Order Form
RNLOF = Restated Network License Order Form
SPA = System Payment Agreement
TPPS = Third Party Payment Schedule



500 Oracle Parkway        phone: 650 506 2020
MS LGN-1                  fax: 650 633 0804
Redwood Shores,
CA 94065

## NOTIFICATION OF ASSIGNMENT LETTER

May 12, 2006

Alan Horn
American Home Mortgage Investment Corp.
538 Broadhollow Road
Melville, NY 11747

Dear Mr. Horn:

**This letter serves as Notification of Assignment of payments and rights under subject Contract to National City Vendor Finance, LLC ("Assignee").**

**Contract:** Payment Schedule No. 17965 , dated 11-APR-06, with Amd. No. 1, to Payment Plan Agreement # 4728.

**Assigned Payments:** Your Payment Amounts, and applicable Taxes added pursuant to the Contract, have been assigned. Sales Tax in the amount of $76,393.36, per Supplier Invoice(s) # 2054347, 2054348, and Sales Tax in the amount of $13,775.85 representing 8.63% Sales Tax on your future support, have been added to your System Price. Your payments have been increased proportionately to reflect the Sales Tax amount financed. Please contact Oracle Corp directly with any questions regarding Taxes at 1-888-803-7414.

**Assigned Rights:** Rights to enforce remedies under the Contract have been assigned, giving Assignee the independent right to exercise its rights under the Contract.

**Payment Remittance Information:** All Assigned Payments should be remitted to the address below. [1] You will be invoiced shortly by Assignee.

**Wire Remittance To:**    National City Vendor Finance, LLC    **Mail check remittance to:**    **National City Vendor Finance, LLC**
                                                                                         P.O. Box 692228
                                                                                         Cincinnati, OH 45269-2228

Cleveland, OH
ABA: 041000124
Account #: 0159-138

**Rights:** Except as specified under the Contract, Customer's rights and remedies against Supplier under the software license and services agreement ("Agreement") shall not be effected. Assignee assumes none of Supplier's obligations under the Agreement. Any questions surrounding the software or services should continue to be directed to your sales representative.

**Instructions:**

- Notify your Accounts Payable department by forwarding a copy of this letter.
- Fax specific billing instructions and any additional invoicing requirements (e.g. reference i.e. P.O. #) to the Assignee at 630-955-5722; Attn: Trish DiBennardi.
- Contact the Assignee with any questions regarding invoicing of the Contract at 630-955-5708.

Please contact me if you have any questions regarding this Assignment at 650-633-8582.

Sincerely,

Lizzy Ortiz
Contracts Specialist

[1] Assigned Payments that are remitted to a party other than Assignee may not be forwarded or may not be forwarded in a timely manner to Assignee; Customer shall be solely responsible for all resulting late fees."

Notif of Assignmt_US 05May00i

Amendment No. 1
to Payment Schedule No.17965 dated 11 Apr 06 ("PS")
to the Payment Plan Agreement No. 4728 dated 11 Apr 06 ("PPA")
between American Home Mortgage Investment Corp. ("Customer") and Oracle Credit Corporation
("OCC")

This Amendment hereby amends the PS No. 17965 to the above PPA, in the following respects:

In the PPA:

1.   Section 2, Second Sentence
     After "provide Customer", add "written".

2.   Section 3, First Paragraph, Subsection (ii)
     After "perform any", add "material".

3.   Section 3, Second Paragraph, Second Sentence
     After "amounts due above, all", add "reasonable".

4.   Section 4, Last Sentence
     Delete the last sentence in its entirety.

5.   Section 5, Last Sentence
     Add the following as a new last sentence: "Neither party shall use the name of the other in
     publicity releases or advertising without securing the prior written consent of the other party."

In the PS:

1.   Section C, First Sentence
     Delete the first sentence and replace with: "Each party agrees that the other party or its
     Assignee may treat executed faxes or photocopies delivered as original documents; however,
     each party agrees to deliver original signed documents if requested."

All other provisions of the PS and PPA remain unchanged and in full force and effect.

The Effective Date of this Amendment No. 1 is 11 Apr 06 .

CUSTOMER (authorized signature):          ORACLE CREDIT CORPORATION
AMERICAN HOME MORTGAGE
INVESTMENT CORP.

By: _____                      By: _____

Name: Alan Horn                           Name: NANCY COQUICCO
                                                SR. CONTRACTS MANAGER
Title: EVP                                Title: _____

                                          AHMI PS Amendment_US

## American Home Mortgage Investment Corp.

### Tax Calculation Worksheet To PS # 17965 dated 11-APR-06, with Amd. No. 1, To PPA # 4728

Sales Tax in the amount of $76,393.36, per Supplier invoice(s) # 2054347, 2054348 and Sales Tax in the amount of $13,775.85 representing 8.63% Sales Tax on your future Support have been added to your System Price. This addition of taxes is provided for in the Payment Schedule, Section A, Second Sentence.

| INVOICE INFORMATION | | | | |
|---|---|---|---|---|
| Ship To: | Malville, NY | Applicable Sales Tax: | | 8.625% |

| Invoice # | Pre-Tax | | Sales Tax | | Total Amount |
|---|---|---|---|---|---|
| 2054347 | 726,000.00 | | 62,617.50 | | 788,617.50 |
| 2054348 | 159,720.00 | . | 13,775.86 | | 173,495.86 |
| Total | 885,720.00 | . | 76,393.36 | | 962,113.36 |

| ORDERING DOCUMENT | Pretax Fees | Sales Tax | Aftertax Fees |
|---|---|---|---|
| Software | 726,000.00 | 62,617.50 | 788,617.50 |
| Product Support Fees | 159,720.00 | 13,775.85 | 173,495.85 |
| Software Update Fees | .00 | .00 | .00 |
| Education | .00 | .00 | .00 |
| Consulting | .00 | .00 | .00 |
| Others | .00 | .00 | .00 |
| Total Current Fees | 885,720.00 | 76,393.35 | 962,113.35 |
| Future Support Fees | 50,820.00 | 4,383.23 | 55,203.22 |
| Future Software Update Fees | 108,900.00 | 9,392.63 | 118,292.63 |
| Total Future Support Fees | 159,720.00 | 13,775.86 | 173,495.86 |
| Total Fees | 1,045,440.00 | 90,169.21 | 1,135,609.21 |
| | | | |
| | | Overall Tax Rate: | 8.625% |

The Overall Tax Rate is calculated by taking the total amount of taxes divided by the Total Pretax Fees.

**Accordingly the payment(s) due under the Contract inclusive of taxes financed are:**

| Due Dates | Payments per Payment Schedule | Overall Tax Rate | Applied Sales Tax | Invoiced Payment Including Taxes |
|---|---|---|---|---|
| 01-JUN-06 | 261,360.00 | 8.625% | 22,542.30 | 283,902.30 |
| 01-NOV-06 | 261,360.00 | 8.625% | 22,542.30 | 283,902.30 |
| 01-MAY-07 | 261,360.00 | 8.625% | 22,542.30 | 283,902.30 |
| 01-NOV-07 | 261,360.00 | 8.625% | 22,542.30 | 283,902.30 |
| Total | 1,045,440.00 | | 90,169.20 | 1,135,609.20 |

# ORACLE | Credit Corporation

Page 1 of 1

**ASSIGNEE'S ORIGINAL**

## Payment Schedule

No. 17965

| | |
|---|---|
| Customer: | American Home Mortgage Investment Corp. |
| Address: | 538 Broadhollow Road |
| | Melville  NY  11747 |
| Contact: | |
| Phone: | |
| Order: | OD 2179505 Issued dated 07 Apr 06 |
| Agreement: | OLSA V 122005 M dated |
| PPA No.: | 4728 dated 11 Apr 06 |

**Executed by Customer (authorized signature):**

By:

Name: Alan Horn

Title: Executive Vice President

**Executed by Oracle Credit Corporation:**

By:

Name: NANCY COQUICO
SR. CONTRACTS MANAGER

Title:

Payment Schedule Effective Date: 11 Apr 06

| System: | | Payment Schedule: | |
|---|---|---|---|
| | | Payment Amount | Due Date |
| Software: | $726,000.00 | 4 @ $261,360 | Net 30, 01-NOV-06, 01-MAY-07, 01-NOV-07 |
| Support: | $319,440.00 ,2 Year(s) | | |
| Consulting: | $0.00 | | |
| Education: | $0.00 | | |
| Other: | $0.00 | | |
| System Price: | $1,045,440.00 | | |

**Transaction Specific Terms:**
For this Contract, the rate used in PPA Section 3, Paragraph 2, Subsection (I) shall be the lesser of the rate in the Contract or 3%. Future increases in support fees, if any, are not included in the System Price or Payment Amounts. Such increases shall be due separately to the applicable Supplier from Customer.

**Optional ☐   (If this box is checked):**
The Customer has ordered the System from an alliance member/agent of Oracle Corporation or one of its affiliates, whose name and address are specified below. Customer shall provide OCC with a copy of such Order. The System shall be directly licensed or provided by the Supplier specified in the applicable Order and Agreement, each of which shall be considered a separate contract. Customer has entered into the Order and Agreement based upon its own judgment, and expressly disclaims any reliance upon statements made by OCC about the System, if any. Customer's rights with respect to the System are as set forth in the applicable Order and Agreement and Customer shall have no right to make any claims under such Order and Agreement against OCC or its Assignee. Neither Supplier nor any alliance member/agent is authorized to waive or alter any term or condition of this Contract. If within ten days of the Payment Schedule Effective Date, OCC is provided with Customer Invoices for the System specifying applicable Taxes, then OCC may add the applicable Taxes in accordance with this Contract.

| | |
|---|---|
| Alliance Member/Agent: | |
| Address: | |
| Contact: | Phone: |

This Payment Schedule is entered into by Customer and Oracle Credit Corporation ("OCC") for the acquisition of the System from Oracle Corporation, an affiliate of Oracle Corporation, an alliance member/agent of Oracle Corporation or any other party providing any portion of the System ("Supplier"). This Payment Schedule incorporates by reference the terms and conditions of the above-referenced Payment Plan Agreement ("PPA") to create a separate Contract ("Contract").

**A. PAYMENTS:** This Contract shall replace Customer's payment obligation under the Order and Agreement to Supplier, to the extent of the System Price listed above, upon Customer's delivery of a fully executed Order, Agreement, PPA, Payment Schedule, and any other documentation required by OCC, and execution of the Contract by OCC. Customer agrees that OCC may add the applicable Taxes due on the System Price to each Payment Amount based on the applicable tax rate invoiced by Supplier at shipment. OCC may adjust subsequent Payment Amounts to reflect any change or correction in Taxes due. If the System Price includes support fees for a support period that begins after the first support period, future support fees and the then relevant Taxes will be paid to Supplier as invoiced in the applicable support period from the Payment Amounts received in that period. The balance of each Payment Amount, unless otherwise

stated, includes a proportional amount of the remaining components of the System Price excluding such future support fees, if any.

**B. SYSTEM:** Software shall be accepted, and the services shall be deemed ordered pursuant to the terms of the Agreement. Customer agrees that any software acquired from Supplier to replace any part of the System shall be subject to the terms of the Contract. Any claims related to the performance of any component of the System shall be made pursuant to the Order and Agreement. Neither OCC nor Assignee shall be responsible to Customer for any claim or liability pertaining to any performance, actions, warranties or statements of Supplier.

**C. ADMINISTRATIVE:** Customer agrees that OCC or its Assignee may treat executed faxes or photocopies delivered to OCC as original documents; however, Customer agrees to deliver original signed documents if requested. Customer agrees that OCC may insert the appropriate administrative information to complete this form. OCC will provide a copy of the final Contract upon request.

PS_US 07Jan03I

# ORACLE | Credit Corporation

## Payment Plan Agreement

| | |
|---|---|
| Customer: | American Home Mortgage Investment Corp. |
| Address: | 538 Broadhollow Road |
| | Melville   NY   11747 |
| Phone: | |
| PPA No.: | 4728 |
| Effective Date: | 11 Apr 06 |

**Executed by Customer (authorized signature):**

By:

Name: Alan Horn

Title: Executive Vice President

**Executed by Oracle Credit Corporation:**

By:

Name: NANCY COQUICO

Title: SR. CONTRACTS MANAGER

The Payment Plan Agreement ("PPA") is entered into by Customer and Oracle Credit Corporation ("OCC") to provide for the payment of the System Price specified in a Payment Schedule on an installment basis. The System (as defined below) is being acquired from Oracle Corporation, an alliance member/agent of Oracle Corporation or any other party providing any portion of the System ("Supplier"). Each Payment Schedule shall specify the Software and other products and services, which items together with any upgrade, transfer, substitution, or replacement thereof, shall comprise the "System." Each Payment Schedule incorporates the terms and conditions of the PPA to form a "Contract," and the System specified therein shall be subject to the terms and conditions of such Contract. The System shall be licensed or provided to Customer directly by Supplier pursuant to the terms of the Order and Agreement specified in the Contract. Except as provided under the Contract, Customer's rights and remedies under the Order and Agreement, including Supplier's warranty and refund provisions, shall not be affected.

**1. PAYMENT SCHEDULE:** Customer agrees to pay OCC the Payment Amounts in accordance with the Contract, with each payment due and payable on the applicable Due Date. If full payment of each Payment Amount and other amounts payable is not received by OCC within 10 days of each Due Date, Customer agrees to pay to OCC interest on the overdue amount at the rate equal to the lesser of one and one-half percent (1.5%) per month, or the maximum amount allowed by law. Unless stated otherwise, Payment Amounts exclude any applicable sales, use, property or any other tax allocable to the System, Agreement or Contract ("Taxes"). Any amounts or any Taxes payable under the Agreement which are not added to the Payment Amounts due under the Contract are due and payable by Customer, and Customer shall remain liable for any filing obligations. Customer's obligation to remit Payment Amounts to OCC or its assignee in accordance with the Contract is absolute, unconditional, noncancellable, independent, and shall not be subject to any abatement, set-off, claim, counterclaim, adjustment, reduction, or defense for any reason, including but not limited to, any termination of any Agreement, or performance of the System.

**2. ASSIGNMENT:** Customer hereby consents to OCC's assignment of all or a portion of its rights and interests in and to the Contract to third-parties ("Assignee"). OCC shall provide Customer notice thereof. Customer and OCC agree that Assignee shall not, because of such assignment, assume any of OCC's or Supplier's obligations to Customer. Customer shall not assert against Assignee any claim, defense, counterclaim or setoff that Customer may have against OCC or Supplier. Customer waives all rights to make any claim against Assignee for any loss or damage of the System or breach of any warranty, express or implied, as to any matter whatsoever, including but not limited to the System and service performance, functionality, features, merchantability or fitness for a particular purpose, or any indirect, incidental or consequential damages or loss of business. Customer shall pay Assignee all amounts due and payable under the Contract, but shall pursue any claims under any Agreement solely against Supplier. Except when a Default occurs, neither OCC nor Assignee will interfere with Customer's quiet enjoyment or use of the System in accordance with the Agreement's terms and conditions.

**3. DEFAULT; REMEDIES:** Any of the following shall constitute a Default under the Contract: (i) Customer fails to pay when due any sums due

under any Contract; (ii) Customer breaches any representation or fails to perform any obligation in any Contract; (iii) Customer materially breaches or terminates the license relating to Software; (iv) Customer defaults under a material agreement with Assignee; or (v) Customer becomes insolvent or makes an assignment for the benefit of creditors, or a trustee or receiver is appointed for Customer or for a substantial part of its assets, or bankruptcy, reorganization or insolvency proceedings shall be instituted by or against Customer.

In the event of a Default that is not cured within thirty (30) days of its occurrence, OCC may: (i) require all outstanding Payment Amounts and other sums due and scheduled to become due (discounted at the lesser of the rate in the Contract or five percent (5%) per annum simple interest) to become immediately due and payable by Customer; (ii) pursue any rights provided under the Agreement, as well as terminate all of Customer's rights to use the System and related services, and Customer agrees to cease all use of the System; and (iii)pursue any other rights or remedies available at law or in equity. In the event OCC institutes any action for the enforcement of the collection of Payment Amounts, there shall be due from Customer, in addition to the amounts due above, all costs and expenses of such action, including reasonable attorneys' fees. No failure or delay on the part of OCC to exercise any right or remedy hereunder shall operate as a waiver thereof, or as a waiver of any subsequent breach. All remedies are cumulative and not exclusive. Customer acknowledges that upon a default under the Contract, no party shall license, lease, transfer or use any Software in mitigation of any damages resulting from Customer's Default.

**4. CUSTOMER'S REPRESENTATIONS AND COVENANTS:** Customer represents that, throughout the term of the Contract, the Contract has been duly authorized and constitutes a legal, valid, binding and enforceable agreement of Customer. Any transfer or assignment of Customer's rights or obligations in the System, or under the Agreement or the Contract shall require OCC's and Assignee's prior written consent. A transfer shall include a change in majority ownership of Customer. Customer agrees to promptly execute any ancillary documents and take further actions as OCC or Assignee may reasonably request, including, but not limited to, assignment notifications, acceptance certificates, certificates of authorization, registrations, and filings. Customer agrees to provide copies of Customer's balance sheet, income statement, and other financial reports as OCC or Assignee may reasonably request.

**5. MISCELLANEOUS:** The Contract shall constitute the entire agreement between Customer and OCC regarding the subject matter herein and shall supersede any inconsistent terms set forth in the Order, Agreement or any related agreements, Customer purchase orders and all prior oral and written understandings. If any provision of the Contract is invalid, such invalidity shall not affect the enforceability of the remaining terms of the Contract. Customer's obligations under the Contract shall commence on the Effective Date specified therein. Except for payment terms specified in the Contract, Customer remains responsible for all the obligations under each Agreement. Each Payment Schedule, and any changes to a Contract or any related document, shall take effect when executed by OCC. The Contract shall be governed by the laws of the State of California and shall be deemed executed in Redwood Shores, CA as of the Contract Effective Date.

PPA_US 19Feb99I

 **ORDERING DOCUMENT**

Your Name   American Home Mortgage Investment Corp
Your Location   538 Broadhollow Road
MELVILLE
NY 11747

---

**ORACLE CONTRACT INFORMATION**

Agreement   Oracle License and Services Agreement

Agreement Name   Oracle License and Services Agreement v122005M

This ordering document incorporates by reference the terms of the agreement specified above ("agreement").

---

**A. PROGRAMS AND SERVICES**

You have ordered the program licenses and 12 months of technical support services described below. Listed below is a summary of net fees due under the ordering document. These fees are exclusive of any applicable shipping charges or applicable taxes.

All fees on this Ordering Document are in US Dollars

| Product Description / License Type | Quantity | List Fee | Discount % | Net Fee |
|---|---|---|---|---|
| Advanced Benefits - Person Perpetual | 7,000 | | | |
| License | | 280,000.00 | 60.00 | 112,000.00 |
| Software Update License & Support | | 61,600.00 | 60.00 | 24,640.00 |
| Diagnostics Pack - Named User Plus Perpetual | 25 | | | |
| License | | 1,500.00 | 60.00 | 600.00 |
| Software Update License & Support | | 330.00 | 60.00 | 132.00 |
| Diagnostics Pack - Processor Perpetual | 4 | | | |
| License | | 12,000.00 | 60.00 | 4,800.00 |
| Software Update License & Support | | 2,640.00 | 60.00 | 1,056.00 |
| Discoverer Desktop Edition - Named User Plus Perpetual | 2 | | | |
| License | | 2,000.00 | 60.00 | 800.00 |
| Software Update License & Support | | 440.00 | 60.00 | 176.00 |
| HR Intelligence - Person Perpetual | 7,000 | | | |
| License | | 175,000.00 | 60.00 | 70,000.00 |
| Software Update License & Support | | 38,500.00 | 60.00 | 15,400.00 |
| Human Resources - Person Perpetual | 7,000 | | | |
| License | | 350,000.00 | 60.00 | 140,000.00 |
| Software Update License & Support | | 77,000.00 | 60.00 | 30,800.00 |
| Internet Application Server Enterprise Edition - Named User Plus Perpetual | 10 | | | |
| License | | 6,000.00 | 60.00 | 2,400.00 |
| Software Update License & Support | | 1,320.00 | 60.00 | 528.00 |
| Internet Application Server Enterprise Edition - Processor Perpetual | 4 | | | |
| License | | 120,000.00 | 60.00 | 48,000.00 |
| Software Update License & Support | | 26,400.00 | 60.00 | 10,560.00 |
| Oracle Database Enterprise Edition - Named User Plus Perpetual | 25 | | | |
| License | | 20,000.00 | 60.00 | 8,000.00 |
| Software Update License & Support | | 4,400.00 | 60.00 | 1,760.00 |
| Oracle Database Enterprise Edition - Processor Perpetual | 4 | | | |
| License | | 160,000.00 | 60.00 | 64,000.00 |
| Software Update License & Support | | 35,200.00 | 60.00 | 14,080.00 |

| Product Description / License Type | Quantity | List Fee | Discount % | Net Fee |
|---|---|---|---|---|
| Real Application Clusters – Processor Perpetual | 4 | | | |
| License | | 80,000.00 | 60.00 | 32,000.00 |
| Software Update License & Support | | 17,600.00 | 60.00 | 7,040.00 |
| Self-Service Human Resources – Person Perpetual | 7,000 | | | |
| License | | 245,000.00 | 60.00 | 98,000.00 |
| Software Update License & Support | | 53,900.00 | 60.00 | 21,560.00 |
| Tuning Pack – Named User Plus Perpetual | 25 | | | |
| License | | 1,500.00 | 60.00 | 600.00 |
| Software Update License & Support | | 330.00 | 60.00 | 132.00 |
| Tuning Pack – Processor Perpetual | 4 | | | |
| License | | 12,000.00 | 60.00 | 4,800.00 |
| Software Update License & Support | | 2,640.00 | 60.00 | 1,056.00 |
| iRecruitment – Person Perpetual | 7,000 | | | |
| License | | 350,000.00 | 60.00 | 140,000.00 |
| Software Update License & Support | | 77,000.00 | 60.00 | 30,800.00 |

| | List Fee | Discount % | Net Fee |
|---|---|---|---|
| Oracle Programs License Fees | 1,815,000.00 | 60.00 | 726,000.00 |
| Oracle Programs Support Fees | 399,300.00 | 60.00 | 159,720.00 |
| Net Fees | | | 885,720.00 |
| Total Fees | | | 885,720.00 |

**B.    General Terms**

**1    Commencement Date**

All program licenses and the period of performance for all services are effective upon shipment of tangible media or upon the effective date of this ordering document if shipment of tangible media is not required.

**2    Territory**

The program licenses and services described in Section A are for use in the U.S.

**3    Fees, Invoicing, and Payment Obligation**

a.    All fees due under this ordering document shall be non-cancellable and the sums paid nonrefundable, except as provided in the agreement.

b. License and services fees are invoiced as of the commencement date.  Service fees are invoiced in advance of the service performance; specifically, technical support fees are invoiced annually in advance.

c. In addition to the fees listed in Section A, Oracle will invoice you for any applicable shipping charges or applicable taxes.

d. In entering into payment obligations under this ordering document, you agree and acknowledge that you have not relied on the future availability of any program or updates.

**4    Delivery and Installation**

a. Oracle has made available to you for electronic download at the electronic delivery web site located at the following Internet URL: http://edelivery.oracle.com the programs listed in section A.  Through the Internet URL, you can access and electronically download to your location the current production release as of the effective date below of the software and related program documentation for each program listed in section A.  Provided that you have continuously maintained technical support for the programs listed in section A, you may continue to download the software and related program documentation for the programs listed in section A.  Please be advised that not all programs are available on all hardware/operating system combinations.  For current program availability please check the electronic delivery web site specified above.  You acknowledge that Oracle is under no further delivery obligation under this ordering document, electronic download or otherwise.

b. You shall be responsible for installation of the software.

**5    Source Code**

Oracle may deliver source code as part of its standard delivery for particular programs; all source code delivered by Oracle is subject to the terms of the agreement, ordering document and program documentation.

**6    Segmentation**

The program licenses provided in this ordering document are offered separately from any other proposal for consulting services you may receive or have received from Oracle and do not require you to purchase Oracle consulting services.

**7    Order of Precedence**

In the event of any inconsistencies between the agreement and this ordering document, this ordering document shall take precedence.

**8    Customer Reference**

Neither party shall release information with respect to the terms of this Agreement or any amendment or related document or use the name of the other in publicity releases or advertising without securing the prior written consent of the other.

**C.    Future Purchases**

1  **Price Hold**

a. For a period of two years from the effective date of this ordering document, you may order the programs (and first year of Software License Update & Support for the programs) at the appropriate license and support fees specified on the attached Price Hold Exhibit, provided (i) such programs are available in production release when ordered; and (ii) you have continuously maintained Software Update License & Support for the program licenses listed in section A.

b. Each order placed pursuant to this section must be at least $25,000.00 in net license and technical support fees.  Your purchase on any such order of programs and/or license types that are not listed on the attached Price Hold Exhibit will count towards this minimum purchase amount.

c. Each order placed pursuant to this section will specify Oracle's delivery obligation.  If the order specifies delivery, the programs will be delivered via electronic download.  If electronic download is not possible or otherwise agreed to the parties, tangible media will be delivered and re-shipped (if requested by customer) if not available via electronic download.  Whenever the delivery of tangible media is required, you are charged for media and the shipping terms are FCA:  Shipping Point, Pre-paid and Add.

d. If you spend $1,000,000 in net license fees and not software update license & support fees within twelve months of the effective date of this ordering document and in accordance with this section, the period of this price hold section shall be extended to three years from the effective date of this ordering document.

2  **Additional Copies of Programs**

Provided that you have continuously maintained technical support for the programs listed in section A, you may order media packs at the standard media fee in effect at the time your order is placed provided the programs listed in section A for use on the computer/operating system combination requested by you are available in a production release.

D.  **Other**

1  **Technical Support**

Notwithstanding anything to the contrary in the agreement, technical support acquired with your order may be renewed annually and, if you renew technical support for the same number of licenses for the same programs, for the first two renewal years the fee for technical support will not increase over the prior year's fee.

Provided that you have continuously maintained technical support for the programs acquired under this ordering document, for subsequent renewal years after the end of the two year technical support cap, the percentage increase in the technical support fees over the prior year's fee for such programs will be consistent with the percentage increase over prior year's fees that Oracle generally charges its other similarly situated supported customers who have continuously maintained technical support for such programs.

2  **Limited Use Programs**

The following programs are limited use programs:  Oracle Database Enterprise Edition-Named User Plus, Oracle Database Enterprise Edition-Processor, Real Application Clusters-Named User Plus, Diagnostics Pack-Named User Plus, Diagnostics Pack-Processor, Tuning Pack-Named User Plus, Tuning Pack-Processor, Internet Application Server Enterprise Edition-Named User Plus,  Internet Application Server Enterprise Edition-Processor, Discoverer Desktop Edition-Named User Plus.  These programs may only be used with your applications defined as:  Oracle Applications.

3  **Technical Support Policies**

Oracle's current Technical Support Policies, which are subject to change, are attached hereto and incorporated by reference.

4  **Source Code**

Oracle Corporation places its source code to its programs in escrow with a 3rd party escrow company.  Such agreement is private and confidential and is not available for release to you.  The only condition of release of such source code is in the event that Oracle ceases to be in the business of supporting the programs.

5  **Customer Definition**

For purposes of this ordering document, you shall be defined as the company listed at the head of the ordering document and your majority owned subsidiaries.  You warrant that you have the authority to bind your majority owned subsidiaries to the terms of this ordering document and the agreement and further warrant that you shall be responsible for a breach of such terms by your majority owned subsidiaries.

This quote is valid through April 15, 2006 and shall become binding upon execution by you and acceptance by Oracle.

| American Home Mortgage Investment Corp | | ORACLE USA, INC. | |
|---|---|---|---|
| Signature | | Signature | |
| Name | Alan Horn | Name | |
| Title | EVP | Title | |
| Signature Date | 4/10/06 | Signature Date | |
| Effective Date | (to be completed by Oracle) | | |

**Omissions**

| Licensee | AMERICAN HOME MORTGAGE INVESTMENT CORP. | | 72714000 | |
|---|---|---|---|---|
| Vendor: | ORACLE | | | |
| Date: | 5/19/2006 | | | |
| | NO OMISSIONS | | | |
| | | | | |
| | | | | |

Discount 4 semi-annual pmts @ 6.95% in advance

2 pmts of $283,902.30 ($261,360.00 + financed tax), 1 pmt $110,406.45 & 1 pmt $283,902.30

| | | |
|---|---|---|
| PV @ 6/1/06 | 920,691.77 | |
| Interest | (1,064.44) | 6 days (5/26 - 6/1) |
| PV @ Funding | 919,627.33 | (on 5/26/06) |

The Lessee Number has been entered in the KMV financial spreads.(Initial) _____ *Linda Baker*

Verification by Underwriter of no MAC    (Initial) _____n/a_____ *Linda Baker*
(Approval dated 5/10/06 -   no verification required)