# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------- x
In re:                                  :   Chapter 11
                                        :
AMERICAN HOME MORTGAGE                   :   Case No.  07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,¹ :
                                        :   Jointly Administered
                    Debtors.            :
                                        :   Ref. Docket. Nos. 5468 and 5559
-------------------------------------------------------------- x
```

## DEBTORS' OBJECTION TO MOTION OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND MERSCORP, INC. FOR ENTRY OF AN ORDER (I) COMPELLING ASSUMPTION OR REJECTION OF DEBTORS' EXECUTORY CONTRACT, OR MODIFYING THE AUTOMATIC STAY; AND (II) COMPELLING PAYMENT OF ADMINISTRATIVE EXPENSES AND THE SUPPLEMENTAL MOTION THERETO

The above captioned debtors and debtors-in-possession (collectively, the "Debtors") submit this objection (the "Objection") to the Motion for Entry of Order (I) Compelling Assumption or Rejection of Debtors' Executory Contract or Modifying the Automatic Stay; and (II) Compelling Payment of Administrative Expense [Docket No. 5468] (the "Initial Motion") and the Supplement to the Motion for Entry of Order (I) Compelling Assumption or Rejection of Debtors' Executory Contract or Modifying the Automatic Stay; and (II) Compelling Payment of Administrative Expense [Docket No. 5559] (the "Supplemental Motion," and together with the Initial Motion, the "Motion") filed by Mortgage Electronic

---

¹ The Debtors (as defined below) in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303) ("AHM Holdings"); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580) (collectively, "AHM" or the "Debtors"). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

Registration Systems, Inc. and MERSCORP, Inc. (together, "MERS"). In support of this Objection, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT[2]

1.      The indemnification claim for the Legal Fees and Expenses is nothing more than a general unsecured claim. It is well-settled that a contractual claim for indemnification arising from a prepetition agreement is a prepetition claim; not an administrative expense claim under section 503(b) of the Bankruptcy Code as MERS asserts. The basis for the payment of the Legal Fees and Expenses is the contractual indemnification provisions contained in the MERS Agreement, which was executed in January 2000, over seven (7) years prior to the Petition Date. As a result, MERS's right to payment of the Legal Fees and Expenses arose prepetition and thus, MERS has not, and cannot, demonstrate that the Legal Fees and Expenses are entitled to administrative expense priority status. Accordingly, the Debtors respectfully request that the Court deny the Legal Fees and Expenses administrative expense priority status under section 503(b) of the Bankruptcy Code.

## BACKGROUND

### A.      General Background

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] All capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them below.

3.     The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.     On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors.  No trustee or examiner has been appointed.

5.     Prior to the Petition Date, a large component of the Debtors' business was the servicing of mortgage loans (the "Servicing Business").  Commencing on October 2, 2007, this Court held a hearing to consider the Debtors' motion to sell the Servicing Business.  By Order dated October 30, 2007 [Docket No. 1711] (the "Sale Order"), the Court approved and authorized the sale of the Debtors' Servicing Business (the "Servicing Sale") to AH Mortgage Acquisition Co., Inc., an affiliate of W.L. Ross & Co., LLC (the "Purchaser") pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").  The legal or final closing of the Servicing Sale occurred on April 11, 2008.

**B.     Relevant Background**

6.     As set forth in the Motion, MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper documentation.  MERS acts as the nominal mortgagee of record (or beneficiary under a deed of trust) on behalf of its members.  Each mortgage loan for which MERS serves as a mortgagee (or beneficiary) is registered, and MERS electronically tracks changes in servicing rights or beneficial ownership.

7.     Prior to the Petition Date, on January 21, 2000, the Debtors became members of MERS by filing a membership application and paying a membership fee.  According

to the Motion, the Debtors' membership in MERS is governed by the MERS Fee Schedule, the

Terms and Conditions of Membership, the Rules of Membership and the Procedures Manual

(collectively, the "MERS Agreement").  Pursuant to the MERS Agreement:

> MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgment, and any other costs, fees and expenses ("Indemnified Payments") that the Member Party  may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, or agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

> The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given buy the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS System (the "Indemnification Provision").

8.    On August 18, 2008, MERS filed the Initial Motion, seeking an order (i)

compelling the Debtors to assume or reject the MERS Agreement pursuant to section 365 of the

Bankruptcy Code or, in the alternative modifying the automatic stay pursuant to section 362 of

the Bankruptcy Code (the "Rejection and Stay Relief Issue"); and (ii) granting MERS an

administrative expense claim under section 503(b) of the Bankruptcy Code in the amount of

$82,300.40 on account of certain transactions costs (the "Administrative Claim Issue"), including

reimbursement of legal fees and expenses (the "Legal Fees and Expenses") as a result of the Indemnification Provision in the prepetition MERS Agreement.

9.      On August 29, 2008, MERS filed the Supplemental Motion and increased the requested administrative claim to $85,374.74. As a basis for this increase, MERS asserted that, subsequent to the filing of the Initial Motion, it became aware of $3,074.34 in additional Legal Fees and Expenses. With the filing of the Supplemental Motion, the Legal Fees and Expenses accounted for $65,809.89 of MERS's requested $85,374.74 administrative claim.[3]

## OBJECTION

10.     Simply put, the claim for the Legal Fees and Expenses is a prepetition general unsecured claim, not an administrative claim pursuant to section 503(b) of the Bankruptcy Code, because it is based solely on the Indemnification Provision in the MERS Agreement, which is a prepetition contract.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate . . ." 11 U.S.C. § 503(b)(1)(A). Priority statutes, such as section 503 of the Bankruptcy Code, are to be strictly construed to keep administrative expenses at a minimum so as to preserve the estate for the benefit of the creditors. See In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001); see also In re Enron, 279 B.R. 695, 704 (Bankr. S.D.N.Y. 2002) (recognizing that courts strictly construe the terms

---

[3] The Motion was originally scheduled for the September 15, 2008 omnibus hearing but has been adjourned on several occasions by agreement of the parties. Since the filing of the Motion, the Debtors have paid MERS, among other things, the annual membership fee of $5,500. As a result, the remaining amount with regard to the Administrative Claim Issue is $65,809.89 for the Legal Fees and Expenses. The Debtors and MERS have agreed to go forward only with the Administrative Claim Issue at the November 25, 2008 hearing. The parties have further agreed that the Rejection and Stay Relief Issue shall be adjourned until a later date so that discussions between the parties can continue on this issue. Accordingly, the Debtors expressly reserve any and all rights and defenses with respect to the Rejection and Stay Relief Issue and reserve the right to file a supplemental objection to the Motion should the parties proceed to a hearing before the Court on that issue. Further, nothing in this Objection shall be deemed to waive any rights or defenses that the Debtors have or may have as to the Rejection and Stay Relief Issue.

"actual" and "necessary" to minimize "administrative expense claims thereby preserving the estate to benefit all creditors"). Furthermore, the claimant, and not the debtor, bears the burden of proof in requesting payment under section 503(b) of the Bankruptcy Code, and the standard of proof is a preponderance of the evidence. See In re Goody's Family Clothing, Inc., 392 B.R. 604, 613 (Bankr. D. Del. 2008); In re Valley Media, Inc., 279 B.R. 105,140-141 (Bankr. D. Del. 2002).

12.    Courts have developed a two-part test to determine whether claims should be entitled to administrative priority which requires (1) the claim to arise out of a postpetition transaction between the creditor and debtor-in-possession, and (2) the consideration supporting the claimant's right to payment to be both supplied and beneficial to the postpetition estate and operation of the postpetition business. See In re Unidigital, Inc., 262 B.R. at 288; see also In re Valley Media, Inc., 279 B.R. at 140-141; In re N.Y. Trap Rock Corp., 137 B.R. 568, 572 (Bankr. S.D.N.Y. 1992) (same). Indeed, "[i]t is the substantial contribution to the estate, not the activity . . . that incurs the obligation that must occur in the chapter 11 case." In re Valley Media, Inc., 279 B.R. at 141. A claimant seeking entitlement to administrative expense priority carries the "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999).

13.    MERS has not, and cannot, meet its burden of demonstrating by a preponderance of the evidence that the Legal Fees and Expenses are entitled to administrative expense priority status. Under the MERS Agreement and the Indemnification Provision therein, MERS members, (like the Debtors), agreed to indemnify MERS in certain instances, including,

6

DB02:7444729.4                                                                                          066585.1001

for example, for any Indemnified Payments that do not result from a MERS Indemnified Claim <u>and</u> are incurred by MERS with respect to a transaction on the MERS System initiated by a MERS member.  Relying on the Indemnification Provision, MERS alleges, in conclusory fashion, that it is entitled to an administrative expense claim for the Legal Fees and Expenses.  However, that allegation fails to recognize that the claim for indemnification of the Legal Fees and Expenses arose *prepetition* when the MERS Agreement was executed.

14.    The Court of Appeals for the Third Circuit in <u>Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)</u> held that when determining when a claim arose, the court must determine the point at which the creditor first had a right to payment.  744 F.2d 332, 336 (3d Cir. 1984).  When parties contractually agree to indemnification in the event of a certain occurrence, the Court of Appeals stated that:

> [t]here exists a right to payment, albeit contingent, upon the signing of the agreement.  Such a surety relationship is the classic case of a contingent right to payment under the [Bankruptcy] Code—the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event.

<u>Id.</u> at 336-37.

15.    Because the right to payment with respect to a contractual indemnification claim arises when the relevant contract is executed, contractual indemnification claims based on prepetition contracts have routinely been treated by bankruptcy courts in this District, and others, as prepetition claims.  <u>See</u>, <u>e.g.</u>, <u>In re ANC Rental Corp.</u>, 341 B.R. 178, 182 (Bankr. D. Del. 2006) (denying an administrative expense claim because the indemnification rights arose when the contract was executed prepetition); <u>In re Pinnacle Brands, Inc.</u>, 259 B.R. 46, 50-51 (Bankr. D. Del 2001) (holding that an indemnification claim based on a prepetition contract was nothing more than a prepetition claim); <u>In re G-I Holdings, Inc.</u>, 308 B.R. 196, 209 (Bankr. D. N. J. 2004) (finding that a contractual claim for indemnification arising from a prepetition agreement

7

is a general unsecured claim and not entitled to administrative priority under section 503(b) of

the Bankruptcy Code); In re Pa. Truck Lines, Inc., 189 B.R. 331, 334 (Bankr. E.D. Pa. 1995)

(deeming a contractual indemnification claim, arising from a prepetition agreement, a prepetition

claim, and therefore denying it administrative expense priority status).

16.    Here, MERS's requested administrative claim for the Legal Fees and

Expenses is based solely on the Indemnification Provision in the MERS Agreement.  It is

without question that the MERS Agreement is anything but a prepetition contract.  Applying the

unambiguous and unequivocal holding of Frenville to the issue here, MERS's claim for the

Legal Fees and Expenses arose when the MERS Agreement was executed, which was seven (7)

years prior to the Petition Date.  Accordingly, the claim for the Legal Fees and Expenses is

nothing more than a prepetition general unsecured claim.

17.    Furthermore, although not raised by MERS in the Motion, the Debtors

submit that, should MERS seek administrative priority for the Legal Fees and Expenses as a

"substantial contribution" claim under section 503(b)(3)(D), MERS could not meet the high

standard required for substantial contribution.  See Lebron v. Mechem Financial Inc. (In re

Lebron), 27 F.3d 937, 943-44 (3d Cir. 1994) ("[S]ervices engaged by creditors . . . are presumed

to be incurred for the benefit of the engaging party and are reimbursable if, but only if, the

services 'directly and materially contributed to the reorganization.").  MERS's incurrence of

$65,809.89 in Legal Fees and Expenses as a result of the defense of certain lawsuits in

connection with mortgage loans once serviced by the Debtors falls well short of directly and

materially contributing to the Debtors' successful liquidation through these large and complex

chapter 11 cases.  Therefore, MERS could not meet the high standard, as it would be required, to

succeed on a substantial contribution claim.

DB02:7444729.4                                                                                                              066585.1001

18.     Accordingly, for the reasons set forth above, the Debtors respectfully request that the Court deny the Motion and MERS's request that the Legal Fees and Expenses be granted administrative expense priority status under section 503 of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court sustain the Objection and enter an order (i) denying MERS's request for an administrative expense claim for the Legal Fees and Expenses and (ii) granting the Debtors such other and further relief as this Court deems just and proper.

Dated:  Wilmington, Delaware  
       November 14, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)  
Sean M. Beach (No. 4070)  
Matthew B. Lunn (No. 4119)  
Margaret Whiteman Greecher (No. 4652)  
Robert F. Poppiti, Jr. (No. 5052)  
The Brandywine Building  
1000 West Street, 17th Floor  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession

DB02:7444729.4

066585.1001