## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------------ x | Chapter 11 | |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : | |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| ------------------------------------------------------------------ x | **Ref. Docket No.  6223** | |

### DEBTORS' OBJECTION TO MOTION OF AMERICAN LIEN FUND, L.P. PURSUANT TO 11 U.S.C. § 362(d) TO ANNUL AUTOMATIC STAY AS TO TAX SALE AND TO LIFT STAY AS TO COUNTERCLAIMS [DOCKET NO. 6223]

The debtors and debtors in possession in the above captioned cases (collectively,

the "Debtors") hereby file this objection (the "Objection") with respect to the *Motion of*

*American Lien Fund, L.P.* ("ALF") *Pursuant to 11 U.S.C. § 362(d) to Annul Automatic Stay as*

*to Tax Sale and to Lift Stay as to Counterclaims* [D.I. 6223] (the "Motion")  seeking (i) an

annulment of the automatic stay with respect to a purported tax sale related to that certain

property commonly referred to as 138 Little Street, City of Atlanta, Fulton County, Georgia (the

"Property") which allegedly occurred on or about September 4, 2007; and (ii) relief from the

automatic stay to assert counterclaims against the Debtors in the State Court Action (as defined

below).  In support of their Objection, the Debtors respectfully submit as follows:

---

[1]  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

## PRELIMINARY STATEMENT[2]

The Debtors oppose the Purported Tax Sale relief sought by ALF because such sale was void *ab initio* as a matter of both bankruptcy and applicable Georgia law. Further, the Debtors oppose any relief from the automatic stay, retroactive or otherwise, which would allow ALF, who is not a scheduled creditor of the Debtors and who has not filed a claim in these cases, to assert any claims or causes of action against the Debtors or their estates.

## RELEVANT BACKGROUND

1.    The Property was purchased in 2006 with the proceeds of two loans issued by the Debtors: Loan No. 1488361 in the amount of $240,000 (the "Senior Loan") secured by a first lien mortgage (the "Senior Mortgage") and Loan No. 1488605 in the amount of $80,000 (the "Junior Loan," and together with the Senior Loan, the "Loans") secured by a second-lien mortgage (the "Junior Mortgage," and together with the Senior Mortgage, the "Mortgages"). In May of 2007, the Debtors sold the Senior Loan to a third-party (the "Senior Loan Holder"), but AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("Old AHMSI") continued to service the Senior Loan. The Debtors continue to own the Junior Loan.

2.    In June of 2007, Old AHMSI took possession of the Property (the "Foreclosure") pursuant to a Deed Under Power of Sale (the "POS Deed"), and Old AHMSI took title on June 5, 2007. The POS Deed was recorded in Fulton County at Deed Book 45225, Page 478 on June 20, 2007. The Debtors held the Property as "real estate owned" or "REO" property for the benefit of the Senior Loan Holder. In connection with the sale of the Debtors' mortgage servicing business, non-Debtor AH Mortgage Acquisition Co., Inc. n/k/a American Home

---

[2]  Capitalized terms used in the Preliminary Statement, but not defined therein, shall have the meaning otherwise ascribed to them in the Objection.

DB02:7537261.1                                                                                              066585.1001

Mortgage Servicing, Inc. ("New AHMSI") succeeded Old AHMSI as title-holder of the Property.

3.    According to the Motion, on June 24, 2007, the Fulton County Sheriff's office levied on the Property to conduct a tax sale for unpaid taxes in the approximate amount of $2,000, due to Fulton County for the 2002 tax period (the "Unpaid Taxes"). The Motion further asserts that notices of the proposed sale were sent to the Debtor-lender[3] and MERS, as nominee for the Debtor-lender under the Mortgages, on July 20, 2007 and August 24, 2007. On September 4, 2007, approximately one month after the Petition Date, the Property was purportedly sold at a tax sale (the "Purported Tax Sale") at which ALF allegedly purchased the Property. Upon information and belief, the Debtors have not received any funds from the Purported Tax Sale and it is not clear who received such proceeds.

4.    As a result of the Purported Tax Sale and the resultant uncertainty as to the title-holder of the Property, the insurer under the title insurance policy issued in connection with the Loans retained counsel for New AHMSI. Counsel commenced an action in the Superior Court of Fulton County, Georgia (the "State Court Action") on behalf of New AHMSI seeking a declaration that New AHMSI holds unencumbered, fee simple title to the Property.

5.    ALF has brought the instant Motion (i) for an annulment of the automatic stay with respect to the Purported Tax Sale, and (ii) relief from the automatic stay to pursue counterclaims in the state court action.

---

[3] ALF does not include any proof of mailing with the Motion. Therefore, it is unclear which AHM entity, if any, received notice of the Purported Tax Sale: the lender listed in the deeds securing the Mortgages, AHM Mortgage or Old AHMSI, who was the record title holder of the Property at all times relevant to the Motion. Therefore, it is unclear whether the record title holder of the Property received actual notice of the levy.

**OBJECTION**

6.      The Debtors object to (i) any relief which annuls the automatic stay with respect to the Purported Tax Sale, and (ii) any relief from the automatic stay that would allow ALF to assert claims against the Debtors.

**SUPPORTING AUTHORITY**

**I      THE STAY SHOULD NOT BE ANNULLED**

7.      Section 362(a) grants a broad stay of actions against the debtors and their estates, including the commencement or continuation of judicial and administrative actions against a debtor or any act to obtain possession of the property of the estate.  11 U.S.C. 362(a). The Third Circuit has held that actions taken in violation of the automatic stay are void *ab initio*. *See, e.g., Fleet Consumer Discount Co. v. Graves*, 33 F.3d 42, 247 (3d Cir. 1994); *Maritime Electric Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1207 (3d Cir. 1991).

8.      At the time of the Purported Tax Sale, Old AHMSI was the record title-holder of the Property.  Through the Motion, ALF concedes that, prior to the filing of the instant Motion, no party sought or obtained relief from the automatic stay with respect to the Purported Tax Sale.  Accordingly, the Purported Tax Sale and any alleged transfer to ALF of title to the Property in connection therewith was void.  *See, e.g. Ward v. Bowest Corp.*, 837 F.2d 124, 126 (3d Cir. 1988) (foreclosure sale conducted in violation of the stay is "void and without effect").

9.      Notwithstanding the foregoing, the Third Circuit has recognized a narrow exception to the voidness doctrine whereby a party may revive an action that is otherwise void because of a violation of the automatic stay through obtaining an annulment of the stay. *See, e.g. In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994).  While the Court may annul the stay, it may only do so if the party seeking an annulment satisfies the requirements of section 362(d) of the

4

Bankruptcy Code. *Id.* at 751-52. Section 362(d) allows relief from the stay upon one of two conditions: (i) "for cause"; and (ii) if (A) a debtor does not have equity in the property, and (B) such property is not necessary for an effective reorganization. 11 U.S.C. 362(d). ALF cannot meet either test.

10.    With respect to the test under section 362(d)(2), as of the date of the Purported Tax Sale, Old AHMSI had significant equity in the property vis-à-vis the Unpaid Taxes. The value of the Unpaid Taxes was approximately $2,000. At the Foreclosure, Old AHMSI acquired the Property through credit-bid for approximately $160,000, and the Property was "sold" at the Purported Tax Sale for approximately $140,000. Accordingly, under either valuation, the value of the Property was well in excess of the amount of the Unpaid Taxes. Accordingly, Old AHMSI has significant equity in the property, and the exception set forth in section 362(d)(2) can not be met.

11.    ALF also cannot demonstrate that "cause" exists for relief from the automatic stay. ALF's basis for establishing cause is, ostensibly, that ALF purchased the property at the Purported Tax Sale and the stay must be annulled to give effect to that transfer. This argument fails because, in addition to the nullity of the Purported Tax Sale due to the imposition of the stay, the sale was void under Georgia law. As set forth in the complaint filed in the State Court Action, the tax deed at the Purported Tax Sale failed to name Old AHMSI— the title holder pursuant to the POS Deed—as the grantor of the tax deed. The failure to name record title holder as grantor in a deed of sale renders such sale void. *See Harpagon Company LLC v. Gelfond*, 279 Ga. 59, 60-61 (2005) (holding that sale pursuant to defective tax deed which, among other things, failed to name the record title holder, was void); *Canoeside*

*Properties LLC v. Livsey*, 277 Ga. 425, 429 (2003) (holding that the sale of a property in the name of a party other than the record holder was void).

12.    Moreover, ALF's contention that the Purported Tax Sale was valid pursuant to Ga. Code. Ann. § 9-13-168, which protects innocent purchasers at tax sale from defects in the sale process, also falls short.  The issue here is not a defect in the sale process but, instead, a defect in the tax deed itself.  Cases applying Ga. Code Ann. § 9-13-168 are clear that the safe-harbor granted to purchasers at tax sales cannot be used to validate a void sale.  *See, e.g. Milam v. Adams*, 216 Ga. 440, 442 (1960) ("the 'the innocent purchaser shall be bound only to see that the officer has competent authority to sell,' means that the purchaser must determine for himself the validity of the judgment and the execution thereon, the levy made by the sheriff and the sale of deed of the property[.]"); *Brady v. Smotherma*, 180 S.E.2d 862, 864 (Ga. App. 1935) ("Ordinarily the *bona fide* purchaser at a sheriff's sale under a valid execution take just what title the defendant in execution has, no more and no less; but, as stated, a judicial sale which is declared void passes no title to the purchaser."); *see also Methvin v. Bexly*, 18 Ga 551 (1855) (applying equitable consideration and holding that sheriff in *fieri facias* action could not convey title to property that was not held by the defendant in the *fieri facias* action).  Due to the failure to name Old AHMSI as grantor in the tax deed at the Purported Tax Sale, any title that passed was void, and ALF cannot claim the protection of the safe-harbor.

13.    Without a colorable claim to the Property under Georgia law, ALF cannot demonstrate that "cause" exists for this Court to retroactively lift the Stay.

14.    ALF also urges this Court to apply a "balancing of the equities test" to determine whether an annulment of the stay should be granted.  ALF cites the Third Circuit's opinion in *In re Meyers*, 491 F.3d 120 (3d Cir. 2007), which discussed three factors courts

6

commonly apply in balancing the equities in when an annulment of the stay is requested: (1) whether the creditor was aware of the filing or encouraged violation of the stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be prejudiced. 491 F.3d at 129. However, the Bankruptcy Court has wide latitude in balancing the equities. *Id.* at 130.

15.     The Debtors submit that, after considering the facts of this case and balancing the equities of the situation, the Court should not annul the stay. At the outset, the Debtors note that, unlike *Myers*, this is not a case "where just about everyone appears to have behaved badly," *Myers*, 491 F.3d at 122, and the Debtors are not asking the Court to award any "abuse of the bankruptcy system." *Id.* at 129. In the absence of any bad act or abuse by the Debtors, this Court should not annul the automatic stay with respect to the Purported Tax Sale. *Cf Id.* at 128 ("Every court of appeals to consider the issue has held that whether the filing was in bad faith is relevant to whether the bankruptcy court should annul the automatic stay.").

16.     With respect to the factors set forth in *Myers*, the Debtors submit that on balance, the equities do not support an annulment of the stay. First, the Debtors do not contest ALF's assertion that it did not know that Old AHMSI was a debtor in a bankruptcy proceeding. However, ALFs error was not ignorance of the fact that the owner of the Property was in bankruptcy. Instead, it appears that ALF was entirely ignorant of the fact that Old AHMSI was the actual owner of the Property, notwithstanding the fact that the POS Deed had been recorded over two months prior to the Purported Tax Sale. Had ALF ascertained that Old AHMSI was the record title holder, as it could have done and was required to do before purportedly selling the property, ALF would likely have also discovered that the owner of the Property was in

bankruptcy.  Accordingly, ALF's claim of being an "innocent purchaser" is negated by ALF's failure to perform the basic due-diligence regarding the ownership of the Property.

17.     Second, ALF has not alleged any affirmative actions of Old AHMSI prior to the Purported Tax Sale that were "inequitable, unreasonable or dishonest." *Myers*, 491 F.3d at 129.  Instead, ALF alleges that Old AHMSI's failure to take certain actions was unreasonable. Namely, ALF argues that Old AHMSI through its attorney, knew of the Unpaid Taxes, and Old AHMSI did nothing to satisfy the Unpaid Taxes.  This alone does not rise to the level of inequitable, unreasonable or dishonest behavior that Courts have considered in weighing this factor in favor of creditors.  *See Myers*, 491 F.3d at 122-125 (debtor violated state court injunction and fraudulently transferred assets); *In re Snyder*, No. 07-2780, 2008 U.S. App. Lexis 19926 (3d Cir. Aug 1, 2008) (serial filings by debtor and her family members to frustrate foreclosure).  Moreover, while Old AHMSI may have known of the existence of the Unpaid Taxes, it is unclear whether Old AHMSI, as record title-holder of the Property, ever received actual notice of the Purported Tax Sale on account of the Unpaid Taxes, *see note 5, supra*, and an opportunity to prevent the Purported Tax Sale.  Finally, the Debtors took no affirmative actions after the Purported Tax Sale that would serve to ratify the violation of the stay.

18.     Finally, it is Old AHMSI, and not ALF who will be prejudiced if the stay is annulled.  While the Debtors do not believe that any valid claims can be brought against the estates in relation to the aforementioned issues, it is unclear what claims parties may attempt to assert against the estates.  Retroactive relief from the automatic stay could prejudice defenses and damages claims that the Debtors and/or New AHMSI have against ALF or other parties. Accordingly, ALF has failed to demonstrate how the Debtors engaged in any conduct that was inequitable, unreasonable or dishonest that would weigh in favor of annulling the stay.

DB02:7537261.1                                                                          066585.1001

## II    THE STAY SHOULD NOT BE LIFTED TO ALLOW
ALF TO ASSERT CLAIMS AGAINST THE ESTATE

19.    The Debtors also oppose any relief, to the extent requested, that ALF be allowed to assert any claims or causes of action against the Debtors or their estates.  The Debtors no longer have title to the Property, and are not a party to the State Court Action.  While the Motion does not set forth what claims or counter-claims that ALF wishes to assert against the Debtors, presumably these claims and/or counterclaims are associated with the State Court Action.  New AHMSI has succeeded the Debtors in title to the Property, and it is New AHMSI on whose behalf State Court Action was commenced.

### CONCLUSION

20.    In sum, the Debtors oppose ALF's request that this court retroactively bless a violation of the automatic stay in a manner potentially detrimental to the Debtors and their estates.  ALF has alleged no misdeed or bad faith by the Debtors related to the Purported Tax Sale.  Absent any showing that the Debtors acted inequitably, unreasonably or in bad faith in connection with the Purported Tax Sale and in light of the potential detriment to the Debtors, the Court should deny the stay relief requested in the Motion.

Dated:    Wilmington, Delaware
November 19, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

DB02:7537261.1                                                                                                    066585.1001