IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., a Delaware corporation, | ) | Case No. 07-11047 (CSS) |
| et al.[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Obj. Deadline: December 15, 2008 at 4:00 p.m. (ET)** |
| ------------------------------------------------------- | ) | **Hearing Date: December 22, 2008 at 11:00 a.m.** |
| AMERICAN HOME MORTGAGE CORP., | ) | **(ET)** |
| d/b/a AMERICAN BROKERS CONDUIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Adv. Proc. No. 08-51039** |
| ATTORNEYS' TITLE INSURANCE | ) | |
| FUND, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR AN
ORDER APPROVING SETTLEMENT AGREEMENT, ASSIGNMENT AND
LIMITED RELEASE  WITH ATTORNEYS' TITLE INSURANCE FUND, INC.**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and

debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by

this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules

of Bankruptcy Procedure ("Bankruptcy Rules") and sections 105(a), 363 and 506 of title 11 of

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), approving a

settlement of a claim against Attorneys' Title Insurance Fund, Inc.("ATIFI") (the "Settlement")

In support of the Motion, the Debtors respectfully represent as follows:

<u>JURISDICTION</u>

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the

relief requested herein are Bankruptcy Rule 9019(a) and sections 105(a), 363 and 506 of the

Bankruptcy Code.

<u>**GENERAL BACKGROUND**</u>

2.      On August 6, 2007 (the "Commencement Date"), each of the Debtors filed

with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Each

Debtor is continuing to operate its business and manage its properties as a debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only

and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware

appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").  No

trustee or examiner has been appointed.

## THE DEBTORS' BUSINESS[2]

5.    Prior to the filing of these bankruptcy cases, AHM's business primarily entailed the origination, servicing, and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans.  AHM also invested in securitized mortgage loans originated by others and originated and sold mortgage loans to institutional investors.  AHM offered an array of mortgage products and primarily made loans to borrowers with good credit profiles.  Most of its portfolio consisted of securitized adjustable-rate mortgage (ARM) loans of prime and alternate A quality.

6.    As of December 31, 2006, AHM held a leveraged portfolio of mortgage loans held for investment and mortgage-backed securities in the amount of approximately $15.6 billion.  As of December 31, 2006, AHM operated more than 550 loan production offices located in 47 states and the District of Columbia, and made loans throughout all 50 states and the District of Columbia.  Certain of the Debtors originated mortgages through a network of loan origination offices.  In addition, AHM originated loans obtained from mortgage brokers and purchased loans from correspondents.  AHM originated approximately $58.9 billion in aggregate principal amount of loans in 2006 and for the third quarter of 2006 was ranked as the nation's 10th largest residential mortgage lender, according to National Mortgage News.

7.    In the weeks prior to the Commencement Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans.  During this time, certain of the Debtors' warehouse lenders began

---

[2]    The facts set forth herein are derived from the Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief (the "First Day Declaration") [Docket No. 2], which is incorporated by reference.

to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

8.    The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. As a result, on August 3, 2007, the Debtors implemented a massive reduction in workforce, resulting in the termination of over 6,500 employees.

9.    Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

10.    On the Commencement Date, the Debtors filed a motion [Docket No. 11], seeking authority, *inter alia*, to sell substantially all assets relating to the Debtors' mortgage loan servicing business (the "Servicing Business"). After a week long trial that commenced on October 15, 2007, by Order dated October 30, 2007 [Docket No. 1711], the Court approved the sale of the Servicing Business to AH Mortgage Acquisition Co., Inc. pursuant to the terms of that certain Asset Purchase Agreement dated as of September 25, 2007 (as amended and supplemented, and including all schedules, exhibits, and attachments thereto).

## RELEVANT BACKGROUND

11.    ATIFI is a Florida corporation that provides closing protection letters and title insurance in connection with real estate settlements and transactions including the types of transactions in which Debtor American Home Mortgage Corp. d/b/a American Brokers Conduit ("ABC") engaged.

12.    ABC approved two mortgages in connection with the acquisition of real property known as 1200 Brickell Bay Drive, #1920, Miami, Florida 33130. The total principal amount of the two mortgages was $624,055.37.

13.    The settlement agent engaged to conduct the closing was Velazquez & Associates, P.A. ("Velazquez").

14.    Velazquez issued title commitments in connection with the settlement. In addition, ATIFI issued two Closing Protection Letters to and for the benefit of ABC in connection with the settlement.

15.    On the date of the scheduled closing, ABC wired the sum of $636,281.81 to Velasquez into its settlement agent/escrow account.

16.    Velazquez did not close the transaction.

17.    Velazquez did not return the funds to ABC.

18.    It is believed that Velazquez converted the funds received from ABC for its own use. Velazquez was subsequently placed into receivership in Florida and its assets are less than its liabilities.

19.    ABC commenced an adversary proceeding against ATIFI on or ab out June 20, 2008 seeking the recovery from ATIFI of the sums transferred to Velazquez due to the Closing Protection Letters.

20.    ATIFI filed an Answer to the Complaint asserting various defenses.

21.    ABC and ATIFI negotiated in an attempt to reach a consensual resolution of the matter.

22.    The Stipulation To Settle and Dismiss Complaint Against Attorneys' Title Insurance Fund, Inc. is the culmination of the negotiations between ABC and ATIFI (the

"Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached

hereto and made a part hereof as Exhibit "A."

       23.    A summary of the salient terms of the Settlement Agreement are as

follows:3

- ATIFI will wire the sum of $475,000.00 to AHM/ABC within ten (10) days of the Effective Date;

- AHM/ABC agrees that it will have no claims of any kind or nature relating to the real estate that was the subject of the underlying transaction known as 1200 Brickell Bay Drive, #1920, Miami, Florida 33130 (the "Property);

- The parties agree to dismiss the adversary proceeding;\

- AHM/ABC agrees to sign a Limited Release of ATIFI from any additional claims relating to Property;

- AHM/ABC agrees to assign any rights or claims relating to the underlying transaction against any third parties to ATIFI

### RELIEF REQUESTED

       24.    By this Motion, the Debtors respectfully request entry of an order

approving the Settlement Agreement and authorizing the Debtors to execute such documents

deemed necessary or required to effectuate the terms of the Settlement Agreement pursuant to

Bankruptcy Rule 9019 and sections 105(a), 363 and 506 of the Bankruptcy Code. In the

Debtors' judgment, the Settlement Agreement represents a fair and reasonable resolution of the

adversary proceeding given the uncertainty, cost and time associated with litigation.

---

3 Any discrepancy between this summary and the actual terms of the Settlement Agreement and related documents shall be resolved by the terms of the actual Settlement Agreement and the related documents and not this summary.

## BASIS FOR RELIEF REQUESTED

25.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a).  The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

26.    In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

27.    The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved.  The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and

delay necessarily attending it; and (4) the paramount interest of the creditors." <u>Meyers v. Martin</u>
(<u>In re Martin</u>), 91 F.3d 389, 393 (3d Cir. 1996); accord <u>Will v. Northwestern Univ. (In re</u>
<u>Nutraquest, Inc.</u>), 434 F.3d 639, 644 (3d Cir. 2006).

      28.    The decision to approve a settlement "is within the sound discretion of the
bankruptcy court." <u>In re World Health Alternatives, Inc.</u>, 344 B.R. at 296; <u>see also</u> <u>In re</u>
<u>Neshaminy Office Building Associates</u>, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in
<u>Meyers v. Martin (In re Martin)</u>, 91 F.3d 389. The bankruptcy court should not substitute its
judgment for that of the debtor. <u>See In re Neshaminy Office Building Associates</u>, 62 B.R. at
803. The court is not to decide the numerous questions of law or fact raised by litigation, but
rather should canvas the issues to see whether the settlement falls below the lowest point in the
range of reasonableness. <u>See In re W.T. Grant and Co.</u>, 699 F.2d 599, 608 (2d Cir. 1983), <u>cert</u>.
<u>denied</u>, 464 U.S. 22 (1983); <u>see also</u> <u>In re World Health Alternatives, Inc.</u>, 344 B.R. at 296
(stating that "the court does not have to be convinced that the settlement is the best possible
compromise. Rather, the court must conclude that the settlement is within the reasonable range
of litigation possibilities.") (internal citations and quotations omitted).

      29.    The Debtors respectfully request that the Court approve the Settlement
Agreement and authorize the Debtors to execute any documents necessary or required in
connection with the terms of the Settlement Agreement because the settlement lies well above
the lowest point in the range of reasonable potential litigation possibilities. In addition, each of
the applicable <u>Martin</u> factors weighs in favor of approving the Term Sheet. Accordingly, the
Bekins settlement should be approved pursuant to Bankruptcy Rule 9019.

A.    **The Probability Of Success In Litigation**

30.    Absent the settlement, the disputes between the Debtors and ATIFI would have to be litigated before the Court and such litigation would require significant time and expense. In addition, there is always uncertainty as to the result of any such litigation.

B.    **The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It**

31.    The settlement satisfies the second factor in Martin's four-factor test largely for the reasons set forth above in the discussion of the Debtors' probability of success in litigation. Litigation over the case would simply be wasteful, which would be expensive for the estate and inconvenient for the parties. .

C.    **The Paramount Interest Of Creditors**

32.    Entry into the settlement serves the paramount interest of creditors of the Debtors as the settlement represents a significant recovery by the Debtors without expensive litigation.. Therefore, the third factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the Settlement Agreement.

D.    **The Likely Difficulties In Collection**

33.    Finally, the fourth factor enunciated by the Third Circuit in Martin is not applicable under these circumstances.

E.    **Summary**

34.    The resolution and compromise of the disputes and issues between the Debtors and ATIFI (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay, inconvenience and uncertainty that would attend any litigation of the Parties' issues; and

(iv) advances the paramount interests of creditors. Therefore, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court

## NOTICE

35.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Credit Agreement dated August 30, 2004; (iii) Counsel to the Agent for the Debtors' Postpetition Lender; (iv) counsel to the Creditors' Committee; (v)counsel for Attorneys' Title Insurance, Inc., and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

36.     No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court issue and enter an Order, pursuant to Bankruptcy Rule 9019 and sections 105(a), 363 and 506 of the Bankruptcy Code, (i) approving the Settlement Agreement with Attorneys' Title Insurance Fund, Inc. and authorizing the Debtors to execute and delivery all documents necessary or required in connection with the terms of the Settlement Agreement and (ii) granting such other and further relief as may be just and proper.

Dated:  Wilmington, Delaware
        November 21, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Pauline K. Morgan (No. 3650)
Curtis J. Crowther (No. 3238)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession