```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                        .
IN RE:                                  .   Chapter 11
                                        .
American Home Mortgage, Inc.,           .
                                        .
         Debtor(s).                     .   Bankruptcy #07-11047 (CSS)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

                            Wilmington, DE
                          November 12, 2008
                              4:00 p.m.

                    TRANSCRIPT OF MOTIONS HEARING
             BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
                    UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For The Debtor(s):              Nathan D. Grow, Esq.
                                Young Conaway Stargatt
                                & Taylor, LLP
                                The Brandywine Bldg.
                                1000 West Street-17th Fl.
                                Wilmington, DE 19801

                                Sean M. Beach, Esq.
                                Young Conaway Stargatt
                                & Taylor, LLP
                                The Brandywine Bldg.
                                1000 West Street-17th Fl.
                                Wilmington, DE 19801

For The Official Committee:     David Carickhoff, Esq.
of Unsecured Creditors          Blank Rome, LLP
                                Chase Manhattan Centre
                                1201 Market street-Ste. 800
                                Wilmington, DE 19801
```

| | |
|---|---|
| For WLR Recovery Fund: | Dennis A. Meloro, Esq.<br>Greenberg Traurig, LLP<br>The Nemours Building<br>1007 North Orange Street<br>Wilmington, DE 19801 |
| For Bank of America, NA,:<br>As Agent | Laurie Selber-Silverstein, Esq.<br>Potter Anderson & Corroon, LLP<br>1313 N. Market St.-6th Fl.<br>Wilmington, DE 19801 |
| For LaSalle Bank, NA: | Regina A. Iorii, Esq.<br>Werb & Sullivan<br>300 Delaware Ave.-13th Fl.<br>Wilmington, DE 19899 |
| For The U.S. Trustee: | Joseph J. McMahon, Jr., Esq.<br>Office of the United States<br>Trustee<br>844 King St. - Ste. 2207<br>Lockbox 35<br>Wilmington, DE 19801 |

(Via telephone)

| | |
|---|---|
| For LaSalle Bank, NA: | Bess M. Parrish, Esq.<br>Alston & Bird, LLP<br>One Atlantic Center<br>1201 W. Peachtree St.<br>Atlanta, GA 30309 |
| For Bank of America | Ana M. Alfonso, Esq.<br>Kaye Scholer<br>425 Park Ave.<br>New York, NY 10022 |
| For ABN AMRO Bank, NV: | Fred Neufeld, Esq.<br>Milbank Tweed Hadley & McCloy<br>601 S. Figueroa St.-30th Fl.<br>Los Angeles, CA 90017<br><br>Robert J. Moore, Esq.<br>Milbank Tweed Hadley & McCloy<br>601 S. Figueroa St.-30th Fl.<br>Los Angeles, CA 90017 |
| Audio Operator: | Nickita Barksdale |

```
Transcribing Firm:          Writer's Cramp, Inc.
                            6 Norton Rd.
                            Monmouth Jct., NJ 08852
                            732-329-0191
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

                                                                4

1            THE CLERK:  All rise.

2            THE COURT:  Please be seated.

3            MR. GROW:  Good afternoon, Your Honor.

4            THE COURT:  Good afternoon.

5            MR. GROW:  Nathan Grow of Young Conaway Stargatt and

6   Taylor on behalf of the Debtors.  So, looking at our agenda for

7   the hearing today, Items 2 through 21 have been adjourned.

8   Item 22 is an uncontested matter, Certification of Counsel has

9   been filed with respect to this matter.

10           THE COURT:  Okay.

11           MR. GROW:  Item number 23 was marked as going

12  forward but has now been adjourned.  Debtors attempted to file

13  an amended agenda today to reflect this, but been having some

14  issues with the Court's website.

15           THE COURT:  Yes, we're painfully aware of that.  I

16  apologize.

17           MR. GROW:  Not a problem.

18           THE COURT:  It's not out fault.

19           MR. GROW:  Okay.  Well, moving forward to -- item

20  number 24 this is the Debtor's 18th omnibus non-substantive

21  objection to claims.  This objection with heard at a previous

22  hearing and was adjourned with respect to the claim of Joseph

23  Bartolotta and we've marked this as going forward today because

24  we've reached a resolution with Mr. Bartolotta.  The Debtor's

25  objected requesting that the Court reassigned Mr. Bartolotta's

1  claims from the <u>American Home Mortgage Holdings</u> case to the
2  <u>American Home Mortgage</u> Court case.  We receive an informal
3  response from Mr. Bartolotta who was not in agreement with this
4  treatment, but subsequently counsel to Mr. Bartolotta has
5  agreed to this requested relief so long as it does not
6  prejudice Mr. Bartolotta's right to assert, in another context
7  or in connect with another claim, that he is entitled to
8  recovery against American Home Mortgage Holdings.
9           THE COURT:  All right.
10          MR. GROW:  Okay.  So, I have a Form of Order that I
11 can hand up and at the same time maybe I can hand up orders for
12 the 21st and the 22nd omnibus claim objections, if I may
13 approach?
14          THE COURT:  Yes.
15     (The Court received document)
16          THE COURT:  Thank you.  You said the 21st and 22nd.
17 I think you meant 20th and 21st, right?  Yes.  All right,
18 anyone wish to be heard in connection with the 18th?
19          ALL:  (No verbal response).
20          THE COURT:  I'll sign the order as agreed.
21          MR. GROW:  Okay, Your Honor -- Okay, with respect to
22 the 20th non-substantive objection to claims, the Debtors did
23 not receive -- received one respect with respect to this -- to
24 this objection but it was a response that did not oppose the
25 relief requested, so the Form of Order with respect to this

1  objection is unrevised.

2          THE COURT:  Okay.

3          MR. GROW:  Your Honor, I'm sorry.  To clarify, the
4  orders that I orders I handed up to you are they -- the 20th
5  and the 21st?  I think we might have miss marked the orders as
6  the 21 and 22.

7          THE COURT:  No, they're the 20th and the 21st.

8          MR. GROW:  The 20th and 21st.  Okay.  Okay.  So,
9  unless, Your Honor, has any other question with respect to the
10 20th.

11         THE COURT:  Yes, let me look at my notes here.  All
12 you're changing on the wrong Debtors claims, all you're
13 changing is the Debtor?  You're not changing anything else,
14 right?

15         MR. GROW:  That's correct, Your Honor.

16    (Pause in proceedings)

17         THE COURT:  Sorry, I'm -- a lot of paper to get
18 through.  On Exhibit-D the satisfied claims --

19         MR. GROW:  Yes, Your Honor.

20         THE COURT:  -- some of them specify specific dates
21 when the claims were paid off and some don't, and I'm just
22 curious as to why that is, and --

23         MR. GROW:  Yes, Your Honor.  In digging through
24 these we've made every effect to ascertain payment dates where
25 the Debtors are aware that a claim has been satisfied.  In some

1  instances it may be that the claim was satisfied in multiple
2  payments over a period of time.  In the interest of brevity, we
3  haven't put any dates down rather than listing, you know, 20.
4              THE COURT:  All right.  So, then some were paid, you
5  know, every two weeks or something like that?
6              MR. GROW:  Correct.  Or in other instances we may
7  have simply been able to not ascertan looking back when the
8  claims were actually satisfied.  But Debtors books and records
9  show that have in fact been satisfied.
10 "Debtor has confirmed that taxes had been paid."  Someone had a
11 telephone conversation or --
12             MR. GROW:  I believe, that's correct, Your Honor.  I
13 don't remember that one specifically.
14             THE COURT:  Someone at the Debtor?  Would that be
15 you or would that be someone at the Debtor?
16             MR. GROW:  Someone with the Debtors or other
17 professionals.
18             THE COURT:  All right. Okay.  I'll sign the order,
19 if I haven't lost it.  Here it is.
20      (The Court signs document)
21             MR. GROW:  Okay.  Moving right along --
22             THE COURT:  Is anybody awake here?  Everybody looks
23 so sleepy.  It's only 4:00 o'clock guys.  See I get to go home,
24 you have to go back to the office that's why you're not looking
25 happy.

1                MR. GROW:  Usually these claim objections wake
2    everybody up.
3                THE COURT:  Yes, exactly.  This is exciting work for
4    you, Mr. Grow, I know.  I'm sure it's appreciated by all your
5    colleagues.
6                MR. GROW:  Moving forward to --
7        (Laughter)
8                MR. GROW:  Moving forward to the item number 26 on
9    the agenda is the Debtors 21st substantive objection to claims.
10   And in light of responses received, the Debtors have indicated
11   that they wish to adjourn this objection with respect to a few
12   claims.  The claims of Robert Carlton, Michael J. Ostrowski,
13   Victor Diamond, Connie Zinter, and Trustees of Mall Road.
14               UNIDENTIFIED SPEAKER:  Thank you very much.
15               MR. GROW:  There were some other responses received
16   where the Debtors have reached a consensual resolution with the
17   respondents.  Looking at response filed by New York Department
18   of Taxation and Finance, the Debtors objected to claim number
19   9842 and 9971.  In their response the New York Department of
20   Taxation and Finance agreed that claim number 9842 is
21   duplicative as the Debtor suggested in their objection, but
22   they requested that the other claim be considered and that 9842
23   be withdrawn.  New York Department of Taxation and Finance had
24   no response or problem with the relief requested with respect
25   to the claim 9971.  So, in light of this response the Debtors

1  have taken off claim #9842 from the Proposed Form of Order.
2  And the Debtors reserve their rights to object to this claim in
3  the future.  Okay.  The Debtors also received a response from
4  Georgia Department of Revenue.  This was a claim initially
5  alleged for $167,000.  The Debtors objected on the basis that
6  their books and records showed no liability for this claim.  In
7  their response the Georgia Department of Revenue stated that
8  the $167,000 number was an estimate and upon the receipt of a
9  tax return from the Debtors, Georgia Department of Revenue had
10 determined that the liability that they believed that they're
11 owned is $1800, $1,176.48 of which is priority and $627.54 of
12 which is unsecured.  The Debtors do not take a position on
13 whether they are, in fact, liable for these amounts or not, but
14 have agreed to instead of request the expungement of these
15 claims, request instead that they be reduced instead to the
16 amounts requested by the Georgia Department of Revenue.  So, we
17 have taken the claim and shifted it from the no liability
18 exhibit to the reduced amount exhibit in the Revised Form of
19 Order.
20          THE COURT:  Okay.
21          MR. GROW:  Okay.  The last response received, which
22 I'm not sure this one made it onto the agenda, it is with
23 respect to the claim of Residential Appraisal Services.
24          THE COURT:  I have it in hard copy here.
25          MR. GROW:  Okay.  The Debtors initially requested

1  that this claim be reduced from $2,550 to $1,400, reclassified
2  from priority to unsecured and reassigned to a new case number.
3  Residential Appraisal Services in their response only took
4  issue with the reduction in the amount, but to the
5  reclassification or the reassignment.  The Debtors take no
6  position as to their liability at this time for the
7  approximately $1150 that is at issue, an unsecured amount.  But
8  the Debtors have agreed to allow the claim in that full amount,
9  $2,550, unsecured, and reassigned to a the case number.  And to
10 reflect this we revised the Form of Order and moved the claim
11 to a different exhibit.
12             THE COURT:  Okay.
13             MR. GROW:  Okay.  That's all the responses we
14 received with respect to this objection.  Does, Your Honor,
15 have any other questions?
16             THE COURT:  Yes, I do.  Let me --
17      (Pause in proceedings)
18             THE COURT:  Some of these on these no-liability --
19 there are several that deal with Loan Officers -- let's try
20 that again, Loan Officers who are closing loans for the Debtors
21 and the assertion is that the loan did not close and no fees
22 are due, but on three of the claims the documentation, cover
23 letter, statements, et cetera, seems to indicate that they had
24 closed and I have the claim numbers, not the names.
25             MR. GROW:  Okay.

```
 1              THE COURT:  2624, 6566 and 2488.
 2              MR. GROW:  2624, 2488 and what was the third one?
 3              THE COURT:  6566.
 4              MR. GROW:  Okay, well, I have some claims binders
 5   over there but as everybody is already asleep --
 6       (Laughter)
 7              MR. GROW:  -- maybe we can just adjourn these and I
 8   could --
 9              THE COURT:  Yes, let's do that.
10              MR. GROW:  -- get back to you later?
11              THE COURT:  Yes.
12              MR. GROW:  At least -- okay.
13              THE COURT:  Pull those off.  On the Exhibit-D,
14   there's a Tracey Lucier (phonetic).  She filed a claim for
15   15,000 or so, for down payments and it looks like she filed the
16   whole thing as a priority claim and you're reducing
17   -- well, I'm sorry, reclassifying, it appears to a non-priority
18   claim, but my question is 507(a)(7) says that if there's a
19   priority claim to the extent of $2425 for an individual rising
20   from the deposit of money in connect with the purchase of
21   property.  So, shouldn't 2425 remain priority?
22              MR. GROW:  Okay.  If I could indulge the Court --
23              THE COURT:  Yes.
24              MR. GROW:  -- a moment here and I'll take a look at
25   this.
```

1          THE COURT:  Take your time.  No problem.
2     (Pause in proceedings)
3          MR. GROW:  Your Honor, I think I'm gonna need to
4    follow up with my client --
5          THE COURT:  That's fine.
6          MR. GROW:  -- whether they contest the documentation
7    attached here.
8          THE COURT:  Okay.  Let's pull that then.
9     (Pause in proceedings)
10         THE COURT:  One of these kind of confused me on
11   Exhibit-E and it's the claim of Sun Life Assurance Company,
12   which is a lease rejection claim under 502(b)(6) and the
13   argument is that it should be reduced to match Debtors books
14   and records.  So, I guess my question is the Debtors book and
15   records reflect a 502(b)(6) calculation or -- how is -- what's
16   the connection there between his calculation of 502(b)(6) and
17   what's on the books and records?
18         MR. GROW:  I would imagine that the Debtors -- I
19   believe we went through the 502(b)(6) calculation, that's the
20   amount we came up with.  Admittedly maybe it deserves a little
21   more discussion as to the different fee --
22         THE COURT:  Let me just give you some specificity as
23   to, you know, show me your math, and --
24         MR. GROW:  Okay.
25         THE COURT:  -- you know, I mean, it's pretty easy --

13

```
 1                MR. GROW:  Sure.
 2                THE COURT:  -- once you figure out how much is left
 3   on the lease it's pretty easy to do.
 4                MR. GROW:  Right.  Okay.
 5                THE COURT:  I mean, he may be including CAM or Real
 6   Estate Taxes or things that you could argue are not
 7   appropriately included in that.  I just don't know with that
 8   sort of general statement.
 9                MR. GROW:  Okay.  And I don't have a specific --
10                THE COURT:  All right.  Sure.
11                MR. GROW:  -- recollection as to this one.
12                THE COURT:  I'm sure you don't.  So, let's kick that
13   one and you can look at it.  Okay.  Those are my only comments.
14                MR. GROW:  Okay.  Well, that's all I have with
15   respect to that --
16                THE COURT:  Okay.
17                MR. GROW:  -- objection.
18                THE COURT:  So, just submit a new order under
19   certification.
20                MR. GROW:  We can do that -- if that works for, Your
21   Honor?
22                THE COURT:  Yes -- so.
23                MR. GROW:  Okay, Your Honor --
24                THE COURT:  But I did sign the 20th.
25                MR. GROW:  Okay.  For the remainder of the agenda
```

1  I'm gonna turn the podium over to my to colleague Sean Beach.
2          THE COURT:  Okay.  Good afternoon, Mr. Beach.
3          MR. BEACH:  Good afternoon, Your Honor.  Sean Beach
4  from Young Conaway on behalf of the Debtors and Your Honor for
5  what it's worth I certainly appreciate all of Mr. Grow's
6  efforts in these claims objections.
7      (Laughter)
8          MR. BEACH:  Because I'm sure they would fall to me
9  if it weren't for him.  Your Honor, the last item on the
10 agenda, item number 27, is sale procedure.  The Debtors are
11 seeking approval of sale procedure to sell certain second lien
12 assets and in fact these are non-performing second lien assets.
13 The Debtors have approximately, as of October 31, approximately
14 1086 of these junior loans or junior assets and approximately
15 675 of those, 64 million UPB is non-performing loans, about 379
16 -- about 41 million UPB are actively in foreclosure and about
17 32 of these are in fact just mortgage loans where the real
18 estate has already been foreclosed on, so it's simply an
19 unsecured mortgage loan against the borrower.
20      There have been no formal objections.  We received one
21 response from LaSalle, who was concerned that it wasn't -- that
22 the documents weren't clear enough that these were still
23 subject to the first liens rights of parties, and so we've made
24 some corrections to the order.  I believe, counsel for LaSalle
25 is on the phone and also Ms. Iroii is in the Courtroom today

```
 1  and I can walk through a black line with Your Honor of some of
 2  the changes --
 3            THE COURT:  Okay.
 4            MR. BEACH:  -- that I've made as a result of those
 5  conversations.
 6            THE COURT:  That's fine.  Is there any -- I mean, I
 7  assume these are not going to generate significant value, to
 8  say the least.
 9            MR. BEACH:  We're certainly hoping to maximize the
10  value, but you're right, Your Honor, these are -- these won't
11  even be at the levels of, or near the levels, probably, of some
12  of the prior sale of the first lien assets.  Your Honor, just
13  to run through the dates really quickly from back to front.  We
14  have scheduled -- requested a sale hearing of December 10th at
15  2:00 p.m. with an auction date of December 9th at 10:00 a.m., a
16  bid deadline of December 5th, a sale motion objection deadline
17  of December 3rd and the due diligence period has already begun.
18  We've reached out to a number of parties and parties have
19  expressed interest in these assets.  The due diligence room is
20  already set up and parties are looking at the bid tapes and
21  other documents.  If I may approach, Your Honor, I can hand up
22  a clean and black line of the order, the sale procedures, the
23  sale notice and the revised sale order?
24            THE COURT:  Okay.
25            MR. BEACH:  May I approach?
```

1        THE COURT: Yes. Thank you. Okay. Thanks.
2        MR. BEACH: Your Honor, I'll summarize -- well,
3 first let me step to LaSalle's objection. In the modified form
4 of sale order which is at the end of the black line documents,
5 it's Exhibit-D to the sale procedures order, we made two
6 changes at the request of LaSalle. One is to add in a new
7 paragraph I, which is again to clarify that we are selling the
8 second lien assets and not affecting any first lien interest,
9 and then added in paragraph five, the last sentence, which
10 clarifies that same point.
11        THE COURT: And that's in the procedures order as
12 well, it's looks like. At least the G -- the I finding.
13        MR. BEACH: That's right, Your Honor. Right. We
14 put the finding in there. We did put the --
15        THE COURT: The ordered -- right.
16        MR. BEACH: Right. And we also made a corresponding
17 change in the sale procedures themselves to make that point
18 clear. In addition the -- you know, to some the general
19 changes to these documents, it's to make that clarification
20 based on LaSalle's concerns. It's to address the change dates
21 because originally the sale hearing was set for December 8th
22 and we -- since it was move -- we ask it be -- for it to be
23 moved to December 10th, we changed all the dates accordingly.
24 And in addition to that we got updated numbers --
25        THE COURT: Right.

1          MR. BEACH:  -- with respect to the assets being sold
2  for -- from October 31st, which I realized while I was sitting
3  in the Courtroom that we didn't update the procedures, it still
4  says September 30th, so in the clean version I handed to, Your
5  Honor, I interlineated --
6          THE COURT:  Interlineated.
7          MR. BEACH:  -- the October 31st --
8          THE COURT:  Very well.
9          MR. BEACH:  -- time.  Unless, Your Honor, has any
10 additional questions --
11         THE COURT:  I do not.  Does anyone wish to be heard?
12         MS. PARISH:  This is Bess Parrish from Alston and
13 Bird on behalf of LaSalle on the phone and I -- just for the
14 record, we are comfortable with the changes that are provided.
15         THE COURT:  Okay.  Thank you, ma'am.  Anyone else?
16 Then I'll sign the order.
17         MR. BEACH:  Thank you, Your Honor.  That will
18 conclude our agenda for today.
19         THE COURT:  All right.  Thank you very much.
20 Hearing adjourned.
21         ALL:  Thank you.
22    (Court adjourned)
23
24
25

```
                                                                18
1                        CERTIFICATION
2   I certify that the foregoing is a correct transcript from the
3   electronic sound recording of the proceedings in the above-
4   entitled matter.
5
6   Lewis Parham                                  11/21/08
7   _____          _____
8   Signature of Transcriber                     Date
```