EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Hon. Christopher S. Sontchi |
|  | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC. | Case No. 07-11047 |
| AMERICAN HOME MORTGAGE INVESTMENT CORP. | Case No. 07-11048 |
| AMERICAN HOME MORTGAGE ACCEPTANCE, INC. | Case No. 07-11049 |
| AHM SV, INC. (f/k/a American Home Mortgage Servicing, Inc.) | Case No. 07-11050 |
| AMERICAN HOME MORTGAGE CORP. | Case No. 07-11051 |
| AMERICAN HOME MORTGAGE VENTURES LLC | Case No. 07-11052 |
| HOMEGATE SETTLEMENT SERVICES, INC. | Case No. 07-11053 |
| GREAT OAK ABSTRACT CORP. | Case No. 07-11054 |
| Debtors.[1] | Jointly Administered |

## DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE WITH RESPECT TO THE AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS DATED AS OF NOVEMBER 25, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for the Debtors and Debtors in Possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

POAs, making them the 7th largest originator of POAs.[16] During 2006, the Debtors made loans to approximately 196,000 borrowers and their total originations were approximately $58.9 billion. The Debtors' loan origination business generated a significant portion of the Debtors' assets and the source of the Debtors' gain on sale revenue. It also was the source of many of the customers whose loans were being serviced by the Debtors.

The Debtors' originations were sourced through their own sales force of loan officers and account executives, as well as through mortgage brokers and loan correspondents. As of December 31, 2006, the Debtors conducted lending through over 550 retail and wholesale loan production offices located in 47 states and the District of Columbia.

The Debtors offered a broad array of mortgage products[17] and primarily made loans to borrowers with good credit profiles. The weighted-average FICO score for the Debtors' $58.9 billion of total originations in 2006 was 716. Approximately 0.04% of these originations were to non-prime borrowers. All of the loans the Debtors made in 2006 were secured by one- to four-family dwellings.

The Debtors' origination business sought to utilize a combination of skilled loan officers, advanced technology, a broad product line and a high level of customer service to successfully compete in the marketplace. The Debtors' primary goal in making a decision whether to extend a loan was whether that loan conformed to the expectations and underwriting standards of the secondary mortgage market. Typically, these standards focused on a potential borrower's credit history (often as summarized by credit scores), income and stability of income, liquid assets and net worth, and the value and the condition of the property securing the loan. The Debtors originated some loans with little or no documentation from borrowers. Whenever possible, the Debtors used "artificial intelligence" underwriting systems to determine whether a particular loan met those standards and expectations. In those cases where artificial intelligence was not available, the Debtors relied on their credit officer staff to make the determination. Once a customer applied for a loan, the Debtors' mortgage banking operation processed and underwrote the customer's application and the Debtors funded the customer's loan by drawing on a warehouse line of credit. These loans were then typically either sold, securitized with the resulting mortgage-backed securities being sold, or held as a long-term investment.

The Debtors' loan origination business rapidly grew in market share and scale since AHM Holdings became a public company in 1999. The aggregate principal amount of total loan

---

[16] The Borrowers Committee (as hereinafter defined) has expressed concerns about POAs ~~relating to the low introductory rates and negative amortization features~~because, in the view of the Borrowers Committee, they are very complex loans that the Debtors appear to have marketed and sold broadly. The Borrowers Committee further contends that aside from a minimum payment option that could negatively amortize the loan, but only up to a certain amount, POAs typically were subject to prepayment penalties and offered low introductory interest rates that were in effect only for a short period of time, e.g., one month, after which the interest rate would increase.

[17] The Debtors' product line included ARM loans (including POAs), conventional conforming fixed-rate loans, alternate-"A" loans, jumbo fixed-rate loans, home equity or second mortgage loans, government fixed-rate loans, non-prime loans and construction loans.

19

### 25. Insurance Assets

The Debtors' Assets include their rights under certain insurance policies that may respond to a variety of claims. These coverages include director & officer liability coverage,[40] errors & omissions and fidelity coverage, comprehensive general liability coverage, and state licensing authority surety bonds. Pursuant to the terms of the Plan, the Debtors will file lists of Designated Insurance Policies and Designated Non-Executory Insurance Policies as Supplemental Plan Documents. The Debtors do not know the extent to which any such insurance will be available to respond to particular claims. <u>Upon information and belief, apart from the payment of defense costs to individual insureds under the policies, proceeds of the policies have not been earmarked to any particular claims, groups of claims or classes of claims.</u>

### 26. Transfers to Creditors Within 90 Days Prepetition

As reflected in the Debtors' Statements of Financial Affairs, as amended [Docket Nos. 1335-1342 and 5357-5361], the aggregate number and amount of transfers by each Debtor to creditors within the 90 days immediately preceding the Petition Date are as follows:

| Debtor | # of Transfers | Approximate $ Amount |
|---|---|---|
| AHM Holdings | - | - |
| AHM Investment | 59 | $149,470,751 |
| AHM Acceptance | 2,495 | $1,625,924,537 |
| AHM SV | 207 | $2,486,666,107 |
| AHM Corp. | 19,786 | $16,189,789,850 |
| AHM Ventures | - | - |
| Homegate | 393 | $12,962,608 |
| Great Oak | - | - |

**The amounts set forth in the foregoing table are for informational purposes only and do not constitute a statement or estimate as to the existence or value of any valid Avoidance Action relating to any of the foregoing transfers. Whether a transfer gives rise to a valid Avoidance Action, and whether any such Avoidance Action has any realizable value for the Debtors' Estates, will depend on a number of factors not discussed herein, including (but not limited to) the amounts of the challenged transfers, the location of the transferee (for**

---

[40] The Debtors' director & officer liability policies issued between September 27, 2006 through September 27, 2007, plus an additional one year reporting period, provide $50 million in aggregate limits. These policies are "claims made" policies that generally provide coverage, subject to their terms, for claims made against the policy during the policy or reporting period. Certain amounts of the available insurance have, by information and belief, been paid to satisfy defense costs of certain directors and officers in connection with pending or threatened litigation.

or serviced by any Debtor. Claims in Classes 1C(4), 2C(4), 3C(3), 4C(3), 5C(3), 6C(2), 7C(2), and 8C(2) are Unsecured Claims.

**PLEASE TAKE NOTE that the Debtors' designation of a Class of Borrower Claims in each Estate is for the sake of convenience only and does not constitute an acknowledgement or admission that any Borrower Claims are, or may be, validly asserted against any such Estate. The Debtors believe that valid Borrower Claims, if any, would likely be assertable only against AHM Acceptance, AHM Corp., and/or AHM SV, which were the Debtors engaged in the origination, sale, and servicing of mortgage loans.**

Each Holder of an Allowed Class 1C(4), 2C(4), 3C(3), 4C(3), 5C(3), 6C(2), 7C(2), and 8C(2) Claim shall receive its Pro Rata share of the Net Distributable Assets of the applicable Estate in full satisfaction, settlement, and release of, and in exchange for, its Allowed Unsecured Claim.

***Illustration:*** ~~Suppose a borrower asserts a Claim against a Debtor for damages resulting from an alleged act or omission of the Debtor in connection with the origination and/or servicing of the borrower's mortgage loan. Under the Plan, the borrower will be entitled to receive a Pro Rata share of the Net Distributable Assets of the Debtor's Estate once the borrower's Claim becomes an "Allowed" Claim. For the borrower's~~ ***Plain-English Summary:*** __Under the Plan, an "Allowed" Borrower Claim will share in available cash after the Debtors and the Plan Trustee satisfy all secured, administrative and priority obligations. For the Borrower__ Claim to be "Allowed__,__" the borrower must ~~either (i) file a proof of claim by the applicable bar date or (ii) seek and__(i) file proof of such claim with the Claims Agent and, (ii) if no proof of claim has yet been filed__,__ obtain the Bankruptcy Court's permission to file a late proof of claim. The ~~Debtors (if before the Effective Date) or the Plan Trustee (if after the Effective Date) will then review the proof of claim and either (i) consent to Allowance of the borrower's Claim or (ii) file an objection to the Claim with the Bankruptcy Court. The borrower will be given~~ __Borrower Claim is deemed "Allowed" unless the Debtors or the Plan Trustee object to the Borrower Claim. The borrower would receive notice by mail of any objection and have__ an opportunity to respond ~~to any such objection. If the borrower responds, then the Bankruptcy Court may either determine the amount of the borrower's Claim itself or permit the borrower to litigate his or her Claim in another forum.~~__, and the Bankruptcy Court would then decide the matter. Separately, borrowers may seek permission from the Bankruptcy Court to litigate Borrower Claims in another court.__

### 15.  Other Subordinated Claims; Interests

Each of Classes 1D, 2D, 3D, 4D, 5D, 6D, 7D, 8D, 1E, 2E, 3E, 4E, 5E, 6E, 7E, and 8E, which are Impaired, consist of Subordinated Claims against all of the Debtors (including, without limitation, the Securities Litigation Claim against AHM Investment) or Interests in all of the Debtors. Holders of Claims or Interests in Classes 1D, 2D, 3D, 4D, 5D, 6D, 7D, 8D, 1E, 2E, 3E, 4E, 5E, 6E, 7E, and 8E shall receive no distribution or dividend on account of such Claims or Interests. The entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all Interests (and all securities convertible or exercisable for or evidencing any

EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Hon. Christopher S. Sontchi |
|  | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC. | Case No. 07-11047 |
| AMERICAN HOME MORTGAGE INVESTMENT CORP. | Case No. 07-11048 |
| AMERICAN HOME MORTGAGE ACCEPTANCE, INC. | Case No. 07-11049 |
| AHM SV, INC. (f/k/a American Home Mortgage Servicing, Inc.) | Case No. 07-11050 |
| AMERICAN HOME MORTGAGE CORP. | Case No. 07-11051 |
| AMERICAN HOME MORTGAGE VENTURES LLC | Case No. 07-11052 |
| HOMEGATE SETTLEMENT SERVICES, INC. | Case No. 07-11053 |
| GREAT OAK ABSTRACT CORP. | Case No. 07-11054 |
| Debtors.[1] | Jointly Administered |

**AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS
DATED AS OF NOVEMBER 21,25, 2008**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

Interest, or to any other party in interest, for any act or omission that occurred during the Chapter 11 Cases or in connection with the preparation and filing of the Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of this Plan, the consummation of this Plan, and/or the administration of this Plan and/or the property to be distributed under this Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan and such reasonable reliance shall constitute an absolute defense to any such claim, cause of action, or liability. Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. No provision of this Plan or the Disclosure Statement shall be deemed to act upon or release any claims, Causes of Action or liabilities that the Plan Trust, the Estates, or any party in interest may have against or to any Person for any act, omission, or failure to act that occurred prior to the Petition Date other than in connection with the preparation and filing of the Chapter 11 Cases, nor shall any provision of this Plan be deemed to act to release any Avoidance Actions.

        D.      **BINDING EFFECT OF PLAN.** Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted this Plan and whether or not the Holder has filed a Claim. The rights, benefits and obligations of any Person named or referred to in the

Dated: November ~~21,~~25, 2008

                Respectfully submitted,

                AMERICAN HOME MORTGAGE HOLDINGS, INC.
                AMERICAN HOME MORTGAGE INVESTMENT CORP.
                AMERICAN HOME MORTGAGE ACCEPTANCE, INC.
                AHM SV, INC. (f/k/a American Home Mortgage Servicing, Inc.)
                AMERICAN HOME MORTGAGE CORP.
                AMERICAN HOME MORTGAGE VENTURES LLC
                HOMEGATE SETTLEMENT SERVICES, INC.
                GREAT OAK ABSTRACT CORP.

                By: ~~Kevin Nystrom~~Bret Fernandes
                Their: ~~Chief~~Director of Restructuring ~~Officer~~