# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------X
In re

AMERICAN HOME MORTGAGE
HOLDINGS, INC., et al.,

                                            Debtors.
-----------------------------------------------------------X
```

Chapter 11

Case No. 07-11047 (CSS)
(Jointly Administered)

### STIPULATION SETTLING MOTION OF JPMORGAN CHASE BANK, N.A.
### FOR RELIEF FROM AUTOMATIC STAY AND PROVIDING
### FOR MEDIATION OF CERTAIN DISPUTES

This stipulation (the "**Stipulation**") is entered into by and among American Home Mortgage Holdings, Inc., *et al.*, the above captioned debtors and debtors in possession (collectively, the "**Debtors**"), the Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc., *et al.*, (the "**Committee**") and JPMorgan Chase Bank, N.A., as administrative agent and sole lender pursuant to the Amended Credit Agreement (as defined below) ("**JPMorgan**"), with reference to the following:

A.      These chapter 11 cases were commenced on August 6, 2007 (the "**Petition Date**").

B.      On or about January 24, 2006, American Home Mortgage Investment Corp. ("**AMHIC**") and American Home Mortgage Corp. ("**AHM**" and together with AMHIC, the "**AHM Obligor Debtors**") entered into that certain "1/06 Senior Secured Credit Agreement" with JPMorgan, as administrative agent and sole lender, pursuant to which JPMorgan provided a revolving line of credit to the AHM Obligor Debtors to be secured by mortgage loans that were originated and/or owned by the AHM Obligor Debtors.  Since the execution of the 1/06 Credit Agreement, the parties amended it four separate times. (The 1/06 Credit Agreement, as amended by the parties, and including all documents and instruments executed in connection therewith, is

1

hereinafter referred to as the "**Amended Credit Agreement**".)  JPMorgan filed proofs of claim in connection with amounts it claims was owing to it by the AHM Obligor Debtors as of the Petition Date under the Amended Credit Agreement.  In the Lift Stay Motion (defined below), JPMorgan has asserted that as of July 31, 2008, the AHM Obligor Debtors owed it an amount no less than $97 million in connection with the Amended Credit Agreement (the "**JPMorgan Secured Claim**").

C.        JPMorgan asserted in the Lift Stay Motion (defined below) that the JPMorgan Secured Claim is secured by certain mortgage loans, including construction-to-permanent loans[1] (the "**JPMorgan Collateral Loans**") and real estate (collectively, with the JPM Collateral Loans, the "**JPMorgan Collateral**") pledged by the Debtors in the Amended Credit Agreement. JPMorgan further asserted in the Lift Stay Motion that as of July 31, 2008, the unpaid principal balance ("**UPB**") of the JPMorgan Collateral totaled less than $94 million.

D.        The Debtors and the Committee have asserted that both before and after the Petition Date, certain of the JPMorgan Collateral Loans went into default and the Debtors acquired by way of foreclosure, deed in lieu of foreclosure, or otherwise the real estate securing such JPMorgan Collateral Loans (the "**REO Properties**").  The Debtors and the Committee contend that JPMorgan either never acquired a security interest in such REO Properties and/or that any security interest of JPMorgan in such REO Properties is unperfected and voidable by the Debtors pursuant to various provisions of the Bankruptcy Code.  JPMorgan has disputed the assertion by the Debtors and the Committee that JPMorgan does not have a valid and perfected security interest in the REO Properties and contends that the Debtors could not have acquired the REO Properties without a valid and perfected security interest of JPMorgan in a manner that did

---

[1] On January 4, 2008, the Court entered, on an uncontested basis, the Order Granting Motion For Relief From Automatic Stay Of JPMorgan Chase Bank, National Association To Foreclose on And Preserve Collateral Consisting Of Outstanding Construction/Permanent Loans ("**CTP Loans**") On Single-Family Residences [D.I. 2585] (the "**CTP Loan Stay Relief Order**").

not violate the Amended Credit Agreement. The Debtors represent to JPMorgan that they will not assert that JPMorgan Collateral Loans which have been foreclosed upon or otherwise converted to REO Property since July 3, 2008, or the proceeds thereof, are not subject to a perfected security interest held by JPMorgan. JPMorgan represents to the Debtors that it shall not use the foregoing representation as a defense or statement against the Debtors' interests in connection with any proceeding regarding JPMorgan Collateral Loans which have been foreclosed upon or otherwise converted to REO Property prior to July 3, 2008. Notwithstanding the foregoing, the Committee reserves any and all rights to otherwise challenge such transfers or assert that such conversions of JPMorgan Collateral Loans to REO Property, or proceeds thereof, are property of the estate not subject to a perfected security interest in favor of JPMorgan and JPMorgan shall not contest the Debtors and Committee filing a joint complaint that includes such a cause of action by the Committee nor the Committee's standing to assert such a cause of action.

E.      On or about September 10, 2008, JPMorgan filed the "Motion Of JPMorgan Chase Bank, National Association For Relief From Automatic Stay, Pursuant To 11 U.S.C. § 362(d), To Foreclose On Mortgage Loans" [D.I. 5791] (the "**Lift Stay Motion**"). On September 29, 2008, the Committee filed its "Response Of The Official Committee Of Unsecured Creditors To 'Motion Of JPMorgan Chase Bank, National Association For Relief From Automatic Stay, Pursuant To 11 U.S.C. § 362(d), To Foreclose On Mortgage Loans.'" On September 30, the Debtors filed their "Debtors' Preliminary Objection To The Motion Of JPMorgan Chase Bank, National Association For Relief From The Automatic Stay, Pursuant To 11 U.S.C. §362(d) To Foreclose On Mortgage Loans".

F.      The Debtors and the Committee dispute, among other things, the amount and validity of the claims and security interests asserted by JPMorgan. In addition, the Debtors have

3

asserted that JPMorgan has not carried its burden of proving that the Debtors have no equity in the JPMorgan Collateral.

      G.        The parties desire to resolve certain of their disputes relating to the Lift Stay Motion and to provide procedures for the potential resolution and/or litigation of certain other disputed matters, as set forth herein.

      Now, therefore, based on the foregoing, the Debtors, the Committee and JPMorgan hereby stipulate and agree as follows:

## RESOLUTION OF CERTAIN ISSUES IN LIFT STAY MOTION

      1.        Upon approval of this Stipulation by a final, non-appealable order of the Bankruptcy Court (the date such order becomes final and non-appealable, the "**Stipulation Effective Date**"), and subject to the procedures and agreements set forth herein, the Debtors shall transfer to JPMorgan or its designee ownership of and complete dominion and control over, all of the JPMorgan Collateral Loans, excluding the REO Properties (such transferred loans, the "**Transferred Loans**").

      2.        As soon as reasonably practicable, but no later than sixty (60) calendar days, after the Stipulation Effective Date (the "**Transfer Date**"), the Debtors shall transfer, and JPMorgan shall receive, ownership of and complete dominion and control over and discretion with respect to the Transferred Loans and all servicing rights related thereto, including, but not limited to, the management, reworking and/or modification of the Transferred Loans, the right to reduce principal balances of any Transferred Loans, and the right to transfer servicing of the Transferred Loans.

      3.        From and after the Transfer Date, any and all costs, fees and expenses related to the JPMorgan Collateral Loans of any nature whatsoever (including, without limitation, servicing advances, servicing fees, transfer costs, document retrieval and delivery costs and professional fees) shall be the sole obligation of, and paid or reimbursed by, JPMorgan;

*provided, however*, that all such amounts paid or advanced by JPMorgan and all other fees and costs of JPMorgan shall be paid or reimbursed from the first proceeds of the Transferred Loans subject to the Debtors' rights to challenge such payments or reimbursements pursuant to the reservation of rights set forth herein.

4.       The Debtors shall have no obligations with respect to the JPMorgan Collateral Loans that arise from and after the Transfer Date.

5.       No later than fourteen (14) calendar days following the Transfer Date, the Debtors shall provide to the Committee and JPMorgan the following information with respect to certain collateral costs accruing prior to the Transfer Date (collectively, the "**JPM Collateral Costs**"):

a.  The amount of professional fees and expenses incurred by the Debtors that the Debtors contend are chargeable to JPMorgan as reasonable and necessary costs of preserving and/or disposing of any JPMorgan Collateral, and reasonably detailed documentation supporting such alleged fees and expenses;

b.  The amount of servicing advances that the Debtors have paid in respect of the JPMorgan Collateral Loans for which the Debtors claim not to have been reimbursed, and reasonably detailed documentation supporting such alleged unreimbursed servicing advances; and

c.  The amount of all unreimbursed servicing fees and other servicing costs that the Debtors contend are due to the Debtors from JPMorgan, and reasonably detailed documentation supporting such alleged servicing fees and costs.

6.      To the extent that the Debtors are unable to provide the information referenced in paragraph 5 within fourteen (14) calendar days after the Transfer Date, the Debtors shall use their reasonable best efforts to provide JPMorgan and the Committee with such information in a timely manner, but in any event no later than sixty (60) days after the Transfer Date, subject to the rights of JPMorgan contained in paragraph 7 herein.  Notwithstanding the foregoing, to the extent that the information referenced in paragraph 5 is in the possession, custody or control of a third party and the Debtors are unable to obtain such information prior to the deadline, the Debtors shall not be barred from asserting such claims against JPMorgan at a later date.

7.      Within fourteen (14) calendar days following the delivery of the information described in paragraph 5 and, to the extent applicable, paragraph 6 above, JPMorgan shall provide the Debtors a written statement of the basis on which JPMorgan disputes any of the JPMorgan Collateral Costs (the "**Disputed Amounts**").  The parties shall cooperate in good faith to resolve the Disputed Amounts prior to the Transfer Date.   JPMorgan shall, within fourteen (14) calendar days following the delivery of the information described in paragraph 5 and, to the extent applicable, paragraph 6 above, (i) reimburse the Debtors for all of the amounts described in paragraph 5 above that are not subject to dispute and (ii) deposit in an escrow account all disputed amounts (the "**Disputed Collateral Cost Escrow**") .  Absent consensual resolution of the parties' entitlement to the Disputed Collateral Cost Escrow, if created, the matter shall be determined by the Bankruptcy Court or resolved as otherwise agreed by the parties.

8.      Upon the occurrence of the Stipulation Effective Date, the Lift Stay Motion shall be deemed withdrawn from the calendar of the Bankruptcy Court.

9.      On the Transfer Date, the Debtors, to the extent possible, shall assist JPMorgan in effectuating the transfer of the Servicing Rights (as defined in the Amended Credit Agreement) of the Transferred Loans to JPMorgan or its designee (including any successor

servicer as designated by JPMorgan, the "**New Servicer**"), as JPMorgan deems appropriate in its sole and absolute discretion.  From and after the Transfer Date, JPMorgan shall be solely responsible for servicing or entering into new contracts for the servicing of the Transferred Loans and the Debtors shall have no further obligations related to the JPMorgan Collateral Loans or to the servicing of the Transferred Loans.  The New Servicer shall receive complete dominion and control with respect to the Transferred Loans and all servicing rights related thereto, including the management, reworking or modification of the Transferred Loans, the right to reduce principal balances of any Transferred Loans as if the Servicer were the owner of the Transferred Loans, all subject to the reservation of rights in favor of the Debtors and the Committee as set forth below.

        10.     Fifteen (15) calendar days prior to the Transfer Date the Debtors shall provide JPMorgan with (a) the administration file and the servicing file (collectively, the "**Loan File**") and (b) the legal file (the "**Legal File**") with respect to each Transferred Loan, to the extent such Loan File or Legal File is in the Debtors' possession, custody or control.  To the extent that the Debtors do not have possession, custody or control of any such Legal File or Loan File, the Debtors shall use the reasonable efforts for a liquidating debtor to assist JPMorgan in obtaining such Legal File or Loan File from any party in possession, custody or control of such files, provided however that such reasonable best efforts of the Debtors shall not include the payment of any costs or expenses to any third party.

        11.     On a quarterly basis, commencing at the end of the first full calendar quarter subsequent to the Transfer Date JPMorgan shall, within thirty (30) calendar days following the end of such quarter, provide the Debtors, their successors or assigns with a reasonably detailed report describing (a) JPMorgan's allocation of collected funds to (i) payment or reimbursement of the advances related to the maintenance of the Transferred Loans (the "**JPMorgan Advances**") and (ii) application to amounts owing to JPMorgan under the Amended

Credit Agreement; and (b) JPMorgan's disposition of the Transferred Loans. JPMorgan's obligation to provide the information as set forth herein shall continue only so long as the parties continue to dispute the amount of JPMorgan's deficiency claims in connection with the Amended Credit Agreement.

12.     All rights, claims, defenses and interests of the Debtors, the Committee and JPMorgan with respect to the sale or liquidation of the JPMorgan Collateral are expressly preserved, including, without limitation, JPMorgan's right to assert a deficiency claim in connection with the disposition of the JPMorgan Collateral and the Debtors' or the Committee's right to object thereto. For the avoidance of doubt, the reservation herein is intended to and shall preserve the parties' claims and defenses with respect to the method of disposition of the JPMorgan Collateral and the amount of JPMorgan's claim against the Debtors' estates (or the claims of the Debtors' estates against JPMorgan) in connection therewith. To the extent that such claims cannot be resolved consensually, the parties consent to the sole and exclusive jurisdiction of the Bankruptcy Court to resolve such claims.

## MEDIATION

13.     Pending the resolution of the REO Disputes (as defined herein), except with respect to any proceeds of sale of REO Properties that previously have been paid to JPMorgan, all proceeds of sale of REO Properties sold by the Debtors shall be deposited in the escrow account established pursuant to paragraph 10(iv) of the Order Pursuant To Sections 105 And 363 Of The Bankruptcy Code: (i) Authorizing The Sale Of JPM Non-Performing Loans And REO Property Free And Clear Of Liens, Claims, Encumbrances, And Other Interests; (ii) Authorizing And Approving Sale Agreement Thereto; (iii) Authorizing The Distribution of the Proceeds; And (iv) Granting Related Relief (the "**Escrow Account**").

14.     Within fifteen (15) calendar days following the execution of this Stipulation by the Debtors, Committee and JPMorgan (the "**Information Date**"), the Debtors

and/or the Committee shall use reasonable best efforts to deliver, to the extent such information is in their possession, custody or control, the following to JPMorgan:

   a.  A list identifying each property the Debtors assert became REO Property from and after ninety (90) days prior to the Petition Date, including:

   i.  Address and loan number;

   ii. The date of the transfer to the Debtors or any other entity in connection with the foreclosure or other method by which the Debtors assert the property became REO;

   iii. The name of the entity to which the property was transferred;

   iv. Identifying information as to the recording of the document by which title was conveyed to the Debtors or other such entity, by liber and page or such other designation as is applicable in the jurisdiction in which the property is located;

   v.  The date of any sale or liquidation of any REO Property and the amount received in such sale or liquidation;

   vi. The amount of any proceeds of the sale or liquidation of REO Property transferred upon or after the sale or liquidation and the party that received the proceeds, including, but not limited to, amounts conveyed to JPMorgan, any insurance proceeds collected, amounts paid to reimburse any servicing advances, fees, costs or expenses (including, without limitation, marketing-related

9

expenses), and any amounts retained by the Debtors (or any other party in title);

vii.  The amount of any servicing advances, fees, other costs, or expenses (including, without limitation, marketing-related expenses) paid in connection with any unsold REO Property; and

viii.  A copy of the most recent bank statement with respect to the Escrow Account;

b.  A draft complaint (the "**Complaint**") containing the causes of action that the Debtors and the Committee believe the estates may assert against JPMorgan in connection with the REO Properties and the estates' entitlement to the funds held in the Escrow Account including, without limitation, causes of action relating to the existence, validity, perfection and enforceability of any security interest of JPMorgan and causes of action pursuant to sections 506, 547, 549 and 550 of the Bankruptcy Code (collectively, the "**REO Disputes**").

15.  By the Information Date, JPMorgan shall deliver, to the extent such information is in its possession, custody or control, the following to the Debtors and the Committee:

a.  Reasonably detailed documentation describing all amounts transferred to, received, swept or retained by, JPMorgan on account of the JPMorgan Collateral for the period from and after ninety (90) days prior to the Petition Date, including, without limitation, the (i) transfer or receipt dates, (ii) amounts received or retained by JPMorgan, (iii)

the source of the payments or amounts received, and (iv) the detail

related to the JPMorgan Collateral that was sold, liquidated or

otherwise generated the amounts received by JPMorgan; and

b.  Reasonably detailed documentation describing the sale, liquidation,

preservation, and/or maintenance of the CTP Loans for the period

from and after the date the CTP Loan Stay Relief Order was entered

(January 4, 2008), including, without limitation, the (i) information

requested in subsection 14(a) above related to the CTP Loans, (ii)

current status of the CTP Loans, including, without limitation, current

UPB and detail as to which loans turned to permanent whole loans,

and (iii) disposition timeline and plan.

16.    The REO Disputes shall be submitted to mediation.  On or before

December 2, 2008, the parties shall advise the Bankruptcy Court that (a) they have agreed on a

mediator or (b) that they jointly request that the Bankruptcy Court designate a Bankruptcy Judge

from the United States Bankruptcy Court for the District of Delaware to serve as mediator.

17.    The Debtors and the Committee shall not file the Complaint until the

earlier of (i) the expiration of five (5) calendar days after the entry on the docket of a statement

by the mediator that the mediation has failed to produce a settlement, or (ii) December 15, 2008.

## GENERAL PROVISIONS

18.    This Stipulation is the result of a compromise among the parties and,

accordingly, shall not be deemed an admission or evidence in any pending or subsequent suit,

action, contested matter, proceeding or dispute of any liability, wrongdoing or obligation

whatsoever, including as to the merits of any claims, defenses, counterclaims or objections of

any party.

19.     The parties to this Stipulation represent and warrant that they are authorized to execute this Stipulation; that each has full power and authority to enter into and perform in accordance with the terms of this Stipulation; and that this Stipulation is duly executed and delivered and constitutes a valid and binding agreement in accordance with its terms; provided however, that this Stipulation, including the terms and obligations contained herein, is subject to approval by the Bankruptcy Court and the occurrence of the Stipulation Effective Date.  In the event the Bankruptcy Court does not approve the Stipulation on or before **November 26, 2008**, this Stipulation shall be null and void, and of no further force and effect.

20.     This Stipulation represents the entire agreement among the Parties hereto with respect to the subject matter hereof.  This Stipulation supersedes any and all prior and contemporaneous oral and written agreements and discussions among the parties hereto with respect to the subject matter of this Stipulation.

21.     The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Stipulation on motion of any party hereto.

22.     The dates and deadlines set forth in this Stipulation may be extended only by written agreement of each of the parties hereto or further order of the Bankruptcy Court.

23.     Any disputes or failure to perform the provision contained in the section of this stipulation entitled "Mediation" (paragraphs 13 through 17 hereof) shall not affect the remaining provisions of this stipulation and all such remaining provisions shall remain in full force and effect as if the Mediation provisions (paragraphs 13 through 17 hereof) were not a part of this stipulation.

24.     This Stipulation may be executed in one or more counterparts, each of which shall be deemed an original, but all of which, when taken together, shall be one and the same Stipulation.  A facsimile or .pdf of any party's signature to this Stipulation shall be treated

12

as an original for all purposes of this Stipulation and shall be fully effective to bind such party to the terms of this Stipulation.

STIPULATED AND AGREED:

Dated:  November 25, 2008

LANDIS RATH & COBB LLP

_____ / s/ Matthew B. McGuire
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, DE  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

-and-

LOCKE LORD BISSELL & LIDDELL LLP
Thomas H. Grace
W. Steven Bryant
600 Travis Street, Suite 3400
Houston, TX 77002
Telephone: (713) 226-1200
Facsimile: (713) 223-3717

*Counsel to JPMorgan Chase, National Association*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____/s/ Sean M. Beach_____
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Sean M. Beach (No. 4070)
Margaret B. Whiteman (No. 4652)
Patrick A. Jackson (No. 4976)
The Brandywine Bldg., 17th Floor
1000 West Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Counsel to Debtors and Debtors in Possession*


BIFFERATO GENTILOTTI LLC

_____/s/ Ian Connor Bifferato_____
Ian Connor Bifferato (No. 3273)
Garvan F. McDaniel (No. 4167)
800 N. King Street, Plaza Level
Wilmington, DE 19801
Telephone:  (302) 429-1900

-and-

HENNIGAN, BENNETT & DORMAN LLP
Bruce Bennett
Michael A. Morris
856 S. Figueroa Street, Suite 2900
Los Angeles, CA 90017
Telephone:  (213) 694-1200

*Special Conflicts Counsel for Official
Committee of Unsecured Creditors*

14