IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE ) | (Jointly Administered) |
| HOLDINGS, INC., et al. ) | Related Docket No. 5468, 5559 and 6580 |
| Debtors. ) | |
| ) | Hearing Date: December 10, 2008 @ 2:30 p.m. |

**SECOND SUPPLEMENT TO MOTION OF MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. AND MERSCORP,
INC. FOR ENTRY OF AN ORDER (I) COMPELLING ASSUMPTION
OR REJECTION OF DEBTORS' EXECUTORY CONTRACT,
OR MODIFYING THE AUTOMATIC STAY; AND (II) COMPELLING
PAYMENT OF ADMINISTRATIVE EXPENSES (the "MOTION") AND
RESPONSE TO DEBTORS' OBJECTION TO THE MOTION**

Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. (collectively, "MERS"), by and through their undersigned counsel, hereby submits this second supplement to its Motion of Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. for Entry of an Order (i) Compelling Assumption or Rejection of Debtors' Executory Contract or Modifying the Automatic Stay; and (ii) Compelling Payment of Administrative Expenses (the "Motion", D.I. 5468) and response to the Debtor's objection to the Motion (the "Objection", D.I. 6580) and represents as follows:

## BACKGROUND

### A. General Background and Jurisdiction

1. On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 cases are being jointly administered for procedural purposes only. The Debtors continue to operate their businesses as debtors-in-possession.

2. Prior to the Petition Date, the Debtors were in the business of originating and servicing mortgage loans and investing in mortgage-backed securities. Since the Petition Date, the Debtors have sold a substantial portion of their loan portfolio as well as their loan servicing business.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

### B. Procedural Background

4. MERS filed the Motion on August 18, 2008. Pursuant to the Motion, MERS seeks, among other relief, an order allowing and directing the payment of MERS's administrative expense claim pursuant to Section 503(b) of the Bankruptcy Code (the "Administrative Expense Claim').

5. MERS filed its Supplement to the Motion (the "Supplement") on August 29, 2008. Pursuant to the Supplement, MERS increased the amount of its Administrative Expense Claim request.

6. The Debtors filed the Objection on November 21, 2008. Pursuant to the Objection, the Debtors objected to the allowance of the Administrative Expense Claim. A hearing on the Administrative Expense Claim portion of the Motion is scheduled for December 10, 2008.[1]

### C. MERS' Business

7. MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper documentation. MERS acts as the

---

[1] MERS and the Debtors have been in negotiations in an attempt to resolve the remaining issues raised in the Motion. MERS hereby reserves and preserves all of its rights with respect to these remaining issues.

nominal mortgagee of record (or beneficiary under a deed of trust) on behalf of its members (each a "Member" and collectively, the "Members"). Each mortgage loan for which MERS serves as a mortgagee (or beneficiary) is registered and changes in servicing rights or beneficial ownership interest are tracked electronically on the MERS® System ("MERS Registered Loans"). MERS remains the nominal mortgagee on MERS Registered Loans as the servicing and/or beneficial rights are transferred among Members. When servicing and/or beneficial rights are transferred to Non-Members, an assignment is executed by MERS to the non-MERS member, the assignment is recorded in the applicable local county land records and the MERS Registered Loans are deactivated off the MERS® System. In addition to serving as the mortgagee of record, MERS also processes mail, facsimiles, telephone calls, and other communications related to the MERS Registered Loans. MERS forwards all communications it receives on to the Member listed as the current servicer on the MERS® System.

8. MERS is from time to time named as a defendant in lawsuits in its capacity as the nominal mortgagee or beneficiary for its Members' mortgages or deeds of trust. In these circumstances, MERS has had no involvement in the actions on which the lawsuits are based and MERS is a party solely because it is the nominal mortgagee or beneficiary for its members.

### D. The Relationship Between MERS and the Debtors[2]

9. On January 21, 2000, the Debtors became Members by filing an Application for Membership and paying a membership fee. The Debtors' membership in MERS is governed by the MERS Fee Schedule, the Terms and Conditions of Membership, the Rules of Membership, and the Procedures Manual. The Membership Application, MERS Fee Schedule, Terms and

---

2 A more fulsome description the relationship between the parties and their respective obligations is set forth in the Motion.

3

Conditions, Rules of Membership and the Procedures Manual are collectively referred to as the MERS Agreement. Copies of these documents are annexed to the Motion.

### E. **Post-Petition Relationship Between MERS and the Debtors**

10. Following the Petition Date, MERS continued to provide and the Debtors continued to accept services under the MERS Agreement. In fact, in Section 5.12 of the proposed Asset Purchase Agreement for the Servicing Platform, the Debtors represented that they would remain as members in good standing with MERS. Further, the Debtors' failure to remain in good standing would have been a breach under their debtor in possession financing facility.[3]

11. During the post-petition period, MERS has been involved as defendant in four lawsuits solely in its capacity of nominal mortgagee or beneficiary for the Debtors (the "Lawsuits"). During this period, MERS has incurred $55,976.57 in legal fees and expenses defending the Lawsuits. A list of these lawsuits, the associated fees and expenses and a summary of each lawsuit are set forth below:

| | |
|---|---|
| *Tilton Jack v. American Brokers Conduit, Golden First Mortgage Corp., Michael Goltche, American Home Mortgage Servicing, Mortgage Electronic Registration Systems, Inc. and XYZ-1 Corp. and XYZ-2 Corp.*, United States District Court, Eastern District of NY, Case No. CV 07 3088 | $36,130.15 |
| *Ace Inds., LLC v. Warren Sanford, William Hunter and Mortgage Electronic Registration Systems, Inc.*, Cir. Court for Wayne County, State of Michigan, Case No 06-631517 CH | $9,462.52 |
| *Terry Shinell v. Fidelity National Title Ins. Co, Guarantee Title Ins. Co., Phoenix Title, Inc., American Home Mortgage Acceptance, Inc. and Mortgage Electronic Registration Systems, Inc.*, Cir. Court of St. Louis County, State of Missouri, Case No. 05CC-004371 | $6,536.40 |
| *German and Gloria Pena v. Freedom Mortgage Team, Inc., American Home Mortgage. Corp., American Home Mortgage Servicing, Inc. and Mortgage Electronic Registration Systems, Inc.*, United States Dist. Court, Northern District of IL, Case No. 07CV552 | $3,847.50 |

---

[3] See Section 7.23 of Exhibit A to Final Order Pursuant to Section 105(a), 362 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (A) Approving Debtor-In-Possession Financing, (B) Granting Liens and Allowing Superpriority Administrative Claims, and (C) Granting Related Relief [Docket No. 555].

4

1. **The Tilton Jack Litigation**

12.     In the Tilton Jack Litigation, the plaintiff claims that the defendants (other than MERS) participated in predatory lending practices in the refinance of the plaintiff's home loan in violation of various federal and state statutes. The plaintiff seeks, among other relief, rescission of the transaction, a permanent injunction against the enforcement of the promissory note in excess of $356,000, a declaration that the mortgage is void and a termination of the security interest.

2. **The Ace Industries Litigation**

13.     In the Ace Industries Litigation, the plaintiff alleges that the property at issue was transferred and purchased outside the chain of title in violation of its ownership rights. The putative purchaser (one of the defendants), who allegedly purchased the property outside the chain of title, borrowed over $53,000 from two different Debtors to finance the purchase and granted mortgages to MERS as nominee for the respective Debtors. The Debtors foreclosed on the property, in MERS' name, and purchased the property at the foreclosure sale. Accordingly, MERS held title to the property for the benefit of the Debtors. The plaintiff sought to quiet title in the property and asked the court to set aside and extinguish the foreclosure sale, which would have divested the Debtors of ownership of the property.

3. **The Terry Shinell Litigation**

14.     In the Shinell Litigation, the plaintiff borrowed $350,000 from one of the Debtors to refinance his existing home loan. The plaintiff alleges that the funds borrowed from the Debtor for the refinancing were never paid to the original lender, leaving the plaintiff indebted on two home loans. The plaintiff seeks, among other relief, rescission of the loan transaction with the Debtors and an injunction enjoining the Debtors from seeking payment or foreclosure.

### 4. The German and Gloria Pena Litigation

15. In the Pena litigation, the plaintiffs allege that the lenders misrepresented the terms of a home loan and discriminated against them in violation of federal statutes. Among the relief sought is rescission of the loan transaction with one of the Debtors.

### ARGUMENT

### A. MERS is Entitled to an Allowed Administrative Expense Claim Pursuant to Section 503(b)(1) of the Bankruptcy Code for Reimbursement of the Legal Fees and Expenses It Incurred in Defending the Lawsuits[4]

16. A debtor that is a party to an executory contract must pay for the reasonable value of post-petition services performed by the non-debtor party pending a decision to assume or reject that executory contract. See N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("If the debtor-in-possession elects to continue to receive benefits from the other party to an executory contract pending a decision to reject or assume the contract, the debtor-in-possession is obligated to pay for the reasonable value of those services, which, depending on the circumstances of a particular contract, may be what is specified in the contract.") (internal citation omitted); cf. Continental Energy Assocs. L.P. v. Hazleton Fuel Mgmt. Co. (In re Continental Energy Assocs.), 178 B.R. 405, 408 (Bankr. M.D. Pa. 1995) ("there is ample authority for the proposition that, pending assumption or rejection, the Debtor may elect to enforce the contract thereby being required to pay for the reasonable value of the material or services supplied.") (citing Bildisco). See In re Globe Metallurgical, Inc., 312 B.R. 34, 43, (S.D.N.Y. 2004) (finding that a debtor-in-possession is obligated to pay the reasonable value of the services it receives from a counter-party to an executory contract pending assumption or

---

[4] In the Motion, MERS sought an allowed Administrative Expense Claim for fees due under the MERS Agreement not related to the Lawsuits but those issues have been resolved.

6

rejection of the contract). "The debtor in possession's liability for the reasonable value of any benefits conferred stems from § 503(b) which allows administrative expenses for the 'actual, necessary costs and expenses of preserving the estate.'" Bildisco, 465 U.S. at 540, FN 8 (Brennan, J., concurring in part and dissenting in part).

17. Here, it is beyond dispute that, while they have not chosen to either assume or reject the MERS Agreement, the Debtors have chosen to accept services from MERS under that agreement and have benefited from those services since the Petition Date. In general, the services provided by MERS – processing mail received on mortgage loans serviced by Debtors and forwarding the mail to Debtors, processing transactions to reflect the transfer and sales of Debtors' mortgage loans, acting as nominal mortgagee, and tracking the mortgage loans transaction details on the MERS® System – have contributed to the preservation of the estates by allowing the Debtors to maintain their remaining servicing business and loan portfolio pending any further dispositions of their business and assets.

18. The Debtors have particularly benefit from MERS' defense of the Lawsuits. The Lawsuits are not situations where the plaintiffs merely seek money damages that would only be entitled to treatment as pre-petition general unsecured claims. Rather, in each of the Lawsuits, the remedies sought included avoidance or rescission of the transaction in question. If successful, the result would be that the Debtors would have to forfeit both the mortgages and the right to receive the loan proceeds. The Debtors' rights with respect to these transactions go to the very core of the Debtors' businesses and, accordingly, are valuable assets of the Debtors' estates. Without MERS' actions in defending the Lawsuits, these assets would have been lost.

19. Moreover, with knowledge of MERS' actions in defending their valuable assets in the ongoing Lawsuits, the Debtors chose to accept the benefits of MERS' actions. Indeed, given

that each of the Lawsuits directly implicated valuable property rights of the Debtors, the Debtors could have filed motions with this Court to enforce the automatic stay with respect to the Lawsuits. Instead, they made the active decision to allow MERS to continue to protect their valuable property rights. See In re Adelphia Business Solutions, Inc., 296 B.R. 656, 665 (Bankr. S.D.N.Y. 2003) (finding that a debtor-in-possession induces performance from a creditor when it knowingly accepts post-petition services from that creditor for purposes of allowance of an administrative expense claim); In re Patient Education Media, Inc., 221 B.R. 97, 102 (Bankr. S.D.N.Y 1998) (finding that debtor-in-possession's knowing and willing use of a creditors' property constituted a transaction between the debtor-in-possession and the creditor for purposes of allowance of an administrative expense claim), In re Native American Systems, Inc. 351 B.R. 135, 141 (B.A.P. 10th Cir. 2006) (finding that debtor-in-possession's acquiescence in creditor's performance constituted inducement). Accordingly, the Debtors should not now be permitted to disavow the benefits MERS provided by refusing to pay MERS for the reasonable value of its services in protecting these valuable assets of the Debtors' estates. See In re Globe Metallurgical, Inc., 312 B.R. at 40 ("[t]he focal point of the allowance of a priority is to prevent unjust enrichment of the estate . . . .").

20. The cases that the Debtors rely on in the Objection regarding pre-petition agreements for indemnification are inapposite to this case. Unlike this situation, none of those cases involved any post-petition transactions or interactions between the claimants and the debtors. More importantly, none of the claimants provided any benefit to the debtors or their estates. The fact that the MERS Agreement contains an indemnification provision is not dispositive. Rather, MERS is independently entitled to an administrative expense claim because the Debtors actively accepted the benefits provided by MERS in defending the lawsuits.

### B. MERS is Entitled to an Allowed Administrative Expense Claim Pursuant to Section 503(b)(3)(D) of the Bankruptcy Code for Making A Substantial Contribution to the Debtors' Chapter 11 Cases

21.    Pursuant to Section 503(b)(3)(D) of the Bankruptcy Code, a creditor is entitled to an allowed administrative expense claim for the actual necessary expenses "in making a substantial contribution in a case under chapter . . . 11 lf this title." 11 U.S.C. § 503(b(3)(D).

22.    As set forth above, MERS' actions in defending the Lawsuits provided substantial benefit to the Debtors' estates. MERS was the only party in the Lawsuits defending the Debtors rights to the loans and mortgages at issue. Accordingly, but for MERS's efforts, the Debtors likely would have forfeited those mortgages and the rights to receive the loan proceeds.

### CONCLUSION

WHEREFORE, for the foregoing reasons as well as the reasons set forth in the Motion and the Supplement, MERS respectfully requests that this Court enter an order (i) granting MERS an allowed Administrative Expense Claim pursuant to Section 503(b) of the Bankruptcy Code in the amount of $55,976.57, (ii) requiring the Debtors to pay to MERS the allowed Administrative Expense Claims within seven days of the date of this Order and (iii) granting such other and further relief as this Court may deem just and proper.

Dated: December 1, 2008
      Wilmington, Delaware

                                        SULLIVAN • HAZELTINE • ALLINSON LLC

                                        */s/ William A. Hazeltine*
                                        William A. Hazeltine (Bar ID 3294)
                                        4 East 8th Street, Suite 400
                                        Wilmington, DE 19801
                                        Phone: 302-428-8191
                                        Fax: 302-428-8195

                                        *Attorneys for Mortgage Electronic Registration*
                                        *Systems, Inc. and MERSCORP, Inc.*

## CERTIFICATE OF SERVICE

I, William A. Hazeltine, do hereby certify I am not less than 18 years of age and that on this 1st day of November 2008, I caused copies of the within *Second Supplement to Motion of Mortgage Electronic Registration Systems, Inc. and MERSCorp, Inc. for Entry of an Order (I) Compelling Assumption or Rejection of Debtors' Executory Contract, or Modifying the Automatic Stay; and (II) Compelling Payment of Administrative Expenses (the "Motion") and Response to Debtors' Objection to the Motion* to be served upon the parties listed below via hand delivery.

Margaret B. Whiteman Greacher, Esq.
Matthew Barry Lunn
Young, Conaway, Stargatt & Taylor
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19899

Under penalty of perjury, I declare the foregoing to be true and correct.

*December 1, 2008*              /s/ *William A. Hazeltine*
Date                             William A. Hazeltine