**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered |
| Natixis Real Estate Capital, Inc. f/k/a IXIS REAL ESTATE CAPITAL, INC.,<br><br>Plaintiff,<br>v.<br><br>AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE SERVICING INC., AMERICAN HOME MORTGAGE ACCEPTANCE INC., AMERICAN HOME MORTGAGE INVESTMENT CORP, and AMERICAN HOME MORTGAGE HOLDINGS, INC.,<br><br>Defendants. | Adversary No. 08-50634<br><br>**Ref Docket No.: 4010**<br><br>**Objection Deadline: December 15, 2008 at 4:00 p.m. (ET)**<br>**Hearing Date: December 22, 2008 at 11:00 a.m. (ET)** |

**DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER APPROVING AND AUTHORIZING THE SETTLEMENT AGREEMENT BY AND BETWEEN THE DEBTORS AND NATIXIS REAL ESTATE CAPITAL, INC. f/k/a IXIS REAL ESTATE CAPITAL, INC.**

---

1 The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively with AHM Holdings, the "Debtors"), by this motion (the "Motion"), seek entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and section 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") approving the settlement agreement (the "Settlement Agreement") between the Debtors and Natixis Real Estate Capital Inc., f/k/a IXIS Real Estate Capital Inc. ("Natixis" and together with the Debtors, the "Parties") resolving adversary proceeding (08-50634) (the "Adversary Proceeding"). A copy of the Settlement Agreement is attached as Exhibit 1 to the form of order annexed hereto as Exhibit A. In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested is section 105(a) of the Bankruptcy Code along with Bankruptcy Rule 9019(a).

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware (the "Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

5. In the weeks prior to the Petition Date, an unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening the company's continued viability.

6. The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business. Unfortunately, in the short time available and given the severe financial pressures facing them, the Debtors were unsuccessful in their efforts to resolve their liquidity crisis outside the bankruptcy forum and, accordingly, filed chapter 11 petitions to preserve and maximize the value of their estates through orderly sales of their assets.

## RELEVANT BACKGROUND

7. Prior to the Petition date, Natixis and certain of the Debtors had entered into the following agreements:

(i) Third Amended and Restated Master Repurchase Agreement ("Repurchase Agreement") dated as of July 15, 2005, among Natixis, as Buyer and American Home Mortgage Corp, American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc., American Home Mortgage

Holdings, Inc., and American Home Mortgage Servicing, Inc. f/k/a Columbia National, Inc. (collectively, the "Debtors-Sellers"), as Seller; and

(ii) Third Amended and Restated Custodial and Disbursement Agreement ("Custodial Agreement") dated as of January 29, 2007, among Natixis, as Buyer, Debtors-Sellers, as Seller, and Deutsche Bank National Trust Company as Custodian and Disbursement Agent.

8. Pursuant to the Repurchase Agreement, Natixis purchased certain mortgage loans from the Debtors-Sellers after which the Debtors-Sellers would repurchase such loans at an agreed upon date and price.

9. On May 9, 2008, Natixis filed a Complaint alleging, *inter alia*, that the Debtors had breached the Repurchase Agreement [Docket No. 4010](the "Complaint"). In the Complaint, Natixis seeks, among other relief, declaratory relief, injunctive relief, and monetary damages.

10. Since the filing of the Complaint, the Debtors and Natixis have engaged in extensive negotiations in an attempt to settle and resolve the Complaint without the necessity of costly and time-consuming litigation between the Parties. As a result, the Parties have reached an agreement the terms of which are embodied in the executed Settlement Agreement attached hereto.

**SUMMARY OF THE SETTLEMENT AGREEMENT**

11. Natixis and the Debtors believe it is in their respective best interests to compromise and settle, without further litigation, the Complaint on the terms and subject to the conditions set forth in the Settlement Agreement. The effectiveness of the Settlement Agreement is conditioned upon approval of the Bankruptcy Court. The principal terms of the Settlement Agreement are as follows:[2]

[2] The summary of the Settlement Agreement is qualified in its entirety by the Settlement Agreement. If there are any inconsistencies between the summary contained herein and the Settlement Agreement, the Settlement

a. As authorized by the Court, the Debtors will pay Natixis $275,000.00 (the "Settlement Payment") within ten (10) days of the entry of an order approving this Settlement Agreement. The dispersed funds are to be allocated to the repurchase of mortgage loans for which the Debtors received payment from the Take-Out Investors[3] as follows: (i) $220,944.00 shall be allocated to the repurchase of AHM Loan No. 1579356 (the "Chandler Loan"); (ii) $5,000.00 shall be allocated to the repurchase of AHM Loan No. 1759239 (the "Butler Loan"); and (iii) the remaining $49,056.00 shall be allocated to the repurchase of AHM Loan No. 1822647 (the "Kirkwold Loan");

b. Claim No. 8918 filed by Natixis on January 11, 2008 will have an allowed general unsecured claim in the amount of $180,000.00. Claim Nos. 8919, 8920, 8921, and 8922 shall be expunged in their entirety;

c. The allowance of Claim No. 8918 filed by Natixis on January 11, 2008, shall have no affect on any claims that are preserved under paragraph 11(j) hereof;

d. All of Natixis' right, title and interest in AHM Loan No. 1738521 shall be abandoned;

e. The Debtors have not received any funds with respect to AHM Loan Nos. 1773144, 1675872, 1694500, 1738521, 1759239, 1579356, or 1805949 from the Take-Out Investors except for the amounts that are being paid to Natixis as set fourth in paragraph 11(a) above;

---

Agreement shall control. Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Settlement Agreement.

[3] All Capitalized terms not otherwise defined shall have the meaning prescribed in the Complaint.

f. The Debtors have confirmed with American Home Mortgage Servicing, Inc. ("AHMS") that AHMS is not holding any funds with respect to AHM Loan Nos. 1773144, 1675872, 1694500, 1738521, 1759239, 1579356 or 1805949;

g. The Debtors agree to execute letters acknowledging that any payments with respect to AHM Loan Nos. 1773144, 1675872, 1694500, 1738521, 1822647 or 1805949 be directed to Natixis and provide reasonable assistance to Natixis in obtaining requisite Orders of the Court for Natixis to collect unpaid amounts from the Take-Out Investors or any other third parties that received proceeds of the Unreleased Loans;

h. Upon Natixis' receipt of the Settlement Payment referenced in paragraph 11(a) above, Natixis will release all liens, claims, and encumbrances on the Chandler Loan;

i. Debtors release all claims to and acknowledge that Natixis owns all Unreleased Loans, with the exception of AHM Loan No. 1738521 which is abandoned under this Settlement Agreement, that have not been paid in full by the Take-Out Investors or from the Debtors;

j. Except as to (i) the full and faithful performance of the Settlement Agreement, (ii) any claims or causes of action the Debtors may have related to Natixis improperly setting a Purchase Price (as defined in the Repurchase Agreement) or Margin Base under section 4.a. of the Repurchase Agreement within the period that is 120 days prior to the Petition Date, (iii) claims or causes of action relating to any transfers made to Natixis based upon Natixis improperly

setting a Purchase Price (as defined in the Repurchase Agreement) or Margin Base under section 4.a. of the Repurchase Agreement within the period that is 120 days prior to the Petition Date, (iv) any claims or causes of action under 11 U.S.C. 548(a)(1)(A) or similar state-law, and (v) the general unsecured claims granted in paragraph 11(b) hereof, and upon Natixis' receipt of the Settlement Payment referenced in paragraph 11(a) above, Natixis, and its respective representatives, heirs, successors and assignees on the one hand, and the Debtors and their affiliates, including non-debtor affiliates, and their officers, directors, agents, representatives, attorneys, employees, heirs, successors and assignees, on the other hand, do, subject however to paragraph 11(j) hereof, hereby completely release and forever discharge one another and their past and present affiliates, agents, employees, attorneys, successors and assigns from all claims, rights demands, actions, obligations, liabilities, attorneys' fee claims and causes of action of any and every kind, nature and character whatsoever, known or unknown, which the parties may now have or have ever had against one another, past, current, and future;

k. Nothing in this agreement shall affect Natixis' rights with respect to the Investors and any party that has or may assert an interest in or received any funds with respect to the Unreleased Loans; and

l. Upon the Order approving the Settlement Agreement becoming a final Order and upon Natixis' receipt of the funds referenced in paragraph 11(a) above, Natixis shall file a Notice of Voluntary Dismissal of the Adversary Proceeding with prejudice in the form of the Notice attached to the proposed

Order as Exhibit 2.

**RELIEF REQUESTED**

12. By this Motion, the Debtors are seeking (1) approval of the Settlement Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019; and (2) authority to pay the Settlement Amount from account no. 381528 at Deutsche Bank National Trust Company. The Debtors and Natixis have weighed the costs and risks associated with the continued litigation of the Adversary Proceeding against the compromises contained within the Settlement Agreement and have concluded that it is in their respective best interests to compromise and settle the matter pursuant to the terms of the Settlement Agreement without further litigation.

**BASIS FOR RELIEF REQUESTED**

13. Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transportation Co., 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee for Independent Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

14. In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise itself of all facts necessary to form an intelligent and objective opinion

of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

15. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

16. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible

compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

17. The Debtors respectfully request that the Court approve the Settlement Agreement because the Settlement Agreement lies well above the lowest point in the range of reasonable potential litigation possibilities. In addition, each of the applicable Martin factors weighs in favor of approving the Settlement Agreement. Accordingly, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

A. **The Probability of Success in Litigation**

18. As with all litigation, the probability that the Debtors will prevail in litigating the Complaint is uncertain. Absent the Settlement Agreement, the disputes between the Debtors and Natixis would have to be litigated before the Court with no assurances of a favorable outcome. The resolution of these disputes with Natixis under the terms of the Settlement Agreement, without the need for further litigation, is a favorable outcome because it will save the Debtors significant time and expense in the litigation of the Complaint.

B. **The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending it**

19. The Settlement Agreement satisfies the second factor in Martin's four-factor test largely for the reasons set forth above in the discussion of Debtors' probability of success in litigation. Litigation over the Complaint and whether or not Debtors breached the agreements at issue and, if so, determining the appropriate remedies, would involve complex legal issues and a potentially lengthy proceeding, which would be expensive for the estates and inconvenient for the Parties.

C. **The Paramount Interest of the Creditors**

20. Entry into the Settlement Agreement serves the paramount interest of

creditors of the Debtors. The Settlement Agreement's resolution of the Complaint represents a savings for the creditors by obviating further litigation, thereby saving the expenses attendant to such litigation. In addition, approval of the Settlement Agreement will allow the Debtors to focus on prosecuting these bankruptcy cases without burdening the Debtors' estates with additional and unnecessary administrative expenses. Therefore, the third factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the Settlement Agreement.

D. **The Likely Difficulties in Collection**

21. Finally, the fourth factor enunciated by the Third Circuit in Martin is not applicable under these circumstances.

**Summary**

22. In light of the above, the Debtors believe the Settlement Agreement is fair, equitable, and in the best interests of the their creditors and their estates, represents an exercise of their sound business judgment, and should be approved pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

**NOTICE**

23. Notice of this Motion will be provided to (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel to Bank of America, N.A.; (iv) the Debtors' postpetition lender; (v) counsel to Natixis; (vi) counsel to CDA; and (vii) those parties who have requested notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, Debtors submits that no other or further notice is required.

**NO PREVIOUS REQUEST**

24. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court issue and enter an Order, in the form attached hereto as Exhibit A, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 (i) approving the Settlement Agreement, and (ii) granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
December 2, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sharon M. Zieg

James L. Patton, Jr. (No. 2202)
John T. Dorsey (No. 2988 )
Sharon M. Zieg (No. 4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession