IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,<br><br>Debtors. | : Chapter 11<br>:<br>: No. 07-11047 (CSS)<br>:<br>: Jointly Administered<br>:<br>: Ref. Docket Nos. 6223, 6587, 6592 |

**REPLY OF AMERICAN LIEN FUND, L.P.
IN SUPPORT OF ITS MOTION PURSUANT TO 11 U.S.C. § 362(d)
TO ANNUL AUTOMATIC STAY AS TO TAX SALE AND
TO LIFT STAY AS TO COUNTERCLAIMS**

The Objection and Response filed by Debtors and American Home Mortgage Servicing, Inc. ("AHMSI"), respectively, in opposition to American Lien Fund, L.P.'s ("American Lien") Motion Pursuant to 11 U.S.C. § 362(d) to Annul Automatic Stay as to Tax Sale and to Lift Stay as to Counterclaims (the "Motion") miss the mark in several respects.

1. <u>The Evidence Shows that AHMSV Was Given Valid and Effective Notice of the Tax Sale</u>

Both the Debtors and AHMSI contend that American Lien failed to present evidence that debtor AHM SV, Inc. ("AHMSV"), which purportedly owned the property located at 138 Little Street, Atlanta, Fulton County, Georgia (the "Property") when it was sold at the September 4, 2007 tax sale (the "Tax Sale"), received actual notice of the Tax Sale. However, their argument ignores the fact that the 20-Day and 10-Day Notices[1] issued by the Sheriff of Fulton County, which disclose in bold print that the Tax Sale will take place on September 4, 2007, begin by stating: "Notice is hereby given to **AHM Mortgage…**" and "to

---

[1] See Exhibits 3 and 4 attached to the Motion.

**MERS**....”[2] (emphasis in original). Thus, it is ludicrous for them to assert that there is "no indication that the notices were sent to AHM Mortgage." See AHMSI's Response at ¶ 4.

Moreover, the Sheriff provided a notarized Entry of Service[3] in which he stated under oath that, on June 25, 2008, he posted a levy notice at the Property and mailed that notice directly to the Property. That levy notice (a copy of which is attached hereto as Exhibit A) clearly states that the 2002 taxes on the Property remain unpaid, a tax execution has been issued on the Property, and the Property would be sold at a public tax sale on September 4, 2007 unless all outstanding amounts were paid. As such, the contention by Debtors and AHMSI that AHMSV was not provided with prior notice of the Tax Sale cannot be given any credence, as AHMSV was the owner of the Property when the levy notice was posted and mailed there on June 25, 2008, over two months before the Tax Sale.

Debtors and AHMSI erroneously ague that the Motion is unsustainable unless American Lien can prove that AHMSV received actual notice of the Tax Sale. Tellingly, Debtors and AHMSI do **not** deny that AHMSV received actual notice. Regardless, under applicable Georgia law, notice of tax levies, executions, and sales can be either express, constructive[4] or implied.[5] Harper v. Foxworthy, Inc., 562

---

[2]   MERS was AHMSV's agent and nominee for purposes of its dealings with the Property.

[3]   See Exhibit 2 attached to the Motion.

[4]   Constructive notice is "information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty

2

S.E.2d 736, 739 (Ga. App. 2002) (citing <u>Hamilton v. Edwards</u>, 267 S.E.2d 246 (Ga. 1980)). Thus, it is of no moment whether AHMSV received any of the Sheriff's notices and, thus, had actual notice. AHMSV is, as a matter of Georgia law, charged with constructive and/or implied notice of the Tax Sale by virtue of the fact that it owned the property when those notices were mailed and posted there. See <u>Harper</u>, 562 S.E.2d at 739-740 (finding that notices of levy and tax sale mailed to and posted at property properly gave taxpayer constructive or implied notice, and that actual notice was not required); <u>Tharp v. Vesta Holdings I, LLC</u>, 625 S.E.2d 46 (Ga. App. 2005) (same).

2. <u>Debtors and AHMSI Acted Inequitably and/or Unreasonably By Failing to Disclose, Despite their Prior Knowledge of the Tax Sale, Debtors' Bankruptcy Filing and By Subsequently Bringing Suit Against American Lien to Undo the Tax Sale.</u>

The Court of Appeals for the Third Circuit found in <u>In re Myers</u> that, when balancing the equities to determine whether cause exists to annul the automatic stay, one factor to be considered is "whether the debtor engaged in **inequitable, unreasonable,** or dishonest behavior." 491 F.3d 120, 129 (3d Cir. 2007) (emphasis added).[6] As such, Debtors'

---

inquire into it." <u>Harper v. Foxworthy, Inc.</u>, 562 S.E.2d 736, 739 (Ga. App. 2002) (quoting <u>Hamilton v. Edwards</u>, 267 S.E.2d 246 (Ga. 1980)).

[5] Implied notice is defined as "that notice which is inferred or imputed to a party by reason of his knowledge of facts or circumstances collateral to the main fact, of such character to put him upon inquiry, and which, in inquiry were followed up with due diligence, would lead him directly to the knowledge of the main fact." <u>Harper v. Foxworthy, Inc.</u>, 562 S.E.2d 736, 739 (Ga. App. 2002) (quoting <u>Hamilton v. Edwards</u>, 267 S.E.2d 246 (Ga. 1980)).

[6] In their Objection, Debtors argue at length that the automatic stay should not be annulled because the Tax Sale was procedurally invalid under Georgia law. However, the procedural validity of the Tax Sale is not relevant to the "balancing of the equities" test this Court must apply here to determine whether cause exists to annul the

3

assertion that the automatic stay should not be annulled "in the absence of any bad act or abuse by the Debtors"[7] clearly is a misstatement of law.[8] See In re Howard, 391 B.R. 511 (Bkrtcy. N.D. Ga. 2008) (finding that equities balanced in favor of allowing annulment of stay even though non-movant did not act in bad faith or abusively).

Although Debtors did not necessarily act inequitably and/or unreasonably by failing to satisfy the unpaid property taxes, they did act inequitably and/or unreasonably by remaining utterly silent about their bankruptcy filing, despite their prior knowledge of the Tax Sale, as American Lien innocently invested its valuable time and resources in purchasing the Property at the Tax Sale.  Debtors compounded that unreasonable behavior by inequitably continuing to remain silent about their bankruptcy subsequent to the Tax Sale, even after their purported transferee of the Property, AHMSI, had filed suit in Georgia state court against American Lien, which would not

---

automatic stay. See Myers, 491 F.3d at 129 (finding that, when balancing the equities in context of annulling stay, courts must consider whether creditor was aware of the bankruptcy filing or encouraged its violation, whether debtor engaged in inequitable, unreasonable, or dishonest behavior, and prejudice to creditor). Any technical or procedural defects that AHMSI or Debtors believe were present in the Tax Sale can and should be addressed in the Georgia state court action, which AHMSI initiated (after AHSMV filed for bankruptcy and failed to protect its interests at the Tax Sale) for that very purpose.

[7]   See Debtors' Objection at ¶ 15.

[8]   Notwithstanding Debtors' misstatement of law, American Lien contends that Debtors and AHMSI acted abusively by remaining silent about Debtors' bankruptcy filing despite having prior knowledge of the Tax Sale, subsequently filing a lawsuit in Georgia state court to undo the Tax Sale, and then attempting to utilize the automatic stay as both a shield in this proceeding and a sword in the Georgia state court action to prevent American Lien from asserting its counterclaims.

4

have expended additional funds to defend that suit had it known sooner that AHSMI claimed the protections of the automatic stay. See In re Howard, 391 B.R. 511 (concluding for purposes of annulling stay that non-movant acted inequitably or unreasonably because it knowingly "fail[ed] to protect its own legal and financial stake" in property sold at post-petition tax sale).

Debtors and AHMSI attempt to deflect attention from their own conduct by suggesting that American Lien's current predicament is somehow the result of its own failure to discover prior to the Tax Sale that AHMSV had foreclosed on the Property or filed for bankruptcy. However, it is not incumbent upon a purchaser at a tax sale to validate the procedure by which the property was placed for sale prior to bidding on it: "a purchaser at a tax sale is entitled to presume that the sheriff has performed the necessary steps to make the sale valid." Harper, 562 S.E.2d at 740; see also Ga. Code § 9-13-168. To find otherwise would frustrate the integrity and finality of tax sales and tax deeds as well as the reasonable expectations of innocent purchasers, all of which are important interests in Georgia, especially when, as here, the parties seeking to undo the tax sale have slept on their rights. See National Tax Funding, L.P. v. Harpagon Company, LLC, 586 S.E.2d 235, 239-40 (Ga. 2003).

In addition, because American Lien undisputedly had no knowledge of AHMSV's bankruptcy filing, American Lien had no reason to care whether AHMSV, a prior titleholder or some total stranger owned the Property at the time of the Tax Sale, so long as the predicate on which the Tax Sale was based (i.e., that the 2002 property taxes

remained unpaid) continued to exist. The fact is that those taxes were not paid as of the date of the Tax Sale.[9]

For the reasons set forth above and in its Motion, American Lien respectfully requests that the Court grant the Motion.

Respectfully submitted,

/s/ John C. Phillips, Jr.
John C. Phillips, Jr. (#110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
Tel. (302) 655-4200
Fax (302) 655-4210
Attorneys for Movant
American Lien Fund, L.P.

Dated: December 5, 2008

---

[9] Debtors and AHMSI suggest – without citing any authority in support – that American Lien had an obligation to conduct a title search before the Tax Sale to determine if the owner of the Property was in bankruptcy. See Debtors' Objection at ¶ 16; AHMSI's Response at ¶ 6. However, it is neither required under Georgia law nor customary in Fulton County, Georgia for a prospective purchaser at a tax sale to run a title search on the subject property before purchasing it at the tax sale. See supplemental Affidavit of Bradley A. Hutchins, attached hereto as Exhibit B, at ¶ 2. Moreover, even if a prospective purchaser elects to conduct a title search prior to a tax sale, the Georgia Title Standards do not require that such a search include bankruptcy filings, and title examiners in Georgia generally do not check bankruptcy filings as part of a standard title search in the absence of a special request to do so. Id. at ¶ 3.