## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------ x
                                         :
In re:                                   :   Chapter 11
                                         :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,   :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,¹         :
                                         :   Jointly Administered
                                         :
         Debtors.                        :   Response Deadline: February 10, 2009 at 4:00 p.m. (ET)
                                         :   Hearing Date: February 17, 2009 at 10:30 a.m. (ET)
------------------------------------------------------------------ x
```

### DEBTORS' OBJECTION TO CLAIMS OF CALYON NEW YORK BRANCH AS ADMINISTRATIVE AGENT PURSUANT TO REPURCHASE AGREEMENT

The above-captioned debtors and debtors in possession (the "Debtors") hereby

object (the "Objection") to claims numbered 8044, 8045, 8046, and 8047 (the "Repurchase

Claims") filed by Calyon New York Branch as Administrative Agent Pursuant to Repurchase

Agreement ("Calyon") and request the entry of an order disallowing and expunging each of the

Repurchase Claims or, in the alternative, reducing the Repurchase Claims in an amount to be

determined by this Court. In support of this Objection, the Debtors respectfully represent as

follows:

### JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in

this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought

---

¹       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The mailing address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

herein are sections 502(b) and 562 of the title 11 of the United States Code (the "Bankruptcy Code") and Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

2.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Creditors Committee"). On October 21, 2008, the United States Trustee for the District of Delaware appointed an Official Committee of Borrowers (the "Borrowers Committee"). No trustee or examiner has been appointed.

5.      By Order entered on December 1, 2008, (the "Disclosure Statement Order"), this Court approved the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to The Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of November 25, 2008 (the "Disclosure Statement"). A hearing to consider confirmation of The Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of November 25, 2008 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan") is currently scheduled for January 28, 2009 at 10:00 a.m.

## RELEVANT BACKGROUND

**A.    The Repurchase Agreement**

6.    Certain of the Debtors and Calyon are parties to that certain Repurchase Agreement dated as of November 21, 2006 (the "Repurchase Agreement"). The Repurchase Agreement provides for, among other things, the transfer of one or more mortgage loans from the Debtors to security issuers and banks (hereinafter collectively, the "Purchasers") in exchange for the transfer of funds from Purchasers to the Debtors. The Repurchase Agreement further provides that the Purchasers will return the mortgage loans or interests in the mortgage loans to the Debtors not later than 180 days after the initial transfer in exchange for the transfer of funds from the Debtors to the Purchasers.

7.    The purpose of the Repurchase Agreement was to provide funds for the origination of mortgage loans. The funds to origination the mortgage loans were transferred by the Purchasers to the Debtors. Immediately upon origination, the mortgage loans were transferred to the Purchasers on an interim basis while the Debtors attempted to arrange for their final disposition, either by sale to a private investor on a whole loan basis or to a securitization trust. Upon final disposition of the mortgage loans, the loans were repurchased by the Debtors in exchange for a payment to the Purchasers – consisting of the original purchase price paid to the Debtors plus the "Price Differential." The Price Differential was the applicable *per diem* "Pricing Rate" multiplied by the number of days the mortgage loans were in the hands of the Purchaser. Upon repurchase by the Debtors, the mortgage loans were immediately transferred by the Debtors to the ultimate purchaser, i.e., either the private investor or securitization trust.

8.    Prior to the Petition Date, mortgage loans sold to the Purchasers under the Repurchase Agreement generally remained in the possession of the Purchasers for approximately

30 days before they were repurchased by the Debtors. As of the Petition Date, the outstanding

repurchase price for mortgage loans in the Purchasers' possession under the Repurchase

Agreement was approximately $1.2 billion.

9.     The Repurchase Agreement also provides for the servicing of the

mortgage loans subject to the Repurchase Agreement. Here, the mortgage loans were sold to

Purchasers on a servicing retained basis, i.e., the Debtors retained the right to designate the

servicer under the loans. AHM Servicing was designated servicers under the mortgage loans

under the Repurchase Agreement and thus, was entitled to the monthly servicing fee.

**B.      Defaults Under the Repurchase Agreement and
         Acceleration and Termination of Thereof**

10.     As a result of the disruption in the credit markets and the deterioration of

the Debtors' business in the weeks prior to the Petition Date, on August 1, 2007 (the

"Acceleration Date"), Calyon sent the Debtors a letter captioned as a "Notice of Event of

Default," a copy of which is attached hereto as Exhibit A (the "Default Letter"), in which Calyon

(i) asserted that the Debtors were in default under the Repurchase Agreement, (ii) accelerated the

obligations under the Repurchase Agreement, (iii) demanded that the Debtors immediately

repurchase all of the mortgage loans in the Purchasers' possession under the Repurchase

Agreement (the "Calyon Loan Portfolio"), and (iv) terminated the Repurchase Agreement. The

Debtors did not respond to the Default Letter or fulfill any of Calyon's demands.

11.     On the same date, Calyon sent the Debtors a separate letter captioned as a

"Notice of Event of Default to Servicer," a copy of which is attached hereto as Exhibit B (the

"Servicing Default Letter") in which Calyon (i) asserted that the Debtors were in default under

the Repurchase Agreement, (ii) accelerated the obligations under the Repurchase Agreement,

(iii) demanded that the Debtors immediately repurchase all of the Calyon Loan Portfolio, (iv)

terminated the Repurchase Agreement, and (v) designated JPMorgan Chase Bank, N.A.

("Chase") as a successor servicer.  On the same day, Calyon sent a third letter captioned as a

"Notice of Change of Servicer," a copy of which is attached hereto as Exhibit C, to Deutsche

Bank National Trust Company ("DBNTC"), as Custodian under the Repurchase Agreement, (i)

advising DBNTC of the requested change in servicer, and (ii) identifying AHM Servicing as the

interim servicer with respect to most of the mortgage loans under the Calyon Loan Portfolio.

   12. On August 6, 2007, the Debtors filed for relief under chapter 11 of the

Bankruptcy Code.  The filing of the bankruptcy constituted an event of default under the

Repurchase Agreement.

   13. On the Petition Date, Calyon sent a letter to the Debtors extending the

timeframe in which AHM Servicing was to act as interim servicer.  A copy of this letter is

attached hereto as Exhibit D (the "First Servicing Extension Letter").  Calyon further extended

the timeframe in which AHM Servicing was interim servicer by letter dated August 13, 2007, a

copy of which is attached hereto as Exhibit E (the "Second Servicing Extension Letter"), and

again by letter dated August 20, 2007, a copy of which is attached hereto as Exhibit F (the "Third

Servicing Extension Letter").

   14. Nearly one month after the Acceleration Date, by letter dated August 28,

2007, a copy of which is attached as Exhibit G (the "Servicing Termination Letter"), Calyon

terminated the services of AHM Servicing as the interim servicer and demanded that the Debtors

take all actions necessary to transfer the servicing of the Calyon Loan Portfolio to Chase and

Canlar FSB.

C.    **The Calyon Adversary**

15.    On August 28, 2007 (the same date Calyon sent the Servicing Termination Letter), Calyon commenced an adversary proceeding numbered 07-51704 (CSS) (the "Calyon Adversary") by filing a complaint [Adv. D.I. 1] (the "Complaint").

16.    By the Complaint, Calyon sought (i) a declaratory judgment that the Repurchase Agreement between Calyon and the Debtors is a "repurchase agreement" as defined in section 101(47) of the Bankruptcy Code and thus, pursuant to sections 362(b)(7), 555 and 559 of the Bankruptcy Code (the "Safe Harbor Provisions"), the rights of Calyon under the Repurchase Agreement are not stayed, avoided or otherwise limited by the operation of any provision of the Bankruptcy Code; and (ii) injunctive relief compelling the Debtors to transfer the rights and obligations relating to servicing the Calyon Loan Portfolio to Calyon (or its designee).

17.    In response to the Complaint, the Debtors filed an answer and counterclaim [Adv. D.I. 17] (the "Answer"). By the Answer, the Debtors denied that the Repurchase Agreement is a "repurchase agreement" as defined in section 101(47) of the Bankruptcy Code, and argued that the Repurchase Agreement was, in fact, a secured financing arrangement. In connection therewith, the Debtors' counterclaim sought declaratory judgment that the Repurchase Agreement was a secured financing arrangement. Alternatively, the Debtors argued that the portion of the Repurchase Agreement providing for the servicing of the mortgage loans (as opposed to the sale and repurchase of mortgage loans) is not protected under the Safe Harbor Provisions.

18.    The parties agreed to bifurcate the issue for trial. In early November, 2007, the Court conducted the "Phase I" trial limited to the issues discussed above, i.e., whether

(i) the Repurchase Agreement, in whole or in part, is a "repurchase agreement;" and (ii) Calyon was entitled to injunctive relief compelling the Debtors to transfer the rights and obligations relating to servicing the mortgage loans to Calyon. The parties submitted post-trial briefs and the Court heard oral argument in late November, 2007.

19.    On January 4, 2008, the Court issued an opinion [Adv. D.I. 74] (the "Phase I Opinion"), constituting its findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, in connection with the Phase I trial. As set forth in the Phase I Opinion, the Court determined that the Repurchase Agreement is a "repurchase agreement" under § 101(47). Accordingly, the Court determined that, pursuant to the Safe Harbor Provisions, Calyon's rights were not stayed, avoided or otherwise limited with respect to the ownership of the Calyon Loan Portfolio and that Calyon could enforce its rights with respect to the Calyon Loan Portfolio under the Repurchase Agreement without further recourse from the Debtors.

20.    However, the Court further found that the *servicing* of the Calyon Loan Portfolio was not protected under the Safe Harbor Provisions because: (i) under applicable provisions, the portion of the Repurchase Agreement providing for the servicing was severable from the portion regarding the sale and repurchase of mortgage loans; and (ii) the portion of the Repurchase Agreement for servicing loans was nether a "repurchase agreement" nor "securities contract" under the Bankruptcy Code. The Court further found that, because the portion of the Repurchase Agreement providing for the servicing of the mortgage loans is not subject to the Safe Harbor Provisions, there is no basis to require the Debtors to transfer property of the estate (i.e., the right to service of the mortgage loan under the contract) to Calyon.

21.    As a result, the Phase I Opinion determined that Calyon had the unfettered right to sell the Calyon Loan Portfolio on a servicing-retained basis.

22.     On January 15, 2008, the Court entered an Order in connection with the Phase I Opinion [Adv. D.I. 77] (the "Phase I Order").  Among other things, the Phase I Order incorporated the Phase I Opinion in full, and solidified Calyon's ownership of the Calyon Loan Portfolio on a servicing-retained basis.

23.     On January 25, 2008, Calyon filed the Motion of Calyon New York Branch to Alter or Amend [Adv. D.I. 86] (the "Motion to Amend") the Phase I Opinion and Phase I Order "solely with respect to the Court's conclusions that (i) the Purchasers did not pay a higher price as would have been the case if they had bought the mortgage loans on a servicing released basis; (ii) the mortgage loans sold under the Repurchase Agreement were sold on a servicing retained basis; and (iii) the Debtors retained the right to designate the servicer of the mortgage loans."

24.     On February 4, 2008, Calyon filed its Amended Complaint and Request for Declaratory Judgment, Injunctive Relief and Damages [Adv. D.I. 88] (the "Amended Complaint") to include certain additional issues in the Phase II trial.

25.     On March 3, 2008, the Debtors filed the Amended Answer and Counterclaims [Adv. D.I. 94] (the "Amended Answer").

26.     On March 7, 2008, Calyon filed its motion [Adv. D.I. 95] (the "Motion to Compel") in the Calyon Adversary seeking to obtain certain funds.  As set forth more fully below, the parties reached a settlement with respect to, among other things, the Motion to Compel and the Debtors did not formally respond to the Motion to Compel.

27.     On March 10, 2008, the Court issued an opinion [Adv. D.I. 97] (the "Reconsideration Opinion") whereby it upheld its findings of facts set forth in the Phase I Opinion and Phase I Order that the mortgage loans sold under the Repurchase Agreement were

sold on a servicing retained basis. Pursuant to the Reconsideration Opinion, the Court

determined that Calyon had failed to establish (1) an intervening change in controlling law; (2)

the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest

injustice. On the same day, the Court entered an order [Adv. D.I. 98] (the "Reconsideration

Order") consistent with the Reconsideration Opinion.

**D.    The Calyon Settlements**

28.    On September 7, 2007, the Court entered the Stipulation and Order [Adv.

D.I. 15] (the "September Stipulation"). Among other things, the September Stipulation provided

that the Debtors would segregate from other funds in the Debtors' possession all funds and

collections of every type received with respect to the Calyon Loan Porfolio on or after August 6,

2007.

29.    Following the issuance of the Phase I Opinion and entry of the Phase I

Order, on January 25, 2008, the Court entered the Stipulation and Order Regarding Mortgage

Funds and Mortgage Files [Adv. D.I. 85] (the "January Stipulation"). Consistent with the

September Stipulation, the Debtors agreed to continue to segregate proceeds in the Segregated

Account (as defined in the September Stipulation) from other funds in the Debtors' possession.

Debtors also agreed, among other things, to deposit additional funds constituting all amounts in

which the Debtors deducted as a servicing fee for servicing the Calyon Loan Portfolio since

August 6, 2007.

30.    On May 1, 2008, the Court entered the Order Approving and Authorizing

the Stipulation Between the Debtors and Calyon New York Branch, as Administrative Agent

[Adv. D.I. 123] (the "Funds Order"). The Funds Order approved the Stipulation and Order

Between the Debtors and Calyon New York Branch, as Administrative Agent dated April 11,

066585.1001

2008 (the "Funds Stipulation"), which resolved disputes regarding (i) certain wire transfer funds received by the Debtors between July 24, 2007 to August 28, 2007 totaling approximately $12,055,281.91; (ii) certain principal and interest payments received by the Debtors pursuant to the Repurchase Agreement; and (iii) certain funds received by Calyon, but did not belong to Calyon.

31.     On August 8, 2008, the Court entered an Order (I) Approving the Stipulation Between the Debtors and Calyon New York Branch, as Administrative Agent, and (II) Authorizing the Transfer of Service Mortgage Servicing Rights Related Thereto [Adv. D.I. 148] (the "Phase II Settlement Order"). The August Order approved the Stipulation Between the Debtors and Calyon New York Branch, as Administrative Agent dated July 21, 2008 (the "Phase II Stipulation"), which, among other things, settled the Phase II trial and various open issues related to the Funds Stipulation.

32.     Pursuant to the Phase II Stipulation and Phase II Settlement Order, as of the effective date of the Phase II Stipulation (the "Effective Date"), Calyon shall be deemed the owner of the rights to service the Mortgage Assets (as defined in the Phase II Stipulation) (the "MSRs") for all purposes and the Phase II trial was deemed resolved.

33.     The Effective Date of the Phase II Stipulation was August 18, 2008. On August 20, 2008, the parties entered a stipulation of dismissal (the "Stipulation of Dismissal") with respect to the Calyon Adversary.

34.     The Phase II Stipulation, and the Stipulation of Dismissal expressly reserved the parties rights regarding the allowance or disallowance of the Repurchase Claims.

### E.    The Repurchase Claims

35.    On January 10, 2007, Calyon filed the Repurchase Claims, against various Debtor entities,[2] each asserting claims under the Repurchase Agreement and other Transaction Documents including, without limitation, (i) a claim for the repurchase of the Calyon Loan Portfolio at the Repurchase Price of $1,179,579,324.67, plus interest; (ii) claims for all costs and expenses, including attorneys' fees, other professional services and disbursements, as provided in the Repurchase Agreement; and (iii) claims based on the Debtors' alleged breaches, and failure to comply with the terms of the Repurchase Agreement and other Transaction Documents.

36.    The Repurchase Claims do not reflect a market value for the Calyon Loan Portfolio nor have they been amended or supplemented by Calyon as a result of any settlements with the Debtors, as described more fully above.

### RELIEF REQUESTED

37.    By this Objection, the Debtors seek entry of an order, pursuant to sections 502(b) and 562 of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007, disallowing and expunging the Repurchase Claims in full, or, alternatively, reducing the Repurchase Claims in an amount to be determined by this Court.

### OBJECTION

38.    Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress added section 562 of the Bankruptcy Code to address the timing of damage measurement in connection with repurchase agreements. Section 562 states, in pertinent part, as follows:

---

[2]    Claim No. 8044 is asserted against AHM Servicing; Claim No. 8045 against AHM Acceptance; Claim No. 8046 against AHM Corp.; and Claim No. 8047 against AHM Investment.

(a)  If the trustee rejects a . . . repurchase agreement, . . ., or if a . . . repo participant . . . liquidates, terminates, or accelerates such contract or agreement, damages shall be measured as of the earlier of –

> (1) the date of such rejection; or
> (2) the date or dates of such liquidation, termination, or acceleration.

(b)  If there are not any commercially reasonable determinants of value as of any date referred to in paragraph (1) or (2) of subsection (a), damages shall be measured as of the earliest subsequent date or dates on which there are commercially reasonable determinants of value.

(c)  For the purposes of subsection (b), if damages re not measured as of the date or dates of rejection, liquidation, termination, or acceleration, and the . . . repo participant . . . or the trustee objects to the timing of the measurement of damages;

> . . .
> (2) the . . . repo participant . . ., in the case of an objection by the trustee,

has the burden of proving that there were no commercially reasonable determinants of value as of such date or dates.

11 U.S.C. § 562.

39.     The import of § 562 is clear: any deficiency claim "damages" allegedly suffered by Calyon must be measured on the earliest date of liquidation, termination or acceleration, unless no "commercially reasonable determinants of value" existed as of the Acceleration Date.  To the extent that Calyon asserts that no commercially reasonable determinants of value existed as of the Acceleration Date, Calyon has the burden of proof. Placing the burden on Calyon is consistent with the applicable law that the ultimate burden of proof rests upon the creditor.  See In re Fidelity Mortgage Holding Co., Ltd., 837 F.2d 696. 698 (5th Cir. 1988) (affirming disallowance of claim; "the claimant must . . . 'prove the validity of the claim by a preponderance of the evidence.'  The ultimate burden of proof always rests upon the claimant.").

40.     Here, it is undisputed that Calyon sent the Default Notice, accelerating and terminating the Repurchase Agreement on August 1, 2007 (i.e., the Acceleration Date).  See

Default Letter (notice accelerating and terminating Repurchase Agreement); see also Amended

Complaint, ¶¶ 14, 28 (Calyon asserting that the Default Letter served as notice to the Debtors of

the defaults under the Repurchase Agreement, the acceleration of all amounts due, and the

termination of the facility);[3] Hr'g Tr. 11/8/07, p. 46-47 (Mr. Pino testifying that, upon an event

of default, the repurchase obligations would become automatically due and payable and the

termination date and repurchase dates would immediately occur). Moreover, based upon these

(and other) facts, the Court found that, by the Default Letter, Calyon accelerated the Repurchase

Agreement. Phase I Opinion, p. 7-8 (stating that, on August 1, 2007, Calyon demanded the

Debtors immediately repurchase all of the mortgage loans in the Purchasers' possession under

the Repurchase Agreement). Accordingly, the date of acceleration cannot now be disputed.[4]

See, e.g., Official comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand,

LLP, 322 F.3d 147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's

decision, they should neither be required, nor without good reason permitted, to battle for it

again.") (citations omitted).

      41.     The Repurchase Claims, in the amounts set forth by Calyon, are meritless

based on the standards established by § 562, because they fail to consider the value of the Calyon

Loan Portfolio as of the Acceleration Date. Multiple determinants of value were in existence as

of the Acceleration Date, including, but not limited to, (i) the price in which Calyon was

purchasing similar loans from the Debtors immediately prior to the Acceleration Date, (ii) the

---

[3]     By their Answer, the Debtors responded that the applicable paragraphs constituted legal conclusions to which no responsive pleading is required. To the extent a response was required, the averments were denied.

[4]     In the event that this Court determines that Calyon had not accelerated and/or terminated the Repurchase Agreement as of the Acceleration Date, the Debtors reserve their rights to argue that the measurement of damages should be determined on August 6, 2007, (i.e., when the Debtors' bankruptcy filing automatically terminated the Repurchase Agreement), see Hr'g Tr. 11/7/07, p. 24:15-17 (Pilcer testifying that contract automatically terminated), or such other date as may be appropriate.

Debtors' ongoing market analysis in the ordinary course of the Debtors' business, and (iii) comparable loan sales.

42.    To determine the value of the Calyon Loan Portfolio as of the Acceleration Date, the Debtors analyzed the various loan products within the Calyon Loan Portfolio and the trade prices of comparable loan products completed near or before the Acceleration Date.  Based upon their preliminary analysis, the Debtors submit that, as of the Acceleration Date, the combined value of Calyon Loan Portfolio and the cash collateral held in connection with the Repurchase Agreement exceeded the repurchase obligations under the Repurchase Agreement.

43.    Accordingly, the Repurchase Claims should be disallowed in full and expunged.  Alternatively, the Debtors request that the value of the Calyon Loan Portfolio as of the Acceleration Date be determined by this Court, and the Repurchase Claims reduced by the amount determined.

## RESERVATION OF RIGHTS

44.    This Objection is not an omnibus objection and is, therefore, not subject to the restrictions contained in Bankr. D. Del. L.R. 3007-1.  Accordingly, the Debtors expressly reserve all rights, including without limitation: (i) the right to amend, modify or supplement this Objection and/or object in the future to any aspect of the Repurchase Claims, (ii) the right to bring any causes of action under applicable sections of the Bankruptcy Code or other applicable law, including, but not limited to, the right to seek turnover of any excess value of the Calyon Loan Porfolio; (iii) the right to enforce any setoff or recoupment rights against Calyon; and (iv) the right to enforce any of the previous stipulations or orders relating to Calyon.  Separate notice and a hearing will be scheduled for any such objection or assertion of such further rights.

DB02:7681061.1                                                                                                              066585.1001

## NOTICE

45.     The Debtors have provided notice of this Objection to (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel for the Borrowers Committee; (iv) counsel to the administrative agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the Debtors' postpetition lender; (v) counsel for Calyon; and (vi) those parties who have requested notice pursuant to Bankruptcy Rule 2002, in accordance with Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit H, sustaining this Objection in all respects, disallowing in full and expunging the Repurchase Claims, and granting such other and further relief as the Court deems just and proper.

Dated:  January 9, 2009
            Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_____
James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Sean M. Beach (No. 4070)
Margaret B. Whiteman (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone: (302) 571-6756
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession