IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC.,<br>a Delaware corporation, et. al.<br>            Debtors<br><br>GENE A.DELEVE,TRUSTEE<br><br>            Creditor | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered |

### RESPONSE OF GENE A.DELEVE,TRUSTEE, TO THE DEBTOR'S OBJECTIONS TO CLAIM NUMBERS 10432 AND 10435

  Gene A. DeLeve,Trustee of the Gene A. DeLeve Revocable Living Trust for his response to the Debtors' Objections to said Trustee's claim states as follows:

  1) On January 6, 2008 the Trustee timely filed and served his Proof of Claim against American Home Mortgage Investment Corp. ("AHM"), Case No. 07-11048 which was docketed as Claim No. 8085 and on July 3, 2008 the Trustee served and filed an Amended Claim. On July 9, 2008 as requested by the Clerk of this Bankruptct Court, the Trustee filed and served a new copy of the Amended Claim with the caption corrected to delete the reference to "Kansas City". Otherwise this copy of the Amended Claim was identical to the one served on July 3, 2008 copies of said Claim and Amended Claim, marked Exhibits A and B, are attached hereto and made a part of this Response by reference.

  2) The Debtors have not denied the truthfulness of any of the factual allegations of said Amended Claim or of the Declaration of Gene A. DeLeve filed in support thereof.

  3) On December 12, 2008 the Debtors filed separate Objections to the claim of the Trustee in which they arbitrarily assigned new Claim Numbers 10432 and 10435 to the Trustee's Claim and Amended Claim. The sole basis for their objections to the Trustee' s amended claim is that it is a "Claim based on Equity Interest" and "not on account of damages or a claim against the Debtors". Said Objections misconstrue the Trustee's Amended Claim which clearly seeks to recover damages for publically issuing false and misleading statements which induced the Trustee to buy and hold 500 shares of AHM common stock and are without merit.

  4) The Trustee contends he is entitled to recover damages for AHM's violation of federal securities laws. His claim arises under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. Sections78j(b) and 78t(a) and Rule 10(b)-5 promulgated by the Securities and Exchange Commission thereunder. Civil liability arises when there is a violation of Section 78j(b) and Rule 10b-5. Brennan v. Midwestern United Life Insurance Company, 259 F.Supp.673, p.676, (N.D.Ind.1966); Kuehnert v. Texstar Corporation, 286 F.Supp.340, (S.D.Texas 1968) afffirmed 412 F.2d 700. By publically issuing false and misleading statements and omitting to disclose material facts necessary to make their statements not false and misleading AHM misled the Trustee and caused him to buy and continue to hold AHM common stock until the New York Stock Exchange halted trading in AHM stock before the market opened on July 30, 2007 and

AHM filed this bankruptcy proceeding on August 6, 2007. As a result said stock became worthless, and the Trustee sustained damages in the amount of $11,015.75, the cost of said stock.

5) The Trustee is also entitled to recover his damages under common law fraud priciples. AHM made or caused to be made a series of materially false and misleadind statements about AHM, its income, the extent of its actual and contingent liabilities and its business, operations and financial condition. (see Para. 7 of the Trustee's Amended Claim). Under the common law a corporation is vicariously liable for the torts of its agent committed in the performance of and within the scope of its business. Velten v. Regis B. Lippert, Intercat, Inc., 985 F.2d 1515 (11th Cir. 1993). The victim of the tort of fraudulent inducement by a corporate agent may sue the agent personally or the corporation under the theory of vicarious liability, or both. So the Trustee has a right to assert a claim for damages against AHM for fraudulent representations made in press releases by Michael Strauss, AHM's Chief Executive Officer and President. Velten supra, 985 F.2d at 1522. See Whittenburg v. L.J. Holding Co., 830 F.Supp. 557, (D.Kan.1993) for applicable Kansas law providing alternative remedies to a purchaser who has been fraudulently induced to buy and pay for property. Such purchaser has the descretion to assert his claim under a fraud statute, common law fraud or both. Fisher v. Yates, 953 SW2d 370, (Tex. App.1997).

For these reasons the Trustee respectfully submits that tht Debtor's Objections to the Trustee's Claims should be denied and his Amended Claim should be allowed for $11,015.95.

*Gene A DeLeve*

Gene A. DeLeve, Trustee of The Gene A. DeLeve
Revocable Living Trust
 8024 Monrovia
 Lenexa,Kansas 66215
 Tel. No. (913) 492-4322

### Certificate of Service

I hereby certify that on January 2, 2009 I mailed a copy of the foregoing Response by United States Mail, postage prepaid to:
Young Conaway Stargatt & Taylor, LLP
James L. Patton et. al.
Natthan D.Grow
The Brandywine Building
 1000 West Street, 17th Floor
 Wilmington, DE 19801
 Counsel to the Debtors and Debtors in Possession

*Gene A DeLeve*
Gene A. DeLeve
Individually and as Trustee

Mailed 12-8-08

# UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

In Re: American Home Mortgage Holdings, Inc., et al. Debtors.
Chapter 11
Case No. 07-11047 (CSS)
Jointly Administered

Name of Debtor Against Which Claim is Held: **AMERICAN HOME MORTGAGE INVESTMENT CORP**
Case No. of Debtor: **No 07-11648**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

Mr. Gene A. De Leve
8024 Monrovia St
Lenexa KS  66215-2727

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone number: **913-492-4322**
Email Address:

Account or other number by which creditor identifies debtor:

Check here if this claim: ☐ replaces   ☐ amends a previously filed claim, dated: _____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other  **500 Shares of Common Stock** (explain)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last Four Digits of your SS#: _____
Unpaid compensation for services performed
from _____ (date) to _____ (date)

**2. Date debt was incurred:** Shares purchased 4-24-07 thru Fidelity Investments account

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ **11,015.95** (unsecured nonpriority) + _____ (secured) + _____ (unsecured priority) = **11,015.95** (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).

**6. Unsecured Nonpriority Claim:** $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

EXHIBIT A

Date: **12-3-07**
Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): **GENE A. DELEVE, Trustee**

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE KANSAS CITY

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., Delaware corporation, et al., | Case No. 07-11047 (CSS) |
| | Jointly Administered |
| *Debtors* | Objection Deadline: 7/10/2008 at 4:00 p.m. (ET) |
| GENE A. DeLEVE, TRUSTEE, | Hearing: 7/17/2008 at 2:00 p.m. (ET) |
| *Creditor* | |

### FIRST AMENDED CLAIM NO. 8085

COMES NOW Gene A. DeLeve, Trustee of The Gene A. DeLeve Revocable Living Trust under Agreement dated October 15, 2002, as amended from time to time (the "Trustee" or the "Creditor") and, for his Amended Claim against American Home Mortgage Investment Corp. and the other above named Debtors, respectfully alleges and states as follows:

1.  American Home Mortgage Investment Corp. (AHM) is or was at all relevant times a real estate investment trust which was engaged in the business of investing in and originating residential mortgage loans. AHM was a publicly-held company whose stock was registered under §§ *10(b) and 20(a)* of the *Exchange Act, 15 U.S.C. § 78(b) and 78t(a)* and was traded on the New York Stock Exchange. As such, AHM had the duty to disseminate promptly, accurate and truthful information with respect to AHM's financial condition and earnings and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of AHM's publicly-traded stock would be based upon truthful and accurate information.

EXHIBIT B

2.  On April 24, 2007 the Trustee bought 500 shares of AHM's common stock at the price of $22.01 per share for the total cost of $11,015.95.

3.  AHM materially misled the Trustee and the investing public by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make AHM's statements, as set forth herein, not false and misleading, thereby inflating the price of AHM's common stock. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and thereby misrepresented the truth about AHM, its business and operations, earnings, financial condition, the value of its assets, and the extent of its liabilities, as alleged herein.

4.  On July 26, 2006, AHM issued a press release announcing its financial results for the second quarter of 2006 for the period ending June 30, 2006. The Company reported revenues of $276.8 million and income of $72.4 million. Michael Strauss, AHM's Chief Executive Officer and President, commented on the results stating in pertinent part as follows:

> "The second quarter of 2006 was highly successful for our company. During the quarter, our portfolio net interest income reached a record $33.9 million, while our production business experienced record originations, record market share, a strong gain on sale martin and improved warehouse income. During the quarter, we continued to execute our strategy of retaining a portion of our loan production for our investment portfolio, by adding $1.2 billion of loans to our portfolio at quarter-end. These loans are carried at cost, and are expected to enhance our future portfolio earnings. We also continued to adhere to our core risk mitigation strategies including targeting a duration-neutral 'matched book,' and purchasing mortgage insurance to protect against credit losses. Today approximately half of the loans we hold are insured, either through borrower or lender-paid mortgage insurance. In addition to these core risk mitigation strategies, we recently began hedging the value of our mortgage servicing assets against the possibility of declining interest rates.
>
> "Our company is again reaffirming our annual earnings guidance of $4.85 to $5.15 per diluted share. Our earnings guidance is based on, among other factors, annual loan originations of $55 billion to $60 billion. I am very pleased to report

that, based on our company's performance and prospects, the Board of Directors has again voted to increase the dividend policy for our common stockholders. The new policy is $1.01 per share per quarter, or $4.04 per share on an annualized basis. The increased dividend is expected to become effective for the dividend expected to be paid in October 2006."

5.   On October 26, 2006, AHM issued a press release announcing its financial results for the third quarter of 2006, the period ending September 30, 2006. The Company reported revenue of $258.9 million and net earnings of $72 million. Mr. Strauss commented on the results stating in pertinent part as follows:

> "I am pleased by our company's results during the third quarter. In particular, earnings per share were strong at $1.36, while dividends and book value per share continued to advance from second quarter levels. Our company's third quarter results were accomplished during a period that was particularly difficult for our industry; a period that included the adverse impacts of an inverted yield curve, falling national housing prices; reduced national loan originations, and servicing write-downs due to lower interest rates. These difficult conditions are reflected in American Home's third quarter results which include a significant mortgage servicing asset write-down, a lower although still constructive gain-on-sale margin, high credit expense for reserving necessitated by sharply higher delinquencies and loan repurchases, and finally, lower warehouse net interest due to a narrower spread between new loan yields and funding yields. These factors were offset in our company's third quarter results however, by record portfolio net interest income, record loan production and record servicing and ancillary fee income, as well as by lower expenses in our loan production business. In addition, our company did not experience a loss in its mortgage-backed securities portfolio as had been the case in several of the previous quarters, but instead had a net portfolio gain of $3.4 million. I believe our company's strong results in this challenging environment illustrate the underlying earnings power of our businesses.
>
> "During the quarter, our company added $906.8 million of newly originated loans to its portfolio of loans held for investment. These loans are carried at their cost, have an unrecognized fair value in excess of cost of $15.5 million, and are projected to yield 7.01% over their estimated life. As investors know, one of our company's core strategies is to grow ongoing portfolio net interest income by increasing our holdings of self-originated loans benefited by a low cost basis.

> "Based on our third quarter results and our outlook for the fourth quarter, our company is reaffirming its 2006 earnings guidance of $4.85 to $5.15 per share, and its guidance for annual loan originations of $55 billion to $60 billion.
>
> * * * *
>
> "I am very pleased to announce that based on our company's earnings and prospects, our Board of Directors has again increased our company's quarterly dividend policy on its common stock by $0.05 per share. The new par share common stock dividend policy is $1.06 per quarter, or $4.24 on an annualized basis. The new dividend policy is expected to take effect with our January dividend payment, although our company is not obligated to pay dividends until such dividends are declared by our Board of Directors, and our Board of Directors may change our company's dividend policy at any time without notice."

6.    On January 25, 2007, AHM issued a press release announcing its financial results for the fourth quarter of 2006, the period ending December 30, 2006. The Company reported revenues of $257.7 million and net earnings of $64.7 million. Mr. Strauss commented on the results stating in pertinent part as follows:

> "The fourth quarter was highly successful for our company with earnings of $1.21 per diluted share. During the quarter, we added $1.0 billion of recently originated loans to our portfolio, which are carried at cost. Loan origination volume was a record $15.5 billion due to our company achieving a record market share of 2.48% of national originations. Net interest income was stable while our servicing portfolio produced record revenues. During the quarter, our company did however experience its highest delinquency related charges to date, which reduced our quarterly earnings.
>
> "The fourth quarter concluded a very successful year for our company, with earnings per diluted share reaching a record $4.96. By comparison, diluted earnings per share were $3.97 in 2005, $3,74 in 2004, $4.07 in 2003 and $2.65 in 2002. A key financial goal for our company in 2007 is to continue our multi-year growth trend in earnings per share. During 2006, our company's return on average common equity was 22.7%, which surpassed our target of 20%, and compares favorably to 2005 when our adjusted return on average common equity was 19.7%. Also during 2006 our company originated $58.9 billion of loans compared to $45.3 billion in 2005. Finally, during 2006, our company reached a milestone as, for the first time; its revenues exceed $1.0 billion.

"In this earnings release, our company is providing 2007 earnings guidance of $5.40 to $5.70 per fully diluted share with the earnings per diluted share for each quarter in 2007 projected to be approximately 9% to 15% higher than for the comparable quarter in 2006. Our earnings guidance is based on stable net interest margins applied to a growing portfolio of loans held for investment, loan production of $68 billion to $74 billion, and a reduction in gain on sale margins of approximately 12 basis points. Lower gain on sale margins are expected in part because delinquency losses on loans held for sale, including losses due to repurchases, are projected to continue at high levels throughout 2007. Projections for continued high losses are based on our company's view that while there are signs that housing prices are starting to stabilize, future abatements in foreclosure activity will lag a recovery in the housing market. As a result, our 2007 earnings guidance anticipates a highly stressed credit environment.

"Not included in our earnings guidance are potential benefits from new strategies that offer the possibility of higher portfolio income, increased loan production and reduced income tax expense. Our company will keep investors apprised if material benefits from these strategies become likely.

"I am very pleased to announce that based on our company's results and prospects, our Board of Directors has voted to increase our company's dividend policy by $0.06 to $1.12 per share per quarter or $4.48 per share on an annualized basis. The new dividend policy is expected to take effect with our April dividend payment. Please note, however, that our company is not obligated to pay dividends until such dividends are declared by our Board of Directors, and our Board of Directors may change our company's dividend policy at any time without prior notice."

7.  The statements in said press releases were each materially false and misleading when made because they failed to disclose and concealed the following adverse material facts which were known to AHM:

(a) that AHM was experiencing an increasing number and amount of loan delinquencies which were depressing its earnings, or the number and amount of its loans which were subject to foreclosures of the loan collateral;

(b) that AHM was experiencing increasing difficulties in selling loans which required it to reduce prices for loans which it normally sold for more than cost, thereby affecting its margins and profits;

(c) that AHM was overstating its earnings and financial results by failing to write down the value of certain loans in its portfolio, especially so-called Alternate A mortgage loans, which had declined substantially in value;

(d) that AHM was selling all or a substantial number and amount of the loans which it originated, and especially the so-called Alternate A mortgage loans, with limited recourse; that AHM could be required to repurchase loans which breached the representations or warranties it made to the buyers with the sale of such loans, including early payment defaults by borrowers, or if the loans did not comply with underwriting standards or other requirements of the investors who purchased the loans; that AHM had offered loan purchasers three month 'timely payment' warranties (early payment defaults); or the extent of AHM's contingent liabilities on such representations and warranties; or number and amount of such loans it was being or could be required to repurchase because of borrowers' defaults;

(e) that AHM's credit facility agreements granted lenders the right, under certain circumstances, to revaluate the loan collateral at any time, and to initiate margin calls if in the lender's opinion the value of the loan collateral had declined and, in that event, to require AHM to provide the lender with additional collateral or to repay a portion of the outstanding borrowing; and to what extent such margin calls had been made and not complied with;

(f) the true nature and extent of the negative impact the deteriorating subprime mortgage market was having on AHM's operations, financial results and business prospects, and on the value of its loan portfolios.

8. On April 6, 2007 AHM issued a press release announcing that it expected lower income in the first quarter and full year 2007 than previously forecasted and for that reason was lowering its common stock dividend policy to $0.70 per share per quarter or $2.80 per share on an annualized basis, and that the new dividend policy would apply to the second quarter 2007 dividend payable in July 2007. Not until July 27, 2007 did AHM announce that its Board of Directors had decided to delay payment of the quarterly dividend on its common stock.

9. By publicly issuing false and misleading statements and omitting to disclose material facts necessary to make their statements, as set forth above, not false and misleading,

AHM mislead the Trustee and the investing public and caused the Trustee to buy and continue to own and hold AHM's common stock until the New York Stock Exchange halted trading in AHM stock before the market opened on July 30, 2007 and AHM filed this bankruptcy proceeding on August 6, 2007. As a result, said common stock is worthless, and the Trustee has sustained damages in the amount of $11,015.95.

**WHEREFORE**, Gene A. DeLeve, Trustee, prays that his Amended Claim be allowed in the amount of $11,015.95.

*/s/ Gene A. DeLeve, Trustee*
Gene A. DeLeve, Trustee of
The Gene A. DeLeve Revocable Living Trust under Agreement dated October 15, 2002
8024 Monrovia
Lenexa, KS 66215
Tel.No. (913) 492-4322

### DECLARATION OF GENE DeLEVE
### IN SUPPORT OF AMENDED CLAIM NO. 8085

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed on July 3, 2008.

*/s/ Gene A. DeLeve*
Gene A. DeLeve
Individually and as Trustee

7

## Certificate of Service

I certify that on July _3_, 2008, copies of the foregoing Amended Claim were served by United States Mail, postage prepaid, on each of the following:

YOUNG CONAWAY STARGATT & TAYLOR, LLP
James L. Patton, et al.
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(Counsel to the Debtors and Debtors in Possession)

    and

American Home Mortgage Investment Corp.
538 Broadhollow Road
Melville, NY 11747

    and

Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

_____
Gene A. DeLeve
Individually and as Trustee