## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., *et al.*,<br><br>Debtors. | Chapter 11<br>Case No.  07-11047 (CSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 28, 2009 @ 10:00 a.m. (ET)**<br>**Objection Deadline:  January 14, 2009 @ 4:00 p.m.  (ET)**<br><br>**Re:  D.I. No. 6626** |

### LEAD PLAINTIFFS' LIMITED OBJECTION TO CONFIRMATION OF THE AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS DATED AS OF NOVEMBER 25, 2008

The Lead Plaintiffs (the "Lead Plaintiffs")[1] in a securities fraud class action entitled *In re American Home Mortgage Securities Litigation*, Case No. 07-MD-1898 (TCP) (the "Securities Litigation"), pending in the United States District Court for the Eastern District of New York (the "District Court"), and filed on behalf of all persons or entities (the "Class") who purchased or otherwise acquired common or preferred shares of stock of American Home Mortgage Investment Corp. ("AHM Investment"), one of the Debtors[2] herein, on the open market, during the period from July 19, 2005 to August 6, 2007, inclusive (the "Class Period"), including all persons who purchased or otherwise acquired such shares pursuant or traceable to the registration statements issued in connection with an offering of 9 million shares on August 9, 2005 at $35.50 per share (the "2005 Offering") and an offering of 4 million shares on April 30, 2007 at approximately $24 per share (the "2007 Offering"), hereby submit this limited objection (the "Objection") to the Amended Chapter 11 Plan Of Liquidation of the Debtors Dated as of November 25, 2008 (the "Plan"), and state the following:

---

[1]    On March 19, 2008, the District Court appointed the Teachers' Retirement System of Oklahoma and the Oklahoma Police Pension and Retirement System as Lead Plaintiffs.

[2]    Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of November 25, 2008.

## BACKGROUND

1.      On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.  On August 7, 2007, the Bankruptcy Court authorized the joint administration of the Chapter 11 cases.

2.      Prior to the Petition Date, approximately eighteen (18) securities class action complaints were filed in the District Court,[3] each alleging violations by AHM Investment and certain of its current and/or former officers, directors and underwriters and auditor (collectively, the "Non-Debtor Defendants") of certain federal securities laws, including Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (collectively, the "Securities Laws"). These allegations arise from, *inter alia*, false and misleading statements concerning AHM Investment's financial results and business made during the Class Period.

3.      On or about March 19, 2008, the District Court appointed the Lead Plaintiffs, consolidated the pending putative class actions into the Securities Litigation and directed Lead Plaintiffs to file an amended consolidated complaint.

4.      Lead Plaintiffs and the members of the putative Class are creditors, equity holders and/or parties-in-interest in these Chapter 11 proceedings by virtue of the fact that Lead Plaintiffs and the putative Class lost millions of dollars as a result of their purchases or acquisitions of AHM Investment securities.

5.      On or about June 3, 2008, Lead Plaintiffs filed the Consolidated Amended Class Action Complaint (the "Amended Complaint").  Although AHM Investment was named as a defendant in several of the class action complaints filed prior to the Petition Date, AHM Investment is not named as a defendant in the Amended Complaint pursuant to the dictates of 11 U.S.C. §362(a).  The Securities Litigation is continuing against the Non-Debtor Defendants.  On August 5, 2008, the District Court approved a stipulation establishing a briefing schedule for the

---

[3]      The first such complaint, *Elliott Greenberg v. American Home Mortgage Investment Corp., et al.*, was filed on July 31, 2007.

Non-Debtor Defendants to respond to the Amended Complaint. The Non-Debtor Defendants have filed motions to dismiss, which are currently pending in the District Court.

6.      The Securities Litigation and, to some extent, this Chapter 11 proceeding, were the result of an accounting fraud and various misrepresentations by the Debtors, including AHM Investment, and the Non-Debtor Defendants. AHM Investment and the Non-Debtor Defendants artificially inflated the price of the subject securities through false and misleading statements concerning AHM Investment's financial condition and mortgage lending business, creating the false impression that AHM Investment was profitable when, in fact, it was not.

7.      Since the Petition Date, the Debtors have engaged in an orderly liquidation of their assets through a series of court-approved sales.

8.      On August 15, 2008, the Debtors filed the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Chapter 11 Plan of Liquidation of the Debtors Dated as of August 15, 2008 (the "Disclosure Statement")(Document Ref. No. 5451) and accompanying Plan (Document Ref. No.. 5450).

9.      On September 9, 2008, Lead Plaintiff filed their objection to the adequacy of the Disclosure Statement (the "DS Objection")(Docket Ref. No. 5672).

10.      In response to the DS Objection, the Debtors, as Plan proponents, amended the Disclosure Statement and, where applicable, the Plan, to address some of the issues raised in the DS Objection. The amendments were sufficient for disclosure purposes. Prior to and at the hearing on the adequacy of the Disclosure Statement, the Debtors and Lead Plaintiffs agreed that certain objections as set forth in the DS Objection, as well as any other objections, were reserved for confirmation if not resolved in advance thereof. Accordingly, Lead Plaintiffs affirmatively reserved their rights with respect to these and other confirmation objections. *See* DS Objection, ¶9.

11.      On or about December 1, 2008, this Court entered an Order approving the Disclosure Statement, as amended, and granting other relief, (Docket Ref. No. 6644). The

hearing on confirmation of the Plan is scheduled for January 28, 2009, and objections are due on January 14, 2009.

12.     Lead Plaintiffs and Debtors have not resolved the outstanding confirmation objections referred to in paragraph 10, *supra*.    Accordingly, Lead Plaintiffs object to confirmation of the Plan.

## OBJECTION

13.     Lead Plaintiffs assert the following objections to confirmation of the Plan:

(A)     the Plan fails to provide a satisfactory protocol for the preservation and safeguarding of the Debtors' files, records and other documents transferred to the Plan Trust (collectively the "Documents" or "Records");

(B)     the Plan improperly extends the automatic stay and Plan injunction for a period well beyond the Confirmation Date;

(C)     Lead Plaintiffs should be afforded the right to proceed with their claims against the Debtors solely to the extent of available insurance coverage, irrespective of any injunctions or distribution under the Plan; and

(D)     the Plan Injunction and Exculpation provisions, to the extent the Exculpation Provisions may relate to pre-petition claims in connection with the timing of the commencement of the Chapter 11 cases, are at best unclear and therefore improper and must affirmatively exclude Lead Plaintiffs' claims against the Non-Debtor Defendants and any other non-Debtors.

**A.    The Plan Fails to Provide a Satisfactory Protocol for the Preservation and Safeguarding of Documents.**

14.     Under the Plan, all of the Debtors' assets are vested in the Plan Trust which is to be administered by the Plan Trustee.  Under the Plan initially proposed by the Debtors, the Plan Trustee was "expressly authorized" in his sole discretion without obtaining approval of the Plan Oversight Committee or the Bankruptcy Court to "retain, abandon, and/or destroy files, records, and other documents of the Debtors" previously transferred to or otherwise acquired by the Plan

Trust or Plan Trustee (collectively defined as the "Documents").  As a result, the Plan Trustee had unilateral authority to dispose of the Documents, subject only to certain restrictions on the destruction of Documents, including, *inter alia*, as set forth in "any and all" prior Orders of this Court.  Lead Plaintiffs argued that such restrictions may not be sufficient to prevent the destruction of Documents that may be essential to the prosecution of Lead Plaintiffs' claims in the Securities Litigation.  Lead Plaintiffs objected to the unbridled authority of the Plan Trustee to destroy documents that may be relevant to the prosecution of the Securities Litigation and which were not otherwise available.

15.    In response to Lead Plaintiffs' DS Objection, the Debtors amended the Plan to provide that the Plan Trustee "shall not destroy or otherwise abandon any Records [*i.e.*, Documents, defined in the current draft of the Plan as Records] absent further order of the Bankruptcy Court after a hearing upon notice to all interested persons with an opportunity to be heard;" however, the Plan Trustee's obligation to preserve Documents remained limited by several orders, referred to as the Destruction Orders, which authorized the destruction of certain documents.  (Plan, Art. 8. F. 5 (c)(xviii)).

16.    The Destruction Orders are defined in the Plan as those orders entered by this Court prior to confirmation "concerning the preservation and destruction of documents *generally* or with respect to certain third parties [*including, without limitation*, Direct Nos. 2724, 3010 and 4858]." Plan, Art 8. F. 5 (c)(xviii)(emphasis added, bracketed language in Plan).

17.    Two of the specific Destruction Orders identified in the Plan, Docket Nos. 3010 and 4858, authorized the destruction of certain mortgage loan documents and expressly provided that the Orders do not authorize the destruction or other disposal of documents related to "pending or threatened litigation against the Debtors or claims filed against the Debtors' estates." The third identified Destruction Order did not include this exclusion, but was limited to Duplicate Mortgage Loan Files.

18.    While the Documents subject to the identified Destruction Orders may not be relevant to the Securities Litigation, the Lead Plaintiffs are prohibited from taking any discovery

with respect thereto under the discovery stay of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in order to even determine what Documents are involved, as well as their nature and content. More importantly, "Destruction Orders" is not limited to only the three orders identified in the Plan provision and may very well include other orders not specifically identified. As a result, the Plan Trustee's right to destroy the Documents is currently too broad.

19.     The potential destruction of the Debtors' Documents in the sole discretion of the Plan Trustee clearly prejudices the rights of Lead Plaintiffs and other parties in interest, especially where the Documents are not available from any other source. In order to avoid such prejudice and to level the playing field (*see* ¶25, *infra*), the Plan Trustee must not be permitted to destroy or abandon any Documents of the Debtors except upon notice to parties in interest with an opportunity to be heard. The exclusion afforded by the phrase "except as authorized by the Destruction Orders" may cause relevant Documents to be destroyed or rendered otherwise unavailable. At the very least, parties in interest should have an opportunity to review, inspect, analyze and copy the Documents before they are destroyed or rendered otherwise unavailable.

20.     In order to prevent the foregoing prejudice and destruction, the existing Plan language regarding the Plan Trustee's duty to preserve Documents should be amended to provide the following language which has been approved in other chapter 11 proceedings in this Court:[4]

> From and after the Effective Date, the Plan Trustee shall preserve and maintain all documents, files, records and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred by the Debtors to or otherwise acquired by the Plan Trust and/or the Plan Trustee as set forth in and in accordance with the Plan or the Plan Trust Agreement, and the Plan Trustee shall not destroy or otherwise abandon any such Records absent further order of this Court after a hearing upon notice to parties in interest with an opportunity to be heard. The Records the Debtors will transfer to the Plan Trust shall include, but not limited to, all such documents and electronic data (i) identified for retention in connection with any investigation by the Debtors' Board of Directors or any committee

---

[4]     *See* Order Confirming the Second Amended Joint Chapter 11 Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors Dated as of April 23, 2008, ¶33, *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del., July 15, 2008)

of the Debtors' Board of Directors or (ii) produced to the SEC, the United States Attorney's Office, or any other governmental agency.

**B.      The Extension of Stays and Injunctions under the Plan is Inappropriate and Prejudicial.**

21.      Pursuant to the Plan, stays and injunctions provided for in the Chapter 11 cases by Bankruptcy Court orders pursuant to §§105 or 362 of the Bankruptcy Code, the Plan, or otherwise, and extant on the Confirmation Date, remain in effect until the *later* of the entry of the Final Decree or dissolution of the Plan Trust. *See* Plan, Art. 12. B.

22.      However, neither the entry of the Final Decree or dissolution of the Plan Trust is a date certain.  In fact, the dissolution of the Plan Trust may not occur until more than eight (8) years after the Effective Date of the Plan. *See* Plan, Art. 8. F. 12.

23.      Under the Plan, the Plan Trustee has the right to pursue the Debtors' Causes of Action, Plan, Art. 8. F. 5. (c)(i), including Designated Causes of Action (Causes of Actions against the Debtors' directors and officers).  The Designated Causes of Action may have some of the same factual predicates as the claims of Lead Plaintiffs arising from the allegations in the Securities Litigation.  Because of the requested extension of stays and injunctions under the Plan, the Plan Trustee can prevent or, at the very least, significantly delay Lead Plaintiffs from ever obtaining access to relevant discovery by virtue of the extended life of the Plan Trust, while pursuing competing claims asserted by the Plan Trustee.

24.      There is no basis for the Plan Trust to be able to assert the automatic stay (as a sword, not a shield) for years beyond the Effective Date of the Plan to frustrate Lead Plaintiffs' ability to obtain relevant documents in the Securities Litigation, while having those documents available to pursue its own claims.  This is precisely the type of offensive use of the automatic stay that courts refuse to tolerate. *Hydramar Inc. v. General Dynamics Corp.*, 1986 U.S. Dist. LEXIS 24828, *13 (E.D. Pa. 1986), citing *Bohack corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir. 1979) (finding that a debtor using the bankruptcy process and the automatic stay to its advantage may not serve the purpose of the Bankruptcy Code; the automatic stay "has no application where

the debtor is in the position of assailant rather than victim"). Indeed, "[o]ur system of laws universally frowns on a party that would use the stay as both a sword and a shield." *In re A.H. Robbins & Co.*, 828 F.2d 1023, 1026 (4th Cir. 1987); *In re Johns-Manville*, 31 B.R. 965, 974 (S.D.N.Y. 1983) (accepting the view that the bankruptcy protective shield should not be unfairly converted into a sword of aggression); *see also Maritime Electric Co. v. Untied Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991).

25.    Neither the Plan nor, in all likelihood, the Plan Trust Agreement provides any explanation to justify such a lengthy extension of the automatic stay or other stays or injunctions imposed under the Plan. Lead Plaintiffs acknowledge that they currently remain bound by the PSLRA discovery stay, but the automatic stay should not be available offensively to the Plan Trust, beyond the effective date of the Plan, for what might as well be perpetuity to frustrate the claims of Lead Plaintiffs against common defendants to gain a fundamentally unfair litigation advantage.

**C.    Lead Plaintiffs Should be Afforded the Right to Proceed with Their Claims Against the Debtors Solely to the Extent of Available Insurance Coverage, Irrespective of any Injunctions or Distribution under the Plan.**

26.    Upon information and belief, the Debtors maintain liability insurance policies (the "D&O Policies") in favor of their directors and officers for claims asserted in the Securities Litigation, as well as for claims against the Debtors directly for violations of federal securities laws. Thus far, the Debtors have not disclosed any information as to the extent of coverage provided by these D&O Policies and the identity of those parties who may have a right to access the proceeds thereof in the event a claim is asserted against them. Lead Plaintiffs maintain that the putative Securities Class is entitled to look to the proceeds of such insurance for payment of the Lead Plaintiffs' Claims and may, at least, pursue these Claims against the Debtors to the extent of such available insurance, especially because these Claims are not entitled to any distribution under the Plan. Because Lead Plaintiffs may not have a direct action against the D&O insurance carriers under the D&O Policies, the proceeds of the D&O Policies may only be

accessed through the pursuit of the claims asserted in the Securities Litigation. Accordingly, the Plan should not impact the rights of Lead Plaintiffs or the putative Securities Class to pursue their claims against the Debtors to the extent of the proceeds of the D&O Policies.

27.     Furthermore, because the Plan provides for the liquidation of the Debtors, the Debtors are not entitled to a discharge. 11 U.S.C. § 1141(d)(3)(A). Yet the Plan affords the Debtors with what amounts to a discharge injunction in the face of their liquidation, *see* Section D, *infra*, ¶¶30-41, without any explanation or justification. Therefore, Lead Plaintiffs should have the right to pursue their claims against the Debtors to the extent of available insurance and such right must be preserved.

28.     Accordingly, the Plan should provide that:

> Nothing in this Plan, or in any Order confirming the Plan, shall preclude Lead Plaintiffs and the putative Class from pursuing their claims against the Debtors to the extent of available insurance coverage and proceeds. The Claims of Lead Plaintiffs and the putative Class against the Debtors, to the extent of available insurance, are preserved and not discharged by the Plan.

29.     The Plan also provides that, to the extent they are executory, certain insurance policies, to be identified in the Supplemental Plan Document, will be assumed under the Plan. However, the Supplemental Plan Document will not be available until at least ten (10) days before the Confirmation Hearing. Because confirmation objections are due before the Supplemental Plan Document may be available, the Debtors have agreed that Lead Plaintiffs' right to supplement this Objection with respect to any documents in the Supplemental Plan Document is preserved.

**D.     The Plan Provides Improper Releases and Injunctions That May Impact Lead Plaintiffs' Claims Against the Non-Debtor Defendants.**

30.     The Plan Injunction and Exculpation provisions are so broad and ambiguous that one may interpret those provisions to impact, enjoin and/or prohibit Lead Plaintiffs from seeking discovery from the Debtors or the Plan Trust and/or asserting claims in the Securities Litigation

against the Non-Debtor Defendants. To that extent, the Plan Injunction and Exculpation provisions are improper.

31.    With respect to the Plan Injunction, the Plan permanently enjoins holders of pre-petition claims against or Interests in the Debtor from

> (i) commencing or continuing in any manner, directly or indirectly, any action or other proceeding against any Protected Party or any property of a Protected Party . . . and (v) taking *any* act, in *any* manner, in *any* place whatsoever, that does not conform to, comply with, or is inconsistent with any provision of this Plan.

Plan, Art. 12. A (emphasis added).

32.    Protected Party is defined as any of the Debtors, the Plan Trustee, the Estates, the Plan Trust and the Plan Oversight Committee. Plan, Art. 1. A.

33.    Although the Non-Debtor Defendants do not appear to be included in the definition of a Protected Party, the Plan Injunction (*see* ¶ 31, *supra*) may still apply to Lead Plaintiffs' claims against Non-Debtor Defendants by virtue of clause (i) because the members of the Plan Oversight Committee are not yet known, and clause (v) which includes *any* act in *any* manner and is not limited to acts against a Protected Party.

34.    Moreover, it is fundamentally improper for the Plan to preclude Lead Plaintiffs from obtaining discovery to which they are entitled once the PSLRA stay no longer applies. To the extent the Plan Injunction results in such a prohibition it must be modified accordingly.

35.    Additionally, the Plan *releases* an Exculpated Party from:

> any claim, cause of action or liability . . . to *any* Holder of a Claim or Interest, or to *any* party in interest, for *any* act that occurred during the Chapter 11 Cases or in connection with the preparation and filing of the Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of this Plan, the consummation of this Plan, and/or the administration of this Plan and/or property to be distributed under this Plan.

Plan, Art. 12. C (emphasis added).

36.    Exculpated Parties include the Debtors and their officers, directors, employees, members, attorneys, crisis managers, financial advisors and professionals. Plan, Art. 1. A.

37.    To the extent some or all of the Non-Debtor Defendants are Exculpated Parties, the Lead Plaintiffs' claims asserted in the Securities Litigation are indeed impacted by the Exculpation provision specifically where it acts to release any claims based upon pre-petition conduct. The language of the Exculpation provision is sufficiently broad that it may encompass claims that accrued pre-petition, especially because it includes acts in connection with the preparation and filing of the Chapter 11 Cases. Lead Plaintiffs do not object to exculpatory relief with respect to conduct occurring during the pendency of the Chapter 11 proceeding.

38.    As a result of the broad language of the aforesaid Plan provisions, non-debtors, including the Non-Debtor Defendants, who, in the absence of unusual circumstances, are not entitled to the protections of the Bankruptcy Code, may very well reap a benefit. Therefore, to the extent any of Lead Plaintiffs' claims against the Non-Debtor Defendants may be subject to the Plan Injunction and/or Exculpation provisions, the provisions are improper. *See Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 211 (3d Cir. 2000) (holding that a debtor must satisfy its burden of proof and establish through specific factual findings that non-debtor third-party releases are fair and necessary); *In re Combustion Engineering*, 391 F. 3d 190, 236 (3d Cir. 2004) (holding in an asbestos injury case that 11 U.S.C. § 105 may not be used to validate a non-debtor release where to do so trumps another Bankruptcy Code section); *see also Deutsche Bank AG London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)* 416 F.3d 136, 141-42 (2d Cir. 2005) (holding that non-debtor releases are proper only in rare cases and may be "tolerated only if the affected creditor consents").

39.    Indeed, the Plan ambiguously provides that certain other claims are carved out from the Plan Injunction and Exculpation provisions:

> [n]o provision of this Plan or the Disclosure Statement shall be deemed to act or release any claims, Causes of Action or liabilities that the Plan Trust, or the Estates, or any party in interest may have against or to any Person for any act, omission, or failure to act that occurred prior to the Petition Date other than in connection with the preparation and filing of these Chapter 11 Cases.

Plan, Art.12. C.  While this provision specifically identifies and applies to claims belonging to the Plan Trust, the Estates and "any party in interest," it is not clear, when read with other Plan provisions, whether the Lead Plaintiffs' claims against the Non-Debtor Defendants are subject to this provision.  The carve-out should be applicable to the claims asserted or to be asserted against non-Debtors in the Securities Litigation.  The omission of Lead Plaintiffs' claims against non-Debtors from this provision creates, at the very least, the appearance that non-debtor releases are being or may be allowed under the Plan.  To the extent the Debtors intend such non-Debtor releases to be effective under the Plan, Lead Plaintiffs object.  The Non-Debtor Defendants are not entitled to a release, discharge or exculpation or similar relief.

40.    Clearly, for the reasons stated above, Lead Plaintiffs are entitled to the same or substantially similar relief, which may be afforded by the inclusion of the following language in the Plan:[5]

> Nothing in the Plan or in any order confirming the Plan shall affect, release, enjoin or impact in any way the prosecution of the claims asserted, or to be asserted, against any non-Debtor, including the Non-Debtor Defendants, in the Securities Litigation.

41.    Finally, the Plan Injunction is improper if it impacts Lead Plaintiffs' claims against the Debtors to the extent of available insurance.  Notwithstanding that this is a liquidating Plan and the Debtors are not entitled to a discharge, the Plan Injunction is essentially a substitute for a discharge to which Debtors are not entitled.  The Debtors should not be permitted to circumvent the requirements of the Bankruptcy Code.  The Disclosure Statement provides no explanation or basis to ignore 11 U.S.C. § 1141(d)(3)(A).

## CONCLUSION

42.    Based on the foregoing, Lead Plaintiffs respectfully request that an order be entered (i) denying confirmation of the Plan and (ii) granting such other and further relief as the Court deems just and proper.

---

[5]    Indeed, if the Plan does not, in fact, provide for such third party or non-debtor relief, there should be no objection to the inclusion of use of the proposed language in the Plan and any confirmation order.

## STATEMENT THAT NO BRIEF IS NECESSARY

43.    As no novel issue of law is raised by the within Objection and the relevant authorities relied upon by Lead Plaintiffs are set forth herein, Lead Plaintiffs respectfully request that the Court waive the requirements of D. Del. LR 7.1.2, incorporated in these proceedings by Local Rule 1001-1(b), of filing a separate brief in support of the Objection.  However, if the Court determines otherwise, Lead Plaintiffs respectfully request the opportunity to submit an appropriate brief or memorandum.

Dated: January 14, 2009
      Wilmington, Delaware

CROSS & SIMON LLC

By: _____
Christopher P. Simon (No. 3967)
913 North Market St., 11th Floor
P.O. Box 1380
Wilmington, Delaware 19899-1380
302.777.4200 (Telephone)
302.777.4224 (Facsimile)
csimon@crosslaw.com

-and-

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
Ira M. Levee, Esq.
65 Livingston Avenue
Roseland, New Jersey  07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and
the Putative Class*

-and-

**BERNSTEIN LITOWITZ BERGER &**
**GROSSMANN LLP**
Steven B. Singer, Esq.
Avi Josefson, Esq.
1285 Avenue of the Americas
New York, New York 10019
212.554.1400 (Telephone)
212.554.1444 (Facsimile)

**BERMAN DEVALERIO PEASE**
**TABACCO BURT & PUCILLO**
Jeffrey C. Block, Esq.
Kathleen M. Donovan-Maher, Esq.
Autumn W. Smith, Esq.
One Liberty Square
Boston, Massachusetts  02109
617.542.8300 (Telephone)
617.542.1194 (Facsimile)

*Co-Lead Counsel to Lead Plaintiffs and the*
 *Putative Class*