**American Home Mortgage Compliance**
John Kalas Senior Vice President
Deputy General Counsel
538 Broadhollow Road
Melville NY 11747
Phone  631-622-6476
Fax  516-495-5418



**AH Mortgage Acquisition Co., Inc., an affiliate of**

**WL Ross & Co. LLC**
1166 Avenue of the Americas
New York  New York 10036
Phone  212-826-1100
Fax   212-317-4891

**American Home Mortgage Servicing**
ATTEN: David Friedman
4600 Regent Boulevard, Suite 200
Irving, TX 75063

FROM:  Dr. David and Elisabeth Jackson
RE:  12787 Lavender Keep Circle
Fairfax VA., 22033

**Account  #0001215617**

5/10/2008

Please treat this letter as a **"qualified written request"** under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).

This is also a TILA loan rescission letter. Dr. David and Elisabeth Jackson  hereby assert notice of right of rescission of the contract.  Upon giving of this notice, the security interest in 12787 Lavender Keep Circle  Fairfax VA., 22033,  Account # 0001215617, giving rise to the right of rescission becomes void and I shall not be liable for any amount, including any finance charge. CFR226.23(d)(1).

Within 20 days the creditor must take any action required to cancel the security interest and must return any money paid on the loan 12 C.F.R. 226.23(d)(2).

Failure to respond to the rescission notice as spelled out above results in another violation and an addition award of statutory damages. *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Mayfield v. Vanguard Savings & Loan*, 710 F. Supp. 143, 145 (E.D. Pa. 1989).

I am making this request due to my dispute of the amount alleged to be due and owing due to fraudulent concealment of material loan terms. The Pay Option Arm loan was

grossly misreprested. Fraud was committed in concealing the material loan terms of the pay option arm loan and has caused  Dr. David and Elisabeth Jackson severe financial harm. The loan origination has violations of TILA and RESPA and VA state consumer protection laws.

The broker, Cateret Mortgage Corporation, doing business at 950 Herndon Parkway #230, Herndon VA, 20170,  was paid an exhoribitant YSP of **$26,245** for acting in civil conspiracy with American Brokers Conduit and the ultimate holder of this note ( Trust). Upon information and belief Cateret does substantial business with American Home Mortgage.

Dr. David and Elisabeth Jackson made loan application for $724,000 at 1% interest rate as expressed clearly of the URLA. This rate was expressed as being a "fixed 1% interest rate" for five years to adjust after that. In truth and in fact, this 1%  interest rate was for only a few days and a substantially higher rate was charged floating based on an index and margin which was not explained.

ALL the documents express that this was a 1% interest rate. Our first payment coupon, enclosed at settlement states the payment to be "Principal and Interest" of $1,830.68 plus escrows of $573.67 for a total monthly payment of $2,404.35.  Nowhere does it state any other amount to pay, nor that if we pay this amount negative amoritization would occur. All subsequent payment coupons ask us to pay this amount. No  amortization schedule was given to show the effect of making the minimum payment, and if a basic amoritization is run, the actual TILDS becomes grossly understated in that the actual finance charges would be substantially higher.

The final TILDS states only that the loan is conventional with not other terms descibing the loan, and that the APR is 7.460%. Considering the adjustable rate rider says we will pay 7.438% only a few days after closing, it appears that the 1% rate given for only days was used to lower this figure and mislead us.  Even on the adjustable rate rider it isn't clear what the adjustments would be based on and it only references a 3.550% margin added to an index of which the ordinary consumer would not understand. This is purposeful and deceitful to mislead borrowers into highly profitable loans based on an index that American Home Mortgage knew was increasing.

No information or explanations or history of these indexes was given. This margin directly cooresponds with the  incentives upon which the broker earned his exhorbitant YSP.  As borrowers we were not aware we were the victims of a civil conspiracy and purposefully misled into this sub prime loan when in fact we were prime credit borrowers with a **credit score of  731.**

No prepayment penalty was discussed or disclosed and was added at the last minute to trap us into this loan. The bait was set and the switch ensued. A 2 % prepayment premium was added and was one of the incentives upon whoch the broker earned his exhorbitant YSP.  All required disclosures and placement of disclosure under TILA were violated.

Taking a 20-minute loan application and collecting credit documents is an actual service; it's necessary to the loan origination process. So next question is: Is that worth the YSP payment of **$26,245?**  If payment exceeds market value, that excess is considered a kickback. In fact the YSP incentive based (kickback) is actually what the YSP is based on. A rate sheet provided by the lender to the broker provided for incentives for certain terms, including interest rate, type of loan, prepayment penalty, margin, loan term, and even first position financing vs. a second lien or HELOC.  So American Home Mortgage corrupted the fiduciary duty brokers owed to borrowers and Cateret acting in collusion with "AHM/ABC" did  conspire to commit Fraud upon the Jackson's.

Further, HUD informal advisory opinions have stated that if payments aren't *__transactionally based__*, they're not prohibited by RESPA. A payment for services rendered is transactionally based if the amount of the payment is determined by whether the services resulted in a successful transaction. Therefore, payment may not be tied to the success of your efforts but must be a **flat fee that represents the fair market value.**

hrough various brokers American Home Mortgage,  formulates, directs, and controls the acts and practices of the brokers, through signing them up as agents with American Brokers Conduit, and paying YSP based incentives for certain types of loans, and  loan terms desireable and highly profitable to the owners of the note.

Essentially all of American Home loans are held in a securitized trust, and I demand you provide the owner of my loan or master servicer information as required under 15 USC TILA Sec. 1641 (f) (2) which states in part: "Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."

According to SEC filings, violations of  law may subject the trust, as an assignee of the loans, to liability for expenses, damages and monetary penalties resulting from the violation, subject the trust to an administrative enforcement action,  provide the borrower with the right to rescind the loan, and  provide the borrower with set-off rights against the trust.

**The trust is liable for any violations of the following:**
Numerous Federal consumer protection laws impose substantial requirements on creditors involved in consumer finance. These laws include:
The Federal Truth-in-Lending Act and Regulation Z,  Real Estate Settlement Procedures Act and Regulation X, Equal Credit Opportunity Act and Regulation B,
Fair Credit Billing Act, Fair Credit Reporting Act, Fair Housing Act, Housing and Community Development Act, Home Mortgage Disclosure Act,
Federal Trade Commission Act, Fair Debt Collection Practices Act,
Uniform Consumer Credit Code, Consumer Credit Protection Act,
Riegle Act, and  related statutes and regulations, State consumer protection laws,
 disclosures required to be made to borrowers, debt collection practices,
origination practices, and servicing practices.

The so-called *"Holder-in-Due-Course"* Rules of the Federal Trade Commission have the effect of subjecting a seller, and certain related creditors and their assignees in a consumer credit transaction and any assignee of the creditor to all claims and defenses which the debtor in the transaction could assert against the seller of the goods Liability under the Holder-in-Due-Course Rules is subject to any applicable limitations implied by the Riegle Act and is limited to the amounts paid by a debtor on the residential loan, and the holder of the residential loan may also be unable to collect amounts still due under those rules. If a residential loan is subject to the requirements of the Holder-in-Due-Course-Rules, the trustee will be subject to any claims or defenses that the debtor may assert against the seller.

Under UCC code, I demand to know the "Holder in due course" Section § 3-302 as defined under this article, of My "Note" as defined under Section § 3-104 which is "Payable at a definite time" as defined under Section § 3-108. I demand to know to whom it is payable under "Payable to bearer" Section § 3-109, and the "Person entitled to enforce" as defined under Section § 3-301 and I immediately require the IDENTIFICATION OF PERSON TO WHOM INSTRUMENT IS PAYABLE as defined in § 3-110.

I demand to know the entire chain of title to my mortgage note. I demand all transfer documentation if my mortgage note if it has been sold, traded, bifurcated, securitized as part of a loan pool, or otherwise encumbered and you are not the legal holder or person to exercise the right of rescission against as defined under § 3-305. DEFENSES AND CLAIMS IN RECOUPMENT.

I'm fully aware that you have this information at your immediate disposal and under RESPA you are required to "FULLY" respond to my requests. RESPA provides that, "if any servicer of a federally related mortgage loan receives a qualified written request ("QWR") from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A).

A QWR is a written correspondence, which does not appear on a payment coupon or other medium provided by the servicer, that "(i) includes, or otherwise enables the servicer to identify the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* § 2605(e)(1)(B).

A LENDER'S SUBJECTIVE BELIEF THAT IT HAS RESPONDED FULLY TO QUALIFIED WRITTEN REQUESTS IS IMMATERAL. *Holland v. GMAC Mortgage Corp.*, No. 03-2666-CM, 2006 U.S. Dist. LEXIS 25723 (D. Kan. 2006)

On the response to QWRs issue, the Court determined that, although GMACM had replied in writing to two of plaintiff's QWRs, its responses violated RESPA because GMACM **failed to explain that it had conducted an investigation into the plaintiff's inquiries and failed to address the bulk of the plaintiff's inquiries**. GMACM contended that there were no RESPA violations because it had subjectively believed that it responded fully to the plaintiff's correspondence. The Court rejected the relevancy of mortgage **companies' subjective beliefs regarding the RESPA rules for QWR compliance.**

   I understand that the 78 securitized trust which loans are held in, are statutory trust organized under the laws of the State of Delaware. These trust are separate legal entities and are bankruptcy remote, therefore although the originator of my loan was American Home Mortgage, the current owner of my loan is a trust. The trust my loan is in may or may not be managed by the American Home Mortgage executives as some loans are sold to third parties.

   ou are not allowed as simply the servicer to protect these parties by obfuscating the true owner of the note. As included in the APA agreement when AH Mortgage Acquisitons agreed to purchase the servicing platform of American Home Mortgage the protections afforded consumer under 363(o) were included. As such, the purchase of this "servicing interest" in the consumer credit transactions, if done inappropriately will subject the servicing unit to legal claims.

## A. INFORMATION AND DOCUMENTS REQUESTED

Please provide a copy of the <u>complete loan file and servicing file records including all call in records of attempts I've made to contact the servicing unit.</u>  **"See Exhibit A":**

I have attempted to contact you repeatedly about my issues with this loan and have not received any assistance. To negotiate a settlement and resolve this matter in an efficient and timely matter and to mitigate the damages to all parties involved, please respond and inform us of how you would like to proceed.

Thank you for taking the time to acknowledge and answer this request as required by the Real Estate Settlement Procedures Act (sec. 2605(e).

Sincerely,

_(signature)_     DATE: 1/19/09

_(signature)_     DATE: 1/19/09

## MEMORANDUM OF POINTS AND AUTHORITIES

## THE REAL ESTATE SETTLEMENT PROCEDURES
## ACT OF 1974

### RESPA COMPLAINTS
**Ms. Eddie Norsleet**
Office of RESPA and Interstate Land Sales, Department of Housing and Urban
Development, 451 Seventh Street, S.W., Room 9146, Washington, DC 20410.

Under certain sections of the RESPA, consumers can initiate lawsuits and obtain actual
damages, plus additional damages, for a pattern or practice of noncompliance.
In successful actions, consumers also may obtain court costs and attorney's fees.

### TITLE 12--BANKS AND BANKING
### CHAPTER 27--REAL ESTATE SETTLEMENT PROCEDURES

Sec. 2605. Servicing of mortgage loans and administration of escrow accounts
(e) Duty of loan servicer to respond to borrower inquiries
(1) Notice of receipt of inquiry
(A) In general
If any servicer of a federally related mortgage loan receives a qualified written request
from the borrower (or an agent of the borrower) for information relating to the servicing
of such loan, the servicer shall provide a written response acknowledging receipt of the
correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays)
unless te action requested is taken within such period.

**(B) Qualified written request**
For purposes of this subsection, a qualified written request shall be a written
correspondence, other than notice on a payment coupon or other payment medium
supplied by the servicer, that—
(i) includes, or otherwise enables the servicer to identify, the name and account of the
borrower; and
(ii) includes statement of the reasons for the belief of the borrower, to the extent
applicable, that the account is in error or provides sufficient detail to the servicer
regarding other information sought by the borrower.

**(2) Action with respect to inquiry**
Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the
receipt from any borrower of any qualified written request under paragraph (1) and, if
applicable, **before taking any action with respect to the inquiry of the borrower, the
servicer shall--**
(A) make appropriate corrections in the account of the borrower, including the crediting
of any late charges or penalties, and transmit to the borrower a written notification
of such correction **(which shall include the name and telephone number of a**

**representative of the servicer who can provide assistance to the borrower);**
(B) after **conducting an investigation**, provide the borrower with a **written explanation** or clarification that includes--
(i) to the extent applicable, a **statement of the reasons** for which the servicer believes the account of the borrower is correct as determined by the servicer; and
(ii) the **name and telephone number of an individual employed by**, or the office or department of, the servicer who can provide assistance to the borrower; or
(C) **after conducting an investigation**, provide the borrower with a **written explanation** or clarification that includes--
(i) **information requested by the borrower** or an **explanation of why the information requested is unavailable** or cannot be obtained by the servicer; and
(ii) the **name and telephone number of an individual employed by**, or the office or department of, the servicer who can provide assistance to the borrower.

On numerous occasions American Home Mortgage paid or accepted a fee, kickback, or thing of value pursuant to an agreement or understanding that business incident to or a part of a real estate settlement service involving federally related mortgage loans would be referred to a person in violation of Section 8(a) of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2607(a).

On numerous occasions American Home Mortgage accepted a portion, split, or percentage of a charge or charges made or received for the rendering of real estate settlement services in connection with transactions involving federally related mortgage loans other than for services actually performed in violation of Section 8(b) of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2607(b).

**RESPA** requires a good-faith estimate of settlement costs within **3 days** of when a consumer applies for a loan.

Failure to comply with RESPA statutes avails the consumer to pursue civil remedies under State Consumer Fraud laws.

RESPA requires borrowers to be provided with a good faith estimate ("GFE") listing the "amount or range" of settlement charges within three days of receiving a loan application." 12 U.S.C. § 2604(c); 24 C.F.R. § 3500.7(c). To comply with RESPA, a GFE must include "indirect payments or back-funded payments to mortgage brokers that arise from the settlement transaction" and "mortgage broker fee[s]." 24 C.F.R. § 3500, App. A § L; *Anderson v. Wells Fargo Home Mort., Inc.*, 259 F. Supp. 2d 1143, 1146 (W.D.Wash. 2003).

GOOD FAITH ESTIMATES THAT MAKE NO MENTION OF YSPs PAID TO BROKERS ARE INADEQUATE UNDER RESPA; GOOD FAITH ESTIMATES IDENTIFYING A YSP RANGE BUT FAILING TO SPECIFY AN AMOUNT MAY RAISE AN ISSUE FOR TRIAL. *Pierce v. Novastar Mortgage, Inc.,* **No. Co5-5835RJB, 2007 U.S. Dist. Lexis 18336 (W.D. Wash. 2007)**

(1) use of GFEs that did not mention YSPs where YSPs were nevertheless assessed; (2) use of GFEs with a stated YSP ranging from zero percent and totaling $0; and (3) use of GFEs that mentioned YSPs, but did not include any indication of a supposed dollar amount. GFEs which were silent about the possibility of YSP payments violated RESPA. The Court also ruled that these GFEs were *per se* unfair and deceptive under Consumer Protection Act.

RESPA's requirement that a HUD-1 "shall conspicuously and clearly itemize all charges imposed on the borrower." 12 U.S.C. § 2603(a).

HUD Regulation X (24 C.F.R. § 3500, *et seq.*).
**Coverage:** RESPA covers all federally related mortgages, including loans (both purchase-money mortgages and others) secured by the family home. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

**Prohibition against kickbacks and referral fees:**

12 U.S.C. §2607(a); 24 C.F.R. § 3500.14(b). RESPA prohibits the giving or receiving of any fee, kickback or other thing of value for the referral of a "settlement service" (defined at 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2).

The regulations further state that, "A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section."

 "An agreement or understanding for the referral of business incident to or part of a settlement service need not be written or verbalized but may be established by a practice, pattern or course of conduct." 24 C.F.R. § 3500.14(e).

Yield-spread premiums: A yield spread premium is a fee paid by a mortgage lender to a mortgage broker for arranging a loan with an interest rate at a higher amount than the par rate. Payment of a yield spread premium is not a per se violation of this section, but may be illegal under RESPA based on a factual inquiry into the circumstances surrounding the payment. *Vargas v. Universal Mortgage Corp.*, 2001 U.S. Dist. LEXIS 6696, 6 (N. Dist. Ill. 2001); *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692 (11th Cir. 1998).

**RESPA 12 USC 2601(a) REMEDIES** – Full Loan Rescission—Order to Dismiss the Complaint for Foreclosure of Mortgage. All payments paid should be credited against the principal.

## THE TRUTH IN LENDING ACT

Disclosures must be made clearly and conspicuously in writing in a form that the consumer may keep. Section 226.17 of Regulation Z, 12 C.F.R. § 226.17.

American Home Mortgage aforesaid acts and practices violate Sections 106, 107, and 128 of the TILA, 15 U.S.C. §§ 1605, 1606, and 1638, as amended, respectively, and Sections 226.4, 226.4(d), 226.22 and 226.18(b), (d) and (e) of Regulation Z, 12 C.F.R. §§ 226.4, 226.4(d), 226.22 and 226.18(b), (d) and (e), respectively, and constitute unfair and deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**"The Truth In Lending Act (TILA) is to be liberally construed in favor of consumers, with creditors who fail to comply with TILA in any respect becoming liable to consumer regardless of nature of violation or creditors' intent."**

The Truth In Lending Act ("TILA") is used as legal remedy to recover TILA violation fines and possibly **void the lenders security interest in the property**. The Act is in Title I of the Consumer Credit Protection Act and is implemented by the Federal Reserve Board via The Act is in Title I of the Consumer Regulation Z (12 C.F.R. Part 226). The Regulation has effect and force of Federal law.

TILA "The Seventh Circuit, like most courts interpreting TILA, maintains that disclosures made pursuant to the statute should be viewed from the vantage point of an ordinary consumer as opposed to that of a skilled or informed business person. TILA is aimed at deceptive practices by lenders, not the subjective beliefs or actions of borrowers. Moreover, a plaintiff need not show actual harm to recover from a technical violations of TILA., as they are strict liability offenses.

(*The rescission period clock never starts ticking until the transaction is consummated*) of his/her notice of his/her right of rescission and all other material disclosures required by TILA and the regulations therein. (15 U.S.C. §1635(a).

The Truth in Lending Act (TILA), Title I of the Consumer Credit Protection Act,
1) Early and final Regulation Z disclosure requirements
2) Disclosure requirements for ARM loans
3) Right of rescission
4) Advertising disclosure requirements

TILA requires lenders to make certain disclosures on loans subject to the Real Estate Settlement Procedures Act (RESPA) **within three business days** after their receipt of a written application. This early disclosure statement is partially based on the initial information provided by the consumer. A final disclosure statement is provided at the time of loan closing. The disclosure is required to be in a specific format and include the following information:
1. Name and address of creditor
2. Amount financed
3. Itemization of amount financed (optional, if Good Faith Estimate is provided)
4. Finance charge
5. Annual percentage rate (APR)
6. **Variable rate information**
7. Payment schedule

8. Total of payments
9. Demand feature
10. **Prepayment policy**
11. Late payment policy
12. Security interest
13. Insurance requirements
14. Certain security interest charges

## Disclosure Requirements for ARM Loans:

If the annual percentage rate on a loan secured by the consumer's principal dwelling may increase after consummation and the term of the loan exceeds one year, TILA requires additional adjustable rate mortgage disclosures to be provided, including:
1) The booklet titled Consumer Handbook on Adjustable Rate Mortgages, published by the Board and the Federal Home Loan Bank Board or a suitable substitute.
2) A loan program disclosure for each variable-rate program in which the consumer expresses an interest. The loan program disclosure shall contain the necessary information as prescribed by Regulation Z.
TILA requires servicers to provide subsequent disclosure to consumers on variable rate transactions in each month an interest rate adjustment takes place.

The consumer may exercise the right to rescind until midnight of the third business day following consummation of the transaction; delivery of the notice of right to rescind; **or delivery of all material disclosures, whichever occurs last. When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective for all consumers.**

*"When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer will no longer be liable for any amount, including any finance charge. Within 20 calendar days after receipt of a notice of rescission, the lender is required to return any money or property that was given to anyone in connection with the transaction and must take any action necessary to reflect the termination of the security interest. If the lender has delivered any money or property, the consumer may retain possession until the lender has complied with the above."*

**When does the three-day rescission time clock begin to tick?**
The three-day right of rescission period begins once the material disclosures and notice have been given, and lasts three full business days. Business days are defined by Regulation Z to include all calendar days except Sundays and federal holidays. Saturday IS considered a business day for rescission purposes, regardless of whether your offices are open.

Reverse redlining claims under ECOA, FHA, TILA, RICO and for civil conspiracy.

Reverse redlining requires four proof elements: (1) Female -a member of a protected class; (2) application for and qualification for loans; (3) loans granted on "grossly unfavorable terms"; and (4) that the lender continues to provide loans to other applicants

with similar qualifications but on significantly more favorable terms; or alternatively, that the lender "intentionally targeted" borrowers for unfair loans on the basis of race, sex or marital status).

7/25/01 Associates Home Equity Services, Inc. v. Troup, 343 N.J. Super. 254, 778 A. 2d 529 (N.J. 2001) (counterclaim in foreclosure action alleging reverse redlining by the original lender in violation of the FHA, TILA, the Civil Rights Act, and the Md UDAP and anti-discrimination statutes; cannot be dismissed without the plaintiff having an opportunity to conduct discovery on the reverse redlining claim).

**Sources of law:**
15 U.S.C. § 1601, *et seq.*
Regulation Z (12 C.F.R. 226).
The Federal Reserve Board's Official Staff Commentary on Regulation Z (12 C.F.R. 226.36, Supplement I). *Ford Motor Credit v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive").

**Substantive requirements:**
Clear, conspicuous, and accurate disclosures of loan terms set forth in 12 C.F.R. 226.18 ("Content of Disclosures"). *In re Ralls*, 230 B.R. 508 (Bankr. E.D.Pa. 1999); *In re Cook*, 76 B.R. 661 (Bankr. C.D.Ill. 1987).

Every loan charge must be properly disclosed as either part of the "amount financed," which represents "the amount of credit provided to you or on your behalf," 12 C.F.R. 226.18(b), or as part of the "finance charge," which represents "the dollar amount the credit will cost you," 12 C.F.R. 226.18(d).

The "annual percentage rate" (APR) combines the interest rate and additional up-front (prepaid) finance charges to yield the total "cost of your credit as a yearly rate." 12 C.F.R. 226.18(e). *In re Hill*, 213 B.R. 934 (Bankr. D.Md. 1997).

The finance charge is computed according to the rules set forth in 12 C.F.R. 226.4 ("Finance Charge").

The finance charge includes "any charge payable directly or indirectly by the creditor as an incident to or a condition of the extension of credit," 12 C.F.R. 226.4(a), unless a charge is specifically excluded. The most pertinent exclusions in the context of real-estate loan transactions are as follows:

**Remedies:**
Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. 12 C.F.R. 226.23(a)(3). Material disclosures include the: (1)

annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule. 12 C.F.R. 226.23(a)(3) n.48.

There are statutory "tolerances" for the APR and the amount financed and finance charge. Violations are deemed non-material if they fall within these tolerances.

The APR tolerance is .125% for regular loans and .25% for irregular (variable-rate) loans. 12 C.F.R. 226.22(a).

The finance charge tolerance for defendants in **foreclosure actions is $35** (for rescission), 12 C.F.R. 226.23(h), and $100 (for monetary damages), 12 C.F.R. 226.18(d)(1).

The rescission remedy runs against any assignee: "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill. 1996); *Stone v. Mehlberg*, 728 F.Supp. 1341 (W.D.Mich. 1989).

Upon rescission, "the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge" (step one). 12 C.F.R. 226.23(d)(1). Within 20 days the creditor must take any action required to cancel the security interest and must return any money paid on the loan (step two). 12 C.F.R. 226.23(d)(2).

If and when the creditor does so, the consumer must tender to the creditor the value of the money or property received (step three). 12 C.F.R. 226.23(d)(3). The tender amount is reduced by any amount paid on the loan (unless previously returned). *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Williams v. Gelt*, 237 B.R. 590, 598-99 (E.D. Pa. 1999). Courts can modify steps two and three of the above rescission process. 12 C.F.R. 226.23(d)(4).

Creditors are also liable for actual damages, statutory damages in the amount of twice the finance charge, up to $2,000, and attorney's fees and costs. 15 U.S.C. § 1640(a). Failure to respond to the rescission notice as spelled out above results in another violation and an addition award of statutory damages. *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Mayfield v. Vanguard Savings & Loan*, 710 F. Supp. 143, 145 (E.D. Pa. 1989).

Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents. 15 U.S.C. § 1641(a).

**Statute of limitations:**
1 year for affirmative claims. 15 U.S.C. § 1640(e).
3 years for rescission. *Beach v. Ocwen*, 523 U.S. 410 (1998)

## U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS

UCC code applies to the trust. The trust is a separate legal entity which can be sued. The <u>Uniform Commercial Code</u> (UCC) and its state law derivatives afford consumer contracts unique protections. Contract is void according to § 3-305. DEFENSES AND CLAIMS IN RECOUPMENT (ii)(iii). The illegal basis of the contract build upon fraud, negligence and misrepresentation of essential terms renders it null and **void.**

This remedy goes against any assignee of the note. In addition, an obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a <u>holder in due course</u> and the obligor <u>proves</u> that the instrument is a lost or stolen instrument.

## § 3-305. DEFENSES AND CLAIMS IN RECOUPMENT.

(a) Except as otherwise provided in this section, the right to enforce the obligation of a <u>party</u> to pay an <u>instrument</u> is subject to the following:
(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, **(ii) <u>duress</u>, lack of legal capacity, or <u>illegality of the transaction</u> <u>which, under other law, nullifies the obligation of the obligor, (iii) fraud that</u> <u>induced the obligor to sign the instrument with neither knowledge nor reasonable</u> <u>opportunity to learn of its character or its essential terms,</u>** or (iv) discharge of the obligor in insolvency proceedings;
(2) a defense of the obligor stated in another section of this Article or a defense of the obligor that would be available if the <u>person entitled to enforce</u> the <u>instrument</u> were enforcing a right to payment under a simple contract; and
<u>(3) a claim in recoupment of the obligor against the original payee of the instrument if the</u> <u>claim arose from the transaction that gave rise to the instrument; but the claim of the</u> <u>obligor may be asserted against a transferee of the instrument only to reduce the amount</u> <u>owing on the instrument at the time the action is brought.</u>
(b) The right of a <u>holder in due course</u> to enforce the obligation of a <u>party</u> to pay the <u>instrument</u> is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.
(c) Except as stated in subsection (d), in an action to enforce the obligation of a <u>party</u> to pay the <u>instrument</u>, the obligor may not assert against the <u>person entitled to enforce</u> the instrument a defense, claim in recoupment, or claim to the instrument (Section <u>3-306</u>) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument.
<u>An obligor is not obliged to pay the instrument if the person seeking enforcement of the</u> <u>instrument does not have rights of a holder in due course and the obligor proves that the</u> <u>instrument is a lost or stolen instrument.</u>

### ***COMMON LAW – VOIDABLE TITLE***

1. Common Law Title Rule:
   - ✦ Voidable title → UCC 2-403(1) – passage of title by fraud – codifies and defines common law rules of voidable titles – eg, a dishonored check; title acquired by fraudulent means.
   - ✦ Entrusting to a merchant →
   - ✦ Equitable Estoppel →
2. Equitable estoppel: *also called estoppel in pais: Can only arise when a person has induced another person to act in a particular manner.* The doctrine prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice. (*Porter v Wertz*)

Security interest in her home completely void due to all of the acts and predicate acts contained herein.

### UTP

American Home Mortgage did engage in numerous practices found throughout this RESPA letter which any jury would find outrageous, unjust, fraudulent and unfair in violation of the Deceptive Business Consumer claims for sales abuses or misrepresentations. These practices are covered under Unfair Trade Practices and Consumer Protection Law ("UTP"). Damages and rescission should be awarded.

### ***DECEPTIVE BUSINESS PRACTICES ACT***

**Unfair and deceptive practices.**

- Not providing the same interest rates and discount points for similarly-situated consumers.
- Paying sales personnel incentives to include prepayment penalties or any other fees or charges in the mortgages.
- Not providing full disclosure regarding interest rates, discount points, prepayment penalties, and other loan or refinancing terms.
- Not providing accurate good faith estimates, or good faith estimates within 3 days of making loan application.

Violations of the Deceptive Business Practices Act do exist. Under the Consumer Fraud and Deceptive Business Practices Act, it is a violation to pay the broker a YSP for rate based incentive terms favorable to the lender. American Home did engage in deception to get business using unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material

fact, with the intent that consumer rely upon the concealment, suppression or omission of such material fact, or the use or employment of practices as described in Section 2 of the **"Uniform Deceptive Trade Practices Act"** approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." **Section 5(a) of the FTC Act ( 15 USC 45)**

## FTC Act ( 15 USC 45)

Section 5 of the FTC Act prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission will find deception if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. ~ FTC Policy Statement on Deception, appended to Cliffdale Associates. Inc.. 103 F. T .C. 110, 174 (1984). 15 U.S.C. § 45(a)(2)

## VIOLATIONS OF THE FEDERAL TRADE COMMISSION ACT

**Federal Trade Commission**
The FTC works for the consumer to prevent fraudulent, deceptive and unfair business practices in the marketplace. 1-877-FTC-HELP (1-877-382-4357); TTY: 1-866-653-4261.

The practices contained herein offend public policies and are immoral, unethical, oppressive and unscrupulous causing substantial harm to consumers.
THESE' practices constitute deceptive acts or practices in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

The **Best Practices standards** recently set out in a **Federal Trade Commission** settlement with Fairbanks Capital Holding Corp. states that borrowers have a right to be treated fairly. Mortgage servicers may not: **Refuse to respond to borrowers' complaints or requests for information.**

## Common Law Fraud or Unconscionability

**Unconscionability occurs when meaningful choice is absent on the part of one party to a transaction and the contract terms are unreasonably favorable to one of the parties.**

Fraud occurred when American Home Mortgage did the following:
Made a false statement of material fact, that was known to be or believed to be false when made, that was intended to induce the Jackson's to act and, led to subsequent action

by the Jackson's in reliance on the validity of the representation and this resulted in damage to the Jackson's.

## RESPA OVERVIEW

### A. General Purpose

The Real Estate Settlement Procedures Act of 1974 (12 USC § 2601) ("RESPA"), together with HUD's Regulation X  (24 CFR § 3500) promulgated by the Department of Housing & Urban Development ("HUD"), seeks to create a uniform disclosure and settlement procedure for residential mortgage transactions. RESPA prohibits kickbacks and referral fees and reduces the amounts permitted to be held in escrow accounts. Regulation X establishes additional requirements to facilitate uniformity in disclosures for certain federally related mortgage loans (as defined in § 3500.2).

### C. Disclosure Requirements

RESPA requires the following disclosures in connection with federally related mortgage loans:

> 1. *Special Information Booklets; Good Faith Estimates of Settlement Services.*
> Special information booklets and good faith estimates of settlement services must be given to mortgage loan applicants/borrowers within a prescribed period of time after receipt of an application. If the lender requires the use of a particular provider of settlement services and the borrower is required to pay any portion of the costs of such services, then the lender must include an additional disclosure as part of the good faith estimate of closing costs.

> 2. *HUD-1/1A Settlement Statement.* A uniform settlement statement must be **delivered at closing** and must be made available for inspection one business day prior to the closing.

### D. Kickbacks and Unearned Fees

RESPA prohibits the payment or acceptance of any fee, kickback or "thing of value" pursuant to any agreement or understanding that business incident to or a part of a settlement service shall be referred to any person. Further, RESPA prohibits the payment or acceptance of any portion, split or percentage of any charge made or received for the rendering of a settlement service other than for services actually performed. Special rules govern "affiliated business arrangements" which are defined as arrangements in which: a person who is in a position to refer business incident to or a part of a settlement service involving a federally related mortgage loan (or an associate of such person), has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1

percent in a provider of settlement services; and either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.

Violation of the provisions of Section 8 of RESPA (relating to kickbacks and referral fees) may result in a fine of not more than $10,000 or imprisonment for not more than a year, or both. Additionally, **any person who violates Section 8 is liable to the person charged for the settlement service involved in the violation in an amount equal to three times the amount of the charge paid for such settlement service.**

Any seller who violates the provisions of Section 9 of RESPA (relating to requiring use of a particular title company) is liable to the buyer in an amount equal to three times all charges made for title insurance.

## RESPA
**The Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq., 24 C.F.R. Part 3500 et seq., 1974.**

For junk fees and kick-backs, there is a private cause of action for which damages can amount to three times the amount of any charge paid for such settlement service, plus attorney's fees and costs.

**RESPA requires:**
➢ a good-faith estimate of settlement costs within 3 days of when a consumer applies for a loan.
➢ It also prohibits certain junk fees and kick-backs.
➢ It is not a private cause of action, but failure to comply may be probative of liability under the Consumer Fraud Act.

**RESPA 12 USC 2601(a) YSP**
**REMEDIES** – Full Loan Rescission—Order to Dismiss the Complaint for Foreclosure of Mortgage. All payments paid should be credited against the principal.

For **junk fees and kick-backs, there is a private cause of action** for which damages can amount to 3X times the amount of any charge paid for such settlement service, plus attorney's fees and costs.

**The amount paid to you must be commensurate with the value of those goods and services.** Let's say that same lender wants to pay you for taking a loan application. Taking a 30-minute loan application (if allowed by your state) and collecting credit documents is an actual service; it's necessary to the loan origination process; and it's distinct from other services you provide in listing or selling property. Assuming the payment is commensurate with the market rate for taking an application, and otherwise complies with state law, the payment should be legal under RESPA. If payment exceeds

market value, that excess will be considered a kickback that violates the act.

Further, HUD informal advisory opinions have stated that if payments aren't **_transactionally based,_** they're not prohibited by RESPA. A payment for services rendered is transactionally based if the amount of the payment is determined by whether the services resulted in a successful transaction. Therefore, payment may not be tied to the success of your efforts but must be a flat fee that represents the fair market value.


**Sections 4 & 5 of RESPA** prohibit a bank from <u>charging you more at closing</u> than they told you they would charge when you first applied for the loan. To determine whether they have been over-charged, the buyer should compare the <u>good faith settlement</u> they received when they were first approved for a loan with the <u>HUD-1 settlement</u> form they received just before
the loan closed. If the costs are different, ask the lender for a written explanation of the increase. Remember, make your request pursuant to Section 6 of RESPA as described below.

**Section 8 of RESPA** prohibits anyone from <u>giving or accepting a fee,</u> kickback or anything of value in exchange for referring business to someone else in a real estate transaction. For example, your real estate agent cannot get a kickback for referring you to a mortgage broker to get a loan. In fact, <u>if your agent insists</u> you work with a particular company, such as a bank or inspector, you might question their real motivation for insisting you work with a particular company - is that company really the most qualified for the job <u>or is the agent getting a kickback in exchange for making the referral.</u> This section of the law also prohibits someone from charging you for services that were not performed.

RESPASection 8(b) addresses the practice of being paid *at all* for doing *nothing*, not the practice of being paid *too much* for doing *something.*"


You have the right to rescind the transaction within 3 days of receipt **_(The rescission period clock never starts ticking until the transaction is consummated)_ of his/her notice of his/her right of rescission and all other material disclosures required by TILA** and the regulations therein. (15 U.S.C. §1635(a).

**Truth in lending act -- Regulation Z**
1) Early and final Regulation Z disclosure requirements
2) Disclosure requirements for ARM loans
3) Right of rescission

4) Advertising disclosure requirements
TILA requires lenders to make certain disclosures on loans subject to the Real Estate Settlement Procedures Act (RESPA) within three business days after their receipt of a

written application. This early disclosure statement is partially based on the initial information provided by the consumer. A final disclosure statement is provided at the time of loan closing. The disclosure is required to be in a specific format and include the following information:

1. Name and address of creditor
2. Amount financed
3. Itemization of amount financed (optional, if Good Faith Estimate is provided)
4. Finance charge
5. Annual percentage rate (APR)
6. Variable rate information
7. Payment schedule
8. Total of payments
9. Demand feature
10. Total sales price
11. Prepayment policy
12. Late payment policy
13. Security interest
14. Insurance requirements
15. Certain security interest charges
16. Contract reference
17. Assumption policy
18. Required deposit information

## Disclosure Requirements for ARM Loans:

If the annual percentage rate on a loan secured by the consumer's principal dwelling may increase after consummation and the term of the loan exceeds one year, TILA requires additional adjustable rate mortgage disclosures to be provided, including:

1) The booklet titled Consumer Handbook on Adjustable Rate Mortgages, published by the Board and the Federal Home Loan Bank Board or a suitable substitute.

2) A loan program disclosure for each variable-rate program in which the consumer expresses an interest. The loan program disclosure shall contain the necessary information as prescribed by Regulation Z.

TILA requires servicers to provide subsequent disclosure to consumers on variable rate transactions in each month an interest rate adjustment takes place.

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | **Chapter 11** |
| | : | |
| **American Home Mortgage** | : | **Jointly Administered** |
| **Holdings, Inc. et al.,** | : | **Under Case No. 07-11047 (CSS)** |
| | : | |
| | : | |
| **Debtors** | : | |

## OBJECTION TO MOTION FOR DESTRUCTION OF DOCUMENTS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554, AND COMPLAINT FOR <u>PROTECTION OF ORIGINAL DOCUMENTS</u>

(1) Dr. David E. Jackson, and Elisabeth Judith Jackson, respectfully file this motion in objection to docket # 2395, and #4387 and hereby request a complete copy of our loan file for loan #0001215616, property address 12787 Lavender Keep Circle, Fairfax, VA 22033. We declare we are the rightful owners and we agree to pay the cost published of $6.25 to retrieve the hard copy or a photocopy of our loan file. We hereby respectfully request that our original file not be imaged or destroyed until such time we can ascertain if we have all the documents.

(2) On December 14, 2007, the Debtors filed the first petition #2395 requesting an order authorizing the destruction of original loan files and documents or to return them to the owners of such loans upon payment of reasonable costs and expenses.

(3) Subsequently in docket #2539 and #2927, the US Trustee raised the important issue that homeowner's did not receive any notice of such document destruction. We are one of those

---

1.  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Investment"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc.( "AHM Servicing"), aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558); American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

1

homeowners' who did not receive any notification but would like a complete copy of our loan file before any destruction of documents takes place. Considering that our loan is held in one of the American Home Mortgage LLC's it is possible that our loan file will not be retrieved by a third party.

(4) It is clear that numerous parties of interest, have requested but have had problems in obtaining loan files from American Home even after going through the stipulated process to retrieve them, including parties associated with our loan trust, Wells Fargo, and Deutsche Bank.

(5) Insurers have also expressed problems with destruction of files and the need to preserve them to protect the interest. Our loan, according to the SEC filing, ( 1215617 Full / Alternate Century-National Insurance)  may be insured by CIFG Assurance North America and/or CDC IXIS Financial Guaranty North America Inc.

(6) Upon  information and belief, our loan #1215617  is located in American Home Mortgage Securities LLC in AHMIT  2006-2 Trust. Wells Fargo is the master servicer, and Deutsche Bank is the Indenture Trustee.

(7) American Home Mortgage, through American Home Mortgage Securities LLC,  has control of our loan and the executives of American Home are the managers of this entity and the Trust which controls our loan.   Our original documents are in their possession and that control may affect our legal rights.

(8) On June ⏁⏁, 2008 we  sent a RESPA Qualified Written Request, but considering the rapid timeframe American Home is attempting to conduct the destruction of documents,  we have no guarantee that original documents will not  be destroyed before we even have a chance to obtain them.

(9) At this time we have not had the opportunity for a response from American Home Mortgage Under our RESPA request and in that document we are asking for, among other things,

our loan file, servicing records, and the name of the true owner of the note or master servicer under TILA 1641(f)(2).

(10) Upon information and belief our loan is in AHMIT 2006-2, a Statutory Trust, which is a bankruptcy remote entity, created through a non debtor affiliated entity, American Home Mortgage Securities LLC, and managed by executives of American Home Mortgage. It is believed the Trust was created under the Delaware Statutory Trust Act, 12 Del. C. 3801 et. seq. (the "Act") and the Act specifically provides that a **Delaware statutory trust is a separate legal entity** and may carry on any **lawful business or activity**, whether or not conducted for profit, **including holding or otherwise taking title to property.**

### (11) TRUST INFORMATION

| | |
|---|---|
| Issuing Entity or Trust | American Home Mortgage Investment Trust 2006-2. |
| Title of Series | Mortgage-Backed Notes, Series 2006-2. |
| Cut-off Date | With respect to the mortgage loans June 1, 2006 |
| Closing Date | On or about June 30, 2006. |
| Depositor | American Home Mortgage Securities LLC. |
| Sponsor | American Home Mortgage Acceptance, Inc., an affiliate of the depositor and the RMBS Servicer, and one or more special purpose entities established by American Home Mortgage Acceptance, Inc. or one of its subsidiaries. |
| RMBS Master Servicer | Wells Fargo Bank, N.A. |
| RMBS Servicer | American Home Mortgage Servicing, Inc. |
| Indenture Trustee | Deutsche Bank Trust Company Americas. |
| Owner Trustee | Wilmington Trust Company. |

3

Credit Enhancer                          For the benefit of the Class V-A Notes only,
                                         CIFG Assurance North America, Inc.

Securities Administrator                 Wells Fargo Bank, N.A.

CIFG Assurance North America

CDC IXIS financial guaranty north america inc

### (12) Our Loan Information taken directly from this TRUST - AHMIT 2006-2

Static Pool INFO AMERICAN HOME

1215617 1 A Fairfax VA 22033 724,000.00

1215617 729,404.77 729,404.77 6/1/2006 6/1/2006 1

1215617 1 A Fairfax VA 22033 724,000.00

| EX-4.1 · 1st Page of 525± | No Page-Breaks |
|---|---|
| *Line 13,697:* 1215544 1 A Quincy MA 2169 237,600.00 **1215617 1 A Fairfax VA 22033 724,000.00** 1215776 1 A Warwick RI 2889 285,475.00 ... | |
| *Line 20,289:* 1215544 238,882.04 238,882.04 6/1/2006 6/1/2006 1.9 **1215617 729,404.77 729,404.77 6/1/2006 6/1/2006 1** 1215776 286,809.74 286,809.74 6/1/2006 6/1/2006 1 ... | |
| *Line 26,882:* 1215544 6.993 6.158 707.07 707.07 N Owner Occupied **1215617 7.693 6.983 1,830.68 1,830.68 N Owner Occupied** 1215776 6.893 6.518 918.2 918.2 N Owner Occupied ... | |
| *Line 33,475:* 1215544 Condomimium Purchase 4/1/2046 480 478 **1215617 Pud Cash Out Refi 4/1/2046 480 478** 1215776 Single Family Purchase 4/1/2036 360 358 ... | |
| *Line 40,068:* 1215544 478 3/28/2006 297,000.00 297,000.00 80 **1215617 478 3/29/2006 905,000.00 0 80** 1215776 358 3/31/2006 310,000.00 300,500.00 95 ... | |
| *Line 46,661:* 1215544 5/1/2006 12 Month MTA TM 2.85 0 **1215617 5/1/2006 12 Month MTA TM 3.55 0** 1215776 5/1/2006 12 Month MTA TM 2.75 0 ... | |
| *Line 53,254:* 1215544 0 9.95 2.85 5/1/2006 **1215617 0 9.95 3.55 5/1/2**006 1215776 0 9.95 2.75 5/1/2006 ... | |
| *9,846:* 1215544 Full / Alternate Century-National Insurance Y **1215617 Full / Alternate Century-National Insurance Y** 1215776 Full / Alternate Century-National Insurance Y ... | |
| *Line 66,439:* 1215544 0.375 Y 12 **1215617 0.25 Y 36** 1215776 0.375 Y 12 ... | |
| *Line 73,032:* 1215544 2% 787 25.04 **1215617 2% 731 35.17** 1215776 2% 681 43.72 ... | |

This Note is one of a duly authorized issue of the Issuing Entity's Mortgage-Backed Notes, Series 2006-2 (the *"Notes"*), issued under an Indenture dated as of June 30, 2006 (the *"Indenture"*), between

4

the Issuing Entity, Deutsche Bank Trust Company Americas, as <u>indenture</u> trustee (the *"Indenture Trustee"*) Wells Fargo Bank, N.A., as securities administrator (the *"Securities Administrator"*)

[CIFG Assurance North America, Inc. (the *"Credit Enhancer"*), in consideration of the payment of the premium and subject to the terms of the note guaranty insurance policy (the *"Insurance Policy"*) issued thereby, has unconditionally and irrevocably guaranteed the payment of an amount equal to the Insured Payment with respect to the Class V-A Notes with respect to each Payment Date.]

(13) We have obtained a loan file from the settlement agent, and have our loan files and have already found some discrepancies. The loan file from American Home is crucial to perserving our rights.

### RELIEF REQUESTED

(14) Dr. David E. and Elisabeth Judith Jackson  respectfully requests that the court order we can obtain a complete copy of  our loan file and further order that until we have the chance to review it and ensure it is complete, that our files not be destroyed.

(15) We declare, under penalty of perjury, that we have a legal right to receive this loan file and we request the hard copy of our file to be mailed to us at this address: 12787 Lavender Keep Circle, Fairfax, VA 22033 and we agree to pay the published shipping cost of  $6.25 to retrieve our loan file as stated in the second order  Docket #3010,  page 3.

Respectfully submitted,


_____  Date: 1/19/09
Dr. David E. Jackson

_____  Date: 1/19/09
Elisabeth Judith Jackson

### CERTIFICATE OF SERVICE

5

I hereby certify that on this 15th day of June, 2008, this motion was mailed first class postage paid

to:

Young, Conaway, Stargatt & Taylor
Atten: Margaret Whiteman, Esq.
The Brandywine Bldg.
1000 West Street, 17th Floor
Wilmington DE 19801

Joseph  M. McMahon Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801

United States Bankruptcy Court
824 North Market Street 3rd Floor
Wilmington DE. 19801

American Home Mortgage
Atten: Chris Cavaco
538 Broadhollow Rd.
Melville NY 11747

_____    Date: 1/19/09
Dr. David E. Jackson

_____    Date: 1/19/09
Elisabeth Judith Jackson

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br>et. al.,<br><br>         Debtors,<br><br><br><br>Dr. David and Elizabeth Judith Jackson<br><br><br>MOVANTs | Chapter 11<br><br><br>Case No. 07-11047 (CSS)<br>Jointly Administered<br><br><br><br><br>**Objection Deadline: January 26, 2009**<br>**Hearing Date: TBD** |

## ORDER

Upon consideration of the *Motion of Dr. David and Elizabeth Judith Jackson for an order Deeming Proofs of Claim Timely Filed or, in the Alternative, Allowing the Filing of Late-Filed Claims* ( the "Motion"); and appearing that the Court has jurisdiction in this matter; and it appearing that notice of the Motion as set forth therein is sufficient, and that no other or further notice need be provided; and it appearing based on the evidence presented that the relief is warranted; and after consideration of any responses, objections, answers, and replies to the Motion; and after due deliberation and sufficient cause appearing therefore, it is hereby:

**ORDERED** that the Motion is Granted in all respects; and it is further

**ORDERED** that Dr. David and Elizabeth Judith Jackson Proofs of Claim shall be, and hereby are, deemed timely filed.

Dated:_____          _____
                                        The Honorable Christopher S. Sontchi
                                        United States Bankruptcy Judge

10

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., a Delaware corporation, | ) | |
| et. al., | ) | Case No. 07-11047 (CSS) |
| | ) | Jointly Administered |
| Debtors, | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| Dr. David and Elizabeth Judith Jackson | ) | **Objection Deadline: January 26, 2009** |
| | ) | **Hearing Date: TBD** |
| | ) | |
| MOVANTs | ) | |
| | ) | |

## MOTION OF Dr. David and Elizabeth Judith Jackson  FOR ORDER

## DEEMING PROOFS OF CLAIMS TIMELY FILED OR, IN THE

## ALTERNATIVE, ALLOWING PROOFS OF LATE FILED CLAIMS

Dr. David and Elizabeth Judith Jackson ("Movants"),  party in interest herein, hereby

moves this Honorable Court for an order deeming their proofs of claim filed herewith, to be

timely filed or, in the alternative allowing the late-filing of their Proofs of Claim("The

Motion"). In support of their Motion, Dr. David and Elizabeth Judith Jackson respectfully

state as follows:

---

The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are:
American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment
Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc.
("AHM Investment"), a Maryland corporation (1979);  American Home Mortgage Servicing, Inc.( "AHM
Servicing"), aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York
corporation (1558); American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability
company (1407); Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great
Oak Abstract Corp. ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd.,
Suite 200, Irving, Texas 75063.

1

## JURISDICTION

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1344. This matter is a core proceeding pursuant to 28 U.S. C. §§157(b)(2)(A).

2.    Venue is appropriate pursuant to 28 U.S.C.... §§1408 and 1409.

3.    The statutory predicates for relief are 11 U.S.C. § 1085 and Fed. R. Bankr. P. 3003(c)(3).

## BACKGROUND

4.    Movant believes that the allegations constitute the enforcement of regulatory remedies *§ 362(b)(4)*, sound in fraud,  and may carry criminal penalties. All of these remedies can't be avoided by bankruptcy. Congress clearly intended that perpetrators of fraud should not be given the opportunity to wipe out debts in bankruptcy, and disallowing the acceptance of our Proof of Claim, will severely prejudice our right of due process.

The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, carrying forth a basic policy of affording relief only to an "honest but unfortunate debtor."

Congress did not favor giving perpetrators of fraud a fresh start (by allowing them to wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it wrote the Bankruptcy Laws. Accordingly, Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

4. The Supreme Court has ruled that it is not just the value of the property, but that also includes treble and punitive damages.

It is not only the actual value of the "money, property, services, or . . . credit" the debtor obtained through fraud that is non-dischargeable in bankruptcy, but also treble "punitive" damages and attorneys fees and costs related to the fraud. This was made clear in a March 25,

1998 decision of the Supreme Court of the United States in <u>Cohen v. de la Cruz</u>.

5.      American Home is using this Court and its protections to protect themselves and <u>third party purchasers, and have</u> directly refused to answer my RESPA request and disclose the true owner of Movants loan under TILA 1641(f)(2).

6.      All former financing partners, Master servicers, and Indenture Trustees,  are using this Court and the bankrupt Debtor to hide behind and not answer the allegations, at the same time they are filing hundreds of million of dollars of Claims, which may include claims related to Movant's loan. In this manner, they  complete the agenda to trample Movant's rights.

7.      Movant has requested a complete loan file, and the true owner of the note, through a RESPA letter dated 5/10/08, and a petition in this Court, # 4720 filed June 17 2008. Movant attended the hearing by phone, and the Court ordered for the Jacksons to get the loan file. Complete information has not been provided. So Movant must file against all Debtor entities at this time until American Home discloses the information and releases a complete loan file. Although, American Home ran the bankruptcy as consolidated, they are proposing a Chapter 11 plan which is not consolidated. Due to the substantial intercompany claims, and the Proof of Claims value of recovery based on what entity claims fall against, Movant must have a blanket claim which can be changed if Debtor complies with disclosure.

<u>SEE</u> Exhibit ____

8.      Movant has no idea which Debtor entity their claims would fall against. American Home created 78 securitized trust which are bankruptcy remote and separate legal entities, and Debtor has been unwilling to disclose where Movant's loan is held. Movant own research has identified the Trust believed to be holding the loan but American Home will not confirm.

3

9.  American Home originated loans through American Home Mortgage Acceptance, American Home Mortgage Holdings, American Home Mortgage Corporation, and American Brokers Conduit, as well as several non-debtor subsidiaries. American Home entities then passed loans through SPE entities like American Home Mortgage Securities LLC, American Home securities LLC, and American Home Mortgage Assets LLC, to over 78 AHM securitized trust, and numerous other third party purchasers.

10.  As revealed in Relief From Stay petitions of Paula Rush, Mona Dobben, and other borrowers, the information of the location of the loan is easily ascertainable as an investor code is on every servicing record file. These individual Trusts have a MLPSA agreements, ISDA contracts, Lender Paid Mortgage insurance policies, REMIC, IRS, SEC and other rules which the servicer must follow. Movant does not have the servicing records.

11.      American Home has stated over and over again in this Court that they can't give out or even ascertain this information. This is a false and fraudulent statement on both counts. American Home is well aware of where the loans are located and who is currently the holders in due course, and under TILA 1641(f)(2) they are required to disclose information when asked directly.

12.      American Home is choosing to obfuscate this information. This information is critical to understanding what entity a borrower may have a claim against.

13.  At the hearing on October 31, 2007, Mr. Brady, Attorney for the Debtor, asserted in this Court that American Home Mortgage did not have to comply with TILA 1641(f)(2). Mr. Dickman, as witness for American Home Mortgage servicing, asserted that mortgage investors did not want American Home Mortgage Servicing to comply with TILA 1641(f)(2), stating they pay us to service and field all inquiries. Mr. Dickman

4

stated clearly that the investor and the  master servicer **does not** want them to give the

borrowers this information, and generally speaking they do not give that information to

the borrower. This is not a **choice** they get to make.

Title 15  §1641(a)(b)(c) is clear - All liability in civil action may be maintained

against anyone who is an assignee therefore making the owner of the note an absolute

requirement for the borrowers. Title 15  §1641(f)(2) is clear - Upon written request by the

obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with

the name, address, and telephone number of the <u>owner of the obligation or the master</u>

<u>servicer</u> of the obligation. Title 12  § 2605(e)(A) is clear – The loan servicer has a duty to

respond to borrower inquiries. The Lender has a duty to respond as required under Title

12  §2605 (2)(A)(B)(C).

**NOTIFICATION**

13.      Movant, like most other borrowers were unaware of any requirement to file

a proof of claim, as we were not notified or sent a proof of claim form. Movant had sent a

**RESPA QWR** letter and petitioned into this Court and at no time did anyone make Movant

aware of a need to file a proof of claim or that the deadline had passed.  **SEE** Exhibit **A**.

14.      Movant, like most other borrowers had no way of knowing our

files may be destroyed, deadlines were occurring, or rights of due process may be violated.  In

fact, most consumers would think all their rights were being protected. The proof of claim

deadline close in January of 2008 not even a full year after the bankruptcy filing. This is not a

reasonable amount of time.

15.      Movant is now aware of repeated petitions and requests for protections

under 363(o), demands under TILA 1641(f)(2) going unanswered, loan file destruction

problems, and the fast tack finale approaching.  So as all borrowers still stand in the dark, American Home is trying to pull down the final curtain on all our rights.

16.      Movant has also become aware that certain loans were compromised, and certain parties were noticed after the Debtor said they could not notify ALL borrowers. Under close examination of petition #3239, Exhibit B (HELOC LOANS) & C ( CONSTRUCTION LOANS), it is clear there are many parties on this list are insiders, employees, and joint venture partners of the Debtors. These names include excutives; Stephen Hozie CFO, David Friedman EVP Servicing, Tim Neer SVP, Craig Pino CIO, Michael McManus Senior Executive; joint venture partners, Frank Catalano – 1st Home Mortgage – Mid West; and employees such as Seth Harris Senior loan officer and his wife Meredith Harris. So it is unjust for those parties to have  received a  direct notification of a proof of claim deadline, and given an extended deadline. It is also unfair that those parties loans may have also been given special treatment and compromised as part of this bankruptcy. **SEE** Exhibit B

## **BASIS FOR RELIEF**

17.      Section 105 of the Bankruptcy Code authorizes the Court to exercise equitable powers to, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 3003(c)(3) provides that the Court, "for cause shown may extend time within which proofs of claim or interest may be filed."

18.      This Court could view the lack of timely filing under the excusable neglect standard which is obviously premised on some acknowledged mistake or fault on the part of the movant or, in the alternative, inadequate notice of the bar date, which is, in and of

itself, a separate ground upon which a late proof of claim is allowed to be filed.

19.    Movant is entitled to due process under the Fifth Amendment,  and is "unsophisticated" which affected the adequacy of the bar date notice.  Movant does not read the publications in which it was published, and did not get any direct notice although American Home could have easily notified Movant via a mortgage loan statement which I receive every month. It is not uncommon for American Home to include special messages on these bills, however information about a bar date for proof of Claim never appeared.

20.    The Court can take note, the Debtors have accepted other borrowers Proof of Claims which were late as timely filed.

21.    The Court can also take note that in the petition #4739, the lawyer in the Thomas and Sara Chavez case assert they did not receive any bar date notices, nor were they aware of the necessity to file a proof of Claim.

22.    If lawyers are unaware it is unreasonable to expect the average consumer to know with no notice even alerting them of an impending deadline.

## CLAIMS AGAINST AMERICAN HOME

23.    American Home Mortgage by and through agents signed up with American Brokers Conduit, originated loan # 0001215617 on March 24, 2006. The broker was paid a YSP incentive based payment for steering us into a subprime Pay Option Arm Loan. This loan carries a high interest rate, which was not disclosed properly. At inception This loan was not the 1% promised but started at over 7.5% at a time when as good credit

Borrowers we qualified for the going average rate on a fixed rate mortgage of:

| | | | |
|---|---|---|---|
| 3/17/2006 | 6.34 | 5.98 | 5.37 |
| 3/24/2006 | 6.32 | 5.97 | 5.41 |

7

24.    The terms of this loan were not based on our credit score or credit profile, but the terms were based on a non-disclosed kickback in the form of a **$26,245** YSP. Due to material misrepresentations of the character and nature of this loan, Movant has suffered financial damage and irreparable harm.

25.    Movant's legal counsel is currently negotiating with American Home to rescind this loan, however this case is moving rapidly and Movant's window of time to seek damages through proof of claim is closing. If American Home settles this forthwith, we will withdraw this Motion. If American Home does not settle we are filing a lawsuit in Virginia and will be seeking Relief from Stay in a matter of weeks.

## CONCLUSION

American Home is still objecting to claims and as the process is still ongoing there is no prejudice to American Home to accept Movant's Proof of Claim as timely filed. This filing in no way prejudices American Home's right to object to our proof of claim.

For the reasons stated above, Movants respectfully request that this Honorable Court enter an order, in substantial conformity with the proposed form of order submitted herewith, (i) deeming Movants Proof of Claim against each of the Debtors timely filed or, in the alternative. Allowing the late-filing of their Proofs of Claim, (ii) granting the Motion, and (iii) granting to Movants such other and further relief as the Court deems just and proper.

Movant hereby requests this Court consider the circumstances and rapid progression of the case and allow this late filed proof of claim.

Dated: January 19, 2009

Dr. David Jackson
12787 Lavender Keep Circle Fairfax VA 22033    703- 378-6750

Elizabeth Judith Jackson

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of January, 2009, a copy of the foregoing Motion was

mailed first -class postage paid to:

| | |
|---|---|
| Counsel for Debtors: | Official Committee of Unsecured Creditors |
| Pauline K. Morgan, Esquire | Mark Indelicato, Esq. |
| Young, Conaway, Stargatt & Taylor, LLP | Hahn & Hessen LLP |
| 1000 West Street, 17th Floor | 488 Madison Ave. 14th & 15th Floor |
| P.O. Box. 391 | New York, NY 10022 |
| Wilmington DE 19899-0391 | |
| Phone: 302-571-6600 | |
| Fax: 302-571-0453 | |

Joseph  M. McMahon Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
Phone: 302-573-6491
Fax: 302-573-6497

Dated: January 16, 2009

Dr. David Jackson                    Elizabeth Judith Jackson

12787 Lavender Keep Circle Fairfax VA 22033
 703- 378-6750

9

**Docket #3239**
Pages 1 –476 **Exhibit B**   HELOC LOANS (23,284 Loans)
Pages 1-39 **Exhibit C**   CONSTRUCTION LOANS ( 858 Loans)

**Docket #2709** American Home Said it had **575** Construction loans (page 7), as of the
petition date. Somehow that grew to **858** by Docket #3239. How did that happen when
they were no longer funding new loans?
**Docket # 2848** simply says HELOC borrowers are in excess of 5,000

**Executive Incentive Plan Participants who recieved  the BENEFIT OF NOTICE &**
**Proof of Claim Extensions + BONUSES + 40% Salary Premiums + Compromised**
**Loans???/**

**Pg. 196** Stephen Hozie- Chief Financial Officer _ Plus Bonus
**Pg. 211** Robert J. Johnson -  Secondary Market Executive
**Pg. 142** - David Friedman -    EVP Servicing
Alan Horn                     General Counsel
**Pg. 158** - Carlos D. Gonzalez          SVP System & Network
**Pg 306** - Tim Neer                    SVP Post Closing Specialist
**Pg 339** - Craig Pino            Chief Investment Officer & Treasurer
**Pg 206** - Robert N. Jannotte        VP Strategic Investments
**Pg. 70**-  Craig P. Cavaco - employee Claim # 3691 Image Suppressed
Mark Cavaco – Employee claim # 6267 Image Suppressed
Christopher Cavaco - Chief Information Officer – Employee Claim # 751024250 –Image
Suppressed
**Pg. 280** - Michael J. McManus – Senior Executive - $10, 000 Bonus on 6/27/08
**Pg 33** – Seth M. Harris – Senior Executive - 2900 North Hermitage Chicago IL 60657 –
Seth Harris got bonuses of $20,000 on American Home 07-11051 Schedule of Financial
Affairs Exhibit 3b Page 1615  Pd. By Check  5/21/07 & 6/27/07
**Pg. 178** – Meredith L. Harris -2900 North Hermitage Chicago IL 60657

**1st Home Mortgage – Mid-West Headquarters for American Home Mortgage**
Catalano Mortgage- Integrus Lending Group – Primary Residential Mortgage
**Pg. 70** Frank Catalano -- Joint Venture Out of 1st Home Mortgage IL Former Executive of
American Home Mortgage
**Pg 70** Gerald Catalano-- Joint Venture Out of 1st Home Mortgage IL

**Other interesting names    HELOCS to wachovia securities or an LLC?**
**Pg. 342** -William Poole – Listed as Wachovia Securities?
**Pg. 118** - Steven Dykeman – Listed as Chicago Mortgage House LLC
**Pg. 327** Roger E. Parsons – Address Listed as PO BOX 631730 Irving TX 75063
**Pg 415**- Jeffrey Strauss- 54 Secor Rd. Scarsdale NY - Licensed under Strauss Mortgage
Group LLC
Timothy **Conaway**  527 Garrick Road **Hockessin DE** 19707( relationship to Young
Conaway Stargatt Taylor?) Pg. 85

5 Strauss Names ( relationship to Michael Strauss?) Pg. 415 & 1 on Pg 1.
3 Horn Names based ( relationship to Alan Horn?) Pg. 194
4 more McManus Names ( relationship to Michael McManus?) Pg 280
7 more Friedman Names  ( relationship to David Friedman?) Pg 142
4 Valentine Names ( relationship to Andrew Valentine?) Pg. 438
6 De La Cruz names – ( relationship to Raul De La Cruz) Pg. 235 & Page Pg. 101

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br>et. al.,<br><br>Debtors, | ) Chapter 11<br>)<br>)<br>) Case No. 07-11047 (CSS)<br>) Jointly Administered<br>)<br>) |
| Dr. David and Elizabeth Judith Jackson<br><br>MOVANTs | )<br>)<br>) **Objection Deadline: January 26, 2009**<br>) **Hearing Date: TBD**<br>)<br>)<br>) |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on January 20, 2008, Dr. David and

Elizabeth Judith Jackson (the "Claimants") filed their *Motion for Order Deeming Proofs*

*of Claim Timely Filed or, in the Alternative the Filing of Late-Filed Claims* ( the

"Motion").

PLEASE TAKE FURTHER NOTICE that you are required to file a

response ( the "Response") to the Motion on or before January 26, 2009 at 4:00pm.

EST ( the "Objection Deadline"). You must also serve upon Claimants' attorneys a copy

of the Response so that it is actually received by them by the Objection Deadline:

Dr. David and Elizabeth Judith Jackson
12787 Lavender Keep Circle
Fairfax VA 22033
703- 378-6750

PLEASE TAKE FURTHER NOTICE that IF YOU FAIL TO RESPOND IN

ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF

DEMANDED BY THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: January 19, 2009

Dr. David Jackson
12787 Lavender Keep Circle
Fairfax VA 22033
703- 378-6750

Elisabeth Judith Jackson