IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re ) | | Chapter 11 |
| ) | | |
| AMERICAN HOME MORTGAGE ) | | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, ) | | Jointly Administered |
| et al., ) | | |
| ) | | **Hearing Date:  TBD** |
| Debtors. ) | | **Objections Due:  TBD** |
| ) | | |

**MOTION OF OFFICIAL COMMITTEE OF BORROWERS FOR ORDER
DIRECTING DEBTORS TO PROVIDE IMMEDIATE ACCESS TO SEC PRODUCTION**

The Official Committee of Borrowers (the "Borrowers Committee") hereby moves for an order directing the Debtors to provide counsel for the Borrowers Committee with immediate access to materials produced by the Debtors to the SEC, subject to the parties' existing confidentiality agreement, and respectfully represents as follows:

**BACKGROUND**

1.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Creditors Committee").  No trustee or examiner has been appointed.

3.      On October 21, 2008, the United States Trustee for the District of Delaware appointed the Borrowers Committee.  The Borrowers Committee subsequently convened and engaged undersigned counsel.

2119276.1

4.    Since its formation, the Borrowers Committee has engaged in discussions and substantial negotiations with the Debtors and the Creditors Committee concerning the Debtors' liquidation plan, as amended (the "Plan") and the accompanying disclosure statement (the "Disclosure Statement").

5.    At a hearing to consider the adequacy of the Disclosure Statement on November 25, 2008, the Court approved the Disclosure Statement after the Borrowers Committee had resolved its objection.

6.    The Borrowers Committee had intended to press its unresolved objections to the Disclosure Statement.  Two days before the hearing, however, the Borrowers Committee proposed to resolve its objection if it could gain access to the Debtors' production of information to the SEC (the "SEC Production"), which is kept at the offices of the Debtors' regulatory counsel in New York.  The Borrowers Committee viewed (and still views) access to the SEC Production as a potentially inexpensive substitute for formal discovery, which would require the Debtors to comb all their available records.

7.    The Borrowers Committee made this request because, although the Debtors had endeavored to provide the Borrowers Committee with information informally, the remaining employees and consultants of the Debtors had very little if any knowledge of the Debtors' loan origination practices prior to the Petition Date.  After all, the Debtors stopped originating loans and terminated its loan origination employees prior to the Petition Date.

8.    The Debtors initially responded that they could not consider the Borrowers' proposal prior to the hearing, but in further discussions at the hearing, both the Debtors and the Creditors Committee expressed no substantive objection to the review of the SEC Production by

the Borrowers Committee. Rather, the concern expressed by the Debtors and the Creditors Committee was cost, given that the SEC Production is apparently voluminous.

9. Based on the assurances of the Debtors and the Creditors Committee regarding the ability to access the SEC Production, the Borrowers Committee decided not to press its objection to the Disclosure Statement.

10. Shortly after the hearing, the Debtors began to waiver on their commitment by questioning the need for the Borrowers Committee to review the SEC Production and seeking as a prerequisite a list of the Borrowers Committee's Plan issues as well as a list of the particular SEC requests in which the Borrowers Committee had interest. The Borrowers Committee responded that the concern raised by the Debtors and the Creditors Committee was cost and not substance, and the Borrowers Committee would return immediately to this Court if that were not the case. In response, the Debtors acknowledged that cost was their primary concern. *See* Ex. A.

11. Then, in addressing a proposed confidentiality agreement by the Debtors, the Borrowers Committee agreed to accept a form of confidentiality agreement of an extremely broad scope on the condition that the Borrowers Committee would obtain access to the SEC Production. *See* Ex. B.

12. On January 22, 2009, the Borrowers Committee filed its objection to the Plan. The confirmation hearing, originally scheduled for January 28, was rescheduled to next Monday, February 9. In the last several weeks, the Debtors and the Creditors Committee have taken depositions of three witnesses expected to testify at the hearing for the Borrowers Committee, and by the end of this week, the Borrowers Committee will have completed the depositions of the three witnesses expected to testify at the hearing for the Debtors or the Creditors Committee.

13. On information and belief, the SEC Production contains information about loan underwriting, loan marketing, and loan default rates associated with particularly problematic types of mortgages, including, most notably, payment option ARMs. As the Borrowers Committee explained in its Plan objection, the Debtors knew or should have known that there would be significant borrower claims based on the nature of the products as well as the Debtors' underwriting and marketing practices. Indeed, the Debtors' faulty underwriting may form the basis of borrower claims as well as claims alleging violations of the federal securities laws. This is explained in more detail in the report annexed as Ex. C hereto.

14. The Borrowers Committee has continued to request access to the SEC Production, but the Debtors have apparently decided not to allow access and are now "running the clock" in the brief time available prior to the confirmation hearing. In a delaying action, the Debtors initially insisted on formal discovery requests, notwithstanding that the SEC Production was compiled in response to the SEC's requests. Then, the Debtors requested that the Borrowers Committee identify which of the SEC requests are of interest to the Borrowers Committee. The Borrowers Committee provided this information to the Debtors last Thursday. Despite repeated requests from the Borrowers Committee, the Debtors have not responded any further about the SEC Production, thereby necessitating this Motion.

### RELIEF REQUESTED

15. The Borrowers Committee requests that the Court direct the Debtor to grant immediate access to the Borrowers Committee to review the SEC Production. The Borrowers Committee emphasizes that this expedited request is not an effort to postpone the confirmation hearing. Rather, the Borrowers Committee simply seeks immediate access to the information

that the Debtors represented would be made available without any substantive objection back on November 25, 2009.

**BASIS FOR RELIEF**

16.     The Debtors have all along represented that they did not have any substantive objection to the review of the SEC Production by the Borrowers Committee.  In reliance on that understanding, the Borrowers Committee agreed not to press its objection to the Disclosure Statement and agreed to an extremely broad form of confidentiality agreement.  Now, since the confirmation hearing is around the corner, the Debtors have apparently had a change of heart.

17.     The Debtors and the Creditors Committee are equitably estopped from raising any substantive objections to the Borrowers Committee's review of the SEC Production.  The Borrowers Committee justifiably relied on representations of counsel to change its position on the Disclosure Statement and will be injured as a result if unable to review the SEC Production.

18.     Although the Debtors and Creditors Committee had raised cost as a concern, the purpose of inspecting the SEC Production was to reduce costs, that is, eliminating the parties' needs to propound and respond to formal discovery and eliminating the need for the Debtors and their professionals to cull through their records and review information.

19.     The Debtors and the Creditors Committee also raised a concern about the costs to the Borrowers Committee given the present cap on compensation and reimbursement of its professionals.  The Court, in deferring ruling last week on the Borrowers Committee's expedited application to increase the cap, commented that the law firms representing for the Borrowers Committee are potentially at risk should their aggregate fees and expenses exceed the cap.  So it

is fair to say that the undersigned counsel has no intention of engaging in an unbounded fishing expedition, especially given the upcoming confirmation hearing on Monday.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Borrowers Committee respectfully requests that the Court enter an order directing the Debtors to provide counsel for the Borrowers Committee with immediate access to review the SEC Production and granting to the Borrowers Committee such other and further relief as is just.

Dated: Wilmington, Delaware
February 5, 2009

ZUCKERMAN SPAEDER LLP

/s/ Thomas G. Macauley
Thomas G. Macauley  (ID No. 3411)
919 Market Street, Suite 990
Wilmington, DE 19801
Telephone:  (302) 427-0400
Facsimile:  (302) 427-8242

- and -

GILBERT OSHINSKY LLP
Stephen A. Weisbrod
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone:  (202) 772-1962
Facsimile:  (202) 772-3962

Attorneys for the Official Committee
of Borrowers