**Exhibit A**

**Chart of Objections**

**In re American Home Mortgage Holdings, Inc.,** *et al.*
**Chapter 11 Case No. 07-11047 (CSS)**
**Chart of Objections to Plan Confirmation**

## OBJECTIONS WITHDRAWN OR RESOLVED

| Agenda Item | Party | Nature of Objection(s) | Status/Response |
|---|---|---|---|
| A | Travis County, TX [D.I. 6708] | | WITHDRAWN. |
| B | Iron Mountain Information Management, Inc. [D.I. 6778] | | RESOLVED. |
| F H | Local Texas Tax Authorities [D.I. 6848]; California Taxing Authorities [D.I. 6855] | | RESOLVED with respect to the Local Texas Tax Authorities. The Debtors are continuing negotiations with the California Taxing Authorities and believe the Objection is resolved in principle, subject to documentation. To the extent this objection is not fully resolved, the matter will be going forward. |
| I | Federal Home Loan Mortgage Corp. ("Freddie Mac") [D.I. 6867] | | RESOLVED. |

## OBJECTIONS GOING FORWARD

| Agenda Item | Party | Nature of Objection(s) | Status/Response |
|---|---|---|---|
| C | Adorno & Yoss LLP [D.I. 6842] | Ordinary course foreclosure professional asserts unpaid fees & costs of $283,180.26. | As noted in their objection, Adorno & Yoss have received seven (7) payments totaling $1,677,525,70 on account of post-petition services as a foreclosure professional. The Debtors believe that payment of any amounts owing are the obligation of the purchaser of the Debtors' servicing rights and have only recently been made aware that Adorno alleges |

| Agenda Item | Party | Nature of Objection(s) | Status/Response |
|---|---|---|---|
| | | | that it has not received full payments for its services. The Debtors are working with the parties in interest to determine the cause of these discrepancies. Until the parties reach a final determination regarding the payment history and outstanding obligations, the administrative claim amount asserted by Adorno & Yoss in their Objection will be included in the S/A/P Reserve (as defined in the Plan). |
| D | Lead Plaintiffs (Securities Class Action) [D.I. 6843] | (A) The Plan fails to provide a satisfactory protocol for the preservation and safeguarding of the Debtors' files records, and other documentation transferred to the Plan Trust. | (A) The Amended Plan provides that, except for prior orders of the Court regarding loan file destruction, the Plan Trustee cannot destroy or otherwise abandon any Records absent further order of the Court. Lead Plaintiffs' counsel received notice of the previous motions and orders regarding destruction of hard copy loan files and did not object. See D.I. 2408. Accordingly, this objection is essentially an improper collateral attack on this Court's previous orders. |
| | | (B) The Plan improperly extends the automatic stay and Plan injunction for a period well beyond the Confirmation Date. | (B) Injunction and stay provisions of Plan Art. 12.A. & B. do not unduly prejudice Lead Plaintiffs, especially in light of the PSLRA discovery stay (as set forth in the objection). The injunction does not apply to the Debtors. Lead Plaintiffs previously dismissed the action against the Debtors. To the extent they seek to refile that action, they can file a motion to lift the stay. |
| | | (C) Lead Plaintiffs should be afforded the right to proceed with their claims against the Debtors solely to the extent of available insurance coverage, irrespective of any injunctions or distributions under the Plan. | (C) Any claims of the Lead Plaintiffs against the Debtors' estates are Subordinated Claims under the Plan; as a result, the Lead Plaintiffs should not be able to collect any amounts with respect to insurance proceeds with respect to their Subordinated Claims against the Debtors. |

| Agenda Item | Party | Nature of Objection(s) | Status/Response |
|---|---|---|---|
| | | (D) To the extent the Exculpation Provisions may relate to prepetition claims in connection with the timing of the commencement of the Chapter 11 cases, the provision is unclear and therefore improper and must affirmatively exclude the Lead Plaintiffs' claim against the Non-Debtor Defendants and any other non-Debtors. | (D) See Memo, Section III.B.5. |
| E | United States (IRS) [D.I. 6844] | (A) IRS objects to the treatment of its priority tax claims to the extent it fails to pay its claims in full in cash on the Effective Date. (B) IRS objects to the extent the Plan fails to preserve the setoff and recoupment rights of the United States. | The Debtors are in discussions with the IRS regarding a potential resolution of its objection.  To the extent not resolved, this matter will go forward. |
| G | DB Structured Products, Inc. [D.I. 6853] | Asserts that, to the extent that the Court subsequently determines the MLPSA to be executory, the Debtors must determine now whether or not to assume such contract. | To the extent the MLPSA is executory, it is subject to a pending motion to assume and assign it, which is on remand before this Court.  No further action is required of the Debtors at this time. |
| J | JPMorgan Chase Bank, N.A. [D.I. 6874[ | (A) The loss severities utilized in the Plan under the EPD/Breach Protocol would reduce the EPD Claims and Warranty Claims to amounts substantially below what is appropriate. (B) EPD/Breach Protocol impermissibly permits Debtors to reduce *prima facie* valid EPD/Breach Claims without any evidentiary showing. (C) Exculpation provision impermissibly provides for a full release of creditors' claims against non-Debtor third parties. | (A)  See Memo, Section III.B.2. (B)  See Memo, Section III.B.2. (C)  See Memo, Section III.B.5. |
| | SEC [D.I. 6893] | Plan provides for overly broad exculpation provisions in contravention of Section 524(e) of the Bankruptcy Code. | See See Memo, Section III.B.5. |

**Exhibit B**

**Hebell** Decision



Cited
As of: Oct 07, 2008

**LEE C. HEBELL and LINDA A. HEBELL, et al., Plaintiffs, NVR, INC., NVR MORTGAGE FINANCE, INC., NVR FINANCIAL SERVICES INC., as successor in interest to NVR MORTGAGE, L.P., LTD., Defendants.**

97 C 4000

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1997 U.S. Dist. LEXIS 10786*

**July 18, 1997, Decided
July 21, 1997, ENTERED**

**DISPOSITION:**    [*1] Motion to dismiss granted.

**COUNSEL:** For LEE D HEBELL, plaintiff: Charles M Zimmerman, Zimmerman, Smith & Kostelny, Elgin, IL. M. Scott Barrett, Lawrence Walner & Associates, Ltd., Chicago, IL. Barry G. Reed, Hart L. Robinovitch, Zimmerman and Reed, Minneapolis, MN. Conrad F Cropsey, Cropsey & Cropsey, Albion, NY. For LINDA A HEBELL, and all others similarly situated, plaintiff: Charles M Zimmerman, (See above). M. Scott Barrett, (See above). Charles Selcer Zimmerman, Barry G. Reed, (See above), Hart L. Robinovitch, (See above), Zimmerman and Reed, Minneapolis, MN. Conrad F Cropsey, (See above).

**JUDGES:** James B. Zagel, United States District Judge

**OPINION BY:** James B. Zagel

**OPINION**

*MEMORANDUM OPINION and ORDER*

This case is one of many putative class actions consolidated before this Court by the Multi district Litigation Panel (MDL 899) alleging unlawful and systematic maintenance of deposits in plaintiffs' escrow accounts above the limits set forth by plaintiffs' mortgage contracts. Defendants seek to dismiss this action pursuant to *Federal Rule of Civil Procedure 12(b)* for failure to state a claim against two defendants and failure to establish that the third defendant caused the alleged injury.

[*2] *Facts*

The Hebells entered into a mortgage loan agreement with R.H.F.C. Servicing Corporation on November 29, 1988 for the purchase of a single family home. On March 3, 1992, First Wisconsin Trust Company, the trustee for the Hebells' loan, transferred all beneficial interest in the loan to NVR Mortgage, L.P., Ltd. Effective December 16, 1992, NVR Mortgage, L.P., Ltd. transferred the servicing rights to NVR Mortgage Finance, Inc. The Hebells paid the loan in full on November 30, 1993.

NVR Mortgage, L.P., Ltd., filed for bankruptcy during this time. On July 22, 1993, the U.S. Bankruptcy Court for the Eastern District of Virginia entered an Order Confirming Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code. NVR Financial Services, Inc. emerged as the successor to NVR Mortgage, L.P., Ltd.

The Hebells' mortgage note is a standard form mortgage instrument and provides for the maintenance of the escrow account. The contract limits monthly escrow deposits to one-twelfth of the yearly amount of the estimated taxes, insurance premiums and other charges and provides that no cushion or additional reserve will be maintained in the account. The [*3] contract further provides that if too much money is accumulated in the account because of over-estimation of escrow obliga-

tions, the mortgagor is entitled to a full refund of the over-estimation or to have the over-estimation credited to his or her loan obligations.

NVR Mortgage Finance, Inc. analyzed the Hebells' escrow account in April, 1993, found a $ 273.15 shortage in the account and adjusted the required monthly payments accordingly.

*Discussion*

A complaint will not be dismissed under *Rule 12(b)(6)* unless the plaintiff has failed to allege any set of facts upon which relief may be granted. *Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).* The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits.

Defendants claim the Hebells are permanently enjoined from bringing this action against NVR Mortgage, L.P., Ltd., a debtor discharged in bankruptcy, or NVR Financial Services, Inc., as successor in interest to NVR Mortgage, L.P., Ltd. The Hebells claim they are not enjoined from bringing this claim because they were not given adequate notice of the bankruptcy proceedings, the claims bar date and/or the confirmation [*4] hearings, and thus they are not bound by the confirmed bankruptcy plan.

In order to participate in a reorganization of an estate undergoing Chapter 11 bankruptcy, a claimant must file a timely proof of claim prior to the bar date established by the bankruptcy court. *Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995), cert. denied, 134 L. Ed. 2d 548, 116 S. Ct. 1424 (1996).* Generally, confirmation of the debtor's reorganization plan discharges all prior claims against the debtor. *Id.* However, a claim is not discharged in bankruptcy if adequate notice is not given. *Id.* Bankruptcy law divides claimants into two types for notice purposes, "known" and "unknown." *Id.* Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date. *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co., 974 F.2d 775, 788 (7th Cir. 1992).* Constructive notice or notification by publication will generally suffice for unknown creditors. *Id.*

The Hebells claim they are "known" creditors because the debtor knew of the existence of the homeowner-mortgagors since they received monthly checks for each of them and had the duty to follow [*5] up and to collect late payments. A "known" creditor is one whose identity is either known or reasonably ascertainable by the debtor. An "unknown" creditor is one whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to the debtor's knowledge. *Chemetron, 72 F.3d at 346.* The fact that the identities of

the homeowner-mortgagors or the Hebells themselves may have been "reasonably ascertainable" from the loan servicer's records it is not sufficient to make them "known." These records did not indicate that the Hebells or any potential class members were or would file suit in the future, thereby becoming claimants. At the time, the Hebells' claims were merely speculative. In this case, NVR Mortgage, L.P., Ltd. could not have been expected to anticipate that the Hebells would bring this claim. Thus, the Hebell's and their putative class are considered "unknown" creditors, as such, publication notice was sufficient.

Defendants next claim that the Hebells failed to establish that NVR Mortgage Finance, Inc. caused their injury since it serviced the Hebells' loan for less than a year. There is some [*6] dispute about the length of time NVR Mortgage Finance, Inc. serviced the Hebells' loan, but there can be no doubt that it was less than a year considering NVR Mortgage Finance, Inc. acquired the right to service the Hebells' mortgage effective on December 16, 1992, and the Hebells paid their loan in full on November 30, 1993. Thus, the question is whether a mortgage servicing company can be found to violate a person's mortgage contract regarding the amount it is allowed to hold in escrow when it services the account for less than a year.

There is no requirement in the mortgage contract or in RESPA that a breach can only occur after the loan has been serviced for twelve or more months. However, the Hebells ask us to calculate the overage in the account by looking at the actual payments and projected payments into and out of the account over a twelve-month period of time. I suspect the Hebells have done this in order to show that the potential low point balance over twelve months would constitute an overage. The Hebells are correct to conduct their calculations in this manner as it is impossible to know whether the servicer is collecting more than one-twelfth of the payments each month [*7] until all twelve months worth of payments have been collected. In fact, this is the same method of analysis I have conducted in the numerous cases before me alleging overescrowing in mortgage accounts. In addition, plaintiffs present a chart to represent the payments into and out of the account over a period of time. Curiously, many of the months represented in the chart are months in which the loan is no longer in existence. This chart thus represents the conjectural nature of determining whether an overage has occurred in an account that has been serviced by a particular lender for less than a year. Further, the Hebells allege that NVR Finance, Inc. failed to refund the excess balance that remained in their account and failed to apply the excess to future payments as the contract requires. However, NVR Finance, Inc. did

refund all excess payments at the close of the loan period, thereby complying with the contract terms.

Finally, defendants claim the Hebells failed to state a claim against NVR, Inc. since NVR, Inc. never serviced the Hebells' loan and did not come into existence until two months prior to the time the Hebells paid off their loan. In a footnote, the Hebells assert [*8] that NVR, Inc. participated in the alleged breaches and reference a number of paragraphs in the complaint. These paragraphs claim NVR, Inc. assisted NVR Mortgage L.P., Ltd., and NVR Mortgage Finance, Inc. in conducting the alleged breaches. Because both NVR Mortgage L.P., Ltd. and NVR Mortgage Finance, Inc. have been dismissed as defendants, and NVR, Inc. has not been alleged to have directly participated in any breach, the motion to dismiss NVR, Inc. is granted.

*Conclusion*

The motion to dismiss is granted.

Enter:

James B. Zagel

United States District Judge

Date: *7/18/97*

## Exhibit C

**Excerpts from Dandridge Deposition**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

-------------------------------------X

IN RE:

AMERICAN HOME MORTGAGE HOLDINGS, INC., a

Delaware Corporation, et al.,

               Debtors.

Chapter 11

Case No. 07-11-47 (CSS)

Jointly Administered

-------------------------------------X

                          36 Richmond Terrace
                          New York, New York

                          January 30, 2009
                          2:14 p.m.

       Deposition of FLORENCE D. DANDRIDGE,

pursuant to Notice, before Stacey Raikes, a

Notary Public of the State of New York.

      ELLEN GRAUER COURT REPORTING CO. LLC
       126 East 56th Street, Fifth Floor
         New York, New York 10022
            212-750-6434
            REF: 89492

1                    DANDRIDGE

2   me on the subject.   I tried several times, but

3   I could not get anyone to help me to lower the

4   rates or to lower the mortgage payments.   I

5   could not get anyone to help me.

6          Q.    When you say you tried, what do you

7   mean by that, what did you do?

8          A.    I called on the phone to ask to

9   speak with someone when I saw the increases

10  coming.

11         Q.    Do you know what number you called?

12         A.    The number that's on my statement.

13         Q.    Do you know when you first made any

14  of these calls?

15         A.    I believe it started back in 2007.

16  Exact time, I do not know.

17         Q.    Do you know approximately what month

18  of 2007?

19         A.    No, I do not know.

20         Q.    Why did you start to call?

21         A.    Because I saw the increase on my --

22  on my statements.

23         Q.    What specifically did you see

24  increased in your statements?

25         A.    The principals.

1                    DANDRIDGE

2        Q.      So from one statement to the next,

3   the principal had increased?

4        A.      They increased monthly, yes.

5        Q.      Did you ever send anything in

6   writing to American Home to make them aware of

7   your belief that this loan was other than what

8   you had agreed to?

9        A.      No.

10        Q.      Have you ever filed a lawsuit

11   against American Home?

12        A.      No, sir.

13        Q.      Have you ever filed a claim against

14   American Home?

15        A.      No, sir.

16        Q.      Are you presently aware that

17   American Home is in bankruptcy?

18        A.      I just found out back in 2008.

19        Q.      When in 2008 did you first learn

20   that?

21        A.      March.

22        Q.      How did you come to learn that in

23   March of '08?

24        A.      I received -- I spoke with one of

25   my -- I spoke to my sister and she saw

## <u>Exhibit D</u>

**Excerpts from Graves Deposition**

1              IN THE UNITED STATES BANKRUPTCY COURT

2                 FOR THE DISTRICT OF DELAWARE

3         Hon. Christopher S. Sontchi - Chapter 11

4                Case Nos. 07-11047 - 11054

5      _____

6    In re:                                    )

7    AMERICAN HOME MORTGAGE HOLDINGS, INC.;  )

8    AMERICAN HOME MORTGAGE INVESTMENT CORP.,)

9    AMERICAN HOME MORTGAGE ACCEPTANCE, INC.,)

10   AHMSV, INC., (f/k/a American Home        )

11   Mortgage Servicing, Inc.); AMERICAN      )

12   HOME MORTGAGE CORP., AMERICAN HOME       )

13   MORTGAGE VENTURES LLC; HOMEGATE          )

14   SETTLEMENT SERVICES, INC., GREAT OAK     )

15   ABSTRACT CORP.,                          )

16                    Debtors.                 )

17   _____ )

18

19           DEPOSITION OF GRACIE M. GRAVES

20                  Washington, D.C.

21             Monday, February 2, 2009

22

23   Reported by:

24   MARY ANN PAYONK, CRR-RDR, CPC, CCB, CLR

25   JOB NO. 20846

1                    G. Graves

2              MR. WINSTEAD:  Objection, calls

3          for privileged communications, but you

4          can answer yes or no.

5          A.     No.

6          Q.     Did you receive any guidance

7     regarding filing a proof of claim or not filing a

8     proof of claim from anybody at Mr. Winstead's

9     firm?

10             MR. WINSTEAD:  Objection, calls

11         for privileged communications, but you

12         can answer yes or no.

13         A.     No.

14             MR. WINSTEAD:  You're doing fine.

15         Take your time.

16         Q.     Other than the complaint that

17    Mr. Andrews filed on your behalf, which we may

18    discuss later, have you sent anything in writing

19    to American Home setting forth that the loan you

20    have is not the one you thought you were getting?

21         A.     No.

22         Q.     Are you aware of a company called

23    Premiere Financial Company Savings?

24         A.     No.

25         Q.     One of the companies that you sued in

**<u>Exhibit E</u>**

**JPM Claim**

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
| American Home Mortgage Holdings, Inc., et al. Debtors. | Case No. 07-11047 (CSS) Jointly Administered |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| American Home Mortgage Corp. | 07-11051 |

**PROOF OF CLAIM**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Creditor:
J.P. Morgan Mortgage Acquisition Corp.
270 Park Avenue, 10th Floor
New York, NY 10017
Attn: Brian Simons
     Vice President
Telephone: 212.834.3861
brian.l.simons@jpmchase.com

Telephone number:
Email Address:

Notices:
Richard L. Smith, Esq.
JPMorgan Chase Bank, N.A.
One Chase Square, 25th Floor
Rochester, NY 14643
Telephone: 585.797.1975
richard.l.smith@chase.com
| ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)
0000008399 |

| Account or other number by which creditor identifies debtor: | Check here if this claim:
☐ replaces   ☐ amends a previously filed claim, dated: _____ |

| 1. Basis for Claim
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other   breach of contract - mortgage loan sales   (explain) | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last Four Digits of your SS#: ___ ___ ___ ___
Unpaid compensation for services performed
from _____ to _____
        (date)                    (date) |

2. Date debt was incurred:
   On or after June 1, 2006

3. If court judgment, date obtained:

4. Total Amount of Claim at Time Case Filed: $ 308,000.00 + _____ + _____ = $308,000.00
   (unsecured nonpriority)   (secured)   (unsecured priority)   (Total)
   If all or part of your claim is secured or entitled to priority, also complete item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. Secured Claim.
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $ _____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

6. Unsecured Nonpriority Claim: $ 308,000.00
☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. Unsecured Priority Claim.
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries, or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

THIS SPACE IS FOR COURT USE ONLY

8. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date
January _, 2008 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

Brian L. Simons
Vice President |

**FILED / RECEIVED**

**JAN 1 0 2008**

EPIQ BANKRUPTCY SOLUTIONS, LLC

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | ) |  |
| HOLDINGS, INC., a Delaware | ) | (Jointly Administered) |
| Corporation, *et al.*, | ) |  |
|  | ) |  |
| Debtors | ) |  |
|  | ) |  |

## RIDER TO PROOF OF CLAIM OF
## J.P. MORGAN MORTGAGE ACQUISITION CORP.

1.      J.P. Morgan Mortgage Acquisition Corp. ("JPMMAC") submits this claim against the estate of American Home Mortgage Corp. for amounts owed to JPMMAC in connection with the Mortgage Loan Sale and Servicing Agreement, dated June 1, 2006 (and related Terms Letters and Assignment and Conveyance Agreements) (collectively, the "MLSSA") among American Home Mortgage Corp. ("AHMC"), American Home Mortgage Servicing, Inc. ("AHMSI") and JPMMAC.  Unless otherwise defined in this Rider, each capitalized term used in this Rider shall have the meaning given to it in the MLSSA.

2.      At the time of the filing of the voluntary petitions initiating these cases under Chapter 11 of Title 11 of the United States Code, 11 U.S.C.§ 101 et seq. (the "Bankruptcy Code") on August 6, 2007 (the "Petition Date"), AHMC and AHMSI were indebted to JPMMAC for damages for breaches of warranties, representations and covenants and for other amounts due in connection with the MLSSA, as set forth more fully below.  This proof of claim is based upon information presently available to JPMMAC, and is subject to amendment in the event JPMMAC identifies additional breaches by AHMC.

3.      Pursuant to the MLSSA, AHMC sold pools of residential mortgage loans to JPMMAC, and AHMSI retained servicing of those loans.

4.      Under the terms of the MLSSA, AHMC is obligated to repurchase the loan which, upon information and belief, AHMC and AHMSI identify as loan number 1265053 (the "Subject Loan") on account of AHMC's breach of representations and warranties with respect to the Subject Loan.  The amount of JPMMAC's claim is $308,000.00.

71835

5.    The writings on which this claim is based include the following documents:

    a.    the MLSSA; and

    b.    the loan documents, loan file, origination file and servicing file for the Subject Loan.

6.    The documents identified in the previous paragraph are voluminous. Consistent with the *Order Pursuant to Bankruptcy Rule 3003(c) and Local Rule 2002-1(e) Establishing Bar Dates For Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* entered by this Court on October 30, 2007, JPMMAC is not filing copies of these documents with this proof of claim. JPMMAC will provide copies of these documents to the Debtors and to counsel for the Official Committee of Unsecured Creditors and will make copies available for discovery and inspection by other parties in interest upon request directed to JPMMAC's counsel.

7.    No judgment has been rendered on the claims set forth in this proof of claim.

8.    This claim is not subject to setoff or counterclaim, provided, however, that in the event any claim is made for setoff or by way of counterclaim, JPMMAC reserves all recoupment rights that it may possess.

9.    JPMMAC's filing of this proof of claim is without prejudice to the filing by, or on behalf of, JPMMAC of proofs of claim with respect to any other liability or indebtedness of the Debtors. JPMMAC specifically reserves all of its procedural and substantive rights and defenses with respect to any claim that may be asserted against JPMMAC by the Debtors or any party in interest in these bankruptcy cases, or by any other person or entity.

10.    The filing of this proof of claim is not an election of remedies. JPMMAC specifically reserves the right to file claims or otherwise pursue any and all remedies against persons or entities other than the Debtors with respect to the matters that are the subject of this proof of claim.

11.    All distributions with respect to this proof of claim should be forwarded to:

    J.P. Morgan Mortgage Acquisition Corp.
    270 Park Avenue, 10th Floor
    New York, NY 10017
    Attention: Brian Simons
             Vice President

71835

All notices with respect to this proof of claim should be directed to:

      J.P. Morgan Mortgage Acquisition Corp.
      270 Park Avenue, 10th Floor
      New York, NY 10017
      Attention:  Brian Simons
               Vice President

      -and-

      JPMorgan Chase Bank, N.A.
      One Chase Square, 25th Floor
      Rochester, NY 14643
      Attention:  Richard L. Smith, Esq.

      Landis Rath and Cobb
      919 Market Street, Suite 600
      P.O. Box 2087
      Wilmington, DE 19801
      Attention:  Adam Landis, Esq.

    12.     JPMMAC reserves (i) the right to withdraw this proof of claim with respect to any of the claims set forth herein for any reason and (ii) the right to amend, modify, supplement or otherwise revise this proof of claim in any respect at any time.

71835



**JPMorgan Chase & Co.**
Legal Department
One Chase Square, 25th Floor
Rochester, NY 14643

**Margaret E. Garrity**
Associate/Paralegal III
Tel.: 585.797.1971
Fax:  585.797.1970
Email:  margaret.e.garrity@chase.com

January 9, 2008

**VIA FEDERAL EXPRESS**

Epiq Bankruptcy Solutions, LLC
**Attn:  American Home Mortgage Claims Processing**
757 Third Avenue, 3rd Floor
New York, NY 10017

Re:    **American Home Mortgage Corp.**
       **District of Delaware Case No. 07-11051**

Dear Sir or Madam:

Enclosed for filing please find a Proof of Claim form in the above-referenced bankruptcy case on behalf of J.P. Morgan Mortgage Acquisition Corp. with attached supporting document(s).

Please acknowledge filing of this claim by stamping the enclosed copy of the claim form and returning it in the enclosed self-addressed, stamped envelope.

Thank you.

Sincerely,

Margaret E. Garrity
Associate/Paralegal III

71876

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| | |
|---|---|
| In Re:<br>American Home Mortgage Holdings, Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered |
| Name of Debtor Against Which Claim is Held<br>American Home Mortgage Corp. | Case No of Debtor<br>07-11051 |

# PROOF OF CLAIM

**NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.**

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Creditor:
J.P. Morgan Mortgage Acquisition Corp.
270 Park Avenue, 10th Floor
New York, NY 10017
Attn: Brian Simons
Vice President
Telephone: 212.834.3861
brian.l.simons@jpmchase.com

Notices:
Richard L. Smith, Esq.
JPMorgan Chase Bank, N.A.
One Chase Square, 25th Floor
Rochester, NY 14643
Telephone: 585.797.1975
richard.l.smith@chase.com

Telephone number:
Email Address:

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)          0000008261

Account or other number by which creditor identifies debtor:

Check here if this claim:
☐ replaces     ☐ amends a previously filed claim, dated:_____

| | |
|---|---|
| 1. **Basis for Claim**<br>  ☐ Goods sold<br>  ☐ Services performed<br>  ☐ Money loaned<br>  ☐ Personal injury/wrongful death<br>  ☐ Taxes<br>  ☑ Other   breach of contract - mortgage loan sales   (explain) | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br><br>Last Four Digits of your SS#: ___  ___  ___<br>-- Unpaid compensation for services performed<br>from _____ to _____<br>        (date)            (date) |

2. **Date debt was incurred:**
   On or after April 1, 2006

3. **If court judgment, date obtained:**

4. **Total Amount of Claim at Time Case Filed:** $ __See attached Rider__ + _____ + _____ = __See attached Rider__
                    (unsecured nonpriority)    (secured)    (unsecured priority)        (Total)
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
     ☐ Real Estate     ☐ Motor Vehicle
     ☐ Other _____
   Value of Collateral: $ _____
   Amount of arrearage and other charges at time case filed included in secured claim, if any:   $ _____

7. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $ _____
   Specify the priority of the claim:
     ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
     ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
     ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
     ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
     ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
     ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

6. **Unsecured Nonpriority Claim:** $   See attached Rider
   ☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

THIS SPACE IS FOR COURT USE ONLY

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
   DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

FILED / RECEIVED

JAN 10 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

| | |
|---|---|
| Date<br>January 8, 2008 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>_signature_<br>**Brian L. Simons**<br>**Vice President** |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | ) |  |
| HOLDINGS, INC., a Delaware | ) | (Jointly Administered) |
| Corporation, *et al.*, | ) |  |
|  | ) |  |
| Debtors | ) |  |
|  | ) |  |

## RIDER TO PROOF OF CLAIM OF
## J.P. MORGAN MORTGAGE ACQUISITION CORP.

1.      J.P. Morgan Mortgage Acquisition Corp. ("JPMMAC") submits this claim against the estate of American Home Mortgage Corp. for amounts owed to JPMMAC in connection with the Mortgage Loan Sale Agreement, dated April 1, 2006 (and related Terms Letters and Assignment and Conveyance Agreements) (collectively, the "MLSA") among American Home Mortgage Corp. ("AHMC"), American Home Mortgage Servicing, Inc. ("AHMSI") and JPMMAC. Unless otherwise defined in this Rider, each capitalized term used in this Rider shall have the meaning given to it in the MLSA.

2.      At the time of the filing of the voluntary petitions initiating these cases under Chapter 11 of Title 11 of the United States Code, 11 U.S.C.§ 101 et seq. (the "Bankruptcy Code") on August 6, 2007 (the "Petition Date"), AHMC and AHMSI were indebted to JPMMAC for damages for breaches of warranties, representations and covenants and for other amounts due in connection with the MLSA, as set forth more fully below. Since the Petition Date, JPMMAC has identified further breaches and amounts for which AHMC and AHMSI are obligated under the MLSA, and additional breaches and amounts may be identified in the future, all as described more fully below.

3.      Pursuant to the MLSA, AHMC sold pools of residential mortgage loans to JPMMAC, and AHMSI serviced those loans on an interim basis until the servicing was transferred to JPMMAC or its designee. The interim servicing by AHMSI was also subject to the terms of the Flow Mortgage Loan Interim Servicing Agreement ("FMLISA"), made as of April 1, 2006, by and between JPMMAC and AHMSI. Under the terms of the MLSA, AHMC is obligated to (i) pay JPMMAC for repurchase of the loan in the event of an early payment default by a mortgagor (as described more fully in the MLSA), (ii) reimburse JPMMAC for the purchase

71831

premium in the event of an early payoff of a mortgage loan (as described more fully in the MLSA), and (iii) pay JPMMAC damages for a breach by AHMC or AHMSI of the representations, warranties and covenants set forth in the MLSA.  As of the date of this proof of claim, JPMMAC's claims against AHMC under the MLSA include:

| | | |
|---|---|---|
| a. | Early payment defaults (§7.07 of the MLSA) | $92,104,530.56 |
| b. | Early Payoff (§7.08 of the MLSA) | $   817,260.97 |
| c. | Breach of representations and warranties (SECTION 7 of the MLSA) | $ 3,610,992.41 |
| d. | Tax service contracts (§7.06(r) of the MLSA) | $   291,414.00 |
| e. | Property tax penalties (§7.07(q) of the MLSA) | $      109.46 |
| f. | Mortgage insurance premium (§2.07 of the FMLISA) | $     20,113.92 |
| | TOTAL: | $96,844,421.32 |

4.    The writings on which this claim is based include the following documents:

a.    the MLSA;

b.    the FMLISA;

c.    claim notice letters of various dates from JPMMAC to AHMC and/or AHMSI; and

d.    the loan documents, loan files, origination files and servicing files for the mortgage loans as to which the various claims arise.

5.    The documents identified in the previous paragraph are voluminous.  Consistent with the *Order Pursuant to Bankruptcy Rule 3003(c) and Local Rule 2002-1(e) Establishing Bar Dates For Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* entered by this Court on October 30, 2007, JPMMAC is not filing copies of these documents with this proof of claim.  JPMMAC will provide copies of these documents to the Debtors and to counsel for the Official Committee of Unsecured Creditors and will make copies available for discovery and inspection by other parties in interest upon request directed to JPMMAC's counsel.

2

71831

6.    No judgment has been rendered on the claims set forth in this proof of claim.

7.    This claim is not subject to setoff or counterclaim, provided, however, that in the event any claim is made for setoff or by way of counterclaim, JPMMAC reserves all recoupment rights that it may possess.

8.    JPMMAC's filing of this proof of claim is without prejudice to the filing by, or on behalf of, JPMMAC of proofs of claim with respect to any other liability or indebtedness of the Debtors. JPMMAC specifically reserves all of its procedural and substantive rights and defenses with respect to any claim that may be asserted against JPMMAC by the Debtors or any party in interest in these bankruptcy cases, or by any other person or entity.

9.    The filing of this proof of claim is not an election of remedies. JPMMAC specifically reserves the right to file claims or otherwise pursue any and all remedies against persons or entities other than the Debtors with respect to the matters that are the subject of this proof of claim.

10.    All distributions with respect to this proof of claim should be forwarded to:

J.P. Morgan Mortgage Acquisition Corp.
270 Park Avenue, 10th Floor
New York, NY 10017
Attention:  Brian Simons
           Vice President

All notices with respect to this proof of claim should be directed to:

J.P. Morgan Mortgage Acquisition Corp.
270 Park Avenue, 10th Floor
New York, NY 10017
Attention:  Brian Simons
           Vice President

-and-

JPMorgan Chase Bank, N.A.
One Chase Square, 25th Floor
Rochester, NY 14643
Attention:  Richard L. Smith, Esq.

Landis Rath and Cobb
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Attention:  Adam Landis, Esq.

3

71831

11.    JPMMAC reserves (i) the right to withdraw this proof of claim with respect to any of the claims set forth herein for any reason and (ii) the right to amend, modify, supplement or otherwise revise this proof of claim in any respect at any time.

71831



**JPMorgan Chase & Co.**
Legal Department
One Chase Square, 25th Floor
Rochester, NY 14643

Margaret E. Garrity
Associate/Paralegal III
Tel.: 585.797.1971
Fax: 585.797.1970
Email: margaret.e.garrity@chase.com

January 9, 2008

**VIA FEDERAL EXPRESS**

Epiq Bankruptcy Solutions, LLC
**Attn: American Home Mortgage Claims Processing**
757 Third Avenue, 3rd Floor
New York, NY 10017

Re:   **American Home Mortgage Corp.**
      **District of Delaware Case No. 07-11051**

Dear Sir or Madam:

Enclosed for filing please find a Proof of Claim form in the above-referenced bankruptcy case on behalf of J.P. Morgan Mortgage Acquisition Corp. with attached supporting document(s).

Please acknowledge filing of this claim by stamping the enclosed copy of the claim form and returning it in the enclosed self-addressed, stamped envelope.

Thank you.

Sincerely,

Margaret E. Garrity
Associate/Paralegal III

71876

## Exhibit F

**Morgan Stanley Claim**

ORIGINAL

<table>
<tr><td colspan="2">UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>American Home Mortgage Claims Processing Center<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076</td><td colspan="2">**PROOF OF CLAIM**</td></tr>
</table>

| In Re:<br>American Home Mortgage Holdings, Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered | |
| --- | --- | --- |
| Name of Debtor Against Which Claim is Held<br>American Home Mortgage Servicing, Inc. | Case No. of Debtor<br>07-11050 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

| Creditor:<br>Morgan Stanley Mortgage Capital Holdings LLC<br>c/o Morgan Stanley Legal and Compliance Division<br>1633 Broadway<br>New York, NY 10019<br>Attn: Daniela Levarda, Esq.<br>(212) 537-1518<br>Daniela.Levarda@MorganStanley.com | With a copy to:<br>Sidley Austin LLP<br>787 Seventh Ave.<br>New York, NY 10019<br>Attn: Lee Attanasio, Esq.<br>(212) 839-5300<br>lattanasio@sidley.com |
| --- | --- |

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you never received any notice from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)        0000009030

Telephone number:
Email Address:

| Account or other number by which creditor identifies debtor:<br>N/A | Check here if this claim:<br>☐ replaces    ☐ amends a previously filed claim, dated:_____ |
| --- | --- |

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☑ Other ___Mortgage Loan Servicing Agreement___ (explain)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last Four Digits of your SS#: ____  ____  ____  ____

Unpaid compensation for services performed

from _____ to _____
        (date)                              (date)

| 2. **Date debt was incurred:**<br>   See attached rider. | 3. **If court judgment, date obtained:** |
| --- | --- |

4. **Total Amount of Claim at Time Case Filed:** $ Contingent, unliquidated + _____ + _____ = $ Contingent, unliquidated
   (unsecured nonpriority)    (secured)    (unsecured priority)    (Total)
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate    ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. **Unsecured Nonpriority Claim:** $ Contingent, unliquidated
   ☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $_____
   Specify the priority of the claim:
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
   **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED / RECEIVED**

JAN 1 1 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date<br>01/11/2008 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>Van Cushny, Vice President    *Van Cushny* |
| --- | --- |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x
In re                                             :
                                                  :   Chapter 11
American Home Mortgage Servicing, Inc.            :   Case No. 07-11050 (CSS)
                                                  :
                Debtor.                           :
                                                  :
                                                  :
                                                  :
                                                  :
------------------------------------------------- x
```

## RIDER TO PROOF OF CLAIM OF
## MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC

### A.    **Debtor**

1.    On August 6, 2007 (the "Petition Date"), American Home Mortgage Servicing, Inc. (the "Debtor" or "AHM Servicing") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Prior to its chapter 11 filing, the Debtor's business primarily entailed the origination, servicing and sale of mortgage loans, as well as investment in mortgage loans and mortgage-backed securities resulting from the securitizations of residential mortgage loans.

### B.    **Claimant**

2.    The claimant is Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley"), successor-in-interest by merger to Morgan Stanley Mortgage Capital Inc. ("MSMCI"), and a New York limited liability corporation. Morgan Stanley files this claim (the "Claim") as a creditor of the Debtor.

C.    **Basis for Claim**

3.    Morgan Stanley asserts a contingent, unliquidated Claim against AHM

Servicing for any amounts related to any potential claims that may arise under the following

agreements:

    a.    Mortgage Loan Sale and Servicing Agreement, dated as of January 1, 2006, among MSMCI, AHM Servicing, as servicer, and American Home Mortgage Corporation ("AHM Corp."), as seller, (the "Retained Purchase and Servicing Agreement"); and

    b.    First Amended and Restated Interim Servicing Agreement, dated as of June 1, 2005, between MSMCI, and AHM Servicing (the "Restated Servicing Agreement"), as supplemented by the Regulation AB Compliance Addendum to First Amended and Restated Interim Servicing Agreement, dated as of April 1, 2007, between MSMCI and AHM Servicing (the "Addendum" and together with the Restated Servicing Agreement, the "Interim Servicing Agreement");

(a. and b., collectively, the "Servicing Agreements").[1]  Copies of the Servicing Agreements are

too voluminous to attach, but will be provided to the Debtor upon request.

4.    On or about January 1, 2006, Morgan Stanley entered into the Retained

Purchase and Servicing Agreement with AHM Corp. and AHM Servicing.  Pursuant to the

Retained Purchase and Servicing Agreement, Morgan Stanley purchased, from time to time,

certain mortgage loans (exclusive of any servicing rights on those mortgage loans) from AHM

Corp. AHM Servicing retains the servicing rights on those mortgage loans.

5.    On or about June 1, 2006, MSMCI entered into the Third Amended and

Restated Mortgage Loan Purchase and Warranties Agreement (the "Released Purchase

Agreement"), dated as of June 1, 2006 between MSMCI and American Home Mortgage Corp.

("AHM Corp.").  Pursuant to the Released Purchase Agreement, Morgan Stanley purchased,

---

[1]    Morgan Stanley files this Claim in order to preserve any and all claims related to the Agreements.  Morgan Stanley nonetheless reserves all rights to assert that such claims are entitled to administrative priority, and will file the appropriate papers on or before the administrative bar date.

from time to time, certain mortgage loans from AHM Corp. on a servicing released basis.  After

Morgan Stanley purchased these loans, Morgan Stanley hired AHM Servicing to subservice

these mortgage loans on an interim basis pursuant to the terms of the Interim Servicing

Agreement generally for a period of 90 to 120 days following the related purchase.

D.    **Nature and Amount of Claim**

**Failure to Comply with Servicing Requirements**

6.    Pursuant to the Servicing Agreements, AHM Servicing is obligated to,

among other things: (i) confirm, enforce and collect the monthly payments required by the

borrowers, see Retained Purchase and Servicing Agreement §§ 11.01, 11.03; Restated Servicing

Agreement, §§ 2.01, 2.03; (ii) confirm and enforce the maintenance of insurance on the related

mortgage properties and confirm the timely payment of taxes, ground rents, assessments and

other charges which are or may become a lien upon the related mortgaged properties, see

Retained Purchase and Servicing Agreement §§ 11.08, 11.10, 11.11; Restated Servicing

Agreement, §§ 2.08, 2.10, 2.11, 2.12; (iii) calculate and enforce adjustments to mortgage interest

rates and monthly payments, see Retained Purchase and Servicing Agreement § 11.24; Restated

Servicing Agreement, § 2.20; (iv) correctly deposit all amounts received in respect of the

mortgage loans into the appropriate custodial and escrow accounts and thereafter correctly remit

such amounts to Morgan Stanley or otherwise, see Retained Purchase and Servicing Agreement

§§ 11.04, 11.05, 11.06, 11.07, 11.09; Restated Servicing Agreement, §§ 2.04, 2.05, 2.06, 2.07,

2.09; and (v) if necessary, correctly foreclose on and liquidate the related mortgage property, see

Retained Purchase and Servicing Agreement §§ 11.02, 11.12; Restated Servicing Agreement, §§

2.02, 2.14, 2.15, 2.16, 2.17, 2.18, 2.19.

7.

8.    In light of these servicing obligations, Morgan Stanley asserts a

contingent, unliquidated Claim for any breaches by AHM Servicing of its servicing obligations

that may be discovered by Morgan Stanley subsequent to the date hereof.

### Failure to Comply with Reporting Requirements

9.    Most of the mortgage loans purchased by Morgan Stanley from AHM

Corp. that are being serviced or were interim serviced by AHM Servicing have been sold into

publicly registered securitization trusts.  Morgan Stanley remains a beneficiary of these trusts.  In

order to comply with federal statutes and the Securities and Exchange Commission's regulations,

these securitizations are required to provide substantial on-going reporting.  The Servicing

Agreements set forth the reporting that AHM Servicing is required to provide in respect of these

securitizations.  See Retained Purchase and Servicing Agreement §§ 15, 34; Restated Servicing

Agreement, §§ 4.04, 4.05, 13.12; Addendum Art. II.

10.    In light of these reporting obligations, Morgan Stanley asserts a

contingent, unliquidated Claim for any failures to deliver documents or information required

from AHM Servicing for federal reporting compliance that may be discovered by Morgan

Stanley subsequent to the date hereof.

### Additional Claims

11.    AHM Servicing is obligated to indemnify Morgan Stanley against any and

all claims, losses, damages, penalties, fines, forfeitures, legal fees and expenses (including,

without limitation, any legal fees and expenses, judgments or expenses relating to such liability,

claim, loss or damage) and related costs, judgments, and any other costs, fees and expenses that

such parties may sustain in any way related to the failure of AHM Servicing to observe and

perform any or all of AHM Servicing's duties, obligations, covenants, agreements, warranties or

representations contained in the Servicing Agreements or the Released Purchase Agreement to

comply with all applicable requirements contained in the Servicing Agreements or the Released

Purchase Agreement with respect to the servicing of the mortgage loans and the transfer of

servicing rights.  See Retained Purchase and Servicing Agreement §§ 15, 34; Restated Servicing

Agreement, §§ 9.01, 13.12; Addendum § 2.07.

12.    In light of these obligations, Morgan Stanley asserts a contingent,

unliquidated Claim for any such indemnifiable amounts relating to AHM Servicing's failure to

comply with all applicable requirements under the Servicing Agreements or the Released

Purchase Agreement that may be discovered by Morgan Stanley subsequent to the date hereof.

### E.    **Reservation of Rights**

13.    Morgan Stanley reserves its rights to (a) amend, update and/or supplement

this Claim at any time and in any respect,[2] (b) file additional proofs of claim for additional

claims that may be based on the same or additional documents or other liability or indebtedness

of the Debtor to Morgan Stanley, (c) file a request for payment of administrative expenses in

accordance with 11 U.S.C. §§ 503 and 507 including, without limitation, for expenses included

in this Claim, and/or (d) to assert a right of recoupment and/or a right of setoff pursuant to 11

U.S.C. § 553 with respect to any claims described herein.

14.    The filing of this Claim is not: (a) a waiver or release of Morgan Stanley's

rights against any person, entity or property, (b) a consent by Morgan Stanley to the jurisdiction

---

[2]    This includes, but is not limited to, any claims that may arise from the Debtor's failure to comply with any term of the Stipulation and Agreement Between the Debtors and Morgan Stanley Mortgage Capital Holdings LLC (the "Stipulation"), which was approved by the Bankruptcy Court on August 24, 2007. Pursuant to the Stipulation, the Debtor is required to, inter alia, (1) promptly deliver to Morgan Stanley's custodian all documents in respect of the mortgage loans purchased by Morgan Stanley under the Released Purchase Agreement; and (2) transfer servicing in accordance with the provisions of Section 7.02 of the Interim Servicing Agreement, which in turn requires, inter alia, that AHM Servicing continue to deliver to Morgan Stanley funds and documents received in connection with the related mortgage loans. Although Morgan Stanley believes that any such claim is entitled to administrative priority, out of an abundance of caution, Morgan Stanley reserves the right to amend, update and/or supplement this Claim to include any such claim.

of the Bankruptcy Court with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, (c) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of the Bankruptcy Court, with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, or to assert that the reference has already been withdrawn with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, (d) an election of remedy, or (e) a waiver of any past, present or future defaults or events of defaults.

F.     **Notices**

All notices with respect to this Claim should be sent to:

Morgan Stanley
1585 Broadway
New York, NY 10019
Attn: Daniela Levarda, Esq.

– and –

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Attn:  Lee S. Attanasio, Esq.

NY1 6474206v.6

ORIGINAL

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>American Home Mortgage Claims Processing Center<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>American Home Mortgage Holdings, Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered |
|---|---|
| Name of Debtor Against Which Claim Is Held<br>American Home Mortgage Corp. | Case No. of Debtor<br>07-11051 |

**NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.**

THIS SPACE IS FOR COURT USE ONLY

**Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)**

Creditor:
Morgan Stanley Mortgage Capital Holdings LLC
c/o Morgan Stanley Legal and Compliance Division
1633 Broadway
New York, NY 10019
Attn: Daniela Levarda, Esq.
(212) 537-1518
Daniela.Levarda@MorganStanley.com

With a copy to:
Sidley Austin LLP
787 Seventh Ave.
New York, NY 10019
Attn: Lee Attanasio, Esq.
(212) 839-5300
lattanasio@sidley.com

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notice from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)            0000009031

Telephone number:
Email Address:

| Account or other number by which creditor identifies debtor:<br>N/A | Check here if this claim:<br>☐ replaces       ☐ amends a previously filed claim, dated: |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other __Mortgage Loan Sale Agreement__ (explain)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last Four Digits of your SS#: ____  ____  ____  ____
Unpaid compensation for services performed
from _____ to _____
    (date)              (date)

**2. Date debt was incurred:**
    See attached rider.

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ Contingent, unliquidated + _____ + _____ = $ Contingent, unliquidated
    (unsecured nonpriority)    (secured)    (unsecured priority)    (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries, or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**6. Unsecured Nonpriority Claim:** $ Contingent, unliquidated
☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
**DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10 Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED / RECEIVED**

**JAN 1 1 2008**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

| Date<br>01/11/2008 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>Van Cushny, Vice President        *Van Cushny* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---

In re :

:     Chapter 11

American Home Mortgage Corp. :     Case No. 07-11051 (CSS)

Debtor. :

:

:

:

:

---

## RIDER TO PROOF OF CLAIM OF
## MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC

### A.    **Debtor**

1.     On August 6, 2007 (the "Petition Date"), American Home Mortgage

Corporation (the "Debtor" or "AHM Corp.") filed a voluntary petition for relief under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court"). Prior to its chapter 11 filing, the

Debtor's business primarily entailed the origination, servicing and sale of mortgage loans, as

well as investment in mortgage loans and mortgage-backed securities resulting from the

securitizations of residential mortgage loans.

### B.    **Claimant**

2.     The claimant is Morgan Stanley Mortgage Capital Holdings LLC

("Morgan Stanley"), successor-in-interest by merger to Morgan Stanley Mortgage Capital Inc.

("MSMCI"), and a New York limited liability corporation. Morgan Stanley files this claim (the

"Claim") as a creditor of the Debtor.

C.     **Basis for Claim**

3.     Morgan Stanley asserts a contingent, unliquidated Claim against AHM

Corp. for any amounts related to any potential obligations that may arise under the following

mortgage loan purchase agreements:

      a.     Mortgage Loan Sale and Servicing Agreement, dated as of January 1, 2006, among MSMCI, American Home Mortgage Servicing, Inc. ("AHM Servicing"), as servicer, and AHM Corp. (the "Retained Purchase Agreement");

      b.     Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of December 1, 2005, between MSMCI and AHM Corp. (the "Second Amended Purchase Agreement"); and

      c.     Third Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of June 1, 2006, between MSMCI and AHM Corp. (the "Third Amended Purchase Agreement", and with the Second Amended Purchase Agreement, the "Released Purchase Agreements");

(a. – c., collectively, the "Agreements").[1]  Copies of the Agreements are too voluminous to

attach, but will be provided to the Debtor upon request.

4.     On or about January 1, 2006, Morgan Stanley entered into the Retained

Purchase Agreement with AHM Corp. and AHM Servicing.  Pursuant to the Retained Purchase

Agreement, Morgan Stanley purchased, from time to time, certain mortgage loans from AHM

Corp. on a servicing retained basis.  AHM Servicing acted as the servicer of those mortgage

loans.

5.     On or about December 1, 2005, Morgan Stanley entered into the Second

Amended Purchase Agreement with AHM Corp.  On or about June 1, 2006, Morgan Stanley

entered into the Third Amended Purchase Agreement with AHM Corp.  Pursuant to the Released

Purchase Agreements, Morgan Stanley purchased, from time to time, certain mortgage loans

---

[1]     Morgan Stanley files this Claim in order to preserve any and all claims related to the Agreements.  Morgan Stanley nonetheless reserves all rights to assert that such claims are entitled to administrative priority, and will file the appropriate papers on or before the administrative bar date.

from AHM Corp. on a servicing released basis, although Morgan Stanley hired AHM Servicing

to interim service these mortgage loans for a maximum of 90 days following the related

purchase.

      6.     Morgan Stanley still owns certain of the mortgage loans.  Other mortgage

loans were sold by Morgan Stanley into securitizations or to third parties.  When Morgan Stanley

sold certain of the mortgage loans into the securitizations or to third parties, Morgan Stanley

made certain representations and warranties with respect to those mortgage loans as of the

applicable sale date.  To the extent such mortgage loans sustain any breaches of representations

and warranties as described below, Morgan Stanley is obligated to repurchase the affected

mortgage loans and will once again be the owner of such mortgage loans.

D.    **Nature and Amount of Claim**

       **Early Payment Defaults**

      7.     Pursuant to the Agreements, and upon notice, AHM Corp. is required to

repurchase mortgage loans from Morgan Stanley in circumstances where a mortgagor is

"delinquent" in the payment of any of the first three (3) scheduled monthly payments of principal

and interest on a mortgage loan either (i) after origination of the mortgage loan; or (ii) after

Morgan Stanley's purchase of the mortgage loan (in each case, an "Early Payment Default").

See Retained Purchase Agreement, § 7.04; Released Purchase Agreements, § 9.04.  AHM Corp.

is required to repurchase such mortgage loans at the price set out in the Agreement under which

the specific mortgage loan was purchased (the "Repurchase Price"),[2] which is generally equal to

the sum of (i) the purchase price paid by Morgan Stanley, less any amounts received by Morgan

---

[2]    Certain sale-specific terms, including the Repurchase Price and the Premium Purchase Price (as defined below), have been incorporated into the Agreements through Purchase Price and Terms Agreements.  Due to the confidential nature of the Purchase Price and Terms Agreements, they have not been attached hereto. The Debtor, as a party to the Purchase Price and Terms Agreements, should already have a copy of such agreements in its possession.

Stanley from or on behalf of the related mortgagor, (ii) accrued interest on such mortgage loan at

the applicable mortgage interest rate from the date to which interest had last been paid through

the date of such repurchase, (iii) the amount of any outstanding advances owed to the Morgan

Stanley and (iv) all costs and expenses incurred by the Purchaser or any servicer arising out of or

based upon such breach, including without limitation, costs and expenses incurred in the

enforcement of AHM Corp.'s repurchase obligation. Id.

       8.     In light of these repurchase obligations, Morgan Stanley asserts a

contingent, unliquidated Claim for any Early Payment Defaults that may be discovered by

Morgan Stanley subsequent to the date hereof.

### Premium Recapture

       9.     Morgan Stanley purchased many of the mortgage loans from AHM Corp.

at a "premium" under the Agreements. In other words, Morgan Stanley paid in excess of 100%

of the respective current principal balances of these mortgage loans. Pursuant to the

Agreements, AHM Corp. is obligated to reimburse Morgan Stanley for the premium portion of

the purchase price paid on any mortgage loan that is prepaid in full within three (3) months of

Morgan Stanley's purchase of the mortgage loan. See Retained Purchase Agreement, § 7.05;

Released Purchase Agreements, § 9.05. For each such mortgage loan, AHM Corp. is required to

pay Morgan Stanley an amount equal to the excess of the percentage paid over 100% set out in

the Agreement under which such mortgage loan was purchased, multiplied by the outstanding

principal balance of such mortgage loan at the time of Morgan Stanley's purchase (the "Premium

Purchase Price"). Id.

       10.    In light of AHM Corp.'s obligation to reimburse Morgan Stanley for

Premium Purchase Price amounts, Morgan Stanley asserts a contingent, unliquidated Claim for

any such amounts that may be discovered by Morgan Stanley subsequent to the date hereof.

4

### Loan Level Representations and Warranties

11.     At the time Morgan Stanley purchased each mortgage loan from AHM

Corp., AHM Corp. made certain representations and warranties regarding the mortgage loan, the

related mortgagor, and the related mortgaged property. See Retained Purchase Agreement, §

7.01; Released Purchase Agreements, § 9.02. Pursuant to the Agreements, AHM Corp. is

required to repurchase mortgage loans from Morgan Stanley at the Repurchase Price in

circumstances where AHM Corp. breaches any of the representations and warranties made in

those Agreements. See Retained Purchase Agreement, §§ 7.01-7.03; Released Purchase

Agreements, §§ 9.01-9.03.

12.     Morgan Stanley therefore asserts a contingent, unliquidated Claim for

repurchase obligations that result from a breach of a representation or warranty made in the

Agreements that may be discovered by Morgan Stanley subsequent to the date hereof.

### Additional Claims

13.     AHM Corp. is obligated to indemnify Morgan Stanley against any losses,

damages, legal fees and costs relating to a breach by AHM Corp. of any of the representations,

warranties and covenants set forth in the Agreements. Such losses, damages, fees and costs

include, but are not limited to, penalties, fines, forfeitures, legal fees and expenses and related

costs, judgments, and other costs and expenses (including servicing fees, in the case of the

mortgage loans purchased under the Released Agreements) associated with the mortgage loans,

and interest accumulated on the unpaid balance of the mortgage loans. See Retained Purchase

Agreement, §§ 6.03, 7.03, 12.01, 15, 34.07; Released Purchase Agreements, §§ 9.03, 13, 15.01,

36.04.

14.     In light of these obligations, Morgan Stanley asserts a contingent,

unliquidated Claim for any such indemnifiable amounts relating to a breach of a representation,

5

warranty or covenant made in the Agreements that may be discovered by Morgan Stanley subsequent to the date hereof.

E.     **Reservation of Rights**

15.     Morgan Stanley reserves its rights to (a) amend, update and/or supplement this Claim at any time and in any respect,[3] (b) file additional proofs of claim for additional claims that may be based on the same or additional documents or other liability or indebtedness of the Debtor to Morgan Stanley, (c) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507 including, without limitation, for expenses included in this Claim, and/or (d) to assert a right of recoupment and/or a right of setoff pursuant to 11 U.S.C. § 553 with respect to any claims described herein.

16.     The filing of this Claim is not: (a) a waiver or release of Morgan Stanley's rights against any person, entity or property, (b) a consent by Morgan Stanley to the jurisdiction of the Bankruptcy Court with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, (c) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of the Bankruptcy Court, with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, or to assert that the reference has already been withdrawn with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or

---

[3]     This includes, but is not limited to, any claims that may arise in circumstances where Morgan Stanley determines or is required to repurchase any mortgage loans that have been sold by MSMCI or Morgan Stanley into securitizations. This further includes, but is not limited to, any claims that may arise from the Debtor's failure to comply with any term of the Stipulation and Agreement Between the Debtors and Morgan Stanley Mortgage Capital Holdings LLC (the "Stipulation"), which was approved by the Bankruptcy Court on August 24, 2007. Although Morgan Stanley believes that any claim related to the Stipulation would be entitled to administrative priority, out of an abundance of caution, Morgan Stanley reserves the right to amend, update and/or supplement this Claim to include any such claim.

otherwise involving Morgan Stanley, (d) an election of remedy, or (e) a waiver of any past,

present or future defaults or events of defaults.

F.      **Notices**

All notices with respect to this Claim should be sent to:

Morgan Stanley
1585 Broadway
New York, NY 10019
Attn: Daniela Levarda, Esq.

– and –

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Attn:  Lee S. Attanasio, Esq.

7

ORIGINAL

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | | **PROOF OF CLAIM** |
|---|---|---|
| American Home Mortgage Claims Processing Center<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | |

| In Re:<br>American Home Mortgage Holdings, Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered | |
|---|---|---|
| Name of Debtor Against Which Claim is Held<br>**American Home Mortgage Corp.** | Case No. of Debtor<br>**07-11051** | |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

**Name and address of Creditor :** (and name and address where notices should be sent if different from Creditor)

Creditor:
Morgan Stanley Mortgage Capital Holdings LLC
c/o Morgan Stanley Legal and Compliance Division
1633 Broadway
New York, NY 10019
Attn: Daniela Levarda, Esq.
(212) 537-1518
Daniela.Levarda@MorganStanley.com

With a copy to:
Sidley Austin LLP
787 Seventh Ave.
New York, NY 10019
Attn: Lee Attanasio, Esq.
(212) 839-5300
lattanasio@sidley.com

Telephone number:
Email Address:

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notice from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)          0000009032

‖‖‖‖‖‖‖‖‖‖‖‖‖‖

| Account or other number by which creditor identifies debtor:<br>N/A | Check here if this claim:<br>☐ replaces      ☐ amends a previously filed claim, dated: _____ |
|---|---|

| 1. **Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other ___Mortgage Loan Sale Agreement___ (explain) | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill out below)<br>Last Four Digits of your SS#: ___ ___ ___ - ___ ___ - ___ ___ ___ ___<br>Unpaid compensation for services performed<br>from _____ to _____<br><span>(date)      (date)</span> |
|---|---|

| 2. Date debt was incurred:<br>Various | 3. If court judgment, date obtained: |
|---|---|

4. Total Amount of Claim at Time Case Filed: $ ___See attached rider___ + _____ + _____ = ___See attached rider___
<span>(unsecured nonpriority)      (secured)      (unsecured priority)      (Total)</span>

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. **Secured Claim.**<br>☐ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br>☐ Real Estate      ☐ Motor Vehicle<br>☐ Other _____<br><br>Value of Collateral: $_____<br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____ | 7. **Unsecured Priority Claim.**<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $_____<br>Specify the priority of the claim:<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).<br>☐ Wages, salaries, or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). |
|---|---|
| 6. **Unsecured Nonpriority Claim:** $ ___See attached rider___<br>☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___). |

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.

**DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

10 Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED / RECEIVED**

JAN 1 1 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date<br>01/11/2008 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>Van Cushny, Vice President          *Van Cushny* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

</div>

```
--------------------------------------------------  x
In re                                                :
                                                     :     Chapter 11
American Home Mortgage Corp.                          :     Case No. 07-11051 (CSS)
                                                     :
                              Debtor.                 :
                                                     :
                                                     :
                                                     :
                                                     :
--------------------------------------------------  x
```

<div align="center">

**RIDER TO PROOF OF CLAIM OF**
**MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC**

</div>

A.    **Debtor**

      1.    On August 6, 2007 (the "Petition Date"), American Home Mortgage

Corporation (the "Debtor" or "AHM Corp.") filed a voluntary petition for relief under chapter 11

of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy

Court for the District of Delaware (the "Bankruptcy Court"). Prior to its chapter 11 filing, the

Debtor's business primarily entailed the origination, servicing and sale of mortgage loans, as

well as investment in mortgage loans and mortgage-backed securities resulting from the

securitizations of residential mortgage loans.

B.    **Claimant**

      2.    The claimant is Morgan Stanley Mortgage Capital Holdings LLC

("Morgan Stanley"), successor-in-interest by merger to Morgan Stanley Mortgage Capital Inc.

("MSMCI"), and a New York limited liability corporation. Morgan Stanley files this claim (the

"Claim") as a creditor of the Debtor.

C.    **Basis for Claim**

3.    This Claim is based on amounts due and owing Morgan Stanley under the following mortgage loan purchase agreements:

a.    Mortgage Loan Sale and Servicing Agreement, dated as of January 1, 2006, among MSMCI, American Home Mortgage Servicing, Inc. ("AHM Servicing"), as servicer, and AHM Corp. (the "Retained Purchase Agreement");

b.    Second Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of December 1, 2005, between MSMCI and AHM Corp. (the "Second Amended Purchase Agreement"); and

c.    Third Amended and Restated Mortgage Loan Purchase and Warranties Agreement, dated as of June 1, 2006, between MSMCI and AHM Corp. (the "Third Amended Purchase Agreement", and with the Second Amended Purchase Agreement, the "Released Purchase Agreements");

(a. – c., collectively, the "Agreements").[1]  Copies of the Agreements are too voluminous to attach, but will be provided to the Debtor upon request.

4.    On or about January 1, 2006, Morgan Stanley entered into the Retained Purchase Agreement with AHM Corp. and AHM Servicing.  Pursuant to the Retained Purchase Agreement, Morgan Stanley purchased, from time to time, certain mortgage loans from AHM Corp. on a servicing retained basis.  AHM Servicing acted as the servicer of those mortgage loans.

5.    On or about December 1, 2005, Morgan Stanley entered into the Second Amended Purchase Agreement with AHM Corp.  On or about June 1, 2006, Morgan Stanley entered into the Third Amended Purchase Agreement with AHM Corp.  Pursuant to the Released Purchase Agreements, Morgan Stanley purchased, from time to time, certain mortgage loans from AHM Corp. on a servicing released basis, although Morgan Stanley hired AHM Servicing

---

[1]    Morgan Stanley files this Claim in order to preserve any and all claims related to the Agreements.  Morgan Stanley nonetheless reserves all rights to assert that such claims are entitled to administrative priority, and will file the appropriate papers on or before the administrative bar date.

to interim service these mortgage loans for a maximum of 90 days following the related purchase.

6.    Morgan Stanley still owns certain of the mortgage loans. Other mortgage loans were sold by Morgan Stanley into securitizations or to third parties. When Morgan Stanley sold certain of the mortgage loans into the securitizations or to third parties, Morgan Stanley made certain representations and warranties with respect to those mortgage loans as of the applicable sale date. As these mortgage loans sustained breaches of representations and warranties, Morgan Stanley was obligated to repurchase these affected mortgage loans. Morgan Stanley is once again the owner of these repurchased mortgage loans.

D.    **Nature and Amount of Claim**

**Early Payment Defaults**

7.    Pursuant to the Agreements, and upon notice, AHM Corp. is required to repurchase mortgage loans from Morgan Stanley in circumstances where a mortgagor is "delinquent" in the payment of any of the first three (3) scheduled monthly payments of principal and interest on a mortgage loan either (i) after origination of the mortgage loan; or (ii) after Morgan Stanley's purchase of the mortgage loan (in each case, an "Early Payment Default"). See Retained Purchase Agreement, § 7.04; Released Purchase Agreements, § 9.04. AHM Corp. is required to repurchase such mortgage loans at the price set out in the Agreement under which the specific mortgage loan was purchased (the "Repurchase Price"),[2] which is generally equal to the sum of (i) the purchase price paid by Morgan Stanley, less any amounts received by Morgan Stanley from or on behalf of the related mortgage loan (including the liquidation proceeds from

---

[2]    Certain sale-specific terms, including the Repurchase Price and Premium Purchase Price (defined below), have been incorporated into the Agreements through Purchase Price and Terms Agreements. Due to the confidential nature of the Purchase Price and Terms Agreements, they have not been attached hereto. The Debtor, as a party to the Purchase Price and Terms Agreements, should already have a copy of such agreements in its possession.

3

the sale of any foreclosed mortgaged property related to a mortgage loan that had sustained one

or more breaches of representations and warranties and went into default), (ii) accrued interest on

such mortgage loan at the applicable mortgage interest rate from the date to which interest had

last been paid through the date of such repurchase, (iii) the amount of any outstanding advances

owed to the Morgan Stanley and (iv) all costs and expenses incurred by the Purchaser or any

servicer arising out of or based upon such breach, including without limitation, costs and

expenses incurred in the enforcement of AHM Corp.'s repurchase obligation. Id.

        8.      Several of the mortgage loans have sustained Early Payment Defaults.

Consistent with the terms of the Agreements, Morgan Stanley provided AHM Corp. notice of

these defaults, thereby triggering AHM Corp.'s obligation under the Agreements to repurchase

the mortgage loans. Despite having been given notice of the Early Payment Defaults, there are

numerous mortgage loans that AHM Corp. has not repurchased. A chart, which sets out, inter

alia, the specific mortgage loan, the Repurchase Price and the date the first payment under the

mortgage loan was due to Morgan Stanley, is attached as Schedule A. As set out in the schedule,

there are 141 mortgage loans that AHM Corp. is required to repurchase, but has failed to do so,

at a total Repurchase Price of $28,975,635.02.

**Premium Recapture**

        9.      Morgan Stanley purchased many of the mortgage loans from AHM Corp.

at a "premium" under the Agreements. In other words, Morgan Stanley paid in excess of 100%

of the respective current principal balances of these mortgage loans. Pursuant to the

Agreements, AHM Corp. is obligated to reimburse Morgan Stanley for the premium portion of

the purchase price paid on any mortgage loan that is prepaid in full within three (3) months of

Morgan Stanley's purchase of the mortgage loan (See Retained Purchase Agreement, § 7.05;

Released Purchase Agreements, § 9.05) and for the premium portion of the purchase price of any

4

mortgage loan that is otherwise required to be repurchased (See Retained Purchase Agreement, § 7.03; Released Purchase Agreements, § 9.03). For each such mortgage loan, AHM Corp. is required to pay Morgan Stanley an amount equal to the excess of the percentage paid over 100% set out in the Agreement under which such mortgage loan was purchased, multiplied by the outstanding principal balance of such mortgage loan at the time of Morgan Stanley's purchase (the "Premium Purchase Price"). Id.

       10.    AHM Corp. is required to pay a Premium Purchase Price with respect to several of the mortgage loans. Consistent with the terms of the Agreements, Morgan Stanley provided AHM Corp. with notice of its obligation to reimburse Morgan Stanley for such amounts. Despite having been given notice, there are numerous mortgage loans for which Morgan Stanley has yet to receive any reimbursement. A chart, which sets out, inter alia, the specific mortgage loan, the Premium Purchase Price and the date payment of the Premium Purchase Price was due to Morgan Stanley, is attached as Schedule B. As set out in the schedule, there are 285 mortgage loans that AHM Corp. is required to pay a total Premium Purchase Price of $1,665,689.59.

### Loan Level Representations and Warranties

       11.    At the time Morgan Stanley purchased each mortgage loan from AHM Corp., AHM Corp. made certain representations and warranties regarding the mortgage loan, the related mortgagor, and the related mortgaged property. These representations and warranties include, among others:

      a.    Mortgage Loans as Described. The information set forth in the related Mortgage Loan Schedule (as defined in each of the Agreements) is complete, true and correct. Retained Purchase Agreement, § 7.01(a); Released Purchase Agreements, § 9.02(a).

      b.    Validity of Mortgage Documents. The mortgage note and the mortgage and any other agreement executed and delivered by a mortgagor in

5

connection with a mortgage loan are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the mortgage note, the mortgage and any other such related agreement had legal capacity to enter into the mortgage loan and to execute and deliver the mortgage note, the mortgage and any such agreement, and the mortgage note, the mortgage and any other such related agreement have been duly and properly executed by other such related parties. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a mortgage loan has taken place on the part of AHM Corp. in connection with the origination of the mortgage loan or in the application of any insurance in relation to such mortgage loan. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to a mortgage loan has taken place on the part of any person. AHM Corp. has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein. Retained Purchase Agreement, § 7.01(k); Released Purchase Agreements, § 9.02(k).

c.    Occupancy of the Mortgaged Property. The mortgaged property is lawfully occupied under applicable law. All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the mortgaged property and, with respect to the use and occupancy of the same, have been made or obtained from the appropriate authorities. Unless otherwise specified on the related Mortgage Loan Schedule, the mortgagor represented at the time of origination of the mortgage loan that the mortgagor would occupy the mortgaged property as the mortgagor's primary residence. Retained Purchase Agreement, § 7.01(w); Released Purchase Agreements, § 9.02(w).

d.    Acceptable Investment. There are no circumstances or conditions with respect to the mortgage, the mortgaged property, the mortgagor, the mortgage file or the mortgagor's credit standing that can reasonably be expected to cause private institutional investors who invest in prime mortgage loans similar to the mortgage loans sold under the applicable Agreement to regard the mortgage loans sold under that Agreement as an unacceptable investment, cause the mortgage loan to become delinquent, or adversely affect the value or marketability of the mortgage loan, or cause the mortgage loan to prepay during any period materially faster or slower than the mortgage loans originated by AHM Corp. generally. No mortgaged property is located in a state, city, county or other local jurisdiction which Morgan Stanley has determined in its sole good faith discretion would cause the related mortgage loan to be ineligible for whole loan sale or securitization in a transaction consistent with the prevailing

sale and securitization industry with respect to substantially similar mortgage loans. Retained Purchase Agreement, § 7.01(z); Released Purchase Agreements, § 9.02(z).

e.    <u>Delivery of Mortgage Documents</u>. All documents required to be delivered to Morgan Stanley for each mortgage loan have been delivered. Retained Purchase Agreement, § 7.01(aa); Released Purchase Agreements, § 9.02(aa).

f.    <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>. There is no proceeding pending or threatened for the total or partial condemnation of the mortgaged property. The mortgaged property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty so as to affect adversely the value of the mortgaged property as security for the mortgage loan or the use for which the premises were intended and each mortgaged property is in good repair. There have not been any condemnation proceedings with respect to the mortgaged property. Retained Purchase Agreement, § 7.01(gg); Released Purchase Agreements, § 9.02(gg).

g.    <u>Underwriting Methodology</u>. The methodology used in underwriting the extension of credit for each mortgage loan employs, in part, objective mathematical principles which relate the mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the mortgagor's equity in the collateral as the principal determining factor in approving such credit extension. Such underwriting methodology confirmed that at the time of origination (application/approval) the mortgagor had a reasonable ability to make timely payments on the mortgage loan. Retained Purchase Agreement, § 7.01(hhh); Third Amended Released Purchase Agreement, § 9.02(hhh).

h.    <u>Second Lien Loans</u>. With respect to each mortgage loan that is secured by a second lien on the related mortgaged property, among other things, (i) the first lien mortgage loan on the related mortgaged property does not permit negative amortization, (ii) either (a) no consent for the second lien mortgage loan is required by the holder of the related first lien or (b) such consent has been obtained and is contained in the related mortgage file; and (iii) the related mortgaged property is the mortgagor's principal residence. Retained Purchase Agreement, § 7.01(kkk); Third Amended Released Purchase Agreement, § 9.02(kkk).

Pursuant to the Agreements, AHM Corp. is required to repurchase mortgage loans from Morgan

Stanley at the Repurchase Price in circumstances where AHM Corp. breaches any of the

representations and warranties made in those Agreements.  See Retained Purchase Agreement,

§§ 7.01-7.03; Released Purchase Agreements, §§ 9.01-9.03.

12.    There have been several breaches of the representations and warranties

with respect to the mortgage loans, including but not limited to the representations and

warranties described above.  Consistent with the terms of the Agreements, Morgan Stanley

provided AHM Corp. notice of its obligation to repurchase such mortgage loans.  Despite having

been given notice, there are numerous mortgage loans that AHM Corp. has not repurchased.  A

chart, which sets out, inter alia, the specific mortgage loan, the Repurchase Price and the

representation or warranty breached, is attached as Schedule C.  As set out in the schedule, there

are 15 mortgage loans that AHM Corp. is required to repurchase at a total Repurchase Price of

$2,368,655.20.

### Additional Claims

13.    In addition to its repurchase obligations, AHM Corp. is obligated to

indemnify Morgan Stanley against any losses, damages, legal fees and costs relating to a breach

by AHM Corp. of any of the representations, warranties and covenants set forth in the

Agreements.  Such losses, damages, fees and costs include, but are not limited to, penalties,

fines, forfeitures, legal fees and expenses and related costs, judgments, and other costs and

expenses (including servicing fees, in the case of the mortgage loans purchased under the

Released Agreements) associated with the mortgage loans, and interest in excess of the amounts

calculated on Schedules A, B and C hereto.  See Retained Purchase Agreement, §§ 6.03, 7.03,

12.01, 15, 34.07; Released Purchase Agreements, §§ 9.03, 13, 15.01, 36.04.

8

E.    **Reservation of Rights**

14.    Morgan Stanley reserves its rights to (a) amend, update and/or supplement this Claim at any time and in any respect,[3] (b) file additional proofs of claim for additional claims that may be based on the same or additional documents or other liability or indebtedness of the Debtor to Morgan Stanley, (c) file a request for payment of administrative expenses in accordance with 11 U.S.C. §§ 503 and 507 including, without limitation, for expenses included in this Claim, and/or (d) to assert a right of recoupment and/or a right of setoff pursuant to 11 U.S.C. § 553 with respect to any claims described herein.

15.    The filing of this Claim is not: (a) a waiver or release of Morgan Stanley's rights against any person, entity or property, (b) a consent by Morgan Stanley to the jurisdiction of the Bankruptcy Court with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, (c) a waiver of the right to move to withdraw the reference, or otherwise to challenge the jurisdiction of the Bankruptcy Court, with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, or to assert that the reference has already been withdrawn with respect to the subject matter of this Claim, any objection hereto, or any other proceeding commenced in this case against or otherwise involving Morgan Stanley, (d) an election of remedy, or (e) a waiver of any past, present or future defaults or events of defaults.

---

[3]    This includes, but is not limited to, any claims that may arise in circumstances where Morgan Stanley determines or is required to repurchase any mortgage loans that have been sold by MSMCI or Morgan Stanley into securitizations. This further includes, but is not limited to, any claims that may arise from the Debtor's failure to comply with any term of the Stipulation and Agreement Between the Debtors and Morgan Stanley Mortgage Capital Holdings LLC (the "Stipulation"), which was approved by the Bankruptcy Court on August 24, 2007. Although Morgan Stanley believes that any claim related to the Stipulation would be entitled to administrative priority, out of an abundance of caution, Morgan Stanley reserves the right to amend, update and/or supplement this Claim to include any such claim.

9

F.    **Notices**

All notices with respect to this Claim should be sent to:

Morgan Stanley
1585 Broadway
New York, NY 10019
Attn: Daniela Levarda, Esq.

– and –

Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
Attn:  Lee S. Attanasio, Esq.

10

# Schedule A

# Early Payment Defaults

| LoanId | Rep Breached | Notice Date | Date MS Purchase | First Payment Due on Loan | Date of First Payment Due MS | Total Purchase Price | Purchase Date Balance | Balance Current | Accrued Interest Due Thru 8/6/07 | Escrow Advances thru 8/6/07 | Corporate Advances thru 8/6/07 | Total Repurchase Amount a/o 8/6/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Repurchase | | | | | | | | | | | | |
| 1655377 | EPD | 8/21/2007 | 10/5/2007 | 5/1/2007 | 5/1/2007 | * | $1,000,000.00 | $1,000,000.00 | $0.00 | $0.00 | $540.93 | $1,014,666.20 |
| 1329893 | EPD | 1/10/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $28,600.00 | $28,463.06 | $0.00 | $0.00 | $344.00 | $30,159.26 |
| 1325571 | EPD | 1/10/2007 | 8/28/2007 | 8/1/2006 | 9/1/2006 | * | $31,000.00 | $30,882.14 | $0.00 | $0.00 | $0.00 | $32,111.49 |
| 1423173 | EPD | 5/1/2007 | 8/28/2007 | 11/1/2006 | 1/1/2007 | * | $48,750.00 | $48,438.71 | $0.00 | $0.00 | $0.00 | $50,975.92 |
| 1483458 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $53,000.00 | $52,876.25 | $0.00 | $0.00 | $0.00 | $55,283.70 |
| 1482462 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $104,000.00 | $103,704.60 | $0.00 | $0.00 | $0.00 | $108,361.43 |
| 1415545 | EPD | 1/10/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $112,000.00 | $112,000.00 | $0.00 | $0.00 | $0.00 | $115,700.32 |
| 1305630 | EPD | 1/10/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $120,625.00 | $120,132.58 | $0.00 | $0.00 | $0.00 | $124,789.64 |
| 1467522 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $126,600.00 | $125,896.73 | $0.00 | $0.00 | $0.00 | $130,999.29 |
| 1462796 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $181,600.00 | $181,600.00 | $0.00 | $0.00 | $19.00 | $185,891.29 |
| 1765939 | EPD | 9/25/2007 | 11/15/2007 | 7/1/2007 | 7/1/2007 | * | $183,750.00 | $183,750.00 | $0.00 | $0.00 | $109.50 | $186,063.12 |
| 1763460 | EPD | 9/25/2007 | 11/15/2007 | 5/1/2007 | 6/1/2007 | * | $308,000.00 | $308,000.00 | $0.00 | $0.00 | $25.00 | $314,457.69 |
| 1335528 | EPD | 1/10/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $27,180.00 | $27,104.26 | $0.00 | $0.00 | $4.29 | $28,850.76 |
| 1340799 | EPD | 1/10/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $27,900.00 | $27,781.52 | $0.00 | $0.00 | $7.00 | $29,134.64 |
| 1394886 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $91,200.00 | $91,200.00 | $0.00 | $0.00 | $0.00 | $94,859.12 |
| 1629558 | EPD | 8/21/2007 | 10/5/2007 | 4/1/2007 | 5/1/2007 | * | $258,400.00 | $256,402.45 | $0.00 | $0.00 | $41.50 | $263,536.68 |
| 1398313 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $270,350.00 | $267,562.64 | $0.00 | $1,969.52 | $0.00 | $280,434.50 |
| 1655489 | EPD | 7/25/2007 | 8/28/2007 | 5/1/2007 | 5/1/2007 | * | $336,000.00 | $335,966.25 | $0.00 | $0.00 | $214.81 | $344,461.32 |
| 1368440 | EPD | 1/10/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $504,000.00 | $498,411.15 | $0.00 | $2,071.52 | $108.25 | $520,432.36 |
| 1694095 | EPD | 8/21/2007 | 11/15/2007 | 6/1/2007 | 6/1/2007 | * | $680,000.00 | $680,000.00 | $0.00 | $0.00 | $49.50 | $695,487.27 |
| 1399070 | EPD | 1/10/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $99,200.00 | $98,444.05 | $0.00 | $274.31 | $38.54 | $103,773.14 |
| 1381561 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 11/1/2006 | * | $155,000.00 | $153,726.01 | $0.00 | $2,932.96 | $0.00 | $164,299.95 |
| 1795449 | EPD | 10/22/2007 | 7/18/2007 | 8/1/2007 | 8/1/2007 | * | $435,000.00 | $435,000.00 | $0.00 | $0.00 | $325.50 | $447,182.70 |
| 1694026 | EPD | 9/25/2007 | 11/29/2007 | 3/1/2007 | 5/1/2007 | * | $1,330,000.00 | $1,330,000.00 | $0.00 | $0.00 | $30.00 | $1,370,199.46 |
| 1319135 | EPD | 4/16/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $23,000.00 | $22,946.35 | $0.00 | $0.00 | $253.16 | $25,133.38 |
| 1451681 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $37,800.00 | $37,659.51 | $0.00 | $0.00 | $21.00 | $40,171.87 |
| 1352196 | EPD | 1/10/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $40,000.00 | $39,873.16 | $0.00 | $0.00 | $0.00 | $42,673.23 |
| 1334485 | EPD | 7/16/2007 | 8/28/2007 | 8/1/2006 | 10/1/2006 | * | $50,800.00 | $50,630.12 | $0.00 | $0.00 | $936.50 | $55,148.46 |
| 1766377 | EPD | 9/25/2007 | 11/15/2007 | 7/1/2007 | 7/1/2007 | * | $199,500.00 | $199,400.00 | $0.00 | $0.00 | $69.00 | $206,688.91 |
| 1272449 | EPD | 5/1/2007 | 8/28/2007 | 7/1/2006 | 12/1/2006 | * | $46,000.00 | $45,840.62 | $85.16 | $0.00 | $164.00 | $50,097.26 |
| 1447448 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $59,400.00 | $59,174.07 | $85.27 | $0.00 | $842.50 | $64,412.01 |
| 1763501 | EPD | 10/22/2007 | 11/29/2007 | 7/1/2007 | 7/1/2007 | * | $116,000.00 | $115,835.73 | $124.68 | $0.00 | $135.50 | $121,382.92 |
| 1411890 | EPD | 1/10/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $272,000.00 | $272,000.00 | $269.17 | $0.00 | $135.50 | $287,638.65 |
| 1766224 | EPD | 10/22/2007 | 11/29/2007 | 7/1/2007 | 7/1/2007 | * | $448,000.00 | $448,000.00 | $420.00 | $0.00 | $325.50 | $468,283.45 |
| 1806267 | EPD | 10/22/2007 | 11/29/2007 | 8/1/2007 | 8/1/2007 | * | $504,000.00 | $503,678.62 | $577.13 | $0.00 | $329.25 | $531,395.39 |
| 1795408 | EPD | 10/22/2007 | 7/18/2007 | 8/1/2007 | 8/1/2007 | * | $584,000.00 | $584,000.00 | $527.22 | $0.00 | $325.50 | $607,057.47 |
| 1487982 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $74,000.00 | $73,859.37 | $933.50 | $0.00 | $277.61 | $81,392.78 |
| 1699897 | EPD | 9/25/2007 | 11/15/2007 | 6/1/2007 | 6/1/2007 | * | $447,920.00 | $447,920.00 | $2,776.17 | $521.36 | $283.75 | $468,955.28 |
| 1411479 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $148,000.00 | $148,000.00 | $1,970.76 | $0.00 | $0.00 | $158,439.70 |
| 1655647 | EPD | 8/21/2007 | 10/5/2007 | 5/1/2007 | 5/1/2007 | * | $208,000.00 | $208,000.00 | $2,488.06 | $1,315.60 | $162.50 | $220,476.16 |
| 1655519 | EPD | 8/21/2007 | 10/5/2007 | 5/1/2007 | 5/1/2007 | * | $472,000.00 | $472,000.00 | $5,859.03 | $0.00 | $248.50 | $497,992.29 |
| 1459018 | EPD | 6/8/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $152,000.00 | $151,451.79 | $3,447.11 | $834.10 | $377.78 | $167,139.90 |
| 1655656 | EPD | 7/25/2007 | 8/28/2007 | 5/1/2007 | 5/1/2007 | * | $472,000.00 | $472,000.00 | $7,940.42 | $0.00 | $317.75 | $498,995.71 |
| 1352809 | EPD | 4/16/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $25,000.00 | $24,963.08 | $1,450.98 | $0.00 | $67.00 | $28,779.92 |
| 1388021 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 11/1/2006 | * | $72,175.00 | $72,067.42 | $3,956.20 | $0.00 | $32.50 | $82,137.45 |
| 1440841 | EPD | 4/16/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $196,828.00 | $195,610.22 | $9,474.87 | $0.00 | $1,027.35 | $221,986.74 |
| 1486901 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 1/1/2007 | * | $80,850.00 | $80,806.58 | $5,865.49 | $0.00 | $132.00 | $94,918.51 |
| 1455744 | EPD | 5/10/2007 | 12/1/2006 | 11/1/2006 | 1/1/2007 | * | $97,000.00 | $96,919.45 | $6,723.79 | $0.00 | $96.00 | $112,271.03 |
| 1331225 | EPD | 1/10/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $135,000.00 | $134,798.73 | $8,832.13 | $0.00 | $97.00 | $154,527.95 |
| 1327341 | EPD | 5/10/2007 | 12/1/2006 | 11/1/2006 | 12/1/2006 | * | $147,700.00 | $147,570.25 | $10,048.10 | $0.00 | $309.25 | $170,738.83 |

| LoanId | Rep Breached | Notice Date | Date MS Purchase | First Payment Due on Loan | Date of First Payment Due MS | Total Purchase Price | Purchase Date Balance | Balance Current | Accrued Interest Due Thru 8/6/07 | Escrow Advances thru 8/6/07 | Corporate Advances thru 8/6/07 | Total Repurchase Amount a/o 8/6/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1374767 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | | 149,150.00 | 148,777.34 | 7,263.23 | 4,071.89 | 731.75 | 170,894.48 |
| 1482456 | EPD | 5/15/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 158,000.00 | 157,902.16 | 10,954.46 | 0.00 | 122.00 | 182,878.71 |
| 1484576 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 200,000.00 | 199,876.16 | 13,866.41 | 0.00 | 147.25 | 231,484.86 |
| 1440290 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 201,000.00 | 200,788.83 | 11,479.13 | 0.00 | 296.00 | 227,921.21 |
| 1483255 | EPD | 5/1/2007 | 8/28/2007 | 1/1/2007 | 1/1/2007 | | 66,600.00 | 66,571.89 | 5,317.66 | 0.00 | 362.50 | 78,694.36 |
| 1448473 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 89,000.00 | 88,924.57 | 5,443.54 | 0.00 | 261.50 | 101,052.73 |
| 1399979 | EPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 106,000.00 | 105,967.36 | 9,334.69 | 0.00 | 259.50 | 125,533.73 |
| 1389792 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | | 61,440.00 | 61,369.98 | 4,489.81 | 0.00 | 130.75 | 70,821.72 |
| 1396544 | EPD | 4/16/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | | 68,000.00 | 67,881.76 | 4,042.26 | 440.49 | 6,399.79 | 83,102.40 |
| 1374681 | EPD | 4/16/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | | 64,000.00 | 63,922.19 | 4,150.50 | 0.00 | 6,063.83 | 78,145.89 |
| 1412386 | EPD | 4/16/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | | 305,600.00 | 305,600.00 | 17,216.53 | 3,777.87 | 3,278.74 | 347,360.36 |
| 1465015 | EPD | 6/8/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 371,720.00 | 371,500.54 | 24,474.47 | 1,248.86 | 2,704.25 | 426,983.78 |
| 1070441 | EPD | 5/4/2006 | 3/1/2006 | 4/6/2006 | 4/6/2006 | | 154,000.00 | 154,000.00 | 0.00 | 5,861.61 | 2,676.00 | 182,170.99 |
| 1765963 | FPD | 8/21/2007 | 10/5/2007 | 7/1/2007 | 7/1/2007 | | 172,000.00 | 170,535.35 | 0.00 | 0.00 | 0.00 | 170,910.66 |
| 1476606 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 46,000.00 | 45,866.18 | 0.00 | 0.00 | 2.00 | 47,402.24 |
| 1451937 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | | 161,700.00 | 160,937.62 | 0.00 | 0.00 | 7.00 | 166,092.70 |
| 1335061 | FPD | 1/10/2007 | 8/28/2007 | 9/1/2006 | 9/1/2006 | | 18,400.00 | 18,304.46 | 0.00 | 0.00 | 82.00 | 19,229.05 |
| 1451335 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 25,250.00 | 25,100.09 | 0.00 | 0.00 | 229.76 | 26,383.18 |
| 1437666 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 29,282.01 | 28,982.01 | 0.00 | 0.00 | 371.00 | 30,763.13 |
| 1347387 | FPD | 12/13/2006 | 8/28/2007 | 10/1/2006 | 10/1/2006 | | 119,200.00 | 119,096.39 | 0.00 | 0.00 | 0.00 | 123,304.09 |
| 1795426 | FPD | 9/25/2007 | 11/15/2007 | 8/1/2007 | 8/1/2007 | | 248,000.00 | 246,946.26 | 0.00 | 0.00 | 146.25 | 251,508.63 |
| 1806331 | FPD | 9/25/2007 | 11/15/2007 | 8/1/2007 | 8/1/2007 | | 600,000.00 | 599,840.63 | 0.00 | 0.00 | 284.50 | 611,723.65 |
| 1435329 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 140,000.00 | 139,504.01 | 0.00 | 0.00 | 2.00 | 146,991.06 |
| 1438293 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 33,375.00 | 33,281.35 | 0.00 | 0.00 | 165.00 | 35,606.47 |
| 1229824 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 54,600.00 | 54,450.96 | 0.00 | 0.00 | 312.50 | 58,320.28 |
| 1436647 | FPD | 4/25/2007 | 8/28/2007 | 1/1/2007 | 1/1/2007 | | 165,000.00 | 164,639.53 | 0.00 | 0.00 | 64.21 | 177,272.01 |
| 1699795 | FPD | 8/6/2007 | 8/28/2007 | 6/1/2007 | 6/1/2007 | | 635,000.00 | 635,000.00 | 0.00 | 0.00 | 322.25 | 653,066.61 |
| 1458637 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 77,600.00 | 77,463.22 | 0.00 | 0.00 | 54.38 | 83,731.49 |
| 1350121 | FPD | 1/29/2007 | 8/28/2007 | 9/1/2006 | 9/1/2006 | | 210,000.00 | 209,995.04 | 0.00 | 1,201.58 | 478.00 | 222,555.85 |
| 1787389 | FPD | 9/25/2007 | 11/15/2007 | 8/1/2007 | 8/1/2007 | | 435,200.00 | 435,200.00 | 0.00 | 0.00 | 295.00 | 452,386.13 |
| 1347902 | FPD | 11/9/2006 | 8/28/2007 | 9/1/2006 | 9/1/2006 | | 95,000.00 | 94,604.48 | 152.75 | 0.00 | 124.00 | 101,943.59 |
| 1766604 | FPD | 8/21/2007 | 10/5/2007 | 7/1/2007 | 7/1/2007 | | 520,000.00 | 519,123.77 | 495.69 | 553.74 | 173.32 | 541,917.80 |
| 1372054 | FPD | 1/10/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | | 204,000.00 | 203,900.00 | 1,660.23 | 4,940.31 | 145.00 | 223,316.65 |
| 1766607 | FPD | 8/21/2007 | 10/5/2007 | 7/1/2007 | 7/1/2007 | | 265,905.00 | 265,676.07 | 1,743.50 | 1,019.84 | 195.53 | 293,513.21 |
| 1787354 | FPD | 8/21/2007 | 11/15/2007 | 7/1/2007 | 7/1/2007 | | 313,000.00 | 312,684.07 | 1,937.99 | 463.11 | 9.50 | 327,749.95 |
| 1763281 | FPD | 9/25/2007 | 11/15/2007 | 8/1/2007 | 8/1/2007 | | 408,000.00 | 408,000.00 | 2,677.50 | 0.00 | 413.75 | 427,789.98 |
| 1806327 | FPD | 9/25/2007 | 11/15/2007 | 8/1/2007 | 8/1/2007 | | 1,000,000.00 | 1,000,000.00 | 7,291.67 | 0.00 | 422.37 | 1,052,875.25 |
| 1464993 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 39,725.00 | 39,647.38 | 321.66 | 0.00 | 325.52 | 44,361.11 |
| 1480580 | FPD | 3/7/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 61,348.00 | 61,191.94 | 1,281.07 | 0.00 | 202.00 | 68,559.93 |
| 1487242 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 138,000.00 | 137,872.96 | 5,230.08 | 0.00 | 183.00 | 156,028.40 |
| 1466261 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 33,300.00 | 33,268.99 | 1,559.48 | 0.00 | 95.00 | 37,940.14 |
| 1479541 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 64,000.00 | 63,943.68 | 3,052.87 | 0.00 | 95.00 | 72,798.21 |
| 1472822 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 140,000.00 | 139,861.96 | 5,677.44 | 0.00 | 148.50 | 159,024.38 |
| 1285010 | FPD | 1/10/2007 | 8/28/2007 | 6/1/2006 | 6/1/2006 | | 176,000.00 | 175,710.68 | 8,922.81 | 0.00 | 288.00 | 202,853.57 |
| 1465867 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 240,000.00 | 239,514.24 | 9,459.98 | 0.00 | 5.00 | 267,872.45 |
| 1402453 | FPD | 11/9/2006 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 33,000.00 | 32,864.55 | 1,698.00 | 0.00 | 128.25 | 37,528.26 |
| 1357940 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 70,000.00 | 69,881.02 | 3,873.79 | 0.00 | 492.50 | 79,524.40 |
| 1414845 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | | 102,800.00 | 102,684.36 | 5,968.53 | 0.00 | 126.25 | 118,184.67 |
| 1465978 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 192,000.00 | 191,769.31 | 10,630.55 | 0.00 | 108.25 | 218,824.88 |
| 1463701 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 200,000.00 | 199,733.45 | 9,782.08 | 0.00 | 108.25 | 225,143.05 |
| 1457038 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 200,800.00 | 200,800.00 | 6,700.31 | 6,001.82 | 3,163.99 | 230,434.81 |
| 1396043 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | | 59,900.00 | 59,859.62 | 4,037.41 | 0.00 | 105.19 | 69,162.53 |
| 1332460 | FPD | 12/13/2006 | 8/28/2007 | 10/1/2006 | 10/1/2006 | | 106,500.00 | 106,251.41 | 6,483.92 | 0.00 | 791.25 | 121,587.52 |

## Total Repurchase

| LoanId | Rep Breached | Notice Date | Date MS Purchase | First Payment Due on Loan | Date of First Payment Due MS | Total Purchase Price | Purchase Date Balance | Balance Current | Accrued Interest Due Thru 8/6/07 | Escrow Advances thru 8/6/07 | Corporate Advances thru 8/6/07 | Total Repurchase Amount a/o 8/6/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1472792 | FPD | 3/7/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $129,000.00 | $128,853.20 | $7,118.23 | $0.00 | $97.00 | $145,688.62 |
| 1479900 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $137,500.00 | $137,419.56 | $9,710.03 | $0.00 | $314.25 | $159,707.85 |
| 1490430 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $180,000.00 | $179,911.34 | $13,405.89 | $0.00 | $97.00 | $210,126.35 |
| 1387117 | FPD | 1/10/2007 | 8/28/2007 | 10/1/2006 | 11/1/2006 | * | $357,000.00 | $357,000.00 | $14,905.99 | $4,840.00 | $1,481.50 | $405,121.27 |
| 1447479 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $500,000.00 | $499,296.37 | $28,544.84 | $0.00 | $297.00 | $566,326.70 |
| 1422266 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $47,025.00 | $46,997.50 | $3,859.34 | $0.00 | $217.00 | $55,268.14 |
| 1488124 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $95,000.00 | $94,957.53 | $7,159.73 | $0.00 | $117.00 | $110,189.45 |
| 1170174 | FPD | 4/25/2007 | 8/28/2007 | 4/1/2006 | 11/1/2006 | * | $20,000.00 | $19,958.24 | $1,782.73 | $0.00 | $142.50 | $23,790.62 |
| 1471907 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $35,000.00 | $34,991.29 | $3,006.46 | $0.00 | $210.50 | $41,173.69 |
| 1449731 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $79,600.00 | $79,546.01 | $6,090.24 | $0.00 | $188.75 | $91,957.38 |
| 1446510 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 1/1/2007 | * | $108,150.00 | $108,127.93 | $9,934.25 | $0.00 | $552.00 | $130,566.30 |
| 1478955 | FPD | 5/1/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $109,350.00 | $109,331.20 | $10,602.85 | $0.00 | $599.25 | $135,832.22 |
| 1464045 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $115,548.00 | $115,520.82 | $10,122.11 | $0.00 | $371.00 | $160,226.57 |
| 1495041 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $134,500.00 | $134,471.75 | $12,240.20 | $0.00 | $501.50 | $166,783.01 |
| 1463035 | FPD | 5/1/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $140,000.00 | $139,972.22 | $12,679.02 | $0.00 | $116.25 | $179,340.78 |
| 1452615 | FPD | 5/10/2007 | 12/1/2006 | 11/1/2006 | 12/1/2006 | * | $150,000.00 | $149,953.80 | $15,052.65 | $0.00 | $222.75 | $208,636.08 |
| 1478406 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $180,000.00 | $179,942.48 | $14,083.00 | $0.00 | $519.75 | $234,978.82 |
| 1482122 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $200,000.00 | $199,944.34 | $16,498.88 | $0.00 | $401.50 | $237,499.03 |
| 1470250 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $200,000.00 | $199,955.54 | $17,860.01 | $0.00 | $575.75 | $299,093.89 |
| 1472886 | FPD | 4/25/2007 | 8/28/2007 | 12/1/2006 | 2/1/2006 | * | $258,750.00 | $258,662.65 | $19,603.86 | $0.00 | $686.50 | $356,214.67 |
| 1487630 | FPD | 4/16/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $300,000.00 | $299,946.93 | $28,833.44 | $0.00 | $118.75 | $47,226.65 |
| 1475690 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $39,300.00 | $39,292.42 | $4,127.07 | $0.00 | $300.50 | $123,261.53 |
| 1466583 | FPD | 5/1/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $100,850.00 | $100,850.00 | $14,309.55 | $0.00 | $454.75 | $153,576.78 |
| 1450873 | FPD | 4/16/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $127,000.00 | $127,000.00 | $8,260.42 | $0.00 | $315.75 | $93,026.32 |
| 1437149 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $150,000.00 | $150,000.00 | $17,315.10 | $0.00 | $98.00 | $180,708.71 |

**Total Repurchase**      **$27,512,551.70**

## Net Loss after collateral liquidation

| LoanId | Rep Breached | Notice Date | Date MS Purchase | First Payment Due on Loan | Date of First Payment Due MS | Total Purchase Price | Purchase Date Balance | Balance Current | Accrued Interest Due Thru 8/6/07 | Escrow Advances thru 8/6/07 | Corporate Advances thru 8/6/07 | Total Repurchase Amount a/o 8/6/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1405860 | EPD | 4/16/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $250,000.00 | $250,000.00 | $20,290.80 | $8,887.75 | $524.29 | $299,231.46 |
| 1457555 | EPD | 5/1/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $112,000.00 | $111,872.36 | $7,142.36 | $0.00 | $184.75 | $127,592.05 |
| 1280268 | EPD | 1/10/2007 | 7/1/2006 | 7/1/2006 | 9/1/2006 | * | $118,000.00 | $117,501.35 | $14,742.89 | $0.00 | $140.00 | $129,870.72 |
| 1352212 | EPD | 4/16/2007 | 9/1/2006 | 9/1/2006 | 10/1/2006 | * | $181,125.00 | $180,939.85 | $15,549.52 | $0.00 | $2.00 | $211,175.13 |
| 1470024 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $34,500.00 | $34,500.00 | $3,257.73 | $1,226.51 | $72.35 | $34,156.52 |
| 1431997 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $63,400.00 | $63,400.00 | $4,520.55 | $2,253.93 | $132.96 | $82,004.11 |
| 1176643 | FPD | 4/25/2007 | 8/28/2007 | 4/1/2006 | 12/1/2006 | * | $16,800.00 | $16,776.35 | $1,698.31 | $115.00 | $246.50 | $20,267.44 |
| 1170260 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $26,250.00 | $26,195.18 | $2,339.83 | $0.00 | $29.25 | $31,267.40 |
| 1436394 | FPD | 3/7/2007 | 8/28/2007 | 11/1/2006 | 12/1/2006 | * | $76,000.00 | $75,898.71 | $3,491.87 | $0.00 | $65.25 | $85,981.68 |
| 1439024 | FPD | 4/16/2007 | 8/28/2007 | 11/1/2006 | 11/1/2006 | * | $168,750.00 | $168,708.01 | $16,270.36 | $0.00 | $513.75 | $199,625.85 |
| 1500589 | FPD | 4/25/2007 | 8/28/2007 | 11/1/2006 | 1/1/2007 | * | $200,000.00 | $199,965.63 | $19,392.50 | $0.00 | $193.50 | $239,753.28 |

**Total Net loss after collateral liquidation**      **$1,463,083.32**

*Due to the confidential nature of the Purchase Price, it has not been included in this chart. The Debtor, as a party to the Agreements, already has knowledge of the Purchase Price.

# Schedule B

# Premium Recapture

| LoanId | Notice Date | Date MS Purchase | Date Payoff | Balance Principal Payoff | Premium Recapture Amount |
|---|---|---|---|---|---|
| **Early Pay-off** | | | | | |
| 1635853 | 7/16/2007 | 4/26/2007 | 5/2/2007 | $1,400,000.00 | $12,192.04 |
| 1629451 | 7/16/2007 | 4/19/2007 | 5/9/2007 | $223,814.17 | $3,064.73 |
| 1655500 | 7/16/2007 | 4/26/2007 | 5/9/2007 | $304,088.78 | $2,648.19 |
| 1655681 | 7/16/2007 | 4/26/2007 | 5/11/2007 | $184,000.00 | $1,602.38 |
| 1655526 | 7/16/2007 | 4/26/2007 | 5/23/2007 | $232,000.00 | $2,020.40 |
| 1699912 | 7/16/2007 | 5/23/2007 | 5/24/2007 | $688,000.00 | $5,488.31 |
| 1635870 | 7/16/2007 | 4/26/2007 | 5/29/2007 | $304,000.00 | $2,469.24 |
| 1655683 | 7/16/2007 | 4/26/2007 | 6/11/2007 | $99,822.30 | $869.31 |
| 1655378 | 7/16/2007 | 4/26/2007 | 6/19/2007 | $1,425,000.00 | $12,409.75 |
| 1763702 | 9/19/2007 | 6/26/2007 | 7/6/2007 | $112,500.00 | $896.48 |
| 1694075 | 9/19/2007 | 5/17/2007 | 7/16/2007 | $213,450.00 | $1,644.12 |
| 1741307 | 9/19/2007 | 6/13/2007 | 7/19/2007 | $662,456.30 | $5,387.82 |
| 1741301 | 9/19/2007 | 6/13/2007 | 7/24/2007 | $157,265.50 | $1,279.06 |
| 1763701 | 9/19/2007 | 6/26/2007 | 7/24/2007 | $1,543,750.00 | $12,301.68 |
| 1787260 | 9/19/2007 | 6/28/2007 | 7/26/2007 | $574,000.00 | $4,938.70 |
| 1766145 | 9/19/2007 | 6/28/2007 | 7/27/2007 | $840,000.00 | $9,071.16 |
| 1765999 | 9/19/2007 | 6/27/2007 | 7/30/2007 | $246,000.00 | $1,334.70 |
| 1806837 | 9/19/2007 | 7/26/2007 | 8/9/2007 | $132,000.00 | $1,732.50 |
| 1787449 | 9/19/2007 | 6/28/2007 | 8/22/2007 | $268,000.00 | $2,305.87 |
| 1763618 | 9/19/2007 | 6/26/2007 | 8/24/2007 | $61,924.46 | $493.46 |
| 1806328 | 9/19/2007 | 7/26/2007 | 9/7/2007 | $113,720.00 | $1,492.58 |
| 1763581 | 9/19/2007 | 6/26/2007 | 9/10/2007 | $132,700.91 | $1,057.45 |
| 1766278 | 9/19/2007 | 6/28/2007 | 9/10/2007 | $474,050.00 | $4,078.73 |
| | | | **Total EPO** | | **$90,778.66** |

**Recapture in respect of Breach/Early Payment Default**

| LoanId | Notice Date | Date MS Purchase | Date Payoff | Balance Principal Payoff | Premium Recapture Amount |
|---|---|---|---|---|---|
| 1413828 | 5/10/2007 | 12/1/2006 | | $16,137.69 | $541.44 |
| 1283376 | 5/10/2007 | 12/1/2006 | | $35,801.04 | $1,171.32 |
| 1374060 | 4/25/2007 | 12/1/2006 | | $36,308.61 | $1,252.22 |
| 1453655 | 5/10/2007 | 12/1/2006 | | $57,876.31 | $2,502.47 |
| 1406271 | 5/10/2007 | 12/1/2006 | | $124,537.14 | $5,488.53 |
| 1440282 | 4/25/2007 | 12/1/2006 | | $30,712.37 | $1,430.32 |
| 1427571 | 4/25/2007 | 12/1/2006 | | $31,890.09 | $1,405.45 |
| 1444349 | 4/25/2007 | 12/1/2006 | | $32,882.36 | $1,517.68 |
| 1446743 | 4/25/2007 | 12/1/2006 | | $56,781.31 | $2,455.12 |
| 1413168 | 4/25/2007 | 12/1/2006 | | $75,755.02 | $3,417.54 |
| 1416168 | 5/10/2007 | 12/1/2006 | | $57,803.85 | $2,920.82 |
| 1228136 | 5/10/2007 | 10/12/2006 | | $20,843.13 | $1,446.14 |
| 1420328 | 5/10/2007 | 12/1/2006 | | $53,267.85 | $3,995.57 |
| 1263263 | 4/25/2007 | 12/1/2006 | | $43,856.08 | $3,518.02 |
| 1354222 | 5/10/2007 | 10/12/2006 | | $13,927.47 | $1,367.22 |
| 1440083 | 5/10/2007 | 12/1/2006 | | $58,503.21 | $5,185.58 |
| 1455893 | 5/10/2007 | 12/1/2006 | | $42,950.26 | $3,859.20 |
| 1455689 | 5/10/2007 | 12/1/2006 | | $36,961.39 | $3,253.71 |
| 1449245 | 5/10/2007 | 12/1/2006 | | $59,913.76 | $5,201.38 |
| 1441727 | 4/25/2007 | 12/1/2006 | | $43,959.55 | $4,136.87 |
| 1329115 | 1/10/2007 | 10/12/2006 | | $74,665.14 | $3,547.11 |

| LoanId | Notice Date | Date MS Purchase | Date Payoff | Balance Principal Payoff | Premium Recapture Amount |
|---|---|---|---|---|---|
| 1391249 | 5/1/2007 | 12/1/2006 | | $12,034.68 | $358.65 |
| 1439749 | 5/1/2007 | 12/1/2006 | | $15,322.72 | $542.83 |
| 1021734 | 1/10/2007 | 9/26/2006 | | $20,730.69 | $540.20 |
| 1366860 | 1/10/2007 | 9/26/2006 | | $38,276.58 | $1,093.10 |
| 1478591 | 5/1/2007 | 12/1/2006 | | $45,677.62 | $1,361.22 |
| 1457190 | 5/1/2007 | 12/1/2006 | | $46,074.02 | $1,507.42 |
| 1359451 | 1/10/2007 | 9/26/2006 | | $46,591.49 | $1,291.72 |
| 1307843 | 1/10/2007 | 9/26/2006 | | $47,642.34 | $1,315.90 |
| 1449719 | 5/1/2007 | 12/1/2006 | | $52,327.40 | $1,766.52 |
| 1449676 | 5/1/2007 | 12/1/2006 | | $52,359.50 | $1,767.60 |
| 1469808 | 5/1/2007 | 12/1/2006 | | $69,889.48 | $2,090.03 |
| 1484307 | 5/1/2007 | 12/1/2006 | | $70,073.64 | $2,146.63 |
| 1433779 | 5/1/2007 | 12/1/2006 | | $72,214.04 | $2,407.78 |
| 1395396 | 5/1/2007 | 12/20/2006 | | $97,629.61 | $4,096.84 |
| 1430053 | 4/25/2007 | 12/20/2006 | | $15,748.82 | $649.39 |
| 1321300 | 1/10/2007 | 10/12/2006 | | $19,106.78 | $684.80 |
| 1481014 | 4/25/2007 | 12/20/2006 | | $20,896.39 | $861.65 |
| 1353153 | 1/10/2007 | 9/26/2006 | | $23,670.56 | $730.23 |
| 1487866 | 4/25/2007 | 12/1/2006 | | $52,205.40 | $1,708.02 |
| 1444424 | 4/25/2007 | 12/1/2006 | | $66,700.90 | $2,022.47 |
| 1317702 | 11/9/2006 | 9/26/2006 | | $112,989.59 | $3,132.56 |
| 1339421 | 11/9/2006 | 9/26/2006 | | $121,414.68 | $3,366.14 |
| 1295786 | 1/10/2007 | 10/12/2006 | | $173,064.70 | $6,419.00 |
| 1413303 | 5/1/2007 | 12/1/2006 | | $10,172.25 | $463.15 |
| 1353678 | 1/10/2007 | 10/12/2006 | | $14,940.43 | $706.67 |
| 1459377 | 5/15/2007 | 12/1/2006 | | $19,206.78 | $814.47 |
| 1327753 | 1/10/2007 | 9/26/2006 | | $20,275.27 | $857.81 |
| 1261076 | 5/1/2007 | 12/20/2006 | | $21,640.44 | $1,210.17 |
| 1354127 | 1/10/2007 | 10/12/2006 | | $26,671.17 | $1,322.64 |
| 1363055 | 4/16/2007 | 10/12/2006 | | $27,007.36 | $1,271.79 |
| 1195549 | 1/10/2007 | 9/26/2006 | | $32,992.09 | $1,278.98 |
| 1308153 | 1/10/2007 | 10/12/2006 | | $33,658.24 | $1,577.97 |
| 996011 | 1/10/2007 | 9/26/2006 | | $36,128.09 | $1,204.86 |
| 1469046 | 5/1/2007 | 12/1/2006 | | $36,456.95 | $1,561.15 |
| 1350087 | 1/10/2007 | 9/26/2006 | | $42,709.91 | $1,762.47 |
| 1485323 | 5/1/2007 | 12/20/2006 | | $42,774.66 | $2,276.18 |
| 1329117 | 1/10/2007 | 9/26/2006 | | $44,838.20 | $1,803.59 |
| 1345693 | 1/10/2007 | 9/26/2006 | | $51,086.89 | $1,884.65 |
| 1418487 | 5/1/2007 | 12/1/2006 | | $52,064.35 | $2,251.17 |
| 1316600 | 1/10/2007 | 9/26/2006 | | $52,205.51 | $1,762.78 |
| 1467620 | 5/1/2007 | 12/1/2006 | | $54,406.58 | $2,307.10 |
| 1462021 | 5/1/2007 | 12/20/2006 | | $58,931.58 | $3,160.49 |
| 1364191 | 1/10/2007 | 9/26/2006 | | $62,788.06 | $2,577.94 |
| 973556 | 1/10/2007 | 9/26/2006 | | $69,307.91 | $2,499.08 |
| 1354526 | 1/10/2007 | 9/26/2006 | | $71,547.99 | $2,594.76 |
| 1340473 | 1/10/2007 | 9/26/2006 | | $75,195.34 | $2,758.37 |
| 1351905 | 1/10/2007 | 9/26/2006 | | $75,582.21 | $2,756.81 |
| 1334645 | 1/10/2007 | 9/26/2006 | | $76,044.67 | $2,646.94 |
| 1207090 | 1/10/2007 | 9/26/2006 | | $79,865.59 | $2,946.32 |
| 1353945 | 1/10/2007 | 9/26/2006 | | $81,330.74 | $2,898.71 |
| 1465923 | 5/1/2007 | 12/20/2006 | | $96,288.04 | $5,204.03 |
| 1474099 | 5/1/2007 | 12/1/2006 | | $112,565.43 | $4,702.95 |
| 1328228 | 4/16/2007 | 10/12/2006 | | $119,651.08 | $6,033.23 |
| 1352764 | 1/10/2007 | 9/26/2006 | | $143,165.09 | $5,162.20 |
| 1361857 | 1/10/2007 | 9/26/2006 | | $165,311.15 | $6,132.94 |

| Loanid | Notice Date | Date MS Purchase | Date Payoff | Balance Principal Payoff | Premium Recapture Amount |
|---|---|---|---|---|---|
| 1313882 | 1/10/2007 | 10/12/2006 | | $198,497.49 | $8,768.34 |
| 1461700 | 4/25/2007 | 12/20/2006 | | $13,876.71 | $732.65 |
| 1429074 | 3/7/2007 | 12/1/2006 | | $15,447.28 | $600.34 |
| 1435982 | 4/25/2007 | 12/1/2006 | | $16,941.45 | $721.94 |
| 1166145 | 11/9/2006 | 9/26/2006 | | $24,281.14 | $1,062.70 |
| 1295356 | 12/13/2006 | 9/26/2006 | | $27,356.58 | $1,049.12 |
| 1304716 | 12/13/2006 | 9/26/2006 | | $29,691.13 | $1,175.76 |
| 1361031 | 1/10/2007 | 9/26/2006 | | $29,795.16 | $1,080.55 |
| 995839 | 11/9/2006 | 9/26/2006 | | $30,290.26 | $1,117.44 |
| 1473017 | 4/25/2007 | 12/1/2006 | | $30,775.14 | $1,189.61 |
| 1339164 | 11/9/2006 | 9/26/2006 | | $31,869.39 | $1,235.46 |
| 1442157 | 4/25/2007 | 12/1/2006 | | $34,778.57 | $1,431.31 |
| 1480153 | 4/25/2007 | 12/1/2006 | | $37,370.44 | $1,709.26 |
| 1467232 | 4/25/2007 | 12/1/2006 | | $37,822.00 | $1,564.44 |
| 1478983 | 4/25/2007 | 12/20/2006 | | $39,144.54 | $2,107.48 |
| 1454200 | 4/25/2007 | 12/1/2006 | | $39,296.39 | $1,780.98 |
| 1347755 | 12/13/2006 | 9/26/2006 | | $40,894.74 | $1,440.49 |
| 1232384 | 4/25/2007 | 12/1/2006 | | $43,767.08 | $1,910.64 |
| 1458424 | 4/25/2007 | 12/20/2006 | | $44,099.13 | $2,282.35 |
| 1314782 | 1/10/2007 | 10/12/2006 | | $47,966.69 | $2,148.84 |
| 1459499 | 4/25/2007 | 12/1/2006 | | $49,899.25 | $2,209.53 |
| 1345527 | 12/13/2006 | 9/26/2006 | | $50,209.24 | $1,956.88 |
| 1422853 | 4/25/2007 | 12/1/2006 | | $52,005.11 | $2,216.10 |
| 1390970 | 4/25/2007 | 12/1/2006 | | $57,583.60 | $2,657.76 |
| 1358328 | 11/9/2006 | 9/26/2006 | | $59,809.11 | $2,430.71 |
| 1462175 | 4/25/2007 | 12/20/2006 | | $63,676.64 | $3,587.43 |
| 1362974 | 12/13/2006 | 9/26/2006 | | $75,483.76 | $2,627.42 |
| 1481875 | 4/25/2007 | 12/1/2006 | | $77,267.35 | $3,373.09 |
| 1475584 | 4/25/2007 | 12/1/2006 | | $81,803.19 | $3,707.44 |
| 1481973 | 4/25/2007 | 12/1/2006 | | $84,735.94 | $3,310.75 |
| 1419326 | 4/25/2007 | 12/1/2006 | | $84,940.87 | $3,247.98 |
| 1363021 | 1/10/2007 | 10/12/2006 | | $86,666.71 | $3,810.32 |
| 1395748 | 4/25/2007 | 12/1/2006 | | $90,985.26 | $3,896.12 |
| 1327577 | 3/7/2007 | 12/1/2006 | | $91,052.83 | $3,424.78 |
| 1473838 | 3/7/2007 | 12/1/2006 | | $94,425.54 | $3,610.65 |
| 1331083 | 4/25/2007 | 12/20/2006 | | $134,451.94 | $6,930.52 |
| 1423864 | 4/25/2007 | 12/1/2006 | | $157,041.77 | $6,986.49 |
| 1446204 | 4/25/2007 | 12/1/2006 | | $169,066.27 | $6,746.55 |
| 1420373 | 12/13/2006 | 10/12/2006 | | $298,428.20 | $13,617.84 |
| 1364388 | 1/10/2007 | 10/12/2006 | | $16,270.07 | $989.88 |
| 1358616 | 4/16/2007 | 10/12/2006 | | $45,589.74 | $2,631.23 |
| 1477252 | 5/1/2007 | 12/1/2006 | | $45,914.61 | $2,693.11 |
| 1400522 | 4/25/2007 | 12/20/2006 | | $29,665.90 | $1,720.77 |
| 1168704 | 11/9/2006 | 9/26/2006 | | $34,817.37 | $1,708.79 |
| 1449162 | 3/7/2007 | 12/1/2006 | | $61,038.88 | $3,217.81 |
| 1337163 | 12/13/2006 | 9/26/2006 | | $62,885.61 | $3,361.46 |
| 1477891 | 4/25/2007 | 12/1/2006 | | $64,872.30 | $3,764.53 |
| 1461728 | 4/25/2007 | 12/1/2006 | | $67,236.56 | $3,628.57 |
| 1469281 | 5/1/2007 | 12/1/2006 | | $89,501.75 | $6,070.13 |
| 1320649 | 1/10/2007 | 10/12/2006 | | $159,197.40 | $10,249.43 |
| 1462747 | 5/1/2007 | 12/1/2006 | | $168,093.13 | $9,789.42 |
| 1464167 | 4/25/2007 | 12/1/2006 | | $25,950.67 | $1,792.46 |
| 1458384 | 4/25/2007 | 12/20/2006 | | $51,054.76 | $3,897.43 |
| 1452543 | 3/7/2007 | 12/1/2006 | | $94,761.19 | $5,795.10 |
| 1346796 | 11/9/2006 | 9/26/2006 | | $198,994.90 | $10,740.62 |

| LoanId | Notice Date | Date MS Purchase | Date Payoff | Balance Principal Payoff | Premium Recapture Amount |
|---|---|---|---|---|---|
| 1501930 | 5/1/2007 | 12/20/2006 | | $29,603.56 | $2,373.98 |
| 1333495 | 1/10/2007 | 9/26/2006 | | $33,920.62 | $2,576.40 |
| 1347612 | 1/10/2007 | 9/26/2006 | | $40,899.18 | $3,212.95 |
| 1270750 | 1/10/2007 | 9/26/2006 | | $94,280.93 | $7,406.49 |
| 1344108 | 1/10/2007 | 9/26/2006 | | $179,459.55 | $12,789.37 |
| 1355732 | 1/10/2007 | 10/12/2006 | | $14,771.68 | $1,275.71 |
| 1288665 | 1/10/2007 | 9/26/2006 | | $69,754.32 | $5,080.10 |
| 1425952 | 4/25/2007 | 12/1/2006 | | $104,945.84 | $8,418.47 |
| 1464986 | 5/1/2007 | 12/20/2006 | | $87,171.91 | $7,906.12 |
| 1338726 | 1/10/2007 | 9/26/2006 | | $63,440.22 | $5,082.85 |
| 1329286 | 1/10/2007 | 9/26/2006 | | $74,775.35 | $5,854.71 |
| 1091788 | 1/10/2007 | 9/26/2006 | | $76,159.88 | $4,945.00 |
| 1422481 | 5/1/2007 | 12/20/2006 | | $108,673.47 | $9,526.05 |
| 1263441 | 5/1/2007 | 12/1/2006 | | $41,363.59 | $3,917.70 |
| 1348599 | 1/10/2007 | 9/26/2006 | | $114,236.54 | $9,638.55 |
| 1460908 | 5/1/2007 | 12/1/2006 | | $286,799.44 | $22,284.28 |
| 1362377 | 1/10/2007 | 10/12/2006 | | $14,936.88 | $1,221.25 |
| 1440043 | 4/25/2007 | 12/1/2006 | | $24,852.72 | $2,066.98 |
| 1354206 | 11/9/2006 | 9/26/2006 | | $194,475.25 | $15,226.88 |
| 1334683 | 1/10/2007 | 9/26/2006 | | $82,153.31 | $6,082.95 |
| 1450381 | 4/25/2007 | 12/20/2006 | | $22,466.98 | $2,215.14 |
| 1422818 | 4/25/2007 | 12/20/2006 | | $23,972.54 | $2,407.28 |
| 1473366 | 4/25/2007 | 12/20/2006 | | $84,743.53 | $7,943.34 |
| 1420366 | 1/10/2007 | 10/12/2006 | | $205,619.59 | $18,060.95 |
| 1489234 | 5/1/2007 | 12/20/2006 | | $84,927.39 | $8,012.18 |
| 1275604 | 3/9/2007 & 4/25 | 12/1/2006 | | $81,090.57 | $3,539.99 |
| 1279764 | 12/11/2006 | 6/23/2006 | | $383,286.67 | $8,566.98 |
| 1273584 | 12/11/2006 | 6/23/2006 | | $90,486.20 | $2,022.49 |
| 1289828 | 12/11/2006 | 6/23/2006 | | $118,300.00 | $2,644.17 |
| 1280830 | 12/11/2006 | 6/23/2006 | | $132,012.36 | $2,950.66 |
| 1240061 | 12/11/2006 | 6/23/2006 | | $280,700.00 | $6,274.03 |
| 1057632 | 12/11/2006 | 6/23/2006 | | $80,826.47 | $2,337.01 |
| 1248189 | 2/15/2007 | 6/23/2006 | | $125,800.00 | $3,611.16 |
| 1363071 | 2/15/2007 | 9/8/2006 | | $55,990.61 | $1,612.15 |
| 1345412 | 2/15/2007 | 9/8/2006 | | $112,736.30 | $3,281.28 |
| 1179251 | 2/15/2007 | 9/8/2006 | | $171,600.00 | $4,797.93 |
| 1383841 | 2/15/2007 | 9/8/2006 | | $257,368.69 | $8,411.65 |
| 1368529 | 2/15/2007 | 9/8/2006 | | $49,117.65 | $1,767.29 |
| 1350841 | 2/15/2007 | 9/8/2006 | | $55,231.93 | $2,190.63 |
| 1364361 | 2/15/2007 | 9/8/2006 | | $98,050.14 | $3,548.35 |
| 1352704 | 2/15/2007 | 9/8/2006 | | $136,007.21 | $4,893.65 |
| 1361423 | 2/15/2007 | 9/8/2006 | | $264,500.00 | $9,406.71 |
| 1337096 | 2/15/2007 | 9/8/2006 | | $317,088.38 | $12,774.68 |
| 1365741 | 2/15/2007 | 9/8/2006 | | $327,088.19 | $11,632.60 |
| 1373246 | 2/15/2007 | 9/8/2006 | | $392,000.00 | $15,466.01 |
| 1384341 | 2/15/2007 | 9/8/2006 | | $117,642.53 | $4,870.10 |
| 1363741 | 2/15/2007 | 9/8/2006 | | $262,204.66 | $10,854.60 |
| 1358377 | 2/15/2007 | 9/8/2006 | | $449,795.83 | $28,440.90 |
| 1364982 | 2/15/2007 | 9/8/2006 | | $82,250.00 | $5,432.72 |
| 1365132 | 2/15/2007 | 9/8/2006 | | $115,454.88 | $7,451.43 |
| 1356314 | 2/15/2007 | 9/8/2006 | | $235,546.52 | $13,627.73 |
| 1354372 | 2/15/2007 | 9/8/2006 | | $238,960.39 | $16,364.45 |
| 1387292 | 2/15/2007 | 9/8/2006 | | $126,483.92 | $7,778.97 |
| 1157606 | 2/15/2007 | 9/8/2006 | | $371,000.00 | $21,285.07 |
| 1373537 | 2/15/2007 | 9/8/2006 | | $225,738.37 | $9,086.89 |

| LoanId | Notice Date | Date MS Purchase | Date Payoff | Balance Principal Payoff | Premium Recapture Amount |
|---|---|---|---|---|---|
| 1375359 | 2/15/2007 | 9/8/2006 | | $577,500.00 | $38,240.32 |
| 1413410 | 1/10/2007 | 10/12/2006 | | $165,907.60 | $4,582.68 |
| 1385740 | 1/10/2007 | 10/12/2006 | | $183,583.46 | $5,051.80 |
| 1404375 | 1/10/2007 | 10/12/2006 | | $440,000.00 | $12,382.79 |
| 1380784 | 1/10/2007 | 10/12/2006 | | $54,789.80 | $1,798.76 |
| 1370584 | 1/10/2007 | 9/28/2006 | | $58,627.37 | $2,938.67 |
| 1409734 | 1/10/2007 | 10/12/2006 | | $68,000.00 | $2,402.45 |
| 1409877 | 1/10/2007 | 10/12/2006 | | $68,000.00 | $2,402.45 |
| 1391709 | 2/15/2007 | 9/28/2006 | | $113,564.81 | $4,289.17 |
| 1394583 | 2/15/2007 | 10/12/2006 | | $170,784.23 | $5,962.68 |
| 1406247 | 2/15/2007 | 9/28/2006 | | $214,899.99 | $10,816.55 |
| 1404032 | 1/10/2007 | 10/12/2006 | | $349,998.51 | $11,782.19 |
| 1403115 | 2/15/2007 | 10/12/2006 | | $359,995.02 | $12,411.71 |
| 1325151 | 1/10/2007 | 10/12/2006 | | $23,182.07 | $828.69 |
| 1360939 | 1/10/2007 | 10/12/2006 | | $52,332.24 | $1,892.52 |
| 1406724 | 1/10/2007 | 10/12/2006 | | $142,245.80 | $4,818.13 |
| 1368870 | 1/10/2007 | 10/12/2006 | | $156,000.00 | $5,121.51 |
| 1409761 | 1/10/2007 | 10/12/2006 | | $159,920.00 | $5,516.74 |
| 1416287 | 1/10/2007 | 10/12/2006 | | $224,000.00 | $7,307.30 |
| 1404660 | 1/10/2007 | 10/12/2006 | | $238,685.34 | $7,686.91 |
| 1402027 | 1/10/2007 | 10/12/2006 | | $251,650.45 | $8,681.16 |
| 1392047 | 2/15/2007 | 10/12/2006 | | $44,000.00 | $1,834.11 |
| 1368550 | 2/15/2007 | 9/28/2006 | | $59,564.91 | $2,870.14 |
| 1374332 | 1/10/2007 | 10/12/2006 | | $72,265.83 | $2,967.19 |
| 1411719 | 1/10/2007 | 10/12/2006 | | $135,390.08 | $5,516.72 |
| 1400702 | 2/15/2007 | 10/12/2006 | | $31,121.92 | $1,508.02 |
| 1356255 | 2/15/2007 | 10/12/2006 | | $144,400.63 | $7,357.96 |
| 1397719 | 2/15/2007 | 10/12/2006 | | $195,919.99 | $10,309.68 |
| 1410932 | 1/10/2007 | 10/12/2006 | | $215,900.00 | $11,361.06 |
| 1384516 | 2/15/2007 | 10/12/2006 | | $205,200.00 | $11,742.07 |
| 1353849 | 5/15/2007 | 10/12/2006 | | $35,686.49 | $2,280.61 |
| 1394548 | 5/15/2007 | 10/12/2006 | | $151,199.84 | $8,927.67 |
| 1409504 | 1/10/2007 | 10/12/2006 | | $274,311.07 | $16,696.87 |
| 1414104 | 5/15/2007 | 10/12/2006 | | $254,961.27 | $15,674.01 |
| 1412206 | 5/10/2007 | 10/12/2006 | | $166,320.00 | $9,517.26 |
| 1355085 | 5/10/2007 | 10/12/2006 | | $166,400.00 | $10,431.84 |
| 1416120 | 5/15/2007 | 10/12/2006 | | $232,750.00 | $13,884.27 |
| 1409526 | 1/10/2007 | 10/12/2006 | | $73,976.05 | $2,081.89 |
| 1383915 | 12/13/2006 | 10/12/2006 | | $144,320.00 | $3,881.16 |
| 1409112 | 1/10/2007 | 10/12/2006 | | $87,999.59 | $3,017.38 |
| 1400581 | 1/10/2007 | 10/12/2006 | | $107,545.12 | $3,687.57 |
| 1414289 | 1/10/2007 | 10/12/2006 | | $192,564.26 | $6,562.63 |
| 1383641 | 1/10/2007 | 10/12/2006 | | $241,360.00 | $8,426.73 |
| 1414836 | 1/10/2007 | 10/12/2006 | | $318,250.00 | $10,713.42 |
| 1410886 | 12/13/2006 | 10/12/2006 | | $624,000.00 | $21,136.05 |
| 1335429 | 1/10/2007 | 10/12/2006 | | $121,228.33 | $5,053.33 |
| 1414245 | 1/10/2007 | 10/12/2006 | | $466,765.91 | $18,581.66 |
| 1376109 | 1/10/2007 | 10/12/2006 | | $263,991.17 | $10,426.83 |
| 1417975 | 1/10/2007 | 10/12/2006 | | $178,400.00 | $9,294.83 |
| 1418996 | 1/10/2007 | 10/12/2006 | | $415,994.99 | $22,107.10 |
| 1421675 | 1/10/2007 | 10/12/2006 | | $203,955.36 | $11,794.79 |
| 1387902 | 12/13/2006 | 10/12/2006 | | $139,967.81 | $8,944.86 |
| 1467621 | 4/16/2007 | 10/30/2006 | | $156,000.00 | $10,696.79 |
| 1466659 | 4/25/2007 | 12/5/2006 | | $460,000.00 | $10,729.21 |
| 1439280 | 5/15/2007 | 12/5/2006 | | $534,824.05 | $24,968.56 |

| LoanId | Notice Date | Date MS Purchase | Date Payoff | Balance Principal Payoff | Premium Recapture Amount |
|---|---|---|---|---|---|
| 1309838 | 1/10/2007 | 9/8/2006 | | $199,080.00 | $4,405.46 |
| 1418396 | 1/10/2007 | 9/28/2006 | | $47,234.01 | $2,012.50 |
| 1387617 | 1/10/2007 | 9/28/2006 | | $110,000.00 | $4,663.86 |
| 1387620 | 1/10/2007 | 9/28/2006 | | $110,000.00 | $4,663.86 |
| 1387622 | 1/10/2007 | 9/28/2006 | | $110,000.00 | $4,663.86 |
| 1397575 | 1/10/2007 | 9/28/2006 | | $180,000.00 | $11,250.52 |
| 1351134 | 1/10/2007 | 9/28/2006 | | $126,508.90 | $4,533.60 |
| 1379522 | 1/10/2007 | 9/8/2006 | | $173,600.00 | $4,800.03 |
| 1369617 | 12/13/2006 | 9/8/2006 | | $245,700.00 | $6,819.18 |
| 1360875 | 12/13/2006 | 9/8/2006 | | $387,691.00 | $10,840.78 |
| 1403447 | 1/10/2007 | 9/28/2006 | | $649,996.96 | $23,784.39 |
| 1364959 | 1/10/2007 | 9/28/2006 | | $236,756.02 | $17,239.48 |
| 1614203 | 6/22/2007 | 3/14/2007 | | $53,865.62 | $3,087.92 |
| 1614201 | 6/22/2007 | 3/14/2007 | | $487,953.33 | $27,972.60 |
| 1614206 | 6/22/2007 | 3/14/2007 | | $456,000.00 | $25,309.58 |
| 1614195 | 7/9/2007 | 3/14/2007 | | $999,999.00 | $59,149.25 |
| 1614207 | 6/22/2007 | 3/14/2007 | | $751,402.54 | $42,618.61 |
| 1463702 | 5/10/2007 | 12/1/2006 | | $63,949.79 | $5,707.21 |
| 1464848 | 5/10/2007 | 12/1/2006 | | $82,042.69 | $6,823.38 |
| 1146804 | 3/9/2007 | 12/20/2006 | | $484,435.25 | $22,548.74 |
| 1259934 | 7/24/2007 | 6/23/2006 | | $328,000.00 | $20,286.11 |

| Total EPD-FPD/Breach | $1,574,910.93 |
|---|---|

# Schedule C

## Loan Level Representations and Warranties

| 1 | Rep Breached | Notice Date | Date MS Purchase | First Payment Due on Loan | Date of First Payment Due MS | Total Purchase Price | Purchase Date Balance | Balance Current | Accrued Interest Due thru 8/6/07 | Escrow Advances thru 8/6/07 | Corporate Advances thru 8/6/07 | Total Repurchase Amount a/o 8/6/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Repurchase** | | | | | | | | | | | | |
| 1348812 | Validity of mortgage documents, acceptable investment, underwriting methodology | 7/31/2007 | 8/28/2007 | 8/1/2006 | 10/1/2006 | * | $52,470.00 | $52,400.94 | $3,299.62 | $0.00 | $314.00 | $60,690.55 |
| 1457573 | Validity of mortgage documents, acceptable investment, underwriting methodology | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $94,000.00 | $93,907.58 | $5,155.13 | $0.00 | $122.00 | $107,109.00 |
| 1478429 | Validity of mortgage documents, acceptable investment, underwriting methodology | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $101,750.00 | $101,670.18 | $6,019.02 | $0.00 | $303.00 | $117,065.75 |
| 1470299 | Validity of mortgage documents, acceptable investment, underwriting methodology | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $110,000.00 | $109,913.72 | $6,270.43 | $0.00 | $470.25 | $126,198.50 |
| 1471700 | Validity of mortgage documents, acceptable investment, underwriting methodology | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $199,800.00 | $199,518.85 | $9,556.81 | $0.00 | $132.00 | $224,467.78 |
| 1355527 | Validity of mortgage documents, acceptable investment, underwriting methodology/Occupancy | 7/25/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $77,000.00 | $76,944.56 | $7,396.56 | $0.00 | $261.75 | $91,281.99 |
| 1482138 | Validity of mortgage documents, acceptable investment, underwriting methodology/Occupancy | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $158,000.00 | $157,831.08 | $8,409.44 | $0.00 | $115.00 | $180,861.94 |
| 1121278 | Delivery of the mortgage documents; Validity of mortgage documents, acceptable investment, underwriting methodology | 11/16/2007 | 2/7/2006 | 3/1/2006 | 3/1/2006 | * | $367,500.00 | $364,590.91 | $18,919.48 | 2324.06 | $1,848.98 | $402,884.94 |
| 1425810 | Validity of mortgage documents, acceptable investment, underwriting methodology | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $35,000.00 | $34,984.63 | $2,696.73 | $0.00 | $97.00 | $41,113.15 |
| 1490008 | Validity of mortgage documents, acceptable investment, underwriting methodology; Occupancy | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $82,000.00 | $81,914.75 | $4,408.61 | $0.00 | $197.00 | $93,333.09 |
| 1352715 | Occupancy | 7/31/2007 | 8/28/2007 | 9/1/2006 | 10/1/2006 | * | $83,250.00 | $83,213.82 | $9,341.33 | $0.00 | $438.00 | $99,862.51 |
| 1393948 | Occupancy | 7/31/2007 | 8/28/2007 | 10/1/2006 | 2/1/2007 | * | $137,610.00 | $136,472.91 | $260.63 | $0.00 | $145.00 | $150,334.09 |
| 1464082 | Occupancy | 7/25/2007 | 8/28/2007 | 12/1/2006 | 12/1/2006 | * | $177,800.00 | $177,580.37 | $9,467.87 | $0.00 | $1,278.25 | $201,261.23 |
| **Total Repurchase** | | | | | | | | | | | | **$1,896,462.52** |
| | | | | | | | | | | | | |
| **Net Loss after collateral liquidation** | | | | | | | | | | | | |
| 1333181 | Occupancy | 7/31/2007 | 8/28/2007 | 9/1/2006 | 11/1/2006 | * | $156,095.00 | $156,000.41 | $15,792.33 | $0.00 | $314.50 | $187,516.06 |
| 1421638 | Occupancy | 7/25/2007 | 8/28/2007 | 10/1/2006 | 10/1/2006 | * | $238,400.00 | $238,400.00 | $17,085.33 | $8,475.36 | $499.96 | $284,676.62 |
| **Total Net loss after collateral liquidation** | | | | | | | | | | | | **$472,192.68** |

* Due to the confidential nature of the Purchase Price, it has not been included in this chart. The Debtor, as a party to the Agreements, already has knowledge of the Purchase Price.

## Exhibit G

**Excerpts from aaiPharma Hearing**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                          )    Case No. 05-11341 through
                                                )    05-11345 and 05-11347
AAIPHARMA, INC., et al.,                        )    through 05-11350
                                                )    Chapter 11
                                                )
                                                )    Courtroom No. 2
                                                )    824 Market Street
                               Debtors.         )    Wilmington, Delaware 19801
                                                )
                                                )    January 18, 2006
                                                )    10:02 A.M.

TRANSCRIPT OF CONFIRMATION HEARING
BEFORE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:            Richards Layton & Finger, PA
                            By:  MARK COLLINS, ESQ.
                                 KAREN McKINLEY, ESQ.
                            One Rodney Square, P.O. Box 551
                            Wilmington, Delaware 19899

                            Fried Frank Harris Shriver & Jacobson
                            By:  ARIK PREIS, ESQ.
                                 GARY KAPLAN, ESQ.
                                 BONNIE STEINGART, ESQ.
                            One New York Plaza
                            New York, New York 10004


ECRO:                       Sherry Scaruzzi


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

## TRANSCRIPTS PLUS
### 435 Riverview Circle, New Hope, Pennsylvania 18938
e-mail courttranscripts@aol.com

215-862-1115     (FAX) 215-862-6639

1   confirmation order, Your Honor.

2           THE COURT:  I'm not sure I could find the

3   confirmation order.  Somebody have a copy?

4           MR. KAPLAN:  Your Honor, I have -- these have some

5   slight modifications from what was last filed.  I'll hand up a

6   cleaner black line to that, I don't want to confuse things.

7                         (Pause)

8           THE COURT:  What'd you say, 23?

9           MR. HARRINGTON:  Yes, Your Honor.

10                        (Pause)

11          THE COURT:  Well, let me hear the debtors' position

12  on this.  But I'm inclined to agree that I don't see how you

13  can give prospective releases.  Or stated differently, releases

14  with respect to prospective conduct.

15          MR. KAPLAN:  Your Honor, frankly, I don't view it as

16  a prospective release.  What it says is they won't incur any

17  liability that's taken in accordance with the bylaws or the LLC

18  agreement, or the plan.  So, if they -- as long as they follow

19  the plan, the bylaws and the LLC agreement, they're okay.

20          And then we have a proviso that if there's an act or

21  omission that's, you know, if they're negligent or misconduct,

22  that there's no -- no release to be clear.

23          Well, the reason this provision is in there is

24  because, you know, the Creditors' Committee has to find

25  somebody to take on a very thankless task.  They have the --

1  you know, something they negotiated for was to be able to have

2  the right to pursue litigation, to make the determination

3  whether or not to pursue litigation, to make the distributions

4  and to object to claims.  And it's a thankless task.  And

5  they've got to get somebody in there who says, you know, unlike

6  during a Chapter 11 case where you know at the end of the day

7  you have exculpation -- you generally have exculpation, that,

8  you know, as long as you follow the rules, you're going to be

9  okay.  And they needed to find somebody to say, please take

10 over this role, sit on the plan committee -- on what,

11 effectively, is the new plan committee, decide.  You make the

12 decision whether or not this litigation is worth pursuing.

13 Whether to take some of the $4 million and to put that towards

14 the litigation or whether to decide, you know what, litigation

15 is not worth pursuing, let's put the money back.

16         And if you're going to give -- excuse me.  You're

17 going to give some creditors who are getting under the plan

18 roughly ten cents and say, you know, please sit on this

19 committee and make that decision.  They need to know that when

20 making that decision, as long as they act in good faith, that

21 people aren't going to be able to sue them later and say, for

22 whatever reason, whether it be a disgruntled creditor, somebody

23 who's unhappy that they're seeking to subordinate their claim,

24 who sort of has a pressure point on them.  So, we're not

25 releasing prospective action.

1        What we're trying to lay out is these are the

2  guidelines, if you follow the plan, you follow the bylaws,

3  you're okay.  But this shouldn't be read to release you if, you

4  know, you do something that's found to be gross misconduct,

5  willful misconduct or gross negligence, then you're going to be

6  on the hook.

7        And that's all that this provision was intending to

8  do.  Because otherwise, you know, the Creditors' Committee was

9  telling us we were faced with the situation where we would have

10 no plan committee, we'd have no plan administrator and we'd

11 have nobody who'd want to fill any of these roles.

12       I don't know if the Committee wants to anything on

13 that.

14       MR. GWYNNE:  Good morning, Your Honor.  Kurt Gwynne

15 from Reed Smith on behalf of the Creditors' Committee.

16       What debtors' counsel said is exactly right.  And I

17 want to point out that the plan administration committee

18 members would serve in that role with no compensation.  The

19 services that they perform are consistent with those that the

20 Creditors' Committee performs during a case.  And in the Brunos

21 case, which -- in the 3rd Circuit was In Re: PWS Holdings, the

22 3rd Circuit said that the release/exculpation provision at

23 issue in that case was okay because it did nothing more than

24 set -- than parrot or set the applicable standard of care,

25 which was gross negligence or willful misconduct, for somebody

1  serving in that type of fiduciary capacity.

2           That is the exact same situation with respect to the

3  plan committee members, the litigation manager and the plan

4  administrator.  They're serving in a fiduciary capacity.  The

5  plan committee members, at least, would receive no compensation

6  for doing so, just reimbursement of expenses.  And all this

7  provision does is set forth the applicable standard of care.

8           For that reason, it is just as acceptable as was the

9  provision in the PWS case.  This is also something, Your Honor,

10 that is in every single plan that I have ever seen.  And I've

11 never heard anybody -- the Trustee or any other party in

12 interest, object to an exculpation clause.  And that's really

13 what this is.  And the release and exculpation are related

14 concepts.  A release is when you forgive somebody for something

15 that they have already done.  You release them for commission

16 of some act in the past.

17          Exculpation is forward looking.  And what it does is

18 set the applicable standard of care.  That's all that this

19 provision does.  It's done in every plan.  And, Your Honor, I

20 think if you don't approve it, we're not going to have a plan

21 administration committee because a creditor would, frankly,

22 have to be a fool to serve on a committee where they could be

23 sued for making decisions in a fiduciary capacity.

24          THE COURT:  Okay.  I'm going to leave it in.  But,

25 quite frankly, I don't think you need it.  Because as a legal

1  proposition, they would not have liability for action taken in

2  accordance with particular documents.

3           MR. GWYNNE:  And that's, Your Honor -- it's, in

4  essence, similar to what the 3rd Circuit said in PWS because it

5  sets forth the applicable standard of care.  It is acceptable.

6  But having it in there, Your Honor, certainly gives the

7  prospective plan committee members much more comfort when you

8  tell them there is language in the confirmation order, as

9  opposed to just telling them that's my view of what the

10 standard of care is.

11          THE COURT:  What do the relevant documents -- the

12 bylaws, the litigation agreement, say as to how the decision is

13 made, whether to pursue the litigation or not?

14          MR. GWYNNE:  The decision on whether to pursue the

15 litigation is to be made by the plan administration committee,

16 which is a three-member committee compromised of

17 AmerisourceBergen, Novartis Pharmaceuticals and TMP Worldwide.

18 They're making that decision, Your Honor, in consultation with

19 counsel, the -- and those three members, by the way, Your

20 Honor, of the plan administration committee are members of the

21 Creditors' Committee now.  So, we have some continuity.

22          We discussed that issue with them.  We're also

23 discussing it with the litigation manager who is Morton

24 Branzburg from Klehr Harrison, who's court today, Your Honor.

25 And we've had some discussions with him about that litigation.

1  It is very, very complex IP litigation dealing with chemical

2  properties of omeprazole, and it's difficult, frankly, to

3  understand for me as a bankruptcy lawyer in some context.  But

4  we have IP people at our firm that have looked at it.  We've

5  had discussions with the debtors' IP attorneys regarding that

6  litigation.  And all that information that we're gathering is

7  shared with the Committee members.  And then they will make the

8  decision whether to spend some or all of the four -- $4.2

9  million that could go to the unsecured creditors under the

10 plan.  Spend some of that money on the litigation or distribute

11 it.

12              THE COURT:  Okay.

13              MR. GWYNNE:  Your Honor, with respect to the

14 Trustee's other objection regarding the release of the

15 Committee and 15.01, talking about the Creditors' Committee now

16 as opposed to prospective plan administration committee.  I

17 really have a very similar response.  In that in PWS, the 3rd

18 Circuit said, if you're talking about a fiduciary of the

19 estate, Creditors' Committee, member, debtor in possession, if

20 you're talking about that fiduciary or their professionals,

21 that this type of provision is okay.  The 3rd Circuit has

22 already held that.

23              Now, the Trustee says there's no reason to release

24 the Creditors' Committee members from things that happened pre-

25 petition.  And, frankly, Your Honor, well, yes, that's true.