# Attorney General Martha Coakley



Home >

**MARTHA COAKLEY**
ATTORNEY GENERAL

**Contact:**
Emily LaGrassa
Amie Breton
(617) 727-2543

**October 05, 2007 - For immediate release:**

### ATTORNEY GENERAL MARTHA COAKLEY FILES LAWSUIT AGAINST NATIONAL MORTGAGE LENDER-FREMONT INVESTMENT AND LOAN

### First Case Under 2004 Predatory Home Practices Act

**BOSTON** - Today, Attorney General Martha Coakley filed a lawsuit in Suffolk Superior Court against California-based Fremont General and Fremont Investment and Loan ("Fremont"), a subprime lender that originated thousands of loans in Massachusetts.  The complaint alleges that Fremont engaged in unfair and deceptive conduct on a broad scale in connection with selling mortgage loans to Massachusetts consumers, by:

- Selling exceedingly risky loan products that Fremont knew or should have known were designed to fail, including loan products that combined 100% financing, no income documentation ("stated income" loans), and adjustable rate mortgages that caused large increases in monthly payments after two or three years;

- Selling those loans through third party mortgage brokers and providing financial incentives to those brokers to sell high cost products, but failing to meaningfully monitor or control the unfair and deceptive conduct used by brokers to sell Fremont loans.  Such conduct includes the rampant abuse of stated income loans and misleading borrowers about the loans offered and their ability to refinance to lower cost products; and

- Engaging in unfair or deceptive loan servicing conduct, which led to unnecessary foreclosures for Massachusetts borrowers.

The complaint further alleges that Fremont's loan selling conduct has significantly contributed to the foreclosure crisis in Massachusetts.  The Attorney General's Office is seeking civil penalties, restitution and an injunction, which would prohibit Fremont from selling or transferring any Massachusetts mortgages and from foreclosing on any Massachusetts loan without giving the Attorney General's Office a 90-day opportunity to review the loan transaction and object to the foreclosure.

"Unfair and deceptive lending practices by companies like Fremont have substantially contributed to the escalating foreclosure crisis.  Fremont's behavior not only continues to harm Fremontborrowers, but also the Massachusetts citizens who suffer from the secondary impacts of foreclosure—the potentially destabilizing impact on our neighborhoods," said Attorney General Coakley.

In March, 2007, Fremont stopped making residential loans in Massachusetts, after agreeing to a cease and desist order with the FDIC.  Fremont, however, remains as servicer on many of the loans it originated but has since sold.  In that capacity, Fremont continues to control collection of, and

OBC 03341

foreclosures regarding, the loans it originated. Since 2004, Fremont sold roughly 15,000 mortgage loans to Massachusetts borrowers.

Fremont marketed loan products to Massachusetts borrowers with a variety of risky features, which combined to pose an exceedingly high risk that the loans, predictably, would result in foreclosure. These risky features included:

- 100% financing, typically through an arrangement that provided one loan for 80% and a second, "piggyback loan" for 20% of the purchase price.
- The use of Adjustable Rate Mortgages (ARM) consisting of a lower fixed interest rate for a short-term time period, followed by an increase to a higher, adjustable rate which would then increase every six months for the remaining years of the loan. These loans were known as 2/28 loans (2 year fixed/28 year adjustable rate.)
- Borrowers were qualified for ARM loans based on only the initial "teaser rate" without regard to their ability to pay beyond that teaser rate. Fremont brokers often promised borrowers they could simply refinance before the ARM adjustment, without disclosing that such refinancing was entirely dependent on continued price appreciation.
- "Stated Income," "No-Doc" or "Low-Doc" loans where the borrowers need only to state their income, without providing any supporting documentation to obtain a loan.
- Substantial prepayment penalties that sometimes lasted beyond the introductory fixed rate period, thereby penalizing borrowers who refinance their loans once their introductory rate adjusts.

The complaint further alleges that Fremont encouraged unfair and deceptive conduct by rewarding mortgage brokers who sell risky loan products. Specifically, Fremont paid mortgage brokers compensation to place borrowers in loans with interest rates higher than those for which they qualified.

In July 2007, the Attorney General's Office announced a preliminary agreement with Fremont to limit Fremont's ability to commence foreclosures on Massachusetts loans. Under that agreement, the Attorney General's Office was provided a 90-day review period to object to any foreclosure it determined may have been tainted by unfair or deceptive lending practices. In the lawsuit filed today, the Attorney General's Office asked for a court order to similarly restrict Fremont's ability to foreclose on borrowers. A hearing on the Preliminary Injunction has been scheduled for October 11, 2007 at 2:00 p.m. at Suffolk Superior Court.

This is the first enforcement action the Attorney General has brought against a mortgage lender under the Predatory Home Practices Act of 2004. The Legislature enacted the law to protect homeowners from predatory lending practices by mortgage lenders. Specifically, the law aims to protect those with less than ideal credit who may be taken advantage of and charged interest rates above those set by the U.S. Treasury.

This lawsuit is part of Attorney General Coakley's multifaceted initiative to combat the foreclosure crisis and predatory lending. The Attorney General's Office recently concluded a series of hearings throughout the state on amendments her office proposed to current mortgage lender and mortgage broker regulations to address unfair and deceptive conduct in the mortgage industry. The proposed amendments are aimed at curbing practices in the mortgage industry which have contributed to the current foreclosure rescue crisis in Massachusetts, including the conduct alleged in this case.

Specifically, the proposed regulations would:

- Prohibit mortgage brokers or lenders from making a loan if they do not have a reasonable belief that the borrower is able to repay the loan.
- Restrict the abuse of no-documentation or "stated income" loans by requiring that the mortgage broker or lender disclose how the interest rates or other charges will increase under a "no-doc" loan, and obtain the borrower's signed statement of income in order to process those types of loans.

OBC 03342

- Prohibit mortgage brokers from arranging or processing loans that are not in the borrower's interest, and prohibit brokers from brokering loans if the broker's financial interest conflicts with the borrower's interest.
- Prohibit mortgage lenders from steering borrowers to loan products that are more costly than those that the borrower qualifies for, and prohibits lenders from discriminating between similarly qualified borrowers

After conducting a thorough review of all the testimony gathered and the hearings and through written submissions, the Attorney General's Office anticipates that the regulations will be promulgated by mid-October. The Attorney General's Office will also issue a report on the information and feedback gathered at the hearings.

Assistant Attorney Generals Christopher Barry-Smith, Jean Healey and Margret Cooke of Attorney General Martha Coakley's Consumer Protection Division are handling this matter with assistance from Financial Investigator Christine Murphy and Paralegal Chris Garcia-Rivera.

##########

© 2009 Commonwealth of Massachusetts

OBC 03343