UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE[1]

| | |
|---|---|
| In re ) | CASE NO. 07-11049 (CSS) |
| ) | |
| AMERICAN HOME MORTGAGE ) | Chapter 11 |
| ACCEPTANCE, INC. ) | |
| ) | PROOF OF CLAIM |
| Debtor. ) | |
| ) | [Notice hereof filed concurrently in Case |
| ) | No. 07-11047] |

**FILED / RECEIVED**

**JAN 2 1 2008**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

ELVIN VALENZUELA and PHYLLIS VALENZUELA, by and through their undersigned

counsel of record, on behalf of themselves and all other members of the general public similarly

situated, submit this proof of claim.

1.    The basis of this claim is as described in Exhibit "A" hereto, and is evidenced, in part, by

loan-related documents, true and correct copies of which are attached hereto as Exhibit

"B" and incorporated herein by this reference.

2.    No judgment has been entered with respect to this claim.

3.    The total amount of this claim at the time this case was filed is not known at this time, but

estimated to be not less than $50,000 individually, and not less than $100 million in the

---

[1]    This Case is related to and jointly administered with the following: American Home
    Mortgage Holdings, Inc. 07-11047; American Home Mortgage Investment Corp. 7-
    11048; American Home Mortgage Servicing, Inc. 07-11050; American Home
    Mortgage Corp. 07-11051; American Home Ventures LLC 07-11052; Homegate
    Settlement Services, Inc. 07-11053; and Great Oak Abstract Corp. 07-11054

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)          0000009741



OBC 03344

aggregate, plus statutory attorneys' fees and other amounts as yet undetermined.

4.      The amount of all payments on this claim has been credited and deducted for the purpose
of making this proof of claim.

Dated:  January 10, 2008

SPIRO MOSS BARNESS LLP

/s/ Daniel I. Barness

By_____
        DANIEL I. BARNESS
(CSB # 104203)
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Telephone: (310) 235-2468
Facsimile (310) 235-2456
E-mail: daniel@spiromoss.com

Attorneys for Elvin Valenzuela and Phyllis Valenzuela,
individually and on behalf of similarly situated members
of the general public, Claimants

2

OBC 03345

## EXHIBIT "A" TO PROOF OF CLAIM

The claims herein arise pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.;* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.;* and other applicable statutory and common law. Claimants, individually, and on behalf of all others similarly situated, bring this claim against Debtors based, in part, on Debtors'[2] failure to clearly and conspicuously disclose to Claimants and the Class Members, in Debtors' Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Claimants and the Class members would be paying on the Note(s).

This claim also concerns Debtors' unlawful, fraudulent and unfair business acts or practices. Debtors engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Debtors' profits, even as Debtors knew their conduct would cause many of these consumers to lose their homes through foreclosure.

Claimants, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendant. The Option ARM loan sold to Claimants and the Class is a deceptively devised financial product. The loan has a variable rate feature with payment caps.

---

[2] As used herein "Debtor/Debtors" refers to the Debtor herein, and all other Debtors in the jointly administered cases to which this case is related, including any parent corporation, subsidiary or joint-venture sister corporation which may be a debtor in any of the jointly administered cases, who are, or may hereafter be found to be, jointly liable with the captioned Debtor to Claimants and to the Class whom they seek to represent.

3

OBC 03346

The product was sold based on the promise of a low fixed payment based on a low listed interest rate, when in fact Claimants and the Class were charged a different, much greater interest rate than promised. Further, Debtors failed to disclose, and by omission, failed to inform Claimants of the fact that Debtors' Option ARM loan was designed to, and did, cause negative amortization to occur.

Debtors sold their Option ARM loan product to consumers, including Claimants, in a false or deceptive manner. Debtors' loan documents indicated that the loan would have a very low payment for the first three (3) to five (5) years and there is no indication of negative amortization. In furtherance of their scheme, Debtors listed a low "teaser" rate in the Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter "TILDS") to lure Claimants and the Class members into purchasing Debtors' Option ARM loan product. However, the low "teaser" rate was illusory, a false promise. Claimants and others similarly situated did not receive the benefit of the low rate promised to them. Once execution of Debtors' loan documents was completed, the interest rate applied to Claimants's and Class members' loans was immediately and significantly increased.

Based on the Debtors' representations, Claimants and the Class members agreed to finance their primary residence through Debtors' Option ARM loan. After, the purported three (3) - five (5) year fixed interest period, Claimants and the Class members reasonably believed, based on the representations contained in the documents Debtors provided to Claimants and the Class members, that they would be able to refinance their loan and get a new loan before their scheduled payments increased. However, the payment schedule provided by Debtors failed to disclose, and by omission, failed to inform these consumers that due to the negative amortization

4

OBC 03347

that was purposefully built into these loans, Claimants and the Class members would be unable to refinance their homes as there would be little or no equity left to refinance.

In stark contrast to this reality, Defendant, through the standardized loan documents they created and supplied to Claimants, stated that negative amortization was only a mere possibility. Debtors concealed and failed to disclose the fact that the loan, as presented and designed, in fact, guaranteed negative amortization. Debtors failed to disclose and omitted the objectively material fact that negative amortization was absolutely certain to occur if consumers followed the payment schedule listed by Debtors in the TILDS. This information was objectively material and necessary for consumers to make an informed decision because this would have revealed that the loan's principal balance would increase if the payment schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest and payment rates re-set.

At all times relevant, Defendant, and each of them, knew or should have known, or were reckless in not knowing, that: (i) the payment rate provided to Claimants and the Class members were insufficient to pay both interest and principle; (ii) that negative amortization was certain to occur if Claimants and the Class members made payments according to the payment schedule provided by Defendant; and (iii) that loss of equity and/or loss of Claimants's and the Class members residence was substantially certain to occur if Claimants and the Class members made payments according to the payment schedule provided by Defendant.

In spite of its knowledge, Debtors sold its Option ARM loans with the promise of a low payment and interest rate. Defendant failed to disclose and/or concealed by making partial representations of material facts when Debtors had exclusive knowledge of material facts that negative amortization was certain to occur. This concealed and omitted information was not

OBC 03348

known to Claimants and the Class members and which, at all times relevant, Debtors failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Claimants and all others similarly situated. Because the ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note and the payment disclosed by Debtors were insufficient to pay both principle and interest, negative amortization occurred.

The Option ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

Debtors engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

Debtors' unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Claimants or others similarly situated would receive a home loan promised.

Claimants contend that these claims should be class claims, and any litigation arising therefrom should be conducted pursuant to F.R. Bankr. Proc. 7023. Their claims against Debtors are asserted on their own behalf and on behalf of all persons similarly situated in the United States.    The class that Claimants seek to represent is all people who have claims against Debtors as described hereinabove.

The class which Claimants seek to represent is so numerous that joinder of all such persons is impracticable without the class claim/class action mechanism. Disposition of their claims by way of such class treatment is thus a benefit to the parties and to the Court. The

6

class which Claimants represents is easily ascertainable from the loan documentation and other records maintained by Debtor.

There is a well-defined community of interest and common questions of law and fact involved affecting the parties to be represented. There are common facts which establish Debtor's liability under TILA, UFC and other applicable statutory authority and common law, and the same law would apply to those facts. Proof of a common set of facts will establish the right of each member of the class to recover. The remedies of the aggrieved class members will be determined by reference to such common facts and law. The claims of Claimants are typical of those of the class and Claimants will fairly and adequately represent the interests of the class. The class claim mechanism is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class claim treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class claim. The cost to, and burden on, the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

OBC 03350

EXHIBIT "B"

OBC 03351

## TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:  American Home Mortgage Acceptance, Inc.
1500 W. Shaw Avenue, Suite 403
Fresno, CA 93711

☐ Preliminary  ☒ Final
*DATE:* 06/23/05
*LOAN NO.:*
*Type of Loan:*
APP NO.: ▉

BORROWERS:  Elvin Valenzuela
Phyllis Valenzuela

ADDRESS:
CITY/STATE/ZIP:
PROPERTY:

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on | The amount you will have paid after you have made all |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| | | | | | |

DEMAND FEATURE:  ☒ This loan does not have a Demand Feature.   ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been   provided to you earlier.
THE CURRENT INDEX RATE IS

SECURITY:  You are giving a security interest in the property located at:

ASSUMPTION:   Someone buying this property   ☐ cannot assume the remaining balance due under original mortgage terms
☒ may assume, subject to lender's conditions, the remaining balance under   original mortgage terms.

FILING / RECORDING FEES:   $

PROPERTY INSURANCE:  ☒ Property hazard insurance in the amount of $ ▉        with a mortgage clause to the lender
is a required condition of this loan. Borrower may purchase this insurance from   any insurance company acceptable to the lender.
Hazard insurance ☐ is ☒ is not available through the lender at an estimated cost of   N/A   for a   year term.

LATE CHARGES:   If your payment is more than   15   days late, you will be charged a late charge of ▉   % of the overdue payment.

PREPAYMENT:   If you pay off your loan early, you
☒ may ☐ will not   have to pay a penalty.
☐ may ☒ will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding   non-payment, default, required repayment in full before scheduled date,   and prepayment refunds and penalties.
↑ means estimate

I/We hereby acknowledge reading and receiving a complete copy of this   disclosure.

_____
Elvin Valenzuela                    BORROWER / DATE

_____
Phyllis Valenzuela                  BORROWER / DATE

_____
BORROWER / DATE

_____
BORROWER / DATE

DOC #:060401 / rev. 06/2005
-788 (9901)   UK31 9401.05           VMP MORTGAGE FORMS - (800)521-7291       Page 1 of 2      5/96
© 1999 CBF Systems, Inc.    The contents of this form in whole or in part are protected under the copyright   laws of the United States.

OBC 03352

ADDENDUM B

**ALTA POLICY** must contain Endorsements ████████ with liability in the amount of our loan.

**LIABILITY SUBJECT ONLY TO:** 2004/05 All PAID
Funds may be used for account of the vestees, and you will record all instruments when you comply with the following:
    1.  Issue said form of Policy showing title vested as required herein.
    2.  Issue said form of Policy free from encumbrances except items 1,2 pc 3-5ok 6-7 out of preliminary Title Report dated April 22, 2005.
    Secondary financing in the amount of ████ has been approved.
**FHA OR VHA: BUYER CANNOT BE CHARGED FOR ANY ENDORSEMENTS TO ALTA POLICIES.**

**TITLE INSURANCE.** A standard ALTA title insurance policy with all necessary endorsements (i.e. adjustable rate, environmental lien, easement, encroachment, address, etc.), and without deletions must be obtained at closing. Any deviation from the standard ALTA policy is unacceptable. No exceptions from coverage, unusual conditions for coverage, etc. are allowed without the express WRITTEN consent of American Brokers Conduit. The title policy must insure that American Brokers Conduit has a valid first lien on the subject property. A title insurance binder dated no more than 30 days prior to closing must be obtained at the closing deleting all exceptions and mortgages. All taxes, bonds, and assessments coming due on or before the due date of the first monthly payment must be paid at closing and are not included in the escrow account being established by American Brokers Conduit. Title insurance must be for no more or less than the amount of the mortgage. **The insured on the title policy must read: American Brokers Conduit, its successors and assigns as their interest may appear.**

American Brokers Conduit will require a closing protection letter from the title company prior to closing the loan.

**ESCROW IMPOUNDS FOR TAXES AND/OR INSURANCE.**

All taxes, bonds and assessments coming due on **August 1, 2005**    must be paid at closing and are not included in the escrow account being established by the Lender.

**CLOSING STIPULATION(S)**

The following documents or conditions must be satisfied and/or presented at time of closing. In the event you are unsure of the acceptability of any document(s) you must contact the Lender. In no event may you accept any alternative document(s) or unilaterally waive any requirement unless written authorization is provided to you by the lender.

**All of the documents provided herewith are required to be signed, regardless of whether they appear to be duplicates previously provided to the borrower(s).**

**Stipulations to be satisfied:**
If a Power of Attorney is to be used in connection with this loan closing, you must follow the document execution instructions set forth on ADDENDUM "E".

**The following items are required Prior to Funding:**

1.  Broker to provide final 1003. typed - signed by the borrower/broker

2.  HUD-1 to evidence payoff of citimtg
wells fargo    with an outstanding balance of $256138
28496
.

3.  The Notice of Right to Cancel must be signed at closing.

4.  Provide Hazard Policy for a minimum of loan amount or replacement cost coverage, with a minimum of 3 months remaining on policy.

5.  Provide copy of appraisers current license.

6.  The lock for this loan will expire on 08/22/05. If the loan will not close

**(Attachment Continued Next Page)**

Document #: 943047 / Image: ABCLCIP3.PRN  ████████                    rev. 10/04

**Additional Terms and Conditions Attachment (Continued from Addendum B)**

AND fund by this date, please contact Secondary prior to expiration to extend the
lock.

7. With the exception of 30-day accounts, evidence of payoff of the following
debts must be included in the loan file.

| Borrower | Creditor | Account Number | Balance |
|----------|----------|----------------|---------|
| Elvin Valenzuela | █████████████████████████████████ |
| Elvin Valenzuela | █████████████████████████████████ |

-004793

## ADJUSTABLE RATE NOTE
### 12-MTA INDEX - PAYMENT AND RATE CAPS

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES WILL HAVE LIMITS WHICH COULD RESULT IN THE PRINCIPAL AMOUNT I MUST REPAY BEING LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ███████ OF THE ORIGINAL AMOUNT (OR $███████ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

| June 23, 2005 | Visalia | California |
|---|---|---|
| | (City) | (State) |

███████████████████████

(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ ███████ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is ___American Home Mortgage Acceptance, Inc.___ . I will make all payments under this Note in form of cash, check or money order.  I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid.  First I will pay interest at a yearly rate of ███████ %.  The interest rate I will pay may change.  The interest rate required by this Section 2 and Section 4 of this Note is the Rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month.  In this Note, "Payments" refer to Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I Will make my monthly payments on ___1st___ day of each month beginning on ___August, 2005___ , I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on ___July 1, 2035___ , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at ████████████████████ _____ , or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S. $███████ , unless adjusted at an earlier time under Section 4(H) of this Note.

DOC #:943333                    ███████████ Page 1 of 6                    Rev. 6/07/05

### (C) Payment Changes

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and Interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may further change on the ___1st___ day of __August , 2005__, and on that day every month thereafter. Each such day is called a "Change Date"

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ _____ percentage points ▮▮▮▮▮ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher ▮▮▮▮▮

### (D) Interest Rate Limit

My interest rate will never be greater than ▮▮▮▮▮▮▮▮▮▮ _____ percentage points ▮▮▮▮▮ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Effective every year commencing _____August 1, 2006_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate in effect 45 day prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my Payments are changed earlier under Section 4(H) of this Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a

OBC 03356

Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying.  This payment cap applies only to the principal payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization

Since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the maturity date in substantially equal payments.  For each month that the monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate.  For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid principal can never exceed a maximum amount equal to ██████████ % of the principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that ██████████ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation.  The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at my interest rate in effect the month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ██████████ anniversary of the due date of the first monthly payment, and on that same day every ██████████ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time.  I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will apply all of my prepayments to reduce the amount of principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the principal amount of the Note.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

OBC 03357

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

### Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

OBC 03359

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)        _____(Seal)
Elvin Valenzuela            -Borrower         Phyllis Valenzuela          -Borrower


_____(Seal)        _____(Seal)
                            -Borrower                                     -Borrower


_____(Seal)        _____(Seal)
                            -Borrower                                     -Borrower


_____(Seal)        _____(Seal)
                            -Borrower                                     -Borrower

DOC #:943338                            ███████████

Page 6 of 6

OBC 03360

# GOOD FAITH ESTIMATE
## CENTRAL VALLEY MORTGAGE, INC.

| | |
|---|---|
| Lender: **CENTRAL VALLEY MORTGAGE** | Sales Price: |
| Address: **1830 South Mooney Blvd. Suite 100** | Base Loan Amount: |
| **Visalia, Ca 93277** | Total Loan Amount: |
| Applicant(s): **ELVIN VALENZUELA & PHYLLIS VALENZUELA** | Interest Rate: % |
| | Type of Loan: **Conventional** |
| Property Address: | Preparation Date: **May 10, 2005** |
| | Loan Number: |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates - actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement which you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement.

| 800 | ITEMS PAYABLE IN CONNECTION WITH LOAN: | |
|---|---|---|
| 801. A | Origination Fee  @ 1.000% | $ |
| 802. | Discount Fee | $ |
| 803. | Appraisal Fee  ($ 350.00 Paid) | $ |
| 804. A | Credit Report | $ |
| 805. | Lender's Inspection Fee | $ |
| 806. | Mortgage Insurance Application Fee | $ |
| 807. | Assumption Fee | $ |
| 808. | Mortgage Broker Fee | $ |
| 810. | Tax Related Service Fee | $ |
| 811. | Application Fee | $ |
| 812. | Commitment Fee | $ |
| 813. | Lender's Rate Lock-In Fee | $ |
| 814. A | Processing Fee | $ |
| 815. | Underwriting Fee | $ |
| 816. | Wire Transfer Fee | $ |
| 817. | Yield spread premium to mortgage broker. | $ |

| 900 | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE: | |
|---|---|---|
| 901. A | Interest  @ $7.9444/day for 1 days | $ |
| 902. | Mortgage Insurance Premium | $ |
| 903. | Hazard Insurance Premium | $ |
| 904. | County Property Taxes | $ |
| 905. | Flood Insurance | $ 0.00 |
| | | $ |

| 1000 | RESERVES DEPOSITED WITH LENDER: | |
|---|---|---|
| 1001. | Hazard Ins.  @ $42.0000/mo. for 2 months | $ |
| 1002. | Mortgage Ins. | $ |
| 1004. | Tax & Assmt.  @ $292.0000/mo. for 3 months | $ |
| 1006. | Flood Insurance | $ |
| 1008. | Aggregate Escrow Adjustment | $ |

"S"/"B" designates those costs to be paid by Seller/Broker.

| TOTAL ESTIMATED MONTHLY PAYMENT: | |
|---|---|
| Principal & Interest | $ |
| Real Estate Taxes | $ |
| Hazard Insurance | $ |
| Flood Insurance | $ |
| Mortgage Insurance | $ |
| Other | $ |
| TOTAL MONTHLY PAYMENT | $ 1 |

| 1100 | TITLE CHARGES: | |
|---|---|---|
| 1101. A | Closing or Escrow Fee | $ |
| 1102. | Abstract or Title Search | $ |
| 1103. | Title Examination | $ |
| 1105. | Document Preparation Fee | $ |
| 1106. | Notary Fee | $ |
| 1107. | Attorney's Fee | $ |
| 1108. A | Title Insurance | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

| 1200 | GOVERNMENT RECORDING AND TRANSFER CHARGES: | |
|---|---|---|
| 1201. A | Recording Fee | $ |
| 1202. | City/County Tax/Stamps | $ |
| 1203. | State Tax/Stamps | $ |
| 1204. | Intangible Tax | $ |
| | | $ |
| | | $ |

| 1300 | ADDITIONAL SETTLEMENT CHARGES: | |
|---|---|---|
| 1301. | Survey | $ |
| 1302. | Pest Inspection | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

| TOTAL ESTIMATED SETTLEMENT CHARGES: | $ |
|---|---|

"A" designates those costs affecting APR.  "F" designates financed costs

| TOTAL ESTIMATED FUNDS NEEDED TO CLOSE: (From/To Borrower) | |
|---|---|
| Total Loan Amount | +$ 2 |
| Payoffs | - $ 2 |
| Estimated Closing Costs | - $ |
| Estimated Prepaid Items / Reserves | - $ |
| Total Paid Items | +$ |
| Other | - $ |
| Cash To Borrower | $ |

THIS SECTION IS COMPLETED ONLY IF A PARTICULAR PROVIDER OF SERVICE IS REQUIRED.  Listed below are providers of service which we required you to use. The charges indicated in the Good Faith Estimate above are based upon the corresponding charge of the below designated providers.

| ITEM NO. | NAME & ADDRESS OF PROVIDER | TELEPHONE NO. | NATURE OF RELATIONSHIP |
|---|---|---|---|
| 0 | | | |
| 0 | | | |
| 0 | | | |

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA).  Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential property and the Lender will take a first lien on the property.

| | | |
|---|---|---|
| _signature_ 5/11/05 | _signature_ Phyllis Valenzuela 5/11/05 | |
| Applicant  ELVIN VALENZUELA        Date | Applicant  PHYLLIS VALENZUELA        Date | |
| | | |
| Applicant        Date | Applicant        Date | |

[X] This Good Faith Estimate is being provided by **CENTRAL VALLEY MORTGAGE, INC.** a mortgage broker, and no lender has yet been obtained.

OBC 03361

| A. Settlement Statement | | B. Type of Loan |
|---|---|---|

**First American Title Company**
Final Statement

| B. Type of Loan | |
|---|---|
| 1-5. Loan Type  Conv. Unins. | |
| 6.  File Number | |
| 7.  Loan Number | |
| 8.  Mortgage Insurance Case Number | |

C.   Note:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked '(POC)' were paid outside this closing; they are shown here for informational purposes and are not included in the totals.

D.   Name of Borrower: Elvin Valenzuela, Phyllis Valenzuela

E.   Name of Seller:

F.   Name of Lender: American Brokers Conduit, Inc.

G.   Property Location:

| H.   Settlement Agent: First American Title Company<br>Address: 1850 South Central Street, Visalia, CA 93277 | I.<br>Settlement Date: 07/01/2005 |
|---|---|
| Place of Settlement Address: 1850 South Central Street, Visalia, CA 93277 | Print Date: 07/01/2005, 11:29 AM |
| | Disbursement Date: 07/01/2005 |

| J. Summary of Borrower's Transaction | | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|---|
| 100. Gross Amount Due From Borrower | | | 400. Gross Amount Due To Seller | | |
| 101. Contract Sales Price | | | 401. Contract Sales Price | | |
| 102. Personal Property | | | 402. Personal Property | | |
| 103. Settlement charges to borrower (line 1400) | | | 403. Total Deposits | | |
| 104. Supplemental Summary | | | 404. | | |
| 105. | | | 405. | | |
| Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | | |
| 106. City/town taxes | | | 406. City/town taxes | | |
| 107. County taxes | | | 407. County taxes | | |
| 108. Assessments | | | 408. Assessments | | |
| 109. | | | 409. | | |
| 110. | | | 410. | | |
| 111. | | | 411. | | |
| 112. | | | 412. | | |
| 113. | | | 413. | | |
| 114. | | | 414. | | |
| 115. | | | 415. | | |
| 120. Gross Amount Due From Borrower | | | 420. Gross Amount Due To Seller | | |
| 200. Amounts Paid By Or In Behalf of Borrower | | | 500. Reductions In Amount Due To Seller | | |
| 201. Deposit or earnest money | | | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | | | 502. Settlement charges (line 1400) | | |
| 203. Existing loan(s) taken subject | | | 503. Existing loan(s) taken subject | | |
| 204. | | | 504. Payoff of first mortgage loan | | |
| 205. | | | 505. Payoff of second mortgage loan | | |
| 206. | | | 506. | | |
| 207. | | | 507. | | |
| 208. | | | 508. | | |
| 209. | | | 509. | | |
| Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | | |
| 210. City/town taxes | | | 510. City/town taxes | | |
| 211. County taxes | | | 511. County taxes | | |
| 212. Assessments | | | 512. Assessments | | |
| 213. | | | 513 | | |
| 214. | | | 514. | | |
| 215. | | | 515. | | |
| 216. | | | 516. | | |
| 217. | | | 517. | | |
| 218. | | | 518. | | |
| 219. | | | 519. | | |
| 220. Total Paid By/For Borrower | | | 520. Total Reduction Amount Due Seller | | |
| 300. Cash At Settlement From/To Borrower | | | 600. Cash At Settlement To/From Seller | | |
| 301. Gross amount due from Borrower (line 120) | | | 601. Gross amount due to Seller (line 420) | | |
| 302. Less amounts paid by/for Borrower (line 220) | | | 602. Less reductions in amounts due to Seller (line 520) | | |
| 303. Cash (  From) (X To) Borrower | | | 603. | | |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent:

Date: 7/1/05

OBC 03362

*See Supplemental Page for details.

| L. Settlement Charges | | |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price | **Paid From Borrower's Funds at Settlement** | **Paid From Seller's Funds at Settlement** |
| Division of Commission (line 700) as follows | | |
| 701. | | |
| 702. | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. Items Payable in Connection with Loan** | | |
| 801. Loan Origination Fee | | |
| 802. Loan Discount | | |
| 803. Appraisal Fee - Central Valley Mortgage | | |
| 804. Credit Report - Central Valley Mortgage | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Premium | | |
| 807. Assumption Fee | | |
| 808. Tax Service Fee - American Brokers Conduit, Inc. | | |
| 809. Flood Certification Fee - American Brokers Conduit, Inc. | | |
| 810. Administration Fee - American Home Mortgage Acceptance, Inc. | | |
| 811. Wire Fee - American Home Mortgage Acceptance, Inc. | | |
| 812. Yield Spread Premium - Central Valley Mortgage    POC $1,760.00 | | |
| 813. Loan Origination Fee - Central Valley Mortgage | | |
| 814. Processing Fee - Central Valley Mortgage | | |
| Supplemental Summary | | |
| **900. Items Required by Lender to be Paid in Advance** | | |
| 901. Interest | | |
| 902. | | |
| 903. Hazard Insurance Premium for | | |
| 904. | | |
| 905. | | |
| Supplemental Summary | | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Hazard Insurance 4 mo(s) @$44.00/mo | | |
| 1002. Mortgage Insurance | | |
| 1003. City Property Taxes | | |
| 1004. County Property Taxes 6 mo(s) @$93.03/mo | | |
| 1005. Annual assessments | | |
| 1006. | | |
| 1007. | | |
| 1008. Aggregate Accounting Adjustment | | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee | | |
| 1102. Abstract or title search | | |
| 1103. Title examination | | |
| 1104. Title Insurance Binder | | |
| 1105. Document Fee | | |
| 1106. Notary Fee | | |
| 1107. Attorney Fee | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance – See supplemental page for breakdown of individual fees and payees | | |
| (includes above item numbers: ) | | |
| 1109. Lender's coverage $88,000.00 | | |
| 1110. Owner's coverage $0.00 | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| 1114. | | |
| 1115. | | |
| 1116. | | |
| 1117. | | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. *Recording fees:  Deed $0.00 Mortgage $65.00 Release $0.00 | | |
| 1202. City/county tax/stamps: | | |
| 1203. State tax/stamps: | | |
| 1204. | | |
| 1205. | | |
| 1206. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. Notary to Emilie Freitas | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1310. | | |
| 1311. | | |
| 1312. | | |
| 1313. | | |
| 1314. | | |
| Supplemental Summary | | |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | |

OBC 03363

| Supplemental Page<br>HUD-1 Settlement Statement | File No. ▇▇▇▇▇▇ |
|---|---|
| **First American Title Company**<br>**Final Statement** | Loan No.<br>881809 |
| | Settlement Date:<br>07/01/2005 |

**Borrower Name & Address:** Elvin Valenzuela, Phyllis Valenzuela

▇▇▇▇▇▇▇▇▇▇

**Seller Name & Address:**

| Section L. Settlement Charges continued | | Paid From<br>Borrower's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
|---|---|---|---|
| 1108.  Supplemental Summary | 685.00 | ▇▇▇ | |
| a) Eagle OneRate-Line 1108 includes Line 1101 charges - First American Title Company | | | |
| 1201.  Supplemental Summary | 65.00 | ▇▇▇ | |
| a) Record Trust Deed - First American Title Company | | | |

| Section J. Summary of Borrower's Transaction continue | | Borrower Charges | Borrower Credits |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | | |
| 104.  Supplemental Summary | 83,878.33 | ▇▇▇ | |
| a) Principal Balance    - Mission Hills Mortgage | | | |
| Interest on Payoff Loan 06/30/05 to 07/06/05 @$14.826000/day | | | |
| Statement/Forwarding Fee | | | |
| Interest to 6-30-05 | | | |
| Fax Fee | | | |
| 200. Amounts Paid By Or In Behalf of Borrower | | | |

| The following Section is restated from the Settlement Statement Page 1 | | | | |
|---|---|---|---|---|
| 300. Cash At Settlement From/To Borrower | | 600. Cash At Settlement To/From Seller | | |
| 301. Gross amount due from Borrower (line 120) | ▇▇▇ | 601. Gross Amount due to Seller (line 420) | | |
| 302. Less amounts paid by/for Borrower (line 220) | | 601. Less reductions in amounts due to Seller (line 520) | | |
| 303. Cash ( From) (X To) Borrower | | 603. | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

OBC 03364

LENDER NAME AND ADDRESS:

# SERVICING DISCLOSURE STATEMENT

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2601 et seq.) you have certain rights under that Federal law. This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. "Servicing" refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**
If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**
Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights, whether or not your loan servicing is transferred. If you send a "qualified written request" to your loan servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60 Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day, excluding public holidays (State or Federal), Saturday and Sunday.

**Damages and Costs**
Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimated**
1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

A. [X] We may assign, sell or transfer the servicing of your loan sometime while the loan is outstanding.
We are able to service your loan, and we [ ] will [X] will not [ ] haven't decided whether to service your loan.

B. [X] We do not service mortgage loans, and [X] We have not serviced mortgage loans in the past three (3) years. [ ] We presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

C. [X] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:
[X] sell all of the mortgage servicing;
[ ] retain all of the mortgage servicing; or
[ ] assign, sell or transfer _____ % of the mortgage servicing.

2. For all the first lien mortgage loans that we make in the 12 month period after your mortgage loan is funded, we estimate that the percentage of such loans for which we will transfer servicing is between:

[ ] 0 to 25%    [ ] 26 to 50%    [ ] 51 to 75%    [X] 76 to 100%

This estimate [ ] does [X] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. A. [ ] We have previously assigned, sold or transferred the servicing of first lien mortgage loans.
B. [ ] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| YEAR | PERCENTAGE OF LOANS TRANSFERRED (Rounded to Nearest Quartile - 0%, 25%, 50%, 75%, or 100%) |
|------|------|
| 2001 | 100% |
| 2002 | 100% |
| 2003 | 100% |

This information [X] does [ ] does not include assignments, sales or transfers to affiliates or subsidiaries.

_Michelle L Vau_ (signature)

LENDER (Signature not Mandatory)     DATE/ 5/10/05

## ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_(signature)_     DATE 5/10/05          _Phyllis Valenzuela_ (signature)     DATE 5/11/05

_____    DATE          _____    DATE

**INSTRUCTIONS TO PREPARER:** Select either Item 3(A) or Item 3(B), except if you chose the provision in 1(B) stating: "We do not service mortgage loans, and we have not serviced loans in the past three (3) years", all of Item 3 should be omitted. The information in Item 3(B) is for the previous three (3) calendar years. The information does not have to include the previous calendar year if the statement is prepared before March 31 of the next calendar year. If the percentage of servicing transferred is less than 12.50%, the word "nominal" or the actual percentage amount of servicing transfers may be used.

GENESIS 2000, INC. " W17.0 " (800) 882-0504

Form MSTD

ORIG 03365

## DISCLOSURE NOTICES

| Applicant(s) | Property Address |
|---|---|
| Elvin & Phyllis Valenzuela | ██████████████ |

### [X]   OCCUPANCY STATEMENT

This is to certify that I/We   [X] do   [ ] do not intend to occupy the subject property as my/our principal residence. I/We hereby certify under penalty of U.S. Criminal Code Section 1010 Title 18 U.S.C., that the above statement submitted for the purpose of obtaining mortgage insurance under the National Housing Act is true and correct.

### FAIR CREDIT REPORTING ACT

An investigation will be made as to the credit standing of all individuals seeking credit in this application. The nature and scope of any investigation will be furnished to you upon written request made within a reasonable period of time. In the event of denied credit due to an unfavorable consumer report, you will be advised of: the identity of the Consumer Reporting Agency making such report and of right to request within sixty (60) days the reason for the adverse action, pursuant to provisions of section 615(b) of the Fair Credit Reporting Act.

### EQUAL CREDIT OPPORTUNITY ACT

The Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. Income which you receive as alimony, child support or separate maintenance need not be disclosed to this creditor unless you choose to rely on such sources to qualify for the loan. Income from these and other sources, including part-time or temporary employment, will not be discounted by this lender because of your sex or marital status. However, we will consider very carefully the stability and probable continuity of any income you disclose to us. The Federal Agency that administers compliance with this law concerning this creditor is:   **Federal Trade Commission**
**12345 Any Street, Room 13209, Any Town, ST 00000**

### [X]   RIGHT TO FINANCIAL PRIVACY ACT

I/we acknowledge that this is notice to me/us as required by The Right to Financial Privacy Act of 1978 that the Veterans Administration (in the case of a VA Loan) or Department of Housing and Urban Development (in the case of an FHA Loan) has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to me/us. Financial records involving my/our transactions will be available to the VA (in the case of a VA Loan) or to HUD (in the case of an FHA Loan) without further notice or authorization but will not be disclosed or released to another government agency or department without my/our consent, except as required or permitted by law.

### [X]   INFORMATION DISCLOSURE AUTHORIZATION

I/We hereby authorize you to release to **CENTRAL VALLEY MORTGAGE, INC.** _____ for verification purposes, Information concerning: [X] Employment History, dates, title(s), income, hours worked, etc.   [X] Banking (checking & savings) account of record.   [X] Mortgage loan rating, (opening date, high credit, payment amount, loan balance and payment.   [X] Any information deemed necessary in connection with consumer credit report for real estate transaction. This information is for the confidential use of this lender in compiling a mortgage loan credit report. A copy of this authorization may be deemed to be the equivalent of the original and may be used as a duplicate original.

### [ ]   ANTI-COERCION STATEMENT

The insurance laws of this state provide that the lender may not require the applicant to take insurance through any particular insurance agent or company to protect the mortgaged property. The applicant, subject to the rules adopted by the Insurance Commissioner, has the right to have the insurance placed with an insurance agent or company of his choice, provided the company meets the requirements of the lender.-The lender has the right to designate reasonable financial requirements as to the company and the adequacy of the coverage.

I have read the foregoing statement, or the rules of the Insurance Commissioner relative thereto, and understand my rights and privileges and those of the lender relative to the placing of such insurance.

I have selected the following agencies to write the insurance covering the property described above:

Insurance Co. Name:
         Agent:

### [X]   FLOOD INSURANCE NOTIFICATION

Federal regulations require us to inform you that the property used as security for this loan is located in an area identified by the U.S. Secretary of Housing & Urban Development as having special flood hazards and that in the event of damage to the property caused by flooding in a Federally-declared disaster, Federal disaster relief assistance, if authorized, will be available for the property.

At the closing you will be asked to acknowledge your receipt of this information. If you have any questions concerning this notice, kindly contact your loan officer.

**IMPORTANT:** Please notify your insurance agent that the "loss payee" clause for the mortgagee on both the hazard and flood insurance must read as follows, unless otherwise advised:

### [X]   CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES

I/We hereby acknowledge receipt from **CENTRAL VALLEY MORTGAGE, INC.** _____ of a copy of the book titled "CONSUMER HANDBOOK ON ADJUSTABLE RATE MORTGAGES" published by the Federal Reserve Board and the Federal Home Loan Bank Board which is provided in addition to other required adjustable rate mortgage disclosures.

I/We hereby certify that I/we have read the Notices set forth above and fully understand all of the above.

| | | | |
|---|---|---|---|
| _(signature)_ | 5/11/05 | _Phyllis Valenzuela_ | 5/11/05 |
| APPLICANT | DATE | APPLICANT | DATE |
| APPLICANT | DATE | APPLICANT | DATE |

GENESIS 2000, INC. * W17.0 * (800) 882-0504                                           Form Disclosure (03/95)

ABC 03366

## MORTGAGE BROKER FEE DISCLOSURE

You have applied to a mortgage broker for a residential mortgage loan.  The mortgage broker will submit your application for a residential mortgage loan to a participating lender with which it from time to time contracts upon such terms and conditions as you may request or a lender may require.  The lenders have asked that we furnish this form to you to clarify the role of mortgage broker concerning your loan application.

SECTION 1. NATURE OF RELATIONSHIP

In connection with this mortgage loan:

* The mortgage broker may be acting as an independent contractor for clarification.
* The mortgage broker has entered into separate independent contractor agreements with various lenders.
* While the mortgage broker seeks to assist you in meeting your financial needs, it does not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or best terms available in the market.

SECTION 2. THE MORTGAGE BROKER'S COMPENSATION

The lenders whose loan products are distributed by the mortgage broker generally provide their products to the mortgage broker at a wholesale rate.

* The retail price of a mortgage broker offers you-your interest rate; local points and fees-will include the mortgage broker's compensation.
* In some cases, the mortgage broker may be paid all of its compensation by either you or the lender.
* Alternatively, the mortgage broker may be paid a portion of its compensation by both you and the lender.  For example, in some cases if you would rather pay a lower interest rate, you may pay higher up-front points and fees.
* Also, in some cases, if you would rather pay less up=front, you may wish to have some or all of the mortgage broker's fees paid directly by the lender, which will result in a higher interest rate and higher monthly payments than you otherwise would be required to pay.
* The mortgage broker may also be paid by the lender based on:
    1. The value of the mortgage loan or the related servicing rights in the market place.
    2. Other services, goods or facilities performed or provided by the mortgage broker to the lender.

You may work with the mortgage broker to select the method in which it receives its compensation depending on your financial needs, subject to the lender's program requirements and credit underwriting guidelines.

The amount of fees and charges that you pay in connection with your loan will be estimated on your Good Faith Estimate.  The final amounts will be disclosed on your HUD-1 or HUD-1A Settlement Statement.

By signing below, applicant(s) acknowledge that you have read and understand this document. You also acknowledge that you have received a copy of this document.

Applicant(s)

Name _____ 5/4/05

Name _____ 5/1/05    Date

Address _____    Address _____    OBC 03367

## APPRAISAL DISCLOSURE

| Borrower Name(s): Elvin & Phyllis Valenzuela | Lender: **CENTRAL VALLEY MORTGAGE, INC.** 1830 SO. MOONEY BLVD., #B VISALIA, CA 93277 |
|---|---|
| Property Address: | Date: 5/10/05 Loan Number: |

You have the right to a copy of the appraisal report obtained in connection with your application for credit provided that, if required, you have paid for or are willing to pay for the appraisal. You can get a copy of this report by writing to us at the address listed above. We must hear from you no later than 90 days after you are notified about the action taken on your credit application. (If you withdraw your application, you must make your request for an appraisal report within 90 days of the withdrawal.) You can telephone us, instead of writing, but by doing so you are not assured of preserving your rights.

| _____ -Borrower | 5/10/05 Date |
|---|---|
| _____ -Borrower | 5/11/05 Date |
| _____ -Borrower | _____ Date |
| _____ -Borrower | _____ Date |

Form Approved 0-03368



## Borrower's Certification & Authorization

<u>Certification</u>

The undersigned certify the following:

1. I/We have applied for a mortgage loan from   **CENTRAL VALLEY MORTGAGE, INC.**
   In applying for the loan,

   I/We completed a loan application containing various information on the purpose of the loan, the amount and source of the downpayment, employment and income information, and assets and liabilities. I/We certify that all of the information is true and complete. I/We made no misrepresentations in the loan application or other documents, nor did I/We omit any pertinent information.

2. I/We understand and agree that   **CENTRAL VALLEY MORTGAGE, INC.**
   reserves the right to change the mortgage loan review process to a full documentation program. This may include verifying the information provided on the application with the employer and/or the financial institution.

3. I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements when applying for this mortgage, as applicable under the provisions of Title 18, United States Code, Section 1014.

<u>Authorization to Release Information</u>

To Whom It May Concern:

1. I/We have applied for a mortgage loan from   **CENTRAL VALLEY MORTGAGE, INC.**
   As part of the application process,   **CENTRAL VALLEY MORTGAGE, INC.**
   may verify information contained in my/our loan application and in other documents required in connection with the loan, either before the loan is closed or as part of its quality control program.

2. I/We authorize you to provide to   **CENTRAL VALLEY MORTGAGE, INC.**
   and to any investor to whom   **CENTRAL VALLEY MORTGAGE, INC.**
   may sell my mortgage, any and all information and documentation that they request. Such information includes, but is not limited to, employment history and income; bank, money market, and similar account balances; credit history; and copies of income tax returns.

3. **CENTRAL VALLEY MORTGAGE, INC.**   or any investor that purchases the mortgage may address this authorization to any party named in the loan application.

4. A copy of this authorization may be accepted as an original.

5. Your prompt reply to   **CENTRAL VALLEY MORTGAGE, INC.**
   or the investor that purchased the mortgage is appreciated.

| | | |
|---|---|---|
| _(signature)_  5/10/05 | | |
| Borrower's Signature          Date | | |
| _(signature)_  Phyllie Valenzuela  5/11/05 | | |
| Borrower's Signature          Date | | Social Security Number |



CENTRAL VALLEY MORTGAGE, INC.

# THE FEDERAL EQUAL CREDIT OPPORTUNITY ACT

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with this law concerning this creditor is:

Lending institutions are prohibited from bringing up, in the taking of applications for loans, certain specific subjects which lend themselves to discrimination. They are as follows:

    a) Whether or not you have or will have children.
       (Although inquiring as to the number and age of dependents is proper).

    b) Whether or not there exist child care problems.

    c) Whether or not there will be interruptions of income due to childbirth.

    d) Whether or not you are receiving alimony, child support
       or separate maintenance. (Unless voluntarily disclosed as a
       source of additional income which you wish to be considered).

    e) Whether you are widowed, divorced, or single.
       (Allowable designations are: married, unmarried, separated).

    f) Whether or not your telephone number is listed.

Lending institutions must take and report action on your application "within a reasonable time." If the application is denied, reasons MUST be given if requested.

THIS IS TO CERTIFY THAT I (WE) HAVE READ THE ABOVE INFORMATION AND THAT A COPY OF THIS FORM HAS BEEN GIVEN TO ME (US) FOR MY (OUR) RECORDS.

| | | |
|---|---|---|
| _____ | 5/10/05 | _____ 5/11/05 |
| Borrower's Signature | Date | Borrower's Signature   Date |
| _____ | _____ | _____ _____ |
| Borrower's Signature | Date | Borrower's Signature   Date |

V17.0 * (800) 882-0504

CENTRAL VALLEY MORTGAGE, INC.

# THE HOUSING FINANCIAL DISCRIMINATION ACT OF 1977

# FAIR LENDING NOTICE

IT IS ILLEGAL TO DISCRIMINATE IN THE PROVISIONS OF OR IN THE AVAILABILITY OF FINANCIAL ASSISTANCE BECAUSE OF THE CONSIDERATION OF:

1.  TRENDS, CHARACTERISTICS OR CONDITIONS IN THE NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION, UNLESS THE FINANCIAL INSTITUTION CAN DEMONSTRATE IN THE PARTICULAR CASE THAT SUCH CONSIDERATION IS REQUIRED TO AVOID AN UNSAFE AND UNSOUND BUSINESS PRACTICE; OR

2.  RACE, COLOR, RELIGION, SEX, MARITAL STATUS, NATIONAL ORIGIN OR ANCESTRY.

IT IS ILLEGAL TO CONSIDER THE RACIAL, ETHNIC, RELIGIOUS OR NATIONAL ORIGIN COMPOSITION OF A NEIGHBORHOOD OR GEOGRAPHIC AREA SURROUNDING A HOUSING ACCOMMODATION OR WHETHER OR NOT SUCH COMPOSITION IS UNDERGOING CHANGE, OR IS EXPECTED TO UNDERGO CHANGE, IN APPRAISING A HOUSING ACCOMMODATION OR IN DETERMINING WHETHER OR NOT, OR UNDER WHAT TERMS AND CONDITIONS, TO PROVIDE FINANCIAL ASSISTANCE.

THESE PROVISIONS GOVERN FINANCIAL ASSISTANCE FOR THE PURPOSE OF THE PURCHASE, CONSTRUCTION, REHABILITATION OR REFINANCING OF ONE TO FOUR UNIT FAMILY RESIDENCES OCCUPIED BY THE OWNER AND FOR THE PURPOSE OF THE HOME IMPROVEMENT OF ANY ONE TO FOUR UNIT FAMILY RESIDENCE.

IF YOU HAVE QUESTIONS ABOUT YOUR RIGHTS, OR IF YOU WISH TO FILE A COMPLAINT, CONTACT THE MANAGEMENT OF THIS FINANCIAL INSTITUTION OR:

**OFFICE OF THE CONTROLLER OF THE CURRENCY
WESTERN DISTRICT
50 FREMONT STREET, SUITE 3900
SAN FRANCISCO, CA  94105-2292**

## ACKNOWLEDGEMENT OF RECEIPT

I (WE) RECEIVED A COPY OF THIS NOTICE

| | | | |
|---|---|---|---|
| _____ | 5/10/05 | _____ | 5/11/05 |
| Borrower's Signature | Date | Borrower's Signature | Date |
| _____ | _____ | _____ | _____ |
| Borrower's Signature | Date | Borrower's Signature | Date |



# CENTRAL VALLEY MORTGAGE

1830 S Mooney Blvd St B
Visalia Ca 93277
559-733-5010 Fax 559-733-5007

Thank you for your recent application with Central Valley Mortgage. We are looking forward to doing business with you. The appraisal and credit report fee is required to process your loan and receive final approval from our underwriters. This fee varies upon appraiser used and which company is used to pull the credit. Your good faith estimate has the exact charges rendered. The fee is paid directly to the companies that charge for their services. This fee is not charged by Central Valley Mortgage or paid to Central Valley Mortgage. If for any reason you decided to cancel the process of your loan this is a non-refundable fee. We make no promises of a value by the appraiser and give no guarantee of value. The appraiser is licensed independent contractor and the appraised value will be determined by the appraiser.

**Thank you**

_____ 5/11/05
Name

_____ 5/11/05
Name



# Central Valley Mortgage
### 1830 S. Mooney Blvd Space B
### Visalia Ca 93277

### California Credit Score Notice
Notice to the Home Loan Applicant

In connection with your application for a home loan, the lender must disclose to you the score that a credit bureau distributed to users and the lender used in connection with your home loan and the key factors affecting you credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information a credit bureau or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history pattern change, and how credit scoring technologies change.

Because the core is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit repots may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the credit bureau at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The credit bureau plays in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on the loan application.

If you have any question concerning the terms of the loan, contact the lender.

One or more of the following credit bureaus will provide the credit score.

| | | |
|---|---|---|
| Experian | Equifax | Transunion |
| Po Box 2002 | PO BOX 742041 | PO BOX 4000 |
| Allen Texas 75013 | Atlanta GA. 30374 | Chester, Ca 19016 |
| 888-397-3742 | 800-865-1111 | 888-887-2673 |

Your acknowledgement below signifies that this written notice was provided to you.

_____  5/6/05                    _Phyllis Valenzuela_  5/11/05
Borrower          Date                     Co-Borrower          Date

OBC 03373