# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------------------- x  Hon. Christopher S. Sontchi

In re: : Chapter 11

:

AMERICAN HOME MORTGAGE HOLDINGS, INC. : Case No. 07-11047

AMERICAN HOME MORTGAGE INVESTMENT CORP. : Case No. 07-11048

AMERICAN HOME MORTGAGE ACCEPTANCE, INC. : Case No. 07-11049

AHM SV, INC. (f/k/a American Home Mortgage Servicing, Inc.) : Case No. 07-11050

AMERICAN HOME MORTGAGE CORP. : Case No. 07-11051

AMERICAN HOME MORTGAGE VENTURES LLC : Case No. 07-11052

HOMEGATE SETTLEMENT SERVICES, INC. : Case No. 07-11053

GREAT OAK ABSTRACT CORP. : Case No. 07-11054

:

Debtors.[1] : Jointly Administered

--------------------------------------------------------------------------- x

## AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS DATED AS OF FEBRUARY 18, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

James L. Patton, Jr. (No. 2202)
Robert S. Brady (No. 2847)
Pauline K. Morgan (No. 3650)
Sean M. Beach (No. 4070)
Matthew B. Lunn (No. 4119)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

# Table of Contents

**Page**

ARTICLE 1. DEFINITIONS ................................................................ 1

    A.    DEFINED TERMS ............................................................ 1

    B.    INTERPRETATION ........................................................ 16

    C.    TIME PERIODS ............................................................. 17

    D.    EXHIBITS ..................................................................... 17

ARTICLE 2. CLASSIFICATION OF CLAIMS AND INTERESTS ..................................... 17

    A.    SUMMARY ................................................................... 17

    B.    CLASSIFICATION .......................................................... 22

ARTICLE 3. TREATMENT OF DIP FACILITY CLAIMS, ADMINISTRATIVE
CLAIMS AND PRIORITY TAX CLAIMS ................................................. 25

    A.    DIP FACILITY CLAIMS ................................................... 25

    B.    ADMINISTRATIVE CLAIMS ............................................ 25

    C.    STATUTORY FEES ......................................................... 28

    D.    PRIORITY TAX CLAIMS ................................................. 28

ARTICLE 4. TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ...................... 29

    A.    PRIORITY CLAIMS AGAINST ALL DEBTORS ............................. 29

    B.    MISCELLANEOUS SECURED CLAIMS AGAINST ALL
DEBTORS ..................................................................... 30

    C.    BofA SYNDICATE SECURED CLAIM AGAINST AHM
INVESTMENT, AHM ACCEPTANCE, AHM SV, AND AHM
CORP. ......................................................................... 31

    D.    PNB SECURED CLAIM AGAINST AHM CORP. ............................. 32

    E.    TRAVELERS SECURED CLAIM AGAINST AHM
ACCEPTANCE, AHM SV, AND AHM CORP. .................................. 33

    F.    JPM SECURED CLAIM AGAINST AHM INVESTMENT AND
AHM CORP. .................................................................. 33

    G.    UNSECURED CLAIMS AGAINST ALL DEBTORS, OTHER
THAN THE BofA SYNDICATE UNSECURED CLAIM,
SUBORDINATED TRUST PREFERRED CLAIMS, AND
BORROWER CLAIMS ...................................................... 34

    H.    BofA SYNDICATE UNSECURED CLAIM AGAINST AHM
HOLDINGS, AHM INVESTMENT, AHM ACCEPTANCE,
AHM SV, AND AHM CORP. ................................................. 35

i

I.      SUBORDINATED TRUST PREFERRED CLAIMS AGAINST AHM HOLDINGS AND AHM INVESTMENT ................................... 36

J.      BORROWER CLAIMS AGAINST ALL DEBTORS .......................... 39

K.      OTHER SUBORDINATED CLAIMS AGAINST ALL DEBTORS, AND INTERESTS IN ALL DEBTORS ........................... 40

ARTICLE 5.  ACCEPTANCE OR REJECTION OF THIS PLAN ........................................... 40

A.      IMPAIRED CLASSES OF CLAIMS ENTITLED TO VOTE .............. 40

B.      CLASSES DEEMED TO ACCEPT THIS PLAN ................................ 43

C.      CLASSES DEEMED TO REJECT THIS PLAN .................................. 44

D.      NONCONSENSUAL CONFIRMATION ............................................. 44

ARTICLE 6.  SETTLEMENT OF INTERCOMPANY CLAIMS; STIPULATED ASSET ALLOCATION ........................................................................................ 45

A.      SETTLEMENT OF INTERCOMPANY CLAIMS .............................. 45

B.      THE STIPULATED ASSET ALLOCATION ..................................... 45

ARTICLE 7.  ESTIMATION AND ALLOWANCE OF EPD/BREACH CLAIMS ................ 46

A.      EPD CLAIMS ..................................................................................... 46

B.      BREACH OF WARRANTY CLAIMS ................................................ 46

C.      INTERACTION BETWEEN EPD CLAIMS AND BREACH OF WARRANTY CLAIMS ...................................................................... 48

D.      RESERVATION OF RIGHTS TO OBJECT TO DUPLICATIVE CLAIMS .............................................................................................. 48

E.      EPD/BREACH CLAIMS QUESTIONNAIRE AND BAR DATE ........ 48

ARTICLE 8.  MEANS OF IMPLEMENTING THIS PLAN ................................................... 49

A.      IMPLEMENTATION OF PLAN ........................................................ 49

B.      CORPORATE ACTION ...................................................................... 50

C.      DISSOLUTION OF DEBTORS ......................................................... 50

D.      DISSOLUTION OF OFFICIAL COMMITTEES ................................ 51

E.      VESTING OF ASSETS IN PLAN TRUST; ASSUMPTION OF PLAN OBLIGATIONS ....................................................................... 52

F.      PLAN TRUST ..................................................................................... 54

G.      PLAN OVERSIGHT COMMITTEE ................................................... 61

H.      LIABILITY, INDEMNIFICATION ................................................... 64

I.      RETENTION OF PROFESSIONALS .................................................. 66

J.      PRESERVATION OF ALL CAUSES OF ACTION ............................ 66

ii

      

K.     SUCCESSORS ...................................................................... 67

ARTICLE 9. DISTRIBUTIONS UNDER THIS PLAN ............................................ 67

A.     TIMING OF DISTRIBUTIONS .......................................... 67

B.     RESERVES ......................................................................... 69

C.     DISTRIBUTION CALCULATIONS ................................... 72

D.     PAYMENT IN FULL OF UNSECURED CLAIMS............................. 73

E.     MANNER OF DISTRIBUTION ......................................... 75

F.     DE MINIMIS DISTRIBUTIONS ....................................... 75

G.     DELIVERY OF DISTRIBUTIONS .................................... 75

H.     UNDELIVERABLE DISTRIBUTIONS ............................. 76

I.     SETOFFS AND RECOUPMENTS ..................................... 76

J.     DISTRIBUTIONS IN SATISFACTION; ALLOCATION ................... 77

K.     CANCELLATION OF NOTES AND INSTRUMENTS ...................... 77

L.     NO INTEREST ON CLAIMS .............................................. 78

M.     WITHHOLDING TAXES ................................................... 79

N.     REPORTS ............................................................................ 79

ARTICLE 10. PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED
CLAIMS ............................................................................................. 79

A.     RESERVATION OF RIGHTS TO OBJECT TO CLAIMS ................. 79

B.     OBJECTIONS TO CLAIMS AND INTERESTS ............... 80

C.     SERVICE OF OBJECTIONS .............................................. 81

D.     DETERMINATION OF CLAIMS ...................................... 81

E.     NO DISTRIBUTIONS PENDING ALLOWANCE............................. 82

F.     CLAIM ESTIMATION ...................................................... 82

G.     ALLOWANCE OF CLAIMS SUBJECT TO SECTION 502 OF
THE BANKRUPTCY CODE ............................................. 83

ARTICLE 11. EXECUTORY CONTRACTS AND UNEXPIRED LEASES; D&O
OBLIGATIONS AND EMPLOYEE BENEFIT PLANS ................. 83

A.     REJECTION OF UNASSUMED EXECUTORY CONTRACTS
AND UNEXPIRED LEASES .............................................. 83

B.     REJECTION OF D&O INDEMNIFICATION OBLIGATIONS .......... 83

C.     REJECTION EMPLOYEE BENEFIT PLANS ................... 84

D.     REJECTION DAMAGES BAR DATE ............................... 84

E.     INSURANCE POLICIES ................................................... 85

ARTICLE 12.  EFFECT OF CONFIRMATION AND INJUNCTION ................................... 86

    A.    PLAN INJUNCTION ........................................................................... 86

    B.    CONTINUATION OF EXISTING INJUNCTIONS AND STAYS ....... 87

    C.    EXCULPATION ................................................................................. 88

    D.    BINDING EFFECT OF PLAN ........................................................... 89

    E.    NO EFFECT ON OBJECTIONS TO FEE APPLICATIONS ............... 89

ARTICLE 13.  CONDITIONS PRECEDENT ........................................................................ 89

    A.    CONDITIONS PRECEDENT TO EFFECTIVE DATE ...................... 89

    B.    REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION OF PLAN ......................................................................................... 90

ARTICLE 14.  ADMINISTRATIVE PROVISIONS .............................................................. 91

    A.    RETENTION OF JURISDICTION ..................................................... 91

    B.    GENERAL AUTHORITY .................................................................. 94

    C.    FINAL ORDER .................................................................................. 94

    D.    AMENDMENTS AND MODIFICATIONS ......................................... 94

    E.    PAYMENT DATE .............................................................................. 95

    F.    WITHHOLDING AND REPORTING REQUIREMENTS ................... 95

    G.    NO WAIVER ..................................................................................... 95

    H.    TAX EXEMPTION ............................................................................ 95

    I.    SECURITIES EXEMPTION .............................................................. 96

    J.    NON-SEVERABILITY ...................................................................... 96

    K.    REVOCATION .................................................................................. 96

    L.    CONTROLLING DOCUMENTS ....................................................... 96

    M.    GOVERNING LAW ........................................................................... 97

    N.    NOTICES ........................................................................................... 97

    O.    FILING OF ADDITIONAL DOCUMENTS ........................................ 99

    P.    DIRECTION TO A PARTY ................................................................ 99

    Q.    SUCCESSORS AND ASSIGNS .......................................................... 99

    R.    FINAL DECREE ................................................................................ 99

ARTICLE 15.  CONFIRMATION REQUEST ........................................................................ 99

ARTICLE 16.  BANKRUPTCY RULE 9019 REQUEST ...................................................... 100

ARTICLE 17.  SPECIAL PROVISIONS CONCERNING BORROWERS AND
             BORROWER CLAIMS ................................................................................. 100

    A.      SCOPE OF THIS ARTICLE; INTERPRETATION ........................... 100

    B.      MORTGAGE LOANS REMAIN SUBJECT TO CERTAIN
             CLAIMS AND DEFENSES ................................................................ 100

    C.      DEFENSES, NONMONETARY REMEDIES, AND SETOFF
             RIGHTS OF BORROWERS UNAFFECTED BY BAR DATES ........ 101

    D.      RIGHTS OF BORROWERS AGAINST NON-DEBTOR
             PARTIES................................................................................................ 101

    E.      MODIFICATION OF INJUNCTIONS AND STAYS FOR
             BORROWERS ....................................................................................... 102

    F.      OBJECTIONS TO BORROWER CLAIMS........................................ 103

    G.      CONSIDERATION OF LOAN MODIFICATION REQUESTS ......... 103

    H.      BORROWER INFORMATION OMBUDSMAN ............................... 104

## INTRODUCTION

American Home Mortgage Holdings, Inc., American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc., AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), American Home Mortgage Corp., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp., the debtors and debtors in possession in the above-captioned chapter 11 cases, propose this Chapter 11 Plan of Liquidation pursuant to the provisions of the Bankruptcy Code.  The Debtors and the Creditors Committee (as defined herein) have engaged in extensive collaborative efforts on all material aspects of the Plan and the Creditors Committee supports approval of the Plan.

## ARTICLE 1.

## DEFINITIONS

**A.      DEFINED TERMS.**  For purposes of the plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this Article 1 of the Plan.  Any term used in the Plan that is not defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.  Whenever the context requires, such terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine.

"*ACH*" means an automated clearing house transfer from a domestic bank.

"*Administrative Claim*" means a Claim for costs and expenses of administration that is allowable and entitled to priority under §§ 503, 507(a)(2) and/or 507(b) of the Bankruptcy Code, including, without limitation, any post-petition tax claims, any actual and necessary expenses of preserving the Estate of any of the Debtors, any actual and necessary expenses of operating the business of any of the Debtors, all Professional Claims, and any fees or charges assessed against the Estate of any of the Debtors under 28 U.S.C. § 1930.

1

"*Administrative Claim Bar Date*" means the date or dates fixed by the Bankruptcy Court as the last date for filing a request for payment of an Administrative Claim (excluding any Professional Claim and Intercompany Claim), as set forth in Article 3 of this Plan, that is not subject to any other Bar Date Orders or any other Order that establishes the last date for filing such Administrative Claim.  The Plan does not affect or extend any Administrative Claim deadline established by any other Order and the earliest Administrative Claim deadline applicable to any Administrative Claim shall govern and control.

"*Administrative Claim Objection Deadline*" shall have the meaning set forth in Article 3B(2)(ii) of this Plan.

"*Affiliate*" means any Person that is an "affiliate" of any of the Debtors within the meaning of section 101(2) of the Bankruptcy Code.

"*AHM Acceptance*" means American Home Mortgage Acceptance, Inc.

"*AHM Corp.*" means American Home Mortgage Corporation.

"*AHM Holdings*" American Home Mortgage Holdings, Inc.

"*AHM Investment*" means American Home Mortgage Investment Corp.

"*AHM SV*" means AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.).

"*AHM Ventures*" means American Home Mortgage Ventures LLC.

"*Allowed*" when used with respect to a Claim against a Debtor or property of a Debtor, means a Claim: (a) which has been listed on the Schedules of any of the Debtors as other than disputed, contingent or unliquidated and as to which no proof of Claim or objection has been timely filed; (b) as to which a proof of Claim has been timely filed, or deemed timely filed by order of the Bankruptcy Court, and either (i) no objection thereto has been timely filed, or application to subordinate or otherwise limit recovery has been made or (ii) the Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court; (c) which has been allowed under the provisions of this Plan; (d) which is a Professional Claim for which a fee award amount has been approved by Final Order of the Bankruptcy Court; or (e) which is allowed pursuant to any stipulation of amount and nature of Claim executed by the Plan Trustee and Holder of the Claim on or after the Effective Date.  To the extent the term "Allowed" is used in the Plan with respect to a specified Class of Claims or an unclassified category of Claims (i.e., "Allowed [Class designation/unclassified Claim category] Claim"), the resulting phrase shall mean an Allowed Claim of the specified Class or unclassified category of Claims.

"*Assets*" of the Debtors, Estates, or the Plan Trust means, collectively, any and all property of the Debtors, the Estates, or the Plan Trust, respectively, of every kind and character, wherever located, whether real or personal, tangible or intangible, and including, without limitation: (i) Cash (including, without limitation, the residual balance of any reserves established under this Plan), (ii) Causes of Action (including, without

limitation, Designated Causes of Action and Avoidance Actions), (iii) stock, membership, partnership, or beneficial interests in any Debtor or non-Debtor Entity (iv) Mortgage Loans and Servicing Rights, (v) mortgage-backed securities and any residual interest therein, or in any securitization trust issuing such securities, (vi) the Mt. Prospect Office Property, and (vii) all files, books, and records relating to the Debtors' business, the Plan Trust, or the administration of the Plan, including, without limitation, the product of any analysis or investigation by the Debtors or the Creditors Committee.

"*Avoidance Action*" means all Claims and Causes of Action arising or brought under sections 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

"*Ballot*" means the ballot, the form of which has been approved by the Bankruptcy Court, accompanying the Disclosure Statement provided to each Holder of a Claim entitled to vote to accept or reject this Plan or make another election for treatment of such Claim under this Plan.

"*Bankruptcy Code*" means title 11 of the United States Code, §§ 101-1532, as now in effect or as hereafter amended.

"*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over the Chapter 11 Cases.

"*Bankruptcy Rules*" means, as the context requires, the Federal Rules of Bankruptcy Procedure applicable to these Chapter 11 Cases and/or the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"*Bar Date*" means the date or dates established by the Bankruptcy Court as the last date for filing proofs of claim against the Debtors, including those Bar Dates established pursuant to the following Bar Date orders: (i) *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1708] and (ii) *Order Pursuant to Bankruptcy Rule 3003(c)(3) and Local Rule 2001-1(e) Establishing a Bar Date for Filing Proofs of Claim by Construction Loan and HELOC Borrowers and Approving the Form and Manner of Notice Thereof* [Docket No. 2987]. The Plan does not affect or extend any date established by any other Order and the earliest date applicable to the filing or assertion of any Claim shall govern and control.

"*BofA as Administrative Agent*" means Bank of America, N.A., in its capacity as Administrative Agent under the BofA Syndicate Credit Agreement.

"*BofA/Committee Settlement Stipulation*" means the *Order Granting Joint Motion of the Official Committee of Unsecured Creditors and Bank of America, N.A., as Administrative Agent, for Entry of Final Stipulation and Order Resolving All Remaining Issues with Respect to the Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* entered April 14, 2008 [Docket No. 3699].

"*BofA Global Settlement Stipulation*" means the *Order Approving Stipulation of Settlement Among (i) the Debtors, (ii) Bank of America, N.A., as Administrative Agent, and (iii) the Official Committee of Unsecured Creditors and Granting Related Relief* entered August 5, 2008, including Exhibit 1 thereto [Docket Nos. 5308 & 5333].

"*BofA Mortgage Loans*" means the "Mortgage Loans" as defined in the BofA Global Settlement Stipulation.

"*BofA Syndicate*" means, collectively, BofA as Administrative Agent and certain other lenders party to the BofA Syndicate Credit Agreement and their successors and assigns.

"*BofA Syndicate Credit Agreement*" means that certain Second Amended and Restated Credit Agreement dated as of August 10, 2006, by and among AHM Investment, AHM SV, AHM Corp. and AHM Acceptance, as Borrowers, Bank of America, N.A., as Administrative Agent, Swing Line Lender, and a Lender, certain other lenders, as Lenders, Calyon New York Branch and Deutsche Bank Securities, Inc., as Co-Syndication Agents, Citibank, N.A., JPMorgan Chase Bank, N.A., and Merrill Lynch Bank USA, as Co-Documentation Agents, and Banc of America Securities LLC, as Sole Lead Arranger and Sole Book Manager, as amended, restated, modified or supplemented from time to time.

"*BofA Syndicate Loan Documents*" means the BofA Syndicate Credit Agreement, together with all other documents, including credit and security agreements, executed in connection therewith.

"*BofA Syndicate Net Distributable Assets*" means Net Distributable Assets excluding from the calculation thereof any Designated REO Assets.

"*BofA Syndicate Secured Claim*" means the Secured Claims of the BofA Syndicate arising under the BofA Syndicate Loan Documents governed by the BofA Global Settlement Stipulation.

"*BofA Syndicate Unsecured Claim*" means the Unsecured Claims of the BofA Syndicate arising under the BofA Syndicate Loan Documents governed by the BofA Global Settlement Stipulation.

"*Borrower Claim*" means a Claim of a borrower arising from or relating to any act or omission of any Debtor in connection with the origination, sale, or servicing of a mortgage loan originated, sold, or serviced by any Debtor.

"*Borrowers Committee*" means the official committee of borrowers appointed in these Chapter 11 Cases, as such committee may be constituted from time to time.

"*Breach Determination Date*" means, with respect to a given pool of loans, (a) the date such loans were purchased from the Debtors or (b) for loans purchased from a non-Debtor entity, the date the claimant obtained rights to enforce the Debtors' sale representations and warranties with respect to such pool of loans.

4

"*Breach of Warranty Claim*" means a Claim (other than an EPD Claim) for breach of a representation or warranty arising under any provision or provisions of a loan purchase agreement with respect to a given loan.

"*Business Day*" means any day that is not a Saturday, a Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

"*Cash*" means cash or cash equivalents, including but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

"*Cash Collateral Order*" means the *Final Order (I) Authorizing Debtors' Limited Use of Cash Collateral and (II) Granting Replacement Liens and Adequate Protection to Certain Pre-Petition Secured Parties* entered September 4, 2007 [Docket No. 554] as subsequently amended [Docket Nos. 2002, 2284, 2855, 3142, 3172, 3264, and 3505].

"*Cash Management Order*" means the *Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code* entered August 7, 2007 [Docket No. 66].

"*Causes of Action*" means, except as provided otherwise in the Plan, the Confirmation Order or any document, instrument, release or other agreement entered into in connection with the Plan, all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party claims, counterclaims and cross claims of the Debtors and/or their Estates, the Creditors Committee or the Plan Trustee, as successor to the Debtors and/or their Estates or the Creditors Committee, including without limitation, an action that is or may be pending on the Effective Date or instituted by the Plan Trustee after the Effective Date against any Person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown, including, without limitation, Designated Causes of Action and Avoidance Actions; provided, however, that any affirmative defense or crossclaim asserted with respect to a Claim shall not be deemed a Cause of Action to the extent that it seeks to disallow or reduce, or is offset against, such Claim.

"*Chapter 11 Cases*" means, collectively, the chapter 11 cases pending for the Debtors in the Bankruptcy Court and jointly administered as case number 07-11047 (CSS).

"*Claim*" means "claim" as such term is defined in Section 101(5) of the Bankruptcy Code and, except as otherwise provided in the context, means a claim against any of the Debtors or their Estates, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured or unsecured; or (b)

any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and including, without limitation, any Claim, which any Affiliate may have against another Affiliate.

"*Class*" means a category of Holders of Claims or Interests as set forth in Article 2 of the Plan pursuant to Bankruptcy Code section 1122.

 "*Confirmation*" means the entry of the Confirmation Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

"*Confirmation Hearing*" means the hearing or hearings before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of this Plan.

"*Confirmation Order*" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified or supplemented.

"*Cramdown Plan*" means this Plan if confirmed by the Bankruptcy Court pursuant to section 1129(b) of the Bankruptcy Code.

"*Creditor*" means "creditor" as defined in section 101(10) of the Bankruptcy Code and shall refer to any Holder of a Claim against any Debtor or Holder of any Claim against property of any Debtor as defined in section 102(2) of the Bankruptcy Code.

"*Creditors Committee*" means the official committee of unsecured creditors appointed in these Chapter 11 Cases, as such committee may be constituted from time to time.

"*De Minimis Distribution*" shall have the meaning set forth in Article 9F of this Plan.

"*Debt*" means liability on a Claim.

"*Debtors*" means, collectively, AHM Holdings, AHM Investment, AHM Acceptance, AHM SV, AHM Corp., AHM Ventures, Homegate, and Great Oak.

"*Debtors in Possession*" means the Debtors in the capacity and with the status and rights conferred by sections 1107 and 1108 of the Bankruptcy Code.

"*Deficiency Claim*" means, with respect to a Claim that is partially secured by a Lien on, or security interest in, property of any of the Debtors, or that has the benefit of partial rights of setoff under § 553 of the Bankruptcy Code, the amount by which the Allowed amount of such Claim exceeds the value of the property of the Debtors securing such

6

Claim or the amount subject to setoff, as applicable, as determined by the Bankruptcy Court pursuant to §§ 506(a), 553, and/or 1129(b)(2)(A)(i)(II) of the Bankruptcy Code.

"*Designated Causes of Action*" means, collectively, as more fully described in the Disclosure Statement: (i) any Cause of Action against a director or officer of any Debtor arising from such director's or officer's tortious conduct toward, breach of a contract with, or breach of a duty of care, loyalty, or good faith owed to, such Debtor, (ii) any Cause of Action arising from or relating to any party's exercise of remedies under a repo, swap, or warehouse credit agreement; and (iii) any pending Cause of Action.

"*Designated REO Assets*" means, collectively, (i) the REO held in trust for the benefit of unsecured Creditors of the Debtors pursuant to the BofA/Committee Settlement Stipulation and the BofA Global Settlement Stipulation, (ii) any traceable Cash proceeds thereof, and (iii) any Cash proceeds borrowed and replenished pursuant to Stipulation and Order Regarding Debtors' Use of Certain Estate Funds [Docket No. 5311].

"*DIP Facility Claim*" means a claim by the DIP Lender against the borrowers under the DIP Loan Agreement.

"*DIP Lender*" means WLR Recovery Fund III, L.P., in its capacity as lender and administrative agent under the DIP Loan Agreement, and such other lenders that may be parties to the DIP Loan Agreement.

"*DIP Loan Agreement*" means the Debtor-In-Possession Loan and Security Agreement dated as of August 6, 2007, the First Amendment Agreement dated as of January 4, 2008, the Second Amendment Agreement dated as of August 5, 2008, each as may be further amended, supplemented or modified from time to time, by and among AHM Investment, AHM Holdings, AHM Corp., AHM Acceptance, AHM Ventures, Great Oak and Homegate, as borrowers, and the DIP Lender, as lender(s).

"*DIP Order*"  means, collectively, the *Final Order Pursuant to Sections 105(a), 362, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014: (A) Approving Debtor-In-Possession Financing, (B) Granting Liens and Allowing Superpriority Administrative Claims, and (C) Granting Related Relief* [Docket No. 555], the *Order Approving And Authorizing the Amendment To Post-Petition Debtor-In-Possession Financing Facility* [Docket No. 2594], the *Interim Order (I) Authorizing And Approving The Second Amendment To Post-Petition Debtor-In-Possession Financing Facility Pursuant To Sections 105, 363 And 364 Of The Bankruptcy Code; (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(C); And (III) Granting Related Relief* [Docket No. 5307], the *Final Order (I) Authorizing And Approving The Second Amendment To Post-Petition Debtor-In-Possession Financing Facility Pursuant To Sections 105, 363 And 364 Of The Bankruptcy Code; (II) Scheduling A Final Hearing Pursuant To Bankruptcy Rule 4001(C); And (III) Granting Related Relief* [Docket No. 5460], and any further Orders entered with respect to the DIP Loan Agreement.

"*Disallowed*" when used with respect to a Claim against a Debtor or property of a Debtor, means a Claim or any portion thereof that (i) has been disallowed by Final Order,

(ii) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iii) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order of the Bankruptcy Court or otherwise deemed timely filed under applicable law or this Plan, (iv) has been withdrawn by agreement of the Debtors and the Holder thereof, or (v) has been withdrawn by the Holder thereof.

"*Disclosure Statement*" means the disclosure statement for the Plan approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017 (including all schedules and exhibits thereto), as such disclosure statement may be amended or modified from time to time.

"*Disputed*" when used with respect to a Claim against a Debtor or property of a Debtor, means a Claim to the extent that: (a) the allowance of such Claim is the subject of an objection, appeal or motion to estimate that has been timely filed by a party in interest and which objection, appeal or motion has not been determined by a Final Order, or (b) during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such Claim, such Claim is in excess of the amount Scheduled as other than disputed, unliquidated or contingent.  In the event that any part of a Claim is Disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distribution under this Plan unless the Debtors or the Plan Trustee, as applicable, and the Holder thereof agree otherwise.  To the extent the term "Disputed" is used in the Plan with respect to a specified Class of Claims or an unclassified category of Claims (i.e. "Disputed [Class designation/unclassified Claim category] Claim"), the resulting phrase shall mean a Disputed Claim of the specified Class or unclassified category of Claims.

"*Distribution*" means any distribution to or on account of the Holder of a Claim against a Debtor.

"*Effective Date*" means the Business Day on which this Plan becomes effective pursuant to Article 13 of this Plan; provided however, that if any stay or injunction against enforcement or execution of the Confirmation Order is issued prior to the date that would otherwise be the Effective Date, the Effective Date shall be the first Business Day after all such stays or injunctions are no longer in effect.

"*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

"*EPD*" means early payment default.

"*EPD Claim*" means (i) a Claim arising from any provision or provisions in a loan purchase agreement that obligated a Debtor to repurchase a loan if the borrower defaulted on a payment due within either a specified period of time or a specified number of payments after the loan was sold or (ii) a Securitization EPD Representation Claim.  The

EPD repurchase obligations are typically set forth as stand-alone provisions or among the representations and warranties in loan purchase agreements. Any EPD repurchase obligations contained in a loan purchase agreement in any form shall be treated as EPD Claims for all purposes under the Plan.

"*EPD/Breach Claims*" means, collectively, EPD Claims and Breach of Warranty Claims.

"*EPD/Breach Claims Protocol*" means the protocol set forth in Article 7 of this Plan, by which the amount of damages for EPD/Breach Claims are calculated.

"*EPD Determination Date*" means July 31, 2008.

"*Estate*" means, (i) when used in reference to time periods prior to the Effective Date, the estate created in the Chapter 11 Cases for each respective Debtor pursuant to section 541 of the Bankruptcy Code, and (ii) when used in reference to time periods subsequent to (and including) the Effective Date, the Assets that are distributable to Creditors of each respective Debtor in accordance with the Plan.

"*Executory Contract*" means any executory contract or unexpired lease subject to section 365 of the Bankruptcy Code, between any Debtor and any other Person.

"*Exculpated Parties*" means, collectively, (i) the Debtors, the Plan Trustee, the Estates, the Plan Trust, the Creditors Committee, the Borrowers Committee, the Plan Oversight Committee, and the Indenture Trustees, and (ii) the respective officers, directors, employees, members, attorneys, crisis managers, financial advisors, and professionals of a party identified in the immediately preceding clause, other than David Friedman.

"*Fee Application*" means an application filed with the Bankruptcy Court in accordance with the Bankruptcy Code and Bankruptcy Rules for payment of a Professional Claim.

"*File," "Filed" or "Filing"* means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

"*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek *certiorari* or move for a new trial, reargument or rehearing has expired, and no appeal or petition for *certiorari* or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which *certiorari* was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

"*Great Oak*" means Great Oak Abstract Corp.

*"Holder"* means an Entity holding a Claim or Interest or any authorized agent who has completed, executed and delivered a Ballot in accordance with the applicable voting instructions.

"*Homegate*" means Homegate Settlement Services, Inc.

"*Impaired*" means "impaired" within the meaning of § 1124 of the Bankruptcy Code.

"*Indenture Trustees*" means, collectively, (i) Wilmington Trust Company, in its capacity as Trustee for certain Subordinated Trust Preferred Indentures, and (ii) Law Debenture Trust Company of New York, in its capacity as Successor Trustee for certain Subordinated Trust Preferred Indentures.

"*Indenture Trustee Expenses*" means the reasonable compensation of the Indenture Trustees, including the fees and expenses of their counsel, agents and advisers, whether incurred prior or subsequent to the Petition Date, or prior or subsequent to the Effective Date, subject to the Senior Unsecured Claim Procedures set forth in Article 4I(3) of this Plan

"*Intercompany Claim*" means any Claim of a Debtor against another Debtor, whether accruing before or after the Petition Date, including, but not limited to: (i) any Claim arising pursuant to the Cash Management Order on account of post-Petition Date transfers of Cash between Debtors, (ii) any Claim for reimbursement arising from one Debtor's (A) payment as guarantor or surety, of the Debt(s) of another Debtor, or (B) payment or other satisfaction of the Debt(s) or expense(s) of another Debtor, and (iii) any Claim for contribution of a Debtor arising from such Debtor's payment of a disproportionate share of (A) a joint-and-several liability with one or more other Debtor(s) or (B) expenses that were properly allocable between multiple Debtors.

"*Interest*" means, with respect to any Debtor, any "equity security," as such term is defined in Bankruptcy Code section 101(16). Interests shall also include, without limitation, all stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any equity interest in any Debtor.

"*IRC*" means the Internal Revenue Code of 1986, as amended.

"*IRS*" means the Internal Revenue Service.

*"JPM"* means JPMorgan Chase Bank, N.A.

*"JPM Credit Agreement"* means that certain Senior Secured Credit Agreement by and among AHM Investment, AHM Corp., JPM, and other Lender(s) party thereto, dated as of January 23, 2006.

*"JPM Loan Portfolio"* means, collectively, those Mortgage Loans that serve as collateral for the JPM Credit Agreement.

10

"*JPM Loan Documents*" means the JPM Credit Agreement, together with all other documents executed in connection therewith.

"*JPM Secured Claim*" means the Secured Claim of JPM arising under the JPM Loan Documents.

"*Lien*" means any mortgage, lien, pledge, security interest or other charge or encumbrance or security device of any kind in, upon, or affecting any Asset of a Debtor as contemplated by § 101(37) of the Bankruptcy Code.

"*Liquidation Analysis*" means liquidation analysis annexed to or incorporated into the Disclosure Statement.

"*Maturity Date*" means, with respect to any Claim arising pursuant to a written agreement, the maturity date of such Claim under such agreement, without acceleration, and determined without reference to any default under such agreement(s).

"*Miscellaneous Secured Claims*" against a Debtor means, collectively, all Secured Claims that are not specifically identified in the Plan as, e.g., the "[Name of Creditor] Secured Claim".

"*Mortgage Loans*" means, collectively, all residential mortgage loans (other than the BofA Mortgage Loans) that constitute property of any Estate.

"*Mt. Prospect Office Property*" means that certain office building located at 950 North Elmhurst Road, Mt. Prospect, Illinois 60056 and owned by AHM Corp.

"*Net Distributable Assets*" shall have the meaning set forth in Article 9C of this Plan

"*Order*" means any order entered by the Bankruptcy Court in connection with the Debtors' Chapter 11 Cases.

"*Person*" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

"*Petition Date*" means August 6, 2007, the date on which each Debtor commenced its Chapter 11 Case by filing a petition for relief under chapter 11 of the Bankruptcy Code.

"*Plan*" means this chapter 11 liquidating plan, either in its present form or as it may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

"*Plan Oversight Committee*" means the post-confirmation committee formed on the Effective Date, selected by the Creditors Committee and identified by the Debtors in a Supplemental Plan Document.

"*Plan Trust*" means the trust created pursuant to the Plan Trust Agreement on the Effective Date in accordance with this Plan, the Confirmation Order and the Plan Trust Agreement, the purposes of which include, without limitation: (i) to receive the Assets of each Debtor for the benefit of the Holders of Claims against each of the Debtors under this Plan and otherwise to act as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d); (ii) to collect and sell, dispose, or otherwise realize value of any kind whatsoever in respect of each Debtor's Assets; (iii) to preserve and distribute the consideration to be distributed to Holders of Claims against each of the Debtors pursuant to the Plan, the Plan Trust Agreement, the Confirmation Order, and such other Orders as may be entered by the Bankruptcy Court; (iv) to prosecute or settle objections to Disputed Claims against each of the Debtors; (v) to prosecute or settle Causes of Action (including, without limitation, Designated Causes of Action and Avoidance Actions) for the benefit of Creditors of each of the Debtors; and (vi) to perform all other obligations pursuant to this Plan, the Plan Trust Agreement, and any other Orders entered by the Bankruptcy Court.  For the avoidance of doubt, references in this Plan to "the Plan Trust" shall be construed as "the Plan Trustee, for the benefit of holders of beneficial interests in the Plan Trust" as the context requires.

"*Plan Trustee*" means the Person appointed to act as trustee of the Plan Trust in accordance with the terms of this Plan, the Confirmation Order, and the Plan Trust Agreement, or any successor appointed in accordance with the terms of this Plan, Confirmation Order and the Plan Trust Agreement.  The Plan Trustee shall be selected by and at the sole discretion of the Creditors Committee, in consultation with the Debtors.

"*Plan Trust Agreement*" means the form of trust agreement for the Plan Trust, to be filed by the Debtors with the Bankruptcy Court as a Supplemental Plan Document.

"*Plan Trust Assets*" means, collectively, (i) the Assets of the Debtors contributed to the Plan Trust in accordance with Article 8E(2) hereof and (ii) any proceeds of any BofA Mortgage Loans to which the Debtors' Estates are (or become) entitled pursuant to the BofA Global Settlement Stipulation, or (iii) any proceeds of any other property to which the Debtors' Estates are (or become) entitled pursuant to any other settlement, stipulation, Order of the Bankruptcy Court, or otherwise.

"*Plan Trust Operating Expenses*" means any and all costs and expenses incurred in connection with the administration of the Plan Trust, including litigation expenses and professional fees, pursuant to the Plan, Confirmation Order, and Plan Trust Agreement.

"*Plan Trust Operating Expense Reserve*" means the reserve established in accordance with Article 9B(1) herein for the payment of Plan Trust Operating Expenses, which reserve may be augmented by the Plan Trustee as set forth in the Plan and the Plan Trust Agreement.

"*Plan Trust Professionals*" means the Plan Trustee, counsel to the Plan Trustee, counsel to the Plan Oversight Committee, and such other professionals retained by the Plan Trustee or the Plan Oversight Committee to assist in the administration and all other

duties of the Plan Trust or the Plan Oversight Committee, including, without limitation, commencing and prosecuting the Causes of Action and claims reconciliation process.

"*PNB*" means Park National Bank.

"*PNB Secured Claim*" means the Claim of PNB against AHM Corp. secured by the Mt. Prospect Office Property.

"*Priority Claim*" means a Claim to the extent that it is of the kind described in, and entitled to priority under sections 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

"*Priority Tax Claim*" means a Claim of a governmental unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

"*Professional*" means any professional employed or to be compensated pursuant to §§ 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

"*Professional Claim*" means a Claim for compensation for services and/or reimbursement of expenses pursuant to §§ 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with an application made to the Bankruptcy Court in the Chapter 11 Cases.

"*Proof of Claim*" means a proof of claim filed in the Chapter 11 Cases pursuant to section 501 of the Bankruptcy Code and/or pursuant to any order of the Bankruptcy Court, together with supporting documents.

"*Pro Rata*" means, with respect to any distribution on account of any Allowed Claim in any Class, the ratio of (a) the amount of such Allowed Claim to (b) the sum of (i) all Allowed Claims in such Class and (ii) the aggregate maximum allowable amount of all Disputed Claims in such Class for which a reserve must be established under the Plan.

"*Protected Party*" means any of the Plan Trustee, the Estates, the Plan Trust, and the Plan Oversight Committee.

"*Putative Senior Unsecured Claim*" means any Class 1C(1) or 2C(1) Claim on account of which the Holder thereof timely files a Subordination Statement in accordance with Article 4I(3)(a) hereof.

"*REO*" means real estate owned.

"*S/A/P Claims*" means, collectively, Miscellaneous Secured Claims, Administrative Claims (including, without limitation, Professional Claims), Priority Claims, and Priority Tax Claims.

"*S/A/P Claims Reserve*" means the reserve established in accordance with Article 9B(2) of this Plan for the payment of (i) all Allowed S/A/P Claims to the extent such Claims are not paid on the Effective Date and (ii) any Disputed S/A/P Claim to the extent such Claim becomes an Allowed S/A/P Claim.

"*Scheduled*" means, with respect to any Claim, that such Claim is listed on the Schedules.

"*Schedules*" means each Debtor's schedules of assets and liabilities filed with the clerk of the Bankruptcy Court pursuant to pursuant to § 521(a) of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"*SEC*" means the United States Securities and Exchange Commission.

"*SEC Form 15*" means a Certification and Notice of Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or Suspension of Duty to File Reports under Sections 13 and 15(d) of the Securities and Exchange Act of 1934, in such form as prescribed by the SEC.

"*SEC Rule*" refers to the General Rules and Regulations under the Securities Exchange Act of 1934, as amended from time to time.

"*Secured Claim*" means a Claim that is secured by a Lien on, or security interest in, property of any of the Debtors, or that has the benefit of rights of setoff under § 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined by the Bankruptcy Court pursuant to §§ 506(a), 553, and/or 1129(b)(2)(A)(i)(II) of the Bankruptcy Code, as applicable.

"*Securitization EPD Representation Claim*" means a Claim asserted by or on behalf of a securitization trust, arising from the breach of any representation in a loan purchase agreement that obligated a Debtor to repurchase a loan if the loan was in payment default at or prior to the time it was sold to the trust (for such time periods as are specified in the relevant securitization documents).

"*Senior Unsecured Claim*" means any Class 1C(1), 1C(2), 2C(1), or 2C(2) Claim that arises from an obligation that comes within the definition of "Senior Debt" or "Senior Indebtedness" (as applicable) in one or more of the Subordinated Trust Preferred Indentures, to the extent such Claim is an Allowed Claim.

"*Senior Unsecured Claims Reserve*" means, with respect to a given Estate, the reserve established by the Plan Trustee pursuant to Article 4I(3)(b) hereof for the benefit of Holders of Senior Unsecured Claims against such Estate.

"*Servicer*" means (i) with respect to the Mortgage Loans or any subset thereof, the servicer, sub-servicer or interim servicer of such loans pursuant to the applicable mortgage loan servicing agreement, and (ii) with respect to residential mortgage loans owned by a non-Debtor Entity but for which one or more Debtors holds the right to designate the servicer or sub-servicer, the servicer or sub-servicer so designated by the applicable Debtor(s).

"*Servicing Advances*" means all customary, reasonable and necessary "out of pocket" costs and expenses incurred in the performance by the Servicer of its servicing obligations.

"*Servicing Fees*" means (i) with respect to the Mortgage Loans or any subset thereof, the servicing fees and any and all income, revenue, fees, expenses, charges or other moneys permitted to be received, collected, and retained by the Servicer pursuant to the applicable mortgage loan servicing agreement, and (ii) with respect to residential mortgage loans owned by a non-Debtor Entity but for which one or more Debtors holds the Servicing Rights, the servicing fees and any and all income, revenue, fees, expenses, charges or other moneys permitted to be received, collected, and retained by the Servicer pursuant to the agreement governing such Servicing Rights.

"*Servicing Rights*" means, (i) with respect to the Mortgage Loans or any subset thereof, the right to service such Mortgage Loans, or to designate the servicer of such Mortgage Loans, on substantially the same terms and conditions set forth in the applicable mortgage loan servicing agreement, and (ii) with respect to residential mortgage loans owned by a non-Debtor Entity, the right to service and/or designate the servicer or sub-servicer of such loans on the terms set forth in the agreement governing the servicing of such loans.

"*Stipulated Asset Allocation*" means the percentage allocation between the respective Estates of the proceeds of Plan Trust Assets as provided in Article 6B of this Plan.

"*Subordinated Claim*" means any Claim (other than a Subordinated Trust Preferred Claim) that (i) is subordinate in right of payment to another Class of Claims by (a) an agreement that is enforceable pursuant to § 510(a) of the Bankruptcy Code or (b) Order of the Bankruptcy Court pursuant to §§ 509(c) or 510(c) of the Bankruptcy Code, (ii) arises from rescission of a purchase or sale of a security of any Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement of contribution allowed under § 502 of the Bankruptcy Code on account of such a Claim, or (iii) is for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages arising before the Petition Date, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

"*Subordinated Trust Preferred Claim*" means any Claim or Interest arising from or related to any note or any other security or indebtedness issued by a Debtor pursuant to or in connection with any issuance of any trust preferred security or similar instrument by AHM Capital Trust I, Baylis Trust I, Baylis Trust II, Baylis Trust III, Baylis Trust IV, Baylis Trust V, Baylis Trust VI, Baylis Trust VII, and Baylis Trust VIII.

"*Subordinated Trust Preferred Indentures*" means, collectively, the indentures pursuant to which any note or any other security or indebtedness was issued by a Debtor pursuant to or in connection with any issuance of any trust preferred security or similar instrument by AHM Capital Trust I, Baylis Trust I, Baylis Trust II, Baylis Trust III, Baylis Trust IV, Baylis Trust V, Baylis Trust VI, Baylis Trust VII, and Baylis Trust VIII.

"*Subordination Statement*" means the pleading that a Holder of a Class 1C(1) or 2C(1) Claim must file with the Bankruptcy Court no later than thirty (30) days after the Effective Date in order to assert that such Holder holds a Senior Unsecured Claim, which pleading must describe with specificity the legal and factual basis for establishing that such Holder holds a Senior Unsecured Claim and, therefore, is entitled to the benefits of subordination as set forth in the applicable Subordinated Trust Preferred Indenture(s).

"*Supplemental Plan Documents*" means, collectively, the documents included (or to be included) in the supplemental appendix to the Plan filed with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing, which appendix will contain, among other things, a list of members of the Plan Oversight Committee, a copy of the Plan Trust Agreement, the EPD/Breach Claims Questionnaire, a list of Designated Insurance Policies, and copies of the Subordinated Trust Preferred Indentures.

"*TILA*" means the Truth in Lending Act of 1968, 15 U.S.C. §§ 1601 *et seq.*, together with its implementing regulations.

"*Travelers*" means Travelers Casualty and Surety Company of America and any of its affiliates, parents and/or subsidiaries.

"*Travelers Secured Claim*" means the Secured Claim of Travelers arising from its issuance of surety bonds for the benefit of the Debtors before and after the Petition Date. The Travelers Secured Claim is secured by a Lien in $5 million of Cash, as described more fully in the Travelers Stipulation.

"*Travelers Stipulation*" means the *Order (I) Approving and Authorizing Term Sheet with Travelers Insurance; (II) Authorizing Debtors to Obtain Surety Bonds; and (III) Granting Administrative Claims* entered October 1, 2007 [Docket No. 1019].

"*UPB*" means, with respect to a loan, the unpaid principal balance of such loan as of the date specified in the Plan or an applicable Supplemental Plan Document.

"*Unimpaired*" means, with respect to a Class of Claims, that such Class is not Impaired.

"*Unsecured Claim*" means a Claim that is not a DIP Facility Claim, Secured Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Subordinated Trust Preferred Claim, or Subordinated Claim, provided that Unsecured Claims shall include, without limitation, any Deficiency Claim.

"*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

B.       **INTERPRETATION.**  For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in

16

such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (c) unless otherwise specified, all references in the Plan to Articles, Sections, Schedules and Exhibits are references to Articles, Sections, Schedules and Exhibits of or to the Plan; (d) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (e) captions and headings to Articles and Sections are inserted for ease of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (f) unless otherwise specified, the term "including" is intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to" whenever possible; and (g) the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

      **C.**     **TIME PERIODS.**  In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any act under this Plan is required to be made or performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

      **D.**     **EXHIBITS.**  All Exhibits to this Plan (including, without limitation, the Supplemental Plan Documents) are hereby incorporated by reference and made part of this Plan as if set forth fully herein.

## ARTICLE 2.

## CLASSIFICATION OF CLAIMS AND INTERESTS

      **A.**     **SUMMARY.**  The categories of Claims and Interests listed below classify Claims (except for DIP Facility Claims, Administrative Claims, and Priority Tax Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to this Plan.

17

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| **Unclassified Claims** | | |
| n/a | DIP Facility Claims, Administrative Claims, and Priority Tax Claims against all applicable Debtors. | Unimpaired - not entitled to vote |
| **Claims Against AHM Holdings** | | |
| Class 1A | Class 1A consists of Priority Claims against AHM Holdings. | Unimpaired - not entitled to vote |
| Classes 1B(1) *et seq.* | Classes 1B(1) *et seq.* consist of Miscellaneous Secured Claims against AHM Holdings. | Impaired - entitled to vote |
| Class 1C(1) | Class 1C(1) consists of Unsecured Claims against AHM Holdings other than the BofA Syndicate Unsecured Claim, Subordinated Trust Preferred Claims, and Borrower Claims. | Impaired - entitled to vote |
| Class 1C(2) | Class 1C(2) consists of the BofA Syndicate Unsecured Claim against AHM Holdings. | Impaired - entitled to vote |
| Class 1C(3) | Class 1C(3) consists of Subordinated Trust Preferred Claims against AHM Holdings. | Impaired - entitled to vote |
| Class 1C(4) | Class 1C(4) consists of Borrower Claims against AHM Holdings. | Impaired - entitled to vote |
| Class 1D | Class 1D consists of Subordinated Claims against AHM Holdings. | Impaired - not entitled to vote |
| Class 1E | Class 1E consists of Interests in AHM Holdings. | Impaired - not entitled to vote |
| **Claims Against AHM Investment** | | |
| Class 2A | Class 2A consists of Priority Claims against AHM Investment. | Unimpaired - not entitled to vote |
| Classes 2B(1)(a) *et seq.* | Classes 2B(1)(a) *et seq.* consist of Miscellaneous Secured Claims against AHM Investment. | Impaired - entitled to vote |
| Class 2B(2) | Class 2B(2) consists of the BofA Syndicate Secured Claim against AHM Investment. | Impaired - entitled to vote |
| Class 2B(3) | Class 2B(3) consists of the JPM Secured Claim against AHM Investment. | Impaired - entitled to vote |
| Class 2C(1) | Class 2C(1) consists of Unsecured Claims against AHM Investment other than the BofA Syndicate Unsecured Claim, and Subordinated Trust Preferred Claims, and Borrower Claims. | Impaired - entitled to vote |

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Class 2C(2) | Class 2C(2) consists of the BofA Syndicate Unsecured Claim against AHM Investment. | Impaired - entitled to vote |
| Class 2C(3) | Class 2C(3) consists of Subordinated Trust Preferred Claims against AHM Investment. | Impaired - entitled to vote |
| Class 2C(4) | Class 2C(4) consists of Borrower Claims against AHM Investment. | Impaired - entitled to vote |
| Class 2D | Class 2D consists of Subordinated Claims against AHM Investment. | Impaired - not entitled to vote |
| Class 2E | Class 2E consists of Interests in AHM Investment. | Impaired - not entitled to vote |
| **Claims Against AHM Acceptance** | | |
| Class 3A | Class 3A consists of Priority Claims against AHM Acceptance. | Unimpaired - not entitled to vote |
| Classes 3B(1)(a) *et seq.* | Classes 3B(1)(a) *et seq.* consist of Miscellaneous Secured Claims against AHM Acceptance. | Impaired - entitled to vote |
| Class 3B(2) | Class 3B(2) consists of the BofA Syndicate Secured Claim against AHM Acceptance. | Impaired - entitled to vote |
| Class 3B(3) | Class 3B(3) consists of the Travelers Secured Claim against AHM Acceptance. | Unimpaired - not entitled to vote |
| Class 3C(1) | Class 3C(1) consists of Unsecured Claims against AHM Acceptance other than the BofA Syndicate Unsecured Claim and Borrower Claims. | Impaired - entitled to vote |
| Class 3C(2) | Class 3C(2) consists of the BofA Syndicate Unsecured Claim against AHM Acceptance. | Impaired - entitled to vote |
| Class 3C(3) | Class 3C(3) consists of Borrower Claims against AHM Acceptance. | Impaired - entitled to vote |
| Class 3D | Class 3D consists of Subordinated Claims against AHM Acceptance. | Impaired - not entitled to vote |
| Class 3E | Class 3E consists of Interests in AHM Acceptance. | Impaired - not entitled to vote |
| **Claims Against AHM SV** | | |
| Class 4A | Class 4A consists of Priority Claims against AHM SV. | Unimpaired - not entitled to vote |

19

| CLASS | DESCRIPTION | STATUS |
|---|---|---|
| Classes 4B(1)(a) *et seq.* | Classes 4B(1)(a) *et seq.* consist of Miscellaneous Secured Claims against AHM SV. | Impaired - entitled to vote |
| Class 4B(2) | Class 4B(2) consists of the BofA Syndicate Secured Claim against AHM SV. | Impaired - entitled to vote |
| Class 4B(3) | Class 4B(3) consists of the Travelers Secured Claim against AHM SV. | Unimpaired - not entitled to vote |
| Class 4C(1) | Class 4C(1) consists of Unsecured Claims against AHM SV other than the BofA Syndicate Unsecured Claim and Borrower Claims. | Impaired - entitled to vote |
| Class 4C(2) | Class 4C(2) consists of the BofA Syndicate Unsecured Claim against AHM SV. | Impaired - entitled to vote |
| Class 4C(3) | Class 4C(3) consists of Borrower Claims against AHM SV. | Impaired - entitled to vote |
| Class 4D | Class 4D consists of Subordinated Claims against AHM SV. | Impaired - not entitled to vote |
| Class 4E | Class 4E consists of Interests in AHM SV. | Impaired - not entitled to vote |
| **Claims Against AHM Corp.** | | |
| Class 5A | Class 5A consists of Priority Claims against AHM Corp. | Unimpaired - not entitled to vote |
| Classes 5B(1)(a) *et seq.* | Classes 5B(1)(a) *et seq.* consist of Miscellaneous Secured Claims against AHM Corp. | Impaired - entitled to vote |
| Class 5B(2) | Class 5B(2) consists of the PNB Secured Claim against AHM Corp. | Impaired - entitled to vote |
| Class 5B(3) | Class 5B(3) consists of the BofA Syndicate Secured Claim against AHM Corp. | Impaired - entitled to vote |
| Class 5B(4) | Class 5B(4) consists of the JPM Secured Claim against AHM Corp. | Impaired - entitled to vote |
| Class 5B(5) | Class 5B(5) consists of the Travelers Secured Claim against AHM Corp. | Unimpaired - not entitled to vote |
| Class 5C(1) | Class 5C(1) consists of Unsecured Claims against AHM Corp. other than the BofA Syndicate Unsecured Claim and Borrower Claims. | Impaired - entitled to vote |

20

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| Class 5C(2) | Class 5C(2) consists of the BofA Syndicate Unsecured Claim against AHM Corp. | Impaired - entitled to vote |
| Class 5C(3) | Class 5C(3) consists of Borrower Claims against AHM Corp. | Impaired - entitled to vote |
| Class 5D | Class 5D consists of Subordinated Claims against AHM Corp. | Impaired - not entitled to vote |
| Class 5E | Class 5E consists of Interests in AHM Corp. | Impaired - not entitled to vote |
| **Claims Against AHM Ventures** | | |
| Class 6A | Class 6A consists of Priority Claims against AHM Ventures. | Unimpaired - not entitled to vote |
| Classes 6B(1) *et seq.* | Classes 6B(1) *et seq.* consist of Miscellaneous Secured Claims against AHM Ventures. | Impaired - entitled to vote |
| Class 6C(1) | Class 6C(1) consists of Unsecured Claims against AHM Ventures other than Borrower Claims. | Impaired - entitled to vote |
| Class 6C(2) | Class 6C(2) consists of Borrower Claims against AHM Ventures. | Impaired - entitled to vote |
| Class 6D | Class 6D consists of Subordinated Claims against AHM Ventures. | Impaired - not entitled to vote |
| Class 6E | Class 6E consists of Interests in AHM Ventures. | Impaired - not entitled to vote |
| **Claims Against Homegate** | | |
| Class 7A | Class 7A consists of Priority Claims against Homegate. | Unimpaired - not entitled to vote |
| Classes 7B(1) *et seq.* | Classes 7B *et seq.* consist of Miscellaneous Secured Claims against Homegate. | Impaired - entitled to vote |
| Class 7C(1) | Class 7C(1) consists of Unsecured Claims against Homegate other than Borrower Claims. | Impaired - entitled to vote |
| Class 7C(2) | Class 7C(2) consists of Borrower Claims against Homegate. | Impaired - entitled to vote |
| Class 7D | Class 7D consists of Subordinated Claims against Homegate. | Impaired - not entitled to vote |
| Class 7E | Class 7E consists of Interests in Homegate. | Impaired - not entitled to vote |

21

| CLASS | DESCRIPTION | STATUS |
|-------|-------------|--------|
| **Claims Against Great Oak** | | |
| Class 8A | Class 8A consists of Priority Claims against Great Oak. | Unimpaired - not entitled to vote |
| Classes 8B(1) *et seq.* | Classes 8B(1) *et seq.* consist of Miscellaneous Secured Claims against Great Oak. | Impaired - entitled to vote |
| Class 8C(1) | Class 8C(1) consists of Unsecured Claims against Great Oak other than Borrower Claims. | Impaired - entitled to vote |
| Class 8C(2) | Class 8C(2) consists of Borrower Claims against Great Oak. | Impaired - entitled to vote |
| Class 8D | Class 8D consists of Subordinated Claims against Great Oak. | Impaired - not entitled to vote |
| Class 8E | Class 8E consists of Interests in Great Oak. | Impaired - not entitled to vote |

B.       **CLASSIFICATION.**  The Claims and Interests against the Debtors shall be classified as specified above (other than DIP Facility Claims, Administrative Claims and Priority Tax Claims, which shall be treated in accordance with Article 3 below).  Intercompany Claims are incorporated in the applicable Class of Claims specified above and shall be treated in accordance with the settlement and compromise set forth in Article 6 below.  Consistent with § 1122 of the Bankruptcy Code, a Claim or Interest is classified by the Plan in a particular Class only to the extent the Claim or Interest is within the description of the Class, and a Claim or Interest is classified in a different Class to the extent it is within the description of that different Class.  This Plan does not effect a substantive consolidation of the Debtors.

1.       As set forth above, Classes 1A, 2A, 3A, 3B(3), 4A, 4B(3), 5A, 5B(5), 6A, 7A, and 8A are Unimpaired by the Plan and Holders of Claims in these Classes are conclusively presumed to have accepted the Plan.  Classes 1B(1) *et seq.*, 1C(1), 1C(2), 1C(3), 1C(4), 2B(1)(a) *et seq.*, 2B(2), 2B(3), 2C(1), 2C(2), 2C(3), 2C(4), 3B(1)(a) *et seq.*, 3B(2), 3C(1), 3C(2), 3C(3), 4B(1)(a) *et seq.*, 4B(2), 4C(1), 4C(2), 4C(3), 5B(1)(a) *et seq.*,

22

5B(2), 5B(3), 5B(4), 5C(1), 5C(2), 5C(4), 6B(1) *et seq.*, 6C(1), 6C(2), 7B(1) *et seq.*, 7C(1), 7C(2), 8B(1) *et seq.*, 8C(1) and 8C(2) are (or may be) Impaired by the Plan, and Holders of Claims or Interests in these Classes shall be entitled to vote to accept or reject the Plan. Classes 1D, 1E, 2D, 2E, 3D, 3E, 4D, 4E, 5D, 5E, 6D, 6E, 7D, 7E, 8D and 8E are Impaired by the Plan, but because Holders of Claims and Interests in these Classes are not expected to retain or receive any property under the Plan on account of such Claims and Interests, these Classes are conclusively presumed to have rejected the Plan. No Class, member of any Class, or Holder of any Claim against any Debtor shall be entitled to or receive Cash or other property allocated for distribution to any other Class or to a Holder of any other Claim, except as expressly specified in the Plan. The Plan Trustee shall not distribute any Cash or other property allocated to a Class, member of a Class, or a Holder of a Claim to any other Class, member thereof, or Holder of any other Claim, except as expressly specified in the Plan or the Confirmation Order.

2.      The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights that each Entity holding an Allowed Claim or an Allowed Interest may have in or against the Plan Trust or the Plan Trust Assets contributed by the applicable Debtor. This treatment supersedes and replaces any agreements or rights those Entities have in or against the applicable Debtor or its property. To the extent that Asset recoveries exceed expectations in an amount that would permit a Distribution to a Class of Claims or Interests that is not entitled to retain anything under the Plan, the Plan Trustee shall give effect to the priority scheme under the Bankruptcy Code and file a motion on notice to interested Holders of Claims or Interests to effectuate such Distributions. All Distributions under the Plan will be

DB02:6785650.26                                                    066585.1001

tendered to the Person holding the Allowed Claim or Allowed Interest in accordance with the terms of this Plan. EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF (I) ANY CLAIM THAT IS NOT AN ALLOWED CLAIM OR (II) ANY INTEREST.

3. ALLOWED CLAIMS AGAINST ANY ONE DEBTOR WILL BE SATISFIED SOLELY FROM THE ASSETS OF SUCH DEBTOR AND ITS ESTATE CONTRIBUTED TO THE PLAN TRUST, GIVING EFFECT TO THE STIPULATED ASSET ALLOCATION SET FORTH IN ARTICLE 6 HEREOF. NOTHING IN THE PLAN OR THE DISCLOSURE STATEMENT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE AN ADMISSION THAT ANY ONE OF THE DEBTORS IS SUBJECT TO OR LIABLE FOR ANY CLAIM AGAINST ANY OTHER DEBTOR. A CLAIM AGAINST MULTIPLE DEBTORS CO-LIABLE ON SUCH CLAIM, TO THE EXTENT ALLOWED IN EACH DEBTOR'S CASE, WILL BE TREATED AS A SEPARATE CLAIM AGAINST EACH DEBTOR'S ESTATE FOR ALL PURPOSES (INCLUDING, BUT NOT LIMITED TO, VOTING AND DISTRIBUTION, PROVIDED, HOWEVER, THAT THERE SHALL BE ONLY A SINGLE RECOVERY ON ACCOUNT OF SUCH CLAIM AND ANY DISTRIBUTION FROM AN ESTATE ON ACCOUNT OF SUCH CLAIM SHALL TAKE INTO ACCOUNT THE LEGAL EFFECT, IF ANY, OF DISTRIBUTIONS MADE OR TO BE MADE BY OTHER ESTATES ON ACCOUNT OF SUCH CLAIM PURSUANT TO THE PLAN), AND SUCH CLAIM WILL BE ADMINISTERED AND TREATED IN THE MANNER PROVIDED IN THE PLAN. NO HOLDER OF A CLAIM AGAINST MULTIPLE

DEBTORS CO-LIABLE ON SUCH CLAIM SHALL RECEIVE MORE THAN 100%

OF THE ALLOWED AMOUNT OF SUCH CLAIM.

4.      **Intercompany Claims**.  Intercompany Claims will not be separately

classified and shall be compromised and settled in full as provided in Article 6 of the

Plan.

**ARTICLE 3.**

**TREATMENT OF DIP FACILITY CLAIMS,
ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS**

As provided in § 1123(a)(1) of the Bankruptcy Code, DIP Facility Claims,

Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting

or receiving distributions under this Plan.  Rather, all such Claims shall be treated separately as

unclassified Claims on the terms set forth in this Article 3.

A.      **DIP FACILITY CLAIMS.**  All Allowed DIP Facility Claims against the

Debtors that are parties to the DIP Loan Agreement shall be satisfied (a) on or before the

Effective Date in full in Cash, or in a manner otherwise permitted or required pursuant to

the terms of the DIP Orders and the DIP Loan Agreement, or (b) on such other terms as

may be mutually agreed upon between (i) the Holders of the DIP Facility Claims and

(ii) the Debtors or the Plan Trustee.

B.      **ADMINISTRATIVE CLAIMS**

1.      **Treatment**.  Subject to (a) the bar date provisions herein and

(b) additional requirements for Professionals and certain other Entities set forth below,

each Holder of an Allowed Administrative Claim against any of the Debtors shall

receive, in full satisfaction, settlement, release and extinguishment of such Claim, as set

forth in Article 9A(1), Cash equal to the Allowed amount of such Administrative Claim,

25

unless the Holder agrees or shall have agreed to other treatment of such Claim no less favorable to the Debtors; provided, however, that any Administrative Claim (x) incurred postpetition by a Debtor in the ordinary course of its businesses or (y) arising pursuant to one or more postpetition agreements or transactions entered into by any Debtor with Bankruptcy Court approval, shall be paid or performed in accordance with the terms and conditions of the particular transaction(s) and any agreement(s) relating thereto, or as otherwise agreed by the applicable Debtor or the Plan Trustee, on the one hand, and the Holder of such Administrative Claim, on the other.  The Holder of an Allowed Administrative Claim shall not be entitled to, and shall not be paid, any interest, penalty, or premium thereon, and any interest, penalty, or premium asserted with respect to an Administrative Claim shall be deemed disallowed and expunged without the need for any further Order of the Bankruptcy Court.

2.    **Administrative Claim Bar Date (excluding Professional Claims)**

(i)    Except for Professional Claims, which are addressed below, requests for payment of Administrative Claims must be Filed and served on counsel for the Debtors, counsel for the Creditors Committee or the Plan Oversight Committee (as applicable), the Plan Trustee, and counsel for the Plan Trustee no later than (a) thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court and served, or (b) such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 30-day period.  Holders of Administrative Claims (including, without limitation, the Holders of any Claims for federal, state or local taxes, but excluding Professional Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtors, the Plan Trust or any of their property.  Notwithstanding the foregoing, any bar dates established during the course of these Chapter 11 Cases shall remain in full force and effect.

(ii)    All objections to allowance of Administrative Claims (excluding Professional Claims) must be filed by any parties in interest no later than ninety (90) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline").  The Administrative Claim

26

Objection Deadline may be initially extended for an additional ninety (90) days at the sole discretion of the Plan Trustee upon the filing of a notice of the extended Administrative Claim Objection Deadline with the Bankruptcy Court.  Thereafter, the Administrative Claim Objection Deadline may be further extended by an Order of the Bankruptcy Court, which Order may be granted without notice to any creditors.  If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline, as may be extended, such Administrative Claim will be deemed Allowed, subject to the Bankruptcy Court's discretion to extend such bar date retroactively.

3.      **Professional Claims Bar Date**

(i)      All Professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Confirmation Date (including, *inter alia*, any compensation requested by any Professional or any other Person for making a substantial contribution in the Chapter 11 Cases) shall File and serve on counsel for the Debtors or the Plan Trustee (as applicable) and counsel for the Creditors Committee or the Plan Oversight Committee (as applicable) an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Confirmation Date, no later than (a) sixty (60) days after a notice of the Effective Date is filed with the Bankruptcy Court and served, or (b) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 60-day period.

(ii)      Objections to Professional Claims or Claims of other Persons for compensation or reimbursement of expenses must be Filed and served on counsel for the Debtors or the Plan Trustee (as applicable), counsel for the Creditors Committee or the Plan Oversight Committee (as applicable), and the Professionals or other Persons to whose application the objections are addressed on or before (a) forty-five (45) days after the Professional Claims Bar Date or (b) such later date as (i) the Bankruptcy Court shall order upon application made prior to the end of such 45-day period or (ii) is agreed between the Debtors or the Plan Trustee, as applicable, and the affected Professional or other Person.

(iii)      Any professional fees incurred by the Debtors or the Creditors Committee subsequent to the Confirmation Date may be paid by the Debtors or the Plan Trust without application to or Order of the Bankruptcy Court.  The costs of the Plan Trust, including without limitation, the fees and expenses of the Plan Trustee and any Professionals retained by the Plan Trustee, shall be borne entirely by the Plan Trust.

27

**C.     STATUTORY FEES.**  All fees due and payable pursuant to 28 U.S.C. § 1930 and not paid prior to the Effective Date shall be paid in Cash from the S/A/P Claims Reserve. After the Effective Date, the Plan Trustee shall pay quarterly fees to the U.S. Trustee, in Cash from the Plan Trust Operating Expense Reserve, until the Chapter 11 Case for each applicable Debtor is (i) closed, and a final decree is entered, or (ii) converted to a case under chapter 7 of the Bankruptcy Code.  In addition, the Plan Trust shall file post-Confirmation quarterly reports in conformance with the U.S. Trustee guidelines.  The U.S. Trustee shall not be required to File a request for payment of its quarterly fees, which will be deemed Administrative Claims against the applicable Debtors and their Estates.

**D.     PRIORITY TAX CLAIMS.**  With respect to each Allowed Priority Tax Claim not paid prior to the Effective Date, at the sole option of the Plan Trustee, the Plan Trustee shall pay to each Holder of an Allowed Priority Tax Claim on account of such Allowed Priority Tax Claim, in full satisfaction, settlement, and release of such Allowed Priority Tax Claim, in Cash from the S/A/P Claims Reserve, (a) in accordance with Bankruptcy Code section 1129(a)(9)(C) and (D), equal Cash payments made on or before the last Business Day of every fiscal quarter after the Effective Date, over a period not exceeding five years after the assessment of the tax on which such Claim is based, totaling the principal amount of such Claim, plus interest on any outstanding balance of such Allowed Priority Tax Claim, calculated from the Effective Date at a rate to be determined pursuant to section 511 of the Bankruptcy Code; (b) such other treatment agreed to by the Holder of such Allowed Priority Tax Claim and the Debtors or the Plan Trustee in writing, provided such treatment is no less favorable to the liable Debtor or the Plan Trust than the treatment set forth in clause (a) hereof, or (c) payment in full as set forth in Article 9A(1) of this Plan.  The Holder of an Allowed Priority Tax Claim shall not be entitled to assess any

premium or penalty on such Claim and any asserted premium or penalty shall be deemed

disallowed and expunged under the Plan without the need for a further order of the Bankruptcy

Court.  The Plan Trustee shall have the right to pay any Allowed Priority Tax Claim, or any

remaining balance of such Claim, in accordance with the foregoing, at any time on or after the

Effective Date, without premium or penalty of any kind.  Payment of Allowed Priority Tax

Claims shall be allocated under the settlement and compromise set forth in Article 6 of the Plan.

### ARTICLE 4.

### TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

As required by the Bankruptcy Code, this Plan places Claims and Interests into various

Classes according to their right to priority and other relative rights.  This Plan specifies whether

each Class of Claims or Interests is impaired or unimpaired, and this Plan sets forth the treatment

each Class will receive.

A.    **PRIORITY CLAIMS AGAINST ALL DEBTORS (Classes 1A, 2A, 3A, 4A, 5A, 6A, 7A, and 8A).**

1.    Each of Classes 1A, 2A, 3A, 4A, 5A, 6A, 7A, and 8A, which are

Unimpaired, consist of all Allowed Priority Claims against a particular Debtor.

2.    Unless the Holder of an Allowed Priority Claim and the Debtor against

which such Claim is asserted (if prior to or on the Effective Date) or the Plan Trustee (if

after the Effective Date) agree to a different treatment, the Plan Trustee shall pay each

such Holder of an Allowed Priority Claim in full, in Cash, without interest, from the

S/A/P Claims Reserve.

**B.      MISCELLANEOUS SECURED CLAIMS AGAINST ALL DEBTORS**

**(Classes 1B(1) *et seq.*, 2B(1)(a) *et seq.*, 3B(1)(a) *et seq.*, 4B(1)(a) *et seq.*, 5B(1)(a) *et seq.*, 6B(1) *et seq.*, 7B(1) *et seq.*, and 8B(1) *et seq.*).**

1.       Classes 1B(1) *et seq.*, 2B(1)(a) *et seq.*, 3B(1)(a) *et seq.*, 4B(1)(a) *et seq.*, 5B(1)(a) *et seq.*, 6B(1) *et seq.*, 7B(1) *et seq.*, and 8B(1) *et seq.*, which may be Impaired, comprise, respectively, all Allowed Miscellaneous Secured Claims against a particular Debtor.  The Claims in Classes 1B(1) *et seq.*, 2B(1)(a) *et seq.*, 3B(1)(a) *et seq.*, 4B(1)(a) *et seq.*, 5B(1)(a) *et seq.*, 6B(1) *et seq.*, 7B(1) *et seq.*, and 8B(1) *et seq.* are secured by Liens on miscellaneous Assets of the Debtors, including Cash and REO.

2.       On the later of the Effective Date (or as soon thereafter as practicable) and the date a Miscellaneous Secured Claim becomes an Allowed Miscellaneous Secured Claim pursuant to a Final Order (or as soon thereafter as practicable), with respect to each Allowed Miscellaneous Secured Claim, at the sole option of the Plan Trustee: (i) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable, and contractual rights of the Holder of such Allowed Miscellaneous Secured Claim shall be reinstated in full as of the Effective Date and remain unaltered, or (ii) the Holder of such Allowed Miscellaneous Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, the Holder's Allowed Miscellaneous Secured Claim, one or a combination of the following: (a) payment in Cash up to the amount of the Allowed Miscellaneous Secured Claim, (b) all or any portion of the Assets securing the Allowed Miscellaneous Secured Claim, (c) deferred Cash payments having a present value on the Effective Date equal to the amount of the Allowed Miscellaneous Secured Claim that is not otherwise satisfied on the Effective Date, <u>provided</u> that the Holder of such Claim

30

shall retain its Lien in any Assets securing such Claim, (d) such other treatment as would provide the Holder the indubitable equivalent of its Allowed Miscellaneous Secured Claim, or (e) such other treatment as may be agreed by the Holder and the Debtor against which the Allowed Miscellaneous Secured Claim is asserted (if prior to the Effective Date) or the Plan Trustee (if on or after the Effective Date).

3.      To the extent there is sufficient value in the Assets securing any Allowed Miscellaneous Secured Claim as contemplated by section 506(b) of the Bankruptcy Code, such Allowed Miscellaneous Secured Claim shall include: (a) if the Miscellaneous Secured Claim arises from a written agreement, interest accrued (i) from the Petition Date to the Maturity Date at the non-default rate of interest under such agreement and (ii) from the Maturity Date to the Effective Date at the lesser of (A) the non-default rate of interest under the agreement and (B) the federal judgment rate of interest; (b) if the Miscellaneous Secured Claim is a tax claim, interest at a rate to be determined pursuant to section 511 of the Bankruptcy Code; and (c) any reasonable fees, costs, or charges payable under the agreement or State statute giving rise to such Miscellaneous Secured Claim.

**C.      BofA SYNDICATE SECURED CLAIM AGAINST AHM INVESTMENT, AHM ACCEPTANCE, AHM SV, AND AHM CORP. (Classes 2B(2), 3B(2), 4B(2) and 5B(3)).**

1.      Classes 2B(2), 3B(2), 4B(2), and 5B(3), which are Impaired, consist of any Allowed BofA Syndicate Secured Claim against AHM Investment, AHM Acceptance, AHM SV, and AHM Corp., respectively.  The BofA Syndicate Secured Claim is secured by Liens in certain assets of AHM Investment, AHM Acceptance, AHM

31

SV, and AHM Corp. pursuant to the BofA Syndicate Loan Documents and the Cash Collateral Order.

2.      In full satisfaction, settlement, and release of, and in exchange for, each Allowed BofA Syndicate Secured Claim, the Holder of such Claim shall receive the treatment set forth in the BofA Global Settlement Stipulation.

**D.      PNB SECURED CLAIM AGAINST AHM CORP. (Class 5B(2)).**

1.      Class 5B(2), which may be Impaired, consists of any Allowed PNB Secured Claim against AHM Corp.  The Class 5B(2) Claim is secured by a Lien in the Mt. Prospect Office Property and/or any Cash proceeds thereof.

2.      On the later of the Effective Date (or as soon thereafter as practicable) and the date a PNB Secured Claim becomes an Allowed PNB Secured Claim pursuant to a Final Order (or as soon thereafter as practicable), with respect to each Allowed PNB Secured Claim, at the sole option of the Plan Trustee: (i) subject to the requirements of § 1124(2) of the Bankruptcy Code, the legal, equitable, and contractual rights of the Holder of such Allowed PNB Secured Claim shall be reinstated in full on the Effective Date and remain unaltered, or (ii) the Holder of such Allowed PNB Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, the Holder's Allowed PNB Secured Claim, one or a combination of the following: (a) payment in Cash up to the amount of the Allowed PNB Secured Claim, (b) all or any portion of the Assets securing the Allowed PNB Secured Claim, (c) deferred Cash payments having a present value on the Effective Date equal to the amount of the Allowed PNB Secured Claim that is not otherwise satisfied on the Effective Date, provided that the Holder of such Claim shall retain its Lien in any Assets securing such Claim, (d) such other

32

treatment as would provide the Holder the indubitable equivalent of its Allowed PNB

Secured Claim, or (e) such other treatment as may be agreed by the Holder and the

Debtor against which the Allowed PNB Secured Claim is asserted (if prior to the

Effective Date) or the Plan Trustee (if on or after the Effective Date).

E.    TRAVELERS SECURED CLAIM AGAINST AHM ACCEPTANCE, AHM

SV, AND AHM CORP. (Classes 3B(3), 4B(3), and 5B(5)).

1.    Classes 3B(3), 4B(3), and 5B(5), is Unimpaired, consists of any Allowed

Travelers Secured Claim against AHM Acceptance, AHM SV, or AHM Corp.,

respectively.  The Travelers Secured Claim is secured by a Lien in Cash of AHM

Acceptance, AHM SV, and/or AHM Corp.

2.    Pursuant to § 1124(2) of the Bankruptcy Code, with respect to each

Allowed Travelers Secured Claim, the legal, equitable, and contractual rights of the

Holder of such Allowed Travelers Secured Claim shall be reinstated in full on the

Effective Date and remain unaltered in accordance with the Travelers Stipulation.

F.    JPM SECURED CLAIM AGAINST AHM INVESTMENT AND AHM

CORP. (Classes 2B(3) and 5B(4)).

1.    Classes 2B(3) and 5B(4), which are Impaired, consist of any Allowed JPM

Secured Claims against AHM Investment and AHM Corp., respectively.  The Class

2B(3) and 5B(4) Claims are secured by Liens in Assets of AHM Acceptance and AHM

Corp., respectively, pursuant to the JPM Loan Documents.

2.    On  the later of the Effective Date (or as soon thereafter as practicable)

and the date a JPM Secured Claim becomes an Allowed JPM Secured Claim pursuant to

a Final Order (or as soon thereafter as practicable), with respect to each JPM Secured

33

Claim the Holder of such Allowed JPM Secured Claim shall receive, in full satisfaction, settlement, and release of, and in exchange for, the Holder's Allowed JPM Secured Claim, one or a combination of the following, at the sole option of the Plan Trustee:

Payment in Cash up to the amount of such Allowed JPM Secured Claim;

the proceeds from the sale or other disposition of all or any portion of the Assets securing the Allowed JPM Secured Claim, after deducting the reasonable, necessary costs and expenses of preserving and disposing of such Assets (including, without limitation, payment of Servicing Fees, Servicing Advances, and any *ad valorem* property taxes), to the extent of any benefit to the Holder of such Claim;

all or any portion of the Assets securing such Allowed JPM Secured Claim; or

such other treatment as will provide the Holder of such Allowed JPM Secured Claim the indubitable equivalent of its Allowed JPM Secured Claim.

3.    To the extent there is sufficient value in the Assets securing any Allowed JPM Secured Claim as contemplated by section 506(b) of the Bankruptcy Code, such Allowed JPM Secured Claim shall include (a) interest accrued (i) from the Petition Date to the Maturity Date at the non-default rate of interest under the JPM Loan Documents (ii) from the Maturity Date to the Effective Date at the lesser of (A) the non-default rate of interest under the JPM Loan Documents and (B) the federal judgment rate of interest and (b) any reasonable fees, costs, or charges payable under the JPM Loan Documents.

**G.    UNSECURED CLAIMS AGAINST ALL DEBTORS, OTHER THAN THE BofA SYNDICATE UNSECURED CLAIM, SUBORDINATED TRUST PREFERRED CLAIMS, AND BORROWER CLAIMS (Classes 1C(1), 2C(1), 3C(1), 4C(1), 5C(1), 6C(1), 7C(1), and 8C(1)).**

1.    Classes 1C(1), 2C(1), 3C(1), 4C(1), 5C(1), 6C(1), 7C(1), and 8C(1), which are Impaired, consist of all Allowed Unsecured Claims against each Debtor,

34

respectively, other than the BofA Syndicate Unsecured Claim, Subordinated Trust

Preferred Claims, and Borrower Claims.  Claims in Classes 1C(1), 2C(1), 3C(1), 4C(1),

5C(1), 6C(1), 7C(1), and 8C(1) may include, without limitation, (i) EPD Claims and

Breach of Warranty Claims, which are subject to the EPD/Breach Claims Protocol set

forth in Article 7 of the Plan, and (ii) Senior Unsecured Claims, which are subject to the

Senior Unsecured Claim Procedure set forth in Article 4I(3) hereof.

2.        Each Holder of an Allowed Class 1C(1), 2C(1), 3C(1), 4C(1), 5C(1),

6C(1), 7C(1), and 8C(1) Claim shall receive its Pro Rata share of the Net Distributable

Assets of the applicable Estate in full satisfaction, settlement, and release of, and in

exchange for, its Allowed Unsecured Claim.

**H.        BofA SYNDICATE UNSECURED CLAIM AGAINST AHM HOLDINGS,
AHM INVESTMENT, AHM ACCEPTANCE, AHM SV, AND AHM CORP. (Classes
1C(2), 2C(2), 3C(2), 4C(2), and 5C(2)).**

1.        Classes 1C(2), 2C(2), 3C(2), 4C(2), and 5C(2), which are Impaired,

consist of BofA Syndicate Unsecured Claim against AHM Holdings, AHM Investment,

AHM Acceptance, AHM SV, and AHM Corp., respectively.  Pursuant to the BofA

Global Settlement Stipulation, the Designated REO Assets are to be held in trust for the

benefit of Creditors other than the BofA Syndicate.

2.        Subject to the BofA Global Settlement Stipulation (including, but not

limited to, provisions regarding the sharing of Cash receipts on the BofA Syndicate

Secured Claim and the cap on the BofA Syndicate Deficiency Claim), each Holder of an

Allowed Class 1C(2), 2C(2), 3C(2), 4C(2), and 5C(2) Claim shall receive its Pro Rata

share of the BofA Syndicate Net Distributable Assets of the applicable Estate in full

35

satisfaction, settlement, and release of, and in exchange for, its Allowed Unsecured Claim.

3.      In addition to receiving the treatment provided in section 2 above, each Allowed Class 1C(2) or 2C(2) Claim shall be deemed for all purposes to constitute a Senior Unsecured Claim entitled to participate in and receive the benefits of the Senior Unsecured Claim Procedure set forth in Article 4I(3) hereof without necessity of the Holder of such Allowed Class 1C(2) or 2C(2) Claim filing a Subordination Statement.

I.      **SUBORDINATED TRUST PREFERRED CLAIMS AGAINST AHM HOLDINGS AND AHM INVESTMENT (Classes 1C(3) and 2C(3)).**

1.      Classes 1C(3) and 2C(3), which are Impaired, consist of all Allowed Subordinated Trust Preferred Claims against AHM Holdings and AHM Investment. Claims in Classes 1C(3) and 2C(3) are Unsecured Claims which are subordinated in right of payment to "Senior Debt" or "Senior Indebtedness" (as applicable) as defined in the applicable Subordinated Trust Preferred Indenture(s).

2.      Subject to the Senior Unsecured Claim Procedure set forth in section 3 below, each Holder of an Allowed Class 1C(3) and 2C(3) Claim shall receive its Pro Rata share of the Net Distributable Assets of the applicable Estate in full satisfaction, settlement, and release of, and in exchange for, its Allowed Unsecured Claim.

3.      Senior Unsecured Claim Procedure

Subordination Statements.  Any Holder of a Class 1C(1) or 2C(1) Claim may assert that it holds a Senior Unsecured Claim and, therefore, is entitled to the benefits of subordination as set forth in the applicable Subordinated Trust Preferred Indenture(s) by filing with the Bankruptcy Court and serving upon the Plan Trustee and the applicable Indenture Trustee(s) for Subordinated Trust Preferred Claims against the applicable Estate(s) a Subordination Statement, no later than thirty (30) days after the Effective Date (the "Subordination Statement Bar Date").  Any Holder of a Class 1C(1) or

36

2C(1) Claim that fails to submit a Subordination Statement on or prior to the Subordination Statement Bar Date shall be deemed to have irrevocably waived, and shall be estopped from asserting, any right to obtain the benefits of subordination as set forth in the applicable Subordinated Trust Preferred Indenture(s).  Objections, if any, to any Subordination Statement shall be filed with the Bankruptcy Court and served on the party that filed such Subordination Statement, the Plan Trustee, and the applicable Indenture Trustee(s) for Subordinated Trust Preferred Claims against the applicable Estate(s), no later than thirty (30) days after filing and service of such Subordination Statement (the "Subordination Statement Objection Deadline"), except as otherwise agreed by the party that filed such Subordination Statement, the Plan Trustee, the applicable Indenture Trustee(s) for Subordinated Trust Preferred Claims against the applicable Estate(s), and the objecting party.  If no objection with respect to a Subordination Statement is filed by the Subordination Statement Objection Deadline, the Putative Senior Unsecured Claim shall be deemed to constitute a Senior Unsecured Claim to the extent such Claim is ultimately Allowed against the applicable Estate.

Senior Unsecured Claims Reserves.  After the Effective Date, any distributions that would otherwise be made on account of Allowed Subordinated Trust Preferred Claims against AHM Holdings or AHM Investment shall be deposited by the Plan Trustee into reserve accounts for the benefit of Holders of Senior Unsecured Claims against AHM Holdings and AHM Investment, respectively, to be distributed in accordance with this Article 4I(3).

Payment of Indenture Trustee Expenses.  The first (i) $254,451 deposited into the Senior Unsecured Claims Reserve of AHM Holdings and (ii) $245,549 deposited into the Senior Unsecured Claims Reserve of AHM Investment (each such amount, the "Indenture Trustee Expense Reserve" of the respective Estate) shall be reserved for the payment of Indenture Trustee Expenses.  Within thirty (30) days following the Effective Date, each Indenture Trustee shall submit to the Plan Trustee invoices for accrued but unpaid Indenture Trustee Expenses under the applicable Subordinated Trust Preferred Indenture(s) for the time period up to and including the Effective Date.  Upon full funding of the Indenture Trustee Expense Reserve of a given Estate, the Plan Trustee shall pay from the Indenture Trustee Expense Reserve the reasonable amounts of the invoiced Indenture Trustee Expenses assertable against such Estate.  To the extent the Indenture Trustee Expense Reserve of a given Estate is insufficient to pay the reasonable amounts of all invoiced Indenture Trustee Expenses assertable against such Estate, the Indenture Trustees shall share Pro Rata in the Indenture Trustee Expense Reserve based on the Allowed Subordinated Trust Preferred Claims against such Estate represented by each Indenture Trustee.  The balance, if any, remaining in the Indenture Trustee Expense Reserve of a given Estate after payment of the reasonable amounts of all invoiced Indenture Trustee Expenses assertable against such Estate, shall be reserved for the payment of post-Effective Date Indenture Trustee Expenses on a quarterly basis after submission of invoices

from each Indenture Trustee.  To the extent the Indenture Trustee Expense Reserve of a given Estate is insufficient to pay the reasonable amounts of all Indenture Trustee Expenses assertable against such Estate invoiced in a given quarter, the Indenture Trustees shall share Pro Rata in the Indenture Trustee Expense Reserve based on the Allowed Subordinated Trust Preferred Claims against such Estate represented by each Indenture Trustee.

Distributions from Senior Unsecured Claims Reserve.  Except as provided in subsection (c) above, no distributions shall be made from the Senior Unsecured Claims Reserve of a given Estate until, with respect to each Putative Senior Unsecured Claim against such Estate, (i) the Bankruptcy Court has made a determination as to whether and to what extent the Holder of such Claim holds a Senior Unsecured Claim against such Estate, and such determination becomes a Final Order, (ii) the Holder of such Putative Senior Unsecured Claim has reached a settlement with all Holders of Allowed Subordinated Trust Preferred Claims against such Estate (or the Indenture Trustees, on their behalf) and obtained approval of such settlement in accordance with subsection (e) below, or (iii) the Holder of such Putative Senior Unsecured Claim has withdrawn its Subordination Statement.  Upon the satisfaction of one or more of the foregoing conditions with respect to each Putative Senior Unsecured Claim against a given Estate, each Holder of a Senior Unsecured Claim against such Estate shall be entitled to receive Pro Rata distributions of any amounts in the Senior Unsecured Claims Reserve of such Estate in excess of the Indenture Trustee Fee Reserve, until such Senior Unsecured Claim is paid in full.  If, and only if, all Holders of Senior Unsecured Claims against a given Estate have been paid in full on account of their Senior Unsecured Claims, then (i) the Plan Trustee shall pay the balance, if any, of the Senior Unsecured Claims Reserve to the Indenture Trustees for the account of Holders of Allowed Subordinated Trust Preferred Claims against such Estate, (ii) Allowed Subordinated Trust Preferred Claims against such Estate shall be entitled to receive Pro Rata distributions from the Net Distributable Assets of such Estate as provided in Article 4I(2) hereof, which distributions shall be made to the Indenture Trustees for the account of Holders of Allowed Subordinated Trust Preferred Claims against such Estate, and (iii) Holders of Allowed Subordinated Trust Preferred Claims against such Estate shall be subrogated to the rights of Holders of Senior Unsecured Claims against such Estate to the extent of any payments made on account of such Senior Unsecured Claims from the Senior Unsecured Claims Reserve.

Provisional Settlement of Putative Senior Unsecured Claims.  If the Holders of Allowed Subordinated Trust Preferred Claims against a given Estate (or the applicable Indenture Trustee(s), on their behalf) and any Putative Senior Unsecured Claim against such Estate reach a settlement as to whether, and to what extent, the Putative Senior Unsecured Claim (to the extent such Claim is ultimately Allowed against the applicable Estate) constitutes a Senior Unsecured Claim, the Holders of Allowed Subordinated Trust Preferred Claims (or the applicable Indenture Trustee(s), on their behalf) shall file with the

38

Bankruptcy Court and serve on the Plan Trustee a notice of such settlement that is executed by the Holders of Allowed Subordinated Trust Preferred Claims (or the applicable Indenture Trustee(s), on their behalf) and Holder of such Putative Senior Unsecured Claim, which notice of settlement shall provide the proposed amount (if any) of such Putative Senior Unsecured Claim that shall be treated as a Senior Unsecured Claim.  If no written objection to the notice of settlement is filed by a party in interest within 10 calendar days after the notice is filed and served upon the Plan Trustee, the Bankruptcy Court shall approve the settlement and the Putative Senior Unsecured Claim shall constitute a Senior Unsecured Claim to the extent, if any, provided in such settlement.  The Indenture Trustees shall be authorized, but not required, to litigate and/or settle any Putative Senior Unsecured Claims on behalf of the Holders of Allowed Subordinated Trust Preferred Claims.  The foregoing, however, shall not in any way limit or impair the rights of Holders of Allowed Subordinated Trust Preferred Claims to litigate and/or settle such Putative Senior Unsecured Claims on their own, with or without the participation of the Indenture Trustee(s).

Notice to Indenture Trustees.  All notices and other papers required to be provided to Indenture Trustees pursuant to this section 3 shall be served upon the Indenture Trustees at the following addresses: (i) if to Wilmington Trust Company: Wilmington Trust Company, Attn: Patrick Healy, Vice President, Rodney Square North, 1100 North Market Street, Wilmington, DE 19890-0001; and (ii) if to Law Debenture Trust Company of New York: Law Debenture Trust Company of New York, Attn: James D. Heaney, Vice President, 400 Madison Avenue, 4th Floor, New York, NY 10017.

Reservation of Rights to Object to Senior Unsecured Claims.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Plan, the determination or deemed determination that a Claim against an Estate constitutes a Senior Unsecured Claim against such Estate (whether pursuant to Article 8H(3) of this Plan or subsections (a) or (e) of this section) in any amount shall not constitute a determination that such Claim constitutes an Allowed Claim against such Estate in any amount, and nothing in this section 3 shall condition, limit, or otherwise affect the Plan Trustee's rights with respect to determining whether all or any portion of any Senior Unsecured Claim against a given Estate constitutes an Allowed Claim against such Estate.

**J.    BORROWER CLAIMS AGAINST ALL DEBTORS (Classes 1C(4), 2C(4), 3C(3), 4C(3), 5C(3), 6C(2), 7C(2), and 8C(2)).**

1.    Classes 1C(4), 2C(4), 3C(3), 4C(3), 5C(3), 6C(2), 7C(2), and 8C(2),

which are Impaired, consist of all Allowed Borrower Claims against each Debtor.

39

Claims in Classes 1C(4), 2C(4), 3C(3), 4C(3), 5C(3), 6C(2), 7C(2), and 8C(2) are Unsecured Claims.

2.      Each Holder of an Allowed Class 1C(4), 2C(4), 3C(3), 4C(3), 5C(3), 6C(2), 7C(2), and 8C(2) Claim shall receive its Pro Rata share of the Net Distributable Assets of the applicable Estate in full satisfaction, settlement, and release of, and in exchange for, its Allowed Unsecured Claim.

**K.      OTHER SUBORDINATED CLAIMS AGAINST ALL DEBTORS, AND INTERESTS IN ALL DEBTORS (Classes 1D, 2D, 3D, 4D, 5D, 6D, 7D, 8D, 1E, 2E, 3E, 4E, 5E, 6E, 7E, and 8E).**

1.      Each of Classes 1D, 2D, 3D, 4D, 5D, 6D, 7D, 8D, 1E, 2E, 3E, 4E, 5E, 6E, 7E, and 8E, which are Impaired, consist of Subordinated Claims against all of the Debtors and Interests in all of the Debtors.

2.      Holders of Claims or Interests in Classes 1D, 2D, 3D, 4D, 5D, 6D, 7D, 8D, 1E, 2E, 3E, 4E, 5E, 6E, 7E, and 8E shall receive no distribution or dividend on account of such Claims or Interests.  The entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to the Interests) outstanding immediately prior to the Effective Date without any conversion thereof or distribution with respect thereto.

**ARTICLE 5.**

**ACCEPTANCE OR REJECTION OF THIS PLAN**

**A.      IMPAIRED CLASSES OF CLAIMS ENTITLED TO VOTE.**  Except as otherwise provided in order(s) of the Bankruptcy Court pertaining to solicitation of votes on this

Plan, the Holders of Claims or Interests in the Classes set forth in the following table are, or may be, Impaired and shall be entitled to vote to accept or reject this Plan:

| Class(es) | Description |
|---|---|
| Class 1B(1) *et seq.* | Miscellaneous Secured Claims against AHM Holdings |
| Class 1C(1) | Unsecured Claims against AHM Holdings other than the BofA Syndicate Unsecured Claim, Subordinated Trust Preferred Claims, and Borrower Claims |
| Class 1C(2) | BofA Syndicate Unsecured Claim against AHM Holdings |
| Class 1C(3) | Subordinated Trust Preferred Claims against AHM Holdings |
| Class 1C(4) | Borrower Claims against AHM Holdings |
| Class 2B(1)(a) *et seq.* | Miscellaneous Secured Claims against AHM Investment |
| Class 2B(2) | BofA Syndicate Secured Claim against AHM Investment |
| Class 2B(3) | JPM Secured Claim against AHM Investment |
| Class 2C(1) | Unsecured Claims against AHM Investment other than the BofA Syndicate Unsecured Claim, Subordinated Trust Preferred Claims, and Borrower Claims |
| Class 2C(2) | BofA Syndicate Unsecured Claim against AHM Investment |
| Class 2C(3) | Subordinated Trust Preferred Claims against AHM Investment |
| Class 2C(4) | Borrower Claims against AHM Investment |
| Class 3B(1)(a) *et seq.* | Miscellaneous Secured Claims against AHM Acceptance |
| Class 3B(2) | BofA Syndicate Secured Claim against AHM Acceptance |
| Class 3C(1) | Unsecured Claims against AHM Acceptance other than the BofA Syndicate Unsecured Claim and Borrower Claims |

| Class(es) | Description |
|---|---|
| Class 3C(2) | BofA Syndicate Unsecured Claim against AHM Acceptance |
| Class 3C(3) | Borrower Claims against AHM Acceptance |
| Class 4B(1)(a) *et seq.* | Miscellaneous Secured Claims against AHM SV |
| Class 4B(2) | BofA Syndicate Secured Claim against AHM SV |
| Class 4C(1) | Unsecured Claims against AHM SV other than the BofA Syndicate Unsecured Claim and Borrower Claims |
| Class 4C(2) | BofA Syndicate Unsecured Claim against AHM SV |
| Class 4C(3) | Borrower Claims against AHM SV |
| Class 5B(1)(a) *et seq.* | Miscellaneous Secured Claims against AHM Corp. |
| Class 5B(2) | PNB Secured Claim against AHM Corp. |
| Class 5B(3) | BofA Syndicate Secured Claim against AHM Corp. |
| Class 5B(4) | JPM Secured Claim against AHM Corp. |
| Class 5C(1) | Unsecured Claims against AHM Corp. other than the BofA Syndicate Unsecured Claim and Borrower Claims |
| Class 5C(2) | BofA Syndicate Unsecured Claim against AHM Corp. |
| Class 5C(3) | Borrower Claims against AHM Corp. |
| Class 6B(1) *et seq.* | Miscellaneous Secured Claims against AHM Ventures |
| Class 6C(1) | Unsecured Claims against AHM Ventures other than Borrower Claims |
| Class 6C(2) | Borrower Claims against AHM Ventures |
| Class 7B(1) *et seq.* | Miscellaneous Secured Claims against Homegate |
| Class 7C(1) | Unsecured Claims against Homegate other than Borrower Claims |
| Class 7C(2) | Borrower Claims against Homegate |
| Class 8B(1) *et seq.* | Miscellaneous Secured Claims against Great Oak |
| Class 8C(1) | Unsecured Claims against Great Oak other than Borrower Claims |
| Class 8C(2) | Borrower Claims against Great Oak |

Each of the above-referenced Classes of Claims or Interests shall be considered a separate Class for purposes of voting to accept or reject this Plan.  If and to the extent any Class identified as being Unimpaired is Impaired (whether as a result of the terms of this Plan or any modification or amendment thereto), the Holders of Claims in such Class shall be entitled to vote to accept or reject this Plan.

B.    **CLASSES DEEMED TO ACCEPT THIS PLAN.**  The Holders of Claims in the Classes set forth in the following table are Unimpaired and shall be deemed to accept this Plan:

| Class | Description |
|-------|-------------|
| Class 1A | Priority Claims against AHM Holdings |
| Class 2A | Priority Claims against AHM Investment |
| Class 3A | Priority Claims against AHM Acceptance |
| Class 3B(3) | Travelers Secured Claim against AHM Acceptance |
| Class 4A | Priority Claims against AHM SV |
| Class 4B(3) | Travelers Secured Claim against AHM SV |
| Class 5A | Priority Claims against AHM Corp. |
| Class 5B(5) | Travelers Secured Claim against AHM Corp. |
| Class 6A | Priority Claims against AHM Ventures |
| Class 7A | Priority Claims against Homegate |
| Class 8A | Priority Claims against Great Oak |

Pursuant to § 1126(f) of the Bankruptcy Code, each of the above-referenced Classes of Claims are conclusively presumed to have accepted this Plan, and the votes of Holders of Claims in such Classes therefore will not be solicited.

DB02:6785650.26                                                                                    066585.1001

**C.      CLASSES DEEMED TO REJECT THIS PLAN.**  Holders of Claims or

Interests in the Classes set forth in the following table are not entitled to receive or retain any

property under this Plan on account of such Claims or Interests:

| Class | Description |
|-------|-------------|
| Class 1D | Subordinated Claims against AHM Holdings |
| Class 1E | Interests in AHM Holdings |
| Class 2D | Subordinated Claims against AHM Investment |
| Class 2E | Interests in AHM Investment |
| Class 3D | Subordinated Claims against AHM Acceptance |
| Class 3E | Interests in AHM Acceptance |
| Class 4D | Subordinated Claims against AHM SV |
| Class 4E | Interests in AHM SV |
| Class 5D | Subordinated Claims against AHM Corp. |
| Class 5E | Interests in AHM Corp. |
| Class 6D | Subordinated Claims against AHM Ventures |
| Class 6E | Interests in AHM Ventures |
| Class 7D | Subordinated Claims against Homegate |
| Class 7E | Interests in Homegate |
| Class 8D | Subordinated Claims against Great Oak |
| Class 8E | Interests in Great Oak |

Pursuant to § 1126(g) of the Bankruptcy Code, the above-referenced Classes are Impaired but

are conclusively presumed to have rejected this Plan, and the votes of Holders of Claims or

Interests in such Classes therefore will not be solicited.

**D.      NONCONSENSUAL CONFIRMATION.**  As set forth in Article 15 hereof, if

any Impaired Class fails to accept this Plan, the Debtors intend to request that the Bankruptcy

Court confirm this Plan as a Cramdown Plan pursuant to § 1129(b) of the Bankruptcy Code with

respect to such Class.

## ARTICLE 6.

## SETTLEMENT OF INTERCOMPANY CLAIMS; STIPULATED ASSET ALLOCATION

A.      **SETTLEMENT OF INTERCOMPANY CLAIMS.**  In consideration of the settlements and compromises embodied in the Stipulated Asset Allocation, all Intercompany Claims of the Debtors shall be deemed satisfied in full on the Effective Date.

B.      **THE STIPULATED ASSET ALLOCATION.**  The proceeds of any Plan Trust Asset to be distributed under this Plan shall be distributed to each Estate ratably as follows: AHM Holdings – 30.67%; AHM Investment – 15.18%; AHM Acceptance – 12.68%; AHM SV – 3.27%; AHM Corp. – 37.3%; AHM Ventures – 0.43%; Homegate – 0.11%; and Great Oak – 0.37% (the "Stipulated Asset Allocation").  The Stipulated Asset Allocation is an integral component of the comprehensive compromise and settlement concerning Intercompany Claims. The allocation percentages are a function of the net asset value that will be contributed by each Debtor to the Plan Trust for the benefit of its Creditors, as determined in light of a number of factors, including: (i) the relative value of Assets under administration in each Estate from the Petition Date to the Effective Date; (ii) the validity and enforceability of Intercompany Claims that are reflected on the Debtors' books and records (certain of which claims might be inadequately documented and/or subject to recharacterization as equity contributions); (iii) possible Intercompany Claims that are not reflected as intercompany payables or receivables in the Debtors' books and records (e.g., resulting from one Debtor's payment in full of a shared expense properly allocable between multiple Debtors, or payment of more than its fair share of a joint-and-several liability to a third party); (iv) the reallocation of asset value between Estates that would result from allowance and payment of Intercompany Claims, in light of anticipated creditor recoveries in each of the Chapter 11 Cases; (v) the estimated exposure of each Estate to S/A/P Claims asserted but not paid as of the Effective Date, in light of possible Intercompany

Claims for contribution or reimbursement that might result from one Estate's payment of S/A/P

Claims that are properly allocable between multiple Estates; and (vi) the necessity of resolving

any and all potential inter-Estate disputes via the Plan, so as to permit administration of multiple

Estates by a single Plan Trustee unfettered by inter-Estate conflicts of interest.

## ARTICLE 7.

### ESTIMATION AND ALLOWANCE OF EPD/BREACH CLAIMS

EPD/BREACH CLAIMS PROTOCOL.  EPD/Breach Claims shall be liquidated and

Allowed as Unsecured Claims in accordance with the following protocol (the "EPD/Breach

Claims Protocol"):

A.    **EPD CLAIMS.**  Each valid EPD Claim shall be Allowed as an Unsecured Claim

premised upon damages assessed based upon the loan type, borrower payment history, status,

and UPB for the loan according to the following table, with the Allowed amount of such Claim

being the applicable percentage of the UPB of the loan as of the EPD Determination Date:

| Loan Product | Delinquency (days) | | | |
|---|---|---|---|---|
| | 0-30 | 31-60 | 61-90 | 90+ |
| Fixed-Rate Mortgage ("FRM") | 5% | 20% | 30% | 40% |
| Adjustable Rate Mortgage ("ARM") | 4.1% | 17% | 25% | 33% |
| Payment Option ARM ("POA") | 4.8% | 19% | 29% | 38% |
| Second-Lien ("2nd") | 11.9% | 50% | 75% | 95% |

Notwithstanding the foregoing, with respect to any loan (or resulting REO) sold in a

commercially reasonable manner prior to the EPD Determination Date, the EPD Claim shall be

Allowed in an amount equal to the UPB at the time of sale less the net proceeds realized from

such sale.

B.    **BREACH OF WARRANTY CLAIMS.**  Each Breach of Warranty Claim with

respect to a pool of currently outstanding loans owned by the claimant shall be calculated based

upon the loan vintage (i.e., year and quarter of origination) and certain estimations and

simplifying assumptions that (i) a fixed percentage of the loans in any pool (and of any type) will

at some point give rise to valid Breach of Warranty Claims, (ii) due to the "seasoning" of loans,

this percentage incidence of Breach of Warranty Claims will be spread over the life of the loan

pool with the heaviest incidence in the quarters immediately following origination, tapering

down to a zero incidence over time, and (iii) the damages resulting from the failure to repurchase

loans within a given loan pool will be a fixed percentage of the UPB of the loan pool as of the

Breach Determination Date, based on the loan type.  A valid Breach of Warranty Claim with

respect to a given loan pool shall be Allowed as an Unsecured Claim in an amount equal to the

UPB of the loan pool as of the Breach Determination Date, multiplied by the applicable

percentage in the "Damages" column of the following table:

| Year | Quarter | % Incidence | Damages as % of UPB | | | |
|------|---------|-------------|------|------|------|------|
| | | | **FRM** | **ARM** | **POA** | **2nd** |
| 2007 | 2 | 0.22% | 0.09% | 0.07% | 0.08% | 0.21% |
| 2007 | 1 | 0.18% | 0.07% | 0.06% | 0.07% | 0.17% |
| 2006 | 4 | 0.14% | 0.06% | 0.05% | 0.05% | 0.13% |
| 2006 | 3 | 0.13% | 0.05% | 0.04% | 0.05% | 0.12% |
| 2006 | 2 | 0.10% | 0.04% | 0.03% | 0.04% | 0.09% |
| 2006 | 1 | 0.08% | 0.03% | 0.03% | 0.03% | 0.08% |
| 2005 | 4 | 0.06% | 0.02% | 0.02% | 0.02% | 0.06% |
| 2005 | 3 | 0.04% | 0.01% | 0.01% | 0.02% | 0.04% |
| 2005 | 2 | 0.02% | 0.0% | 0.01% | 0.01% | 0.02% |
| 2005 | 1 | 0.01% | 0.0% | 0.01% | 0.01% | 0.02% |
| 2004 | 4 | 0.01% | 0.0% | 0.0% | 0.0% | 0.01% |
| 2004 | 3 | 0.01% | 0.0% | 0.0% | 0.0% | 0.01% |
| 2004 | 2 | 0.01% | 0.0% | 0.0% | 0.0% | 0.01% |
| 2004 | 1 | 0.01% | 0.0% | 0.0% | 0.0% | 0.01% |
| 2003 | 4 | 0.01% | 0.0% | 0.0% | 0.0% | 0.01% |
| 2003 | 3 | 0.01% | 0.0% | 0.0% | 0.0% | 0.01% |
| 2003 2nd Quarter and earlier | | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |

C.    **INTERACTION BETWEEN EPD CLAIMS AND BREACH OF WARRANTY CLAIMS.**  EPD Claims will take precedence over Breach of Warranty Claims. Thus, to the extent that a creditor established a valid EPD Claim for a loan, that loan's UPB as of the Breach Determination Date will be subtracted from the UPB of the pool of loans for which Breach of Warranty Claims are computed.

The EPD/Breach Claims Protocol is designed to allow for the efficient reconciliation of EPD Claims and Breach of Warranty Claims, which would otherwise require a loan-by-loan analysis by the Holders of EPD/Breach Claims and the Plan Trustee on virtually all of the loan portfolios at issue, and significant litigation costs for the parties with respect to the applicable damages valuation or the estimation of contingent and unliquidated Claims.

D.    **RESERVATION OF RIGHTS TO OBJECT TO DUPLICATIVE CLAIMS.** To the extent any EPD Claims or Breach of Warranty Claims are asserted by multiple parties with respect to the same loan or pool of loans, nothing in this EPD/Breach Claims Protocol shall prejudice the Plan Trustee's right to object to such claims as duplicative and/or to seek judicial determination of the parties' standing to assert such claims under the governing documents and applicable law.

E.    **EPD/BREACH CLAIMS QUESTIONNAIRE AND BAR DATE.**  In order to receive a Distribution under the Plan, each Holder of an EPD Claim and/or Breach of Warranty Claim must supply the Debtors with sufficient information from which to calculate the Allowed amount of such Claims in accordance with the EPD/Breach Claims Protocol and to ensure that multiple Creditors are not asserting duplicative EPD/Breach Claims.  A request for such information shall be provided by the Debtors to each Creditor asserting an EPD Claim and/or Breach of Warranty Claim on or before the Effective Date, in the form of a questionnaire (the

"EPD/Breach Claims Questionnaire") substantially in the form to be submitted as a Supplemental Plan Document.  Each Creditor asserting an EPD Claim and/or Breach of Warranty Claim shall be required to complete the EPD/Breach Claims Questionnaire and return same to the Debtors or the Plan Trustee, as applicable, by the later of (i) sixty (60) days from the date of service thereof, (ii) such later date agreed upon by the Debtors or the Plan Trustee, as applicable, and the Creditor, or (iii) such other date as the Bankruptcy Court shall order upon application made prior to the end of the sixty (60)-day period set forth in subsection (i) above. Holders of EPD Claims and/or Breach of Warranty Claims that are required, but fail, to return an EPD/Breach Claims Questionnaire by the applicable bar date shall be forever barred from asserting such Claims against the Debtors, the Plan Trust, or any of their Assets.  The Debtors (if before the Effective Date) or the Plan Trustee (if after the Effective Date), as applicable, shall reasonably cooperate with the Holders of Securitization EPD Representation Claims in obtaining data necessary to complete the EPD/Breach Claims Questionnaire and determining whether there were breaches of representations giving rise to valid Securitization EPD Representation Claims. The Bankruptcy Court shall retain jurisdiction to determine any disputes as to completeness of any Creditor's EPD/Breach Claims Questionnaire or the application of the EPD/Breach Claims Protocol to a given Claim.

## ARTICLE 8.

## MEANS OF IMPLEMENTING THIS PLAN

A.     **IMPLEMENTATION OF PLAN.**  The Debtors propose that the Plan be implemented and consummated through the means contemplated by sections 1123(a)(5)(B), (D), (E), (F) and (G) and 1123(b)(2), (b)(3) and (b)(4) of the Bankruptcy Code on and after the Effective Date.

B.      **CORPORATE ACTION.**  On the Effective Date, (i) the matters under this Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries, and (ii) the officers and directors of the Debtors shall immediately cease to serve and the Plan Trustee shall be deemed the sole director and officer of each of the Debtors for all purposes, without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries.

C.      **DISSOLUTION OF DEBTORS.**  On and after the Effective Date, (i) the Plan Trustee shall be authorized, in its sole and absolute discretion, to take all actions reasonably necessary to dissolve the Debtors and their subsidiaries under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation; provided, however, that (A) to the extent required by any agreement between the Debtors and BofA as Administrative Agent pursuant to the BofA Global Settlement Stipulation and Article 8E(2) hereof, the Plan Trustee shall take all actions necessary to continue the corporate existence of one or more Debtors (the costs of which shall be paid from proceeds of the collateral of the BofA Syndicate pursuant to the BofA Global Settlement Stipulation), and the Plan Trustee shall not dissolve such Debtors without the prior written consent of BofA as Administrative Agent, and (B) the Plan Trustee shall not be compelled to dissolve any Debtor or subsidiary thereof if to do so would unduly burden the Plan

Trust or if such Debtor's or subsidiary's continued existence would aid the Plan Trustee in the Administration of the Plan Trust Assets or the discharge of its obligations under this Plan or the Plan Trust Agreement, provided further, however, that after the later of the time when all Distributions have been made to Holders of Allowed Claims against AHM Investment or a Final Decree is entered with respect to AHM Investment, the Plan Trustee shall file a certificate of dissolution in the state of incorporation for AHM Investment, and AHM Investment shall dissolve and cease to exist; and (ii) except as otherwise provided (A) by agreement between BofA as Administrative Agent and the Debtors pursuant to the BofA Global Settlement Stipulation and Article 8E(2) hereof or (B) by subsequent amendment of the Plan pursuant to Article 14D hereof, no Asset of any Estate shall revest in any Debtor.  The Plan Trustee shall have no liability for using his discretion to dissolve or not dissolve any of the Debtors or their subsidiaries.  Whether or not dissolved, the Debtors shall have no authorization to implement the provisions of this Plan from and after the Effective Date except as specifically provided otherwise in the Plan.

> **D.     DISSOLUTION OF OFFICIAL COMMITTEES.**  On the Effective Date, the Creditors Committee and Borrowers Committee shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective Orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms, provided that such parties shall continue to have a right to be heard with respect to any and all (i) applications for Professional Claims; (ii) requests for compensation and reimbursement of

expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial

contribution in any of the Chapter 11 Cases; and (iii) motions or other actions seeking

enforcement or implementation of the provisions of this Plan or the Confirmation Order.

**E.      VESTING OF ASSETS IN PLAN TRUST; ASSUMPTION OF PLAN**

**OBLIGATIONS.**

1.      **Vesting of Certain Assets in the Plan Trust.**  On the Effective Date,

except as provided by Article 8E(2) below, all Assets of the Estates shall vest in, and

constitute Assets of, the Plan Trust, and each Debtor shall be deemed for all purposes to

have transferred legal and equitable title of all Assets of its Estate to the Plan Trust for

the benefit of the Holders of Claims against its Estate, whether or not such Claims are

Allowed Claims as of the Effective Date.

2.      **Vesting of the BofA Mortgage Loans in an Entity to be Determined.**

On the Effective Date, legal ownership of all BofA Mortgage Loans owned by the

Debtors immediately prior to the Effective Date shall vest in one or more of the following

entities, which entity or entities shall thereafter own the BofA Mortgage Loans subject to

the terms of the BofA Global Settlement Stipulation (including, without limitation, the

requirement that the costs of ownership of the BofA Mortgage Loans be paid from the

proceeds of the collateral of the BofA Syndicate): (i) AHM Acceptance, (ii) AHM Corp.,

(iii) any other Debtor entity, or (iv) such other entity as may be designated by BofA as

Administrative Agent.  The Debtors, the Plan Trustee, the New Servicer (as defined in

the BofA Global Settlement Stipulation), and/or BofA as Administrative Agent shall be

authorized without further order of the Bankruptcy Court to execute such further

instruments, agreements, and other documents as may be required to effectuate this provision.

3.      **Transfer of Plan Trust Assets by the Debtors.**  On the Effective Date or as soon as practicable thereafter, the Debtors shall take all actions reasonably necessary to transfer control of (i) the Plan Trust Assets to the Plan Trustee and (ii) all BofA Mortgage Loans in the Debtors' possession to the entity or entities designated by BofA as Administrative pursuant to section 2 above and the BofA Global Settlement Stipulation. Upon the transfer of control of Plan Trust Assets and BofA Mortgage Loans in accordance with this section, the Debtors shall have no further interest in or with respect to the Plan Trust Assets, the Plan Trust, or the BofA Mortgage Loans (except as otherwise directed by BofA as Administrative Agent pursuant to section 2 above and the BofA Global Settlement Stipulation).

4.      **Assumption of Plan Obligations.**  On the Effective Date, all of the Debtors' rights and obligations with respect to each and every S/A/P Claim, and all other rights and obligations of the Debtors under this Plan, shall be assigned to and assumed by the Plan Trust.

5.      **Treatment of Transfer of Plan Trust Assets.**  For federal income tax purposes, all parties (including the Debtors, the Plan Trustee, and the Holders of Claims) shall treat the transfer of the Plan Trust Assets to the Plan Trust in accordance with the terms of this Plan as a transfer to the Holders of the Claims that have a beneficial interest in the Plan Trust, with the Holders of Claims receiving an undivided interest in the Plan Trust Assets attributable to the Debtor with respect to which their Claim relates, followed by a transfer of the Plan Trust Assets by such Holders to the Plan Trust, and the

beneficiaries of the Plan Trust shall be treated as the grantors and owners of such beneficiaries' respective portion of the Plan Trust.

## F.    PLAN TRUST.

1.    **Formation of Plan Trust.**  On or prior to the Effective Date, the Plan Trust shall be formed.  The Holders of Claims shall be the sole beneficiaries of the Plan Trust.

2.    **Plan Trust Agreement.**  The Plan Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Plan Trustee and to ensure the treatment of the Plan Trust as a liquidating trust for federal income tax purposes.  In the event a provision of this Plan conflicts with a provision of the Plan Trust Agreement, the provision of the Plan Trust Agreement shall control.  In the event a provision of the Confirmation Order conflicts with a provision of the Plan Trust Agreement, the provision of the Confirmation Order shall control.

3.    **Appointment of the Plan Trustee**

(a)    The Debtors will file the Plan Trust Agreement with the Bankruptcy Court as a Supplemental Plan Document, which Plan Trust Agreement shall identify the Plan Trustee.  The Plan Trustee shall be appointed by the Bankruptcy Court in the Confirmation Order and shall commence serving as the Plan Trustee on the Effective Date; provided, however, that the party or parties appointed as Plan Trustee shall be permitted to act in accordance with the terms of the Plan Trust Agreement from the Confirmation Date (or such earlier date as authorized by the Creditors Committee) through the Effective Date and shall be entitled to seek compensation in accordance with the terms of the Plan Trust Agreement and this Plan.

(b)    The Plan Trustee shall be deemed the Estates' representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in this Plan and the Plan Trust Agreement, including, without limitation, the powers of a trustee under sections

54

704, 108 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy
Rules (including commencing, prosecuting or settling Causes of Action,
enforcing contracts, and asserting claims, defenses, offsets and privileges), to
the extent not inconsistent with the status of the Plan Trust as a "liquidating
trust" for federal income tax purposes within the meaning of Treasury
Regulation 301.7701-4(d).

(c)     The Confirmation Order shall state that without the permission of
the Bankruptcy Court, no judicial, administrative, arbitral, or other action or
proceeding shall be commenced in any forum other than the Bankruptcy Court
against the Plan Trustee in its official capacity, with respect to its status, duties,
powers, acts, or omissions as Plan Trustee.

(d)     The Plan Trustee shall at all times maintain a bond acceptable to
the Plan Oversight Committee and the United States Trustee.

4.      **Term and Compensation of the Plan Trustee**

(a)     The Plan Trustee shall initially be compensated as set forth in the
Plan Trust Agreement (which compensation may be revised with the consent of
the Plan Oversight Committee) and shall not be required to file a fee application
to receive compensation.  The Plan Trustee's compensation shall, however, be
subject to the review and, if appropriate, objection of the Plan Oversight
Committee as set forth in the Plan Trust Agreement.

(b)     The Plan Trustee may be removed or replaced at any time by the
Plan Oversight Committee in accordance with the procedures in the Plan Trust
Agreement.  In the event of the death or incompetency (in the case of a Plan
Trustee that is a natural person), dissolution (in the case of a Plan Trustee that is
a corporation or other entity), bankruptcy, insolvency, resignation, or removal
of the Plan Trustee, the Plan Oversight Committee shall have the authority to
appoint a successor trustee as set forth in the Plan Trust Agreement.

5.      **Liquidation of Plan Trust Assets; Responsibilities of Plan Trustee**

(a)     The Plan Trustee shall be vested with the rights, powers and
benefits set forth in the Plan Trust Agreement.  The Plan Trust shall be subject
to the directions of the Plan Oversight Committee as set forth in the Plan Trust
Agreement.  Notwithstanding anything to the contrary contained in this Plan or
the Confirmation Order, any act by the Plan Trustee, including discretionary
acts, will require the consent of or consultation with the Plan Oversight
Committee in accordance with and to the extent of the terms of the Plan Trust
Agreement.  If there is any inconsistency or ambiguity between the Plan,
Confirmation Order or the Plan Trust Agreement in respect of the Plan
Oversight Committee's role in the Plan Trustee's authority to act, the provisions
of the Plan Trust Agreement shall control.

(b)    The Plan Trustee, in its reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the Plan Trust Assets, make timely distributions and not unduly prolong the duration of the Plan Trust.  The liquidation of the Plan Trust Assets may be accomplished either through the sale of Plan Trust Assets (in whole or in combination), including the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise.  The Plan Trustee shall distribute the proceeds of liquidation of the Plan Trust Assets between the Estates in accordance with the Stipulated Asset Allocations.

(c)    The Plan Trustee shall be expressly authorized to do the following:

(i)    prosecute, collect, compromise and settle any Causes of Action in accordance herewith and without further approval of or application to the Bankruptcy Court or the Plan Oversight Committee, except as otherwise provided herein;

(ii)    file, prosecute, compromise and settle objections to Claims without further approval of or application to the Bankruptcy Court or the Plan Oversight Committee, except as otherwise provided herein;

(iii)    open and maintain bank accounts in the name of the Plan Trust, draw checks and drafts thereon on the sole signature of the Plan Trustee, and terminate such accounts as the Plan Trustee deems appropriate;

(iv)    sell or liquidate any Plan Trust Asset, without further approval of or application to the Bankruptcy Court or the Plan Oversight Committee, except as otherwise provided herein;

(v)    execute any documents, file any pleadings, and take any other actions related to, or in connection with, the liquidation of the Plan Trust Assets and the exercise of the Plan Trustee's powers granted herein, including the exercise of the Debtors' or the Creditors Committee's respective rights to conduct discovery and oral examination of any party under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(vi)    hold legal title to any and all rights of the beneficiaries in or arising from the Plan Trust Assets, including  the right to vote any Claim or Interest in an unrelated case under the Bankruptcy Code and to receive any distribution thereon;

(vii)    protect and enforce the rights to the Plan Trust Assets by any method it deems appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(viii)    deliver distributions as may be authorized by this Plan;

(ix)    file, if necessary, any and all tax returns with respect to the Plan Trust; pay taxes, if any, properly payable by the Plan Trust; and make distributions to the beneficiaries net of such taxes in accordance with the requirements hereof;

(x)    make all necessary filings in accordance with any applicable law, statute or regulation;

(xi)    determine and satisfy any and all liabilities created, incurred or assumed by the Plan Trust;

(xii)    invest moneys received by the Plan Trust or otherwise held by the Plan Trust in accordance with Article 8F(8) of this Plan;

(xiii)    in the event that the Plan Trustee determines that the beneficiaries or the Plan Trust may, will or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences;

(xiv)    utilize the Plan Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs necessary or advisable to insure the acts and omissions of the Plan Trustee, and the Plan Oversight Committee and its members;

(xv)    obtain unsecured or secured credit to fund Plan Trust administration, litigation or for any other purpose consistent with the Plan Trust Agreement;

(xvi)    create one or more Entities for the purpose of holding or managing Plan Trust Assets, or in connection with the sale or other disposition thereof, or for any other purpose consistent with the Plan, Confirmation Order, and Plan Trust Agreement;

(xvii)    in its sole discretion and without the prior approval of the Plan Oversight Committee, compromise, settle, decline to object to, and/or allow any Disputed Claim asserted in an amount less than (i) $250,000 for an S/A/P Claim or (ii) $2,500,000 for an Unsecured Claim;

(xviii)    preserve and maintain all documents and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred to or otherwise acquired by the Plan Trust and/or the Plan Trustee in accordance with the Plan and the Plan Trust Agreement or, in its in its sole discretion and without the prior approval of the Plan Oversight Committee or the Bankruptcy Court, abandon or destroy such Records in accordance with, and to the extent permitted by, prior Orders of the Bankruptcy Court concerning the preservation and destruction of documents generally or with respect to certain third parties [including, without limitation, Docket Nos. 2724,

3010 and 4858] (collectively, the "Destruction Orders"), each of which Destruction Orders shall be preserved and shall continue in effect against the Plan Trustee as successor to the Debtors, unless the Plan Trustee files a motion on notice to interested Persons seeking to modify any such Destruction Order; provided, however, that notwithstanding anything to the contrary in this Plan, the Plan Trust Agreement, or the Confirmation Order, except as authorized by the Destruction Orders, the Plan Trustee shall not destroy or otherwise abandon any Records absent further Order of the Bankruptcy Court after a hearing upon notice to all interested Persons with an opportunity to be heard;

(xix)    prepare and file post-Confirmation quarterly reports in conformance with the U.S. Trustee guidelines and prepare and report telephonically, and if requested by the Plan Oversight Committee, in writing or in person, a quarterly report of the status of the process of winding down the Estates including Causes of Action; and

(xx)    enforce the rights and perform the obligations of the Debtors under the BofA Global Settlement Stipulation; and

(d)    The Plan Trustee may request an expedited determination of taxes of the Plan Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust.

6.    **Valuation of Assets.**  As soon as possible after the Effective Date the Plan Trustee shall (i) determine the fair market value, as of the Effective Date, of the Plan Trust Assets based on its own good-faith determination, provided that nothing herein shall be construed to prevent the Debtors (if prior to the Effective Date) or the Plan Trustee (if on or after the Effective Date) from seeking a judicial valuation of the Plan Trust Assets as of the Effective Date by the Bankruptcy Court, and (ii) apprise the Holders of Unsecured Claims in writing of such valuation (and indicate in such writing each Holder's percentage ownership interest in the Plan Trust based on each such Holder's relative beneficial interest in the Plan Trust or portion thereof as of the Effective Date).  The valuation shall be used consistently by all parties (including, without

limitation, the Debtors, the Plan Trustee, and Holders of Unsecured Claims) for all federal income tax purposes.

7.     **Payments by the Plan Trust.**   The Plan Trust shall make Distributions to Holders of Allowed Claims in accordance with Article 9 of this Plan.

8.     **Investment Powers of the Plan Trustee and Permitted Cash Expenditures.**   All funds held by the Plan Trustee shall be invested in Cash or short-term highly liquid investments that are readily convertible to known amounts of Cash as more particularly described in the Plan Trust Agreement; provided, however, that the right and power of the Plan Trustee to invest Plan Trust Assets, the proceeds thereof, or any income earned by the Plan Trust, shall be limited to the right and power that a liquidating trust is permitted to exercise pursuant to the Treasury Regulations, any amended Treasury Regulations, or as set forth in IRS rulings, notices, or other IRS pronouncements.   The Plan Trustee may expend the cash of the Plan Trust (x) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Plan Trust during liquidation, (y) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Plan Trust) and (z) to satisfy other liabilities incurred by the Plan Trust in accordance with this Plan or the Plan Trust Agreement.

9.     **Reporting Duties**

(a)     Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Plan Trustee of a private letter ruling if the Plan Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Trustee), the Plan Trustee shall file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulations section 1.671-4(a).   The Plan Trustee shall also send to each holder of a beneficial interest in the Plan Trust an annual statement setting forth the holder's share of items of income, gain, loss, deduction or credit and provide to all such holders information for reporting such items on their federal income tax returns, as appropriate.   The Plan Trustee

59

shall file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by any Governmental Unit.

(b)    Allocations of Plan Trust taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Plan Trust had distributed all of its other assets (valued for this purpose at their tax book value) to the holders of the beneficial interests in the Plan Trust (treating any holder of a Disputed Claim, for this purpose, as a current holder of a beneficial interest in the Plan Trust entitled to distributions), taking into account all prior and concurrent distributions from the Plan Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable loss of the Plan Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Plan Trust Assets.  For this purpose, the tax book value of the Plan Trust Assets shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the Plan Trust, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements**.**

(c)    The Plan Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by any governmental unit.

10.    **Registry of Beneficial Interests.**  To evidence the beneficial interest in the Plan Trust of each Holder of such an interest, the Plan Trustee shall maintain a registry of such Holders.

11.    **Non-Transferable.**  Upon issuance thereof, interests in the Plan Trust shall be non-transferable, except with respect to a transfer by will or under the laws of descent and distribution.  Any such transfer, however, shall not be effective until and unless the Plan Trustee receives written notice of such transfer.

12.    **Termination.**  The Plan Trust shall terminate after its liquidation, administration and distribution of the Plan Trust Assets in accordance with this Plan and its full performance of all other duties and functions set forth herein or in the Plan Trust Agreement.  The Plan Trust shall terminate no later than the fifth (5th) anniversary of the

60

Effective Date; provided, however, that, within a period of six (6) months prior to such termination date or any extended termination date, the Plan Trustee, with the consent of the Plan Oversight Committee, may extend the term of the Plan Trust if it is necessary to facilitate or complete the liquidation of the Plan Trust Assets administered by the Plan Trust; provided further, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Plan Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Plan Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulations 301.7701-4(d).

13.     **Purpose of the Plan Trust.**  The Plan Trust shall be established for the sole purpose of liquidating and distributing the Plan Trust Assets in accordance with Treasury Regulations section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.  Subject to definitive guidance from the IRS, all parties shall treat the Plan Trust as a liquidating trust for all federal income tax purposes.  The Plan Trust shall not be deemed to be the same legal entity as any of the Debtors, but only the assignee of certain assets and liabilities of the Debtors and a representative of the Estates for delineated purposes within the meaning of section 1123(b)(3) of the Bankruptcy Code.  Neither the Plan Trust nor any portion thereof, nor any reserve, account or fund established by this Plan shall be treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9(b)(1).

## G.     PLAN OVERSIGHT COMMITTEE.

1.      **Appointment.**  On the Effective Date, the Plan Oversight Committee shall be deemed appointed and shall adopt bylaws to govern the actions of the Plan Oversight Committee.

2.      **Membership.**  The Plan Oversight Committee shall consist of up to five (5) members of the Creditors Committee chosen from those members of the Creditors Committee that notify counsel to the Creditors Committee in writing no later than fifteen (15) days prior to the Confirmation Hearing of their intention to serve on the Plan Oversight Committee.  In the event that less than five (5) of the members of the Creditors Committee notify counsel to the Creditors Committee of their intent to serve on the Plan Oversight Committee within fifteen (15) days prior to the Confirmation Hearing, then the Creditors Committee will choose from among the Holders of Unsecured Claims to fill any vacancy until five (5) members have been designated.  Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership.  In the event of the resignation of a member of the Plan Oversight Committee, the remaining members may, but need not, designate a successor from among the Holders of Unsecured Claims.  Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership.

3.      **Fiduciary Duties.**  The fiduciary duties that applied to the Creditors Committee prior to the Effective Date shall apply to the Plan Oversight Committee.  The duties and powers of the Plan Oversight Committee shall terminate upon the termination of the Plan Trust.

4.      **Rights and Duties.**  The Plan Oversight Committee's role shall be to advise and approve the actions of the Plan Trustee as more particularly set forth in the

DB02:6785650.26                                                                                                                                    066585.1001

Plan Trust Agreement.  The Plan Oversight Committee shall have the rights and duties

set forth in the Plan Trust Agreement, including without limitation:

(a)    to terminate the Plan Trustee, with or without cause, and upon any such termination or upon the resignation, death, incapacity or removal of the Plan Trustee, to appoint a successor Plan Trustee; provided, that the Plan Oversight Committee shall file with the Bankruptcy Court a notice appointing such successor trustee;

(b)    to approve any release or indemnity in favor of any third party granted or agreed to by the Plan Trustee, except with respect to any sales, liquidations, settlements or Claim allowances that are within the Plan Trustee's discretion under subsections 4(d),(e) and (f) below and other than as set forth in the Plan or the Plan Trust Agreement;

(c)    to authorize the Plan Trustee to commence or continue to prosecute any Cause of Action;

(d)    to approve the settlement of any Cause of Action if the amount sought to be recovered by the Plan Trustee in the complaint or other document initiating or evidencing such Cause of Action exceeds $1,000,000;

(e)    to approve the allowance of any Disputed Claim if the asserted amount of such Claim exceeds (i) $250,000 for any S/A/P Claim, or (ii) $2,500,000 for any Unsecured Claim;

(f)    to approve the sale or liquidation of any Plan Trust Assets by the Plan Trustee for an amount exceeding $1,000,000;

(g)    with respect to each six-month period, to approve any budget for the Plan Trust Operating Expense Reserve prepared by the Plan Trustee in respect of the Plan Trust Operating Expenses and to approve any additional funding of the such reserve;

(h)    to approve the making of Distributions under the Plan, except as set forth herein or in the Plan Trust Agreement;

(i)    to review and object to fees and expenses of Professionals retained by the Plan Trust; and

(j)    to approve of any investment of Cash or other Plan Trust Assets pending distributions to Holders of the beneficial interests in the Plan Trust.

5.    **No Compensation.**  Except for the reimbursement of reasonable actual

costs and expenses incurred in connection with their duties as members of the Plan

DB02:6785650.26                                                                                                    066585.1001

Oversight Committee, including reasonable attorneys fees subject to a cap to be established by the Plan Oversight Committee in its discretion, the members of the Plan Oversight Committee shall serve without compensation.  Reasonable expenses, as set forth in this Article 8G(5), incurred by members of the Plan Oversight Committee may be paid by the Plan Trust without need for approval of the Bankruptcy Court.

6.      **Objection to Fees.**  The Plan Oversight Committee shall have twenty (20) days, or such other period as determined by the Plan Oversight Committee and the Plan Trustee, from the delivery of a fee statement to object to the fees of any professional retained by either the Plan Trust or the Plan Oversight Committee by giving notice of any such objection to the professional seeking compensation or reimbursement.  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  Any objection that remains unresolved fifteen (15) days after it is made, or such later period as the parties may agree, shall be submitted to the Bankruptcy Court for resolution.  The uncontested portion of each invoice shall be paid within thirty (30) days after its delivery to the Plan Oversight Committee and the Plan Trustee.

**H.      LIABILITY, INDEMNIFICATION.**  Neither the Plan Trustee, the Plan Oversight Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Plan Trustee or the Plan Oversight Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Plan Trustee or Plan Oversight Committee, nor shall such Plan Trustee, or any member of the Plan Oversight Committee, be liable for any act or omission taken or omitted to be taken in its capacity as Plan Trustee, or as a member of the Plan Oversight

64

Committee, respectively, other than for specific acts or omissions resulting from such Plan Trustee's or such member's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty.  The Plan Trustee or the Plan Oversight Committee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Plan Trustee or the Plan Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Plan Trustee or Plan Oversight Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud.  The Plan Trust shall indemnify and hold harmless the Plan Trustee and Plan Oversight Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty.

I.      **RETENTION OF PROFESSIONALS.**

1.      **Plan Trust Professionals**

(a)      The Plan Trustee may retain professionals, including but not limited to, counsel, accountants, investment advisors, auditors and other agents on behalf of the Plan Trust as necessary or desirable to carry out the obligations of the Plan Trustee hereunder and under the Plan Trust Agreement.  More specifically, the Plan Trustee may retain counsel in any matter related to administration of the Plan, including counsel that has acted as counsel for the Debtors, the Creditors Committee, the Borrowers Committee or any of the individual members of the Creditors Committee or Borrowers Committee in the Chapter 11 Cases.

(b)      Prior to the Effective Date, the Creditors Committee shall approve a budget for the six (6)-month period beginning on the Effective Date, on a professional-by-professional basis, for professional fees for services to be rendered to the Plan Trust, which budget may be altered from time to time by the Plan Oversight Committee in accordance with the Plan Trust Agreement, provided that any fees and expenses of professionals retained by the Plan Trust that have been incurred prior to the date of the modification of the budget shall constitute budgeted amounts.  Except with respect to services rendered and expenses incurred in connection with Fee Applications pending on the Effective Date or filed after the Effective Date, the Professionals retained by the Debtors or the Creditors Committee shall only be entitled to compensation for services performed and expenses incurred after the Effective Date to the extent, if any, of the amount budgeted for each respective Professional.  Following the Effective Date, the Plan Trustee may pay, without application to the Bankruptcy Court or any other court of competent jurisdiction, such professionals retained by the Plan Trust in accordance with agreements that the Plan Trustee determines to be reasonable. The Plan Oversight Committee shall approve in advance the Plan Trustee's retention of professionals and their compensation arrangements.

2.      **Plan Oversight Committee Professionals.**  The Plan Oversight Committee shall have the right to retain counsel of its choice in the event of a dispute or conflict with the Plan Trustee or for other purposes set forth in the Plan Trust Agreement and the reasonable fees and expenses of such counsel shall be paid by the Plan Trustee.

J.      **PRESERVATION OF ALL CAUSES OF ACTION.**  Except as otherwise provided in the Plan or in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan

66

Trust shall be vested with, retain, and may exclusively enforce and prosecute any claims or Causes of Action that the Debtors, the Estates, the Creditors Committee or the Plan Trust may have against any Person.  The Plan Trustee may pursue such retained claims or Causes of Action in accordance with the best interests of the Creditors, the Estates, or the Plan Trust.

K.    **SUCCESSORS.**  The Plan Trust shall be the successor to the Debtors and/or the Creditors Committee for the purposes of sections 1123, 1129, and 1145 of the Bankruptcy Code and with respect to all pending Causes of Action and other litigation-related matters.  The Plan Trust shall succeed to the attorney-client privilege of the Debtors with respect to all Causes of Action and other litigation-related matters, and the Plan Trustee may waive the attorney-client privilege with respect to any Cause of Action or other litigation-related matter, or portion thereof, in the Plan Trustee's discretion.

**ARTICLE 9.**

**DISTRIBUTIONS UNDER THIS PLAN**

A.    **TIMING OF DISTRIBUTIONS.**

1.    **Distributions on Account of Allowed S/A/P Claims.**  The Plan Trustee shall pay any Allowed S/A/P Claim against the Debtors in Cash from the S/A/P Claims Reserve, except as otherwise provided in this Plan, as soon as practicable after the later of (a) the Effective Date, and (b) the date upon which any such Claim becomes an Allowed Claim.

2.    **Interim Distributions on Account of Allowed Unsecured Claims.** Subject to approval of the Plan Oversight Committee as set forth in the Plan Trust Agreement, the Plan Trustee shall (a) make annual interim Distributions on account of Allowed Unsecured Claims from the Net Distributable Assets or BofA Syndicate Net Distributable Assets, as applicable, of the applicable Estate then available, provided that

67

any such distribution is warranted, economical and not unduly burdensome to the Plan Trust, and (b) have the right to make more frequent interim distributions to Holders of Allowed Unsecured Claims if the Plan Trustee determines that such interim distributions are warranted, economical and not unduly burdensome to the Plan Trust; provided, however, that any such distribution(s) shall only be made if (i) the Plan Trust Operating Expense Reserve is fully funded and will remain fully funded after such interim distributions are made; (ii) the S/A/P Claims Reserve is fully funded and will remain fully funded after such interim distributions are made; (iii) the Unsecured Claims Reserve of the applicable Estate is fully funded and will remain fully funded after such interim distributions are made; and (iv) the Plan Trustee retains amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Plan Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Plan Trust in accordance with this Plan or the Plan Trust Agreement.

This provision shall be interpreted to be consistent with Revenue Procedure 94-45 § 3.10.

3.        **Final Distributions on Allowed Unsecured Claims.**  Notwithstanding anything else in this Plan, after the settlement or satisfaction of all S/A/P Claims and Unsecured Claims, the prosecution, settlement, or abandonment of all Causes of Action, and the liquidation or abandonment of all other Plan Trust Assets, the Plan Trustee shall distribute, as soon as practicable, all remaining Plan Trust Assets pursuant to the terms of this Plan.

B.      **RESERVES.**

1.      **Plan Trust Operating Expense Reserve.**  On the Effective Date, the Plan Trustee shall establish the Plan Trust Operating Expense Reserve to fund administrative and all other miscellaneous needs of the Plan Trust pursuant to the Plan, Confirmation Order and Plan Trust Agreement.  The initial amount of the Plan Trust Operating Expense Reserve shall be based on the Plan Trustee's good faith estimate of the amount necessary to complete the Plan Trust's obligations under this Plan and the Plan Trust Agreement.  The Plan Trust shall pay all costs and expenses related to carrying out its obligations under this Plan and the Plan Trust Agreement from the Plan Trust Operating Expense Reserve and, in the Plan Trustee's discretion, and with approval of the Plan Oversight Committee, may add additional amounts to the Plan Trust Operating Expense Reserve for administration and other miscellaneous needs of the Plan Trust without further notice or motion in accordance with the terms of the Plan, Confirmation Order and Plan Trust Agreement.

2.      **S/A/P Claims Reserve.**  On the Effective Date, the Plan Trustee shall establish the S/A/P Claims Reserve for all Disputed S/A/P Claims and Allowed S/A/P Claims not paid prior to the Effective Date.  The amount reserved for each Disputed Administrative Claim and each Allowed Administrative Claim not paid prior to the Effective Date shall be the lower of (i) the amount set forth in the request for payment of Administrative Claim filed by the Holder of such Claim, or, if no such request has been Filed, the amount set forth for such Claim in the Debtors' books and records, and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court as set forth in Article 10F of this Plan; provided, however, that where a

69

Creditor holds such Claims for which more than one Debtor is alleged to be liable, the

Plan Trustee shall contribute to the S/A/P Claims Reserve on account of only one such

Claim.  The amount reserved for a Disputed Priority Tax Claim, Disputed Priority Claim,

or Disputed Miscellaneous Secured Claim or for an Allowed Priority Tax Claim,

Allowed Priority Claim, or Allowed Miscellaneous Secured Claim that is not paid prior

to the Effective Date shall be the lower of (i) the amount set forth in the Proof of Claim

filed by the Holder of such Claim, or, if no Proof of Claim has been Filed, the Scheduled

amount set forth for such Claim if it is shown on the Schedules as being noncontingent,

liquidated, and undisputed, and (ii) the estimated amount of such Claim for distribution

purposes, as determined by the Bankruptcy Court pursuant to Article 10F of this Plan;

provided, however, that where a Creditor holds such Claims for which more than one

Debtor is alleged to be liable, the Plan Trustee shall contribute to the S/A/P Reserve on

account of only one such Claim.  As soon as practicable after (and to the extent) that a

Disputed S/A/P Claim becomes an Allowed S/A/P Claim, the Plan Trustee shall make a

payment from the S/A/P Claims Reserve to the Holder of such Claim in the Allowed

amount of such Claim, unless such Claim is an Allowed Miscellaneous Secured Claim

for which the Plan Trustee elects an alternate treatment pursuant to Article 4B of this

Plan.  After (and to the extent) a Disputed S/A/P Claim is determined not to be an

Allowed S/A/P Claim, the portion of the S/A/P Claims Reserve reserved for such Claim

shall be released from the S/A/P Claims Reserve and distributed pursuant to the terms of

this Plan.  Any amount remaining in the S/A/P Claims Reserve following the final

disposition of all S/A/P Claims shall constitute a Plan Trust Asset and shall be released

from the S/A/P Claims Reserve and distributed pursuant to the terms of this Plan.  The

S/A/P Claims Reserve shall be funded on the Effective Date from Plan Trust Assets consisting of Cash.  If at any time the Plan Trustee determines the amount reserved in the S/A/P Claims Reserve is insufficient to satisfy all Disputed S/A/P Claims and Allowed S/A/P Claims not previously paid, the Plan Trustee, with approval of the Plan Oversight Committee, may add additional amounts to the S/A/P Claims Reserve from the Plan Trust Operating Expense Reserve, from Plan Trust Assets consisting of Cash, and/or from the Unsecured Claims Reserves, without further notice or motion in accordance with the terms of the Plan, Confirmation Order and Plan Trust Agreement.

3.    **Unsecured Claims Reserves.**  Prior to making any Distributions on account of Unsecured Claims, the Plan Trustee shall establish an Unsecured Claims Reserve on account of each applicable Debtor for the payment of any Disputed Unsecured Claims to the extent such Disputed Unsecured Claims become Allowed Unsecured Claims.  With respect to any interim distribution made to Holders of Allowed Unsecured Claims, the amount reserved for each Disputed Unsecured Claim against any Debtor shall be the amount that would be distributed on account of such Claim if it was an Allowed Unsecured Claim based upon the Claim being in the lower of (i) the amount set forth in Proof of Claim filed by the Holder of such Claim, or if no Proof of Claim has been filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court pursuant to Article 10F of this Plan.  As soon as practicable after (and to the extent) that a Disputed Unsecured Claim against the applicable Debtor becomes an Allowed Unsecured Claim against such Debtor, the Plan Trustee shall make a payment from the applicable

71

Unsecured Claims Reserve to the Holder of such Claim based on the proportionate amount, if any, that the Plan Trust has paid on account of Allowed Claims belonging to the same Class as such Claim, and any remaining amount reserved on account of such Claim shall be released from the applicable Unsecured Claims Reserve and distributed pursuant to the terms of this Plan.  After (and to the extent) a Disputed Unsecured Claim against the applicable Debtor becomes a Disallowed Claim, the portion of the applicable Unsecured Claims Reserve reserved for such Claim shall be released from the applicable Unsecured Claims Reserve and distributed pursuant to the terms of this Plan.  Any amount remaining in an Unsecured Claims Reserve following the final disposition of all Disputed Unsecured Claims against the applicable Debtor shall be released from the applicable Unsecured Claims Reserve and distributed pursuant to the terms of this Plan.

**C.      DISTRIBUTION CALCULATIONS.**

1.      **Calculation of Net Distributable Assets and BofA Syndicate Net Distributable Assets.**  The total gross Cash proceeds of Plan Trust Assets allocated to an Estate pursuant to the Stipulated Asset Allocations as of any date of determination, less the amount, if any, of Cash required to be (i) contributed to the Plan Trust Operating Expense Reserve as additional funding pursuant to Article 9B(1) hereof, and (ii) reserved for payment of Disputed Unsecured Claims that become Allowed Unsecured Claims pursuant to Article 9B(3) hereof, shall constitute the "Net Distributable Assets" of such Estate as of such date.

The total gross Cash proceeds of Plan Trust Assets other than Designated REO Assets allocated to an Estate pursuant to the Stipulated Asset Allocations as of any date of determination, less the amount, if any, of Cash required to be (i) contributed to the

72

Plan Trust Operating Expense Reserve as additional funding pursuant to Article 9B(1) hereof, and (ii) reserved for payment of Disputed Unsecured Claims that become Allowed Unsecured Claims pursuant to Article 9B(3) hereof, shall constitute the "BofA Syndicate Net Distributable Assets" of such Estate as of such date.

       2.      **Calculation of Interim Distributions.**  The Plan Trustee may make an interim distribution

       (a)    to Holders of Allowed Unsecured Claims (other than an Allowed BofA Syndicate Unsecured Claim) against a Debtor up to the amount of the Net Distributable Assets of the Debtor's Estate calculated as of the date of the interim distribution; and

       (b)    to Holders of Allowed BofA Syndicate Unsecured Claims up to the amount of the BofA Syndicate Net Distributable Assets calculated as of the date of the interim distribution.

**D.**      **PAYMENT IN FULL OF UNSECURED CLAIMS.**

       1.      **Limitation on Distributions on Account of Allowed Unsecured Claims.**

Any Allowed Unsecured Claim is paid in full under this Plan at such time as the Holder of such Allowed Unsecured Claim has been paid the allowed amount of such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court); provided, however, that where a Creditor holds Allowed Unsecured Claims for which more than one Debtor is liable, whether jointly, as co-obligor, pursuant to a Guaranty or otherwise, such Creditor is not entitled to receive distributions under this Plan in excess of the Allowed amount of such Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court), and the Creditor's Allowed Unsecured Claim for which more than one Debtor is liable shall be deemed paid in full at such time as the Creditor has been paid the Allowed

amount of one such Allowed Unsecured Claim plus interest thereon (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court).

2.      **Payment of Interest on Allowed Unsecured Claims.**  If, and only if, all Holders of Allowed Unsecured Claims against an applicable Debtor have been paid 100% of the amount of their Allowed Claims, such Holders shall be entitled to receive interest (calculated as of the Petition Date at a rate to be determined by the Bankruptcy Court) on account of such Allowed Claims, from any remaining proceeds realized from the liquidation or other disposition of Assets of such Debtor; provided, however; that with respect to Allowed Unsecured Claims for which more than one Debtor is liable, interest is payable on such Claims based on the allowed amount of the joint liability fixed by such Claims.

3.      **Payment in Full of Allowed Unsecured Claims for Which More Than One Debtor is Liable.**  To the extent a Holder of Allowed Unsecured Claims for which more than one Debtor is liable is paid 100% of the allowed amount of the joint liability fixed by such Claims through interim distributions, the Plan Trustee shall retain any further interim distributions that would be made on account of such Claims as if only one Debtor were liable for such Claim until the Plan Trustee makes a final distribution under this Plan.  Prior to making a final distribution under this Plan, the Plan Trustee shall determine, with respect to every Allowed Unsecured Claim for which more than one Debtor is liable that has been paid 100% of the allowed amount of the joint liability fixed by such Claim, the amount of distributions in respect of such Claim made on account of such Debtor's Estate.  The Plan Trustee shall reallocate the excess distributions, if any,

that it has retained among the liable Estates in proportion to the amount of distributions made to Claims from such Estates on account of such joint liability.

E.    **MANNER OF DISTRIBUTION.**  Notwithstanding any other provisions of this Plan or the Plan Trust Agreement providing for a distribution or payment in Cash, at the option of the Plan Trustee, any distributions under this Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer, or by ACH.  Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan.  Any Cash distributions or payments will be issued to Holders in whole cents (rounded to the nearest whole cent when and as necessary).

F.    **DE MINIMIS DISTRIBUTIONS.**  All De Minimis Distributions will be held by the Plan Trust for the benefit of the Holders of Allowed Claims entitled to De Minimis Distributions.  When the aggregate amount of De Minimis Distributions held by the Plan Trust for the benefit of a Creditor exceeds $50.00, the Plan Trust will distribute such De Minimis Distributions to such Creditor.  If, at the time that the final distribution under this Plan is to be made, the De Minimis Distributions held by the Plan Trust for the benefit of a Creditor total less than $50.00, such funds shall not be distributed to such Creditor, but rather, shall constitute Plan Trust Assets to be allocated among the Estates in accordance with the Stipulated Asset Allocation.

G.    **DELIVERY OF DISTRIBUTIONS.** Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be made by the Debtors, if on the Effective Date, or the Plan Trustee, if after the Effective Date, (i) at the addresses set forth on the Proofs of Claim filed by such Holders (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtors or the Plan Trust have been notified

in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes filed with the Bankruptcy Court and served on the Plan Trustee after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and written notice of address change has not been filed with the Bankruptcy Court and served on the Plan Trustee.

**H.    UNDELIVERABLE DISTRIBUTIONS.**  If payment or distribution to the Holder of an Allowed Claim under this Plan is returned for lack of a current address for the Holder or otherwise, the Plan Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment.  If, after the passage of ninety (90) days, the payment or distribution still cannot be made, the payment or distribution and any further payment or distribution to the Holder shall be distributed to the Holders of Allowed Claims in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied and released, with no recourse to the Plan Trust, the Plan Trustee or the Plan Trust Assets, to the same extent as if payment or distribution had been made to the Holder of the Allowed Claim.

**I.    SETOFFS AND RECOUPMENTS.**  The Debtors, if before the Effective Date, or the Plan Trustee, if after the Effective Date, may, to the extent permitted by sections 502(h), 553, and 558 of the Bankruptcy Code or applicable non-bankruptcy law, but shall not be required to, set off against or recoup from any Claim on which payments are to be made pursuant to this Plan, any claims or Causes of Action of any nature whatsoever that the Debtors, the Estates, the Creditors Committee or the Plan Trust may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtors, the Estates, the Creditors Committee or

76

the Plan Trust of any right of setoff or recoupment that the Debtors, the Creditors Committee, the

Plan Trust or the Estates may have against the Holder of such Claim, nor of any other claim or

Cause of Action.

       **J.**       **DISTRIBUTIONS IN SATISFACTION; ALLOCATION.**  Except for the

obligations expressly imposed by this Plan and the property and rights expressly retained under

this Plan, if any, the distributions and rights that are provided in this Plan shall be in complete

satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Interests

in the Plan Trust or the Plan Trust Assets, whether known or unknown, arising or existing prior

to the Effective Date.  Distributions received in respect of Allowed Unsecured Claims will be

allocated first to the principal amount of such Claims, with any excess allocated to unpaid

accrued interest.

       **K.**       **CANCELLATION OF NOTES AND INSTRUMENTS.**

       1.       As of the Effective Date, all notes, agreements and securities evidencing

Claims or Interests and the rights thereunder of the Holders thereof shall, with respect to

the Debtors, be canceled and deemed null and void and of no further force and effect, and

the Holders thereof shall have no rights against the Debtors, the Plan Trust, the Plan Trust

Assets or the Estates, and such instruments shall evidence no such rights, except the right

to receive the distributions provided for in this Plan.  Notwithstanding the foregoing and

anything else contained in the Plan, the Subordinated Trust Preferred Indentures will

continue in effect solely for the purposes of (i) permitting an Indenture Trustee to

maintain or assert any right pursuant to the terms of this Plan for payment of Indenture

Trustee Expenses and to exercise any contractual right of priority or charging lien under

any of the Subordinated Trust Preferred Indentures with respect to any distributions made

by such Indenture Trustee to Holders of Subordinated Trust Preferred Claims;

(ii) permitting an Indenture Trustee to maintain and enforce any right to indemnification,

contribution or other Claim it may have under the applicable Subordinated Trust

Preferred Indentures (provided, however, that any right to indemnification or contribution

from, or Claim against, a Debtor entity arising under any Subordinated Trust Preferred

Indenture, whether arising on, before, or after the Effective Date, shall constitute a Class

1C(1), 1C(3), 2C(1) or 2C(3) Claim, as applicable, and shall be Allowed or Disallowed in

accordance with Article 10 of this Plan); and (iii) permitting an Indenture Trustee to

exercise its rights and obligations relating to the interests of the Holders of Subordinated

Trust Preferred Claims and its relationship with the Holders of Subordinated Trust

Preferred Claims pursuant to the applicable Subordinated Trust Preferred Indenture,

including its right to appear and be heard in these Chapter 11 Cases.

2.      From and after the Effective Date, the Plan Trust shall be deemed the sole

capital stockholder, shareholder, or managing member, as applicable, of each of the

Debtors and shall be invested with all the rights and powers exercisable by a sole capital

stockholder, shareholder, or managing member, as applicable, under the respective

Debtors' corporate governance documents and applicable law.

3.      As soon as practicable after the Effective Date, the Plan Trustee or its duly

authorized representative shall file with the SEC an SEC Form 15 on behalf of AHM

Investment terminating the duty to file reports pursuant to SEC Rule 12g-4(a)(1).

L.      **NO INTEREST ON CLAIMS.**  Unless otherwise specifically provided for in

this Plan and except as set forth in Article 9 hereof, the Confirmation Order, or a postpetition

agreement in writing between the Debtors and a Holder of a Claim and approved by an Order of

the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claim, and no

Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any

Claim.  In addition, and without limiting the foregoing or any other provision of the Plan,

Confirmation Order or Plan Trust Agreement, interest shall not accrue on or be paid on any

Disputed Claim in respect of the period from the Effective Date to the date a final distribution is

made when and if such Disputed Claim becomes and Allowed Claim.

**M.    WITHHOLDING TAXES.**  The Debtors, if on the Effective Date, and the Plan

Trustee, if after the Effective Date, shall be entitled to deduct any federal, state or local

withholding taxes from any payments under this Plan.  As a condition to making any distribution

under this Plan, the Debtors, if on the Effective Date, and the Plan Trustee, if after the Effective

Date, may require that the Holder of an Allowed Claim provide such Holder's taxpayer

identification number and such other information and certification as may be deemed necessary

for the Debtors, if on the Effective Date, and the Plan Trustee, if after the Effective Date, to

comply with applicable tax reporting and withholding laws.

**N.    REPORTS.**  From the Effective Date until a Final Decree is entered, the Plan

Trustee shall, within thirty (30) days of the end of each fiscal quarter, file with the Court and

submit to the U.S. Trustee quarterly reports setting forth all receipts and disbursements of the

Plan Trust as required by the U.S. Trustee guidelines.

**ARTICLE 10.**

**PROVISIONS FOR CLAIMS ADMINISTRATION AND DISPUTED CLAIMS**

**A.    RESERVATION OF RIGHTS TO OBJECT TO CLAIMS.**  Unless a Claim or

Interest is expressly described as an Allowed Claim or Allowed Interest pursuant to or under this

Plan, or otherwise becomes an Allowed Claim or Allowed Interest prior to the Effective Date,

upon the Effective Date, the Plan Trustee shall be deemed to have a reservation of any and all

79

rights, interests and objections of the Debtors, the Creditors Committee or the Estates to any and all Claims or Interests and motions or requests for the payment of or on account of Claims or Interests, whether administrative expense, priority, secured or unsecured, including without limitation any and all rights, interests and objections to the validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured Claims, Subordinated Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.  The Debtors' or the Plan Trustee's failure to object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Plan Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim is sought to be enforced by the Holder of such Claim or Interest.

B.    **OBJECTIONS TO CLAIMS AND INTERESTS.**  Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim or Interest.  From and after the Effective Date, the Plan Trustee will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims and Interests (including those Claims or Interests that are subject to objection by the Debtors as of the Effective Date), subject to any approvals of the Plan Oversight Committee that may be required.  Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims or Interests by the Plan Trustee will be filed and served not later than 1 year after the later of (i) the Effective Date or (ii) the date such Claim is filed, provided that the Plan Trustee may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by filing a motion with the Bankruptcy Court without any requirement to provide notice to any party, based upon a reasonable exercise of the Plan Trustee's business judgment.  A motion

seeking to extend the deadline to object to any Claim shall not be deemed an amendment to this Plan.

C.     **SERVICE OF OBJECTIONS.**  An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Plan Trustee effects service by any of the following methods: (i) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (ii) to the extent counsel for such Holder is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or Interest or other representative identified on the Proof of Claim or Interest or any attachment thereto; or (iii) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of such Holder in the Chapter 11 Cases.

D.     **DETERMINATION OF CLAIMS.**  Except as otherwise agreed by the Debtors or the Plan Trustee, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Cases, or deemed timely filed by order of the Bankruptcy Court, may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties without the need for Bankruptcy Court approval, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtors, the Plan Trustee, or any other party in interest on or prior to any applicable deadline for filing such objection or application with respect to such Claim.  Any such Claim so determined and

liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be

satisfied in accordance with this Plan.  Nothing contained in this Article 10 shall constitute or be

deemed a waiver of any claims, rights, interests or Causes of Action that the Debtors or the Plan

Trustee may have against any Person in connection with or arising out of any Claim or Claims,

including without limitation any rights under 28 U.S.C. § 157.

E.    **NO DISTRIBUTIONS PENDING ALLOWANCE.**  No payments or

distributions will be made with respect to all or any portion of a Disputed Claim unless and until

all objections to such Disputed Claim have been settled or withdrawn or have been determined

by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however,

that in the event that only a portion of such Claim is an Allowed Claim, the Plan Trustee may, in

its discretion, make a distribution pursuant to the Plan on account of the portion of such Claim

that is an Allowed Claim.

F.    **CLAIM ESTIMATION.**  In order to effectuate distributions pursuant to this

Plan and avoid undue delay in the administration of the Chapter 11 Cases, the Debtors (if on or

prior to the Effective Date) and the Plan Trustee (if after the Effective Date), after notice and a

hearing (which notice may be limited to the Holder of such Disputed Claim), shall have the right

to seek an Order of the Bankruptcy Court, pursuant to section 502(c) of the Bankruptcy Code,

estimating or limiting the amount of (i) property that must be withheld from or reserved for

distribution purposes on account of such Disputed Claim(s), (ii) such Claim for claim allowance

or disallowance purposes, or (iii) such Claim for any other purpose permitted under the

Bankruptcy Code; provided, however, that the Bankruptcy Court shall determine (i) whether

such Claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code and

(ii) the timing and procedures for such estimation proceedings, if any.

G.      **ALLOWANCE OF CLAIMS SUBJECT TO SECTION 502 OF THE**

**BANKRUPTCY CODE.**  Allowance of Claims shall be in all respects subject to the provisions

of section 502 of the Bankruptcy Code, including without limitation subsections (b), (d), (e), (g),

(h), and (i) thereof.


## ARTICLE 11.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES; D&O OBLIGATIONS AND EMPLOYEE BENEFIT PLANS

A.      **REJECTION OF UNASSUMED EXECUTORY CONTRACTS AND**

**UNEXPIRED LEASES.**  On the Effective Date, except for any Executory Contract (i) that was

previously assumed or rejected by an Order of the Bankruptcy Court or otherwise pursuant to

section 365 of the Bankruptcy Code or (ii) that is subject to a pending motion to assume or reject

before the Bankruptcy Court, each Executory Contract entered into by the any of the Debtors

prior to the Petition Date that has not previously expired or terminated pursuant to its own terms,

shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, effective as of the

Confirmation Date.  The Confirmation Order shall constitute an Order of the Bankruptcy Court

approving such rejection pursuant to sections 365 and 1123 of the Bankruptcy Code as of the

Confirmation Date.

B.      **REJECTION OF D&O INDEMNIFICATION OBLIGATIONS.**  Without

limiting the generality of Article 11A above, and solely for the avoidance of doubt, the

obligations of the Debtors to indemnify any Person or Entity having served as one of their

officers and directors, or currently serving as one of their directors, officers, or employees, by

reason of such Person's or Entity's service in such capacity, to the extent provided in the

Debtors' corporate governance documents or by a written agreement with the Debtors or by the

applicable states' corporation law, each as applicable, shall be deemed and treated as Executory Contracts that are rejected by the Debtors pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date.

**C.      REJECTION EMPLOYEE BENEFIT PLANS.**  Without limiting the generality of Article 11A above, and for the avoidance of doubt, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees, retirees and non-employee directors and the employees and retirees of their subsidiaries, including all savings plans, retirement plans, pension plans, healthcare plans, disability plans, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans, shall be deemed and treated as Executory Contracts that are rejected by the Debtors pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date.

**D.      REJECTION DAMAGES BAR DATE.**  Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, any Proofs of Claim with respect to a Claim arising from the rejection of Executory Contracts under this Plan (including Claims under section 365(d)(3) of the Bankruptcy Code) must be filed with EPIQ, P.O. Box 5076, FDR Station, New York, NY 10150-5076 (Telephone (866) 493-7277), and a copy served on counsel for the Debtors, the Creditors Committee and the Plan Trustee, within thirty (30) days after the Effective Date, or such Claim shall not be entitled to a distribution or be enforceable against the Debtors' Estates, the Plan Trust, the Plan Trustee, their successors, their assigns, or their Assets. Any Allowed Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 1C(1), 2C(1), 3C(1), 4C(1), 5C(1), 6C, 7C, and 8C (general Unsecured Claims

against each Debtor), as applicable.  Nothing in this Plan extends or modifies any previously

applicable Bar Date.

### E.    INSURANCE POLICIES.

1.    To the extent that any or all of the insurance policies to be set forth in a

Supplemental Plan Document (the "Designated Insurance Policies") are considered to be

Executory Contracts, then notwithstanding anything contained in this Plan to the

contrary, this Plan shall constitute a motion to assume the Designated Insurance Policies

in connection with this Plan and to assign them to the Plan Trust.  Subject to the

occurrence of the Effective Date, the entry of the Confirmation Order shall constitute

approval of such assumption and assignment pursuant to section 365(a) of the

Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in

the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11

Cases.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order

or agreed to by the parties thereto prior to the Effective Date, no payments are required to

cure any defaults of the Debtors existing as of the Confirmation Date with respect to each

Designated Insurance Policy.  To the extent that the Bankruptcy Court determines

otherwise with respect to any Designated Insurance Policy, the Debtors reserve the right

to seek rejection of such insurance policy or other available relief.  The Plan shall not

affect contracts that have been assumed and assigned by Order of the Bankruptcy Court

prior to the Confirmation Date.

2.    For the avoidance of doubt, all rights under any Designated Insurance

Policy that is not considered to be an Executory Contract, and all rights under any other

insurance policies under which the Debtors may be beneficiaries, (including the rights to

make, amend, prosecute, and benefit from claims) shall be preserved and shall vest in the

Plan Trust pursuant to Article 8E(1) hereof and § 1123(a)(5)(B) of the Bankruptcy Code.

      3.      **Insurance Neutrality.**  Nothing in this Plan, any exhibit to the Plan, any

Supplemental Plan Document, or any Order confirming this Plan, shall in any way

operate to, or have the effect of, impairing in any respect the legal, equitable or

contractual rights and defenses, if any, of insurers under their respective insurance

policies or applicable non-bankruptcy law.

## ARTICLE 12.

## EFFECT OF CONFIRMATION AND INJUNCTION

      **A.**      **PLAN INJUNCTION.**  Except as otherwise expressly provided in this Plan, the

documents executed pursuant to this Plan, or the Confirmation Order, on and after the Effective

Date, all Persons who have held, currently hold, or may hold Claims against or Interests in the

Debtors or the Estates that arose prior to the Effective Date (including but not limited to states

and other governmental units, and any state official, employee, or other entity acting in an

individual or official capacity on behalf of any state or other governmental units) are

permanently enjoined from, on account of such Claims or Interests: (i) commencing or

continuing in any manner, directly or indirectly, any action or other proceeding against any

Protected Party, any property of any Protected Party, or the BofA Mortgage Loans nominally

held by AHM Corp. and AHM Acceptance pursuant to the terms of the BofA Global Settlement

Stipulation (the "BofA Mortgage Loan Property"); (ii) enforcing, attaching, executing,

collecting, or recovering in any manner, directly or indirectly, any judgment, award, decree, or

order against any Protected Party, any property of any Protected Party, or the BofA Mortgage

Loan Property; (iii) creating, perfecting, or enforcing, directly or indirectly, any lien or

encumbrance of any kind against any Protected Party, any property of any Protected Party, or the

BofA Mortgage Loan Property; (iv) asserting or effecting, directly or indirectly, any setoff or right of subrogation of any kind against any obligation due to any Protected Party, any property of any Protected Party, or the BofA Mortgage Loan Property; and (v) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of this Plan.  Any Person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.  Nothing contained in this Article 12 shall enjoin or prohibit (i) the Holder of a Disputed Claim from litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan or (ii) the interpretation or enforcement by any party in interest of any of the obligations of the Debtors, the Plan Trustee, or the Plan Trust under this Plan.  The Confirmation Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any Claim or Cause of Action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 4 of this Plan have been made or are not yet due under Article 4 of this Plan.

> **B.**    **CONTINUATION OF EXISTING INJUNCTIONS AND STAYS.**  Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, this Plan, by orders of the Bankruptcy Court, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Plan Trust.

C.      **EXCULPATION.**  On and after the Effective Date, none of the Exculpated

Parties shall have or incur any liability for, and each Exculpated Party is hereby released from,

any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or

Interest, or to any other party in interest, for any act or omission that occurred during and in

connection with the Chapter 11 Cases or in connection with the preparation and filing of the

Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of this Plan, the

consummation of this Plan, and/or the administration of this Plan and/or the property to be

distributed under this Plan, except for claims, causes of action or liabilities arising from the gross

negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any

Exculpated Party, in each case subject to determination of such by final order of a court of

competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably

rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this

Plan.  Without limiting the generality of the foregoing, the Debtors, the Estates, the Creditors

Committee, and their respective officers, directors, employees, members, attorneys, crisis

managers, financial advisors, and professionals, shall be entitled to and granted the protections

and benefits of section 1125(e) of the Bankruptcy Code.  No provision of this Plan, the

Disclosure Statement, or the Confirmation Order shall be deemed to act upon or release any

claims, Causes of Action or liabilities that the Plan Trust, the Estates, or any party in interest may

have against or to any Person for any act, omission, or failure to act that occurred prior to the

Petition Date other than in connection with the preparation and filing of the Chapter 11 Cases,

nor shall any provision of this Plan or the Confirmation Order be deemed to act to release any

Avoidance Actions.

D.    **BINDING EFFECT OF PLAN.**  Except as otherwise provided in

section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the

occurrence of the Effective Date, the provisions of this Plan shall bind any Holder of a Claim

against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether

or not the Claim or Interest of such Holder is impaired under the Plan, whether or not such

Holder has accepted this Plan and whether or not the Holder has filed a Claim.  The rights,

benefits and obligations of any Person named or referred to in the Plan, whose actions may be

required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of

any heir, executor, administrator, successor or assign of such Person (including, without

limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

E.    **NO EFFECT ON OBJECTIONS TO FEE APPLICATIONS.**  Except as

provided in Article 3B(3)(ii) hereof, nothing contained in this Plan shall affect the rights of

parties in interest to object to Fee Applications or obviate the power of the Bankruptcy Court to

issue orders with respect to Fee Applications.

## ARTICLE 13.

## CONDITIONS PRECEDENT

A.    **CONDITIONS PRECEDENT TO EFFECTIVE DATE.**  This Plan shall not

become effective unless and until each of the following conditions shall have been satisfied in

full in accordance with the provisions specified below:

1.    **Approval of Disclosure Statement.**  The Bankruptcy Court shall have

approved a disclosure statement to this Plan in form and substance acceptable to the

Debtors in their sole and absolute discretion.

2.    **Approval of Plan Compromises.**  The compromises and settlements

contained in this Plan, including without limitation those set forth in Articles 4, 6, and 7

of this Plan, shall be approved without material modification by Final Order in

accordance with Bankruptcy Rule 9019 and shall be binding and enforceable against all

Holders of Claims and Interests under the terms of this Plan.

> 3.       **Form of Confirmation Order.**  The Confirmation Order shall be in form
and substance acceptable to the Debtors in their sole and absolute discretion.

> 4.       **Entry of Confirmation Order.**  The Confirmation Order (i) shall have
been entered by the Bankruptcy Court, (ii) shall not be subject to any stay of

effectiveness, and (iii) shall have become a Final Order, the Confirmation Date shall have

occurred, and no request for revocation of the Confirmation Order under section 1144 of

the Bankruptcy Code shall have been made, or, if made, shall remain pending.

> 5.       **Plan Trust.**  The Plan Trust shall have been formed, and all formation
documents for such entities shall have been properly executed and filed as required by

this Plan and applicable law.

> 6.       **Plan Trustee.**  The appointment of the Plan Trustee shall have been
confirmed by order of the Bankruptcy Court.

**B.       REVOCATION, WITHDRAWAL, OR NON-CONSUMMATION OF**

**PLAN.**  If after the Confirmation Order is entered, each of the conditions to effectiveness has not

been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon

motion by the Debtors, the Confirmation Order may be vacated by the Bankruptcy Court;

provided however, that notwithstanding the filing of such a motion, the Confirmation Order shall

not be vacated if each of the conditions to effectiveness is either satisfied or duly waived before

the Bankruptcy Court enters an order granting the relief requested in such motion.  As used in the

preceding sentence, a condition to effectiveness may only be waived by a writing executed by

the Debtors.  If the Confirmation Order is vacated pursuant to this Section 13B, this Plan shall be null and void in all respects, and nothing contained in this Plan, the Disclosure Statement, nor any pleadings filed in connection with the approval thereof shall (i) constitute a waiver or release of any Claims against or Interests in the Debtors, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtors (iii) prejudice in any manner the rights of the Debtors in the Chapter 11 Cases, or (iv) constitute an admission of any fact or legal position or a waiver of any legal rights held by any party prior to the Confirmation Date.

## ARTICLE 14.

## ADMINISTRATIVE PROVISIONS

**A.**     **RETENTION OF JURISDICTION.**  Pursuant to sections 105, 1123(a)(5), and 1142(b) of the Bankruptcy Code, on and after the Confirmation Date, the Bankruptcy Court shall retain jurisdiction to the fullest extent permitted by 28 U.S.C. §§ 1334 and 157 (i) to hear and determine the Chapter 11 Cases and all core proceedings arising under the Bankruptcy Code or arising in the Chapter 11 Cases, and (ii) to hear and make proposed findings of fact and conclusions of law in any non-core proceedings related to the Chapter 11 Cases, including, without limitation, matters concerning the interpretation, implementation, consummation, execution, or administration of the Plan.  Without limiting the generality of the foregoing, the Bankruptcy Court's post-Confirmation Date jurisdiction shall include jurisdiction:

1.     over all Causes of Action (including, without limitation, the Designated Causes of Action and Avoidance Actions) and proceedings to recover Assets of the Estates or of the Plan Trust, wherever located;

2.     over motions to assume, reject, or assume and assign executory contracts or unexpired leases, and the allowance or disallowance of any Claims resulting therefrom;

3.     over disputes concerning the ownership of Claims or Interests;

4.      over disputes concerning the distribution or retention of consideration under this Plan;

5.      over objections to Claims, motions to allow late-filed Claims, and motions to estimate Claims;

6.      over proceedings to determine the extent, validity, and/or priority of any Lien asserted against property of the Debtors, the Estates, or the Plan Trust, or property abandoned or transferred by the Debtors, the Estates, or the Plan Trustee;

7.      over proceedings to determine the amount, if any, of interest to be paid to Holders of Allowed Unsecured Claims if any Allowed Unsecured Claims are paid in full pursuant to the terms of this Plan;

8.      over matters related to the assets of the Estates or of the Plan Trust, including, without limitation, liquidation of Plan Trust Assets; provided that the Plan Trustee shall have no obligation to obtain the approval or authorization of the Bankruptcy Court or file a report to the Bankruptcy Court concerning the sale, transfer, assignment or other disposition of Plan Trust Assets; and provided further that the Plan Trustee may seek orders of the Bankruptcy Court approving the sale, transfer, assignment or other disposition of Plan Trust Assets as appropriate to facilitate such transactions;

9.      over matters relating to the subordination of Claims or Interests;

10.     to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

11.     to consider and approve modifications of or amendments to this Plan, to cure any defects or omissions or to reconcile any inconsistencies in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

12.     to issue orders in aid of execution, implementation, or consummation of this Plan;

13.     over disputes arising from or relating to the Plan, the Confirmation Order, or any

agreements, documents, or instruments executed in connection therewith;

14.     over requests for allowance and/or payment of Claims entitled to priority under

section 507(a)(2) of the Bankruptcy Code and any objections thereto;

15.     over all Fee Applications;

16.     over matters concerning state, local, or federal taxes in accordance with sections

346, 505, and 1146 of the Bankruptcy Code;

17.     over conflicts and disputes between the Plan Trustee, the Plan Trust, the Plan

Oversight Committee, and Holders of Claims or Interests;

18.     over disputes concerning the existence, nature, or scope of a Debtor's discharge,

including any dispute relating to any liability arising out of the termination of

employment or the termination of any employee or retiree benefit program, regardless of

whether such termination occurred prior to or after the Effective Date;

19.     over matters concerning the Debtors' insurance policies, if any, including

jurisdiction to re-impose the automatic stay or its applicable equivalent provided in this

Plan;

20.     to issue injunctions, provide declaratory relief, or grant such other legal or

equitable relief as may be necessary or appropriate to restrain interference with this Plan,

the Debtors, the Estates or their property, the Creditors Committee, the Borrowers

Committee, the Plan Trust or its property, the Plan Trustee, the Plan Oversight

Committee, the Professionals, or the Confirmation Order;

21.     to enter a Final Decree closing the Chapter 11 Cases;

22.    to enforce all orders previously entered by the Bankruptcy Court; and

23.    over any and all other suits, adversary proceedings, motions, applications, and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan.

B.    **GENERAL AUTHORITY.**  The Debtors, if on or prior to the Effective Date, and the Plan Trust, if after the Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in this Plan.

C.    **FINAL ORDER.**  Except as otherwise expressly provided in this Plan, any requirement in this Plan for a Final Order may be waived by the Debtors (if prior to the Effective Date) or the Plan Trustee (if after the Effective Date) upon written notice to the Bankruptcy Court.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

D.    **AMENDMENTS AND MODIFICATIONS.**  The Debtors may modify this Plan at any time prior to the Confirmation Hearing in accordance with section 1127(a) of the Bankruptcy Code.  After the Confirmation Date and prior to "substantial consummation" (as such term is defined in section 1101(2) of the Bankruptcy Code) of this Plan with respect to any Debtor, the Debtors, the Plan Oversight Committee, or the proposed Plan Trustee, as appropriate, may modify this Plan in accordance with section 1127(b) of the Bankruptcy Code by the filing a motion on notice to the Bankruptcy Rule 2002 service list only, and the solicitation of all Creditors and other parties in interest shall not be required unless directed by Bankruptcy Court.

**E.    PAYMENT DATE.**  Whenever any payment or distribution to be made under this Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

**F.    WITHHOLDING AND REPORTING REQUIREMENTS.**  In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Debtors (if prior to or on the Effective Date) or the Plan Trustee (if after the Effective Date) shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**G.    NO WAIVER.**  The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors' or the Plan Trust's right to object to or examine such Claim, in whole or in part.

**H.    TAX EXEMPTION.**  Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the execution, delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under this Plan, including, without limitation, any such acts by the Debtors, if on the Effective Date, and the Plan Trustee, if after the Effective Date (including, without limitation, any subsequent transfers of property by the Plan Trust or the Plan Trustee), and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

I.      **SECURITIES EXEMPTION.**  Any rights issued under, pursuant to or in effecting this Plan and the offering and issuance thereof by any party, including without limitation the Debtors or the Plan Trust, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code.

J.      **NON-SEVERABILITY.**  Except as specifically provided herein, the terms of this Plan constitute interrelated compromises and are not severable, and no provision of those Articles may be stricken, altered, or invalidated, except by amendment of the Plan by the Debtors.

K.      **REVOCATION.**  The Debtors reserve the right to revoke and withdraw this Plan prior to the Confirmation Date in whole or as to any one or more of the Debtors.  If the Debtors revoke or withdraw this Plan, then this Plan shall be null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, the Creditors Committee, the Borrowers Committee, or any other Person or to prejudice in any manner the rights of the Debtors, the Creditors Committee, the Borrowers Committee, or any other Person in any further proceedings involving the Debtors, or be deemed an admission by the Debtors and/or the Creditors Committee, including with respect to the amount or allowability of any Claim or the value of any property of the Estates.

L.      **CONTROLLING DOCUMENTS.**  In the event and to the extent that any provision of this Plan or the Plan Trust Agreement is inconsistent with any provision of the

Disclosure Statement, the provisions of this Plan or Plan Trust Agreement, as applicable, shall control and take precedence.  In the event and to the extent that any provision of the Plan Trust Agreement is inconsistent with any provision of this Plan, this Plan shall control and take precedence.  In the event and to the extent that any provision of the Confirmation Order is inconsistent with any provision of this Plan or the Plan Trust Agreement, the provisions of the Confirmation Order shall control and take precedence.

 **M.** **GOVERNING LAW.**  Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless specifically stated, the rights, duties, and obligations arising under this Plan, any agreements, documents, and instruments executed in connection with this Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control) and, with respect to the Debtors incorporated in Delaware, corporate governance matters shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.  Corporate governance matters relating to any Debtor not incorporated in Delaware shall be governed by the law of the state of incorporation of the applicable Debtor.

 **N.** **NOTICES.**  Any notices or requests of the Debtors or the Plan Trust by parties in interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

   **If to the Debtors:**

    **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
    The Brandywine Building
    1000 West Street, 17th Floor

                        

Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Attn:   James L. Patton, Jr.
        Robert S. Brady
        Sean M. Beach
        Margaret Whiteman Greecher
        Patrick A. Jackson


**If to the Creditors Committee:**

    **HAHN & HESSEN LLP**

    488 Madison Avenue
    New York, NY 10022
    (212) 478-7200
    Attn:   Mark S. Indelicato
           Mark T. Power


    – and –

    **BLANK ROME LLP**

    1201 Market Street
    Suite 800
    Wilmington, DE 19891
    (302) 425-6400
    Attn:   Bonnie Glantz Fatell

**If to the Plan Trust or the Plan Trustee:**

    Steven D. Sass, Esq.
    Steven D. Sass, LLC
    307 International Circle, Suite 270
    Hunt Valley, MD 21030

    with copies (that shall not constitute notice) to:

    **HAHN & HESSEN LLP**

    488 Madison Avenue
    New York, NY  10022
    Attn:   Mark S. Indelicato
           Mark T. Power


To the persons indicated in the notice provisions of the Confirmation Order.

O.    **FILING OF ADDITIONAL DOCUMENTS.**  On or before "substantial consummation" (as such term is defined in section 1102(2) of the Bankruptcy Code) of this Plan, the Debtors may file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate and further evidence the terms and conditions of this Plan.

P.    **DIRECTION TO A PARTY.**  From and after the Effective Date, the Debtors may apply to the Bankruptcy Court for entry of an order directing any Person to execute or deliver or to join in the execution or delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by this Plan, and to perform any other act (including satisfaction of any lien or security interest) that is reasonably necessary or reasonably appropriate for the consummation of this Plan.

Q.    **SUCCESSORS AND ASSIGNS.**  The rights, benefits, duties, and obligations of any Person named or referred to in this Plan, including all Creditors, shall be binding on, and shall inure to the benefit of, the successors and assigns of such Person.

R.    **FINAL DECREE.**  Once any of the Estates has been fully administered, as referred to in Bankruptcy Rule 3022, the Plan Trust or another party, as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a Final Decree to close the Chapter 11 Case of the applicable Debtor(s).

## ARTICLE 15.

## CONFIRMATION REQUEST

The Debtors hereby request confirmation of this Plan as a Cramdown Plan with respect to any Impaired Class that does not accept this Plan or is deemed to have rejected this Plan.

DB02:6785650.26                                                                                      066585.1001

## ARTICLE 16.

## BANKRUPTCY RULE 9019 REQUEST

Pursuant to Bankruptcy Rule 9019, the Debtors hereby request approval of all compromises and settlements included in this Plan, including, without limitation, the compromises and settlements set forth in Articles 4, 6, 7, and 17 of this Plan.

## ARTICLE 17.

## SPECIAL PROVISIONS CONCERNING BORROWERS AND BORROWER CLAIMS

A.    **SCOPE OF THIS ARTICLE; INTERPRETATION.**  This Article contains specific provisions applicable to borrowers and Borrower Claims which shall govern notwithstanding anything to the contrary in this Plan or any exhibit to this Plan.  As used in this Article 17, the term "borrower" means a Person who is or was a mortgagor under a mortgage loan originated or serviced by one or more of the Debtors.  For the avoidance of doubt, the provisions of this Article 17 shall not be considered for any purpose when interpreting the general provisions of this Plan other than in connection with borrowers or Borrower Claims.

B.    **MORTGAGE LOANS REMAIN SUBJECT TO CERTAIN CLAIMS AND DEFENSES.**  Notwithstanding section 1141(c) of the Bankruptcy Code, any entity in which a mortgage loan vests pursuant to Article 8E hereof, or to which a mortgage loan is transferred under or pursuant to the Plan by the Plan Trustee or any Debtor, shall remain subject to all claims and defenses of borrowers related to such mortgage loan to the same extent (but to no greater extent than) such entity would be subject to such claims and defenses of borrowers had the mortgage loan been purchased from the Debtors at a sale under § 363 of the Bankruptcy Code.  Without limiting the generality of the foregoing, the Plan Trust shall take any Mortgage Loans subject to any and all claims and defenses of the borrowers related to such Mortgage Loans that were enforceable against the Debtors as of the Effective Date, and the Plan Trust shall

not be deemed to constitute a *bona fide* purchaser for value or a holder in due course of any Mortgage Loan transferred by any Debtor pursuant to this Plan.

## C.    DEFENSES, NONMONETARY REMEDIES, AND SETOFF AND RECOUPMENT RIGHTS OF BORROWERS UNAFFECTED BY BAR DATES.

No Bar Date shall affect the right, if any, of any borrower under applicable nonbankruptcy law (i) to assert defenses to payment of any amounts due and owing on a Mortgage Loan owned by any Debtor or the Plan Trust, (ii) to assert nonmonetary remedies (including, without limitation, rescission under TILA) against any Debtor or the Plan Trust as successor thereto, or (iii) to set off or recoup a Borrower Claim against amounts due and owing on a Mortgage Loan owned or contributed to the Plan Trust by any Debtor.  Nothing in this Plan shall be construed to preclude or limit a borrower's right to seek relief from any applicable Bar Date pursuant to Bankruptcy Rule 9006(b) to obtain Allowance of, and distribution upon, a Borrower Claim against any Debtor.

## D.    RIGHTS OF BORROWERS AGAINST NON-DEBTOR PARTIES.  Except

as provided in Article 12D of this Plan with respect to Exculpated Parties, nothing in the Plan or Confirmation Order shall (i) in any way affect the claims, defenses, or remedies of borrowers under mortgage loans originated or serviced by any Debtor as against any non-Debtor party, (ii) preclude or inhibit a borrower from asserting a claim against a non-Debtor party in a forum other than the Bankruptcy Court, without prior leave from the Bankruptcy Court, or (iii) preclude or inhibit the Holder of an Allowed Borrower Claim from filing and prosecuting a motion to equitably subordinate for distribution purposes all or part of another Allowed Claim to such Allowed Borrower Claim to the extent permitted by section 510(c)(1) of the Bankruptcy Code.

## E.    MODIFICATION OF INJUNCTIONS AND STAYS FOR BORROWERS.

The injunctions and automatic stay provided in Article 12 of the Plan and any corresponding

provisions of the Confirmation Order shall be deemed modified to the extent necessary to permit:

(i)    the borrower(s) under any mortgage loan against whom a foreclosure action is

commenced by or on behalf of the Plan Trust or any Debtor to assert and prosecute, in

such action, any defenses or counterclaims (including, without limitation, any right to set

off or recoup a Borrower Claim against amounts due and owing on such mortgage loan)

against the Plan Trust or Debtor that are otherwise available under applicable

nonbankruptcy law;

(ii)    the borrower(s) under any mortgage loan originated or serviced by one or more

Debtors to commence or continue an action or cross-claim against such Debtor(s)

nominally for the purpose of obtaining relief against a non-Debtor party, _provided_, that

the commencement or continuation of an action or cross-claim against a Debtor by a

borrower which seeks relief against such Debtor shall not subject such borrower or his or

her counsel to sanctions for violation of the automatic stay or Article 12A of this Plan to

the extent such actions were taken in good faith and without knowledge of the Plan or

Confirmation Order;

(iii)    the borrower(s) under any mortgage loan originated or serviced by one or more

Debtors to compel third-party discovery from the Debtors and/or the Plan Trust in

litigation with a non-Debtor party, _provided_, _however_, that nothing in this Article 17 shall

be construed to require the Debtors or the Plan Trust, as applicable, to respond to any

such request for discovery or prevent the Debtors or the Plan Trust, as applicable, from

opposing any request for discovery on any grounds available under applicable law; and

(iv)      the borrower(s) under any mortgage loan originated or serviced by one or more

Debtors to commence or continue an action against such Debtor(s) for the purpose of

liquidating a Borrower Claim against such Debtor(s) with (A) prior leave of the

Bankruptcy Court (whether obtained before or after the Effective Date) or (B) prior

written consent from the Plan Trustee, without leave of the Bankruptcy Court.

F.        **OBJECTIONS TO BORROWER CLAIMS.**  Prior to objecting to a Borrower

Claim, the Debtors, if before the Effective Date, or the Plan Trustee, if on or after the Effective

Date, shall (i) use reasonable efforts to contact the borrower-claimant to obtain information

regarding the factual and legal basis of the asserted Claim and (ii) make a reasonable offer of

settlement as to the Allowed amount of such Claim, giving due regard for the *prima facie*

validity of a properly filed proof of claim and the costs and relative hardships litigation would

impose on the Plan Trust and the borrower-claimant.   Any objection to a Borrower Claim

(including, without limitation, any omnibus objection filed pursuant to Del. Bankr. L.R. 3007-1)

shall be accompanied by a certification of counsel that the foregoing steps have been taken, and

the notice of such objection shall (i) apprise the borrower-claimant of his or her right to appear

telephonically at the hearing on such objection and (ii) be accompanied by a copy of the

Bankruptcy Court's procedures regarding telephonic appearances.   To avoid the unnecessary

multiplication of costs relating to telephonic appearances, the Debtors or the Plan Trustee, as

applicable, shall make reasonable efforts to notify borrower-claimants as soon as practicable

concerning any adjournment of the hearing to consider the objection to their Borrower Claims.

G.        **CONSIDERATION OF LOAN MODIFICATION REQUESTS.**  For any

Mortgage Loan owned by the Debtors or the Plan Trust as of the Effective Date, upon receipt of

a written request of a borrower to modify the loan's terms, the Debtors or the Plan Trustee, as

applicable, shall (i) if the Debtors or the Plan Trustee, as applicable, have the power and legal right to modify such loan, either confer with the borrower or direct the loan servicer to confer with the borrower within thirty (30) days to consider the proposed modification and (ii) if the Debtors or the Plan Trustee, as applicable, lack the power or legal right to modify the loan, forward the modification request to the party having the power or legal right to modify the loan (if known) and/or to the servicer of such loan within thirty (30) days.  For the avoidance of doubt, nothing in this section shall be construed to require the Debtors or the Plan Trustee to maintain an interest in any Mortgage Loans or to prevent the Debtors or the Plan Trustee from selling any Mortgage Loans.

> **H.      BORROWER INFORMATION OMBUDSPERSON.**  From and after the Effective Date, the Plan Trust shall employ a disinterested person as a borrower information ombudsperson (the "Borrower Information Ombudsperson") to respond to borrowers' information requests.  On request from a borrower, the Borrower Information Ombudsperson shall be authorized to provide such borrower with a copy of his or her loan file (less any portion of the file that is subject to confidentiality agreements with third parties) and disclose the identity of the purchaser of such borrower's mortgage loan from the Debtors and the servicer of such loan immediately following such sale.  To facilitate the Borrower Information Ombudsperson's performance of its duties, the Plan Trustee shall provide the Borrower Information Ombudsperson (i) a copy of all loan files which are in electronic format and within the Plan Trust's possession or control on the Effective Date, and (ii) a copy of the Debtors' records of loan sales and loan servicing transfers which are in electronic format and within the Plan Trust's possession or control on the Effective Date.  For the avoidance of doubt, the Plan Trustee shall not be required to provide the Borrower Information Ombudsperson with loan files or other

104

records in hard copy.  A maximum of $50,000 shall be allotted from the Plan Trust Operating

Expense Reserve for the compensation and reimbursement of expenses of the Borrower

Information Ombudsperson, after which the Plan Trust shall have no further obligation to fund

the Borrower Information Ombudsperson's operations.  For the avoidance of doubt, nothing in

this Article 17H shall be construed to preclude or inhibit the Plan Trustee from (i) abandoning or

destroying any Records in accordance with, and to the extent permitted by, the Destruction

Orders (as may be modified by motion of the Plan Trustee on notice to all interested Persons,

with an opportunity to be heard), or (ii) seeking authority from the Bankruptcy Court to abandon

or destroy any Records by motion on notice to all interested Persons, with an opportunity to be

heard.


Dated: February 18, 2009


        Respectfully submitted,

        AMERICAN HOME MORTGAGE HOLDINGS, INC.
        AMERICAN HOME MORTGAGE INVESTMENT CORP.
        AMERICAN HOME MORTGAGE ACCEPTANCE, INC.
        AHM SV, INC. (f/k/a American Home Mortgage Servicing, Inc.)
        AMERICAN HOME MORTGAGE CORP.
        AMERICAN HOME MORTGAGE VENTURES LLC
        HOMEGATE SETTLEMENT SERVICES, INC.
        GREAT OAK ABSTRACT CORP.

        By:  Bret Fernandes
        Their:  Director of Restructuring