## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ------------------------------------------------------------ x | | |
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | : | Case No. 07-11047 (CSS) |
| a Delaware corporation, et al., [1] | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | |
| ------------------------------------------------------------ x | : | Ref. Docket No. 6626, 6942, 6965 & 7029 |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF THE DEBTORS DATED FEBRUARY 18, 2009

Upon consideration of the Amended Chapter 11 Plan of Liquidation of the Debtors,

dated as of February 18, 2009 [D.I. 7029], as may be amended and/or modified, the "Plan",[2] at or

in connection with the hearing on confirmation thereof (the "Confirmation Hearing") or pursuant

to the terms of this order confirming the Plan (the "Confirmation Order"), which is (i) a further

modified version of that certain Plan, filed with this Court by the above-captioned debtors and

debtors in possession (collectively, the "Debtors") on November 25, 2008, [D.I. 6626] and

(ii) described on the record of the Confirmation Hearing and in this Confirmation Order; and upon

the related Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect

to the Amended Chapter 11 Plan of Liquidation of the Debtors dated as of November 25, 2008

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

(the "Disclosure Statement"); and upon the record of the hearing before the Court on November 25, 2008, where this Court approved the Disclosure Statement and subsequently thereafter entered the Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitations and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Packages, (B) Approving the Form and Manner of Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to Confirmation of the Plan; and (IV) Granting Related Relief [D.I. 6644] (the "Disclosure Statement Order"); and the Court, through the Disclosure Statement Order, having, *inter alia*: (i) authorized the Debtors to solicit acceptances or rejections of the Plan; (ii) approved the forms of Ballots to be transmitted with the Disclosure Statement and the Plan for voting purposes; (iii) set the deadline for objections to the Plan for January 14, 2009 at 4:00 p.m.; and (iv) scheduled the Confirmation Hearing to commence on January 28, 2009 at 10:00 a.m. or as soon thereafter as counsel can be heard; and it appearing that due notice of the Confirmation Hearing has been given to holders of Claims against the Debtors and all other parties-in-interest in accordance with the Disclosure Statement Order, the Bankruptcy Code and the Bankruptcy Rules; and affidavits, dated December 12, 2008 [D.I. 6777] (collectively, the "Affidavit of Mailing"), having been filed by Epiq Bankruptcy Solutions, LLC, the balloting agent (the "Balloting Agent"), attesting to the mailing to the parties identified therein of the Plan, the Disclosure Statement, the applicable Ballot(s), and related solicitation materials and/or a notice of the Confirmation Hearing (the "Solicitation Package"), as appropriate, in accordance with the Disclosure Statement Order; and an affidavit having been filed by representatives of The Wall

2

Street Journal (National Edition) attesting to the publication of a notice of the Confirmation

Hearing in such newspaper on December 5, 2008, in accordance with the Disclosure Statement

Order [D.I. 6857] (the "Affidavit of Publication"); and a representative of the Balloting Agent

having filed an affidavit, dated February 5, 2009, certifying the Ballots accepting or rejecting the

Plan (the "Vote Certification"); and the Official Committee of Unsecured Creditors (the

"Creditors Committee") having supported the Plan and formal and informal objections to the Plan

(collectively, the "Objections") having been filed or otherwise asserted by Travis County, Iron

Mountain Information Management, Inc., Adorno & Yoss LLP, the Lead Plaintiffs in that certain

securities litigation identified more fully in their objection, the United States (Internal Revenue

Service), Local Texas Tax Authorities, DB Structured Products, Inc., California Taxing

Authorities, Federal Home Mortgage Loan Mortgage Corporation, JPMorgan Chase Bank,

National Association, the U.S. Securities and Exchange Commission, Morgan Stanley Mortgage

Capital Holdings LLC, and the Official Committee of Borrowers (the "Borrowers Committee");

and upon the Declaration of Bret Fernandes in Support of Confirmation of the Debtors' Amended

Chapter 11 Plan of Liquidation of the Debtors dated February 5, 2009 (the "Declaration"); and

upon the Debtors' Memorandum of Law in Support of Confirmation of the Amended Chapter 11

Plan of Liquidation of the Debtors, dated as of February 5, 2009 [D.I. 6953] and the Brief of the

Official Committee of Unsecured Creditors in Support of Confirmation of the Amended Chapter

11 Plan of Liquidation of the Debtors [D.I. 6956] (collectively, the "Confirmation Briefs"); and

such Objections having been either consensually resolved among the objecting party and the

Debtors, withdrawn, or overruled on the record of the Confirmation Hearing; and the supplements

to the Plan having been filed on January 20, 2009 [D.I. 6868], on February 5, 9, and 12, 2009 [D.I.

6944, 6965, and 6999, respectively] (as amended, modified, or supplemented, the "Plan

Supplements"); and this Court having reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Vote Certification, the Affidavit of Mailing, the Affidavit of Publication, the Plan Supplements, the Declaration, the Confirmation Briefs and the Objections; and upon all of the evidence adduced and the arguments of counsel made at the Confirmation Hearing; and upon the entire record of the Debtors' Chapter 11 Cases, including all exhibits introduced into evidence at the Confirmation Hearing; and the Court having taken judicial notice of the papers and pleadings on file in the Chapter 11 Cases; and after due deliberation; and sufficient cause appearing therefor, this Court hereby makes the following Findings of Fact, Conclusions of Law and Order.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

A.    **JURISDICTION AND VENUE.** This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. The Confirmation Hearing is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2), and this Court has jurisdiction to enter a Final Order with respect thereto. Venue of the Chapter 11 Cases in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Each Debtor constitutes an entity eligible for relief under section 109 of the Bankruptcy Code.

B.    **JUDICIAL NOTICE.** The Court takes judicial notice of the docket of the Debtors' Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and the transcripts of, and all evidence

---

[3] The determinations, findings, judgments, decrees and orders set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth herein, to the extent it is or may be deemed a conclusion of law, also shall constitute a conclusion of law. Each conclusion of law set forth herein, to the extent it is or may be deemed a finding of fact, also shall constitute a finding of fact.

and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases.

C.      **NOTICE OF CONFIRMATION HEARING.** Notice of the Confirmation Hearing and the relevant deadlines for submission of objections and ballots, as prescribed by this Court in the Disclosure Statement Order, has been provided, as more fully reflected in the Affidavit of Mailing and the Affidavit of Publication, and such notice is adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3020(b) and other applicable law and rules.

D.      **TRANSMISSION OF BALLOTS.** Ballots were transmitted to holders of Claims in Classes eligible to vote on the Plan in accordance with the Disclosure Statement Order.

E.      **GOOD FAITH FORMULATION AND SOLICITATION.** The Debtors acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to section 1125(e) of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, with respect to the formulation of the Plan, the solicitation of acceptances with regard thereto and the other property to be distributed thereunder. Pursuant to section 1125(e) of the Bankruptcy Code, the transmittal of solicitation materials, the solicitation of acceptances of the Plan and the offering, issuance and distribution of consideration pursuant to the Plan are not, and will not be, governed by or subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptance of a plan of reorganization or the offer, issuance or purchase of securities.

F.      **COMPLIANCE WITH THE REQUIREMENTS OF SECTION 1129 OF THE BANKRUPTCY CODE.** As set forth more fully herein, the Debtors have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code, by a preponderance of evidence, which is the applicable evidentiary standard in the Court. The Court also finds that

5

the Debtors have satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

### 1. Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of the Bankruptcy Code.

The Plan complies with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) of the Bankruptcy Code, including, without limitation, sections 1122 and 1123 of the Bankruptcy Code. Therefore, the Plan satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code.

### a. Sections 1122 and 1123(a)(1)-(4) - Classification and Treatment of Claims and Interests.

Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article 4 of the Plan designates Classes of Claims and Interests, other than DIP Facility Claims, Administrative Claims and Priority Tax Claims against all applicable Debtors.[4] As required by section 1122(a) of the Bankruptcy Code, each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. Pursuant to sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code, Article 4 of the Plan identifies all Classes of Claims and Interests that are impaired or not impaired under the Plan and specifies in extenso the treatment of all Classes of Claims and Interests that are impaired under the Plan. Pursuant to section 1123(a)(4) of the Bankruptcy Code, Article 4 of the Plan also provides the same treatment for each Claim or Interest within a particular Class, unless the holder of a Claim or Interest agrees to less favorable treatment of its Claim or Interest. Therefore, the Plan satisfies the requirements of sections 1122 and 1123(a)(1) through (4) of the Bankruptcy Code.

---

[4]     Pursuant to section 1123(a)(1) of the Bankruptcy Code, these Claims are not required to be classified.

**b.**    **Section 1123(a)(5) - Adequate Means for Implementation of the Plan.**

Articles 6, 7, and 8 of the Plan and various other provisions of the Plan provide adequate means for implementing the Plan, including, among other things, (i) approval of the Settlement of Intercompany Claims and the Stipulated Asset Allocation; (ii) approval of the EPD/Breach Claims Protocol; (iii) appointment of the Plan Trustee; (iv) appointment of a Plan Oversight Committee; (v) preservation of all Causes of Action; (vi) the vesting of the BofA Mortgage Loans subject to the terms of the BofA Global Settlement Stipulation; (vii) the vesting of all other Assets in the Plan Trust; and (viii) establishment of the Plan Trust Operating Expense Reserve, S/A/P Claims Reserve and Unsecured Claims Reserve. The Debtors will have, upon the Effective Date of the Plan, sufficient Cash to make all payments required to be made pursuant to the terms of the Plan. Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

**c.**    **Section 1123(a)(6) - Prohibition Against the Issuance of Non-voting Equity Securities and Adequate Provisions for Voting Power of Classes of Securities.**

No non-voting equity securities will be issued pursuant to the Plan or at any time in the future with respect to the Debtors. Following the Effective Date, all Interests in the Debtors, including any securities possessing voting power will be cancelled. Accordingly, the Plan complies with the requirements of section 1123(a)(6) of the Bankruptcy Code.

**d.**    **Section 1123(a)(7) - Selection of Directors, Officers or Plan Trustee in a Manner Consistent with the Interests of Creditors and Equity Security Holders and Public Policy.**

Pursuant to and in accordance with Article 8F of the Plan, the Plan Trustee and its duties and responsibilities are designated in the Plan and the Plan Trust Agreement, as well as on the record of the Confirmation Hearing. Pursuant to and in accordance with Article 8G of the

7

Plan, the Plan Oversight Committee and its duties are designated in the Plan, as well as on the record of the Confirmation Hearing. The manner of selection of the Plan Trustee and Plan Oversight Committee membership is consistent with the interests of the Debtors' Creditors and Interest holders and with public policy. Other than the Plan Trustee and Plan Oversight Committee, no other officers, directors or members has been or need be appointed. Therefore, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

        e.        **Section 1123(b)(1)-(2) – Impairment of Claims and Interests and Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases.**

In accordance with section 1123(b)(l) of the Bankruptcy Code, Article 4 impairs or leaves unimpaired, as the case may be, each Class of Claims or Interests. In accordance with section 1123(b)(2) of the Bankruptcy Code, Article 11 of the Plan provides for the rejection of executory contracts and unexpired leases of the Debtors that have not been previously assumed or rejected pursuant to section 365 of the Bankruptcy Code and appropriate authorizing orders of this Court. Therefore, the Plan complies with section 1123(b)(1) and (2) of the Bankruptcy Code.

        f.        **Section 1123(b)(3) – Retention, Enforcement and Settlement of Claims Held by the Debtor.**

In accordance with section 1123(b)(3) of the Bankruptcy Code, Articles 6, 7 and 10 of the Plan provide for the settlement or adjustment of claims belonging to the Debtors or their estates. Therefore, the Plan satisfies section 1123(b)(3) of the Bankruptcy Code.

        g.        **Section 1123(b)(5) – Modification of the Rights of Holders of Claims.**

Article 3 and Article 4 of the Plan modify or leave unaffected, as the case may be, the rights of holders of each Class of Claims and Interests and, therefore, the Plan satisfies section 1123(b)(5) of the Bankruptcy Code.

8

h.      **Section 1123(b)(6) - Consistency with the Bankruptcy Code**

The Plan contains no provision that is inconsistent with the applicable provisions of the Bankruptcy Code and therefore satisfies section 1123(b)(6) of the Bankruptcy Code.

2.      **Section 1129(a)(2) - Compliance with Applicable Provisions of the Bankruptcy Code.**

The Debtors have complied with the applicable provisions of the Bankruptcy Code with respect to the Plan as required by section 1129(a)(2) of the Bankruptcy Code. The Disclosure Statement and the procedures by which the Ballots for acceptance or rejection of the Plan were solicited and tabulated were fair, properly conducted and in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Disclosure Statement Order. Therefore, the Debtors have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

3.      **Section 1129(a)(3) - Proposal of the Plan in Good Faith.**

The Plan has been negotiated at arms' length and was formulated and proposed in good faith and not by any means forbidden by law, as evidenced by, among other things, the totality of the circumstances surrounding the formulation of the Plan and the reasonable likelihood that the Plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. The Debtors, the Debtors' management, and the Debtors' professionals, the Creditors Committee, the Creditors Committee members and the Creditors Committee's professionals, the Borrowers Committee, the Borrowers Committee members and the Borrowers Committee's professionals and all other parties in interest that have participated in the plan process and negotiated the Plan have acted in "good faith" in connection with the Plan within the meaning of section 1125(e) of the Bankruptcy Code. Therefore, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

9

4.    **Section 1129(a)(4) - Bankruptcy Court Approval of Certain Payments as Reasonable.**

Any payments made or to be made by the Debtors under the Plan for services or for

costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan

and incident to the Chapter 11 Cases, have been approved by, or will be subject to the approval of

this Court as reasonable.  Therefore, the Plan satisfies the requirements of section 1129(a)(4) of

the Bankruptcy Code.

5.    **Section 1129(a)(5) - Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

The Debtors, in the Plan Supplements and/or on the record of the Confirmation

Hearing, have disclosed the identity and affiliations of the individuals proposed to serve as the

Plan Trustee and the Plan Oversight Committee members after the Effective Date, including the

compensation of any insiders, and the appointment to, or continuation in such offices of each such

individual is consistent with the interests of Creditors and with public policy.  No other officers,

directors or managers has been or needs to be appointed at this time.  Therefore, the Plan satisfies

the requirements of section 1129(a)(5) of the Bankruptcy Code.

6.    **Section 1129(a)(6) - Approval of Rate Changes.**

Section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan because,

after the Effective Date, there are no rate changes provided for in the Plan for which a

governmental regulatory commission will have jurisdiction over the Debtors (or the Plan Trust)

after confirmation of the Plan.

7.    **Section 1129(a)(7) - Best Interests of Holders of Claims and Interests.**

With respect to each impaired Class of Claims or Interests, each holder of a Claim

or Interest in such impaired Class (i) has accepted the Plan; (ii) will receive or retain under the

Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor entity was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date; or (iii) has agreed to receive less favorable treatment. Therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

        **8.**      **Section 1129(a)(8) - Acceptance of the Plan by Each Impaired Class.**

As reflected in the Vote Certification, Classes 1B(1) *et seq.*, except to the extent set forth below, 1C(1), 1C(2), 1C(3), 2B(1)(a) *et seq.*, except to the extent set forth below, 2B(2), 2B(3), 2C(1), 2C(2), 2C(3), 2C(4), 3B(1)(a) *et seq.*, except to the extent set forth below, 3B(2), 3B(3), 3C(1), 3C(2), 3C(3), 4B(1)(a) *et seq.*, except to the extent set forth below, 4B(2), 4C(1), 4C(2), 4C(3), 5B(1)(a) *et seq.*, except to the extent set forth below, 5B(3), 5B(4), 5C(1), 5C(2), 5C(3), 6B(1) *et seq.*, except to the extent set forth below, 6C(1), 6C(2), 7B(1), *et seq.*, except to the extent set forth below, 7C(1), 7C(2), 8B(1) *et seq.*, except to the extent set forth below,8C(1), 8C(2) are impaired by the Plan and each Class has voted to accept the Plan.

With respect to the secured classes, the Holders of the sole Claims in Classes 1B(1)(n) and 1B(1)(q) in the AHM Holdings case, and 5B1(o), 5B1(p), and 5B(2) in the AHM Corp. case, (collectively, the "Rejecting Secured Classes") voted to reject the Plan. Additionally, because, under the Plan, each holder of a Miscellaneous Secured Claim is provided its own subclass, holders of Miscellaneous Secured Claims who did not vote to accept or reject the Plan are each deemed to be non-accepting classes (collectively with the Rejecting Secured Classes, the "Non-Accepting Secured Classes"). With respect to the unsecured classes, one claimant having more than 33% of the voting amount in Class 1C(4) in the AHM Holdings case voted to reject the Plan, which resulted in rejection by the entire class. Because the holders of Class 1D,1E, 2D, 2E,

11

3D, 3E, 4D, 4E, 5D, 5E, 6D, 6E, 7D, 7E, 8D, and 8E Claims and Interests (together with Class

1C(4) and the Non-Accepting Secured Classes, the "Non-Accepting Classes") will not receive or

retain any property on account of such Claims or Interests, pursuant to section 1126(g) of the

Bankruptcy Code, these Classes are deemed not to have accepted the Plan.  Notwithstanding the

lack of compliance with section 1129(a)(8) of the Bankruptcy Code with respect to these Classes,

the Plan is confirmable because, as described below, the Plan satisfies the "cramdown"

requirements of section 1129(b) of the Bankruptcy Code with respect to the Non-Accepting

Classes.

9.    **Section 1129(a)(9) - Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

Except to the extent that the holder of a particular Allowed Claim has agreed to a

different treatment of such Claim, the Plan provides that Allowed DIP Facility Claims,

Administrative Claims, Priority Tax Claims and Priority Claims Against All Debtors will be

treated in accordance with section 1129(a)(9) of the Bankruptcy Code.  Therefore, the Plan

satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

10.    **Section 1129(a)(10) - Acceptance By at Least One Impaired, Non-Insider Class.**

As indicated in the Vote Certification, at least one of the Classes of Claims for each

of the Debtors that is impaired under the Plan has voted to accept the Plan, which acceptance has

been determined without including any acceptance of the Plan by any insider of the Debtors.

Therefore, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

11.    **Section 1129(a)(11) - Feasibility of the Plan.**

The Debtors will have Cash in an amount necessary to ensure that the holders of

Allowed DIP Facility Claims and Allowed S/A/P Claims receive the distributions required under

the Plan. Additionally, Section 9B(2) of the Plan provides for the creation of a S/A/P Claims Reserve and Unsecured Claims Reserve, which will consist of Cash held in reserve, from and after the Effective Date, from the Plan Trust Assets, for the benefit of the holders of Disputed Claims. Accordingly, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, except as contemplated by the Plan. Therefore, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

      **12.**     **Section 1129(a)(12) - Payment of Bankruptcy Fees.**

Section 3C of the Plan provides that all fees due and payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date or by the Plan Trustee when otherwise due out of the Plan Trust Operating Expense Reserve. Therefore, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

      **13.**     **Section 1129(a)(13) - Continuation of Retiree Benefits.**

The Debtors do not have any "retiree benefits" programs, as such term is defined in section 1114 of the Bankruptcy Code, and therefore section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Plan.

      **14.**     **No Domestic Support Obligations – Section 1129(a)(14)**

The Debtors are not required by a judicial or administrative order, or by statute, to pay domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Cod e is inapplicable to these Chapter 11 Cases.

      **15.**     **Debtors Are Not Individuals – Section 1129(a)(15)**

The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

13

16. **No Applicable Nonbankruptcy Law Regarding Transfers – Section 1129(a)(16)**

The transfers under the Plan comply with applicable nonbankruptcy law, and the Plan therefore satisfies the requirements of section 1129(a)(16) of the Bankruptcy Code.

17. **Section 1129(b) - Confirmation of the Plan over the Non-Acceptance of Impaired Classes.**

Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that the Non-Accepting Classes are impaired and are deemed not to have accepted the Plan pursuant to section 1126(g) of the Bankruptcy Code. Other than the failure to satisfy the requirement in section 1129(a)(8) of the Bankruptcy Code with respect to the Non-Accepting Classes, all of the requirements of section 1129(a) of the Bankruptcy Code have been met. The Plan does not discriminate unfairly and is fair and equitable with respect to the Non-Accepting Classes.

With respect to the Non-Accepting Secured Classes, the Plan provides, among other things, for the realization by such holders of the indubitable equivalent of such claims and, accordingly, satisfies section 1129(b)(2)(A) of the Bankruptcy Code. Because no holders of Claims or Interests junior to the Interests in the other Non-Accepting Classes will receive or retain any property under the Plan on account of their respective Claims or Interests and, as evidenced by the estimates contained in the Disclosure Statement and by the evidence in the record, no holders of Claims or Interests senior to these Non-Accepting Classes, are receiving more than full payment on account of such senior Claims or Interests, sections 1129(b)(2)(B) and (b)(2)(C) are satisfied.

18. **Bankruptcy Rule 3016(a).**

The Plan is dated and identifies the Debtors as the entity submitting the Plan.

14

19.    **Compliance with Bankruptcy Rule 3016(c).**

In accordance with Bankruptcy Rule 3016(c), Article 12 of the Plan describes in specific and conspicuous language all acts to be enjoined and identifies the entities that would be subject to the injunction.

20.    **Section 1129(c) - Only One Plan.**

Other than the Plan (including previous versions thereof), no plan has been filed in these Chapter 11 Cases. Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

21.    **Section 1129(d) - Principal Purpose of the Plan.**

No party in interest that is a governmental unit has requested that the Plan not be confirmed on the grounds that the primary purpose of the Plan is the avoidance of taxes or the avoidance of application of Section 5 of the Securities Act of 1933, and the primary purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933. Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

G.    **BURDEN OF PROOF.** The Plan Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code, by a preponderance of evidence, which is the applicable evidentiary standard in the Court. The Court also finds that the Plan Proponents have satisfied the elements of section 1129(a) and (b) of the Bankruptcy Code under the clear and convincing standard of proof.

H.    **SATISFACTION OF CONDITIONS PRECEDENT TO CONFIRMATION.**
The conditions precedent to the Effective Date of the Plan have been, or are reasonably likely to be, satisfied.

15

I.    **PLAN SUPPLEMENTS.**  The provisions of the Plan Supplements are necessary and appropriate to implement the Plan.

J.    **MODIFICATIONS CONTAINED IN THE PLAN.**  The modifications contained in the Plan are non-material, do not adversely change the treatment of Creditors, and do not require resolicitation of any Class.

K.    **SETTLEMENTS, COMPROMISES AND CLAIMS ESTIMATION.**  The compromises, settlements, and claims estimations provided for in the Plan, including, without limitation, the compromises, settlements and claims estimations set forth in Articles 4, 6, 7, and 10 of the Plan, are fair, adequate and reasonable under all of the circumstances and meet the applicable standards for settlements and claims estimations under Bankruptcy Rule 9019 and section 502(c) of the Bankruptcy Code, and controlling Third Circuit law.  All holders of Claims and Interests have received adequate notice of the settlements, compromises, and claims estimations and have had a sufficient opportunity to object to such compromises, settlements, and claims estimations.

L.    **EXEMPTIONS FROM TAXATION.**  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under the Plan, including sales occurring on or after the date hereof, shall be entitled to the tax treatment provided by section 1146(c) of the Bankruptcy Code and each recording or other agent of any governmental office shall record any such documents of issuance, transfer, or exchange without any further direction or order from this Court.

M.    **REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES.**  The rejection of an executory contract or unexpired lease, as contemplated by Article 11 of the Plan, shall be legal, valid and binding upon the Debtors and all non-debtor parties to

16

such executory contract or unexpired lease, all to the same extent as if such rejection had been effectuated pursuant to an appropriate authorizing order of this Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. Further, Article 11 of the Plan satisfies the requirements of section 365(b) of the Bankruptcy Code.

N.      **EXCULPATION.**  The evidence presented in connection with the Confirmation Hearing and the record of these Chapter 11 Cases establishes that the exculpation described and contained in section 12C of the Plan is fair and necessary to the effective liquidation of the Debtors, and that the parties receiving the benefit of the exculpation described and contained in section 12C of the Plan either have made substantial contributions toward the liquidation of the Debtors or have had substantial contributions made on their behalf, which are integral to the effectuation of the Plan and the consummation of the transactions contemplated therein. All holders of Claims and Interests received adequate notice of the exculpation described in the Plan and had sufficient opportunity to object to such provision.

O.      **RETENTION OF JURISDICTION.**  This Court properly may retain jurisdiction over the matters set forth in Article 14 of the Plan.

P.      **RULINGS AT THE CONFIRMATION HEARING.**  The Court incorporates by reference all findings of fact and conclusions of law set forth on the record at the Confirmation Hearing as if set forth fully herein.

Q.      **SUFFICIENCY OF NOTICE TO BORROWERS.**  Without limiting the generality of paragraph P above, borrowers who have not asserted or threatened to assert claims against the Debtors are not known creditors. To the extent any such borrowers are in fact creditors of the Debtors, they are unknown creditors because (i) their identities are neither known nor reasonably ascertainable by the Debtors through reasonably diligent efforts or, alternatively,

17

(ii) the Debtors neither know nor should know that it is reasonably foreseeable such borrowers have claims against the Debtors. The publication notice of the Bar Date was reasonably calculated to reach all unknown creditors of the Debtors, reasonably conveyed all the required information, and permitted a reasonable time for response.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    Plan Confirmation. The Plan, as modified herein or on the record of the Confirmation Hearing, is confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code. The treatment of Claims and Interests as provided in the Plan is approved.

2.    Authorization to Act. The Plan and any amendments, modifications and supplements thereto and all documents and agreements introduced into evidence at the Confirmation Hearing (including all exhibits and attachments thereto), and the execution, delivery and performance thereof by the Debtors, are authorized and approved, including the documents included in the Plan Supplements.

3.    Confirmation Order Controlling. If there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

4.    Objections. To the extent that any objections to confirmation of the Plan have not been withdrawn prior to entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, all such objections are hereby overruled. Objections to confirmation of the Plan that have been withdrawn shall be, and they hereby are, deemed withdrawn with prejudice.

18

5.      Plan Settlements Approved.  The compromises, settlements, and claims estimations included in the Plan, including, without limitation, the compromises, settlements and claims estimations set forth in Articles 4, 6, 7, and 10 of the Plan, are approved as a good faith compromise and settlement pursuant to Bankruptcy Rule 9019 or a fair and reasonable estimation pursuant to section 502(c) of the Bankruptcy Code, subject to the Effective Date, and shall be binding and enforceable against all Holders of Claims and Interests under the terms of the Plan.

6.      Binding Effect of Plan.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, subject to the occurrence of the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors, the Estates and their respective successors or assigns, whether or not the Claim or Interest of such Holder is impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not the Holder has filed a Claim.  The rights, benefits and obligations of any Person named or referred to in the Plan, whose actions may be required to effectuate the terms of the Plan, shall be binding on and shall inure to the benefit of any heir, executor, administrator, successor or assign of such Person (including, without limitation, any trustee appointed for the Debtors under chapters 7 or 11 of the Bankruptcy Code).

7.      Continuation of Existing Injunctions and Stays.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, the Plan, by orders of the Bankruptcy Court, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Plan Trust.

8.      **Injunction.  Except as otherwise expressly provided in the Plan, the documents executed pursuant to the Plan, or this Confirmation Order, on and after the**

19

Effective Date, all Persons who have held, currently hold, or may hold Claims against or

Interests in the Debtors or the Estates that arose prior to the Effective Date (including but

not limited to states and other governmental units, and any state official, employee, or other

entity acting in an individual or official capacity on behalf of any state or other

governmental units) are permanently enjoined from, on account of such Claims or Interests:

(i) commencing or continuing in any manner, directly or indirectly, any action or other

proceeding against any Protected Party, any property of any Protected Party, or the BofA

Mortgage Loans nominally held by AHM Corp. and AHM Acceptance pursuant to the

terms of the BofA Global Settlement Stipulation (the "BofA Mortgage Loan Property");

(ii) enforcing, attaching, executing, collecting, or recovering in any manner, directly or

indirectly, any judgment, award, decree, or order against any Protected Party, any property

of any Protected Party, or the BofA Mortgage Loan Property; (iii) creating, perfecting, or

enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected

Party, any property of any Protected Party, or the BofA Mortgage Loan Property;

(iv) asserting or effecting, directly or indirectly, any setoff or right of subrogation of any

kind against any obligation due to any Protected Party, any property of any Protected Party,

or the BofA Mortgage Loan Property; and (v) taking any act, in any manner, in any place

whatsoever, that does not conform to, comply with, or that is inconsistent with any provision

of the Plan.  Any Person injured by any willful violation of such injunction may recover

actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may

recover punitive damages from the willful violator.  Nothing contained in this paragraph or

in Article 12 of the Plan shall enjoin or prohibit (i) the Holder of a Disputed Claim from

litigating its right to seek to have such Disputed Claim declared an Allowed Claim and paid

in accordance with the distribution provisions of the Plan or (ii) the interpretation or enforcement by any party in interest of any of the obligations of the Debtors, the Plan Trustee, or the Plan Trust under the Plan.  The Confirmation Order also shall constitute an injunction enjoining any Person from enforcing or attempting to enforce any Claim or Cause of Action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 4 of the Plan have been made or are not yet due under Article 4 of the Plan.

9.    **Exculpation.**  On and after the Effective Date, none of the Exculpated Parties shall have or incur any liability for, and each Exculpated Party is hereby released from, any claim, cause of action or liability to any other Exculpated Party, to any Holder of a Claim or Interest, or to any other party in interest, for any act or omission that occurred during and in connection with the Chapter 11 Cases or in connection with the preparation and filing of the Chapter 11 Cases, the formulation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan.  Without limiting the generality of the foregoing, the Debtors, the Estates, the Creditors Committee, and their respective officers, directors, employees, members, attorneys, crisis managers, financial advisors, and professionals, shall

21

be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.  No provision of the Plan, the Disclosure Statement, or this Confirmation Order shall be deemed to act upon or release any claims, Causes of Action or liabilities that the Plan Trust, the Estates, or any party in interest may have against or to any Person for any act, omission, or failure to act that occurred prior to the Petition Date other than in connection with the preparation and filing of the Chapter 11 Cases, nor shall any provision of the Plan or this Confirmation Order be deemed to act to release any Avoidance Actions.

10.    No Effect on Objections to Fee Applications  Except as provided in Article 3B(3)(ii) of the Plan, nothing contained in the Plan shall affect the rights of parties in interest to object to Fee Applications or obviate the power of the Bankruptcy Court to issue orders with respect to Fee Applications.

11.    Corporate Action.  On the Effective Date, (i) the matters under the Plan involving or requiring corporate action of the Debtors or their subsidiaries, including, but not limited to, actions requiring a vote or other approval of the board of directors or shareholders and execution of all documentation incident to the Plan, shall be deemed to have been authorized by this Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries, and (ii) the officers and directors of the Debtors shall immediately cease to serve and the Plan Trustee shall be deemed the sole director and officer of each of the Debtors for all purposes, without any further action by the Bankruptcy Court or the officers or directors of the Debtors or their subsidiaries.

12.    Dissolution of Debtors.  On and after the Effective Date, (i) the Plan Trustee shall be authorized, in its sole and absolute discretion, to take all actions reasonably

22

necessary to dissolve the Debtors and their subsidiaries under applicable laws, including the laws

of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs

and expenses in connection with such dissolutions, including the costs of preparing or filing any

necessary paperwork or documentation; provided, however, that (A) to the extent required by any

agreement between the Debtors and BofA as Administrative Agent pursuant to the BofA Global

Settlement Stipulation and Article 8E(2) hereof, the Plan Trustee shall take all actions necessary

to continue the corporate existence of one or more Debtors (the costs of which shall be paid from

proceeds of the collateral of the BofA Syndicate pursuant to the BofA Global Settlement

Stipulation), and the Plan Trustee shall not dissolve such Debtors without the prior written consent

of BofA as Administrative Agent, and (B) the Plan Trustee shall not be compelled to dissolve any

Debtor or subsidiary thereof if to do so would unduly burden the Plan Trust or if such Debtor's or

subsidiary's continued existence would aid the Plan Trustee in the Administration of the Plan

Trust Assets or the discharge of its obligations under the Plan or the Plan Trust Agreement,

provided further, however, that after the later of the time when all Distributions have been made to

Holders of Allowed Claims against AHM Investment or a Final Decree is entered with respect to

AHM Investment, the Plan Trustee shall file a certificate of dissolution in the state of

incorporation for AHM Investment, and AHM Investment shall dissolve and cease to exist; and

(ii) except as otherwise provided (A) by agreement between BofA as Administrative Agent and

the Debtors pursuant to the BofA Global Settlement Stipulation and Article 8E(2) hereof or (B) by

subsequent amendment of the Plan pursuant to Article 14D hereof, no Asset of any Estate shall

revest in any Debtor. The Plan Trustee shall have no liability for using his discretion to dissolve

or not dissolve any of the Debtors or their subsidiaries. Whether or not dissolved, the Debtors

23

shall have no authorization to implement the provisions of the Plan from and after the Effective Date except as specifically provided otherwise in the Plan.

13. <u>Dissolution of Official Committees</u>. On the Effective Date, the Creditors Committee and Borrowers Committee shall dissolve automatically, whereupon their members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to be bound by any obligations arising under confidentiality agreements, joint defense/common interest agreements (whether formal or informal), and protective Orders entered during the Chapter 11 Cases, which shall remain in full force and effect according to their terms, <u>provided</u> that such parties shall continue to have a right to be heard with respect to any and all (i) applications for Professional Claims; (ii) requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and (iii) motions or other actions seeking enforcement or implementation of the provisions of the Plan or this Confirmation Order.

14. <u>Formation of Plan Trust</u>. On or prior to the Effective Date, the Plan Trust shall be formed. The Holders of Claims shall be the sole beneficiaries of the Plan Trust.

15. <u>Approval of Plan Trust Agreement</u>. The form of Plan Trust Agreement [D.I. 6964] is hereby approved. In the event a provision of this Confirmation Order conflicts with a provision of the Plan Trust Agreement, the provision of this Confirmation Order shall control.

16. <u>Vesting of Assets in the Plan Trust</u>. Except as otherwise provided by Article 8E(2) of the Plan or by amendment to the Plan pursuant to Article 14D thereof, on the Effective Date, all Assets of the Estates shall vest in, and constitute Assets of, the Plan Trust, and each Debtor shall be deemed for all purposes to have transferred legal and equitable title of all

24

Assets of its Estate to the Plan Trust for the benefit of the Holders of Claims against its Estate,
whether or not such Claims are Allowed Claims as of the Effective Date.

      17.     Appointment of Plan Trustee.  Steven D. Sass, Esq., ("Mr. Sass") is hereby
appointed Plan Trustee.  Mr. Sass shall commence serving as the Plan Trustee on the Effective
Date; provided, however, that Mr. Sass, as Plan Trustee, shall be permitted to act in accordance
with the terms of the Plan Trust Agreement from the Confirmation Date (or such earlier date as
authorized by the Creditors Committee) through the Effective Date and shall be entitled to seek
compensation in accordance with the terms of the Plan Trust Agreement and the Plan.

      18.     Actions Against the Plan Trustee.  Without the permission of this Court, no
judicial, administrative, arbitral, or other action or proceeding shall be commenced in any forum
other than the Court against the Plan Trustee in its official capacity, with respect to its status,
duties, powers, acts, or omissions as Plan Trustee.

      19.     Bond.  The Plan Trustee shall at all times maintain a bond acceptable to the
Plan Oversight Committee and approved by the U.S. Trustee.

      20.     Responsibilities of Plan Trustee.  The Plan Trustee shall be vested with the
rights, powers and benefits set forth in the Plan and Plan Trust Agreement.  The Plan Trust shall
be subject to the directions of the Plan Oversight Committee as set forth in the Plan Trust
Agreement.  Notwithstanding anything to the contrary contained in the Plan or this Confirmation
Order, any act by the Plan Trustee, including discretionary acts, will require the consent of or
consultation with the Plan Oversight Committee in accordance with and to the extent of the terms
of the Plan Trust Agreement.  If there is any inconsistency or ambiguity between the Plan,
Confirmation Order or the Plan Trust Agreement in respect of the Plan Oversight Committee's
role in the Plan Trustee's authority to act, the provision of the Plan Trust Agreement shall control.

25

21.    Liquidation of Plan Trust Assets. The Plan Trustee, in its reasonable business judgment and in an expeditious but orderly manner, shall liquidate and convert to Cash the Plan Trust Assets, make timely distributions and not unduly prolong the duration of the Plan Trust. The liquidation of the Plan Trust Assets may be accomplished either through the sale of Plan Trust Assets (in whole or in combination), including the sale of Causes of Action, or through prosecution or settlement of any Causes of Action, or otherwise. The Plan Trustee shall distribute the proceeds of liquidation of the Plan Trust Assets between the Estates in accordance with the Plan.

22.    Termination of Plan Trust. The Plan Trust shall terminate after its liquidation, administration and distribution of the Plan Trust Assets in accordance with the Plan and its full performance of all other duties and functions in the Plan or in the Plan Trust Agreement. The Plan Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that, within a period of six (6) months prior to such termination date or any extended termination date, the Plan Trustee, with the consent of the Plan Oversight Committee, may extend the term of the Plan Trust if it is necessary to facilitate or complete the liquidation of the Plan Trust Assets administered by the Plan Trust; provided further, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Plan Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Plan Trust as a "liquidating trust" for federal income tax purposes within the meaning of Treasury Regulations 301.7701-4(d).

23.    Appointment of Plan Oversight Committee. On the Effective Date, Deutsche Bank National Trust Co., Nomura Credit & Capital, Inc. and United Parcel Service shall

26

be deemed appointed as members of the Plan Oversight Committee and shall adopt bylaws to govern the actions of the Plan Oversight Committee.

24.     <u>Rights and Duties of the Plan Oversight Committee</u>.  The fiduciary duties that applied to the Creditors Committee prior to the Effective Date shall apply to the Plan Oversight Committee.  The Plan Oversight Committee's role shall be to advise and approve the actions of the Plan Trustee as more particularly set forth in the Plan Trust Agreement, including, without limitation, the rights and duties set forth in section 8G(4) of the Plan.

25.     <u>Termination of Plan Oversight Committee</u>.  The duties and powers of the Plan Oversight Committee shall terminate upon the termination of the Plan Trust.

26.     <u>Liability, Indemnification of Plan Trustee and Plan Oversight Committee</u>. Neither the Plan Trustee, the Plan Oversight Committee, their respective members, designees or professionals, or any duly designated agent or representative of the Plan Trustee or the Plan Oversight Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Plan Trustee or Plan Oversight Committee, nor shall such Plan Trustee, or any member of the Plan Oversight Committee, be liable for any act or omission taken or omitted to be taken in its capacity as Plan Trustee, or as a member of the Plan Oversight Committee, respectively, other than for specific acts or omissions resulting from such Plan Trustee's or such member's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty.  The Plan Trustee or the Plan Oversight Committee may, in connection with the performance of its functions and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.

27

Notwithstanding such authority, neither the Plan Trustee or the Plan Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Plan Trustee or Plan Oversight Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Plan Trust shall indemnify and hold harmless the Plan Trustee and Plan Oversight Committee and its members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty.

27.     Preservation of All Causes of Action. Except as otherwise provided in the Plan or in any contract, instrument, release or agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Plan Trust shall be vested with, retain, and may exclusively enforce and prosecute any claims or Causes of Action that the Debtors, the Estates, the Creditors Committee or the Plan Trust may have against any Person. The Plan Trustee may pursue such retained claims or Causes of Action in accordance with the best interests of the Creditors, the Estates, or the Plan Trust.

28

28.    <u>Cancellation of Instruments and Agreements</u>.  As of the Effective Date, all notes, agreements and securities evidencing Claims or Interests and the rights thereunder of the Holders thereof shall, with respect to the Debtors, be canceled and deemed null and void and of no further force and effect, and the Holders thereof shall have no rights against the Debtors, the Plan Trust, the Plan Trust Assets or the Estates, and such instruments shall evidence no such rights, except the right to receive the distributions provided for in the Plan.  Notwithstanding the foregoing and anything else contained in the Plan, the Subordinated Trust Preferred Indentures will continue in effect solely for the purposes of (i) permitting an Indenture Trustee to maintain or assert any right pursuant to the terms of the Plan for payment of Indenture Trustee Expenses and to exercise any contractual right of priority or charging lien under any of the Subordinated Trust Preferred Indentures with respect to any distributions made by such Indenture Trustee to Holders of Subordinated Trust Preferred Claims; (ii) permitting an Indenture Trustee to maintain and enforce any right to indemnification, contribution or other Claim it may have under the applicable Subordinated Trust Preferred Indentures (<u>provided, however</u>, that any right to indemnification or contribution from, or Claim against, a Debtor entity arising under any Subordinated Trust Preferred Indenture, whether arising on, before, or after the Effective Date, shall constitute a Class 1C(1), 1C(3), 2C(1) or 2C(3) Claim, as applicable, and shall be Allowed or Disallowed in accordance with Article 10 of the Plan); and (iii) permitting an Indenture Trustee to exercise its rights and obligations relating to the interests of the Holders of Subordinated Trust Preferred Claims and its relationship with the Holders of Subordinated Trust Preferred Claims pursuant to the applicable Subordinated Trust Preferred Indenture, including its right to appear and be heard in these Chapter 11 Cases.

29.     From and after the Effective Date, the Plan Trust shall be deemed the sole

capital stockholder, shareholder, or managing member, as applicable, of each of the Debtors and

shall be invested with all the rights and powers exercisable by a sole capital stockholder,

shareholder, or managing member, as applicable, under the respective Debtors' corporate

governance documents and applicable law.

30.     As soon as practicable after the Effective Date, the Plan Trustee or its duly

authorized representative shall file with the SEC an SEC Form 15 on behalf of AHM Investment

terminating the duty to file reports pursuant to SEC Rule 12g-4(a)(1).

31.     <u>Reservation of Rights to Object to Claims</u>.  Unless a Claim or Interest is

expressly described as an Allowed Claim or Allowed Interest pursuant to or under the Plan, or

otherwise becomes an Allowed Claim or Allowed Interest prior to the Effective Date, upon the

Effective Date, the Plan Trustee shall be deemed to have a reservation of any and all rights,

interests and objections of the Debtors, the Creditors Committee or the Estates to any and all

Claims or Interests and motions or requests for the payment of or on account of Claims or

Interests, whether administrative expense, priority, secured or unsecured, including without

limitation any and all rights, interests and objections to the validity or amount of any and all

alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, Unsecured

Claims, Subordinated Claims, Interests, Liens and security interests, whether under the

Bankruptcy Code, other applicable law or contract.  The Debtors' or the Plan Trustee's failure to

object to any Claim or Interest in the Chapter 11 Cases shall be without prejudice to the Plan

Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy

Court when and if such Claim is sought to be enforced by the Holder of such Claim or Interest.

30

32.     Objection to Claims.  Prior to the Effective Date, the Debtors shall be responsible for pursuing any objection to the allowance of any Claim or Interest.  From and after the Effective Date, the Plan Trustee will retain responsibility for administering, disputing, objecting to, compromising, or otherwise resolving and making distributions, if any, with respect to all Claims and Interests (including those Claims or Interests that are subject to objection by the Debtors as of the Effective Date), subject to any approvals of the Plan Oversight Committee that may be required.  Unless otherwise provided in the Plan or by order of the Bankruptcy Court, any objections to Claims or Interests by the Plan Trustee will be filed and served not later than 1 year after the later of (i) the Effective Date or (ii) the date such Claim is filed, provided that the Plan Trustee may request (and the Bankruptcy Court may grant) extensions of such deadline, or of any Bankruptcy Court approved extensions thereof, by filing a motion with the Bankruptcy Court without any requirement to provide notice to any party, based upon a reasonable exercise of the Plan Trustee's business judgment.  A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

33.     No Waiver to Object to Claims.  The failure of the Debtors or any other Person to object to any Claim for purposes of voting shall not be deemed a waiver of the Debtors' or the Plan Trust's right to object to or examine such Claim, in whole or in part.

34.     Rejection of Remaining Executory Contracts and Unexpired Leases.  On the Effective Date, except for any Executory Contract (i) that was previously assumed or rejected by an Order of the Bankruptcy Court or otherwise pursuant to section 365 of the Bankruptcy Code or (ii) that is subject to a pending motion to assume or reject before the Bankruptcy Court, each Executory Contract entered into by the any of the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, shall be rejected pursuant to sections

31

365 and 1123 of the Bankruptcy Code, effective as of the Confirmation Date. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving such rejection pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Confirmation Date.

35. <u>Rejection of D&O Indemnification Obligations</u>. Without limiting the generality of Article 11A of the Plan or paragraph 33 of this Confirmation Order, and solely for the avoidance of doubt, the obligations of the Debtors to indemnify any Person or Entity having served as one of their officers and directors, or currently serving as one of their directors, officers, or employees, by reason of such Person's or Entity's service in such capacity, to the extent provided in the Debtors' corporate governance documents or by a written agreement with the Debtors or by the applicable states' corporation law, each as applicable, shall be deemed and treated as Executory Contracts that are rejected by the Debtors pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date.

36. <u>Rejection of Employee Benefit Plans</u>. Without limiting the generality of Article 11A of the Plan or paragraph 33 of this Confirmation Order, and for the avoidance of doubt, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their employees, retirees and non-employee directors and the employees and retirees of their subsidiaries, including all savings plans, retirement plans, pension plans, healthcare plans, disability plans, severance benefit plans, incentive plans, life and accidental death and dismemberment insurance plans, shall be deemed and treated as Executory Contracts that are rejected by the Debtors pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date.

37. <u>Rejection Damages Bar Date</u>. Except to the extent another Bar Date applies pursuant to an order of the Court, any Proofs of Claim with respect to a Claim arising from

32

the rejection of Executory Contracts under the Plan (including Claims under section 365(d)(3) of the Bankruptcy Code) must be filed with EPIQ Bankruptcy Solutions, LLC, Attn: American Home Mortgage Claims Processing, P.O. Box 5076, FDR Station, New York, NY 10150-5076, and a copy served on counsel for the Debtors, the Creditors Committee and the Plan Trustee, within thirty (30) days after the Effective Date, or such Claim shall be forever barred and shall not be entitled to a distribution or be enforceable against the Debtors, their Estates, the Plan Trust, the Plan Trustee, their successors, their assigns, or their Assets. Any Allowed Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 1C(1), 2C(1), 3C(1), 4C(1), 5C(1), 6C(1), 7C(1), and 8C(1) (general Unsecured Claims against each Debtor), as applicable. Nothing in the Plan or this Confirmation Order extends or modifies any previously applicable Bar Date.

38.    Insurance Policies. To the extent that any or all of the insurance policies set forth in the Plan Supplements (the "Designated Insurance Policies") are considered to be Executory Contracts, then notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, the Plan shall constitute a motion to assume the Designated Insurance Policies in connection with the Plan and to assign them to the Plan Trust. Subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of such assumption and assignment pursuant to section 365(a) of the Bankruptcy Code and a finding by the Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest in the Chapter 11 Cases. Unless otherwise determined by the Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each Designated Insurance Policy. To the extent that the Court determines otherwise with respect

33

to any Designated Insurance Policy, the Debtors' right to seek rejection of such insurance policy or other available relief are reserved. The Plan shall not affect contracts that have been assumed and assigned by Order of the Court prior to the Confirmation Date. For the avoidance of doubt, all rights under any Designated Insurance Policy that is not considered to be an Executory Contract, and all rights under any other insurance policies under which the Debtors may be beneficiaries, (including the rights to make, amend, prosecute, and benefit from claims) shall be preserved and shall vest in the Plan Trust pursuant to Article 8E(1) of the Plan and § 1123(a)(5)(B) of the Bankruptcy Code.

39.    <u>General Authority</u>. The Debtors, if on or prior to the Effective Date, and the Plan Trust, if after the Effective Date, shall execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in the Plan.

40.    <u>Tax Exemption</u>. Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the execution, delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under the Plan, including, without limitation, any such acts by the Debtors, if on the Effective Date, and the Plan Trustee, if after the Effective Date (including, without limitation, any subsequent transfers of property by the Plan Trust or the Plan Trustee), and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to this Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

34

41.    <u>Securities Exemption</u>.  Any rights issued under, pursuant to or in effecting the Plan and the offering and issuance thereof by any party, including without limitation the Debtors or the Plan Trust, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation section 1145 of the Bankruptcy Code.

42.    <u>Headings Not Controlling</u>.  The headings contained within this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

43.    <u>Non-Severability</u>.  Except as specifically provided herein, the terms of the Plan constitute interrelated compromises and are not severable, and no provision of those Articles may be stricken, altered, or invalidated, except by amendment of the Plan by the Debtors.

44.    <u>References to Plan Provisions</u>.  Failure specifically to include or reference particular sections or provisions of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Court that the Plan be confirmed and such provisions and related agreements be approved in their entirety.

45.    <u>Substantial Consummation</u>.  The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur on the Effective Date.  Further, the provisions of Rule 62 of the Federal Rules of Civil Procedure as applicable pursuant to Bankruptcy Rule 7062, and Bankruptcy Rule 3020(e) shall not apply to this

35

Confirmation Order and the Debtors are authorized, but not directed, to consummate the Plan immediately upon entry of this Confirmation Order.

46.    Bar Date for Administrative Claims.  Except as otherwise provided in the Plan or this Confirmation Order, and except for Professional Claims, which are addressed below, unless previously filed, requests for payment of Administrative Claims must be Filed and served on counsel for the Debtors, counsel for the Creditors Committee or the Plan Oversight Committee (as applicable), the Plan Trustee, and counsel for the Plan Trustee no later than (a) thirty (30) days after a notice of the Effective Date is filed with the Court and served, or (b) such later date, if any, as this Court shall order upon application made prior to the end of such 30-day period.  Holders of Administrative Claims (including, without limitation, the Holders of any Claims, for federal, state or local taxes, but excluding Professional Claims) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against the Debtors, the Plan Trustee or any of their Property. Notwithstanding the foregoing, any bar dates established during the course of these Chapter 11 Cases shall remain in full force and effect.  All objections to allowance of Administrative Claims (excluding Professional Claims) must be filed by any parties in interest no later than ninety (90) days after the Administrative Claim Bar Date (the "Administrative Claim Objection Deadline"). The Administrative Claim Objection Deadline may be initially extended for an additional ninety (90) days at the sole discretion of the Plan Trustee upon the filing of a notice of the extended Administrative Claim Objection Deadline with this Court.  Thereafter, the Administrative Claim Objection Deadline may be further extended by an Order of this Court, which Order may be granted without notice to any creditors.  If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline, as may be extended, such

36

Administrative Claim will be deemed Allowed, subject to this Court's discretion to extent such

bar date retroactively.

*This paragraph is subject to the Order Directing Appointment of Fee Examiner entered by the Court contemporaneously herewith.*

47.    <u>Bar Date for Professional Claims.</u> All Professionals or other Persons

requesting compensation or reimbursement of expenses pursuant to any of §§ 327, 328, 330, 331,

503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Confirmation Date

(including, *inter alia*, any compensation requested by any Professional or any other Person for

making a substantial contribution in the Chapter 11 Cases) shall File and serve on counsel for the

Debtors or the Plan Trustee (as applicable) and counsel for the Creditors Committee or the Plan

Oversight Committee (as applicable) *and any fee examiner appointed in these cases* an application for final allowance of compensation and

reimbursement of expenses accruing from the Petition Date to the Confirmation Date, no later

than (a) sixty (60) days after a notice of the Effective Date is filed with the Bankruptcy Court and

served, or (b) such later date as the Bankruptcy Court shall order upon application made prior to

the end of such 60-day period.  Objections to Professional Claims or Claims of other Persons for

compensation or reimbursement of expenses must be Filed and served on counsel for the Debtors

or the Plan Trustee (as applicable), counsel for the Creditors Committee or the Plan Oversight

Committee (as applicable), *any fee examiner appointed in these cases,* and the Professionals or other Persons to whose application the

objections are addressed on or before (a) forty-five (45) days after the Professional Claims Bar

Date or (b) such later date as (i) the Bankruptcy Court shall order upon application made prior to

the end of such 45-day period or (ii) is agreed between the Debtors of the Plan Trustee, as *or any fee examiner appointed in these cases*

applicable, and the affected Professional or other Person.  Any professional fees incurred by the

Debtors or the Creditors Committee subsequent to the Confirmation Date may be paid by the

Debtors or the Plan Trust without application to or Order of the Bankruptcy Court.  The costs of

DB02:7679780.8                                                                                                      066585.1001

the Plan Trust, including without limitation, the fees and expenses of the Plan Trustee and any Professionals retained by the Plan Trustee, shall be borne entirely by the Plan Trust.

48.    Mortgage Loans Remain Subject to Certain Claims and Defenses.

Notwithstanding section 1141(c) of the Bankruptcy Code, any entity in which a mortgage loan vests pursuant to Article 8E of the Plan, or to which a mortgage loan is transferred under or pursuant to the Plan by the Plan Trustee or any Debtor, shall remain subject to all claims and defenses of borrowers related to such mortgage loan to the same extent (but to no greater extent than) such entity would be subject to such claims and defenses of borrowers had the mortgage loan been purchased from the Debtors at a sale under § 363 of the Bankruptcy Code. Without limiting the generality of the foregoing, the Plan Trust shall take any Mortgage Loans subject to any and all claims and defenses of the borrowers related to such Mortgage Loans that were enforceable against the Debtors as of the Effective Date, and the Plan Trust shall not be deemed to constitute a *bona fide* purchaser for value or a holder in due course of any Mortgage Loan transferred by any Debtor pursuant to the Plan.

49.    Defenses, Nonmonetary Remedies, and Setoff and Recoupment Rights of Borrowers Unaffected by Bar Dates. No Bar Date shall affect the right, if any, of any borrower under applicable nonbankruptcy law (i) to assert defenses to payment of any amounts due and owing on a Mortgage Loan owned by any Debtor or the Plan Trust, (ii) to assert nonmonetary remedies (including, without limitation, rescission under TILA) against any Debtor or the Plan Trust as successor thereto, or (iii) to set off or recoup a Borrower Claim against amounts due and owing on a Mortgage Loan owned or contributed to the Plan Trust by any Debtor. Nothing in the Plan shall be construed to preclude or limit a borrower's right to seek relief from any applicable

38

Bar Date pursuant to Bankruptcy Rule 9006(b) to obtain Allowance of, and distribution upon, a Borrower Claim against any Debtor.

50.    <u>Rights of Borrowers Against Non-Debtor Parties.</u>  Except as provided in Article 12D of the Plan with respect to Exculpated Parties, nothing in the Plan or this Confirmation Order shall (i) in any way affect the claims, defenses, or remedies of borrowers under mortgage loans originated or serviced by any Debtor as against any non-Debtor party, (ii) preclude or inhibit a borrower from asserting a claim against a non-Debtor party in a forum other than the Bankruptcy Court, without prior leave from the Bankruptcy Court, or (iii) preclude or inhibit the Holder of an Allowed Borrower Claim from filing and prosecuting a motion to equitably subordinate for distribution purposes all or part of another Allowed Claim to such Allowed Borrower Claim to the extent permitted by section 510(c)(1) of the Bankruptcy Code.

51.    <u>Modification of Injunction and Stays for Borrowers.</u>  The injunctions and automatic stay provided in Article 12 of the Plan and any corresponding provisions of this Confirmation Order shall be deemed modified to the extent necessary to permit:

(i)    the borrower(s) under any mortgage loan against whom a foreclosure is commenced by or on behalf of the Plan Trust or any Debtor, (A) in the case of a judicial foreclosure, to assert and prosecute, in the foreclosure action, any defenses or counterclaims (including, without limitation, any right to set off or recoup a Borrower Claim against amounts due and owing on such mortgage loan) against the Plan Trust or Debtor that are otherwise available under applicable nonbankruptcy law, or, (B) in the case of a nonjudicial foreclosure, to commence and prosecute an action ~~for declaratory and/or injunctive relief~~ against the Plan Trust, Debtor, and/or loan servicer ~~to halt~~ the foreclosure; [handwritten insertions: "solely", "as necessary ~~and~~ to halt and for the purpose of halting"]

39

066585.1001

(ii)     the borrower(s) under any mortgage loan originated or serviced by one or more Debtors to commence or continue an action or cross-claim against such Debtor(s) nominally for the purpose of obtaining relief against a non-Debtor party, provided, that the commencement or continuation of an action or cross-claim against a Debtor by a borrower which seeks relief against such Debtor shall not subject such borrower or his or her counsel to sanctions for violation of the automatic stay, Article 12A of the Plan, or Paragraph 8 of this Confirmation Order, to the extent such actions were taken in good faith and without knowledge of the Plan and Confirmation Order;

(iii)     the borrower(s) under any mortgage loan originated or serviced by one or more Debtors to compel third-party discovery from the Debtors and/or the Plan Trust in litigation with a non-Debtor party, provided, however, that nothing in Article 17 of the Plan shall be construed to require the Debtors or the Plan Trust, as applicable, to respond to any such request for discovery or prevent the Debtors or the Plan Trust, as applicable, from opposing any request for discovery on any grounds available under applicable law; and

(iv)     the borrower(s) under any mortgage loan originated or serviced by one or more Debtors to commence or continue an action against such Debtor(s) for the purpose of liquidating a Borrower Claim against such Debtor(s) with (A) prior leave of the Bankruptcy Court (whether obtained before or after the Effective Date) or (B) prior written consent from the Plan Trustee, without leave of the Bankruptcy Court.

52.     Objections to Borrowers' Claims.  Prior to objecting to a Borrower Claim, the Debtors, if before the Effective Date, or the Plan Trustee, if on or after the Effective Date, shall (i) use reasonable efforts to contact the borrower-claimant to obtain information regarding

40

the factual and legal basis of the asserted Claim and (ii) make a reasonable offer of settlement as
to the Allowed amount of such Claim, giving due regard for the *prima facie* validity of a properly
filed proof of claim and the costs and relative hardships litigation would impose on the Plan Trust
and the borrower-claimant. Any objection to a Borrower Claim (including, without limitation,
any omnibus objection filed pursuant to Del. Bankr. L.R. 3007-1) shall be accompanied by a
certification of counsel that the foregoing steps have been taken, and the notice of such objection
shall (i) apprise the borrower-claimant of his or her right to appear telephonically at the hearing on
such objection and (ii) be accompanied by a copy of the Bankruptcy Court's procedures regarding
telephonic appearances. To avoid the unnecessary multiplication of costs relating to telephonic
appearances, the Debtors or the Plan Trustee, as applicable, shall make reasonable efforts to notify
borrower-claimants as soon as practicable concerning any adjournment of the hearing to consider
the objection to their Borrower Claims.

        53.    <u>Consideration of Loan Modification Requests.</u> For any Mortgage Loan
owned by the Debtors or the Plan Trust as of the Effective Date, upon receipt of a written request
of a borrower to modify the loan's terms, the Debtors or the Plan Trustee, as applicable, shall (i) if
the Debtors or the Plan Trustee, as applicable, have the power and legal right to modify such loan,
either confer with the borrower or direct the loan servicer to confer with the borrower within thirty
(30) days to consider the proposed modification and (ii) if the Debtors or the Plan Trustee, as
applicable, lack the power or legal right to modify the loan, forward the modification request to
the party having the power or legal right to modify the loan (if known) and/or to the servicer of
such loan within thirty (30) days. For the avoidance of doubt, nothing in this section shall be
construed to require the Debtors or the Plan Trustee to maintain an interest in any Mortgage Loans
or to prevent the Debtors or the Plan Trustee from selling any Mortgage Loans.

        

54.    <u>Payment of Certain Securitization Parties' Claims Against the Servicing</u>

<u>Cure Escrow.</u> Regarding the Cure Escrow established pursuant to the *Order Pursuant to Sections*

*105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and rules 2002, 4001, 6004, 7062, 9007,*

*and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors'*

*Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption*

*and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B)*

*Granting Related Relief* entered October 30, 2007 (the "<u>Servicing Sale Order</u>"), not later than

thirty (30) days from the entry of this Order, the Debtors (if prior to the Effective Date) or the Plan

Trustee (if after the Effective Date) shall: (i) if the *Limited Objection and Reservation of Rights of*

*DB Structured Products, Inc. Regarding Debtors' Cure Notice* dated December 20, 2007 (the

"<u>DBSP Cure Claim</u>"), has not been withdrawn, file a reply to the DBSP Cure Claim and set it for

hearing at the next available omnibus hearing date; and (ii) with respect to the Sellers' Cure

Amounts (as defined in the Servicing Sale Order) asserted against the Cure Escrow by each of The

Bank of New York Mellon, Citibank, N.A., U.S. Bank National Association, Deutsche Bank

National Trust Company, and Wells Fargo Bank, N.A., in their capacities as trustee and/or master

servicer (collectively, the "<u>Certain Securitization Parties</u>"), either (a) cause such Sellers' Cure

Amounts to be paid to the Certain Securitization parties from the Cure Escrow in accordance with

the Servicing Sale Order (including, without limitation, on a pro rata basis and/or in the form of

interim distributions to the extent the aggregate claims asserted against the Cure Escrow exceed

$10 million), to the extent such amounts are not disputed by the Debtors, the Creditors

Committee, or BofA as Administrative Agent, or (b) to the extent such amounts are disputed by

the Debtors, the Committee, and/or BofA as Administrative Agent, file and serve upon the

applicable party(ies) a written objection to the asserted Sellers' Cure Amount(s), which shall state

42

with specificity the amount subject to, and the legal and factual basis for, such objection and be set for hearing on the next omnibus hearing date that is at least seven (7) Business Days after the filing of such objection.

55.    No Effect on Purchaser's Cure Amounts.  Nothing in this Order shall modify or amend, or be deemed to modify or amend, the rights and obligations of the Debtors, the Certain Securitization Parties, and the Purchaser (as defined in the Servicing Sale Order) to the Purchaser's Cure Amount (as defined in the Servicing Sale Order) and such related rights and obligations thereto as set forth in the Servicing Sale Order and in the *Order, Pursuant to Sections 105(a) and 365 of the Bankruptcy Code and the Sale Order, (I) Approving the Form of Notice and Authorizing the Debtors to File a Notice of Proposed Purchaser's Cure Amounts and (II) Establishing a Bar Date for Filing Objections to the Proposed Purchaser's Cure Amounts* [Docket No. 4021].

56.    EPD/Breach Claims Questionnaires Deemed Completed.  With respect to (i) EPD Claims other than Securitization EPD Representation Claims and (ii) Breach of Warranty Claims, the EPD/Breach Claims Questionnaires shall be deemed completed for the following claimants, subject to reasonable follow-up by the Debtors (if before the Effective Date) or the Plan Trustee (if after the Effective Date), as applicable, with respect to EPD/Breach Claims related to the securitization trusts indicated in the following table:

43

| Claimant | Trust(s) |
|---|---|
| The Bank of New York Mellon | GSAA 2006-6; GSAA 2006-9; AHM 2004-4 |
| Citibank, N.A. | SAMI 2007-AR1; GSR 2006-AR2; AHM 2004-3; AHMA 2006-3; AHMA 2006-4 |
| Deutsche Bank National Trust Company | Harborview 2006-14 (HVMLT); Harborview 2006-6; Harborview 2006-7; Harborview 2007-2; Harborview 2007-5; Harborview 2007-6; GSR 2006-OA1; GSR 2007-OA1; Morgan Stanley MSM 2004-3; Morgan Stanley MSM 2004-4AR; Morgan Stanley MSM 2004-9AR; Morgan Stanley MSM 2005-1; Morgan Stanley MSM 2005-7; HALO 2007-1; GSAA 2006-10; Morgan Stanley MSM 2005-2AR; Morgan Stanley MSM 2005-6AR; MSM 2004-6AR; HALO 2007-AR1; HALO 2007-AR2; GSAA 2006-11; GSAMP 2006-S4; GSAMP 2006-S6; AHM 2005-1; AHM 2005-2; AHM 2005-3; AHM 2005-4; AHM 2005-SD1; AHM 2006-1; AHM 2006-2; AHM 2006-3; AHM 2007-1; AHM 2007-2; AHM 2007-A/SD1; AHM 2007-SD2; AHMA 2005-1; AHMA 2005-2; AHMA 2006-1; AHMA 2006-2; AHMA 2006-5; AHMA 2006-6; AHMA 2007-1; AHMA 2007-2; AHMA 2007-3; AHMA 2007-4; AHMA 2007-5 |
| U.S. Bank National Association | MSM 06-12XS; MSM 06-17XS; MSM 07-2AX; MSM 07-3XS; MSM 07-6XS; MSM 07-7AX; JPALT 2006-S3; BAFC 2006-8T2; BAFC 2007-1; BAFC 2007-2; BAFC 2007-3; BAFC 2007-4; JPALT 2006-A3; JPALT 2006-A4; JPALT 2006-A6; JPMMT 2006-A6; JPMMT 2006-S2 |
| Wells Fargo Bank, N.A. | AHM 2004-1; AHM 2004-2 |

The claimants identified in the foregoing table shall be required to complete an EPD/Breach Claims Questionnaire with respect to EPD/Breach Claims related to the securitization trusts indicated in table only to the extent such claimants assert Securitization EPD Representation Claims relating to any such trust. Nothing in this paragraph shall preclude any claimant identified in the foregoing table from amending or supplementing any information previously provided to the Debtors in connection with its EPD/Breach Claims.

44

57.    Freddie Mac. Effective as of the date of this Order, any servicing rights and/or other interests of the Debtors with respect to all mortgage loans owned by the Federal Home Loan Mortgage Corporation ("Freddie Mac") and described in paragraph 18 of the Stipulation of Settlement Among (i) the Debtors, (ii) Bank of America, N.A., as Administrative Agent, and (iii) the Official Committee of Unsecured Creditors dated August 5, 2008 shall be deemed abandoned pursuant to 11 U.S.C. § 554(a). For avoidance of doubt, nothing in this Order or the Plan shall amend, modify or impair any of the respective rights as they exist between Freddie Mac  and  Bank of America, N.A. under (a) that certain Acknowledgment Agreement between Freddie Mac, Bank of America, N.A. and the Debtors dated July 2005, (b) that certain Stipulation of Settlement Between and Among the Debtors, Bank of America, N.A. and Federal Home Loan Mortgage Corporation Regarding Interim Servicing of Federal Home Loan Mortgage Corporation Loans, dated as of September 18, 2007, and approved by the Court's Order entered September 20,2007 (the "Freddie Stipulation"); or (c) the Interim Servicing Agreement (as defined in the Freddie Stipulation).

58.    Local Texas Taxing Authorities. Notwithstanding any provisions to the contrary in the Plan or this Order, solely with respect to the claims of the objecting Local Texas Tax Authorities ("OLTTA") [See D.I. 6848]):

a.    The allowed pre-petition secured claims of the OLTTA will be paid with interest from the Petition Date through the Effective Date pursuant to 11 U.S.C. § 506(b) at their statutory rate as required under 11 U.S.C. § 511 and, to the extent allowed, will be paid with interest from the Effective Date through the date of payment at the statutory rate. Such claims of the OLTTA may be paid at any time and if no objections have been filed, such claims will be paid on the later of the Claim Objection Bar Date or, if a timely

45

objection is filed, within 10 business days after entry of an order of the Court allowing such claim. The OLTTA shall retain their liens for such claims on the collateral, or the proceeds therefrom, until such time as the taxes are paid in full; and

      b. The Debtors shall timely pay the allowed ad valorem taxes of the OLTTA incurred post-petition in the ordinary course of business. If such taxes are not timely paid, then the Debtors or the Plan Trustee shall pay such taxes and any additional allowed penalties and/or interest arising pursuant to applicable non-bankruptcy law. Further, the OLTTA shall retain their liens on their collateral, or the proceeds therefrom if such collateral has been sold, until such time as the post-petition taxes have been paid in full.

      59.    <u>California Taxing Authorities</u>. Notwithstanding any provisions to the contrary in the Plan or this Order, solely with respect to the claims of the objecting California Taxing Authorities ("<u>OCTA</u>") [See D.I. 6855]):

      a. The allowed pre-petition secured claims of the OCTA will be paid with interest from the Petition Date through the Effective Date pursuant to 11 U.S.C. § 506(b) at their statutory rate as required under 11 U.S.C. § 511 and, to the extent allowed, will be paid with interest from the Effective Date through the date of payment at the statutory rate. Such claims of the OCTA may be paid at any time including during the ordinary course of business when the real property is sold and or transferred and if no objections have been filed, such claims will be paid on the later of the Claim Objection Bar Date or, if a timely objection is filed, within 10 business days after entry of an order of the Court allowing such claim. The OLTTA shall retain their liens for such claims on the collateral, or the proceeds therefrom, until such time as the taxes are paid in full; and

46

           

b.   The Debtors shall timely pay the allowed ad valorem taxes of the OCTA

incurred post-petition in the ordinary course of business.  If such taxes are not timely paid,

then the Debtors or the Plan Trustee shall pay such taxes and any additional allowed

penalties and/or interest arising pursuant to applicable non-bankruptcy law.  Further, the

OCTA shall retain their liens on their collateral, or the proceeds therefrom if such

collateral has been sold, until such time as the post-petition taxes have been paid in full.

60.    BofA as Administrative Agent.  The Plan shall be implemented to give

effect to, but shall not modify, the BofA Global Settlement Agreement and, in the event of any

inconsistencies between the Plan and the BofA Global Settlement Agreement, the terms of the

BofA Global Settlement shall control.

61.    Waterfield.  Nothing in the Plan or this Confirmation Order shall restrict,

impair, and/or affect in any way (A) the claims, counterclaims, and/or defenses - including, but

not limited to, those claims, counterclaims, and/or defenses which raise or assert the rights to

setoff and/or recoupment -- being litigated in the action entitled American Home Mortgage Corp.

v. Union Federal Bank of Indianapolis and Waterfield Shareholder LLC (S.D.N.Y. 06-CV-7864)

(the "Litigation") or (B) the Order Granting Motion of Waterfield Shareholder LLC and Union

Federal Bank of Indianapolis for Order Pursuant to 11 U.S.C. § 362 Modifying the Automatic

Stay with respect to the Litigation.

62.    Triad.  Triad Guaranty Insurance Corp. ("Triad") has raised informal

objections to the Plan which are resolved herein.  Triad's rights and claims, to the extent they exist

as of the Effective Date, against the Debtors,  their successors, and all insureds under Triad

insurance policies, including but not limited to equitable claims of setoff and rescission of its

policies, are hereby preserved and not discharged pursuant to the Plan.  Nothing in the Plan, any

47

exhibit to the Plan, any Supplemental Plan Document, or this Order, shall impair any rights or defenses of Triad, the Debtors or the Plan Trustee pursuant to the policies or under applicable non-bankruptcy law. Triad insured loan files, to the extent they currently exist, that are currently retained by the Debtors and are not subject to prior orders of the Bankruptcy Court, shall be preserved by the Debtors and Plan Trust subject to further order of the Bankruptcy Court. The Bankruptcy Court shall retain jurisdiction over the rights and claims related to the Triad insurance policies.

   63. <u>IRS</u>. Notwithstanding any provision to the contrary in the Plan, the Order confirming the Plan, or the implementing Plan documents: (1) nothing shall affect the rights of the Internal Revenue Service ("<u>IRS</u>") to assert setoff and recoupment to the extent such rights exist as of the Effective Date; (2) the Allowed IRS Secured and Priority Tax Claims (collectively, "<u>IRS Claims</u>") shall be paid in full in cash within four months of the Effective Date and interest shall accrue on the IRS Claims from the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622 and to the extent the IRS Claims are not Allowed within four months of the Effective Date, the IRS Claims shall be paid in cash in full with interest within two weeks of the IRS Claims becoming Allowed Claims; (3) nothing shall prohibit the IRS from pursuing and/or assessing any applicable tax penalties, subject to the Debtors' or the Plan Trustees rights to and defenses thereto; and (4) the Debtors and the Plan Trustee agree that the IRS is bound by the Plan and Confirmation Order, but not bound by any characterization of any tax treatment described in the Plan, the Confirmation Order and the Plan Trust Agreement and the Debtors and the Plan Trustee reserve all rights to contend that the transactions implemented under the Plan, the Confirmation Order and the Plan Trust Agreement are consistent with such characterization.

48

64.    Adorno & Yoss. As to the $283,180.26 (the "A&Y Claim") for which

Adorno & Yoss LLP ("A&Y") was awarded as a retained foreclosure professional for the

Debtors, $141,590.13 shall be paid to A&Y, via wire transfer, within 48 hours of announcement

of this agreement on the Court record at the Confirmation Hearing. The remaining balance,

$141,590.13, shall be reserved as part of the S/A/P Reserve. A&Y and the Debtors will use good

faith efforts to provide and obtain information regarding the non-payment of the A&Y Claim from

American Home Mortgage Servicing, Inc. (f/k/a AH Mortgage Acquisition Co., Inc.) ("AHMSI")

and will seek to obtain payment and/or reimbursement of the A&Y Claim from AHMSI.

Assuming AHMSI does not pay A&Y the balance of the A&Y Claim within thirty (30) days of

the Confirmation Hearing on February 9, 2009, the Debtors or Plan Trustee, as the case may

be, shall pay the remaining balance to A&Y. Payment does not alleviate the parties' obligations to

work with each other to seek payment or reimbursement from AHMSI or third parties. Should

A&Y not be paid within the 48 business hours of expiration of the 30 day period, A&Y may file a

motion to compel payment. As to the A&Y Claim, to the extent that the Debtors or AHMSI

identifies that a particular loan has been sold, A&Y will seek reimbursement from the appropriate

party/successor servicing agent ("SSA") and tender such payment to the Debtors or Plan

Trust. This obligation to seek reimbursement on the part of A&Y is limited to preparation and

transmission of an invoice to SSAs identified by the Debtors by name, address, amount, and loan

number. If addresses for the SSAs are not readily available by either party, no further obligations

exist. A&Y's obligations with respect to the SSAs is limited to providing the invoice, and A&Y

does not have further obligations to pursue collection. To the extent A&Y recovers amounts from

the SSAs, with respect to these invoices, A&Y shall reimburse the Debtors or the Plan Trust.

Nothing herein shall be deemed (i) a waiver of the Debtors rights to seek reimbursement from

49

AHMSI for the A&Y Claim or any other claims it may have against AHMSI, (ii) a waiver of A&Y's obligation to file a Final Fee Application, or (iii) a waiver of any party, including the Debtors, to object to the Final Fee Application.

65.    Trister.  In the event that the Motion of Julia Trister for Relief from the Automatic Stay [Docket No 6812] (the "Trister Motion") has not been finally disposed of (including, but not limited to, by agreement of the parties, by order of the Court or by withdrawal by the movant) prior to the Effective Date, the Trister Motion shall, to the extent necessary, be deemed a properly filed request for relief from the injunctive and/or stay provisions of the Plan solely to allow Ms. Trister the opportunity to liquidate her alleged claims outside of this Court, and the Debtors, on behalf of themselves and the Plan Trustee, reserve all rights and defenses with respect to the allowance of Ms. Trister's alleged claims.

66.    J.P. Morgan Mortgage Acquisition Corp..  Proofs of Claim numbered 8399 and 8261 (the "JPMMAC POCs") filed by J.P. Morgan Mortgage Acquisition Corp. ("JPMMAC"), which assert both EPD/Breach Claims and non-EPD/Breach Claims, shall be Allowed in the aggregate amount of $27.3 million (the "Allowed JPMMAC Claim"), subject to validation of EPD status for any loans on account of which EPD Claims are asserted.  If the EPD status of any loan(s) on account of which an EPD Claim is asserted in the JPMMAC POCs cannot be validated, the Allowed JPMMAC Claim shall be reduced by the amount of the EPD Claim(s) that would otherwise be Allowed under Article 7.A. of the Plan if the EPD status of such loan(s) had been validated.  The Allowance of JPMMAC's Claims in accordance with this paragraph (i) shall not constitute a waiver or release of any defense to allowance under section 502(d) of the Bankruptcy Code or any Cause of Action (including, but not limited to, any Avoidance Action) of any Debtor against JPMMAC and (ii) shall not otherwise affect the rights or defenses of the

50

Debtors, the Creditors Committee, the Plan Trust, JPMMAC, or any affiliate of JPMMAC in any

proceeding for any purpose other than determining the Allowed amount of the JPMMAC POCs.

      67.     <u>Securities Plaintiffs</u>.

      a.  Notwithstanding anything to the contrary in this Confirmation Order, the Plan,

or the Plan Trust Agreement, from and after the Effective Date, the Plan Trustee shall

preserve and maintain all documents, files, records and electronic data (including, but not

limited to, emails and email server back-up tapes) (collectively, the "<u>Records</u>") transferred

by the Debtors to or otherwise acquired by the Plan Trust in accordance with the Plan

and/or the Plan Trust Agreement, <u>provided, however,</u> that the Plan Trustee may, in its sole

discretion and without the prior approval of the Plan Oversight Committee or the

Bankruptcy Court (i) abandon or destroy Records in accordance with, and to the extent

permitted by the Orders previously entered by the Bankruptcy Court concerning the

destruction of documents [D.I. 2724, 3010, and 4858] (the "<u>Destruction Orders</u>"), each of

which Destruction Orders shall be preserved and shall continue in full effect against the

Plan Trustee as successor to the Debtors, unless the Plan Trustee files a motion on notice

to all interested Parties (including, but not limited to, the Teachers' Retirement System of

Oklahoma and the Oklahoma Police Pension and Retirement System (collectively, the

"<u>Securities Plaintiffs</u>")) seeking to modify any such Destruction Order and (ii) abandon or

transfer Records in accordance with, and to the extent permitted by, prior Orders of the

Bankruptcy Court concerning the preservation and/or transfer of Records with respect to

certain third parties. Except as permitted by the Destruction Orders, the Plan Trustee shall

not destroy any Records absent further Order of the Bankruptcy Court after notice to all

interested Parties (including, but not limited to, the Securities Plaintiffs) with an

51

opportunity to be heard.  The Records the Debtors will transfer to the Plan Trust shall include, but not be limited to, all such documents and electronic data (i) identified for retention in connection with any investigation by the Debtors' board of directors (or any committee thereof), or (ii) produced to the Creditors Committee or to the SEC, the United States Attorney's Office, or any other governmental agency.

b.  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, including Article 12 of the Plan, when permitted to do so in the securities class action proceeding entitled *In re American Home Mortgage Securities Litigation*, Case No. 07-MD-1898 (TCP), pending in the United States District Court for the Eastern District of New York (the "Securities Litigation"), the Securities Plaintiffs may serve discovery requests on the Plan Trustee, as custodian of the Records, and may seek to take any action reasonably necessary to enforce such requests and to compel discovery in the Securities Litigation; provided, however, that the rights of the Plan Trustee to object on any and all bases to such discovery requests (other than on the basis that such discovery requests violate the automatic stay or any injunction provided for in this Confirmation Order or in the Plan) in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any other applicable rules, laws, legal authority, and the rights of the Plan Trustee to assert any and all applicable privileges (and other related rights), are fully reserved.

c.  Nothing in this Confirmation Order or the Plan shall preclude the Securities Plaintiffs from seeking relief from the automatic stay, or from any existing injunction or injunction provided for in this Confirmation Order or in the Plan, to pursue the claims asserted or to be asserted in the Securities Litigation against the Debtors, which claims

52

shall not be discharged under the Plan, to the extent of available directors and officers liability insurance coverage and proceeds, <u>provided, however,</u> that the rights of the Debtors (if before the Effective Date) or the Plan Trustee (if after the Effective Date), as applicable, to object to such a request for relief on any and all bases are fully reserved.

d.  Nothing in Article 12A of the Plan or Paragraph 8 of this Confirmation Order shall be construed to enjoin or restrain the Securities Plaintiffs from prosecuting the claims asserted or to be asserted in the Securities Litigation against any non-Debtors; provided however, that for purposes of this subparagraph, the term "non-Debtors" shall not include the Plan Trust, the Plan Trustee or the Plan Oversight Committee and its members, in their capacity as such.

68.  <u>Retention of Jurisdiction.</u>  This Court hereby retains jurisdiction of these Chapter 11 Cases (a) pursuant to and for purposes of sections 105, 1123 and 1142 of the Bankruptcy Code, and (b) as set forth in Article 14 of the Plan, which is incorporated herein by reference as if set forth <u>in</u> extenso.

Dated:  _February 23_, 2009
Wilmington, Delaware

Christopher S. Sontchi
United States Bankruptcy Judge

53