# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., et al., | Case No. 07-11047 (CSS) |
| | Jointly Administered |
| Debtors. | Hearing Date: 4/6/2009 @ 2:00 p.m. |
| | Objection Deadline: 3/30/2009 @ 4:00 p.m. |

## MOTION OF CITIFINANCIAL SERVICES, INC.
## FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

CitiFinancial Services, Inc. ("CitiFinancial"), by and through its undersigned counsel, hereby moves this Court for Relief from the Automatic Stay (the "Motion") pursuant to section 362 of the United States Bankruptcy Code (the "Bankruptcy Code"), to continue pending litigation in the Superior Court for the State of California for the County of Orange (the "California Court") relating to real property located at 1420 Scholarship, Unit 26, Irvine, California 92603 (the "Property").

In support of this Motion, CitiFinancial respectfully states as follows:

### JURISDICTION

1. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(G). This proceeding is a "core proceeding" as that term is defined in the Bankruptcy Code. Venue of this case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

2. CitiFinancial is in the business of making home loans and mortgages in the state of California.

WLM 516290.3

3. On or about July 10, 2006, Christopher G. Webb ("Webb") and Edward N. Soong ("Soong") purchased the Property from K. Hovanian at Avenue One, LLC ("Hovanian") as joint tenants at which time both Webb and Soong executed a Purchase Money Deed of Trust in favor of Hovanian and granted it a first priority interest in the Property (the "Hovanian Loan").

4. Subsequent to the purchase of the Property, on or about November 22, 2006, CitiFinancial made a loan (the "Initial Loan") to Webb in the amount of $72,967.06 evidenced by a note and secured by a Deed of Trust. CitiFinancial believed the Initial Loan to be second in priority to the Hovanian Loan.

5. On or about December 2006, Webb again initiated negotiations with CitiFinancial to refinance both the Hovanian Loan and the Initial Loan.

6. During these negotiations, Webb represented to CitiFinancial that he had obtained full ownership of the Property from Soong. Webb presented CitiFinancial a Grant Deed dated December 29, 2006, purportedly signed by Soong that transferred Soong's interest in the Property to Webb (the "Grant Deed").

7. Based on Webb's representations, on or about January 29, 2007, CitiFinancial refinanced the Hovarian Loan and the Initial Loan and issued Webb a new loan in the principal amount of $592,807.11 (the "Refinance Loan"), secured by a Deed of Trust on the Property. CitiFinancial reasonably believed based on the Grant Deed and Webb's representations that the Refinance Loan would have first lien priority on the Property.

8. Subsequent to CitiFinancial's issuance of the Refinance Loan, Soong transferred his ownership interest in the Property to himself and his wife as joint tenants. In connection with such transfer, Soong and his wife obtained a loan from American Home Mortgage Corp., d/b/a

American Brokers Conduit ("American Brokers" or the "Debtor") in the principal amount of $487,500.00 (the "ABC Loan").

9. CitiFinancial now believes that Webb knowingly misrepresented to CitiFinancial facts concerning the Property and that the Grant Deed and other documents presented by Webb to CitiFinancial were forgeries.

10. Moreover, upon information and belief, Soong had actual knowledge of Webb's fraudulent dealings with CitiFinancial and the existence of, among other things, the Initial Loan, the Refinance Loan, the Grant Deed, and CitiFinancial's interests in the Property.

11. On June 11, 2007, CitiFinancial filed a complaint (the "Complaint", attached hereto as **Exhibit A**) against Webb, Soong, American Brokers and various other parties seeking, among other things, quiet title, for declaratory relief, loan fraud and for a constructive trust with respect to the Property (the "State Court Litigation"). CitiFinancial's claims against the Debtor in the State Court Litigation are limited to actions to quiet title and for declaratory relief. As to the Debtor, CitiFinancial seeks to prove that CitiFinancial has a first priority interest in the Property, superior to the Debtor's lien. While the claims against the Debtor are limited to the extent and priority of its lien, the Debtor is a necessary party to the entire State Court Litigation.

12. The parties, other than the Debtor, have engaged in extensive preparation and discovery in the State Court Litigation. The parties to the State Court Litigation have filed numerous motions and responses, including multiple demurrers, a motion for summary judgment/summary adjudication and have nearly completed discovery in the matter. The California Court is well-versed in the facts and claims at issue in the State Court Litigation.

13. Trial on the State Court Litigation is currently scheduled to begin on March 29, 2009.[1]

14. On August 6, 2007, the Debtor filed for bankruptcy relief under Chapter 11 of the Bankruptcy Code and stayed the State Court Litigation as to the Debtor.

## RELIEF REQUESTED

15. By this Motion, CitiFinancial seeks entry of an order, pursuant to section 362(d) of the Bankruptcy Code, granting relief from the automatic stay to continue the State Court Litigation as to the Debtor. While the claims against the Debtor are limited to determining the extent and priority of the Debtor's lien in the Property, these claims cannot be resolved without a complete understanding and adjudication of all the facts in the State Court Litigation. The Debtor's participation in the State Court Litigation is therefore necessary for a complete resolution of all the claims against the various parties.

## STANDARD FOR RELIEF

16. Relief from the automatic stay of 11 U.S.C. § 362(a) is governed by section 362(d) of the Bankruptcy Code which reads, in pertinent part, as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . .

11 U.S.C. § 362(d). As set forth below, cause exists to grant CitiFinancial relief from stay to permit the State Court Litigation to proceed in the California Court.

---

[1] The California Court has scheduled a mandatory settlement conference for February 20, 2009, with the trial scheduled to begin on March 29, 2009. To the extent relief from stay is granted, the parties have agreed to stipulate to a continuance of these dates.

WLM 516290.3                                   4

## ARGUMENT

17. The bankruptcy court "shall" lift the automatic stay for "cause." 11 U.S.C. § 362(d)(1); *see In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986). "Cause" is not defined in the Bankruptcy Code and is determined on a case-by-case basis. *See Castlerock Properties*, 781 F.2d at 163. ("Because there is no clear definition cause is determined on a case-by-case basis."). Under section 362(d)(1), cause exists when the harm that would result from a continuation of the stay would outweigh any harm that might be suffered by the debtor or the debtor's estate if the stay is lifted. *In re Shaughnessy*, 2007 WL 2403280, *3 (1st Cir. BAP August 17, 2007). Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay. *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re Laguna Assocs. Ltd.*, 30 F.3d 734, 737 (7th Cir. 1994); *American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 152 B.R. 420, 424 (D.Del. 1993).

18. A creditor is only required to make a *prima facie* showing that it is entitled to relief from stay when alleging grounds for relief not based on a lack of equity. 11 U.S.C. § 362(g); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D.Del. 1996). Thus, once the creditor alleges facts demonstrating a legal entitlement to the relief sought, the burden shifts to the debtor (or party opposing relief) to prove that cause does not exist to lift the automatic stay. *Id.*

19. Courts have found that allowing a matter to proceed in another forum constitutes "cause" for lifting the automatic stay. *See Murray Industries, Inc. v. Aristech Chemical Corporation (In re Murray Industries, Inc.)*, 121 B.R. 635, 636 (Bankr. M.D. Fla. 1990); *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992). The legislative history to section 362(d)(1)

emphasizes that proceedings commenced in another tribunal should often be allowed to continue in their original forum. *See In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D.Del. 2007). For, "[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R.Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6297. Most courts follow this logic and apply an equitable balancing test to determine if cause exists to lift the stay to allow pending litigation to proceed or continue in another forum. *See In re SCO Group, Inc.*, 395 B.R. at 856.

20. Delaware bankruptcy courts have developed a three-prong balancing test to determine whether to grant relief from the stay:

> 1. Whether any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit;
>
> 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor; and
>
> 3. The probability of the creditor prevailing on the merits.

*Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D.Del. 1992); *In re 15375 Memorial Corp.*, 382 B.R. 652, 686 (Bankr. D.Del. 2008). In addition, Delaware bankruptcy courts also consider the twelve general policies underlying the automatic stay when deciding whether to grant a motion to lift the stay as outlined by the United States Court of Appeals for the Second Circuit. *See In re SCO Group, Inc.*, 395 B.R. at 856 (citing *In re Sonnax Indus., Inc. v. Tri Component Prods. Corp.*, 907 F.2d 1280, 1287 (2d Cir. 1990)).[2]

---

[2] The twelve *Sonnax* policies are: 1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the

I.  **No Great Prejudice to the Debtor or the Bankruptcy Estate**

21.  Allowing the State Court Litigation to proceed will not cause the Debtor or the bankruptcy estate to suffer any prejudice. The State Court Litigation is well under way in California and the California Court has set trial to begin in less than two (2) months, on March 29, 2009. The parties have expended considerable time and effort in performing discovery and other trial preparation. Although the claims against the Debtor are limited to determining the extent and priority of the Debtor's lien in the Property, these claims cannot be resolved without a complete understanding and resolution of all the facts in the State Court Litigation. The Debtor is a necessary party for complete resolution of the State Court Litigation.

22.  In addition, the State Court Litigation is overwhelmingly based on state law claims, defenses and property rights that are most appropriately dealt with by the California Court. The claims against the Debtor to quiet title and for declaratory relief and for a constructive trust sound squarely in California state law and directly in the province of the California Court. While the Debtor's security interest in the Property is property of the estate, this court should not usurp the function of the state court to determine state law claims as to the extent and priority of the real property liens in nonbankruptcy litigation when state court litigation has commenced. *O'Rourke v. Cairns*, 129 B.R. 87, 91 (Bankr. E.D. La. 1991) ("since only state law is involved, that court seems the more appropriate forum for resolving the case, and, it is helpful to add, the result reached will more likely be consistent with other state law decisions."); s*ee also, Gorsev. Long Neck, Ltd.,* 107 B.R. 479, 483 (D. Del. 1989); *Cook v.*

---

debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the

*Griffin,* 102 B.R. 875, 877 (N.D. Ga. 1989); *In re Walsh,* 79 B.R. 28, 29 (D. Nev. 1987) ("This case includes only state law claims. Therefore, the state court is particularly well suited to handle the issues raised.").

23. Accordingly, allowing the State Court Litigation to continue in the California Court will not in any way prejudice either the Debtor or the bankruptcy estate.

II. **Hardship on Non-Debtors Considerably Outweighs Hardship on Debtor**

24. As set forth above, the parties to the State Court Litigation have expended considerable time and effort in preparing for trial, including engaging in extensive discovery and filing numerous motions and responses. The California Court has set a status conference for February 20, 2009 and the trial is scheduled to begin on March 29, 2009.

25. The non-debtor parties and the witnesses have no connection to this Court and must travel across the country to participate in any proceeding regarding the Property which is likewise in California.

26. The California Court knows the facts and claims in the State Court Litigation. Failure to grant relief for the Debtor to participate in the State Court Litigation would require all parties to duplicate efforts in order to familiarize this Court with the civil action.

27. In the event that relief from stay is not granted, the parties to the State Court Litigation are prepared to move forward without the Debtor. However, because the Debtor is a necessary and indispensable party to the State Court Litigation, the same parties will be required to bring a separate action duplicating substantially the same issues and the same facts in order to determine the extent and priority of the Debtor's interest in the Property. A second action on the

---

parties are ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.

WLM 516290.3　　　　　　　　　　8

same claims will not only waste judicial resources and require that the parties incur unnecessary expense, it may result in contradictory and inconsistent findings by two different courts.

28.  The California Court has expended valuable resources in connection with the State Court Litigation, the interests of judicial economy will be best served by allowing the State Court Litigation to proceed there.

29.  Moreover, the Property, all other parties, and all the witnesses reside in California. The non-debtor parties would suffer tremendous hardship were they compelled by this Court to re-litigate most of the issues of the State Court Litigation in a forum 3,000 miles from the Property in order to determine the extent and validity of the Debtor's lien.

30.  Accordingly, the non-debtor parties to the State Court Litigation will suffer incrementally more harm if relief is not granted than the Debtor if relief is granted and the Debtor participates in the State Court Litigation in the California Court.

### III.  CitiFinancial's Complaint Meets the Minimum Threshold for Merit

31.  A stay relief hearing is not intended to adjudicate the merits of the underlying claim sought to be litigated in state court, but it is meant to determine only whether the Plaintiff has made a "vague initial showing that he can establish a prima facie case". *In re Peterson*, 116 B.R. 247, 250 (D.Colo. 1990). "Even a slight probability of success on the merits may be sufficient to warrant stay relief in an appropriate case." *In re Continental Airlines, Inc.*, 152 B.R. 420, 426 (D.Del. 1993).

32.  CitiFinancial need not argue the merits of the claims made against the Debtor in the State Court Litigation, rather, it must demonstrate that it has established a prima facie case. The record in the State Court Litigation clearly demonstrates that CitiFinancial has met this standard. CitiFinancial has more than sufficiently established in its State Court Litigation papers

that it holds a valid first lien on the Property that subordinates the Debtor's lien and that it will prevail in the State Court Litigation.

33. CitiFinancial therefore readily satisfies all three prongs of this Court's analysis to grant relief. The debtor will not be prejudiced in any way by permitting the State Court Litigation to finish in the California Court. The California Court is best situated and most knowledgeable to hear the state court claims regarding the extent and validity of the Debtor's interest in the Property. Moreover, the Court has already expended significant time and energy on the proceedings. The burden on the non-debtor parties to travel several thousand miles to re-litigate the same issues that have been presented to the California Court far outweighs any burden on the Debtor. Finally, CitiFinancial has established its prima facie case with the California Court.

## IV.  Application of the Sonnax Policies

34. Several of the policies listed in *Sonnax* reinforce CitiFinancial's need for relief from the automatic stay. Of particular importance, the California Court has specialized knowledge over California real property law, particularly in real property actions to quiet title and for declaratory relief. *See Sonnax Indus., Inc.*, 907 F.2d at 1287. The parties to the State Court Litigation are primarily third parties to this bankruptcy case who would suffer great hardship and prejudice should this Court require them to resolve the claims against the Debtor in this court. *See id.* The parties are ready for trial. *See id.* The trial would not interfere with this Court's proceedings and will not result in a complete resolution of the issues without the Debtor's participation. *See id.* Moreover, as set forth above, the interests of judicial economy and the expeditious and economical resolution of litigation greatly favor resolution in the California Court. *See id.*

35. Thus, for the foregoing reasons, CitiFinancial respectfully requests that this Court lift the automatic stay to allow the State Court Litigation to continue as to the Debtor in the California Court.

## V. Waiver of 10-Day Stay Pursuant to Rule 4001(a)(3)

36. CitiFinancial respectfully requests relief from the 10-day stay contemplated by Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure and requests that the Order granting this Motion become effective immediately upon entry. Further, CitiFinancial respectfully requests that the first hearing on this Motion be treated as a final hearing, pursuant to section 362(e)(1) of the Bankruptcy Code.

## CONCLUSION

37. WHEREFORE, CitiFinancial respectfully requests that this Court (i) grant the relief requested in the Proposed Order to modify the automatic stay to allow CitiFinancial to proceed with the State Court Litigation as to the Debtor; and (ii) grant such other relief as this Court may deem just.

Dated: February 26, 2009
       Wilmington, Delaware

Respectfully Submitted,

EDWARDS ANGELL PALMER & DODGE LLP

   /s/ Stuart M. Brown
Stuart M. Brown (I.D. #4050)
919 North Market Street, Suite 1500
Wilmington, DE 19801
Telephone: 302.777.7770
Facsimile: 307.777.7263
E-mail: sbrown@eapdlaw.com

*Counsel for CitiFinancial Services, Inc.*