IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                           :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                               :
                                                                 :   Jointly Administered
                                                                 :
    Debtors.                                                     :   Objection Deadline: March 12, 2009 at 4:00 p.m. (ET)
                                                                 :   Hearing Date: March 13, 2009 at 11:30 a.m. (ET)
                                                                 :
---------------------------------------------------------------- x

## DEBTORS' MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rules of Civil Procedure 26(c) and 30(d), the above-captioned debtors and debtors in possession (the "Debtors") hereby move the Court for a protective order terminating and/or limiting the Rule 30(b)(6) deposition of Debtors' designee Damian Voulo noticed by Calyon New York Branch as Administrative Agent Pursuant to Repurchase Agreement ("Calyon"). The grounds for this motion are as follows:

### PRELIMINARY STATEMENT

On February 24-25, 2009, Calyon took the corporate deposition of Debtors through three witnesses, Bret Fernandes, Simon Sakamoto and Damian Voulo. At Mr. Sakamoto's deposition on the morning of February 25, Debtors repeatedly objected to Calyon's attempts to inquire into

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The mailing address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

topics that exceeded the scope of Debtors' Rule 30(b)(6) designations or were not even the subject of a 30(b)(6) topic at all.

When Calyon resumed its harassing line of questioning at Mr. Voulo's deposition on the same afternoon, counsel for Debtors was forced to terminate the deposition on the grounds that it was being conducted in bad faith and in a manner that unreasonably annoys, embarrasses, or oppresses Mr. Voulo and the Debtors. Because Calyon's questions on subjects it knew the witness could not answer for lack of knowledge are irrelevant, wasteful, and otherwise exceed the scope of its 30(b)(6) notice, the Court should enter a protective order terminating Calyon's deposition of Mr. Voulo (and the 30(b)(6) deposition of Debtors).

## BACKGROUND

On August 6, 2007, each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors. No trustee or examiner has been appointed. This Court confirmed The Amended Chapter 11 Plan of Liquidation of the Debtors on February 23, 2009.

Certain of the Debtors and Calyon are parties to a repurchase agreement dated as of November 21, 2006 (the "Repurchase Agreement"). The Repurchase Agreement provides for, among other things, the transfer of one or more mortgage loans from the Debtors to security issuers and banks (hereinafter collectively, the "Purchasers") in exchange for the transfer of funds from Purchasers to the Debtors. The Repurchase Agreement further provides that the

Purchasers will return the mortgage loans or interests in the mortgage loans to the Debtors not later than 180 days after the initial transfer in exchange for the transfer of funds from the Debtors to the Purchasers.

On January 10, 2007, Calyon filed the so-called repurchase claims against various Debtor entities,[2] each asserting claims under the Repurchase Agreement and other Transaction Documents including, without limitation, (i) a claim for the repurchase of the Calyon Loan Portfolio at the Repurchase Price of $1,179,579,324.67, plus interest; (ii) claims for all costs and expenses, including attorneys' fees, other professional services and disbursements, as provided in the Repurchase Agreement; and (iii) claims based on the Debtors' alleged breaches, and failure to comply with the terms of the Repurchase Agreement and other Transaction Documents.

Pursuant to a stipulated scheduling order in the litigation, the parties agreed to schedule all depositions of any fact witnesses, including any corporate designees pursuant to Federal Rule of Civil Procedure 30(b)(6), between February 18-25. In its responses and objections to Calyon's subsequent 30(b)(6) notice, Debtors designated a total of five (5) witnesses, including, Bret Fernandes, Simon Sakamoto, and Damian Voulo. (*See* Debtors' Objections and Designations in Response to Calyon's Notice of 30(b)(6) Deposition of Debtors (Feb. 19, 2009), attached as Ex. A).[3]

On February 25, 2009, Calyon took the depositions of Mssrs. Sakamoto and Voulo. (*See* Deposition of Simon Sakamoto (Feb. 25, 2009), Ex. B; Deposition of Damian Voulo, Ex. C). During the deposition of Mr. Sakamoto, counsel for Debtors repeatedly, and patiently, warned

---

[2] Claim No. 8044 is asserted against AHM Servicing; Claim No. 8045 against AHM Acceptance; Claim No. 8046 against AHM Corp.; and Claim No. 8047 against AHM Investment.

[3] Calyon chose not to require the Debtors to provide two of the designees after conferring with Debtors' counsel regarding the true scope of the line of inquiry for which they were designated by Debtors.

Calyon that its line of questioning was beyond the scope of Debtors' 30(b)(6) designations. (*See, e.g.*, Sakamoto 37:20-39:05 (Calyon's objection to inquiry into Declaration of Michael Strauss, for which objections had been interposed by the Debtors and no witness had been designated), 42:21-62:08 (twenty-page span of Debtors' almost continuous objections to questioning beyond the scope of designation of Mr. Sakamoto and the 30(b)(6) topics generally)).

Calyon then examined Mr. Voulo that afternoon. From the outset of the Voulo deposition, Calyon continued its attempts of that morning to expand the scope of Debtors' 30(b)(6) designations. Furthermore, Calyon pursued questions it knew the witness could not answer for lack of knowledge. When it became apparent that Calyon had resumed its wasteful, annoying, and harassing line of questioning, counsel for Debtors terminated the deposition. This is Debtors' motion for a protective order.

## ARGUMENT

A party's right to deposition discovery, while broad, is not unlimited. In recognition of this fact, Federal Rule of Civil Procedure 30 provides that:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent . . . . If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

FED. R. CIV. P. 30(d)(3)(A). Thereafter, the Court may terminate or limit the scope of the deposition "as provided in Rule 26(c)." *Id.* 30(d)(3)(B).

In turn, Rule 26 authorizes the Court, for good cause, to "issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense . . ." and otherwise limit discovery to specified terms and conditions. *Id.* 26(c). Thus, protective orders are designed to foreclose overreaching by parties seeking discovery. *See* FED. R. CIV. P. 30 Adv. Comm.

Notes (1937 Adoption) ("[Subsection (d) is] introduced as a safeguard for the protection of parties and deponents on account of the unlimited right of discovery given by Rule 26."); *Enzo Life Sciences v. Digene Corp.*, C.A. No. 02-212-JJF (D. Del. Jan. 16, 2004) (entering protective order precluding line of questioning at deposition) (email order attached as Ex. D).

I.     A PROTECTIVE ORDER IS WARRANTED BECAUSE CALYON'S REPEATED INQUIRY INTO TOPICS TO WHICH THE WITNESS HAD NO KNOWLEDGE AND FOR WHICH HE WAS NOT DESIGNATED RENDERED THE QUESTIONING IRRELEVANT

Calyon's repeated attempts to question Mr. Voulo on topics wholly unrelated to the witness' knowledge and outside the scope for which he was designated by the Debtors were irrelevant and therefore constituted harassment of the deponent. Generally, when considering a motion for protective order, "[a] showing of irrelevancy of the proposed discovery satisfies the good cause requirement." *McCurdy v. Wedgewood Capital Mgmt. Co.*, 1998 U.S. Dist. LEXIS 20628, at *6 (E.D. Pa. Dec. 30, 1998); *Smith v. Dowson*, 158 F.R.D. 138, 142 (D. Minn. 1994) (entering protective order on ground that inquiring parties "should not be permitted to roam in shadow zones of relevancy") (citation omitted). As a result, "[q]uestions to a deponent outside the bounds of relevancy are improper and could easily be construed to be in bad faith or oppressive." *City of Owensboro v. Ky. Utils. Co.*, 2007 U.S. Dist. LEXIS 24615, at *10-11 (W.D. Ky. Mar. 29, 2007) (party entitled to protective order after terminating second deposition when adversary continued irrelevant line of questioning from first deposition), *obj. overruled*, *City of Owensboro v. Ky. Utils. Co.*, 2007 U.S. Dist. LEXIS 88224 (W.D. Ky. Nov. 29, 2007).

At the deposition, Mr. Voulo testified that he had a narrowly confined role in the matters at issue: the production of loan data requested by Mr. Sakamoto (Voulo 7:17-24; *see also* Sakamoto 23:21-25, 28:21-23 (explaining that he asked Mr. Voulo "to produce comps . . . for each loan type within the Calyon portfolio")). Yet despite having express notice of the witness'

limited knowledge, Calyon continuously insisted on asking Mr. Voulo about topics he could not answer. For example, Calyon asked Mr. Voulo about Debtors' document retention policies (Voulo 13:15-23 ("[T]hat was not part of my responsibility . . . .")) and negotiations between Debtors and Calyon in February 2008 (*id.* 15:21-16:04 ("I'm not qualified to answer that.")). All of these subjects are unquestionably outside the witness's designation, or beyond the scope of his knowledge.

> Calyon also asked about an email concerning a so-called MIAC loan tape:
>
> Q. Were you the one that acquired the tape for them and provided it to Calyon?
>
> \* \* \*
>
> A. I provided the loan numbers and some information. **I didn't provide a MIAC tape. I don't know what a MIAC tape is.**
>
> \* \* \*
>
> Q. Stepping back a minute, you don't know what a MIAC tape is?
>
> A. In [the] context of what he is talking about here [on the email], I had no dealings with MIAC from a MIAC tape perspective in my job at American Home.

(Voulo 18:17-24; 19:08-13) (emphasis added).

Despite Mr. Voulo's statement that he had no interaction with or responsibilities concerning the MIAC tape, Calyon continued its line of questioning, asking about the information that might be on the tape (Voulo 19:17-18), the definitions of the servicing terms UPB, LTV, FICO, and REO it contained (*id.* 19:24-20:14), whether the tape data would include proceeds paid by borrowers (*id.* 20:15-17), and whether "other information" might be on the tape (*id.* 21:23-24). Given the dearth of comprehension on Mr. Voulo's part, Calyon's continuous attempts to obtain testimony beyond the scope of Mr. Voulo's knowledge, outside the scope of

any topic for which Mr. Voulo was designated by Debtors and outside the scope of any 30(b)(6) topics generally, could serve no use in the case and hence were improper. *See, e.g., Kakule v. Progressive Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 35178, at *12-13 (E.D. Pa. Apr. 30, 2008) ("Inquiry into [activity post-dating event in issue] would not be useful in this case, and would only serve to harass or burden Progressive.") (granting protective order).

II. A PROTECTIVE ORDER IS WARRANTED BECAUSE RESUMING QUESTIONING OUTSIDE THE BOUNDARIES OF THE DESIGNATIONS WILL ONLY WASTE THE WITNESS' TIME

A protective order is also warranted on the ground that Calyon's insistence on exceeding the scope of Mr. Voulo's 30(b)(6) designation was a waste of time. At the deposition, Calyon asked Mr. Voulo about loan document data contained in a December 2007 email, justifying its inquiry on the grounds that it related to "valuation." (Voulo 21:09-13). Given Mr. Sakamoto's testimony earlier in the same day that Debtors had conducted no valuations beyond September 11, 2007 (and that Mr. Sakamoto was the person at AHM that conducted the valuations in the first instance), however, Calyon's line of questioning is nothing but a naked attempt to evade the witness' 30(b)(6) designations. (Sakamoto 20:02-05; *see also id.* 72:09-22 (stating that Debtors had not performed any valuation of the Calyon portfolio as of January 2008)). Calyon also knew from Mr. Sakamoto's prior testimony that Mr. Sakamoto had requested Mr. Voulo to perform only a discrete task as part of Mr. Sakamoto's 2007 valuations. (Sakamoto 23:21-25, 28:21-23). Mr. Voulo himself testified that he was unaware of what the MAIC tape would be used for. (Voulo 19:10-13). Given that Mr. Voulo was not offered for servicing topics (and there were not servicing topics in the 30(b)(6) notice), Calyon's attempts to ask about these topics, and hence unilaterally expand the scope of the deposition, could serve no purpose other than to harass or oppress the witness. *See Kakule*, 2008 U.S. Dist. LEXIS 35178, at *12-13.

Given Calyon's continued improper questioning, Debtors had to terminate Mr. Voulo's deposition to protect the witness. In Mr. Sakamoto's morning deposition, Debtors had already seen firsthand that Calyon refused to conform, despite Debtors' repeated entreaties, the questioning to the topics at hand. (*See, e.g.*, Sakamoto 38:24-39:05 ("We can stay on the record. The objection stands. He's not designated for it. It's beyond the scope. Any questions down this line are just harassing. We will seek a protective order."). Even after Calyon resumed this annoying and oppressive pattern in the afternoon, Calyon notified Debtors it would not change its behavior:

> MR. ACKERLY: Okay. We're going to ask the questions. You can instruct him not to answer, okay.
>
> MR. CROWTHER: I just did.
>
> MR. ACKERLY: We'll take it up with the judge. Keep asking questions. You keep instructing him not to answer.

(Voulo 21:16-24). When Calyon proceeded to continue its line of improper questioning (*see id.* 21:23-22:07), Debtors had no recourse but to end the deposition.

## CONCLUSION

By repeatedly focusing on irrelevant and wasteful topics throughout the course of two depositions – topics that Calyon knew the witness either had no knowledge of, was not designated by Debtors to testify on such topic, or that no such topic was within the scope of the entire 30(b)(6) topic list – Calyon displayed a systematic pattern of annoying, wasteful, and harassing questioning that cumulatively transformed Mr. Voulo's deposition into a campaign of harassment and oppression. Rather than subject Mr. Voulo to an extended dispute over the boundaries of the deposition, and repeatedly be forced to object to vast spans of questioning as

had to be done during Mr. Sakamoto's deposition, Debtors instead seek the protection of this Court.

For these reasons, and for the reasons stated above, the Court should grant the motion and enter a protective order terminating or limiting the deposition of Damian Voulo.

Dated: Wilmington, Delaware  YOUNG CONAWAY STARGATT & TAYLOR, LLP
February 27, 2009

*Curtis J. Crowther by Andrew A. Lulyn (No. 4429)*
_____
John T. Dorsey (No. 2988)
Sean M. Beach (No. 4070)
Curtis J. Crowther (No. 3238)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for Debtors and*
*Debtors-in-Possession*