UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              .    Chapter 11
                                    .
AMERICAN HOME MORTGAGE              .    Case No. 07-11047(CSS)
HOLDINGS, INC., *et al.,*           .    Jointly Administered
                                    .
        Debtors.                    .    Jan. 13, 2009 (11:04 a.m.)
                                    .    (Wilmington)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Matthew B. Lunn, Esq.
                            Nathan D. Grow, Esq.
                            Young, Conaway, Stargatt & Taylor

For National City:          Sherry D. Lowe, Esq.
                            Lamm Rubenstone

For the Committee:          Mark Power, Esq.
                            Hahn & Hessen


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

INDEX

<u>National City's Evidence</u>:

|  | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| WITNESS: | | | | |
| Susan Lubben | 15 | 32 | | |
|  | | 36 | | |

| <u>Exhibits</u>: | | <u>Marked</u> | <u>Received</u> |
|---|---|---|---|
| National City 1 | Notice of Assignment | 20 | 20 |
| National City 2 | License Agreement | 21 | 22 |
| National City 3 | Payment Plan and Schedule | 30 | 31 |
| Committee Exhibit 1 | Proof of Claim | 49 | 49 |

1           THE CLERK: All rise.

2           THE COURT:  Please be seated.

3           MR. LUNN: Good morning, Your Honor.

4           THE COURT: Good morning, Mr. Lunn.

5           MR. LUNN: May it please the Court, Matthew Lunn

6    from Young, Conaway on behalf of the debtors.  Referring to

7    the agenda that was filed, Your Honor, items 1 through 21 are

8    either adjourned or have been resolved.  In particular, I

9    think, agenda item 21, there was a certification of counsel

10   filed, and I believe Your Honor has entered an order.  This

11   related to a motion in connection with the approval of a

12   second stipulation.

13          THE COURT: Okay.

14          MR. LUNN: Item 22 are interim fee requests.  I'm

15   happy to answer any questions Your Honor may have with

16   respect to Young, Conaway's.

17          THE COURT: No, I had - especially with the upcoming

18   confirmation hearing, I had no issues with the interim fee

19   requests, and I'll sign the order.

20          MR. LUNN: May I approach with a form of order?

21          THE COURT: Yes.  Thank you.  Anyone on the phone

22   solely for this matter is welcomed to drop off.  I've signed

23   the order.

24          MR. LUNN: Thank you, Your Honor.  Agenda item 23 is

25   the motion of National City for allowance of an

1    administrative expense claim.  What we're going to do is

2    carry that matter to the end of the agenda and move to agenda

3    items 24 and 25 which are claims objections, and I'll cede

4    the podium to my colleague, Mr. Grow.

5         THE COURT: Okay.  Thank you.  Good morning, Mr.

6    Grow.

7         MR. GROW: Good morning, Your Honor.  For the

8    record, Nathan Grow of Young, Conaway, Stargatt & Taylor.

9    Your Honor before we talk about the claim objections, I just

10   wanted to give you a little update.  I'm happy to be able to

11   tell the Court that on Friday we filed the 28th and 29th

12   omnibus claim objections that address a large number of the

13   dollar amounts of the total claims in cases that have been

14   filed, is by far our largest objections to date, and the

15   total amount of claims addressed in these objections is $1.6

16   billion.  So, we are moving forward and trying to get the

17   process expedited as quickly as we can.

18        THE COURT: Okay.

19        MR. GROW: Moving onto item number 24 on the agenda

20   for today's hearing.  This is the debtors' 26th omnibus

21   objection to claims.  Your Honor, in light of responses that

22   we've received, I have a couple of revised forms of order for

23   the 26th and the 27th, some blacklines.  May I approach to hand

24   them up?

25        THE COURT: You may approach, yes, bring them both

1    up, yeah.  Thank you.

2        MR. GROW: Okay, Your Honor, just to address some of

3    the adjustments made to the order in light of responses

4    received, we have - the debtors wish to withdraw the

5    objection with respect to the proofs of claim filed by

6    Kristin Wolf, Indian River County Tax Collector, Avaya Inc.,

7    Jean A. Delev (phontical).

8        THE COURT: Okay.

9        MR. GROW: And the debtors wish to adjourn the

10   objection with respect to Imperial County Tax Collectors,

11   several claims filed by them.

12       THE COURT: Okay.

13       MR. GROW: The debtors also received a response from

14   Gary and Karen Grundy.  Debtors objected to their claims on

15   the basis that they were filed on account of their equity

16   interests in the debtors.  Their response only confirms the

17   interest that these parties have and offers no other

18   arguments, no mention of fraud or anything of the like.  It's

19   merely a claim based on their equity interests.

20       THE COURT: Okay.

21       MR. GROW: We also received a response from the Los

22   Angeles County Treasurer.  The debtors objected to their

23   claim on the basis that it was filed late, and they filed a

24   response clarifying that the claims that we objected to, two

25   of them were amendments.  So what we've done - they filed

1    claims 10516 which amends 158, claim 10517 which amends 8832,

2    10517 was later amended by 10553.   So, to resolve this, we

3    put claim 158, 10517, and 8832 on the amended claims exhibit.

4              THE COURT: Okay.

5              MR. GROW: We've taken 10516 and 10553 off of our

6    late filed claims exhibit, and we reserve all right to review

7    those in the future and object on other grounds.

8              THE COURT: Alright.

9              MR. GROW: This is all in accordance with the

10   response that they filed.

11             THE COURT: Okay.  Anything else?

12             MR. GROW: One other response that we received, 226

13   was from Daryl Bottom who - we objected to his claim on the

14   basis that it was filed late on September 9th, almost nine

15   months after the bar date.  His response provided no

16   explanation as to why his claim was late, no reason.  He

17   merely reasserted that the basis of his claim, which is an

18   equity claim, even if it hadn't been late, we would object to

19   it on equity grounds.  So we would request that the objection

20   be granted notwithstanding his response.

21             THE COURT: Alright.

22             MR. GROW: Okay, Your Honor, I have no other

23   comments or adjustments with respect to 26 unless Your Honor

24   has any questions.

25             THE COURT: I do not.  The remaining objections are

1  overruled for the reasons argued by the debtors, and I'll

2  sign the order unless anyone wishes to be heard.  Alright,

3  hearing none, I'll sign the order.

4          MR. GROW: Thank you, Your Honor.  Moving on to the

5  27th omnibus substantive objection to claims.  We received

6  just two responses, one noted on the agenda from Orlans

7  Associates, another one not noted on the agenda from Palmer

8  House Hilton.  We wish to adjourn the objection with respect

9  to those claims, and I'll just note with respect to Palmer

10 House that we have an agreement in principal as to resolving

11 that claim, and we plan to submit an order under a

12 certification of counsel if that's acceptable to Your Honor.

13         THE COURT: Yes.

14         MR. GROW: Okay, I have no other comments or changes

15 to 27, unless Your Honor has any questions.

16         THE COURT: I do not.  Does anyone wish to be heard

17 in connection with the 27th omnibus objection?  Alright,

18 hearing none, the Court will enter the revised order.

19         MR. GROW: Okay, thank you very much, Your Honor.

20 I'll turn the podium back over to Matthew Lunn.

21         THE COURT: Alright, thank you.

22         MR. LUNN: Your Honor, this brings us back to the

23 motion for an administrative expense claim filed by National

24 City.  Understanding the Court's time constraints and

25 somewhat of a tight time frame, whatever Your Honor wishes to

1  do with respect to this hearing, we're amenable to doing it,

2  the debtors are that is.

3          THE COURT: Okay.  They're behind you so let me hear

4  from National City.  Thank you, Mr. Lunn.  They're sneaking

5  up on you.

6          MR. LUNN: That's very fine, Your Honor.

7          MR. CIANCIULLI: Your Honor, good morning.  Jeffrey

8  Cianciulli on behalf of National City, local counsel to

9  National City and with me is Sherry Lowe who's been admitted

10  to appear before the Court.

11          THE COURT: Alright, good morning.

12          MS. LOWE: Good morning, Your Honor.

13          THE COURT: Let me just - because you weren't here

14  when we were discussing it earlier, I do have an ongoing

15  evidentiary hearing that started at 10.

16          MS. LOWE: Okay.

17          THE COURT: So, I understand you have witnesses; is

18  that correct?

19          MS. LOWE: Yes, I have one witness, Your Honor, and

20  I honestly do not expect for this to be longer than maybe

21  even a half an hour.

22          THE COURT: Alright, well, I think I need to give

23  priority to what has already begun, so what I would propose

24  to do is we'll adjourn this matter.  I will complete the

25  matter in the Chapter 7, and I have two witnesses left there,

1    both of which are going by proffer, so hopefully that will

2    move along quickly, and as soon as that's done, we'll take

3    this matter up.

4         MS. LOWE: Okay, thank you, Your Honor.

5         THE COURT: Right.  Is there anything preliminarily

6    - maybe you can give me a little brief introduction as to

7    what the issues are and what your positions are going to be

8    and what the witness is going to testify to before we

9    adjourn.

10        MS. LOWE: Sure, thank you, Your Honor.  As you

11   know, I represent National City Bank.  My name is Sherry Lowe

12   and I'm partner at Lamm Rubenstone, and this particular

13   matters involves - it's very akin to an Oracle two-way lease.

14   It is not Oracle two-way lease, but it's structured in a

15   similar fashion.  Oracle is the supplier of the software and

16   technical support to the debtor.  The type of software that

17   they provided to the debtor is HR Software.  We tend to

18   believe that that's pretty essential for the going concern of

19   the debtor.  The debtor has already admitted to continued use

20   post-petition.  The debtor has admitted to using it up until

21   July of 2008.  The contractual terms is really two-fold.

22   There is a payment plan structure that is a separate contract

23   but related to Oracle's undermining license agreement.  The

24   licence agreement, of course, provides for the use of the

25   software and technical support.  The payment plan agreement

1  provides the terms for payment for such use of the software

2  and technical support.  Our position, Your Honor, is that the

3  debtor was current under the payment plan terms up to their

4  filing in August of 2007.  At that time there was one payment

5  that was remaining which would have paid for their continued

6  use of the software and technical support from November 2007

7  until the expiration of the contractual terms which would

8  have expired in April of 2008.  As I said before, in their

9  response to our motion, they admitted to using up through

10  July 2008.  My client is not asking for more than the

11  remaining payment, which is to the tune of $283,000, a little

12  bit over that, even though the debtor continued to use it

13  after the expiration of the contractual terms.  Our position

14  is this, Your Honor, the debtors' decision to continue to use

15  the software for winding down purposes, for which would have

16  contained all of their employee records, and as the Court may

17  be aware, this debtor filed for bankruptcy continuing as a

18  going concern, they say so in their disclosure and in their

19  Chapter 11 plan.  It was also identified and should be

20  considered as a judicial admission, is that they terminated a

21  number of employees.  There's a class action that has been

22  certified by this Court to proceed against them with

23  litigation that involves payment that their former and

24  existing employees' claim are due.  They would have to use

25  the HR software, and we believe did in fact use the HR

1   software for all of those reasons, for the going concern, for

2   continuing to operate with their existing employees, for any

3   claims that were raised by former employees, and for any

4   claims that have been raised under the class action that has

5   been brought against them.

6            THE COURT: Uh-huh.

7            MS. LOWE: Quite honestly and quite simply, Your

8   Honor, we believe that because of the continued use

9   post-petition and the services that were provided to them by

10  Oracle post-petition entitles National City to payment for

11  those services and that in the simple form is our position.

12           THE COURT: And the witness will testify to what?

13           MS. LOWE: The witness will testify to the

14  relationship between National City and Oracle, will testify

15  to the product that was used in this particular case, and

16  will testify to the payment that we believe we're entitled to

17  as a result of the continued use and technical support.  We

18  will not have much testimony on the use and technical

19  support, because it's already admitted by the debtors -

20           THE COURT: Okay.

21           MS. LOWE:  - in their response as well as can be

22  intimated by the terms in their Chapter 11 plan.

23           THE COURT: Very good.  Mr. Lunn, do you have any

24  sort of brief response to kind of frame the issues?

25           MR. LUNN: Yeah, very brief, Your Honor.  I think

1    Your Honor's probably heard and as we've just admitted,

2    there's two separate agreements here, Your Honor.  There's a

3    license agreement with Oracle USA and there's the plan

4    payment agreement with Oracle Credit Corp.  The right to

5    payment that was assigned to National City was the Oracle

6    Credit Corp.  The right to use the software that was

7    delivered to the debtors pre-petition, a perpetual license

8    was Oracle USA.  There's two prongs, Your Honor, as you're

9    well aware.  Post-petition transaction and that transaction

10   provides a direct and substantive benefit to the debtors'

11   estates.  Usage alone of the software license, if Your Honor

12   looks at the Value Media case entered by Judge Walsh, it

13   doesn't elevate that claim to administrative expense

14   priority.  In other words, the mere fact that a payment comes

15   due under a separate agreement, a pre-petition separate

16   agreement, doesn't make the claim an administrative expense

17   claim, Your Honor.

18        THE COURT: Okay.  Alright, thank you.  I understand

19   the issues, that's very helpful.  We are going to need to

20   recess to finish the Leisure Fitness case, and as soon as

21   that hearing is over we'll turn to this matter.

22        MR. LUNN: Thank you, Your Honor.

23        THE COURT: Alright, thank you very much.  We're in

24   adjournment.

25        (Whereupon at 11:17 a.m., a recess was taken in the

1  hearing in this matter.)

2            (Whereupon at 2:49 p.m., the hearing in this matter

3  reconvened and the following proceedings were had:)

4            THE CLERK: All rise.

5            THE COURT: Please be seated.

6            MR. LUNN: Good afternoon, Your Honor.

7            THE COURT: Good afternoon.

8            MR. LUNN: We are back with respect to the motion

9  that was filed by National City for payment of an

10  administrative expense claim, and I will cede the podium to

11  counsel for National City.

12            THE COURT: Alright, you can call your witness.

13            MR. LUNN: Your Honor, I think we would object to

14  the use of a witness.

15            THE COURT: You think you would or you do?

16            MR. LUNN: We do object.  What we're talking about

17  here, Your Honor, are the terms of a contract, actually two

18  agreements, the terms of which speak for themselves.  To the

19  extent the witness is going to testify as to services that

20  were received by the debtors, the debtors concede in the

21  papers that were using the software licenses, and I think the

22  witness, although I haven't confirmed, is a National City

23  representative and is not an Oracle USA representative, and

24  therefore any testimony with respect to the use of the

25  software would be hearsay.

1       MS. LOWE: Thank you, Your Honor, counsel for

2  National City.  Quite honestly, Your Honor, if the Court

3  would allow for our representative to - and our witness to

4  testify today, you will hear testimony of her personal

5  knowledge of working with Oracle for an extended number of

6  years.  You will also hear information and testimony from

7  this particular witness of the contracts that are at issue

8  before this Court to provide clarity to the Court of the

9  relationship between the license agreement and the payment

10  plan agreement.  So, to the extent - we were not going to get

11  into a lot of testimony about the use because I agree with

12  debtors' counsel they've absolutely - and as I argued earlier

13  today, have judicially admitted to post-petition use of a

14  software and a technical support.

15       THE COURT: Uh-huh.

16       MS. LOWE: So, we do not have a lot to add nor do we

17  intend to add much on that particular issue.  We think

18  there's no need to.

19       THE COURT: Alright, I'll overrule the objection.

20  It may be that I ultimately rule it's a question of law and

21  we don't need to get into the facts, but if I don't, we're

22  going to need the record in any event.  Your client's here,

23  let's get the witness on.

24       MS. LOWE: Thank you, Your Honor.

25       THE COURT: Please rise.

1          THE CLERK: (Microphone not recording.)

2          THE WITNESS: Susan Lubben, L-u-b-b-e-n.

3                        SUSAN LUBBEN

4    having been duly sworn testifies as follows:

5                     DIRECT EXAMINATION

6    BY MS. LOWE:

7    Q.  Please state your name for the record.

8    A.  Susan Lubben.

9    Q.  And state your position.

10   A.  I'm vice president of operations and risk management for

11   National City Vendor Finance, a division of National City

12   Commercial Capital Corporation.

13   Q.  Long word.

14   A.  Yes.

15   Q.  And you can limit it by saying National City.  That would

16   be helpful.

17   A.  Okay.

18   Q.  Please explain to the Court what your duties are.

19   A.  I work for a little boutique group of about 15, and we

20   buy third-party paper from various manufacturers such as

21   Oracle.  My duties are from the time a deal gets put on the

22   books, I take care of it until it hits end of term.  So

23   anything that goes on with the deal, any customer service,

24   any collections, any workouts, is all under - invoicing, all

25   of that is under my role.

1   Q.  Please explain to the Court your relationship in your

2   current capacity with Oracle as well as your past

3   relationship with Oracle, and if you can provide the periods

4   of time that you have worked with Oracle and Oracles'

5   contracts.

6   A.  A prior company, Seminole (phonetical) Business Credit

7   Corporation in the late '80s started an agreement with Oracle

8   to buy paper from them, and we were the first finance company

9   to do so.  I worked on that and have worked with Oracle since

10  the late '80s in servicing their contract agreements.

11  Q.  Describe to the Court the type of contract agreements

12  that you were familiar with.

13  A.  With Oracle or just -

14  Q.  With Oracle.

15  A.  Oracle has several different agreements.  They have the

16  OSLA, the software licence agreement.  They have - and that

17  is just the basic agreement that they use putting forth the

18  terms of the use of the software.  They have the ordering

19  document and that is actually spelt out what the software is.

20  Under that OSLA they have language in there that says that if

21  they are not going to purchase that software up front that

22  they can finance it through Oracle Finance Division.  Oracle

23  Finance Division has then two contracts or two different

24  documents, what they call the payment plan agreement or the

25  PPA and that is for - it's almost a master.  It just gives

1   you the general terms of the agreement and then the payment

2   schedule, which is underneath the PPA and that talks about

3   the finance terms of the agreement for the use of that

4   software.

5   Q.  And in this particular case with American Home, are you

6   aware that a payment plan agreement and the payment schedule

7   was created to finance the purchase of a software and

8   technical support provided to the debtor in this case?

9   A.  Yes.

10  Q.  Okay.  Then, please explain to the Court that the payment

11  plan agreement, which is part of National City's motion and

12  is attached as an Exhibit A to National City's motion, how

13  that agreement became - or how National City became entitled

14  to rights under that agreement?

15  A.  We have a master vendor agreement with Oracle that allows

16  us from time to time for them to offer us and for us to

17  purchase payment schedules and PPAs, and once we do purchase

18  that, they assign us the rights to payments.

19  Q.  So how does this work?  I mean if Oracle is providing the

20  product and the technical support, the financial arm of

21  Oracle, Oracle Credit which is identified in the payment plan

22  agreement, then do what?  Finance the purchase of a property

23  and allow the debtor to use the software and the technical

24  support?

25  A.  That's correct.

1   Q.   And then, National City, once they become involved, what

2   are they doing?   Are they paying Oracle for -

3   A.   We pay Oracle up front the present value of the worth of

4   the contract, of the payment stream, and then we - Oracle

5   then provides a notice of assignment letter to the customer

6   saying that we have now the rights to the payments and that

7   they are to pay us going forward, and I guess, if I can look

8   at the exact verbiage, it says that we have the rights, but -

9            MR. LUNN: Objection, Your Honor.

10           THE COURT: Yeah, what do you have up there?

11           THE WITNESS: You don't want me to look at that?

12           THE COURT: No, I don't.

13           THE WITNESS: Okay.

14   BY MS. LOWE:

15   Q.   Identify what you're looking at before you testify to it.

16   A.   I'm sorry.   The notification of assignment letter.

17           MS. LOWE:   And a notification - if you look at our

18   motion, that notification is attached to our motion as

19   Exhibit B.

20           THE COURT: Do you have the motion?

21           MS. LOWE: Yes.

22           THE COURT: Does she have the motion.

23           THE WITNESS: That's what I was looking at.

24           MS. LOWE: Yes, she does.

25           THE COURT: Alright, what - Just so you know, the

1    minute you pick that up, Mr. Lunn can look at everything

2    you've got in there; alright?  So go ahead, sure.

3            MR. POWER: Do we have a copy of what - Your Honor,

4    Mark Power of Hahn & Hesson.  Can we have a copy of -

5            MS. LOWE: You have a copy of the motion that was

6    filed by National City and then the exhibit -

7            THE COURT: Tell you what - I'm sorry.  Can I -

8    Ma'am?

9            THE WITNESS: Yes.

10           THE COURT: I'm going to ask counsel, I want to see

11   what you're looking at.

12           THE WITNESS: Oh.

13           THE COURT: Is that the whole folder?

14           THE WITNESS: You can take the whole thing.

15           THE COURT: Yeah, let me see what we've got here.

16   Let's put that away.  I don't want her to have that, the

17   whole thing, get it out of here, and - you can keep the pen.

18           THE WITNESS: I don't need the pen.

19           THE COURT: If you want to show her a document,

20   let's - you show her something and now Mr. Lunn knows what

21   he's getting.

22           MS. LOWE: Okay.

23           THE WITNESS: I guess I don't have to do it

24   verbatim, but the notification letter of assignment -

25           MS. LOWE: But before you testify to it, let's

1    introduce it into evidence, then you can testify.  It's part

2    of a motion and that's fine.  Let me first show it to

3    opposing counsel.

4            MR. LUNN: Okay.

5            THE WITNESS:  So, Exhibit B tells the American Home

6    Mortgage that Oracle is stating that rights to enforce

7    remedies under the contract have been assigned, giving the

8    assignee the independent right to exercise the rights under

9    the contract.  That is also stated basically in the software

10   license agreement.

11           MS. LOWE: Okay, before you testify further about

12   the software license agreement - Your Honor, I would like to

13   have that notice of assignment entered into evidence.  It is

14   attached to our motion.  There's been no objections to that

15   exhibit prior to today.

16           THE COURT: Mr. Lunn?

17           MR. LUNN: No objection, Your Honor.

18           THE COURT: Alright, let's mark it National City

19   Exhibit 1 and it will be admitted into evidence without

20   objection.  That's the notification of assignment letter;

21   correct?

22           MS. LOWE: That's correct, Your Honor.

23           THE COURT: Alright.

24           MR. LUNN: Your Honor, what counsel is attempting to

25   do is submit as an exhibit a declaration of somebody - Katy

1    Ready (phonetical) in support of a motion.  I'm told that

2    she's employed by Oracle USA.  Your Honor, Ms. Ready is not

3    available here.  This is the first I've seen of this

4    declaration.

5              THE COURT: Let me see.

6              MS. LOWE: And, Your Honor, the purpose -

7              THE COURT: We won't pick you up unless you have the

8    mike and then you can go back and - thank you.  Yes, ma'am.

9              MS. LOWE: Your Honor, the purpose of this

10   declaration is not really the contents of the declaration

11   because all this declaration does is say that the debtor used

12   the support and the technical support which again, debtors

13   have already admitted to.  The purpose of this and the use of

14   this is the attachment which is the license agreement which

15   the debtor already has and which counsel has already

16   represented that he will not object to.

17             THE COURT: Can we just get the license agreement

18   admitted without the declaration, Mr. Lunn, or do you have an

19   objection?

20             MR. LUNN: I have no objection, Your Honor, to the

21   admission of the license agreement, it's just the

22   declaration.

23             THE COURT: Alright, let's do that.

24             MS. LOWE: So will separate the declaration from the

25   license agreement.

1       THE COURT: Yes.  Alright, so the license agreement

2   will be marked at National City 2 and admitted without

3   objection.

4       MS. LOWE: Thank you, Your Honor.

5   BY MS. LOWE:

6   Q.  Mrs. Lubben, the Oracle license and service agreement, is

7   this the license agreement that you have testified regarding

8   before?

9   A.  Yes, it is.

10  Q.  Okay, and you were about to testify about the correlation

11  between a payment plan agreement and a license agreement, and

12  I believe you were referencing specific sections of a license

13  agreement.  If you could do that for the Court and continue

14  your testimony.

15  A.  First of all, on page 1 it says, Upon payment for your

16  services you can -

17      THE COURT: Hang on, hang on, I'm sorry.  Mr. Lunn,

18  do you have a copy?

19      MR. LUNN: Your Honor, to accept - I object to her

20  actually reading into this.  First of all, she doesn't have

21  any knowledge as to - there's no authentication of the

22  document.  She's reading into evidence -

23      THE COURT: Wait a minute, I just admitted the

24  document.

25      MR. LUNN: But now she's reading into - the document

1    says what it does, Your Honor.

2            THE COURT: Right.

3            MR. LUNN: She can't testify as to what the document

4    says.  It is what it is.

5            THE COURT: Well, she can testify as to her

6    understanding of the inter-relation.  She's not an attorney,

7    but certainly her business understanding.  I'll overrule that

8    objection.  I just want to make sure everybody's got a copy

9    of it.

10           MR. LUNN: Yes.

11           THE COURT: I don't have a copy of it.  Do you have

12   a copy of it?  Well, you're going to need one.

13           MR. LUNN: I have another copy in my - actually, I

14   don't know if -

15           MR. POWER:  Your Honor, I will give you my copy and

16   I will share with Mr. Lunn.

17           MS. LOWE: Judge, if you would like her copy back,

18   you just gave it back to me.

19           THE COURT: Well, I wasn't sure whose copy that was.

20           MS. LOWE: Oh, no, this was what I was leaving for

21   the Court.

22           THE COURT: Okay.  This record is going to look

23   great, I'll tell you.  Please don't appeal because the Third

24   Circuit will be like, What's going on?

25           MR. LUNN: This is all off the record; right, Your

1    Honor?

2           THE COURT: Alright.

3           MS. LOWE: So, Your Honor, that's why I gave it to

4    you.  I wasn't sure why you gave it back, but at any rate -

5           THE COURT: No one knows what I'm doing.  Alright,

6    National City 2, Ms. Lubben, I'm sorry.  There was a pending

7    question as to your understanding as to the relationship

8    between the license agreement and a payment plan agreement.

9    You may answer.

10          THE WITNESS: So it says here that, Upon payment for

11   services -

12          MR. POWER: Your Honor, I'm going - I think -

13   there's no problem.  We have no problem with the witness

14   objecting to our understanding of the contract, but in terms

15   of reading what the contract says, I don't think that's -

16          THE COURT: Well, let her reference - No, it's

17   overruled.  If she wants to reference the provisions and

18   testify as to what she understands them to mean, that's all

19   I'm taking.  I'm not taking it for the substance of what it

20   says.  The document says what it says.

21          MR. POWER: Thank you, Your Honor.

22          THE COURT: But to give an answer she may need to

23   say, you know, give it some context.  So I'll leave it to Ms.

24   Lubben, answer how you wish.

25          THE WITNESS: On page 3 it says, If you are in

1    default under this agreement, you may not use the programs or

2    services ordered.  You further agree that if you use a Oracle

3    Finance Division contract to pay for the fees due and you are

4    in default under that contract, you may not use the program

5    or services ordered and Oracle may end this agreement.  So,

6    this document ties into the PPA and the PS.   Both those two

7    documents - the PS is the payment schedule, the PPA is the

8    payment program agreement.  Both of those documents reference

9    this and this references both those documents.

10   BY MS. LOWE:

11   Q.  And when you say "this" you're referring to the license

12   agreement.

13   A.  Yes.

14   Q.  Thank you.  Can you provide the Court with any additional

15   information regarding your personal knowledge of the Oracle

16   contracts that you have not testified to the Court today?

17   A.  A little background information that Oracle has been

18   doing this for 18 years plus, always been the same

19   agreements.  They sell anywhere between $600 million and a

20   billion dollars of payment schedules to lenders every year.

21   It's always under the same documentation, very rarely is it

22   something different, 95 percent it's under these documents,

23   and we have always believed that they very clearly tie

24   together.

25   Q.  Has National City received any payments from the debtor

1    prior to filing bankruptcy under the payment plan agreement?

2    A.  Or course.  Upon receipt of the notification letter of

3    assignment it says that they are to pay us, and so American

4    Home paid us from day one.  We invoice them, they pay us, and

5    that is the way it has always been.

6    Q.  At the time of the bankruptcy filing, were the payments

7    made under the payment plan agreement which related to the

8    license agreement, were they current or behind?

9    A.  They were current.  That had been paying all along.

10   Q.  And that would have been as long as 2007.

11   A.  That's correct.  The next payment due would have been

12   November, and that would have been their last payment.

13   Q.  The payment that was due in November, what period of the

14   contract would it have covered?

15   A.  The Oracle license and service agreement says that they

16   pay in advance.  So that the November 7th payment would get

17   them to April of '08.

18   Q.  April of '08.  So the payment that was due or would have

19   been due November 7th to 2008, that would have been paid for

20   use of the software and technical support from November 7th

21   through April of 2008; is that your testimony?

22   A.  Uh-huh.

23          MR. POWER: I'm going to object.  This is a little

24   bit too leading in this case.

25          THE COURT: Why don't you rephrase or break it down,

1   and try not to lead the witness, please.

2          MS. LOWE: Sure.

3   BY MS. LOWE:

4   Q.  Testify as to what the payment in November 2007 would

5   have covered.

6   A.  November 2007 would have covered the months of November,

7   December, January, February, and March.

8   Q.  Of -

9   A.  So, November, December of '07.  January, February, March

10  to March 31st of '08.

11  Q.  The payment that was due in November 2007 would have been

12  a post-petition payment; is that corrrect?

13  A.  It would have been a post-petition payment.

14  Q.  And do you know whether or not the debtor used the

15  software and technical support post-petition?

16         MR. LUNN: Objection, Your Honor, there's no basis.

17         THE COURT: Overruled.

18         THE WITNESS: The Court documentation shows that

19  they did use the software.

20  BY MS. LOWE:

21  Q.  You're referencing the debtors' objection to Nat City's

22  motion?

23  A.  Yes, they stated they used it to July of '08.

24  Q.  And do you have any other independent information or

25  knowledge as to whether or not the debtor used the technical

1   support and software post-petition?

2   A.   There's a few things.  First, we'll talk about support.

3   In order to use support you have to log in to Oracle with an

4   ID and password.  Oracle did -

5           MR. POWER: Objection, Your Honor.  It's pretty

6   obvious there's no foundation for her knowledge.  This

7   witness is an employee of Nat City and not of Oracle.

8           THE COURT: Yeah, let's back up.  Why don't you lay

9   a foundation for that basis of that information.

10  BY MS. LOWE:

11  Q.   Please testify to the Court of your personal

12  relationship, of your relationship with Oracle.  Do you talk

13  to them -

14  A.   We work with Oracle.  We buy $60 to $80 million in paper

15  a year.  We are in constant contact with Oracle, Oracle's

16  Finance Division regarding any questions, any issues on a

17  daily basis.  Now, I'm personally not talking to them daily,

18  but someone within my group is.  So we are in constant

19  contact with this company, and we've had - I've had a

20  relationship with the gentleman that runs the company for

21  about 20-some years.

22          THE COURT: Wait a minute.  What would be your basis

23  for being able to testify, for instance, of your own

24  knowledge as to the debtors' activity in logging in and

25  getting support services?  What's the basis of knowing

1    whether that happened or not?

2          THE WITNESS: On several occasions, I emailed Oracle

3    and requested that they check their files, and they came back

4    to me and said, You know, we show that they have entered in.

5          THE COURT: Alright.

6          MR. LUNN: Your Honor, that's hearsay.

7          THE COURT: Yeah, it's hearsay, sustained.

8          THE WITNESS: The other thing is, this is HR

9    software, a good piece of this is HR software, and HR

10   software is not something that if you're an ongoing concern

11   it is not something you can just flip the switch and not use.

12         MR. LUNN: Objection, Your Honor, what's the basis

13   for her knowing when to flip the switch and the debtors not

14   using -

15         THE COURT: Well, I think that's been established

16   based on her relationship and understanding of the product,

17   so, overruled.

18   BY MS. LOWE:

19   Q.  You may continue.

20         THE COURT: And again, I mean, we're talking about

21   an issue that you've already admitted, so - which is that

22   your client used the software.

23         MR. LUNN: Correct, Your Honor, we used the

24   software, but she was testifying as when we switched off and

25   stopped using something, and all I'm saying is -

1          THE COURT: Well, her point was -

2          MR. LUNN:  - it's basically speculative, Your

3   Honor.

4          THE COURT: Yeah, I understand.  I think her point

5   was you had to continue to use it because you can't just

6   switch it off, but it's duplicative, so, I don't think we

7   need to worry about it.  So, overruled, I'll allow the

8   testimony.

9          MS. LOWE: Thank you, Your Honor.

10         THE COURT: I think we can move through this though,

11  again, since the debtors admitted it.

12         THE WITNESS: Just that in order to - that software

13  continue to add value to the business as an ongoing - to keep

14  that business ongoing.

15  BY MS. LOWE:

16  Q.  Okay, and as the Court said and as you have already

17  testified and as we also heard from debtors' counsel, the

18  debtors admit to using the software and technical support

19  post-petition.  Is there anything else or any other parody

20  that you would like to provide to the Court regarding a

21  relationship between National City and Oracle Corporation?

22  A.  Not at this time.

23  Q.  The payment plan agreement and the payment schedule are

24  attached to the motion; did you have an opportunity to review

25  those documents?

1   A.  I did.

2            MS. LOWE: Your Honor, you have already heard

3   testimony about the payment plan agreement and the payment

4   schedule.  I would like to offer this into evidence as

5   National City Exhibit A.

6            THE COURT: Can we call it 3?

7            MS. LOWE: We can call it 3.

8            THE COURT: Okay, any objection?

9            MS. LOWE: It's attached to the motion as Exhibit A.

10            THE COURT: Understood.

11            MS. LOWE: It will be entered into evidence as

12   Exhibit 3.

13            THE COURT: Okay, it's admitted without objection.

14            MS. LOWE: And that's collectively, of course, with

15   the payment schedule, just this one document, Your Honor,

16   Exhibit 3?

17            THE COURT: Yes.

18            MS. LOWE: Thank you.

19   BY MS. LOWE:

20   Q.  From your understanding, in order for the debtor to use

21   technical support, would the debtor have to contact Oracle or

22   would Oracle contact the debtor?

23   A.  The debtor can log in the internet to Oracle.

24   Q.  And that's the process that you were describing earlier

25   where the debtor would need a password and they would be able

1  to enter into on the computer their request for services?

2  A.  Yes, technical support.  There's a help kind of desk and

3  they can also download upgrades.

4        MS. LOWE: Your Honor, I have no further questions

5  of this witness.

6        THE COURT: Alright, thank you.  Cross-examination.

7        MR. LUNN: Very briefly.

8                    CROSS-EXAMINATION

9  BY MR. LUNN:

10 Q.  Good afternoon, Ms. Lubben.

11 A.  Good afternoon.

12 Q.  I will try to be brief.  Referring to the license

13 agreement, it is Oracle USA, Inc., that's the party to the

14 licensing agreement; correct?

15 A.  Correct.

16 Q.  Not National City?

17 A.  Correct.

18 Q.  With respect to the payment plan agreement and payment

19 schedule that's attached to that plan agreement, the party to

20 that agreement is Oracle Credit Corporation; is it not?

21 A.  Oracle Credit Corporation and then rights assigned to

22 National City.

23 Q.  And that is the agreement that has been assigned to

24 National City; correct?

25 A.  That's correct.

1  Q.  Those - the software license agreement, do you know when

2  it was executed?

3  A.  April '06.

4  Q.  Which is prior to when the debtors commenced these

5  Chapter 11 cases?

6  A.  Yes.

7  Q.  What about the plan payment agreement, was that also

8  executed pre-petition?

9  A.  That is correct.

10 Q.  You testified that National City received the assignment

11 rights from Oracle Credit Corp.  It receives the right to

12 collect payments; correct?

13 A.  And enforce - in a default situation we could enforce the

14 rights under the contract.

15 Q.  Doesn't National City have any obligations to the debtors

16 under either of the agreements?

17 A.  Do we have any - Say that again, please.

18 Q.  Are there any obligations owed to the debtors by National

19 City - I'm sorry, strike that.  Are there any obligations of

20 National City under either of the software license agreement

21 or the plan payment agreement owed to the debtors?

22      MS. LOWE: Your Honor, similar to debtors' counsel's

23 objection on the basis of a contract, he's not asking for her

24 interpretation here.  That definitely is a legal obligation,

25 that is clearly identified in any contracts.

1          THE COURT: I'll allow her to answer it to the

2     extent she understands, from her business understanding.  So,

3     maybe you can rephrase, Mr. Lunn.

4     BY MR. LUNN:

5     Q.   Does National City owe any obligation to the debtors

6     under the plan payment agreement?

7     A.   We paid for the equipment so they owe us, it's their

8     obligation on their part.

9     Q.   It is not that National City provides the software

10    licenses to the debtors?

11    A.   We're a third-party financier.

12    Q.   Nor does it provide the technical support to the extent

13    the debtors needed any.

14    A.   We do not.

15    Q.   The software licenses that are the subject of the

16    software license agreement, are these license agreements

17    perpetual licenses?

18    A.   It can be.

19    Q.   Under this -

20    A.   Under this particular one?

21    Q.   Yes.

22    A.   I'm not sure.

23          MR. LUNN: May I have a moment, Your Honor.

24          THE COURT: Uh-huh.

25          MR. LUNN: I apologize, Your Honor, one moment.

1          THE COURT: Uh-huh.

2          THE WITNESS: Sir, I saw in the Oracle license and

3    services agreement.  It says upon payment, they have a

4    perpetual license.

5    BY MR. LUNN:

6    Q.  Okay.  Thank you.  At the end -

7          THE COURT: Payment in full or -

8          THE WITNESS: It says upon payment for services.

9          THE COURT: Alright.

10          MR. LUNN: It's in paragraph (c) of the Oracle

11   license agreement.

12          THE WITNESS: Uh-huh.

13   BY MR. LUNN:

14   Q.  So, assuming that the debtors had an obligation to pay

15   the November payment, after that payment they would have had

16   the right to use the software license without any further

17   payments.

18   A.  It is my understanding they had the license but not the

19   right to use support.

20   Q.  And those rights, with respect to the use of the software

21   license, are no different than the rights to use the software

22   license agreement that existed as of the petition date?

23   A.  Those rights are only - they're only entitled to those

24   rights if they pay us the payments.

25          MR. LUNN: Your Honor, I have no further questions.

1          THE COURT: Alright.  Mr. Power, do you have any

2    questions?

3          MR. POWER: I do have a couple, Your Honor.

4          THE COURT: Alright, fine.

5          MR. POWER: I'll try to be very brief and not

6    duplicate.

7                    CROSS-EXAMINATION

8    BY MR. POWER:

9    Q.  Hi, Ms. Lubben, I'm Mark Power from Hahn & Hessen.  I

10   represent the creditors in the case.  I'd like to clarify a

11   couple of things.  Is it your understanding that Oracle sold

12   the software licenses to the debtor?

13   A.  No.

14   Q.  That's not your understanding.  Would you turn to the

15   National City Exhibit 3, the payment plan agreement; do you

16   see that?

17   A.  I don't have that in front of me.

18   Q.  Do you see the first paragraph there, it starts out, "The

19   payment plan agreement entered into" - do you see that?

20   A.  Uh-huh.

21   Q.  About four lines down, it starts out, "The system" -

22   A.  Uh-huh.

23   Q.  Would you just read that one sentence please.

24   A.  "The system is being acquired from Oracle Corporation and

25   by its member agent of Oracle Corporation or any other

1   parties providing any portion of this system or a supplier."

2   Q.  Okay, so, this agreement provides for the acquisition by

3   the debtor from Oracle of the items that are specified in the

4   purchase order, in the ordering document; is that correct?

5   A.  Correct.

6   Q.  And the debtor's acquiring these items.  So, it is a

7   sale, is it not?

8   A.  If they're acquiring the software, they're not acquiring

9   - the support is only for a period of time.

10  Q.  I'll get to the support, I'm just talking about the

11  software license.

12  A.  Okay.

13  Q.  The software license are being acquired by the debtor and

14  there's an instalment plan of four term instalments to pay

15  for that purchase; is that accurate?

16        MS. LOWE: Your Honor, before she answers, I'd like

17  to object.  He's asking two questions and a run-on sentence.

18  If he would allow the witness to answer his question about

19  acquiring a software and then ask the second question.

20        THE COURT: Alright.

21        MR. POWER: I'll rephrase, Your Honor.

22        THE COURT: Sustained, break it down.

23  BY MR. POWER:

24  Q.  The fundamental transaction provides for the acquisition

25  of the software licenses - Strike that.  We'll talk about the

1   support agreement separately.  The agreement provides for the

2   acquisition of software licenses by the debtor from Oracle

3   and a four-term payment plan to pay for that acquisition; is

4   that accurate?

5   A.  What document are you referring to?

6   Q.  I'm referring to the one you just read where -

7   A.  The payment plan does not refer to the payment - four

8   payments to be made.  The payment plan agreement only refers

9   to the customer attempting to acquire through a payment plan,

10  but it does not outline itself the payment schedule.  It

11  outlines what the terms of the agreement are.

12  Q.  Okay.  So, let's break it down.  I'll try to be a little

13  more succinct.  The transaction fundamentally is the debtor

14  is acquiring software licenses.  We're not going to talk

15  about the support plan for right now, and it agrees to pay a

16  purchase price for that acquisition, and if it pays the

17  purchase price, it then has the right to use those software

18  licenses perpetually under this agreement; do you agree with

19  me, is that correct?

20  A.  Under the license agreement, yes.

21  Q.  Yes, okay.  Now, if you turn to the second page of the

22  payment plan agreement, the PPA as it was referred to.

23  A.  Okay.

24  Q.  It talks about the payment schedule; do you see that?

25  A.  Okay.

1    Q.  On the flip side, at least on the one I have.  It talks

2    about the terms of payment; do you see that?

3    A.  Yes.

4    Q.  Right in the middle box there.

5    A.  Yes.

6    Q.  Yes, okay.  Now, is it correct to say that that breaks

7    out the purchase price that's being paid by the debtor to

8    acquire this product from Oracle?

9    A.  Yes.

10   Q.  Okay.  And the $726,000 is the amount the debtor agreed

11   to pay for the software; is that correct?

12   A.  Yes.

13   Q.  And the $319,440 is the amount the debtor agreed to

14   purchase two years of support from Oracle to support the

15   software product; is that accurate?

16   A.  Yes.

17   Q.  Okay, and then, so the total purchase price paid for

18   buying the software perpetual license and then two years of

19   support is $1,045,0440.

20   A.  Yes.

21   Q.  Okay, and then, just to be accurate make sure the record,

22   there is sales taxes that are part of this, and when you

23   acquire this stream of payments that were due from the debtor

24   there was also a sales component that was added to the bill.

25   A. They financed the -

1   Q.  And then how is that purchase price being paid according

2   to this document?

3   A.  With four payments.  This has 261,360?

4   Q.  Correct, thank you.  And then you added sales tax, and

5   that's the purchase price.

6   A.  Correct.

7   Q.  And is it accurate to say that the debtor paid three of

8   the purchase price, but the fourth intallment was not paid

9   because it came after the bankruptcy and that's when it

10  became due.

11          MS. LOWE: Your Honor, I object.  This is

12  repetitive.  The witness has already testified to that fact.

13          THE COURT: Overruled.  I'm going to let Mr. Power

14  develop the record.

15          THE WITNESS: The fourth payment was due after they

16  filed bankruptcy.

17  BY MR. POWER:

18  Q.  And they made all three payments except for that last one

19  was due after the bankruptcy, they didn't make it.

20  A.  That's correct, they did not make it, they continued to

21  use the software.

22  Q.  Now, your testimony before, and correct me if I don't say

23  this right, was in essence that that fourth payment was to -

24  they would have let the debtor use the software from November

25  until March; is that fair to say?  Is that a fair reflection

1  of your testimony?

2  A.  That was.

3  Q.  But we've already established just a moment ago that the

4  debtor purchased this software and could use it perpetually.

5  So, let me just ask you one question.  After that fourth

6  payment -

7        MS. LOWE: Your Honor, I'm going to object.  There

8  is - he's rephrasing what the witness has testified to.  She

9  did not testify that the debtor purchased this product at

10  all.  That was not her testimony.

11       THE COURT: Overruled.

12  BY MR. POWER:

13  Q.  Let me break it down.

14       MR. POWER: I'd like to rephrase, Your Honor.

15  BY MR. POWER:

16  Q.  Your prior testimony was that the last payment was to

17  permit the debtor to use the software from November until

18  March, I believe or April, we'll see.  Is that accurate?

19  A.  Software and support, it's a bundle.

20  Q.  Yes, but put aside the support, just the software usage,

21  part of that payment was to permit the debtor to use the

22  software until between the period of November until April;

23  was that your testimony?  I'm just trying to understand your

24  testimony.

25  A.  From my perspective here, that this is a bundled package,

1   that this payment schedule is not divided by how much is for

2   software and how much is for support.  It's a bundled

3   payment, and that payment is good for a period of time.  What

4   happens after the fact is not really anything to do with

5   National City.  We are receiving payments for a period of

6   time.

7   Q.  Correct, okay, but is it your understanding, you've been

8   in this business for a long time, is it your belief that

9   after that fourth payment is paid, the debtor can use the

10  software forever?

11  A.  You know what, it's not any concern of National City's

12  what happens after that.

13  Q.  So, when you testified just previously that that payment

14  was for the use of the software between the period of

15  November and April, are you changing your testimony and

16  saying that's not really accurate?

17  A.  Yes, I am because I look at this as a - I'm looking at

18  the payment as a bundled payment, and if you look at it as a

19  bundled payment, that payment consisting of both aspects of

20  this agreement, then it is through that period of time.

21  Q.  But doesn't the payment schedule in fact reflect that it

22  is the payment of a quarter of the purchase price for the

23  software plus a quarter of the support services for two

24  years?  That's what the agreement provides.

25  A.  The agreement provides for a system price that's broken

1  down as you stated.  The payment schedule is for that system

2  price.  It is not broken down anywhere by how much is support

3  and how much is software.

4  Q.  Well, just to be clear, we broke down the amount for

5  support and software in that schedule on the - called the

6  payment schedule.  It specifically lists how much is being

7  paid for the software and how much is being paid for the

8  support.

9  A.  It does list that as the - that system is the system

10 price.

11 Q.  And on the support, is your knowledge in the industry

12 that you basically can break that down by a monthly number

13 for two years?  You're talking 24 months; isn't that

14 accurate?

15 A.  That would be correct.

16 Q.  And so, is it fair to say that of the 319, that could be

17 broken out roughly - divided by 24, and that would be a

18 roughly monthly value for the support?

19 A.  We don't look at it that way.  Support is paid usually

20 annually in advance, if they are not financing it.

21 Q.  Was the debtors - Were you done with the question - I

22 mean your answer, excuse me - So, in this case, typically the

23 support would have been paid already because that would have

24 been in advance.

25 A.  Well, if they had paid for it in cash it would have been

1  paid already, but they did not, they chose to finance it.

2  Q.  So, I guess I'm trying to understand.  We agreed when you

3  were testifying that the debtor bought the software and

4  agreed to pay it in four installments.

5  A.  Uh-huh.

6  Q.  And then once  - your position is, once they pay all

7  those four, the debtor can do whatever it wants with the

8  software forever.  You don't care.  Is that -

9  A.  That's up to Oracle.  After we - we paid Oracle up front.

10  After we get paid from that customer, Oracle can step in and

11  often does, and works with the customer for more support,

12  different software, whatever it may be.

13  Q.  But, the software that was purchase is a perpetual life.

14  Do you understand what the word "perpetual" means?

15  A.  I do.

16  Q.  And what's your understanding?

17  A.  It continues on indefinitely.

18  Q.  And the debtor acquired those rights.  We just read that;

19  right?

20  A.  After payment.

21  Q.  After payment, yes, but -

22          THE COURT: Let's move along here, Mr. Power.

23          MR. POWER: Yes, Your Honor, I am about to move on.

24  BY MR. POWER:

25  Q.  Did Nat City obtain a security interest in the software

1  license after it acquired the interest from Oracle?

2  A.  Can you tell me a little bit more what you mean by a

3  "security"?

4  Q.  You understand the concept of a secured creditor having a

5  security interest that's filed ion public records?

6  A.  Yes, but usually a security interest is to me more of a -

7  something that is tangible and this is not tangible.

8  Q.  If I represent to you that you could have a security

9  interest in licenses.

10  A.  Then I would believe that we have one.

11  Q.  To your knowledge, did Nat City actually file a UCC-1?

12  A.  We do not.

13  Q.  So - and do you have any provision - Are you aware of any

14  provisions in the agreement which provides the granting of a

15  security interest in the assets that the debtor acquired from

16  Oracle?

17  A.  No.

18  Q.  So, do you understand the concept of an unsecured claim?

19  A.  Yes.

20  Q.  And your claim in this Court against this debtor is an

21  unsecured claim.

22  A.  It is not.

23  Q.  It is not an unsecured claim.  You don't -

24  A.  Well -

25          THE COURT: Isn't it the whole point?  This entire

1   process that it's an administrative claim and not an

2   unsecured claim?

3            MR. POWER: Well -

4            THE WITNESS: And that's not the case.

5            THE COURT: I'm talking with Mr. Power.

6            MR. POWER: I'm going to strike the question, Your

7   Honor.

8            THE COURT: Alright.

9   BY MR. POWER:

10  Q.  Oracle is not asserting, just to be clear, Oracle is not

11  asserting a secured claim with respect to these assets.

12           MR. CIANCIULLI: Objection, National City.

13  BY MR. POWER:

14  Q.  I mean, National City, thank you, is not asserting a

15  secured claim with respect to these assets and asserting a

16  lien on these assets; is that accurate?

17  A.  We have the right to terminate, to have you terminate

18  using that software.  If you are not paying, we have the

19  right to terminate it.  Does that give us a secured interest?

20           THE COURT: I think we're clear here, Mr. Power, I

21  think you can move on.

22           MR. POWER: Thank you, Your Honor.

23  BY MR. POWER:

24  Q.  Are you aware of the proof of claim that was filed in

25  this case?

1  A.  I am.

2         MR. POWER: Your Honor, can you give me one second?

3         THE COURT: Uh-huh.

4         MR. POWER: Your Honor, may I approach?

5         THE COURT: Yes.

6         MR. CIANCIULLI: Can we see what you're handing up?

7         MS. LOWE: Yes, I was -

8         MR. POWER: Your Honor, do you have the debtors'

9  objection, response to the objection?

10        THE COURT: Yes.

11        MR. POWER: Because I don't have an extra copy, I

12 apologize.

13        THE COURT: What am I looking for?

14        MR. POWER: The first exhibit.

15        THE COURT: The proof of claim?

16        MR. POWER: Yes, Your Honor.

17        THE COURT: Yeah, I have it.

18 BY MR. POWER:

19 Q.  Ms. Lubben, do you have that in front of you?

20 A.  Yes.

21 Q.  Is that the proof of claim that you testified that you're

22 familiar with being filed in this case?

23 A.  Yes.

24 Q.  And does the amount reflected there is the amount of the

25 November 2007 payment that you previously testified was owed?

1   A.   Yes.

2   Q.   And do you see what was described below as the basis for

3   that claim?

4   A.   Number 7 you're saying?

5              THE COURT: Number 2.

6              THE WITNESS: Section 2?  Oh, goods sold.

7   BY MR. POWER:

8   Q.   And that reflects what National City's position is as to

9   what gives rise to their claim was goods sold?

10  A.   Uh-huh.

11             THE COURT: Yes or no, ma'am.

12             THE WITNESS: Yes.  I look at this no different than

13  a car loan with a warranty.  If you purchased that car and

14  financed it, then you would - and filed bankruptcy the next

15  day, you can't claim that that - your payment when it comes

16  due, you can't claim that that's a post-petition claim

17  because you entered into that in a - you can't say that

18  that's a pre-petition claim.

19             MR. POWER: Your Honor, I'm going to move to strike

20  the answer as - there was no question pending actually.

21             THE COURT: Sustained.

22  BY MR. POWER:

23  Q.   In that proof of claim are you aware of anywhere where

24  National City asserts an administrative component of that

25  liability?

1    A.   No.

2          MR. POWER: Thank you, I have no further questions,

3    Your Honor.

4          THE COURT: Okay.  Redirect?

5          MR. POWER: Your Honor, well, proofs of claim are

6    obviously records of the Court but I did want to admit the

7    proof of claim into evidence.

8          THE COURT: Any objection?

9          MS. LOWE: No objection, Your Honor.

10         THE COURT: Alright, Committee Exhibit 1, admitted

11   without objection.

12         MS. LOWE: No redirect, Your Honor.

13         THE COURT: Alright, thank you, ma'am, you may step

14   down.  Anymore evidence?  Alright, I'll hear brief argument.

15   Let me ask preliminarily if we know  - I was looking at it

16   and couldn't find it, the governing law under the license

17   agreement, the PPA, the PS, if it's specified.

18         MS. LOWE: It's California, Your Honor.

19         THE COURT: California?

20         MS. LOWE: Yes.

21         THE COURT: Okay.

22         MS. LOWE: Your Honor, there is ample case law that

23   would support that an intellectual property license is an

24   executory contract, and we find in this particular case and

25   where we are in this - with the debtor, that there are

1    obligations of both parties post-petition.  The debtor

2    contacted Oracle.  Oracle provided technical support for

3    their continued use of a software.  The use of a software

4    clearly is defined by the - all three agreements that has

5    been testified to the Court today that the debtors' use of

6    the software is contingent upon payment, upon payment the

7    debtor has a perpetual use of a software.  The debtor clearly

8    has not made the final payment under the payment plan

9    agreement which it financed through Oracle and then was

10   assigned to National City.  I think that there is no

11   ambiguity with respect to National City's entitlement to the

12   payment as well as the connection between the license

13   agreement and the payment plan agreement along with the

14   payment schedule.  All three documents references the other.

15   In addition, Your Honor, the fact that this is a pre-petition

16   agreement, and I'm using "agreement" globally to include all

17   three documents, the fact that the debtor asked for technical

18   support.  The fact that this is HR software, the fact that

19   the debtor has affirmatively stated in their disclosure

20   statement and their Chapter 11 plan and in their objections

21   to our motion that they terminated several employees, that

22   they retained certain employees, that there was a class

23   action pending against them would and should suggest to the

24   Court that there was an essential need and use for the

25   software.  Their use, again, Your Honor, is contingent upon

1    payment.  If they do not pay, they are to cease use of the

2    software and would not be entitled to the technical support.

3    That point, again, Your Honor, is also clearly made in the

4    payment plan agreement as well as the license agreement.  It

5    is our position, Your Honor, that this is - that the debtor

6    did receive post-petition services.  The debtor was current

7    upon filing for bankruptcy, and actually was current through

8    October 2007 for the use of the software and technical

9    support.  Had the debtor done nothing else after that point,

10   we would not be here today, but because the debtor accessed

11   its - well certain contractual rights to use technical

12   support and continue use, it also was on breach by not paying

13   for the technical support and use.  So we're just saying,

14   National City was not even aware of the default until the

15   payment for November became due, so there would have been

16   nothing that National City or Oracle would have done prior to

17   November 2007 because that would have been the next payment

18   due.  It is clear, Your Honor, in this case that there was

19   services provided post-petition.  Debtors want to focus the

20   Court on whether or not there were additional rights.

21   There's nowhere that requires that additional rights be

22   provided.  If the Court would allow for this debtor to use

23   the software and to use the technical support without

24   payment, it would absolutely discourage this type of

25   arrangement where a creditor would provide technical support

1    and use of a software post-petition.  The contractual

2    language that the debtor agreed to is clear that if the

3    debtor does not pay the debtor shall cease use of the

4    software and is not entitled to use the technical support,

5    and that makes sense.  This is not a gift that Oracle has

6    given to the debtor.  The debtor had to pay for its use of

7    the software, the perpetual license, and the use of technical

8    support.  The debtor agreed to do that.  The debtor was

9    unable to pay for it up front and use their financial

10   division to finance their purchase of the software, of the

11   use of the software and of the use of the technical support.

12   We would ask the Court to enter and grant our motion for

13   administrative expenses and allow for National City to

14   receive the full amount of the last payment to the tune of

15   $283, and a couple of dollars over that.  We are not asking

16   through the use of July 2008, which quite honestly, Your

17   Honor, we believe we could, but we are not asking for that.

18   We're just asking for the remaining payment that is due under

19   the payment plan agreement for that final payment that was

20   due November 2007 for use through April 2008 at which time

21   the agreement terminated.  Thank you, Your Honor.

22          THE COURT: Okay.  You're welcome.  Mr. Lunn?

23          MR. LUNN: Thank you, Your Honor.  Let's take a step

24   back and let's look at the realities of the transaction.  We

25   have two pre-petition agreements.  One, a software license

1    agreement whereby the debtors get the rights to use the

2    software, technical support if needed.  Two, you have this

3    plan payment agreement or plan schedule payment or whatever

4    the other agreement is called that provides for the payment,

5    the financing document.  Both agreements were executed pre-

6    petition, Your Honor.  The software license agreement, Oracle

7    USA, not National City.  Plan payment agreement, Oracle

8    Credit, again, not National City, Your Honor.  If Your Honor

9    sees this as the debtors do, the two separate agreements, the

10   right to the payment or the payments arises under the one

11   agreement.  National City hasn't provided anything to the

12   debtors, Your Honor, post-petition.  Arguably that plan

13   payment agreement is not an executory contract either, Your

14   Honor, because all that was there is a right to a payment,

15   which is that last payment, Your Honor.  Anther important

16   fact, just taking the reality of the transaction is, the

17   debtors have the software and the right to use the software

18   upon purchasing that software and they did it pre-petition.

19   Those rights extended post-petition and continued to extend

20   post-petition.  The fact that the debtors would make a

21   further payment in November of 2007 wouldn't have altered the

22   debtors' right to use that software.  So, as Your Honor is

23   well aware, there's two requirements for an administrative

24   expense claim.  One, there needs to be a post-petition

25   transaction, and two, there needs to be a benefit to the

1    estate, a direct and substantial benefit to the estate.  Your

2    Honor, there is no post-petition transaction here.  You have

3    two pre-petition agreements.  One, again, a software license

4    agreement with Oracle USA.  Second, the plan payment

5    agreement with Oracle Credit, obviously assigned to National

6    City.

7            THE COURT: So what would be the remedy - Failure to

8    make the payment on November 1 triggers a cross-default with

9    - well, not a cross-default, but the right to terminate the

10   license agreement.  Oracle could have sought stay relief and

11   if given it, basically a motion to terminate -

12           MR. LUNN: That's correct, Your Honor.

13           THE COURT:  - the license agreement or an

14   injunction to terminate use of the license agreement.

15           MR. LUNN: Correct, Your Honor.

16           THE COURT: But they didn't do that.

17           MR. LUNN: That's correct.

18           THE COURT: Of if this was a security interest, they

19   could have sought - I'm sorry, National City could have

20   sought stay relief again to assert the fact that this was its

21   collateral and they could have foreclosed upon the

22   collateral; right?

23           MR. LUNN: That's correct.

24           THE COURT: Is it - Well, here's the softball.  So,

25   say, yes.

1              MR. LUNN: Yes.

2              THE COURT: Well, let me ask first.  Let me set you

3    up there.  Ms. Lubben started to get into this a little bit

4    and you objected, but - Mr. Power objected.  I'm trying to

5    think of it in any - correct me if I'm wrong, this is your

6    position which is, there's a good and then there's the

7    financing.  The good that you're being sold or you were sold

8    was not a car, not a steel plant, but a license and interim

9    for property license, a right to use something, and as well

10   as a right, in effect, a warranty to receive services in

11   support of the thing you bought.  The company you bought that

12   from has been paid through the financing.

13             MR. LUNN: Yes, Your Honor.

14             THE COURT: Financing is being provided by a third

15   party.  You've defaulted under the financing by not paying it

16   post-petition, but it's separate and apart from the good, and

17   for instance, if you don't pay - You buy a car; okay, with a

18   warranty.  You stop making the payments to the financing

19   company.  You still have the car.  You still have the rights

20   under the warranty until the finance company wakes up and

21   forecloses and takes your car back; right?

22             MR. LUNN: That's correct, Your Honor.

23             THE COURT: So, what's really going on there isn't

24   an issue with the warranty or not, and for example GM -

25   assuming it is liquid, GM couldn't say, I'm not going to

1    honor the warranty because you haven't paid GMAC because GM's

2    been paid by GMAC.

3              MR. LUNN: Yes, Your Honor.

4              THE COURT: Alright.  That's your position.

5              MR. LUNN: That is.

6              THE COURT: Okay and Valley Media would support

7    that.

8              MR. LUNN: Valley Media would support that, Your

9    Honor.

10             THE COURT: Alright.  Mr. Power, anything?

11             MR. POWER: Your Honor, I don't - I mean, I have a

12   couple of things, but I won't be long, I promise.  We support

13   obviously the debtors' position.  We filed a pleading in

14   support.  The way we looked at this, is it's really a

15   purchase agreement and it's a four-installment payment if you

16   look at it, and the witness pretty clearly and the contract

17   speaks for itself.  They acquired the interest in April of

18   '06.  They agreed that they would pay for it - and Oracle got

19   paid in full but the debtor agreed once the financing would

20   start they would pay the financing company in four

21   installment.  They own all the rights.  The way that the

22   finance company could have protected itself is take a lien in

23   this asset the way financing companies on virtually any goods

24   in -

25             THE COURT: Well, they could have a put back.  They

1    could say, Alright, if the buyer defaults, Oracle, I can put

2    this contract back to you and you have to give me a refund

3    for any unpaid amount.

4         MR. POWER: They could have done that.  They could

5    have done many things, but what they didn't do is perfect

6    their interest against the debtor to enforce the rights.

7         THE COURT: Well, there's no security agreement.

8         MR. POWER: There's no security agreement, and

9    there's no security interest, and they could have done that.

10   A lot of, as Your Honor knows, I'm sure in this Court and I'm

11   aware of it, it happens all the time.  In fact, in this case,

12   there are vendors who have secured interest in copy

13   equipment, cars, all kinds of things, and they way they

14   enforced their rights, those financing parties as they

15   enforced them as a secured party.  Here you have a sale.

16   It's not a lease, it's a sale.  The debtor owns it.  We now

17   hold title.  They have - two things.  They can come in and

18   assert a claim on pre-petition, you didn't pay me the

19   purchase price.  Or they can assert a breach of contract

20   saying that, you know, you basically breached my contract,

21   but what they don't have a right to do is come in and force

22   the debtor to give up its property because they have no more

23   interest in that property.  That property was sold, and the

24   debtor owns it.  That's the Committee's position.  There are

25   a couple of other things, Your Honor, I just quickly would

1    point out.  The payment plan agreement says specifically in

2    paragraph (5), This contract shall constitute the entire

3    agreement between the customer and OCC, which is actually Nat

4    City now -

5         THE COURT: License agreement says that too, has an

6    entire agreement provision.

7         MR. POWER: Right, so purely and entirely, this is a

8    separate and independent agreement.  If Your Honor looks at

9    paragraph (2), this is what we call a "hell or high water

10   agreement".  The debtor cannot stop payment to Nat City based

11   on breaches by Oracle.  It is obligated to pay it hell or

12   high water and so this agreement is independent and separate

13   of the licensing agreement and that arrangement, and then

14   that's the way they're set up and that's the way they

15   traditionally are set up.  Lastly, Your Honor, the proof of

16   claim, quite frankly, Nat City filed a claim asserting it is

17   entitled to a pre-petition goods sold claim, which is really

18   what it has here, and there's no reference whatsoever to

19   administrative priority or anything else.

20        THE COURT: Alright, well, I'm not moved by that.  I

21   mean, there was a bar date for unsecured claims.  There has

22   not been an admin bar date or even if there has, you really

23   aren't actually technically supposed to file a claim for

24   admin.  You have to file an application and they did that,

25   so, I view it like a lessor who also asserts a security

1    interest as a backup.

2         MR. POWER: Your Honor, I guess that's fine,

3    although I know lessor counsel would put in a reservation as

4    to admin portions of that claim.  What I think is really

5    telling here is the proof of claim which is a statement

6    against interest test, goods sold.  They've acknowledged

7    exactly what this is.  This is not even a license to continue

8    to use.  It is sold to the debtor day one with a four-payment

9    plan, and they acknowledged that in the proof of claim, and I

10   think that is the admission against interest that is

11   compelling here.

12        THE COURT: Okay, understood.

13        MR. POWER: Thank you, Your Honor.

14        THE COURT: Any reply?

15        MS. LOWE: Yes, thank you, Your Honor.   I

16   appreciate the opportunity to reply, Your Honor.  Your Honor,

17   I believe National City's position is pretty clear on its

18   motion for an administrative expense despite the counsel for

19   Committee trying to focus the Court on the proof of claim

20   that was filed.  With respect to Value Media, Your Honor, I

21   wanted to address that point.  That was - came out while

22   debtors' counsel was here.  In that particular case and

23   particularly looking at the opinion that this Court entered

24   in a prior adversary proceeding, where it was dealing with

25   professionals fees and expenses that a particular creditor

 1   was trying to recover, certain expenses that it had paid for

 2   and having incurred from foreclosure proceedings where the

 3   Court found - this Court found in favor of the creditor in

 4   that particular scenario.  But in your opinion, and this is -

 5            THE COURT: Which case is that?

 6            MR. LUNN: Northwest Trustee, Your Honor - this

 7   case.

 8            MS. LOWE: Thank you - Oh, it's this case, American

 9   -

10            THE COURT: Oh, the fees.  Jeff Wisler's client.

11            MR. LUNN: The foreclosure.

12            THE COURT: Oh, okay.

13            MS. LOWE: Right.  In that particular opinion, Your

14   Honor, you addressed argument regarding Value Media and you

15   pointed out, which I'd like to point out here, that in Value

16   Media the creditor in that case had not provided any post-

17   petition services.  And you said in there, The Court reasoned

18   that the vendor completed its performance, delivery of goods,

19   pre-petition.  That was the case in Value Media.  In this

20   case, it is clear that Oracle did provide post-petition

21   services.  So, there's a distinction there and it's a

22   distinction that needs to be noted.  Secondly, Your Honor,

23   with respect to whether or not there was a hell or high water

24   clause in the payment plan agreement and there is, and

25   whether or not there is an entirety agreement in the payment

1    plan agreement, which there is, and there's also one as the

2    Court noted in the license agreement, there could be no

3    denial that both agreements, the payment plan agreement and

4    the license agreement both reference each other, and they've

5    reference each other with respect to the rights under both

6    agreements, and it is absolutely the intent of the parties if

7    these documents are read, that they were to be read in

8    conjunction with each other.  It is our representation that

9    the debtor knew this at the time that it executed these

10   documents.  It knew that its use of the software and its use

11   of the technical support was contingent upon payment, it is

12   clearly set forth in all three agreements, and it is clear

13   that if the debtor did not pay, Your Honor, that they could

14   not use the software and that they could not use the

15   technical support.  So this perpetual right is contingent

16   upon payment.  This is, again, not a gift, it's not a grant,

17   and I'm not going to reargue the arguments that I made

18   earlier, but what I would like the Court to understand in

19   this particular case, Your Honor, is that the technical

20   support would not have been provided had Oracle been aware

21   that they were not received, that the payment would not be

22   made in accordance with the payment plan agreement.  That was

23   a post-petition event.  We would not have known that ahead of

24   time because the debtor was current up until November 2007

25   which in effect was post-petition.  So, with respect to

1  whether or not there was a post-petition claim, it is clear

2  from the facts of this case that there is.  Thank you, Your

3  Honor.

4          THE COURT: You're welcome.  It's an interesting -

5  well, it's an interesting argument and I appreciate counsel's

6  presentations.  I am going to deny the motion, and I think

7  I'll start with Valley Media.  I do draw the distinction here

8  that I think is appropriate to follow Valley Media

9  notwithstanding my distinguishing it at least in the facts in

10  a previous case, in that there's a distinction here because

11  of the fact that National City is in effect the financing

12  arm, the unsecured financing arm, and I went through this

13  with Mr. Lunn, and I stand by my understanding of this

14  transaction.  Oracle sold the license.  There was a, in

15  effect, cross-default provision, but Oracle sold the license,

16  was paid for the license by its financing arm.  The financing

17  arm entered into a contract with the debtor under which the

18  debtor was obligated to make four payments.  If the debtor

19  defaulted on making those payments, Oracle had a right to

20  terminate the licensing agreement, but National City itself

21  did not have a right to seek that termination and National

22  City itself did not have any security interests in the

23  licensing agreement nor did National City have, as we

24  discussed, the put option back to Oracle to get paid.  The

25  debtor used the license post-petition.  The debtor used

1    support services post-petition, but those were in connection

2    with Oracle, and not with National City, and I think Judge

3    Walsh's opinion, at least in this instance, is directly on

4    point under <u>Valley Media</u> that there's a distinction here

5    between the use of the goods and the right to payment for the

6    use of the goods, and in this instance, I find that

7    distinction is controlling.  National City is not entitled to

8    an administrative expense claim because there was no post-

9    petition transaction between National City and the debtors.

10   So I'm denying the motion for the reasons set forth on the

11   record.

12          MS. LOWE: Thank you, Your Honor.

13          THE COURT: Thank you.  Mr. Lunn, can you submit an

14   order?

15          MR. LUNN: Yes, Your Honor.

16          THE COURT: Alright, thank you.  Thank you for your

17   patience.  Anything further?

18          (The remainder of this page is intentionally left

19   blank.)

20

21

22

23

24

25

1          MR. LUNN: Not today, Your Honor.

2          THE COURT: Alright, thank you.  We're adjourned.

3          (Whereupon at 3:58 p.m., the hearing in this matter

4     was concluded for this date.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I, Elaine M. Ryan, approved transcriber for the

19     United States Courts, certify that the foregoing is a correct

20     transcript from the electronic sound recording of the

21     proceedings in the above-entitled matter.

22

23     /s/ Elaine M. Ryan                        March 6, 2009
       Elaine M. Ryan
       2801 Faulkland Road
       Wilmington, DE 19808
       (302) 683-0221