# EXHIBIT "A"

acreage

# NOTE

May 18, 1998              Clinton                    South Carolina
[Date]                     [City]                     [State]

20.91 acres, more or less, located on Meansville Rd., Union, SC

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay US **$32,500.00** (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Holmes Enterprises, Inc., P. O. Box 820, 102 Academy St., Clinton, SC 29325**. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **12.0 %**. Interest will be charged beginning on **June 15, 1998**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Scheduled Payments
I will pay principal and interest by making payments when scheduled:
[x] I will make **180** payments of **$390.05** each on the **15th** day of each month beginning on **June 15, 1998**.
[ ] I will make payments as follows:

[ ] In addition to the payments described above, I will pay a "balloon payment" of **$ 0.00** on **n/a**.
The Note Holder will deliver or mail to me notice prior to maturity that the balloon payment is due. This notice will state the balloon payment amount and the date that it is due.

#### (B) Maturity Date and Place of Payments
I will make these payments as scheduled until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My scheduled payments will be applied to interest before principal. If, on **May 15, 2013** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my scheduled payments at **P. O. Box 820, Clinton, SC 29325**, or at a different place if required by the Note Holder.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits,

choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any scheduled payment by the end of 5 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be $10.00 of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each scheduled payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of the principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the property address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(B) on Page 1 of this Note or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE.

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of the guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised

by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed with which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11. ~~BALLOON PAYMENT DISCLOSURE~~ *KAA*

[Complete the balloon payment notice below if this Note provides for a balloon payment at Section 3(A) on Page 1 of this Note.]

THIS LOAN IS PAYMENT IN FULL ................................................................................................
................................................................................ I MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE, WHICH MAY BE A LARGE PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. I WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT I MAY OWN, OR I WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER I HAVE THIS LOAN WITH, WILLING TO LEND ME THE MONEY. IF I REFINANCE THIS LOAN AT MATURITY, I MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF I OBTAIN REFINANCING FROM THE SAME LENDER.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

*It is initialed because it was accidentally scratched thru by borrower. There is no balloon pmt as shown in Section 3(A)*

..................*Khalif A. Ali*........................(Seal)
Khalif Ali                                             -Borrower

..................*Irene Ali*............................(Seal)
Irene Ali                                              -Borrower

[Sign Original Only]

## NOTE ENDORSEMENT

Pay to the order of _____.

HOLMES ENTERPRISES, INC.

By _____
Name:      Phillip R. Holmes, Sr.
Title:      President

**MORTGAGE OF REAL ESTATE**
When recorded, please return to:
Holmes Enterprises, Inc.
P. O. Box 820, 102 Academy St.
Clinton, SC 29325

FILE FOR RECORD

2002 JAN -4 P 12 30

JUNE H. MILLER
CLERK OF COURT
UNION, SC

TO ALL WHOM THESE PRESENTS MAY CONCERN:

WHEREAS,

**Khalif Ali and Irene Ali**
**505 Meansville Rd.**
**Union, SC 29379**

(hereinafter referred to as Mortgagor) is well and truly indebted unto

**HOLMES ENTERPRISES, INC.**
**P. O. Box 820, 102 Academy St.**
**Clinton, SC 29325**

(hereinafter referred to as Mortgagee) as evidenced by the Mortgagor's promissory note dated May 18, 1998, the terms of which are incorporated herein by reference, in the sum of

**\*\*Thirty-two Thousand, Five Hundred Dollars ($32,500.00)\*\*\***

due and payable with interest thereon from date at the rate as set forth in Note per annum, and to be paid as set forth in said note.

**WHEREAS**, the Mortgagor may hereafter become indebted to the said Mortgagee for such further sums as may be advanced to or for the Mortgagor's account for taxes, insurance premiums, public assessments, repairs, or for any other purposes:

**NOW, KNOW ALL MEN**, that the Mortgagor, in consideration of the aforesaid debt, and in order to secure the payment thereof, and of any other and further sums of which the Mortgagor may be indebted to the Mortgagee at any time for advances made to or for his account by the Mortgagee, and also in consideration of the further sum of Three Dollars ($3.00) to the Mortgagor in hand well and truly paid by the Mortgagee at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and released, and by these presents does grant, bargain, sell and release unto the Mortgagee, its successors and assigns:

All those certain pieces, parcels or tract of land, lying, being and situate on Meansville Road, in the County of Union, State of South Carolina, and being more fully shown and delineated as 20.91 acres, more or less, on a plat entitled "Survey for Holmes Enterprises, Inc." prepared by Foard H. Tarbert, Jr., RLS #11072, dated September 17, 1997, reference unto which plat will show all courses, distances and boundaries, said plat being incorporated herein and made a part hereof.

This conveyance is subject to those portions of the property which extends into Meansville Road (State Road S-44-19), over which the public has a right-of-way.

This being the same property conveyed to Khalif Ali and Irene Ali by Deed of Holmes Enterprises, Inc., said Deed being recorded in the Office of the Clerk of Court for Union County in Deed Book _____ at Page _____.

TOGETHER with all and singular rights, members, hereditaments, and appurtenances to the same belonging in any way incident or appertaining and all of the rents, issues, and profits which may arise or be had therefrom, and including all heating, plumbing, and lighting fixtures now or hereafter attached, connected, or fitted thereto in any manner; it being the intention of the parties hereto that all fixtures and equipment, other an the usual household furniture, be considered a part of the real estate.

**TO HAVE AND TO HOLD**, all and singular the said premises unto the Mortgagee, its heirs, successors and assigns, forever.

The Mortgagor covenants that it is lawfully seized of the premises herein above described in fee simple absolute, that it has good right and is lawfully authorized to sell, convey, or encumber the same, and that the premises are free and clear of all liens and encumbrances except as provided herein. The Mortgagor further covenants to warrant and forever defend all and singular the said premises unto the Mortgagee forever, from and against the Mortgagor and all persons whomsoever lawfully claiming the same or any part thereof.

The Mortgagor further covenants and agrees as follows:

(1) That this mortgage shall secure the Mortgagee for such further sums as may be advanced hereafter at the option of the Mortgagee, for the payment of taxes, insurance premiums, public assessments, repairs or other purposes pursuant to the covenants herein. This mortgage shall also secure the Mortgagee for any further loans, advances, readvances, or credits that may be made hereafter to the Mortgagor by the Mortgagee so long as the total indebtedness thus secured does not exceed the original amount shown on the face hereof. All sums also advanced shall bear interest at the same rate as the mortgage debt and shall be payable on demand of the Mortgagee unless otherwise provided in writing.

(2) That it will keep the improvements now existing or hereafter erected on the mortgaged property insured as may be required from time to time by the Mortgagee against loss by fire and any other hazards specified by Mortgagee, in an amount not less than the mortgage debt, or in such amounts as may be required by the Mortgagee, and in companies acceptable to it, and that all such policies and renewals thereof shall be held by the Mortgagee, and have attached thereto loss payable clauses in favor of, and in form acceptable to the Mortgagee, and that it will pay all premiums therefor when due; and that it does hereby assign to the Mortgagee the proceeds of any policy insuring the mortgaged premises and does hereby authorize each insurance company concerned to make payment for a loss directly to the Mortgagee, to the extent of the balance owing on the Mortgage debt, whether due or not.

(3) That is will keep all improvements now existing or hereafter erected in good repair, and, in the case of a construction loan, that it will continue construction until completion without interruption, and should it fail to do so, the Mortgagee may, at its option, enter upon said premises, make whatever repairs are necessary, including the completion of any construction work underway, and charge the expenses for such repairs or the completion of such construction to the mortgage debt.

(4) That it will pay, when due, all taxes, public assessments, and other governmental or municipal charges, fines or other impositions against the mortgaged premises. That it will comply with all governmental and municipal laws and regulations affecting the mortgaged premises.

(5) That it hereby assigns all rents, issues, and profits of the mortgaged premises from and after any default hereunder, and agrees that, should legal proceeding be instituted pursuant to this instrument, any judge having jurisdiction may, at Chambers or otherwise appoint a receiver of the mortgaged premises, with full authority to take possession of the mortgaged premises and collect the rents, issues and profits, including a reasonable rental to be fixed by the Court in the event said premises are occupied

by the mortgagor and after deducting all charges and expenses attending such proceeding and the execution of its trust as receiver, shall apply the residue of the rents, issues and profits toward the payment of the debt secured hereby.

(6) That if there is a default in any of the terms, conditions, or covenants of this mortgage, or of the note secured hereby, then, at the option of the Mortgagee, all sums then owing by the Mortgagor to the Mortgagee shall become immediately due and payable, and this mortgage may be foreclosed. Should any legal proceedings be instituted for the foreclosure of this mortgage, or should the Mortgagee become a party of any suit involving this Mortgage or the title to the premises described herein, or should the debt secured hereby or any part thereof be placed in the hands of any attorney at law for collection by suit or otherwise, all costs and expenses incurred by the Mortgagee, and a reasonable attorney's fee, shall thereupon become due and payable immediately or on demand, at the option of the Mortgagee, as a part of the debt secured hereby, and may be recovered and collected hereunder.

(7) That the Mortgagor shall hold and enjoy the premises above conveyed until there is a default under this mortgage or in the note secured hereby. It is the true meaning of this instrument that if the Mortgagor shall fully perform all the terms, conditions, and covenants of the mortgage, and of the note secured hereby, that then this mortgage shall be utterly null and void; otherwise to remain in full force and virtue.

(8) That the covenants herein contained shall bind, and the benefits and advantages shall inure to, the respective heirs, executors, administrators, successors, and assigns, of the parties hereto. Whenever used, the singular shall include the plural, the plural the singular, and the use of any gender shall be applicable to all genders.

**WITNESS** the Mortgagor's hand and seal this _____20_____ day of October, 2000 but effective May 18, 1998.

_____  
Witness

_____  
Witness

_____  
Khalif Ali

_____  
Irene Ali

===ACKNOWLEDGMENT===

I, the undersigned, a notary public, do hereby certify that the above named witness did personally appeared before me this _20_ day of October, 2000, and acknowledge the due execution by Khalif Ali and Irene Ali of the foregoing instrument.

_____  
Notary Public for South Carolina

My Commission Expires: 12-07-2009

Acreage

PREPARED BY:    Lisa W. Holmes

ASSIGNMENT OF MORTGAGE

Mortgage Reference:

Dated:      Oct 20, 2000
Recorded: _____ in the Clerk of Court of Union County
Book No.: _____
Page No.: _____
Original Mortgagor: Khalif Ali & Irene Ali
Original Mortgagee: Holmes Enterprises, Inc.
County: Laurens /State: South Carolina


Holmes Enterprises, Inc., a South Carolina corporation, having a usual place of business at 22361 Highway 76 East, Laurens, South Carolina 29360, holder of the above-referenced Mortgage, hereby assigns said Mortgage to
_____, having a usual place of business at
_____.

IN WITNESS WHEREOF, Holmes Enterprises, Inc. has caused this instrument to be executed by its authorized officer, and its seal affixed on _____.

WITNESSES:                                    Holmes Enterprises, Inc.

_/s/ Sharon Knox_                        By _/s/_____ (SEAL)
First Witness : Sharon Knox                 Name: Phillip R. Holmes
_/s/ Patricia Trammell_                     Title:    President
2nd Witness or Notary Public
Patricia Trammell

STATE OF South Carolina    )
                           )                    PROBATE
COUNTY OF Laurens          )

   PERSONALLY appeared before me the undersigned witness who, on oath, says that (s)he saw the within named Holmes Enterprises, Inc., by Phillip R. Holmes, its President, sign, seal and as the act and deed of the corporation, deliver the within instrument, and that (s)he with the other subscribing witness, witnessed the execution thereof.

SWORN to before me on _____.

_/s/ Patricia Trammell_ (SEAL)              _/s/ Sharon Knox_
Patricia Trammell
Notary Public for Laurens County
State of South Carolina                     First Witness: Sharon Knox

My Comm. Expires: December 07, 2009


RECORD & RETURN TO:
_____
_____
_____

**TITLE TO REAL ESTATE**
When recorded, please return to:
Holmes Enterprises, Inc.
P. O. Box 820
Clinton, SC 29325

FILE FOR RECORD
2002 JAN -4 P 12: 29

JUNE H. MILLER
CLERK OF COURT
UNION SC

## PLEASE DO NOT PUBLISH IN NEWSPAPER

### STATE OF SOUTH CAROLINA )
)
### COUNTY OF UNION )

KNOW ALL MEN BY THESE PRESENTS, that

### Holmes Enterprises, Inc.

in consideration of Ten Dollars ($10.00) and other valuable consideration, the receipt of which is hereby acknowledged, have granted, bargained, sold and released unto

### Khalif Ali and Irene Ali
### 505 Meansville Road
### Union, SC 29379

as joint tenants, with the right of survivorship, and not as tenants in common, their heirs and assigns, forever, the following described property, to wit:

All those certain pieces, parcels or tract of land, lying, being and situate on Meansville Road, in the County of Union, State of South Carolina, and being more fully shown and delineated as 20.91 acres, more or less, on a plat entitled "Survey for Holmes Enterprises, Inc." prepared by Foard H. Tarbert, Jr., RLS #11072, dated September 17, 1997, reference unto which plat will show all courses, distances and boundaries, said plat being incorporated herein and made a part hereof.

This conveyance is subject to those portions of the property which extends into Meansville Road (State Road S-44-19), over which the public has a right-of-way.

This being a portion of the property conveyed to Holmes Enterprises, Inc., by Deeds recorded in the Office of the Clerk of Court for Union County in Deed Book 213 at Page 622 and Deed Book 213 at Page 623.

**The true consideration herein being $35,000.00**

Together with all and singular the rights, members, hereditaments and appurtenances to said premises belonging or in any wise incident or appertaining; to have and to hold all and singular the premises before mentioned unto the grantees, the grantees' heirs and assigns, forever. And, the grantor does hereby bind the grantor and the grantor's heirs, executors, and administrators to warrant and forever defend all and singular said premises unto the grantee and the grantees' heirs against every person whomsoever lawfully claiming or to claim the same or any part thereof.

**WITNESS** the grantor's hand and seal, by and through its duly appointed officer, this 20 day of October, 2000. but effective May 18, 1998.
SIGNED, sealed and delivered
in the presence of:

**HOLMES ENTERPRISES, INC.**

_____
Witness #1

BY: _____ (SEAL)
Phillip R. Holmes, Sr., President

_____
Witness #2

----------ACKNOWLEDGMENT----------

**STATE OF SOUTH CAROLINA**
**COUNTY OF UNION**

I, the undersigned, a notary public, do hereby certify that the within named corporate grantor, by and through its duly appointed officer, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and official seal this 20 day of October, 2000.

_____
Notary Public for South Carolina
My Commission Expires: 12-09-2009

STATE OF SOUTH CAROLINA       )
                              )          AFFIDAVIT
COUNTY OF UNION               )

PERSONALLY appeared before me the undersigned, who being duly sworn, deposes and says:

1. I have read the information on the back of this affidavit and I understand such information.

2. Property located at **20.91 +/- acres, Meansville Road**, bearing **Union** County Tax Map Number _____, was transferred by **Holmes Enterprises, Inc.** to **Khalif Ali & Irene Ali** on **October _____, 2000**.

3. The deed is exempt from the deed recording fee because (See Information section of affidavit): **Not exempt**

4. **The true consideration herein being $35,000.000.**

As required by Code §12-24-70, I state that I am a responsible person who was connected with the transaction as: **Authorized signatory of Grantor**

I further understand that a person required to furnish this affidavit who wilfully furnishes a false or fraudulent affidavit is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than one year, or both.

_____
Phillip R. Holmes, President
Holmes Enterprises, Inc.

SWORN to before me this 20 day of October, 2000.

_Patricia Trammell_ (SEAL)
Notary Public for South Carolina
My Commission Expires: 12-07-2009

(1) transferring realty to the federal government;

(2) transferring realty to the State, its agencies and department, and its political subdivision, including school districts;

(3) otherwise exempted under the laws and Constitution of the United State or the laws or Constitution of South Carolina;

(4) transferring realty whereby no gain or loss is recognized by reason of §1041 of the Internal Revenue Code as defined in §12-6-40(A) of the SC Code of Laws. This exemption will exempt transfers to a spouse and most transfers that are the result of divorce;

(5) transferring realty from an agent to the agent's principal in which the realty was purchased with the funds of the principal;

(6) transferring an individual grave space at a cemetery owned by a cemetery company licensed under Chapter 55 of Title 39 of the SC Code of Laws;

(7) transferring realty to a member of the family or to a family trust or to a family partnership. "Family" means spouse, parents, sisters, brothers, grandparents, grandchildren and lineal descendants. A "family trust" is a trust whose beneficiaries are all members of the family of the transferor. A "family partnership" is a partnership whose partners are all members of the family of the transferor.

(8) transferring realty to a legal heir or devisee;

(9) that constitute a contract for the sale of timber to be cut;

(10) transferring realty from an individual to a partnership, limited liability company, or corporation upon the formation of the entity if the individual is transferring the realty in order to become a partner, member or shareholder in the entity. All other transfers of realty to or from the partnership, limited liability company, or corporation, not otherwise exempt, are subject to the fee.

(11) transferring realty in a statutory merger or consolidation from a constituent corporation to the continuing or new corporation;

(12) transferring realty between a parent corporation and its subsidiary corporation, provided that no consideration of any kind is paid or to be paid for the transfer;

(13) transferring realty to a nonprofit corporation organized and operated exclusively for either a religious, scientific, charitable, or educational purpose, and provided no consideration of any kind is paid or to be paid for the transfer;

(14) that constitute a corrective deed or a quitclaim deed used to confirm title already vested in the grantee, provided no consideration of any kind is paid or to be paid for the corrective or quitclaim deed; or,

(15) transferring realty from an individual to a partnership or limited liability company of which the individual is a partner or a member, provided that the transfer is subject to the fee to the extent that the transfer is a transfer of an undivided interest in the realty to partners or members other than the transferor. The determination as to the portion of the realty's value upon which the fee must be paid must be based on the percentage interest in the partnership or limited liability company of the partners or members other than the transferor.