IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x
In re:                                                          :    Chapter 11
                                                                :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                          :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                 :
                                                                :    Jointly Administered
            Debtors.                                            :
----------------------------------------------------------------- x

**EIGHTEENTH MONTHLY APPLICATION OF ALLEN & OVERY, LLP AS SPECIAL
REGULATORY COUNSEL FOR THE DEBTORS FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED FOR THE
INTERIM PERIOD FEBRUARY 1, 2009 THROUGH FEBRUARY 28, 2009**

| | |
|---|---|
| Name of Applicant: | Allen & Overy, LLP |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | Effective as of September 7, 2007 |
| Period for which compensation and reimbursement is sought: | February 1, 2009 through February 28, 2009 |
| Amount of Interim Compensation sought as actual, reasonable and necessary: | $33,881.00 |
| Amount of Interim Expense Reimbursement sought as actual, reasonable and necessary: | $69,793.37 |

This is an:  __X__ interim  ____ final application

**This application includes 2 hours ($770.00) incurred in connection with the preparation of Fee
Applications.**

Prior applications:

| Date Filed / Docket No. | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| Nov. 30, 2007 / #2241 | Sept. 7 – Sept. 30, 2007 | $172,200.50 | $188.27 | $172,200.50 | $188.27 |
| Nov. 30, 2007 / #2242 | Oct. 1 – Oct. 31, 2007 | $311,858.00 | $131,377.49 | $311,858.00 | $131,377.49 |
| Jan. 7, 2008 / #2500 | Nov. 1- Nov. 30, 2007 | $325,630.50 | $274,672.83 | $325,630.50 | $274,672.83 |
| Feb. 1, 2008 / #2854 | Dec. 1- Dec. 31, 2007 | $209,588.50 | $105,192.08 | $209,588.50 | $105,192.08 |
| Feb. 28, 2008 / #3120 | Jan. 1 – Jan. 31, 2008 | $242,791.50 | $25,388.41 | $242,791.50 | $25,388.41 |
| April 1, 2008 / 3506 | Feb. 1 – Feb. 29, 2008 | $142,796.50 | $19,252.37 | $142,796.50 | $19,252.37 |
| April 24, 2008 / 3843 | Mar. 1 – Mar. 31, 2008 | $262,794.25 | $409,560.47 | $262,794.25 | 409,560.47 |
| June 2, 2008 / 4335 | Apr. 1 – Apr. 30, 2008 | $232,347.00 | $259,015.20 | $232,347.00 | $259,015.20 |
| June 27, 2008 / 4924 | May 1 – May 31, 2008 | $196,602.00 | $350,447.45 | $196,602.00 | $350,447.45 |
| July 25, 2008 / 5244 | June 1- June 30, 2008 | $234,515.00 | $559,205.26 | $234,515.00 | $559,205.26 |
| Aug. 29, 2008/ 5558 | July 1- July 31, 2008 | $252,699.50 | $384,060.38 | $252,699.50 | $384,060.38 |
| October 1, 2008/ 6173 | August 1- August 31, 2008 | $269,441.50 | $274,454.38 | $269,441.50 | $274,454.38 |
| October 29, 2008/6472 | September 1- September 30, 2008 | $197,127.00 | $177,060.75 | $197,127.00 | $177,060.75 |
| December 3, 2008/6662 | October 1-October 31, 2008 | $116,070.00 | $51,723.11 | $116,070.00 | $51,723.11 |
| Dec. 22, 2008/6767 | Nov. 1-Nov. 30, 2008 | $51,532.50 | $36,016.18 | $41,226.00 | $36,016.18 |
| Jan. 30, 2009/6919 | Dec. 1-Dec. 31, 2008 | $23,954.00 | $61,209.45 | $19,163.20 | $61,209.45 |
| Mar. 12, 2009/7092 | Jan. 1-Jan. 31, 2009 | $22,342.00 | $1,721.92 | Pending | Pending |

**INTERIM COMPENSATION BY INDIVIDUAL**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Hourly Billing Rate ($) (including changes) | Total Billed Hours | Total Compensation ($) |
|---|---|---|---|---|
| Pamela Rogers Chepiga | Partner since 2005. Joined firm as counsel in 2003. Member of NY Bar since 1974. | $850.00 | .80 | $680.00 |
| Robert Knuts | Partner since 2006. Joined the firm as a partner in 2006. Member of NY Bar since 1982. | $760.00 | 2.70 | $2,052.00 |
| Nicholas Mitchell | Joined firm as an associate in 2007. Member of NY Bar since 2008. | $385.00 | 50.10 | $19,288.50 |
| Christopher Redlich | Litigation Support Manager | $245.00 | 6.30 | $1,543.50 |
| Jodi Pittell | Paralegal | $245.00 | 13.00 | $3,185.00 |
| Mark Mattson | Paralegal | $210.00 | 22.50 | $4,725.00 |
| Ben Crum | Paralegal | $210.00 | 7.50 | $1,575.00 |
| Latasha Cardona | Paralegal | $160.00 | 5.20 | $832.00 |
| **Grand Total:** | | | **108.10** | **$33,881.00** |
| **Blended Rate:** | | | | **$313.42** |
| **Blended Rate (including Contract attorneys):** | | | | **$313.42** |

## INTERIM COMPENSATION BY PROJECT CATEGORY

| Project Category | Total Hours | Total Fees ($) |
|---|---|---|
| Case Administration  (B110) | 54.50 | $11,860.50 |
| Fee/Employment Applications (B160) | 2.00 | $770.00 |
| Other Case Assessment, Development and Admin (L190) | .80 | $680.00 |
| Document Production (L320) | 48.10 | $18,518.50 |
| Document Production & Review (B100) | 2.70 | $2,052.00 |
| **TOTALS** | **108.10** | **$33,881.00** |

**INTERIM EXPENSE SUMMARY**[2]

| Expenses Category | Total Expenses ($) |
|---|---|
| Electronic Discovery | $68,167.24 |
| Long Distance Telephone | $2.62 |
| Reproduction Charges | $974.55 |
| Working Meal | $25.52 |
| Courier Charges | $585.14 |
| Travel Expenses | $38.30 |
| TOTAL | 69,793.37 |

---

[2] Some expense categories reflect expenses incurred prior to February which have not previously been submitted to the Court.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------------ x
In re:                                                        :    Chapter 11
                                                              :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,        :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                               :
                                                              :    Jointly Administered
        Debtors.                                              :
------------------------------------------------------------------------ x

**EIGHTEENTH MONTHLY APPLICATION OF
ALLEN & OVERY, LLP AS SPECIAL REGULATORY COUNSEL FOR THE
DEBTORS AND FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF
EXPENSES INCURRED FOR THE INTERIM PERIOD
FEBRUARY 1, 2009 THROUGH FEBRUARY 28, 2009**

Pursuant to 11 U.S.C. §§ 330 and 331 and Rule 2016 of the Federal Rules of

Bankruptcy Procedure, the law firm of Allen & Overy, LLP (hereinafter "A&O") hereby moves this

Court for reasonable compensation for professional legal services rendered as special regulatory

counsel to American Home Mortgage Holdings, Inc., et al., the debtors in the above-captioned cases

(the "Debtors"), in the amount of $33,881.00 together with reimbursement for actual and necessary

expenses incurred in the amount of $69,793.37 for the interim period January 1, 2009 through

January 31, 2009 (the "Interim Fee Period").   In support of its Application, A&O respectfully

represents as follows:

1.      A&O was employed pursuant to an engagement letter to represent the

Debtors as special regulatory counsel in connection with regulatory inquiries.  This representation

was effective as of September 7, 2007, pursuant to an Order entered by this Court on October 31,

2007.  The Order authorized A&O to be compensated on an hourly basis and to be reimbursed for

actual and necessary out-of-pocket expenses.

2.      All services for which compensation is requested by A&O were performed

for or on behalf of the Debtors.

**SUMMARY OF SERVICES RENDERED**

        3.     Attached hereto as Exhibit A is a detailed statement of fees incurred during the Interim Fee Period showing the amount of $33,881.00 due for fees. Exhibit B is a detailed statement of expenses paid during the Interim Fee Period showing the amount of $69,793.37 for reimbursement of expenses.

        4.     The services rendered by A&O during the Interim Fee Period are grouped into the categories set forth in Exhibit A. The attorneys and paralegals who rendered services relating to each category are identified, along with the number of hours for each individual and the total compensation sought for each category, in the attachments hereto.

**DISBURSEMENTS**

        5.     A&O has incurred out-of-pocket disbursements during the Interim Fee Period in the amount of $69,793.37. This disbursement sum is broken down into categories of charges, including, among other things, electronic discovery fees, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, charges for mailing supplies, travel expenses, expenses for "working meals," computerized research, transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime.

        6.     In an effort to minimize cost to the Debtors in responding to document requests, A&O has made extensive use of outside contract attorneys in conducting document review throughout this engagement. These contract attorneys are paid a flat fee of $60 per hour. This application does not reflect any hours of document review performed by contract attorneys.

        7.     A complete review by category of the expenses incurred for the Interim Fee Period may be found in the attachments hereto as Exhibit B.

        8.     Costs incurred for overtime and computer assisted research are not included

in A&O's normal hourly billing rates and, therefore, are itemized and included in A&O's disbursements. Pursuant to Local Rule 2016-2, A&O represents that the rate charged here for printing and duplication is $.10 per page, the rate charged here for outgoing telecopier transmissions is $1.00 per page (excluding related long distance transmission charges), there is no charge for incoming telecopier transmissions and there is no surcharge for computerized research.

## VALUATION OF SERVICES

9.    Attorneys and paraprofessionals of A&O have expended a total of 108.10 hours in connection with this matter during the Interim Fee Period.

10.    The amount of time spent by each of these persons providing services to the Debtors for the Fee Period is fully set forth in the detail attached hereto as Exhibit A. These are A&O's normal hourly rates of compensation for work of this character. The reasonable value of the services rendered by A&O for the Interim Fee Period as counsel for the Debtors in these cases is $33,881.00.

11.    A&O believes that the time entries included in Exhibit A attached hereto and the expense breakdown set forth in Exhibit B hereto are in compliance with the requirements of Local Rule 2016-2.

12.    As set forth in Exhibit A, all time recorded as non-working travel has been billed at 50% of normal hourly rates.

13.    In accordance with the factors enumerated in 11 U.S.C. §330, the amount requested is fair and reasonable given (a) the complexity of this case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under this title.

14.    This Application covers the Interim Fee Period February 1, 2009 through February 28, 2009.

3

WHEREFORE, A&O requests that allowance be made to it in the sum of $33,881.00 as compensation for necessary professional services rendered to the Debtors for the Interim Fee Period, and the sum of $69,793.37 for reimbursement of actual necessary costs and expenses incurred during that period, and further requests such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      March 27, 2009

ALLEN & OVERY, LLP

_Pamela Rogers Chepiga_

Pamela Rogers Chepiga
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399

Special Regulatory Counsel for Debtors

4

## VERIFICATION

STATE OF NEW YORK    )
                              )    SS:
NEW YORK COUNTY    )

Pamela Rogers Chepiga, Esquire, after being duly sworn according to law, deposes and says:

1.       I am a Partner in the applicant firm, Allen & Overy, LLP, and have been admitted to the bar of New York state since 1974.

2.       I have personally performed many of the legal services rendered by Allen & Overy, LLP, as counsel to the Debtors and am familiar with all other work performed on behalf of the lawyers and paraprofessionals in the firm.

3.       The facts set forth in the foregoing Application are true and correct to the best of my knowledge, information and belief.

Pamela Rogers Chepiga

SWORN TO AND SUBSCRIBED before me this _27_ day of March, 2009

Notary Public
My Commission Expires:_2/16/13_

MITCHELL NICHOLAS
NOTARY PUBLIC, STATE OF NEW YORK
No. 02MI6201001
QUALIFIED IN NEW YORK, NEW YORK
COMMISSION EXPIRES February 16, 20 13

# EXHIBIT A

MATTER :        87601-00001 AHM REGULATORY MATTERS
CURRENCY :      USD

INVOICE :       5718223
DATE :          March 10, 2009


**Detail by Activity**

| Date - Timekeeper | Hours | Amount | Code | Description |
|---|---|---|---|---|
| Document Production & Review | | | | |
| 02/02/09  Robert Knuts | 0.40 | 304.00 | B100 | Review of Borrowers' Committee revised request for documents and communication with Young Conaway concerning same; conference with N. Mitchell and P. Chepiga concerning electronic data preservation at AHM |
| 02/03/09  Robert Knuts | 0.40 | 304.00 | B100 | Communications concerning Borrowers' Committee revised request; review analysis by N. Mitchell concerning ability to respond to revised request |
| 02/06/09  Robert Knuts | 1.30 | 988.00 | B100 | Participate in court conference call concerning production of documents to Borrowers' Committee; communications with Young Conaway concerning same; prepare for court conference call |
| 02/12/09  Robert Knuts | 0.20 | 152.00 | B100 | Communications with SEC staff and counsel for creditors' committee concerning document transition issues |
| 02/17/09  Robert Knuts | 0.20 | 152.00 | B100 | Meeting with N. Mitchell and others to discuss issues concerning prospective transfer of documents to Litigation Trust counsel |
| 02/24/09  Robert Knuts | 0.10 | 76.00 | B100 | Telephone call with counsel for creditors' committee concerning transfer of SEC-related documents; send analysis of existing documents responsive to SEC subpoenas located at AHM and A&O |
| 02/26/09  Robert Knuts | 0.10 | 76.00 | B100 | Communications with SEC staff and counsel for creditors' committee concerning future transfer of documents responsive to SEC subpoena from company to Litigation Trust and related issues |
| ******  TOTAL CODE B100: | 2.70 | 2,052.00 | | |
| | | | | |
| Case Administration | | | | |
| 02/03/09  Jodi Pittell | 4.00 | 980.00 | B110 | Pulling production documents for attorney review. Reviewing boxes of production materials. |
| 02/04/09  Ben Crum | 0.50 | 105.00 | B110 | Assist with making copies of production |

**Detail by Activity**

| Date - Timekeeper | Hours | Amount | Code | Description |
|---|---|---|---|---|
| | | | | materials. |
| 02/04/09  Mark Mattson | 1.50 | 315.00 | B110 | Pulled and prepared relevant docs per N. Mitchell. |
| 02/05/09  Mark Mattson | 2.00 | 420.00 | B110 | Quality checked copy sets of relevant docs per N. Mitchell. |
| 02/05/09  Jodi Pittell | 2.00 | 490.00 | B110 | Preparation of document log for transfer of materials to counsel. Preparation of boxes and labels for same. |
| 02/06/09  Ben Crum | 1.50 | 315.00 | B110 | AHM January billing review |
| 02/06/09  Christopher Redlich | 1.70 | 416.50 | B110 | Gathered production documents for N. Mitchell |
| 02/08/09  Christopher Redlich | 1.00 | 245.00 | B110 | Ran production database searches for N. Mitchell |
| 02/09/09  Ben Crum | 1.50 | 315.00 | B110 | AHM billing review January 2009 |
| 02/10/09  Ben Crum | 2.00 | 420.00 | B110 | Organization of case materials for transfer to trustee's counsel, as per Jodi Pittell |
| 02/10/09  Jodi Pittell | 3.00 | 735.00 | B110 | Preparing all materials from this matter for transfer to trustee's counsel. Boxing materials, logging, labeling. |
| 02/10/09  Latasha Cardona | 2.60 | 416.00 | B110 | Organized Boxes of originals and working sets. |
| 02/11/09  Jodi Pittell | 4.00 | 980.00 | B110 | Preparing materials to be sent offsite to trustee's counsel. Boxing, labeling, updating log of boxes to be included with boxes. |
| 02/11/09  Latasha Cardona | 2.60 | 416.00 | B110 | Helped Jodi Pittell number and sort a log correlating to AHM boxes to be moved offsite. |
| 02/11/09  Christopher Redlich | 1.10 | 269.50 | B110 | Created index of production data for N. Mitchell |
| 02/12/09  Mark Mattson | 0.50 | 105.00 | B110 | Managed, updated case room files. |
| 02/13/09  Mark Mattson | 4.00 | 840.00 | B110 | Collect and assemble company produced documents. |
| 02/17/09  Mark Mattson | 2.50 | 525.00 | B110 | Logged and assembled all company docs per N. Mitchell. |
| 02/17/09  Christopher Redlich | 1.30 | 318.50 | B110 | Team meeting to discuss document transfer issues. |
| 02/18/09  Mark Mattson | 6.50 | 1,365.00 | B110 | Reviewed logged and assembled all company docs per N. Mitchell. |
| 02/19/09  Christopher Redlich | 0.80 | 196.00 | B110 | Preperaton of e-data for transfer to new counsel. |
| 02/19/09  Mark Mattson | 3.50 | 735.00 | B110 | Reviewed and assembled all company docs per N. Mitchell. |
| 02/24/09  Mark Mattson | 2.00 | 420.00 | B110 | Updated and organized case room files. |
| 02/24/09  Ben Crum | 2.00 | 420.00 | B110 | Manage and update case room files, and prepare files to be sent to liquidator's counsel, |

**Detail by Activity**

| Date - Timekeeper | Hours | Amount | Code | Description |
|---|---|---|---|---|
| | | | | as per Jodi Pittell |
| 02/24/09  Christopher Redlich | 0.40 | 98.00 | B110 | Data log cleanup |
| *******  TOTAL CODE B110: | 54.50 | 11,860.50 | | |

Fee/Employment Applications

| Date - Timekeeper | Hours | Amount | Code | Description |
|---|---|---|---|---|
| 02/17/09  Nicholas Mitchell | 1.00 | 385.00 | B160 | Attention to January fee application. |
| 02/20/09  Nicholas Mitchell | 1.00 | 385.00 | B160 | Performed work on AHM fee application. |
| *******  TOTAL CODE B160: | 2.00 | 770.00 | | |

Other Case Assessment, Development & Admin

| Date - Timekeeper | Hours | Amount | Code | Description |
|---|---|---|---|---|
| 02/02/09  Pamela Chepiga | 0.10 | 85.00 | L190 | Attention to emails from YCST re: Borrower Committee requests. |
| 02/02/09  Pamela Chepiga | 0.10 | 85.00 | L190 | Conference with R. Knuts re: response to YCST and Borrowers Committee. |
| 02/12/09  Pamela Chepiga | 0.20 | 170.00 | L190 | Attention to N. Mitchell emails re: Lankler Siffert request. |
| 02/12/09  Pamela Chepiga | 0.20 | 170.00 | L190 | Telephone conference with R. Knuts re: response to Lankler Siffert. |
| 02/18/09  Pamela Chepiga | 0.20 | 170.00 | L190 | Attention to emails from YCST and A&O re: document turnover to liquidating trustee. |
| *******  TOTAL CODE L190: | 0.80 | 680.00 | | |

Document Production

| Date - Timekeeper | Hours | Amount | Code | Description |
|---|---|---|---|---|
| 02/02/09  Nicholas Mitchell | 0.40 | 154.00 | L320 | Correspondence with J. Burzenski (AHM IT) related to open SEC request; conference with B. Knuts. |
| 02/03/09  Nicholas Mitchell | 4.70 | 1,809.50 | L320 | Analysis of document requests of the AHM Borrowers' Committee; coordinating production of documents to same. |
| 02/04/09  Nicholas Mitchell | 4.40 | 1,694.00 | L320 | Analysis of AHM Borrowers' Committee document requests, coordination of production of documents, preparation of index reflecting same. |
| 02/04/09  Nicholas Mitchell | 1.40 | 539.00 | L320 | Review and analysis of correspondence from SEC, internal discussion re: same. |
| 02/05/09  Nicholas Mitchell | 6.40 | 2,464.00 | L320 | Attention to response to document requests of the AHM Borrower's Committee, including review and analysis of potentially responsive documents. |
| 02/05/09  Nicholas Mitchell | 3.20 | 1,232.00 | L320 | Preparation for court conference call, including drafting a memo regarding electronic and hard copy document productions to the SEC and |

**Detail by Activity**

| Date – Timekeeper | | Hours | Amount | Code | Description |
|---|---|---|---|---|---|
| | | | | | internal discussions re: same. |
| 02/06/09 | Nicholas Mitchell | 2.40 | 924.00 | L320 | Court conference call related to Borrower's Committee motion for access to SEC productions and preparation for same. |
| 02/06/09 | Nicholas Mitchell | 2.60 | 1,001.00 | L320 | Review of documents in connection with SEC document request; correspondence with J. Burzenski related to SEC request. |
| 02/08/09 | Nicholas Mitchell | 5.20 | 2,002.00 | L320 | Review of documents in connection with document request by the SEC. |
| 02/09/09 | Nicholas Mitchell | 4.60 | 1,771.00 | L320 | Review of documents in connection with SEC document request; internal discussion re: same. |
| 02/11/09 | Nicholas Mitchell | 3.20 | 1,232.00 | L320 | Drafted a memo to R. Knuts regarding document production issues. |
| 02/11/09 | Nicholas Mitchell | 1.80 | 693.00 | L320 | Attention to document retention and organization in preparation for confirmation of bankruptcy plan and change of counsel. |
| 02/12/09 | Nicholas Mitchell | 1.40 | 539.00 | L320 | Drafting email to the SEC in response to request for documents. |
| 02/12/09 | Nicholas Mitchell | 2.80 | 1,078.00 | L320 | Analysis and organization of files related to upcoming transfer of files to new post-bankruptcy plan counsel. |
| 02/17/09 | Nicholas Mitchell | 1.40 | 539.00 | L320 | AHM team meeting to discuss document transfer issues in light of the bankruptcy plan confirmation; correspondence with Young Conaway regarding same. |
| 02/18/09 | Nicholas Mitchell | 1.40 | 539.00 | L320 | Attention to preparation of electronic files for transfer of information to counsel for the bankruptcy plan trustee; internal correspondence re: same. |
| 02/25/09 | Nicholas Mitchell | 0.80 | 308.00 | L320 | Discussion with Kroll and AHM employees related to post-bankruptcy staffing issues. |
| ******* | TOTAL CODE L320: | 48.10 | 18,518.50 | | |

MATTER :        87601-00001 AHM REGULATORY MATTERS
CURRENCY :      USD

INVOICE :       5718223
DATE :          March 10, 2009

| Summary by Activity Code | Hours | Amount |
|---|---|---|
| (B100)  Document Production & Review | 2.70 | 2,052.00 |
| (B110)  Case Administration | 54.50 | 11,860.50 |
| (B160)  Fee/Employment Applications | 2.00 | 770.00 |
| (L190)  Other Case Assessment, Development & Admin | 0.80 | 680.00 |
| (L320)  Document Production | 48.10 | 18,518.50 |
| GRAND TOTAL | 108.10 | 33,881.00 |

# EXHIBIT B

**Summary of Expenses Incurred**
**(February 1, 2009 – February 28, 2009)**[1]

| Date Incurred | Expense | Amount |
|---|---|---|
| 07/09/08 | E-Discovery | $443.47 |
| 07/09/08 | E-Discovery | $1,144.02 |
| 07/11/08 | Document Reproduction | $750.95 |
| 07/14/08 | E-Discovery | $557.51 |
| 07/14/08 | E-Discovery | $1,411.69 |
| 10/11/08 | E-Discovery | $11,452.36 |
| 12/05/08 | E-Discovery | $7,612.50 |
| 01/13/09 | E-Discovery | $666.51 |
| 01/26/09 | E-Discovery | $4,753.45 |
| 01/30/09 | E-Discovery | $27,737.50 |
| 01/30/09 | E-Discovery | $700.00 |
| 02/02/09 | Telephone Charges | $0.82 |
| 02/03/09 | Document Reproduction | $0.40 |
| 02/03/09 | Document Reproduction | $0.50 |
| 02/03/09 | Document Reproduction | $7.10 |
| 02/03/09 | Document Reproduction | $5.20 |
| 02/03/09 | Document Reproduction | $2.80 |
| 02/03/09 | Document Reproduction | $2.70 |
| 02/04/09 | E-Discovery | $2,308.37 |
| 02/04/09 | E-Discovery | $2,687.01 |
| 02/04/09 | Document Reproduction | $12.40 |
| 02/04/09 | Document Reproduction | $0.10 |
| 02/04/09 | Document Reproduction | $6.20 |
| 02/04/09 | Document Reproduction | $1.30 |
| 02/04/09 | Document Reproduction | $51.10 |
| 02/04/09 | Telephone Charges | $0.09 |
| 02/05/09 | E-Discovery | $254.68 |
| 02/05/09 | Courier Charges | $7.67 |
| 02/05/09 | Courier Charges | $34.54 |
| 02/05/09 | Courier Charges | $90.16 |
| 02/05/09 | Courier Charges | $90.16 |
| 02/05/09 | Courier Charges | $34.54 |
| 02/05/09 | Courier Charges | $34.54 |
| 02/05/09 | Courier Charges | $34.55 |
| 02/05/09 | Courier Charges | $20.03 |
| 02/05/09 | Courier Charges | $90.16 |
| 02/05/09 | Courier Charges | $90.22 |
| 02/05/09 | Working Meal | $25.52 |
| 02/05/09 | Document Reproduction | $1.80 |
| 02/05/09 | Document Reproduction | $13.10 |
| 02/05/09 | Document Reproduction | $23.40 |
| 02/05/09 | Document Reproduction | $4.40 |
| 02/05/09 | Document Reproduction | $4.20 |
| 02/05/09 | Travel Expense | $25.50 |
| 02/05/09 | Telephone Charges | $0.09 |
| 02/05/09 | Telephone Charges | $0.18 |
| 02/06/09 | E-Discovery | $867.00 |

---

[1]  Expenses for dates prior to February 1, 2009 have not been previously submitted to the Court, and reflect that the invoices for such expenses were finalized in February.

8135054

| 02/06/09 | E-Discovery | $331.02 |
| 02/06/09 | Courier Charges | $27.69 |
| 02/06/09 | Courier Charges | $30.88 |
| 02/06/09 | Document Reproduction | $0.80 |
| 02/06/09 | Document Reproduction | $0.10 |
| 02/06/09 | Document Reproduction | $1.10 |
| 02/06/09 | Document Reproduction | $1.60 |
| 02/06/09 | Document Reproduction | $1.70 |
| 02/06/09 | Document Reproduction | $1.40 |
| 02/06/09 | Document Reproduction | $3.50 |
| 02/06/09 | Document Reproduction | $3.30 |
| 02/06/09 | Document Reproduction | $1.30 |
| 02/06/09 | Telephone Charges | $0.09 |
| 02/06/09 | Telephone Charges | $0.64 |
| 02/06/09 | Telephone Charges | $0.09 |
| 02/06/09 | Telephone Charges | $0.09 |
| 02/08/09 | Document Reproduction | $0.20 |
| 02/08/09 | Document Reproduction | $3.30 |
| 02/08/09 | Document Reproduction | $3.30 |
| 02/08/09 | Telephone Charges | $0.22 |
| 02/09/09 | Document Reproduction | $8.10 |
| 02/10/09 | Document Reproduction | $2.40 |
| 02/10/09 | Document Reproduction | $3.50 |
| 02/10/09 | Document Reproduction | $1.20 |
| 02/10/09 | Document Reproduction | $1.20 |
| 02/10/09 | Document Reproduction | $1.20 |
| 02/10/09 | Document Reproduction | $1.20 |
| 02/10/09 | Document Reproduction | $2.80 |
| 02/10/09 | Document Reproduction | $2.20 |
| 02/10/09 | Document Reproduction | $2.40 |
| 02/10/09 | Document Reproduction | $2.20 |
| 02/10/09 | Document Reproduction | $2.80 |
| 02/10/09 | Document Reproduction | $2.40 |
| 02/11/09 | E-Discovery | $86.70 |
| 02/11/09 | Telephone Charges | $0.09 |
| 02/13/09 | Document Reproduction | $2.40 |
| 02/13/09 | Document Reproduction | $1.60 |
| 02/18/09 | Document Reproduction | $1.60 |
| 02/18/09 | Document Reproduction | $1.00 |
| 02/18/09 | Document Reproduction | $1.00 |
| 02/20/09 | Document Reproduction | $2.90 |
| 02/20/09 | Travel Expense | $12.80 |
| 02/24/09 | Telephone Charges | $0.13 |
| 02/24/09 | E-Discovery | $5,153.45 |
| 02/25/09 | Telephone Charges | $0.09 |
| 02/26/09 | Document Reproduction | $19.80 |
| 02/27/09 | Document Reproduction | $1.40 |
| | | |
| | TOTAL | $69,793.37 |

8135054



The relief described hereinbelow is SO ORDERED.

Signed February 05, 2009.

_____
Ronald B. King
United States Chief Bankruptcy Judge

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 09-50455 |
| SPECTRUM JUNGLE LABS | ) *Chapter 11* |
| CORPORATION, et al., | ) |
| | ) Joint Administration Requested |
| Debtors.[1] | ) |
| | ) |

### EMERGENCY ORDER PURSUANT TO 11 U.S.C. §§ 361 AND 363 (I) AUTHORIZING THE USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDERS

This matter having come before the Court upon the motion (the "**Motion**"),[2] dated

February 3rd, 2009, of the debtors and debtors-in-possession in the above-captioned cases

(collectively, the "**Debtors**"), for, *inter alia*, (i) interim and final orders pursuant to

---

[1]    In addition to Spectrum Jungle Labs Corporation, the following entities are debtors in these related cases: Spectrum Brands, Inc., ROVCAL, Inc., ROV Holding, Inc., Tetra Holding (US), Inc., United Industries Corporation, Schultz Company, Spectrum Neptune U.S. Holdco Corporation, United Pet Group, Inc., DB Online, LLC, Aquaria, Inc., Perfecto Manufacturing, Inc., Aquarium Systems, Inc. and Southern California Foam, Inc.

Sections 105, 361, 362, 363 and 364 of title 11, United States Code, 11 U.S.C. §§ 101 et

seq. (as amended, the **"Bankruptcy Code"**) and Rules 2002, 4001 and 9014 of the

Federal Rules of Bankruptcy Procedure authorizing the Debtors to enter into a debtor-in-

possession financing facility and to use Cash Collateral (as defined below), and (ii) a

preliminary order pursuant to Sections 361 and 363 of the Bankruptcy Code, authorizing

the Debtors' use of Cash Collateral on an emergency basis to maintain ongoing

operations and avoid immediate and irreparable harm to the Debtors' estates pending an

interim hearing to consider entry of the Interim Order, and granting adequate protection,

**IT APPEARING THAT:**

A.      On February   , 2009 (the **"Petition Date"**), each of the Debtors filed a

voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the Western District of Texas.

B.      The Debtors are operating their business and managing their properties as

debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

No request has been made for the appointment of a trustee or examiner and no official

committee of unsecured creditors has been appointed in these cases.

C.      This Court has jurisdiction over these Chapter 11 cases and the Motion

pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a

core proceeding as defined in 28 U.S.C. § 157(b)(2).

D.      The statutory predicates for the relief granted herein are Sections 361 and

363 of the Bankruptcy Code and Rules 4001(b) and (d) of the Federal Rules of

Bankruptcy Procedure.  Venue of the Debtors' Chapter 11 cases in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409.

2

E.      Pursuant to the terms of that certain Credit Agreement, dated as of March 30, 2007 (as amended, supplemented or otherwise modified prior to the Petition Date, the **"Pre-Petition Term Credit Agreement"**), by and among Spectrum Brands, Inc. (**"Spectrum Brands"**), as borrower, certain of the other Debtors, as guarantors, Goldman Sachs Credit Partners L.P. (the **"Pre-Petition Term Agent"**), as administrative and collateral agent, and the lenders from time to time party thereto (the **"Pre-Petition Term Lenders"**), and the related loan documents (the **"Pre-Petition Term Documents"**), the Pre-Petition Term Lenders made term loans and other financial accommodations to or for the benefit of Spectrum Brands and the other Debtors (the **"Pre-Petition Term Facility"**).

F.      Pursuant to the terms of that certain Credit Agreement, dated as of September 28, 2007 (as amended, supplemented or otherwise modified prior to the Petition Date, the **"Pre-Petition ABL Credit Agreement"**), by and among Spectrum Brands, as borrower, certain of the other Debtors, Wachovia Bank, National Association, as administrative and collateral agent (the **"Pre-Petition Revolving Agent"**), and the lenders from time to time party thereto (the **"Pre-Petition Revolving Lenders"**), and the related loan documents (the **"Pre-Petition Revolving Documents"**), the Pre-Petition Revolving Lenders made revolving loans and other financial accommodations to or for the benefit of Spectrum Brands and the other Debtors (the **"Pre-Petition Revolving Facility"**). All such loans, financial accommodations and other amounts owing by the Debtors to the Pre-Petition Term Lenders and the Pre-Petition Revolving Lenders under, or in connection with, the Pre-Petition Term Documents and the Pre-Petition Revolving Documents are hereinafter referred to collectively as the **"Prepetition Obligations."**

702666.03-New York Server 6A

G.     The Pre-Petition Revolving Agent and the Pre-Petition Term Agent are parties to the Intercreditor Agreement, dated as of September 28, 2007, by and among Spectrum Brands, certain of the other Debtors, the Pre-Petition Term Agent and the Pre-Petition Revolving Agent (the "**Intercreditor Agreement**"), a copy of which is included in the Exhibit Supplement filed contemporaneously with the Motion.   The Intercreditor Agreement provides, *inter alia*, that all liens and security interests with respect to all ABL Collateral[3] securing all obligations and amounts owed under the Pre-Petition Term Documents are subordinated, on the terms and conditions set forth therein, to the liens and security interests with respect to the ABL Collateral securing all obligations and amounts owed under the Pre-Petition Revolving Documents.

1.     The Debtors represent that, as of the Petition Date, the Debtors were indebted to the Pre-Petition Term Lenders in the aggregate amount of approximately $1.4 billion (the "**Pre-Petition Term Debt**") in respect of term loans and letters of credit provided under the Pre-Petition Term Credit Agreement.   The Pre-Petition Term Debt is secured by perfected, valid, binding and non-avoidable first priority security interests and liens granted by Debtors to or for the benefit of the Pre-Petition Term Lenders upon all of the Non-ABL Collateral, and perfected, valid, binding and non-avoidable second priority security interests and liens granted by Debtors to or for the benefit of the Pre-Petition Term Lenders upon all of the ABL Collateral, subject only to certain Permitted Liens (as defined in the Pre-Petition Term Credit Agreement).  The

---

[3]    The terms ABL Collateral and Non-ABL Collateral as used in this Order shall have the meaning ascribed to them in the Intercreditor Agreement (as defined herein).

Debtors believe and therefore stipulate that such liens and security interests have been duly perfected against the ABL Collateral and the Non-ABL Collateral.

2.    The Debtors represent that, as of the Petition Date, the Debtors were indebted to the Pre-Petition Revolving Lenders in the aggregate principal amount of approximately $160 million (the **"Pre-Petition ABL Debt"**), in respect of loans and letters of credit provided under the Pre-Petition ABL Credit Agreement.  The Pre-Petition ABL Debt is secured by perfected, valid, binding and non-avoidable first priority security interests and liens granted by Debtors to or for the benefit of the Pre-Petition Revolving Lenders upon all of the ABL Collateral, subject only to certain Permitted Liens (as defined in the Pre-Petition ABL Credit Agreement).  The Debtors believe and therefore stipulate that such liens and security interests have been duly perfected against the ABL Collateral.

H.    As of the Petition Date, the ABL Collateral that secures the Pre-Petition Obligations to the Pre-Petition Revolving Lenders and the Pre-Petition Term Lenders, and the Non-ABL Collateral that secures the Pre-Petition Obligations to the Pre-Petition Term Lenders, and the post-petition proceeds and products thereof are hereinafter referred to collectively as the **"Pre-Petition Collateral"**.  The Debtors acknowledge and agree that all of the cash held by the Debtors and amounts generated by the collection of accounts receivable or other proceeds of the Pre-petition Collateral constitute Pre-petition Collateral and, therefore, are cash collateral within the meaning of Section 363(a) of the Bankruptcy Code (the **"Cash Collateral"**).

I.    The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses.  Among other things, entry of

702666.03-New York Server 6A

this Order will minimize disruption of the Debtors' businesses and operations and permit them to make payroll and other operating expenses, maintain business relationships with their vendors and retain customer and vendor confidence by demonstrating an ability to maintain normal operations. The use of the Cash Collateral is therefore of the utmost significance and importance to the preservation and maintenance of the going concern value of the Debtors and their estates. The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to their estates pending an interim hearing on the Motion. The relief granted herein is in the best interests of the Debtors, their estates, and their creditors.

J.      The Pre-Petition Revolving Lenders and the Pre-Petition Term Lenders (collectively, the "**Lenders**") have objected to the use by the Debtors of the Cash Collateral, except on the terms of this Order (or other order that may be entered by the Court with the consent of the Pre-Petition Revolving Agent and the Pre-Petition Term Agent). In addition, the Lenders are entitled, pursuant to Sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interest in the Pre-petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in value of the Pre-Petition Collateral, including, without limitation any such diminution resulting from the use, sale, lease by the Debtors (or other decline in value) of Cash Collateral or any other Pre-Petition Collateral and the imposition of the automatic stay.

K.      The Lenders and the Debtors have negotiated at arms' length and in good faith regarding the Debtors' use of Cash Collateral to fund the administration of the Debtors' estates and continued operation of their businesses. The Lenders have agreed to permit the Debtors to use the Cash Collateral for the period through the Termination Date

6

(as defined below), upon the terms and conditions set forth herein, including the protection afforded a party acting in "good faith" pursuant to Section 363(m) of the Bankruptcy Code.

L.      An official committee of unsecured creditors has not yet been appointed in these cases pursuant to Bankruptcy Code section 1102.

M.      Notice of the Motion and the emergency hearing to consider entry of this Order has been given to the following parties or their counsel: (a) the Office of the United States Trustee; (b) counsel to the  Pre-Petition Revolving Agent, Cox Smith, 112 East Pecan Street, Suite 1800, San Antonio, Texas 78205; Attn: Deborah D. Williamson, Esq., Fax: (210) 216-8395; and Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169; Attn: Jonathan N. Helfat, Esq. and Andrew M. Kramer, Esq., Fax: (212) 682-6104; (c) counsel to the Pre-Petition Term Agent, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019; Attn: Richard G.Mason, Esq., Fax: (212) 403-2000; (d) counsel to noteholder Harbinger Management, Paul, Weiss, Rifkind, Wharton & Garrison, 1285 Avenue of the Americas, New York, New York 10019; Attn: Brian S. Hermann, Esq., Fax: (212) 757-3990; (e) counsel to noteholder Avenue Capital Management, O'Melveny & Myers LLP, 400 South Hope Street, Los Angeles, California 90071; Attn: David J. Johnson Jr., Esq., Fax: (213) 430-6407;  (f) counsel to noteholder D.E. Shaw & Co., Bracewell & Giuliani LLP, 1177 Avenue of the Americas, 19th Floor, New York, New York 10036; Attn: Mark B. Joachim, Esq., Fax: (212) 508-6101; and (g) the indenture trustee for the Debtors' three series of public notes, U.S. Bank National Association, 60 Livingston Avenue, St. Paul, Minnesota 55107; Attn: Corporate Trust Department, Fax: (651) 495-8097.  Under the

7

circumstances such notice complies with the requirements of Bankruptcy Code sections 102(1) and 363 and Bankruptcy Rules 2002 and 4001(b).

Based upon the foregoing, and upon the record made to this Court at the emergency hearing to consider entry of this Order, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.     Subject to the terms and conditions hereof, the Debtors are authorized to use the Cash Collateral effective immediately following the commencement of the Debtors' Chapter 11 cases through and including the Termination Date (as defined below) (the **"Cash Collateral Period"**), to pay payroll obligations and other critical operating expenses in an amount not to exceed $6,000,000.00] (the **"Cash Collateral Limit"**)].

2.     The Debtors' right to use Cash Collateral in accordance with this Order shall terminate (the date of any such termination, the **"Termination Date"**) on the earliest to occur of (i) February 6th, 2009, at 5:00 p.m Eastern time, (ii) the entry of an order of this Court terminating such right, or (iii) the entry of an order of this Court dismissing any of the Debtors' Chapter 11 cases or converting any of the Debtors' Chapter 11 cases to a case under Chapter 7 of the Bankruptcy Code.  Notwithstanding the foregoing, the obligations of the Debtors and the rights, claims, security interests, liens and priorities of the Lenders with respect to all transactions which occurred prior to the termination of the Debtors' right to use Cash Collateral in accordance with this Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.  The Debtors and the Lenders may mutually agree in writing to an extension of the Cash Collateral Period without further order of the Court, but may not

8

increase the amount of Cash Collateral to be used in accordance with this Order in excess of the Cash Collateral Limit without further order of this Court.

       3.     As adequate protection for, and to the extent of, any diminution in value of the Lenders' interest in the Pre-Petition Collateral resulting from (x) the use of the Cash Collateral pursuant to Section 363(e) of the Bankruptcy Code, (y) the use, sale, lease, depreciation or other diminution in value of the Pre-Petition Collateral (other than the Cash Collateral) pursuant to Section 363(c) of the Bankruptcy Code or (z) the imposition of the automatic stay pursuant to Section 362 of the Bankruptcy Code (the amount of any such diminution being referred to collectively hereinafter as the **"Adequate Protection Obligations"**), the Lenders are hereby granted the following (the **"Replacement Liens"**):

       (a)     as security for the payment of the Adequate Protection Obligations of the Debtors to the Pre-Petition Term Lenders, the Pre-Petition Term Lenders are hereby granted (effective and perfected as of the Petition Date and without the necessity of execution by the Debtors of security agreements, pledge agreements, financing statements or other agreements), valid, binding and enforceable replacement security interests in and lien on (the **"Term Replacement Liens"**) on all right, title and interest of the Debtors in all currently owned or hereafter ABL Collateral and Non-ABL Collateral, other than actions arising under Sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and the proceeds of any such actions. Subject and subordinate only to (i) the liens and security interests permitted under the Pre-Petition Term Documents; *provided that* such liens and security interests are valid, perfected, unavoidable and subsisting liens or security interests in such property of record as of the Petition Date, (ii) all liens, claims and security interests granted to the post-petition secured lenders in the Interim Order or the Final Order, and (iii) any fees payable to the Clerk of the Bankruptcy Court and the United States Trustee, the Term Replacement Liens are (x) in the case of the ABL Collateral, second priority junior perfected liens upon all ABL Collateral, and (y) in the case of the Non-ABL Collateral, first priority perfected liens upon all of the Non-ABL Collateral; and

      (b)     as security for the payment of the Adequate Protection Obligations of the Debtors to the Pre-Petition Revolving Lenders, the Pre-Petition Revolving Lenders are hereby granted (effective and perfected as of the Petition Date and without the necessity of execution by the Debtors of security

9

agreements, pledge agreements, financing statements or other agreements) valid, binding and enforceable first priority security interests in and lien (the **"ABL Replacement Liens"**) on all right, title and interest of the Debtors in all currently owned or hereafter acquired ABL Collateral, other than actions arising under Sections 544, 545, 547, 548 and 550 of the Bankruptcy Code and the proceeds of any such actions. Subject and subordinate only to (i) the liens and security interests permitted under the Pre-Petition Revolving Documents; *provided that* such liens and security interests are valid, perfected, unavoidable and subsisting liens or security interests in such property of record as of the Petition Date, (ii) all liens, claims and security interests granted to the post-petition secured lenders in the Interim Order or the Final Order, and (iii) any fees payable to the Clerk of the Bankruptcy Court and the United States Trustee, the ABL Replacement Liens shall be first priority perfected liens upon all of the ABL Collateral.

4.     Under the circumstances (and consistent with the rights of the Lenders under Section 506(b) of the Bankruptcy Code), and based upon the Lenders' consent, the adequate protection provided herein is reasonable and sufficient to protect the interests of the Lenders.

5.     The Term Replacement Liens and the ABL Replacement Liens (collectively, the **"Replacement Liens"**) shall constitute valid, enforceable, unavoidable and duly perfected security interests and liens. The Lenders shall not be required to file or serve financing statements, notices of lien or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by any of the Debtors to execute any documentation relating to the Replacement Liens shall in no way affect the validity, perfection or priority of such Replacement Liens.

6.     Except with respect to the post-petition liens, rights, claims, interests, protections and priorities granted to or for the benefit of the Lenders pursuant to this Order (which post-petition liens, rights, claims, interests, protections and priorities are hereby deemed valid, binding, enforceable, non-avoidable, and duly perfected and not subject to challenge or dispute), all rights of any statutory committee of unsecured

10

creditors to investigate and pursue any claims against the Lenders with respect to the Lenders' pre-petition liens and security interests in the Pre-Petition Collateral and the Pre-Petition Obligations owing by the Debtors to the Lenders are hereby fully reserved.

7.    The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization in these Chapter 11 cases, (b) converting any of these Chapter 11 cases to a Chapter 7 case, or (c) dismissing any of these Chapter 11 cases.  If an order dismissing these Chapter 11 cases under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, (a) the Replacement Liens granted pursuant to this Order shall continue in full force and effect and shall remain binding on all parties in interest notwithstanding such dismissal until the obligations secured thereby shall have been indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the limited purposes of enforcing such Replacement Liens.

8.    The use of Cash Collateral pursuant to the terms and conditions in this Order shall not be deemed to be a consent by the Lenders to any other or further use of Cash Collateral, nor to the relief sought in the Motion (other than with respect to the emergency use of Cash Collateral as set forth herein).

9.    Pursuant to Sections 105, 361 and 363 of the Bankruptcy Code, the Lenders are hereby found to be entities that have acted in "good faith" in connection with the negotiation and entry of this Order, and each is entitled to the protection provided to such entities under Section 363(m) of the Bankruptcy Code.

10.    Notwithstanding Bankruptcy Rule 6004(g), this Order shall be effective immediately upon entry.

### 

11