UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

AMERICAN MORTGAGE HOLDINGS,
INC., et al.,

Debtors.

Chapter 11

Case No. 07-11047 (CSS)
Jointly Administered

### RESPONSE OF CHAMPION & ASSOCIATES, P.C., TO DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION TO CLAIMS

Champion & Associates, P.C. ("Champion") hereby responds to the Debtor's Substantive Objection to Claim Number 7968. The Debtors' objection is wholly without merit and is contradicted by the Debtors' own documents provided by Champion. The Debtors' summary objection purposefully ignores the dialog between the parties over the past year.[1] In support hereof, Champion attaches hereto the Affidavit of Linda G. Champion ("Attorney Champion").

### FACTS

1.      Champion is a Massachusetts professional corporation owned by Attorney Champion. Attorney Champion is a solo practitioner.

2.      Champion's practice includes closing residential mortgages for a number of lenders.

---

[1] Although some of that dialog related to whether the Debtors would settle the claim, much of the discussion concerned the basis for the claim.

3.      This claim arises out of a real estate closing, which Attorney Champion conducted for the Debtor, American Home Mortgage Corp., in accordance with industry standards, but which nonetheless the Debtor wrongfully failed to fund.[2]

4.      More specifically, this claim relates to a real estate funding transaction that occurred on July 19, 2007 and involved a three-family home located at 607 North Main Street, Brockton, Massachusetts ("607 North Main"). Cletus D. Kawei ("Kawei") and James Paul ("Paul") (collectively, the "Sellers") agreed to sell 607 North Main to Louis Jean Mompoint (the "Buyer") for $505,000.00. The property was encumbered by two mortgages – one granted to EMC Mortgage Corporation ("EMC") and the other granted to Harold D. Kahn, Trustee of the Kahn Family Trust. In order to purchase the 607 North Main property, Louis Mompoint sought financing. Buyer obtained an FHA loan commitment from the Debtor for a mortgage in the amount of $497,197.00.

5.      The Debtor retained Champion to represent its interests in the sale of 607 North Main to the Buyer. After deducting $14,518.60 for lender closing fees and $1,373.52 for two months of escrow from the $497,197.00 loan, the Debtor was required to wire $481,304.88 to Champion to be disbursed in accordance with the HUD statement. The wire from the Debtor was earmarked to pay off the EMC and Kahn Mortgages and to leave the Sellers with $99,041.27 after all settlement charges to the Sellers had been paid.

6.      The closing was scheduled to go forward on Thursday, July 19, 2007. The Debtor represented to Champion that it would fund the loan and directed Champion to proceed with the closing. See Exhibit A.

---

[2] The singular term Debtor refers to American Home Mortgage Corp. against which the claim was filed. The collective term Debtors refers to the jointly administered Debtors which have filed the Omnibus Objection.

7.      During the closing, Kawei (on behalf of himself and Paul) executed a Quitclaim Deed purporting to convey 607 North Main to the Buyer for $505,000.00.  By the time the closing was finished, the Plymouth Country Registry of Deeds was closed.  It was agreed that the closing documents would be recorded on the following morning, Friday, July 20, 2007, and that Kawei and the Buyer would meet Attorney Champion at the registry.

8.      On the morning of July 20, 2007, Attorney Champion drove directly to the Plymouth Country Registry of Deeds where she was met by the Buyer and Kawei.  While at the registry, Attorney Champion spoke with the Debtor by telephone; during that conversation she was directed to proceed with recording.  Attorney Champion recorded the Quitclaim Deed, the Mortgage to the Debtor, and a Declaration of Homestead and then traveled back to her office.

9.      On July 20, 2007, while under the belief that the wire from the Debtor had been credited to the client funds account, Attorney Champion made disbursements from the account in accordance with the HUD settlement statement.  The primary disbursements were as follows: $345,246.03 to EMC, $99,041.27 to Kawei and Paul, and $30,000.00 to Kahn.

10.     On July 31, 2007, Champion discovered that the $481,304.88 wire from the Debtor never posted to the account.

11.     Moreover, the Debtor's own computer system account history indicates that the Debtor had "approved" the transaction and designated the transaction as "clear to close."  See Exhibit B.

12.     On August 3, 2007, the Debtor's representative wrote to assure Attorney Champion that the Debtor would resend the wire and "I cant [sic] apologize enough…I am working hard to make it right."  See Exhibit C.  Throughout the next few days, when the wire still did not appear, Attorney Champion continued to contact the Debtor asking for a status.  The Debtor never sent the funds though it continued to represent to Attorney Champion that it would.

-3-

13.    During these few days, evidence of the dire financial straits that the Debtor found itself in began to unfold.  On August 1, 2007, Stewart Title issued a closing alert bulletin notifying its agents that it had "been alerted that [agents] may experience a problem receiving funds from . . . American Home Mortgage Investment Corp."  The bulletin instructed Attorney Champion not to accept any further orders or close any further transactions with the Debtor.  The bulletin came too late to avoid the 607 North Main closing.

14.    On August 2, 2007, the Commissioner of Banks for the Commonwealth of Massachusetts ordered the Debtor to fund the loan.  See Exhibit D.  The Debtor defied the order and failed to fund the loan.

15.    Champion then learned that on or about August 6, 2007, the Debtor filed for bankruptcy.

16.    The Debtor changed its position and informed Champion that it had suspended the loan.  On or about August 17, 2007, the Debtor executed a discharge of its mortgage and sent the discharge to Attorney Champion.  Because Champion funded the loan, the discharge has not yet been recorded.

17.    The Debtor has claimed no interest in enforcing the mortgage on its own behalf or treating it as property of the estate.

18.    The Debtor's own Vice President for Loan Administration Support described the transaction as "a dry funding."  See Exhibit B.

## CLAIMS RESOLUTION

19.    On or about January 8, 2008, Champion filed claim number 7968.  The claim identified Champion's counsel as a contact on the claim.

20.    Subsequently, Champion through counsel attempted to obtain a formal confirmatory assignment of the mortgage from the Debtors.[3]

21.    In response to requests from Debtors' counsel, Champion provided further substantiation for the claim.  See Exhibit E.

22.    Despite requests for reciprocal disclosure from the Debtors, over the past year the Debtors failed to provide any substantive basis to deny the claim.

23.    On March 6, 2009, the Debtors filed the Thirty First Omnibus Objection to Claims.  The objection opposed the Champion claim, Claim Number 7968.[4]  The Debtors also lodged substantive objections to over 450 claims.[5]  To the extent that the number of substantive claims exceeds the permissible scope of any court order, local rule or Rule 3007, the Omnibus Objection may be overruled in its entirety.

24.    The purported basis for the object is:

> After reconciling each of the Disputed Claims and supporting materials against their books and records, which the Debtors believe to be accurate, the Debtors have determined that they are not liable with respect to the claims identified as Exhibit A to the Proposed Order (the "No Liability Claims").  Upon review of the No Liability Claims, the Debtors cannot justify these claims as valid.  Consequently, the Debtors believe the No Liability Claims identified in Exhibit A should be disallowed and expunged in their entirety.  Failure to disallow the No Liability Claims will result in the applicable claimants receiving an unwarranted recovery against

---

[3] Champion has been involved in litigation with other parties involved in the underlying transaction.  Champion sought a confirmatory assignment to support her position in the litigation.  Despite the Debtors' professed lack of interest in the mortgage, they have continued to exacerbate Champion's troubles by leveraging situation against a solo practitioner.

[4] The Debtors did not serve a copy of the objection on Champion's counsel who is identified on the proof of claim and had extensive contact with Debtors' counsel.

[5] The Omnibus Objection cites no court order permitting such an excessive number of claims objections over the limits of Rule 3007 and Local Rule 3007-1.

the Debtors' estates, to the detriment of creditors in this case. Accordingly, the Debtors hereby object to the No Liability Claims and request entry of an order disallowing and expunging in full each of the No Liability Claims identified in Exhibit A.

Objection, ¶10.

25.    The Proposed order states:

Per Debtors' books and records, AHM did not approve closing of loan. Settlement agent disbursed funds to close loan without AHM's approval.

Objection, Exhibit XI (Exhibit 4, p.1).

26.    In support of the Objection, the Debtors submitted a wholly conclusory boilerplate affidavit from Zolfo Cooper LLC. There is no reason to conclude that the affidavit or anyone at Zolfo Cooper examined the documents supporting the claim including documents from the Debtors.

## ANALYSIS

27.    Although debtors and trustees may object to claims, there are limitations:  the debtor or trustee must have a good faith theory for disallowance or reduction of the claim under 11 U.S.C., § 502(b).  See In re Shank, 315 BR 799, 811-814 (Bankr. N.D. Ga. 2004).

28.    Nor are debtors and trustees permitted to use the claims objection process to make valid creditors run through a procedural gauntlet:

The fundamental purpose of the claims allowance process and the various rules for filing of proofs of claim and allocating burdens of proof is to provide a fair and inexpensive procedure for the proper determination of claims on the merits. Those rules and procedure are not properly involved with regard to a claim unless there is an actual or potential dispute about the Debtor's liability *vel non* or its amount. The bankruptcy rules contemplate resolution of objections to claims as contested matters, not as adversary proceedings. Thus, they envision much simpler, expedited proceedings without all the trapping or normal civil litigation. They do not envision the determination of claims based on procedural technicalities such as whether a proof of claim includes adequate documentation or whether a creditor on 30 days notice

> may be "put to its proof in the absence of any indication that there is, in fact, a bona fide controversy over the amount of the debt.

Id. at 814.

29.    When creditor's counsel has offered to provide supporting documents, the debtor cannot interpose objections to cause creditors to relinquish or compromise valid enforceable claims rather than to pay the cost of contesting an objection. In re Medical One, Inc., 68 BR 150, 152 (Bankr. M.D. Fla. 1986).

30.    There is no doubt that the objection is not supported to any valid theory.  The conclusory affidavit presents no admissible or facially credible evidence.  At most, the affidavit suggests that the Debtors are trying to create a dispute by self-contradiction.  The Debtors should not be permitted to play fast and loose with the truth.

31.    Indeed, the objection turns the purpose of Local Rule 3007-1 on its head.  Instead of using an Omnibus Objection as a shield for trustees and debtors from incurring exorbitant administrative expenses in objecting to voluminous and similar claims, the Debtors here are using the Omnibus Objection as a sword to submit a cursory objection to a seemingly, unique claim and to force protracted litigation by a small player in a large complex bankruptcy.  In other words, the Debtors are misusing the rule to grind down a small creditor.

32.    The only point to the objection seems to be to make it prohibitively expensive for Champion to protect the claim.  The Debtors and their professionals are clearly willing to incur more administrative expense in defeating an ultimately minimal distribution on an undersecured claim.  Also, the Debtors profess no proper interest in the mortgage funded by Champion.

33.    Finally, there is no dispute that Champion closed the loan and funded the mortgage and that the Commonwealth of Massachusetts validly ordered the Debtor to fund this loan prior to the bankruptcy filing.

WHEREFORE, the Court should forthwith overrule the objection to Claim Number

7968.

CHAMPION & ASSOCIATES, P.C.
By its attorneys,


/s/ Francis J. Trzuskowski
Francis J. Trzuskowski, Esquire [#189]
ELZUFON AUSTIN REARDON
TARLOV & MONDELL, P.A.
Fox Run Business Park
2500 Wrangle Hill Road, Suite 210
Bear, DE 19701
(302) 327-1100 (telephone)
(302) 327-1101 (fax)
fjt@elzufon.com

/s/ Robert A. McCall
Robert A. McCall (pro hac vice pending)
PEABODY & ARNOLD LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
(617) 951-2100 (telephone)
(617) 951-2125 (fax)
rmccall@peabodyarnold.com

Dated:  March 30, 2009

699432_1

-8-

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>AMERICAN MORTGAGE HOLDINGS, INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>Jointly Administered |

**AFFIDAVIT OF ATTORNEY LINDA G. CHAMPION IN RESPONSE TO
DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION TO CLAIMS**

I, Linda G. Champion do hereby depose and state as follows:

1.      I am an attorney in good standing admitted to practice in the Commonwealth of Massachusetts. I am a solo practitioner and maintain my law practice in the name of Champion Law, P.C., formerly Champion & Associates, P.C., a Massachusetts professional corporation.

2.      My practice includes closing residential mortgages for a number of lenders.

3.      The claim of my law firm in this bankruptcy arises out of a real estate closing, which I conducted for the Debtor, American Home Mortgage Corp., but which nonetheless the Debtor failed to fund.[1]

4.      More specifically, this claim relates to a real estate funding transaction that occurred on July 19, 2007 and involved a three-family home located at 607 North Main Street, Brockton, Massachusetts ("607 North Main"). Cletus D. Kawei ("Kawei") and James Paul ("Paul") (collectively, the "Sellers") agreed to sell 607 North Main to Louis Jean Mompoint (the "Buyer") for $505,000.00. The property was encumbered by two mortgages – one granted to

---

[1] The singular term Debtor refers to American Home Mortgage Corp. against which the claim was filed. The collective term Debtors refers to the jointly administered Debtors which have filed the Omnibus Objection.

EMC Mortgage Corporation ("EMC") and the other granted to Harold D. Kahn, Trustee of the Kahn Family Trust. In order to purchase the 607 North Main property, Louis Mompoint sought financing. Buyer obtained an FHA loan commitment from the Debtor for a mortgage in the amount of $497,197.00.

     5.       The Debtor retained my firm to represent its interests in the sale of 607 North Main to the Buyer. After deducting $14,518.60 for lender closing fees and $1,373.52 for two months of escrow from the $497,197.00 loan, the Debtor was required to wire $481,304.88 to my firm to be disbursed in accordance with the HUD statement. The wire from the Debtor was earmarked to pay off the EMC and Kahn Mortgages and to leave the Sellers with $99,041.27 after all settlement charges to the Sellers had been paid.

     6.       The closing was scheduled to go forward on Thursday, July 19, 2007. The Debtor represented to me that it would fund the loan and directed me to proceed with the closing. See Exhibit A.

     7.       During the closing, Kawei (on behalf of himself and Paul) executed a Quitclaim Deed purporting to convey 607 North Main to the Buyer for $505,000.00. By the time the closing was finished, the Plymouth Country Registry of Deeds was closed. It was agreed that the closing documents would be recorded on the following morning, Friday, July 20, 2007, and that Kawei and the Buyer would meet me at the registry. On the morning of July 20, 2007, I drove directly to the Plymouth Country Registry of Deeds where I was met by the Buyer and Kawei. I recorded the Quitclaim Deed, the Mortgage to the Debtor, and a Declaration of Homestead and then traveled back to my office.

     8.       While at the registry, I spoke with the Debtor by telephone; during that conversation I was directed to proceed with recording.

9.      On July 20, 2007, while under the belief that the wire from the Debtor had been credited to the client funds account, I made disbursements from the account in accordance with the HUD settlement statement. The primary disbursements were as follows: $345,246.03 to EMC, $99,041.27 to Kawei and Paul, and $30,000.00 to Kahn.

10.     On July 31, 2007, I discovered that the wire in the amount of $481,304.88 from the Debtor never posted to the account.

11.     I received from the Debtor an email that the Debtor's own computer system account history indicated that the Debtor had "approved" the transaction and designated the transaction as "clear to close." See Exhibit B.

12.     On August 3, 2007, the Debtor's representative wrote to assure me that the Debtor would resend the wire and "I cant [sic] apologize enough...I am working hard to make it right." See Exhibit C. Throughout the next few days, when the wire still did not appear, I continued to contact the Debtor asking for a status. The Debtor never sent the funds though it continued to represent to me that it would.

13.     During these few days, evidence of the dire financial straits that the Debtor found itself in began to unfold. On August 1, 2007, Stewart Title issued a closing alert bulletin notifying its agents that it had "been alerted that [agents] may experience a problem receiving funds from . . . American Home Mortgage Investment Corp." The bulletin instructed me not to accept any further orders or close any further transactions with the Debtor.

14.     On August 2, 2007, the Commissioner of Banks for the Commonwealth of Massachusetts ordered the Debtor to fund the loan. See Exhibit D. The Debtor defied the order and failed to fund the loan.

15.     I then learned that on or about August 6, 2007, the Debtor filed for bankruptcy.

-3-

16.     The Debtor changed its position and informed me that it had suspended the loan.
On or about August 17, 2007, the Debtor executed a discharge of its mortgage and sent the
discharge to me. Because I had funded the loan, the discharge has not yet been recorded.

17.     According to an email from the Debtor, the Debtor's own Vice President for Loan
Administration Support described the transaction as "a dry funding." See Exhibit B.

18.     On or about January 8, 2008, my firm filed claim number 7968.

Signed under the pains and penalties of perjury this 20th day of March, 2009.

_____
Linda G. Champion, Esq.

699263_1

-4-

**EXHIBIT A**

<u>EMAIL CLOSING PACKAGE COVER PAGE</u>

**RECIPIENT INFORMATION:**

| | |
|---|---|
| Recipient Company: | CHAMPION & ASSOCIATES |
| Recipient Contact: | Cecelia |
| Recipient Phone #: | (617) 427-4544 |
| Recipient E-Mail: | cchampion@championlawpc.com |

**SENDER INFORMATION:**

| | |
|---|---|
| Sender Company: | American Home Mortgage |
| Sender Contact: | **Paul Gulczynski** |
| Telephone #: | 781-577-2463 |
| Sender Fax #: | 866-315-7959 |
| Sender Email: | Paul.Gulczynski@americanhm.com |

**LOAN INFORMATION:**

| | |
|---|---|
| Loan Application #: | 0001828991 |
| Borrower(s): | Louis J Mompoint |
| Property Address: City,State and Zip: | 607 North Main Street Brockton , MA   02301 |
| Loan Closing Date: | July 19, 2007 |
| Doc #: | 900278 |

## EXHIBIT A

### American Home Mortgage Loan Closing Instructions

**TO:**  CHAMPION & ASSOCIATES                       DATE:  July 19, 2007
**Address:**  801 - C TREMONT ST              Application #:  0001828991
              Boston, MA 02118               Case #:        251 3288147-703  203(b)
**Tel #:**    617-427-4544                   **APPLICANTS:**
**Fax#:**     617-812-5680                   Louis J Mompoint
Closing Date: July 19, 2007
Funding Date: July 19, 2007
**PROPERTY:**
607 North Main Street
Brockton, MA 02301


American Home Mortgage requests that you act as our agent to close the above referenced
loan in accordance with the following instructions.  If you are unable to adhere to
all of the numbered instructions set forth below and addendum(s), do not close this
loan or disburse funds.  Instead, call **Paul Gulczynski** at 781-577-2463 or fax at
866-315-7959.

**1. LOAN TERMS:**
Lender: American Home Mortgage
Loan Amount: 497,197.00                      No. of Payments:  360
Loan Type: FHA Fixed Rate Mortgage          P&I:              3,266.23
Payment Frequency: Monthly                   Maturity Date:    08/01/2037
Interest Rate: 06.875                        Sales Price:      505,000.00
First Pay Date: 09/01/2007                   Ppty Type/Occ.:   3 Family/Primary Home
Riders: -1 to 4 Family                       Lock Exp. Date:   07/30/2007

**2. LOAN CLOSING:**

This loan must close on July 19, 2007, and fund on July 19, 2007. If the loan can not
be closed or funded please call **Paul Gulczynski at the number indicated above.** You are
authorized to close this loan and disburse the loan proceeds_only_ after you have
secured and/or complied with all of the requirements of these loan closing
instructions! **Failure to comply with these instructions will result in a claim against
the settlement agent.**

3.  The documents necessary for closing this loan are enclosed. Please provide the
borrower(s) with a copy of all documents executed at closing. **You agree to return the
closed loan package including, ONE ORIGINAL NOTE, ONE CERTIFIED TRUE COPY OF THE
MORTGAGE/DEED OF TRUST, ONE ORIGINAL OF ALL OTHER DOCUMENTS INCLUDED IN THIS PACKAGE,
in accordance with these instructions within 24 hours of funding.** Return to :
American Home Mortgage, File Management Mail Stop 100, 520 Broadhollow Road, Melville,
NY 11747.

4.  A HUD-1 Settlement Statement reflecting the fees owed and paid to date is included
with the loan documents provided.  **DO NOT UNDER ANY CIRCUMSTANCES CHANGE THE AMOUNTS
SET FORTH ON THE HUD-1 PROVIDED WITHOUT LENDER APPROVAL.** Any unauthorized changes to
the HUD-1, or to the fees being charged by Lender or Lender's correspondent, will
result in a claim by Lender against the Settlement Agent.

**5. ESCROW IMPOUNDS FOR TAXES AND/OR INSURANCE.**

All taxes, bonds and assessments coming due on or before **09/01/2007** must be paid at
closing and are not included in the escrow account being established by the Lender.

**6.  ADDITIONAL REQUIREMENTS/INFORMATION**

Please see attached Closing Costs/Wire Transfer Information, **ADDENDUM A**
Please see attached Underwriting/Closing Contingencies, **ADDENDUM B**
Please see attached Power of Attorney Instructions, **ADDENDUM E**

**IMPORTANT: RETURN WIRE INFORMATION**
If you received the loan proceeds via wire, and the loan has either adjourned or will
not fund by the actual or estimated funding date, you must immediately return the funds
to the warehouse bank account from which the wire originated. If you have any
questions, please call the Treasury Help Desk at 1-866-226-1997.

**NOTE: Failure to return funds in a timely manner will result in a claim by Lender
against the Settlement Agent. You will be charged for all interest that accrues as
the result of your failure to return wired funds in a timely manner.**

**EXHIBIT A**
ADDENDUM I

**Closing Costs/Wire Transfer Information:**                  Application #:  0001828991

**Borrower and Property Information:**

**Borrower(s):**                                    **Property:**
(M,N)    Louis J Mompoint                           607 North Main Street
                                                    Brockton,MA 02301


**Title Company:**                                  **Settlement Agent:**
Champion & Associates                               CHAMPION & ASSOCIATES
801 Tremont Street Ste C                            801 - C TREMONT ST
Boston,MA 02118                                     Boston,MA  02118
Contact: Cecelia                                    Contact:  Cecelia
Telephone: (617) 427-4544                           Telephone:  (617) 427-4544
Fax: (617) 812-5680                                 Fax:  (617) 812-5680

**Wire Instructions:**
Financial Institution:        SOVEREIGN BANK
ABA #:                        011075150
Account Name:                 CHAMPION REAL ESTATE IOLTA
Account #:                    56600227948
Attention:

**IMPORTANT:  If you do not receive the wire, please call the Treasury Help Desk at
1-866-226-1997. - ALL OTHER QUESTIONS RELATING TO THE FUNDING should be directed to Paul
Gulczynski at 781-577-2463 ext. 000-000-0000.**

**At the time of closing the following fees are due and have been deducted from the loan
amount.**

| Fee Section: | Total Fee | Borrower | Seller | Vendor |
|---|---|---|---|---|
| Origination Fee | $4,898.50 | 4,898.50 | .00 | American Home Mortgage |
| Discount Pts | $0.00 | .00 | .00 | American Home Mortgage |
| Appraisal Fee | $545.00 | 545.00 | .00 | |
| Credit Report | $8.25 | 8.25 | .00 | |
| Document Prep Fee | $65.00 | 65.00 | .00 | American Home Mortgage |
| DU/LP Fee | $21.70 | 21.70 | .00 | _____ |
| Underwriting Review | $300.00 | 300.00 | .00 | American Home Mortgage |
| Prepaid Int.(013 Days) | $1,217.45 | 1,217.45 | .00 | American Home Mortgage |
| Misc Insur Prem | $7,347.75 | 7,347.75 | .00 | American Home Mortgage |
| MERS Registration Fee | $3.95 | 3.95 | .00 | _____ |
| Tax Service | $92.00 | .00 | 92.00 | |
| Flood Hazard Fee | $19.00 | 19.00 | .00 | |
| **TOTAL FEES:** | $14,518.60 | | | |

**LESS POC/COUPONS/CREDITS:**
Paid on Account            $0.00
**TOTAL PREPAIDS**         $0.00


**TOTAL DUE:**      $14,518.60


**Escrow Breakdown:**
State/County Tax   2 mos @ $376.93      $753.86
Haz. Insurance     2 mos @ $309.83      $619.66

SUB TOTAL ESCROWS                     $1,373.52
AGGREGATE ESCROW ADJ.                     $0.00
**TOTAL ESCROW**                      $1,373.52

The loan will be funded as follows:
Loan Amount                          $497,197.00
**LESS** Lender Closing Fees          $14,518.60
**LESS** Escrow                        $1,373.52
**NET PROCEEDS DUE BORROWER**        $481,304.88
**PLUS** Mortgage Tax                      $0.00
**PLUS** Assignment Recording Fees         $0.00
**PLUS** Broker Premium by Lender          $0.00
**PLUS** Attorney Fees                     $0.00
**PLUS** Other
**TOTAL AMOUNT OF WIRE**             $481,304.88

EXHIBIT A

Addendum B Underwriting/Closing Stipulation(s)                    Application # 0001828991

The following documents or conditions must be satisfied and/or presented at time of closing.  In the event
you are unsure of the acceptability of any document(s) you must contact the Lender.  In no event may you
accept any alternative document(s) or unilaterally waive any requirement unless written authorization is
provided to you by the Lender.

**All of the documents provided herewith are required to be signed, regardless of
whether they appear to be duplicates previously provided to the borrower(s).**

**Stipulations to be satisfied:**
If a Power of Attorney is to be used in connection with this loan closing, you must
follow the document execution instructions set forth on **ADDENDUM "E"**.

1. ALTA 8.1 (PA 900)

2. The Settlement Statement prepared by the closing agent must reflect receipt
of the Ameridream Grant in the amount of $26,750.00.

3. Borrower's credit from seller not to exceed 6% or actual closing
costs/pre-paids, whichever is less.

4. Borrower paid closing costs must equal $ N/A.

5. Documents start expiring on 08/01/2007.  If loan does not close by this date
you may be required to provide more current information or assistance.

6. 92900A Addendum to Loan Application be signed by borrower(s) in two places
on page 2 and in one place on page 4.

7. Borrowers to sign HUD Hotel Transient Form for 2-4 Family Properties.

8. The Interest Rate/Fee Agreement , which details the interest rate and points
for the loan, must be signed by the borrower.

9. Subordinate financing is not permitted.

10. If there are significant changes in the information provided on the original
loan application, changes in the terms of the mortgage requested, or if there
is a problem with the appraisal of your property, you may have to requalify for
your loan.

11. All borrowers and interviewer to sign and date initial loan application.

12. Provide a satisfactory Property Location Survey of the subject property.

13. Verify Proof of Delivery for initial Truth-in-Lending Disclosure Statement
in accordance with Regulation-Z.

14. An insurance binder must be presented prior to closing, together with a
receipt indicating that the first year's premium has been paid. We require
coverage to be the lesser of 100% of the insurable value of improvements or the
unpaid principal balance of the mortgage, as long as it equals 80% of the
insurable value of the improvements required to compensate for damage or loss
on a replacement cost basis. The deductible will be the higher of $1000 or 1%
of the face value of the policy. However for wind or hail coverage, the
deductible may be higher of the $2000 or 2% of the face amount of the policy.
The mortgagee named on the policy must read:   American Home Mortgage its
successors and/or assigns, 538 Broadhollow Rd Melville, NY, 11747. If this
property falls within a flood designated area, we must receive an original
flood insurance policy or binder satisfactory to us, evidencing coverage as
stated above to a maximum of $250,000 per dwelling, together with proof of
payment of the first annual premium. Hazard Insurance Policies must be for
extended coverage issued by a company having an AM Best Rating of ""A"" or
better covering the dwelling securing your loan. The insurer must be licensed
to transact business in the jurisdiction where your dwelling is located.
Flood Insurance Policies must be issued by the National flood Insurance Program
(NFIP) or by an insurer licensed to transact business in the jurisdiction where
your dwelling is located.

## EXHIBIT A

**Additional Terms and Conditions Attachment (Continued)**

15. Estimated HUD 1 subject to lender review and approval. Proposed HUD 1 to be faxed to ^closer^ at ^fax #^ If any fee changes on the HUD-I from our closing instructions,please alert American Home Mortgage as a new TIL/HELOC Agreement will need to be issued for borrower's signature(s.) If Title/Escrow fails to notify the Lender of these changes, they will be responsible for any fees or changes required as a result of compliance issues caused by the unreported fee changes.

16. IMPORTANT.  A settlement fee of $375.00 has been used in calculating the Finance charges and APR set forth on the Truth in Lending Disclosure (TIL) or HELOC Agreement included with these instructions. If for any reason the fee(s) you are charging (in the aggregate) as Settlement Agent exceed this amount you must contact the closer/funder listed on Page 1 of these instructions, and receive a revised TIL or HELOC Agreement for the borrowers signatures prior to funding this loan.

17. Fax the completed HUD-1 ^ documents^ to ^closer^ for review and approval, to ^fax^ . THIS LOAN WILL NOT FUND UNTIL THESE DOCUMENTS HAVE BEEN REVIEWED AND DEEMED ACCEPTABLE.

18. Title company to add legal description to all recordable documents

19. Short Form ALTA must be issued in place of standard ALTA and RETURNED AS PART OF THE CLOSED LOAN FILE.

20. DO NOT DISBURSE UNTIL YOU RECEIVE APPROVAL FROM ^Lender^.  Please fax the following executed documents to ^closer fax number^ prior to funding:  Fully executed ^ termite report (must be signed by both borrowers and sellers if applicable), Hotel & Transient (if applicable), Notice to Homeowners Re: Assumption and HUD-1 Addnedum signed by all parties. Edit and/or list all other docs^, and return all originals with the closing package.

21. Settlement Company must contact AHM closer if the loan does not close as scheduled.

22. Settlement Agent to provide certified copies of Executed Deed/Mortgage and Final Executed Contract with all Addendums with the closing package.

23. Collect and forward Hazard Insurance premium for 07/18/2008 in the amount of $3718.00 to Dailey Tax and Insurance.  Amount collected must be on the HUD.

24. Return executed closing package within 24 hours of funding via overnight mail to American Home Mortgage, 520 Broadhollow Road, Mail Stop 100, File Management Group, Melville, NY 11747

25. Provide original of the following documents: FHA Amendatory Clause containing original signatures of Buyer & Seller. Provide four FHA disclosures containing borrowers' original signature.

26. Closing - Other documents missing.  .
Sales contract needs to be signed by the POA.  Obtain a copy of the other seller POA at closing

27. Sales Contract missing or incorrect. Sales contract must reflect name of all Sellers including James Paul.  James to sign sales contract as Seller. Borrower to initial correction to contract.

28. Collect real estate taxes for  08/1/2007 in the amount of 1130.79 .  Tax amount should be reflected on HUD or if already paid show as POC on HUD

29. Subject property is located in a state having regulations on predatory lending associated to a prepayment penalty amount.  APR can not exceed 8 percent, if locked with a prepay.  ^insert text^.

30. Borrower paid Mortgage Insurance is required.  Monthly payment of $203.14 and Upfront payment of $7,347.75, of which $7,347.00 is financed into the loan based on factor of .50% is required.  Annual premiums, if applicable, must be collected at time of closing.

**Additional Terms and Conditions Attachment (Continued)**

31. Settlement Agent is required to ensure that the subject property is being purchased from the owner of record and that the transaction may not involve any sale or assignment of the sales contract

32. Documentation evidencing the borrower's identity is required

33. Evidence of payoff of any outstanding judgments shown on the credit   report is required, if applicable.  An explanation for major  derogatory credit, such as judgments and collections, and minor  indications within the past two years is require

## EXHIBIT B

**From:** Susan K. Brown [mailto:Susan.Brown@americanhm.com]
**Sent:** Monday, November 19, 2007 1:18 PM
**To:** Stroup, Ron
**Cc:** Laura Ogden; Roger Kistler; Kelli Kysela
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Ron,

If this ended up being a dry funding and the mortgage ended up being recorded, we can execute a release. We will need a title report to show the info on the AHM mortgage recording. Let Roger or Kelli know if you need this done.

Susan K. Brown
Vice President
Loan Administration Support
American Home Mortgage Servicing, Inc. D.I.P.
4650 Regent Blvd, Suite 100
Irving, Texas 75063
Direct (214) 260-8932
Toll Free (877) 304-3100
Cell (214) 254-8259
Fax (866) 321-9774
E-mail Susan.Brown@americanhm.com


**From:** Laura Ogden
**Sent:** Monday, November 19, 2007 12:13 PM
**To:** Susan K. Brown
**Subject:** FW: Mompoint-607 North Main Street, Brockton,Mass

Forgot to include you. Just an fyi


Laura
631 390-1454  Direct Dial
631 252-9714  Cell


**From:** Laura Ogden
**Sent:** Monday, November 19, 2007 1:12 PM
**To:** 'Stroup, Ron'
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Ron,

## EXHIBIT B

Someone attempted to readvance the loan after 8/3 but from what I can tell funds never went out on this loan since there is no date/time or Fed Reference # in UniFi.   Unfortunately, nothing we can do about refi'ing.

| Modification History for Application Status | | | | | ☒ |
|---|---|---|---|---|---|
| Date Modified | Time Modified | By | Old Value | New Value | |
| 08/08/2007 | 10:34:11 AM | crudzins | 30 - Pending Decision | 35 - Suspended | |
| 08/08/2007 | 10:33:56 AM | crudzins | 53 - Close Docs | 30 - Pending Decision | |
| 07/19/2007 | 2:59:36 PM | PGulczyl | 50 - Clear to Close | 53 - Close Docs | |
| 07/19/2007 | 1:36:18 PM | mvern | 40 - Approved | 50 - Clear to Close | |
| 07/03/2007 | 9:58:57 AM | mvern | 30 - Pending Decision | 40 - Approved | |
| 06/27/2007 | 2:40:12 PM | lsoft | 10 - Registered | 30 - Pending Decision | |
| 06/27/2007 | 2:39:50 PM | | 0 | 10 - Registered | |

| OK | Cancel |
|---|---|

**EXHIBIT B**

| | |
|---|---|
| Wire Date | |
| Wire Time | |
| Funding Date | |
| Wire Sent | 401 004 88 |
| y Only) | |
| Federal Reference Number | |

| or choose an option from the menu | Retail | | Suspended | 0001828991 | Mompoint, Louis |
|---|---|---|---|---|---|

Laura
631 390-1454  Direct Dial
631 252-9714  Cell

**From:** Stroup, Ron [mailto:Ronald.Stroup@imb.com]
**Sent:** Monday, November 19, 2007 12:33 PM
**To:** Laura Ogden
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Excellent-thanks-

## EXHIBIT B

**From:** Laura Ogden [mailto:Laura.Ogden@americanhm.com]
**Sent:** Monday, November 19, 2007 12:32 PM
**To:** Stroup, Ron
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Let me do a little research and I'll get back to you.


Laura
631 390-1454  Direct Dial
631 252-9714  Cell



**From:** Stroup, Ron [mailto:Ronald.Stroup@imb.com]
**Sent:** Friday, November 16, 2007 3:11 PM
**To:** Laura Ogden
**Cc:** James, Jacqueline
**Subject:** FW: Mompoint-607 North Main Street, Brockton,Mass

Laura-can you assist?

**From:** Susan K. Brown [mailto:Susan.Brown@americanhm.com]
**Sent:** Friday, November 16, 2007 3:05 PM
**To:** Stroup, Ron; Roger Kistler
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

I would start with Laura Ogden.  She would need to confirm the loan in fact did not fund and would advise next step.

Susan K. Brown
Vice President
Loan Administration Support
American Home Mortgage Servicing, Inc. D.I.P.
4650 Regent Blvd, Suite 100
Irving, Texas 75063
Direct (214) 260-8932
Toll Free (877) 304-3100
Cell (214) 254-8259
Fax (866) 321-9774
E-mail Susan.Brown@americanhm.com



**From:** Stroup, Ron [mailto:Ronald.Stroup@imb.com]
**Sent:** Friday, November 16, 2007 2:03 PM
**To:** Susan K. Brown; Roger Kistler

## EXHIBIT B

**Cc:** James, Jacqueline
**Subject:** FW: Mompoint-607 North Main Street, Brockton,Mass

      Jackie-can you provide a loan #.
Susan. This may not be your area-but if you can point us in the right direction....
This client closed with american home on july 19th. The atty went to record and funded-she saw a wire from ahm hit her acct-but then the money was pulled back.
Ahm has the mortgage-but atty is out $400k+
I advised her to go through the bankruptcy courts-but she wants to see if we can refinance the client.
Any idea where I should go to start researching this.


**From:** James, Jacqueline
**Sent:** Friday, November 16, 2007 2:52 PM
**To:** Stroup, Ron
**Subject:** Mompoint-607 North Main Street, Brockton

Hi Ron, regarding the Mompoint situation, property at 607 North Main Street, Brockton; the attorney said AHM is holding the note and the FHA Case # is 2513288147703.

Thanks

**EXHIBIT C**

**From:** Linda Champion [mailto:lchampion@championlawpc.com]
**Sent:** Friday, August 03, 2007 1:59 AM
**To:** 'Ronald Stroup'; 'jyjames@comcast.net'; 'ronstroup@hotmail.com'
**Cc:** 'Wiggins, Nicole'
**Subject:** RE: Loan Number 001828991 - FHA 251-3288147-703

Thank you very much.  Please provide me with a status update.  I need to inform Sovereign Bank ASAP.

---

**From:** Ronald Stroup [mailto:RStroup@americanhm.com]
**Sent:** Friday, August 03, 2007 1:54 AM
**To:** Linda Champion; jyjames@comcast.net; ronstroup@hotmail.com
**Subject:** RE: Loan Number 001828991 - FHA 251-3288147-703

Linda-I am all over this as well as Jackie-I have already asked my ops team to make this a major priority.
I cant apologize enough
Jackie had no idea-none of us did.
I am working had to make this right and will do my best.
My cell # is 508-294-3372 if you would call me tomorrow.thanks-

---

**From:** Linda Champion [mailto:lchampion@championlawpc.com]
**Sent:** Friday, August 03, 2007 1:52 AM
**To:** jyjames@comcast.net; ronstroup@hotmail.com
**Cc:** Ronald Stroup
**Subject:** RE: Loan Number 001828991 - FHA 251-3288147-703
**Importance:** High

Jackie,

Please provide me with contact numbers for the proper departments at Amercian Home Mortgage to address this matter.

Part of the transaction funded and the other part did not fund.

Thank you.

Linda G. Champion, Esq.

---

**From:** jyjames@comcast.net [mailto:jyjames@comcast.net]
**Sent:** Friday, August 03, 2007 1:38 AM
**To:** ronstroup@hotmail.com
**Cc:** RStroup@americanhm.com; lchampion@championlawpc.com
**Subject:** FW: Loan Number 001828991 - FHA 251-3288147-703

Hi Ron, this was sent from the attorney this evening.  Please see note below.

Thanks

-------------- Forwarded Message: --------------
From: "Linda Champion" <lchampion@championlawpc.com>

## EXHIBIT C

To: <Carolyn.Smith@americanhm.com>, <danielle.suech@americanhm.com>,
<Jacqueline.James@americanhm.com>, <jyjames@comcast.net>
Cc: "'Wiggins, Nicole'" <NWiggins@sovereignbank.com>
Subject: FW: Loan Number 001828991 - FHA 251-3288147-703
Date: Fri, 3 Aug 2007 01:57:52 +0000
Please be advised that this transaction for:

Borrower:  Louis J. Mompoint
Seller:  Cletus D. Kawei and James Paul
Loan Amount:  $497,197.00
Wire Amount:  $481,304.88
Closing Date:  July 19, 2007

The Wire Amount although informed that it was being funded did not post to the account.  Based upon
inaccurate information from American Home Mortgage's processor we delayed going on record until July
20, 2007 to allow all funds to post.  We disbursed pursuant to the HUD Settlement Statement however we
were informed today by Sovereign Bank of an error impacting our IOLTA Client Funds Account.  An audit
of the account revealed that the funds in the amount of $481,304.88 did not post.  We are asking
Sovereign Bank for 72 hours to allow American Home Mortgage to fund this transaction.   Otherwise all of
the wires will be reversed and all parties will be notified to return all funds to this office.

Please wire funds immediately to:  Champion & Associates, Real Estate IOLTA.  ABANo. 011075150
AcctNo. 56600227948.

Linda G. Champion
Champion & Associates, P.C.
801-C Tremont Street
Boston, MA 02118
T: 617.427.4544
C: 617.877.0363
F: 617.812.5680
http://championlawpc.com



**EXHIBIT D**
# COMMONWEALTH OF MASSACHUSETTS
### OFFICE OF CONSUMER AFFAIRS AND BUSINESS REGULATION
10 Park Plaza - Suite 5170, Boston MA 02116
(617) 973-8700 FAX (617) 973-8799
TTY/TDD (617) 973-8790
www.mass.gov/consumer

DEVAL L. PATRICK
GOVERNOR

TIMOTHY P. MURRAY
LIEUTENANT GOVERNOR

DANIEL C. CRANE
DIRECTOR

**FOR IMMEDIATE RELEASE:**
August 02, 2007

**CONTACT:**
Kimberly Haberlin
(617) 973-8767

### Division of Banks Announces Actions Against Several Mortgage Entities

The Division of Banks (Division) today issued a cease and desist order against American Home Mortgage Investment Corporation's three licensed subsidiaries: American Home Mortgage Corporation, also doing business as American Brokers Conduit, American Home Mortgage Acceptance, Inc., and American Home Mortgage Ventures, LLC. (collectively referred to as American Home). An additional cease and desist order was issued to the unrelated company, Alliance Mortgage Banking Corporation (Alliance Capital).

American Home

American Home is a licensed mortgage lender and mortgage broker headquartered in Melville, New York with several branch offices located in Massachusetts. Over the past few weeks, American Home has endured significant financial losses due to mandatory loan buybacks and margin calls.

Today's action resulted from American Home's severe financial weaknesses and inability to timely fund loans. Thirty-eight loans in Massachusetts were scheduled to close this week but were not funded. The Division acted to prohibit American Home from accepting new applications due to serious concerns about the company's financial condition and to protect Massachusetts consumers from any further harm.

Similar action against American Home was coordinated with several other state bank and mortgage regulators. The Division's Order requires the company to either immediately fund all closed and approved loans on the committed terms or place all remaining loans with a qualified lender with no loss to consumers. The Order also forbids the company from initiating any new mortgage loan transactions.

Resources for Consumers

In anticipation of the number of customers impacted by the closing of American Home, the Division has been working with representatives of the mortgage lending industry to identify mortgage lenders and mortgage brokers willing to take former customers of American Home.

If a consumer has a pending application with American Home, they are urged to contact their mortgage broker, if applicable, to place the loan with a qualified lender. Alternatively, consumers can call the Division's Mortgage Hotline at (**800) 495-2265, extension 1501.**

"The hotline is an important consumer resource and I encourage all individuals with concerns to call," said Commissioner of Banks Steven L. Antonakes. "The Division of Banks is working with

**EXHIBIT D**

other licensed mortgage lenders and mortgage brokers in Massachusetts to assist consumers impacted by the problems with American Home."

In addition, any time a consumer believes they have been a victim of unfair or deceptive practices in a residential mortgage transaction, they should call the Mortgage Hotline.

Alliance Capital

Alliance Capital is a licensed mortgage lender and broker based in Levittown, New York. The order was issued due to the company's failure to notify the Division of regulatory action in another state and financial weaknesses stemming from the termination of their existing line of credit. No Massachusetts loans are in the pipeline or remain unfunded.

## EXHIBIT D

### COMMONWEALTH OF MASSACHUSETTS

**Suffolk, SS.**

**COMMISSIONER OF BANKS
MORTGAGE LENDER AND
MORTGAGE BROKER
LICENSING
Docket No. 2007-022**

### FINDINGS OF FACT AND TEMPORARY ORDER TO CEASE AND DESIST

In the Matter of
AMERICAN HOME MORTGAGE CORP. d/b/a American Brokers Conduit;
Melville, New York
Mortgage Company License No(s). MC1368, *et al.*

and its affiliates,
AMERICAN HOME MORTGAGE ACCEPTANCE, INC.;
Melville, New York
Mortgage Lender License No. ML2664, and

AMERICAN HOME MORTGAGE VENTURES LLC
Melville, New York
Mortgage Company License No. MC5032

The Commissioner of Banks ("Commissioner") having determined that (a) AMERICAN HOME MORTGAGE CORP. d/b/a AMERICAN BROKERS CONDUIT, ("American Home Mortgage" or the "Corporation"); (b) AMERICAN HOME MORTGAGE ACCEPTANCE, INC. ("American Home Mortgage Acceptance"); and (c) AMERICAN HOME MORTGAGE VENUTURES LLC ("American Home Mortgage Ventures"), all of which are located at 538 Broadhollow Road, Melville, New York, have engaged in, or are engaging in, or are about to engage in, acts or practices constituting violations of Massachusetts General Laws chapter 255E and applicable regulations found at 209 CMR 42.00 *et seq.*, hereby issues the following FINDINGS OF FACT AND TEMPORARY ORDER TO CEASE AND DESIST ("Temporary Order") pursuant to General Laws chapter 255E, section 7(b).

### FINDINGS OF FACT

1. The Division of Banks ("Division"), through the Commissioner, has jurisdiction over the licensing and regulation of persons and entities engaged in the business of a mortgage lender and mortgage broker in Massachusetts pursuant to Massachusetts General Laws chapter 255E, section 2.

2. American Home Mortgage, American Home Mortgage Acceptance, and American Home Mortgage Ventures are, and at all relevant times, have been affiliated, foreign corporations conducting business in the Commonwealth of Massachusetts with main offices located at 538 Broadhollow Road, Melville, New York.

3. American Home Mortgage is licensed by the Commissioner as a mortgage lender and mortgage broker under Massachusetts General Laws chapter 255E, section 2. According to records maintained on file with the Division, the Commissioner initially issued a mortgage company license to American Home Mortgage to engage in the business of a mortgage lender and mortgage broker in Massachusetts on or about March 21, 2000, with license no. MC1368.

4. American Home Mortgage Acceptance is an affiliate of American Home Mortgage and is licensed as a mortgage lender under Massachusetts General Laws chapter 255E, section 2. According to records maintained on file with the Division, the Commissioner initially issued a mortgage lender license to American Home Mortgage Acceptance to engage in the business of a mortgage lender on or about August 17, 2004, with license no. ML2664.

5. American Home Mortgage Ventures is an affiliate of American Home Mortgage and is licensed as

# EXHIBIT D

a mortgage lender and mortgage broker under Massachusetts General Laws chapter 255E, section 2. According to records maintained on file with the Division, the Commissioner initially issued a mortgage broker and mortgage lender license to American Home Mortgage Acceptance to engage in the business of a mortgage lender on or about July 24, 2007, with license no. MC5032.

6. American Home Mortgage operates additional office locations from which the Corporation conducts its Massachusetts mortgage lender and mortgage broker business. According to records maintained on file with the Division, American Home Mortgage currently possesses forty four (44) additional mortgage lender and mortgage broker licenses from the Commissioner for locations operated both in Massachusetts as well as outside the Commonwealth.

7. American Home Mortgage is a wholly-owned subsidiary of American Home Mortgage Holdings, Inc., which, in turn, is a wholly-owned subsidiary of American Home Mortgage Investment Corp., a publicly traded company listed on the New York Stock Exchange.

**A. Failure to Fund Certain Residential Mortgage Loan Obligations in Massachusetts**

8. On July 31, 2007, representatives from the Division, by and through discussions held with representatives of other state banking and mortgage lending regulators, contacted American Home Mortgage to schedule a telephone conference call to be held on August 1, 2007 with senior executives of American Home Mortgage, to discuss concerns regarding the Corporation's financial condition and its apparent inability to fund mortgage loans ("August 1, 2007 teleconference").

9. During the August 1, 2007 teleconference, the Division requested that American Home Mortgage provide a pipeline report regarding mortgage loans involving residential property in Massachusetts. In response to that request, on August 1, 2007, American Home Mortgage provided the Division with a pipeline report that indicated that, as of July 31, 2007, the Corporation failed to disburse loan proceeds, or is about to fail to disburse loan proceeds, or otherwise fund, as many as thirty-eight (38) mortgage loan transactions involving residential property in Massachusetts for which closings had taken place or are scheduled to occur.

10. Based upon information and belief, the loans referenced in Paragraph 9, have not yet funded as of the effective date of this Temporary Order.

**B. Impairment of Lender Lines of Credit Used to Fund American Home Mortgage's Lending Operations**

11. On July 31, 2007, at approximately 7:28 p.m., American Home Mortgage's counsel faxed to the Division a letter advising the Division that, as of July 31, 2007, American Home Mortgage "has temporarily ceased funding loans due to an inability to draw upon its warehouse facilities."

12. During the August 1, 2007 teleconference, American Home Mortgage's executives stated that they became aware of the impairment of the Corporation's warehouse line of credit on or about July 19, 2007.

13. A line of credit used by a mortgage lender enables the entity to fund mortgage loans prior to selling them to an investor. Without access to its lines of credit, and in the absence of the mortgage lender independently maintaining sufficient reserves and liquidity positions on its books to fund such loans, the mortgage lender would be unable to meet its funding commitments, negating its ability to meet contractual obligations to fund mortgage loans.

14. The Division's regulation at 209 CMR 42.12(1)(e) states, in part:
   1. A Licensee shall notify the Commissioner immediately, and in writing within one business day, of the occurrence of any of the following significant developments: . . . (e) Expiration, termination or default, technical or otherwise, of any existing line of credit or warehouse credit agreement.

15. Prior to the July 31, 2007 letter, American Home Mortgage had not notified the Division of any suspension, default, and/or termination of the Corporation's line(s) of credit.

**C. Failure to Maintain Minimum Standards of Financial Responsibility for Holding a Mortgage Company License in Massachusetts**

16. According to a news release issued by American Home Mortgage Investment Corp. on July 31,

## EXHIBIT D

2007 (the "News Release"), American Home Mortgage was "unable to borrow on its credit facilities and was unable to fund its lending obligations [on July 30, 2007] of approximately $300 million." The News Release also stated that American Home Mortgage did not anticipate funding approximately $450 to $500 million of residential mortgage loan transactions scheduled for July 31, 2007.

17. The News Release stated that American Home Mortgage's "lenders have initiated margin calls in response to the decline in the collateral value of certain of the [Corporation's] loans and securities held in its portfolio." The News Release further stated that the Corporation "has received and paid very significant margin calls in the last three weeks and has substantial unpaid margin calls pending."

18. During the August 1, 2007 teleconference, American Home Mortgage reported that, in the absence of obtaining additional funding facilities, American Home Mortgage's current liquidity position would not permit American Home Mortgage to satisfy current margin calls or to honor repurchase obligations from its investors.

19. On or about July 27, 2007, the New York Stock Exchange temporarily halted trading in shares of American Home Mortgage Investment Corp. On or about July 31, 2007, trading in such shares resumed.

**D. Engaging in Unsafe and Unsound Practices in the Operation of the Licensed Business**

20. On August 1, 2007, pursuant to a conference call held with other state banking and mortgage lending regulators, the Division was informed that American Home Mortgage failed to fund mortgage loans on residential property in the state of Connecticut.

21. On August 1, 2007, the Connecticut Banking Department provided the Division with American Home Mortgage's pipeline report relative to mortgage loans involving residential property in the state of Connecticut, which had been prepared and submitted by the Corporation to Connecticut regulators. The pipeline report indicates that the Corporation failed to fund as many as forty-two (42) closed loans.

22. During the August 1, 2007 teleconference, executives of American Home Mortgage stated that the Corporation has no funding source in place that would enable the Corporation to fund the closed loans in the pipeline, absent intervention from an outside investor.

23. On August 1, 2007, Counsel to American Home Mortgage sent an email to Connecticut regulators regarding the Corporation and requested that the email be distributed to other regulators. The email was received by the Division on the evening of August 1, 2007. The email reported that the Corporation "is in discussions with several national lenders regarding transferring some or all of its pipeline so that loans can continue to be processed, underwritten and funded."

## CONCLUSIONS OF LAW

24. Based upon the information contained in Paragraphs 1 through 23, by contracting to originate mortgage loan(s) for which American Home Mortgage did not have sufficient funds available to meet its funding obligations, American Home Mortgage has engaged in unsafe or unsound practices in violation of the Division's regulation 209 CMR 42.04(2)(b)(3).

25. Based upon the information contained in Paragraphs 1 though 23, American Home Mortgage failed to notify the Commissioner, in writing, within one business day of the expiration, termination or default, technical or otherwise, of any existing line of credit or warehouse credit agreement, in violation of the Division's regulation 209 CMR 42.12(1)(e).

26. Based upon the information contained in Paragraphs 1 through 23, American Home Mortgage's acts or practices of contracting with consumer(s), through the underwriting and subsequent execution of mortgage loan closing documents relating to Massachusetts residential property, and thereafter failing to fund the mortgage loan(s) may constitute unfair and/or deceptive acts or practices in violation of Massachusetts General Laws chapter 93A, section 2.

27. Based upon the information contained in Paragraphs 1 through 23, due to the delay and/or failure in funding contractual mortgage loan obligations American Home Mortgage has harmed consumers, mortgage brokers, and/or other parties in as many as thirty- eight (38) residential

# EXHIBIT D

mortgage loan transactions in the Commonwealth by engaging in acts or practices which may be unfair and/or deceptive in violation of Massachusetts General Laws chapter 93A, section 2.

28. Based upon the information contained in Paragraphs 1 through 23, American Home Mortgage has failed to maintain the financial responsibility, character, reputation, integrity, and general fitness that would warrant the belief that the business will be operated honestly, fairly, and soundly in the public interest in violation of Massachusetts General Laws chapter 255E, section 4 and the Division's regulation 209 CMR 42.03(2)(c) and 209 CMR 42.06(2)(c).

29. Based upon the information contained in Paragraphs 1 through 23, due to the relationship of the officers, directors, and principals of American Home Mortgage and American Home Mortgage Acceptance, the Division is unable to conclude that American Home Mortgage Acceptance has demonstrated the financial responsibility, character, reputation, integrity, and general fitness that would warrant the belief that the business will be operated honestly, fairly, and soundly in the public interest in violation of Massachusetts General Laws chapter 255E, section 4 and the Division's regulation 209 CMR 42.03(2)(c).

30. Based upon the information contained in Paragraphs 1 through 23, due to the relationship of the officers, directors, and principals of American Home Mortgage and American Home Mortgage Ventures, the Division is unable to conclude that American Home Mortgage Ventures has demonstrated the financial responsibility, character, reputation, integrity, and general fitness that would warrant the belief that the business will be operated honestly, fairly, and soundly in the public interest in violation of Massachusetts General Laws chapter 255E, section 4 and the Division's regulation 209 CMR 42.03(2)(c) and 209 CMR 42.06(2)(c).

31. Based upon the information contained in Paragraphs 1 through 23, the Commissioner has determined that:
   a. American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures have engaged in, are engaging in, or are about to engage in, acts or practices which warrant the belief that they are not operating honestly, fairly, soundly and efficiently in the public interest in violation of standards governing the licensing and conduct of a mortgage lender and mortgage broker including, but not limited to, the provisions of the Division's regulations at 209 CMR 42.00 *et seq.*; and
   b. The public interest will be irreparably harmed by delay in issuing an ORDER TO CEASE AND DESIST to American Home Mortgage Acceptance, American Home Mortgage Ventures, and American Home Mortgage.

32. Based upon the information contained in Paragraphs 1 through 23, had the facts and conditions found therein existed at the time of American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' original mortgage lender and/or mortgage broker license application(s), the Commissioner would have been warranted in refusing to issue such license(s). Further, the facts and conditions set forth in Paragraphs 1 through 23 present sufficient grounds for the revocation of American Home Mortgage's American Home Mortgage Acceptance's and American Home Mortgage Ventures' mortgage lender and/or mortgage broker license(s), pursuant to Massachusetts General Laws chapter 255E, section 6 and the Division's regulation at 209 CMR 42.04(2)(b) and 209 CMR 42.07(2)(b).

## ORDER TO CEASE AND DESIST

After taking into consideration the FINDINGS OF FACT and CONCLUSIONS OF LAW stated herein, it is hereby:

33. ORDERED that American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures and any and all officers, directors, employees, independent contractors, or agents operating on behalf of American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures, and their successors or assigns, shall immediately cease engaging in the activities of a mortgage lender and/or mortgage broker, as defined under Massachusetts General Laws chapter 255E, section 1, relative to any residential property in Massachusetts, not otherwise expressly permitted by the terms of this Temporary

**EXHIBIT D**

Order. Therefore, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures are ordered to immediately cease soliciting or accepting, either directly or indirectly, any residential mortgage loan applications from consumers for residential property located in Massachusetts.

34.  IT IS FURTHER ORDERED that American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures, shall immediately place any fees previously collected from Massachusetts consumers relative to any pending mortgage loan applications in a separate escrow account maintained at a federally insured bank.

35.  IT IS FURTHER ORDERED that American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall immediately place with one or more qualified broker(s) or lender(s), with no loss to applicants, the following: (a) American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' entire portfolio of Massachusetts residential mortgage loans which were closed by American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures, and remain unfunded as of the issuance of this Temporary Order; and (b) American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' entire pending application list of Massachusetts residential mortgage loans. It being understood that "no loss to the applicant" shall mean that any loan which was closed by American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures, as well as any application which was approved by American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures, shall be placed to a lender willing to fund, or close, the mortgage loan under the same terms and conditions extended by American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures. In the event that no such placement can be made, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall either independently fund the mortgage loan under such terms and conditions or buy down the mortgage loan offered by the lender so that the applicant does not incur a loss as a result of such placement. American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall obtain the prior approval of the Commissioner before placing such applications to the qualified lender(s) or broker(s) as appropriate.

36.  IT IS FURTHER ORDERED that in any instance in which American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures failed to fund a closed loan and in which the consumer, prior to the effective date of this Temporary Order, obtained funding through an alternate lender, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall reimburse each consumer the amount necessary to put the consumer in the same position as if American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures had funded the mortgage loan under the terms and conditions agreed upon at the closing of the loan.

37.  IT IS FURTHER ORDERED that American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall submit to the Commissioner a detailed record, prepared as of the date of submission, of all of American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' pending residential mortgage loan applications on property located in Massachusetts. The records to be produced shall include all information on file regarding American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' Massachusetts mortgage loan portfolio, including but not necessarily limited to, the following:

   a.  Within one (1) day of the effective date of this Temporary Order, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall submit to the Commissioner all information on file as of the date of submission regarding the American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' portfolio of mortgage loans that were closed by American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures prior to the effective date of this Temporary Order, but remain as yet

**EXHIBIT D**

unfunded. Such information shall include, but is not limited to, the following: The names of all individuals from whom American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures processed an application and closed the residential mortgage loan, but failed to fund; the applicants' addresses and telephone numbers; the loan number; the amount of all prepaid loan fees submitted by the customer; the amount of each loan; the loan terms; the current funding status; the actual closing dates; the loan purpose (i.e. purchase or refinance); and identification of the applicable lender with whom each application will be placed. The record should include telephone numbers of contact persons at each lender who is familiar with American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' submitted loans;

b.  As soon as possible, but not later than five (5) days after the effective date of this Temporary Order, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures e shall submit to the Commissioner all information on file as of the date of submission regarding the American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' pipeline of pending mortgage loan applications including but not limited to, the following: The names of all individuals from whom American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures have accepted an application for a residential mortgage loan; the applicants' addresses and telephone numbers; the loan number; the amount of all prepaid loan fees submitted by the customer; rate lock status; the amount of each loan; application status (i.e. filed, submitted to lenders, cleared to close, etc.); loan terms, if approved; scheduled closing dates; the loan purpose (i.e. purchase or refinance); and identification of the applicable lender or broker with whom each application will be placed. The record should include telephone numbers of contact persons at each lender or broker who is familiar with American Home Mortgage's American Home Mortgage Acceptance's and American Home Mortgage Ventures' submitted loans;

c.  On the last business day of each subsequent week after the effective date of this Temporary Order, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall provide the Commissioner with an updated, written status report of the mortgage loan applications identified above under subparagraphs 37(a) and 37(b). The form of the status report shall follow the format of the initial submission under subparagraphs 37(a) and 37(b) and shall indicate the final disposition of the loan application and include the final terms under which each approved loan is closed. The reporting requirement shall continue until each of the approved applications is placed with a lender and funded, funded by American Home Mortgage, American Home Mortgage Acceptance or American Home Mortgage Ventures, or withdrawn by the applicant(s); and

d.  As soon as possible, but not later than five (5) days after the effective date of this Temporary Order, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall submit to the Commissioner their year-to-date balance sheets and income statements, prepared as of the date of submission and the accuracy of the information reported on the balance sheet and income statement shall be attested to by a duly authorized officer of the entities under the pains and penalties of perjury. The balance sheet shall indicate American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' cash position at each of its depository banks as well as American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' bank account numbers.

38.  IT IS FURTHER ORDERED that American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall not pay or declare a dividend, nor otherwise authorize or execute any financial transaction, either singular or structured, in excess of two hundred and fifty thousand dollars ($250,000.00), except for wages and salaries paid to employees, contractors, officers, or other members of American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' management in the normal course of their business, without the prior written approval of the Commissioner. Upon the

## EXHIBIT D

effective date of this Temporary Order, American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall implement or revise its practices and procedures, as necessary, to ensure that their financial books and records are accurately maintained, in a manner illustrating compliance with the provisions of this Paragraph, and available for review by the Division's examiners upon request.

39. IT IS FURTHER ORDERED that American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures shall immediately secure all pending mortgage loan application files and, to the extent that any original documents must be forwarded to the relevant mortgage lender(s) and or mortgage broker(s) pursuant to Paragraph 35 of this Temporary Order, a copy of such document, correspondence, or paper relating to the mortgage loan shall be retained in American Home Mortgage's, American Home Mortgage Acceptance's and American Home Mortgage Ventures' books and records and shall be available to the Commissioner, in their entirety, upon request.

40. IT IS FURTHER ORDERED that this Temporary Order shall become effective immediately and shall remain in effect unless set aside, limited, or suspended by the Commissioner or upon court order after review under Massachusetts General Laws chapter 30A.

41. IT IS FURTHER ORDERED that a hearing will be scheduled on this matter to determine whether or not such Temporary Order shall become permanent and final only upon receipt of a written request for such a hearing from American Home Mortgage, American Home Mortgage Acceptance and American Home Mortgage Ventures within twenty (20) days of the effective date of this Temporary Order. If no hearing is requested within this twenty (20) day period, this Temporary Order shall become permanent and final until it is modified or vacated by the Commissioner.

BY ORDER AND DIRECTION OF THE COMMISSIONER OF BANKS.

Dated at Boston, Massachusetts, this 2nd day of August, 2007.

By: Steven L. Antonakes
Commissioner of Banks

## EXHIBIT E

### Robert A. McCall

| | |
|---|---|
| **From:** | Robert A. McCall |
| **Sent:** | Thursday, June 05, 2008 11:18 AM |
| **To:** | 'Bartley, Ryan' |
| **Subject:** | RE: American Home Mortgage/Champion & Associates |
| **Attachments:** | AHM Emails2.pdf; AHM Emails1.pdf |

For your reference, I have attached some email from AHM regarding this situation.

Robert A. McCall
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
telephone: (617) 951-2061
fax: (617) 235-3534

**From:** Bartley, Ryan [mailto:RBartley@ycst.com]
**Sent:** Wednesday, June 04, 2008 1:56 PM
**To:** Robert A. McCall
**Subject:** Re: American Home Mortgage/Champion & Associates

Okay. The claims resolution process has recently begun, but I am not actively involved with it. If this claim was subject to an objection, I was going to suggest an adjournment while we attempt to negotiate a resolution.

Ryan M Bartley
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: 302-571-5007
Facsimile: 302-576-3464
RBartley@ycst.com

To ensure compliance with requirements imposed by the Internal Revenue Service in Circular 230 on tax practitioners, we inform you that, unless we expressly state otherwise in this communication (including any attachments), any federal tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or other matter addressed herein.
This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

3/19/2009

## EXHIBIT E

**From:** Robert A. McCall
**To:** Bartley, Ryan
**Sent:** Wed Jun 04 13:52:01 2008
**Subject:** RE: American Home Mortgage/Champion & Associates

Not that I am aware of.


Robert A. McCall
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
telephone:  (617) 951-2061
fax: (617) 235-3534

---

**From:** Bartley, Ryan [mailto:RBartley@ycst.com]
**Sent:** Wednesday, June 04, 2008 1:50 PM
**To:** Robert A. McCall
**Subject:** RE: American Home Mortgage/Champion & Associates

Robert:
I contacted AHM about the claim, and I have been trading voice mails with them regarding this claim.  I will contact you once I hear from them.  Is this claim the subject of a pending objection?

Ryan M Bartley
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: 302-571-5007
Facsimile: 302-576-3464
RBartley@ycst.com

This message may contain confidential attorney-client communications or other protected information. If you believe you are not an intended recipient (even if this message was sent to your e-mail address), you may not use, copy, or retransmit it. If you believe you received this message by mistake, please notify us by return e-mail, and then delete this message. Thank you for your cooperation.

---

**From:** Robert A. McCall [mailto:RMcCall@peabodyarnold.com]
**Sent:** Wednesday, June 04, 2008 5:37 AM
**To:** Bartley, Ryan
**Subject:** American Home Mortgage/Champion & Associates

Ryan,

The is a quick follow up to our telephone conference of last week about my client's claim (#7968).  Please let me know whether

## EXHIBIT E

you have looked into my client's request.  Thanks.

Robert A. McCall
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210-2261
telephone:  (617) 951-2061
fax: (617) 235-3534

To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, Peabody & A

The information contained in this electronic message and any attachments to this message are int


To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, Peabody & A

The information contained in this electronic message and any attachments to this message are int

## EXHIBIT E

**From:** Susan K. Brown [mailto:Susan.Brown@americanhm.com]
**Sent:** Monday, November 19, 2007 1:18 PM
**To:** Stroup, Ron
**Cc:** Laura Ogden; Roger Kistler; Kelli Kysela
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Ron,

If this ended up being a dry funding and the mortgage ended up being recorded, we can execute a release.  We will need a title report to show the info on the AHM mortgage recording.  Let Roger or Kelli know if you need this done.

Susan K. Brown
Vice President
Loan Administration Support
American Home Mortgage Servicing, Inc. D.I.P.
4650 Regent Blvd, Suite 100
Irving, Texas 75063
Direct (214) 260-8932
Toll Free (877) 304-3100
Cell (214) 254-8259
Fax (866) 321-9774
E-mail Susan.Brown@americanhm.com

**From:** Laura Ogden
**Sent:** Monday, November 19, 2007 12:13 PM
**To:** Susan K. Brown
**Subject:** FW: Mompoint-607 North Main Street, Brockton,Mass

Forgot to include you.  Just an fyi

Laura
631 390-1454  Direct Dial
631 252-9714  Cell

**From:** Laura Ogden
**Sent:** Monday, November 19, 2007 1:12 PM
**To:** 'Stroup, Ron'
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Ron,

## EXHIBIT E

Someone attempted to readvance the loan after 8/3 but from what I can tell funds never went out on this loan since there is no date/time or Fed Reference # in UniFi.    Unfortunately, nothing we can do about refi'ing.

| Date Modified | Time Modified | By | Old Value | New Value |
|---|---|---|---|---|
| 08/08/2007 | 10:34:11 AM | crudzins | 30 - Pending Decision | 35 - Suspended |
| 08/08/2007 | 10:33:56 AM | crudzins | 53 - Close Docs | 30 - Pending Decision |
| 07/19/2007 | 2:59:36 PM | PGulczyr | 50 - Clear to Close | 53 - Close Docs |
| 07/19/2007 | 1:36:18 PM | mvern | 40 - Approved | 50 - Clear to Close |
| 07/03/2007 | 9:58:57 AM | mvern | 30 - Pending Decision | 40 - Approved |
| 06/27/2007 | 2:40:12 PM | lsoft | 10 - Registered | 30 - Pending Decision |
| 06/27/2007 | 2:39:50 PM | | 0 | 10 - Registered |

**Modification History for Application Status**

| OK | | Cancel |
|---|---|---|

**EXHIBIT E**

Wire Date

Wire Time

Funding Date

Wire Sent                    481,304.38
Only)
Federal Reference Number

| or choose an option from the menu | Retail | | Suspended | 0001828991 | Mompoint, Louis |

Laura
631 390-1454  Direct Dial
631 252-9714  Cell

**From:** Stroup, Ron [mailto:Ronald.Stroup@imb.com]
**Sent:** Monday, November 19, 2007 12:33 PM
**To:** Laura Ogden
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Excellent-thanks-

## EXHIBIT E

**From:** Laura Ogden [mailto:Laura.Ogden@americanhm.com]
**Sent:** Monday, November 19, 2007 12:32 PM
**To:** Stroup, Ron
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

Let me do a little research and I'll get back to you.


Laura
631 390-1454  Direct Dial
631 252-9714  Cell



**From:** Stroup, Ron [mailto:Ronald.Stroup@imb.com]
**Sent:** Friday, November 16, 2007 3:11 PM
**To:** Laura Ogden
**Cc:** James, Jacqueline
**Subject:** FW: Mompoint-607 North Main Street, Brockton,Mass

Laura-can you assist?

**From:** Susan K. Brown [mailto:Susan.Brown@americanhm.com]
**Sent:** Friday, November 16, 2007 3:05 PM
**To:** Stroup, Ron; Roger Kistler
**Cc:** James, Jacqueline
**Subject:** RE: Mompoint-607 North Main Street, Brockton,Mass

I would start with Laura Ogden.  She would need to confirm the loan in fact did not fund and would advise next step.

Susan K. Brown
Vice President
Loan Administration Support
American Home Mortgage Servicing, Inc. D.I.P.
4650 Regent Blvd, Suite 100
Irving, Texas 75063
Direct (214) 260-8932
Toll Free (877) 304-3100
Cell (214) 254-8259
Fax (866) 321-9774
E-mail Susan.Brown@americanhm.com



**From:** Stroup, Ron [mailto:Ronald.Stroup@imb.com]
**Sent:** Friday, November 16, 2007 2:03 PM
**To:** Susan K. Brown; Roger Kistler

## EXHIBIT E

**Cc:** James, Jacqueline
**Subject:** FW: Mompoint-607 North Main Street, Brockton,Mass

   Jackie-can you provide a loan #.
Susan. This may not be your area-but if you can point us in the right direction....
This client closed with american home on july 19th. The atty went to record and funded-she saw a wire from ahm hit her acct-but then the money was pulled back.
Ahm has the mortgage-but atty is out $400k+
I advised her to go through the bankruptcy courts-but she wants to see if we can refinance the client.
Any idea where I should go to start researching this.

---

**From:** James, Jacqueline
**Sent:** Friday, November 16, 2007 2:52 PM
**To:** Stroup, Ron
**Subject:** Mompoint-607 North Main Street, Brockton

Hi Ron, regarding the Mompoint situation, property at 607 North Main Street, Brockton; the attorney said AHM is holding the note and the FHA Case # is 2513288147703.

Thanks

## EXHIBIT E

**From:** Linda Champion [mailto:lchampion@championlawpc.com]
**Sent:** Friday, August 03, 2007 1:59 AM
**To:** 'Ronald Stroup'; 'jyjames@comcast.net'; 'ronstroup@hotmail.com'
**Cc:** 'Wiggins, Nicole'
**Subject:** RE: Loan Number 001828991 - FHA 251-3288147-703

Thank you very much.  Please provide me with a status update.  I need to inform Sovereign Bank ASAP.


**From:** Ronald Stroup [mailto:RStroup@americanhm.com]
**Sent:** Friday, August 03, 2007 1:54 AM
**To:** Linda Champion; jyjames@comcast.net; ronstroup@hotmail.com
**Subject:** RE: Loan Number 001828991 - FHA 251-3288147-703

Linda-I am all over this as well as Jackie-I have already asked my ops team to make this a major priority.
I cant apologize enough
Jackie had no idea-none of us did.
I am working had to make this right and will do my best.
My cell # is 508-294-3372 if you would call me tomorrow.thanks-


**From:** Linda Champion [mailto:lchampion@championlawpc.com]
**Sent:** Friday, August 03, 2007 1:52 AM
**To:** jyjames@comcast.net; ronstroup@hotmail.com
**Cc:** Ronald Stroup
**Subject:** RE: Loan Number 001828991 - FHA 251-3288147-703
**Importance:** High

Jackie,

Please provide me with contact numbers for the proper departments at Amercian Home Mortgage to address this matter.

Part of the transaction funded and the other part did not fund.

Thank you.

Linda G. Champion, Esq.


**From:** jyjames@comcast.net [mailto:jyjames@comcast.net]
**Sent:** Friday, August 03, 2007 1:38 AM
**To:** ronstroup@hotmail.com
**Cc:** RStroup@americanhm.com; lchampion@championlawpc.com
**Subject:** FW: Loan Number 001828991 - FHA 251-3288147-703

Hi Ron, this was sent from the attorney this evening.  Please see note below.

Thanks

-------------- Forwarded Message: --------------
From: "Linda Champion" <lchampion@championlawpc.com>

## EXHIBIT E

To: <Carolyn.Smith@americanhm.com>, <danielle.suech@americanhm.com>,
<Jacqueline.James@americanhm.com>, <jyjames@comcast.net>
Cc: "'Wiggins, Nicole'" <NWiggins@sovereignbank.com>
Subject: FW: Loan Number 001828991 - FHA 251-3288147-703
Date: Fri, 3 Aug 2007 01:57:52 +0000
Please be advised that this transaction for:

Borrower:  Louis J. Mompoint
Seller:  Cletus D. Kawei and James Paul
Loan Amount:  $497,197.00
Wire Amount:  $481,304.88
Closing Date:  July 19, 2007

The Wire Amount although informed that it was being funded did not post to the account.  Based upon
inaccurate information from American Home Mortgage's processor we delayed going on record until July
20, 2007 to allow all funds to post.  We disbursed pursuant to the HUD Settlement Statement however we
were informed today by Sovereign Bank of an error impacting our IOLTA Client Funds Account.  An audit
of the account revealed that the funds in the amount of $481,304.88 did not post.  We are asking
Sovereign Bank for 72 hours to allow American Home Mortgage to fund this transaction.  Otherwise all of
the wires will be reversed and all parties will be notified to return all funds to this office.

Please wire funds immediately to:  Champion & Associates, Real Estate IOLTA.  ABANo. 011075150
AcctNo. 56600227948.

Linda G. Champion
Champion & Associates, P.C.
801-C Tremont Street
Boston, MA 02118
T: 617.427.4544
C: 617.877.0363
F: 617.812.5680
http://championlawpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2009, a copy of Response of Champion & Associates, P.C. to Debtors' Thirty-First Omnibus Objection to Claims was served via electronic filing upon counsel as follows:

James L. Patton, Jr., Esquire
Robert S. Brady, Esquire
Pauline K. Morgan, Esquire
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Joseph McMahon, Esquire
Office of the United States Trustee
844 King Street, Room 2313
Wilmington, DE 19801

Thomas G. Macauley, Esquire
Zuckerman Spaeder LLP
919 Market Street, Suite 990
Wilmington, DE 19899

Stephen A. Weisbrod, Esquire
W. Hunter Winstead, Esquire
Gilbert Oshinsky LLP
1100 New York Avenue, N.W., Suite 700
Washington, DC 20005

Bonnie Glantz Fatell, Esquire
David W. Carickhoff, Esquire
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, Delaware 19801

Mark S. Indelicato, Esquire
Edward L. Schnitzer, Esquire
Jeffrey Zawadzki, Esquire
Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022

/s/ Francis J. Trzuskowski

_____
FRANCIS J. TRZUSKOWSKI, ESQUIRE
[I. D. # 189]

Dated: March 30, 2009