March 18, 2009

United States Bankruptcy Court for the District of Delaware
824 Market St. 3rd Floor
Wilmington, Delaware 19801

Re: Claim 251
    Adele K. Elder-Hill

To Whom It May Concern:

Please allow this letter to serve as my dispute to your objection of my claim filed against American Home Mortgage. See proof of claim filed September 4, 2007. I have attached documentation showing that I resigned according to my employment agreement with one month notice. I was willing to work until the end of my notice period according to the employment contract. I was called at home on the evening of August 15th, 2007 by Parag Pandya and Mike Malone and informed that it would not be necessary for me to return. Please note that I was allowed to complete work for the full day after my letter of resignation was given to Parag Pandya. On August 20, 2007, Mike Malone called me and advised me that American Home Mortgage would not be paying me for my notice period and that I would have to file a proof of claim with the bankruptcy court. I did what I was told to do. I filed for unemployment, and received notice from them that since I resigned for personal reasons, I was not eligible for unemployment ( please see attached copy). All of this information was attached to the original proof of claim except the letter from the unemployment commission. Now, if I was terminated, then I would have been eligible for unemployment. Before you use the word "fired", you should get your facts straight. I've never been fired from a job in my life. I had to resign to care for my terminally ill husband.

Should it become necessary for me to retain legal counsel, I will ask that the attorney fees be added to my proof of claim. If you should need to speak with me regarding this issue, my phone number is 571-247-3099.

Thank you,

*[signature]*

Adele K. Elder-Hill

Cc: YOUNG CONAWAY STARGATT & TAYLOR, LLP
    Nathan D. Grow (No. 5014)
    The Brandywine Building
    1000 West Street, 17th Floor
    Wilmington, Delaware 19801

Attachments

American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

In Re: American Home Mortgage Holdings, Inc., et al., Debtors.

Chapter 11
Case No. 07-11047 (CSS)
Jointly Administered

Name of Debtor Against Which Claim is Held: American Home Mtg Servicing, llc
Case No. of Debtor: 07-11050

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Adele K Elder-Hill
2500 Catalina Way
Irving, TX 75060

Telephone number: 972-986-8959
Email Address: h.makib@hotmail.com

Account or other number by which creditor identifies debtor: 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 SS#

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Check here if this claim: ☐ replaces ☐ amends a previously filed claim, dated:

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☑ Other: Notice given + 2 weeks VAC (explain)

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☑ Wages, salaries, and compensation (fill out below)
   Last Four Digits of your SS#: 7262
   Unpaid compensation for services performed
   from 8-15-07 to 9-12-07

2. Date debt was incurred: 8-15-07

3. If court judgment, date obtained:

4. Total Amount of Claim at Time Case Filed: $ _____ (unsecured nonpriority) + _____ (secured) + 1156.25 (unsecured priority) = 1156.25 (Total)

   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate  ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $ _____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

6. **Unsecured Nonpriority Claim:** $ _____
   ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
   ☑ Check this box if you have an unsecured priority claim.
   Amount entitled to priority $ 1156.25
   Specify the priority of the claim:
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☑ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
   **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date: 8/26/07
Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Adele K Elder-Hill
Adele K Elder-Hill

FILED / RECEIVED
SEP - 4 2007
EPIQ BANKRUPTCY SOLUTIONS, LLC

# EMPLOYMENT AGREEMENT

This Employment Agreement, dated as of October 17, 2005 (this "Agreement"), is by and between American Home Mortgage Holdings, Inc., a Delaware corporation having a place of business at 538 Broadhollow Road, Melville, NY 11747 (the "Company"), and Adele Elder-Hill, currently residing at 2500 Catalina Way, Irving, TX 75060 (the "Executive").

Whereas the Company wishes to assure itself of the services of the Executive, and the Executive desires to be employed by the Company, upon the terms and conditions hereinafter set forth.

The Company and the Executive hereby agree as follows:

1. <u>Employment</u>. The Company agrees to employ the Executive, and the Executive hereby accepts such employment by the Company during the term set forth in Section 2 and on the other terms and conditions of this Agreement.

2. <u>Term</u>. The term of this Agreement shall commence on October 17, 2005, and shall continue until the Executive resigns or is discharged, in which case the Agreement shall terminate four weeks following the resignation or discharge date.

3. <u>Position, Duties and Responsibilities, Rights</u>.

(a) During the term of this Agreement, the Executive shall serve as and hold the office and title of Vice President, Project Coordinator. The Executive shall have all of the powers and duties usually incident to the office described above, and shall at all times comply with all policies of the Company relating to the Executive's employment.

(b) During the term of this Agreement, the Executive agrees to devote substantially all the Executive's time, efforts and skills to the affairs of the Company during the Company's normal business hours, except for vacations, illness and incapacity, but nothing in this Agreement shall preclude the Executive from devoting reasonable periods to (i) manage the Executive's personal investments, (ii) participate in professional, educational, public interest, charitable, civic or community activities, including activities sponsored by trade organizations, (iii) serve as a director or member of an advisory committee of any corporation not in competition with the Company or any of its subsidiaries, or as an officer, trustee or director of any charitable, educational, philanthropic, civic, social or industry organizations, or as a speaker or arbitrator; provided, however, that the performance of the Executive's duties or responsibilities in any of such capacities does not materially interfere with the regular performance of the Executive's duties and responsibilities hereunder



4. <u>Place of Performance.</u>  In connection with the Executive's employment by the Company, the Executive shall be based in Irving, Texas, and shall not be required to be absent from there on travel status or otherwise for more than a reasonable time each year as necessary or appropriate for the performance of the Executive's duties hereunder.

5. <u>Compensation</u>

(a)  During the term of this Agreement, the Company shall pay the Executive, and the Executive agrees to accept a base salary at the rate of not less than $85,000.00 per year (the annual base salary as increased from time to time during the term of this Agreement being hereinafter referred to as the "Base Salary"). The Base Salary shall be paid in installments no less frequently than monthly. Any increase in Base Salary or other compensation shall not limit or reduce any other obligation of the Company hereunder, and once established at an increased specified rate, the Executive's Base Salary hereunder shall not thereafter be reduced.

(b)  Subject to section 5(c) below, the Executive shall be eligible to receive a management evaluation bonus (the "Management Evaluation Bonus"), the amount of which will be determined by the Executive Vice President, Servicing (the "EVP, Servicing") based on an evaluation of the Executive's overall performance during the year, beginning with the Executive's performance. The targeted amount of the Management Evaluation Bonus will be 20 percent (20%) of the Executive's Base Salary, but the amount awarded, if any, may be less or greater than the targeted amount in the sole discretion of the EVP, Servicing. The Management Evaluation Bonus for a given year will be paid when such bonuses are generally paid by the Company in the succeeding year. The Executive will not be entitled to any unpaid bonuses if the Executive is no longer an employee of the Company as of the bonus payment date.

(c)  Notwithstanding anything in section 5(b) to the contrary, the Management Evaluation Bonus, for the period beginning with the Commencement Date through December 31, 2005 (the "2005 Employment Period"), shall be pro rated in proportion to the length of the Executive's employment during calendar year 2005 and shall be in an amount determined by the EVP, Servicing based on an evaluation of the Executive's overall performance during the 2005 Employment Period. The targeted amount of the Management Evaluation Bonus, pursuant to this section 5(c), shall be $1,416.67 multiplied by the number of full calendar months worked by the Executive in the 2005 Employment Period. The Management Evaluation Bonus, pursuant to this section 5(c), will be paid in or before March, 2006. Notwithstanding anything to the contrary, the Executive will not be entitled to the Management Evaluation Bonus, pursuant to this section 5(c), if the Executive is no longer an employee of the Company as of the bonus payment date.

(d)  During the term of this Agreement, the Executive shall be entitled to fringe benefits, in each case at least equal to and on the same terms and conditions as

those attached to the Executive's office on the date hereof, as the same may be improved from time to time during the term of this Agreement.

(e) During the term of this Agreement, the Executive shall be entitled to reimbursement, upon proper accounting, of all reasonable expenses and disbursements incurred by the Executive in the course of the Executive's duties.

6. <u>Employment At Will.</u> Employment hereunder shall be at all times "at will". The Company may discharge the Executive and terminate this Agreement at any time and for any reason, and the Executive may terminate the Executive's employment with the Company for any reason. If the Executive terminates the Executive's employment with the Company, the Executive shall provide the Company with notice of such termination pursuant to section 12 herein.

7. <u>Confidential and Proprietary Information; Company Property</u>  For the purpose of this section, Confidential Information shall mean all information and intellectual property owned by and proprietary to the Company, including but not limited to marketing programs such as Homebuyers Marketing and Marketing Portal, loan applications, loan files, loan file documents, accounts, customer or client information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, trade secrets, manuals, business methodology and processes, and cost and pricing policies. All Confidential Information disclosed or provided to the Executive by the Company, or developed or created by the Executive during the term of the Executive's employment with the Company, is, shall become, and shall at all times remain, the sole and exclusive property of the Company. The Executive agrees not to disclose the Confidential Information to any other party, except to the extent that such disclosure is reasonably necessary in order for the Executive to perform the Executive's responsibilities as an executive of the Company. The Executive also agrees that the Executive will not use the Confidential Information for any purpose other than to fulfill the Executive's responsibilities as an executive of the Company.

The Executive acknowledges, understands, and agrees that the Confidential Information is of substantial value to the Company and that, in the event of the use or disclosure of such Confidential Information in breach of this Agreement, the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate. Therefore, without prejudice to the rights and remedies otherwise available to the Company, and in addition to such rights and remedies, the Company shall be entitled to equitable relief by way of injunction if the Executive breaches or threatens to breach any of the provisions of this Agreement relating to the Executive's use or disclosure of any of the Confidential Information.

The Executive further acknowledges that the Company may provide the Executive with access to or use of equipment or other property owned or leased by the Company ("Company Property"). The Executive agrees to abide by all agreements and policies relating to the use of Company Property, as may be in effect or modified from time to

time at the sole discretion of the Company. The Executive further agrees to promptly return in good working condition all Company Property in the Executive's possession upon termination of the Executive's employment with the Company for any reason, and shall be liable in damages, including but not limited to replacement cost, for any financial loss to the Company if Company Property is not returned in such manner.

The Executive agrees that this section shall survive the termination of this Agreement, and that all of the obligations of the Executive set forth in this section shall remain in full force and effect after this Agreement is terminated. The Executive further agrees that, upon termination of this Agreement, the Executive will return to the General Counsel all Confidential Information (including all copies of Confidential Information) which is then in, or which later comes into, the Executive's possession or custody.

8. <u>Non-Solicitation; Non-Disparagement</u> The Executive agrees that: (a) during the term of the Executive's employment with the Company, and for a period of one (1) year after termination of the Executive's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Executive shall not, directly or indirectly, attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers and/or potential customers of the Company which have been derived from leads and/or lists developed and provided to the Executive by the Company; (b) during the term of the Executive's employment with the Company, and for a period of one (1) year after termination of the Executive's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Executive shall not, directly or indirectly, influence or advise any other person to employ or solicit for employment anyone who is an employee of the Company; and (c) during the term of Executive's employment with the Company, and for a period of one (1) year after termination of the Executive's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Executive shall not, directly or indirectly, influence or advise any person who is an employee of the Company, to leave the employment of the Company, and shall not employ any person who is an employee of the Company. The Executive agrees that during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers or business referral sources, including but not limited to realtors, builders and affinity organizations, joint venture partners, borrowers and loan applicants, obtained by, or whose contact information is stored in the records of, the Company. The Executive expressly agrees that this section is fair and reasonable and that Executive is being adequately compensated for agreeing to the terms of this section. The Executive's obligations as set forth in this section shall survive the termination of this Agreement.

The Company and the Executive agree that neither will disparage the other, and that their representatives will not disparage either party hereto.

9. <u>Non-Compete.</u> The Executive agrees that, during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, engage, participate, make any financial investment in, or become employed by or render advisory or other services to or for any person, firm corporation or other business enterprise which is, or is reasonably likely to become engaged, directly or indirectly, in competition with the Company in any county in which the Company is doing business at the time the Executive's employment with the Company terminates. The Executive expressly agrees that this section is fair and reasonable and that the Executive is being adequately compensated for agreeing to the terms of this section.

10. <u>Entire Agreement; Amendment.</u>

(a) This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes any and all other agreements between the parties, their predecessors and affiliates.

(b) Any amendment of this Agreement shall not be binding unless in writing and signed by both (i) the Company's General Counsel and (ii) the Executive.

11. <u>Enforceability.</u> If any provision of this Agreement is determined to be invalid or unenforceable, the remaining terms and conditions of this Agreement shall be unaffected and shall remain in full force and effect, and any such determination of invalidity or enforceability shall not affect the validity or enforceability of any other provision of this Agreement.

12. <u>Notices.</u> All notices which may be necessary or proper for either the Company or the Executive to give to the other shall be in writing and shall be sent by hand delivery, registered or certified mail, return receipt requested or overnight courier, if to the Executive at 2500 Catalina Way, Irving, TX 75060, and, if to the Company, to it at its principal executive offices at 538 Broadhollow Road, Melville, NY 11747, Attention: Human Resources Director, with a copy to the Company's General Counsel, and shall be deemed given when sent. Either party may by like notice to the other party change the address at which it is to receive notices hereunder.

13. <u>Counterparts.</u> This Agreement can be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.

14. <u>Facsimile Signatures.</u> A facsimile copy of either party's signature shall be deemed as legally binding as the original signature.

15. <u>Governing Law.</u> THIS AGREEMENT SHALL BE GOVERNED BY, AND BE ENFORCEABLE IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

American Home Mortgage Holdings, Inc.

By:_____
Name: Alan B. Horn
Title:   Executive Vice President and
         General Counsel

_____
The Executive

August 15, 2007

American Home Mortgage
4650 Regent Blvd #100
Irving, TX

To Whom It May Concern:

Please accept this letter as formal notice of my resignation from American Home Mortgage. In accordance with my employment agreement, my last day will be September 13, 2007.

While I believe that I am moving for good reasons, I am sorry to leave, and I thank you for your support during my time with the company.

Sincerely,


Adele K. Elder-Hill

Cc: Mike Malone

S/w Mike Malone and Parag Pandya via telephone on the evening of 8-15-07 and they told me not to come back to work. On 8-20-07 Mike Malone called me and advised me that they would not honor the employment agreement and I would not be paid for my notice period. He also advised me that I needed to file a claim with the Bankruptcy court. The company also owes me for 2 weeks of vacation.

## Earnings Statement

**AMERICAN HOME MORTGAGE SERVICING INC**
538 BROADHOLLOW ROAD
MELVILLE, NY 11747

Period Ending: 07/15/2007
Pay Date: 07/25/2007

00000000277
ADELE ELDER HILL
2500 CATALINA WAY
IRVING, TX 75060

Taxable Marital Status: Single
Exemptions/Allowances:
 Federal: 0,$25 Additional Tax
 TX: No State Income Tax

Social Security Number: XXX-XX-7262

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 3718.75 | 72.00 | 3,718.75 | 51,885.42 |
| Comp Holiday | | 8.00 | | |
| Retro Pay | | | | 708.32 |
| YE Bonus | | | | 12,500.00 |
| **Gross Pay** | | | **$3,718.75** | 65,093.74 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -726.69 | 13,316.46 |
| | Social Security Tax | -223.97 | 3,943.52 |
| | Medicare Tax | -52.38 | 922.27 |
| | **Other** | | |
| | Checking | -2,415.24 | |
| | Dental Ins | -33.41* | 467.74 |
| | Life Dependent | -0.80 | 11.20 |
| | Ltd | -16.13 | 225.82 |
| | Opt Life | -2.50 | 35.00 |
| | Pretax Ins | -72.00* | 1,008.00 |
| | Short Term Dis | -25.96 | 363.44 |
| | Vision | -0.92* | 12.88 |
| | 401K | -148.75* | 2,603.75 |
| | Life Spouse | | 1.25 |
| **Net Pay** | | | **$0.00** |

* Excluded from federal taxable wages

Your federal taxable wages this period are $3,463.67

© 2000 ADP, Inc

---

AMERICAN HOME MORTGAGE SERVICING INC
538 BROADHOLLOW ROAD
MELVILLE, NY 11747

Advice number: 00000300284
Pay date: 07/25/2007

Deposited to the account of
ADELE ELDER HILL

| account number | transit ABA | amount |
|---|---|---|
| 001294223509 | 1110 0002 | $2,415.24 |

**Bank of America**
BANK OF AMERICA, N.A.

VOID AFTER 180 DAYS

THIS IS NOT A CHECK

**NON-NEGOTIABLE**

**Earnings Statement**

ADP

AMERICAN HOME MORTGAGE SERVICING INC
538 BROADHOLLOW ROAD
MELVILLE, NY 11747

Period Ending: 09/15/2007
Pay Date: 09/25/2007

00000000292
ADELE ELDER HILL
2500 CATALINA WAY
IRVING, TX 75060

Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 0, $25 Additional Tax
  TX: No State Income Tax

Social Security Number: XXX-XX-7262

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Adj. Hours | | | 635.07 | 1,270.14 |
| Vacation | | | 3,432.69 | 6,865.38 |
| Regular | | | | 59,322.92 |
| Retro Pay | | | | 708.32 |
| Y/E Bonus | | | | 12,500.00 |
| **Gross Pay** | | | **$4,067.76** | 84,442.72 |

| Deductions | | this period | year to date |
|---|---|---|---|
| Statutory | | | |
| Federal Income Tax | | -895.84 | 17,717.17 |
| Social Security Tax | | -252.20 | 5,123.38 |
| Medicare Tax | | -58.98 | 1,198.21 |
| Other | | | |
| Checking | | -2,860.74 | |
| Dental Ins | | | 567.97 |
| Life Dependent | | | 12.80 |
| Life Spouse | | | 1.25 |
| Ltd | | | 258.08 |
| Opt Life | | | 40.00 |
| Pretax Ins | | | 1,224.00 |
| Short Term Dis | | | 415.36 |
| Vision | | | 15.64 |
| 401K | | | 2,603.75 |
| **Net Pay** | | **$0.00** | |

Your federal taxable wages this period are $4,067.76

*[Handwritten notes: "I received this after the attached proof of claim was filed. 12/8/07 sent this & filed proof of claim to ..."]*

---

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BOTTOM

AMERICAN HOME MORTGAGE SERVICING INC
538 BROADHOLLOW ROAD
MELVILLE, NY 11747

Advice number: 00000380297
Pay date: 09/25/2007

Deposited to the account of
ADELE ELDER HILL

| account number | transit ABA | amount |
|---|---|---|
| 001294223509 | 1110 0002 | $2,860.74 |

**THIS IS NOT A CHECK**

**NON-NEGOTIABLE**

```
UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
BOX 569460
DALLAS TX 75356-9460
```

## DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed: September 18, 2007

```
ADELE K ELDER-HILL
2500 CATALINA WAY
IRVING TX 75060-6505
```

Social Security Number: 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
Employer: AMERICAN HOME MORT
As:
Employer Account No.: 01-622008-6
All dates are shown in month-day-year order.

### Decision

**Issue:** Validity of Claim-Backdating
**Decision:** We cannot approve your request to backdate your claim to 08-28-07
**Reason for Decision:** Our investigation found that you have not shown adequate cause for backdating your claim. Your claim has been processed effective 08-26-07
**Law Reference:** Subsections 207.021(a)(2) and 208.001 of the Texas Unemployment Compensation Act

#### Understanding your Decision

If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.

**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.

Your employer can appeal TWC's decision to pay benefits. TWC will notify you of any appeal hearing. If you do not participate, you may lose your benefits and have to repay benefits you received.

### Determination of Potential Chargeback for the Employer

### If You Disagree with this Decision

If you disagree with this decision, you may appeal. Fax or have any appeal you may file postmarked on or before 10-02-07. TWC will use the date we receive the fax to determine whether your appeal is timely. If you file your appeal by fax, you should retain your fax confirmation as proof of transmission. Please include a copy of this notice with Appeals correspondence. The Appeal must be in writing to this address:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
FAX (512) 475-1135

**Please see reverse for how to file an appeal.**
BD300E 02/27/2007

| Case No.: | 1 |
| Claim ID.: | 08-26-07 |
| Claim Date: | 08-26-07 |

**FOR HEARING IMPAIRED CLIENTS**
Relay Texas TDD No.: 1-800-735-2989
Voice No.: 1-800-735-2988

# DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
Date Mailed: September 18, 2007

ADELE K ELDER-HILL
2500 CATALINA WAY
IRVING TX 75060-6505

Social Security Number: 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
Employer: AMERICAN HOME MOR1
As:
Employer Account No.: 01-622008-6
All dates are shown in month-day-year order.

## Decision

**Issue:** Quit-Personal Reasons
**Decision:** We cannot pay you benefits during this period of unemployment.
**Reason for Decision:** Our investigation found you left your last work due to personal reasons. Your reason for quitting was not good cause connected with the work.
**Beginning Date of No Payment Period:** 08-26-07
If you return to employment after the beginning date of the "No Payment Period" decision, you may be able to receive unemployment benefits if you provide evidence to TWC that:
(a) you worked at least 30 hours a week for 6 weeks OR earned wages equal to 6 times your weekly benefit amount AND
(b) the reason you are unemployed from your last work is considered to be for qualifying reasons.
**Law Reference:** Section 207.045 of the Texas Unemployment Compensation Act.

## Determination of Potential Chargeback for the Employer

## If You Disagree with this Decision

If you disagree with this decision, you may appeal. Fax or have any appeal you may file postmarked on or before 10-02-07. TWC will use the date we receive the fax to determine whether your appeal is timely. If you file your appeal by fax, you should retain your fax confirmation as proof of transmission. Please include a copy of this notice with Appeals correspondence. The Appeal must be in writing to this address:

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
FAX (512) 475-1135

**Please see reverse for how to file an appeal.**
BD300E 02/27/2007

Case No.: 1
Claim ID.: 08-26-07
Claim Date: 08-26-07
FOR HEARING IMPAIRED CLIENTS
Relay Texas TDD No.: 1-800-735-2989
Voice No.: 1-800-735-2988

... number on the front of this form. File your appeal within **14 calendar days** of the date that we mailed you this decision. You must file your appeal by the **deadline date on the front of this form.** *
- ► If you mail your appeal, the letter must have a **postmark** that is on or before the deadline date.
- ► If you fax your appeal, we **must receive the fax** on or before the deadline date. If you want to fax your appeal but do not have access to a fax machine, you may use the fax machines at a Workforce Center in Texas or other states. Print and keep the confirmation page that shows we received the fax.

Make sure your appeal includes:
- ► your name and Social Security number (SSN)
- ► your current address
- ► the date TWC mailed you the decision

> **Use this link to help prepare for your hearing:**
> **www.twc.state.tx.us/ui/appl/claimants_intro.html**
> If you don't have Internet access, use the computers at your library or Workforce Center.

Your appeal leads to a telephone hearing with the Appeal Tribunal. Your employer may be able to file an appeal on your claim. Both of you may participate in the hearing. We will mail you a **hearing notice packet with the date and time** of your appeal hearing and instructions on submitting any additional documents you may wish to present at the hearing. You should mail or fax copies of the additional documents to **your employer** and **TWC** as soon as possible after receiving the hearing notice.

- ► **It is important** that you participate in the hearing because the hearing officer makes the decision on your appeal based **entirely on evidence** given at the hearing. If you cannot participate in the hearing at the scheduled time, call the hearing officer promptly at the number listed on the hearing notice.
- ► **The Appeal Tribunal** hearing consists of oral statements given under oath. Most parties participate without representation. However, you may have someone with you in the hearing to represent you. TWC does not provide the parties with representation.
- ► **You may call witnesses.** If you or your witnesses do not speak English, write on the appeal that you need an interpreter and for which language. If you or your witnesses need other special services, such as services for hearing-impaired participants, or access to a telephone, tell us that, too.
- ► **We mail you** the Appeal Tribunal's decision. If you disagree with the decision, you may appeal to the next level of review, the three-member Commission. The Commission decides your case after reviewing the Appeal Tribunal decision and listening to the recorded hearing.
- ► **If you disagree** with the Commission decision, you may file a Motion for Rehearing **within 14 calendar days** of the decision. The Commission will grant the motion if you can show:
  a. Important new information;
  b. Why you think the information could change the decision; and
  c. A compelling reason why you didn't present the information earlier.

> **You must continue to request payments every** two weeks while you appeal, unless you return to full-time work. TWC can pay you only for weeks in which you request payment and meet all other requirements.

- ► **You may appeal** to a civil court between 15 and 28 days after the date TWC mailed you the decision. Before appealing to a civil court, you must complete all the appeals through TWC, except the Motion for Rehearing.

\* **IMPORTANT:** If you miss the deadline date on this form, explain in detail on the appeal why you filed your appeal late. If TWC decides not to hear the case because your appeal was late, we will mail you a decision. You can appeal that decision.

BD300F 02/27/2007

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., Delaware corporation, et al., | ) Case No. 07-11047 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Response Deadline: March 30, 2009 at 4:00 p.m. (ET) |
| | ) Hearing Date: April 6, 2009 at 2:00 p.m. (ET) |

AHM O831 3/6/2009 (merge2.txnum2) 4000000249 EPIQ Use - 124

ELDER-HILL, ADELE K.
127 W BAYSHORE BLVD
JACKSONVILLE, NC 285405303

## NOTICE OF DEBTORS' THIRTY-FIRST OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

**TO:** ELDER-HILL, ADELE K.
127 W BAYSHORE BLVD
JACKSONVILLE, NC 285405303

**Basis For Objection:** No Liability Claim: Debtors' books and records show no liability on account of this claim

| | Claim Number | Claim Amount |
|---|---|---|
| Claim to be Expunged | 251 | $11,156.25 |

Claimant was an at-will employee fired on August 15, 2007 and is not entitled to any pay claimed after that date. Claimant is not entitled to vacation pay pursuant to the Debtors' vacation policy because claimant was an executive

The above-captioned debtors and debtors in possession (the "Debtors") have filed the **Debtors' Thirty-First Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1** (the "Objection"), a copy of which is attached hereto. The Debtors seek by this Objection to disallow the claim listed above because the Debtors have determined, after review of their books and records, that they have no record of any liability on account of this claim. The Objection seeks to alter your rights by disallowing the claim listed above in the "Expunged Claim" row.

Responses to the Objection, if any, must be filed on or before **March 30, 2009 at 4:00 p.m. (ET)** (the "Response Deadline") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801. At the same time, you must also serve a copy of the response upon the counsel to the Debtors listed below so that the response is received on or before the Response Deadline.

A HEARING ON THE OBJECTION WILL BE HELD ON APRIL 6, 2009 AT 2:00 P.M. (ET) BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 5TH FLOOR, COURTROOM NO. 6, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: March 6, 2009
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6756
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession