**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE, | ) | (Jointly Administered) |
| HOLDINGS, INC., a Delaware corporation, et al.,[1] | ) | Obj. Deadline: March 30, 2009 @ 4:00 p.m. |
| | ) | Hr'g Date: April 6, 2009 @ 2:00 p.m. |
| Debtors. | ) | |
| | ) | |
| | ) | Related Docket Item No. 7084 |

**RESPONSE OF MARY O'CONNELL TO**
**DEBTORS' THIRTY-FIRST OMNIBUS OBJECTION (SUBSTANTIVE) TO CLAIMS**
**PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY**
**RULES 3003 AND 3007 AND LOCAL RULE 3007-1**

COMES NOW Mary O'Connell ("Ms. O'Connell"), by and through undersigned counsel, and hereby responds (the "Response") to the Debtors' Thirty-First Omnibus Objection (Substantive) to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1 (the "Thirty-First Substantive Omnibus Objection") as follows:

**Background**

1.  On August 6, 2007 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc., a Delaware corporation (6303); American Home Mortgage Investment Corp, a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Mellville, New York 11747.

U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors continue to operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.  The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.  On October 30, 2007, the Court entered an order setting January 11, 2008 as the general bar date for filing pre-petition proofs of claim (the "General Bar Date Order"). (D.I. 1708).

4.  Ms. O'Connell timely filed a proof of claim on or about September 11, 2007, in the amount of $10,950.00, on the form provided in this case, and asserted the claim as a priority wage claim pursuant to 11 U.S.C. section 507(a)(4) as indicated on the claim form. A copy of the proof of claim filed by Ms. O'Connell is attached hereto as Exhibit A (hereinafter, the "Subject Claim"). The chart attached as Exhibit I to the Debtors' Proposed Order in this matter indicates that the Debtor received the Subject Claim on September 17, 2007 and assigned it claim number 857.

5.  Ms. O'Connell attached to her proof of claim a copy of the amended compensation schedule applicable to her employment with the Debtors and a copy of an Earnings Statement from the Debtor's payroll services provider, ADP from July, 2007. Her proof of claim form indicates that her priority claim is for unpaid compensation from July 1, 2007 through July 31, 2007. [See Ex. A].

**The Thirty-First Substantive Omnibus Objection**

6. On March 6, 2009, the Debtors filed the Thirty-First Substantive Omnibus Objection, wherein they assert that, based on a review claim, Ms. O'Connell "provided insufficient documentation to assess validity of claim". See Exhibit I to Debtor's' Proposed Order, page 4 of 6.

7. The Thirty-First Substantive Omnibus Objection is accompanied by the Declaration of Puneet Agrawal, manager at Zolfo Cooper, LLC, the Court-approved financial advisor for the Debtors, which recounts the "[c]onsiderable resources and time [that] have been expended in reviewing and reconciling the proofs of claim filed or pending against the Debtors in these cases." Agrawal Decl., at ¶2 (bracketed material supplied). Further, Mr. Agrawal declares: "The claims were carefully reviewed and analyzed in good faith utilizing due diligence by the appropriate personnel...." Agrawal Decl., at ¶2, and goes on to state, as follows:

> The Debtors have determined based upon a review of the claims docket and the claims identified on Exhibit I to the Proposed Order that such claims were filed without sufficient documentation or alleged facts and the claimants have failed to provide additional requested documentation. Accordingly, the Debtors seek to expunge and disallow in full the Insufficient Documentation Claims.

Agrawal Decl., at ¶12.

**Response to the Thirty-First Substantive Omnibus Objection**

8. The Subject Claim was timely filed in accordance with the procedure instituted at the Debtors' behest. Notwithstanding that Ms. O'Connell provided a copy of an ADP Earnings Statement with her proof of claim, and that a simple review of their own payroll records would allow the Debtors to determine whether she was paid compensation as provided under her

3

employment agreement for July, 2007, the Debtor's somehow contend that they are unable to verify the validity of Ms. O'Connell's claim.

9. To avoid any further confusion, Ms. O'Connell attaches a copy of both ADP Earnings Statements for July 2007 as Exhibit B hereto, showing that she was paid her base salary of $6500.00 in July, 2007, but only received commissions of $5,024.46. Her employment agreement, as amended, entitles her to minimum compensation (in addition to base salary) in the amount of $17,813,54. See Ex. A, page 2, which amends the prior compensation agreement attached as Exhibit C. Accordingly, she is entitled to a claim for the unpaid amount of her minimum monthly compensation of $12,789.09, which is subject to the statutory cap of $10,950 as a priority claim.

10. Where a proof of claim is executed and filed in accordance with the Bankruptcy Rules, the validity and amount of the claim is thereby established *prima facie*. Fed.R.Bankr.P. 3001(f). In that regard, the filing of a proof of claim has been likened to the filing of a complaint at the opening of a civil case. In re Simmons, 765 F.2d 547, 552 (5th Cir. 1985). In order to challenge successfully the *prima facie* validity of a proof of claim, an objector must produce evidence negating an essential allegation of the claim. In re Allegheny International, Inc., 954 F.2d 167, 173 (3d Cir. 1992). The Subject Claim establishes *prima facie* Ms. O'Connell's right to payment from Debtor American Home Mortgage Corp.

11. The Debtors' conclusory assertion that based on a review of the claims docket and the claims Ms. O'Connell has provided insufficient documentation is insufficient to rebut Ms. O'Connell's right to payment as established *prima facie* by her Subject Claim. Allegheny International, 954 F.2d at 173 (the objector must produce evidence "equal in force" to the

evidence submitted by the claimant); Simmons, 765 F.2d at 552 (same). The Debtor has provided no evidence of any kind, and the Debtor has employment records available to it.

12. The Objection offers no reasonable evidence to negate any essential element of the Subject Claim, much less evidence that is "equal in force" to that set forth therein. Allegheny International, 954 F.2d at 173 (the objector must produce evidence "equal in force" to the evidence submitted by the claimant); Simmons, 765 F.2d at 552 (same). Moreover, the Debtors' attempt to shift the burden of proof is improper. Accordingly, Ms. O'Connell respectfully submits that the Debtors' request to have the Subject Claim disallowed should be denied.

### Reservation of Rights

13. As this Court's Local Rules require that, "[a]n Objection based on substantive grounds shall include all substantive objections to such claim...," Ms. O'Connell respectfully requests that the Debtors be prohibited from raising additional substantive objections to the Proofs of Claim that are subject to the Thirty-First Substantive Omnibus Objection. Del.Bankr.LR 3007-1(f)(iii) (bracketed material supplied).

14. Ms. O'Connell expressly reserves all of her rights and remedies, including, without limitation, (i) to take any and all discovery she deems appropriate to prepare for further proceedings in this matter, (ii) to submit additional papers to the Court in support of her Proofs of Claim, including the Subject Claim, (iii) to amend any portion of any of her claims, (iv) to assert any portion of any of her claims, whether currently known or unknown, as secured and/or as an administrative expenses of the Debtors' estates, and (v) to seek appropriate relief from this Court as Ms. O'Connell, in her sole discretion, deems appropriate.

### Conclusion

WHEREFORE, based on the foregoing, Ms. O'Connell respectfully requests that this Honorable Court enter an Order (i) sustaining her response to the Thirty-First Substantive Omnibus Objection, (ii) denying the Debtors' Thirty-First Substantive Omnibus Objection, (iii) allowing each of her Proofs of Claim, including the Subject Claim, in full, and (iv) granting to Ms. O'Connell such other and further relief as the Court deems just and proper.

Dated: March 30, 2009
Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ William D. Sullivan*
William D. Sullivan (No. 2820)
4 East 8th Street, Suite 400
Wilmington, DE 19801
(302) 428-8191
(302) 428-8195
bsullivan@sha-llc.com

*Attorneys for Mary O'Connell*

## CERTIFICATE OF SERVICE

I, William D. Sullivan, do hereby certify I am not less than 18 years of age and that on this 30th day of March 2009, I caused a copy of the within *Response of Mary O'Connell to Debtors' Thirty-First Omnibus Objection (Substantive) to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007 and Local Rule 3007-1* to be served upon the parties listed below via First Class U.S. Mail postage pre-paid.

James L. Patton, Jr., Esq.
Pauline K. Morgan, Esq.
Edward J. Kosmowski, Esq.
Margaret B. Whiteman-Greecher, Esq.
Nathan D. Grow, Esq.
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Under penalty of perjury, I declare the foregoing to be true and correct.

*March 30, 2009*                                             */s/ William D. Sullivan*
Date                                                         William D. Sullivan

# Exhibit A

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>American Home Mortgage Claims Processing Center<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|
| In Re<br>American Home Mortgage Holdings, Inc., et al.<br>　　　　　　　　　　Debtors.<br>Name of Debtor Against Which Claim is Held | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered<br>Case No. of Debtor |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

Mary O'Connell
118 Chatfield Way
Franklin, TN 37067

Telephone number: 615-945-0132
Email Address: joconnell6@comcast.net

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court

Account or other number by which creditor identifies debtor:

Check here if this claim:
☐ replaces      ☐ amends a previously filed claim, dated: _____

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☐ Other_____ (explain)

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☑ Wages, salaries, and compensation (fill out below)
   Last Four Digits of your SS#: 4 5 0 0
   Unpaid compensation for services performed
   from July 1, 2007 to July 31, 2007

2. Date debt was incurred: 8/3/07

3. If court judgment, date obtained:

4. Total Amount of Claim at Time Case Filed: $_____ + _____ + $10,950 = $10,950
   　　(unsecured nonpriority)　(secured)　(unsecured priority)　(Total)
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. **Unsecured Nonpriority Claim:** $_____
   ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. ☑ **Unsecured Priority Claim.**
   ☑ Check this box if you have an unsecured priority claim
   Amount entitled to priority $10,950
   Specify the priority of the claim:
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
   ☑ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
   **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date: 9/11/07

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
/s/ Mary O'Connell   Mary O'Connell

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## AMENDMENT OF ACCOUNT EXECUTIVE EMPLOYMENT AGREEMENT

This Amendment of Account Executive Employment Agreement ("Amendment") is made and entered into as of July 1, 2007 by and between American Home Mortgage Corp. (the "Company") and Mary O'Connell (the "Employee"). This Amendment amends the Schedule 1, effective as of March 1, 2007 ("Schedule 1"), to that certain Account Executive Employment Agreement, dated as of July 3, 2006 (the "Agreement") by and between the Company and the Employee.

Whereas, the Company and Employee have agreed to amend Schedule 1;

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Effective as of July 1, 2007, section 6 of Schedule 1 is hereby by deleted in its entirety and shall be replaced with the following text:

> "6. **Minimum Compensation.** For each month from July 1, 2007 through December 31, 2007, the Employee shall be paid the greater of the amount earned by the Employee pursuant to sections 3 through 5, above, or the amount per month set forth below:
>
> | Month | Minimum Compensation |
> |---|---|
> | July 2007 | $17,813.54 |
> | August 2007 | $17,813.54 |
> | September 2007 | $17,813.54 |
> | October 2007 | $15,586.84 |
> | November 2007 | $15,586.84 |
> | December 2007 | $15,586.84". |

2. Except as herein modified, all terms and conditions of the Agreement and Schedule 1, as amended, shall remain in full force and effect, and by executing this Amendment, the parties hereto ratify and confirm the terms of the Agreement and Schedule 1, as modified by the terms of this Amendment.

3. This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, and taken together they shall be considered one agreement.

4. This Amendment may be executed in counterparts, each of which shall be deemed an original and each of which shall together constitute one and the same document. Execution of this Amendment may be effected by delivery of facsimiles or electronic copies of signature pages and the parties waive any objection to the use of facsimile or electronic copies of signatures in lieu of their paper equivalents.

5. This Amendment shall be governed by and construed in accordance with the laws of the State of New York, without regard to conflict of law principles.

IN WITNESS WHEREOF, the parties hereto have caused this Amendment to be duly executed as of the date first written above.

AMERICAN HOME MORTGAGE CORP.

By: _____
Alan B. Horn
Executive Vice President
and General Counsel

EMPLOYEE

_____
Mary O'Connell

2

# Exhibit B

# Earnings Statement

AMERICAN HOME MORTGAGE
PAYROLL ACCOUNT
538 BROADHOLLOW RD
MELVILLE NY 11747

Period Beginning: 07/01/2007
Period Ending: 07/15/2007
Pay Date: 07/25/2007

00000004384
MARY OCONNELL
118 CHATFIELD WAY
FRANKLIN, TN 37076

Taxable Marital Status: Married
Exemptions/Allowances:
  Federal: 1
  TN: No State Income Tax

Social Security Number: XXX-XX-4500

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 3125.00 | 81.25 | 3,125.00 | 43,750.00 |
| Commission | | | | 123,809.76 |
| **Gross Pay** | | | **$3,125.00** | 167,559.76 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -342.94 | 40,971.42 |

CO. FILE DEPT. CLOCK NUMBER 040
R4FC 028489 000954 R4FCO 005198269 7199          Earnings Statement

Case 07-11047-CSS Doc 7199 Filed 04/06/09



**AMERICAN HOME MORTGAGE**
**PAYROLL ACCOUNT**
**538 BROADHOLLOW RD**
**MELVILLE NY 11747**

Period Beginning: 07/16/2007
Period Ending: 07/31/2007
Pay Date: 08/07/2007

Taxable Marital Status: Married
Exemptions/Allowances:
  Federal: 1
  TN: No State Income Tax

**MARY OCONNELL**
**118 CHATFIELD WAY**
**FRANKLIN, TN 37076**

Social Security Number: XXX-XX-4500

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 3125.00 | 81.25 | 3,125.00 | 46,875.00 |
| Commission | | | 5,024.46 | 128,834.22 |
| **Gross Pay** | | | **$8,149.46** | 175,709.22 |

| Deductions | | | |
|---|---|---|---|
| **Statutory** | | | |
| Federal Income Tax | -1,656.23 | | 42,627.65 |
| Medicare Tax | -115.98 | | 2,515.03 |
| Social Security Tax | | | 6,045.00 |
| **Other** | | | |
| Dental Pre-Tax | -17.57* | | 263.55 |
| Ins Pretax Epr | -133.00* | | 1,995.00 |
| Optional Life | -3.50 | | 52.50 |
| T & E Reemburs | | | -12,495.05 |
| **Adjustment** | | | |
| T & E Reemburs | +1,499.47 | | |
| **Net Pay** | | | **$7,722.65** |

\* Excluded from federal taxable wages

Your federal taxable wages this period are $7,998.89

©2000 ADP, Inc.

TEAR HERE

## Earnings Statement

ADP

AMERICAN HOME MORTGAGE
PAYROLL ACCOUNT
538 BROADHOLLOW RD
MELVILLE NY 11747

Period Beginning: 07/01/2007
Period Ending: 07/15/2007
Pay Date: 07/25/2007

Taxable Marital Status: Married
Exemptions/Allowances:
  Federal: 1
  TN: No State Income Tax

00000004384
MARY OCONNELL
118 CHATFIELD WAY
FRANKLIN, TN 37076

Social Security Number: XXX-XX-4500

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 3125.00 | 81.25 | 3,125.00 | 43,750.00 |
| Commission | | | | 123,809.76 |
| Gross Pay | | | $3,125.00 | 167,559.76 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -342.94 | 40,971.42 |

# Exhibit C

**American Home Mortgage
Compensation Plan**

**(Effective March 1, 2007)**

Schedule 1 to the Account Executive Employment Agreement between American Home Mortgage Corp. (the "Company") and Mary O'Connell (the "Employee") dated as of July 3, 2006 (the "Agreement"). The Company reserves the right, in its sole discretion, to modify, amend, or terminate any of the terms and conditions of this Compensation Plan at any time. All calculations required pursuant to this Compensation Plan shall be made in the sole discretion of the Company in accordance with methodologies, policies and procedures of the Company which may be in effect from time to time.

The Employee acknowledges and agrees that this Compensation Plan, dated as of March 1, 2007, is intended to replace, and shall fully and completely supersede, that certain Compensation Plan, dated July 3, 2006, as amended by an Amendment of Account Executive Employment Agreement, dated February 13, 2007, which was previously annexed to the Agreement.

1. **Terms and Conditions.** Terms and conditions herein shall be defined by, and are subject to, the Agreement, unless otherwise specifically set forth in this Schedule 1.

2. **Base Salary.** The Company shall pay the Employee, and the Employee agrees to accept a base salary at the rate of not less than $75,000 per year (the annual base salary as increased from time to time during the term of this Agreement being hereinafter referred to as the "Base Salary"). The Base Salary shall be paid in installments no less frequently than monthly.

3. **Monthly Volume Bonus.** For each month of employment, the Employee shall be eligible for a Monthly Volume Bonus. The Monthly Volume Bonus shall be paid in accordance with this section, and shall be based upon the purchased loan production attributed to the Employee as determined solely by the Company. For Flow Loans, which, for purposes this Agreement, shall be defined as individual loans (including loans purchased as a Live Price Trade) registered and purchased by the Company on Daily Rate Sheet pricing, the Employee shall be eligible for a Monthly Volume Bonus according to the following schedules:

**Agency/Government**

| Monthly Purchased Volume | Bonus |
|---|---|
| $0 - $49,999,999 | 1.5 basis points (.015%) |
| $50,000,000 - $99,999,999 | .8 basis points (.008%) |
| $100,000,000 + | .3 basis points (.003%) |

**MTA**

| Monthly Purchased Volume | Bonus |
|---|---|
| $0 - $24,999,999 | 3.0 basis points (.030%) |
| $25,000,000 - $49,999,999 | 3.3 basis points (.033%) |
| $50,000,000 + | 3.7 basis points (.037%) |

Initials _MO_

Page 1 of 4

### Jumbo/Choice/Non-Choice Seconds/Other

| Monthly Purchased Volume | Bonus |
|---|---|
| $0 - $24,999,999 | 1.8 basis points (.018%) |
| $25,000,000 - $49,999,999 | 2.1 basis points (.021%) |
| $50,000,000 – | 2.4 basis points (.024%) |

### Choice Seconds

| Monthly Purchased Volume | Bonus |
|---|---|
| $0 - $9,999,999 | 3.0 basis points (.03%) |
| $10,000,000 + | 4.0 basis points (.04%) |

The Employee shall be eligible for the Monthly Volume Bonus rate established for the highest tier, above, attained by the Employee, for all qualifying Monthly Purchased Volume. Thus, for example, if the Employee has Monthly Purchased Volume of $35 million of Jumbo/Choice, the Bonus for all such Monthly Purchased Volume shall be 2.1 basis points (.021%). Except with respect to the bonus payable on purchased Agency/Government loan production, which shall be paid on the incremental monthly purchased volume, the bonuses payable on purchased loan production within each of the schedules set forth above shall be paid retroactively to the full monthly purchased volume, as determined in the Company's sole discretion.

For Bulk and Mini-Bulk Loans, which, for purposes of this Agreement, shall be defined as groups of loans so identified by the Company which are registered and purchased by the Company, the Employee shall be eligible for a Monthly Volume Bonus according to Schedule 1 and Schedule 2 set forth below. The Monthly Volume Bonus payable to the Employee with respect to Bulk and Mini-Bulk Loans for March 2007 shall be determined in accordance with Schedule 1. The Monthly Volume Bonus payable to the Employee with respect to Bulk and Mini-Bulk Loans for all other calendar months following March 2007 shall be determined in accordance with Schedule 2.

### Schedule 1
#### (March 2007 Only)

| | | |
|---|---|---|
| AOT/Mandatory | – | Same as flow Agency/Government* |
| Agency Bulk/Mini-Bulk | – | Same as flow Agency/Government* |
| Non-Agency Bulk/Mini-Bulk (All except Jumbo) | – | 2.5 basis points (.025%) |
| Non-Agency Bulk/Mini-Bulk (Jumbo) | – | 2.0 basis points (.02%) |

### Schedule 2
#### (All Months Following March 2007)

| | | |
|---|---|---|
| AOT/Mandatory | – | Same as flow Agency/Government* |
| Agency Bulk/Mini-Bulk | – | Same as flow Agency/Government* |
| Non-Agency Bulk/Mini-Bulk (MTA only) | – | 2.5 basis points (.025%) |
| Non-Agency Bulk/Mini-Bulk (All Others) | – | 2.0 basis points (.02%) |

* Monthly Volume Bonus payable with respect to the purchased bulk/mini-bulk agency loan production and AOT/mandatory loan production shall be calculated independently from the

Initials _MO_

purchased flow agency loan production and flow AOT/Mandatory loan production, if any, attributed to the Employee.

4. **Quarterly Account Incentive Bonus.** For each calendar quarter the Employee is employed by the Company, the Employee shall be eligible for a Quarterly Account Incentive Bonus (the "Account Bonus"). Eligibility for an Account Bonus shall be based upon the total number of approved correspondent accounts attributed to the Employee, as determined solely by the Company, in accordance with the schedule set forth in this section. At least 60% of total approved correspondent accounts attributed to the Employee in a calendar quarter (with Mini-Bulk and Bulk correspondent accounts, as determined by the Company, excluded from the total) must be active during the calendar quarter in order for the Employee to be eligible for an Account Bonus. The new accounts added in a calendar quarter will not be counted in the active ratio calculation for the purpose of determining the percent that are active in such calendar quarter, but will be included in the active ratio calculation in the subsequent calendar quarter. However, such new accounts added in a calendar quarter will be included in the count to determine the number of total accounts for that calendar quarter. An approved correspondent account shall be deemed active if at least one mortgage loan is purchased by the Company from that correspondent account, as determined by the Company, during the calendar quarter. The Quarterly Account Incentive Bonus shall be calculated by the Company according to the following schedule:

| Total Approved Correspondent Accounts | Bonus |
|---|---|
| Less than 25 | $0 |
| 26-30 | $500.00 |
| 31-35 | $1,000.00 |
| 36-40 | $1,500.00 |
| 41-45 | $2,500.00 |
| 46-50 | $3,000.00 |
| 51-55 | $3,500.00 |
| 56-60 | $4,000.00 |
| 65-70 | $4,500.00 |
| 71-75 | $5,000.00 |
| 76-80 | $5,500.00 |
| 81-85 | $6,000.00 |
| 86-90 | $6,500.00 |
| 91-95 | $7,000.00 |
| 96-100 | $7,500.00 |
| 101-105 | $8,000.00 |
| Over 105 | $75.00 per additional account |

5. **Quarterly Pull-Through Bonus.** For each calendar quarter the Employee is employed by the Company, the Employee shall be eligible for a Quarterly Pull-Through Bonus (the "Pull-Through Bonus"). A Pull-Through Bonus shall be earned by the Employee on the basis of the percentage resulting from dividing the number of loans originated by approved correspondent lenders which are delivered to and purchased by the Company within the original lock period and which are attributable to the Employee in a calendar quarter, as determined solely by the Company ("Pull-Through Loans"), by the total loans originated by approved correspondent lenders which are rate-locked by the Company and which are attributable to the Employee in a calendar quarter, as determined solely by the Company ("Total Loans"), in accordance with the following schedule:

Initials _MO_

| Pull Through Loans as a Percentage of Total Loans | Pull Through Bonus |
|---|---|
| Less than 60% | $0 |
| 60%-64.9% | $2,000.00 |
| 65%-69.9% | $2,500.00 |
| 70%-74.9% | $3,500.00 |
| 75%-79.9% | $4,000.00 |
| 80% and over | $5,000.00 |

For purposes of calculating a Pull-Through Bonus, the Company may consider loans which are eligible for purchase within a calendar quarter, but which have not been purchased by the Company by the end of such calendar quarter, as Pull-Through Loans, in the sole discretion of the Company.

6. **Minimum Compensation.** For each month of employment from January 1, 2007 through June 30, 2007, the Employee shall be paid the greater of the amount earned by the Employee pursuant to sections 3 through 5, above, or $17,813.54 per month.

7. **Non-Payment of Bonuses and Minimum Compensation.** The Employee shall not earn or be entitled to receive any unpaid bonuses or minimum compensation described above if the Employee is no longer employed by the Company as of the payment date. Notwithstanding anything to the contrary in the immediately preceding sentence, the Employee will be eligible to receive a Monthly Volume Bonus on qualified loans locked by the Company prior to the effective date of the termination of the Employee's employment, if: (i) such qualified loans are purchased by the Company within thirty (30) days following the termination of employment, and (ii) the Employee is not in breach of the Agreement and remains in good standing through and including the scheduled payment date of any such Monthly Volume Bonus, as determined in the Company's sole discretion.

8. **Computation of Schedule 1 Amounts Due.** All calculations required pursuant to this Schedule 1 shall be made in the sole discretion of the Company in accordance with methodologies, policies and procedures of the Company which may be in effect from time to time, and which may be changed by the Company at any time in its sole discretion effective the first day of the quarter following notice to the Employee.

**IN WITNESS WHEREOF,** the parties have executed this Schedule 1 as of March 1, 2007.

American Home Mortgage Corp.

By: _____
General Counsel

*/s/ Mary O'Connell*
Mary O'Connell

Initials _*MO*_

Page 4 of 4