## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | x | |
| In re: | : | **Chapter 11** |
| | : | |
| **AMERICAN HOME MORTGAGE** | : | **Case No. 07-11047 (CSS)** |
| **HOLDINGS, INC., a Delaware** | : | |
| **corporation, et al.,**[1] | : | **Jointly Administered** |
| | : | |
| **Debtors.** | : | **Hearing Date: May 8, 2009 @ 11:30 a.m.** |
| | : | **Related to Docket No. 5277** |
| | x | |

### REPLY OF AMERICAN HOME MORTGAGE SERVICING, INC.
### TO OBJECTION OF DEUTSCHE BANK NATIONAL TRUST COMPANY BANK
### TO PROPOSED PURCHASER'S CURE AMOUNT

American Home Mortgage Servicing, Inc., a Delaware corporation formerly known as

AH Mortgage Acquisition Co., Inc. (the "Purchaser"), through its undersigned counsel, hereby

submits its reply to the Second Amended Objection of Deutsche Bank National Trust Company

Bank ("DBNTC") to Proposed Purchaser's Cure Amount [Docket No. 5277] (the "DBNTC Cure

Objection"), filed by DBNTC on July 31, 2008.  In support of this Reply, the Purchaser

respectfully represents as follows:

#### Preliminary Statement

1.      Pursuant to the order approving the sale of the Debtors' mortgage servicing

business to the Purchaser (the "Sale Order"), both the Debtors and the Purchaser have certain

responsibilities with respect to curing defaults under contracts to be assumed and assigned in

---

[1]     The above-captioned debtors and debtors in possession in these cases (collectively, the "Debtors"), along
with the last four digits of each Debtor's federal tax identification number, are:  American Home Mortgage
Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914);
American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland
corporation, formerly known as American Home Mortgage Servicing, Inc. (7267); American Home
Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware
limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and
Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747.

connection with the sale. Specifically, paragraph 36 of the Sale Order provides that the Purchaser shall fund and be liable to the Debtors for all amounts owed, if any, with respect to "defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing to the Final Closing."

2.      DBNTC has filed a cure objection, alleging that it is entitled to a cure payment in the amount of $20,150 based on legal fees and extraordinary default management administration fees and expenses allegedly incurred as a result of the transfer of its Servicing Agreements to the Purchaser.

3.      Under the plain language of the Sale Order, although the Purchaser is responsible for funding certain cure amounts due under the Assumed Contracts, that funding requirement is triggered only when the cure amount due results from a default with respect to acts or omissions that occurred after the initial closing of the sale on November 16, 2007. Because DBNTC's claim for legal fees and expenses relate to the Debtors' bankruptcy filing and the sale of the servicing business – actions initiated by the Debtors' filing of their voluntary petitions and motion to approve sale, which all clearly occurred before November 16, 2007 - the Purchaser is in no way responsible for funding any portion of the resulting cure amount that DBNTC alleges it is owed. Accordingly, the DBNTC Cure Objection should be denied.

### Background

4.      On October 30, 2007, the Court entered an Order [Docket No. 1711], approving the sale of the Debtors' mortgage loan servicing business to the Purchaser, pursuant to the terms of an Asset Purchase Agreement among certain of the Debtors and the Purchaser dated as of September 25, 2007, as amended. The Sale Order, among other things, authorized the Debtors to assume and assign and/or transfer to the Purchaser certain contracts (collectively, the "Assumed

Contracts"), including, among other things, certain agreements with DBNTC (as more fully described in Exhibit A to DBNTC's Cure Objection) in connection with certain securitizations in which the Debtors serviced the mortgage loans (the "DBNTC Servicing Agreements").

5.    The Sale Order further apportioned the cure amounts related to the Assumed Contracts among the Debtors and the Purchaser such that the Debtors are responsible for all cure amounts (the "Debtors' Cure Amounts") arising from defaults based on acts or omissions occurring prior to the initial closing of the sale on November 16, 2007 (the "Initial Closing"), and the Purchaser is responsible for funding cure amounts (the "Purchaser's Cure Amounts") arising from defaults based on acts or omissions occurring during the period from the Initial Closing to the final closing of the sale on April 11, 2008 (the "Final Closing"). (Sale Order ¶¶ 35, 36).

6.    On May 19, 2008, the Debtors filed the Notice of (i) Debtors' Proposed Purchaser's Cure Amounts and (ii) Deadline for Filing Objections to the Proposed Purchaser's Cure Amounts [Docket No. 4084] (the "Purchaser's Cure Notice"), pursuant to which the Debtors notified the counterparties to the Assumed Contracts of the proposed amounts necessary to cure defaults under those contracts arising from acts or omissions that occurred after the Initial Closing through and including the Final Closing (the "Interim Period"). Exhibit A to the Purchaser's Cure Notice lists the proposed Purchaser's Cure Amounts Due in connection with the DBNTC Servicing Agreements as $0.

7.    On July 31, 2008, DBNTC filed the DBNTC Cure Objection, pursuant to which DBNTC objects to the proposed Purchaser's Cure Amount for the DBNTC Servicing Agreements. The DBNTC Cure Objection asserts that the appropriate Purchaser's Cure Amount

is $20,150. This amount includes: (a) legal fees and expenses and (b) indemnification for default

management and administration fees.

### DBNTC's Cure Objection Should Be Denied

8.      As an initial matter, the Sale Order makes clear that it is the Debtors – and *not* the

Purchaser – that are obligated to make cure payments in connection with the Debtors'

assumption of the Assumed Contracts. (Sale Order ¶ 36). With respect to the Purchaser's Cure

Amounts, the Sale Order states that the Purchaser "shall fund and be liable to the Debtors for all

amounts owed, if any, with respect to *defaults arising under the Assumed Contracts with respect*

*to acts or omissions occurring during the period from the Initial Closing until the Final*

*Closing . . .*" (Sale Order ¶ 36 (emphasis added)). Accordingly, the cure amount due to DBNTC

for the Debtors' assumption of the DBNTC Servicing Agreements, if any, must be paid by the

Debtors from the Cure Escrow, and the Purchaser is obligated to fund or reimburse the Debtors

only for those cure amounts, if any, that relate to defaults under the DBNTC Servicing

Agreements arising from acts or omissions that occurred after the Initial Closing.

9.      In its Cure Objection, DBNTC wholly fails to describe any act or omission

occurring during the Interim Period that resulted in a default under the DBNTC Servicing

Agreements.[2] Indeed, DBNTC points only to the sale of the Debtors' servicing business as the

reason DBNTC incurred the claimed fees and expenses. For example, the DBNTC Cure

Objection states that DBNTC's legal fees "relate to the sale and transfer of the servicing business

to the Purchaser." (DBNTC Cure Objection at 2). DBNTC further asserts that it is entitled to

---

[2]      To the extent that DBNTC asserts that the Debtors' bankruptcy filing or financial condition resulted in a
default under the DBNTC Servicing Agreements, the Bankruptcy Code makes clear that the cure
requirement is excused with respect to so-called *"ipso facto"* defaults. 11 U.S.C. § 365(b)(2)(A) - (C).

indemnification for "management and administration fees . . . relating to the sale and transfer of servicing to the Purchaser." (DBNTC Cure Objection at 2). However, fees associated with the transfer of the servicing business pursuant to the Sale Order are the direct result of the Debtors' act of initiating the sale process by filing the motion to approve the sale of the servicing business. The Debtors' filing of that motion, culminating in the entry of the Sale Order, all clearly occurred prior to the Initial Closing and, therefore, constitute Debtors' Cure Amounts. Likewise, to the extent that the "Servicer's default" was the commencement of these chapter 11 cases, such "default" clearly occurred prior to the Initial Closing on the August 6, 2007 Petition Date. Moreover, to the extent that the DBNTC Cure Objection seeks reimbursement of fees and expenses relating to the Debtors' sale of the servicing business, such amounts would constitute Transfer Costs under the Sale Order, which are defined as "reasonable out of pocket costs and expenses incurred by a Counterparty as a result of the assumption and assignment or transfer and chargeable under the Assumed Contracts." (Sale Order ¶ 39). The Sale Order provides that Transfer Costs, if properly filed in accordance with the Sale Order, "are a [Debtors'] Cure Amount" and "in no event shall the Purchaser have any liability for, and no Purchaser Collateral shall be used to pay, any such Transfer Costs." *Id.*

10.    Even assuming, arguendo, that the Purchaser was required to fund payment of the DBNTC cure claims under the Sale Order, DBNTC has done nothing beyond baldly asserting that it "is entitled to payment of its fees and expenses in connection with the transfer of the servicing of the mortgage loans" and indemnification "in connection with any and all claims, losses and costs incurred by it as a result of the actions of the Servicer." (DBNTC Cure Objection at 4). DBNTC has not pointed to any provision in the DBNTC Servicing Agreements

that purport to give DBNTC the right to recover the fees and expenses it asserts in the DBNTC

Cure Objection.

11.     Without knowing the specific indemnification provisions at issue, there is no way

for the Purchaser to determine whether the obligation to indemnify DBNTC has been triggered

under the DBNTC Servicing Agreements.  Moreover, DBNTC did not include any invoices to

support the fees and expenses that comprise its Cure Objection.  Without any documentation

supporting these fees, the Purchaser has no basis to determine whether the fees relate to Assumed

Contracts, whether the fees were reasonable or whether the fees relate to a default under the

Servicing Agreements.  The Purchaser therefore reserves all of its rights to supplement this

Reply to the extent DBNTC subsequently provides a basis for its claim.

12.     Thus, to the extent that DBNTC is owed the $20,150 cure amount it asserts, the

entire amount is properly included in the Debtors' Cure Amounts, not the Purchaser's Cure

Amounts.

WHEREFORE, the Purchaser respectfully requests that the Court enter an order denying

DBNTC's Second Cure Objection.

## Reservation of Rights

13.     The Purchaser reserves the right to object further to the DBNTC Cure Objection

on any and all additional factual or legal grounds.[3]  Without limiting the generality of the

---

[3]     In its Cure Claim, DBNTC reserved its rights to supplement its Cure Claim with additional documentation. The Purchaser, likewise, reserves all its rights to supplement or amend this Reply to the extent DBNTC supplements or amends its Cure Claim.

In addition, DBNTC seeks to preserve its rights to assert an administrative claim in respect of its purported indemnification rights, pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (i) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (ii) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (iii) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code [Docket No. 66] (the "Cash Management Order").  The Cash Management Order requires the Debtors "to perform indemnification obligations as provided under the Securitization Documents" and provides administrative expense status for certain trustee monitoring efforts that are "reimbursable under the indemnification

foregoing, the Purchaser specifically reserves the right to amend this Reply, file additional papers in support of this Reply or take other appropriate actions to (a) respond to any allegation or defense that may be raised in a response filed by or on behalf of DBNTC or other interested parties, (b) further object to the Cure Claim to the extent DBNTC provides (or attempts to provide) additional documentation or substantiation or (c) further object to the Cure Claim based on additional information that may be discovered upon further review by the Purchaser or through discovery pursuant to the applicable provisions of Part VII of the Bankruptcy Rules.

Dated: April 8, 2009

SAUL EWING LLP

By: _____

Mark Minuti (No. 2659)
Lucian B. Murley (No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6840

*Counsel to American Home Mortgage Servicing, Inc., fka AH Mortgage Acquisition Co., Inc.*

---

provisions of the Securitization Documents . . . ." (Cash Management Order at 6 (emphasis added).) Thus, the Cash Management Order preserves only those rights DBNTC would otherwise have under the DBNTC Servicing Agreements. As discussed above, DBNTC has failed to demonstrate any such right. DBNTC also argues that the Cash Management Order confers administrative expense status on the trustees' monitoring efforts. The "monitoring efforts" referred to in the Cash Management Order, however, are described as "reasonable access . . . to the Debtors' facilities, personnel and record-keeping systems in order to allow them to monitor the Debtors' compliance with the Securitization Servicing Functions and to make contingency plans in the event the Debtors seek to reject any of the Securitization Documents [that] may be executory contracts," as well as "electronic access to view and monitor transactions and balances in [accounts established pursuant to, or in implementation of, the Securitization Documents]." (Cash Management Order at 7-8.) This description simply provides the trustees with the right to monitor the Debtors' servicing functions and obtain reimbursement for such monitoring efforts (to the extent provided under the applicable servicing agreements) and is in no way broad enough to encompass legal fees for monitoring the Debtors' bankruptcy cases generally. Moreover, to the extent the fees asserted in the Cure Claim are properly reimbursable to DBNTC, the Purchaser has the obligation to reimburse the Debtors for such amounts only to the extent such fees relate to defaults resulting from acts or omissions occurring after the Initial Closing. As discussed above, the fees and expenses DBNTC seeks in its Cure Claim directly relate to actions taken by the Debtors prior to the Initial Closing. Accordingly, the Purchaser would have no obligation to reimburse the Debtors for such amounts.