UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | x<br>: | Chapter 11 |
|  | : |  |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware | : |  |
| corporation, et al.,[1] | : | Jointly Administered |
|  | : |  |
| Debtors. | : | Hearing Date: May 8, 2009 @ 11:30 a.m. |
|  | : | Related to Docket No. 5280 |
|  | x |  |

### REPLY OF AMERICAN HOME MORTGAGE SERVICING, INC. TO OBJECTION OF CITIBANK, N.A. TO PROPOSED PURCHASER'S CURE AMOUNT

American Home Mortgage Servicing, Inc., a Delaware corporation formerly known as AH Mortgage Acquisition Co., Inc. (the "Purchaser"), through its undersigned counsel, hereby submits its reply to the Objection of Citibank, N.A. ("CITI") to Proposed Purchaser's Cure Amount [Docket No. 5280] (the "Second CITI Cure Objection"), filed by CITI on July 31, 2008. In support of this Reply, the Purchaser respectfully represents as follows:

### Preliminary Statement

1.    Pursuant to the order approving the sale of the Debtors' mortgage servicing business to the Purchaser (the "Sale Order"), both the Debtors and the Purchaser have certain responsibilities with respect to curing defaults under contracts to be assumed and assigned in connection with the sale. Specifically, paragraph 36 of the Sale Order provides that the

---

[1]    The above-captioned debtors and debtors in possession in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are:  American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation, formerly known as American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp., a New York Corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

Purchaser shall fund and be liable to the Debtors for all amounts owed, if any, with respect to "defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing to the Final Closing."

2.      CITI has filed two cure objections, alleging that it is entitled to the following cure payments with respect to CITI's assumed servicing contracts: (i) an indemnification claim in an unliquidated amount for the Servicer's failure to perform under the Servicing Agreements[2]; (ii) fees and expenses related to the failure to properly record the mortgage loans in an unliquidated amount; (iii) administration fees and reimbursement of expenses relating to extraordinary services; and (iv) legal fees.

3.      Under the plain language of the Sale Order, although the Purchaser is responsible for funding certain cure amounts due under the Assumed Contracts, that funding requirement is triggered only when the cure amount due results from a default with respect to acts or omissions that occurred after the initial closing of the sale on November 16, 2007. Because CITI's claim for legal fees and expenses relate to the Debtors' bankruptcy filing and the sale of the servicing business – actions initiated by the Debtors' filing of their voluntary petitions and motion to approve sale, which all clearly occurred before November 16, 2007 - the Purchaser is in no way responsible for funding any portion of the resulting cure amount that CITI alleges it is owed. Accordingly, the Second CITI Cure Objection should be denied.

**Background**

4.      On October 30, 2007, the Court entered an Order [Docket No. 1711], approving the sale of the Debtors' mortgage loan servicing business to the Purchaser, pursuant to the terms

---

[2]      To the extent CITI supplements its cure amount to include any liability allegedly incurred as a result of litigation relating to the Trusts or Servicers or to include any fees and expenses related to the proper recordation of certain mortgages, the Purchaser reserves all of its rights to supplement this Reply.

of an Asset Purchase Agreement among certain of the Debtors and the Purchaser dated as of September 25, 2007, as amended. The Sale Order, among other things, authorized the Debtors to assume and assign and/or transfer to the Purchaser certain contracts (collectively, the "Assumed Contracts"), including, among other things, certain agreements with CITI in connection with five securitizations in which the Debtors serviced the following mortgage loans: (a) American Home Mortgage Investment Trust Series 2004-3 Mortgage Backed Notes, (b) American Home Mortgage Assets LLC, Mortgage Backed Pass-Through Certificates, Series 2006-3; (c) American Home Mortgage Assets LLC, Mortgage Backed Pass-Through Certificates, Series 2006-4; (d) GSR Mortgage Loan Trust 2006-AR2, Mortgage Pass-Through Certificates, Series 2006-AR2; and (e) Structured Asset Mortgage Investments II Inc., Mortgage Pass-Through Certificates, Series 2007-ARI (collectively, the "CITI Servicing Agreements").

5.    The Sale Order further apportioned the cure amounts related to the Assumed Contracts among the Debtors and the Purchaser such that the Debtors are responsible for all cure amounts (the "Debtors' Cure Amounts") arising from defaults based on acts or omissions occurring prior to the initial closing of the sale on November 16, 2007 (the "Initial Closing"), and the Purchaser is responsible for funding cure amounts (the "Purchaser's Cure Amounts") arising from defaults based on acts or omissions occurring during the period from the Initial Closing to the final closing of the sale on April 11, 2008 (the "Final Closing"). (Sale Order ¶¶ 35, 36).

6.    The Initial Closing occurred on November 16, 2007. After the Initial Closing, the Debtors filed the Notice of Interim Period Cure Schedule [Docket No. 2166]. For each of the CITI Servicing Agreements, Exhibit A to the Notice indicates that the Debtors' proposed Interim Cure Amount is $0. On December 21, 2007, CITI filed its First Objection to the Interim Period

Cure Amount (the "First CITI Objection"), pursuant to which CITI asserts that, in addition to a protective claim in an unliquidated amount, the Debtors' Cure Amount is $59,783.61 based on bank default administration fees and legal fees and expenses relating to the Servicer's default and the Debtors' sale of the servicing business.

7.    On May 18, 2008, the Debtors filed the Notice of (i) Debtors' Proposed Purchaser's Cure Amounts and (ii) Deadline for Filing Objections to the Proposed Purchaser's Cure Amounts [Docket No. 4084] (the "Purchaser's Cure Notice"), pursuant to which the Debtors notified the counterparties to the Assumed Contracts of the proposed amounts necessary to cure defaults under those contracts arising from acts or omissions that occurred after the Initial Closing through and including the Final Closing (the "Interim Period"). Exhibit A to the Purchaser's Cure Notice lists the proposed Purchaser's Cure Amount Due in connection with the CITI Servicing Agreements as $0.

8.    On July 31, 2008, CITI filed the Second CITI Cure Objection, pursuant to which CITI objects to the proposed Purchaser's Cure Amounts for the CITI Servicing Agreements. The Second CITI Cure Objection asserts that, in addition to a protective claim in an unliquidated amount, the appropriate Purchaser's Cure Amount is $107,222.43 based on bank default administration fees and legal fees and expenses relating to the Servicer's default and the Debtors' sale of the servicing business.

## CITI's Cure Objection Should Be Denied

9.    As an initial matter, the Sale Order makes clear that it is the Debtors – and *not* the Purchaser – that are obligated to make cure payments in connection with the Debtors' assumption of the Assumed Contracts. (Sale Order ¶ 36). With respect to the Purchaser's Cure Amounts, the Sale Order states that the Purchaser "shall fund and be liable to the Debtors for all

amounts owed, if any, with respect to *defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing until the Final Closing . . .*" (Sale Order ¶ 36 (emphasis added)).  Accordingly, the cure amount due to CITI for the Debtors' assumption of the CITI Servicing Agreements, if any, must be paid by the Debtors from the Cure Escrow, and the Purchaser is obligated to fund or reimburse the Debtors only for those cure amounts, if any, that relate to defaults under the CITI Servicing Agreements arising from acts or omissions that occurred after the Initial Closing.

10.     In its Cure Objection, CITI wholly fails to describe any act or omission occurring during the Interim Period that resulted in a default under the CITI Servicing Agreements.[3]  For example, the Second CITI Cure Objection states that CITI's legal fees relate to "the Servicer's default and the Debtors' sale of the servicing business."  (Second CITI Cure Objection at 4). However, fees associated with the transfer of the servicing business pursuant to the Sale Order are the direct result of the Debtors' act of initiating the sale process by filing the motion to approve the sale of the servicing business.  The Debtors' filing of that motion, culminating in the entry of the Sale Order, all clearly occurred <u>prior</u> to the Initial Closing and, therefore, constitute Debtors' Cure Amounts.  Likewise, to the extent that the "Servicer's default" was the Debtors' commencement of these chapter 11 cases, such "default" also clearly occurred prior to the Initial Closing on the August 6, 2007 Petition Date.  Moreover, to the extent that the Second Cure Objection seeks reimbursement of fees and expenses relating to the Debtors' sale of the servicing business, such amounts would constitute Transfer Costs under the Sale Order, which are defined as "reasonable out of pocket costs and expenses incurred by a Counterparty as a result of the

---

[3]     To the extent that CITI asserts that the Debtors' bankruptcy filing or financial condition resulted in a default under the CITI Servicing Agreements, the Bankruptcy Code makes clear that the cure requirement is excused with respect to so-called *"ipso facto"* defaults. 11 U.S.C. § 365(b)(2)(A) - (C).

assumption and assignment or transfer and chargeable under the Assumed Contracts." (Sale Order ¶ 39). The Sale Order provides that Transfer Costs, if properly filed in accordance with the Sale Order, "are a [Debtors'] Cure Amount" and "in no event shall the Purchaser have any liability for, and no Purchaser Collateral shall be used to pay, any such Transfer Costs". *Id.*

11.    Even assuming, arguendo, that the Purchaser was required to fund payment of the CITI cure claims under the Sale Order, CITI has done nothing beyond baldly asserting that it "is entitled to administration fees and seeks reimbursement of expenses" relating to the "Servicer's default and the Debtors' sale of the servicing business." (Second CITI Cure Objection at 4). CITI has not pointed to any provision in the CITI Servicing Agreements that purport to give CITI the right to recover the fees and expenses it asserts in the Second CITI Cure Objection. Without knowing the specific indemnification provisions at issue, there is no way for the Purchaser to determine whether the obligation to indemnify CITI has been triggered under the CITI Servicing Agreements.[4]  Moreover, CITI did not include any invoices to support the fees and expenses that comprise its Second Cure Objection.  Without any documentation supporting these fees, the Purchaser has no basis to determine whether the fees relate to Assumed Contracts, whether the fees were reasonable or whether the fees relate to a default under the Servicing Agreements.  The Purchaser therefore reserves all of its rights to supplement this Reply to the extent CITI subsequently provides a basis for its claim.

---

[4]    Under one of CITI's Servicing Agreements, the Servicing Agreement for the American Home Mortgage Investment Trust 2004-3 (dated September 29, 2004) (the "2004-3 Trust"), the indemnification provisions provides that the Master Servicer is only obligated to indemnify the Trustee for:

> expense[s] incurred . . . arising out of, or in connection with, the failure by the Master Servicer to perform its duties in compliance with this Servicing Agreement, including the costs and expenses (including reasonable legal fees and expenses) of *defending against any claim* . . .

(2004-3 Trust at 31) (emphasis added).  Since CITI has not "defended against any claim," this indemnification provision would not apply and the Purchaser would owe no obligation to CITI.

12.     Based on the limited information available in the Second CITI Cure Objection, the Purchaser believes that any amounts owing relate solely to the Debtors' bankruptcy filing and not to a default arising under the Assumed Contracts with respect to acts or omissions occurring during the Interim Period.

WHEREFORE, the Purchaser respectfully requests that the Court enter an order denying CITI's Second Cure Objection.

### Reservation of Rights

13.     The Purchaser reserves the right to object further to the Second CITI Cure Objection on any and all additional factual or legal grounds.  Without limiting the generality of the foregoing, the Purchaser specifically reserves the right to amend this Reply, file additional papers in support of this Reply or take other appropriate actions to (a) respond to any allegation or defense that may be raised in a response filed by or on behalf of CITI or other interested parties, (b) further object to the Cure Claim to the extent CITI provides (or attempts to provide) additional documentation or substantiation or (c) further object to the Cure Claim based on additional information that may be discovered upon further review by the Purchaser or through discovery pursuant to the applicable provisions of Part VII of the Bankruptcy Rules.

Dated: April 8, 2009

**SAUL EWING LLP**

By:

Mark Minuti (No. 2659)
Lucian B. Murley (No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899
(302) 421-6840

*Counsel to American Home Mortgage Servicing, Inc., fka AH Mortgage Acquisition Co., Inc.*