IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
In re:                                                     : Chapter 11
                                                           :
AMERICAN HOME MORTGAGE                                     : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et                 :
al.,[1]                                                    : Jointly Administered
                                                           :
        Debtors.                                      : **Hearing Date: May 8, 2009 at 11:30 a.m. (EDT)**
---------------------------------------------------------- x **Related to Docket Nos. 3847, 4021, 4084, 5286**

**REPLY OF AMERICAN HOME MORTGAGE SERVICING, INC.,
FORMERLY KNOWN AS AH MORTGAGE ACQUISITION CO., INC., TO
OBJECTION AND OMNIBUS PURCHASER'S CURE CLAIM OF WELLS
FARGO BANK, N.A. AS MASTER SERVICER, SECURITIES ADMINISTRATOR,
TRUST ADMINISTRATOR AND/OR INDENTURE TRUSTEE FOR THAT
<u>PERIOD BETWEEN THE INITIAL CLOSING AND THE FINAL CLOSING</u>**

      American Home Mortgage Servicing, Inc., a Delaware corporation formerly known as AH Mortgage Acquisition Co., Inc. (the "<u>Purchaser</u>"), through its undersigned counsel, hereby submits its Reply (the "<u>Reply</u>") to the Objection and Omnibus Purchaser's Cure Claim of Wells Fargo Bank, N.A. as Master Servicer, Securities Administrator, Trust Administrator and/or Indenture Trustee for the Period Between the Initial Closing and the Final Closing [Docket No. 5286] (the "<u>Cure Claim</u>"), filed by Wells Fargo Bank, N.A. ("<u>Wells Fargo</u>"). In support of this Reply, the Purchaser respectfully represents as follows:

---

[1] The above-captioned debtors and debtors in possession in these cases (collectively, the "<u>Debtors</u>"), along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation, formerly known as American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

**Preliminary Statement**

1. Under the order approving the sale of the Debtors' mortgage servicing business to the Purchaser, both the Debtors and the Purchaser have certain responsibilities with respect to curing defaults under contracts to be assumed and assigned in connection with the sale. Wells Fargo asserts its Cure Claim, alleging a total of $58,841.50 for Wells Fargo's internal costs, as well as attorneys' fees and expenses incurred by Wells Fargo relating to the transfer of the servicing business from the Debtors to the Purchaser. Under the plain language of the order approving the sale, although the Purchaser is responsible for funding certain cure amounts, that funding requirement is triggered only when the cure amount due results from a default with respect to acts or omissions that occurred after the initial closing of the sale on November 16, 2007. Because the act that allegedly triggered Wells Fargo's purported indemnification rights that form the basis of its Cure Claim—the Debtors' proposed sale of the servicing business initiated by the Debtors' filing of their motion to approve the sale—clearly occurred before November 16, 2007, the Purchaser is in no way responsible for funding any portion of the resulting cure amount that Wells Fargo alleges it is owed. Accordingly, the Cure Claim should be denied.

**Background**

2. On October 30, 2007, the Court entered an order [Docket No. 1711] (the "Sale Order"), approving the sale of the Debtors' mortgage loan servicing business to the Purchaser, pursuant to the terms of an Asset Purchase Agreement among certain of the Debtors and the Purchaser dated as of September 25, 2007, as amended. The Sale Order, among other things, authorized the Debtors to assume and assign and/or transfer to the Purchaser certain contracts (collectively, the "Assumed Contracts"). The Sale Order further apportioned the cure amounts related to the Assumed Contracts among the Debtors and the Purchaser such that the Debtors are

responsible for all cure amounts (the "Debtors' Cure Amounts") arising from defaults based on acts or omissions occurring prior to the initial closing of the sale on November 16, 2007 (the "Initial Closing"), and the Purchaser is responsible for funding cure amounts (the "Purchaser's Cure Amounts") arising from defaults based on acts or omissions occurring during the period from the Initial Closing to the final closing of the sale on April 11, 2008 (the "Final Closing"). (Sale Order ¶¶ 35, 36.)[2] The Sale Order includes a schedule (Schedule I), that lists the proposed Debtors' Cure Amounts due as of October 30, 2007 for each Assumed Contract.

3. On May 19, 2008, the Debtors filed the Notice of (i) Debtors' Proposed Purchaser's Cure Amounts and (ii) Deadline for Filing Objections to the Proposed Purchaser's Cure Amounts [Docket No. 4084] (the "Purchaser's Cure Notice"), pursuant to which the Debtors notified the counterparties to the Assumed Contracts of the proposed amounts necessary to cure defaults under those contracts arising from acts or omissions that occurred after the Initial Closing through and including the Final Closing (the "Interim Period"). Exhibit A to the Purchaser's Cure Notice lists as $0 the proposed Purchaser's Cure Amounts due in connection with certain servicing agreements where Wells Fargo is the indenture trustee or the trustee in connection with certain securitization trusts (the "Wells Fargo Servicing Agreements").

4. On July 31, 2008, Wells Fargo filed its Cure Claim, objecting to the Purchaser's Cure Amounts for the Wells Fargo Servicing Agreements. In its Cure Claim, Wells Fargo asserts that the appropriate Purchaser's Cure Amount should be $58,841.50. This amount includes indemnification for (a) Wells Fargo's internal fees in the amount of $2,667 relating to

---

[2] For the convenience of the Court and parties in interest, the relevant portions of the Sale Order are attached hereto as **Exhibit A**.

default management and administration and (b) legal fees and expenses in the aggregate amount of $56,174.50 incurred by Wells Fargo in connection with the sale. (Cure Claim ¶ 1.)

### Wells Fargo's Cure Claim Should Be Denied

5.  As an initial matter, the Sale Order makes clear that it is the Debtors—and not the Purchaser—that are obligated to make cure payments in connection with the Debtors' assumption of the Assumed Contracts. (Sale Order ¶ 36 ("[T]he Debtors are and remain liable to pay or otherwise satisfy the [Debtors'] Cure Amount, if any, from the Cure Escrow[3] and the Purchaser's Cure Amount, if any, to Counterparties under Assumed Contracts . . . .").) With respect to the Purchaser's Cure Amounts, the Sale Order states that the Purchaser "shall fund and be liable to the Debtors for all amounts owed, if any, with respect to <u>defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing until the Final Closing</u> . . . ." (Sale Order ¶ 36 (emphasis added).) Accordingly, to be entitled to cure amounts funded by the Purchaser, Wells Fargo must do more than simply allege it incurred fees and expenses during the Interim Period—it must demonstrate that the amounts incurred relate to defaults resulting from acts or omissions occurring during the Interim Period.

6.  In its Cure Claim, Wells Fargo wholly fails to describe any act or omission occurring during the Interim Period that resulted in a default under the Wells Fargo Servicing Agreements. Indeed, Wells Fargo points only to the sale of the Debtors' servicing business as the reason Wells Fargo incurred the claimed fees and expenses. For example, the Cure Claim states that Wells Fargo's legal fees "relate <u>solely</u> to the sale and transfer of the Debtors' loan servicing business." (Cure Claim at 4 (emphasis added).) Wells Fargo also suggests it is entitled

---

3   Under the Sale Order, the Debtors placed $10 million in an escrow account to satisfy the Debtors' Cure Amounts. To the extent the Debtors' Cure Amounts exceed the amount escrowed, the Sale Order preserved the rights of the counterparties to the Assumed Contracts to assert general unsecured claims against the Debtors (but not against the Purchaser). (Sale Order ¶ 35.)

to indemnification for "management and administration fees . . . relating to the sale and the transfer of servicing to the Purchaser." (Cure Claim at 2.) However, fees associated with the transfer of the servicing business pursuant to the Sale Order (dated October 30, 2007) are the direct result of the Debtors' act of initiating the sale process by filing a motion to approve the sale of the servicing business. The Debtors' filing of that motion, culminating in the entry of the Sale Order, all clearly occurred prior to the Initial Closing, and therefore, to the extent the amounts asserted in the Cure Claim are even owing to Wells Fargo under the terms of the Wells Fargo Servicing Agreements,[4] such amounts constitute Debtors' Cure Amounts.

7. Indeed, Wells Fargo's entire Cure Claim are considered Transfer Costs under the Sale Order, which are defined as "reasonable out of pocket costs and expenses incurred by a Counterparty as a result of [the] assumption and assignment or transfer and chargeable under the Assumed Contracts." (Sale Order ¶ 39.) The amounts Wells Fargo seeks in its Cure Claim are for costs and expenses incurred by Wells Fargo, as a counterparty to the assumed Wells Fargo Servicing Agreements. Thus, to the extent the amounts sought in the Cure Claim are chargeable under the Wells Fargo Servicing Agreements, such amounts constitute Transfer Costs. The Sale

---

[4] Wells Fargo's Cure Claim does nothing more than make conclusory assertions that it "is entitled to payment of its fees and expenses in connection with the transfer of the servicing of the mortgage loans" and indemnification "in connection with any and all claims, losses and costs incurred by it as a result of the actions of the Servicer." (Cure Claim at 4.) Wells Fargo has not pointed to any provision in the Wells Fargo Servicing Agreements that purport to give Wells Fargo the right to recover the fees and expenses asserted in the Cure Claim. Without knowing the specific indemnification provisions at issue, there is no way for the Purchaser to determine whether the obligation to indemnify Wells Fargo has even been triggered under the Wells Fargo Servicing Agreements. Moreover, Wells Fargo did not include any invoices to support the fees and expenses that comprise its Cure Claim. Without any documentation supporting these fees, the Purchaser has no basis to determine whether the fees relate to Assumed Contracts, whether the fees were reasonable or whether the fees relate to a default under the Servicing Agreements. The invoices are particularly relevant, because at least some of Wells Fargo's fees could relate to servicing agreements for home equity lines of credit, which were not assumed in connection with the sale. Accordingly, Wells Fargo has not demonstrated any right to recover the amounts sought under the Wells Fargo Servicing Agreements and has wholly failed to meet its burden with respect to the Cure Claim. The Purchaser reserves all of its rights to supplement this Reply to the extent Wells Fargo subsequently provides a basis for its claim.

Order provides that Transfer Costs, if properly filed in accordance with the Sale Order, "are a [Debtors'] Cure Amount" and "in no event shall the Purchaser have any liability for, and no Purchaser Collateral shall be used to pay, any such Transfer Costs." (Id.)

8. For all the foregoing reasons, Wells Fargo's Cure Claim should be denied.

## **Reservation of Rights**

9. The Purchaser reserves the right to object further to the Cure Claim on any and all additional factual or legal grounds.[5] Without limiting the generality of the foregoing, the Purchaser specifically reserves the right to amend this Reply, file additional papers in support of this Reply or take other appropriate actions to (a) respond to any allegation or defense that may

---

[5] In its Cure Claim, Wells Fargo reserved its rights to supplement its Cure Claim with additional documentation and to amend its Cure Claim to include claims for indemnification for litigation costs or any other breach of the Wells Fargo Servicing Agreements. The Purchaser, likewise, reserves all its rights to supplement or amend this Reply to the extent Wells Fargo supplements or amends its Cure Claim.

In addition, Wells Fargo seeks to preserve its rights to assert an administrative claim in respect of its purported indemnification rights, pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (i) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (ii) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (iii) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code [Docket No. 66] (the "Cash Management Order"). The Cash Management Order requires the Debtors "to perform indemnification obligations as provided under the Securitization Documents" and provides administrative expense status for certain trustee monitoring efforts that are "reimbursable under the indemnification provisions of the Securitization Documents . . . ." (Cash Management Order at 6 (emphasis added).) Thus, the Cash Management Order preserves only those rights Wells Fargo would otherwise have under the Wells Fargo Servicing Agreements. As discussed above, Wells Fargo has failed to demonstrate any such right. Wells Fargo also argues that the Cash Management Order confers administrative expense status on the trustees' monitoring efforts. The "monitoring efforts" referred to in the Cash Management Order, however, are described as "reasonable access . . . to the Debtors' facilities, personnel and record-keeping systems in order to allow them to monitor the Debtors' compliance with the Securitization Servicing Functions and to make contingency plans in the event the Debtors seek to reject any of the Securitization Documents [that] may be executory contracts," as well as "electronic access to view and monitor transactions and balances in [accounts established pursuant to, or in implementation of, the Securitization Documents]." (Cash Management Order at 7-8.) This description simply provides the trustees with the right to monitor the Debtors' servicing functions and obtain reimbursement for such monitoring efforts (to the extent provided under the applicable servicing agreements) and is in no way broad enough encompass legal fees for monitoring the Debtors' bankruptcy cases generally. Moreover, to the extent the fees asserted in the Cure Claim are properly reimbursable to Wells Fargo, the Purchaser has the obligation to reimburse the Debtors for such amounts only to the extent such fees relate to defaults resulting from acts or omissions occurring after the Initial Closing. As discussed above, the fees and expenses Wells Fargo seeks in its Cure Claim directly relate to actions taken by the Debtors prior to the Initial Closing. Accordingly, the Purchaser would have no obligation to reimburse the Debtors for such amounts.

be raised in a response filed by or on behalf of Wells Fargo or other interested parties, (b) further object to the Cure Claim to the extent Wells Fargo provides (or attempts to provide) additional documentation or substantiation or (c) further object to the Cure Claim based on additional information that may be discovered upon further review by the Purchaser or through discovery pursuant to the applicable provisions of Part VII of the Bankruptcy Rules.

Dated: April 8, 2009

SAUL EWING LLP

By: _____
Mark Minuti (No. 2659)
Lucian B. Murley (No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840

and

**JONES DAY**
Keith C. McDole (TX 13533740)
Daniel P. Winikka (TX 00794873)
Debra K. Simpson (TX 24027986)
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939

COUNSEL FOR AMERICAN HOME MORTGAGE SERVICING, INC., FORMERLY KNOWN AS AH MORTGAGE ACQUISITION CO., INC.