IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           : Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE                                           : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et                       :
al.,[1]                                                          : Jointly Administered
                                                                 :
                Debtors.                                         : **Hearing Date: May 8, 2009 at 11:30 a.m. (EDT)**
---------------------------------------------------------------- x **Related to Docket Nos. 4084, 5287**

**REPLY OF AMERICAN HOME MORTGAGE SERVICING, INC.,
FORMERLY KNOWN AS AH MORTGAGE ACQUISITION CO., INC.,
TO U.S. BANK NATIONAL ASSOCIATION'S OBJECTION TO
THE DEBTORS' PROPOSED PURCHASER'S CURE AMOUNTS**

American Home Mortgage Servicing, Inc., a Delaware corporation formerly known as AH Mortgage Acquisition Co., Inc. (the "Purchaser"), hereby submits its Reply (the "Reply") to the Objection to the Debtors' Proposed Purchaser's Cure Amounts [Docket No. 5287] (the "Cure Claim"), filed by U.S. Bank National Association ("U.S. Bank"). In support of this Reply, the Purchaser respectfully represents as follows:

**Preliminary Statement**

1.      Under the order approving the sale of the Debtors' mortgage servicing business to the Purchaser, both the Debtors and the Purchaser have certain responsibilities with respect to curing defaults under contracts to be assumed and assigned in connection with the sale. U.S. Bank asserts its Cure Claim, alleging a total of $124,443.50 for U.S. Bank's internal costs, as

---

[1]    The above-captioned debtors and debtors in possession in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation, formerly known as American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

566613.1 4/8/09

well as attorneys' fees and expenses incurred by U.S. Bank relating to the Debtors' bankruptcy cases in general and the transfer of the servicing business from the Debtors to the Purchaser. Under the plain language of the order approving the sale, although the Purchaser is responsible for funding certain cure amounts, that funding requirement is triggered only when the cure amount due results from a default with respect to acts or omissions that occurred after the initial closing of the sale on November 16, 2007. Because the acts that allegedly triggered U.S. Bank's purported indemnification rights that form the basis of its Cure Claim—the Debtors' bankruptcy filing and the proposed sale of the servicing business initiated by the Debtors' filing of their motion to approve the sale—clearly occurred before November 16, 2007, the Purchaser is in no way responsible for funding any portion of the resulting cure amount that U.S. Bank alleges it is owed. Accordingly, the Cure Claim should be denied.

### Background

2.     On October 30, 2007, the Court entered an order [Docket No. 1711] (the "Sale Order"), approving the sale of the Debtors' mortgage loan servicing business to the Purchaser, pursuant to the terms of an Asset Purchase Agreement among certain of the Debtors and the Purchaser dated as of September 25, 2007, as amended. The Sale Order, among other things, authorized the Debtors to assume and assign and/or transfer to the Purchaser certain contracts (collectively, the "Assumed Contracts"). The Sale Order further apportioned the cure amounts related to the Assumed Contracts among the Debtors and the Purchaser such that the Debtors are responsible for all cure amounts (the "Debtors' Cure Amounts") arising from defaults based on acts or omissions occurring prior to the initial closing of the sale on November 16, 2007 (the "Initial Closing"), and the Purchaser is responsible for funding cure amounts (the "Purchaser's Cure Amounts") arising from defaults based on acts or omissions occurring during the period from the Initial Closing to the final closing of the sale on April 11, 2008 (the "Final Closing").

assumption of the Assumed Contracts. (Sale Order ¶ 36 ("[T]he Debtors are and remain liable to pay or otherwise satisfy the [Debtors'] Cure Amount, if any, from the Cure Escrow[3] and the Purchaser's Cure Amount, if any, to Counterparties under Assumed Contracts . . . .").) With respect to the Purchaser's Cure Amounts, the Sale Order states that the Purchaser "shall fund and be liable to the Debtors for all amounts owed, if any, with respect to <u>defaults arising under the Assumed Contracts with respect to acts or omissions occurring during the period from the Initial Closing until the Final Closing</u> . . . ." (Sale Order ¶ 36 (emphasis added).) Accordingly, to be entitled to cure amounts funded by the Purchaser, U.S. Bank must do more than simply allege it incurred fees and expenses during the Interim Period—it must demonstrate that the amounts incurred relate to defaults resulting from acts or omissions occurring during the Interim Period.

6.  In its Cure Claim, U.S. Bank wholly fails to describe any act or omission occurring during the Interim Period that resulted in a default under the U.S. Bank Servicing Agreements. Indeed, U.S. Bank points only to Debtors' bankruptcy and the sale of the Debtors' servicing business as the reasons U.S. Bank incurred the claimed fees and expenses. (Cure Claim ¶ 25.) However, fees associated with monitoring the Debtors' bankruptcy cases (filed August 6, 2007) and the transfer of the servicing business pursuant to the Sale Order (dated October 30, 2007) are the direct result of the Debtors' act of filing for bankruptcy and initiating the sale process by filing a motion to approve the sale of the servicing business. The Debtors' filing of its petition and the sale motion, culminating in the entry of the Sale Order, all clearly occurred <u>prior</u> to the Initial Closing and, therefore, to the extent the amounts asserted in the Cure

---

[3]   Under the Sale Order, the Debtors placed $10 million in an escrow account to satisfy the Debtors' Cure Amounts. To the extent the Debtors' Cure Amounts exceed the amount escrowed, the Sale Order preserved the rights of the counterparties to the Assumed Contracts to assert general unsecured claims against the Debtors (but not against the Purchaser). (Sale Order ¶ 35.)

Claim are even owing to U.S. Bank under the terms of the U.S. Bank Servicing Agreements,[4] such amounts constitute Debtors' Cure Amounts.

7.   Moreover, the amounts U.S. Bank seeks in its Cure Claim for fees and expenses associated with the sale are considered Transfer Costs under the Sale Order, which are defined as "reasonable out of pocket costs and expenses incurred by a Counterparty as a result of [the] assumption and assignment or transfer and chargeable under the Assumed Contracts." (Sale Order ¶ 39.) As part of its Cure Claim, U.S. Bank, as a counterparty to the assumed U.S. Bank Servicing Agreements, seeks to recover the fees and expenses it incurred in connection with the Debtors' transfer of the servicing business. Thus, to the extent the amounts sought in the Cure Claim relating to the sale are chargeable under the U.S. Bank Servicing Agreements, such amounts constitute Transfer Costs. The Sale Order provides that Transfer Costs, if properly filed in accordance with the Sale Order, "are a [Debtors'] Cure Amount" and "in no event shall the

---

[4]   In its Cure Claim, U.S. Bank does nothing more than make conclusory assertions that it is entitled to recover its internal costs and attorneys' fees under the U.S. Bank Servicing Agreements and, thus, fails to demonstrate any right to recover the amounts sought. First, U.S. Bank has not alleged any specific default under the U.S. Bank Servicing Agreements that would entitle U.S. Bank to recover attorneys' fees and internal costs. To the extent U.S. Bank relies on the Debtors' commencement of these cases as a "default" under the U.S. Bank Servicing Agreements that triggers U.S. Bank's alleged indemnification rights, any such provision—clearly ipso facto in nature—would be rendered unenforceable by section 365(b)(2) of the Bankruptcy Code. Second, the typical indemnification provisions in the U.S. Bank Servicing Agreements provide indemnification only for those legal fees "resulting from or related to any act or omission to act of any prior servicer, owner or originator of a Mortgage Loan or Mortgaged Property (or any other Person) prior to the transfer of servicing to the RMBS Master Servicer . . . ." (RMBS Servicing Agreement for the American Home Mortgage Investment Trust 2005-4A § 5.06 (emphasis added).) (For the convenience of the Court and parties in interest, the relevant portion of this servicing agreement is attached hereto as **Exhibit B**.) Because there has been no transfer to the RMBS Master Servicer here, U.S. Bank is not entitled to indemnification for its legal fees under the U.S. Bank Servicing Agreements. Finally, U.S. Bank did not include any invoices to support the fees and expenses that comprise its Cure Claim. Without any documentation supporting these fees, the Purchaser has no basis to determine whether the fees relate to Assumed Contracts, whether the fees were reasonable or whether the fees relate to a default under the Servicing Agreements. The invoices are particularly relevant, because at least some of U.S. Bank's fees could relate to servicing agreements for home equity lines of credit, which were not assumed in connection with the sale. Accordingly, U.S. Bank has wholly failed to meet its burden with respect to the Cure Claim, and the Purchaser reserves all of its rights to supplement this Reply to the extent U.S. Bank subsequently provides a basis for its purported indemnification rights.

Purchaser have any liability for, and no Purchaser Collateral shall be used to pay, any such Transfer Costs." (Id.)

8. For all the foregoing reasons, U.S. Bank's Cure Claim should be denied.

### Reservation of Rights

9. The Purchaser reserves the right to object further to the Cure Claim on any and all additional factual or legal grounds.[5] Without limiting the generality of the foregoing, the Purchaser specifically reserves the right to amend this Reply, file additional papers in support of this Reply or take other appropriate actions to (a) respond to any allegation or defense that may be raised in a response filed by or on behalf of U.S. Bank or other interested parties, (b) further

---

[5] In its Cure Claim, U.S. Bank asserted unliquidated claims, and reserved its rights to supplement its Cure Claim, for indemnification for litigation costs, damages for failure to properly record mortgage assignments or any other breach of the U.S. Bank Servicing Agreements. The Purchaser, likewise, reserves all its rights to supplement or amend this Reply to the extent U.S. Bank supplements or amends its Cure Claim.

In addition, U.S. Bank seeks to preserve its rights to assert an administrative claim in respect of its purported indemnification rights, pursuant to the Order Pursuant to Sections 105(a), 345, and 503(b)(1) of the Bankruptcy Code (i) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (ii) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (iii) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code [Docket No. 66] (the "Cash Management Order"). The Cash Management Order requires the Debtors "to perform indemnification obligations as provided under the Securitization Documents" and provides administrative expense status for certain trustee monitoring efforts that are "reimbursable under the indemnification provisions of the Securitization Documents . . . ." (Cash Management Order at 6 (emphasis added).) Thus, the Cash Management Order preserves only those rights U.S. Bank would otherwise have under the U.S. Bank Servicing Agreements. As discussed above, U.S. Bank has failed to demonstrate any such right. U.S. Bank also argues that the Cash Management Order confers administrative expense status on the trustees' monitoring efforts. The "monitoring efforts" referred to in the Cash Management Order, however, are described as "reasonable access . . . to the Debtors' facilities, personnel and record-keeping systems in order to allow them to monitor the Debtors' compliance with the Securitization Servicing Functions and to make contingency plans in the event the Debtors seek to reject any of the Securitization Documents [that] may be executory contracts," as well as "electronic access to view and monitor transactions and balances in [accounts established pursuant to, or in implementation of, the Securitization Documents]." (Cash Management Order at 7-8.) This description simply provides the trustees with the right to monitor the Debtors' servicing functions and obtain reimbursement for such monitoring efforts (to the extent provided under the applicable servicing agreements) and is in no way broad enough encompass legal fees for monitoring the Debtors' bankruptcy cases generally. Moreover, to the extent the fees asserted in the Cure Claim are properly reimbursable to U.S. Bank, the Purchaser has the obligation to reimburse the Debtors for such amounts only to the extent such fees relate to defaults resulting from acts or omissions occurring after the Initial Closing. As discussed above, the fees and expenses U.S. Bank seeks in its Cure Claim directly relate to actions taken by the Debtors prior to the Initial Closing. Accordingly, the Purchaser would have no obligation to reimburse the Debtors for such amounts.

object to the Cure Claim to the extent U.S. Bank provides (or attempts to provide) additional documentation or substantiation or (c) further object to the Cure Claim based on additional information that may be discovered upon further review by the Purchaser or through discovery pursuant to the applicable provisions of Part VII of the Bankruptcy Rules.

Dated: April 8, 2009

                            **SAUL EWING LLP**

By: _____
Mark Minuti (No. 2659)
Lucian B. Murley (No. 4892)
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840

and

**JONES DAY**
Keith C. McDole (TX 13533740)
Daniel P. Winikka (TX 00794873)
Debra K. Simpson (TX 24027986)
2727 North Harwood Street
Dallas, TX 75201-1515
Telephone: (214) 220-3939

COUNSEL FOR AMERICAN HOME
MORTGAGE SERVICING, INC., FORMERLY
KNOWN AS AH MORTGAGE ACQUISITION
CO., INC.