# EXHIBIT B

## Sale Procedures

## SALE PROCEDURES

These sale procedures (the "Sale Procedures") set forth the process by which American Home Mortgage Holdings, Inc., and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the chapter 11 proceedings pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), jointly administered under Case No. 07-11047 (CSS) (collectively, the "Debtors"),[1] will conduct the sale (the "Sale") of certain Asset Pools (as defined below) of mortgage assets. These procedures, which provide for the sale of the Asset Pools via an auction process, have been approved by the Bankruptcy Court pursuant to an order dated April [__], 2009 (the "Sale Procedures Order"). The Sale Procedures are binding upon all bidders and the bidders will have no right to alter these Sale Procedures.

1. Assets to be Sold

As of March 31, 2009, the mortgage assets in the Asset Pools consisted of 220 mortgage loans and real estate owned properties (as defined in greater detail below, the "REO Properties"), that were either owned by the Debtors outright or subject to the rights of ABN AMRO Bank, N.V. ("ABN"), with an aggregate unpaid principal balance ("UPB") of approximately $20,533,883. The mortgage assets will be sold in four separate pools (each, an "Asset Pool," and collectively, the "Asset Pools"), as follows:

(a) Performing Second Lien Loans: Home equity lines of credit or other mortgage loan products secured by a junior interest in real property where the mortgagor is current or less than thirty (30) days delinquent in its payment obligations as of March 31, 2009. The Debtors seek to sell approximately 131 of the Performing Second Lien Loans, none of which are ABN Mortgage Loans, with a total UPB of approximately $6,709,327;

(b) Non-Performing Second Lien Loans: Home equity lines of credit or other mortgage loan products secured by a junior interest in real property where the mortgagor is more than thirty (30) days delinquent in its payment obligations as of March 31, 2009. The Debtors seek to sell approximately 44 of the Non-Performing Second Lien Loans, none of which are ABN Mortgage Loans, with a total UPB of approximately $2,435,865;

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

(c) <u>REO Properties</u>: Properties owned by the Debtors through foreclosure. The Debtors seek to sell approximately 26 REO Properties, of which approximately 7 are ABN Mortgage Loans, with a total UPB of approximately $7,559,970; and

(d) <u>First Lien Loans</u>: Mortgage loans issued for purposes other than to finance the construction of housing secured by a first priority security interest in the real property. The Debtors seek to sell approximately 19 First Lien Loans, of which approximately 7 are ABN Mortgage Loans, with a total UPB of approximately $3,828,721.

2. <u>Bidding and Stalking Horse Bidder</u>

The Debtors provide these Sale Procedures, whereby prospective bidders may compete to submit the highest bid for any or all Asset Pools to purchase the assets in such Asset Pools on an "as is, where is" basis, substantially pursuant to the terms of the Loan Sale and Interim Servicing Agreements, by and between Vantium Capital Markets, L.P. ("<u>Vantium</u>") as the stalking horse bidder (the "<u>Stalking Horse Bidder</u>"), AHM Corp., AHM Acceptance and American Home Mortgage Servicing, Inc. (the "<u>Interim Servicer</u>") (each, a "<u>Sale Agreement</u>") attached hereto as <u>Exhibits 1, 2, 3, and 4</u>, whereby bidders shall be required to submit bids on an entire Asset Pool on a loan-by-loan basis. The Stalking Horse Bidder has submitted formal, binding, unconditional, irrevocable bids (each, a "<u>Stalking Horse Bid</u>") for each of the four Asset Pools as reflected in the Sale Agreements. As the Stalking Horse Bidder, Vantium will be entitled to an expense reimbursement of $57,000 (the "<u>Stalking Horse Expense Reimbursement</u>"). Each of Sale Agreements shall not be amended or modified without the prior written consent of the parties thereto. Any modification or amendment of any Sale Agreement made without the consent of the Stalking Horse Bidder shall release the Stalking Horse Bidder from any obligations to proceed with the purchase of the Asset Pool pursuant to the Sale Agreement and the procedures set forth herein. If the event that a modification involves an adjustment to the purchase price, the Debtors reserve the right not to proceed with the Sale of such Asset Pool if the Debtors determine, in consultation with the Committee, that the modified purchase price for such Asset Pool is not sufficiently high in relation to the aggregate principal balance of the assets of such Asset Pool.

3. <u>Expense Reimbursements</u>

Pursuant to the Sale Procedures Order, the Debtors, with the consent of the Committee, are authorized to award and pay bidder(s) up to $100,000 in the aggregate to reimburse reasonable costs and expenses in connection with the due diligence process of such bidder(s) (the "<u>Bidder Expense Reimbursement</u>"). The Bidder Expense Reimbursement shall be paid to one or more potential bidders and in such amounts, not to exceed $100,000 in the aggregate, that the Debtors, with the consent of the Committee determine in their discretion should be awarded.

Notwithstanding the foregoing, if a potential bidder is notified that they shall be entitled to a portion of the Bidder Expense Reimbursement, such Bidder Expense Reimbursement shall only be payable to the extent such bidder submits a Qualified Bid. The Bidder Expense

Reimbursement shall be payable solely from the proceeds received from the Sale of the applicable Asset Pool and from no other source. To the extent a Sale is not consummated because the Debtors withdraw the Motion, or otherwise, the Debtors and their estates shall not be required to pay and shall not be liable for such Bidder Expense Reimbursement even if such Asset Pools are sold in the future; provided, however, that the Debtors shall still be authorized to pay the Bidder Expense Reimbursement with the consent of the Committee. In addition, the Debtors is not authorized to pay any Bidder Expense Reimbursement to a bidder that is determined to be the Successful Bidder.

4. Access to Information

Information relevant to the Asset Pools shall be made available to potential bidders on the Debtors' Intralinks website within twenty-four (24) hours following the execution by potential bidders of a valid nondisclosure agreement, including certain books and records, material contracts, and other financial information for due diligence investigation. To obtain a copy of a non-disclosure agreement or Sale Agreement, contact the Debtors' advisors, Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington, D.C. 20006 (Attn.: Darryl Conway); Telephone (202) 741-3665. Specific instructions for accessing the information will be provided after execution of such agreements. Interested bidders requesting information about the qualification process, and information in connection with their due diligence, should contact American Home Mortgage Investment Corp., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Damian Voulo); Telephone: (631) 622-3273.

**The diligence period will take place from March 31, 2009 to May 11, 2009.** The Debtors will coordinate all reasonable requests for additional information and due diligence access from potential bidders.

5. Bid Deadlines

The Debtors will be accepting formal, binding, unconditional, irrevocable bids (each, a "Bid"). All Bids must be submitted in writing so that they are **actually** received no later than 5:00 p.m. (ET) on **May 11, 2009** (the "Bid Deadline"). Each bidder must deliver its Bid to: (i) the Debtors, American Home Mortgage Holdings, Inc., 538 Broadhollow Road, Melville, New York 11747 (Attn.: Damian Voulo and Damian Pasternak); (ii) advisors to the Debtors, Zolfo Cooper, 1166 Avenue of the Americas, New York, New York 10036 (Attn: Bret Fernandes and Scott Martinez), and Milestone Advisors, LLC, 1775 Eye Street, NW, Suite 800, Washington, DC 20006 (Attn.: Darryl Conway); (iii) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn.: Sean M. Beach and Andy Kostoulas); (iv) counsel to the Official Committee of Unsecured Creditors, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022 (Attn.: Mark S. Indelicato and Mark Power).

*Bids may also be submitted by email, on or prior to the Bid Deadline, to each of the following:* **Damian.Voulo@americanhm.com, Damian.Pasternak@americanhm.com, dconway@milestonecap.com, bfernandes@kroll.com, smartinez@kroll.com, cgrear@ycst.com, sbeach@ycst.com, ekostoulas@ycst.com, MPower@hahnhessen.com, mindelicato@hahnhessen.com, and dgrubman@hahnhessen.com.**

6. <u>Bid Requirements</u>

Bids must contain:

(a) an executed version of the appropriate Sale Agreement for each Asset Pool on which bidder wishes to bid, which contains a bid the value of which must be higher or otherwise better, as determined by the Debtors in consultation with the Committee, than the value of (i) the Stalking Horse Bid for such Asset Pool and (ii) the minimum <u>initial</u> overbid increment for the relevant Asset Pool of: (a) $50,000 for the Performing Second Lien Loan Pool, (b) $5,000 for the Non-Performing Second Lien Loan Pool, (c) $150,000 for the REO Property Pool, and/or (d) $60,000 for the First Lien Loan Pool;

(b) a marked or blacklined version of each Sale Agreement to show any changes to the corresponding form Sale Agreement;

(c) a letter setting forth the identity of the bidder (including an authorized representative thereof), such bidder's counsel, and contact information for such bidder, its authorized representative and its counsel;

(d) a certified or bank check or wire transfer in an amount equal to (or the sum of a combination thereof if bidding on more than one Asset Pool, as applicable):

1. $50,000 for the Performing Second Lien Loan Pool;

2. $5,000 for the Non-Performing Second Lien Loan Pool;

3. $300,000 for the REO Property Pool; and

5. $100,000 for the First Lien Loan Pool;

as a minimum good faith deposit (the "<u>Minimum Deposit</u>"). The Minimum Deposit must be provided for any and all Asset Pools on which the bidder wishes to bid, which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the Bid if the bidder ultimately purchases the Asset Pool for which the Minimum Deposit was provided;

(e) written evidence of the bidder's financial ability to pay cash to consummate the Sale (in a form satisfactory to the Debtors, in consultation with the Committee);

(f) written acknowledgement that such Bid is unconditional and not contingent upon any event, including, without limitation, any due diligence investigation, the receipt of financing or any further bidding approval;

(g) written confirmation that such Bid shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or Second Best Bidder;

(h) written evidence that the bidder has the requisite corporate or similar authority to consummate the Sale; and

(i) such other information as the Debtors, in consultation with the Committee, may request.

Bids that contain the foregoing shall be "Qualified Bids." Persons that comply with the foregoing with respect to an Asset Pool shall be "Qualified Bidders" for that Asset Pool. Each Qualified Bidder shall comply with all reasonable requests for additional information by the Debtors and their advisors regarding such Qualified Bidder's financial wherewithal to consummate and perform obligations in connection with a Sale. Failure by a Qualified Bidder to comply with requests for additional information may be a basis for the Debtors, in consultation the Committee, to determine that a Bid made by such Qualified Bidder is not a Qualified Bid. Each Stalking Horse Bid shall be deemed a Qualified Bid for purposes of these Sale Procedures.

7.   Selection of the Successful Bidder if Only One Qualified Bid Submitted

If, with respect to any Asset Pool, the only Qualified Bid submitted by the Bid Deadline is the Stalking Horse Bid, the Debtors shall not hold an Auction and instead shall seek an order of the Bankruptcy Court approving the Stalking Horse Bid on May 15, 2009.

8.   Auction Required if Two or More Qualified Bids Are Submitted

If, with respect to any Asset Pool, two or more timely Qualified Bids are received by the Bid Deadline, the Debtors will conduct an auction (the "Auction"). The Auction will take place on **May 13, 2009 at 10:00 a.m. (ET)** at the offices of Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899-0391 or such later time and place as the Debtors may provide and that is reasonably acceptable to the Committee, so long as such change is communicated reasonably in advance by the Debtors to all Qualified Bidders. Qualified Bidders may participate in the Auction in person or by telephone.

9.   Auction Procedures and Sale Issues

Only the parties who have submitted a Qualified Bid with respect to a particular Asset Pool will be eligible to participate in the Auction for that Asset Pool. Only the authorized representatives of each of the Qualified Bidders, the Debtors, and the Committee, (collectively, the "Auction Participants") shall be permitted to participate in the Auction. **Any Qualified Bidder with respect to a particular Asset Pool shall be permitted to attend the Auction for that Asset Pool in person or by telephone.**

Auctions will be conducted one at a time in an order to be determined by the Debtors. Prior to the commencement of an Auction, the Debtors will announce the highest Qualified Bid submitted for that Asset Pool and the Qualified Bidder that submitted such highest Qualified Bid. The Debtors will not announce the Qualified Bids submitted by any other Qualified Bidder. The bidding at the Auction for each Asset Pool shall start at the highest Qualified Bid for such Asset Pool. At the Auction, the Qualified Bidders for a given Asset Pool will bid in amounts greater than the then highest Qualified Bid for that Asset Pool by at least a minimum overbid increment equal to: (a) $25,000 for the Performing Second Lien Loan Pool, (b) $5,000 for the Non-Performing Second Lien Loan Pool, (c) $75,000 for the REO Property Pool, and (d) $30,000 for the First Lien Loan Pool. Each Qualified Bidder for a given Asset Pool will be permitted a fair,

but limited, amount of time (no more than 15 minutes, unless otherwise agreed by the Debtors in consultation with the Committee) to respond to the previous bid for that Asset Pool at the Auction. The Auction shall continue until there is only one Qualified Bid for each Asset Pool that is the highest Qualified Bid.

Upon the failure of the Debtors to receive an overbid for a particular Asset Pool, or such other time as the Debtors may determine prior to the conclusion of the Auction, the Debtors, in consultation with the Committee, may determine the "highest and best" Qualified Bid (the "Successful Bid" and the bidder making such Qualified Bid, the "Successful Bidder") and the next "highest and best" Qualified Bid (the "Second Best Bid" and the bidder making such Qualified Bid, the "Second Best Bidder") and the price shall be identified.

The Debtors intend to close the Auction on or before 5:00 p.m. on May 13, 2009, but reserve the right to continue the Auction beyond such time if bidding on a particular Asset Pool continues.

These procedures, as summarized above, are subject to amendment by Debtors, in consultation with the Committee, at any time, including during the Auction, upon notice to the Qualified Bidders. The procedures established are binding upon all bidders and the bidders will have no right to alter these procedures.

The Debtors will present the Successful Bidder and the Successful Bid for each Asset Pool to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the sale process, including, among other things, that (i) the process leading to the selection of the Successful Bid for each Asset Pool was conducted and the Successful Bidder for each Asset Pool was selected in accordance with these Sale Procedures, (ii) the sale process was fair in substance and procedure, and (iii) consummation of the Sale contemplated by the Successful Bid for each Asset Pool will provide the highest or otherwise best value for such Asset Pool and is in the best interests of the Debtors and their estates.

The Debtors shall have accepted a Qualified Bid only when (i) the Qualified Bid is declared the Successful Bid at the Sale Hearing, (ii) the Bankruptcy Court has approved the Successful Bid and an order approving such Successful Bid has been docketed, (iii) definitive documentation has been executed in respect thereof, and (iv) the Sale closes.

10.    Sale Hearing and Closing of the Sales

The Debtors shall seek an order of the Bankruptcy Court approving the Successful Bid and the Second Best Bidder, if any, for each Asset Pool at a hearing to be held at 1:00 p.m. (ET) on **May 15, 2009** (the "Sale Hearing"). The closing of the Sale with the Successful Bidder shall occur on or before 10:00 a.m. (ET) on May 18, 2009. In the event that the Successful Bidder does not close before 2:00 p.m. (ET) on May 18, 2009, the Debtors shall be authorized to close with the Second Best Bidder, and the Second Best Bidder will be required to close, at 10:00 a.m. (ET) on May 19, 2009.

For any Asset Pool where there is an Auction, the increase in the purchase price for that Asset Pool shall be allocated on an asset-level basis in the same proportions set forth in the original Sale Agreement submitted by the Qualified Bidder.

11.  Reservation of Rights

The Debtors reserve the right, in consultation with the Committee, upon notice to all parties that have demonstrated an interest in bidding for each Asset Pool, to: (i) enter into a stalking horse agreement and seek Court approval of same; (ii) waive terms and conditions set forth herein with respect to any or all potential bidders, (iii) impose additional terms and conditions with respect to any or all potential bidders, (iv) extend the deadlines set forth herein, (v) cancel the sale of any or all Asset Pools in open court without further notice; (vi) remove, any time before Closing, some or all of the assets from an Asset Pool to be sold, including, without limitation, where such loans are satisfied partially or in full prior to the closing of any Sale and where individual REO Properties become subject to a contract with a realtor; and (vii) amend the Sale Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.