### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
In re:                                           :
                                                 :
                                                 :
                                                 :    Chapter 11
AMERICAN HOME MORTGAGE                           :
HOLDINGS, INC., a Delaware corporation, et al.,  :    Case No. 07-11047 (CSS)
                                                 :
                                                 :    Jointly Administered
                                                 :
                       Debtors.                  :
-----------------------------------------------------------x

**NINETEENTH MONTHLY APPLICATION OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, SPECIAL INVESTIGATORY LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES DURING THE PERIOD FROM FEBRUARY 1, 2009 THROUGH FEBRUARY 28, 2009**

| | |
|---|---|
| Name of applicant: | Quinn Emanuel Urquhart Oliver & Hedges, LLP |
| Authorized to provide professional services to: | Debtors |
| Date of retention: | September 13, 2007 (nunc pro tunc to August 10, 2007) |
| Period for which compensation and reimbursement is sought: | February 1, 2009 - February 28, 2009 |
| Amount of compensation requested: | $81,855.50 |
| Amount of expense reimbursement requested: | $3,522.61 |

This is an:____X____ interim _____ final application.

This is the nineteenth monthly fee application filed by Quinn Emanuel Urquhart Oliver & Hedges, LLP in these cases.

**Prior Applications:**

| Date Filed/ Docket No. | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| Nov. 21, 2007 / Docket No. 2141 | August 10, 2007 - August 31, 2007 | $217,865.00 | $1,404.26 | $217,865.00 | $1,404.26 |
| Nov. 21, 2007 / Docket No. 2142 | September 1, 2007 - September 30, 2007 | $293,619.00 | $37,757.62 | $293,619.00 | $37,757.62 |
| Dec. 4, 2007  / Docket No. 2277 | October 1, 2007 - October 31, 2007 | $497,748.00 | $36,429.13 | $497,748.00 | $36,429.13 |
| Feb. 7, 2007  / Docket No. 2897 | November 1, 2007 - November 30, 2007 | $287,397.00 | $13,334.64 | $287,397.00 | $13,289.64 |
| Mar. 17, 2008   / Docket No. 3326 | December 1, 2007 - December 31, 2007 | $123,807.25 | $17,100.11 | $123,807.25 | $15,285.06 |
| Mar. 17, 2008   / Docket No. 3327 | January 1, 2008 - January 31, 2008 | $204,209.75 | $7,435.31 | $204,209.75 | $7,112.55 |
| May 19, 2008 / Docket No. 4076 | February 1, 2008 - February 29, 2008 | $172,483.00 | $9,484.53 | $172,483.00 | $9,484.53 |
| May 30, 2008 / Docket No. 4319 | March 1, 2008 - March 31, 2008 | $171,026.25 | $6,421.36 | $171,026.25 | $6,421.36 |
| June 13, 2008 / Docket No. 4626 | April 1, 2008 - April 30, 2008 | $122,547.00 | $4,743.47 | $122,547.00 | $4,743.47 |
| August 21, 2008 / Docket No. 5512 | May 1, 2008 - May 31, 2008 | $ 210,227.00 | $ 7,320.78 | $210,227.00 | $ 7,320.78 |
| September 12, 2008 / Docket No. 5855 | June 1, 2008 - June 30, 2008 | $233,945.75 | $3,513.35 | $233,945.75 | $3,513.35 |
| September 12, 2008 / Docket No. 5856 | July 1, 2008 - July 31, 2008 | $124,699.50 | $8,811.09 | $124,699.50 | $8,811.09 |
| October 29, 2008 / Docket No. 6471 | August 1, 2008 - August 30, 2008 | $18,508.50 | $3,951.15 | $18,508.50 | $3,951.15 |
| November 26, 2008 / Docket No. 6634 | September 1, 2008 - September 30, 2008 | $39,181.50 | $407.00 | $39,181.50 | $407.00 |
| December 12, 2008 / Docket No. 6713 | October 1, 2008- October 31, 2009 | $64,936.25 | $3,812.94 | $64,936.25 | $3,812.94 |
| February 13, 2009 / Docket No. 7005 | November 1, 2008- November 30, 2008 | $12,811.00 | $4,296.32 | $10,248.80 | $4,296.32 |

| March 13, 2009 / Docket No. 7102 | December 1, 2008- December 31, 2008 | $29,893.00 | $648.22 | | |
| March 13, 2009 / Docket No. 7103 | January 1, 2009- January 31, 2009 | $21,954.00 | $430.75 | | |

ATTACHMENT TO NINETEENTH MONTHLY FEE APPLICATION OF
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP: SPECIAL INVESTIGATORY,
LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS

| NAME | POSITION; EXPERIENCE | HOURLY RATE | TOTAL HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| James Tecce | Partner effective January 1, 2009 | 720.00 | 39.20 | $28,224.00 |
| Daniel Holzman | Of Counsel for 1 year, admitted in 1998 | 605.00 | 21.00 | $12,705.00 |
| Robert K. Dakis | Associate for 4 years, admitted in 2004 | 385.00 | 35.90 | $13,821.50 |
| Marc A. Palladino | Associate for 2 years, admitted in 2007 | 365.00 | 40.30 | $14,709.50 |
| Harrison Denman | Associate for 3 years, admitted in 2006 | 375.00 | 29.10 | $10,912.50 |
| Martine Lacroix | Paralegal | 235.00 | 5.8 | $1,363.00 |
| Michael Lee | Litigation Support | 150.00 | 0.80 | $120.00 |
| TOTAL | | $475.63 (BLENDED RATE) [1] | 172.10 HOURS | $81,855.50 |

---

[1]   The blended rate <u>excluding</u> paraprofessionals is $485.63 per hour.

SUMMARY TABLE OF SERVICES RENDERED DURING
NINETEENTH MONTHLY FEE PERIOD
(FEBRUARY 1, 2009 TO FEBRUARY 28, 2009 )

| ACTIVITY | HOURS | FEES |
|---|---|---|
| Fee Application/Fee Issues | 11.70 | $3,679.00 |
| Lender Claims | 160.40 | $78,176.50 |
| TOTAL | **172.10** | **$81,855.50** |

## SUMMARY BY CATEGORY TYPE OF DISBURSEMENTS BILLED
### (FEBRUARY 1, 2009 TO FEBRUARY 28, 2009 )

| Disbursements | Amount |
|---|---|
| Lexis | $2,367.64 |
| Printing | $66.00 |
| Client Meals | $41.18 |
| Westlaw | $1,022.90 |
| Telephone | $13.49 |
| Taxi | $11.40 |
| **Total Disbursements** | **$3,522.61** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------x
In re:                                   :
                                         :
                                         :        Chapter 11
                                         :
AMERICAN HOME MORTGAGE                   :
HOLDINGS, INC., a Delaware corporation, et al.,  :   Case No. 07-11047 (CSS)
                                         :
                                         :        Jointly Administered
                                         :
                   Debtors.              :
---------------------------------------------------------x     Objection Deadline:
```

**NINETEENTH MONTHLY APPLICATION OF QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP, SPECIAL INVESTIGATORY LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES DURING THE PERIOD FROM FEBRUARY 1, 2009 THROUGH FEBRUARY 28, 2009**

Quinn Emanuel Urquhart Oliver & Hedges, LLP ("**Quinn Emanuel**"), special

investigatory, litigation and conflicts counsel to American Home Mortgage Holdings, Inc., a

Delaware Corporation, and its affiliated debtors and debtors-in-possession in the above-

captioned cases (collectively, the "**Debtors**" or "**American Home**"), hereby submits its

application (the "**Application**") to this Court pursuant to sections 330 and 331 of chapter 11 of

title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), Local Rule 2016-2 of the Local Rules of

Bankruptcy Practice and Procedure For United States Bankruptcy Court For the District of

Delaware ("**Local Rule No. 2016-2**"), for an order (i) allowing compensation of $81,855.50 for

actual, reasonable and necessary professional services rendered, and reimbursement of $3,522.61

for actual, reasonable and necessary expenses incurred during the period from February 1, 2009

7

through February 28, 2009 (the "**Nineteenth Monthly Fee Period**"),[2] and (ii) authorizing and directing the Debtors to pay to Quinn Emanuel the amount of $69,007.01, which is equal to the sum of eighty percent (80%) of such allowed compensation and one hundred percent (100%) of expense reimbursement, and represents as follows:

## I.    INTRODUCTION

### A.    Background

1.    Bankruptcy Filing.  On August 6, 2007, (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    Jurisdiction.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Local Rule No. 2016-2.  This Application is made pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Pursuant To Sections 331 and 105(a) of the Bankruptcy Code (the "**Compensation Order**"), entered on September 3, 2007 by this Court.

---

[2]   Certain fees or expenses requested by Quinn Emanuel in the Application relate to services rendered in prior fee application periods.  Quinn Emanuel has not previously requested such fees or expenses in any prior application.

### B.    Retention Of Quinn Emanuel And Billing History

3.    On September 13, 2007, the Court authorized Quinn Emanuel's retention as special investigatory, litigation and conflicts counsel to American Home nunc pro tunc to August 10, 2007, pursuant to the Order Pursuant to Section 327(a) of The Bankruptcy Code and Bankruptcy Rule 2014(a) Approving the Retention of Quinn Emanuel Urquhart Oliver & Hedges, LLP, Nunc Pro Tunc, as Special Investigatory, Litigation and Conflicts Counsel for the Debtors (Docket No. 741) (the "**Retention Order**").  The Retention Order authorized Quinn Emanuel to be compensated pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and Orders of this Court, including the Compensation Order.

4.    This Application is Quinn Emanuel's nineteenth monthly application for approval and allowance of compensation. Quinn Emanuel makes this monthly application for approval and allowance of compensation pursuant to section 331 of the Bankruptcy Code and the Compensation Order.  No prior application has been made to this or any other court for the relief requested herein, nor has payment been received by Quinn Emanuel for legal services provided to and on behalf of the Debtors, or for out-of-pocket expenses incurred in connection therewith.

5.    Quinn Emanuel has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

6.    No promises have been received by Quinn Emanuel or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## II.    CASE STATUS

7.      On August 15, 2008, the Debtors filed that certain Chapter 11 Plan of Liquidation of the Debtors.  That same day, the Debtors filed that certain Disclosure Statement Pursuant To Section 1125 Of The Bankruptcy Code With Respect To The Chapter 11 Plan Of Liquidation Of The Debtors Dated As Of August 15, 2008.  On September 30, 2008, the Debtors filed an amended plan and disclosure statement.  On October 8, 2008, the Debtors filed a further amended plan and disclosure statement.  On November 25, 2008, the Court approved the amended disclosure statement and the solicitation procedures for the amended plan.  On February 18, 2009 the Debtors filed an amended chapter 11 plan of liquidation.  On February 23, 2009, the Court entered an order confirming the amended plan.

## III.    APPLICATION

8.      By this Application, Quinn Emanuel is seeking (a) allowance of reasonable compensation for actual and necessary professional services rendered by Quinn Emanuel, as special investigatory, litigation and conflicts counsel for the Debtors, during the Nineteenth Monthly Fee Period, and (b) reimbursement of actual, reasonable and necessary expenses incurred by Quinn Emanuel in connection with such services during the Nineteenth Monthly Fee Period.

9.      Specifically, Quinn Emanuel seeks approval of the sum of $81,855.50 for actual, reasonable and necessary legal services rendered on behalf of the Debtors during the Nineteenth Monthly Fee Period, and $3,522.61 for reimbursement of actual, reasonable and necessary expenses incurred in connection with the rendition of such services.  The fees sought by the Application reflect an aggregate of 172.10 hours of attorney and paraprofessional time spent and recorded in performing services for the Debtors during the Nineteenth Monthly Fee Period, at a

blended average hourly rate of $475.63 for both professionals and paraprofessionals. The

blended hourly rate for professionals only is $485.63.

10.     Quinn Emanuel rendered to the Debtors all services for which compensation is

sought solely in connection with these cases, in furtherance of the duties and functions of the

Debtors.

11.     Quinn Emanuel maintains written records of the time expended in the rendition of

the professional services required by the Debtors. These records are maintained in the ordinary

course of Quinn Emanuel's practice. For the convenience of the Court and parties in interest,

attached hereto as part of the cover sheet is a billing summary for the Nineteenth Monthly Fee

Period, setting forth the name of each attorney and paraprofessional for whose work on these

cases compensation is sought, each attorney's year of bar admission, the aggregate of the time

expended by each such attorney and paraprofessional, the hourly billing rate for each such

attorney and paraprofessional at Quinn Emanuel's current billing rates, and an indication of the

individual amounts requested as part of the total amount of compensation requested. Also set

forth in the billing summary is additional information indicating whether each attorney is a

partner or associate, and how many years each attorney has held such position. The

compensation requested by Quinn Emanuel is based on the customary compensation charged by

comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

12.     Attached hereto as Exhibit "A" are time entry records broken down in tenths of an

hour by project category, in accordance with the U.S. Trustee Guidelines, setting forth a detailed

description of services performed by each attorney and paraprofessional on behalf of the

Debtors.

13.    Quinn Emanuel also maintains records of all actual and necessary expenses incurred in connection with the performance of professional services, a summary of which also is attached hereto as part of the cover sheet.  The summary lists the amounts and categories of expenses for which reimbursement is sought.  Attached hereto as Exhibit "B" is a summary of the expenses, including the date the expense was incurred and the charge.

## IV.    SUMMARY OF PROFESSIONAL SERVICES RENDERED

14.    To provide an orderly and meaningful summary of the services rendered on behalf of the Debtors by Quinn Emanuel, in accordance with the U.S. Trustee Guidelines, Quinn Emanuel has established the following separate project billing categories in connection with these cases:

a)  Bank/Thrift Issues
b)  Cash Collateral and DIP Financing
c)  Case Management/Calendar Maintenance/Service of
d)  Class Actions
e)  Court Hearings
f)  Creditor Inquiries
g)  Employee Issues
h)  Fee Application Preparation/Fee Issues
i)  Government Issues/Investigations
j)  Insurance Issues
k)  Lender Claims
l)  Meetings
m) Non-Working Travel (Only 50% Requested)
n)  Other Conflicts
o)  Plan and Disclosure Statement
p)  Recharacterization
q)  Retention of Professionals
r)  Rule 2004 Investigations
s)  Servicing Platform Issues
t)  Stay Relief Matters
u)  Travel Time

15.    The following summary is intended only to highlight a number of the services rendered by Quinn Emanuel in the separate project billing categories where Quinn Emanuel

expended a considerable number of hours on behalf of the Debtors. It is not meant to be a detailed description of all of the work performed by Quinn Emanuel during the Nineteenth Monthly Fee Period. Detailed descriptions of the day-to-day services provided by Quinn Emanuel and the time expended performing such services in each project billing category are fully set forth in Exhibit "A" hereto. Such detailed descriptions show that Quinn Emanuel was heavily involved in the performance of services for the Debtors on a daily basis, including night and weekend work, often under extreme time pressure to meet the needs of the Debtors in these cases.

A.    **Lender Claims**: (Total Hours: 160.40; Total Fees: $78,176.50.)

*Wells Fargo Litigation*

16.    On October 25, 2007, Wells Fargo Bank N.A. ("**Wells Fargo**") filed a complaint in the nature of interpleader against the Debtors and several Bear Stearns entities and affiliates ("**Bear Stearns**"). In its complaint, Wells Fargo seeks to resolve competing claims asserted by the Debtors and Bear Stearns to a monthly payment owing on account of a trust certificate owned by the Debtors and allegedly foreclosed upon by Bear Stearns. Quinn Emanuel attorneys, on behalf of the Debtors, filed an Answer to Wells Fargo's complaint on December 11, 2007. Thereafter, American Home and Bear Stearns engaged in substantial discovery related to the disputed monthly payment. Specifically, Quinn Emanuel attorneys and Bear Stearns exchanged initial disclosures, requests for production of documents, and contention interrogatories, as well as each party's responses to same. Moreover, Quinn Emanuel attorneys deposed Bear Stearns' hearing witness on June 4, 2008 and defended a deposition of American Home's hearing witness on June 6, 2008.

17.     On July 2, 2008, Quinn Emanuel attorneys, on American Home's behalf, filed a motion for summary judgment on its claim to the disputed monthly payment. That same day Bear Stearns filed a motion for summary judgment on its claim to the disputed payment (the "**Bear Stearns Summary Judgment Motion**"). The Court held a hearing on both summary judgment motions on October 14, 2008. On October 30, 2008, the Court entered an order and issued an opinion granting summary judgment in favor of American Home and against Bear Stearns (the "**Bankruptcy Court Opinion**"). On November 10, 2008, Bear Stearns appealed the Bankruptcy Court Opinion (the "**Appeal**"). On November 20, 2008, Bear Stearns filed its statement of issues and designations of record on appeal. On December 1, 2008, American Home filed its counter-designation of items to be included on the record on appeal with the District Court.

18.     During the Nineteenth Monthly Fee Period, as required by the District Court's local rules, Quinn Emanuel attorneys participated in a mediation of the Appeal. To that end, they prepared a confidential mediation statement outlining the issues in the Appeal and, on February 2, 2009, submitted it to the court-appointed mediator. Thereafter, on February 11, 2009, Quinn Emanuel attorneys prepared for and participated in the mediation with representatives of Bear Stearns (now JPMorgan Chase & Co.), American Home, and the mediator. The parties did not reach agreement to settle the Appeal, which will now proceed to the District Court.

### *American Home Mortgage Corp. -- Broadhollow*

19.     Prior to their bankruptcy filings, American Home funded a portion of their mortgage origination through structured financing techniques using special purpose entitles ("**SPEs**"). Debtor American Home Mortgage Corp. is the sole member manager of such an SPE,

Broadhollow Funding LLC ("**Broadhollow**"). During the Nineteenth Fee Period, Quinn

Emanuel attorneys dedicated considerable time to reviewing and analyzing issues and

considerations concerning the estate's interests in Broadhollow.

### *Calyon Claim Objection*

20.    The estates currently are engaged in litigation with Calyon New York Branch

concerning, *inter alia*, its claims under its repurchase agreement with American Home (and the

estate's objections thereto). During the Ninteenth Fee Period, Quinn Emanuel attorneys assisted

American Home in responding to certain of Calyon's document demands

and gathering responsive, non-privileged documents.

## V.    FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

21.    The factors to be considered in awarding attorneys fees have been enumerated in

In re First Colonial Corporation of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), cert.

denied, 431 U.S. 904, which standards have been adopted by most courts. See, e.g., In re Lan

Assoc., 192 F.3d 109, 123 n.8 (3d. Cir. 1999) (suggesting First Colonial factors apply to § 330

compensation requests). Quinn Emanuel respectfully submits that a consideration of these

factors should result in this Court's allowance of the full compensation sought.

> (1)    The Time and Labor Required. The professional services rendered by Quinn
> Emanuel on behalf of the Debtors have required the continuous expenditure of
> substantial time and effort, under time pressures which sometimes required the
> performance of services late into the evening and, on a number of occasions, over
> weekends. The services rendered required a high degree of professional
> competence and expertise in order to be administered with skill and dispatch.

> (2)    The Novelty and Difficulty of Questions. Novel and complex issues have already
> arisen in the course of the Chapter 11 Cases, and it can be anticipated that other
> such issues will be encountered. In these cases, as in many others in which the
> firm is involved, Quinn Emanuel's effective advocacy and creative approach to
> problem solving have helped clarify and resolve difficult issues and will continue
> to prove beneficial.

(3)     The Skill Requisite to Perform the Legal Services Properly.  Quinn Emanuel believes that its recognized expertise in the area of bankruptcy related litigation and its practical approach to the resolution of issues are contributing to maximizing the size of the Debtors' estate.

(4)     The Preclusion of Other Employment by Applicant Due to Acceptance of the Case.  The matters in which Quinn Emanuel's bankruptcy litigation practice group are involved need attention on a continuous basis and require several of Quinn Emanuel's attorneys to commit significant portions of their time to these cases.

(5)     The Customary Fee.  The compensation sought herein is based upon Quinn Emanuel's normal hourly rates for services of this kind. Quinn Emanuel respectfully submits that the compensation sought herein is not unusual given the magnitude and complexity of these cases and the time dedicated to the representation of the Debtors.  Such compensation is commensurate with fees charged by other attorneys of comparable experience.

(6)     Whether the Fee is Fixed or Contingent.  Quinn Emanuel charges customary hourly rates for the time expended by its attorneys and paraprofessionals in representing the Debtors and Quinn Emanuel's fee is not outcome dependent. Pursuant to sections 330 and 331 of the Bankruptcy Code, all fees sought by professionals retained under section 327 or 1103 of the Bankruptcy Code are contingent pending final approval by the Court, and are subject to adjustment by the Court depending upon the services rendered and the results obtained.

(7)     Time Limitation Imposed by Client or Other Circumstances.  As stated above, Quinn Emanuel has been required to attend to various issues as they have arisen in these cases.  Occasionally, Quinn Emanuel has had to perform those services under significant time constraints requiring attorneys and paraprofessionals assigned to these cases to work evenings and on weekends.

(8)     The Amount Involved and Results Obtained.  Through the efforts of Quinn Emanuel, the Debtors are poised to initiate actions against Third Parties and maximize value for the Debtors' estates.

(9)     The Experience, Reputation and Ability of the Attorneys.  Quinn Emanuel's attorneys involved in this representation have played a major role in numerous complex restructurings including, for example, the chapter 11 cases of Refco Inc., Enron Corp., et al., Safety-Kleen Corp., et al., and Adelphia Communications Corp., et al.  Quinn Emanuel's experience enables it to perform the services described herein competently and expeditiously.

(10)    The "Undesirability" of the Case.  These cases are not undesirable, but as already indicated, have required a significant commitment of time from several of Quinn Emanuel's attorneys.

(11)    Nature and Length of Professional Relationship.  Quinn Emanuel was selected as the Debtors special investigatory, litigation and conflicts counsel shortly after the

Petition Date, on August 10, 2007, and was retained <u>nunc pro tunc</u> to that date pursuant to an order of this Court dated September 13, 2007.

## VI.    ALLOWANCE OF COMPENSATION

22.    The professional services rendered by Quinn Emanuel have required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and action by the Debtors could be addressed with skill and dispatch.  It is respectfully submitted that the services rendered to the Debtors were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors' estates.

23.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.  This Court has authorized the filing of this Application in the Compensation Order.

24.    With respect to the level of compensation, section 330(a)(1) of the Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person: "reasonable compensation for actual, necessary services rendered."  Section 330(a)(3)(A), in turn, provides that:

> [i]n determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;

    (C)    whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issues or task addressed; and

    (E)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a) (3) (A).

25.    The congressional policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases. See In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts") (citation and internal quotation marks omitted).

26.    The total time spent by Quinn Emanuel attorneys and paraprofessionals during the Nineteenth Monthly Fee Period was 172.10 hours, which services have a fair market value of $81,855.50. As shown by this Application and supporting exhibits, Quinn Emanuel spent its time economically and without unnecessary duplication of time (or duplication of the efforts of the Debtors' other retained professionals). In addition, the work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

## VII.   EXPENSES

27.    Quinn Emanuel has expended the total amount of $3,522.61 in actual, reasonable and necessary expenses in connection with representing the Debtors during the Nineteenth Monthly Fee Period. Quinn Emanuel maintains records of all actual and necessary expenses

incurred in connection with the performance of professional services. A breakdown of expenses, including the date the expense was incurred and the charge, is annexed hereto as Exhibit "B."

28.     In connection with the reimbursement of actual, reasonable and necessary expenses, it is Quinn Emanuel's policy to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Quinn Emanuel's clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research, transcription costs, as well as non-ordinary overhead expenses particularly attributable to an individual client or cases such as secretarial and other overtime.

29.     Quinn Emanuel charges the Debtors for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients. Quinn Emanuel seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten cents per page for photocopying; and (b) one dollar per page for out-going facsimiles. In accordance with section 330 of the Bankruptcy Code and with the U.S. Trustee Guidelines, Quinn Emanuel will seek reimbursement only for the actual cost of such expenses to Quinn Emanuel.

30.     In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay, except that the reimbursable cost of photocopying and faxes includes a factor for the cost of equipment.

31.    Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hour fees and expenses for secretarial, library, word processing, and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.

32.    Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations, deluxe meals or air travel in excess of coach fares.  Throughout the Nineteenth Monthly Fee Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## VIII.  NOTICE

33.    No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Application has been given to (a) the United States Trustee, (b) the Debtors, (c) counsel for the Debtors, (d) the Creditors' Committee, and (e) counsel for the Creditors' Committee.  Quinn Emanuel submits that no further notice need be given in accordance with the Compensation Order.

## IX.    CONCLUSION

**WHEREFORE**, Quinn Emanuel respectfully requests the Court to enter an order, substantially in the form attached hereto (i) approving and allowing Quinn Emanuel compensation in the amount of $81,855.50 for actual, reasonable and necessary professional services rendered and reimbursement of $3,522.61 for actual, reasonable and necessary expenses incurred, and authorizing and directing the Debtors to pay to Quinn Emanuel the amount of $69,007.01 which is equal to the sum of eighty percent (80%) of such allowed compensation and one hundred percent (100%) of such expense reimbursement; and (ii) granting such further relief as is just.

Dated: Wilmington, Delaware
　　　　April 14, 2009

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP

By _____
　　　James C. Tecce
　　　Susheel Kirpalani
　　　Harrison L. Denman

　　51 Madison Avenue, 22nd Floor
　　New York, New York  10010
　　Telephone:  (212) 849-7000
　　Telecopier: (212) 849-7100

1

# EXHIBIT A

2

AHM - Fee Application Preparation/Fee Issues

## Statement Detail

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 02/01/09 | JCT | Review and revise November fee application | 0.30 |
| 02/03/09 | HLD | Draft/revise QE November application | 0.40 |
| 02/05/09 | HLD | Revise/finalize QE November fee application (1.9); revise exhibit a to January fee application (.4). | 2.30 |
| 02/09/09 | HLD | Finalized QE November fee application (.8); Draft/revise/circulate QE December fee application (2.1). | 2.90 |
| 02/11/09 | ML4 | Prepare Exhibit B of QE December AHM Fee Application | 5.80 |
| | | Total Hours | 11.70 |

AHM - Lender Claims

**Statement Detail**

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 02/02/09 | HLD | Revised/finalized AHM mediation statement in Wells appeal. | 2.30 |
| 02/02/09 | JCT | Revise mediation statement for Wells Mediation | 0.70 |
| 02/06/09 | HLD | TCs/emails with Sakamoto and Tecce re mediation strategy in Wells appeal (.5); Emails with Sakamoto and Wells counsel re payment of interest (.4). | 0.90 |
| 02/08/09 | JCT | Review Calyon document requests | 0.20 |
| 02/09/09 | HLD | TCs/emails with Sakamoto re mediation and strategy and prep re same (.8); Emails with Tecce (.5); Prep re same (.8). | 2.10 |
| 02/09/09 | JCT | Review email correspondence regarding Wells mediation | 0.20 |
| 02/10/09 | HLD | Attend mediation for Wells appeal (3.7); prep re same (1.3); confs with Sakamoto and Tecce re same (.4); reviewed documents in response to Calyon document requests (2.7). | 8.10 |
| 02/10/09 | JCT | Prepare for (1.0) and conduct (3.7) mediation at Sidley Austin of Wells Fargo-Bear Stearns interpleader appeal | 4.60 |
| 02/10/09 | JCT | Review document requests propounded by Calyon; conf w/ H. Denman re responses | 0.60 |
| 02/11/09 | HLD | TC with Sakamoto re status of wells appeal, conf with Tecce re same (.5); Reviewed documents for Calyon doc request, emails/confs with Crowther (YC) and lit support re same (3.2). | 3.70 |
| 02/11/09 | JCT | Review Broadhollow docs (.5); attend conf call w/ S. Sakamoto, K. Nystrom re Broadhollow (1.0) | 1.50 |
| 02/11/09 | ML5 | Coordinate/process document production re: Caylon. | 0.80 |
| 02/12/09 | DH3 | Confer with J. Tecce re litigation. | 0.30 |
| 02/12/09 | HLD | Review of documents in response to Calyon doc request, emails with Crowther at YC re same. | 3.60 |
| 02/12/09 | JCT | Review next steps for Broadhollow; confs w/ D. Holzman, R. Dakis, S. Beach re same | 1.40 |
| 02/12/09 | RKD | Office conference with J. Tecce regarding research re AHMC/Broadhollow issues (.3); legal research regarding same (5.6). | 5.90 |
| 02/13/09 | RKD | Legal research regarding AHMC/Broadhollow issues (1.6); draft memorandum regarding same (5.6). | 7.20 |
| 02/15/09 | DH3 | Review memo re: AHMC/Broadhollow issues. | 0.60 |
| 02/16/09 | DH3 | Review and comment on memo, follow-up research re same. | 2.90 |
| 02/16/09 | JCT | Revise AHMC/Broadhollow memorandum (1.7); related research (2.0) | 3.70 |

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 02/17/09 | DH3 | Review LLC Agreement. | 0.40 |
| 02/17/09 | JCT | Research AHMC/Broadhollow issues (3.7); revise memorandum regarding same (1.0) | 4.70 |
| 02/18/09 | JCT | Revise memorandum regarding AHMC/Broadhollow (4.1); conf w/ M. Palladino re same (.3); call w/ AHM creditor re issues (.3) | 4.60 |
| 02/18/09 | MAP | Research re: Broadhollow issues. | 4.90 |
| 02/19/09 | DH3 | Conf with J. Tecce and R. Dakis re AHMC/Broadhollow issues. | 0.30 |
| 02/19/09 | JCT | Review/revise memorandum regarding AHMC/Broadhollow | 3.10 |
| 02/19/09 | MAP | Research re: AHMC/Broadhollow issues; drafted memo re: same. | 7.20 |
| 02/19/09 | RKD | Office conference with J. Tecce regarding memo re AHMC/Broadhollow issues (.4); review legal research regarding same (1.9); revise memorandum to incorporate comments from J. Tecce and D. Holzman (5.3); office conference with M. Palladino regarding inserts to memo (.3); incorporate M. Palladino's inserts (.9). | 8.80 |
| 02/20/09 | DH3 | Review and analyze LLC Agreement and research re related legal issues. | 5.10 |
| 02/21/09 | JCT | Review legal research re AHMC/Broadhollow issues | 0.30 |
| 02/22/09 | DH3 | Review memo re AHMC/Broadhollow issues. | 0.10 |
| 02/22/09 | JCT | Review research re AHMC/Broadhollow issues, review and revise memorandum re same | 2.40 |
| 02/23/09 | DH3 | Research, review, and revise memo. | 6.30 |
| 02/23/09 | HLD | TCs/emails with Wells counsel and Sakamoto re payment of interest (.7); TCs/emails with Jackson (YC) and Smith (Sidley) re scheduling of appeal briefs (.4). | 1.10 |
| 02/23/09 | JCT | Call w/ B. Fernandez re Calyon litigation, emails re same (.5); review AHMC/Broadhollow issues w/ D. Holzman and conduct related case review (1.3); revise draft memorandum (2.4); review next steps in Wells Fargo appeal w/ H. Denman; call J. Dorsey (YCST) re same (.2) | 4.40 |
| 02/23/09 | MAP | Research re: AHMC/Broadhollow issues; revised memo. | 9.10 |
| 02/23/09 | RKD | Revise memorandum regarding AHMC/Broadhollow issues per Tecce edits. | 3.70 |
| 02/24/09 | DH3 | Conf re AHMC/Broadhollow issues with J. Tecce, R. Dakis, and M. Palladino. | 0.40 |

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 02/24/09 | HLD | TCs/emails with Sidley re scheduling stip. TC Stratton re same; reviewed draft stipulation. | 0.50 |
| 02/24/09 | JCT | Call w/ S. Sakamoto re AHMC/Broadhollow (.5); conf w/ R. Dakis, D. Holzman, M. Palladino re same (.4) | 0.90 |
| 02/24/09 | MAP | Revised AHMC/Broadhollow memo. | 5.30 |
| 02/24/09 | RKD | Review plan of reorganization in connection with AHMC/Broadhollow issues  memorandum (2.7); office conference with J. Tecce, M. Palladino and D. Holzman regarding same (.4); draft rider for inclusion in memorandum (3.8). | 6.90 |
| 02/25/09 | DH3 | Discuss memo with J. Tecce and M. Palladino. | 0.50 |
| 02/25/09 | HLD | TCs/emails with Sidley and Tecce re scheduling of briefing on wells appeal (.2); Emails with mediator re mediation report status (.3). | 0.50 |
| 02/25/09 | JCT | Revise AHMC/Broadhollow memorandum (3.0); confs w/ M. Palladino and D. Holzman (.5); review Wells deadlines (.2) | 3.70 |
| 02/25/09 | MAP | Revised AHMC/Broadhollow memo. | 7.10 |
| 02/25/09 | RKD | Revise and edit memorandum re AHMC/Broadhollow to incorporate additional comments from J. Tecce (1.3); complete follow-up research for same (1.4). | 2.70 |
| 02/26/09 | DH3 | Review and comment on memo and discuss the same with J. Tecce. | 3.70 |
| 02/26/09 | JCT | Revisions to AHMC/Broadhollow Memorandum | 1.40 |
| 02/26/09 | MAP | Revised AHMC/Broadhollow memo. | 4.90 |
| 02/27/09 | DH3 | Conference call with Craig Grear and Sean Beach of YCST, James Tecce, Robert Dakis, and Marc Palladino to discuss memo. | 0.40 |
| 02/27/09 | HLD | TCs/emails with Sakamoto re status of Wells appeal and scheduling of same, and US Bank litigation and status. | 0.70 |
| 02/27/09 | JCT | Conference call re. memorandum | 0.50 |
| 02/27/09 | MAP | Revised memo. | 1.80 |
| 02/27/09 | RKD | Prepare for conference call regarding memorandum (.3); participate in conference call regarding memorandum (.4). | 0.70 |

Total Hours    160.40

**EXHIBIT B**

Summary by Expenses Incurred
(February 1, 2009 through February 28, 2009)

| Date Posted | Expense / Date Incurred | Amount |
|---|---|---|
| 02/02/09 | Printing | 1.50 |
| 02/02/09 | Printing | 0.10 |
| 02/02/09 | Printing | 0.30 |
| 02/02/09 | Printing | 0.70 |
| 02/02/09 | Printing | 0.60 |
| 02/02/09 | Printing | 0.10 |
| 02/02/09 | Printing | 0.10 |
| 02/02/09 | Printing | 0.10 |
| 02/02/09 | Printing | 0.30 |
| 02/02/09 | Printing | 0.10 |
| 02/02/09 | Printing | 0.70 |
| 02/02/09 | Printing | 0.70 |
| 02/02/09 | Printing | 0.70 |
| 02/02/09 | Printing | 2.90 |
| 02/07/09 | Printing | 1.00 |
| 02/10/09 | Printing | 0.70 |
| 02/11/09 | Telephone | 13.49 |
| 02/11/09 | Printing | 0.50 |
| 02/13/09 | Printing | 0.80 |
| 02/16/09 | Printing | 2.20 |
| 02/16/09 | Printing | 3.20 |
| 02/16/09 | Printing | 0.50 |
| 02/16/09 | Printing | 4.80 |
| 02/16/09 | Printing | 2.50 |
| 02/16/09 | Printing | 2.60 |
| 02/17/09 | Printing | 1.20 |
| 02/19/09 | Printing | 0.90 |
| 02/19/09 | Printing | 1.60 |

| Date Posted | Expense / Date Incurred | Amount |
|---|---|---|
| 02/20/09 | Client Meals; H. Denman on 01/19/09 | 27.84 |
| 02/20/09 | Printing | 1.40 |
| 02/21/09 | Printing | 1.00 |
| 02/21/09 | Printing | 0.60 |
| 02/23/09 | Westlaw | 108.38 |
| 02/23/09 | Printing | 1.50 |
| 02/23/09 | Printing | 0.50 |
| 02/23/09 | Printing | 0.30 |
| 02/23/09 | Printing | 0.60 |
| 02/23/09 | Printing | 0.30 |
| 02/23/09 | Printing | 3.10 |
| 02/23/09 | Printing | 1.80 |
| 02/23/09 | Printing | 1.40 |
| 02/23/09 | Printing | 1.40 |
| 02/23/09 | Printing | 1.40 |
| 02/23/09 | Printing | 1.40 |
| 02/24/09 | Client Meals; M. Lacroix on 01/30/09 | 13.34 |
| 02/24/09 | Printing | 0.80 |
| 02/24/09 | Printing | 1.50 |
| 02/24/09 | Printing | 2.50 |
| 02/24/09 | Printing | 0.60 |
| 02/25/09 | Taxi; H. Denman on 02/10/09 | 11.40 |
| 02/25/09 | Printing | 2.60 |
| 02/25/09 | Printing | 1.60 |
| 02/25/09 | Printing | 1.80 |
| 02/26/09 | Printing | 1.50 |
| 02/26/09 | Printing | 1.80 |
| 02/27/09 | Printing | 1.60 |
| 02/27/09 | Printing | 1.60 |
| 02/28/09 | Lexis | 25.64 |
| 02/28/09 | Lexis | 2,342.00 |
| 02/28/09 | Westlaw | 654.86 |

| Date Posted | Expense / Date Incurred | Amount |
|---|---|---|
| 02/28/09 | Westlaw | 259.66 |
| | **Total Disbursements** | $3,522.61 |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x

In re:                                              :

                                                    :        Chapter 11

AMERICAN HOME MORTGAGE                              :

HOLDINGS, INC., a Delaware corporation, <u>et al.</u>,    :        Case No. 07-11047 (CSS)

                                                    :        Jointly Administered

                              Debtors.              :

------------------------------------------------------------x

## <u>CERTIFICATION OF JAMES C. TECCE</u>

James C. Tecce, an attorney-at-law, duly admitted in good standing to practice in the

State of New York hereby certifies that:

1.      I am partner in the firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP

("**Quinn Emanuel**"), and I am duly authorized to make this Certification on behalf of Quinn

Emanuel.  Quinn Emanuel was retained by the Debtors as special investigatory litigation and

conflicts counsel  pursuant to an order of the Court.  This certification is made in support of

Quinn Emanuel's Nineteenth Monthly Application for Allowance of Compensation for Services

Rendered and for Reimbursement of Expenses During the Period from February 1, 2009

Through February 28, 2009 (the "**Application**"), and in compliance with Local Rule 2016-2 of

this Court (the "**Rule**"), and with the United States Trustee's Guidelines for Review Of

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330

(the "**Guidelines**").

76802/2834588.1

2.    I have read the Application and I certify that the Application substantially

complies with the Rule and the Guidelines.


Dated:                                    **Quinn Emanuel Urquhart Oliver & Hedges, LLP**
April 14 2009

                                          James C. Tecce
                                          55 Madison Avenue - 22nd Floor
                                          New York, NY 10010
                                          (212) 849 - 7200


76802/2834588.1