## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
In re:                                                        :    Chapter 11
                                                              :
AMERICAN HOME MORTGAGE HOLDINGS, INC., :       Case No. 07-11047 (CSS)
a Delaware corporation, et al.,¹                              :
                                                              :    Jointly Administered
        Debtors.                                              :
                                                              :    Re: D.I. 7307
------------------------------------------------------------- x
```

### LIMITED OBJECTION OF THE DEBTORS TO THE EMERGENCY MOTION OF DR. DAVID AND ELISABETH JACKSON FOR AN ORDER FOR RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

The above-captioned debtors and debtors in possession (the "Debtors"), hereby file this limited objection (the "Objection") to the *Emergency Motion of Dr. David and Elisabeth Jackson for an Order for Relief from the Automatic Stay under Section 362 of the Bankruptcy Code* [Docket No. 7307] (the "Motion"), and in support thereof respectfully state as follows:

### PRELIMINARY STATEMENT

1.      Scheduled for this hearing are two motions filed by the Jacksons: (i) a motion seeking allowance of a late-filed claim (the "Jackson Claim") against Debtor, American Home Mortgage Corp. (d/b/a American Brokers Conduit), and (ii) the Motion, which essentially requests relief from the stay to adjudicate the late-filed claim in connection with a larger litigation in the United States District Court for the Eastern District of New York.  The Debtors have reviewed these motions and discussed the relief requested therein with the Jacksons'

---

¹    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The mailing address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

attorney. Through these discussions, the Debtors have consented to the late-filing of the Jackson

Claim subject to the certain reservations of the Debtors' rights. As a result, the Debtors

anticipate that this matter will be resolved.

      2.      Additionally, the Debtors consent to the relief requested in this Motion to the

extent that the Jacksons must name the Debtors (i) to halt a foreclosure related to the Jacksons'

loan or (ii) nominally to go against third-party defendants. The Debtors believe that this offer is

consistent with the terms of the Plan and recent Confirmation Order.

      3.      Despite these accommodations, the Jacksons have rejected the proposal and have

determined to that the New York Action should go forward to adjudicate the Jackson Claim

against the Debtors. Because the adjudication of the claims is a core proceeding in these

bankruptcy cases, and the Jacksons have failed to offer any basis for "cause" to lift the stay, the

Debtors believe that the reconciliation of the Jackson Claim should be addressed by this Court.

Significantly, the Jacksons are not harmed by adjudicating their claims in this Court because the

Plan provides additional protections for the Jacksons in the claims reconciliation process,

including, among other things, the ability to appear telephonically and to receive a reasonable

settlement offer prior to objection. In contrast, to require the Debtors to defend these claims in

the New York Action would divert the Debtors' resources from fulfilling the requirements to

make the Plan become effective, thereby creating a substantial hardship to the Debtors and their

creditors. These hardships are particularly burdensome given that the Jackson Claim is

meritless.

## BACKGROUND

*A.    General Case Background*

4.    On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.    The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

6.    On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee").  On October 21, 2008, the United States Trustee appointed an Official Committee of Borrowers (the "Borrowers Committee").  No trustee or examiner has been appointed.

7.    The Court confirmed the Debtors' proposed chapter 11 plan of liquidation [Docket No. 7029] (as may be amended or supplemented, the "Plan") on February 23, 2009.  See Docket No. 7042 (the "Confirmation Order").  The Plan and Confirmation Order provide borrowers with certain protections, including a deemed modification of the automatic stay to permit

> (i) the borrower(s) under any mortgage loan against whom a foreclosure action is commenced by or on behalf of the Plan Trust or any Debtor, . . . (b) in the case of a nonjudicial foreclosure, solely to commence and prosecute an action against the Plan Trust, Debtor and/or loan servicer as necessary to halt and for the purpose of halting the foreclosure;

> (ii) borrower(s) under any mortgage loan originated or serviced by one or more Debtors to commence ... an action or cross-claim against such Debtor(s) nominally for the purpose of obtaining relief against a non-Debtor party;

Plan, Art. 17(E)(i) and (ii) (as modified by the Confirmation Order, ¶51(i) and (ii)).  The Plan is not yet effective.

B.    *Relevant Background*

8.    On or about June 17, 2008, the Jacksons filed their first pleading in these bankruptcy cases, requesting copies of their loan file through their *Objection to Motion for Destruction of Documents Pursuant to 11 U.S.C. §§ 105, 363 and 554 and Complaint for Protection of Original Documents* [D.I. 4720].    Thereafter, the Debtors provided the Jacksons' loan file to the Jacksons.

9.    Approximately six months after their first filing in these cases, on or about January 23, 2009, Jacksons filed claim numbered 10647 (the "Jackson Claim"), in an aggregate amount of $2,472,000 ($600,000 of which is identified as secured).    The Jackson Claim does not include any documentation, but asserts that the basis for the claim is "Pay Option Arm Loan Fraud."    A copy of the Jackson Claim is attached hereto as Exhibit A.    As of the date of this Objection, neither the Debtors nor any other party-in-interest have objected to the timeliness of, or otherwise challenged, the Jackson Claim.

10.    Despite knowledge of the Debtors' bankruptcy filing (Comp., ¶ 35, 40-42), and in violation of the automatic stay,[1] on or about March 24, 2009, the Jacksons filed a complaint (the "Complaint") against multiple entities[2] in the United States District Court for the Eastern District of New York, case numbered cv-09-1225 (the "New York Action").    A copy of the Complaint is attached hereto as Exhibit B.

---

[1] The Plan and Confirmation Order provides that "all injunctions or stays provided for in the Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, the Plan, by orders of the Bankruptcy Court, or otherwise, and extant on the Confirmation Date, shall remain in full force and effect until the late later of (i) entry of the Final Decree or (ii) dissolution of the Plan Trust." Confirmation Order, ¶ 7; Plan, p. 87. A borrower may only commence an action against the Debtors for the purpose of liquidating a borrower claim against the Debtors with (a) prior leave of the Bankruptcy Court or (b) prior written consent from the Plan Trustee, without leave of the Bankruptcy Court. Plan, Art. 17(E)(ii); Confirmation Order, ¶ 51(ii).    The Jacksons ignored this provision, as well as section 362 of the Bankruptcy Code, and filed the New York Litigation without obtaining consent or leave from this Court. The Debtors expressly reserve the right to seek damages and/or sanctions for willful violation of the stay.

[2] Among the defendants is Carteret Mortgage Corporation ("CMC").  CMC filed bankruptcy on October 1, 2008 in the United States Bankruptcy Court for the Eastern District of Virginia, Case No. 08-16056-RGM.

066585.1001

11.    Although the Complaint identifies American Home Mortgage, Inc. ("<u>AHM</u>")[3] as a "nominal" defendant, the remainder of the Complaint appears to include AHM as a "real" party defendant. The Complaint seeks from AHM, among other things, (i) statutory damages for violations of 15 U.S.C. § 1638(a); (ii) return of any money or property paid by the Plaintiffs; (iii) an amount of money equal to twice the finance charge in connection with the transactions; (iv) actual damages, including attorneys' fees; (v) damages in an amount equal to three times the amount of the undisclosed yield spread premium; (vi) damages against violations of Virginia Consumer Practices Act; (vii) punitive damages; and (viii) damages for unjust enrichment.

12.    As noted in the Motion, the Jacksons' loan was previously securitized as part of the AHMIT 2006-2 Trust and the Debtors' servicing rights were sold as part of the Debtors' sale of their servicing business. Accordingly, the Debtors have no ability to rescind or otherwise modify the loan. The AHMIT 2006-2 Trust and related Indenture Trustee and Securities Administrator are already named defendants in the New York Action.

13.    On or about April 6, 2009, the Jacksons sent the instant Motion to the Debtors' counsel, counsel to the Creditors Committee and the United States Trustee. The Motion was docketed by this Court on April 22, 2009.

## LIMITED OBJECTION

14.    As an initial matter, the Debtors do not oppose the relief requested to the extent the relief is narrowed to be consistent with the Plan and Confirmation Order, which provide, among other things, that "borrower(s) under any mortgage loan originated or serviced by one or more Debtors to commence . . . an action or cross-claim against . . . Debtor(s) nominally for the purpose of obtaining relief against a non-Debtor party." Plan, Art. 17(E)(ii); Confirmation

---

[3] The Complaint is filed against "American Brokers Conduit, a division of American Home Mortgage, Inc." American Brokers Conduit is a d/b/a of American Home Mortgage Corp. American Home Mortgage, Inc. is a non-existent entity. Accordingly, the Debtors believe that the proper party is American Home Mortgage Corp.

DB02:8073301.1                                                                                          066585.1001

Order, ¶ 51(ii).   However, the Debtors object to the Motion to the extent the Jacksons seek to adjudicate the Jackson Claim in the New York Action.

15.      The purpose of the automatic stay provided under 11 U.S.C. § 362 is three-fold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (citations omitted).

16.      Section 362(d)(1) permits the Court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362.  The movant has the initial burden to produce evidence that cause exists to grant relief from the automatic stay. *See In re Rexene Products, Co.*, 141 B.R. at 577. If the movant has met its initial burden to establish a prima facie case that "cause" exists to lift the automatic stay pursuant to section 362(d), the party opposing such relief then has the burden on all issues other than the debtor's equity in the property. *Id., see also* 11 U.S.C. § 362(g). Courts determining whether cause exists have generally used a three-part balancing test:  (1) whether allowing relief will result in any great prejudice to the debtor; (2) whether maintaining the stay will cause any hardship to the non-bankrupt party and whether this hardship is greater than the resulting prejudice to the debtor; and (3) whether the non-bankrupt party has a probability of prevailing on the merits of the litigation. *See In re Rexene Products Co.*, 141 B.R. at 576.  The most important factor to consider when addressing whether to lift the automatic stay is the effect on the administration of the Debtors' chapter 11 cases. *See In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984); *In re Penn-Dixie Industries, Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980).

A.    *Significant Prejudice Will Result in Granting Relief from the Stay*

17.    Here, requiring the Debtors to defend the Jackson Claim in the New York Action
would place a significant burden on the Debtors and their estates to the ultimate detriment of
their creditors. The Debtors, as they wind down their businesses, have limited resources
remaining, all of which are focused on fulfilling the requirements to make the Plan become
effective. To that end, the Debtors have been and are actively marketing the sale of the stock
related to the American Home Bank and the remaining loans owned by the Debtors.
Additionally, the Debtors are working to reconcile their secured, administrative and priority
obligations to reduce the amounts required to be set aside in the S/A/P Reserve (as defined in the
Plan). Additional litigation cost and resource depletion at this state in the cases will likely result
in a delay in the Plan becoming effective and a continuation of the monthly cash burn which will
result in a diminished distribution to creditors.

B.    *The Jacksons State No Prejudice for Which Naming the Debtors*
       *as a Nominal Party Does Not Address*

18.    In stark contrast, allowing the Jacksons to continue the New York Action against
the Debtors in a nominal capacity provides no prejudice to the Jacksons. The sole hardships
identified by the Jacksons are (i) that the Debtors are necessary parties to the litigation (Motion,
¶ 26), and (ii) AHM is not engaging in any loss mitigation (Motion, ¶33). Neither are applicable
given the facts. First, by permitting the Jacksons to continue the New York Action against the
Debtors nominally, the Jacksons are able to meet any procedural burdens associated with filing
an action against the parties who own or service the Jacksons' loan. Second, the Debtors are
neither the current owner nor servicer of the Jacksons' loan and, as such, they do not have any
authority to address loss mitigation. Litigation against the current owner and/or the servicer, not

the Debtors, results in a potential to modify the loan or avoid foreclosure.[4]  Finally, given CMC's

bankruptcy and the Jacksons' failure to seek relief from the stay to date, granting the relief

requested herein will not provide the Jacksons with the ability to go forward against all

defendants in one litigation.  This is particularly troublesome given the Jacksons' emphasis of

CMC's actions in the Complaint.

19.    Moreover, to the extent that the Jacksons require discovery from the Debtors, the

Debtors have already provided the Jacksons with a copy of their loan file.  Because the Debtors

no longer employ anyone associated with their loan origination operation, they submit that it is

unlikely that they will be able to provide anything else of value.  Regardless, nothing in the

Bankruptcy Code prohibits the Jacksons from issuing subpoenas or propounding other discovery

on the Debtors, and the Confirmation Order expressly provides for such discovery.

Confirmation Order, ¶ 51(iii).

20.    Additionally, by filing their Claims with this Court, the Jacksons have already

consented to the Court's jurisdiction.  *See Langenkamp v. Culp*, 498 U.S. 42, 44 (1990).  As the

allowance of the Jackson Claim is a "core" proceeding "arising under" these Chapter 11 Cases,

this Court is clearly the most appropriate place for such claim to be resolved.  *See* 28 U.S.C. §

157(b)(2)(B).  The Jackson Claim can be adequately addressed through the claim reconciliation

process as have thousands of other claims of a similar priority level.  The Jacksons have

provided no basis for exemption from the claims reconciliation process.  Indeed, given the ability

for the Jacksons to attend hearings in these cases telephonically[5] and the requirement that the

---

[4] To the Debtors' knowledge, no foreclosure proceedings have been commenced against the Jacksons.  The
pleadings are silent on this issue.

[5] The Jacksons' attorney is from Nevada and the Jacksons live in Virginia.  Undoubtedly, they would be required to
travel to New York for the New York Litigation.  Accordingly, any personal appearances in Delaware are no more
burdensome than travels to appear in the New York Litigation.

Debtors and/or Plan Trustee must provide a reasonable offer of settlement as to the Allowed

amount of such Claims before objection (Confirmation Order, ¶ 52), the claims reconciliation

process could result in less cost and expense for the Jacksons compared to full litigation against

the Debtors in the New York Action.

C.    *The Jacksons Are Unlikely to Succeed on the Merits*

21.    Pursuant to their Complaint, the Jacksons seek damages from the Debtors relating

to: (i) alleged violations of the Federal Truth in Lending Act ("TILA"); (ii) alleged violations of

the Federal Real Estate Settlement Procedures Act ("RESPA"); (iii) alleged violations of the

Virginia Consumer Practices Act; (iv) fraudulent misrepresentation; (v) unjust enrichment; and

(vi) civil conspiracy to defraud.  As set forth more fully below, *none* of these claims are viable

against the Debtors.

22.    First, the Jacksons' TILA claim is time-barred.  As admitted by the Jackson

Claim, the claim accrued on March 24, 2006.  Because TILA has a one-year statute of

limitations, the Jacksons were required to file their Complaint no later than March 24, 2007,

nearly five months *before* the Debtors' bankruptcy filing. *See* 15 U.S.C. § 1640(e).[6]  Moreover,

the Jacksons have failed to provide the requisite basis for equitable tolling of the statute of

limitations. *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 219

(4th Cir. 1987) (holding that claims of equitable tolling must meet the particularity requirements

of Rule 9(b) of the Federal Rules of Civil Procedure).  To the extent that the Jacksons seek

rescission, such redress may only be provided by the owner of the loan.

23.    Second, the alleged RESPA violations are factually deficient.  The Yield Spread

Premium ("YSP") was, in fact, disclosed to the Jacksons under the HUD-1 Statement (line 811),

---

[6] Notably, many of the actions alleged by the Jacksons relate to disclosure provided prior to the closing. *See, e.g.,* Complaint, ¶ 26 (Good Faith Estimate alleged to be misleading was signed by Jacksons on March 13, 2006).  The Debtors reserve all rights to argue that the statute of limitations passed prior to March 24, 2007.

DB02:8073301.1                                                                                              066585.1001

which is attached hereto as <u>Exhibit C</u>. Notably, the YSP is paid by the lender to the broker, and no amounts were paid by the Jacksons, which is entirely consistent with 12 U.S.C. § 2607(c).

24.     Third, the Virginia Consumer Practices Act does not apply to the Debtors. *See* Va. Code Ann.  § 59.1-199 ("Nothing in this chapter shall apply to . . . (D) . . . mortgage lenders as defined in § 6.1-409 [defined as "any person who directly or indirectly originates or makes mortgage loans"]"); *see, e.g., Jefferson v. Briner, Inc.*, Case No. 3:05-CV-652, 2006 U.S. Dist. LEXIS 41423, *32 (E.D. Va. June 21, 2006) (defendants were entitled to summary judgment because, as mortgage lenders, they were not subject to oversight by private parties alleging VCPA claims).

25.     Fourth, in pleading fraud, a plaintiff must satisfy Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be plead "with particularity." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Circumstances required to pled under Fed. R. Civ. P. 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (internal citations omitted).  Mere allegations of "fraud by hindsight" will not satisfy the requirements of Rule 9(b).  *Id.*  Here, while the Complaint alleges false representations made by defendant-broker CMC, it is devoid of any alleged representations made by the Debtors, or any direct contact between the Jacksons and the Debtors.  Moreover, the Complaint admits that (i) the closing documents identified the loan as an "adjustable rate" loan, (ii) the Promissory Note stated that the initial rate of 1% was in place for one week, (iii) the Final TILS provided that the annual percentage rate was 7.460%, and (iv) the Promissory Note identified the calculation by

- 10 -

which the Debtors would determine the adjusted rate. *See* Complaint, ¶ 28-29.[7]  Given these failures and concessions, the Jacksons are unlikely to prove their claim by clear and convincing evidence.[8]

26.    For the same reasons, the Jacksons are unable to succeed with respect to their claim alleging a civil conspiracy to defraud.

27.    The Jacksons argument regarding unjust enrichment is equally unavailing.  In Virginia, unjust enrichment claims are viable only when an express contract does not exist between the parties.  *See, e.g., Arias v. Jokers Wild, Inc.*, 73 Va. Cir. 281, 301-02 (Va. Cir. Ct. 2007) (Unjust enrichment stems from implied or unenforceable contract, but "where there is a legally enforceable, valid and express contract between the parties, the 'law will not imply a contract in contravention thereof.'").  Because the loan terms were spelled out in the Jacksons' note, the Jacksons have failed to state a claim for unjust enrichment under Virginia law.

D.    *Section 523 Is Not Applicable With Respect to Corporate Debtors*
        *and Does Not Otherwise Impact the Court's Decision Regarding Stay Relief*

28.    In support of their Motion, the Jacksons include a substantial discussion regarding section 523 of the Bankruptcy Code. *See* Motion, p. 8-10.  This argument is nothing more than a red herring.  Section 523 of the Bankruptcy Code, which provides for enumerated exceptions to discharge, clearly relates to "individual debtor[s]." 11 U.S.C. § 523(a).  Moreover, because the Debtors are liquidating, the Debtors are not entitled to a discharge. *See* 11 U.S.C. § 1141(d)(3).

---

[7] To the extent that the Jacksons are alleging fraud with respect to the Qualified Written Request dated May 10, 2008 and the response related thereto, the Debtors no longer owned or serviced the loan.  The servicing agent referenced is presumably American Home Mortgage Servicing, Inc. (f/k/a AH Mortgage Acquisition Co., Inc.).  Based on the Jacksons' letter dated May 10, 2008, but signed January 19, 2009, the Jacksons were aware of the change in servicer and specifically include the name of the Trust that owned their loan. [D.I. 6917]

[8] To succeed on a fraud claim, the Jacksons must prove by *clear and convincing evidence* that the Debtors made: (1) a false representation; (2) of a material fact; (3) intentionally and knowingly; (4) with the intent to mislead; (5) reliance by the party misled; and (6) resulting damage by the party misled. *E.g., Jefferson,* 2006 U.S. Dist. LEXIS 41423 at 33-34 (emphasis added).

066585.1001

## RESERVATION OF RIGHTS

29.    The Debtors expressly reserve its rights with respect to the factual allegations in the Motion and in the Complaint.  Nothing herein shall be construed to be an admission of the facts set forth in the Motion or Complaint or a waiver of any or all claims the Debtors may have against the Jacksons, including, among other things, claims for violation of the automatic stay.

30.    The Debtors hereby reserve their rights, as well as the rights of any and all parties in interest, to contest the asserted merits of the Jackson Claim and their rights to all defenses and counterclaims against the Jacksons.  Furthermore, any and all rights pursuant to section 502(b) of the Bankruptcy Code to object to such claims on any and all grounds, including, without limitation, objections as to the amount, classification and status of the claims should be reserved.

31.    The Debtors further reserve their rights to supplement this Objection to the extent necessary and/or to object to the Jackson Claim on any and all grounds.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court deny the Motion with prejudice and providing for any other and further relief as it deems just and proper.

Dated: Wilmington, Delaware
       April 24, 2009

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Margaret Whiteman Greecher
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for Debtors and Debtors in Possession*

DB02:8073301.1                                                              066585.1001

## Exhibit A

**The Jackson Claim**

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re:<br>American Home Mortgage Holdings, Inc., et al.,<br>Debtors.<br><br>Name of Debtor Against Which Claim is Held | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered<br><br>Case No. of Debtor |
|---|---|

**PROOF OF CLAIM**

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)        0000010647

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

DAVID & JUDY JACKSON
12781 LAVENDER KEEP CIRCLE
FAIRFAX VA 22033

Telephone number: 703-378-6750
Email Address: ellisinsights@aol.com

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Account or other number by which creditor identifies debtor:
# 0001215617

Check here if this claim:
☐ replaces   ☐ amends a previously filed claim, dated:_____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other  PAY OPTION ARM LOAN  (explain)
             LOAN FRAUD

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last Four Digits of your SS#: ____ ____ ____ 6661

Unpaid compensation for services performed

from _____ to _____
        (date)              (date)

**2. Date debt was incurred:**
3/24/06

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed: $** 1,872,000 + 600,000 + _____ = 2,472,000
   (unsecured nonpriority)   (secured)   (unsecured priority)   (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☑ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☑ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $ 600,000
Amount of arrearage and other charges at time case filed included in
secured claim, if any: $ ~~$0.00~~

**6.** Unsecured Nonpriority Claim. $ 1,872,000
☑ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim.
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statement of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10** Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

FILED / RECEIVED
JAN 23 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 1/19/09 | _[signature]_   DAVID E. JACKSON |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## Exhibit B

**Complaint in the New York Action**

A082 SWEDA
(Rev. 3/02)

**ORIGINAL**

**RECEIPT FOR PAYMENT**
**UNITED STATES DISTRICT COURT**

**029357**

for the
**EASTERN DISTRICT OF NEW YORK**
at _____ CENTRAL ISLIP _____

| Fund | | |
|---|---|---|
| 6855XX | Deposit Funds | 03-24-2009(TUE)  03:22 PM |
| 604700 | Registry Funds | DRAW 2            007001 |
|  | General and Special Funds | Receipt#29357 |
| 508800 | Immigration Fees | |
| 085000 | Attorney Admission Fees | |
| 086900 | Filing Fees | CIVIL FILE F 1/2      60.00 |
| 322340 | Sale of Publications | '' # 086900 |
| 322350 | Copy Fees | CIVIL FILE F 1/2     190.00 |
| 322360 | Miscellaneous Fees | '' # 510000 |
| 143500 | Interest | |
| 322380 | Recoveries of Court Costs | CIVIL FILE FEE      100.00 |
| 322386 | Restitution to U.S. Government | '' # 086400 |
| 121000 | Conscience Fund | |
| 129900 | Gifts | CHK#           715 |
| 504100 | Crime Victims Fund | TOTAL--»      350.00 |
| 613300 | Unclaimed Monies | CHECK         350.00 |
| 510000 | Civil Filing Fee (½) | |
| 510100 | Registry Fee | |

**CASE REFERENCE:**
_____ 09-CV-1225 _____

**RECEIVED FROM**
_____ DAVID AKER _____

_____
_____
_____
_____

**DEPUTY CLERK** _____ JK _____

Checks and drafts are accepted subject to collection and full
credit will only be given when the check or draft has been
accepted by the financial institution on which it was drawn.

**GPO** U.S. GPO: 2008-709-528

℞JS 44  (Rev. 12/07)

## CIVIL COVER SHEET

CV-09-190

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| DAVID E. JACKSON and ELISABETH JUDITH JACKSON, his wife | AMERICAN BROKERS CONDUIT, a division of Of AMERICAN HOME MORTGAGE, INC. |

**(b)** County of Residence of First Listed Plaintiff  **Fairfax, Virginia**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Suffolk, New York**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David Aker, 23 Southern Road
Hartsdale, New York 10530     Tel. No. 914 674-1094

Attorneys (If Known)

MAR 2 4 2009

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☒ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original Proceeding
☐ 2  Removed from State Court
☐ 3  Remanded from Appellate Court
☐ 4  Reinstated or Reopened
☐ 5  Transferred from another district (specify)
☐ 6  Multidistrict Litigation
☐ 7  Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. sec. 1601 et. seq. sec. 1635 and 1638(a), 15 USC sec. 1640(e), 12 USC sec. 2601 et seq
Brief description of cause:
Violation of Federal Truth in Lending, Real Estate Settlement Procedures Act; associated state claims

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
03/24/2009

SIGNATURE OF ATTORNEY OF RECORD
*David Aker*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## ARBITRATION CERTIFICATION

I, ___David Aker_____, counsel for _David E. and Elisabeth J. Jackson____ do hereby
certify pursuant to the Local Arbitration Rule 83.10 that to the best of my knowledge and belief the damages
recoverable in the above captioned civil action exceed the sum of $150,000 exclusive of interest and costs.
_____ Relief other than monetary damages is sought.

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:
_____ N / A

**Please refer to NY-E Division of Business Rule 50.1(d)(2)**

1.) Is the civil action being filed in the Eastern District of New York removed from a New York State court located
in Nassau or Suffolk County: _No_____

2.) If you answered "no" above:

   a.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau
or Suffolk County? _No_____

   b.) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the
Eastern District? _No_____

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than
one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the
claimants, if there is more than one) reside in Nassau or Suffolk County? _Yes_____

   (Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).

**I am currently admitted in the Eastern District of New York and currently a member in good standing of the
bar of this court.**

Yes___✔___                              No_____

**Are you currently the subject of any disciplinary action(s) in this or any other state or federal court?**

Yes_____(If yes, please explain)         No___✔___
_____
_____

Please provide your E-MAIL Address and bar code below. Your bar code consists of the initials of your first and last
name and the last four digits of your social security number or any other four digit number registered by the attorney
with the Clerk of Court.
(This information must be provided pursuant to local rule 11.1(b) of the civil rules).

**ATTORNEY BAR CODE:**___DA5506_____

**E-MAIL Address:** _daveaker@optonline.net_____

I consent to the use of electronic filing procedures adopted by the Court in Administrative Order No. 97-12, "In re
Electronic Filing Procedures(EFP)", and consent to the electronic service of all papers.

Signature: ___*David Aker*_____

CV-09 1225

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DAVID E. JACKSON and ELISABETH JUDITH JACKSON, his wife, | ) ) | CASE NO.    MAR    2009 |
| Plaintiffs, | ) ) ) ) ) | COGAN, J. REYES, JR, M. |
| AMERICAN BROKERS CONDUIT, a division Of AMERICAN HOME MORTGAGE, INC., CARTERET MORTGAGE CORPORATION; DEUTSCHE BANK TRUST COMPANY AMERICA; WELLS FARGO BANK, N.A.; and AMERICAN HOME MORTGAGE INVESTMENT TRUST 2006-2, | ) ) ) ) ) ) ) ) | **COMPLAINT FOR FRAUD, BREACH OF FIDUCIARY DUTY, VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT, VIOLATIONS OF FEDERAL HOME LENDING STATUTES, CONSPIRACY TO DEFRAUD,** |
| Defendants. | ) ) ) | **OTHER RELIEF, AND DEMAND FOR JURY TRIAL** |

Plaintiffs sue Defendants for damages and other relief, and state:

**A.** Parties and Jurisdiction

1. Plaintiffs DAVID JACKSON and ELISABETH JUDITH JACKSON are of majority age and are residents of the State of Virginia residing in their home located at 12787 Lavender Keep Cr., Fairfax, Virginia 22033 (hereafter the "Property"), and are "consumers" within the meaning of the Virginia Consumer Protection Act,

2. Nominal Defendant AMERICAN BROKERS CONDUIT, a division of AMERICAN HOME MORTGAGE, INC. ("ABC") was, at all material times hereto, a foreign corporation which was doing business in the Commonwealth of Virginia including the origination of mortgage loans which constituted the collection of consumer debts, and is thus subject to the provisions of the Virginia Consumer Protection Act, Code sec. 59.1-

1

196 *et seq.*, and 13-303(4), and is also a "creditor" as defined by the Federal Truth In Lending Act (15 USC sec. 1602(f)). Although Defendant ABC maintained an office located at 5160 Parkstone Drive, Suite 190A in Chantilly, Virginia in connection with the transaction the subject of this action, said office was subordinate to ABC's main office located at 538 Broadhollow Road, Melville, New York 11747. Defendant ABC's corporate principal is currently the debtor in a Bankruptcy proceeding styled In Re: American Home Mortgage Holdings, Inc., Case No. 07-11047 in the United States Bankruptcy Court for the District of Delaware. Plaintiffs will be seeking relief from the 11 USC sec. 362(a) stay in connection with the prosecution of this action and prior to service of this Complaint upon Defendant ABC.

3. Defendant CARTERET MORTGAGE CORPORATION ("CMC") is and was at all times material hereto a for-profit corporation organized under the laws of the Commonwealth of Virginia engaged in the business of a mortgage broker in connection with the transaction the subject of this action, and was also an agent of the remaining named Defendants in this action purposes of effecting the fraud and conspiracy the subject hereof. At all times material hereto, Defendant CMC was a "creditor" as defined by the Federal Truth In Lending Act (15 USC sec. 1602(f)) with its office for the transaction of regular business for purposes of the transaction being located at 6211 Centreville Road, Suite 800, Centreville, Virginia.

2

4. Defendant DEUTSCHE BANK TRUST COMPANY AMERICA ("DBTCA")
   is and was at all times material hereto the Indenture Trustee for Defendant
   AMERICAN HOME MORTGAGE INVESTMENT TRUST 2006-2 ("AHMIT
   2006-2" as so identified herein *infra*), and was responsible, together with
   Defendant ABC, Defendant WELLS FARGO BANK, N.A. ("WF" as so
   identified herein *infra*), and Defendant AHMIT 2006-2, for the creation of
   the misleading and fraudulent mortgage loan the subject of this action.
   Defendant DBTCA's principal place of business is located at 60 Wall
   Street, New York, New York 10005.

5. Defendant WELLS FARGO BANK, N.A. ("WF") is and was at all times
   material hereto the Securities Administrator for Defendant AHMIT 2006-2
   and was responsible, together with Defendant ABC, Defendant DBTCA,
   and Defendant AHMIT 2006-2, for the creation of the misleading and
   fraudulent mortgage loan the subject of this action. Defendant WF's
   principal place of business is located at 101 Park Avenue, New York, New
   York 10178.

6. Defendant AHMIT 2006-2 is and was at all times material hereto a
   Delaware Statutory Trust and a bankruptcy-remote separate legal entity
   which was the Issuing Entity for mortgage-backed notes series 2006-2
   and was, together with Defendants ABC, DBTCA, and WF, responsible for
   the creation of the misleading and fraudulent mortgage loan the subject of
   this action.

3

7. Jurisdiction of the subject matter in this Court is proper pursuant to 28 U.S.C. sec. 1331, as Plaintiffs have sought relief under multiple Federal Statutes.

8. Jurisdiction of the Federal claims is proper in this Court pursuant to 15 U.S.C. sec. 1601 et. seq. and 15 U.S.C. sec. 1640(e).

9. Jurisdiction over the state-law claims is proper under the doctrine of Supplemental or Pendent Jurisdiction pursuant to 28 U.S.C. sec. 1367(a).

10. Venue of this action is proper within this Court pursuant to 28 USC sec. 1391 as at least one named Defendant is subject to suit within this Court, and thus all Defendants are properly sued in this Court.

B. Material Facts Common to All Counts

11. Between approximately 2001 and 2007, numerous Wall Street financial institutions, including Defendants DBTCA and WF and their affiliates, engaged in the creation and generation, through one or more agents or entities, of mortgage loans which were initiated for the primary purpose of serving as collateral for one or more forms of mortgage-backed securities.

12. These loans were either sold after closing, or pre-sold before closing, to a mortgage aggregator which would then resell the bundled mortgage loans to a special investment vehicle ("SIV") for the purpose of the bundled mortgage loans serving as collateral for series of Collateral Debt Obligations ("CDOs"), Collateralized Mortgage Obligations ("CMOs"), or other form of mortgage-backed security ("MBS").

13. Due to the multiple layers of resale and in order to provide the ever-increasing income stream needed to obtain a "AAA" rating for the MBS from a rating institution, and in order to fund the payments to be made to the investors of the MBS and provide funds for payment of insurances and other expenses incident to the creation of the MBS while simultaneously purporting to make these mortgage loans attractive to borrowers, the financial institutions required mortgage loans which contained provisions advantageous to the MBS (such as variable rate promissory notes, "Option ARM" riders, and prepayment penalties), and terms, conditions, language, and forms of loan documents which were paper-intensive, complicated, and were not readily understandable, or were confusing, or were misleading to the average borrower.

14. Further, the financial institutions placed "quotas" on loan originators which, in some instances, required that 50 or more loans be originated per day, and as such, the financial institutions knew that the average borrower, when confronted with a large volume of loan documents, would not have the proper time or opportunity to review what they were signing.

15. In furtherance of this scheme, the brokers would tout that a borrower could obtain a refinance or a home equity line of credit ("HELOC") for a low "teaser" rate (such as 1%), but intentionally failed to disclose that this rate was only for a very short-term (in this case, such rate being in effect for only one week).

16. The originating "lender", together with the broker, would also only qualify the borrower for the loan at the initial "teaser" rate based on the borrower's income and expense information, knowing that the borrower did not qualify for the payments during the life of the loan, particularly at the point when the variable rate would cause the monthly payment to double or triple in amount, as the originating lender and broker knew that the loan was either already or destined for resale.

17. If a borrower, when presented with a Truth-In-Lending Disclosure which showed a significant increase in the monthly payment at a given point in time, questioned the appropriateness of the loan, the broker would advise the borrower "not to worry about it", as the borrower could simply "come back in a year or two and refinance at the lower rate" while knowing that the loan had already been or was about to be sold and that refinancing the loan would be problematic at best.

18. Additionally in furtherance of this scheme, borrowers were not provided with a copy of the "final" loan documents either at or following closing and, in the instant case, certain closing documents were fraudulently manufactured post-closing with forged signatures on the Final Truth-In-Lending disclosure which forged document contained an interest rate different that that presented at closing and different from that set forth on the promissory Note.

19. Some time prior to June 30, 2006, Defendants AHMIT 2006-2, WF, and DBTCA entered into an agreement to form an MBS known as American

Home Mortgage Investment Trust 2006-2 Mortgage-Backed Notes Series 2006-2, with said MBS to be collateralized by mortgage loans originated by, among others, Defendant ABC through and with Defendant CMC.

20. The structure of this MBS required that the mortgage loans serving as collateral be in the form of adjustable rate mortgages with Option ARM riders, negative amortization, and prepayment penalties in order to provide the enhanced income stream necessary to obtain the AAA rating, fund the multiple resale of the loans, and provide the ever-increasing income stream for payment of costs incident to the MBS including dividends to be paid to the investors thereof.

21. The subject mortgage loans, with complicated variable interest rate structures, voluminous documents, small print, and confusing terminology (which Defendant ABC's corporate principal has admitted, in its own publications, is "confusing to borrowers") were to be marketed to the consuming public, including the Plaintiffs herein, as "low interest rate" loans without the legally required material disclosures as to the true cost of the loans and in a form which Defendants DBTCA, WF, AHMIT 2006-2, ABC, and CMC knew would not be readily understood by borrowers.

22. Defendant ABC, through and with Defendant CMC, actively advertised and promoted these mortgage loans throughout the year 2006.

23. Some time prior to March 24, 2006, Plaintiffs made application for a refinance of the Property through Defendant CMC for a "1%" loan.

7

24. Defendant CMC affirmatively represented to Plaintiffs that they qualified for a loan with Defendant ABC which had a "1% interest rate".

25. Based on this affirmative representation, Plaintiffs agreed to enter into a mortgage loan with Defendant ABC through Defendant CMC.

26. The initial Good Faith Estimate ("GFE") signed by the Plaintiffs on March 13, 2006 affirmatively represented that the loan was a "conventional loan" with an interest rate of 1%.

27. On March 24, 2006, Plaintiffs proceeded to closing on the mortgage loan.

28. At the closing and for the first time, Defendants CMC and ABC, through the closing documents, affirmatively represented to Plaintiffs that although the loan had an initial rate of 1% interest, that the loan was in fact an "adjustable rate" loan.

29. The closing documents were inconsistent as to the interest rate, were confusing, and were materially misleading, as:

   (a) the Deed of Trust set forth that the interest rate on the Note was 1% but that it was "subject to change in accordance with the Adjustable Rate Rider";

   (b) the Promissory Note set forth that the rate was 1% for one week after which it increased to 7.438% but that the rate thereafter was "in accordance with Section 4 of this Note";

   (c) Section 4 of the Note sets forth that a new interest rate will be calculated by adding 3.550 percentage points to a "Current Index" which is a 12-month average, "determined as set forth below", of the annual yields on actively traded United States Treasury Securities "adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" and

   (d) The "annual percentage rate" on the Final TIL was 7.460%.

30. Defendants ABC and CMC failed to explain the interest calculation to the Plaintiffs; failed to explain the effect of the Option ARM; failed tp provide a history of the Index; and failed to disclose to the Plaintiffs that the loan was a "negative amortization" loan.

31. In the months after closing, Plaintiffs noticed that despite making regular and timely payments that the amount of loan principal did not decrease, and in fact increased, the result being that the loan was a "negative amortization" loan.

32. Beginning on or about November 16, 2006, Plaintiffs made repeated inquiry of Defendant CMC as to why the amount of principal was not decreasing with payments, the unexplained change in the interest rate, and a request to refinance the loan. Plaintiffs made repeated inquiries to Defendant CMC including making such inquiries on or about July 30, 2007 and November 26, 2007.

33. Defendant CMC failed to properly respond to any of Plaintiff's inquiries; failed to provide any explanations as requested by Plaintiffs; failed to provide any documentation; and simply told Plaintiffs that the mortgage loan was "a good loan" and "not to worry about it", thus intentionally concealing the truth as to the Plaintiffs' mortgage loan from the Plaintiffs.

34. Plaintiffs thus initiated their own research as to the mortgage loan and Defendant ASC, and discovered in or about September of 2007 that a yield spread premium ("YSP") of over $26,000.00 had been paid to

Defendant CMC with Defendant CMC having never disclosed this to Plaintiffs.

35. Some time in 2007, Defendant ABC's corporate principal sought bankruptcy protection which bankruptcy proceeding remains active as of the date of the filing of this Complaint.

36. In continued effort to ascertain the truth as to their mortgage loan, Plaintiffs contacted Defendant CMC on or about November 21, 2007 and requested Defendant CMC to forward a copy of the GFE as Plaintiffs did not have a copy in their loan closing file, and also inquired as to the nondisclosed YSP.

37. Plaintiffs continued to contact Defendant CMC with regard to the fact that the monthly statements from Defendants' servicing entity did not show any reduction in principal despite timely payments and the nondisclosed YSP. Defendant CMC failed to undertake any action in response to Plaintiffs' concerns; failed to explain the true cost of the loan to Plaintiffs; and thus continued to engage in intentional concealment of the facts as to the true cost of the mortgage loan.

38. In further continuation of their inquiry as to the truth about their mortgage loan, Plaintiffs sent a Qualified Written Request ("QWR") to the servicing division of Defendant ABC on May 10, 2008 detailing numerous issues with the mortgage loan and requesting information and documentation.

39. Defendant ABC's servicing agent, through its counsel, failed to properly and fully respond to the QWR, providing only evasive statements and

10

taking a position that Plaintiffs' inquiry "did not relate to the servicing of the loan" and thus no response to specific requests for information and documentation was being provided.

40. Defendant ABC's corporate principal thereafter sought permission from the Bankruptcy Court to destroy loan files, including that of the Plaintiffs.

41. Plaintiffs vigorously opposed the request for destruction of loan files, and the presiding Judge in the Bankruptcy specifically ordered Defendant ABC's corporate principal to provide Plaintiffs with a complete copy of the loan file.

42. Upon same being provided to Plaintiffs in the fall of 2008 pursuant to a Court Order of the Bankruptcy Court, it was discovered for the first time that a "Final TIL" had been fraudulently manufactured with forged signatures of the Plaintiffs, with such forged Final TIL containing an interest rate which was greater than that on the Final TIL which Plaintiffs signed at the March 24, 2006 closing.

43. To date, neither Defendant CMC nor Defendant ABC has ever provided Plaintiffs with the repeatedly requested information as to the true cost of their mortgage loan or any explanation of why the YSP was not disclosed, thus resulting in an intentional concealment of the truth as to the mortgage loan despite Plaintiffs' repeated and diligent efforts to seek such truth.

**C.** Claims for Relief

## COUNT I: VIOLATIONS OF FEDERAL TRUTH IN LENDING ACT
[against Defendants ABC and CMC]

44. Plaintiffs reaffirm and reallege paragraphs 1 through 43 hereinabove as if set forth more fully hereinbelow.

45. This is an action brought for violations of the Federal Truth in Lending Act, 15 USC sec. 1601 *et seq.*, particularly sec. 1635 and 1638(a).

46. TILA requires lenders to disclose certain information about the terms of a loan to prospective borrowers, 15 USC sec. 1635, 1638; 12 CFR sec. 226.17, and the lender may not disclose information so as to obscure the relationship of the terms to each other. 12 CFR sec. 226.17(a)(1).

47. Disclosure of a variable rate feature required pursuant to 12 CFR sec. 226.18(f) must be clear and not misleading.

48. As set forth above, Defendants ABC and CMC, in violation of 12 CFR sec. 225.23(2), failed to provide Plaintiffs with certain material disclosures in connection with the mortgage loan the subject of this action either by a total failure to do so, or by materially misrepresenting or concealing the truth, or by providing disclosures which conflicted with other disclosures, doing so as to disclosures relating to the annual percentage rate; disclosures as to the finance charge; disclosures as to the amount financed; disclosures as to the total payments; disclosures as to the payment schedule; and disclosures and limitations regarding certain high cost mortgage loans.

49. Defendants ABC and CMC also did not disclose the consequences of negative amortization as required by 12 CFR sec. 226.19(b)(2)(v).

50. The conduct of Defendants ABC and CMC thus provides the basis for Plaintiffs to assert this cause of action pursuant to 15 USC sec. 1602(u); Federal Reserve Board Regulation Z codified as 12 CFR sec. 226.23, and Regulation Z, sec. 226.17(b) as the loan transaction the subject of this action was a refinance.

51. Defendants' failure to provide the required material disclosures provides Plaintiffs with the right to rescind the transaction pursuant to 12 CFR sec. 226.23, and Plaintiffs, through this public Complaint which is intended to be construed, for purposes of this claim, as a formal Notice of Rescission, hereby elect to rescind the transaction.

52. Plaintiffs also seek statutory damages for Defendants ABC's and CMC's violations of 15 USC sec. 1638(a).

53. This action is brought timely in view of the Defendants' actions which have induced and tricked Plaintiffs into permitting any earlier filing deadline to pass, and in view of Plaintiffs' demonstrated due diligence in seeking to ascertain the truth in order to protect their legal rights.

54. As a direct consequence of and in connection with Plaintiffs' legal and lawful exercise of their right of rescission, the true "lender" and its agents, including Defendant ABC and, to the extent necessary, Defendant CMC are required, within twenty (20) days of this Notice of Rescission, to:

(a) desist from making any claims for finance charges in the transaction;

(b) return all monies paid by Plaintiffs in connection with the transaction to the Plaintiffs;

(c) satisfy all security interests, including mortgages, which were acquired in the transaction.

55. Upon the true "lender's" full performance of its obligations Plaintiffs shall tender any sums to which the true lender is legally entitled.

56. As Plaintiffs have satisfied the requirements for a TILA rescission action pursuant to 15 USC sec. 1635, Plaintiffs are entitled to an award of attorneys' fees pursuant to 15 USC sec. 1640(3).

57. Based on Defendants' ABC's and CMC's TILA violations, each of said Defendants is liable to the Plaintiffs for the following, which Plaintiffs demand as relief:

(a) rescission of the mortgage loan transactions;

(b) termination of the mortgage and security interest in the property the subject of the mortgage loan documents created in the transaction;

(c) return of any money or property paid by the Plaintiffs including all payments made in connection with the transactions;

(d) an amount of money equal to twice the finance charge in connection with the transactions;

(e) relinquishment of the right to retain any proceeds; and

(f) actual damages in an amount to be determined at trial, including attorneys' fees.

## COUNT II: VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### [against Defendants ABC and CMC]

58. Plaintiffs reaffirm and reallege paragraphs 1 through 43 herein as if specifically set forth more fully hereinbelow.

59. As mortgage lenders, Defendants ABC and CMC are subject to the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 USC sec. 2601 et seq.

60. 12 USC sec. 2607 expressly prohibits the acceptance of any improper fees or kickbacks or payments for services not performed.

61. In violation of 12 USC sec. 2607, Defendants ABC and CMC caused Defendant CMC to be paid an illegal kickback, in the form of the undisclosed YSP, for services not performed, and surreptitiously charged Plaintiffs in excess of $26,000.00 for this illegal kickback which was never disclosed to or approved by Plaintiffs.

62. Pursuant to 12 USC sec. 2607(d), Plaintiffs are permitted to bring this action against Defendants ABC and CMC jointly and severally for their violations of the prohibitions and limitations of sec. 2607 and for damages in an amount equal to three (3) times the amount of the undisclosed YSP.

63. Plaintiffs also demand, if found to be the prevailing party, that they be awarded their court costs and reasonable attorneys' fees pursuant to 12 USC sec. 2607(d)(5).

## COUNT III: VIOLATIONS OF VIRGINIA CONSUMER PRACTICES ACT
[against Defendants ABC and CMC]

64. Plaintiffs reaffirm and reallege paragraphs 1 through 43 above as if set forth more fully hereinbelow.

65. Defendants ABC and CMC are subject to the Virginia Consumer Protection Act (the "Act"), *Virginia Code* sec. 59.1-196 *et seq.*

66. Defendants ABC and CMC are "suppliers", and Plaintiffs are "consumers" within the meaning of the Act, and the loan the subject of this action was a "consumer transaction" within the intent of the Act.

67. *Virginia Code* sec. 59.1-200 A.14. declares using any deception, fraud, false pretenses, or misrepresentation in connection with a consumer transaction as unlawful

68. In violation of the Act, Defendants ABC and CMC have committed unfair and/or deceptive acts and practices, including fraudulent concealment, in connection with the consumer transaction the subject of this action, including but not limited to:

(a) making false and misleading oral and written statements and other representations which had the capacity, tendency, or effect of deceiving or misleading the Plaintiffs;

(b) failing to state a material fact if the failure deceives or tends to deceive; and

(c) engaging in deception, fraud, false pretense, false premise, misrepresentation, and knowing concealment and omission of material facts with the intent that the Plaintiffs rely thereon.

69. As a direct and proximate result of the Defendants ABC's and CMC's violations of the Act, Plaintiffs have suffered damages.

70. Plaintiffs are permitted to bring this action for damages for the Defendants ABC's and CMC's violations of the Act and are entitled to recover damages sustained.

71. Plaintiffs also seek seek attorneys' fees against Defendants ABC and CMC as permitted by law.

72. This action has been brought timely, under the totality of the circumstances, pursuant to *Virginia Code* sec. 8.01-243 and 8.01-249(1.) and decisional law thereunder.

### COUNT VI: FRAUDULENT MISREPRESENTATION
[against Defendants ABC and CMC]

73. Plaintiffs reaffirm and reallege paragraphs 1 through 43 hereinabove as if set forth more fully hereinbelow.

74. Defendants ABC and CMC knowingly, intentionally, and fraudulently concealed material information from Plaintiffs which is required by Federal Statutes and Regulations to be disclosed to the Plaintiffs as set forth above.

75. Said Defendants also materially misrepresented material information to the Plaintiffs with full knowledge by said Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

76. Under the circumstances, the material omissions and material misrepresentations of said Defendants were malicious.

17

77. Plaintiffs, not being mortgage lenders, mortgage brokers, or mortgage lenders, reasonably relied upon the representations of said Defendants (or the lack of disclosures by said Defendants) in agreeing to execute the mortgage loan documents.

78. Had Plaintiffs known of the falsity of said Defendants' representations, Plaintiffs would not have entered into the transactions the subject of this action.

79. As a direct and proximate cause of said Defendants' material omissions and material misrepresentations, Plaintiffs have suffered damages.

80. Under the totality of the circumstances, Defendants' actions were willful, wanton, intentional, and engaged in with a callous and reckless disregard for the rights of the Plaintiffs, justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of Defendants ABC and CMC, but also to other persons or entities with similar inclinations.

81. This action has been brought timely under the totality of the circumstances pursuant to *Virginia Code* sec. 8.01-243 and 8.01-249(1.) and decisional law thereunder.

## COUNT V: BREACH OF FIDUCIARY DUTY
[against Defendant CMC]

82. Plaintiffs reaffirm and reallege paragraphs 1 through 43 hereinabove as if set forth more fully hereinbelow.

83. Defendant CMC, being the mortgage broker for Plaintiffs, was in a fiduciary relationship with Plaintiffs and owed certain duties to Plaintiffs arising out of this fiduciary relationship.

84. These duties included:

(a) providing mortgage loan services and a loan program to Plaintiffs which was best suited to the Plaintiffs given their income and expenses;

(b) fully and fairly disclosing the total cost of the loan and the true nature of the loan;

(c) fully disclosing all charges associated with the transaction;

(d) charging Plaintiffs only for services provided;

(e) fully responding to Plaintiffs' inquiries and concerns relating to payments made, reduction of principal, and document requests;

(f) not engaging in actions for the benefit of Defendant CMC to the detriment and damage of the Plaintiffs; and

(g) not engaging in conduct which may place Plaintiffs in jeopardy of the exercise of their legal rights.

85. Defendant CMC repeatedly breached its fiduciary duties to the Plaintiffs by its actions and inactions as set forth above.

86. Defendant CMC accomplished its breach of its fiduciary duties to the Plaintiffs through a pattern of fraudulent concealment, misrepresentation, and material omission, resulting in the Plaintiffs' entry into a mortgage loan transaction which was contrary to the Plaintiffs' best interests.

87. As a direct and proximate result of said Defendant CMC's breaches of its fiduciary duties, Plaintiffs have suffered damages.

88. Under the totality of the circumstances, Defendant CMC's actions were willful, wanton, intentional, and with a callous and reckless disregard for the rights of the Plaintiffs justifying an award of not only actual compensatory but also exemplary punitive damages to serve as a deterrent not only as to future conduct of Defendant CMC, but also to other persons or entities with similar inclinations.

89. This action has been brought timely under the totality of the circumstances pursuant to *Virginia Code* sec. 8.01-243 and 8.01-249(1.) and decisional law thereunder.

## COUNT VII: UNJUST ENRICHMENT
[against Defendants ABC and CMC]

90. Plaintiffs reallege and reaffirm paragraphs 1 through 43 hereinabove as if set forth more fully hereinbelow.

91. Defendants ABC and CMC had an implied contract with the Plaintiffs to ensure that Plaintiffs understood all fees which would be paid to said Defendants and their agents and assigns to obtain credit on Plaintiffs' behalf, and to not charge any fees which were not fully disclosed in advance to Plaintiffs or fees for services which were not provided.

92. Defendants ABC and CMC had full knowledge, at all times material, that they intended to charge Plaintiffs a YSP without disclosing same to Plaintiffs, with said Defendants having actual knowledge that said YSP was an illegal kickback and was not in consideration for any services rendered.

20

93. Defendants ABC and CMC, cannot, in good conscience and equity, retain the benefits from their actions of charging Plaintiffs an illegal and undisclosed YSP.

94. Defendants ABC and CMC have been unjustly enriched at the expense of the Plaintiffs, and maintenance of the enrichment would be contrary to the rules and principles of equity.

95. Plaintiffs thus demand restitution from Defendants ABC and CMC in the form of actual damages, exemplary damages, and any attorneys' fees which may be awardable by law.

96. This action has been brought timely under the totality of the circumstances pursuant to *Virginia Code* sec. 8.01-243 and 8.01-249(1.) and decisional law thereunder.

## COUNT IX: CIVIL CONSPIRACY TO DEFRAUD
[against Defendants ABC, CMC, DBTCA, WF, and AHMIT 2006-2]

97. Plaintiffs reaffirm and reallege paragraphs 1 through 43 hereinabove as if set forth more fully hereinbelow.

98. As set forth above, all Defendants agreed, between and among themselves to engage in a scheme to defraud by marketing and causing borrowers to enter into mortgage loans which were fundamentally unfair and misleading to average borrowers and were intentionally disguised as being attractive to borrowers, with the primary purpose of said mortgage loans being for resale to investment banking concerns to provide collateral for MBS at the expense of and to the detriment to borrowers.

99.  At all times material hereto, Defendants intended to saddle borrowers with undisclosed fees, undisclosed YSPs, undisclosed negative amortization, varying monthly payment amounts which could not be reasonably calculated by the borrowers, and a payment sceanario which was detrimental to borrowers so that Defendants could reap profits at the expense of the unknowing borrowers who were duped into entering into the subject mortgage loans with false representations, material nondisclosures and, in the instant case, forged closing documents as well.

100.    Defendants thus engaged in a series of overt acts which were intentionally designed to both accomplish an unlawful purpose (causing innocent borrowers to enter into what were fraudulent mortgage loans) and further an otherwise lawful purpose (originating mortgage loans) through unlawful means (*e.g.* fraud, material nondisclosure, intentional misrepresentation, fraudulent concealment, and forgery).

101.    Plaintiffs were within the intended class of victims of Defendants, as Plaintiffs' mortgage loan was intended to be and in fact became a part of the American Home Mortgage Investment Trust 2006-2 as collateral for Mortgage-Backed Notes Series 2006-2, which Trust closed on or about June 30, 2006.

102.    The primary purpose of the Defendants' causing the Plaintiffs to enter into the mortgage loan the subject of this action was to provide collateral security for the MBS known as American Home Mortgage Investment Trust 2006-2 Mortgage-Backed Notes Series 2006-2, with this

22

primary intent of the Defendants being intentionally accomplished through fraud, material nondisclosure, misrepresentation, fraudulent concealment, and forgery.

103.    The Defendants structured the entire mortgage loan transaction, from initial form and structure of the mortgage loan to closing and securitization, through a design and plan which required an Indenture Trustee, a Securities Administrator, an Issuer and Trust, a lender, and a broker.

104.    As set forth above, Defendants DBTCA, WF, and AHMIT 2006-2 engaged in overt acts in furtherance of the conspiracy and to set the conspiracy in motion, and Defendants ABC and CMC engaged in acts in furtherance of the conspiracy to accomplish its ends which actions in pursuance of the conspiracy have directly and proximately resulted in damages to the Plaintiffs.

105.    The actions of the various Defendants were interrelated and could not have been accomplished without participation of all Defendants pursuant to the scheme orchestrated by the Defendants, as:

   (a) Defendant ABC was the "lender" but was not a broker, trust, Indenture Trustee, Issuer, or Securities Administrator;

   (b) Defendant CMC was the broker but was not a lender, trust, Indenture Trustee, Issuer, or Securities Administrator;

   (c) Defendant DBTCA was the Indenture Trustee but was not the lender, broker, trust, Issuer, or Securities Administrator;

(d) Defendant WF was the Securities Administrator but was not the lender, broker, trust, Issuer, or Indenture Trustee; and

(e) Defendant AHMIT 2006-2 was the issuer of the Trust which was collateralized in part with the Plaintiffs' mortgage loan but which was not the lender, broker, Indenture Trustee, or Securities Administrator.

106.    As a direct and proximate result of the actions and a course of conduct of all Defendants which were planned, designed, and orchestrated to further several illegal acts and to accomplish a legal act by unlawful means through the commission of several overt acts in furtherance of the conspiracy to defraud the Plaintiffs, Plaintiffs have suffered damages and have thus satisfied the requirements for pleading a cause of action for civil conspiracy under applicable Virginia decisional law.

107.    The actions of all Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

108.    Plaintiffs thus demand an award of actual, compensatory, and punitive damages.

## RELIEF SOUGHT

WHEREFORE, having set forth the above-described legally sufficient causes of actions against the Defendants, Plaintiffs pray for the entry of Final Judgment against all Defendants jointly and severally canceling the Note and Mortgage and rescinding the residential mortgage transaction the subject of this action; for damages in an amount

not yet quantified but to be proven at trial and such other amounts to be proven at trial; an award of three times the amount of actual damages sustained; for costs and attorneys' fees; that the Court find that the transactions the subject of this action are illegal and are deemed void; and for any other and further relief which is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all matters so triable as a matter of right and pursuant to Rule 3:21 of the Virginia Rules of Court and the rules of this Court.

Dated this 24th day of March, 2009.

Respectfully submitted,

*David Aker*

David Aker
(EDNY Bar Code No.  DA5506)
David Aker, Attorney at Law
23 Southern Road
Hartsdale, New York 10530-2128
Tel. No. 914 674-1094
Fax No. 914 479-5404
daveaker@optonline.net
*Attorneys for Plaintiffs*

W. Jeff Barnes
(*counsel to seek admission pro hac vice*)
W. J. Barnes, P.A.
1515 North Federal Highway
Suite 300
Boca Raton, Florida 33432
Telephone: (561) 864-1067
Telefax: (702) 804-8137

## Exhibit C

**HUD-1 Statement**

# A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

**CERTIFIED TRUE COPY**

| B. Type of Loan | | |
|---|---|---|
| 1.☐ FHA    2.☐ RHS    3.☒ Conv. Unins. | 6. File Number 14918 | 7. Loan Number    8. Mortgage Insurance Case Number |
| 4.☐ VA    5.☐ Conv. Ins. | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| David E. Jackson<br>Elisabeth Judith Jackson<br>12787 Lavender Keep Circle<br>Fairfax, Va. 22033 | | American Brokers Conduit<br>538 Broad Hollow Road<br>Melville, NY  11747 |

| G. Property Location | H. Settlement Agent | |
|---|---|---|
| 12787 Lavender Keep Circle<br>Fairfax, Va. 22033<br>Lot 24A, Sec. 1, Rugby Road<br>Fairfax County | Synergy Title & Escrow, LLC | |
| | Place of Settlement<br>11350 Random Hills Road, Suite 130<br>Fairfax, VA 22030 | I. Settlement Date<br>03/24/06<br>DD:  03/29/06 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| 104. Citimortgage | | 404. | |
| 105. Wells Fargo | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | to | 406. City/town taxes | to |
| 107. County taxes | to | 407. County taxes | to |
| 108. Assessments | to | 408. Assessments | to |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT TO SELLER** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | to | 510. City/town taxes | to |
| 211. County taxes | to | 511. County taxes | to |
| 212. Assessments | to | 512. Assessments | to |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY / FOR BORROWER** | | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | | 602. Less reduction amount due to seller (line 520) | |
| 303. CASH    TO    BORROWER | | 603. CASH    TO    SELLER | |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on Line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: To determine if you have to report the sale or exchange of your primary residence on your tax return, see the Schedule D (Form 1040) instructions. If the real estate was not your primary residence, complete the applicable parts of Form 4797, Form 6252, and /or Schedule D (Form 1040).

You are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide the settlement agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN#

RESPA, HB 4305.2 - REV. HUD1(3/86)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

SETTLEMENT STATEMENT

PAGE 2

| L. SETTLEMENT CHARGES: | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| File Number | | | |
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $    @    = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $    to | | | |
| 702. $    to | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | P.O.C. | | |
| 801. Loan Origination Fee    % | | | |
| 802. Loan Discount    % | | | |
| 803. Appraisal Fee    to    Carteret Mortgage Corporation | | | |
| 804. Credit Report    to    Carteret Mortgage Corporation | | | |
| 805. Lender's Inspection Fee    to | | | |
| 806. Tax Service Fee    to    American Brokers Conduit | | | |
| 807. Flood Cert Fee    to    American Brokers Conduit | | | |
| 808. Commitment Fee    American Brokers Conduit | | | |
| 809. Balance of Appraisal    Carteret Mortgage Corporation | | | |
| 810. Broker Processing Fee    Carteret Mortgage Corporation | | | |
| 811. Broker Premium pd by Lender    Carteret Mortgage Corporation | 26245.00M | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest from   03/29/06   to   04/01/06   @$   20.11  /day    3 day(s) | | | |
| 902. Mortgage Insurance Premium    to | | | |
| 903. Hazard Insurance Premium    1   yrs. to   Allstate Insurance Company | | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance    2 mo. @$    / mo. | | | |
| 1002. Mortgage Insurance    mo. @$    / mo. | | | |
| 1003. City property taxes    mo. @$    / mo. | | | |
| 1004. County property taxes    6 mo. @$    / mo. | | | |
| 1005. Annual Assessments    mo. @$    / mo. | | | |
| 1006.    mo. @$    / mo. | | | |
| 1007.    mo. @$    / mo. | | | |
| 1008. Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee    to    Synergy Title & Escrow, LLC | | | |
| 1102. Abstract or title search    to    HBS Title Enterprises, Inc. | | | |
| 1103. Title examination    to    Synergy Title & Escrow, LLC | | | |
| 1104. Title insurance binder    to | | | |
| 1105. Document preparation    to | | | |
| 1106. Notary fees    to | | | |
| 1107. Attorney's fees    to    John Siciliano and Vincent Tramonte, Atty | | | |
| (includes above item No:    Deed Preparation    ) | | | |
| 1108. Title insurance    to    Stewart Title/Synergy Title | | | |
| (includes above item No:    ) NEW STEWART REG | | | |
| 1109. Lender's coverage    905,000.00 --- 11501.32 Reissue Rate & 125% Neg Am Loan | | | |
| 1110. Owner's coverage | | | |
| 1111. Title Insurance Binder    Synergy Title & Escrow, LLC | | | |
| 1112. Prep/Procure Release/2    Synergy Title & Escrow, LLC | | | |
| 1113. | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording fees    Deed $    ; Mortgage $    ; Releases $ | | | |
| 1202. City/county/stamps    Deed $    ; Mortgage $ | | | |
| 1203. State tax/stamps    Deed $    ; Mortgage $ | | | |
| 1204. Grantor's Tax    Deed $    ; Mortgage $ | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey    to | | | |
| 1302. Pest inspection    to | | | |
| 1303. File scan fee    Digital File Services/Synergy Title | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. TOTAL SETTLEMENT CHARGES    (enter on lines 103 and 502, Sections J and K) | | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

David E. Jackson      Elizabeth Judith Jackson

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Synergy Title & Escrow, LLC      Date    3/29/06

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

RESPA, HB 4305.2 - REV. HUD1(3/86)

## ADDENDUM TO HUD-1 SETTLEMENT STATEMENT

SUBJECT TO FINAL AUDIT: All computations are subject to final audit. Any error discovered may be corrected by the Company in which event the parties hereto agree to immediately reimburse the Company for any error made in their favor, and for the cost of the collection of same, if necessary, including reasonable attorney's fees.

EXISTING LIENS: The Borrowers certify that there are no bankruptcy proceedings, Deeds of Trusts, Mortgages, Special Assessments, or HOA Dues, levied or pending, or other liens affecting the property other than those shown on page 1 of hereof, and if there are such liens, the Borrowers hereby guarantee payment and release of same.

The undersigned, for and in consideration of the Company's preparation of closing documents and the conducting of closing, agree, that if requested, they will fully cooperate, adjust and correct all TYPOGRAPHICAL OR CLERICAL ERRORS discovered in any or all of the closing documents executed by the undersigned at settlement. The undersigned appoint the Company and its designees as their attorney-in-fact to correct any such errors, place our initials on documents where changes are made, and/or sign our names to and acknowledge any document or form adjusting or correcting such errors.

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BORROWERS

_____
David E. Jackson

_____
Judith Jackson

_____

_____

Borrower Phone # _____

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused the funds to be disbursed in accordance with this statement.

Synergy Title & Escrow, LLC TIN#54-2044218

_____
SETTLEMENT AGENT

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL SETTLEMENT STATEMENT CONSISTING OF 3 PAGES. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.