IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ----------------------------------------------------------- x | : | Chapter 11 |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| American Home Mortgage Holdings, Inc., *et al*,[1] | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | **Re: D.I. 6495, 7286 and 7287** |
| ----------------------------------------------------------- x | : | |

**JOINT OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS AND THE DEBTORS TO THE
APPLICATIONS OF THE OFFICIAL COMMITTEE OF BORROWERS
FOR PAYMENT OF FEES AND EXPENSES OF THEIR LEGAL
PROFESSIONALS IN EXCESS OF THE COURT DETERMINED CAP**

The Official Committee of Unsecured Creditors (the "*Creditors' Committee*") of American Home Mortgage Holdings, Inc., *et al*. (the "*Debtors*"), by its co-counsel, Hahn & Hessen LLP and Blank Rome LLP, and the Debtors, by their counsel, Young Conaway Stargatt & Taylor, LLP, hereby file this joint objection (the "*Joint Objection*") to (i) the *First Interim Application of Gilbert Oshinsky LLP for Allowance of Fees and Reimbursement of Expenses as Co-Counsel to the Official Committee of Borrowers for the Period October 22, 2008 Through February 28, 2009* [D.I. 7286] and (ii) the *First Interim Fee Application of Zuckerman Spaeder LLP for Interim Approval and Allowance of Compensation and Reimbursement of Expenses* (together, the "*Applications*") [D.I. 7287], and in support thereof respectfully state as follows:

---

[1] The Debtors are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.); American Home Mortgage Corp. ("AHM Corp."); American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc; and Great Oak Abstract Corp.

## BACKGROUND

1.  On August 6, 2007 (the "*Petition Date*"), the Debtors commenced voluntary cases (the "*Cases*") under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") with this Court. Since the Petition Date, the Debtors have continued in the operation of their businesses and the management of their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.[2]

2.  On August 14, 2007, the Office of the United States Trustee (the "*U.S. Trustee*") appointed seven of the largest unsecured creditors to serve as members of the Creditors' Committee.

3.  On August 15, 2008, the Debtors filed their Chapter 11 Plan of Liquidation of the Debtors (as amended, the "*Plan*") [D.I. 5450] and Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Chapter 11 Plan of Liquidation of the Debtors (as amended, the "*Disclosure Statement*") [D.I. 5451].

4.  On September 9, 2008, certain individuals, through their co-counsel Gilbert Oshinsky LLP (f/k/a Gilbert Randolph LLP) and Zuckerman Spaeder LLP, filed a motion [D.I. 5675] (the "*Motion*") seeking appointment of an official committee of borrowers in these cases. In the Motion, the movants argued that the cost of the borrowers' committee's professionals "should be minimal" and that a borrowers' committee's responsibilities "should have little overlap with those of the [Creditors'] Committee". (Mot. at 18-19.)

5.  The Creditors' Committee and the Debtors objected to the Motion [D.I. 6112 and 6115, respectively], the Debtors specifically disputing that an additional statutory committee

---

[2] By order dated April 1, 2009, however, the Court appointed a fee examiner to review and make recommendations with respect to certain fee applications submitted by professionals [D.I. 7218].

would entail "minimal" cost to the Debtors' estates. (Debtors' Obj. at ¶ 55-56; accord CC Obj. at ¶ 16 (noting that movants sought a "blank check" with respect to reimbursement of their costs)). At the October 8, 2008, hearing on the Motion, counsel for the movants assured the Court that the borrowers' committee would focus narrowly on issues relevant to borrowers, and would not be looking to touch on issues for which the Creditors' Committee would be responsible to address.[3]

6.      In a colloquy with Debtors' counsel at the hearing on the Motion, the Court proposed imposing a cap on the borrowers' committee's professional fees as a way to limit the prejudice to the estate as a result of the borrowers' committee's formation. (10/8/08 Hr'g Tr. at 46:2-5.) Later in the hearing, counsel for the U.S. Trustee "absolutely agree[d]" that, under applicable Third Circuit precedent, the Court had the ability to set a cap on a borrowers' committee's professionals' fees. (*Id.* at 62:16-21.) In its oral ruling approving the Motion at the conclusion of the hearing, the Court indicated it was cognizant of the delay and additional expense that would be imposed by creation of an additional statutory committee, but believed it was possible to "fashion a remedy that would, while not eliminating that expense, hopefully limit it significantly." (*Id.* at 77:23-78:5.)

---

[3]     Specifically, counsel stated:

> [G]iven that first of all we've got a Borrowers Committee with a relatively narrow focus, we're not looking to – the Committee is not looking to touch on all issues in the case, the Creditors Committee is for that purpose. The [purpose of the] Borrowers Committee would be simply to focus on issues relative to the borrowers. Secondly, like I said, where this case is, the assets have mostly been liquidated. There's a plan on the table. It's just a question of addressing the notice and other problems that we've raised in our papers and getting the case to the finish line.

(10/8/08 Hr'g Tr. [D.I. 6529] at 20:10-20.) Later in the hearing, counsel for the movants reiterated that the borrowers' committee "would not be seeking to do all the things that you normally have a committee look into, preference actions, that sort of thing, but there are some issues on which borrower interests and interest[s] of general unsecured creditors diverge, and on those issues, a Borrowers Committee would be active . . . ." (*Id.* at 70:12-17.) Counsel went on to state that "the suggestion that a Borrowers Committee's role should be narrow is one that the borrowers completely understand and accept, and we think it would be appropriate to go forward on that basis". (*Id.* at 70:22-25.)

7.  On October 10, 2008, this Court entered an order (the "*Appointment Order*") [D.I. 6220] directing the U.S. Trustee to appoint an Official Committee of Borrowers (the "*Borrowers' Committee*") and scheduling a status conference for October 22, 2008, to consider the scope of the appointment and any limitations that would be imposed on the Borrowers' Committee.

8.  On October 20, 2008, the Debtors filed a motion [D.I. 6285] to extend the time within which to file a notice of appeal from the Appointment Order (the "*Appeal Motion*").

9.  By notice dated October 21, 2008 [D.I. 6407], the U.S. Trustee appointed the Borrowers' Committee. The Court held a status conference on October 22, 2008, at which it made certain rulings with respect to the items left open in the Appointment Order. On November 4, 2008, the Court entered an order supplementing the Appointment Order (the "*Supplemental Order*") [D.I. 6495] consistent with its rulings at the status conference, which ordered, *inter alia*, that (i) the scope of the Borrowers' Committee's rights and responsibilities was limited to matters relating to the Plan, global stay relief on behalf of all borrowers in foreclosure and any incidental related issues (the "*Borrowers' Committee Scope*"), (ii) the Borrowers' Committee was not authorized to retain any professionals other than counsel and (iii) the compensation and reimbursement of expenses of counsel for the Borrowers' Committee was capped at $250,000 (the "*Fee Cap*"). Upon entry of the Supplemental Order, and in reliance on the Borrowers' Committee Scope and the Fee Cap therein, the Debtors withdrew their Appeal Motion [D.I. 6513].

10. On November 25, 2008, the Disclosure Statement was approved and confirmation of the Plan was initially scheduled for January 28, 2009 (the "*Confirmation Hearing*").[4]

11. On January 20, 2009, only eleven (11) weeks after the Borrowers' Committee was allotted a maximum of $250,000 for legal fees, and only eight (8) days before the scheduled Confirmation Hearing, the Borrowers' Committee filed a request to increase the Fee Cap to $400,000 and to retain Ms. Margot Saunders as an expert (the "*January 20th Request*") [D.I. 6864].

12. In response to the January 20th Request, this Court held a telephonic hearing on January 22, 2008. At the hearing, the Debtors and the Creditors' Committee consented to the Borrowers' Committee's retention of Ms. Saunders as a testifying expert on a *nunc pro tunc* basis, subject to a $20,000 cap on compensation, but opposed the balance of the relief sought in the January 20th Request. The Court noted that it did not have enough information to rule on the Borrowers' Committee request to increase the Fee Cap because the Borrowers' Committee's counsel had failed to file any fee applications. Without those applications, the Court held that it did not have before it any evidence as to if, or how, the Borrowers' Committee spent any or all of the current Fee Cap of $250,000. Accordingly, the Court ruled that the request to increase the Fee Cap would be adjourned to a later date.[5]

13. On January 22, 2009, the Borrowers Committee filed an objection to the Plan (the "*Plan Objection*") [D.I. 6883] challenging, among other things: (i) the adequacy of notice of the bar dates established previously in the Cases, (ii) the extension of the automatic stay post-

---

[4] Based in part on the Borrowers' Committee's intent to present expert testimony at the Confirmation Hearing, the Debtors adjourned the Confirmation Hearing to February 9, 2009 so as to provide time to review the Borrowers' Committee's expert report and depose the Borrowers' Committee's expert.

confirmation, (iii) the alleged conflicts of interest of the Plan Trustee and the Plan Oversight Committee (as defined in the Plan), (iv) the Plan's exculpation provisions, (v) the proposed mechanism for the estimation, liquidation, and allowance of EPD/Breach Claims (as defined in the Plan) (such mechanism, the "*EPD/Breach Claims Protocol*"), (vi) the proposed comprehensive settlement of inter-debtor claims and potential inter-estate disputes in the Plan (the "*Stipulated Asset Allocation*"), and (vii) whether the Plan satisfied the "best interests of creditors" test of Bankruptcy Code section 1129(a)(7).  Given that the EPD/Breach Claims Protocol, the Stipulated Asset Allocation, and hypothetical chapter 7 liquidation analysis did not implicate "borrower" interests as such,[6] the Creditors' Committee and the Debtors believe that the Borrowers' Committee was using its objection to these critical elements of the Plan solely to obtain negotiation leverage.

14.     When the Debtors were unwilling to accede to the Borrowers' Committee's demands with respect to Plan amendments, the Borrowers Committee pressed the Plan Objection, which was overruled *in toto* at the conclusion of the three-day hearing on confirmation of the Plan held February 9-11, 2009 (the "*Confirmation Hearing*").

15.     In the Applications, Borrowers' Committee requests legal fees totaling $540,174.25 and expenses totaling $25,489.20 for the period from October 2008 to February

---

[5]     The Court's ruling at the January 22, 2008, hearing was memorialized in an order dated January 28, 2009 [D.I. 6905].  On January 30, 2009, the Creditors' Committee and the Debtors jointly filed a formal objection to the Borrowers' Committee's request to increase the Fee Cap [D.I. 6914].  The matter has been adjourned by the parties and remains pending.

[6]     The Borrowers' Committee's essential challenge to the EPD/Breach Claims Protocol was that it would purportedly allow EPD/Breach Claims at inflated values, thus diluting the recoveries of other creditors of the respective Debtors' estates.  The essential challenge to the Stipulated Asset Allocation was that it purportedly disadvantaged AHM Corp., resulting in diminished recoveries for AHM Corp.'s creditors.  The Borrowers' Committee went on to argue that AHM Corp.'s creditors would fare better in a chapter 7 liquidation than they would fare under the Plan, thus implicating section 1129(a)(7) of the Bankruptcy Code.  The Creditors' Committee and the Debtors believe that objections to the Plan based on the Plan's general fairness to "creditors" obviously exceeded the narrow scope of the Borrowers' Committee's appointment and strayed significantly into territory properly reserved for the Creditors' Committee.

2009 (the "*Application Period*").[7] This request is more than double the Fee Cap that the Court set and well exceeds even the $400,000 increased cap that the Borrowers' Committee sought just three months ago.

16. By way of comparison, the Debtors' bankruptcy counsel sought compensation of $578,672 for Plan- and Disclosure Statement-related work performed during the Application Period, despite their having primary responsibility for the negotiation, drafting, and amendment of the operative documents, solicitation of the Plan, and the litigation or other resolution of several objections (both formal and informal) other than the Plan Objection. Including all Plan- and Disclosure Statement-related work from the beginning of these cases through February 2009, Debtors' counsel sought an aggregate of $1.443 million, less than three times the amount sought by the Borrowers' Committee's counsel for objecting to the Plan.

## ARGUMENT

17. Notwithstanding the Supplemental Order specifically setting the Fee Cap at $250,000, the Borrowers' Committee seeks fees more than twice this amount. As this Court capped the Borrowers' Committee counsel's fees and expenses at $250,000, all requests for fees and expenses in excess of that cap should be denied.

18. In fact, the Borrowers' Committee has given <u>no</u> explanation for why the Court should grant fees that exceed the Fee Cap by such a wide margin. It is not surprising that they fail to offer an explanation as, at the time of the January 20th Request, the Borrowers' Committee had already reached the Fee Cap and were therefore aware of the fact that they were exceeding the Fee Cap.

---

[7] The quarterly interim fee period currently up for consideration by the Court ends January 31, 2009. Accordingly, strictly speaking, the fees and expenses for February 2009 requested in the Applications are not properly before the Court at this time.

19. The fact that the Borrowers' Committee exhausted the entire $250,000 prior to the confirmation hearing is illustrative of the Borrowers' Committee's continual disregard of the Borrowers' Committee Scope and the Fee Cap. Instead of complying with and working within the confines of the Fee Cap, the Borrowers' Committee routinely engaged in unnecessary, costly strategies which had very little utility in performing their primary charge of representing "borrower" interests during the Plan negotiation and confirmation process.[8]

20. As the Applications exceed the Fee Cap,[9] and in light of the appointment of a fee examiner in these cases, the Creditors' Committee and the Debtors have not individually reviewed each line item in the Applications for reasonableness or for adherence to the Borrowers' Committee Scope. If the Fee Cap is increased, the Debtors and the Creditors' Committee reserve the right to review the Applications further and object on these grounds.

---

[8] One such example is the Borrowers' Committee's insistence on obtaining and reviewing numerous documents the Debtors produced to the SEC, despite the fact that such documents had little relevance to confirmation of the Plan. [*See* D.I. 6491 (emergency motion to compel).] Another is the Borrowers' Committee's motion *in limine* to exclude the Debtors' and the Creditors' Committee's fact witnesses from testifying about the EPD/Breach Claims Protocol and the Stipulated Asset Allocation. [*See* D.I. 6966.]

[9] The Applications even exceed the $400,000 limit that the Borrowers' Committee requested just three months prior to the filing of the instant Applications. That request was made just before the Confirmation Hearing was set to begin when the Borrowers' Committee should have had a firm idea of the strategies and tactics it would employ and the basic costs and fees associated with those tactics. It appears that the Borrowers' Committee moved forward without regard to any of the caps put in place by the Court, and the Borrowers' Committee's counsel have provided no reason why they should be compensated for legal fees that were above the Fee Cap.

**WHEREFORE**, the Creditors' Committee and the Debtors respectfully request that the Court sustain this Joint Objection, deny the Applications' request to award the Borrowers' Committee professional fees in excess of the Fee Cap, and grant such other and further relief as it deems just and proper.

Dated: Wilmington, Delaware
May 5, 2009

Respectfully Submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Patrick A. Jackson
_____
Sean M. Beach (No. 4070)
Margaret W. Greecher (No. 4652)
Patrick A. Jackson (No. 5976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

BLANK ROME LLP

/s/ David W. Carickhoff
_____
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff (No. 3715)
1201 Market Street
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Joseph Orbach
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Official Committee of Unsecured Creditors*