**Loraine Calvo**
**43 Cottonwood Lane**
**Westbury, New York 11590**
**May 4, 2009**

FILED

2009 MAY -8 AM 8: 47

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

United States Bankruptcy Court
District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

Re:   Response to Objection   case # 07-11047 (css)
      Claim Number 7394
      Claim Amount $8,826.92

To Whom it May Concern,

Your notice stated that no severance pay is owed pursuant to terms of employment. I did, indeed, retain pay for my period of employment through the end of my retention period. However, I had an Employment Agreement (copy attached) that extended four weeks past my discharge date. Please refer to section 2 – Terms.

Also refer to section 5 (a) which identifies my compensation level as established at an increased rate, which according to this section cannot be reduced.

Your notice also stated that the Debtor's books show no liability of this claim. It should have. I should not be penalized for the company's neglect to record this liability.

Thank you,

*Loraine Calvo*
Loraine Calvo

Cc: Young Conaway Stargatt & Taylor, LLP
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| AMERICAN HOME MORTGAGE ) | |
| HOLDINGS, INC., Delaware corporation, et al., ) | Case No. 07-11047 (CSS) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | Response Deadline: May 8, 2009 at 4:00 p.m. (ET) |
| ) | Hearing Date: May 15, 2009 at 1:00 p.m. (ET) |
| ) | |

AHM OB33 4/15/2009 (merge2.txnum2) 40000574 15  EPIQ Use - 14

CALVO, LORAINE (LORI)
43 COTTONWOOD LA
WESTBURY, NY 11590

## NOTICE OF DEBTORS' THIRTY-THIRD OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

**TO:** CALVO, LORAINE (LORI)
43 COTTONWOOD LA
WESTBURY, NY 11590

**Basis For Objection:** No Liability Claim: Debtors' books and records show no liability on account of this claim

| | Claim Number | Claim Amount |
|---|---|---|
| Claim to be Expunged | 7394 | $8,826.92 |

Claim for employment severance pay. Claimant was retained by the Debtors until the end of her retention period, October 1, 2007. No severance pay is owed pursuant to terms of employment.

The above-captioned debtors and debtors in possession (the "Debtors") have filed the **Debtors' Thirty-Third Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1** (the "Objection"), a copy of which is attached hereto. The Debtors seek by this Objection to disallow the claim listed above because the Debtors have determined, after review of their books and records, that they have no record of any liability on account of this claim. The Objection seeks to alter your rights by disallowing the claim listed above in the "Expunged Claim" row.

Responses to the Objection, if any, must be filed on or before **May 8, 2009 at 4:00 p.m. (ET)** (the "Response Deadline") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801. At the same time, you must also serve a copy of the response upon the counsel to the Debtors listed below so that the response is received on or before the Response Deadline.

A hearing on the Objection (the "Hearing") will be held on **May 15, 2009 at 1:00 p.m. (ET)** before the Honorable Christopher S. Sontchi in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 5th Floor, Courtroom No. 6, Wilmington, DE 19801. You may appear telephonically at the Hearing by following the procedures that immediately follow this notice.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: April 15, 2009
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6756
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession

# EMPLOYMENT AGREEMENT

This Employment Agreement, dated as of July 10, 2006 (this "Agreement"), is by and between American Home Mortgage Corp., a New York corporation having a place of business at 538 Broadhollow Road, Melville, NY 11747 (the "Company"), and Loraine Calvo, currently residing at 43 Cottonwood Lane, Westbury, NY 11590 (the "Executive").

Whereas the Company wishes to assure itself of the services of the Executive, and the Executive desires to be employed by the Company, upon the terms and conditions hereinafter set forth.

The Company and the Executive hereby agree as follows:

1. **Employment.** The Company agrees to employ the Executive, and the Executive hereby accepts such employment by the Company during the term set forth in Section 2 and on the other terms and conditions of this Agreement.

2. **Term.** The term of this Agreement shall commence on July 10, 2006 (the "Commencement Date"), and shall continue until the Executive resigns or is discharged, in which case the Agreement shall terminate four weeks following the resignation or discharge date.

3. **Position, Duties and Responsibilities, Rights.**

    (a) During the term of this Agreement, the Executive shall serve as and hold the office and title of Vice President, HRIS. The Executive shall have all of the powers and duties usually incident to the office described above, and shall at all times comply with all policies of the Company relating to the Executive's employment.

    (b) During the term of this Agreement, the Executive agrees to devote substantially all the Executive's time, efforts and skills to the affairs of the Company during the Company's normal business hours, except for vacations, illness and incapacity, but nothing in this Agreement shall preclude the Executive from devoting reasonable periods to (i) manage the Executive's personal investments, (ii) participate in professional, educational, public interest, charitable, civic or community activities, including activities sponsored by trade organizations, (iii) serve as a director or member of an advisory committee of any corporation not in competition with the Company or any of its subsidiaries, or as an officer, trustee or director of any charitable, educational, philanthropic, civic, social or industry organizations, or as a speaker or arbitrator; provided, however, that the performance of the Executive's duties or responsibilities in any of such capacities does not materially interfere with the regular performance of the Executive's duties and responsibilities hereunder

4. **Place of Performance.** In connection with the Executive's employment by the Company, the Executive's place of performance shall be in Melville, New York, and the Executive shall not be required to be absent from such location on travel status or otherwise for

more than a reasonable time each year as necessary or appropriate for the performance of the Executive's duties hereunder.

5. <u>Compensation</u>

(a) During the term of this Agreement, the Company shall pay the Executive, and the Executive agrees to accept a base salary at the rate of not less than $100,000.00 per year (the annual base salary as increased from time to time during the term of this Agreement being hereinafter referred to as the "Base Salary"). The Base Salary shall be paid in installments no less frequently than monthly. Any increase in Base Salary or other compensation shall not limit or reduce any other obligation of the Company hereunder, and once established at an increased specified rate, the Executive's Base Salary hereunder shall not thereafter be reduced.

(b) (1) Subject to section 5(b)(2) below, the Executive shall be eligible to receive a management evaluation bonus (the "Management Evaluation Bonus"), the amount of which will be determined by the Company based on an evaluation of the Executive's overall performance during the year, beginning with the Executive's performance. The targeted amount of the Management Evaluation Bonus will be 15% of the Executive's Base Salary, but the amount awarded, if any, may be less or greater than the targeted amount in the sole discretion of the Company. The Management Evaluation Bonus for a given year will be paid when such bonuses are generally paid by the Company in the succeeding year. The Executive will not earn or be entitled to receive a Management Evaluation Bonus if the Executive is no longer an employee of the Company as of the scheduled bonus payment date.

(2) Notwithstanding anything in section 5(b)(1) to the contrary, the Management Evaluation Bonus, for the period beginning with the Commencement Date through December 31, 2006 (the "2006 Employment Period"), shall be pro rated in proportion to the length of the Executive's employment during calendar year 2006 and shall be in an amount determined by the Company based on an evaluation of the Executive's overall performance during the 2006 Employment Period. The targeted amount of the Management Evaluation Bonus, pursuant to this section 5(b)(2), shall be $1,250.00 multiplied by the number of full calendar months worked by the Executive in the 2006 Employment Period, but the amount awarded, if any, may be less or greater than the targeted amount in the sole discretion of the Company. The Management Evaluation Bonus, pursuant to this section 5(b)(2), will be paid in or before March 2007. Notwithstanding anything to the contrary, the Executive will not earn or be entitled to receive the Management Evaluation Bonus, pursuant to this section 5(b)(2), if the Executive is no longer an employee of the Company as of the scheduled bonus payment date.

(c) During the term of this Agreement, the Executive shall be entitled to fringe benefits, in each case at least equal to and on the same terms and conditions as those attached to the Executive's office on the date hereof, as the same may be improved from time to time during the term of this Agreement.

(d) During the term of this Agreement, the Executive shall be entitled to reimbursement, upon proper accounting, of all reasonable expenses and disbursements incurred by the Executive in the course of the Executive's duties.

6. **Employment At Will.** Employment hereunder shall be at all times "at will". The Company may discharge the Executive and terminate this Agreement at any time and for any reason, and the Executive may terminate the Executive's employment with the Company for any reason. If the Executive terminates the Executive's employment with the Company, the Executive shall provide the Company with notice of such termination pursuant to section 12 herein.

7. **Confidential and Proprietary Information; Company Property.** For the purpose of this section, Confidential Information shall mean all information and intellectual property owned by and proprietary to the Company, including but not limited to marketing programs such as Homebuyers Marketing and Marketing Portal, loan applications, loan files, loan file documents, accounts, customer or client information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, trade secrets, manuals, business methodology and processes, and cost and pricing policies. All Confidential Information disclosed or provided to the Executive by the Company, or developed or created by the Executive during the term of the Executive's employment with the Company, is, shall become, and shall at all times remain, the sole and exclusive property of the Company. The Executive agrees not to disclose the Confidential Information to any other party, except to the extent that such disclosure is reasonably necessary in order for the Executive to perform the Executive's responsibilities as an executive of the Company. The Executive also agrees that the Executive will not use the Confidential Information for any purpose other than to fulfill the Executive's responsibilities as an executive of the Company.

The Executive acknowledges, understands, and agrees that the Confidential Information is of substantial value to the Company and that, in the event of the use or disclosure of such Confidential Information in breach of this Agreement, the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate. Therefore, without prejudice to the rights and remedies otherwise available to the Company, and in addition to such rights and remedies, the Company shall be entitled to equitable relief by way of injunction if the Executive breaches or threatens to breach any of the provisions of this Agreement relating to the Executive's use or disclosure of any of the Confidential Information.

The Executive further acknowledges that the Company may provide the Executive with access to or use of equipment or other property owned or leased by the Company ("Company Property"). The Executive agrees to abide by all agreements and policies relating to the use of Company Property, as may be in effect or modified from time to time at the sole discretion of the Company. The Executive further agrees to promptly return in good working condition all Company Property in the Executive's possession upon termination of the Executive's employment with the Company for any reason, and shall be liable in damages, including but not limited to replacement cost, for any financial loss to the Company if Company Property is not returned in such manner.

The Executive agrees that this section shall survive the termination of this Agreement, and that all of the obligations of the Executive set forth in this section shall remain in full force and

3

effect after this Agreement is terminated. The Executive further agrees that, upon termination of this Agreement, the Executive will return to the General Counsel all Confidential Information (including all copies of Confidential Information) which is then in, or which later comes into, the Executive's possession or custody.

       8.  **Non-Solicitation; Non-Disparagement.** The Executive agrees that during the term of the Executive's employment with the Company, and for a period of one (1) year after termination of the Executive's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Executive shall not, directly or indirectly: (a) attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers and/or potential customers of the Company which have been derived from leads and/or lists developed and provided to the Executive by the Company; (b) influence or advise any other person to employ or solicit for employment anyone who is an employee of the Company; (c) influence or advise any person who is an employee of the Company, to leave the employment of the Company; and (d) employ any person who is an employee of the Company. The Executive agrees that during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers or business referral sources, including but not limited to realtors, builders and affinity organizations, joint venture partners, borrowers and loan applicants, obtained by, or whose contact information is stored in the records of, the Company. The Executive expressly agrees that this section is fair and reasonable and that Executive is being adequately compensated for agreeing to the terms of this section.

The Company and the Executive agree that neither will disparage the other, and that their representatives will not disparage either party hereto.

The Executive's obligations as set forth in this section shall survive the termination of this Agreement.

       9.  **Non-Compete.** The Executive agrees that, during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, engage, participate, make any financial investment in, or become employed by or render advisory or other services to or for any person, firm corporation or other business enterprise which is, or is reasonably likely to become engaged, directly or indirectly, in competition with the Company. The Executive expressly agrees that this section is fair and reasonable and that the Executive is being adequately compensated for agreeing to the terms of this section.

10. Entire Agreement; Amendment.

(a) This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes any and all other agreements between the parties, their predecessors and affiliates.

(b) Any amendment of this Agreement shall not be binding unless in writing and signed by both (i) the Company's General Counsel and (ii) the Executive.

11. Enforceability. If any provision of this Agreement is determined to be invalid or unenforceable, the remaining terms and conditions of this Agreement shall be unaffected and shall remain in full force and effect, and any such determination of invalidity or enforceability shall not affect the validity or enforceability of any other provision of this Agreement.

12. Notices. All notices which may be necessary or proper for either the Company or the Executive to give to the other shall be in writing and shall be sent by hand delivery, registered or certified mail, return receipt requested or overnight courier, if to the Executive at 43 Cottonwood Lane, Westbury, NY 11590, and, if to the Company, to it at its principal executive offices at 538 Broadhollow Road, Melville, NY 11747, Attention: Human Resources Director, with a copy to the Company's General Counsel, and shall be deemed given when sent. Either party may by like notice to the other party change the address at which it is to receive notices hereunder.

13. Counterparts. This Agreement can be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.

14. Facsimile Signatures. A facsimile copy of either party's signature shall be deemed as legally binding as the original signature.

15. Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND BE ENFORCEABLE IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

American Home Mortgage Corp.

By: *[signature: Alan Horn]*
Name: Alan B. Horn
Title: Executive Vice President and General Counsel

*[signature]*
The Executive

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
Social Security Number