**EXHIBIT "1"**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x  Chapter 11

In re:

                                              Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE
HOLDINGS, INC., a Delaware corporation, et al.,    :   Jointly Administered

                Debtors.                                    Re: Docket No. 6824

### STIPULATION OF FACTS

Debtors and Debtors-in-Possession ("Debtors"), and Calyon New York Branch, as Administrative Agent Pursuant to Repurchase Agreement ("Calyon") hereby stipulate and agree to the following facts:

### I.    Background

1.    Calyon and Debtors American Home Mortgage Corp. ("AHM"), AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("Servicing"),[1] American Home Mortgage Acceptance, Inc. ("Acceptance"), and American Home Mortgage Investment Corp. ("Investment"; together with AHM, Servicing and Acceptance, the "Counter-Party Debtors") are parties to that certain Repurchase Agreement dated November 21, 2006 (the "Repurchase Agreement").[2] A true and correct copy of the Repurchase Agreement is attached as Exhibit A and is incorporated herein by reference.

---

[1] Debtor AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), changed its name from American Home Servicing, Inc. to AHM SV, Inc., on April 14, 2008 as a result of the sale of the servicing business.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Repurchase Agreement.

2. Pursuant to the Repurchase Agreement, Calyon was requested to purchase and did purchase, from time to time, certain mortgage loans (the "Mortgage Loans").

3. Deutsche Bank National Trust Company ("DBNTC") was the custodian under the Repurchase Agreement.

4. DBNTC had possession of some documents relating to the Mortgage Loans.

5. As the custodian under the Repurchase Agreement, DBNTC transmitted daily "Basic Status Reports" to Calyon; provided, however, that Calyon does not agree that the information contained in the Basic Status Reports was accurate and that such information shall not be deemed admitted based on this Stipulation of Facts.

6. The Basic Status Report dated August 1, 2007 attached hereto and incorporated herein by reference as Exhibit B was transmitted to and received by Calyon; provided, however, that Calyon does not agree that the information contained in the Basic Status Report dated August 1, 2007 is accurate and that such information shall not be deemed admitted based on this Stipulation of Facts.

7. As the custodian under the Repurchase Agreement, DBNTC transmitted "Collateral Agent Daily Reports" to Calyon; provided, however, that Calyon does not agree that the information contained in the Collateral Agent Daily Reports was accurate and that such information shall not be deemed admitted based on this Stipulation of Facts.

8. The Collateral Agent Daily Report dated August 1, 2007 attached hereto and incorporated herein by reference as Exhibit C was transmitted to and received by Calyon; provided, however, that Calyon does not agree that the information contained in the Collateral

Agent Daily Report dated August 1, 2007 is accurate and that such information shall not be deemed admitted based on this Stipulation of Facts.

9.      As the custodian under the Repurchase Agreement, DBNTC transmitted "Borrowing Base Valuation Reports" to Calyon; provided, however, that Calyon does not agree that the information contained in the Borrowing Base Valuation Reports was accurate and that such information shall not be deemed admitted based on this Stipulation of Facts.

10.     The Borrowing Base Valuation Report dated August 1, 2007 attached hereto and incorporated hereby reference as <u>Exhibit D</u> was transmitted to and received by Calyon; provided, however, that Calyon does not agree that the information contained in the Borrowing Base Valuation Report dated August 1, 2007 is accurate and that such information shall not be deemed admitted based on this Stipulation of Facts.

11.     Pursuant to the Repurchase Agreement, Servicing was initially appointed Servicer of all of the Mortgage Loans. As Servicer, Servicing was responsible for administering the Mortgage Loans, including, without limitation, collecting monthly mortgage payments of principal and interest, monitoring past-due accounts, and reporting on defaulted loans.

12.     As of August 1, 2007, the Counter-Party Debtors had defaulted on certain obligations under the Repurchase Agreement.

13.     On August 1, 2007, Calyon delivered to the Counter-Party Debtors a Notice of Event of Default of Sellers ("Notice of Sellers' Default"). A true and correct copy of the Notice of Sellers' Default is attached as <u>Exhibit E</u> and is incorporated herein by reference, provided, however, that the Debtors do not agree to all of the assertions in the Notice of Sellers'

3

Default and none of the assertions contained in the Notice of Sellers' Default are deemed admitted.

14. The Notice of Sellers' Default served as notice to the Counter-Party Debtors of defaults under the Repurchase Agreement and that the Termination Date under the Repurchase Agreement had occurred and accelerated all amounts due under the Repurchase Agreement.

15. On August 1, 2007, Calyon accelerated the Repurchase Agreement.

16. As a result of the acceleration of the Repurchase Agreement, as of August 1, 2007, the Counter-Party Debtors were obligated to pay Calyon the Repurchase Price to repurchase the Mortgage Loans.

17. Prior to the Petition Date (as defined herein) the Debtors did not respond to the Notice of Sellers' Default or repurchase the Mortgage Loans.

18. On August 1, 2007, Calyon delivered to Servicing the Notice of Event of Default to Servicer (the "Notice of Servicer's Default"). A true and correct copy of the Notice of Servicer's Default is attached as <u>Exhibit F</u> and is incorporated herein by reference, provided, however, that the Debtors do not agree to all of the assertions in the Notice of Servicer's Default and none of the assertions contained in the Notice of Sellers' Default are deemed admitted.

19. Prior to the Petition Date, the Debtors did not respond to the Notice of Servicer's Default.

20. A notice to Servicing from Calyon dated August 6, 2007, stated that Calyon designated Servicing as the interim servicer for the purchaser option adjustable rate Mortgage Loans (the "Purchaser Option Loans") for the one week period ending on August 15,

2007. A true and correct copy of the letter is attached hereto and is incorporated by reference as Exhibit G.

21. A notice to Servicing from Calyon dated August 13, 2007, stated that Calyon designated Servicing as the interim servicer for the Purchaser Option Loans for the one week period ending on August 22, 2007. A true and correct copy of the letter is attached hereto and is incorporated herein by reference as Exhibit H.

22. A notice to Servicing from Calyon dated August 20, 2007, stated that Calyon designated Servicing as the interim servicer for the Purchaser Option Loans for the one week period ending on August 29, 2007. A true and correct copy of the letter is attached hereto and is incorporated herein by reference as Exhibit I.

23. A notice to Servicing from Calyon dated August 28, 2007, stated that Calyon designated Cenlar as the servicer for the Purchaser Option Loans and demanded that Servicing take all actions necessary to transfer the servicing of the Purchase Option Loans to Chase.

24. On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code.

25. On August 28, 2007, Calyon commenced Adversary Proceeding No. 07-51704 against the Counter-Party Debtors (the "Adversary Proceeding").

26. On September 9, 2007, the Court entered the Stipulation and Order between Calyon and the Counter-Party Defendants (the "September Stipulation"). A true and correct copy of the September Stipulation is attached as Exhibit J and is incorporated herein by reference.

27. In early November 2007, the Court conducted the Phase I Trial in the Adversary Proceeding.

28. On January 10, 2008, Calyon timely filed Proof of Claim Number 8044 against Servicing (the "Servicing Claim"). A true and correct copy of the Servicing Claim is attached as <u>Exhibit K</u> and is incorporated herein by reference, provided, however, that the Debtors do not agree to all of the assertions in the Servicing Claim and none of the assertions contained in the Servicing Claim are deemed admitted.

29. On January 10, 2008, Calyon timely filed Proof of Claim Number 8045 against Acceptance (the "Acceptance Claim"). A true and correct copy of the Acceptance Claim is attached as <u>Exhibit L</u> and is incorporated herein by reference, provided, however, that the Debtors do not agree to all of the assertions in the Acceptance Claim and none of the assertions contained in the Acceptance Claim are deemed admitted.

30. On January 10, 2008, Calyon timely filed Proof of Claim Number 8046 against AHM (the "AHM Claim"). A true and correct copy of the AHM Claim is attached as <u>Exhibit M</u> and is incorporated herein by reference, provided, however, that the Debtors do not agree to all of the assertions in the AHM Claim and none of the assertions contained in the AHM Claim are deemed admitted.

31. On January 10, 2008, Calyon timely filed Proof of Claim Number 8047 against Investment (the "Investment Claim"; together with the Servicing Claim, the Acceptance Claim and the AHM Claim, the "Repurchase Agreement Claims"). A true and correct copy of the Investment Claim is attached as <u>Exhibit N</u> and is incorporated herein by reference, provided, however, that the Debtors do not agree to all of the assertions in the Investment Claim and none of the assertions contained in the Investment Claim are deemed admitted

32. On January 4, 2008, the Court entered the Opinion regarding the Phase I Trial.

33. On January 15, 2008, the Court entered the Order on Phase I Trial.

34. On January 25, 2008, Calyon filed a Motion to Reconsider the Order on Phase I Trial (the "Reconsideration Motion").

35. On January 25, 2008, the Court entered the Stipulation and Order Regarding Mortgage Funds and Mortgage Files (the "January Stipulation"). A true and correct copy of the January Stipulation is attached as Exhibit O and is incorporated herein by reference.

36. After August 1, 2007, none of the Debtors provided any of the funds, collections or payments of any type received by Servicing with respect to the Mortgage Loans (the "Proceeds") to Calyon prior to the January Stipulation.

37. A chart of all of the Proceeds provided to Calyon from January 29, 2008 through August 15, 2008 is attached as Exhibit P and is incorporated herein by reference.

38. On February 4, 2008, Calyon filed an Amended Complaint in the Adversary Proceeding.

39. On March 10, 2008, the Reconsideration Motion was denied by the Court.

40. On August 5, 2008, the Court entered the Order (I) Approving the Stipulation Between the Debtors and Calyon New York Branch, as Administrative Agent, and (II) Authorizing the Transfer of Service Mortgage Servicing Rights Relating Thereto (the "August Order").

## II. August 1, 2007

41. As of August 1, 2007, the Counter-Party Debtors were obligated to repurchase the Mortgage Loans for a Repurchase Price of $1,143,840,204.36. This amount does not include Calyon's claims asserted in the Repurchase Agreement Claims for all costs and expenses, including attorneys' fees, other professional services and disbursements, as provided in the Repurchase Agreement, which Calyon continues to assert, and nothing in this Stipulation of Facts limits or prohibits Calyon's ability to assert such claims or the Debtors' ability to contest such claims.

42. As of August 1, 2007, Calyon was not receiving, and the Debtors were not sending to Calyon, the Proceeds until after entry of the January Stipulation.

43. As of August 1, 2007, Calyon was not receiving, and the Debtors were not sending to Calyon, information concerning the Proceeds Servicing received regarding the Mortgage Loans until after entry of January Stipulation.

44. As of August 1, 2007, Calyon did not have complete and accurate copies of the mortgage files related to the Mortgage Loans. However, nothing herein shall be deemed to be an admission by the Debtors that this fact constitutes a breach of any obligation of the Debtors.

45. As of August 1, 2007, MERS reflected the Counter-Party Debtors as the owners of the Mortgage Loans on its electronic mortgage recording system.

46. As of August 1, 2007, the Counter-Party Debtors asserted that they were the legal owners of the Mortgage Loans, the Proceeds and the MSRs.

### III. September 30, 2007

47. The Repurchase Price under the Repurchase Agreement as of on or about the Petition Date of $1,143,840,204.36, remained outstanding in its entirety as of September 30, 2007. This amount does not include Calyon's claims asserted in the Repurchase Agreement Claims for all costs and expenses, including attorneys' fees, other professional services and disbursements, as provided in the Repurchase Agreement, which Calyon continues to assert, and nothing in this Stipulation of Facts limits or prohibits Calyon's ability to assert such claims or the Debtors' ability to contest such claims.

48. As of September 30, 2007, Calyon was not receiving, and the Debtors were not sending to Calyon, the Proceeds until after entry of the January Stipulaton.

49. As of September 30, 2007, Calyon was not receiving, and the Debtors were not sending to Calyon, information concerning the Proceeds Servicing received regarding the Mortgage Loans.

50. As of September 30, 2007, Calyon did not have complete and accurate copies of the mortgage files related to the Mortgage Loans. However, nothing herein shall be deemed to be an admission by the Debtors that this fact constitutes a breach of any obligation of the Debtors.

51. As of September 30, 2007, MERS reflected the Counter-Party Debtors as the owners of the Mortgage Loans on its electronic mortgage recording system.

52. As of September 30, 2007, the Counter-Party Debtors asserted that they were the legal owners of the Mortgage Loans, the Proceeds and the MSRs.

### IV. January 30, 2008

53. The Repurchase Price under the Repurchase Agreement as of on or about the Petition Date of $1,143,840,204.36, had been reduced by payments of $72,906,907.82 made to Calyon as of January 30, 2008, leaving an outstanding amount of $1,070,933,296.54 as of on or about January 30, 2008. These amounts do not include Calyon's claims asserted in the Repurchase Agreement Claims for all costs and expenses, including attorneys' fees, other professional services and disbursements, as provided in the Repurchase Agreement, which Calyon continues to assert, and nothing in this Stipulation of Facts limits or prohibits Calyon's ability to assert such claims or the Debtors' ability to contest such claims.

54. As of January 30, 2008, Calyon did not have complete and accurate copies of the mortgage files related to the Mortgage Loans. However, nothing herein shall be deemed to be an admission by the Debtors that this fact constitutes a breach of any obligation of the Debtors.

55. As of January 30, 2008, the Counter-Party Debtors asserted that they were the legal owners of the MSRs.

56. As of January 30, 2008, the Court's Order on the Phase I Trial holding that the Purchasers own the Mortgage Loans was not a final order and was subject to appeal.

57. The Debtors did not appeal, or file a post-order motion seeking to modify, the Court's Order on the Phase I Trial.

### V. August 15, 2008

58. The Repurchase Price under the Repurchase Agreement as of on or about the Petition Date of $1,143,840,204.36, had been reduced by payments of $149,423,974.04 made

to Calyon as of August 15, 2008, leaving an outstanding amount of $994,416,230.32 as of on or about August 15, 2008. These amounts do not include Calyon's claims asserted in the Repurchase Agreement Claims for all costs and expenses, including attorneys' fees, other professional services and disbursements, as provided in the Repurchase Agreement, which Calyon continues to assert, and nothing in this Stipulation of Facts limits or prohibits Calyon's ability to assert such claims or the Debtors' ability to contest such claims.

## VI. Authenticity of Documents Admitted

59. The authenticity of all documents produced by Calyon and received by the Debtors during discovery is admitted by Calyon. The authenticity of all documents produced by the Debtors and received by Calyon during discovery is admitted by the Debtors. However, the admission of authenticity shall not be construed as a factual admission regarding the contents of any such document.

60. As of August 15, 2008, no party in interest filed a Notice of Appeal with respect to the August Order and the August Order became a final, non-appealable order.

| | |
|---|---|
| WOMBLE CARLYLE SANDRIDGE & RICE, PLLC | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| ___/s/ Michael G. Busenkell___<br>Michael G. Busenkell (DE No. 3933)<br>222 Delaware Avenue, Suite 1501<br>Wilmington, DE 19801<br>Telephone: 302.252.4324<br>Facsimile: 302.252.4330<br><br>-and-<br><br>Benjamin C. Ackerly<br>Jason W. Harbour (DE No. 4176)<br>HUNTON & WILLIAMS LLP<br>Riverfront Plaza, East Tower<br>951 E. Byrd Street<br>Richmond, Virginia 23219-4074<br>Telephone: (804) 788-8200<br>Facsimile: (804) 788-8218<br><br>*Counsel to Calyon New York Branch* | /s/ Michele Sherretta Budicak<br>John T. Dorsey (No. 2988)<br>Curtis J. Crowther (No. 3238)<br>Michele Sherretta Budicak (No. 4651)<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>*Counsel for Debtors and Debtors-in-Possession* |