**Execution Version**

# EXHIBIT E

## FORM OF ESCROW AGREEMENT

**EXHIBIT E**

## ESCROW AGREEMENT

This ESCROW AGREEMENT (this "Escrow Agreement"), dated [______], 2009, is made by and among AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, as a debtor and debtor-in-possession ("Parent"); The Bancorp, Inc., a Delaware corporation ("Purchaser"); and WILMINGTON TRUST COMPANY, a Delaware banking corporation, as the escrow agent (together with any successor in such capacity, "Escrow Agent").

WHEREAS, Purchaser, Parent, and American Home Bank, a federal savings association organized under the laws of the United States of America (the "Bank"), are parties to that certain Stock Purchase Agreement, dated as of April 1, 2009 (the "Stock Purchase Agreement"), a copy of which is attached hereto as Exhibit A, pursuant to which Parent is selling all of the issued and outstanding shares of capital stock in the Bank to Purchaser;

WHEREAS, pursuant to Section 2.2 of the Stock Purchase Agreement, at the Closing, Purchaser is required to deposit with Escrow Agent the sum of $900,000 in immediately available funds (the "Deposit"), to the escrow account set forth in Exhibit B hereto (the "Escrow Account");

WHEREAS, the Deposit is to be held and acted upon by Escrow Agent in accordance with the provisions of this Escrow Agreement,

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed among the parties hereto as follows:

1. Definitions. Each capitalized term that is used and not otherwise defined in this Escrow Agreement has the meaning ascribed thereto in the Stock Purchase Agreement. As used in this Escrow Agreement:

(a) "Business Day" means any day, other than a Saturday, Sunday, or legal holiday on which banks in the City of Wilmington, Delaware, are permitted to be closed, upon which Escrow Agent conducts business.

(b) "Escrow Funds" means the amount of the Deposit and all Escrow Income, in each case held by Escrow Agent at such time.

(c) "Escrow Income" means all interest or other income directly or indirectly earned and paid to Escrow Agent on the Deposit and held by Escrow Agent, together with all interest and other income accrued but unpaid on such funds as of such date and payable at a later time.

(d) "IRS" means the Internal Revenue Service.

(e) "IRS Claim" means the claim asserted by the IRS in the United States Bankruptcy Court for the District of Delaware for $852,227, plus interest and penalties, with

respect to a tax liability of the American Home Mortgage consolidated group, which could not actually be paid due to Parent and its affiliates having filed petitions for relief under Chapter 11 of the Bankruptcy Code on August 6, 2007.

2. Appointment of Escrow Agent. Parent and Purchaser hereby designate and appoint Escrow Agent as their joint Escrow Agent, subject to the terms of this Escrow Agreement. Escrow Agent agrees to (i) act as Escrow Agent unless and until a successor escrow agent is appointed pursuant to Section 7(g) hereof, (ii) upon receipt of Escrow Funds, accept, deposit and hold all portions of the Escrow Funds in a separate interest-bearing account maintained by Escrow Agent, and (iii) distribute and release such Escrow Funds in accordance with the terms and conditions of this Escrow Agreement.

3. Escrow Fund. In accordance with the terms of the Stock Purchase Agreement, on the date hereof, Purchaser shall wire transfer immediately available funds in the amount of $900,000 to the Escrow Account to be held and disbursed by Escrow Agent in accordance with the terms and conditions of this Escrow Agreement.

4. Disbursement of Escrow Funds.

(a) Disbursement upon Receipt of IRS Confirmation. Upon the receipt of a written confirmation from the IRS stating that the IRS will not seek to enforce the IRS Claim against the Bank, Parent and Purchaser shall jointly execute and deliver to Escrow Agent written instructions directing Escrow Agent to distribute the Escrow Funds to Parent by wire transfer of immediately available funds to an account specified by Parent.

(b) Disbursement upon Claim Settlement by Parent. Upon the filing of an order of a court having jurisdiction in accordance with the provisions of Section 10(b) of this Escrow Agreement pursuant to which the IRS Claim has been satisfied or settled by Parent, Parent and Purchaser shall jointly execute and deliver to Escrow Agent written instructions directing Escrow Agent to distribute the Escrow Funds to Parent by wire transfer of immediately available funds to an account specified by Parent.

(c) Disbursement upon Claim Settlement by the Bank. Upon the filing of an order of a court having jurisdiction in accordance with the provisions of Section 10(b) of this Escrow Agreement pursuant to which the IRS Claim has been satisfied or settled by the Bank, Parent and Purchaser shall jointly execute and deliver to Escrow Agent written instructions directing Escrow Agent to distribute the Escrow Funds to Purchaser by wire transfer of immediately available funds to an account specified by Purchaser. In the event that the Bank settles or satisfies the IRS Claim for an amount (the "Settlement Amount") that is less than the amount of the Escrow Funds, such written instructions shall direct the Escrow Agent to distribute (i) the Settlement Amount to Purchaser and (ii) the remaining Escrow Funds to Parent.

(d) Other Disbursement Instructions. Except as otherwise provided in Section 4(a) or Section 4(b), Escrow Agent shall hold the Escrow Funds and shall not deliver or disburse the Escrow Funds, other than:

(i) pursuant to written instructions jointly executed by Purchaser and Parent that are delivered to Escrow Agent;

(ii) pursuant to a final order, from which no further appeal may be taken, of a court having jurisdiction in accordance with the provisions of Section 10(b) of this Escrow Agreement;

(iii) by delivering the Escrow Funds into the Bankruptcy Court pursuant to the provisions of Section 5 of this Escrow Agreement; or

(iv) by delivering the Escrow Funds to a successor escrow agent pursuant to the provisions of Section 7(g) of this Escrow Agreement.

(d) Reliance on Notice. Upon receipt of written instructions given to Escrow Agent pursuant to Sections 4(a), 4(b) or 4(c) of this Escrow Agreement, Escrow Agent shall deliver the Escrow Funds in accordance with such instructions, and Escrow Agent shall not be subject to any liability to any party for doing so, except for Escrow Agent's own willful misconduct or gross negligence. Purchaser and Parent each agree not to assert any claim against Escrow Agent for making a disbursement or payment in accordance with this Section 4, except to the extent such claim arises out of Escrow Agent's willful misconduct or gross negligence.

5. Dispute Procedures. If any disagreement should arise among any one or more of the parties hereto or any other party with respect to the Escrow Funds, interest thereon or this Agreement (and Escrow Agent is notified in writing of such disagreement if it so requests), or if Escrow Agent in good faith is in doubt as to what action should be taken hereunder, Escrow Agent has the absolute right (but not the obligation) at its election to do either or both of the following:

(i) withhold or stop all further performance under this Agreement (save and except the holding, investing and reinvesting of the Escrow Funds and interest thereon in accordance with the terms hereof, unless such disagreement relates to the investment of Escrow Funds) and all notices or instructions received in connection herewith until Escrow Agent is satisfied that such disagreement or such doubt has been resolved; or

(ii) file a suit in interpleader and obtain an order from a court of appropriate jurisdiction requiring all persons involved to litigate in such court their respective claims arising out of or in connection with the Escrow Funds and interest thereon (the right of Escrow Agent to institute such bill of interpleader, however, does not modify the manner in which Escrow Agent is entitled to make disbursements of the Escrow Funds and interest thereon as set forth in this Agreement, other than to tender the Escrow Funds and interest thereon into the registry of such court).

6. Investment of Escrow Funds. Upon Escrow Agent's receipt of the tax information required by Section 10(a) hereof, Escrow Agent shall invest and reinvest all of the Escrow Funds in the Service class shares of the U.S. Government Portfolio of the Wilmington family of mutual funds or any other mutual funds for which Escrow Agent or any affiliate of

Escrow Agent may serve as investment advisor or other service provider. Each of Purchaser and Parent acknowledge that shares in this mutual fund are not obligations of Escrow Agent, are not deposits, and are not insured by the FDIC. Escrow Agent or its affiliates are compensated by these mutual funds for services rendered in its capacity as investment advisor, custodian, and/or transfer agent. Escrow Agent or its affiliates are also compensated by these mutual funds for providing shareholder services, and such compensation is both described in detail in the prospectus for the fund and is in addition to the compensation paid to Escrow Agent hereunder. All amounts earned on the Escrow Funds will be added to and become part of the Escrow Funds which may be disbursed pursuant to the terms hereof. Notwithstanding anything to the contrary in this Escrow Agreement, each of Purchaser and Parent acknowledge that the investments referenced in this Section 6 comply with Section 345(b) of the United States Bankruptcy Code and the applicable local rules of the United States Bankruptcy Court for the District of Delaware.

7. Escrow Agent.

(a) General. Escrow Agent shall act in a fiduciary capacity as escrow agent and hold and disburse the Escrow Funds pursuant to the terms and conditions of this Escrow Agreement. Escrow Agent's duties under this Escrow Agreement shall cease upon delivery and receipt of the Escrow Funds in accordance with the terms and conditions of this Escrow Agreement.

(b) Liquidation of Investments. When necessary to provide funds in order to make any payments required by this Escrow Agreement, Escrow Agent shall liquidate any investment held by it as Escrow Agent in the Escrow Account. Escrow Agent shall have no liability for lost or unaccrued interest upon the liquidation of any such investments.

(c) Limited Duties. Escrow Agent undertakes to perform only such duties as are expressly set forth in this Escrow Agreement. Escrow Agent shall incur no liability whatsoever to Parent or Purchaser, except for Escrow Agent's own willful misconduct or gross negligence in its capacity as Escrow Agent hereunder.

(d) Reliance on Notices. Escrow Agent may rely and shall be protected in acting or refraining from acting upon any written notice, instruction, or request furnished to it hereunder and believed by Escrow Agent to be genuine and to have been signed or presented by the proper party or parties. Escrow Agent may conclusively presume that each of the undersigned representatives of Parent and Purchaser have full power and authority to instruct Escrow Agent on behalf of that party.

(e) Limited Responsibilities. Escrow Agent's sole responsibility upon receipt of any written instructions or notice directing delivery of the Escrow Funds to Parent or Purchaser pursuant to the terms of this Escrow Agreement is to comply with the provisions of this Escrow Agreement.

(f) Action in Good Faith. Escrow Agent shall not be liable for any action taken by Escrow Agent in good faith and believed by Escrow Agent to be authorized or within the rights or powers conferred upon Escrow Agent by this Escrow Agreement, and may consult with counsel of Escrow Agent's own choice and shall have full and complete authorization and

protection and will be deemed not to have acted with willful misconduct or gross negligence for any action taken or suffered by Escrow Agent hereunder in good faith and in accordance with the opinion of such counsel.

(g) Resignation. Escrow Agent may resign and be discharged from Escrow Agent's duties or obligations hereunder by giving notice of such resignation to Parent and Purchaser, specifying a date upon which such resignation shall take effect, whereupon a successor escrow agent, which shall be a bank or trust company, shall be appointed by Purchaser with Parent's prior written consent, such consent not to be unreasonably withheld; provided, however, that Escrow Agent must continue to serve and act as Escrow Agent hereunder until such time as a successor escrow agent has been appointed and is acting in such capacity pursuant to this Section 7(g); provided further, however, that if no successor escrow agent is appointed and acting in such capacity pursuant to this Section 7(g) within thirty (30) days of the date notice of Escrow Agent's resignation is given to Parent and Purchaser, Escrow Agent will be discharged from Escrow Agent's duties or obligations hereunder upon delivering the Escrow Funds into the Bankruptcy Court. Escrow Agent shall be entitled to deliver the Escrow Funds to any successor escrow agent so appointed upon said successor escrow agent having executed and agreeing to be bound by this Escrow Agreement.

(h) Indemnification. Parent and Purchaser hereby jointly and severally agree to indemnify Escrow Agent for, and to hold Escrow Agent harmless against, any loss, liability, damage, or expense, including the cost and expense (including, but not limited to, reasonable attorneys' fees) of defending itself against any claim or liability (collectively, "Loss") incurred by Escrow Agent arising out of or in connection with entering into or performing Escrow Agent's obligations under this Escrow Agreement, other than a Loss arising out of, or in connection with, Escrow Agent's willful misconduct or gross negligence. To the extent permitted by law, Escrow Agent shall have a first lien against undisbursed Escrow Funds to secure the obligations of the parties hereunder. The terms of this Section 7(h) shall survive termination of this Escrow Agreement.

(i) Compensation of Escrow Agent. Escrow Agent will be entitled to a reasonable fee for services rendered and for reimbursement of extraordinary expenses reasonably incurred in the performance of its duties. Such fee and expenses will be paid one half by Purchaser and one half by Parent. The fee payable to Escrow Agent hereunder shall be $3,000. In the event Escrow Agent renders any extraordinary services in connection with the Escrow Funds at the request of the parties, Escrow Agent shall be entitled to additional compensation under this Section 7(i), as reasonably approved by the parties. To the extent permitted by law, Escrow Agent shall have a first lien against undisbursed Escrow Funds to secure the obligations of the parties hereunder. The terms of this Section 7(i) shall survive the termination of this Escrow Agreement.

8. Escrow Agent Not Affected by Other Agreements. This Escrow Agreement expressly sets forth all the duties of Escrow Agent with respect to any and all matters pertinent hereto. No implied duties or obligations shall be read into this Escrow Agreement against Escrow Agent. Escrow Agent, in its capacity as such, shall not be bound by the provisions of any agreement among the parties hereto other than this Escrow Agreement and shall have no duty to inquire into, or to take into account Escrow Agent's knowledge of, the

terms and conditions of any agreement made or entered into in connection with this Escrow Agreement, including, but not limited to, the Stock Purchase Agreement.

9. Notices. All notices, consents, and other communications under this Escrow Agreement shall be in writing and shall be deemed to have been duly given when received by each party at the following addresses, unless another address is specified in writing to the other parties:

(a) If to Purchaser:

The Bancorp, Inc.
409 Silverside Road
Wilmington, DE 19809
Facsimile: (302) 791-5609
Attention: Martin F. Egan, Chief Financial Officer and Secretary

with copies to (which copies shall not constitute notice):

WolfBlock LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103
Facsimile: (215) 405-3816
Attention: Jason M. Shargel, Esq.

and

Hunton & Williams, LLP
1445 Ross Avenue Suite 3700
Dallas, Texas 75202-2799
Facsimile: (214) 468-3599
Attention: Peter G. Weinstock, Esq.

(b) If to Parent:

American Home Mortgage Holdings, Inc.
c/o American Home Mortgage Investment Corp.
538 Broadhollow Road
Melville, New York 11747
Attn: Mr. Kevin Nystrom
Facsimile No.: (516) 949-3929

with copies (that will not constitute notice) to:

Kroll Zolfo Cooper
101 Eisenhower Parkway
Roseland, New Jersey 07068
Facsimile: (973) 618-9430
Attention: Elizabeth S. Kardos, Esq.

and

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Facsimile: (212) 504-6666
Attention Louis J. Bevilacqua, Esq.

and

Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Facsimile: (302) 571-1253
Attention: James L. Patton, Jr., Esq.

and

Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022
Facsimile: (212) 478-7400
Attention: Mark S. Indelicato, Esq.

(c) If to Escrow Agent:

Wilmington Trust Company
1100 North Market Street
Rodney Square North
Mail Drop Code 1625
Wilmington, Delaware 19890-1605
Attention: David B. Young

10. Miscellaneous.

(a) Tax Treatment of Escrow Funds. Escrow Agent will not have any interest in the Deposit or the Escrow Funds but is serving as escrow holder only and has only possession

thereof. Parent and Purchaser agree that, for purposes of federal and other taxes based on income, Parent will be treated as the owner of the Escrow Funds until the Escrow Funds are disbursed in accordance with this Escrow Agreement. Upon execution of this Escrow Agreement, Parent shall provide Escrow Agent with its taxpayer identification number and the appropriate forms for or with respect to the reporting of such income for tax purposes.

(b) Jurisdiction. Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Escrow Agreement shall be brought against any of the parties only in the United States Bankruptcy Court for the District of Delaware or any other court of competent jurisdiction located in the State of Delaware, and each of the parties hereby consents to the exclusive jurisdiction of such court(s) (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.

(c) Captions. The captions in this Escrow Agreement are for convenience of reference only and shall not be given any effect in the interpretation of this Escrow Agreement.

(d) No Waiver. The failure of a party to insist upon strict adherence to any term of this Escrow Agreement on any occasion shall not be considered a waiver or deprive that party of the right thereafter to insist upon strict adherence to that term or any other term of this Escrow Agreement. Any waiver must be in writing and signed by the party against whom it is to be charged.

(e) Exclusive Agreement; Amendment; Assignment. This Escrow Agreement supersedes all prior agreements among the parties hereto with respect to its subject matter (except for the Stock Purchase Agreement as to Purchaser and Parent), is intended as a complete and exclusive statement of the terms of the Escrow Agreement among the parties with respect thereto, and shall not be amended, waived, or otherwise modified except by a written agreement that has been executed by all of the parties hereto. No party may assign any rights or delegate any of its duties under this Escrow Agreement without the consent of the other parties to this Escrow Agreement. This Escrow Agreement shall be binding upon and inure to the benefit of the successors, assigns, and legal representatives of Purchaser and Parent and to any successor escrow agent appointed in accordance with Section 7(g) of this Escrow Agreement; provided, however, that no succession to, or assignment of, the interest of Purchaser or Parent will be binding upon Escrow Agent unless and until written evidence of such succession or assignment, in a form satisfactory to Escrow Agent, is provided to Escrow Agent.

(f) Counterparts. This Escrow Agreement may be executed in one or more counterparts and by facsimile signatures, each of which shall be deemed to be an original and all of which together shall constitute one and the same agreement. Any and all facsimile signatures on any counterparts of this Escrow Agreement or any document or instrument required to be delivered hereunder shall have the same force and effect as an original signature upon such counterpart of this Escrow Agreement or any document or instrument delivered hereunder.

(g) Governing Law. This Escrow Agreement and all amendments hereof and waivers and consents hereunder shall be governed by, and all disputes arising hereunder shall be resolved in accordance with, the internal law of the State of Delaware, without giving effect to any choice of law or conflict of law principals under the State of Delaware or any other

jurisdiction that would cause the application of the laws of any jurisdiction other than the State of Delaware.

(h) Waiver of Jury Trial. AS A SPECIFICALLY BARGAINED INDUCEMENT FOR EACH OF THE PARTIES TO ENTER INTO THIS ESCROW AGREEMENT (EACH PARTY HAVING HAD OPPORTUNITY TO CONSULT COUNSEL), EACH PARTY EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY LAWSUIT OR PROCEEDING RELATING TO OR ARISING IN ANY WAY FROM THIS ESCROW AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREIN.

(i) Anti-Terrorism/Anti-Money Laundering Laws.

(A) IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT - To help the United States government fight the funding of terrorism or money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens a new account. What this means for the parties to this Escrow Agreement: Escrow Agent will ask for your name, address, date of birth, and other information that will allow Escrow Agent to identify you (*e.g.*, your social security number or tax identification number). Escrow Agent may also ask to see your driver's license or other identifying documents (*e.g.*, passport, evidence of formation of corporation, limited liability company, limited partnership, etc., certificate of good standing).

(B) Each party to this Escrow Agreement hereby agrees to provide Escrow Agent, prior to the establishment of the Escrow Account, with the information identified above pertaining to it by completing the form attached as Exhibit C and returning it to Escrow Agent. Exhibit C includes one form for individuals and another form for entities.

*{Signature Page Follows}*

The parties hereto have executed this Escrow Agreement on the day and year first above written in the introductory paragraph.

PARENT:
AMERICAN HOME MORTGAGE HOLDINGS, INC.

By:______________________________
Name:
Title:

PURCHASER:
THE BANCORP, INC.

By:______________________________
Name:
Title:

ESCROW AGENT:
WILMINGTON TRUST COMPANY

By:______________________________
David B. Young
Assistant Vice President