Jennifer L. Luke
190-18 Crocheron Avenue
Flushing, NY 11358

May 28, 2009

In re:

|  |  |  |
|---|---|---|
| AMERICAN HOME MORTGAGE | ) | Chapter 11 |
| HOLDINGS, INC., Delaware Corporation, et al., | ) | Case No. 07-11047 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| AHMOB3b 4/15/2009 (merge2.txnum2) 4000013921 Epiq Use-40 | ) | Response Deadline: May 29, 2009 at 4:00pm(ET) |
| | ) | Hearing Date: June 5, 2009 at 10:00am (ET) |

I write in response to the Notice of Debtors' Thirty-Fifth Omnibus (Substantitve) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1, and respectfully submit this response for the Court's consideration in reference to Claim number 8640.

I am submitting documentation/information in support of the Claim as follows:

## Compensation Owed and Unpaid:

At the time of my termination, I had earned, unused vacation and sick time, for which I am entitled to be compensated in accordance with the salary level established by my employment agreement. Here is a summary of this unpaid compensation:

| | |
|---|---|
| Unused vacation time, 10 business days (2 weeks) | $4,000.00* |
| Unused sick time, 5 business days (1 week) | $2,000.00* |

*gross, less applicable local, State and Federal wages

## Statutory Claim for Damages:

American Home Mortgage failed to provide sixty (60) days advance notice to their employees as required under The Worker Adjustment and Retraining Notification Act (WARN) which protects workers, their families, and communities by requiring employers with 100 or more employees to provide notification 60 calendar days in advance of enterprise closings and mass layoffs.  WARN states that employees entitled to

Claim of Jennifer L. Luke – Claim Number. 8640
In re. American Home Mortgage Holdings – US Bankruptcy Court-State of Delaware
Case Number 07-11047

Page 1

notice under WARN include managers and supervisors, as well as hourly and salaried workers. WARN requires that notice also be given to employees' representatives, the local chief elected official, and the state dislocated worker unit. U.S. Code Collection, Title 29, Chapter 23, § 2102.

Under the Act, the employer is liable for damages (including back pay and benefits) for the period of violation up to a maximum of 60 days. 29 U.S.C. § 2104 (a)(1). The employer also can be assessed civil penalties of up to $500 a day for each day it fails to provide notice. The prevailing party may be awarded attorney's fees by the court.

As such, please see below breakdown of compensation due as a result of such failure to provide Notice:

| | |
|---|---|
| 8/6/2007-8/17/2007 | $4,000.00* |
| 8/20/2007-8/31/2007 | $4,000.00* |
| 9/3/2007-9/14/2007 | $4,000.00* |
| 9/17/2007-9/28/2007 | $4,000.00* |
| 10/1/2007-10/4/2007 | $ 400.00* |

*gross, less applicable local, State and Federal wages

## Employment Contract with American Home Mortgage Corp.:

A copy of the Employment Contract signed by me from 2007, commencing as of February 1, 2007, is submitted herewith. Under Paragraph 5, Compensation, sub-paragraph (a), confirms a salary of $96,000.00 per year. Under sub-paragraph (b), the contract states "The targeted amount of the Management Evaluation Bonus will be 20% of the Executive's Base Salary…". Premised upon the terms and performance and services rendered through August, 2007, I respectfully submit that the sum of $19,200.00 (gross, less applicable local, State and Federal wages) is due and owing for year to date bonus earned at the contract specified target of 20%.

## Calculations of Substantive Claims:

| | |
|---|---|
| Unused vacation time | $ 4,000.00 |
| Unused sick time | $ 2,000.00 |
| Compensation for Violation of W.A.R.N. Act | $16,400.00 |
| Contract year to date earned Bonus: | $19,200.00 |
| **Total Amount of Claims:** | **$41,600.00** |

In further support of this claim, I have attached hereto a complete copy of the initial claim signed by me on 1/10/2008, including the completed Proof of Claim, breakdown of claims, Employment Contract with American Home Mortgage Corp., as well as my last full paystub as issued by American Home Mortgage in support of the calculations herein noted and ask that Court consider this claim.

Respectfully submitted,

Jennifer L. Luke

Enclosures as noted
Sent via UPS Next Day Air to:
United States Bankruptcy Court for the District of Delaware
824 Market Street, 3rd Floor
Wilmington, Delaware  19801

Witnessed & Notarized by:

Danielle Bertram

Dated:   May 28, 2009

**DANIELLE BERTRAM**
**Notary Public, State of New York**
**Reg. No. 01BE6199192**
**Qualified in Queens County**
**Commission Expires Jan. 5, 2013**

Claim of Jennifer L. Luke – Claim Number:  8640                                          Page 3
In re:  American Home Mortgage Holdings  ·  US Bankruptcy Court-State of Delaware
Case Number  07-11047

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., Delaware corporation, et al., | ) Case No. 07-11047 (CSS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) Response Deadline: May 29, 2009 at 4:00 p.m. (ET) |
| | ) Hearing Date: June 5, 2009 at 10:00 a.m. (ET) |
| | ) |

AHM OB35 4/15/2009 (merge2.txnum2) 4000013821 EPIQ Use - 40

LUKE, JENNIFER
190-18 CROCHERON
AVE
FLUSHING, NY 11358

## NOTICE OF DEBTORS' THIRTY-FIFTH OMNIBUS (SUBSTANTIVE) OBJECTION
## TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE,
## BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

TO: LUKE, JENNIFER
190-18 CROCHERON
AVE
FLUSHING, NY 11358

**Basis For Objection:** Insufficient Documentation Claim: Claimant failed to provide documentation sufficient to support claim

| | **Claim Number** | **Claim Amount** |
|---|---|---|
| **Claim to be Expunged** | 8640 | Unspecified |

Insufficient documentation to assess validity of claim.

The above-captioned debtors and debtors in possession (the "Debtors") have filed the Debtors' Thirty-Fifth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 (the "Objection"), a copy of which is attached hereto. The Debtors hereby object to your claim listed above in the "Claim to be Expunged" row because this claim was filed without sufficient supporting documentation or facts to support a legal basis for a claim. Based on your claim and any documentation filed with your claim, the Debtors submit that they have no liability for any amounts alleged. The Objection seeks to alter your rights by disallowing the above-listed claim.

Responses to the Objection, if any, must be filed on or before **May 29, 2009 at 4:00 p.m. (ET)** (the "Response Deadline") with the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801. At the same time, you must also serve a copy of the response upon the counsel to the Debtors listed below so that the response is received on or before the Response Deadline.

A HEARING ON THE OBJECTION WILL BE HELD ON **JUNE 5, 2009 AT 10:00 A.M. (ET)** BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 5TH FLOOR, COURTROOM NO. 6, WILMINGTON, DE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: May 6, 2009
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Nathan D. Grow (No. 5014)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6756
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession

American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

| In Re:<br>American Home Mortgage Holdings, Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered |
|---|---|
| Name of Debtor Against Which Claim is Held<br>AMERICAN HOME MORTGAGE CORP | Case No. of Debtor<br>07-11051(CSS) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

**Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)**

AHM (MERGE2.DBF,SCHED_NO) SCHEDULE #: 751084520*****
LUKE, JENNIFER
190-18 CROCHERON
AVE
FLUSHING NY 11358

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Your claim is scheduled by the Debtors as:
$3,692.31 PRIORITY CONTINGENT

**Telephone number:**

**Email Address:**

**Account or other number by which creditor identifies debtor:**

Check here if this claim:
☐ replaces   ☐ amends a previously filed claim, dated: _____

**Basis for Claim**
☐ Goods sold
☑ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☐ Other _____ (explain)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last Four Digits of your SS#: ___ ___ ___ ___

Unpaid compensation for services performed

from _____ to _____
(date)            (date)

**Date debt was incurred:**

3. **If court judgment, date obtained:**

**Total Amount of Claim at Time Case Filed: $** _____ + _____ + _____ = _____
(unsecured nonpriority)   (secured)   (unsecured priority)   (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

**Unsecured Nonpriority Claim: $** _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
☑ Check this box if you have an unsecured priority claim.
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries, or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.

**DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

**Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

1/10/08 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): _Jennifer Luke_

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Proof of Claim – of Jennifer L. Luke
Re: AHM (MERGE2.DBF,SCHED_No) Schedule #: 751084520

In addition to the original claim amount noted on the enclosed Proof of Claim, please
see below noted claim items:

1.  In accordance with Employment Contract (copy attached hereto), under the
    bonus provisions, I am making a claim for a prorated bonus deemed
    earned through the date of end of business, August 4, 2007. Premised
    upon the contract terms and conditions with respect to same, a possible
    amount of up to 20% of the annual salary (which consistently was in the
    range of 20% of my respective annual salary) could have been paid out.
    Said amount as prorated through August, 2007, would be $19, 200.00
    gross, less all applicable local, state and federal taxes.
2.  Unpaid/unused remaining vacation time of two (2) weeks.
3.  Unpaid/unused sick/personal time of five (5) days.
4.  Sixty (60) days of pay for violation of proper notice to employees under the
    W.A.R.N. Act.

## EMPLOYMENT AGREEMENT

This Employment Agreement, dated as of _____, 2007 (this "Agreement"), is by and between American Home Mortgage Corp., a New York corporation having a place of business at 538 Broadhollow Road, Melville, NY 11747 (the "Company"), and Jennifer Luke (the "Executive").

Whereas the Company wishes to assure itself of the continued services of the Executive, and the Executive desires to continue to be employed by the Company, upon the terms and conditions hereinafter set forth.

The Company and the Executive hereby agree as follows:

1.     Employment. The Company agrees to continue to employ the Executive, and the Executive hereby accepts such continued employment by the Company during the term set forth in Section 2 and on the other terms and conditions of this Agreement.

2.     Term. The term of this Agreement shall commence on February 1, 2007 (the "Commencement Date"), and shall continue until the Executive resigns or is discharged, in which case the Agreement shall terminate four weeks following the resignation or discharge date.

3.     Position, Duties and Responsibilities, Rights.

(a)     During the term of this Agreement, the Executive shall serve as and hold the office and title of Post Closing Vice President, Document Classification/Call Center Manager. The Executive shall have all of the powers and duties usually incident to the office described above, and shall at all times comply with all policies of the Company relating to the Executive's employment.

(b)     During the term of this Agreement, the Executive agrees to devote substantially all the Executive's time, efforts and skills to the affairs of the Company during the Company's normal business hours, except for vacations, illness and incapacity, but nothing in this Agreement shall preclude the Executive from devoting reasonable periods to (i) manage the Executive's personal investments, (ii) participate in professional, educational, public interest, charitable, civic or community activities, including activities sponsored by trade organizations, (iii) serve as a director or member of an advisory committee of any corporation not in competition with the Company or any of its subsidiaries, or as an officer, trustee or director of any charitable, educational, philanthropic, civic, social or industry organizations, or as a speaker or arbitrator; provided, however, that the performance of the Executive's duties or responsibilities in any of such capacities does not materially interfere with the regular performance of the Executive's duties and responsibilities hereunder

4.     Place of Performance. In connection with the Executive's employment by the Company, the Executive's place of performance shall be in Melville, New York, and the Executive shall not be required to be absent from such location on travel status or otherwise for

more than a reasonable time each year as necessary or appropriate for the performance of the Executive's duties hereunder.

     5.    <u>Compensation</u>

     (a)    During the term of this Agreement, the Company shall pay the Executive, and the Executive agrees to accept a base salary at the rate of not less than $96,000.00 per year (the annual base salary as increased from time to time during the term of this Agreement being hereinafter referred to as the "Base Salary"). The Base Salary shall be paid in installments no less frequently than monthly. Any increase in Base Salary or other compensation shall not limit or reduce any other obligation of the Company hereunder, and once established at an increased specified rate, the Executive's Base Salary hereunder shall not thereafter be reduced.

     (b)    The Executive shall be eligible to receive a management evaluation bonus (the "Management Evaluation Bonus"), the amount of which will be determined by the Company based on an evaluation of the Executive's overall performance during the year, beginning with the Executive's performance. The targeted amount of the Management Evaluation Bonus will be 20% of the Executive's Base Salary, but the amount awarded, if any, may be less or greater than the targeted amount in the sole discretion of the Company. The Management Evaluation Bonus for a given year will be paid when such bonuses are generally paid by the Company in the succeeding year. To earn and receive a Management Evaluation Bonus, the Executive must be an employee of the Company as of the scheduled bonus payment date.

     (c)    During the term of this Agreement, the Executive shall be entitled to fringe benefits, in each case at least equal to and on the same terms and conditions as those attached to the Executive's office on the date hereof, as the same may be improved from time to time during the term of this Agreement.

     (d)    During the term of this Agreement, the Executive shall be entitled to reimbursement, upon proper accounting, of all reasonable expenses and disbursements incurred by the Executive in the course of the Executive's duties.

     6.    <u>Employment At Will.</u>  Employment hereunder shall be at all times "at will". The Company may discharge the Executive and terminate this Agreement at any time and for any reason, and the Executive may terminate the Executive's employment with the Company for any reason. If the Executive terminates the Executive's employment with the Company, the Executive shall provide the Company with notice of such termination pursuant to section 12 herein.

     7.    <u>Confidential and Proprietary Information; Company Property</u>  For the purpose of this section, Confidential Information shall mean all information and intellectual property owned by and proprietary to the Company, including but not limited to marketing programs such as Homebuyers Marketing and Marketing Portal, loan applications, loan files, loan file documents, accounts, customer or client information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, trade secrets, manuals, business methodology

and processes, and cost and pricing policies. All Confidential Information disclosed or provided to the Executive by the Company, or developed or created by the Executive during the term of the Executive's employment with the Company, is, shall become, and shall at all times remain, the sole and exclusive property of the Company. The Executive agrees not to disclose the Confidential Information to any other party, except to the extent that such disclosure is reasonably necessary in order for the Executive to perform the Executive's responsibilities as an executive of the Company. The Executive also agrees that the Executive will not use the Confidential Information for any purpose other than to fulfill the Executive's responsibilities as an executive of the Company.

The Executive acknowledges, understands, and agrees that the Confidential Information is of substantial value to the Company and that, in the event of the use or disclosure of such Confidential Information in breach of this Agreement, the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate. Therefore, without prejudice to the rights and remedies otherwise available to the Company, and in addition to such rights and remedies, the Company shall be entitled to equitable relief by way of injunction if the Executive breaches or threatens to breach any of the provisions of this Agreement relating to the Executive's use or disclosure of any of the Confidential Information.

The Executive further acknowledges that the Company may provide the Executive with access to or use of equipment or other property owned or leased by the Company ("Company Property"). The Executive agrees to abide by all agreements and policies relating to the use of Company Property, as may be in effect or modified from time to time at the sole discretion of the Company. The Executive further agrees to promptly return in good working condition all Company Property in the Executive's possession upon termination of the Executive's employment with the Company for any reason, and shall be liable in damages, including but not limited to replacement cost, for any financial loss to the Company if Company Property is not returned in such manner.

The Executive agrees that this section shall survive the termination of this Agreement, and that all of the obligations of the Executive set forth in this section shall remain in full force and effect after this Agreement is terminated. The Executive further agrees that, upon termination of this Agreement, the Executive will return to the General Counsel all Confidential Information (including all copies of Confidential Information) which is then in, or which later comes into, the Executive's possession or custody.

8.    Non-Solicitation; Non-Disparagement  The Executive agrees that during the term of the Executive's employment with the Company, and for a period of one (1) year after termination of the Executive's employment with the Company, whether such termination is voluntary or involuntary, with or without cause, the Executive shall not, directly or indirectly: (a) attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers and/or potential customers of the Company which have been derived from leads and/or lists developed and provided to the Executive by the Company; (b) influence or advise any other person to employ or solicit for employment anyone who is an employee of the Company; (c) influence or advise any person who is an employee of the Company, to leave the

3

employment of the Company; and (d) employ any person who is an employee of the Company. The Executive agrees that during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, attempt to divert any of the business of the Company, or any business which the Company has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers or business referral sources, including but not limited to realtors, builders and affinity organizations, joint venture partners, borrowers and loan applicants, obtained by, or whose contact information is stored in the records of, the Company. The Executive expressly agrees that this section is fair and reasonable and that Executive is being adequately compensated for agreeing to the terms of this section.

The Company and the Executive agree that neither will disparage the other, and that their representatives will not disparage either party hereto.

The Executive's obligations as set forth in this section shall survive the termination of this Agreement.

9.      Non-Compete.   The Executive agrees that, during the term of the Executive's employment with the Company, the Executive shall not, directly or indirectly, engage, participate, make any financial investment in, or become employed by or render advisory or other services to or for any person, firm corporation or other business enterprise which is, or is reasonably likely to become engaged, directly or indirectly, in competition with the Company.  The Executive expressly agrees that this section is fair and reasonable and that the Executive is being adequately compensated for agreeing to the terms of this section.

10.      Entire Agreement; Amendment.

(a)      This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and supersedes any and all other agreements between the parties, their predecessors and affiliates.

(b)      Any amendment of this Agreement shall not be binding unless in writing and signed by both (i) the Company's General Counsel and (ii) the Executive.

11.      Enforceability. If any provision of this Agreement is determined to be invalid or unenforceable, the remaining terms and conditions of this Agreement shall be unaffected and shall remain in full force and effect, and any such determination of invalidity or enforceability shall not affect the validity or enforceability of any other provision of this Agreement.

12.      Notices.  All notices which may be necessary or proper for either the Company or the Executive to give to the other shall be in writing and shall be sent by hand delivery, registered or certified mail, return receipt requested or overnight courier, if to the Executive at the last known address of the Executive on record with the Company, and, if to the Company, to it at its principal executive offices at 538 Broadhollow Road, Melville, NY 11747, Attention: Human Resources Director, with a copy to the Company's General Counsel, and shall

4

be deemed given when sent. Either party may by like notice to the other party change the address at which it is to receive notices hereunder.

13.    Counterparts. This Agreement can be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.

14.    Facsimile Signatures. A facsimile copy of either party's signature shall be deemed as legally binding as the original signature.

15.    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND BE ENFORCEABLE IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAWS THEREOF.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

American Home Mortgage Corp.

By:_____
Name: Alan B. Horn
Title:   Executive Vice President and General
           Counsel

_____
The Executive

CO.      FILE      DEPT      BLOCK    VCHR NO.    840
R4F    023252    000988    R4FOO    0000324957    1

# Earnings   Statement

**ADP**

AMERICAN HOME MORTGAGE
PAYROLL ACCOUNT
538 BROADHOLLOW RD
MELVILLE NY 11747

| | |
|---|---|
| Period Beginning: | 07/16/2007 |
| Period Ending: | 07/31/2007 |
| Pay Date: | 08/07/2007 |

Taxable Marital Status:   Single
Exemptions/Allowances:
Federal:    0
NY:    0
New York Cit:    0

00000004792
**JENNIFER LUKE**
**190-18  CROCHERON**
**AVE**
**FLUSHING,   NY 11358**

Social Security Number:   XXX-XX-7904

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 4000.00 | 90.00 | 4,000.00 | 58,048.08 |
| Retention Bonu | | | | 16,500.00 |
| Y/E Bonus | | | | 9,600.00 |
| **Gross Pay** | | | **$4,000.00** | 84,148.08 |

Your federal taxable wages this period are
$3,929.31

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -832.07 | 17,404.39 |
| | Social Security Tax | -243.62 | 5,151.44 |
| | Medicare Tax | -56.97 | 1,204.77 |
| | NY State Income Tax | -232.71 | 4,998.95 |
| | New York Cit Income Tax | -136.37 | 2,853.94 |
| | NY SUI/SDI Tax | -1.30 | 19.50 |
| | **Other** | | |
| | Checking | -2,305.54 | |
| | Dental Pre-Tax | -19.07* | 286.05 |
| | Ins Pretax Epr | -48.50* | 727.50 |
| | Optional Life | -1.75 | 26.25 |
| | Pretax Vision | -3.12* | 46.80 |
| | Savings | -100.00 | |
| | Short Term Dis | -18.98 | 284.70 |
| | Ltd Epr | | 250.04 |
| | T & E Reemburs | | -522.52 |
| | 401K | | 3,938.66 |
| | **Net Pay** | | **$0.00** |

* **Excluded from federal taxable wages**

© 3030 ADP, Inc

AMERICAN HOME MORTGAGE
PAYROLL ACCOUNT
538 BROADHOLLOW RD
MELVILLE NY 11747

**Advice number:**    00000324967
Pay date:    08/07/2007

Deposited to the account of
JENNIFER LUKE

**THIS IS NOT A CHECK**

| | account number | transit | ABA | amount |
|---|---|---|---|---|
| | 6175381978 | 0212 | 0271 | $100.00 |
| | 6100846657 | 0212 | 0271 | $2,305.54 |

**Bank of America**
BANK OF AMERICA, N.A.

VOID AFTER 180 DAYS

# NON-NEGOTIABLE