```
                UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF DELAWARE


IN RE:                          )  Case No. 07-11047(CSS)
                                )  Chapter 11
AMERICAN HOME MORTGAGE          )
HOLDINGS, INC., a Delaware      )  Courtroom No. 6
Corporation, et al.,            )  824 Market Street
                                )  Wilmington, Delaware 19801
                                )
          Debtors.              )
                                )  June 5, 2009
                                )  10:06 A.M.

             TRANSCRIPT OF OMNIBUS HEARING
        BEFORE HONORABLE CHRISTOPHER S. SONTCHI
             UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For the Debtors:          Young Conaway Stargatt & Taylor, LLP
                          By:  SEAN BEACH, ESQ.
                               NATE GROW, ESQ.
                          The Brandywine Building
                          1000 West Street, 17th Floor
                          Wilmington, Delaware 19899-0391

For Bank of America       Potter Anderson & Corroon, LLP
as Agent:                 By: LAURIE SELBER SILVERSTEIN, ESQ.
                          Hercules Plaza, P.O. Box 951
                          1313 N. Market Street
                          Wilmington, Delaware 19899-0951

ECRO:                     NICKITA BARKSDALE

TRANSCRIPTION SERVICE:    TRANSCRIPTS PLUS, INC.
                          435 Riverview Circle
                          New Hope, Pennsylvania 18938
                          Telephone:  215-862-1115
                          Facsimile: 215-862-6639
                          e-mail CourtTranscripts@aol.com


 Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

Appearances:
(Continued)

Fee Examiner:                    Nachman Hays Brownstein Inc.
                                 By:  M. JACOB RENICK
                                 645 Fifth Avenue 8th Floor
                                 New York, New York 10022


For Creditors'                   Blank Rome, LLP
Committee:                       By:  ELIZABETH SLOAN, ESQ.
                                 Chase Manhattan Centre
                                 1201 Market Street, Suite 800
                                 Wilmington, Delaware 19801


TELEPHONIC APPEARANCES:

For Official Committee           Hahn & Hessen LLP
of Unsecured Creditors:          By:  ERIC SCHNITZER, ESQ.
                                      MARK INDELICATO, ESQ.
                                 488 Madison Avenue
                                 New York, New York 10022


For Allen & Overy:               Allen & Overy, LLP
                                 By:  PAMELA CHEPIGA, ESQ.
                                 1221 Avenue of the Americas
                                 New York, New York 10020


For Kilpatrick &                 Kilpatrick & Stockton
Stockton:                        By:  CHRISTINA GATTUSO, ESQ.
                                 Suite 900
                                 607 14th Street, NW
                                 Washington, DC 20005-2018


For Peter Lytwyn:                PETER LYTWYN, Pro Se
                                 960 Berger Road
                                 Easton, Pennsylvania 18042

1              THE COURT:   Good morning.

2              MR. GROW:   Good morning, Your Honor.   Nathan Grow of

3  Young Conaway Stargatt and Taylor on behalf of the debtors.

4              Your Honor, referring to the agenda that was filed in

5  connection with this hearing, Items Number 1 through 20 have

6  been adjourned.

7              Item Number 21, no objections were filed.   We filed a

8  certificate of no objection, and I see that Your Honor has

9  already signed the order.   Thank you very much.

10             THE COURT:   You're welcome.

11             MR. GROW:   Item Number 22 relates to a number of fee

12 applications.   And if it's all right with Your Honor, we're

13 going to save that one until the end of the hearing.

14             THE COURT:   Okay.

15             MR. GROW:   And move on to some claim objections.

16 Item Number 23 is the debtors' 34th omnibus objection to

17 claims.   No responses were received to this objection.

18 However, we did have a claimant who requested that we add a

19 provision to the order stating that -- with respect to the

20 amended claims that we've objected to, requested that we not

21 object to the surviving claims on the basis that they were late

22 filed if the claims that were amended were timely filed.

23             THE COURT:   Okay.

24             MR. GROW:   So, we've added a provision to the order

25 to reflect that.

4

1          THE COURT:  All right.  Any other changes?

2          MR. GROW:  No other changes unless Your Honor has any
3    questions.

4          THE COURT:  No.  I'll sign the order.

5          MR. GROW:  Okay.  I will hand that up momentarily.

6          THE COURT:  Okay.

7          MR. GROW:  Item Number 24 is the 21st omnibus
8    objection to claims.  We had marked the claim of Residential
9    Appraisal Service as going forward  it probably would have been
10   more accurate to mark this resolved.  It's been listed on the
11   agenda, but it was actually resolved by order a number of month
12   sago.  So, we're just taking it off the agenda.

13         THE COURT:  Okay.

14         MR. GROW:  Item Number 25 on the agenda is the
15   debtors' 31st omnibus objection to claims.  And there are a few
16   claims that we'd like to resolve today from that objection:

17         First of all is the claim of Peter Lytwyn, 7789.  Mr.
18   Lytwyn is a borrower of AHM and also a stockholder.

19         The debtors objected to expunge his claim in its
20   entirety.  Mr. Lytwyn agrees that the portion of his claim that
21   relates to his equity interest -- he doesn't object to that
22   part being expunged.

23         The remainder of the claim is $3,840 priority.  And
24   this is related to real estate taxes that Mr. Lytwyn believes
25   that AHM should have paid on his behalf.  And he believes that

5

1  they are owing to him because he paid them.

2          AHM doesn't agree that it has any liability, but it's

3  willing to give him a claim for this amount of money if it's a

4  general unsecured claim.  Mr. Lytwyn believes it should be a

5  priority claim.  We gave him instructions to participate in the

6  hearing today by telephone or in person.  I don't believe he's

7  on the phone or represented here in the courtroom.

8          THE COURT:  Is anyone here on behalf of Mr. Lytwyn?

9          MR. LYTWYN:  Yes, Mr. -- I'm here, Your Honor.  My

10  name is Peter Lytwyn.

11          THE COURT:  All right.  Sir, can you explain the

12  basis for your claim, please?

13          MR. LYTWYN:  Okay.  Sure, Your Honor.  Thank you.

14  It's regarding my escrow account.  And, you know, I understand

15  I own stock in a company.  I understand that's all gone.

16          Now, it's always been my understanding that an escrow

17  account -- you know, it's not stock, it's not bond, it's not,

18  you know, things for services rendered.  It's not even a

19  retirement fund.  It's -- basically its purpose is set up for

20  the disbursement for particular items.  In my case, it would be

21  taxes and insurance.

22          Now, my claim, you know, with -- regarding this was

23  filed prior to the bankruptcy, first of all.  And throughout

24  this whole ordeal, American Home Mortgage promised me, you

25  know, they're -- they had two things:

1          They said, one, it was my responsibility to pay the

2    taxes.  Which you see I did by the canceled check.

3          Now, they promised -- they promised me a copy of the

4    canceled check by American Home Mortgage because they claim

5    that they paid the taxes.

6          So, as far as I know, the money was taken out of the

7    escrow account for a reason different than paying the taxes or

8    the insurance.

9          And that's basically, you know, the basis of my claim

10   is that I just want to be reimbursed the money that was taken

11   out of the escrow account.

12          THE COURT:  All right.  So, you put money into your

13   escrow account when you paid your normal mortgage payment.

14          MR. LYTWYN:  Correct.

15          THE COURT:  They claim they paid it to the taxes.

16   But the taxing authority said, no, we haven't been paid.  So,

17   you paid it --

18          MR. LYTWYN:  I think you have that notice -- that's

19   what I filed with you is that notice of reminder.

20          THE COURT:  Right.

21          MR. LYTWYN:  Okay?  For the --

22          THE COURT:  And the money exited the escrow account

23   but never made it to where it was supposed to go.

24          MR. LYTWYN:  Correct.

25          THE COURT:  All right.  Mr. Grow?

7

1          MR. GROW:  Yes.  With respect to whether the money --

2          THE COURT:  Can you make sure you use the mic so Mr.

3  Lytwyn can hear you?

4          MR. GROW:  Sure.

5          THE COURT:  Thank you.

6          MR. GROW:  With respect to the money that Mr. Lytwyn

7  is alleging that is owed, $3,840.18, the debtors don't agree

8  with this, but we don't need to get into the reason why AHM

9  doesn't agree because they're willing to give Mr. Lytwyn a

10  claim unsecured for $3,840.18 and, you know, won't contest

11  anything that Mr. Lytwyn is saying right now.

12          But what AHM would like to contest is whether this

13  claim would be entitled to priority under the Bankruptcy Code.

14  Section 507(a)(8) of the Bankruptcy Code allows for a priority

15  for certain claims related to taxes, but only claims that are

16  alleged by governmental entities.  And Mr. Lytwyn is not a

17  governmental entity.

18          THE COURT:  Hold on for just a second, I want to look

19  at something.  So, if you hear silence, I'm still here.

20          MR. LYTWYN:  Okay.

21                    (Pause)

22          THE COURT:  Sir, you said that this occurred before

23  the bankruptcy was filed?

24          MR. LYTWYN:  Yes, this is -- yes.  My check was dated

25  4/11/07.  And I think you have a copy of that check.

8

1                    THE COURT:  I do.

2                    MR. GROW:  And, Your Honor, the taxes relate to --

3                    THE COURT:  Isn't this a liability that would have

4    been assumed by the servicer through the purchase in October,

5    '07?  Presumably it's the servicer -- well, it is the servicer

6    who collects the money and makes the payment.  And if they

7    absconded with Mr. Lytwyn's -- wrongfully converted his funds

8    to some other purpose, he would have a claim against the

9    servicer, not the actual holder of the mortgage.

10                   And the servicing -- my memory is, the servicing

11   obligations, in connection with loans that were taken were --

12   the liabilities were assumed.

13                   MR. GROW:  Your Honor, the debtors certainly would

14   not argue if Mr. Lytwyn wanted to assert a claim against the

15   servicer.

16                   THE COURT:  The distinction, Mr. Lytwyn, I'm making

17   is there are two things that happened with the mortgage.  And

18   if I'm telling you something you already know, I apologize.  I

19   want to make the record.

20                   MR. LYTWYN:  No, I don't know.  What you're telling

21   me is brand new.  Go ahead.

22                   THE COURT:  Okay.  When you go to a bank and you get

23   a mortgage, someone lends you the money and they own the right

24   to be paid back on that money, right?

25                   MR. LYTWYN:  Um-hum, correct.

1        THE COURT:  They then -- usually they hire somebody

2   else to actually do the day-to-day business of servicing your

3   account, sending you the invoices, collecting the money,

4   holding the escrow, making sure the right amount is applied to

5   principal, making sure the right amount is applied to interest,

6   paying out of the escrow the real estate taxes, paying out of

7   escrow the homeowner's insurance, and any other fees.

8   Sometimes sewer taxes, it depends on where you live.

9        In the case of this debtor, American Home Mortgage,

10  they had -- they did things a couple different ways.  But

11  usually they would use their own internal company to perform

12  the servicing function on behalf of the loans they owned.  They

13  sold the rights to service the mortgage to a buyer back in

14  October, 2007.  And as part of taking the obligation -- taking

15  the servicing business, that company also took the liabilities

16  that were associated with that business.

17        So, here's what I'm saying:  If the servicer took

18  your money, which it sounds at least, on the face of your

19  documents, that they did, you have a claim against the servicer

20  because that's the entity that robbed you, for lack of a better

21  word.

22        MR. LYTWYN:  I -- I -- for lack of a better word.

23  Yeah, I mean it is.  It's --

24        THE COURT:  I understand.  And as a result -- but

25  that's not the company that necessarily owns the right to get

1 paid, it's a little bizarre.

2          My point being you still have a claim, but you have a

3 claim against somebody other than the debtor.  And the good

4 news is, that company is not in bankruptcy.  So, you could

5 pursue that claim and actually get paid --

6          MR. LYTWYN:  Okay.  Now --

7          THE COURT:  -- 100 cents on the dollar.  Now, all

8 that said, let me tell you about the priority scheme.  You

9 would normally -- if you had a claim against the debtor that

10 someone else had not taken over responsibility for, you would

11 have what's called a general unsecured claim.

12          The Bankruptcy Code sets forth a series of

13 priorities.  Even though they are unsecured claims, Congress

14 has decided that they should get paid first before any other

15 unsecured claims get paid.

16          And, of course, the result is usually that means --

17 and in this case, that means you'd get paid in full as opposed

18 to getting paid a very small percentage of your claim.

19          The list of priorities is very specific.  It includes

20 everything from unpaid wages for workers to alimony and other

21 such very special types of claims that would not be applicable

22 in this case.

23          But there's nothing in there, unfortunately, that

24 would serve to protect you, to apply to you.  I believe.  And

25 that's why I want to -- I was taking a few minutes to go

1  through them.  So, let me -- give me just a moment again --

2          MR. LYTWYN:  Sure.

3          THE COURT:  -- after that background to double-check

4  that none are applicable to you, okay?

5                  (Pause)

6          THE COURT:  Mr. Grow, what about 502(a)(7)?

7          MR. GROW:  502(a)(7) --

8          THE COURT:  Which says --

9          MR. GROW:  Treats the deposit for -- in connection

10 with the purchase, lease or rental of property, purchase and

11 services.  I'm not sure where real property taxes falls into

12 any of the categories.

13         THE COURT:  Well, it says, (7), "Allowed unsecured

14 claims of individuals subject to a cap for each such individual

15 arising from the deposit before the commencement of the case of

16 money in connection with the purchase, lease or rental of

17 property."

18         And I agree with  you, I think that would have to do

19 -- not with an ongoing obligation, but the actual purchase.

20         But then it says, "Or the purchase of services for

21 the household that were not delivered or provided."

22         That -- I think based on the cases I've had, those

23 are contracts.  Those are people you hire to, you know, fix

24 your basement, and then they don't do it.  You're not

25 purchasing services from a services.  Actually, it's American

1  Home Mortgage that's purchasing services from a servicer.

2          MR. GROW:  Right.  And I also don't know if this

3  claim really relates to a deposit either since Mr. Lytwyn, I

4  believe, paid the taxes directly to the taxing authority and is

5  looking for reimbursement.

6          THE COURT:  Well, I'm not sure an escrow is a

7  deposit, correct.

8          All right.  Mr. Lytwyn --

9          MR. LYTWYN:  Yeah?

10          THE COURT:  -- where we are is none of the special

11  priority categories apply to your situation.  So, I am going to

12  have to give you an allowed unsecured claim in the full amount.

13  Unfortunately, the payout on those claims is not particularly

14  high, to say the least.  But I believe, and I could be wrong,

15  it's happened before, but I believe that you would nonetheless

16  have a claim against whoever is currently servicing your loan.

17  You're still getting monthly bills and --

18          MR. LYTWYN:  Oh, yeah.  Oh, yeah.

19          THE COURT:  Yeah.

20          MR. LYTWYN:  Absolutely.

21          THE COURT:  So, you need to contact them, same

22  documentation, and I think you can pursue a claim against them.

23  And if they agree to pay it, the good news is you'll get, you

24  know, the full amount of your money as opposed to a very small

25  percentage.

1          MR. LYTWYN:  Okay.  So --

2          THE COURT:  But that's the --

3          MR. LYTWYN:  -- now, this -- okay.  Let me just -- so

4  I'm clear.

5          THE COURT:  Sure.

6          MR. LYTWYN:  Because this is what -- this is what I

7  was doing prior to the bankruptcy.  Everything that I filed

8  with you that you have in front of you, I was doing prior to

9  the bankruptcy with American Home Mortgage.

10          THE COURT:  Yes, the problem is American Home

11  Mortgage, for lack of a better word, was a mess.

12          MR. LYTWYN:  Yes.

13          THE COURT:  And when they went into bankruptcy in

14  August, I mean, all sorts of stuff disappeared and got lost.

15  So, unfortunately I think your best bet is to start over

16  because you've got a new company now that's sending you bills

17  every month.

18          MR. LYTWYN:  Well --

19          THE COURT:  And they don't have anything to do with

20  American Home.

21          MR. LYTWYN:  And that -- that -- you know, they're --

22  but, unfortunately, you know, in dealing with them for the last

23  two years and some -- since this issue, I've been paying my

24  taxes outright.  They're still escrowing my money and I can't

25  get them to, you know, get me off the escrow, they won't

1  release that.  You know?  It's just all -- which has nothing to

2  do with you.  But --

3       THE COURT:  Well -- and they're not going to because

4  the problem is that if you don't pay your taxes, the bank --

5  excuse me.  If you don't pay your taxes -- unlikely, of course

6  -- but if you don't pay your taxes, the government can put a

7  lien on your house that would be senior to the mortgage.

8       MR. LYTWYN:  Yeah.  No, no --

9       THE COURT:  And they don't like that.

10      MR. LYTWYN:  No, I know.  But unfortunately -- well,

11 you know, and here's -- here's what -- the point I was getting

12 to.  And I guess I'll just have to deal with this myself.  You

13 know, right now, I mean I send everything to American Home

14 Mortgage Servicing in registered letters.  And they -- every

15 time I call to -- or follow-up on a letter, they just deny that

16 they've ever received them, even though I got the green signed

17 receipts.  I mean they just -- they deny that they ever

18 received any information from me regardless of what it's in

19 respect to.

20      THE COURT:  Well, sir, if they continue to act that

21 way, I encourage you to contact your local law enforcement

22 agency, i.e., your Attorney General and make a consumer --

23      MR. LYTWYN:  Yeah, that's what my lawyer told me to

24 do.  That's exactly what my lawyer told me to do.  They said

25 file a claim with the Attorney General, let them figure it out.

1          THE COURT:  Yeah.

2          MR. LYTWYN:  Okay.  And I think that's going to be my

3  best bet in this case.

4          THE COURT:  Sounds good, sir.  All right.

5          MR. LYTWYN:  All right.

6          THE COURT:  So, you'll have an allowed unsecured

7  claim in the amount asserted, and I wish you all the best in

8  collecting your money.

9          MR. LYTWYN:  Thanks for the explanation and your help

10  today, Your Honor.

11          THE COURT:  You're welcome.  You can hang up.

12          MR. LYTWYN:  All right.  Bye, now.

13          THE COURT:  I'll sustain the objection.

14          MR. GROW:  Okay.  Thank you, Your Honor.  Moving on

15  to another claim out of the 31st omnibus objection.  Virginia

16  Housing Development Authority.  The debtors objected to their

17  claim on the basis that insufficient documentation was

18  extended.  They requested an extension of the response deadline

19  until April 20th.  That deadline passed.  We didn't get any

20  response from them.  Contacted their counsel to say that AHM

21  would assume that they had no -- that they didn't oppose the

22  relief requested, and received no response.

23          THE COURT:  All right.  I'll sustain the objection.

24  Anyone -- well, before I do that.  Anyone on the phone or

25  present on behalf of Virginia Housing Authority?

1          (No audible response heard)

2          THE COURT:  Hearing none, I'll sustain the objection.

3          MR. GROW:  Okay.  Moving on to I-LOG (phonetic), also

4    in the 31st omnibus objection.  They also requested additional

5    time to respond to the objection, but then contacted us to say

6    that they would not be responding, and they had no response to

7    the relief requested.

8          THE COURT:  All right.  I'll sustain the objection.

9          MR. GROW:  And then two more that we want to include

10   in the same order if it's acceptable to Your Honor, Gerald

11   Palmer and Brett Lotsoff, Claim 9048 and 2861.  These are

12   claims related to their employment.

13          After discussions with their counsel, they have the

14   same attorney, American Home Mortgage determined that it would

15   be appropriate to allow their claims in the amount of $5,000

16   priority each.  $5,000 for Mr. Palmer, $5,000 for Mr. Lotsoff.

17          They've confirmed that they're in agreement with

18   this.  And we've included that in the form of order that I can

19   hand up to Your Honor if that is acceptable.

20          THE COURT:  All right.  I'll approve the resolution.

21          MR. GROW:  Okay, Your Honor.  We also have the 33rd

22   omnibus objection to claims marked as going forward with

23   respect to one claimant today.  But, Your Honor, I think it

24   would be appropriate to adjourn that one again.  We believe we

25   have grounds to sustain the objection, notwithstanding Ms.

1    Levin's response, but we would like to submit a declaration to

2    get the appropriate factual information related to her claim on

3    the record.

4         THE COURT:  All right.  Very good.  It will be

5    adjourned til July 2nd.

6         MR. GROW:  Okay.  Thank you.  And moving on to the

7    35th omnibus objection for claims, we received several

8    responses related to this objection.  And we have marked down

9    several of the claims as adjourned, as indicated in the agenda.

10   And that includes Lee County, the State of New Jersey, Bexar

11   (phonetic) County, Coppel ISD (phonetic), Dallas County, Harris

12   County, Nuessis (phonetic) County, Tarrant (phonetic) County,

13   EMC Corporation, and Jennifer Luke.  We also indicated on the

14   agenda that it would be adjourned with respect to the Tennessee

15   Department of Revenue, but AHM, since filing the agenda, has

16   determined to withdrawal the objection with respect to their

17   claim.

18        And then the one other response to talk about is the

19   response of Kenneth Reinard.  The debtors objected to Mr.

20   Reinard's claim as an equity fraud claim.  Mr. Reinard was a

21   stockholder of American Home Mortgage who alleges that he lost

22   the value of his stock and also alleges that American Home

23   Mortgage breached their fiduciary responsibilities.

24        We've discussed this before, and objected to several

25   other claims on the same basis.  We believe Mr. Reinard's claim

1  under the confirmed plan should be subordinated pursuant to

2  Section 510 of the Bankruptcy Code.

3         THE COURT:  I'll --

4         MR. GROW:  Um --

5         THE COURT:  I'm sorry.

6         MR. GROW:  I have nothing else to say.

7         THE COURT:  Anyone here on behalf of Mr. Reinard?

8               (No audible response heard)

9         THE COURT:  I'll sustain the objection.

10        MR. GROW:  Okay, Your Honor.  With those adjustments

11 to the 35th, unless Your Honor has any other questions, we

12 request that the objection be sustained.

13        THE COURT:  All right.  I'll sustain it as modified.

14        MR. GROW:  Okay.  And I have forms of order here for

15 the 31st, 34th, and 35th.  May I approach to hand them up?

16        THE COURT:  Please do.  Thank you.

17               (Pause)

18        MR. GROW:  Okay, Your Honor.  I'd like to turn the

19 podium over to my colleague, Sean Beach.

20        THE COURT:  All right.  Thank you, Mr. Grow.

21        MR. BEACH:  Good morning, Your Honor.  May it please

22 the Court, Sean Beach on behalf of the debtors.

23        Your Honor, I believe the last item on the agenda

24 today is the interim fee request for the professionals.

25        Your Honor, before I -- I do have some kind of

1  housekeeping clarification matters that I want to talk to you

2  about.  But I do want to introduce you to Mr. Jacob Renick,

3  who's the fee examiner appointed in the case, and is in the

4  courtroom today.

5          THE COURT:  Welcome, Mr. Renick.

6          MR. RENICK:  Good morning, Your Honor.

7          THE COURT:  Good morning.  Thank you for your

8  service.

9          MR. RENICK:  You're welcome.

10         MR. BEACH:  Mr. Renick has been in communication

11  with, I think, all of the professionals in connection with the

12  fee applications that are up for hearing today.

13         Your Honor, Mr. Renick has also filed a number of fee

14  examiner reports, either stating that there are no issues with

15  respect to the applications, or that -- or making his

16  recommendation in terms of what he believes should happen to

17  those applications.

18         We didn't amend the agenda and submit those over to

19  Your Honor, but I do have copies if you'd like me to hand those

20  up.

21         THE COURT:  I'll take counsel's statements.

22         MR. BEACH:  Okay.  And I believe all of those

23  applications that we're going forward with today are consensual

24  in terms of the communications that Mr. Renick had with those

25  professionals.

1          And, Your Honor, the professionals that we do intend

2    to go forward with today are Weiner Brodsky, Allen & Overy,

3    Kilpatrick Stockton, Milestone Advisors, and Traxi.  I just,

4    unfortunately, had the wrong numbers and couldn't figure them

5    out as I was sitting there.  So, I'd like to submit that under

6    certification of counsel once we get with Mr. Renick to make

7    sure that we have the right numbers in the form of order.

8          And then last, with respect to Young Conaway, while

9    we're not prepared to hand up an order today because we still

10   have to respond to certain questions that Mr. Renick has had

11   for us, I would like to submit that under certification of

12   counsel if it's acceptable to Your Honor, and we are able to

13   come to a resolution with Mr. Renick.

14          THE COURT:  It is acceptable.  As a matter of fact,

15   you can submit any of the interim applications that are

16   resolved going forward under certification.

17          MR. BEACH:  Great.  Thank you, Your Honor.

18          THE COURT:  And I'll consider them then.

19          MR. BEACH:  Okay.  And now with respect to some of

20   the clarifications.  I wanted to bring to Your Honor's

21   attention in the confirmation order, it states that the

22   professionals not longer have to file fee applications after

23   the confirmation date, but that the final fee application

24   deadline runs from the effective date.  As Your Honor knows,

25   there's been a bit of a delay in going effective in this

1  matter.

2         So, we have continued, and I've talked to Mr.

3  Indelicato about this -- we have continued filing fee

4  applications, at least until we were able to get before Your

5  Honor and at least bring it to your attention and find out if

6  you'd like to modify that provision in the order or if you're

7  comfortable that we can stop filing fee applications as of the

8  confirmation.

9         THE COURT:  I'd like you to file through the

10 effective date.

11        MR. BEACH:  Sure, we'll do that.

12        THE COURT:  Because -- yes, I'd like you to file

13 through the effective date because there is a possibility,

14 hopefully very remote, that you won't go effective.

15        MR. BEACH:  Understood, Your Honor.  I may -- given

16 that, I may submit a clarifying order just so there's no

17 confusion among professionals on that --

18        THE COURT:  I -- let's -- yes, let's do that.

19        MR. BEACH:  Okay.

20        THE COURT:  Don't -- let's get away with -- get rid

21 of the "may" and make it a "you will."

22        MR. BEACH: Okay.

23                    (Laughter)

24        MR. BEACH:  Understood, Your Honor.  Another

25 clarifying matter.  In connection with the fee examiner order

1  that was submitted, the intention of the debtors and the

2  Committee when submitting that order, as Your Honor may recall,

3  was to limit the review of fee applications to fee applications

4  that have not been reviewed on an interim -- reviewed and

5  approved on an interim basis so as not to go all the way back

6  to the beginning of the case to help cut costs and, you know,

7  just limit the cost of going back two years and to, you know,

8  many professionals on those fee applications.

9       Mr. Renick brought to my attention that there might

10  be an ambiguity when you get to the final fee application

11  period as he -- you know, as to whether he needs to review the

12  final fee applications and then review -- as a result of that,

13  review fee applications all the way back to the beginning of

14  the case.

15       I will tell Your Honor that it was our intention, to

16  the extent there's an ambiguity, that it would only be

17  unreviewed fee applications as of the time he was appointed.

18  And clearly on the final fee application hearing, there will

19  probably still be some interim.  So, he -- Mr. Renick would

20  participate through that period.  But --

21       THE COURT:  Well, I hate to inform you, but -- I mean

22  given the press and size of them, my review as the case went

23  on, even those that I approved on an interim basis, was not as

24  thorough as I would normally hope.

25       So, when the final fee apps are filed, I -- Mr.

1  Renick, I regret to ask you to review them in their entirety.

2  And obviously that will be more expensive but I think that's

3  how we're going to have to proceed.

4          MR. BEACH:  Okay, Your Honor.

5          THE COURT:  Sorry, Mr. Beach.

6          MR. BEACH:  Next item.  With respect to Milestone, we

7  are submitting a -- for approval of that fee application today.

8  I've had discussions with Mr. Renick in terms of the retention

9  of Milestone, which was under 328(a) of the Bankruptcy Code,

10 and indicated to Mr. Renick that my view of that was that he

11 will have the opportunity after their engagement is over to

12 review that -- review all of their fees for under the

13 improvidence standard.  But at this point, it wasn't necessary

14 or required for him to review those fees given that it's a

15 monthly fee of $100,000.

16         So, with that, Mr. Renick, I believe, was comfortable

17 submitting the application for approval today, understanding

18 that he will be able to review that at the end of the case.

19         THE COURT:  Mr. Renick, is that correct?

20         MR. RENICK:  That's acceptable to me, Your Honor.

21         THE COURT:  Okay.  Acceptable to me.

22         MR. BEACH:  And one additional item on Milestone.

23 The Committee and the debtors have been discussing with

24 Milestone cutting off the monthly payment and slightly

25 modifying their retention.  It currently provides that after

1  the closing of the bank sale, Milestone will be entitled to a

2  $500,000 success fee.

3       What the discussions have been in terms of the

4  modification is to cut off the monthly and slightly increase

5  that success fee if the closing occurs within a certain time

6  period.

7       Overall, it would be less than if we had continued

8  the monthly amounts.  So, I would ask, if it's acceptable to

9  Your Honor, that with the concept of the Committee and the

10  debtors, and we'll show it to Mr. Renick, if we can submit that

11  under certification of counsel, an order that reflects that

12  agreement by Milestone to modify their terms of engagement.

13       THE COURT:  Yes.

14       MR. BEACH:  Thank you, Your Honor.

15       And last is Mr. Renick has not engaged counsel in

16  this case.  Young Conaway, and I believe Committee counsel,

17  have been filing things for him as needed.  We'd ask, to help

18  cut down on costs, that Mr. Renick not need to retain counsel,

19  which would primarily be just to file things in the court

20  anyway.  But I did just want to disclose to Your Honor that we

21  have been doing that, and we propose to continue.

22       THE COURT:  That's fine with me, if it's -- Mr.

23  Renick, if you at some point wish to retain counsel, that's

24  obviously something that you would retain the option to do and

25  seek court approval.  But at this point, it's fine with me.

1          MR. RENICK:  Thank you.

2          MR. BEACH:  Thank you, Your Honor.  I don't have

3 anything further.  I do have a form of order.  May I approach?

4          THE COURT:  Yes.  This is the Milestone order?

5          MR. BEACH:  It's for everyone --

6          THE COURT:  But Traxi?

7          MR. BEACH:  Yes.

8          THE COURT:  Does anyone wish to be heard before I

9 sign it?

10               (No audible response heard)

11          THE COURT:  All right.  I'll approve the order.

12          MR. BEACH:  With that, Your Honor, I believe that

13 concludes our agenda.

14          THE COURT:  Very good.  Thank you.  Hearing

15 adjourned.

16          MR. BEACH:  Thank you.

17     (Whereupon, at 10:37 A.M. the hearing was adjourned.)

18                    CERTIFICATE

19     I certify that the foregoing is a correct transcript from

20 the electronic sound recording of the proceedings in the

21 above-entitled matter.

22

23  /s/ Karen Hartmann    AAERT CET**D0475    Date:  June 12, 2009

24 TRANSCRIPTS PLUS, INC.

25

23:20,21 24:8

**$**

$100,000- 23:15
$3,840- 4:23
$3,840.18- 7:7,10
$5,000- 16:15,16
$500,000- 24:2

**&**

&- 20:2

**'**

'07- 8:5

**/**

/S/- 25:23

**1**

1- 3:5
100- 10:7
10:37- 25:17
12- 25:23

**2**

20- 3:5
2007- 9:14
2009- 25:23
20TH- 15:19
21- 3:7
21ST- 4:7
22- 3:11
23- 3:16
24- 4:7
25- 4:14
2861- 16:11
2ND- 17:5

**3**

31ST- 4:15 15:15
16:4 18:15
328A- 23:9
33RD- 16:21
34TH- 3:16 18:15
35TH- 17:7
18:11,15

**4**

4/11/07- 7:25

**5**

502A7- 11:6,7
507A8- 7:14
510- 18:2

**7**

7- 11:13
7789- 4:17

**9**

9048- 16:11

**A**

AAERT- 25:23
ABLE- 20:12 21:4
23:18
ABSCONDED- 8:7
ABSOLUTELY- 12:20
ACCEPTABLE-
16:10,19 20:12,14

ACCOUNT- 5:14,17
6:7,11,13,22 9:3
ACCURATE- 4:10
ACT- 14:20
ACTUAL- 8:9 11:19
ADD- 3:18
ADDED- 3:24
ADDITIONAL- 16:4
23:22
ADJOURN- 16:24
ADJOURNED- 3:6
17:5,9,14
25:15,17
ADJUSTMENTS-
18:10
ADVISORS- 20:3
AGAINST- 8:8,14
9:19 10:3,9
12:16,22
AGENCY- 14:22
AGENDA- 3:4
4:11,12,14
17:9,14,15 18:23
19:18 25:13
AGREE- 5:2 7:7,9
11:18 12:23
AGREEMENT- 16:17
24:12
AGREES- 4:20
AHEAD- 8:21
AHM- 4:18,25 5:2
7:8,12 15:20
17:15
ALIMONY- 10:20
ALLEGED- 7:16
ALLEGES- 17:21,22
ALLEGING- 7:7
ALLEN- 20:2
ALLOW- 16:15
ALLOWED- 11:13
12:12 15:6
ALLOWS- 7:14
AMBIGUITY-
22:10,16
AMEND- 19:18
AMENDED- 3:20,22
6:4 9:9 11:25
13:9,10,20 14:13
16:14 17:21,22
AMONG- 21:17
AMOUNT- 5:3 9:4,5
12:12,24 15:7
16:15
AMOUNTS- 24:8
ANYWAY- 24:20
APOLOGIZE- 8:18
APPLICABLE- 10:21
11:4
APPLICATION-
20:23 22:10,18
23:7,17
APPLICATIONS-
3:12
19:12,15,17,23
20:15,22 21:4,7
22:3,8,12,13,17
APPLIED- 9:4,5

APPLY- 10:24
12:11
APPOINTED- 19:3
22:17
APPRAISAL- 4:9
APPROACH- 18:15
25:3
APPROPRIATE-
16:15,24 17:2
APPROVAL- 23:7,17
24:25
APPROVE- 16:20
25:11
APPROVED- 22:5,23
APPS- 22:25
APRIL- 15:19
ARGUE- 8:14
ARISING- 11:15
ASSERT- 8:14
ASSERTED- 15:7
ASSOCIATED- 9:16
ASSUME- 15:21
ASSUMED- 8:4,12
ATTENTION- 20:21
21:5 22:9
ATTORNEY-
14:22,25 16:14
AUGUST- 13:14
AUTHORITY- 6:16
12:4 15:16,25

**B**

BACK- 8:24 9:13
22:5,7,13
BACKGROUND- 11:3
BANK- 8:22 14:4
24:1
BANKRUPTCY- 5:23
7:13,14,23
10:4,12 13:7,9,13
18:2 23:9
BASED- 11:22
BASEMENT- 11:24
BASIS- 3:21 5:12
6:9 15:17 17:25
22:5,23
BEACH-
18:19,21,22
19:10,22 20:17,19
21:11,15,19,22,24
23:4,5,6,22 24:14
25:2,5,7,12,16
BEGINNING-
22:6,13
BELIEVES- 4:24,25
5:4 19:16
BET- 13:15 15:3
BEXAR- 17:10
BILLS- 12:17
13:16
BIT- 20:25
BIZARRE- 10:1
BOND- 5:17
BORROWER- 4:18
BRAND- 8:21
BREACHED- 17:23
BRETT- 16:11
BRODSKY- 20:2
BROUGHT- 22:9

BUSINESS-
9:2,15,16
BUYER- 9:13
BYE- 15:12

**C**

CALL- 14:15
CALLED- 10:11
CAN- 5:11 7:2,3
12:22 14:6 15:11
16:18 20:15 21:7
24:10
CAN'T- 13:24
CANCELED- 6:2,4
CAP- 11:14
CASE- 5:20 9:9
10:17,22 11:15
15:3 19:3
22:6,14,22 23:18
24:16
CASES- 11:22
CATEGORIES- 11:12
12:11
CENTS- 10:7
CERTAIN- 7:15
20:10 24:5
CERTAINLY- 8:13
CERTIFICATE- 3:8
25:18
CERTIFICATION-
20:6,11,16 24:11
CERTIFY- 25:19
CET**D0475- 25:23
CHANGES- 4:1,2
CHECK- 6:2,4
7:24,25
CLAIM- 3:15
4:8,17,19,20,23
5:3,4,5,12,22
6:4,9,15 7:10,13
8:8,14 9:19
10:2,3,5,9,11,18
12:3,12,16,22
14:25 15:7,15,17
16:11
17:2,17,20,25
CLAIMANT- 3:18
16:23
CLAIMS-
3:17,20,21,22
4:8,15,16 7:15
10:13,15,21 11:14
12:13 16:12,15,22
17:7,9,25
CLARIFICATION-
19:1
CLARIFICATIONS-
20:20
CLARIFYING-
21:16,25
CLEAR- 13:4
CLEARLY- 22:18
CLOSING- 24:1,5
CODE- 7:13,14
10:12 18:2 23:9
COLLEAGUE- 18:19
COLLECTING- 9:3
15:8
COLLECTS- 8:6

COME- 20:13
COMFORTABLE- 21:7
23:16
COMMENCEMENT-
11:15
COMMITTEE- 22:2
23:23 24:9,16
COMMUNICATION-
19:10
COMMUNICATIONS-
19:24
COMPANY- 5:15
9:11,15,25 10:4
13:16
CONAWAY- 3:3 20:8
24:16
CONCEPT- 24:9
CONCLUDES- 25:13
CONFIRMATION-
20:21,23 21:8
CONFIRMED- 16:17
18:1
CONFUSION- 21:17
CONGRESS- 10:13
CONNECTION- 3:5
8:11 11:9,16
19:11 21:25
CONSENSUAL- 19:23
CONSIDER- 20:18
CONSUMER- 14:22
CONTACT- 12:21
14:21
CONTACTED- 15:20
16:5
CONTEST- 7:10,12
CONTINUE- 14:20
24:21
CONTINUED- 21:2,3
24:7
CONTRACTS- 11:23
CONVERTED- 8:7
COPIES- 19:19
COPPEL- 17:11
COPY- 6:3 7:25
CORPORATION-
17:13
CORRECT- 6:14,24
8:25 12:7 23:19
25:19
COST- 22:7
COSTS- 22:6 24:18
COULDN'T- 20:4
COUNSEL- 15:20
16:13 20:6,12
24:11,15,16,18,23
COUNSEL'S- 19:21
COUNTY-
17:10,11,12
COUPLE- 9:10
COURSE- 10:16
14:5
COURTROOM- 5:7
19:4
CURRENTLY- 12:16
23:25
CUT- 22:6 24:4,18
CUTTING- 23:24

**D**

DALLAS- 17:11
DATE- 20:23,24
21:10,13 25:23
DATED- 7:24
DAY-TO-DAY- 9:2
DEADLINE-
15:18,19 20:24
DEAL- 14:12
DEALING- 13:22
DEBTOR- 9:9
10:3,9
DEBTORS- 3:3 4:19
7:7 8:13 15:16
17:19 18:22 22:1
23:23 24:10
DEBTORS'- 3:16
4:15
DECIDED- 10:14
DECLARATION- 17:1
DELAY- 20:25
DELIVERED- 11:21
DENY- 14:15,17
DEPARTMENT- 17:15
DEPENDS- 9:8
DEPOSIT- 11:9,15
12:3,7
DETERMINED- 16:14
17:16
DEVELOPMENT-
15:16
DIDN'T- 15:19,21
19:18
DIFFERENT- 6:7
9:10
DIRECTLY- 12:4
DISAPPEARED-
13:14
DISBURSEMENT-
5:20
DISCLOSE- 24:20
DISCUSSED- 17:24
DISCUSSING- 23:23
DISCUSSIONS-
16:13 23:8 24:3
DISTINCTION- 8:16
DOCUMENTATION-
12:22 15:17
DOCUMENTS- 9:19
DOESN'T- 4:21 5:2
7:9
DOLLAR- 10:7
DOUBLE-CHECK-
11:3

**E**

EACH- 11:14 16:16
EFFECTIVE-
20:24,25
21:10,13,14
ELECTRONIC- 25:20
EMC- 17:13
EMPLOYMENT- 16:12
ENCOURAGE- 14:21
ENFORCEMENT-
14:21
ENGAGED- 24:15
ENGAGEMENT- 23:11
24:12

ENTIRETY- 4:20
23:1
ENTITIES- 7:16
ENTITLED- 7:13
24:1
ENTITY- 7:17 9:20
EQUITY- 4:21
17:20
ESCROW- 5:14,16
6:7,11,13,22
9:4,6,7 12:6
13:25
ESCROWING- 13:24
ESTATE- 4:24 9:6
EVERYONE- 25:5
EVERYTHING- 10:20
13:7 14:13
EXACTLY- 14:24
EXAMINER- 19:3,14
21:25
EXCUSE- 14:5
EXITED- 6:22
EXPENSIVE- 23:2
EXPLAIN- 5:11
EXPLANATION- 15:9
EXPUNGE- 4:19
EXPUNGED- 4:22
EXTENDED- 15:18
EXTENSION- 15:18
EXTENT- 22:16

**F**

FACE- 9:18
FACTUAL- 17:2
FALLS- 11:11
FAR- 6:6
FEE- 3:11 18:24
19:3,12,13
20:22,23
22:3,8,10,12,13,1
7,18,25
21:3,7,25 23:7,15
24:2,5
FEES- 9:7
23:12,14
FIDUCIARY- 17:23
FIGURE- 14:25
20:4
FILE- 14:25 20:22
21:9,12 24:19
FILED- 3:4,7,22
5:23 6:19 7:23
13:7 19:13 22:25
FILING- 17:15
21:3,7 24:17
FINAL- 20:23
22:10,12,18,25
FIND- 21:5
FINE- 24:22,25
FIRST- 4:17 5:23
10:14
FIX- 11:23
FOLLOW-UP- 14:15
FOREGOING- 25:19
FORM- 16:18 20:7
25:3
FORMS- 18:14
FORTH- 10:12
FORWARD- 4:9

16:22 19:23
20:2,16
FRAUD- 17:20
FRONT- 13:8
FULL- 10:17
12:12,24
FUNCTION- 9:12
FUND- 5:19
FUNDS- 8:7
FURTHER- 25:3

**G**

GAVE- 5:5
GENERAL- 5:4
10:11 14:22,25
GERALD- 16:10
GET- 7:8 8:22
9:25
10:5,14,15,17
12:23 13:25 15:19
17:2 20:6 21:4,20
22:10
GIVE- 5:3 7:9
11:1 12:12
GIVEN- 21:15
22:22 23:14
GO- 6:23 8:21,22
10:25 20:2 21:14
22:5
GOING- 3:13 4:9
12:11 14:3 15:2
16:22 19:23
20:16,25 22:7
23:3
GONE- 5:15
GOOD- 3:1,2 10:3
12:23 15:4 17:4
18:21 19:6,7
25:14
GOT- 13:14,16
14:16
GOVERNMENT- 14:6
GOVERNMENTAL-
7:16,17
GREEN- 14:16
GROUNDS- 16:25
GROW-
3:2,11,15,24
4:2,5,7,14 6:25
7:1,4,6 8:2,13
11:6,7,9 12:2
15:14 16:3,9,21
18:4,6,10,14,18,2
0
GUESS- 14:12

**H**

HAND- 4:5 16:19
18:15 19:19 20:9
HANG- 15:11
HAPPEN- 19:16
HAPPENED- 8:17
12:15
HARRIS- 17:11
HATE- 22:21
HAVEN'T- 6:16
HE'S- 5:6
HEAR- 7:3,19
HEARD- 16:1 18:8

25:8,10
HEARING- 3:5,13
5:6 16:2 19:12
22:18 25:14,17
HELP- 15:9 22:6
24:17
HERE'S- 9:17
14:11
HIGH- 12:14
HIRE- 9:1 11:23
HOLD- 7:18
HOLDER- 8:9
HOLDING- 9:4
HOME- 5:24 6:4
9:9 12:1
13:9,10,20 14:13
16:14 17:21,22
HOMEOWNER'S- 9:7
HONOR'S- 20:20
HOPE- 22:24
HOPEFULLY- 21:14
HOUSE- 14:7
HOUSEHOLD- 11:21
HOUSEKEEPING-
19:1
HOUSING- 15:16,25

**I**

IE- 14:22
ILOG- 16:3
IMPROVIDENCE-
23:13
INC- 25:24
INCREASE- 24:4
INDELICATO- 21:3
INDICATED-
17:9,13 23:10
INDIVIDUAL- 11:14
INDIVIDUALS-
11:14
INFORM- 22:21
INFORMATION-
14:18 17:2
INSTRUCTIONS- 5:5
INSUFFICIENT-
15:17
INSURANCE- 5:21
6:8 9:7
INTEND- 20:1
INTENTION-
22:1,15
INTEREST- 4:21
9:5
INTERIM- 18:24
20:15
22:4,5,19,23
INTERNAL- 9:11
INTRODUCE- 19:2
INVOICES- 9:3
ISD- 17:11
ISN'T- 8:3
ISSUE- 13:23
ISSUES- 19:14
5:2,3,14,16,17,18
,19
IT'S- 3:12 4:10
8:5 9:23 10:1
11:25 12:15
14:1,18 16:10

20:12 23:14
24:8,22,25 25:5
ITEM- 3:7,11,16
4:7,14 18:23
23:6,22
ITEMS- 3:5 5:20

**J**

JACOB- 19:2
JENNIFER- 17:13
JERSEY- 17:10
JULY- 17:5
JUNE- 25:23

**K**

KENNETH- 17:19
KILPATRICK- 20:3
KNOWS- 20:24

**L**

LACK- 9:20,22
13:11
LATE- 3:21
LAUGHTER- 21:23
LAWYER- 14:23,24
LEASE- 11:10,16
LEE- 17:10
LENDS- 8:23
LET'S- 21:18,20
LETTER- 14:15
LETTERS- 14:14
LEVIN'S- 17:1
LIABILITIES- 8:12
9:15
LIABILITY- 5:2
8:3
LIEN- 14:7
LIMIT- 22:3,7
LIST- 10:19
LISTED- 4:10
LOAN- 12:16
LOANS- 8:11 9:12
LOCAL- 14:21
LONGER- 20:22
LOOK- 7:18
LOOKING- 12:5
LOST- 13:14 17:21
LOTSOFF- 16:11,16
LUKE- 17:13
LYTWYN-
4:17,18,20,24
5:4,8,9,10,13
7:3,6,9,11,16,20,
24
6:14,18,21,24
8:14,16,20,25
9:22 10:6 11:2
12:3,8,9,18,20
13:1,3,6,12,18,21
14:8,10,23
15:2,5,9,12
LYTWYN'S- 8:7

**M**

MAKING- 8:16
9:4,5 19:15
MANY- 22:8
MARK- 4:10
MARKED- 4:8 16:22

17:8
**MATTER-** 20:14 21:1,25 25:21
**MATTERS-** 19:1
**MEANS-** 10:16,17
**MEMORY-** 8:10
**MESS-** 13:11
**MIC-** 7:2
**MILESTONE-** 20:3 23:6,9,22,24 24:1,12 25:4
**MODIFICATION-** 24:4
**MODIFIED-** 18:13
**MODIFY-** 21:6 24:12
**MODIFYING-** 23:25
**MOMENTARILY-** 4:5
**MONEY-** 5:3 6:6,10,12,22 7:1,6 8:6,23,24 9:3,18 11:16 12:24 13:24 15:8
**MONTH-** 4:11 13:17
**MONTHLY-** 12:17 23:15,24 24:4,8
**MORNING-** 3:1,2 18:21 19:6,7
**MORTGAGE-** 5:24 6:4,13 8:9,17,23 9:9,13 12:1 13:9,11 14:7,14 16:14 17:21,23
**MOVE-** 3:15
**MOVING-** 15:14 16:3 17:6
**MUCH-** 3:9

N

**NATHAN-** 3:2
**NECESSARILY-** 9:25
**NECESSARY-** 23:13
**NEEDED-** 24:17
**NEVER-** 6:23
**NEW-** 8:21 13:16 17:10
**NEWS-** 10:4 12:23
**NONETHELESS-** 12:15
**NORMAL-** 6:13
**NORMALLY-** 10:9 22:24
**NOTICE-** 6:18,19
**NOTWITHSTANDING-** 16:25
**NUESSIS-** 17:12
**NUMBERS-** 20:4,7

O

**OBJECT-** 3:21 4:21
**OBJECTED-** 3:20 4:19 15:16 17:19,24
**OBJECTION-** 3:8,16,17 4:8,15,16 15:13,15,23 16:2,4,5,8,22,25 17:7,8,16 18:9,12

**OBJECTIONS-** 3:7,15
**OBLIGATION-** 9:14 11:19
**OBLIGATIONS-** 8:11
**OBVIOUSLY-** 23:2 24:24
**OCCURRED-** 7:22
**OCCURS-** 24:5
**OCTOBER-** 8:4 9:14
**OMNIBUS-** 3:16 4:7,15 15:15 16:4,22 17:7
**ONE-** 3:13 6:1 16:23,24 17:18 23:22
**ONGOING-** 11:19
**OPPORTUNITY-** 23:11
**OPPOSE-** 15:21
**OPPOSED-** 10:17 12:24
**OPTION-** 24:24
**ORDEAL-** 5:24
**ORDER-** 3:9,19,24 4:4,11 16:10,18 18:14 20:7,9,21 21:6,16,25 22:2 24:11 25:3,4,11
**OUTRIGHT-** 13:24
**OVERALL-** 24:7
**OVERY-** 20:2
**OWED-** 7:7
**OWING-** 5:1
**OWN-** 5:15 8:23 9:11
**OWNED-** 9:12
**OWNS-** 9:25

P

**PAID-** 4:25 5:1 6:5,13,15,16,17 10:1,5,14,15,17,1 8 8:24 12:4
**PALMER-** 16:11,16
**PARTICIPATE-** 5:5 22:20
**PARTICULAR-** 5:20
**PARTICULARLY-** 12:13
**PASSED-** 15:19
**PAUSE-** 7:21 11:5 18:17
**PAY-** 6:1 12:23 14:4,5,6
**PAYING-** 6:7 9:6 13:23
**PAYMENT-** 6:13 8:6 23:24
**PAYOUT-** 12:13
**PEOPLE-** 11:23
**PERCENTAGE-** 10:18 12:25
**PERFORM-** 9:11
**PERIOD-** 22:11,20 24:6
**PERSON-** 5:6
**PETER-** 4:17 5:10

**PHONE-** 5:7 15:24
**PLAN-** 18:1
**PODIUM-** 18:19
**PORTION-** 4:20
**POSSIBILITY-** 21:13
**PREPARED-** 20:9
**PRESENT-** 15:25
**PRESS-** 22:22
**PRESUMABLY-** 8:5
**PRIMARILY-** 24:19
**PRINCIPAL-** 9:5
**PRIOR-** 5:23 13:7,8
**PRIORITIES-** 10:13,19
**PRIORITY-** 4:23 5:5 7:13,14 10:8 12:11 16:16
**PROBABLY-** 4:9 22:19
**PROBLEM-** 13:10 14:4
**PROCEED-** 23:3
**PROCEEDINGS-** 25:20
**PROFESSIONALS-** 18:24 19:11,25 20:1,22 21:17 22:8
**PROMISED-** 5:24 6:3
**PROPERTY-** 11:10,11,17
**PROPOSE-** 24:21
**PROTECT-** 10:24
**PROVIDED-** 11:21
**PROVIDES-** 23:25
**PROVISION-** 3:19,24 21:6
**PURCHASE-** 8:4 11:10,16,19,20
**PURCHASING-** 11:25 12:1
**PURPOSE-** 5:19 8:8
**PURSUANT-** 18:1
**PURSUE-** 10:5 12:22

Q

**QUESTIONS-** 4:3 18:11 20:10

R

**REASON-** 6:7 7:8
**RECEIPTS-** 14:17
**RECEIVED-** 3:17 14:16,18 15:22 17:7
**RECOMMENDATION-** 19:16
**RECORDING-** 25:20
**REFERRING-** 3:4
**REFLECT-** 3:25
**REFLECTS-** 24:11
**REGARDLESS-** 14:18
**REGISTERED-** 14:14
**REGRET-** 23:1
**REIMBURSED-** 6:10

**REIMBURSEMENT-** 12:5
**REINARD-** 17:19,20 18:7
**REINARD'S-** 17:20,25
**RELATE-** 8:2
**RELEASE-** 14:1
**RELIEF-** 15:22 16:7
**REMAINDER-** 4:23
**REMINDER-** 6:19
**REMOTE-** 21:14
**RENDERED-** 5:18 19:2,5,6,9,10,13, 24
**RENICK-** 20:6,10,13 23:1,8,10,16,19,2 0 22:9,19 24:10,15,18,23 25:1
**RENTAL-** 11:10,16
**REPORTS-** 19:14
**REPRESENTED-** 5:7
**REQUEST-** 18:12,24
**REQUESTED-** 3:18,20 15:18,22 16:4,7
**REQUIRED-** 23:14
**RESIDENTIAL-** 4:8
**RESOLUTION-** 16:20 20:13
**RESOLVE-** 4:16
**RESOLVED-** 4:10,11 20:16
**RESPECT-** 3:19 7:1,6 14:19 16:23 17:14,16 19:15 20:8,19 23:6
**RESPOND-** 16:5 20:10
**RESPONDING-** 16:6
**RESPONSE-** 15:18,20,22 16:1,6 17:1,18,19 18:8 25:10
**RESPONSES-** 3:17 17:8
**RESPONSIBILITIES-** 17:23
**RESPONSIBILITY-** 6:1 10:10
**RESULT-** 9:24 10:16 22:12
**RETAIN-** 24:18,23,24
**RETENTION-** 23:8,25
**RETIREMENT-** 5:19
**REVENUE-** 17:15
**REVIEWED-** 22:4
**RID-** 21:20
**RIGHTS-** 9:13
**ROBBED-** 9:20
**RUNS-** 20:24

S

**SAGO-** 4:12
**SALE-** 24:1
**SAVE-** 3:13
**SCHEME-** 10:8
**SEAN-** 18:19,22
**SECOND-** 7:18
**SEE-** 3:8 6:2
**SEEK-** 24:25
**SENDING-** 9:3 13:16
**SENIOR-** 14:7
**SERIES-** 10:12
**SERVE-** 10:24
**SERVICE-** 4:9 9:13 19:8
**SERVICER-** 8:4,5,9,15 9:17,19 12:1
**SERVICES-** 5:18 11:11,20,25 12:1
**SERVICING-** 8:10 9:2,12,15 12:16 14:14
**SET-** 5:19
**SETS-** 10:12
**SEVERAL-** 17:7,9,24
**SEWER-** 9:8
**SHOW-** 24:10
**SIGN-** 4:4 25:9
**SIGNED-** 3:9 14:16
**SILENCE-** 7:19
**SITTING-** 20:5
**SITUATION-** 12:11
**SIZE-** 22:22
**SLIGHTLY-** 23:24 24:4
**SMALL-** 10:18 12:24
**SOLD-** 9:13
**SORTS-** 13:14
**SOUND-** 25:20
**SOUNDS-** 9:18 15:4
**SPECIAL-** 10:21 12:10
**SPECIFIC-** 10:19
**STANDARD-** 23:13
**STARGATT-** 3:3
**START-** 13:15
**STATE-** 17:10
**STATEMENTS-** 19:21
**STATING-** 3:19 19:14
**STOCK-** 5:15,17 17:22
**STOCKHOLDER-** 4:18 17:21
**STOCKTON-** 20:3
**STOP-** 21:7
**SUBMITTED-** 22:1
**SUBMITTING-** 22:2 23:7,17
**SUBORDINATED-** 18:1
**SUCCESS-** 24:2,5
**SUPPOSED-** 6:23
**SURVIVING-** 3:21

**SUSTAIN-** 15:13,23
16:2,8,25 18:9,13
**SUSTAINED-** 18:12

**T**

**TAKING-** 4:12 9:14
10:25
**TARRANT-** 17:12
**TAXES-** 4:24 5:21
6:2,5,7,15 7:15
8:2 9:6,8 11:11
12:4 13:24
14:4,5,6
**TAXING-** 6:16 12:4
**TAYLOR-** 3:3
**TELEPHONE-** 5:6
**TELLING-** 8:18,20
**TENNESSEE-** 17:14
**TERMS-** 19:16,24
23:8 24:3,12
**THANKS-** 15:9
**THOROUGH-** 22:24
**TIL-** 17:5
**TIME-** 14:15 16:5
22:17 24:5
**TIMELY-** 3:22
**TODAY-** 4:16 5:6
15:10 16:23 18:24
19:4,12,23 20:2,9
23:7,17
**TOOK-** 9:15,17
**TRANSCRIPT-** 25:19
**TRANSCRIPTS-**
25:24
**TRAXI-** 20:3 25:6
**TREATS-** 11:9
**TURN-** 18:18
**TWO-** 5:25 8:17
13:23 16:9 22:7
**TYPES-** 10:21

**U**

**UNDERSTANDING-**
5:16 23:17
**UNDERSTOOD-**
21:15,24
**UNFORTUNATELY-**
10:23 12:13
13:15,22 14:10
20:4
**UNLESS-** 4:2 18:11
**UNLIKELY-** 14:5
**UNPAID-** 10:20
**UNREVIEWED-** 22:17
**UNSECURED-** 5:4
7:10 10:11,13,15
11:13 12:12 15:6

**V**

**VALUE-** 17:22
**VIEW-** 23:10
**VIRGINIA-**
15:15,25

**W**

**WAGES-** 10:20
**WASN'T-** 23:13
**WAYS-** 9:10
**WE'RE-** 3:12 4:12

19:23 20:9 23:3
**WEINER-** 20:2
**WELCOME-** 3:10
15:11 19:5,9
**WHEREUPON-** 25:17
**WHO'S-** 19:3
**WHOLE-** 5:24
**WILL-** 4:5 17:4
21:21 22:15,18
23:2,11,18 24:1
**WILLING-** 5:3 7:9
**WISH-** 15:7 24:23
25:8
**WITHDRAWAL-** 17:16
**WON'T-** 7:10 13:25
21:14
**WORD-** 9:21,22
13:11
**WORKERS-** 10:20
**WRONGFULLY-** 8:7

**Y**

**YEARS-** 13:23 22:7
**YOU'D-** 10:17
19:19 21:6
**YOU'LL-** 12:23
15:6
**YOU'RE-** 3:10 8:20
11:24 12:17 15:11
19:9 21:6
**YOU'VE-** 13:16