# Exhibit A



Contract# 0317698

b 108966
47348

Date: 8/28/06

# BULLETIN AGREEMENT

Owner Builder Network _____ ("ADVERTISER/AGENCY") hereby contracts with CBS OUTDOOR("CBS OUTDOOR") for the installation and maintenance (the "Service") on the outdoor advertising display(s) descri below upon the terms and conditions set forth herein for a period of __12 MONTHS__, commencing approximately on the estimated start dates* of __12/13/06__. Advertiser/Agency shall provide the advertising copy in the form and type specified by the Company ("Production").

*Showing based programs will be significantly posted within 15 working days of the estimated start date, if Production is supplied by Advertiser/Agency as required by this Agreement, and will continue for the length of the contract term.

| MARKET | LOCATION(S) | # UNITS | D.E.C. | COPY SIZE | COST PER PERIOD |
|---|---|---|---|---|---|
| Stockton, CA | Unit# 40692<br>Hwy 99 500.00 ft S/O Mariposa Rd., Stockton E | 1 | 41.30 | 12' X 40' | $1,070.00 |

APPROVED

ADVERTISER  Owner Builder Network
Client Supplied Production   YES
Extension fabrication_____
Special Instructions:
  Space only. Bulletin illuminated.

TOTAL NET AMOUNT:  $12,840.00
NET AMOUNT PER PERIOD:  $1,070.00

RECEIVED OCT 12 2006
COMPLETED OCT 16 2006

Failure to deliver Production as required by CBS OUTDOOR pursuant to the terms and conditions of this Agreement will result in a delay of up to fifteen working days from receipt of Production or additional costs may be charged by CBS OUTDOOR of not less than $650 per location for expedited installation within five working days of receipt o Production. If Production reaches CBS OUTDOOR after the contracted start date, CBS OUTDOOR shall be entitled for the full contract period even if partial or no display results.

THIS AGREEMENT AND THE COPY TO BE DISPLAYED HEREUNDER IS SUBJECT TO THE APPROVAL OF CBS OUTDOOR AND THE OWNER OF THE LOCATION AS APPLICABLE.

THIS AGREEMENT IS SUBJECT TO THE TERMS CONTAINED ON THIS PAGE AND THE ADDITIONAL TERMS AND CONDITIONS ON PAGE TWO HEREOF INCORPORATED HEREIN BY THIS REFERENCE ADVERTISER/AGENCY ACKNOWLEDGES RECEIPT AND REVIEW OF THIS PAGE AND PAGE TWO HEREOF SETTING OUT THE TERMS AND CONDITIONS A COPY OF WHICH IS AVAILABLE FROM ANY CBS OUTDOOR OFFICE OR REPRESENTATIVE IF LOST OR NOT RECEIVED BY ADVERTISER/AGENCY. FACSIMILE SIGNATURES SHALL HAVE THE SAME FORCE AND EFFECT AS ORIGINAL SIGNATURES. THIS AGREEMENT MAY BE EXECUTED IN SEVERAL COUNTERPARTS, EACH OF WHICH SHALL CONSTITUTE ONE AND THE SAME COPY. ADVERTISER/AGENCY AND THE PERSON SIGNING ON BEHALF OF ADVERTISER/AGENCY REPRESENT AND WARRANT THAT THEY ARE AUTHORIZED TO EXECUTE THE SAME ON BEHALF OF AND BIND THE ADVERTISER/AGENCY AND THAT THE ADVERTISER/ AGENCY APPROVES SAME. THIS AGREEMENT IS NON-CANCELABLE BY ADVERTISER/AGENCY.

CBS OUTDOOR Sales A.E. Dave J. Moran F90
Addtl Sales A.E. _____
CBS OUTDOOR Service A.E. _____
General Manager _____
Date /0/2/06
Shipping Address   CBS Outdoor
                   722 N. Carlton
                   Stockton, CA 95203
                   209-466-5021
                   209-466-6013 Fax

Advertiser/Agency   Owner Builder Network
Print Name _____
Signature _____
Date _____
Address   11511 Kingridge Ct.
          Montgomery, TX 77316
          916-300-7687
          Attn: Don Kline

LOGGED  9:27
CHARTED  VH 9/28
CIP _____
MGR. APPROVAL  10-10
COMM. _____
MISC. _____

TERMS AND CONDITIONS OF ADVERTISING SERVICE

1. The Advertiser agrees to furnish sufficient supply of advertising copy in the form and type specified by the Company. Advertising copy shall be produced in accordance with the Company's exact specifications, at Advertiser's sole cost and expense. Advertiser shall deliver same (at its cost) to the Company or to service points designated by the Company, at least ten (10) business days before the installation date, without expense to the Company or loss of service may occur. If copy is not so received, Company may, at its option leave such space vacant, repeat Advertiser's name, business and address in the space covered by this contract, or post alternative copy in the space and Advertiser agrees to pay for such space. No nudity, pornographic, profane or obscene copy shall be permitted. The character, design, text and illustrations on advertising copy and the material used shall be subject to approval by the Company and also by each location owner or third party that controls such location ("Owner"), and their decision as to acceptability shall be final and without any liability whatsoever to either the Company or Owner. In the event copy is rejected, Advertiser/Agency shall be responsible for providing an acceptable replacement. If production is received after the date specified by Company, Company shall be entitled to full payment for the contract period even if partial or no display results.

2. Should the Advertiser's copy be damaged, defaced, mutilated or spoiled by reason of storm, flood, strike, vandalism, ordinary wear and tear, or any other cause, or if lost or stolen, replacement copy shall be furnished by the Advertiser, upon the Company's request, without liability or expense to the Company. Company is hereby authorized to remove and to leave vacant or to use substitute copy for any display material which may be defaced, damaged or otherwise become deteriorated and for which Advertiser has failed to provide replacements, without liability or expense to Company. It is hereby agreed that non-use of space arising from Advertiser's failure to provide such replacement will not relieve Advertiser from obligation to pay for such space.

3. Advertiser/Agency shall indemnify, defend and save harmless the Company and each Owner concerned against any liability to which they may be subjected by reason of the advertising material displayed under this contract, including, but not limited to, liability for infringement of trademarks, trade names, copyrights, invasion of rights of privacy, defamation, illegal competition or trade practices, as well as all reasonable costs, including attorney's fees and expenses, in defending any such action or actions.

4. Unless otherwise specified on the face hereof, there will be a service charge for all installations on walls and for any changes in display material after initial placement of showing required under this Contract. Company agrees that all designs for displays will be faithfully reproduced and that the displays will be maintained in good condition. Any repainting desired by Advertiser/Agency in addition to that specified herein, if any, shall be paid in accordance with Company's current quoted prices.

5. If any display location is lost during the term hereof, or if it becomes impossible to secure any specified location, or should any display become obstructed, destroyed or defaced, in whole or in part, because of any act or thing beyond Company's control, any resulting loss of advertising shall not be deemed a breach or termination of this Agreement. Lost locations may be replaced with locations of equal value in accordance with Company's prices and classifications. Any resulting loss of advertising service caused by any reason whatsoever, whether from Company's conduct or conduct beyond Company's control, shall be remedied solely by extending the terms of this Agreement to provide an equivalent amount of advertising service at the contracted location or a replacement location of equal value. Notwithstanding anything contained herein to the contrary, Company shall also have the option to terminate this Contract upon the loss of any location resulting from any act or cause beyond Company's control, including any change in law, ordinance, rule or regulation and Company shall be entitled to payment in full for services through the termination date.

6. Illuminated displays shall be illuminated from dusk to midnight unless otherwise indicated. In the event illumination is halted or reduced for any reason whatsoever, including but not limited to by reason of any law, ordinance, regulation or malfunction of equipment, it is hereby agreed that Company's liability to Advertiser/Agency shall be limited to render a credit for the period of non-illumination or reduced illumination at the rate of 15% of the contract price for the period of non-illumination provided Advertiser/Agency shall have first given written notice to Company of the non-illumination problem and such problem continues for more than five (5) days after receipt of such notice by Company. Reduced illumination will be prorated based on the non-illumination credit.

7. Advertiser/Agency shall inspect the display within three (3) days after installation. Unless within such period, Advertiser/Agency gives written notice to Company specifying any defect the display shall be conclusively presumed to have been inspected and approved by Advertiser/Agency for all purposes whatsoever, including content and location of displays.

8. In the event any Owner shall disapprove any advertisement, or in the event of adverse publicity of any nature resulting from the presence of any display, the Company shall have the right to remove said advertisement forthwith. The Advertiser shall be responsible for the payments due during the entire term stated regardless of whether replacement copy is provided. The Company and Advertiser accept this contract subject to all federal, state and municipal laws and regulations with respect to the advertising matter to be displayed. In the event such advertising becomes illegal or a request is received to terminate the advertising, the Company reserves the right to terminate same, but there shall be no short rate charge because of such termination. Furthermore, in the event Company cancels and individual contract(s), Advertiser/Agency's obligation shall cease, except that Agency shall make payment for unamortized cost of embellishments, if any. Company shall not be responsible for copy which has been removed at the request of the Owner or has been terminated as a matter of law.

9. The Agency and Advertiser agree to pay for the advertising service covered by this contract and agree to be jointly and severally liable for payment thereof, including reasonable expenses for collection, attorney's fees and expenses and court costs. The Company reserves the right to cancel this contract at any time upon default by the Advertiser in payment or other breach, or in the event of any material violation on the part of the Advertiser of any of the conditions herein named; and upon such cancellation, all payments for advertising done hereunder, including short term rates or other charges under this contract, and unpaid, shall become immediately due and payable. Company at its option may elect not to terminate this contract, but consider the entire balance of payments to be made under this contract accelerated and immediately due and payable. Waiver by the Company of any specific breach or breaches of this Contract by the Advertiser shall not prejudice the rights of the Company hereunder with respect to any breach or breaches not specifically waived by the Company. In the event of any such breach or breaches, the Company shall be discharged from any obligation to further display the Advertiser's copy and in the event of such suit for the collection of unpaid accounts, all costs of the suit, including reasonable attorney's fees and expenses, may be added to the monies owed. For purposes of this condition, reasonable attorney fees are deemed and accepted to be twenty five percent (25%) of the unpaid account. The Company shall hold the Agency and the Advertiser jointly and severally liable in the event of any default of payment. Should either of the Agency or the Advertiser become bankrupt or be delinquent in payment, Company may proceed hereunder against Advertiser and/or Agency, without relieving either party of its liabilities to Company.

10. Bills will be rendered monthly in advance dating from the commencement date of this contract and Advertiser agrees to make payment net in advance upon receipt of bills. Any bill rendered to the Advertiser shall be conclusive as to the correctness of the items stated therein and shall constitute an account stated unless written objection is made thereto by the Advertiser within fifteen (15) days from the rendering thereof. This conclusive presumption shall apply to both the specifics of the showing and the dollar amount due. Non-receipt of invoices shall not excuse non-payment. Any discounts given shall be forfeited/reversed if related invoices are not paid within 60 days from the date hereof. All rates and adjustments are computed on the basis of thirty (30) days to the month. Default shall be deemed to occur whenever any monthly bills shall be unpaid for thirty (30) days. Payments are subject to late payment charge of one and one-half percent (1.5%) per month (18% per annum), or such lesser amount as permitted by law. Such charge will be added after thirty (30) days. Any Agency commissions which may be due shall be payable by the Advertiser. The Company shall have no liability to pay such commissions. Advertiser shall notify Company of any change in its named Agency. Unless otherwise specified on the face hereof, rate indicated in this contract is not subject to advertising agency commission.

11. The Company shall not be held responsible for unused posters, displays or other copy not called for by the Advertiser within ten (10) days after expiration of contract. After ten (10) days Company may dispose of such materials. The Company shall not be held liable for the return of any poster or display used by it in a showing.

12. This contract is not cancelable or assignable by the Advertiser, nor may the subject of the advertising be changed without the consent of Company.

13. Acceptance of this contract is subject to credit check and approval by Company. Company, in its sole discretion, may extend or reject credit, or at any time during the term, withdraw credit. In such event Company may require payment of the full or partial contract amount be made in advance.

14. All Advertisers will receive ninety (90) days advance notification of any change in advertising rates. Advertiser may terminate as of the effective rate change date by notification at least thirty (30) days prior thereto.

15. Advertiser grants Company permission to promote the Company's own business through the use of Advertiser's, posters or displays in any manner whatsoever.

16. This contract becomes effective when accepted by the Company at its office in New York City, and contains the full agreement of the parties, and no prior representation or assurance, verbal or written not contained herein, shall affect or alter the obligation of either party hereto.

17. As used in this Agreement the term Advertiser@ shall include Advertising Agency, or any other agent or licensee of Advertiser, as well as the Advertiser.

18. Company is an equal opportunity employer.

19. In the event of legal action arising out of this Contract, including but not limited to claims for non-payment, New York County, New York shall be the exclusive jurisdiction and venue for said action. This Contract and all claims arising hereunder shall be construed according to the laws of the State of New York.

X _____



# CBS OUTDOOR

## BULLETIN AGREEMENT

Contract # 0367066                                                        Date: 03/22/07

/010190
31815

__Owner Builder Network__ ("ADVERTISER/AGENCY") hereby contracts with CBS OUTDOOR ("CBS") for the installation & maintenance (the "Service") on the outdoor advertising display(s) described below upon the terms and conditions set forth herein for a period of __13   4 Week(s)__, commencing approximately on the estimated start dates* of __07/30/07__. Advertiser/Agency shall provide the advertising copy in the form and type specified by the Company ("Production").

*Showing based programs will be significantly posted within 5 working days of the estimated start date, if Production is supplied by Advertiser/Agency as required by this Agreement, and will continue for the length of the contact term.

| MARKET | LOCATION(S) | # UNIT | D.E.C. | COPY SIZE | COST PER PERIOD |
|---|---|---|---|---|---|
| Sacramento, CA | Unit # 5545A<br>Ss Hwy 50 6.20 mi E/O Placerville F/E | 1 | 12.4 | 12x24 | $951.00 |
| Sacramento, CA | Unit # 5542<br>/L & /O Rte 80 NI .5 M F/E | 1 | 28.8 | 12x24 | $914.00 |

APPROVED

COMPLETED MAY - 2 2007

| ADVERTISER | Owner Builder Network | TOTAL NET AMOUNT: | $24,245.00 |
|---|---|---|---|
| Client Supplied Production | Yes | NET AMOUNT PER PERIOD: | $1,865.00 |
| Extension fabrication | | | |

ONE TIME CHARGE PER SQUARE FOOT

**Special Instructions**
Space only. Double Invoice is June 2008.                              APR 2 7 2007

Failure to deliver Production as required by CBS pursuant to the terms and conditions of this Agreement will result in a delay of up to fifteen working days from receipt of Production or additional costs may be charged by CBS of not less than $650 per location for expedited installation within five working days of receipt of Production. If Production reaches CBS after the contracted start date, CBS shall be entitled to payment for the full contract period even if partial or no display results.

THIS AGREEMENT AND THE COPY TO BE DISPLAYED HEREUNDER IS SUBJECT TO THE APPROVAL OF CBS OUTDOOR AND THE OWNER OF THE LOCATION AS APPLICABLE.

THIS AGREEMENT IS SUBJECT TO THE TERMS CONTAINED ON THIS PAGE AND THE ADDITIONAL TERMS AND CONDITIONS ON PAGE TWO HEREOF, INCORPORATED HEREIN BY THIS REFERENCE ADVERTISER/AGENCY ACKNOWLEDGES RECEIPT AND REVIEW OF THIS PAGE AND PAGE TWO HEREOF SETTING OUT THE TERMS AND CONDITIONS A COPY OF WHICH IS AVAILABLE FROM ANY CBS OUTDOOR OFFICE OR REPRESENTATIVE IF LOST, OR NOT RECEIVED BY ADVERTISER/AGENCY. FACSIMILE SIGNATURES SHALL HAVE THE SAME FORCE AND EFFECT AS ORIGINAL SIGNATURES. THIS AGREEMENT MAY BE EXECUTED IN SEVERAL COUNTERPARTS, EACH OF WHICH SHALL CONSTITUTE ONE AND THE SAME COPY. ADVERTISER/AGENCY AND THE PERSON SIGNING ON BEHALF OF ADVERTISER/AGENCY REPRESENT AND WARRANT THAT THEY ARE AUTHORIZED TO EXECUTE THE SAME ON BEHALF OF AND BIND THE ADVERTISER/AGENCY AND THAT THE ADVERTISER/AGENCY APPROVES SAME. THIS AGREEMENT IS NON-CANCELABLE BY ADVERTISER/AGENCY.

| CBS OUTDOOR Sales A.E. Dave J. Moran F90 | ADVERTISER/AGENCY Owner Builder Network |
|---|---|
| Additional Sales A.E. | Print Name  BRANE Sheehy |
| CBS OUTDOOR Service A.E. | Signature |
| General Manager | Date  4-10-7 |
| Date 4/23/07 | Address C/O American Home Mortgage |
| Shipping Address CBS Outdoor | 15327 Gulf Fwy Ste. A |
| 1745 Enterprise Blvd. | Houston, TX 77034 |
| West Sacramento, CA 95605  LOGGED 4.18 | |
| 916-372-8252     CHARTED  BS 4/16 | |
| 916-372-8601 Fax    CIP | |
|            MGR. APPROVAL 4.25 | |
|            COMM. | |
|            MISC. | |

## TERMS AND CONDITIONS OF ADVERTISING SERVICE

1. The Advertiser agrees to furnish sufficient supply of advertising copy in the form and type specified by the Company. Advertising copy shall be produced in accordance with the Company's exact specifications, at Advertiser's sole cost and expense. Advertiser shall deliver same (at its cost) to the Company or to service points designated by the Company, at least ten (10) business days before the installation date, without expense to the Company or loss of service may occur. If copy is not so received, Company may, at its option leave such space vacant, repeat Advertiser's name, business and address in the space covered by this contract, or post alternative copy in the space and Advertiser agrees to pay for such space. No nudity, pornographic, profane or obscene copy shall be permitted. The character, design, text and illustrations on advertising copy and the material used shall be subject to approval by the Company and also by each location owner or third party that controls such location ("Owner"), and their decision as to acceptability shall be final and without any liability whatsoever to either the Company or Owner. In the event copy is rejected, Advertiser/Agency shall be responsible for providing an acceptable replacement. If production is received after the date specified by Company, Company shall be entitled to full payment for the contract period even if partial or no display results.

2. Should the Advertiser's copy be damaged, defaced, mutilated or spoiled by reason of storm, flood, strike, vandalism, ordinary wear and tear, or any other cause, or if lost or stolen, replacement copy shall be furnished by the Advertiser, upon the Company's request, without liability or expense to the Company. Company is hereby authorized to remove and to leave vacant or to use substitute copy for any display material which may be defaced, damaged or otherwise become deteriorated and for which Advertiser has failed to provide replacements, without liability or expense to Company. It is hereby agreed that non-use of space arising from Advertiser's failure to provide such replacement will not relieve Advertiser from obligation to pay for such space.

3. Advertiser/Agency shall indemnify, defend and save harmless the Company and each Owner concerned against any liability to which they may be subjected by reason of the advertising material displayed under this contract, including, but not limited to, liability for infringement of trademarks, trade names, copyrights, invasion of rights of privacy, defamation, illegal competition or trade practices, as well as all reasonable costs, including attorney's fees and expenses, in defending any such action or actions.

4. Unless otherwise specified on the face hereof, there will be a service charge for all installations on walls and for any changes in display material after initial placement of showing required under this Contract. Company agrees that all designs for displays will be faithfully reproduced and that the displays will be maintained in good condition. Any repainting desired by Advertiser/Agency in addition to that specified herein, if any, shall be paid in accordance with Company's current quoted prices.

5. If any display location is lost during the term hereof, or if it becomes impossible to secure any specified location, or should any display become obstructed, destroyed or defaced, in whole or in part, because of any act or thing beyond Company's control, any resulting loss of advertising shall not be deemed a breach or termination of this Agreement. Lost locations may be replaced with locations of equal value in accordance with Company's prices and classifications. Any resulting loss of advertising service caused by any reason whatsoever, whether from Company's conduct or conduct beyond Company's control, shall be remedied solely by extending the terms of this Agreement to provide an equivalent amount of advertising service at the contracted location or a replacement location of equal value. Notwithstanding anything contained herein to the contrary, Company shall also have the option to terminate this Contract upon the loss of any location resulting from any act or cause beyond Company's control, including any change in law, ordinance, rule or regulation and Company shall be entitled to payment in full for services through the termination date.

6. Illuminated displays shall be illuminated from dusk to midnight unless otherwise indicated. In the event illumination is halted or reduced for any reason whatsoever, including but not limited to by reason of any law, ordinance, regulation or malfunction of equipment, it is hereby agreed that Company's liability to Advertiser/Agency shall be limited to render a credit for the period of non-illumination or reduced illumination at the rate of 15% of the contract price for the period of non-illumination provided Advertiser/Agency shall have first given written notice to Company of the non-illumination problem and such problem continues for more than five (5) days after receipt of such notice by Company. Reduced illumination will be prorated based on the non-illumination credit.

7. Advertiser/Agency shall inspect the display within three (3) days after installation. Unless within such period, Advertiser/Agency gives written notice to Company specifying any defect the display shall be conclusively presumed to have been inspected and approved by Advertiser/Agency for all purposes whatsoever, including content and location of displays.

8. In the event any Owner shall disapprove any advertisement, or in the event of adverse publicity of any nature resulting from the presence of any display, the Company shall have the right to remove said advertisement forthwith. The Advertiser shall be responsible for the payments due during the entire term stated regardless of whether replacement copy is provided. The Company and Advertiser accept this contract subject to all federal, state and municipal laws and regulations with respect to the advertising matter to be displayed. In the event such advertising becomes illegal or a request is received to terminate the advertising, the Company reserves the right to terminate same, but there shall be no short rate charge because of such termination. Furthermore, in the event Company cancels and individual contract(s), Advertiser/Agency's obligation shall cease, except that Agency shall make payment for unamortized cost of embellishments, if any. Company shall not be responsible for copy which has been removed at the request of the Owner or has been terminated as a matter of law.

9. The Agency and Advertiser agree to pay for the advertising service covered by this contract and agree to be jointly and severally liable for payment thereof, including reasonable expenses for collection, attorney's fees and expenses and court costs. The Company reserves the right to cancel this contract at any time upon default by the Advertiser in payment or other breach; or in the event of any material violation on the part of the Advertiser of any of the conditions herein named; and upon such cancellation, all payments for advertising done hereunder, including short term rates or other charges under this contract, and unpaid, shall become immediately due and payable. Company at its option may elect not to terminate this contract, but consider the entire balance of payments to be made under this contract accelerated and immediately due and payable. Waiver by the Company of any specific breach or breaches of this Contract by the Advertiser shall not prejudice the rights of the Company hereunder with respect to any breach or breaches not specifically waived by the Company. In the event of any such breach or breaches, the Company shall be discharged from any obligation to further display the Advertiser's copy and in the event of such suit for the collection of unpaid accounts, all costs of the suit, including reasonable attorney's fees and expenses, may be added to the monies owed. For purposes of this condition, reasonable attorney fees are deemed and accepted to be twenty five percent (25%) of the unpaid account. The Company shall hold the Agency and the Advertiser jointly and severally liable in the event of any default of payment. Should either of the Agency or the Advertiser become bankrupt or be delinquent in payment, Company may proceed hereunder against Advertiser and/or Agency, without relieving either party of its liabilities to Company.

10. Bills will be rendered monthly in advance dating from the commencement date of this contract and Advertiser agrees to make payment net in advance upon receipt of bills. Any bill rendered to the Advertiser shall be conclusive as to the correctness of the items stated therein and shall constitute an account stated unless written objection is made thereto by the Advertiser within fifteen (15) days from the rendering thereof. This conclusive presumption shall apply to both the specifics of the showing and the dollar amount due. Non-receipt of invoices shall not excuse non-payment. Any discounts given shall be forfeited/reversed if related invoices are not paid within 60 days from the date hereof. All rates and adjustments are computed on the basis of thirty (30) days to the month. Default shall be deemed to occur whenever any monthly bills shall be unpaid for thirty (30) days. Payments are subject to late payment charge of one and one-half percent (1.5%) per month (18% per annum), or such lesser amount as permitted by law. Such charge will be added after thirty (30) days. Any Agency commissions which may be due shall be payable by the Advertiser. The Company shall have no liability to pay such commissions. Advertiser shall notify Company of any change in its named Agency. Unless otherwise specified on the face hereof, rate indicated in this contract is not subject to advertising agency commission.

11. The Company shall not be held responsible for unused posters, displays or other copy not called for by the Advertiser within ten (10) days after expiration of contract. After ten (10) days Company may dispose of such materials. The Company shall not be held liable for the return of any poster or display used by it in a showing.

12. This contract is not cancelable or assignable by the Advertiser, nor may the subject of the advertising be changed without the consent of Company.

13. Acceptance of this contract is subject to credit check and approval by Company. Company, in its sole discretion, may extend or reject credit, or at any time during the term, withdraw credit. In such event Company may require payment of the full or partial contract amount be made in advance.

14. All Advertisers will receive ninety (90) days advance notification of any change in advertising rates. Advertiser may terminate as of the effective rate change date by notification at least thirty (30) days prior thereto.

15. Advertiser grants Company permission to promote the Company's own business through the use of Advertiser's, posters or displays in any manner whatsoever.

16. This contract becomes effective when accepted by the Company at its office in New York City, and contains the full agreement of the parties, and no prior representation or assurances, verbal or written not contained herein, shall affect or alter the obligation of either party hereto.

17. As used in this Agreement the term Advertiser@ shall include Advertising Agency, or any other agent or licensee of Advertiser, as well as the Advertiser.

18. Company is an equal opportunity employer.

19. In the event of legal action arising out of this Contract, including but not limited to claims for non-payment, New York County, New York shall be the exclusive jurisdiction and venue for said action. This Contract and all claims arising hereunder shall be construed according to the laws of the State of New York.

X _____