IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------ x
In re:                                             :    Chapter 11
                                                   :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,             :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,¹                   :
                                                   :    Jointly Administered
                                                   :
                          Debtors.                 :    Objection Deadline: August 3, 2009, at 4:00 p.m. (ET)
                                                   :    Hearing Date: August 11, 2009 at 10:30 p.m. (ET)
------------------------------------------------------------------ x
```

**DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(a) FOR AN ORDER AUTHORIZING AND APPROVING STIPULATION WITH AHM SPV II, LLC AND BANK OF AMERICA NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE, RESOLVING ALL CLAIMS AND DISPUTES RELATING TO THE BROADHOLLOW PROPERTY**

AHM Holdings, a Delaware corporation, and certain of its affiliates, debtors and

debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), by

this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules

of Bankruptcy Procedure ("Bankruptcy Rules") and sections 105(a) and 363 of Title 11 of the

United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") approving the stipulation

attached as Exhibit A to the proposed form of order (the "Stipulation") by and among debtors

AHM Holdings and American Home Mortgage Corp. ("AHM Corp." and together with AHM

Holdings, the "Debtor Parties"), non-debtor AHM SPV, II (the "SPV"), and Bank of America

National Association, successor by merger to LaSalle Bank National Association (the "Trustee"),

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities

Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-PNC1 (the "Trust").  In

support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

2.      The SPV is a non-debtor, Delaware limited liability company wholly

owned by AHM Corp.  In November 2003, the Debtors, through the SPV, undertook a series of

transactions to acquire ownership of their corporate headquarters located at 538 Broadhollow

Road, Melville, New York (the "Broadhollow Property") for the approximate amount of $26.5

million.

3.      Contemporaneously with the acquisition of the Broadhollow Property, the

SPV (i) sold the property to the Suffolk County Industrial Development Authority (the "IDA"),

(ii) leased the property from the IDA pursuant to that certain Lease Agreement dated November

1, 2003 (the "Master Lease") for a term ending on January 31, 2015, and (iii) subleased the

property to AHM Corp. pursuant to that certain Agreement of Lease dated November 24, 2003

(the "Sublease").

4.      The SPV, AHM Corp. and the IDA are parties to that certain Payment-In-

Lieu-Of-Tax Agreement dated November 1, 2003 (the "PILOT Agreement") which provided for

the payment of certain taxes and assessments with respect to the Broadhollow Property jointly

and severally by the SPV and AHM Corp., notwithstanding the tax-exempt status of the IDA as the owner of record of the Broadhollow Property.

5.  Financing for the SPV's acquisition of and improvements to the Broadhollow Property was provided by JP Morgan Chase Bank ("JP Morgan"), and is evidenced by a promissory note from the SPV (the "Note"). The Note was guaranteed by AHM Holdings (the "Guaranty") and is secured by a mortgage of the IDA's and the SPV's respective interests in the Broadhollow Property (the "Mortgage"), including a collateral assignment of rents from the Broadhollow Property.

6.  JP Morgan assigned the Note, the Mortgage, the Guaranty, and all related loan documents (collectively, the "Loan Documents") to the Trust, which issued commercial mortgage-backed securities to be paid from the proceeds of the Note.

7.  On August 6, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code.

8.  Since the Petition Date, AHM Corp has continued to occupy a portion of the Broadhollow Property. By Order dated November 26, 2007, the Court extended the deadline pursuant to section 365(d)(4) of the Bankruptcy Code to assume or reject the Sublease to March 3, 2008. By Order dated February 26, 2008 [D.I. 3081] the Court approved a stipulation between AHM Corp. and the SPV extending the section 365(d)(4) deadline through and including the earlier of (i) the effective date of a chapter 11 plan for AHM Corp. or (ii) forty-five days after conversion of AHM Corp.'s chapter 11 case to a case under chapter 7.

9.  AHM Corp. stopped paying rent to the SPV under the Sublease as of November 2008, asserting a right to set off with respect to approximately $13.6 million in inter-

company receivables shown on AHM's books as due and owing from the SPV to AHM Corp. (the "Setoff Claims").

10.    On February 23, 2009 (the "Plan Confirmation Date"), the Court entered an order [D.I. 7042] (as subsequently amended, the "Plan Confirmation Order") confirming the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan"). The Plan provides that executory contracts and unexpired leases not assumed prior or pursuant to the Plan (including, without limitation, the Sublease and the PILOT Agreement), will be rejected on the effective date of the Plan (the "Plan Effective Date"), *nunc pro tunc* to the Plan Confirmation Date. As of the date hereof, the Plan Effective Date has not yet occurred.

11.    The SPV has not made the payments due under the Loan Documents from November 2008 and thereafter. The Trustee has indicated it intends to bring a foreclosure action (the "Foreclosure Action") against, among others, AHM Corp., the SPV, and the IDA, with respect to the Broadhollow Property. The Trustee also disputes the validity of the Setoff Claims and asserts that the SPV has a valid, enforceable administrative expense claim against AHM Corp for unpaid post-petition rent (the "Administrative Rent Claim"), which would be enforceable by the Trustee by virtue of the collateral assignment of rents.

12.    The Debtor Parties, the SPV, and the Trustee (collectively, the "Parties") desire to avoid costly litigation concerning the Administrative Rent Claim, the Setoff Claims, and the Guaranty claim, and believe that AHM Corp.'s continued occupation of a portion of the Broadhollow Property and cooperation in a marketing and sale process would be beneficial for all involved. To this end, the Parties have engaged in good-faith, arm's-length settlement negotiations to attempt to reconcile their positions and, as a result of such negotiations, have

reached an agreement, embodied in the Stipulation, which the Debtors believe represents a fair
and reasonable compromise in light of the costs, uncertainties, and risks attendant to litigation.

## THE STIPULATION

13.    The principal terms of the Stipulation are set forth below:[2]

a.    <u>Effectiveness.</u>  The Stipulation shall become effective immediately upon
entry of an order by the Bankruptcy Court approving the Stipulation (the
"<u>Stipulation Approval Order</u>").  In the event the Stipulation Approval
Order is not entered within 30 days after execution of the Stipulation by
all the Parties, the Stipulation shall be null and void unless extended by
agreement of the Parties in writing.

b.    <u>Termination of Sublease.</u>  Subject to entry of the Stipulation Approval
Order, the Sublease shall be deemed rejected and terminated effective as
of 11:59 p.m. (ET) on March 31, 2009 (the "<u>Sublease Termination Date</u>"),
at which time (i) AHM Corp shall be deemed to have surrendered the
Broadhollow Property to the SPV, and (ii) the SPV shall be deemed to
have accepted such surrender.  Any sub-subleases between AHM Corp.
and other third-party subtenants will be recognized by the SPV so as to
become a direct sublease with the SPV upon the same terms and
conditions as set forth in the subtenant's sub-sublease with AHM Corp.

c.    <u>License Agreement between AHM Corp. and the SPV.</u>  Subject to the
entry of the Stipulation Approval Order, and effective *nunc pro tunc* to
April 1, 2009, the SPV shall license certain office and warehouse space at
the Broadhollow Property (the "<u>Facilities</u>") to AHM Corp. pursuant to the
License Agreement attached as Exhibit A to the Stipulation (the "<u>License
Agreement</u>") and discussed more fully below.  In the event of a default by
AHM Corp. under the License Agreement, the automatic stay shall be
deemed modified to the extent necessary to permit the SPV and its
successors and assigns (including, without limitation, the Trustee), to
exercise any and all remedies available under the License Agreement or
otherwise under applicable law without prior application to, or order of,
this Court.  Any claim of the SPV or its successors or assigns (including,
without limitation, the Trustee) for damages arising from a breach of
AHM Corp.'s obligation to pay the License Fee under the License
Agreement shall be entitled to administrative expense priority pursuant to
sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.  The Trustee
agrees that, so long as AHM Corp. is not in default of the License

---

[2] The terms of the Stipulation set forth herein are a summary only, and all terms not defined herein shall be given
the meanings ascribed to them in the Stipulation.  To the extent of any inconsistency between this summary and the
Stipulation, the terms of the Stipulation shall govern.

Agreement, AHM Corp.'s right to quiet possession of the Facilities under the terms of the License Agreement will not be disturbed, diminished or interfered with by the Trustee in the exercise of its remedies under the Mortgage.

d.    Settlement Payment; Mutual Releases.  AHM Corp. agrees to pay the SPV the sum of $75,000 (the "Settlement Payment"), to be credited against amounts due and payable to AHM Corp. under the Stipulation.  The Parties agree to mutual releases of any and all claims relating to the Broadhollow Property (other than claims arising under the License Agreement or the Stipulation), including, but not limited to, claims (i) arising from rejection of the Sublease, (ii) for damages resulting from the termination of the Sublease, (iii) relating to obligations of AHM Corp. under the Sublease arising from and after the Petition Date, through and including the Sublease Termination Date (including, without limitation, the Administrative Rent Claim), (iv) for contribution or reimbursement from AHM Corp. with respect to amounts paid or payable under the PILOT Agreement, (v) arising from rejection of the PILOT Agreement, or (vi) arising under the Guaranty.

e.    Cooperation with Sale and/or Foreclosure Action.  AHM Corp. shall cause the SPV to engage the services of a property manager and a real-estate broker reasonably acceptable to the Trustee, with respect to the ongoing management and leasing and/or sale of the Broadhollow Property (the "Property Activities").  AHM Corp. shall cooperate (and shall cause the SPV to cooperate) reasonably and in good faith with the property manager, the broker, and the Trustee to effectuate a sale of the Broadhollow Property and/or a foreclosure upon the Mortgage and shall not oppose any foreclosure action except to the extent necessary to protect its rights to quiet possession of the Facilities pursuant to the License Agreement.  AHM Corp. shall have no responsibility or liability whatsoever with respect to the payment of the property manager or the broker, or any liability, costs or expenses attributable to the Property Activities.

f.    Cooperation Regarding the IDA.  The Parties shall use commercially reasonable efforts (but shall not be required to make any payment or commence any litigation) to cause the IDA to transfer the Broadhollow Property to the SPV and to obtain waivers and releases from the IDA for the benefit of all the Parties.

g.    Indemnification of AHM Corp.; Limitation of Liability.  Subject to entry of the Stipulation Approval Order, the SPV shall indemnify and hold harmless AHM Corp. against any and all liability, claims, suits, losses, costs and legal fees arising from and after April 1, 2009, relating to the Broadhollow Property.  AHM Corp. shall be entitled to reimbursement from the SPV or the Trust for amounts expended prior to entry of the

Stipulation Approval Order for utilities, maintenance, waste removal, cleaning, lawn care, security, and fire alarm relating to the Broadhollow Property which accrued from and after April 1, 2009, as set forth more fully in Schedule 2 to the Stipulation. The Trustee agrees to pay all reasonable out-of-pocket costs and expenses (including, but not limited to, attorneys' fees) incurred by AHM Corp. from and after April 1, 2009, with respect to the Broadhollow Property (including, without limitation, in connection with AHM Corp.'s performance of its obligations under paragraphs 5, 6, and 9 of the Stipulation); provided, however, that the Trustee shall have no obligation to indemnify AHM Corp. for any costs or expenses incurred negotiating, drafting, or obtaining Court approval of the Stipulation and the License Agreement. Any reimbursement to which AHM Corp. is entitled pursuant to the Stipulation may take the form of a setoff or credit against any amounts otherwise payable to the SPV or the Trustee under the Stipulation or the License Agreement.

h.   Advances by the Trust; Real Estate Tax Refunds. To the extent not already provided in the Loan Documents, (i) any advances made by or on behalf of the Trust relating to the Broadhollow Property shall constitute additional indebtedness secured by the Mortgage (provided, however, that any rents collected by or on behalf of the Trust relating to the Broadhollow Property shall constitute a credit against such indebtedness); and (ii) all right, title, and interest of the SPV in and to any real estate tax refund relating to the Broadhollow Property shall be assigned to the Trustee as additional security for the indebtedness secured by the Mortgage.

**THE LICENSE AGREEMENT**

14.   The principal terms of the License Agreement are set forth below:[3]

a.   Parties. AHM Corp., the SPV, and the Trustee.

b.   Term; Licensed Premises. AHM Corp. shall be entitled to use and occupy approximately 8,896 square feet of office space and approximately 13,000 square feet of storage space, together with the exclusive use of twenty parking spaces as described more fully in the License Agreement, for a term commencing on April 1, 2009, and ending September 30, 2009 (as may be extended, the "License Period"), subject to automatic extension on a month-to-month basis. The License Period may be terminated by AHM Corp. or the Trustee upon no less than thirty days' prior written notice.

---

[3] The terms of the License Agreement set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the License Agreement. To the extent of any inconsistency between this summary and the License Agreement, the terms of the License Agreement shall govern.

c.  <u>Posession/Condition of Facilities.</u>  The Facilities shall be delivered to AHM Corp. in the current "as is" and "where is" condition without any representations or warranties of any kind or nature by SPV or the Trustee.

d.  <u>License Fee.</u>  AHM Corp. shall pay for the credit of the SPV a monthly license fee of $15,000.

e.  <u>Utilities and Services.</u>  AHM Corp. shall not be liable for or responsible to pay for any normal and customary utility costs, existing security services, janitorial and cleaning services and trash removal related to the normal and customary use and occupancy of the Facilities (the "<u>Utilities and Services</u>"), all which Utilities and Services are included in (and not in addition to) the License Fee.

f.  <u>Repairs and Maintenance.</u>  AHM Corp. shall, at its own cost and expense, maintain the interior of the Faclities throughout the License Period in the same "as is" condition which existed as of April 1, 2009.  Except as expressly provided in the License Agreement, AHM Corp., the SPV, and the Trustee shall not be obligated to perform any capital repairs, maintenance, repairs or improvements to the Broadhollow Property.

g.  <u>Insurance Requirements.</u>  AHM Corp. shall procure and maintain, at its own expense, public liability insurance covering activities at the Facilities for the benefit of the SPV, the Trustee, and AHM Corp. as their interests may appear, in an amount not less than one million dollars in respect of bodily injury or death in respect to any one occurrence, and in an amount not less than five-hundred thousand dollars for property damage in respect to any on occurrence.  AHM Corp. shall maintain worker's compensation insurance to the fullest extent required by the laws of the State of New York.

h.  <u>Limitation of Liability.</u>  Unless any of the same shall be caused solely by the negligence of Trustee, or its agents, servants, and employees, Trustee and its agents, servants and employees shall not be liable for, and AHM Corp. shall indemnify and hold Trustee and its agents, servants, and employees harmless from, any and all loss, liability, injury to person, including death, and property damage (including loss or interruption of business) resulting from or in connection with any fire, accident, or occurrence or condition in, on or about the Facilities or the Broadhollow Property, arising from AHM Corp.'s occupation or use of the Facilities or from any breach or default on the part of AHM Corp. in the performance of any covenant or agreement on the part of AHM Corp. to be performed pursuant to the terms of the License Agreement or from any act or negligence of AHM Corp., its agents, servants, employees or invitees in or about the Facilities or the Broadhollow Property.

i.    <u>Surrender of Facilities; Holding Over.</u>  Upon the expiration or termination of this License and AHM Corp.'s right of occupancy and use of the Facilities, AHM Corp. shall surrender and vacate the Facilities immediately and deliver possession thereof to the SPV or as Trustee may otherwise direct in writing, clean and in the same condition as of the Delivery Date, approved alterations and improvements, damage due to casualty or condemnation and ordinary wear excepted; provided AHM Corp. immediately shall repair all damage resulting from such removal.  In the event possession of the Facilities is not immediately delivered to the SPV or as otherwise directed by the Trustee in writing or if AHM Corp. shall fail to remove any movable trade fixture or personal property which belongs to AHM Corp. (but excluding the personal property), the Trustee may remove same without any liability to AHM Corp. or any third party.  Any movable trade fixtures and personal property which may be removed from the Facilities by AHM Corp. but which are not so removed, and all improvements made by AHM Corp. to the Facilities, shall be conclusively presumed to have been abandoned by AHM Corp. and title to such property shall pass to the SPV without any payment or credit, and Trustee may, at its option and at AHM Corp.'s expense, store, keep and/or dispose of such property.  Any holding over after the expiration or sooner termination of the License Period shall, at Trustee's sole option, be construed to be a license for a term of month to month at twice the License Fee, and shall otherwise be on the same terms and conditions provided in the License Agreement, however, AHM Corp. shall have no option to renew or extend the License Period.

j.    <u>Events of Default; Remedies.</u>  Each of the following shall constitute an event of default by AHM Corp. under the License Agreement: (i) AHM Corp. fails to pay any installment of the License Fee within ten days of Trustee's delivery of notice that same is overdue; (ii) AHM Corp. fails to observe or perform any of the other covenants, conditions or provisions of the License Agreement to be observed or performed by AHM Corp. and fails to cure such default within twenty days after written notice to AHM CORP (or such longer period as shall be required to cure using commercially reasonable diligent efforts); (iii) the interest of AHM Corp. in the License Agreement is levied upon under execution or other legal process; or (iv) AHM Corp. abandons the Facilities.  Upon the occurrence of an event of default by AHM Corp., Trustee, at its option, without further notice or demand to AHM Corp., may in addition to all other rights and remedies provided in the License Agreement, at law or in equity terminate the License Agreement and AHM Corp.'s right of possession of the Facilities, and recover possession of the Facilities without the need or requirement for any court issued writ or other judicial proceeding or approval or authorization from or by the Court and recover all damages to which SPV or Trustee is entitled under law, specifically including, without limitation, all expenses or reletting (including repairs, alterations, improvements, additions, decorations, reasonable legal fees and brokerage

commissions) by the Trustee. AHM Corp. shall pay upon demand, all costs and expenses, including reasonable attorneys' fees, incurred by Trustee in enforcing AHM Corp.'s obligations under the License Agreement or resulting from AHM Corp.'s default under the License Agreement.

k.    <u>Assignment/Sublicensing.</u> AHM Corp. shall not assign or sublicense the Facilities without the prior written consent of the Trustee, which may be withheld in the Trustee's sole and absolute discretion.

**RELIEF REQUESTED AND BASIS THEREFOR**

15.    By this Motion, the Debtors are seeking this Court's authorization and approval of the Stipulation and License Agreement pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

16.    Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. <u>In re Penn Central Transp. Co.</u>, 596 F.2d 1002 (3d Cir. 1979). The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." <u>In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson</u>, 390 U.S. 414 (1986).

17.    Approval of a proposed settlement is within the "sound discretion" of the Bankruptcy Court. <u>In re Neshaminy Office Building Associates</u>, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of the estate." <u>See</u> <u>In re Energy Cooperative, Inc.</u>, 886 F.2d 921, 927 (7th Cir. 1989). In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of

ultimate success should the claims be litigated, and estimated the complexity, expense and likely

duration of such litigation, and other factors relevant to a full and fair assessment of the

[claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also

In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's

Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the

compromise is fair, reasonable, and in the interest of the estate.'").

      18.     In particular, the Third Circuit Court of Appeals has enumerated four

factors that should be considered in determining whether a settlement should be approved,

namely: "(1) the probability of success in litigation; (2) the likely difficulties in collection;

(3) the complexity of the litigation involved and the expense, inconvenience and delay

necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re

Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest,

Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

      19.     In deciding whether to approve a settlement, the bankruptcy court should

not substitute its judgment for that of the debtor. Neshaminy, 62 B.R. at 803. Nor should it

decide the numerous questions of law or fact raised by litigation. Rather, it should should canvas

the issues to see whether the settlement falls below the lowest point in the range of

reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied,

464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that

"the court does not have to be convinced that the settlement is the best possible compromise.

Rather, the court must conclude that the settlement is within the reasonable range of litigation

possibilities.") (internal citations and quotations omitted).

20.    In the Debtors' judgment, the resolutions embodied in the Stipulation are reasonable and in the best interest of the Debtors, their estates, their creditors and other parties in interest.  The Stipulation provides for a fair and practical resolution of the Administrative Rent Claim, the Setoff Claims and the Guaranty Claim and avoids the need to commence costly and time-consuming litigation.  The Stipulation was the product of significant and lengthy discussions and negotiations between the Debtors, the SPV and the Trustee, and the settlement embodied therein falls well above the lowest point in the range of reasonableness.  In addition, each of the applicable Martin factors weighs in favor of approving the Stipulation.  Accordingly, the Stipulation should be approved pursuant to Bankruptcy Rule 9019.

### A.    The Probability of Success in Litigation

21.    Absent the Stipulation, the disputes between the Parties would have to be litigated before the Court with no assurances of a favorable outcome for the Debtors' estates.  The resolution of these disputes under the terms of the Stipulation is a favorable outcome because it eliminates potentially protracted litigation over the disputed matters which would continue to drain valuable estate resources.  Moreover, while the Debtors dispute the extent of their liability to the SPV for the Administrative Rent Claim, the uncertainty and inherent risk in litigating these matters as well as the unavoidable expenditure of estate assets and distraction of Debtors' management attendant thereto mitigate in favor of a prompt and consensual resolution of these matters.

### B.    The Likely Difficulties in Collection

22.    The second Martin factor is satisfied because, absent the Stipulation, the Debtors anticipate difficulty in collecting on the inter-company receivables from the SPV.

C.    **The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It**

23.    The Stipulation satisfies the third factor in <u>Martin's</u> four-factor test largely for the reasons set forth above in the discussion of the Debtors' probability of success in litigation.  Litigation over whether or not (i) AHM Holdings is liable to JP Morgan on account of the Guaranty, (ii) the SPV has a valid, enforceable administrative expense claim against AHM Corp., and (iii) AHM Corp. has a valid right to set off any Administrative Rent Claim against certain inter-company receivables from the SPV to AHM Corp. would involve complex legal issues and a potentially lengthy proceeding, which would be expensive for the Debtors' estates and inconvenient for the Parties.  Additionally, such litigation could distract the Debtors and their professionals from other, more important matters in the wind-down of the Debtors' estates.

D.    **The Paramount Interest of Creditors**

24.    Entry into the Stipulation serves the paramount interest of creditors of the Debtors.  The Stipulation's resolution of the Administrative Rent Claim, the Setoff Claims and the Guaranty Claim represents a savings for the creditors by obviating litigation, thereby saving the expenses attendant to such litigation.  And more importantly, the License Agreement provides for AHM Corp.'s continued occupancy of its corporate headquarters at a very favorable rental rate, obviating the expenses and delays attendant to relocating AHM Corp.'s remaining wind-down operations.  Therefore, the fourth factor of <u>Martin's</u> four-factor test is satisfied and weighs in favor of the Court approving the Stipulation.

E.    **Summary**

25.    A review of the four factors set forth above clearly demonstrates that the Stipulation is in the best interest of the Debtors, the Debtors' estates and creditors.  The resolution and compromise of the disputes and issues between the Parties as embodied in the

Stipulation: (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest

point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay,

inconvenience and uncertainty that would attend any litigation of the Parties' issues; and

(iv) advances the paramount interests of creditors.  Therefore, the Stipulation satisfies

Bankruptcy Rule 9019 and should be approved by the Court.

## NOTICE

26.     Notice of this Motion will be provided to (i) the United States Trustee for

the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors;

(iii) counsel to the Trustee; and (iv) all parties entitled to notice under Del. Bankr. LR 2002-1(b).

In light of the nature of the relief requested herein, the Debtors submit that no other or further

notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order

substantially in the form attached hereto approving the Stipulation and granting the Debtors such

other and further relief as is just and proper.


Dated:     Wilmington, Delaware          YOUNG CONAWAY STARGATT & TAYLOR, LLP
           July 14, 2009

                                         _____
                                         Sean M. Beach (No. 4070)
                                         Patrick A. Jackson (No. 4976)
                                         Michael S. Neiburg (No. 5275)
                                         The Brandywine Building
                                         1000 West Street, 17th Floor
                                         Wilmington, Delaware 19801
                                         Telephone: (302) 571-6600
                                         Facsimile: (302) 571-1253

                                         Counsel for Debtors and Debtors in Possession