

RECEIVABLE MANAGEMENT SERVICES

307 International Circle, Ste.270
Hunt Valley, MD 21030
Tel: 410-773-4038
Fax: 410-773-4057
Wendy.Finnegan@rmsna.com
www.rmsna.com

R·M·S

Name: Wendy Finnegan
Managing Paralegal

July 2, 2009

James McGinley
Chairman of the Official Committee of Unsecured Creditors
    Of American home Mortgage Holdings, Inc., *et al.*

c/o Wilmington Trust Company
520 Madison Ave., 33rd Floor
New York, NY 10022

Re: American Home Mortgage, Inc. *et al*
    Management, Pursuit and Recovery of Avoidance Actions

Dear James,

This letter proposal, subject to approval by the United States Bankruptcy Court for the District of Delaware, when signed by you in your capacity as Chairman of the Unsecured Creditors Committee (hereinafter, "UCC") will serve as our authorization to assist the UCC by pursuing recovery on the Debtors' claims arising under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions") for the UCC on behalf of the Debtors' estates.

As you may know, The Receivable Management Services Corporation is the largest commercial collection agency in the U.S. We service thousands of customers, ranging in size from the largest global corporations to the smallest "mom and pop" retail operations. We have nearly three thousand (3,000) associates worldwide in our facilities in the U.S., Canada, Mexico, Hong Kong and India. RMS and its predecessor, Dun & Bradstreet RMS, trace their heritage back more than 160 years to the earliest days of credit in the United States. We have more experience working with and for commercial creditors than any other organization in the world. We are known for our service and customer-satisfaction.

To complete our comprehensive suite of services to customers in all areas of credit, collection, litigation and recovery, some years ago we developed a Bankruptcy Services unit that offers a range of services to Debtors or creditors. Our Debtor Services division has been successfully representing

American Home Mortgage Holdings, Inc. Proposal
Page 2

trustees, creditors committees, and, occasionally, debtors' estates to pursue avoidance actions and collect recoveries on a contingent-fee basis. This is an important, but in the view of most creditors, unfortunate requirement of the fiduciary obligation of a committee member to all creditors: where appropriate, recover money for creditors at large from those who received a disproportionate share while not unduly pursuing creditors who have already lost great sums to a Debtors.

The case at hand provides a perfect opportunity for us to do what we do best – pursue the preference recoveries on behalf of the Creditors and convert those into money to distribute to creditors and fund the remaining activities required in the matter (litigation, etc.). Due to our contingent-fee structure, we are quite cost-effective, as <u>we are only paid out of recoveries received</u>.

There are no other fees, with the exception of a modest court-mandated "filing fee" which must be paid on those files where it is determined that suit would be appropriate. In addition, because we have been involved in the case since the outset, we are familiar with all aspects of the case and thus will not have the learning-curve issues that others that might seek to collect preferences would potentially have. These hallmarks of inexperience can both cause delay, and, even worse, at times result in the diminution of the recovery amount in a given case due to a lack of full understanding of the subtleties of arguments made by the other side (the defendants). Our expertly-trained staff, which includes attorneys and paralegals experienced in this type of preference pursuit and the associated negotiation techniques, are perfectly poised in this case to maximize all recoveries due.

After receiving data (as appropriate) from the Debtors and their Financial Advisors as well as the Financial Advisors to the UCC, an updated list of recipients of payments rendered by the Debtors (American Home Mortgage Holdings, Inc. *et al*) within the ninety (90) day period prior to the filing of their bankruptcy petition will be developed or verified. This typically arises from the check register, check copies and other corporate records. Rather than automatically send a letter to everyone who received any check in the ninety-day period as would be recommended by some of our competitors in the hope of "squeezing out a few dollars" from each creditor, it is our view that this is abusive and unnecessary. We build several steps into the process to avoid such action:

[1] Use the records at hand as well as the official Court docket to quickly review the list of payment recipients in the preference period and determine those that clearly have complete or substantially complete defenses (e.g. their contracts were assigned and assumed, or they regularly were pre-paid for their products or services such that pursuing an avoidance action would fail as to the condition precedent of "antecedent debt".)

[2] Where known from the records, determine those whose defenses appear complete or substantially so.

[3] Identify those who, by virtue of the typical mode of doing business in their industry likely had a complete defense – ordinary course or otherwise. (An example of a preference defendant who may fit this last category is an insurance provider.)

American Home Mortgage Holdings, Inc. Proposal
Page 3

Rather than bring an action in the hope of "extorting" a few dollars out of each target, we recommend not seeking recovery if those conditions can be shown to exist. We thus finalize an appropriate list of "targets" who appear to have received avoidable payments in the ninety days (90) prior to the filing and confirm their name, contacts and addresses etc. We then send a demand letter identifying ourselves as representing the UCC, as well as the causes of action, amounts paid, and the amounts due to be recovered. We typically recommend offering a discount (perhaps 10%) for those who remit payment immediately. For those who reach out to us to resolve the matter amicably, we typically work to negotiate a fair resolution – meeting our fiduciary obligation to the Creditors and recovering appropriate levels of funds. To reiterate, it is not our goal to "squeeze every penny" out of each target regardless of cost or situation. We strive to always be fair in recognition of the defenses espoused and the relative strength (or weakness) of our position based thereon. We are quite mindful of the role of the Creditors and the obligation of the UCC (and, therefore, RMS, as well) to pursue an appropriate resolution to avoidance actions.

For those that do not respond to an initial letter, we define a pursuit paradigm that typically includes either an additional letter(s) and/or personal calls from collectors in our Bankruptcy Services unit. These specialists are experienced and trained in the peculiarities of Preferences as well as bankruptcy issues in general. They have typically worked on numerous past collections in the bankruptcy environment – often including preference collections, default judgment collections and/or Debtors A/R collections. We work with counsel to define a treatment paradigm calculated for optimum recoveries and to determine the propriety of pursuing cases under $10,750. (Because, pursuant to the recent changes in the Bankruptcy Code, these cases have to be pursued in the jurisdiction of the target, when pursued, and if counsel cannot bring the actions in each state as required, we can use our national network of contingent fee bankruptcy/collection attorneys for this work as needed.) However, not all such files will be pursued beyond the letter-and-call phase. Again, consistent with the most recent changes in the Bankruptcy Code, we do not recommend pursuing avoidance actions under $5,475. However, we do solicit and observe the guidance on this issue from Counsel.

In order to optimize the effectiveness of our pursuit against the appropriate parties, where available, we request the following information at the outset:

[1] Listing of any and all payments made by the Debtors in the ninety (90) days prior to the bankruptcy filing;
[2] Names and addresses of the recipients of such payments (or, in the alternative, a computerized listing of all the suppliers to the Debtors in the pre-petition period);
[3] Copies (front and back) of all checks and/or access to the bank records;
[4] Accounts-payable journal or register (to facilitate identifying any non-check payments that might have occurred in the preference period);
[5] Settlement authority that does not require additional approval to be sought for most results (except for the largest);

After initial demands, based on the paradigm defined and the size of the account due, we follow-up with personal collection call(s) and as needed and additional letters and/or calls. Since Target accounts (and the underlying relationships) are commercial as opposed to consumer transactions we have great flexibility in crafting a recovery process paradigm for you.

American Home Mortgage Holdings, Inc. Proposal
Page 4

After contacting each Target and demanding that they return the preference payments received, we arrange for and receive payments on behalf of the UCC. Unless otherwise instructed, we will direct preference recipients to remit payment via check made payable to "American Home Mortgage Holdings, Inc.". We then deposit the receipts into a separate account established on behalf of the Debtors' estates.

Since we are most effective at settling these matters if our professionals who negotiate with the Target are properly prepared in advance and armed with appropriate settlement authority, (thereby reducing the need to contact the client before negotiating or accepting a settlement offer) we track our efforts in a spreadsheet-style listing ("log") and can provide an update to you monthly or upon request.

As indicated, our rates are net of expenses and fully contingent at the rates indicated below (based on amounts actually collected for each file):

Domestic Files:

- 25% of amounts recovered on behalf of the UCC on each domestic file prior to the filing of an answer to the complaint ("Complaint") to avoid the target transfers ("Tier 1");
- 20% of amounts recovered on behalf of the UCC on each domestic file between Tier 1 and prior to the commencement of discovery ("Tier 2");
- 15% of amounts recovered on behalf of the UCC on each domestic file between Tier 2 and the commencement of motion practice and/or engagement in substantial discovery regarding the Complaint ("Tier 3"); and
- 10% of amounts recovered on behalf of the UCC on each domestic file after Tier 3.

Foreign Files:

- 35% of amounts recovered on behalf of the UCC on each foreign file prior to the filing of an answer to the complaint ("Complaint") to avoid the target transfers ("Tier 1");
- 28% of amounts recovered on behalf of the UCC on each foreign file between Tier 1 and prior to the commencement of discovery ("Tier 2");
- 20% of amounts recovered on behalf of the UCC on each foreign file between Tier 2 and the commencement of motion practice and/or engagement in substantial discovery regarding the Complaint ("Tier 3"); and
- 15% of amounts recovered on behalf of the UCC on each foreign file after Tier 3.

We agree that the foregoing terms will govern the retention of RMS subsequent to the effective date of the Debtors' plan of liquidation.

We recommend that you allow us to manage all files, even if counsel files suit where appropriate. We will continue to negotiate with those defendants who choose to negotiate rather than litigate.

American Home Mortgage Holdings, Inc. Proposal
Page 5

Please sign below as our authorization to proceed. If you require additional information or have any questions or concerns, please do not hesitate to contact me directly.

Sincerely,

*Wendy Finnegan* (signature)
Wendy Finnegan

AGREEMENT ACCEPTED AND APPROVED:
American Home Mortgage Holdings, Inc.

By: James McGinley
Managing Director
Wilmington Trust Company
520 Madison Ave., 33rd Floor
New York, NY 10022

_____  7/14/09
Signature  Patrick J. Healy   Date
           Vice President

cc:
Mark Powers, Esq.
Mark Indelicato, Esq.
Jeffrey Zawadzki, Esq.
Edward Schnitzer, Esq.