# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, | ) | Case No. 07-11047 (CSS) |
| INC., a Delaware corporation, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Hearing Date: TBD** |
| | ) | **Objection Deadline: TBD** |

## MOTION OF OFFICIAL
## COMMITTEE OF BORROWERS FOR RELEASE OF FUNDS

The Official Committee of Borrowers ("OCB") respectfully submits this motion for the release of funds (the "Motion"). In support of this Motion, the OCB respectfully submits the following:

### JURISDICTION AND VENUE

1.  Venue of this motion ("Motion") is proper under 28 U.S.C. § 1408 and jurisdiction exists under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

### FACTUAL BACKGROUND

2.  On or about October 21, 2008, the Office of the United States Trustee appointed the members of the OCB.

3.  On or about February 18, 2009, the above-captioned debtors and debtors-in-possession (the "Debtors") filed their Amended Joint Plan of Reorganization (the "Plan").

4.  By order dated February 23, 2009, this Court confirmed the Plan.

5.  The Plan provides, in Article 17, Section H, that upon the effective date of the Plan, the OCB would dissolve and a Borrower Information Ombudsman (the "Ombudsman") would be appointed. While the Plan provides that the Ombudsman would be employed by the plan trustee, it was contemplated that the Ombudsman would be selected by the OCB.

6.     The primary function of the Ombudsman was to act as a liaison between lenders and borrowers to assure that borrowers were provided with information concerning their loans.

7.     The Plan further provides that $50,000 would be allocated to fund the services of the Ombudsman.

8.     At the time the Plan was confirmed, the Ombudsman concept made sense to the OCB. However, several things have changed in the months following confirmation.

9.     First and foremost, Congress has enacted amendments to the Truth In Lending Act ("TILA"), effective as of May 20, 2009, that would make the functions of the ombudsman largely moot.[1]  In addition, the new law includes enhanced damages for non compliance with requests for the true owner of the note under TILA § 1641(f)(2). (See 15 U.S.C. § 1640(a) as amended by P.L. No. 111-22, Div. A, Title IV, § 404(b) (May 20, 2009, 123 Stat. 1658.). Due to these developments, borrowers now have a much better chance of compliance without the

---

[1] These amendments included the following addition to 15 U.S.C. § 1641:

    g)    Notice of new creditor
        (1)    In general

            In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including--

            (A)    the identity, address, telephone number of the new creditor;

            (B)    the date of transfer;

            (C)    how to reach an agent or party having authority to act on behalf of the new creditor;

            (D)    the location of the place where transfer of ownership of the debt is recorded; and

            (E)    any other relevant information regarding the new creditor.

        (2)    Definition

            As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

assistance of an ombudsman. Loan files have now all been either transferred to owners or destroyed.

10. Moreover, the significant delay in the Plan's going effective has caused the OCB to have increasing concerns about the direction of the case. In particular, the OCB has been informed that certain loans held by lenders with selected borrowers were apparently compromised at favorable terms. However, the process of reconciling and settling claims for the vast majority of borrowers has not even begun.

11. The OCB is also concerned about the preservation of avoidance actions within the two years following the petition date, which is due to expire on August 6, 2009[2]. That concern is heightened by the fact that if the Plan cannot go effective and the case converts before avoidance actions are commenced but a permanent trustee is not appointed until after the statute has run, these avoidance actions will be lost. 11 U.S.C. § 546(a)(1)(B).

12. The OCB submits that given the size of this case, the re-allocation of the $50,000 fund to the OCB to conduct limited investigatory work on behalf of borrowers constitutes an immaterial change and one in large measure of form over substance. The OCB would note that the $50,000 funding and the Ombudsman were included in the Plan at the insistence of the OCB.

WHEREFORE, the OCB requests that the Court grant this Motion.

DATED: July 20, 2009

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:    (302) 654-0248
Facsimile:    (302) 654-0728
Email:        loizides@loizides.com

---

[2] The OCB understands that the OCUC has been given authority to commence avoidance actions.

                        – and –

William Jeff Barnes, Esquire
c/o INTERNATIONAL MEDIATION ASSOCIATES
6655 W. Sahara Avenue, Suite B200
Las Vegas, NV  89146
Telephone:     (702) 222-3202
Email:            wjbarnes@cox.net

*Proposed Counsel to the OCB*