IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x  Chapter 11
In re:                                                        :
                                                              :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                        :
HOLDINGS, INC., a Delaware corporation, et al.,               :  Jointly Administered
                                                              :
   Debtors.                                                   :  Ref. Dkt. No. 7620
                                                              :
                                                              :
------------------------------------------------------------- x

**DEBTORS' OBJECTION TO MOTION FOR EXPEDITED CONSIDERATION AND TO LIMIT NOTICE OF THE MOTION OF OFFICIAL COMMITTEE OF BORROWERS FOR RELEASE OF FUNDS**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, the "Debtors"),[1] hereby object (the "Objection") to the Motion for Expedited Consideration and to Limit Notice of the Motion of Official Committee of Borrowers for Release of Funds [Docket No. 7620] (the "Motion to Shorten") filed by purported counsel to the Official Committee of Borrowers ("OCB").[2] In support of this Objection, the Debtors respectfully represent as follows:

**RELEVANT FACTS**

1.   On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Upon the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion to Shorten.

filing of the Debtors' bankruptcy petitions, any prepetition actions were automatically stayed pursuant to section 362 of the Bankruptcy Code.

2. On August 14, 2007, the Office of the United States Trustee (the "U.S. Trustee") appointed seven of the largest unsecured creditors to serve as members of the Creditors' Committee.

3. On August 15, 2008, the Debtors filed their Chapter 11 Plan of Liquidation of the Debtors (as amended, the "Plan") [D.I. 5450] and Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Chapter 11 Plan of Liquidation of the Debtors (as amended, the "Disclosure Statement") [D.I. 5451].

4. On September 9, 2008, certain individuals, through their co-counsel Gilbert Oshinsky LLP (f/k/a Gilbert Randolph LLP) and Zuckerman Spaeder LLP, filed a motion [D.I. 5675] (the "OCB Appointment Motion") seeking appointment of an official committee of borrowers in these cases. In the OCB Appointment Motion, the movants argued that the cost of the borrowers' committee's professionals "should be minimal" and that a borrowers' committee's responsibilities "should have little overlap with those of the [Creditors'] Committee". (OCB App. Mot. at 18-19.)

5. The Creditors' Committee and the Debtors objected to the OCB Appointment Motion [D.I. 6112 and 6115, respectively], the Debtors specifically disputing that an additional statutory committee would entail "minimal" cost to the Debtors' estates.

6. At the October 8, 2008, hearing on the OCB Appointment Motion, counsel for the movants assured the Court that the borrowers' committee would focus narrowly on issues relevant to borrowers, and would not be looking to touch on issues for which the Creditors' Committee would be responsible to address. Specifically, counsel for the movants reiterated that

2

the borrowers' committee "would not be seeking to do all the things that you normally have a committee look into, preference actions, that sort of thing, but there are some issues on which borrower interests and interest[s] of general unsecured creditors diverge, and on those issues, a Borrowers Committee would be active . . . ." (10/8/08 Hr'g Tr. [D.I. 6529] at 70:12-17.)

7.    On October 10, 2008, this Court entered an order (the "Appointment Order") [D.I. 6220] directing the U.S. Trustee to appoint an OCB and scheduling a status conference for October 22, 2008, to consider the scope of the appointment and any limitations that would be imposed on the OCB. By notice dated October 21, 2008 [D.I. 6407], the U.S. Trustee appointed the OCB.

8.    The Court held a status conference on October 22, 2008, at which it made certain rulings with respect to the items left open in the Appointment Order. On November 4, 2008, the Court entered an order supplementing the Appointment Order (the "Supplemental Appointment Order") [D.I. 6495] consistent with its rulings at the status conference, which ordered, *inter alia*, that (i) the scope of the OCB's rights and responsibilities was limited to matters relating to the Plan, global stay relief on behalf of all borrowers in foreclosure and any incidental related issues (the "OCB Scope"), (ii) the OCB was not authorized to retain any professionals other than counsel and (iii) the compensation and reimbursement of expenses of counsel for the OCB was capped at $250,000 (the "Fee Cap").

9.    On January 22, 2009, the OCB filed an objection to the Plan (the "Plan Objection") [D.I. 6883] challenging, among other things: (i) the adequacy of notice of the bar dates established previously in the Cases, (ii) the extension of the automatic stay post-confirmation, (iii) the alleged conflicts of interest of the Plan Trustee and the Plan Oversight Committee (as defined in the Plan), (iv) the Plan's exculpation provisions, (v) the proposed

mechanism for the estimation, liquidation, and allowance of EPD/Breach Claims (as defined in the Plan) (such mechanism, the "EPD/Breach Claims Protocol"), (vi) the proposed comprehensive settlement of inter-debtor claims and potential inter-estate disputes in the Plan (the "Stipulated Asset Allocation"), and (vii) whether the Plan satisfied the "best interests of creditors" test of Bankruptcy Code section 1129(a)(7).

10. The Debtors voluntarily made modifications to the Plan to address borrower specific issues, but when the Debtors were unwilling to accede to the OCB's demands with respect to other Plan amendments, the OCB pressed the Plan Objection, which was overruled *in toto* at the conclusion of the three-day evidentiary hearing on confirmation of the Plan held February 9-11, 2009 (the "Confirmation Hearing"). On February 23, 2009, the Court entered an order confirming the Plan [D.I. 7042] (the "Confirmation Order"). To date, the Plan has not yet become effective.

11. Since the Confirmation Hearing, OCB's counsel have filed fee applications requesting legal fees totaling $540,174.25 and expenses totaling $25,489.20. These requests are more than double the Fee Cap set by the Court. The Debtors and Creditors' Committee have objected to these requests [D.I. 7345], which remain pending.

12. Now, out of the blue, the OCB has purportedly retained new counsel without the withdrawal of prior counsel and any retention applications for purported new counsel. By their *Motion of Official Committee of Borrowers for Release of Funds* [Docket No. 7619] (the "Motion"), are requesting that this Court revisit the Plan to eliminate the appointment of a borrower ombudsman and to convert the $50,000 fund provided for the ombudsman's services to be used "to investigate post-confirmation activities in th[ese] case[s]." (Mot. to

Shorten at 1). The Motion is devoid of any explanation as to what they intend to "investigate" or how such an investigation is within the OCB Scope.

13.    Concurrently with the filing of the Motion, the OCB filed the Motion to Shorten, requesting that the Motion be heard on less than one week notice.

## OBJECTION

14.    By the Motion to Shorten, the OCB requests that this Court shorten and limit notice and schedule for hearing its Motion on less than one week notice. The OCB does not identify any exigencies justifying shortened notice.

15.    The Motion, which appears to be a disguised motion to reconsider the Confirmation Order, the Appointment Order and the Supplemental Appointment Order, at minimum, (i) is procedurally deficient, (ii) misconstrues facts surrounding in these cases, and (iii) argues for relief that was previously sought and addressed by this Court. The Debtors believe that it is telling that authorized counsel to the OCB are not signatories on the Motion.

16.    Moreover, despite an attempt by Debtors' counsel to seek an understanding of the Motion, the OCB has refused to provide any detail regarding its purported rationale for the filing of the Motion. As a result, forcing the Debtors to file an objection to the Motion and prepare for this matter on an expedited timeframe is extremely prejudicial to the Debtors and other parties in interest. This is particularly egregious in light of the fact that the OCB's purported bases for requested expedited notice are meritless.

17.    As an initial matter, the only argument that may be affected by the timing of consideration of the Motion - the OCB's purported concern about the impending statute of limitations under section 546(a) (the "<u>546 Deadline</u>") – has already been addressed by this Court. Despite previous representations to this Court that the OCB "would *not* be seeking to do all the

things that you normally have a committee look into, [for example] *preference actions*," the OCB has already raised alleged conflicts of interest concerns with respect to the Plan Trustee and the Plan Oversight Committee (as defined in the Plan) as part of its Plan Objection, and this Court overruled the argument in full. Additionally, this Court entered the *Order Approving Stipulation Between the Debtors and the Official Committee of Unsecured Creditors, Granting Authority and Standing to Pursue Avoidance Actions* [D.I. 7604], and the Committee has been diligently analyzing all such causes of action. Because the Creditors' Committee is authorized to handle, and is diligently handling, the avoidance actions, the upcoming deadline is of no moment.[3] Seeking expedited consideration for an argument in which the OCB has (i) failed to assert in a timeframe appropriate for the next hearing, and (ii) already lost in connection with its Plan Objection defies logic.

18. The remaining arguments set forth by the OCB are equally unavailing. First, the OCB's alleged tales of compromised mortgage claims is entirely at odds with the OCB's fundamental purpose and previous arguments. It is simply incomprehensible why the OCB is alarmed by the fact that borrowers may be receiving *favorable* settlement terms. Moreover, the OCB provides no reason why this allegation necessitates immediate action. As noted in its Motion to Shorten, the Debtors have not completed their review of the borrowers claims. This is not only consistent with the Plan, which allows additional time to object to claims, but also to be expected given that over 11,000 claims have been filed in these cases. Because the Debtors have not completed their review of the borrower claims, and the Court already reviews any settlement reached, there is no exigency with respect to the issue.

---

[3] Similarly, the OCB fails to explain why the recent TILA amendments, which purportedly became effective over two months ago, now requires expedited reconsideration in the Plan or why the OCB failed to file the request in the timeframe set forth in the Local Rules.

19.     Second, the OCB's request is neither straightforward nor simple. The Motion has been filed by counsel that is not currently authorized to represent the OCB and, to date, the approved counsel have not withdrawn their appearance. This unusual dynamic raises immediate and fundamental issues as to the appropriate parties and counsel with whom the Debtors should be negotiating. Regardless of the "amount" requested, the Motion essentially seeks to reconsider the Confirmation Order, the Appointment Order, and the Supplemental Appointment Order.[4] Accordingly, any objections to the Motion must address a long case history and complex plan issues, as well as the procedural deficiencies for requesting such relief. Moreover, the apparent request to expand the OCB Scope to include an investigation of post-confirmation activities is devoid of any detail, and the Debtors remain at a loss to address these issues or otherwise provide a defensible position. The OCB's attempts to obfuscate the issues should not be condoned by limiting the Debtors' time to respond to the Motion.

20.     The OCB's request for the convenience of Mr. Barnes and Ms. Rush is irrelevant, especially in light of the fact that Mr. Barnes is not currently authorized to represent the OCB. To the extent that convenience of the parties would ever be considered an exigency, this factor weighs heavily in favor of *not* granting expedited consideration of the Motion. By adding a hearing on less than one week notice, interested parties would incur increased travel costs for such arrangements on shortened notice.

21.     With respect to the request to the OCB's request to limit notice of the Motion to (i) counsel to the Debtors, (ii) counsel to the Official Committee of Unsecured Creditors and (iii) the Office of the United States Trustee, the Debtors believe that the request should be denied as all parties should receive proper and adequate notice.

---

[4] To the extent that the OCB is requesting a modification of the Plan, such a request is also inappropriate. Only plan proponents have the authority to modify the Plan. See 11 U.S.C. § 1127.

22. Accordingly, for the foregoing reasons, the circumstances do not justify shortening the notice periods for the Motion.

## **RESERVATION OF RIGHTS**

23. This Objection is without prejudice to the Debtors' right to file an objection to the Motion on any and all bases.

## **CONCLUSION**

WHEREFORE, based on the foregoing, the Debtors respectfully request that the Motion to Shorten Notice be DENIED.

Dated: Wilmington, Delaware
       July 21, 2009

                             YOUNG CONAWAY STARGATT & TAYLOR, LLP

                             */s/ Margaret Whiteman Greecher*
                             Sean M. Beach (No. 4070)
                             Margaret Whiteman Greecher (No. 4652)
                             The Brandywine Building
                             1000 West Street, 17th Floor
                             Wilmington, Delaware 19801
                             Telephone: (302) 571-6600
                             Facsimile: (302) 571-1253

                             Counsel for Debtors and Debtors in Possession