**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------------------x
In re:                                                          :          Chapter 11
                                                                :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,   :          Case No. 07-11047 (CSS)
a Delaware Corporation, et at.,[1]                  :
                                                                :          Jointly Administered
           Debtors.                                       :
                                                                :          **Proposed Objection Deadline: August 10,**
                                                                :          **2009 at 4:00 P.M. (ET)**
                                                                :          **Proposed Hearing Date: August 11,**
                                                                :          **2009 at 10:30 A.M. (ET)**
---------------------------------------------------------------------------x

**MOTION OF ZC REAL ESTATE TAX SOLUTIONS LIMITED
FOR AN ORDER, PURSUANT TO SECTIONS 105(a) AND 365(b)
OF THE BANKRUPTCY CODE AND THE ORDER ENTERED
APPROVING THE SALE OF THE DEBTORS' MORTGAGE
SERVICING BUSINESS, COMPELLING PAYMENT OF CURE CLAIM**

ZC Real Estate Tax Solutions Limited ("ZC"), by and through its undersigned attorneys, hereby submits this motion (the "Motion") for entry of an order (the "Proposed Order"), in substantially the form filed simultaneously herewith, pursuant to sections 105(a) and 365(b) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and the *Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief* [Docket No. 1711] (the "Sale Order"), directing the immediate payment of the cure

---

[1] The other Debtors in these cases are: American Home Mortgage Investment Corp., American Home Mortgage Acceptance, Inc., American Home Mortgage Servicing, Inc., American Home Mortgage Corp., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

amount due and owing to ZC. In support of the Motion, ZC respectfully represents as follows:

## I. Jurisdiction

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested are sections 105 and 365 of the Bankruptcy Code.

## II. Background

2. On August 6, 2007 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors have continued in possession of their respective properties and have continued to operate their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Prior to the Petition Date, on June 6, 2005, ZC entered into an agreement (as amended, the "Agreement") with the Debtors pursuant to which ZC was engaged to perform certain services (the "Tax Services") for the management and administration of the Debtors' real estate tax management and payment obligations for present and future real estate loans owned, serviced, or sub-serviced by the Debtors.

4. On the Petition Date, the Debtors filed the *Emergency Motion of the Debtors For Orders: (A)(I) Approving Sale Procedures; (II) Scheduling a Hearing to Consider Sale of Certain Assets Used in the Debtors' Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of*

*Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief* [Docket No. 11] (the "Sale Motion").

5.  By the Sale Motion, the Debtors sought, *inter alia*, to sell their mortgage servicing business (the "Servicing Business") and assume and assign certain executory contracts and leases to AH Mortgage Acquisition Co., Inc. (the "Purchaser").

6.  The Debtors identified the Agreement as an executory contract to be assumed and assigned as part of the sale of the Servicing Business. *See Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any* [Docket No. 403]; *Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any* [Docket No. 674] (the "Modified Notice of Assumption"); *Supplemental Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, If Any* [Docket No. 962] (the "Supplemental Notice of Assumption").

7.  On September 25, 2007, the Debtors filed an executed Asset Purchase Agreement [Docket No. 931] (as subsequently amended, the "APA") by and among American Home Mortgage Investment Corp., American Home Mortgage Corp., and American Home Mortgage Servicing, Inc. (the "Sellers") and the Purchaser. The APA contemplated a two-step closing consisting of (i) an "economic" close, at which the Purchaser would tender the purchase price and after which the Debtors would continue to operate the Servicing Business in the ordinary course for the benefit and risk of the Purchaser (the "Initial Closing"), and (ii) a "legal" close, at which legal title to the assets of the Servicing Business would vest in the Purchaser and which

3

would be the effective date of assumption and assignment of any executory contracts and unexpired leases (the "Final Closing"). *See* APA, § 2.7.

8. ZC filed, respectively, limited objections to the Modified Notice of Assumption and Supplemental Notice of Assumption, asserting the actual cure amount due and owing under the Agreement [Docket Nos. 830 and 1115]. The Debtors and ZC then discussed the proper cure amount and agreed upon the amount ultimately set forth in a schedule to the Sale Order.

9. On October 15-19, 2007, the Court held a five-day evidentiary hearing (the "Sale Hearing") to consider approval of the Sale Motion and the APA.

10. On October 30, 2007, the Court entered the Sale Order approving the Sale Motion and approving the assumption and assignment of certain executory contracts and unexpired leases related to the Servicing Business (the "Assumed Contracts"). Among the Assumed Contracts identified in the APA and Sale Order is the Agreement.

11. The Sale Order provides that a reserve of $10 million (the "Cure Escrow") would be established at the Initial Closing for payment of cure amounts due and owing on the Assumed Contracts prior to the Initial Closing. At the Sale Hearing, the Debtors represented that the Cure Escrow would be sufficient to cure all obligations on the Assumed Contracts. *See 10/19/07 Hrg. Tr.,* at 44 [Docket No. 1663] (". . . the cure reserve is more than ample to handle our cure obligations"). Based upon this representation, the Court approved creation of the Cure Escrow as part of the Sale Order.

12. Pursuant to paragraph 33 of the Sale Order, the cure amount to be distributed to ZC with respect to the Agreement consists of the pre-petition amount set forth in *Schedule I* [Docket No. 1703] ("Schedule I") to the Sale Order.

13. Schedule I sets forth a cure amount of $1,145,804.15 (the "Cure Claim") due and owing to ZC with respect to the Agreement. This amount represents the pre-petition cure amount due and owing to ZC for the months of June, July, and the beginning of August 2007 prior to the Petition Date.

14. The Sale Order further provides that funds shall be released from the Cure Escrow in accordance with the terms of the *Cure Escrow Agreement*, a copy of which is attached to the Sale Order [Docket No. 1711].

15. Certain parties, including DB Structured Products, Inc. ("DBSP"), appealed the Sale Order [Docket No. 1799] and asserted claims (the "Disputed Claims") against the Cure Escrow. One of the largest of the Disputed Claims was DBSP's $19 million claim (the "DBSP Claim"). The addition of the Disputed Claims to the existing cure obligations relating to the Assumed Contracts caused the total claims asserted against the Cure Escrow to exceed $10 million. According to Debtors' counsel, distributions of the Cure Escrow have been delayed pending resolution of the Disputed Claims.

16. The Initial Closing under the APA occurred on November 16, 2007, at or about which time the Cure Escrow was established and funded as required by the Sale Order. The Final Closing under the APA occurred on April 11, 2008.

17. In early 2008, various disputes arose between Bank of America, N.A., as Administrative Agent (the "Administrative Agent") for itself and the pre-petition secured lenders under that certain Second Amended and Restated Credit Agreement entered into by the Administrative Agent and the Debtors, involving control of certain of the Debtors' secured assets. *See Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code With Respect*

*to the Chapter 11 Plan of Liquidation of the Debtors Dates as of November 25, 2008*, at 51-55 [Docket No. 6627].

18. On July 18, 2008, the Debtors filed the *Debtors' Motion Pursuant to Federal Bankruptcy Rule 9019(a) and Sections 105(a), 362 and 363 of the Bankruptcy Code for an Order Approving and Authorizing the Stipulation of Settlement Among (I) the Debtors, (II) Bank of America, N.A., as Administrative Agent, and (III) the Official Committee of Unsecured Creditors* [Docket No. 5184] (the "Settlement Motion"). By the Settlement Motion, the Debtors sought approval of a stipulation of settlement (the "Stipulation") that, among other things, resolved the Debtors' disputes with the Administrative Agent. By virtue of the Stipulation, responsibility for litigating or otherwise resolving claims against the Cure Escrow would be shared between the Administrative Agent and Debtors. *See* Stipulation, ¶ 14 [Docket No. 5308].

19. On August 5, 2008, the Court entered the *Order Approving and Authorizing Stipulation of Settlement Among (i) The Debtors, (ii) Bank of America, N.A., as Administrative Agent, and (iii) the Official Committee of Unsecured Creditors and Granting Related Relief* [Docket No. 5308] (the "Settlement Order") approving the Settlement Motion and the Stipulation.

20. On November 25, 2008, the Debtors filed the *Amended Chapter 11 Plan of Liquidation Dated as of November 25, 2008* [Docket No. 6626].

21. On January 16, 2009, DBSP filed the *Limited Objection of DB Structured Products, Inc. To Amended Chapter 11 Plan of Liquidation of the Debtors* [Docket No. 6853] (the "Objection"). By the Objection, DBSP asserted that the Debtors' plan should not be confirmed until resolution of the DBSP Claim.

22. On February 9-10, 2009, the Court held a hearing on confirmation. (the "Confirmation Hearing"). At the Confirmation Hearing, DBSP withdrew the DBSP Claim and its plan objection. *See 2/9/09 Hrg. Tr.*, at 237-39 [Docket No. 7041]. DBSP then stipulated that its contracts with the Debtors were non-executory (and thus not entitled to cure), *see Findings of Fact, Conclusions of Law, and Order on Remand*, ¶¶ 15, 52 [Docket No. 7101], and ultimately withdrew its appeal of the Sale Order. *See Notice of Withdrawal* [Docket No. 7216].

23. On February 18, 2009, the Debtors filed the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated As of February 18, 2009* [Docket No. 7029] (the "Plan").

24. On February 23, 2009, the Court entered its *Findings of Fact, Conclusions of Law and Order Confirming the Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009* [Docket No. 7042] (the "Confirmation Order") confirming the Plan.

25. Since confirmation of the Plan, the Debtors have indicated that claims against the Cure Escrow have fallen below $10 million and, thus, there absolutely is no basis to continue holding the amount due and owing ZC. Having waited almost two years for payment of its Cure Claim, ZC was compelled to file the instant Motion.

### III. Argument

26. Section 365(b) of the Bankruptcy Code provides, in pertinent part:

> (1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> > (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . .

11 U.S.C. § 365(b)(1)(A).

27. Pursuant to section 365(b), the Debtors *are required* to promptly cure all defaults under a contract upon assumption of the contract. *See In re Kiwi International Air Lines, Inc.*,

7

344 F.3d 311, 318 (3d Cir. 2003) ("[T]he debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement"); *see also In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001) ("The pre-petition cure amounts are required to be paid by section 365(b)(1) of the Bankruptcy Code"); *In re USN Communications, Inc.*, 1999 Bankr. LEXIS 1944, *12 (Bankr. D. Del. July 30, 1999) ("The language of § 365(b)(1) clearly and unambiguously requires the cure of all defaults before a lease may be assumed").

28. The Third Circuit has explained the policy behind the requirement that debtors cure any deficiencies on an unexpired contract when assuming the contract:

> Once an assumption order is entered, the creditor must perform in accordance with the terms of the assumed agreements. However, as a matter of fairness, before requiring the creditor to perform, courts require the debtor in possession to "give [ ] the other contracting party the full benefit of [its] bargain." *H.R. Rep. No. 95-595*, at 348 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6304-05; *see also Matter of Superior Toy & Mtg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996).

*In re Kiwi International Air Lines, Inc.*, 344 F.3d at 318.

29. Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see also In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code").

30. In accordance with section 365(b) of the Bankruptcy Code, the Sale Order provides that ZC is entitled to payment of its Cure Claim upon assumption of the Agreement.

The Agreement was assumed and assigned by virtue of the sale. ZC continued to provide Tax Services post-petition to the Purchaser with the expectation that the amounts due and owing to ZC would be cured pursuant to the Bankruptcy Code and the Sale Order entered by this Court.

31. ZC has cooperated with the Debtors and the Purchaser throughout this bankruptcy case and provided a seamless transition of services. The Sale Order was entered over twenty-one months prior to the date of this Motion, and the Confirmation Order was entered over five months ago.

32. Now that claims asserted against the Cure Escrow have been reduced to below the $10 million held in the Cure Escrow, ZC is entitled to have its Cure Claim paid.

33. The fact that ZC has not received payment of its Cure Claim is a clear violation of both the Sale Order and section 365(b) of the Bankruptcy Code.

## IV. Notice

34. Notice of this Motion will be provided to (i) counsel to the Debtors; (ii) the United States Trustee for the District of Delaware; (iii) counsel to the Official Committee of Unsecured Creditors; (iv) counsel to the Official Committee of Borrowers; (v) counsel to the Administrative Agent; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, ZC submits that no other or further notice is required.

## V. No Previous Request

35. No prior request for relief sought in this Motion has been made to this or any other court.

## VI. Conclusion

WHEREFORE, ZC respectfully requests that the Court enter an order (i) granting the Motion in its entirety, (ii) requiring the immediate payment of the Cure Claim due and owing to ZC, and (iii) granting such other and further relief as the Court may deem just and proper.

Dated:  August 3, 2009                Respectfully submitted,

                                      HUNTON & WILLIAMS LLP

                                      */s/ Michael G. Wilson*
                                      Michael G. Wilson (DE. No. 4022)
                                      Riverfront Plaza, East Tower
                                      951 East Byrd Street
                                      Richmond, Virginia 23219-4074
                                      (804) 788-8200

                                              -and-

                                      Richard P. Norton (admitted *pro hac vice*)
                                      Scott H. Bernstein, Esq.
                                      200 Park Avenue, 53rd Floor
                                      New York, New York 10166-0136
                                      (212) 309-1000

                                      *Attorneys for ZC Real Estate Tax Solutions
                                          Limited*