IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., a Delaware corporation, | ) Case No. 07-11047 (CSS) |
| et al.[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Ref. Docket No. 7565** |
| ------------------------------------------------------- | ) |

**DEBTORS' OBJECTION TO CBS OUTDOOR INC.'S MOTION TO
COMPEL PAYMENT OF ADMINISTRATIVE EXPENSES**

The above-captioned debtors and debtors-in-possession (the "Debtors") make this preliminary objection (the "Objection") to *CBS Outdoor Inc.'s Motion to Compel Payment of Administrative Expenses* (the "Motion") filed on June 9, 2009. In support of this Objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

CBS Outdoor Inc. ("Movant") seeks to compel payment from "the Debtors,"[2] as an administrative expense, of more than $35,000 allegedly due and owing under two contracts between Movant and "Owner Builder Network" dated August 28, 2006, and March 22, 2007 (the "Subject Contracts"), for the provision of certain billboard advertising services to Owner Builder Network in California at various times before and after the commencement of the Debtors'

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc., f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2] The Motion does not specify which Debtor Movant contends is liable for such payment.

chapter 11 cases on August 6, 2007 (the "Petition Date"). Owner Builder Network is not a debtor in these chapter 11 cases, and its relationship with the Debtors (if any) is not clear from the Subject Contracts or any other documentation Movant provided to the Debtors. Thus, as a threshold matter, Movant fails to state a simple contract claim.

Even if Movant established that the Subject Contracts were with a debtor entity, it is undisputed that they were never assumed by the Debtors post-petition, and Movant does not contend that the Debtors induced Movant's performance post-petition. Thus, there was no "transaction with the estate" that would support a claim for administrative expense priority.

Finally, even if it could be said there was a "transaction with the estate," Movant's bald assertion that its provision of advertising services "benefited the Debtors and the bankruptcy estate" is untenable given that the Debtors ceased loan origination operations prior to commencing these chapter 11 cases, and thus had no business to promote post-petition.

## OBJECTION

Section 503 of the Bankruptcy Code accords administrative expense priority to claims representing "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To be considered an actual, necessary cost and expense of preserving the estate, a claim "must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the operation of the business." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (internal citation omitted).

In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed. In re Bernard Techs., Inc., 342 B.R. 174, 177 (Bankr. D. Del. 2006) (Walrath, J.). Accordingly, the movant under section

503(b)(1)(A) carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Id. (quoting Calpine, 181 F.3d at 533); see In re Unidigital, Inc., 262 B.R. 283, ("Claimants who seek payment ahead of other unsecured claims bear the burden of establishing that their claim qualifies for priority status."). Movant must prove its entitlement to an administrative expense claim against the Debtors by a preponderance of the evidence. Bernard Techs., 342 B.R. at 177. Movant cannot meet this burden. Thus, there is no basis to conclude Movant's putative claim should be paid dollar-for-dollar ahead of the claims of other unsecured creditors who will receive a *pro rata* distribution on their claims.

I.  **MOVANT CANNOT ESTABLISH THE SUBJECT CONTRACTS WERE WITH A DEBTOR ENTITY**

The Subject Contracts are, on their face, between Movant and Owner Builder Network. The contract dated August 2006 is executed by an unidentified individual on behalf of Owner Builder Network and appears to have no connection whatsoever to the Debtors. The contract dated March 2007 is executed by one "Frank Sheehy" on behalf of Owner Builder Network, and lists Owner Builder Network's address as "c/o American Home Mortgage". Movant contends Mr. Sheehy executed the contract on behalf of "American Home Mortgage," but this is not at all clear from the four corners of the contract, which identifies the contract parties as Movant and Owner Builder Network. Nor is it clear from the documents provided by Movant to the Debtors what authority, if any, Mr. Sheehy had to bind any of the Debtors contractually.

The Debtors searched their records for contracts with Movant, and were able to locate two, which are attached hereto as Exhibit A and were previously provided to Movant. These contracts were executed by American Home Mortgage Corp. ("AHM Corp.") (not Owner

3

Builder Network) through its general counsel (not Mr. Sheehy) and were identified on AHM Corp.'s Schedule G. Simply put, nothing in the Debtors' records corroborates Movant's claims based on the Subject Contracts, which is why the Debtors have little choice but to object to Movant's claim *in toto*.

## II. MOVANT CANNOT ESTABLISH A "TRANSACTION WITH THE DEBTOR IN POSSESSION"

Even if the Subject Contracts were with a debtor entity, they did not become enforceable against the bankruptcy estate because they were never assumed by the Debtors post-petition. See Bernard Techs., 342 B.R. at 178 ("Because [administrative expense claimant's contract] was never assumed by the Debtor post-petition, it was not binding on the estate." (citing Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 44 (1st Cir. 2003))).

Movant argues the Subject Contracts should be "deemed adopted" by the Debtors post-petition, but this result would be entirely at odds with section 365(a) of the Bankruptcy Code, which requires bankruptcy court approval, after notice and a hearing, of the assumption of any contract. See 11 U.S.C. § 365(a); FBI Distrib., 330 F.3d at 45-46 (noting it is "well-settled" an executory contract may not be assumed "by implication"; collecting authorities). The only case cited by Movant for its "deemed adoption" theory is inapposite, and predates the weight of authority holding that implicit assumption is not possible under the Bankruptcy Code. See In re Shoppers Paradise, Inc., 8 B.R. 271, 279 (Bankr. S.D.N.Y. 1980) (holding court-approved assumption of a lease by debtor-lessor was not a prerequisite to debtor in possession's right to collect rent from nondebtor-lessee). Accordingly, Movant has failed, both factually and legally, to establish a transaction with the bankruptcy estate that supports its claim for administrative expense priority.

### III. MOVANT CANNOT ESTABLISH A BENEFIT TO THE ESTATE

Even if the Subject Contracts were with a debtor entity and could be said to constitute transactions with the bankruptcy estate, Movant would only be entitled to an administrative expense for "the reasonable value of those postpetition services that benefited the estate." Bernard Techs., 342 B.R. at 178; accord In re William J. Brittanham, Inc., 39 B.R. 575 (Bankr. D. Del. 1984) (allowing nondebtor lessor a "use and occupancy" claim for the post-petition, pre-rejection period).  The Motion does not explain how the Debtors' bankruptcy estates benefited from Movant's provision of advertising services.  In point of fact, the estates *could not have benefited*, because the Debtors ceased all but their loan servicing operations prior to the Petition Date and did not offer products or services to the general public post-petition. (See Declaration of Michael Strauss in Support of the Debtors' Chapter 11 Petitions and First Day Relief [D.I. 2] at ¶ 34 (describing August 3, 2007, reduction in force and the closing of the Debtors' retail branches).) Accordingly, Movant cannot carry its burden of establishing a benefit to the bankruptcy estate.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order denying the Motion with prejudice and granting the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      August 4, 2009

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              /s/ Sean M. Beach
                              Sean M. Beach (No. 4070)
                              Margaret Whiteman Greecher (No. 4652)
                              Patrick A. Jackson (No. 4976)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                              Counsel for Debtors and
                              Debtors in Possession

## EXHIBIT A

**Known Contracts with CBS Outdoor Inc.**

# ⊕CBS OUTDOOR
## POSTER AGREEMENT

Contract # 0341381　　　　　　　　　　　　　　　　　　　　　　　Date: 12/18/06

American Home Mortgage Corp. "ADVERTISER/AGENCY" hereby contracts with CBS OUTDOOR ("CBS") for the installation & maintenance (Service) of the outdoor advertising display as described below upon the terms and conditions set forth in this contract* for a period of __6 Months__ commencing approximately on the estimated start date* of __12/15/06__
*Programs will be posted within 5 working day of specified approximate start date but will continue for the entire length of contract period.

| MARKET | POSTING DATE/LOCATION | GRP | # POSTERS | COST PER PERIOD |
|---|---|---|---|---|
| New Orleans 30-Sheet Posters | 12/15/06 | UNIT | 1 | $1,100.00 |

**ADVERTISER**　　American Home Mortgage Corp.　　**TOTAL NET AMOUNT:**　　$6,600.00
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**NET AMOUNT PER PERIOD:**　　$1,100.00

**Special Instructions** Copy must meet production specifications and be received by 12/01/06

Advertiser/Agency shall supply all posters and assume all production and shipping charges. Advertiser/Agency supplied Production must be delivered to CBS five working days prior to the estimated start date. Failure to deliver Production within five working days prior to estimated start date will result in a delay of up to fifteen working days from receipt of Production for installation or $75 per location for expedited installation within five working days of receipt of Production. If Production reaches CBS after the contracted start date, CBS shall be entitled to payment for the full contracted period, even if partial or no display results. CBS will provide up to three photos of creative execution. Failure to provide such photos shall not impair CBS's rights hereunder.

IN THE EVENT OF DEFAULT IN THE PAYMENT OF AMOUNTS DUE HEREUNDER, CBS MAY DECLARE THE FULL CONTRACT BALANCE IMMEDIATELY DUE AND PAYABLE. THIS CONTRACT IS SUBJECT TO THE APPROVAL OF CBS OUTDOOR'S GENERAL MANAGER AND THE OWNER OF THE LOCATION WHERE APPLICABLE.

THIS CONTRACT IS SUBJECT TO THE TERMS CONTAINED ON THE PAGE AND THE ADDITIONAL TERMS AND CONDITIONS ON PAGE TWO HEREOF INCORPORATED HEREIN BY THIS REFERENCE. FACSIMILE SIGNATURES SHALL HAVE THE SAME FORCE AND EFFECT AS ORIGINAL SIGNATURES. AGENCY AND THE PERSON SIGNING ON BEHALF OF AGENCY REPRESENT AND WARRANT THAT THEY ARE AUTHORIZED TO EXECUTE THE SAME ON BEHALF OF THE ADVERTISER AND THAT AGENCY FULLY APPROVES SAME. ADVERTISER/AGENCY ACKNOWLEDGES RECEIPT AND REVIEW OF THIS PAGE AND PAGE TWO HEREOF (POSTER AGREEMENT - ADDITIONAL TERMS AND CONDITIONS - PA-0109, WHICH IS AVAILABLE FROM ANY CBS OFFICE OR REPRESENTATIVE IF LOST OR NOT RECEIVED BY ADVERTISER/AGENCY)

THIS CONTRACT MAY BE CANCELABLE BY ADVERTISER/AGENCY UPON ~~NINETY (90)~~ 30 DAYS PRIOR WRITTEN NOTICE OF AFFECTED POSTING AS FURTHER SPECIFIED ON PAGE TWO HEREOF

CBS OUTDOOR Sales A.E. Marcus Hollis 938　　　　　Advertiser/Agency American Home Mortgage Corp.
Additional Sales A.E. _____　　　　　Print Name Alan Horn
CBS OUTDOOR Service A.E. _____　　　　　Signature _____
General Manager _____　　　　　Date 12/18/06
Date _____　　　　　　　　　　　　　Address 3445 N. Causeway Blvd. #906
Shipping Address CBS Outdoor　　　　　　　　　　　　Metairie, LA 70002
　　　　　　　　　955 Central Ave.　　　　　　　　　　(504)838-8161 x 21
　　　　　　　　　Metairie, LA 70001　　　　　　　　　Attn: Joe Vilcan
　　　　　　　　　504-246-0500

CBS Outdoor 955 Central Ave. Metairie, LA 70001 504-246-0500

TERMS AND CONDITIONS OF ADVERTISING SERVICE

TERMS AND CONDITIONS OF ADVERTISING SERVICE

Page 1 of 1

1. The Advertiser agrees to furnish sufficient supply of advertising copy in the form and type specified by the Company. Advertising copy shall be produced in accordance with the Company's exact specifications, at Advertiser's sole cost and expense. Advertiser shall deliver same (at its cost) to the Company or to service points designated by the Company at least ten (10) business days before the installation date, without expense to the Company or loss of service may occur. If copy is not so received, Company may, at its option leave such space vacant, repeat Advertiser's name, business and address in the space covered by this contract, or post alternative copy in the space and Advertiser agrees to pay for such space. No nudity, pornographic, profane or obscene copy shall be permitted. The character, design, text and illustrations on advertising copy and the material used shall be subject to approval by the Company and also by each location owner or third party that controls such location ("Owner"), and their decision as to acceptability shall be final and without any liability whatsoever to either the Company or Owner. In the event copy is rejected, Advertiser/Agency shall be responsible for providing an acceptable replacement. If production is received after the date specified by Company, Company shall be entitled to full payment for the contract period even if partial or no display results.

2. Should the Advertiser's copy be damaged, defaced, mutilated or spoiled by reason of storm, flood, strike, vandalism, ordinary wear and tear, or any other cause, or if lost or stolen, replacement copy shall be furnished by the Advertiser, upon the Company's request, without liability or expense to the Company. Company is hereby authorized to remove and to leave vacant or to use substitute copy for any display material which may be defaced, damaged or otherwise become deteriorated and for which Advertiser has failed to provide replacements, without liability or expense to Company. It is hereby agreed that non-use of space arising from Advertiser's failure to provide such replacement will not relieve Advertiser from obligation to pay for such space.

3. Advertiser/Agency shall indemnify, defend and save harmless the Company and each Owner concerned against any liability to which they may be subjected by reason of the advertising material displayed under this contract, including, but not limited to, liability for infringement of trademarks, trade names copyrights, invasion of rights of privacy, defamation, illegal competition or trade practices, as well as all reasonable costs, including attorney's fees and expenses, in defending any such action or actions.

4. Unless otherwise specified on the face hereof, there will be a service charge for all installations on walls and for any changes in display material after initial placement of showing required under this Contract. Company agrees that all designs for displays will be faithfully reproduced and that the displays will be maintained in good condition. Any repainting desired by Advertiser/Agency in addition to that specified herein, if any, shall be paid in accordance with Company's current quoted prices.

5. If any display location is lost during the term hereof, or if it becomes impossible to secure any specified location, or should any display become obstructed, destroyed or defaced, in whole or in part, because of any act or thing beyond Company's control, any resulting loss of advertising shall not be deemed a breach or termination of this Agreement. Lost locations may be replaced with locations of equal value in accordance with Company's prices and classifications. Any resulting loss of advertising service caused by any reason whatsoever, whether from Company's conduct or conduct beyond Company's control, shall be remedied solely by extending the terms of this Agreement to provide an equivalent amount of advertising service at the contracted location or a replacement location of equal value. Notwithstanding anything contained herein to the contrary, Company shall also have the option to terminate this Contract upon the loss of any location resulting from any act or cause beyond Company's control, including any change in law, ordinance, rule or regulation and Company shall be entitled to payment in full for services through the termination date.

6. Illuminated displays shall be illuminated from dusk to midnight unless otherwise indicated. In the event illumination is halted or reduced for any reason whatsoever, including but not limited to by reason of any law, ordinance, regulation or malfunction of equipment, it is hereby agreed that Company's liability to Advertiser/Agency shall be limited to render a credit for the period of non-illumination or reduced illumination at the rate of 15% of the contract price for the period of non-illumination provided Advertiser/Agency shall have first given written notice to Company of the non-illumination problem and such problem continues for more than five (5) days after receipt of such notice by Company. Reduced illumination will be prorated based on the non-illumination credit.

7. Advertiser/Agency shall inspect the display within three (3) days after installation. Unless within such period, Advertiser/Agency gives written notice to Company specifying any defect the display shall be conclusively presumed to have been inspected and approved by Advertiser/Agency for all purposes whatsoever, including content and location of displays.

8. In the event any Owner shall disapprove any advertisement, or in the event of adverse publicity of any nature resulting from ~~the presence~~ *only if* of any display, the Company shall have the right to remove said advertisement forthwith. The Advertiser shall be responsible for the payments due during the entire term stated ~~regardless of whether~~ replacement copy is provided. The Company and Advertiser accept this contract subject to all federal, state and municipal laws and regulations with respect to the advertising matter to be displayed. In the event such advertising becomes illegal or a request is received to terminate the advertising, the Company reserves the right to terminate same, but there shall be no short-rate charge because of such termination. Furthermore, in the event Company cancels and individual contract(s), Advertiser/Agency's obligation shall cease, except that Agency shall make payment for unauthorized cost of embellishments, if any. Company shall not be responsible for copy which has been removed at the request of the Owner or has been terminated as a matter of law.

9. The Agency and Advertiser agree to pay for the advertising service covered by this contract and agree to be jointly and severally liable for payment thereof, including reasonable expenses for collection, attorney's fees and expenses and court costs. The Company reserves the right to cancel this contract at any time upon default by the Advertiser in payment or other breach, or in the event of any material violation on the part of the Advertiser of any of the conditions herein named; and upon such cancellation, all payments for advertising done hereunder, including short term rates or other charges under this contract and unpaid, shall become immediately due and payable. ...

10. Bills will be rendered monthly ... Net 30 CH

... [remaining text heavily degraded]

... Except that Advertiser may assign to an affiliate

. All Advertisers will receive ninety (90) days advance notification of any change in advertising rates. Advertiser may terminate as of the effective rate change date by notification at least thirty (30) days or thereto.

~~Advertiser grants Company permission to promote the Company's own business through the use of Advertiser's posters or displays in any manner whatsoever.~~

This contract becomes effective when accepted by the Company at its office in New York City, and contains the full agreement of the parties, and no prior representation or assurance, verbal or written contained herein, shall affect or alter the obligation of either party hereto.

As used in this Agreement the term Advertiser@ shall include Advertising Agency, or any other agent or licensee of Advertiser as well as the Advertiser.

Company is an equal opportunity employer

In the event of legal action arising out of this Contract, including but not limited to claims for non-payment, New York County, New York shall be the exclusive jurisdiction and venue for said action. Contract and all claims arising hereunder shall be construed according to the laws of the State of New York.

- Rider 1 (attached)

## RIDER 1

The *Poster Agreement* and the *Terms and Conditions of Advertising Service* attached hereto (collectively, the "Contract") is hereby amended and modified by this rider 1 ("Rider"). In the event of a conflict between the terms and conditions of this Rider and the terms and conditions of the Contract, this Rider shall control.

1. Upon any termination or cancellation of the Contract for any reason (except for Advertiser's material, uncured breach of the Contract or this Rider): (a) Company shall promptly refund to Advertiser all prepaid and unapplied fees paid by Advertiser to Company under the Contract; and (b) Company shall have no further liability for any payments to Company under the Contract beginning from the date of termination or cancellation.

2. If Advertiser fails to perform any of its obligations set forth in the Contract or breaches any of the terms of the Contract, prior to Company's termination or cancellation of the Contract, Company shall notify Advertiser, in writing, of such breach and/or failure and allow Advertiser a reasonable amount of time to cure such breach or failure.

3. No news release or any other form of publicity pertaining to the Contract or the transactions contemplated hereby will be allowed without the prior written consent of Advertiser, including without limitation any use of the marks of Advertiser.

Acknowledged and agreed:

Company:  
CBS OUTDOOR

Signature: _____  
Name: Brian Cuyler  
Title: G.M.  
Date: 12/15/06

Advertiser:  
AMERICAN HOME MORTGAGE CORP.

Signature: _____  
Name: Alan Horn  
Title: Executive Vice President  
Date: 12/18/06

04/30/2007  09:36   15042430766                                           PAGE 02/02

APR-28-2007 THU 01:33 PM                     FAX NO.                           P. 02


04/18/2007  19:42   15042430766                                           PAGE 02/03

Page 1 of 1

# CBS OUTDOOR
## POSTER AGREEMENT

Contract # 5374258                                                    Date: 04/18/07

_American Home Mortgage Corp._ "ADVERTISER/AGENCY" hereby contracts with CBS OUTDOOR ("CBS") for the Installation & maintenance (Service) of the outdoor advertising display as described below upon the terms and conditions set forth in this contract for a period of _6 months_, commencing approximately on the estimated start date* of _06/25/07_.
*Programs will be posted within 5 working days of specified approximate start date but will continue for the entire length of contract period.

| MARKET | POSTING DATE/LOCATION | GRP | # POSTERS | COST PER PERIOD |
|---|---|---|---|---|
| New Orleans 30-Sheet Posters | 06/25/07 | UNIT | 1 | $1,100.00 |

ADVERTISER   _American Home Mortgage Corp._    TOTAL NET AMOUNT:    $6,600.00
                                                NET AMOUNT PER PERIOD:  $1,100.00

**Special Instructions** This contract is a renewal. Previous terms and conditions apply.

[Terms and conditions paragraphs - illegible]

CBS OUTDOOR Sales A.E. _Marcus Hollingers_         Advertiser/Agency _American Home Mortgage Corp._
Additional Sales A.E. _____               Print Name _Alan Hark_
CBS OUTDOOR Service A.E. _____               Signature _____
General Manager _____                    Date _4-24-07_
Date _____                               Address _3445 N. Causeway Blvd. #906_
Shipping Address _CBS Outdoor_                              _Metairie, LA 70002_
                 _955 Central Ave._                         _(504)___-____
                 _Metairie, LA 70001_                       Attn: _Joe Vigan_
                 _504-245-0500_

CBS Outdoor 955 Central Ave. Metairie, LA 70001  504-248-0500

http://viacomoutdoor:1501/VIACOMBSI_ND/cpsicpvwps.mbs/default?user=7587742976    4/18/2007

### TERMS AND CONDITIONS OF ADVERTISING SERVICE

1. The Advertiser agrees to furnish sufficient supply of advertising copy in the form and type specified by the Company. Advertising copy shall be produced in accordance with the Company's such specifications, at Advertiser's sole cost and expense. Advertiser shall deliver same (at its cost) to the Company or to service points designated by the Company, at least ten (10) business days before the installation date, without exposure to the Company or loss of service may occur. If copy is not so received Company may, at its option leave such space vacant, repeat Advertiser's name, business and address in the space covered by this contract or post alternative copy in the space and Advertiser agrees to pay for such space. No nudity, pornographic, profane or obscene copy shall be permitted. The character design, text and illustrations on advertising copy and the material used shall be subject to approval by the Company and also by each location owner or third party that controls such location ("Owner"), and their decision as to acceptability shall be final and without any liability whatsoever to either the Company or Owner. In the event copy is rejected, Advertiser/Agency shall be responsible for providing an acceptable replacement. If production is received after the date specified by Company, Company shall be entitled to full payment for the contract period even if partial or no display results.

2. Should the Advertiser's copy be damaged, defaced, mutilated or spoiled by reason of storm, flood, strike, vandalism, ordinary wear and tear, or any other cause, or if lost or stolen, replacement copy shall be furnished by the Advertiser, upon the Company's request without liability or expense to the Company. Company is hereby authorized to remove and to leave vacant or to use substitute copy for any display material which may be defaced, damaged or otherwise become deteriorated and for which Advertiser has failed to provide replacements, without liability or expense to Company. It is hereby agreed that non-use of space arising from Advertiser's failure to provide such replacement will not relieve Advertiser from obligation to pay for such space.

3. Advertiser/Agency shall indemnify, defend and save harmless the Company and each Owner concerned against any liability to which they may be subjected by reason of the advertising material displayed under this contract including, but not limited to, liability for infringement of trademarks, trade names, copyrights, invasion of rights of privacy, defamation, illegal competition or trade practices, as well as all reasonable costs, including attorney's fees and expenses, in defending any such action or actions.

4. Unless otherwise specified on the face hereof, there will be a service charge for all installations on walls and for any changes in display material after initial placement of showing required under this Contract. Company agrees that all designs for displays will be faithfully reproduced and that the displays will be maintained in good condition. Any repainting desired by Advertiser/Agency in addition to that specified herein, if any, shall be paid in accordance with Company's current quoted prices.

5. If any display location is lost during the term hereof, or if it becomes impossible to secure any specified location, or should any display become obstructed, destroyed or defaced in whole or in part, because of any act or thing beyond Company's control, any resulting loss of advertising shall not be deemed a breach or termination of this Agreement. Lost locations may be replaced with locations of equal value in accordance with Company's prices and classifications. Any resulting loss of advertising service caused by any reason whatsoever, whether from Company's conduct or conduct beyond Company's control, shall be remedied solely by extending the terms of this Agreement to provide an equivalent amount of advertising service at the contracted location or a replacement location of equal value. Notwithstanding anything contained herein to the contrary, Company shall also have the option to terminate this Contract upon the loss of any location resulting from any act or cause beyond Company's control, including any change in law, ordinance, rule or regulation and Company shall be entitled to payment in full for services through the termination date.

6. Illuminated displays shall be illuminated from dusk to midnight unless otherwise indicated. In the event illumination is halted or reduced for any reason whatsoever, including but not limited to by reason of any law, ordinance, regulation or malfunction of equipment, it is hereby agreed that Company's liability to Advertiser/Agency shall be limited to render a credit for the period of non-illumination or reduced illumination at the rate of 15% of the contract price for the period of non-illumination provided Advertiser/Agency shall have first given written notice to Company of the non-illumination problem and such problem continues for more than five (5) days after receipt of such notice by Company. Reduced illumination will be prorated based on the non-illumination credit.

7. Advertiser/Agency shall inspect the display within three (3) days after installation. Unless within such period, Advertiser/Agency gives written notice to Company specifying any defect the display shall be conclusively presumed to have been inspected and approved by Advertiser/Agency for all purposes whatsoever, including content and location of displays.

8. In the event any Owner shall disapprove any advertisement, or in the event of adverse publicity of any nature resulting from the presence of any display, ~~the~~ Company shall have the right to remove said advertisement forthwith. The Advertiser shall be responsible for the payments due during the entire term stated ~~regardless of whether~~ replacement copy is provided. The Company and Advertiser accept this contract subject to all federal, state and municipal laws and regulations with respect to the advertising matter to be displayed. In the event such advertising becomes illegal or a request is received to terminate the advertising, the Company reserves the right to terminate same, but there shall be no short rate charge because of such termination. Furthermore, in the event Company cancels any individual contract(s), Advertiser/Agency's obligation shall cease, except that Agency shall make payment for unamortized cost of embellishments, if any. Company shall not be responsible for copy which has been removed at the request of the Owner or has been terminated as a matter of law.   *only if*

9. The Agency and Advertiser agree to pay for the advertising service covered by this contract and agree to be jointly and severally liable for payment thereof, including reasonable expenses for collection, attorney's fees and expenses and court costs. The Company reserves the right to cancel this contract at any time upon default by the Advertiser in payment or other breach, or in the event of any material violation on the part of the Advertiser of any of the conditions herein named; and upon such cancellation, all payments for advertising done hereunder, including short term rates or other charges under this contract and unpaid, shall become immediately due and payable. ~~Company at its option may elect to terminate this contract but consider the entire balance of payments to be made under this contract accelerated and immediately due and payable.~~ Waiver by the Company of any specific breach or breaches of this Contract by the Advertiser shall not prejudice the rights of the Company hereunder with respect to any breach or breaches not specifically waived by the Company. In the event of any such breach or breaches, the Company shall be discharged from any obligation to further display the Advertiser's copy and in the event of such suit for the collection of unpaid amounts, all costs of the suit, including reasonable attorney's fees and expenses, may be added to the monies owed. For purposes of this condition, reasonable attorney fees are deemed and accepted to be twenty five percent (25%) of the unpaid account. The Company shall hold the Agency and the Advertiser jointly and severally liable in the event of any default of payment. Should either of the Agency or the Advertiser become bankrupt or be delinquent in payment Company may proceed hereunder against Advertiser and/or Agency without relieving either party of its liabilities to Company.   *20*

10. Bills will be rendered monthly in advance dating from the commencement date of this contract and Advertiser agrees to make payment not in advance upon receipt of bills. Any bill rendered to the Advertiser shall be conclusive as to the correctness of the items stated therein and shall constitute an account stated unless written objection is made thereto by the Advertiser within fifteen (15) days from the rendering thereof. This conclusive presumption shall apply to both the specifics of the showing and the dollar amount due. Non-receipt of invoices shall not ~~excuse non-payment~~. Any discounts given shall be forfeited/reversed if related invoices are not paid within 60 days from the date hereof. All rates and adjustments are computed on the basis of thirty (30) days to the month. ~~Bills shall be deemed to commence however~~ ~~monthly bills shall be unpaid for thirty (30) days.~~ Payments are subject to late payment charge of one and one-half percent (1.5%) per month (18% per annum), or such lesser amount as permitted by law. Such charge will be added after thirty (30) days. Any Agency commissions which may be due shall be payable by the Advertiser. The Company shall have no liability to pay such commissions. Advertiser shall notify Company of any change in its named Agency. Unless otherwise specified on the face hereof, rate indicated in this contract is not subject to advertising agency commission.

11. The Company shall not be held responsible for unused posters, displays or other copy not called for by the Advertiser within ten (10) days after expiration of contract. After ten (10) days Company may dispose of such materials. The Company shall not be held liable for the return of any poster or display used by it in a showing.

12. This contract is not extendible or assignable by the Advertiser, nor may the subject of the advertising be changed without the consent of Company (*except that Advertiser may assign to an affiliate*)

13. Acceptance of this contract is subject to credit check and approval by Company, Company, in its sole discretion, may extend or reject credit, or at any time during the term withdraw credit. In such event Company may require payment of the full or partial contract amount be made in advance.

14. All Advertisers will receive ninety (90) days advance notification of any change in advertising rates. Advertiser may terminate as of the effective rate change date by notification at least thirty (30) days prior thereto.

15. ~~Advertiser grants Company permission to promote the Company's own business through the use of Advertiser's posters or displays in any manner whatsoever.~~

16. This contract becomes effective when accepted by the Company at its office in New York City, and contains the full agreement of the parties and no prior representation or assurance verbal or written not contained herein shall affect or alter the obligation of either party hereto.

17. As used in this Agreement the term Advertiser(s) shall include Advertising Agency or any other agent or licensee of Advertiser, as well as the Advertiser

18. Company is an equal opportunity employer

19. In the event of legal action arising out of this Contract, including but not limited to claims for non-payment, New York County, New York shall be the exclusive jurisdiction and venue for said action. This Contract and all claims arising hereunder shall be construed according to the laws of the State of New York.

— Rider 1 (attached)




### RIDER 1

The *Poster Agreement* and the *Terms and Conditions of Advertising Service* attached hereto (collectively, the "Contract") is hereby amended and modified by this rider 1 ("Rider"). In the event of a conflict between the terms and conditions of this Rider and the terms and conditions of the Contract, this Rider shall control

1. Upon any termination or cancellation of the Contract for any reason (except for Advertiser's material, uncured breach of the Contract or this Rider): (a) Company shall promptly refund to Advertiser all prepaid and unapplied fees paid by Advertiser to Company under the Contract; and (b) Company shall have no further liability for any payments to Company under the Contract beginning from the date of termination or cancellation.

2. If Advertiser fails to perform any of its obligations set forth in the Contract or breaches any of the terms of the Contract, prior to Company's termination or cancellation of the Contract, Company shall notify Advertiser, in writing, of such breach and/or failure and allow Advertiser a reasonable amount of time to cure such breach or failure.

3. No news release or any other form of publicity pertaining to the Contract or the transactions contemplated hereby will be allowed without the prior written consent of Advertiser, including without limitation any use of the marks of Advertiser

Acknowledged and agreed:

Company:                                    Advertiser:
**CBS OUTDOOR**                             **AMERICAN HOME MORTGAGE CORP.**

Signature: _____                  Signature: _____
Name:  Brian R. Cuyler                      Name:  Alan Horn
Title:  H.M.                                Title:  Executive Vice President
Date:  4/24/07                              Date:  April 25, 2007