**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| AMERICAN HOME MORTGAGE ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., *et al.*, ) | |
| ) | Jointly Administered |
| Debtors. ) | |

Hearing Date: September 8, 2009 at 11:00 a.m.
Objection Deadline: September 1, 2009 at 4:00 p.m.

**JOINT MOTION OF THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AND COMPROMISE WITH FORMER OFFICERS AND DIRECTORS OF AHM INVESTMENT**

The Debtors[1], including American Home Mortgage Investment Corp. ("AHM Investment"), and the Official Committee of Unsecured Creditors of the Debtors (the "Committee"), by and through their undersigned counsel, hereby move this Court for approval of the "Agreement of Settlement and Compromise", annexed hereto as Exhibit A (the "Agreement"), between and among the Debtors, the Committee and the following former officers and directors of AHM Investment: Michael Strauss ("Strauss"), Stephen Hozie ("Hozie"), Robert Bernstein ("Bernstein"), John A. Johnston ("Johnston"), Nicholas R. Marfino ("Marfino"), Michael A. McManus, Jr. ("McManus"), C. Cathleen Raffaeli ("Raffaeli"), Irving J. Thau ("Thau"), Kenneth P. Slosser ("Slosser"), and Kristian R. Salovaara ("Salovaara") (each a "Settling Director and Officer" and collectively the "Settling D&Os"; and the Debtors, Committee and Settling D&Os the "Parties"; and the Debtors, Committee and each Settling

---

[1] The Debtors are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

128189.01600/40183050v.1

Director and Officer, each a "Party").  In support of this motion (the "Motion"), the Debtors and the Committee respectfully represent to the Court as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding as defined in 28 U.S.C. § 157(b).

2. The bases for the relief requested herein are section 105(a) of the title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On August 6, 2007 (the "Petition Date"), each of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4. The Debtors' chapter 11 cases are being jointly administered.

5. Since the Petition Date, the Debtors have continued in the operation and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On August 14, 2007, the United States Trustee for the District of Delaware appointed the Committee, consisting of seven of the Debtors' largest unsecured creditors.  Blank Rome LLP and Hahn & Hessen LLP ("H&H") are co-counsel to the Committee.

7. No trustee or examiner has been appointed in these cases.

8. On August 15, 2008, the Debtors filed a "Chapter 11 Plan of Liquidation of the Debtors" (as thereafter amended, the "Amended Plan").

9. On February 23, 2009, the Bankruptcy Court entered its "Findings of Fact, Conclusions of Law and Order Confirming the Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009" (the "Confirmation Order").

10. The Amended Plan has not yet become effective.

11. The Amended Plan, upon becoming effective, contemplates the creation of a Liquidating Trust (the "Liquidating Trust") and the appointment of a Liquidating Trustee (the "Liquidating Trustee") for the purpose of liquidating the Debtors' remaining assets, including any claims or causes of action that the Debtors may have, for the benefit of the Debtors' creditors.

12. The Committee has selected Steven D. Sass to serve as Liquidating Trustee. Mr. Sass will become the Liquidating Trustee once the Amended Plan becoming effective. The selection of Mr. Sass as Liquidating Trustee has been approved by the Bankruptcy Court in the Confirmation Order.

13. Prior to the Petition Date, the Settling D&O's served as either directors or officers of AHM Investment.

14. Prior to the Petition Date, the Debtors had obtained a "Directors, Officers and Corporate Liability/General Partners and Limited Partnership Insurance Policy" (the "Primary Policy") from National Union Fire Insurance Company of Pittsburgh, Pa. (Policy Number 673-84-28) ("National Union"), as well as four excess insurance policies (the "Excess Policies" and together with the Primary Policy, the "Policies") from (a) those underwriters at Lloyd's subscribing to Policy Number 146/LDUSA0601849 ("Lloyd's"); (b) ACE American Insurance Company (Policy Number DOX G23651439 001) ("ACE"); (c) Zurich American Insurance Company (Policy Number 9680911 00) ("ZAI"); and (d) Illinois National Insurance Company

3

(Policy Number 673-86-10) ("Illinois National") (National Union, Lloyd's, ACE, ZAI and Illinois National are collectively referred to as the "Insurers")

15. On or about January 2009, the Committee and several of the Settling D&Os, by their respective counsel, began discussions concerning potential pre-petition claims that the Committee believed the Debtors and Debtors' estates may have against the Settling D&Os including, but not limited to claims for breach of fiduciary duties as well as claims under chapter 5 of the Bankruptcy Code (the "Potential Claims").

16. On April 9, 2009, the Committee, the Settling D&Os, ZAI, and Illinois National, by their respective counsel, attended a mediation of the Potential Claims in New York City that was mediated by David Geronemus (the "Mediation").

17. At the Mediation, the Settling D&Os, the Committee, ZAI, and Illinois National, by their respective counsel, reached an agreement to settle and compromise the Potential Claims on the terms and conditions set forth below, subject to the approval thereof by the Debtors and Committee, the execution of this Agreement by all Parties, and the entry by the Bankruptcy Court of an order approving this Agreement.

18. The Debtors and Committee have approved the settlement of the Potential Claims on the terms and conditions set forth below.

19. The Parties have engaged in extensive negotiations over the past several months as to the Agreement's terms. As a result of such negotiations, the Parties have reached a consensual resolution of the Potential Claims, subject to Court approval. The Parties' settlement

128189.01600/40183050v.1

and compromise is embodied in the attached Agreement. The following is a summary of its salient terms:[2]

- Settlement Amount. The Settling D&Os agree to cause to be paid by the Insurers, on behalf of the Settling D&Os, and the Debtors (with the Committee's approval) agree to accept, the sum of Five Million Six Hundred and Twenty-Five Thousand Dollars ($5,625,000) in full settlement, satisfaction and discharge of the Potential Claims (the "Settlement Sum").

- Payment of Settlement Amount. The Settlement Sum shall be paid by check or wire transfer, subject to collection and payable to "Hahn & Hessen LLP, as counsel for the Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc., et al.," within fifteen (15) business days after the entry of a Final Order (the "Settlement Payment"). In the event the Amended Plan has become effective before the Settlement Sum is due to be paid, the Settlement Payment shall be paid by check or wire transfer, subject to collection and payable to "Hahn & Hessen LLP, as counsel for the American Home Mortgage Holdings, Inc. Liquidating Trust."

- Cooperation. Upon the entry of a Final Order approving this Agreement, each of Strauss, Hozie and Bernstein agree to reasonably cooperate with respect to requests for information concerning the Debtors' business and affairs before the Petition Date made of him by the following: (a) the Committee's professionals; (b) upon the Amended Plan becoming effective, the Liquidating Trustee and his/her professionals; and (c) any other successor (including its professionals) to the Debtors approved and/or appointed by the Bankruptcy Court.

- Releases. Upon the entry of a Final Order approving this Agreement, the Settling D&Os on one hand, and the Debtors and Debtors' estates on the other hand (the "Estate Releasing Parties"), mutually release each other from any and all claims either may have against the other, subject to certain limitations set forth in the Agreement. Additionally, the Estate Releasing Parties also release (a) the former officers and/or directors of the Debtors from all claims for which they would have been entitled to indemnification

---

[2] The Court and interested parties are referred to the annexed Agreement for its complete terms. In the event of any inconsistency between the summary and the Agreement, the terms of the Agreement govern. Capitalized terms not defined herein have the meanings ascribed to them in the Agreement.

128189.01600/40183050v.1

under the Policies and (b) the Insurers from claims and causes of
action arising out of or related to the Policies.

**RELIEF REQUESTED**

20.    By this Motion, the Debtors and the Committee request that the Court enter an order approving the Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

**APPLICABLE AUTHORITY**

21.    Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Bankruptcy Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

See Bankruptcy Rule 9019(a).  Courts have interpreted this rule, as well as its predecessor, section 27 of the Bankruptcy Act, as granting the debtor in possession broad authority to settle controversies.  Since the Debtors and the Committee are acting together on behalf of the estates to compromise the Potential Claims, the Debtors and the Committee believe that it is appropriate for the Court to analyze the settlement embodied in the Agreement under the standard set forth in Bankruptcy Rule 9019(a).

22.    A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises.  See Myers v. Martin (In re Martin), 91 F. 3d 389, 894 (3rd Cir. 1996); In re Coram Healthcare Corp., 315 B.R. 321, 329-30 (Bankr. D. Del. 2004); Florida Trailer and Equip. Co. v. Deal, 284 F. 2d 567, 571 (5th Cir. 1960).  The standard by which courts evaluate a proposed compromise and settlement are well

6

established.  In bankruptcy, the court should approve a proposed compromise and settlement when it is fair and equitable and in the best interests of the debtor's estate and its creditors.  See In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998); In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997).

23. Under the well-established standard for consideration of the merits of a settlement, a settlement should be approved unless it falls below "the lowest point in the range of reasonableness."  In re Coram Healthcare Corp., 315 B.R. at 330 (quoting Official Unsecured Creditors' Comm. v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.), 150 B.R. 595, 598 (E.D. Pa. 1992)).  Specifically, this standard includes consideration of the following factors:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998).

24. The Agreement is a product of the Parties' extensive arm's length negotiations.  The Debtors and the Committee submit that the Agreement presents a very favorable resolution for the Debtors' estates.  If the Parties were to litigate the Potential Claims, particularly the highly complex legal and factual issues relating to claims against the Directors and Officers, the Debtors' estates would clearly incur substantial litigation expenses and risk an unfavorable result.  The Agreement will allow the Debtors' estates to realize a significant settlement ($5,625,000) while entirely avoiding litigation risks and substantial expenses.  Given the lack of funds the estate currently has, the risks involved in litigation, the substantial expenses involved in lengthy litigation, and the fact that defense costs of such litigation will reduce the limited insurance proceeds available to fund any judgment, weigh heavily towards accepting the settlement.

25. In reaching this settlement the Debtors and the Committee have considered the (a) the legal hurdles that will have to be overcome to obtain a judgment, (b) the limitation on available insurance proceeds, (c) the other litigations seeking recovery from the same pool of insurance, (d) the extensive costs of continuing this litigation and (e) Settling D&O's ability to satisfy any judgment that could be obtained against them from personal assets. In light of all of these factors, the Debtors and the Committee believe that this settlement reflects the best possible outcome for recovery to the estates.

26. Lastly, Strauss, Hozie and Bernstein's agreement to reasonably cooperate with respect to requests for information concerning the Debtors' business and affairs before the Petition Date gives the Committee and the Trustee the ability to pursue other litigations.

27. Based on these and the other compromises set forth in the Agreement, the parties submit that their resolution is well above the "lowest point in the range of reasonableness."

28. For all of the foregoing reasons, the Debtors and the Committee respectfully submit that the Agreement fairly and reasonably resolves the Potential Claims, serves the best interests of unsecured creditors of the Debtors and their estates, and should be approved by the Court.

## **NOTICE**

29. Notice of this Motion has been provided to: (1) the Office of the United States Trustee for the District of Delaware and (2) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. The Debtors and Committee submit that, in light of the nature of the relief requested, no other or further notice need be given.

128189.01600/40183050v.1

## NO PRIOR REQUEST

30. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors and the Committee request that the Court approve and "so order" the Agreement and grant such other further relief the Court deems just and proper.

Dated: August 13, 2009
       Wilmington, Delaware

| | |
|---|---|
| */s/ Sean M. Beach* | */s/ David W. Carickhoff* |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | BLANK ROME LLP |
| Sean M. Beach (No. 4070) | Bonnie Glantz Fatell (No. 3809) |
| Margaret Whiteman Greecher (No. 4652) | David W. Carickhoff (No. 3715) |
| The Brandywine Building | 1201 Market Street Suite 800 |
| 1000 West Street, 17th Floor | Wilmington, Delaware 19801 |
| Wilmington, Delaware 19801 | Telephone: (302) 425-6400 |
| Telephone: (302) 571-6600 | |
| Facsimile: (302) 571-1253 | -and- |
| | HAHN & HESSEN LLP |
| *Counsel for Debtors and Debtors in Possession* | John P. McCahey |
| | Mark S. Indelicato |
| | Mark T. Power |
| | Edward L. Schnitzer |
| | 488 Madison Avenue |
| | New York, NY 10022 |
| | Telephone: (212) 478-7200 |
| | Facsimile: (212) 478-7400 |
| | |
| | *Counsel for the Official Committee of Unsecured Creditors* |

9

128189.01600/40183050v.1