## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | ) | |
| | ) | **Re: D.I. Nos. 66, 1711, 2166, 2466, 4021, 4084, 4738 and 7248** |
| | ) | |
| Debtors. | ) | **Hearing date: September 8, 2009 at 10:00 am (ET)** |
| | ) | **Objection Deadline: September 3, 2009 at 4:00 pm (ET)** |
| | ) | |

## CITIMORTGAGE, INC.'S MOTION TO COMPEL AHM SERVICING TO RESPOND TO TWO REQUESTS FOR THE PRODUCTION OF DOCUMENTS

CitiMortgage, Inc. ("CMI") moves to compel the Purchaser, American Home Mortgage Servicing, Inc., a Delaware corporation formerly known as AH Mortgage Acquisition Co., and to which it will refer as either "Purchaser" or "AHM Servicing" (but, by this latter reference, CMI does not refer to the debtor entity or any obligations that entity may have had or owed CMI prior to the Initial Closing that took place on November 16, 2007) to respond to two of three requests for production CMI served on AHM Servicing in connection with the pending contested matter involving the Debtors' proposed purchaser's cure amount, and CMI's amended liquidated cure claim for the period between the Initial Closing[1] that occurred on November 16, 2007, and the Final Closing that occurred on April 11, 2008.

### Certificate of Compliance with Fed. R. Civ. P. 37(a)(1)
### (as Bankruptcy Rules 7037 and 9014(c) make it applicable to this contested matter)
### and Del. Bankr. L.R. 7026-1(c)

The undersigned certifies that CMI's counsel, Andrew Petrie, has engaged in a good faith effort to resolve this discovery dispute without involving this Court, which efforts have included several telephone conversations and an exchange of correspondence with Purchaser's counsel, Mark Minuti, but that CMI has not been able successfully to resolve this dispute.

---

[1] For each capitalized term or phrase CMI uses in this amended cure claim and objection that CMI has not separately defined in this amended cure claim and objection, CMI is using the term or phrase as this Court's Sale Order defines it.

2303629

**Relevant Background, the Disputed Discovery Requests,
and the Nature of the Parties' Dispute**

A.    <u>Relevant Background</u>

1.    On August 7, 2007, this Court entered its "Order Pursuant to Sections 105(a), 345, and 503(B)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code" (the "Cash Management Order") [Docket no. 66].

2.    The Cash Management Order directed that the Debtors were to continue servicing mortgages. The Cash Management Order specifically provides, in pertinent part:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court. In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code including, without limitation, section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties.

[Cash Management Order at 6].

3.    The Cash Management Order further provides:

> The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provision of the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents.

[Cash Management Order at 7-8].    And, fleshing out the "trustee monitoring efforts" to which that section refers, the Court ordered that parties under master servicing agreements were expressly

authorized "to monitor the Debtors' compliance with the Securitization Servicing Functions." [Cash Management Order at 7].[2]

4.    On October 30, 2007, this Court entered its "Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtor's Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief" [Docket no. 1711] (the "Sale Order").

5.    On May 9, 2008, this Court entered its "Order, (I) Approving the Form of Notice and Authorizing the Debtors to File a Notice of Proposed Purchaser's Cure Amounts and (II) Establishing a Bar Date for Filing Objections to the Proposed Purchaser's Cure Amounts" [Docket no. 4021] (the "Purchaser's Cure Amount Bar Date Order").

6.    Pursuant to the Purchaser's Cure Amount Bar Date Order, this Court directed the Debtors to serve a Notice setting forth the proposed Purchaser's Cure Amount for each Assumed Contract related to acts or omissions that occurred after the Initial Closing (November 16, 2007) through and including the Final Closing (April 11, 2008). [Purchaser's Cure Amount Bar Date Order ¶ 5].

7.    CMI is the counterparty to two servicing agreements that are Assumed Contracts the Debtors listed on Schedule I to the Sale Order [Schedule I [Docket no. 1703] at 1, 16-17 at index 1.1(j)am and 21 at index 1.1(j)bf] and Exhibit A to the Purchaser's Cure Order [Exhibit A [Docket no. 4021] at 12-13 at index 1.1(j)am, 17 at index 1.1(j)bf and 38]. CMI is, therefore, a Certain Objector and Counterparty entitled to file its final liquidated cure claim. [Sale Order ¶¶ 33, 34 and Purchaser's Cure Amount Bar Date Order ¶¶ 5, 6].

---

[2] While the Court's Cash Management Order does not define "Securitization Servicing Functions," the Debtors' Cash Management Motion included in its definition of that term the performance of "securities related computational, reporting

8.    Pursuant to those two servicing agreements, first the Debtors and then AHM Servicing as the Debtor's successor to these Assumed Contracts agreed to provide various servicing functions to CMI.    Among those functions was the ongoing, continuing obligation to gather and provide documentation for the various mortgage loans they were servicing.

9.    As is common with servicing agreements routinely used in the mortgage lending industry – and as is common among the various servicing agreements that are Assumed Contracts in this bankruptcy proceeding – the CMI Assumed Contracts provide that the servicer will pay any reasonable legal fees incurred in enforcing the contracts.

10.    In their November 26, 2007 Interim Period Cure Schedule [Docket no. 2166, Ex. A at 1, 16-17 and 21], the Debtors listed the Proposed Interim Cure Amounts under both of these CMI Assumed Contracts as -0-.

11.    Similarly, in their Notice of Proposed Purchaser's Cure Amounts filed on May 19, 2008 [Docket no. 4084 at 12-13 and 17], the Debtors listed the Purchaser's Cure Amounts as -0-.

**B.    The Disputed Discovery Requests**

12.    On May 2, 2009, CMI served AHM Servicing with its first request for production of documents, in which it asked AHM Servicing to produce three categories of documents in three separate requests.    [CMI attaches a true and correct copy of these requests as Exhibit 1.]    Two of those requests are the subject of this motion to compel.

13.    AHM Servicing asked for, and CMI granted, two extensions of time to respond to those discovery requests (and in which the parties also engaged in their meet-and-confer efforts to resolve their disputes without the need to involve this Court).

---

and compliance tasks." [Cash Management Motion at ¶ 26].

14.    On June 26, 2009, AHM Servicing served its responses.  CMI attaches a true and correct copy of these responses as Exhibit 2 (excluding, however, the attached documents AHM Servicing produced in response to the one request that is not the subject of this motion to compel).

15.    As Del. Bankr. L.R. 7026-1(b) requires, CMI repeats verbatim the two discovery requests and AHM Servicing responses that are the subject of this motion to compel:

1.    All Documents that evidence, refer or otherwise relate to the loan documentation AHM Servicing has delivered to CMI during the period beginning with the Initial Closing on November 16, 2007 and continuing through the Final Closing on April 11, 2008, including, but not limited to:  (a) Documents showing the AHM Servicing and CMI loan numbers to which that documentation refers; and (b) Documents that describe (by date, document name and/or document type) the documents delivered, and identify the date on which AHM Servicing delivered each document.

**RESPONSE:**  AHMS objects to the foregoing Request on the grounds stated in the General Objections above and to the extent it purports to require AHMS to produce documents in the possession or control of persons other than AHMS.  AHMS further objects on the grounds that the request is overbroad, vague, ambiguous and unduly burdensome.  AHMS also objects to the extent that the request seeks the production of documents the discovery of which is cumulative or duplicative, or is obtainable from some other source that is more convenient or less burdensome.  Finally, AHMS objects to the extent the request does not describe the documents sought pursuant to the request with reasonable particularity in accordance with Fed.R.Civ.P. 34(b).

2303629

*    *    *

3.    All Documents that evidence, refer or otherwise relate to the reasons why AHM Servicing delivered that loan documentation to CitiMortgage, and delivered it when it did between the Initial Closing on November 16, 2007 and the Final Closing on April 11, 2008.

**RESPONSE:**  AHMS objects to the foregoing Request on the grounds stated in the General Objections above and to the extent it purports to require AHMS to produce documents in the possession or control of persons other than AHMS.  AHMS further objects on the grounds that the request is overbroad, vague, ambiguous and unduly burdensome.  AHMS also objects to the extent that the request seeks the production of documents the discovery of which is cumulative or duplicative, or is obtainable from some other source that is more convenient or less burdensome.  Finally, AHMS objects to the extent the request does not describe the documents sought pursuant to the request with reasonable particularity in accordance with Fed.R.Civ.P. 34(b).

Relying on these responses, AHM Servicing did not produce a single document in response to these two requests.

16.    At the risk of stating the obvious, CMI does not seek (and has never sought) documents that are not in AHM Servicing's possession, custody or control.  CMI seeks only those documents AHM Servicing has in its possession, custody or control and that set forth its performance under the Assumed Contracts during the Interim Period.

2303629

**C.**   **The Nature of the Parties' Disputes**

Here, AHM Servicing has totally declined to respond to CMI's discovery.   AHM Servicing

asserts that CMI must first detail for it the breaches CMI says took place during the Interim Period.

Specifically, AHM Servicing states:

> With the limited exception set forth below [pertaining to the one
> discovery request that is not the subject of this motion], AHMS will not
> produce any documents in response to the Discover Requests, as CMI has
> not alleged any acts or omissions constituting a default by AHMS and/or
> the above captioned Debtors between November 16, 2007 and April 11,
> 2008 which would give rise to a Purchaser's Cure Amount under the
> October 30, 2007 order.

[General Objection no. 1].

The practical effect of AHM Servicing's position is that it asserts CMI must either:  (1) plead

breach of contract with particularity as a condition precedent to being permitted to conduct discovery,

where there is plainly no such requirement; and/or (2) CMI must first respond to an interrogatory that

AHM Servicing has never served (and this, notwithstanding the passage of many months since AHM

Servicing filed its belated objection to CMI's cure claim amounts), to the effect that CMI must first

identify each and every default before AHM Servicing will consider whether to respond to discovery

concerning its performance.

As part of the parties' informal meet-and-confer processes, AHM Servicing asked CMI to

identify the individual AHM Servicing employee in Texas with whom CMI deals on the matters at issue.

Although an unusual request to ask one's opponent to identify your client representative with

knowledge, CMI nonetheless provided the name and the direct dial phone number of the AHM

Servicing employee who was its contact in attempting to resolve the various breaches of the CMI

Assumed Contracts.  Yet, even armed with that information, AHM Servicing did not respond to CMI's

discovery.

2303629

### Reasons to Compel AHM Servicing to Respond to CMI's Discovery Requests

Two central issues in this contested matter are whether AHM Servicing defaulted under the servicing agreements with CMI, which agreements AHM Servicing assumed from the Debtors, and whether those defaults took place during the Interim Period. CMI's discovery requests ask AHM Servicing for documents on two issues: (1) AHM Servicing's performance under the Assumed Contracts during the Interim Period; and (2) the bases on which AHM Servicing rendered that performance during the Interim Period.

CMI's first request seeks, from AHM Servicing's perspective, information identifying defaults during the Interim Period. CMI's second request is an effort to anticipate whether, there is some contention that AHM Servicing did not have an ongoing and continuing obligation to provide mortgage loan servicing services, and on what basis AHM Servicing nonetheless provided those services during the Interim Period. CMI has, therefore, proceeded under Fed. R. Civ. P. 26 (as Bankruptcy Rules 7001, 7026 and 9014(c) make it applicable to this contested matter).

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999) (citing Fed. R. Civ. P. 26(b)(1)).

CMI's discovery requests go to issues that are at the heart of this contested matter. AHM Servicing's mistaken response is that CMI must first identify the specifics of the failures to perform that it contends are AHM Servicing's breaches of the Assumed Contracts during the Interim Period. There is, of course, no requirement in the Federal Rules of Civil Procedure, in the Bankruptcy Rules or in the procedures this Court established for addressing the Interim Period cure claims that would require CMI to provide a particularized statement.

Discovery into AHM Servicing's performance and the reasons why it undertook that performance during the pertinent time frame is material and most certainly reasonably calculated to lead to the discovery of admissible evidence.  See In re Oakwood Homes Corp., 340 B.R. 510, 537 (Bankr. D. Del. 2006) (applying Fed. R. Civ. P. 26(a)(1)(C) to compel discovery of initial damages computation in bankruptcy proceeding); In re Reading Tube Corp., 73 B.R. 99, 101 (Bankr. E.D. Pa. 1987) (compelling production of tax returns; finding documents were material to the subject matter of the litigation and reasonably calculated to lead to discovery of admissible evidence).

AHM Servicing has not met its burden to demonstrate there is some good reason why it can entirely avoid responding to this discovery.  In re Mulhern, 45 B.R. 621, 623 (Bankr. E.D. Pa. 1985) (under Fed. R. Civ. P.  26(c), "the burden is on the person seeking to avoid discovery to point to a specific reason for denial of discovery.").

WHEREFORE, for all of these reasons, CMI asks that this Court enter an order directing AHM Servicing to respond to CMI's first and third requests for production of documents and produce the responsive materials by no later than Monday, September 28, 2009.

**Rest of page intentionally left blank.**

2303629

Dated:  August 28, 2009

**MORRIS JAMES LLP**

Brett D. Fallon (DE Bar No. 2480)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, Delaware  19899-2306
Telephone:  (302) 888-6888
Facsimile:  (302) 571-1750
Email:  bfallon@morrisjames.com

-and-

Andrew J. Petrie (*admitted pro hac vice*)
FEATHERSTONE PETRIE DESISTO LLP
600 17th Street, Suite 2400S
Denver, Colorado  80202-5424
Telephone:  (303) 626-7139
Facsimile:  (303) 626-7101
Email:  apetrie@featherstonelaw.com

*Attorneys for CitiMortgage,  Inc.*

2303629