UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 07-11047 |
| | ) | Chapter 11 |
| | ) | |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., a Delaware | ) | |
| corporation, et al, | ) | Wilmington, DE |
| | ) | August 11, 2009 |
| Debtors. | ) | 10:36 a.m. |

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE CHRISTOPHER J. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:          SEAN M. BEACH, ESQUIRE
                          MARGARET WHITEMAN GREECHER, ESQUIRE
                          MICHAEL S. NEIBURG, ESQUIRE
                          PAULINE K. MORGAN, ESQUIRE
                          YOUNG, CONAWAY, STARGATT &
                          TAYLOR, LLP
                          The Brandywine Building
                          1000 West Street
                          17th Floor
                          Wilmington, DE   19801


For the Official          DAVID W. CARICKHOFF, ESQUIRE
Committee of              BLANK ROME, LLP
Unsecured Creditors:      1201 Market Street
                          Suite 800
                          Wilmington, DE   19801


For ZC Real Estate        RICHARD P. NORTON, ESQUIRE
Tax Solutions:            HUNTON & WILLIAMS, LLP
                          200 Park Avenue
                          New York, NY   10166

APPEARANCES:   (continued)

| | |
|---|---|
| For Los Angeles County Treasurer and Tax Collector: | MARC J. PHILLIPS, ESQUIRE<br>CONNOLLY BOVE LODGE & HUTZ, LLP<br>The Nemours Building<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE   19899 |
| For the WLR Recovery Fund: | T. MAX RIFFIN, ESQUIRE<br>GREENBERG TRAURIG, LLP<br>The Nemours Building<br>1007 North Orange Street<br>Suite 1200<br>Wilmington, DE   19801 |
| Audio Operator: | LESLIE MURIN |
| Transcribed by: | DIANA DOMAN TRANSCRIBING<br>P.O. Box 129<br>Gibbsboro, New Jersey  08026-0129<br>Office:  (856) 435-7172<br>Fax:     (856) 435-7124<br>E-mail:   dianadoman@comcast.net |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1                          I N D E X

2

3   ARGUMENT:                                PAGE NUMBER

4   Re:  Agenda items 1 through 18

5     By Mr. Beach                                      4

6   Re:  Claim objections - items 19 through 23

7     By Mr. Neiburg                                    8

8   Re:  Claim objection - item 24

9     By Mr. Neiburg                              11, 16

10    By Mr. Sweeney                              12, 15

11  Re:  Claim objections - items 25 and 26

12    By Mr. Neiburg                                   22

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following was heard in open court at 10:36

2    a.m.)

3              MR. BEACH:  Good morning, Your Honor.

4              THE COURT:  Good morning.

5              MR. BEACH:  May it please the Court, Sean Beach from

6    Young, Conaway, Stargatt and Taylor on behalf of the debtors.

7              Your Honor, happy anniversary.  It's been two years

8    now since we filed this case.

9              THE COURT:  Oh.  Yahoo.

10             MR. BEACH:  Yeah, I know.  I figured you would be

11   thrilled about that.

12             Your Honor, I'll just run through the agenda.  I

13   think most of it will be pretty quick --

14             THE COURT:  I did --

15             MR. BEACH:  -- or at least, up until --

16             THE COURT:  I'm sorry -- I did -- I did sign the

17   CNOs.  I don't know -- oh, yes, no, wait, that's reflected.

18   Okay.

19             MR. BEACH:  Yeah.  I think we did file a

20   certification of counsel last night on one order.

21             THE COURT:  I filed those -- I signed both those

22   orders this morning.

23             MR. BEACH:  Thank you, Your Honor.

24             So, Your Honor, items one through nine, 12 and 13

25   are adjourned.  Item number 10 is resolved.  A certification

1   of counsel is supposed to be filed by the party that filed

2   that motion.  I think it's -- it seems like a typical stay

3   relief motion, but I think it's got some nuances to it which

4   is why a separate order needs to be entered.

5           THE COURT:  All right.  Well, I'll await the

6   certification of counsel, and, otherwise, let's carry it to

7   the next omnibus.  Of course, if the order's signed, it

8   doesn't need to appear on the agenda, but if a hiccup occurs,

9   let's carry it to the next -- I think that's September 8th.

10          MR. BEACH:  That's right, Your Honor.

11          THE COURT:  Okay.

12          MR. BEACH:  We'll do that.  Item number 11 was

13  withdrawn.  Item number 14, Your Honor, I believe is one of

14  the orders that Your Honor indicated you signed this morning.

15  It's a motion by ZC Sterling.

16          THE COURT:  That's correct.

17          MR. BEACH:  Items number 15, 16 and 17, you had

18  previously signed which brings us to item number 18, which is

19  the interim fee applications.  At Your Honor's request, we

20  have adjourned the Borrowers Committee fee application.  I

21  know the Borrowers Committee has been in discussions with the

22  fee examiner, and we have pushed that until September 8th and

23  hope to be in a position to go forward on that on September

24  8th.

25          THE COURT:  Yeah.  I read the agenda, and I'm fine

1   with that procedure.  Have there been any changes to the

2   uncontested fee application?

3           MR. BEACH:  There haven't been, Your Honor.

4           THE COURT:  All right.  I'll sign the order.  Do you

5   have an omnibus order?

6           MR. BEACH:  I do.  May I approach?

7           THE COURT:  Yes.  Thank you.  Anyone present on the

8   telephone or in court solely for this matter is welcome to

9   depart.

10          UNIDENTIFIED COUNSEL:  Thank you, Your Honor.

11          THE COURT:  You're welcome.  I've signed the order.

12          MR. BEACH:  Thank you, Your Honor.

13          I believe that the remaining items on the agenda are

14  claim objections except for the last item on the agenda which

15  is a motion by CBS Outdoor for payment for administrative

16  claims.  I'm sorry, it doesn't appear to be on the last item

17  of the agenda.

18          THE COURT:  Item 27.

19          MR. BEACH:  Yes.

20          THE COURT:  It indicates that matter has been

21  withdrawn.

22          MR. BEACH:  We had been -- we received an email

23  stating that they intended to file a notice of withdrawal.  We

24  haven't seen one hit the docket, so we don't believe anything

25  is intended to go forward.  It did hit the docket?

1        THE COURT:  All right.  Well, let's -- again, let's

2   continue it to September 8th in the event that doesn't occur,

3   but, obviously --

4        MR. BEACH:  Mr. Carickhoff indicated that he has

5   seen -- the withdrawal has been filed.

6        THE COURT:  Oh, he has -- it has.  All right.  Very

7   good.  Then never mind.

8        MR. BEACH:  Thank you, Your Honor.  So that brings

9   us to item number 19 which is the beginning of the claims

10  objections.

11       Your Honor, I'd like to introduce you to Mr. Grow's

12  successor in the claims, Mr. Mike Neiburg.  Mr. Grow took a

13  job with Fried Frank in New York --

14       THE COURT:  Oh, really.

15       MR. BEACH:  -- so, unfortunately for us, he is going

16  to be starting his work in the Southern District, but, you

17  know, we wish him all the best.

18       THE COURT:  As do I.  Welcome, Mr. Neiburg.

19       MR. NEIBURG:  Thank you, Your Honor.

20       MR. BEACH:  So, Your Honor, I'd like to cede the

21  podium to Mr. Neiburg, and if it's acceptable to Your Honor,

22  I'd ask that I be excused.

23       THE COURT:  Yes, of course.

24       MR. BEACH:  Thank you.

25            (Pause in proceedings.)

1            MR. NEIBURG:  Good morning, Your Honor.  It's

2    Michael Neiburg from Young, Conaway, Stargatt and Taylor here

3    on behalf of the debtors in connection with several omnibus

4    claim objections that are moving forward today.

5            Your Honor, the first issue I'd like to bring up is

6    the supplemental declaration of Eileen Wanerka filed by the

7    debtors in support of omnibus objection, the fifth, tenth,

8    eleventh, thirteenth, fifteenth, seventeenth, thirty-first and

9    thirty-third omnibus objections.  I'd like to thank Your Honor

10   for entering the order allowing us to file that under seal to

11   protect some personal information of the claimants that were

12   covered.

13           Does Your Honor have a copy of the unredacted

14   declaration in front of you?

15           THE COURT:  Not in front of me, no.

16           MR. NEIBURG:  May I approach the bench, Your Honor?

17           THE COURT:  Yes.  Thank you.

18           MR. NEIBURG:  Before we get into the substance of

19   the declaration, Your Honor, this supplemental declaration

20   covers several claim objections.  The declarant, Ms. Eileen

21   Wanerka, has made an appearance telephonically and is

22   available to testify as to any matters, any questions that you

23   may have.  And at this time, we'd like to enter the

24   supplemental declaration into evidence, you know, and

25   incorporate it into the omnibus objections that it covers.

1        THE COURT:  Any objection?  Hearing none, the Court

2   will -- it's entered into evidence without objection.

3        MR. NEIBURG:  Moving to agenda matter number 19,

4   Your Honor, the debtors' 5th omnibus objection to claims, the

5   only matter moving forward today is the claim of Robert

6   Sullivan.

7        THE COURT:  Is anyone in the court or on the

8   telephone for Mr. Sullivan?  All right.  I hear none.  I'm

9   happy to rely on the declaration and overrule the objection.

10       MR. NEIBURG:  Overrule the objection, Your Honor?

11       THE COURT:  Sorry, the response to the objection.

12       MR. NEIBURG:  Thank you, Your Honor.

13       THE COURT:  You're welcome.  We can just --

14       MR. NEIBURG:  Your Honor, since there are numerous

15  orders that we may to sign, would you prefer one at a time or

16  at the end?

17       THE COURT:  No, let's sign them at the end.

18       MR. NEIBURG:  Okay.

19       THE COURT:  Thank you.

20       MR. NEIBURG:  Thank you, Your Honor.

21       THE COURT:  You're welcome.

22       MR. NEIBURG:  The next item is agenda matter number

23  20 which pertains to debtors' tenth omnibus objection to

24  claims.  The only objection moving forward with respect to

25  this objection is that of Audrey Andrews.

1          THE COURT:  Anyone in court or on the telephone on

2     behalf of Ms. Andrews?  Hearing none, I'll overrule the

3     response and grant the objection.

4          MR. NEIBURG:  Thank you, Your Honor.

5          The next item is agenda matter number 21 which

6     pertains to debtors' eleventh omnibus objection to claims.

7     Your Honor, as the amended agenda reflects, this objection is

8     adjourned as to Kathleen Heck but moving forward as to Mr.

9     Thomas Furey.

10         THE COURT:  Is there anyone in court or on the

11    telephone on behalf of Mr. Furey?  Hearing none, I'll overrule

12    the response and grant the objection.

13         MR. NEIBURG:  Thank you, Your Honor.

14         The next item is agenda item number 22, which

15    pertains to debtors' thirteenth omnibus objection to claims,

16    and the debtors are moving forward with respect to the claims

17    of Calvin Kammeyer and Minda Boxer and adjourning the

18    remaining outstanding objections.

19         THE COURT:  Is there anyone on the telephone or in

20    court on behalf of Mr. Kammeyer or Ms. Boxer?  Hearing none,

21    I'll overrule the responses and grant the objections.

22         MR. NEIBURG:  Thank you, Your Honor.

23         THE COURT:  You're welcome.

24         MR. NEIBURG:  The next item is agenda matter number

25    23 which pertains to debtors' fifteenth omnibus objection.

1   The only objection moving forward today is that -- to the

2   claim of Ms. Tammy Pederson.  The remaining objections are

3   adjourned.

4          THE COURT:  Anyone present on the phone or in court

5   on behalf of Ms. Pederson?  Hearing none, I'll overrule the

6   response and grant the objection.

7          MR. NEIBURG:  Thank you, Your Honor.

8          The next item is agenda matter number 24 which

9   pertains to debtors' seventeenth omnibus objection to claims.

10  This objection is adjourned to several claims, but it is

11  moving forward with respect to the claim of Mr. Robert

12  Sweeney.

13         THE COURT:  Anyone present on behalf of Mr. Sweeney?

14         MR. SWEENEY:  Yes, this is Robert Sweeney.

15         THE COURT:  All right.  Then let's go into more

16  detail.

17         MR. NEIBURG:  Okay.  Mr. Sweeney -- or the debtors'

18  objection and the additional information that I believe the

19  Court requested is found on page nine through ten of the

20  supplemental declaration of Ms. Wanerka, Your Honor.

21         THE COURT:  Mr. Sweeney, have you seen the

22  declaration?

23         MR. SWEENEY:  Yes, I have.

24         THE COURT:  All right.

25         MR. NEIBURG:  Your Honor, in accordance with the

1  declaration, the debtors believe that per the terms of Mr.

2  Sweeney's contract, he is not entitled to the claims

3  production bonus because he was not employed by the debtors on

4  the scheduled payment date of such payment.  And, therefore,

5  per the terms of his contract, he is not entitled to the

6  claimed commission.

7             THE COURT:  As an administrative claim or as --

8             MR. NEIBURG:  As in any claim, Your Honor.

9             THE COURT:  -- a claim -- as in any claim.  All

10  right.  Mr. Sweeney, do you have any response?

11             MR. SWEENEY:  Yes.  That was a contract for my

12  commission.  At the -- after the 3rd -- August 3rd, 2007 date,

13  I received a email, because they kept my -- my email active,

14  which was rosweeney@abconduit.com which was ABC Conduit, part

15  of American Home, and I was asked to be on the transition

16  team.  Also the memo was sent to all managers and all -- ops

17  managers and all branch managers, and, of course, I continued

18  to receive that memo.  That was on August 6th.

19             I had a roomful of office furniture, and I've

20  responded back and forth to an Emily Lee, and -- from

21  Milestone Advisors, and they said -- I tried to say I had a

22  roomful of furniture.  They finally determined that it had no

23  book value, that it had to remain in the possession of

24  American Home, and I was the only employee at this particular

25  branch location.  So I stayed with that furniture until the

1    end of the month until the lease expired, and the landlord

2    asked me to remove all the furniture.  By the way, I still

3    have that furniture.

4          Also on August 6th, Michele Newsham, who is senior

5    vice president of operations for ABC, sent a memo out to all

6    of us which I received on August 6th, and I presented that

7    particular email to Mr. Neiburg, and on the eighth item there,

8    it says terminated employees.  And the fourth bullet point

9    there, it says July commissions are scheduled to be paid on

10   the first pay date in August, and, of course, the declaration

11   you received says the pay date was August 24th.  Well, that

12   was the second pay date.  The first pay date was August 10th.

13         I remained active with my email.  They finally

14   terminated my email after the -- I think it was the 11th or

15   12th of August, which was after that pay date.  But I still

16   remained in my office until the end of the month.  The

17   furniture was never picked up.  I stored it in my garage for a

18   period of time, signed another lease with my -- the landlord,

19   moved back in and I still have that furniture, copier and I

20   actually have a laptop, because they asked me to hold onto the

21   laptop to receive the emails from this transition team which

22   is what I did.

23         So I feel that I was working at the time, even

24   though the scheduled commission date was the 24th.  They said

25   they moved it up to the 10th.  I never received my commission.

1    I stayed with the entire branch waiting for disposition of the

2    -- the pickup of the assets.  That never happened.  So I

3    finally left that facility, that particular office on August

4    31st.

5              THE COURT:  Were you -- was your sole source of

6    income commissions?

7              MR. SWEENEY:  No.  I had a salary also which was

8    paid through July, but I also had then the commissions, which

9    was the majority of my income.

10             THE COURT:  All right.  So you received no salary

11   for the month of August?

12             MR. SWEENEY:  No.  No salary for the month of

13   August.  So I was relying on my July commission to -- you

14   know, for August.

15             THE COURT:  All right.  Thank you.  Response?

16             MR. NEIBURG:  Your Honor -- if it may assist the

17   Court, Your Honor, I have a copy of the email that Mr. Sweeney

18   referenced, if you'd like to see that.

19             THE COURT:  I would.

20             MR. NEIBURG:  And I also have the debtors' records

21   which reflect the members of the transition team.  Mr. Sweeney

22   is not listed on this.  If you'd like to see this --

23             THE COURT:  Who put that together?

24             MR. NEIBURG:  I believe that was -- Ms. Wanerka at

25   least provided that to me.

1          THE COURT:  At Milestone?

2          MR. NEIBURG:  Ms. Wanerka is with American Home

3  Mortgage.

4          THE COURT:  All right.  And, Mr. Sweeney, who -- who

5  were your contacts in connection with being on the transition

6  team?

7          MR. SWEENEY:  Well, the -- the memo that I received

8  came from Michele Newsham, and they had terminated every --

9  everybody's email but the people on that transition team.  My

10  email remained active, and as you can see from the transition

11  team memo, that it was sent to rosweeney@abconduit.com so it

12  was still active on Monday, August 6th.  It was finally

13  deactivated the next weekend, but I still remained in contact

14  with Emily Lee on the disposition of the assets.

15          THE COURT:  And do you know who those people worked

16  for, Emily Lee and --

17          MR. SWEENEY:  Emmelene Lee, she worked for Milestone

18  Advisors.

19          THE COURT:  Okay.  And the other lady or person?

20          MR. SWEENEY:  Michele Newsham was the senior --

21  let's see, get her exact -- senior vice president of wholesale

22  operations of American Brokers Conduit.

23          THE COURT:  Okay.  Thank you.

24          MR. SWEENEY:  And she was the one managing --

25          THE COURT:  Did you say senior vice president --

1        MR. SWEENEY:  -- the day-to-day operations after the

2   3rd.

3        THE COURT:  I'm sorry.  Her title was what?

4        MR. SWEENEY:  Senior vice president of operations --

5        THE COURT:  Okay.

6        MR. SWEENEY:  -- of ABC.

7        THE COURT:  Thank you.  You may approach.

8        MR. SWEENEY:  Approach?  Thank you, Your Honor.

9        (Pause in proceedings.)

10        THE COURT:  Anything further?

11        MR. NEIBURG:  If it may please the Court, Your

12   Honor, I'd like to offer -- proffer the testimony of Eileen

13   Wanerka to further supplement the declaration.

14        THE COURT:  Any objection?  Hearing none, you may do

15   so.

16        MR. NEIBURG:  If called to testify, Ms. Wanerka

17   would testify to the fact that Mr. Sweeney was not on the

18   transition team per the debtors' records and the list of

19   retained employees.

20        The transition team only worked the week of August

21   6th through August 10th, and that is part of the email chain

22   that you have where I believe Ms. Newsham says for the -- at

23   the bottom of the first page, I believe, Your Honor, stating

24   that we'll only work, you know, this one week.

25        So it is still the debtors' position that the --

1          THE COURT:  Well, wait a minute.

2          MR. NEIBURG:  I'm sorry.

3          THE COURT:  Is this argument or the proffer?

4          MR. NEIBURG:  This is still the proffer, Your Honor.

5          THE COURT:  All right.

6          (Pause in proceedings.)

7          THE COURT:  Anything further on the proffer?

8          MR. NEIBURG:  Yeah.  Mr. Sweeney -- the scheduled

9    payment date was August 25th, 2007.

10         The email from Michele Newsham that Mr. Sweeney

11   referred to was mistakenly sent to all branch managers rather

12   than just the transition team, and the email had instructions,

13   I believe from page one and two of the three-page email, Your

14   Honor, stating for the members of the transition team that

15   have access to Outlook and Unify, Mr. Sweeney apparently

16   forwarded the email received to his personal account, because

17   his personal account is reflected MSN; therefore, indicating

18   that he had no access to Unify, which the transition team

19   members did.

20         THE COURT:  Where is that -- where is that

21   indicated?

22         MR. NEIBURG:  One second, Your Honor.  I just have

23   to find my -- there it is.

24         THE COURT:  So he had an automatic forwarding in

25   place.  You're saying -- Ms. Wanerka is saying that he had an

1   automatic forwarding in place to send it to his personal

2   account?  But to do that, his work account would still have to

3   be open, isn't that correct, ma'am?  Ms. Wanerka, are you on

4   the phone?

5           MS. WANERKA:  Yes.  On August 6th, in the email

6   chain, it does show that on August 6th, his email was still

7   working.  They were deactivated that week of -- of August 6th

8   to the 10th.

9           THE COURT:  And --

10          MS. WANERKA:  Blackberries were still working.  I

11  can't tell exactly how it was forwarded, but Blackberries were

12  still working and --

13          THE COURT:  And what was the date that --

14          MS. WANERKA:  -- so were the accounts.

15          THE COURT:  I'm sorry.  What were the dates of the

16  transition team's work?

17          MS. WANERKA:  August 6th to August 10th.

18          THE COURT:  All right.  And you filed on the 11th?

19          MS. WANERKA:  Right.  And that retention list that

20  was provided was prepared by all the senior vice presidents of

21  operations for all of our channels including Michele Newsham.

22          THE COURT:  And was a -- your testimony is that the

23  email of -- that starts this chain on the last two pages -- I

24  guess three pages, sent Monday, August 6th, was mistakenly

25  sent to all branch managers.  Was there any email sent

1   correcting the distribution list to that?

2            MS. WANERKA:  I cannot locate one.  I don't have

3   access to that.

4            THE COURT:  All right.

5            MS. WANERKA:  But I was in charge of working with

6   all the employees within the branches, and I didn't have any

7   communication with Mr. Sweeney.

8            THE COURT:  All right.  Is there anything more in

9   the proffer?

10           MR. NEIBURG:  Of the proffer, Your Honor?

11           THE COURT:  Yes.

12           MR. NEIBURG:  No, Your Honor, just if I could

13  correct the record?  I believe you mentioned the petition date

14  of August 11th.  I believe it was August 6th, 2007.

15           THE COURT:  The petition was August 6th?

16           MR. NEIBURG:  Yeah.

17           THE COURT:  Mr. Sweeney, do you have any questions

18  you'd like to ask Ms. Wanerka?

19           MR. SWEENEY:  No, but -- Robert Sweeney again.  The

20  memo from Michele Newsham was sent to the managers and branch

21  managers and ops managers, which I was one, and the subject

22  said transition team update -- important, which implies to me

23  that I was on the transition team, and that's why I hung in

24  there through the end of the month.

25           THE COURT:  Right.

1    MR. SWEENEY:  If I had never received that, and they

2  did not keep my email active, obviously, I would have never

3  had any communication.  So I hung in there in good faith, you

4  know, managing and watching the assets until disposition was

5  going to be done.

6       On the 14th of August, the memo from Emily --

7  Emmelene Lee, which I have presented to Mr. Lee Burke, "The

8  fixed assets currently have no book value.  Unfortunately, the

9  assets do need to remain in the ownership of American Home,

10  AHM, until the Bankruptcy Court gives guidance of the

11  disposal.  I will let you know as soon as possible to have

12  more clarity."

13       And in another memo, she said it would probably take

14  another week or two, which is what I did.  I hung in there

15  till the end of the month.  And then the landlord asked me to

16  vacate that particular office.

17       THE COURT:  All right.  Anything further, Mr. --

18       MR. NEIBURG:  No, Your Honor.

19       THE COURT:  All right.  Well, I find that the

20  claimant, Mr. Sweeney, reasonably relied on statements by an

21  executive vice president of the debtor who clearly had

22  authority to bind the debtor to believe that he was on the

23  transition team, whether the debtor thought so or not.

24       And although Ms. Lee's email is less than clear

25  about whether Mr. Sweeney was to remain as custodian of the

1    office furniture, I also find that it was reasonable and

2    reasonable reliance on behalf of Mr. Sweeney to remain in the

3    -- what he believed the employ of the debtors through the end

4    of August.  And as a result, he was an employee at least de

5    facto employee of the debtors through August 30th, which would

6    include the bonus date.  And I will sustain his response and

7    overrule the claim objection in connection with Mr. Sweeney,

8    and thus allow his claim.

9              MR. NEIBURG:  Your Honor, if I may?

10             THE COURT:  Yes.

11             MR. NEIBURG:  The only issue outstanding with regard

12   to this claim then is on his proof of claim he claimed the

13   entire amount of his production bonus as priority unsecured.

14   If we just -- maybe if we could submit a revised form of order

15   limited the priority amount to 10,950 and request applying the

16   remaining amount to general unsecured?

17             THE COURT:  Yes.  Mr. Sweeney, there's a statutory

18   cap of $10,950 of what can be considered priority unsecured

19   claims, and your total claim is about 32,500.  So your

20   priority will be limited to 10,950 which will be paid in full,

21   correct?  Yes.

22             And the remainder of your claim, approximately

23   $22,000 is a general unsecured claim, and that certainly won't

24   be paid in full unfortunately.  I don't know what the

25   distribution is, four or five percent if I remember correctly

1    on a good day.  So -- yes, Ms. Greecher.

2              MS. GREECHER:  Your Honor, Margaret Whiteman

3    Greecher.  Depending on the entity, it rounds from .19, which

4    I believe is servicing to 5 percent which I believe is the

5    holdings.

6              THE COURT:  So in any event, sir, your claim will be

7    allowed.  You will receive full payment of $10,950.  The

8    remainder of your claim will await disposition, but

9    unfortunately, due to the less than -- well, due to the

10   financial condition of the company, that will be a very small

11   distribution.

12             MR. SWEENEY:  Thank you very much, Your Honor.

13             THE COURT:  You're welcome.  You may hang up, sir.

14             All right.  So that was the seventeenth omnibus,

15   item 24?

16             MR. NEIBURG:  Correct, Your Honor.

17             THE COURT:  All right.

18             MR. NEIBURG:  The next item, Your Honor, is agenda

19   matter number 25 which pertains to the debtors' thirty-first

20   omnibus objection to claims.  Your Honor, the only objection

21   moving forward today is that with respect to the claim filed

22   by Ms. Faith Camille Wilkinson.

23             THE COURT:  Okay.  Is there anyone present on behalf

24   of Ms. Wilkinson?  I'm sorry.  I'm looking at the wrong -- all

25   right.  Hearing none, the Court will overrule the response and

1    grant the claim objection.

2              MR. NEIBURG:  Thank you, Your Honor.

3              The next item is agenda matter number 26, which

4    pertains to debtors' thirty-third omnibus objection to claim,

5    and the only objection moving forward today, Your Honor, is to

6    that of the claim of Ms. Eileen Lavan.

7              THE COURT:  Is anyone present on behalf of Ms.

8    Lavan?  Hearing none, the Court will overrule the response and

9    grant the objection.

10             MR. NEIBURG:  Thank you, Your Honor.

11             THE COURT:  I think that concludes --

12             MR. NEIBURG:  I guess we're concluded.

13             THE COURT:  I signed orders on certifications on

14   items 28 and 29, and 27 was withdrawn.

15             MS. GREECHER:  That's correct, Your Honor.  That's

16   everything on the agenda for today.

17             THE COURT:  Okay.  I'll sign the orders you have on

18   the objections I sustained and ask you to submit an order

19   under certification of counsel on the objection that I

20   overruled.

21             MR. NEIBURG:  May I approach the bench, Your Honor.

22             THE COURT:  Yes, you may.  Thank you.

23             (Pause in proceedings.)

24             THE COURT:  I've signed the orders.  Hearing

25   adjourned.

1              MR. NEIBURG:  Thank you, Your Honor.

2              THE COURT:  You're welcome.

3              (Proceedings concluded at 11:03 a.m.)

4                              * * *

5

6

7

8                   **C E R T I F I C A T I O N**

9

10             I, Lois A. Vitarelli, court approved transcriber,

11    certify that the foregoing is a correct transcript from the

12    official electronic sound recording of the proceedings in the

13    above-entitled matter.

14

15

16    _____        September 2, 2009

17    LOIS A. VITARELLI

18    DIANA DOMAN TRANSCRIBING

19

20

21

22

23

24

25