# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
```

In re

AMERICAN HOME MORTGAGE HOLDINGS,
INC., *et al.*,[1]

Debtors.

```
-------------------------------------------------------------x
```

KATHY S. KOCH, JARRETT PERRY,
GINA PULLIAM, MICHAEL S. SUROWIEC,
KATHLEEN WIELGUS, and PATRICIA WILLIAMS,
on their own behalf and on behalf of all other persons
similarly situated,

Plaintiffs,

- against-

AMERICAN HOME MORTGAGE CORP.,
AMERICAN HOME MORTGAGE ACCEPTANCE,
INC., AMERICAN HOME MORTGAGE
SERVICING, INC., AMERICAN HOME
INVESTMENT CORP., and AMERICAN
HOME MORTGAGE HOLDINGS, INC.,

Defendants.

```
-------------------------------------------------------------x
```

Chapter 11

Case No. 07-11047 (CSS)
(Jointly Administered)

Adv. Pro. No. 07-51688 (CSS)

Hearing Date:  October 13, 2009 at 10:00 a.m.
Responses Due: October 6, 2009 by 4:00 p.m.

## JOINT MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 9019 AND 7023 TO (I) APPROVE A SETTLEMENT PURSUANT TO BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE SETTLEMENT, (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (V) FINALLY APPROVE THE

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).

### SETTLEMENT PURSUANT TO BANKRUPTCY RULE 7023 AFTER THE FAIRNESS HEARING, AND (VI) GRANT RELATED RELIEF

The above-captioned debtors and debtors-in-possession (the "*Debtors*"), the Official Committee of Unsecured Creditors of the Debtors (the "*Committee*") and class representatives Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus, and Patricia Williams (the "*Class Representatives*"), on behalf of themselves and similarly situated class members (together with the Class Representatives, but excluding the Opt-Outs, the "*Class Members*" or "*Class*"), by and through their respective counsel, hereby move (the "*Joint Motion*") this Court pursuant to Section 105 of Title 11 of the United States Code (the "*Bankruptcy Code*"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Rule 23 of the Federal Rules of Civil Procedure (the "*Civil Rules*"), made applicable hereto by Bankruptcy Rule 7023, for the entry of orders: (a) approving the *Settlement and Release Agreement* (the "*Settlement Agreement*" or the "*Settlement*")[2] among the Debtors, the Committee and the Class Members (collectively, the "*Parties*") pursuant to Bankruptcy Rule 9019, (b) preliminarily approving the Settlement Agreement pursuant to Civil Rule 23, (c) approving the form and manner of notice to Class Members of the Settlement Agreement, (d) scheduling a fairness hearing (the "*Fairness Hearing*") to consider final approval of the Settlement Agreement pursuant to Civil Rule 23, (e) after the Fairness Hearing, finally approving the Settlement Agreement pursuant to Civil Rule 23, and (f) granting related relief. In support of the Joint Motion, the movants respectfully represent as follows:

### Introduction

1.    The Court should approve the Settlement Agreement. The Class

---

[2] A true copy of the Settlement Agreement is attached hereto as *Exhibit A*. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

Representatives have sued Debtors American Home Mortgage Corp., American Home

Acceptance, Inc., American Home Mortgage Servicing, Inc., American Home Investment Corp.,

and American Home Mortgage Holdings, Inc. (collectively, the *"Debtor-Defendants"*) for

allegedly failing to provide notice required by the Worker Adjustment and Retraining

Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the *"Federal WARN Act"*) and/or its California

counterpart, California Labor Code §§ 1400 *et seq.* (the *"California WARN Act"* and with the

Federal WARN Act, the *"WARN Act"*) before ordering mass layoffs and/or plant closings.

Notwithstanding, the Class Representatives assert that all of the Debtors were a "single

employer" under the provisions of the WARN Act and are therefore jointly and severally liable

for any alleged WARN damages.  The maximum alleged WARN damages of the Class Members

are approximately $27 million ($27,000,000) plus attorneys' fees and costs, if the Class

Representatives prevail.  In exchange for a full release for any claim arising from the mass

layoffs and/or plant closings, the Debtors' estates will establish a Settlement Fund for the Class

Members which shall be equal in amount to a fifty percent (50%) share of the first $13 million

($13,000,000) in estate funds which would otherwise be available for distribution to holders of

general unsecured claims on account of such general unsecured claims.  As such, the maximum

potential amount of the Settlement Fund will not exceed $6.5 million ($6,500,000).  The

Settlement Fund will be distributed to the Class Members in accordance with the terms of the

Settlement Agreement and the Debtors' confirmed plan of liquidation.

      2.      From the perspective of the Debtors' estates and their creditors, the

Settlement Agreement is fair and reasonable.  The above-captioned WARN class action would

be protracted and expensive, and the outcome uncertain.  The Debtor-Defendants believe that the

fundamentals of the Debtors' business remained sound through the middle of the summer of

2007. However, extraordinary and unforeseeable events in the residential housing and credit markets thrust the Debtors into an immediate and completely unanticipated liquidity crisis which ultimately required the Debtors to cease all loan origination activity. Therefore, based on the unforeseeable business circumstances exception to the sixty (60) day notice requirement of the WARN Act, the Debtor-Defendants contend that they were excused from providing sixty (60) days notice of the shutdown that occurred in early August 2007.

3.     The Debtor-Defendants also assert additional defenses to WARN liability including the faltering business exception and the liquidating fiduciary doctrine. Further, to the extent that the aforementioned exceptions to the WARN Act do not apply, the Debtor-Defendants assert that they are entitled to a reduction of any purported damages based on their good faith belief that all of their actions complied with the provisions of the WARN Act.

4.     The Class Representatives contend that the crisis in the residential mortgage industry began as early as the first quarter of 2006 and that the events that led to the Debtors' failure were not only foreseeable, but inevitable. Moreover, the Class Representatives contend that the unforeseeable business circumstances exception is not available to the Debtor-Defendants under the California WARN Act. The maximum alleged WARN damages of the Class Members employed within the state of California are approximately $2.2 million ($2,200,000) plus attorneys' fees and costs, if the Class Representatives prevail. The Class Representatives also contend that none of the other WARN exceptions are applicable.

5.     A trial on the applicability of the unforeseeable business circumstances exception (as well as the other asserted defenses) would require both sides to engage in extensive expert and non-expert discovery at significant expense with inherently uncertain results at trial.

6.     The Class Representatives also contend that if the Court found that the

4

Class Members were entitled to even one (1) additional day of notice than they were provided, then the Class Members would be the prevailing parties entitled to their attorneys' fees and costs. Thus, if the case is tried, the Debtor-Defendants face, at least theoretically, the risk of being liable for the counsel fees of both sides' even if they successfully established the unforeseeable business circumstances exception to the sixty (60) day notice requirement, if the Court finds the Debtor-Defendants did not provide notice to the Class Members as soon as practicable.

7.      In light of these factors, the Debtors and the Committee have determined that the Settlement, the maximum amount of which would be $6.5 million ($6,500,000) and where the Class Members share the credit risk equally with the general unsecured creditors, is well within the range of reasonableness. Accordingly, the Court should approve the Settlement under Bankruptcy Rule 9019.

8.      For essentially the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members. Without the settlement, the Class Members would wait years for any payment on their alleged WARN claims, even if they prevail on trial and appeal, and risk depletion of the Debtors' estates through continued administrative and litigation costs.

9.      Finally, the Parties request a two-step approval process to facilitate notice to Class Members. After preliminary approval of the Settlement Agreement and the form of notice to be given to the Class Members, Class Counsel will provide notice ("*Class Notice*") to each Class Member that describes the Settlement Agreement, and informs the Class Members of their right to object to the Settlement Agreement and the deadline for such objection.

10.     After service of the Class Notice, the Parties request that the Court hold a Fairness Hearing to consider final approval of the Settlement Agreement.

11.     Based on the foregoing, and as set forth more fully below, the Parties

submit that the Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## Jurisdiction

12.    The Court has jurisdiction over the Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, Bankruptcy Rule 9019 and Civil Rule 23.

## Background

**A.**    **General Background**

13.    On August 6, 2007 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

14.    The Debtors' bankruptcy cases (the "*Chapter 11 Cases*") are being jointly administered pursuant to Bankruptcy Rule 1005(b) as *In re American Home Mortgage Holdings, Inc., et al.*, Case No. 07-11047 (CSS).

15.    The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in the Chapter 11 Cases.

16.    On or about August 14, 2007, the Committee was appointed.

17.    On February 23, 2009, the Court entered an order confirming the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009* (the "*Plan*"). At this time, the Plan has yet to become effective.

128189.01600/40183665v.1

18.    The Plan, upon becoming effective, contemplates the creation of a Liquidating Trust (the "*Liquidating Trust*" and its representative, the "*Liquidating Trustee*") which, as successor to the Debtors, will assume all obligations of the Debtors.

**B.    The Debtors' Business and Events Leading Up to the WARN Action**

19.    Prior to the Petition Date, the Debtors were a full service residential mortgage company with over five-hundred fifty (550) offices located in forty-seven (47) states. Prior to their reduction in workforce, the Debtors employed approximately seven thousand (7,000) people and constituted the tenth (10th) largest mortgage originator in the nation. The Debtors primarily originated loans to prime credits and "Alt-A" loans which they sold, either by transfer into securitization transactions or through whole loan sales to institutional purchasers.

20.    In order to maintain adequate liquidity pending the ultimate sale of their loans, the Debtors were party to several warehouse financing arrangements. Pursuant to the agreements governing these facilities, the institutional purchaser was generally permitted to periodically mark the purchased loans to market and, if the value of the loans had declined, to demand additional capital in the form of margin calls. If the Debtors failed to meet a margin call, the institutional purchaser was entitled to declare an event of default and accelerate the Debtors' obligation to repurchase the loan.

21.    The Debtors contend that they were victim to an economic downturn driven by a system-wide market adjustment that was unprecedented in the industry. Indeed, it was unanticipated, rapid and extreme increases in cash needs that thrust the Debtors into an immediate liquidity crisis. Enormous demands for capital were made on the Debtors by their lenders in the form of margin calls at a pace and at levels far above historical norms. In the two (2) week period prior to the Petition Date, the Debtors received margin calls aggregating

128189.01600/40183665v.1

approximately one-half *billion* dollars *(~$431,000,000)*. These margin calls were generally due and payable within twenty-four (24) to forty-eight (48) hours. The Debtors inability to satisfy the flood of margin calls resulted in defaults under their financing agreements with their lenders. Upon the defaults by the Debtors, the lenders ceased making cash available to the Debtors, which disabled the Debtors from originating loans. For all practical purposes, this was the end of the business.

22.    After receiving the surge of unexpected margin calls at the end of July, 2007, the Debtors conducted a thorough review of their going-forward capacity to meet these sudden and unanticipated margin calls and confront the rapid evaporation of liquidity in the loan markets, including efforts to obtain capital, manage costs and locate a purchaser for part or all of the Debtors' origination business. The Debtors concluded that they had no choice but to cease all mortgage origination activity on July 31, 2007 when they could no longer meet their mortgage funding obligations. The accelerated demands for enormous amounts of capital relative to what the business had previously experienced or projected, as the market for the sale of the loans decreased at an accelerated pace, presented an insurmountable hurdle for the Debtors.

23.    The Debtors contend that as a result of the extreme and unparalleled market changes, and the cessation of the mortgage loan origination business, the Debtors were compelled to terminate a large portion of their employees on August 3, 2007, including the Class Representatives. Also on August 3, 2007, the Debtors contend they delivered or mailed a letter that constituted adequate notice under the WARN Act of any plant closing or mass layoff affecting such persons to the extent that the WARN Act was applicable. The Debtors sought bankruptcy protection by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy

8

Code on August 6, 2007. The Debtors' remaining employees were subsequently terminated on various dates after the Petition Date

## C.    Initiation of the WARN Act Litigation and Description of Claims

24.    On or about August 8, 2007, the Class Representatives, on behalf of themselves and on behalf of those similarly situated former employees of the Debtor-Defendants, commenced an adversary proceeding captioned *Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus, and Patricia Williams, on their own behalf and on behalf of all other persons similarly situated, v. American Home Mortgage Corp., American Home Acceptance, Inc., American Home Mortgage Servicing, Inc., American Home Investment Corp., and American Home Mortgage Holdings, Inc.,* Adversary Proceeding No. 07-51688 (the "*WARN Action*") by filing a class-action complaint (the "*Complaint*")[2] against the Debtor-Defendants, alleging that the employment terminations violated the WARN Act by ordering plant closings and/or mass layoffs on or about August 3, 2007 and thereafter, without providing sixty (60) days of advance notice thereof. The Complaint sought damages in the amount of sixty (60) days' wages and benefits and alleged that said damages were entitled to administrative priority.

25.    Certain Class Members also filed proofs of claim against the Debtors during the pendency of the Chapter 11 Cases for amounts allegedly owed under the WARN Act ("*Individual WARN Claims*") but no proof of claim was collectively filed on behalf of the Class Members.

26.    On or about September 13, 2007 through June 10, 2008, the Debtor-

---

[2] On or about August 30, 2007 through March 10, 2008, the Class Representatives filed three (3) amended complaints containing substantially similar allegations to those asserted in the Complaint but also asserting claims

Defendants filed their answer and affirmative defenses (the *"Answer"*) to the Complaint denying

certain material allegations of the Complaint and asserting, among other affirmative defenses,

that that (i) the Debtor-Defendants were not an "employer" for purposes of the WARN Act

pursuant to the liquidating fiduciary doctrine; (ii) the Debtor-Defendants provided sufficient

notice under the faltering business defenses as enumerated in 29 U.S.C. § 2102(b)(1) and Cal.

Lab. Code § 1402.5; (iii) the Debtor-Defendants provided sufficient notice under the

unforeseeable business circumstances defense as enumerated in 29 U.S.C. § 2102(b)(2)(A); and

(iv) the Debtor-Defendants acted in good faith and had reasonable grounds for believing their

conduct was not in violation of the WARN Act. The Debtor-Defendants also denied that the

WARN Act claims were entitled to administrative priority.

*1.*    *Class Certification, Approval of Class Notice*
        *and Appointment of Class Counsel*

        27.    On February 1, 2008, subsequent to an agreement between the Parties, the

Court granted class certification (the *"Class Certification Order"*).[3] The Class Certification

Order:

    a. defined and certified the Class as all employees who were terminated without
       cause on or within thirty (30) days of August 3, 2007 at one of the Debtor-
       Defendants' Affected Facilities,[4] or any employee who was terminated
       without cause and who could have reasonably expected to experience an
       employment loss as a consequence of a plant closing or mass layoff at one of
       the Debtor-Defendants' Affected Facilities, and who were affected employees

---

under the California WARN Act on behalf of the Class Members who were employed at the Debtor-Defendants'
Irvine, California facility.

    [3] Further orders certifying the Class and granting related relief were entered by the Bankruptcy Court on or
about May 21, 2008 through September 16, 2008.

    [4] The Class Certification Order defines "Affected Facilities" as any single site of employment, within the
meaning of 20 C.F.R. § 639.3(i), in which fifty (50) or more of Debtor-Defendants' employees and at least thirty-
three percent (33%) of the employees were terminated from employment on or within thirty (30) days of August 3,
2007, excluding any part-time employees, as that term is defined by 29 U.S.C. § 2101(a)(8), and any employees who
voluntarily resigned, retired, or who were terminated for cause.

within the meaning of 29 U.S.C. § 2101(a)(5), but excluded from the Class any employees who voluntarily resigned, retired, or who were terminated for cause;

b.  appointed plaintiffs Kathy S. Koch, Jarrett Perry, Gina Pullium, Michael S. Surowiec, Kathleen Wielgus, and Patricia Williams as class representatives of the Class; and

c.  appointed James Huggett of the firm Margolis Edelstein, The Gardner Firm, P.C., Lankenau & Miller LLP and Outten & Golden LLP as class counsel (collectively, "*Class Counsel*").

The Class Certification Order also ordered that notice (the "*Initial Class Notice*") be mailed by Class Counsel to each Class Member informing them of, among other things, the litigation and their right to opt-out of the Class.

2.  *The Initial Class Notice*

28.  Mailing of the Initial Class Notice to the Class Members, including opt-out instructions, was completed by Class Counsel on or about November 5, 2008.

29.  In response to the Initial Class Notice, thirteen (13) individuals timely opted-out of the Class (the "*Opt-Outs*").

3.  *The Stipulated Intervention of the Committee*

30.  On or about May 23, 2008, the Committee intervened in the WARN Action pursuant to a Court-approved stipulation.

4.  *The Stipulated WARN Reserve*

31.  On or about April 20, 2009, pursuant the *Stipulation Setting Reserve with Respect to Claims Asserted by WARN Act Class Action Plaintiffs* (the "*WARN Reserve Stipulation*"), the Parties agreed to set a reserve (the "*WARN Reserve*") on account of all claims arising out of the WARN Act Litigation in the amount of $1.7 million ($1,700,000) upon the effective date of the Plan for the purposes of distribution.

11

D.    **Discovery Efforts and Settlement Negotiations**

      32.    The Parties engaged in substantial discovery including the production of hundreds of thousands of pages of documents and the exchange of expert reports. Extensive information regarding facts and documents supporting the Debtor-Defendants' defenses and the unforeseen business circumstances that lead to the shut-down of the Debtors' origination operations was exchanged between the Parties. These facts included the sudden implosion of the sub-prime and Alt-A residential mortgage industry and the sudden and unilateral decision of the Debtors' lenders to withdraw capital which disabled the Debtors from originating mortgages. The Debtor-Defendants also shared payroll information and a WARN damages analysis with Class Counsel.

      33.    In order to facilitate discussions and negotiations regarding the settlement of the WARN Action and all related claims, the Parties have sought and obtained a series of orders which incrementally extended the time in which the Parties were required to complete discovery. The most recent of such orders extended the time to complete factual discovery through June 5, 2009 and extended certain related deadlines.

      34.    During that time, and in addition to formal discovery, the Parties informally exchanged a substantial amount of documents and other materials and earnestly engaged in numerous discussions and negotiations with respect to the WARN Action.

E.    **Essential Terms of the Proposed Settlement**

      35.    In May 2009, the Parties reached a tentative agreement, the terms of which were later memorialized in the Settlement Agreement. In general, the Settlement Agreement provides for Class Members and holders of general unsecured claims to share equally in the first $13 million ($13,000,000) in distributions of estate assets that would otherwise have been made on account of general unsecured claims in settlement of the Class Representatives' claims that

the Debtor-Defendants failed to provide adequate notice under the WARN Act. The Settlement

provides that distributions of the Settlement Fund will be made pursuant to the Plan and occur

concurrently with distributions to holders of general unsecured claims on account of such claims.

The essential terms of the Settlement Agreement are as follows:

    a.  Creation of a Settlement Fund:  A settlement fund equal in amount to a fifty percent (50%) share of the first $13 million ($13,000,000) in estate funds which would otherwise be available for distribution to holders of general unsecured claims on account of such general unsecured claims in full and final satisfaction of the Released Claims[5] of the Class Members.

    b.  Class Counsel will determine the percentage amount of the Settlement Fund that will be distributed to Class Members on an individualized basis.

    c.  The amount of the gross allowed claim allocated to each Class Member shall be derived from the amount of the Settlement Fund (less forty-five thousand dollars ($45,000) to be paid in the aggregate as service fees to the Class Representatives and less Class Counsel's out of pocket expenses not to exceed $225,000) and shall be based on the following:

---

[5] Released Claims are defined in the Settlement Agreement as

    the claims of each Class Member and such Class Member's predecessors, successors and assigns, which relate to or are based on the WARN Act or severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation relating to the termination of employees, including, but not limited to: (i) all claims asserted or that could have been asserted in the WARN Act Litigation; (ii) the Individual WARN Claims; and (iii) any other claims for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation relating to the termination of employees.  Not included in Released Claims are: (a) any obligation created by or arising out of this Settlement; (b) any right to indemnification that the Class Members may have pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing document of any Debtor with respect to any loss, damages or expenses (including but not limited to attorneys' fees) that a Class Member may in the future incur with respect to his or her prior service as an employee, officer or director or in any other capacity with any Debtor; (c) any rights that a Class Member may have to insurance coverage for such losses, damages or expenses under any directors and officers liability insurance policy of any Debtor; (d) any claims for continuation of health or medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependant of a Class Member, to the extent allegedly required by the relevant provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985; (e) rights, if any, unrelated to Class Members' WARN claims, to payment of benefits that a Class Member may have under a qualified or nonqualified retirement plan sponsored or maintained by any Debtor (including, without limitation, any 401(k), deferred compensation, and supplemental retirement benefits), and (f) a Class Member's rights to benefits or coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended).

Settlement Agreement, ¶ 6(h).

128189.01600/40183665v.1

- Assuming the maximum potential recovery of $6,500,000, approximately 80% of each Class Member's Maximum Theoretical WARN Claim (defined herein below) where the Class Member was formerly employed in California. The percentage of the Maximum Theoretical WARN Claim allocated to each former California employee is reflective of the strength of such employee's claim under the California WARN Act and the absence of the "unforeseeable business circumstances" exception in that statute; and

- Assuming the maximum potential recovery of $6,500,000, approximately 23% of each Class Member's Maximum Theoretical WARN Claim where the Class Member was formerly employed outside California, and thus did not have the benefit of the California WARN Act claim.

  i.  In calculating the amount of the gross allowed claims described above, the daily rate of individual Class Members shall be determined by dividing each Class Member's annual salary by 52 to come up with a weekly rate. The weekly rate will then be divided by 5 to come up with the daily rate. The daily rate will then be multiplied by up to 42 working days, reducing that figure by weekdays worked after August 3, 2007 within the violation period. The resulting claim will be the "Maximum Theoretical WARN Claim" for each Class Member for whom Debtors had wage information. In instances where Debtors lacked wage information for Class Members, the average annual salary of the Class was used to determine said Class Member's respective Maximum Theoretical WARN Claims using the same formula described above. The Maximum Theoretical WARN Claim shall then be multiplied by the percentages set forth above and deemed appropriate given the state in which the Class Member was formerly employed and applicable law.

d.  Class Counsel is entitled to reimbursement of out of pocket expenses not to exceed $225,000, in addition to attorneys' fees in the amount of thirty-three and one-third percent (33 1/3%) of each distribution of the Settlement Fund payments to Class Members as set forth in the Settlement Agreement ("*Class Counsel Fees*"). Class Counsel's Fees shall be deducted from, and distributed contemporaneously with, each distribution of the Settlement Fund payments to Eligible Class Members. Notwithstanding, Class Counsel's out of pocket expense reimbursements shall be made from the initial disbursement to the Class.

e.  <u>Payment to Class Representatives:</u> The Class Representatives shall each receive a one-time payment of seven thousand five hundred dollars ($7,500) for their service on behalf of the Class Members ("*Service Payments*"). Service Payments will be made in addition to the Class Representatives' individualized settlement amounts and Class Counsel's Fees will not be

128189.01600/40183665v.1

deducted from the Service Payments.

f.  <u>Issuance of Notice of the Settlement:</u>  Class Counsel shall send by first class
mail to each Class Member's last known address an individualized Class
Notice indicating:

- the date such Class Member was terminated, the office location to which
the Class Member was assigned as of the date of his/her termination, and
the Class Member's base salary or rate of pay, if known, as of the date of
termination of employment;

- that the Settlement shall become effective only if it is finally approved by
the Bankruptcy Court:

- that, if so approved, the Settlement shall be effective as to all Class
Members who did not opt-out of the Class;

- the dollar amount such Class Member would receive under this
Settlement, before Class Counsel's Fees and if this Settlement becomes
effective, as well as an estimate of such net payment after such amounts
are deducted, which amount shall be calculated by Class Counsel;

- that such Class Member has the right to object to this Settlement in person,
to retain counsel and be heard at the Fairness Hearing; and

- that all Released Claims of a Class Member (other than those claims to be
paid under the terms of this Settlement) shall be waived, and that no
person, including the Class Member, shall be entitled to any further
distribution thereon.

g.  <u>Residual Funds:</u>  Settlement checks not cashed within six (6) months of their
date of issuance will be donated to The Impact Fund, a non-profit organization
dedicated to employee rights.

h.  <u>Release of Defendants/Class Representatives:</u>  Upon the Final Approval Date,
each Class Member (the "*Releasing Parties*") shall be deemed to have settled,
released and completely extinguished any and all Released Claims that the
Releasing Parties may have against the Debtors, their estates or the
Liquidating Trust.  In addition, the Releasing Parties shall be deemed to have
released each of the Class Representatives from any and all claims that he/she
may have against the Class Representatives arising out of any Released Claim
or the terms of the Settlement.

i.  <u>Release of WARN Reserve:</u>  Upon the Final Approval Date, the Class
Members shall acknowledge that the WARN Reserve is no longer necessary
and shall release the Debtors and the Liquidating Trustee from any obligation
under the WARN Reserve Stipulation or otherwise to establish the WARN

15

Reserve.

## Relief Requested

36.    By this Joint Motion, the Parties request that the Court enter orders:  (i)

authorizing the Parties to enter into the Settlement Agreement; (ii) preliminarily approving the

Settlement Agreement; (iii) approving the form and manner of Class Notice of the Settlement;

(iv) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; and

(v) approving the Settlement Agreement on a final basis.

## Basis for Relief Requested

**A.    The Court Should Approve the Settlement
Pursuant to Bankruptcy Rule 9019**

37.    The Third Circuit has emphasized that "to minimize litigation and

expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'"

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON

BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)); *see also In re Culmtech, Ltd.*, 118 B.R. 237, 238

(Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and ... much of litigation in

bankruptcy estates results in settlements").  Bankruptcy Rule 9019 authorizes a bankruptcy court

to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a),

and Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary

or appropriate".  11 U.S.C. § 105(a).

38.    "[T]he authority to approve a compromise settlement is within the sound

discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D.

Del. 2005); *see also In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).  When exercising

such discretion, the bankruptcy court must determine whether the compromise is "fair,

reasonable, and in the best interests [sic] of the estate." *Key3Media Group*, 336 B.R. at 92; *see*

*also Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002);

*In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249

(Bankr D. Del. 1998).

      39.    The bankruptcy court is not required to determine that the proposed

settlement is the best possible compromise. *Key3Media Group*, 336 B.R. at 92-93 (citing *In re*

*Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)).  Rather, the settlement

should be approved as long as it does not fall below the lowest point in the range of

reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert.*

*denied*, 464 U.S. 822 (1983).  In this respect, it is unnecessary for the court to consider the

information necessary to resolve the factual dispute, nor is necessary for the bankruptcy court to

"conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92

(quoting *Martin*, 212 B.R. 316, 319 (8th Cir. B.A.P. 1997)).

## Standard for Approval of the Settlement Agreement

      40.    Courts consider the following four factors when determining whether a

settlement is in the best interests of the estate: (i) the probability of success in the litigation; (ii)

the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the

litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and

(iv) the paramount interest of the creditors and a proper deference to their reasonable opinions.

*Martin*, 91 F.3d at 393; *Aetna Casualty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R.

119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; *Marvel*, 222 B.R. at 249.

      41.    In addition to these criteria, courts have also scrutinized additional factors,

such as (i) the competency and experience of counsel who support the settlement; (ii) the relative

benefits to be received by individuals or groups within the class; (iii) the nature and breadth of

releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement

is the product of arm's length bargaining. *See Fischer v. Pereira (In re 47-49 Charles Street,*

*Inc.),* 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel,* 211 B.R. 133, 144 (Bankr. S.D.N.Y.

1997); *In re Dow Corning Corp.,* 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996)..

## **Application of the Martin Factors**

*1.    The Results of a Trial are Uncertain and the Litigation is Complex.*[7]

42.    The results of a trial are uncertain and the litigation is complex. The

WARN Action involves numerous legal issues regarding the application of the WARN Act and

its statutory and other legal defenses to complex facts. These issues include, *inter alia,* (i)

whether the Debtor-Defendants were a covered employer under the WARN Act at the time of the

alleged plant closings or mass layoffs pursuant to the liquidating fiduciary doctrine; (ii) whether

the Debtor-Defendants' WARN Notice provided adequate notice to the Class Members under the

WARN Act; (iii) whether the WARN Notice was defective under the WARN Act; (iv) whether

the Debtor-Defendants were entitled to give fewer than sixty (60) days notice because of the

unforeseeable business circumstances that caused the Debtors to fail and whether such defense is

even available with regard to the California WARN Act claims; (v) whether the Debtor-

Defendants were entitled to give fewer than sixty (60) days notice because, at the time notice

would otherwise have been required, they were seeking new capital they reasonably believed, if

obtained, would have obviated the need for or substantially postponed the alleged plant closing

or mass layoffs; (vi) whether the Debtor-Defendants' efforts to obtain new capital were

commercially reasonable under the circumstances; (vii) whether the Defendants have other

---

[7] This section discusses both the first and third *Martin* factors – uncertainty of success and complexity of litigation – because in this case these issues are intertwined. The second factor – difficulty with collection – does not apply because the Debtors are the defendants.

defenses to the application of the WARN Act; (viii) whether the Debtor-Defendants gave "as much notice as practicable"; (ix) whether the Defendants are entitled to a defense of "good faith"; (x) the computation of the amount of damages; (xi) whether attorneys' fees are to be awarded to the Class Members if they prevail and whether such fees are entitled to administrative priority; (xii) whether the alleged damages are entitled to administrative priority under § 503(b)(1)(A) or wage or benefit priority under §§ 507(a)(4) or (5), respectively;[9] and (xiii) whether the Debtor-Defendants and the non-defendant Debtors constitute a "single employer" under the provisions of the WARN Act such the non-defendant Debtors may be liable for some or all or the alleged damages.

43.    Continued litigation would be costly and time-consuming and expose the Debtors' estates to significant litigation risks. Class Counsel has asserted that the Debtors' WARN Act liability of sixty (60) days' damages and benefits is approximately $27 million ($27,000,000), which constitutes an alleged administrative expense. The Settlement provides (i) for the creation of a Settlement Fund in the maximum amount of $6.5 million ($6,500,000) and (ii) that Class Members will share the credit risk equally with the estates' general unsecured creditors in that they will receive their settlement payments contemporaneously with distributions from the Liquidating Trust on account of general unsecured claims. The Settlement resolves the WARN Action and related claims and eliminates further accrual of the substantial litigation expenses which have been associated therewith. Accordingly, the Parties respectfully submit that approval of the Settlement is warranted.[10]

---

[9] While the United States Bankruptcy Court for the District of Delaware has recently held that WARN damages resulting from pre-petition employment terminations are not entitled to administrative priority, but rather are treated as priority wage claims up to the cap of $10,950 and general unsecured claims thereafter, *see In re Powermate*, 394 B.R. 765 (Bankr. D. Del. 2008), there is no Circuit authority on the issue.

[10] In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

2.    *The Settlement is in the Best Interest of Creditors and the Estates.*

44.    The Settlement is in the best interest of the Debtors' creditors and estates. "When determining whether a compromise is in the best interests of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *Key3Media Group*, 336 B.R. at 93 (quoting *Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))); *see also In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Trustee or debtor in possession act in [the] best interests of the estate"). To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424); *see also Key3Media Group*, 336 B.R. at 92 (The bankruptcy court must be "apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.") (quoting *Martin*, 91 F.3d at 393).

45.    The paramount interest of creditors and reasonable deference to their views favors approval of the Settlement Agreement. The Committee was intimately involved in the negotiation of the Settlement Agreement and fully supports its approval. Moreover, as set forth above, the Settlement Agreement spares the Debtors' estates the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Action.

46.    Accordingly, in light of each of the *Martin* factors, the Settlement Agreement should be approved.

**B.    The Court Should Preliminarily Approve the
Settlement Agreement Pursuant to Civil Rule 23**

128189.01600/40183665v.1

47.    After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates v. Rohm & Hass Co.,* 248 F.R.D. 434, 442-43 (E.D. Pa. 2008); MANUAL FOR COMPLEX LITIGATION § 30.632 (2004). At the subsequent fairness hearing, class members may formally object to the proposed settlement. *Gates,* 248 F.R.D. at 439.

48.    "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Id.,* at 438 (*quoting from Smith v. Professional Billing & Management Services, Inc.,* 2007 WL 4191749, at *1 (D. N.J. 2007)). The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp. Pick Up Fuel Tank Products Liability Litigation,* 55 F.3d 768, 785-86 (3d Cir. 1995); *Gates,* 248 F.R.D. at 444.

49.    The Settlement Agreement has no obvious deficiencies and falls well within the range of reason. Further, each of the above-cited factors favors preliminary approval of the Settlement Agreement.

50.    First, the Settlement is the result of good faith, arm's length negotiations between capable adversaries. The Parties have been in discussions with respect to the WARN Action since it was filed close to two (2) years ago and the Class is represented by counsel with extensive experience and expertise in WARN Act matters.

51.    Second, the Parties engaged in substantial discovery including the production of thousands of pages of documents and the exchange of expert reports. Extensive

information regarding facts and documents supporting the Debtor-Defendants' defenses and the

unforeseen business circumstances that lead to the shut-down of the Debtors' origination

operations was exchanged between the Parties. These facts included the sudden implosion of the

sub-prime and Alt-A residential mortgage industry and the sudden and unilateral decision of the

Debtors' lenders to withdraw capital which disabled the Debtors from originating mortgages.

The Debtor-Defendants also shared payroll information and a WARN damages analysis with

Class Counsel.

52.    Third, Class Counsel has been appointed as class counsel in over forty

(40) WARN Act cases and had prosecuted more than one hundred thirty (130) such claims.

Class Counsel has the experience and skill to both vigorously litigate WARN Act claims and to

determine when and to what extent settlement is appropriate. They have exercised that judgment

in this case with respect to the Settlement Agreement.

53.    Accordingly, the Court should preliminarily approve the Settlement

Agreement.

## B.    The Court Should Approve the Form and Manner of the Proposed Notice of the Settlement.

54.    Civil Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to
> class members the best notice that is practicable under the
> circumstances, including individual notice to all members who can
> be identified through reasonable effort. The notice must clearly
> and concisely state in plain, easily understood language: (i) the
> nature of the action; (ii) the definition of the class certified; (iii) the
> class claims, issues, or defenses; (iv) that a class member may
> enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude form the class any member who
> requests exclusion; (vi) the time and manner for requesting
> exclusion; and, (vii) the binding effect of a class judgment on
> members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

22

55.     In addition, Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. FED. R. CIV. P. 23(e). The Rule 23(e) requirement is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Krell v. Prudential Ins. Co. of America (In re Prudential)*, 148 F.3d 283, 326-27 (3d Cir. 1998).

56.     The proposed Class Notice, which is attached as *Exhibit D* to the Settlement Agreement, will be served by Class Counsel upon each Class Member. Class Counsel proposes that within ten (10) business days following entry of the order preliminarily approving the Settlement Agreement, Class Counsel will serve the Class Notice substantially in the form attached to the Settlement Agreement, upon each Class Member at the last known address of each Class Member according to the Debtors' books and records. *Cf. id.,* at 327 (holding that mailings to last known address of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

57.     The Class Notice includes each of the facts required by Rule 23(c)(2)(B). The Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees and out of pocket costs proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy of the pleadings in the WARN Action and a copy of the Settlement Agreement. The Notice also states the date, time, location and purpose of the Fairness Hearing, informs each Class Member of their right to appear at the Fairness Hearing, and describes the procedure for objecting to the Settlement Agreement. Finally, the Class Notice will contain a personalized attachment for each Class Member setting forth the projected dollar amount such Class Member would receive under the Settlement Agreement, assuming a maximum recovery

of $6,500,000 before and after deduction of Class Counsel's Fees. Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**C.     The Court Should Finally Approve the Settlement at the Fairness Hearing Pursuant to Civil Rule 23**

58.     The Court should set a Fairness Hearing that, subject to the Court's calendar, would be heard no sooner than the earliest date for entry of a binding order under 28 U.S.C. § 1715. At the Fairness Hearing, the Court should finally approve the Settlement

59.     Civil Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." FED. R. CIV. P. 23(e). Final approval of a settlement pursuant to Civil Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *Community Bank,* 2008 WL 3833271 at * 5 (*quoting General Motors*, 55 F.3d at 785.).

60.     The Third Circuit has held that the following nine (9) factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). This list

is not exhaustive. *Community Bank*, 2008 WL 3833272 * 6.

61.    The following *Girsh* factors strongly support approval of the Settlement Agreement.

- Litigation will be complicated, protracted and expensive.

- The Class Representatives support the Settlement Agreement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will not object to it.

- The Settlement Agreement was reached after the essential facts had been thoroughly investigated by Class Counsel through extensive fact and expert discovery and disclosures by Debtor-Defendants' counsel.

- The risk that the Class Representatives would be unable to establish liability was high because of the numerous defenses asserted by the Debtor-Defendants.

- When considered in light of the best possible recovery and the attendant risks, the settlement falls well within the range of reasonableness. The settlement provides for payment of up to $6.5 million ($6,500,000), representing approximately eighty percent (80%) of each California Class Member's Maximum Theoretical WARN Claim and approximately twenty-three percent (23%) of each non-California Class Member's Maximum Theoretical WARN Claim. *See Community Bank*, 2008 WL 3833271 (finding that in light of the attendant risk a settlement representing approximately twelve percent (12.6%) of the prayer was reasonable). Further, while the Complaint alleges that any damages are entitled to administrative priority, Class Counsel acknowledges that the Court has recently held that WARN damages arising from prepetition terminations are only entitled to priority wage status. *Powermate*, 2008 WL 4595199.

62.    Based on the foregoing, the Court should finally approve the Settlement Agreement under Civil Rule 23.

128189.01600/40183665v.1

## Notice

63.     Bankruptcy Rule 2002 requires that the Debtors give all creditors not less than twenty (20) days notice of "the hearing on approval of a compromise or settlement of a controversy unless the court for cause shown directs that the notice be not sent..." FED. R. BANKR. P. 2002(a)(3).

64.     The Parties propose that notice, together with a copy of this Joint Motion (exclusive of the lists of individual employees), be provided to: (i) the Office of the United States Trustee for the District of Delaware, and (ii) all parties which have requested notice pursuant to Bankruptcy Rule 2002.  In order to protect the privacy of the Debtors' former employees, the Parties have filed contemporaneously herewith a separate motion seeking to submit the employee lists annexed to the Settlement Agreement as *Exhibit A* through *Exhibit B* under seal.  In light of the nature of the relief requested, the Parties submit that no other or further notice need be given.

## No Prior Request

65.     No previous application for the relief sought herein has been made to this or any other Court.

## Conclusion

WHEREFORE, the Parties respectfully request that the Court to enter orders:  (i) granting the Joint Motion in its entirety; (ii) authorizing the Parties to enter into the Settlement Agreement; (iii) preliminarily approving the Settlement; (iv) approving the form and manner of Class Notice of the Settlement; (v) scheduling a Fairness Hearing; (vi) approving the Settlement Agreement on a final basis; and (vii) granting such other relief as the Court deems necessary and appropriate.

Dated:  September 3, 2009

YOUNG CONAWAY STARGATT & TAYLOR LLP          MARGOLIS EDELSTEIN


By: /s/ Scott A. Holt                         By: /s/ James E. Huggett
Scott A. Holt (No. 3399)                      James E. Huggett (No. 3956)
James L. Patton, Jr. (No. 2202)               750 S. Madison Street, Suite 102
Joel A. Waite (No. 2925)                      Wilmington, DE  19801
Pauline K. Morgan (No. 3650)                  Telephone: (302) 888-1112
Sean M. Beach (No. 4070)                      Facsimile: (302) 888-1119
Matthew B. Lunn (No. 4119)
Donald J. Bowman, Jr. (No. 4383)              LANKENAU & MILLER LLP
The Brandywine Building                       Stuart J. Miller
1000 West Street, 17th Floor                  132 Nassau Street, Suite 423
Wilmington, DE 19801                          New York, NY  10038
Telephone: (302) 571-6600                     Telephone: (212) 581-5005
Facsimile: (302) 571-1253                     Facsimile: (212) 581-2122


*Counsel for the Debtors*                     THE GARDNER FIRM, P.C.
                                              Mary E. Olsen
                                              M. Vance McCrary
                                              J. Cecil Gardner
                                              210 S. Washington Avenue
                                              Post Office Drawer 3103
                                              Mobile, AL  36652
                                              Telephone: (251) 433-8100
                                              Facsimile: (251) 433-8181

                                              *Cooperating Attorneys for the NLG Maurice
                                              and Jane Sugar Law Center for Economic and
                                              Social Justice*

                                              OUTTEN & GOLDEN LLP
                                              Jack A. Raisner
                                              Rene S. Roupinian
                                              3 Park Avenue, 29th Floor
                                              New York, NY  10016
                                              Telephone: (212) 245-1000
                                              Facsimile: (212) 977-4005

                                              *Counsel for the Class Members*

BLANK ROME LLP


By: */s/ David W. Carickhoff*
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, DE  19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

HAHN & HESSEN LLP
Mark S. Indelicato
Mark T. Power
Jeffrey Zawadzki
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Committee*