# **Exhibit A**

SETTLEMENT AND RELEASE AGREEMENT

between

KATHY S. KOCH, JARRETT PERRY, GINA PULLIAM, MICHAEL S. SUROWIEC,
KATHLEEN WIELGUS, AND PATRICIA WILLIAMS, ON BEHALF OF THEMSELVES
AND AS CLASS REPRESENTATIVES ON BEHALF OF THE OTHER CLASS MEMBERS,

and

THE CHAPTER 11 ESTATES OF AMERICAN HOME MORTGAGE HOLDINGS, INC.,
AMERICAN HOME MORTGAGE INVESTMENT CORP., AMERICAN HOME
ACCEPTANCE, INC., AHM SV, INC. (f/k/a AMERICAN HOME MORTGAGE SERVICING,
INC.), AMERICAN HOME MORTGAGE CORP., AMERICAN HOME VENTURES LLC,
HOMEGATE SETTLEMENT SERVICES, INC., AND GREAT OAK ABSTRACT CORP.,

and

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF AMERICAN HOME
MORTGAGE HOLDINGS, INC. AND ITS AFFILIATED DEBTORS

Dated as of August 10, 2009

## SETTLEMENT AND RELEASE AGREEMENT

This *Settlement and Release Agreement*, dated as of August 10, 2009 (this "*Settlement Agreement*" or "*Settlement*"), is entered into by and among the Chapter 11 estates of American Home Mortgage Holdings, Inc., Case No. 07-11047, American Home Mortgage Investment Corp., Case No. 07-11048, American Home Acceptance, Inc., Case No. 07-11049, AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), Case No. 07-11050, American Home Mortgage Corp., Case No. 07-11051, American Home Mortgage Ventures LLC, Case No. 07-11052, Homegate Settlement Services, Inc., Case No. 07-11053, and Great Oak Abstract Corp., Case No. 07-11054 (collectively, the "*Debtors*" and with respect to their bankruptcy cases, the "*Chapter 11 Cases*"), the Official Committee of Unsecured Creditors of the Debtors (the "*Committee*"), on the one hand, and Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus, and Patricia Williams (collectively, the "*Class Representatives*"), on behalf of themselves and on behalf of similarly situated class members (together with the Class Representatives, but excluding the Opt-Outs (as hereinafter defined), the "*Class Members*" or "*Class*"), on the other hand. The Debtors, the Committee and the Class Members are collectively referred to herein as the "*Parties*," or, as to each, a "*Party*."

## RECITALS

WHEREAS, on August 6, 2007 (the "*Petition Date*"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*") with the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*") initiating the Chapter 11 Cases which are being jointly administered as *In re American Home Mortgage Holdings, Inc., et al.*, Case No. 07-11047 (CSS);

2

.

WHEREAS, prior to the Petition Date, the Debtors employed approximately 7,000 employees, including the Class Members, in their various business operations;

WHEREAS, on or about August 3, 2007, or within a thirty (30) day period therein, the Debtors terminated approximately 6,500 employees, including approximately 2,300 Class Members (the "*RIF*");

WHEREAS, the Debtors contend that, on or about August 3, 2007, they arranged for delivery of notices (the "*WARN Notice*") to employees subject to the RIF that the Debtors contend constituted adequate notice under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq*. (the "*Federal WARN Act*"), and/or its California counterpart, California Labor Code §§ 1400 *et seq*. (the "*California WARN Act*" and with the Federal WARN Act, the "*WARN Act*") of any plant closing or mass layoff affecting such persons to the extent that the WARN Act was applicable;

WHEREAS, on or about August 8, 2007, the Class Representatives filed with the Bankruptcy Court a class-action complaint (the "*Initial Complaint*") commencing an adversary proceeding (the "*WARN Action*") against Debtors American Home Mortgage Corp., American Home Acceptance, Inc., American Home Mortgage Servicing, Inc., American Home Investment Corp., and American Home Mortgage Holdings, Inc. (collectively, the "*Debtor-Defendants*"), on behalf of themselves and purportedly on behalf of the Class Members, alleging that the Debtor-Defendants violated the Federal WARN Act by ordering plant closings and/or mass layoffs on or about August 3, 2007 and thereafter, without providing sixty (60) days advance notice thereof. The Class Representatives further asserted that, as a consequence of this alleged failure, the Class Members have an administrative priority claim pursuant to § 503(b)(1)(A) and/or priority claim pursuant to § 507(a)(4)-(5) against the Debtor-Defendants for damages for the

alleged sixty (60) day violation period. The WARN Action is entitled *Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus, and Patricia Williams, on their own behalf and on behalf of all other persons similarly situated, v. American Home Mortgage Corp., American Home Acceptance, Inc., American Home Mortgage Servicing, Inc., American Home Investment Corp., and American Home Mortgage Holdings, Inc.* which is presently pending in the Bankruptcy Court under Adversary Proceeding No. 07-51688 (CSS);

WHEREAS, on or about August 14, 2007, the Committee was appointed;

WHEREAS, on or about August 30, 2007 through March 10, 2008, the Class Representatives filed three (3) amended complaints (the *"Amended Complaints"* and with the Initial Complaint, the *"Complaint"*) containing substantially similar allegations to those asserted in the Initial Complaint but also asserting claims under the California WARN Act on behalf of the Class Members who were employed at the Debtor-Defendant's Irvine, California facility;

WHEREAS, during the pendency of the Chapter 11 Cases, certain Class Members filed individual proofs of claim asserting claims that are based on or related to the WARN Act or severance pay or benefits arising out of the termination of the Class Members' employment, including, but not limited to: (i) claims asserted or that could have been asserted in the WARN Action; and (ii) any other claims for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation (the *"Individual WARN Claims"*), but no proof of claim was filed collectively on behalf of the Class Members. A list of the Individual WARN Claims is annexed hereto as *Exhibit A*;

WHEREAS, on or about September 13, 2007 through June 10, 2008, the Debtor-Defendants filed their answer and affirmative defenses (the *"Answer"*) to the Complaint;

WHEREAS, the Answer denied certain material allegations of the Complaint and asserted,

among its affirmative defenses, that (i) the Debtor-Defendants were not an "employer" for purposes of the WARN Act pursuant to the liquidating fiduciary doctrine; (ii) the Debtor-Defendants provided sufficient notice under the faltering company defenses as enumerated in 29 U.S.C. § 2102(b)(1) and Cal. Lab. Code § 1402.5; (iii) the Debtor-Defendants provided sufficient notice under the unforeseeable business circumstances defense as enumerated in 29 U.S.C. § 2102(b)(2)(A); and (iv) the Debtor-Defendants acted in good faith and had reasonable grounds for believing their conduct was not in violation of the WARN Act.

WHEREAS, on or about November 20, 2007, the Class Representatives filed a motion for class certification and other relief;

WHEREAS, on February 1, 2008, subsequent to an agreement between the Parties, the Bankruptcy Court granted class certification (the "*Initial Class Certification Order*"). Further orders certifying the Class and granting related relief were entered by the Bankruptcy Court on or about May 21, 2008 through September 16, 2008 (collectively with the Initial Class Certification Order, the "*Class Certification Order*"). The Class Certification Order:

1. defined and certified the Class as all employees who were terminated without cause on or within thirty (30) days of August 3, 2007 at one of the Debtor-Defendants' Affected Facilities,[1] or any employee who was terminated without cause and who could have reasonably expected to experience an employment loss as a consequence of a plant closing or mass layoff at one of the Debtor-Defendants' Affected Facilities, and who were affected employees within the meaning of 29 U.S.C. § 2101(a)(5), but excluded from the Class any employees who voluntarily resigned, retired, or who were terminated for cause;

2. appointed plaintiffs Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus, and Patricia Williams as class representatives of

---

[1] The Class Certification Order defines "Affected Facilities" as any single site of employment, within the meaning of 20 C.F.R. § 639.3(i), in which fifty (50) or more of Debtor-Defendants' employees and at least thirty-three percent (33%) of the employees were terminated from employment on or within thirty (30) days of August 3, 2007, excluding any part-time employees, as that term is defined by 29 U.S.C. 2101(a)(8), and any employees who voluntarily resigned, retired, or who were terminated for cause.

the Class; and

3.  appointed James Huggett of the firm Margolis Edelstein, The Gardner Firm, P.C., Lankenau & Miller LLP and Outten & Golden LLP as class counsel (collectively, "*Class Counsel*").

The Class Certification Order also ordered that notice (the "*Initial Class Notice*") be mailed by Class Counsel to each Class Member informing them of, among other things, the litigation and their right to opt-out of the Class;

WHEREAS, mailing of the Initial Class Notice to the Class Members, including opt-out instructions, was completed by Class Counsel on or about November 5, 2008;

WHEREAS, in response to the Initial Class Notice, the following thirteen (13) individuals timely opted-out of the Class: Steven Berry, Jon Encarnacian, Christine English, Kristen Gaffney, Diane Hall, Caroline Hill, Patricia Hoyt-Burgess, Constance Iampieri, Denise Jeselnik, Michele Kilian, Mirian Renteria, Teddy Santis and Richard Weiss (collectively, the "*Opt-Outs*"). Having opted-out of the Class, these individuals are not entitled to share in the Settlement Fund, as described below.

WHEREAS, on or about May 23, 2008, the Bankruptcy Court entered an order approving a joint stipulation and agreement among the Parties permitting the Committee to intervene in the WARN Action.

WHEREAS, the Parties have engaged in substantial discovery in this matter;

WHEREAS, there exists significant, complex legal and factual issues regarding the application of the WARN Act and the various cases and regulations interpreting the WARN Act and regarding the viability of the WARN Action, including:

- whether the Debtor-Defendants were a covered employer under the WARN Act at the time of the alleged plant closing or mass layoffs pursuant to the liquidating fiduciary doctrine;

- whether the Debtor-Defendants' WARN Notice provided adequate notice to the Class Members under the WARN Act;

- whether the WARN Notice was defective under the WARN Act;

- whether the Debtor-Defendants were entitled to give fewer than sixty (60) days notice because of unforeseeable business circumstances and whether such defense is even available with regard to the California WARN Act claims;

- whether the Debtor-Defendants were entitled to give fewer than sixty (60) days notice because, at the time notice would otherwise have been required, they were seeking new capital that they reasonably believed, if obtained, would have obviated the need for or substantially postponed the alleged plant closings or mass layoffs;

- whether the Debtor-Defendants' efforts to obtain new capital were commercially reasonable under the circumstances;

- whether the Debtor-Defendants have other defenses to the application of the WARN Act;

- whether the Debtor-Defendants gave "as much notice as is practicable;"

- whether the Debtor-Defendants are entitled to a reduction or elimination of damages under the "good faith" exemption to the WARN Act;

- the computation of the amount of damages;

- whether attorneys' fees are to be awarded to the Class Representatives and the Class Members if they prevail;

- whether the alleged damages are entitled to administrative priority under §503(b)(1)(A) or wage or benefit priority under §§507(a)(4) or (5), respectively; and

- whether any WARN liability of the Debtor-Defendants would attach to the estates of the non-defendant Debtors;

WHEREAS, the Plaintiffs have the burden of proof on some of these issues and the Debtor-Defendants have the burden on others, including their major affirmative defenses, and the trial of this matter would likely be lengthy and complex, adding to cost and potential delay;

WHEREAS, all Parties recognize that the outcome of the litigation with respect to all the issues is uncertain;

WHEREAS, to avoid extensive, costly and uncertain litigation over these issues, the Parties have engaged in significant good faith, arm's-length negotiations regarding a possible consensual resolution of the Individual WARN Claims, the Complaint and all related claims (collectively sometimes referred to herein as the *"WARN Act Litigation"*). As a result of these negotiations, the Parties desire to enter into a final settlement and release of all demands, claims, damages, and causes of action, present and future, arising from the WARN Act Litigation, and for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation relating to the termination of employees;

WHEREAS, pursuant to the Bankruptcy Court's order confirming the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009* (the *"Plan"*), and upon the effective date of the Plan, a liquidating trust (the *"Liquidating Trust"*, and its representative, the *Liquidating Trustee"*) will be established and vested with all assets of the Debtors;

WHEREAS, the Liquidating Trust, as successor to the Debtors, will assume all obligations

of the Debtors to pay allowed claims;

WHEREAS, pursuant to the *Stipulation Setting Reserve with Respect to Claims Asserted by WARN Act Class Action Plaintiffs* dated April 20, 2009 (the "*WARN Reserve Stipulation*"), the Parties agreed to set a reserve (the "*WARN Reserve*") on account of all claims arising out of the WARN Act Litigation in the amount of $1.7 million ($1,700,000) upon the effective date of the Plan for the purposes of distribution;

WHEREAS, the Plan has not yet become effective;

WHEREAS, the Parties have agreed to settle claims relating to or arising out of the WARN Act Litigation and Debtor-Defendants' alleged failure to provide adequate notice under the WARN Act in accordance with the terms of this Settlement;

NOW, THEREFORE, as material consideration and inducements to the execution of this Settlement Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intended to be binding, the Parties hereby agree as follows:

1.    **Hearings.** The Parties shall file a joint motion for approval of the Settlement through a bifurcated hearing process (the "*Motion*"). The Motion shall request an initial hearing (the "*Initial Hearing*") at which time the Parties shall seek entry of an order from the Bankruptcy Court preliminarily approving the Settlement, and approving the form and manner of notice to the Class Members of the Settlement, including, among other things, their right to object to the Settlement in person or appear by counsel. The Parties shall also request a date for a fairness hearing (the "*Fairness Hearing*"). The date of the Fairness Hearing shall be no earlier than the earliest date for entry of a binding order under 28 U.S.C. § 1715 (a)-(d). At the Fairness Hearing, the Bankruptcy Court will consider the final approval of the Settlement, including the award of

Class Counsel's Fees (defined below) as well as the authority of the Debtors and the Liquidating Trust, as successor to the Debtors, to enter into the Settlement Agreement.

2. **The Settlement Fund.** The settlement fund ("*Settlement Fund*") shall be equal in amount to a fifty percent (50%) share of the first $13 million ($13,000,000) in estate funds which would otherwise be available for distribution to holders of general unsecured claims on account of such general unsecured claims. For the avoidance of doubt, under no circumstances shall the maximum amount of the Settlement Fund exceed $6.5 million ($6,500,000). Distribution of Settlement Fund payments to the Class Members will be made pursuant to the Plan. Distributions of Settlement Fund payments shall be made by the Liquidating Trust only when the Liquidating Trust makes distributions to holders of general unsecured claims on account of such general unsecured claims. Class Counsel will determine the percentage amount of the Settlement Fund that will be distributed to Class Members on an individualized basis.

3. **WARN Reserve.** Upon the Effective Date of this Settlement, the Class Members acknowledge that the WARN Reserve is no longer necessary and release the Debtors and the Liquidating Trustee from any obligation under the WARN Reserve Stipulation or otherwise to establish the WARN Reserve.

4. **Responsibilities of Class Counsel.** In addition to determining the individualized percentage amount of the Settlement Fund to be distributed to Class Members, Class Counsel shall bear the cost and the ultimate responsibility for the production and mailing of all notices to be required for the Class Members (the "*Class Notices*"). The address of Class Counsel will be used as the return address for the Class Notices and Class Counsel will respond to all inquiries of the Class arising from or related to this Settlement.

5.    **Class Counsel's Fees.**  Class Counsel is entitled to reimbursement of out of pocket expenses not to exceed $225,000.00, in addition to attorneys' fees in the amount of thirty-three and one-third percent (33 1/3%) of each distribution of the Settlement Fund payments to Class Members as payment in full for their work in connection with this matter ("*Class Counsel's Fees*").  Class Counsel's Fees will be deducted from, and distributed contemporaneously with, each distribution of the Settlement Fund payments to Class Members.[2]

6.    **The Allocation of the Settlement Fund and Disbursement of the Settlement Fund Payments to Class Members.**

(a)    <u>Allocation of the Settlement Fund</u>.  The gross individualized amount of the Settlement Fund (after being first reduced by forty-five thousand dollars ($45,000) on account of service fees to be paid to Class Representatives) shall be allocated to each Class Member as determined by Class Counsel.  The method used to calculate Settlement Fund payments due to each Class member is described in detail in *Exhibit C.*

(b)    <u>Disbursement of Settlement Fund Payments</u>.  The Debtors or the Liquidating Trust shall be responsible for the preparation and mailing of the individual settlement checks to Class Members in the amount determined by Class Counsel.  The amount of the Settlement Fund payments ("*Gross Payment Amount*") to be paid to each Class Member is listed on *Exhibit B.*

(c)    <u>Returned Settlement Checks</u>.  The Debtors or the Liquidating Trust shall provide Class Counsel no less frequently than weekly with the names of those Class Members whose settlement checks have been returned as undeliverable.  Class Counsel shall conduct a search of a national database for the correct address of such Class Members.  Upon Class

---

[2] Notwithstanding, Class Counsel shall be entitled to recoup the total out of pocket expenses from the first disbursement to the Class.

Counsel's written notice of a Class Member's correct address or as the Parties may otherwise

obtain, the Debtors or the Liquidating Trust shall promptly remail the returned settlement check to

the Class Member at such corrected address.

     (d)        <u>Reversion of Residual Funds</u>. In the event there are any Settlement

Amounts remaining for any reason, including Settlement checks which are not deposited,

endorsed or negotiated within six (6) months of their date of issuance (the "*Residual Funds*"), such

Residual Funds will be donated to The Impact Fund, a non-profit organization dedicated to

employee rights, subject to approval by the Bankruptcy Court.

     (e)        <u>Notification of Tax Consequences to Class Members</u>.  The notice to the

Class Members of the Settlement shall advise each Class Member to seek his or her own personal

tax advice prior to acting in response to the notice.

     (f)        <u>Withholding Taxes and Related Filings</u>.

         (i)     Sixty-six and two thirds percent (66 2/3%) of the Gross Payment Amount to

each Class Member receiving payment shall be reported as wages to the United States

Internal Revenue Service and to other appropriate taxing authorities ("*Taxing Authority*" or

"*Taxing Authorities*") on a Form W-2 issued to the Class Member with his or her taxpayer

identification number, and shall be subject to deductions for applicable taxes and

withholdings as required by federal, state, and local law.

         (ii)    Thirty-three and one third (33 1/3%) percent of the Gross Payment Amount

to each Class Member shall be considered attorneys' fees and reported to the Taxing

Authorities on behalf of the Class Member receiving payment on a Form 1099 issued to the

Class Member with his or her identification number.

(iii)    The payments provided by Paragraph 5 of this Agreement shall be considered attorneys' fees and, together with the reimbursement of expenses, shall be reported to the Taxing Authorities on behalf of Class Counsel on a Form 1099 issued to · Class Counsel with the taxpayer identification number of Class Counsel.

(iv)    In the event that it is subsequently determined by any Taxing Authority that any Class Member owes any additional taxes with respect to any money distributed under this Agreement, it is agreed that the determination of any tax liability is between the Class Member(s) and the Taxing Authority, and that the Debtors and the Liquidating Trustee will not be responsible for the payment of such taxes, including any interest and penalties. The Debtors or the Liquidating Trust shall be responsible for filing the appropriate employment tax returns arising from disbursement of the Settlement Fund payments.

(g)    Service Payments to Class Representatives. The Class Representatives shall each receive a one-time payment of seventy-five  hundred dollars ($7,500) for their service in this matter (the "*Service Payments*"). The Debtors shall distribute this payment to the Class Representatives in addition to their individualized disbursements from the Settlement Fund and Class Counsel's Fees shall not be deducted from the Service Payments. The Service Payments shall be characterized as non-employee compensation to the Class Representatives and shall be reported to the Taxing Authorities on behalf of each Class Representative on a Form 1099 issued to the Class Representative with his or her taxpayer identification number.

(h)    Released Claims of Class Members. For the purposes of this Settlement, the term released claims ("*Released Claims*") shall mean the claims of each Class Member and such Class Member's predecessors, successors and assigns, which relate to or are based on the WARN Act or severance pay or benefits based on or arising out of any federal, state or local statute,

13

ordinance or regulation relating to the termination of employees, including, but not limited to: (i) all claims asserted or that could have been asserted in the WARN Act Litigation; (ii) the Individual WARN Claims; and (iii) any other claims for severance pay or benefits based on or arising out of any federal, state or local statute, ordinance or regulation relating to the termination of employees. Not included in Released Claims are: (a) any obligation created by or arising out of this Settlement; (b) any right to indemnification that the Class Members may have pursuant to any articles of incorporation, certificate of incorporation, bylaws or similar governing document of any Debtor with respect to any loss, damages or expenses (including but not limited to attorneys' fees) that a Class Member may in the future incur with respect to his or her prior service as an employee, officer or director or in any other capacity with any Debtor; (c) any rights that a Class Member may have to insurance coverage for such losses, damages or expenses under any directors and officers liability insurance policy of any Debtor; (d) any claims for continuation of health or medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependant of a Class Member, to the extent allegedly required by the relevant provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985; (e) rights, if any, unrelated to Class Members' WARN claims, to payment of benefits that a Class Member may have under a qualified or nonqualified retirement plan sponsored or maintained by any Debtor (including, without limitation, any 401(k), deferred compensation, and supplemental retirement benefits), and (f) a Class Member's rights to benefits or coverage under any employee welfare benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974, as amended).

(i)        Claims of Opt-Outs; Reservations of Right.  Notwithstanding anything to the contrary in this Settlement, nothing contained herein shall release or impair the rights and claims, if any, of the Opt-Outs.  The Debtors, their estates, their respective subsidiaries, their

respective affiliates, any successors thereto, or any of the present or former officers, directors,

employees, agents, lawyers, consultants, stockholders or members of any thereof or the

Liquidating Trust, as successor to the Debtors, expressly reserve the right to object to, offset or

oppose any and all claims, obligations, or causes of action, of any type, except those claims

expressly allowed under this Settlement.

(j)        Civil Code § 1542 Waiver.  As to the matters released in this Settlement,

each Class Member hereby expressly waives all rights under the provisions of Section 1542 of the

Civil Code of the State of California and any similar rights in any state or territory or under any

similar statute or regulation of the United States or any of its agencies.  Section 1542 of this

California Civil Code provides as follows:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him must have materially
> affected his settlement with the debtor.

Each Class Member acknowledges that the significance of this waiver of Section 1542 of the Civil

Code is that even if he or she should eventually suffer additional damages arising out of the matters

released in this Settlement, he or she will not be able to make any claim for those damages.  Each

Party represents, warrants and agrees that this waiver is a material term of this Settlement, without

which no Party would have entered into this Settlement.

7.    **The Class Notice.**

(a)        As noted above, Class Counsel shall bear the cost and responsibility of the

preparation of the Class Notices.  Class Counsel's address will be used as the return address for the

Class Notices so that any returned Class Notices will be returned to Class Counsel.  Class Counsel

shall mail the Class Notices by first class mail to the Class Members at the addresses listed on

*Exhibit B* no later than ten (10) business days after preliminary approval of this Settlement by the

Bankruptcy Court. The Class Notice shall be in substantially the form annexed hereto as *Exhibit D* or such substantially similar form as may be approved by the Bankruptcy Court. In the event that a Class Notice is returned as undeliverable, Class Counsel shall remail the Class Notice to the corrected address of the intended Class Member recipient as may be determined by Class Counsel through a search of a national database or as may otherwise be obtained by the Parties.

      (b)      <u>Contents of the Class Notice</u>. The Class Notice shall contain the following information, which shall be individualized for each Class Member:

- The date such Class Member was terminated, the office location to which the Class Member was assigned as of the date of his/her termination, and the Class Member's base salary or rate of pay as of the date of termination of employment;

- That the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

- That, if so approved, the Settlement shall be effective as to all Class Members who did not opt-out of the Class;

- The projected dollar amount such Class Member would receive under this Settlement (assuming the maximum recovery of $6.5 million), before Class Counsel's Fees and if this Settlement becomes effective, as well as an estimate of such net payment after such amounts are deducted, which amount shall be calculated by Class Counsel;

- That such Class Member has the right to object to this Settlement either in person or through counsel and be heard at the Fairness Hearing; and

16

- That all Released Claims of a Class Member (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

(c)        Representation and Covenant as to _Exhibit B_. The Debtors represent that to the best of their knowledge, information and belief, the information contained in _Exhibit B_ hereto accurately reflects the contents of their books and records as to each Class Member, as follows: (i) the last known mailing address at the time of termination (unless the employee has provided a change of address to the Debtors); (ii) the base salary or rate of pay as of the date of termination of employment; (iii) the date such Class Member was terminated, and (iv) the office location to which the Class Member was assigned as of the date of his/her termination.

8.    **Objection to Settlement Procedures**.  At or before such time as may be fixed by the Bankruptcy Court for final approval of this Settlement at the Fairness Hearing, a Class Member may object to this Settlement by sending timely written notice of such objection (a "_Notice of Objection_") to Class Counsel, counsel to the Debtors, and counsel to the Committee at the addresses set forth in Section 16(d) below and filing such Notice of Objection with the Bankruptcy Court.  Such objection shall clearly specify the relief sought and the grounds for such relief.

9.    **Acceptance and Effectiveness of the Settlement.**

(a)        Bankruptcy Court Approval.  The effectiveness of this Settlement shall be subject to and contingent upon the entry of an order of the Bankruptcy Court (not subject to judicial review) at the Fairness Hearing, reasonably satisfactory to each of the Parties hereto, approving this Settlement and upon such order having become final and non-appealable (the date of such order becoming final and non-appealable, the "_Final Approval Date_").

17

(b)        The effective date of this Settlement is the Final Approval Date.

10.    **The Waiver and Release of any Released Claims by All Class Members if the Settlement Becomes Effective.**

(a)        Upon the Final Approval Date, all Class Members and their respective predecessors, successors and assigns (the "*Releasing Parties*") shall release or be deemed to release any and all Released Claims as that term is defined in Section 6(h) of this Settlement. Such Released Claim shall be deemed waived by such Releasing Party and expunged in its entirety, and such Releasing Party shall not be entitled to any further distribution in respect of such Released Claim.

(b)        Each Releasing Party shall be deemed as of the Final Approval Date to have settled, released and extinguished completely any and all Released Claims, liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that such Releasing Party may have against the Debtors, their estates, their respective subsidiaries, their respective affiliates, any successors thereto, or any of the present or former officers, directors, employees, agents, lawyers, consultants, stockholders or members of any thereof or the Liquidating Trust, as successor to the Debtors, including without limitation any Released Claim arising out of any Individual Proofs of Claim. In addition, each Releasing Party shall be deemed as of the Final Approval Date to have released each of the Class Representatives from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he/she may have against the Class Representatives, any successors or assignees to their legal interests, or any of their present or former agents, lawyers or consultants arising out of any Released Claim or the terms of this Settlement.

18

11.    **Protection of Class Members' Confidential Information.**  In order to protect the privacy of the Class Members, it is presently contemplated that the Parties shall seek to file *Exhibit A* and *Exhibit B* with the Bankruptcy Court under seal.  However, these schedules have been made available to and reviewed by Class Counsel, on the condition that Class Counsel is bound by an agreement not to disclose the contents thereof; *provided, however*, that Class Counsel may disclose the information relating to a given Class Member to that Class Member or use the information to locate a Class Member as contemplated in Sections 6(d) and 7(a).

12.    **No Litigation.**  Except as may be necessary to enforce the terms of this Settlement, each of the Debtors, the Committee, the Class Representatives, the Releasing Parties and any other person who accepts payment hereunder agree that she or he shall not commence or proceed with any action, claim, suit, proceeding or litigation against any other Party, directly or indirectly, regarding or relating to the matters described herein, or take any action inconsistent with the terms of the Settlement.

13.    **No Admission of Liability.**  This Settlement is intended to settle and dispose of the Released Claims of all of the Class Members.  Nothing herein shall be construed as an admission by any Party of any facts or liability of any kind.

14.    **Representations and Warranties.**  Each Party represents and warrants that upon Bankruptcy Court approval of this Settlement it will have the legal right and authority to enter into this Settlement and the transactions and releases contemplated hereby.

15.    **Further Assurances.**  The Parties shall cooperate fully and shall execute and deliver any and all supplemental papers, documents, instruments and other assurances and shall do any and all acts that may be reasonably necessary or appropriate to give full force and effect to the terms and intent of this Settlement.

16.  **Miscellaneous.**

(a)        <u>Continuing Jurisdiction of Bankruptcy Court</u>.  The Bankruptcy Court shall

have full jurisdiction over this Settlement and any dispute or controversy arising from or related to

the interpretation or enforcement of this Settlement.

(b)        <u>Governing Law/Jurisdiction</u>.  Except where superseded by applicable

federal law, this Settlement shall be governed by the laws of the state of Delaware.

(c)        <u>Public Announcement of Settlement</u>.  The Parties and their counsel agree

that before final approval of the Settlement, they will not issue any press releases, initiate any

contact with the press, respond to any press inquiry or have any communication with the press

about this case and/or the fact, amount or terms of the Settlement.  Any communication about the

Settlement to Class Members, other than the Class Representatives, prior to the Bankruptcy Court

approved mailing will be limited to a statement that a settlement has been reached and the details

will be communicated in a forthcoming Bankruptcy Court approved notice.

(d)        <u>Notices</u>.  Any notice or other communication required or permitted to be

delivered under this Settlement between the Debtors, the Committee, Class Counsel or from any

Class Member to the Debtors, the Committee, Class Counsel and/or the Bankruptcy Court shall be

(i) in writing, (ii) delivered personally, by courier service or by certified or registered mail,

first-class postage prepaid and return receipt requested, (iii) deemed to have been received on the

date of delivery, and (iv) addressed as follows (or to such other address as the Party entitled to

notice shall hereafter designate by a written notice filed with the Bankruptcy Court):

**If to the Debtors, to:**

YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Attention:  Scott A. Holt, Esq.

**If to Class Members or Class Counsel, to:**

LANKENAU & MILLER LLP
132 Nassau Street
Suite 423
New York, New York  10038
Attention:  Stuart J. Miller, Esq.

and

THE GARDNER FIRM, P.C.
210 S. Washington Avenue
Post Office Drawer 3103
Mobile, Alabama  36652
Attention:  Mary Olsen, Esq.

and

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York  10016
Attention:  Jack A. Raisner, Esq.

**If to the Committee, to:**

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Attention:  Mark S. Indelicato, Esq.

and

BLANK ROME LLP
1201 Market Street
Suite 800
Wilmington, DE  19801
Attention:  Bonnie Glantz Fatell, Esq.

(e)     Non-Severability. Each of the provisions of this Settlement is a material and integral part hereof. In the event that one or more of the provisions of this Settlement shall become invalid, illegal or unenforceable in any respect, the entire Settlement shall be deemed null and void unless all the Parties agree otherwise.

(f)     Amendments. This Settlement may not be modified, amended or supplemented by the Parties except by a written agreement that the Parties have signed with any required approval of the Bankruptcy Court.

(g)     Integration. This Settlement contains the entire agreement among the Parties with respect to the matters covered by this Settlement, and no promise or understanding or representation made by any Party or agent, director, officer, employee or attorney of any Party that is not expressly contained in this Settlement shall be binding or valid.

(h)     No Third-Party Beneficiaries. This Settlement does not constitute a contract for the benefit of any third parties, any prior creditors or claimants of the Parties, or any nonparty, other than Class Members in relation to the provisions of this Settlement.

(i)     Headings. The headings of this Settlement are for convenience only and are not part of the Settlement and do not in any way define, limit, extend, describe or amplify the terms, provisions or scope of this Settlement and shall have no effect on its interpretation. Where appropriate, the use of the singular shall include the plural and the use of the masculine gender shall include the feminine gender as well.

(j)     Counterparts. This Settlement may be executed in one or more counterparts, each of which together or separately shall constitute an original and which, when taken together, shall be considered one and the same binding agreement.

(k)        <u>Cooperation</u>.  The Parties agree to cooperate with one another to effectuate an efficient and equitable implementation of this Settlement.

(l)        <u>Binding Nature of Settlement</u>.  This Settlement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors, transferees, assigns, heirs and estates.

[Signature pages follow]

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

YOUNG CONAWAY STARGATT & TAYLOR LLP

on behalf of American Home Mortgage Holdings, Inc. and its affiliated Debtors

By: _____
    Name:  Scott A. Holt
    Title:   Debtors' Counsel


LANKENAU & MILLER LLP

on behalf of the Class Representatives and Class Members

By: _____
    Name:  Stuart J. Miller
    Title:   Class Counsel


HAHN & HESSEN LLP

on behalf of the Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc. and its affiliated Debtors

By: _____
    Name:  Mark S. Indelicato
    Title:   Committee Counsel

24

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

YOUNG CONAWAY STARGATT & TAYLOR LLP

on behalf of American Home Mortgage Holdings, Inc. and its affiliated Debtors

By: _____
          Name: Scott A. Holt
          Title:  Debtors' Counsel


LANKENAU & MILLER LLP

on behalf of the Class Representatives and Class Members

By: _____
          Name:  Stuart J. Miller
          Title:  Class Counsel


HAHN & HESSEN LLP

on behalf of the Official Committee of Unsecured Creditors of American Home Mortgage Holdings, Inc. and its affiliated Debtors

By: _____
          Name:  Mark S. Indelicato
          Title:   Committee Counsel

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of

the date first written above.

YOUNG CONAWAY STARGATT & TAYLOR LLP

on behalf of American Home Mortgage Holdings,
Inc. and its affiliated Debtors

By: _____

      Name:  Scott A. Holt
      Title:   Debtors' Counsel

LANKENAU & MILLER LLP

on behalf of the Class Representatives and Class
Members

By: _____

      Name:  Stuart J. Miller
      Title:   Class Counsel

HAHN & HESSEN LLP

on behalf of the Official Committee of Unsecured
Creditors of American Home Mortgage Holdings,
Inc. and its affiliated Debtors

By: _____

      Name:  Mark S. Indelicato
      Title:   Committee Counsel

# EXHIBIT A

## FILED UNDER SEAL

# EXHIBIT B

## FILED UNDER SEAL

# EXHIBIT C

EXHIBIT C

The amount of the gross allowed claim allocated to each Class Member under the Settlement was derived from the amount of the Settlement Fund (less forty-five thousand dollars ($45,000) to be paid in the aggregate as service fees to the Class Representatives and less Class Counsel's out of pocket expenses not to exceed $225,000) and was based on the following: 1) assuming the maximum potential recovery of $6,500,000, approximately 80% of each Class Member's Maximum Theoretical WARN Claim (defined herein below) will be allowed where the Class Member was formerly employed in California. The percentage of the Maximum Theoretical WARN Claim allocated to each former California employee is reflective of the strength of such employee's claim under the California WARN Act and the absence of the "unforeseeable business circumstances" exception in that statute; and 2) assuming the maximum potential recovery of $6,500,000, approximately 23% of each Class Member's Maximum Theoretical WARN Claim will be allowed where the Class Member was formerly employed outside California, and thus did not have the benefit of a California WARN Act claim. In calculating the amount of the gross allowed claims described above, the daily rate of individual Class Members was determined by dividing each class member's annual salary by 52 to come up with a weekly rate. The weekly rate was then divided by 5 to come up with the daily rate. The daily rate was then multiplied by up to 42 working days, reduced by week days worked after August 3, 2007 within the violation period. The resulting claim is the "Maximum Theoretical WARN Claim" for each class member for whom Debtors had wage information.[1] The Maximum Theoretical WARN Claim was then multiplied by the percentages set forth above to arrive at the gross allowed claims.

---

[1] In instances where Debtors lacked wage information for class members, the average annual salary of the Class was used to determine said Class Member's respective Maximum Theoretical WARN Claims using the same formula described above. The Maximum Theoretical WARN Claim was then multiplied by the percentages set forth above.

# EXHIBIT D

<table>
<tr><td>1</td><td colspan="2" align="center">UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</td></tr>
</table>

1

2

3    ------------------------------------------------------------x

    In re

4    AMERICAN HOME MORTGAGE HOLDINGS,
    INC., *et al.*,[1]

5

6                               Debtors.
    ------------------------------------------------------------x

7    KATHY S. KOCH, JARRETT PERRY,
    GINA PULLIAM, MICHAEL S. SUROWIEC,

8    KATHLEEN WIELGUS, and PATRICIA WILLIAMS,
    on their own behalf and on behalf of all other persons

9    similarly situated,

10                              Plaintiffs,

11                  - against-

12   AMERICAN HOME MORTGAGE CORP.,
    AMERICAN HOME MORTGAGE ACCEPTANCE,

13   INC., AMERICAN HOME MORTGAGE
    SERVICING, INC., AMERICAN HOME

14   INVESTMENT CORP., and AMERICAN
    HOME MORTGAGE HOLDINGS, INC.,

15

16                            Defendants.
    ------------------------------------------------------------x

Chapter 11

Case No. 07-11047 (CSS)
(Jointly Administered)

Adv. Pro. No. 07-51688 (CSS)

**Hearing Date:**
**Responses Due:**

17   **NOTICE TO CLASS OF (A) PROPOSED SETTLEMENT OF CLASS ACTION CONCERNING WARN ACT**
    **CLAIMS; (B) AWARD OF ATTORNEYS' FEES TO CLASS COUNSEL; (C) DATE OF COURT HEARING**

18   **FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND**
    **EXPENSES, AND (D) RIGHT TO OBJECT TO THE SETTLEMENT AND CLASS COUNSEL'S REQUEST**

19   **FOR ATTORNEYS' FEES AND EXPENSES AND TO APPEAR AT COURT HEARING**

20

21   TO:    The former employees of American Home Mortgage Corp., American Home Mortgage Acceptance,
    Inc., American Mortgage Servicing, Inc., American Home Mortgage Investment Corp., and American Home

22   Mortgage Holding, Inc. (collectively, the "Defendants" or "Debtors") who were terminated without cause on or
    within 30 days of August 3, 2007 at one of Defendants' Affected Facilities (as defined below) or any employee

23   who was terminated without cause and who could have reasonably expected to experience an employment loss
    as a consequence of a plant closing or mass layoff at one of the Debtor-Defendants' Affected Facilities, and

24   who were affected employees within the meaning of 29 U.S.C. Sec. 2101(a)(5).

25   [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
    American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland

26   corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a
    American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New

27   York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407);
    Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York

28   corporation (8580).

**Introduction**

1.      There is currently pending in the United States Bankruptcy Court for the District of Delaware the above captioned adversary proceeding (the "Class Litigation") brought under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.*, and its California counterpart, California Labor Code §§ 1400 *et seq.* (collectively, the "WARN Act"). The Plaintiffs, listed above (collectively the "Class Representatives"), and the Debtor-Defendants have reached a proposed Settlement and Release Agreement to resolve the WARN Act Class Litigation (the "Settlement") under which benefits described below will be provided to the members of the Class.

2.      This Notice constitutes notice to the Class of (a) the proposed Settlement of the Class Litigation, (b) the request of Class Counsel for the award of attorneys' fees of thirty-three and one third percent (33 1/3%) the Class recovery, plus out of pocket expenses of up to $225,000, and (c) the date of the Court hearing for final approval of proposed settlement and award of attorneys' fees and expenses; (d) the right of each member of the Class to object to or comment on, the Settlement and Class Counsel's request for attorneys' fees and expenses and to appear at the hearing at which the Court will consider the final approval of the Settlement and Class Counsel's request for attorneys' fees and expenses.

**Description of the Class Litigation**

3.      On August 8, 2007, Plaintiffs filed with the Bankruptcy Court a class-action complaint (the "Complaint")[2], commencing the Class Litigation against the Debtor-Defendants alleging that the Debtor-Defendants violated the WARN Act by ordering plant closings and/or mass layoffs on or about August 3, 2007 and thereafter, without providing sixty days of advance notice thereof, and that in consequence of this failure, the affected employees have an Administrative Priority claim pursuant to § 503(b)(1)(A) against the Debtor-Defendants consisting of their total wages and benefits for the sixty day violation period.  The Class Litigation is captioned *Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus and Patricia Williams, on their own behalf and on behalf of all other persons similarly situated, v. American Home Mortgage Corp., American Home Acceptance, Inc., American Home Mortgage Servicing, Inc., American Home Investment Corp. and American Home Mortgage Holdings, Inc.*, Adversary Proceeding No. 07-51688 (CSS). The WARN Act requires an employer having more than 100 full-time employees to give its employees working at facilities having at least 50 full-time employees at least 60 calendar days' advance written notice before ordering a shutdown.  Employers may give less than 60 days written notice if it can prove that certain defenses, as enumerated in the WARN Act, were applicable.  But to avail itself of these defenses, the employer must still give as much notice as practicable and include in the notice a brief statement of the basis for less than 60 days' notice.  An employer who is found liable under the WARN Act can seek reduction of damages on the grounds that it believed in good faith that it was in compliance with the WARN Act and that it had reasonable grounds for that belief or that it paid wages and benefits during the violation period.

4.      On or about September 13, 2007 through June 10, 2008, the Debtor-Defendants answered the Complaint in the Class Litigation in which the Debtor-Defendants denied the material allegations of the Complaint and asserted multiple affirmative defenses, including the "unforeseeable business circumstances", the "faltering company" and the "good faith" defenses.  The Answer and other contentions of the Debtor-Defendants' raise the following issues, among others: (a) whether the Debtor-Defendants provided notice to the Plaintiffs or the other members of the Class; (b) whether any such notice, if provided, was adequate and in compliance with the pertinent regulations; (c) whether such notice was defective; (d) whether the Debtor-Defendants were entitled to give less than 60 days notice because of reasonably unforeseeable business circumstances and whether such exception was available under the California WARN Act; (e) whether the Debtor-Defendants were entitled to give less than 60 days notice because, at the time notice would have otherwise been required, it was seeking new capital or business that it reasonably believed, if obtained, would

---

[2] On or about August 30, 2007 through March 10, 2008, the Class Representatives filed three amended complaints containing substantially similar allegations to those asserted in the Complaint, but also asserting claims under the California WARN Act on behalf of the Class Members who were employed at the Debtor-Defendants' Irvine, California facility.

have obviated or substantially postponed the plant closing or mass layoff; (f) whether such search for new capital or business was commercially reasonable under the circumstances; (g) whether the Debtor-Defendants have other defenses to the application of the WARN Act; (h) whether the employment losses suffered by the aggrieved employees were caused by the Debtor-Defendants' failure to obtain capital or business; (i) whether the Debtor-Defendants gave "as much notice as is practicable;" (j) whether certain Facilities having fewer than 50 full-time employees suffered a plant closing or mass layoff as those terms are defined in the WARN Act; (k) whether the employer is entitled to a defense of "good faith;" (l) the computation of the amount of damages; (m) whether the Debtor-Defendants are entitled to set-offs against damages of sums paid post-petition to employees; (n) whether attorneys' fees are to be awarded to the Class Representatives and the Class if they prevail and (o) whether the damages are entitled to administrative priority under § 503(b)(1)(A) or wage or benefit priority under §§ 507(a)(4) or (5), respectively.

5.    On February 1, 2008, the Court granted class certification (the "Class Certification Order")[3]. The Class Certification Order: (a) defined and certified the Class as all employees who were terminated without cause on or within thirty (30) days of August 3, 2007 at one of the Debtor-Defendants' Affected Facilities,[4] or any employee who was terminated without cause and who could have reasonably expected to experience an employment loss as a consequence of a plant closing or mass layoff at one of the Debtor-Defendants' Affected Facilities, and who were affected employees within the meaning of 29 U.S.C. Sec. 2101(a)(5), but excluded from the Class any employees who voluntarily resigned, retired, or who were terminated for cause; (b) appointed plaintiffs Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus and Patricia Williams as class representatives; and (c) appointed James Huggett of the firm Margolis Edelstein, The Gardner Firm, P.C., Lankenau & Miller, LLP and Outten & Golden LLP as counsel to the Class (collectively, "Class Counsel").

6.    By November 5, 2008, Class Counsel mailed the Initial Class Notice, including opt-out instructions, to Class Members whose names and addresses were supplied by counsel for the Debtor-Defendants.

7.    In response to the Initial Class Notice, thirteen (13) individuals timely opted out of the Class (collectively, the "Opt-Outs") and having opted-out, these individuals are not entitled to share in the Settlement Fund, as described below.

8.    The parties have identified 2319 persons, excluding opt-outs, who constitute, to the best of the Debtor-Defendants' knowledge, information and belief, all the individuals that are currently within the Class definition and who are eligible to share in the Settlement Fund (as hereinafter defined) created under this Settlement.

9.    Class Counsel has conducted extensive discovery, including the examination of hundreds of thousands of documents of the Debtor-Defendants, the review of responses to interrogatories, and the interview of members of the Class. Class Counsel has analyzed the applicable law and weighed the likelihood of success.

### The Proposed Settlement

10.    The following description of the proposed Settlement is only a summary. In the event of any difference between this summary and the terms of the Settlement, the terms of the Settlement shall

---

[3] Further orders certifying the Class and granting relief were entered by the Bankruptcy Court on or about May 21, 2008 through September 16, 2008.

[4] The Class Certification Order defines "Affected Facilities" as any single site of employment, within the meaning of 20 C.F.R. § 639.3(i), in which fifty (50) or more of Debtor-Defendants' employees and at least thirty-three percent (33%) of the employees were terminated from employment on or within thirty (30) days of August 3, 2007, excluding any part-time employees, as that term is defined by 29 U.S.C. § 2101(a)(8), and any employees who voluntarily resigned, retired, or who were terminated for cause.

3

control. You may secure a copy of the complete Settlement from Class Counsel Mary E. Olsen at the address shown below. The terms of the Settlement relevant to the Class Members may be summarized as follows:

### The Terms of the Settlement

11.     In general, the Settlement Agreement provides for Class Members and holders of general unsecured claims to share equally (50/50) in the first thirteen million ($13,000,000) in distributions of estate assets that would otherwise have been made on account of general unsecured claims in full and final satisfaction of the Released Claims (defined below) of the Class Members.

12.     The amount of the gross allowed claim allocated to each Class Member under the Settlement was derived from the amount of the Settlement Fund (less forty-five thousand dollars ($45,000) to be paid in the aggregate as service fees to the Class Representatives and less Class Counsel's out of pocket expenses not to exceed $225,000) and was based on the following: a) assuming the maximum potential recovery of $6,500,000, approximately 80% of each Class Member's Maximum Theoretical WARN Claim (defined herein below) was allowed where the Class Member was formerly employed in California (note, the percentage of the Maximum Theoretical WARN Claim allocated to each former California employee is reflective of the strength of such employee's claim under the California WARN Act and the absence of the "unforeseeable business circumstances" exception in that statute); and b) assuming the maximum potential recovery of $6,500,000, approximately 23% of each Class Member's Maximum Theoretical WARN Claim was allowed where the Class Member was formerly employed outside California, and thus did not have the benefit of a California WARN Act claim. In calculating the amount of the gross allowed claims described above, the daily rate of individual Class Members was determined by dividing each class member's annual salary by 52 to come up with a weekly rate. The weekly rate was then divided by 5 to come up with the daily rate. The daily rate was then multiplied by up to 42 working days, reduced by week days worked after August 3, 2007 within the violation period. The resulting claim is the "Maximum Theoretical WARN Claim" for each class member for whom Debtors had wage information.[5] The Maximum Theoretical WARN Claim was then multiplied by the percentages set forth above to arrive at the gross allowed claims.

13.     The Settlement shall not become effective if the Court does not approve it.

14.     The Class Representatives in this matter (Kathy S. Koch, Jarrett Perry, Gina Pulliam, Michael S. Surowiec, Kathleen Wielgus and Patricia Williams) shall each receive a one-time payment of seventy-five hundred dollars ($7,500) for their service in this matter as Class Representatives (the "Service Payment"). Debtor-Defendants shall distribute this payment to the above named individuals in addition to their individualized WARN settlement amounts. No deductions for attorney fees shall be made from these Service Payments.

15.     If settlement checks issued to Class Members remain uncashed as of six months after their date of issuance (the "Residual Funds") such funds shall be disbursed to the Impact Fund, a non-profit organization dedicated to employee rights. No portion of the Residual Funds will revert to the Liquidating Trust for any reason, or be retained by Class Counsel.

16.     The total amount of your projected recovery under the Settlement is shown on Exhibit "A" annexed hereto.

### Class Counsel's Recommendation

17.     Class Counsel recommends the Settlement, believing that it is fair, reasonable and

---

[5] In instances where Debtors lacked wage information for class members, the average annual salary of the Class was used to determine said Class Member's respective Maximum Theoretical WARN Claims using the same formula described above. The Maximum Theoretical WARN Claim was then multiplied by the percentages set forth above.

4

1    adequate to the Class.

2                    **Taxes and Other Deductions Required by Law**

3            18.    All Class Members who receive a disbursement pursuant to this Settlement will
     receive a Form W-2 for 66 2/3% of the gross payment and such amount shall be subject to deductions for
4    applicable taxes and withholdings as required by federal law.  An IRS Form 1099 will be issued with respect to
     33 1/3% of the gross payment amount to each Class Member (representing the attorneys' fees).  We urge you to
5    consult with a tax adviser to determine the exact amount of taxes due on your WARN Act Settlement, when you
     receive it.

6                    **Class Counsel's Fees and Expenses**

7            19.    Under the proposed Settlement and subject to final court approval, Class Counsel
     shall be paid attorneys' fees of thirty-three and one-third percent (33 1/3%) of the total amount due each Class
8    Member, plus out of pocket costs of up to $225,000 (the costs amount to approximately $92 per person).

9            20.    You may object to the request of Class Counsel for attorneys' fees by filing an
     objection within the time and in the manner specified below.
10
                 **Release of All Claims related to Your Termination and**
11                      **Effect of Approval of Settlement Agreement**

12           21.    Upon final approval by the Court, the Settlement will result in the dismissal of the
     Class Litigation on the merits and with prejudice to all Class Members, and shall constitute a release of claims
13   (the "Released Claims") by each Class Member and such Class Member's predecessors, successors and assigns,
     which relate to or are based on the WARN Act or severance pay or benefits based on or arising out of any
14   federal, state or local statute, ordinance or regulation relating to the termination of employees, including, but not
     limited to: (i) all claims asserted or that could have been asserted in the WARN Act Litigation; (ii) the
15   Individual WARN Claims; and (iii) any other claims for severance pay or benefits based on or arising out of
     any federal, state or local statute, ordinance or regulation relating to the termination of employees.  Not
16   included in Released Claims are:  (a) any obligation created by or arising out of this Settlement; (b) any right to
     indemnification that the Class Members may have pursuant to any articles of incorporation, certificate of
17   incorporation, bylaws or similar governing document of any Debtor with respect to any loss, damages or
     expenses (including but not limited to attorneys' fees) that a Class Member may in the future incur with respect
18   to his or her prior service as an employee, officer or director or in any other capacity with any Debtor; (c) any
     rights that a Class Member may have to insurance coverage for such losses, damages or expenses under any
19   directors and officers liability insurance policy of any Debtor; (d) any claims for continuation of health or
     medical coverage, at the Class Member's expense, or at the expense of a beneficiary or dependant of a Class
20   Member, to the extent allegedly required by the relevant provisions of the Consolidated Omnibus Budget
     Reconciliation Act of 1985; (e) rights, if any, unrelated to Class Members' WARN claims, to payment of
21   benefits that a Class Member may have under a qualified or nonqualified retirement plan sponsored or
     maintained by any Debtor (including, without limitation, any 401(k), deferred compensation, and supplemental
22   retirement benefits), and (f) a Class Member's rights to benefits or coverage under any employee welfare
     benefit plan (as that term is defined in Section 3(1) of the Employee Retirement Income Security Act of 1974,
23   as amended).

24                           **How to Object**

25           22.    If you are satisfied with the proposed settlement including Class Counsel's requested
26   fees and costs and the calculation of your recovery as shown on Exhibit "A", you need to do nothing and you
     will receive a payment or payments toward your Allowed Claim, net of attorneys' fees and costs,  in accordance
27   with the Settlement Agreement and the Plan

28           23.    If, on the other hand, you believe that the proposed settlement is unfair or inadequate

                                  5

1  or you dispute any of the amounts shown on Exhibit "A" or the information concerning your employment or pay, or that Class Counsel's request for attorneys' fees and costs should not be approved, you may object to the
2  Settlement and/or the request for attorneys' fees and costs by mailing certified mail, return receipt requested a detailed written statement bearing the caption of this action shown above on the first page stating your comment
3  or objection, to the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #6, Wilmington, Delaware 19801, and by sending copies of that statement, also by
4  certified mail, return receipt requested, to 1) Young Conaway Stargatt & Taylor LLP, The Brandywine Building,1000 West Street, 17th Floor, Wilmington, DE 19801, Attention: Scott A. Holt, Esq.; 2) The Gardner
5  Firm, P.C., 210 S. Washington Ave., Post Office Drawer 3103, Mobile, AL 36652, Attention: Mary E. Olsen, Esq.; 3) LANKENAU & MILLER LLP, 132 Nassau Street, Suite 423, New York, New York 10038, Attention:
6  Stuart J. Miller, Esq.; 4) Outten & Golden, LLP, 3 Park Avenue, 29th Floor, New York, NY 10016, Attention: Rene' Roupinian, Esq.; 5) HAHN & HESSEN LLP, 488 Madison Avenue, New York, New York 10022,
7  Attention: Mark S. Indelicato, Esq.; and 6) BLANK ROME LLP, 1201 Market Street, Suite 800, Wilmington, Delaware 19801, Attention: Bonnie Glantz Fatell, Esq. **Objections must be mailed so as to be received no**
8  **later than _____, and must include the caption of the action and your name, address, and telephone number together with a detailed statement of the basis for your objection and whether you**
9  **wish to be heard personally or by counsel at the final hearing at which the parties will be requesting binding Court approval of the Settlement and the award of attorneys' fees as described above.**

10        24.    You may also appear in person or by counsel at the final hearing described
11  below.

12  ### Final Hearing to Approve Settlement and Award Attorneys' Fees

13        25.    The hearing for final consideration and approval of the Settlement and the award of attorney's fees and costs to Class Counsel is scheduled to take place on _____, at _____ a.m./p.m. in
14  Courtroom #6 of the United States Bankruptcy Court for the District of Delaware at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801. That hearing may be adjourned without further notice. If you wish to
15  determine if the hearing is adjourned, you may contact Ms. Olsen at the address shown above.

16  ### Other Information

17        26.    Any questions from members of the Class concerning this Notice or the Class Litigation should be directed to The Gardner Firm, P.C., 210 S. Washington Ave., Post Office Drawer 3103,
18  Mobile, AL 36652, Attn: Mary E. Olsen Esq. All requests for more information, including a copy of the Settlement, should be sent by first-class mail to Ms. Olsen to the address indicated above.

19        27.    While the Court has approved the sending of this Notice, that does not indicate, and is not intended to indicate, that the Court has any opinion as to the respective claims or defenses asserted by the
20  parties in the Class Litigation.

21  **Please do not write to or call the Court concerning this matter.**

22

23

24

25

26

27

28