**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, <u>et al.</u>,<br><br>                 Debtors. | Case Number: 07-11047<br><br>Chapter 11<br><br>DECLARATION OF MARTHA E. ROMERO IN SUPPORT OF RESPONSE TO OBJECTION TO CLAIM OF RIVERSIDE COUNTY TAXING AUTHORITY, ONE OF THE CALIFORNIA TAXING AUTHORITY IN SUPPORT THEREOF (TWENTY-FIFTH OMNIBUS OBJECTION)<br><br>Date: September 8, 2009<br>Time: 11:30 a.m. ET |

TO THE HONORABLE CHRISTOPHER S. SONTCHI UNITED STATES BANKRUPTCY JUDGE AND TO INTERESTED PARTIES:

I, Martha E. Romero declare as follows:

1. I am counsel to Riverside County, California Taxing Authority. Riverside is one of the California Taxing Authorities that objection to the Disclosure Statement and to the Amended Plan of Reorganization.

2. I make this declaration in support of the response to the objection of the claim of Riverside County. The facts set forth are of my own personal knowledge and if called to testify in a court of law I could and would competently testify thereto.

3. Riverside County Taxing Authority was one of other California Taxing Authorities that objected to the Disclosure Statement and to the Plan of Reorganization.

4. Originally Imperial, Nevada, Placer, Riverside, San

1

|    |    |                                                                        |
|----|----|------------------------------------------------------------------------|
|    |    | Bernardino and Yuba counties were the objecting California Taxing Authorities. |
|    | 4. | Counsel has worked with debtor's counsel to resolve substantially all of the tax claims involved. |
|    | 5. | Counsel for Riverside has been corresponding with a contact person at debtor's firm since late December 2008 to try and resolve this claim. |
|    | 6. | Numerous emails have been exchanged in order to resolve the objection, often with long lapses of time while each counsel obtaining information.  It has been a difficult and arduous process. |
|    | 7. | Riverside County Taxing Authority requests a further extension to review the current properties still in the name of the debtor versus those properties that have been resold to a third property. This task is cumbersome as explained below but necessary to determine which properties are in the debtor's names and require the payment of taxes. |
|    | 8. | This is the first formal extension requested from this court. |
|    | 9. | The California Taxing Authorities objected to the Amended Plan of Reorganization because payment of these secured real property taxes was not clear in the plan.  The California Taxing Authorities obtained language in the disclosure statement which stated: |

Illustration: Assume a State taxing authority has a claim for real property taxes secured by a first-priority lien

2

|   |   |
|---|---|
| 1 | on REO property that is transferred from a Debtor to the |
| 2 | Plan Trust on the Effective Date. |
| 3 | Because the claim is not specifically identified in the |
| 4 | Plan, the claim is a Miscellaneous Secured Claim.  To the |
| 5 | extent there is value in the REO in excess of the taxes |
| 6 | owed, the Allowed Miscellaneous Secured Claim will |
| 7 | include interest and any reasonable fees, costs, or |
| 8 | charges payable under the State statute giving rise to |
| 9 | the claim.  Under the Plan, the Plan Trustee may elect |
| 10 | between reinstating the tax claim as it existed prior to |
| 11 | the Effective Date and paying the real property taxes in |
| 12 | accordance with State law (e.g., upon closing of a sale |
| 13 | of the REO), paying the tax claim in full (either in a |
| 14 | lump sum on the Effective Date, or over time, with |
| 15 | interest), or tendering the REO satisfaction of the tax |
| 16 | claim.  If the Plan Trustee chooses to pay the tax claim |
| 17 | over time, the tax lien will continue in the property |
| 18 | until the claim is paid in full.  If the Plan Trustee |
| 19 | chooses to reinstate the tax claim as it existed prior to |
| 20 | the Effective Date, then the rights of the taxing |
| 21 | authority will be unimpaired by the Plan, and the taxing |
| 22 | authority will be entitled to exercise any remedies |
| 23 | available to it under applicable State law to obtain |
| 24 | timely payment of the real estate taxes. |
| 25 | 10. Debtor's counsel also confirmed that the confirmation |
| 26 | order also included language as follows: |
| 27 | "Notwithstanding any provisions to the contrary in the |
| 28 | Plan or this order, solely with respect tot he claims of |

      the Objection California Taxing Authorities (1) the allowed pre-petition secured claims of the OCTA will be paid with interest from the petition date through the Effective Date pursuant to 11 U.S.C. Section 506(b) at their statutory rate as required under 11 U.S.C. Section 511 and to the extent allowed will be paid with interest from the Effective Date through the date of payment at the statutory rate.  Such claims of the OCTA may be paid at any time including during the ordinary course of business when the real property is sold and or transferred and if not objections have been filed, such claims will be paid on the later of the claim objection bar date or, if a timely objection is filed within 10 business days after entry of an order of the Court allowing such claim. The OLTTA shall retain their liens for such claims on the collateral or the proceeds therefrom, until such time as the taxes are paid in full' and (ii) the debtors shall timely pay the allowed ad valorem taxes of the OCTA incurred post petition in the ordinary course of business. If such taxes are not timely paid, them the Debtor's or the Plan Trustee shall pay such taxes and any additional allowed penalties and/or interest arising pursuant to applicable non-bankruptcy law.  Further the OCTA shall retain their liens on their collateral or the proceeds therefrom if such collateral has been sold until such time as the post-petition taxes have been paid in full."

11. In the wake of this economy thousands of real property

4

|   |   |
|---|---|
|   | have gone into foreclosure.  The debtor has taken title to numerous properties upon foreclosure. The phenomena is that as the economy worsened more real property was foreclosed upon and in the title of the debtor.  For example, at the beginning of this case Placer County, Taxing Authority, California had approximately (4) properties in the name of the debtor.  As the foreclosures continued and the bankruptcy case continued over 200 properties ended up being in the name of the debtor.  Many of these have since been resold. |
| 12. | The contact person that counsel for Riverside was trying to resolve claims with is no longer with the firm. The last time counsel for Riverside corresponded with debtor's contact person was June 2009.  One of the last emails was a status that debtor's counsel was reviewing certain claims with his client. |
| 13. | On or about August 5, 2009, debtor's counsel informed counsel for Riverside that a new contact person had been assigned to deal with the claim. |
| 14. | Counsel for Riverside initially attempted to contact that person but there was no response until August 14, 2009. Counsel for Riverside requested what else was needed to resolve the claim and was on vacation until August 18, 2009. |
| 15. | Riverside has provided a list of the 92 parcel in which title is listed as debtor.  Riverside requests further time in order to supply tax bills and title reports as the real property may has been sold or transferred |

according with the language in both the Disclosure Statement and Confirmation Order.

16. Title of real property creates the responsibility of payment of the taxes. As the debtor resold foreclosed properties to third properties, the secured real estate taxes were paid, creating a moving target for most taxing authorities on which properties remained in the debtor's names and those that were resold.

17. Due to the numerous amount of properties within the county, it was a cumbersome task to update which properties were sold or remained in the debtor's name.

18. Real property revenue is especially important to the county coffers as its funds the important service the county must provide including police, fire services, schools and hospitals.

19. The amount originally at issue was approximately $638,855.31 dollars with ninety-two (92) parcels at issue. After reconciling the parcels, the amount remaining is $193,498.62. This is a substantial amount for the taxing authority to lose because the parcels cannot be reconciled.

20. Counsel for Riverside stands willing and able to provide the secured tax bills (debtor however, should have these records) and title history if necessary.
Such records have not been requested prior to this hearing.

21. Riverside respectfully requests that this court grant a short extension to reconcile the parcels. In the

1         alternative to overrule the objection to the claim
2         because all of the parcels currently at issue have
3         defaulted secure real property taxes due and must be paid
4         to clear tax liens and title.
5    I declare under penalty of perjury that the foregoing is true
6 and correct. Executed on this 7th day of September 2009 at
7 Whittier, California.

                                ROMERO LAW FIRM

                                By. /s/ Martha E. Romero
MARTHA E. ROMERO, State Bar No. 128144
ROMERO LAW FIRM
BMR Professional Building
Whittier, California 90601
Phone (562) 907-6800
Facsimile (562)907-6820
Attorneys for SECURED CREDITOR
COUNTY OF RIVERSIDE, CALIFORNIA
TAXING AUTHORITY