IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x   Chapter 11
In re:                                                           :
                                                                 :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                           :
HOLDINGS, INC., a Delaware corporation, et al.,[1]               :   Jointly Administered
                                                                 :
                                                                 :   Hearing Date: October 13, 2009 at 10:00 a.m. (ET)
    Debtors.                                                     :   Objection Deadline: October 5, 2009 at 4:00 p.m. (ET)
                                                                 :
---------------------------------------------------------------- x

**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554
AUTHORIZING THE ABANDONMENT AND DESTRUCTION
OF CERTAIN DOCUMENTS AND RECORDS**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") by and through their counsel, hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105, 363 and 554 of title 11 of the United States Code (the "Bankruptcy Code") authorizing the Debtors to abandon and destroy certain Documents and Records (as defined herein). In support of the Motion, the Debtors respectfully represent and state as follows:

## JURISDICTION

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

statutory predicates for the relief requested herein are sections 105, 363 and 554 of the Bankruptcy Code, as complimented by Rule 6007 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

### A. General Background

2. On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). On October 21, 2008, the Trustee appointed an Official Committees of Borrowers.

5. On February 23, 2009, the Court entered an order [Docket No. 7042] confirming the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 [Docket No. 7029] (the "Plan"). To date, the Plan is not yet effective.

### B. Settlement Regarding Occupation and Use of the Debtors' Headquarters

6. AHM SPV, II (the "SPV") is a non-debtor, Delaware limited liability company wholly owned by American Home Mortgage Corp. ("AHM Corp." and together with AHM Holdings, the "Debtor Parties"). In November 2003, the Debtors, through the SPV, undertook a series of transactions to acquire ownership of their corporate headquarters located at 538 Broadhollow Road, Melville, New York (the "Broadhollow Property") for the approximate amount of $26.5 million.

7.      Contemporaneously with the acquisition of the Broadhollow Property, the SPV (i) sold the property to the Suffolk County Industrial Development Authority (the "IDA"), (ii) leased the property from the IDA pursuant to that certain Lease Agreement dated November 1, 2003 (the "Master Lease") for a term ending on January 31, 2015, and (iii) subleased the property to AHM Corp. pursuant to that certain Agreement of Lease dated November 24, 2003 (the "Sublease").

8.      The SPV, AHM Corp. and the IDA are parties to that certain Payment-In-Lieu-Of-Tax Agreement dated November 1, 2003 (the "PILOT Agreement") which provided for the payment of certain taxes and assessments with respect to the Broadhollow Property jointly and severally by the SPV and AHM Corp., notwithstanding the tax-exempt status of the IDA as the owner of record of the Broadhollow Property.

9.      Financing for the SPV's acquisition of and improvements to the Broadhollow Property was provided by JP Morgan Chase Bank ("JP Morgan"), and is evidenced by a promissory note from the SPV (the "Note"). The Note was guaranteed by AHM Holdings (the "Guaranty") and is secured by a mortgage of the IDA's and the SPV's respective interests in the Broadhollow Property (the "Mortgage"), including a collateral assignment of rents from the Broadhollow Property.

10.     JP Morgan assigned the Note, the Mortgage, the Guaranty, and all related loan documents (collectively, the "Loan Documents") to the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2004-PNC1 (the "Trust"), which issued commercial mortgage-backed securities to be paid from the proceeds of the Note. Bank of America National Association, successor by merger to LaSalle Bank National Association, is the trustee (the "Trustee") of the Trust.

11. Since the Petition Date, AHM Corp has continued to occupy a portion of the Broadhollow Property. By Order dated November 26, 2007, the Court extended the deadline pursuant to section 365(d)(4) of the Bankruptcy Code to assume or reject the Sublease to March 3, 2008. By Order dated February 26, 2008 [D.I. 3081], the Court approved a stipulation between AHM Corp. and the SPV extending the section 365(d)(4) deadline through and including the earlier of (i) the effective date of a chapter 11 plan for AHM Corp. or (ii) forty-five days after conversion of AHM Corp.'s chapter 11 case to a case under chapter 7.

12. AHM Corp. stopped paying rent to the SPV under the Sublease as of November 2008, asserting a right to set off with respect to approximately $13.6 million in inter-company receivables shown on AHM's books as due and owing from the SPV to AHM Corp. (the "Setoff Claims"). In turn, the SPV stopped making the payments due under the Loan Documents from November 2008 and thereafter.

13. In an attempt to avoid costly litigation concerning various issues surrounding the Broadhollow Property, the Debtor Parties, the SPV, and the Trustee (collectively, the "Parties") engaged in good-faith, arm's-length settlement negotiations to attempt to reconcile their positions and, as a result of such negotiations, reached an agreement. The agreement was memorialized by stipulation (the "Broadhollow Stipulation") approved by this Court on August 10, 2009 [Docket No. 7923].

14. Pursuant to (and as set forth more fully in) the Broadhollow Stipulation, and attendant license agreement (the "License Agreement"), AHM Corp. is entitled to use and occupy approximately 8,896 square feet of office space and approximately 13,000 square feet of storage space in the basement parking garage, together with the exclusive use of twenty parking spaces as described more fully in the License Agreement, for a term commencing on April 1,

2009, and ending September 30, 2009 (as may be extended, the "License Period"), subject to automatic extension on a month-to-month basis. The License Period may be terminated by AHM Corp. or the Trustee upon no less than thirty days' prior written notice.

15. In exchange for such entitlement, AHM Corp. is require to pay the SPV a monthly license fee of $15,000.

## C. Documents to be Destroyed

16. In the ordinary course of the Debtors' business, the Debtors maintained various records and documents at their headquarters located at the Broadhollow Property. Following the cessation of the Debtors' operations, these documents were collected, boxed, and stored in the basement of the Broadhollow Property. To date, the Debtors currently maintain approximately 10,000 boxes, which occupy approximately 13,000 square feet of storage space in the basement parking area, excluding files being held in the office spaces of the Broadhollow Property.

17. Pursuant to the Broadhollow Stipulation, the Trustee may terminate the License Period on thirty-days' notice. If the Trustee terminates the License Period, the Debtors would be forced to transport all of its contents located at the Broadhollow Property to a third-party storage facility in an expeditious manner. To minimize the detrimental impact that any such move would have on the Debtors' estates, the Debtors have determined that certain of these records and documents should be destroyed immediately, as they are no longer needed for the Debtors' business or their chapter 11 efforts (the "Documents and Records"). The Document and Records, which consist of approximately 4,559 boxes and occupy approximately 7,000 square feet of storage space in the Broadhollow Property, can be categorized as follows: (1) broker packages; (2) construction lending; (3) corporate real estate; (4) employee desk contents;

(5) Great Oak storage; (6) payroll files; (7) department reports; (8) risk management vendor files; and (9) employee time and expense reports.[2] A further description of each category is attached hereto as <u>Exhibit A</u>.

18.  The Documents and Records include document types that may contain personal identifiable information of the Debtors' employees or customers (collectively, "<u>Confidential Information</u>"). The Debtors intend to destroy all of the Documents and Records to avoid possible dissemination of the Confidential Information.

## RELIEF REQUESTED

19.  By this Motion, the Debtors request entry of an order pursuant to sections 105, 363 and 554 of the Bankruptcy Code authorizing the Debtors to abandon and destroy the Documents and Records and to authorize expenditure of estate funds to complete the process.

## BASIS FOR RELIEF

20.  Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy court's power to take

---

[2] In addition to these categories of documents, the Debtors maintain the following additional document categories: (1) accounting records; (2) desk contents of the Debtors' executives; (3) human resources files; (4) legal files; (5) money room/wire documentation; (6) treasury files; (7) documentation relating to acquired mortgage company, Waterfield; and (8) documents relating to shortfall transactions. For avoidance of doubt, the Debtors have expressly excluded these categories from the relief requested herein, however, they reserve their rights to seek such relief at a later date. Moreover, the Debtors do not seek to modify previous orders of this Court regarding the destruction or return of loan files.

whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 <u>Collier on Bankruptcy</u>, ¶ 105.01 at 105-6 (15th ed. rev. 1999).

21.     As is the case with a trustee's decision to reject an executory contract,[3] the Court should apply the business judgment standard in reviewing the Debtors' decision to abandon property that is either of inconsequential value, stored electronically, or burdensome to the estate. <u>See</u> <u>In re Slack</u>, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary. . . . The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.") (internal citations omitted); <u>Reich v. Burke (In re Reich)</u>, 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985) ("[I]f a trustee feels an asset is of inconsequential value and benefit to the estate <u>or</u> that it is 'burdensome to the estate,' he may abandon it." (emphasis in original)).

22.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the debtor's reasonable business judgment. <u>See e.g.</u>, <u>In re Martin</u>, 91 F.3d 389, 395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); <u>In re Montgomery Ward Holding Corp.</u>, 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to

---

[3]     The decision to reject an executory contract is subject to the court's finding that such decision is a product of the debtor in possession's sound business judgment. <u>See</u> <u>Sharon Steel Corp. v. National Fuel Gas Distr. Corp.</u>, 872 F.2d 36, 39 (3d Cir. 1989).

evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (same).

23.   The Debtors' abandonment of the Documents and Records is warranted under section 554(a) of the Bankruptcy Code, and the destruction, including the incurrence of costs associated with destruction, are permitted under section 363 of the Bankruptcy Code. The Debtors have shut down the loan origination business, sold the servicing business, and are liquidating their remaining assets. Accordingly, the Debtors no longer need the Documents and Records for their business operations or the remaining chapter 11 process. More significantly, a majority of the Documents and Records are not necessary to the Debtors' estates because they are either duplicative of other documentation being maintained (i.e., the Debtors do not have a need for multiple copies of the same employee handbook) or contain information stored by electronic means (i.e., printed emails would be identical to those found on the Debtors' electronic server).

24.   In addition, the Documents and Records are burdensome because of the costs of maintaining them and the Debtors' need to ultimately destroy or remove all files from the Broadhollow Property in an expeditious and efficient manner. As set forth more fully above, the Debtors entered into the Broadhollow Stipulation and related License Agreement, which provides for a limited time period for occupancy of the Broadhollow Property in exchange for, among other things, a reduction of rental fees and various waivers of claims against the Debtors. In the event that the Trustee elects to terminate the License Period, to the extent that the Debtors have not reduced their footprint through the destruction of Documents and Records, the Debtors will be forced to incur administrative expenses to transport and store the Documents and Records to a third-party storage unit. Given that the Documents and Records provide no benefit to the

Debtors' estates, the Debtors have determined that accrual of any expense to maintain the Documents and Records is an unnecessary administrative burden on the estate.

25. For all of the foregoing reasons, the Debtors submit that their decision to abandon and destroy the Documents and Records is the product of the Debtors' sound business judgment and should therefore be approved.

## NOTICE

26. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Official Committee of Borrowers; (iv) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (v) counsel to the Agent for the Debtors' Postpetition Lender; (vi) the offices of the attorneys general of the fifty states and the District of Columbia; (vii) the Federal Trade Commission; (viii) Wilbur Ross; (ix) the Securities and Exchange Commission; (x) the SPV; and (xi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

27. No previous request for the relief sought in this Motion has been made to this or any other court.

*Remainder of Page Left Blank By Intention*

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order (i) authorizing the Debtors to abandon and destroy the Documents and Records; (ii) authorizing the Debtors to expend funds of the estate for the purpose of disposing the Documents and Records; and (iii) granting the Debtors any further relief that the Court deems just and proper.

Dated: September 21, 2009　　　　　　　YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
　　　　Wilmington, Delaware

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to Debtors and Debtors in Possession

## Exhibit A

| Category | Description | # of Boxes |
|---|---|---|
| Broker Packages | In the ordinary course of the Debtors' origination business, the Debtors required independent loan brokers to be reviewed, pursuant to an application process, prior to acceptance into the Debtors' wholesale loan program. This category includes hard copy documentation regarding various brokers' application and review process.<br><br>Following the review process, the Debtors maintained an electronic database of approved brokers. The electronic database is not subject to the relief requested herein. | 49 |
| Construction Lending | Prior to the Petition Date, the Debtors originated and serviced various construction loans. This category includes daily work papers, reports, files, memos and documentation related to the Debtors' construction lending operations.<br><br>The Debtors are currently marketing the remaining twelve (12) construction loans and do not require the Documents and Records to maintain, market, sell or otherwise dispose of these loans. | 60 |
| Corporate Real Estate | This category includes documentation relating to the Debtors' corporate real estate needs, including utilities, security, janitorial services, and potential sites for new field branches. More specifically, these documents include daily work papers, reports, files, memos and documentation related to the corporate real estate department.<br><br>The Debtors believe that the vast majority, if not all, of the documentation included in this category is maintained in an electronic database or format. | 23 |

| Category | Description | # of Boxes |
|---|---|---|
| Non-Executive Employee Desk Contents | Immediately prior to the Debtors' bankruptcy filing, the Debtors implemented a mass reduction in force, resulting in the termination of approximately 6,500 employees. As the Debtors' chapter 11 cases progressed, the Debtors further reduced their workforce to essential personnel. This category includes all paper documents that were left in employees' offices at the time of their termination, including, but not limited to, printed emails and web pages, employee handbooks and various employee manuals, handwritten notes, industry articles, junk mail, unused letterhead and envelopes, reference books, and copies of various borrower documentation used during the course of the employees' business. Desk contents may also contain non-paper items such as plastic paper trays and office supplies.<br><br>All desk content boxes were previously reviewed for loan file documentation prior to being boxed and stored by the Debtors. Loan files were destroyed or distributed pursuant to previous orders of the Court.<br><br>The Debtors have also excluded the desk contents of any and all of the Debtors' executives from the relief requested herein. | 3,174 |
| Great Oak Storage | The majority of these files contain documentation related to title information and generic documentation for the Great Oak business. This category does not include any original titles or mortgages, as such files would be held with the requisite recording agency or custodian of collateral documents. | 148 |
| Payroll | This category includes all payroll files, which the Debtors believe to be duplicative of the information held by ADP and provided to the Debtors through the ADP processing system. | 222 |
| Reports | This category includes various hard copy reports from departments at AHM not otherwise subject to separate categorization. The reports are generated through the Debtors' information systems and, accordingly, such reports are maintained electronically or could otherwise be regenerated through electronic means. | 355 |

| Category | Description | # of Boxes |
|---|---|---|
| Risk Management | Prior to creating any vendor relationship, the Debtors' Risk Management Department conducted due diligence regarding the vendor. Additional diligence was also conducted throughout the vendor relationship. This category includes vendor diligence files. It does not, however, include any vendor contracts or accounts receivable or payable information regarding particular vendors. Accordingly, the Debtors do not believe that these documents are relevant to the claims reconciliation process. | 405 |
| Time and Expense Reports | This category includes employee time and expense reports. Similar to the Payroll category, this documentation is maintained through alternative sources. | 123 |
| | **TOTAL** | **4559** |