1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 07-11047 (CSS)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


AMERICAN HOME MORTGAGE HOLDINGS, INC., ET AL.,


        Debtors.


- - - - - - - - - - - - - - - - - - - -x


            U.S. Bankruptcy Court

            824 North Market Street

            Wilmington, Delaware


            September 8, 2009

            11:35 AM


B E F O R E:

HON. CHRISTOPHER S. SONTCHI

U.S. BANKRUPTCY JUDGE


ECR OPERATOR:  LESLIE MURIN

2

1   Debtors' Motion Pursuant to Section 107 of the Bankruptcy Code

2   for an Order Authorizing and Directing the Filing Under Seal of

3   the Supplemental Declaration of Eileen Wanerka in Support of

4   Debtors' Thirteenth, Fifteenth, Nineteenth, Twenty-First,

5   Twenty-Fifth, Thirty-First, Thirty-Fifth, and Thirty-Seventh

6   Omnibus Objections to Claims Pursuant to Section 502(b) of the

7   Bankruptcy Code, Bankruptcy Rules 3007, and Local Rule 3007-1

8   Debtors' Eleventh Omnibus (Substantive) Objection to Claims

9   Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

10  Rules 3003 and 3007, and Local Rule 3007-1

11

12  Debtors' Thirteenth Omnibus (Substantive) Objection to Claims

13  Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

14  Rules 3003 and 3007, and Local Rule 3007-1

15

16  Debtors' Fifteenth Omnibus Objection (Substantive) to Claims

17  Pursuant to Section 502(b) pf the Bankruptcy Code, Bankruptcy

18  Rules 3003 and 3007, and Local Rule 3007-1

19

20  Debtors' Nineteenth Omnibus (Substantive) Objection to Claims

21  Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

22  Rules 3003 and 3007, and Local Rule 3007-1

23

24  Debtors' Twenty-First Omnibus (Substantive) Objection to Claims

25  Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

3

1    Rules 3003 and 3007, and Local Rule 3007-1

2

3    Debtors' Twenty-Fifth Omnibus (Substantive) Objection to Claims

4    Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

5    Rules 3003 and 3007, and Local Rule 3007-l

6

7    Debtors' Thirty-First Omnibus (Substantive) Objection to Claims

8    Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

9    Rules 3003 and 3007, and Local Rule 3007-1

10

11   Debtors' Thirty-Fifth Omnibus Objection (Substantive) to Claims

12   Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

13   Rules 2002 and 3007, and Local Rule 3007-1

14

15   Debtors' Thirty-Seventh Omnibus Objection (Substantive) to

16   Claims Pursuant to Section 502(b) of the Bankruptcy Code,

17   Bankruptcy Rules 2002 and 3007, and Local Rule 3007-1

18

19   Debtors' Forty-First Omnibus (Substantive) Objection to Claims

20   Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy

21   Rules 3003 and 3007, and Local Rule 3007-1

22

23   Lead Plaintiffs' and Settling Defendants' Joint Motion for

24   Entry of Order Authorizing, to the Extent Necessary, the Use of

25   the Proceeds of the D&O Policies to Fund the Securities

4

1    Litigation Settlement

2

3    Motion of CitiMortgage, Inc. to Compel AHM Servicing to Respond

4    to Two Requests for the Production of Documents

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dena Page

1

2    A P P E A R A N C E S :

3    YOUNG CONAWAY STARGATT & TAYLOR

4        Attorneys for Debtors

5        1000 West Street

6        17th Floor

7        Wilmington, DE 19801

8

9    BY:   MARGARET WHITEMAN GREECHER, ESQ.

10        MICHAEL S. NEIBURG, ESQ.

11        PATRICK A. JACKSON, ESQ.

12        JENNIFER R. NOEL, ESQ.

13

14

15    SAUL EWING, LLP

16        Attorneys for American Home Mortgage Servicing, Inc.

17        222 Delaware Avenue

18        Suite 1200

19        Wilmington, DE 19899

20

21    BY:   MARK MINUTI, ESQ.

22

23

24

25

6

1   LOWENSTEIN SANDLER P.C.

2        Attorney for Lead Plaintiffs in the Securities Class,

3          Teachers' Retirement System of Oklahoma and the

4          Oklahoma Police Pension and Retirement System

5        65 Livingston Avenue

6        Roseland, NJ 07068

7

8   BY:   MICHAEL S. ETKIN, ESQ.

9

10

11   BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

12        Attorneys for Lead Plaintiffs in Securities Class Action

13        1285 Avenue of the Americas

14        New York, NY 10019

15

16   BY:   STEVEN B. SINGER, ESQ.

17

18

19   MORRIS JAMES LLP

20        Attorneys for CitiMortgage, Inc.

21        500 Delaware Avenue

22        Suite 1500

23        Wilmington, DE 19801

24

25   BY:   BRETT D. FALLON, ESQ.

```
 1    FEATHERSTONE PETRIE DESISTO LLP

 2         Attorneys for CitiMortgage, Inc.

 3         600 17th Street

 4         Suite 2400S

 5         Denver, CO 80202

 6

 7    BY:   ANDREW J. PETRIE, ESQ.

 8

 9

10    GREENBERG TRAURIG, LLP

11         Attorneys for Creditors' Committee

12         1007 North Orange Street

13         Suite 1200

14         Wilmington, DE 19801

15

16    BY:   MAX RIFFIN, ESQ.

17

18

19    BLANK ROME LLP

20         Attorneys for Creditors' Committee

21         1201 Market Street

22         Suite 800

23         Wilmington, DE 19801

24

25    BY:   DAVID W. CARICKHOFF, ESQ.
```

8

1   HAHN & HESSEN LLP

2         Attorneys for Creditors' Committee

3         488 Madison Avenue

4         New York, NY 10022

5

6   BY:   EDWARD L. SCHNITZER, ESQ. (TELEPHONICALLY)

7

8

9   ROMERO LAW FIRM

10        Attorney for California Taxing Authorities

11        7743 South Painter Avenue

12        Suite E

13        Whittier, CA 90602

14

15  BY:   MARTHA E. ROMERO, ESQ. (TELEPHONICALLY)

16

17

18  ALSO PRESENT:

19        MICHAEL GOMBERG, Manager, Promotional Products Partners,

20          LLC (TELEPHONICALLY)

21        EILEEN WANERKA, AVP Wholesale Operations Technology,

22          American Home Mortgage (TELEPHONICALLY)

23

24

25

9

1                         P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Please be seated.  Good morning.

4              MS. GREECHER:  Good morning, Your Honor.  Margaret

5       Whiteman Greecher from Young Conaway on behalf of the AHM

6       debtors.  Your Honor, we have a couple of matters going forward

7       today.  However, matters 1 through 11 have either been

8       adjourned or resolved, on the agenda, and we are working off of

9       the amended agenda.

10              THE COURT:  I don't have it.

11              MS. GREECHER:  Do you need an additional copy?

12              THE COURT:  I -- you know what?  Oh, thank you,

13       Rachel.  Okay.  I had it.  It's gone.  Okay, thank you.

14              MS. GREECHER:  Items 1 through 11 are adjourned or

15       resolved.  With respect to matters 12 and 13, Your Honor has

16       entered an order with respect to those.  And therefore, no

17       hearing is required.

18              THE COURT:  Okay.

19              MS. GREECHER:  With respect to the remaining matters,

20       Your Honor, I'll give you an update and see how you wish to

21       proceed.  We have several claims objections that are going

22       forward, one of which there was a request for continuance filed

23       yesterday afternoon.  The debtors are actually opposing that

24       request for a continuance and can take that request either

25       before the remaining claims objections or after.  And then

1   there is the lead plaintiffs' joint motion for settlement and

2   use of D&O proceeds for the securities litigation settlement.

3   That's matter number 25.  I believe we are waiting for counsel

4   who is stuck on a train, so we would request that we take that

5   last.  And then the motion of CitiMortgage with respect to

6   request of production of documents.

7          THE COURT:  Well, let's go through the claim objection

8   matters, then.

9          MS. GREECHER:  Okay.  With that, I'm actually going to

10  turn it over to Mr. Neiburg from our office.

11         THE COURT:  Okay, thank you.  Mr. Neiburg, good

12  morning.

13         MR. NEIBURG:  Good morning, Your Honor.  Michael

14  Neiburg from Young Conaway on behalf of the debtors.  As a

15  preliminary matter, Your Honor, item number 14 on the agenda

16  was the motion of the debtors to file the declaration under

17  seal.  At this time, before moving on to the objections, all of

18  which are covered by the supplement or declaration, may I ask

19  that Your Honor rule on this motion?

20         THE COURT:  Does anyone wish to be heard?  Any

21  objection?  I'll approve the motion.  Do you have an order?

22         MR. NEIBURG:  Yes, I do.  May I approach the bench,

23  Your Honor?

24         THE COURT:  Yes.

25         MR. NEIBURG:  Also, Your Honor, as we're moving

1   forward, I have an unredacted version of the supplemental

2   declaration with all the --

3          THE COURT:  Thank you.  All right, you may proceed.

4          MR. NEIBURG:  Your Honor, item 14(a) of the agenda is

5   the actual redacted supplemental declaration of Ms. Eileen

6   Wanerka in support of several claims objections, and we ask

7   that Your Honor accept the declaration as evidence on the

8   record.

9          THE COURT:  Any objection?  It's admitted without

10  objection.

11  (Redacted Supplemental Declaration of Ms. Eileen Wanerka was

12  hereby admitted into evidence, as of this date.)

13         MR. NEIBURG:  Thank you, Your Honor.  Your Honor, the

14  next item is item number 15 which was the debtors' eleventh

15  omnibus objection to claims.  The debtors had intended on

16  moving forward with this objection, but with communications

17  with the claimant, we have determined that it's best to adjourn

18  it.  And one of the reasons is Ms. Heck, the claimant, had

19  asked for an adjournment with respect to the hearing on the

20  11th due to prior commitments at hearings or -- I'm sorry,

21  meetings in Colorado, so she could not attend.  And also with

22  respect to today's hearing, she also requested that the hearing

23  be adjourned due to, I believe, she just accepted new

24  employment and has some training programs.  Now, in light of

25  her prior commitments, and we attempt to understand that she

1   cannot attend, we have agreed to the adjournment, but we have

2   noted for her that we do need to move forward on the 13th of

3   October at the next hearing in the event that we cannot reach a

4   consensual resolution in the interim.

5         THE COURT:  Okay.

6         MR. NEIBURG:  All right, the next item, Your Honor, is

7   agenda item number 16, which pertains to debtors' thirteenth

8   omnibus objection to claims, and most of the -- the objection

9   is adjourned with respect to most of the claims except the

10  claim of GE Money Bank/WMC Mortgage.

11        THE COURT:  All right.  Is there anyone here on behalf

12  of GE Money Bank?  All right, I'll approve the objection.

13        MR. NEIBURG:  Your Honor, would you prefer an order

14  one at a time or at the end of the objections?

15        THE COURT:  Let's wait.

16        MR. NEIBURG:  Next, Your Honor, is item number 17,

17  which pertains to the debtors' seventeenth -- or, I'm sorry,

18  fifteenth omnibus objection to claims.  Your Honor, initially,

19  the agenda had listed that we're moving forward with respect to

20  three claims.  Just like to let Your Honor know that the

21  objection with respect to the claims of Michael Kalmonson and

22  Judie McGaha have been adjourned upon consensual agreement of

23  the parties.  And also, we will be submitting a cert of counsel

24  because we have actually reached a consensual resolution this

25  morning with Michael Kalmonson.

1          THE COURT:  All right.

2          MR. NEIBURG:  But we do intend to move forward with

3    the objection with respect to the claim of Joseph Dionisio.

4          THE COURT:  Is anyone here on behalf of Mr. Dionisio?

5    The Court hears none.  I'll approve the objection.

6          MR. NEIBURG:  Thank you, Your Honor.  Next is item

7    number 18 on the agenda, which pertains to debtors' nineteenth

8    omnibus objection to claims, and the debtors have adjourned

9    this objection with respect to the remaining claims except for

10   that of Baron O'Brien which we intend to move forward with.

11         THE COURT:  All right, anyone here on behalf of Mr.

12   O'Brien?  I'll approve the objection.

13         MR. NEIBURG:  Thank you, Your Honor.  Next item is

14   number 19, which pertains to debtors' twenty-first omnibus

15   objection to claims.  As the agenda will note, Your Honor, we

16   have partially withdrawn the objection as to several claims but

17   intend to move forward with respect to the objection as to

18   Letort Mortgage Group, Inc.

19         THE COURT:  Anyone here on behalf of Letort Mortgage

20   Group?  All right, hearing none, the Court will sustain the

21   objection.

22         MR. NEIBURG:  Thank you, Your Honor.  Next item is

23   number 20, Your Honor, and this is -- this pertains to the

24   debtors' twenty-fifth omnibus objection to claims, Your Honor,

25   and this was one of the -- this is the objection that Ms.

14

1  Greecher indicated that would require further discussion.  May

2  I ask that we just hold that off until the end of the other

3  objections?

4        THE COURT:  Yes.

5        MR. NEIBURG:  Thank you, Your Honor.

6        THE COURT:  That's Riverside County, right?

7        MR. NEIBURG:  Correct, Your Honor.

8        MS. ROMERO:  Your Honor, this is Ms. Romero and I'm

9  appearing for Riverside County.

10        THE COURT:  All right, we're going to hold off just a

11  bit before we turn to your matter, ma'am.

12        MS. ROMERO:  Thank you, Your Honor.

13        THE COURT:  You're welcome.

14        MR. NEIBURG:  Next item is agenda matter number 21,

15  which pertains to the debtors' thirty-first omnibus objection

16  to claims.  Your Honor, we -- per the amended agenda, we had

17  decided to proceed against that of Adele Elder-Hill and

18  Promotional Products Partners.  Due to some discussions among

19  the party, we have agreed consensually with Ms. Hill to adjourn

20  the objection as to her claim but intend to move forward with

21  respect to the objection as it pertains to Promotional Products

22  Partners, LLC.

23        THE COURT:  All right, is there anyone present on

24  behalf of Promotional Products Partners?  Hearing none, the

25  Court will sustain the objection.

1    MR. NEIBURG:  Thank you, Your Honor.  Next item is

2  matter number 22 which pertains to the thirty-fifth omnibus

3  objection to claims, and the debtors indicate we would like to

4  move forward with the objection as it pertains to the claim of

5  Ms. Jennifer Luke.

6    THE COURT:  Anyone here on behalf of Ms. Luke?

7  Hearing none, the Court will sustain the objection.

8    MR. NEIBURG:  Thank you, Your Honor.  Next matter is

9  item number 23 which pertains to the debtors' thirty-seventh

10  omnibus objection to claims, and we have agreed to adjourn the

11  claim as to Marion County Treasurer but are moving forward with

12  the objection as to the claim of Mr. James Zimmerman.

13    THE COURT:  Anyone here on behalf of Mr. Zimmerman?

14  Hearing none, the Court will sustain the objection.

15    MR. NEIBURG:  Thank you, Your Honor.  The last item

16  that I will be addressing, Your Honor, is item number 24, which

17  pertains to the debtors' forty-first omnibus objection to

18  claims.  And we have agreed consensually with the parties to

19  adjourn the objection as to the claim of L.A. County Treasurer

20  and Tax Collector and that of Franklin County.  And we have

21  actually resolved the objection as it pertains to California

22  Franchise Tax Board, and I have a revised order and blackline

23  reflecting the agree to adjourn, as well as some revised

24  exhibits.

25    THE COURT:  Okay, you may approach.

1        MR. NEIBURG:  Thank you, Your Honor.

2        THE COURT:  All right, thank you.  Okay, I signed the

3    order.  Let's turn back to Riverside.

4        MR. NEIBURG:  Thank you, Your Honor.

5        MS. GREECHER:  Good morning, Your Honor -- good

6    morning, Your Honor.  Margaret Greecher, again, for the

7    debtors.  Your Honor was provided a courtesy copy of the

8    request for a continuance.  Ms. Romero does appear to be on the

9    phone.  We can respond to that immediately, or if you would

10   prefer Ms. Romero to speak first?

11       THE COURT:  Well, let me hear from Ms. Romero.  It's

12   her request.

13       MS. ROMERO:  Your Honor, I was requesting a

14   continuance because of -- for the reasons I set forth in my

15   late response, Your Honor.  I had been negotiating with the

16   debtors on this originally 638,000 dollar claim, which has now

17   been reduced to, I believe, 193,000.  And I explained in detail

18   in my late response how the California Taxing Authorities have

19   been, you know, adversely affected by not only the change,

20   constant change in the title by the debtor in its foreclosed

21   properties but also by, as we all know, the continuing worsened

22   economy, so that at any time, a given time, it was a moving

23   target for the California Taxing Authorities to figure out

24   whether the debtor had foreclosed on certain properties, and

25   whether they were on title.

1       It was also a moving target to determine the time

2   period by which the debtor was entitled to property, and some

3   title was held for a very long time and other titles were held

4   in a shorter time, depending on whether they sold the real

5   property to a third party.

6       And I had been working with somebody who's no longer

7   with the firm, and to try to resolve these various different

8   parcels.  Originally there were ninety-two parcels, and I still

9   want to continue to work with the debtors to provide whatever

10  documents that they further need, whether it be title history

11  or secured tax bills or whatever other documents that they may

12  need.  But nobody has ever requested those documents from me

13  prior -- well, they've never requested those documents from me.

14  And so we've been providing them Excel lists to compare with

15  their client, what title -- what properties are in title of the

16  debtor.

17      And it would be extremely prejudicial to Riverside

18  County to just have a claim of now but reduced 193,000 or

19  almost 194,000 which is secured real property tax revenue that

20  funds many of their essential services like police, fire,

21  schools, and hospitals, for that claim to just be disallowed

22  because we can't reconcile the parcels.  And I am committed to

23  do so.  I have resolved all the other claims of all of the

24  other five taxing authorities with the debtors in prior

25  conversations or prior omnibus objections, Your Honor.  And I

1    would request a short extension to continue to work with the

2    new contact person that I've been assigned to continue to work

3    on reconciling these parcels.

4         And as soon as we can get a handle on what exact

5    documentation they need, although it's an arduous and

6    cumbersome task for the counties to pull all these properties,

7    because they have to, you know, pull several records for each

8    property, we are committed to doing so and we are committed to

9    reconciling the parcels with the debtors.  And it's not a

10   difficult process; it's just a cumbersome one because there are

11   so many parcels.  But I should be able to readily find out from

12   my client what parcels are left that are in title, which have

13   just been recently transferred, and the debtors' counsel should

14   be able to do the same.  We've been doing that over the past

15   several months.  So I don't think it's a difficult process; I

16   think it's a time-consuming and arduous process, and that has

17   been represented by the time in which I've been working with

18   the debtors to resolve this claim.  And so I would renew my

19   request to have a short continuance of time.

20        I apologize for the late response.  I was not

21   really -- I was human and I wasn't really clued in that we were

22   going forward on today's hearing until Ms. Greecher told me,

23   and I didn't receive the supplemental declaration until

24   September 3rd, via e-mail.  And so I would just request, again,

25   a short continuance to continue to work on the claim objection.

19

1   I am confident that we will be able to resolve it as I've

2   resolved the other ones.

3          THE COURT:  Okay, thank you.  Ms. Greecher?

4          MS. GREECHER:  Your Honor, as an initial matter, the

5   debtors don't take lightly the fact that we are not willing to

6   adjourn this claim any further.  We don't generally try to push

7   anyone on a procedural matter, as you can tell by the fact that

8   we have adjourned numerous claims in the past.  However, this

9   matter has been going on since December of 2008 and has failed

10  to resolve itself before then.  We have not received any

11  substantive documentation or additional information from Ms.

12  Romero since May of 2008.  Despite additional contact with her,

13  there's been no movement and no changes.  Despite the fact that

14  she does say that it's a moving target, she provided us with a

15  list in May, I believe it was 18th -- I do have the e-mails.  I

16  don't necessarily think that you want to go through each and

17  every one of them, but I'm happy to do so if need be.  But she

18  provided the list that was attached to our supplemental

19  declaration, listing the remaining amounts that equaled

20  115,000, not 190,000 dollars, as well as relates to only

21  thirty-five remaining parcels, not ninety-two.  Since May of

22  2008, the debtors have been working to provide information to

23  Ms. Romero, and have, in fact, as of June 3rd, provided a

24  response to her list of parcels saying that the debtors do not

25  own these parcels, and therefore, are not responsible for the

20

1    taxes thereunder, pursuant to California law.  Since then,

2    we've provided additional documentation giving information

3    regarding the correct owner of the property as well as the fact

4    that these loans have been sold.  So to the extent that the

5    debtors had a mortgage on the property, they are no longer the

6    mortgagee on the property, as well.  Ms. Romero is correct that

7    she had been working with Mr. Grow.  I had been cc'ed on most

8    of the e-mails, if not all of the e-mails, and she had not

9    responded to the June 22nd e-mail until August 4th, which was

10   when we responded to her and advised if we did not receive any

11   substantive information from her, we would be going forward at

12   today's hearing.

13           Following that, we did -- well, at the same e-mail, we

14   did provide her with a new contact to the extent that she was

15   able to resolve or provide any further information with respect

16   to this claim.  She did not do so, and we followed up again

17   with an August 14th e-mail reminding her of her August 31st

18   deadline to file a written response.  To date, Ms. Romero has

19   never filed a written response with respect to the Riverside

20   claims.  The deadline had passed and we did not hear from Ms.

21   Romero until September 3rd or September 4th, which was late

22   last week when we had already filed our supplemental

23   declaration.  The documents attached to the supplemental

24   declaration are all documents that she's had since June, and

25   quite frankly, we don't argue with the legal basis for the

1    claims.  What we argue is that the debtors are not owners of

2    these properties, and therefore, not the appropriate person to

3    assess tax liability against.  Ms. Romero has not provided any

4    information to substantiate that despite our requests.  So to

5    the extent that she is willing to provide tax bills and other

6    documentation, she's had the opportunity to do so and has

7    failed to.

8             THE COURT:  Ms. Romero, any reply?

9             MS. ROMERO:  Yes, Your Honor.  Although they e-mailed

10   me on August 5th, I mean, I was on vacation, as I stated in my

11   declaration, until August 18th, and nobody has asked me to,

12   other than the Excel sheets that I've prepared, nobody has

13   asked me to provide any supplemental documents.  But we're

14   standing willing to do so.  And I've noticed that they've --

15   despite the miscommunications I've had with debtors' counsel,

16   the person I was referring to, there have been many other

17   taxing authorities that have been adjourned, and I'm not asking

18   for -- this is the first formal request I've asked for the

19   Court, and now that it's been communicated in open court that

20   they want secured tax bills and tax history, I really don't

21   think it's a difficult matter to go through each of the parcels

22   and say -- because the problem is that they may show on their

23   records that the loans have been sold or that the title has

24   been changed, but in our assessment records, we still show them

25   as the debtor.  Now, if there's updated parcel histories and

1    owner title interest -- histories, I should be able to pull

2    that.  But often in many of these bankruptcies, not only this

3    one, the title doesn't change for some time and so we're only

4    pulling titles from who has reported to the assessor.  So

5    again, I don't think it's a difficult task to do so, and again,

6    I would urge the Court to -- even though some time has lapsed,

7    I was not even told that I had a new contact person until

8    August, and I would think that the Court would see the

9    prejudice to the taxing authority.  And I'm not asking for a

10   long time, Your Honor.  I'm just asking for some additional

11   time to work with the new contact in pulling the revised title

12   histories or bills or whatever they want.  And again, I'm just

13   asking and urging the Court to grant me an additional time,

14   despite the --

15            THE COURT:  Okay.

16            MS. ROMERO:  -- miscommunications that we've had with

17   debtors' counsel.

18            THE COURT:  Okay, thank you.  I'm going to continue

19   this matter until October 13th at the omnibus hearing.

20            MS. GREECHER:  Your Honor --

21            THE COURT:  Yes, Ms. Greecher?

22            MS. GREECHER:  The debtors would request that we have

23   an objection deadline set for Ms. Romero, then --

24            THE COURT:  All right.

25            MS. GREECHER:  -- at an earlier time so that to the

23

1    extent she does provide any information that we are able to

2    respond to that additional information in enough time.  I would

3    request, quite frankly, a week or two weeks from now.  She

4    seems to indicate that this is something that should be done

5    and that she has the information for.

6            THE COURT:  All right.  I'm going to continue the

7    matter until October 13th at our omnibus date, which I think is

8    10 a.m.

9            MS. GREECHER:  I believe that's correct.

10           THE COURT:  The matter will go forward at that time,

11   absent consent otherwise.  I will not grant any further

12   requests for continuances again without consent.  Obviously, to

13   the extent the issues are resolved, you can submit an order

14   under certification of counsel.  In the event you're unable to

15   resolve the matters, I would like a response filed by no later

16   than October 1st by Riverside, California.  If you don't file a

17   response by October 1st, I'll sign an order under certificate

18   of no objection on October 2nd.  Although I won't be here, but

19   somebody will.  And that's pretty much it.  So matter's

20   continued until October 13th.  Won't be further continued

21   without consent of the parties.  A response is due by October

22   1st, again, unless otherwise the parties consent, I'll sign any

23   order in the interim on certification of counsel if it's

24   resolved, and if there's no response filed by the deadline,

25   I'll consider an order under CNO.

24

1        MS. GREECHER:  Thank you, Your Honor.

2        MS. ROMERO:  Your Honor, just for clarification

3   purposes, did you say that that time on October 13th, was that

4   your 10 a.m. calendar?

5        THE COURT:  Yes.  Let me double check.

6        MS. ROMERO:  That's much earlier for California time.

7   So I just want to --

8        THE COURT:  Yeah, it's 7 a.m.  Yup, 10 a.m.

9        MS. ROMERO:  Okay, thank you, Your Honor.

10        MS. GREECHER:  Your Honor, the next matter is matter

11   number 25, which is the lead plaintiffs' motion for settlement

12   of the D&O proceeds.  He is here, so I think we will take that,

13   first, and then move to CitiMortgage's motion to compel

14   production documents.

15        THE COURT:  Very good.

16        MR. ETKIN:  Good morning, Your Honor.

17        THE COURT:  Good morning.

18        MR. ETKIN:  Michael Etkin, Lowenstein Sandler on

19   behalf of lead plaintiffs' Teachers' Retirement System of

20   Oklahoma and the Oklahoma Police Pension and Retirement System,

21   the lead plaintiffs' in the securities class action.  With me

22   in the courtroom today is Steven Singer of the Bernstein

23   Litowitz firm, lead counsel to the class.  This is the joint

24   motion, Your Honor, of the lead plaintiffs as well as the

25   settling defendants reflected in the stipulation for the

1  authorization of this Court to the extent necessary to utilize

2  the proceeds of the D&O policy to fund the settlement that has

3  been preliminarily approved by the district court.  The

4  approval by this Court, with respect to the policy, proceeds,

5  is a condition to the settlement documents, and the motion was

6  filed to satisfy that condition.  Since there have been no

7  objections, Your Honor, unless the Court wants to hear any

8  substance, I can just move it right along.

9          THE COURT:  I've reviewed the motion; I don't need any

10 further comment.  Does anyone wish to be heard?

11         MR. ETKIN:  Just --

12         THE COURT:  Keep going.  I just --

13         MR. ETKIN:  I'm sorry, Your Honor.  Before that, there

14 has been one pleading filed.  It was a reservation of rights --

15         THE COURT:  Right.

16         MR. ETKIN:  -- by the debtor and the committee.  So

17 long as they're reserving rights with respect to future

18 matters, we certainly don't care.  It's not going to be a

19 backdoor to appeal this Court's order or to take any issue with

20 this Court's order, assuming that the Court is satisfied and

21 enters that order.  So we have -- with that caveat, we have no

22 issue with the reservation of rights.

23         THE COURT:  All right, let me hear from the debtor and

24 the committee.  Ms. Greecher?

25         MS. GREECHER:  Margaret Whiteman for the debtors,

1   again.  Your Honor, that's correct.  We did file a reservation

2   of rights.  It is basically just that we do not oppose the

3   relief requested, but would request that this Court not provide

4   any legal precedent with respect to whether or not the

5   insurance proceeds are property of the state, because we feel

6   it's unnecessary at this point in time.  Mr. Schnitzer is on

7   the phone for the committee, if he has anything else to add.

8   But the debtors do not oppose the proposed order and would just

9   put on the record that they do reserve their rights --

10          THE COURT:  Okay.

11          MS. GREECHER:  -- with respect to any legal argument.

12          THE COURT:  Thank you.  Mr. Schnitzer?

13          MR. SCHNITZER:  Your Honor, Edward Schnitzer, Hahn &

14  Hess on behalf of the committee.  We share in Ms. Greecher's

15  remark and agree completely with the debtors' position.

16          THE COURT:  Okay.  Thank you.  Anyone else.  All

17  right, you have an order?

18          MR. ETKIN:  Your Honor, I have a copy of the order

19  submitted with the motion.  There was an order submitted with

20  the motion, but if you want a clean copy that maybe --

21          THE COURT:  Well --

22          MR. ETKIN:  -- has some punch holes in it, I can hand

23  it up.

24          THE COURT:  -- yeah, let me have your copy.

25  Otherwise, I've got to go through three different notebooks to

1    find it.  I'll approve the motion.

2              MR. ETKIN:  Thank you, Your Honor.  May I approach?

3              THE COURT:  Yes.  Thanks very much.  Okay.

4              MR. ETKIN:  Thank you, Your Honor.

5              THE COURT:  You're welcome.

6              MS. GREECHER:  Your Honor, the last item, today, is

7    CitiMortgage's motion with respect to production of documents.

8    Before we turn to that, it did appear that we didn't hand up

9    the orders --

10             THE COURT:  I was going to ask for the orders.

11             MS. GREECHER:  -- with respect to the claim

12   objections.

13             THE COURT:  Yup.

14             MS. GREECHER:  May I approach?

15             THE COURT:  Yes.  Let's not forget that.  This is why

16   I usually don't wait until the end, because I forget.  Thank

17   you.  Okay, we'll turn to the motion to compel.

18        (Pause)

19             THE COURT:  Mr. Fallon, good morning.

20             MR. FALLON:  Good morning, Your Honor.  Brad Fallon

21   for CitiMortgage, Inc.  I have with me, this morning, Andrew

22   Petrie of Featherstone Petrie & DeSisto.  We have previously

23   moved his admission pro hac vice, and Your Honor has signed

24   that order.  He will be presenting the argument this morning

25   for CitiMortgage.

1         THE COURT:  All right, very good.  Thank you.  Mr. --

2    is it Petrie or Petric?

3         MR. PETRIE:  It's Petrie, Your Honor.

4         THE COURT:  Petrie.

5         MR. PETRIE:  With an E, thank you.

6         THE COURT:  You need to work on -- Mr. Fallon needs to

7    work on his writing.  It's all right.

8         MR. PETRIE:  I probably could as well.

9         THE COURT:  Mr. Petrie, good morning.

10        MR. PETRIE:  Thank you, Your Honor.  I'm obviously not

11   going to repeat what's in the papers.  We are here -- this is a

12   dispute over interim period cure claims, so the period we're

13   looking at is from mid-November of '07 through April 11th of

14   '08.  We've gone, in the papers, through all the procedural

15   history of how the objections got filed, focusing, then, on the

16   requests for production and discovery.  There's some nuances in

17   the history of this that I wanted to address very quickly with

18   Your Honor, if you'll forgive me for a bit of a digression.

19        THE COURT:  That's okay.

20        MR. PETRIE:  This matter was originally set to go on

21   May 8th, and it was on April 27th that Mr. Minuti sent a letter

22   to us asking us, informally, to produce certain information to

23   him.  From his papers, you would think that the next thing that

24   happened was he got blindsided by a request for production, but

25   that's not what happened.  What happened was on April 29th, I

1    responded to him, and I said certainly we'd agree to consider

2    that type of informal production with three, what we thought

3    were reasonable response points or caveats, so to speak.  First

4    was let's have a reciprocal production.  The second was let's

5    not require the production of things that the parties already

6    have, for example, the assumed contracts, and the third was

7    let's agree to a more reasonable schedule, because he had asked

8    for the information by May 4, anticipating a May 8th hearing.

9    In the interim, the hearing had been moved from May 8th to June

10   8th, and so we had the luxury, so to speak, of some time.  I

11   never received a response to that letter.  And so on May --

12   excuse me, the hearing had moved to June 5th, not to June 8th.

13   So running out of runway, so to speak, with the June 5th

14   hearing approaching, we served on May 2nd our request for

15   production of documents seeking three categories of documents.

16   And obviously, that would have led to the production of those

17   materials at the then-scheduled June 5th hearing.  The hearing

18   has since now rolled back to the October 13 omnibus hearing.

19   So while the dates have shifted, the motion has not been

20   mooted.

21          The two discovery requests at issue were their request

22   for production of documents, and they seek -- when you cut

23   through all the lawyer stuff -- they seek two categories of

24   information.  The first is -- and by the way, I should say that

25   the underlying default problem here is the missing documents,

1    or trailing documents, as we've discussed them in other

2    contexts in front of Your Honor.  And with respect to these

3    missing documents, CitiMortgage's position, since relevance has

4    been challenged, is that that's a services obligation, is to go

5    out and help obtain the missing documents.  That's part of a

6    servicing function, recognized throughout the industry,

7    shouldn't be a big fuss with it.  Clearly, there's a problem

8    with the missing documents that predates this particular

9    servicer's arrival on the scene, such that on -- pick a date --

10   November 17th, the day after the initial sale closed, we

11   couldn't turn around and say ah-hah, gotcha, there's all these

12   missing documents, there's a default, et cetera.  But with the

13   passage of time, there is an obligation for the servicer to

14   step up and help us retrieve those documents, locate those

15   documents in its files, et cetera.  And that's the nub of our

16   gripe.

17          To that end, the two discovery requests at issue asked

18   what is now AHM Servicing, although it's not the debtor beast,

19   we asked them to provide us two categories.  The first was what

20   of our documents did you provide to us during that interim

21   period, which is both, we think, an admission of the fact that

22   that is the servicer's obligation, and obviously, tells us that

23   they are defaults that are recognized and being cured.  And the

24   second was anticipating that there might be a dispute over what

25   the service obligation was; tell us why you gave us those

1    documents.  And in response to those requests, we received a

2    raft of objections and we have received no documents.  And

3    that's the basis for the motion to compel, setting aside what

4    we already put in the papers.

5            THE COURT:  Okay, thank you.

6            MR. PETRIE:  Thank you.

7            THE COURT:  Mr. Minuti?

8            MR. MINUTI:  Good afternoon, Your Honor.  Mark Minuti

9    from Saul Ewing.  I'm here today for American Home Mortgage

10   Servicing, Incorporated.  The purchaser, here, Your Honor,

11   obviously, we have a different take on the events, here, with

12   respect to this motion to compel.  Your Honor, my client,

13   obviously, was the purchaser of the debtors' mortgage servicing

14   business.  We paid 500 million dollars cash.

15           THE COURT:  Um-hum.

16           MR. MINUTI:  It's important to remember, Your Honor,

17   that ten million dollars of that purchase price was set aside

18   to take care of pre-initial closing defaults.  And as Your

19   Honor will remember, there was a two-step closing, here; you

20   had an initial that occurred on November 16, 2007 and a final

21   closing that occurred on August -- excuse me, April 11, 2008.

22   So ten million dollars of the purchase price was set aside to

23   take care of any defaults that existed prior to the initial

24   closing.  Okay, so if there were trailing document problems --

25   which counsel admitted today, these document problems predate

32

1    the initial closing -- their remedy, Your Honor, was to assert

2    a cure, and that cure would attach to that ten million dollars'

3    worth of pre-initial closing cure escrow.  That's what it's

4    there for.

5          Now, what would happen, Your Honor, if -- and Your

6    Honor will recall that during this interim period, the way it

7    worked was the debtor actually continued to operate the

8    business, but they did it for my client's benefit.  So the

9    question was what happens if a default occurs in that interim

10   period under any of these documents?  Well, the order answers

11   that, Your Honor.  And the order at paragraph 36 says that if

12   there's a default, and it's based on an act or omission during

13   that interim period, then I have an obligation to reimburse the

14   debtor to the extent that anybody suffers a cure claim as a

15   result of that default.  But the key, Your Honor, is it's got

16   to be a default based on an act or omission in the interim

17   period.

18         Now, what happened here, Your Honor?  What happened

19   here, Your Honor, is that the debtor sent out a notice to all

20   the parties to assume contracts and said if you think you've

21   got a purchaser's cure amount -- and that's what it's defined

22   as under the sale order -- if you think you've got a

23   purchaser's cure amount, in other words, a cure claim related

24   to a default during the interim period, you have to file a

25   response because, in CitiMortgage's case, the notice said we

1    think your cure claim is zero.

2         And CitiMortgage filed a response, Your Honor, and in

3    that response, they asserted a 112,000 dollars purchaser cure

4    claim.  Now, interestingly, Your Honor, nowhere in their

5    response, do they say or allege that there was any default

6    during that interim period, which is the only basis upon which

7    the purchaser's cure claim can arise.  So what we did, Your

8    Honor, we were heading into a hearing in early May.  I wrote --

9    and this is, by the way, this is when I got involved in the

10   case, and you can imagine, it's sort of unusual.  You get

11   involved in a case and you talk to your client and your client

12   says we have no idea what they're talking about.  We're not

13   aware of any default and we have no idea how they could have

14   run up legal bills of 112,000 based on a default we're not even

15   aware of.  So what did I do, Your Honor?

16        I wrote to the other side and I said show me what your

17   default is and show me your legal bills and show me how they

18   relate to that default, and we'll try to work through it, and

19   hopefully we can resolve it.  That was in April, Your Honor, of

20   2008.

21        Now, we had a bunch of back and forth, Your Honor.  I

22   mean, I'm not going to get into who shot John, who was wrong,

23   who was right, but the bottom line is we had some back and

24   forth.  The best I could get out of them during the back and

25   forth is they said there were document delivery defaults.  They

34

1    wouldn't tell me which ones, they wouldn't tell me how it arose

2    during this interim period.  They said it was document delivery

3    defaults.  So finally, Your Honor, what we did is we served

4    discovery on CitiMortgage, and we asked them the two simple

5    questions that they were going to have to answer before the

6    Court if we went forward in May, which was what were the

7    defaults and how does this 112,000 dollars' worth of claim

8    relate to those defaults?

9         And for the first time, Your Honor, in early

10   September, when they had to respond to the formal discovery,

11   that's when we got our answer.  And their answer came in the

12   form of two documents, Your Honor, that I think are very

13   relevant to today's hearing.  Those documents are attached to

14   our response.  I don't know if Your Honor has the response in

15   front of you.  But those documents are attached as Exhibit A

16   and Exhibit B.

17             THE COURT:  Okay.

18             MR. MINUTI:  Now, let's look at Exhibit A first, Your

19   Honor, and I appreciate this is difficult to read, but I only

20   need to focus Your Honor on one thing.  If Your Honor looks at

21   Exhibit A, the sixth column from the right -- okay?  I don't

22   know if Your Honor's with me?

23             THE COURT:  Note date?

24             MR. MINUTI:  The note date.  What that, Your Honor,

25   is, this chart is allegedly all of the document delivery

defaults that make up this purchaser's cure claim or give rise to this purchaser's cure amount. Now, let's pause for a minute, Your Honor, and think about this. This interim period was only five months. When you look at this chart -- I mean, there are hundreds, if not thousands of alleged defaults. So the notion alone that there would have been hundreds or thousands of defaults during this interim period, Your Honor, makes no sense. It makes no sense.

But when you look at the note date, Your Honor, it becomes crystal clear, and I think counsel, more or less, admitted it at today's hearing. Some of the notes, some of the closings these alleged document delivery defaults relate to go back to 2003, the latest of which is July of 2007. So, Your Honor, what that tells me is I can't tell from this document whether the debtor ever defaulted in providing a document it was required to provide to CitiMortgage, so I can't tell whether this list is accurate or not. But what I can tell, Your Honor, is if there was a document delivery default on any of these specific loans, it occurred long before my client was on the picture, it cannot, by definition, be an interim period default. And if it is a default, Your Honor, we already have ten million dollars set aside to cure that default or take care of those cures, and that's not an issue with the purchaser, Your Honor. That's an issue between the debtor and CitiMortgage, and perhaps that cure escrow.

1       But, Your Honor, let's go beyond that.  And I should

2   put out, by the way, Your Honor, this is not -- this is coming,

3   from our perspective, out of the blue because, you know, there

4   were no notices of default, there were no threatening letters.

5   As far as we were concerned, during the interim period, it was

6   business as usual.

7       THE COURT:  Well, listen, I've been hearing about

8   Mr. -- I've been hearing from Mr. Fallon about these delivery

9   problems for two and a half years.  And you were not in the

10  case, but your client has been in the case for two and a half

11  years.  I mean, I heard about it in October '07 over the sale

12  hearing.

13      MR. MINUTI:  Your Honor, my point exactly.  If there

14  were delivery defaults --

15      THE COURT:  Well, you said it came out of the blue.

16  That's what I was responding to.

17      MR. MINUTI:  No, no, came out of the blue that there's

18  a document delivery default in the interim period that would

19  give rise to a purchaser cure claim.  I think Your Honor made

20  my point.  If there's a document delivery default, it predated

21  my involvement in the case.  Now, they may have a cure claim

22  for that; they may have recourse for that against the debtor,

23  but it's not a purchaser's cure amount under the sale order,

24  which is the only thing we're talking about, Your Honor.

25  Purchaser's cure amount is a default based on an act or

1    omission in the interim period.  That's not what we're talking

2    about here, Your Honor.

3            But let's ignore that for a minute, Your Honor, and

4    let's even accept on face value that there was some default in

5    that interim period that would give rise to a cure claim.

6    Let's forget about the fact that no motion was filed against my

7    client for documents, none of that.  Let's accept that, Your

8    Honor.  The other piece of evidence that's critical here, Your

9    Honor, is the second document we've attached as Exhibit B.

10    I've given Your Honor, now, all of the legal invoices that make

11    up their purchaser's cure amount, and they're invoices for Mr.

12    Fallon's firm, they're invoices for Mr. Petrie's firm.  Your

13    Honor, I'm not going to ask Your Honor to go line by line, but

14    if Your Honor looks at those invoices, what you'll see is those

15    invoices have nothing to do with alleged document delivery

16    defaults during the interim period.  Those invoices,

17    essentially, as best I can tell, are all of the legal fees that

18    CitiMortgage incurred during that interim period to participate

19    in the debtors' case.  And that were things like monitoring the

20    bankruptcy case, opposing the debtors' motion to destroy

21    documents -- had nothing to do with my client, had nothing to

22    do with defaults in the interim period.  They filed a motion,

23    Your Honor, in the case, to lift the automatic stay and obtain

24    documents from the debtor related to mortgages that they

25    purchased that had nothing to do with the servicing business.

1    Again, cannot possibly be a purchaser's cure amount.  Okay?

2    And certainly, you can't charge my client for the fees incurred

3    in preparing and presenting that motion.

4         So, Your Honor, it sort of brings us back to where we

5    are today.  Where are we?  We've got an alleged purchaser's

6    cure amount, and that's all I'm interested in, that's all I

7    care about, because that's what my client's on the hook for.

8    We have an alleged purchaser's cure amount of 112,000 dollars

9    where there's been no allegation of a default during the

10   interim period.  Now, we have a spreadsheet, and counsel's

11   remarks today clearly show that if there was a default, it long

12   predated my client's involvement in this case, so by

13   definition, they can't have a purchaser's cure amount.  And

14   even if they had a default, Your Honor, we now have legal

15   invoices that have nothing to do with the default.  And their

16   documents, Your Honor, and the case law we cited, and frankly,

17   common sense make clear, if you have a default and you're

18   entitle to fees because of that default, the fees have to

19   relate to the default.  Just because there was a default,

20   doesn't mean you can tag me for fees totally unrelated to that

21   default.  That's not what their documents say, that's not what

22   the case law says, and that's not common sense.

23        So for all those reasons, Your Honor, we're here

24   wrongly.  There's no purchaser's cure claim.  And again, look,

25   if they're missing documents, I've got no problem with the fact

39

1    that they're upset they don't have documents.  I appreciate

2    that they want to get those documents.  We're prepared to

3    cooperate, Your Honor.  If we -- if they arrive at our place of

4    business, we're happy to turn them over.  We have been

5    cooperating to do that, if they arrive, Your Honor.  But

6    there's a difference between whether they have document

7    delivery problems, they have claims against the debtor, and

8    whether they have claims against me.

9           So that brings us back to the discovery, Your Honor.

10   What they've asked for is all the documents related to my

11   performance during the interim period under these contracts.

12   And what if I gave them every piece of paper they wanted, Your

13   Honor, what if I spent the time and the expense to go and do

14   all that and give it to them?  It's totally irrelevant, Your

15   Honor, because the fees in which they seek to tag my client

16   have absolutely nothing to do with the default during that

17   interim period.  So that's why I said to them, Your Honor --

18   or, frankly, before we got their discovery responses, I said to

19   them, look, I'm not going to respond to your discovery until

20   you tell me what the default is and show me how the fees

21   relate.  Because my suspicion, Your Honor, was they either

22   didn't have anything or it would be so small that we would

23   resolve it.  Okay?  So my initial position was I'm not going to

24   respond to that discovery because it's going to need a lot of

25   time and effort, and you haven't even told me why I should go

40

1  look for it.  Now, after they file the motion to compel, after

2  I get the discovery, I see, Your Honor, that our initial

3  position was correct.  There's really no purchaser's cure

4  claim, here.  So I appreciate, Your Honor, we're getting -- by

5  my response, we're really arguing the motions -- the merits of

6  their position, but Your Honor, based on their own documents,

7  it is so clear that my client is not on the hook, that we'd

8  simply like to be out of this and we don't want to have to

9  spend the time and effort, Your Honor, responding to this

10  discovery.  It just makes no sense because again, if I gave

11  them everything they wanted, Your Honor, it still wouldn't

12  matter because the fees in which they claim make up their

13  purchaser's cure amount don't have anything to do with us.

14        Now, the only thing I'll say in closing, Your Honor,

15  is if their position is that if they can establish a default

16  during the interim period, that their fees and costs don't have

17  to relate to that, they're entitled to those anyway, then I

18  would say let's argue that point, Your Honor, before we have to

19  spend time on the discovery.  Because it's only if I lose that

20  point -- and I don't think I'm going to lose -- it's only if I

21  lose that point that the discovery at all becomes relevant or

22  could possibly lead to the discovery of admissible evidence.

23        So, Your Honor, I would ask that you deny the motion

24  and enter an appropriate order saying they have no purchaser

25  cure amount because by their own documents, they don't.

41

1          THE COURT:  All right.

2          MR. MINUTI:  Thank you, Your Honor.

3          THE COURT:  Mr. Jackson?

4          MR. JACKSON:  Thank you, Your Honor.  Patrick Jackson

5    from Young Conaway on behalf of the debtors.  I rise just to

6    offer the debtors' position on this.  Mr. Minuti, in his

7    papers, had mentioned that, you know, had made a relevance

8    objection.  All of this is irrelevant because anything, based

9    on the papers, based on the evidence that was submitted by

10   CitiMortgage, anything occurred while on the debtors' watch.

11   We agree with that conceptually.  So we would agree that, you

12   know, that falls into the debtors' bucket.

13          But we also have another interest in the outcome of

14   this motion in the sense that, with respect to the debtors'

15   bucket, we have a similar issue.  We have -- CitiMortgage filed

16   some cure claims that allegedly do relate to the period of time

17   that would be covered by the cure reserve, but similarly, what

18   was alleged in the papers was a default of some kind without

19   any specificity.  It wasn't even identified as a document

20   delivery default.  Based on CitiMortgage's papers, it said

21   there was a default, some default prepetition of the debtors'

22   obligation to provide information concerning their

23   deteriorating financial conditions.  So without getting into

24   the merits of all that, the debtors' do anticipate filing an

25   objection, and it would be similar in tone to the objection

42

1    filed by the purchaser, and that would be, you need a default

2    in order to get a claim for your attorney's fees.  The only

3    default you've alleged in the case of the debtor cure claim was

4    something that we would take the position is not an enforceable

5    default as a matter of law; it's an ipso facto provision.  So

6    we have a concern, seeing how this is kind of played out, that

7    we'll have a similar situation arise.  When we do get around to

8    filing the objection, we're going to probably get a discovery

9    asking us to provide evidence of all our performance under the

10   contracts prior to the initial closing, and then it presents a

11   similar problem for us in that absent a specif -- absent some

12   claim or default that was alleged in the papers, it is somewhat

13   of a fishing expedition and becomes very expensive for us.

14         So picking up on that line of reasoning in Mr.

15   Minuti's response, we would kind of second that argument in the

16   sense that if we were to -- if the purchaser were to be

17   compelled to produce these documents in response to this motion

18   to compel, I assume the debtors would be back here again on a

19   similar motion to compel, and it's going to be a very costly

20   proposition for the debtors, and actually, it's probably going

21   to implicate the purchaser because they would have most of the

22   documentation that would be requested of the debtors.  So, I

23   guess that's the long way of saying we support the purchaser's

24   position here, and if there's any questions Your Honor has that

25   would be of any assistance in resolving this, here I am.  So --

1          THE COURT:  Thank you.

2          MR. JACKSON:  -- thank you.

3          THE COURT:  Mr. Petrie?

4          MR. PETRIE:  I know Your Honor knows better than

5    anyone else in this room that the procedure we're following are

6    kind of cut from whole cloth.  And so for people to know come

7    in and fuss with us about particularity in our pleadings when

8    we did exactly what Your Honor ordered us to do.  And we filed

9    three consecutive claims; we had ones before the initial

10   closing, there was another one that was a little tiny period,

11   and then we had this one.  And we did just exactly what your

12   order said, and your order said if I need further procedures,

13   I'll develop further procedures.

14          So what we're talking about here, now, though, is not

15   the merits of the dispute.  It's not some hypothetical future

16   dispute with the debtors.  It is our dispute over the discovery

17   request that we served on these folks, not on the merits of our

18   claim.  I understand demonstrating the relevance of what our

19   discovery requests are seeking, Your Honor, and I think if we

20   boil down to what that nub is, essentially, AHM Servicing is

21   now disclaiming under the contracts that assumed any obligation

22   for a particular component of the servicing function.  And that

23   particular component that they're now disclaiming any

24   obligation for is the obligation to assist us in making sure

25   that the files are complete.  Just like Fannie Mae's regs

1   require, like the contracts require, and is a standard industry

2   practice.  And we have simply asked them if you were in that

3   interim period, because we think if you're finding documents

4   for us during that interim period, that is an admission that

5   you have that responsibility that we're entitled to have that

6   information in advance of the dispute that you've now heard

7   fairly well outlined by the particular party at issue for

8   October 13 and then a hypothetical future objection with future

9   discovery, future hearing, none of which exists just yet.  But

10  that's the basis for our two discovery requests, is tell us

11  what you did during the interim period, just with respect to

12  our contracts, and what you -- tell us why?  Or, I shouldn't

13  say tell us; it's more accurately, give us the documents.

14           THE COURT:  Okay.  I agree.  I think the nub of the

15  objection comes down to a complaint that discovery is

16  expensive.  And it is.  But it's the right of the claimant who

17  has asserted a claim, or more specifically, has asserted an

18  objection to the proposed cure amount, and has set forth, at

19  least in court, a theory of its case which certainly survives

20  Rule 11 or survives plausibility that may be developed.  And

21  discovery is available to maybe lead to relevant evidence,

22  admissible relevant evidence in connection with that theory.

23  In effect, it's the ongoing breach of a contract theory, and

24  Mr. Minuti subsequently focuses on the fact that the breach was

25  occurring prepetition, and thus any claim must be prepetition,

45

1    and by that, I'm talking about the demarcation between debtor

2    and purchaser liability.  So since the breach occurred before

3    that demarcation, then it must be a debtor obligation, and the

4    response is well, yeah, it occurred, but it continued to occur.

5    So it could be both.

6         I don't think I can resolve the substance of that

7    argument today.  I know I can't resolve the substance of that

8    argument today.  And the parties are entitled to -- both

9    parties are entitled to proceed with discovery to develop their

10   positions in connection with that -- excuse me -- issue.  Now,

11   if it looks like it's going to be a million documents and

12   700,000 dollars to review them, that's when you come in to me

13   with a more particularized motion for protective order that

14   deals with specifics about what would be involved, et cetera.

15   I haven't heard anything today.  Of course, this is without

16   reservation -- or, excuse me -- without impact on anyone's

17   rights to ask or oppose for that relief.

18        I'm not going to bifurcate the matter on the damages

19   versus theory of liability.  I think they can be developed hand

20   in hand.  And again, I'm not in a position, today, to make

21   determination as to whether the scope of the attorney's fees

22   are the only damages asserted, and if so, how much they have to

23   be related to the actual alleged breaches.

24        So I'm going to grant the motion to compel, and Mr.

25   Jackson, I would probably grant the forthcoming motion to

1   compel if the debtors refuse to response.  There's not a lot I

2   can do about it in that claim objections cost money.  And

3   hopefully, they get resolved, and I have nothing but the utmost

4   respect for the parties here, and I understand their position

5   and the attorneys, but I am going to grant the motion to

6   compel.  I ask you to submit an order under certification of

7   counsel.

8           MR. PETRIE:  I will, Your Honor, thank you.

9           THE COURT:  All right.  Ms. Greecher, we need to

10  backtrack.  We have a gentleman on the phone for Promotional

11  Products Partners --

12          MR. GOMBERG:  Yes, sir.

13          THE COURT:  -- who has just joined us.

14          MS. GREECHER:  I think I'll turn that over to Mr.

15  Neiburg, then.

16          THE COURT:  Yes.  Sir, can you identify yourself for

17  the record?

18          MR. GOMBERG:  My name is Michael Gomberg.  I'm from

19  Promotional Products Partners, and I'm a manager and from the

20  Windy City.

21          THE COURT:  All right.  Go ahead, sir -- or, Mr.

22  Neiburg.  Start from scratch on this one.

23          MR. NEIBURG:  Okay.  Your Honor, I'm sorry.  This one,

24  this pertains to agenda item number 21, the debtors' thirty-

25  first omnibus objection to claims.  We moved forward with the

47

1  objection of Promotional Products Partners, LLC, proof of claim

2  number 10511.  The grounds for the objection as to this claim

3  was the fact that Promotional Products also filed an identical

4  claim, proof of claim number 202, and the only difference was

5  the claim that we moved forward here on the 31st was against

6  American Home Mortgage Holdings, where as claim number 202 was

7  against American Home Mortgage Corp.  And the basis for our

8  objection to this claim, 10511, is that American Home Mortgage

9  Holdings is merely a holding entity and would not have needed

10  marketing products that were provided by Promotional Products.

11  Rather, claim 202 was against American Home Corp, and that was

12  the debtor entity that actually did order such products.

13          THE COURT:  Right.

14          MR. NEIBURG:  And therefore, because this claim was

15  asserted against the wrong debtor and was duplicative, we move

16  to expunge this claim.

17          THE COURT:  And the other claim to survive?

18          MR. NEIBURG:  Correct.

19          THE COURT:  All right, and sir, what was the nature of

20  the -- what's the nature of what you do or did for the debtor,

21  your business?

22          MR. GOMBERG:  Our business is manufacturing logoed

23  merchandise as well as gifts, as well as items that are used

24  for employee retention and other items.

25          THE COURT:  Okay.

1          MR. GOMBERG:  The argument that the claim 202 was

2     asserted against American Home Mortgage Corporation is

3     incorrect.  There was no claimant asserted.  So what they had

4     done was they asserted it across the board at all claimants.

5     So there were nine claimants asserted; however, they expunged

6     all of them except American Home Mortgage Corporation, and at

7     that time I asserted it was against Holdings because, and I can

8     make my argument, we had done business with many, if not all of

9     the companies under American Home Mortgage Holdings, including

10    Servicing, including the Treasury Group, including American

11    Brokers, American Home, basically, the title company, all of

12    the different elements of American Mortgage -- American Home --

13    or, AHM Holdings.  So we asserted that we had done, you know,

14    we assert against them.

15         Additionally, AHM Holdings also does use these

16    materials.  They claim that they do not use them, but they do.

17    If you look at someone's desk and it has a mousepad with a logo

18    on it, it is a product we provide.  If it is a shirt that, you

19    know, Michael Strauss would wear, we provide that.  If it was a

20    pen that they were using to, you know, whatever, it said

21    American Home Mortgage or AHM Holdings on it, that was

22    something we did.  We don't have control -- when we did our

23    billing, we don't have control of how they make a journal

24    entry, so it's very well possible that they reclassed,

25    obviously, expenses, but we don't have access to that.

1      THE COURT:  Who was your primary contact?

2      MR. GOMBERG:  We had, probably, about two to three

3  hundred.

4      THE COURT:  Oh, okay.

5      MR. GOMBERG:  So I can't say we had one.

6      THE COURT:  All across the company.

7      MR. GOMBERG:  All across the company from servicing to

8  bought credit cards from us for gifts for their employees.

9  They would buy a fifty dollar MasterCard gift card and give it

10 to an employee as a SPIF for doing a great job.

11     THE COURT:  Okay.  Mr. Neiburg?

12     MR. NEIBURG:  One second, Your Honor.

13     THE COURT:  Yes.

14     MR. NEIBURG:  Your Honor, I guess, the debtor

15 maintains a position that even though American Home Mortgage

16 Holdings may have benefited, the appropriate relationship

17 between Promotional Products and the debtor entities was

18 through American Home Mortgage Corp, and I believe in our

19 objection, we attached a cancelled check from American Home

20 Mortgage Corp to Promotional Products, and it has American Home

21 Mortgage Corp right on the check.

22     THE COURT:  Did AHM Holdings use its own checks?

23     MR. NEIBURG:  Your Honor, Ms. Eileen Wanerka is on the

24 phone, but we believe that Holdings was merely a holding

25 company that would likely not have issued such checks.  But she

1    may be able to confirm that or not.

2              THE COURT:  Ms. Wanerka?

3              MR. NEIBURG:  She may --

4              THE COURT:  She may have hung up when she thought her

5    matter was over.

6              THE OPERATOR:  Your Honor, this is the operator.  Ms.

7    Wanerka has disconnected.

8              MR. NEIBURG:  Is that her?

9              THE COURT:  I'm sorry?

10             MS. GREECHER:  That's the operator --

11             THE COURT:  Oh.

12             MR. NEIBURG:  Oh.

13             MS. GREECHER:  -- saying that she did disconnect.

14             THE COURT:  She did disconnect.

15             MR. NEIBURG:  Well, it --

16             THE COURT:  Well -- go ahead.

17             MR. NEIBURG:  -- it seems to me, Your Honor, that this

18   is all semantics, because I think the debtors have agreed that

19   the surviving claim which is for the exact same amount of this

20   10511 is surviving, and I believe Ms. Wanerka indicated to me

21   that we will allow that claim.

22             THE COURT:  yeah, but the issue is payout, right?

23             MR. NEIBURG:  Yeah.

24             MR. GOMBERG:  Correct.

25             THE COURT:  Well, you want to talk about Holdings

1    versus Corp on unsecured claims?  My memory is Holdings is a

2    much better recovery.

3           MS. GREECHER:  I think you're correct.  I'm looking at

4    Mr. Jackson, but I believe Holdings is five percent.

5           THE COURT:  Versus two or less than two, actually.

6           MR. GOMBERG:  One.

7           MS. GREECHER:  Yeah, less --

8           MR. GOMBERG:  One percent.

9           THE COURT:  Yeah.

10          MS. GREECHER:  I think it's 1.19, if I were --

11          THE COURT:  All right, I'm going to overrule the

12    objection.  I find that the debtor has not provided sufficient

13    evidence to rebut the prima facie validity of the claim in the

14    asserted amount, and that the claim will be allowed in full

15    against the Holdings company.  And obviously, the duplicative

16    claim, now, against Corp will be expunged.

17          MR. NEIBURG:  Thank you.

18          MR. GOMBERG:  Thank you, Your Honor.

19          THE COURT:  You're welcome.  Please submit an order.

20          MR. NEIBURG:  Your Honor, I believe I'll have to

21    resubmit an order.  So Your Honor --

22          MS. GREECHER:  Your Honor --

23          MR. NEIBURG:  Sorry.  Your Honor, you're saying that

24    claim 202 will now be expunged, the one that was asserted

25    against Corp?

52

1          THE COURT:  Correct.

2          MR. NEIBURG:  Okay.

3          THE COURT:  Claim 15 -- excuse me, 10511 against

4    Holdings is sustained.  The claim is sustained because the

5    debtors have not rebutted its prima facie validity.  But

6    obviously, 202, and here I'm going beyond anything in front of

7    me, but obviously, 202, then, would be duplicative, and it's

8    against Corp, so I'm saying that should be expunged, and I

9    expect that Promotional Products has no problem with that.

10         MR. GOMBERG:  I do not.  What I would -- if an

11   argument is going to be refiled, I would ask, if it's

12   possible -- I don't know if it is or not -- I would like to see

13   journal entries, though, for the payments so we can see exactly

14   were the expenses were allocated or assessed because that

15   would --

16         THE COURT:  I'd be shocked if anybody was going to

17   spend any more money on this.

18         MR. GOMBERG:  I agree.  That's why I thought -- but he

19   just said he was going to refile.  So I --

20         MS. GREECHER:  No --

21         THE COURT:  That was a misunderstanding.

22         MR. NEIBURG:  We were just going to refile an order

23   reflecting the judge's ruling.

24         MR. GOMBERG:  Oh, thank you.  Thank you very much.  I

25   misunderstood.

53

1          THE COURT:  Which order was it?  I'm looking now to

2     make sure I pull out the right one.

3          MR. NEIBURG:  That would have been the thirty-first

4     omnibus objection, Your Honor.  On the -- may I approach, Your

5     Honor?

6          THE COURT:  Got it.  Yup.  Anything further?

7          MR. GOMBERG:  Not from me, Your Honor.

8          THE COURT:  All right, hearing adjourned.

9          MR. NEIBURG:  Thank you, Your Honor.

10        (Proceedings concluded at 12:37 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

54

```
 1
 2                          I N D E X
 3
 4                      E X H I B I T S
 5   DEBTOR'S        DESCRIPTION                    PAGE
 6   AMH - 1         Redacted Supplemental Declaration  11
                     of Ms. Eileen Wanerka
 7
 8                          RULINGS
 9                                      Page      Line
10   Debtors' motion to file Declaration    10        21
     of Ms. Wanerka Under Seal
11   Approved
12   Objection to GE Money Bank/WMC          12        12
     Mortgage Approved
13
     Fifteenth Omnibus Objection with        13        5
14   Respect to the Claim of Joseph
     Dionisio Approved
15
     Debtors' Nineteenth Omnibus Objection   13        12
16   Of Claims with Respect to Baron
     O'Brien Approved
17
     Debtors' Twenty-first Omnibus Objection 13        21
18   To Claims with Respect to Letort
     Mortgage Group, Inc. Approved
19
     Debtors' Thirty-first Omnibus Objection 14        25
20   To Claims with Respect to Promotional
     Products Partners, LLC Approved
21
     Debtors' Thirty-fifth Omnibus Objection 15        7
22   Of Claims with Respect to Ms. Jennifer
     Luke Sustained
23
     Debtors' Thirty-seventh Omnibus         15        14
24   Objection to Claims with Respect to
     Mr. James Zimmerman Sustained
25
```

55

1    Debtors' Twenty-fifth Omnibus Objection   22         19
     To Claims with Respect to Riverside
2    Taxing Authority, Continued until
     October 13th Omnibus Hearing
3
4    Lead Plaintiffs' and Settling          27         1
     Defendants' Joint Motion
5    for Entry of Order Authorizing, to
     the Extent Necessary, the Use of
6    the Proceeds of the D&O Policies to
     Fund the Securities Litigation
7    Settlement Approved
8    Motion of CitiMortgage, Inc. to Compel  46         6
     AHM Servicing to Respond to Two
9    Requests for the Production of
     Documents Granted
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

56

1

2                    C E R T I F I C A T I O N

3

4    I, Dena Page, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7    _____

8    Dena Page

9

10   Veritext LLC

11   200 Old Country Road

12   Suite 580

13   Mineola, NY 11501

14

15   Date:  September 29, 2009

16

17

18

19

20

21

22

23

24

25