# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., a Delaware corporation, | ) Case No. 07-11047 (CSS) |
| et. al., | ) Jointly Administered |
| | ) |
| Debtors, | ) |
| | ) |
| MONA DOBBEN | ) **Hearing Date: October 13, 2009** |
| | ) |
| Respondent. | ) |
| | ) |
| | ) |

FILED 2009 OCT -5 AM 10:40 CLERK US BANKRUPTCY COURT DISTRICT OF DELAWARE

## MONA DOBBEN'S  REPLY TO DEBTORS OBJECTION TO CLAIM

## NUMBERS #10607, #10608, and #10609

### PRELIMINARY STATEMENT

1.  MONA DOBBEN ("Respondent"),  asserts as follows in response to

American Home's objection to filed (3) proofs of claims, #10607 American Mortgage

Holdings, #10608 American Home Mortgage Servicing, #10609 American Home Mortgage

Corp.( collectively the "Claims") and subsequently moved this Court for an emergency order

---

The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment Corp. ( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Investment"), a Maryland corporation (1979);  American Home Mortgage Servicing, Inc.( "AHM Servicing"), aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558); American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

terminating or annulling the automatic stay (Docket #5789), imposed in this case by § 362(a) of Title 11, United States Code. The relief from stay was not granted due to the late status of the case.

2.   The Proofs of Claim stem from a purchase transaction based in fraud, and identity theft and the related security interest held on the property known as 38645 37th Street East,  Palmdale CA 93550, loan number #0001702441, identified in AHMA 2007-5 Trust as #1381, which involved multiple parties acting in collusion and civil conspiracy with one another to defraud Respondent.

3.   This loan was processed through **American Home Acceptance** through agent Jeanne Brisendine, and **American Brokers Conduit**, a wholly owned subsidiary of **American Home Mortgage Holdings**, prepared the good faith documents, processed and approved the loan, through the **American Home Mortgage** at: 1500 W. Shaw Ave. Suite 403 Fresno CA 93711 for the benefit of **American Home Mortgage Holdings**, 538 Broadhollow Rd. Melville NY 11747. Then loan was transferred to **American Home Mortgage Assets LLC,** and parked in a separate legal entity and statutory trust known as **AHMA 2007-5**. Servicing was through  **American Home Mortgage Servicing Inc** PO Box 660029 Dallas TX 75266-0029 and servicing records show Mona Dobben's loan may have in some way benefited **American Home Bank** owned by **American Home Mortgage Holdings.**  **American Home Mortgage Servicing Inc** collected or attempted to collect $100,000 worth of Mortgage insurance from **MGIC,** claim Number # 24787269. The Trust documents show the loan was insured 25%.

## JURISDICTION

4.   The allowance or disallowance of the Claims is a "core" proceeding "arising

under" these Chapter 11 Cases. *See* 28 U.S.C. § 157(b)(2). Venue is proper in this Court

pursuant to 28 U.S.C. § 1408 and § 1409.

## BACKGROUND AMERICAN HOME

    5. **American Home Mortgage Investment Corp is an** investment trust

that has an interest in home loans and originates loans through American Home Mortgage Corp.

as a real estate investment trust (REIT), American Home Mortgage originates and services

mortgage loans to homebuyers and refinancers from about 550 retail and wholesale loan offices

across the US and via the Internet. The mortgage broker management arm,

American Brokers Conduit signs up brokers as agents and controls every aspect of the loan

processing through its Wiz Sentinel system and internal underwriters. It pays brokers in the

form of yield spread premiums for delivering loans which American Home then securitizes in

it own portfolios. This is done through Special purpose entities which are owned and managed

by American Home Mortgage top executives. The loan servicing is also done by American

Home Mortgage Servicing to further enrich themselves off the loans they originate.

## THE BUSINESS MODEL

    6. American Home contracted with, signed up and managed brokers under

It's wholly owned entity American Brokers Conduit. When a broker submits a loan, in the early

stages, the information is entered into the Wiz Sentinel system. In this system the broker enters

all loan level criteria including the margin charged, the prepayment penalty, and the yield

spread premium he will receive. All figures are put through a fees test to ensure the loan is not a

high cost loan. If the loan is acceptable the loan is immediately assigned to American Home

Mortgage. The good faith estimates are then generated by American Home Mortgage, and the

loan is underwritten by American Home Mortgage. The purpose of underwriting is to ensure all aspects of the loan are done within legal and licensing mandates. In this case, at the very least substantial negligence took place.

7.    In the securities class action against AHM and certain officers, it was revealed that the compensation system encouraged the issuance of risky loans and fraud was ignored. **Confidential Witness 3** explained that loan officers were made to push borrowers into Choice loans and Pay Option ARMs because they were far more profitable. The fact that American Home pressured employees to sell Pay Option ARMs was corroborated by **Confidential Witness 4,** a former branch manager, who explained that he was pushed to sell Pay Option ARM loans. **Confidential Witness 5**, a loan consultant for AHM who worked directly with potential mortgage clients and completed mortgage applications, confirmed that the Company's commission structure rewarded employees for generating riskier loans. Former American Home employees described underwriters being consistently overruled by sales staff when they challenged questionable loans, and stated that exceptions to the Company's underwriting guidelines were routine.

8.    According to **Confidential Witness 33**, a former Senior Underwriter at AHM, underwriters' objections to loans were frequently vetoed. **Confidential Witness 33** stated that underwriters would "say 'no way' on a lot of things, 'I would never give a borrower a loan like this,'" but the loans would be approved nonetheless. According to **Confidential Witness 33**, loans would be approved over the underwriter's objection if he refused to put his name on a loan. "It happened more than it should have."**Confidential Witness 33**'s account is corroborated by another Senior Underwriter, **Confidential Witness 6**, who explained that underwriters "were told not to decline the loan." Moreover, according to **Confidential Witness 6**, other employees

would simply approve loans over the underwriter's objection, **even after being informed of fraud in the loan application**. According to **Confidential Witness 2, senior management, including Defendants Strauss and Hozie, pressured the underwriters to approve loans. Confidential Witness 15**, who audited loan files in American Home's Post Closing Review Group from January 2005 through August 2005, confirmed that underwriters were frequently vetoed when they objected to loan originations. **Confidential Witness 15** explained that loan officers frequently "went around" Andrew Valentine, the Senior Vice President of Post Closing, if he refused to approve a loan. Loan officers would disregard Valentine's veto and instead obtain approval from Lucille Favarro, Operations Manager for the Company's Wholesale Lending Division. According to Confidential Witness 15, Defendant **Strauss** ultimately replaced Valentine with Favarro. "They put Favarro over Valentine because Valentine wouldn't override loans." **Confidential Witness 15** later learned from colleagues that Favarro terminated several employees who refused to close loans that lacked proper documentation.

**Confidential Witness 15** also said that when loans were rejected by an underwriter, settlement agents would go over their heads to have the loan approved. Indeed, Confidential Witness 15 stated that the Company's underwriters were overridden by the loan officers and operations managers "all the time" because the latter were under **"intense pressure" to close loans**. "If the loan officer and operations managers wanted to get the loan out, it got out."

       9. This purportedly conservative mortgage lender, abandoned its focus on high-quality prime loans and aggressively embarked into high-risk lending. Despite portraying itself as a "prime" mortgage lender, American Home Mortgage Investment Corp. ("American Home," "AHM" or the (Company") fueled spectacular growth by targeting borrowers with poor credit, violated Company guidelines for underwriting mortgages, and incentivized brokers and

employees to sell risky loans, regardless of the borrowers' creditworthiness. As a result, the

Company's net income more than tripled from less than $75 million in 2004 to more than $260

million in 2006, as American Home's share of the U.S. residential mortgage market rose from

0.56% to 2.31%. By 2006, the Company had become one of the ten largest mortgage lenders in

the United States.

       10. Part of the business model includes "credit enhancements." Simply put,

American Home would set borrowers up to fail, and then insure themselves for imminent

defaults. These credit enhancements on American Home securitizations included LPMI, or

lender paid mortgage insurances that were packed on loan without disclosure to borrowers but

paid for out of their interest rate.  In this case the insurer was MGIC. This  "LPMI" was required

to be disclosed to the borrower under the Homeowner Protection Act of 1998. This insurance

would also be voided if American Home Mortgage admitted any fraud in the origination of this

loan. Due to this fact, when American Home was contacted about the issues Ms. Dobben was

facing, they willfully ignored her pleas for help and instead conducted an illegal foreclosure and

collected on the MGIC insurance and possibly other layers of credit enhancements.

       11. This loan was originated under American Brokers Conduit,

through American Home Mortgage Acceptance, and then somehow into American Home

Mortgage Corp., and American Home Mortgage Assets LLC, to finally land in AHMA 2007-

5 Trust managed and serviced by American Home Mortgage Servicing. American Home

Mortgage Assets LLC  and  AHMA 2007-5 are outside the bankruptcy but were managed by

American Home executives.

       12. Debtor and non debtor entities were counterparties to derivative

Contracts, guarantees and indemnification agreements.  Under these agreements American Home

made certain affirmative attestations to cure or replace any problem loan and therefore had

incentive to hide any problems.

"On the closing date, AHMC will represent, among other things, that each mortgage loan, at the time it was made and as of the applicable transfer date, complied in all material respects with all applicable laws and regulations, including, without limitation, usury, equal credit opportunity, **disclosure** and recording laws and all **predatory lending laws**, and each loan **has been serviced in all material respects in accordance with applicable state and federal laws,** including, without limitation, usury, equal credit opportunity, **disclosure** and recording laws. In the event of a breach of this representation, AHMC will be obligated to **cure the breach or repurchase or replace the affected mortgage loan** in the manner described in the accompanying prospectus."

      13. Contrary to Debtors assertions that American Home Mortgage debtor entities

had nothing to do with the fraud that was perpetrated on Mona Dobben, and their use

of the worn out defense – the broker did it - American Home was involved in this loan from

inception through securitization and subsequent management and servicing. In fact this loan

was originated for and placed in an **AHM securitization** AHMA 2007-5 Trust, through a pass

through entity managed by AHM executives. Increasingly as American Home had trouble

selling the loans they began **to securitize all of adjustable rate mortgages (ARMS) and**

**hold the securities** amassing a huge leveraged portfolio of loans.

      14. American Home contracted with and managed the mortgage brokers, and

AHM broker arm American Brokers Conduit prepared all the good faith documents. The

broker enters all information on AHM Wiz Sentinel system including what YSP they are to

receive, whether the loan will have a prepayment penalty and what the margin will be. The

YSP based payment is calculated by type of loan, interest rate charged, and addition of

prepayment penalty can all add to a brokers "kickback." In fact, loans can be immediately

flipped and assigned to American Home days after loan application.

      15. AHM internal underwriters process the loans. Underwriting is the process

under which red flags should be uncovered and loan application documents should be scrutinized. However during this period of time, American Home was in severe financial distress according to the CA Dept of Real Estate, and as evidenced by the bankruptcy filing shortly after this loan was processed, and had little care for the quality of loans they were making or the assuring proper paperwork. This has been clear in the course of this bankruptcy, and the enormous claims from every counterparty AHM did business with.

16. In Indenture Trustee, Deutsche Banks' exhibits submitted with Proof of claims, the exception report summaries show the sloppy paperwork, lost notes, missing assignments, sometimes they can't even verify the original balances, property zip codes, MERS MIN numbers, etc. This is astounding.

17. On the way out AHM was desperate for income generated by origination fees and servicing fees, and therefore pushing anything through was acceptable no matter how unacceptable the loan was. So it is beyond any reasonable conclusion to buy into the assertion that American Home had nothing to do with the fraud in origination. They were the originator, broker manager, processor, securitizer and servicer. In each of these roles American Home had a pecuniary interest in this loan.

## NO BASIS FOR OBJECTION

18. The Debtors are objecting to this claim's merits primarily based on a complaint that was filed in the United States District Court for the Central District of California. First to address the assertions by Debtor that the claims are invalid based on a complaint that was filed in CA and dismissed for lack of prosecution, this should be totally disregarded as that complaint was drafted by Mona Dobben's daughter pro se and a new complaint is being drafted by an attorney in California, Douglas Pettibone, who is redrafting and correcting the complaint, but due

to the failure to secure a relief from stay in this Court the Debtors will only be named nominally and Ms. Dobben must argue the merits here and seek her relief against the Debtor in this Court. So any references to that case are mute. In addition Ms. Dobben sought the extension of time for this hearing to allow for this new draft to occur, but YCST declined to agree. All legal causes of action will be restated and reformed. Any objection should not be based on a case which is not pending, and must rely on allegations contained herein. In addition, many new facts surfaced and developments occurred between the time of the initial complaint and the present time.

19. The Debtors suggest after review of a complaint which is not even pending, that they believe no liability exists. Specifically they assert they had no involvement with this fraud that was perpetrated on this senior citizen. As a matter of fact, the Court can take note of the business model of American Home as revealed over the course of this bankruptcy case and the specific way that American Home controlled its broker agents which it referred to as partners.

20. In this venue we will only argue claims relating to American Home's part in this loan before, during and after bankruptcy filing. All other parties that are outside this bankruptcy will be included in the California case. However, we are requesting equitable subordination, and to that end will assert some issues relating to that against non debtor participants in this bankruptcy.

21. Movant filed a complaint in the Central District of CA on June 23, 2008, case #08-cv-04142 pro se and did not serve anyone, filed for relief from stay in August of 2008, which got lost in the clerks office, and subsequently on December 19, 2008 after lack of prosecution the case was dismissed without prejudice.

22. The Debtor has objected to the claims, completely ignoring all aspects of

the fraud in origination and the refusal to respond to respondents inquires, numerous parties involvement in the obfuscation of the true owner of the note, the illegal conversion of property through foreclosure, and all failures of the Debtor, bankruptcy counsel as signatory on the trust, and debtor-in-possession acting as a fiduciary to assist respondent. The control of the servicing unit between the economic close and the final close was in the control of Wilbur Ross and the same employees who were present when the Debtor was in control.

23.  This was an illegal, predatory, and fraud transaction based on a forged purchase contract, loan application, escrow papers, and all other preliminary disclosure documents, and the damage was <u>accelerated</u> instead of mitigated by predatory servicing, breaching numerous consumer laws, and the purposeful use of the bankruptcy to covert the property, avoid responsibility and further the schemes.

24. American Home had a duty to conduct due diligence, to have fraud protections in place which would have caught the obvious problems with this transactions. After the fact, American Home had a duty under good faith and fair dealing principles to acknowledge the issues and investigate them when alerted to said issues by Ms. Dobben.

25. American Home had a duty to notify the proper authorities with SARS reports, and communicate to the insurer possible issues with this loan transaction.

26. American Home failed in every respect to exercise good judgment, good faith, loss mitigation, and all actions should be considered unclean hands in this matter.
If American Home was truly acting in the best interest of its creditors, the proper response to Mona Dobben's requests for help, would have been met with assisting her to unwind the transaction through a deed in lieu of foreclosure and clear her credit, and pursue the title agent

under the closing protection letter, the broker, and the appraiser. This would have resulted in some recovery of damages and stopped further damages to Mona Dobben.

## STATUTE OF LIMITATIONS

27. All statute of limitations were tolled on August 6, 2007 when American Home entered bankruptcy protection, and the violations contained herein are unlimited as a defense to foreclosure in the nature of a recoupment or setoff. Considering that was only three months after origination, all of Mona Dobben's claims are still viable.

## GENERAL AMERICAN HOME DECEPTION

28. Under bankruptcy laws deception is described to sometimes include the following issues: Parallel Entities: A long-standing company experiences financial problems. Insiders of the company create a new business in the same industry just prior to or soon after the bankruptcy filing. In some cases, the debtor sells some of its assets to the new entity for a fraction of their value just prior to the bankruptcy. The insiders operate the debtor until they have successfully transferred the debtor's inventory, receivables, customers and goodwill to the new company. New companies were formed just prior to or immediately after the bankruptcy case is filed. Numerous complex investment vehicles exist, such as limited partnerships. Investigations by state/federal regulators concerning operations, etc. Funds are comingled – numerous intercompany borrowings,  Incomplete schedules–frequent amendments in response to creditor questions, Debtor "confused" about his assets and financial affairs. I believe the description fits the American Home Mortgage business and the bankruptcy process it has embarked on. American Home did create new entities just prior to bankruptcy, run parallel entities, transfer assets between them, engaged in complex transactions that were so complex

they could not be unwound in the bankruptcy, ran numerous LLC's, many investigations have

occurred, some of which are ongoing, funds were commingled and there were billion dollar

intercompany borrowings, schedules were changed and updated, and there was much confusion

about all the Debtors fianancial affairs.

## BACKGROUND TRANSACTION

29.  This all began with a purchase transaction and the related security

interest held on the property known as 38645 37th Street East, Palmdale CA 93550 , loan

number #0001702441, identified in the Trust as #1381, which involved multiple parties acting in

collusion and civil conspiracy with one another to defraud Mona Dobben, including numerous

American Home Mortgage debtor entities and affiliated non-debtor entities.  The Debtor and

other directly related parties to this loan who have been directly involved in this bankruptcy

could have helped Mona Dobben when she alerted them to what had occurred. Instead, in

concerted action, they ignored her pleas and sought only to foreclose on this property and collect

on insurances, while refusing to take her calls or the calls of her daughter and Paula Rush who

were trying to help her. The property may have been sold in an asset sale through this Court.

30. Mona Dobben was a 68 year old senior citizen when she became the victim of a

mortgage fraud ring and a convicted felon, Patrick Downey, who acted as the real estate and

mortgage broker on the property which is the subject of this motion.  Currently American Home

is petitioning to destroy potential evidence including "broker packages" which may contain

important information on exactly what American Home due diligence showed on this broker.

31. Mona Dobben was targeted by a mortgage fraud ring and all initial paperwork

for these transaction were forged as this group attempted to slam Mona Dobben in nine

properties all at the same time. All loan disclosures were forged with Ms. Dobben's signature

and forged loan applications were submitted to lenders on nine properties that we know of. Out of that nine, this group was successful in getting four through. One of which was financed by American Home Mortgage. To be clear, Ms. Dobben in a confused state signed some closing documents at her home in Arizona in front of a notary. This does not make these fraud transactions legitimate under any legal context. Ms. Dobben had no clear understanding of what was going on and the notary did not explain anything to her. Shortly after this happened and her daughter realized what this group had done, they immediately began seeking help.

32. Only a few months after the closing on 4/19/2007 on 9/25/07, Mona Dobben sent American Home a RESPA letter detailing what had occurred. This RESPA letter was required to be acknowledged as received within 20 days and within 60 days American Home was required to conduct an investigation and communicate the outcome of that investigation. This never happened.

33. This loan with American Home was settled on or about April 19, 2007 by a notary who came to Ms. Dobben's home in AZ. Ms. Dobben had no idea that this transaction was fraught with fraud and this in fact was an investment swindle that was being perpetrated on this senior citizen. The person acting as real estate broker and mortgage broker had his license **REVOKED** in 1996 for conviction under Title 18 Section 1341, frauds and swindles, according to California Department of Real Estate, and fraud investigator for Bear Stearns, John Gray. This broker is not licensed to do anything, not real estate sales, investments, or as a mortgage broker. Mona Dobben's servicing records even reveal Patrick Downey the **REVOKED** license broker, attempted to call in and speak to the AHM servicing unit without authorization. The servicing records refer to, a "Pat," and "not authorized."

34. In order to hide the fact that the broker had asserted in the loan application that

he forged, this was a primary residence, after the transaction closed he gave Mona Dobben photocopies of payment coupons for the first few months. She did not receive any coupons for a undisclosed second mortgage, which the broker also placed with American Home. She was not aware of this until calls came in requesting payments months later. Mona Dobben did not receive payment statements and we believe they were mailed to the property address.

35. During this loan timeframe American Home was already insolvent, as determined by the California Department of Corporations which conducted an audit of American Home Mortgage financial statements for the period ending on February 28, 2007. This revealed that American Home Mortgage did not meet the tangible net requirements of $250,000 required to be licensed in CA. Subsequently a review was conducted of the statements ending on April 30, 2007 and it was determined that American Home Mortgage had a net worth deficiency of $31, 982. California was about the revoke American Home license.

American Home Mortgage at this point was obviously insolvent and cared little about the quality of the loans it was originating and ignored all the obvious red flags on Mona Dobben's loan transaction. The purchase agreement, loan application, all initial disclosures, were forged. American Home had documents of real signatures from closing and forged signature which look nothing alike, yet they chose to ignore the red flags and refused to help Mona Dobben.

36. Historical Real Estate was "signed up" as a broker/agent of "ABC" as was required of all brokers doing business with, and receiving YSP based incentive rate sheets from American Home Mortgage. It is alleged that in that capacity, Historical Real Estate was viewing loan terms based on commission incentives (YSP's) that "ABC" used to entice this broker into placing Movant into their high profit predatory loan program, the Pay Option Arm. For this service, "ABC" paid a kickback " YSP" of $6307.88 to Historical Real Estate and this

**REVOKED** license broker.

37. This loan was serviced by the predatory loan servicing unit known as American Home Mortgage Servicing, and this Court authorized a 40% bonus for the services of those employees during the bankruptcy phase of their employment. For that fee, employees of American Home Mortgage Servicing did violate RESPA and TILA by not responding properly contrary to assertions made by the Debtor. One such assertion is that they gave Ms. Dobben her loan file and that was all they were required to do. This is not true. They were required to conduct an investigation, which they did not do and inform her of the results of that investigation. Further, they baldly assert she knows where her loan is but fail to address the fact that they failed to respond to her request under TILA 1641(f)(2) and that she was unfairly delayed and derailed and forced to spend resources she did not have to hire someone to search for her loan and found it on her own. American Home Mortgage Servicing did not respond as required under TILA 1641(f)(2), and protected the executives of American Home Mortgage and trust parties affiliated with AHMA 2007-5 Loan Trust which were active participants in this bankruptcy proceedings.

38. RESPA also requires that during the 60 day period of time under a "qualified written request" they are not to report negative information about any debt that the borrower is disputing. They did report negative information on her report during the 60 day investigation timeframe, and did not inform her that an investigation had been conducted and the outcome because they failed to conduct an investigation.

39. American Home bankruptcy attorneys, Young Conaway Stargatt and Taylor and litigation attorneys Weiner Brodsky Sidman Kider, did give Mona Dobben a person to contact,

Scott Ellerbee, who wouldn't take any of her calls, her daughters calls, or Paula Rush's calls. American Home insists that they are not required to take the calls of a third party, however the statute clearly states an agent of the borrower may contact a lender on their behalf. American Home ignored calls even after Ms. Dobben executed a power of attorney for her daughter Alex Yamamura and Paula Rush on April 11, 2008 to attempt to contact American Home in reference to the foreclosure action.

**40.** American Home sent Mona Dobben's loan file to her correct address in Arizona, but knowing full well her address was **9208 107th Drive Sun City AZ 85351,** they failed to notify her at this address of the foreclosure action. The loan file was sent after she petitioned this court in Oct. 2007. So either they sent confidential personal information out inappropriately or they knew full well what her address was. The servicing records clearly show all correspondence to the 37th Street address was returned.

41. After the origination, Mona Dobben did contact American Home in writing as required under Arizona Elder Abuse and Consumer Fraud statutes on 11/13/07 by sending a RESPA "qualified written request" wherein she informed them of the fraud that had been perpetrated and asked for them to rescind the loan or otherwise assist her.

Consumer fraud, as defined by Arizona law, is any deception, false statement, false pretense, false promise or misrepresentation made by a seller or advertiser of merchandise. In addition, **concealment, suppression or failure to disclose a material** fact may be consumer fraud if it is done with the intent that others rely on such concealment, suppression or nondisclosure. Merchandise may include any objects, wares, goods, commodities, intangibles, **real estate** or services. Arizona Consumer Fraud. Act, A.R.S. § 44-1521 et seq.

A private citizen can also bring an action for a violation of the Consumer Fraud Act within one year from the date the claim arises. This was tolled due to American Home's bankruptcy filing.

## Arizona Consumer Fraud. Act, A.R.S. § 44-1521 et seq.

§ 44-1522. Unlawful practices; intended interpretation of provisions

A. The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

C. It is the intent of the legislature, in construing subsection A, that the courts may use as a guide interpretations given by the federal trade commission and the federal courts to 15 United States Code sections 45, 52 and 55(a)(1).

42. Mona Dobben asserts she is entitled to a priority claim of $451, 723, and an unsecured priority claim of $903,446 for damages related to a predatory and illegal loan origination and subsequent servicing practices of multiple Debtor entities, including unclean hands and illegal acts in conversion of the property at issue, 38645 37th Street East Palmdale CA 93550 (hereinafter "37th St.") The real estate underlying this claim has been taken, so any rights associated with asserting set offs, recoupment, rescission or voided lender interest, have been lost. This was due to the illegal foreclosure. The Court can only award the equivalent damages of the loss in cash. This was lost due to the Debtors conduct contained herein.

43. This loan was originally serviced by the Debtor servicing  unit known as American Home Mortgage Servicing (AHMSI) which was sold to Wilbur Ross during the bankruptcy. Ms. Dobben originally tried to communicate with American Home Servicing, BEFORE THE FINAL TRANSFER, and negotiations continued after the unit transferred to Wilbur Ross and AH Mortgage Acquisition Co., Inc., an affiliate of WL Ross & Co. LLC ( New Owner of American Home Servicing after 4/11/08). So clearly some overlap is unavoidable.

44. Respondent also asserts that her claims should take priority status as the final foreclosure and conversion of property was initiated and furthered while the Debtor was under

the protection of the bankruptcy Court, even though the final stage took place technically after final close to Wilbur Ross. This does not absolve the Debtor parties for many reasons. (1) If the foreclosure had not been started it could not have been completed (2) if American Home had responded correctly under the RESPA request on 11/13/07 and conducted an investigation it should not have started a foreclosure but should have engaged in loss mitigation, (3) parties associated with this bankruptcy as insiders were furthering their own interest instead of following the law in debt collection and servicing (4) parties to this loan as insiders of this bankruptcy purposefully blocked the information of who they were by not complying with the request for disclosure under TILA 1641(f)(2) from the first request in October of 2007 in docket 1490 and RESPA letter sent on 11/13/07. This unfairly delayed Ms. Dobben in seeking remedies against the appropriate parties or blocking the foreclosure.

## THE TRUST

### TRUST INFORMATION

45. This loan was securitized in AHMA 2007-5 a Delaware Statutory Trust formed by, American Home Mortgage Assets LLC, a wholly owned subsidiary of debtor entity, American Home. This trust and the LLC were owned and managed by American Home executives. These trusts are separate legal entities and bankruptcy remote so they are not part of the bankruptcy estate. Loans were sold to this trust for 103.2704635% of the aggregate Certificate Principal Balance of the Offered Certificates.

### 46. TRUST PARTIES

**AHMA 2007-5 Trust**
(1.1) <u>Underwriting Agreement</u>, dated <u>June 25, 2007</u>, among American Home Mortgage Corp., as seller, American Home Mortgage Assets LLC, as depositor, and **<u>Countrywide Securities Corporation, as underwriter</u>**, originally filed on Form 8-K on <u>July 20, 2007</u> and <u>incorporated</u>

by reference herein. (4.1) Pooling and Servicing Agreement, dated as of June 1, 2007, among **American Home Mortgage Assets LLC**, as depositor, **Wells Fargo Bank, N.A.**, as master servicer and securities administrator, and **Deutsche Bank National Trust Company**, as trustee, originally filed on Form 8-K on July 20, 2007 and incorporated by reference herein. (31) Rule 13a-14(d)/15d-14(d) Certification. (33) Reports on assessment of compliance with servicing criteria for asset-backed securities 33.1 **American Home Mortgage Servicing, Inc. as Servicer** 33.2 **Deutsche Bank National Trust Company as Custodian** 33.3 **Wells Fargo Bank, N.A. as Master Servicer and Securities Administrator**

## 47. TRUST ATTESTATIONS

On the closing date, AHMC will represent, among other things, that each mortgage loan, at the time it was made and as of the applicable transfer date, complied in all material respects with all applicable laws and regulations, including, without limitation, usury, equal credit opportunity, disclosure and recording laws and all predatory lending laws, and each loan has been serviced in all material respects in accordance with applicable state and federal laws, including, without limitation, usury, equal credit opportunity, disclosure and recording laws. In the event of a breach of this representation, AHMC will be obligated to cure the breach or repurchase or replace the affected mortgage loan in the manner described in the accompanying prospectus.

48. Wells Fargo is the Master Servicer, Deutsche Bank is the indenture trustee, and Countrywide was the underwriter for the trust. In June of 2007 this loan, according to servicing records was sold to Countrywide investor # 421, then in July of 2007 the loan was sent to Investor # 356 which is this trust. It appears the loan was transferred to the underwriter and then to the trust.

49. American Home received additional benefits past the origination of the loan and in the servicing of the loan. Accounts held in American Home Bank earned interest on the escrows held for this loan. According to servicing records this loan was involved in a CD at AH Bank which was entered as X-sell on 7/12/07, target date 8/11/07 and a cleared date of 7/12/07. Then on 9/10/07 American Home Mortgage Servicing entered X-sell – AH Bank Savings Acct.

50. **Loan Information in TRUST - AHMA 2007-5**

Loan is Identified as **#1381**

Payment $1135.26

Loan Term 480 months-Matures on 5/1/2047

Initial loan amount 400,500

**FICO SCORE 793**

Loan First Payment Date  6/1/2007

Servicing Fee 0.375

STATED INCOME FIXED ASST -SIFA

NegAm  based on MTA Index- Start MTA - 4.175

Start Interest Rate 7.5

Current Interest rate as of Filing of Trust -8.925

Margin -  3.075

**PMI COVERAGE PCT- 25%**

PMI LENDER PAID OPT -TRUE

PURPOSE SD - PURCHASE

R PROP CITY  PALMDALE

R PROP OCCUPANCY SD- **Owner occupied**

TAKEN OFF TRUST

*FWP ᐧ 1st Page of 158± No Page-Breaks* *Line 10,384:* 1380 NEGAM 0 7.925 0 10.55 4.65 MTA 4.65 7/1/2007 **1381 NEGAM 0 8.925 0 10.55 3.075 MTA 4.175 7/1/2007** 1382 NEGAM 0 8.95 0 10.35 4.2 MTA 4.2 7/1/2007 ... *Line 12,599:* 1380 5/1/2012 1 1 60 12 9.679 1381 6/1/2008 1 1 12 12 8.089 1382 5/1/2008 1 1 12 12 9.227 ... *Line 14,814:* 1380 6/1/2007 863.67 0.375 256430.66 SIFA Yes 5/1/2007 0 1381 6/1/2007 1135.26 0.375 402064.44 SIFA No 6/1/2007 0 1382 6/1/2007 183.49 0.375 68081.52 FIFA No 5/1/2007 0 ... *Line 17,029:* 1380 First NegAm MTA 4/1/2047 TRUE 7.5 1.1 60 60 **1381 First NegAm MTA 5/1/2047 TRUE 7.5 1.25 60 60** 1382 First NegAm MTA 4/1/2047 TRUE 7.5 1.25 60 60 ... *Line 19,244:* 1380 2.625 90 90 863.67 480 480 256500 718 TRUE 1381 1.625 90 90 1135.26 480 480 400500 793 TRUE

1382 1.4 90 90 183.49 480 480 67410 804 TRUE ... *Line 21,459:* 1380 25 TRUE 36 6M on 80% RCO St Petersburg OO **1381 25 TRUE 0 FALSE PUR PALMDALE OO** 1382 25 FALSE 12 6M on 80% PUR WESLACO INV ... *Line 23,674:* 1380 1 Family FL 1 33707 0.375 A 1381 1 Family CA 1 93550 0.375 A 1382 1 Family TX 1 78596 0.375 A ...

## ARIZONA ELDER ABUSE  & FINANCIAL EXPLOITATION

51. Ms. Dobben is a vulnerable adult as defined under**§13-3623 and**  Defendants

American Home Mortgage Servicing (DEBTOR ENTITY), successor AHMSI ( ROSS

ENTITY), YCST, Deutsche Bank, Wells Fargo, TD Service, and AHM executive managers of

American Home Mortgage Assets LLC trust AHMA 2007-5, all abused Ms. Dobben as fully

contained herein and took unfair advantage of an elderly citizen who could not have protected

herself from their schemes.

52. Mona Dobben is a protected citizen under Arizona elder abuse laws. These laws

include financial exploitation and emotional abuse. Ms. Dobben was abused and has suffered

great harm at the hands of American Home and Young Conaway Stargatt and  Taylor ("YCST")

during this bankruptcy as fully contained herein. She has suffered from extreme depression,

bouts of hopelessness, crying jags, emotional breakdowns, fears of losing her primary home,

fear of answering the phone, fear of speaking to other people for fear of getting scammed, afraid

to go outside, shingles, insomnia and headaches.  Ms. Dobben had no confidence in her own

decisions and therefore had trouble maintaining the independence she had always enjoyed. Ms.

Dobben's excellent credit has been ruined and her good name soiled which has caused her

severe financial harm. Now when she has a financial emergency, such as needing new tires for

her car, she can't charge the purchase as she would have done in the past, but now has to delay

crucial and necessary purchases until she can pay for them in full. Ms. Dobben had planned on

purchasing a new car as she is driving a 1995 Isuzu Rodeo with high miles,  a car she viewed

would be her last car due to her advancing years, and now she is unable to finance a new car. She has been unable to take trips to visit with family and friends, many of which are also advancing in age, and therefore she may not be able to visit them before they die. In fact, some have died. There are places she had planned to visit before she was too frail to travel or died, and she has had to put all of that off, as this nightmare has had no end since April of 2007. Over two years now. All of her credit has been cut off, Bank of America said she has, "a history of delinquency with her creditors," but the only delinquencies were related to these fraud mortgage loans. Her equity line of credit on her personal home has also been closed by Bank of America. So now she has no access to credit funds or equity she has in her home.

Instead of engaging in loss mitigation, good faith and fair dealing, American Home Mortgage Servicing (DEBTOR ENTITY) and successor AHMSI ( ROSS ENTITY), affiliated Deutsche Bank, Wells Fargo, and American Home Mortgage Assets LLC, aided by YCST conducted an illegal foreclosure to finish the egregious acts they started.

### 53. Emotional Abuse . . . §13-3623(D)

Mona Dobben has suffered extreme emotional abuse and financial exploitation and a crime was committed. American Home Mortgage Servicing (DEBTOR ENTITY) and successor AHMSI (ROSS ENTITY) used the protection of the bankruptcy Court and repeatedly refused to speak with Ms. Dobben or her daughter Alex Yamamura to resolve issues surrounding her loan of fraud. Although letters were sent to Ms. Dobben insisting she call Scott Ellerbee, Mr. Ellerbee never returned the calls. American Home refused to acknowledge the fraud in origination which would have voided insurances, and instead harassed Ms. Dobben with collection calls and reported her to the credit bureaus therefore ruing her credit score. Any act which affects credit is considered punitive.

### 54. Threatening or intimidating ... §13-1202

American Home Mortgage Servicing( DEBTOR ENTITY) and successor AHMSI

( ROSS ENTITY) used its servicing unit and the protection of the bankruptcy court to

intimidate and abuse Mona Dobben offering no help or loss mitigation and instead escalating

her damages through conducting an illegal foreclosure to collect on  fraud based insurances.

### 55. Using a telephone to terrify, intimidate, threaten, harass, annoy or offend ...

### §13-2916

American Home Mortgage Servicing( DEBTOR ENTITY) and successor AHMSI ( ROSS

ENTITY) refused to aid Mona Dobben or answer phone calls or respond to he requests for help,

but instead repeatedly harassed her with collection phone calls asking for payments.

### 56. Vulnerable adult abuse ... §13-3623(A)(3)

Debtors, with full cooperation and assistance of Deutsche Bank, Wells Fargo, TD Service,

American Home Mortgage executives and staff, Wilbur Ross as DIP and his new servicing

entity AHMSI, and YCST together, abused this senior citizen as fully contained herein.

These parties took unfair advantage of an elderly citizen who could not have protected herself

from their schemes.

### 57. Theft §13-1802

The Debtors, and trust affiliated parties committed  theft, as each one of them knew they

were taking control of and management of a vulnerable adult's assets or property through

deception, as defined in §46-456, while acting in a position of trust and confidence and with the

intent to deprive Mona Dobben of the asset or property. a) Theft of property or services with a

value of twenty-five thousand  dollars or more is a class 2 felony.

### 58. Forgery §13-2002

Historical Real Estate agent Patrick Downey falsely made, completed and altered real estate sales contracts, escrow agreements, real estate and mortgage disclosures. AHM, American Home Mortgage Assets LLC, AHMA 2007-5 Trust, Deutsche Bank, and Wells Fargo, knowingly possessed numerous forged documents and refused to admit or assist Mona Dobben in this matter. AHMA 2007-5 and managers of that trust, knowingly presented these forged documents and fraud transaction to investors in a securitized trust and insurer MGIC to further enrich themselves on a transaction they knew was based in fraud. American Home, and all parties further conducted an illegal foreclosure and collected on mortgage insurance from MGIC and other credit enhancers for a transaction they knew was based on forgeries. Therefore the parties accepted and sanctioned forged instruments which contained false information and did so with the intent to defraud Plaintiff, insurers and investors. Forgery is a class 4 felony.

### 59. Taking the Identity of Another Person § 13-2008

Historical Real Estate agent Patrick Downey knowingly took the identity of Mona Dobben in an attempt to slam her in nine properties belonging to parties associated by familial status, business relationships, and personal friendships. This group was an organized fraud group who acted in concert to unload properties and liabilities they held on an unsuspecting elderly victim, Mona Dobben. They took these actions without Ms. Dobben's consent or knowledge and with intent to use the other her identity for unlawful purposes and to cause her harm and loss of her good credit and her limited financial resources. American Home sanctioned the behavior by ignoring red flags, processing the loan, ignoring Ms. Dobben's pleas for help and conversion of

the property. American Home Mortgage Servicing (DEBTOR ENTITY), successor AHMSI

(ROSS ENTITY), and YCST, knowingly further the scheme and allowed the scheme to end in

destruction of Ms. Dobben and conversion of the property through an illegal foreclosure.

### 60. Fraudulent schemes and artifices §13-2310

The actions from origination and processing of this loan, through securitization, management and

servicing of this loan, were fraught with fraudulent schemes as fully contained herein.

The broker may have started this fraud scheme, but American Home and related parties certainly

were on the bandwagon. American Home paid this broker excessive YSP to deceive and defraud

Mona Dobben and to stick her in a highly predatory pay option arm loan. AHM looked the other

way when they knew the broker wasn't playing by any rules. They further chose to look the other

way when Mona Dobben contacted them for help. The scheme for American Home was simple,

create loans regardless of problems, ignoring all red flags, to earn fees through securitization,

and earn further fees servicing fees the loans. The act of obfuscating the true owner of the note,

to hide themselves using the protection of this Court was a fraudulent scheme. The act of

collecting on insurances by refusing to acknowledge the fraud was a fraudulent scheme.

### 61. Obtaining a signature by fraud §13-2005

American Home knew or should have known that signatures did not match on

disclosures, purchase contracts and even the request for identity submitted by the broker and the

signature which were obtained by the notary at closing. This is clear in the documents.

Considering American Home was alerted of these issues and instead of conducting an

investigation as required under good faith and fair dealing, RESPA requirements, and even a

duty to issue a SARS report, American Home chose to sweep it under the rug to collect on

mortgage insurances figuring this elderly woman would never get the help she needed to press claims.

62. Ms. Dobben was subjected to an illegal foreclosure while American Home was under the bankruptcy protection of this Court and when she attempted to present her issues in good faith to American Home and to counsel YCST and WBSK for American Home, and she was ignored and abused. Hardly a showing of good faith.
Ms. Dobben did everything humanly possible to seek a resolution, and these parties did everything they could to ignore her.

63. Ms. Dobben's credit score was over 800 is now completely ruined with four foreclosures on her credit report. She continues to be harassed by foreclosure rescue scammers who are buying lists and calling her saying they can help her. Second lien holders on these properties continue to try and collect even after foreclosure and the nightmare has no end for Ms. Dobben.

64. American Home Mortgage Servicing (DEBTOR ENTITY) and successor AHMSI ( ROSS ENTITY) have caused Ms Dobben to expend resources she does not have to attempt to seek justice, and this spiral of elder years and worrying about her finances with ruined credit is causing her emotional distress which is manifesting itself in many ways. Yet YCST asserts they do not believe she is even entitled to any claim, acting as judge and jury.

### THE FRAUD AND CONCEALMENT

65. American Home, counsel for American Home, and affiliated trust parties were informed of the extent of the damage that this Fraud group inflicted on Mona Dobben, attempting to slam Mona Dobben into nine properties using forged documents, and deceptive schemes. Using forged signature this group opened escrows and created sales contracts for nine

properties to be place in the name of Mona Dobben. Ms. Dobben was approached to buy one property, which was supposed to be under market value, already rented and income producing. What happened was she was the victim of massive identity theft, nine escrows opened in her name and four closed on overvalued properties, some dilapidated, and collusive transactions. Renters were non existent, double loans (first and seconds) were placed on ALL properties, and Ms. Dobben was ruined.

66. This fraud encompasses five real estate transactions, four real estate transactions which were consummated in the name of Mona Dobben, and five more that the "fraud group" attempted but failed for Mona Dobben. These transactions, were orchestrated by an organized mortgage, investment, and real estate fraud group, using forgery ( see Exhibits), identity theft, gross misrepresentations, fraudulent concealment, negligence, fake Wells Fargo bank accounts, inflated appraisals ( by collusive appraisers), back end payoffs ( to Downey) and/or fee splitting, altered documents, falsified documents, and with the collusion of multiple persons acting together in conspiracy to defraud Mona Dobben, and other known victims.

67. **THE Properties**

**American Home Mortgage**

38645 37th Street East Palmdale CA 93550 (hereafter "37th St.") Seller – Maymoun

**WaMu**

43723 La Paz Lane Lancaster CA 93535 (hereafter "LaPaz") Seller – Fashesh

**WaMu**

36546 Silverado Drive Palmdale CA 93550 (hereafter "Silverado") Seller - Hansen

**Countrywide**

45946 Desert Springs Dr. Lancaster CA 93534 (hereafter "Desert Springs") Seller- Ramos

**Attempted but failed transactions:**

42431  66th Street West Lancaster CA 93536 – Seller- Nahida Fasheh.

44650 6th St. E. Lancaster CA 93535 – Seller - Samer Theodory

2735 Sunnyvale Lancaster CA 93536 –  Seller- Samer Theodory

4822 Quartz Hill Rd Lancaster CA 93536 – Seller- Nahida Fasheh

31935 Crystalaire Drive Llano CA 93544  - Seller Yocum

68. The broker on every transaction was agent Patrick Downey and broker Historical Real Estate as buyers agent, and  Ilham Theodory owner of  Preferred Real Estate, as sellers agent. Theodory also acted as the rental management agent. In that role she did not forward rental checks, charged for bogus repairs, and misappropriated Section 8 checks. Dobben was set up from beginning to end.

69. Defendants participated in a "fraud group," which consists of appraisers, real estate agents, property management agents, bank executives ( Wells Fargo Branch manager), title and escrow agents.  All aided and abetted a **REVOKED** license real estate agent and mortgage broker, Defendant **Patrick  Downey**, and executed a real estate scams of epic proportions on Mona Dobben.

70. Patrick Downey was **convicted** in 1994 under Title 18 Section 1341 (fraud and swindles), and as a result his **license was revoked in California H-26255LA**  under California Business & Professions Code 10177, on 6/13/96. This did not stop him, as he was conducting real estate, mortgage and investment business under the license of Historical Real Estate, traced back before his conviction in 94. His daughter Stacy Eagle and Gregory Clark, broker for Historical assisted him in doing unlicensed business.

71. This senior, Mona Dobben was targeted, abused and deceived  by an extensive

fraud ring conducting a real estate swindle to relieve members of the group, associates and family members of properties they could not sell. On one transaction the appraiser was the seller and on another the appraiser. The appraiser was also an employee, real estate agent under the so-called rental management agent was the selling broker and it was her family members whose properties she was unloading.  No affiliated disclosures were made as required under CA law.

72. Washington Mutual, Bear Stearns and Countrywide  filed SARS reports as a result of their own investigations. AMERICAN HOME refused all contact, and did not conduct an investigation or issue SARS reports and instead conducted an illegal foreclosure with no notice to Ms. Dobben.

73. Ms. Dobben was slammed by a "REVOKED" license broker into four rental properties with forged sales contracts, escrow papers, disclosures, loan applications, and various other loan documents after obtaining her social security and personal information. A Wells Fargo bank branch manager assisted the broker, Patrick Downey,   in showing down payment funds and returning those same funds to Downey after closing.

74. The title and settlement agent LandAmerica Lawyers Title, and broker Downey acting as agent for Historical Real Estate and Finance, and notary, Downey's daughter, Stacy Eagle, also assisted Downey. According to the California Department of Real Estate Downey's license was REVOKED after a conviction under TITLE 18 Section 1341. His license has never been reinstated. Downey is in bankruptcy in California and claims to have been an office manager and tax preparer.

75. Mona Dobben was confused and unaware of what was happening as Downey did this using identity theft and by forging documents. Respondent, a senior citizen, was approached by Downey to purchase one or two investment properties which were priced under market value,

rented and income producing. That is all the information respondent was given until a notary showed up at her house to sign papers.

76. Respondent could not have known she was the target of an organized fraud group. On this transaction for "37th Street," this group included the broker Downey(REVOKED license broker), seller Maymoun ("associate of Selling agent "Theodory"), appraiser Hansen ( "employee of Theodory and seller on another property Dobben was slammed into) , settlement agent for Land America Dawn Hogan ("used on multiple transactions by "Downey"),  property manager/selling broker Theodory (" affiliations to multiple sellers, employees, and family members). These parties were all involved to relieve friends, employees and family members of properties and severely damaged Mona Dobben. The transactions are identity theft, fraud in origination, fraud in inducement, and financial exploitation of an elderly citizen in violation of Arizona law.

## 77. REAL ESTATE SELLING AGENT AND RENTAL MANAGEMENT

**AGENT: Preferred Real Estate principal  Ilham Theodory AKA Ilham Fasheh**

License ID: 01222393 Main Office:  659 W LANCASTER BLVD LANCASTER, CA 93534

**Parties related to selling broker and rental management agent.**

Seller –Issa Saliba Maymoun & Tamam Issa Maymoun

Other associated parties using this address: Jamal Haddad, Jennifer Maymoun, Nazia Khoury, Salim Khoury, Nadia Khoury. Haddad's and Khoury's Owned 37th Street before Mona Dobben

**Associated family SELLERS on at least three attempted properties:**

MICHAEL AND MARINA FASHEH

**Salespersons of Preferred Real Estate Broker:**

01734003 - Hansen, Michael –Real Estate salesperson for Preferred on various transactions.

01733879 - Hansen, Sarah -SARA HANSEN ALSO KNOWN AS SARA HUGHES – affiliated with Preferred as real estate salesperson. The Hansens acted as sellers on properties, appraisers, and sales agents of Preferred Real Estate.

**BROKER HISTORICAL REAL ESTATE**

00841172- GREG CLARK. Broker allowing Patrick Downey to operate under his license.

**EMPLOYEES HISTORICAL REAL ESTATE**

REVOKED license number 01048559 Patrick Michael Downey. Broker at the center.

**NOTARY - DAWN WHITE**

Notary and settlement agent for LandAmerica Lawyers Title. Notarized documents which Mona Dobben did not sign. Assisted in transferring down payment funds back to same account they came out of at closing

**KNOWN UNDER AKA's**

Dawn Michelle White license number 00957326 and 01192183

Dawn Lee Webb 01352477

Daun Lucky Hogan-Webb 01231274

        78. In truth and in fact, the properties these parties were dumping were overvalued, not rented, and the broker mortgaged these properties with pay option arms, and undisclosed second and HELOC loans on the properties so rent could never cover the payments and the broker received maximum broker fees. Ms. Dobben was set up from the beginning. She tried to make payments as long as she could while trying to unwind this mess, but with no assistance eventually had to stop.

79. In Mona Dobben's loan file it is clear that the purchase agreement, loan application, good faith documents, and ALL disclosures were forged. Even so, American Home Mortgage Servicing and American Home Mortgage refused to cooperate in any way to assist Plaintiff. The appropriate thing to do, would have been to assist Mona Dobben and pursue these parties. American Home had a closing protection letter from the title agent, and a contractual relationship with the broker through American Brokers Conduit, and the appraiser through Homegate Settlement Service. Yet, no action was taken against them.

(1) Plaintiff's signature was forged on purchase contract, loan application, and all disclosures, rental management agreement and homeowners insurance.

(2) Principal of Historical, Gregory Blair Clark certified he had a face to face interview with Plaintiff that never took place.

(3) Broker "Downey" created a fake Wells Fargo bank account to show source of down Payments and receive funds back at closing.

(4) Home previously sold and/or lived in by known fraud group associates of listing agent Ilham Theodory. Jamal Haddad sold to Issa and Tamam Maymoun's before sticking respondent in property. All are known associates of Theodory. No diclosures were made as required under California law.

(5) Purchase contract, with forged Plaintiff's signature was faxed from Hansen - Appraisal.661 267-7108 on 2/27/2007, Hansen is an employee of Preferred Real Estate-Theodory, seller on another property Silverado, and appraiser on two of the properties involved, Desert Springs and La Paz.

(6) Title & Settlement agent LandAmerica Gateway Title ignored red flags and cooperated with American Home Mortgage and the broker, Historical,  and all were complicit in ignoring a $50,000 down payment being wired from a bank account and then wiring almost the same amount back to that account at closing. The REVOKED license broker opened and directed this Wells Fargo account to be used for mortgage fraud.

(7) Titan Escrow notarized forged documents that Plaintiff did not sign.

## ABUSE of MONA DOBBEN WHILE UNDER THE PROTECTION OF THE BANKRUPTCY COURT

## Fair Debt Collections Practice Act "FDCPA"

80. Contrary to what has been asserted by Debtor's counsel it is factually incorrect that the Fair Debt Collection Practices Act does not apply to American Home as servicer of this loan and debt collector. American Home has stated they did not own the loan and it had been sold into a securitization. The only exemption is if a party is collecting for a loan which they own. As soon as American Home sold the loan, they became subject to the FDCPA as a debt collector. Only the current owner of the loan, is not considered a collection agency when it is pursuing collection on its own debt. It must use its own official business name and must not engage primarily in the business of collecting debts.

81. The FDCPA also outlines violations due to harassment, abuse of borrowers, misleading representations, and debt validation, among other provisions. In this case abuses took place in each of these areas as fully set forth herein. Each violation of the Act may cause liability on the part of the debt collector for any <u>actual damage</u> suffered by the borrowers, $1,000 per offense, and costs of any action to defend, and attorneys fees. Violations may be included as counterclaims and set offs.

## FORECLOSURE

82. American Home Mortgage and TD Service did conduct an illegal foreclosure **without proper notification** under California law on the property owned by Mona Dobben, known as 38645 37th Street East, Palmdale CA. 93550.

83. Respondent received a letter from lawyers for American Home Mortgage, Young, Conaway, Stargatt, & Taylor, dated 11/2/2007, to her primary residence in Sun City AZ. Dobben has the signature confirmation card that American Home Mortgage Servicing received her RESPA letter, and advocate letter and a petition which was filed in the bankruptcy court, which all contained her Sun City address. Yet American Home Mortgage is conducting a foreclosure without notifying her at this address.

## OBFUSCATION AND NON COMPLIANCE

84. Mona Dobben  sent American Home Mortgage a RESPA "qualified written request" on  November 13, 2007 signed for on November 16, 2007 by American Home Mortgage Servicing. American Home Mortgage has never fully complied. Under the RESPA "qualified written request" which was sent by Mona Dobben to American Home Mortgage, they were required to acknowledge the request and comply. Instead they foreclosed and collected $100,000 in mortgage insurance from MGIC.

85. Mona Dobben petitioned the American Home Bankruptcy Court, docket #1490 and a hearing was held on Oct. 31, 2007, in reference to numerous issues including demand to know the true owner of the note or master servicer under TILA 1641(f)(2).  American Home Mortgage Servicing has never complied. Now it is obvious that the parties being protecting were Wells Fargo, Deutsche Bank, and the executives of American Home Mortgage, managers and owners of AHMA 2007-5 Trust.

86. Wells Fargo was notified of the non compliance and they ignored all pleas. Deutsche Bank was mailed a certified package, which they opened, and then sent back saying it was the wrong address. It wasn't.

87. Mr. Brady, attorney's for the debtor entity American Home Mortgage Corp., of which American Home Mortgage Assets Trust is a wholly owned subsidiary, asserted in the bankruptcy Court that American Home Mortgage did not have to comply with TILA 1641(f)(2). Mr. Dickman, as witness for American Home Mortgage servicing, asserted that mortgage investors did not want American Home Mortgage Servicing to comply with TILA 1641(f)(2), stating they pay us to service and field all inquiries. Mr. Dickman stated clearly that the investor and the master servicer does not want them to give the borrowers this information.

88. There are multiple incidences of obfuscating the issue of true owner the note, conflicting paper trail records, and an outright refusal of honestly and integrity, including misrepresenting compliance under TILA 1641(f)(2) to the Bankruptcy Court on Oct 31, 2007.

89. In the foreclosure action American Home did not expressly disclose the interests in the loans of the applicable trustee in the foreclosure suit in violation of USAP REG AB minimum servicing standards.

## EQUITABLE SUBORDINATION

90. Mona Dobben asserts that claims made by other parties in this bankruptcy should be equitably subordinated to her claims under 11 USC § 510. Subordination (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate.

91. Mona Dobben requests subordination of all parties who actively participated in the obfuscation and negligent conduct contained herein. The parties to the trust chose to hide from responsibility using the Debtor as a front and this Court for protection, rather than assist this senior citizen to mitigate the damages to all parties involved. At the time of the illegal foreclosure with no proper notice to Mona Dobben, certified letters were sent to all parties to this loan as well as Pauline Morgan as signatory on AHMA 2007-5 Trust.

**Those parties are as follows:**

## 92. AMERICAN HOME MORTGAGE ASSETS LLC - DEPOSITOR

Officers of the Company:  President: Michael Strauss Executive Vice President, Thomas McDonagh Treasurer and Executive Vice President, Stephen Hozie Secretary and Executive Vice President, and Alan Horn. Each of these parties owed a duty of care to

In the discharge of a Manager's duties should have **refrained from engaging in gross negligence or intentional misconduct.**

### 93. WELLS FARGO

Wells Fargo in the role of Master servicer must sanction the foreclosure and is also responsible to the trust to oversee the servicing of American Home Mortgage servicing. In this capacity and due to the notice of issues presented herein, Wells Fargo should be held accountable for sanctioning the illegal behaviors and doing nothing to step in. Wells Fargo is master servicer on **AHMA 2007-5 Trust** and a major creditor of American Home. Wells Fargo has asserted claims against the estate in the hundreds of millions of dollars. The trust parties also collected millions in margin call payments on **AHMA 2007-5 Trust** in the days leading up to the bankruptcy. Although these are considered protected under safe harbor provisions, the trust parties have already collected significant benefits before any creditors.

Wells Fargo was aware of the request under for disclosure under 15 U.S.C. 1641(f)(2), as evidenced in docket #5286 Wells Fargo remained silent about its role in this loan. As master servicer the trust requires Wells Fargo to sanction a foreclosure and to collect on insurance proceeds. Wells Fargo actively participated in this activity. Fraud and any other improper activity in the origination, servicing, and foreclosure would have voided the insurances, which

Wells Fargo was well aware of. As an active participant in this bankruptcy they were well aware of the assertions made by Mona Dobben in docket #1490, #5789, and others. Therefore all claims of Wells Fargo as its own entity or on behalf of the AHMA trust should be subordinated to respondents claims.

According to static pool data found on Wells Fargo's www.ctslink.com, Wells Fargo was at all time relevant to this transaction the master servicer on this trust. In that capacity they had a duty to ensure the servicing, loss mitigation and collections were done in accordance with all applicable laws. Wells Fargo in the role of <u>Master servicer must sanction</u> the foreclosure and is also responsible to the trust to oversee the servicing of American Home Mortgage servicing. In this capacity and due to the notice of issues presented herein, Wells Fargo should be held accountable for sanctioning the illegal behaviors and doing nothing to step in. Ms. Dobben asserts Wells Fargo's claims should be equitably subordinated to her claims.

## The Master Servicer Role

The master servicer shall supervise, monitor and oversee the obligation of the servicers to service and administer their respective mortgage loans ………….. and shall have **full power and authority to do any and all things which it may deem necessary or desirable in connection with such master servicing** and administration.

The master servicer for any mortgage pool will also be required to perform, or cause the servicers of the mortgage loans in the mortgage pool to perform, other customary functions of a servicer of comparable loans, including……..supervising foreclosures and similar proceedings; managing REO properties; and maintaining servicing records relating to the mortgage loans in the mortgage pool. The master servicer will be responsible for filing and settling claims in respect of particular mortgage loans under any applicable instrument of credit enhancement.

**Realization Upon or Sale of Defaulted Mortgage Loans**

Except as described below, **the master servicer** will be required, in a manner consistent with the servicing standard, to, or to cause the servicers of the mortgage loans to, foreclose upon or otherwise comparably convert the ownership of properties securing any mortgage loans in the related mortgage pool that come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments.

The master servicer and each servicer will be authorized to institute foreclosure proceedings, exercise any power of sale contained in the related mortgage, obtain a deed in lieu of foreclosure, or otherwise acquire title to the related mortgaged property, by operation of law or otherwise, if the action is consistent with the servicing standard. The master servicer's or applicable servicer's actions in this regard must be conducted, however, in a manner that will permit recovery under any instrument of credit enhancement included in the related issuing

## 95. DEUTSCHE BANK

Deutsche Bank as Indenture Trustee on AHMA 2007-5 Trust, and a major creditor of American Home, sat on the unsecured creditors committee. The unsecured creditors committee chose to join in the Debtors motion against disclosure under 15 U.S.C. 1641(f)(2), and there is no

evidence that Deutsche Bank recused themselves from participating in decisions and actions of the unsecured creditors committee when it came to borrower issues which they had a stake in the outcome. As an active participant in this bankruptcy they were well aware of the assertions of fraud made by Mona Dobben as evidenced in docket #5277. Also, in its role on the unsecured creditors committee, Deutsche Bank had a fiduciary duty to all unsecured creditors including claimant Mona Dobben. This fiduciary was breached when Deutsche Bank took an active role in concealing the trust and its own role in the trust from Mona Dobben. Therefore all claims of Deutsche Bank as its own entity or on behalf of the AHMA trust should be subordinated to respondents claims.

### 96. TD SERVICE

TD Service as foreclosure agent for **AHMA 2007-5 Trust** was informed of the issue of improper notice of foreclosure and refused to stop the foreclosure action. After a few days of dialogue respondent was told that American Home authorized the foreclosure action and TD Service went forward. A debt collector has an independent duty to the borrowers to follow all legal mandates in conducting a foreclosure and can't blame their mistakes on American Home. Therefore the claims for foreclosure related fees should be subordinated to Respondents claims.

### 97. AHMSI

11 U.S.C. § 1107 [debtor in possession has same duties as trustee]

AH Mortgage Acquisition Co., Inc., an affiliate of WL Ross & Co. LLC, entered into an agreement to acquire substantially all of the servicing assets of AHM Servicing. American Home Mortgage Servicing, Inc., whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063. AH Mortgage Acquisition Co., Inc. doing business as American Home Mortgage Servicing, Inc.

<u>David M. Friedman</u> Executive Vice President and Director of Servicing AH Mortgage Acquisition Co., Inc., an affiliate of WL Ross & Co. LLC

As defined in the bankruptcy code a debtor-in- possession in a Chapter 11 case is a fiduciary for the creditors, owing loyalty to the creditors and not the shareholders of the debtor. In this capacity this person is entrusted with duties on behalf of another. The law requires the highest level of good faith, loyalty and diligence of a fiduciary, higher than the common duty of care that we all owe one another.

In this case, Mona Dobben was one of the creditors, who debtor-in-possession Wilbur Ross owed the highest level of good faith. Instead of protecting the estate and Ms. Dobben, Wilbur Ross actively assisted in the final conversion of the property for the benefit of securities holders and other parties to this bankruptcy case.

The foreclosure was begun between the time of the economic close and finished after the final close of the servicing unit to AH Mortgage Acquisition Co., Inc., an affiliate of WL Ross & Co. LLC, which entered into an agreement to acquire substantially all of the servicing assets of **American Home Mortgage Servicing, Inc.,** and did so with language added for protection under 363(o) provisions of the bankruptcy code. The servicing employees involved in respondents issues were the same under both parties tenure, namely David Friedman and Scott Ellerbee. The servicing unit and Wilbur Ross New York offices were notified by certified mail of the issues surrounding this loans origination, servicing and foreclosure and these parties did not stop any of it. For this reason any claims of Wilbur Ross and the new AHMSI servicing unit should be subordinated to respondents claims.

### 98. AHMA 2007-5 Trust

This trust AHMA 2007-5 was managed by the executives of American Home

until declaring bankruptcy upon which they were no longer eligible to act as managers. At the

time of the bankruptcy, Pauline Morgan of Young, Conaway, Stargatt and Taylor, became a

signatory on this trust. **AHMA 2007-5 Trust** or managing entity American Home Mortgage

Assets LLC, may have been the beneficiary of the insurances. All  proceeds on the MGIC claim

and any other insurance claims, should also be subordinated to respondents claims, as these

proceeds were the product of a series of illegal actions, including non disclosed insurance

placement in violation of Homeowner Protection Act of 1998, fraud and forgeries in origination,

predatory servicing and non compliance with RESPA "qualified written request," illegal

foreclosure to collect on multiple layers of insurances, a failure of good faith and fair dealing,

failure to engage in loss mitigation, and unclean hands in every aspect of this loan.

### 99. YOUNG CONAWAY STARGATT AND TAYLOR

Young Conaway Stargatt and Taylor bankruptcy fees for bankruptcy counsel representation

should be subordinated as they actively assisted the Debtor and other parties in obfuscation of

the true owner of the note at the hearing on October 31, 2007 when they asserted to this Court

that 15 U.S.C. 1641(f)(2) was not a statute that the Debtor needed to comply with. YCST had

unlimited resources and staff to look up this statute and advise their client of the responsibility

before blindly asserting such information in Court. After being forced to attempt to find this

information on her own, it costs Ms. Dobben valuable time wherein she could have been forming

a complaint against the proper parties in interest and protecting her rights. The entity turned out

to be an American Home securitized trust known as AHMA 2007-5,  and affiliated Debtor

parties held residual interests in the trust, and were on the hook for various obligation under this trust.

**Signature of Attorney X /s/ _Pauline K. Morgan_** Signature of Attorney for Debtor(s) James L. Patton, Jr., Esq. Pauline K. Morgan, Esq. Young Conaway Stargatt & Taylor, LLP The Brandywine Building 1000 West Street, 17th Floor Wilmington, Delaware 19801

When AHM entered bankruptcy, partner Pauline Morgan became signatory on this trust as American Home Mortgage executives could no longer manage this trust. In the process of continuing to get help during the illegal foreclosure Ms. Dobben sent a certified letter to Pauline Morgan alerting YCST that an improper action was being taken under the protection of the bankruptcy Court. Ms. Dobben received no reply, no phone call, no investigation, and the property was foreclosed. YCST refused to respond to issues surrounding respondent claims and the foreclosure action being taken against her, and in the role as signatory on the loan trust they refused to acknowledge the responsibility or intervene in the foreclosure action done on behalf of that trust. For these reasons all claims for payment of YCST for defending American Home against Mona Dobben should be subordinated to respondants claims.

### 100.    MICHAEL STRAUSS CEO

As manager of American Home Mortgage Assets LLC, and a potential beneficiary of financial benefits upon foreclosure of this loan, and CEO of originator American Home Mortgage, and fiduciary party managing the bankruptcy until he was removed by the board, his claims should be subordinated to Mona Dobben's claims. 11 U.S.C. § 523(a)(2) [non-dischargeability based on false representation, fraud] 11 U.S.C. § 523(a)(4) [non-dischargeability based on fraud or defalcation of a fiduciary, and larceny]

**101.    <u>American Home Mortgage Assets LLC</u>**

This entity was managed by, Michael Strauss, Alan Horn,  Stephen Hozie, Thomas McDonagh,

and is the pass through special purpose entity created to securitize loans, and may have been the

beneficiary of the MGIC insurance claim although the Debtors estate was billed for the

foreclosure fees. Any claims made against the estate by this entity should be subordinated to

Mona Dobben's claims as they were the beneficiary of the fruits of the fraud. 11 U.S.C. §

523(a)(2) [non-dischargeability based on false representation, fraud] 11 U.S.C. § 523(a)(4) [non-

dischargeability based on fraud or defalcation of a fiduciary, and larceny]

**102.    <u>THE DEBTOR ENTITIES</u>**

American Home Mortgage Holdings acted as the parent company for all AHM debtor entities

and the finances were so commingled with extensive intercompany borrowings that in the end it

could not be unscrambled. The mortgage broker management arm, American Brokers Conduit

signs up brokers as agents and controls every aspect of the loan processing through its Wiz

Sentinel system and internal underwriters. It pays brokers in the form of yield spread premiums

"YSP" for delivering loans which American Home then securitizes in it own portfolios. The loan

servicing is also done by American Home Mortgage Servicing to further enrich themselves off

the loans they originate.  All debtor entity claims should be subordinated to Mona Dobben's

claims.

**103.    <u>RESPA & TILA VIOLATIONS DURING BANKRUPTCY</u>**

**<u>PRIMARY vs. INVESTMENT PROPERTY</u>**

American Home would like this Court to accept the dual argument that although American

Home processed the loan "thinking it was a primary residence," liable under TILA and RESPA,

they are not liable under those laws. American Home never communicated with Mona Dobben to

alter that view, and sent a foreclosure notice to that address instead of any other known address. This implies they viewed this as her primary residence. Now they assert that it wasn't her primary residence to avoid responsibility under statutes which only apply to primary residence. The only problem with this argument is, why then did they not notify her of the foreclosure action at the Sun City address? If they knew this was not her primary residence then they admit they conducted an illegal foreclosure with no proper notice. They cant' have it both ways, they either didn't comply because they believed the law stated they didn't have to due to it not being a primary residence. Or, they foreclosed illegally knowing it wasn't her primary residence. Which is it? The Court should ask them to pick your poison, and take a position.

104.     Further, the very notion that RESPA "qualified written requests" sent to servicers don't have to be responded to because this was not a primary residence, or TILA 1641(f)(2) disclosure does not apply for the same reason is lunacy. That's like saying that because you don't live there but you own the property the servicer doesn't have to respond to your needs. Certain **origination issues** are not covered if the property is not a primary residence, but other provisions are not limited by this. In fact, during the entire time of origination, American Home thought this was a primary residence

105.     This behavior of obfuscating the true parties in interest during the bankruptcy, could be charged under fraud, concealment, elder abuse, UDAP and considered unclean hands. Consider the great lengths these parties went to for concealment. Even putting a witness on the stand to assert they were not required to provide this information. This statute does not say this does not apply to non owner occupied residences.

**Section 131 of the Truth in Lending Act (15 U.S.C. 1641(f)(2)**
**Sec. 1641. - Liability of assignees**
**(f) Treatment of servicer**

**(1)** In general- A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section **unless the servicer is or was the owner of the obligation.**
(2) Servicer not treated as owner on basis of assignment for administrative convenience A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. **Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.**

106.    Deutsche Bank the Indenture Trustee for **AHMA 2007-5 Trust** sat on the unsecured creditors committee, and there is no evidence they recused themselves from the decision to object to this disclosure. The master servicer for **AHMA 2007-5 Trust,** Wells Fargo, was an active participant in this bankruptcy as well as a major player in the majority of American Home Trust. They were well aware of this request for disclosure. Had this disclosure been made in accordance with the statute, or under principles of good faith and fair dealing, it would have been Wells Fargo who was disclosed as master servicer. However all of these parties in cooperation decided to assert in a Federal Court to a Federal Judge, that a Federal law did not exist, or that there was not a requirement for such a disclosure. This disclosure would have exposed the listed parties thus the motive for the concealment.

107.    This Court can take judicial note that recently Senator Boxer introduced an amendment which enhanced the damages for noncompliance to this statute that the debtors insisted didn't exist. On May 20, 2009 President Barack Obama signed Public Law No: 111-22, a bill to prevent mortgage foreclosures and enhance mortgage credit availability. This law not only existed at the time these parties insisted it didn't, Congress was well aware of the abuses and enhanced the damages under this law. These actions go toward good faith and fair dealing, fraud, unclean hands and invoke the Court's powers in equity to award damages and subordination of

claims.  http://www.govtrack.us/congress/billtext.xpd?bill=s111-896

S. 896: **Helping Families Save Their Homes Act of 2009**

**RELEVANT SECTION** TITLE IV--FORECLOSURE MORATORIUM PROVISIONS
Sec. 404. Notification of sale or transfer of mortgage loans.
    SEC. 404. NOTIFICATION OF SALE OR TRANSFER OF MORTGAGE LOANS.
        (a) In General- **Section 131 of the Truth in Lending Act (15 U.S.C. 1641)** is amended
        by adding at the end the following:
        '(g) Notice of New Creditor-
                '(1) IN GENERAL- In addition to other disclosures required by this title, not later
                than 30 days after the date on which a mortgage loan is sold or otherwise
                transferred or assigned to a third party, the creditor that is the new owner or
                assignee of the debt shall notify the borrower in writing of such transfer,
                including--
                    '(A) the identity, address, telephone number of the new creditor;
                    '(B) the date of transfer;
                    '(C) how to reach an agent or party having authority to act on behalf of the
                new creditor;
                    '(D) the location of the place where transfer of ownership of the debt is
                recorded; and
                    '(E) any other relevant information regarding the new creditor.
        (b) Private Right of Action- Section 130(a) of the Truth in Lending Act (15 U.S.C.
        1640(a)) is amended by inserting 'subsection (f) or (g) of section 131,' after 'section
        125,'.
            108.       Mona Dobben petitioned the American Home Bankruptcy Court, docket

#1490 and a hearing was held on Oct. 31, 2007, in reference to numerous issues including

demand to know the true owner of the note or master servicer under TILA 1641(f)(2).  American

Home Mortgage Servicing has never complied. Now it is obvious that the party who they were

protecting was the executives of American Home Mortgage, managers and owners of AHMA

2007-5 Trust.

          109.       YCST attorney, Mr. Brady, on behalf of the debtor American Home

Mortgage  asserted in the bankruptcy Court that American Home Mortgage did not have to

comply with TILA 1641(f)(2).  Mr. Dickman, as witness for American Home Mortgage

servicing, asserted that mortgage investors did not want American Home Mortgage Servicing to

comply with TILA 1641(f)(2), stating they pay us to service and field all inquiries. Mr. Dickman stated clearly that the investor and the master servicer **does not** want them to give the borrowers this information.

There are multiple incidences of obfuscating the issue of true owner the note, conflicting paper trail records, and an outright refusal of honestly and integrity, including misrepresenting compliance under TILA 1641(f)(2) to the Bankruptcy Court on Oct 31, 2007.

110.    Mona Dobben sent American Home Mortgage a RESPA "qualified written request" on November 13, 2007 signed for on November 16, 2007 by American Home Mortgage Servicing. American Home Mortgage has never fully complied. Under the RESPA "qualified written request" which was sent by Mona Dobben to American Home Mortgage, they were required to acknowledge the request and comply.

111.    Under RESPA parties have 60 days to comply to requests and the parties in question have failed. RESPA letter was sent on November 13, 2007, and the hearing took place on Oct. 31, 2007 so by December 31, 2007 over 60 days had passed since the first request. No one has attempted to rectify the situation.

112.    Servicing standards also require servicers follow the FTC guidelines entitled -The Best Practices Standards set out by the Federal Trade Commission. This states that borrowers have a right to be treated fairly. Mortgage servicers may not:

- Intimidate or harasses customers who are behind on their payments
- Refuse to respond to borrowers' complaints or requests for information.
- Refuse to work out delinquencies using loss mitigation tools.
- Stampede homeowners into quick foreclosures.

113.    Mona Dobben sent American Home Mortgage Servicing a release to speak Paula Rush on September 25, 2007 and again on November 13, 2007. On December 19, 2007 after refusing to speak with Paula Rush on several occasions, Young Conaway Stargatt & Taylor, LLP sent Paula Rush and Mona Dobben ( at her correct address) letters stating they represent American Home Mortgage Servicing and that American Home Mortgage Servicing will not speak with Paula Rush. In addition they asserted that Mona Dobben should call Scott Ellerbee. Mona Dobben did attempt to call Scott Ellerbee several times and he refused to take her calls. Then, Paula Rush received communication from Nancy Hunt of Weiner, Brodsky, Sidman, Kider, who stated they represent American Home Mortgage Servicing and that American Home Mortgage Servicing would not respond to calls from Paula Rush. On April 11, 2008 a notice was forwarded from the property at 37th Street which stated a foreclosure would take place on April 29, 2008. This was the first notice Mona Dobben received as all notices were mailed to the property and all of the parties named herein knew through multiple communications this was not Mona Dobben's primary address.

114.    Mona Dobben was denied by American Home Mortgage Servicing under her RESPA "QWR." The attorney, Mr. Brady, speaking for American Home Mortgage, certified to a Federal Judge that TILA 1641(f)(2) is not a law they needed to comply with. The witness presented, Mr. Dickman, speaking for American Home, testified that in fact, that is what the master servicer and investor pays them to do. This is problematic because they are asserting that this is the "wishes" of those parties not to comply. The master servicer and indenture trustee have specific fiduciary and contractual obligations to the investors in the securitized trust. These obligations are clearly spelled out in the SEC filings and prospectus provided to investors in the