IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | ) | |
| | ) | Response Deadline: October 7, 2009 at 4:00 p.m. (ET) |
| Debtors. | ) | |

**CITIMORTGAGE, INC.'S REQUEST FOR JUDICIAL NOTICE**
**(Docket Nos. 11, 66, 1703, 1711, 2166, 2466, 3847, 4021, 4084, 4738 and 7248)**

In further support of its response to the Purchaser's[1] opposition [Docket no. 7248] to CitiMortgage, Inc.'s ("CMI") statement of its liquidated cure claim for the period between the Initial Closing that occurred on November 16, 2007, and the Final Closing that occurred on April 11, 2008, and pursuant to Rule 201 of the Federal Rules of Evidence (as both Rule 1101(b) of the Federal Rules of Evidence and Bankruptcy Rule 9017 make those rules applicable to this contested matter), CMI asks this Court to take judicial notice of the facts listed below for the reasons set forth below.

### Facts of Which CitiMortgage Asks This Court to Take Judicial Notice

1.  On August 6, 2007, the Debtors filed their "Motion for an Order Pursuant to Sections 105(a), 345, and 503(b) of the Bankruptcy Code (I) Authorizing Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code; [sic] and (IV) Granting Administrative Expense Status to Postpetition Intercompany Claims" (the "Cash Management Motion") [Docket no. 14].

---

[1] For each capitalized term or phrase CMI uses in this amended cure claim and objection that CMI has not separately defined in this amended cure claim and objection, CMI is using the term or phrase as this Court's Sale Order defines it.

1824639

2. In the Cash Management Motion, the Debtors repeatedly emphasized the importance of their servicing business, including, for example, the Debtors statements:

(a) "A large component of AHM's business is the servicing of loans, which is conducted through [Debtor] AHM Servicing" [id. at ¶ 9];

(b) "AHM continues to conduct it servicing business, which constitutes a valuable asset of the Debtors' estates" [id.];

(c) "[A] significant portion of the Debtors' business relates to the servicing of loans through [Debtor] AHM Servicing" and those loan servicing functions typically include "all aspects of servicing mortgage loans" [id. at ¶ 23]; and

(d) Preserving the mortgage servicing rights and the Debtors' servicing platform was "critical to maximizing and maintaining the value of the Debtors' estates" [id. at ¶ 24]

3. On August 7, 2007 the Court granted that motion and entered its "Order Pursuant to Sections 105(a), 345, and 503(B)(1) of the Bankruptcy Code (I) Authorizing the Debtors to Maintain and Use Existing Bank Accounts and Business Forms, (II) Authorizing the Debtors to Maintain and Use Existing Cash Management System, and (III) Extending the Debtors' Time to Comply with Section 345 of the Bankruptcy Code" (the "Cash Management Order") [Docket no. 66].

4. The Cash Management Order provides, in pertinent part:

> The Debtors shall perform each of their Securitization Servicing Functions in accordance with the terms and conditions of the Securitization Documents until the Termination Date (as defined below). Without limiting the generality of the foregoing, the Debtors are authorized and directed to make all required Advances and to perform indemnification obligations as provided under the Securitization Documents without further application to, or order of, this Court. In addition, parties to the securitization transactions are authorized free and clear of any constraints imposed by the Bankruptcy Code including, without limitation,

section 362 of the Bankruptcy Code, to continue any customary prepetition practices of billing, reporting or otherwise making demands on each other as to amounts due and to the extent that the relevant parties continue to agree to do so, of "netting" amounts currently due to and from such parties.

[Id. at 6].

5. The Cash Management Order further provides:

The reasonable costs of such trustee monitoring efforts shall be considered a reasonable expense of administration of the securitization trust reimbursable under the indemnification provision of the Securitization Documents or, alternatively, such expenses shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2) to the extent provided in the relevant Securitization Documents.

[Id. at 7-8].

6. Fleshing out the "trustee monitoring efforts" referenced in that section, the Court ordered that parties under master servicing agreements were expressly authorized "to monitor the Debtors' compliance with the Securitization Servicing Functions." [Id. at 7].

7. While the Court's Cash Management Order does not define "Securitization Servicing Functions," the Debtors' Cash Management Motion included in its definition of that term the performance of "securities related computational, reporting and compliance tasks." [Cash Management Motion at ¶ 26].

8. CMI is the counterparty to two servicing agreements that are Assumed Contracts the Debtors listed on: (a) Schedule I to the Sale Order [Schedule I [Docket no. 1703] at 1, 16-17 at index 1.1(j)am and 21 at index 1.1(j)bf]; and (b) Exhibit A to the Purchaser's Cure Order [Exhibit A [Docket no. 4021] at 12-13 at index 1.1(j)am, 17 at index 1.1(j)bf and 38].

9. On November 26, 2007, the Debtors filed their Interim Period Cure Schedule. [Docket no. 2166].

10. There, the Debtors listed the Proposed Interim Cure Amounts under both of these CMI Assumed Contracts as -0-. [Id., Ex. A at 1, 16-17 and 21]

11. On May 19, 2008, the Debtors filed their Notice of Proposed Purchaser's Cure Amounts. [Docket no. 4084].

12. There, again, the Debtors listed the Purchaser's Cure Amounts as -0-. [Id. at 12-13 and 17].

13. On June 19, 2008, CMI timely objected to the Debtors' proposed Purchaser's Cure Amounts. [Docket no. 4738].

### Reasons Why Judicial Notice of These Facts Is Appropriate

14. Rule 201(d) of the Federal Rules of Evidence directs that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." Rule 1101(b) of the Federal Rules of Evidence and Bankruptcy Rule 9017 makes the Federal Rules of Evidence applicable to this contested matter.

15. Rule 201(b) of the Federal Rules of Evidence sets forth the types of facts that are properly the subject of judicial notice. It states:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

See generally Oran v. Stafford, 226 F.3d 275, 288 (3d Cir. 2000).

16. Here, the various facts are ones capable of accurate and ready determination by resort to this Court's docket and records for these administratively consolidated cases. Accordingly, no interested party can reasonably question the accuracy of these facts.

17.   CMI believes it has provided the necessary information with the reference to the docket numbers of the involved pleadings and other documents.  (CMI can, however, on reasonable and timely request provide hard copies of the pertinent documents.)

18.   In this contested matter, these previously-filed pleadings are the proper subject of judicial notice.  These pleadings are relevant to the reasons why CitiMortgage incurred attorneys' fees and costs during the interim period, and its rights to recover those fees and costs.  See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Pship., 507 U.S. 380, 297 (1993) (approving court's taking judicial notice of prior filings in Bankruptcy Court); Abood v. Detroit Bd. of Ed., 431 U.S. 209, 216 n.9 (1977) (contract contained in record as matter of which lower court took judicial notice); Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 256 n.5 (3d Cir. 2006) (recognizing that courts may take judicial notice of prior judicial proceedings); see also In re Indian Palms Assocs. Ltd. (Nantucket Investors II v. Cal. Fed. Bank), 61 F.3d 197, 205-206 (3d Cir. 1995) ("it is not seriously questioned that the filing of documents in the case record provides competent evidence of certain facts – that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made"; doctrine of judicial notice provides alternate basis to allow this evidence).

19.   Further, these pleadings are relevant because they are the basis for applying the doctrine of judicial estoppel as against the Purchaser.  The Court should judicially estop the Purchaser from now taking positions that are not consistent with the positions it and the Debtors (as the Purchaser's predecessors-in-interest) took in these previously-filed pleadings, and based on which it and the Debtors successfully obtained this Court's orders.  Judicial estoppel prevents a party from "playing fast and loose with the courts" by adopting conflicting positions in

different legal proceedings or different stages of the same proceeding. Delgrosso v. Spang & Co., 903 F.2d 234, 241 (3d Cir.1990) (internal quotation marks and citations omitted) (employer judicially estopped from taking inconsistent position from position it assumed in earlier phase of litigation). It is particularly appropriate for the Court to judicially estop litigants from taking inconsistent positions "where the party benefited from its original position." Id. at 242.

20. By filing this motion, CMI does not waive, and, therefore, expressly reserves, its rights to assert that these pleadings are further relevant because of the various admissions contained in the Debtors' pleadings, which admissions bind both the Debtors and the Purchaser under Rule 801(d)(2) of the Federal Rules of Evidence.

WHEREFORE, for all of these reasons, CMI asks that this Court take judicial notice of these facts, to accept these facts as being both proved and conclusive, and to judicially estop the Purchaser from now taking an inconsistent position from its and the Debtors' positions in previously-filed pleadings.

Dated: October 6, 2009

**MORRIS JAMES LLP**

_____
Brett D. Fallon (No. 2480)
Jeffrey R. Waxman (No. 4159)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 888-6888
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com
       jwaxman@morrisjames.com

Andrew J. Petrie (*admitted pro hac vice*)
FEATHERSTONE PETRIE DESISTO LLP
600 17th Street, Suite 2400S
Denver, Colorado 80202-5424
Telephone: (303) 626-7139
Facsimile: (303) 626-7101
Email: apetrie@featherstonelaw.com

*Attorneys for CitiMortgage, Inc.*