<u>**Exhibit C**</u>

**Debtors' Stay Objection**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------ x
In re:                                                 :    Chapter 11
                                                       :
AMERICAN HOME MORTGAGE                                  :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,        :
                                                       :    Jointly Administered
                                                       :
                              Debtors.                 :    Ref. Docket Nos. 3585 and 3661
------------------------------------------------------ x
```

**DEBTORS' LIMITED OBJECTION TO EMERGENCY MOTION OF
LAURA BEALL FOR AN ORDER FOR RELIEF FROM THE AUTOMATIC STAY
UNDER SECTION 362 OF THE BANKRUPTCY CODE**

American Home Mortgage Holdings, Inc., a Delaware corporation, and certain of

its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the

above cases (collectively, the "Debtors"),[1] hereby file their limited objection to the *Emergency*

*Motion of Laura Beall for an Order for Relief From the Automatic Stay Under Section 362 of the*

*Bankruptcy Code* [Docket No. 3585] (the "Lift Stay Motion"). In support of this limited

objection, the Debtors respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.        Through the Lift Stay Motion, Laura Beall (the "Movant") requests relief

from the automatic stay to initiate a lawsuit (the "Planned Lawsuit") in the United States District

Court for the Eastern District of Virginia (the "District Court") against, among others, AHM

Corp. The Movant contends that relief from the stay is necessary so that she may be able to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation
(3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979);
American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home
Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC
("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc.
("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York
corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except
for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

"exercise her legal right of due process in order to save her home of 22 years". Lift Stay Motion at p. 1.

2.    At this stage of these chapter 11 cases, it is crucial that the Debtors' management and few remaining employees focus their attention on, among other things, negotiating and conducting orderly asset sales, formulating and negotiating a chapter 11 plan or plans, and minimizing the liabilities of the Debtors' estates. Put differently, the Debtors should not be compelled to divert the focus of their few remaining employees on the Planned Lawsuit to the potential detriment of other creditors and parties in interest.

3.    The Debtors are cognizant that the issues raised in the Lift Stay Motion are of great import to the Movant, and understand why she desires to proceed with the Planned Lawsuit without further delay. However, a party requesting relief from the automatic stay to proceed with litigation against a debtor normally has previously filed a complaint or attaches a draft complaint to the motion. Here, the Movant has neither previously filed a complaint nor attached a draft complaint to the Lift Stay Motion. Rather, the Lift Stay Motion is a lengthy and somewhat confusing combination of fact and law, which fails to provide adequate information regarding the details of the Planned Lawsuit. Accordingly, so that the Debtors may determine the prejudice these estates will face if the Movant is permitted to commence the Planned Lawsuit and the Court can adequately balance the competing interests of the Debtors and the Movant, the Debtors request that the Court require the Movant to provide a draft complaint for the Planned Lawsuit prior to the consideration of whether cause exists to modify the automatic stay to permit the commencement of the Planned Lawsuit.

## RELEVANT BACKGROUND

4.     On April 8, 2008, the Movant filed the Lift Stay Motion, by which she seeks relief from the automatic stay so that she may file a complaint (the "Complaint") in the District Court against AHM Corp., among others.  As the basis for her Complaint, Movant alleges a litany of common law causes of action and violations of her rights under various federal statutes.

5.     On April 10, 2008, the Court entered an Order [Docket No. 3661] scheduling a hearing on the Lift Stay Motion for April 24, 2008 at 10:00 a.m. (ET).

6.     The Court has entered an Order [Docket No. 1708] in these cases establishing that any entity holding a prepetition claim against the Debtors was required to file a proof of claim on or before January 11, 2008 (the "Bar Date").  As of the filing of this Motion, approximately eighty proofs of claim, not including duplicate claims, have been filed concerning litigation arising from alleged prepetition conduct of the Debtors.

7.     On January 29, 2008,[2] Movant filed her proof of claim (the "Claim") against the Debtors, by which she seeks damages in the amount of $1,050,000.  In support of the Claim, Movant submitted a document entitled "Complaint in Support of Proof of Claim" (the "Claim Attachment").  See Claim, a copy of which is attached hereto as Exhibit A.  Pursuant to the Claim Attachment, Movant enumerates approximately twenty causes of action by which she contends the Debtors are liable.

## OBJECTION

8.     Since the filing of these cases, the Movant has been no stranger to the Debtors or this Court; filing multiple pleadings, attending numerous hearings, and directing

---

[2]  The Debtors reserve any and all rights to object to the Claim for any reason, including but not limited to, the Movant's failure to file the Claim prior to the Bar Date.

numerous written and telephonic inquiries to, among others, the Debtors, their counsel, the Office of the United States Trustee, and certain other parties in interest. Indeed, because of the Movant's active participation in these cases, the Debtors recognize that the Lift Stay Motion is of great import to the Movant. The Debtors, through this limited objection, are not attempting to unreasonably delay the commencement of the Planned Lawsuit. In fact, the Debtors have cooperated with the Movant; providing her with information regarding the owner of her mortgage and responding to many of her numerous inquiries. However, the Debtors, in the exercise of their fiduciary duties to all creditors to maximize the value of the Debtors' estates, cannot fully or adequately respond to the Lift Stay Motion without knowing with specificity the potential parties to be named or bases of the numerous allegations.

9.    If the Lift Stay Motion is any indication, the Movant plans to commence an action whereby she will allege a virtually unending list of causes of action; naming any party that even had the slightest involvement with her mortgage. Unless the Movant's complaint specifically asserts causes of action that are within the realm of sustainability, and names parties against whom a grievance may actually exist, the Movant should not be permitted to proceed with the Planned Lawsuit.

10.    To enable the Debtors to adequately analyze and respond to the prejudice to the Debtors the commencement of the Planned Lawsuit will cause and to permit the Court to adequately consider (i) the prejudice that may be suffered by the Debtors if the automatic stay is lifted; (ii) balance the hardships facing the Debtors and the Movant if the stay is lifted; and (iii) the probability of success on the merits of the Planned Lawsuit, the Debtors request that the Court require the Movant to provide a draft complaint for the Planned Lawsuit to the Debtors prior to the consideration of whether cause exists to modify the automatic stay to permit the

4

commencement of the Planned Lawsuit. Again, it is not the Debtors' intention to unreasonably delay the commencement of the Planned Lawsuit if cause is demonstrated by the Movant to modify the automatic stay. Therefore, if the draft complaint does not contain the overly-broad, and in many instances, improper allegations that have plagued the Movant's prior submissions and specifically identifies the parties to be named as defendants, the Debtors may consent to the entry of an agreed form of order that permits the Movant to commence the Planned Lawsuit, subject to: (i) the requirement that the Movant not be permitted to collect any damages from the Debtors that may be realized through the prosecution of the Planned Lawsuit, and (ii) the Debtors' right to seek to include the Movant in any alternative dispute resolution process that they may establish in these cases for dealing with claims such as those alleged in the Lift Stay Motion.[3] If, however, the Movant provides the Debtors with a draft complaint that is objectionable for the reasons identified herein, the Debtors propose that the Lift Stay Motion be scheduled for the omnibus hearing that is at least ten days after receipt of the draft complaint by the Debtors.

## **RESERVATION OF RIGHTS**

11.    The Debtors expressly reserve the right to amend, modify, or supplement this limited objection, to seek authority to file a reply to any response thereto, and to file additional objections to the relief sought in the Lift Stay Motion based upon additional information that they may obtain.

---

[3] Nothing herein shall be construed to be an admission of liability or waiver of any and all rights, claims and defenses with respect to the Planned Lawsuit in the event a complaint is filed by the Movant.

DB02:6755892.3                                                                                                066585.1001

WHEREFORE, the Debtors respectfully request that the Court require the Movant provide the Debtors with a draft of the complaint Movant intends to file in the District Court prior to consideration of whether cause exists to modify the automatic stay.

Dated:    Wilmington, Delaware
          April 22, 2008

                    YOUNG CONAWAY STARGATT & TAYLOR, LLP

                    _____
                    James L. Patton, Jr. (No. 2202)
                    Robert S. Brady (No. 2847)
                    Pauline K. Morgan (No. 3650)
                    Matthew B. Lunn (No. 4119)
                    Kenneth J. Enos (No. 4544)
                    The Brandywine Building
                    1000 West Street, 17th Floor
                    Wilmington, Delaware 19801
                    Telephone: (302) 571-6600
                    Facsimile: (302) 571-1253

                    Counsel for the Debtors and Debtors in Possession

6

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

| In Re: | Chapter 11 |
|---|---|
| American Home Mortgage Holdings, Inc., et al. **Debtors.** | Case No. 07-11047 (CSS) Jointly Administered |

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al
07-11047 (CSS)      0000009845

| Name of Debtor Against Which Claim is Held | Case No. of Debtor **0711047** |
|---|---|

*American Home Mtg Holding Inc. et al*

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

*Laura A. Beall*
*11002 Blue Roan Rd.*
*Oakton, VA 22124*

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone number:
Email Address:

Account or other number by which creditor identifies debtor:

Check here if this claim:
☐ replaces     ☐ amends a previously filed claim, dated:

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other *Legal Action + Regulatory action* (explain)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last Four Digits of your SS#: **5 7 3 2**
Unpaid compensation for services performed
from _____ to _____
(date)              (date)

**2. Date debt was incurred:**
*5/20/04*

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:** $ *525,000.00*   *525,000.00* +

| (unsecured nonpriority) | (secured) | (unsecured priority) | = | (Total) |

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. ☒ Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☒ Real Estate     ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $ *525,000.00*
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6. Unsecured Nonpriority Claim:** $ *525,000.00*
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. ☐ Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
**DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED / RECEIVED**

JAN 29 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| *1-21-08* | *Laura Beall,* *Laura Beall* |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In particular types of cases or circumstances such as bankruptcy cases that are not filed voluntarily by a debtor, there may be exceptions to these general rules.*

## DEFINITIONS

*Debtor*
The person, corporation, or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*
A creditor is any person, corporation, or other entity to whom the debtor owed a debt on the date that the bankruptcy case was filed.

*Proof of Claim*
A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor at the time the bankruptcy case was filed (the amount of the creditor's claim). This form must be filed with the clerk of the bankruptcy court where the bankruptcy case was filed

*Secured Claim*
A claim is a secured claim if the creditor has a lien on property of the debtor (collateral) that gives the creditor the right to be paid from that property before creditors who do not have liens on the property.

Examples of liens are a mortgage on real estate and a security interest in a car, truck, boat, television set or other item of property. A lien may have been obtained through a court proceeding before the bankruptcy case began. In some states a court judgment is a lien. In addition, to the extent a creditor also owes money to the debtor (has a right of setoff), the creditor's claim may be a secured claim. *(See also Unsecured Claim)*

*Unsecured Claim*
If a claim is not a secured claim it is an unsecured claim. A claim may be partly secured and partly unsecured if the property on which a creditor has a lien is not worth enough to pay the creditor in full.

*Unsecured Priority Claim*
Certain types of unsecured claims are given priority, so they are to be paid in bankruptcy cases before most other unsecured claims (if there is sufficient money or property available to pay these claims). The most common types of priority claims are listed on the proof of claim form. Unsecured claims that are not specifically given priority status by the bankruptcy laws are classified as *Unsecured Nonpriority Claims*.

## Items to be completed in Proof of Claim form (if not already filled in)

**Name of Debtor and Case Number:**
Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number.

| | |
|---|---|
| American Home Mortgage Holdings, Inc | 07-11047 |
| American Home Mortgage Investment Corp | 07-11048 |
| American Home Mortgage Acceptance, Inc | 07-11049 |
| American Home Mortgage Servicing, Inc | 07-11050 |
| American Home Mortgage Corp | 07-11051 |
| American Home Mortgage Ventures LLC | 07-11052 |
| Homegate Settlement Services, Inc. | 07-11053 |
| Great Oak Abstract Corp | 07-11054 |

**Information about Creditor:**
Complete the section giving the name, address, and telephone number of the creditor to whom the debtor owes money or property, and the debtor's account number, if any. If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form.

1. **Basis for Claim:**
   Check the type of debt for which the proof of claim is being filed. If the type of debt is not listed, check "Other" and briefly describe the type of debt. If you were an employee of the debtor, fill in your social security number and the dates of work for which you were not paid.

2. **Date Debt Incurred:**
   Fill in the date when the debt first was owed by the debtor.

3. **Court Judgments:**
   If you have a court judgment for this debt, state the date the court entered the judgment.

4. **Total Amount of Claim at Time Case Filed:**
   Fill in the applicable amounts, including the total amount of the entire claim. If interest or other charges in addition to the principal amount of claim are included, check the appropriate place on the form and attach an itemization of the interest and charges.

5. **Secured Claim:**
   Check the appropriate place if the claim is a secured claim. You must state the type and value of the property that is collateral for the claim, attach copies of the documentation of your lien, and state the amount past due on the claim as of the date the bankruptcy case was filed. A claim may be partly secured and partly unsecured. (See DEFINITIONS, above).

6. **Unsecured Nonpriority Claim:**
   Check the appropriate place if you have an unsecured nonpriority claim, sometimes referred to as a "general unsecured claim". (See DEFINITIONS, above.) If your claim is partly secured and partly unsecured, state here the amount that is unsecured. If part of your claim is entitled to priority, state here the amount not entitled to priority.

7. **Unsecured Priority Claim:**
   Check the appropriate place if you have an unsecured priority claim, and state the amount entitled to priority. (See DEFINITIONS, above). A claim may be partly priority and partly nonpriority if, for example, the claim is for more than the amount given priority by the law. Check the appropriate place to specify the type of priority claim.

8. **Credits:**
   By signing this proof of claim, you are stating under oath that in calculating the amount of your claim you have given the debtor credit for all payments received from the debtor.

9. **Supporting Documents:**
   You must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents. If documents are not available, you must attach an explanation of why they are not available.

## COMPLAINT IN SUPPORT OF

## PROOF OF CLAIM

### PRELIMINARY STATEMENT

I am not a disgruntled borrower, but the victim of a crime. The intention of

Congress was not to protect a criminal enterprise through use of the bankruptcy court. It

is very clear under the bankruptcy code that American Home Mortgage can not be

protected from criminal acts or regulatory remedies. The allegations contained in this

complaint do contain actions of which criminal penalties and prosecution are possible.

The regulatory remedies contained within this complaint are clearly available and the

bankruptcy code does not allow for usurping those rights.

Congress did not favor giving perpetrators of fraud a fresh start (by allowing them to
wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it
wrote the Bankruptcy Laws. Accordingly, Section 523(a)(2)(A) of the Bankruptcy
Code excepts from discharge in bankruptcy "any debt . . . for money, property, services, or an
extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses,
a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

The Supreme court has ruled that it is not just the value of the property, but that also
includes treble and punitive damages.

It is not only the actual value of the "money, property, services, or . . . credit" the debtor
obtained through fraud that is non-dischargeable in bankruptcy, but also treble "punitive"
damages and attorneys fees and costs related to the fraud. This was made clear in a
March 25, 1998 decision of the Supreme Court of the United States in Cohen v. de la
Cruz.

Debts which are non-dischargeable include:
(a) Debts incurred due to false statements made with the intent to deceive

(b) Fraud committed in a fiduciary capacity, such as embezzlement or larceny

(c) Punitive damage claims for "willful and malicious" acts
§ 362(b)(4): permits commencement or continuation of action to enforce police or
regulatory powers

    B. Criminal Proceedings

1. § 362(b)(1) excepts from the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor"

2. Cases

a. *Asset Forfeitures*

(1) *In re Ryan*, 15 B.R. 514 (Bankr. D. Md. 1981)("*Ryan I*")

§ 541(a) is "broad and all embracing" and brings into the estate "all legal and equitable interests of the debtor in property."

*Excepted From The Stay Argument*:

§ 362(b)(4) only excepts stay imposed by § 362(a)(1), *i.e.*, actions against the debtor. The stay of actions against property in §362(a)(2)(3) and (4) are unaffected by (b)(4). Forfeiture is at least in part an action against property.

Forfeiture is intended neither to protect health or safety nor to stop or prevent fraud, environmental or consumer protection, safety, or similar powers.

"Claim" in bankruptcy is defined as: (A) a right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. 11 U.S.C. § 101(5). "Debt" is defined as a liability on a claim. 11 U.S.C. § 101(12).

## COMPLAINT

1.   Ms. Beall applied with Eagle Funding Group, LTD,  agent for American Brokers Conduit on March 15, 2004. Eagle Funding Group directly pledged the loan immediately to American Home Mortgage and did not shop the loan with other lenders, acting solely as agent for American Brokers Conduit a wholly owned subsidiary of American Home Mortgage. This arrangement is the business model of American Home Mortgage. Using this arrangement American Home Mortgage controls the entire loan process and therefore is responsible for every action taken by the broker Eagle Funding

Group.

2    Eagle Funding Group earned a 1% loan origination fee, a discount fee

purported to obtain a lower interest rate and other fees for services. The total cost of

refinancing was $525,000, therefore stealing equity from Ms. Beall's home. This was

a continuing tort trapping Ms. Beall in a financially devastating loan from which she can

not escape short of court intervention.

3.    The bait & switch business model combined with misrepresentations are

routinely used by American Home Mortgage. The fraudulent inducement ensnared Ms.

Beall as she requested a 20 year fixed rate loan at 4.8%, and was switched  to a

3/27, predatory loan.

4.  Eagle Funding and American Brokers Conduit failed to give Ms. Beall her

good faith estimate within 3 days of closing, or her letter of credit rejection for the

program she applied for.

5.  Instead they set the bait and waited until the last minute to trap her into a loan

she did not apply for.  Even at that last minute Eagle Funding Group failed to disclose the

material terms of the loan. It was an ARM mortgage tied to a Treasury

Security, 11th district of funds and/or 6 month T-Bill with a margin of 2.5%

to 2.75% at each adjustment, with a 2% rate cap up or down each reset. Terms which

would easily confuse anyone and a practice American Home Mortgage used as normal

course of business to confuse consumers.  **SEE** **EXHIBIT A**

On May 7, 2004 Eagle Funding Group gave Ms. Beall a Federal TIL
Disclosure Statement:
APR 5.8%
Total Finance Charge: $898,858.97
Total of Payments: $1,410,938.40

No prepayment penality.
3/27 program

6. On the Variable Rate Feature of the TIL Disclosure Statement it stated:

The Current Index Rate is 1.348%. Ms. Beall mentioned to the representative of Eagle

Funding Group who was attending the closing, that this appeared to be a good index with

a rate of 1.348%. They reply was, yes it is. In fact all parties asserting this knew that Ms.

Beall misunderstood that this was not the rate but an index which was based on an index

which had been steadily rising. They failed to clarify or explain this figure to Ms. Beall

and chose to let her be misled into thinking this was a good loan.

7. A 2% prepayment penalty was added at the last minute when Ms. Beall was

promised none. This is a pattern in the normal course of business for American Home

Mortgage. **SEE EXHIBIT B**

8. American Home Mortgage through American Brokers Conduit proceeded to charge

Ms. Beall processing fees, of various nature, to total up to the $525,000- she was allowed

to borrower keeping her LTV 75%.

9. American Home Mortgage through American Brokers Conduit paid the YSP to Eagle

Funding Group out of her loan proceeds. This was not included as a cost in the APR.

10. Ms. Beall's final Truth in Lending did include substantial overcharges, which entitle

her to full loan rescission and all remedies associated with rescission under TILA. For a

borrower in foreclosure, which Ms. Beall was on December, 2007, the tolerance for full

loan rescission is $35 mistake or overcharge. The refund check she received is

confirmation that this tolerance was breached. **SEE EXHIBIT C**

Failure to make clear, conspicuous, and accurate material disclosures also triggers an
extended right of rescission. 12 C.F.R. 226.23(a)(3). Material disclosures include the: (1)

annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule. 12 C.F.R. 226.23(a)(3) n.48.

There are statutory "tolerances" for the APR and the amount financed and finance charge. Violations are deemed non-material if they fall within these tolerances.

The APR tolerance is .125% for regular loans and .25% for irregular (variable-rate) loans. 12 C.F.R. 226.22(a).

The finance charge tolerance for defendants in foreclosure actions is $35 (for rescission), 12 C.F.R. 226.23(h), and $100 (for monetary damages), 12 C.F.R. 226.18(d)(1)

Upon rescission, "the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge". 12 C.F.R. 226.23(d)(1).

Creditors are also liable for actual damages, statutory damages in the amount of twice the finance charge, up to $2,000, and attorney's fees and costs. 15 U.S.C. § 1640(a).

11. Ms Beall sent a TILA loan rescission letter and RESPA qualified written request on

August 18, 2007. American Home Mortgage failed to take required action to rescind the

loan and therefore owes additional damages.

Within 20 days the creditor must take any action required to cancel the security interest and must return any money paid on the loan (step two). 12 C.F.R. 226.23(d)(2).

Failure to respond to the rescission notice as spelled out above results in another violation and an addition award of statutory damages. *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Mayfield v. Vanguard Savings & Loan*, 710 F. Supp. 143, 145 (E.D. Pa. 1989).

12. American Home Mortgage refuses to disclose under TILA 1641(f)(2) who in fact is

the master servicer or true owner of Ms. Beall's note, nonetheless, this assignee is subject

to the same claims, counterclaims, or claims in recoupment as American Home

Mortgage.

The rescission remedy runs against any assignee: "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). *Mount v. LaSalle Bank Lake View*, 926 F.Supp. 759 (N.D.Ill. 1996); *Stone v. Mehlberg*, 728 F.Supp. 1341 (W.D.Mich. 1989).

Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents. 15 U.S.C. § 1641(a).

**EXHIBIT D**
Final TILDS

## ECOA

14. American Home Mortgage routinely utilizes bait and switch tactics in violation of ECOA. It is clear from both American Home Mortgage data on SEC filings and HMDA data that many practices

15. American Home Mortgage did charge Ms. Beall and routinely charges single white female borrowers a prepayment penalty when in fact another borrower may be offered different terms in violation of ECOA.

16. American Home Mortgage routinely asserts to single white females that certain terms are unavailable when in fact they are routinely made available to borrowers of a different gender with substantially the same credit profile.

16. Ms Beall was targeted to fulfill a need for certain types of loans to complete credit mix profiles of American Home Mortgage securitized trusts. American Brokers Conduit is an entity that goes out and searches for certain types of loans for securitized pools. American Brokers Conduit is the American Home Mortgage entity that seeks out certain types of loans in violation of ECOA instead of offering terms requested by borrowers or terms that borrowers could have otherwise obtained in an open fair marketplace.

17. American Home Mortgage engaged in a pattern and practice of violations of VA state and Federal consumer laws.

## Equal Credit Opportunity Act (ECOA)

**Purpose:**
Created to prohibit discriminatory treatment by lenders. ECOA's credit notification provision requires lenders to notify consumers, within 30 days of receiving a completed application for credit, of what action is being taken on that application. This provision is intended to protect consumers from bait-and-switch tactics: "The [credit notification provision] was designed to avoid bait by a small loan for home improvements and switch to a large loan clearing title for a first mortgage. The practice of the lender was not to give notice of the counteroffer when it had a de facto completed application for the smaller loan and knew it was impracticable. Instead, the lender created the fiction that it was accepting an offer which the lender itself had created for the larger loan." *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444, 462 (E.D. Pa. 1998).

**Sources of law:**
15 U.S.C. §§ 1691-1691f.

Federal Reserve Board Regulation B, 12 C.F.R. 202, and Official Staff Commentary.

**Substantive requirements:**
Creditors sometimes offer a consumer certain credit terms only to change them later, usually at closing, perhaps by claiming that they were unable to obtain the promised terms and then offering new terms. To prevent lenders from taking advantage of consumers in this way, ECOA requires notification of the creditor's action within 30 days of receipt of the application. The idea behind the notice requirement is that "if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices." *Jochum v. Pico Credit Corp.* 730 F.2d 1041, 1043 (5th Cir.1984).

Specifically, the ECOA regulations provide that "[a] creditor shall notify an applicant of action taken within 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." Reg. B, 12 C.F.R. § 202.9(a)(1)(i).

An application for credit is considered "complete" when the creditor receives, through its exercise of due diligence, the last piece of information regularly obtained in the loan application process." *Dufay v. Bank of Am. N.T. & S.A.*, 94 F.3d 561, 564 (9th Cir. 1996) (citing 12 C.F.R. § 202.2(f).) In other words, an application is complete when a creditor has enough information to determine whether or not the consumer qualifies for a loan. *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444, 461 (E.D. Pa. 1998).

If the action taken by the creditor is an "adverse action," then the notification must be in writing. 12 C.F.R. § 202.9(a)(2). If the creditor rejects the application and such rejection is coupled with a counteroffer accepted by the consumer, then there has been no "adverse action," and the creditor can give oral (versus written) notification. *Dorsey v. Citizens & Southern Financial Corp.*, 678 F.2d 137 (11th Cir. 1982); *Diaz v. Virginia Hous. Dev. Auth.*, 117 F. Supp. 2d 500 (E.D. Va. 2000); *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444 (E.D. Pa. 1998).

**Statute of limitations:**
2 years for affirmative claims. 15 U.S.C. § 1691e(f).

**REMEDY REQUESTED:**
Ms. Beall is entitled to the more favorable terms offered plus actual damages, punitive damages up to $10,000, equitable relief, attorney's fees and costs. 15 U.S.C. § 1691e.

Eagle Funding Group processed an application for a 20 year fixed rate loan at 4.8%. Ms. Beall requests full loan rescission and these more favorable loan terms.

## FRAUDULENT CONCEALMENT

18.  Due to the fraudulent concealment all of Ms. Beall's remedies are available and the fraud involved tolls all statute of limitations. 10/24/07 – Upon receiving her loan file from American Home Mortgage, Ms. Beall discovered a lock in sheet initiated by Eagle Funding Group with American Brokers Conduit dated 3/15/04, the day she applied for her loan. It stated that she was locked into a 3/27 at 5.25% until 6/18/04.

19.  Ms. Beall was set up from the time she made loan application to be in this loan. Her loan application was never submitted for the 20 year loan she applied for, or the 7/1 and/or 10/1 she discussed as potential alternatives.

20. Ms. Beall's  credit score was excellent, her home had a 75% LTV, she was employed 27 years on the same job, and had no 30 day late reporting for 7 years, with an income of over $140,000. In fact, her loan terms have now been compared with other almost identical profile borrowers and it has been determined that she qualified for a prime loan of her choosing at that time. She should have received a rate of as low as 5.25% locked in for at least five years or a low fixed rate if she chose of  under 6%.

21. The 3/27 loan she was tricked into "is" considered a "predatory loan" by the Federal Reserve and FDIC. Eagle Funding Group and American Brokers Conduit set up Ms.

Beall to be in this loan.

22. Upon information and belief, American Brokers Conduit, was

actively seeking 3/27's for their loan pools, and offered Eagle Funding Group incentives

in the form of a YSP to put borrowers into these loans. YSP are in violation of RESPA if

they are not for actual services rendered but incentive or kickback for delivering certain

loan terms. This fact is now clear, that American Home Mortgage as a normal course of

business, used YSP incentive rate sheets as a business model they defined quite clearly,

as an incentive based bait & switch to trap unsuspecting borrowers into predatory loans.

## BREACH OF CONTRACT

23. Eagle Funding and American Brokers Conduit/American Home Mortgage breached

the contract with Ms. Beall by failing in the implied duty of good faith and fair dealing.

Throughout this complaint these elements exist.

**Substantive requirements:**
The parties to a contract have a duty to honor their obligations thereunder, and they also
have an implied duty of good faith and fair dealing. *Saunders v. Michigan Avenue
National Bank*, 278 Ill. App. 3d 307, 315, 662 N.E.2d 602 (1st Dist. 1996).

**Remedies:**
Actual damages, specific performance.

**Statute of limitations:**
10 years for affirmative claims.
Unlimited as a defense to foreclosure in the nature of a recoupment or setoff

## CONTRACT LAW

24. Eagle Funding and American Brokers Conduit/American Home Mortgage breached

the contract with Ms. Beall by using Fraud and misrepresentation to induce her into the

contract. Throughout this complaint these elements exist.

The fundamental requirements for forming a binding contract are an offer, acceptance,
and consideration. To be enforceable, a contract must be formed by competent parties,

who <u>give their consent,</u> to a legal agreement. A party <u>may be excused</u> from performing under a contract by proving a <u>defense to breach of contract.</u> Such defenses include <u>duress, fraud and misrepresentation, mistake, lack of consideration, and the statute of frauds.</u>

## BREACH OF FIDUCIARY DUTY

25.  Eagle Funding acting as agent for American Brokers Conduit/American Home

Mortgage breached their fiduciary duty to Ms. Beall by accepting a YSP in return for

asserting certain terms in the mortgage loan transaction.

**Substantive requirements:**
The specific elements here are: (1) a fiduciary duty was created; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 53, 205 Ill. Dec. 443, 643 N.E.2d 734 (1994). **<u>Brokers often secure a loan at a higher-than-par rate and pocket a "yield-spread premium" (essentially a commission on the higher rate) from the lender.</u>** Though the borrower may see the term "yield-spread premium" on the loan documents, the borrower has no idea what this means.

## CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

26.  Eagle Funding and American Home Mortgage practices were unfair and deceptive

and Ms. Beall relied on the deception to her detriment. The practices outlined herein

constitute commercial unfairness, (1) the challenged practice offends public policy; (2) is

immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to

consumers. In fact, the entire worldwide financial markets are in crisis due to the

practices which were employed routinely as normal course of business by American

Home Mortgage.

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

"Consideration shall be given Section 5(a) of the Federal Trade Commission Act [15 U.S.C. § 45] and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.".

**Substantive requirements:**
Prohibits commercial deception, requiring proof of: (1) a deceptive act or practice; (2) an intent by the defendant that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. Plaintiff must also allege that he suffered some harm which was proximately caused by the deception. *Id.*

## COMMON LAW FRAUD

27. Eagle Funding acting as agent for American Brokers Conduit/American Home Mortgage made many false statements of material fact, knowing the statement were untrue at the direction of American Home Mortgage and for the reward of a YSP in return for asserting certain terms in the mortgage loan transaction. Ms. Beall did rely on these statements and was injured as a result. American Home Mortgage attempted to steal Ms. Beall's home of 24 years.

**Substantive requirements:**
Unlike DBPA, common law fraud requires proof of reliance. Specifically, to prove common law fraud, you must show: (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.

**Remedies:**
Actual damages, punitive damages, equitable relief.

**Statute of limitations**
5 years for affirmative claims.
Unlimited as a defense to foreclosure in the nature of a recoupment or setoff.

**Consumer fraud** exists when a consumer buys something; merchandise, services, property, that doesn't work as advertised. The "something" can be a defective product, a real estate swindle, a fake charitable cause, bad faith denial of insurance coverage, a travel scam, as well as many, many other shams.

**Definition of Fraud**
*All multifarious means which human ingenuity can devise, and which are resorted to by one individual to get an advantage over another by false suggestions or suppression of the truth. It includes all surprises, tricks, cunning or dissembling, and any unfair way which another is cheated.*
Source: *Black's Law Dictionary,* 5th ed., by Henry Campbell Black, West Publishing Co., St. Paul, Minnesota, 1979.

For civil cases that burden is a "preponderance of evidence."
Under common law, three elements are required to prove fraud: a material false statement made with an intent to deceive (scienter), a victim's reliance on the statement and damages.

**28.** American Home Mortgage intent is clear, to defraud Ms. Beall for their own pecuniary gain to reap unjust rewards and sell her loan and interest in her home to the secondary market thereby defrauding another entity as well. American Home has since continued the tort by failing to address Ms. Beall's issue after months of unsuccessful attempts going back to March of 2007 when she first attempted to contacted American Home Mortgage. The intent to defraud continued when American Home Mortgage attempted the act of conversion when they asserted the intent to foreclose and steal Ms. Beall's home. The intent is clear. The malice is clear. The refusal to take responsibility for what they have done is evident. The failure to disclose the true owner of the note under 1641(f)(2) is intentional. There can be no other explanations for the conduct contained herein.

*A material false statement*
A transaction is material if prior knowledge would have changed the outcome of the borrower's decision to part with money. What separates error from fraud is *intent,* the accidental from the intentional. There is no such thing as an accidental fraud. Proving **intent** requires determining a person's state of mind. As a result, intent usually is proven circumstantially. Some of the ways we can help prove intent by circumstantial evidence include:
*Motive.* Specialized knowledge and previous mortgage fraud for profit.

*Opportunity*.  Weaknesses in the system for underwriting and uninformed borrowers who the person obtained a level of trust with then proceeded to use this specialized knowledge of those weaknesses that allowed the fraud to occur.

*Repetitive acts*  Previous and clear patterns which are identified in American Home Mortgage SEC filings and multiple victims coming forward at this time.

*Witness statement* .  Multiple victims are willing to make statements on the record including employees of the company who have blogged openly about the rampant practices inside this company.

*Concealment*.  Documents were concealed and withheld to perpetrate the fraud. This is evident and Ms. Beall's loan file proves. The purported note is missing which may reveal *destruction* of key documents may have taken place.

*Victim reliance*  There were material false statements and the intention to deceive can be proved, and Ms. Beall relied on the false statements. Many victims exist including borrowers, and lending partners of American Home Mortgage, mortgage insurers, and true owners of notes.

*Damages*.  The damages suffered include: actual, statutory and punitive damages.


### RESPA 12 U.S.C. §2601 et seq., 24 C.F.R. Part 3500 et seq.

29.  It is clear under RESPA and HUD's interpretation of RESPA on YSP based payments, American Home Mortgage used YSP based incentives to induce Eagle Funding to participate in RICO conspiracy to commit fraud on Ms. Beall. The YSP incentive and ABA between American Brokers Conduit and Eagle Funding which was not disclosed was used to defraud Ms. Beall.

RESPA prohibits you from receiving a "thing of value" for referring business to a mortgage or title company. Violators may receive harsh penalties, including triple damages, fines, and even imprisonment.

For junk fees and kick-backs, there is a private cause of action for which damages can amount to three times the amount of any charge paid for such settlement service, plus attorney's fees and costs.

30.  It is clear that under RESPA disclosure requirements, Ms. Beall did not receive disclosures that she was entitled to under the law. Even if she had received the disclosures within the three day window, they would be meaningless as she was only given false assertions of loan terms Eagle Funding and American Home Mortgage had no

intentions of offering.

**RESPA** requires a good-faith estimate of settlement costs within **3 days** of when a consumer applies for a loan.

Failure to comply with RESPA statutes avails the consumer to pursue civil remedies under State Consumer Fraud laws.

**Real Estate Settlement Procedures Act (RESPA)**

**Purpose:**
To "effect certain changes in the settlement process for residential real estate that will result: 1) in more effective advance disclosure to home buyers and sellers of settlement costs; 2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; 3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and 4) in significant reform and modernization of local record keeping of land title information." 12 U.S.C. § 2601(b).

**Sources of law:**
12 U.S.C. § 2601, et seq.

HUD Regulation X (24 C.F.R. § 3500, et seq.).
**Coverage:** RESPA covers all federally related mortgages, including loans (both purchase-money mortgages and others) secured by the family home. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

**Prohibition against kickbacks and referral fees:**

12 U.S.C. §2607(a); 24 C.F.R. § 3500.14(b). RESPA prohibits the giving or receiving of any fee, kickback or other thing of value for the referral of a "settlement service" (defined at 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2).

"An agreement or understanding for the referral of business incident to or part of a settlement service need not be written or verbalized but may be established by a practice, pattern or course of conduct." 24 C.F.R. § 3500.14(e).

In order to state a claim alleging a violation of this section, one must demonstrate: 1) an agreement between the parties to refer settlement service business, 2) the transfer of a thing of value, and 3) the referral of settlement service business. *Shah v. Chicago Title and Trust Co.*, 102 Ill. App. 3d 787, 789; 430 N.E.2d 342, 344 (1st Dist. 1981).

Yield-spread premiums: A yield spread premium is a fee paid by a mortgage lender to a mortgage broker for arranging a loan with an interest rate at a higher amount than the par rate. Payment of a yield spread premium is not a per se violation of this section, but may be illegal under RESPA based on a factual inquiry into the circumstances surrounding the

payment. *Vargas v. Universal Mortgage Corp.*, 2001 U.S. Dist. LEXIS 6696, 6 (N. Dist. Ill. 2001); *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692 (11th Cir. 1998).

HUD (the agency charged with interpretative, investigative and enforcement powers under RESPA) recommends a two-step inquiry to determine whether a yield spread premium is illegal. First, one determines whether the payment of the yield spread premium was for services actually performed; if it is not, then the payment is an illegal kickback. If the payment was for services actually performed, then one looks at whether the total compensation paid to the broker reasonably related to the value of the services; if the compensation does not reasonably relate to the value of the services, the payment is a violation of this section. 64 Fed. Reg. 10080 (1999).

**Prohibition against unearned fees and fee splitting:**

12 U.S.C. §2607(b); 24 C.F.R. §3500.14(c). RESPA prohibits the giving or receiving of "any portion, split or percentage of any charge made or received for the rendering of a settlement services in connection with a transaction involving a federally related mortgage loan other than for services performed." The regulations further state that, "A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section."

Recently the Seventh Circuit issued a decision holding that a fee for which no service was performed does not violate section 2607(b) unless the unearned fee is shared with a third party. *Echevarria v. Chicago Title & Trust Co.*, 256 F. 3d 623 (7th Cir. 2001). However, following the Echevarria decision, HUD issued a policy statement clarifying its interpretation of Section 2607(b) in which it stated, "HUD believes that Section 8(b) [12 U.S.C. § 2607(b)] of the statute and the legislative history make clear that no person is allowed to receive any portion of charges for settlement services, except for services actually performed." 66 Fed. Reg. 53052, 53058.

**Remedies:**
Private right of action for violation of § 2607 (Illegal referral fee or kickback and fee splitting). Statutory damages: person charged for the settlement service can recover an amount equal to "three times the amount of any charge paid for such settlement service," plus attorney's fees and costs. 12 U.S.C. § 2607(d).

Private right of action for violation of § 2605 (Servicing requirements and administration of escrow accounts). Actual damages for each failure to comply, additional damages for a pattern and practice of noncompliance, plus attorney's fees and costs. 12 U.S.C. § 2605(f).

**Statute of limitations:**
1 year for affirmative (kickback and fee-splitting) claims. 12 U.S.C. § 2614. Unlimited as a defense to foreclosure in the nature of a recoupment or setoff.

**YSP REMEDY REQUESTED**

**RESPA 12 USC 2601(a) REMEDIES** – Full Loan Rescission—Order to Dismiss the Complaint for Foreclosure of Mortgage. <u>All payments paid should be credited</u> against the principal.

## TRUTH IN LENDING ACT ( TILA)

31.  Under the TILA, Ms. Beall had numerous protections which American Home

Mortgage breached. These include disclosure of accurate APR, accurate loan charges

including title insurance and all fees, a discount in the interest rate for paying a discount

point, accurate material disclosures and explanations of loan terms, and the loan terms

she qualified for based on a fair and objective standard.

**"The Truth In Lending Act (TILA) is to be liberally construed in favor of consumers, with creditors who fail to comply with TILA in any respect becoming liable to consumer regardless of nature of violation or creditors' intent."**

The Truth In Lending Act ("TILA") is used as legal remedy to recover TILA violation fines and possibly <u>void the lenders security interest in the property</u>. The Act is in Title I of the Consumer Credit Protection Act and is implemented by the Federal Reserve Board via The Act is in Title I of the Consumer Regulation Z (12 C.F.R. Part 226). The Regulation has effect and force of Federal law.

TILA "The Seventh Circuit, like most courts interpreting TILA, maintains that disclosures made pursuant to the statute should be viewed from the <u>vantage point of an ordinary consumer as opposed to that of a skilled or informed business person.</u> TILA is aimed at deceptive practices by lenders, not the subjective beliefs or actions of borrowers. Moreover, a plaintiff need not show actual harm to recover from a technical violations of TILA., as they are strict liability offenses.

**Purpose:**
"It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."
<u>15 U.S.C. § 1601(a).</u>

**Sources of law:**
<u>15 U.S.C. § 1601, *et seq.*</u>
Regulation Z (<u>12 C.F.R. 226</u>).

The Federal Reserve Board's Official Staff Commentary on Regulation Z (12 C.F.R. 226.36. Supplement I). *Ford Motor Credit v. Milhollin*, 444 U.S. 555, 565 (1980) ("Unless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or Regulation should be dispositive").

**Substantive requirements:**
Clear, conspicuous, and accurate disclosures of loan terms set forth in 12 C.F.R. 226.18 ("Content of Disclosures"). *In re Ralls*, 230 B.R. 508 (Bankr. E.D.Pa. 1999); *In re Cook*, 76 B.R. 661 (Bankr. C.D.Ill. 1987).

Every loan charge must be properly disclosed as either part of the "amount financed," which represents "the amount of credit provided to you or on your behalf," 12 C.F.R. 226.18(b), or as part of the "finance charge," which represents "the dollar amount the credit will cost you," 12 C.F.R. 226.18(d).

The "annual percentage rate" (APR) combines the interest rate and additional up-front (prepaid) finance charges to yield the total "cost of your credit as a yearly rate." 12 C.F.R. 226.18(e). *In re Hill*, 213 B.R. 934 (Bankr. D.Md. 1997).

The finance charge is computed according to the rules set forth in 12 C.F.R. 226.4 ("Finance Charge").

The finance charge includes "any charge payable directly or indirectly by the creditor as an incident to or a condition of the extension of credit," 12 C.F.R. 226.4(a), unless a charge is specifically excluded. The most pertinent exclusions in the context of real-estate loan transactions are as follows:

**Remedies:**
Failure to make clear, conspicuous, and accurate material disclosures also triggers an extended right of rescission. 12 C.F.R. 226.23(a)(3). Material disclosures include the: (1) annual percentage rate, (2) finance charge, (3) amount financed, (4) total payments, (5) or payment schedule. 12 C.F.R. 226.23(a)(3) n.48.

There are statutory "tolerances" for the APR and the amount financed and finance charge. Violations are deemed non-material if they fall within these tolerances.

The APR tolerance is .125% for regular loans and .25% for irregular (variable-rate) loans. 12 C.F.R. 226.22(a).

The finance charge tolerance for defendants in **foreclosure actions is $35** (for rescission), 12 C.F.R. 226.23(h), and $100 (for monetary damages), 12 C.F.R. 226.18(d)(1).

The rescission remedy runs against any assignee: "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. § 1641(c). *Mount v. LaSalle Bank Lake*

*View*, 926 F.Supp. 759 (N.D.Ill. 1996); *Stone v. Mehlberg*, 728 F.Supp. 1341 (W.D.Mich. 1989).

Upon rescission, "the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge" (step one). 12 C.F.R. 226.23(d)(1). Within 20 days the creditor must take any action required to cancel the security interest and must return any money paid on the loan (step two). 12 C.F.R. 226.23(d)(2).

If and when the creditor does so, the consumer must tender to the creditor the value of the money or property received (step three). 12 C.F.R. 226.23(d)(3). The tender amount is reduced by any amount paid on the loan (unless previously returned). *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Williams v. Gelt*, 237 B.R. 590, 598-99 (E.D. Pa. 1999). Courts can modify steps two and three of the above rescission process. 12 C.F.R. 226.23(d)(4).

Creditors are also liable for actual damages, statutory damages in the amount of twice the finance charge, up to $2,000, and attorney's fees and costs. 15 U.S.C. § 1640(a). Failure to respond to the rescission notice as spelled out above results in another violation and an addition award of statutory damages. *White v. WMC Mortgage*, 2001 U.S. Dist. LEXIS 15907, at * 5 (E.D. Pa. July 31, 2001); *Mayfield v. Vanguard Savings & Loan*, 710 F. Supp. 143, 145 (E.D. Pa. 1989).

Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents. 15 U.S.C. § 1641(a).

**Statute of limitations:**
1 year for affirmative claims. 15 U.S.C. § 1640(e).
3 years for rescission. *Beach v. Ocwen*, 523 U.S. 410 (1998)

## U.C.C. - ARTICLE 3 - NEGOTIABLE INSTRUMENTS

32. The Uniform Commercial Code (UCC) and its state law derivatives afford consumer

contracts unique protections. Ms. Beall contract is void according to § 3-305.

DEFENSES AND CLAIMS IN RECOUPMENT (ii)(iii). The illegal basis of the contract

build upon fraud, negligence and misrepresentation of essential terms renders it null and

void.

32. This remedy goes against any assignee of the note.

33. In addition, an obligor is not obliged to pay the instrument if the person seeking

enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument. Ms. Beall has been informed by Samuel White that the note in question is missing, lost or stolen. No information has been given as to the existence of the original note in question.

34.  Until such time that a note can be produces the existence of such note is deemed to be non-existent and American Home Mortgage is falsely asserting dominion over Ms. Beall's property. American Home Mortgage has illegally attempted to foreclose thereby stealing a property they have not proven to have any security interest in through producing the original note. **SEE EXHIBIT E**

## § 3-305. DEFENSES AND CLAIMS IN RECOUPMENT.

(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following:
(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, **(ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,** or (iv) discharge of the obligor in insolvency proceedings;
(2) a defense of the obligor stated in another section of this Article or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract; and
(3) a claim in recoupment of the obligor against the original payee of the instrument if the claim arose from the transaction that gave rise to the instrument; but the claim of the obligor may be asserted against a transferee of the instrument only to reduce the amount owing on the instrument at the time the action is brought.
(b) The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder.
(c) Except as stated in subsection (d), in an action to enforce the obligation of a party to pay the instrument, the obligor may not assert against the person entitled to enforce the instrument a defense, claim in recoupment, or claim to the instrument (Section 3-306) of another person, but the other person's claim to the instrument may be asserted by the obligor if the other person is joined in the action and personally asserts the claim against the person entitled to enforce the instrument.

An obligor is not obliged to pay the instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument.

## UTP

35. American Home Mortgage and Eagle Funding did engage in numerous practices against Ms. Beall found throughout this complaint which any jury would find outrageous, unjust, fraudulent and unfair in violation of the Deceptive Business Consumer claims for sales abuses or misrepresentations. These practices are covered under Unfair Trade Practices and Consumer Protection Law ("UTP"). Damages and rescission should be awarded.

## DECEPTIVE BUSINESS PRACTICES ACT

36. American Home Mortgage and Eagle Funding did engage in numerous practices against Ms. Beall found throughout this complaint in violation of the Deceptive Business Practices Act.

Under the Consumer Fraud and Deceptive Business Practices Act, it is a violation to pay the broker a YSP for rate based incentive terms favorable to the lender. American Home Mortgage did engage in deception to get business using unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that consumer rely upon the concealment, suppression or omission of such material fact, or the use or employment of practices as described in Section 2 of the **"Uniform Deceptive Trade Practices Act"** approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." **Section 5(a) of the FTC Act ( 15 USC  45)**

## FTC ACT

Section 5 of the FTC Act prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission will find deception if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment. ~ FTC Policy Statement on Deception, appended to Cliffdale Associates. Inc.. 103 F. T .C. 110, 174 (1984). 15 U.S.C. § 45(a)(2)

The practices contained herein offend public policies and are immoral, unethical, oppressive and unscrupulous causing substantial harm to consumers.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37. Eagle Funding and American Home Mortgage did intentionally and willfully inflict severe emotional distress on Ms. Beall, by putting her personal welfare and good credit at risk, and by involving and seeking to control exercising unlawful dominion over her property. The behavior was extreme and outrageous when both parties falsely asserted many lies in furtherance of illegal activities. The actions were intentional and reckless and caused Ms. Beall to suffer extreme emotional distress. Eagle Funding and American Home Mortgage attempted to destroy her emotionally and financially.

The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

## GROSS NEGLIGENCE

37. Eagle Funding and American Home Mortgage were negligent as both parties had a legal duty imposed by regulations, state and federal laws and under licensing requirements to act with great care in the conduct of real estate financing. The duty to Ms. Beall is clear as defined in all the laws and regulations, and the negligence to abide by those laws and regulations is equally clear.

Negligence is either the failure to do something that an ordinarily prudent person would do under given circumstances or the doing of something that an ordinarily prudent person would not do under those circumstances. Any action based on negligence involves a violation of a legal duty, imposed by statute, contract, or otherwise, owed by the defendant to the person injured. Thus, to support a finding of negligence by the court, a plaintiff must show that the defendant owed a duty to the plaintiff to use care, that he or she breached that duty, and that the breach was the actual cause of the resulting injury.

**Duty:** There are two general types of duty imposed by law. First, everyone has a duty to use ordinary care in conducting activities from which harm might reasonably be anticipated.

Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the other person has, willfully or by want of ordinary care, brought the injury upon himself or herself. Liability for negligent conduct is, therefore, the rule, to which no exception is made unless clearly supported by public policy considerations.

In addition to the general duty to use ordinary care, a person may have a duty to act affirmatively to warn or protect others or to control the conduct of others, if a special relationship exists between the actor and either the person to be controlled or the person who needs protection.

To determine in a given case whether the defendant owes a duty of care to the plaintiff, the court must consider several factors, including the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty on the defendant to exercise care with its resulting liability for breach, and the availability, cost, and custom of obtaining insurance for the risk involved.

The most important of these considerations in establishing duty is foreseeability. As a general principle, a defendant owes a duty of care to all persons who are foreseeably endangered by his or her conduct, with respect to all risks which make that conduct unreasonably dangerous.

**Breach Of Duty:** After establishing the existence of a duty of care owed by the defendant, a plaintiff, to support a claim of negligence, must show that the defendant breached that duty. The breach of the general duty to act reasonably consists of conduct falling below the standard of ordinary care or skill in the management of person or property.

Ordinary care is that degree of care which people of ordinarily prudent behavior can be reasonably expected to exercise under the circumstances of a given case. In other words, the care required must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated.

## NEGLIGENT MISREPRESENTATION

38. At the very least Eagle Funding and American Home Mortgage were negligent as both parties had a legal duty imposed by regulations, state and federal laws and under

licensing requirements to act with great care in the conduct of real estate financing.

The duty to Ms. Beall is clear as defined in all the laws and regulations, and the

negligence to abide by those laws and regulations is equally clear.

Whereas fraudulent misrepresentation requires either actual knowledge or at least the
belief that the representation is false, liability can also attach for negligent
misrepresentation. According to the Restatement, whoever makes a false statement in the
course of his business, profession, or employment, or in any pecuniary transaction can be
held liable "if he fails to exercise reasonable care or competence in obtaining or
communicating the information." Restatement, § 552(1). In contrast with fraudulent
misrepresentations, damages for negligent misrepresentation are limited to out-of-pocket
loss. *Id..*, § 552B(1).

## UNJUST ENRICHMENT/RESTITUTION

39. It would be unjust for American Home Mortgage to retain the fruits of the fraud and

should disgorge themselves of the ill gotten gains. Three times all charges for

settlement services should be refunded to Ms. Beall for damages she incurred, plus

cost of bringing suit and lost wages.

## RICO

40. Eagle Funding unlawfully assisted American Home Mortgage in acquiring a security

interest in the property which is the subject of this complaint. This was a RICO civil

conspiracy spelled out in the incentive based rate sheet and broker guidelines as part of

affiliated business arrangements American Home Mortgage promulgated throughout the

country with hundreds of brokers to do their bidding. Wire and mail were used in this

scheme to defraud consumers.

## BREACH OF CONTRACT

41. The relationship between Eagle Funding and American Home Mortgage did

require a general imposition of the duty of good faith and fair dealing, courts recognize

that a duty of good faith and fair dealing may arise: a) by agreement; (b) when an

imbalance of bargaining power exists at least; when the defendant is responsible for the imbalance. In this transaction Eagle Funding and American Home Mortgage controlled the entire outcome and process of this transaction and a unequal bargaining power clearly did exist. American Home Mortgage, and all agents and affiliates, had a "hidden agenda" as to Ms. Beall transaction, making false statements, submitting false documents, altering documents, losing documents, and actively misrepresenting and concealing information, and otherwise acting dishonestly to maximise and share pecuniary gains.

42. The methods of controlling the loan process through use of business partners, has demonstrated the unique, unequal bargaining position. American Home Mortgage has also used his specialised knowledge against borrowers to successfully misrepresent terms and fees on the HUD-1 and reap huge profits.

43. American Home Mortgage was negligent in that they had a duty of care, which they breached in several instances in the settlement transaction. They breached the duty of disclosure and explanation of documents, the duty to provide an accurate HUD-1, the duty to ensure all legal disclosures including the broker agreement and YSP explanations were present, the duty to disclose any ABA. All of these breaches did in fact cause harm to Ms. Beall.

44.    These breach actions were an intentional tort of Fraud that were reasonably foreseeable by American Home Mortgage to cause harm to Plaintiffs.

### VICARIOUS LIABILITY

45.  Eagle Funding, American Home Mortgage, and unknown master servicer, note holder, or financing partner, have a business relationship with each other to provide all aspects of the real estate financing transaction and settlement services. In these

capacities all have vicarious liability to Ms. Beall.

46. Ms. Beall neither expressly or implicitly consented to the risk of loss or damage. Ms. Beall had no foreseeable method to consent to the risk in which she was being exposed. The professional licensed entities operating under extensive legal statutes and mandates of code of conduct, held all the cards thereby making the avoidance of harm. Plaintiff was at the total mercy of the good faith and fair dealing and legal code of conduct required by law of the Defendants. The breach of those codes and good faith conduct thereby was reprehensible.

47. Ms. Beall could not have willingly exposed herself to risk she had no way of foreseeing. No warning was given that these parties regularly engaged in fraudulent real estate refinancing transactions and "shared" in the fees and illegal gains.

48. Under the <u>Learned Hand</u> Test All Defendants conduct should be considered particularly egregious as they have failed under the Learned Hand Test to take appropriate precaution levels. In American Home Mortgage own SEC filings they admit that practices contained herein had been found to be in violation of state and federal laws, even citing specific cases in these filings.

American Home Mortgage was engaging in routine violations of consumer protection statutes set forth in the Civil Code. These statutes are intended to protect borrowers in residential mortgage or deed of trust transactions. The companies' violations of these statutes, in addition to numerous Federal law violations, constitute further evidence of the wide-ranging and systematic nature of their unlawful conduct.

American Home Mortgage were engaging in joint, pervasive patterns of abusive lending practices, consisting of routine, statewide imposition of excessive and improper fees, penalties, interest and charges, and numerous other violations.

American Home Mortgage and their agents, employees and representatives, have engaged in, participated in, assisted, aided or abetted in a material way, or directed the violations of numerous state and federal laws found in this complaint.

Each of violations have been willful in that each has been the result of purposeful, persistent and obstinate conduct representing, at best, plain indifference and, at worst, intentional disregard of the requirements of state and federal laws.

## JUSTIFIABLE RELIANCE

49. Ms. Beall was induced into a contract by Eagle Funding acting as agent for American Home Mortgage. In this capacity each fraudulently made a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Restatement, § 525. A misrepresentation is "fraudulent" if it is made with the knowledge or in the belief that it is false. *Id.*, § 526. As a general rule, the maker of a fraudulent misrepresentation is potentially liable to everyone who he intends or expects to rely on that misrepresentation for any pecuniary loss they might suffer as a result. *Id.* 531. Furthermore, a party who makes a fraudulent misrepresentation to another could be liable to a third-party if the tortfeasor intends or expects that his misrepresentation would be repeated to and acted upon by the third-party. *Id.*, § 533.

Those who rely on a fraudulent misrepresentation have a right to recover damages. According to the Restatement: The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause.

## COMMON LAW – VOIDABLE TITLE

50. Under common law Ms. Beall asserts the security interest in her home completely Void due to all of the acts and predicate acts of American Home Mortgage contained herein.

Common Law Title Rule: **Voidable title** → UCC 2-403(1) – passage of title by fraud – codifies and defines common law rules of voidable titles – eg, a dishonored check; title acquired by fraudulent means.

## EQUITABLE ESTOPPEL

51. Under equitable estoppel principles, American Home Mortgage is prohibited

from asserting rights, the enforcement of which would work fraud and injustice.

**Equitable estoppel:** *also called estoppel in pais: Can only arise when a person has induced another person to act in a particular manner.* The **doctrine prohibits a person**, upon principles of honesty and fair and open dealing, **from asserting rights**, the enforcement of which would, through his omissions or commissions, work fraud and injustice. (***Porter v Wertz***)

## PRAYER FOR RELIEF ON ALL COUNTS

**WHEREFORE,** plaintiff has suffered substantial injury as a result of Defendants '

unlawful acts and respectfully prays that this Court:

1. Award actual damages which would be established at trial pursuant to 15 U.S.C.
   §1640 (a)(1); and

2. Award Statutorily provided damages; and statutory prejudgment interest in the
   amount of twice the finance charge not to exceed $1000 in accordance with 15 U.S.C.
   §1640(a)(2); and

3. Award injunctive relief against foreclosure; and

4. Award full loan rescission under the Truth in Lending Act ("TILA") U.S.C. 1601 et
   seq.; or in the alternative void all interest in Plaintiff's home; and

5. Award  punitive damages for the willful, malicious, negligent, and illegal acts and
   practices, as set forth in each of the Counts above; and

6. Award  restitution and/or disgorgement of amounts paid by Plaintiff
   for all the settlement services, together with interest from the date of payment; and

9. Awards ancillary equitable relief in the form of restitution to the Plaintiff for
   defendants' unlawful policies and practices; and

10. And for such other relief at this Court may deem just and proper.

*Laura Beall*
LAURA BEALL pro se

11002 Blue Roan Road
Oakton, Virginia 22124
(703) 691-9092

Laura A. Beall
11002 Overbrook Rd.
Chase Maryland Cate





RETURN RECEIPT
REQUESTED

United States Postal Service
REGISTERED MAIL

RA 196 089 486 US

Label 200 July 1999    (12539) 1999 AM 1904

U.S. Bankruptcy Court For The

District Of Delaware

American Home Mortgage Claims

Processing Center

FDR Station, P.O. Box 5076

New York, NY 10150-5076

U.S. POSTAGE
PAID
OAKTON VA
JAN 22, 08
AMOUNT

$13.47
00006650-02

UNITED STATES
POSTAL SERVICE

0000

10150