## Exhibit D

**Transcript of Stay Hearing**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                    .    Chapter 11
                                          .
AMERICAN HOME MORTGAGE                    .    Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware                .    (Jointly Administered)
corporation, *et al.*,                    .
                                          .    April 24, 2008
                                          .    10:00 a.m.
          Debtors.                        .    (Wilmington)
                                          .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1           THE CLERK: All rise.

2           THE COURT: Please be seated.  Good morning.

3           MR. LUNN: Good morning, Your Honor.  Matthew Lunn

4    from Young Conaway on behalf of the Debtors.  There's one

5    agenda item, it's the motion for relief from stay filed by

6    Ms. Beall.

7           THE COURT: All right.

8           MR. LUNN: And I will cede the podium to Ms. Beall.

9           THE COURT: Thank you.  Ms. Beall.

10          MS. BEALL: Good morning, Your Honor.

11          THE COURT: Good morning.

12          MS. BEALL: The first thing I want to go over, of

13   course, are the three reasons that I should be, three reasons

14   that I should, I'm asking for relief from stay.  The

15   prejudice that would be suffered by the Debtors should the

16   stay be lifted, the balance of the hardships facing the

17   parties if the stay is lifted, and the probable cause on the

18   merits if the stay is lifted.  I feel that based on the

19   information that I provided to the Court with my request

20   pretty much outlines that I do have merits.  And I, I know

21   they're requesting a copy of my lawsuit.  It's 95% complete.

22   I stayed up until three in the morning last night trying to

23   finish it, but I didn't feel that it was, you know, concise

24   enough and clear enough.  I didn't want it to be wordy, yadda

25   yadda, and you know, cleaning up the spacing.  So I am more

1    than happy to provide that to the Debtors' law firm, and also

2    the Creditors Committee on Monday if they so desire.  If that

3    is something that you feel is necessary - -

4            THE COURT: Um-hum.

5            MS. BEALL:  - - before making a decision.

6            THE COURT: All right.

7            MS. BEALL: The one thing that I feel is the

8    Debtors, as far as hardships to the Debtors, the Bankruptcy

9    Court is for the honest and unfortunate debtor.  And a debtor

10   cannot hide behind the bankruptcy to do things that are, I

11   don't want to say I'm alleging illegal and abusive and not

12   comply with RESPA, TILA, honor a borrower's rights.  I've had

13   situations where, which is in my filing, they escrowed taxes

14   at my settlement.  They never paid them.

15           THE COURT: Um-hum.

16           MS. BEALL: I had to pay them a year later.  That

17   was, yeah, it was a year later.  And I was, I actually got

18   two late fees, because when they started paying them, they

19   were six months behind, having not paid the first

20   installment.  I was assessed $800 in late fees.  They billed

21   me for it.  They still won't return it.  The other thing that

22   I'm concerned about is my file went to a foreclosure attorney

23   back in December, before I reinstated my loan at that time.

24   Well they told me over the phone that I would be charged $16

25   hundred, automatic, if it went to this person, before I could

1    reinstate.  It's Samuel White.  I'm sure you've seen some of

2    his information on the filings.  When I called, I had an

3    attorney call for my payoff, and they had added the 16

4    hundred.  And I had to go through this whole rigmarole, you

5    know, sending him the Fair Debt Collection Acts, yadda yadda,

6    and asking for a breakdown of what actually I was being

7    charged for.  Well after three weeks, the bill came down to

8    $650.  They would have taken it.  What could I have done?  So

9    my only point is not only, I'm, I am going after, I'm hoping

10   for relief from stay only because American Home Mortgage is

11   an indispensable party in a lawsuit that I would like to

12   file.  As far as the other, I know in their objection they

13   said I'm pulling different, whoever I can pull out of the air

14   that has to do with my loan, adding to my lawsuit.  Well the

15   bottom line is it's none of their business.  It's only about

16   American Home Mortgage.  And the thing that I've discovered,

17   through a year of researching, is that there's a chance that

18   my loan is actually an American Home Mortgage Securities,

19   LLC, which is a separate entity, outside the bankruptcy.  And

20   that could possibly be a shell corporation that's owned by

21   the executives of American Home.  And I may not even have to

22   enjoin them in my lawsuit, or be able to take them off,

23   whatever, until I have an opportunity for discovery - -

24              THE COURT:  Um-hum.

25              MS. BEALL:   - - and for interrogatories because I

1   can't get anywhere with them.  I have statements from them

2   that Wells Fargo is the master servicer.

3           THE COURT: Um-hum.

4           MS. BEALL: I have two letters from Wells Fargo that

5   says they're not the master servicer.  Back in September, I

6   got another one in December.  And I finally got a letter, I

7   know that, you know, that Debtors' attorneys said that

8   they've been cooperating with me, that I've been in touch

9   with the Trustee, that I've been in touch with, well, Kenneth

10  Enos at their law firm.  It's more cordial.  I sent him my

11  relief from stay request early, and you know, as a courtesy.

12  That kind of thing.  And he was also trying to find out who

13  the trustee, the Indentured Trustee was for my loan pool when

14  I, you know, challenged him on them stating they didn't have

15  to comply to 1641(f)(2).  And so he was willing to call

16  Callus (phonetic) in American Home to get that information

17  for me.  Pretty much.  So the bottom line is I, I really, the

18  origination issues that I brought up in my relief from stay

19  are very serious.  I had very, very good, very good

20  qualifications to get this loan.  I had a 75% percent loan to

21  value, good credit score, 27 years at the same job, not one

22  30 day late, whatsoever, on my credit report, and I went in

23  and applied for a completely different loan.  And six weeks

24  later I was told that this was the only loan that I could

25  get.  That I didn't qualify for anything else.

1          THE COURT: Um-hum.

2          MS. BEALL: And that it was what's called a

3    traditional three one.  Which it was not.  And I was shown

4    the LIBOR, 1.3, at settlement.  I don't know what a LIBOR is.

5    I have two friends that are millionaires, including my

6    stepfather, invested in the stock market, they don't know

7    what a LIBOR is.  Because I asked him.  I thought, maybe I

8    should have known.  But the arms that I always dealt with

9    were. . .(microphone not recording) district cost of funds, T

10   bills, and treasury securities, so that was a new one on me.

11         THE COURT: Um-hum.

12         MS. BEALL: But they, they told me it was a good

13   index.  It had become the preferable index of the mortgage

14   lenders because it was so low.  That's the one thing.  The,

15   and the reason being that this happened was because of the

16   YSP.  I called, actually, the mortgage, the mortgage broker

17   - -

18         THE COURT: What's the YSP?

19         MS. BEALL: That's the Yield Spread Premium.

20         THE COURT: All right.

21         MS. BEALL: Basically what they do is they, they

22   give broker sheets.  And I have one if you want to see it.

23   They give broker sheets, American Home, which American

24   Brokers Conduit at the time, in their incentive sheets.  And

25   what it is, it outlines how much you can get paid based on

1    the loan that you put a borrower into.

2              THE COURT: Um-hum.

3              MS. BEALL: And they get extra money for adding pre-

4    payment penalties, for example.  In my case, they charged me

5    the two points.  One was a loan origination for their

6    services, the other was a discount point, which was supposed

7    to buy the par down.  The actual par was 5¼.

8              THE COURT: Um-hum.

9              MS. BEALL: It should have been brought down to 5.

10   One point normally buys a rate down a quarter of a percent.

11   In general.  Instead they raised it to 5.625 in order to make

12   up the yield to pay the broker the yield spread premium,

13   which was around $65 hundred in my case.

14             THE COURT: Um-hum.

15             MS. BEALL: In addition, the discount point they

16   just pocketed.  But that's what they do.  They, it's just

17   back end broker sheet.  And we're not, it's, the public isn't

18   generally privy to it.

19             THE COURT: Um-hum.

20             MS. BEALL: But what you do when you go in to apply

21   for a loan, which is what I did, you get, they have you sign

22   what's called a broker's origination.  You know, just a form

23   that describes what their services are.  And it point blank

24   says in that document that a borrower has two choices.  They

25   can either have the mortgage company pay them directly for

1    their services, or the borrower can pay directly.  If the

2    borrower chooses to have the mortgage company pay, because

3    they do not want to pay the two points, for example, in my

4    case $11 thousand, approximately.  Then the borrower has the

5    option to say, Okay, I'll pay the higher rate.  Save the up

6    front closing, and then the lender can pay you the YSP.

7    That's how it works.  And they're supposed to disclose that

8    up front.  And it says it in the agreements that I had with

9    the broker, and you know, unfortunately, I've been a Remax

10   broker for 30 years, so I know how this works.  And if they

11   got me, they could get anybody.  So anyway, that's the

12   incentive based, that's the big controversy right now that

13   Senator Dodd is trying to get made illegal.  In that, because

14   it's, unfortunately, it steers lenders into doing things to

15   borrowers that are for their profit.

16              THE COURT: Let me ask you a couple questions - -

17              MS. BEALL: Sure.

18              THE COURT:  - - if I could.  What's, is there

19   anything that's - - this is just a basic question just to

20   explain.  Why do you want to bring, why do you want to bring

21   the lawsuit now?  What's - - is there imminent - -

22              MS. BEALL: Yeah.

23              THE COURT:  - - risk to losing the house?

24              MS. BEALL: Yes there is.

25              THE COURT: Okay.

1          MS. BEALL: My mortgage went up.  My mortgage was $3

2    thousand for three years.  No problem.  And it's gone up to

3    5.

4          THE COURT: Okay.  Are you in an option arm?  Is

5    that what you're in?  Or - -

6          MS. BEALL: No.  I'm in a 327.

7          THE COURT: 327.  All right.

8          MS. BEALL: Yeah.  That's classified as one of the

9    predatory loans under the Federal Reserve and Sheila Bear

10   (phonetic) claim, you know - -

11          THE COURT: All right.

12          MS. BEALL:  - - stating that - -

13          THE COURT: Okay.  And that's happened?  You're - -

14          MS. BEALL: Oh, yeah.

15          THE COURT:  - - your payment has gone up.

16          MS. BEALL: Yeah.

17          THE COURT: Okay.

18          MS. BEALL: Your Honor, if I - -

19          THE COURT: Are you, are you current?

20          MS. BEALL: No.

21          THE COURT: All right.  Okay.  That's, I really

22   don't need to hear more from you, unless you - -

23          MS. BEALL: No.

24          THE COURT: Mr. Lunn.  Sounds like prejudice to me.

25          MR. LUNN: Well Your Honor, to the last point, the

1    payment's already gone up, Your Honor.  As you heard in

2    connection with Ms. Hawthorne's relief from stay, if I

3    remember those facts correctly, the payment hadn't gone up

4    yet.  There, it was going to go up in a number of months, in

5    so that she needed to commence the law suit at that time to

6    avoid the amounts going up.

7            THE COURT: Um-hum.

8            MR. LUNN: If I can just back up, Your Honor.  And I

9    think the paper, our papers at least try to make clear that

10   we're not trying to be difficult.  We're not trying to

11   unreasonably delay.  We just feel that it's unreasonable,

12   inequitable, and potentially prejudicial to the Debtors

13   without knowing the underlying basis of the action - -

14           THE COURT: Okay.

15           MR. LUNN:  - - the underlying parties - -

16           THE COURT: Well, but, you, she, you had the proof

17   of claim with the rather lengthy attachment setting forth the

18   various grounds.  The motion itself is 20 pages.

19           MR. LUNN: And I would submit that it's somewhat

20   lengthy at 20 pages and somewhat confusing to determine - -

21           THE COURT: Well.

22           MR. LUNN:  - - what exactly is at issue.  And if

23   Your Honor really focuses on what's at issue - -

24           THE COURT: But you have a, you have a *pro se*

25   movant.  You, you can't, you're not going to be able to hold

1    a, I'm not going to hold a *pro se* movant - -

2             MR. LUNN: I'm not - -

3             THE COURT:  - - to an attorney's level of drafting.

4             MR. LUNN: I'm not suggesting that, Your Honor.  And

5    I believe that some deference should be given.  But that

6    deference shouldn't be given if it's going to be, ultimately

7    prejudice the Debtors.  And once - -

8             THE COURT: How is it going to prejudice the

9    Debtors?  I want you to be very specific.  What prejudice is

10   there for you having to defend a lawsuit in Virginia, as

11   opposed to fighting a proof of claim in Delaware?  What's the

12   prejudice?

13            MR. LUNN: Well the prejudice, Your Honor, is there

14   could be a number of causes of actions that the Debtors

15   ultimately would have to respond to that are or are with not,

16   are or with not - - excuse me.  Without basis.

17            THE COURT: You talking about a slippery slope,

18   other than Ms. Beall?

19            MR. LUNN: There are others, Your Honor, that are

20   similarly situated, yes.  But if this lawsuit's commenced,

21   who knows, Debtors don't know who's going to be named.  Are

22   all the officers and directors going to be named?  Are all

23   the Debtors going to be named?  The actions - -

24            THE COURT: The officers and directors don't have

25   the automatic stay.

1          MR. LUNN: But we couldn't move for an injunction

2     under 105, Your Honor.

3          THE COURT: And you'd have to show irreparable harm.

4          MR. LUNN: We would, Your Honor. But that issue is

5     not before you, and what we're suggesting, Your Honor, is

6     that we be provided with a copy of the complaint.  If it's

7     succinct, if we know who the parties are, we'll turn around

8     to Ms. Beall and say, Your Honor, or Ms. Beall, this is okay.

9     We will consent to the relief from stay.  If it, however, it

10    has numerous broad allegations, the Debtors would want to

11    reserve their right to come back before Your Honor, and then

12    at that point argue whether or not there cause exists to

13    modify the automatic stay.

14          THE COURT: Well, why can't you have that argument

15    in Virginia in front of a Federal Judge there on a 12(b)(6)

16    or 12(c), or you know a motion to restate the cause of

17    action?  I mean, ultimately all you're entitled to in a

18    complaint is notice pleading.  The standard is not

19    particularly high.  It doesn't need to be overly

20    particularized.  Although if there are allegations of fraud,

21    obviously Rule 9 would kick in.  But doesn't that go to

22    whether the claim, whatever it is, has been articulated in a

23    way that states a claim for relief, and not really cause for

24    relief from the automatic stay?

25          MR. LUNN: It does, Your Honor.  But you have to

```
1   view this in the context of an, I've said it before in
2   connection with even the Gloria Kirk motion last week.  We
3   have very few remaining employees at American Home.  We are
4   focusing now on formulating a Chapter 11 plan.
5            THE COURT: You've had eight, you know, my response
6   to that is you've had eight months.  I mean, how long do
7   these people have to wait?  And I'm not being critical.  I
8   know you've had a lot to do.  And you've accomplished a
9   tremendous amount in eight months.  Don't get me wrong.  I
10  know it's complicated business.  You sold the servicing unit.
11  That's closed.  You've been involved in the construction loan
12  issues.  You've had a very contentious, well not a very
13  contentious, but a, you've had issues with your bank.  I
14  understand, when I say this, it's not, I'm not being
15  pejorative, but it's been eight months.  And at some point,
16  you know, these people, if they wait so long that there are
17  no employees left, how do they prosecute their claim.  And
18  you've had eight months of breathing space, isn't that enough
19  time?  And at some point, don't I have to turn it over to the
20  litigants, and allow them to take discovery and do what they
21  have to do to save their, preserve their homes or preserve
22  their claims?
23            MR. LUNN: Well in this instance, Your Honor, the
24  payments have already gone up.  Two, the underlying action,
25  as I hear it and as I read through the motion, really goes to
```

1    the origination of the loan.   Debtors didn't have any

2    involvement in the origination.   American, or is it Eagle

3    Lending is not - -

4                    THE COURT: Well, but her argument is that that was

5    your agent, and you had a, you had sweetheart deal with the

6    agent, and he was really acting on your behalf in any event.

7    And that goes to the merits that you say haven't been

8    particularly well articulated, perhaps.   But that's your

9    defense, but you know, that's not, that's a defense on the

10   merits, it's not a defense to stay relief, is it?

11              MR. LUNN: I think it is, Your Honor.

12              THE COURT: Because it goes to likelihood of success

13   on the merits?

14              MR. LUNN: It does, Your Honor.

15              THE COURT: And how do I decide whether or not you

16   were part, part of that conspiracy?

17              MR. LUNN: There are no facts before Your Honor.   I

18   don't believe - -

19              THE COURT: Well if I've decided she's made a *prima*

20   *facie* case, the argument could be that the facts, the - -

21              MR. LUNN: Burden.

22              THE COURT:   - - burden shifts to you.

23              MR. LUNN: It does, Your Honor.   And I would concede

24   that.   Also, Your Honor has to look at too, what are the

25   damages that would result from this litigation.   At best, the

1    Debtors would submit that the loan would be rescinded.  What

2    does that mean?  It doesn't mean that Ms. Beall gets the loan

3    for free, Your Honor.  She would have to pay the principle

4    amount of the loan.  Interest would be waived, fees and costs

5    also likely could be waived, there could be some small

6    monetary damages depending on who, ultimately, would be at

7    fault.  But the loan doesn't go away.  She would still have

8    to pay the principle.

9              THE COURT: All right.  Okay.  Does the Committee

10   wish to be heard?

11             MR. CARICKHOFF: Good morning, Your Honor.  David

12   Carickhoff of Blank Rome on behalf of the Creditors

13   Committee.  Your Honor, we did file a joinder in connection

14   with the Debtors' objection to the stay relief request.  I

15   guess similar to the Debtors, we are sympathetic to Ms.

16   Beall's position.  We understand that.  I think that our

17   issues are aligned with the Debtors in that in looking at the

18   proof of claim, in looking at the stay relief motion, there

19   were numerous issues raised by Ms. Beall and I guess trying

20   to defend or to understand what you would potentially have to

21   defend against was difficult, and it made it hard to

22   understand, really, the costs that would be necessary to

23   defend against this type of litigation.  I think Your Honor

24   recognizes that, but I also, we also appreciate the fact that

25   she is a *pro se* movant, and should not be held to the same

1    standard as law firms that practice in this field every day.

2    So we are sympathetic.  We appreciate the fact that it's a

3    *pro se* movant.  But we, we do find ourself in a situation

4    where the, we don't believe that the claims have been

5    concisely articulated enough to really know what's at risk

6    here.  Thank you.

7              THE COURT: Mr. McMahon, any comments?

8              MR. McMAHON: Your Honor, with respect to Ms.

9    Beall's communications with our office, we did receive some

10   information from Ms. Beall, and we did, about, I believe on

11   or about April 10th, emailed a letter to Debtors' counsel

12   asking for documentation of American Home's response, if any,

13   to Ms. Beall's requests under the Truth in Lending Act for

14   identification of the, of the owner and master servicer on

15   the loan.  And we did receive a letter dated March 11th from

16   John Callus of American Home's legal department addressed to

17   Ms. Beall, which apparently provided that information.  So I

18   just wanted to note that for the record.

19             THE COURT: Okay.  Thank you.  All right.  I'm going

20   to grant Ms. Beall's motion.  I think that the facts as

21   presented, the proof of claim, and the motion itself

22   certainly establish at least a *prima facie* case that there

23   may be a claim sufficiently articulated that would survive a

24   motion to dismiss.  Whether she'll actually prevail on the

25   merits of the underlying lawsuit or not, I don't particularly

1    know.   In addition, I think that the balance of harms and

2    prejudice clearly fall in favor of Ms. Beall.   I don't think

3    the Debtors would be particularly prejudiced by defending

4    this lawsuit in Virginia.   I understand they have a limited

5    number of employees, but they have legal counsel and they

6    have, they're still operating, at least on a basis of

7    managing what assets are left.   Including, including their

8    files, and including their, their loan portfolio.   The

9    problem with further delay is that it serves to prejudice Ms.

10   Beall in a number of ways.   One, obviously, the possibility,

11   or probability that she could lose her home for failure to

12   make the payments.   Second, the continued wind down of the

13   Debtors' business could make it more difficult for her to get

14   the discovery she needs in the future than she could

15   currently get today with some people still there who have

16   some institutional memory as to what the files mean, and what

17   the situation is.   The Debtors have had a breathing spell of

18   eight months.   They've accomplished a tremendous amount.   I

19   am in no way being pejorative in, in stating that.   But eight

20   months is enough of a breathing spell, I think in this

21   particularized situation, that requiring them to respond to

22   the merits at this time is not particularly prejudicial.

23   They've had their breathing spell that the automatic stay is

24   designed to provide.   I would add that, you know, were we in

25   a full litigation in connection with this proof of claim and

18

1   the Court was faced with deciding the issue I don't know what

2   I would do in connection with abstaining from deciding it and

3   allowing the judges in Virginia to deal with it, but I would

4   be very open to that kind of approach.  And I think the

5   reality is somebody's going to have to decide this claim at

6   some point in the future.  We've waited long enough.  Ms.

7   Beall has a right, as the plaintiff, to choose her forum.

8   She's chosen the forum and the method of proceeding.  I don't

9   think the Debtors would be substantially prejudiced in any

10  way in defending the case in Virginia as opposed to here.

11  Ms. Beall has traveled numerous times from Richmond, or

12  Oakmont, I believe, in order to attend court.  And I don't

13  think it would be appropriate, frankly, to require her to

14  travel any further, any more.  So for the, for those reasons,

15  I will enter an order lifting the automatic stay to allow Ms.

16  Beall to proceed with her lawsuit in Virginia.  And Ms.

17  Beall, I don't know if you attached a form of order or not.

18          MS. BEALL: (Microphone not recording.)

19          THE COURT: Did you?  Well, let me see if I can find

20  it.  Oh, here it is.  All right.  I'll, I'll sign the form of

21  order attached.  Anything further for today?

22          MR. LUNN: No, Your Honor.

23          THE COURT: All right.  Thank you very much.

24  Hearing is adjourned.

25          MR. LUNN: Thank you, Your Honor.

1          MS. BEALL: Thank you.

2          (Whereupon at 10:31 a.m. the hearing in this matter was

3     concluded for this date.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18          I, Jennifer Ryan Enslen, approved transcriber for

19    the United States Courts, certify that the foregoing is a

20    correct transcript from the electronic sound recording of the

21    proceedings in the above entitled matter.

22

23    _/s/Jennifer Ryan Enslen_                    ___05/15/08___
      Jennifer Ryan Enslen
24    43 Bay Boulevard
      Newark, DE 19702
25    (302)836-1905