**<u>Exhibit F</u>**

**Original Complaint**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LAURA BEALL | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| v. | **JURY TRIAL DEMANDED** |
| AMERICAN HOME MORTGAGE INC. a New York corporation; VANGUARD MORTGAGE & TITLE, INC., f/k/a EAGLE FUNDING GROUP, a Delaware corporation; WELLS FARGO BANK, a South Dakota corporation; AMERICAN HOME MORTGAGE SECURITIES LLC, a Delaware limited liability company; AMERICAN BROKERS CONDUIT, a New York corporation; AH MORTGAGE ACQUISITION CO., INC f/k/a AMERICAN HOME MORTGAGE SERVICING, a Maryland corporation. JOHN AND JANE DOES 1-10. | |
| Defendants. | |

**INTRODUCTION**

1.    This action brought by Plaintiff, through counsel, Laura Beall, a citizen of the

Commonwealth of Virginia residing at 11002 Blue Roan Rd Oakton, Virginia, which is the

property at issue in this lawsuit. Ms. Beall seeks relief and remedies of the Equal Credit

Opportunity Act, 15 U.S.C. §§ 1691 ("ECOA"); Real Estate Settlement Procedures Act, 12

U.S.C. § 2600 ("RESPA"); Truth in Lending Act, 15 U.S.C. § 1600 et seq. ("TILA"), Racketeer

Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, Breach of

Fiduciary Duty, Negligence and Fraudulent Concealment.

## JURISDICTION AND VENUE

2.      This Court has personal jurisdiction over this action inasmuch as the Defendants

have conducted regular business in the State of Virginia and derived substantial revenue from

real estate, mortgage and other services regarding property in Virginia.

3.      Subject matter jurisdiction of this Court is invoked pursuant to a federal question

and supplemental jurisdiction of pendant state claims, 28 U.S.C. §1331 and 1367.

4.      Venue is proper in this Court because the Defendants conduct regular business in

various counties in the Eastern District of Virginia and the actions giving rise to the suit concern

real property located and damages caused in the Eastern District of Virginia.

## THE PARTIES

5.      Plaintiff, Laura Beall, is a natural person residing in Fairfax County, Virginia.

6.      Defendant, American Home Mortgage Corporation (AHM), is a publicly held

company.  AHM is incorporated under the laws of the State of Maryland, with its principal place

of business in New York. The registered agent for AHM is Corporation Service Company, 11 S.

12th St., Richmond, VA 23218

7.      Defendant, American Brokers Conduit (hereinafter ABC), is a wholly owned

subsidiary of defendant American Home Mortgage Corporation. The registered agent for ABC is

Corporation Service Company, 11 S. 12th St., Richmond, VA 23218

8.      Defendant, Vanguard Mortgage & Title, Inc., is formerly known as Eagle Funding Group Ltd. (hereinafter Eagle) and acted as agent for American Brokers Conduit, from a business location of 14100 Sullyfield Circle, Suite 500, Chantilly Virginia 20150. The registered agent for Eagle is Freimark Law Offices PLLC, 12610 Lake Normandy Lane, Fairfax, VA 22030.

9.      Defendant, American Home Mortgage Servicing, Inc. (hereinafter AHMSI), at all times relevant to this complaint was a Maryland Corporation, conducting business at 4600 Regent Boulevard, Suite 200 Irving, TX 75063.   AHMSI is now wholly owned by AH Mortgage Acquisitions Inc., an affiliate of WL Ross & Co. LLC, 1166 Avenue of the Americas, New York, New York 10036. The registered agent for AHMSI is CT Corporation System, 4701 Cox Rd., Ste. 310, Glen Allen, VA 23060.

10.      Defendant, American Home Mortgage Securities LLC, is a limited liability company organized under the laws of Delaware, and acts as owner and managers of the AHMIT 2004-2 Trust. AHMIT 2004-2 is the holder in due course on the property known as 1102 Blue Roan Rd. Oakton VA 22124.  This trust is a bankruptcy remote, statutory trust organized under the laws of Delaware, and a separate legal entity that was created on June 1, 2004. This trust is managed by executives of American Home. The principal place of business is 538 Broadhollow Rd., Melville NY 11747. The registered agent is Corporation Service Company 2711 Centerville Road, Suite 400 Wilmington DE 19808.

. 11.      Defendant, Wells Fargo Bank, National Association (*"Wells Fargo Bank"*) acts the Indenture Trustee on AHMIT 2004-2 Trust. Wells Fargo Bank is a national banking association and a wholly-owned subsidiary of Wells Fargo & Company. The registered agent for

Wells Fargo Bank is Corporation Service Company, 2711 Centerville Road, Suite 400,

Wilmington, DE 19808.

12.    Plaintiff, Laura Beall, through counsel, alleges upon information and belief, as

follows:

## BACKGROUND

13.    Ms. Beall applied for a loan to refinance her primary residence of 11002 Blue

Roan Rd Oakton, Virginia with Eagle Funding Group, Ltd., agent for American Brokers Conduit

on March 15, 2004. Eagle Funding Group directly pledged the loan immediately to American

Home Mortgage. American Home Mortgage controlled the entire loan application and approval

process and therefore was responsible for every action taken by the broker Eagle Funding Group.

14.    Eagle Funding Group earned a 1% loan origination fee, a discount fee purported

to obtain a lower interest rate and other fees for services.

15.    Eagle Funding and American Brokers Conduit failed to give Ms. Beall her good

faith estimate within three days of loan closing, or her letter of credit rejection for the program

for which she applied. Beall requested a 20 year fixed rate loan at 4.8%, and was switched to a

3/27, predatory loan. Eagle Funding Group failed to disclose the material terms of the loan.

16.    On May 7, 2004 Eagle Funding Group gave Ms. Beall a Federal Truth in Lending

Disclosure Statement with an APR of 5.8% for a loan amount of $525,000, listing a total finance

charge of $898,858.97 with total payments of $1,410,938.40, and no prepayment penalty within

the 3/27 program, attached hereto as Exhibit A.

17.    A 0.2% prepayment penalty was added at the last minute when Ms. Beall was

promised none. American Home Mortgage through American Brokers Conduit proceeded to

charge Ms. Beall processing fees, of various nature, to add up to the $525,000 loan amount.

18.    American Home Mortgage through American Brokers Conduit paid the Yield Spread Premium (YSP) to Eagle Funding Group out of Ms. Beall's loan proceeds. This was not included as a finance charge in the Truth in Lending disclosures provided to Ms. Beall.

19.    Ms. Beall would later discover that the Truth in Lending disclosures included substantial overcharges in violation of the Truth in Lending Act (TILA).

20.    American Home Mortgage refused to disclose the master servicer or true owner of Ms. Beall's note; nonetheless, this assignee is subject to the same claims, counterclaims, or claims in recoupment as American Home Mortgage.

21.    AHM is responsible for the fees charged to borrowers for its loans. It individually underwrote and funded each loan, it approved each loan fee paid to a broker, and it aided its brokers in obtaining unearned fees described herein. With respect to a substantial portion of the loans, AHM was aware that little or no services were being performed in exchange for the broker charges. Further, AHM knew that the total of the broker compensation did not bear a reasonable relation to the level of the goods and services that the brokers provided or performed. In fact, AHM aided its brokers in obtaining the unearned fees described herein by performing many of the services for the brokers.

22.    AHM's brokers typically charged fees based on actual services rendered and then collected a YSP for adding things like a prepayment penalty, steering consumer into a particular type of loan, and charging higher then par rate for that loan. This increased loan proceeds and provided AHM with additional profits and with a mechanism through which to pay its brokers. In doing so, AHM directly or indirectly gave a portion of the loan proceeds to its mortgage brokers to pay charges for which no or nominal services were rendered.

23.    Ms. Beall alleges that she was offered a higher-than-par-rate loan, a prepayment penalty, and charged inflated fees based on her gender and marital status.

24.    The defendants' policies and practices constitute a pattern or practice of resistance to the full enjoyment of rights secured by the Equal Credit Opportunity Act

## COMPLAINT

25.    Plaintiff, Laura Beall, is a citizen of the Commonwealth of Virginia residing in Fairfax County and has owned her home at 11002 Blue Roan Road, Oakton Virginia 22124 for 23 years. Ms. Beall refinanced a first trust through Eagle Funding acting as agent and/or partner for American Brokers Conduit on May 20, 2004.

26.    On information and belief, mortgage broker Eagle Funding Group, Ltd. acted as agent for American Brokers Conduit, located at 14100 Sullyfield Circle, Suite 500, Chantilly Virginia 20150, currently operating under the name Vanguard Mortgage & Title, Inc. at the same address.

27.    Defendant, American Home Mortgage a now-bankrupt company is a Maryland corporation in the business of originating and servicing mortgage loans, having a place of business at 538 and 520 Broadhollow Road, Mellville NY 11174.

28.    Defendant American Brokers Conduit is a wholly owned division of American Home Mortgage and under this arrangement marketed, advertised, and originated the predatory 3/27 ARM programs through various mortgage brokers acting as agents on their behalf. For the compensation of agency services, American Brokers Conduit paid a YSP or yield spread premium to Eagle Funding.

29.    Defendant, Wells Fargo Bank's Corporate Trust Services, according to Standard and Poors rating agency, is acting as the Master Servicer and Trustee for the securitization AHMIT 2004-2. Their place of business is 9062 Old Annapolis Road, Columbia, Maryland 21045. In this capacity they were required to oversee the servicing activities of American Home Mortgage Servicing and intervene if the servicing activities were not being conducted in accordance to PSA agreement and state and federal laws. Wells Fargo participated in obfuscating the true owner of the note under TILA 1641(f)(2) repeatedly stating to Ms. Beall that they were not master servicer on Ms. Beall's loan.

30.    AHM operated as a mortgage lender, and through various nationwide brokers and agents, directly marketed mortgages. AHM advertised, solicited, marketed, and brokered mortgage loans. In this capacity it originated the predatory loan on Ms. Beall's property.

31.    ABC, a division of AHM, and their company's agents completed loan applications on behalf of borrowers and those applications are processed by AHM. From the start of the application process, Eagle Funding was acting as agent for AHM, and AHM was part of the entire transaction from start to finish.

## FRAUDULENT CONCEALMENT

32.    Ms. Beall realleges all of the foregoing paragraphs.

33.    To invoke fraudulent concealment as a ground for equitable tolling, a plaintiff must demonstrate three elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Barnes v. West, Inc.*, 243 F. Supp. 2d 559 (E.D. Va. 2003).

34.     Upon information and belief, AHM and Eagle knew of the misrepresented material facts of the interest rate on the loan to the Ms. Beall and has known of the misrepresented facts in the loan for some time, and has concealed it from Ms. Beall.

35.     Given Defendant's failure to disclose information about the misrepresented nature of the loan program – information over which it had exclusive control -- and because Ms. Beall could not reasonably have known that the loan programs were thereby misrepresented, Defendant should be estopped from relying on any statutes of limitations that might otherwise be applicable to the claims asserted herein.

36.     Ms. Beall was not given the history of the indexes, nor a complete and accurate amortization schedule for her loan. It was not reasonably possible for Ms. Beall to discover the cause of the injury, or even to know that an injury had occurred, until considerably after the act which caused her injury.

37.     American Home Mortgage fraudulently concealed the material misrepresentation and the corruption of Eagle Funding which caused Ms. Beall to become burdened with a predatory loan. American Home Mortgage Securities LLC, and American Home Mortgage Servicing, as servicer for AHMIT 2004-2 trust obfuscated the true owner of note or master servicer by failing to comply to repeated requests by Ms. Beall made pursuant to TILA 1641(f)(2).

38.     Due to the fraudulent concealment of the Defendants, all of Ms. Beall's remedies should be made available and the fraud involved should toll all statute of limitations until the day she received her loan file from American Home Mortgage in September 2007.

39.     Due to AHM's unwillingness to comply with Ms. Beall's Qualified RESPA Written Request to turn over Ms. Beall's loan file, Ms. Beall was required to petition the

bankruptcy court handling AHM's case for a copy of her loan file. The loan file was not turned over to Ms. Beall until September, 2007. Once the loan documents were received, Ms. Beall discovered a lock in sheet initiated by Eagle Funding Group with American Brokers Conduit dated 3/15/04, the day she applied for her loan. It stated that she was locked into a 3/27 loan at 5.25% until 6/18/04.

40.    The 3/27 loan she ended up in is considered a "predatory" loan by the Federal Reserve and FDIC. Eagle Funding Group and American Brokers Conduit acted in concert to ensure Ms. Beall's loan was within this program.

41.    Only after receiving her loan documentation in September 2007, Ms. Beall discovered that the Defendants, Eagle and AHM acted to ensure she was placed in the predatory 3/27 loan. Her loan application was never submitted for the 20 year loan she applied for, nor the 7/1 and/or 10/1 she discussed as potential alternatives.

42.    Ms. Beall's credit score was good. Her home had a 75% LTV. She was employed for 27 years on the same job, and had no 30 day late reporting for 7 years, with an income of over $90,000. Based upon these credit factors, she should have received a rate of as low as 5.25% locked in for at least five years or in the alternative, a low fixed rate under 6%.

43.    Upon information and belief, American Brokers Conduit, was actively seeking 3/27 loans for their loan pools, and offered Eagle Funding Group incentives in the form of a Yield Spread Premium (YSP) to put borrowers into these loans. Yield Spread Premiums are in violation of RESPA if they are not for actual services rendered but rather are used as an incentive or kickback for delivering certain loan terms.

44.    Ms. Beall alleges that American Home Mortgage as a normal course of business, used YSP incentive rate sheets as a business model they defined quite clearly, as an incentive based bait & switch to trap unsuspecting borrowers into predatory loans.

WHEREFORE, Ms. Beall prays that the Court order that all statute of limitations were tolled and that all causes of action stand.

## BREACH OF FIDUCIARY DUTY

45.    Ms. Beall realleges all of the foregoing paragraphs.

46.    The specific elements for the tort of breach of fiduciary duty are: (1) a fiduciary duty was created; (2) the fiduciary duty was breached and (3) the breach proximately caused the injury of which the plaintiff complains.

47.    Defendant, Eagle Funding did establish a position of trust to act in the best interest of Ms. Beall and subsequently violated that duty due to the influence of American Home Mortgage and the incentive-based YSP compensation relationship. This trust was breached by Eagle to enrich American Home Mortgage, American Home Mortgage Servicing, American Home Mortgage Securities LLC, AHMIT 2004-2 Trust, Wells Fargo, and AH Acquisitions.

48.    Eagle placed Ms. Beall in a loan at a higher-than-par rate and pocketed a yield-spread premium (essentially a commission on the higher rate) from American Home Mortgage.

49.    Though Ms. Beall saw the term "yield-spread premium" on the loan documents, Ms. Beall had no idea at the time what it meant to the terms of her loan.

50.    Ms. Beall was justified in believing that Eagle would act in her best interest. Ms. Beall had no way of knowing Eagle had been influenced by a YSP-based incentive program AHM and ABC used to acquire Ms. Beall's loan

WHEREFORE, Ms. Beall prays for actual damages in the amount of $525,000, treble damages in the amount of $1,575,000 and equitable relief seeking the rescission of the loan contract.

## Equal Credit Opportunity Act (ECOA)

51.    Ms. Beall realleges all of the foregoing paragraphs.

52.    The purpose of the Equal Credit Opportunity Act is to prohibit discriminatory treatment by lenders. ECOA's credit notification provision requires lenders to notify consumers, within 30 days of receiving a completed application for credit, of what action is being taken on that application. This provision is intended to protect consumers from bait-and-switch tactics. 15 USC. §§ 1691-1691f.; Federal Reserve Board Regulation B, 12 C.F.R. 202.

53.    Specifically, the ECOA regulations provide that "[a] creditor shall notify an applicant of action taken within 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." Reg. B, 12 C.F.R. § 202.9(a)(l)(i).

54.    An application for credit is considered "complete" when the creditor receives, through its exercise of due diligence, the last piece of information regularly obtained in the loan application process." *Dufay v. Bank of Am. & S.A.*, 94 F.3d 561, 564 (9th Cir. 1996) (citing l2 C.F.R. § 202.2(f)). In other words, an application is complete when a creditor has enough information to determine whether or not the consumer qualifies for a loan. *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444, 461 (E.D. Pa. 1998).

55.    If the action taken by the creditor is an "adverse action," then the notification must be in writing. 12 C.F.R. § 202.9(a)(2). If the creditor rejects the application and such rejection is

coupled with a counteroffer accepted by the consumer, then there has been no "adverse action," and the creditor can give oral (versus written) notification. *Dorsey v. & Southern Financial Corp.*, 678 F.2d 137 (4th Cir. 1982); *Diaz v. Virginia Hous. Dev. Auth.*, 117 F. Supp. 2d 500 (E.D. Va. 2000); *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444 (E.D. Pa. 1998).

56.     Misrepresentations by a defendant toll the statute of limitations for a cause of action under ECOA. *Jones v. Saxon Mortgage, Inc.*, 980 F.Supp. 842 (E.D. Va. 1997), *aff'd*, 161 F.3d 2 (4th Cir. 1998).

57.     Ms. Beall alleges that she was offered a higher then par rate loan, a prepayment penalty, and charged inflated fees based on her gender and marital status.

58.     AHM's alleged herein, constitute discrimination on the basis of race and sex in making available residential real estate-related transactions in violation of Section 805 of the Fair Housing Act, 42 U.S.C. § 3605(a); and discrimination against applicants with respect to credit transactions, on the basis of race and sex in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691(a)(1).

59.     AHM actively misled the plaintiff by assuring her that she was getting the most favorable loan terms.

60.     AHM asserted to Ms. Beall that better loan terms were unavailable when in fact they were made available to borrowers of a different gender with substantially the same credit profile.

61.     AHM's discriminatory policies and practices were intentional and willful, and were implemented with deliberate disregard for the rights of women.

62.    AHM charged Ms. Beall and routinely charges single white female borrowers a prepayment penalty when in fact another borrower may be offered different terms in violation of ECOA.

63.    Ms. Beall was targeted to fulfill a need for certain types of loans to complete credit mix profiles of American Home Mortgage securitized trusts. American Brokers Conduit is an entity that goes out and searches for certain types of loans for securitized pools. American Brokers Conduit is the American Home Mortgage entity that seeks out certain types of loans in violation of ECOA instead of offering terms requested by borrowers or terms that borrowers could have otherwise obtained in an open fair marketplace.

64.    Ms. Beall only became aware of the AHM's discriminatory actions and the existence of the misrepresentations made regarding the loan terms upon delivery of documentation paperwork of her loan in October 2007.

65.    Ms. Beall was induced by Defendant's assertions that she received the best loan terms for which she was qualified letting the filing deadline for the applicable statute of limitations period to pass.

66.    Eagle Funding Group processed an application for a 20 year fixed rate loan at 4.8%. Ms. Beall requests full loan rescission and these more favorable loan terms.

WHEREFORE, the Plaintiff prays for actual damages of $525,000, punitive damages in the amount of $1,000,000.00, and attorney's fees and costs.

## NEGLIGENCE

67.    Ms. Beall realleges all of the foregoing paragraphs.

68.    Any action based on negligence involves a violation of a legal duty owed by the defendant to the person injured. Thus, to support a finding of negligence by the court, a plaintiff must show that the defendant owed a duty to the plaintiff to use care, that he or she breached that duty, and that the breach was the actual cause of the resulting injury. *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003)

69.    In order to sustain an action for negligence per se, a plaintiff first must plead and prove a violation of law. *Crist v. Fitzgerald*, 189 Va. 109, 52 S.E.2d 145 (1949).

70.    A party relying on negligence per se must produce evidence supporting a determination that the opposing party violated a statute enacted for public safety, that the proponent belongs to the class of persons for whose benefit the statute was enacted and the harm suffered was of the type against which the statute was designed to protect, and that the statutory violation was a proximate cause of the injury. *Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77, 523 S.E.2d 823, 825 (2000).

71.    When the filing of an action is obstructed by a defendant's using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought. Va. Code Ann. § 8.01-229 (D).

72.    Eagle Funding actively obstructed Ms. Beall by intentionally refusing to provide Ms. Beall's loan application until on or about October 17, 2007 prevented Ms. Beall from ascertaining the type of loan she was given vis a vis the type she applied for.

73.    Eagle Funding and AHM acting as agent and principal, respectively, were negligent as both parties had a legal duty imposed by federal regulations, state and federal laws

and under licensing requirements to act with great care in their conduct regarding real estate financing.

74.    They had the legal duty to Ms. Beall as a mortgagee, to follow all appropriate laws and regulations regarding proper real estate procedures of mortgage brokers and lenders.

75.    Eagle and AHM's negligence in failing to follow federal statute and regulations under TILA, ECOA and RESPA was the proximate cause of her emotional distress and economic damages from the pending foreclosure of her home.

WHEREFORE, the Plaintiff prays for actual damages of $525,000, punitive damages in the amount of $1,000,000.00, and attorney's fees and costs.


### Real Estate Settlement Procedures Act (RESPA)

76.    The purpose of RESPA is to "effect certain changes in the settlement process for residential real estate that will result: 1) in more effective advance disclosure to home buyers and sellers of settlement costs; 2) in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; 3) in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and 4) in significant reform and modernization of local record keeping of land title information." 12 U.S.C. § 2601(b), HUD Regulation X (24 C.F.R. § 3500, et seq.).

77.    RESPA covers all federally related mortgages, including loans (both purchase-money mortgages and others) secured by the family home. 12 U.S.C. § 2602(1); 24 C.F.R. § 3500.2.

78.    There is a general prohibition against kickbacks and referral fees under RESPA. 12 U.S.C. §2607(a); 24 C.F.R. §500.14(b).

79.     RESPA prohibits the giving or receiving of any fee, kickback or other thing of value for the referral of a "settlement service"(defined at 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2). "An agreement or understanding for the referral of business incident to or part of a settlement service need not be written or verbalized but may be established by a practice, pattern or course of conduct." 24 C.F.R. § 3500.14(e).

80.     In order to state a claim alleging a violation of this section, one must demonstrate: 1) an agreement between the parties to refer settlement service business, 2) the transfer of a thing of value, and 3) the referral of settlement service Shah v. Chicago Title and Trust Co., 102 Ill. App. 3d 787, 789; 430 N.E.2d 342,344 (1st Dist. 1981).

81.     A cause of action for RESPA violations are subject to equitable tolling. *Lawyers Title Ins. Corp. v. Dearborn Title Corp.* , 118 F.3d 1157 (7th Cir. 1997)

82.     Ms. Beall's cause of action is tolled to the discovery of the RESPA violations made upon her procurement of her loan documentation from Eagle Funding in October, 2007

83.     A yield spread premium is a fee paid by a mortgage lender to a mortgage broker for arranging a loan with an interest rate at a higher amount than the par rate. Payment of a yield spread premium is not a per se violation of RESPA, but may be illegal based on a factual inquiry into the circumstances surrounding the payment. *Vargas v. Universal Mortgage Corp.*, 2001 U.S. Dist. LEXIS 6696,6 (N. Dist. Ill. 20(1); *Culpepper v. Inland Mortgage Corp.*, 132 F.3d 692 (11th Cir. 1998).

84.     HUD (the agency charged with interpretative, investigative and enforcement powers under RESPA) recommends a two-step inquiry to determine whether a yield spread premium is illegal. First, one determines whether the payment of the yield spread premium was for services actually performed; if it is not, then the payment is an illegal kickback. If the

payment was for services actually performed, then one looks at whether the total compensation paid to the broker reasonably related to the value of the services; if the compensation does not reasonably relate to the value of the services, the payment is a violation of this section. 64 Fed. Reg. 10080 (1999). 12 U.S.C. 24 C.F.R. §3500.l4(c).

85.    RESPA prohibits the giving or receiving of "any portion, split or percentage of any charge made or received for the rendering of a settlement services in connection with a transaction involving a federally related mortgage loan other than for services performed." The regulations further state that, "A charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this section." 24 C.F.R.§3500.14(a) and(c).

86.    The RESPA statute and legislative history make clear that no person is allowed to receive any portion of charges for settlement services, except for services actually performed. U.S.C. § 2607(b), 66 Fed. Reg. 53052, 53058.

87.    American Home Mortgage violated RESPA by not providing a good-faith estimate of settlement costs within 3 days of when Ms. Beall applied for the loan.

88.    American Home Mortgage and Eagle Funding violated RESPA when AHM provided Eagle Funding with money from extra fees and YSP kick-backs.

89.    Ms. Beall was given a loan, not based on her credit profile, but based on a YSP kickback that AHM paid to broker Eagle Funding in violation of RESPA 12 U.S.C. 2602(3).

90.    A YSP was paid to Eagle Funding and separate broker fees were charged including a discount point, origination fee and various other fees.

91.    The YSP amount for Ms. Beall's loan was $6,562.50

92.     There is a private right of action for which damages can amount to three times the amount of any charge for such settlement service, plus attorney's fees and costs.

WHEREFORE, the Plaintiff prays for actual damages of $19,687.50, and attorney's fees and costs.

## RICO

93.     Ms. Beall realleges all of the foregoing paragraphs.

94.     The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 prohibits certain conduct involving a "pattern of racketeering activity." § 1962. One of RICO's enforcement mechanisms is a private right of action, available to "[a]ny person injured in his business or property by reason of a violation" of the Act's substantive restrictions. § 1964(c).

95.     Predatory lending becomes a fair housing and fair lending issue when lenders and/or mortgage brokers target specific populations, such as elderly, minority and low to moderate-income homeowners, particularly those with substantial equity in their homes; and/or aggressively market loan products that are not suitable to the borrower.

96.     The Defendants, American Home Mortgage, Eagle Funding, Wells Fargo, American Home Mortgage Securities LLC, and AHMIT 2004-2 Trust certificate holders, AH Mortgage Acquisition, participated directly or indirectly in a pattern of racketeering activity or enterprise to acquire an interest in the real property located at 11002 Blue Roan Road, Oakton, Virginia 22124.

97.     The predicate acts of ABC and AHM caused the Ms. Beall's injuries.  It is alleged that both defendants were aware of their role in the unlawful act. The lender knowingly rendered substantial assistance in the act.

98.    AHM is liable for a civil RICO violation because AHM resulted in profit to the lender, and because Ms. Beall suffered an economic injury.

99.    There is clear evidence of a scheme by ABC and AHM to defraud Ms. Beall and many other unwitting parties including investors and the lender's conduct has a "criminal dimension and degree."

100.    AHM disseminated information to Ms. Beall and other consumers via their web site and through other marketing materials, to induce Ms. Beall to act on a refinance of her mortgage loan with no benefit to her.

101.    AHM disseminates misleading information to investors via their web site and in SEC filings to promote their revenue.

102.    AHM uses a pattern and practice of affiliated companies and divisions to control the entire transaction.

103.    AHM paid ABC, and uses a pattern and practice of an incentive, or kickback in the form of a YSP or "unearned gravy" of over $6,562.50 paid on Ms. Beall's loan for delivering a higher than par rate and other harsh loan terms and inflated fees, They paid this incentive for targeting, steering and negligently representing terms and benefits of the 3/27 ARM to induce Ms. Beall into taking this loan, and for delivering a loan they can sell for a higher value to investors. The amount paid was not based on any legitimate services provided, but rather a kickback based on the less favorable loan terms and interest rate delivered and federal statute Prohibition against unearned fees and fee-splitting. 12 USC 2607 (b) 24 CFR 3500.14, RICO, and RESPA.

104.    American Home Mortgage further created a conspiracy to defraud Ms. Beall by fraudulently asserting she did not qualify for a prime loan and placing her in sub prime loan to

enrich themselves by securitizing Ms. Beall's loan in a trust owned and managed by executives of American Home Mortgage, and then conducted predatory servicing attempting to force Ms. Beall into foreclosure.  In addition, upon information and belief at the same time, American Home Mortgage executives may have pledged Ms. Beall's loan through American Home Bank.

105.    Despite the overwhelming publicity, consumer and state and federal actions against lenders for these same practices, American Home Mortgage, continued to actively engage predatory loan and servicing practices as defined by various Federal Agencies.

106.    As a result, the plaintiff has suffered irreparable damages to her credit, her security, her home equity, and her well being.

WHEREFORE, the Plaintiff prays for actual damages of $525,000, punitive damages in the amount of $1,000,000.00, and attorney's fees and costs.

### TRUTH IN LENDING ACT (TILA)

107.    Ms. Beall realleges all of the foregoing paragraphs.

108.    Under TILA, 15 U.S.C. §1601 et seq. and its implementing Regulation Z, 12 C.F.R. Part 226, persons who advertise "closed-end credit," as defined in 12 C.F.R. 226.2(a)(10), must comply with the applicable provisions of TILA and Regulation Z.

109.    Truth in Lending Act is a strict liability statute to be liberally construed in favor of consumers. TILA §102 et seq., 15 U.S.C. §1601 et seq.

110.    The Truth in Lending Act was passed to prevent unsophisticated consumer from being misled as to total cost of financing. TILA § 102, 15 U.S.C. § 1601.

111.    The purpose of the Truth in Lending Act is for customers to be able to make informed decisions. TILA §102, 15 U.S.C. §1601

112.    The Truth in Lending Act should be construed liberally to ensure achievement of goal of aiding unsophisticated consumers so that consumers are not easily misled as to total costs of financing. 15 U.S.C. §1601 et seq., TILA §102 et seq.

113.    Truth in Lending Act must be strictly construed and liability imposed for any violation, no matter how technical. TILA §102

114.    Requirements of Truth in Lending Act are highly technical, but full compliance is required; even minor violations of Act cannot be ignored. TILA §102.

115.    Under Truth in Lending Act regulations, the disclosure of consumer credit loan terms shall not be "stated, utilized or placed so as to mislead or confuse" the consumer. Placement of disclosures is to be considered along with their statement and use. TILA Regulation Z, §226.6(c),

116.    Any violation of the Truth in Lending Act, regardless of technical nature, must result in finding of liability against lender. TILA Regulation Z §226.1 et seq.

117.    The question of whether a lender's Truth in Lending Act disclosures are inaccurate, misleading or confusing ordinarily will be for the fact finder to determine; however, where confusing, misleading and inaccurate character of disputed disclosure is so clear that it cannot reasonably be disputed, summary judgment for plaintiff is appropriate. TILA Regulation Z, §226.1 et seq., 15 U.S.C. §1700.

118.    Pursuant to regulations promulgated under Truth in Lending Act, a lender in violation of disclosure requirements is to be held to a standard of strict liability, and therefore, borrower need not show that creditor in fact deceived by making substandard disclosures. Truth in Lending Regulations, Regulation Z, §226.8(b-d).

119.    Once a creditor violates the Truth in Lending Act, no matter how technical the

violation may appear, unless a statutory defense applies, a court has no discretion in imposing liability. Truth in Lending Act, §102-186

120.    The TILA provides many remedies for the borrower for lender TILA violations, including rescission of the loan, as well as actual and statutory damages. 15 U.S.C. §§ 1635(g), 1640(g).

121.    The rescission remedy also runs against any assignee of a loan contract. "Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." 15 U.S.C. §1641(c).

122.    Upon rescission, "the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge." 12 C.F.R. 226.23(d)(1).

123.    Liability for TILA claims for monetary damages runs against assignees where the violation is apparent on the face of the loan documents. 15 U.S.C. §1641(a).

124.    Fraudulent concealment of TILA violations tolls the statute of limitations for making TILA claims. *Barnes v. West, Inc.*, 243 F. Supp.2d 559 (E.D. Va. 2003).

125.    The original loan application, completed in May 2004, by or for Ms. Beall was for a type ARM 3/1, attached hereto as Exhibit B.

126.    The loan application copy that was faxed to Ms. Beall in October, 2007 showed a material change to the loan application. The ARM value is listed as 3/27, attached hereto as Exhibit C.

127.    Given Defendants', AHM and Eagle, failure to disclose information about the misrepresented nature of the loan program – information over which it had exclusive control -- and because Ms. Beall and consumers could not reasonably have known that the loan programs

were thereby misrepresented, Defendant should be estopped from relying on any statutes of limitations that might otherwise be applicable to the claims asserted herein.

128.    Upon information and belief, AHM and Eagle knew of the misrepresented material facts of the interest rate on the loan to Ms. Beall, and of a falsely inflated appraisal, and has known of the misrepresented facts in the loan for some time, and has concealed it from Ms. Beall until October 2007.

129.    AHM was in exclusive control of the nature of the actual loan program Ms. Beall was in and continued to conceal material facts of the loan terms from Ms. Beall that only came to light when the loan documentation was provided to Ms. Beall in October 2007.

130.    Ms. Beall requested loan file information and demanded the true owner of the note repeatedly and it wasn't until October 2007 that American Home Mortgage Servicing complied by providing Ms. Beall with the complete loan file showing the TILA violations.

131.    Under the TILA, Ms. Beall reasonably expected numerous statutory protections which American Home Mortgage failed to provide. These include disclosure of accurate APR, accurate loan charges including title insurance and all fees, a discount in the interest rate for paying a discount point, accurate material disclosures and explanations of loan terms, and the loan terms she qualified for based on a fair and objective standard.

132.    Ms. Beall was put in a subprime predatory 3/27 loan when she clearly qualified for a prime loan. Eagle placed Ms. Beall into this predatory loan due to an incentive based rate sheet provided by, and because of the agency relationship with, AHM

133.    Ms. Beall applied for a 20 year fixed rate loan at 4.8% on March 15, 2004. On that day Eagle Funding locked Ms. Beall into a 3/27 ARM, 5.25% par rate, lock expiring June 18, 2004 with American Brokers Conduit. This was accomplished without Ms. Beall's

knowledge or consent.

134.    Eagle Funding further stated to Ms. Beall that Ms. Beall's application had been rejected by the other lenders to which Eagle Funding had submitted the Ms. Beall's application. In fact, Eagle Funding misrepresented this to Ms. Beall. Eagle Funding chose not to use another lender, due to the higher "kickback" offered by "AHM" in the form of the "YSP."

135.    On or about May 7, 2004, Eagle Funding showed Ms. Beall a Federal Truth-in-Lending disclosure statement for the 3/27 ARM predatory program and Eagle represented it as a traditional 3/1 ARM prime loan program. It stated a 5.8% APR, Total Finance Charge for the life of the loan as $898,858.87 It was an interest only loan with the first 359 payments at $2480.94 with a balloon payment of $527,460.95 at payment 360, with no prepayment penalty.

136.    On or about May 7, 2004, Eagle Funding gave Ms. Beall a Good Faith Estimate showing a charge of $5250 for their service, an additional $5250 discount point and did not disclose the $6,562.50 Yield Spread Premium they were being paid.

137.    On or about May 12, 2004 American Broker Conduit relocked the Par rate of 5.25% at 5.625%, at the same time charging Ms. Beall $5,250.00 for a discount point, which was supposed to decrease the rate.

138.    On or about May 15, 2004 Eagle Funding and ABC did not to provide the loan documents within three days of receiving of Ms. Beall's loan application as required by law, nor did they disclose the 3/27 predatory loan they had locked Ms. Beall into.

139.    On the preliminary documents entitled "Federal Truth-in-Lending Disclosure Statement," and "Good Faith Estimate," the loan terms differ substantially on every item from those on the final documents yet there was no change in the loan program being sold, or no change in the affiliated companies providing settlement services.

140.    Ms. Beall seeks a remedy under the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq., to obtain rescission, injunctive relief, redress, restitution, disgorgement, money damages, fees and cost of bringing suit, and other equitable relief against Defendants for engaging in unfair or deceptive acts or practices in violation of TILA, 15 U.S.C. 1601 et seq., and its implementing Regulation Z, 12 C.F.R. Part 226.

141.    Defendants violated the requirements of TILA and Regulation Z in multiple ways including advertising credit terms other than those terms that actually are or will be arranged or offered by the creditor, in violation of Section 226.24(a) of Regulation Z, TILA stating a rate of finance charge without clearly and conspicuously disclosing the annual percentage rate; and stating the period of repayment and/or the amount of a payment, but failing to disclose clearly and conspicuously the following items: (1) the terms of repayment and (2) the annual percentage rate, using that term, and, if the rate may be increased after consummation, that fact, in violation of Section 144(d) of TILA, 15 U.S.C. section 1664(d), and Section 226.24(c) of Regulation Z, 12 C.F.R. section 226.24(c).

142.    In the course of offering a loan to Ms. Beall, Defendants have represented, expressly or by implication, that the monthly payment of a specified amount or at a specified rate is the cost of obtaining a loan through AHM. Defendants failed to disclose adequately that (1) The libor rate history and the prediction of the Libor rate greatly increasing from 2004 to current that was provided by banks at the time to mortgage companies, which turned out to be accurate. AHM being in the business of originating loans had to be fully aware of this. (2) This additional information would have been material to consumers in deciding whether to apply for and obtain a loan through AHM. The failure to disclose, or disclose adequately, this information in light of the representations made was and is a deceptive practice.

WHEREFORE, as a result of the TILA violations above alleged, Plaintiff, Ms. Beall prays for relief in her favor and against Defendant American Home Mortgage, of actual damages of $525,000, statutory damages of $2,000, a full loan rescission, and all other appropriate relief to which the Court determines that Ms. Beall is entitled.

Dated:   July 30, 2008

THE J.E. BOWMAN LAW FIRM

By

James E. Bowman II
Virginia State Bar #72752
6802 Paragon Place, Suite 410
Richmond, Virginia 23230
(804) 441-6228

Attorney for Laura Beall

# EXHIBIT A

MAY. 7.2004   4:03PM   EAGLE FUNDING GROUP                    NO.793   P.7

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
## (MADE IN COMPLIANCE WITH FEDERAL LAW)

Lender/Broker: **EAGLE FUNDING GROUP, LTD**
Loan No.: **04CM-148A**
Borrower(s): **LAURA BEALL**                          Date: **03/18/04**

Property Address: **11502 BLUE ROAN ROAD**
**OAKTON, VA 22124**

☒ Initial Disclosure estimated at time of application    ☐ Final Disclosure based on contract terms

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you assuming the annual percentage rate does not change. | AMOUNT FINANCED The amount of credit provided to you or on your behalf as of loan closing. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled assuming the annual percentage rate does not change. |
|---|---|---|---|
| % 5.800 % | $ 898858.57 | $ 612079.83 | $ 1410938.40 |

### YOUR PAYMENT SCHEDULE WILL BE:

| NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING | | NUMBER OF PAYMENTS | * AMOUNT OF PAYMENTS | MONTHLY PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|---|
| 359 | 2480.94 | 07/01/2004 | | | | |
| 1 | 627480.94 | 06/01/2034 | | | | |

* Variable mortgage payment schedule, excludes taxes, hazard insurance or flood insurance.

☐ **DEMAND FEATURE:** This loan transaction has a demand feature.
☒ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit.
☒ **VARIABLE RATE FEATURE:** Your loan contains a Variable Rate Feature. Disclosure about the Variable Rate Feature have been provided to you separately.

**3/27 ARM**

**SECURITY INTEREST:** You are giving a security interest in:
☐ the goods or property being purchased.   ☒ real property you already own.

**FILING OR RECORDING FEES:** $ 78.00

**LATE CHARGE:** If a payment is more than    15 days late, you will be charged $    123.05 /    6    % of the principal and interest past due.

**PREPAYMENT:** If you pay off your loan early, you
☐ may ☒ will not   have to pay a penalty.
☐ may ☒ will not   be entitled to a refund of part of the finance charge.

**INSURANCE:** Credit life, accident, health or loss of income insurance is not required in connection with this loan. This loan transaction requires the following insurance:
☒ Hazard Insurance   ☐ Flood Insurance   ☐ Private Mortgage Insurance   ☐ Mutual Mortgage Insurance
You may obtain hazard and flood insurance through any person of his/her choice, provided said carrier meets the requirements of the Lender. If borrower obtains Property Insurance to be obtained through the Lender's designated agent, the cost will be set forth in a separate insurance statement furnished by the Lender.

**ASSUMPTION:** Someone buying your house
☐ may ☐ may, subject to conditions, ☒ may not assume the remainder of your loan on the original terms.
See your contract documents for additional information regarding nonpayment, default, right to accelerate the maturity of the obligation, prepayment rebates and penalties, and the Lender's policy regarding assumption of the obligation.
☒ All dates and numerical disclosures except late payment disclosures are estimates.

The undersigned hereby acknowledges receiving and reading a completed copy of this disclosure along with copies of the documents provided. The delivery and signing of this disclosure does not constitute an obligation on the part of the lender to make, or the Borrower(s) to accept, the loan as described.

Read, acknowledged and accepted this _____ day of _____.   By: **CURTIS MAILLOUX**
                                                                                      Title

**LAURA BEALL**                                          [Borrower]          _____   [Borrower]

_____   [Borrower]          _____   [Borrower]

[LAURA BEALL]

# EXHIBIT B

MAY. 7.2004   4:02PM    EAGLE FUNDING GROUP                    NO.795   P.3

### EAGLE FUNDING GROUP, LTD
# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked when ☐ the ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☐ FHA | ☒ Conventional  ☐ Other(s)  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 04CM-145A |
|---|---|---|---|---|

| Amount $ 525000.00 | Interest Rate 6.625 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate  ☐ Other (explain): ☐ GPM  ☒ ARM (type): 5/1 INTEREST ONLY |
|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) 11002 BLUE ROAN ROAD, OAKTON, FAIRFAX VA 22124 | | No. of Units |
|---|---|---|

| Legal Description of Subject Property (attach description if necessary) See Preliminary Title Report | Year Built 1976 |
|---|---|

| Purpose of Loan: ☐ Purchase  ☐ Construction  ☐ Other (explain): ☒ Refinance  ☐ Construction-Permanent | Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

*Complete this line if construction or construction-permanent loan.*

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

*Complete this line if this is a refinance loan.*

| Year Acquired 1984 | Original Cost $ 195000.00 | Amount Existing Liens $ 250000.00 | Purpose of Refinance 13 Limited Cash-Out Ra | Describe Improvements ☒ made ☐ to be made NEW ROOF NEW WINDOWS NEW CARPET FENC Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) LAURA A. BEALL | Manner in which Title will be held SOLE FEM | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) EQUITY |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) LAURA   BEALL | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number 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 | Home Phone (incl. area code) 703-691-9092 | DOB (MM/DD/YYYY) 05/14/1965 | Yrs. School 15 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. 0  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent No. Yrs 20 11002 BLUE ROAN ROAD OAKTON, VA 22124 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

*If residing at present address for less than two years, complete the following:*

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed RE/MAX PREFERRED PROPERTIES NANCY GALLER 380 WEST MAPLE AVENUE #100 VIENNA, VA 22180 | Yrs. in this job 27 Yrs. employed in this line of work/profession 27 | Name & Address of Employer ☐ Self Employed | Yrs. in this job Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business BROKER ASSOCIATE | Business Phone (incl. area code) 703-255-9700 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

MAY.:7.2004   4:02PM   EAGLE FUNDING GROUP                    NO.795   P.4

## EAGLE FUNDING GROUP, LTD

### V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income * | | | | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 3444.97 | 2460.94 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 103.83 | 103.83 |
| Dividends/Interest | | | | Real Estate Taxes | 472.42 | 472.42 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ 4021.12 | 3037.19 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|---|
| | | | |

### VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☒ Jointly ☐ Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Description | | LIABILITIES | | | |
| Cash deposit toward purchase held by: | $ | Name and address of Company | | $ Payment/Months | $ |
| | | DAIMLERCHRYSLERLLC | | | |
| List checking and savings accounts below | | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | 693.00 | 33065.00 |
| CHEVY CHASE BANK | | | | 49 | |
| PO BOX 1296 | | | | | |
| LAUREL, MD 20707 | | Acct. no.    1014830280 | | | |
| Acct. no. 078-322799-0 | $ 8385.00 | Name and address of Company | | $ Payment/Months | $ |
| | | CAPITAL ONE BANK | | | |
| Name and address of Bank, S&L, or Credit Union | | | | 115.00 | 3865.00 |
| CHEVY CHASE BANK | | | | 34 | |
| PO BOX 1296 | | | | | |
| LAUREL, MD 20707 | | Acct. no.    420872216032 | | | |
| Acct. no. 552-440054-1 | $ 20011.00 | Name and address of Company | | $ Payment/Months | $ |
| | | GATEWAY/CBRA NA | | | |
| FIDELITY & GUARANTY | | | | 154.00 | 2485.00 |
| | | | | 16 | |
| | | Acct. no.    6011768306009679 | | | |
| | | Name and address of Company | | $ Payment/Months | $ |
| Acct. no. RETIREMENT | $ 2112.95 | FLEETCC | | | |
| Name and address of Bank, S&L, or Credit Union | | | | 23.00 | 759.00 |
| | | | | 33 | |
| | | Acct. no.    4748440008494189 | | | |
| Acct. no. | $ | Name and address of Company | | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | CAPITAL ONE FSB | | | |
| | | | | 18.00 | 163.00 |
| | | | | 11 | |
| | | Acct. no.    8197201768204812 | | | |
| | | Name and address of Company | | $ Payment/Months | $ |
| | | COUNTRYWIDE | | | |
| Life insurance net cash value | $ | | | | |
| Face amount: $ | | | | *3444.87 | *505226.00 |
| Subtotal Liquid Assets | $ 30508.95 | Acct. no.    2220040140060 | | | |
| | | Name and address of Company | | $ Payment/Months | $ |
| Real estate owned (enter market value from schedule of real estate owned) | $ 635000.00 | | | | |
| Vested interest in retirement fund | $ | | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | | $ | |
| Automobiles owned (make and year) | $ | | | | |
| 1997 GRAND CHEROKEE | 25000.00 | | | | |
| Other Assets (itemize) | | Job-Related Expense (child care, union dues, etc.) | | $ | |
| HOUSEHOLD | | | | | |
| | | Total Monthly Payments | | $ 4444.87 | |
| Total Assets a. | $ 690508.95 | Net Worth (a minus b) | $ 144048.95 | Total Liabilities b. | $ 546462.00 |

Freddie Mac SR 03/04
1003/G1 03/03
Printed by The Lead Hunter Loan Creator Software, Inc. (800) 570-1700
Page 2 of 4
Fannie Mae Form 1003 03/04

LAURA        BEALL

MAY. 7.2004    4:03PM    EAGLE FUNDING GROUP                                    NO.795    P.5

## EAGLE FUNDING GROUP, LTD

### VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 11002 BLUE ROAN ROAD | SFR | $ 635000.00 | $ 505225.00 | $ | $3444.87 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ 635000.00 | $ 505225.00 | $ | $3444.87 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

### VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. Purchase price | $ | |
| b. Alterations, improvements, repairs | | |
| c. Land (if acquired separately) | | |
| d. Refinance (incl. debts to be paid off) | 505225.10 | |
| e. Estimated prepaid items | 5217.49 | |
| f. Estimated closing costs | 6976.00 | |
| g. PMI, MIP, Funding Fee | | |
| h. Discount (if Borrower will pay) 1.000 | 5250.00 | |
| i. Total costs (add items a through h) | 524668.59 | |
| j. Subordinate financing | | |
| k. Borrower's closing costs paid by Seller | | |
| l. Other Credits (explain) | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 525000.00 | |
| n. PMI, MIP, Funding Fee financed | | |
| o. Loan amount (add m & n) | 525000.00 | |
| p. Cash from / to Borrower (subtract j, k, l & o from i) | -331.41 | |

### VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|---|
| a. | Are there any outstanding judgments against you? | | X | | X |
| b. | Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. | Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. | Are you a party to a lawsuit? | | X | | X |
| e. | Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | X |
| f. | Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | X |
| g. | Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. | Is any part of the down payment borrowed? | | X | | X |
| i. | Are you a co-maker or endorser on a note? | | X | | X |
| j. | Are you a U.S. citizen? | X | | X | |
| k. | Are you a permanent resident alien? | | X | | X |
| l. | Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. | Have you had an ownership interest in a property in the last three years? | X | | X | |
| | (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| | (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

### IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| | | |
|---|---|---|
| Borrower's Signature | Date | |
| X | | |
| Co-Borrower's Signature | Date | |
| X | | |

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may neither discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | CO-BORROWER ☐ I do not wish to furnish this information |
|---|---|
| Ethnicity: ☐ Hispanic or Latino ☒ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☒ White | Race: ☐ American Indian or Alaska Native ☐ Asian ☐ Black or African American ☐ Native Hawaiian or Other Pacific Islander ☐ White |
| Sex: ☒ Female ☐ Male | Sex: ☐ Female ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | CURTIS MAILLOUX | EAGLE FUNDING GROUP, LTD |
| ☐ Face-to-face interview | Interviewer's Signature | 14100 SULLYFIELD CIRCLE 500 |
| ☒ Mail | | CHANTILLY, VA 20151 |
| ☐ Telephone | | |
| ☐ Internet | Interviewer's Phone Number (incl. area code) | |
| | 703-834-8100 | |

Freddie Mac Form 65   01/04                                   Page 6 of 8                                   Fannie Mae Form 1003   01/04
100345    03/04                         Printed by The Loan Handler from Carpus Software, Inc. (800) 272-1705
LAURA BEALL

MAY. 7.2004   4:03PM   EAGLE FUNDING GROUP                                NO. .5   P.6

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: LAURA BEALL | Agency Case Number |
|---|---|---|
| | Co-Borrower: | Lender Case Number 04C26-145A |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

Freddie Mac Form 65 01/04                                                      Fannie Mae Form 1003 01/04
1002FG4 09/C3                        Page 4 of 4

Printed by The Loan Handler from Contour Software, Inc. (800) 870-1700  www.contoursoft.com

# EXHIBIT C

Oct 17 2007 4:56P.    e                     703-991-8                     P.2

# EAGLE FUNDING GROUP, LTD

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below).

Borrower _____    Co-Borrower _____

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): | ☐ FHA  ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number 04CM-145A |
|---|---|---|---|---|

| Amount $ 525,000.00 | Interest Rate 8.625 % | No. of Months 360 | Amortization Type: ☐ Fixed Rate ☐ GPM  ☒ ARM (type): | ☐ Other (explain): 3/27 |
|---|---|---|---|---|

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) 11002 BLUE ROAN ROAD, OAKTON, VA 22124  County: FAIRFAX | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) See Preliminary Title Report | Year Built 1976 |
|---|---|

| Purpose of Loan: ☐ Purchase  ☐ Construction  ☐ Other (explain): ☒ Refinance  ☐ Construction-Permanent | Property will be: ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1964 | Original Cost $ 195,000.00 | Amount Existing Liens $ 250,000.00 | Purpose of Refinance | Describe Improvements ☒ made ☐ to be made NEW ROOF NEW WINDOWS NEW CARPE Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) LAURA A. BEALL | Manner in which Title will be held SOLE FEM | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

### III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | LAURA BEALL | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number 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 | Home Phone (incl. area code) 703-691-9092 | DOB (MM/DD/YYYY) 05/14/58 | Yrs. School 15 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no.  ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☒ Own ☐ Rent  No. Yrs. 11002 BLUE ROAN ROAD OAKTON, VA 22124    20Y | Present Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own ☐ Rent  No. Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| Name & Address of Employer  ☐ Self Employed RE/MAX PREFERRED PROPERTIES 380 WEST MAPLE AVENUE #100 VIENNA, VA 22180 | Yrs. on this job 27Y  Yrs. employed in this line of work/profession 27 | Name & Address of Employer  ☐ Self Employed | Yrs. on this job  Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business BROKER ASSOCIATE | Business Phone (incl. area code) 703-258-9700 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from-to)  Monthly Income $ | Name & Address of Employer  ☐ Self Employed | Dates (from-to)  Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  ☐ Self Employed | Dates (from-to)  Monthly Income $ | Name & Address of Employer  ☐ Self Employed | Dates (from-to)  Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Oct 17 2007 4:57r     e          703-991-   1          p.3

## EAGLE FUNDING GROUP, LTD

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | | | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 3,444.87 | 3,022.20 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 103.83 | 103.83 |
| Dividends/Interest | | | | Real Estate Taxes | 472.42 | 472.42 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "Describe other income," below) | | | | Homeowner Assn. Dues | NONE | |
| | | | | Other: | NONE | |
| Total | | | | Total | 4,021.12 | 3,598.45 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Described Other Income  Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed  ☒ Jointly   ☐ Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | Cash or Market Value | LIABILITIES | $ Payment/Months | Unpaid Balance |
| Cash deposit toward purchase held by: | | Name and address of Company  DAIMLERCHRYSLERLLC | | |
| List checking and savings accounts below | | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union  CHEVY CHASE BANK  PO BOX 1296  LAUREL, MD 20707 | | | 683.00  49 | 33,865.00 |
| Acct. no. 079-322799-0 | $ 8,385.00 | Acct. no. 1014830200 | | |
| Name and address of Bank, S&L, or Credit Union  CHEVY CHASE BANK  PO BOX 1296  LAUREL, MD 20707 | | Name and address of Company  CAPITAL ONE BANK | $ Payment/Months | |
| | | | 115.00  34 | 3,865.00 |
| Acct. no. 552-440064-1 | $ 20,011.00 | Acct. no. 430872216032 | | |
| Name and address of Bank, S&L, or Credit Union  FIDELITY & GUARANTY | | Name and address of Company  GATEWAY/CBUSA NA | $ Payment/Months | |
| | | | 154.00  18 | 2,485.00 |
| Acct. no. RETIREMENT | $ 2,112.95 | Acct. no. 5011706306009878 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company  FLEETCC | $ Payment/Months | |
| | | | 23.00  33 | 759.00 |
| Acct. no. | $ | Acct. no. 4746440005494158 | | |
| Stocks & Bonds (Company name/number & description) | | Name and address of Company  CAPITAL ONE FSB | $ Payment/Months | |
| | | | 15.00  11 | 163.00 |
| | | Acct. no. 5187201785904812 | | |
| Life insurance net cash value  Face amount $ | $ | Name and address of Company  COUNTRYWIDE | $ Payment/Months  $ | |
| | | | 3,444.87 | 505,225.00 |
| Subtotal Liquid Assets | 30,508.95 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 635,000.00 | Acct. no. 2220040148050 | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year)  1997 GRAND CHEROKEE | 25,000.00 | Acct. no. | | |
| Other Assets (itemize)  HOUSEHOLD | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | | |
| | | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | 4,444.87 | |
| Total Assets a. | 830,509.00 | | 144,047.00 | Total Liabilities b. | 546,462.00 |

Freddie Mac 65  07/05  
LAURA BEALL  
1003 Page 2 06/05 – Encompass™ from Ellis Mae – www.elliemae.com

Page 2 of 4

Fannie Mae Form 1003 07/05

Oct 17 2007 4:57P!        e                    703-991-r                    P. 4

# EAGLE FUNDING GROUP, LTD

## Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 11012 BLUE ROAN ROAD OAKTON, VA 22124 | SFR | $ 635,000.00 | $ 505,225.00 | $ | $ 3,444.87 | $ 0.00 | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | | $ 635,000.00 | $ 505,225.00 | $ | $ 3,444.87 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|
| a. Purchase Price | $ | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| b. Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | ☐ | ☒ | ☐ | ☐ |
| c. Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☒ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 502,020.73 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☒ | ☐ | ☐ |
| e. Estimated prepaid items | 6,088.69 | d. Are you a party to a lawsuit? | ☐ | ☒ | ☐ | ☐ |
| f. Estimated closing costs | 9,260.13 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☒ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | | | | | | |
| h. Discount (if Borrower will pay) | 5,250.00 | | | | | |
| i. Total costs (add items a through h) | 522,619.45 | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond or loan guarantee? | ☐ | ☒ | ☐ | ☐ |
| j. Subordinate financing | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☒ | ☐ | ☐ |
| k. Borrower's closing costs paid by Seller | | h. Is any part of the down payment borrowed? | ☐ | ☒ | ☐ | ☐ |
| l. Other Credits (explain) | | i. Are you a co-maker or endorser on a note? | ☐ | ☒ | ☐ | ☐ |
| | | j. Are you a U.S. citizen? | ☒ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☒ | ☐ | ☐ |
| | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ | ☐ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 525,000.00 | m. Have you had an ownership interest in a property in the last three years? | ☒ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| o. Loan amount (add m & n) | 525,000.00 | (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |
| p. Cash from / to Borrower (subtract j, k, l & o from i) | -2,360.55 | | | | | |

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges, that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

### INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information. | CO-BORROWER ☐ I do not wish to furnish this information. |
|---|---|
| Ethnicity: ☐ Hispanic or Latino   ☒ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☒ White | Race: ☐ American Indian or Alaska native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: ☐ Female   ☒ Male | Sex: ☐ Female   ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) CURTIS MAILLOUX | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Interviewer's Signature            Date | EAGLE FUNDING GROUP, LTD |
| ☐ Face-to-face interview | | 14100 SULLYFIELD CIRCLE 500 |
| ☒ Mail | Interviewer's Phone Number (incl. area code) | CHANTILLY, VA 20151 |
| ☐ Telephone | 703-634-8100 | (P) 703-634-8100 |
| ☐ Internet | | (F) 703-768-6075 |

LAURA BEALL

| Freddie Mac 64 07/05 | | Fannie Mae Form 1003 07/05 |
|---|---|---|

1003 Page 3 09/05 — Encompass™ from Ellie Mae — www.elliemae.com



062S0006      .99

$0.420
US POSTAGE
FIRST-CLASS
FROM 23230
JUL 31 2008
stamps|.com



JAMES E. BOWMAN
THE J.E. BOWMAN LAW FIRM
6802 PARAGON PL STE 410
RICHMOND VA 23230-1655

American Home Mortgage Securities LLC
C/O Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington DE 19808



U.S. POSTAGE PAID
MECHANICSVILLE, VA
JUL 23 08
AMOUNT
$4.72
0004310E-13

19808

UNITED STATES POSTAL SERVICE
0000



7008 1300 0002 0767 7727

CERTIFIED MAIL

7008 1300 0002 0767 7727

James Bow
The J.E. B
5802 Para
Richmond, VA 23230

American Home Mortgage
Securities LLC
C/O Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington DE 19808