## Exhibit G

**Memo in Support of Motion to Dismiss**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |
|---|---|
| LAURA BEALL,<br><br>                    Plaintiff,<br><br>   v.<br><br>AMERICAN HOME MORTGAGE INC.,<br>VANGUARD MORTGAGE & TITLE, INC.,<br>F/K/A EAGLE FUNDING GROUP, WELLS<br>FARGO BANK, AMERICAN HOME<br>MORTGAGE SECURITIES LLC, AMERICAN<br>BROKERS CONDUIT, AH MORTGAGE<br>ACQUISITION CO., INC. F/K/A AMERICAN<br>HOME MORTGAGE SERVICING, AND<br>JOHN AND JANE DOES 1-10,<br><br>                    Defendants. | No.: 1:08-CV-01307-LMB-TCB |

**DEFENDANTS AMERICAN HOME MORTGAGE CORP.,
AMERICAN HOME MORTGAGE CORP. D/B/A AMERICAN BROKERS
CONDUIT, AND AHM SV, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants American

Home Mortgage Corp., American Home Mortgage Corp. d/b/a American Brokers Conduit and

AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc.[1] (collectively, the "American

---

[1] Plaintiff erroneously identifies the lender as American Home Mortgage, Inc. in the caption. The name of the corporate defendant is American Home Mortgage Corp. Plaintiff also erroneously identifies the successor of American Home Servicing, Inc. as AH Mortgage Acquisition Co., Inc., in the caption. The actual successor to American Home Mortgage Servicing, Inc., is AHM SV, Inc. Both of these entities are in bankruptcy. *See In re American Home Mortgage Holdings, Inc.,* No. 07-11047 (D.Del.) (jointly administered). On April 24, 2008, Plaintiff filed a motion for relief from the automatic stay in order to proceed with her claims against the American Home defendants that are in bankruptcy. The motion was granted on April 24, 2008, and a copy of that Order is attached hereto as Exhibit A. As noted therein,

Home Defendants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint.

## INTRODUCTION

Plaintiff is a sophisticated borrower with considerable experience in the real estate industry. Through this action, Plaintiff contends that she was the victim of predatory loan tactics, of which she was wholly unaware until after she obtained her loan file in October 2007. Now, more than four years after closing on the loan, she seeks damages exceeding three times the value of the loan, and appears to also be requesting rescission of her loan.

In her Amended Complaint, Plaintiff attempts to portray herself as a gullible borrower who was somehow "duped" into taking out a mortgage loan that was different from the one she wanted. The problem with Plaintiff's story, however, is that it is completely contradicted by her own Complaint allegations and/or by the loan documents to which she refers.

Plaintiff is an experienced real estate broker, who had been employed by the same real estate brokerage firm for twenty-seven years prior to acquiring the loan of which she now complains. Despite having declared bankruptcy in recent years, Plaintiff was able to refinance her mortgage loan to obtain a low fixed rate for the first three years. However, faced with the increased adjustable rate for which she bargained, Plaintiff now contends that the loan was thrust upon her by her dishonest mortgage broker, the lender who funded it, and, implausibly, the servicer of the loan. Plaintiff brought this action, seeking to hold the American Home Defendants, and others, responsible for the loan she requested and took advantage of for over four years.

---

any judgment obtained by Plaintiff against the American Home defendants may not be pursued without her first seeking modification of the automatic stay.

Plaintiff provides absolutely no legal authority for any of her claims against the American Home Defendants. Indeed, not one of Plaintiff's claims against the American Home Defendants has any legal merit whatsoever.

## FACTUAL BACKGROUND

The American Home Defendants accept Plaintiff's well-pleaded factual allegations in the Amended Complaint as true for purposes of this Motion to Dismiss only.

In 2004, Plaintiff, Laura Beall, was a veteran in the real estate industry. Am. Compl. Ex. A (Uniform Residential Loan Application, Section IV). She had been a Broker Associate with Re/Max Preferred Properties in Vienna, Virginia, for 27 years. *Id.* When she sought to refinance her home, she chose Eagle Funding Group, Ltd. ("Eagle") to act as her mortgage broker. Am. Compl. ¶ 13. Plaintiff applied for her loan with Eagle on March 15, 2004. *Id.* The loan, which was funded by American Home Mortgage d/b/a American Brokers Conduit, closed on May 20, 2004. Am. Compl. ¶ 21; HUD-1 Settlement Statement, attached hereto as Exhibit B.[2] Plaintiff selected an adjustable rate loan, with a fixed rate of 5.625% for the first three years, after which the rate became variable. Adjustable Rate Note, attached hereto as Exhibit C.[3]

Plaintiff alleges that she originally wanted a 20-year fixed-rate loan. Am. Compl. ¶ 15. She acknowledges that Eagle discussed a number of varieties of loans with her—including loans she characterizes as "7/1," "10/1," "3/1," and "3/27" loans. *Id.* ¶¶ 36, 38, 46. During the application process, Eagle completed and processed multiple loan applications in order for

---

[2] The Court may consider this document because it is central to Plaintiff's claims and crucial in this case. *See American Chiropractic Ass'n v. Tirgon Healthcase, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Rosenblum v. Travelbyus.com LTD*, 299 F.3d 657, 661 (7th Cir. 2002); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *Weiner v. Klais & Co.*, Inc., 108 F.3d 86, 89 (6th Cir. 1997).

[3] *See* note 2, *supra.*

Plaintiff to apply for the various loans she was considering. *Id.* ¶¶ 31, 72, & Ex. A. According to Plaintiff, Eagle generated lock-ins for certain of the loans for which Plaintiff applied. *Id.* ¶¶ 36, 44. Although Plaintiff generally alleges that her "credit score was good," *id.* ¶ 47, Plaintiff's loan application also reflected the fact that she filed for bankruptcy within the seven years preceding her loan application. *Id.*, Ex. A (Uniform Residential Loan Application, Section VIII, Declarations).

The loan she ultimately chose, and was approved for, was funded by American Home Mortgage d/b/a American Brokers Conduit. Am. Compl. ¶ 21; Ex. B, HUD-1; Ex. C, Note. Plaintiff does not deny that she signed all required closing documents, which reflected the terms of the loan she closed on. Nor does she deny that she was provided copies of all documents she signed at closing. The HUD-1 Settlement Statement Plaintiff signed reflected the details of the settlement of the loan, including all of her closing costs. Ex. B, HUD-1. The HUD-1 also reflected a Broker's Premium paid outside closing by American Home Mortgage of $6,562.50, a Loan Origination fee of 1% paid from the borrower's funds at settlement, and a Loan Discount fee of 1%, also paid from the borrower's funds at settlement. *Id.*, lines 801, 802, 809. Moreover, the Note Plaintiff signed at closing defined every single one of the loan's terms of which Plaintiff belatedly complains. Ex. C, Note. Notwithstanding her extensive knowledge of real estate transactions, and having received closing documents outlining the precise terms of the loan and its settlement of which she now complains, Plaintiff chose not to exercise her three-day right to rescind the loan that she now, in retrospect, claims to have been "predatory."

Plaintiff alleges numerous misrepresentations and other bad acts by her broker, Eagle, including that: "Eagle Funding Group failed to disclose the material terms of the loan," Am. Compl. ¶ 15; Eagle promised that the loan would not contain a prepayment penalty, *id.* ¶ 17;

Eagle never submitted her application for the loan she wanted, but instead locked her into a loan she had not requested, *id.* ¶¶ 44, 46; and Eagle breached the position of trust it had with her, *id.* ¶ 52.

Plaintiff also, implausibly and with no precision, alleges that American Home Mortgage made a number of "misrepresentations" to her, including that American Home Mortgage "actively misled the plaintiff by assuring her that she was getting the most favorable loan terms," Am. Compl. ¶ 65; and that "AHM asserted to Ms. Beall that better loan terms were unavailable when in fact they were made available to borrowers of a different gender with substantially the same credit profile," *id.* ¶ 66. Plaintiff utterly fails to offer any details that would provide credibility to her novel position that she was in direct contact with the lender in a brokered loan transaction. Indeed, her broker was responsible for all communications with the lender about her loan, from origination to closing, and any misconceptions she was under as to the loan—as well as any misrepresentations—were due solely to her communications with her broker.

On July 30, 2008, more than four years after the loan closed, Plaintiff brought this action against her broker, Vanguard Mortgage & Title, Inc., f/k/a Eagle Funding Group ("Eagle"); the lender, American Home Mortgage Corp. and its d/b/a American Brokers Conduit ("American Home Mortgage"); the original servicer of the loans, American Home Mortgage Servicing n/k/a AHM SV, Inc. ("AHM SV");[4] the depositor of the trust which is the current holder of the Note on the property, American Home Mortgage Securities, LLC; and the trustee, Wells Fargo Bank. Plaintiff's claims include: (1) violations of the federal Equal Credit Opportunity Act ("ECOA");

---

[4] As noted in Note 3, the successor to American Home Mortgage Servicing, Inc. is not AH Mortgage Acquisition Co., as alleged by Plaintiff, but AHM SV, Inc.

(2) negligence; (3) breach of fiduciary duty; and (4) fraudulent concealment, tolling the applicable statutes of limitations.[5]

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings. *Rossman v. Lazarus*, No. 1:08cv316 , 2008 WL 4181195, *2 (E.D. Va. Sept. 3, 2008) (*citing Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994)). The court accepts factual allegations in the complaint as true, but the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assoc's, Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990). A defendant may assert a statute of limitations defense in a motion to dismiss under Rule 12(b)(6) where "it appears on the face of the complaint that the limitation period has run." *Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 552 (M.D.N.C. 2003); *see also Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996).

---

[5] A separate motion to dismiss is being filed by defendants American Home Mortgage Securities, LLC and Wells Fargo Bank.

**ARGUMENT**

For the reasons set forth below, all of Plaintiff's claims against the American Home

Defendants must be dismissed.

## I.   PLAINTIFF'S ECOA CLAIM IS TIME-BARRED

Plaintiff asserts an ECOA claim for discrimination under 15 U.S.C. 1691(a) solely

against American Home Mortgage.  There are no ECOA allegations against AHM SV.

Plaintiff's ECOA claim must be dismissed because it is time-barred.  With two

exceptions immaterial to the instant action, the ECOA statute provides that no action for

violation of its terms may "be brought later than two years from the date of the occurrence of the

violation."  15 U.S.C. § 1691e(f).  The violation Plaintiff alleges is American Home Mortgage's

discrimination against her by offering her disadvantageous loan terms based upon her gender and

marital status.  As such, the alleged violation occurred no later than the date the loan closed, May

20, 2004.  Because Plaintiff brought this action more then two years after that date, the

limitations period has run.

## II.   PLAINTIFF CANNOT RELY ON THE FRAUDULENT CONCEALMENT DOCTRINE TO TOLL THE APPLICABLE STATUTES OF LIMITATIONS

Although the statute of limitations period for Plaintiff's ECOA claim has run, Plaintiff

seeks to avoid ECOA's limitations period by claiming that it is equitably tolled by the

defendants' fraudulent concealment of the facts that would allow her to recognize the claim.

As a threshold matter, Plaintiff's thin allegations of concealment are particularly

unavailing in an ECOA context, where courts have recognized that equitable tolling is to be

"sparingly" applied.  *Farrell v. Bank of New Hampshire-Portsmouth*, 929 F.2d 871, 874 (1st Cir.

1991); *cf. Jones v. Saxon Mortgage Inc.*, 980 F. Supp. 842, 846 (E.D. Va. 1997) (*citing Irwin v.

Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)) ("The doctrine of equitable tolling is applied

7

sparingly.") "Congress in 1976 extended the limitations period from one to two years to afford claimants a reasonable time to bring an action. *Farrell*, 929 F.2d at 874. In light of Congress' deliberate exercise of its judgment regarding what is a reasonable time limit, that limit should not lightly be circumvented as onerous*." Ramsdell v. Bowles*, 64 F.3d 5, 9 (1st Cir. 1995). Accordingly, Plaintiff is not entitled to the tolling of the limitations period.

Moreover, Plaintiff cannot rely on the fraudulent concealment doctrine to toll the applicable statute of limitations for her ECOA claim because: (a) she has failed to allege with particularity (b) affirmative facts of concealment and (c) her own diligence in discovering the allegedly concealed facts. In order to invoke the doctrine of fraudulent concealment as a ground for equitable tolling, a plaintiff must demonstrate the following elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Barnes v. West, Inc.*, 243 F. Supp. 2d 559, 563 (E.D. Va. 2003) (quoting *Supermarket of Marlinton, Inc., v. Meadow Gold Diaries, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)).

First, Plaintiff has failed to allege fraudulent concealment with the particularity required by Rule 9(b). *See Pocahontas Supreme Coal Co., Inc., v. Bethlehem Steel Corp.*, 828 F.2d 211, 219 (4th Cir. 1987) (requiring claims of equitable tolling to meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure). In support of her reliance on the fraudulent concealment doctrine, Plaintiff asserts only the most general and conclusory characterizations of the defendants' actions, including: AHM's "failure to disclose information about the misrepresented nature of the loan program," Am. Compl. ¶ 39; that she "was not given the history of the indexes, nor a complete and accurate amortization schedule for her loan," *id.* ¶ 40; that "American Home Mortgage fraudulently concealed the material misrepresentation and

corruption of Eagle Funding;" *id.* ¶ 41; that "American Home Mortgage Servicing . . . obfuscated

the true owner of [sic] note or master servicer by failing to comply to [sic] repeated requests by

Ms. Beall made pursuant to TILA 1671(f)(2)," *id.* ¶ 41; and "AHM's unwillingness to comply

with Ms. Beall's Qualified RESPA Written Request to turn over Ms. Beall's loan file," *id.* ¶ 42.

Indeed, without offering any details whatsoever, much less the particularity required by

Rule 9(b), Plaintiff relies upon two alleged misrepresentations by AHM:  that AHM "actively

misled" her by assuring her that she was getting the most favorable loan terms, and that AHM

asserted to her that better loan terms were unavailable when they were made available to

borrowers of a different gender with substantially the same credit profile.[6]  Am. Compl. ¶¶ 65-

66.  However, Plaintiff's Amended Complaint fails to plead the time, place or contents of the

misrepresentation(s) alleged, or the identity of the people making the misrepresentations and

what they obtained thereby.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776,

789 (4th Cir. 1999).  Plaintiff does not state, for example, as she must, with whom she spoke at

American Home Mortgage, or when and where such conversations took place.  Moreover, the

importance of such specificity is heightened in this case, where, because the loan transaction at

issue was a brokered loan, there is no logical reason why Plaintiff would have had any direct

contact at all with the lender.  *See* Mortgage Loan Origination Agreement, attached as Exhibit

---

[6] Furthermore, these alleged "misrepresentations" are properly construed as opinions, rather than assertions of fact, and on that basis, do not support a claim for fraud under Virginia law. *See, e.g., Tate v. Colony House Builders, Inc.*, 257 Va. 78, 82, 84 (1999) ("It is well settled that a misrepresentation, the falsity of which will afford ground for an action for damages, must be of an existing fact, and not the mere expression of an opinion." *quoting Saxby v. Southern Land Co.*, 109 Va. 196, 198 (1909)).

D.[7]  For example, Plaintiff's loan application was taken by Curtis Mailloux, an employee of

Eagle.  *See* Am. Compl., Ex. A.  Plaintiff offers no explanation for such an anomaly.

Second, Plaintiff cannot establish fraudulent concealment as a bar to the applicable

statutes of limitations because she has failed to satisfy the element of the fraudulent concealment

test that requires a plaintiff to provide evidence of "affirmative acts of concealment" of the facts

underlying the claim.  *Barnes*, at 563; *Supermarket of Marlinton, Inc.*, at 126; *see also Rush v.

Servicelink*, No. WMN-08-604, slip op. at 7-9 (D. Md Jun. 16, 2008) (attached hereto as Exhibit

E).  In the instant case, the misrepresentations Plaintiff alleges go to the underlying

dissatisfaction Plaintiff has with her loan, and not to any post-closing conduct of American

Home Mortgage that could logically be targeted at concealing Plaintiff's claim.  Accordingly,

Plaintiff has alleged no nexus between misrepresenting the loan terms and concealing a violation

of ECOA.

Instead, in support of her fraudulent concealment claim, Plaintiff asserts the patently

absurd proposition—belied by the documents central to the Complaint—that she did not

understand the terms of the loan she had chosen at the time of closing, and could not discover

them until she obtained the complete loan file from American Home Mortgage in October 2007,

Am. Compl. ¶¶ 39, 46.  *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462,

1465 (4th Cir. 1991) ("in the event of a conflict between the bare allegations of the complaint

and any exhibit attached. . ., the exhibit prevails").

In fact, the exact opposite is true.  As revealed in the loan application she attached to her

Amended Complaint as Exhibit A (and upon which she relies), at the time she applied for the

loan at issue, Plaintiff was a real-estate veteran, with 27 years' experience as an associate broker

---

[7] *See* note 2, *supra.*

for Re/Max. As such, allegations seeking to portray Plaintiff's naiveté and lack of sophistication in the real estate market lack all credibility. Plaintiff has raised not a single credible fact that would lead the reader to conclude that she did not know exactly what kind of loan she was getting. Moreover, Plaintiff does not deny that she signed and received copies of all closing documents, allowing her to know the precise details of the loan she received. Her claims that she required the entire loan file to ascertain her injury are not credible on their face, and she advances no facts demonstrating why the file would be required in order for her to do so. Moreover, Plaintiff fails to allege precisely what was revealed to her upon her review of the loan file that allowed her to become aware of an injury *four years after* she closed on her loan. Of course, because loan files contain private information about borrowers, the only information kept in a loan file relates exclusively to that loan and that borrower. Thus, there is no basis for the assertion that the disclosure of her "complete" loan file gave her any information to support her ECOA claim, or any other claim.

Third, Plaintiff has failed to allege her exercise of any due diligence whatsoever to discover that any concealment took place. Instead, Plaintiff claims that she "exercised due diligence in her attempts to ascertain the owner of the note." Am. Compl. ¶ 43. However, discovery of the owner of the loan note is simply irrelevant to Plaintiff's allegation that her ECOA claim was fraudulently concealed.

In the absence of allegations evidencing, with particularity, affirmative acts of concealment and her own diligence in discovering the allegedly concealed facts, Plaintiff is not entitled to rely on fraudulent concealment to toll the applicable statutes of limitations, as set forth herein.

III.   **PLAINTIFF'S NEGLIGENCE PER SE CLAIM FAILS**

Plaintiff's negligence per se claim fails for two reasons, besides the obvious infirmity that she alleges no duty owed to her by the American Home Defendants. First, the statute Plaintiff alleges that the defendants violated was not enacted for public safety reasons, and, thus, its violation would not constitute negligence per se. Second, Plaintiff's claim is barred by the economic loss doctrine.

Plaintiff bases her claim of negligence per se upon the defendants' violations of ECOA and the regulations promulgated thereunder. Am. Compl. ¶ 81. Plaintiff, however, acknowledges that an element of a negligence per se claim is that the defendant violated a statute that was enacted for public safety. Am. Compl. ¶ 76; *see Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77, 523 S.E.2d 823, 825 (2000). Plaintiff's claim cannot stand, as the statute upon which she bases the claim was not enacted for public safety reasons.

The purpose of ECOA is to "prevent discrimination against those who are applying for credit," and particularly "to eradicate credit discrimination against women, particularly married women with whom creditors traditionally had refused to deal." *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002). Thus, there can be no argument that this consumer protection statute, which speaks of protecting economic interests of borrowers and those applying for credit, was enacted for public safety purposes. Accordingly, the negligence count must be dismissed. *See Williamson v. Old Brogue, Inc.*, 232 Va. 350, 356, 350 S.E.2d 621, 625 (1986) (Because the statute was not enacted for public safety, "violation of the statute does not constitute negligence per se and does not furnish the basis for a civil action in damages.").

Plaintiff's negligence claim also fails because it is barred by Virginia's economic loss doctrine. Under that doctrine, losses suffered as a result of the breach of a duty assumed by

agreement – rather than a duty imposed by law – remain the sole province of the law of contracts and are not recoverable in tort. *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004) (sustaining demurrer to constructive fraud claim seeking to recover purely economic losses). As the Virginia Supreme Court explained:

> The rationale for this rule lies in the distinctly different policy considerations distinguishing the law of torts from the law of contracts. The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations. Thus, when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses.

*Id.* (citation omitted). In other words, tort law "provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society." *Id.*; *see also Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988).

In this case, Plaintiff's negligence claim seeks to recover losses allegedly suffered as a result of the defendants' having breached duties arising out of their contractual relations. Moreover, Plaintiff's alleged losses are purely economic in nature; she does not seek to recover for injury to her person or property. Accordingly, because the Amended Complaint does not articulate a common law duty independent of the parties' contractual relationship, her negligence claim cannot stand and must be dismissed from the Amended Complaint for failure to state a claim.

## IV.  PLAINTIFF ALLEGES NO BREACH OF FIDUCIARY DUTY BY THE AMERICAN HOME DEFENDANTS

Plaintiff does not assert a breach of fiduciary duty claim against American Home Mortgage or AHM SV. Plaintiff alleges a fiduciary duty owed to her solely by Eagle, and

similarly alleges a breach only by Eagle. Am. Compl. ¶ 52. Moreover, even were Plaintiff to attempt to target the American Home Defendants, her claim would fail. Absent extraordinary circumstances, the relationship between a lender and a borrower is not fiduciary in nature. *See Rossman*, 2008 WL 4181195, at *9. Plaintiff has not alleged—nor can she—any such circumstances that would give rise to a fiduciary relationship.

**CONCLUSION**

For all of the foregoing reasons, American Home Mortgage Corp., American Home Mortgage Corp. d/b/a American Brokers Conduit and AHM SV, Inc. f/k/a American Home Mortgage Servicing respectfully request that the Court dismiss all of Plaintiff's claims against them.

Respectfully submitted,

/s/ Michelle H. Holmes_____
Michelle H. Holmes (Bar No. 75004)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Telephone: (202) 628-2000
Facsimile: (202) 628-2011
holmes@wbsk.com
Counsel for Defendants
American Home Mortgage Corp.
American Home Mortgage Corp. d/b/a
American Brokers Conduit
AHM SV, Inc. f/k/a
American Home Mortgage Servicing, Inc.

DATED: January 5, 2009

## CERTIFICATE OF SERVICE

I hereby certify that, on January 5, 2009, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will then send a notification to the

following:

James E. Bowman II
3900 Westerre Pkwy, Suite 300
Richmond, VA 23233

/s/ Michelle H. Holmes
Michelle H. Holmes (Bar No. 75004)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Telephone: (202) 628-2000
Facsimile: (202) 628-2011
holmes@wbsk.com
Counsel for Defendants
American Home Mortgage Corp.
American Home Mortgage Corp. d/b/a
American Brokers Conduit
AHM SV, Inc. f/k/a
American Home Mortgage Servicing, Inc.

# EXHIBIT A

# TO

# DEFENDANTS AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE CORP. D/B/A AMERICAN BROKERS CONDUIT, AND AHM SV, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## IN THE UNITED STATES BANKRUPTCY COURT
## IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., A Delaware Corporation,<br>et. al.,<br><br>Debtors. | Chapter 11<br><br>Case Number 07-11047 (CSS)<br><br>Objections Due by: TBD<br><br>Hearing Date: TBD |

### ORDER GRANTING EMERGENCY MOTION FOR
### RELIEF FROM THE AUTOMATIC STAY

Upon the emergency motion (the "Motion") of Laura A. Beall ("Movant"), for relief from the automatic stay; and adequate notice was sufficient and proper; and sufficient cause appearing therefor; it is hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED  that the automatic stay imposed by Section 362 of Bankruptcy Code is modified in order to permit Movant to initiate her claims against the Debtor (as defined in the Motion); and to satisfy any judgement awarded or settlement reached from the Debtors' insurance; and it is further

ORDERED  that Movant may not pursue the Debtor for any judgement in her favor, other than from the Debtor's available insurance, and set off, without first seeking further modification of the automatic stay, except as might be permitted by future orders of this Court (including, but not limited to, any plan or plans of reorganization which may be confirmed in the above-captioned bankruptcy cases).

Dated  Apr. 124, 2008

_The Honorable Christopher S. Sontchi_
United States Bankruptcy Judge

**EXHIBIT B**

**TO**

**DEFENDANTS AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE CORP. D/B/A AMERICAN BROKERS CONDUIT, AND AHM SV, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**



## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

| B. Type of Loan | | |
|---|---|---|
| 1.☐ FHA    2.☐ FmHA    3.☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
| 4.☐ VA    5.☐ Conv. Ins. | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| LAURA BEALL | REFINANCE | AMERICAN BROKERS CONDUIT<br>520 BROADHOLLOW ROAD<br>MELVILLE, NY 11747 |

| G. Property Location | H. Settlement Agent |  |
|---|---|---|
| OAKTON, VA 22124<br><br>FAIRFAX COUNTY, VIRGINIA | EASTERN ATLANTIC TITLE, INC.<br><br>Place of Settlement<br>10301 DEMOCRACY LANE, SUITE 110<br>FAIRFAX, VA 22030 | I. Settlement Date<br><br>OS/20/04<br>DD:  05/25/04 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 19,779.00 | 403. | |
| 104. COUNTRYWIDE HOME LOANS, INC | 503,221.73 | 404. | |
| 105. Payoff of second mortgage loan | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 523,000.73 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 525,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loans taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY / FOR BORROWER | 525,000.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 523,000.73 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 525,000.00 | 602. Less reduction amount due to seller (line 520) | |
| 303. CASH          TO          BORROWER | 1,999.27 | 603. CASH          TO          SELLER | |

RESPA, HB 4305.2 - REV. HUD1(3/86)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT
PAGE 2

File Number: ~~redacted~~

| L. SETTLEMENT CHARGES: | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | @ | " | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | P.O.C. | | |
| 801. Loan Origination Fee 1 % EAGLE FUNDING GROUP, LTD | | | 5,250.00 | |
| 802. Loan Discount 1 % EAGLE FUNDING GROUP, LTD | | 200.00B | 5,250.00 | |
| 803. Appraisal Fee to EAGLE FUNDING GROUP, LTD | | | | |
| 804. Credit Report to EAGLE FUNDING GROUP, LTD | | | 11.00 | |
| 805. Lender's Inspection Fee to | | | | |
| 806. Flood Certification fee to AMERICAN BROKERS CONDUIT | | | 15.00 | |
| 807. Tax Service Fee to AMERICAN BROKERS CONDUIT | | | 75.00 | |
| 808. COMMITMENT FEE AMERICAN BROKERS CONDUIT | | | 480.00 | |
| 809. BROKER'S PREM. PD BY AHM EAGLE FUNDING GROUP, LTD | | 6562.50L | | |
| 810. VOD FEE EAGLE FUNDING GROUP, LTD | | | 10.00 | |
| 811. PROCESSING FEE EAGLE FUNDING GROUP, LTD | | | 395.00 | |
| 812. | | | | |
| 813. | | | | |
| 814. | | | | |
| 815. | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. Interest from 05/25/04 to 06/01/04 @$ 82.031 /day 7 day(s) | | | 574.22 | |
| 902. Mortgage Insurance Premium to | | | | |
| 903. Hazard Insurance Premium 03/04 yrs. to FARMERS INS. GROUP EX:11/22/04 | | 1245.54B | | |
| 904. | | | | |
| 905. | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | | |
| 1001. Hazard Insurance 9 mo. @$ 103.80 /mo. | | | 934.20 | |
| 1002. Mortgage Insurance mo. @$ /mo. | | | | |
| 1003. City property taxes mo. @$ /mo. | | | | |
| 1004. County property taxes 8 mo. @$ 472.42 /mo. | | | 3,779.36 | |
| 1005. Annual Assessments mo. @$ /mo. | | | | |
| 1006. mo. @$ /mo. | | | | |
| 1007. mo. @$ /mo. | | | | |
| 1008. Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | -103.91 | |
| 1100. TITLE CHARGES | | | | |
| 1101. Settlement or closing fee to EASTERN ATLANTIC TITLE, INC. | | | 300.00 | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to SENTRY REAL ESTATE TITLE, LLC | | | 150.00 | |
| 1104. Title insurance binder to EASTERN ATLANTIC TITLE, INC. | | | 35.00 | |
| 1105. Document preparation to EASTERN ATLANTIC TITLE, INC. | | | 50.00 | |
| 1106. Notary fees to | | | | |
| 1107. Attorney's fees to | | | | |
| (includes above item No: ) | | | | |
| 1108. Title insurance to FATICO | | | 1,306.13 | |
| (includes above item No: REISSUE RATE-EAGLE SHORT FORM ) | | | | |
| 1109. Lender's coverage 525,000.00 — 1,306.13 | | | | |
| 1110. Owner's coverage | | | 65.00 | |
| 1111. Courier Fee EASTERN ATLANTIC TITLE, INC. | | | 94.00 | |
| 1112. Payoff Fee EASTERN ATLANTIC TITLE, INC. | | | 25.00 | |
| 1113. Fairfax Recording Fee (only FX) EASTERN ATLANTIC TITLE, INC. | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. Recording fees Deed $ 34.00 ; Mortgage $ ; Releases $ | | | 34.00 | |
| 1202. City/county/stamps Deed $ ; Mortgage $ 262.50 | | | 262.50 | |
| 1203. State tax/stamps Deed $ ; Mortgage $ 787.50 | | | 787.50 | |
| 1204. GRANTORS TAX - | | | | |
| 1205. | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | |
| 1301. Survey to | | | | |
| 1302. Pest Inspection to | | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | | 19,779.00 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

REFINANCE

LAURA BEALL

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

EASTERN ATLANTIC TITLE, INC.   5-20-04   Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

RESPA, HB 4305.2 - REV. HUD1(3/86)

# EXHIBIT C

## TO

# DEFENDANTS AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE CORP. D/B/A AMERICAN BROKERS CONDUIT, AND AHM SV, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

# A. JUSTABLE RATE NOTE

### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 20, 2004            FAIRFAX            Virginia
    [Date]                               [City]                            [State]

████████████████ Oakton, VA  22124
                           [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 525,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Brokers Conduit

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on  July 1, 2004
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  June 1, 2034            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  Att: Payment Processing, Mail Stop D1-11, P.O. Box 3050, Columbia, MD  21045-6050
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 3,022.20       . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

████████████          ████████████████

**MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT    Form 3590 1/01**
**Amended for Virginia**

███ -815N(VA) (0005)     ████ ████
          VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4                 Initials: LAB

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

**4. INTEREST RATE AND MONTH    PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of  June, 2007                    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Five  percentage points (                5.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than          8.625  % or less than              5.000  %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than            10.625%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

DOC                                    APPL #                                                Form 3590 1/01

-815N(VA) (0005)                          Page 2 of 4                        Initials: _____

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be                    5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. ·

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

DOC  #:▓▓▓▓▓                                    APPL #:▓▓▓▓▓▓▓▓

Form 3590 1/01

Initials: L A B

-815N(VA) (0005)                              Page 3 of 4

Transfer of the Property or a beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Laura C. Beall_____ (Seal)     _____ (Seal)
Laura Beall                        -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                      -Borrower

_____ (Seal)     _____ (Seal)
                                   -Borrower                                      -Borrower

_[Sign Original Only]_

This is to certify that this is the Note described in and secured by a Deed of Trust dated   May 20, 2004
on the Property located in   Fairfax                                   , Virginia.

My Commission Expires:            _____
                                  Notary Public
        may 31. 2007

DOC #: ██████
VMP®-815N(VA) (0005)                APPL #: ██████████
                                    Page 4 of 4                        Form 3590 1/01

INTEREST-ONLY ADDENDUM
ADJUSTABLE RATE NOTE

THIS INTEREST-ONLY ADDENDUM is made this 20th day of May       , 2004 and
is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the
"Note") and the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the
same date given by the undersigned (the "Borrower") to secure the Note to

American Brokers Conduit

(the "Lender") of the same date and covering the property described in the Security Instrument
and located at:

▮▮▮▮▮▮▮▮▮▮▮▮ Oakton, VA 22124

THIS ADDENDUM SUPERSEDES Section 3(A) and (B) of the Note.  None of the other provisions of
the Note are changed by this addendum.

3.      PAYMENTS

        (A)    Time and Place of Payments

        I will pay interest by making payments every month for the first _060_ payments
(the "Interest-Only Period") in the amount sufficient to pay interest as it accrues.  Every month
thereafter I will pay principal and interest by making payments in an amount sufficient to fully
amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over
the remaining term of the Note.  The principal and interest payment I pay may change as the
interest rate I pay changes pursuant to Section 4 of the Note.

        I will make my monthly payments on the 1st day of each month beginning
_July 1, 2004_____.  I will make these payments every month until I have paid all of
the principal and interest and any other charges described below that I may owe under the Note.
Each monthly payment will be applied as of its scheduled due date and will be applied to interest
before principal.  If, on __June 1, 2034_____, I still owe amounts under the Note, I
will pay those amounts in full on that date, which is called the "Maturity Date".

        I will make my payments at Att: Payment Processing, Mail Stop D1-11, P.O.
Box 3050, Columbia, MD 21045-6050
                                , or at a different place if required by the Note Holder.

        (B)    Amount of My Initial Monthly Payments

        Each of my initial interest-only monthly payments will be in the amount of
US$ _2,460.94_ .  This amount may change.

PR: #458530 v1 (9T3Y01!.DOC)
Doc # ▮▮▮▮▮ Image: Tbioajp1.prn App# ▮▮▮▮▮▮▮▮

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest-Only Addendum.

_____ (SEAL)
Laura Beall                     Borrower

_____ (SEAL)
                                Borrower

PR: 8458530 v1 (7ESY01I.DOC)
Doc # ▓▓▓▓▓▓  Image: Tbloajp2.prn  App# ▓▓▓▓▓▓▓▓▓▓

Loan #: ▓▓▓▓▓▓▓▓▓

## ADDENDUM TO FIXED RATE NOTE
### (Prepayment)

THIS ADDENDUM is made this  20th  day of  May        ,  2004      , and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.   Section 4 of the Note is modified to provide that I have the right to make payments of principal at any time before they are due.  A prepayment of all of the unpaid principal is known as a "full prepayment."  A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a full prepayment or a partial prepayment at any time without paying any penalty. However, if within the first   two          ( 2  ) year(s) after the execution of the Security Instrument I make full prepayment, I will pay a prepayment charge in an amount equal to two percent (2%) of the unpaid principal balance.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.    All other provisions of the Note are unchanged by this Addendum and remain in full force and effect.

Dated: ___May 20, 2004_____

_Laura Beall_
Laura Beall

Subprime Prepayment (1-5 Yrs) Addendum - Fixed Rate
- MO, NC (loans  over $300,000),
PA (loans over $50,000), RI (1 year only),
SC (loans over $100,000), VA (loans over $75,000)

-8480019 (0012)                    VMP MORTGAGE FORMS - (800) 521-7291

SPD #021
(01/02/01)

Doc # ▓▓▓▓/ Image: 8480019.prn App# ▓▓▓▓▓▓

# EXHIBIT D

# TO

# DEFENDANTS AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE CORP. D/B/A AMERICAN BROKERS CONDUIT, AND AHM SV, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

03/16/2004  23:13    7033529502    LAURABEALL    PAGE 15




# MORTGAGE LOAN ORIGINATION AGREEMENT

You (the applicant) agree to enter into this Mortgage Loan Origination Agreement with EAGLE FUNDING GROUP, LTD. (EFG) as an independent contractor to apply for a residential mortgage loan from a participating lender with which we from time to time contract upon such terms and conditions as you may request or a lender may require. You inquired into mortgage financing with EFG on _____ (date). We are licensed as a "Mortgage Broker" under the laws of the state of Maryland and Virginia.

**SECTION 1. Nature of Relationship.** In connection with this mortgage loan,

- We are acting as an independent contractor and not as your agent.

- We will enter into separate independent contractor agreements with various lenders.

- While we seek to assist you in meeting your financial needs, we do not distribute the products of all lenders or investors in the market and cannot guarantee the lowest price or best terms available in the market.

**SECTION 2. Our Compensation.** The lenders whose loan products we distribute generally provide their loan products to us at a wholesale rate.

- The retail price we offer you---your interest rate, total points and fees---will include our compensation.

- In some cases, we may be paid all of our compensation by either you or the lender.

- Alternatively, we may be paid a portion of our compensation by both you and the lender. For example, in some cases, if you would rather pay a lower interest rate, you may pay higher up-front points and fees.

- Also, in some cases, if you would rather pay less up-front, you may be able to pay some or all of our compensation indirectly through a higher interest rate in which case we will be paid directly by the lender.

We also may be paid by the lender based on (i) the value of the Mortgage Loan or related servicing rights in the marketplace or (ii) other services, goods or facilities performed or provided by us to the lender.

You may work with us to select the method in which we receive our compensation depending on your financial needs, subject to the lender's program requirements and credit underwriting guidelines.

The amount of fees and charges that you pay in connection with your loan will be estimated on your Good Faith Estimate. The final amounts will be disclosed on your HUD-1 or HUD-1A Settlement Statement.

By signing below, applicant(s) acknowledge that you have read and understand this document. You also acknowledge that you have received a copy of this document.

_Laura Beall_        3-18-04
LAURA BEALL        Date

_____
        Date

_Ann Marley_
EAGLE FUNDING GROUP, LTD.        Date

# EXHIBIT E

## TO

# DEFENDANTS AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE CORP. D/B/A AMERICAN BROKERS CONDUIT, AND AHM SV, INC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAULA RUSH                          :
                                    :
v.                                  :    Civil No. WMN-08-604
                                    :
SERVICELINK                         :

## MEMORANDUM

Now pending before this Court is the motion to dismiss, Paper No.
8, filed by Defendant, Servicelink.  Paper No. 8.  The motion is ripe
for decision.  Upon review of the pleadings and the applicable case
law, the Court determines that no hearing is necessary (Local Rule
105.6) and that the motion will be granted as to Plaintiff's federal
law claims and that the remaining state law claims will be remanded to
state court.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case arises out of a home refinance transaction entered into
by Plaintiff, pro se, Paula Rush in which Defendant Servicelink acted
as the settlement agent.  Plaintiff closed on her loan transaction on
April 3, 2006, at her home located at 2651 Peery Drive, Churchville,
Maryland.  A notary employed by Servicelink, Larry Provencal, acted as
the settlement agent at the closing.  Plaintiff alleges, inter alia,
that Servicelink overcharged her for the recordation of her deed in
the amount of $966[1]; that Servicelink recorded a deed that had been

---

[1]There appears to be no dispute that Servicelink overcharged
Plaintiff for recordation of the deed.  Plaintiff apparently paid
fees on the total amount of the loan, whereas, because she was
refinancing her home, she was only required to pay recordation
fees on the amount of the loan less the outstanding principal on
her original mortgages.  She alleges that she notified
Servicelink of this overcharge on April 15, 2007 - a little over
one year after the transaction.  Am. Compl. at ¶ 87.  Servicelink
issued her a refund check for $966 on April 17, 2007.  Id. & Ex.
H (refund check).

altered and that she had not signed; that Servicelink did not explain the loan documents to her prior to her signing them; that Servicelink forced her to waive her three day right of rescission; and that Servicelink failed to timely disburse the loan proceeds.

Plaintiff previously brought an action in this Court arising from the same transaction against Servicelink as well as the mortgage lender, loan originator, loan servicer, and appraiser.  See Rush v. American Home Mortgage et al., Civ. No. WMN-07-854 (American Home).[2] She alleged federal law claims against the lender, loan originator, and loan servicer (the American Home Defendants or AHM), but alleged only state law claims against Servicelink and the appraiser.  After AHM filed a suggestion of bankruptcy, staying the action against them, this Court declined to exercise supplemental jurisdiction over the state law claims, dismissing the complaint without prejudice as to Servicelink and the appraiser and administratively closing the case on October 25, 2007.  Thirty-one days thereafter, Plaintiff filed suit against Servicelink in the Circuit Court for Harford County, Maryland asserting both federal and state law claims.  Within thirty days of being served in that action, Servicelink removed the case to this Court on the basis of federal question jurisdiction.  See Notice of Removal ¶ 5.

On March 13, 2008, Servicelink moved to dismiss Plaintiff's complaint.  Plaintiff filed an amended complaint seeking to address

---

[2]Plaintiff also has filed a motion to consolidate this action with American Home.  Paper No. 10.  As will be discussed, infra, that action is currently administratively closed due to a bankruptcy stay.  The motion to consolidate will be denied as it would not further the interests of efficiency or judicial economy to consolidate under these circumstances.

some of the deficiencies raised in the motion to dismiss.[3]  The Amended
Complaint asserts three federal law claims - 1) Truth in Lending Act
(TILA) (Count I); 2) Real Estate Settlement Procedures Act (RESPA)
(Count II); and 3) Racketeer Influenced and Corrupt Organization Act
(RICO) (Count V) - and nine state law claims - 1) Voidable Title
(Count III); 2) Common Law Theft (Count IV); 3) Fraud and Deceptive
Acts (Count VI); 4) Negligence (Count VII); 4) Breach of Fiduciary
Duty (Count VIII); 6) Unjust Enrichment/Restitution (Count IX); 7)
Breach of Contract (Count X); 8) Conversion (Count XI); and 9)
Vicarious Liability (Count XII).  Servicelink has moved to dismiss the
amended complaint in its entirety.[4]

## II.  STANDARD OF LAW

     To survive a Rule 12(b)(6) motion to dismiss, "detailed factual
allegations" are not required, but a plaintiff must "provide the
'grounds' of h[er] 'entitle[ment] to relief'" and this "requires more
than labels and conclusions, [or] a formulaic recitation of the
elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombley,
127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  In
considering such a motion, the court is required to accept as true all
well-pled allegations in the Complaint, and to construe the facts and

_____

[3]Plaintiff's motion for leave to amend her complaint, Paper
No. 14, filed on April 7, 2008, was granted by a paperless order
of this Court on April 14, 2008.  The Amended Complaint, which
was attached to the motion for leave as Exhibit 1, never was
docketed, however.  The Court will direct the Clerk of the Court
to docket the Amended Complaint as of April 14, 2008.

[4]Plaintiff filed an opposition to Servicelink's motion to
dismiss the original complaint, but she has not opposed the
motion to dismiss the amended complaint.  As Servicelink's motion
to dismiss the amended complaint incorporates most of the same
arguments raised in the prior motion to dismiss, the Court will
treat Plaintiff's opposition as being addressed to the latter
motion.

reasonable inferences from those facts in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  A plaintiff must have alleged facts "to raise a right to relief above the speculative level[.]"  Twombley, 127 S.Ct. at 1965. "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 1969.

When a plaintiff alleges fraud, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  Thus, the plaintiff must plead the facts showing "the time, place, and contents of false representations, as well as the identity of the person making the representations and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).  Rule 9(b) is read in conjunction with Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief.

III. DISCUSSION

### A. Truth in Lending Act - Count I

Plaintiff asserts that Servicelink violated TILA, 15 U.S.C. § 1601 et seq., by, inter alia, misrepresenting the amount of recordation fees on the HUD-1 form presented to Plaintiff. Servicelink argues that Plaintiff cannot assert a cause of action against it under TILA because the Act applies only to creditors. Plaintiff does not respond to this argument in her opposition.

That TILA applies only to creditors cannot be disputed.  See 15 U.S.C. § 1601 et seq. (applying disclosure requirements to "creditors" and defining the term to mean those who "regularly extend consumer

4

credit" and to whom the borrower's debt initially is payable); see also Redic v. Gary H. Watts Realty Co., 762 F.2d 1181, 1185 (4th Cir. 1985) ("Only 'creditors' are subject to [TILA]'s civil penalties"). Plaintiff does not allege that Servicelink regularly extends consumer credit, but rather alleges that it performs settlement services. Am. Compl. ¶ 7. Accordingly, her TILA claim is not cognizable against Servicelink and Count I will be dismissed.[5]

### B. Real Estate Settlement Practices Act - Count II

Plaintiff alleges that Servicelink engaged in fee splitting and/or illegal referrals in violation of section 2607 of RESPA. See 12 U.S.C. § 2607. Servicelink contends that Plaintiff fails to state claim under RESPA and, alternatively, that her action is barred by RESPA's one-year statute of limitations.

The Court will begin by considering whether Plaintiff's action is time barred. For this court to dismiss a claim as time barred on a 12(b)(6) motion, the existence of the limitations defense must appear on the face of the complaint. See Mullinax v. Radian Guar. Inc., 199 F. Supp. 2d 311, 323 (M.D.N.C. 2002); see also Wright & Miller, 5B Federal Practice and Procedure § 1357 at p. 714 (3d ed 2004) (noting that running of a statute of limitations is "the most common situation in which [an] affirmative defense . . . provides a basis for a motion to dismiss"). In the instant case, the relevant dates all are alleged in Plaintiff's amended complaint and, thus, limitations may be grounds for dismissal.

RESPA provides that a cause of action alleging a violation of

---

[5]The Court need not address Servicelink's alternative arguments that Plaintiff's cause of action is barred by the applicable statute of limitations or that the conduct alleged does not violate TILA.

section 2607 must be brought "within . . . 1 year . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614. The "date of the occurrence of the violation" under RESPA occurs no later than the date of closing on the subject loan transaction as this is when the borrower is overcharged or charged fees incident to an illegal referral arrangement.  See Mullinax, 199 F. Supp. 2d at 325; see also Snow v. First American Title Ins. Co., 332 F.3d 356, 359 (5th Cir. 2003) (date of occurrence "refers to the closing"); Perkins v. Johnson, – F. Supp. 2d –, Civ. No. 06-cv-1503-RAB-PAC, 2008 WL 538882, at *5 (D. Colo. Feb. 25, 2008) (noting that "Courts have predominantly found the 'date of occurrence' to refer to the date of the closing of the loan" and collecting cases).[6]

Turning to the allegations of the amended complaint, there can be no dispute that Plaintiff brought this action after the statute of limitations expired.  Plaintiff closed on her loan on April 3, 2006. Am. Comp. ¶ 5.  Thus, the one year limitations period expired on April 3, 2007.  She filed the instant action in the Circuit Court for Harford County, Maryland on November 27, 2007, well beyond that date.

_____

[6]The majority of those courts that have considered the issue also have determined that the "discovery rule" is inapplicable to the RESPA statute of limitations because the limitations period begins to run from the "date of the occurrence of the violation" not from the date when the claim accrues.  See Mullinax, 199 F. Supp. 2d at 324; Snow, 332 F.3d at 361; Perkins, 2008 WL 538882 at * 6; see also Hamilton v. First Source Bank, 928 F.2d 86 (4th Cir. 1990) (holding that the discovery rule is inapplicable to the ADEA's statute of limitations, which requires a claim to be filed within 180 days "after the alleged unlawful practice occurred")(emphasis added); but see Estate of Henderson ex rel. Johnson v. Meritage Mortgage Co., 293 F. Supp. 2d 830, 835 (N.D. Ill. 2003) (concluding that the statutes of limitations on numerous state and federal claims, including a RESPA claim, did not begin the run until the Estate of a deceased woman who had suffered from dementia discovered the claims);

Plaintiff raises two arguments as to why this action is not time barred. First, she asserts that, because this Court declined to exercise supplemental jurisdiction over state law claims against Servicelink in the American Home action, the statute of limitations was tolled as to those claims pursuant to 28 U.S.C. § 1367(d)[7] during the pendency of that action and for an additional thirty days thereafter. Servicelink responds that, since Plaintiff did not assert a RESPA claim against it in her original action, section 1367(d)'s tolling provision is inapplicable and, in any event, Plaintiff brought this action thirty-one days after the dismissal of the claims in her prior action. The Court agrees with Servicelink that there can be no tolling under section 1367(d) for a claim that was not asserted against Servicelink in the original complaint and that, even if there had been tolling, the tolling period expired the day before Plaintiff brought her action in state court.

Plaintiff next argues that the statute of limitations should be equitably tolled.[8] "The doctrine of equitable tolling is applied

_____

[7]28 U.S.C. § 1367(d) provides, in pertinent part:

The period of limitations for any claim [over which the district court has supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

[8]Plaintiff also asserts in her amended complaint that Servicelink is "estopped" from asserting limitations. To the extent that she seeks to assert equitable estoppel in addition to equitable tolling, her argument must fail. Equitable estoppel applies with respect to statutes of limitations where "a plaintiff is aware of [her] potential claim, but 'the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline.'" Mullinax, 199 F. Supp. 2d at 326 (quoting English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987)). Plaintiff does not allege that she was aware of her RESPA claim against Servicelink during the running of the

7

sparingly." <u>Jones v. Saxon Mortgage Inc.</u>, 980 F. Supp. 842, 846 (E.D. Va. 1997) (citing <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96 (1990)). Plaintiff argues equitable tolling on the basis of fraudulent concealment. Fraudulent concealment "does not stop the clock; it moves the clock, starting it from when the wrong was discovered rather than when it was committed." <u>GO Computer, Inc. v. Microsoft Corp.</u>, 508 F.3d 170, 178(4th Cir. 2007)(citing <u>Bailey v. Glover</u>, 88 U.S. (21 Wall.) 342, 349-50 (1874)). In this circuit, a three part test applies where fraudulent concealment is asserted: "a claimant must establish that (1) the party pleading the statute [of limitations] fraudulently concealed facts which are the basis of a claim, and that (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." <u>Pocahontas Supreme Coal Co. v. Bethlehem Steel</u>, 828 F.2d 211, 218 (4th Cir. 1987).

Plaintiff alleges in her amended complaint, in a section entitled "Estoppel from Pleading and Tolling of Applicable Statute of Limitations," that Servicelink "knew of the misrepresented material facts of fees on the final HUD-1 interest rate, and has known of the misrepresented facts in the loan for some time, and had concealed it from Plaintiff, and has offered no explanations for the actions."[9] Am.

---

limitations period, but was prevented or discouraged from filing her claim due to misconduct on the part of Servicelink. Accordingly, Servicelink is not equitably estopped from raising the defense.

[9]Plaintiff does not allege in her amended complaint when she discovered the facts giving rise to her cause of action under RESPA. She does assert in her opposition that she learned of the overcharge for recordation of the deed on April 14, 2007, less than a year before she brought this action. Opp'n at ¶ 26. Because Plaintiff could amend her complaint to so allege, the Court will assume for purposes of this discussion that her action

Compl. ¶ 185.  She also makes various allegations throughout the amended complaint suggestive of the same argument.  See id. at ¶ 61 (Servicelink did not leave copies of settlement documents with Plaintiff after closing); id. at ¶ 64 (changes made to documents after closing and failure to leave documents with Plaintiff were "part of the concealment"); id. at ¶ 85 (Servicelink would have learned of the overcharge when it recorded the deed because the Clerk of the Court only accepts payment in the exact amount).

Accepting the truth of these allegations, they do not rise to the level of fraudulent concealment.  Plaintiff essentially alleges that Servicelink knew of its own wrongdoing, but did not disclose it. "'[M]ere silence, or one's unwillingness to divulge one's allegedly wrongful activities,' does not by itself establish fraudulent concealment," however.  Mullinax, 199 F. Supp. 2d at 329 (quoting Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir. 1988)).  "'Fraudulent concealment' implies conduct more affirmatively directed at deflecting litigation[.]"  Pocahontas, 828 F.2d at 219.  Moreover, Plaintiff does not make any allegations concerning the actions she took to discover Servicelink's alleged wrongdoing prior to the running of the statute of limitations, thus there is a complete lack of pleading with respect to due diligence. Finally, her allegations regarding Servicelink's concealment are vague and conclusory and do not provide sufficient particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure.  See id. at 219 (fraudulent concealment must be pled with particularity).  The statute of limitations having run and Plaintiff having failed to

---

would have been timely based upon the date when she discovered the alleged RESPA violations.

adequately plead equitable tolling, this Court will dismiss Count II of the amended complaint.

### C. RICO - Count V

Plaintiff alleges that Servicelink engaged in a RICO conspiracy with the <u>American Home</u> Defendants and Chicago Title, Servicelink's parent company, to defraud her.[10]  In order to plead a cause of action under RICO, a plaintiff must allege a "pattern of racketeering activity" and "adequately plead at least two predicate acts of racketeering activity[.]"  <u>Am. Chiropractic Assoc. Inc. v. Trigon Healthcare Inc.</u>, 367 F.3d 212, 233 (4th Cir. 2004) (citing 18 U.S.C. § 1961(5)).  Plaintiff alleges that Servicelink engaged in two types of predicate acts: mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343.  <u>See</u> Am. Compl. ¶ 18 ("Servicelink aided and abetted the Fraud and used wire and mail in the scheme.").  She does not, however, allege the predicate acts with adequate particularity under Rule 9(b) of the Federal Rules of Civil Procedure to survive a motion to dismiss.  <u>See</u> <u>Choimbol v. Fairfield Resorts, Inc.</u>, 428 F. Supp. 2d 437, 445 (E.D. Va. 2006) (heightened pleading standards of Rule 9(b) apply to allegations of mail and wire fraud).  Plaintiff does not plead the contents of the wires or mailings, who sent them, or when they were sent.  <u>See</u> <u>Lust v. Burke</u>, 876 F. Supp. 1474, 1480 (D. Md. 1994) ("In a RICO case, the 'circumstances constituting fraud' under Rule 9(b) refer to such

---

[10]Plaintiff alleges that she was forced by her lender to use Servicelink's services.  Even to the extent that this may constitute a RESPA violation, violations of RESPA are not predicate acts for RICO purposes.  <u>See</u> <u>Kerby v. Mortgage Funding Corp.</u>, 992 F. Supp. 787, 798 n.3 (Md. 1998).

matters as the time, place and contents of the false representations, as well as the identity of the person making the representation, and what [was] obtained thereby.") (internal quotation omitted)(alteration in original).

Even if this Court were to conclude that Plaintiff had pled the predicate acts sufficiently, she has failed to adequately allege a pattern of racketeering activity.  In order to show a pattern, a "plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238 (1989).  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  Id. at 241.  Viewing the allegations of the amended complaint in the light most favorable to the Plaintiff, there can be no doubt that Plaintiff has failed to satisfy this requirement. Her allegations of the predicate acts making up the alleged RICO conspiracy span, at most, a period of a few months prior to her loan closing – an insufficient time span for a RICO conspiracy.[11]  See id. at 242. ("predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement").  For all of these reasons, Count V must be dismissed.

**D. Supplemental Jurisdiction**

---

[11]Plaintiff's only allegations of continuing conduct are vague and conclusory.  See Am. Comp. ¶ 108 ("[t]his conduct constituted a pattern which has been identified in other regulatory actions against Servicelink").

As discussed above, Plaintiff filed this action in state court and it was removed to this Court solely on the basis of federal question jurisdiction.  <u>See</u> Notice of Removal at ¶ 5.  The federal law claims all having been dismissed, this Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims and will remand this case to the Circuit Court for Harford County, Maryland.  <u>See</u> 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction"); <u>see also</u> <u>Hinson v. Norwest Fin. South Carolina</u>, 239 F.3d 611, 617 (4th Cir. 2001) (district court has inherent power to remand removed case if it declines to exercise supplemental jurisdiction under section 1367(c)). Accordingly, the Court will not address the merits of Servicelink's arguments with respect to dismissal of the remaining nine state law counts.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will deny Plaintiff's motion to consolidate, will grant Servicelink's motion to dismiss as to Counts I, II, and V, and will remand this case to the Circuit Court for Harford County, Maryland.  A separate order will follow.

/s/

_____
William M. Nickerson
Senior United States District Judge

DATED: June 16, 2008