## Exhibit H

**Amended Complaint**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LAURA BEALL | CASE NO.:3:08-CV-482-RLW |
| | Judge Richard L. Williams |
| Plaintiff, | |
| | **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| | **JURY TRIAL DEMANDED** |
| AMERICAN HOME MORTGAGE INC. a New York corporation; VANGUARD MORTGAGE & TITLE, INC., f/k/a EAGLE FUNDING GROUP, a Delaware corporation; WELLS FARGO BANK, a South Dakota corporation; AMERICAN HOME MORTGAGE SECURITIES LLC, a Delaware limited liability company; AMERICAN BROKERS CONDUIT, a New York corporation; AH MORTGAGE ACQUISITION CO., INC f/k/a AMERICAN HOME MORTGAGE SERVICING, a Maryland corporation. JOHN AND JANE DOES 1-10. | |
| Defendants. | |

## PLAINTIFF'S LAURA BEALL'S FIRST AMENDED COMPLAINT

### AUTHORITY

Under Rule 15(a)(1)(a) of the Federal Rules of Civil Procedure, a party may amend its

pleading once as a matter of court if no responsive pleading has been served on the party.

## INTRODUCTION

1.      This action brought by Plaintiff, through counsel, Laura Beall, a citizen of the

Commonwealth of Virginia residing at 11002 Blue Roan Rd Oakton, Virginia, which is the

property at issue in this lawsuit. Ms. Beall seeks relief and remedies of the Equal Credit

Opportunity Act, 15 U.S.C. §§ 1691 ("ECOA"), Breach of Fiduciary Duty, Negligence and

Fraudulent Concealment.

## JURISDICTION AND VENUE

2.      This Court has personal jurisdiction over this action inasmuch as the Defendants

have conducted regular business in the State of Virginia and derived substantial revenue from

real estate, mortgage and other services regarding property in Virginia.

3.      Subject matter jurisdiction of this Court is invoked pursuant to a federal question

and supplemental jurisdiction of pendant state claims, 28 U.S.C. §1331 and 1367.

4.      Venue is proper in this Court because the Defendants conduct regular business in

various counties in the Eastern District of Virginia and the actions giving rise to the suit concern

real property located and damages caused in the Eastern District of Virginia.

## THE PARTIES

5.      Plaintiff, Laura Beall, is a natural person residing in Fairfax County, Virginia.

6.      Defendant, American Home Mortgage Corporation (AHM), is a publicly held

company. AHM is incorporated under the laws of the State of Maryland, with its principal place

of business in New York. The registered agent for AHM is Corporation Service Company, 11 S.

12th St., Richmond, VA 23218

7.      Defendant, American Brokers Conduit (hereinafter ABC), is a d/b/a of defendant American Home Mortgage Corporation. The registered agent for ABC is Corporation Service Company, 11 S. 12th St., Richmond, VA 23218

8.      Defendant, Vanguard Mortgage & Title, Inc., is formerly known as Eagle Funding Group Ltd. (hereinafter Eagle) and acted as agent for American Brokers Conduit, from a business location of 14100 Sullyfield Circle, Suite 500, Chantilly Virginia 20150. The registered agent for Eagle is Freimark Law Offices PLLC, 12610 Lake Normandy Lane, Fairfax, VA 22030.

9.      Defendant, American Home Mortgage Servicing, Inc. (hereinafter AHM SV), at all times relevant to this complaint was a Maryland Corporation, conducting business at 4600 Regent Boulevard, Suite 200 Irving, TX 75063.  American Home Mortgage Servicing, Inc. is now known as AHM SV, Inc., an affiliate of WL Ross & Co. LLC, 1166 Avenue of the Americas, New York, New York 10036. The registered agent for AHMSI is CT Corporation System, 4701 Cox Rd., Ste. 310, Glen Allen, VA 23060.

10.     Defendant, American Home Mortgage Securities LLC, is a limited liability company organized under the laws of Delaware, and acts as owner and managers of the AHMIT 2004-2 Trust. AHMIT 2004-2 is the holder in due course on the property known as 1102 Blue Roan Rd. Oakton VA 22124.  This trust is a bankruptcy remote, statutory trust organized under the laws of Delaware, and a separate legal entity that was created on June 1, 2004. This trust is managed by executives of American Home. The principal place of business is 538 Broadhollow Rd., Melville NY 11747. The registered agent is Corporation Service Company 2711 Centerville Road, Suite 400 Wilmington DE 19808.

11.    Defendant, Wells Fargo Bank, National Association (*"Wells Fargo Bank"*) acts the Indenture Trustee on AHMIT 2004-2 Trust. Wells Fargo Bank is a national banking association and a wholly-owned subsidiary of Wells Fargo & Company. The registered agent for Wells Fargo Bank is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

12.    Plaintiff, Laura Beall, through counsel, alleges upon information and belief, as follows:

## BACKGROUND

13.    Ms. Beall applied for a loan to refinance her primary residence of 11002 Blue Roan Rd Oakton, Virginia with Eagle Funding Group, Ltd., agent for American Brokers Conduit on March 15, 2004. Eagle Funding Group directly pledged the loan immediately to American Home Mortgage. American Home Mortgage controlled the entire loan application and approval process and therefore was responsible for every action taken by the broker Eagle Funding Group.

14.    Eagle Funding Group earned a 1% loan origination fee, a discount fee purported to obtain a lower interest rate and other fees for services.

15.    Eagle Funding and American Brokers Conduit failed to give Ms. Beall her good faith estimate within three days of loan closing, or her letter of credit rejection for the program for which she applied. Beall requested a 20 year fixed rate loan at 4.8%, and was switched to a 3/27, predatory loan. Eagle Funding Group failed to disclose the material terms of the loan.

16.    On May 7, 2004 Eagle Funding Group gave Ms. Beall a Federal Truth in Lending Disclosure Statement with an APR of 5.8% for a loan amount of $525,000, listing a total finance charge of $898,858.97 with total payments of $1,410,938.40, and no prepayment penalty within the 3/27 program, attached hereto as Exhibit A.

17.   A 0.2% prepayment penalty was added at the last minute when Ms. Beall was promised none. American Home Mortgage through American Brokers Conduit proceeded to charge Ms. Beall processing fees, of various nature, to add up to the $525,000 loan amount.

18.   American Home Mortgage through American Brokers Conduit paid the Yield Spread Premium (YSP) to Eagle Funding Group out of Ms. Beall's loan proceeds. This was not included as a finance charge in the Truth in Lending disclosures provided to Ms. Beall.

19.   Ms. Beall would later discover that the Truth in Lending disclosures included substantial overcharges in violation of the Truth in Lending Act (TILA).

20.   American Home Mortgage refused to disclose the master servicer or true owner of Ms. Beall's note; nonetheless, this assignee is subject to the same claims, counterclaims, or claims in recoupment as American Home Mortgage.

21.   AHM is responsible for the fees charged to borrowers for its loans. It individually underwrote and funded each loan, it approved each loan fee paid to a broker, and it aided its brokers in obtaining unearned fees described herein. With respect to a substantial portion of the loans, AHM was aware that little or no services were being performed in exchange for the broker charges. Further, AHM knew that the total of the broker compensation did not bear a reasonable relation to the level of the goods and services that the brokers provided or performed. In fact, AHM aided its brokers in obtaining the unearned fees described herein by performing many of the services for the brokers.

22.   AHM's brokers typically charged fees based on actual services rendered and then collected a YSP for adding things like a prepayment penalty, steering consumer into a particular type of loan, and charging higher then par rate for that loan. This increased loan proceeds and provided AHM with additional profits and with a mechanism through which to pay its brokers.

In doing so, AHM directly or indirectly gave a portion of the loan proceeds to its mortgage brokers to pay charges for which no or nominal services were rendered.

23.     Ms. Beall alleges that she was offered a higher-than-par-rate loan, a prepayment penalty, and charged inflated fees based on her gender and marital status.

24.     The defendants' policies and practices constitute a  pattern or practice of resistance to the full enjoyment of rights secured by the Equal Credit Opportunity Act

## COMPLAINT

25.     Plaintiff, Laura Beall, is a citizen of the Commonwealth of Virginia residing in Fairfax County and has owned her home at 11002 Blue Roan Road, Oakton Virginia 22124 for 23 years.  Ms. Beall refinanced a first trust through Eagle Funding acting as agent and/or partner for American Brokers Conduit on May 20, 2004.

26.     On information and belief, mortgage broker Eagle Funding Group, Ltd. acted as agent for American Brokers Conduit, located at 14100 Sullyfield Circle, Suite 500, Chantilly Virginia 20150, currently operating under the name Vanguard Mortgage & Title, Inc. at the same address.

27.     Defendant, American Home Mortgage a now-bankrupt company is a Maryland corporation in the business of originating and servicing mortgage loans, having a place of business at 538 and 520 Broadhollow Road, Mellville NY 11174.

28.     Defendant American Brokers Conduit is a wholly owned division of American Home Mortgage and under this arrangement marketed, advertised, and originated the predatory 3/27 ARM programs through various mortgage brokers acting as agents on their behalf.  For the

compensation of agency services, American Brokers Conduit paid a YSP or yield spread premium to Eagle Funding.

29.    Defendant, Wells Fargo Bank's Corporate Trust Services, according to Standard and Poors rating agency, is acting as the Master Servicer and Trustee for the securitization AHMIT 2004-2.  Their place of business is 9062 Old Annapolis Road, Columbia, Maryland 21045. In this capacity they were required to oversee the servicing activities of American Home Mortgage Servicing and intervene if the servicing activities were not being conducted in accordance to PSA agreement and state and federal laws. Wells Fargo participated in obfuscating the true owner of the note under TILA 1641(f)(2) repeatedly stating to Ms. Beall that they were not master servicer on Ms. Beall's loan.

30.    AHM operated as a mortgage lender, and through various nationwide brokers and agents, directly marketed mortgages.  AHM advertised, solicited, marketed, and brokered mortgage loans. In this capacity it originated the predatory loan on Ms. Beall's property.

31.    ABC, a division of AHM, and their company's agents completed loan applications on behalf of borrowers and those applications are processed by AHM. From the start of the application process, Eagle Funding was acting as agent for AHM, and AHM was part of the entire transaction from start to finish.

## FRAUDULENT CONCEALMENT

32.    Ms. Beall realleges all of the foregoing paragraphs.

33.    To invoke fraudulent concealment as a ground for equitable tolling, a plaintiff must demonstrate three elements: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim; (2) the plaintiff failed to discover those

facts within the statutory period, despite (3) the exercise of due diligence." *Barnes v. West, Inc.*, 243 F. Supp. 2d 559 (E.D. Va. 2003).

34.    Upon information and belief, AHM and Eagle knew of the misrepresented material facts of the interest rate on the loan to the Ms. Beall and has known of the misrepresented facts in the loan for some time, and has concealed it from Ms. Beall.

35.    Ms. Beall was unable to discover the fraud surrounding her loan origination until she received the loan file, working diligently with the AHM bankruptcy court in October 2007. Included in the loan file was the lock in sheet showing that on 3/15/04, Ms. Beall was locked into the loan by Eagle Funding for AHM.

36.    Ms Beall was provided a lock in sheet for the 3/27 starting on 3/15/04, with a start rate 5.25%. – 2 days after application of the 4.8%, 20 year. Eagle was required to disclose a lock in they chose for Ms. Beall, but she was never told about this lock. She was then told on 5/7/04 she had been locked into a 3/1 loan with AHM  - not the 3/27 loan Ms. Beall saw on her lock in sheet. She was told that she was locked in to a 3/1 loan because the rates were going up, and AHM were the only lender that would approve a loan for Ms. Beall. Ms. Beall was told that her loan was locked in a few days before 5/7/04.

37.    Ms Beall was misled about the LIBOR that at the time of closing which was 1.38%, and told it was a good and low index. No history was provided. Ms. Beall was not an investor expert and relied on the Eagle and AHM to provide truthful and factual information.

38.    The crippling effect of a 3/1 loan would not become apparent to Ms Beall until the loan was adjusted at the three year mark in July 2007, right before AHM declared bankruptcy on August 3, 2007.

39.     Given Defendants' Eagle and AHM failure to disclose information about the misrepresented nature of the loan program – information over which they had exclusive control - - and because Ms. Beall could not reasonably have known that the loan programs were thereby misrepresented until a complete analysis of her loan file, Defendants should be estopped from relying on any statutes of limitations that might otherwise be applicable to the claims asserted herein.

40.     Ms. Beall was not given the history of the indexes, nor a complete and accurate amortization schedule for her loan. It was not reasonably possible for Ms. Beall to discover the cause of the injury, or even to know that an injury had occurred, until considerably after the act which caused her injury.

41.     American Home Mortgage fraudulently concealed the material misrepresentation and the corruption of Eagle Funding which caused Ms. Beall to become burdened with a predatory loan. American Home Mortgage Securities LLC, and American Home Mortgage Servicing, as servicer for AHMIT 2004-2 trust obfuscated the true owner of note or master servicer by failing to comply to repeated requests by Ms. Beall made pursuant to TILA 1641(f)(2).

42.     AHM filed for bankruptcy protection on August 2, 2007. Ms. Beall petitioned the Bankruptcy court for a copy of her loan file in September 2007. The court provided Ms. Beall a copy of her loan file on October 31, 2007. Due to AHM's unwillingness to comply with Ms. Beall's Qualified RESPA Written Request to turn over Ms. Beall's loan file, Ms. Beall was required to petition the bankruptcy court handling AHM's case for a copy of her loan file. The loan file was not turned over to Ms. Beall until October 31, 2007. The owner of the loan note

was not included in the loan file provided by AHM. Only after the intervention of AHM

Bankruptcy trustee did AHM identify the owner of the loan as the AHMIT-2 trust in April 2008.

43.    Ms. Beall exercised due diligence in her attempts to ascertain the owner of the

loan note by submitting a Qualified Written Request to AHM and working with the bankruptcy

trustee to get her complete loan file in October 2007.

44.    Once the loan documents were received, Ms. Beall discovered a lock in sheet

initiated by Eagle Funding Group with American Brokers Conduit dated 3/15/04, the day she

applied for her loan. It stated that she was locked into a 3/27 loan at 5.25% until 6/18/04.

45.    The 3/27 loan she ended up in is considered a "predatory" loan by the Federal

Reserve and FDIC. Eagle Funding Group and American Brokers Conduit acted in concert to

ensure Ms. Beall's loan was within this program.

46.    Only after receiving her loan documentation in October 2007, Ms. Beall

discovered that the Defendants, Eagle and AHM acted to ensure she was placed in the predatory

3/27 loan. Her loan application was never submitted for the 20 year loan she applied for, nor the

7/1 and/or 10/1 she discussed as potential alternatives.

47.    Ms. Beall's credit score was good. Her home had a 75% LTV. She was employed

for 27 years on the same job, and had no 30 day late reporting for 7 years, with an income of

over $90,000. Based upon these credit factors, she should have received a rate of as low as

5.25% locked in for at least five years or in the alternative, a low fixed rate under 6%.

48.    Upon information and belief, American Brokers Conduit, was actively seeking

3/27 loans for their loan pools, and offered Eagle Funding Group incentives in the form of a

Yield Spread Premium (YSP) to put borrowers into these loans. Yield Spread Premiums are in

violation of RESPA if they are not for actual services rendered but rather are used as an incentive or kickback for delivering certain loan terms.

49.    Ms. Beall alleges that American Home Mortgage as a normal course of business, used YSP incentive rate sheets as a business model they defined quite clearly, as an incentive based bait & switch to trap unsuspecting borrowers into predatory loans.

WHEREFORE, Ms. Beall prays that the Court order that all statute of limitations were tolled and that all causes of action stand.


## BREACH OF FIDUCIARY DUTY

50.    Ms. Beall realleges all of the foregoing paragraphs.

51.    The specific elements for the tort of breach of fiduciary duty are: (1) a fiduciary duty was created; (2) the fiduciary duty was breached and (3) the breach proximately caused the injury of which the plaintiff complains.

52.    Defendant, Eagle Funding did establish a position of trust to act in the best interest of Ms. Beall and subsequently violated that duty due to the influence of American Home Mortgage and the incentive-based YSP compensation relationship. This trust was breached by Eagle to enrich American Home Mortgage, American Home Mortgage Servicing, American Home Mortgage Securities LLC, AHMIT 2004-2 Trust, Wells Fargo, and AH Acquisitions.

53.    Eagle placed Ms. Beall in a loan at a higher-than-par rate and pocketed a yield-spread premium (essentially a commission on the higher rate) from American Home Mortgage.

54.    Though Ms. Beall saw the term "yield-spread premium" on the loan documents, Ms. Beall had no idea at the time what it meant to the terms of her loan.

55.    Ms. Beall was justified in believing that Eagle would act in her best interest. Ms. Beall had no way of knowing Eagle had been influenced by a YSP-based incentive program AHM and ABC used to acquire Ms. Beall's loan

WHEREFORE, Ms. Beall prays for actual damages in the amount of $525,000, treble damages in the amount of $1,575,000 and equitable relief seeking the rescission of the loan contract.

## Equal Credit Opportunity Act (ECOA)

56.    Ms. Beall realleges all of the foregoing paragraphs.

57.    The purpose of the Equal Credit Opportunity Act is to prohibit discriminatory treatment by lenders. ECOA's credit notification provision requires lenders to notify consumers, within 30 days of receiving a completed application for credit, of what action is being taken on that application. This provision is intended to protect consumers from bait-and-switch tactics. 15 USC. §§ 1691-1691f.; Federal Reserve Board Regulation B, 12 C.F.R. 202.

58.    Specifically, the ECOA regulations provide that "[a] creditor shall notify an applicant of action taken within 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." Reg. B, 12 C.F.R. § 202.9(a)(l)(i).

59.    An application for credit is considered "complete" when the creditor receives, through its exercise of due diligence, the last piece of information regularly obtained in the loan application process." *Dufay v. Bank of Am. & S.A.*, 94 F.3d 561, 564 (9th Cir. 1996) (citing l2 C.F.R. § 202.2(f)). In other words, an application is complete when a creditor has enough

information to determine whether or not the consumer qualifies for a loan. *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444, 461 (E.D. Pa. 1998).

60.     If the action taken by the creditor is an "adverse action," then the notification must be in writing. 12 C.F.R. § 202.9(a)(2). If the creditor rejects the application and such rejection is coupled with a counteroffer accepted by the consumer, then there has been no "adverse action," and the creditor can give oral (versus written) notification. *Dorsey v. & Southern Financial Corp.*, 678 F.2d 137 (4th Cir. 1982); *Diaz v. Virginia Hous. Dev. Auth.*, 117 F. Supp. 2d 500 (E.D. Va. 2000); *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444 (E.D. Pa. 1998).

61.     Misrepresentations by a defendant toll the statute of limitations for a cause of action under ECOA. *Jones v. Saxon Mortgage, Inc.*, 980 F.Supp. 842 (E.D. Va. 1997), *aff'd*, 161 F.3d 2 (4th Cir. 1998).

62.     Another borrower, Edmond Andrews, submitted a loan application to AHM and is attached as Exhibit B and is incorporated herein. It shows that Mr. Andrews applied for loan from AHM three months after Ms. Beall did. The office where he applied for his loan was only five miles away from Eagle Funding. Mr. Andrews is Ms. Beall's age. Both applied for the same "no income" loan. Yet, he was granted a prime loan with an APR of 5.25%, a better loan type of 5/1 with lower profit margins, and no YSP or discount point was required.

63.     Ms. Beall alleges that her and Mr. Andrew's creditworthiness were nearly identical. Only their gender and marital status was different. But, Ms. Beall was only offered a 3/27 loan with a higher rate APR, a prepayment requirement of nearly $6000, and she was charged inflated fees.

64.     AHM and Eagle's alleged acts herein, constitute discrimination on the basis of race and sex in making available residential real estate-related transactions in violation of

Section 805 of the Fair Housing Act, 42 U.S.C. § 3605(a); and discrimination against applicants

with respect to credit transactions, on the basis of race and sex in violation of the Equal Credit

Opportunity Act, 15 U.S.C. § 1691(a)(1).

65.    AHM actively misled the plaintiff by assuring her that she was getting the most

favorable loan terms.

66.    AHM asserted to Ms. Beall that better loan terms were unavailable when in fact

they were made available to borrowers of a different gender with substantially the same credit

profile.

67.    AHM's discriminatory policies and practices were intentional and willful, and

were implemented with deliberate disregard for the rights of women.

68.    AHM  charged Ms. Beall and routinely charges single white female borrowers a

prepayment penalty when in fact another borrower may be offered different terms in violation of

ECOA.

69.    Ms. Beall was targeted to fulfill a need for certain types of loans to complete

credit mix profiles of American Home Mortgage securitized trusts. American Brokers Conduit is

an entity that goes out and searches for certain types of loans for securitized pools. American

Brokers Conduit is the American Home Mortgage entity that seeks out certain types of loans in

violation of ECOA instead of offering terms requested by borrowers or terms that borrowers

could have otherwise obtained in an open fair marketplace.

70.    Ms. Beall only became aware of the AHM's discriminatory actions and the

existence of the misrepresentations made regarding the loan terms upon delivery of

documentation paperwork of her loan in October 2007.

71.    Ms. Beall was induced by Defendant's assertions that she received the best loan terms for which she was qualified letting the filing deadline for the applicable statute of limitations period to pass.

72.    Eagle Funding Group processed an application for a 20 year fixed rate loan at 4.8%. Ms. Beall requests full loan rescission and these more favorable loan terms.


WHEREFORE, the Plaintiff prays for actual damages of $525,000, punitive damages in the amount of $1,000,000.00, and attorney's fees and costs.


## NEGLIGENCE

73.    Ms. Beall realleges all of the foregoing paragraphs.

74.    Any action based on negligence involves a violation of a legal duty owed by the defendant to the person injured. Thus, to support a finding of negligence by the court, a plaintiff must show that the defendant owed a duty to the plaintiff to use care, that he or she breached that duty, and that the breach was the actual cause of the resulting injury. *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, 585 S.E.2d 545, 548 (2003)

75.    In order to sustain an action for negligence per se, a plaintiff first must plead and prove a violation of law.  *Crist v. Fitzgerald*, 189 Va. 109, 52 S.E.2d 145 (1949).

76.    A party relying on negligence per se must produce evidence supporting a determination that the opposing party violated a statute enacted for public safety, that the proponent belongs to the class of persons for whose benefit the statute was enacted and the harm suffered was of the type against which the statute was designed to protect, and that the statutory

violation was a proximate cause of the injury. *Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77, 523 S.E.2d 823, 825 (2000).

77.    When the filing of an action is obstructed by a defendant's using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought. Va. Code Ann. § 8.01-229 (D).

78.    AHM actively obstructed Ms. Beall by intentionally refusing to provide Ms. Beall's loan application until on or about October 31, 2007 prevented Ms. Beall from ascertaining the type of loan she was given vis a vis the type she applied for.

79.    Eagle Funding and AHM acting as agent and principal, respectively, were negligent as both parties had a legal duty imposed by federal regulations, state and federal laws and under licensing requirements to act with great care in their conduct regarding real estate financing.

80.    They had the legal duty to Ms. Beall as a mortgagee, to follow all appropriate laws and regulations regarding proper real estate procedures of mortgage brokers and lenders.

81.    Eagle and AHM's negligence in failing to follow federal statute and regulations under ECOA was the proximate cause of her emotional distress and economic damages from the pending foreclosure of her home.

WHEREFORE, the Plaintiff prays for actual damages of $525,000, punitive damages in the amount of $1,000,000.00, and attorney's fees and costs.

Dated:   December 17, 2008

THE J.E. BOWMAN LAW FIRM
/S/   James E Bowman II__

James E. Bowman II
Virginia State Bar #72752
3900 Westerre Pkwy, Suite 300
Richmond, Virginia 23233
(804) 727-0041
Fax (888) 251-6228
jim@jebowman.com

*Attorney for Laura Beall*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 17, 2008, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF System, which will then send a notification to the following:

Michelle H. Holmes
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street NW, Fifth Floor
Washington, DC 20036
Telephone: *(202) 628-2000*
Facsimile: (202) 628-2011

# EXHIBIT A

MAY. 7.2004   4:02PM   EAGLE FUNDING GROUP   NO.795   P.3

EAGLE FUNDING GROUP, LTD

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for | ☐ VA ☐ FHA | ☒ Conventional ☐ USDA/Rural Housing Service | ☐ Other: | Agency Case Number | Lender Case Number 04CM-148A |
|---|---|---|---|---|---|

| Amount $ 525000.00 | Interest Rate 5.625 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☒ Other (explain): ARM (type) 5/1 INTEREST ONLY |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 11002 BLUE ROAN ROAD, OAKTON, FAIRFAX VA 22124 | 1 |

| Legal Description of Subject Property (attach description if necessary) See Preliminary Title Report | Year Built 1978 |

| Purpose of Loan | ☐ Purchase ☐ Construction ☐ Other (explain): ☒ Refinance ☐ Construction-Permanent | Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a + b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 1984 | Original Cost $ 195000.00 | Amount Existing Liens 280000.00 | Purpose of Refinance 15 Limited Cash-Out Re | Describe Improvements ☒ made ☐ to be made NEW ROOF NEW WINDOWS NEW CARPET FENC Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) LAURA A. BEALL | Manner in which Title will be held SOLE FEM | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) EQUITY | |

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) LAURA BEALL | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number 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 | Home Phone (incl. area code) 703-691-3092 | DOB (MM/DD/YYYY) 08/14/1966 | Yrs. School 15 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married ☒ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. ages | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent No. Yrs. 20 11002 BLUE ROAN ROAD OAKTON, VA 22124 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer ☐ Self Employed RE/MAX PREFERRED PROPERTIES NANCY GALLER 380 WEST MAPLE AVENUE #100 VIENNA, VA 22180 | Yrs. on this job 27 Yrs. employed in this line of work/profession | Name & Address of Employer ☐ Self Employed | Yrs. on this job Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business BROKER ASSOCIATE | Business Phone (incl. area code) 703-255-9700 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ | Name & Address of Employer ☐ Self Employed | Dates (from - to) Monthly Income $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

MAY. 7.2004   4:02PM    EAGLE FUNDING GROUP                    NO.795   P.4

## EAGLE FUNDING GROUP, LTD

### V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income * | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 3444.87 | 2480.94 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | 103.83 | 103.83 |
| Dividends/Interest | | | | Real Estate Taxes | 472.42 | 472.42 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| **Total** | $ | $ | $ | **Total** | 4021.12 | 3057.19 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| B/C | Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| | | |

### VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☒ Jointly ☐ Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description   Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | DAIMLERCHRYSLER LLC | 693.00 | 33865.00 |
| CHEVY CHASE BANK | | | 49 | |
| PO BOX 1296 | | | | |
| LAUREL, MD 20707 | | Acct. no.   1014832200 | | |
| Acct. no. 07P-327789-0 | $ 8386.00 | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | CAPITAL ONE BANK | 116.00 | 3886.00 |
| CHEVY CHASE BANK | | | 34 | |
| PO BOX 1296 | | | | |
| LAUREL, MD 20707 | | Acct. no. 470572116032 | | |
| Acct. no. 552-440084-1 | $ 20011.00 | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | GATEWAY/CBUSA NA | 154.00 | 2466.00 |
| FIDELITY & GUARANTY | | | 16 | |
| | | Acct. no. 6011766300006073 | | |
| | | Name and address of Company | $ Payment/Months | |
| Acct. no. RETIREMENT | $ 2112.95 | FLEET CC | 23.00 | 759.00 |
| Name and address of Bank, S&L, or Credit Union | | | 33 | |
| | | Acct. no. 4746440000484199 | | |
| | | Name and address of Company | $ Payment/Months | |
| | | CAPITAL ONE FSB | 19.00 | 163.00 |
| Acct. no. | $ | | 11 | |
| Stocks & Bonds (Company name/number & description) | $ | Acct. no. 8107701733204912 | | |
| | | Name and address of Company | $ Payment/Months | |
| | | COUNTRYWIDE | *3444.87 | *505225.00 |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | Acct. no. 2320046140060 | | |
| Subtotal Liquid Assets | $ 30509.95 | Name and address of Company | $ Payment/Months | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 635000.00 | | | |
| Vested interest in retirement fund | $ | Acct. no. | | |
| Net worth of business(es) owned (attach financial statement) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Automobiles owned (make and year) | | | | |
| 1997 GRAND CHEROKEE | $ 25000.00 | | | |
| Other Assets (itemize) | | Job-Related Expense (child care, union dues, etc.) | $ | |
| HOUSEHOLD | $ | | | |
| | | Total Monthly Payments | $ 4444.87 | |
| **Total Assets a.** | $ 690509.95 | Net Worth (a minus b) | $ 144048.95 | **Total Liabilities b.** | $ 546482.00 |

Freddie Mac 65  8/1/04                                Page 2 of 4                         Fannie Mae Form 1003 10/1/04
1003/CB 6/2/03                    Printed by The Lash Moeder from Central Software, Inc. (408) 370-1702

LAURA            BEALL

MAY. 7.2004    4:03PM    EAGLE FUNDING GROUP                    NO.795    P.5

## EAGLE FUNDING GROUP, LTD

### VI. ASSETS AND LIABILITIES [cont.]

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (Enter S if Sold, PS if pending sale or R if Rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 11502 BLUE ROAN ROAD | SFR | $ 635000.00 | $ 505225.00 | $ | $ 3444.87 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| Totals | $ 635000.00 | $ 505225.00 | $ | $ 3444.87 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

### VII. DETAILS OF TRANSACTION

| a. Purchase price | $ |
|---|---|
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 505225.10 |
| e. Estimated prepaid items | 6217.48 |
| f. Estimated closing costs | 6976.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) 1.000 | 5250.00 |
| i. Total costs (add items a through h) | 524668.58 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |

| m. Loan amount (include PMI, MIP, Funding Fee financed) | 525000.00 |
|---|---|
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 525000.00 |
| p. Cash from / to Borrower (subtract j, k, l & o from i) | -331.41 |

### VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

### IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material(s) to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity | ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | Ethnicity | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☒ White | Race | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex | ☒ Female  ☐ Male | Sex | ☐ Female  ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | CURTIS MAILLOUX | EAGLE FUNDING GROUP, LTD |
| ☐ Face-to-face interview | Interviewer's Signature | 14100 SULLYFIELD CIRCLE 600 |
| ☒ Mail | | CHANTILLY, VA 20151 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | |
| ☐ Internet | 703-934-8100 | |

Freddie Mac Form 65   01/04                    Page 8 of 8                    Fannie Mae Form 1003   01/04
LAURA BEALL                    Printed by The Loan Handler from Emingar Software, Inc. (417) 875-1725

MAY. 7.2004   4:03PM    EAGLE FUNDING GROUP                    NO.795   P.6

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B (for Borrower or C for Co-Borrower. | Borrower: LAURA BEALL | Agency Case Number: |
| | Co-Borrower: | Lender Case Number: 04C36-145A |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
| X | | X | |

Freddie Mac Form 65 01/04          Page 4 of 4          Fannie Mae Form 1003 01/04

Printed By The Loan Handler from Keystone Software, Inc. (858) 270-1700  www.easyloansoft.com

# EXHIBIT B

OMB NO. 2502-0265

| A. | | B. TY. OF LOAN: |
|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | | 1. ☐ FHA   2. ☐ FmHA   3. ☒ CONV. UNINS.   4. ☐ VA   5. ☐ CONV. INS. |
| **SETTLEMENT STATEMENT** | | 6. FILE NUMBER: 1746-04 (MFC) |
| | | 7. LOAN NUMBER: 0000565795 |
| | | 8. MORTGAGE INS CASE NUMBER: |

C. NOTE: *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*   LD  5/06  (1746-04.PFD/1746-04/23)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Silver Spring, MD 20901 | JAMES R. HEUGHENS and LAURA R. HEUGHENS 34679 Greentrees Road Sterling Heights, MI 48312 | American Home Mortgage Acceptance, Inc. 538 Broadhollow Road Melville, NY 11747 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:   52-1709374 | I. SETTLEMENT DATE: |
|---|---|---|
| ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓ Montgomery County, Maryland LOT 8 (2), "INDIAN SPRING HIGHLANDS" | PARAGON TITLE & ESCROW COMPANY<br><br>PLACE OF SETTLEMENT<br><br>7415 Arlington Road Bethesda, MD 20814 | August 20, 2004 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 460,000.00 | 401. Contract Sales Price | 460,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 14,104.55 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes           to | | 406. City/Town Taxes           to | |
| 107. County Taxes           to | | 407. County Taxes           to | |
| 108. F.F.B.C.           to | | 408. F.F.B.C.           to | |
| 109. PreOccup (19 days) | 1,520.00 | 409. PreOccup (19 days) | 1,520.00 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 475,624.55 | **420. GROSS AMOUNT DUE TO SELLER** | 461,520.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 20,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 333,700.00 | 502. Settlement Charges to Seller (Line 1400) | 31,385.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. 2nd Trust Proceeds-#174604-04 | 78,926.17 | 504. Payoff of first Mortgage to CitiMortgage, Inc. | 315,458.82 |
| 205. | | 505. Payoff of second Mortgage to Charter One Bank, N.A | 75,767.26 |
| 206. | | 506. | |
| 207. | | 507. Inspection Fee to C.M. Conlan | 125.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes           to | | 510. City/Town Taxes           to | |
| 211. County Taxes   07/01/04  to  08/20/04 | 400.20 | 511. County Taxes   07/01/04  to  08/20/04 | 400.20 |
| 212. F.F.B.C.           to | | 512. F.F.B.C.           to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. Water Escrow | 300.00 |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 433,026.37 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 423,436.28 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 475,624.55 | 601. Gross Amount Due To Seller (Line 420) | 461,520.00 |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 433,026.37 ) | 602. Less Reductions Due Seller (Line 520) | ( 423,436.28 ) |
| **303. CASH ( X FROM ) ( TO ) BORROWER** | 42,598.18 | **603. CASH ( X TO ) ( FROM ) SELLER** | 38,083.72 |

By signing page 2 of this statement, the signatories acknowledge receipt of a completed copy of page 1 of this two page statement.

## L. SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price $ 460,000.00 @ 5.5000 % 25,300.00 | | | | |
| Division of Commission (line 700) as Follows: | | | | |
| 701. $ 11,500.00 to Randall H. Hagner & Co. | | | | |
| 702. $ 13,800.00 to Long & Foster Realtors | | | | |
| 703. Commission Paid at Settlement | | | | 25,300.00 |
| 704. to | | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | |
| 801. Loan Origination Fee 1.0000 % to American Home Mortgage Acceptance, Inc. | | | 3,337.00 | |
| 802. Loan Discount % to American Home Mortgage Acceptance, Inc. | | | | |
| 803. Appraisal Fee to J. Duff & Associates | | | 500.00 | |
| 804. Credit Report to Equifax | | | 12.75 | |
| 805. Lender's Inspection Fee to American Home Mortgage Acceptance, Inc. | | | | |
| 806. Mortgage Ins. App. Fee to American Home Mortgage Acceptance, Inc. | | | | |
| 807. Assumption Fee to American Home Mortgage Acceptance, Inc. | | | 200.00 | |
| 808. Document Prep Fee to American Home Mortgage Acceptance, Inc. | | | 175.00 | |
| 809. Underwriting/Review Fee to American Home Mortgage Acceptance, Inc. | | | 72.00 | |
| 810. Tax Service Fee to American Home Mortgage Acceptance, Inc. | | | 15.00 | |
| 811. Flood Hazard Fee to First American Flood Data Service | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. Interest From 08/20/04 to 09/01/04 @ $ 52.140000/day ( 12 days %) | | | 625.69 | |
| 902. Mortgage Insurance Premium for months to | | | | |
| 903. Hazard Insurance Premium for 1.0 years to Travelers | | POC $569.00b | | |
| 904. | | | | |
| 905. | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | |
| 1001. Hazard Insurance 3.000 months @ $ 47.42 per month | | | 142.26 | |
| 1002. Mortgage Insurance months @ $ per month | | | | |
| 1003. City/Town Taxes months @ $ per month | | | | |
| 1004. County Taxes 5.000 months @ $ 243.45 per month | | | 1,217.25 | |
| 1005. F.F.B.C. months @ $ per month | | | | |
| 1006. months @ $ per month | | | | |
| 1007. months @ $ per month | | | -189.55 | |
| 1008. Aggregate Adjustment months @ $ per month | | | | |
| 1100. TITLE CHARGES | | | | |
| 1101. Settlement or Closing Fee to PARAGON TITLE & ESCROW COMPANY | | | 250.00 | 195.00 |
| 1102. Abstract or Title Search to FIDELITY NATIONAL TITLE & ABSTRACT | | | 150.00 | |
| 1103. Title Examination to PARAGON TITLE & ESCROW COMPANY | | | 65.00 | |
| 1104. Title Insurance Binder to PARAGON TITLE & ESCROW COMPANY | | | 35.00 | |
| 1105. Document Preparation to PARAGON TITLE & ESCROW COMPANY Releases/POA | | | | 360.00 |
| 1106. Notary Fees to PARAGON TITLE & ESCROW COMPANY | | | 5.00 | |
| 1107. Attorney's Fees to | | | | |
| (includes above item numbers: ) | | | | |
| 1108. Title Insurance to Fidelity National/Paragon Title | | | 1,841.00 | |
| (includes above item numbers: 1109, 1110 ) | | | | |
| 1109. Lender's Coverage $ 333,700.00 793.00 | | | | |
| 1110. Owner's Coverage $ 460,000.00 1,048.00 | | | | |
| 1111. Doc Proc to PARAGON TITLE & ESCROW COMPANY | | | 40.00 | |
| 1112. | | | 65.00 | 28.00 |
| 1113. Doc Trans to PARAGON TITLE & ESCROW COMPANY | | | | 42.50 |
| 1114. Payoffs Proc to PARAGON TITLE & ESCROW COMPANY | | | | 180.00 |
| 1115. Releases Proc to PARAGON TITLE & ESCROW COMPANY | | | | 25.00 |
| 1116. Wire Fee to PARAGON TITLE & ESCROW COMPANY | | | | |
| 1117. | | | | |
| 1118. | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. Recording Fees: Deed $ 40.00; Mortgage $ 40.00; Releases $ | | | 80.00 | |
| 1202. City/County Tax/Stamps: Deed 4,600.00; Mortgage | | | 2,300.00 | 2,300.00 |
| 1203. State Tax/Stamps: Revenue Stamps 2,829.00; Mortgage | | | 1,414.50 | 1,414.50 |
| 1204. State Transfer Tax to CLERK OF THE CIRCUIT COURT | | | 1,460.76 | 1,150.00 |
| 1205. 1st Half Property Taxes/04 to Montgomery County, Maryland | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | |
| 1301. Survey to CAPITOL SURVEYS, INC. | | | 190.00 | |
| 1302. Pest Inspection to Capitol Termite & Pest Control, Inc. | | | 78.00 | |
| 1303. Admin. Fee to Long & Foster Realtors | | | 225.00 | 370.00 |
| 1304. HO Warranty to HMS | | | | |
| 1305. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K) | | | 14,104.55 | 31,385.00 |

( 17454 (MPC)  17464 / 25 )

# ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

August 20, 2004                    Bethesda                        Maryland
   [Date]                              [City]                            [State]

~~~~~~~~~~~~~~~~~, Silver Spring, MD  20901
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 333,700.00            (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Home Mortgage Acceptance, Inc.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        5.625     %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on     October 1, 2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on       September 1, 2034            , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     Att: Payment Processing, Mail Stop D1-11, P.O. Box 3050, Columbia, MD  21045-6050 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,564.22           . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

DOC #:319891                    APPL #:0000565795

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT    Form 3590 1/01

-815N (0005)        1P01  0005
VMP MORTGAGE FORMS - (800)521-7291    Initials:
Page 1 of 4

# INTEREST-ONLY ADDENDUM
## ADJUSTABLE RATE NOTE

THIS INTEREST-ONLY ADDENDUM is made this ___20th___ day of ___August___, ___2004___, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") and the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ___American Home Mortgage Acceptance, Inc.___ ("Lender") of the same date and covering the property described in the Security Instrument and located at:

~~_____~~ Silver Spring, MD 20901 _____
[Property Address]

THIS ADDENDUM SUPERSEDES Section 3(A) and (B), Section 4(G) of the Note. None of the other provisions of the Note are changed by this addendum.

3.    PAYMENTS

(A)    Time and Place of Payments

I will make a payment on the first day of every month beginning ___October 1, 2004___. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as describe in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on ___September 1, 2034___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at: ___Att: Payment Processing, Mail Stop D1-11,___ ___P.O. Box 3050, Columbia, MD 21045-6050___ or at a different place if required by the Note Holder.

(B)    Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S. $ ___1,564.22___ before the First Principal and Interest Payment Due Date, and thereafter will be in amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(G)    Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be ___October 1, 2009___.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest-Only Addendum.

_____ (Seal)          _____ (Seal)
Edmund L. Andrews                        -Borrower          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

_____ (Seal)          _____ (Seal)
-Borrower          -Borrower

*[Sign Original Only]*

Doc # 943217/ Image# 943217.prn  App# 0000565795    New Investor (TB)  Interest-Only Addendum

Transfer of the Property or Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| _____ (Seal) | _____ (Seal) |
|---|---|
| Edmund L. Andrews                -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
|                                  -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
|                                  -Borrower | -Borrower |
| _____ (Seal) | _____ (Seal) |
|                                  -Borrower | -Borrower |

*[Sign Original Only]*

DOC #:319894                     APPL #:0000565795

-815N (0005)                     Page 4 of 4                     Form 3590 1/01

**7. BORROWER'S FAILURE TO _Y AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

DOC #:319893                    APPL #:0000565795                    Form 3200

-015N (0005)                    Page 3 of 4                    Initials:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

   **(A) Change Dates**
   The interest rate I will pay may change on the first day of    September, 2009    , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding    Two and One Quarter    percentage points (    2.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
   The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

   **(D) Limits on Interest Rate Changes**
   The interest rate I am required to pay at the first Change Date will not be greater than    10.625   % or less than    2.250   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than    10.625   %.

   **(E) Effective Date of Changes**
   My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

   **(F) Notice of Changes**
   The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.   BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

DOC #:319892                           APPL #:0000565795

@D-815N (0005)                         Page 2 of 4                           Form 3520    Initials:

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when □ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | □ VA  ☒ Conventional  □ Other (explain): | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | □ FHA  □ USDA/Rural Housing Service | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate  □ Other (explain): |
|---|---|---|---|---|
| $ 333,700.00 | 5.635 % | 360 | | □ GPM  ☒ ARM (type): 5/25 LIBOR 5/1/5 2.25% |

## PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | | | | No. of Units |
|---|---|---|---|---|
| Silver Spring, MD 20901 | | | | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| See attached | 1946 |

| Purpose of Loan | ☒ Purchase | □ Construction | □ Other (explain): | Property will be: |
|---|---|---|---|---|
| | □ Refinance | □ Construction-Permanent | | ☒ Primary Residence  □ Secondary Residence  □ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements □ made □ to be made |
|---|---|---|---|---|
| | $ | $ | | Cost: $ |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Title will be held by an individual. | | ☒ Fee Simple  □ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| Stocks/Bonds |

## IV. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Edmund L. Andrews | Co-Borrower's Name (include Jr. or Sr. if applicable) |

| Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| | | 01/15/1956 | | | | | |

| ☒ Married  □ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 3  ages 12,12,15 | □ Married  □ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|
| □ Separated | | □ Separated | |

| Present Address (street, city, state, ZIP) □ Own ☒ Rent /07 No. Yrs. | Present Address (street, city, state, ZIP) □ Own □ Rent ___ No. Yrs. |
|---|---|
| | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☒ Own □ Rent 15/00 No. Yrs. | Former Address (street, city, state, ZIP) □ Own □ Rent ___ No. Yrs. |
|---|---|
| 1346 LENNATH RD. NW  Washington, DC 20012 | |

## V. EMPLOYMENT INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Name & Address of Employer | □ Self Employed | Yrs. on this job | Name & Address of Employer | □ Self Employed | Yrs. on this job |
| NY TIMES  WASHINGTON, DC | | 15/00 | | | |
| | | Yrs. employed in this line of work/profession  15/00 | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business  ECONOMICS RPT/DC BUREAU | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | □ Self Employed | Dates (from – to) | Name & Address of Employer | □ Self Employed | Dates (from – to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

| Name & Address of Employer | □ Self Employed | Dates (from – to) | Name & Address of Employer | □ Self Employed | Dates (from – to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | Business Phone (incl. area code) | |

APP # 5000565795

Initials:

## MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | 1,300.00 | |
| Overtime | | | | First Mortgage (P&I) | | $ 1,564.32 |
| Bonuses | | | | Other Financing (P&I) | | 603.24 |
| Commissions | | | | Hazard Insurance | | 47.42 |
| Dividends/Interest | | | | Real Estate Taxes | | 243.45 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | 1,300.00 | 2,456.33 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| | Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|
| B/C | | $ |
| | | |
| | | |

## ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| Cash deposit toward purchase held by: | | | $ Payment/Months | $ Payment/Months |
| RBD | 20,000.00 | Name and address of Company | | |
| List checking and savings accounts below | | NATIONAL CITY MORTGA | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| SUNTRUST CHECKING | | | 1,366.00/130 | 177,091.0 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ 73,266.7 | SUNTRUST BANK | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| SUNTRUST CHECKING | | | 50.00/302 | 15,057.0 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ 352.35 | MBNA AMERICA BANK NA | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | 76.00/76 | 5,129.0 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | SILVER SPRING S | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | 302.00/* | 302.0 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/ number & description) NY TIME STOCK/ | $ 64,453.44 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ 157,102.40 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 450,000.00 | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: A/CS/SM Total pymt. | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) JR Exp Combined Total pymt. | $ | |
| | | Total Monthly Payments | $ 1,792.00 | |
| Total Assets a. | $ 607,3 | Total Liabilities b. | $ 402,523.40 | 137,575. |

DOC #:333562    Initials: [signature]    APP # 0000565795

Page 2 of 4

Freddie Mac Form 65
Fannie Mae Form 1003

[logo] -21N (0308)

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | 1,300.00 | |
| Overtime | | | | First Mortgage (P&I) | $ | 1,564.22 |
| Bonuses | | | | Other Financing (P&I) | | 603.24 |
| Commissions | | | | Hazard Insurance | | 47.42 |
| Dividends/Interest | | | | Real Estate Taxes | | 243.45 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ 1,300.00 | $ 2,458.33 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [X] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| JMD | 20,000.00 | Name and address of Company | $ Payment/Months | $ |
| | | NATIONAL CITY MORTGA | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| SUNTRUST CHECKING | | | | |
| | | Acct. no. | 1,366.00/130 | 177,091.00 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ 72,266.71 | SUNTRUST BANK | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| SUNTRUST CHECKING | | | | |
| | | Acct. no. | 59.00/302 | 15,057.00 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ 382.25 | MBNA AMERICA BANK NA | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | 78.00/70 | 5,129.00 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | SILVER SPRING S | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. | 302.00/* | 302.00 |
| | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/ number & description) NY TIME STOCK/ | $ 68,453.44 | | | |
| | | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value Face amount: $ | $ | | | |
| Subtotal Liquid Assets | $ 157,102.40 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 450,000.00 | Acct. no. | | |
| Vested interest in retirement fund | $ | Name and address of Company | $ Payment/Months | $ |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: A/CS/SM Total pymt. | $ | |
| | | Job-Related Expense (child care, union dues, etc.) JR Exp Combined Total pymt. | $ | |
| | | Total Monthly Payments | $ 1,793.00 | |
| Total Assets a. | $ 607,102.40 | Net Worth (a minus b) $ 409,523.40 | Total Liabilities b. | $ 197,579.00 |

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | M | $ 450,000.00 | $ 192,148.00 | $ | $1,416.00 | $ | $ |
| | | | | | | | |
| | | | | | | | |
| **Totals** | | $ 450,000.00 | $ 192,148.00 | $ | $1,416.00 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s).

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ 460,000.00 |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | 1,795.54 |
| f. Estimated closing costs | 4,611.75 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 466,607.29 |
| j. Subordinate financing | 80,300.00 |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) Cash Deposit | 20,000.00 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 333,700.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 333,700.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 32,607.29 |

## VIII. DECLARATIONS

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 8/20/09 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | | CO-BORROWER | |
|---|---|---|---|
| [ ] I do not wish to furnish this information. | | [ ] I do not wish to furnish this information. | |
| **Ethnicity:** | [ ] Hispanic or Latino  [X] Not Hispanic or Latino | **Ethnicity:** | [ ] Hispanic or Latino  [ ] Not Hispanic or Latino |
| **Race:** | [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American  [X] White  [ ] Native Hawaiian or Other Pacific Islander | **Race:** | [ ] American Indian or Alaska Native  [ ] Asian  [ ] Black or African American  [ ] White  [ ] Native Hawaiian or Other Pacific Islander |
| **Sex:** | [ ] Female  [X] Male | **Sex:** | [ ] Female  [ ] Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Bob Andrews | American Home Mortgage Acceptance, |
| [X] Face-to-face interview | Interviewer's Signature    Date | Inc. |
| [ ] Mail | | 1604 Springhill Road |
| [ ] Telephone | Interviewer's Phone Number (incl. area code) | Vienna, VA  22182 |
| [ ] Internet | 703-917-0575 | |

DOC #:333593
APP #:0000565795
Page 3 of 4
Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
-21N (0305)

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Edmund L. Andrews | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |



I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date 8/20/04 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

DOC: #1333694

-21N (0205)

APP # 0000565795

Page 4 of 4

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

**Seller:** JAMES R. HEUGHENS and LAURA R. HEUGHENS
**Lender:** American Home Mortgage Acceptance, Inc.
**Settlement Agent:** PARAGON TITLE & ESCROW COMPANY
(301)986-1114
**Place of Settlement:** 7415 Arlington Road
Bethesda, MD 20814
**Settlement Date:** August 20, 2004
**Property Location:** ████████████████
Silver Spring, MD 20901
Montgomery County, Maryland
████████████████

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
EDMUND L. ANDREWS

_____
JAMES R. HEUGHENS

_____
LAURA R. HEUGHENS

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
PARAGON TITLE & ESCROW COMPANY
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.