## Exhibit I

**Virginia Court Hearing Transcript and
Order Dismissing Virginia Action**

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

LAURA BEALL,                     .        Civil Action No. 1:08cv1307
                                 .
            Plaintiff,           .
                                 .
    vs.                          .        Alexandria, Virginia
                                 .        February 6, 2009
AMERICAN HOME MORTGAGE INC.;     .        10:13 a.m.
VANGUARD MORTGAGE & TITLE,       .
INC., f/k/a EAGLE FUNDING        .
GROUP; WELLS FARGO BANK;         .
AMERICAN HOME MORTGAGE           .
SECURITIES LLC; AMERICAN         .
BROKERS CONDUIT; AH MORTGAGE     .
ACQUISITION CO., INC., f/k/a     .
AMERICAN HOME MORTGAGE           .
SERVICING; AND JOHN AND JANE     .
DOES 1-10,                       .
                                 .
            Defendants.          .
                                 .
                                 .
    .    .    .    .    .    .    .    .    .    .

                TRANSCRIPT OF MOTION HEARING
        BEFORE THE HONORABLE LEONIE M. BRINKEMA
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:              JAMES E. BOWMAN, II, ESQ.
                                The J. E. Bowman Law Firm
                                3900 Westerre Parkway, Suite 300
                                Richmond, VA 23233


FOR DEFENDANTS AMERICAN         DAVID M. SOUDERS, ESQ.
  HOME MORTGAGE INC.;           MICHELLE H. HOLMES, ESQ.
  WELLS FARGO BANK;             Weiner Brodsky Sidman Kider PC
  AMERICAN HOME MORTGAGE        1300 19th Street, N.W., Fifth Floor
  SECURITIES LLC; AMERICAN      Washington, D.C. 20036
  BROKERS CONDUIT; AND
  AH MORTGAGE ACQUISITION
  CO., INC.:

                        (Pages 1 - 12)

        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

1   OFFICIAL COURT REPORTER:        ANNELIESE J. THOMSON, RDR, CRR
                                    U.S. District Court, Fifth Floor
2                                   401 Courthouse Square
                                    Alexandria, VA 22314
3                                   (703)299-8595

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1                      P R O C E E D I N G S
2              THE CLERK:  Civil Action 08-1307, Laura Beall v.
3   American Home Mortgage, Inc., et al.  Would counsel please note
4   their appearances for the record.
5              THE COURT:  All right, counsel, you need to put your
6   names on the record.
7              MR. BOWMAN:  James Bowman for Laura Beall.
8              THE COURT:  All right.
9              MR. SOUDERS:  Good morning, Your Honor.  Dave Souders
10  and Michelle Holmes for the defendants except for Eagle.
11             THE COURT:  All defendants except for Eagle.
12             MR. SOUDERS:  Correct, Your Honor.
13             THE COURT:  And Eagle has not been served; is that
14  correct?
15             MR. BOWMAN:  That is correct, Your Honor.  They have
16  basically rejected the waiver of service, so they have not
17  received a proper service yet.
18             THE COURT:  When did you file -- this -- actually, this
19  complaint was filed back in July, correct?
20             MR. BOWMAN:  That is correct, Your Honor.
21             THE COURT:  Well, you know, if you don't get them served
22  quickly, you'll -- we'll be dismissing that claim against them
23  under Federal Rule 4(m).
24             MR. BOWMAN:  We understand that, Your Honor.
25             THE COURT:  All right.  Now, what you have done is filed
```

1   what I find a very confusing complaint that, quite frankly, I

2   think we had to spend more time struggling with than we should

3   have had to, but as I understand it, the amended complaint that's

4   before the Court right now alleges a violation of the Equal Credit

5   Opportunity Act.  It alleges a negligence per se and a breach of

6   fiduciary duty cause of action.

7          On the ECOA -- or violation of the Equal Credit

8   Opportunity Act, you essentially allege that the various

9   defendants discriminated against your client on the basis of her

10  gender, and at times you referenced marital status, but I think

11  gender is the main thing you're talking about.

12         MR. BOWMAN:  Yes, Your Honor.

13         THE COURT:  It's interesting, as we read the amended

14  complaint, it almost looks as though you were also responding to a

15  motion to dismiss that had been filed as to the original

16  complaint, because there's a lot there about the statute of

17  limitations and equitable tolling, but clearly, you recognize the

18  fact that the ECOA claim is brought beyond the two-year time

19  period for the statute of limitations, and the only way in which

20  that claim would survive the statute is if there's a basis for

21  equitable tolling.  I think you admit that in your complaint.

22         MR. BOWMAN:  We do.

23         THE COURT:  All right.  Well, the problem that you have,

24  as the defense points out, is there's absolutely no proper

25  allegation of facts that would indicate some fraudulent covering

5

1   of any of the relevant information as to an ECOA violation.

2   Again, the violation with ECOA is that your client as a single

3   female was given -- intentionally given less favorable credit

4   opportunities by the defendants because of her gender and marital

5   status.

6         The complaint alleges only one comparator, one man, who

7   you allege is, the way the evidence is, that he got a better

8   treatment.  Now, I don't think any court would find that a

9   one-person comparator is enough to even make a claim, but

10  secondly -- and again, this is to some degree outside the scope of

11  the complaint, but in the defendants' papers, they indicate that

12  that man, among other things, asked for a smaller loan, had a

13  larger down payment or a larger personal equity in the product,

14  and most tellingly, did not report a bankruptcy within the

15  previous seven years.  So there's a comparison of apples and

16  oranges there, but that's on the merits.

17        The first and foremost issue, frankly, is the statute of

18  limitations issue, and I still don't see how you can properly

19  argue that there's any evidence of an intentional covering up or

20  concealment of the information that would have been necessary for

21  your client to be able to raise the ECOA claim within two years.

22        I'm going to give you one last chance if you have it, so

23  go to the lectern and let me know what you've got on that.

24        MR. BOWMAN:  I, I apologize that we only had just the

25  one point of data regarding the alleged violation.

6

1        THE COURT:  And you got that from what, the Internet?

2        MR. BOWMAN:  We actually got that from the other

3   borrower, who was -- he's actually a reporter for the *New York*

4   *Times*, and he offered the information of his loan to Ms. Beall,

5   and --

6        THE COURT:  When did he do that?

7        MR. BOWMAN:  He made the offer the -- I don't know

8   specifically when the offer was made, but it was made in the fall

9   of '08 to my client.  She provided that information to me to

10  incorporate into the, into the complaint.

11       THE COURT:  But you would agree one person -- I mean,

12  how do you compare those two?

13       MR. BOWMAN:  Well, the -- I will say that the terms of

14  the loans are actually inaccurate as the defendants briefed.  The

15  loan for the gentleman was actually a 90 -- was actually only 10

16  percent down, and the loan amount was actually for $412,000, as

17  opposed to my client's 525,000.

18       He stated no income.  He basically got much better

19  terms, and even though the defense has stated that my client had

20  declared bankruptcy, it is inaccurate that she had declared

21  bankruptcy in the last seven years, and, in fact, the original

22  loan application she filed out -- she filed incorrectly stated

23  there was a bankruptcy in the last seven years.  She actually

24  marked it as "No."

25       And when the loan actually was approved and she was

7

1  faced with signing the document, the settlement agent stated that

2  there was actually a mark still that a bankruptcy had been filed

3  in seven years.  She said that's incorrect; we need to change

4  that; and then the settlement agent told her that to do so would

5  basically invalidate the closing; they'd have to basically start

6  from scratch.  So she decided not to get that correction made.

7        THE COURT:  And again, we're way beyond the scope of the

8  complaint itself, but, I mean, on the face of the complaint, the

9  ECOA claim is time-barred.  It is.  And I don't think you can use

10  a complaint to argue a motion to -- against a motion to dismiss.

11        I just don't see the necessary allegations that would

12  get you around the problem that that claim is time-barred, and

13  therefore, I am going to grant the motion to dismiss.  The ECOA

14  count is out.

15        Now, the other two counts that are left in this case

16  are, are also -- in my view are very, very problematic.  You have

17  this negligence claim based essentially on the defendants' failure

18  to take care of -- in this transaction.

19        You know, I looked at the attachments.  Now, I recognize

20  you did not plead in your complaint that your client was herself a

21  real estate broker or assistant broker, whatever the title was.

22        MR. BOWMAN:  Correct.

23        THE COURT:  You know, the defendants just harp on that

24  in their papers, that your client had, what, 27 years' experience

25  in the real estate industry.

8

1        MR. BOWMAN:  That is correct.  She didn't actually --
2  her role was in selling properties, not in actually conducting any
3  financial closings.
4        THE COURT:  But it's impossible for her to argue in good
5  faith that she doesn't understand the basics of real estate
6  financing.  I mean, your case would have more merit, in my view,
7  if your client were, you know, a poorly educated person perhaps
8  for whom English is not the first language.  I've had several of
9  those cases in which one could reasonably be concerned about
10 whether a mortgage of this type could be considered predatory or
11 unfair, taking advantage of someone who might be considered naive,
12 but that's not this plaintiff, and even though the papers are not
13 all attached, because they are clearly referenced within the
14 complaint, it was not inappropriate for the Court to look at the
15 various HUD and RESPA and the other documents that accompanied
16 this loan.  Your client signed all of them.
17       This clearly was an adjustable rate mortgage, with the
18 first three years locked in.  There was also an interest-only
19 addendum which gave your client, I think, the first two years of
20 the three-year lock-in period the benefit of just having to pay
21 interest only.  There was an absolute cap on the total interest
22 that she would ever have to pay.
23       The floating, the floating amount that would go into
24 effect after the third year is clearly described, and your client
25 is an experienced person in the real estate industry, who clearly

1   knows what a 327 -- or however you call it -- mortgage is like.

2   She would know what the -- I think I'm mispronouncing it -- the

3   LIBOR index is, and a lot of these mortgages go to different types

4   of indexes.  That's actually, I think, a fairly low index compared

5   to prime rate and some of the other ones.

6          But, you know, you're arguing both negligence per se and

7   you're arguing breach of fiduciary duty, and you've got a

8   plaintiff who is a savvy person, who goes in, signs papers, is

9   getting a very beneficial financial arrangement at least for the

10  first two years at the time when the mortgage market was just

11  percolating.  I don't understand how one argues that there was

12  negligence here.

13         And, of course, as these defendants also point out, the

14  real culprit, if there is a culprit here, would seem to be Eagle,

15  the party that's not here.  These defendants come in behind Eagle.

16  They're the lenders.  They're the people who now hold the note,

17  and they were the lenders, but from what I can see, it was with

18  Eagle that she was dealing continuously.

19         Is there any evidence that you've got that your client

20  ever directly dealt with any of the other defendants?

21         MR. BOWMAN:  Only after the loan was completed, not --

22  basically, every, every contact she had after the loan was closed

23  was with American Home Mortgage.

24         THE COURT:  Because she was trying to refinance?

25         MR. BOWMAN:  That's correct.  And that's actually where

1  she started to realize the type of loan she was in and the terms

2  that were used and how she was treated when, compared to other

3  people, at least one other person specifically, how her loan terms

4  were not as favorable as another person's who had truly a similar

5  situation financially, and that's --

6          THE COURT:  But, you know, on this mortgage loan

7  origination agreement, which is one of the documents that I think

8  was submitted, I can't recall whether it was one of your

9  attachments or one of the defendants' attachments, that she also

10  signed, now, she signed that on 3/18/04, which is before the

11  actual mortgage deal went through, but that was between Ms. Beall

12  and Eagle Funding Group, and in that, in section 1, they describe

13  the nature of the relationship in connection with the mortgage

14  loan, and they say in the first bullet, "We are acting as an

15  independent contractor and not as your agent."

16          They indicate in the next bullet, "We will enter into

17  separate independent contractor agreements with various lenders,"

18  and the third bullet, "While we seek to assist you in meeting your

19  financial needs, we do not distribute the products of all lenders

20  or investors in the market and cannot guarantee the lowest price

21  or best terms available in the market."

22          And then the section 2 goes in some detail as to how

23  they will be compensated, puts her on notice that the price that

24  they offer her, her interest rate and total points and fees will

25  include their compensation.  In some cases, they may be paid all

1  of their compensation by either you, that would be the borrower,

2  or the lender, and then there are some other things that go on

3  there.

4          And it says at the end, "By signing, the appellant

5  acknowledges that you have read and understand this document.  You

6  also acknowledge that you have received a copy of this document,"

7  and it's signed by Ms. Beall.

8          It seems to me this puts any reasonable person who

9  understands the English language on notice that she may not be

10  getting the best possible deal from this group, and I don't see

11  how that gives her a cause of action that somehow she's been, you

12  know, misled by them.

13          In other words, I must tell you I see this first of all

14  as a very confusingly drafted complaint.  I see allegations in

15  here that make absolutely no sense, and I don't see any way in

16  which as to these defendants there's any basis to keep them in

17  this case.  Your issues, if you have issues, would appear to be

18  with Eagle.  That was the broker.  That was the entity that set

19  this deal up.

20          So I'm giving you one last chance to explain to me if

21  there's anything that I'm missing here.

22          MR. BOWMAN:  I don't have anything additional to offer

23  at this time.

24          THE COURT:  All right.  Well, then I'm going to go ahead

25  and grant the motion.

12

1        Now, in terms of Eagle, if you can find them -- do you

2   know where they are?

3        MR. BOWMAN:  Yes.  We do actually know the principal,

4   who actually is now working for another mortgage company.

5        THE COURT:  Then you need to get service done quickly,

6   or you're going to get one of those -- we have a standard order

7   that we submit to counsel if a defendant has not been served

8   within 120 days.  So you would be required to show cause why the

9   case should not be dismissed.

10       Do you expect to get that party served quickly?

11       MR. BOWMAN:  I do.

12       THE COURT:  All right, go ahead and do that.

13       So the other defendants are dismissed with prejudice.

14  Thank you.

15                      (Which were all the proceedings

16                       had at this time.)

17

18              CERTIFICATE OF THE REPORTER

19     I certify that the foregoing is a correct transcript of the

20  record of proceedings in the above-entitled matter.

21

22

23                      _____
                                /s/
24                        Anneliese J. Thomson

25

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
                                    FILED
                                  FEB - 6 2009
                              CLERK, U.S. DISTRICT COURT
                                 ALEXANDRIA, VIRGINIA
```

```
LAURA BEALL                   )
                              )
     Plaintiff,               )
                              )
v.                            )     1:08cv1307 (LMB/TCB)
                              )
AMERICAN HOME MORTAGE INC.,   )
et al.,                       )
                              )
     Defendants.              )
                              )
```

ORDER

For the reasons stated in open court, defendants American Home Mortgage Inc., American Brokers Conduit, and AH Mortgage Acquisition Co., Inc.'s Motion to Dismiss [24] is GRANTED, defendants Wells Fargo Bank and American Home Mortgage Securities LLC's Motion to Dismiss [25] is GRANTED, and it is hereby

ORDERED that all counts in the Amended Complaint be and are DISMISSED WITH PREJUDICE against defendants American Home Mortgage Inc., American Brokers Conduit, AH Mortgage Acquisition Co., Inc., American Home Mortgage Securities LLC, and Wells Fargo Bank.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 6 day of February, 2009.


Alexandria, Virginia

                                        /s/ _____
                                        Leonie M. Brinkema
                                        United States District Judge

# Exhibit J

## Chart of Beall Claims and Responses Thereto

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| ECOA | The Debtors routinely asserts to single white females that certain terms are unavailable and that Ms. Beall was targeted to fulfill a need for certain types of loans to complete credit mix profiles. | Included in Virginia Court Action, Dismissed With Prejudice |
| Equal Credit Opportunity Act (ECOA) | Appears to be based on same argument as ECOA cause of action listed above. | Included in Virginia Court Action, Dismissed With Prejudice |
| Fraudulent Concealment | Ms. Beall, despite excellent credit score, was "tricked into a predatory loan" by the Debtors. | Included in Virginia Court Action, Dismissed With Prejudice<br><br>To the extent Ms. Beall asserts that this is not a "true" cause of action against the Debtors in the Virginia Action, the principles of res judicata and claim splitting are still applicable and would bar the claim. |
| Breach of Contract | Debtors breached implied duty of good faith and fair dealing. | Claim Splitting.  See Objection<br><br>Duplicative of assertions regarding "Contract Law" and "Breach of Contract"<br><br>Claimant fails to (i) cite to any provision of contract that Debtors breached; (ii) identify any action by the Debtors which constituted such breach; and/or (iii) damages resulting from such breach. |

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| Contract Law | Debtors breached contract by using fraud and misrepresentation to induce her into the contract. | Claim Splitting. See Objection<br><br>Duplicative of assertions regarding both claims for "Breach of Contract" and "Breach of Contract" as well as fraud and misrepresentation claims.<br><br>Additionally, claimant fails to (i) cite to any provision of contract that Debtors breached; (ii) identify any action by the Debtors which constituted such breach; and/or (iii) damages resulting from such breach. |
| Breach of Fiduciary Duty | Eagle breached fiduciary duty to Ms. Beall by accepting a yield spread premium in return for asserting certain terms in the mortgage loan transaction. (Argues Eagle as agent for AHM.) | Included in Virginia Court Action, Dismissed With Prejudice |

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| Consumer Fraud and Deceptive Business Practices Act | The Debtors' practices were unfair and deceptive and Ms. Beall relied on the deception to her detriment. Claimant cites to Section 5(a) of the Federal Trade Commission Act [15 U.S.C. § 45]. | There is no private right of action under the Federal Trade Commission Act. See Holloway v. Bristol-Myers Corp., 485 F.2d 986 (D.C. Cir. 1973) (no implied private right of action); Pep Boys-Manny, Moe & Jack, Inc. v. Fed. Trade Comm., 122 F.2d 158, 161 (3d Cir. 1941) ("The procedure in the Federal Trade Commission Act is prescribed in the public interest as distinguished from provisions intended to afford remedies to private persons."). |
| | | Assuming *arguendo* that a private cause of action exists, Claimant fails to identify (i) an act or practice; (ii) an intent by defendant that plaintiff rely on the deception; and/or (iii) harm suffered by such alleged deception. |
| | | Claim Splitting. See Objection. |
| | | Duplicative of "UTP (Unfair Trade Practices and Consumer Protection Law)"; "Deceptive Business Practices Act"; and "FTC Act" |

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| Common Law Fraud | Eagle made many false statements of material fact, knowing the statements were untrue at the direction of American Home Mortgage and for the reward of a yield spread premium in return for asserting certain terms in the mortgage loan transaction. (Argues Eagle as agent for AHM.) | Res Judicata/Claim Splitting.  See Objection.<br><br>Claimant fails to meet the heightened pleading requirements under Fed. R. Civ. P. 9.<br><br>Duplicative of misrepresentation claims and RESPA claims.<br><br>Yield Spread Premium does not violate RESPA. See Memo in Support of Motion to Dismiss, pp. 15-16. |
| RESPA 12 U.S.C. § 2601; 24 C.F.R. Part 3500 et seq. | Ms. Beall did not receive appropriate disclosures including (i) yield spread premium and (ii) good faith estimate of settlement costs within 3 days of when a consumer applies for a loan. | One-year statute of limitations passed prior to the Petition Date.  12 U.S.C. § 2614.<br><br>RESPA provides no private right of action for failure to provide a good faith estimate.  See Memo in Support of Motion to Dismiss, p. 15.<br><br>Yield Spread Premium does not violate RESPA. See Memo in Support of Motion to Dismiss, pp. 15-16.<br><br>Res Judicata/Claim Splitting.  See Objection.<br><br>Duplicative of RESPA claim. |

066585.1001

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| RESPA | The Debtors inappropriately provided a yield spread premium to Ms. Beall's broker. | One-year statute of limitations passed prior to the Petition Date.  12 U.S.C. § 2614.

Yield Spread Premium does not violate RESPA.  See Memo in Support of Motion to Dismiss, pp. 15-16.

Res Judicata/Claim Splitting.  See Objection.

Duplicative of RESPA 12 U.S.C. § 2601; 24 C.F.R. Part 3500 et seq. |
| Truth in Lending Act (TILA) | Assertion of breach of disclosures of "accurate APR, accurate loan charges including title insurance and all fees, a discount in interest rate for paying a discount point, accurate material disclosures and explanations of loan term and the loan terms she qualified for based on fair and objective standard." | One-year statute of limitations for damages passed prior to the Petition Date.  15 U.S.C. § 1640(e).

Three-year statute of repose for recission passed prior to the Petition Date. 15 U.S.C. § 1635(f).

Res Judicata/Claim Splitting.  See Objection. |
| U.C.C. – Article 3 – Negotiable Instruments | The contract is void pursuant to § 3-305 of the U.C.C. because the contract is build upon fraud, negligence and misrepresentation of essential terms.  Additionally, the original note is missing, lost or stolen. | Because the Debtors do no longer have rights in the contract or loan, voidability is an inapplicable remedy as against the Debtors.

Res Judicata/Claim Splitting.  See Objection. |

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| UTP (Unfair Trade Practices and Consumer Protection Law) | Claimant does not reference a specific statute, but argues that the Debtors engaged in "numerous practices against Ms. Beall found throughout this complaint which any jury would find outrageous, unjust, fraudulent and unfair in violation of the Deceptive Business Consumer claims for sales abuses or misrepresentations. These practices are covered under Unfair Trade Practices and Consumer Protection Law ("UTP"). | The Virginia Consumer Protection Act expressly excludes mortgage lenders. Va. Code Ann. § 59.1-199.

To the extent that Claimant is referencing federal statutes, there is no private right of action under the Federal Trade Commission Act. See Holloway v. Bristol-Myers Corp., 485 F.2d 986 (D.C. Cir. 1973) (no implied private right of action); Pep Boys-Manny, Moe & Jack, Inc. v. Fed. Trade. Comm., 122 F.2d 158, 161 (3d Cir. 1941) ("The procedure in the Federal Trade Commission Act is prescribed in the public interest as distinguished from provisions intended to afford remedies to private persons."). Moreover, any causes of action for violations of TILA or RESPA are barred by the applicable statute of limitations.

Res Judicata/Claim Splitting. See Objection.

Duplicative of "Consumer Fraud and Deceptive Business Practices Act"; "Deceptive Business Practices Act"; and "FTC Act" |

066585.1001

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| Deceptive Business Practices Act | The Debtors engaged in "numerous practices against Ms. Beall found throughout this complaint in violation of the Deceptive Business Practices Act." Claimant cites to 15 U.S.C. § 45. | "Section 5 of the Federal Trade Commission Act, as amended by the Lea-Wheeler Act of 1938, 15 U.S.C.A. § 45, declares that "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful". This was evidently for the purpose of strengthening the power of the Trade Commission, which was therein created to enforce its provisions, *but the Act nowhere gives any additional right of action to persons injured by unfair trade practices.* On the contrary, it expressly provides that nothing therein shall "be construed to alter, modify, or repeal the said antitrust Acts." 15 U.S.C.A. § 51." Atlanta Brick Co. v. O'Neal, 44 F. Supp. 39, 42 (D. Tex. 1942) (emphasis added); see also Holloway v. Bristol-Myers Corp., 485 F.2d 986 (D.C. Cir.1973) (no implied private right of action under the Federal Trade Commission Act). Res Judicata/Claim Splitting. See Objection. Duplicative of "Consumer Fraud and Deceptive Business Practices Act"; "UTP (Unfair Trade Practices and Consumer Protection Law)"; and "FTC Act" |

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| FTC Act | "The practices contained herein offend public polices and are immoral, unethical, oppressive and unscrupulous causing substantial harm to consumers." | There is no implied private right of action under the Federal Trade Commission Act.  See Holloway v. Bristol-Myers Corp. 485 F.2d 986 (D.C. Cir. 1973) (no implied private right of action); Pep Boys-Manny, Moe & Jack, Inc. v. Fed. Trade. Comm. 122 F.2d 158, 161 (3d Cir. 1941) ("The procedure in the Federal Trade Commission Act is prescribed in the public interest as distinguished from provisions intended to afford remedies to private persons."). <br><br> Res Judicata/Claim Splitting.  See Objection. <br><br> Duplicative of "Consumer Fraud and Deceptive Business Practices Act", "UTP (Unfair Trade Practices and Consumer Protection Law)", and "Deceptive Business Practices Act" |
| Intentional Infliction of Emotional Distress | The Debtors inflicted severe emotional distress on Ms. Beall, by putting her personal welfare and good credit at risk, and by involving and seeking to control her property.  The extreme and illegal activities caused Ms. Beall to suffer extreme emotional distress as the Debtors attempted to destroy her emotionally and financially. | Res Judicata/Claim Splitting.  See Objection. <br><br> Claimant's conclusory allegations that she suffered emotional distress as a result of the Debtors' conduct are insufficient to meet the pleading requirements under Fed. R. Civ. P. 8. Ramiro Archundia v. Chase Home Fin. LLC, 2009 U.S. Dist. LEXIS 53056, at *20 (dismissing IIED claim where plaintiff made "conclusory allegations that he suffered severe emotional distress" as a result of pending foreclosure on his own home). |

066585.1001

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| Gross Negligence | The Debtors had legal duties to Ms. Beall to act with great care in the conduct of real estate financing, | For the same reasons that the Claimant's negligence cause of action failed in the Virginia Class Action, the claim for gross negligence must also fail. Specifically, (i) the Debtors owe no duty to Ms. Beall, and (ii) negligence claims are barred by Virginia's economic loss doctrine. See Memo in Support of Motion to Dismiss, pp. 23-25.<br><br>Res Judicata/Claim Splitting. See Objection. |
| Negligent Misrepresentation | The Debtors had legal duties to Ms. Beall to act with great care in the conduct of real estate financing. Negligent misrepresentation occurs when a party makes a false statement in the course of his business "if he fails to exercise reasonable care or competence in obtaining or communicating the information." | Res Judicata/Claim Splitting. See Objection. |
| Unjust Enrichment/Restitution | The Debtors should not retain fruits of fraud and should provide Ms. Beall with three times all charges for settlement services, plus cost of bringing suit and lost wages. | Res Judicata/Claim Splitting. See Objection.<br><br>Duplicative of fraud claim. |

066585.1001

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| RICO | Eagle assisted the Debtors in acquiring a security interest in the property. Civil conspiracy is "spelled out" in incentive based rate sheet and broker guidelines. | In order to plead a violation of Section 1962(c), a plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. _Sedima S.P.R.L. v. Imrex Co., Inc._, 473 U.S. 479, 496 (1985). Because Claimant does not allege a distinct RICO enterprise, and cannot allege a pattern of racketeering activity, the claim would not withstand a motion to dismiss. _See_ Memo in Support of Motion to Dismiss, pp. 21-22. |
| Breach of Contract | The Debtors had a general imposition of the duty of good faith and fair dealing. They breached their duty by controlling the process, failed to disclose and explain the documents and provide an accurate HUD-1, failed to ensure all legal disclosures, including the broker agreement and YSP explanations were present and to disclose any "ABA." | Claim Splitting. _See_ Objection

Duplicative of assertions regarding "Contract Law" and "Breach of Contract"

Claimant fails to (i) cite to any provision of contract that Debtors breached; (ii) identify any action by the Debtors which constituted such breach; and/or (iii) damages resulting from such breach. |
| Vicarious Liability | The Debtors have a business relationship with each other and have vicarious liability to Ms. Beall. | Claim Splitting. _See_ Objection

Claimant fails to state a cognizable legal claim. |
| Justifiable Reliance | Eagle, acting as an agent for the Debtors, made fraudulent misrepresentations of the fact for the purposes of inducing Ms. Beall to rely upon it. | Justifiable reliance is an element of certain causes of action, not an independent cause of action. |

066585.1001

| Cause of Action | Beall Contentions | Debtors' Response |
|---|---|---|
| Common Law – Voidable Title | Under common law, Ms. Beall asserts the mortgage is void to all acts of the Debtors contained herein. | Asserts a remedy, not a cause of action. Accordingly, duplicative of all other causes of action.<br><br>Because the Debtors do not have title to Ms. Beall's property (or any interest in her loan), this cause of action is inapplicable to the Debtors. |
| Equitable Estoppel | Under equitable estoppel principles, the Debtors are prohibited from asserting rights against Ms. Beall. | Because the Debtors neither own nor service Ms. Beall's loan, the Debtors are not taking any actions against Ms. Beall. |