IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| AMERICAN HOME MORTGAGE ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, ) | Jointly Administered |
| et al., ) | |
| ) | **Hearing Date: 10/13/09 @ 10:00 a.m.** |
| Debtors. ) | |
| ) | **Re: D.I. 7287** |

## REPLY OF ZUCKERMAN SPAEDER LLP IN SUPPORT OF FIRST INTERIM FEE APPLICATION OF ZUCKERMAN SPAEDER LLP

Zuckerman Spaeder LLP ("Zuckerman"), as co-counsel to the Official Committee of Borrowers (the "Borrowers Committee"), hereby replies in support of the First Interim Fee Application of Zuckerman Spaeder LLP for Interim Approval and Allowance of Compensation and Reimbursement of Expenses (the "Application") as follows:

## PRELIMINARY STATEMENT

The representation of the Borrowers Committee prior to plan confirmation was a novel and unprecedented assignment and one which counsel, new to a case that had been ongoing for over fourteen months, was under extreme time pressure to address borrower issues – at the time of the appointment of the Borrowers Committee on October 21, 2008, plan confirmation was anticipated to occur by year end. On top of that, the Court limited the Borrowers Committee to legal professionals only and capped their fees at $250,000.

Counsel did the best job possible under very difficult circumstances. Counsel attempted to bridge an efficient path between the members of the Borrowers Committee, some of whom had grand views for what could be accomplished on behalf of borrowers notwithstanding the limitations of chapter 11 and these cases in particular, and other parties in interest, many of whom viewed borrowers with open antagonism. In the end, however, there was no meeting of

1

the minds on all issues, and counsel for the Borrowers Committee litigated the contested confirmation hearing in a professional manner over three days in February 2009.

Co-counsel for the Borrowers Committee took a number of actions to represent the Borrowers Committee efficiently. First, we limited the number of attorneys who worked on this matter from each firm. Second, we divided up issues when it made sense. For instance, the firms divided up the six depositions taken in this matter, and the firms divided up the objections to confirmation, both in terms of drafting and prosecuting. Third, we attempted to pursue a path other than costly discovery and litigation, even if our efforts were thwarted by the other parties. Accordingly, Zuckerman's request for compensation of $177,434.50 and reimbursement of expenses of $9,235.38 is more than reasonable under the circumstances.

## CASE BACKGROUND

1.      On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Creditors Committee"). No trustee or examiner has been appointed.

3.      On October 21, 2008, the United States Trustee for the District of Delaware appointed the Borrowers Committee, comprised of seven individual borrowers, some of whom were represented by legal aid or private attorneys. The Borrowers Committee convened and engaged Zuckerman and Gilbert Oshinsky LLP ("Gilbert") as co-counsel the following day.

4. At the hearing on October 22, 2009, the Court restricted the Borrowers Committee from retaining any professionals other than counsel and capped the compensation and reimbursement of expenses of counsel at $250,000 from the estates, without prejudice to the rights of the Borrowers Committee – which had not yet convened and selected counsel – on notice to the Debtors, the Creditors Committee and the Office of the United States Trustee. The Court also set the hearing to consider the adequacy of the Debtors' disclosure statement for November 25, 2009 – just thirty days later – and it was anticipated at that time that plan confirmation would occur prior to year end.

5. The Borrowers Committee filed a joint application to retain counsel, which the Court approved *nunc pro tunc* to October 22, 2009.

6. The Court approved the Debtors' disclosure statement at a hearing on November 25, 2008, after the Borrowers Committee had resolved its objection. At that time, the Court set the confirmation hearing for January 28, 2009 – one month later than anticipated back on October 22 – with objections due two weeks beforehand.

7. The Borrowers Committee resolved its objection to the disclosure statement because the Debtors and the Creditors Committee had not raised any objections to the Borrowers Committee's proposal that the Debtors make available to the Borrowers Committee their production of information to the SEC. The reason for the Borrowers Committee's proposal was to limit the cost of substantial discovery for all the parties.

8. In early January, the parties had discussions and exchanged correspondence regarding a global resolution. The Borrowers Committee drafted a term sheet and sent it to the Debtors and Creditors Committee. With the confirmation hearing looming, the Borrowers

Committee convened an in-person meeting on January 8, 2009, to address the term sheet and potential confirmation issues. Indeed, Borrowers Committee counsel had a telephone conference with counsel for the other parties earlier that day about the term sheet.

9. The parties reached tentative agreement on certain borrower issues that were subsequently addressed in the plan and the confirmation order. They remained apart on other issues, and the Creditors Committee – leading the negotiations from the other side – ultimately never responded to the term sheet.

10. In the meantime, with the deadline for plan objections looming in the midst of negotiations, the parties also agreed to extend the deadline for the Borrowers Committee to object to plan confirmation of the Plan by approximately one week. Also, the Borrowers Committee noticed and took the deposition of Bret Fernandes. Both Zuckerman and Gilbert took turns asking questions at the deposition because Mr. Fernandes was intended to be the Debtors' sole witness at the confirmation hearing, and co-counsel had divided potential confirmation objections between them.

11. When it became apparent that no response to the term sheet was forthcoming prior to the need to object to plan confirmation and prepare for trial, on January 20, 2009, the Borrowers Committee filed an application on an expedited basis to increase the fee cap to $400,000 and to retain an expert. The Court allowed the Borrowers Committee to retain an expert with the filing of a retention application, but deferred ruling on the fee cap.

12. After the filing of the Borrowers Committee's plan objection, the Debtors adjourned the confirmation hearing by approximately two weeks to February 9, 2009.

13. In the two weeks prior to trial, the parties took five further depositions. The Debtors and Creditors Committee took the depositions of two borrowers and the Borrowers Committee's expert, all of which Gilbert handled. The Borrowers Committee took two further depositions. Gilbert handled the deposition of Mr. Pasternak, and Zuckerman handled the deposition of Ms. Michaelis. At each of these five depositions, the Borrowers Committee had counsel from only one firm in attendance.

14. Aside from deposition issues, the Borrowers Committee had to address other issues prior to and aside from readying for trial. First, the Borrowers Committee filed a motion to compel relating to the SEC information after the Debtors dragged their feet in producing that information. Second, the Borrowers Committee had to review the information once the Debtors produced some of it as a result. Third, the Borrowers Committee had to file papers relating to witness evidentiary issues. Fourth, the Borrowers Committee had to address and reply to the briefs, the revised plan and proposed form of confirmation order filed by the parties shortly before the hearing.

15. The confirmation hearing lasted three days, and the Court overruled the Borrowers Committee's remaining objections. Once the parties had mostly agreed on language for the confirmation order and revised plan, the Court resolved the remaining disagreement and entered the confirmation order.

2395775.1

## THE APPLICATION AND THE FEE EXAMINER'S REPORT

16. The Application, dated April 17, 2009, seeks compensation of $177,434.50 and reimbursement of expenses of $9,235.38. The Debtors and Creditors Committee have objected to the Application on the basis that it, together with Gilbert's first interim application, exceed the existing fee cap and purport to reserve their rights (if any) to object to the Application in detail.

17. The Fee Examiner filed a report on October 7, 2009 (the "Report"), with respect to the Application. Zuckerman had responded to the Fee Examiner's initial inquiries on July 20, 2009, and has had discussions and traded correspondence with the Fee Examiner only since October 5, 2009, regarding the Fee Examiner's findings. That discussion continues.

18. The Fee Examiner notes that the parties had incurred $238,453.50 in fees as of January 19, 2009, the day before the Borrowers Committee applied to increase the fee cap. Report ¶ 11. The chart there demonstrates: (a) that counsel for the Borrowers Committee was within the existing fee cap at the time of making the application; and (b) that the majority of the fees were incurred after that date in the short amount of time available to prepare and litigate at a contested confirmation hearing.

19. Moreover, the Fee Examiner found that the time charged after that date for strategy sessions, document review and the confirmation hearing were reasonable in view of the contentious nature of the issues and the resulting litigation. Report ¶ 15.

20. Nevertheless, according to the Report, the Fee Examiner is not yet convinced of the reasonableness and lack of duplicate effort in seven task categories. Report ¶ 15 and charts at 15-16. In reviewing the Fee Examiner's detail, we note the following below.

2395775.1

21.  <u>Borrowers Committee</u> (ZS 74.1 hours, $34,760.00):  Some of the time lumped by the Fee Examiner into this task does not relate to it.  For example, at quick glance, 6.9 hours on October 28 and November 13, 2008, related to meetings with counsel for the Debtors and the Creditors Committee; 2.5 hours on or prior to November 5 related to preparation of the bylaws, which according to the Report should be lumped under the task "Borrowers Claims"; and 6.8 hours on November 17-18, 23 and 26 related to preparation of the disclosure statement objection and a call or correspondence with Debtors' counsel to resolve that objection.  In addition, the Fee Examiner found that time spent under this task (10.3 hours) after January 19, 2009, was reasonable.  Report ¶ 15.

22.  Not all the remaining time (47.6 hours) was addressed to strategy, Borrowers Committee calls and related correspondence either.  Nevertheless, as noted earlier, the representation of the Borrowers Committee was a novel assignment and one which counsel had to get up to speed very quickly.  Also, because the members of the Borrowers Committee lacked chapter 11 or bankruptcy experience and because one or more members of the Borrowers Committee were particularly strident with respect to the issues of these cases, substantially more time had to be spent managing the client than would be necessary in other cases.

23.  <u>Objections</u> (ZS 35.9 hours, $16,118.00) includes:  Much of the time lumped by the Fee Examiner into this task does not relate to it.  For example, 14.9 hours during November 19-20, 2008, related to the objections to and the negotiations over the disclosure statement, not the plan; and 4.9 hours were billed after the filing of the Borrowers Committee's plan objection and do not relate to same.  The balance of the time (16.1 hours) relates to the plan objection and the term sheet.

24. <u>Borrowers Claims</u> (ZS 35.0 hours, $13,734.00): The vast majority of this time (30.9 hours) was billed on or before December 9, 2008. Most of the time relates to legal and factual research relating to potential claims by borrowers and an analysis of the proofs of claim filed by borrowers in these cases. The purpose of this research generally was to determine what claims borrowers were asserting in these cases, the status of such claims and the effect of the Bankruptcy Code provisions on such claims.

25. <u>SEC / Discovery</u> (ZS 55.3 hours, $21,189.00): The vast majority of this time (45.2 hours) was billed on and after January 29, 2009, primarily in reviewing the Debtors' belated production of information produced to the SEC. The Fee Examiner has noted that time spent reviewing documents during this period was reasonable. Report ¶ 15. The remaining time related to Zuckerman's effort to obtain access to the SEC production.

26. <u>Borrowers' Committee Expert Witness</u> (ZS 30.5 hours, $14,607.50): Gilbert primarily handled the Borrowers Committee's expert. Much of the time lumped by the Fee Examiner into this task does not relate to it. For example, 15.9 hours during January 5-15, 2009, related to the deposition of Mr. Fernandes; 2.4 hours on January 20, 22 and 28 related to the Borrowers Committee's application to modify the fee cap; and 4.2 hours during February 4-7 related to the deposition of Ms. Michaelis. The remaining time is only 8.0 hours.

27. <u>Objections to Expert Witness</u> (ZS 20.9 hours, $9,663.50): Again, much of the time lumped by the Fee Examiner into this task did not relate to it. For example, 3.3 hours on February 4, 2009, related to the deposition of Ms. Michaelis; 3.5 hours on February 6 were to draft a memo summarizing the Debtors' confirmation brief; and 3.3 hours on February 9-10 related to preparation of the cross examination for Ms. Michaelis. The remaining time is only

2395775.1

10.8 hours, and that time relates to all four depositions handled by Gilbert, not just the deposition of Ms. Saunders.

28.  <u>Debtors' Expert (Witnesses)</u>: ZS 3.8 hours, $1,874.00): This is a very small amount of time and actually is less than the actual time expended by Zuckerman relating to the deposition of Mr. Fernandes, at which Zuckerman took an active role.

29.  The Fee Examiner also notes the increase of certain hourly rates by Zuckerman attorneys and paralegals effective January 1, 2009, which amounted to $2,787.50. Report ¶ 20. Whether there would be an increase in rates at year end was not known at the time Zuckerman's retention application was filed. Also, the vast majority of that amount comes from the roughly 3% increase in Mr. Macauley's hourly rate from $475 to $490. Even at $490, his rate is substantially less than that charged by other firms in these cases for someone of his experience. *See, e.g.*, Exhibit A (listing rates charged by Debtors' bankruptcy professionals).

30.  Finally, the Fee Examiner also notes the hours incurred in connection with retention and fee applications. Report ¶ 21. Although the Report lists the Zuckerman time and amount requested as 48.3 hours and $19,845.00, the correct amounts as set forth on Matter 2 of the Application are 31.9 hours and $12,048.00, which covers retention applications for counsel and the Borrowers Committee's expert as well as review of other fee applications. From review of the Fee Examiner's detail, none of the additional time attributed by the Fee Examiner to retention/fee applications relates to them. The compensation set forth in Matter 2 of the Application is reasonable for what was accomplished.

31.     Zuckerman believes that the Fee Examiner, once having sufficient time to review this submission and to prepare for the hearing next Tuesday, will agree that Zuckerman's requested compensation request is reasonable under the circumstances.

## **THE FEE CAP**

32.     The Court has acknowledged that, in setting the initial fee cap of $250,000, the Court picked that number out of the air.  Back on October 22, 2008, the Borrowers Committee had not yet convened or selected counsel, and the Court envisioned a confirmation hearing by year end.  Even if the Borrowers Committee had engaged in full-scale litigation from the outset, the Court apparently wanted to signal that there was a limit to what would be awarded as compensation in sixty days.  Little did the Court know back on October 22, however, that year end would turn into the end of January and then two weeks later into February.

33.     In view of the fee cap, counsel for the Borrowers Committee attempted to obtain the best result for borrowers in the most efficient manner possible.  Rather than press its objection at the disclosure statement hearing, the Borrowers Committee proposed to review the Debtors' SEC production as an efficient and easy way for the Borrowers Committee to obtain information at a minimum of cost to the parties.  Unfortunately, Plan negotiations, initially promising, thinned into oblivion, and the SEC production was not forthcoming and only partially obtained after a fight on the eve of confirmation.

34.     The Debtors and the Creditors Committee complain that the SEC production had no relevance to plan confirmation.  As the Court will recall, one of the objections raised by the Borrowers Committee was that the Debtors were obligated to give actual notice to borrowers holding Option ARM loans because it was readily ascertainable from the Debtors' books and

records that such borrowers would have claims against the Debtors. Even from the limited and "voluntary" production made by the Debtors on the eve of confirmation, there were documents from which the Court could have made an inference that the Debtors knew about the claims arising from the Option ARM loans. That the Court decided not to make such an inference in overruling the Borrowers Committee's objection does not make the SEC production irrelevant.

35. The Debtors and Creditors Committee also compare the fees incurred by counsel to the Borrowers Committee to fees incurred in plan and disclosure statement related work by the Debtors. This is comparing apples with oranges. On one hand, the comparison does not consider the fees incurred by Borrowers Committee's counsel for all the general work unrelated to the plan and disclosure statement, which as noted earlier, was more extensive than in the usual case. On the other hand, the comparison does not include the fees of the Debtors' restructuring and financial advisors or the Creditors Committee's legal or financial professionals, all of whom were working in tandem in connection with the plan.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Zuckerman respectfully requests that the Court approve the Application and grant to Zuckerman such other and further relief as is just.

Dated: Wilmington, Delaware
October 8, 2009

ZUCKERMAN SPAEDER LLP

_____
Thomas G. Macauley (ID No. 3411)
919 Market Street, Suite 990
Wilmington, DE 19801
Telephone: (302) 427-0400
Facsimile: (302) 427-8242

Attorneys for the Official Committee
of Borrowers

11

2395775.1