# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, | ) | Jointly Administered |
| et al., | ) | |
| | ) | **Hearing Date: 10/14/09 @ 9:00 a.m.** |
| Debtors. | ) | |
| | ) | **Re: D.I. 7287** |

## REPLY OF GILBERT LLP IN SUPPORT OF FIRST INTERIM FEE APPLICATION OF GILBERT LLP

Gilbert LLP ("Gilbert") (formerly known as Gilbert Oshinsky LLP), as co-counsel to the Official Committee of Borrowers (the "Borrowers Committee"), hereby replies to the objections relating to the First Interim Fee Application of Gilbert Oshinsky LLP for Interim Approval and Allowance of Compensation and Reimbursement of Expenses (the "Application") as follows.[1]

## PRELIMINARY STATEMENT

Gilbert and Zuckerman Spaeder LLP ("Zuckerman") served as co-counsel to the Borrowers Committee. On October 8, 2009, Zuckerman filed the Reply of Zuckerman Spaeder LLP In Support Of First Interim Fee Application Of Zuckerman Spaeder LLP (the "Zuckerman Reply"). Gilbert hereby incorporates by reference the "Case Background" and "Fee Cap" sections of the Zuckerman Reply. In the Zuckerman Reply, Zuckerman generally explains why the hours worked and fees requested by the two firms were reasonable and why the fee cap should be lifted. Zuckerman noted, for example, that the firms undertook the following measures to represent the Borrowers Committee both zealously and efficiently, including:

- Limiting the number of attorneys who worked on this matter from each firm;

---

[1] The Application is inclusive of the fees and expenses described in the First through Fifth Monthly Applications of Gilbert Oshinsky LLP for Allowance of Fees and Reimbursement of Expenses as Co-Counsel to the Official Committee of Borrowers (the "Monthly Applications"). The descriptions of Gilbert's time reflected in the Monthly Applications are incorporated by reference herein.

1

- Dividing issues between Zuckerman and Gilbert where practical; and
- Attempting to pursue a path other than costly discovery and litigation.

As discussed in the Zuckerman Reply and in more detail below, given the nature of Gilbert's responsibilities and the tasks performed, the firm's compensation should not be limited by the fee cap previously imposed by the Court. The firm's requests for payment of fees in the amount of $358,702.75 and for reimbursement of expenses in the amount of $15,166.55 are reasonable and should be granted.

### THE APPLICATION, THE OBJECTIONS, AND THE FEE EXAMINER'S REPORT

1. The Application, dated April 16, 2009, seeks compensation of $362,739.75 and reimbursement of expenses of $16,253.82. The Debtors and Official Committee of Unsecured Creditors (the "Creditors Committee") have objected to the Application on the basis that, either together with Zuckerman's first interim application or standing alone, the amount Gilbert seeks in the Application exceeds the existing $250,000 fee cap imposed on Borrowers Committee professionals. The Debtors and Creditors Committee also purport to reserve their rights (if any) to object to the Application in detail.

2. The Fee Examiner filed a report on October 6, 2009 (the "Report") with respect to the Application. Gilbert previously had responded in detail to an earlier draft report by the Fee Examiner, and Gilbert has had discussions and traded correspondence with the Fee Examiner regarding the Fee Examiner's concerns. In light of the Fee Examiner's concerns, Gilbert agreed to reduce its request for fees by a total of $4,037.00 and to reduce its request for expense reimbursement by $1,087.27.

2

3.      The Fee Examiner notes that the parties had incurred $238,453.50 in fees as of January 19, 2009, the day before the Borrowers Committee applied to increase the fee cap. Report ¶ 11. This demonstrates that: (a) the firms representing the Borrowers Committee were within the existing fee cap at the time it applied to increase the fee cap (in anticipation of a contested confirmation hearing on the Debtors' proposed Plan); and (b) the majority of the firms' fees were incurred after that date, when co-counsel prepared for and litigated a contested confirmation hearing.

4.      The Fee Examiner found that the time charged after January 19, 2009 (which comprises over 55% of the total compensation sought by Gilbert and Zuckerman) for strategy sessions, document review and the confirmation hearing was reasonable in view of the contentious nature of the issues and the resulting litigation. Report ¶ 15.

5.      Nevertheless, according to the Report, the Fee Examiner is not yet convinced of the reasonableness of the fees sought by Gilbert and the lack of duplicate effort between Gilbert and Zuckerman for certain categories of work.

6.      The Fee Examiner concludes that "certain tasks performed appear to be outside the scope of the work defined by the Court" and suggests that the time spent on certain tasks "appears to be inconsistent with the value brought by the Debtor's Estate." Report ¶ 14. The Fee Examiner makes this statement without identifying a single instance in which either Gilbert or Zuckerman performed a task outside of the scope of the Borrowers Committee's professionals' authority, as defined by the Court. In attempting to negotiate a consensual resolution of the Borrowers Committee's objections and then, in the absence of such a resolution, litigating those objections at a contested confirmation hearing, counsel to the Borrowers

3

Committee pursued matters related to the Debtors' chapter 11 Plan, as authorized by the Court's November 4, 2008 Order.[2]

7. The Fee Examiner stated that the fees requested by Gilbert reflect allegedly duplicative efforts for certain tasks also performed by Zuckerman. Report ¶ 14. The Fee Examiner supports its allegation based on time entries from Gilbert and Zuckerman that show joint participation in calls with borrowers and joint attendance at meetings and conferences with other parties in these cases. *Id.*

8. Gilbert and Zuckerman divided responsibility for issues in the Debtors' cases between the firms, but one partner from each firm typically participated in Borrowers Committee calls (as well as the one in-person meeting of the Borrowers Committee) because it would have been inefficient and impractical to have senior lawyers attempt to participate separately in discrete portions of the discussions with the Borrowers Committee.

9. Similarly, although both firms worked on the Borrowers Committee's Plan objections, that does not mean that there were duplicative efforts. Gilbert's and Zuckerman's time entries demonstrate that each firm worked on different aspects of the Borrowers Committee's several Plan objections.

10. Further, the 102.3 Gilbert hours identified in the Report as relating to "Strategy, Prep & Attend Borrowers Committee Calls, related corr," include at least 20.2 hours of time

---

[2] In recent months, during a period of time not addressed in the Application, the Borrowers Committee occasionally has discussed with Gilbert the possibility of seeking to expand the firm's authority. In one instance, involving possible investigation of avoidance actions that were not being pursued by the Debtors, the Borrowers Committee ultimately concluded that such a request should not be made. More recently, the Borrowers Committee also has requested that, to the extent necessary, the Court authorize Gilbert and Zuckerman to file an opposition to the Debtors' motion to abandon or destroy certain documents and records. Gilbert reserves the right to seek compensation for its limited work in consulting with the Borrowers Committee about whether it should request expanded authority for Borrowers Committee professionals.

4

9000/208/1131259.4

Gilbert attorneys spent in meetings, conference calls and correspondence with counsel to the Debtors and Creditors Committee (as indicated in Gilbert time entries dated October 28, November 11, November 14, November 25, December 19, January 12 and February 17).

11. The Gilbert and Zuckerman firms coordinated their work with respect to every aspect of the case in an effort to mitigate fees and expenses. Although two firms worked on this representation, the number of lawyers who participated and the experience of those lawyers was comparable to that which would have been the case had this matter been handled by a single law firm. It is unrealistic to think that, if the Borrowers Committee had been represented by a single firm, only one partner would have worked on the case, or that, if two partners at a single firm had worked on the case, they would not have discussed each other's work and strategic analyses.[3]

12. While we do not accept in its entirety the numerical compilation supplied by the Fee Examiner, it roughly illustrates how Zuckerman and Gilbert divided tasks.

|  | GO | ZS | Saunders |
|---|---|---|---|
| Disclosure/Plan | 40.1% | 59.9% |  |
| Plan Trust | 86.0% | 14.0% |  |
| Objections | 72.7% | 27.3% |  |
| Borrower Claims | 15.9% | 35.6% | 48.4% |
| Due Process | 86.4% | 13.6% |  |
| EPD/BOW | 96.1% | 3.9% |  |
| Stay | 75.6% | 24.4% |  |
| Res Tort Claims | 85.8% | 14.2% |  |
| SEC/Disc/FS | 51.1% | 48.9% |  |
| BC Expert Witness | 80.3% | 19.7% |  |
| Obj - BC Expert | 77.7% | 22.3% |  |
| Debtors Expert | 78.1% | 13.7% | 8.2% |
| Borr Comm | 57.6% | 42.4% |  |
| Hearing | 75.5% | 24.5% |  |

---

[3] The Debtors have stated that, during the Application period, Young Conaway Stargatt & Taylor, LLP incurred fees totaling $578,672 in the course of its representation of the Debtors on Plan-related issues. For that same period, Hahn & Hessen LLP apparently incurred fees totaling $364,379 in the course of its representation of the Creditors Committee on Plan-related issues. At least three partners from Young Conaway and three partners from Hahn & Hessen played major roles in dealing with the Borrowers Committee, which was the main objector to the Plan during that period. Of course, unlike counsel for the Borrowers Committee, counsel for the Debtors and Creditors Committee did not have to spend time becoming familiar with the Debtors or their reorganization Plan during that period.

| | | |
|---|---|---|
| Other | 0.09% | 91.0% |

13.     Those numbers indicate that, for most tasks, one firm or the other did the vast majority of the work. Indeed, there are only three categories for which that is not the case. The first such category involved Plan negotiations and objections. But with respect to that category, the aggregate numbers are somewhat misleading because each firm focused on particular aspects of the Plan negotiations and objections. (Several Plan negotiation meetings – but not all – were attended by attorneys from both firms.) Another category for which the work was fairly evenly divided by the two firms involved review of SEC documents and the Debtors' disclosures and financial documents. To competently represent their client, both firms had to be familiar with the Debtors' finances. And, while both firms reviewed SEC documents, they did not review the same SEC documents. Zuckerman reviewed one Bates range of documents and Gilbert another Bates range of documents. Lawyers from both firms then made use of a small handful of documents deemed to be particularly relevant. Finally, the time spent by both firms communicating with the Borrowers Committee was fairly equal, as one would expect, given that the Borrowers Committee was interested in what both firms were doing.

14.     The Fee Examiner contends that the fees incurred by Gilbert in connection with the retention, report, deposition and confirmation hearing testimony of Margot Saunders were unreasonable. We note that the time Gilbert devoted to the "Borrowers Committee Expert's Witness" is substantially less than the 151.6 hours alleged by the Fee Examiner in the Report. A review of the Fee Examiner's time compilations reveals that it improperly included in this category: (1) 9 hours of time incurred by Gilbert from January 1-12, 2009 in drafting discovery requests to the Debtors, including a Rule 30(b)(6) notice, interrogatories and document requests; (2) 24.5 hours of time incurred by Gilbert from January 14-16, 2009 in preparing for and

6

deposing Bret Fernandes, a witness for the Debtors; (3) 5.3 hours of time incurred by Gilbert from February 1-3, 2009 related to defending the depositions of borrowers, including Gracie Graves; and (4) 5 hours of time incurred by Gilbert on February 6, 2009 in preparing for and deposing Tom Pasternak. Similarly, for the category described in the Report as "Objection – Borrowers Committee Expert," the Fee Examiner has improperly included: (1) 8.2 hours of time incurred by Gilbert between February 4-10, 2009 related to discovery and preparation of confirmation hearing testimony of Gracie Graves, a member of the Borrowers Committee; (2) 14.6 hours incurred by Gilbert between February 6-7, 2009 related to motions to exclude Debtors' witnesses, including Tom Pasternak and Bret Fernandes; and (3) 1.5 hours of time incurred by Gilbert on February 5, 2009 related to reviewing EPD protocol documents.

15. We also would note that time expended by Gilbert in connection with Ms. Saunders' participation in these cases includes time spent by junior attorneys and paralegals who provided research assistance and paraprofessional support to Ms. Saunders in preparing her report and responding to related discovery requests (including several document productions that were made in response to requests by the Debtors for cases and authorities cited in Ms. Saunders' report). One paralegal (Caitlin Kahler) devoted 30.6 hours to locating and producing documents for Ms. Saunders' use in her report and in response to the Debtors' discovery requests.

16. Given the breadth and importance of Ms. Saunders' testimony, the actual time spent by Gilbert attorneys working with her and defending her report and testimony was reasonable.

## **THE FEE CAP**

17.     The Fee Examiner recommends in its conclusion that "the Court consider the appropriateness of requesting an additional discount of 10%-15% in consideration of the existence of the fee cap." Report ¶ 23. The firms representing the Borrowers Committee undertook efforts to comply with the cap. The Fee Examiner has acknowledged that they incurred the majority of their fees only after efforts to reach a consensual resolution of the Borrowers Committee's objections failed in mid-January and it became necessary to litigate the Borrowers Committee's objections at a contested confirmation hearing. Report ¶ 11. A substantial portion of the fees incurred after this date relate to responding to discovery requests from the Debtors and UCC and defending the expert testimony of Ms. Saunders and the depositions of borrowers. The balance of those fees was incurred in preparing to put on the Borrower Committee's case at a three-day confirmation hearing on the Debtors' proposed Plan.

18.     These were not optional tasks that counsel could forego in order to keep their fees below the fee cap. These efforts were required to zealously represent the Borrowers Committee in opposing confirmation of the proposed Plan. Thus, Gilbert respectfully must disagree with the Fee Examiner's suggestion that, as co-counsel to the Borrowers Committee, the firm should not have performed certain tasks within the scope of its authority in light of the fee cap. Omitting necessary work to stay within the fee cap would have required the firm to breach its ethical duties to its client and, we believe, would have been contrary to the intent of the Court, as reflected in its order establishing the Borrowers Committee, that the interests of borrowers be represented adequately.

## **CONCLUSION**

For the reasons stated, Gilbert respectfully requests that the Court approve the Application, as voluntarily modified following the Fee Examiner's initial inquiry to the firm. Gilbert requests $358,702.75 in fees and $15,166.55 in expenses.

Dated: October 13, 2009

                                                GILBERT LLP

                                                /s/ Stephen A. Weisbrod
                                                _____

                                                Stephen A. Weisbrod
                                                1100 New York Avenue, NW
                                                Washington, DC 20005
                                                Telephone: (202) 772-2200
                                                Facsimile: (202) 772-3333

                                                Attorneys for the Official Committee
                                                of Borrowers

9000/208/1131259.4