## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., et al., | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| | ) | **Hearing Date: November 13, 2009 at 2:00** |
| | ) | **p.m.** |
| | ) | **Objection Deadline: November 6, 2009 at** |
| | ) | **4:00 p.m.** |
| | ) | |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AND TERMINATION AGREEMENT WITH INTEX SOLUTIONS, INC.

The Debtors[1], including American Home Mortgage Investment Corp. ("AHM Investment), by and through their undersigned counsel, hereby move this Court for approval of the "Settlement and Termination Agreement", annexed hereto as Exhibit A (the "Agreement"), between and among the Debtors, the Official Committee of Unsecured Creditors and Intex Solutions, Inc. ("Intex"). In support of this motion (the "Motion"), the Debtors respectfully represent to the Court as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b).

---

[1]      The Debtors are American Home Mortgage Holdings, Inc., American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., American Home Mortgage Investment Corp., American Home Mortgage Servicing, Inc., American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp.

2.      The bases for the relief requested herein are section 105(a) of the title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3.      On August 6, 2007 (the "Petition Date"), each of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4.      The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1005(b) of the Federal Rules of Bankruptcy Procedure.

5.      Since the Petition Date, the Debtors have continued in the operation and management of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On August 14, 2007, the United States Trustee for the District of Delaware appointed the Committee, consisting of seven of the Debtors' largest unsecured creditors.   Blank Rome LLP and Hahn & Hessen LLP ("H&H") are co-counsel to the Committee.

7.      No trustee or examiner has been appointed in these cases.

8.      On August 15, 2008, the Debtors filed a "Chapter 11 Plan of Liquidation of the Debtors" (as thereafter amended, the "Amended Plan").

9.      On February 23, 2009, the Bankruptcy Court entered its "Findings of Fact, Conclusions of Law and Order Confirming the Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009" (the "Confirmation Order").

10.     The Amended Plan has not yet become effective.

11.     The Amended Plan, upon becoming effective, contemplates the creation of a Liquidating Trust (the "Liquidating Trust") and the appointment of a Liquidating Trustee (the "Liquidating Trustee") for the purpose of liquidating the Debtors' remaining assets, including any claims or causes of action that the Debtors may have, for the benefit of the Debtors' creditors.

12.     The Debtors and Committee have approved the settlement of the Potential Claims on the terms and conditions set forth below.

13.     On or about August 6, 2009, an adversary proceeding was commenced against Intex seeking the recovery of alleged preferential transfers totaling $195,525.00 (the "Adversary Proceeding").

14.     In addition to the Adversary Proceeding, the Debtors believed that it had overpaid certain sums to Intex for which a refund was due.

15.     Intex, on the other hand, asserted that the Debtors failed to pay certain fees, costs and charges for use of goods and services provided by Intex post-petition.

16.     The goods and services provided by Intex were predicated on a "Service Agreement" between the parties dated as of December 4, 2003.

17.     Debtors, the Committee and Intex engaged in a voluntary exchange of information which was followed by discussions.  As a result of such discussions and negotiations, the parties entered into and executed the Agreement, subject to Court approval. The The following is a summary of the salient terms of the Agreement:[2]

> •  Settlement Amount.  Intex agrees to pay to counsel for the Committee the sum of One Hundred Ninety Seven Thousand Four

---

[2]     The Court and interested parties are referred to the annexed Agreement for its complete terms. In the event of any inconsistency between the summary and the Agreement, the terms of the Agreement govern. Capitalized terms not defined herein have the meanings ascribed to them in the Agreement.

Hundred Sixty Six Dollars and Thirty Three Cents ($197,466.33).
The Settlement Amount will be released from escrow upon the
Effective Date as provided in the Agreement.  This sum has
already been remitted to counsel for the Committee and is being
held in escrow.

- Termination of Intex Service Agreement.  The Debtor has
agreed to the termination of the Service Agreement with Intex and
to cease use of all products and services provided by Intex as
defined in the Agreement.  The Debtors have already provided
certification to Intex of the compliance with the provisions
regarding the termination which certification has been accepted by
Intex.

- Releases.  The Debtors and the Committee have agreed to a
complete and general release of all claims against Intex.  Similarly,
Intex has agreed to a complete and general release of claims
against the Debtors and the Committee.  The sole exception to the
releases given is with respect to any claims arising under the
Agreement itself.

## RELIEF REQUESTED

18.    By this Motion, the Debtors request that the Court enter an order approving the

Agreement pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## APPLICABLE AUTHORITY

19.    Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court

may issue any order, process, or judgment that is necessary or appropriate to carry out the

provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Bankruptcy Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court
> may approve a compromise or settlement.  Notice shall be given to
> creditors, the United States trustee, the debtor, and indenture
> trustees as provided in Rule 2002 and to any other entity as the
> court may direct.

See Bankruptcy Rule 9019(a).  Courts have interpreted this rule, as well as its predecessor,

section 27 of the Bankruptcy Act, as granting the debtor in possession broad authority to settle

controversies. Since the Debtors and the Committee are acting together on behalf of the estates to compromise all of the matters at issue, the Debtors believe that it is appropriate for the Court to analyze the settlement embodied in the Agreement under the standard set forth in Bankruptcy Rule 9019(a).

20.    A starting point in analyzing any proposed settlement agreement is the general policy of encouraging settlements and favoring compromises. See Myers v. Martin (In re Martin), 91 F. 3d 389, 894 (3rd Cir. 1996); In re Coram Healthcare Corp., 315 B.R. 321, 329-30 (Bankr. D. Del. 2004); Florida Trailer and Equip. Co. v. Deal, 284 F. 2d 567, 571 (5th Cir. 1960). The standard by which courts evaluate a proposed compromise and settlement are well established. In bankruptcy, the court should approve a proposed compromise and settlement when it is fair and equitable and in the best interests of the debtor's estate and its creditors. See In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998); In re Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997).

21.    Under the well-established standard for consideration of the merits of a settlement, a settlement should be approved unless it falls below "the lowest point in the range of reasonableness." In re Coram Healthcare Corp., 315 B.R. at 330 (quoting Official Unsecured Creditors' Comm. v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines, Inc.), 150 B.R. 595, 598 (E.D. Pa. 1992)). Specifically, this standard includes consideration of the following factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998).

22.    The Agreement is a product of arm's length negotiations. The Debtors submit that the Agreement presents a very favorable resolution for the Debtors' estates. If the Parties

were to litigate the issues, the Debtors' estates would clearly incur substantial litigation expenses which have been completely obviated by the Agreement.  The Agreement will allow the Debtors' estates to realize a significant settlement while entirely avoiding litigation risks and substantial expenses.  Given the lack of funds the estate currently has, the risks involved in litigation, and the substantial expenses involved in lengthy litigation, such factors weigh heavily towards accepting the settlement.

23.     The Debtors do not believe that collection of any judgment that could be obtained is an issue and therefore this factor is neutral.

24.     Based on these and the other compromises set forth in the Agreement, the Debtors submit that the resolution is well above the "lowest point in the range of reasonableness."

25.     For all of the foregoing reasons, the Debtors respectfully submit that the Agreement fairly and reasonably resolves all issues between the Debtors and Intex, serves the best interests of unsecured creditors of the Debtors and their estates, and should be approved by the Court.

## NOTICE

26.     Notice of this Motion has been provided to:  (1) the Office of the United States Trustee for the District of Delaware, (2) all parties who have timely filed requests for notice under Bankruptcy Rule 2002, (3) counsel for the Unsecured Creditors' Committee, and (4) counsel for Intex.  The submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

27.     No previous motion for the relief sought herein has been made to this or any other Court.

DB02:8847379.1                                                                                      066585.1001

WHEREFORE, the Debtors request that the Court approve the Agreement and grant such

other further relief the Court deems just and proper.

Dated:  October 20, 2009
        Wilmington, Delaware

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Sean M. Beach (No. 4070)
Curtis J. Crowther (No. 3238)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel for Debtors and Debtors in
Possession*

**EXHIBIT "A"**

## SETTLEMENT AND TERMINATION AGREEMENT

This Settlement And Termination Agreement (the "Agreement") is made this <sup>3RD</sup> day of September, 2009 by and among Intex Solutions, Inc. ("Intex"), American Home Mortgage Investment Corp. ("the Debtor") and the Official Committee of Unsecured Creditors of the Debtor and affiliated debtor entities (the "Committee").

WHEREAS, on or about December 4, 2003, Intex and the Debtor entered into that certain agreement entitled "Service Agreement" (as amended, the "Intex Agreement") whereby Intex agreed to provide Intex's structured financial securities deal model libraries and software in return for certain fees to be paid by the Debtor.

WHEREAS, on or about August 6, 2007 (the "Petition Date"), the Debtor and certain related entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware;

WHEREAS, on or about August 6, 2009, the an Adversary Proceeding was commenced against Intex in the United States Bankruptcy Court for the District of Delaware, Adversary Proceeding No. 09-51781 to recover certain alleged preferential transfers totaling $195,525.00 and alleged overpayments made to Intex (the "Adversary Proceeding");

WHEREAS, the Debtor claims that it was overcharged for certain goods and services provided by Intex prior to the Petition Date;

WHEREAS, Intex contends that the Debtor failed to pay for certain goods and services provided by Intex and utilized by the Debtor post-petition;

WHEREAS, the Debtor wishes both to terminate the Intex Agreement and to resolve any monetary issues between the parties;

WHEREAS, in order both to avoid the delay, uncertainty and expense associated with prolonged litigation and to facilitate the efficient termination of the Intex Agreement, Intex, the Debtor and the Committee have agreed to: (i) terminate the Intex Agreement; (ii) settle any monetary disputes regarding the Intex Agreement; and (iii) settle and compromise the claims asserted in the Preference Action;

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, expressly subject to approval by the United States Bankruptcy Court for the District of Delaware unless such court approval is no longer required due to a confirmed plan becoming effective, the parties do hereby agree as follows:

1.      Intex shall pay the Debtor the sum of $197,466.33 (the "Funds") in full satisfaction of any and all amounts claimed to be owed under the Intex Agreement. Intex shall place the Funds in escrow with counsel to the Committee within fifteen (15) business days after the execution of this Agreement. Counsel to the Committee shall be authorized to release such funds from escrow upon the later of: (i) the expiration of the Objection Period (as that term is defined below); (ii) the resolution of any dispute regarding the Debtor's compliance with the

termination obligations detailed in Paragraph 2, below; or (iii) entry of an Order by the United States Bankruptcy Court for the District of Delaware approving this Agreement that is final and non-appealable or, in the event such an order is no longer required, immediately upon the occurrence of an event that makes such an order unnecessary (the "Effective Date").

2.      The Intex Agreement shall be automatically terminated as of September 16, 2009. Immediately upon such termination, the Debtor will: (i) cease any and all use of the PRODUCTS and SERVICES (as those terms are defined in the Intex Agreement); (ii) remove the PRODUCTS from any computer network or system used by or controlled by the Debtor or any affiliated entity; and (iii) return to Intex all copies of the PRODUCT or any documentation pertaining thereto. The Debtor's confidentiality obligations detailed in the Intex Agreement shall survive the termination of that agreement.

3.      The Debtor shall certify in writing to Intex and the Committee its compliance with the requirements of termination listed in this Paragraph 2, above. Such certification shall be received by Intex and the Committee on or before 5:00 pm EST on September 21, 2009. In the event that the Debtor fails to deliver the required certification, fails to terminate use of the PRODUCTS and SERVICES, or otherwise fails to comply with any or all of the requirements of termination established by Paragraph 2, above, then Intex shall provide notice of such deficiencies to the Debtor and the Committee on or before 5:00 pm EST on September 28, 2009 (the "Objection Period").

4.      The Adversary Proceeding shall be dismissed, with prejudice within ten (10) business days of the Effective Date of this Agreement.

5.      The Debtor and Intex and each of their respective officers, directors, agents, shareholders, employees, subsidiaries, affiliates, successors and assigns, do hereby remise, release, forever discharge and covenant not to sue each other and, where applicable, their respective officers, directors, agents, shareholders, employees, subsidiaries, affiliates, successors and assigns of and from all debts, demands, actions, causes of action, suits, accounts, damages, claims and liabilities of any kind, type, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, absolute or contingent, that they may now have or may ever have had based on any action or actions from the beginning of the world to the execution of this Agreement including, but not limited to, the claims asserted, or that could have been asserted, under the Intex Agreement. Nothing herein, however, shall prevent either party hereto from enforcing the terms of this Agreement or pursuing claims arising thereunder.

6.      The Committee and Intex on behalf of themselves and each of their respective officers, directors, agents, shareholders, employees, subsidiaries, affiliates, successors and assigns, do hereby remise, release, forever discharge and covenant not to sue each other and, where applicable, their respective officers, directors, agents, shareholders, employees, subsidiaries, affiliates, successors and assigns of and from all debts, demands, actions, causes of action, suits, accounts, damages, claims and liabilities of any kind, type, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, absolute or contingent, that they may now have or may ever have had based on any action or actions from the beginning of the world to the execution of this Agreement including, but not limited to, the claims asserted, or that could have been asserted, in the Preference Action. Nothing herein, however, shall prevent

2

either party hereto from enforcing the terms of this Agreement or pursuing claims arising thereunder.

7.    This Agreement shall not be construed against or in favor of any party as a result of any party's preparation hereof.

8.    Any notice or other communication required or permitted to be delivered to any party under this Agreement shall be in writing and be deemed properly delivered, given and received when delivered (by hand, by certified mail, by courier or overnight express delivery service or by facsimile) to the address of facsimile telephone number or scanned document as a PDF to the email address set forth beneath the name of such party below (or such other address or facsimile telephone number as such party shall have specified in a written notice given to the party hereto);

If to the Debtor:

Simon Sakamoto
Senior Portfolio Manager
American Home Mortgage Investment Corporation
538 Broadhollow Road
Melville, NY  11747
Fax: (206) 203-0577

With a copy to:

Curtis J. Crowther, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391 (courier:  19801)
Fax: (302) 576-3445
Email:  ccrowther@ycst.com

If to the Committee:

Steven D. Sass, Esq.
Vice President, Legal Services
RMS
307 International Circle, Suite 270
Hunt Valley, MD. 21030
Fax: 484-242-4212
steven.sass@rmsna.com

With a copy to:

Mark S. Indelicato, Esq.
Edward L. Schnitzer, Esq.

3

Hahn & Hessen LLP
488 Madison Ave
New York, NY 10022
Fax: 212-478-7400
mindelicato@hahnhessen.com
eschnitzer@hahnhessen.com

If to Intex:

George Jigarjian
Intex Solutions, Inc.
110 A Street
Needham, MA 02494
Email: George@intex.com

With a copy to:

Daniel C. Reiser, Esquire
Craig and Macauley
  Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210
Fax: (617) 742-1788

Notice, if hand delivered, transmitted by facsimile or sent by email using a pdf file shall be deemed given on receipt thereof; notice by certified mail shall be deemed given as of the third business day following the mailing date of such notice.

9.     This Agreement (a) represents the entire agreement and understanding of the parties on any and all matters; and (b) shall not be modified or amended without the express written consent of all parties.  This Agreement is binding upon the parties hereto and their respective heirs, successors, assigns and legal representatives.

10.    This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware existing as of the Effective Date of this Agreement.

11.    This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.  A copy of a signature by email and/or fax shall be effective as an original signature.

**[SIGNATURE PAGES FOLLOW]**

Witness my hand and seal on the date first above written.

AMERICAN HOME MORTGAGE                    OFFICIAL COMMITTEE OF
INVESTMENT CORP.                          UNSECURED CREDITORS

By: _Simon Sakamoto_____              By: _____
Title: _Senior Vice President_            Title:

INTEX SOLUTIONS, INC.


By: _____
Title:

5

Witness my hand and seal on the date first above written.

AMERICAN HOME MORTGAGE                    OFFICIAL COMMITTEE OF
INVESTMENT CORP.                          UNSECURED CREDITORS

_____           _____
By:                                        By: Edward Schnitzer
Title:                                     Title: Partner, Hahn&Hessen LLP
                                                  Counsel for the Committee

INTEX SOLUTIONS, INC.


_____
By:
Title:

DB02:8596932.1                                              066585.1001

Witness my hand and seal on the date first above written.

AMERICAN HOME MORTGAGE          OFFICIAL COMMITTEE OF
INVESTMENT CORP.                UNSECURED CREDITORS


By: _____     By: _____
Title:                          Title:


INTEX SOLUTIONS, INC.

By: _____
        George Jigarjian
Title:  President

5