IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| | Case No. 07-11047(CSS) |
| American Home Mortgage Holdings, Inc, a Delaware Corporation, *et al.,* | Jointly Administered |
| Debtors. | |
| James D. Rucker, | Adv. No. 09-_____(CSS) |
| Plaintiff | |
| v. | |
| American Home Mortgage Holdings, Inc, a Delaware Corporation, *et al.,* | |
| Defendants. | |

**PLAINTIFF'S VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO ENJOIN THE SALE OF THE PROPERTY FORMERLY OWNED BY RUCKER UNTIL SUCH TIME AS RUCKER'S SETOFF AND RECOUPMENT RIGHTS HAVE BEEN LIQUIDATED**

James D. Rucker ("Rucker") by and through his undersigned counsel hereby files this verified complaint seeking to enjoin the Debtors' sale of the property that he formerly owned and against which he asserts a secured claim until such time as his claim can be liquidated and in support thereof, states the following:

1.      Prior to the Debtor's bankruptcy filing, Rucker applied for and obtained a construction loan (the "Loan") to construct a new residence for himself and his family on land that Rucker had purchased several years earlier located in El Dorado Hills, California (the "Property").

2.    Rucker purchased the Property in 2005 with a $65,000.00 down payment and financed the balance of the purchase price of approximately $341,000.00 through Bank of America.  After purchasing the Property, Rucker paid an additional $44,100.00 to Bank of America.

3.    Rucker had the opportunity to go with a different lender, First Horizon,  and indeed First Horizon had approved his construction loan application.

4.    The Debtors approved Rucker's loan just prior to their bankruptcy filing with the Loan closing taking place on or about July 3, 2007 and the Debtors' Chapter 11 petition being filed on August 6, 2007.

5.    In or about September of 2007, the Debtors ceased funding the construction loan to Rucker.  The decision to stop funding the loan was a breach of the Debtors' obligations to Rucker.  The Debtors fraudulently and/or negligently misrepresented their intent and/or ability to fully fund the construction loan when they closed on the Loan in July of 2007.

6.    As a result of the Debtors' misrepresentations and breach of their agreement with Rucker, Rucker was not able to complete construction of his residence.

7.    As a direct and proximate result of Debtors misrepresentations and breach of their agreement, numerous mechanic's liens were filed against the Property.

8.    Rucker was serving as the general contractor for the construction of his residence so the mechanic's lien claims have not only subjected the Property to various lien claims but Rucker himself had personal judgments entered against him.

9.      Rucker is a licensed general contractor and as a result of the judgments and claims that were filed against him, Rucker has had his general contractors license suspended.

10.     As a result of the judgments and liens that were entered against Rucker and the Property, Rucker was not able to obtain substitute financing and move forward with the construction of his residence.

11.     Ultimately, as a direct and proximate result of the Debtors' misrepresentations and refusal to fund his loan, Rucker was himself forced to file bankruptcy, on or about January 29, 2009

12.     Following the Debtor's breach of its obligations to Rucker and prior to Rucker's bankruptcy, Rucker timely filed a proof of claim against the Debtor alleging a secured claim of approximately $3.3 million.

13.     The Debtors filed an objection to Rucker's proof of claim and Rucker timely filed a response to the Debtor's claim objection.

14.     After Rucker filed his response to the Debtors' objection to his claim, the Debtors informed Rucker that the reason that Rucker's Loan was not funded was because he had committed fraud in applying for the Loan.   Rucker has asked for the Debtors to support their claim that he had committed fraud in applying for the Loan and the Debtors have provided none.

15.     Debtors noticed up the claim objection that they had filed against Rucker's claim as going forward on May 15, 2009.  Prior to the May 15, 2009 hearing, Rucker provided the Debtors with a significant number of documents in support of his claim and Rucker's counsel spent considerable time preparing for a contested hearing on May 15, 2009 to address the Debtors' claim

objection.   Rucker traveled from the West Coast to Delaware and was present and prepared to defend his claim before this Court.

16.     Notwithstanding the considerable time and expense that Rucker expended in preparation of the May 15, 2009 hearing, the Debtors decided that they did not want to go forward with the hearing on May 15, 2009.   Indeed, prior to the May 15, 2009, the Debtors had failed to notify the Court that an evidentiary hearing would be required to liquidate Rucker's claim or take any steps to ensure that the Court would be able to hear its objection to Rucker's claim.   The Debtors did, however, appear to concede that Rucker's claim did involve setoff and/or recoupment issues.   To date, the Court has not yet ruled on the objection to Rucker's claim.

17.     At the May 15, 2009 hearing the parties did address the Court and among other things did agree to attempt to settle Rucker's claim.

18.     On or about April 1, 2009, Rucker received notice, in the violation of the automatic that the Rucker bankruptcy imposed, that foreclosure proceedings had been instituted against the Property.   Because of the automatic stay from the Rucker bankruptcy, the foreclosure did not go forward in April of 2009.   In or about June of 2009, Rucker discovered that the Debtors, without any prior notice to Rucker or his counsel had again started the foreclosure process with a foreclosure sale scheduled for July 8, 2009.   Rucker's counsel contact the Debtors objecting the foreclosure and eventually the parties agreed that the Debtors would sell the Rucker loan to Rucker if he could close by August 28, 2009.

19.     Notwithstanding his best efforts, Rucker was unable to raise the funds that the Debtors had demanded for the purchase of the loan and come up with an agreed upon sum to purchase the loan from the Debtors.

20.    The Debtors agreed to extend the deadline for Rucker to raise the funds the purchase the loan but due to his own bankruptcy, the tight credit market and the continued problems in the California real estate marker, Rucker was not able to close on the purchase of the loan by the end of September.

21.    Notwithstanding Rucker's difficulties in raising the funds needed to purchase his loan, Rucker's new loan broker had been in regular contact with representatives of the Debtors informing the Debtors of the progress that he was making in obtaining financing for Rucker.  (See Affidavit of Glenn Burton attached hereto as Exhibit A.)

22.    On or about October 1, 2009, the Debtors foreclosed on the Property.

23.    On or about October 8, 2009, Rucker advised the Debtors that he had finally been able to obtain funds to purchase the loan.

24.    The Debtors advised Rucker that because the Property had gone through foreclosure, Rucker could no longer purchase the loan and the amount that it would consider selling Rucker the Property was substantially higher than that which the Debtors were willing to sell the loan.

25.    The Debtors claim that Rucker's setoff/recoupment claims have been eliminated as a result of the foreclosure.

26.    The Debtors claim that they can sell the Property for approximately $300,000.00.

27.    Rucker believes that his claim against the Debtors substantially exceeds $300,000.00 such that if the proceeds of the sale of the Property were used to satisfy Rucker's claim

as he believe they should be, there would no benefit to the Debtors estate beyond reducing the amount of Rucker's claim.

28.    Rucker, however, would be irreparably damaged as a result of the sale of the Property to a third party if the proceeds of the sale of the Property did not exceed the amount of his claim.

29.    Since May 15, 2009, the Debtors have not behaved in good faith.   Rucker had agreed to the continuance of the May 15, 2009 hearing in large part because the Rucker family has a significant emotional investment in the property that was to be their family home.   Indeed, while Rucker was traveling to the East Coast his 11 year old daughter told him that she was praying that the family would be able to keep and ultimately complete their house.

30.    The May 15, 2009 hearing was on a Friday and on or about May 18, 2009, Rucker did convey an offer to Debtor in the form of a loan modification.  Without getting into the specifics of the offer, the offer did involve a principal reduction in the loan, that Rucker pay interest at or near market rates and that the modified loan have a balloon provision such the loan would have to be paid in full prior to the Debtors making a final disbursement.  The Debtors did not provided a counter offer to Rucker's offer but rather restarted the foreclosure process. for a foreclosure sale to take place on July 8, 2009.

31.    After forcing Rucker to file an emergency motion to stop the foreclosure, the Debtors did offer to sell to the Loan to Rucker on terms that he was wiling to purchase it but due to the damage that the Debtors' conduct has caused to Rucker and his credit, he was not able to raise the funds within the tight time constraints that the Debtors have imposed.

32.     Notwithstanding the damage that the Debtors' conduct has caused to Rucker and his credit and the broader economic challenges with which he was faced, he was able to raise funds the Debtors demanded to purchase the Loan only to have the Debtors not only tell him that the loan could not be purchased but that while Rucker's hands were tied with the Debtors' bankruptcy, (unlike the Debtors he did violate any bankruptcy stays or injunctions) the Debtors were able to eliminate his setoff and recoupment rights by foreclosing on the Property.

**WHEREFORE,** James D. Rucker respectfully requests that this Court enter an Order enjoining the Debtors from selling the Property until the Debtors' objection to Rucker's claim can be reconciled and his setoff and recoupment rights with respect to the Property determined and grant Rucker such other relief as is just and proper.

Dated: October 23, 2009                                     Respectfully submitted,
                                                            ARCHER & GREINER, P.C.

                                                             _/s/ Charles J. Brown, III_____
                                                            Charles J. Brown, III, Esq. (#3368)
                                                            300 Delaware Avenue, Suite 1370
                                                            Wilmington, DE 19801
                                                            Phone: 302.777.4350 / Fax:  302.777.4352
                                                            cbrown@archerlaw.com

                                                            *Attorneys for James D. Rucker*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I caused true and correct copies of the foregoing document to be served upon all parties requesting notice via CM/ECF and via email upon the following:

Curtis Crowther, Esq.
Young Conaway Stargatt & Taylor LLP
1000 West Street, 17th Floor
PO Box 391
Wilmington, DE  19899-0391


Dated:  June 19, 2009                          /s/ Charles J. Brown, III
                                               **Charles J. Brown, III (#3368)**

5028163v1