IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x   Chapter 11

In re:                                                             :
                                                                   :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                             :
a Delaware corporation, et al.,[1]                                 :   Jointly Administered
                                                                   :
                              Debtors.                             :   **Objection Deadline: November 10, 2009, at 4:00 p.m. (ET)**
                                                                   .   **(Requested)**
                                                                   :   **Hearing Date: November 13, 2009 at 2:00 p.m. (ET)**
                                                                   :   **(Requested)**
------------------------------------------------------------------ x

**DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 9019(a) FOR AN ORDER AUTHORIZING AND
APPROVING STIPULATION BY AND AMONG THE DEBTORS AND THE BANK OF
NEW YORK MELLON IN VARIOUS CAPACITIES (I) RESOLVING CURE CLAIMS
ASSERTED IN CONNECTION WITH THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN LOAN SERVICING AGREEMENTS TO AMERICAN HOME MORTGAGE
SERVICING, INC. (F/K/A AH MORTGAGE ACQUISITION CO., INC.) AND
(II) PARTIALLY RESOLVING CERTAIN PROOFS OF CLAIM**

AHM Holdings, a Delaware corporation, and certain of its affiliates, debtors and

debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), by

this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules

of Bankruptcy Procedure ("Bankruptcy Rules") and section 105(a) of Title 11 of the United

States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") approving the stipulation attached

as Exhibit A to the proposed form of order (the "Stipulation") by and among the Debtors and

The Bank of New York Mellon f/k/a The Bank of New York, in various capacities ("BNYM"

and, collectively with the Debtors, the "Parties"). In support of the Motion, the Debtors

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation
(3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM
SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American
Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC
("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc.
("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York
corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors commenced voluntary cases under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3. The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1005(b) of the Federal Rules of Bankruptcy Procedure.

4. On August 14, 2007, the United States Trustee for the District of Delaware (the "Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). No trustee or examiner has been appointed.

## RELEVANT BACKGROUND

5. On the Petition Date, the Debtors filed an emergency motion [D.I. 11] (the "Sale Motion") to authorize the sale of the assets used in their mortgage loan servicing business (the "Servicing Business"), including the assumption and assignment of certain executory contracts.

6. On October 30, 2007, the Bankruptcy Court entered an order [D.I. 1711] (the "Sale Order") approving the Sale Motion and authorizing the sale of the Servicing Business and the assumption and assignment of certain executory contracts (the "Assumed Contracts") pursuant to that certain Asset Purchase Agreement (as subsequently amended, the "APA") by

and among AHM Investment, AHM Corp., and AHM SV (the "Sellers") and American Home Mortgage Servicing, Inc. (f/k/a AH Mortgage Acquisition Co., Inc.) (the "Purchaser").

7. The Assumed Contracts included certain contracts (i) to which BNYM, in its capacity as Indenture Trustee, Master Servicer, and/or Securities Administrator, is a party or (ii) under which BNYM is otherwise entitled to enforce the Debtors' obligations (such agreements, the "Assumed BNYM Agreements").

8. Pursuant to the Sale Order, a reserve of $10 million (the "Cure Escrow") was established on or about November 16, 2007, for the payment of the Sellers' Cure Amount, which includes (i) the Initial Cure Amount, (ii) the Interim Cure Amount, and (iii) any reasonable out-of-pocket costs and expenses (a) incurred by a counterparty to an Assumed Contract as a result of the assumption and assignment of such contract to the Purchaser *and* (b) chargeable under the Assumed Contract (such costs/expenses, "Transfer Costs"). The Cure Escrow is held by Capital One, N.A., successor by merger to North Fork Bank, as escrow agent (the "Escrow Agent") pursuant to the terms of the Cure Escrow Agreement (as defined in the APA).

9. In accordance with the Sale Order, BNYM timely filed (i) the *Proof of Cure Claim and Estimate of Transfer Cost Claim of The Bank of New York, in Various Capacities* [D.I. 2235] (the "Initial Cure Claim"), (ii) the *Limited Objection of The Bank of New York, in Various Capacities, to Notice of Cure Interim Cure Claim Schedule* [D.I. 2504] (the "Interim Cure Claim"), and (iii) the *Proof of Transfer Cost Claim of The Bank of New York, in Various Capacities* [D.I. 3849] (the "Transfer Cost Claim" and, together with the Initial Cure Claim and the Interim Cure Claim, the "Sellers' Cure Claims"), which asserted aggregate claims of $629,976.46 as a Sellers' Cure Amount. BNYM has agreed to withdraw the Initial Cure

Claim to the extent of the claim for $72,159 relating to an apparent custodial account discrepancy, which was subsequently resolved.

10. BNYM timely filed proof of claim number 8609 against AHM Acceptance, which was subsequently amended and superseded by proof of claim number 10116, in which it asserted (i) contingent and unliquidated claims for breaches of representations, warranties, and obligations contained in certain contracts (the "Acceptance EPD/Breach Claims"); and (ii) an unliquidated claim for damages in connection with the Debtor's alleged diversion of principal collections on Home Equity Line of Credit following an alleged Rapid Amortization Event (as defined in the relevant documents) (the "Acceptance HELOC/RAE Claim").

11. BNYM timely filed proof of claim number 10117 against AHM SV asserting (i) Sellers Cure Claims, to the extent the Cure Escrow was insufficient to provide for their payment in full; (ii) contingent and unliquidated claims for breaches of representations, warranties, and obligations contained in certain contracts (the "Servicing Breach Claims"); and (iii) an unliquidated claim for damages in connection with the Debtor's alleged diversion of principal collections on Home Equity Line of Credit following an alleged Rapid Amortization Event (the "Servicing HELOC/RAE Claim").

12. BNYM timely filed proof of claim number 8610 against AHM Corp., in which it asserted contingent and unliquidated claims for breaches of representations, warranties, and obligations contained in certain contracts (the "Corp. EPD/Breach Claims").

13. On March 25, 2009, the Debtors filed an objection to the Sellers' Cure Claims [D.I. 7155].

14. On October 13, 2009, the Debtors filed omnibus claim objections [D.I. 8173 & 8174] (the "Omnibus Objections") which included objections to BNYM's claims numbered 8609, 8610, 10116, and 10117.

15. The Parties desire to avoid costly litigation concerning the validity and extent of the Debtors' liability on account the various claims asserted by BNYM. To this end, the Parties have engaged in good-faith, arm's-length settlement negotiations to attempt to reconcile their positions and, as a result of such negotiations, have reached an agreement, embodied in the Stipulation, which the Debtors believe represents a fair and reasonable compromise in light of the costs, uncertainties, and risks attendant to litigation.

## THE STIPULATION

16. The principal terms of the Stipulation are set forth below:[2]

a. Effectiveness. This Stipulation shall be effective upon entry of an order by the Bankruptcy Court (the "Approval Order") approving this Stipulation and authorizing the Cure Escrow Agent to pay the Allowed Cure Claim (as defined below) to BNYM from the Cure Escrow. In the event the Approval Order is not entered within thirty (30) days after execution of the Stipulation by all the Parties, the Stipulation shall be null and void unless otherwise agreed by the Parties.

b. Allowed Cure Claim. Upon entry of the Approval Order, the Sellers' Cure Claims shall be allowed in the aggregate amount of $240,001 (the "Allowed Cure Claim"). The Allowed Cure Claim shall be paid to BNYM from the Cure Escrow within five (5) days following entry of the Approval Order, pursuant to wire instructions to be provided by BNYM.

c. Withdrawal of Omnibus Objections. Effective upon entry of the Approval Order, the Omnibus Objections shall be deemed withdrawn with prejudice (except as otherwise provided in the Stipulation) as to proofs of claim numbered 8609, 8610, 10116, and 10117.

---

[2] The terms of the Stipulation set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Stipulation. To the extent of any inconsistency between this summary and the Stipulation, the terms of the Stipulation shall govern.

d. <u>Allowed Claim Against AHM SV</u>. Effective upon entry of the Approval Order, proof of claim number 10117 shall be allowed in part as a general unsecured claim in the amount of $317,816 on account of the Sellers' Cure Claims, without prejudice to the Debtors' right to object, on any basis whatsoever, to (i) the Servicing Breach Claims, to the extent they arise from a contract other than an Assumed BNYM Agreement, and (ii) the Servicing HELOC/RAE Claim.

e. <u>Allowed Claim Against AHM Corp</u>. Effective upon entry of the Approval Order, proof of claim number 8610 shall be allowed as a general unsecured claim in the amount of $184,842 on account of the Corp. EPD/Breach Claims.

f. <u>Allowed Claim Against AHM Acceptance</u>. Effective upon entry of the Approval Order, proof of claim #8609 shall be expunged as amended and superseded, with proof of claim #10116 as the surviving claim. Proof of claim number 10116 shall be allowed in part as a general unsecured claim in the amount of $18,640 on account of the Acceptance EPD/Breach Claims, without prejudice to the Debtors' right to object to the Acceptance HELOC/RAE Claim on any basis whatsoever.

g. <u>Release by BNYM</u>. Effective upon BNYM's receipt of payment of the Allowed Cure Claim from the Cure Escrow, BNYM, on behalf of itself and any affiliates, successors, assigns, officers, directors, employees, or agents, shall be deemed to have forever waived and released any and all claims and/or causes of action of any nature that it may have against the Debtors or the Cure Escrow arising out of or relating to the Assumed BNYM Agreements, whether such claim and/or cause of action is known or unknown at this time, fixed or contingent, liquidated or unliquidated; <u>provided</u>, <u>however</u>, that BNYM does not waive or release any claims allowed pursuant to the Stipulation, nor does BNYM waive its right to assert (i) the Acceptance HELOC/RAE Claim, (ii) the Servicing HELOC/RAE Claim, or (iii) any Servicing Breach Claims arising from a contract other than an Assumed BNYM Agreement.

**RELIEF REQUESTED AND BASIS THEREFOR**

17. By this Motion, the Debtors are seeking this Court's authorization and approval of the Stipulation pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

18. Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." The settlement of time-consuming and

burdensome litigation, especially in the bankruptcy context, is encouraged. <u>In re Penn Central Transp. Co.</u>, 596 F.2d 1002 (3d Cir. 1979). The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." <u>In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson</u>, 390 U.S. 414 (1986).

19. Approval of a proposed settlement is within the "sound discretion" of the Bankruptcy Court. <u>In re Neshaminy Office Building Associates</u>, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of the estate." <u>See</u> <u>In re Energy Cooperative, Inc.</u>, 886 F.2d 921, 927 (7th Cir. 1989). In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." <u>In re Penn Central Transportation Co.</u>, 596 F.2d 1127, 1153 (3d Cir. 1979); <u>see also</u> <u>In re Marvel Entertainment Group, Inc.</u>, 222 B.R. 243 (D. Del. 1998) (quoting, <u>In re Louise's Inc.</u>, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

20. In particular, the Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved, namely: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay

necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

21.     In deciding whether to approve a settlement, the bankruptcy court should not substitute its judgment for that of the debtor. Neshaminy, 62 B.R. at 803. Nor should it decide the numerous questions of law or fact raised by litigation. Rather, it should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

22.     In the Debtors' judgment, the resolutions embodied in the Stipulation are reasonable and in the best interest of the Debtors, their estates, their creditors and other parties in interest. The Stipulation provides for a fair and practical resolution of numerous disputed issues, including: (i) the Sellers' Cure Claims; (ii) the Acceptance EPD/Breach Claims; (iii) the Corp. EPD/Breach Claims; and (iv) the Omnibus Objections, and avoids the need to commence costly and time-consuming litigation to determine the validity of such claims and the extent of the Debtors' liability, if any, in connection therewith. The Stipulation was the product of significant and lengthy discussions and negotiations between the Debtors and BNYM, and the settlement embodied therein falls well above the lowest point in the range of reasonableness. In addition, as discussed below, each of the applicable Martin factors weighs in favor of approving the Stipulation.

A.     **The Probability of Success in Litigation**

23.     Absent the Stipulation, the disputes between the Parties would have to be litigated before the Court with no assurances of a favorable outcome for the Debtors' estates. The resolution of these disputes under the terms of the Stipulation is a favorable outcome because it eliminates potentially protracted litigation over the validity and extent of BNYM's claims which would continue to drain valuable estate resources. Moreover, while the Debtors dispute the extent of their liability to BNYM with respect to BNYM's various claims, the uncertainty and inherent risk in litigating these matters as well as the unavoidable expenditure of estate assets and distraction of Debtors' management attendant thereto mitigate in favor of a prompt and consensual resolution of these matters.

B.     **The Likely Difficulties in Collection**

24.     The Debtors do not believe that collection of any judgment that could be obtained is an issue and therefore this factor is neutral.

C.     **The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It**

25.     The Stipulation satisfies the third factor in <u>Martin's</u> four-factor test largely for the reasons set forth above in the discussion of the Debtors' probability of success in litigation. Litigation over the validity and amounts allowed with respect to BNYM's various claims, and resolving the Debtors' objections thereto, would involve complex legal and finance issues and a potentially lengthy proceeding, which would be expensive for the Debtors' estates and inconvenient for the Parties. Additionally, such litigation could distract the Debtors and their professionals from other, more important matters in the wind-down of the Debtors' estates.

### D. The Paramount Interest of Creditors

26. Entry into the Stipulation serves the paramount interest of creditors of the Debtors. The Stipulation's resolution of BNYM's claims represents a savings for the creditors by obviating litigation, thereby saving the expenses attendant to such litigation. In addition, the amounts to be received by BNYM under the terms of the Stipulation represent a mere fraction of the amounts that BNYM claims it is owed by the Debtors. Therefore, the fourth factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the Stipulation.

### E. Summary

27. A review of the four factors set forth above clearly demonstrates that the Stipulation is in the best interest of the Debtors, the Debtors' estates and creditors. The resolution and compromise of the disputes and issues between the Parties as embodied in the Stipulation: (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay, inconvenience and uncertainty that would attend any litigation of the Parties' issues; and (iv) advances the paramount interests of creditors. Therefore, the Stipulation satisfies Bankruptcy Rule 9019 and should be approved by the Court.

### NOTICE

28. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to BNYM; and (iv) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto approving the Stipulation and granting the Debtors such other and further relief as is just and proper.

Dated:   Wilmington, Delaware               YOUNG CONAWAY STARGATT & TAYLOR, LLP
         October 28, 2009

                                            /s/ Sean M. Beach
                                            _____
                                            Sean M. Beach (No. 4070)
                                            Patrick A. Jackson (No. 4976)
                                            Michael S. Neiburg (No. 5275)
                                            The Brandywine Building
                                            1000 West Street, 17th Floor
                                            Wilmington, Delaware 19801
                                            Telephone: (302) 571-6600
                                            Facsimile: (302) 571-1253

                                            Counsel for Debtors and Debtors in Possession