UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF DELAWARE

```
                              )
IN RE:                        )
                              )       Bankruptcy Action
AMERICAN HOME MORTGAGE        )       07-11047-CSS
HOLDINGS, INC., a             )
Delaware Corporation,         )       Chapter 11
et als.,                      )
            Debtors,          )
                              )       Wilmington, DE
                              )       October 14, 2009
                              )       9:00 a.m.
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| For the Debtor: | SEAN M. BEACH, ESQUIRE |
| | MARGARET WHITEMAN GREECHER, ESQUIRE |
| | MICHAEL S. NEIBURG, ESQUIRE |
| | Young, Conaway, Stargatt & Taylor |
| | The Brandywine Building |
| | 1000 West Street, 17th Floor |
| | Wilmington, Delaware 19801 |

| For Triad Guaranty: | MICHAEL BUSENKELL, ESQUIRE |
| | Womble, Carlyle |
| | 222 Delaware Avenue |
| | Wilmington, Delaware 19801 |

| | RICHARD RICE, ESQUIRE |
| | Womble, Carlyle |
| | One West Fourth Street |
| | Winston-Salem, NC 27101 |

| Audio Operator: | Leslie Murin |

| Transcribed by: | DIANA DOMAN TRANSCRIBING |
| | P.O. Box 129 |
| | Gibbsboro, New Jersey  08026-129 |
| | PHONE:  (856)435-7172 |
| | FAX:    (856) 435-7124 |
| | Email:  Dianadoman@comcast.net |

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Appearances Continued)

For Countrywide            STUART BROWN, ESQUIRE
Entities:                  Edwards, Angell, Palmer & Dodge
                           919 North Market Street
                           Wilmington, Delaware

For Fee Examiner:          M. JACOB RENICK
                           Nachman, Hays & Brownstein
                           New York, New York

For Zuckerman,             THOMAS McCAULEY, ESQUIRE
Spaeder:                   Zuckerman, Spaeder
                           919 Market Street
                           Wilmington, Delaware 19801

For Gilbert, LLC:          STEPHEN WEISBROD, ESQUIRE
                           Gilbert, LLC
                           1100 New York Avenue NW
                           Washington, D.C. 20005

For Committee:             EDWARD SCHNITZER, ESQUIRE
                           CHRISTOPHER JARVINEN, ESQUIRE
                           Hahn & Hessen
                           488 Madison Avenue
                           New York, New York 10022

# I N D E X

Claims Objections                              5

FEE REQUESTS

  Argument By:

Mr. Renick                             28, 39
Mr. McCauley                       30, 41, 47
Mr. Weisbrod                               33
Mr. Beach                              35, 46
Mr. Schnitzer                              39

Page 4

1        (Call to the Order of the Court)

2              THE COURT:  Please be seated.  Counsel?

3              MR. BEACH:  Good morning, Your Honor.  May it please

4        the Court, Sean Beach from Young, Conaway on behalf of the

5        debtors.  Your Honor, I understand that your time's tight

6        today.  We will move as quickly as we can, and we have been

7        advised that we have one hour, so we'll try to get all those

8        things in.

9              With that in mind, Your Honor, I think we can skip to

10       items 19 and 20 on the Agenda.  All other matters have either

11       been entered by Your Honor, or adjourned.  Items 19 and 20,

12       Your Honor, I think there was some confusion over the CNO that

13       was filed.

14             These motions relate to the settlement, or the

15       preliminary settlement, I should say, on the WARN litigation.

16       There were no objections to those motions.  One motion is for

17       the settlement, the other motion is to seal certain employee

18       information that was filed in connection with the settlement

19       agreement.

20             In the interest of time, Your Honor, I can run

21       through --

22             THE COURT:  Not necessary.  Does anyone wish to be

23       heard?  I don't know why I didn't --

24             MR. BEACH:  I think there was an issue with the

25       binder, the orders weren't attached, or something.

Colloquy                                    Page 5

1            THE COURT:  Oh, all right.

2            MR. BEACH:  So we submitted them later in the day.

3            THE COURT:  Okay.

4            MR. BEACH:  May I approach with the --

5            THE COURT:  Yes, please.  And again, anyone wish to

6    be heard?  The Court hears none.  I'll approve the motions.

7            MR. BEACH:  Your Honor, there's one date that -- for

8    the final fairness hearing.  We do have an omnibus hearing date

9    on December 9th, and I think in the order that we submitted to

10   the Court we -- I'm sorry, Your Honor, I'm told it can't be

11   earlier than December 11th, so if it's possible to get a date

12   for a fairness hearing, or to move the December 9th omnibus

13   date that we have beyond that time, we would need to put a date

14   in the order and for the notices that will go out.

15           THE COURT:  Well we'll move the omnibus, and give you

16   extra time.  And I'm just looking for a good date.  We'll move

17   it to December 14th at 11:30.  I'll give you two hours.

18           MR. BEACH:  Thank you, Your Honor.

19           THE COURT:  Sorry to be so tight with time these

20   days, but --

21           MR. BEACH:  No, I certainly understand, Your Honor.

22   That was December 14th at 11:30?

23           THE COURT:  Yes.  Let me make a note, so I don't get

24   in trouble.  Can you make a note to move the omnibus to 12/14,

25   two hours at 11:30.  You got it.

1          MR. BEACH:  May I approach, Your Honor?

2          THE COURT:  Yes.  Thank you.

3          MR. BEACH:  Your Honor, the next items on the agenda

4    are a claim objections, and I'll cede the podium to my

5    colleague, Mike Neiburg.

6          MR. NEIBURG:  Good morning, Your Honor.

7          THE COURT:  Good morning.

8          MR. NEIBURG:  Michael Neiburg from Young, Conaway,

9    Stargatt & Taylor on behalf of the debtors.  Your Honor, Ms.

10   Eileen Wanerka representative of the debtors is available via

11   Court Call, if you have -- happen to have any questions.

12         The first item is agenda number 21.  And in light of

13   the time constraints today, Your Honor, and the fact that

14   addressing the item for the debtors eleventh omnibus objection

15   probably involves some substantial evidence and documents, the

16   parties have agreed prior to the hearing to adjourn the

17   eleventh omnibus objection with respect to the claimant Ms.

18   Heck.

19         THE COURT:  To what date?

20         MR. NEIBURG:  I believe the next omnibus hearing.

21   November 13th, Your Honor, I believe, 10 a.m.

22         THE COURT:  And that will be evidentiary.

23         MR. NEIBURG:  I just think it involves going through

24   some documents and hearing some testimony from the claimant.

25   We just felt, in light of the timing for the other matter that

Claims Objections                    Page 7

1   you have to deal with, it was best to adjourn the matter.

2           THE COURT:  All right.  We'll do that, but I'm going

3   to move the hearing until 2 p.m., and I'll give you several

4   hours.

5           MR. NEIBURG:  Thank you, Your Honor.

6           THE COURT:  So move the American Home omnibus on

7   November 13th to 2 p.m., and book the rest of the day.

8           MR. NEIBURG:  Next item, Your Honor, is agenda matter

9   number 22, which pertains to the debtors' fifteenth omnibus

10  objection to claims.

11          The debtors are moving forward with respect to their

12  objection to the claim of California Cleaning Concepts, Your

13  Honor.  In the original objection, Your Honor, we moved to

14  modify and reclassify this claim from 1,750 priority unsecured,

15  to 500 general unsecured.

16          In light of the response of California Cleaning

17  Concepts, the debtors will agree to the full amount, but it's a

18  services contract, Your Honor, that was rejected.

19          And, therefore, we would ask that the Court

20  reclassify this claim to a general unsecured claim.

21          THE COURT:  Did the objection deal with the priority

22  issue?

23          MR. NEIBURG:  Correct.  Yeah.  It was modified and

24  reclassified.

25          THE COURT:  Is there anyone here on behalf of the

Claims Objections                           Page 8

1  claimant?  All right.  I'll grant the objection as modified.

2          MR. NEIBURG:  Thank you, Your Honor.  May I approach

3  with the order, Your Honor?

4          THE COURT:  Yes.

5                          (Pause)

6          THE COURT:  Thank you.

7          MR. NEIBURG:  Next is agenda matter number 23, Your

8  Honor, which pertains to the debtors' twenty-fifth omnibus

9  objection and claims.

10         The debtors had intended on moving forward with

11  respect to the objection of Riverside County.  Prior to the

12  hearing, the parties have agreed to cap the amount at -- so it

13  would be no greater than $52,603.92.

14         But the parties have reserved all rights at the next

15  hearing to address the merits of the claim.  And we'll submit

16  an order reflecting this agreement to Your Honor.

17         THE COURT:  Okay.  Does anyone wish to be heard on

18  that?  All right.  That's fine with the Court.

19         MR. NEIBURG:  Thank you, Your Honor.  And at this

20  time, for agenda matter number 24, Your Honor, I'd like to cede

21  the podium to my colleague Margaret Greecher.

22         THE COURT:  Good morning.

23         MS. GREECHER:  Good morning, Your Honor.  Margaret

24  Whiteman Greecher from Young, Conaway on behalf of the debtors.

25  The next matter on the agenda is the forty-second omnibus

Claims Objections                              Page 9

1   objection to claims.  The debtors did receive responses from

2   Arapahoe County and John Monaghan.  And the parties have agreed

3   to adjourn the objection with respect to those claims.

4          Additionally, counsel to Ms. Beall filed a response,

5   and the parties have agreed to reclassify the Beall claim to an

6   unsecured, non-priority claim, and to adjourn the remaining

7   substantive issues to the next hearing date.

8          We do have a form of order that will be -- that does

9   have that agreement in it.  Counsel for Beall could not make

10  the hearing today, but has reviewed the order.

11         THE COURT:  Very good.

12         MS. GREECHER:  The sole remaining response was

13  received by -- on behalf of Ms. Mona Dobben.  And that is going

14  forward today.  I do believe that Ms. Yamamura, Ms. Dobben's

15  daughter is on the telephone.  I'm not sure if anyone else is

16  here.  I think there may be a counsel from California, as well.

17         THE COURT:  Okay.  Ms. Yamamura, you're on the

18  telephone?

19         MR. YAMAMURA:  Yes, Your Honor.  I also have my

20  mother, Mona Dobben, on the line.

21         THE COURT:  Okay.  Thank you.  Do you have counsel?

22         MR. YAMAMURA:  Yes.  Douglas Pettibone.  And my

23  mother's admitted power of attorney, Paula Rush, should be in

24  the Court with you.

25         THE COURT:  I don't' see Ms. Rush.  I know her well.

1    Counsel, are you on the telephone?

2             MR. PETTIBONE:  Douglas Pettibone, Your Honor, from

3    California.

4             THE COURT:  Okay.  Very good.  Ms. Greecher.

5             MS. GREECHER:  Your Honor, the objection is

6    essentially a motion to dismiss.  The idea behind it is that

7    the claims did not have anything attached to them.  There was

8    no supporting documentation.

9             However, there was a reference to the stay relief

10   motion that Ms. Dobben filed in this matter before, referencing

11   the complaint in the Central District of California.  We used

12   that complaint as a basis to review the facts and the causes of

13   action with respect to the claims, and determined that, based

14   on the complaint, there are factual and legal deficiencies that

15   do not give rise to prima facie validity of the Dobben claims.

16            There are three of them.  They're identical.  One is

17   against Corp., the other against servicing, and the third

18   against holdings.

19            The omnibus objection and the reply set forth both

20   the factual deficiencies and legal deficiencies.  I can walk

21   through them.  The response does provide some issues, and there

22   is an assertion that they want to do an amended complaint.  I

23   don't know if it's more appropriate to see what Mr. Pettibone

24   has to respond.

25            I have not had a opportunity to talk to him and was

1   not aware he was going to appear today.

2           THE COURT:  All right.  Mr. Pettibone?

3           MR. PETTIBONE:  Yes, sir.  I've been retained by Ms.

4   Dobben to file the complaint in California.  And I am reviewing

5   that right now.  And I'm prepared -- I have been retained to

6   file that.

7           We are preparing that document.  My understanding is

8   this debtor would be, you know, a nominal defendant in there,

9   because of the bankruptcy.  That we were going to proceed

10  forward against other entities, other brokers, other

11  individuals involved in this, who we're alleging to be a fraud

12  scheme.

13          And that I was asked by Paula Rush to be available

14  today as a courtesy if anybody had any questions about that.

15  And that's pretty much my role here.

16          THE COURT:  All right.  So what do you want me to do

17  about the proof of claim?  I understand your desire to amend

18  the complaint.  I don't think stay relief has been granted for

19  those -- or may that -- Ms. Greecher's shaking her head.  So

20  you can't file an amended complaint against the entity without

21  this Court lifting the automatic stay.

22          Ms. Greecher?

23          MS. GREECHER:  Your Honor, the plan and the

24  confirmation order in this matter does --

25          THE COURT:  Oh, allowed for that.

1     MS. GREECHER:  -- provide for nominal -- naming

2  someone nominally -- or the debtors nominally, so that they can

3  go against third parties, which is my understanding of what he

4  intends to do.

5     THE COURT:  Okay.  I remember that now.  Thank you

6  for the reminder.  So you want to file an amended complaint to

7  assert a claim against other entities, and to add the debtor as

8  a nominal defendant.

9     So what do we do about the proof of claim that's been

10  filed before this Court asserting a claim, other than a nominal

11  claim, against one of the debtors?

12     MR. PETTIBONE:  Thank you, Your Honor.  Douglas

13  Pettibone.  You know, I thought that the -- Ms. Rush, Ms. Paula

14  Rush was going to be present to handle that.

15     And I'm just not familiar with what's going on with

16  that claim.  And what they're -- I would ask that she have the

17  opportunity to appear.  I mean, she called me last night at

18  9:00 California time to make sure that I was available today.

19  Every indication was that she was going to be appearing this

20  morning.

21     THE COURT:  All right.  For present purposes, at

22  least, let's kick this to the end of today's hearing.  Is there

23  anything further?

24     MS. GREECHER:  Your Honor, I would just comment that

25  Paula Rush does have a power of attorney --

1        THE COURT:  But she's not an attorney.

2        MS. GREECHER:  -- with respect to Ms. Dobben.

3        But -- exactly.  And so to the extent that Ms. Rush

4    wishes to speak, regardless of whether she's here or not, we

5    would contend that she doesn't have the right to do so.

6        THE COURT:  Well other than to assert factual issues.

7        MS. GREECHER:  That's correct.  But it is my

8    understanding that she has no personal knowledge of the actual

9    events that occurred.  Ms. Yamamura or Ms. Dobben would be the

10   appropriate parties.

11       We are fine to adjourn, or at least push this matter

12   until the end of the day.

13       THE COURT:  Well are -- you're seeking to disallow

14   the claim in its entirety?

15       MS. GREECHER:  That is the goal.  To the extent --

16   the problem is, the complaint is 600 pages, and it asserts

17   approximately 25 causes of action.

18       THE COURT:  Right.

19       MS. GREECHER:  We believe that it can be essentially

20   expunged on a motion to dismiss basis, and that none of the

21   allegations have any basis with respect to the debtors.

22       However, to the extent that you do believe that the

23   claim is prima facie valid based on any of those causes of

24   action, we would ask that you reclassify the claim today, and

25   then move for a, like a hearing date in which we can go

1    forward.

2              THE COURT:  Reclassify as unsecured?

3              MS. GREECHER:  Correct.

4              THE COURT:  It's asserted as priority?

5              MS. GREECHER:  It is.  It's asserted basically 3

6    times the amount of the investment property, I believe it's 463

7    -- I have the number, hold on -- it's asserted as a $451,723

8    secured claim, and a $903,446 unsecured priority claim.  So it

9    is --

10             THE COURT:  Well let's see, can we do this, and I'm

11   thinking aloud.  Can we allow the claim as a general unsecured

12   claim in the amount of $1 to preserve whatever nominal

13   defendant rights the plaintiff would have to assert -- what I'm

14   worried about if I disallow the claim in full, I may damage the

15   ability of the claimant to proceed against third parties by

16   somehow expunging the link, or potential link in their lawsuit

17   that requires the debtor to be a nominal defendant.

18             But, obviously, I looked generally at the papers, and

19   I think it's pretty clear that -- is that -- Ms. Rush has

20   arrived.  I think it's pretty clear that there would be no

21   substantive claim against the debtors.

22             But I certainly understand the concept of wanting to

23   proceed against third parties.  And my concern, as I said, is

24   to somehow erase that claim, allowing the claim, you know, in a

25   nominal amount, should not prejudice that lawsuit, but at the

1    same time not prejudice the debtors by allowing a claim in a

2    large amount.

3            MS. GREECHER:  Your Honor, the debtors would be

4    agreeable to an allowed claim, general unsecured, for a dollar.

5            THE COURT:  Okay.  Ms. Rush, can you approach the

6    podium?  Sorry.  I know you're just getting organized. Good

7    morning.

8            MS. RUSH:  I'm sorry.  I apologize.

9            THE COURT:  That's all right.  I know you're coming

10   from Virginia all these times, if I remember correctly.

11           MS. RUSH:  Maryland.

12           THE COURT:  Maryland.  Where we are on the claim is,

13   we're dealing with Ms. Dobben's claim.  Mr. Pettibone's on the

14   telephone.

15           MS. RUSH:  Okay.

16           THE COURT:  And I understand that the current plan is

17   to file an amended complaint in --

18           MS. RUSH:  California.

19           THE COURT:  California.  Thank you.  Asserting claims

20   or -- against third parties.  And continuing to have the debtor

21   or debtors exist as a nominal defendant only.

22           MS. RUSH:  Correct.

23           THE COURT:  I've looked at the papers, and I think

24   we've discussed this in the past, about whatever claim Ms.

25   Dobben may or may not have against the debtors.  And I tend to

1    side with the debtors, that there doesn't appear to be a claim

2    here against them.

3           Obviously, there very well may be one against these

4    third party brokers, etcetera.

5           MS. RUSH:  Well I have -- I would like to speak to

6    that point.

7           THE COURT:  All right.  Well, hang on.  So my

8    proposal, negotiating here between the parties on the Bench,

9    was to reduce the claim to a general unsecured claim in a

10   nominal amount, say a dollar.

11          Because I don't want disallowance of this claim in

12   this Court to prejudice somehow the ability to go forward

13   against third parties, by eliminating the nominal defendant

14   liability, if you will, or potential liability.

15          That's where I was coming from on trying to resolve

16   the merits of the claim against potential adverse legal effects

17   against Ms. Dobben.

18          MS. RUSH:  Okay.

19          THE COURT:  So now I understand you're an attorney in

20   fact for Ms. Dobben.  You're not an attorney at law, of course.

21          MS. RUSH:  Right.

22          THE COURT:  So I would allow you to make factual

23   statements about the complaint.

24          MS. RUSH:  Okay.

25          THE COURT:  And -- but not legal argument.  All

1    right.

2            MS. RUSH:  That's fine.

3            THE COURT:  And I am very -- I apologize to you and

4    Ms. Dobben, but I'm extremely tight on time today.  So go

5    forward with whatever statement you have.

6            MS. RUSH:  Okay.  It sounds like you're questioning

7    whether her claim against American Home is valid, and buying

8    into their argument that American home was not the party that

9    created this transaction, or participated in the fraud in this

10   transaction.

11           But in reality, American Home manages these brokers

12   through their American Brokers conduit.  They do due diligence

13   on the brokers.  They had documents that were the original good

14   faith estimates, all the disclosures, and then they had the

15   final documents, which showed that there was a problem and a

16   discrepancy in the signatures that they should have seen.

17           When they create these loans, the broker goes into

18   their system with Sentinel, and they put all this information

19   in, and if the loan's acceptable, and this is very early on,

20   they assign the loan actually to American Home.

21           I have an assignment of interest on my loan.  So

22   American Home immediately takes possession of the loan.  They

23   do all the underwriting, they do a set of good faith estimates.

24   In this case, they also securitize the loan.  They controlled

25   the loan, really, from the inception, from the time this

1    started.

2          They were the depositor and the securitizer.  And

3    they held securities in this trust.  So they were involved in

4    every part of this loan, including the servicing.  And during

5    the bankruptcy, when there were many pleas that were made to

6    try to help Ms. Dobben and unwind this transaction, they were

7    all completely ignored.  And, again, that was the debtor

8    entity.

9          THE COURT:  Okay.  I hear you on that, obviously.

10   But what I'm struggling with is, my understanding, Mr.

11   Pettibone, maybe you can speak to this, is that, at this point,

12   what's being asserted in California only names the debtors as

13   nominal defendants and does not seek affirmative relief or

14   assert a damages claim against the debtors.  Is that correct?

15         MR. PETTIBONE:  Douglas Pettibone.  That's correct,

16   Your Honor.

17         THE COURT:  Well --

18         MS. RUSH:  That's because we can't, because she could

19   get relief from stay.  So she has no choice but to just name

20   them nominally.

21         THE COURT:  And preserve her right to assert a proof

22   of claim in this case.

23         MS. RUSH:  Correct.

24         THE COURT:  Well we have two choices today, then.  We

25   can either go forward on an evidentiary hearing, which I can't

1    do today, and I would need to set a special date with plenty of

2    time to go through the evidence and the legal argument against

3    the substantive claim against the debtors.

4            Or I can take the matter under advisement based

5    merely on -- not merely on, but based on the documents and the

6    pleadings and the complaint and the -- I would like the amended

7    complaint as well, to figure out whether there's a claim or

8    not.

9            And that really comes down to whether the parties are

10    comfortable resting on the record in the -- that is before me

11    now.

12            MS. RUSH:  I'm not comfortable.  I mean, we asked the

13    debtor to extend the time for this hearing, so that they could

14    -- Doug could prepare the amended complaint.

15            And I have additional evidence that ties the debtor

16    and the debtor parties to the origination issue.

17            THE COURT:  Ms. Greecher?

18            MS. GREECHER:  Your Honor, to the extent that you

19    would want to see the amended complaint, obviously we would

20    like a opportunity to review that and make comments on it.

21            Our goal for today, if for nothing else, and this was

22    offered to Ms. Dobben and was rejected, was that we reclassify

23    the claim.  At no point in any of the documentation do they

24    have asserted a valid basis for their secured or priority

25    claim.  So we would like to take care of that.

1          And to the extent that you wish to have an

2     evidentiary hearing on the matter, we would ask that it be

3     reclassified first.

4          With respect to the comments that Ms. Rush has made,

5     the, you know, quite frankly, what she's arguing is that we

6     failed to engage in loss mitigation during the bankruptcy.

7          THE COURT:  Well that's one of her assertions.

8          MS. GREECHER:  That isn't an -- an affirmative

9     defense, which would not be a legal cause of action.  And then

10    the complaint does not provide that we have any connection with

11    Mr. Downey at the time.  And in fact the connection is with --

12    for Mr. Downey is with Ms. Yamamura, Ms. Dobben's daughter.

13         We're happy to go to an evidentiary hearing, if

14    necessary.

15         THE COURT:  I think -- all right.  Well obviously --

16    well I think there's enough meat on the bone of the assertions

17    to satisfy at least -- well to satisfy the prima facie validity

18    of the claim, which is a low standard.

19         So at that point, given the objection -- look, it

20    sounds like an evidentiary hearing.  It sounds like an all day

21    evidentiary hearing.  So let's pick a date for an all day

22    evidentiary hearing.

23         And I understand you don't have a lot of days left at

24    the office.

25         MS. GREECHER:  That's correct.  I would have to

1   confer with --

2           THE COURT:  You have an extensive firm with lots of

3   people in it.  How long are they giving you?

4           MS. GREECHER:  I'm taking six months, actually.

5           THE COURT:  Good for you.  Well I assume that's too

6   long for the claimants.

7                           (Pause)

8           THE COURT:  I can give you all day on either November

9   second or November third, that's a Monday and a Tuesday.

10  And --

11          MS. RUSH:  Your Honor, I will be out of town the

12  first week in November.  I'm sorry.

13          MS. GREECHER:  They're chuckling, because that's my

14  due date.  Your Honor, to the -- I'm not sure exactly what

15  additional facts Ms. Rush has, and how long it's going to take

16  for the amended complaint to be filed.

17          I'm just concerned that that may be too short of a

18  time, to the extent that we need to do depositions.

19          MS. RUSH:  I would agree with that.

20                          (Pause)

21          THE COURT:  I apologize.  I have to check 3

22  calendars, to make sure I don't get in trouble with -- well we

23  had previously had an omnibus hearing in this case scheduled

24  for December 9th that I just moved.  But I can give you that

25  for an evidentiary hearing in this matter, and I can give you

1  all day.

2          MS. GREECHER:  I'm sorry, Your Honor, I --

3          THE COURT:  December 9th.  Which was the day we

4  previous -- we just moved, I think, the omnibus hearing from.

5  But I had all day that day, so I can give you that day as an

6  evidentiary hearing, it's a Wednesday.

7          MS. GREECHER:  Your Honor, I think that will work.

8  I'm getting a lot of comments from the peanut gallery

9  requesting that we -- our main concern right now is, obviously,

10  that it's secured, and that it's listed as priority.  We don't

11  believe that it is either of those.  And, obviously, it's been

12  8 months since the plan was confirmed, but is not effective,

13  and one of the issues --

14          THE COURT:  Well is this claim standing between the

15  plan being effective?

16          MS. GREECHER:  It's not.  However, there is the bank

17  sale, which, as Government goes, could be any day now.  Which

18  is one of the major issues that we're contending with.  What

19  we'd like to do is, to the extent that this does go forward as

20  an evidentiary matter, that we try to either discuss the

21  reclassification today, or to have a separate hearing on

22  reclassification.

23          THE COURT:  No, I don't want to bifurcate.  And I'm

24  not prepared, given the facts in front of me, to rule on this

25  issue today, given the factual issues.

 1          So, no.

 2          MS. GREECHER:  Thank you, Your Honor.

 3          THE COURT:  So I want it all at once.

 4          MS. GREECHER:  Okay.

 5          THE COURT:  December 9th, 9:00.  I'll give you all

 6     day.  I can only give you one day.

 7          MS. RUSH:  Your Honor, we will be seeking some

 8     discovery, and I hope that there will be cooperation and --

 9          THE COURT:  I'm sure there will be.  It's a -- it's a

10     contested matter, you're entitled to discovery.  They're

11     entitled to discovery.  If you have any issues with the

12     breadth, scope, burden, I'm here.  Call me.  We'll deal with

13     it.

14          You don't need to file a motion, get me on the phone.

15          MS. GREECHER:  The only other thing I would ask is

16     that we have a deadline for the amended complaint, to the

17     extent that that is going to be used --

18          THE COURT:  Mr. Pettibone, do you have a concept on

19     when you're going to file that?

20          MR. PETTIBONE:  Well it's in the works right now if

21     it's -- I'm sure by the first -- I'm sorry, Your Honor, I've

22     got a cold out here, and I'm a little bit scratchy -- but if I

23     can file it by next week.

24          THE COURT:  All right.  Obviously, if something

25     arises that makes that untenable, let me know.  But, otherwise,

1    if you could commit to file it by Friday, October 23rd, and

2    provide copy to counsel, that would be helpful.

3                MR. PETTIBONE:  I can commit to that, Your Honor.

4                THE COURT:  Very good.

5                MS. GREECHER:  And then we would like to do a

6    scheduling order to address some of the discovery issues.

7    We'll try and work with Mr. Pettibone and Ms. Dobben, Ms. Rush,

8    to the extent necessary, to handle that.

9                And if we need competing orders, we'll submit them

10   under certification of counsel.

11               THE COURT:  All right.  You can either do that, or

12   get me on the phone.

13               MS. GREECHER:  Okay.

14               THE COURT:  However you want to proceed.

15               MS. GREECHER:  Thank you, Your Honor.

16               THE COURT:  You're welcome.  Anything further for

17   today on this issue?

18               MR. PETTIBONE:  No, sir.  Thank you.

19               THE COURT:  Very good.  People on the phone can hang

20   up, if they wish.  Thank you for your attention.

21               MS. GREECHER:  Your Honor, that was one of the issues

22   with respect to the forty-second omnibus objection.  We would

23   still wish to go forward with the remaining claims.

24               And I think I can, quite frankly, interlineate the

25   current order that I have to --

1    THE COURT:  Are there any other outstanding issues,

2    or anyone wish to be heard?  All right.  I'll grant the forty-

3    second objection.  If you can mark it up at counsel table, I'll

4    sign it.

5    MS. GREECHER:  Thank you.

6    THE COURT:  Next.

7    MR. BEACH:  Your Honor, for the record, Sean Beach,

8    on behalf of the debtors.  One clarification on the effective

9    date issue, just so you understand.  We still are waiting for

10   the regulatory approvals for the closing of the bank sale.  If

11   that happens, we believe we'll be able to go effective very

12   quickly.  We are also looking to be able to go effective, if we

13   can complete certain other settlements and other transactions,

14   but it may be close with respect to those, so that's why we're

15   trying to deal with these claims.

16   THE COURT:  Well I understand, and it's been, you

17   know, obviously, 8 months and it's -- I know you're not dilly-

18   dallying.  There's been very -- a number, obviously, 42, and a

19   lot of claims have been taken care of.

20   MR. BEACH:  Yeah.

21   THE COURT:  I don't think another four weeks is going

22   to be that bad.

23   MR. BEACH:  I'm not here to argue that point, I just

24   wanted to make it clear to Your Honor that it wasn't -- it is

25   for a reason that we --

1          THE COURT:  I understand,  Thank you.

2          MR. BEACH:  Your Honor, the next item on the agenda

3     was the debtors' motion to seek authorization to abandon and

4     destroy certain documents.

5          We were able to resolve in principle most of the

6     objections, except for the objection from the borrower's

7     committee.  And as a result of an additional witness we would

8     need for that, we adjourned that to the November 13th hearing.

9          Now the borrower's committee has indicated to us that

10    they intend to take discovery and depositions, so that may

11    impact the time for that hearing as well.  Although, given the

12    potential cost of that, we're weighing the cost benefit of

13    whether or not it's even worth pursuing that motion at this

14    point.

15         So I don't -- standing here today, I don't know if we

16    will in fact go froward with that motion.  But it is adjourned

17    for today's purposes.

18         THE COURT:  Okay.  That's fine.  November 13th.  And

19    like I said, we'll give you the balance of the day.

20         MR. BEACH:  Thank you, Your Honor.  The next item on

21    the agenda is the interim fee request.  As with our last

22    interim fee request, we did discuss with both the fee examiner

23    and indicated to the Court that we wish to go forward with the

24    interim fee applications of professionals, subject to the fee

25    examiner being able to come back on a final fee application

1    stage and submit a report to Your Honor.

2         Looking back retroactively at all those, given the

3    fact that the fee examiner starting from essentially two years

4    ago and looking through fee applications.

5         So with that, Your Honor, there are no objections to

6    any of the fee applications, except for, as Your Honor is

7    aware, the borrower committee fee cap issue, and then the

8    report from the examiner relating to the professionals of the

9    borrower's committee.

10        So, first, I would ask that Your Honor -- unless Your

11   Honor has any questions, I have an order on the balance of the

12   fee application.  And then next would ask that you consider the

13   arguments of counsel in connection with the borrower's

14   committee.

15        THE COURT:  All right.  Anyone wish to be heard on

16   anything other than the borrower committee issue?  I hear none.

17   I'll sign the order.

18        MR. BEACH:  May I approach?

19        THE COURT:  Yes.

20        MR. BEACH:  Your Honor, I will cede the podium to the

21   Borrowers Committee to address their applications, and then I

22   believe the committee and the debtors and the fee examiner will

23   want to make argument.

24        THE COURT:  All right.  Mr. McCauley.

25        MR. MCCAULEY:  Good morning, Your Honor, Thomas

1    McCauley.  We filed papers with respect to the fee examiners

2    report.  The Court, hopefully, has had a chance to take a look

3    at it.  I think since the -- I mean, the fee cap issue was

4    something that the Court wanted to look at only after reviewing

5    the fee examiner's report.

6          I think it might make sense to have the fee examiner

7    report to the Court, at this point, and we could simply take it

8    from there.

9          THE COURT:  Okay.  Mr. Renick?  There you are.

10         MR. RENICK:  Good morning, Your Honor.  M.J. Renick

11   of Nachman, Hays, Brownstein, I'm the fee examiner in this

12   matter.

13         With me in Court, Your Honor, is Angela Phillips of

14   our Wilmington office, who worked and did most of the analysis

15   of the Borrowers Committee co-counsel's fee application.  So I

16   might ask the Court to allow me to talk to Ms. Philips from

17   time-to-time, if necessary.

18         THE COURT:  Okay.

19         MR. RENICK:  Your Honor, the -- under the terms of

20   the supplemental order concerning order granting motion for an

21   order appointing the official committee for the Borrowers

22   Committee, Your Honor set the scope of the Borrowers Committee

23   to, one, matters relating to the Chapter 11 plan and disclosure

24   statement.

25         And, two, global stay relief on behalf of all

1    borrowers in connection with foreclosure actions.  And then a

2    third item, which is really not at issue.

3          The total fees requested in this matter by the

4    Borrowers Committee is roughly $55,000.  As Your Honor's aware,

5    there's a fee cap, which I am not going to discuss, other than

6    to -- I'm not going to comment on its appropriateness or not,

7    other than to say that, at the time the -- that the times that

8    the co-counsel for the Borrowers Committee submitted an

9    application to raise the fee cap to $400,000, the total fees

10   and expenses at that point were roughly $238,000.

11         My issue with the Borrowers Committee co-counsel,

12   relates to mostly the allocation of time.  Considering that

13   there was a fee cap, I felt that the amount of time spent and

14   how they allocated the time and what they did, based upon the

15   scope set forth in Your Honor's order, was somewhat above and

16   beyond what should have been done.

17         I don't think it was appropriate.  I think that they

18   -- they might have expanded or gone out into the branches of

19   the scope, the skinny branches of the scope in what they did.

20         I was not present, and I was not involved in the case

21   from the beginning, Your Honor, so -- nor was I in Court.  Your

22   Honor was, so he -- so you can -- you're obviously the Judge,

23   but you can decide whether or not any of the matters that they

24   did address were appropriate and the time involved.

25         But I would like to point out certain things.  For

1    one, the total time devoted to reading the plan, researching

2    related items, revising the plan, preparing a term sheet.

3    There was a total of 218 hours.  A little over 218 hours.

4          There was roughly $89,900 spent on that.  There was

5    roughly twenty-one thousand seven hundred dollars -- 800

6    dollars spent on retention matters.

7          There was research and retention of their expert of

8    182 hours, which totaled $74,000.  Which exceeded the amount of

9    the expert's time and fees.

10          And the addressing the objections to the expert

11    witness of 107 hours, or $43,000.

12          In addition, there was a strategy that related to the

13    Borrowers Committee preparation and attending calls or

14    meetings, 176 hours, or $82,000.

15          And lastly, prepping and attending the confirmation

16    hearing, which I know there was a lot going on at that hearing,

17    was 235 hours, or roughly $80,900.

18          In total, that appears to be excessive.  But I was

19    not present.  I do not know all the circumstances.  It is my

20    position that I am to inform the Court of what my observations

21    were.  Thank you, Your Honor.

22          THE COURT:  You're welcome.  Mr. McCauley?

23          MR. MCCAULEY:  Your Honor, in our reply we've

24    addressed the -- some of the findings that the fee examiner

25    made in his report.  I think the fee examiner was somewhat

1   inhibited in reviewing our applications, because there was

2   nothing for us to supply him with, our applications in some

3   sort of, you know, Excel type of format, something that's

4   searchable.

5        And so the fee examiner had to kind of, you know,

6   take our applications and kind of go through and characterize

7   what was -- what belonged where and whatnot.

8        And, you know, unfortunately, that didn't, you know,

9   there were some issues with that.  I think we tried to show --

10  I think we tried to show that what we did was, you know, I

11  mean, Steve Weisbrod's firm and my firm, we represented the

12  debtors -- this was sort of on an equal footing.

13       You know, we took some issues, they took some issues.

14  We tried to divvy it up as best we can between the two firms.

15  And we tried not to duplicate work.  But to a certain extent,

16  you know, we were walking on sort of newer ground.

17       And, you know, when we were -- when this committee

18  was appointed back on October 21st, you know, we were in the

19  case, we had filed the motion to retain the committee, but we

20  knew enough to be dangerous.

21       Okay.  But we didn't really know the case.  We had to

22  get up to speed with the case.  We had to understand what sorts

23  of claims that the borrowers would have.  How the bankruptcy

24  plan and the confirmation order would effect those claims.

25       And what sort of relief that the borrowers would get

1    both monetary and non-monetary through the plan, in order to

2    effectuate and get the best result for borrowers.

3          That's what we tried to do.  We tried to do it in an

4    efficient way.  Which -- and this sort of goes toward the fee

5    cap.  We tried to do it in an efficient way, we were under a

6    fee cap that was put forth by the Court, but we were also

7    viewed -- we also had a view that, (a) we were going to be able

8    to work efficiently with the other side, which happened to a

9    certain extent, but, unfortunately, that tailed off.

10         And, secondly, we were under the impression that our

11   -- we were basically going to be in place for about 60 days.

12   And it turned out that this got extended into January, and then

13   the middle of February.

14         And so the long and the short of it is, we don't

15   think we -- we think we managed the case as best as we could

16   under the circumstances, with what we knew at the time and what

17   the Court's directives were.  And, you know, and as far as the

18   -- and with respect to the fee cap, we think that the, you

19   know, given the ground that we covered, we were reasonable

20   under the circumstances.

21         But I'm happy to entertain questions that the Court

22   would have.

23         THE COURT:  But the cap is currently still at the

24   300,000?

25         MR. MCCAULEY:  The cap is at 250.  The Court deferred

1    action on our application made on January 20th of this year to

2    extend it to 400, pending review of the fee applications and

3    then, ultimately, review of what the fee examiner found.

4                THE COURT:  Okay.  Thank you.

5                MR. WEISBROD:  Your Honor, Stephen Weisbrod for

6    Gilbert, LLP.  I join in what Mr. McCauley said.  I see us as

7    dealing with two fundamentally different critiques.  One by the

8    fee examiner, and one by the debtors and committee.

9                The fee examiner, you may note on on the last page of

10   his report to Your Honor, concluded that, in light of what he

11   regarded as some duplication, and the word he used here was,

12   going to the skinny branches, our fees should be cut 10 to 15

13   percent.

14               That's quite a different conclusion, because he did

15   not address the appropriateness of the fee cap from what the

16   committee and UCC say.

17               My response, although they've approached the question

18   in two different ways, my response is very similar to both,

19   which is, I had a client whom I was required and my colleagues

20   at Gilbert were required to represent zealously.  And our chair

21   is an extraordinarily knowledgeable person in this area, Paula

22   Rush.

23               Who would present to us a variety of issues that we

24   would have to look at.  That was our duty.  More often than

25   not, we did go all the way and make an objection.  Sometimes we

1    didn't, but it's required, it's not just appropriate, it's

2    required that we look at the skinny branches, when the client

3    asks you reasonably to look at skinny branches.

4           We had a duty to zealously represent the client, and

5    that's what we did.  We actually stayed within the authority of

6    the Court.  There's been some talk that maybe we exceeded it,

7    but everything we did, with the two exceptions I noted in my

8    footnote, which are arguable, was relating to negotiation of

9    plan terms, or objecting to the plan or disclosure statement.

10          I also step back from this, I mean, and as somebody

11   who reviews bills in a lot of different cases, and I look at

12   everything we did here, there were only two partner level

13   lawyers on our side.  Tom and myself.  Tom McCauley and myself.

14          By contrast, there were six partner level lawyers

15   fighting us.  Three from Young, Conaway and three from Hahn &

16   Hessen.  And a lot of other lawyers.  Their fees doing the

17   opposite side of the case from us, are actually higher than

18   ours.

19          And as someone who reviews bills, I also note that,

20   our total bills for this period are actually lower than what my

21   firm would typically charge for a small, three-day trial over

22   this period, with lots of briefs and motion in limine.

23          So while the fee examiner may regard this as

24   excessive, and while the debtors and committee would like to

25   hold us to the original fee cap, I respectfully suggest that

1    that would not be the appropriate step here.

2          We very efficiently, but zealously, represented our

3    client, as we were required to do.  And I would ask you to pay

4    the full fee amount as reduced.

5          THE COURT:  Okay.  Yes.  Thank you.

6          I'll hear from the debtor, Mr. Beach.

7          MR. BEACH:  Your Honor, for the record, Sean Beach on

8    behalf of the debtors.

9          Your Honor, I will try to be brief, but I do have to

10   go back to the initial motion for request for an appoint and

11   some of the argument that was made by counsel in connection

12   with that motion, where they assured the Court that the cost of

13   the Borrowers Committee professionals should be minimal and

14   should have little overlap with the committee.

15         That the Borrowers Committee would focus narrowly on

16   issues relevant to borrowers and would not be looking to touch

17   on issues that the Creditors Committee would address and that

18   the suggestion that the Borrowers Committee's role should be

19   narrow, a suggest I believe made by the Court, is one that the

20   Borrowers Committee accepts and thinks it would be appropriate

21   to go forward on that basis.

22         On those assurances to the Court, Your Honor, on

23   approximately October 22nd, I believe Your Honor made comments

24   that you can fashion a remedy that would minimize the prejudice

25   to the debtors' estate, by limiting both the scope of the

1    retention and including a fee cap.

2         And that's precisely what Your Honor did on October

3    22nd.  You set a $250,000 fee cap, and you narrowed the scope

4    of the retention to borrower issues related to the plan and

5    disclosure statement.  And I would submit, Your Honor, that the

6    intent of that was for those borrower issues to not overlap

7    with what general creditor issues would relate to in the plan

8    and disclosure statement.

9         And one other issue was for global stay relief.  And

10   that was addressed in the plan in connection with foreclosures

11   on borrowers.  And that's it, Your Honor.

12        Nevertheless, the order -- your order -- despite the

13   fact that they seek to ask you to completely ignore that order

14   today, Your Honor, the order has to mean something.  The cap

15   has to mean something.  The scope has to mean something.  And,

16   Your Honor, you know I believe it should be respected.

17        We first heard of the fact that they had -- that they

18   were even close to the $250,000 cap, eight days prior to the

19   scheduled confirmation hearing.

20        You've heard argument from counsel suggesting that

21   they, you know, thought that this was a 60-day process.  I'm

22   not sure how anyone thought it was a 60-day process, when they

23   were retained in October, the disclosure statement was set for

24   the end of November, November 25th, to be exact.  There's no

25   way we could have had a confirmation hearing in December.  So

1    clearly it was going to be January.

2         And I think at that October 22nd hearing, if I recall

3    correctly, Your Honor set January 28th as the confirmation

4    date.  It was pushed only because we got an expert retained

5    within days prior to that confirmation hearing.  And it was

6    pushed only -- less than 2 weeks out, and the three day trial

7    at that time.

8         Your Honor, both the scope and the cap, I believe,

9    were ignored.  There were extremely broad objections to both

10   the disclosure statement and the plan.  We, at the doorsteps on

11   the disclosure hearing, we were able to resolve those issues.

12   Unfortunately, with the plan, we were not, despite the fact

13   that we made major changes to the plan to address the concerns

14   that had been raised by the Borrowers Committee.

15        We believe the discovery requests were very broad and

16   exceeded the scope of the retention to deal narrowly with

17   borrower issues and not overlap with committee issues.

18        Almost $600,000 in fees and expenses are before us

19   today.  But, Your Honor, one of the important things I have to

20   point out is, we haven't seen a fee application for the last

21   eight months.  I have no idea what has been incurred over these

22   last 8 months.  So this $600,000 number may be woefully short.

23        What I do understand is that there was an

24   investigation requested by this committee with respect to

25   avoidance actions.  I don't know what time counsel spent on

1  that.  But there's a footnote indicating that some time was

2  spent on that.  And, Your Honor, I, unfortunately, didn't have

3  time to look back at the full transcript before this hearing,

4  but I believe we specifically addressed that issue, and Your

5  Honor indicated that that was squarely within the Creditors

6  Committee duties to deal with avoidance actions.

7          And, in addition to that, as Your Honor heard

8  earlier, the Borrowers Committee has objected to the document

9  destruction motion, and intends to seek discovery in connection

10  with that.

11          So, Your Honor, again, there's 8 months that have

12  passed where there's no fee application.  We've asked 8 months

13  ago that the Borrowers Committee file a motion to voluntarily

14  disband.  They chose not to do that.  And, Your Honor, it's

15  unclear to us what else has been going on over this period of

16  time.

17          THE COURT:  Okay.

18          MR. BEACH:  Unless Your Honor has any additional

19  questions for me, I would just ask that you do respect the

20  order that Your Honor issued last October, because it is

21  important that that order be adhered to.  And I think both the

22  scope and the cap were essentially ignored, or they're being

23  asked to be ignored.

24          THE COURT:  All right.  Thank you.

25          MR. RENICK:  Your Honor, M.J. Renick, fee examiner,

1    once again.  Just a clarification.  Mr. McCauley indicated or

2    Mr. Weisbrod rather indicated that I recommended a 10 to 15

3    percent reduction.  That was in a draft that was sent to them

4    and was not the final report issued to the Court.

5              THE COURT:  Okay.  Thank you.

6              MR. RENICK:  Thank you.

7              MR. SCHNITZER:  Good morning, Your Honor.  Edward

8    Schnitzer from Hahn & Hessen on behalf of the Committee.  Your

9    Honor, we join in the comments made by Mr. Beach.  And I would

10   just be brief.  I think, Your Honor, the difference between the

11   debtor and committee position, and the Borrowers Committee

12   position, is their position appears to be they did their work,

13   they should get paid for it, because they did their work.

14             We're not disagreeing with them that they did the

15   work they've stated in their fee application.  It's simply the

16   question of what they were supposed to be doing under the

17   appointment order.

18             The order had three provisions.  It limited their

19   scope.  It didn't authorize them to retain any professionals

20   other than counsel.  And had a cap of 250.

21             That was specifically what the order had.  Those

22   three provisions were all violated.  Your Honor, we think

23   they're taking a different view of the order, that it's -- and

24   I believe they stated this in their papers, that they believe

25   they complied with the intent of the order.

1       We think the question is simply the order itself.

2   Not the intent of the order, what the order says.  Your order

3   was clear, we think it's unambiguous.  We don't think they

4   complied with it.

5       Lastly, Your Honor, I would just mention that, even

6   with respect to their point of they initially thought it was 60

7   days, they didn't realize this would be this contested, in

8   January -- on January 20th, when they made their request to

9   even increase the cap to 400, at that point, they're just a few

10  days before the confirmation hearing.

11      Matters have been contested, and very much so, that

12  they, I think, clearly know at that point how contested it's

13  going to be.  And even at that point, they only asked for 400,

14  which now before you are applications seeking, I believe, 160

15  more than that, Your Honor.

16      So I think you need to consider that when you look at

17  their application.  Specifically what the order said, and even

18  what their own, you know, more recent, you know, request had

19  been.

20      Thank you, Your Honor.

21      THE COURT:  You're welcome.  What I'm hearing, and I

22  agree, is that the nub of the issue is the fee cap.  And that

23  there -- and the scope related to the fee cap and the retention

24  order.

25      And that there really isn't a fight, except maybe on

1    the edges of it, as to the integrity of the fee application,

2    other than to say, it may or may -- well, other than to say,

3    one side says it was above and beyond the scope of the

4    retention and the fee application -- excuse me, the scope of

5    the retention and the cap.

6          And what I'm hearing is, that's what I really have to

7    decide, and subject to, again, the edges, if I decide that the

8    scope and what the Committee did was appropriate and within the

9    order, and I also decide that the fee cap should be raised some

10   amount, that, at that point, the allowance of the fees sort of

11   becomes a non-issue.

12         So what I think I really have to -- and I'm going to

13   take the matter under advisement, because it's important, and I

14   want to more carefully review all the papers.  But what I'm

15   hearing is, what I really have to decide is whether the

16   Committee operated within its scope.

17         Whether to the extent they didn't, it was nonetheless

18   appropriate.  And what I should -- whether I should move the

19   fee cap, and if so, how high.  That's really what I see the

20   issues for.  Mr. McCauley, briefly, because --

21              MR. MCCAULEY:  Yes.

22              THE COURT:  -- CCS is waiting in the wings.

23              MR. MCCAULEY:  Your Honor, I'd like to address this

24   scope consideration, because it's really something that's

25   really just arisen here at this hearing.

1          The scope --

2          THE COURT:  I don't know about that.

3          MR. MCCAULEY:  I mean, it's been in the -- it's

4    obviously something that was set forth in the order back in

5    October.  But if you look at the papers, there's really no

6    discussion about scope.

7          And -- but let's talk about scope, since we're here.

8    One of the provisions -- one of the objections that the debtors

9    did make about scope, which was with respect to this SCC

10   production, all right.

11         That was an idea that we came up with to say, look,

12   we've got --

13         THE COURT:  Their argument was to save money.  You

14   wanted to piggyback -- my memory, you wanted to piggyback on

15   something that had already happened.

16         MR. MCCAULEY:  You've got a production.  It's already

17   there.

18         THE COURT:  Right.

19         MR. MCCAULEY:  The debtors don't have time to go

20   pulling documents.  We're going to go fuss about, you know,

21   what we can get, what we can't get.  Let's just take a look at

22   it.

23         You know, it saves money, saves time.  Well, I mean,

24   I don't see how that's outside the scope.  It's simply

25   discovery in connection with the plan.  I mean -- so and as we

1    turn -- as it turned out, it was relevant to the plan as I

2    showed in my reply.

3          I mean, there were documents that were relevant.  And

4    that was simply what they volunteered to give us at the end of

5    the day.  I mean, Mr. Weisbrod pointed out, I mean, there were

6    different theories that our Committee gave us that we had to

7    track down.

8          I mean, I --

9          THE COURT:  Well --

10          MR. MCCAULEY:  -- now, obviously, you don't blindly

11    follow everything that your client tells you, if you, as a

12    reasonable lawyer say, you know, this isn't going to get you

13    anywhere from the get-go.

14          But there were certain issues that did need to be

15    tracked down.

16          THE COURT:  Yes.  There is a risk when you take a

17    retention on that is subject to a cap, there's a risk as a

18    professional that your client may ask you to do enough things

19    that that cap may get blown.

20          That's a risk the professionals took on.  Not, you

21    know, not any different really than -- somewhat different, but

22    similar to, if you take something on, on a contingency.  You

23    know, you have to build that into your head about whether you

24    should accept the representation or not.

25          MR. MCCAULEY:  That's true Your --

1      THE COURT:  Now things can arise in the connection

2  with a retention, subject to a cap, within the scope of the

3  retention, that nonetheless need to be pursued and end up

4  costing more, for legitimate reasons.

5      And that would certainly be a reason to lift the cap.

6  Now, and I think your comment to that is, that happened.

7      MR. MCCAULEY:  Well, Your Honor, also, I mean -- I

8  mean, going back to the cap, I mean, Your Honor has said, you

9  know, that you picked that number out of the air, okay.

10      THE COURT:  That's true.

11      MR. MCCAULEY:  I mean, you know, we didn't know what

12  -- we all stood here on October 22nd, and we didn't know

13  exactly how this thing was going to come out.  And, I mean --

14  we -- when we were standing here before the Court, you set the

15  disclosure statement hearing for November 25th, also on that

16  day.

17      And I don't think anyone in this courtroom thought

18  that confirmation was going to go past the end of the year.

19  Now once the disclosure statement actually came to pass and we

20  were here in front of the Court in November, certainly the

21  Court signed the -- procedures order that set the hearing for

22  January 28th.

23      But at the time in October, it was, everyone here

24  thought that confirmation was going to happen by year end.  We

25  obviously had our doubts.  Because of our issues.  But --

1          THE COURT:  Okay.

2          MR. MCCAULEY:  -- I mean, there was a time aspect

3    with respect to this cap, is what I'm trying to say.  And as

4    Your Honor knows as a lawyer, you know, the longer something --

5    the longer it takes to get to the end of an issue, the more

6    time accrues.

7          THE COURT:  Yes.

8          MR. MCCAULEY:  I want to point out the fee examiner's

9    comment that we were within the cap when we made the

10   application to increase the cap.  So we didn't just blow

11   through the money and then we just --

12         THE COURT:  Well I think he said you were over it.

13   You were at 283 --

14         MR. MCCAULEY:  No.  No.  We were at 238, and the cap

15   was 250.

16         THE COURT:  Okay.  So he probably just interposed the

17   numbers, 283, 238.

18         MR. MCCAULEY:  I don't know.  But if you look at his

19   report --

20         THE COURT:  Okay.

21         MR. MCCAULEY:  -- it's 238 through January 19th.  So

22   we were within the cap at the time that we made the

23   application, and we were, you know, it was toward the

24   middle/end of the of the month, so you're never quite sure, but

25   we knew we were getting close, and that's why we wanted to make

1    that application.

2              THE COURT:  All right.

3              MR. MCCAULEY:  I don't think I have anything further.

4              THE COURT:  Thank you.

5              MR. MCCAULEY:  Thank you.

6              THE COURT:  Any last words?  Mr. Beach.  Quickly.

7              MR. BEACH:  I can't help myself, Your Honor.  I'll be

8    brief.  I just wanted to indicate that we did address scope in

9    our very brief response to the application.  Our objection to

10   the application, and in particular, we indicated that we don't

11   believe that objections made to the plan in connection with the

12   EPD breach protocol, the rationale for the Borrowers Committee

13   objecting to that was that it would, you know, that they were

14   inflated EPD and breach numbers given to these warehouse

15   lenders.

16             But that was an issue that the Creditors Committee

17   was keenly aware of, and that was developed with the Creditors

18   Committee.

19             I would submit that that's within the scope of the

20   Creditors Committee.  The stipulated asset allocation, Your

21   Honor, was also something I believe that was in the scope of

22   the Creditors Committee.  The Borrowers Committee argued that

23   HM Corp. would be, you know, effected negatively by the

24   stipulated asset allocation, and then I guess by some way

25   impact the borrowers that were within HM Corp.'s estate.  And

1   then, finally, they attacked the best interest test in

2   connection with the plan, as well, saying that HM Corp. would

3   have been better in a Chapter 7.

4           Again, I think the Creditors Committee is better

5   suited to those issues.  Your Honor, I would ask, if you're

6   taking this under advisement, I don't know whether we'll want

7   any supplemental briefing, but we filed this objection in May.

8   And there are issues, as I raised to Your Honor, and if you'll

9   accept those arguments without any additional supplemental

10  briefing, that's fine with me.

11          But there has been 8 months that have passed, we have

12  no idea what's been incurred in connection with, you know, the

13  Borrower Committee fees in that time period, and I think that's

14  important to note, as well.

15          THE COURT:  Okay.

16          MR. BEACH:  Thank you, Your Honor.

17          THE COURT:  Last word, Mr. McCauley.

18          MR. MCCAULEY:  Your Honor, I have to address that

19  argument, because that was obviously the issues that my firm

20  handled at confirmation.

21          I mean, this is a contested confirmation hearing,

22  these are issues that were important to borrowers.  Certainly

23  there were issues that the Creditors Committee addressed, but

24  they were issues that were important to borrowers.  There's

25  nothing in the order that says that, you know, we can only

1    raise issues that only -- issues in the -- we only can relate

2    -- or address issues relating to the plan that only address the

3    borrowers issues.

4            THE COURT:  I understand.

5            MR. MCCAULEY:  I mean, that's -- and I'll leave it at

6    that.

7            THE COURT:  All right.  I'm going to take the matter

8    under advisement.  In all likelihood I will not issue an

9    opinion, but an order.  Is there any desire for supplemental

10   briefing?

11           MR. BEACH:  if Your Honor's satisfied, I don't

12   think --

13           THE COURT:  I'm satisfied.  We don't need to spend

14   any more money on this issue, I think.  All right.  I'm going

15   to take the matter under advisement.  Are you sleepy, Mr.

16   Busenkell?

17           All right.  Anything further for today?  Look, he's

18   turning red.

19           MS. GREECHER:  Your Honor, I do think that there --

20           THE COURT:  You have an order to give me.

21           MS. GREECHER:  I do.  And there were two status

22   conferences.  I'm looking at Sean, but I did want to make sure

23   that the order --

24           THE COURT:  Thank you.

25           MR. BEACH:  Your Honor, there was a status conference

1    on the WARN litigation.  Frankly, it would be on the settlement

2    that Your Honor has already approved, so I don't believe

3    there's any need for that status conference.

4            Which leaves us with the last item on the agenda,

5    which is a status conference with respect to litigation styled

6    as Triad Guaranty Insurance Corporation v. American Home

7    Mortgage Investment.

8            And there was a motion to intervene filed, I believe

9    that that party wishes to get some scheduling in place with

10   respect to that.  I understand Your Honor's time constraints.

11   I know counsel for Triad has traveled for this.

12           THE COURT:  All right.  We'll hear this.

13           MR. BEACH:  Your Honor, I'll cede the podium to Mr.

14   Rice from Womble, Carlyle.

15           THE COURT:  All right.  Very good.

16           MR. BUSENKELL:  Your Honor, Mike Busenkell, on behalf

17   of Triad, and awake.  As Mr. Beach indicated, I'm here with

18   Rick Rice from our Winston-Salem office, and Jamie Dean, also

19   from our Winston Salem office.  They've both been admitted pro

20   hac.  So let me turn the podium over to Mr. Rice.

21           THE COURT:  Okay.  Thank you.

22           MR. RICE:  Good morning, Your Honor.  Rick Rice from

23   the Forsyth County, North Carolina Bar.  And we appreciate you

24   taking a few moments of your valuable time to hear the status

25   of this matter.

1          I brought with me today Jamie Dean, he was just sworn

2     in as a new lawyer in our firm last week.

3          THE COURT:  Welcome.

4          MR. RICE:  And we're proud to have him with our firm.

5     Your Honor, Triad Guaranty Insurance Corp., has very recently

6     initiated an action to rescind mortgage guaranty insurance on

7     loans that were issued by AHM, and the insurance is from late

8     2004 to mid 2007.

9          We have styled the action as a defendant class

10    action, because, as the Court probably knows, AHM sold most of

11    these mortgages and loans to others, and the insurance normally

12    follows the loan.

13         And so there are other interested parties whom we are

14    -- we do not know exactly who they are, Your Honor, because

15    Triad is not advised when the loans are transferred from one

16    insured to another.

17         And so we need the Court's assistance, and the

18    assistance of the other parties, in determining who the

19    interested parties are.

20         But the point of the recision action, Your Honor, is

21    to put the parties back in status quo before the policies were

22    issued, to return premiums to the rightful -- the appropriate

23    parties who were entitled to return the premiums.

24         And in that connection, Your Honor, we have made a

25    global settlement proposal to AHM, the Creditors Committee and

1       certain of the owners of these loans, that has been discussed

2       among the parties for a number of months.

3               Triad finds itself in a position where it needs to

4       move forward, in order to resolve this matter.  Triad itself is

5       in runoff, and under the supervision of the Department of

6       Insurance in Illinois, and would like to resolve this matter

7       sooner, rather than later.

8               We have been in touch with counsel for AHM and

9       counsel for the Creditors Committee, and have granted them an

10      extension of time, to December the 2nd, to answer the

11      complaint, while we continue to discuss potential global

12      resolution of this matter.

13              There is Countrywide, as the Court may notice

14      recently filed a motion to intervene.  They are one of the

15      groups of loan owners that are interested in the outcome.  We

16      have not -- we've had preliminary discussions with them.

17              And, candidly, have not reached any consensus as to

18      where we're going with them.  But we expect that there will be

19      others who will show an interest in this case as time goes on.

20      Because, again, there are, as the Court knows, a large number

21      of owners of these loans that were sold by AHM before they went

22      into bankruptcy.

23              So we are simply here to move this matter along, and

24      to ask this Court to keep it on the omnibus calendars in order

25      to insure the orderly disposition of this case as we move

1  forward.

2          THE COURT:  All right.  Do you need any specific

3  relief from me today?  I mean, I certainly appreciate and

4  needed to know the status, and I do appreciate that.

5          MR. RICE:  No, Your Honor.  This is simply an

6  introduction of the case.

7          THE COURT:  Very good.  I appreciate that.  Thank you

8  so much.

9          MR. JARVINEN:  Good morning, Your Honor.  Christopher

10  Jarvinen from Hahn & Hessen on behalf of the Official Committee

11  of Unsecured Creditors.  I just want to make a brief statement

12  that, on the debtors, and the Committee as well, have been in

13  communications with counsel for Triad.

14          Although we disagree with the allegations made in the

15  complaint, we appreciate the work of the parties together to

16  try to come to some resolution, if that is possible.  Including

17  the extension of time for the parties to file an answer to the

18  complaint.  And we'll continue working in this regard.

19          THE COURT:  Thank you.

20          MR. BROWN:  Good morning, Your Honor.  Very briefly.

21  Stuart Brown, on behalf of the Countrywide entities that filed

22  the motion to intervene.  Your Honor, this morning we would

23  like for Your Honor to set a response date and a hearing date

24  on our motion to intervene, and that would be the extent of the

25  relief that we would seek this morning.

1          In addition to mentioning, so as not to waive, that

2     there is a potential conflict of interest between the parties

3     and the Womble, Carlyle's representation of various parties in

4     various other litigation, with this litigation.

5          Our clients are looking into that issue, and don't

6     have a final position on that, and just don't want to stand and

7     be deemed to be waiving that issue this morning.

8          THE COURT:  Okay.  Thank you.  I'm going to -- let me

9     look at the calendar.

10          MR. BROWN:  Certainly, Your Honor.

11          THE COURT:  Is there any objection to -- sorry -- is

12     there any objection to having the motion to intervene heard at

13     the November 13th hearing?  It's going to be a busy hearing.

14          MR. RICE:  None from Triad, Your Honor.

15          THE COURT:  Okay.  Mr. Beach?

16          MR. BEACH:  No objection from the debtors, Your

17     Honor.  I would just point out, and I don't know a solution to

18     this, but I suspect you'll see a lot more motions similar to

19     this motion to intervene by some parties that we could probably

20     figure out based on some of the warehouse lenders.

21          But I don't think any of the end servicers, I don't

22     think we know the universe of these parties.  I don't know the

23     most efficient way to make sure Your Honor's isn't seeing 20 or

24     30 of these motions to intervene.

25          Whether we try to get notice out to a subset of them

1    with respect to the motion to intervene.  But I only point that

2    out to Your Honor, to the extent you want to consider it.

3         THE COURT:  Of course, you could stipulate to them.

4    That would be efficient.

5         MR. BEACH:  And we may well, Your Honor.  This was

6    filed, I believe, yesterday and, you know -- and that may

7    happen.  So I don't know for sure.

8         MR. RICE:  And it may well be, Your Honor, that Triad

9    has no objection to the motion to intervene itself.

10        THE COURT:  All right.  Well we'll set the hearing

11   for November 13th, and objections due November 6th.  Which is a

12   week prior.

13        Obviously, to the extent it's stipulated, you can

14   submit that under certification of counsel prior to the

15   hearing.  And if the hearing comes off, for whatever reason,

16   either because of a settlement -- because I won't necessarily

17   make the connection -- or a continuance, please notify Ms.

18   Gatsen, so we can keep an eye on where we are.

19        MR. BEACH:  Certainly.

20        THE COURT:  I track as much as I can, but I think

21   Judge Shannon recently had a situation -- no it was Judge

22   Walrath, had a situation where she issued an opinion and -- on

23   a contested matter, and then was reminded that somewhere baked

24   into the plan, which had just -- had been confirmed previously,

25   the matter had been resolved.

1    We don't always make the connections.  Especially as

2    we get busier.  So motion to intervene on November 13th,

3    objections November 6th.

4         MR. BEACH:  Thank you, Your Honor.

5         THE COURT:  Any others filed within the normal time

6    frame, under the local rules can be scheduled for that date as

7    well.  And if it looks like we've got 30, 40, or something like

8    that, I'll think, hopefully creatively, about how to do it on a

9    global basis.

10        I might setup some sort of procedure.  It may make

11   sense, for instance, just to set up a notice procedure, just a

12   notice of intent to intervene, with some sort of a negative

13   notice objection deadline.  And not needing to go through the

14   whole dog and pony show of formal motions.  But we'll talk

15   about that on the thirteenth.

16        MR. BEACH:  Thank you very much, Your Honor.

17        THE COURT:  You're welcome.  And I am going to

18   continue the -- I'd like to continue this adversary proceeding

19   month-to-month on the omnibus's, so we can stay on top of

20   what's going on.  I think that's a good idea.

21        MR. BEACH:  Thank you very much, Your Honor.

22        MR. RICE:  Thank you Your Honor.

23        THE COURT:  Anything further?  All right.  Any -- Mr.

24   Beach, we're done?

25        MS. GREECHER:  The objection deadline.

1    THE COURT:  You blew it by eight -- six --

2    MS. GREECHER:  The eleventh is Veteran's Day.  So I

3    don't know if it matters to the objection deadline on the --

4    THE COURT:  Well make it the fifth.  Thank you, Ms.

5    Greecher.  Make objections due the fifth.  All right.  Issue a

6    notice, Mr. Brown.

7    MR. BROWN:  Absolutely, Your Honor.

8    THE COURT:  Very good.  Thank you.  Hearing

9    adjourned.

10                    (Court adjourned)

11                        * * * * *

12              C E R T I F I C A T I O N

13   I, Josette Jones, court approved transcriber, certify that the

14   foregoing is a correct transcript from the official electronic

15   sound recording of the proceedings in the above-entitled

16   matter.

17

18   --------------------------------        -------------------

19   JOSETTE JONES                           DATE

20   DIANA DOMAN TRANSCRIBING