```
                 IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE


IN RE:                          .    Chapter 11
                                .
AMERICAN HOME MORTGAGE HOLDINGS, Case No.07-11047(CSS)
INC., a Delaware corporation, . (Jointly Administered)
et al.,                         .
                                .    Nov. 13, 1009 (1:06 p.m.)
           Debtors.             .    (Wilmington)
```

                   TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
            UNITED STATES BANKRUPTCY COURT JUDGE

Appearances:

| For the Debtors: | Matthew Lunn, Esq. |
| | Curtis J. Crowther, Esq. |
| | Michael S. Neiburg, Esq. |
| | Young, Conaway, Stargatt & Taylor |
| For Claimant, Mona Dobben: | Douglas J. Pettibone, Esq. |
| | Law Office of Douglas J. Pettibone |
| For the Committee: | Edward Schnitzer, Esq. |
| | Hahn & Hessen |
| For Bellagio LLC: | Carl N. Kunz, III, Esq. |
| | Morris, James LLP |
| For Flood Data: | Kathleen Marshall, Esq. |
| | Cohen, Seglias |

Audio Operator:    Leslie Murin

Transcriber:       Elaine M. Ryan
                   (302) 683-0221

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE CLERK: All rise.

2          THE COURT: Please be seated.

3          MR. LUNN: Good afternoon, Your Honor.

4          THE COURT: Good afternoon.

5          MR. LUNN: May it please the Court, Matthew Lunn

6    from Young, Conaway on behalf of the debtors.  Referring to

7    the amended agenda, Your Honor, that was filed on the 12th,

8    although the agenda is quite lengthy, I think we can skip

9    through pretty much the first 12 pages with regard -

10          THE COURT: Well, I'm sorry, I'd like to start with

11   the teleconference issue on discovery.

12          MR. LUNN: Yes, Your Honor, and Mr. Crowther is here

13   on our behalf.

14          THE COURT: Alright, thank you.

15          MR. PETTIBONE (TELEPHONIC): And Douglas Pettibone,

16   Your Honor, on behalf of the claimant, Mona Dobben.  Thank

17   you.

18          THE COURT: Alright.  We'll start with Mr.

19   Crowther's letter since I got it before I got yours.

20          MR. CROWTHER: Your Honor, this is, Your Honor may

21   recall, this has been a matter of a set for an evidentiary

22   hearing in early December on the claim of Mona Dobben.  In

23   the context of that, there was originally a 600-page *pro se*

24   complaint that was filed that was subsequently dismissed by

25   the Court, and Your Honor permitted them to create a new

1   complaint to provide that as the basis for the claim.  That's

2   what's been attached to my letter as Exhibit B.  I'll call it

3   the operative complaint or essentially the claim at this

4   point.  As Your Honor can note from the complaint, it

5   involves approximately 36 different parties, many of whom are

6   not debtor entities.  We are in a process of - this is a

7   claim objection as to claims asserted against the debtor and

8   not about litigating the entire Mona Dobben fraud allegations

9   against other non-parties.  They, of course, are not here in

10  court or subject to the claim objection proceeding.  The

11  complaint was merely put into context as to what it is we

12  were arguing over.  In essence, Your Honor, we agreed to a

13  scheduling order that provided for service of written

14  discovery and completion of depositions leading up to the

15  evidentiary hearing in December.  Service of written

16  discovery was to be done by October 30th.  We had agreed to

17  give them some leeway on a complaint which was posted within

18  a week before the 28th, but we gave them until the 28th, so the

19  complaint was served on the 28th.  We provided written

20  discovery on the 30th, and on the 30th we received 160 document

21  requests from Ms. Dobben's counsel in California.  The

22  document requests are all over the place with respect to what

23  actually is being sought.  They relate to non-debtor parties,

24  they relate to matters that aren't actually with respect to

25  claims against the debtors but rather against Ms. Dobben's

1    other claims involving 8 other real estate properties that

2    the debtor was not even involved in.  The debtor made a loan

3    on one property in Palmdale, California, and that was

4    American Home Acceptance, Inc., and American Brokers Conduit.

5    Those were the only loans involving the debtors.  The

6    document requests are very difficult to comprehend.  They

7    don't relate to anything that's issued in the claim objection

8    but rather appear to be discovery related to a mortgage fraud

9    scheme involving all the other properties involving Ms.

10   Dobben as well as these other individuals.  We objected

11   immediately to those document requests, which I've attached

12   my original email.  We've had meet-and-confers with Mr.

13   Pettibone concerning trying to limit this to what is really

14   at issue in this claim objection relative to the debtor

15   entities and the claims asserted against the debtor entities.

16   We got an explanation as we've also attached to the discovery

17   dispute letter indicating that this relates to Ms. Dobben's

18   loans.  Well, that's not what's at issue in the claim

19   objection proceeding.  This is not litigation over the 100-

20   page complaint or the 24 counts of the complaint, it's about

21   the claims as against the debtors, and, Your Honor, we don't

22   believe that any of the discovery, to the extent it can

23   actually be readable, is related to the claims.  We have

24   independently provided Ms. Dobben's counsel with discovery

25   responses, specifically documents which they will have

1   received today, which involves her entire loan file as well

2   as email searches of every person at the debtors who touched

3   that file.  There's a log that's kept.  We searched all of

4   those emails.  The transaction was in April of '07.  We

5   searched emails from January to August for any of those

6   individuals who touched that file, searching Ms. Dobben's

7   name and her loan number as search terms and produced all of

8   those emails.  We could think of nothing else that we could

9   possibly have relating to these discovery requests or Ms.

10  Dobben's loan.  Without having had a document requesting

11  those things, we've produced them nonetheless.  We can think

12  of nothing else we can do.  There's 160 document requests,

13  which I think one read through them just makes you scratch

14  your head as to what exactly are they asking for.  It doesn't

15  make any sense.

16          THE COURT: Alright.  Mr. Pettibone, do you have a

17  response?

18          MR. PETTIBONE (TELEPHONIC): Thank you, Your Honor,

19  yes.  Douglas Pettibone, Your Honor.  The document request,

20  first of all they're specific as to this loan with Mona

21  Dobben, and if there are a handful of requests that are

22  somehow not comprehended or uncertain, then that's exactly

23  what I was trying to do was to find out which ones of those

24  are uncertain, you don't understand, or which ones you're

25  objecting to.  The way this works, Your Honor, is I served

1    the request and then I got an oral objection, just a blanket

2    objection to everything.  So what I tried to do was initiate

3    a good faith meet-and-confer so we could define the issues

4    for this Court, and what we did was, we went through every

5    document and said - every request, and identified why it was

6    relevant and why it was specific as to this loan.  To this

7    day, we haven't received a response to that meet-and-confer

8    or an objection as to the specific requests that they're

9    making as to why.  I tell you that, you know, I looked

10   through it and what is there, 5 or 10 that could be ambiguous

11   or uncertain, possibly, but I could certainly straighten it

12   out if I knew which ones those were, and we certainly

13   identified those uncertainties or cleared them up when we

14   gave our meet-and-confer letter back to them.  What I was

15   hoping to do was have a package to the Court where the

16   request was identified.  We've told them why we think it's

17   relevant and tell us why you don't think it's relevant or why

18   it's uncertain and then the Court would make a ruling on it.

19   We tried to do that ahead of time, and so it's just a big

20   blanket objection, and I can argue every one of these

21   requests as being relevant to this case, and I'm prepared to

22   do it now, but it would be quite a lengthy process.

23          THE COURT: Alright, before I respond, whoever is

24   typing on their computer, mute your phone.  Thank you.

25          MR. PETTIBONE (TELEPHONIC): That was Pettibone, it

1   wasn't me, Your Honor.

2          THE COURT: Oh, I didn't expect it was.  Well, Mr.

3   Crowther, any reply?

4          MR. CROWTHER: I think, Your Honor, I could just

5   take individual ones and look at them as well, and I'll just

6   take one as an example as to say why it just doesn't apply.

7   Number 6, for instance, it's a very short one.  Documents

8   evidencing any assets held in AHMA 2007-Trust including REO

9   properties and insurance policies.  That is about as broad as

10  you can possibly get.  We all know that the trust involved

11  thousands of mortgages.  We weren't the owner of the trust.

12  It is a trust to separate legal entities, it's not a debtor.

13          THE COURT: Alright.

14          MR. CROWTHER: It just goes on and on, Your Honor.

15          THE COURT: I agree with Mr. Crowther.  I have

16  reviewed the document requests.  They are extremely broad and

17  quite overly broad.  They are not narrowly, by any remote

18  indication, narrowly focused on the debtor and the debtor's

19  documents.  What I will do is - well, I'm going to strike the

20  request in its entirety.  I'd like you to look at the

21  documents Mr. Crowther has provided you.  To the extent there

22  are things there you don't want, you may issue a second

23  focused document request of no more than 20 documents - 20

24  requests, including subparts, and the debtors will respond.

25  Alright?

1           MR. PETTIBONE (TELEPHONIC): Yes, sir.

2           THE COURT: Now, you had an issue with the

3   deposition.

4           MR. PETTIBONE (TELEPHONIC): Yes, Your Honor.  The

5   Mona Dobben's deposition, I was trying to meet-and-confer on

6   that, and I felt that I didn't want it to be unlimited.  Mona

7   Dobben's an elder.  Part of the claims are elder abuse out

8   here in California.  She doesn't - you know, she has very

9   limited facts as to what had happened up until the time of

10  the foreclosure.  It seemed to me that we could do the

11  deposition in two hours.  They want to do a third party

12  witness, which is her daughter.  I agreed that they don't

13  have to subpoena her, that we'd voluntarily produce her in

14  Arizona.  I just think that the whole thing can be done in a

15  day.

16          THE COURT: Mr. Crowther.

17          MR. CROWTHER: Your Honor, we are looking at a

18  complaint that involves 9 separate pieces of real estate with

19  allegations of RICO and fraud.

20          THE COURT: Well, you just told me those weren't in

21  front of me.

22          MR. CROWTHER: No, the other parties aren't.

23          THE COURT: Right.

24          MR. CROWTHER: They're alleging interrelationships

25  among all of these people.

1          THE COURT: Right.

2          MR. CROWTHER: That somehow the debtors knew that

3     John Doe was committing fraud against Ms. Dobben.  We have no

4     factual allegations as to the basis of that fraud at this

5     point in time.  We simply have conclusory allegations in this

6     complaint.  It goes 24 counts, 100 pages -

7          THE COURT: Alright.

8          MR. CROWTHER: - 363 paragraphs.  While I certainly

9     have no interest in prolonging a deposition of anyone,

10    there's no way I could possibly agree that two hours is

11    sufficient of a plaintiff and both of these individuals are

12    the plaintiffs in this litigation, that I could complete an

13    entire fraud deposition in two hours.

14         THE COURT: No, I agree.  What I'll give you is, I

15    will give you one day to take the depositions, it will be

16    done in one day, and by that I mean, approximately 8 hours of

17    deposition time, and won't include breaks and et cetera, and

18    I leave it to you to divide up how much time you want to

19    spend on each witness.  And of course, you're a professional.

20    I know you're a professional.  We've known each other for

21    years, and I'm sure you'll show every courtesy to the person

22    who you are deposing.

23         MR. CROWTHER: Your Honor, there is one other issue

24    that I think may factor into what Your Honor just said as to

25    one day.

1           THE COURT: Alright.

2           MR. CROWTHER: We've been told that Ms. Yamamura

3    (phonetical) has health issues that preclude her from

4    appearing, for instance, in the morning, and she's basically

5    only available in the middle of the day.  We have scheduled

6    her deposition to start late morning so that it's over in the

7    middle of the day.

8           THE COURT: Alright.

9           MR. CROWTHER: That was on - we scheduled it for

10   Thursday the 19th.

11          THE COURT: Alright.

12          MR. CROWTHER: We then asked for Ms. Dobben's

13   deposition beginning in the morning of the 20th.

14          THE COURT: Okay.

15          MR. CROWTHER: And because of that interplay, we may

16   actually create problems for Ms. Yamamura -

17          THE COURT: Alright.

18          MR. CROWTHER: - based upon what I've heard.  So, I

19   would prefer to keep it based upon two separate days, but

20   with the 8-hour limitation.

21          THE COURT: Mr. Pettibone?

22          MR. PETTIBONE (TELEPHONIC): Well, I think we can

23   work that out within one day, because no matter what it is,

24   whatever time they want to start, we'll start with Ms. Dobben

25   first and then by 11 o'clock, Ms. Alex Yamamura will have had

1   her medication for her illness, and she'll be ready to go by

2   11 a.m. or later, if they want to divide up the time.

3        THE COURT: Alright, so, start with Ms. Dobben, take

4   as much time as you need for her and whenever she's finished,

5   whenever you're finished with Ms. Dobben, you can just go

6   right to Ms. Yamamura.  If you finish with Ms. Dobben before,

7   you know, at 10:30, you have to wait a little bit, but that

8   won't take away from your time.  Alright?

9        MR. PETTIBONE (TELEPHONIC): Very good.  When are

10  the requests to be delivered to them on the first issue?  Is

11  it like 72 hours and they have how much to reply?

12       THE COURT: Do you plan on - You don't plan on

13  asking your clients questions at the deposition?

14       MR. PETTIBONE (TELEPHONIC): No, sir.

15       THE COURT: Alright.  And, Mr. Crowther, you said he

16  should have gotten the documents - he'll get the documents

17  sometime today.  You Fedexed them or sent them overnight?

18       MR. CROWTHER: Priority overnight, they should

19  probably be sitting there.

20       THE COURT: Alright.  Yeah, that's what they say,

21  but -

22       MR. CROWTHER: I don't control the Federal Express

23  but they were sent priority overnight to Mr. Pettibone's

24  office.

25       THE COURT: Alright.  Well, Mr. Pettibone, if you

1   receive those today - I'll tell you what, your responses will

2   be due within 3 business days of receipt.  So if you receive

3   it today - not your response, your additional requests will

4   be due by the end of business on Wednesday the 18th, and then

5   I'll give the debtor till Monday the 23rd to produce.

6           MR. PETTIBONE (TELEPHONIC): Very good.

7           THE COURT: And if you have an issue that arises in

8   the meantime, get me on the phone, we'll have a telephone

9   conference.

10          MR. CROWTHER: Thank you, Your Honor.

11          MR. PETTIBONE (TELEPHONIC): Your Honor, thank you

12  very much.

13          THE COURT: You're welcome, Mr. Pettibone.  You can

14  hang up if you wish.

15          MR. PETTIBONE (TELEPHONIC): Okay, sir, thank you.

16          THE COURT: Returning to the agenda, Mr. Lunn.

17          MR. LUNN: Thank you, Your Honor.  As I was saying,

18  although the agenda is quite lengthy, I think we can

19  effectively walk through agenda items 1 through 21 and pages

20  1 through 12, which are all effectively - I think there's one

21  that is not a pending claim objection that is being

22  adjourned.  So if we carry over to agenda item 21, this was

23  the motion of the Committee for approval of certain

24  settlements.  It was the subject of a certification of no

25  objection.  Committee counsel is here if Your Honor has

1   questions with respect to the settlements.

2          THE COURT: Wait a minute.

3          MR. SCHNITZER: Good morning, Your Honor.  Edward

4   Schnitzer from Hahn & Hessen on behalf of the Committee.

5   Your Honor, that item was our second omnibus 9019 motion.  No

6   objections were received.  A certification of counsel of no

7   objection was filed.  Your Honor, if you have specific

8   questions, I'm happy to discuss any of the settlements.

9          THE COURT: Well, let me see if I signed it.  You

10  didn't happen to check the docket this morning; did you?

11         MR. SCHNITZER: I didn't see it hit the docket on my

12  train ride in, Your Honor, but I admit it's possible I could

13  have missed the order.

14         MR. LUNN: Your Honor, I had checked prior to coming

15  over, and I didn't see any order.

16         THE COURT: Alright.  I'll sign the order, if you

17  can hand it up.  Yeah, I think I signed some American Home

18  that isn't reflected on the docket.  Please approach.

19  There's been a lot of paper coming through the office.

20         MR. SCHNITZER: Thank you, Your Honor.

21         THE COURT: You're welcome.  Twenty-two?

22         MR. LUNN: Correct, Your Honor.

23         THE COURT: Oh, that was 22.

24         MR. LUNN: That was 22, Your Honor.  Agenda item 23,

25  and this is the debtors' motion for entry of an order that

1   approves the settlement and termination agreement with Intex.

2   The debtors did file a certification of no objection with

3   respect to this matter as well.

4           THE COURT: Alright.  Please approach with an order.

5   Does anyone wish to be heard?  I'll approve the motion.

6           MR. LUNN: Your Honor, I would have to submit that

7   under certification.  I did not come over with that order.  I

8   don't have it in my binder, unless -

9           THE COURT: Alright.  Any changes to the order?

10          MR. LUNN: There were none, Your Honor.

11          THE COURT: Alright, I have it here, I'll approve

12  it.

13          MR. LUNN: Thank you.

14          THE COURT: Next?

15          MR. LUNN: This is agenda item 24.  This is the

16  debtors' motion to approve a settlement and stipulation with

17  the Bank of New York Mellon in its various capacities.  Among

18  other things, it relates to the settlement of a cure claim

19  and monies coming from a cure escrow.  My understanding is

20  that a certification of counsel was filed this morning.  No

21  objections were filed but given the intervening holiday we

22  were unable to file a certification of no objection until

23  this morning, which has been sent over.  My understanding is

24  though that certification actually didn't have an order

25  attached.  I actually brought this order.

1           THE COURT: Thank you.

2           MR. LUNN: May I approach?

3           THE COURT: Yes, please.  Does anyone wish to be

4   heard?  I'll approve the motion.  Thank you.

5           MR. LUNN: Your Honor, the next agenda item is the

6   motion of Park National Bank for relief from the automatic

7   stay, and as the status line indicates, we were hoping to

8   have submitted an agreed order to Your Honor with respect to

9   the relief from stay component and unfortunately, we're not

10  quite there, but I wanted to give Your Honor some background

11  so that when you saw a certification of counsel coming from

12  me, you understood sort of the premise and how we got there.

13  But effectively, the debtors are the beneficial owner of

14  property in Mt. Prospect, Illinois.  We attempted to sell

15  this property early on in the case, went through a number of

16  buyers, actually submitted a sale motion, but after

17  additional due diligence that was done by that purchaser,

18  they decreased their purchase price to an amount that was at

19  or below the note on the property, withdrew the motion,

20  subsequent, Park National filed a motion for relief from

21  stay.  The debtors are asserting in the objection that we did

22  file to the motion for relief from stay, a 506(c) claim.  The

23  debtors were concerned about granting or allowing a relief

24  from stay to be entered and prejudicing our 506(c) claim.

25  Park National has agreed and the order makes abundantly clear

1  that we are granting a relief from stay, the debtors no

2  longer want to be burdened with the property, they were

3  unsuccessful in selling it, but at the same time we want to

4  preserve our 506(c) claim.  The order makes that clear.  The

5  order also makes clear that from the date of the entry of the

6  order, we were hoping it would be today, so we ought to

7  revise the order, but effectively the debtors no longer have

8  any obligation with respect to such costs as utilities.  So,

9  effectively, the debtors are done with the property.

10         THE COURT: Okay.

11         MR. LUNN: The order will have a blank as to a

12  hearing date, Your Honor.  I know it's December 14th is our

13  next omnibus date, and depending on where Your Honor's

14  calendar is, I'll leave that part blank -

15         THE COURT: That's alright.

16         MR. LUNN: Okay.

17         THE COURT:  Put that date in.

18         MR. LUNN: Put the date in?  Thank you, Your Honor.

19  The next agenda item, Your Honor, is the 43rd non-substantive

20  claim objection and Mr. Neiburg is handling the claim

21  objection, so I'll cede the podium.

22         THE COURT: This is it?  Oh, I've got it, alright.

23  Go ahead, Mr. Neiburg.

24         MR. NEIBURG: Good afternoon, Your Honor.  Michael

25  Neiburg from Young, Conaway on behalf of the debtors.

1    Amended agenda item number 26 is the 43rd omnibus non-

2    substantive objection.  Your Honor, prior to the response

3    deadline, we did receive one response filed by the New York

4    State Department of Taxation, and we have agreed to adjourn

5    the 43rd objection with regard to this claim pending attempts

6    to consensually resolve that matter.  I do have a revised

7    proposed form of order with a blackline for Your Honor's

8    convenience.

9            THE COURT: I'm sorry, please approach.  Does anyone

10    wish to be heard?  Alright, I'll approve the objection as

11    modified.

12            MR. NEIBURG: Your Honor, next is amended agenda

13    item number 27, which pertains to the debtors' 44th omnibus

14    substantive claims objection.  Your Honor, prior to the

15    response deadline, we received two formal responses by two

16    claimants as well as numerous informal comments and questions

17    regarding objections to various EPD breach claims.  In light

18    of the complexity and the amount of documentation that will

19    need to be reviewed to work out the matters, we have agreed

20    to adjourn the 44th omnibus as to the claimants that have

21    reached out to us, and I do have a revised proposed form of

22    order with a blackline for your convenience, Your Honor.

23            THE COURT: Okay.  Oh, I'm sorry, okay.

24            MR. NEIBURG: Thank you, Your Honor.

25            THE COURT: Just wake me up if I fall asleep.

1    Alright, so - looking at, it's Exhibit U with the people that

2    are - Oh, it's here in the order as well.  Alright.  So, EEOC

3    is adjourned, all the Walmue (phonetical) claims are

4    adjourned?

5         MR. NEIBURG: Correct, Your Honor.  I believe all

6    the claims from the claimants listed on Exhibit U, I believe

7    I captured all of them in the revised order.

8         THE COURT: Looking very quickly at one of them,

9    Huntington Paving, Inc., which is Claim 5232, I'd like to

10    adjourn that for more information.  The objection says

11    there's no liability because the claims should be against the

12    non-debtor owner, but it appears, at least from the face,

13    that one of the debtors is a tenant.  So, without more

14    information about who's responsible for what, I don't think

15    you've rebutted the *prima facie* case.  The thing that will

16    probably do it, is the lease.  So let's adjourn that for more

17    information.  That's Claim 5232.  You could just interlineate

18    that by hand, if you would.  I'll give this back, and then

19    I'll approve the objection as modified.  Oh, wait a minute.

20    Never mind.  I've got to get back to Exhibit B.  The party I

21    was just discussing is Huntington Paving, Inc., Claim 5232.

22    It's on Exhibit A.  Is the Federal Home Loan Mortgage Corp.

23    claim continued?

24         MR. NEIBURG: Did not receive any comments or

25    responses from them, Your Honor.

1          THE COURT: Alright.  Okay.  That's my only change.

2          MR. NEIBURG: Thank you . . . (microphone not

3    recording).

4          THE COURT: Yeah, that's fine.  Okay, next item.

5          MR. LUNN: Your Honor, I believe it's agenda item 28

6    and these are pretrial conferences with respect to preference

7    actions of the commenced five, the Committee, and also the

8    debtors.  So - Mr. Schnitzer, do you want go first?

9          MR. SCHNITZER: Good afternoon, Your Honor.  Edward

10   Schnitzer from Hahn & Hessen on behalf of the Committee.

11   Your Honor, this item on the agenda is the various initial

12   court conferences, approximately 10 or 50 preferences, just

13   to give you a quick overview, Your Honor.  Your Honor, the

14   Committee looked at the 90-day payments to approximately a

15   thousand entities.  This Court previously approved the

16   Committee's retention of RMS to assist the Committee as the

17   Committee's agent to evaluate those preferences and try to

18   resolve them.  In that capacity RMS sent out approximately

19   500 demand letters.  As a result of those demand letters,

20   Your Honor, we filed suit against roughly 250 entities, and

21   we also tolled potential suits against 40 more entities.

22   Your Honor, based upon those lawsuits, as well as the

23   tollings, we so far have filed two omnibus 9019 motions, and

24   we have a third that we're going to file shortly, Your Honor.

25   Just so you know, Your Honor, the first omnibus that you

1    approved already settled against 17 defendants, a second

2    approved against 19 defendants, and the third we're going to

3    be filing on Monday as settlements with 21 defendant.  Your

4    Honor, what's before you today is a scheduling order for, I

5    believe it's roughly a little under 200 of the preference

6    defendants.  Your Honor, I have a copy.  I don't know if you

7    have one, if you'd like to approach and give you one?

8         THE COURT: Well, is it the same order for

9    everybody?

10        MR. SCHNITZER: Correct, Your Honor.

11        THE COURT: Okay, I have that.  I have your proposed

12   order here.

13        MR. SCHNITZER: Your Honor, we filed this proposed

14   order on November 3rd with respect to all the adversary

15   proceedings, but for one party we've received no objections.

16   We've actually received various affirmative responses.  We

17   are asking that that scheduling order be entered for all

18   defendants, at least about four at this time.  Bellagio, as

19   that was the one party that objected, and I'm would then be

20   prepared to discuss that particular objection, Your Honor.

21        THE COURT: Well, let me hear from Mr. Kunz.

22        MR. KUNZ: Thank you, Your Honor.  Carl Kunz from

23   Morris, James on behalf of Bellagio LLC.  Your Honor, this

24   morning we sent over to chambers an alternative proposed form

25   of order.  Does Your Honor have that?

1          THE COURT: I do.

2          MR. KUNZ: Your Honor, our issue with the proposed

3    scheduling order is that in effect it stages discovery at a

4    very early stage of the case so that all written fact

5    discovery ends prior to the ability to take depositions of

6    any particular witnesses.  What we're asking and I think what

7    we've tried to accommodate by the alternative form of

8    proposed order is to basically allow parties to engage in

9    written discovery without the fear of having deposition

10   noticed for approximately three months until about mid-April.

11   I think the date in the amended - or the alternative proposed

12   order is the 23rd of April.  Following which, however,

13   depositions and written discovery would be able to

14   simultaneously occur.  The issue that I think what we're

15   trying to protect against is, number one, there may be

16   cleanup discovery that needs to be done after depositions or

17   additional information comes in.  The staging of discovery,

18   such that all written discovery ends, then there's a small

19   break, and then fact depositions begin is writing into the

20   order, in essence, either I've got to come back to the Court

21   to ask to do cleanup discovery or it's precluded at all or

22   the parties simply negotiate and then there's a back and

23   forth and then we need to figure out whether we're going to

24   need to come to court.  Our point is, the Federal Rules under

25   26(d) basically say, you can take discovery of any kind at

1    any time.  I think we've been more than reasonable in

2    allowing written discovery to occur for a period of time, but

3    then just have written fact and depositions complete

4    simultaneously.

5              THE COURT: I understand.  Mr. Schnitzer?

6              MR. KUNZ: Thank you, Your Honor.

7              THE COURT: You're welcome.

8              MR. SCHNITZER: Your Honor, I just want to give you

9    a little background.  When Bellagio first contacted us, they

10   actually had three points they wanted to make.  Their first

11   point was they requested that third-party discovery be

12   permitted to start immediately, as of, I guess, today or

13   yesterday.  We did not agree to that.  We saw there was no

14   reason that should begin separately.  It appears from the

15   order that they've proposed, they've at least dropped that

16   request.  Secondly, Your Honor, they also wanted an order

17   that permitted them to file a motion to withdraw the

18   reference at a certain time period.  We also opposed that,

19   Your Honor, since it would seem to imply that would give them

20   a specific right, and we didn't believe that was appropriate

21   for a scheduling order.  Your Honor, by their proposed

22   scheduling order, they have appeared to drop that request as

23   well.  That leaves us with their last request.  Their last

24   request, as they explained to me and as they've explained to

25   the Court, was this ability to, if they learn something in a

1    deposition, the right to conduct written discovery

2    afterwards.  Well, we thought, Your Honor, our scheduling

3    order was sufficient in that it's been used in many other

4    cases, Linens before you, Your Honor; New Century before

5    Judge Carey.  We did agree to change it such that there would

6    be written discovery with fact depositions happening in the

7    middle of it, and written discovery happened afterwards,

8    despite that offer to Bellagio, which we thought was

9    sufficient, Your Honor, since it would solve exactly their

10   concern.  It would have depositions.  If they learned

11   something that caused the need for more written discovery,

12   they would have the ability to serve it.  They disagreed, and

13   they proposed this written discovery and then depositions

14   going to the end of fact discovery.  Your Honor, for that

15   reason, we disagree.  We didn't think it was necessary to

16   have this fact deposition period running from April until

17   September.  We just simply thought that wasn't necessary, and

18   we also thought, based upon the provision in the scheduling

19   order which allows parties to make changes by written consent

20   or if necessary to go to court, we thought that was

21   sufficient if there was a particular issue with a particular

22   party about discovery needing to go past a certain date, you

23   know, vacation schedules, whatnot, witness's availability, we

24   thought that would be fine.  In our experience, I think we

25   found that the scheduling order provides, you know, general

1    parameters and then the parties as professionals can make

2    variations.   We think our scheduling order covers that, but,

3    Your Honor, like I said, I would request it be entered with

4    respect to the other defendants if the Court feels that, at

5    least with respect to Bellagio, this particular tweaking of

6    the deposition timing is appropriate for them, Your Honor.

7    I guess, Your Honor, my point would just be it should be only

8    entered with respect to Bellagio which I think is all their

9    asking for, although I'm -

10            THE COURT: Well, I may not have your most recent

11   version of your scheduling order.  Do you have it with you?

12            MR. SCHNITZER: We have not filed a new version.  I

13   did not file this other version.  We worked it out with

14   Bellagio because it didn't seem to solve all their problems,

15   so there didn't honestly seem a point, plus the fact that all

16   the other parties received the original version.  A lot of

17   them okayed it.  I didn't want to try to then have - expect

18   people and get out service to somehow 180 parties.  So we

19   wanted to just limit the Bellagio one to something, you know,

20   one way or the other, that worked for them.

21            THE COURT: Okay.  Mr. Kunz, anything else?

22            MR. KUNZ: No, Your Honor.

23            THE COURT: Alright.  Ms. Sawzuck?

24            MS. SAWZUCK: Good afternoon, Your Honor.  Maria

25   Sawzuck on behalf of Long Island Power and Commonwealth

1    Edison.  I may be opening a can of worms in your courtroom,

2    Your Honor, but to the extent that Bellagio receives that

3    type of an order, we would request that we get the same.

4         THE COURT: Yeah, we're going to have one order, and

5    it's going to be the same for everybody, and it's going to be

6    Bellagio's order.

7         MS. MARSHALL: Good afternoon, Your Honor.  Kathleen

8    Marshall on behalf of Flood Data, with Cohen, Seglias.  I

9    just want a clarification.  The proposed order referenced in

10   the agenda that I received, referenced that it was going

11   forward for the debtors' cases.  Is the same proposed order

12   going to be entered for the Committee's cases as well?

13        MR. CROWTHER: Your Honor, Curtis Crowther for the

14   debtors.  The Committee circulated their proposed form of

15   order in a different fashion than we did.  We attached ours

16   to the agenda and put it before with the agenda.  The

17   Committee circulated theirs by filing a notice in all their

18   cases.  So, their order has the same dates as ours, but it's

19   not the same order itself.

20        THE COURT: Is it consistent?

21        MR. CROWTHER: It is; it is.

22        THE COURT: I'd like the same order in all the

23   cases, debtor case, Committee case, work it out, same order,

24   because I'm sure we have counsel who is representing

25   defendants in your cases - I'm pointing at the debtor, and in

1  the Committee's cases.  Inconsistency is just going to have -

2  things are going to fall between the cracks.   So I want the

3  same order, same dates, and I want the Bellagio dates.

4       MR. CROWTHER: I don't know what the Bellagio dates

5  are, but I'll certainly be able to get hold of those.

6       THE COURT: Alright, and you can submit that under

7  certification.

8       MS. MARSHALL: Thank you, Your Honor.

9       THE COURT: You're welcome.

10      MR. KUNZ: Thank you, Your Honor.

11      THE COURT: Mr. Allison?

12      MR. ALLISON: Good morning, Your Honor.  Elihu

13  Allison on behalf of Webfall (phonetical) which is case

14  number 09-51590.  I have not - I didn't get the opportunity

15  to discuss this with Mr. Schnitzer. I just found out about

16  this this morning, but my client's concerns relate to, again,

17  the timing of cutoff of fact and written discovery, and what

18  they are seeking is that those deadlines be extended until

19  the later of the dates set forth herein or perhaps in the new

20  order that's going to be entered, which I guess would be

21  September 10th, for 60 days after mediation is completed so

22  that the parties can go to mediation without necessarily

23  having completed fact discovery.

24      THE COURT: No, I disagree.  I understand the point,

25  but I think it becomes a procedural nightmare.  So, I'll

1    overrule that comment.

2           MR. ALLISON: Very well, Your Honor.

3           THE COURT: Mr. Schnitzer, anything further?

4           MR. SCHNITZER: Your Honor, even though you've

5    overruled, I would just note for Mr. Allison's concern, Your

6    Honor, obviously if the parties work out a situation where

7    they think it's best to go to mediation and not harass each

8    other with discovery, we would have no comments.  The

9    Committee agreeing to extend that deadline, obviously, for

10   specific cases, if that's the intent of both sides, because,

11   obviously, mediation can be fruitful and if part of what's

12   gained from mediation is avoiding the cost of discovery, you

13   know, there are appropriate times when that makes sense, Your

14   Honor.

15          THE COURT: Alright.

16          MR. SCHNITZER: We know the Committee will be

17   reasonable.

18          THE COURT: Very good.

19          MR. SCHNITZER: Now, the other reason I rose is in

20   paragraph, either (8) of my original order or (7) of the new

21   order there is a blank space for when the final status

22   conference will be held.  I have it written for sometime in

23   February 2011.  I know that's far off in the future, I wasn't

24   sure if you wanted me to put in a date or to just say, at a

25   date to be determined.

1          THE COURT: Yeah, at a date to be determined.

2          MR. SCHNITZER: Okay, Your Honor, we'll make that

3     change, the other change, and then file under cert of

4     counsel.

5          THE COURT: Yeah, and look, I've been doing this -

6     I've been on the bench now for just - Well, I'm coming up on

7     four years, I've yet to hold my first preference trial.  So,

8     I fully expect they'll all settle.

9          MR. SCHNITZER: As do we.  Thank you, Your Honor.

10         THE COURT: So, a date to be determined.  Anything

11    further?  Alright, please submit that under certification of

12    counsel if you will.  You can hand up that other order, and

13    look at that.  One minute before my next hearing, excellent.

14    Mr. Lunn.

15         MR. LUNN: There is one agenda item left, Your

16    Honor.

17         THE COURT: Oh, no.  No, there isn't.

18         MR. LUNN: I think we can dispose of it quickly

19    though, because it's -

20         THE COURT: Alright, go head.

21         MR. LUNN:  - the subject of a CNO, and it was a

22    motion of -

23         THE COURT: Oh, I saw that, yeah.  Do you have the

24    order?

25         MR. LUNN: This isn't the debtors' motion, so I

1    don't have an order, but I can make sure that one's delivered

2    to chambers.

3              THE COURT: Yeah, please do.

4              MR. LUNN: Will do.

5              THE COURT: Alright, that's it?

6              MR. LUNN: Nothing further.

7              THE COURT: Hearing adjourned, thank you.

8              UNIDENTIFIED SPEAKER: Thank you, Your Honor.

9              (Whereupon at 1:44 p.m., the hearing in this matter

10   was concluded for this date.)

11

12

13

14

15

16

17

18             I, Elaine M. Ryan, approved transcriber for the

19   United States Courts, certify that the foregoing is a correct

20   transcript from the electronic sound recording of the

21   proceedings in the above-entitled matter.

22

23   /s/ Elaine M. Ryan_____November 19, 2009
     Elaine M. Ryan
     2801 Faulkland Road
     Wilmington, DE 19808
     (302) 683-0221