# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, | ) Jointly Administered |
| et. al., | ) |
| | ) |
| Debtors, | ) |
| | ) |
| Mona Dobben | ) **Hearing Date: December 9, 2009** |
| Alex Yamamura | ) |
| Plaintiffs, | ) |
| | ) |
| AMERICAN HOME MORTGAGE CORP., | ) |
| et., al., | ) |
| Respondent. | |

## <u>REPLY TO MOTION FOR SUMMARY JUDGMENT</u>

Late on Friday December 4, 2009 a motion was filed a motion for summary judgment. This motion is untimely and contains a plethora of half-truths, subjective belief's, and bald assertions of the Debtor that have no foundation.

1.    One such statement is what the Debtors claim is an undisputed fact: "Ms Dobben is an experienced property investor, having previously owned investment/rental property for approximately 12 years. (Dobben Dep. 14:8-15:25). This was a family owned property which she inherited and it was over 25 years ago that she sold it.  This is just not comparing apples to apples, as what took place in this case was a massive fraud that nothing could have prepared her for. Was she guilty of trusting too much, yes. Her generation is from a kinder gentler time when these kinds

of massive frauds were not common place. As in the Madoff case, con men prey on people they

know, they are personable, and even friendly. This is how they achieve the deception. They do not

announce what they intend to do.  They covertly operate in secret and by the time you realize

you've been had, it's usually too late. This is the case here.

2.   We will show by a preponderance of the evidence, that as soon as Alex

Yamamura and Mona Dobben realized that something was horribly wrong  they embarked on a

courageous effort to alert the proper authorities and mitigate the damages to all.

3.   The assertions of the Debtor make it clear that they intend to blame the victim

and she will have been victimized all over again and have to suffer the injustices over and over

again.

4.   The Debtor did nothing to mitigate the damages to anyone, including the estate.

They escalated the damaged to Mona Dobben, the insurers, perhaps the investors (unless they

benefited from the insurances), and most importantly the estate.   AHM left all the liability of this

with the estate, and the benefit of the foreclosure and the insurance went elsewhere.

5.   The logic of the debtor in the motion for summary judgment is that due to owning

an investment property over 25 years ago, Mona Dobben knew what she was getting into. First she

could not have possibly know the extent of what was going on and it took months of investigation

to discover what we have at this point. Pieces are still missing, and AHM failure to produce

documents does not  help in that clarity.

6.   Next the debtor seems to assert that Mona Dobben gave Downey permission to do

this to her. What an absurd proposition. She was a senior citizen, with a credit score of 800 and no money problems minding her own business, bowling with her friends and living her life, when a con man approached with what was to be a legitimate deal, wherein she would realize a positive cash flow from rental income. She had no idea he would attempt to slam her into NINE properties using her personal information. She trusted Downey and assumed he would not be able to do anything illegal. She was wrong. She did not give him any power of attorney therefore he had no right to do any signing in her name.

7.   The Debtor repeatedly states that Ms. Dobben **purchased** this property, yet Ms. Dobben didn't sign the purchase agreement, did not open escrow, did not see the property, did not receive any property inspection, did not fill out a loan application or receive any initial mortgage disclosures, and the Debtor has produced no originals documents, and there is a dispute as to the date of  signing of those documents. She never took possession of the property or received keys, never signed the rental agreement. So did she purchase this property? A transaction such as this, with all the associated problems is not legitimate just because she may have signed some documents. A legal mortgage transactions has many elements, many of which were breached herein.

8.   The debtor produced emails ( Plaintiffs exhibits #42-50) refers repeatedly to a transaction which was drawn and funded on April 11, 2007 and then returned for unknown reasons. AHM has not produced these documents.  There is also an Addendum E reference, which is a power of attorney addendum that AHM has not produced if one was presented then AHM is concealing it.   On another document ( Plaintiff exhibit #22) appearing to be in the underwriter

Rodney Dostalik's handwriting is: Pat signing today. This document has a date of 3/29/07. Was there in fact an attempted closing on April 10, that was rejected on another property, or this property with Patrick Downey trying to sign as power of attorney? The Debtor must produce these documents and they have refused.

9.    This summary judgment motion also contained a misstatement that Mona Dobben verified each and every document as containing her signature. In fact, one document which was deposition Exhibit #4 Debtor left out as she did state it was not her signature. AHM did not present her with the plethora of forged documents we have only the ones they selected. We have previously presented the documents that she affirms are not her signature. She will testify to these documents. Due to failure to produce originals we do not concede that the copied documents are THE documents she signed.

10. AHM claims that because certain documents were signed that negates the forgeries which exist. In fact even the documents that were signed bear a date problem. They were signed purportedly on April 17, 2007 and the HUD -1 is dated April 19, 2007. Mona Dobben will testify that she did not sign any documents on April 17, 2007. So either they were backdated or these are not the documents she signed. No originals have been presented to be checked for legitimacy. She only said at deposition they APPEAR to be her signature.

11. In processing this loan application for a 68 senior citizen, AHM underwrote this loan with no checking of income for this borrower. Her phone number on the application, but they never called her to verify anything was correct and true. In looking at her investment statement with a minimal amount of funds in savings, it would have been clear she did not earn or possess

enough  funds that would have made it reasonable to purchase a home on a 40 year  mortgage pay

option arm loan. A simple phone call could have averted this entire event.

12. This is a licensed and regulated industry. The Debtors had duties under state and

federal statutes to conduct loan servicing within the reguired mandates of good faith and fair

dealing. The Debtor assured this Court that transferring the servicing to DIP Wilbur Ross

would be seamless, and in the borrowers best interest. However in this case it appears a finger

pointing will ensue about who is responsible for the foreclosure actions. In the California state

action, TD Service has already placed the blame solely on the Debtors.

13. Due to the complexity and the voluminous nature of the complaint and documents,

we intend to do our best to keep the case in this Court focused on the acts of American Home

debtor entities, and associated bankruptcy participants who had an interest in the outcome of the

conduct we allege. However it is clear from the deposition that Debtor would like to stray into

their belief that the Plaintiff's daughter had some part in what happened.

14. First, her transaction was already reviewed by the lender involved EMC/Bear

Stearns and one of the top fraud investigator in the Country, John Gray, on behalf of Bear Stearns,

did the right thing by investigating the matter on that transaction and the matter was concluded

with a deed in lieu of foreclosure and an agreement to clean all references from the credit report of

Alex Yamamura, effectively rescinding the deal.

15. The FTC also conducted an investigation and determined there was in fact identity

theft and Alex Yamamura received a settlement check directly from them.

16. The FBI has recently stated that this is still an open investigation. So it is improper

for the Debtors to go into this area as it has nothing to do and is irrelevant as to their

responsibilities or liabilities to Mona Dobben. It is also improper for the Debtor to substitute its

subjective beliefs upon which it has conducted no investigation, for the real investigations which

have taken place and are still ongoing by Federal and state regulatory and criminal agencies.

17. This matter is still in open investigation by the FBI and is a complex matter, with

many conflicting pieces of information. We intend to present on Dec 9th, 20009 our research and

discovery items, and some additional discovery which was obtained from Debtor. For the most

part, Debtor has blocked every effort to obtain crucial documents which the Court should infer

substantiates our position or is detrimental to their position. These document include but are not

limited to; the originals documents signed in ink for authentication, chain of assignment or interest

in the loan, insurance claim records and reports, investigations done into Mona Dobben's claims as

required, servicing records past Oct 30, 2007, emails past April 19, 2007, and communications

whatsoever regarding the foreclosure to all parties to that act.

18. If the debtor contends that they are not responsible for the acts of the broker or the

title agent who closed the loan, then why did they fail to investigate and hold those parties

accountable and bring money to the estate for damages? Why did they not assist Mona Dobben

when they were notified in September of 2007? AHM's own SEC filings state they believe they

are responsible for the broker acts. We intend to present the broker agency relationship and duties

therein. AHM does not speak of any duty to investigate as required and will not provide any proof

that an investigation took place.

19. American Home has not argued that the acts complained of did not happen, they

seek only to contest any responsibility they have in them. In short, the broker did it. If AHM is to contend that they were not responsible for the acts and predicate acts of Patrick Downey, then why did American Home do absolutely  nothing to investigate the claims of Mona Dobben (or refuse to produce any evidence of such investigation), and why did they not seek to hold the perpetrators responsible under contractual agreements they possessed. These agreements included a broker recourse and a closing protection letter for their benefit. This action would have preserved value for the estate. Instead the non debtor parties who received the benefit of the insurance claim, found it easier to not investigate which would have voided such insurances, and to foreclose with no investigation and collect the benefit. This harmed the creditors of the estate.

20. American Home contends they are simply a victim a market circumstances, "an honest and unfortunate Debtor. If this is true then why did the SEC, HUD and the FBI need to investigate their practices? Why did investors sue them for misconduct? Why is TRIAD suing them to rescind mortgage insurance contracts? Why are parties like Deutsche Bank and Wells Fargo demanding indemnifications against their acts?

21. American Home contends that they had no duty to Mona Dobben to have processes in place to protect borrowers, insurers, investors, and secondary market participants, from bad loans? In a long line of cases against lenders, government entities have held the lender liable for "all acts" in which the end result was a loan.

22. The Broker due diligence revealed that the primary asserted Stacy Eagle was not the broker, she had credit issues including a previous bankruptcy, and this was ignored. Pat Downey was listed a  processor. A simple search on his name would have revealed his REVOKED license status. Further inquiries to CA Department of Real Estate would have revealed his license was  REVOKED due to a conviction under Title 18 Section 1341 frauds and swindles.

23. Even if this Court were to accept that AHM had no way of knowing that this

transaction had issues at the time, or they had any agency relationship with the broker, the focus

shifts to what should AHM have done after the fact when they were notified?        The Federal

Trade Commission best practices standards, set forth in the settlement with Fairbanks Capital

Holding Corp. states that borrowers have a right to be treated fairly.

**Mortgage servicers may not:**
  A.  Report false information about their delinquencies to national credit bureaus, thus, ruining
      borrowers' credit ratings.
  B.  Intimidate or harasses customers who are behind on their payments.
  C.  **Refuse to respond to borrowers' complaints or requests for information.**
  D.  **Refuse to work out delinquencies using loss mitigation tools.**
  E.  **Stampede homeowners into quick foreclosures**.


## 24. POWER OF THE COURT

This Court sitting in equity has the power to order, process or enter any judgment that is

necessary or appropriate to carry out the provisions of this title and to prevent abuse of process.

 11 USC 105(a) Sec. 105 Power of court (a) The court may issue any order, process, or judgment
that is necessary or appropriate to carry out the provisions of this title. No provision of this title
providing for the raising of an issue by a party in interest shall be construed to preclude the court
from, sua sponte, taking any action or making any determination necessary or appropriate to
enforce or implement court orders or rules, or to **prevent an abuse of process**. Section 105(a) of
the Bankruptcy code provides a bankruptcy court with broad powers in the administration of a case
under the Bankruptcy Code. Section 105(a) provides that "the court may issue any order, process
or judgment that is neccesary or appropriate to carry out the provisions of the Bankruptcy Code. 11
U.S.C. 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a
result not contimplated by the Bankruptcy Code., the exercise of its section 105(a) power is proper.

## 25. DEBTOR IN POSSESSION – ROLE AND DUTIES

The trustee in this case is Debtor in Possession Wilbur Ross, and that role

duty fiduciary duty to all creditors of the estate, including Mona Dobben. Wilbur Ross was also

bound by duty of adequate assurance that servicing would be done properly when acquiring the

American Home Servicing unit. During the time between the economic close and the final close,

and thereafter to act in a manner which would have protected the estate from further damage

claims, and to act in the best interest of the estate and not the parties he serviced loans for to the

detriment of a borrower and claimant of the estate.

11 USC 323 (a) The trustee in a case under this title is the representative of the estate. (b) The trustee in a case under this title has capacity to sue and **be sued**. Subsection (b) grants the trustee the capacity to sue and to be sued. If the debtor remains in possession in a chapter 11 case, **section 1107 gives the debtor in possession these rights of the trustee**: the debtor in possession becomes the representative of the estate, and may sue and **be sued**.

11 USC 1107 subject to any limitations on a trustee serving in a case under this chapter, an to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, **of a trustee serving in a case under this chapter.**

**Historical And Revision Notes**

SENATE REPORT NO. 95-989 **This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee.**

26. Not one of the parties to this loan and foreclosure responded to any communications

or stopped the foreclosure.  On April 29, 2008, Michelle Pino, supervisor for TD Service

Company, informed Mona Dobben's daughter, Alex Yamamura and advocate Paula Rush on a

conference call, that  American Home Mortgage had **advised** TD Service Company that they **did**

**not** have Mona  Dobben's address **9208 107th Drive Sun City AZ 85351,** and to continue with the

foreclosure as planned. **This is outrageous considering that an enormous amount of effort and**

**documentation we possess to the contrary of that assertion.**

27. The plain fact is the Debtor can't ignore they sent a confidential loan file to Mona

Dobben in Arizona in Oct of 2007 and then began a foreclosure not notifying her at that address.

TD Service confirmed to both Alex Yamamura and Paula Rush that they were informed by AHM

that no other address existed. Mona Dobben eventually put in a mail forward on the advice of

Paula Rush and then received a notice on April 11, 2007 which did not allow adequate time to

block the actions being taken. Even in the final hour, all parties were still refusing her calls so the foreclosure took place cutting off any rights she had of recoupment and set off against the lien.

28. It is not clear who was holding this property at bankruptcy and at time of foreclosure, or as a REO property, as AHM has refused to produce any chain of assignments. The Substitution of Trustee simply states that on 12/28/07 MERS by Vice President Robert Hardman, authorized the substitution of trustee to TD Service. This further makes it impossible to decipher and AHM has failed to produce any information on what entity was the beneficiary of the insurance policy with insurer, MGIC claim # 24787269, found on servicing records sent to Mona Dobben on Oct. 30, 2207 by Debtor. The assertions of fraud against the origination of this loan would have voided this policy and may have, but AHM refuses to produce any records of such.

29. Insurance was the reason that AHM chose not to assist Mona Dobben. It was just easier to sweep it all under the rug, and collect on insurances then to hold the parties accountable. The servicing records sent to Mona Dobben in October of 2007 (plaintiff exhibit #25) show clearly that a call was logged by H. Cruz, 12:43 on 9/25/07 stating the following– "3rd party/Paula Rush Consumer Advocate representing Mona Dobben/per Paula the mtg was done in fraud –mona knew about the property but never signed any mtgm documents. The very next entry on 9/25/07 by DE. BAILE at 13:08 states – PD LPMI premiums to MGIC for AUGUST 2007, check # 330436, check date 9/19/07, Amt. Paid $143.51.

30. Some level of rescissions for fraud is commonplace in this industry. However, it appears that rescissions are reaching an unprecedented level For example, in its **first-quarter earnings call on April 29, 2009, the MGIC Investment Corporation reported:** "Historically, claims submitted to us on policies we rescinded were less than 5 percent of our claims resolved during a year. This increased to approximately 15 percent in the fourth quarter of 2008 and was over 20 percent in the first quarter of 2009. Rescissions have materially mitigated our paid losses

in 2008 and 2009." In its second quarter earnings call, MGIC did not report on the percentage of claims submitted in  the second quarter that were rescinded, but it did state that the dollar amount of rescinded loans in the second quarter was more than 40% higher than the dollar amount of rescinded loans in the first quarter, which would indicate that the number of rescinded loans is continuing to escalate rapidly.

31. This was a mortgage note that the estate and a person other than the estate (Mona Dobben) had an interest in. American Home or related non debtor alter ego entity did hold the **securities and residual interest** in this mortgage loan and AHMA 2007-5 Trust, as well as a CD and Savings Account in American Home Bank, and possibly other unknown benefits. The contractual rights of the secured financing provided may have allowed the seizure under securities contracts due to a the trigger event of  bankruptcy by American Home, but that did not transfer any residual ownsership rights of American Home.  Those rights were sold separately. The residual rights may have been property of the estate which could have been subject to set off or recoupment by Mona Dobben.

32. It is unclear who received the MGIC insurance proceeds and other insurance proceeds. It was not the estate. The liability stayed with the estate upon foreclosure, while the benefits went elsewhere, subjecting the estate to costs which could be recouped under direct counterclaims against these parties.

33. On Docket #11, it states that the Debtors institute foreclosure proceedings, and the Debtors are the bidders, and the Debtors own the foreclosed  properties as REO's. So who owned Mona Dobben's loan?

18.    In the ordinary course of the Debtors' loan servicing business, the Debtors institute foreclosure procedures when mortgagors fail to remit the requisite payments pursuant to the terms of their mortgages.  At the conclusion of the foreclosure process, assuming the Debtors are the successful bidder at the foreclosure auction, the foreclosed properties become owned by the Debtors and referred to as REO.

34. Deutsche Bank as  Indenture Trustee on this trust have asserted various claims against the Debtor estate. These claim include, repurchase, default management, early payment default, document exceptions, and breach of warranties. This is clear on Docket # 5356. The Debtors have failed to provide any discovery of claims made directly related to this loan. Right of set and recoupment, or equitable subordination may be appropriate as well as a recoupment/set off/ or disgorgement to the estate from parties who have made claims while subjecting the estate to damages related to those same claims. If Mona Dobben were to prove that damages exist that the estate can exercise against Other parties to bring value to the estate her claim can be a priority claim.

10. The Trustee asserts that the Trusts may have both administrative priority and unsecured claims for damages with respect to any breaches by Debtors of any obligations under the AHM Serviced Trusts, to the extent that Debtors have not assumed and subsequently reject their obligations under the Governing Documents for such Trusts.  Because such

On Docket #5276 Deutsche Bank asserts that they should be indemnified from claims of borrowers such as Mona Dobben. Further these claims should be priority claims under the disguise of preserving the estate.   In fact it is Mona Dobben's claims that should take  priority as Deutsche Bank stood on the sidelines after opening admitting that they were aware of her claims and assertions, and did nothing. Instead they assert they should be paid for monitoring the Debtor and for extraordinary default management. In

truth and in fact, they hid themselves from Mona Dobben, and did not come forward to

engage in default management, or seek to mitigate damages to the estate, to Mona

Dobben, or to the Trust  parties. Instead they have escalated the damages to all.

35. On Docket #5276 – Deutsche Bank (DBNTC), as Trust Administrator, and/or

Indenture Trustee, filed a Purchaser's Cure Claim subject to the reservation of rights set forth

below as follows:

a. Indemnification for the fees and expenses of outside legal  counsel from November 1, 2007
**through the Final Closing Date** in connection with bankruptcy proceeding …..
b. **Indemnification for the extraordinary default management** and administration fees and
expenses of DBNTC for the same period relating to the sale and the transfer of servicing to the
Purchaser in the amount of $_____;

The Cash Management Order further provides, in relevant part, that: The reasonable costs of **such
trustee monitoring efforts shall be considered a reasonable expense of administration of the
securitization trust** reimbursable under the indemnification provisions of the Securitization
Documents in accordance with the Securitization Documents or, **alternatively, such expenses
shall be afforded administrative expense priority under section 503(b)(1)(A) and 507(a)(2)** to
the extent provided in the relevant Securitization Documents Cash Management Order, pages 7-8.

36. DBNTC further reserved the right to assert claims for indemnification and its

monitoring efforts as administrative priority expense claims in relation specifically to this loan and

named Mona Dobben in this pleading.

4. *Reservation of Certain Rights*. The Purchaser has represented in their cure
notices that no defaults exist under the terms of the Servicing Agreements. As such, DBNTC
reserves its rights to further amend this claim in the event it becomes aware of the following types
of breaches:
a. Litigation. The servicer's indemnification obligations include an indemnity for
any losses suffered as a result of any litigation brought against a trust or the Indenture
Trustee or Trust Administrator as a result of, *inter alia*, any **unfair debt collection
practices employed by AHM as servicer.** DBNTC is aware of certain holders of
mortgage loans who have initiated or threatened action against the Debtors, the Purchaser
and others as a result of their mortgage loans, including but not limited to **Mona Dobben**,
Paula Rush and Laura Beall. Other holders of mortgage loans may file or threaten claims
in the future. To the extent that any such action seeks to hold DBNTC or any trust liable
(or seeking to set off against any note held by a trust), DBNTC reserves the right to amend its
claim to assert any such damages incurred. DBNTC notes that the servicer regularly institutes
foreclosure proceedings which theoretically may give rise to counterclaims (whether or not
meritorious) against the servicer and/or the trusts, trustees or master servicer.

## **PRIORITY AND CLASSIFICATION OF CLAIM**

37. American Home is not an unfortunate debtor.  Do the rights of American Home

trump the rights of victim Mona Dobben? What type of claim and damages is she entitled

to?

Congress <u>did not</u> favor giving perpetrators of fraud a fresh start (by allowing them to
wipe out their debts in bankruptcy) over the interest in protecting victims of fraud when it
wrote the Bankruptcy Laws. Accordingly, Section 523(a)(2)(A) of the Bankruptcy Code
excepts from discharge in bankruptcy "any debt . . . for money, property, services, or an
extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a
false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

The Supreme Court has ruled that it is not just the value of the property, but that
also includes treble and punitive damages. It is not only the actual value of the "money,
property, services, or . . . credit" the debtor obtained through fraud that is non-dischargeable in
bankruptcy, but also treble <u>"punitive" damages</u> and attorneys fees and costs related to the fraud.
This was made clear in a March 25, 1998 decision of the Supreme Court of the United States in
<u>Cohen v. de la Cruz.</u>

38. American Home and insiders of American Home insiders use the bankruptcy

Court to the detriment of the rights of Mona Dobben. American Home insiders did commit

acts for which Mona Dobben could seek remedies in a civil court.  American Home

insiders did use of  bankruptcy, to delay and derail Mona Dobben as a creditor, and to

assist and allow the debtor to continue to cover up the scheme.

### **§ 101. Definitions**

(31) The term **"insider"** includes—
(B) if the debtor is a corporation—
    (i)     director of the debtor;
    (ii)    officer of the debtor;
    (iii)   person in control of the debtor;
    (iv)   partnership in which the debtor is a general partner;
    (v)    general partner of the debtor; or
    (vi)   relative of a general partner, director, officer, or person in control of the debtor;
(C) if the debtor is a partnership—
    (vii)   general partner in the debtor;

(viii)    relative of a general partner in, general partner of, or person in control of the debtor;

(ix)    partnership in which the debtor is a general partner;

(x)    general partner of the debtor; or

(xi)    person in control of the debtor;

39. Bankruptcy Fraud, 18 U.S.C. Section 157: In this matter the bankruptcy system was used to aid and complete the fraud, delay the investigation and confuse the victim Mona Dobben, thereby purposefully derailing Mona Dobben as a creditor, by use of the automatic stay to allow debtor to continue its fraud. If the bankruptcy system was used to aid the fraud, concealment and false statement may be charged under this section.

## 40. <u>AMERICAN HOME DECEPTION</u>

American Home executives managed multiple special purpose entities like American Home Mortgage Assets LLC, and used publicly traded Debtor entity companies resources and assets to run  privately owned companies of the executives.

In this case billion dollar intercompany borrowings were revealed and eggs were so scrambled that in the end no unscrambling was done. In this case their were and still are ongoing investigations by state/federal regulators concerning operations, etc, commingled funds – intercompany borrowings, incomplete schedules–frequent amendments in response to creditor questions, Debtor was "confused" about his assets and financial affairs.

41. This claim be superior to others claims who committed misconduct in this case directly related to Mona Dobben and her rights in this case. Outside bankruptcy law in common law, Ms. Dobben would have been entitled to a set off or a rescission claim against the Debtors and due to the trigger event wherein the loan was

seized and transferred to another entity, she has no such available remedy unless the

Court avoids that transfer and equitably subordinates that parties rights to those of

42. Mona Dobben.is entitled to equitable subordination under section 510(c) of the

Bankruptcy Code. However this is a secondary remedy available only after the Court determines

she has a claim.

**11 USC § 510.  Subordination**

    (a)  A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applicable nonbankruptcy law.

    (b)  For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

    (c)  Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--

        (1)  under principles of **equitable subordination**, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

        **(2)  order that any lien securing such a subordinated claim be transferred to the estate.**

43. In this case,  Debtor In Possession Wilbur Ross, Deutsche Bank, AHMA 2007-5

Trust achieved a  position of strength by helping each other block Mona Dobben  from  receiving

information that she was entitled to discover, which was  they were in control of the loan.

44. For engaging in inequitable conduct, the Court should equitably subordinate all of

their claims under section 510 of the Bankruptcy Code, which codifies the common  law

doctrine of equitable subordination and is grounded in the court's equitable  powers.

Section 510 of the Bankruptcy Code relies on established principles of equitable subordination and requires the court to determine on a case-by-case basis whether a claim should be subordinated. Using the well-established factors for finding equitable subordination, the district court concluded that (1) CVC had engaged in inequitable conduct, (2) such conduct resulted in injury and unfair advantage, and (3) equitable subordination was consistent with the provisions of the Bankruptcy Code.

45. The Trust parties all of which were very involved in this bankruptcy used their positions to withhold and block information (1) for the purpose of blocking Mona Dobben access to them thereby promting self-interest, (2) promoting interest of trust certificate holders in their capacity of a fiduciary, and (3) without recusing themselves from the discussions and determinations when it referenced borrowers claims wherein they had a direct interest in the outcome.

46. This was unclean hands, misconduct as a fiduciary, and under the Courts equitable powers, their claims, and all of them should be subordinated to Mona Dobben's claims.

47. **<u>Their conduct had the following specific adverse effects:</u>**

**<u>Lack of Disclosure</u>**. Because the trust and servicing parties, committee, and debtor attorneys  blocked Mona Dobben's access to important information the property was foreclosed by the parties hiding themselves, and leaving Mona Dobben to believe American Home owned her note, and unaware of the parties she could have fought back against.

48. **<u>Lack of Assistance</u>**. These parties hiding behind bankrupt American Home "listened and watched" as this 70 year old woman petitioned this Court knowing all the time they were the true  party in interest, and were silent to help her. Wells Fargo as master servicer, Deutsche Bank as Indenture Trustee, Wilbur Ross as DIP and purchaser of the servicing rights, and YCST as signatory on the trust. Instead all

remained silent and allowed a foreclosure with no loss mitigation or assistance to

Mona Dobben.

49. **<u>Conversion</u>**. Although the final foreclosure took place shortly after the final close

of the servicing unit to Wilbur Ross, the foreclosure was initiated and furthered

earlier. During this time the trust parties maintained silence in furtherance of this

action. Without the disclosure Mona Dobben remained unable to defend herself and

seek a resolution.

50. **<u>Conflict of Interest</u>**. Deutsche Bank, YCST, Wilbur Ross as DIP and purchaser of

the servicing rights, and YCST as signatory on the trust, actions created a conflict of

interest that jeopardized the ability of Mona Dobben to take affirmative actions or

protect herself defensively against the actions taken.

51. **<u>FRAUD</u>**. The trust parties took these actions to protect the ability to collect on

mortgage insurance with MGIC and possibly other levels of credit enhancements.

Disclosure or recognition of fraud in the origination would have voided those

policies.

52.  The **<u>Third Circuit dispelled any doubt that a breach of fiduciary duty by an

insider can form the basis for equitably subordinating a claim.</u>** The Third Circuit

held that the bankruptcy court's findings "make this a paradigm case of inequitable

conduct by a fiduciary as that concept has been developed by the case law." The

Third Circuit agreed with the district court that the subordination remedy should be

tailored, at the very least, to prevent *CVC* from realizing a profit on its claims

purchases.

**The Third Circuit stated that "a bankruptcy court should . . . attempt to identify the nature
and extent of the harm it intends to compensate in a manner that will permit a judgment to be
made regarding the proportionality of the remedy to the injury that has been suffered by those
who will benefit from the subordination."

53. This blocking of information prevented Mona Dobben from identifying the true

parties in interest holding the note, American Home Mortgage Assets LLC, AHMA

2007-5 trust as a Statutory Trust and separate legal entity, Deutsche Bank as

Indenture Trustee, Wells Fargo as Master servicer, and Michael Strauss, Alan Horn,

and Stephen Hozie, as managers of the trust.

54. These behaviors were "abuse of power," and "abuse of process" on the part of

these parties who maintained unfair advantage and control of the situation over Mona

Dobben. This Court should fashion a remedy to compensate Mona Dobben for

injurious acts of **fiduciaries in this case, and of this Court.**

55. **T**his Court should determine that the origination of the loan was based in fraud,

and the conversion of the property was illegal and done during the bankruptcy, and

the parties to this bankruptcy acted in an unconscionable and inequitable manner,

therefore substantial abuse and misuse of the bankruptcy process occurred, therefore

the remedies allowed should be priority claim.

In re Arm, 87 F.3d 1046 (9th Cir. 1996)
"We make clear, what we have not held before, that the indirect benefit to the debtor from a
fraud in which he participates is sufficient to prevent the debtor from receiving the benefits that
bankruptcy law accords the honest person. *See In re Ashley*, 903 F.2d 599, 604, n. 4 (9th
Cir.1990)."

In re Rose, 934 F.2d 901, 903 (7th Cir. 1991)
"Larceny is proven for 523(a)(4) purposes if the debtor has wrongfully and with
fraudulent intent taken property from its owner"

In re Jercich, 238 F.3d 1202 (9th Cir. 2001), *cert. denied*, 533 U.S. 930 (2001)
Although a simple breach of contract is not actionable under § 523(a)(6), "where an
intentional breach of contract is accompanied by tortious conduct which results in willful and
malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)." Tortious
conduct does not have to be independent of the breach of contract. Here, debtor was found to
have the "clear ability" to pay wages, but willfully "chose not to." "We hold...that under

*Geiger,* **the willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct**."

56. The AHM business model is rife with alter ego problems. This business model caused damage to Mona Dobben as the Debtor entity protected its own non debtor insider affiliated companies which were not part of the bankruptcy.

**ALTER EGO**
In re Audre, Inc., 216 B.R. 19 (9th Cir. B.A.P. 1997)
It is generally held that the separate corporate existence of a subsidiary will be recognized absent illegitimate purposes unless (a) the business transactions, property, employees, bank and other accounts and records of the corporation are intermingled, (b) the formalities of separate corporate procedures for each corporation are not observed, (c) the corporation is inadequately financed as a separate unit from the point of view of meeting its normal obligations; (d) the respective enterprises are not held out to the public as separate enterprises; and (e) the policies of the corporation are not directed to its own interest primarily, but rather to those of the other corporation. H. Henn and J. Alexander, Laws of Corporations §148 at 355-56 (3rd ed. 1983).

### 57. <u>LEGISLATIVE INTENT OF THE BANKRUPTCY CODE</u>

This Court should consider the legislative intent of the bankruptcy code and whether the strict interpretation is appropriate here.

In September of last year,  the Honorable Peter J. Walsh, the judge presiding over the NVF Company bankruptcy, issued an <u>opinion</u> regarding the application of section 502(b)(3) of the Bankruptcy Code.  The <u>opinion</u> is interesting in that the Court **decided not to apply a strict interpretation to a section of the Bankruptcy Code, but instead apply an interpretation that is consistent with legislative intent.**  This post looks at the issues that arise when a party seeks to disallow a claim under 502(b)(3), and look at Judge Walsh's decision not to invoke a strict interpretation **when doing so is contrary to the intent and purpose of the Bankruptcy Code**.

### 58. <u>11 U.S.C. §  506 Determination of secured status</u>

**(a)** An allowed claim of a creditor secured by a lien on property **in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be,** and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the

valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

59.  Mona Dobben asserts that she is attempting to recover property which may

belong  to the estate and this effort would be afforded an administrative priority

claim.  The parties associated with this loan acted in an improper manner putting the

estate at risk for no other reason than their own pecuniary gain to  collect on

insurance assets ( which the estate paid premiums for) while inflicting liabilities on

the estate in reference to this or no other reason but to collect on those funds.

***11 U.S.C. § 503. Allowance of administrative expenses***
**(b)** After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—
**(3)** the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—
**(B) <u>a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;</u>**
**(C) <u>a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;</u>**

60. **<u>CONCLUSION</u>**

Bankruptcy policy raises profound moral, financial, and philosophical issues. In this case,

Mona Dobben respectfully requests that this Court to use its equitable powers under 11 U.S.C. §

105, and interpret the bankruptcy code to effect justice in this case. The Bankruptcy Code is a

bare bones set of equitable principles in constant need of interpretation.  The bankruptcy court

can resort to substantive state law from its respective jurisdiction to fill the voids of the

Bankruptcy Code. A substantive-law-first approach follows the Erie doctrine, enables parties to

rely on laws from the governing jurisdiction to address gray areas of the Code, and reduces

subjective policy and statutory interpretation arguments.

61. The transaction was done while California Department of Real Estate had

determined AHM was insolvent. The failure to assist Mona Dobben began BEFORE the servicing

unit was sold to Ross, in September of 2007 (servicing records show) and was continued

afterwards. Ross as DIP and YCST as signatory on this trust refused to help Mona Dobben.  There

is no evidence that Deutsche Bank sitting on the creditors committee, and acting Indenture Trustee

on this trust, recused themselves from matters relating this loan.

62. This has been a tremendous hardship for Mona Dobben and she is bearing the cost

of flying from Arizona with her attorney to appear on top of all expenses already incurred in this

matter. A motion for summary judgment is unfair and will not effectuate any due process in this

matter. There are two sides of this story and Mona Dobben must be given her day in Court to

present her side of that story.

63.  Mona Dobben is now 70 years of age and her recollections are clear at times and

fuzzy at other times. She is confused about what happened and is still confused. She is sometimes

confused about what she knew then and what she understands now.  The deposition topics

and points were completely slanted to present the debtors positions with no rebuttal allowed by

plaintiff. We intend to vigorously rebut many assumptions at the hearing on December 9, 2009.

Respectfully submitted,

LAW OFFICE
DOUGLAS J. PETTIBONE

By: *Douglas J. Pettibone*

Tel: (714) 730-9091
Fax: (714) 245-7324
Pettibonelaw@hotmail.com
www.pettibonelaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of December, 2009, a copy of the foregoing Motion was emailed to:

Counsel for Debtors:
Pauline K. Morgan, Esquire
Young, Conaway, Stargatt & Taylor, LLP
1000 West Street, 17th Floor
P.O. Box. 391
Wilmington DE 19899-0391
Phone: 302-571-6600
Fax: 302-571-0453

Official Committee of Unsecured Creditors
Mark Indelicato, Esq.
Hahn & Hessen LLP
488 Madison Ave. 14th & 15th Floor
New York,  NY 10022

Joseph  M. McMahon Esq.
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Wilmington, DE 19801
Phone: 302-573-6491
Fax: 302-573-6497