# EXHIBIT G

**SUMMARY REPORT**
**on**

**950 N ELMHURST ROAD**
**MT. PROSPECT, ILLNOIS**

**As of July 3, 2009**

**Drive By Inspection**

Allstate Appraisal



Main Office
320 W. 202nd Street
Chicago Heights, Illinois 60411
Phone (708) 799-9000 Fax (708) 754-8504

September 1, 2009

Mr. Joseph Aronauer
Aronauer, Re & Yudell, LLP
444 Madison Avenue, 17th Floor
New York, NY 10022

Re: Commercial Building located at

950 N. Elmhurst Road/150 W. Rand Road
Mt. Prospect, Illinois

Dear Mr. Aronauer:

In accordance with your instructions, we completed a drive by inspection of the above captioned property on July 3, 2009, for the purpose of completing the appraisal analysis and reporting in Summary Report Format. There was no access and no contact or cooperation with the owner. Information on the subject was supplied by CB Richard Ellis (CBRE), which we have relied on in this analysis. All information on the subject is taken from public records, the client and CBRE. Factors related to easements, encroachments and environmental were reported to the client prior to the completion of the appraisal. No further information related to the above was provided by the client for use in the analysis. Comments and assumptions are made and stated within the report. The client is advised that a full inspection of the subject with access to the owner, income and expense documents, environmental documents and inspection for easements and encroachments may result in a significantly varying opinion of comparable selection and value range. This report will reflect our opinion of the As-Is market value of the Fee Simple Estate based on the limited inspection. The report will conform to the OCC appraisal standards, and the Code of Professional Ethics and Standards of Professional Practice of the Appraisal Institute.

This report will comply with the reporting requirements set forth under Standards Rule 2-2 (b) of the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Foundation, for a Summary Appraisal Report. As such, it presents only summary discussions of the data, reasoning and analyses that are in the appraisal process to develop the appraiser's opinion of value. Supporting documentation, reasoning and analyses are in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the stated intended use. The appraiser will not be responsible for unauthorized use of this report.



Allstate Appraisal

The subject property is appraised utilizing appropriate appraisal methodology. The self-contained report, which includes descriptions of the property (legal and physical), a neighborhood and highest and best use analysis, the approaches to value, certification assumptions and limiting conditions are only summarized herein. The report also contains the appraiser's qualifications and a glossary of common appraisal terms that may be utilized within the report.

The report, the certification, general assumptions and limiting conditions set forth all of the limiting conditions (imposed by terms of the assignment or the undersigned) affecting the analysis, opinions and conclusions.

We have made a thorough investigation and analysis of current market and economic factors in order to arrive at a sound opinion of market value. With due consideration given to the three traditional and recognized approaches to estimating market value and after adjusting for differences that influence value, we are of the opinion a reasonable estimate of AS-IS market value for the subject as of an only on July 3, 2009 is:

**ONE MILLION TWO HUNDRED FIFTY THOUSAND**
**($1,250,000.00)**

Respectfully submitted,
**ALLSTATE APPRAISAL, L.P.**

Douglas Roe
Certified Residential Real Estate Appraiser
IL #556.002283

Steven S. Albert, MAI, SRA
Certified General Real Estate Appraiser
IL #553.000219
IN #CG49400228

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

# CERTIFICATION

The undersigned certify that, to the best of their knowledge and belief:

1. The statements of fact contained in this report are true and correct.
2. The reported analyses, opinion, and conclusions are limited only by the reported assumptions and limiting conditions, and is the personal, unbiased professional analyses, opinions, and conclusions of the undersigned.
3. The undersigned have no present or prospective interest in the property that is the subject of this report and have no personal interest or bias with respect to the parties involved.
4. Our engagement in the assignment and our compensation for the assignment are not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.
5. The analyses, opinions, and conclusions are developed and this report has been prepared in conformity with the uniform standards of professional appraisal practice, the code of professional ethics of the appraisal institute and the requirements of the state of Illinois for state certified appraisers.
6. The use of this report is subject to the requirements of the appraisal institute relating to review by its duly authorized representatives and the state of Illinois relating to review by the real estate appraisal sub-committee of the Illinois real estate commission.
7. As of the date of this report, Steven S. Albert, MAI, has completed the requirements of the continuing education program of the appraisal institute.
8. No one other than the undersigned provided significant professional assistance to the appraisers, unless otherwise noted in this report.
9. Douglas Roe performed a drive by inspection of the subject property on July 3, 2009.
10. The appraisal assignment is not based on a requested minimum valuation, a specific valuation, or the approval of a loan.
11. The report was prepared by the inspecting appraiser under direct supervision of the co-signing appraiser. The co-signing appraiser accepts responsibility for all the contents of the report including value conclusions and limiting conditions and confirms that the certifications apply fully to the co-signing appraiser. The co-signing appraiser did not inspect the subject.

In view of the facts and factors mentioned herein and the analyses of data which have been considered in connection with this appraisal, it is the opinion of the undersigned that a reasonable estimate of AS-IS value for the subject property is:

**ONE MILLION TWO HUNDRED FIFTY THOUSAND**
**($1,250,000.00)**

**AS OF THE DATE:**
July 3, 2009

DOUGLAS ROE
CERTIFIED RESIDENTIAL REAL ESTATE APPRAISER
IL #556.002283

STEVEN S. ALBERT, MAI, SRA
CERTIFIED GENERAL REAL ESTATE APPRAISER
IL #553.000219
IN #CG49400228



Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

## TABLE OF CONTENTS

Summary of Salient Facts and Conclusions ........ 1

Summary of Salient Facts and Conclusions ........ 1

Subject Property Photographs ........ 2-4

Description of Subject Location ........ 5-11

Description of Subject Site ........ 12-19

Description of Subject Improvements ........ 20-23

Summary of Highest and Best Use ........ 24-26

Purpose, Function, Scope of Appraisal ........ 27

Market Value, Property Rights, Compliance, Competency ........ 28

Marketing and Exposure Time and Sales History ........ 29-30

Valuation Methodology ........ 30

Cost Approach ........ 31

Income Capitalization Approach ........ 32-40

Sales Comparison Approach ........ 41-51

Reconciliation and Final Opinion of Value ........ 52

General Appraisal Comments ........ 53-54

Assumptions and Limiting Conditions ........ 55-58

Glossary of Appraisal Terms ........ 59-61

Appraiser Qualifications. ........ 62-64

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

## SUMMARY OF SALIENT FACTS AND CONCLUSIONS

**PROPERTY APPRAISED:** One story commercial building built over a partial finished basement.

**PROPERTY RIGHTS APPRAISED:** Fee Simple.

**REAL ESTATE TAX NUMBER:** 03-27-307-024.

**SITE AREA:** 67,105 sq. ft. or 1.54 acres.

**ZONING:** B4 – Corridor Commercial District.

**FLOOD MAP:** Panel 170129 0208 J, dated 8/19/08 in Zone X.

**SITE IMPROVEMENTS:** The subject site is improved with the building, parking surface and concrete curbs and sidewalks.

**GROSS BUILDING AREA (GBA):** 24,180 sq. ft. GBA and 10,631 sq. ft. basement.

**LAND/BUILDING RATIO:** 2.8 : 1

**PARKING:** 87 spaces or 3.6 spaces per 1,000 based on above grade space.

**OWNERSHIP:** Per County Assessor records, ownership of the subject property is listed in the name of Park National Bank Trust.

**CURRENT SALE HISTORY:** The subject sold 1/27/94 for $2,550,000. The terms and conditions of the sale are not known but indications from the broker suggest interest other than the real estate were included.

**HIGHEST & BEST USE:**

**AS VACANT** - Commercial

**AS IMPROVED** – Commercial or current use

| | |
|---|---|
| **LAND VALUE AS THOUGH VACANT:** | NA |
| **VALUE ESTIMATES:** | |
| Cost Approach | NA |
| Income Capitalization Approach | $1,205,000.00 |
| Sales Comparison Approach | $1,325,000.00 |
| **FINAL VALUE ESTIMATE:** | $1,250,000.00 |
| **VALUATION DATE:** | July 3, 2009 |
| **INSPECTION DATE (Drive By):** | July 3, 2009 |



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**SUBJECT PROPERTY PHOTOGRAPHS:** 950 N. Elmhurst Rd front and 150 W. Rand Rd front.







Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**SUBJECT PROPERTY PHOTOGRAPHS:** Elmhurst Road looking north and south.



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**SUBJECT PROPERTY PHOTOGRAPHS:** Rand Rd looking west and east.





Allstate Appraisal 

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

## DESCRIPTION OF THE SUBJECT LOCATION

**Subject Location:** The subject property is situated on the west side of Elmhurst Road north of the intersection of Elmhurst Road and Rand Road in Mt. Prospect, Illinois all within the Chicago Metropolitan area. The subject is located in Wheeling Township in Cook County, Illinois. The following pages are the Chicago Metropolitan Area Map, Regional Data Comments, Community Location Map and Community Data Comments.

**Chicago Metropolitan Area Map:**

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Regional Data Comment:** The subject property is located within the eleven county Metropolitan Chicago area. Metropolitan Chicago is the "center" of the Midwest with an estimated current population of approximately 9,725,000 (2006). Its central geographical location within the United States has helped the area to become a major transportation, manufacturing, financial, service, communications, wholesale and retail center.

Chicago's historical development has been such that no major industry is dominant, resulting in an economic and industrial base that is well diversified. A look at the employment figures for northeast Illinois shows this economic diversification.

With such a diversified economic base, Chicago is less subject to cyclical and seasonal fluctuations than other metropolitan areas with less diversified economies. Historically, Chicago's growth can be attributed to its central location. Chicago is one of the major hubs for air, rail, trucking and shipping facilities in the United States. In 2007, O'Hare International Airport passenger volume was 76,182,025 and 1,690,742 tons of cargo, making it among the busiest airports in the United States. Chicago's rail freight industry handles millions of tons of manufactured-goods per year, 37 rail routes radiate from the region.

Chicago is also the nation's largest trucking center with an excess of 200 truck terminals. This is due to the large number of multi-lane interstate and intrastate highways which traverse the area. With access to the Great Lakes, the Mississippi River and the St. Lawrence Seaway, Chicago is one of the leading ports. Many businesses headquarter in Chicago because of its central location. A vast number of the Fortune 500 companies are based here including: Ameritech, Amoco, Borg Warner, Brunswick, Navistar International, Abbott Labs, Quaker Oats, Sara Lee, Sears Roebuck, Montgomery Ward, Morton Thiokol and UAL Corp.

Chicago is renowned world-wide for its financial institutions. It has more than 130 domestic banks and more than 70 foreign banks. Chicago is also home to a large percentage of the 600+ foreign-owned firms located and headquartered in Illinois. These companies hold more than 25 billion dollars in tangible assets in the State of Illinois. Chicago is also home to five major exchanges that are as follows.

1. Chicago Board of Trade
2. Chicago Mercantile Exchange
3. Chicago Board of Options Exchange
4. Mid America Commodity Exchange
5. Chicago Stock Exchange

With emphasis on education across the United States, the City of Chicago has introduced the largest school reform program in the nation which is expected to raise the educational level of its public school students. This program will help in guaranteeing a skilled workforce in future years. The Chicago area is also known for its colleges and universities, most notably The University of Chicago, Loyola and Northwestern University.

Chicago is an attractive city not only for economic reasons, but also for cultural and recreational reasons. An extensive network of public parks, beaches, museums, theaters, zoos, golf



Allstate Appraisal

courses, and numerous other educational and recreational facilities make it a successful city capable of satisfying the needs of its population even though it has a heterogeneous socioeconomic composition.

Over the last several years, Chicago experienced several areas of booming and explosive residential sale activity. Many areas had top performance in average home sale price, median home sale price, low marketing times and active transaction levels. Supply and demand were generally stable with some areas of high demand. As with several other major markets across the country, the Chicago area is experiencing a residential real estate slow-down with many sub-markets showing decreasing average sale prices, increasing marketing times and high inventory levels with low demand. Bank owned and foreclosures are becoming more common especially in those communities that experienced explosive growth and development in the peaks of 2006. In 2008, the downturn escalated with the impact of the sub-prime mortgage crisis and the failure of many banks and the mortgage giants Fannie Mae and Freddie Mac. Further there are daily reports of industries and companies requesting government help to respond to a credit and market confidence problem. As well, the broader economy continues to deteriorate. With the financial industry in turmoil it appears market conditions in many sectors including retail, industrial, office and hotel markets also continue to decline due to weak sales, lack of credit, reduced demand and consumer cut backs. This is a national crisis and Chicago is not alone in these trends, but given the City's diversified economic base, transportation system, skilled labor and reasonable energy costs, the City of Chicago appears to weather these market changes as well as other major markets in the nation.

At best, we foresee stability to a possible continuation in the decline of market indicators.

**Allstate Appraisal**



Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Community Location Map:**

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Community Data Comment:** The subject property is located in the northwest suburb of Chicago in the City of Mount Prospect. Mount Prospect is approximately 24 miles northwest of the Loop central business district. The approximate neighborhood boundaries are Euclid Avenue to the north, Oakton Street to the south, Wolf Road to the east and Arlington Heights Road to the west. The community is bordered by Prospect Heights to the north, Des Plaines and Elk Grove Village to the south, Des Plaines to the east and Arlington Heights to the west.

The subject site in its immediate market is bordered by residential land use to the north and commercial land use on all other sides. There are several primary commercial thoroughfares in the subject's area that are developed with a wide mix of commercial improvements. Commercial development is concentrated along Golf Road, Elmhurst Road, Rand Road, Northwest highway and Algonquin Road. Retail development in the community consists of a mix of local and national retailers situated in a range of property types including newer strip centers, freestanding retail buildings, and mixed-use properties with retail units on the first floor and apartments on the upper floors, regional centers and mall. There is a mix of newer and older structures. The subject is located across the street from Randhurst Mall with approximately one million square feet of space and tenants such as Carson Pirie Scott, Costco, Home Depot and Steve & Barry's. Immediately surrounding the subject is Jiffy Lube, McDonalds Restaurant and Firestone Auto Center.

The subject is located in the northern portion of Mount Prospect at the intersection of Rand Road and Elmhurst Road directly across the street from Randhurst Mall. The immediate streets are heavily travelled commercial thoroughfares. Average daily traffic counts on Rand Rd are 25,200 and 18,700 on Elmhurst Rd. There is a traffic light on the subject east site line along Elmhurst Road that permits entry in to the mall and the subject site.

Access to transportation linkages is good with many arterial streets. The streets are mostly vehicular in nature. Interstate 90 is located to the south of the community and Interstate 294 is located to the east of the community Commuters have access to surface level buses.

The following demographic statistics on the subject community (Mount Prospect) is based on the 2000 US Census:

| Population | 56,265 |
|---|---|
| Median Age | 37.2 |
| Median Income | $67,262 |
| Households | 21,585 |
| Housing Units Total | 21,952 |
| Housing Units Owner Occupied | 72% |
| Housing Units Rent Occupied | 28% |
| Age Range of Housing Units | New – 100+ |



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

The following residential sale statistics on the subject community is based on sale statistics from the Multiple Listing Service for detached single family property types for the last twenty four months separated into two periods of twelve months:

Detached Single Family

| | Date: 7/08 to 7/09 | Date: 7/07 to 7/08 |
|---|---|---|
| High Sale Price | $830,000 | $850,000 |
| Low Sale Price | $150,000 | $184,000 |
| Median Sale Price | $305,000 | $378,000 |
| Average Sale Price | $323,000 | $355,000 |
| Days on the Market | 153 | 130 |
| Number of Sales | 238 | 235 |

The above data reveals a downward trend over the last twenty four months. Marketing time is up, but the number of transactions is consistent. Both and average and median sale prices are down indicating a downward turn in property values over this time frame. The low and high sales are generally consistent. These results are fairly typical of many other communities in the Chicago area. In the near future, we foresee stability at best to a possible continuation in the decline of the market indicators.

We reviewed CoStar Comps sales data since January 1, 2006 for retail shopping centers within a five mile radius of the subject. The purpose of the analysis is to establish a trend relative to commercial/retail sales in the general area.

Commercial Sales Statistics:

**Comps Statistics**

| | Low | Average | Median | High | Count |
|---|---|---|---|---|---|
| Sale Price | $175,000 | $3,984,126 | $1,125,000 | $61,652,000 | 97 |
| Center Size | 414 SF | 21,913 SF | 6,022 SF | 269,763 SF | 98 |
| Price per SF | $31.93 | $182.16 | $218.99 | $1,771.79 | 96 |
| Actual Cap Rate | 6.25% | 6.61% | 7.06% | 7.68% | 8 |
| Days on Market | 8 | 186 | 146 | 698 | 35 |
| Sale Price to Asking Price Ratio | 47.10% | 85.15% | 84.24% | 108.33% | 26 |

Totals

| Sold Transactions | Total Sales Volume: | $387,438,183 | Total Sales Transactions: | 99 |
|---|---|---|---|---|

Survey Criteria

Location: Location method - **Radius**; Radius - **5 mile radius from 950 n elmhurst rd, mt prospect, il**

Basic Criteria: Sale Status - **Sold**; Property Type - **Retail**; Building Park - **Shopping Center**; - **Exclude all Portfolio Sales**. - **Exclude all Multi-Property Sales**. - **Exclude all Condo Sales**. Sale Date - **from 1/1/2006**; - **Include Public Record Comps**



Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

Sales Trend:

| | Current Survey 07/01/2006 - 06/15/2009 Sold Transactions |
|---|---|
| Number of Transactions | 95 |
| Total Dollar Volume | $373,590,183 |
| Total Bldg Square Feet | 1,867,386 |
| Total Land in Acres | 187.33 |
| Total Land in SF | 8,160,095 |
| Average Price | $4,016,755 |
| Average Number of SF | 20,521 |
| Average Price Per Bldg SF | $201.34 |
| Median Price Per SF | $221.76 |
| Average Number of Acres | 2.13 |
| Average Number of SF (Land) | 92,729 |
| Average Price Per Unit | |
| Median Price Per Unit | |
| Average Number of Units | |
| Actual Cap Rate | 6.62% |

Survey Criteria

Location: Location method - **Radius**: Radius - **5 mile radius from 950 n elmhurst rd. mt prospect, il**

Basic Criteria: Sale Status - **Sold**; Property Type - **Retail**; Building Park - **Shopping Center**; - **Exclude all Portfolio Sales**; - **Exclude all Multi-Property Sales**; - **Exclude all Condo Sales**; Sale Date - **from 1/1/2006**; - **Include Public Record Comps**

The results over this period indicate a decrease in sales activity, a decrease in dollar sales volume, a decrease in the number of sales (transactions) and a decrease in the average sale price per square foot. In the Trend Report for Average Price per SF, recent quarters actually show higher levels in price per SF, but it is based on very few sales (ex. 2 or 3 sales per quarter). The less data, more unreliable the figures are. The key point of this analysis is not necessarily the numbers reported, but the overall trend. Our findings indicate the commercial sales activity reflects a downward trend in the general market area around the subject.



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

In summary, the subject area has experienced a downward turn in the market as has many other communities in the Chicago area. We foresee stability at best to a possible continuation in the decline of market indicators.

## DESCRIPTION OF THE SUBJECT SITE

**Legal Description:** The legal description taken from the Title Insurance document supplied by the client.

LOAN POLICY (1992)
SCHEDULE A (CONTINUED)

ORDER NUMBER 6707605 POLICY NUMBER: 72107-70454291

PROPERTY DESCRIPTION

THE LAND REFERRED TO IN THIS POLICY IS DESCRIBED AS FOLLOWS

PARCEL 1
LOT 1 IN RAND - ELMHURST SUBDIVISION BEING A SUBDIVISION OF PART OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN THE VILLAGE OF MT. PROSPECT, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 18, 1968 AS DOCUMENT 20707569 IN COOK COUNTY, ILLINOIS

PARCEL 2
EASEMENT FOR DRIVEWAY PURPOSES, INGRESS AND EGRESS AND UNDERGROUND UTILITIES FOR THE BENEFIT OF PARCEL 1 AFORESAID, AS CREATED BY DEED FROM F. C. BREHM, AS TRUSTEE UNDER TRUST AGREEMENT DATED OCTOBER 1, 1958 AS KNOWN AS TRUST NO. 580 TO THE FIRESTONE TIRE AND RUBBER COMPANY RECORDED JANUARY 18, 1965 AS DOCUMENT NO 19358029, OVER

THE SOUTHWEST 10 FEET AS MEASURED PERPENDICULAR TO THE SOUTHWEST LINE (EXCEPT THE SOUTHEAST 45 FEET THEREOF) THE NORTHWEST 25 FEET OF THE SOUTHEAST 45 FEET AS MEASURED PERPENDICULAR TO THE SOUTHEAST LINE, AND THE WEST 25 FEET OF THE EAST 45 FEET LYING WEST OF THE WEST LINE OF ELMHURST ROAD (EXCEPT THE AFOREDESCRIBED SOUTHEAST 45 FEET THEREOF) OF THE FOLLOWING DESCRIBED TRACT OF LAND

THAT PART OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS

COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF RAND ROAD WITH THE EAST LINE OF SAID EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, SAID POINT OF INTERSECTION BEING 198.97 FEET NORTH OF THE SOUTH LINE OF SAID SECTION 27 THENCE NORTHWESTERLY ALONG THE SAID CENTER LINE OF RAND ROAD, 439.90 FEET; THENCE NORTHEASTERLY ON A STRAIGHT LINE THAT IF EXTENDED WOULD INTERSECT THE EAST LINE OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SAID SECTION 27 AT A DISTANCE OF 439.93 FEET NORTH OF THE INTERSECTION OF THE SAID EAST LINE WITH THE CENTER LINE OF RAND ROAD, FOR A DISTANCE OF 170.23 FEET TO THE POINT OF BEGINNING;

THENCE NORTHWESTERLY AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, A DISTANCE OF 189.03 FEET, THENCE NORTHEASTERLY AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, A DISTANCE OF 249.60 FEET TO THE POINT ON THE AFORESAID EAST LINE OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27; THENCE SOUTHWARD ALONG THE SAID EAST LINE A DISTANCE OF 205.00 FEET TO THE POINT BEING 439.93 FEET NORTH OF THE INTERSECTION OF THE SAID EAST LINE OF THE CENTER LINE OF RAND ROAD, THENCE SOUTHWESTERLY, A DISTANCE OF 170.27 FEET TO THE POINT OF BEGINNING (EXCEPTING THEREFROM THAT PART THEREOF HERETOFORE DEDICATED FOR PUBLIC HIGHWAYS) IN COOK COUNTY, ILLINOIS

**Real Estate Tax Identification Number(s):** The subject is identified by the following Parcel Identification Number (PIN): 03-27-307-024

| | |
|---|---|
| 2007 Assessment - | $656,925 |
| 2007 Real Estate Taxes - | $139,425.93 |

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

| | |
|---|---|
| 2008 First Pass Assessment - | $656,925 |
| 2008 Real Estate Taxes - | N/Av |

**Site Description:** The subject site consists of an irregular shaped, interior parcel of land with 136.35± feet of frontage along the west side of Elmhurst Road and 191.48± feet of frontage along Rand Road. We do not have a survey. Based on assessor records, the subject site contains 67,105± square feet or 1.54 acres, more or less. Site improvements consist of the building, asphalt parking surface and concrete curbs and sidewalks along the front site area. The subject site is served by municipal water and sewer and private electric and gas services.

The subject site is identified on the following tax map from Sidwell Maps.

**Sidwell Tax Map:**

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Plat of Survey:**



Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Zoning:** Based on the information from the Zoning Map, it appears the subject is zoned B4 – Corridor Commercial District. The subject uses appear legal under B4 or an extension to other classes (ex. B3). See page 16.

B4 Setbacks:

| | |
|---|---|
| Front Yard | 30 feet |
| Side yard | 10 feet |
| Corner side yard | 30 feet |
| Rear yard | 20 feet |

B4 Height: 3 stories or thirty feet

B4 Lot Coverage: 75 % (total area of all buildings, structures and parking lots)

B4 Parking: Retail <30,000 sq. ft. or Office is 4/1,000 sq. ft. for parking.

No defined FAR.

Due to the multiple aspects of a zoning ordinance (specific use, parking, building height, setbacks, maximum floor area ratios, use, etc.) complete verification of the subject's status is subject to an inspection by the qualified representative of the city or village. The subject has finished basement area, which we assume is minimally usable (or legal) in conjunction with the other office space on the main level. The subject appears legal non-conforming due to parking with only 87 spaces indicated. We assume the subject is minimally legal non-conforming and the building is replaceable in the same footprint and use, if destroyed (ex. fire, tornado). The local zoning map is below:



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Zoning Definitions per the Mount Prospect website:**

Village of Mount Prospect
Zoning Definitions

| | B-3 COMMUNITY SHOPPING DISTRICT | B-4 CORRIDOR COMMERCIAL DISTRICT | B-5 CENTRAL COMMERCIAL DISTRICT |
|---|---|---|---|
| PURPOSE | Provides a wide range of uses for daily and occasional shopping and is located along major arterial roads | Intended to accommodate motorist-oriented commercial activities | The "downtown core" is intended to accommodate retail and specialty shops |
| PERMITTED USES | Any use permitted in the B-2 district plus the following: Antique shops; art/school supply stores; art shops and studios; automobile accessory stores; banks; bicycle sales; business machine sales/supply; camera stores; carpet retail; china/glassware stores; clothing/costume rental; nonprofit clubs/lodges; coin stores; computer sales; dairy products; department stores; educational services; electrical and household appliance stores; furniture stores; furriers; home improvement stores; interior decorating shops; jewelry stores; lawn and garden; leather goods stores; libraries; liquor stores; locksmith; medical clinics; music stores; restaurants; secondhand; sporting goods; theaters; travel agencies. | Any use permitted in the B-3 district plus the following: Amusement establishments; automobile garages, automobile repair and service stations; automobile sales; car wash; commercial greenhouses and nurseries; contractors' showrooms and shops; medical and research laboratories; parking lots and structures; radio and television stations, studios and towers; trade or vocational schools. | Any use permitted in the B-3 district plus the following: Dwelling units located above the first floor; hotels and motels; offices, including business, professional, nonprofit and governmental offices. |
| CONDITIONAL USES | Amusement establishments; animal hospital; automobile repair/sales; car wash; catering; daycare; drive-thrus; health clubs; hotels; medical laboratories; parking lots; planned unit development; ratio/i.e.; community centers. | Amusement establishments; archery ranges, shooting galleries; automobile sales; boat showrooms/sales/repair; building material and products; contractor' construction offices; daycare centers; drive-through and drive-in establishments; hotels and motels; limited production, assembly or manufacturing on-premises; machinery sales; motorcycle, snowmobile, or personal watercraft sales; planned unit development; public utility and service uses; stadiums, auditoriums and arenas; theaters; Trailer and camper sales and rental; truck sales, rental and repair. | Amusement establishments; animal hospital; automobile garage; automobile repair and service stations; automobile sales; car wash, catering services; convention and exhibition halls; daycare centers; drive-through and drive-in establishments; dwelling units on ground floor; funeral homes; game rooms; outside display and sales of products; outside service areas; commercial parking lots or structures; planned unit developments; public utilities and services; radio and television stations, studios and towers; commercial recreation and community centers; transportation depots. |



Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Flood Zone:** According to FEMA Flood Map #170129 0208 J, dated 8/19/08, the subject appears Zone X. The Real Estate Appraiser's are not flood certification experts and the client should verify the exact location with a Flood Certification Professional. All verification should be made prior to the identified Appraisal Function stated in the report. The flood map from Transamerica is below:

**Allstate Appraisal** 

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Aerial Location Photograph:**





Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Site Comment:** A plat of survey was provided. Site area was based on assessor records and we provided the tax map and survey for a visual of the site. The client should obtain a current plat of survey prior to their decisions regarding the subject which addresses the easements noted in the title document.

There are multiple easements reported for the subject and identified in the addendum of this report. The client should reference five pages in the addendum, each titled Freedom Title Corporation and indicating sixteen line items for their review. The client is advised to confirm and verify all components of the easements, grants and encroachment. The survey appears to mention two easements and not all items found in the title policy were noted on the survey. The client should full verify. The title document references an easement along Rand Road, but we do not see it on the survey. The notable easements pertain to the ingress/egress easement along the east side of the site (see survey) and the public utility easement through the middle of the site (see survey). According to the title document, there is no impact on the building from the easement in the middle of the site; however, we do not have information that identifies the impact on the subject site as vacant. A conversation with Consuelo from the Mount Prospect building office indicated construction on easements does not comply with code, but the ordinance she cited only referenced residential. We cannot confirm this component and the client did not clarify otherwise. The client was advised of all factors relating to easements prior to completion. For the purpose of the appraisal, we assume the easement in the middle of the site WOULD NOT prevent the subject from being developed; however, it is reasonable to anticipate that some impact would exist such as added cost during construction that could minimize future problems due to the easements existence as well as possible miscellaneous costs and inconveniences. Finally, there is reference to an easement along the northeast side of Rand Road, but this does not appear on the survey.

If an easement exists along the west site line or Rand Road and it extend beyond setback lines, there could be an additional impact to the site. For the purpose of the appraisal, we assume the existence of any easement along Rand Road DOES NOT extend any further than Village cited setbacks.

While it is evident there are issues related to easements with the subject site, the full effect is not known and the client was advised of this prior to completion.

Evidence was found that could suggest the subject site might be impacted by a leaking underground storage tank from the neighboring auto service center site. We do not have any EPA information in this regard nor did the client. Our due diligence revealed documentation from a prospective buyer who cited the possibility. The client was advised of this finding prior to completion of the appraisal and unable to provide clarification. For the purpose of the appraisal, we assume there are NO environmental issues with the subject. The client should arrange for an environmental inspection.

Full verification of site conditions are subject to inspection by the appropriate professional and/or City or Village representative. The client should obtain a current plat of survey and verify the existence of any deed restrictions prior to the identified Appraisal Function stated in the report.

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

## DESCRIPTION OF THE SUBJECT IMPROVEMENTS

**Subject Improvement:** The subject-property consists of an approximately 41-year-old, one-story, masonry-constructed, commercial building built over a partial basement foundation containing 24,180± square feet of gross building area, above grade (23,280 + 900). There is an additional 10,631 sq. ft. of finished basement area. Total building area is 34,811± sq. ft. both first and basement level combined. We understand the basement is fully finished office space. The interior of the subject includes two office units on the east side of the building, two retail units on the west side of the building and office space in the basement.

Building layout and size is reported as follows:

- 150 W. Rand & 950 N. Elmhurst – 23,280 sq. ft.
- Basement Office – 10,631 sq. ft.
- Dock – 900 sq. ft.

General interior finishes and condition are assumed average or typical of the area due to the lack of interior inspection.

**Occupants/Units:** The following is the reported tenant or unit breakdown.

- Darkside Tanning – 1,600 sq. ft. located in the 150 W. Rand address.
- Greg Hahaj Personal Training – 6,700 sq. ft. located in the 150 W. Rand address.
- Farmers Insurance – 1,000± (estimate) sq. ft. located in the 950 N. Elmhurst address.
- TMP Investments – 2,100 sq. ft. located in the 950 N. Elmhurst address.
- Vacant Office – 11,650 sq. ft. (estimate) located in the 950 N. Elmhurst address (former owners unit).
- Vacant Office – 10,631 sq. ft. located in the basement under the 150 W. Rand address (former owners unit).

Net Finished Area is approximately 33,681 sq. ft. The net area is derived from the pro forma rent roll completed by CB Richard Ellis.

Rentable area based on above grade space is approximately 23,050 sq. ft.

**Condition of the Improvements:** The subject was assumed average in condition and maintenance. No major repair needs were assumed to exist.

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Inspection Comment:** We did not gain access to the subject building. The subject inspection is based on an exterior view only. The information on the subject is taken from the client, the information supplied by the broker and public records.

Electrical, heating, cooling, plumbing, water supply, sewers, and other mechanical equipment are not specifically tested but are assumed to be adequate and in good working order, unless stated otherwise. Private water wells and private septic systems are assumed sufficient to comply with all governmental health safety standards. No liability is assumed for the soundness of structural members since no engineering tests are made in this area. The roof(s) of structures described herein are assumed to be in good repair unless otherwise noted.

Comments regarding physical condition are to familiarize the reader with the property. If the client has any concern regarding structural, mechanical or protective components of the improvements described herein, or the adequacy or quality of sewer, water or other utilities, experts in these disciplines should be retained before relying upon this report.

**Apparent or Reported Defects:** Standard appraisal procedures deal with the apparent physical condition and do not extend to search and test procedures for hidden defects. In this instance, we advise the client that the inspecting appraiser was not permitted access to property. To properly ascertain the existence of hidden defects, the client must arrange an inspection by a qualified contractor and/or inspector. The appraiser's would recommend an inspection, when readily apparent indicators suggest the possibility of hidden defects. The value reflected elsewhere herein is based upon observed condition. If any hidden defects are present, the market value results may be affected. We reserve the right to revision, if we deem necessary, if property defects are revealed or reported at a later date.

Allstate Appraisal 

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Building Diagram:** First Floor – Scanned from CB Richard Ellis Offering Memorandum.



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Building Diagram:** Basement – Scanned from CB Richard Ellis Offering Memorandum.

950 N. Elmhurst Rd.
Mt. Prospect, Illinois

Basement Plan



Allstate Appraisal 

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

## SUMMARY OF HIGHEST AND BEST USE

**Highest and Best Use:** The Dictionary of Real Estate Appraisal, (3rd Edition), published by The Appraisal Institute, defines highest and best use as follows:

> *The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria that the highest and best use must meet are: legal permissibility, physical possibility, financial feasibility, and maximum profitability. (Pg 171)*

Since the use of land can be limited by the presence of improvements, highest and best use is determined separately for the land ***as though vacant*** and available for development and for the property ***as improved.***

Land has limited value unless there is a present or anticipated use. The amount of value depends on the nature of the land's anticipated use, according to the concept of surplus productivity. Among all reasonable, alternative uses, the use that yields the highest present land value, after payments are made for labor, capital, and coordination, is generally regarded as the highest and best use of the land as though vacant.

Accordingly, the highest and best use of the land, as if vacant and available for development, may be different from the highest and best use of the improved property. This will be true when the improvement is not an appropriate use and yet makes a contribution to total property value in excess of the value of the site.

Moreover, the determination of a property's highest and best use set forth in an appraisal may not conform to the existing use. In estimating highest and best use, there are essentially four stages of analysis:

1. Permissible (Legal) Use - What uses are permitted by zoning and deed restrictions on the site in question?
2. Physically Possible - What uses are physically possible on the site in question?
3. Financially Feasible - Which legally permissible and physically possible uses will produce a net return to the owner of the site?
4. Maximally Productive - Among the feasible uses, which use will produce the highest net return or the highest present worth?

The above tests are applied to the subject property both as vacant and as an improved property as described in the following pages. After eliminating potential uses for the subject property by applying each test, a highest and best use of the subject property as vacant and improved is indicated.

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Highest and Best Use "As Vacant"**

1. **Legal Permissibility** - Legal permissibility pertains to legal restrictions as they apply to the subject property. Legal restrictions are of two types: private and public restrictions. Private restrictions may refer to deed restrictions and/or easements. Public restrictions may include: zoning ordinances, general city ordinances, state laws, and federal laws. In this instance, there easements on the subject site (see comments and assumptions on page 19). The ingress/egress easement along the east site line impacts development potential of the subject site beyond the 30 foot building line. There is also the easement that runs north to south through the middle of the site. The assumption is made based on comments on page 19 that this area will not prevent the subject from being developed, but some hindrance to development would be expected. Zoning also requires business establishments shall be retail or service and deal with customers. Based on this information it seem reasonable a retail use of the subject is legally permissible.

2. **Physically Possible** - The next constraint imposed on the highest and best use of the property is dictated by the physical aspects of the site itself. The site location, size and allowable density are among the most important determinants in value. The size of the lot, when considered within the provisions of the zoning, had a considerable influence on its ultimate development. The permitted size determines how the site can be developed. In general, the potential for maximizing economies of scale and flexibility in development typically happen with larger sites. In B4, maximum site coverage of building, structures and parking cannot exceed 75%. Factoring setbacks known for the subject as well as the limited information on easements, developable area of the site could be less than 50,000 square feet. When parking is factored, it is possible a retail structure can be developed, but likely smaller than the existing structure.

3. **Financially Feasible** - After applying the tests of legal permissibility and physical possibility, several potential uses of the site have been eliminated. The next test concerns financial feasibility. A use is financially feasible if it produces a positive return. In analyzing financially feasible uses of the subject property as vacant we consider the return on the legally permissible and physically possible uses as they relate to all of, but not limited to, the following factors:

    - Growth trends in the subject area.
    - Supply and demand of specific property types.
    - Overall development mix of the subject neighborhood.
    - General demographics of the subject area.
    - Current or recent new construction activity.
    - Availability of vacant land or vacant buildings.

    The subject street is commercially developed and has a high traffic pattern. New development activity was assumed in process in and around the date of valuation. Several of the legally permissible and physically possible uses are financially feasible; however, given the commercial uses under the zoning class and the existence of commercial land use of the surrounding properties, it appears a retail development was financially feasible.

4. **Maximally Productive** - Of the legally permissible, physically possible, and financially feasible uses, the use that provides the highest rate of return is the maximally productive use. Based upon our estimations of potential returns for the legally permissible, physically possible and financially feasible uses, retail development was the maximally productive use of the subject site "as vacant".

**Highest and Best Use "As Improved":** The highest and best use of the property as improved is analyzed for various reasons. The analysis identifies the use expected to produce the highest overall return. Leaving the improvement as is, remodeling, renovation, conversion and demolition of the existing improvements are considered. Another reason for identifying the highest and best use as improved is to identify comparable properties. The highest and best use as improved should be the same for each comparable as for the subject property.

1. **Legal Permissibility** - The uses in the subject property appeared legal conforming uses. The subject may be legal non-conforming due to parking.

2. **Physically Possible** - The improvement is adequately situated on the site and assumed average in condition. Access and visibility are average and parking is available but slightly less than other developments in the area. Remodeling, renovation, conversion, and demolition of the improvements were considered and none were assumed necessary at the time of valuation. The subject property appeared physically possible.

3. **Financially Feasible** – At the time of valuation, was mostly vacant with one occupying tenant not paying rent per the broker. A building like the subject with one large space including finished basement space is typical to owner occupancy versus tenant occupancy. In this case, the large unit is what is vacant. Most rent paying tenants look for above grade space and the tenant pool for such below grade space is limited. While s tenant may exist, the basement will not generate rent near those unit located above grade. Additionally, both large spaces on the first floor and basement may require a higher marketing period given their size in this market. Market conditions are slow and tenants requiring such levels of space are more limited.

4. **Maximally Productive** - The maximally productive use of the subject property as improved is professional marketing to lease the vacant space in an effort to occupy and generate an income stream sufficient to cover operating expenses.

The highest and best use of the subject as improved is the current use at the time of valuation.

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**SUMMARY OF APPRAISAL PURPOSE, FUNCTION, SCOPE OF APPRAISAL, ETC.**

**Appraisal Purpose:** To estimate the market value of the fee simple interest in the subject property described herein as of and only on July 3, 2009.

**Appraisal Function:** It is our understanding the appraisal will assist the client, Mr. Joseph Aronauer, in an estimate of market value for the subject property for foreclosure purposes only. The use of this report is for the stated client only for the stated purpose only. Use of this report by any other person or entity or for any other reason without the written consent of the appraisers is prohibited. We are not responsible or liable for unauthorized use of this appraisal.

**Scope of the Appraisal Process:** In the process of completing this appraisal, we will complete the following procedures **when applicable**:

1. Inspect the subject site and improvements thereon;
2. Conduct an analysis of the Chicago area, the community in which the property is located and the immediate neighborhood of the subject;
3. Estimate the value of the subject site as vacant;
4. Estimate the cost new of all existing improvements;
5. Estimate the depreciation to the improvements from all causes, resulting in a depreciated value estimate of the improvements;
6. Estimate the market value of the subject property by adding the depreciated value of the existing improvements to the value of the land as if vacant;
7. Conduct a search for (and verification) and analysis of sales of similar improved properties;
8. Estimate the market value of the subject property by reference to our analysis of comparable improved sales;
9. Conduct an analysis of market rental data and estimated the potential gross income from the rental of the subject property. Estimated the appropriate expenses to be deducted. resulting in the stabilized net operating income for the subject property. Capitalized the net operating income of the subject property at a market-supported rate, resulting in an indication of market value by the income approach.
10. Reconcile the appropriate approaches to value for a final value estimate;
11. Prepare a limited scope letter report summarizing all of our analyses and conclusions, which are based on more detailed data, and analyses retained in our files.

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Definition of Market Value:** "The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. Buyer and seller are typically motivated.
2. Both parties are well informed or well advised and acting in what he/she considers his/her own best interest.
3. A reasonable time is allowed for exposure in the open market.
4. Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto.
5. The price represents a normal consideration for the property sold, unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

**Property Rights Appraised:** The fee simple estate is being appraised. It is defined in The Appraisal of Real Estate, Tenth Edition (Appraisal Institute) as: "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat."

**Compliance:** To the best of our knowledge, the analyses, opinions and conclusions in this report, are prepared in conformity with Title XI of the Federal Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) and its regulations, as well as the Uniform Standards of Professional Appraisal Practice (USPAP) of the Appraisal Foundation and the Appraisal Institute.

**Competency:** From our understanding of the assignment to be performed, which we have addressed in the Scope and Intended Use of this Appraisal, it is our opinion we are competent to perform this appraisal, based on:

1. The appraisers have full knowledge and experience in the nature of this assignment.
2. The necessary and appropriate steps have been taken in order to complete the assignment competently.
3. There is no lack of knowledge or experience that would prohibit this assignment from being completed in a professional competent manner or where an unbiased or misleading opinion of value would be rendered.

**Extraordinary Assumptions:** An extraordinary assumption is defined by USPAP (2005 Edition, The Appraisal Foundation) as: "An assumption, directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinions or conclusions. Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of data used in an analysis". An extraordinary assumption may be used in an assignment only if:

1. It is required to properly develop credible opinions and conclusions;
2. The appraiser has a reasonable basis for the extraordinary assumption:
3. Use of the extraordinary assumption results in a credible analysis; and
4. The appraiser complies with the disclosure requirements set forth in USPAP for extraordinary assumptions.

We did not gain access to the subject. We have relied on others for information on the subject building's layout, unit count and unit sizes. We assume all the information reported is accurate and complete. Additionally, assumptions were made regarding the subject site pertaining to easements, encroachments and environmental factors. The subject has multiple easements which NONE were assumed to prevent development of the subject as vacant. We reserve the right to revision, if we deem necessary, if future information on the subject is present that would suggest our assumptions were not accurate.

**Hypothetical Conditions:** A hypothetical condition is defined by USPAP (2005 Edition, The Appraisal Foundation) as: "That which is contrary to what exists but is supposed for the purpose of analysis. Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis". A hypothetical condition may be used in an assignment only if:

1. Use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison;
2. Use of the hypothetical condition results in a credible analysis; and
3. The appraiser complies with the disclosure requirements set forth in USPAP for hypothetical conditions.

This appraisal employs no hypothetical conditions.

**Marketing Time and Exposure Time:**

Exposure Time – The estimated length of time the property of interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. Source: Statement 6 (SMT6) of USPAP

Marketing Time – An opinion of the amount of time it might take to sell a real or personal property interest at the concluded market value level during the period immediately after the effective date of the appraisal. Source: Advisory Opinion 7 (AO7)

The Definition of Market Value requires that a reasonable time be allowed for exposure in the open market. This exposure time is presumed to have occurred prior to the date of the appraisal, while the estimated marketing period occurs after the date of the appraisal. Based on current market conditions, it is our opinion that marketing time for the subject will be similar to

exposure time. We estimate marketing time through an analysis of the marketing times for sales of similar properties in the subject's market area as well as conversations with commercial real estate brokers familiar with the market. Our analysis indicates a normally expected marketing period for the subject would be nine to twelve+ months at our appraised value.

**Subject Sales History:** Per Cook County Deed 94078324 recorded 1/27/94, the subject sold for $2,550,000. We do not have the contract. We understand from the broker, Ted Buenger of CBRE, that this transaction may have included more than the real estate. He stated American Home Mortgage, the current owner of the subject, purchased a mortgage company and the subject building in 1994.

The subject is listed for sale by CBRE for $2,450,000 per the offering memorandum submitted.

Ted also reported the subject went up for auction with sealed bids due by July 2009. The minimum bid was set at $950,000. One bid of $750,000 was made, but not accounted for because it did not meet the minimum. No other bids received. Ted stated that the auction process or time frame did not allow prospective buyers much time to complete due diligence on the subject and indicated this was a factor.

## VALUATION METHODOLOGY

A value estimate of real estate is generally based on the application of one or more of the three basic approaches to value; the "Cost Approach," the "Income Capitalization Approach" and the "Sales Comparison Approach." These approaches to value are defined by the Appraisal Institute as follows:

**Cost Approach** - "Approach through which an appraiser derives a value indication of the fee simple interest in a property by estimating the current cost to construct a reproduction of or replacement for the existing structure, deducting for all evidence of accrued depreciation from the cost new of the reproduction or replacement structure, and adding the estimated land value plus an entrepreneurial profit. Adjustments may be made to the indicated fee simple value of the subject property to reflect the value indication of the property interest being appraised."

**Income Capitalization Approach** - "Approach through which an appraiser derives a value indication for income-producing property by converting anticipated benefits, i.e., cash flows and reversions, into property value. This conversion can be accomplished in two ways: One year's income expectancy or an annual average of several years' income expectancies may be capitalized at a market derived capitalization rate that reflects a specified income pattern, return on investment, and change in the value of the investment; secondly, the annual cash flow may be discounted for the holding period and the reversion at a specified yield rate."

**Sales Comparison Approach** - "Approach through which an appraiser derives a value indication by comparing the property being appraised to similar properties that have been sold recently, applying appropriate units of comparison and making adjustments, based on the elements of comparison, to the sale prices of the comparable."

The following pages summarizes' each approach to value.

**Allstate Appraisal**

**COST APPROACH:** In the Cost Approach, we estimate the value of the subject property by adding the value of the subject site, as vacant, to the depreciated value of the improvements thereon. The Cost Approach involves the following steps.

1. Estimate the site value of the subject site, as vacant, by reference to sales of similar properties in the subject's market area.
2. Estimate the replacement cost new of the subject improvements by reference to published figures in a national cost manual.
3. Deduct depreciation from all causes, resulting in a depreciated value of the subject improvements.
4. Add the depreciated value of the subject improvements to the estimate of land value as vacant, resulting in an indication of the market value for the subject property by the Cost Approach

The following pages present the cost approach based on the four factors noted above. The first section is an estimate of site value with one additional table that surmises an estimate of replacement cost, deductions for depreciation and the final value estimate.

**Estimate of Site Value:** Our data search produced land sales and offerings ranging from $14.39 per square foot to $43.11 per square foot with a predominant range of $14.39 per square foot to $15.30 per square foot based on four sales and an average unadjusted sale price of $21.70 per square foot. The average is higher due to the two upper end unit value sales both that are much smaller sites than the subject. The extremes of this range reflect date of sale, low end and premium location, site size, site utility (easements), ingress/egress and access and visibility. The land comparables used in our analysis range in size from approximately 17,640 square feet to 99,317 square feet. The comparables in the analysis are among the best available for comparison to the subject as of the effective date of the appraisal. The following table outlines the land sale and/or listings considered in the analysis.

**Summary of Comparable Land Sales/Offerings:**

| | SUBJECT | SALE 1 | | SALE 2 | | SALE 3 | | SALE 4 | | SALE 5 | | SALE 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Address | 950 N. Elmhurst | 1365 Lee St | | 1675 Algonquin Rd | | 620 E. Northwest Hwy | | SEC Arlington Hts Rd & | | 577 N. Milwaukee | | Lot 3 Milwaukee | |
| City | Mt Prospect | Des Plaines | | Rolling Meadows | | Mount Prospect | | Arlington Heights | | Wheeling | | Wheeling | |
| Property Use | As vacant | Land | | Land | | Land | | Land | | Land | | Land | |
| Sale Price | NA | $1,000,000 | | $1,400,000 | | $485,000 | | $865,000 | | $1,200,000 | | $1,450,000 | |
| Unadj. Unit | | | | | | | | | | | | | |
| $/Sq. Ft Land | N/A | $15.30 | Adj | $43.11 | Adj | $27.49 | Adj | $14.39 | Adj | $15.30 | Adj | $14.60 | Adj |
| Property | Fee Simple | Fee Simple | = | Fee Simple | = | Fee Simple | = | Fee Simple | = | Fee Simple | = | Fee Simple | = |
| Financing | Conventional | Conventional | = | Conventional | = | Conventional | = | Conventional | = | Conventional | = | Conventional | = |
| Sale | Arms Length | Arms Length | = | Arms Length | = | Arms Length | = | Arms Length | = | Arms Length | = | Arms Length | = |
| Date of Sale | NA | 12/1/05 | + | 2/25/05 | + | 1/15/07 | | 3/1/05 | + | 1/26/05 | + | 10/3/05 | + |
| Location | Average | Inferior | + | Superior/Outlot | - | Inferior | + | Similar | | Similar | | Similar | |
| Site Area (SF) | 67,105 | 65,340 | | 32,474 | - | 17,640 | - | 60,113 | | 78,408 | | 99,317 | |
| Use | Com | Com | | Com | | Com | | Com | | Com | | Com | |
| Utilities | Yes | Similar | | Similar | | Similar | | Similar | | Similar | | Similar | |
| Structures | NA | None | | None | | None | | None | | None | | None | |
| Shape/Corner | Irreg/Int/2 Frnts | Rect/Int | | Rect/Corner | - | Rect/Corn | | Rect/Corner | | Rect/Corner | | Rect/Corner | |
| Topog/Easeme | Flat/Yes | Flat | - | Flat | - | Flat | - | Flat | | Flat | - | Flat | - |
| Adjusted Unit | Rounded | | $14.54 | | $21.56 | | $20.62 | | [illegible] | | $13.01 | | $12.41 |



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page 32 of 66

## Comparable Land Sale Location Map:

Comparable Sale 6
Lot 3 Milwaukee Ave
Wheeling, IL 60090
Comparable Sale 5
577 N. Milwaukee Ave
Wheeling, IL 60090
(4.77 miles NNE)
Subject:
950 N. Elmhurst Rd
Mt Prospect, IL 60056
Comparable Sale 2
1675 Algonquin Rd
Rolling Meadows, IL 60008-4111
(3.74 miles WSW)
Comparable Sale 3
620 E. Northwest Hwy
Mt Prospect, IL 60056
(1.66 miles SSE)
Comparable Sale 4
Arlington Heights Rd & Algonquin Rd
Arlington Heights, IL 60005
Comparable Sale 1
1365 Lee St
Des Plaines, IL 60016
(3.91 miles SE)
Lincolnshire
Bannockburn
Long Grove
Deerfield
Riverwoods
Wheeling
Northbrook
Palatine
Rolling Meadows
Mount Prospect
Elk Grove Village



**Site Value Adjustments:** The sales in the above table are from MLS, LoopNet and/or CoStar Comps. This is a retrospective valuation and reliance on the printed comparable source was necessary. None of the sales are perfectly matching, but each offers some level of similarity and are among the best available for comparison to the subject. Sales of commercial land within one year of the subject were limited. Most of the comparables are from 2005. In our analysis, consideration is given to the following factors:

**Property Rights Conveyed** – All of the comparable land sales appeared similar interests.

**Financing Terms** – As far as we could determine, all of the comparable are normal sales insofar as the seller received cash or cash equivalent and no special financing is involved in the transactions. Therefore, no adjustments are necessary for financing terms.

**Conditions of Sale** – As far as we can determine, the comparable sales are arms-length transactions occurring under normal market conditions. This is subject to full verification via closing documents that we do not have access to.

**Market Conditions (Date of Sale)** – Upward date of sale adjustments were made to the older sales. Sale 3 was not adjusted.

**Location** – Typically, properties in the same general market have similar location characteristics, but some differences may still exist. The differences could pertain to ingress/egress, visibility, proximity to other similar or desirable land uses, current or pending development and vehicular and/or pedestrian traffic. Adjustments were necessary for location factors.

**Size** - The subject site contains 67,105 square feet. In this market area, larger parcels of land generally sell at lower unit prices than similar but smaller parcels of land. Some adjustments were necessary to compensate for differences in size between the subject and the comparable land sales. Sale 2 and 3 were adjusted for the smaller size and both indicated much higher unit sale prices unadjusted.

**Zoning** – None were adjusted since all indicated commercial zoning.

**Utilities** - The subject and comparable land sales are accessible to municipal water/sewer service, electric and natural gas. Therefore, no adjustments are necessary for this factor.

**Structures** – None indicated.

**Shape and Topography** – All sales were reasonably similar in shape and utility in that regard. As indicated, the subject has more than one easement. See page 19 for assumptions and conditions. Adjustments were made to the comparables to account for the reduced utility of the subject site due to the existence of utility and ingress/egress easements.

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page 34 of 66

**Site Value Conclusion:** As adjusted, the comparable sales indicated a unit value range between $12.23 per square foot to $21.56 per square foot with a predominant range of $12.23 per square foot to $14.54 per square foot. After considering the adjustments noted above, we are of the opinion that a reasonable estimate of unit site value for the subject is $12.50 per square foot to $13.50 per square foot, say $12.50 per square foot. The estimate of value for the subject site leans toward the low end due to the site utility. Given the lack of ideal land sales available for comparison to the subject site, we feel the reliability of the cost approach was diminished.

**ESTIMATE OF SITE VALUE BY SALES COMPARISON APPROACH**
**IN ROUND AMOUNT**
**$805,000.00**

Allstate Appraisal

**Summary of the Cost Approach Analysis:** The following paragraph and table highlights components 2, 3 and 4 identified above for analysis of the cost approach.

**Estimate of Replacement Cost:** In the Cost Approach, the value of the improvement was estimated by reference to the Marshall Valuation Service: Section 15, Page 17, dated November 2007, Average Quality, Class "C ", Office building and Section 13, Page 26, dated May 2008, Average Quality, Class "C ", Retail Store. One of the cost estimates is post valuation date, but not adjusted with the Current Multiplier.

**Estimate of depreciation:** Physical depreciation was by the effective age/economic life method with an estimated effective age of 12 years and an estimated total physical life of 40 years. No external depreciation applied. Functional depreciation accounts for the impact of the easements on parking or the less than required ratio of 4/1,000 square feet. Functional depreciation also accounts for the basement office space. In this market, below grade space that does not include windows and street level access is not desired or typical. The contributory value of this finished area is reduced.

The following table summarizes the Cost Approach findings, all components included.

| | | | |
|---|---|---|---|
| **Replacement Cost New** | $2,310,565 | $95.56 | 24,180 |
| **Office Basement** | $773,482 | | |
| **Sprinklers** | $45,000 | | |
| **Asphalt/Concrete/Curbs** | $108,000 | | |
| | $3,237,047 | | |
| **Depreciation** | $971,114 | Physical | 30.0% |
| | $0 | External | 0.0% |
| | $809,262 | Functional | 25.0% |
| **Total Depreciation** | $1,780,376 | | |
| **Replacement Cost Less Depreciation** | $1,456,671 | | |
| **Estimated Site Value (rounded)** | $805,000 | 67,105 | sf |
| | | $12.00 | |
| **Estimate of Value Cost Approach** | ***$2,261,671*** | $93.53 | |

**ESTIMATE OF VALUE BY THE COST APPROACH**
**IN ROUND AMOUNT**
**$2,260,000.00**

**INCOME CAPITALIZATION APPROACH:** The Income Approach is an appraisal method in which the anticipated future benefits of a property are capitalized into a present value. The value is measured by capitalizing the net income that a fully informed person assumes the property will produce during its remaining economic life. The methodology in this approach includes an estimate of the property's potential gross income, the reduction in gross income due to vacancy and collection loss, the annual operating expenses, the duration of the property's income stream, and the resale value of the property. After income and expenses are estimated, the income stream is converted into present value through capitalization or discounting. The rates for capitalization or discounting are derived from acceptable rates of return for similar properties, alternative investments and nationally recognized surveys.

The subject property is a large commercial building with five units. Typically one would expect a multi unit commercial building to relate to an income stream. In this case, the subject included 33,681 square feet of finished usable commercial space, but the owner occupied 22,281 square feet or roughly 66% (all in one unit but on two levels). Of the 33,681 square feet of finished area, 10,631 square feet was located in the basement, which we were told does not have windows. Below grade space is not typical or the desired type of space in this market. We understand from Ted Buenger at CBRE, the subject was occupied by the owner and four tenants at the time of valuation, but we do not know the lease arrangements at that time nor do we have information on the subject's expenses or tenant contributions. Additionally, this is a retrospective valuation from two years ago and there is a lack of verifiable rental comparable data from the market for large office units at that time and most notably those in a basement. The basement area reportedly accounted for 32% of total area. While some extraction of rental data was possible, the subjectivity involved to assign rental rates to 66% of the subject's total building area would be highly subjective given the factors. In this case, we do not feel the income approach provided a meaningful analysis or reliable finding.

In summary, we are of the opinion the Income Approach does not offer reliable and conclusive results for the reasons cited above and it was not included in the analysis.

**SALES COMPARISON APPROACH:** The Sales Comparison Approach is based on the principle of substitution. It is an indication of value based on a comparison of the property being appraised, to similar properties, which have recently sold in the marketplace. The appraiser's conducted a search for sales of similar buildings in the subject's market area going back to 2006, but efforts are made to select the most current sales possible. The sales reflect a range in unadjusted unit prices from $99.33 per square foot to $161.40 per square foot. Recent sales similar to the subject in terms of style, basement office, and site utility were VERY limited. The submitted sales are not perfectly ideal, but they are among the best available for comparison to the subject.

No matched pairs are available to extract precise quantitative adjustments. The quantitative adjustments represent the appraisers' judgment as to the overall effect of the comparable's differences have on their respective market values relative to the subject property.

The following pages indentify each improved comparable sale found for comparison to the subject using sale price per square foot for comparison. The information is based on the Multiple Listing Service (MLS), CoStar Comps or Loopnet.



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page **38** of **66**

**Improved Sale #1:**

| | |
|---|---|
| **Address** | 350 W. Kensington Rd |
| **Property Use** | Comm |
| **Sale Price** | $2,107,000 |
| **Sale Date** | 2/13/06 |
| **Age/Built** | 1985 |
| **Bldg Sq. Ft.** | 19,392 |
| **Site Area** | 79,541 |
| **Land to Building Ratio** | 4.10 |
| **Sale Price per Sq. Ft. Building** | $108.65 |
| **Sale Price per Sq. Ft. Land** | $26.49 |

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page **39** of **66**

**Improved Sale #2:**

FLOORS 4 U

| | |
|---|---|
| **Address** | 401-27 E. Euclid Ave |
| **Property Use** | Retail/Office |
| **Sale Price** | $4,660,000 |
| **Sale Date** | 6/29/05 |
| **Age/Built** | 1985 |
| **Bldg Sq. Ft.** | 28,873 |
| **Site Area** | 124,146 |
| **Land to Building Ratio** | 4.30 |
| **Sale Price per Sq. Ft. Building** | $161.40 |
| **Sale Price per Sq. Ft. Land** | $37.54 |

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page 40 of 66

**Improved Sale #3:**

| | |
|---|---|
| **Address** | 1331 E. Business Center Dr |
| **Property Use** | Office |
| **Sale Price** | $3,017,747 |
| **Sale Date** | 6/27/07 |
| **Age/Built** | 1985 |
| **Bldg Sq. Ft.** | 30,380 |
| **Site Area** | 135,907 |
| **Land to Building Ratio** | 4.47 |
| **Sale Price per Sq. Ft. Building** | $99.33 |
| **Sale Price per Sq. Ft. Land** | $22.20 |



Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page 41 of 66

**Improved Sale #4:**

| | |
|---|---|
| **Address** | 1307-33 Rand Rd |
| **Property Use** | Retail/Ofc/Apt |
| **Sale Price** | $2,275,000 |
| **Sale Date** | 9/29/05 |
| **Age/Built** | 1988 |
| **Bldg Sq. Ft.** | 22,000 |
| **Site Area** | 66,529 |
| **Land to Building Ratio** | 3.02 |
| **Sale Price per Sq. Ft. Building** | $103.41 |
| **Sale Price per Sq. Ft. Land** | $34.20 |

Allstate Appraisal 

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page 42 of 66

**Improved Sale #5:**

| | |
|---|---|
| **Address** | 1221 E. Business Center Dr |
| **Property Use** | Office |
| **Sale Price** | $4,800,457 |
| **Sale Date** | 5/2/06 |
| **Age/Built** | 1985 |
| **Bldg Sq. Ft.** | 43,250 |
| **Site Area** | 248,292 |
| **Land to Building Ratio** | 5.74 |
| **Sale Price per Sq. Ft. Building** | $110.99 |
| **Sale Price per Sq. Ft. Land** | $19.33 |

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page 43 of 66

**Improved Sale #6:**

RUG DEPOT
RUG DEPOT

| | |
|---|---|
| **Address** | 279-97 N. Northwest Hwy |
| **Property Use** | Retail |
| **Sale Price** | $2,649,500 |
| **Sale Date** | 6/1/06 |
| **Age/Built** | 1975 |
| **Bldg Sq. Ft.** | 20,000 |
| **Site Area** | 53,579 |
| **Land to Building Ratio** | 2.68 |
| **Sale Price per Sq. Ft. Building** | $132.48 |
| **Sale Price per Sq. Ft. Land** | $49.45 |

Allstate Appraisal 

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois

**Improved Sale #7:**

| | |
|---|---|
| **Address** | 2400-08 E. Oakton St |
| **Property Use** | Retail |
| **Sale Price** | $4,050,000 |
| **Sale Date** | 8/30/05 |
| **Age/Built** | 1975 |
| **Bldg Sq. Ft.** | 30,502 |
| **Site Area** | 125,845 |
| **Land to Building Ratio** | 4.13 |
| **Sale Price per Sq. Ft. Building** | $132.78 |
| **Sale Price per Sq. Ft. Land** | $32.18 |

Allstate Appraisal

Client: Mr. Joseph Aronauer, Attorney at Law
Subject: 950 N. Elmhurst Road, Mt. Prospect, Illinois
Page 45 of 66

**Comparable Sales Location Map:**

Comparable Sale 6
279 Northwest Hwy
Palatine, IL 60067
(5.49 miles WNW)
Comparable Sale 4
1307-33 E. Rand Rd
Arlington Heights, IL 60004
(2.11 miles NW)
Comparable Sale 2
401-27 E. Euclid Ave
Mount Prospect, IL 60056-1226
(0.48 miles NE)
Comparable Sale 7
2400-08 E. Oakton St
Arlington Heights, IL 60004
(1.34 miles NW)
Subject
950 N. Elmhurst Rd
Mt Prospect, IL 60056
Comparable Sale 1
350 W. Kensington Rd
Mount Prospect, IL 60056-1141
(0.26 miles SW)
Comparable Sale 3
1331 E. Business Center Dr
Mount Prospect, IL 60056-2182
(1.15 miles ESE)
Comparable Sale 5
1221 E. Business Center Dr
Mount Prospect, IL 60056-2182
(1.07 miles ESE)
Long Grove
Buffalo Grove
Arlington Heights
Wheeling
Palatine
Rolling Meadows
Prospect
Des Plaines
Schaumburg
Elk Grove Village
bing



**Market Adjustments:** Adjustments were applied for differences in the following aspects. The unit of measure considered was sale price per square foot.

**Property Rights Conveyed -** To the best of the appraisers' knowledge all of the sales were conveyed as fee simple interests that was the same interest valued in this report. Therefore, no adjustments are necessary for property rights conveyed.

**Financing** - To the best of the appraisers' knowledge all of the sales were financed conventionally at the terms prevalent in the market at the time of sale. Accordingly, no adjustments were necessary for financing to the comparables.

**Conditions of Sale** - All of the sales appear to be arm's length transactions, warranting no adjustments for conditions of sale.

**Market Conditions** – Slight upward date of sale adjustments were made to the older sales based on sale activity that reflected an upward trend prior to the date of valuation.

**Location -** Typically properties located in the same general market have similar location characteristics, but some differences may still exist. The differences could pertain to ingress/egress, visibility, proximity to other similar or desirable land uses, current or pending development and vehicular and/or pedestrian traffic. Community locations were generally similar and no adjustments were made in this regard. The adjustments made reflected retail or commercial orientation. Some comparables were inferior to the subject.

**Basement** – The subject has a large level of basement office space. This type of space is not typical or the preferred rental space. Only slight adjustments were made for the subject's basement office.

**Building Size** - In this market area, larger properties generally sell at a lower unit price than similar but smaller properties. The difference in size must be significant for the unit price to be affected. Sale 5 was adjusted.

**Condition/Age** – No adjustments were made based on the comparable source information.

**Site Area –** Slight adjustments were made to account for differences in site area.

**Site Appeal** – The comparables were adjusted for the inferior site appeal of the subject due to the easements reported. This adjustment accounts the reduced utility to the site (see comments and assumptions on page 19).

**Parking –** Required parking was 4.0/1000 and based on the subject's grade level space or GBA, the subject was slightly less. We also looked at the parking spaces available per the total building area including the subject basement. We understand from the broker Ted Buenger, the subject owner leased space across the street in the Mall parking lot to accommodate his business needs. This suggests the subject site does lack parking given the total area of finished space. Adjustments were made.

No other adjustments were made.

Please refer to the following page for the Sales Comparison Grid.



Allstate Appraisal

**Comparable Sales Grid:**

| | SUBJECT | SALE 1 | | SALE 2 | | SALE 3 | | SALE 4 | | SALE 5 | | SALE 6 | | SALE 7 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Address | 950 N. Elmhurst Rd | 250 W. Kensington Rd | | 401-27 E Euclid Ave | | 1100 E Business Center Dr | | 1307-33 Rand Rd | | 1221 E Business Center Dr | | 275-97 N. Northwest Hwy | | 2400-58 E Dalton | |
| City | Mt Prospect | Mt Prospect | | Mt Prospect | | Mt Prospect | | Arlington Hts | | Mt Prospect | | Palatine | | Arlington Heights | |
| Property Use | Comm | Comm | | Retail/Office | | Office | | Retail/Ofc/Apt | | Office | | Retail | | Retail | |
| Source | Owner/Inspec | Costar | | Costar | | Costar | | Costar | | Costar | | Costar | | Costar | |
| Sale Price | NA | $2,197,000 | | $4,660,000 | | $3,017,747 | | $2,275,000 | | $4,800,457 | | $2,649,500 | | $4,050,000 | |
| Unadj Prices | | | | | | | | | | | | | | | |
| $/SF Bldg | NA | $134.85 | | $161.40 | | $98.33 | | $103.41 | | $110.99 | | $132.48 | | $132.78 | |
| $/Unit | NA | $59,526 | | $423,636 | | $1,005,916 | | $568,750 | | $2,400,229 | | $264,950 | | NA | |
| $/SF Land | NA | $26.45 | Adj | $37.54 | Adj | $22.20 | Adj | $34.20 | Adj | $19.23 | Adj | $49.45 | Adj | $32.16 | Adj |
| Property Rights | Fee Simple | Fee Simple | = | Fee Simple | = | Fee Simple | = | Fee Simple | = | Fee Simple | = | Fee Simple | = | Fee Simple | = |
| Financing | Conventional | Conventional | = | Conventional | = | Conventional | = | Conventional | = | Conventional | = | Conventional | = | Conventional | = |
| Sale Conditions | Arms Length | Arms Length | = | Arms Length | = | Arms Length | = | Arms Length | = | Arms Length | = | Arms Length | = | Arms Length | = |
| Date of Sale | NA | 2/15/06 | + | 5/29/05 | + | 8/23/07 | | 9/29/05 | + | 5/2/05 | + | 3/1/06 | + | 8/30/06 | + |
| Location | Average | Inferior | + | Similar | | Inferior | - | None req'd | | Inferior | + | Similar | | Inferior | + |
| Basement | Yes Fin | None req'd | + | None req'd | - | None req'd | + | None req'd | + | None req'd | + | None req'd | - | None req'd | + |
| Bldg Size (SF) | 24,819 | 16,292 | | 28,873 | | 31,000 | | 22,000 | | 43,250 | + | 20,000 | | 30,502 | |
| # of Units/Tenants | 5 | 36 | | 11 | | 3 | | 4 | | 2 | | 10 | | Nav | |
| Year Built | 1983 | 1995 | | 1986 | | 1985 | | 1986 | | 1985 | | 1975 | | 1975 | |
| Bldg Condition | Average | Average | | Average | | Average | | Average | | Average | | Average | | Average | |
| Property Use | Office/Service | Office/Service | | Retail Center | - | Office | | Ret/Ofc/Apt | | Office | | Retail Center | - | Retail Center | - |
| Site Area (SF) | 57,105 | 79,545 | | 124,145 | - | 136,927 | - | 66,585 | | 248,220 | - | 52,579 | | 125,845 | |
| Land-Bldg Ratio | 2.30 | 4.10 | | 4.31 | | 4.47 | | 3.02 | | 5.74 | | 2.58 | | 4.13 | |
| Site Appeal | Easements | Superior | | Superior | | Superior | - | Superior | - | Superior | - | Superior | - | Superior | - |
| Parking / GBA | 3.6/1000 | 4.0/1000 | - | 2.5/1000 | = | 2.5/1000 | = | 3.04/1000 | = | 6.2/1000 | - | 4/1000 | - | 4.4/1000 | - |
| Parking / Total Area | 2.8/1000 | NA | | NA | | NA | | NA | | NA | | NA | | NA | |
| Construction | Masonry | Similar | | Similar | | Similar | | Similar | | Similar | | Similar | | Similar | |
| Cap Rate | NA | 8.29% | | Nav | | Nav | | Nav | | 7.49% | | Nav | | Nav | |
| Real Estate Tax/SF | $5.24 | $6.13 | | $5.70 | | $2.55 | | $3.15 | | $5.50 | | $4.22 | | $4.00 | |
| Net Adj % | | | | | | | | | | | | | | | |
| Adj Prices | | | | | | | | | | | | | | | |
| $/SF Bldg | NA | [illegible] | | [illegible] | | [illegible] | | [illegible] | | [illegible] | | [illegible] | | [illegible] | |
| $/Unit | NA | $51,212 | | $330,436 | | $990,236 | | $523,250 | | $2,004,191 | | $191,364 | | NA | |
| $/SF Land | NA | $22.12 | | $25.28 | | $13.55 | | $31.46 | | $46.14 | | $35.60 | | $26.07 | |

| | | | |
|---|---|---|---|
| Average | $94.95 | 24,639 | $2,060,898 |
| Low | $92.66 | 24,619 | $2,200,206 |
| High | $125.63 | 24,616 | $3,124,465 |
| Median | $95.14 | 24,619 | $2,307,109 |

Allstate Appraisal

After applying pertinent adjustments, the comparables range in adjusted unit price from $87.91 per square foot to $125.89 per square foot with an average adjusted unit price of $99.95 per square foot. The preponderance of data falls between $87.91 per square foot to $95.38 per square foot. Taking all factors into consideration, we are of the opinion the subject relates more to the predominant range.

In consideration of all factors and making the appropriate adjustments, we are of the opinion a reasonable opinion of value for the subject is in the range of $88.00 per square foot to $94.00 per square foot. This would indicate the following value:

**24,819 x sq. ft. x $88.00 per square foot = $2,184,072.00**

**24,819 x sq. ft. $94.00 per square foot = $2,332,986.00**

Based on our analysis of the comparable sale properties, it is our opinion that a reasonable estimate of the market value for the subject property would be $2,300,000.00.

**ESTIMATE OF MARKET VALUE BY SALES COMPARISON APPROACH**
**IN ROUND AMOUNT**
**$2,300,000.00**

Allstate Appraisal

**RECONCILIATION AND FINAL VALUE ESTIMATE:** In this report, we have summarized our analysis of the three traditional approaches to value used in estimating the market value for the subject property. These approaches indicate the following value conclusions AS IS:

**COST APPROACH ........................................................................ $2,260,000.00**

**INCOME CAPITALIZATION APPROACH ...................................... NA**

**SALES COMPARISON APPROACH............................................. $2,300,000.00**

Each of the above approaches to value provides a value indication based on different factors:

**Cost Approach** - Due to the lack of perfectly ideal land sales in terms of easements, the subjectivity involved in estimating all forms of depreciation (physical, functional, external) and the subjectivity involved in estimating replacement cost (due to lack of access), we feel the Cost Approach offers supporting consideration in the final reconciliation of value.

**Income Capitalization Approach** – The subject property is a large commercial building with five units. Typically one would expect a multi unit commercial building to relate to an income stream. In this case, the subject included 33,681 square feet of finished usable commercial space, but the owner occupied 22,281 square feet or roughly 66% (all in one unit but on two levels). Of the 33,681 square feet of finished area, 10,631 square feet was located in the basement, which we were told does not have windows. Below grade space is not typical or the desired type of space in this market. We understand from Ted Buenger at CBRE, the subject was occupied by the owner and four tenants at the time of valuation, but we do not know the lease arrangements at that time nor do we have information on the subject's expenses or tenant contributions. Additionally, this is a retrospective valuation from two years ago and there is a lack of verifiable rental comparable data from the market for large office units at that time and most notably those in a basement. The basement area reportedly accounted for 32% of total area. While some extraction of rental data was possible, the subjectivity involved to assign rental rates to 66% of the subject's total building area would be highly subjective given the factors. In this case, we do not feel the income approach provided a meaningful analysis or reliable finding. In summary, we are of the opinion the Income Approach does not offer reliable and conclusive results for the reasons cited above and it was not included in the analysis.

**Sales Comparison Approach** - The Sales Comparison Approach is best applied to a property purchased and held for use by an owner-occupant. It also provides a good indication of buyer and seller negotiations. In this instance, the subject was 66% owner occupied. We are able to locate multiple sales of comparable buildings that reasonably identify with the subject; however, we did not locate improved sales that reported similar easement factors. We acknowledge the sales were not perfect, but they were among the best available. The Sales Comparison Approach was considered with greatest weight in this instance.

Allstate Appraisal

In final reconciliation, the income approach and the sales comparison approach are considered most. The disparity in value estimates between the two approaches is less than 5%. In view of the facts and factors mentioned herein and the analyses of data that have been considered in connection with this appraisal, it is the opinion of the undersigned that the market value of the fee simple interest in the subject property as of August 7, 2007 is:

**FINAL ESTIMATE OF VALUE – Retrospective Valuation**
**TWO MILLION TWO HUNDRED SEVENTY FIVE THOUSAND DOLLARS**
**$2,275,000.00**

**PERSONAL PROPERTY OR FF&E:** The value conclusions reported in the attached appraisal reflect the market value of the described real estate only and do not include any items of personal property, freestanding fixtures and equipment, or intangible items. The market value of the subject property may be positively affected by the inclusion of standard items of personal property in our value estimate. The client is further directed to the Assumptions and Limiting Conditions section of the report.

**ASSUMPTIONS & LIMITING CONDITIONS:** The appraisal is retrospective and based on a limited inspection. We did not have access to the owner or income and expense documents. Issues related to easements, encroachment and environmental might exist. All information was reported to the client prior to the appraisal completion. The client did not provide other information for us to use. The client is directed to the Assumptions and Limiting Conditions summary contained in the addendum of this report. Failure of the client to read the report in its entirety and address the known issues of this assignment or the written report is not the responsibility of Allstate Appraisal L.P. and we do not assume responsibility for any matter resulting from the client's failure to address known issues and familiarize themselves with the subject, the written report and the stated assumptions and limiting conditions. The client's USE of the appraisal as defined by the Purpose and Function identified herein indicates their acceptance of this document based on all stated assumptions and limiting conditions.

**DIGITAL SIGNATURE COMMENT:** If electronically processed, this report has been completed and electronically transmitted in compliance with FIRREA, USPAP and the ASB.

ASB requires the following:

- The appraiser must have confirmation that the report was transmitted in its entirety.
- The appraiser must be certain that digital signatures cannot be printed if the appraisal report has been altered in anyway.

The digital signature contained in this report is an image of the actual signature of the signing appraiser(s). This image is not altered in anyway. The transmission of this report is via Portable Document Format (PDF) and the report and signature cannot be altered in anyway. The report cannot be changed or altered without access to the master file which is retained in our main office.

Allstate Appraisal

**APPRAISAL INSTITUTE:** The Appraisal Institute, the organization that awards the MAI, SRPA and SRA professional appraisal designations, conducts a program of continuing professional education for its designated members, MAI, SRPA and SRA members are awarded credits for approved educational courses and seminars. As of the date of this report, Steven S. Albert, MAI, SRA has completed the requirements of the continuing education program of the Appraisal Institute. In conformance with the Appraisal Institute's Standards of Professional Practice, this report is subject to review by duly authorized representatives of the Institute.

**ENVIRONMENTAL RISK STATEMENTS:** The appraisers are not experts in the identification or detection of environmental hazards. We are NOT qualified to detect the presence of any adverse substances or gases. Unless specifically stated to the contrary, the appraisers have no knowledge of the existence of any environmental hazard on, under, above or within the subject real estate. No overt evidence of any environmental hazard is apparent to the untrained eye. However, we have not specifically inspected the subject property to determine the presence of any environmental hazard. No effort is made to dismantle or probe the structure to observe enclosed, encased or otherwise concealed elements for environmental hazards. No radon testing details are ascertained. Except as specifically stated elsewhere herein, the appraiser is not informed of, and neither the inspection nor other normal research suggested any apparent presence of hazardous substances or detrimental environmental conditions. The presence of any environmental hazard would likely diminish the property's value. The value estimate in this communication assumes there is no environmental hazard of any type affecting the subject real estate. No responsibility is assumed by the appraisers or Allstate Appraisal, L.P. for any environmental hazard or for any expertise required to discover any environmental hazard. Our client is urged to retain an expert in this field, if desired. The client is further directed to the Assumptions and Limiting Conditions section of the report.

**CONCLUSION:** All data collected in the course of this appraisal have been retained in our files for reference. It should be clearly understood that this letter constitutes a complete appraisal, in a Summary Report format. The purpose of this letterform report is to provide a brief description of the subject property and to summarize the conclusions reached in the valuation approaches used in our analysis. Upon request, we will prepare a formal appraisal report complete with supporting data and documentation in accordance with standards established by the nationally recognized appraisal associations with which we identify.

Respectfully Submitted,
**ALLSTATE APPRAISAL L.P.**

DOUGLAS ROE
CERTIFIED RESIDENTIAL REAL ESTATE APPRAISER
IL #556.002283

STEVEN S. ALBERT, MAI, SRA
CERTIFIED GENERAL REAL ESTATE APPRAISER
IL #553.000219
IN #CG49400228

Allstate Appraisal 

## ASSUMPTIONS AND LIMITING CONDITIONS:

1. The information identified in this report is furnished by others and believed to be reliable, but no responsibility for its accuracy is assumed. Information from personal inspection and investigation is believed to be correct. The file relating to this report is in our office, 320 W. 202nd Street; Chicago Heights, Illinois; and is available to person or persons to whom this certificate is issued. Efforts are made to verify comparable sale details, but in some instances this is not possible. We utilize public records like MLS, Assessor Records, CoStar Comps, LoopNet, and other Internet related sources in our effort to verify data. It is not uncommon for us to find differences in reported property data between sources mainly pertaining to physical property data. We rely on assessor data, but in some cases we must use the information available and/or provide estimates. We do not have access to the comparable properties so verification is not possible. The information on the subject is taken from the property walk through and information from the owner. We reserve the right to revision, if we deem necessary, if future information reveals our inspection information is not accurate or complete.
2. It is assumed that all information furnished by the client, owner, owner's contact, or persons designated by the client or owner to supply data are accurate and correct. Unless otherwise specifically noted in the appraisal report, Allstate Appraisal L.P. has no reason to believe that any of the data furnished contain any material error. Information and data referred to in this paragraph include, without being limited to, numerical street addresses, lot and block numbers, Assessor's Parcel Numbers, land dimensions, square footage area of the land, dimensions of the improvements, gross building areas, net rentable areas, usable areas, unit count, room count, rent schedules, income data, historical operating expenses, budgets, and related data. Any material error in any of the above data could have a substantial impact on the conclusions reported. Thus, Allstate Appraisal L.P. reserves the right to amend conclusions reported if made aware of any such error. <u>Accordingly, the client-addressee should carefully review all assumptions, data, relevant calculations, and conclusions within 30 days after the date of delivery of this report and should immediately notify Allstate Appraisal L.P. of any questions or errors. Upon notification, we well address and/or respond to any questions, issues or errors in a timely manner. If the client does not notify Allstate Appraisal L.P., we assume the client (all persons involved in the assignment), but specifically the name the report is addressed to, has READ the document in its entirety and completed the necessary due diligence, recommendations and verifications as noted. Failure of the client to read the report in its entirety and address the known issues of this assignment or the written report is not the responsibility of Allstate Appraisal L.P. and we do not assume responsibility for any matter resulting from the client's failure to become familiar with the subject, the written report and stated assumptions and limiting conditions. The client's USE of the appraisal as defined by the Purpose and Function identified herein indicates their acceptance of this document based on all stated assumptions and limiting conditions.</u>
3. It is assumed, unless stated otherwise within the body of this report, that title to the property or properties appraised is clear and marketable and that there are no recorded or unrecorded matters or exceptions to title that would adversely affect marketability or value. Allstate Appraisal L.P. is not aware of any title defects nor has it been advised of any unless such is specifically noted in the report. Allstate Appraisal L.P. has not examined title and makes no representations relative to the condition thereof. Documents dealing with liens, encumbrances, easements, deed restrictions, clouds and other conditions that may affect the quality of title have not been reviewed. Insurance against financial loss resulting in claims that may arise out of defects in the subject's title should be sought from a qualified title company that issues or insures title to real property.
4. Allstate Appraisal L.P. assumes no private deed restrictions that would limit the use of the subject in any way. The client is directed to the deed to verify if any deed restrictions exists. We are not aware of any contemplated public initiatives, governmental development controls, or rent controls that would significantly affect the value of the subject. And we have not surveyed the boundaries of the property. All areas and dimensions furnished by the owner, owner contact or client are presumed to be correct. It is further assumed that no encroachments to the realty exist.
5. It is assumed, unless stated otherwise within the body of this report, that the existing improvements on the property or properties being appraised are structurally sound, seismically safe and code conforming; that <u>all</u> building systems are in average to good working order with no major deferred maintenance or repair required; that the roof and exterior are in average to good condition and free from intrusion by the elements; that the property or properties conform to all applicable local, state, and federal building codes and ordinances. Allstate Appraisal L.P. professionals are not engineers and unable to judge matters of an engineering nature. Allstate Appraisal L.P. has not retained independent structural, mechanical, electrical, or



Allstate Appraisal

civil engineers in connection with this appraisal and makes no representations relative to the condition of improvements.

6. No problems, unless stated otherwise within the body of this report, were brought to the attention of Allstate Appraisal L.P. by ownership or management; Allstate Appraisal L.P. observed less than 100% of the entire interior and exterior portions of the improvements; and Allstate Appraisal L.P. was not furnished engineering studies by the owners or by the party requesting this appraisal. If questions in these areas are critical to the decision process of the reader, the advice of competent engineering consultants should be obtained and relied upon. It is specifically assumed that any knowledgeable and prudent purchaser would obtain a satisfactory engineering report relative to the structural integrity of the property and the integrity of building systems. Structural problems and/or building system problems may not be visually detectable. If engineering consultants are retained and report negative factors of a material nature, or if such are later discovered, relative to the condition of improvements, such information could have a substantial negative impact on the conclusions reported in this appraisal. Accordingly, if negative findings are reported by engineering consultants, Allstate Appraisal L.P. reserves the right to amend the appraisal conclusions reported herein.

7. The existence, unless stated otherwise within the body of this report, of environmental and/or hazardous materials is not observed by the appraisers. Allstate Appraisal L.P. has no knowledge of the existence of such materials on or in the property. Allstate Appraisal L.P., however, is not qualified to detect such substances. The presence of substances such as asbestos, urea formaldehyde foam insulation, contaminated groundwater, mold or other potentially hazardous or environmental materials may affect the value of the property. We have observed the subject site; however, it is impossible to personally inspect conditions beneath the soil. The value estimate is predicated on the assumption that there is no such material on or in the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field.

8. It is assumed, unless stated otherwise within the body of this report, that there are not mineral deposits or subsurface rights of value involved in this appraisal, whether they are gas, liquid, or solid. Nor are the rights associated with extraction or exploration of such elements considered unless otherwise stated in this appraisal report. It is also assumed that there are no air or development rights of value that may be transferred.

9. The appraisers have no expertise in the field of insect, termite, or pest infestation. We are <u>not</u> qualified to detect the presence of these or any other unfavorable infestation. The appraisers have no knowledge of the existence of any infestation on, under, above or within the subject real estate. No overt evidence of infestation is apparent to the untrained eye. However, we have not specifically inspected the subject property to determine the presence of any infestation. No effort is made to dismantle or probe the structure to observe enclosed, encased, or otherwise concealed evidence of infestation. The presence of any infestation would likely diminish the property's value. The value estimate in this communication assumes there is no infestation of any type affecting the subject real estate. No responsibility is assumed by the appraisers or Allstate Appraisal, L.P. for any infestation or tor any expertise required to discover any infestation. Our client is urged to retain an expert in this field, if desired.

10. The value conclusions reported in the attached appraisal reflect the market value of the described real estate only and do not include any items of personal property, freestanding fixtures and equipment, or intangible items. The market value of the subject property may be positively affected by the inclusion of standard items of personal property in our value estimate.

11. This appraisal is based on market conditions existing as of the date of this appraisal. Under the terms of the engagement, we will have no obligation to revise this report to reflect events or conditions which occur subsequent to the date of the appraisal. However, Allstate Appraisal L.P. will be available to discuss the necessity for revision resulting from changes in economic or market factors affecting the subject.

12. The estimate of Market Value is subject to change with market fluctuations over time. Market value is highly related to exposure, time promotion effort, terms, motivation, and conclusions surrounding the offering. The value estimate(s) consider the productivity and relative attractiveness ot the property, both physically and economically, on the open market.

13. Any cash flows included in the analysis are forecasts of estimated future operating characteristics are predicated on the information and assumptions contained within the report. Any projections of income, expenses and economic conditions utilized in this report are not predictions of the future. Rather, they are estimates of current market expectations of future income and expenses. The achievement of the financial projections will be affected by fluctuating economic conditions and is dependent upon other future


occurrences that cannot be assured. Actual results may vary from the projections considered herein. Allstate Appraisal L.P. does not warrant these forecasts will occur. Projections may be affected by circumstances beyond the current realm of knowledge or control of Allstate Appraisal L.P.

14. Nothing contained herein shall be construed to represent any direct or indirect recommendation of Allstate Appraisal L.P. to buy, sell, or hold the properties at the value stated. Such decisions involve substantial investment strategy questions and must be specifically addressed in consultation form.

15. It is assumed, unless stated otherwise within the body of this report, that no changes in the present zoning ordinances or regulations governing use, density, or shape are being considered. The property is appraised assuming that all required licenses, certificates of occupancy, consents, or other legislative or administrative authority from any local, state, nor national government or private entity or organization have been or can be obtained or renewed for any use on which the value estimates contained in this report is based, unless otherwise stated. In this appraisal, we relied upon public information and staff interviews regarding zoning, land use and concurrency with growth management laws. However, we freely admit we are not zoning or concurrency experts and that final determination can only be made by appropriate government authorities. Our valuation is subject to such determination and we reserve the right to revision, if we deem necessary, if future zoning information is provided that reveals our stated zoning and compliance is not accurate.

16. The appraisal report may not be duplicated in whole or in part without the specific written consent of Allstate Appraisal L.P. nor may this report or copies hereof be transmitted to third parties without said consent, which consent Allstate Appraisal L.P. reserves the right to deny. Exempt from this restriction is duplication for the internal use ot the client-addressee and/or transmission to attorneys, accountants, or advisors of the client-addressee. Also exempt from this restriction is transmission of the report to any court, governmental authority, or regulatory agency having jurisdiction over the party/parties for whom this appraisal is prepared, provided that this report and/or its contents shall not be published, in whole or in part, in any public document without the express written consent of Allstate Appraisal L.P. which consent Allstate Appraisal L.P. reserves the right to deny. Finally, this report shall not be advertised to the public or otherwise used to induce a third party to purchase the property or to make a "sale" or "offer for sale" of any "security", as such terms are defined and used in the Securities Act of 1933, as amended. Any third party, not covered by the exemptions herein, who may possess this report, is advised that they should rely on their own independently secured advice for any decision in connection with this property. Allstate Appraisal L.P. shall have no accountability or responsibility to any such third party.

17. Any value estimate provided in the report applies to the entire property, and any pro ration or division of the title into fractional interests will invalidate the value estimate, unless such pro ration or division of interests has been set forth in the report.

18. The distribution of the total valuation in this report between land and improvements applies only under the existing program of utilization. Component values for land and/or buildings are not intended to be used in conjunction with any other property or appraisal and are invalid if so used.

19. The maps, plats, sketches, graphs, photographs and exhibits included in this report are for illustration purposes only and are to be utilized only to assist in visualizing matters discussed within this report. Except as specifically stated, data relative to size or area of the subject and comparable properties has been obtained from sources deemed accurate and reliable. None of the exhibits should be removed, reproduced, or used apart from this report.

20. No opinion is intended to be expressed on matters which may require legal expertise or specialized investigation or knowledge beyond that customarily employed by real estate appraisers. Values and opinions expressed presume that environmental and other governmental restrictions/conditions by applicable agencies have been met, including but not limited to seismic hazards, flight patterns, decibel levels/noise envelopes, fire hazards, hillside ordinances, density, allowable uses, building codes, permits, licenses, etc. No survey, engineering study or architectural analysis has been made known to Allstate Appraisal L.P. unless otherwise stated within the body of this report. If the Consultant has not been supplied with a termite inspection, survey or occupancy permit, no responsibility or representation is assumed or made for any costs associated with obtaining same or for any deficiencies discovered before or after they are obtained. No representation or warranty is made concerning obtaining these items. Allstate Appraisal L.P. assumes no responsibility for any costs or consequences arising due to the need, or the lack of need, for flood hazard insurance. An agent for the Federal Flood Insurance Program should be contacted to determine the actual need for Flood Hazard Insurance.

21. Allstate Appraisal L.P. assumes that the subject analyzed herein will be under prudent and competent management and ownership.

22. It is assumed that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless noncompliance is stated, defined and considered in the appraisal report.
23. The Americans with Disabilities Act (ADA) became effective January 26, 1992. Notwithstanding any discussion of possible readily achievable barrier removal construction items in this report, Allstate Appraisal L.P. has not made a specific compliance survey and analysis of this property to determine whether it is in conformance with the various detailed requirements of the ADA. It is possible that a compliance survey of the property together with a detailed analysis of the requirements of the ADA could reveal that the property is not in compliance with one or more of the requirements of the ADA. If so, this fact could have a negative impact on the value estimate herein. Since Allstate Appraisal L.P. has no specific information relating to this issue, nor is Allstate Appraisal L.P. qualified to make such an assessment, the effect of any possible non-compliance with the requirements of the ADA was not considered in estimating the value of the subject.
24. Client shall not indemnify the Appraisers or hold the Appraisers harmless unless and only to the extent that the Client misrepresents, distorts, or provides incomplete or inaccurate appraisal results to others, which acts of the Client approximately result in damage to Appraiser. Notwithstanding the foregoing, Appraiser shall have no obligation under this Section with respect to any loss that is caused solely by the active negligence or willful misconduct of a Client and is not contributed to by any act or omission (including any failure to perform any duty imposed by law) by Appraiser. Client shall indemnify and hold Appraiser harmless from any claims, expenses, judgments or other items or costs arising as a result of the Clients failure or the failure of any of the Clients agents to provide a complete copy of the appraisal report to any third party. In the event of any litigation between the parties, the prevailing party to such litigation shall be entitled to recover, from the other, reasonable attorney fees and costs.
25. The report is for the sole use of the client; however, client may provide only complete, final copies of the appraisal report in its entirety (but not component parts) to third parties who shall review such reports in connection with loan underwriting or securitization efforts. The appraiser is not required to explain or testify as to appraisal results other than to respond to the client for routine and customary questions. Please note that our consent to allow an appraisal report prepared by Allstate Appraisal L.P. or portions of such report, to become part of or be referenced in any public offering, the granting of such consent will be at our sole discretion and, if given, will be on condition that we will be provided with an Indemnification Agreement and/or Non-Reliance letter, in a form and content satisfactory to us, by a party satisfactory to us. We do consent to your submission of the reports to rating agencies, loan participants or your auditors in its entirety (but not component parts) without the need to provide us with an Indemnification Agreement and/or Non-Reliance letter.
26. The income approach includes an estimate for real estate taxes. The subject is located in Cook County with known inconsistencies in property assessment. We suggest the client verify the impact of the renovation on real estate taxes with the Cook County Assessor. We reserve the right to revision, if we deem necessary, if our assessment estimate is not accurate. A higher assessment could impact value negatively.
27. The client is advised that a full inspection of the subject with access to the owner, income and expense documents, environmental documents and inspection for easements and encroachments may result in a significantly varying opinion of comparable selection and value range.


## GLOSSARY OF APPRAISAL TERMS:

**Assessed Value** - Assessed value applies in ad valorem taxation and refers to the value of a property according to the tax rolls. Assessed value may not conform to market value, but it is usually calculated in relation to a market value base.

**Cash Equivalency** - The procedure in which the sale prices of comparable properties sold with atypical financing are adjusted to reflect typical market terms.

**Contract Rent** - The actual rental income specified in a lease.

**Disposition Value** - The most probable price which a specified interest in real property is likely to bring under all of the following conditions: 1) Consummation of a sale will occur within a limited future marketing period specified by the client; 2) The actual market conditions currently prevailing are those to which the appraised property interest is subject; 3) The buyer and seller is each acting prudently and knowledgeably; 4) The seller is under compulsion to sell; 5) The buyer is typically motivated; 6) Both parties are acting in what they consider their best interests; 7) An adequate marketing effort will be made in the limited time allowed for the completion of a sale; 8) Payment will be made in cash in U.S. dollars or in terms of financial arrangements comparable thereto; and 9) The price represents the normal consideration for the property sold, unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

**Effective Rent** - The rental rate net of financial concessions such as periods of no rent during the lease term; may be calculated on a discounted basis, reflecting the time value of money, or on a simple, straight-line basis.

**Excess Land** - In regard to an improved site, the land not needed to serve or support the existing improvement. In regard to a vacant site or a site considered as though vacant, the land not needed to accommodate the site's primary highest and best use. Such land may be separated from the larger site and have its own highest and best use, or it may allow for future expansion of the existing or anticipated improvement. See also surplus land.

**Exposure Time** - The estimated length of time the property of interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market. Source: Statement 6 (SMT6) of USPAP

**Extraordinary Assumption** - An assumption directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinions or conclusions. Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of data used in an analysis. See also hypothetical condition.

**Fee Simple Estate** - Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat.

**Floor Area Ratio (FAR)** - The relationship between the above-ground floor area of a building, as described by the building code, and the area of the plot on which it stands; in planning and zoning, often expressed as a decimal, e.g., a ratio of 2.0 indicates that the permissible floor area of a building is twice the total land area; also called *building-to-land* ratio.

**Full Service Lease** - A lease in which rent covers all operating expenses. Typically, full service leases are combined with an expense stop, the expense level covered by the contract lease payment. Increases in expenses above the expense stop level are passed through to the tenant and are known as expense pass-through.

**Going Concern Value** - Going concern value is the value of a proven property operation. It includes the incremental value associated with the business concern, which is distinct from the value of the real estate only. Going concern value includes an intangible enhancement of the value of an operating business enterprise which is produced by the assemblage of the land, building, labor, equipment, and marketing operation. This process creates an economically viable business that is expected to continue. Going concern value refers to the total value of a property, including both real property and intangible personal property attributed to the business value.

**Gross Building Area (GBA)** - The total floor area of a building, including below-grade space but excluding unenclosed areas, measured from the exterior of the walls. Gross building area for office buildings is computed by measuring to the outside finished surface of permanent outer building walls without any deductions. All enclosed floors of the building including basements, mechanical equipment floors, penthouses, and the like are included in the measurement. Parking spaces and parking garages are excluded.

**Hypothetical Condition** - That which is contrary to what exists but is supposed for the purpose of analysis. Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis.

**Insurable Value** - Insurable Value is based on the replacement and/or reproduction cost of physical items that are subject to loss from hazards. Insurable value is that portion of the value of an asset or asset group that is acknowledged or recognized under the provisions of an applicable loss insurance policy. This value is often controlled by state law and varies from state to state.

**Investment Value** - Investment value is the value of an investment to a particular investor based on his or her investment requirements. In contrast to market value, investment value is value to an individual, not value in the marketplace. Investment value

reflects the subjective relationship between a particular investor and a given investment. When measured in dollars, investment value is the price an investor would pay for an investment in light of its perceived capacity to satisfy his or her desires, needs, or investment goals. To estimate investment value, specific investment criteria must be known. Criteria to evaluate a real estate investment are not necessarily set down by the individual investor; they may be established by an expert on real estate and its value, that is, an appraiser.

**Leased Fee** - See leased fee estate.

**Leased Fee Estate** - An ownership interest held by a landlord with the right of use and occupancy conveyed by lease to others. The rights of the lessor (the leased fee owner) and the leased fee are specified by contract terms contained within the lease.

**Leasehold** - See leasehold estate.

**Leasehold Estate** - The interest held by the lessee (the tenant or renter) through a lease conveying the rights of use and occupancy for a stated term under certain conditions.

**Liquidation Value** - The most probable price which a specified interest in real property is likely to bring under all of the following conditions: 1) Consummation of a sale will occur within a severely limited future marketing period specified by the client; 2) The actual market conditions currently prevailing are those to which the appraised property interest is subject; 3) The buyer is acting prudently and knowledgeably; 4) The seller is under extreme compulsion to sell; 5) The buyer is typically motivated; 6) The buyer is acting in what he or she considers his or her best interests; 7) A limited marketing effort and time will be allowed for the completion of a sale; 8) Payment will be made in cash in U.S. dollars or in terms of financial arrangements comparable thereto; and 9) The price represents the normal consideration for the property sold, unaffected by special or creative financing or sales concessions granted by anyone associated with the sale

**Market Rent** - The most probable rent that a property should bring in a competitive and open market reflecting all conditions and restrictions of the specified lease agreement including term, rental adjustment and revaluation, permitted uses, use restrictions, and expense obligations; the lessee and lessor each acting prudently and knowledgeably, and assuming consummation of a lease contract as of a specified date and the passing of the leasehold from lessor to lessee under conditions whereby: 1) lessee and lessor are typically motivated; 2) both parties are well informed or well advised, and acting in what they consider their best interests; 3) a reasonable time is allowed for exposure in the open market; 4) the rent payment is made in terms of cash in U.S. dollars and is expressed as an amount per time period consistent with the payment schedule of the lease contract; and 5) the rental amount represents the normal consideration for the property leased unaffected by special fees or concessions granted by anyone associated with the transaction.

**Market Value** - Market value is one of the central concepts of the appraisal practice. Market value is differentiated from other types of value in that it is created by the collective patterns of the market. Market value means the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: 1) A reasonable time is allowed for exposure in the open market; 2) Both parties are well informed or well advised, and acting in what they consider their own best interests; 3) Buyer and seller are typically motivated; 4) Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and 5) The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

**Marketing Time** - An opinion of the amount of time it might take to sell a real or personal property interest at the concluded market value level during the period immediately after the effective date of the appraisal. Source: Advisory Opinion 7 (AO7)

**Net Lease** - Lease in which all or some of the operating expenses are paid directly by the tenant. The landlord never takes possession of the expense payment. In a *Triple* Net Lease all operating expenses are the responsibility of the tenant, including property taxes, insurance, interior maintenance, and other miscellaneous expenses. However, management fees and exterior maintenance are often the responsibility of the lessor in a triple net lease. A *modified* net lease is one in which some expenses are paid separately by the tenant and some are included in the rent.

**Net Rentable Area (NRA)** – 1.) The area on which rent is computed. 2.) The Rentable Area of a floor shall be computed by measuring to the inside finished surface of the dominant portion of the permanent outer building walls, excluding any major vertical penetrations of the floor. No deductions shall be made for columns and projections necessary to the building. Include space such as mechanical room, janitorial room, restrooms, and lobby of the floor.

**Occupancy Rate** - The relationship or ratio between the income received from the rented units in a property and the income that would be received if all the units were occupied.

**Prospective Value Opinion** - A forecast of the value expected at a specified future date. A prospective value opinion is most frequently sought in connection with real estate projects that are proposed, under construction, or under conversion to a new us, or those that have not achieved sellout or a stabilized level of long-term occupancy at the time the appraisal report is written.

**Reasonable Exposure Time** - The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective opinion based upon an analysis of past events assuming a competitive and open market.

**Surplus Land** - Land not necessary to support the highest and best use of the existing improvement but, because of physical limitations, building placement, or neighborhood norms, cannot be sold off separately. Such land may or may not contribute positively to value and may or may not accommodate future expansion of an existing or anticipated improvement. See also excess land.

**Usable Area** - 1) The area actually used by individual tenants. 2) The Usable Area of an office building is computed by measuring to the finished surface of the office side of corridor and other permanent walls, to the center of partitions that separate the office from adjoining usable areas, and to the inside finished surface of the dominant portion of the permanent outer building walls. Excludes areas such as; mechanical rooms, janitorial room, restrooms, lobby, and any major vertical penetrations of a multi-tenant floor.

**Use Value** - Use value is a concept based on the productivity of an economic good. Use value is the value a specific property has for a specific use. Use value focuses on the value the real estate contributes to the enterprise of which it is a part, without regard to the property's highest and best use or the monetary amount that might be realized upon its sale.

**Value Indication** - An opinion of value derived through application of the appraisal process.

**Sources:**

The Dictionary of Real Estate Appraisal
The Appraisal of Real Estate
Advisory Opinion 7 (AO7)
Statement 6 (SMT6) of USPAP

## Appraiser's Qualifications

### Douglas P. Roe

**LICENSURE:** State of Illinois Certified Residential Real Estate Appraiser #556.002283

**EDUCATION:** Bachelor of Science – Restaurant, Hotel & Institutional Management
Purdue University; West Lafayette, Indiana.

Successfully completed courses and seminars

- Basic Principals of Appraisal
- Residential Valuation Procedure/Single Family Appraisal
- Uniform Standards of Professional Practice for Appraisers
- Appraisal Methods
- Residential Appraisal Report Writing
- Non-Residential Report Writing
- FHA Appraisal Inspection from the Ground Up
- Residential Construction Methods
- Commercial Construction Methods
- Residential Site Evaluation and Cost Approach
- FHA Appraisal Examination

**PROFESSIONAL AFFILIATIONS AND MEMBERSHIPS:** Federal Housing Authority Certified Appraiser

**PROFESSIONAL EXPERIENCE:** Fee Appraiser, Allstate Appraisal L.P. – 1998 to Present

**APPRAISAL ASSIGNMENTS:** Commercial and industrial properties of all types.

Appraisals for the purpose of: condemnation, mortgages, inheritance/federal estate tax, real estate taxes, proposed construction, buying and selling, construction progress, insurance and disputes.

**CLIENTELE SERVED:** Commercial banks, savings and loan associations, major corporations, charitable agencies, private investors, various law firms and attorneys, government bodies, finance companies, and private individuals.

**MARKET AREA SERVED:** Primarily the six-county Chicagoland metropolitan area and Northwestern Indiana

## Appraiser's Qualifications
## Steven S. Albert, MAI, SRA

**LICENSURE:**

State of Illinois Certified General Real Estate Appraiser #553.00219
State of Indiana Certified General Real Estate Appraiser #CG49400228

**EDUCATION:**

Bachelor of Science Degree – Business Management, Southern Illinois University; Carbondale, Illinois
Successfully completed courses and seminars:

– Real Estate Appraisals, Southern Illinois University
– Real Estate, Southern Illinois University
– Introductory Appraising, Joliet Junior College

The Society of Real Estate Appraisers and The American Institute of Real Estate Appraisers consolidated in 1992 to form The Appraisal Institute. The following is a partial list of courses and seminars that are completed through one of these three organizations:

- Fundamentals of Relocation Appraising
- Residential Consulting
- Advanced Applications
- Discounted Cash Flow Analyses
- Appraisers Legal Liabilities
- Real Estate Appraisal Principals
- Basic Valuation Procedures
- Capitalization Theory and Techniques (A)
- Capitalization Theory and Techniques (B)
- Case Studies in Real Estate Valuation
- Valuation Analysis and Report Writing
- Standards of Professional Practice
- Residential Valuation
- Appraisal Reporting of Complex Residential Properties
- Feasibility Analysis and Highest and Best Use – Non-Residential
- Condemnation
- Real Estate Risk Analysis
- Appraisal Reporting for Fair Lending
- FHA and the Appraisal Process
- Fair Housing Issues and Cultural Awareness
- Realtors Real Estate School: Course #7789
- Automated Valuations Models

**TEACHING EXPERIENCE:**

Staff Instructor, Joliet Junior College, 1986 to Present
– Valuation Principals and Procedures
– Income Property Appraising and Capitalization Techniques
Approved Associate Instructor, Appraisal Institute

**PROFESSIONAL AFFILIATIONS AND MEMBERSHIPS:**

MAI – Appraisal Institute. Certified under the Mandatory Program of Continuing Education until December 31, 2005
SRA – Appraisal Institute. Certified under the Mandatory Program of Continuing Education until December 31, 2005
– Federal Housing Authority Certified Appraiser
– Real Estate Advisory Committee Member – Joliet Junior College
– National Ethics and Counseling Committee of Appraisal Institute
– MAI Experience Review Committee of Appraisal Institute

**PROFESSIONAL EXPERIENCE:**

Vice President, then Executive Vice President; Allstate Appraisal L.P. – 1993 to present
Investment grade property staff appraiser; Roe Westberry & Associates, Palm Beach, Florida, – 1992

Staff appraiser, then chief review appraiser; Allstate Appraisal, – 1986 to 1991
Qualified as an expert witness in circuit court in numerous condemnations, zoning, divorce and partition cases concerning the value or utility of real estate, documentation for damage claim resolution and various litigation issues.

## ALLSTATE APPRAISAL L.P. CORPORATE QUALIFICATIONS

ALLSTATE APPRAISAL, L.P. is a full service valuation and appraisal review firm engaged in the business of appraising in Metropolitan Chicago, throughout Illinois and ALL other states and has completed over 200,000 appraisal reports and appraisal review reports on property having an aggregate value in excess of 50 billion dollars.

EXPERIENCE: Appraisal assignments have covered residential, commercial, industrial and special purpose real estate, as well as machinery, equipment, contents and inventory, plus intangibles such as businesses, logos, investment portfolios, goodwill and even the monetary value of employees to going concerns. Additionally, we operate a national appraisal review service.

ALLSTATE APPRAISAL, L.P. ASSIGNMENTS HAVE BEEN FOR: Market value, appraisal review, insurable value, salvage value, orderly liquidation and forced liquidation.

ALLSTAE APPRAISAL, L.P. REPORTS HAVE BEEN USED FOR: Buying, selling, financing, insuring, construction, demolition, condemnation, litigation, PMI removal, relocation, tax abatement, estate planning, portfolio review, feasibility and more.

ALLSTATE APPRAISAL, L.P. REVIEW DIVISION helps maintain quality control for Lenders nationwide by reviewing their loan portfolio appraisals for quality and compliance with USPAP & FIRREA, as well as FAIR LENDING PRACTICE.

CLIENTS: A partial list of local and national clients includes the following:

BANKS/SBA LENDERS/THRIFTS
American National Bank and Trust
Austin Bank of Chicago
Bank of Lincolnwood
Banc One Corporation
Banco Popular Illinois
Bank of America
Chase Manhattan Bank
Citibank FSB
Cole Taylor Bank
Community Bank of Lawndale
Continental Bank
Cosmopolitan Bank
Evanston Bank
First National Bank of Mount Prospect
First Bank of Oak Park
First Illinois Bank of Wilmette
First National Bank - Chicago Heights
First National Bank – Frankfort
First National Bank - Olympia Fields
GreatBanc
Harris Bank & Trust Company
Heritage Bank
Heller First Capital Corporation
Union Household Bank
Korea Exchange Bank
LaSalle National Bank
Money Store Commercial Lending
NBD Bank of Evanston
Northern Trust Company
Pinnacle Bank
South Shore Bank
Standard Federal Bank

TITLE COMPANIES
Chicago Title & Trust Company
First American Title
Lawyers Title Insurance Corporation
Stewart Title
Ticor Title Insurance Company
CLT

MORTGAGE COMPANIES
Accredited Home Lenders
Ameriquest Mortgage
Amresco Residential Mortgage
ABN AMRO Mortgage Group, Inc.
Associates Finance
Equicredit Corporation
Financing USA
Fleet Mortgage Corporation
Ford Consumer Finance Corporation
Fremont Investment and Loan
Long Beach Mortgage
Merrill Lynch Mortgage Corporation
Mid City National
Mortgage Information Services
New Century Mortgage
Norwest Mortgage
Option One Mortgage
Saxon Mortgage
Spalter Finance
TransAmerica Financial Services

LAW FIRMS
Vrdolyak & Vrdolyak
Sidley & Austin
Katz, Randall, Weinburg & Richmond
Rudnick and Wolf
Amari & Locallo
Schoenberg & Fischer
Claussen Miller P.C.
Law Offices of Victoria Almeida
Wildman Harold Allen & Dixon

SAVINGS AND LOAN
Anchor Savings & Loan
First Nationwide
Home Federal Savings & Loan
Ocwen Federal Bank
United Savings of America
Washington Mutual

CORPORATE
Baird & Warner
Borg-Warner Chemicals Division
Campbell Soup Company
Crowe Chizek
Cendant Mobility Corp.
Coldwell Banker
DuPont Company
Eastern Airlines
Eastman Kodak Corporate Relocation
Motorola
Fannie Mae
General Motors Corporation
Kraft, Inc.
Inland Steel Corporation
McDonald=s Corporation
McGraw-Hill, Inc.
National Can Company
Price, Waterhouse
Procter and Gamble
The Seven-Up Company

CREDIT UNIONS
Best Source Credit Union
IBM Mid America Credit
Paysaver Credit Union
Navy Federal Credit Union

INSURANCE COMPANIES
Allstate Insurance
American Family Insurance
Prudential Insurance

MUNICIPAL AND GOVERNMENTAL
City of Chicago
Chicago Housing Authority
Various Villages and Cities
FDIC
Small Business Administration
U.S. Attorney
U.S. Marshalls Office
U.S. Dept. of Housing & Urban Dev.

ALLSTATE APPRAISAL, L.P. has been in the valuation business only, in continuous service since 1959.



Allstate Appraisal

FREEDOM TITLE CORPORATION
2?40 HICKS ROAD, SUITE 240, ROLLING MEADOWS,IL 60008
PHONE (847)797-9200 FAX (847)797-3150

Issuing Agent for
CHICAGO TITLE INSURANCE COMPANY

LOAN POLICY (199?)
SCHEDULE B (CONTINUED)

ORDER NUMBER: 6707605 POLICY NUMBER: 72107-70454291

6. GRANT BY FRANK S. LABOUNTY TO PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS DATED MAY 13, 1946 AND RECORDED MAY 16, 1946 AS DOCUMENT 13795927 THE RIGHT TO LAY, MAINTAIN AND OPERATE AN 18 INCH GAS MAIN AND NECESSARY APPURTENANCES IN, UPON AND UNDER AND ALONG THE NORTHEAST SIDE OF THE PUBLIC HIGHWAY KNOWN AS RAND ROAD WHICH EXTENDS ALONG THE SOUTHWEST SIDE OF THE LAND; AND SUPPLEMENTAL AGREEMENT BY SAID COMPANY WITH SAID PERSON TO CONFINE SAID GAS MAINS WITHIN THE CONFINES OF THE PUBLIC HIGHWAY KNOWN AS RAND ROAD SUPPLEMENTAL AGREEMENT DATED AUGUST 8, 1946 AND RECORDED SEPTEMBER 3, 1946 AS DOCUMENT 13883310.

7. DEDICATION MADE BY HENRY BLUME JR RECORDED DECEMBER 5, 1922 AS DOCUMENT 7737155 DEDICATING PART OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27 AFORESAID LYING NORTH OF THE CENTER OF RAND ROAD FOR PUBLIC HIGHWAY.

8. EASEMENT FOR PUBLIC UTILITIES IN THE MOST SOUTHEASTERLY CORNER OF THE LAND AS SHOWN ON THE AFORESAID PLAT OF SUBDIVISION

(AFFECTS THE MOST SOUTHEASTERLY 10' X 20' STRIP OF LAND)

9. EASEMENT OVER THE ABOVE DESCRIBED PORTIONS OF LAND OF THE LAND FOR THE PURPOSE OF INSTALLING AND MAINTAINING ALL EQUIPMENT NECESSARY TO SERVE THE SUBDIVISION AND OTHER LAND WITH TELEPHONE AND ELECTRICAL SERVICE, TOGETHER WITH THE RIGHT TO OVERHANG AERIAL SERVICE WIRES AND THE RIGHT OF ACCESS TO SUCH WIRES, AS CREATED BY GRANT TO THE ILLINOIS BELL TELEPHONE COMPANY AND THE COMMONWEALTH EDISON COMPANY AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS AND AS SHOWN ON THE PLAT OF SUBDIVISION RECORDED DECEMBER 18, 1968 AS DOCUMENT 20707569.

(AFFECTS THE SAME LAND AS SHOWN IN EXCEPTION NUMBER 14 )

Allstate Appraisal

FREEDOM TITLE CORPORATION
2240 HICKS ROAD, SUITE 240, ROLLING MEADOWS,IL 60008
PHONE (847)797-9200 FAX (847)797-8150

Issuing Agent for
CHICAGO TITLE INSURANCE COMPANY

LOAN POLICY (1992)
SCHEDULE B

ORDER NUMBER: 6707605 POLICY NUMBER: 72107-70454291

EXCEPTIONS FROM COVERAGE

THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE (AND THE COMPANY WILL NOT PAY COSTS, ATTORNEYS' FEES OR EXPENSES) WHICH ARISE BY REASON OF:

SPECIAL EXCEPTIONS

1. GENERAL TAXES FOR THE YEAR (S) 2004 AND 2005.

   PERMANENT INDEX NUMBER 03-27-307-024

   THE FIRST INSTALLMENT OF THE 2004 TAXES, AMOUNTING TO $63,731.35 IS PAID

   THE SECOND INSTALLMENT OF THE 2004 TAXES AND THE 2005 TAXES ARE NOT YET DUE AND PAYABLE.

2. ASSIGNMENT OF RENTS RECORDED ON AUGUST 12, 2005 AS DOCUMENT NUMBER 0522449058 MADE BY NORTH STAR TRUST COMPANY, AS SUCCESSOR TRUSTEE OF PARK NATIONAL BANK AND TRUST OF CHICAGO, AS TRUSTEE UNDER TRUST AGREEMENT DATED DECEMBER 20, 1993 AND KNOWN AS TRUST NO. 10129 TO PARK NATIONAL BANK AND TRUST OF CHICAGO.

3. EXISTING UNRECORDED LEASES AND ALL RIGHTS THEREUNDER OF THE LESSEES AND OF ANY PERSON OR PARTY CLAIMING BY, THROUGH OR UNDER THE LESSEES.

4. (A). TERMS, PROVISIONS, AND CONDITIONS RELATING TO THE EASEMENT DESCRIBED AS PARCEL 2 CONTAINED IN THE INSTRUMENT CREATING SAID EASEMENT.

   (B) RIGHTS OF THE ADJOINING OWNER OR OWNERS TO THE CONCURRENT USE OF SAID EASEMENT.

5. GRANT BY FRANK LA BOUNTY, DATED MAY 23, 1948 AND RECORDED JULY 9, 1948 AS DOCUMENT 14354675 TO PUBLIC SERVICE COMPANY OF NORTHERN ILLINOIS, THE RIGHT TO LAY, MAINTAIN AND OPERATE AN 8 INCH GAS- MAIN AND NECESSARY APPURTENANCES AND A CONCRETE REGULATOR VAULT, IN, UPON AND UNDER AND ALONG THE WEST SIDE OF THE PUBLIC HIGHWAY KNOWN AS ELMHURST ROAD, WHICH EXTENDS ALONG THE EAST SIDE OF THE PROPERTY OF SAID GRANTOR.



Allstate Appraisal

FREEDOM TITLE CORPORATION
2240 HICKS ROAD, SUITE 240, ROLLING MEADOWS,IL. 60008
PHONE (847)797-9200 FAX (847)797-8150

Issuing Agent for
CHICAGO TITLE INSURANCE COMPANY

**LOAN POLICY (1992)**
**SCHEDULE B (CONTINUED)**

ORDER NUMBER: 6707605 POLICY NUMBER: 72107-70454291

10. EASEMENT OVER THE ABOVE DESCRIBED PORTIONS OF THE LAND FOR THE PURPOSE OF INSTALLING AND MAINTAINING ALL EQUIPMENT NECESSARY TO SERVE THE SUBDIVISION AND OTHER LAND WITH GAS SERVICE, TOGETHER WITH RIGHT OF ACCESS TO SAID EQUIPMENT AS CREATED BY GRANT TO NORTHERN ILLINOIS GAS COMPANY AND ITS RESPECTIVE SUCCESSORS AND ASSIGNS AND AS SHOWN ON THE PLAT OF SUBDIVISION RECORDED DECEMBER 18, 1968 AS DOCUMENT 20707569.

    (AFFECTS THE SAME LAND AS NOTED ABOVE IN EXCEPTION 14)

11. EASEMENT IN, UPON, UNDER AND ALONG THE STRIPS AND/OR PARCELS OF LAND LABELED PUBLIC UTILITY EASEMENTS AND INDICATED BY BROKEN LINES AND SHADING ON THE PLAT ATTACHED THERETO AND MARKED EXHIBIT 'A', THE RIGHT, PERMISSION AND AUTHORITY TO CONSTRUCT, LAY, OPERATE, MAINTAIN, RELOCATE, RENEW AND REMOVE EQUIPMENT CONSISTING OF UNDERGROUND WIRES AND UNDERGROUND CONDUITS, CABLES, ABOVE GROUND TRANSFORMER ENCLOSURES AND OTHER NECESSARY ELECTRICAL FACILITIES AND TO TRANSMIT AND DISTRIBUTE BY MEANS OF SAID EQUIP, ELECTRICITY; WITH THE RIGHT OF ACCESS TO SAME FOR THE MAINTENANCE THEREOF; ALSO TO TRIM OR REMOVE FROM TIME TO TIME SUCH TREES, BUSHES AND SAPLINGS AS MAY BE REASONABLY REQUIRED; AND THAT SAID EASEMENT PASSES UNDER THE BUILDING LOCATED ON SAID LAND AND THAT ANY FUTURE MAINTENANCE WILL NOT DISTURB SAID BUILDING IN ANY WAY; AS CREATED BY GRANT TO COMMONWEALTH EDISON COMPANY, THE~R SUCCESSORS AND ASSIGNS, RECORDED FEBRUARY 24, 1967 AS DOCUMENT 20071070.

    (AFFECTS A 5 FOOT STRIP OF LAND RUNNING NORTH TO SOUTH APPROXIMATELY THROUGH THE MIDDLE OF THE LAND ).

12. EASEMENT FOR INGRESS AND "EGRESS FOR THE BENEFIT OF THE LAND SOUTH AND ADJOINING AS CREATED BY DEED FROM D G. FRANZEN, AS TRUSTEE UNDER TRUST AGREEMENT DATED MARCH 28, 1980 AND KNOWN AS TRUST NUMBER 580 TO R. A. FRANZEN, ALSO KNOWN AS ROLAND A. FRANZEN DATED JUNE 9, 1981 AND RECORDED JULY 22, 1981 AS DOCUMENT 25945073 OVER THAT PORTION OF LOT 1 DESCRIBED AS FOLLOWS: THE WEST 25 FEET OF THE EAST 45 FEET (EXCEPT THE NORTHERLY 20 FEET THEREOF), MEASURED AT RIGHT ANGLES TO THE EAST LINE OF LOT I, AND THE SOUTHEASTERLY 25 FEET OF THE NORTHWESTERLY 45 FEET, MEASURED AT RIGHT ANGLES TO THE NORTHWESTERLY LINE OF LOT 1, OF THE EAST 20 FEET OF LOT 1.

 Allstate Appraisal

FREEDOM TITLE CORPORATION
2240 HICKS ROAD, SUITE 240, ROLLING MEADOWS,IL 60008
PHONE (847)797-8200 FAX (847)797-8150

Issuing Agent for
CHICAGO TITLE INSURANCE COMPANY

**LOAN POLICY (1992)**
**SCHEDULE B (CONTINUED)**

ORDER NUMBER: 6707605 POLICY NUMBER: 72107-70454291

13. ENCROACHMENT OF THE ONE STORY BRICK COMMERCIAL BUILDING LOCATED ON SAID LAND OVER AND ONTO THE EASEMENT REFERRED TO IN EXCEPTION NOTED ABOVE BY 5 FEET AS DISCLOSED BY THE SURVEY MADE BY ROBERT E. FREDERICK DATED OCTOBER 8, 1966.

14. UNRECORDED GRANT OF EASEMENT AS DISCLOSED BY PLAT OF SURVEY FROM F. C. BREHM AS TRUSTEE UNDER TRUST NUMBER 580 TO THE COMMONWEALTH EDISON COMPANY OF THE RIGHT TO CONSTRUCT, LAY, OPERATE, MAINTAIN, RELOCATE, RENEW AND REMOVE NECESSARY ELECTRIC FACILITIES AND TO HAVE RIGHT OF ACCESS TO LAND TO MAINTAIN SAID ELECTRIC FACILITIES OVER THE FOLLOWING DESCRIBED LAND: THAT PART OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS: COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF ,RAND ROAD WITH THE EAST LINE OF THE SAID EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, SAID POINT OF INTERSECTION BEING 198.97 FEET NORTH OF THE SOUTH LINE OF SECTION 27; THENCE NORTHWESTERLY ALONG THE SAID CENTER LINE OF RAND ROAD, 439.93 FEET NORTH OF THE INTERSECTION OF THE SAID EAST LINE WITH THE CENTER LINE OF RAND ROAD, FOR A DISTANCE OF 170.23 FEET; THENCE NORTHWESTERLY AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, A DISTANCE OF 138.14 FEET TO THE POINT OF BEGINNING; THENCE NORTHWESTERLY ALONG A PROLONGATION OF THE LAST DESCRIBED COURSE, A DISTANCE OF 50.89 FEET; THENCE NORTHEASTERLY AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, A DISTANCE OF 249.60 FEET TO A POINT ON THE AFORESAID EAST LINE OF THE EAST HALF OF THE SOUTHWEST 1/4 OF SECTION 27; THENCE NORTHWARD ALONG THE SAID EAST LINE OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, A DISTANCE OF 136.35 FEET; THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY LINE OF 'WEDGEWOOD TERRACE' A SUBDIVISION RECORDED MARCH 4, 1946 AS DOCUMENT 13732148, A DISTANCE OF 604.50 FEET TO A POINT ON THE CENTER LINE OF RAND ROAD; THENCE SOUTHEASTWARD ALONG THE SAID CENTER LINE OF RAND ROAD, BEING A CURVED LINE CONVEXED TO THE SOUTHWEST, OF 15,626.1 FEET IN RADIUS, FOR AN ARC LENGTH OF 68.20 FEET TO A POINT OF TANGENCY; THENCE CONTINUING SOUTHEASTWARD ALONG THE SAID CENTER LINE OF RAND ROAD, A DISTANCE OF 123.28 FEET TO A POINT BEING 569.74 FEET NORTHWESTERLY OF THE INTERSECTION WITH THE EAST LINE OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, THENCE NORTHEASTERLY A DISTANCE OF 228.20 FEET TO THE POINT OF BEGINNING, (EXCEPTING THEREFROM THAT PART THEREOF HERETOFORE DEDICATED FOR PUBLIC HIGHWAYS), IN COOK COUNTY, ILLINOIS.

15. 30 FOOT BUILDING LINE ALONG THE EAST AND SOUTHWESTERLY LINES OF THE LAND AS SHOWN ON THE PLAT OF SUBDIVISION RECORDED DECEMBER 18, 1968 AS DOCUMENT 20707569.

Allstate Appraisal

FREEDOM TITLE CORPORATION
2240 HICKS ROAD, SUITE 240, ROLLING MEADOWS,IL 60008
PHONE (847)797-9200 FAX (847)797-8150

Issuing Agent for
CHICAGO TITLE INSURANCE COMPANY

**LOAN POLICY (1992)**
**SCHEDULE B (CONTINUED)**

ORDER NUMBER: 6707605 POLICY NUMBER: 72107-70454291

16. EASEMENT FOR PUBLIC UTILITIES OVER A 5 FOOT STRIP OF LAND RUNNING FROM NORTH TO SOUTH APPROXIMATELY THROUGH THE MIDDLE OF THE LAND AS SHOWN ON THE PLAT OF SUBDIVISION AFORESAID.

END OF SCHEDULE B