1              UNITED STATES BANKRUPTCY COURT
                   DISTRICT OF DELAWARE
2

3   IN RE:                      )  Case No. 07-11047 (CSS)
                                )  Chapter 11
4   AMERICAN HOME MORTGAGE HOLDINGS,)
    INC., a Delaware Corporation,   )
5   et al.,                     )
                                )  Courtroom No. 6
6              Debtors.         )  824 Market Street
                                )  Wilmington, Delaware 19801
7                               )
                                )
8                               )  December 14, 2009
                                )  11:30 AP.M.
9
                     TRANSCRIPT OF HEARING
10        BEFORE HONORABLE CHRISTOPHER S. SONTCHI
               UNITED STATES BANKRUPTCY JUDGE
11
    APPEARANCES:
12
    For the Debtors:         Young Conaway Stargatt & Taylor, LLP
13                           By:  MICHAEL NEIBURG, ESQ.
                                  SEAN BEACH, ESQ.
14  Warn Class Action            MARIBETH MINELLA, ESQ.
                             The Brandywine Building
15                           1000 West Street, 17th Floor
                             Wilmington, Delaware 19801
16                           (302) 571-6600

17  For Strauss              McDermott Will & Emery
                             By:   GARY RAVERT, ESQ.
18                                 LANCE ROTHERNBERG, ESQ.
                             340 Madison Avenue
19                           New York, New York 10173
                             (212)547-5400

20

21  ECRO:                    LESLIE MURIN

22  Transcription Service:   Antonio's Word Processing Services
                             704 W. 14th Street
23                           New Castle, Delaware  19720
                             Telephone:  (302) 322-9419
24                           E-Mail:  antonioswp@verizon.net

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

```
 1   For AHM Client,            Landis Rath & Cobb LLP
     JPMC:                      By:    KIM BROWN, ESQ.
 2                              919 Market Street, Suite 1800
                                Wilmington, Delaware 19801
 3                              (302) 467-4400

 4   For Class Counsel:         Outten & Golden, LLP
                                By:    RENE ROUPINIAN, ESQ.
 5                              3 Park Avenue, 29th Floor
                                New York, New York 10016
 6                              (212) 245-1000

 7
     For Koch, et al.           The Gardner Law Firm
 8                              By:    MICHAEL McCRARY, ESQ.
                                       MARY OLSEN, ESQ.
 9
     For the Committee:         Hahn & Hessen, LLP
10                              By:    JEFFREY ZAWADZKI, ESQ.
                                       MARK INDELICATO
11                              488 Madison Avenue
                                New York, New York 10022
12                              (212) 478-7200

13                              Blank Rome, LLP
                                By:    BONNIE FATELL, ESQ.
14                              1201 Market Street, Suite 800
                                Wilmington, Delaware 19801
15                              (302) 425-6400

16   For Mortgage Guaranty      Fox Rothschild LLP
     Insurance Corp.:           By:    SETH NIEDERMAN, ESQ.
17                              Citizens Bank Center
                                919 North Market Street, Suite 1300
18                              P.O. Box 2323
                                Wilmington, Delaware 19899-2323
19                              (302) 654-7444

20   For Trial Guaranty:        Womble Carlyle
                                By:    KEVIN MANGAN, ESQ.
21                              222 Delaware Avenue
                                Wilmington, Delaware 19801
22                              (302) 252-4320

23   For Bank of America:       Potter Anderson & Corroon LLP
                                By:    R. STEPHEN MCNEILL, ESQ.
24                              Hercules Plaza
                                1313 North Market Street, 6th Floor
25                              Wilmington, Delaware 19801
                                (302) 984-6000
```

1   For Park National:          Womble Carlyle
                                By:    MIKE BUSENKELL, ESQ.
2                               222 Delaware Avenue
                                Wilmington, Delaware 19801
3                               (302) 252-4320

1                               INDEX

2
OPENING STATEMENTS:                                    Page
3  On behalf of the Debtors, by Mr. Beach                  5

4  NOTICE OF AGENDA MATTERS:
   On behalf of the Debtors, by Mr. Beach                  9
5  On behalf of the Debtors, by Mr. Neiburg              11
   On behalf of the Debtors, by Ms. Minella              12
6  On behalf of the Committee, by Mr. Indelicato         14
   On behalf of the Class, by Ms. Roupinian              15
7  On behalf of the Debtors, by Mr. Neiburg              17
   On behalf of the Debtors, by Mr. Beach                18
8  On behalf of the Committee, by Mr. Zawadzki           21
   On behalf of the Debtors, by Mr. Beach                22

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  All rise.

2          THE COURT:  Please be seated.

3          MR. BEACH:  Good morning, Your Honor.

4          THE COURT:  Good morning.

5          MR. BEACH:  May it please the Court, Sean Beach from

6  Young Conaway Stargatt & Taylor on behalf of the Debtors.

7  Your Honor, before I start, this hearing may be a good time

8  to give Your Honor an update in terms of where we are with

9  the plan effective date and some of the other issues in the

10  case.  If Your Honor is interested in hearing a status

11  update, would you like to hear it now or would you prefer

12  after the agenda - -

13          THE COURT:  No, no, now's fine.

14          MR. BEACH:  Okay.  Your Honor, as you will recall

15  the plan was confirmed in February, February 23, 2009.  The

16  plan has not yet gone effective.  The Debtors have been

17  working very closely with the Committee and Mr. Sass

18  [*phonetic*] the claimant's trustee in terms of transition

19  issues.  And given the amount of time we've had, we've been

20  able to make a lot of progress in that regard.  Mr. Sass has

21  visited the Debtors' office location, has met with the

22  employees, has worked with the Debtors' professionals, as

23  well as the Committee professionals and is getting fully up

24  to speed with respect to where these rather complicated cases

25  stand and what issues will remain after the effective date.

1  In terms of why we haven't gone effective, I think Your Honor

2  is aware as we've talked a little bit before one of the key

3  issues for us to go effective is either to have the bank sale

4  consummated or to reduce the significant number of

5  administrative and priority claims down to a level and to

6  liquidate certain other aspects to a level where we can go

7  effective.  We've been working very hard at that task and

8  month by month, we get closer to that, but we still believe

9  that the bank sale is going to be required for us to go

10  effective or we're going to have to get a recovery on some of

11  the significant litigations.  Even if we do get the

12  administrative and priority claims down to a very low level,

13  we'll probably still need recovery from one of those other

14  litigation assets in order to go effective.

15        In terms of the bank sale, the closing on that has

16  been delayed because of the regulatory approval.  We still

17  anticipate that the bank sale will close but at the end of

18  the month, the stock purchase agreement terminates by its

19  terms.  We have been in negotiations with Bankcorp the

20  purchaser to extend the termination date under the stock

21  purchase agreement.  We have authority under the sale order

22  to make modifications and amendments that don't have a

23  material adverse affect on the Debtors' estate.  And

24  depending on how those negotiations come out in terms of the

25  amendment, we'll have to determine whether or not additional

1  Court approval is required in connection with that.  The Fed

2  has signed off on the bank sale.  The OTS in Chicago has

3  signed off on the bank sale.  A couple weeks ago the OTS in

4  D.C. has raised some concerns in connection with the closing

5  of the bank sale; the two mains concerns being the business

6  model proposed by the purchaser and the dividend that's

7  proposed under the sale.  As Your Honor may recall, the main

8  benefit to the main benefit to the Debtors in selling the

9  stock is getting the dividends from the sale.  We hope to

10 have a meeting this week with the OTS.  We proposed a meeting

11 With the OTS in D.C. this week along with Bankcorp and the

12 Debtors' advisers to hopefully work through those issues but

13 those negotiations and discussions with the regulatory

14 authorities are ongoing.  So we do certainly hope that that

15 bank sale closes, but we're in continuing discussions about

16 that.

17         Just in terms of general administration, Your Honor,

18 there are about 11,000 claims filed in the case.  We've

19 allowed about 3800 claims.  There have been 6,000 claims that

20 were expunged and there are about 800 claims that remain

21 open.  I think 250 of those are subject to objections where

22 we've either adjourned or those objections are pending.  So

23 we have widdled down the claim's pool significantly, but

24 there is still some work to do in that regard.

25         Your Honor, some of the other significant issues

1    that we're working through in order to reduce administrative

2    claims or to liquidate assets of the estate are a settlement

3    with the Wilbur Ross entity that bought the servicing

4    business.  As Your Honor will recall several months ago, I

5    announced that we had a settlement in principle with Wilbur

6    Ross in connection with the administrative claim the $17

7    million dollar administrative claim that Ross asserted.  That

8    settlement and principle still exist.  But what we have been

9    doing over the last few months is to work on reconciling a

10   number of other APA related items in terms of advances,

11   servicing fees, and a number of other un-reconciled items so

12   that we can bake those all into one global settlement with

13   the servicer and hopefully not bring those before Your Honor

14   on any contested basis.  So we continue to work towards that.

15   We are getting closer.  And we do hope that either by the end

16   of this year or early next year, we'll have a motion on file

17   to seek the approval of that settlement.

18          Today, Your Honor, you'll hear the settlement in

19   connection with the WARN litigation which will also be a

20   significant boost to our ability to go effective.  You'll

21   hear a little bit later about the structure of that

22   settlement.  But it essentially, the WARN claimants will be

23   taking, will not take, there will be no reserve for priority

24   claims in connection with that WARN settlement.  The WARN

25   plaintiffs will be taking a portion of certain distributions

1  to unsecured creditors.  So there's no separate reserve in

2  connection with how that settlement is structured.

3       In addition, Your Honor, the Debtors continue to

4  maintain a $5.7 million dollar escrow in connection with a

5  number of accounts.  Early in the case, there were a

6  significant number of parties that were making claims to some

7  of the assets in the Debtors' bank accounts: Calyon being one

8  that [indiscernible] others.  And we've been able to resolve

9  all of the claims to that $5.7 million dollar escrow except

10  with respect to certain claims that our subsidiary

11  Broadhollow might be able to assert.  We're in negotiations

12  with the noteholders which are the primary interest holders

13  in the assets of Broadhollow to resolve some of the issues

14  between our subsidiary and the Debtors and hope to be in a

15  position to file pleadings that would help free up those

16  assets as well.

17       Your Honor, that's the general overview of where

18  we're were at and I'm happy to answer any questions that Your

19  Honor might have in terms of where things stand at this

20  point.

21       THE COURT:  No that's fine.  Thank you very much.

22  It's helpful.

23       MR. BEACH:  Thank you, Your Honor.  Your Honor, I

24  believe the first 21 items on the agenda are either adjourned

25  or yeah they're adjourned.  Sorry item numbers 22 through 24

1  are also adjourned.  Item number 25 is a motion by a

2  Committee but if I may skip to item number 26 for a moment.

3  There was a certificate of no objection filed on item number

4  26 which is the Debtors' motion to reject and abandon a

5  certain real property lease.  I spoke with Mr. Busenkell

6  prior to the hearing and his client has some concerns about

7  the relief requested in that motion.  So I am I'd like, if

8  it's acceptable to Your Honor, to take a brief recess at some

9  point so I can talk to Mr. Busenkell and call someone back in

10 my office to see if we can resolve whatever those issues are.

11         THE COURT:  Okay.  I signed all orders where I

12 received CNO's so, Ms. Werkheiser, do you mind taking a break

13 and seeing if you can make sure that doesn't get docketed,

14 item 26?  Twenty-six, right?

15         MR. BEACH:  That's right, Your Honor.

16         THE COURT:  Thank you.

17         MR. BEACH:  So with that, Your Honor, I will, I'm

18 sorry.  So if Your Honor signed items number 25 and 27 I

19 think that would bring us to item number 28 which is omnibus

20 objection.

21         THE COURT:  I did.

22         MR. BEACH:  And with that, Your Honor, I cede the

23 podium to my colleague Michael Neiburg.

24         MR. NEIBURG:  Good morning, Your Honor, Michael

25 Neiburg from Young Conaway Stargatt & Taylor on behalf of the

1   Debtors.  First item is agenda item number 28, Your Honor,

2   which is the Debtors' forty-fifth omnibus objection to

3   claims.  Your Honor, the Debtors received no informal

4   responses and no responses were filed to this objection.

5        THE COURT:  I have no comments in connection with

6   that objection so I'll sign the order.  Please approach.

7   Thank you.  Does anyone else wish to be heard in connection

8   with this matter?  Court hears none.  I'll sign the order.

9        MR. NEIBURG:  Next is agenda item number 29, Your

10  Honor, the Debtors forty-sixth omnibus objection to claims.

11  Again, Your Honor, received neither informal responses nor

12  were any responses filed in connection with this objection.

13       THE COURT:  All right I only have one issue with

14  this.  It's on Exhibit D "Insufficient Documentation Claim of

15  Martha Lopez", claim 7508.  On its face, it states that the

16  claim is for two weeks severance.  You say there's

17  insufficient documentation, but I think I need more

18  information.

19       MR. NEIBURG:  Copy of maybe the employment contract,

20  Your Honor, that provides for no severance pay?

21       THE COURT:  Yes.

22       MR. NEIBURG:  Okay.

23       THE COURT:  Yeah something like that.  So subject to

24  striking that or continuing that one to the next hearing

25  unless you have that with you?

1       MR. NEIBURG:  No - -

2       THE COURT:  Do you have Martha Lopez's employment

3  contract - -

4       MR. NEIBURG:  I don't have it with me, Your Honor.

5       THE COURT:  Oh I'm shocked.

6       MR. NEIBURG:  Should I write it in or just submit a

7  - -

8       THE COURT:  No, no, you can just strike it from the

9  exhibit as far as I'm concerned.  It'll be continued to the

10  next matter or next hearing and I'll sign the order as

11  modified.

12       MR. NEIBURG:  Thank you, Your Honor.  With that,

13  Your Honor, I cede the podium for the next agenda matter.

14       THE COURT:  Very good.

15       MS. MINELLA:  Good morning, Your Honor, Maribeth

16  Minella on behalf of the Debtor defendants and the WARN class

17  action adversary proceeding.  As Your Honor is aware in

18  August of 2007 certain class representatives representing

19  themselves and similarly situated employees initiated an

20  adversary proceeding with a complaint under the Worker

21  Adjustment and Retraining Notification Act which is the

22  Federal WARN Act and it's California State counterparts.  In

23  their complaint, they allege that the Debtors had not

24  provided the requisite 60-days notice of a mass layoff.  I'm

25  here to report that this is the Fairness Hearing on the

1  settlement agreement.  Eventually, the Creditors Committee

2  had intervened and the party.  We have representation from

3  the Committee here in the Courtroom today.  We also have

4  representation from class counsel on the phone and in the

5  Courtroom today.

6            As Mr. Beach alluded to in his opening, there was a

7  reserve established in conjunction with this adversary

8  proceeding.  There's a $1.7 million dollar reserve for

9  distribution purposes only.  And we have built into today's

10  final order and it was also built into the settlement

11  agreement a provision whereby the Debtors may release the

12  reserve on execution of the final order for the settlement

13  agreement so that monies can be put to use elsewhere.  Just

14  to give Your Honor a brief outline of the settlement

15  agreement, you actually did preliminarily approve the

16  settlement through a 9019 motion in October.  And that is

17  what triggered this Fairness Hearing.  There have been in the

18  interim no objections to the settlement agreement received by

19  class counsel informally.  There have been no formal

20  objections filed.  In their adversary proceeding, the WARN

21  claimants asserted that their max liability was about $27

22  million dollars.  The parties have settled the matter for

23  $6.5 million dollars.  And as Mr. Beach correctly alluded to

24  in his opening, that will come out of distributions to

25  Unsecured Creditors. Essentially the structure is that the

1  WARN claimants and Unsecured Creditors will share equally in

2  the first portion not to exceed the cap of the settlement

3  agreements.  Class counsel is, of course, entitled to

4  reimbursement of their fees and out-of-pocket expenses not to

5  exceed $225,000.00.  And the class representatives will each

6  receive a one time payment of $7,500.00.

7        The purpose, Your Honor, of this hearing today is

8  just to finalize that the terms of the agreement are fair,

9  reasonable, and adequate.  As you are likely aware how this

10  matter proceeded to trial, it would have been very expensive

11  probably protracted and the outcome would have been uncertain

12  for the Debtors.  For these reasons, all parties have agreed

13  that the settlement agreement is in the best interest of the

14  Creditors, the Debtors and their estates.

15        THE COURT:  All right, thank you.  Does anyone wish

16  to be heard?  Mr. Indelicato?

17        MR. INDELICATO:  Good morning, Your Honor, Mark

18  Indelicato from Hahn & Hessen on behalf of the Committee.

19  Your Honor, this, unlike most WARN Acts, was even more

20  difficult to settle since the estate had a liquidity issue.

21  We were able to work with plaintiff's counsel to work out

22  what we thought was a creative solution to resolve the issues

23  in that they would get paid as the funds came into the

24  estate.  This allowed us to cut off the legal fees and get

25  the settlement done as quickly as possible and not incur

1   those expenses and use the money, in other words, to pay the

2   Creditors.  Your Honor, we think this is the best settlement

3   that could come in.  It took into account all various

4   contingencies and constituencies.  We do think this is in the

5   best interest of the estate, and we echo what the Debtors

6   said it clearly meets all the standards for approval, and we

7   would urge the Court to enter final approval.  Thank you.

8           THE COURT:  Thank you.  Anyone else?  Good morning.

9           MS. ROUPINIAN:  Good morning, Your Honor, Rene

10  Roupinian of Outten & Golden appearing on behalf of the

11  Class.  I just want to echo the comments of the Debtors'

12  counsel and Committee counsel and inform the Court that this

13  was a projected litigation.  The Court may recall there were

14  hundreds of thousands of documents that needed to be reviewed

15  and electronically stored which contributed to the

16  significant costs and expenses in the case.  The settlement

17  is an excellent recovery for the Class and does take into

18  consideration the liquidity issues of the estate.  I just

19  wanted to thank Committee counsel for facilitating an open

20  dialogue of communication between Debtors' counsel and Class

21  counsel and also thank the Court for its patience in allowing

22  the parties the time it needed to work through the various

23  issues.  And also thank Debtors' counsel, although we had

24  very stark differences in the merits of the case, there was

25  professionalism and cooperation throughout the litigation.

1  If the Court doesn't have any further questions?

2         THE COURT:  I have no questions.  Thank you very

3  much.

4         MS. ROUPINIAN:  Thank you, Your Honor.

5         THE COURT:  Form of order?

6         MS. MINELLA:  Yes, Your Honor, may I approach?

7         THE COURT:  Yes, you may.  Based upon the evidence

8  and comments at the preliminary hearing and the comments and

9  representations to the Court at today's hearing, I find that

10  the settlement first meets the 9019 standards.  And, second,

11  meets the standards for settlement of a class action under

12  the Federal Rules of Bankruptcy Procedure, and I will sign

13  the order and approve the settlement.

14         MS. MINELLA:  Thank you very much, Your Honor.

15         THE COURT:  You're welcome.

16         MS. MINELLA:  Your Honor, that is my only item on

17  today's agenda.  May I be excused?

18         THE COURT:  Yes.

19         MS. MINELLA:  Thank you.

20         THE COURT:  So we have a scheduling conference and

21  the issue about insurance left, correct?

22         MR. NEIBURG:  And I believe there's a sales and use

23  taxes.

24         THE COURT:  Well that's what I meant.

25         MR. NEIBURG:  Okay.

1          THE COURT:  Did I say insurance?  I meant taxes.

2          MR. NEIBURG:  Your Honor, I have revised the order

3    with respect to the 46th objection.  May I approach?

4          THE COURT:  Thank you.  Oh, and fee apps, sorry.

5    Everybody panic, anyone panic?

6          MS. FATELL:  Not yet.

7          THE COURT:  All right.  Let's take that first.  Have

8    there been changes in connection with or any disputes with

9    the fee examiners, comments?  All right, I have no further

10   comments.  I'll sign the, approve the fee apps.  Do you have

11   an omnibus order or some order?  Very good; thank you.  This

12   covers everybody, right?

13         MR. INDELICATO:  Yes, Your Honor, these apps are

14   just committee professionals.  And just so the Court is clear

15   there may be some, there are, we have agreed as professionals

16   that from a certain period forward, we would only be getting

17   paid 50%.  That's why there is 50% in there for certain fee

18   applications.  It was no dispute.  That's been the agreement

19   of the professionals to maintain the liquidity of the estate.

20         THE COURT:  Very good.  Thank you.  I've signed the

21   order.

22         MS. FATELL:  Thank you, Your Honor.

23         THE COURT:  You're welcome.

24         MR. BEACH:  Your Honor, for the record Sean Beach.

25   That brings us to the sales and use tax motion.  Your Honor,

1   there was one objection to the motion, a limited objection

2   filed by the Committee.  I'm pleased to say that we have been

3   able to resolve the Committee's objection by revisions to the

4   form of order and revisions to the relief request.  In

5   essence, it's similar to a first day motion and be able to

6   pay sales and use taxes to alleviate some of the concerns

7   that the taxing authorities would go after directors and

8   officers personally.  This, in our first day sales and use

9   tax order, the Debtors asked for a relief with a cap of up to

10  a $150,000.00.  That estimate was low in light of the

11  liability to New York State.  And recently, New York State

12  has issued a warrant out against Michael Strauss to seek to

13  collect a portion of the New York State sales and use taxes.

14  The Debtors filed this motion to seek relief to pay all of

15  the outstanding sales and use taxes to New York State in the

16  amount of approximately $302,000.00.  After discussions with

17  the Committee and with Mr. Strauss's counsel Lance

18  Rothenberg, who's on the phone today, we have revised the

19  form of order to seek a cap in addition to the $150 that we

20  had at the beginning of the case of a $110,000.00 which is

21  the approximate amount or it relates to the specific tax

22  periods that New York state is going after Mr. Strauss for.

23  And so we've limited the relief instead of $325,000.00 to a

24  $110,000.00.  We've specifically identified the tax periods.

25  One of the concerns we had with doing this from the beginning

1  was New York state had indicated to us that if we made a

2  payment in connection with the sales and use taxes, they

3  would apply it anyway they saw fit.  And so if we paid only a

4  portion, we were concerned that the relief wouldn't gain the

5  advantage that we had hoped it would which is to alleviate

6  Mr. Strauss from some of the immediate problems he is having

7  with the collection efforts.  We have specifically identified

8  those tax periods in the order itself so that Your Honor

9  would only be authorizing us to pay on account of those

10  specific time periods.  So that if New York State applied it

11  in any different way, the estate could seek under 549 to

12  recoup those amounts.  We're hoping since its very specific

13  in terms of what we're asking Your Honor to grant, that they

14  will allocate it to the appropriate taxes and that they will

15  then alleviate the warrant against Mr. Strauss.

16           So with that, Your Honor, I can approach with a

17  revised form of order and answer any questions that you may

18  have.

19           THE COURT:  All right, let me see the order please.

20           MR. BEACH:  Your Honor, the primary changes are in

21  paragraph 2.  And as indicated, we reduced the amounts sought

22  instead of $325,000.00, they owe a $110,000.00 and

23  specifically identified certain tax periods.  And certain

24  aggregate amounts plus prepetition interest that the Debtors

25  would be liable for.

1          THE COURT:  Now Mr. Strauss was employed on these

2   dates?

3          MR. BEACH:  Yes, he was.

4          THE COURT:  Does he have indemnification rights or

5   contribution rights from the Debtors' estates?  Mr.

6   Indelicato?

7          MR. INDELICATO:  Your Honor, those are the issues

8   that we were trying to address partially in our objection.

9   We believe he may have some.  We didn't want to get involved

10  in the litigation whether he did or didn't and how it was

11  affected by some of the other litigation that may have

12  existed.  We believe that these expenses are, the taxes are

13  valid so they're going to have to be paid anyway.  So that's

14  the reason we're consenting to those being paid today but not

15  the rest.

16         THE COURT:  All right.  I signed the order.

17         MR. BEACH:  Thank you, Your Honor.

18         THE COURT:  You're welcome.  Scheduling conference?

19         MR. BEACH:  Yeah, Your Honor, I think the only two

20  items are the scheduling conference and then if I may step

21  out for a moment to try to deal with the lease rejection and

22  abandonment motion.

23         THE COURT:  Yes, that's fine.  And we did find and

24  pull that order before it was docketed.

25         MR. BEACH:  Thank you, Your Honor.

1    THE COURT:  You're welcome.

2    MR. ZAWADZKI:  Good morning, Your Honor, Jeff

3  Zawadzki Hahn & Hessen on behalf of the Committee.  I'll deal

4  with the last two items on the agenda the scheduling

5  conference for a series of preference actions that were

6  commenced by the Committee and the Debtors.  Your Honor, I

7  would ask the post scheduling order be entered.  I will say

8  there has been one change since it's been filed and that was

9  to remove Triad Guaranty Insurance Corp from the exhibit.

10  They were included due to a scribus error and they've been

11  removed from that order.  This order mirrors the one that was

12  entered in the previous series of actions.  With respect to

13  Triad as you may recall, Triad had commenced in adversary

14  proceeding against the Debtors.  A decision was made that we

15  would mirror the Committee's preference action adversary to

16  scheduling and to that in the Triad adversary.  There's been

17  no responses either formal or informal with respect to this

18  order, Your Honor.

19    THE COURT:  All right, please approach. Does anyone

20  wish to be heard in connection with these orders?  The Court

21  hears none.  You're welcome.  I'll sign the order.  We have

22  one for the Triad separately; it was on the agenda

23  separately.

24    MR. ZAWADZKI:  That's separately on there.  We're

25  going to work out a - -

1          THE COURT:  Well that's the Debtors - -

2          MR. ZAWADZKI:  Yes, sir.  That one is going to

3  mirror the scheduling order in the Triad commenced adversary

4  - -

5          THE COURT:  I understand, but you haven't - -

6          MR. ZAWADZKI:  I don't have one with me, sir.

7          THE COURT:  All right, so you're going to admit

8  something under cert - -

9          MR. ZAWADZKI:  That's correct, sir.

10          THE COURT:  Very good.  That's fine.  All right,

11  I've signed the order.  We'll take a recess while they

12  discuss the lease rejection issue.

13      (Court in recess 11:58 to 12:10)

14          MR. BEACH:  Your Honor, for the record Sean Beach.

15  Thank you for the time.  We've been able to work out the

16  concern that Mr. Busenkell's client had.  There were a couple

17  of things, Your Honor.  First, the, this motion seeks to

18  abandon certain real property in Chicago and then also to

19  reject some of the real property leases that the Debtor has

20  with certain tenants in that property effective as of

21  December 31, 2009.  Mr. Busenkell asked that we make it clear

22  that the property is abandoned at that same time as those

23  contracts are rejected December 31, 2009.  In addition, there

24  is a stay relief motion that Park National, Mr. Busenkell's

25  client, had filed that was up for a hearing a few hearing ago

1  and I believe it was adjourned.  It's listed on the agenda as

2  item number 22 I believe.  And the agenda indicates that a

3  consent form of order will be filed under certification of

4  counsel granting Park National stay relief.  Mr. Busenkell's

5  concern was that his client needs to get into the property to

6  be able to put a receiver in place prior to the property

7  being abandoned and the contracts being rejected.  I'm told

8  that that order is substantially final and should be

9  submitted under certification of counsel within the next

10 couple of days to Your Honor.  So we would just ask that Your

11 Honor take a look at that order and if it's acceptable enter

12 that order as quickly as possible so that there's some period

13 of time prior to the abandonment rejection for Mr.

14 Busenkell's client to get into the property.

15          THE COURT:  All right.

16          MR. BUSENKELL:  Your Honor, Mike Busenkell on behalf

17 of Park National.  Mr. Beach summed up our concerns fairly

18 well and I thank Your Honor for Your Honor's patience.  Our

19 concern was that the rejection of the underlying leases and

20 the abandonment of the property for us as the mortgagee

21 coincide and that we be given stay relief a little bit in

22 advance of that so we have time.  There's no gap and that we

23 have time to get a receiver in place to make sure that the

24 tenants are serviced and there's no disruption in the

25 property or anything catastrophic happening.  And I think the

1  changes to the order and the stay relief stipulation that

2  hopefully should be coming across Your Honor's desk should

3  address those concerns so.  Thank you, Your Honor.

4          THE COURT:  You're welcome.

5          MR. BEACH:  May I approach, Your Honor?

6          THE COURT:  Yes.  Thank you.

7          MR. BEACH:  Your Honor, we interlineated a few

8  changes that you'll note in the order.

9          THE COURT:  Okay.  All right based on the resolution

10 of the matter, I'll sign the order as modified.

11         MR. BEACH:  Thank you, Your Honor.  Unless Your

12 Honor has any questions that concludes today's hearing.

13         THE COURT:  All right, thank you.  Hearing

14 adjourned.

15     (Court Adjourned)

16

17                        CERTIFICATE

18

19 I certify that the foregoing is a correct transcript from the

20 electronic sound recording of the proceedings in the above-

21 entitled matter.

22
   /s/Mary Zajaczkowski                   December 30, 2009
23 Mary Zajaczkowski, CET                      Date

24

25