IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x  Chapter 11
In re:                                                          :
                                                                :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                          :
HOLDINGS, INC., a Delaware corporation, et al.,                 :  Jointly Administered
                                                                :
   Debtors.                                                     :  Ref. Docket Nos. 8226 and 8325
                                                                :  Hearing Date: January 12, 2010 at 10:00 a.m.
                                                                :
---------------------------------------------------------------- x

**DEBTORS' REPLY TO THE OPPOSITION OF PARK NATIONAL BANK
TO DEBTORS' MOTION FOR ALLOWANCE AND PAYMENT OF
SECTION 506(c) CLAIM**

The debtors in the above-captioned cases (collectively, the "Debtors"), hereby submit this reply (the "Reply") to the objection (the "Objection") [D.I. 8325] of Park National Bank ("Park National") to *Debtors' (I) Limited Objection to Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection and (II) Request for Allowance and Payment of Section 506(c) Claim* (the "Motion")[1] [D.I. 8226]. In support of this Reply, the Debtors respectfully represent as follows:[2]

**PRELIMINARY STATEMENT**

1.   At the heart of this dispute is a recent amendment to section 506(c) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). Congress amended section 506(c), and various other sections of the Bankruptcy Code, in 2005 as part of a broader attempt to enhance the ability of taxing authorities to collect postpetition property taxes, including ad valorem taxes.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed in the Motion.
[2] The Debtors and Park National have agreed that the hearing on January 12, 2010 with respect to the Motion and Objection shall be limited to legal arguments. The Debtors reserve the right to file a further reply to supplement this Reply in the event that a further hearing is necessary to address certain factual issues.

2.  In an effort to avoid reimbursing the Debtors for certain ad valorem property tax payments, the Objection advances an improper and implausible reading of the amendment to section 506(c).  The Objection contends the amendment is nothing more than a clarification that the facts and circumstances test courts had applied to reimbursement claims, including ad valorem property tax reimbursement claims, asserted under section 506(c) prior to the 2005 amendment, should continue to apply to ad valorem property tax claims.  However, Park National's interpretation of the amendment to section 506(c) would neither result in an amendment with any purpose nor comply with the rules of statutory construction.  For instance, as explained in detail below, Park National's argument not only ignores the overarching purpose of the amendments made to several provisions of the Bankruptcy Code dealing with tax liens, *see* section 712 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA"),[3] but also the fact that "all" ad valorem property taxes are now recoverable under section 506(c).

3.  The Objection mischaracterizes the purpose for, and the effect of, the 2005 amendment to section 506(c).  In so doing, the Objection contains a lengthy analysis that may have had relevancy under pre-2005 law, but is inapposite to amended section 506(c) that now controls.  It is clear that under section 506(c), as amended, the Debtors have a right to reimbursement of the amount the Debtors have expended on account of the ad valorem taxes that were due and owing on Park National's collateral after the commencement of the Debtors' bankruptcy cases.  The Debtors have expended $274,920 on account of such taxes.  Consequently, the Debtors are entitled to reimbursement in the amount of $274,920.

---

[3] The legislative history to Section VII of the BAPCPA is attached as Exhibit A.

# ARGUMENT

I.    **The Debtors Are Entitled to the Section 506(c) Claim**

    A.    **Pre-BAPCPA Law**

4.    Prior to the enactment of BAPCPA, section 506(c) of the Bankruptcy Code provided that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c) (2004).[4]

5.    In accordance with this language, the courts employed a facts and circumstances test to assess whether any given expense provided a direct benefit to a secured creditor and was thus recoverable under section 506(c). Such a test was used both generally, and with respect to property taxes paid on account of real property securing an allowed claim. For instance, the U.S. Court of Appeals for the Third Circuit held in *Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp.*, 884 F.2d 80, 84 (3d Cir. 1989), that such "[t]axes not secured by liens may also be payable by the secured creditor under section 506." *Id.* For this to be the case, the Third Circuit held that section 506(c) required "a two-step inquiry" addressing (1) "whether the taxes are reasonable, necessary costs and expenses of preserving or disposing of the property" and (2) "whether they benefit the secured creditors." *Id.*

    B.    **BAPCPA and the Legislative History**

6.    In 2005, section 506(c) was amended to provide for the recovery of all ad valorem property taxes paid on the collateral of a secured creditor, including those paid by the Debtors in this case. Specifically, pursuant to section 712 of BAPCPA, section 506(c) was

---

[4] Pursuant to section 1107(a) of the Bankruptcy Code, the Debtors are granted the powers of a trustee and thus may receive a reimbursement under section 506(c) on the same terms as a trustee. *See* 11 U.S.C. § 1107(a).

amended by adding "including the payment of *all* ad valorem property taxes with respect to the property" to the end of section 506(c) (emphasis added). Section 506(c) now provides, in its entirety:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, <u>including the payment of all ad valorem property taxes with respect to the property</u>.

11 U.S.C. § 506(c) (emphasis added).

7.  No court has interpreted the 2005 amendment to section 506(c), making its interpretation a question of first impression.[5] As explained further herein, the 2005 amendment to section 506(c) was intended to make clear that payments made by a debtor for ad valorem property taxes assessed against the property of a secured creditor constitute "reasonable, necessary costs and expenses of preserving, or disposing of, such property" and benefit the holder of the claim secured by the property.

8.  The legislative history of Section VII of BAPCPA, which includes the amendments to section 506(c) and other provisions of the Bankruptcy Code related to tax liens and collection of taxes, specifically articulates that such amendments are intended "to provide greater protection for holders of tax liens on real or personal property of the estate, particularly holders of ad valorem tax liens." *See* H.R. Rep. No. 109-31, pt. 1, at 100 (2005).[6]

---

[5] *In re Consol. Cotton Gin Co.*, 347 B.R. 572, 580 (Bankr. N.D. Tex. 2006), was issued in 2006, but was governed by pre-BAPCPA law. In the Objection, Park National claims that the *Consolidated Cotton* court's statement that "[t]he addition of paid ad valorem taxes as an expense potentially subject to reimbursement by the amendments to section 506(c) and [sic] does not alter the Court's conclusion on this issue" means that the court "stated that the amendment would not alter its decision." Objection, at ¶ 12. In fact, as is clear from the footnote that was omitted from the quote in the Objection, the *Consolidated Cotton* Court was simply acknowledging that section 506(c) had been amended, and that amended section 506(c) was not applicable. *Consolidated Cotton*, 347 B.R. at 580 n. 1 ("BAPCPA applies to cases filed on or after October 17, 2005. As this chapter 11 case was filed on May 20, 2005, BAPCPA is not applicable."). Even if the court's statement was intended to be interpreted as Park National argues, any such language would be mere dicta.

[6] The legislative history to Section VII of the BAPCPA is attached as <u>Exhibit A</u>.

9. In amending section 506(c), among other related provisions of the Bankruptcy Code, Congress noted that "[m]any school boards obtain liens on real property to ensure collection of unpaid ad valorem taxes. Under current law, local governments are sometimes unable to collect these taxes despite the presence of a lien because they may be subordinated to certain claims and expenses as a result of section 724 [of the Bankruptcy Code]." *Id.* In order to remedy these issues, sections 701 and 712 of BAPCPA amended, among other provisions, sections 724(e)(2) of the Bankruptcy Code, 28 U.S.C. § 960, and sections 503(b)(1)(B)(i), 503(b)(1)(D), and 506(c) of the Bankruptcy Code.

10. Pursuant to section 701 of BAPCPA, section 724 of the Bankruptcy Code was amended to require, *inter alia*, that a trustee "shall," "in a manner consistent with section 506(c), recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving or disposing of such property" before subordinating a tax lien on the property in question. 11 U.S.C. § 724(e)(2).

11. In conjunction with the revisions to section 724(e) of the Bankruptcy Code, section 712 of BAPCPA, titled "Payment of Taxes in the Conduct of Business," amended: (1) 28 U.S.C. § 960 to establish that payment of post-petition taxes is required in all but a few specified instances, *see* H.R. Rep. No. 109-31, at 102-03; (2) section 503(b) of the Bankruptcy Code to provide that most post-petition taxes are entitled to administrative claim priority, *id.* at 103; (3) section 503(b)(1) of the Code to exempt governmental units from having to file a request for such administrative claim priority and, thus, from having to make the showing that these taxes benefited the estate and were entitled to such priority, *id.*; and (4) section 506(c) to

5

permit a trustee to recover from a secured creditor the payment of all ad valorem property taxes, *id.*[7]

12.  After examining this legislative history and section 712 of BAPCPA, it is clear that Congress intended to enhance governmental tax collection efforts. In short, the amendments to the Bankruptcy Code contained in section 712 exempt governmental units from having to make the showing that is normally required to obtain administrative priority for tax debts under section 503(b), and, "in turn," amend section 506(c) to permit a debtor or trustee to recover *all* ad valorem property taxes from a creditor with a security interest in the taxed property without having to show that payment of these taxes provided a benefit to the secured creditor.

**C.  The Plain Meaning of Section 506(c)**

13.  The plain language of amended section 506(c) also compels a finding for the Debtors. Park National's interpretation of the amended statute ignores Congress' intentional inclusion of the word "all," in clear violation of the canon of statutory interpretation that requires courts to give meaning to every word in a statute. *See, e,g., Negonsott v. Samuels*, 507 U.S. 99, 106 (1993) (embracing reading that gives effect to every clause and word of a statute over one that does not); *Moskal v. United States*, 498 U.S. 103, 109-110 (1990) (noting "the established principle that a court should 'give effect, if possible, to every clause and word of a statute.'"). Interpreting the new language of section 506(c) to say that Congress only intended to clarify that ad valorem property taxes could be recovered in some instances, as Park National asserts, would read the word "all" out of the statute.

---

[7] The legislative history introduces the amendment exempting governmental units from having to file a request for such administrative claim priority and making the showing that these taxes benefited the estate and were entitled to such priority, and then explains that section 506(c) is amended "in turn." *See* H.R. Rep. No. 109-31, at 103. The use of the phrase "in turn" indicates that Congress viewed the amendments as part of a single, comprehensive scheme.

14.     Congress intentionally included the word "all" with respect to when a trustee can recover payments made on account of ad valorem taxes. The only way to give meaning to the word "all" is to conclude that the inclusion of the word "all" dispenses with the need for a case-by-case examination of whether ad valorem property tax payments were reasonable and necessary for the preservation of the collateral.[8] Under this interpretation, section 506(c) now provides that payments of ad valorem property taxes with respect to a secured creditor's collateral always constitute "reasonable, necessary costs and expenses" and benefit the holder of the claim secured by the property.

15.     Park National argues that *Collier on Bankruptcy*'s and *Norton Bankruptcy Law & Practice*'s use of the permissive term "may" when discussing the recovery of ad valorem taxes by a trustee supports its argument that the amendment to section 506(c) did not create a bright-line rule. Objection, at ¶¶ 25-26. This argument is meritless. The word "may" simply establishes that a trustee or debtor is not compelled to invoke section 506(c).[9] Trustees and debtors "may" seek a recovery under section 506(c), or they "may" choose not to pursue such a recovery. Replacing the word "may" with "shall" would not expand the number of situations in which a debtor or trustee could seek reimbursement from a secured creditor under section 506(c); it would only remove the discretion trustees and debtors currently enjoy in deciding whether to pursue such claims.

---

[8] Indeed, under Park National's proposed reading of the statute, the same result would be appropriate regardless of the whether Congress included the word "all" in the amendment, or had omitted the word "all" from the amendment and simply added the language "including the payment of ad valorem property taxes with respect to the property."

[9] The 2005 amendments did create one exception to this rule. Section 724(e)(2) now requires a trustee or debtor to seek a recovery under section 506(c) prior to any attempt to subordinate a tax lien on the real property in question. *See* 11 U.S.C. § 724(e)(2). Nevertheless, this amendment underscores the fact that debtors and trustees otherwise enjoy great flexibility on account of the word "may" in section 506(c), and thus supports the Debtors' interpretation of section 506(c).

7

16. In summation, section 506(c), as amended, provides the Debtors with a clear right to reimbursement of the amount the Debtors have expended on account of the ad valorem taxes that were due and owing on the Property after the Petition Date.

## II. Park National Is Not Entitled to Setoff From the Debtors' Claim

17. Park National's discussion of the Debtors' alleged use of cash collateral also misses the mark. The Debtors have been using the rent proceeds Park National claims as cash collateral to preserve the value of the Property. During the six months prior to the filing of the Motion (from May to October 27, 2009), for instance, total rent collections from the Property aggregated to $83,500. During this same period, however, the Debtors incurred $108,031.08 in expenses relating to preservation of the Property. A summary of the expenses incurred and paid by the Debtors during the chapter 11 cases related to the Property is attached hereto as Exhibit B.

18. As the attached figures illustrate, the rents collected by the Debtors from the Property are significantly less than the amounts reasonably necessary to maintain and preserve the Property. There has been no dissipation of any interest Park National has in the rents that was not for Park National's benefit. Accordingly, it would be improper to credit or setoff the revenue generated by the Property against the Debtor's section 506(c) claim.

WHEREFORE, the Debtors respectfully request that the Court enter an order: (i) granting the Motion; (ii) finding that the Debtors are entitled to allowance and payment of a claim against Park National in the amount of $274,920; (iii) denying Park National's request to offset against the Debtors' claim; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
January 7, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Justin H. Rucki
Sean M. Beach (No. 4070)
Sharon M. Zieg (No. 4196
Matthew B. Lunn (No. 4119)
Justin H. Rucki (No. 5304)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to Debtors and Debtors in Possession

# **EXHIBIT A**

**Legislative History**

Page 1

2005 Committee Reports, April 8, 2005



LEXSEE 109 H RPT 31

Copyright © 2005 LexisNexis Academic & Library Solutions,
a division of Reed Elsevier Inc. All rights reserved.
COMMITTEE REPORTS

109th Congress, 1st Session

House Report 109-31 Part 1

*109 H. Rpt. 31;* Prt 1

BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005 R E P O R T COMMITTEE ON THE JUDICIARY S. 256 BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005 R E P O R T COMMITTEE ON THE JUDICIARYBANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005 R E P O R T

**DATE:** April 8, 2005. Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

**SPONSOR:** Mr. Sensenbrenner submitted the following

**COMMITTEE:** From the Committee on the Judiciary

REPORT
[To accompany S. 256] Retrieve bill tracking report  Retrieve full text version

**TEXT:**

2005

109th Congress 1st Session

HOUSE OF REPRESENTATIVES 109-31

Part 1 together with

DISSENTING, ADDITIONAL DISSENTING, AND ADDITIONAL MINORITY VIEWS eneagle

April 8, 2005. Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

20-436 2005

109th Congress 1st Session

HOUSE OF REPRESENTATIVES

Rept. 109-31

Part 1

S. 256 together with

DISSENTING, ADDITIONAL DISSENTING, AND ADDITIONAL MINORITY VIEWS eneagle

Sec. 604. Sense of Congress Regarding Availability of Bankruptcy Data. Section 604 expresses a sense of the Congress that it is a national policy of the United States that all data collected by bankruptcy clerks in electronic form (to the extent such data relates to public records pursuant to section 107 of the Bankruptcy Code) should be made available to the public in a useable electronic form in bulk, subject to appropriate privacy concerns and safeguards as determined by the Judicial Conference of the United States. It also states that a uniform bankruptcy data system should be established that uses a single set of data definitions and forms to collect such data and that data for any particular bankruptcy case should be aggregated in electronic format.

## TITLE VII. BANKRUPTCY TAX PROVISIONS

Sec. 701. Treatment of Certain Tax Liens. Subsection (a) of section 701 of the Act makes several amendments to section 724 of the Bankruptcy Code to provide greater protection for holders of tax liens on real or personal property of the estate, particularly holders of ad valorem tax liens. Many school boards obtain liens on real property to ensure collection of unpaid ad valorem taxes. Under current law, local governments are sometimes unable to collect these taxes despite the presence of a lien because they may be subordinated to certain claims and expenses as a result of section 724. Pursuant to section 701(a), subordination of ad valorem tax liens is still possible under section 724(b), but limited to the payment of: (1) claims for wages, salaries, and commissions entitled to priority under section 507(a)(4); and (2) claims for contributions to employee benefit plans entitled to priority under section 507(a)(5). Section 701(a) will also protect the holders of these tax liens as well as Federal tax liens from erosion of their claims' status by expenses incurred under chapter 11 of the Bankruptcy Code. Before a tax lien on real or personal property may be subordinated pursuant to section 724, the chapter 7 trustee must exhaust all other unencumbered estate assets and, consistent with section 506, recover reasonably necessary costs and expenses of preserving or disposing of such property.

Section 701(b) amends section 505(a)(2) of the Bankruptcy Code to prevent a bankruptcy court from determining the amount or legality of an ad valorem tax on real or personal property if the applicable period for contesting or redetermining the amount of the claim under nonbankruptcy law has expired.

Sec. 702. Treatment of Fuel Tax Claims. Section 702 of the Act amends section 501 of the Bankruptcy Code to simplify the process for filing of claims by states for certain fuel taxes. Rather than requiring each state to file a claim for these taxes (as is the case under current law), section 702 permits the designated "base jurisdiction" under the International Fuel Tax Agreement to file a claim on behalf of all states, which would then be allowed as a single claim.

Sec. 703. Notice of Request for a Determination of Taxes. Under current law, a trustee or debtor in possession may request a governmental unit to determine administrative tax liabilities in order to receive a discharge of those liabilities. There are no requirements as to the content or form of such notice to the government. Section 703 of the Act amends section 505(b) of the Bankruptcy Code to require the clerk of each district to maintain a list of addresses designated by governmental units for service of section 505 requests. In addition, the list may also include information concerning filing requirements specified by such governmental units. If a governmental entity does not designate an address and provide that address to the bankruptcy court clerk, any request made under section 505(b) of the Bankruptcy Code may be served at the address for the filing of a tax return or protest of the appropriate taxing authority of that governmental unit.

Sec. 704. Rate of Interest on Tax Claims. Under current law, there is no uniform rate of interest applicable to tax claims. As a result, varying standards have been used to determine the applicable rate. Section 704 of the Act amends the Bankruptcy Code to add section 511 for the purpose of simplifying the interest rate calculation. It provides that for all tax claims (federal, state, and local), including administrative expense taxes, the interest rate shall be determined in accordance with applicable nonbankruptcy law. With respect to taxes paid under a confirmed plan, the rate of interest is determined as of the calendar month in which the plan is confirmed.

Sec. 705. Priority of Tax Claims. Under current law, a tax claim is entitled to be treated as a priority claim if it arises within certain specified time periods. In the case of income taxes, a priority arises, among other time periods, if the tax return was due within three years of the filing of the bankruptcy petition or if the assessment of the tax was made within 240 days of the filing of the petition. The 240-day period is tolled during the time that an offer in compromise is pending (plus 30 days). Though the statute is silent, the Supreme Court in Young v. United States, 535 U.S. 93 (2002) held that the three-year period is tolled during the pendency of a previous bankruptcy case. Section 705 amends section 507(a)(8) of the Bankruptcy Code to codify the rule tolling priority periods during the pendency of a previous bankruptcy case during that three-year or 240-day period together with an additional 90 days. It also includes tolling provisions to adjust for the collection due process rights provided by the Internal Revenue Service Restructuring and Reform Act of 1998. During any period in which the government is prohibited from collecting a tax as a result of a request by

the debtor for a hearing and an appeal of any collection action taken against the debtor, the priority is tolled, plus 90 days. Also, during any time in which there was a stay of proceedings in a prior bankruptcy case or collection of an income tax was precluded by a confirmed bankruptcy plan, the priority is tolled, plus 90 days.

Sec. 706. Priority Property Taxes Incurred. Under current law, many provisions of the Bankruptcy Code are keyed to the word "assessed." While this term has an accepted meaning in the Federal system, it is not used in many state and local statutes and has created some confusion. To eliminate this problem with respect to real property taxes, section 706 amends section 507(a)(8)(B) of the Bankruptcy Code by replacing the word "assessed" with "incurred."

Sec. 707. No Discharge of Fraudulent Taxes in Chapter 13. Under current law, a debtor's ability to discharge tax debts varies depending on whether the debtor is in chapter 7 or chapter 13. In a chapter 7 case, taxes that are not dischargeable include taxes from a return due within three years of the petition date, taxes assessed within 240 days, or taxes related to an unfiled return or false return. Chapter 13, on the other hand, allows these obligations to be discharged. Section 707 of the Act amends Bankruptcy Code section 1328(a)(2) to prohibit the discharge of tax claims described in section 523(a)(1)(B) and (C) as well as claims for a tax required to be collected or withheld and for which the debtor is liable in whatever capacity pursuant to section 507(a)(8)(C).

Sec. 708. No Discharge of Fraudulent Taxes in Chapter 11. Under current law, the confirmation of a chapter 11 plan discharges a corporate debtor from most debts. Section 708 amends section 1141(d) of the Bankruptcy Code to except from discharge in a corporate chapter 11 case a debt specified in subsections 523(a)(2)(A) or (B) of the Bankruptcy Code owed to a domestic governmental unit. In addition, it excepts from discharge a debt owed to a person as the result of an action filed under subchapter III of chapter 37 of title 31 of the United States Code or any similar state statute. Section 708 excepts from discharge a debt for a tax or customs duty with respect to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or defeat such tax.

Sec. 709. Stay of Tax Proceedings Limited to Prepetition Taxes. Under current law, the filing of a petition for relief under the Bankruptcy Code activates an automatic stay that enjoins the commencement or continuation of a case in the United States Tax Court. This rule was arguably extended in Halpern v. Commissioner, [n100] which held that the tax court did not have jurisdiction to hear a case involving a postpetition year. To address this issue, section 709 of the Act amends section 362(a)(8) of the Bankruptcy Code to specify that the automatic stay is limited to an individual debtor's prepetition taxes (taxes incurred before entering bankruptcy). The amendment clarifies that the automatic stay does not apply to an individual debtor's postpetition taxes. In addition, section 709 provides that the stay applies to both prepetition and postpetition tax liabilities of a corporation so long as it is a liability that the bankruptcy court may determine.

[n100]96 T.C. 895 (1991).

Sec. 710. Periodic Payment of Taxes in Chapter 11 Cases. Section 710 of the Act amends section 1129(a)(9) of the Bankruptcy Code to provide that the allowed amount of priority tax claims (as of the plan's effective date) must be paid in regular cash installments within five years from the entry of the order for relief. The manner of payment may not be less favorable than that accorded the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)). In addition, it requires the same payment treatment to be accorded to a secured claim that would otherwise meet the description of an unsecured claim under section 507(a)(8).

Sec. 711. Avoidance of Statutory Liens Prohibited. The Internal Revenue Code gives special protections to certain purchasers of securities and motor vehicles notwithstanding the existence of a filed tax lien. Section 711 of the Act amends section 545(2) of the Bankruptcy Code to prevent that provision's special protections from being used to avoid an otherwise valid lien. Specifically, it prevents the avoidance of unperfected liens against a bona fide purchaser, if the purchaser qualifies as such under section 6323 of the Internal Revenue Code or a similar provision under state or local law.

Sec. 712. Payment of Taxes in the Conduct of Business. Although current law generally requires trustees and receivers to pay taxes in the ordinary course of the debtor's business, the payment of administrative expenses must first be authorized by the court. Section 712(a) of the Act amends section 960 of title 28 of the United States Code to clarify that postpetition taxes in the ordinary course of business must be paid on or before when such tax is due under applicable nonbankruptcy law, with certain exceptions. This requirement does not apply if the obligation is a property tax secured by a lien against property that is abandoned under section 554 within a reasonable time after the lien attaches. In addition, the requirement does not pertain where the payment is excused under the Bankruptcy Code. With respect to chapter 7 cases, section 712(a) provides that the payment of a tax claim may be deferred until final distribution pursuant

to section 726 if the tax was not incurred by a chapter 7 trustee or if the court, prior to the due date of the tax, finds that the estate has insufficient funds to pay all administrative expenses in full. Section 712(b) amends section 503(b)(1)(B)(i) of the Bankruptcy Code to clarify that this provision applies to secured as well as unsecured tax claims, including property taxes based on liability that is in rem, in personam or both. Section 712(c) amends section 503(b)(1) to exempt a governmental unit from the requirement to file a request for payment of an administrative expense. Section 712(d)(1) amends section 506(b) to provide that to the extent that an allowed claim is oversecured, the holder is entitled to interest and any reasonable fees, costs, or charges provided for under state law. Section 712(d)(2), in turn, amends section 506(c) to permit a trustee to recover from a secured creditor the payment of all ad valorem property taxes.

Sec. 713. Tardily Filed Priority Tax Claims. Section 713 of the Act amends section 726(a)(1) of the Bankruptcy Code to require a claim under section 507 that is not timely filed pursuant to section 501 to be entitled to a distribution if such claim is filed the earlier of the date that is ten days following the mailing to creditors of the summary of the trustee's final report or before the trustee commences final distribution.

Sec. 714. Income Tax Returns Prepared by Tax Authorities. Section 714 of the Act amends section 523(a) of the Bankruptcy Code to provide that a return prepared pursuant to section 6020(a) of the Internal Revenue Code, or similar State or local law, constitutes filing a return (and the debt can be discharged), but that a return filed on behalf of a taxpayer pursuant to section 6020(b) of the Internal Revenue Code, or similar State or local law, does not constitute filing a return (and the debt cannot be discharged).

Sec. 715. Discharge of the Estate's Liability for Unpaid Taxes. Under the Bankruptcy Code, a trustee or debtor in possession may request a prompt audit to determine postpetition tax liabilities incurred by the bankruptcy estate. If the government does not make a determination or request an extension of time to audit, then the trustee or debtor in possession is discharged from any such tax liability. Several court cases have held that while this protects the debtor and the trustee, it does not necessarily protect the estate. Section 715 of the Act amends section 505(b) of the Bankruptcy Code to clarify that the estate is also protected if the government does not make a determination or request an extension of time to audit the debtor's tax returns. Therefore, if the government does not make a determination of postpetition tax liabilities or request extension of time to audit, then the estate's liability for unpaid taxes is discharged.

Sec. 716. Requirement to File Tax Returns to Confirm Chapter 13 Plans. Under current law, a debtor may enjoy the benefits of chapter 13 even if delinquent in the filing of tax returns. Section 716 of the Act responds to this problem. Subsection (a) amends section 1325(a) of the Bankruptcy Code to require a chapter 13 debtor to file all applicable Federal, state, and local tax returns as a condition of confirmation as required by section 1308 (as added by section 716(b)). Section 716(b) adds section 1308 to chapter 13 to require a chapter 13 debtor to be current on the filing of tax returns for the four-year period preceding the filing of the case. If the returns are not filed by the date on which the meeting of creditors is first scheduled, the trustee may hold open that meeting for a reasonable period of time to allow the debtor to file any unfiled returns. The additional period of time may not extend beyond 120 days after the date of the meeting of the creditors or beyond the date on which the return is due under the last automatic extension of time for filing. The debtor, however, may obtain an extension of time from the court if the debtor demonstrates by a preponderance of the evidence that the failure to file was attributable to circumstances beyond the debtor's control.

Section 716(c) amends section 1307 of the Bankruptcy Code to provide that if a chapter 13 debtor fails to file a tax return as required by section 1308, the court must dismiss the case or convert it to one under chapter 7 (whichever is in the best interests of creditors and the estate) on request of a party in interest or the United States trustee after notice and a hearing.

Section 716(d) amends section 502(b)(9) of the Bankruptcy Code to provide that in a chapter 13 case, a governmental unit's tax claim based on a return filed under section 1308 shall be deemed to be timely filed if the claim is filed within 60 days from the date on which such return is filed. Section 716(e) states the sense of the Congress that the Judicial Conference of the United States should propose for adoption official rules with respect an objection by a governmental unit to confirmation of a chapter 13 plan when such claim pertains to a tax return filed pursuant to section 1308.

Sec. 717. Standards for Tax Disclosure. Before creditors and stockholders may be solicited to vote on a chapter 11 plan, the plan proponent must file a disclosure statement that provides adequate information to holders of claims and interests so they can make a decision as to whether or not to vote in favor of the plan. As the tax consequences of a plan can have a significant impact on the debtor's reorganization prospects, section 717 amends section 1125(a) of the Bankruptcy Code to require that a chapter 11 disclosure statement discuss the plan's potential material Federal tax consequences to the debtor, any successor to the debtor, and to a hypothetical investor that is representative of the claimants and interest holders in the case.

2005 Committee Reports, April 8, 2005

Sec. 718. Setoff of Tax Refunds. Under current law, the filing of a bankruptcy petition automatically stays the setoff of a prepetition tax refund against a prepetition tax obligation unless the bankruptcy court approves the setoff. Interest and penalties that may continue to accrue may also be nondischargeable pursuant to section 523(a)(1) of the Bankruptcy Code and cause individual debtors undue hardship. Section 718 of the Act amends section 362(b) of the Bankruptcy Code to create an exception to the automatic stay whereby such setoff could occur without court order unless it would not be permitted under applicable nonbankruptcy law because of a pending action to determine the amount or legality of the tax liability. In that circumstance, the governmental authority may hold the refund pending resolution of the action, unless the court, on motion of the trustee and after notice and a hearing, grants the taxing authority adequate protection pursuant to section 361.

Sec. 719. Special Provisions Related to the Treatment of State and Local Taxes. Section 719 of the Act conforms state and local income tax administrative issues to the Internal Revenue Code. For example, under Federal law, a bankruptcy petitioner filing on March 5 has two tax years (January 1 to March 4, and March 5 to December 31). Under the Bankruptcy Code, however, state and local tax years are divided differently (January 1 to March 5, and March 6 to December 31). Section 719 requires the states to follow the Federal convention. It conforms state and local tax administration to the Internal Revenue Code in the following areas: division of tax liabilities and responsibilities between the estate and the debtor, tax consequences with respect to partnerships and transfers of property, and the taxable period of a debtor. Section 719 does not conform state and local tax rates to Federal tax rates.

Sec. 720. Dismissal for Failure to Timely File Tax Returns. Under existing law, there is no definitive rule with respect to whether a bankruptcy court may dismiss a bankruptcy case if the debtor fails to file returns for taxes incurred postpetition. Section 720 of the Act amends section 521 of the Bankruptcy Code to allow a taxing authority to request that the court dismiss or convert a bankruptcy case if the debtor fails to file a postpetition tax return or obtain an extension. If the debtor does not file the required return or obtain the extension within 90 days from the time of the request by the taxing authority to file the return, the court must convert or dismiss the case, whichever is in the best interest of creditors and the estate.

TITLE VIII. ANCILLARY AND OTHER CROSS-BORDER CASES

Title VIII of the Act adds a new chapter to the Bankruptcy Code for transnational bankruptcy cases. It incorporates the Model Law on Cross-Border Insolvency to encourage cooperation between the United States and foreign countries with respect to transnational insolvency cases. Title VIII is intended to provide greater legal certainty for trade and investment as well as to provide for the fair and efficient administration of cross-border insolvencies, which protects the interests of creditors and other interested parties, including the debtor. In addition, it serves to protect and maximize the value of the debtor's assets.

Sec. 801. Amendment to Add Chapter 15 to Title 11, United States Code. Section 801 introduces chapter 15 to the Bankruptcy Code, which is the Model Law on Cross-Border Insolvency ("Model Law") promulgated by the United Nations Commission on International Trade Law ("UNCITRAL") at its Thirtieth Session on May 12-30, 1997. [n101] Cases brought under chapter 15 are intended to be ancillary to cases brought in a debtor's home country, unless a full United States bankruptcy case is brought under another chapter. Even if a full case is brought, the court may decide under section 305 to stay or dismiss the United States case under the other chapter and limit the United States' role to an ancillary case under this chapter. [n102] If the full case is not dismissed, it will be subject to the provisions of this chapter governing cooperation, communication and coordination with the foreign courts and representatives. In any case, an order granting recognition is required as a prerequisite to the use of sections 301 and 303 by a foreign representative.

> [n101] The text of the Model Law and the Report of UNCITRAL on its adoption are found at U.N. G.A., 52d Sess., Supp. No. 17 (A/52/17) ("Report"). That Report and the Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency, U.N. Gen. Ass., UNCITRAL 30th Sess. U.N. Doc. A/CN.9/442 (1997) ("Guide"), which was discussed in the negotiations leading to the Model Law and published by UNCITRAL as an aid to enacting countries, should be consulted for guidance as to the meaning and purpose of its provisions. The development of the provisions in the negotiations at UNCITRAL, in which the United States was an active participant, is recounted in the interim reports of the Working Group that are cited in the Report.

> [n102] See section 1529 and commentary.

# **EXHIBIT B**

**Summary of Operating Expenses**

Mt. Prospect Building Monthly Cash Flow
Activity from August 2007 through October 27, 2009

| | Aug 07 | Sept 07 | Oct 07 | Nov 07 | Dec 07 | Jan 08 | Feb 08 | Mar 08 | April 08 | May 08 | June 08 | July 08 | Aug 08 | Sept 08 | Oct 08 | Nov 08 | Dec 08 | Jan 09 | Feb 09 | Mar 09 | April 09 | May 09 | June 09 | July 09 | Aug 09 | Sept 09 | Oct 09 (c) | Aug 07 - Oct 09 (c) Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rental Income | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Rent | $ 7,500.00 | $ 7,500.00 | $ 17,500.00 | $ 14,000.00 | $ - | $ 16,500.00 | $ 11,500.00 | $ 24,500.00 | $ 10,500.00 | $ 28,500.00 | $ 7,000.00 | $ 12,000.00 | $ 12,000.00 | $ 5,000.00 | $ 12,000.00 | $ 12,000.00 | $ 10,000.00 | $ 11,000.00 | $ 8,000.00 | $ 8,000.00 | $ 16,500.00 | $ 16,500.00 | $ 19,000.00 | $ 5,000.00 | $ 19,000.00 | $ 12,000.00 | $ 12,000.00 | $ 315,000.00 |
| Occupancy Expense (a) | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Utilities (b) | 1,055.30 | 816.20 | 6,517.59 | 809.64 | | | 7,310.05 | 9,074.16 | 1,017.19 | 4,878.55 | 10,777.37 | 2,150.12 | 5,544.67 | 2,651.73 | 3,716.67 | 2,918.53 | 2,691.21 | 2,316.72 | 3,655.97 | 2,704.88 | 816.04 | 1,344.47 | 2,741.87 | 2,511.17 | 3,410.65 | 3,193.44 | | 80,865.42 |
| Office Maintenance | 9,907.85 | 2,094.02 | 18,891.21 | 545.00 | | | 14,650.28 | 5,140.00 | 10,237.26 | 12,247.51 | 8,003.58 | 4,727.50 | 7,445.41 | 8,652.47 | 10,728.28 | 4,512.35 | 7,159.19 | 11,015.47 | 4,953.84 | 10,357.97 | 10,514.57 | 4,077.51 | 7,394.19 | 8,740.21 | 10,574.76 | 4,771.54 | 17,300.04 | 210,415.07 |
| Office Expense | 7,080.75 | | 9,074.26 | 2,243.71 | 4,531.72 | 221.45 | 1,057.17 | | 575.00 | 3,500.00 | | 580.11 | | | | | 659.57 | | | | 74.30 | | | | | | | 29,490.40 |
| Real Estate Tax Expense | 1,348.53 | 23,693.06 | | 71,807.06 | | 11,246.53 | 11,252.51 | 11,252.51 | 11,252.51 | 11,252.51 | 11,252.51 | 11,252.51 | 10,820.59 | 11,752.51 | 10,408.51 | 10,670.51 | 10,820.51 | 10,870.51 | 10,870.51 | 10,820.51 | 13,170.51 | 13,170.51 | 13,170.51 | 13,170.51 | 14,015.41 | 7,950.38 | | 314,970.35 |
| Total Occupancy Expense | 28,178.07 | 26,392.28 | 77,065.15 | 78,731.27 | 4,531.72 | 11,917.98 | 34,104.68 | 26,372.50 | 29,120.08 | 27,018.57 | 30,079.06 | 19,410.22 | 23,810.59 | 23,841.71 | 24,651.46 | 18,755.49 | 22,740.59 | 25,373.70 | 19,432.27 | 23,899.36 | 24,701.07 | 20,218.74 | 23,081.17 | 24,475.54 | 14,015.41 | 4,091.62 | 17,300.04 | 811,741.75 |
| Net Cash Flow Before PLI Payments | $ (21,878.07) | $ (18,837.28) | $ (55,365.15) | $ (12,731.27) | $ (4,531.72) | $ 4,522.02 | $ (22,664.98) | $ (1,872.50) | $ (13,798.06) | $ 1,576.57 | $ (23,879.06) | $ (7,410.22) | $ (11,820.59) | $ (18,841.71) | $ (12,651.46) | $ (8,159.49) | $ (12,740.59) | $ (14,373.70) | $ (10,432.27) | $ (14,699.36) | $ (7,601.07) | $ (2,676.74) | $ (4,009.57) | $ 4,564.59 | $ 4,091.62 | $ (5,330.04) | $ (298,741.75) | |

Notes:
(a) Occupancy expenses do not include mortgage principal and interest payments or insurance payments
(b) April 2008 utilities include a return of a $7,500 deposit from Nicor Gas
(c) October activity through October 27, 2009