# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re:                                                       :    Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,¹            :
                                                             :    Jointly Administered
                   Debtors.                                  :
                                                             :    Objections Due: February 11, 2009 at 4:00 p.m. (ET)
                                                             :    Hearing Date: February 18, 2010 at 11:00 a.m. (ET)
------------------------------------------------------------ x
```

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 1146(A) AND BANKRUPTCY RULES 2002, 6004, 9014 AND 9019 APPROVING AND AUTHORIZING: (I)(A) THE SALE, ASSIGNMENT AND TRANSFER OF LIMITED LIABILITY COMPANY INTEREST OF BROADHOLLOW FUNDING, LLC; AND (B) THE SALE, ASSIGNMENT AND TRANSFER OF LIMITED LIABILITY COMPANY INTEREST OF MELVILLE FUNDING, LLC; (II) SETTLEMENT OF CLAIMS, RELEASES AND WAIVERS; (III) RELEASE OF CERTAIN ESCROW FUNDS; AND (IV) GRANTING RELATED RELIEF

American Home Mortgage Holdings, Inc., a Delaware corporation and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, the "Debtors") hereby submit this motion (the "Motion"), pursuant to sections 105(a), 363(b) and 1146(a) of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (the "Order") approving and authorizing: (I)(a) the terms of that certain agreement (the "Broadhollow Sale Agreement") entitled Sale, Assignment and Transfer of Limited Liability Company Interest of Broadhollow

---

¹ The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914) ("AHM Investment"); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979) ("AHM Acceptance"); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267) ("AHM Servicing"); American Home Mortgage Corp., a New York corporation (1558) ("AHM Corp."); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Funding, LLC (the "Broadhollow LLC Interests"), by and between AHM Corp., as seller thereunder, and B&M Management Corp., as buyer thereunder (the "Buyer"), substantially in the form attached hereto as Exhibit A; (b) the terms of that certain agreement (the "Melville Sale Agreement," and together with the Broadhollow Sale Agreement, the "Sale Agreements") entitled Sale, Assignment and Transfer of Limited Liability Company Interest of Melville Funding, LLC (the "Melville LLC Interests," and together with the Broadhollow LLC Interests, the "LLC Interests"), by and between AHM Acceptance, as seller thereunder, and the Buyer, as buyer thereunder, substantially in the form attached hereto as Exhibit B; (II) settlement of claims, releases and waivers; (III) release of certain escrow funds; and (IV) granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 363 and 1146(a) of the Bankruptcy Code, along with Bankruptcy Rules 2002, 6004, 9014 and 9019.

## FACTS SPECIFIC TO THE RELIEF REQUESTED HEREIN

### I.      General Case Background

2.      On August 6, 2007 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").  Each Debtor is continuing to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.     The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4.     An official committee of unsecured creditors (the "Committee") was appointed on August 14, 2007, and an official committee of borrowers (the "Borrowers Committee") was appointed on October 21, 2008.  No trustee or examiner has been appointed.

5.     The Debtors filed an Amended Chapter 11 Plan of Liquidation (as amended, supplemented and/or modified, the "Plan") with the Court on November 25, 2008. The Court entered an order confirming the Plan on February 23, 2009 [D.I. 7042] (the "Confirmation Order").  The selection of Steven D. Sass as Plan trustee (the "Plan Trustee") has been approved by the Bankruptcy Court pursuant to the Confirmation Order.  The Plan is not yet effective.

II.     **Background in Connection with the Sales, Settlement and Releases**

6.     Broadhollow Funding, LLC ("Broadhollow") is a Delaware limited liability company.  Pursuant to the Limited Liability Agreement of Broadhollow, dated as of May 27, 2004, AHM Corp. is the sole equity member and manager of Broadhollow and in such capacity owns the limited liability company interests of Broadhollow.

7.     Melville Funding, LLC ("Melville") is a Delaware limited liability company.  Pursuant to the Melville Limited Liability Company Agreement, dated as of May 27, 2004, Acceptance is the sole equity member and manager of Melville and in such capacity owns the limited liability company interests of Melville.

8.     Broadhollow, as issuer, and Deutsche Bank Trust Company Americas, in its capacity as Indenture Trustee (the "Broadhollow Indenture Trustee"), are parties to that certain Base Indenture dated as of May 27, 2004 (the "Broadhollow Base Indenture"), for the

issuance from time to time of one or more series of Broadhollow's Residential Mortgage-Backed Notes (the "Broadhollow Senior Notes"), and one or more series of Broadhollow's Residential Mortgage-Backed Subordinated Notes (the "Broadhollow Subordinated Notes," and collectively with the Broadhollow Senior Notes, the "Broadhollow Notes"), issuable as provided in the Broadhollow Base Indenture.

9.    Melville, as issuer, and Deutsche Bank Trust Company Americas, in its capacity as Indenture Trustee (the "Melville Indenture Trustee," and collectively with the Broadhollow Indenture Trustee, the "Indenture Trustees"), are parties to that certain Base Indenture dated as of May 27, 2004 (the "Melville Base Indenture"), for the issuance from time to time of one or more series of Melville's Residential Mortgage-Backed Notes (the "Melville Senior Notes"), one or more series of Melville's Variable Funding Notes (the "Variable Funding Notes"), and one or more series of Melville's Residential Mortgage-Backed Subordinated Notes (the "Melville Subordinated Notes," and collectively with the Melville Senior Notes and the Variable Funding Notes, the "Melville Notes"), issuable as provided in the Melville Base Indenture.

10.    Broadhollow and Melville owned approximately 5,700 mortgage loans with an aggregate unpaid principal balance of approximately $1,620,000,000 that they had previously purchased from AHM Corp. and AHM Acceptance, respectively. The majority of the mortgage loans were sold in September 2007 and Broadhollow is currently in the process of marketing and selling the remaining 22 mortgage loans.

11.    On May 1, 2008, the Court entered an order approving a stipulation between the Debtors and Calyon New York Branch, as Administrative Agent under the Repurchase Agreement dated November 21, 2006 (the "Stipulation") [Docket No. 3918].

Pursuant to the Stipulation, an escrow account was established to hold funds to which the Debtors and other interested parties may have claims (the "Miscellaneous Funds Escrow Account"). The Debtors currently hold approximately $5.7 million (the "Escrow Funds") in the Miscellaneous Funds Escrow Account. After extensive analysis of the Debtors' books and records, as well as negotiations, litigation and settlements with numerous other parties, the Debtors and Broadhollow are the only known parties with a potential interest in any of the remaining funds in the Miscellaneous Funds Escrow Account.

12.    The Plan Trustee is also holding $503,162 of funds from the Pennsylvania Housing Finance Agency (the "PHFA Funds") that, by information and belief, was paid in connection with the sale or settlement of five (5) mortgage loans that were likely owned by Broadhollow.

13.    AHM Corp., AHM Acceptance and certain of the other Debtors have or may be entitled to assert claims against Broadhollow, Melville, the holders of the Broadhollow Notes (the "Broadhollow Noteholders"), the holders of Melville Notes (the "Melville Noteholders"), and the Indenture Trustees (collectively, the "Facility Parties"). In addition, one or more of the Facility Parties may have or may be entitled to assert claims against AHM Corp., Acceptance and certain of the other Debtors. The Broadhollow Indenture Trustee and/or the Broadhollow Noteholders have claims against Broadhollow for, *inter alia*, the portion of the Broadhollow Notes that remain unpaid, and may have additional claims directly or derivatively through Broadhollow against AHM Corp. in its capacity as member and/or manager of Broadhollow or against certain of the Debtors for various reasons. Similarly, the Debtors have or may be entitled to assert claims against Broadhollow, the Broadhollow Indenture Trustee and one or more of the Broadhollow Noteholders. The Melville Indenture Trustee and/or the holders

of Melville Notes (the "Melville Noteholders") have claims against Melville for, *inter alia*, the portion of the Melville Notes that remain unpaid, and may have additional claims directly or derivatively through Melville against Acceptance in its capacity as member and/or manager of Melville or against certain of the Debtors for various reasons.  Similarly, the Debtors have or may be entitled to assert claims against Melville, the Melville Indenture Trustee and/or the Melville Noteholders.

14.     In particular, the Debtors assert claims in excess of $7.7 million against one or more of the Facility Parties and in the Escrow Funds and the PHFA Funds, as well as certain other claims against Melville, the Melville Indenture Trustees and the Melville Noteholders.  These include, without limitation, the Debtors' claims or rights in (i) all of the Escrow Funds, (ii) all of the PHFA Funds, (iii) approximately $650,000 against Broadhollow, the Broadhollow Indenture Trustee, and the Broadhollow Noteholders for funds that were misdirected into certain Broadhollow accounts and retained by Broadhollow, the Broadhollow Indenture Trustee, or the Broadhollow Noteholders, and (iv) claims of over $700,000 against the Facility Parties with respect to unreimbursed management and administrative fees and expenses as sole member and manager of Broadhollow and Melville.  The Facility Parties have, or by information and belief, may contest all or a substantial portion of the Debtors' asserted claims.

15.     One or more of the Facility Parties may be entitled to assert claims in excess of $7.2 million against one or more of the Debtors and in a portion of the Escrow Funds and all of the PHFA Funds.  These include, without limitation, the Facility Parties' claims or rights in (i) a substantial portion of the Escrow Funds, (ii) all of the PHFA Funds, and (iii) certain other misdirected wire, breach or other claims against certain of the Debtors.  In addition, the Debtors had scheduled two general unsecured intercompany claims from AHM Corp. to

Broadhollow in the amounts of approximately $27 million and $95 million, and one intercompany claim from AHM Acceptance to Broadhollow in the amount of approximately $581,000.  The Debtors would vigorously contest all claims that have been, or could be, asserted by the Facility Parties.  For instance, the Debtors believe that any viable claim by the Facility Parties would be entitled to, at best, general unsecured treatment in the Debtors bankruptcy cases including the funds that were received after the Petition Date, but related to transactions and agreements made prior to the Petition Date.  The Debtors also believe that the scheduled claims referenced above were entered in error and, were it not for this settlement and release sought herein, the Debtors would have amended and restated the scheduled amounts.  Furthermore, estimated general unsecured distribution percentages for the Debtor entities against whom the claims would mostly likely be asserted by the Facility Parties are as follows:  AHM SV (0.19%), AHM Acceptance (0.81%) and AHM Corp. (1.30%).

16.     Broadhollow also has certain claims against Bank of America, N.A., as set forth in the adversary proceeding styled *Broadhollow Funding, LLC; Melville Funding , LLC; and American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) v. Bank of America, N.A.* (Adv. Proc. Case  No. 07-51738 (CSS)), as well as claims against other market value swap providers, for failing to make payments under a swap, which claims, if liquidated, would be available to satisfy unpaid Broadhollow Notes.

17.     AHM Investment, Lehman Brothers Inc. ("LBI"), the debtor in a SIPA Liquidation Proceeding,[2] and Lehman Commercial Paper Inc., one of the debtors in a Chapter 11 proceeding currently pending in the United States Bankruptcy Court for the Southern District of New York, were parties to that certain Master Repurchase Agreement entered into by AHMIC,

---

[2]     *In re Lehman Brothers Inc.*, Case No. 08-01420 (JMP) SIPA (Bankr. S.D.N.Y. Sep. 19, 2008) (the "SIPA Liquidation Proceeding").

LBI and LCPI on November 4, 2003 (the "MRA"). In addition to being a party to the MRA, LBI may have purchased from time to time and may be a current holder of Broadhollow Notes, thus contemporaneously with the filing of this Motion, the Debtors are seeking relief from the automatic stay in the SIPA Liquidation Proceeding to proceed with the Sales as the releases and other relief contemplated by the Sale Agreements could be deemed to affect the rights of LBI.

18.     In order to resolve the various claims by and among the Facility Parties, on the one hand, and the Debtors, on the other hand, the Debtors have determined that selling the LLC Interests to the Buyer pursuant to the terms of the Sale Agreements, including the settlement contained therein and settlement and release terms contained in the attached form of Order, is in the best interests of the Debtors' estates.

## III.    The Sale Terms

19.     Following arm's-length, good faith negotiations, AHM Corp., AHM Acceptance and the Buyer have agreed to the terms of the Sale Agreements, substantially in the form attached hereto as Exhibits A and B, which are contingent upon Court approval, and the form of Sale Order, which documents describe the terms of the sales, settlements, releases and waivers (the "Sales").

20.     The key terms of the Sales are summarized as follows:[3]

   a.   Interests to be Sold:  AHM Corp. and AHM Acceptance, as applicable, will sell to the Buyer the LLC Interests free and clear of all liens, claims, encumbrances, and other interests pursuant to Section 363 of the Bankruptcy Code.

   b.   Consideration:  The Sales, claims settlements and releases will result in the retention by the Debtors' estates of approximately $5.5 million

---

[3]     The following description is intended solely to give the Court and interested parties a general overview of the terms of the Sales, Sale Agreements and Sale Order. Interested parties should refer to the Sale Agreements and Sale Order for the complete and detailed terms thereof. To the extent there are any inconsistencies between this summary and the Sale Agreements and Sale Order, the Sale Agreements and Sale Order shall govern. All capitalized terms in this section not otherwise defined herein shall have the meaning ascribed to them in the Sale Agreements and/or Sale Order.

in aggregate consideration from the Escrow Funds and PHFA Funds, while the Buyer will receive the sum of $703,162 paid to or on behalf of Broadhollow out of the Escrow Funds. The primary consideration for the Debtors' estates in connection with the Sales is the settlement and release of claims by and among the Debtors, on the one hand, and the Buyer, Broadhollow, Melville, the Indenture Trustees, the Broadhollow Noteholders and the Melville Noteholders, on the other hand.

c.   Broadhollow Sale Agreement releases:[4]

Debtors' Releases: Except for the duties, liabilities, and obligations of AHM Corp. under this Sale and Assignment Agreement and subject to the last sentence of this Section 3.a, effective immediately upon the admission of Assignee as a member of Broadhollow and the transfer of the Assigned Interest to Assignee, Broadhollow, and Assignee, on behalf of Assignee and all of Assignee's current and former officers, members, agents, directors, predecessors, successors, assigns, affiliates, and other representatives, in each case, solely in such capacity (collectively, the "Broadhollow Releasors"), fully and forever release, acquit, waive and discharge each of the Debtors and Debtors' respective officers, managers, members, directors, stockholders, employees, affiliates, subsidiaries, parents, agents, representatives, attorneys, heirs, successors and assigns, as applicable (collectively, the "Debtor Releasees"), of and from all and every manner of claims, including but not limited to, any action and actions, cause and causes of action, complaints, debts, covenants, rights, suits, judgments, representations, warranties, fees, demands, priority claims, unsecured claims, cure claims, deficiency claims, interest claims, penalty claims, administrative claims, counterclaims, and damages whatsoever, known or unknown, arising, accruing, assessed or assessable in respect of any periods and any transactions, contracts or agreements occurring or entered into in any periods (collectively, the "Broadhollow Released Claims"), which Broadhollow Released Claims shall be waived, released, forever barred, discharged and disallowed. For the avoidance of doubt, Debtor Releasees shall include any plan trust established by Order of the Bankruptcy Court to which any Debtors' assets are transferred as well as the trustee of any such trust. Notwithstanding anything to the contrary set forth in this Section 3.a, the Noteholders that hold direct or indirect ownership interests in Assignee shall not be deemed to be Broadhollow Releasors for purposes of this Section 3.a, it being acknowledged and agreed that any releases given by such

---

[4] The release language included herein is solely for convenience and all parties in interest are encouraged to review the releases as set forth in both Sale Agreements. Since the release language in the Broadhollow Sale Agreement and the Melville Sale Agreement are substantially the same, except for the releasing entity changing, we have only included the release language from the Broadhollow Sale Agreement.

Noteholders shall be governed solely by Section 4 hereof and the Order contemplated therein.

<u>Broadhollow and Assignee Releases</u>:  Except for the duties, liabilities, and obligations of Assignee under this Sale and Assignment Agreement and subject to the last sentence of this Section 3.b, effective immediately upon the admission of Assignee as a member of Broadhollow and the transfer of the Assigned Interest to Assignee, Debtors, on behalf of themselves and all of their current and former officers, members, agents, directors, predecessors, successors, assigns, affiliates, and other representatives, in each case, solely in such capacity (collectively, the "<u>Debtor Releasors</u>"), fully and forever release, acquit, waive and discharge each of Broadhollow and Assignee, and all of their respective officers, managers, members, directors, shareholders, employees, affiliates, subsidiaries, parents, agents, representatives, attorneys, heirs, successors and assigns, as applicable (collectively, the "<u>Broadhollow Releasees</u>"), of and from all and every manner of claims, including but not limited to, any action and actions, cause and causes of action, complaints, debts, covenants, rights, suits, judgments, representations, warranties, fees, demands, priority claims, unsecured claims, cure claims, deficiency claims, interest claims, penalty claims, administrative claims, counterclaims, and damages whatsoever, known or unknown, arising, accruing, assessed or assessable in respect of any periods and any transactions, contracts or agreements occurring or entered into in any periods (collectively, the "<u>Debtors' Released Claims</u>"), which Debtors' Released Claims shall be waived, released, forever barred, discharged and disallowed.  Notwithstanding anything to the contrary set forth in this Section 3.b, the Noteholders that hold direct or indirect interests in the Assignee and the Indenture Trustee, shall not be deemed to be Broadhollow Releasees for purposes of this Section 3.b, it being acknowledged and agreed that any releases given by the Debtor Releasors to such Noteholders and the Indenture Trustee shall be governed solely by Section 4 hereof and the Order contemplated therein.

(<u>See</u> Broadhollow Sale Agreement, Section 3(a) and (b)).

d.  <u>Sale Order Releases</u>:

Except for the duties, liabilities, and obligations under the Sale Agreements and this Order, effective immediately upon the admission of the Buyer as a member of each of Broadhollow and of Melville, respectively, and the transfer of the LLC Interests to the Buyer, (i) the Debtor Releasors, on the one hand and solely with respect to any and all claims arising out of or in connection with the issuance, sale, repayment, or other discharge of the Broadhollow Notes and Melville

Notes, respectively, and (ii) the Broadhollow Indenture Trustee, the Melville Indenture Trustee and the holders of each of the Broadhollow Notes and Melville Notes, on the other hand and solely in their respective capacities as such and for no other purpose, on behalf of themselves and their respective current and former officers, members, agents, directors, predecessors, successors (including, without limitation, any plan trust established by order of the Bankruptcy Court to which any Debtors' assets are transferred as well as the trustee of any such trust), assigns, affiliates, and other representatives, in each case, solely in such capacity, fully and forever release, acquit, waive and discharge each other, of and from all and every manner of claims, including but not limited to, any action and actions, cause and causes of action, complaints, debts, covenants, rights, suits, judgments, representations, warranties, fees, demands, priority claims, unsecured claims, cure claims, deficiency claims, interest claims, penalty claims, administrative claims, counterclaims, and damages whatsoever, known or unknown, arising, accruing, assessed or assessable in respect of any periods and any transactions, contracts or agreements occurring or entered into in any periods (collectively, the "Additional Released Claims"), which Additional Released Claims shall be waived, released, forever barred, discharged and disallowed; provided however, that the foregoing releases shall not act as a waiver, release, bar, discharge or disallowance of any underlying claims or defenses related to the action styled as American Home Mortgage Investment Corp. v. Lehman Brothers Inc. and Lehman Commercial Paper Inc., Civil Action No. 08-484-JJF, in the United States District Court for the District of Delaware.

(See Sale Order, Paragraph 13).

e.   Bankruptcy Court Approval. All obligations of the Debtors, Broadhollow, Melville and Buyer under the Sale Agreements, including all actions, sales, assignments, agreements, releases, waivers, consents, terms and obligations contained herein, are subject to and conditioned upon approval, upon notice and a hearing, by the Court of (i) the transfer of the Assigned Interests and the replacement of the manager, in each case without prior Rating Agency Confirmation, and (ii) the Sale Order releases (collectively, "Bankruptcy Court Approval"). Each of the parties acknowledges and agrees that (a) the release of the Debtors is an integral part of the consideration to the Debtors under the Broadhollow Sale Agreement, (b) that it is the intent of the parties that Debtors be released from any and all liabilities or obligations related to or arising out of Debtors ownership of Broadhollow, and (c) that as part of the Bankruptcy Court Approval, Debtors will seek an Order that includes (i) the Indenture Trustee, solely in its capacity as such and for no other purpose, and Noteholders, solely in their capacity as such and for no other purpose,

as additional releasors; and (ii) the Indenture Trustee, solely in its capacity as such and for no other purpose, and Noteholders, solely in their capacity as such and for no other purpose, as additional releasees such that there will be a mutual release of any claims the Indenture Trustee or Noteholders have or may have against the Debtors and any claims the Debtors have or may have against the Indenture Trustee or Noteholders, in each case, solely in their respective capacities as Indenture Trustees or Noteholders.

f.  Waiver of Rating Agency Confirmation:  Pursuant to the terms of the Broadhollow LLC Agreement and the Melville LLC Agreement, "Rating Agency Confirmation" is a condition to the transfer of a member's limited liability company interest or the removal of the manager. "Rating Agency Confirmation" means with respect to any action, each Rating Agency rating any outstanding Rated Notes shall have notified the Manager in writing that such action will not result in a reduction or withdrawal of the rating (in effect immediately before taking such action) of such outstanding Rated Notes. "Rated Notes" means any notes issued by the Company that have been assigned a rating by the Rating Agency. Each Rating Agency that had previously rated the Broadhollow and/or Melville Notes has since withdrawn all ratings as of the date of the filing of this Motion. The Debtors are requesting, to the extent necessary, that the Court waive any requirement for Rating Agency Confirmation in order to transfer the LLC Interests and remove the managers under the terms of the Sale Agreements.

g.  Debtors' Representations and Warranties:  The representations and warranties to be made by AHM Corp. and AHM Acceptance, as applicable are set forth in Section 5(a) of the Sale Agreements. There is a one (1) year survival and damages cap of $50,000 applicable to the Limited Representations and a survival period of the earlier of the closing of the bankruptcy cases or three (3) years for the remaining representations and warranties. As reflected in the Sale Order, there will be no Plan reserve requirement unless and until a complaint is filed in connection with any alleged breach of a representation or warranty.

h.  Sale of Mortgage Loans.  As a condition to Closing, Broadhollow must sell the Mortgage Loans.

## RELIEF REQUESTED

21.    By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 363(b) and 1146(a) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9014 and 9019, authorizing and approving (i)(a) the terms of the Broadhollow Sale Agreement; (b) the terms of the Melville Sale Agreement; (ii) settlement of claims, releases and waivers; (iii) release of certain escrow funds; and (iv) granting related relief

## BASIS FOR RELIEF REQUESTED

**I.    The Sales, including the settlements, releases and waivers included within the Sales, Should be Approved Pursuant to the Terms of the Sale Agreements**

22.    For the reasons explained below and throughout this Motion, the Debtors believe that the approval of a private sale of the LLC Interests to the Buyer pursuant to the terms of the Sale Agreements is not only appropriate but in the best interests of the Debtors, their estates and creditors.  Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  In pertinent part, Bankruptcy Rule 6004 states that, "all sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).  With respect to the notice required in connection with a private sale, Bankruptcy Rule 2002(c)(1) states, in pertinent part, that,

> . . . the notice of a proposed use, sale or lease of property . . . shall include . . . the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is sufficient if it generally describes the property.

Fed. R. Bankr. P. 2002(c)(1)

23.     To approve the use, sale, or lease of property out of the ordinary course of business, this Court must find some articulated business justification for the proposed action. *See In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly adopting the articulated business justification and good faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies*).

24.     Generally, courts have applied four (4) factors in determining whether a sale of a debtor's assets should be approved:  (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided.  *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145-57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *Delaware & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

25.     This fundamental analysis does not change if the proposed sale is private, rather than public. *See, e.g., In re Ancor Exploration Co.*, 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)"). The bankruptcy court "has ample discretion to administer the estate, including authority to

conduct public or private sales of estate property." *In re WPRV-TV, Inc.*, 143 B.R. 315, 319

(D.P.R. 1991), vacated on other grounds, 165 B.R. 1 (D.P.R. 1992); *accord, In re Canyon*

*P'ship*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985). Here, the proposed private sale of the LLC

Interests to the Buyer meets all of these requirements and should be approved.

A.    **Proceeding by Private Sale Reflects an Exercise of the Debtors' Business Judgment**

26.    There are compelling reasons and sound business justifications for the

Court to authorize the Sales, including the settlements, waivers and releases. The Sales will

provide substantial value to the Debtors' estates, including the availability of $5.5 million and

the elimination of any administrative costs and liabilities associated with the Debtors'

management and ownership of Broadhollow and Melville.

27.    The settlement of numerous complex claims in connection with the Sales

provides a significant benefit to the Debtors' estates. Without the settlement under the Sales, the

Debtors would remain conflicted between their duties to the Debtors' estates and creditors and

the duties of AHM Corp. and AHM Acceptance as members and managers of Broadhollow and

Melville, respectively. Until such conflicts are resolved, the Escrow Funds would be unavailable

for use by the Debtors. The cost of hiring additional professionals and then litigating diverse

claims issues would be a significant drain on the Debtors' limited resources. Under the Sales,

the Buyer is the appropriate party to step into this role, particularly since the Buyer is an entity

established by several of the Broadhollow Noteholders that have a direct interest in the

liquidation of the Broadhollow and Melville assets, including the claims being resolved herein.

Instead of selling the LLC interests to the Buyers and then engaging in claims negotiations

and/or litigation, the issues are being resolved upfront for the benefit of all parties. The result is

a reasonable resolution of the claims, the reduction in administrative and litigation costs, and a clean separation between the parties.

28.    Pursuant to the terms of the Sale Agreements, the Buyer, Broadhollow and Melville (immediately upon the effectiveness of the ownership of the Buyer) are releasing (i) any and all claims they have to the Miscellaneous Funds Escrow Account, with the exception of the $703,162 being paid upon the closing date to the Buyer for or on behalf of Broadhollow, (ii) any and all claims scheduled by the Debtors as owing to Broadhollow and Melville, and (iii) any and all claims associated with the Debtors' ownership of the LLC Interests or as members and managers of Broadhollow and Melville.  The Debtors are providing mutual releases to the Buyer, Broadhollow and Melville.  Moreover, pursuant to the terms of the Sale Order, the Debtors are seeking to obtain a narrowly tailored release from the Indenture Trustees and the Broadhollow and Melville Noteholders, who will benefit from the Sales transaction by receiving the direct or indirect benefit of the $703,162 paid from the Escrow Funds, obtaining a mutual release from the Debtors, reduction of administrative and litigation costs that would have depleted the assets of Broadhollow and Melville and the benefit of a new owner with an enhanced economic interest in expeditiously liquidating the Broadhollow and Melville assets for the benefit of the noteholders.

29.    For the foregoing reasons, the Debtors submit that the Sales are in the sound business judgment of the Debtors.

**B.    The Consideration is Fair and Reasonable**

30.    The Debtors believe that the value they are receiving in exchange for the Sale of the LLC Interests is fair and reasonable.  The terms of the Sales were the result of extensive and arm's length negotiations.  The Debtors have carefully considered and analyzed the Buyer's offer as set forth in the Sale Agreements and submit that the proposed Sales are in

the best interests of the Debtors' estates inasmuch as they will provide substantial value to the

Debtors' estates through the elimination of liabilities, the settlement of claims and the immediate

availability of approximately $5.5 million.  In consideration of the foregoing, the Debtors believe

that the terms of the Sales provide fair and reasonable value for the LLC Interests.

      **C.**      **The Sales are Proposed in Good Faith**

      31.      The Debtors submit that the sale transactions contemplated herein and in

the Sale Agreements have been proposed in good faith, as the agreements were the product of

good faith, arm's length negotiations between the Debtors, on the one hand, and the Buyer, on

the other, and was negotiated with the active involvement of the Debtors' officers and

professionals.  The Debtors believe and submit that the Sales are not the product of collusion or

bad faith.  Further, no evidence suggests that the Sale Agreements are anything but the product

of arm's length negotiations between the Debtors, the Buyer and their respective professionals.

      **D.**      **Adequate and Reasonable Notice of Sale Has Been Provided**

      32.      The Debtors intend to provide adequate notice of the proposed Sales to all

parties in interest, as required by the applicable procedural rules.  *See* Fed. R. Bankr. P.

2002(c)(1) (notice must contain "the terms and conditions of any private sale and the time fixed

for filing objections."); *see also, Delaware & Hudson Ry.*, 124 B.R. at 180 (the disclosures

necessary in such a sale notice need only include the terms of the sale and the reasons why such

a sale is in the best interests of the estate and do not need to include the functional equivalent of a

disclosure statement).  The Debtors intend to send copies of this Motion and the Sale

Agreements to all parties that have expressed any interest, or the Debtors believe may have an

interest, in purchasing the LLC Interests.  The notified parties will have the opportunity to

submit other offers during the period prior to the objection deadline set forth herein.  Consistent

with their fiduciary duties to their estates, the Debtors will consider any and all such offers.

**II.    The LLC Interests Should Be Sold Free and**
**Clear of Liens, Claims and Encumbrances**

       33.    Under section 363(f) of the Bankruptcy Code, a debtor may sell property

free and clear of a lien, claim or encumbrances if:

    (i)    applicable nonbankruptcy law permits the sale of such property free and
clear of such interest;

    (ii)    the lienholder or claimholder consents;

    (iii)    such interest is a lien and the price at which such property is to be sold is
greater than the aggregate value of all liens on such property;

    (iv)    such interest is in bona fide dispute; or

    (v)    such entity could be compelled, in a legal or equitable proceeding, to
accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

       34.    Satisfaction of any of the requirements enumerated therein will suffice to

warrant the Debtors' sale of the LLC Interests free and clear of liens, claims and encumbrances.

*See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa.

1988) (noting that section 363(f) is written in the disjunctive; therefore, a court may approve a

sale "free and clear," provided that at least one of the subsections is met).

       35.    Here, to the extent any lien, claim or encumbrance on the LLC Interests

exists – the Debtors believe there are none - they fall into at least one of the five categories of

section 363(f), and the Debtors submit that any such lien, claim or encumbrance will be

protected adequately by attachment to the net proceeds of the Sales with the same force, effect

and priority that such lien, claim or encumbrance has on the LLC Interests.  Finally, in any event,

the Debtors believe that any entity with an interest in the LLC Interests could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction of such interest. Accordingly, the

Debtors respectfully submit that the sale of the LLC Interests free and clear of liens, claims and

encumbrances satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code and

should be approved.

**III.    Sale of the LLC Interests Is Proposed In "Good Faith"
Under Section 363(m) of the Bankruptcy Code**

36.    The Debtors additionally request that this Court find that the Buyer is

entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection

with the Sale. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under
> subsection (b) . . . of this section of a sale . . . of property does not
> affect the validity of a sale . . . under such authorization to an
> entity that purchased . . . such property in good faith, whether or
> not such entity knew of the pendency of the appeal, unless such
> authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

37.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of

assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased

assets if the order allowing the sale is reversed on appeal. Although the Bankruptcy Code does

not define "good faith purchaser," the Third Circuit, construing section 363(m) of the

Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith'

and for 'value.'" *Abbotts Dairies*, 788 F.2d at 147. To constitute lack of good faith, a party's

conduct in connection with the sale must usually amount to "fraud, collusion between the

purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other

bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

38.    As required by section 363(m) of the Bankruptcy Code, both the Debtors and the Buyer have acted in good faith in negotiating the sales of the LLC Interests.  There is no evidence of fraud or collusion in the terms of the Sale Agreements  To the contrary, as previously discussed, the Sales will be the culmination of meaningful negotiations in which the parties were ably represented by sophisticated advisors.  The Buyer is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been conducted on an arm's length, good faith basis.

39.    All known parties with an interest in the LLC Interests will receive notice of the Sales and will be provided an opportunity to be heard.  The Debtors submit that such notice is adequate for entry of an Order approving this Motion and satisfies the requisite notice provisions required under section 363(b) of the Bankruptcy Code.  Under the circumstances, the Buyer should be afforded the benefits and protections that section 363(m) provides to a good faith purchaser.

**IV.    Approval of the Sales is Warranted Pursuant to Bankruptcy Rule 9019**

40.    The Sales incorporate certain settlements and compromises. Compromises are favored by bankruptcy courts.  See In re Sassalos, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise . . . rests in the sound discretion of the judge."). Under Bankruptcy Rule 9019(a), the Court has the authority to approve a settlement if it is fair and equitable and in the best interests of the estate.  See In re Louise's, Inc., 211 B.R. 798 (D. Del, 1997); In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986); Fischer v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997).  The bankruptcy court is not to decide, however, the numerous questions of law or fact raised by litigation, but rather

should canvas the issues to determine whether the settlement or compromise falls below the lowest point in the range of reasonableness. <u>Cosoff v. Rodman (In re W.T. Grant Co.)</u>, 699 F.2d 599, 608 (2d Cir. 1983). In considering whether to approve a compromise or settlement, the Third Circuit Court of Appeals has developed a four-factor test that analyzes "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>In re RFE Indus., Inc.</u>, 283 F.3d 159, 165 (3d Cir. 2002). The bankruptcy court should not, however, substitute its judgment for that of the debtor. <u>Neshaminy Office Bldg. Assocs.</u>, 62 B.R. at 803. Additionally, the bankruptcy court should defer to the debtor's business judgment so long as there is a legitimate business justification for its action. <u>Meyers</u>, 91 F.3d 389, 395 (3d Cir. 1996). In considering whether to approve a compromise or settlement, a court must assess and balance the value of the claim that is being compromised against the value to the estate of accepting the compromise. <u>In re Martin</u>, 91 F.3d 389, 393 (3d Cir. 1996). Among other things, a bankruptcy court should consider: "1) The balance between the likelihood of success compared to the present and future benefits offered by the settlement; 2) Prospect of complex and protracted litigation if settlement is not approved; . . . and 3) The extent to which settlement is the product of arm's length bargaining." <u>47-49 Charles St.</u>, 209 B.R. at 620 (quoting <u>Nellis v. Shugrue</u>, 165 B.R. 115, 122 (S.D.N.Y. 1994)).

      41.     The Debtors believe the compromises embodied in the terms of the Sale Agreements are in the best interests of the Debtors and these estates, as they (a) relieve the Debtors' estates of potential liability and administrative expenses in connection with the LLC Interests and potential claims arising in connection with the Debtors' ownership of such Interests; (b) avoids the burdens and uncertainties of litigating any claims that may be brought

by, among others, the Broadhollow Noteholders, Melville Noteholders, Indenture Trustees, and Lehman in connection with the LLC Interests and the Debtors' ownership of such Interests; and (c) represents reasonable compromises of disputed issues. In addition, the Debtors believe that the Sale Agreements embody compromises that are clearly the product of arm's length negotiations among the parties, are fair and constitute the best obtainable results under the circumstances.

## V.  Authorizing the Exemption of the Sales from Stamp and Similar Taxes is Appropriate

42.    Under section 1146(a) of the Bankruptcy Code, the "transfer. . . or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(a). In Florida Department of Revenue v. Piccadilly Cafeterias, Inc., the Supreme Court concluded that section 1146(a) is to be interpreted as setting forth a simple, bright-line rule: "'If a debtor is able to develop a Chapter 11 reorganization and obtain confirmation, then the debtor is to be afforded relief from certain taxation to facilitate the implementation of the reorganization plan.'" 128 S. Ct. 2326 (U.S. 2008) (quoting NVR Homes, Inc. v. Clerks of the Circuit Courts (In re NVR, L.P.), 189 F.3d 442, 458 (4th Cir. Va. 1999). Here, the Debtors clearly satisfy this rule. This Court has already confirmed the Plan in these cases, which contemplates the liquidation of all of the Debtors' assets; in addition, the Sale will occur post-confirmation. Therefore, the Sale is precisely the type of transfer for which section 1146(a) provides. Accordingly, the Sale should be approved free and clear of stamp and similar taxes.

## VI.  Waiver of Fourteen-Day Stay Period Under Fed. R. Bankr. P. 6004(h)

43.    Bankruptcy Rule 6004(h) provides, in relevant part, that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after

entry of the order, unless the court orders otherwise." The Debtors request the order approving
the Sales to be effective immediately by providing that the fourteen-day stay period under
Bankruptcy Rule 6004(h) is waived.

44.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for
an objecting party to appeal before an order can be implemented. See Advisory Committee
Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory
Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce
the fourteen-day stay period, Collier on Bankruptcy suggests that the fourteen-day stay period
should be eliminated to allow a sale or other transaction to close immediately "where there has
been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6004.10 (L.
King, 15th rev. ed. 1988). Furthermore, Collier's provides that if an objection is filed and
overruled, and the objecting party informs the court of its intent to appeal, the stay may be
reduced to the amount of time actually necessary to file such appeal. Id.

45.    Promptly closing the Sales is of critical importance to the Debtors' efforts
to emerge from bankruptcy successfully. Accordingly, the Debtors hereby request that the Court
waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

46.    Notice of this Motion will be provided to: (i) the US Trustee; (ii) counsel
to the Committees; (iii) the Indenture Trustees; (iv) counsel to the Buyer; (v) federal, state and
local taxing authorities and relevant governmental entities; (vi) Lehman; (vii) parties who have
filed a notice of appearance in the case; (viii) Bank of America; (ix) any parties who have
expressed an interest in purchasing the Broadhollow and Melville LLC interests (if any); and (x)
all parties known to the Debtors who have an interest in or rights to the LLC Interests.

WHEREFORE, the Debtors respectfully requests that the Court enter an Order, substantially in the form attached hereto as Exhibit C, authorizing and approving (i)(a) the terms of the Broadhollow Sale Agreement; (b) the terms of the Melville Sale Agreement; (ii) settlement of claims, releases and waivers; (iii) release of certain escrow funds; and (iv) granting related relief.

Dated:  Wilmington, Delaware  
         January 29, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Sean M. Beach (No. 4070)  
Kara Hammond Coyle (No. 4410)  
The Brandywine Building  
1000 West Street, 17th Floor  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors-in-Possession