Folsom Parkshore Self-Storage
185 Parkshore Drive
Folsom, CA  95630
February 2, 2010



Court Clerk
United States Bankruptcy Court
824 N. Market Street, 3rd Floor
Wilmington, DE  19801

Re: Case No. 07-11047 (CSS);  American Home Mortgage Holdings, Inc.

Dear Sir or Madam

Please accept these documents as evidence of our bankruptcy claim against American
Home Mortgage Holdings, Inc.  Enclosed are a copy of the debtors lease agreement and
current accounting of charges.

Sincerely,

Candido Concepcion
Resident Manager
Folsom Parkshore Self-Storage

Enclosures (5)

{Lease Agreement dated 10/14/04 – 4 pages}

{Summary of Account as of 2/02/10 – 1 page}

# PREMIER-PARKSHORE SELF STORAGE

## 185 Parkshore Dr.   Folsom, CA 95630

## RENTAL AGREEMENT

**NOTICE:  YOUR STORED PROPERTY MAY BE SUBJECT TO A CLAIM OF LIEN FOR UNPAID RENT AND OTHER CHARGES AND MAY BE SOLD TO SATISFY THE LIEN IF THE RENT OR OTHER CHARGES DUE REMAIN UNPAID FOR FOURTEEN (14) CONSECUTIVE DAYS. THIS LIEN AND ITS ENFORCEMENT IS AUTHORIZED BY CHAPTER 10 (COMMENCING WITH SECTION 21700) OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE.**

### 1. LEASE INFORMATION:

A. Date of Lease: *10-14-04*   B. Storage Space No. *114*   C. Approx. Unit Size: *10 X 10*

D. Access Code: *1594*   E. Rental Rate per Month: *115 Special*

F. Occupant's Name: *AMERICAN BROKERS*   Phone *(916) 850-6100*

Address *1180 IRON POINT ROAD, Suite 200 CONDUIT*

City *FOLSOM*   State *CA*   Zip *95630*

Employer _____   Phone (___) _____

| | |
|---|---|
| LOCK.............................$ | |
| PROBATE PLUS MONTH | |
| IF APPLICABLE....................$ *75.48* | |
| PERFORMANCE DEPOSIT.$ *25.00* | |
| ADMINISTRATION FEE......$ | |
| SALES TAX.......................$ | |
| TOTAL MOVE IN COST.......$ *100.48* | |

## NO RENT REFUNDS

**PLEASE PROVIDE THE NAME AND ADDRESS OF ANOTHER PERSON IN ADDITION TO YOURSELF TO WHOM ANY PRELIMINARY LIEN NOTICE AND SUBSEQUENT NOTICES MAY BE SENT. IF NONE, WRITE NONE.**

Name: *NONE*   Phone: ( _____ ) _____

Address: _____   City: _____   State: _____   Zip: _____

**2. PARTIES AND DATE:** This Lease Agreement ("Lease") is entered into in duplicate, as of the date set forth above by and between Premier-Parkshore Self Storage ("Owner") and the individual(s) named above ("Occupant"), for the purpose of renting space for the storage of personal property, and with the express understanding and agreement that no bailment or deposit for safekeeping is intended thereby.

**3. SPACE:** Owner agrees to let, and Occupant agrees to rent those premises described as a storage space at Owner's facility at 185 Parkshore Drive, Folsom, California 95630. ("Storage Facility"), the number of which is set forth in Section 1.B above ("Space"), on the terms and conditions of this Lease.

**4. TERM:** The term of this Lease shall commence as of the date set forth in Section 1.A of this Lease, and shall continue on a month-to-month basis.

**5. RENT:** Rent shall be payable in advance at the rate set forth in Section 1.F, on or before the 1st day of each month as set forth in Section 1.A. Rent shall be delinquent if not paid monthly by the day immediately following the 1st. Rent payment shall be made to Owner at the address set forth in this Lease, or to such other place as Owner may designate in writing. Rent payments shall be made in full without offset or deductions of any kind, and without demand. Prior to taking possession of the space, Occupant shall pay the rent for the first month. The monthly rental rate may be changed at any time by Owner giving thirty (30) days written notice to occupant at the address set forth in this lease. Any such adjustment in the monthly rent shall not otherwise affect the terms of this Lease, and all other terms of this Lease shall remain in full force and effect. No monthly statements or bills will be issued.

**6. ADDITIONAL RENTAL CHARGES:** Late rental payments, or rent checks that are dishonored, cause Owner to incur damages which are extremely difficult to measure and not contemplated by this lease. Rent is due on the first of each month and is delinquent on the date immediately following the date. If rent is not received by Owner by the tenth day following the due date, if Occupant's check is dishonored and returned, or if Occupant's unit becomes subject to lien enforcement procedures under the Self-Service Storage Facilities Act, Occupant agrees to pay to Owner, as additional rent, administrative charges as follows:

| | | | | | |
|---|---|---|---|---|---|
| Late rent charge (if not paid within 10 days of due date) | of | $10 to $20; | Dishonored check charge | of | $15.00; |
| Pre-lien charge (if not paid within 24 days of due date) | of | $15.00; | Advertising charge | of | $25.00; |
| Lien Status charge (if not paid within 38 days of due date) | of | $35.00; | Labor charges (hourly rate) | of | $30.00; and |
| Auction Notice charge | of | $25.00; | Inventory & Sale Fees (as documented) | | |

The receipt of a check shall not be considered payment to Owner if the check is dishonored or held for any reason. Occupant's property may become subject to a lien if rent remains unpaid for fourteen (14) days or longer. (California Business and Professions Code §§ 21700 et seq.) In addition, Occupant agrees to reimburse Owner for all costs incurred by Owner in enforcing the lien, including, but not limited to, costs of removing locks, inventory of stored property and reasonable storage costs as may be provided by law. In the event of satisfaction of the lien prior to sale, owner shall have three (3) days thereafter in which to release liened property, which may have been removed or re-secured during lien enforcement. ALL PAYMENTS MADE TO SATISFY OUTSTANDING LIEN AMOUNTS AND CHARGES SHALL BE PAID BY CERTIFIED CHECK, CASHIER'S CHECK, MONEY ORDER OR CASH. If Occupant's checks are dishonored more than once, Owner may require, upon thirty (30) days written notice to Occupant, that all future rent shall be paid by certified check, money order, cashier's check or cash.

Any other costs incurred by Owner by reason of Occupant's breach of any provision of this agreement shall be deemed additional rent, and may be demanded by Owner of Occupant at any time, or waived, all in Owner's sole and absolute discretion.

→   By placing his/her initials here, *(initials)* , Occupant acknowledges that he/she has read, and understands and agrees to the terms of paragraph 6.

**7. PERMITTED AND PROHIBITED USE OF SPACE:** Occupant agrees to use Space only for the storage of property wholly owned by Occupant. Property is stored under the supervision and control of Occupant. Owner exercises neither care, custody, nor control over Occupant's stored property. Occupant specifically agrees that, with the exception of property prohibited by this agreement, Owner is not concerned with the kind, quality or value of the goods stored. Occupant agrees not to store property with a total value in excess of $5,000.00 without prior written consent of Owner, which consent may be withheld in Owner's sole discretion and, if such written consent is not obtained, the total value of Occupant's property shall be deemed not to exceed $5,000.00. The provisions of this paragraph do not alter the releases of Owner's liability setforth in Section 9, nor constitute any admission that Occupant's stored property has any value whatsoever. Occupant shall not store any motor vehicle in space without the prior written consent of Owner. Occupant shall not conduct any activity in or around nor store any property in the Space which would result in violation of any ordinance, statute, or regulation of any governmental agency having jurisdiction, or permit such actions to occur. Occupant is strictly prohibited from storing or using materials on the premises which are classified as hazardous or toxic under any local, state or federal law or regulation, and from engaging in any activity on-site which produces such materials. Occupant's obligations of indemnity as set forth in section 10 herein specifically includes any cost, expenses, fines or penalties imposed against the Owner, arising out of storage or use of any hazardous or toxic material by Occupant, Occupant's agents, employees, invitees or guests. Occupant shall not use the premises for the storage of illegal substances, perishable or food items, explosives, paint, varnish, thinner, gasoline and/or other highly flammable materials. The rented premises shall not be used for operation for any business, for manufacturing or production or for human or animal occupancy. Pets shall not be brought on the premises or the surrounding property. Occupant shall not do or permit to be done any act which creates or may create a nuisance in connection with Occupant's use of the space.

3. **SPACE:** Owner agrees to let, and Occupant agrees to rent those premises described as a storage space facility at Store Drive, Folsom, California 95630. ("Storage Facility"), the number of which is set forth in Section 1.B above ("Space"), on the terms and conditions of this Lease.

4. **TERM:** The term of this Lease shall commence as of the date set forth in Section 1.A of this Lease, and shall continue on a month-to-month basis.

5. **RENT:** Rent shall be payable in advance at the rate set forth in Section 1.F, on or before the 1st day of each month as set forth in Section 1.A. Rent shall be delinquent if not paid monthly by the day immediately following the 1st. Rent payment shall be made to Owner at the address set forth in this Lease, or to such other place as Owner may designate in writing. Rent payments shall be made in full without offset or deductions of any kind, and without demand. Prior to taking possession of the space, and as a condition to taking possession, Occupant shall pay the rent for the first month. The monthly rental rate may be changed at any time by Owner giving thirty (30) days written notice to occupant at the address set forth in this lease. Any such adjustment in the monthly rent shall not otherwise affect the terms of this Lease, and all other terms of this Lease shall remain in full force and effect. No monthly statements or bills will be issued.

6. **ADDITIONAL RENTAL CHARGES:** Late rental payments, or rent checks that are dishonored, cause Owner to incur damages which are extremely difficult to measure and not contemplated by this lease. Rent is due on the first of each month and is delinquent on the date immediately following the date. If rent is not received by Owner by the tenth day following the due date, if Occupant's check is dishonored and returned, or if Occupant's unit becomes subject to lien enforcement procedures under the Self-Service Storage Facilities Act, Occupant agrees to pay to Owner, as additional rent, administrative charges as follows:

| | | | | | |
|---|---|---|---|---|---|
| Late rent charge (if not paid within 10 days of due date) | of | $10 to $20; | Dishonored check charge | of | $15.00; |
| Pre-lien charge (if not paid within 24 days of due date) | of | $15.00; | Advertising charge | of | $25.00; |
| Lien Status charge (if not paid within 38 days of due date) | of | $35.00; | Labor charges (hourly rate) | of | $30.00; and |
| Auction Notice charge | of | $25.00; | Inventory & Sale Fees (as documented) | | |

The receipt of a check shall not be considered payment to Owner if the check is dishonored or will not be paid for any reason. Occupant's property may become subject to a lien if rent remains unpaid for fourteen (14) days or longer. (California Business and Professions Code §§ 21700 et seq.) In addition, Occupant agrees to reimburse Owner for all costs incurred by Owner in enforcing the lien, including, but not limited to, costs of removing locks, inventory of stored property and reasonable storage costs as may be provided by law. In the event of satisfaction of the lien prior to sale, owner shall have three (3) days thereafter in which to release liened property, which may have been removed or re-secured during lien enforcement. ALL PAYMENTS MADE TO SATISFY OUTSTANDING LIEN AMOUNTS AND CHARGES SHALL BE PAID BY CERTIFIED CHECK, CASHIER'S CHECK, MONEY ORDER OR CASH. If Occupant's checks are dishonored more than once, Owner may require, upon thirty (30) days written notice to Occupant, that all future rent shall be paid by certified check, money order, cashier's check or cash.

Any other costs incurred by Owner by reason of Occupant's breach of any provision of this agreement shall be deemed additional rent, and may be demanded by Owner of Occupant at any time, or waived, all in Owner's sole and absolute discretion.

➡ By placing his/her initials here, _____, Occupant acknowledges that he/she has read, and understands and agrees to the terms of paragraph 6.

7. **PERMITTED AND PROHIBITED USE OF SPACE:** Occupant agrees to use Space only for the storage of property wholly owned by Occupant. Property is stored under the supervision and control of Occupant. Owner exercises neither care, custody, nor control over Occupant's stored property. Occupant specifically agrees that, with the exception of property prohibited by this agreement, Owner is not concerned with the kind, quality or value of the goods stored. Occupant agrees not to store property with a total value in excess of $5,000.00 without prior written consent of Owner, which consent may be withheld in Owner's sole discretion and, if such written consent is not obtained, the total value of Occupant's property shall be deemed not to exceed $5,000.00. The provisions of this paragraph do not alter the releases of Owner's liability set forth in Section 9, nor constitute any admission that Occupant's stored property has any value whatsoever. Occupant shall not store any motor vehicle in space without the prior written consent of Owner. Occupant shall not conduct any activity in or around nor store any property in the Space which would result in violation of any ordinance, statute, or regulation of any governmental agency having jurisdiction, or permit such actions to occur. Occupant is strictly prohibited from storing or using materials on the premises which are classified as hazardous or toxic under any local, state or federal law or regulation, and from engaging in any activity on-site which produces such materials. Occupant's obligations of indemnity as set forth in section 10 herein specifically includes any cost, expenses, fines or penalties imposed against the Owner, arising out of storage or use of any hazardous or toxic material by Occupant, Occupant's agents, employees, invitees or guests. Occupant shall not use the premises for the storage of illegal substances, perishable or food items, explosives, paint, varnish, thinner, gasoline and/or other highly flammable materials. The rented premises shall not be used for operation for any business, for manufacturing or production or for human or animal occupancy. Pets shall not be brought on the premises or the surrounding property. Occupant shall not do or permit to be done any act which creates or may create a nuisance in connection with Occupant's use of the space.

Trash or other materials shall not be left in or near the Space. Occupant shall not make use of any electricity in the Space for refrigeration, heating, or any other purpose whatsoever other than the single lighting fixture provided in the Space, which shall be used only for the purpose of lighting the Space when Occupant enters the Space, and Occupant shall turn off the lights when leaving the Space.

8. **INSURANCE:** OCCUPANT ACKNOWLEDGES THAT OWNER DOES NOT PROVIDE INSURANCE COVERING OCCUPANT'S STORED PROPERTY, OCCUPANT AGREES TO MAINTAIN, AT OCCUPANT'S EXPENSE, A POLICY OF FIRE AND EXTENDED COVERAGE INSURANCE WITH THEFT, VANDALISM, AND MALICIOUS MISCHIEF ENDORSEMENTS FOR THE FULL VALUE OF OCCUPANTS STORED PROPERTY. TO THE EXTENT OCCUPANT DOES NOT MAINTAIN SUCH INSURANCE, OCCUPANT SHALL BE DEEMED TO HAVE "SELF-INSURED" TOTALLY (I.E., NOT TO INSURE WITH ANY DULY LICENSED INSURANCE COMPANY) AND SHALL BEAR ALL RISK OF LOSS OR DAMAGE. THIS INSURANCE IS A MATERIAL CONDITION OF THIS AGREEMENT AND IS FOR THE BENEFIT OF BOTH OCCUPANT AND OWNER. OCCUPANT EXPRESSLY AGREES THAT THE CARRIER OF SUCH INSURANCE SHALL NOT SUBROGATED TO ANY CLAIM OF OCCUPANT AGAINST OWNER, OR OWNER'S AGENTS OR EMPLOYEES. OCCUPANT AGREES TO INDEMNIFY AND HOLD HARMLESS OWNER FROM ANY EXPENSE, COST, OF DAMAGE INCURRED BY REASON OF ANY CLAIM OR ACTION BASED IN WHOLE OR IN PART UPON SUCH SUBROGATION, WHILE CERTAIN INFORMATION MAY BE MADE AVAILABLE TO OCCUPANT WITH RESPECT TO INSURANCE, OWNER AND OWNER'S AGENTS ARE NOT INSURERS, ARE NOT AFFILIATED WITH ANY INSURANCE COMPANY, DO NOT ACT AS ANY INSURANCE COMPANY'S AGENT, BROKER, OR SOLICITOR, AND DO NOT ASSIST IN THE EXPLANATION OF COVERAGE OR IN THE MAKING OF CLAIMS UNDER ANY INSURANCE POLICY.

➡ By placing his/her initials here, _____, Occupant acknowledges that he/she has read, and understands and agrees to the terms of paragraph 8.

9. **RELEASE OF OWNER'S LIABILITY:** AS A FURTHER CONSIDERATION FOR THE USE AND OCCUPANCY OF THE SPACE. OCCUPANT AGREES THAT OWNER, HIS AGENTS, EMPLOYEES, AND ASSIGNS SHALL NOT BE LIABLE TO OCCUPANT HIS/HER AGENTS, GUESTS, LICENSEES, OR INVITEES FOR

(Continued on back)

ANY LOSS OR DAMAGE, INJURY, OR DEATH CAUSED TO THEM OR TO THEIR PROPERTY, AS THE RESULT OF THE USE AND OCCUPANCY OF THE SPACE OR STORAGE FACILITIES. IT IS FURTHER AGREED THAT ANY STORED PROPERTY IS PLACED IN THIS SPACE AT OCCUPANT'S SOLE RISK. THE OWNER AND OWNER'S AGENTS, EMPLOYEES, AND ASSIGNS SHALL HAVE NO RESPONSIBILITY OR LIABILITY FOR ANY LOSS OR DAMAGE TO SAID PROPERTY FROM ANY CAUSE WHATSOEVER, INCLUDING THE ACTIVE OR PASSIVE ACTS, OMISSIONS, OR NEGLIGENCE OF OWNER OR OWNER'S AGENTS, EMPLOYEES, OR ASSIGNS. OCCUPANT ACKNOWLEDGES THAT OWNER DOES NOT WARRANT OR REPRESENT THAT STORED PROPERTY WILL BE SAFELY KEPT, NOR THAT IT WILL BE SECURE AGAINST HAZARDS CAUSED BY RODENTS, INSECTS, WATER, FIRE, OR THE ELEMENTS OF WEATHER OR EARTHQUAKE. IT IS AGREED BY OCCUPANT THAT THIS RELEASE OF OWNER'S LIABILITY IS A BARGAINED FOR CONDITION OF THE RENT SET FORTH HERE, AND THAT WERE OWNER NOT RELEASED FROM LIABILITY AS SET FORTH HERE, A MUCH HIGHER RENT WOULD HAVE TO BE AGREED UPON.

FURTHERMORE, OWNER AND OWNER'S AGENT SHALL NOT BE LIABLE TO OCCUPANT FOR INJURY OR DEATH SUFFERED BY ANY PERSON, INCLUDING OCCUPANT'S GUESTS OR INVITEES, OCCURRING IN OR ABOUT THE PREMISES OR STORAGE SPACE, OR ARISING OUT OF OCCUPANT'S USE OF THE PREMISES OR STORAGE SPACE, FROM ANY CAUSE WHATSOEVER, EVEN IF SUCH INJURY OR DEATH IS CAUSED BY THE ACTIVE OR PASSIVE ACTS OR OMISSIONS, OR ACTIVE OR PASSIVE NEGLIGENCE OF OWNER, OR OWNER'S AGENTS OR EMPLOYEES. THIS RELEASE OF LIABILITY SPECIFICALLY EXTENDS TO ANY LOSSES OR INJURY RESULTING FROM ANY FAILURE IN ANY SECURITY SYSTEMS OR SECURITY PROCEDURES EMPLOYED AT THE PREMISES FROM ANY CAUSE WHATSOEVER.

➔  By placing his/her initials here, _____, Occupant acknowledges that he/she has read, and understands and agrees to the terms of paragraph 9.

**10. INDEMNIFICATION:** Occupant will indemnify, hold harmless, and defend Owner from all claims, demands, actions, or causes of action (including attorney's fees and all costs whatsoever) that are hereafter made or brought as a result of or arising out of Occupant's use of the space and Storage Facility. This indemnity specifically includes, but is not limited to, all liabilities released by Occupant in Section 9 of this Lease.

**11. NOTICES--CHANGE OF ADDRESS--CHANGE IN TERMS:** ALL NOTICES REQUIRED OR PERMITTED BY LAW, OR BY THIS AGREEMENT, MAY BE SENT TO OCCUPANT AT ANY OF THE ADDRESSES SET FORTH FOR OCCUPANT IN SECTION 1G OF THIS LEASE. IN THE EVENT THAT ANY OF THE ADDRESSES GIVEN ABOVE CHANGE, SUCH CHANGE SHALL NOT BE BINDING UPON OWNER UNLESS OCCUPANT HAS GIVEN OWNER WRITTEN NOTIFICATION OF THE CHANGE, EITHER BY PERSONAL DELIVERY OR BY DEPOSIT IN THE UNITED STATES MAIL WITH FIRST CLASS POSTAGE PREPAID ADDRESSED TO OWNER AT THE ADDRESS GIVEN FOR PAYMENT OF RENT AND THE OWNER HAS ACKNOWLEDGED ITS RECEIPT IN WRITING. ANY OF THE TERMS OF THIS AGREEMENT MAY BE CHANGED BY OWNER BY WRITTEN NOTICE TO OCCUPANT SEVEN (7) DAYS PRIOR TO THE EXPIRATION OF ANY MONTH OF THIS TENANCY.

**12. CONDUCT:** Should occupant appoint another person(s) or organization(s) to enter the storage space, occupant shall be responsible for the conduct of such person(s) or organization(s). Owner shall assume that possession of a key and gate code is evidence of authority to enter occupant's space. All information provided by occupant on this lease is confidential and will not knowingly be disclosed to anyone without occupant's prior consent, except for law enforcement purposes.

**13. CONDITION OF SPACE / REPAIRS -- COMMENCEMENT AND TERMINATION:** Occupant acknowledges that Occupant has inspected the Space and found the Space to be in good repair and in clean and sanitary condition. Occupant agrees to maintain the Space in the same condition throughout the term of this Lease. Occupant will immediately notify Owner of any defect in the Space. Occupant shall not build on nor attach anything to the inside or outside walls, ceiling, or floors of the Space. Upon termination of this Lease, Occupant shall remove all Occupant's property from the Space and shall immediately deliver possession of the Space to Owner in the same condition as delivered to Owner on the commencement date of this Lease, reasonable wear and tear excepted. Occupant agrees to leave said storage Space broom clean and damage free. Occupant further agrees to remove all items from the space and agrees to reimburse Owner for any/all costs of emptying or repairing Space, which includes but is not limited to dump fees, labor, materials, and transportation. Occupant agrees to reimburse Owner within 5 days of receipt of an itemized statement of all labor and other expenses incurred to dispose of said items. The costs of any repairs made necessary by Occupant, or Occupant's guests or agents, or any wear and tear in excess of normal use during the term of the Lease shall be paid by Occupant. Owner may require Occupant to pay the estimated costs of any repairs to be made at Occupant's expense prior to the work being done, and Occupant shall pay such expense whether estimated or actual within ten (10) days of being billed, and such costs shall be additional rent for the purposes of Owner's remedies on default.

**14. ACCESS:** In the Owner's absolute discretion, Occupant's access to the Storage Facility and Space may be conditioned in any manner deemed reasonably necessary by Owner to maintain order and protect security on the Storage Facility. Such measures may include, but are not limited to, limiting hours of operation, and requiring verification of Occupant's identity.

**15. OWNER'S RIGHT TO ENTER OR INSPECT:** Occupant grants Owner, Owner's agents or representatives on any governmental authority, including, but not limited to, police, fire, health or emergency response officials, access to the premises upon three (3) days prior written notice to Occupant.

In the event of an emergency, Owner, Owner's agents or representatives on any governmental authority, including, but not limited to police, fire, health, or emergency response officials, shall have the right to remove Occupant's lock and enter the premises, without notice to Occupant, and take such action as may be necessary or appropriate to preserve the premises, to comply with applicable law, or enforce any of Owner's rights.

In the event Occupant's lock is destroyed in the course of such inspection, Owner shall provide and Occupant agrees to accept as Occupant's sole remedy therefore, a replacement lock of similar kind and quality. Owner shall not be responsible for any loss occasioned by Occupant as a result of entry authorized under this Section.

**16. RULES:** Owner shall have the right to establish or change hours of operation or tenant access, or to promulgate rules and amendments, or amend existing rules and regulations for the safety, care, and cleanliness of the premises, or the preservation of good order on the facility. Occupant agrees that such rules are made a part of this agreement and agrees to follow all of Owner's Rules now in effect, or that may be put into effect from time to time. Except in emergency situations, all changes of Rules and/or facility hours will be conspicuously posted at least seven (7) days prior to the effective date of such change. Hours of Operation and Access shall be posted at the entrance to the Storage Facility. Current Rules will be posted in the Rental Office.

**17. TERMINATION:** The tenancy of Occupant may be terminated by Owner or Occupant by the giving of seven (7) days' written notice to the other party. Rent is payable by Occupant to Owner for the entire thirty (30) day period prior to termination, whether or not Occupant vacates the Space prior to the end of the period. Resident agrees to vacate the Space on or before 5:00 P.M. on the last day of the term. In addition, upon nonpayment of the rent for fourteen (14) consecutive days, Owner may terminate this Lease upon fourteen (14) days' written notice pursuant to a Preliminary Lien Notice, as set forth in California Business and Professions Code Section 21703.

**18. OCCUPANT'S BREACH:** In the event the Occupant breaches this Lease, Owner shall be allowed, at Owner's discretion, but not by way of limitation, to exercise any or all remedies provided herein or at law or in equity. If it shall become necessary for Owner to institute legal action for the purpose of enforcing its rights of lien foreclosure in a civil court of proper jurisdiction, and the Owner prevails in such action, Occupant agrees to pay Owner an additional sum of Two Hundred Fifty Dollars ($250.00) as liquidated damages.

**19. ASSIGNMENT:** Occupant shall not sublet or assign the Space nor store property owned by others without the prior written consent of Owner.

**20. SECURITY OF SPACE / LOCKS:** Occupant agrees to be solely responsible for providing such locks as Occupant desires for securing access to the Space. In the event such locks or security devices are rendered ineffectual for their intended purpose from any cause, or the Space is rendered insecure in any manner, Owner may, at its sole option, take whatever measures are deemed reasonably necessary by Owner to resecure the access to Occupant's Space. Owner is not responsible for taking any measures whatsoever, nor for notifying Occupant that access to the Space has become insecure. The fact that Owner has taken measures to resecure the access to Occupant's Space under this paragraph shall not alter the release of Owner's liability set forth in Paragraph 9 of this Lease, nor shall such measures be deemed conversion of Occupant's stored property.

**21. WAIVER OF JURY TRIAL:** Owner and Occupant waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross complaint, in any action brought by either Owner against Occupant, or Occupant against Owner on any matter arising out of, or in any way connected with, this rental agreement, Occupant's use of the storage space or premises, or any claim of bodily injury or property loss or damage, or the enforcement of any remedy under any law, statute or regulation.

**22. MISCELLANEOUS:** Time is the essence of this Lease and of each provision of this Lease. Words used in the singular shall include the plural where the context requires. All rights, powers, options, and remedies given or granted to Owner by this Lease, or by law, are cumulative, and no one of them is exclusive of another. If any provision of this Lease is held by a Court to be void or unenforceable, the other provisions shall remain in full force and effect.

TO OCCUPANT AT ANY OF THE ADDRESSES GIVEN HEREIN OR ANY NEW ADDRESS(ES) THE OCCUPANT HAS GIVEN OWNER NOTIFICATION OF THE
GIVEN ABOVE CHANGE. SUCH CHANGE SHALL NOT BE BINDING UPON OWNER UNLESS OCCUPANT HAS GIVEN OWNER NOTIFICATION OF
THE CHANGE, EITHER BY PERSONAL DELIVERY OR BY DEPOSIT IN THE UNITED STATES MAIL WITH FIRST CLASS POSTAGE PREPAID ADDRESSED TO
OWNER AT THE ADDRESS GIVEN FOR PAYMENT OF RENT AND THE OWNER HAS ACKNOWLEDGED ITS RECEIPT IN WRITING. ANY OF THE TERMS OF
THIS AGREEMENT MAY BE CHANGED BY OWNER BY WRITTEN NOTICE TO OCCUPANT SEVEN (7) DAYS PRIOR TO THE EXPIRATION OF ANY MONTH OF
THIS TENANCY

**12. CONDUCT:** Should occupant appoint another person(s) or organization(s) to enter the storage space, occupant shall be responsible for the conduct of such person(s)
or organization(s). Owner shall assume that possession of a key and gate code is evidence of authority to enter occupant's space. All information provided by occupant on
this lease is confidential and will not knowingly be disclosed to anyone without occupant's prior consent, except for law enforcement purposes.

**13. CONDITION OF SPACE / REPAIRS -- COMMENCEMENT AND TERMINATION:** Occupant acknowledges that Occupant has inspected the Space and found the Space
to be in good repair and in clean and sanitary condition. Occupant agrees to maintain the Space in the same condition throughout the term of this Lease. Occupant will
immediately notify Owner of any defect in the Space. Occupant shall not build on nor attach anything to the inside or outside walls, ceiling, or floors of the Space. Upon
termination of this Lease, Occupant shall remove all Occupant's property from the Space and shall immediately deliver possession of the Space to Owner in the same condition
as delivered to Owner on the commencement date of this Lease, reasonable wear and tear excepted. Occupant agrees to leave said storage Space broom clean and damage
free. Occupant further agrees to remove all items from the space and agrees to reimburse Owner for any/all costs of emptying or repairing Space, which includes but is not
limited to dump fees, labor, materials, and transportation. Occupant agrees to reimburse Owner within 5 days of receipt of an itemized statement of all labor and other expenses
incurred to dispose of said items. The costs of any repairs made necessary by Occupant, or Occupant's guests or agents, or any wear and tear in excess of normal use during
the term of the Lease shall be paid by Occupant. Owner may require Occupant to pay the estimated costs of any repairs to be made at Occupant's expense prior to the work
being done, and Occupant shall pay such expense whether estimated or actual within ten (10) days of being billed, and such costs shall be additional rent for the purposes
of Owner's remedies on default.

**14. ACCESS:** In the Owner's absolute discretion, Occupant's access to the Storage Facility and Space may be conditioned in any manner deemed reasonably necessary
by Owner to maintain order and protect security on the Storage Facility. Such measures may include, but are not limited to, limiting hours of operation, and requiring verification
of Occupant's identity.

**15. OWNER'S RIGHT TO ENTER OR INSPECT:** Occupant grants Owner, Owner's agents or representatives on any governmental authority, including, but not limited to,
police, fire, health or emergency response officials, access to the premises upon three (3) days prior written notice to Occupant.

In the event of an emergency, Owner, Owner's agents or representatives on any governmental authority, including, but not limited to police, fire, health, or emergency
response officials, shall have the right to remove Occupant's lock and enter the premises, without notice to Occupant, and take such action as may be necessary or appropriate
to preserve the premises, to comply with applicable law, or enforce any of Owner's rights.

In the event Occupant's lock is destroyed in the course of such inspection, Owner shall provide and Occupant agrees to accept as Occupant's sole remedy therefore,
a replacement lock of similar kind and quality. Owner shall not be responsible for any loss occasioned by Occupant as a result of entry authorized under this Section.

**16. RULES:** Owner shall have the right to establish or change hours of operation or tenant access, or to promulgate rules and amendments, or amend existing rules and
regulations for the safety, care, and cleanliness of the premises, or the preservation of good order on the facility. Occupant agrees that such rules are made a part of this
agreement and agrees to follow all of Owner's Rules now in effect, or that may be put into effect from time to time. Except in emergency situations, all changes of Rules
and/or facility hours will be conspicuously posted at least seven (7) days prior to the effective date of such change. Hours of Operation and Access shall be posted at the entrance
to the Storage Facility. Current Rules will be posted in the Rental Office.

**17. TERMINATION:** The tenancy of Occupant may be terminated by Owner or Occupant by the giving of seven (7) days' written notice to the other party. Rent is payable
by Occupant to Owner for the entire thirty (30) day period prior to termination, whether or not Occupant vacates the Space prior to the end of the period. Resident agrees
to vacate the Space on or before 5:00 P.M. on the last day of the term. In addition, upon nonpayment of the rent for fourteen (14) consecutive days, Owner may terminate
this Lease upon fourteen (14) days' written notice pursuant to a Preliminary Lien Notice, as set forth in California Business and Professions Code Section 21703.

**18. OCCUPANT'S BREACH:** In the event the Occupant breaches this Lease, Owner shall be allowed, at Owner's discretion, but not by way of limitation, to exercise any
or all remedies provided herein or at law or in equity. If it shall become necessary for Owner to institute legal action for the purpose of enforcing its rights of lien foreclosure
in a civil court of proper jurisdiction, and the Owner prevails in such action, Occupant agrees to pay Owner an additional sum of Two Hundred Fifty Dollars ($250.00) as liquidated
damages.

**19. ASSIGNMENT:** Occupant shall not sublet or assign the Space nor store property owned by others without the prior written consent of Owner.

**20. SECURITY OF SPACE / LOCKS:** Occupant agrees to be solely responsible for providing such locks as Occupant desires for securing access to the Space. In the event
such locks or security devices are rendered ineffectual for their intended purpose from any cause, or the Space is rendered insecure in any manner, Owner may, at its sole
option, take whatever measures are deemed reasonably necessary by Owner to resecure the access to Occupant's Space. Owner is not responsible for taking any measures
whatsoever, nor for notifying Occupant that access to the Space has become insecure. The fact that Owner has taken measures to resecure the access to Occupant's Space
under this paragraph shall not alter the Owner's liability set forth in Paragraph 9 of this Lease, nor shall such measures be deemed conversion of Occupant's stored
property.

**21. WAIVER OF JURY TRIAL:** Owner and Occupant waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross complaint, in any action
brought by either Owner against Occupant, or Occupant against Owner on any matter arising out of, or in any way connected with, this rental agreement, Occupant's use
of the storage space or premises, or any claim of bodily injury or property loss or damage, or the enforcement of any remedy under any law, statute or regulation.

**22. MISCELLANEOUS:** Time is of the essence of this Lease and of each provision of this Lease. Words used in the singular shall include the plural where the context requires.
All rights, powers, options, and remedies given or granted to Owner by this Lease, or by law, are cumulative, and no one of them is exclusive of another. If any provision of
this Lease is held by a Court to be void or unenforceable, the other provisions shall remain in full force and effect.

**23. NO ORAL AGREEMENTS:** This rental agreement contains the entire agreement between Owner and Occupant, and no oral agreements shall be of any effect whatsoever.
Occupant agrees that he/she is not relying, and will not rely, upon any oral representation made by Owner, or by any of owner's agents or employees purporting to modify
or add to this agreement in any way whatsoever. Occupant agrees that this agreement may be modified only in writing, signed by both parties, in order for such modification
to have any effect whatsoever.

Owner's employees have been forbidden from providing any service on behalf of Owner. Should employees of Owner provide service at Occupant's request such employee
shall be deemed to be the agent of Occupant regardless of whether payment for such service is made or not, and Occupant agrees to hold Owner harmless from all liability
in connection with or arising from directly or indirectly, such services performed by employee of Owner.

**24. ENTIRE AGREEMENT:** There are no other terms, conditions, or agreements, expressed or implied, written or oral, between Occupant and Owner, their agents, or
employees that extend, limit, or in anyway modify the terms, covenants, and conditions of this Lease. This Lease may be amended, modified, or supplemented only by a writing
signed by both parties. Any purported oral amendment, modification, or supplement is void.

I have read, understand, and agree to all terms contained in this Lease, including the terms on the reverse side hereof. By his, her, their signature(s) below. Occupant
acknowledges receipt of a dated and executed copy of this Lease.

"Owner" Premier-Parkshore Self Storage _Leuise Hook_

"Occupant(s) AMERICAN PROPERS CONDUIT
Janet Montgomery (916) 850-6126

Folsom Parkshore Self Storage
2010
185 Parkshore Drive
Folsom, CA  95630
353-1118

Thursday, January 7,

# Invoice - #1539-172010   (PreAssessment)

| Account : | **1539   AMERICAN HOME MORTGAGE** |
|-----------|-----------------------------------|
| Contact:  | **AMERICAN HOME MORTGAGE** |
|           | **1180 IRON POINT RD. STE. #200**   Home: **(916) 850-6100** |
|           | **Folsom, CA 95630**   Work: **(916) 850-6126** |

| Description | From | To | Amount | Tax | Total Due |
|-------------|------|------|--------|-----|-----------|
| 114 (10x10CC) Assessment | 08/01/2007 | 09/01/2007 | 115.00 | 0.00 | 115.00 |
| 114 Late Fee | 08/11/2007 | | 10.00 | 0.00 | 10.00 |
| 114 Late Fee | 08/25/2007 | | 15.00 | 0.00 | 15.00 |
| 114 (10x10CC) Assessment | 09/01/2007 | 10/01/2007 | 115.00 | 0.00 | 115.00 |
| 114 Late Fee | 09/08/2007 | | 15.00 | 0.00 | 15.00 |
| 114 - 3rd Letter Fee | 09/09/2007 | | 15.00 | 0.00 | 15.00 |
| 114 (10x10CC) Assessment | 10/01/2007 | 11/01/2007 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 11/01/2007 | 12/01/2007 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 12/01/2007 | 01/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 01/01/2008 | 02/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 02/01/2008 | 03/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 03/01/2008 | 04/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 04/01/2008 | 05/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 05/01/2008 | 06/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 06/01/2008 | 07/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 07/01/2008 | 08/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 08/01/2008 | 09/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 09/01/2008 | 10/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 10/01/2008 | 11/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 11/01/2008 | 12/01/2008 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 12/01/2008 | 01/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 01/01/2009 | 02/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 02/01/2009 | 03/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 03/01/2009 | 04/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 04/01/2009 | 05/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 05/01/2009 | 06/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 06/01/2009 | 07/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 07/01/2009 | 08/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 08/01/2009 | 09/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 09/01/2009 | 10/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 10/01/2009 | 11/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 11/01/2009 | 12/01/2009 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 12/01/2009 | 01/01/2010 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 01/01/2010 | 02/01/2010 | 115.00 | 0.00 | 115.00 |
| 114 (10x10CC) Assessment | 02/01/2010 | 03/01/2010 | 115.00 | 0.00 | 115.00 |

TOTAL:  3620.00