IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :    Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC., :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                  :
                                                                 :    Jointly Administered
        Debtors.                                                 :
                                                                 :    **Ref. Docket No. 8527**
                                                                 :    **Hrg. Date: February 18, 2010 at 11:00 a.m.**
---------------------------------------------------------------- x    **(ET)**

### JOINT OBJECTION OF THE DEBTORS AND THE COMMITTEE TO THE MOTION FOR SUPERSEDEAS BOND TO PROTECT JUDGMENT FOR MONA DOBBEN

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"),[1] and the Official Committee of Unsecured Creditors (the "UCC," and with the Debtors, the "Objecting Parties"), hereby object (the "Objection") to the Motion For Supersedeas Bond to Protect Judgment for Mona Dobben (the "Movant") (the "Motion"). In support of such Objection, the Objecting Parties respectfully represent as follows:

### PRELIMINARY STATEMENT

1.      The Objecting Parties submit that the relief requested in the Motion is inappropriate on the applicable law and facts of this case and must be denied. The Motion, rather than setting forth a cogent legal argument for the relief requested, is merely an

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

unwarranted attack on the Debtors, their claimed intentions, and their business judgment as to what is in the best interests of the bankruptcy estates.  While the Objecting Parties appreciate the Movant's emotional stake in this case, they refuse to allow the baseless and untrue factual allegations and specious legal arguments made by the Movant and her counsel and advisors to go unchecked.

2.      In fact, the Objecting Parties submit that if the Movant had engaged in any of the numerous attempts by both the Debtors and the UCC to resolve the underlying matter – including an offer for an administrative claim nearly in the amount awarded by the Court that was rejected inexplicably without counter or any discussion – the matter could have, and likely would have, been resolved amicably.  While the Objecting Parties understand that Movant may not agree with the decision to appeal, the appeal is necessary and appropriate under the facts and circumstances of both the contested matter on appeal and in the overall context of these chapter 11 cases.  Throughout this entire process, despite the Objecting Parties views on the legal sufficiency of the claims, the Debtors and the UCC have repeatedly attempted to engage Movant (through her counsel) in discussions aimed at consensually resolving Movant's claims.  These attempts started with the Settlement Letter (defined below) sent to the Movant in compliance with the Plan and Confirmation Order and continued with attempts both before and after the evidentiary hearing was conducted by this Court.  Every attempt was met with virtual silence, except for a blunt rejection.  Each time that the Debtors and the UCC invited discussions, there has been no substantive response from Movant.  Each time the Debtors and the UCC made a settlement offer, the offer was rejected without counter.  Productive discussions require the engagement of both parties.

## BACKGROUND FACTS

3.        On August 6, 2007 (the "<u>Petition Date</u>"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "<u>Bankruptcy Code</u>").  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Amended Chapter 11 Plan Of Liquidation Of The Debtors Dated As Of February 18, 2009 [Docket No. 7042] (the "<u>Plan</u>") was confirmed by the Confirmation Order.  The Plan has not yet gone effective.

4.        The Movant asserted in her Proofs of Claim that she was entitled to secured and unsecured priority claims totaling  $1,355,169 for damages related to an alleged illegal loan and illegal foreclosure.

5.        The Movant and her daughter, Ms. Alex Yamamura ("<u>Ms. Yamamura</u>" and together with the Movant, the "<u>Plaintiffs</u>") initially filed a 600 page complaint (the "<u>Original Complaint</u>"), against AHM on June 23, 2008 in the United States District Court for the Central District of California.

6.        On September 3, 2009, in accordance with the procedures and requirements of the Plan and with the hopes of avoiding litigation, the Debtors sent the detailed response and settlement offer in a letter (the "<u>Settlement Letter</u>"), attached hereto as "<u>Exhibit A</u>", to the Movant's then-counsel, Jeff Barnes, Esquire.  The Settlement Letter provided the factual and legal analysis for each and every cause of action asserted against the Debtors in the Original Complaint and, in Debtors' view, offered a reasonable settlement in light of these facts and circumstances and the hardships of the Movant.

7.      The Debtors did not receive any response with respect to the Settlement Letter and subsequently filed the Omnibus Objection.  On or about October 5, 2009, the Movant filed her response to the Omnibus Objection [Docket No. 8141] (the "Movant's Response").  Thereafter, Debtors filed a Reply in Support of the Objection on October 7, 2009 [Docket No. 8149].

8.      The Objection was scheduled for a hearing on October 14, 2009.  At the hearing, the Court determined, specifically at the request of Movant's advisor, that a one-day evidentiary hearing would be conducted and it was then scheduled for December 9, 2009.

9.      On or about October 28, 2009, the Plaintiffs, through their new counsel Douglas J. Pettibone, filed a 100+ page amended complaint in the United States District Court of California (the "Amended Complaint").  The Amended Complaint was deemed to be the factual/legal basis of the previously-filed Proofs of Claim.

10.      Between October 28, 2009 and December 9, 2009, the UCC, in consultation with the Debtors, tried on numerous occasions to resolve the disputed matter with Movant's attorney, but the Movant refused to respond.

11.      On December 9, 2009 the Evidentiary Hearing was held and the Court verbally awarded an administrative claim to the Movant in the amount of $100,000 (the "Administrative Claim").  The Court signed the form of order agreed upon by the Movant's counsel and advisors on December 17, 2009 (the "Administrative Claim Order").

12.      The Debtors appealed the Administrative Claim Order on December 24, 2009 (the "Appeal"),by filing a Notice of Appeal [Docket No. 8436].  The Debtors then filed their Designation Pursuant to Fed. R. Bankr. P. 8006 of Items to be Included in the Record on Appeal and Statement of Issues on Appeal with Respect to Debtors' Appeal of Administrative

Claim Order Regarding Claims of Mona Dobben (D.I. 8424) [Docket No. 8510] (the "Statement of Issues").  Movant did not cross-appeal.

13.     Counsel for the UCC contacted counsel for the Movant and discussed the desire to resolve the disputed matter with Movant's attorney in late December and again on January 8, 2010.  These discussions appeared to be fruitful and on January 13, 2010, counsel for the UCC conveyed a concrete and substantial offer to Movant's counsel (the "First Appeal Settlement Offer").  The First Appeal Settlement Offer was flatly rejected by the Movant on January 14 without any counteroffer or discussion.  On January 23, 2010, counsel for the UCC transmitted an additional, increased proposal aimed at resolving the matter to Movant's counsel (the "Second Appeal Settlement Offer"), which was similarly rejected without counteroffer or discussion.  The Movant filed the present Motion on January 29, 2010.

## ARGUMENT

**I.     The Motion makes numerous baseless and inflammatory accusations against the Debtors and their representatives.**

14.     The Motion accuses AHM and its representatives of intentionally abusing the Movant in an attempt to inflict misery upon her.  This claim, along with the claim that AHM and its representatives are willfully (and unnecessarily) running up expenses, is as serious as it is without a basis in reality.  These claims appear to be based on nothing more than the Debtors' exercise of their legal right to protect and manage the assets of the bankruptcy estate, including the proper commencement of a legally and economically supportable appeal.  While the Movant may disagree, the Debtors are exercising prudent business judgment and any claims to the contrary are patently untrue.

15.     The Motion makes the equally false and baseless accusation that the Debtors have violated this Court's Findings of Fact, Conclusions of Law and Order Confirming

the Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009 [Docket No. 7042] (the "Confirmation Order") entered on February 23, 2009.  The Movant states that Debtors did not make a reasonable offer prior to filing an objection to the Movant's claims.  *Motion*, ¶ 7.  This is patently false.  The Movant filed proofs of claim numbered 10607, 10608, and 10609 (the "Proofs of Claim") which totaled $1,355,169 and were not accompanied by any supporting documentation whatsoever.  Despite the lack of documentation provided, counsel for the Debtors read and considered the Movant's entire **600** page Original Complaint and prepared a detailed response to each and every one of its claims.  This Settlement Letter was sent to Movant's then attorney, Jeffrey Barnes, Esquire, setting forth the analysis of the Original Complaint and contained an offer for settlement that was reasonable in light of that analysis.  The Movant never even responded to the Settlement Letter, so the Debtors were forced to file Debtors' Forty-Second Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 dated September 11, 2009 [Docket No. 8049] (the "Omnibus Objection").

16.    The Motion then goes on to state that "[w]hen Dobben refused to give in, and concede her position without a fair hearing, the Debtor resorted to forcing Dobben to appear in Delaware." *Motion*, ¶ 8.  The Movant apparently never considered settling for anything less than her full Proof of Claim, but viewed the Debtors' decision not to give the Movant everything she wanted a form of "force."  The Debtors made every reasonable effort to attempt to resolve this matter prior to objecting, in accord with the Confirmation Order, as well as after the objection was filed, and it was Movant's failure or refusal to even engage in the process that rendered such efforts completely futile.

17.     The Movant also claims that the Debtors violated the Confirmation Order because they "forced 70 year old Mona Dobben to expend more resources in legal fees and fly half way across the Country for the evidentiary hearing in direct contradiction to what American Home is bound to by the confirmed plan." *Motion*, ¶ 7. The Debtors did not force the Movant to do anything. The Confirmation Order requires that the "notice of [claims] objection shall (i) apprise the borrower-claimant of his or her right to appear telephonically at the hearing on such objection and (ii) to be accompanied by a copy of the Bankruptcy Court's procedures regarding telephonic appearances." The Debtors' notice of the Omnibus Objection, attached hereto as "<u>Exhibit B</u>", contained the required information and was accompanied by the required procedures, attached hereto as "<u>Exhibit C</u>". In addition, the Omnibus Objection and certification of counsel attached thereto also confirm full Plan and Confirmation Order compliance. The decision to litigate and fly to Delaware was the Movant's and the Movant's alone. At no time did the Debtors require the appearance of the Movant. It was Movant's advisor that pushed for an evidentiary hearing before the Court in the first instance. The Debtors actually flew to Arizona and conducted a deposition of the Movant for purposes of the evidentiary hearing. It was the Movant that determined to come to Delaware. This subject was never even discussed between Debtors and Movant and no request was ever made to the Court for Movant to appear by phone, video or otherwise.

18.     The Motion claims that the Movant, due to the Appeal, has "no choice but to go forward" and continue to running up legal costs. *Motion*, ¶ 5. This statement is false, particularly in light of the fact that the Objecting Parties have made two substantial offers to resolve the Appeal, in addition to the good faith offer that they made prior to the Omnibus

Objection and the numerous attempts to engage the Movant in settlement discussions prior to the Evidentiary Hearing.

19.    Immediately following the filing of the Appeal, counsel for the UCC approached the Movant's counsel in an attempt at resolving the Appeal.  No numbers were set forth in this first post-hearing settlement discussion, but it was made clear that vacating the ruling itself would be a requirement in any settlement.  The Debtors' and the UCC believe that the potential precedential value of the Administrative Claim Order is limited to the unique specific facts and circumstances of the Dobben contested matter, but wanted to preclude any attempt by any other party to argue otherwise.  However, the Debtors and the UCC never asked, as the Motion states, that this Court "strike the record."  *Motion*, ¶10.  At no time were any settlement offers contingent on having the record stricken or sealed.

20.    Following Movant's counsel's indication that Movant may be willing to resolve the Appeal, a firm, substantial settlement offer of an allowed administrative claim and prompt payment was communicated to Movant's counsel.  This offer was flatly refused without counteroffer or further discussion.  Nevertheless the Debtors and the UCC "bid against" themselves and made an even more substantial offer, but it was also rejected by Movant without counteroffer or further discussion – even though this settlement offer was approaching the full amount of the Administrative Claim awarded by this Court.  The Debtors and the UCC have been, and continue to be, open to a mutually beneficial, non-litigious resolution to this process and it is the choice of the Movant to force the pursuit of the Appeal.  Any claim that the Movant has "no choice but to go forward" is solely caused by Movant's complete and utter refusal to engage in any meaningful discussions.  The Debtors and the UCC cannot compel Movant to resolve the matter.  Accordingly, the Debtors will prosecute the Appeal.

**II.    A supersedeas bond requires a request for a stay on appeal which has not occurred.**

21.    The Movant's request for supersedeas bond should be denied as there has been no stay requested by the Debtors in this case.

22.    From the title of the Motion, the Movant's citation to both Federal Rule of Civil Procedure 62 and Federal Rule of Appellate Procedure 8, and the breakdown of the number included in the bond request, it appears that the Movant is confusing (or merging together) a supersedeas bond and an Appeal Bond.  Federal Rule of Civil Procedure 62(d), which applies to bankruptcy proceedings through Bankruptcy Rule 7062, addresses supersedeas bonds.  Federal Rule of Appellate Procedure 8(b), however, deals with Appeal Bonds under Federal Rule of Appellate Procedure 7 and the surety of that Appeal Bond.

23.    As noted by the Court of Appeals for the Second Circuit, "cost bonds and supersedeas bond 'should not be confused.'"  *Adsani v. Miller*, 139 F.3d 67, 70 n.2 (2d Cir. 1998) (quoting Wright, Miller and Cooper, 16A Federal Practice & Procedure: Jurisdiction 2d § 3953 at 278 (1996)).  As the *Adsani* court explained, a supersedeas bond is retrospective and is meant to cover sums related to the merits of the underlying judgment and a stay of its execution, whereas an Appeal Bond is prospective and relates to potential costs of litigating the appeal.  *Id.* (citation omitted).  A supersedeas bond, even if applicable here, would cover only the retrospective amount of the Administrative Claim, not the future costs of the Appeal.  As discussed immediately below, however, the Movant is not entitled to a supersedeas bond.

24.    A supersedeas bond may be granted by this Court under Bankruptcy Rule 7062.  Federal Rule of  Bankruptcy Procedure 7062 makes Federal Rule of Civil Procedure 62 applicable in bankruptcy cases.  Federal Rule of Civil Procedure 62 is entitled "Stay of Proceedings to Enforce a Judgment," and states, in relevant part under 62(d), that "the *appellant*

may obtain a stay by supersedeas bond. . . .  The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal.  The stay takes effect when the court approves the bond." *Fed. R. Civ. P.* 62 (emphasis added).

25.     The Movant attempts to use Federal Rule of Civil Procedure 62 to obtain a supersedeas bond in this matter, but this type of bond is not available to the Movant under a plain reading of Federal Rule of Civil Procedure 62.  The plain language of this rule is that a co-requisite to granting a supersedeas bond is a motion for a stay of judgment filed by the *appellant*. The posting of a supersedeas bond is a potential condition of the stay of execution, not the right to appeal.  *See In re Farrell Lines*, *Inc.*, 761 F.2d 796, 797-98 (D.C. Cir. 1985) (the failure to furnish supersedeas bond does not forfeit appellant's right to appeal); *United States ex re; Terry Inv. Co. v. United Funding & Investors, Inc.*, 800 F. Supp. 879, 881 (E.D. Cal. 1992) (holding that the court has no power to impose supersedeas bond absent a stay).  The Debtor has not requested a stay of the Administrative Claim Order, a co-requisite to the requirement of a supersedeas bond.  Furthermore, there is nothing in the language of Federal Rule of Civil Procedure 62 that indicates that an *appellee*, such as the Movant, can move for a supersedeas bond.  *See Terry Inv. Co.*, 800 F. Supp at 881 ("Rule 62(d) nowhere. . . provides that the district court may, of its own accord or on motion of the appellee, order appellant to post a supersedeas bond.").  To the extent that the Movant is requesting a supersedeas bond covering the amount of the Administrative Claim, such a request should be denied.

## III.     An Appeal Bond should not be granted to the Movant.

26.     To the extent that Movant is requesting an Appeal Bond for prospective costs, rather than a supersedeas bond, associated with the Appeal, this request must also fail.

27.     Federal Rule of Appellate Procedure 7 states that "[i]n a civil case, the district court may require an appellant to file a bond. . . to ensure payment of costs on appeal."

*Fed. R. App. P. 7.*  Unlike Federal Rule of Civil Procedure 62(d), Federal Rule of Appellate

Procedure 7 is not made applicable to appeals from a bankruptcy court to a district court by the

Bankruptcy Rules and, thus, an Appeal Bond would not be required prior to the Appeal.  *See In*

*re T.R. Acquisition Corp.*, 1997 U.S. Dist. LEXIS 12831, *4 (S.D.N.Y. 1997) ("The Bankruptcy

Rules apply in an appeal from a bankruptcy court to a district court." "Under the Federal Rules

of Appellate Procedure, a district court may require an appellant to file a bond to ensure

payments of costs on appeal to a Court of Appeals.  *Fed. R. App. P. 7.*  Federal Rule of Appellate

Procedure 7, however, is inapplicable here because this is an appeal from Bankruptcy Court to

the district court.").  Since the Appeal is from the Bankruptcy Court to district court, rather than

from the district court to the Third Circuit, the Motion should be denied as a matter of law.

   28. Even if an Appeal Bond under Federal Rule of Appellate Procedure 7

would be permitted, the Motion must be denied because the Bankruptcy Court is not the

appropriate court to hear the request.  Federal Rule of Appellate Procedure  7 plainly states that

"the district court may require an appellant to file a bond. . . to ensure payment of costs on

appeal."  *Fed. R. App. P. 7.*  Nowhere in Federal Rule of Appellate Procedure 7, does it state that

the Bankruptcy Court has jurisdiction to hear and otherwise require an appellant to file an

Appeal Bond.  As such, the Movant's request for an Appeal Bond must be directed, if at all, to

the District Court and not the Bankruptcy Court.

   29. Finally, an Appeal Bond may not include attorneys' fees.  *See, e.g.*,

*Hirschensohn v. Lawyers Title Ins. Corp.*, 1997 U.S. App. LEXIS 13793, *3 (3d. Cir. 1997);

*McDonald v. McCarthy*, 966 F.2d 112, 116 (3d Cir. 1992); *T.R. Acquisition* at n.1.  The costs

referred to in Federal Rule of Appellate Procedure 7 are "those that may be taxed against an

unsuccessful litigant under *Federal Rule of Appellate Procedure 39*."  *Hirschensohn* at *3

(emphasis in original).  "Attorneys' fees are not among the expenses that are described as costs

for purposes of Rule 39," and will not be included as costs in an Appeal Bond.  *Id at* *3-*4.

Furthermore, attorneys' fees are not enumerated in the list of costs in Bankruptcy Rule 8014,

which also provides that "costs shall be taxed against the losing party on an appeal."  *Fed. R.*

*Bankr. P. 8014*.  As such, attorney's fee cannot be part of any Appeal Bond in an appeal from the

bankruptcy court to the district court.  *See T.R. Acquisition* at *4.  As such, the Movant's request

for an Appeal Bond, to the extent that Movant is requesting such a bond, should be denied to the

extent that the bond provides for "anticipated" attorneys fees enumerated as costs in connection

with an appeal.

**IV.    The Debtors have standing to appeal.**

30.    The Objecting Parties must also respond to Movant's unsubstantiated legal

conclusion that the Debtors do not have standing to initiate or prosecute the Appeal.  Bankruptcy

Rule 6009 provides that "with or without court approval, the. . . debtor in possession may

prosecute or may enter an appearance and defend any pending action or proceeding by or against

the debtor, or commence and prosecute any action or proceeding in behalf of the estate before

any tribunal."   The Debtors are debtors in possession under sections 1107(a) and 1108 of the

Bankruptcy Code.

31.    The Movants cite *In re Spenlinhauer*, 261 F.3d 113, 117 (1st Cir. 2001),

for the proposition that Debtors do not have standing to file the Appeal.  This case has no

application whatsoever to the facts before this Court.  In that case, the court held that a chapter 7

debtor did not have standing to appeal a bankruptcy court decision because he was not a "person

aggrieved."  *Id* at 117.  This was, however, a chapter 7 case where a trustee had been appointed,

thus divesting the debtor of all his right, title and interest in nonexempt property of the estate.  *Id*

at 118.  Section 1107 of the Bankruptcy Code gives the Debtors the power of a trustee to run the

estate, and this includes the power to act on behalf of the bankruptcy estate.  Furthermore, the

right to appeal is part of the debtor's estate in bankruptcy.  *Martin v. Monumental Life Ins. Co.*,

240 F.3d 223, 232 (3d Cir. 2001).  The Debtors, as debtors in possession, control the affairs of

the estate and safeguard the use of its property.  The Debtors have standing to file the Appeal.

## <u>RESERVATION OF RIGHTS</u>

      32.     The Objecting Parties reserve the right to amend, modify, or supplement

this Objection, and reserve their rights to assert against the Movant and its counsel and advisors

any and all claims for legal or equitable relief (including, without limitation, claims for money

damages) arising from or in any way connected with the Motion.

      WHEREFORE, the Debtors and the Official Committee of Unsecured Creditors

respectfully request that the Court enter an order denying the Motion.

| | |
|---|---|
| Dated:    Wilmington, Delaware<br>        February 11, 2010<br><br>YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP<br><br>/s/ Sean M. Beach<br>Sean M. Beach (No. 4070)<br>Curtis J. Crowther (No. 3238)<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>Counsel for Debtors and Debtors in<br>Possession | BLANK ROME LLP<br><br>/s/ David W. Carickhoff<br>Bonnie Glantz Fatell (No. 3809)<br>David W. Carickhoff (No. 3715)<br>Victoria A. Guilfoyle (No. 5183)<br>1201 Market Street, Suite 800<br>Wilmington, DE  19801<br>Telephone:(302) 425-6400<br>Facsimile:(302) 425-6464<br><br>-and-<br><br>HAHN & HESSEN LLP<br>Mark S. Indelicato, Esq.<br>Edward L. Schnitzer, Esq.<br>488 Madison Avenue<br>New York, NY  10022<br>Telephone: (212) 478-7200<br>Facsimile: (212) 478-7400<br><br>Co-Counsel for the Official Committee of<br>Unsecured Creditors |