**EXHIBIT A**

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

MARGARET WHITEMAN GREECHER
DIRECT DIAL: 302-571-6753
DIRECT FAX:   302-576-3416
mgreecher@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

September 3, 2009

**FOR SETTLEMENT PURPOSES ONLY
LETTER IS SUBJECT TO RULE 408
OF THE FEDERAL RULES OF EVIDENCE**

**BY E-MAIL AND OVERNIGHT DELIVERY**

Jeff Barnes, Esq.
W.J. Barnes, P. A. and
International Mediation Associates, Inc.
Boca Raton, Florida office:
1515 North Federal Highway, Suite 300
Boca Raton, Florida 33432
E-mail: wjbarnes@cox.net

      Re:    American Home Mortgage, Case No. 07-11047 (Claims Filed By Mona Dobben)

Dear Mr. Barnes:

      As you know, we represent American Home Mortgage Holdings, Inc., and certain of its direct and indirect affiliates (collectively, the "Debtors"), in their above-referenced bankruptcy cases (the "Cases"). This letter is in reference to the claims filed by your client, Ms. Mona Dobben ("Ms. Dobben"), against certain of the Debtors.

**The Claims**

      Pursuant to the Debtors' claims register, Ms. Dobben filed claims numbered 10607, 10608 and 10609 (the "Claims") against American Home Mortgage Servicing, Inc., American Home Mortgage Corp., and American Home Mortgage Holdings, Inc., respectively. Pursuant to each of the Claims, Ms. Dobben asserts that she is entitled to a secured claim of $451,723.00 and an unsecured priority claim of $903,446.00 for damages related to an alleged illegal loan and illegal foreclosure.

      Although the Claims do not provide any supporting documentation, the Debtors have obtained a copy of the complaint and related exhibits (the "Complaint")[1] against "American Home Mortgage" filed by Ms. Dobben and her daughter, Ms. Alex Yamamura ("Ms. Yamamura" and together with Ms. Dobben, the "Plaintiffs") on June 23, 2008 in the United States District Court for the Central District of California.

---

[1] Unless indicated otherwise, all citations herein reference the Complaint.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 2

Upon the Debtors' review of the Claims and related Complaint, which is nearly 600 pages, the Debtors have determined that no liability exists. Pursuant to the Complaint, Plaintiffs allege that they were "targeted and were used, abused and deceived by an extensive fraud ring conducting a real estate swindle to relieve member of the group, associates and family member of properties they could not sell, and sold them to Plaintiffs at full value or beyond." (¶ 6.) Despite the bald assertion that the Debtors were members of this "fraud group" (¶ 4), the Complaint does not plead with any facts that would suggest the Debtors had any knowledge of, or otherwise participated in, the alleged of Mr. Patrick Downey, the sellers or other defendants primarily responsible for the alleged fraud. To the extent that allegations of negligence are asserted, such allegations are contracted by other facts alleged within the Complaint. Accordingly, and for the reasons set forth more fully below, the Debtors do not believe that the Claims are valid.

**Classification/Priority of Claims Pursuant to the Bankruptcy Code**

As noted above, Ms. Dobben asserts a secured claim of $451,723.00 and an unsecured priority claim of $903,446.00 for damages related to an alleged illegal loan and illegal foreclosure. As set forth below, Ms. Dobben is not entitled to a secured or priority claim. To the extent that Ms. Dobben is entitled to any amounts from the Debtors, such amounts should be classified as an unsecured, nonpriority claim.

First, Ms. Dobben alleges that a portion of amounts owing is secured by real estate, however, Ms. Dobben does not have a security interest in any property of the Debtors. To the extent that Ms. Dobben asserts an interest in the 37th Street Property (as defined below) or related mortgage, the Debtors do not own such mortgage or property. Accordingly, the Claims are not entitled to secured status.

Second, Ms. Dobben alleges that the remaining amounts underlying the Claims are entitled to priority under section 507(a)(2) of the Bankruptcy Code, which provides:

(a) The following expenses and claims have priority in the following order:

\*\*\*

(2) Second, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28.

11 U.S.C. § 507(a)(2). Section 503(b) of the Bankruptcy Code relates to allowed administrative expenses, including, among other things, the actual, necessary costs and expenses of preserving the Debtors' estates. See 11 U.S.C § 503(b). Chapter 123 of title 28 relates, in relevant part, to payment of filing fees for commencement and continuation of the Debtors' bankruptcy cases. See, e.g., 28 U.S.C. § 1930.

Because Ms. Dobben's claims neither relates to actual, necessary costs of preserving the Debtors' estate nor payment of filing fees, Ms. Dobben is not entitled to priority

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 3

under section 507(a)(2) of the Bankruptcy Code. Moreover, no other basis for priority exists under the applicable sections of the Bankruptcy Code.

**Analysis of Claimant's Supporting Documentation**

Because Plaintiffs allege that the Debtors were involved in only one of the real estate transactions described in the Complaint, a property located at 38645 37th Street, East Palmdale, CA 93550 (the "37th Street Property"), this letter addresses only the transaction surrounding the 37th Street Property.

First, Plaintiffs allege inconsistent facts with respect to their involvement in, and knowledge of, the purchase of the 37th Street Property. Despite Plaintiffs' assertions that Ms. Dobben's signature was forged on all purchase contracts and loan applications and that she had "no idea what exactly parties were doing in her name" (¶¶ 69-71.), Ms. Dobben subsequently admits that (i) all settlements were conducted in her home in Sun City, AZ (¶ 74), (ii) she signed documents in front of notaries at her residence (¶ 74), and (iii) she purchased the real estate properties for investment/rental properties (¶ 76). Moreover, Ms. Dobben admits to (i) entering into the loan transaction with the Debtors on April 10, 2007 (¶ 122); (ii) having a rental management agent for the 37th Street Property (¶125-27); and (iii) receiving rent from tenants living at the 37th Street Property (id.). The Complaint, however, is silent on whether Ms. Dobben ever paid any of the mortgage payments to the Debtors. To the contrary, Ms. Dobben alleges that she never received a payment coupon or monthly statements. (¶ 271.)

Second, Plaintiffs admit that the Debtors did not effectuate the foreclosure of the 37th Street Property on April 29, 2008. Indeed, although Plaintiffs contend that the Debtors were involved in the foreclosure (¶¶ 131, 133), Plaintiffs correctly identify "AH Mortgage Acquisitions" and "TD Service Company" as the parties directing the foreclosure and AHMA 2007-5 Trust as the beneficiary of the foreclosure. (¶ 130(j).) Plaintiffs further assert that, as a result of the sale of the Debtors' servicing business, AH Mortgage Acquisition – not the Debtors - is the accountable party for the foreclosure. (¶ 146.)

Third, Plaintiffs assert damages for failure to recognize Ms. Paula Rush as an advocate. (¶ 272.) As an initial matter, Ms. Rush is not an attorney and, therefore, unable to represent Ms. Dobben or any other borrower. Indeed, Ms. Rush was warned by the Honorable Christopher S. Sontchi that she was not able to represent anyone other than herself. See 10/16/07 H'rg Tr., Docket No. 1632, p. 214:12-25. Moreover, the Debtors made both Ms. Rush and Ms. Dobben aware as early as December of 2007 that, due to consumer privacy issues and the threat of litigation, the Debtors would not speak with Ms. Rush regarding Ms. Dobben's loan. (Ex. 33.) Despite these warnings, Ms. Dobben continued her attempts to use Ms. Rush as her advocate. Ms. Dobben did not execute a power of attorney until April 14, 2008,[2] after the sale of the Debtors' servicing business closed and AH Mortgage Acquisition had assumed the servicing responsibilities for the mortgage related to the 37th Street Property. (Ex. 36.)

---

[2] The Debtors do not admit or deny the authentication, validity or sufficiency of the power of attorney.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 4

Fourth, Plaintiffs contend that the Debtors breached their implied covenant of good faith and fair dealing through "willfully and maliciously refusing to disclose the true owner of the note and obfuscating information" required by law. (¶ 284.) However, Plaintiffs (i) admit that the Debtors provided the complete loan file to Ms. Dobben (¶ 9), and (ii) identify the true owner of the loan (¶¶ 27-28) as a defendant in the Complaint.

Fifth, Plaintiffs assert liability against the Debtors for negligence with respect to the underwriting of Ms. Dobben's loan. (¶ 396.) In essence, Plaintiffs argue that "a monkey underwriter could have determined the signatures did not match on all the paperwork." (¶ 396.) This allegation is belied by the Plaintiffs' earlier assertion that all of the paperwork was forged. (¶¶ 69-71.) Moreover, Plaintiffs themselves were unaware of the fraud during the purchase of the investment properties and stated that they discovered the alleged fraud only "when all the information and transactions, and the parties to the transactions compared stories . . . ." (¶ 185.)

**Legal Analysis of Specific Counts Against the Debtors**

In addition to contradictory factual allegations, the Debtors believe that the legal bases for the Claims are deficient. The Debtors take each of the counts applicable to them in turn.

*Count 1 – Violation of the Truth in Lending Act ("TILA")*. Put simply, because Ms. Dobben purchased the real estate properties for investment/rental purposes (¶ 76), TILA is not applicable. See 15 U.S.C. § 1603 (TILA is not applicable to "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes...."); see also 12 C.F.R. Pt. 226, Supp. I, cmt. 226.3(a)-3 (The Federal Reserve Board, in its Official Staff Interpretations, has interpreted § 1603 to mean that "[c]redit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes.").

*Count 2 – Violation of Real Estate and Settlements Procedure Act ("RESPA")*. Like TILA, RESPA is only applicable to consumer transactions. See 12 U.S.C. § 2606(a)(1) (stating that RESPA does not apply to transactions involving extensions of credit "primarily for business, commercial, or agricultural purposes."). Because Ms. Dobben purchased the real estate properties for investment/rental purposes (¶ 76), RESPA is not applicable.[3] 12 U.S.C. § 2606(b).

*Count 3 – Violation of California Civil Code §§ 1920 and 1921*. Sections 1920 and 1921 of the California Civil Code are equally inapplicable to the transaction at issue. The statute makes clear that an applicable "security document" only includes an instrument "when its purpose is to finance the purchase or construction of real property *occupied or intended to be occupied by the borrower*." Cal. Civ. Code § 1918.5 (2009) (emphasis added). Because Ms. Dobben purchased the real estate properties for investment/rental purposes (¶ 76), and did not

---

[3] Moreover, the exhibits to the Complaint show that the Debtors had no knowledge of Mr. Downey, but rather had evidence that Ms. Dobben's broker was Mr. Gregory Clark (License No. 00841172) of The Historic Real Estate & Finance Company (License No. 01228776). Further, the Yield Spread Premium ("YSP") is paid by the lender to the broker, and no amounts were paid by Ms. Dobben, which is entirely consistent with 12 U.S.C. § 2607(c).

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 5

occupy or intend to occupy those properties, she does not have a valid claim under sections 1920 and 1921 of the California Civil Code.

*Count 5 – California Business and Professions Code Consumer Fraud § 17200 (the "Unfair Competition Law" or the "UCL")*. To prove an unfair competition claim under section 17200 of the California Business and Professions Code, Plaintiffs would have to first prove that the Debtors engaged in an "unlawful, unfair, or fraudulent business act or practice" or "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 (2009). Because Plaintiffs' unfair competition claim essentially depends on the viability of Plaintiffs' underlying claims of misconduct against the Debtors, for the reasons discussed throughout this letter, this claim fails. Moreover, Plaintiffs do not specify the Debtors' particular role in any unlawful practices. Because Plaintiffs have not established the nature of the Debtors' underlying unlawful conduct, their UCL claim fails. See Hepler v. Wash. Mut. Bank, F.A., C.A. No. CV 07-4804 CAS, 2009 U.S. Dist. LEXIS 33883, at *10 (C.D. Cal. Apr. 17, 2009) (granting summary judgment for lack of predicate where plaintiffs failed to state a claim for underlying allegations, including TILA and RESPA violations).

Even assuming that Plaintiffs could succeed on an underlying claim, Plaintiffs' UCL claim would not meet the pleading requirements for such allegations. See Fed. R. Civ. P. 9(b) ("Rule 9(b)"); Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-27 (9th Cir. 2009) (holding that when a UCL claim is based on allegations of unified course of fraudulent activity, claim sounds in fraud such that entire complaint must satisfy Rule 9(b) requirements). The United States Court of Appeals for the Ninth Circuit has required that:

> [a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged. '[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis in original) (internal citations omitted). Because Plaintiffs make only general allegations that the Debtors and other Defendants were "conducting an organized civil conspiracy," "self dealing," and engaging in "predatory lending practices" (¶¶ 378(B)-(D)), Plaintiffs fail to meet the particularity requirement of Rule 9(b). See, e.g., Yang v. Xiong, C.A. No. Civ. S-06-1306 DFL GGH, 2006 US Dist LEXIS 80265, at *4 (E.D. Cal. Nov. 2, 2006).

*Count 7 – Fraud – California Civ. Code §§ 1572 and 1573*. As noted above, averments of fraud must be plead with the requisite authority. See Rule 9(b). Despite Plaintiffs' citation to sections 1572 and 1573 of the California Civil Code, Plaintiffs have failed to identify any action by the Debtors which would constitute fraud under these sections. Instead, Plaintiffs attempt to elevate Debtors' alleged "negligent" acts to the level of fraud. (¶ 396-97). Not only is this argument a red herring, as the Debtors owed no duty to Ms. Dobben (see response to Count 13 below), it is insufficient to meet the elements of fraud.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 6

### Count 8 – *Negligent and Intentional Misrepresentation, Cal. Civ. Code §§ 1709-1710*.

Plaintiffs' base their misrepresentation claim on the Debtors' alleged refusal to disclose the true owner of the note and respond to Plaintiffs' TILA requests. (¶¶ 486-87.) Thus, Plaintiffs appear to be alleging misrepresentation based on deceit as defined by section 1709(c) of the California Civil Code: "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710(c) (2009). Because, as discussed above, the Debtors were not bound to disclose information regarding the 37th Street Property under TILA or otherwise, Plaintiffs' misrepresentation claim fails. Moreover, the fact that Ms. Dobben has the Debtor's complete loan file (¶ 9) belies any argument that Debtors suppressed information.

Even if there was a basis for claiming that Debtors' conduct toward Plaintiffs amounted to "deceit," Plaintiffs have failed to establish the other elements of a claim for misrepresentation. See, e.g., Vogelsang v. Wolpert, 38 Cal. Rptr. 440, 445 (Cal. Ct. App. 1964) (fraudulent misrepresentation requires plaintiffs to show (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage). Notably, Plaintiffs have failed to identify how the Debtors' alleged misconduct—failing disclose the true owner of the loan—harmed Plaintiffs. Mirkin v. Wasserman, 858 P.2d 568, 573 (Cal. 1993) ("Specific pleading is necessary to establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom."). Because Plaintiffs have possession of the complete loan file (¶ 9) and identify the true owner of the loan (¶¶ 27-28), the Debtors cannot conceive of any damages with respect to such alleged malfeasance.[4]

Finally, Plaintiffs have not met, and cannot meet, the heightened pleading requirements under Rule 9(b). For the reasons discussed with respect to Plaintiff's fifth cause of action, Plaintiffs have failed to adequately plead their claim under Rule 9(b).[5]

### Count 9 – *Concealment, Cal. Civ. Code §§ 1709-1710*.

Plaintiffs' concealment claim is pursued under the same law as their misrepresentation claim—Cal. Civ. Code §§ 1709-10. The claims are also based on the same underlying facts, i.e., the Debtors' alleged refusal to disclose the true owner of the note and respond to Plaintiffs' TILA requests (¶¶ 486-87, ¶¶ 526-27). For the reasons discussed with respect to Plaintiffs' misrepresentation claim, the concealment claims similarly lack a legal basis under sections 1709 and 1710 of the California Civil Code.

---

[4] To the extent that Plaintiffs assert that the Debtors misrepresented the true nature of the loans and/or the various disclosures or loan terms (¶ 478), such claims fail because Ms. Dobben admitted that she did not review such documents at the time of closing (¶¶ 69-71). Put simply, Ms. Dobben cannot argue that she justiably relied upon documents that she did not read.

[5] Even if Plaintiffs had a legal basis for a claim under Cal. Civ. Code § 1709, they would not be able to pursue damages alongside their claim for damages from breach of contract (see Count 14) because the claims have the same factual basis. See Walker v. Signal Companies, Inc., 149 Cal. Rptr. 119, 125 (Cal. Ct. App. 1978) (rejecting award of fraud damages as duplicative of compensatory damages for contract breach where claims were based on same underlying facts).

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 7

        ***Count 10 – Violation of Cal. Civ. Code § 1711 – Fraud on Public***. The statute's plain text indicates that the sufficiency of Plaintiffs' cause of action rests on the sufficiency of their claims under sections 1709 and 1710 of the California Civil Code.[6] For the reasons stated above, there is no legal basis for such claims. Moreover, Plaintiffs have failed to identify any other individual who was defrauded or misled by the Debtors' alleged deceit; they merely state that "multiple victims have been identified, and surely others will surface." (¶ 560.)

        ***Count 11 – Rescission / Cancellation, Cal. Civ. Code 1689 and Court's Inherent Equitable Authority***. Section 1689(b)(1) of the California Civil Code provides that a party may seek to rescind a contract if that party's consent "was given by mistake, or obtained through duress, menace, fraud, or undue influence." Cal. Civ. Code § 1689(b)(1)(2009).

        As an initial matter, Plaintiffs acknowledge that the Debtors no longer own the mortgage or servicing rights. As a result, rescission is an inappropriate remedy against the Debtors. See Denevi, Denevi v. LGCC, 18 Cal. Rptr. 3d 276, 283 (Cal. Ct. App. 2004) (where fraudulent party has transferred the property, there can be no rescission).

        Even if rescission were an appropriate remedy, the Plaintiffs again fail to identify the "who, what, when, where, and how" of alleged misconduct giving rise to the right of rescission.[7] Vess, 317 F.3d at 1106. Thus, the Complaint does not reach the level of specificity required by law and fails to state a claim for rescission of the contract.[8] See Ramiro Archundia v. Chase Home Fin. LLC, C.A. No. 09-CV-00960-H (AJB), 2009 U.S. Dist. LEXIS 53056, at *15-16 (S.D. Cal. June 23, 2009) (to state a cause of action for contract rescission based on allegations of fraud, a party must plead fraud with required specificity under Rule 9(b)).

        Moreover, "[r]ecission consists of restoration by the plaintiff of 'any benefits received' under the contract, coupled with restitution to the plaintiff of 'the consideration which he gave.' In other words, the victim of the fraud may elect to undo the transaction in its entirety, restoring both parties to the status quo ante." Denevi v. LGCC, 18 Cal. Rptr. 3d at 282. Following this requirement, section 1691 of the California Civil Code requires any notice of rescission to be accompanied by an offer to restore the benefits received under the contract. Cal. Civ. Code § 1691. Despite Plaintiffs assertion that Ms. Dobben effectuated a rescission through letter dated November 13, 2007, the letter does not provide any offer to restore the Debtors to their pre-contract position, but rather demands both a cancellation of the security interest and payment of all amounts paid by Ms. Dobben. (Ex. 29.)

---

[6] Section 1711 of the California Civil Code provides that "[o]ne who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Cal. Civ. Code § 1711 (2009).

[7] Ms. Dobben asserts rights of rescission under RESPA and TILA. (Ex. 29.) As noted above, these statutes are not applicable to the instant transaction.

[8] Even if Plaintiffs had pled their claim with the requisite particularity, Plaintiffs' claim for rescission could not be pursued alongside their numerous claims for fraud damages (see, e.g., Counts 7-9). The law requires one who has been defrauded into entering a contract to choose either to "affirm or rescind" the contract. Denevi v. LGCC, 18 Cal. Rptr. 3d 276, 282 (Cal. Ct. App. 2004) (citing 5 Witkin, Summary of Cal. Law (9th ed. 1990) Torts, § 725, p. 825).

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
September 3, 2009
Page 8

*__Count 13 – Negligence__.* To state a claim for negligence under California law, a party must allege the following elements: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." Spencer v. DHI Mortg. Co., C.A. No. CV F 09-0925 LJO DLB, 2009 U.S. Dist. LEXIS 55191, at *6-7 (E.D. Ca. June 30, 2009) (citing Mendoza v. City of Los Angeles, 66 Cal.App.4th 1333, 78 Cal.Rptr.2d 525 (1998)).

First, despite Plaintiffs' general claims that Debtors and other Defendants were "required to exercise reasonable care and diligence" and "bound to exercise [their] skill for the benefit of the principal" (¶ 618), the Debtors do not owe a duty of care to Plaintiffs. See, e.g., Ramiro Archundia v. Chase Home Fin. LLC, C.A. No. 09-CV-00960-H (AJB), 2009 U.S. Dist. LEXIS 53056 at *16 (S.D. Cal. June 23, 2009) (Although California law may recognize a fiduciary duty owed by a mortgage broker to a borrower, "'[f]inancial institutions owe no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'") (internal citations omitted). Similarly, a lender's decision to approve a loan is a business decision, made for its benefit alone, and is not a representation made to the borrower. See Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal. App. 3d 1089, 1096, 283 Cal. Rptr. 53 (1991) (holding bank had no duty of care to ensure investment was advisable). Because the Debtors had no duty to Ms. Dobben, the Debtors could not breach such duty and no damages could result therefrom.

Second, Plaintiffs' negligence claim is barred by the economic loss doctrine. See, e.g., Spencer v. DHI Mortg. Co., C.A. No. CV F 09-0925 LJO DLB, 2009 U.S. Dist. LEXIS 55191, at *9-10 (E.D. Cal. June 30, 2009) (internal citations omitted) (applying California state law to find that economic loss doctrine required dismissal of borrower's negligence claim).

*__Count 14 – Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing__.* "A claim based on a contract must either include the language of the contract itself, or plead the essential terms of the contract upon which the claim depends." Love v. The Mail on Sunday, C.A. No. CV 05-7798 ABC, 2006 U.S. Dist. LEXIS 95456, at *18 (C.D. Cal. Aug. 2006) (internal citations omitted). Moreover, because the implied covenant of good faith and fair dealing "is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract," Spencer, 2009 U.S. Dist. LEXIS 55191 at *19, Plaintiffs must establish the specific contractual duty from which the implied covenant of good faith and fair dealing arose. See Love, 2006 U.S. Dist. LEXIS 95456, at *19-20 (dismissing breach of contract claim where complaint failed to identify any specific contractual provision from which the implied covenant of good faith and fair dealing arose).

Because Plaintiffs have not identified, and cannot identify, a specific contractual provision that the Debtors allegedly breached, such cause of action cannot be sustained. See Fortaleza v. Pnc Fin. Servs. Group, C.A. No. C 09-2004 PJH, 2009 U.S. Dist. LEXIS 64624, at *16-17 (N.D. Cal. July 27, 2009) (dismissing claim for breach of implied covenant of good faith and fair dealing where plaintiff neither alleged specific contractual obligation breached nor conduct that impeded her realization of contractual benefits); see also Spencer, 2009 U.S. Dist.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 9

LEXIS 55191 at *19-20 (claim fails where borrower asserted conclusory allegations and breaches allegedly occurring prior to contract formation).

### *Count 15 – Intentional Infliction of Emotional Distress ("IIED")*.

To state a claim for IIED, Plaintiffs must allege that "(1) the defendant engaged in extreme and outrageous conduct with the intention of causing, or reckless disregard of the probability of causing, severe emotional distress to the plaintiff; (2) the plaintiff actually suffered severe or extreme emotional distress; and (3) the outrageous conduct was the actual and proximate cause of the emotional distress." Ross v. Creel Printing & Publishing Co., 122 Cal. Rptr. 2d 787, 793 (Cal. Ct. App. 2002). Plaintiffs have not established, and cannot establish, these elements.

As an initial matter, the alleged "extreme and outrageous conduct" on the part of the Debtors appears to relate to Debtors' failure to (i) respond to RESPA requests and identify the true owner of the note, and (ii) acknowledge the alleged fraud ring as represented by Ms. Rush (¶¶ 726, 729).[9] As noted above, the Debtors were not required to respond to such RESPA requests, Ms. Dobben was provided her complete loan file, and she has already identified the owner of her loan. Additionally, the Honorable Christopher S. Sontchi had advised Ms. Rush that she could not represent borrowers because she was not an attorney, and the Debtors had advised Ms. Dobben that they would not recognize Ms. Rush as such. Accordingly, such conduct does not rise to conduct which "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Ross, 122 Cal. Rptr. 2d at 793 (internal citation omitted).

Moreover, Plaintiffs' conclusory allegations that Ms. Dobben suffered emotional distress as a result of the Debtors' conduct are insufficient to meet the pleading requirements under Fed. R. Civ. P. 8. Ramiro Archundia v. Chase Home Fin. LLC, 2009 U.S. Dist. LEXIS 53056, at *20 (dismissing IIED claim where plaintiff made "conclusory allegations that he suffered severe emotional distress" as a result of pending foreclosure on his own home).

### *Count 16 – Elder Abuse: Cal. Welfare & Institutions Code 15600 et seq*.

Put simply, because Ms. Dobben is not a resident of California (¶ 16), the California Welfare & Institutions Code is not applicable. Cal. Wel. & Inst. Code § 15610.27 ("Elder" means any person *residing in this state*, 65 years of age or older.) (emphasis added). Even assuming the statue was applicable, the Plaintiffs again fail to plead their allegations with any particularity with respect to the Debtors.

Plaintiffs also attempt to insert claims for violation of section 1770 of the California Civil Code, which prohibits the "sale or lease of goods or services to any consumer," into their sixteenth cause of action. (¶ 747). Plaintiffs do not have legal basis for such a claim. A "consumer" for the purposes of this section of the California Civil Code means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d) (2009). Plaintiffs have not cited any authority for the notion that "goods or services" includes real estate investment property, nor can Plaintiffs

---

[9] Plaintiffs acknowledge, the Debtors were not responsible for the foreclosure. (¶¶ 146, 728-29.)

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 10

establish that the 37th Street Property was for "personal, family, or household purposes." Moreover, the court has previously held that the term "consumer" for the purposes Cal. Civ. Code § 1770 does not include individuals who obtained credit. See Lowman v. MBNA Am. Bank, N.A., C.A. No. CV 05-7501 ER, 2006 U.S. Dist. LEXIS 98241, at *6-8 (C.D. Cal. Feb. 17, 2006). Because Ms. Dobben does not fall under the definition of a "consumer," she does not have a legal basis for a claim under section 1770 of the California Civil Code.

*Count 17 – RICO*. Plaintiffs appear to pursue their RICO allegations under 18 U.S.C. § 1962(c), which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (2009). In order to plead a violation of Section 1962(c), a plaintiff must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Because Plaintiffs do not allege a distinct RICO enterprise, and cannot allege a pattern of racketeering activity, the claim would not withstand a motion to dismiss.

First, Plaintiffs have failed to plead properly that the Debtors were involved in the conduct of an enterprise. To adequately plead this element, Plaintiffs must identify the enterprise, demonstrate that the enterprise is distinct from the RICO "person" (i.e., the defendants), and plead that he Debtors participated in the operation or management of the enterprise. Toucheque v. Price Bros. Co., 5 F. Supp. 2d 341, 346-47 (D. Md. 1998). Here, Plaintiffs have failed to allege an enterprise, explained how it is distinct, or alleged that the Debtors participated in its operation or management.[10] See Westways World Travel v. AMR Corp., 182 F. Supp. 2d 952, 957 (C.D. Cal. 2001) (Plaintiffs must allege "conduct by a 'person employed by or associated with any enterprise' and that the Debtors and other Defendants acted through a distinct 'enterprise.'") (internal citation omitted).

Second, Plaintiffs have not alleged a pattern of racketeering activity. Simply put, "a pattern of racketeering activity does not exist unless there is evidence of two predicate acts." Brady v. Dairy Fresh Products Co., 974 F.2d 1149, 1153 (9th Cir. 1992). Although Plaintiffs allege that the Debtors handled the underwriting and processing of loans, offered an yield spread premium, and "ignored" all signs of "obvious" fraud, and refused to engage in loss mediation (¶ 757, 759), Plaintiffs have failed to allege any requisite "predicate acts," much less with the specificity required for allegations of fraud under Rule 9. Absent such predicate acts, the RICO claim fails.

*Count 19 – Fair Debt Collections Practices Act (the "FDCPA")*. The FDCPA is inapplicable to the Debtors. Hepler v. Wash. Mut. Bank, F.A., C.A. No. CV 07-4804 CAS, 2009 U.S. Dist. LEXIS 33883, at *11-12 (C.D. Cal. April 17, 2009) ("[T]he law is well-settled . . . that

---

[10] Plaintiffs describe Mr. Downey as "the central figure and primary contact for every other Defendant" in the alleged conspiracy. (¶ 772.) Yet, the exhibits to the Complaint do not show that the Debtors had any knowledge of Mr. Downey. Rather, the Debtors had evidence that Mr. Clark (License No. 00841172), of Historical Real Estate & Finance Company, was Ms. Dobben's broker with respect to the 37th Street Property.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
September 3, 2009
Page 11

creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA.") (internal citations omitted). Accordingly, Plaintiffs' cause of action for violations of the FDCPA fail.

*Count 21 – Illegal Foreclosure*. Plaintiffs have cited no case law or statute on which they base their claims of "illegal foreclosure"; they merely reference "California Foreclosure Law." (¶ 821.) Even if the Complaint could be liberally construed to allege a violation of section 2923.5(g) of the California Civil Code, which sets forth the procedures for non-judicial foreclosure, Plaintiffs' allegations would still lack a legal basis. Sub-division 2923.5(i) clearly states that the section applies only to loans "for owner-occupied residences," which means that "the residence is the principal residence of the borrower." Cal. Civ. Code § 2923.5(i). Because Plaintiffs have acknowledged that the 37th Street Property was purchased for rental/investment purposes, this cause of action is inapplicable. (¶ 76.)

More importantly, and as Plaintiffs' acknowledged elsewhere in the Complaint, the Debtors sold their servicing unit prior to the foreclosure (¶ 146.) AH Mortgage Acquisition, not the Debtors, is the party responsible for the foreclosure. (¶ 820.) Thus, even if Plaintiffs' twenty-first count is valid, it is not a valid claim against the Debtors.

**Settlement Offer**

As described above, the Debtors firmly believe that they have no obligation to Ms. Dobben. Nevertheless, the Debtors are willing to offer Ms. Dobben an allowed unsecured, non-priority claim in the amount of $10,000 (the "Settlement") against American Home Mortgage Corp. The Settlement Amount considers not only the merits of the Claims, but also the costs relating to further litigation. Any settlement of the Claims would not prohibit Ms. Dobben from proceeding against non-Debtor defendants with respect to the causes of actions set forth in the Complaint.

Please advise if the Settlement is acceptable to your client no later than noon (ET) on Friday, September 11, 2009. If the Settlement is declined, of if you fail to respond to the Settlement, the Debtors may object to the Claims in accordance with the provisions of the Bankruptcy Code and applicable orders of the Bankruptcy Court.

Sincerely yours,

Margaret Whiteman Greecher

cc:   Christopher Loizides, Esq.
      Edward Schnitzer, Esq.

MWG

DB02:8451220.2                                                                                          066585.1001