## Exhibit C

**Revised Melville Sale Agreement**

## SALE, ASSIGNMENT AND TRANSFER OF LIMITED LIABILITY COMPANY INTEREST OF MELVILLE FUNDING, LLC

This Sale, Assignment and Transfer of Limited Liability Company Interest of Melville Funding, LLC (this "Sale and Assignment Agreement") dated effective as of _____, 2010, is entered into by and between **AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**, a Maryland corporation ("AHM Acceptance"), and **B&M MANAGEMENT CORP.**, a Delaware corporation ("Assignee").

## RECITALS

WHEREAS, AHM Acceptance, together with American Home Mortgage Corp., a New York corporation, American Home Mortgage Holdings, Inc., a Delaware corporation, American Home Mortgage Investment Corp., a Maryland corporation, AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation, American Home Mortgage Ventures LLC, a Delaware limited liability company, and Homegate Settlement Services, Inc., a New York corporation (collectively, the "Debtors") filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on August 6, 2007, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Debtors' bankruptcies are being jointly administered under Case No. 07-11047 (CSS);

WHEREAS, Melville Funding, LLC, a Delaware limited liability company ("Melville"), was formed on December 19, 2003;

WHEREAS, pursuant to the Limited Liability Company Agreement of Melville (the "Melville LLC Agreement"), dated as of May 27, 2004, AHM Acceptance is the sole equity member and manager of Melville;

WHEREAS, Melville, as issuer, and Deutsche Bank Trust Company Americas, in its capacity as Indenture Trustee (the "Indenture Trustee"), are parties to that certain Base Indenture dated as of May 27, 2004 (the "Base Indenture"), for the issuance from time to time of one or more series of Melville's Residential Mortgage-Backed Notes (the "Senior Notes"), one or more series of Melville's Variable Funding Notes (the "Variable Funding Notes"), and one or more series of Melville's Residential Mortgage-Backed Subordinated Notes (the "Subordinated Notes," and collectively with the Senior Notes and the Variable Funding Notes, the "Notes"), issuable as provided in the Base Indenture;

WHEREAS, Melville, as issuer, the Indenture Trustee, and Deutsche Bank Trust Company Americas, in its capacity as Collateral Agent (the "Collateral Agent") are parties to that certain Security Agreement dated as of May 27, 2004 (the "Security Agreement"), providing security for the Notes;

WHEREAS, Melville, as issuer, AHM Acceptance, as seller, American Home Mortgage Servicing, Inc. (f/k/a Columbia National, Incorporated), as Servicer, the Collateral Agent, and Deutsche Bank Trust Company Americas, in its capacity as Custodian (the "Custodian") are parties to that certain Custodial Agreement dated as of May 27, 2004 (the

"Custodial Agreement"), which provides that the Custodian will act as bailee for certain mortgage notes, mortgages, and assignment of mortgages;

WHEREAS, Melville, as issuer, Collateral Agent, and Deutsche Bank Trust Company Americas, in its capacity as Securities Intermediary (the "Securities Intermediary") are parties to that certain Securities Account Control Agreement dated as of May 27, 2004 (the "Securities Account Control Agreement");

WHEREAS, Melville, as issuer, Indenture Trustee, and Deutsche Bank Trust Company Americas, in its capacity as Paying Agent for the benefit of the Series 2004-I Variable Funding Noteholder (the "Paying Agent") are parties to that certain Series 2004-I Supplement dated as of May 27, 2004 (the "Series 2004-I Supplement"), which appoints Deutsche Bank Trust Company Americas the Series 2004-I Variable Funding Note Calculation Agent (the "Calculation Agent");

WHEREAS, capitalized terms used but not defined in this Sale and Assignment Agreement shall have the meaning specified in the Base Indenture;

WHEREAS, Variable Funding Notes were issued to Broadhollow Funding, LLC, a Delaware limited liability company ("Broadhollow");

WHEREAS, the Indenture Trustee, the Collateral Agent, the Custodian, the Securities Intermediary, the Paying Agent, and the Calculation Agent (collectively, and only in such capacities, "DBTCA") and/or the holders of the Variable Funding Notes have claims against Melville for, *inter alia*, the portion of their Notes that remain unpaid, and may have additional claims against AHM Acceptance, including, but not limited to, in its capacity as member and/or manager of Melville or against certain of the Debtors for various reasons;

WHEREAS, the Debtors have or may be entitled to assert claims against Melville, DBTCA, and one or more of the holders of the Variable Funding Notes;

WHEREAS, the Debtors currently hold the Miscellaneous Funds Escrow Account (as defined in the Order Approving And Authorizing the Stipulation Between the Debtors and Calyon New York Branch, as Administrative Agent [Docket No. 3918]);

WHEREAS, Melville has certain claims against Bank of America and other market value swap providers for failing to make payments under certain swaps, which claims, if liquidated, would be available to satisfy unpaid Notes;

WHEREAS, a full and complete list of the loans and/or real estate owned by Melville (identified by loan number) is set forth on Schedule 1 hereto (the "Mortgage Loans");

WHEREAS, Broadhollow is being transferred to Assignee; and

WHEREAS, pursuant to the terms of the Melville LLC Agreement, Rating Agency Confirmation (as defined in the Melville LLC Agreement) is a condition to the transfer of a member's limited liability company interest or the removal of the manager.

2

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated by reference herein, the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    Sale and Assignment of Melville Interest; Payment.    Subject to the terms and conditions set forth in this Sale and Assignment Agreement, at the Closing (as hereinafter defined), AHM Acceptance shall:

    a.   execute and deliver to Assignee that certain Consent of American Home Mortgage Acceptance attached hereto as Exhibit A, pursuant to which AHM Acceptance shall consent to the admission of Assignee as a member of Melville;

    b.   pursuant to Section 363 of the Bankruptcy Code, execute and deliver to Assignee that certain Assignment and Assumption of Membership Interests attached hereto as Exhibit B (the "Assignment of Membership Interests"), pursuant to which AHM Acceptance shall sell, assign, transfer, and convey all of AHM Acceptance's limited liability company interest in Melville (the "Assigned Interest") to Assignee, free and clear of all liens, pledges, claims, charges, security interests, and encumbrances of every kind and nature;

    c.   execute and deliver to Assignee that certain Resignation of Manager attached hereto as Exhibit C, pursuant to which AHM Acceptance shall resign as the manager of Melville;

    d.   deliver to Assignee (i) copies of all formation and organizational documents filed by or on behalf of Melville with the Secretaries of State of the State of Delaware and each other state in which Melville is qualified as a foreign limited liability company, all as certified by the applicable Secretary of State within five (5) days prior to the Closing Date, and (ii) certificates of good standing and payment of all applicable state franchise taxes of Melville issued by the Delaware Secretary of State and the appropriate officials of each other state in which Melville is qualified as a foreign limited liability company, in each case dated within five (5) days prior to the Closing Date;

    e.   execute and deliver to Assignee a certification of non-foreign status satisfying the requirements of Section 1.1445-2(b)(2)(i) of the United States Treasury Regulations promulgated under the Internal Revenue Code of 1986, as amended; and

    f.   cause each of the other Debtors to execute a counterpart of this Sale and Assignment Agreement to effectuate the release granted by Debtors pursuant to Section 3 of this Sale and Assignment Agreement.

Upon the transfer of the Assigned Interest to Assignee, AHM Acceptance shall cease to be a member of Melville, all limited liability company interests in Melville shall be held by Assignee, and Assignee shall be the sole equity member of Melville.

       2.     <u>Acceptance of Melville Interest</u>. Subject to the terms and conditions set forth in this Sale and Assignment Agreement, at the Closing, Assignee hereby agrees (a) to execute and deliver to AHM Acceptance the Assignment of Membership Interests, pursuant to which Assignee shall accept the sale, assignment, and transfer of the Assigned Interest from AHM Acceptance and shall agree to be bound by all terms and conditions of the Melville LLC Agreement; and (b) to cause Melville to execute a counterpart of this Sale and Assignment Agreement to effectuate the release granted by Melville pursuant to Section 3 of this Sale and Assignment Agreement. Assignee acknowledges and agrees that, subject to the Bankruptcy Court Approval, the Assigned Interest will be assigned at the Closing without prior Rating Agency Confirmation.

       3.     <u>Mutual Releases</u>.

       a.     <u>Debtors' Releases</u>: Except for the duties, liabilities, and obligations of AHM Acceptance under this Sale and Assignment Agreement and subject to the last sentence of this Section 3.a, effective immediately upon the admission of Assignee as a member of Melville and the transfer of the Assigned Interest to Assignee, Melville, and Assignee, on behalf of Assignee and all of Assignee's current and former officers, members, agents, directors, predecessors, successors, assigns, affiliates, and other representatives, in each case, solely in such capacity (collectively, the "<u>Melville Releasors</u>"), fully and forever release, acquit, waive and discharge each of the Debtors and Debtors' respective officers, managers, members, directors, stockholders, employees, affiliates, subsidiaries, parents, agents, representatives, attorneys, heirs, successors and assigns, as applicable (collectively, the "<u>Debtor Releasees</u>"), of and from all and every manner of claims, including but not limited to, any action and actions, cause and causes of action, complaints, debts, covenants, rights, suits, judgments, representations, warranties, fees, demands, priority claims, unsecured claims, cure claims, deficiency claims, interest claims, penalty claims, administrative claims, counterclaims, and damages whatsoever, known or unknown, arising, accruing, assessed or assessable in respect of any periods and any transactions, contracts or agreements occurring or entered into in any periods (collectively, the "<u>Melville Released Claims</u>"), which Melville Released Claims shall be waived, released, forever barred, discharged and disallowed. For the avoidance of doubt, Debtor Releasees shall include any plan trust established by Order of the Bankruptcy Court to which any Debtors' assets are transferred as well as the trustee of any such trust. Notwithstanding anything to the contrary set forth in this Section 3.a, the Noteholders that hold direct or indirect ownership interests in Assignee shall not be deemed to be Melville Releasors for purposes of this Section 3.a, it being acknowledged and agreed that any releases given by such

                                           

Noteholders shall be governed solely by Section 4 hereof and the Order contemplated therein.

b.  <u>Melville and Assignee Releases</u>:  Except for the duties, liabilities, and obligations of Assignee under this Sale and Assignment Agreement and subject to the last sentence of this Section 3.b, effective immediately upon the admission of Assignee as a member of Melville and the transfer of the Assigned Interest to Assignee, Debtors, on behalf of themselves and all of their current and former officers, members, agents, directors, predecessors, successors, assigns, affiliates, and other representatives, in each case, solely in such capacity (collectively, the "<u>Debtor Releasors</u>"), fully and forever release, acquit, waive and discharge each of Melville and Assignee, and all of their respective officers, managers, members, directors, shareholders, employees, affiliates, subsidiaries, parents, agents, representatives, attorneys, heirs, successors and assigns, as applicable (collectively, the "<u>Melville Releasees</u>"), of and from all and every manner of claims, including but not limited to, any action and actions, cause and causes of action, complaints, debts, covenants, rights, suits, judgments, representations, warranties, fees, demands, priority claims, unsecured claims, cure claims, deficiency claims, interest claims, penalty claims, administrative claims, counterclaims, and damages whatsoever, known or unknown, arising, accruing, assessed or assessable in respect of any periods and any transactions, contracts or agreements occurring or entered into in any periods (collectively, the "<u>Debtors' Released Claims</u>"), which Debtors' Released Claims shall be waived, released, forever barred, discharged and disallowed. Notwithstanding anything to the contrary set forth in this Section 3.b, the Noteholders that hold direct or indirect interests in the Assignee and the Indenture Trustee, shall not be deemed to be Melville Releasees for purposes of this Section 3.b, it being acknowledged and agreed that any releases given by the Debtor Releasors to such Noteholders and the Indenture Trustee shall be governed solely by Section 4 hereof and the Order contemplated therein.

4.      <u>Bankruptcy Court Approval</u>.  All obligations of the Debtors, Melville and Assignee under this Sale and Assignment Agreement, including all actions, sales, assignments, agreements, releases, waivers, consents, terms and obligations contained herein, are subject to and conditioned upon approval, upon notice and a hearing, by the Bankruptcy Court of (i) the transfer of the Assigned Interest from AHM Acceptance to Assignee and the replacement of AHM Acceptance as the manager of Melville by Assignee, in each case without prior Rating Agency Confirmation, and (ii) the Order Releases (as defined below) (collectively, "<u>Bankruptcy Court Approval</u>").  Within two (2) business days of the execution of this Sale and Assignment Agreement, Debtors shall file a motion with the Bankruptcy Court seeking Bankruptcy Court Approval.  Each of the parties acknowledges and agrees that (a) the release of the Debtors is an integral part of the consideration to the Debtors under this Sale and Assignment Agreement, (b) that it is the intent of the parties that Debtors be released from any and all liabilities or obligations related to or arising out of Debtors ownership of Melville, and (c) that as part of the

5

Bankruptcy Court Approval, Debtors will seek an Order that includes (i) DBTCA, solely in its capacity as Indenture Trustee, Collateral Agent, Custodian, Securities Intermediary, Paying Agent, and Calculation Agent and for no other purpose, and Noteholders, solely in their capacity as such and for no other purpose, as additional releasors; and (ii) DBTCA, solely in its capacity as Indenture Trustee, Collateral Agent, Custodian, Securities Intermediary, Paying Agent, and Calculation Agent and for no other purpose, and Noteholders, solely in their capacity as such and for no other purpose, as additional releasees such that there will be a mutual release of any claims DBTCA and/or Noteholders have or may have against the Debtors and any claims the Debtors have or may have against the DBTCA and/or Noteholders, in each case, solely in their respective capacities as Indenture Trustee, Collateral Agent, Custodian, Securities Intermediary, Paying Agent, and Calculation Agent or Noteholders ((i) and (ii), collectively, the "Order Releases").

     5.     <u>Representations and Warranties</u>.

     a.     AHM Acceptance hereby represents and warrants to Assignee as of the date hereof and as of the Closing Date as follows:

     (i)     AHM Acceptance (A) is duly incorporated and is validly existing in good standing as a corporation under the laws of its jurisdiction of incorporation; and (B) subject to obtaining Bankruptcy Court Approval, has the corporate power and authority to execute and deliver, and perform AHM Acceptance's obligations under, this Sale and Assignment Agreement. This Sale and Assignment Agreement has been duly executed and delivered by AHM Acceptance.

     (ii)     Subject to obtaining Bankruptcy Court Approval, this Sale and Assignment Agreement shall be valid, binding and enforceable against AHM Acceptance and its successors and assigns in accordance with its terms.

     (iii)     Melville (A) is duly formed and is validly existing in good standing as a limited liability company under the laws of its jurisdiction of formation; and (B) has the limited liability company power and authority to own its properties and assets and to carry on its business.

     (iv)     The execution, delivery, and performance of this Sale and Assignment Agreement has been duly authorized by all necessary corporate action on behalf of AHM Acceptance.

     (v)     Subject to obtaining Bankruptcy Court Approval including a waiver of the Rating Agency Confirmation, the execution, delivery, and performance of this Sale and Assignment Agreement does not and will not violate any provision of the formation or organizational documents of Melville, create any lien, security interest, charge, or encumbrance on the Assigned Interest or any assets of Melville, or conflict with or result in a breach of, create an event of default under, or give any third party the right to accelerate any obligation under, any agreement, mortgage, order, arbitration award, judgment, or decree to which AHM Acceptance or

     

Melville is a party or by which AHM Acceptance, Melville, the Assigned Interest, or any assets or properties of the Melville, are bound or affected. Subject to obtaining Bankruptcy Court Approval including a waiver of the Rating Agency Confirmation, AHM Acceptance has obtained all consents necessary for the consummation of the transactions contemplated herein.

(vi)    AHM Acceptance is the sole equity member and manager of Melville, is the sole owner of the Assigned Interest and, subject to obtaining Bankruptcy Court Approval, has full right to transfer, assign, and sell the Assigned Interest free and clear of any liens, charges, encumbrances or claims.

(vii)    Schedule 1 contains a complete list of the Mortgage Loans and any other material assets owned by Melville.  Melville does not lease any properties and does not own any direct or indirect interests in any other entity.

(viii)    Schedule 2 lists all contracts and agreements, whether written or oral, material to and binding upon Melville or involving any restrictions on the operation of the business of Melville (each, a "Contract" and collectively, the "Contracts").  Each Contract is valid and binding, and, to the knowledge of AHM Acceptance, no party thereto is in breach or default thereof except as described on Schedule 2.  AHM Acceptance has delivered to Assignee copies of all written Contracts and a written description of any oral Contracts.

(ix)    Except as described on Schedule 3 attached hereto and except for any Proceeding (as hereinafter defined) released under this Agreement, to AHM Acceptance's knowledge, there is no pending or threatened action, suit, proceeding, claim, investigation, or inquiry (each, a "Proceeding") before or by any United States or non-United States federal, national, supranational, state, provincial, local or similar government, governmental, regulatory or administrative authority, branch, agency, department, commission, board, bureau, instrumentality or any court, tribunal, or arbitral or judicial body (including any grand jury), to restrain or prevent the consummation of the transactions contemplated herein, or that might affect the right of the Assignee to own the Assigned Interest or the right of the Assignee to operate the business of Melville, or otherwise affecting Melville, its assets, or business or involving this Sale and Assignment Agreement.  Except as described on Schedule 3 attached hereto, there is no Proceeding pending by Melville against others.  Except as described on Schedule 3 attached hereto, Melville has no indebtedness for monies owed to AHM Acceptance or any third party.

(x)    Schedule 4 attached hereto contains a true, complete and correct copy of the Melville LLC Agreement, including all amendments thereto.

(xi)    Melville has at all times been a single member limited liability company characterized as a disregarded entity for all federal and state

7

income tax purposes such that all items of income, gain, and loss of Melville have been included in the income, gain, and loss of AHM Acceptance and reported accordingly on returns and reports required to be filed by AHM Acceptance or the consolidated group of which AHM Acceptance is a member.  Melville will continue to be characterized as a disregarded entity and any income, gain, and loss from Melville will be included in all the required federal and state income tax return filings of AHM Acceptance or the consolidated group of which AHM Acceptance is a member through the Closing Date.   AHM Acceptance or the consolidated group of which AHM Acceptance is a member has paid or will pay all taxes, interest and penalties associated with the items of income, gain, and loss of Melville through the Closing Date.  Other than state franchise tax returns to maintain its existence in its state of organization or in any state where Melville is qualified to do business, as a disregarded entity, Melville was not required to and has not filed separate federal or state income or other tax returns.  Melville has or shall have (A) filed all required state franchise tax returns in each jurisdiction where Melville is qualified to do business that are due on or before the Closing Date and (B) paid all taxes and fees reflected on such franchise tax returns as well as  interest and penalties, if any, relating thereto.

(xii)     All of the Notes other than the Variable Funding Notes, to the extent issued, have been paid in full in accordance with their terms and have been fully released and discharged.

(xiii)    No broker, finder or investment banker is entitled to  any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Sale and Assignment Agreement based upon arrangements made by or on behalf of AHM Acceptance.

(xiv)    Melville does not have any employees and has not had any employees since the date of its formation.

(xv)     Melville has not been qualified to do business in any state other than Delaware and no state has asserted or notified Melville that Melville is required to be qualified to do business in such state.

(xvi)    None of the representations or warranties of AHM Acceptance in this Sale and Assignment Agreement or any related schedule or certificate delivered by AHM Acceptance to Assignee contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements herein or therein not misleading.

For purposes of this Sale and Assignment Agreement, the term "AHM Acceptance's knowledge" shall mean the actual knowledge of the employees of and consultants to AHM Acceptance set forth on Schedule 5 attached hereto after making a reasonable inquiry as to the accuracy of the representation or warranty in question.  For the avoidance of doubt, none of the individuals set forth on Schedule 5 attached hereto shall be deemed to be a party to this Sale and Assignment

Agreement and no such individual shall be personally liable to Assignee for any breach of this Sale and Assignment Agreement.

        b.      Assignee hereby represents and warrants to AHM Acceptance as of the date hereof and as of the Closing Date as follows:

        (i)      Assignee (A) is duly formed and is validly existing in good standing as a corporation under the laws of its jurisdiction of formation; and (B) has the corporate power and authority to execute and deliver, and perform Assignee's obligations under, this Sale and Assignment Agreement. This Sale and Assignment Agreement has been duly executed and delivered by Assignee.

        (ii)      This Sale and Assignment Agreement is valid, binding and enforceable against Assignee and its successors and assigns in accordance with its terms.

        (iii)      The execution and delivery of this Sale and Assignment Agreement has been duly authorized by all necessary corporate action on behalf of Assignee.

        (iv)      Assignee has the corporate power and authority to accept and hold the Assigned Interest as the sole member of Melville.

        (v)      There is no pending or, to Assignee's knowledge, threatened Proceeding before or by any United States or non-United States federal, national, supranational, state, provincial, local or similar government, governmental, regulatory or administrative authority, branch, agency, department, commission, board, bureau, instrumentality or any court, tribunal, or arbitral or judicial body (including any grand jury), to restrain or prevent the consummation of the transactions contemplated herein, or that might affect the right of the Assignee to own the Assigned Interest or the right of the Assignee to operate the business of Melville.

        (vi)      No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Sale and Assignment Agreement based upon arrangements made by or on behalf of Assignee.

For purposes of this Sale and Assignment Agreement, the term "Assignee's knowledge" shall mean the actual knowledge of Geoffrey L. Berman after making a reasonable inquiry as to the accuracy of the representation or warranty in question.

        6.      <u>Documents</u>. To the extent such documents and information actually exist and are in the possession of AHM Acceptance, AHM Acceptance shall use its commercially reasonable efforts to deliver to Assignee, no later than fifteen (15) days prior to Closing, all of the documents and information described on <u>Schedule 6</u> attached hereto (collectively, the "<u>Required Materials</u>"). Without limiting the foregoing, it shall be a condition to Assignee's obligation to consummate the transactions contemplated herein that the Required Materials are

9

delivered to Assignee three (3) business days prior to the Closing Date, and the Closing Date shall be adjourned as necessary to accomplish the foregoing. Within fourteen (14) business days after Closing (as hereinafter defined), AHM Acceptance shall transfer to Assignee (i) any and all Mortgage Loan documents in AHM Acceptance's possession and (ii) any and all records, agreements, statements, tax returns or other governmental filings pertaining to or binding upon Melville (other than Required Materials) that, in each case, are in AHM Acceptance's possession.

7.    Future Cooperation. Each of the parties hereto agrees to cooperate at all times from and after the date hereof with respect to all of the matters described herein and to execute and deliver such further assignments, releases, assumptions, amendments of the Melville LLC Agreement, notifications, and other documents as may be reasonably requested for the purpose of giving effect to, evidencing, or giving notice of the transaction contemplated by this Sale and Assignment Agreement. In addition, for a period of at least thirty (30) days following the Closing Date, AHM Acceptance shall make Kevin Nystrom or another employee of AHM Acceptance knowledgeable about Melville and its finances reasonably available during normal working hours to answer any of Assignee's questions pertaining thereto. All actual costs associated with any actions described in this Paragraph shall be paid for by the requesting party. AHM Acceptance shall notify Assignee if at any time prior to or after the Closing AHM Acceptance shall become aware of any information or documentation that would render any representation or warranty set forth in Section 5a. of this Sale and Assignment Agreement untrue in any material respect.   AHM Acceptance and any successor thereto shall provide Assignee with at least sixty (60) days' notice of the hearing to consider a final decree of the Bankruptcy Court closing the Chapter 11 Cases of the Debtors (the "Estate Termination Date").

8.    Closing. Subject to the terms and conditions of this Sale and Assignment Agreement, including, without limitation, Section 6 hereof, the closing (the "Closing") of the transaction contemplated hereby shall take place on the later to occur of (i) three (3) business days following Bankruptcy Court Approval, (ii) three (3) business days following the sale of the mortgage loans owned by Broadhollow (the "Closing Date"), or (iii) immediately after the transfer of Broadhollow to Assignee. The representations and warranties of the parties shall be true and correct in all materials respects as of the Closing Date as if made on the Closing Date except to the extent any such representations and warranties speak of a specified earlier date (in which case such representation and warranty shall be true and correct as of such specified earlier date). If, prior to the Closing Date, AHM Acceptance or Assignee, as the case may be, determines that a representation or warranty made by the other party is not true and correct in all material respects, then the sole remedy of the party asserting a breach of a representation or warranty shall be to terminate this Sale and Assignment Agreement, and if this Sale and Assignment Agreement is so terminated, this Sale and Assignment Agreement shall become void and of no further force or effect and no party shall have any liability or further obligation to any other party resulting from such termination. As of the Closing, (i) AHM Acceptance shall certify to Assignee that, to the knowledge of AHM Acceptance, there is no breach of any representation or warranty made by Assignee in this Sale and Assignment Agreement; and (ii) Assignee shall certify to AHM Acceptance that, to the knowledge of Assignee, there is no breach of any representation or warranty made by AHM Acceptance in this Sale and Assignment Agreement.

9.    Certain Expenses. All costs and expenses, including, without limitation, legal costs and fees and any capital gains or other income taxes, incurred in connection with this

Sale and Assignment Agreement and the consummation of the transactions hereunder shall be paid by the party incurring such expenses; provided, however, that costs and expenses, if any, of Melville incurred in connection with this Sale and Assignment Agreement and the consummation of the transactions hereunder shall be paid by AHM Acceptance.

10.    Entire Agreement.  This Sale and Assignment Agreement supersedes all prior agreements between the parties with respect to its subject matter, and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.  This Sale and Assignment Agreement may not be amended except by a written agreement executed by all parties hereto.

11.    Binding Effect.  This Sale and Assignment Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.  AHM Acceptance may not assign or transfer any right or obligation hereunder without the prior written consent of Assignee.  Assignee may assign or transfer its rights and obligations hereunder to any entity controlling, controlled by or under common control with Assignee.

12.    Execution in Counterparts.  This Sale and Assignment Agreement may be executed in one or more counterparts, by facsimile or by original signatures, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

13.    Survival of Representations and Warranties.  The representations and warranties contained in this Sale and Assignment Agreement and in any certificate or other instrument delivered pursuant hereto by any party shall survive the Closing until the earliest to occur of (a) the Estate Termination Date; and (b) the third anniversary of the Closing; provided, however that the representations and warranties of AHM Acceptance set forth in Sections 5.a(vii), 5.a(viii),  5.a(ix), 5.a(x), 5.a(xii), 5.a(xiv), and 5.a(xvi) of this Sale and Assignment Agreement (but only 5.a(xvi) to the extent it relates to another Limited Representation) and the representations and warranties of Assignee set forth in Section 5.b(v) of this Sale and Assignment Agreement (collectively, the "Limited Representations") shall only survive the Closing for a period of one (1) year, and damages payable to AHM Acceptance or Assignee, as the case may be, for any one or more breaches of any Limited Representation by the other party shall not exceed, in the aggregate, a maximum amount of Fifty Thousand and 00/100 Dollars ($50,000.00) (the "Limited Representations Damages Cap"), provided, however, that the Limited Representations Damages Cap shall not apply to any representation or warranty that was made fraudulently or was knowingly false.  All covenants contained in this Sale and Assignment Agreement to be performed at or after the Closing shall survive the Closing.

14.    Notices.  Any notice pursuant to this Sale and Assignment Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, and provided also that delivery after 4:00 p.m. Eastern Time on a business day, or on a day that is not a business day shall be deemed delivered on the following business day.  Notices may be given by counsel for

11

any party.  Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Sale and Assignment Agreement shall be as follows:

| If to AHM Acceptance: | American Home Mortgage Acceptance |
|---|---|
| | 538 Broadhollow Road |
| | Melville, New York 11747 |
| | Attention:  Kevin Nystrom |

| with a copy to: | Craig D. Grear, Esq. |
|---|---|
| | Young Conaway Stargatt & Taylor, LLP |
| | The Brandywine Building |
| | 1000 West Street, 17th Floor |
| | Wilmington, Delaware 19801 |
| | Phone:  (302)571-6612 |

| If to Assignee: | B&M Management Corp. |
|---|---|
| | c/o Development Specialists, Inc. |
| | Attention: Geoffrey L. Berman |
| | 333 S. Grand Avenue, Suite 4070 |
| | Los Angeles, California  90071-1544 |
| | Phone: (213) 617-2717 |

| with a copy to: | Allan Diamond, Esq. |
|---|---|
| | Diamond McCarthy LLP |
| | 909 Fannin, Suite 1500 |
| | Houston, Texas 77010 |
| | Phone:  (713) 333-5199 |

15.    <u>Governing Law</u>.  This Sale and Assignment Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to conflicts of laws principles.

16.    <u>Venue and Retention of Jurisdiction</u>.  Without limiting any party's rights to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

*{Signature Page Follows}*

12

IN WITNESS WHEREOF, the parties hereto have caused this Sale and Assignment Agreement to be duly executed as of the day and year first-above written.

AHM Acceptance:

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**


By: _____
      Name:
      Title:


Assignee:

**B&M MANAGEMENT CORP.**


By: _____
      Name:
      Title:

AGREED TO AND ACCEPTED solely with respect to the provisions of Section 3 of the foregoing Sale and Assignment Agreement as of the dates set forth below.

Melville:

**MELVILLE FUNDING, LLC**

**By:  B&M MANAGEMENT CORP., its Manager**

By: _____
      Name:
      Title:

Date:_____, 2010

Debtors:

**AMERICAN HOME MORTGAGE CORP.**

By: _____
      Name:
      Title:

Date:_____, 2010

**AMERICAN HOME MORTGAGE HOLDINGS, INC.**

By: _____
      Name:
      Title:

Date:_____, 2010

**AMERICAN HOME MORTGAGE
INVESTMENT CORP.**


By: _____
     Name:
     Title:

Date:_____, 2010


**AHM SV, INC. (F/K/A AMERICAN HOME
MORTGAGE SERVICING, INC.)**


By: _____
     Name:
     Title:

Date:_____, 2010


**AMERICAN HOME MORTGAGE
VENTURES LLC**


By: _____
     Name:
     Title:

Date:_____, 2010


**HOMEGATE SETTLEMENT SERVICES, INC.**


By: _____
     Name:
     Title:

Date:_____, 2010

**EXHIBIT A**
**CONSENT OF AMERICAN HOME MORTGAGE ACCEPTANCE**

## CONSENT OF AMERICAN HOME MORTGAGE ACCEPTANCE, INC.

The undersigned, being the sole member of Melville Funding, LLC, a Delaware limited liability company (the "Company"), hereby consents to the admission of **B&M MANAGEMENT CORP.**, a Delaware corporation, as a member of the Company.

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC.

By: _____
Name:
Title:

Date: _____, 2010

066585.1001

## EXHIBIT B
## ASSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTERESTS

## ASSIGNMENT AND ASSUMPTION
## OF MEMBERSHIP INTEREST

THIS ASSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTEREST ("Assignment") is made as of the __ day of _____, 2010, by American Home Mortgage Acceptance, Inc., a Maryland corporation ("Assignor"), to **B&M MANAGEMENT CORP.**, a Delaware corporation ("Assignee").

WHEREAS, Assignor is the owner of 100% of the membership interest of Melville Funding, LLC (the "Company"); and

WHEREAS, Assignor wishes to transfer all of its membership interest in the Company (the "Assigned Interest") to Assignee.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby sells, assigns, transfers, and conveys to Assignee all of its right, title, and interest in and to the Assigned Interest free and clear of all liens, pledges, claims, charges, security interests, and encumbrances of every kind and nature.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered as of the date first above-written.

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC.


By: _____
Name:
Title:


Assignee hereby accepts the Assigned Interest and agrees to be bound by all terms and conditions of the Company's limited liability company agreement as a member of the Company.

**B&M MANAGEMENT CORP.**


By:_____
Name:
Title:

## EXHIBIT C
## RESIGNATION OF MANAGER

## RESIGNATION OF MANAGER

The undersigned, being the manager of Melville Funding, LLC, a Delaware limited liability company (the "Company"), hereby resigns as manager of the Company.

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC.

By: _____
Name:
Title:

Pursuant to Section 4.1(d) of the Company's limited liability company agreement, **B&M MANAGEMENT CORP.**, a Delaware corporation, hereby agrees to act as successor manager of the Company and agrees to be bound by the terms of the Company's limited liability company agreement as manager of the Company.

**B&M MANAGEMENT CORP.**

By: _____
Name:
Title:

Date: _____, 2010

## SCHEDULE 1
## MATERIAL ASSETS

1. Cash held in Deutsche Bank Cash Management Account
2. Potential claims against market value swap counterparties

# SCHEDULE 2
# CONTRACTS

1.      Put Agreement dated as of May 27, 2004, by and between Melville Funding, LLC and Broadhollow Funding, LLC.

2.      Guarantee and Reimbursement Agreement dated as of May 27, 2004, by and between Broadhollow Funding, LLC and Melville Funding, LLC.

3.      Short Term Note Dealer Agreement dated as of May 27, 2004, by and between Broadhollow Funding, LLC, Melville Funding, LLC, American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., Lehman Brothers Inc., and Banc of America Securities LLC.

4.      Mortgage Loan Purchase and Servicing Agreement dated as of May 27, 2004, by and among Melville Funding, LLC, as Purchaser, American Home Mortgage Acceptance, Inc., as Seller, Columbia National, Incorporated, as Servicer, and American Home Mortgage Investment Corp., as Performance Guarantor.

5.      Security Agreement dated as of May 27, 2004, by and among Melville Funding, LLC, Deutsche Bank Trust Company Americas, as Indenture Trustee, and Deutsche Bank Trust Company Americas, as Collateral Agent.

6.      Base Indenture dated as of May 27, 2004, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas, as Indenture Trustee.

7.      Custodial Agreement dated as of May 27, 2004, by and among Melville Funding, LLC, as Issuer, American Home Mortgage Acceptance, Inc., as Seller, Columbia National, Incorporated, as Servicer, Deutsche Bank National Trust Company, as Custodian, and Deutsche Bank Trust Company Americas, as Collateral Agent.

8.      Series 2004-I Supplement to Base Indenture dated as of May 27, 2004, by and among Melville Funding, LLC, as Issuer, and Deutsche Bank Trust Company Americas, as Indenture Trustee and Paying Agent.

9.      Rated Bidder Letter dated May 27, 2004 by and among Melville Funding, LLC, Deutsche Bank Securities Inc., Columbia National, Incorporated, and Deutsche Bank Trust Company Americas.

10.      Securities Account Control Agreement dated as of May 27, 2004, by and between Melville Funding, LLC, as Issuer, and Deutsche Bank Trust Company Americas, as Securities Intermediary and Secured Party.

11.      ISDA Master Agreement dated as of May 27, 2004, by and between ABN Amro Bank N.V. and Melville Funding, LLC.

12.      ISDA Master Agreement dated as of May 27, 2004, by and between Bank of America, N.A. and Melville Funding, LLC.

13.     ISDA Master Agreement dated as of March 9, 2004, by and between Calyon New York Branch and Melville Funding, LLC.

14.     ISDA Master Agreement dated as of June 7, 2005, by and between Citibank N.A. and Melville Funding, LLC.

15.     Series 2007-I Supplement to Base Indenture dated as of May 27, 2004, dated as of March 14, 2007, by and between Melville Funding, LLC, as Issuer, and Deutsche Bank Trust Company Americas, as Indenture Trustee and Paying Agent.

16.     Designation of Special Member Agreement dated as of May 27, 2004,  by and between Melville Funding, LLC and National Corporate Research, Ltd.

Documents 1-15 are facility documents that relate to the issuance of the Notes.  These are generally in default.

## SCHEDULE 3
## PROCEEDINGS, CLAIMS AND LIABILITIES

1.      Proceedings against Melville

        NONE


2.      Proceedings in which Melville is asserting claims against other parties:

        a.      Bank of America swap litigation


3.      Liability for monies owed

        a.      Variable Funding Notes, in the amount of $2.1 million

        b.      Any money owed to Indenture Trustee, though invoices are paid by Broadhollow
                as received.  The recurring fees are as follows:

                - Annual and monthly fee to the Indenture Trustee
                - Monthly legal fees (Seward & Kissel LLP)
                - Miscellaneous fees

        c.      Annual fee to the Special Member of $1,000

**SCHEDULE 4**
**MELVILLE LLC AGREEMENT**

*{Attached}*

## LIMITED LIABILITY COMPANY AGREEMENT
## OF MELVILLE FUNDING, LLC

This Limited Liability Company Agreement (this "Agreement") of Melville Funding, LLC (the "Company"), dated as of May 27, 2004, is entered into by American Home Mortgage Acceptance, Inc., a Maryland corporation, in its capacity as Manager and Member (the "Manager" and the "Member") and Colleen A. De Vries (the "Special Member").

The Company was formed as a Delaware limited liability company on December 19, 2003 (the "Formation Date") by the filing of the Certificate of Formation with the Delaware Secretary of State.

The Member and the Special Member, by execution of this Agreement, hereby continue the Company, as a limited liability company in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.) (as amended from time to time, the "Act"), and this Agreement, and agree as follows:

## SECTION 1

## DEFINED TERMS

The terms set forth below shall have the indicated meanings. Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Mortgage Loan Purchase Agreement.

"Act" shall have the meaning specified in the recitals hereto.

"Agreement" means this Limited Liability Company Agreement, dated as of the date hereof, by and between the Member and the Special Member, as amended from time to time in accordance with the terms hereof, as the context requires.

"Bankruptcy" means, with respect to any Person, if such Person (i) makes an assignment for the benefit of creditors, (ii) files a voluntary petition in bankruptcy, (iii) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceedings, (iv) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, (v) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of this nature, (vi) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of the Person or of all or any substantial part of its properties, or (vii) if 120 days after the commencement of any proceeding against the Person seeking reorganization, arrangement, composition, readjustment, liquidation or similar relief under any statute, law or regulation, if the proceeding has not been dismissed, or if within 90 days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within 90 days after the expiration of any such stay, the appointment is not vacated. The foregoing definition of "Bankruptcy" is intended to replace and

shall supersede and replace the definition of "Bankruptcy" set forth in Sections 18-l01(l) and 18-304 of the Act.

"Base Indenture" means the Base Indenture, dated as of May 27, 2004, between the Company and Deutsche Bank Trust Company Americas, as indenture trustee, as amended, modified or supplemented from time to time.

"Certificate of Formation" means the certificate of formation of the Company, dated December 19, 2003, executed by James G. Leyden, Jr., as an authorized person, and any and all amendments and restatements thereto filed on behalf of the Company with the Delaware Secretary of State.

"Company" means Melville Funding, LLC, a Delaware limited liability company.

"Company Property" shall include the following: (i) the Mortgage Loans, (ii) the rights of the Company under the Interest Rate Swap and the other Facility Documents, (iii) any cash and other investments held in the Collection Account, Collateral Account and the other accounts maintained pursuant to the Mortgage Loan Purchase Agreement (excluding any Escrow Accounts established and maintained by the Servicer pursuant to the Mortgage Loan Purchase Agreement), the Indenture and the Security Agreement, (iv) certain rights under the Mortgage Loan Purchase Agreement, including the right to resell Mortgage Loans to the Seller under the circumstances described therein, (v) servicing rights to the Mortgage Loans and (vi) any and all proceeds of the foregoing.

"Escrow Account" shall have the meaning specified in the Mortgage Loan Purchase Agreement.

"Facility Documents" means the Mortgage Loan Purchase Agreement, the Indenture, the Security Agreement, the Performance Guarantee, this LLC Agreement, the Custodial Agreement, the Interest Rate Swap, the Guarantee and Reimbursement Agreement, the Put Agreement , the Series 2004-I Supplement to the Base Indenture, the Rated Bidder Letter, the Commitment Fee Agreement, and the ISDA Master Agreement, Schedule and Confirmation between ABN AMRO Bank N.V. and the Company, the ISDA Master Agreement, Schedule and Confirmation between Bank of America, N.A. and the Company and the ISDA Master Agreement, Schedule and Confirmation between Calyon New York Branch and the Company.

"Formation Date" shall have the meaning specified in the recitals hereto.

"Indemnified Persons" shall have the meaning specified in Section 9.1 hereof.

"Indenture" means the Base Indenture, together with all Supplements, as the same may be amended, modified or supplemented from time to time.

"Independent" shall have the meaning specified in Section 5.2 hereto.

"Manager" shall have the meaning specified in Section 4.1 hereto. The Manager is hereby designated as a "manager" of the Company within the meaning of Section 18-101(10) of the Act.

"Maximum Indemnity Amount" shall have the meaning set forth in the Security Agreement.

"Member" means American Home Mortgage Acceptance, Inc., as the initial member of the Company, and includes any Person admitted as an additional member of the Company or a substitute member of the Company pursuant to the provisions of this Agreement, each in its capacity as a member of the Company; provided, however, the term "Member" shall not include the Special Member.

"Mortgage Loan Purchase Agreement" means the Mortgage Loan Purchase and Servicing Agreement, dated as of the date hereof, by and among American Home Mortgage Acceptance, Inc., as Seller, Columbia National, Incorporated, as Servicer, the Company, as Purchaser, and American Home Mortgage Investment Corp., as Performance Guarantor, as the same may at any time be amended, modified or supplemented.

"Put Agreement" means the Put Agreement, dated as of May 27, 2004, by and between the Company and Broadhollow Funding, LLC, and consented to by the Collateral Agent.

"Rating Agency Confirmation" means with respect to any action, each Rating Agency rating any outstanding Variable Funding Note or any rated obligations of Broadhollow Funding, LLC shall have notified the Manager in writing that such action will not result in a reduction or withdrawal of the rating (in effect immediately before taking such action) of such outstanding Variable Funding Note or rated obligations of Broadhollow Funding, LLC.

"Secretary of State" means the Secretary of State of the State of Delaware.

"Servicer" shall mean Columbia National, Incorporated.

"Special Member" means Colleen A. De Vries, and her permitted successors and assigns. A Special Member shall only have the rights and duties expressly set forth in this Agreement.

"Special Purpose Entity" means an entity, whose organizational documents contain restrictions on its purpose and activities and impose requirements intended to preserve its separateness that are substantially similar to those set forth in the LLC Agreement of AHM SPV III, LLC, a Delaware limited liability company.

"Supplement" means a supplement or amendment to the Base Indenture complying (to the extent applicable) with the terms of Section 2.3 or Article 12 of the Base Indenture.

"Variable Funding Note" means the Variable Funding Asset-Backed Notes, Series 2004-I, dated May 27, 2004, issued by the Company, or any successor note issued by the Company.

## SECTION 2

## FORMATION AND NAME

**2.1    Formation**.  The Company has been formed as a limited liability company pursuant to the Act by the filing of the Certificate of Formation with the Secretary of State.  The rights and liabilities of the Member and the Special Member shall be determined pursuant to the Act and this Agreement.

**2.2    Name and Place of Business**.  The name of the Company heretofore formed and continued hereby is Melville Funding, LLC and the business of the Company shall be conducted solely under such name or any other name not including the name "American Home," to the extent permitted by law.  The principal place of business of the Company shall be located at c/o American Home Mortgage Acceptance, Inc., 520 Broadhollow Road, Melville, NY 11747, or such other location as may hereafter be determined by the Manager.  The Company may also maintain such other offices at such other places as the Manager may reasonably deem advisable.

**2.3    Registered Office/Agent**.  The registered office required to be maintained by the Company in the state of Delaware pursuant to the Act shall be One Rodney Square, 10th Floor, Tenth and King Streets, in the City of Wilmington, County of New Castle.  The name and address of the registered agent of the Company pursuant to the Act shall initially be RL&F Service Corp.  The Company may, upon compliance with the applicable provision of the Act, change its registered office or registered agent from time to time in the discretion of the Manager.

**2.4    Term; Dissolution**.  (a) The Company shall have perpetual existence and continue until dissolved in accordance with the <u>Section 18-801</u> of the Act; *provided, however*, to the fullest extent permitted by law the Company may not dissolve or wind up its affairs until after one year and one day following the payment in full of all outstanding securities issued by, or outstanding liabilities of, the Company, including the Variable Funding Note.  In the event of dissolution or other "termination event" of the Company, in connection with liquidating its assets, all HUD/FHA insured loans held by the Company shall be transferred to an approved mortgagee or lender.

(b)    Subject to Sections 2.4(a) and 3.3, the Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.  Upon the occurrence of any event that causes the last remaining member of the Company to cease to be a member of the Company or that causes the Member to cease to be a member of the Company (other than upon an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee in accordance with the Act, or the resignation of the Member and the admission of an additional member of the Company in accordance with the Act), to the fullest extent permitted by law, the personal

representative of such member is hereby authorized to, and shall, within 90 days after the occurrence of the event that terminated the continued membership of such member in the Company, agree in writing (A) to continue the Company and (B) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that terminated the continued membership of the last remaining member of the Company or the Member in the Company.

(c)    Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member or a Special Member shall not cause the Member or Special Member, respectively, to cease to be a member of the Company and upon the occurrence of such an event, the Company shall continue without dissolution.

(d)    Notwithstanding any other provision of this Agreement, each of the Member and the Special Members waives any right it might have to agree in writing to dissolve the Company upon the Bankruptcy of the Member or a Special Member, or the occurrence of an event that causes the Member or a Special Member to cease to be a member of the Company.

(e)    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(f)    The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

2.5    **Certificate of Formation**. In accordance with Section 18-201 of the Act, James G. Leyden, Jr., as an authorized person within the meaning of the Act, executed, delivered and filed the Certificate of Formation with the Secretary of State. Upon the filing of the Certificate of Formation with the Secretary of State, his powers as an "authorized person" ceased and the Manager became the designated "authorized person" within the meaning of the Act. The Manager and such other Persons as may be designated from time to time by the Manager are each hereby designated as an authorized person, within the meaning of the Act, to execute, deliver and file any amendments or restatements of the Certificate of Formation and any other certificates and amendments or restatements thereof necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

2.6    **Member Interest.**

(a)    The Member was admitted to the Company as the member of the Company, effective as of the Formation Date. The Member agrees to be bound by all of the terms and provisions of this Agreement and is entitled to exercise all rights and powers conferred upon the Member under this Agreement and the Act.

(b)     Subject to Sections 3.3. and 3.4, any action taken by the Member may be by written consent.

(c)     The Member shall be the only member of the Company that has a limited liability company interest in the Company which represents an interest in the profits, losses, and capital of the Company and the right to receive any distributions of Company assets. The Member owns a 100% interest in the profits, losses and capital of the Company. Except for the rights specifically granted herein to the Special Member, the Member shall hold all voting rights with respect to the Company. The Special Member shall have no interest in the profits, losses and capital of the Company and shall have no right to receive any distributions of Company assets. The Special Member shall be admitted as a member of the Company within the meaning of the Act upon execution and delivery of this Agreement or a counterpart signature page to this Agreement.

2.7     **Fiscal Year**.  The fiscal year of the Company for financial reporting shall be the calendar year ending December 31, except that the Company's first fiscal year shall commence on the date hereof and shall end on December 31, 2004 and, upon termination of the Company, the Company's last fiscal year shall be the period from the end of the fiscal year next preceding the date of such termination to the date on which the winding up of the Company is completed.

## SECTION 3

## PURPOSE AND POWERS

3.1     **Purpose**.  The purpose of the Company is to enter into the Facility Documents and to engage in the activities set forth in the Facility Documents and any other document or instrument related thereto, including without limitation any Securities Account Control Agreement, and any activities within the scope of <u>Section 3.2</u> of this Agreement.

3.2     **Powers**.  Subject to the limitations contained in this Agreement, the Company shall have all of the powers that may be possessed or exercised by a limited liability company organized under the Act and shall have the power and authority to take all actions deemed necessary, appropriate or advisable by the Member in furtherance of the Company's purpose. Subject to the limitations contained in this Agreement, the Company shall have the power to take any and all actions necessary or desirable to engage in the following activities:

(i)     to acquire Mortgage Loans and other Company Property;

(ii)     to arrange for the sale, securitization or other disposition of Mortgage Loans to FNMA, FHLMC, GNMA, any FHLB, third party purchasers or other Persons;

(iii)     to issue and sell notes and securities in each case the payments of which shall be used to purchase Mortgage Loans or to pay Obligations or to make any other payments contemplated by the Facility Documents or any other document or instruments related thereto;

(iv)    to pay the organizational, start-up and routine transactional expenses of the Company;

(v)    to make payments in respect of distributions, interest, principal, invested amounts and premium (if applicable) on notes and securities from the proceeds of Mortgage Loans and pursuant to the Interest Rate Swap and other hedge instruments and to make or receive payments in connection with the Interest Rate Swap and other hedge instruments;

(vi)    to assign, grant, transfer, pledge, mortgage and convey the Company Property to the Collateral Agent pursuant to the Security Agreement;

(vii)    to enter into and perform its obligations under this Agreement, the Facility Documents or any other document or instruments related thereto, including without limitation any Securities Account Control Agreement:

(viii)    to engage in such other activities as may be required in connection with conservation of the Company Property and the making of distributions to the Secured Parties; and

(ix)    to engage in any other activities which are necessary, suitable, convenient or appropriate to accomplish the foregoing or are incidental thereto or in connection therewith.

Notwithstanding any other provision of this Agreement, the Company, and the Member or the Manager or its designated agent on behalf of the Company, may execute, deliver and perform the obligations set forth in the Facility Documents and any other document or instrument (including any financing statement) related thereto or contemplated thereby and any amendment thereof (provided, any amendment thereof shall be subject to Section 7.2 hereof). The Manager or its designated agent is hereby authorized to enter into the agreements described in the preceding sentence on behalf of the Company, but such authorization should not be deemed a restriction on the power of the Manager or its designated agent to enter into other agreements on behalf of the Company that are necessary, suitable, convenient or appropriate to accomplish the enumerated purposes. In furtherance of this purpose, the Company shall have all powers necessary, suitable, convenient or appropriate for the accomplishment of the aforesaid purpose, subject to the limitations and restrictions set forth hereto alone or with others, as principal or agent.

3.3    **Limitations**. Notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Company shall not, without obtaining Rating Agency Confirmation:

(a)    engage in any business or activity other than those set forth in Section 3.1 and Section 3.2, and other than as permitted in the Facility Documents and any other document or instrument related thereto;

(b)    incur any indebtedness, or assume or guaranty any indebtedness of any other entity, other than as expressly permitted in the Facility Documents and any other document or instrument related thereto;

(c)    to the full extent permitted by law, dissolve, liquidate, or consolidate or merge with or into any other Person or sell, lease or otherwise transfer its properties and assets substantially as an entirety to any Person, other than as expressly permitted in the Facility Documents and any other document or instrument related thereto;

(d)    make or permit to remain outstanding any loan or advance to, or own or acquire any stock or securities of, any Person, except that the Company may invest in those investments permitted under the Facility Documents and may make any advance required or expressly permitted to be made pursuant to any provisions of the Facility Documents and permit the same to remain outstanding in accordance with such provisions;

(e)    buy or hold evidence of indebtedness issued by any other Person (other than cash or investment-grade securities), except as set forth in the Facility Documents;

(f)    form, acquire or hold any subsidiary (whether corporate, partnership, limited liability company or other) or own any equity interest in any other entity; or

(g)    permit any transfer of the Member's limited liability company interest in the Company.

(h)    sell to an Affiliate any Securitization Securities received by the Company in connection with a sale, securitization, or other disposition of Mortgage Loans to FNMA, FHLMC, GNMA, any FHLB, third party purchasers or other Persons unless such Securitization Securities are either (i) insured or guaranteed as to payments of interest and principal by a guarantor or insurer that is rated "AAA" by S&P and/or "Aaa" by Moody's or (ii) sold to an Affiliate that is a Special Purpose Entity. If such Securitization Securities are sold to an Affiliate that is a Special Purpose Entity, the contract of sale shall provide that, so long as any obligations remain outstanding under any rated notes of Broadhollow Funding, LLC, such Securitization Securities shall not be further transferred, except to an unaffiliated third party or to another Affiliate that is a Special Purpose Entity pursuant to a contract of sale containing the foregoing provision.

Notwithstanding any other provision of this Agreement, neither the Company, the Manager nor any designated agent on behalf of the Company or the Manager shall have the power to make an election to treat the Company as an association taxable as a corporation for U.S. Federal, state and local income tax purposes (including an election under Treasury Regulation §301.7701-3(c)).

### 3.4    Requirements.

(a)    Notwithstanding any other provisions of this Agreement and any provisions of law that otherwise so empowers the Company, the Company shall at all times:

(i)    maintain the Company's books, financial statements, accounting records and other corporate documents and records separate from those of the Manager, the Member or any Affiliate thereof or any other Person;

(ii)     not commingle the Company's assets with those of the Manager, the Member or any Affiliate thereof or any other Person (except as contemplated by the Facility Documents), and not hold itself out as being liable for the debts of another (except as contemplated by the Facility Documents):

(iii)     not be named, or enter into an agreement to be named, directly or indirectly, as a direct or contingent beneficiary or loss payee on any insurance policy covering the assets of any Affiliate;

(iv)     maintain its books of account and payroll (if any) separate from those of the Manager, the Member or any Affiliate thereof or any other Person;

(v)     act solely in its limited liability company name and through its own authorized officers and agents, invoices, checks and letterhead;

(vi)     separately manage its liabilities from those of the Manager, the Member or any Affiliate thereof and any other Person and pay its own liabilities, including all administrative expenses, from its own separate assets except as set forth in the Facility Documents; *provided* that the Manager, the Member or any Affiliate thereof may pay certain of the organizational costs of the Company, and the Company shall reimburse the Manager, the Member or any such Affiliate thereof for its allocable portion of shared expenses paid by the Manager, the Member or any such Affiliate thereof, including for shared office space and for services performed by an employee of an Affiliate;

(vii)     pay from the Company's assets all obligations and indebtedness of any kind incurred by the Company, except as set forth in the Facility Documents;

(viii)     at all times hold itself out to the public and all other Persons as a legal entity separate from the Manager, the Member or any Affiliate thereof and any other Person;

(ix)     maintain its bank accounts separate from any other Person;

(x)     maintain separate financial statements, showing its assets and liabilities separate and apart from those of any other Person and not to have its assets listed on the financial statement of any other Person; *provided, however*, that the Company's assets may be included in a consolidated financial statement of its Affiliate provided that (i) appropriate notations shall be made on such consolidated financial statements to indicate the separateness of the Company from such Affiliate and to indicate that the Company's assets and credit are not available to satisfy the debts and other obligations of such Affiliate or any other Person, except as set forth in the Facility Documents and (ii) such assets shall also be listed on the Company's own separate balance sheet;

(xi)     except for Capital Contributions from the Member to the Company and permitted distributions from the Company to the Member, to enter into transactions with the Manager and its Affiliates on commercially reasonable terms similar to those

available to unaffiliated parties in an arm's-length transaction and with strict observance of limited liability company formalities;

> (xii)    pay the Manager's fees and the salaries of its own employees, if any, from its own funds;

> (xiii)    not acquire the obligations or securities of the Member (other than capital contributions made by the Member);

> (xiv)    not pledge its assets for the benefit of any other Person, other than as contemplated in the Facility Documents;

> (xv)    correct any known misunderstanding regarding its separate identity and not identify itself as a department or division of any other Person; and

> (xvi)    maintain adequate capital and a sufficient number of employees in light of its contemplated business operations.

Failure of the Company, or the Member or Manager on behalf of the Company, to comply with any of the foregoing covenants or any other covenants contained in this Agreement shall not affect the status of the Company as a separate legal entity or the limited liability of the Member, the Manager or the Special Member.

(b)    The Company shall abide by all limited liability company formalities, necessary to maintain its separate existence, including the maintenance of current minute books, and the Company shall cause its financial statements to be prepared in accordance with generally accepted accounting principles in a manner that indicates the separate existence of the Company and its assets and liabilities, and not permit its assets to be listed on the financial statements of any other entity. Except as provided in this Agreement, the Facility Documents and any other document or instrument related thereto, the Company shall not assume the liabilities of the Manager, the Member or any Affiliate thereof, and shall not guarantee the liabilities of the Manager, the Member or any Affiliate thereof.

## SECTION 4

## MANAGEMENT

### 4.1    The Manager.

(a)    Pursuant to Sections 18-401 and 18-402 of the Act, and to the extent specified herein, the management of the Company shall be vested in a Manager. The Manager shall be American Home Mortgage Acceptance, Inc. (the "Manager"). The principal place of business of the Manager shall be located at 520 Broadhollow Road, Melville, NY 11747, or such other location as may be determined by the Manager.

(b)    The management of the Company is fully vested in the Manager, and except as otherwise provided in this Agreement, such Manager shall have full power and

authority to manage the business and affairs of the Company (including authority to bind the Company) in accordance with this Agreement (including but not limited to Sections 3.2, 3.3 and 3.4), the Facility Documents and any other document or instrument related thereto. The Manager hereby agrees to carry out and perform, as agent on behalf of the Company, the daily business activities of the Company and the obligations of the Company under the Facility Documents. All services to be furnished by the Manager may be furnished by an officer or employee of the Manager or any other person or agent designated or retained by it. It shall be the duty of the Manager to discharge (or cause to be discharged) all of its responsibilities pursuant to the terms of this Agreement, the Facility Documents and any other document or instrument related thereto and to administer the Company in the interest of the Member, subject to and in accordance with the provisions of this Agreement, the Facility Documents and any other document or instrument related thereto.

(c)     Notwithstanding any other provision of this Agreement, without the prior written consent of the Special Member and the Manager, acting together, the Company will not, and the Manager, the Member or any other Person on behalf of the Company may not, voluntarily dissolve or liquidate, in whole or in part, or institute proceedings to be adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against it, or file a petition seeking or consent to reorganization or relief under any applicable federal or state law relating to bankruptcy, or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of its property, or make any assignment for the benefit of creditors, or admit in writing its inability to pay its debts generally as they become due, or take action in furtherance of any such action; provided, the Manager may not authorize or take any of the foregoing actions unless there is a Special Member then serving in such capacity; and further provided, to the fullest extent permitted by law, the Company shall not dissolve or liquidate except as permitted under Section 3.3 (c) of this Agreement.

(d)     To the fullest extent permitted by law, including but not limited to Section 18-1101(c) of the Act, the Manager shall consider only the interests of the Company, including its respective creditors, in acting on the matters referred to in Section 4.1(c). Except as provided in the preceding sentence, in exercising its rights and performing its duties under this Agreement, the Manager shall have a fiduciary duty of loyalty and care similar to that of a director of a business corporation organized under the General Corporation Law of the State of Delaware. No resignation or removal of the Manager, and no appointment of a successor Manager shall be effective until the successor Manager shall have accepted his or her appointment by a written instrument, which may be a counterpart signature page to this Agreement.

### 4.2     Restrictions on Manager.

The Manager or its designated agent shall not take any action (a) that is inconsistent with the purposes, powers or limitations of the Company as set forth in Sections 3.2, 3.3 or 3.4, or (b) that, to the actual knowledge of a responsible officer of the Manager or its designated agent, would (i) affect the treatment of the Variable Funding Note as indebtedness for federal income or applicable state or local income or franchise tax purposes, (ii) be deemed to cause a taxable exchange of the Variable Funding Note for federal income or applicable state or

local income or franchise tax purposes or (iii) cause the Company or any portion thereof to be treated as a taxable mortgage pool or an association (or publicly traded partnership) taxable as a corporation for federal income tax purposes or cause the Company to incur tax liability.

### 4.3    Resignation or Removal of the Manager.

The Member may remove the Manager for failure to comply with the responsibilities of the Manager set forth in this Agreement, the Facility Documents and any other document or instrument related thereto and such failure to discharge (or cause to be discharged) all of its responsibilities pursuant to the terms of this Agreement, the Facility Documents and any other document or instrument related thereto has a material adverse effect on the financial or operating condition of the Company; *provided, however,* that the Member may not remove the Manager without obtaining Rating Agency Confirmation.

## SECTION 5

## SPECIAL MEMBER

### 5.1    Appointment; Duties.

Upon execution of this Agreement, Colleen A. De Vries shall be admitted as the Special Member of the Company (the "Special Member"). Pursuant to Section 18-301 of the Act, the Special Member shall not be required to make any capital contribution to the Company and shall not receive a limited liability company interest in the Company. Notwithstanding the last sentence of Section 18-402 of the Act and except as expressly provided in this Agreement, the Special Member may not bind the Company. In the event a Special Member ceases to be admitted to the Company, the Manager shall, as soon as practicable, appoint a replacement Special Member, which Person shall be admitted to the Company as Special Member upon its execution of a counterpart to this Agreement. No Special Member may resign from the Company or transfer its rights as Special Member unless a successor Special Member has been admitted to the Company as Special Member by executing a counterpart to this Agreement. To the fullest extent permitted by law, including Section 18-1101(c) of the Act, the Special Member shall consider only the interests of the Company, including its respective creditors, in acting or otherwise voting on the matters referred to in Section 4.1(c).

### 5.2    Independence of Special Member.

Until the payment in full of all outstanding securities issued by, or outstanding liabilities of the Company, the Company shall at all times have a Special Member and the Special Member shall be an Independent Special Member. An "Independent" Special Member shall be an individual who is not at the time of his appointment or at any time while serving as Independent Special Member, and shall not have been at any time during the preceding five years, a director, officer, trustee, supplier, contractor, manager, employee of American Home Mortgage Acceptance, Inc. or an Affiliate thereof, or of any creditor thereof, the beneficial owner of more than 1,000 shares in the aggregate of all classes of common stock of American Home Mortgage Acceptance, Inc. or an Affiliate thereof, or if greater, such number of shares the value of which constitutes more than 5% of the market capitalization of all outstanding shares of

American Home Mortgage Acceptance, Inc. or an Affiliate thereof or any Person who controls, directly, indirectly or otherwise American Home Mortgage Acceptance, Inc. or an Affiliate thereof; *provided, however,* such limitations shall not apply to the shares held indirectly through open end investment funds, closed end investment funds, unit investment trusts or other similar investment vehicles; *provided, further,* that the limitations set forth above shall not apply to a person serving as an independent special member, independent director, or in a similar capacity, of an Affiliate of the Company. The term "creditor" shall mean a financial institution to which American Home Mortgage Acceptance, Inc. or an Affiliate thereof has outstanding indebtedness for borrowed money in a sum sufficiently large as would reasonably be expected to influence the judgment of the proposed Independent Special Member adversely to the interests of the Company when its interests are adverse to those of American Home Mortgage Acceptance, Inc. or an Affiliate thereof.

## SECTION 6

## ADMISSION OF THE MEMBER;
## CAPITAL CONTRIBUTION

American Home Mortgage Acceptance, Inc., as the Member, is admitted as the Member of the Company with an interest of 100%. The Member shall be responsible for, on the date of this Agreement, an equity contribution to the Company in an amount equal to $1.00.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time in its sole and absolute discretion. The provisions of this Agreement, including this Section 6, are intended to benefit the Member and Special Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member and the Special Members shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

## SECTION 7

## CERTAIN ACTIONS BY THE MEMBER

**7.1    Prior Notice to the Member with Respect to Certain Matters**. The Manager shall not initiate any material claim or lawsuit by the Company or settle any action, claim or lawsuit brought by or against the Company unless, at least fifteen (15) days before the taking of such action, the Manager shall have notified the Member, the Special Member and each Rating Agency rating any outstanding notes or securities of the Company in writing of the proposed action.

**7.2    Action by the Member with Respect to Certain Matters**. The Manager may not at any time, without written instructions signed by the Member, (a) file an amendment to the Certificate of Formation, (b) amend, change, modify or terminate any Facility Document,

except to cure any ambiguity or to amend or supplement any provision in a manner that would not materially adversely affect the interests of the Member, (c) except as expressly provided in the Facility Documents, sell the Mortgage Loans or any interest thereto, before or after the termination of the Security Agreement or (d) increase Reimbursable Expenses in excess of the Maximum Indemnity Amount.

**7.3 [Reserved]**

**7.4 Restrictions on the Member's Power**. The Member shall not direct the Manager to take or refrain from taking any action if such action or inaction would be contrary to any applicable law, or any obligation of the Company or the Manager under this Agreement or any of the other Facility Documents or would be contrary to <u>Sections 3.2</u>, <u>3.3</u> or <u>3.4</u> nor shall the Manager be obligated to follow any such direction, if given.

**7.5 Action by the Member with respect to the Company**. Notwithstanding the last sentence of <u>Section 18-402</u> of the Act and except as expressly provided in this Agreement, the Member may not bind the Company. Except as expressly provided herein, any written notice of the Member delivered pursuant to this Agreement shall be effective if signed by the Member.

**7.6 Dealings with the Member**. Whenever any action or consent by the Member is required hereunder, or under any other document entered into by the Company, the Manager shall prepare all necessary documents, and take all other actions as may be necessary or appropriate under the circumstances.

**7.7 Action by the Member with respect to Notes**. In connection with the issuance of any Series of Notes, the Manager may not, without the prior written consent of the Member, expand the Events of Default as set forth in the Indenture to include any event of default that is more restrictive than those set forth in the Indenture.

## SECTION 8

## COMPENSATION

The Member shall not receive compensation for services rendered to the Company. The Manager shall receive such compensation for its services as may be agreed from time to time.

## SECTION 9

## INDEMNIFICATION

**9.1 Duty of Care and Loyalty**. Except as otherwise required by law, none of the Manager, the Member, the Special Member or any Affiliate thereof, nor any of the directors, officers, partners, members, employees, shareholders, assigns, representatives or agents of the foregoing (collectively, the "<u>Indemnified Persons</u>") shall be liable, responsible or accountable in damages or otherwise to the Company for any loss, liability, damage, cost or other expense

(including reasonable attorneys' fees) incurred by reason of any act or omission or any alleged act or alleged omission performed or omitted by such Indemnified Person if such Indemnified Person acted in good faith and in a manner it reasonably believed to be in, or not opposed to, the interests of the Company; *provided*, that such Person is not exculpated for any loss, liability, damage, cost or other expense (including reasonable attorneys' fees) resulting from its own fraud, willful misconduct or gross negligence with respect to such act or omission or alleged act or alleged omission. Each Indemnified Person shall be entitled to rely in good faith on the advice of counsel, public accountants and other independent advisors experienced in the matter at issue.

### 9.2    Indemnification.

(a)    To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless each of the Indemnified Persons from and against all liabilities, losses (including amounts paid in settlement), costs, damages and expenses, whether or not matured or unmatured and whether or not asserted or brought due to contractual or other restrictions (including all legal or other expenses reasonably incurred in investigating or defending against any such liability, loss, cost or damage), suffered by virtue of any acts or omissions or alleged acts or alleged omissions arising out of such Indemnified Person's or any other Indemnified Person's activities in connection with the establishment, management or operations of the Company if such Indemnified Person acted in good faith and in a manner it reasonably believed to be in, or not opposed to, the interests of the Company; *provided*, that such Indemnified Person is not indemnified for any loss, liability, damage, cost or other expense (including reasonable attorneys' fees) resulting from its own fraud, willful misconduct or gross negligence with respect to such acts or omissions or alleged acts or alleged omissions; provided, further, that any indemnity under this Section 9 by the Company shall be provided out of and to the extent of Company assets only, and the Member, the Manager and the Special Member shall not have personal liability on account thereof. The termination of any action, suit or proceeding by judgment, order or settlement shall not, of itself, create a presumption that a Person did not act in good faith and in a manner reasonably believed to be in, or not opposed to, the interests of the Company. Any indemnification rights provided for in this Section shall be retained by any removed, resigned or withdrawn Manager, Special Member or the Member.    Any indemnification rights provided for in this Section also shall be retained by any Person who has acted in the capacity of director, officer, partner, member, employee, shareholder, assign, representative or agent of the Manager, Special Member or the Member or any Affiliate thereof following the resignation, withdrawal or removal of such Person from such capacity or of the Manager, Special Member or the Member. Any Indemnified Person entitled to indemnification from the Company hereunder, shall obtain the written consent of the Manager or its designated agent prior to entering into any compromise or settlement that would result in an obligation of the Company to indemnify such Indemnified Person.

(b)    To the fullest extent permitted by law, the Company shall, from time to time as incurred, advance all expenses (including legal fees and expenses of investigation) incurred by an Indemnified Person in defending any claim, demand, action, suit or proceeding prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Indemnified Person to repay such amounts

if it shall be determined that the Indemnified Person is not entitled to be indemnified as authorized in this Section.

(c)    Amounts indemnified pursuant to this Section shall only be recoverable in accordance with the terms of the Security Agreement.

(d)    The rights of indemnification and advancement of expenses provided for in this Section shall survive the dissolution of the Company and the termination of this Agreement, shall be cumulative of, and in addition to, any and all rights to which any Indemnified Person may otherwise be entitled by contract or as a matter of law or equity and shall inure to the benefit of each Indemnified Person's heirs, executors, managers, personal representatives, successors and assigns.

(e)    Notwithstanding the foregoing provisions, any indemnification set forth herein shall be fully subordinate to the Variable Funding Note and, to the fullest extent permitted by law, shall not constitute a claim against the Company in the event that the Company's cash flow is insufficient to pay its Obligations.

## SECTION 10

## MISCELLANEOUS

### 10.1    Supplements and Amendments.

(a)    Subject to clause (c) below, this Agreement may be amended in writing by the Manager, with the consent of the Member and receipt of Rating Agency Confirmation; *provided, however*, that the Company may amend this Agreement without the consent of the Member for one or more of the following purposes: (A) to add to the covenants and agreements pursuant to this Agreement for the benefit of the holders of the Notes; (B) to cure any ambiguity or to correct or supplement any defective or inconsistent provision contained in this Agreement or in any amendment to this Agreement; or (C) to add such provisions with respect to matters or questions arising under this Agreement as may be necessary or desirable and not inconsistent with this Agreement; *provided, further*, that such action shall not adversely affect in any material respect the interests of any holder of any rated Note of the Company; and *provided, finally*, that an Opinion of Counsel shall be furnished to the Manager or its designated agent to the effect that such amendment (i) will not materially adversely affect the federal or any applicable state income or franchise taxation of any outstanding notes or security of the Company and (b) will not cause the Company to be taxable as a corporation for federal or any applicable state income or franchise tax purposes. The Secretary of HUD shall be notified of any amendments to this Agreement which would affect the Company's action under any HUD/FHA administered mortgage insurance program.

(b)    Promptly after the execution of any such amendment or consent, the Manager or its designated agent shall furnish a copy of such amendment or consent (including those obtained or effected hereby) to the Indenture Trustee, the Collateral Agent, the Depositary, the Short Term Note Dealer and any Rating Agency rating any outstanding notes and securities of the Company.

(c)     Notwithstanding any other provision of this Agreement, the Company shall not amend Sections 1, 2.2, 2.4, 2.5, 2.6, 3.1, 3.2, 3.3, 3.4, 4.1(c), 4.1(d), 5, 6, 7.1, 9, 10.1, 10.2, 10.3, 10.7, 10.8, 10.9, 10.13, and 10.14 of this Agreement, without the consent of each member, including the affirmative vote of the Special Member and without obtaining Rating Agency Confirmation.

(d)     Each party to this Agreement (whether by execution or pursuant to Section 18-101(7)(a) of the Act) agrees that (i) it will be bound by any amendment to this Agreement adopted in accordance with this Section 10.1 whether or not such Person voted in favor of the amendment, and (ii) any such amendment may be executed on behalf of such Person by the Manager.  Each party to this Agreement (whether by execution or pursuant to Section 18-l01(7)(a) of the Act) hereby appoints the Manager and its officers, employees and agents as its true and lawful attorney-in-fact, in its name, place and stead, to make, execute, acknowledge and file any and all documents or other instruments that the Manager deems necessary or advisable to perform its obligations under this Agreement or that the Manager is authorized to make, execute, acknowledge or tile pursuant to the terms of this Agreement, including, without limitation, (i) any duly adopted amendment or restatement of this Agreement or the Certificate of Formation, (ii) all certificates and other instruments that the Manager deems appropriate or necessary to form and qualify, or continue the qualification of, the Company as a limited liability company in the State of Delaware and all jurisdictions in which the Company may conduct business or own property, and (iii) all conveyances and other instruments or documents that the Manager deems appropriate or necessary to effect or reflect the dissolution, liquidation and termination of the Company pursuant to the terms of this Agreement (including a certificate of cancellation).  Each party to this Agreement (whether by execution or pursuant to Section 18-101(7)(a) of the Act) agrees that the power of attorney granted under this Section 10.1 is coupled with an interest, shall be irrevocable, and shall survive and not be affected by subsequent death, dissolution, disability, bankruptcy or incapacity of such Person.

**10.2     No Legal Title to Company Property in the Member.**  The Member shall not have legal title to any part of the Company Property or any specific assets of the Company.  The interests of the Member in the Company is personal property.  Except as provided in the Security Agreement, the Member shall not be entitled to receive distributions with respect to their limited liability company interests, and the Company shall not be permitted to make a distribution to the Member on account of its interest in the Company if such distribution would violate Section 18-607 of the Act or any other applicable law.  No transfer, by operation of law or otherwise, of any right, title, or interest of the Member to and in their membership interests shall operate to terminate this Agreement or entitle any transferee to an accounting or to the transfer to it of legal title to any part of the Company Property.

**10.3     Limitation on Rights of Others.**  The provisions of this Agreement are solely for the benefit of the Manager or its designated agent, the Member, the Special Member and, to the extent expressly provided hereto, the Secured Parties, and nothing in this Agreement, whether express or implied, shall be construed to give to any other Person any legal or equitable right, remedy or claim in the Company Property or under or in respect of this Agreement or any covenants, conditions or provisions contained herein.  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Manager, the Special Member or the Member.  Except to the extent expressly provided

hereto with respect to the Secured Parties, nothing in this Agreement shall be deemed to create any right in any Person not a party hereto (whether by execution or pursuant to Section 18-101(7)(a) of the Act), and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person.

       **10.4    Notices**. All demands, notices, instructions and other communications shall be in writing (including telecopied or telegraphic communications) and shall be personally delivered, mailed or transmitted by telecopy, telegraph or electronic messaging, respectively, addressed as set forth below:

> If to the Member or the Manager:
>
> 520 Broadhollow Road (through September 30, 2004)
> 538 Broadhollow Road (beginning October 1, 2004)
> Melville, NY 11747
> Attention: Thomas McDonagh
> Facsimile Number: 516-949-3942
> Telephone Number: 516-622-8960
>
> If to the Special Member:
>
> Colleen A. De Vries
> National Corporate Research, Ltd.
> 225 West 34th Street, Suite 910
> New York, New York 10122
>
> Tel. No: (212) 947-7200
> Fax No.: (212) 564-6083
> E-mail address: Colleend@nationalcorp.com

       **10.5    Severability**. If any provision of this Agreement, or the application thereof to any Person or circumstance, shall be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforceable to the extent permitted by law.

       **10.6    Counterparts**. This Agreement may be signed in any number of counterparts with the same effect as if the signatures thereto and hereto were upon the same instrument.

       **10.7    Successors and Assigns**. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Manager and its successors, the Member and its successors and permitted assigns and the Special Member and its successors and assigns, all as herein provided.

       **10.8    No Petition**. The Manager or its designated agent and the Member hereby covenants and agrees that, prior to the date which is one (1) year and one (1) day after the

payment in full of the Variable Funding Note, to the extent it is a creditor of the Company and solely in its capacity as a creditor of the Company, it will not institute against, or join with any other Person in instituting against, the Company or American Home Mortgage Acceptance, Inc. any involuntary bankruptcy, reorganization, arrangement, insolvency or liquidation proceedings, or other proceedings under the laws of any jurisdiction.  This <u>Section 10.8</u> shall survive termination of this Agreement.

10.9    **Limited Recourse**.  Notwithstanding anything to the contrary contained in this Agreement, the obligations of the Company under this Agreement and all Facility Documents and document or instrument related thereto, are solely the obligations of the Company and shall be payable solely to the extent of funds received by and available to the Company in accordance with the Security Agreement.  No recourse shall be had for the payment of any amount owing in respect of any obligation of, or claim against, the Company arising out of or based upon this Agreement or any other Facility Document against the Manager, the Member, the Special Member or any employee, officer or Affiliate thereof and, except as specifically provided herein and in the other Facility Documents, no recourse shall be had for the payment of any amount owing in respect of any obligation of, or claim against, the Company based on or arising out of this Agreement against American Home Mortgage Acceptance, Inc., the Manager or their designated agents, or any stockholder, holder of a member interest, employee, officer, director, incorporator or Affiliate thereof; *provided*, *however*, that the foregoing shall not relieve any such Person or entity from any liability such person might otherwise have as a result of gross negligence, or the fraudulent actions and omissions taken by them.

10.10    **Headings**.  The headings of the various Articles and Sections hereto are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

10.11    **Governing Law; Waiver of Jury Trial**.

(a)    This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to principles of conflicts of laws.

(b)    THE PARTIES HERETO HEREBY AGREE THAT NO PARTY SHALL REQUEST A TRIAL BY JURY IN THE EVENT OF LITIGATION BETWEEN THEM CONCERNING THIS AGREEMENT OR ANY CLAIMS OR TRANSACTIONS IN CONNECTION HEREWITH, AND ANY SUCH RIGHT TO TRIAL BY JURY IS EXPRESSLY WAIVED. EACH OF THE PARTIES HERETO HEREBY ACKNOWLEDGE THAT SUCH WAIVER IS MADE WITH FULL UNDERSTANDING AND KNOWLEDGE OF THE NATURE OF THE RIGHTS AND BENEFITS WAIVED HEREBY.

10.12    **Submission to Jurisdiction; Waivers**.  The Member hereby irrevocably and unconditionally submits to the non-exclusive jurisdiction and venue of the courts of the State of New York and of the United States federal courts for the Southern District of New York, and the appellate courts from any court thereof, for the purposes of any action arising under this Agreement or regarding any amounts payable under this Agreement, and each hereby agrees that any disputes relating to this Agreement or regarding any amounts payable under this Agreement

may be resolved in the courts of the State of New York or of the United States for the Southern District of New York. Each of the foregoing parties hereby stipulates that the venues referenced in this Section 10.12 are convenient, and each waives any objection that it may now or hereafter have relating to the venue or convenience of such courts. Enforcement of final, nonappealable judgments received in any of the foregoing courts may also be sought in any other appropriate court or jurisdiction.

10.13  **Limited Liability.**Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Manager nor the Special Member shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Special Member or Manager of the Company.

10.14  **Waiver of Partition.**  Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each of the Member and the Special Member hereby irrevocably waives any right or power that such Person might have to cause the Company or any of its assets partitioned, to cause the appointment of a receiver for all or any portion of the assets of the Company, to compel any sale of all or any portion of the assets of the Company pursuant to any applicable law or to file a complaint or to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company.

10.15  **Entire Agreement.**  This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

10.16  **Binding Agreement.**    Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member by the Special Member and the Manager, in accordance with its terms.  In addition, the Special Member and the Manager shall be intended beneficiaries of this Agreement.

10.17  **Effectiveness.**  Pursuant to Section 18-201(d) of the Act, this Agreement shall be effective as of the time of the filing of the Certificate of Formation with the Secretary of State on December 19, 2003.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., as Member and as Manager

By: _____
    Name:
    Title:

COLLEEN DEVRIES, as Special Member

By: _____
    Name:
    Title:

[LLC Agreement]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

AMERICAN HOME MORTGAGE
ACCEPTANCE, INC., as Member and as Manager


By: _____
    Name:
    Title:


COLLEEN DEVRIES, as Special Member


By: _____
    Name:
    Title:

TABLE OF CONTENTS

Page

SECTION 1

DEFINED TERMS

SECTION 2

FORMATION AND NAME

2.1   Formation ...................................................................................................4
2.2   Name and Place of Business ........................................................................4
2.3   Registered Office/Agent ..............................................................................4
2.4   Term; Dissolution ........................................................................................4
2.5   Certificate of Formation ..............................................................................5
2.6   Member Interest ...........................................................................................5
2.7   Fiscal Year ...................................................................................................6

SECTION 3

PURPOSE AND POWERS

3.1   Purpose .........................................................................................................6
3.2   Powers ...........................................................................................................6
3.3   Limitations ....................................................................................................7
3.4   Requirements .................................................................................................8

SECTION 4

MANAGEMENT

4.1   The Manager ................................................................................................10
4.2   Restrictions on Manager .............................................................................11
4.3   Resignation or Removal of the Manager ....................................................12

SECTION 5

SPECIAL MEMBER

5.1   Appointment; Duties ....................................................................................12
5.2   Independence of Special Member ...............................................................12

SECTION 6

ADMISSION OF THE MEMBER;
CAPITAL CONTRIBUTION

SECTION 7

CERTAIN ACTIONS BY THE MEMBER

7.1  Prior Notice to the Member with Respect to Certain Matters ..............................................13
7.2  Action by the Member with Respect to Certain Matters ......................................................13
7.3  [Reserved] ............................................................................................................................14
7.4  Restrictions on the Member's Power ...................................................................................14
7.5  Action by the Member with respect to the Company ..........................................................14
7.6  Dealings with the Member....................................................................................................14
7.7  Action by the Member with respect to Notes ......................................................................14

SECTION 8

COMPENSATION

SECTION 9

INDEMNIFICATION

9.1  Duty of Care and Loyalty ....................................................................................................14
9.2  Indemnification ....................................................................................................................15

SECTION 10

MISCELLANEOUS

10.1  Supplements and Amendments............................................................................................16
10.2  No Legal Title to Company Property in the Member ..........................................................17
10.3  Limitation on Rights of Others ...........................................................................................17
10.4  Notices .................................................................................................................................18
10.5  Severability ..........................................................................................................................18
10.6  Counterparts.........................................................................................................................18
10.7  Successors and Assigns........................................................................................................18
10.8  No Petition ...........................................................................................................................18
10.9  Limited Recourse .................................................................................................................19
10.10  Headings ............................................................................................................................19
10.11  Governing Law; Waiver of Jury Trial ..............................................................................19
10.12  Submission to Jurisdiction; Waivers.................................................................................19
10.13  Limited Liability ...............................................................................................................20
10.14  Waiver of Partition............................................................................................................20

10.15   Entire Agreement ............................................................................................20
10.16   Binding Agreement ..........................................................................................20
10.17   Effectiveness ...................................................................................................20

## SCHEDULE 5
## KNOWLEDGE PARTIES

| Employee/Consultant Name | Department/Task |
|---|---|
| Belinda Jones | A/P |
| Paul Moran | A/P, Payroll, Benefits |
| Pina Ruperto | Accounting |
| Catherine Cassagnau-Lundie | Accounting |
| Eileen Wanerka | Claims |
| Damian Voulo | Claims, Loan Disposition |
| Antonio Marra | Files |
| Chris Cavaco | IT |
| Jason Burzenski | IT |
| Frank Policano | IT |
| Carlo Colagiacomo | Legal |
| Simon Sakamoto | Securities |
| Renne Parker | Tax |
| Susan Seoylemezian | Tax |
| Andy Dokos | Treasury |
| | |
| Kevin Nystrom (Zolfo Cooper) | CRO |
| Bret Fernandes (Zolfo Cooper) | Director of Restructuring |
| Scott Martinez (Zolfo Cooper) | |

## SCHEDULE 6
## REQUIRED MATERIALS

1.    The following unaudited financial statements:

    a.    Balance sheets for 2007, 2008, and 2009

    b.    Profit and Loss statements for 2007, 2008, and 2009

    c.    Any interim balance sheets or Profit and Loss statements prepared after December 31, 2009 and prior to the Closing

    d.    Trial balances of December 31, 2009

2.    Base Indenture, dated May 27, 2004, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas

3.    Series 2004-I Supplement to Base Indenture, dated May 27, 2004, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas

4.    Series 2007-1 Supplement to Base Indenture, dated March 14, 2007, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas

5.    Swap documents and all amendments

6.    All other documents listed on Schedule 2