## Exhibit D

**Blackline of Melville Sale Agreement**

## SALE, ASSIGNMENT AND TRANSFER OF LIMITED LIABILITY COMPANY INTEREST OF MELVILLE FUNDING, LLC

This Sale, Assignment and Transfer of Limited Liability Company Interest of Melville Funding, LLC (this "Sale and Assignment Agreement") dated effective as of _____, 2010, is entered into by and between **AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**, a Maryland corporation ("AHM Acceptance"), and **B&M MANAGEMENT CORP.**, a Delaware corporation ("Assignee").

## RECITALS

WHEREAS, AHM Acceptance, together with American Home Mortgage Corp., a New York corporation, American Home Mortgage Holdings, Inc., a Delaware corporation, American Home Mortgage Investment Corp., a Maryland corporation, AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation, American Home Mortgage Ventures LLC, a Delaware limited liability company, and Homegate Settlement Services, Inc., a New York corporation (collectively, the "Debtors"), filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code on August 6, 2007, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, the Debtors' bankruptcies are being jointly administered under Case No. 07-11047 (CSS);

WHEREAS, Melville Funding, LLC, a Delaware limited liability company ("Melville"), was formed on December 19, 2003;

WHEREAS, pursuant to the Limited Liability Company Agreement of Melville (the "Melville LLC Agreement"), dated as of May 27, 2004, AHM Acceptance is the sole equity member and manager of Melville;

WHEREAS, Melville, as issuer, and Deutsche Bank Trust Company Americas, in its capacity as Indenture Trustee (the "Indenture Trustee"), are parties to that certain Base Indenture dated as of May 27, 2004 (the "Base Indenture"), for the issuance from time to time of one or more series of Melville's Residential Mortgage-Backed Notes (the "Senior Notes"), one or more series of Melville's Variable Funding Notes (the "Variable Funding Notes"), and one or more series of Melville's Residential Mortgage-Backed Subordinated Notes (the "Subordinated Notes," and collectively with the Senior Notes and the Variable Funding Notes, the "Notes"), issuable as provided in the Base Indenture;

WHEREAS, Melville, as issuer, the Indenture Trustee, and Deutsche Bank Trust Company Americas, in its capacity as Collateral Agent (the "Collateral Agent") are parties to that certain Security Agreement dated as of May 27, 2004 (the "Security Agreement"), providing security for the Notes;

WHEREAS, Melville, as issuer, AHM Acceptance, as seller, American Home Mortgage Servicing, Inc. (f/k/a Columbia National, Incorporated), as Servicer, the Collateral Agent, and Deutsche Bank Trust Company Americas, in its capacity as Custodian (the "Custodian") are parties to that certain Custodial Agreement dated as of May 27, 2004 (the

1

"Custodial Agreement"), which provides that the Custodian will act as bailee for certain mortgage notes, mortgages, and assignment of mortgages;

WHEREAS, Melville, as issuer, Collateral Agent, and Deutsche Bank Trust Company Americas, in its capacity as Securities Intermediary (the "Securities Intermediary") are parties to that certain Securities Account Control Agreement dated as of May 27, 2004 (the "Securities Account Control Agreement");

WHEREAS, Melville, as issuer, Indenture Trustee, and Deutsche Bank Trust Company Americas, in its capacity as Paying Agent for the benefit of the Series 2004-I Variable Funding Noteholder (the "Paying Agent") are parties to that certain Series 2004-I Supplement dated as of May 27, 2004 (the "Series 2004-I Supplement"), which appoints Deutsche Bank Trust Company Americas the Series 2004-I Variable Funding Note Calculation Agent (the "Calculation Agent");

WHEREAS, capitalized terms used but not defined in this Sale and Assignment Agreement shall have the meaning specified in the Base Indenture;

WHEREAS, Variable Funding Notes were issued to Broadhollow Funding, LLC, a Delaware limited liability company ("Broadhollow");

WHEREAS, the Indenture Trustee, the Collateral Agent, the Custodian, the Securities Intermediary, the Paying Agent, and the Calculation Agent (collectively, and only in such capacities, "DBTCA") and/or the holders of the Variable Funding Notes have claims against Melville for, *inter alia*, the portion of their Notes that remain unpaid, and may have additional claims against AHM Acceptance, including, but not limited to, in its capacity as member and/or manager of Melville or against certain of the Debtors for various reasons;

WHEREAS, the Debtors have or may be entitled to assert claims against Melville, the Indenture TrusteeDBTCA, and one or more of the holders of the Variable Funding Notes;

WHEREAS, the Debtors currently hold the Miscellaneous Funds Escrow Account (as defined in the Order Approving And Authorizing the Stipulation Between the Debtors and Calyon New York Branch, as Administrative Agent [Docket No. 3918]);

WHEREAS, Melville has certain claims against Bank of America and other market value swap providers for failing to make payments under a swapcertain swaps, which claims, if liquidated, would be available to satisfy unpaid Notes;

WHEREAS, a full and complete list of the loans and/or real estate owned by Melville (identified by loan number) is set forth on Schedule 1 hereto (the "Mortgage Loans");

WHEREAS, Broadhollow is being transferred to Assignee; and

WHEREAS, pursuant to the terms of the Melville LLC Agreement, Rating Agency Confirmation (as defined in the Melville LLC Agreement) is a condition to the transfer of a member's limited liability company interest or the removal of the manager.

NOW, THEREFORE, in consideration of the foregoing recitals, which are incorporated by reference herein, the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.    <u>Sale and Assignment of Melville Interest; Payment</u>.  Subject to the terms and conditions set forth in this Sale and Assignment Agreement, at the Closing (as hereinafter defined), AHM Acceptance shall:

a.   execute and deliver to Assignee that certain Consent of American Home Mortgage Acceptance attached hereto as <u>Exhibit A</u>, pursuant to which AHM Acceptance shall consent to the admission of Assignee as a member of Melville;

b.   pursuant to Section 363 of the Bankruptcy Code, execute and deliver to Assignee that certain Assignment and Assumption of Membership Interests attached hereto as <u>Exhibit B</u> (the "<u>Assignment of Membership Interests</u>"), pursuant to which AHM Acceptance shall sell, assign, transfer, and convey all of AHM Acceptance's limited liability company interest in Melville (the "<u>Assigned Interest</u>") to Assignee, free and clear of all liens, pledges, claims, charges, security interests, and encumbrances of every kind and nature;

c.   execute and deliver to Assignee that certain Resignation of Manager attached hereto as <u>Exhibit C</u>, pursuant to which AHM Acceptance shall resign as the manager of Melville;

d.   deliver to Assignee (i) copies of all formation and organizational documents filed by or on behalf of Melville with the Secretaries of State of the State of Delaware and each other state in which Melville is qualified as a foreign limited liability company, all as certified by the applicable Secretary of State within five (5) days prior to the Closing Date, and (ii) certificates of good standing and payment of all applicable state franchise taxes of Melville issued by the Delaware Secretary of State and the appropriate officials of each other state in which Melville is qualified as a foreign limited liability company, in each case dated within five (5) days prior to the Closing Date;

e.   execute and deliver to Assignee a certification of non-foreign status satisfying the requirements of Section 1.1445-2(b)(2)(i) of the United States Treasury Regulations promulgated under the Internal Revenue Code of 1986, as amended; and

f.   cause each of the other Debtors to execute a counterpart of this Sale and Assignment Agreement to effectuate the release granted by Debtors pursuant to Section 3 of this Sale and Assignment Agreement.

3

Upon the transfer of the Assigned Interest to Assignee, AHM Acceptance shall cease to be a member of Melville, all limited liability company interests in Melville shall be held by Assignee, and Assignee shall be the sole equity member of Melville.

        2.      <u>Acceptance of Melville Interest</u>.  Subject to the terms and conditions set forth in this Sale and Assignment Agreement, at the Closing, Assignee hereby agrees (a) to execute and deliver to AHM Acceptance the Assignment of Membership Interests, pursuant to which Assignee shall accept the sale, assignment, and transfer of the Assigned Interest from AHM Acceptance and shall agree to be bound by all terms and conditions of the Melville LLC Agreement; and (b) to cause Melville to execute a counterpart of this Sale and Assignment Agreement to effectuate the release granted by Melville pursuant to Section 3 of this Sale and Assignment Agreement.  Assignee acknowledges and agrees that, subject to the Bankruptcy Court Approval, the Assigned Interest will be assigned at the Closing without prior Rating Agency Confirmation.

        3.      <u>Mutual Releases</u>.

        a.    <u>Debtors' Releases</u>: Except for the duties, liabilities, and obligations of AHM Acceptance under this Sale and Assignment Agreement and subject to the last sentence of this Section 3.a, effective immediately upon the admission of Assignee as a member of Melville and the transfer of the Assigned Interest to Assignee, Melville, and Assignee, on behalf of Assignee and all of Assignee's current and former officers, members, agents, directors, predecessors, successors, assigns, affiliates, and other representatives, in each case, solely in such capacity (collectively, the "<u>Melville Releasors</u>"), fully and forever release, acquit, waive and discharge each of the Debtors and Debtors' respective officers, managers, members, directors, stockholders, employees, affiliates, subsidiaries, parents, agents, representatives, attorneys, heirs, successors and assigns, as applicable (collectively, the "<u>Debtor Releasees</u>"), of and from all and every manner of claims, including but not limited to, any action and actions, cause and causes of action, complaints, debts, covenants, rights, suits, judgments, representations, warranties, fees, demands, priority claims, unsecured claims, cure claims, deficiency claims, interest claims, penalty claims, administrative claims, counterclaims, and damages whatsoever, known or unknown, arising, accruing, assessed or assessable in respect of any periods and any transactions, contracts or agreements occurring or entered into in any periods (collectively, the "<u>Melville Released Claims</u>"), which Melville Released Claims shall be waived, released, forever barred, discharged and disallowed.  For the avoidance of doubt, Debtor Releasees shall include any plan trust established by Order of the Bankruptcy Court to which any Debtors' assets are transferred as well as the trustee of any such trust.  Notwithstanding anything to the contrary set forth in this Section 3.a, the Noteholders that hold direct or indirect ownership interests in Assignee shall not be deemed to be Melville Releasors for purposes of this Section 3.a, it being acknowledged and agreed that any releases given by such

DB02:9174092.49174092.8                                                 066585.1001

Noteholders shall be governed solely by Section 4 hereof and the Order contemplated therein.

b. <u>Melville and Assignee Releases</u>:  Except for the duties, liabilities, and obligations of Assignee under this Sale and Assignment Agreement and subject to the last sentence of this Section 3.b, effective immediately upon the admission of Assignee as a member of Melville and the transfer of the Assigned Interest to Assignee, Debtors, on behalf of themselves and all of their current and former officers, members, agents, directors, predecessors, successors, assigns, affiliates, and other representatives, in each case, solely in such capacity (collectively, the "<u>Debtor Releasors</u>"), fully and forever release, acquit, waive and discharge each of Melville and Assignee, and all of their respective officers, managers, members, directors, shareholders, employees, affiliates, subsidiaries, parents, agents, representatives, attorneys, heirs, successors and assigns, as applicable (collectively, the "<u>Melville Releasees</u>"), of and from all and every manner of claims, including but not limited to, any action and actions, cause and causes of action, complaints, debts, covenants, rights, suits, judgments, representations, warranties, fees, demands, priority claims, unsecured claims, cure claims, deficiency claims, interest claims, penalty claims, administrative claims, counterclaims, and damages whatsoever, known or unknown, arising, accruing, assessed or assessable in respect of any periods and any transactions, contracts or agreements occurring or entered into in any periods (collectively, the "<u>Debtors' Released Claims</u>"), which Debtors' Released Claims shall be waived, released, forever barred, discharged and disallowed. Notwithstanding anything to the contrary set forth in this Section 3.b, the Noteholders that hold direct or indirect interests in the Assignee and the Indenture Trustee, shall not be deemed to be Melville Releasees for purposes of this Section 3.b, it being acknowledged and agreed that any releases given by the Debtor Releasors to such Noteholders and the Indenture Trustee shall be governed solely by Section 4 hereof and the Order contemplated therein.

4.    <u>Bankruptcy Court Approval</u>.  All obligations of the Debtors, Melville and Assignee under this Sale and Assignment Agreement, including all actions, sales, assignments, agreements, releases, waivers, consents, terms and obligations contained herein, are subject to and conditioned upon approval, upon notice and a hearing, by the Bankruptcy Court of (i) the transfer of the Assigned Interest from AHM Acceptance to Assignee and the replacement of AHM Acceptance as the manager of Melville by Assignee, in each case without prior Rating Agency Confirmation, and (ii) the Order Releases (as defined below) (collectively, "<u>Bankruptcy Court Approval</u>").  Within two (2) business days of the execution of this Sale and Assignment Agreement, Debtors shall file a motion with the Bankruptcy Court seeking Bankruptcy Court Approval.  Each of the parties acknowledges and agrees that (a) the release of the Debtors is an integral part of the consideration to the Debtors under this Sale and Assignment Agreement, (b) that it is the intent of the parties that Debtors be released from any and all liabilities or obligations related to or arising out of Debtors ownership of Melville, and (c) that as part of the

5

066585.1001

Bankruptcy Court Approval, Debtors will seek an Order that includes (i) ~~the Indenture Trustee~~DBTCA, solely in its capacity as ~~such~~Indenture Trustee, Collateral Agent, Custodian, Securities Intermediary, Paying Agent, and Calculation Agent and for no other purpose, and Noteholders, solely in their capacity as such and for no other purpose, as additional releasors; and (ii) ~~the Indenture Trustee~~DBTCA, solely in its capacity as ~~such~~Indenture Trustee, Collateral Agent, Custodian, Securities Intermediary, Paying Agent, and Calculation Agent and for no other purpose, and Noteholders, solely in their capacity as such and for no other purpose, as additional releasees such that there will be a mutual release of any claims ~~the Indenture Trustee~~DBTCA and/or Noteholders have or may have against the Debtors and any claims the Debtors have or may have against the ~~Indenture Trustee~~DBTCA and/or Noteholders, in each case, solely in their respective capacities as Indenture ~~Trustees~~Trustee, Collateral Agent, Custodian, Securities Intermediary, Paying Agent, and Calculation Agent or Noteholders ((i) and (ii), collectively, the "Order Releases").

      5.    Representations and Warranties.

      a.    AHM Acceptance hereby represents and warrants to Assignee as of the date hereof and as of the Closing Date as follows:

      (i)    AHM Acceptance (A) is duly incorporated and is validly existing in good standing as a corporation under the laws of its jurisdiction of incorporation; and (B) subject to obtaining Bankruptcy Court Approval, has the corporate power and authority to execute and deliver, and perform AHM Acceptance's obligations under, this Sale and Assignment Agreement. This Sale and Assignment Agreement has been duly executed and delivered by AHM Acceptance.

      (ii)    Subject to obtaining Bankruptcy Court Approval, this Sale and Assignment Agreement shall be valid, binding and enforceable against AHM Acceptance and its successors and assigns in accordance with its terms.

      (iii)    Melville (A) is duly formed and is validly existing in good standing as a limited liability company under the laws of its jurisdiction of formation; and (B) has the limited liability company power and authority to own its properties and assets and to carry on its business.

      (iv)    The execution, delivery, and performance of this Sale and Assignment Agreement has been duly authorized by all necessary corporate action on behalf of AHM Acceptance.

      (v)    Subject to obtaining Bankruptcy Court Approval including a waiver of the Rating Agency Confirmation, the execution, delivery, and performance of this Sale and Assignment Agreement does not and will not violate any provision of the formation or organizational documents of Melville, create any lien, security interest, charge, or encumbrance on the Assigned Interest or any assets of Melville, or conflict with or result in a breach of, create an event of default under, or give any third party the right to accelerate any obligation under, any agreement, mortgage, order,

arbitration award, judgment, or decree to which AHM Acceptance or Melville is a party or by which AHM Acceptance, Melville, the Assigned Interest, or any assets or properties of the Melville, are bound or affected. Subject to obtaining Bankruptcy Court Approval including a waiver of the Rating Agency Confirmation, AHM Acceptance has obtained all consents necessary for the consummation of the transactions contemplated herein.

(vi)    AHM Acceptance is the sole equity member and manager of Melville, is the sole owner of the Assigned Interest and, subject to obtaining Bankruptcy Court Approval, has full right to transfer, assign, and sell the Assigned Interest free and clear of any liens, charges, encumbrances or claims.

(vii)    Schedule 1 contains a complete list of the Mortgage Loans and any other material assets owned by Melville.  Melville does not lease any properties and does not own any direct or indirect interests in any other entity.

(viii)    Schedule 2 lists all contracts and agreements, whether written or oral, material to and binding upon Melville or involving any restrictions on the operation of the business of Melville (each, a "Contract" and collectively, the "Contracts").  Each Contract is valid and binding, and, to the knowledge of AHM Acceptance, no party thereto is in breach or default thereof except as described on Schedule 2.  AHM Acceptance has delivered to Assignee copies of all written Contracts and a written description of any oral Contracts.

(ix)    Except as described on Schedule 3 attached hereto and except for any Proceeding (as hereinafter defined) released under this Agreement, to AHM Acceptance's knowledge, there is no pending or threatened action, suit, proceeding, claim, investigation, or inquiry (each, a "Proceeding") before or by any United States or non-United States federal, national, supranational, state, provincial, local or similar government, governmental, regulatory or administrative authority, branch, agency, department, commission, board, bureau, instrumentality or any court, tribunal, or arbitral or judicial body (including any grand jury), to restrain or prevent the consummation of the transactions contemplated herein, or that might affect the right of the Assignee to own the Assigned Interest or the right of the Assignee to operate the business of Melville, or otherwise affecting Melville, its assets, or business or involving this Sale and Assignment Agreement.  Except as described on Schedule 3 attached hereto, there is no Proceeding pending by Melville against others.  Except as described on Schedule 3 attached hereto, Melville has no indebtedness for monies owed to AHM Acceptance or any third party.

(x)    Schedule 4 attached hereto contains a true, complete and correct copy of the Melville LLC Agreement, including all amendments thereto.

7

(xi)    Melville has at all times been a single member limited liability company characterized as a disregarded entity for all federal and state income tax purposes such that all items of income, gain, and loss of Melville have been included in the income, gain, and loss of AHM Acceptance and reported accordingly on returns and reports required to be filed by AHM Acceptance or the consolidated group of which AHM Acceptance is a member.  Melville will continue to be characterized as a disregarded entity and any income, gain, and loss from Melville will be included in all the required federal and state income tax return filings of AHM Acceptance or the consolidated group of which AHM Acceptance is a member through the Closing Date.    AHM Acceptance or the consolidated group of which AHM Acceptance is a member has paid or will pay all taxes, interest and penalties associated with the items of income, gain, and loss of Melville through the Closing Date.  Other than state franchise tax returns to maintain its existence in its state of organization or in any state where Melville is qualified to do business, as a disregarded entity, Melville was not required to and has not filed separate federal or state income or other tax returns.  Melville has or shall have (A) filed all required state franchise tax returns in each jurisdiction where Melville is qualified to do business that are due on or before the Closing Date and (B) paid all taxes and fees reflected on such franchise tax returns as well as  interest and penalties, if any, relating thereto.

(xii)    All of the Notes other than the Variable Funding Notes, to the extent issued, have been paid in full in accordance with their terms and have been fully released and discharged.

(xiii)    No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Sale and Assignment Agreement based upon arrangements made by or on behalf of AHM Acceptance.

(xiv)    Melville does not have any employees and has not had any employees since the date of its formation.

(xv)    Melville has not been qualified to do business in any state other than Delaware and no state has asserted or notified Melville that Melville is required to be qualified to do business in such state.

(xvi)    None of the representations or warranties of AHM Acceptance in this Sale and Assignment Agreement or any related schedule or certificate delivered by AHM Acceptance to Assignee contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements herein or therein not misleading.

For purposes of this Sale and Assignment Agreement, the term "AHM Acceptance's knowledge" shall mean the actual knowledge of the employees of and consultants to AHM Acceptance set forth on Schedule 5 attached hereto after making a reasonable inquiry as to the accuracy of the representation or warranty in question.  For the avoidance of doubt, none of the individuals set

8

forth on <u>Schedule 5</u> attached hereto shall be deemed to be a party to this Sale and Assignment Agreement and no such individual shall be personally liable to Assignee for any breach of this Sale and Assignment Agreement.

    b.  Assignee hereby represents and warrants to AHM Acceptance as of the date hereof and as of the Closing Date as follows:

      (i)  Assignee (A) is duly formed and is validly existing in good standing as a corporation under the laws of its jurisdiction of formation; and (B) has the corporate power and authority to execute and deliver, and perform Assignee's obligations under, this Sale and Assignment Agreement. This Sale and Assignment Agreement has been duly executed and delivered by Assignee.

      (ii)  This Sale and Assignment Agreement is valid, binding and enforceable against Assignee and its successors and assigns in accordance with its terms.

      (iii)  The execution and delivery of this Sale and Assignment Agreement has been duly authorized by all necessary corporate action on behalf of Assignee.

      (iv)  Assignee has the corporate power and authority to accept and hold the Assigned Interest as the sole member of Melville.

      (v)  There is no pending or, to Assignee's knowledge, threatened Proceeding before or by any United States or non-United States federal, national, supranational, state, provincial, local or similar government, governmental, regulatory or administrative authority, branch, agency, department, commission, board, bureau, instrumentality or any court, tribunal, or arbitral or judicial body (including any grand jury), to restrain or prevent the consummation of the transactions contemplated herein, or that might affect the right of the Assignee to own the Assigned Interest or the right of the Assignee to operate the business of Melville.

      (vi)  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Sale and Assignment Agreement based upon arrangements made by or on behalf of Assignee.

For purposes of this Sale and Assignment Agreement, the term "Assignee's knowledge" shall mean the actual knowledge of Geoffrey L. Berman after making a reasonable inquiry as to the accuracy of the representation or warranty in question.

    6.  <u>Documents</u>. To the extent such documents and information actually exist and are in the possession of AHM Acceptance, AHM Acceptance shall use its commercially reasonable efforts to deliver to Assignee, no later than fifteen (15) days prior to Closing, all of the documents and information described on <u>Schedule 6</u> attached hereto (collectively, the "<u>Required Materials</u>"). Without limiting the foregoing, it shall be a condition to Assignee's

obligation to consummate the transactions contemplated herein that the Required Materials are delivered to Assignee three (3) business days prior to the Closing Date, and the Closing Date shall be adjourned as necessary to accomplish the foregoing. Within fourteen (14) business days after Closing (as hereinafter defined), AHM Acceptance shall transfer to Assignee (i) any and all Mortgage Loan documents in AHM Acceptance's possession and (ii) any and all records, agreements, statements, tax returns or other governmental filings pertaining to or binding upon Melville (other than Required Materials) that, in each case, are in AHM Acceptance's possession.

      7.    <u>Future Cooperation</u>.  Each of the parties hereto agrees to cooperate at all times from and after the date hereof with respect to all of the matters described herein and to execute and deliver such further assignments, releases, assumptions, amendments of the Melville LLC Agreement, notifications, and other documents as may be reasonably requested for the purpose of giving effect to, evidencing, or giving notice of the transaction contemplated by this Sale and Assignment Agreement.  In addition, for a period of at least thirty (30) days following the Closing Date, AHM Acceptance shall make Kevin Nystrom or another employee of AHM Acceptance knowledgeable about Melville and its finances reasonably available during normal working hours to answer any of Assignee's questions pertaining thereto.  All actual costs associated with any actions described in this Paragraph shall be paid for by the requesting party.  AHM Acceptance shall notify Assignee if at any time prior to or after the Closing AHM Acceptance shall become aware of any information or documentation that would render any representation or warranty set forth in Section 5a. of this Sale and Assignment Agreement untrue in any material respect.  AHM Acceptance and any successor thereto shall provide Assignee with at least sixty (60) days' notice of the hearing to consider a final decree of the Bankruptcy Court closing the Chapter 11 Cases of the Debtors (the "<u>Estate Termination Date</u>").

      8.    <u>Closing</u>.  Subject to the terms and conditions of this Sale and Assignment Agreement, including, without limitation, <u>Section 6</u> hereof, the closing (the "<u>Closing</u>") of the transaction contemplated hereby shall take place on the later to occur of (i) three (3) business days following Bankruptcy Court Approval, (ii) three (3) business days following the sale of the mortgage loans owned by Broadhollow (the "<u>Closing Date</u>"), or (iii) immediately after the transfer of Broadhollow to Assignee.  The representations and warranties of the parties shall be true and correct in all materials respects as of the Closing Date as if made on the Closing Date except to the extent any such representations and warranties speak of a specified earlier date (in which case such representation and warranty shall be true and correct as of such specified earlier date).  If, prior to the Closing Date, AHM Acceptance or Assignee, as the case may be, determines that a representation or warranty made by the other party is not true and correct in all material respects, then the sole remedy of the party asserting a breach of a representation or warranty shall be to terminate this Sale and Assignment Agreement, and if this Sale and Assignment Agreement is so terminated, this Sale and Assignment Agreement shall become void and of no further force or effect and no party shall have any liability or further obligation to any other party resulting from such termination.  As of the Closing, (i) AHM Acceptance shall certify to Assignee that, to the knowledge of AHM Acceptance, there is no breach of any representation or warranty made by Assignee in this Sale and Assignment Agreement; and (ii) Assignee shall certify to AHM Acceptance that, to the knowledge of Assignee, there is no breach of any representation or warranty made by AHM Acceptance in this Sale and Assignment Agreement.

                                                       

9.    <u>Certain Expenses</u>.  All costs and expenses, including, without limitation, legal costs and fees and any capital gains or other income taxes, incurred in connection with this Sale and Assignment Agreement and the consummation of the transactions hereunder shall be paid by the party incurring such expenses; provided, however, that costs and expenses, if any, of Melville incurred in connection with this Sale and Assignment Agreement and the consummation of the transactions hereunder shall be paid by AHM Acceptance.

10.    <u>Entire Agreement</u>.  This Sale and Assignment Agreement supersedes all prior agreements between the parties with respect to its subject matter, and constitutes a complete and exclusive statement of the terms of the agreement between the parties with respect to its subject matter.  This Sale and Assignment Agreement may not be amended except by a written agreement executed by all parties hereto.

11.    <u>Binding Effect</u>.  This Sale and Assignment Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.  AHM Acceptance may not assign or transfer any right or obligation hereunder without the prior written consent of Assignee.  Assignee may assign or transfer its rights and obligations hereunder to any entity controlling, controlled by or under common control with Assignee.

12.    <u>Execution in Counterparts</u>.  This Sale and Assignment Agreement may be executed in one or more counterparts, by facsimile or by original signatures, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

13.    <u>Survival of Representations and Warranties</u>.   The representations and warranties contained in this Sale and Assignment Agreement and in any certificate or other instrument delivered pursuant hereto by any party shall survive the Closing until the earliest to occur of (a) the Estate Termination Date; and (b) the third anniversary of the Closing; provided, however that the representations and warranties of AHM Acceptance set forth in Sections 5.a(vii), 5.a(viii),  5.a(ix), 5.a(x), 5.a(xii), 5.a(xiv), and 5.a(xvi) of this Sale and Assignment Agreement (but only 5.a(xvi) to the extent it relates to another Limited Representation) and the representations and warranties of Assignee set forth in Section 5.b(v) of this Sale and Assignment Agreement (collectively, the "<u>Limited Representations</u>") shall only survive the Closing for a period of one (1) year, and damages payable to AHM Acceptance or Assignee, as the case may be, for any one or more breaches of any Limited Representation by the other party shall not exceed, in the aggregate, a maximum amount of Fifty Thousand and 00/100 Dollars ($50,000.00) (the "<u>Limited Representations Damages Cap</u>"), provided, however, that the Limited Representations Damages Cap shall not apply to any representation or warranty that was made fraudulently or was knowingly false.  All covenants contained in this Sale and Assignment Agreement to be performed at or after the Closing shall survive the Closing.

14.    <u>Notices</u>.  Any notice pursuant to this Sale and Assignment Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, and provided also that

11

delivery after 4:00 p.m. Eastern Time on a business day, or on a day that is not a business day shall be deemed delivered on the following business day. Notices may be given by counsel for any party. Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Sale and Assignment Agreement shall be as follows:

|  |  |
|---|---|
| If to AHM Acceptance: | American Home Mortgage Acceptance<br>538 Broadhollow Road<br>Melville, New York 11747<br>Attention:  Kevin Nystrom |
| with a copy to: | Craig D. Grear, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>Phone:  (302)571-6612 |
| If to Assignee: | B&M Management Corp.<br>c/o Development Specialists, Inc.<br>Attention: Geoffrey L. Berman<br>333 S. Grand Avenue, Suite 4070<br>Los Angeles, California  90071-1544<br>Phone: (213) 617-2717 |
| with a copy to: | Allan Diamond, Esq.<br>Diamond McCarthy LLP<br>909 Fannin, Suite 1500<br>Houston, Texas 77010<br>Phone:  (713) 333-5199 |

15.     <u>Governing Law</u>.  This Sale and Assignment Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to conflicts of laws principles.

16.     <u>Venue and Retention of Jurisdiction</u>.  Without limiting any party's rights to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court.

*{Signature Page Follows}*

DB02:9174092.49174092.8                              066585.1001

IN WITNESS WHEREOF, the parties hereto have caused this Sale and Assignment Agreement to be duly executed as of the day and year first-above written.

AHM Acceptance:

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**

By: _____
      Name:
      Title:

Assignee:

**B&M MANAGEMENT CORP.**

By: _____
      Name:
      Title:

AGREED TO AND ACCEPTED solely with respect to the provisions of Section 3 of the foregoing Sale and Assignment Agreement as of the dates set forth below.

Melville:

**MELVILLE FUNDING, LLC**

**By:  B&M MANAGEMENT CORP., its Manager**

By: _____
         Name:
         Title:

Date:_____, 2010

Debtors:

**AMERICAN HOME MORTGAGE CORP.**

By: _____
         Name:
         Title:

Date:_____, 2010

**AMERICAN HOME MORTGAGE HOLDINGS, INC.**

By: _____
         Name:
         Title:

Date:_____, 2010

066585.1001

**AMERICAN HOME MORTGAGE
INVESTMENT CORP.**

By: _____
       Name:
       Title:

Date:_____, 2010

**AHM SV, INC. (F/K/A AMERICAN HOME
MORTGAGE SERVICING, INC.)**

By: _____
       Name:
       Title:

Date:_____, 2010

**AMERICAN HOME MORTGAGE
VENTURES LLC**

By: _____
       Name:
       Title:

Date:_____, 2010

**HOMEGATE SETTLEMENT SERVICES, INC.**

By: _____
       Name:
       Title:

Date:_____, 2010

## EXHIBIT A
## CONSENT OF AMERICAN HOME MORTGAGE ACCEPTANCE

## EXHIBIT B
## ASSIGNMENT AND ASSUMPTION OF MEMBERSHIP INTERESTS

**EXHIBIT C**
**RESIGNATION OF MANAGER**

## SCHEDULE 1
## MATERIAL ASSETS

1. Cash held in Deutsche Bank Cash Management Account
2. Potential claims against market value swap counterparties

## SCHEDULE 2
## CONTRACTS

1.      Put Agreement dated as of May 27, 2004, by and between Melville Funding, LLC and Broadhollow Funding, LLC.

2.      Guarantee and Reimbursement Agreement dated as of May 27, 2004, by and between Broadhollow Funding, LLC and Melville Funding, LLC.

3.      Short Term Note Dealer Agreement dated as of May 27, 2004, by and between Broadhollow Funding, LLC, Melville Funding, LLC, American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., Lehman Brothers Inc., and Banc of America Securities LLC.

4.      Mortgage Loan Purchase and Servicing Agreement dated as of May 27, 2004, by and among Melville Funding, LLC, as Purchaser, American Home Mortgage Acceptance, Inc., as Seller, Columbia National, Incorporated, as Servicer, and American Home Mortgage Investment Corp., as Performance Guarantor.

5.      Security Agreement dated as of May 27, 2004, by and among Melville Funding, LLC, Deutsche Bank Trust Company Americas, as Indenture Trustee, and Deutsche Bank Trust Company Americas, as Collateral Agent.

6.      Base Indenture dated as of May 27, 2004, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas, as Indenture Trustee.

7.      Custodial Agreement dated as of May 27, 2004, by and among Melville Funding, LLC, as Issuer, American Home Mortgage Acceptance, Inc., as Seller, Columbia National, Incorporated, as Servicer, Deutsche Bank National Trust Company, as Custodian, and Deutsche Bank Trust Company Americas, as Collateral Agent.

8.      Series 2004-I Supplement to Base Indenture dated as of May 27, 2004, by and among Melville Funding, LLC, as Issuer, and Deutsche Bank Trust Company Americas, as Indenture Trustee and Paying Agent.

9.      Rated Bidder Letter dated May 27, 2004 by and among Melville Funding, LLC, Deutsche Bank Securities Inc., Columbia National, Incorporated, and Deutsche Bank Trust Company Americas.

10.     Securities Account Control Agreement dated as of May 27, 2004, by and between Melville Funding, LLC, as Issuer, and Deutsche Bank Trust Company Americas, as Securities Intermediary and Secured Party.

11.     ISDA Master Agreement dated as of May 27, 2004, by and between ABN Amro Bank N.V. and Melville Funding, LLC.

12.     ISDA Master Agreement dated as of May 27, 2004, by and between Bank of America, N.A. and Melville Funding, LLC.

066585.1001

13.     ISDA Master Agreement dated as of March 9, 2004, by and between Calyon New York Branch and Melville Funding, LLC.

14.     ISDA Master Agreement dated as of June 7, 2005, by and between Citibank N.A. and Melville Funding, LLC.

15.     Series 2007-I Supplement to Base Indenture dated as of May 27, 2004, dated as of March 14, 2007, by and between Melville Funding, LLC, as Issuer, and Deutsche Bank Trust Company Americas, as Indenture Trustee and Paying Agent.

16.     Designation of Special Member Agreement dated as of May 27, 2004,  by and between Melville Funding, LLC and National Corporate Research, Ltd.

<u>Documents 1-15 are facility documents that relate to the issuance of the Notes.  These are generally in default.</u>

## SCHEDULE 3
## PROCEEDINGS, CLAIMS AND LIABILITIES

1.      Proceedings against Melville

        NONE


2.      Proceedings in which Melville is asserting claims against other parties:

        a.      Bank of America swap litigation


3.      Liability for monies owed

        a.      Variable Funding Notes, in the amount of $2.1 million

        b.      Any money owed to Indenture Trustee, though invoices are paid by Broadhollow
                as received.  The recurring fees are as follows:

                - Annual and monthly fee to the Indenture Trustee ~~of $1,750 as well as a monthly
                fee of $1,000 to $2,000~~
                - ~~Annual fee to the Special Member of $1,000~~ Monthly legal fees
                (~~Stewart~~Seward & Kissel LLP) ~~of $1,000 to $3,000~~
                - Miscellaneous fees

        c.      Annual fee to the Special Member of $~~270~~1,000

066585.1001

## SCHEDULE 4
## MELVILLE LLC AGREEMENT

*{Attached}*

**SCHEDULE 5**
**KNOWLEDGE PARTIES**

| Employee/Consultant Name | Department/Task |
| --- | --- |
| Belinda Jones | A/P |
| Paul Moran | A/P, Payroll, Benefits |
| Pina Ruperto | Accounting |
| Catherine Cassagnau-Lundie | Accounting |
| Eileen Wanerka | Claims |
| Damian Voulo | Claims, Loan Disposition |
| Antonio Marra | Files |
| Chris Cavaco | IT |
| Jason Burzenski | IT |
| Frank Policano | IT |
| Carlo Colagiacomo | Legal |
| Simon Sakamoto | Securities |
| Renne Parker | Tax |
| Susan Seoylemezian | Tax |
| Andy Dokos | Treasury |
| | |
| Kevin Nystrom (Zolfo Cooper) | CRO |
| Bret Fernandes (Zolfo Cooper) | Director of Restructuring |
| Scott Martinez (Zolfo Cooper) | |

## SCHEDULE 6
## REQUIRED MATERIALS

1.    The following unaudited financial statements:

      a.    Balance sheets for 2007, 2008, and 2009

      b.    Profit and Loss statements for 2007, 2008, and 2009

      c.    Any interim balance sheets or Profit and Loss statements prepared after December 31, 2009 and prior to the Closing

      d.    Trial balances of December 31, 2009

2.    Base Indenture, dated May 27, 2004, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas

3.    Series 2004-I Supplement to Base Indenture, dated May 27, 2004, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas

4.    Series 2007-1 Supplement to Base Indenture, dated March 14, 2007, by and between Melville Funding, LLC and Deutsche Bank Trust Company Americas

5.    Swap documents and all amendments

6.    All other documents listed on Schedule 2

Document comparison by Workshare Professional on Monday, February 15, 2010 6:05:33 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:/Documents and Settings/ekost/Desktop/Melville Filed.DOC |
| Description | Melville Filed |
| Document 2 ID | interwovenSite://WSDMS/DB02/9174092/8 |
| Description | #9174092v8<DB02> - AHM/Melville - Sale Agreement to Noteholders |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 31 |
| Deletions | 25 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 58 |