1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

Case No. 07-11047 (CSS)

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:


AMERICAN HOME MORTGAGE HOLDINGS, INC.,


        Debtor.


- - - - - - - - - - - - - - - - - - - -x


                United States Bankruptcy Court

                824 Market Street

                Wilmington, Delaware


                February 18, 2010

                1:06 p.m.


B E F O R E:

HON. CHRISTOPER J. SONTCHI

U.S. BANKRUPTCY JUDGE


ECR OPERATOR:  LESLIE MURIN

1    Debtors' Motion for an Order Pursuant to Bankruptcy Code

2    Sections 105, 363 and 1146(a) and Bankruptcy Rule 2002, 6004,

3    9014 and 9019 Approving and Authorizing : (I) (A) the Sale,

4    Assignment and Transfer of Limited Liability Company Interest

5    of Broadhollow Funding, LLC; and (B) the Sale, Assignment and

6    Transfer of Limited Liability Company Interest of Melville

7    Funding, LLC; (II) Settlement of Claims, Releases and Waivers;

8    (III) Release of Certain Escrow Funds; and (IV) Granting

9    Related Relief

10

11    CitiMortgage, Inc.'s Combined: (1) Statement of Cure Amount for

12    Period Between Initial Closing and Final Closing; and (2)

13    Objection to Debtors' Proposed Purchaser's Cure Amounts

14

15    Debtors' Forty-Ninth Omnibus (Non-Substantive) Objection to

16    Claims Pursuant to Section 502(b) of the Bankruptcy Code,

17    Bankruptcy Rules 3003 and 3007, and Local Rule 3007-I

18

19    Motion for Supersedes Bond to Protect Judgment for Mona Dobben

20

21    First Application of Receivable Management Services Corporation

22    for Compensation for Services Rendered as Collection Agent for

23    the Official Committee of Unsecured Creditors for the Period

24    July 1, 2009 through December 31, 2009

25

3

1   Initial Pretrial Conference in Adversary Nos: 10-50004

2   (Eastland Sales, Inc., dba Workspace Solutions), 09-51602

3   (Diners Club International, Ltd.), 10-50002 (Google, Inc.), 10-

4   50001 (Nash Printing, Inc. dba Sir Speedy of Plainview), and

5   10-50003 (Warehouseline, Ltd. a/k/a Warehouseline, Inc.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1

2   A P P E A R A N C E S :

3   YOUNG CONAWAY STARGATT & TAYLOR LLP

4         Attorneys for Debtors

5         The Brandywine Building

6         1000 West Street

7         Wilmington, DE 19801

8

9   BY:  MICHAEL S. NEIBURG, ESQ.

10        SEAN M. BEACH, ESQ.

11

12

13   BLANK ROME LLP

14         Attorneys for Official Committee of Unsecured Creditors

15         1201 Market Street

16         Wilmington, DE 19801

17

18   BY:  VICTORIA A. GULIFOYLE, ESQ.

19

20

21

22

23

24

25

5

1

2    HAHN & HESSEN LLP

3          Attorneys for Official Committee of Unsecured Creditors

4          488 Madison Avenue

5          New York, NY 10022

6

7    BY:   MARC S. INDELICATO, ESQ.

8          (TELEPHONICALLY)

9

10   HAHN & HESSEN LLP

11         Attorneys for Official Committee of Unsecured Creditors

12         488 Madison Avenue

13         New York, NY 10022

14

15   BY:   EDWARD L. SCHNITZER, ESQ.

16

17

18   SAUL EWING LLP

19         Attorneys for American Home Mortgage Servicing, Inc.

20         222 Delaware Avenue

21         Wilmington, DE 19899

22

23   BY:   TERESA K.D. CURRIER, ESQ.

24

25

6

1

2    ROSENTHAL MONHAIT & GODDESS, PA

3         Attorneys for B&M Management Corporation

4         919 Market Street

5         Wilmington, DE 19899

6

7    BY:   NORMAN M. MONHAIT, ESQ.

8

9

10   DIAMOND MCCARTHY LLP

11        Attorneys for B&M Management Corporation

12        Two Houston Center

13        909 Fannin Street

14        Houston, TX 77010

15

16   BY:   ALLAN B. DIAMOND, ESQ.

17

18

19   DIAMOND MCCARTHY LLP

20        Attorneys for B&M Management Corporation

21        620 Eighth Avenue

22        New York, NY 10018

23

24   BY:   CHRISTOPHER A. PROVOST, ESQ.

25

7

1

2    FEATHERSTONE PETRIE DESISTO LLP

3         Attorneys for CitiMortgage

4         600 17th Street

5         Suite 2400S

6         Denver, CO 80202

7

8    BY:   ANDREW PETRIE, ESQ.

9

10

11   MORRIS JAMES LLP

12        Attorneys for CitiMortgage

13        500 Delaware Avenue

14        Suite 1500

15        Wilmington, DE 19801

16

17   BY:   BRETT D. FALLON, ESQ.

18

19   DOUGLAS J. PETTIBONE & ASSOCIATES

20        Attorneys for Mona Dobben

21        17848 Sky Park Circle

22        Irvine, CA 92614

23

24   BY:   DOUGLAS J. PETTIBONE, ESQ.

25        (TELEPHONICALLY)

8

1                    P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  Please be seated.

4          MR. BEACH:  Good afternoon, Your Honor.

5          THE COURT:  Okay.

6          MR. BEACH:  May it please the Court, Sean Beach from

7   Young Conaway Stargatt & Taylor on behalf of the debtors.

8          MR. PETTIBONE:  Good afternoon, Your Honor.  Douglas

9   Pettibone on behalf of Mona Dobben.

10          THE COURT:  Thank you, Mr. Pettibone.

11          MR. BEACH:  Your Honor, the first --

12          THE COURT:  We'll hear the -- we'll hear Ms. Dobben's

13   issue first.

14          MR. BEACH:  Okay.

15          MR. PETTIBONE:  Thank you, Your Honor.  Doug

16   Pettibone.

17          THE COURT:  And I want to -- I have a question before

18   we start --

19          MR. PETTIBONE:  Yes, sir.

20          THE COURT:  --for Mr. Beach.  Do you have a stay

21   pending appeal in place?

22          MR. BEACH:  No, Your Honor.  The order --

23          THE COURT:  Why has he violated this Court's order?

24          MR. BEACH:  Your Honor, we did not violate this

25   Court's order.  The order -- the payment was due upon a final

9

1    nonappealable order, so, no stay was required.  Your Honor, I

2    have a copy of the order if you'd like me to approach.

3              THE COURT:  Yes.

4              MR. BEACH:  This order, Your Honor, I might add is a

5    consensual form of order.  Mr. Pettibone agreed to this form of

6    order.

7              THE COURT:  All right.  You may approach.

8         (Pause)

9              THE COURT:  All right.  Mr. Pettibone?

10             MR. PETTIBONE:  Yes.

11             THE COURT:  Do I have authority to issue the relief

12   you've requested?

13             MR. PETTIBONE:  Yes, sir.

14             THE COURT:  Why?

15             MR. PETTIBONE:  Well, two things.  One, with regards

16   to this order, yes, I did consent to the order but it's a

17   little ambiguous when I was reading it.  I had felt that the

18   order was nonappealable and that's what it was saying.  But

19   nonetheless, I understand what they're saying about that issue.

20             If the order becomes final when it is nonappeable,

21   then it is in effect a stay.  It's a stay that is written into

22   the order.  And because it's a stay, they have to -- the stay

23   is in effect and they need to post a bond under this

24   supersedeas bond, CP 62.  If there's no stay, it seems like we

25   can collect it now.  And if there's no stay, why are they not

1  paying it now?

2      THE COURT:  All right.  So, your point would be that,

3  first of all that the order's ambiguous, but second of all even

4  if not, it acts in effect as a stay by its very nature.  So,

5  notwithstanding that a formal stay hasn't been sought, that a

6  supersedeas bond can be requested because it is in effect as if

7  they've sought and -- a stay.  However, that doesn't deal with

8  the divestitures diction issue, which appears, at least from

9  the face -- I'm sorry, let me pull the language, "A motion for

10  a stay", etcetera, etcetera, "or approval of a supersedeas bond

11  that must ordinarily be presented to the bankruptcy judge in

12  the first incidence".

13      It then says -- it then goes onto say, "A motion for

14  such relief or a modification", etcetera, "by a bank, may be

15  made to the district court or bankruptcy court" -- "bankruptcy

16  appellate panel but the motions fulfill why it wasn't obtained

17  from the bankruptcy judge".  So, I guess my first question here

18  is even if you have a right to seek a supersedeas bond, based

19  on the fact that there is in effect a state pending appeal,

20  isn't the right place for you to go at this point, the district

21  court?

22      MR. PETTIBONE:  This is Douglas Pettibone.  The way I

23  read the statute is that our first remedy would be before this

24  Court.  And that it's not any sort of a language that says it

25  shall or must.  It's a proceeding that would allow us to do so

11

1    and we wanted to bring it before you first.

2           THE COURT:  Okay.

3           MR. PETTIBONE:  We feel that that language does

4    support this.

5           THE COURT:  It says, "must ordinarily be presented to

6    the judge in the first instance", but it doesn't say -- it

7    doesn't -- well, let me hear from Mr. Beach on this issue.

8           MR. BEACH:  Your Honor, I will address this issue

9    first -- well, let me address this issue.

10          There were some misstatements in the pleadings filed

11   by Mr. Pettibone who admitted he didn't even read the reply and

12   he said that he would correct those misstatements on the

13   record.  I think we can get to the legal issue.  I meant to

14   have him address those first, but since we jumped into it, I'll

15   get to the legal issue and we can discuss that, if it's

16   necessary, later.

17          Your Honor, a supersedeas bond requires that a request

18   for a stay pending appeal be made by an appellant.  It speaks

19   to the appellant that this statutory language speaks to the

20   appellant seeking a stay of the execution of a form of order in

21   order to issue a bond.  So, it's, first of all, not something

22   the appellee can even seek under the plain reading of the

23   statute.  And it speaks to a bond that supports the stay of

24   execution of a judgment.  Not what they seem to be trying to

25   get here which is an appeal bond which relates to the cause and

1   is clearly something that the district court has jurisdiction

2   to hear and not something that would appropriately be for the

3   bankruptcy court.

4           So, I -- Your Honor, I think Mr. Pettibone is

5   suggesting that there's some implied ability for him to seek a

6   supersedeas bond in this situation.  I don't believe that the

7   language in either the order clearly stating that this is a

8   non -- has to be a nonappealable order requiring the payment.

9   But I also don't think the statute on a supersedeas bond is

10  ambiguous in any way.  I think it's very clear that it's based

11  on the stay of an execution filed by -- a motion for a stay of

12  execution filed by the appellant.

13          THE COURT:  What's the cite to that?  I'm sorry; I

14  want to double-check it in my book?

15          MR. BEACH:  It's Rule -- Federal Rule of Civil

16  Procedures 62 or Federal Rule of Bankruptcy Procedures 7062.

17  Specifically, it relates to the stay of proceedings to enforce

18  a judgment and it states in relevant part that "the appellant

19  may obtain a stay by supersedeas bond".

20          THE COURT:  Which subsection?

21          MR. BEACH:  (d).

22          THE COURT:  All right.  So, in order to avoid the

23  plaintiff from enforcing the judgment received, they -- you

24  have to post -- you would have to post as appellant a bond, a

25  supersedeas bond, under this section.

1      MR. BEACH:  Possibly.  Possibly.  That's one of the --

2  one of the ways that we would potentially get a stay pending

3  appeal is if we had posted a bond.

4      THE COURT:  And they can seek an appeal bond to cover

5  their cost of expenses but they have to do that at the appeal

6  level and they haven't done that in any event?

7      MR. BEACH:  Correct, Your Honor.

8      THE COURT:  So, what protection do they have --

9      MR. BEACH:  Well, Your Honor --

10      THE COURT:  -- while this appeal is pending?

11      MR. BEACH:  -- that's one of the issues I want to get

12  to.  There are -- and perhaps maybe this is the time Mr.

13  Pettibone should clarify some of the misstatements in the

14  documents.  Again, he indicated to us that he hadn't even read

15  the reply before it was filed and then admitted that there was

16  some false statements made in that reply.  Those statements

17  relate to among other things whether or not a counter offer was

18  ever made to our settlements.

19      There were other statements made in that pleading that

20  suggested that these estates were potentially near

21  administrative insolvency which is not the case, Your Honor.

22  We had a plan that has not yet gone effective.  It's been

23  approximately a year.  I understand that that is a long period

24  of time.  But the projections under the disclosure statement

25  are still sound based on the debtors' analysis of the assets

14

1    and the reconciliation of claims.  So, we do expect that this

2    plan will go effective once the appropriate assets are

3    liquidated.  One asset is up for a hearing today which will get

4    us towards that direction towards an effective date of a plan.

5    But these estates are not administratively insolvent.  We do

6    believe that the plan will go effective and we do believe that

7    Ms. Dobben will be protected like other administrative

8    creditors are for the payment of her administrative claim.

9          And under the plan, it is very specific that we are

10   required to set reserves for any administrative claims and we

11   absolutely will set a reserve for Ms. Dobben's claim if it

12   continues to be disputed.  We certainly hope it's settled.  I'm

13   not sure if Your Honor, given your schedule, has had the

14   opportunity to read our pleading, but we made an eighty

15   thousand dollar settlement offer to Ms. Dobben which was

16   rejected without even a counter offer.  And that's on -- and

17   that was an administrative claim and it was only twenty

18   thousand dollars short of what Your Honor awarded in the

19   judgment in any event.

20         But it wasn't even met with a counter offer.  And,

21   Your Honor, I would suggest that if there was any meaningful

22   discussion with Ms. Dobben, then we can get this claim settled

23   pretty quickly and paid.

24         MR. PETTIBONE:  Right.

25         MR. BEACH:  But in any event, she's protected by the

1   fact that --

2        THE COURT:  Well, let me -- let me tell you where I am

3   in bit of a box procedurally, but let me tell you what I

4   thought I had done.  I thought I had made a ruling where this

5   Ms. Dobben would have the money within twenty days of my order.

6   I can say that I didn't pay closest of attention given my

7   docket to the fact that and I'm not being pejorative but that

8   there's a now for the debtor to have to pay it.  I expected

9   that Ms. Dobben would already have the money.  And you

10  certainly you have your appellate rights.

11       I'm in a procedural box because of the appeal.  I'm

12  not sure I can modify the order.  I'm not sure I can construe

13  it as ambiguous, not ambiguous.  I'm not sure I can force --

14  I'm not sure I can view the order as a constructive request for

15  a stay that would entitle Ms. Dobben to seek a supersedeas

16  bond.  So, I'm not sure I can do anything about it.  But it's

17  not what I intended.

18       MR. BEACH:  Well, Your Honor, let me please speak to

19  that point.

20       There was certainly no intention at all to do anything

21  but what Your Honor intended in connection with this ruling.

22  Obviously, this is the type of language that we would put in

23  anywhere that we would submit to Your Honor, particularly a

24  consensual one with counsel and particularly when we were

25  considering whether or not we need to appeal this decision at

16

1    the time that the order was submitted.

2         We heard Your Honor after that ruling.  We had many

3    conversations with the unsecured creditors' committee and with

4    my client.  We understand that there was a message going along

5    with that ruling or potentially a message going along with that

6    ruling.  So, I want to make sure Your Honor understands that,

7    one, we didn't mean to do anything other than what your

8    ruling --

9         THE COURT:  No, again, I'm not being -- I'm not saying

10   you did.  And this is a standard line.  I see this language all

11   the time.  In this case, in this claim, in my judgment is

12   different -- very different from most of the claims I see in

13   front of a Court.  And you can be very -- you can rest assured

14   there was a message.  So, you know, maybe I messed -- well, you

15   know, I signed the order, Mr. Pettibone consented to it and

16   it's on appeal.  So, I think my hands are tied.  I'm just

17   expressing what I -- what my intention was.

18        MR. PETTIBONE:  Douglas Pettibone.  May I speak, Your

19   Honor?

20        THE COURT:  Yes.

21        MR. PETTIBONE:  Oh.  Your Honor, here -- one thing I

22   just got to say on this with regard to these settlement

23   discussions is every settlement discussion that had come to us

24   had as a condition that your decision and your record be sealed

25   or vacated somehow and it didn't matter whether they came back

1    and offered her 200,000 dollars.  Ms. Dobben, her instructions

2    to me were old school.  That she respe -- if she came out of

3    there with zero she wouldn't have appealed.  She respected your

4    decision that much.  And for her to take money in exchange for

5    striking your record and the decision you made, was just

6    something that she would never accept.

7            THE COURT:  Well, I --

8            MR. BEACH:  Your Honor, I have to correct that.

9    That's absolutely untrue.  And we said it in our papers.  We

10   never conditioned any settlement on striking or sealing a

11   record.  As the papers very clearly say as part of the

12   condition to the settlement of this appeal, we conditioned it

13   on vacating the order itself so that there can't be any

14   precedential value used for this decision.  We don't think that

15   this decision can be used very well for any precedential value

16   in any event because it's very narrowly construed on the facts

17   and circumstances of this situation.  But there has never been

18   a request to seal the record or to strike the record.  And we

19   certainly understand that if the settlement included the

20   vacation of that order, the whole record would continue to be

21   on the docket and visible for any party who wanted to see it.

22   We never made that as a demand.

23           MR. PETTIBONE:  Douglas Pettibone.  I never spoke with

24   this attorney with regards to any settlement discussions.  I

25   know who I spoke with.  And that's fine, Judge, I'll submit on

18

1   that.  But the thing with this order is it's a mistake of fact.

2   It's a mistake by my office if when I read it I felt that it

3   was nonappealable.  And the Court was very clear that this

4   money was to be paid.  And we read the order, our side, and I

5   look at it now and I see what they're saying but my consent was

6   a mistake then and then the Court has indicated that it did not

7   intend that to happen as well.  So, we have something that

8   didn't -- your intent was not carried out and my client should

9   not be held responsible for me misreading this.

10          MR. SCHNITZER:  Your Honor, Edward Schnitzer from Hahn

11  & Hessen on behalf of the committee.  I only wanted to speak

12  briefly, Your Honor.  I am the person who had multiple

13  conversations with Mr. Pettibone in an attempt to settle this

14  matter both before the hearing and after Your Honor's ruling.

15  Your Honor on those multiple occasions tried to settle the

16  matter, didn't -- never receive a counter offer.  What I

17  conveyed to Mr. Pettibone initially after Your Honor's ruling

18  was that the debtors and the committee were concerned about the

19  order.  We did think this was something that could be settled

20  with an appropriate amount of money.  What we would be seeking

21  with the order to be vacated and was that something that Mr.

22  Pettibone's client was interested in doing?  And if Mr.

23  Pettibone's client was interested in doing so, to get back to

24  me and I would get authority for --

25          THE COURT:  I'm sorry, I missed that part.  You have

1    to back up, like, three sentences.

2        MR. SCHNITZER:  I expressed to Mr. Pettibone that I

3    thought I could get approval for an amount of money to be paid

4    to Ms. Dobben.  What we would require is a stipulation that the

5    order be vacated so as Mr. Beach indicated so -- to dilute or

6    remove any possible precedential value, I told Mr. Pettibone if

7    that was something his client would be interested in, he should

8    get back to me so I could get authority to advance a number.

9    Mr. Pettibone got back to me, said it was something his client

10   might be interested in.  I got approval.  I made the first

11   offer which was the offer of fifty thousand dollars.  That

12   offer was rejected.  I was not given much of a reason why other

13   than a no.  I then got approval for a second offer even

14   though -- hard to say there was a negotiation at that point;

15   there was no negotiation.

16       I made a second offer of eighty thousand dollars.

17   Again, that offer was just coupled with the vacating of the

18   order, not a ceiling of a transcript, again, for the points

19   previously mentioned.  Again, we got no response to it.  I

20   believe I got a no.  I honestly right now can't even recall if

21   I got a no but I definitely did not get a counter offer either,

22   a number or the whole vacating the order parts.

23       Your Honor, I just wanted to make you aware of --

24   normally, I don't believe settlement discussions would have a

25   place here.  The reason why we had no choice but to bring them

1    up is because Ms. Dobben in her pleadings, both the initial

2    pleading and the reply, seem to imply that the debtors and the

3    committee were not engaged in good faith discussions or that

4    actual counter offers were made when that in fact is simply not

5    the case.

6         THE COURT:  Now, I -- frankly, I don't know what the

7    relevance of the settlement discussions are.  Look, there was

8    an order entered.  You were trying to compromise the order and

9    the pending appeal and you went back-and-forth with each other.

10   I don't think any party acted in bad faith on these facts.  And

11   if there was a miscommunication about whether the record was

12   sought to be sealed or not, I'm not sealing the record absent a

13   very high evidentiary showing as required by the Third Circuit.

14   So, I'm not sure it could be achieved in any event.  Because I,

15   on the top of my head, I certainly can't remember anything from

16   this record that would rise to the level of requiring or

17   allowing the sealing of the record.

18        It's also standard in my experience that settlements

19   of adverse rulings often involve the vacation of orders.

20   Indeed, I had a settlement about a year or so ago with an

21   adverse ruling that went against National Union, I think, or

22   AIG, anyway, an insurance company, and I ruled against the

23   insurance company.  They didn't like the precedent so they

24   settled and part of the settlement was I had to vacate my oral

25   ruling and the order and I did so.  But that's not sealing a

1    record.  It goes more to the vacating of the order.

2         So, I don't -- I mean I'm not trying to get in -- I'm

3    not going to get in settlement negotiations and I'm not being

4    pejorative against the debtor for submitting the order they did

5    and I'm not surprised they appealed given the ruling.  And I

6    understand and believe I'm in a box because of the pending

7    appeal.  There may be a way and frankly my clerk is looking

8    into it as to what can or can't be done with an order that's

9    pending appeal.  But this really goes to substance so I'm not

10   sure much of anything can be done.

11        But, you know, frankly I messed up signing this order.

12   It's not what I intended.  And I think it important Ms. Dobben

13   gets paid.  So, I'm inclined to get creative.  And I don't like

14   to do that.  The one thing I would consider is not approving

15   any further relief requested in this case until Ms. Dobben's

16   claim is paid in full.  So, let's take a recess.

17        MR. PETTIBONE:  Thank you.  Thank you, Your Honor.

18        (Recess from 1:28 p.m. to 1:45 p.m.)

19        THE CLERK:  All rise.

20        THE COURT:  Please be seated.

21        MR. BEACH:  Good afternoon, Your Honor.  For the

22   record, Sean Beach from Young Conaway on behalf of the debtors.

23   Your Honor, I'm pleased to announce that we were able to

24   resolve the issue including the appeal.  And the general

25   parameters of that, and Mr. Pettibone is on the phone and can

22

1   weigh in and Mr. Schnitzer may want to weigh in as well, but

2   the settlement parameters will be subject to Your Honor's

3   approval; the payment of 100,000 dollars, the dismissal of the

4   appeal within ten days of Your Honor and the vacation of the

5   original administrative claim order, and the payment and the

6   dismissal of appeal will come within ten days of that order

7   being entered.  So, it's relatively simple but --

8          THE COURT:  Okay.  Mr. Pettibone, any comment?

9          MR. PETTIBONE:  Douglas Pettibone.  No, that's the

10  deal, Your Honor.  We took your -- some indications then we

11  were talking on cell phones and e-mails while you took your

12  recess.  We appreciate that opportunity.  And the matter is

13  resolved then on those terms.

14         THE COURT:  Okay.  Mr. Schnitzer, any comment?

15         MR. SCHNITZER:  Your Honor, just to make it clear that

16  is 100,000 dollars and each party takes any of its additional

17  cost, so, there's no additional cost being paid.

18         THE COURT:  Okay.

19         MR. PETTIBONE:  I have no further comments.

20         THE COURT:  All right.  Thank you.  Obviously, I'm not

21  surprised.  But just for the record, I don't take this kind of

22  action lightly at all and I'm not pointing fingers at anyone in

23  the courtroom.  But I think it's fairly obvious from the record

24  that I was not pleased with how the case proceeded.  And that's

25  a significant motivation behind, in effect, my forcing of the

23

1  settlement.

2       So, every case is unique on its facts and this is,

3  although unique is unique, this is really unique.  And again, I

4  take -- I don't know who drafted the order that was sent on

5  consent, I do not find or any bad behavior, any

6  nonprofessionalism in connection with the submission and that

7  is very standard language and I understand that and I signed

8  it.  So, it just simply wasn't what I was contemplating.  So, I

9  just wanted to make it clear that -- you know, the conduct I

10  was concerned about really occurred quite some time ago.  But I

11  was concerned with the conduct.  I think the record makes that

12  clear.  Obviously, I awarded trouble damages so there must have

13  been something going on.

14       MR. BEACH:  Your Honor, I won't comment other than to

15  say that I don't believe that -- there certainly wasn't any

16  intentional conduct that I think Your Honor should have been

17  troubled by and I'm not sure -- I'm not sure exactly what

18  happened in the procedural posture of this case or where things

19  might have gone wrong.  But I don't believe that this situation

20  will repeat itself and to the extent we have to litigate these

21  claims again, we will make sure that we present as clear a

22  record as possible for Your Honor so that you can fully

23  appreciate the issues from both sides.

24       THE COURT:  Okay.

25       MR. PETTIBONE:  Douglas Pettibone.  I appreciate the

24

1    Court as well, deeply.  I'm thankful for your discernment.

2            THE COURT:  All right.

3            MR. PETTIBONE:  Okay.

4            THE COURT:  Submit an order under certification of

5    counsel.  We'll all read it carefully this time.

6            MR. PETTIBONE:  Douglas Pettibone.  Thank you, Your

7    Honor.

8            THE COURT:  Your welcome.  Anyone issues or just this

9    issue is certainly welcome to either hang up or leave the

10   courtroom.

11           MR. PETTIBONE:  Okay, sir.  Thank you.  Good bye.

12           THE COURT:  All right.  And now, Mr. Beach, back to

13   your normal agenda.

14           MR. BEACH:  Thank you, Your Honor.  What I'd like to

15   do now, if it's acceptable to Your Honor, is move to the item

16   we had -- item number 28 on the agenda which is the debtors'

17   motion for an order pursuant to Bankruptcy Code Sections 105

18   through 63, 1146(a) and Bankruptcy Rules 2002, 6004, 9014 and

19   9019 for the sale of the membership interest of the debtors'

20   subsidiaries Broadhollow and Melville as well as the settlement

21   of a significant number of claims and intercompany disputes

22   between the debtors and the debtor subsidiaries.

23           Your Honor, this has been an extremely heavily

24   negotiated transaction which I think is a very favorable result

25   for these estates as well as all parties in interest which

1    result in getting the companies into the hands of the primarily

2    interested parties, the parties with the primary economic

3    interest in the assets of those subsidiaries, while settling a

4    number of intercompany claims between those subsidiaries and

5    the debtors that take several litigations off Your Honor's

6    docket in the future.  It will ultimately result in

7    consideration remaining with the estate of about 5.5 million

8    which currently resides in an escrow account established long

9    ago by Your Honor in connection with an order settling certain

10   disputes with Calyon over funds and certain bank accounts and

11   then results in the payment to the purchasers of the membership

12   interest of 703,162 dollars, again, in connection with the

13   settlement release of claims and the sale of those membership

14   interests.

15            Your Honor, I know you have a heavy docket today.  I

16   do want to briefly say one of the key -- well, the key issue

17   for the debtors in connection with this sale, is the release of

18   claims and those come in a couple different ways.

19            First of all, their releases under the sale agreement,

20   which we're asking to be approved, between the debtors and

21   Broadhollow and Melville, which are triggered upon the

22   ownership changing hands to the purchaser.  So, immediately

23   upon the ownership changing hands of those companies, then the

24   releases will be triggered releasing the parties, the debtors

25   and Broadhollow, as well as the purchasers from the claims

1    among the debtors and at that point what used to be the

2    debtors' two subsidiaries.

3           And then -- so, those are direct claims that will be

4    triggered upon the sale.  And then there are other releases

5    contained in the sale order which are more narrowly tailored

6    releases between the debtors, in indentured trustee, or I

7    should say Deutsche Bank Trust Company Americas in various

8    different capacities, one is the indentured trustee, and a

9    number of other capacities which Your Honor may have seen in

10   the revised form of order that was submitted to the Court.

11           THE COURT:  Um-hum.

12           MR. BEACH:  These releases are more narrowly tailored,

13   but the overall result for the debtors is to make sure that the

14   debtors and the interested parties are purchasing these assets

15   part ways, essentially, and the claims get resolved and the

16   debtors have no more management or administrative expenses

17   resulting from managing those two subsidiaries or other claims

18   in litigation related to those subsidiaries.

19           THE COURT:  Okay.

20           MR. BEACH:  So, those releases are key to the debtors.

21   In connection with those releases, I think all of the

22   interested parties have received actual notice; although we're

23   not a hundred percent sure about that because while the

24   noteholders, or the majority of the noteholders, at least in

25   number, are the purchaser of the equity interest, Lehman

27

1    Brothers, Inc., who is the party in the in the CIPRA

2    proceedings in New York, is one of the other -- is or was one

3    of the other noteholders we've received stay relief from the

4    bankruptcy court in New York for those releases.  And Lehman

5    Brothers, Inc. has consented to both the stay relief and has

6    not raised any objections in connection with the transaction.

7        We don't know whether or not Lehman might have sold

8    some of those interests, but we did publish a publication

9    notice in the Wall Street Journal and we served notice on all

10   the creditors of AHM Corp and AHM Acceptance and any other

11   parties that we knew to have an interest in these assets.

12       So, with that, Your Honor, we did some declaration of

13   Kevin Nystrom, who's available on the phone, but since there

14   are no objections we didn't have him appear in person today.  I

15   would ask that Your Honor admit that declaration as evidence to

16   support the sale and the settlements.  I would also, since we

17   didn't specifically say it in the declaration, ask that Your

18   Honor accept an additional proffer of the facts that are

19   contained in the motion itself from Mr. Nystrom to support the

20   sale.

21       THE COURT:  Okay.

22       MR. BEACH:  And finally, unless Your Honor has any

23   questions for me, I would note that purchaser's counsel from

24   Diamond McCarthy, Allan Diamond and Christopher Provost, are in

25   the courtroom today and they have summary remarks for Your

Honor.

THE COURT:  Okay.  Thank you.  First of all, any objection to the admission of the affidavit of Mr. Nystrom including the proffer by him of the facts set forth in the motion?  I hear none.  The Court will accept that as evidence in support of the motion.  And let me hear from the buyer.

MR. DIAMOND:  Good afternoon, Your Honor, Allan Diamond with Diamond McCarthy on behalf of the purchaser, B&M Management.  And I'd like to just give the Court a quick heads-up and inform the Court as to essentially what's left and what you might see going forward in a -- the only remaining assets that have not been liquidated belonging to Broadhollow and Melville is an adversary proceeding litigation that's before this Court that has been brought against -- Bank of America is the counter swap party.

All the remaining assets of Broadhollow and Melville, including all the mortgages, have been fully liquidated and they're being dealt with and addressed by the indentured trustee.

THE COURT:  Okay.

MR. DIAMOND:  Going forward --

THE COURT:  Go ahead; I'm sorry.

MR. DIAMOND:  -- yes -- going forward, Your Honor, the only thing that's really going to be remaining is we will be in addition to counsel to B&M the purchaser here, we were and are

1    counsel to the noteholders, effectively, the parties that have

2    the economic interest, that have a pending motion before Your

3    Honor to intervene in the suit against Bank of America.  That

4    will not be moot if this acquisition is approved and will

5    simply be filing a motion to substitute as the new counsel for

6    Broadhollow and Melville in connection with that adversary

7    proceeding and it will go forward in due course.

8            THE COURT:  Oaky.  My memory is that motion intervenes

9    under advisement?

10           MR. DIAMOND:  All the briefing has been submitted but

11   there's -- yes, there's been no oral argument or no other

12   submission.

13           THE COURT:  Okay.  Thank you.

14           MR. DIAMOND:  Thank you, Your Honor.

15           THE COURT:  Anything further on this issue -- on this

16   motion?  Do you have a clean copy of the revised order?

17           MR. BEACH:  I do, Your Honor.  May I approach?

18           THE COURT:  Yes, please.  Thank you.  Have there been

19   any changes from the version that was filed?

20           MR. BEACH:  Your Honor, there were changes that were

21   filed prior to the agenda and a notice of filing and attached

22   black lines.  I can walk through those if you'd like, Your

23   Honor.

24           In addition to those changes, there was only one kind

25   of set of changes which is that the debtors in the sale

30

1    agreement had put seven of the debtors instead of eight of the

2    debtors; Great Oak was left off of that.  Obviously, it makes a

3    difference because it relates to the releases that are being

4    given as well.

5          THE COURT:  All right.  Do you have the black line

6    with you?

7          MR. BEACH:  I do.

8          THE COURT:  These are changes from the notice of

9    filing a revised order?

10          MR. BEACH:  Yes, Your Honor.  It was an inadvertent

11    error.  I think, in certain places that had all eight debtors

12    included but --

13          THE COURT:  Is that the only change; the eight

14    debtors?

15          MR. BEACH:  Yes.  And to -- and then in the order we

16    just fixed the footnote we still find on our system some of the

17    old American Home Mortgage Servicing, Inc. instead of AHMSV and

18    so that's all --

19          THE COURT:  All right.  Well, based on that

20    representation, I reviewed the revised order that was filed so

21    it was fine.  And if those are the only changes --

22          MR. BEACH:  Yes, Your Honor.  We inserted the date as

23    of yesterday we have the executed agreement --

24          THE COURT:  All right.

25          MR. BEACH:  --and a date on the sale agreement.  So,

1  they're now fully executed.  So, we've -- well, they're

2  execu -- the sale agreement has been executed.  The release

3  portions will be executed once those -- you know, once the

4  membership interest change hands or release signatures on the

5  agreements as well.

6        THE COURT:  Okay.

7        MR. BEACH:  But the difference is you've got executed

8  documents that are now dated and those other minor changes.

9        THE COURT:  All right.  I'll sign the order and

10  approve the motion.

11        MR. BEACH:  Thank you, Your Honor.

12        THE COURT:  What's next?

13        MR. BEACH:  Your Honor, items number 26 and 27, I

14  believe is saw that those were signed prior to the hearing.

15        THE COURT:  Yes.

16        MR. BEACH:  Okay.  Which brings us to item number 29

17  on the agenda, Your Honor.  Which I believe Mr. Munuti or

18  someone from his office is intending to submit a form of order

19  in connection with that, so, I'll cede the podium.

20        THE COURT:  Yes.  Ms. Currier.

21        MS. CURRIER:  Good afternoon, Your Honor.  Teresa

22  Currier from Saul Ewing here for American Home Mortgage

23  Servicing, Inc., which is the purchaser under the sale order

24  from 2007.  And briefly, Your Honor, this was a notice to

25  purchasers bar date type of cure claim.  CMI, Citi Corp

1    Mortgaging, who is in the courtroom today, is a counter party

2    under two servicing agreements that are assumed contracts.  And

3    the debtor noticed up the cure as zero and CMI objected.  And

4    because we're the purchaser and this was one of the types of

5    cure claims in our gap period that we would have been

6    responsible for, we negotiated with CMI and at one point filed

7    a reply that was an objection but we worked it out.  And we

8    have worked out a stipulation that my client would pay CMI five

9    thousand dollars to settle this, Your Honor.

10           THE COURT:  All right.

11           MS. CURRIER:  We filed the stipulation -- the debtor

12   filed the stipulation and put it out on notice on Tuesday,

13   which is a little bit of notice.  But we're here today asking

14   Your Honor to approve it and I do have an order to approve it

15   and can bring that up if you'd like to look at it.

16           THE COURT:  Please do.  Does CMI wish to be heard?

17   Mr. Fallon?  Thank you.

18           MR. FALLON:  Good afternoon, Your Honor.  Brett Fallon

19   for CitiMortgage, Inc.  I think Ms. Currier summarized that

20   there are some additional provisions of the stipulation such as

21   provision of documents and that sort of that thing but it's all

22   in there.  And the only extra thing I'd add is that this is a

23   settlement of the purchaser's cure amount which is separate

24   from the debtors' cure amount.

25           THE COURT:  Okay.  Very good.

33

1        MR. FALLON:  Thank you.

2        THE COURT:  Well, given the de minimis -- well, given

3   the issues involved and the scope of the issues involved and

4   the de minisment -- no, let's try that again -- de minim[s

5   effect on the estate, I find that limited notice was

6   appropriate and I'll approve it and I'll approve the

7   stipulation.

8        MS. CURRIER:  Thank you, Your Honor.

9        THE COURT:  You're welcome.

10       MR. NEIBURG:  Good afternoon, Your Honor.  Michael

11  Neiburg on behalf of the debtors.  Your Honor, with respect to

12  item number 30, which is the debtors' 49th Omnibus

13  nonsubstantive claim objection, the debtors received one

14  informal response from one other claimant whereby we agreed,

15  after some discussions, to insert some comfort language into

16  the order and I do have a revised form of order with a black

17  line.

18       THE COURT:  Please approach.  Thank you.  Does anyone

19  wish to be heard?  All right.  I'll approve the order as

20  modified.

21       MR. NEIBURG:  Thank you, Your Honor.  I'll cede the

22  podium to Mr. Schnitzer.

23       THE COURT:  Round robin today.  Mr. Schnitzer.

24       MR. SCHNITZER:  Your Honor, Edward Schnitzer from Hahn

25  & Hessen on behalf of the committee.  The next two items on the

1   agenda are committee items.  Number 32 is the first application

2   of Receivable Management Services for compensation for their

3   services rendered as collection agent for the committee for the

4   period of July 1, 2009 through December 31, 2009.

5        Your Honor, as you may recall Receivable Management

6   Services, called RMS, was retained by the committee as a

7   collection agent to assist in the recovery of their

8   preferences.  Their retention was approved.  Unlike other

9   professionals their retention was contingent -- or their

10  compensation was contingent based upon recoveries but they

11  received specific percentages of recoveries depending on the

12  status of those matters.  In particular, they received twenty-

13  five percent of any recoveries or preferences up until a

14  defendant has filed an answer and then that percentage goes

15  down the further along the litigation path it goes.

16       This particular application seeks the award of

17  $238,670.76.  That's based upon the settlements that this Court

18  has already approved in the first four omnibus 9019 motions.

19  Those settlements brought into the estate over a million

20  dollars.  That 238 is exactly 25 percent of those amounts which

21  is what RMS is entitled to under its retention.  For that

22  reason, the application was filed.  It was filed on notice.  No

23  objections were received.  A C&O was filed yesterday a little

24  after 4 o'clock.

25       THE COURT:  Yeah, I didn't see that; I'm sorry.  Do

1    you have a form of order with you?

2            MR. SCHNITZER:  Your Honor, I did.  There was a

3    mistake in it, so, I'd like to submit one to you separately,

4    Your Honor, to correct that?

5            THE COURT:  Okay.  Very good.  I'll -- I'm sorry,

6    anybody wish to be heard?

7            MR. SCHNITZER:  Your Honor, I should tell you I have

8    with me in the courtroom Steve Sass and Liz Plank from RMS if

9    you had any questions concerning the application.

10            THE COURT:  I do not.  All right.  I'll approve the

11    application subject to a review under certification of counsel.

12    But if it is as proffer to the Court, I'll approve it.

13            MR. SCHNITZER:  Thank you, Your Honor.

14            THE COURT:  You're welcome.

15            MR. SCHNITZER:  Your Honor, number 33 the last matter

16    on the agenda is the initial court conferences regarding five

17    preference matters.  They are Eastland Sales, Diner's Club,

18    Google, Nash Printing and Warhouseline.  I'm happy to report,

19    two of them are settled and will be contained within a 9019

20    motion which is probably going to be filed this afternoon.

21    Nonetheless, we have a proposed scheduling order with respect

22    to those five matters.  It's the identical form of scheduling

23    orders you've already entered in other matters.  Obviously, the

24    dates are changed.

25            We filed a proposed scheduling order on February 9th.

36

1    We received no formal objections.  We did receive comments from

2    two parties; both Nash and Diners Club.  They had some concerns

3    about the dates.  I informed them that I believe the dates were

4    sufficient because they were far off in the future and that the

5    order as the other orders you entered provide for the parties

6    to move dates upon rendering an agreement between them, so if

7    there were a particular situation for either Diners Club or

8    Nash or anybody that required a reason to change the dates we

9    would of course go ahead and do so.

10            With respect to the two matters that settle,

11   obviously, it's not our intent to go forward with discovery on

12   those since we'll be filing a 9019 motion which we hope will be

13   approved.  Nonetheless, we wanted a scheduling order to cover

14   those just in case.

15            THE COURT:  All right.  I agree.  Does anyone wish to

16   be heard?  All right.  All right.  Please approach.  Thank you.

17            Based upon the representations of counsel, I'll

18   approve the scheduling order as submitted.  Anything else for

19   today?

20            MR. SCHNITZER:  No, Your Honor, thank you.

21            THE COURT:  All right.  Thank you.  Hearing adjourned.

22            (Proceedings concluded at 2:07 p.m.)

23

24

25

37

1

2                              I N D E X

3

4                              RULINGS

5                                    Page      Line

6    Agenda Item No. 28          31        10

7    approved

8    Agenda Item No. 29          33        7

9    approved

10   Agenda Item No. 30          33        20

11   approved as modified

12   Agenda Item No. 32          35        10

13   approved

14   Agenda Item No. 33          36        17

15   approved

16

17

18

19

20

21

22

23

24

25

38

1

2                    C E R T I F I C A T I O N

3

4    I, Ellen S. Kolman certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Signature_____

8    Ellen S. Kolman

9

10

     Veritext

11

12   200 Old Country Road

13

     Suite 580

14

15   Mineola, NY 11501

16

17

     Date: March 1, 2010

18

19

20

21

22

23

24

25