**<u>Exhibit B</u>**

Note

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,007,000.00 | 08-09-2005 | 08-09-2008 | 1005629 | D2 | | CP | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** American Home Mortgage Corp. (TIN: 13-3461558)
538 Broadhollow Rd.
Melville, NY 11747

**Lender:** Park National Bank and Trust of Chicago
2958 North Milwaukee Avenue
Chicago, IL 60618
(773) 384-3400

**Principal Amount: $1,007,000.00**                                      Date of Note: August 9, 2005

**PROMISE TO PAY.** American Home Mortgage Corp. ("Borrower") promises to pay to Park National Bank and Trust of Chicago ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Seven Thousand & 00/100 Dollars ($1,007,000.00), together with interest on the unpaid principal balance from August 9, 2005, until paid in full.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule: 36 monthly consecutive principal and interest payments of $9,202.49 each, beginning September 1, 2005, with interest calculated on the unpaid principal balances at an interest rate of 7.180% per annum; and one principal and interest payment of $882,567.92 on August 9, 2008, with interest calculated on the unpaid principal balances at an interest rate of 7.180% per annum.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges.   The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**TAX AND INSURANCE RESERVES.** Borrower agrees to establish a reserve account to be retained from the loans proceeds in such amount deemed to be sufficient by Lender and shall pay monthly into that reserve account an amount equivalent to 1/12 of the annual real estate taxes and insurance premiums, as estimated by Lender, so as to provide sufficient funds for the payment of each year's taxes and insurance premiums one month prior to the date the taxes and insurance premiums become delinquent.  Borrower shall further pay a monthly pro-rata share of all assessments and other charges which may accrue against the Property.  If the amount so estimated and paid shall prove to be insufficient to pay such taxes, insurance premiums, assessments and other charges, Borrower shall pay the difference on demand of Lender.  All such payments shall be carried in an interest-free reserve account with Lender, provided that if this Note is executed in connection with the granting of a mortgage on a single-family owner-occupied residential property, Borrower, in lieu of establishing such reserve account, may pledge an interest-bearing savings account with Lender to secure the payment of estimated taxes, insurance premiums, assessments, and other charges.  Lender shall have the right to draw upon the reserve (or pledge) account to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it.  Nothing in the Note shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account.  Subject to any limitations set by applicable law, if the amount so estimated and paid shall prove to be insufficient to pay such taxes, insurance premiums, assessments and other charges, Borrower shall pay the difference as required by Lender.  All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default as described below.

**PREPAYMENT PENALTY.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Upon prepayment of this Note, Lender is entitled to the following prepayment penalty:  If the Prepayment occurs during the 1st year of the Term, a Prepayment Charge equal to 3% of the Prepayment will be due; if the Prepayment occurs during the 2nd year of the Term, a Prepayment Charge equal to 2% of the Prepayment will be due; if the Prepayment occurs during the 3rd year of the Term, a Prepayment Charge equal to 1% of the Prepayment will be due. Notwithstanding anything to the contrary set forth herein, if the Prepayment is made any time within 30 days of the Maturity Date, no Prepayment Charge will be due. Except for the foregoing, Borrower may pay all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments.  Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language.  If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to:  Park National Bank and Trust, 2958 North Milwaukee Avenue Chicago, IL  60618.

**LATE CHARGE.** If a payment is 11 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to 18.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading in any time thereafter respect, at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help,

Loan No: 1005629                                                                                                                          Page 2

repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor.  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.  In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Change In Ownership.  Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

Adverse Change.  A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Insecurity.  Lender in good faith believes itself insecure.

Cure Provisions.  If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default:  (1)  cures the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

LENDER'S RIGHTS.  Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

ATTORNEYS' FEES; EXPENSES.  Lender may hire or pay someone else to help collect this Note if Borrower does not pay.  Borrower will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER.  Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW.  This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions.  This Note has been accepted by Lender in the State of Illinois.

CHOICE OF VENUE.  If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

RIGHT OF SETOFF.  To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account).  This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future.  However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.  Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

COLLATERAL.  Borrower acknowledges this Note is secured by Land Trust Mortgage and Assignment of Rents dated 08-09-2005 from North Star Trust Company, Successor Trustee to Park National Bank and Trust of Chicago, not personally but solely as Trustee u/t/a/ dated 12-20-1993 and known as Trust No. 10129 to Lender on real property commonly known as 950 N. Elmhurst Road, Mt. Prospect, Cook County, Illinois; all terms and conditions of which are hereby incorporated and made a part of this Note.

SUCCESSOR INTERESTS.  The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS.  Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them.  Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.  Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Note are joint and several.

ILLINOIS INSURANCE NOTICE.  Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral.  This insurance may, but need not, protect Borrower's interests.  The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral.  Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement.  If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance.  The costs of the insurance may be added to Borrower's total outstanding balance or obligation.  The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

**PROMISSORY NOTE**
(Continued)

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE.  BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

AMERICAN HOME MORTGAGE CORP.

By: _____
Authorized  Signer  for  American  Home  Mortgage
Corp.

## Exhibit C

Mortgage

RECORDATION REQUESTED BY:
    Park National Bank and Trust
    of Chicago
    2958 North Milwaukee
    Avenue
    Chicago, IL  60618

WHEN RECORDED MAIL TO:
    Park National Bank and Trust
    of Chicago
    2958 North Milwaukee
    Avenue
    Chicago, IL  60618

SEND TAX NOTICES TO:
    Park National Bank and Trust
    of Chicago
    2958 North Milwaukee
    Avenue
    Chicago, IL  60618



Doc#:  0522449057 Fee: $52.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 08/12/2005 03:08 PM Pg: 1 of 15

**FOR RECORDER'S USE ONLY**

6707605  1073

This Mortgage prepared by:
    Dorothy Gorski, Administrative Asst., Comml. Lending
    Park National Bank and Trust of Chicago
    2958 North Milwaukee Avenue
    Chicago, IL 60618

FREEDOM TITLE CORP.

# MORTGAGE

MAXIMUM LIEN.  At no time shall the principal amount of Indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $2,014,000.00.

THIS MORTGAGE dated August 9, 2005, is made and executed between North Star Trust Company, not personally but solely as Successor Trustee to Park National Bank and Trust of Chicago, under Trust Agreement dated 12-20-1993 and known as Trust No. 10129 (referred to below as "Grantor") and Park National Bank and Trust of Chicago, whose address is 2958 North Milwaukee Avenue, Chicago, IL  60618 (referred to below as "Lender").

GRANT OF MORTGAGE.  For valuable consideration, Grantor not personally but as Trustee under the provisions of a deed or deeds in trust duly recorded and delivered to Grantor pursuant to a Trust Agreement dated December 20, 1993 and known as North Star Trust Company, not personally but solely as Successor Trustee to Park National Bank and Trust of Chicago, u/t/a dated 12-20-1993 and known as Trust No. 10129, mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Cook County, State of Illinois:

    Legal Description attached hereto and made a part hereof as Exhibit "A".

The Real Property or its address is commonly known as  950 N. Elmhurst Road, Mt. Prospect, IL  60056. The Real Property tax identification number is 03-27-307-024.

PARCEL 1
LOT 1 IN RAND - ELMHURST SUBDIVISION BEING A SUBDIVISION OF PART OF THE EAST 1/2 OF THE
SOUTHWEST 1/4 OF SECTION 27, TOWNSHIP 42 NORTH, RANGE 11 EAST OF THE THIRD PRINCIPAL
MERIDIAN, IN THE VILLAGE OF MT. PROSPECT, ACCORDING TO THE PLAT THEREOF RECORDED
December 18, 1968 AS DOCUMENT 20707569 IN COOK COUNTY, ILLINOIS

PARCEL 2:
EASEMENT FOR DRIVEWAY PURPOSES, INGRESS AND EGRESS AND UNDERGROUND UTILITIES FOR
THE BENEFIT OF PARCEL 1 AFORESAID, AS CREATED BY DEED FROM F. C. BREHM, AS TRUSTEE
UNDER TRUST AGREEMENT DATED October 1, 1958 AS KNOWN AS TRUST NO. 580 TO THE
FIRESTONE TIRE AND RUBBER COMPANY RECORDED January 18, 1965 AS DOCUMENT NO. 19358929,
OVER:

THE SOUTHWEST 10 FEET AS MEASURED PERPENDICULAR TO THE SOUTHWEST LINE (EXCEPT THE
SOUTHEAST 45 FEET THEREOF) THE NORTHWEST 25 FEET OF THE SOUTHEAST 45 FEET AS
MEASURED PERPENDICULAR TO THE SOUTHEAST LINE, AND THE WEST 25 FEET OF THE EAST 45
FEET LYING WEST OF THE WEST LINE OF ELMHURST ROAD (EXCEPT THE AFOREDESCRIBED
SOUTHEAST 45 FEET THEREOF) OF THE FOLLOWING DESCRIBED TRACT OF LAND:

THAT PART OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, TOWNSHIP 42 NORTH, RANGE
11 EAST OF THE THIRD PRINCIPAL MERIDIAN, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE CENTER LINE OF RAND ROAD WITH THE EAST LINE OF
SAID EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 27, SAID POINT OF INTERSECTION BEING 198.97
FEET NORTH OF THE SOUTH LINE OF SAID SECTION 27: THENCE NORTHWESTERLY ALONG THE
SAID CENTER LINE OF RAND ROAD, 439.93 FEET; THENCE NORTHEASTERLY ON A STRAIGHT LINE
THAT IF EXTENDED WOULD INTERSECT THE EAST LINE OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF
SAID SECTION 27 AT A DISTANCE OF 439.93 FEET NORTH OF THE INTERSECTION OF THE SAID EAST
LINE WITH THE CENTER LINE OF RAND ROAD, FOR A DISTANCE OF 170.23 FEET TO THE POINT OF
BEGINNING;

THENCE NORTHWESTERLY AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, A DISTANCE OF
189.03 FEET, THENCE NORTHEASTERLY AT RIGHT ANGLES TO THE LAST DESCRIBED COURSE, A
DISTANCE OF 249.60 FEET TO THE POINT ON THE AFORESAID EAST LINE OF THE EAST 1/2 OF THE
SOUTHWEST 1/4 OF SECTION 27; THENCE SOUTHWARD ALONG THE SAID EAST LINE A DISTANCE OF
205.00 FEET TO THE POINT BEING 439.93 FEET NORTH OF THE INTERSECTION OF THE SAID EAST
LINE OF THE CENTER LINE OF RAND ROAD; THENCE SOUTHWESTERLY, A DISTANCE OF 170.27 FEET
TO THE POINT OF BEGINNING (EXCEPTING THEREFROM THAT PART THEREOF HERETOFORE
DEDICATED FOR PUBLIC HIGHWAYS) IN COOK COUNTY, ILLINOIS

Loan No: 1005629

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.**  Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby  (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a

MORTGAGE
(Continued)

consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security

satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor

MORTGAGE
(Continued)

shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**TAX AND INSURANCE RESERVES.** Grantor agrees to establish a reserve account to be retained from the loans proceeds in such amount deemed to be sufficient by Lender and shall pay monthly into that reserve account an amount equivalent to 1/12 of the annual real estate taxes and insurance premiums, as estimated by Lender, so as to provide sufficient funds for the payment of each year's taxes and insurance premiums one month prior to the date the taxes and insurance premiums become delinquent. Grantor shall further pay a monthly pro-rata share of all assessments and other charges which may accrue against the Property. If the amount so estimated and paid shall prove to be insufficient to pay such taxes, insurance premiums, assessments and other charges, Grantor shall pay the difference on demand of Lender. All such payments shall be carried in an interest-free reserve account with Lender, provided that if this Mortgage is executed in connection with the granting of a mortgage on a single-family owner-occupied residential property, Grantor, in lieu of establishing such reserve account, may pledge an interest-bearing savings account with Lender to secure the payment of estimated taxes, insurance premiums, assessments, and other charges. Lender shall have the right to draw upon the reserve (or pledge) account to pay such items, and Lender shall not be required to determine the validity or accuracy of any item before paying it. Nothing in the Mortgage shall be construed as requiring Lender to advance other monies for such purposes, and Lender shall not incur any liability for anything it may do or omit to do with respect to the reserve account. Subject to any limitations set by applicable law, if the amount so estimated and paid shall prove to be insufficient to pay such taxes, insurance premiums, assessments and other charges, Grantor shall pay the difference as required by Lender. All amounts in the reserve account are hereby pledged to further secure the Indebtedness, and Lender is hereby authorized to withdraw and apply such amounts on the Indebtedness upon the occurrence of an Event of Default as described below.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

Loan No: 1005629                                                                                                    Page 6

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient

to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

Loan No: 1005629                                                                                                    Page 8

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Borrower's or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all

Loan No: 1005629                                                                                          Page 10

reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Cook County, State of Illinois.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent

instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS MORTGAGE, GRANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED UNDER 735 ILCS 5/15-1601(b) OR ANY SIMILAR LAW EXISTING AFTER THE DATE OF THIS MORTGAGE, ANY AND ALL RIGHTS OF REDEMPTION ON GRANTOR'S BEHALF AND ON BEHALF OF ANY OTHER PERSONS PERMITTED TO REDEEM THE PROPERTY.

**Grantor's Liability.** This Mortgage is executed by Grantor, not personally but as Trustee as provided above in the exercise of the power and the authority conferred upon and vested in it as such Trustee (and Grantor thereby warrants that it possesses full power and authority to execute this instrument). It is expressly understood and agreed that with the exception of the foregoing warranty, notwithstanding anything to the contrary contained herein, that each and all of the warranties, indemnities, representations, covenants, undertakings, and agreements made in this Mortgage on the part of Grantor, while in form purporting to be the warranties, indemnities, representations, covenants, undertakings, and agreements of Grantor, are nevertheless each and every one of them made and intended not as personal warranties, indemnities, representations, covenants, undertakings, and agreements by Grantor or for the purpose or with the intention of binding Grantor personally, and nothing in this Mortgage or in the Note shall be construed as creating any liability on the part of Grantor personally to pay the Note or any interest that may accrue thereon, or any other Indebtedness under this Mortgage, or to perform any covenant, undertaking, or agreement, either express or implied, contained in this Mortgage, all such liability, if any, being expressly waived by Lender and by every person now or hereafter claiming any right or security under this Mortgage, and that so far as Grantor and its successors personally are concerned, the legal holder or holders of the Note and the owner or owners of any Indebtedness shall look solely to the Property for the payment of the Note and Indebtedness, by the enforcement of the lien created by this Mortgage in the manner provided in the Note and herein or by action to enforce the personal liability of any Guarantor or obligor, other than Grantor, on the Note.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful

money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means any and all persons and entities signing the Note.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means North Star Trust Company, not personally but as Trustee under that certain Trust Agreement dated December 20, 1993 and known as trust number 10129. The Grantor is the mortgagor under this Mortgage.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Park National Bank and Trust of Chicago, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated August 9, 2005, in the original principal amount of $1,007,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The interest rate on the Note is 7.180%. Payments on the Note are to be made in accordance with the following payment schedule: 36 monthly consecutive principal and interest payments of $9,202.49 each, beginning September 1, 2005, with interest calculated on the unpaid principal balances at an interest rate of 7.180% per annum; and one principal and interest payment of $882,567.92 on August 9, 2008, with interest calculated on the unpaid principal balances at an interest rate of 7.180% per annum. This estimated final payment is based on the assumption

MORTGAGE
(Continued)

that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Mortgage.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means North Star Trust Company, whose address is 500 West Madison Street, Chicago , IL  60661, and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

NORTH STAR TRUST COMPANY, NOT PERSONALLY BUT SOLELY AS SUCCESSOR TRUSTEE TO PARK NATIONAL BANK AND TRUST OF CHICAGO, U/T/A DATED 12-20-1993 AND KNOWN AS TRUST NO. 10129

By: _____

Authorized Signer for North Star Trust Company, not personally but solely as Successor Trustee to Park National Bank and Trust of Chicago, u/t/a dated 12-20-1993 and known as Trust No. 10129

Loan No: 1005629

**MORTGAGE**
**(Continued)**

Page 14

## TRUST ACKNOWLEDGMENT

STATE OF _Illinois_                                    )
                                                       ) SS
COUNTY OF _Lake_                                       )

On this _9TH_ day of _August_ _2005_ before me, the undersigned Notary Public, personally appeared _Silvia Medina, Trust Officer_ _of  North Star Trust Company_ , and known to me to be (an) authorized trustee(s) or agent(s) of the trust that executed the Mortgage and acknowledged the Mortgage to be the free and voluntary act and deed of the trust, by authority set forth in the trust documents or, by authority of statute, for the uses and purposes therein mentioned, and on oath stated that he or she/they is/are authorized to execute this Mortgage and in fact executed the Mortgage on behalf of the trust.

By _Sharon K. Crowley_                    Residing at _____

Notary Public in and for the State of _Illinois_

My commission expires _____

> "OFFICIAL SEAL"
> Sharon K. Crowley
> Notary Public, State of Illinois
> My Commission Expires Sept. 17, 2008

LASER PRO Lending, Ver 5.27.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - IL c:\LASERPRO\CFI\LPL\G03.FC  TR-1345  PR-20

## **Exhibit D**

First Loan Modification Agreement

With respect to the mortgage on 950 Elmhurst Road, Mount Prospect, Illinois, and the related loan documents (the "Loan Documents") this is to confirm the following:

1.     The due date of the mortgage is extended through February 9, 2009 (the "Extended Due Date") subject to the principal balance and amounts coming due, pursuant to the Loan Documents, prior to the Extended Due Date.

2.     Monthly payments will continue to be made (with the same 7.18% interest rate) as were previously made under the Loan Documents.

3.     Whenever the mortgage loan comes due or prepaid, but no later than the Extended Due Date, there will be due to Park National, in addition to the amounts due under the Loan Documents, the following:  (a) Park National's legal fees through July 25, 2008 in the amount of $8,113.80, and (b) an extension fee of $8,806.40.

4.     If Bankruptcy Court approval is required, American Home Mortgage Corp. will apply and proceed in good faith to obtain such approval.

5.     Except as modified herein, the Loan Documents remain in full force and effect.  No change or modification shall be effective unless in writing and signed by the party to be changed with such change or modification.

Dated: July 28, 2008

AMERICAN HOME MORTGAGE CORP.

By: _____
    Name: _____

        Position: _____


PARK NATIONAL BANK AND TRUST
OF CHICAGO

By: _____
    Name: _____
                  Frederick D. Body
    Position: _Senior Vice President_

With respect to the mortgage on 950 Elmhurst Road, Mount Prospect, Illinois, and the related loan documents (the "Loan Documents") this is to confirm the following:

1.      The due date of the mortgage is extended through February 9, 2009 (the "Extended Due Date") subject to the principal balance and amounts coming due, pursuant to the Loan Documents, prior to the Extended Due Date.

2.      Monthly payments will continue to be made (with the same 7.18% interest rate) as were previously made under the Loan Documents.

3.      Whenever the mortgage loan comes due or prepaid, but no later than the Extended Due Date, there will be due to Park National, in addition to the amounts due under the Loan Documents, the following:  (a) Park National's legal fees through July 25, 2008 in the amount of $8,113.80, and (b) an extension fee of $8,806.40.

4.      If Bankruptcy Court approval is required, American Home Mortgage Corp. will apply and proceed in good faith to obtain such approval.

5.      Except as modified herein, the Loan Documents remain in full force and effect.  No change or modification shall be effective unless in writing and signed by the party to be changed with such change or modification.

Dated: August ___, 2008

AMERICAN HOME MORTGAGE CORP.

By: _____
    Name: _Bret W Fernandes_
    Position: _Director of Restructuring_

PARK NATIONAL BANK AND TRUST
OF CHICAGO

By: _____
    Name: _____
          Frederick D. Body
    Position: Senior Vice President

**Exhibit E**

Second Loan Modification Agreement

## SECOND LOAN MODIFICATION AGREEMENT

With respect to that certain Promissory Note (the "Note") dated August 9, 2005,

in the original principal amount of $1,007,000 (the "Loan"), by American Home Mortgage Corp.

("Borrower"), as maker, in favor of Park National Bank and Trust Company of Chicago

("Lender"), as payee, which Note is secured by that certain Mortgage (the "Mortgage") dated

August 9, 2005, and recorded in Cook County, Illinois on August 12, 2005, as document number

0522449057, on the property known as 950 Elmhurst Road, Mount Prospect, Illinois (the Note,

Mortgage and all other documents executed and/or delivered in connection with the Loan, all as

amended by that certain loan modification agreement (the "First Modification") dated July 28,

2008, by and between Borrower and Lender, are herein referred to collectively as the "Loan

Documents"), this is to confirm (the "Confirmation") the following:

1.    The due date of the Loan and the maturity date of the Note is extended

through August 9, 2009 (the "Extended Due Date") subject to the principal balance and amounts

coming due, pursuant to the Loan Documents, prior to the Extended Due Date.

2.    Monthly payments will continue to be made (with the same 7.18% interest

rate) as were previously made under the Loan Documents.

3.    Whenever the Loan comes due or is prepaid, but no later than the

Extended Due Date, there will be due to Park National, in addition to the amounts due under the

Loan Documents, the following: (a) Park National's legal fees through January 31, 2009 in the

aggregate amount of $15,000.00 (the "Legal Fees") and (b) an extension fee in the aggregate

amount of $17,612.80 (the "Extension Fee").  Notwithstanding anything contained herein or in

any one or more of the Loan Documents, including, but not limited to the, First Modification, to

the contrary, Lender acknowledges and agrees that the aforementioned Legal Fees and Extension

Fee include in the totals thereof, and are not in addition to, the legal fees and extension fee

provided for in Paragraph 3 of the First Modification. Lender acknowledges and agrees that

Lender shall not be entitled to receive, and Borrower shall not be obligated to pay, or liable for,

any legal fees or extension fees in excess of the above-listed $15,000.00 Legal Fees and

$17,612.80 Extension Fee.

4.      If Bankruptcy Court approval is required for the validity of the

Confirmation, American Home Mortgage Corp. will apply and proceed in good faith to obtain

such approval.

5.      If there is an Event of Default under the Loan Documents, Park National

may then apply to the Bankruptcy Court, on an expedited basis, to lift the bankruptcy stay and to

vacate any injunction that is part of a confirmed bankruptcy plan. Notwithstanding the

foregoing, the substantive rights of American Home Mortgage Corporation and other parties in

interest to contest any such request on any and all bases is preserved.

6.      Except as modified herein, the Loan Documents remain in full force and

effect. No change or modification shall be effective unless in writing and signed by the party to

be changed with such change or modification. This Agreement may be executed in one or more

counterparts by facsimile signatures and/or original signatures. The signatures of the parties who

sign different counterparts of this Agreement or any of the instruments executed to effectuate the

purposes of this Agreement shall have the same effect as if those parties had signed the same

counterparts of this Agreement or of any such instrument.

End of Text – One Execution Page Follows

Dated: February 3, 2009

AMERICAN HOME MORTGAGE CORP.

By: _Bret W Hunt_

Name: _Bret W Fernandes_

Position: _Director of Restructuring_

PARK NATIONAL BANK AND TRUST
    OF CHICAGO

By: _____

Name: _____
           Frederick D. Body

Position: _Senior Vice President_

Dated: February 3, 2009

AMERICAN HOME MORTGAGE CORP.

PARK NATIONAL BANK AND TRUST
OF CHICAGO

By: _____

   Name: _____

     Position: _____

By: _____

   Name: _____
          Frederick D. Body

     Position:  Senior Vice President

**<u>Exhibit F</u>**

Repair and Maintenance Expenses

# American Home Mortgage Corp.
Repair and Maintenance Expenses

| Vendor Name | Invoice Number | Invoice Date | Check Number | Amount |
|---|---|---|---|---|
| C. B. Contractors, Inc. | 08220755b | 8/22/2007 | 0330507 | $5,610.59 |
| C. B. Contractors, Inc. | 09100756 | 9/10/2007 | 0330507 | $3,036.25 |
| C. B. Contractors, Inc. | 09170757 | 9/17/2007 | 0330507 | $5,517.71 |
| C. B. Contractors, Inc. | 10160759 | 10/15/2007 | 0331528 | $11,517.71 |
| C. B. Contractors, Inc. | 11010760 | 10/31/2007 | 0331528 | $3,036.25 |
| C. B. Contractors, Inc. | 092820758 | 9/28/2007 | 0333259 | $6,036.25 |
| C. B. Contractors, Inc. | 11160761 | 11/16/2007 | 0333259 | $3,631.22 |
| C. B. Contractors, Inc. | 11300762 | 11/30/2007 | 0333259 | $3,036.25 |
| C. B. Contractors, Inc. | 12170763 | 12/17/2007 | 0333736 | $3,631.22 |
| C. B. Contractors, Inc. | 1150865 | 11/5/2008 | 0333912 | $3,631.22 |
| C. B. Contractors, Inc. | 12280764 | 12/28/2007 | 0334377 | $3,036.25 |
| C. B. Contractors, Inc. | 01310866 | 1/31/2008 | 0334377 | $3,111.25 |
| C. B. Contractors, Inc. | 2150867 | 2/15/2008 | 0334542 | $3,706.22 |
| C. B. Contractors, Inc. | 2290868 | 2/29/2028 | 0334542 | $3,370.56 |
| C. B. Contractors, Inc. | 3150869 | 3/15/2008 | 0335170 | $3,720.22 |
| C. B. Contractors, Inc. | 03310870 | 3/31/2008 | 0335402 | $3,125.25 |
| C. B. Contractors, Inc. | 04150871 | 4/15/2008 | 0335402 | $3,720.22 |
| C. B. Contractors, Inc. | 04300872 | 4/30/2008 | 0335402 | $3,272.89 |
| C. B. Contractors, Inc. | 05150873 | 5/15/2008 | 0335512 | $3,787.64 |
| C. B. Contractors, Inc. | 05310874 | 5/31/2008 | 0335605 | $3,125.25 |
| C. B. Contractors, Inc. | 06160875 | 6/16/2008 | 0335635 | $4,598.33 |
| C. B. Contractors, Inc. | 0300876 | 6/30/2008 | 0335635 | $3,125.25 |
| C. B. Contractors, Inc. | 07150877 | 7/15/2008 | 0335701 | $3,868.09 |
| C. B. Contractors, Inc. | 08010878 | 8/1/2008 | 0335785 | $3,125.25 |
| C. B. Contractors, Inc. | 08150879 | 8/15/2008 | 0335835 | $3,856.43 |
| C. B. Contractors, Inc. | 09150881 | 9/15/2010 | 0335897 | $4,044.87 |
| C. B. Contractors, Inc. | 08090280 | 9/2/2008 | 0335978 | $3,622.85 |
| C. B. Contractors, Inc. | 10170883 | 10/17/2008 | 0336006 | $3,720.22 |
| C. B. Contractors, Inc. | 08093082 | 9/30/2008 | 0336070 | $3,367.49 |
| C. B. Contractors, Inc. | 08103184 | 10/31/2008 | 0336143 | $3,125.25 |
| C. B. Contractors, Inc. | 11170885 | 11/17/2008 | 0336454 | $4,357.35 |

9338790_1.XLS

# American Home Mortgage Corp.
Repair and Maintenance Expenses

| Vendor Name | Invoice Number | Invoice Date | Check Number | Amount |
|---|---|---|---|---|
| C. B. Contractors, Inc. | 08112586 | 11/30/2008 | 0336544 | $3,125.25 |
| C. B. Contractors, Inc. | 12150887 | 12/15/2008 | 0336559 | $3,808.94 |
| C. B. Contractors, Inc. | 08122388 | 1/6/2009 | 0335699 | $3,125.25 |
| C. B. Contractors, Inc. | 01130989 | 1/15/2009 | 0336651 | $3,808.94 |
| C. B. Contractors, Inc. | 09013190 | 1/31/2009 | 0336686 | $3,467.28 |
| C. B. Contractors, Inc. | 02130989 | 2/13/2009 | 0336720 | $3,808.94 |
| C. B. Contractors, Inc. | 02250992 | 2/28/2009 | 0336748 | $3,224.03 |
| C. B. Contractors, Inc. | 03110993 | 3/11/2009 | 0336792 | $3,808.94 |
| C. B. Contractors, Inc. | 03300994 | 3/31/2009 | 0336849 | $3,125.25 |
| C. B. Contractors, Inc. | 04130995 | 4/15/2009 | 0336863 | $3,808.94 |
| C. B. Contractors, Inc. | 04280996 | 4/28/2009 | 0336912 | $3,457.33 |
| C. B. Contractors, Inc. | 05080997 | 5/8/2009 | 0336962 | $4,290.18 |
| C. B. Contractors, Inc. | 06010998 | 6/1/2009 | 0337002 | $3,125.25 |
| C. B. Contractors, Inc. | 06100999 | 6/10/2009 | 0337022 | $3,808.94 |
| C. B. Contractors, Inc. | 070109100 | 7/1/2009 | 0337055 | $3,125.25 |
| C. B. Contractors, Inc. | 071309101 | 7/29/2009 | 0337087 | $4,355.06 |
| C. B. Contractors, Inc. | 080309102 | 8/3/2009 | 0337124 | $3,330.57 |
| C. B. Contractors, Inc. | 081209103 | 8/14/2009 | 0337124 | $3,808.94 |
| C. B. Contractors, Inc. | 082609104 | 8/26/2009 | 0337161 | $3,125.25 |
| C. B. Contractors, Inc. | 090909105 | 9/9/2009 | 0337179 | $3,808.94 |
| C. B. Contractors, Inc. | 092409106 | 9/24/2009 | 0337206 | $3,125.25 |
| C. B. Contractors, Inc. | 100809107 | 10/15/2009 | 0337223 | $4,032.21 |
| C. B. Contractors, Inc. | 102609108 | 10/26/2009 | 0337252 | $3,125.25 |
| C. B. Contractors, Inc. | 111209109 | 11/12/2009 | 0337307 | $3,808.94 |
| C. B. Contractors, Inc. | 113009110 | 11/30/2009 | 0337354 | $3,125.25 |
| C. B. Contractors, Inc. | 121509111 | 12/15/2009 | 0337354 | $3,808.94 |
| Bobby on the Spot | 20210 | 10/11/2007 | 0331100 | $371.20 |
| Bobby on the Spot | 21064 | 12/10/2007 | 0333426 | $845.00 |
| Bobby on the Spot | 21191 | 12/19/2007 | 0333707 | $1,000.00 |
| Bobby on the Spot | 3 | 2/3/2008 | 0334376 | $1,276.00 |
| Bobby on the Spot | 20614 | 11/1/2007 | 0334495 | $160.00 |

9338790_1.XLS

# American Home Mortgage Corp.
Repair and Maintenance Expenses

| Vendor Name | Invoice Number | Invoice Date | Check Number | Amount |
|---|---|---|---|---|
| Bobby on the Spot | 4 | 3/4/2008 | 0334717 | $1,225.00 |
| Bobby on the Spot | 5 | 4/2/2008 | 0335236 | $175.00 |
| Bobby on the Spot | 15 | 1/6/2009 | 0336596 | $635.00 |
| Bobby on the Spot | 105 | 2/25/2009 | 0336746 | $270.00 |
| Bobby on the Spot | 70 | 1/21/2009 | 0336810 | $905.00 |
| Bobby on the Spot | 45 | 12/30/2008 | 0336810 | $1,055.00 |
| Bobby on the Spot | 132 | 4/21/2009 | 0336940 | $180.00 |
| Candy Serrano Landscaping | April/May | 6/2/2008 | 0335581 | $280.00 |
| Candy Serrano Landscaping | June 08 | 6/30/2008 | 0335700 | $140.00 |
| Candy Serrano Landscaping | July 08 | 8/14/2008 | 0335896 | $140.00 |
| Candy Serrano Landscaping | August 08 | 8/31/2008 | 0335896 | $140.00 |
| Candy Serrano Landscaping | Sept 08 | 9/30/2008 | 0336034 | $140.00 |
| Candy Serrano Landscaping | Oct 08 | 10/31/2008 | 0336141 | $140.00 |
| Candy Serrano Landscaping | Nov 08 | 11/30/2008 | 0336535 | $140.00 |
| Candy Serrano Landscaping | April 09 | 5/13/2009 | 0336960 | $100.00 |
| Candy Serrano Landscaping | May 09 | 5/31/2009 | 0337001 | $100.00 |
| Candy Serrano Landscaping | June 09 | 7/1/2009 | 0337053 | $100.00 |
| Candy Serrano Landscaping | July 09 | 8/5/2009 | 0337123 | $100.00 |
| Candy Serrano Landscaping | August 09 | 8/28/2009 | 0337160 | $100.00 |
| Candy Serrano Landscaping | Sept 09 | 9/30/2009 | 0337205 | $100.00 |
| Candy Serrano Landscaping | Oct 09 | 10/30/2009 | 0337279 | $100.00 |
| Candy Serrano Landscaping | Nov 09 | 12/3/2009 | 0337353 | $100.00 |
| Omni-1 Electronics, Inc. | 42460 | 10/11/2007 | 0331105 | $605.00 |
| Omni-1 Electronics, Inc. | 44359 | 6/20/2008 | 0335667 | $605.00 |
| Omni-1 Electronics, Inc. | 44570 | 9/1/2008 | 0335994 | $420.00 |
| Omni-1 Electronics, Inc. | 46416 | 4/1/2009 | 0336843 | $605.00 |
| Omni-1 Electronics, Inc. | 47294 | 9/1/2009 | 0337174 | $420.00 |
| Omni-1 Electronics, Inc. | 47891 | 11/10/2009 | 0337313 | $1,500.00 |
| Village of Mount Prospect | 23150 | 12/2/2008 | 0336542 | $50.00 |
| Village of Mount Prospect | 18680 | 5/21/2008 | 0336542 | $50.00 |
| Village of Mount Prospect | 15916 | 11/6/2007 | 0336542 | $50.00 |

3

9338790_1.XLS

# American Home Mortgage Corp.
Repair and Maintenance Expenses

| Vendor Name | Invoice Number | Invoice Date | Check Number | Amount |
|---|---|---|---|---|
| Village of Mount Prospect | 24154 | 5/7/2009 | 0336976 | $50.00 |
| Village of Mount Prospect | 27632 | 11/4/2009 | 0337322 | $50.00 |
| Zartler Heating & Air Conditioning, Inc. | 22508 | 2/25/2008 | 0334582 | $162.00 |
| Zartler Heating & Air Conditioning, Inc. | 1156 | 6/29/2008 | 0335705 | $335.00 |
| Zartler Heating & Air Conditioning, Inc. | 1489 | 12/3/2008 | 0336590 | $130.00 |
| Zartler Heating & Air Conditioning, Inc. | 1622 | 2/6/2009 | 0336728 | $1,127.00 |
| Zartler Heating & Air Conditioning, Inc. | 1883 | 6/26/2009 | 0337059 | $627.00 |
| Scott Karzmar Commercial HVAC | 3/11/08 | 3/11/2008 | 0334725 | $518.12 |
| Signs Signs Signs, Inc. | Repair Sign | 4/17/2008 | 0335407 | $575.00 |
| Illinois Office of the State Fire Marshal | 5125015628 | 12/22/2008 | 0336751 | $30.00 |
| Jeffrey Elevator Co., Inc. | 91375 | 5/12/2008 | 0335440 | $4,800.00 |
| A&A Sprinkler Co., Inc. | 9086 | 10/5/2007 | 0331346 | $545.00 |
| A&A Sprinkler Co., Inc. | 9464 | 10/21/2008 | 0336140 | $191.00 |
| A&A Sprinkler Co., Inc. | Gen Insp 09 | 7/13/2009 | 0337080 | $375.00 |
| Temperature Controlle Systems Inc. | 1 | 7/25/2008 | 0336048 | $546.00 |
| Temperature Controlle Systems Inc. | Bal Due | 11/16/2009 | 0337318 | $6,893.47 |
| Temperature Controlle Systems Inc. | Down Payment | 10/20/2009 | Wire Transfer (243472-00) | $10,072.58 |
| | | | TOTAL | $257,194.48 |

4

## **Exhibit G**

Insurance Invoice



**InterCity Agency, Inc.**
INSURANCE

Business built
through trust.

And a commitment
to keeping it.

REMIT TO: 42-40 BELL BOULEVARD, SUITE 103 • BAYSIDE, NEW YORK 11361 • PHONE 718 279-7700 • FAX 718 631-0067

STREGER DIVISION: 277 NORTH AVENUE • NEW ROCHELLE, NEW YORK 10801 • PHONE 914 632-6869 • FAX 914 632-3718

## — I N V O I C E —

American Home Mortgage Investment Corp.
538 Broadhollow Road
Attn: Paul Moran
Melville, NY  11747

| | |
|---|---|
| Invoice Date | 08/03/09 |
| Invoice No. | 86634 |
| Bill-To Code | AMEHO |
| Client Code | AMEHO |
| Inv Order No. | 1*61178 |

**Named Insured:** American Home Mortgage Investment Corp.

Amount Remitted: $

Please return this portion with your payment.

**Make checks payable to:** Intercity Agency, Inc.

| Effective Date | Policy Period | Coverage Description | Transaction Amount |
|---|---|---|---|
| 08/04/09 | 08/04/09 to 08/04/10 | Chubb Group Policy No. 35800229 *Renewal - Commercial Package | 7,453.00 |
| | | Mt. Prospect, IL $3,250,000 Building Special 500,000 Rents 1,000,000/2,000,000 GL | |
| | | Invoice Number: 86634          Amount Due: | 7,453.00 |

8/4/09

Premium Due and Payable on Effective Date

NAT      Page: 1                ORIGINAL INVOICE



**InterCity Agency, Inc.**

**INSURANCE**

Business built through trust.

And a commitment to keeping it.

REMIT TO: 42-40 BELL BOULEVARD, SUITE 103 • BAYSIDE, NEW YORK 11361 • PHONE 718 279-7700 • FAX 718 631-0067

STREGER DIVISION: 277 NORTH AVENUE • NEW ROCHELLE, NEW YORK 10801 • PHONE 914 632-6869 • FAX 914 632-3718

—— **INVOICE** ——

American Home Mortgage Investment Corp.
538 Broadhollow Road
Attn: Paul Moran
Melville, NY  11747

| | |
|---|---|
| Invoice Date | 08/03/09 |
| Invoice No. | 86635 |
| Bill-To Code | AMEHO |
| Client Code | AMEHO |
| Inv Order No. | 1*61182 |

**Named Insured:** American Home Mortgage Investment Corp.

**Amount Remitted: $**

Please return this portion with your payment.

**Make checks payable to: Intercity Agency, Inc.**

| Effective Date | Policy Period | Coverage Description | Transaction Amount |
|---|---|---|---|
| 08/04/09 | 08/04/09 to 08/04/10 | Chubb Group Policy No. 35800229 *Renewal - Commercial Package<br><br>Melville, NY<br>$1,000,000 BPP/EDP<br>$1,000,000/2,000,000 GL<br>$1,000,000 EBL | 6,333.00 |
| | | Invoice Number: 86635          Amount Due: | 6,333.00 |

*Premiums Due and Payable on Effective Date*

NAT    Page: 1              ORIGINAL INVOICE



**InterCity Agency, Inc.**

**INSURANCE**

Business built
through trust.

And a commitment
to keeping it.

REMIT TO: 42-40 BELL BOULEVARD, SUITE 103 • BAYSIDE, NEW YORK 11361 • PHONE 718 279-7700 • FAX 718 631-0067

STREGER DIVISION: 277 NORTH AVENUE • NEW ROCHELLE, NEW YORK 10801 • PHONE 914 632-6869 • FAX 914 632-3718

## ——— INVOICE ———

American Home Mortgage Investment Corp.
538 Broadhollow Road
Attn: Paul Moran
Melville, NY  11747

| | |
|---|---|
| Invoice Date | 08/03/09 |
| Invoice No. | 86638 |
| Bill-To Code | AMEHO |
| Client Code | AMEHO |
| Inv Order No. | 1*61188 |

**Named Insured:** American Home Mortgage Investment Corp.

**Amount Remitted: $**

Please return this portion with your payment.

**Make checks payable to:** Intercity Agency, Inc.

| Effective Date | Policy Period | Description | Transaction Amount |
|---|---|---|---|
| 08/04/09 | 08/04/09 to 08/04/10 | Chubb Group Policy No. TBD *Rewrite - Umbrella Liability $5,000,000 | 6,925.00 |
| | | Invoice Number: 86638     Amount Due: | 6,925.00 |

**Premiums Due and Payable on Effective Date**

NAT     Page: 1                    ORIGINAL INVOICE



**InterCity Agency, Inc.**

**INSURANCE**

Business built through trust.

And a commitment to keeping it.

REMIT TO: 42-40 BELL BOULEVARD, SUITE 103 • BAYSIDE, NEW YORK 11361 • PHONE 718-279-7700 • FAX 718-631-0067

STREGER DIVISION: 277 NORTH AVENUE • NEW ROCHELLE, NEW YORK 10801 • PHONE 914-632-6869 • FAX 914-632-3718

## ----- INVOICE -----

American Home Mortgage Investment Corp.
538 Broadhollow Road
Attn: Paul Moran
Melville, NY   11747

**Invoice Date** 08/03/09
**Invoice No.** 86639
**Bill-To Code** AMEHO
**Client Code** AMEHO
**Inv Order No.** 1*61183

**Named Insured:** American Home Mortgage Investment Corp.

**Amount Remitted:** $

Please return this portion with your payment.

**Make checks payable to:** Intercity Agency, Inc.

| Effective Date | Policy Period | Coverage Description | Transaction Amount |
|---|---|---|---|
| 08/04/09 | 08/04/09 to 08/04/10 | Federal Insurance Company Policy No. 73523338 *Renewal - Commercial Automobile | 800.00 |
| | | Hired and Non-Owned liability | |
| | | Invoice Number: 86639      Amount Due: | 800.00 |

*Premiums Due and Payable on Effective Date*

NAT    Page: 1           ORIGINAL INVOICE