## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------- x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,[1]

                               Debtors.

------------------------------------------------------------------- x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

**Objection Deadline: March 31, 2010, at 4:00 p.m. (ET)**
**Hearing Date: April 6, 2010 at 10:30 a.m. (ET)**

## DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(a) FOR AN ORDER AUTHORIZING AND APPROVING STIPULATION BY AND AMONG THE DEBTORS AND DEUTSCHE BANK NATIONAL TRUST CO. IN VARIOUS CAPACITIES RESOLVING CURE CLAIMS ASSERTED IN CONNECTION WITH THE ASSUMPTION AND ASSIGNMENT OF CERTAIN LOAN SERVICING AGREEMENTS TO AMERICAN HOME MORTGAGE SERVICING, INC. (F/K/A AH MORTGAGE ACQUISITION CO., INC.)

AHM Holdings, a Delaware corporation, and certain of its affiliates, debtors and

debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), by

this motion (the "Motion"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules

of Bankruptcy Procedure ("Bankruptcy Rules") and section 105(a) of Title 11 of the United

States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") approving the stipulation attached

as Exhibit A to the proposed form of order (the "Stipulation") by and among the Debtors and

Deutsche Bank National Trust Co., in various capacities ("DBNTC" and, collectively with the

Debtors, the "Parties"). In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors commenced voluntary cases under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

3.      The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1005(b) of the Federal Rules of Bankruptcy Procedure.

4.      On August 14, 2007, the United States Trustee for the District of Delaware (the "Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").  No trustee or examiner has been appointed.

## RELEVANT BACKGROUND

5.      On the Petition Date, the Debtors filed an emergency motion [D.I. 11] (the "Sale Motion") to authorize the sale of the assets used in their mortgage loan servicing business (the "Servicing Business"), including the assumption and assignment of certain executory contracts.

6.      On October 30, 2007, the Bankruptcy Court entered an order [D.I. 1711] (the "Sale Order")[2] approving the Sale Motion and authorizing the sale of the Servicing Business and the assumption and assignment of certain executory contracts (the "Assumed Contracts") pursuant to that certain Asset Purchase Agreement (as subsequently amended, the "APA") by

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Order.

2

and among AHM Investment, AHM Corp., and AHM SV (the "Sellers") and American Home Mortgage Servicing, Inc. (f/k/a AH Mortgage Acquisition Co., Inc.) (the "Purchaser").

7.      The Assumed Contracts included certain contracts (i) to which DBNTC, in its capacity as Trust Administrator and/or Indenture Trustee is a party or (ii) under which DBNTC is otherwise entitled to enforce the Debtors' obligations (such agreements, the "Assumed DBNTC Agreements").

8.      Pursuant to the Sale Order, a reserve of $10 million (the "Cure Escrow") was established on or about November 16, 2007, for the payment of the Sellers' Cure Amount, which includes (i) the Initial Cure Amount, (ii) the Interim Cure Amount, and (iii) any reasonable out-of-pocket costs and expenses (a) incurred by a counterparty to an Assumed Contract as a result of the assumption and assignment of such contract to the Purchaser *and* (b) chargeable under the Assumed Contract (such costs/expenses, "Transfer Costs").  The Cure Escrow is held by Capital One, N.A., successor by merger to North Fork Bank, as escrow agent (the "Escrow Agent") pursuant to the terms of the Cure Escrow Agreement (as defined in the APA).

9.      In accordance with the Sale Order, DBNTC timely filed (i) the *Initial Omnibus Cure Claim of Deutsche Bank National Trust Co. as Trust Administrator and/or Indenture Trustee Against Cure Escrow* [D.I. 2223] (as supplemented by D.I. 2225, the "Initial Cure Claim") and (ii) the *Proof of Transfer Cost Claim of Deutsche Bank National Trust Co., in Various Capacities* [D.I. 3973] (the "Transfer Cost Claim" and, together with the Initial Cure Claim, the "Sellers' Cure Claims"), which asserted aggregate claims of $774,719 as a Sellers' Cure Amount.

DB02:9370087.1                                    066585.1001

10.     DBNTC timely filed proof of claim #9189 (as supplemented by proof of claim #9972, the "Integrated Proof of Claim") against AHM Acceptance, which set forth DBNTC's claims in various capacities against each of the Debtors.  The Integrated Proof of Claim was incorporated by reference in proofs of claim #9183-9188 and #9225, filed against AHM Ventures, AHM Corp., AHM SV, AHM Investment, Great Oak, AHM Holdings, and Homegate, respectively.  DBNTC also timely filed proof of claim #9950 against AHM Acceptance (the "AHMIT 2006-2 Transition Claim"), which asserted a contingent, unliquidated claim related to the transition of servicing for the AHMIT 2006-2 Transaction (as defined in the AHMIT 2006-2 Transition Claim).

11.     On March 25, 2009, the Debtors filed an objection to the Sellers' Cure Claims [D.I. 7158].

12.     The Parties desire to avoid costly litigation over the Sellers' Cure Claims and, to that end, have engaged in good-faith negotiations in an attempt to reconcile their positions.  As a result of such negotiations, the Parties have reached an agreement, embodied in the Stipulation, which the Debtors believe represents a fair and reasonable compromise in light of the costs, uncertainties, and risks attendant to litigation.

## THE STIPULATION

13.     The principal terms of the Stipulation are set forth below:[3]

a.      Effectiveness.  The Stipulation shall be effective upon entry of an order by the Court (the "Approval Order") approving this Stipulation and authorizing the Cure Escrow Agent to pay the Allowed Cure Claim (as hereinafter defined) to DBNTC from the Cure Escrow.  If the Approval Order is not entered within thirty (30) days after execution of the

---

[3] The terms of the Stipulation set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Stipulation.  To the extent of any inconsistency between this summary and the Stipulation, the terms of the Stipulation shall govern.

4

Stipulation by all Parties, this Stipulation shall be void *ab initio* unless otherwise agreed by the Parties.

b.  Allowed Cure Claim.  Upon entry of the Approval Order, the Sellers' Cure Claims shall be allowed in the aggregate amount of $355,536 (the "Allowed Cure Claim").  The Allowed Cure Claim shall be paid to DBNTC from the Cure Escrow within five (5) business days following entry of the Approval Order, pursuant to wire instructions to be provided by DBNTC.

c.  Allowed Unsecured Claims against AHM Acceptance and AHM SV.  Effective upon entry of the Approval Order, the Integrated Proof of Claim (i) against AHM Acceptance shall be allowed in part as a general unsecured claim in the amount of $227,740, and (ii) against AHM SV shall be allowed in part as a general unsecured claim in the amount of $191,443, on account of claims set forth in the Sellers' Cure Claims.  Partial allowance of the Integrated Proof of Claim shall be without prejudice to DBNTC's right to assert, as part of the Integrated Proof of Claim or the AHMIT 2006-2 Transition Claim, any claim that was not set forth in the Sellers' Cure Claims.

d.  Release by DBNTC.  Effective upon DBNTC's receipt of payment of the Allowed Cure Claim from the Cure Escrow, DBNTC, on behalf of itself and any affiliates, successors, assigns, officers, directors, employees, or agents, shall be deemed to have forever waived and released any and all claims and/or causes of action of any nature that it may have against the Debtors or the Cure Escrow which were asserted in the Sellers' Cure Claims or which arise from any default under any Assumed DBNTC Agreement resulting from an act or omission that occurred prior to the Initial Closing Date, whether such claims and/or causes of action are known or unknown at this time, fixed or contingent, liquidated or unliquidated; provided, however, that DBNTC does not waive or release any claims allowed pursuant to this Stipulation.

e.  Governing Law; Jurisdiction.  The Stipulation shall be construed and enforced in accordance with the (a) the internal laws of the State of New York without giving effect to the rules governing the conflict of laws and (b) to the extent applicable, the Bankruptcy Code, as amended.  The Bankruptcy Court shall have exclusive jurisdiction with respect to all disputes arising out of the Stipulation.

DB02:9370087.1                                                        066585.1001

## RELIEF REQUESTED AND BASIS THEREFOR

14.    By this Motion, the Debtors are seeking this Court's authorization and approval of the Stipulation pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

15.    Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. In re Penn Central Transp. Co., 596 F.2d 1002 (3d Cir. 1979). The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414 (1986).

16.    Approval of a proposed settlement is within the "sound discretion" of the Bankruptcy Court. In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of the estate." See In re Energy Cooperative, Inc., 886 F.2d 921, 927 (7th Cir. 1989). In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." In re Penn Central Transportation Co., 596 F.2d 1127, 1153 (3d Cir. 1979); see also In re Marvel Entertainment Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re Louise's

6

Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

17.    In particular, the Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved, namely: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

18.    In deciding whether to approve a settlement, the bankruptcy court should not substitute its judgment for that of the debtor. Neshaminy, 62 B.R. at 803. Nor should it decide the numerous questions of law or fact raised by litigation. Rather, it should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

19.    In the Debtors' judgment, the resolutions embodied in the Stipulation are reasonable and in the best interest of the Debtors, their estates, their creditors and other parties in interest. The Stipulation provides for a fair and practical resolution of numerous disputed issues, including the Sellers' Cure Claims and the Omnibus Objections, and avoids the need to commence costly and time-consuming litigation to determine the validity of such claims and the

extent of the Debtors' liability, if any, in connection therewith.  The Stipulation was the product

of significant and lengthy discussions and negotiations between the Debtors and DBNTC, and

the settlement embodied therein falls well above the lowest point in the range of reasonableness.

In addition, as discussed below, each of the applicable <u>Martin</u> factors weighs in favor of

approving the Stipulation.

> **A.**    **The Probability of Success in Litigation**

20.    Absent the Stipulation, the disputes between the Parties would have to be

litigated before the Court with no assurances of a favorable outcome for the Debtors' estates.

The resolution of these disputes under the terms of the Stipulation is a favorable outcome

because it eliminates potentially protracted litigation over the validity and extent of DBNTC's

claims which would continue to drain valuable estate resources.  Moreover, while the Debtors

dispute the extent of their liability to DBNTC with respect to the Seller Cure Claims, the

uncertainty and inherent risk in litigating these matters as well as the unavoidable expenditure of

estate assets and distraction of Debtors' management attendant thereto mitigate in favor of a

prompt and consensual resolution of these matters.

> **B.**    **The Likely Difficulties in Collection**

21.    The Debtors do not believe that collection of any judgment that could be

obtained is an issue and therefore this factor is neutral.

> **C.**    **The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It**

22.    The Stipulation satisfies the third factor in <u>Martin's</u> four-factor test largely

for the reasons set forth above in the discussion of the Debtors' probability of success in

litigation.  Litigation over the validity and amounts allowed with respect to DBNTC's various

claims, and resolving the Debtors' objections thereto, would involve complex legal and finance

issues and a potentially lengthy proceeding, which would be expensive for the Debtors' estates and inconvenient for the Parties. Additionally, such litigation could distract the Debtors and their professionals from other, more important matters in the wind-down of the Debtors' estates.

### D.    The Paramount Interest of Creditors

23.    Entry into the Stipulation serves the paramount interest of creditors of the Debtors. The Stipulation's resolution of DBNTC's claims represents a savings for the creditors by obviating litigation, thereby saving the expenses attendant to such litigation. In addition, the amounts to be received by DBNTC under the terms of the Stipulation represent a mere fraction of the amounts that DBNTC claims it is owed by the Debtors. Therefore, the fourth factor of Martin's four-factor test is satisfied and weighs in favor of the Court approving the Stipulation.

### E.    Summary

24.    A review of the four factors set forth above clearly demonstrates that the Stipulation is in the best interest of the Debtors, the Debtors' estates and creditors. The resolution and compromise of the disputes and issues between the Parties as embodied in the Stipulation: (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay, inconvenience and uncertainty that would attend any litigation of the Parties' issues; and (iv) advances the paramount interests of creditors. Therefore, the Stipulation satisfies Bankruptcy Rule 9019 and should be approved by the Court.

## NOTICE

25.    Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to Bank of America, N.A., as Administrative Agent; (iv) counsel to DBNTC; and

(v) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto approving the Stipulation and granting the Debtors such other and further relief as is just and proper.

Dated:   Wilmington, Delaware      YOUNG CONAWAY STARGATT & TAYLOR, LLP
March 15, 2010

Sean M. Beach (No. 4070)
Patrick A. Jackson (No. 4976)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel for Debtors and Debtors in Possession

10