UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE

IN RE:                           . Case No. 07-11047(CSS)
                                 .
  AMERICAN HOME MORTGAGE         .
  HOLDINGS, INC., a Delaware     .
  Corporation, et. al.,          . 824 Market Street
                                 . Wilmington, Delaware  19801
                Debtors.         .
                                 . March 9, 2010
. . . . . . . . . . . . . . . . . 4:37 p.m.

                  TRANSCRIPT OF MOTIONS HEARING
            BEFORE HONORABLE CHRISTOPHER S. SONTCHI
              UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:                 Young Conaway Stargatt &
                                 Taylor, LLP
                                 By:  CURTIS CROWTHER, ESQ.
                                      SEAN BEACH, ESQ.
                                      MICHAEL NEIBURG, ESQ.
                                 The Brandywine Building
                                 1000 West Street, 17th Floor
                                 P.O. Box 391
                                 Wilmington, DE  19899


For the Creditors' Committee:    Blank Rome, LLP
                                 By:  TORI GUILFOYLE, ESQ.
                                 Chase Manhattan Centre
                                 1201 Market Street
                                 Suite 800
                                 Wilmington, DE 19801


Audio Operator:                  Leslie Murin

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
_____

                    J&J COURT TRANSCRIBERS, INC.
                        268 Evergreen Avenue
                    Hamilton, New Jersey 08619
                    E-mail:  jjcourt@optonline.net

              (609) 586-2311  Fax No.  (609) 587-3599

**APPEARANCES CONTINUED:**

For the Creditors' Committee:  Hahn & Hessen, LLP
By:  CHRISTOPHER JARVINEN, ESQ.
488 Madison Avenue
4th and 15th Floor
New York, NY  10022

For Triad Guaranty:  Cozen O'Connor
By:  BARRY M. KLAYMAN, ESQ.
Chase Manhattan Centre
1201 North Market Street
Suite 1400
Wilmington, DE  19801

For American Home Mortgage  Saul Ewing LLP
Servicing, Inc.:  By:  MARK MINUTI, ESQ.
222 Delaware Avenue
Suite 1200
Wilmington, DE  19801

For Orix Capital:  Connolly Bove Lodge & Hutz LLP
By: CHRISTOPHER GRIFFITHS, ESQ.
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801

For Countrywide/BOA:  Edwards, Angell, Palmer & Dodge
LLP
By: DENISE KRAFT, ESQ.
919 North Market Street
Wilmington, Delaware 19801

For Laura Beall:  Loizides & Associates
By:  CHRISTOPHER LOIZIDES, ESQ.
1225 King Street
Suite 800
Wilmington, DE  19801

**TELEPHONIC APPEARANCES:**

For Allen & Overy LLP:  Allen & Overy, LLP
By:  NICHOLAS MITCHELL, ESQ.
1221 Avenue of the Americas
New York, NY  10020

For American Home Mortgage:  Zolfo Cooper
By:  SCOTT MARTINEZ
1114 Avenue of the Americas
New York, NY  10036

**TELEPHONIC APPEARANCES (Cont'd):**


For American Mortgage              Cadwalader Wickersham & Taft LLP
Holdings, Inc.:                    By: CHRISTOPHER UPDIKE, ESQ.
                                   One West Financial center
                                   New York, NY  10281

For American Home                  Quinn, Emanuel, Urquhart, Oliver
Mortgage Holdings:                 & Hedges
                                   By:  OLGA URBIETA, ESQ.
                                   51 Madison Avenue, 22nd. Floor
                                   New York, NY

                            -  -  -

4

1          COURT CLERK:  All rise.

2          THE COURT:  Please be seated.

3          MR. BEACH:  Good afternoon, Your Honor.  May it
4    please the Court, Sean Beach from Young Conaway on behalf of
5    the debtors.

6          Your Honor, if I may, I'd like to give a brief status
7    update in connection with the bank sale.  I know it's late, but
8    I'll be brief.

9          It's unfortunately not the status I wanted to be
10   giving you, but it does have a bit of a silver lining to it.
11   About two weeks ago, the debtors terminated the sale agreement
12   pursuant to the terms of the sale agreement with Bank Corp.  It
13   became clear to the debtors that it was going to be difficult
14   to get regulatory approval of that particular sale with the
15   Bank Corp.

16         In addition, we were having difficulty getting
17   responses from Bank Corp. and we had gotten some indication
18   that they weren't pursuing the deal as they had previously,
19   probably because of the indications that they had gotten from
20   the regulatory authorities.

21         In addition to that, at the same time the debtors
22   received an expression of interest from another party, so the
23   debtors did terminate the Bank Corp. transaction.  We have,
24   since that time, started negotiations with a new party.  We do
25   hope to have a new transaction that we'll have to bring before

1   the Court.  We are aiming for the April hearing date to have

2   that transaction heard before the Court.  And the silver lining

3   part of it is that we are also intending in connection with

4   that transaction, to also seek a loan with the sole recourse of

5   that loan being against the assets or the stock of the bank and

6   the idea of the loan would be, it would give us enough funds to

7   go effective.  Sole recourse for repayment of that would be

8   against, as I said, the stock of the bank.  But, we wouldn't

9   have to wait for the full -- if everything goes as plan, we

10  wouldn't have to wait for the full regulatory approval in order

11  to have the plan go effective.

12        Unless Your Honor has any questions regarding that

13  issue, I'll move onto the agenda.

14        THE COURT:  I don't -- no, I don't, but thank you

15  very much for the update.

16        MR. BEACH:  Your Honor, Items 1 through 21 have

17  either been adjourned, resolved, or Your Honor has already

18  signed the orders under certification of no objection.

19        What I'd like to do next is go to Item Number 27.  We

20  informed chambers that just before this hearing, the parties

21  have been able to resolve that claim, and the parties agreed

22  that they would go and work on a consensual form of order and

23  would like to request that the Court adjourn the hearing with

24  respect to that claim until the next omnibus date.  And,

25  hopefully, between that hearing, submit under certification of

1 counsel, a consensual form of order resolving that claim.

2          THE COURT:  That's fine.

3          MR. BEACH:  Thank you, Your Honor.  Your Honor, the

4 next item on the agenda is Item Number 22, which is a claim

5 objection.  I'd like to skip to Item Number 23, so that Mr.

6 Neiburg can address all the claim objections at one time.

7          Item Number 23 is the interim fee applications of

8 debtor and Committee professionals.  There have been no

9 objections.  As Your Honor may recall, there was an agreement

10 with the fee examiner that we announced to Your Honor.  May

11 have submitted an amended form of order, I can't recall, where

12 the fee examiner was going to look at the final fee

13 applications in this case so as not to hold up the interim fee

14 applications, so there are no reports from the fee examiner in

15 connection with this fee hearing.

16          So, unless Your Honor has any questions, there are no

17 objections from any other parties.

18          THE COURT:  I don't have any questions.  Does anyone

19 wish to be heard?

20               (No audible response)

21          THE COURT:  All right.  Do you have a form of order?

22          MR. BEACH:  I do, may I approach?

23          THE COURT:  Yes.  Thank you.   Next?

24          MR. BEACH:  With that, Your Honor, I'll cede the

25 podium to Mr. Neiburg to address Item Number 22.

1          THE COURT:  Okay, thank you.  Mr. Neiburg.

2          MR. NEIBURG:  Good afternoon, Your Honor, Michael

3 Neiburg from Young, Conaway, Stargatt & Taylor on behalf of the

4 debtors.

5          Your Honor, with respect to Item Number 22, it is the

6 debtors' motion to file the supplemental declaration of Scott

7 Martinez, under seal.  We filed this motion to protect

8 potentially sensitive personal information of the claimants

9 from becoming unnecessarily disclosed to the public.

10          THE COURT:  Any objections?

11                    (No audible response)

12          THE COURT:  I'll sign it.

13          MR. NEIBURG:  Thank you, Your Honor.  Your Honor, I

14 have a binder with tabs, a supplementary iteration, if I can

15 approach?

16          THE COURT:  Yes, please.

17          MR. NEIBURG:  Thank you.

18          THE COURT:  Do you have the order as well for me to

19 sign?

20          MR. NEIBURG:  File under seal, I'm sorry, Your Honor,

21 I don't think I have a copy.  Let's see.

22          THE COURT:  I like to -- I don't like to get behind.

23 All right.

24          MR. NEIBURG:  I have it.

25          THE COURT:  Okay.  I've signed the order.

1          MR. NEIBURG:  Thank you, Your Honor, sorry about

2 that.

3          THE COURT:  That's all right.  I had it right here.

4          MR. NEIBURG:  Your Honor, the supplemental

5 declaration of Scott Martinez addresses three of the debtors'

6 omnibus claims objections.  Unless there's any objection from

7 Your Honor, or questions, I'd ask that it be placed on the

8 record.

9          THE COURT:  What?

10          MR. NEIBURG:  If we could move the declaration itself

11 into evidence prior to addressing the individual claims.

12          THE COURT:  Oh.

13          MR. NEIBURG:  Sorry, Your Honor.

14          THE COURT:  All right.  Including the exhibits?

15          MR. NEIBURG:  Please.

16          THE COURT:  All right.  Any objections?

17                    (No audible response)

18          THE COURT:  All right.  The supplemental declaration

19 of Mr. Martinez is admitted into evidence without objection,

20 under seal, and we'll call it Debtor 1.

21          MR. NEIBURG:  Thank you, Your Honor.  And, Your

22 Honor, Mr. Martinez is available, via court call, in the event

23 you have questions beyond what is addressed in the declaration.

24          THE COURT:  All right.

25          MR. NEIBURG:  And, with respect to Item Number 24,

1  Your Honor, it's the debtors' 13th omnibus objection to claim,

2  solely with respect to the claim of Ms. Lonnie Watkins.

3          THE COURT:  All right.  Does anyone wish to be heard

4  in connection with this?

5                  (No audible response)

6          THE COURT:  All right.  Is there any status you'd

7  like to give me.

8          MR. NEIBURG:  I think the declaration covers itself,

9  Your Honor.  The employment contract with Ms. Watkins

10 specifically indicates that she would have needed to have been

11 employed on the scheduled payment date of the bonus and she was

12 not.

13         THE COURT:  She was not.  All right.  Hearing none,

14 no one present, and based on the declaration, the Court will

15 sustain the claim objection.

16         MR. NEIBURG:  May I approach with the order, Your

17 Honor?

18         THE COURT:   Yes.  Thank you.  All right, next?

19         MR. NEIBURG:  Next, Your Honor, is Item Number 25,

20 which pertains to the debtors' 19th omnibus objection, solely

21 as to the claim of Mr. Jeffrey Harmon, Claim Number 302.

22         Your Honor, claim 302 pertains to several types of

23 claims, one of which was an unpaid bonus payment, there was

24 unused vacation time, unused sick and personal time and also

25 the claim for alleged WARN Act violations.

1            As the supplemental declaration addresses, Your

2   Honor, with respect to the WARN Act, Mr. Harmon was not

3   employed in an affected facility and, therefore, he's not

4   entitled to WARN act compensation, nor was he eligible to be a

5   member of the class, in the class action that Your Honor

6   presided over.  So, we ask that that portion of the claim be

7   disallowed.

8            With respect to the sick and personal time portion,

9   Your Honor, pursuant to the debtors' vacation and sick policy,

10  which is attached to the declaration as Exhibit E, employees

11  who leave the company during the year will not receive pay for

12  unused sick time.  As the declaration says, Mr. Harmon's

13  employment was terminated August of 2007.  Because he was not

14  employed through the entirety of the year, he's not entitled to

15  that portion.

16           Also, the last portion that the debtor is objecting

17  to, Your Honor, is a bonus payment for 2007.  As Exhibit D

18  illustrates, Your Honor, specifically Paragraph 4 of the

19  employment contract, it says the payment is not payable until

20  April of the following year and to receive that bonus payment,

21  you must be employed at the scheduled payment date.  And,

22  again, Your Honor, Mr. Harmon's employment was terminated 2007

23  and he was not employed April 2008.

24           THE COURT:  All right.  Does anyone wish to be heard?

25                    (No audible response)

1    THE COURT:  Based on the supplemental declaration and
2 the arguments of counsel, I'll sustain the claim objection and
3 I just appreciate the fuller record being made by the debtor in
4 this instance, with all these matters.  Next?

5    MR. NEIBURG:  May I approach with the order, Your
6 Honor?

7    THE COURT:  Yes, yes.  Thank you, Mr. Neiburg.  All
8 right.  Twenty-six.

9    MR. NEIBURG:  Twenty-six, Your Honor, debtors' 21st
10 omnibus claim objection.  This is regarding the claim of
11 Southern Horizon Financial Group, Claim 6566.

12    Your Honor, Southern Horizon was a mortgage broker
13 that prior to the petition date had closed loans on behalf of
14 the debtors and they're claiming commissions due on account of
15 those loans that they may have closed.

16    Your Honor, pursuant to all the mortgage broker
17 contracts entered into between the debtors and mortgage brokers
18 such as Southern Horizon, the loan had to close but also fund
19 and not rescinded.

20    In this case, Your Honor, the referenced loans on
21 Claim 6566, did close but they were deemed rescinded because
22 the loans were not funded and, therefore, no commissions --
23 it's the debtors' position, Your Honor, that no commissions
24 would be owed to Southern Horizon.

25    THE COURT:  Okay.  Does anyone wish to be heard?

1  Anything further?

2              (No audible response)

3          THE COURT:  All right.  I'll approve the objection

4  based on the supplemental declaration.  You may approach with

5  an order.   Thank you.

6          MR. NEIBURG:  At this time, Your Honor, I'd like to

7  cede the podium to Mr. Beach.

8          THE COURT:  Okay, thank you.

9          MR. BEACH:  For the record, Sean Beach for the

10  debtors.   Your Honor, Item Number 28, we've already addressed

11  Item Number 27.   Item Number 28 on the agenda is the debtors'

12  objection to the repurchase agreement deficiency claim of Orix

13  Capital.  Orix has objected to that and this claim, Your Honor,

14  is similar to the repurchase agreement damages claim that was

15  litigated in connection with the Calyon (phonetic) matter.  The

16  parties are going to work on a scheduling order and then

17  contact your chambers to figure out when we might be able to

18  have an evidentiary hearing on that matter.  So, there's

19  nothing going forward today in connection with that.

20          THE COURT:  Okay.  Thank you.

21          MR. BEACH:  Your Honor, the last item on the agenda

22  is Countrywide's motion to intervene in connection with the

23  Triad litigation.  Adversary proceeding commenced in these

24  cases.  Just before I get to that, Your Honor, I neglected to

25  mention at the beginning of the hearing the debtors, in

1  connection with Ms. Dobbins' counsel, submitted a certification

2  of counsel about a week ago.  I just wanted to make sure it was

3  something that has reached Your Honor, and, if we need to

4  submit or resubmit the form of order, we can do that.

5           THE COURT:  I take it, I didn't sign the order?

6           MR. BEACH:  We haven't seen it.

7           THE COURT:  Oh, well, then, it's lost.  You'd better

8  send it over again, please.

9           MR. BEACH:  Okay.  We'll do that.

10           THE COURT:  I'm sure we all want to put that behind

11  us.

12           MR. BEACH:  That is certainly true, Your Honor.  With

13  that, Your Honor, I'll cede the podium to Countrywide's

14  counsel.

15           THE COURT:  All right.  Thank you.

16           MS. KRAFT:  Good afternoon, Your Honor, Denise Kraft

17  of Edwards, Angell, Palmer & Dodge on behalf of Countrywide and

18  now known as Bank of America and its various entities.

19           Thank you for hearing us on the motion to intervene.

20  As the Court knows, Triad filed an adversary action in

21  September, as a class action against the AHM debtors in order

22  to basically recover its master insurance policies under which

23  it had insured 29,000 separate loans that had been originated

24  by AHM.

25           And, within the adversary proceeding, it indicated

1  that there were various -- that it was filing a class action on

2  behalf of various owners of those loans.

3          Thereafter, in October of 2009, Countrywide filed a

4  motion to intervene in that particular action because it

5  actually is the -- it had purchased 4,000 of the loans from AHM

6  and continues to be the owner and/or servicer of 3,000 of those

7  loans.  Accordingly, it has a substantial interest in the

8  servicing of those loans and the ownership of the loans going

9  forward and in the adjudication of any matter in front of the

10  Court.

11          As an initial matter, however, Countrywide challenges

12  the subject matter jurisdiction of this Court in hearing that

13  particular issue as it doesn't believe it's properly before

14  this Court, as it really is a matter most likely between two

15  non-debtors and not Triad when you look further into the facts.

16          A motion to intervene was filed pursuant to Federal

17  Rule of Civil Procedure 24.  Under FRCP 24, there's permissive

18  and/or mandatory intervention.  And under mandatory

19  intervention, the factors are whether or not there was a timely

20  application, which we submit there was and Triad, who had

21  opposed our intervention has not stated otherwise.

22          The second issue is whether or not we have sufficient

23  interest.  Given the fact that Countrywide still owns and/or

24  services 3,000 of the loans that Triad is trying to rescind

25  insurance on, we submit to the Court that we certainly do have

1    a substantial interest in moving forward.

2           The third prong under which the Court is to consider

3    permissive intervention is whether or not there is an

4    impairment of that interest.  There would be, we submit to the

5    Court, a substantial impairment of the interest if Triad is, in

6    fact, allowed to go forward and try to almost end run around

7    the Court to rescind a master policy when, in fact, this matter

8    does not just involve a master policy.  Under the flow

9    policies, which Countrywide has and/or services, they were

10   issued separate loan mortgage insurance certificates.  So, that

11   actually involves not just master policies, but these separate

12   and distinct loan insurance certificates.

13          The interest that Countrywide has in owning and/or

14   servicing those loans would be affected if Triad is allowed to

15   pull the master policies and just do a global recission of all

16   of the insurance.  There's also the additional factor in that

17   Countrywide has also sold some of these loans to other

18   investors and there have been threats to Countrywide already

19   that -- in asking Countrywide to take back those loans,

20   basically.

21          The fourth factor in permissive intervention is

22   whether or not the existing parties are able to adequately

23   represent the rights of the party seeking intervention; in this

24   case, Countrywide.  The position we have with the Court is

25   that, in fact, they are not.  The debtor has not filed any

1 papers in this particular intervention action or the plan

2 trustee has not.

3        The plan trustee's job is to, obviously, go forward,

4 collecting the assets and distribute them under the plan.  If,

5 in fact, the plan trustee were to have to defend individual,

6 and not just a master policy, but as Countrywide's position is,

7 all these individual loans on fraud and recission issues, then

8 substantial assets of the estate would be used in defending

9 this, whereas, Countrywide would like to come in and defend its

10 own rights.

11        Further, there is a big question as to whether or not

12 the debtor actually has any true interest.  It appears as

13 though the debtor does not service and/or own any of the AHM

14 loans, with the exception of, as I've confirmed as much as we

15 could with debtors' counsel, 23 loans which, interestingly

16 enough, were actually -- I guess I want to say AHM gave --

17 entered into an agreement where Bank of America, also related

18 to the Countrywide properties, would actually service those

19 loans and AHM would only retain a nominal ownership interest.

20 Therefore, that is the whole sum package of any interest that

21 AHM debtors may have in this litigation, is nominal ownership

22 interest in 23 loans which are now being serviced by one of my

23 clients.

24        So, under the four factors for mandatory

25 intervention, Countrywide submits that it should be allowed to

1   intervene and make a special appearance to object to the

2   subject matter jurisdiction as truly being issues between

3   non-debtors rather than the debtor in this particular case.

4        Under the theory of permissive intervention,

5   discretionary intervention is allowed when the applicants in

6   the main action have a common question of fact or law.  Again,

7   they're the three factors of timeliness, which is not being

8   disputed here.  There certainly are common issues of fact and

9   law as previously stated here.  And the third and last factor

10  here is whether or not they'd be any prejudice to the other

11  parties if Countrywide were allowed to intervene and we submit

12  that there would not.  In fact, there'd be a more fuller

13  resolution of the issues with parties that actually have a real

14  true economic interest in resolving these issues.

15       Now, I've covered Countrywide's interests and the

16  debtor not having a true economic interest as far as we can

17  see, and they may have a nominal interest which we wouldn't

18  dispute, but we believe our interest is so substantial and it's

19  such an economic interest, that we should be allowed to

20  intervene.  We have at least as much of an interest, and,

21  actually more, just given the hundreds of million of dollars at

22  stake in deciding the issues that Triad has brought up in its

23  adversary action.

24       Triad, itself, is attempting, as I said earlier, to

25  do some type of an end run around the law by filing the

1 adversary action in the bankruptcy court because it knows that

2 the true owners in interest are people like Countrywide and

3 other people.  The fact that they didn't appear yet, or file

4 their own motion to intervene, doesn't necessarily speak to the

5 fact that they believe that they have a true and valid interest

6 in this case and will be filing other suits as they see fit, in

7 other jurisdictions, to litigate those particular issues.

8        I just want to also point out and I know I attached

9 it to our reply, that Countrywide was sued by United Guarantee

10 in California, under the same type of a master policy theory,

11 where United Guarantee attempted to globally rescind the master

12 policy.  And, then Countrywide filed a motion to dismiss along

13 with one of its other co-defendants.  The judge denied that,

14 indicating as is, I would submit is the situation here, that

15 you can't simply globally rescind a master policy and rescind

16 all of the underlying insurance upon that because as here,

17 these are flow policies, they have their individual

18 certificates of insurance and recission issues, fraud issues,

19 misrepresentation issues, have to be taken on a case-by-case,

20 loan-by-loan underwriting basis.

21        So, again, what we would ask the Court to do at this

22 point is allow Countrywide to intervene in the adversary

23 proceeding as a party defendant in order to make a special

24 appearance to challenge the jurisdiction of this Court in

25 hearing this particular matter.

1          THE COURT:  Thank you.

2          MS. KRAFT:  Thank you.

3          MR. MINUTI:  Good afternoon, Your Honor, Mark Minuti

4  from Saul Ewing.  Your Honor, I represent American Home

5  Mortgage Servicing, Inc,, as Your Honor will recall, the

6  purchaser of the debtors servicing business.

7          I rise to inform Your Honor that we, obviously,

8  support the motion to intervene and as Your Honor knows from

9  the history of this case, my client services loans for many of

10  the major players.  Citibank, U.S. Bank, Bank of New York,

11  Wells Fargo, among others.

12          Those entities have asked our client to intervene in

13  this action as well.  And, so we will be filing a motion, Your

14  Honor, to do that.  Either my client as servicer will do that

15  on behalf of those entities, or counsel will be entering an

16  appearance on behalf of those entities to file a motion to

17  intervene.

18          I want to give Your Honor just a little bit of

19  history here and I'm going to be brief, I don't want to repeat

20  anything that counsel had said, but we first heard about

21  Triad's lawsuit when the debtor, or I should say, the Committee

22  in this case, had amassed a call of all the financial entities

23  that hold these loans and that was back in November.  And,

24  during that call, the Committee counsel made a presentation

25  about what was happening and the debtors' counsel was on that

1  call as well and there were two things that came out of that

2  call, at least from our perspective.

3        Number one, Your Honor, was the fact that the way it

4  was explained to us, Triad would welcome the participation of

5  the holders in this action because I think the whole idea, and

6  I'm not sure they disagree with this was to try to come up with

7  a forum where everybody could participate and so they wouldn't

8  really have to herd the cats in some other way, and there could

9  be an ultimate resolution of their issues, either through

10 settlement or through litigation.

11       Number two, Your Honor, and I don't think the debtor

12 is going to dispute this, the debtor had raised concerns on

13 that call about funding the defense of this litigation because

14 when you think about it, at the end of the day they have no

15 direct economic benefit from this, depending upon what the

16 outcome is.

17       And, so, I think it's crystal clear, Your Honor, the

18 true parties in interest here are the people that actually hold

19 the loans that are the beneficiaries of this particular

20 insurance.

21       So, Your Honor, the other reason why I'm a little

22 surprised by Triad's position today is that I had talked to

23 their prior counsel, I told them we were likely to intervene,

24 there was no indication that anybody was going to object at

25 that time, or ever, quite frankly, until I saw their opposition

1  to the current motion.  And, number two, the only thing they

2  asked of me was information, they wanted to know what loans we

3  had, what loans we had that had, in fact, insurance.

4          So, the notion, Your Honor, that there's no one else

5  cares about this, because no one else has sought to intervene

6  and the holders in interest are somehow content to have the

7  debtor defend this, Your Honor, couldn't be further from the

8  truth.  And, as I said, Your Honor, in light of the debtors'

9  comments and, frankly, the practical reality of this case, we

10 have concerns whether the debtor is going to vigorously defend

11 this action or not.

12         And, so, Your Honor, we support the motion to

13 intervene.  We intend to file our motion to intervene.  We

14 clearly think the debtor has a role in the litigation but the

15 true parties in interest are the holders of these loans that

16 should be entitled to participate, Your Honor.

17         The outcome of the litigation, obviously, affects the

18 holders, Your Honor, and the servicer, Your Honor, who services

19 those loans, we think is clearly a party in interest.

20 Countrywide had cited cases to that effect.  So, we think the

21 Court should approve the motion, number one; and number two,

22 set up a procedure and maybe a notice provision, Your Honor, so

23 other holders of these loans, if they want to participate,

24 should be allowed to file motions to intervene or participate

25 in some way.

1          I would also point out, Your Honor, as Your Honor

2  probably knows, nothing has happened in the case to date.   No

3  answer has been filed.   In fact, an answer from the debtor

4  isn't due until April 8th.   There's no scheduling order there's

5  been no discovery.   Really the case hasn't even started yet.

6  So, there's no prejudice by letting anybody intervene at this

7  particular time.   So, again, Your Honor, we would support the

8  motion.

9          Finally, obviously, anybody's participation through

10 intervention, is without prejudice to the arguments that

11 counsel for Countrywide already indicated, which is, we don't

12 think this is an appropriate forum for the resolution.   We're

13 not sure this lends itself to a class action type of claim and

14 we're not sure the debtor is the adequate representative and we

15 would reserve all those arguments.   Thank you, Your Honor.

16          THE COURT:   Thank you.   Mr. Beach.

17          MR. BEACH:   For the record, Sean Beach on behalf of

18 the debtors.   Your Honor, I'll be brief as well.

19          The debtors do support the relief being requested by

20 Countrywide in terms of the intervention in connection with

21 this adversary proceeding.   We don't however, agree, you know,

22 with all the allegations that were stated in connection with

23 the pleadings, nor are we conceding at all that the debtors

24 don't have any interest in some of the funds that Triad may be

25 holding.

1        That being said, Your Honor, the debtors no longer

2   own, except nominally, any mortgage loans, nor do we service

3   any mortgage loans that are Triad insured.  As Ms. Kraft had

4   indicated, there are 23 mortgage loans that were on the BOA

5   warehouse line and in connection with the settlement with Bank

6   of America, the servicing of those 23 loans, and these numbers

7   are as of October of last year, so they may be smaller now, the

8   servicing of those mortgage loans actually went to Countrywide

9   and the loans themselves went to Bank of America.

10        As Your Honor may recall, in connection with that

11  settlement, we transferred -- well, we kept nominal ownership

12  because B of A didn't want to take the legal ownership at that

13  point.  We do have a court order and stipulation that transfers

14  all dominion and control of those loans and the servicing

15  rights over to Bank of America.

16        THE COURT:  Thank you.

17        MR. JARVINEN:  Your Honor, Christopher Jarvinen from

18  Hahn & Hessen on behalf of the Official Committee of Unsecured

19  Creditors.  I just want to echo what Mr. Beach just mentioned

20  with respect to Countrywide's motion.  The Committee does not

21  oppose the intervention, but we do disagree with some of the

22  statements that Countrywide has claimed.

23        I also want to add that -- to echo counsels from Saul

24  Ewing's statement, that the Committee and Triad, for a while,

25  worked with each other to try to see if we could get the

1 economic stakeholders together to see if they could come to

2 some type of resolution as it relates to the allegations in

3 Triad's complaint.

4       It is my understanding that Triad's former counsel,

5 Mr. Rice of Womble Carlyle, had been in communication with

6 other parties as well, regarding this issue and instead of

7 saying nothing has happened in the case, there's been a lot

8 that's been going on in the case.  It just hasn't been

9 happening in this courtroom.  I think the parties are, again,

10 trying to reach out and try to see who the economic

11 stakeholders are and see if there could be a settlement, other

12 than a litigation.  Thank you.

13       THE COURT:  Okay.  I think, frankly, counsel for

14 Triad is being extremely patient.  This is an adversary

15 proceeding between Triad and the debtors and I'm hearing a lot

16 of people who actually aren't involved in the case up here

17 telling me things.  So, again, I'm here to listen, but what the

18 Committee has to say about an adversary proceeding they're not

19 a party to, I am not sure I care.

20       MR. JARVINEN:  Your Honor, we'll also be representing

21 the plan trustee in this matter.  And we have been --

22       THE COURT:  Will or are?

23       MR. JARVINEN:  Well, once the plan goes effective.

24 But we have also been very much involved, given those -- you

25 know, what is our current representation to try to work to see

1 whether or not there could be a resolution to this conflict

2 which would benefit all the parties, and wouldn't entail

3 extensive litigation.

4         THE COURT:  All right.

5         MR. KLAYMAN:  Your Honor, good afternoon.  My name is

6 Barry Klayman from Cozen O'Connor, and I represent Triad

7 Guaranty.

8         We are new to the litigation in that we have just

9 entered our appearance in connection with filing the response

10 for this motion to intervene.  Part of the problem was that the

11 intervention of Countrywide creates a conflict of interest for

12 prior counsel and that's why we're here.

13         The single question, really, that's raised in the

14 adversary action that we brought is whether the master policies

15 ought to be rescinded because of breaches of contract by

16 American Home Mortgage.

17         In that case, I just want to set out, for that reason

18 this case is not the same as the Guaranty case that was

19 attached to the reply brief that was filed by Countrywide,

20 which was not a contract action, which was, essentially, a

21 fraud action and which depended, to a great extent, upon the

22 application of California insurance law, regulatory law of

23 California.

24         The question -- our concern about Countrywide

25 intervening in the action is concern about what hat Countrywide

1 is wearing when it seeks to intervene.  And, that was the

2 premise of our argument about why Countrywide did not have a

3 direct substantially -- a substantial and legally protectable

4 interest that would warrant intervention as a matter of right

5 in this action.

6          Countrywide wears a couple of hats, as Your Honor

7 knows.  In one case, it is wearing the hat of an owner of some

8 of these loans.  A very small amount of these loans.  But,

9 secondly, it's wearing a hat as a servicer of these loans,

10 although in its papers it never attaches any form of the

11 servicing agreement, so we don't know what rights and

12 responsibilities that Countrywide has with respect to the

13 owners of these loans.

14          And, in addition, in its motion to intervene,

15 Countrywide has not identified who the owners are, on whose

16 behalf they wish to intervene in this action.  And, I think

17 it's important that if the Court is going to rule on their

18 status as a representative of other parties, of other owners,

19 that they ought to identify the contract under which they are

20 functioning as a representative of those owners and, two, who

21 those owners are, if they're going to be speaking on their

22 behalf and are intervening in the action.

23          Our real -- one of our primary concerns is that

24 Countrywide is really not seeking to intervene as a servicer on

25 behalf of its principle, nor is it really seeking to intervene

**J&J COURT TRANSCRIBERS, INC.**

1 on behalf of its own status as an owner of loans.  What it's

2 really trying to do is to intervene in the action because it

3 has a separate concern as a servicer and a seller of these

4 loans to third parties.

5        What is clear from their papers is that they have

6 some concern that the owners of some of these loans may put the

7 loans back to Countrywide if Triad is successful in the action

8 it's pursuing this case.  So, essentially, what Countrywide is

9 presented to the Court is a contingent, a contingent interest

10 in the outcome of this lawsuit and one which is not either

11 direct or substantial, or under the case law that we cited

12 currently, legally protectable because it is contingent and

13 depending upon a chain of events that has yet to occur.

14        In addition, to the extent that Countrywide is in

15 this position where it is concerned about the current owners of

16 these loans, putting the loans back to Countrywide, they are

17 not really standing in the shoes, as they say, of the owners

18 whom they purport to represent in this litigation.  In fact, by

19 their own admission, they are conflicted with respect to the

20 owners of these loans because they have a concern that the

21 owners of these loans may turn around and put them back to

22 Countrywide.

23        For that reason, we don't think that they satisfy the

24 criteria for mandatory intervention, for intervention as of

25 right and we would ask the Court to deny their right to

1  intervene.

2          With respect to the argument, we would also question

3  the argument that they have made with respect to the adequacy

4  of the debtor in terms of being able to defend the action

5  against Triad and also the issue of whether or not there is a

6  common question of law in which they seek to appear.  The

7  reason is, as the complaint is structured and as the cause of

8  action that we have asserted, we have asserted a breach of

9  contract action, that is a breach of the contract and the

10  duties and obligations that relate to that contract that is

11  between Triad and American Home Mortgage.

12          What is relevant to this litigation is going to be

13  issues concerning what was said between the parties, how the

14  parties behaved and whether or not American Home Mortgage

15  fulfilled its obligations under the master policies to do what

16  it promised to do.

17          That's very different than the questions that

18  Countrywide seems to be raising, which have to do with

19  questions that relate to the relationship that Countrywide,

20  itself, has with some of the owners of the policies.

21          We're not a party to any of the service contracts

22  that Countrywide has with any of the owners of the policy and

23  by the same token, Countrywide was not a party to the policies,

24  to the master policies that we had with American Home Mortgage

25  and don't have any information or knowledge that would

1  contribute to a resolution of the issue as to whether or not

2  American Home Mortgage has breached any of the conditions, or

3  requirements of the master policies.

4        So, we think for that reason, too, permissive

5  intervention is really not appropriate.

6        We do raise a question in our papers about the

7  failure of Countrywide to submit a pleadings, as is required by

8  Rule 24(d), with the petition that they filed.  They haven't

9  really complied with the rule.  I know that they argue that it

10 is not always required that they submit a pleading.  The rule

11 itself purports to require it and, more importantly, having

12 them file a pleading would, for the Court's convenience, define

13 what role it is that they seek to intervene and what hat

14 they're wearing when they seek to intervene and whether or not

15 they do have a protectable interest, or whether or not in some

16 way their intervention, if it is to be permitted, should be

17 limited in someway so that we don't add a whole separate set of

18 issues that would cause confusion in the case.

19       Finally, we would raise a question about what it

20 means when Countrywide says that it is seeking the right to

21 intervene by way of special appearance.  It's not clear from

22 their papers whether that means that what they're doing is to

23 seek intervention merely to raise one issue and if they're not

24 successful on that issues, that they intend to walk from the

25 litigation and they're not seeking to appear fully in the

1  litigation.  It's not clear that Rule 24 contemplates that kind

2  of limited role, where a party comes in and it litigates one

3  issues and then walks from the litigation if it's not

4  successful.

5          THE COURT:  Look, there's no such thing as entering

6  into a lawsuit by special appearance.  Those days are gone.

7          MR. KLAYMAN:  Right.

8          THE COURT:  Before we were born.

9          MR. KLAYMAN:  Right.  And that means that --

10          THE COURT:  You're either in or you're not and if

11  you have an argument about subject matter jurisdiction, it

12  exists.

13          MR. KLAYMAN:  And, it'll be raised and depending upon

14  how the Court determines it, if the Court determines it in our

15  favor and decides that there is jurisdiction, then presumably

16  Countrywide is in the litigation completely, for all issues

17  from that point forward, if the Court allows them to intervene.

18          I do want to pick up on something that counsel for

19  the Creditors' Committee mentioned, which is that there have

20  been, as I understand it, very substantial efforts to try and

21  see if there's a way to reach a negotiated settlement of this

22  and those efforts are ongoing, and it's one reason why there

23  was no push to try and get the pleadings closed at an early

24  point.  And, what that leads to is a suggestion that I'm going

25  to make to the Court, that the Court could decide to deny this

1  motion without prejudice at this time, so that it can be raised

2  at a later time, first of all to allow those negotiations to

3  continue, to see if any of them will bear fruit and, perhaps,

4  resolve a good portion of this lawsuit, which is what the

5  parties are trying very hard and seriously to try and do.

6          Also, it could be at a point, the Court could take up

7  the motion, again, at a point after the pleadings are closed

8  and after the Court has an opportunity to see what position the

9  defendants in the litigation will take.  It would be much

10 easier to evaluate whether or not their representation is

11 adequate, whether or not they're going to be raising some of

12 these defenses without the assistance or the intervention of

13 other parties who have different roles to play.

14         So, we would suggest that one thing the Court could

15 do is just to either hold the motion in abeyance, or to deny it

16 without prejudice and then to take it up again, if and when the

17 litigation proceeds on a real litigation track after the

18 debtors have filed a response to the complaint down the line.

19         If the Court has any other questions, I'd be happy to

20 address them.

21         THE COURT:  Nope.

22         MR. KLAYMAN:  Thank you, Your Honor.

23         THE COURT:  Reply.

24         MS. KRAFT:  Despite Triad's contention, Countrywide

25 actually does have a real, direct and substantial interest in

1  these cases.  As was set forth in the papers, Countrywide has

2  already suffered in excess of $10 million in losses due to

3  Triad's recission or attempts to rescind various insurance

4  contracts on the mortgage loans.

5          In addition to that, they believe that there is an

6  additional $38 million that is at risk, besides the fact that

7  there are hundreds of millions of additional mortgages that

8  might potentially become at issue, in the Triad mortgage

9  recission issues.

10          To the extent that the Court would deny our

11  appearance, you know, as a special matter, to come in and

12  challenge subject matter jurisdiction, the Countrywide would

13  like to intervene from the very beginning and be part of the

14  proceedings and continue forward with all the parties.  As

15  everything that I stood here and told the Court earlier, we

16  believe to be true, is that we have a true, economic interest

17  in defending these actions.  We're able to put the economic

18  interests behind it and defend them substantially and fully and

19  we're not sure that the debtor actually has that type of

20  interest, as the debtor to sit up here and told you and then

21  the Creditors' Committee who intends to represent the plan

22  trustee, they may not have that kind of an economic interest

23  and they actually support our intervention.

24          So, we believe it would be best for all parties for

25  us to be involved from the very beginning and move forward and

1  resolve these issues in an economic manner that is fair to all

2  parties, including Countrywide.  Thank you.

3         THE COURT:  Mr. Minuti, any comment?

4         MR. MINUTI:  Thank you, Your Honor.  I'll be

5  extremely brief.

6         The only thing I wanted to point out, Your Honor, is

7  there was a lot of discussion about settlement talks and let

8  those continue.  My client certainly isn't involved in those.

9  The entities we represent aren't involved in those settlement

10  talks, so it makes me wonder what exactly is being settled and

11  how is that settlement affecting my client's right.  I just

12  wanted Your Honor to be aware that we haven't been in that

13  loop.

14         THE COURT:  Okay.

15         MR. MINUTI:  Thank you, Your Honor.

16         THE COURT:  You're welcome.  I have a couple

17  comments.  One is a bit of a nit.  This is an adversary

18  proceeding motion, chambers procedures state that you're not to

19  notice a hearing on an adversary proceeding motion until

20  directed to by the court.  You're supposed to submit a

21  completion -- a briefing binder.  The court looks at it, the

22  court decides whether it needs oral argument.  Obviously,

23  everybody is here, so I'm hearing the matter on its substance,

24  but Mr. Minuti, I'm sure when you file your motion to

25  intervene, you'll follow the local chambers procedures.

1          Second, I'm going to take the matter under advisement

2   because I want to see Mr. Minuti's motion and I want to decide

3   them in tandem.  So, Mr. Minuti, if your client makes a

4   decision that you definitely don't want to intervene, or that

5   it's going to be months before you make your decision, if you

6   could so inform the Court I'd appreciate it.  But, I took it

7   from your comments it would be forthcoming in the relatively

8   near future.

9          MR. MINUTI:  Your Honor, it will be.  Let me just

10  alert Your Honor to one issue.  The client is deciding whether

11  it is going to appear on behalf of the entities.  If that's the

12  case, I will be involved, the motion is already drafted, ready

13  to go.  If the client decides that what it's going to do is

14  enter an appearance on behalf of the entities, so someone will

15  appear for Citibank, Wells Fargo, I personally can't do that.

16  So, we'd have to find alternative counsel.  I'll have the

17  conversation with my client today.  If that's the decision,

18  we'll move quickly, Your Honor, to do that.

19          THE COURT:  Okay.

20          MR. MINUTI:  But the motion is drafted, it would just

21  have to be changed if that were the case.

22          THE COURT:  Very good, thank you.

23          MR. MINUTI:  Thank you, Your Honor.

24          THE COURT:  In connection with the Rule 24(c) issue,

25  about not attaching a pleading, the rule says must, but the

1 reality is that Countrywide wants to intervene and immediately

2 seek to dismiss the action.  So, it doesn't make a lot of sense

3 in, effect, do to an end run around a party's right to file a

4 motion to dismiss before having to file a pleading, to somehow

5 require a pleading in order to intervene, to file a motion to

6 dismiss.  So, I am going, to the extent that issue is live, I'm

7 not going to decide the issue on that -- I won't say

8 technicality, I mean the rules say what they say, but I think

9 in this instance, there's an ambiguity or an absurdity, excuse

10 me, that's sufficient that I don't have to apply the plain

11 meaning of the rule in this instance.  I'm going to decide it

12 on the merits.

13         I am going to take it under advisement and I'll await

14 Mr. Minuti's client's motion and, again, if it's going to be a

15 substantial period of time, let me know and I'll go ahead and

16 decide this matter alone.  And, Mr. Minuti, again, for your

17 client, simply submit a completion of briefing binder and I'll

18 probably decide without further argument.  All right?  Thank

19 you very much for coming in.

20         Mr. -- sorry, Mr. Klayman?

21         MR. KLAYMAN: Yes, Your Honor.

22         THE COURT:  Would you please order a copy of the

23 transcripts and have it delivered to chambers --

24         MR. KLAYMAN:  I will.

25         THE COURT:   -- because otherwise I don't have get a

1   written copy.

2        MR. KLAYMAN:  I will do that, Your Honor.

3        THE COURT:  Very good.  Thank you.  I appreciate

4   that.  Hearing adjourned.

5

6                        * * * * *

7              **C E R T I F I C A T I O N**

8

9

10      I, ELAINE HOWELL, court approved transcriber, certify that

11   the foregoing is a correct transcript from the official

12   electronic sound recording of the proceedings in the

13   above-entitled matter and to the best of my ability.

14

15

16

17   /s/ Elaine Howell              Date:  March 16, 2010

18   ELAINE HOWELL

19   J&J COURT TRANSCRIBERS, INC.

20

21

22

23

24

25