UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------ X   Chapter 11
In re                                                  :
                                                       :   Case No. 07-11047 (CSS)
American Home Mortgage Holdings,                       :
Inc., *et al.*,                                        :   (Jointly Administered)
                                                       :
                             Debtors.                  :
------------------------------------------------------ X

**OPPOSITION OF U.S. BANK, N.A. (F/K/A PARK NATIONAL BANK)
TO DEBTORS' AMENDED MOTION FOR
COSTS AND EXPENSES PURSUANT TO 11 U.S.C. § SECTION 506(c)**

    U.S. Bank National Association, as successor in interest to Park National Bank ("Park National"), by its attorneys, Womble Carlyle Sandridge & Rice, PLLC and Aronauer, Re & Yudell, LLP, objects to Debtors' amended motion for recovery of costs and expenses pursuant to Section 506(c) of Title 11 of the United States Code (the "Bankruptcy Code"). In support of this Opposition, Park National respectfully represents as follows:

**Preliminary Statement**

    1.  As the Court may recall, Park National is the owner and holder of the first mortgage lien of property owned by Debtors located in Mount Prospect, IL (the "Mortgaged Property"). By motion dated October 28, 2009 (the "Motion"), Debtors first sought recovery of certain expenses from the Mortgaged Property under § 506(c) of the Bankruptcy Code. In their Motion, Debtors limited the amounts sought to real estate taxes paid post-petition and asserted that Debtors were entitled to recovery of those taxes paid as a matter of law.

2.	At a hearing on January 12, 2010, the Court rejected Debtors' assertion and held that to recover the taxes paid, Debtors must prove the usual elements under § 506(c), namely that the expenses were reasonable, necessary, and directly benefitted the secured creditor (Park National).  Debtors have now brought an "amended motion"in which they assert claims for additional and different expenses (the "Amended Motion").  This Amended Motion should be denied by the Court.

3.	In addition to the reasons set forth in Park National's opposition to the motion (a copy of which is attached hereto as Exhibit A and incorporated herein by reference), the Amended Motion fails for several additional reasons.  First, Debtors cite no authority pursuant to which they are permitted to amend a motion which has already been submitted to the Court for consideration.  Simply because they were unhappy with their prior Motion does not permit Debtors' to unilaterally submit a new motion seeking the same relief.

4.	In addition, in their original Motion, Debtors waived some of the relief they are now seeking in the Amended Motion.  Specifically, Debtors limited the recovery being sought to real estate taxes paid.  Having waived the right to cover other expenses, Debtors are estopped from seeking any additional recovery.

5.	In any event, Debtors fail to make the required showing under § 506(c). That is because Debtor is unable to show that any of the amounts expended were for the benefit of Park National.  At all times, Debtors were in possession and control of the Mortgaged Property.  Debtors were collecting rents from the tenants of the Mortgaged Property.  As such, the expenditures were made for Debtors' own benefit, not for the benefit of Park National.

6.	In fact, Debtors hide from the Court the fact that Debtors collected at least $335,000 in rent from the tenants of the Mortgaged Property during the period in question.

Debtors purposely excluded this fact from their Amended Motion and seek to recover the expenses without giving any credit for the rents collected. As such, Debtors seek to retain and use Park National's cash collateral and obtain a recovery for spending Park National's cash collateral. This behavior evidences Debtors bad faith and provides an additional ground to deny the requested equitable recovery.

7. Moreover, in order to make the required showing that the payments benefitted Park National, Debtors must prove that Park National was undersecured at the commencement of the case. This is because if Park National was oversecured when the case was commenced, Park National could have been paid in full by liquidation of the Mortgaged Property at that time. Thus, the claimed expenditures only benefitted Debtors by preserving Debtors' equity in the Mortgaged Property.

8. In essence, by maintaining control of the property throughout the bankruptcy case, collecting the rents and trying to sell the property, Debtors gambled that they would be able to sell the property prior to having to repay Park National's mortgage. Debtors have lost that gamble since the mortgage has matured and the property has not been sold. Rather than taking responsibility for their actions, Debtors ask this Court to hold Park National responsible for Debtors' gamble. That request should be denied by this Court, and Debtors' Motion and Amended Motion should be denied in their entirety.

**Argument**

**I.**

**Debtors Are Limited to the Claims in the Original Motion**

9. Debtors have failed to set forth any section of the Bankruptcy Code or Bankruptcy Rules which allows Debtors to *sua sponte* amend a motion which has been fully briefed and submitted to the Court. Needless to say, if every movant could unilaterally amend a pending motion, there would be utter chaos. While the Court certainly has authority to manage its own docket and set briefing schedules for motions pending before it, Debtors made no request to the Court to submit additional briefing. As such, Debtors' Amended Motion should be rejected out of hand by the Court.

10. Should the Court elect to consider Debtors' Amended Motion, then the relief requested in the motion should be limited to the relief requested in the original Motion. In the original Motion, Debtors limited their claim to $274,920.36 in real estate taxes and waived their right to seek recovery of any other expenses they alleged paid with respect to the Mortgaged Property (the "Waived Expenses"). See Demand in Debtors' Motion, a copy of which is annexed hereto as Exhibit B ("Debtors respectfully request that this Court . . . enter an order . . . that grants allowance and directs payment of the Section 506(c) Claim to the Debtors in the amount of $274,920.36."). Having limited their claim in the Motion, Debtors should be estopped from now seeking to recover the Waived Expenses or any other expenses.

11. Debtors have made no request to the Court for authority to seek the Waived Expenses. Debtors have cited no statute or rule which permits them to seek recovery of expenses whose recovery was waived in a prior pleading. As such, Debtors motion should be

limited to the real estate taxes sought in the Motion, and Debtors should be prohibited from seeking recovery of the Waived Expenses.[1]

## II.

### Debtors' Claim Fails Under § 506(c)

12.     In making a claim under § 506(c), a claimant is required to demonstrate that the expenses sought to be recovered "are reasonable and necessary to the preservation or disposal of the property and . . . the expenditures provide a *direct* benefit to the secured creditors."  In re Visual Industries, Inc., 57 F.3d 321, 325 (3d Cir. 1995), *quoting*, In re C.S. Associates, 29 F.3d 903, 906 (3d Cir. 1994) (emphasis in original) (citations omitted).  Further, it is the claimant's burden to prove each of these elements by a preponderance of the evidence.  In re Midlantic Bank, N.A., 1996 WL 135339, at *3 (E.D. Pa. 1996), *citing*, C.S. Associates, 29 F.3d at 906.

13.     A claimant is required to make a detailed showing as to the value of the expenditures sought to be surcharged against the property.  C.S. Associates, 29 F.3d at 908.  The mere accrual of taxes against the property is insufficient to prove a direct benefit to the secured creditor.  Id.

14.     In addition, "to warrant [§] 506(c) recovery ... [the claimant] must show that ... funds were expended primarily for the benefit of the creditor and that the creditor directly benefitted from the expenditure."  In re Flagstaff Foodservice Corp., 762 F.2d 10, 12 (2d

---

[1] While Debtors reference the Agreed Order, entered December 17, 2009, the reservation of rights in the Agreed Order does not change this result.  The Agreed Order is not the source of the waiver.  As such, the statement in the Agreed Order that "nothing in this Agreed Order shall prejudice . . . waive . . . limit . . . [Debtors'] claims . . . pursuant to 506(c)" has no impact on the waiver.  The Waived Claims were waived in the Motion.  As such, the Agreed Order is irrelevant to this determination.

Cir.1985) (quoted with approval by the 3rd Circuit in C.S. Associates, 29, F.3d at 906).  The mere fact that there is an incidental benefit to a secured creditor is insufficient under § 506(c).  Id.

15. Further, § 506(c) does not authorize charging encumbered assets with the costs of selling a property where the secured claim is paid in full.  This prohibition is because the secured creditor receives no benefit from those sale costs and would have realized full satisfaction of its claim without the intervention of the trustee.  See, e.g., In re Glen Eden Hospital, Inc., 202 B.R. 589, 590 (Bankr. E.D. Mich. 1995) (rejecting claim for § 506(c) surcharge where secured creditor fully secured at time the petition was filed); In Re Codesco, Inc., 18 B.R. 225, 228-229 (Bankr. S.D.N.Y. 1982), *modified on other grounds*, In Re Croton River Club, Inc., 162 B.R. 656, 663 (Bankr. S.D.N.Y. 1993).

16. As is shown more fully below, Debtors have failed to carry their burden of proof under § 506(c).  Debtors' expenditures were for their own benefit, not the benefit of Park National.  As such, Debtors' claim should be denied.

**Debtors' Motion Fails Since**
**Debtors Were in Possession of Property**

17. Debtors concede that they were in possession and control of the Mortgaged Property during the time of all expenditures sought to be recovered in the Motion and Amended Motion.  At all relevant times, Debtors rented the Mortgaged Property to tenants, collected the rents from the tenants, marketed and tried to sell the Mortgaged Property, and otherwise enjoyed the benefits of ownership of the Mortgaged Property.  Under these circumstances, Debtors are not permitted a surcharge under § 506(c) for their payment of real property taxes.  In re Consolidated Cotton Gin Co., Inc., 347 B.R. 572, 580 (Bankr. N.D. Tex. 2006).

18. In Consolidated Cotton, the debtor, like the Debtors here, had paid ad valorem property taxes and sought a surcharge under § 506(c). Relying on C.S. Associates, the Court denied the debtor's motion holding that "[p]aying the ad valorem taxes incurred while in possession of the property against which the taxes are assessed does not satisfy the direct benefit test articulated by the courts." Consolidated Cotton, 347 B.R. at 580. The Consolidated Cotton Court went on to state:

> Consolidated Cotton owned the property and was using it in its operations and was therefore legally obligated to pay the ad valorem taxes. Authorizing a surcharge for the ad valorem taxes would be more of a windfall than a reimbursement to Consolidated Cotton.

Id. While Consolidated Cotton was decided under the prior version of § 506(c), the court stated that the amendment would not alter its decision. Specifically, the court stated: "The addition of paid ad valorem taxes as an expense potentially subject to reimbursement by an amendment of section 506(c) and [sic] does not alter the Court's conclusion on this issue." Id.

19. Other courts which have addressed the issue agree with the reasoning in Consolidated Cotton and deny a surcharge under § 506(c) for real property taxes when the debtor is in possession of the property. See, e.g., U.S. v. Parmele, 171 B.R. 895, 901 (N.D. Okla. 1994) (mere post-petition payment of real estate taxes insufficient to establish surcharge under § 506(c) where claimant failed to provide how payment directly benefitted secured creditor); and In re Bellman Farms, Inc., 86 B.R. 1016, 1021 (Bankr. S.D. 1988) (same).

20. Debtors reference to the mortgage provision which required the escrow and payment of real estate taxes does not change this result. As other courts in this Circuit have recognized, "those payments were made in compliance with contractual obligations, not as

benefits bestowed upon [the mortgagee] by the Debtor." In re Mall at One Assoc., L.P., 185 B.R. 981, 990 (Bankr. E.D. Pa. 1995).

**Debtors' Motion Fails Because Debtors
Have Not Proven that Park National is Undersecured**

21.　In their Amended Motion, Debtors assert that Park National "was undersecured at the time the Debtors surrendered the [Mortgaged] Property." Amended Motion, at p. 10. Debtors' allegation, while incorrect, is irrelevant as a matter of law.

22.　Debtors are seeking to recover expenses they paid throughout this bankruptcy case, from August 2007. Even if Debtors' allegation were true and Park National was undersecured 2½ years later (which Park National was not), this has no impact on Park National's secured status at the time the case was commenced (or even at the time each expense payment was made by Debtors).

23.　To the extent Debtors argue that expense payments benefitted Park National, Debtors must prove that the Park National was undersecured on the date the payment was made. If Park National was oversecured when the payment was made, the payment could not have directly benefitted Park National. Instead, the payment would have benefitted Debtors by preserving Debtors' equity in the Mortgaged Property. That is because if the payment was not made, Park National would still be oversecured.

24.　In any event, Park National was oversecured at all relevant times. As set forth in Park National's motion for relief from stay, an Appraisal valued the property as of the Petition Date as $2,275,000. See Affidavit of Frederick Body in support of motion for relief from stay, sworn to September 24, 2009 ("Body Aff."), at ¶ 11 and Exhibit F. A July 3, 2009 Appraisal determined that the property was worth $1,250,000. See Body Aff., ¶ 12 and

8

Exhibit G.  Since the original principal balance of the note was only $1,007,000, and since Park National was owed $855,571.52 as of September 22, 2009, Park National was oversecured at all relevant times.  See Frederick Body Aff., at ¶ 9.

25. Regardless whether Debtors paid or did not pay the taxes or the other expenses, Park National would still have been fully secured.  Accordingly, Debtors' payment of the taxes or other expenses provided no benefit to Park National (certainly not a direct benefit).  Rather, Debtors' payments merely preserved Debtors' equity in the property and provided Debtors, not Park National, with the benefit.  Just like in Mall at One Assoc., "every action which the Debtor took in this case short of allowing [the mortgagee] to foreclose as soon as possible provided a clear detriment, rather than any direct benefit, to [the mortgagee]."  Mall at One Assoc., 185 B.R. at 989.

26. Debtors have asserted that Park National is undersecured because Debtors were unable to sell the Mortgaged Property at a price in excess of the loan amount.  As support for this position, Debtors cite to this Court's September 8, 2009 Decision in this case in which Debtors imply that the sale price of a property is the only proper determinant of value.  However, the decision cited by Debtors actually makes clear that there are circumstances where market price is not a true indication of value.  See In re American Home Mtge. Holdings, Inc., 48 B.R. 181 (Bankr. Del. 2009).  Rather, where markets are disrupted or are not otherwise functioning properly, other accepted methods of valuation are appropriate.  Id.

27. The Court can take judicial notice of the troubled (if not dysfunctional) state of the mortgage and credit markets since the summer and fall of 2008.  Thus, the fact that Debtors were unable to sell the Mortgaged Property at a commercially reasonable value in late 2008 and the first half of 2009 is hardly determinative of the value of the Mortgaged Property.

9

Certainly, it is hardly probative, if at all, as to the value of the Mortgaged Property on the commencement date of this case.

28. Rather, the value of the Mortgaged Property is accurately reflected in the appraisals submitted with the Body Aff. Even after taking into account the market conditions a reduction in value by nearly half, the appraisals still establish that Park National has been oversecured throughout this bankruptcy case.

**Debtors' Motion Fails Since Debtors Have Not**
**Proved that the Expenses Were Reasonable,**
**Necessary and Provided a Direct Benefit to Park National**

29. Even if Debtors could get beyond the issues and prohibitions discussed above, Debtors fail to provide sufficient proof that the expenses incurred were reasonable, necessary and provided a direct benefit to Park National. In their Amended Motion, Debtors presented various amounts expended and simply asserted that these expenditures were reasonable without any discussion or proof that the expenditures were done at reasonable, market rates. As such, Debtors have failed to carry their burden of proving the amounts expended were reasonable.

30. Debtors have also failed to detail the expenses being claimed and have provided only a summary sheet listing who was paid, the date and the amount. In order to evaluate whether the expenses were both reasonable and necessary, invoices detailing the work completed will need to be reviewed.

31. Debtors also fail to provide any credit in their calculation for the at least $335,000 in "Rental Income" Debtors collected since the Petition date. In the original Motion, Debtors attached a spreadsheet in which they claimed $335,000 in rental income had been


Certainly, it is hardly probative, if at all, as to the value of the Mortgaged Property on the commencement date of this case.

28.  Rather, the value of the Mortgaged Property is accurately reflected in the appraisals submitted with the Body Aff. Even after taking into account the market conditions a reduction in value by nearly half, the appraisals still establish that Park National has been oversecured throughout this bankruptcy case.

**Debtors' Motion Fails Since Debtors Have Not**
**Proved that the Expenses Were Reasonable,**
**Necessary and Provided a Direct Benefit to Park National**

29.  Even if Debtors could get beyond the issues and prohibitions discussed above, Debtors fail to provide sufficient proof that the expenses incurred were reasonable, necessary and provided a direct benefit to Park National. In their Amended Motion, Debtors presented various amounts expended and simply asserted that these expenditures were reasonable without any discussion or proof that the expenditures were done at reasonable, market rates. As such, Debtors have failed to carry their burden of proving the amounts expended were reasonable.

30.  Debtors have also failed to detail the expenses being claimed and have provided only a summary sheet listing who was paid, the date and the amount. In order to evaluate whether the expenses were both reasonable and necessary, invoices detailing the work completed will need to be reviewed.

31.  Debtors also fail to provide any credit in their calculation for the at least $335,000 in "Rental Income" Debtors collected since the Petition date. In the original Motion, Debtors attached a spreadsheet in which they claimed $335,000 in rental income had been

collected through October 27, 2009. This income is not even mentioned in the Amended Motion, an obvious attempt to mislead the Court and attempt to obtain a double recovery.

33. This intentional omission is even more incredible in light of the facts that the rents are Park National's cash collateral and this issue was raised in Park National's opposition to the original Motion. Debtors are actually asking the Court reimburse the Debtors for expenses paid with Park National's own cash collateral. As the Court stated in Mall at One Assoc., 185 B.R. at 990,

> In essence, the Creditors advanced their own collateral to the Debtor one time to allow the Debtor to remain in business. The Creditors cannot be called on to make these same advances from their security interests in the rents a second time. . . .The expenses requested were therefore already paid out of the Creditors' cash collateral in rents.

Thus, to the extent the Court will consider any claim by the Debtors under 506(c), Park National is entitled to a credit for all rents and other income Debtors collected from the Mortgaged Property post-petition.

33. Debtors' claim for recovery of insurance costs is new and was apparently never mentioned in the original Motion. In fact, Debtors fail to explain this and other discrepancies between the claim set forth in the original Motion and the Amended Motion. The original Motion asserted $335,000 in income and $611,000 in expenses, yet only sought reimbursement of approximately $275,000. The Amended Motion seeks a claim of $552,114.84. As discussed above, Debtors should be bound by their prior judicial admissions. Debtors should not be permitted to repeatedly change their claim at their whim as they have already done.

**Conclusion**

34.     Based upon all of the foregoing, it is clear that Debtors have failed to carry their burden of proving that the claimed expenses were reasonable, necessary and directly benefitted Park National.  Debtors have also cited no authority which permits Debtors to file the Amended Motion.  Accordingly, Debtors' Motion and Amended Motion should denied in their entirety.

Dated: March 30, 2010

Womble Carlyle Sandridge & Rice, PLLC

By:  /s/ Michael Busenkell
       Michael Busenkell (Del. Bar No. 3933)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone # (302) 252-4324

And

Aronauer, Re & Yudell, LLP
Joseph Aronauer, admitted Pro Hac Vice
444 Madison Avenue, 17th Floor
New York, New York 10022
Telephone # (212) 755-6000

*Attorneys for Park National*