*Exhibit "A"*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------ X
In re                                                  :    Chapter 11
                                                       :
                                                       :    Case No. 07-11047 (CSS)
American Home Mortgage Holdings,                        :
Inc., *et al.*,                                        :    (Jointly Administered)
                                                       :
                                Debtors.               :
------------------------------------------------------ X

**OPPOSITION OF PARK NATIONAL BANK TO DEBTORS' MOTION
FOR ALLOWANCE AND PAYMENT OF SECTION 506(c) CLAIM**

U.S. Bank National Association, as successor in interest to Park National Bank

("Park National"), by its attorneys, Womble Carlyle Sandridge & Rice, PLLC and Aronauer, Re

& Yudell, LLP, objects to Debtors' motion for an allowance and payment of a claim pursuant to

Section 506(c) of Title 11 of the United States Code (the "Bankruptcy Code").  In support of this

Opposition, Park National respectfully represents as follows:

**Preliminary Statement**

1.        Debtors' assertion for allowance and payment of a claim under § 506(c) of

the Bankruptcy Code must be denied for at least three reasons.  First, real estate taxes paid by a

debtor which is in possession of its real property are not recoverable from a secured creditor's

collateral under § 506(c).  Second, even if the taxes were recoverable under § 506(c), Debtors

have failed to provide sufficient details of their expenditures to carry their burden of proof that

the expenses paid were reasonable and necessary.  Third, Debtors have failed to prove that the

payment of the expenses provided a direct benefit to Park National as is required to surcharge a

secured creditor's collateral under § 506(c).

Docket: 8325
Filed: 11-20-09

2.      As is set forth more fully below, courts which have addressed the issue have held that a Debtor may not surcharge a secured creditor's collateral under § 506(c) if the debtor is in possession of the real property.  These courts have determined as a matter of law that such a debtor is legally obligated to pay the taxes and has made the tax payments for its own benefit, not for the benefit of the secured credit.  Since the Debtors are admittedly in possession of the property and have been collecting the rents from the property and attempting to sell the property, their application under § 506(c) fails.  Debtors paid the taxes for their own benefit, not for the benefit of Park National.

3.      Even if the tax payments were chargeable to Park National's collateral, Debtors do not even attempt to make the required showing on a motion under §506(c).  Debtors are obligated to prove that the payments sought to be surcharged were reasonable, were necessary to preserve the property, were made for the benefit of Park National, and actually provided a direct benefit to Park National.  Debtors have failed to prove any of these required elements.  Instead, Debtors simply assert that they paid real estate taxes and are therefore entitled to a surcharge under §506(c).

4.      Debtors have not proved that the payments were reasonable or necessary since they have failed to detail the expenses paid.  Debtors' submission of a summary schedule containing only four general categories of payments and totals of the amounts paid is insufficient to carry their burden.  There is no way for the Court to determine which expenses were reasonable and necessary since Debtors failed to detail to the Court exactly what expenses were paid.

5.      Further, rather than making payments to benefit Park National, Debtors paid expenses to benefit themselves and enhance their equity in the property.  As Debtors

2

concede in their motion, Debtors continue to control and operate the property for their own benefit.  In such circumstances, Courts have denied a Debtors' request for a surcharge for payment of taxes finding that such payments are nothing more than ordinary administrative expenses.

        6.      In addition, by maintaining control of the property throughout the bankruptcy case, collecting the rents and trying to sell the property, Debtors gambled, in a declining real estate environment, that they would be able to sell the property prior to having to repay Park National's mortgage.  Debtors have lost that gamble since the mortgage has matured and the property has not been sold.  Debtors ask this Court to hold Park National responsible for Debtors' gamble.  That request should be denied by this Court.

        7.      Park National is also oversecured by more than the amount of the taxes paid by Debtors.  Thus, the payment of taxes provided no benefit to Park National.  Rather, the payment of taxes only benefitted Debtors by preserving and enhancing Debtors' equity in the property.

        8.      In light of the foregoing, Debtors' motion for a § 506(c) surcharge should be denied.

## Argument

        9.      In making a claim under § 506(c), a claimant is required to demonstrate that the expenses sought to be recovered "are reasonable and necessary to the preservation or disposal of the property and . . . the expenditures provide a *direct* benefit to the secured creditors."  In re Visual Industries, Inc., 57 F.3d 321, 325 (3d Cir. 1995), *quoting*, In re C.S. Associates, 29 F.3d 903, 906 (3d Cir. 1994) (emphasis in original) (citations omitted).  Further, it

is the claimant's burden to prove each of these elements by a preponderance of the evidence. In re Midlantic Bank, N.A., 1996 WL 135339, at *3 (E.D. Pa. 1996), *citing*, C.S. Associates, 29 F.3d at 906. Debtors have made no such showing in this case, and thus their motion should be denied.

        10.    Further, a claimant is required to make a detailed showing as to the value of the expenditures sought to be surcharged against the property. C.S. Associates, 29 F.3d at 908. The mere accrual of taxes against the property is insufficient to prove a direct benefit to the secured creditor. Id. Despite these requirements, Debtors only proof on its motion is a summary schedule and a naked claim, contrary to the holding of the Third Circuit in C.S. Associates, that they are entitled to the surcharge because they paid taxes which accrued on the property.

**Debtors' Motion Fails Since**
**Debtors Were in Possession of Property**

        11.    While paying the expenses, Debtors concede that they have been in possession and control of the property throughout their bankruptcy case. Debtors rented out the property, collected the rents from the existing tenants, marketed and tried to sell the property. Under these circumstances, Debtors are not permitted a surcharge under § 506(c) for their payment of real property taxes. In re Consolidated Cotton Gin Co., Inc., 347 B.R. 572, 580 (Bankr. N.D. Tex. 2006).

        12.    In Consolidated Cotton, the debtor, like the Debtors here, had paid ad valorem property taxes and sought a surcharge under § 506(c). Relying on C.S. Associates, the Court denied the debtor's motion holding that "[p]aying the ad valorem taxes incurred while in possession of the property against which the taxes are assessed does not satisfy the direct benefit

4

test articulated by the courts." <u>Consolidated Cotton</u>, 347 B.R. at 580.  The <u>Consolidated Cotton</u>

Court went on to state:

> Consolidated Cotton owned the property and was
> using it in its operations and was therefore legally
> obligated to pay the ad valorem taxes.  Authorizing
> a surcharge for the ad valorem taxes would be more
> of a windfall than a reimbursement to Consolidated
> Cotton.

<u>Id.</u>  While <u>Consolidated Cotton</u> was decided under the prior version of § 506(c), the court stated

that the amendment would not alter its decision.  Specifically, the court stated: "The addition of

paid ad valorem taxes as an expense potentially subject to reimbursement by an amendment of

section 506(c) and [sic] does not alter the Court's conclusion on this issue." <u>Id.</u>

      13.    Other courts which have addressed the issue agree with the reasoning in

<u>Consolidated Cotton</u> and deny a surcharge under § 506(c) for real property taxes when the debtor

is in possession of the property. <u>See</u>, <u>e.g.</u>, <u>U.S. v. Parmele</u>, 171 B.R. 895, 901 (N.D. Okla. 1994)

(mere post-petition payment of real estate taxes insufficient to establish surcharge under § 506(c)

where claimant failed to provide how payment directly benefitted secured creditor); and <u>In re</u>

<u>Bellman Farms, Inc.</u>, 86 B.R. 1016, 1021 (Bankr. S.D. 1988) (same).

      14.    Thus, since Debtors sole allegation in support of their claim for surcharge

is that they paid post-petition property taxes, their motion should be denied.

**Debtors' Motion Fails Since Debtors Have Not**
**Proved that the Expenses Were Reasonable,**
<u>**Necessary and Provided a Direct Benefit to Park National**</u>

      15.    Even if Debtors could get beyond the prohibition discussed above,

Debtors fail to provide sufficient proof that the expenses incurred were reasonable, necessary

and provided a direct benefit to Park National.  In their motion, the only proof Debtors presented

of the amounts expended was a spreadsheet attached to the motion as Exhibit A.  In the

spreadsheet, the Debtors show that they collected $335,000 in "Rental Income" since the Petition

date.  Debtors also indicate by their spreadsheet that they paid $611,000 in "Occupancy

Expense" while operating the property.

           16.    The expenditures on the spreadsheet are not detailed.  Rather, they are

broken down into only four (4) generic categories:  Utilities, Office Maintenance, Office

Expense and Real Estate Tax Expense.  No further detail is set forth to explain these categories

or describe the actual expenses included within each category.  Instead, the spreadsheet merely

indicates that approximately $91,000 is listed in the Utilities category, over $216,000 of the

expenses are simply listed under the general category of Office Maintenance, nearly $30,000 is

listed in the category Debtors' call Office Expense, and just under $275,000 is listed in the

category for Real Estate Tax Expense.

           17.    Despite breaking down these Occupancy Expenses on a monthly basis,

Debtors have provided no further description or explanation to enlighten the Court or the parties

as to what expenses were actually paid.  Debtors have not provided any ledger entries, cancelled

checks, invoices, or other documentation.

           18.    Since Debtors have chosen not to provide sufficient information to prove

what the expenses were for and that they were paid, Debtors have failed to carry their burden of

proving that these expenditures were reasonable and necessary to preserve the property.  On this

basis alone, their motion should be denied.

           19.    The Debtors also have failed to make any showing that the expenses

(whatever they may be) provided a direct benefit to Park National.  The Third Circuit made clear

in both Visual Industries and C.S. Associates that, when seeking a surcharge under § 506(c), the

claimant is required to show that the expenditures were primarily for the benefit of the creditor

and that those expenditures provided a direct benefit to the creditor.  Visual Industries, 57 F.3d at

325-326; C.S. Associates, 29 F.3d at 906.  By refusing to detail the nature of the expenditures,

other than to state that they were for "office maintenance" and "office expense," Debtors have

failed to carry their burden of proving both that the expenses paid were primarily for the benefit

of Park National and that the expenses paid actually provided a direct benefit to Park National.

20.    Debtors state in their motion that despite incurring $611,000 in expenses,

they are only seeking a surcharge for the real property taxes in the amount of $274,920.36.  In

doing so, Debtors also ask this Court to ignore the $335,000 in rents they collected.  Debtors

provide no support in law or otherwise for this novel request.

21.    The fact that Debtors collected $335,000 in rents and that those rents

constituted Park National's cash collateral should not be disregarded by the Court.  If the Court

were to ignore these rents, this Court could allow the Debtors to be reimbursed for the payment

of real estate taxes that were paid with Park National's cash collateral.  The Court should reject

this attempt to obtain a windfall by Debtors.

22.    Instead, the $335,000 in rents should be credited against those expenses

which Debtors are able to prove satisfy the requirements of § 506(c).  Debtors should not be

permitted to shield the $335,000 in rents collected and the other $336,000 in expenditures from

the review of the Court simply by stating that they are not seeking a surcharge for those items.[1]

23.    Apparently unable to satisfy the § 506(c) requirements and prove a direct

benefit to Park National, Debtors focus on the amendment to § 506(c) and argue that the

---

[1]    In essence, Debtors are improperly asserting that all of the $335,000 in cash
collateral should be allocated as if it were used for payment of all Occupancy Expenses other
than real property taxes.  Debtors set forth no evidence to prove that this is how the cash
collateral was spent and have submitted no case law or other legal basis for this allocation.

7

amendment requires the Court to allow any § 506(c) claim which is based on the payment of real property taxes. This interpretation of the amendment asserted by Debtors is contrary to the plain language of § 506(c) and has been rejected by the majority of courts and commentators which have reviewed this issue.

24.    The plain language of § 506(c) provides that the Debtors "may recover" from a secured creditor's property certain reasonable and necessary costs and expenses paid, to the extent of a benefit provided to the secured creditor. The amendment, which added the last phrase in § 506(c), simply makes clear that if the property taxes meet the other requirements of the section, they too can be recovered from the property.

25.    There is no indication in the language of the amendment that Congress intended to place real property taxes on a different footing than other claims under § 506(c). Had the intent been to make real property taxes recoverable in all instances, as urged by Debtors, Congress could have easily provided for that result by using mandatory language, such as "shall" or "must," in its amendment. However, the amendment does not provide that ad valorem property taxes "shall be recovered" from a property securing an allowed secured claim. Rather, the recovery of ad valorem property taxes continues to follow the permissive term "may" and the other conditions set forth in § 506(c) which pre-date the amendment.

26.    The leading treaties on bankruptcy disagree with the Debtors' interpretation of the amendment. Both <u>Collier On Bankruptcy</u> and <u>Norton Bankruptcy Law & Practice</u> continue to use the permissive term "may" when discussing surcharging property for the payment of ad valorem property taxes. <u>See 4 Collier On Bankruptcy</u> ¶ 506.05 at 506-124 (<u>Allan N. Resnick</u>, et al., eds, 15th ed. revised, 2009) ("As amended in 2005, § 506(c) expressly includes as part of the amounts that *may be charged* against the secured party's collateral all ad valorem

8

property taxes with respect to the collateral.") (footnote omitted) (emphasis added); and

3 Norton Bankruptcy & Practice § 52:13 at 52-26 (William L. Norton, et al., 3d ed., 2009)

("Congress specifically included the payment of all ad valorem property taxes as expenses that

*may be* surcharged.") (emphasis added). Neither Collier nor Norton interprets the amendment as

mandating a surcharge when property taxes have been paid by a debtor or trustee.

    27.  Indeed, in cases such as the current one, there can be no surcharge because

no benefit is provided to the secured creditor by the payment of real property taxes.  That is

because Park National is oversecured.  As set forth in the moving papers, as of September 22,

2009, Park National was owed $855,571.52 from Debtors.  See Frederick Body Aff., at ¶ 9.

However, the most recent appraisal showed that the property was worth $1,250,000.  See

Appraisal Summary attached as Exhibit F to Park National's moving papers.  Thus, there is

nearly $400,000 in equity.  Regardless whether Debtors paid or did not pay the $275,000 in

taxes, Park National would still be fully secured.  Accordingly, Debtors' payment of the taxes

provided no benefit to Park National (certainly not a direct benefit).  Rather, Debtors' payment of

taxes merely preserved Debtors' equity in the property and provided Debtors, not Park National,

with the benefit.

    28.  That the amendment does not make a surcharge for real property taxes

mandatory is consistent with well-settled law under § 506(c) concerning the recovery of sale

costs where a creditor is oversecured.  It has been consistently held that § 506(c) does not

authorize charging encumbered assets with the costs of selling a property where the secured

claim is paid in full.  This prohibition is because the secured creditor receives no benefit from

those sale costs and would have realized full satisfaction of its claim without the intervention of

the trustee.  See, e.g., In Re Codesco, Inc., 18 B.R. 225, 228-229 (Bankr. S.D.N.Y. 1982),

*modified on other grounds*, In Re Croton River Club, Inc., 162 B.R. 656, 663 (Bankr. S.D.N.Y. 1993).

### Conclusion

29.     Based upon all of the foregoing, it is clear that Debtors have failed to carry their burden of proving that the claimed expenses were reasonable, necessary and directly benefitted Park National.  Debtors have not even presented evidence to prove that Debtors paid those expenses other than out of Park National's cash collateral.  Further, Debtors' proposed interpretation of the amendment to § 506(c) is contrary to the plain language of the amendment and other settled law concerning the interpretation of § 506(c).  Accordingly, Debtors' motion should denied in its entirety.

Dated: November 20, 2009

Womble Carlyle Sandridge & Rice, PLLC

By:

Michael Busenkell (Del. Bar No. 3933)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone # (302) 252-4324

And

Aronauer, Re & Yudell, LLP
Joseph Aronauer, admitted Pro Hac Vice
444 Madison Avenue, 17th Floor
New York, New York 10022
Telephone # (212) 755-6000

*Attorneys for Park National*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X    Chapter 11
In re                                                :
                                                     :    Case No. 07-11047 (CSS)
American Home Mortgage Holdings,                     :
Inc., et al.,                                        :    (Jointly Administered)
                                                     :
                              Debtors.               :    Related Docket No. ____
-----------------------------------------------------X
```

## ORDER DENYING DEBTORS' REQUEST
## FOR ALLOWANCE AND PAYMENT OF SECTION 506(c) CLAIM[1]

Upon consideration of Park National Bank's *Opposition* (the "Opposition") *to Debtors' Request for Allowance and Payment of Section 506(c) Claim* (the "Motion") and all papers related thereto, and this Court possessing jurisdiction to consider the Motion, and venue being proper, and the Court having determined that the legal and factual bases set forth in the Motion do not establish just cause for the relief requested in the Motion; and after due deliberation and sufficient cause appearing for entry of this Order, it is hereby,

**ORDERED**, that *Debtors' Request for Allowance and Payment of Section 506(c) Claim* motion is DENIED WITH PREJUDICE.

Dated: _____, 2009

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

_____

[1] Capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Opposition.