## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PAULA RUSH       *

         *

    v.       *   Civil Action WMN-07-CV-0854

         *

AMERICAN HOME MORTGAGE, INC.   *

et al.         *

  *   *   *   *   *   *   *   *   *   *   *   *

### MEMORANDUM

Before the Court is Defendants American Home Mortgage Corp., D/B/A American Brokers Conduit, and AHM SV, Inc.'s (together "AHM Defendants") Motion to Dismiss.[1]  Paper No. 20. This case was filed on April 3, 2007, against Defendants American Home Mortgage, Inc., American Home Mortgage Servicing Inc., American Brokers Conduit, Trust Appraisers, and Servicelink alleging various claims relating to Plaintiff's Mortgage Refinance to a "MTA Pay Option ARM."  The AHM Defendants filed the motion to dismiss at issue here on July 31, 2007.  Paper No. 20.  Plaintiff filed her Opposition on August 17, 2007.  Paper No. 27.  Subsequently, the case was stayed as to the AHM Defendants on August 8, 2007, due to their filing bankruptcy under Chapter 11.  Paper No. 23.

---

[1] Plaintiff incorrectly identified American Brokers Conduit as a separate Defendant.  In fact, American Brokers Conduit is the D/B/A of American Home Mortgage and thus, the same Defendant. In addition, the name of Defendant American Home Servicing, Inc. has changed to AHM SV, Inc. since the filing of this Complaint and AHM SV, Inc. has thus replaced American Home Servicing, Inc. as the correct Defendant.

Following the stay against the AHM Defendants, the case was dismissed without prejudice as to Defendants Trust Appraisers and Servicelink due to a lack of subject matter jurisdiction over those Defendants. Paper Nos. 32 & 33. Within the same dismissal order, the Court administratively closed this action as there were no remaining Defendants against whom the case could proceed.[2] Paper No. 33.

On August 19, 2009, the Court granted Plaintiff's motion to reopen the administratively closed case against the AHM Defendants, but denied her motions to amend her Complaint and

---

[2] Plaintiff requested in her Motion to Dismiss that the Court enter default judgment against The Loan Corporation. It is unclear, however, whether the Loan Corporation was properly named as a Defendant, and, if so, whether they were properly served. The Loan Corporation never entered an appearance nor filed a responsive pleading to Plaintiff's Complaint, although its representative allegedly told Plaintiff that they had not been properly served or named in the Complaint. Plaintiff served the Summons and Complaint on "American Brokers Conduit; The Loan Corporation" at The Loan Corporation's address. Thus, The Loan Corporation, which is not owned or affiliated with American Brokers Conduit, allegedly stated that Plaintiff had not served The Loan Corporation, but had improperly served American Brokers Conduit at The Loan Corporation's address. In Plaintiff's Opposition to AHM Defendants' Motion to Dismiss, Plaintiff asked the court for default judgment against The Loan Corporation and stated that they brokered the loan through some affiliation with American Brokers Conduit. Subsequent to Plaintiff's filing, this case was administratively closed and the issue was never addressed. When Plaintiff filed her motion to reopen the case, she alleged that The Loan Corporation had gone out of business and the Court reopened the case only as to the AHM Defendants. Thus, as The Loan Corporation is no longer a Defendant and Plaintiff has not moved for its addition, Plaintiff's request for default judgment will be denied without prejudice.

add new parties.  Paper No. 43.  Subsequently, the AHM

Defendants filed their Reply to Plaintiff's Opposition and this

motion is now ripe.  As Plaintiff's various motions to amend her

Complaint have all been denied, this Motion is based only upon

claims and allegations contained in Plaintiff's original

Complaint and her Opposition to the Motion and not on any

allegations contained in any of her proposed amended complaints.

Upon review of the pleadings and the applicable case law,

the Court determines that no hearing is necessary (Local Rule

105.6) and that the Motion to Dismiss will be granted in part

and denied in part as set forth below.

## I.    BACKGROUND

On April 3, 2006, Plaintiff Paula Rush refinanced her

existing home loan and entered into a MTA Pay Option ARM loan

agreement with American Home Mortgage Corp. ("AHMC") d/b/a

American Brokers Conduit ("ABC").  Compl. ¶ 5.  Plaintiff's MTA

Pay Option ARM loan ("the loan") has a variable rate feature

with payment caps.  Plaintiff alleges that she was told that she

was receiving a loan with a 1% interest rate for 480 months.

Compl. ¶ 21.  Instead, however, the loan possessed a low, fixed

payment for a certain period of time, but not a low, fixed

interest rate.  Id. ¶ 66.  Plaintiff claims that she received

the low interest rate for only one month after which Defendants

increased the interest rate that they charged, albeit not her monthly payment.  Id. ¶ 37.

Plaintiff alleges that her belief regarding the interest rate stemmed first from the misleading advertisements sent out by Defendants.  She alleges that she received a direct mail flyer for a MTA Pay Option Arm that stated that she was pre-qualified for a 1% interest rate due to her good credit standing and equity in her home.  Id. ¶ 11.

Plaintiff also alleges that her belief that she was purchasing a mortgage with a 1% interest rate stemmed from confusing loan disclosures that changed from when she first submitted her application to when she closed on the loan. Moreover, she alleges that she did not timely receive the disclosures within the mandates of the Truth-in-Lending Act. She claims that the disclosures relating to interest rate, the APR, and the use of the term conventional to describe the type of loan that she had were misleading and led her to believe she was applying for a mortgage with a 1% interest rate.  Plaintiff also claims that the initial disclosures misled her into believing that her loan would not be subject to a prepayment penalty.  Finally, Plaintiff claims that the disclosures failed to point out that negative amortization would occur.

Based upon these allegations, Plaintiff raises twelve counts: 1) Violations of the Truth-in-Lending Act (TILA) Prior

4

to Closing; 2) Servicing Mortgage Loans Without Mandatory TILA
Disclosures Subsequent to Closing; 3) False Advertising; 4)
Fraud and Deceptive Acts; 5) Racketeer Influenced and Corrupt
Organizations Act (RICO); 6)Negligence; 7) Breach of Express
Warranty; 8) Breach of Fiduciary Duty; 9) Unjust
Enrichment/Restitution; 10) Breach of Contract; 11) Breach of
Fiduciary Duty; and 12) Duress and Economic Duress.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint
must contain sufficient factual matter, . . . , to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp.
v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  Iqbal, 129 S.
Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "Detailed
factual allegations" are not required, but allegations must be
more than "labels and conclusions," or "a formulaic recitation
of the elements of a cause of action[.]"  Iqbal, 129 S. Ct. at
1949 (quoting Twombly, 550 U.S. at 555).  "[O]nce a claim has
been stated adequately," however, "it may be supported by
showing any set of facts consistent with the allegations in the
complaint."  Twombly, 550 U.S. at 563.  In considering such a

motion, the court is required to accept as true all well-pled allegations in the complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citing Little v. Federal Bureau of Investigation, 1F.3d 255, 256 (4th Cir. 1993).

## III. DISCUSSION

### A.   Judicial Notice and Consideration of Documents and Facts Raised Outside the Complaint

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court generally may not consider any material beyond the pleadings.  See Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999).  Documents attached to the complaint are part of the complaint and are properly considered on a motion to dismiss.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.").  See Robinson v. Ladd Furniture, Inc., No. 92-228995, 995 F.2d 1064 (Table), 1993 WL 211309, at *3 (4th Cir. June 14, 1993).  Plaintiff has attached the following documents to her Complaint that will be considered on this motion to dismiss: Plaintiff's application signed and dated on April 3, 2006; Preliminary and Final Truth In Lending Disclosure Statements ("TILDS") dated March 13, 2006, and April 3, 2006, respectively; a Preliminary Good Faith Estimate dated

March 13, 2006; Addendum D showing Correspondent/Broker Fees; an
unsigned and undated Settlement Statement; and an Appraisal.

In addition to documents attached to the Complaint, the
Court may consider material attached to the motion to dismiss
that "was integral to and explicitly relied on in the complaint
and [if] the plaintiffs do not challenge its authenticity."
Phillips v. LCI Int'l Inc., 190 F.3d at 618 (internal citations
omitted). Defendants attached to their motion to dismiss and
request judicial notice of 1) a copy of Plaintiff's application
dated by the interviewer on March 30, 2006, and by Plaintiff on
April 3, 2006; 2) a Truth-in-Lending Disclosure Statement
("TILDS") with a date prepared of February 17, 2006, and
allegedly signed by Plaintiff on March 5, 2006; 3) a final TILDS
allegedly signed by Plaintiff on April 3, 2006; 4) an Adjustable
Rate Rider allegedly signed by Plaintiff on April 3, 2006; 5) a
Prepayment Rider allegedly signed by Plaintiff on April 3, 2006;
6) an Adjustable Rate Mortgage Loan Disclosure Statement
allegedly signed by Plaintiff on April 3, 2006; 7) a POWER ARM
Option Adjustable Rate Mortgage flyer; 8) a Good Faith Estimate
dated February 17, 2006, and allegedly signed by Plaintiff on
March 6, 2006; and 8) an Affiliated Business Arrangement
Disclosure allegedly signed by Plaintiff with a date prepared of
March 14, 2006.

7

Plaintiff disputes the following documents submitted by Defendants: the application, the preliminary TILDS, the POWER ARM Option Adjustable Rate Mortgage flyer, the Preliminary Good Faith Estimate, and the Affiliated Business Arrangement Disclosure.  Plaintiff has attached what she argues to be the correct documents as to each of these and references them in her Complaint and in her Opposition to the Motion to Dismiss.  The determination of which documents are correct is more appropriately left to the fact finder at trial.  Thus, for purposes of this Motion to Dismiss, because the Court is mandated to accept all well-plead facts as true and may consider documents properly attached to the complaint, of these contested documents, the Court will refer to the Plaintiff's versions of the documents and not to the Defendants' in determining whether dismissal is appropriate.

The final TILDS attached to Defendants' Motion is identical to that attached to Plaintiff's Complaint.  It is thus considered insofar as Plaintiff's attachment is considered.

Plaintiff does not contest the Adjustable Rate Rider or the Prepayment Rider attached to Defendant's Motion as inaccurate, but says that they weren't presented in the "Good Faith Package."  Plaintiff does not explain, however, what the Good Faith Package is.  Plaintiff also does not dispute the Adjustable Rate Mortgage Loan Disclosure Statement.  Because

Plaintiff does not dispute these disclosures and she references them in her Complaint, they will be considered in this Motion to Dismiss.

In addition, Plaintiff alleges additional facts in her Opposition to Defendants' motion and appears to be making additional claims; although the additional claims are not explicit. Because of the Court's obligation to liberally construe a pro se Complaint, the Court will consider the existing facts to the extent that the additional facts support her existing claims. See Donahue v. United States Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990) abrogated on other grounds by Sosa v. Alvarez-Machain, 542 U.S. 692 (2004) (holding that due to "[t]he court's duty to adopt a generous attitude when evaluating a pro se complaint" that it would consider the allegations in the plaintiff's opposition to the motion to dismiss where they are consistent with the allegations in the complaint). See also Smith v. Blackledge, 451 F.2d 1201, 1202-03 (4th Cir. 1971) (holding that a document denominated by the plaintiff as one to "further particularize" the complaint, which included new claims, but construed by the District Judge as an opposition to the defendants' motion to dismiss should have been considered an amendment to the complaint); Riner v. Edwards, Civ. No. 7:07-cv-00455, 2008 WL 4388788, at * 6 (W.D. W. Va. Sept. 26, 2008)(holding that the court would construe the

plaintiff's opposition to the motion to dismiss to the extent

that it raised new claims because of the "less stringent"

pleading standards to be accorded pro se plaintiffs);  Motto v.

Correctional Medical Services, Civ. No. 5:06-cv-00163, 2007 WL

2897854, at *3 (S.D. W. Va. Sept. 27, 2007) (upholding the

magistrate judge's decision to consider the plaintiff's response

brief as a pleading because "the court is charged with liberally

construing a pleading filed by a pro se litigant to allow for

the development of a potentially meritorious claim").  The Court

will not, however, recognize any additional claims at this time

as it is not clear from Plaintiff's Opposition whether she is

pleading additional claims or simply additional facts. [3]

---

[3] On several occasions within the Complaint and her Opposition,
Plaintiff seems to allege that Defendants violated the Equal
Credit Opportunity Act (ECOA) and the Real Estate Settlement
Procedures Act (RESPA).  Because she has not alleged these
claims as separate counts, it is unclear if she intended these
references to be factual allegations or additional claims.

Regardless, it does not appear that Plaintiff could allege any
facts that would state a violation of ECOA.  Thus, to the extent
that Plaintiff was attempting to claim Defendants violated ECOA
that claim will be dismissed for failure to state a claim.

Whether Plaintiff could successfully allege a RESPA claim,
however, particularly as to her allegations that Defendants
required her to use Defendants' affiliated settlement providers
is less clear.  Thus, to the extent that Plaintiff was
attempting to claim Defendants violated RESPA, the claim will be
dismissed at this time but with leave to amend within 30 days.

**B.    Federal Rule of Procedure 8(a) and (e)**

Defendants' first argument is that Plaintiff's Complaint should be dismissed for a failure to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" under Federal Rule of Civil Procedure 8(a) and because the averments of the Complaint are not "simple, concise, and direct" as directed by Rule 8(e)(1). "What is a 'short and plain' statement depends upon the nature of the case." Barnes v. A. Sind & Assoc., 32 F.R.D. 39, 40 (D. Md. 1963) (citing 2 Moore's Federal Practice, 2d ed., ¶8.13, p. 1653). When determining whether a complaint fails to comply with Rule 8(a), "courts have looked to various factors, including the length and complexity of the complaint, whether the complaint was clear enough to enable the defendant to know how to defend himself, and whether the plaintiff was represented by counsel. North Carolina v. McGuirt, 114 Fed. App'x. 555, 558 (4th Cir. 2004) (internal citations omitted). As is the case here, pro se complainants are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). "Pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (citing Rice v. Olson, 324 U.S. 786,

791-92 (1945) and Holiday v. Johnston, 313 U.S. 342, 350
(1941)).  "A complaint, especially a <u>pro se</u> complaint, should
not be dismissed summarily unless 'it appears beyond a doubt
that the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief.'"  <u>Id.</u> (quoting <u>Conley
v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  Moreover, "a reasonable
latitude should be allowed to a pleader in the statement of his
claim or defense. . . .  In practice, what matters is not alone
whether the phrase is immaterial, but whether its presence, if
it be immaterial, is calculated to be harmful."  <u>Barnes</u>, 32
F.R.D. at 40 (citing <u>Sinkbeil v. Suhr</u>, 7 F.R.D. 92 (D.C. Neb.
1946)).

    Here, Plaintiff's Complaint can hardly be called artful and
even qualifies as disorganized, but it does state sufficient
facts to establish some valid claims.  The relevant facts and
claims are easily distinguishable such that Defendants can
suitably respond to them and defend themselves - in fact, the
Defendants have done so in their reply memorandum.  While there
may be some extraneous or duplicative facts, they are not
calculated to be "harmful."  As such, under the liberal pleading
standards granted to a <u>pro se</u> Plaintiff, Plaintiff's Complaint
is sufficient and will not be summarily dismissed on Rule 8
grounds.

**C.    Truth In Lending Act Claims (Counts I-III)**

Plaintiff raises three counts related to the Truth-in-Lending Act (TILA).  Count I alleges violations of two TILA disclosure regulations that took place prior to and at closing. Plaintiff claims that Defendants' use of the term Conventional and the 1% interest rate on several of the pre-closing disclosures as well as the disclosed APR was misleading and therefore not clear and conspicuous as required by 12 C.F.R. §§ 226.17, 226.18.  Moreover, Defendants failure to indicate that the 1% rate was a discounted rate and the variable rate disclosures, particularly as to the certainty of negative amortization did not meet the clear and conspicuous requirement of 12 C.F.R. §§ 226.17 and 226.19.  Plaintiff also alleges that she did not receive the required pre-closing disclosures in the time frame mandated by TILA under 12 C.F.R. § 226.19(a)(1) & (a)(2). Plaintiff's second count is for violating TILA provisions as to notice of changes in interest rate following the consummation of the mortgage under 12 C.F.R. § 226.20(c). In Count III Plaintiff claims that Defendants violated the advertising disclosure provisions of 15 U.S.C. § 1664.

TILA is a consumer protection statute enacted by Congress "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."

15 U.S.C. § 1601(a).   Pursuant to its congressionally-delegated

authority, the Federal Reserve Board implemented TILA through

its issuance of Regulation Z, 12 C.F.R. § 226 et seq., and its

interpretations and Official Staff Commentary, 12 C.F.R. Pt.

226, Supp. I ("Staff Commentary").   Courts have noted that TILA

is a remedial statute that is liberally construed in the favor

of consumers.   White v. Arlen Realty & Development Corp., 540

F.2d 645, 649 (4th Cir. 1975) ("The language of [TILA] should be

construed liberally in light of its broadly remedial purpose.").

In order to ensure that the consumer is protected as Congress

envisioned, the provisions of the Act and its implementing

regulations must be strictly enforced.   Mars v. Spartanburg

Chrysler Plymouth, Inc., 713 F.2d 65, 67 (4th Cir. 1983)

superseded by statute and regulation on other grounds.

Moreover, "'a misleading disclosure is as much a violation of

TILA as a failure to disclose at all.'"   Nkengfack v.

Homecomings Financial, LLC, No. RDB 08-2746, 2009 WL 1663533, at

*2 (D. Md. June 15, 2009) (quoting Barnes v. Fleet Nat. Bank,

N.A., 370 F.3d 164, 174 (1st Cir. 2004) quoting Smith v.

Chapman, 614 F.2d 968, 977 (5th Cir. 1980)).

1.   Statute of Limitations

     Defendants' first argument relating to the alleged TILA

violations is that Plaintiff's TILA claims are time barred by a

one year statute of limitations.   15 U.S.C. § 1640(e) provides

that "[a]ny action under this section may be brought in any

United States district court, or in any other court of competent

jurisdiction, within one year from the date of the occurrence of

the violation."   Where the violations alleged relate to failures

of the lender to provide required pre-loan consummation

disclosures, the "occurrence of the violation" is generally

considered to be the date the loan agreement is entered into.

See, e.g., Davis v. Edgemere Finance Co., 523 F. Supp. 1121,

1123 (D. Md. 1981) ("[Section 1640(e)'s] one-year limitation

period begins to run from the date the loan agreement is entered

into.").   Here, Plaintiff allegedly closed on her loan on April

3, 2006.   Plaintiff filed her Complaint on April 3, 2007.   The

Fourth Circuit computes the statue of limitations periods in

statutes using Federal Rule of Civil Procedure 6(a) which

"exclude[s] the day of the act, event, or default that begins

the period."   Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir.

2000).   Thus, the statute of limitations here began to run on

April 4, 2006, and expired on April 3, 2007.   Plaintiff thus

filed her Complaint within the period of the statute of

limitations and her TILA claims for damages will not be

dismissed on this basis.

Plaintiff also requests rescission under TILA.  15 U.S.C. §

1635(a) provides that

> in the case of any consumer credit transaction . . .
> in which a security interest, . . ., is or will be
> retained or acquired in any property which is used as
> the principal dwelling of the person to whom credit is
> extended, the obligor shall have the right to rescind
> the transaction until midnight of the third business
> day following the consummation of the transaction or
> the delivery of the information and rescission forms
> required under this section together with a statement
> containing the material disclosures required by this
> subchapter, whichever is later, by notifying the
> creditor, in accordance with regulations of the board,
> of his intention to do so.  The creditor shall clearly
> and conspicuously disclose, in accordance with
> regulations of the Board, to any obligor in a
> transaction subject to this section the rights of the
> obligor under this section.  The creditor shall also
> provide, in accordance with regulations of the Board,
> appropriate forms for the obligor to exercise his
> right to rescind any transaction subject to this
> section.

15 U.S.C. § 1635(f) provides that where the material disclosures

and/or the required rescission notice are not delivered to the

consumer, the right of rescission expires three years after the

date of consummation of the transaction with certain exceptions

that do not apply here.

According to the Staff Commentary, "the period within which

the consumer may exercise the right to rescind runs for 3

business days from the last of 3 events:

- consummation of the transaction;
- delivery of all material disclosures; and

- delivery to the consumer of the required rescission notice."

Staff Commentary, cmt. 23(a)(3)-1.  Where any one of the three events does not occur, however, the consumer has three years from the consummation of the loan to rescind.

To effect delivery, "it is not sufficient for the creditor merely to show the consumer the document containing the disclosures before the consumer signs and becomes obligated. The consumer must be free to take possession of and review the document in its entirety before signing."  Staff Commentary, cmt. 17(b)-3.  The Staff Commentary to 12 C.F.R § 226.17 provides an example that would satisfy the disclosure requirement: "A creditor gives a consumer a multiple-copy form containing a credit agreement and TILA disclosures.  The consumer reviews and signs the form and returns it to the creditor, who separates the copies and gives one copy to the consumer to keep."  Id.

Section 226.23 of Regulation Z provides that the term 'material disclosures' means the required disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2).  12 C.F.R. § 226.23 n.48.  In addition, the Commentary to Regulation Z further elucidates the meaning of

material disclosures by stating that a "failure to provide
information regarding the annual percentage rate also includes
failure to inform the consumer of the existence of a variable
rate feature."  Staff Commentary, cmt 23(a)(3)-2.  "Failure to
give the other required disclosures does not prevent the running
of the rescission period, although that failure may result in
civil liability or administrative sanctions."  Id.

Plaintiff does not state sufficient allegations in her
Complaint to maintain a rescission claim and it will be
dismissed without prejudice and with leave to amend within
thirty days.  First, it is unclear from Plaintiff's Complaint
who currently owns the mortgage note at issue and whether the
Defendants are the correct parties on whom to exercise a right
to rescission.  Second, Plaintiff states in her Opposition to
the Motion to Dismiss that she did not receive a copy of the
final TILDS at closing, but that she "received a set of
documents back in the mail sometime after closing."  Thus, it is
unclear when Plaintiff actually received the material
disclosures.  Finally, Plaintiff states in her Opposition that
she was asked to sign a release at closing saying that she would
not be rescinding the loan, but does not state whether she ever
received two copies of the notice of her right to rescind.
Without knowing if or when Plaintiff received the material

18

disclosures and the two copies of the notice of right to rescind, it is impossible to determine if Plaintiff's request for rescission was made within three days of the deliverance of the disclosures.

## 2.   Count I: TILA's Pre-Closing Disclosures

Plaintiff's allegations for violations of TILA under Count I involve allegations that the required disclosures under §§ 226.18 and 226.19 were not clear and conspicuous as required by § 226.17 and that they were not timely made.  As explained below, this Court finds that Plaintiff has not stated facts to establish that the disclosures made under § 226.18 were not clear and conspicuous as required by § 226.17 and that claim will be dismissed.  Plaintiff has, however, stated sufficient facts to survive the motion to dismiss as to whether the disclosures required by § 226.19 were made clearly and conspicuously.  In addition, Plaintiff has stated sufficient facts to survive Defendant's Motion to Dismiss as to the timeliness of the disclosures made by Defendants as required by § 226.19(a)(1) & (a)(2).

All disclosures required by Subpart C of Regulation Z, which includes 12 C.F.R. §§ 226.18 and 226.19, must be made clearly and conspicuously, in writing, in a form that the consumer may keep.  12 C.F.R. § 226.17(a)(1).  The required

timing of the disclosures in variable rate mortgage transactions
are outlined by 12 C.F.R. §§ 226.19(a) & (b), 226.20(c), but in
all cases must be given prior to consummation of the
transaction.   12 C.F.R. § 226.17(b)

    a.   12 C.F.R. § 226.18 Disclosures

Section 226.18 of Title 12 requires the following
disclosures on mortgages pertinent to Plaintiff's Complaint:

1.   Itemization of the amount financed, which may be
satisfied by the Good Faith Estimate of settlement
costs as provided by the Real Estate Settlement
Procedures Act (12 USC 2601 et seq.);

2.   The annual percentage rate ("APR");

3.   If the APR may increase after consummation of the
transaction, the disclosure must show that the
transaction contains a variable-rate feature and there
must be a statement that variable-rate disclosures
have been provided earlier;

4.   A statement as to whether a prepayment penalty will be
imposed.

Plaintiff makes several allegations relating to violations
of § 226.18.  Plaintiff claims that the application and the Good
Faith Estimate showed a 1% interest rate and that the only place
on the preliminary disclosures that showed anything close to the

actual interest rate accruing on Plaintiff's loan was the APR on
the TILDS, which she alleges, even Defendants acknowledge is a
term confusing to consumers.  Compl. ¶¶ 32, 35, 36.  Moreover,
she alleges that both the Good Faith Estimate and the TILDS were
misleading as they showed the type of loan as "conventional"
without using the terms ARM, pay option arm, negative
amortization, index plus margin or any clarification of the term
"conventional."  Id. ¶ 24, 25, 33.  Moreover, Plaintiff contends
that the only use of the word conventional in their descriptions
of mortgage loan products on their website is attached to a
conforming fixed loan, which further contributes to the lack of
clarity as to what loan product she was purchasing.  Id. ¶ 24.

While Plaintiff's allegations may in fact have contributed
to Plaintiff being misled about her loan, none of them result in
violations of § 226.18.  Under § 226.18, the Good Faith Estimate
serves the purpose of itemizing the amount financed, including
the amount of any proceeds distributed to the consumer, the
amount credited to the consumer's account with the creditor, any
amounts paid to third persons by the creditor on behalf of the
consumer, and the prepaid finance charge.  Plaintiff makes no
allegations that Defendants did not clearly and conspicuously
make these disclosures on the Good Faith Estimate, however.

Similarly, Defendants here used the model TILDS form provided in Appendix H-2 to Regulation Z.  While Plaintiff may find the use of the term APR misleading, Defendants were required to include the APR by law and she has not alleged that the APR shown on her final TILDS was not accurate.  Nor has Plaintiff alleged that the TILDS did not include clearly and conspicuously any of the required disclosures under § 226.18.

Plaintiff's argument that the use of the term "conventional" to describe her loan type on the application, Good Faith Estimate, and TILDS was misleading because there were no further clarifications as to the adjustable rate nature of her loan is unavailing as to the Section 226.18 disclosures. Section 226.18 requires that if the APR may increase after consummation of the transaction, the TILDS must show that the transaction contains a variable-rate feature accompanied by a statement that variable-rate disclosures have been provided earlier.  Both the preliminary and final TILDS attached to Plaintiff's Complaint included these required statements. Moreover, Defendants argue and Black's law dictionary supports that the term "Conventional" when referring to a mortgage is a term of art indicating that the loan is not federally insured and is not a reference to the amortization of the loan.  BLACK'S LAW DICTIONARY 300 (8th ed. 2004), "mortgage."  Plaintiff's

application also made this distinction clear as it shows the possible loan types as conventional, VA, FHA, USDA/Rural Housing Service, and Other, while under amortization type it shows that it is an ARM of the type (AH) 1 Mo. MTA thus indicating that the loan can be both conventional and an adjustable rate. Plaintiff's alleging that Defendants' website shows a loan called "conventional conforming fixed rate" is irrelevant to her argument as she pulled that from their website on April 1, 2007, almost a year after she closed on her loan and she never alleges that a similar term influenced her understanding at the time that she was considering whether to purchase the loan. Thus, Plaintiff's claim that the § 226.18 disclosures were not clear and conspicuous as required under § 226.17 will be dismissed.

Nonetheless, even though the allegations are not sufficient to state that the § 226.18 disclosures were not clear and conspicuous, Plaintiff may be able to establish that Defendants' disclosures were not timely under 12 C.F.R. § 226.19(a)(1) and (a)(2) and not "in a form that the consumer may keep before consummation of the transaction" as required by § 226.17(a)(1). In mortgage transactions subject to the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) the disclosures under 12 C.F.R. § 226.18 (which was allegedly made here in the form of the TILDS and the Good Faith Estimate) must "be delivered or

mailed to the consumer no later than the third business day
after the creditor receives the consumer's written application"
and no "later than the seventh business day before consummation
of the transaction."    12 C.F.R. § 226.19(a)(1)(i) &
§226.19(a)(2)(i).   If the disclosed APR becomes inaccurate, as
defined by § 226.22, "the creditor shall provide corrected
disclosures with all changed terms.   The consumer must receive
the corrected disclosures no later than three business days
before consummation."   12 C.F.R. § 226.19(a)(2)(ii).   According
to the staff commentary "[i]t is not sufficient for the creditor
merely to show the consumer the document containing the
disclosures before the consumer signs and becomes obligated.
The consumer must be free to take possession of and review the
document in its entirety before signing."   Staff Commentary, cmt
17(b)-3.

　　　Defendants have not argued that the mortgage transaction
here was not subject to the Real Estate Settlement Procedures
Act, thus, the preliminary TILDS and Good Faith Estimate was to
be delivered or mailed to Plaintiff within three days of when
she applied for her loan.   Plaintiff alleges that she did not
receive the TILDS, however, for almost three weeks after she
submitted her application, Compl. ¶ 22, which may be sufficient
to allege a violation of 12 C.F.R. § 226.19(a)(1)(i).   Moreover,

Plaintiff alleges that the final § 226.18 disclosures were different from the preliminary disclosures, most importantly by having a different APR and showing that Plaintiff may have to pay a prepayment penalty.  Compl. ¶ 30; Preliminary and Final TILDS.  Plaintiff alleges that she did not even see the changed disclosures, however, until closing and that she was not given time to read them nor did the settlement agent leave copies with her.  Opp. ¶¶ 16, 18, 25, 26.  This late provision of the disclosures alleged by Plaintiff does not appear to comply with § 226.19(a)(2)(ii) requiring receipt of the corrected disclosures three business days prior to consummation nor does it comply with the § 226.17(a)(1) requirement that she receive the disclosures in a form that she could keep.  Thus, Plaintiff's claim as to the timeliness and manner of delivery of the § 226.18 disclosures will not be dismissed.

### b.    12 C.F.R. § 226.19(b)(2) Disclosures

Although Plaintiff's Complaint does not state sufficient facts to make a claim that the disclosures violated § 226.18, Plaintiff's allegations, if true, may be sufficient to establish various violations of the variable rate disclosure requirements under § 226.19(b).  Plaintiff alleges that she did not receive, as required by § 226.19(b), a variable rate disclosure particular to her loan, that the disclosures did not indicate

that she was receiving a discounted rate, and did not explain that making the 1% interest rate payments would certainly result in negative amortization of her loan.

Section 226.19(b) provides that "[i]f the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year," the lender is required to make certain disclosures at the time an application form is provided or before the consumer pays a non-refundable fee.  Among these disclosures must be "a loan program disclosure for each variable-rate program in which the consumer expresses an interest."  12 C.F.R. § 226.19(b)(2).  In particular, the loan program disclosure must include

(i)     the fact that the interest rate, payment, or term of the loan can change;

(ii)    the index or formula used in making adjustments, and a source of information about the index or formula;

(iii)   an explanation of how the interest rate and payment will be determined, including an explanation of how the index is adjusted, such as by the addition of a margin;

(iv)    a statement that the consumer should ask about the current margin value and current interest rate;

(v)     the fact that the interest rate will be discounted and a statement that the consumer should ask about the amount of the interest rate discount;

(vi)    the frequency of the interest rate and payment changes;

(vii)   any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment