RECEIVED / FILED

APR 13 2010

U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) |
| AMERICAN HOME MORTGAGE | ) Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, | ) Jointly Administered |
| et. al., | ) |
| | ) |
| Debtors, | ) |
| | ) |
| Dr. David and Elisabeth Jackson | ) Hearing Date: May 4, 2010 |
|            Movants, | ) Objections Due By: April 25, 2010 |
| | ) |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| CO. | ) |
| | ) |
| AHMIT 2006-2 TRUST a Statutory Trust | ) |
| | ) |
| AMERICAN HOME MORTGAGE | ) |
| SECURITIES LLC | ) |
| | ) |
| MICHAEL STRAUSS | ) |
| | ) |
| WELLS FARGO BANK N.A. | ) |
| | ) |
| WILBUR ROSS | ) |
| WLR RECOVERY FUND IIII, L.P. | ) |
| AH MORTGAGE ACQUISTIONS | ) |
| AHMSI | ) |
| | ) |
| Defendants | |

## ADVERSARY PROCEEDING TO SUBORDINATE CLAIMS
## AND FOR DECLARATORY RELIEF

The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are:
American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment Corp.

## COMPLAINT

1. Movants, party in interest and claimant, Dr. David and Elisabeth Judith Jackson, pursuant to Federal Rule of Bankruptcy Procedure 7001, §105 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq. ( the "Bankruptcy Code") and 28 U.S.C. §§2201, file this Complaint for Declaratory Judgment and Equitable Subordination against the Debtor parties upon which Movant proof of Claim are held, Deutsche Bank ( "DBNTC"), Wells Fargo ( "WELLS"), WLR Recovery Fund III, L.P., AH MORTGAGE ACQUISTIONS ( "AHMSI"), AHMIT 2006-2 TRUST, American Home Mortgage Securities LLC (" SECURITIES LLC"), and Michael Strauss ("STRAUSS").

2. This adversary proceeding relates to the origination and servicing issues of Plaintiffs loan. Part of this action is embodied in the lawsuit pending in Federal Court in New York, NY, and proofs of claims filed in this Court. Part of this adversary concerns actions taken by bankruptcy participants during the bankruptcy in various roles as creditors, stockholders, secured lenders, Indenture Trustees, fiduciary committee members, and fiduciary Debtors in Possession.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157, 1334 and 2201, and 11 U.S.C. §105.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

5. This matter is a core proceeding pursuant to 28 U.S.C. §§157.

---

( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Investment"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc.( "AHM Servicing"), aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558); American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

## PARTIES

6.  Dr. David and Elisabeth Judith Jackson hereby assert that claims made by or on behalf of the above named Defendants, should be equitably subordinated to our claims No. #10714, #10715, #10716, #10717.

7.  Deutsche Bank National Trust Co. ( "DBNTC") is Trust Administrator and Indenture Trustee, and Wells Fargo ("WELLS") is Master Servicer and securities administrator, American Home Mortgage ("DEBTOR PARTIES") was originator, servicer, issuer, and securitizer, WLR RECOVERY FUND IIII, L.P., AND American Home Mortgage Servicing F/K/A AH Mortgage Acquisitions ("AHMSI"), is the current servicer for our loan trust AHMIT 2006-2 Trust ("AHMIT 2006-2") a separate legal entity and statutory trust, and Wilbur Ross is the debtor in possession ("DIP").  American Home Mortgage Securities LLC ( "SECURITIES LLC") and managing member Michael Strauss ("STRAUSS") is the pass through LLC used to transfer the loan from American Home debtor entity to AHMIT 2006- Michael Strauss is sole managing member of American Home Mortgage Securities LLC according to UCC filings in Maryland. UCC filings also show that SECURITIES LLC has claims against Debtor entities.

8.  Defendant WLR entered  into a Debtor in Possession Lending Agreement with AHM and its parent holding company and affiliates that was approved by this Court on September 4, 2007 ( Docket # 555).  Upon entering into this Agreement, Wilbur Ross steps into the shoes of a trustee and  is a fiduciary required to act for the benefit of all creditors.

9.  Wells Fargo was a substantial business partner of American Home as master servicer and securities administrator on a large number American Home and third party securitizations. Wells Fargo funded loans and purchased loans from American Home.

10. Wells Fargo is named as a Defendant as they are Master servicer on AHMIT 2006-2 Trust. In this role Wells Fargo must approve all loss mitigation.

11. AHMIT 2006-2 is a Defendant in this proceeding as this is the purported entity claiming ownership in this loan. Agents for this loan Trust, AHMSI, WELLS, DBNTC, SECURITIES LLC, STRAUSS, all committed misconduct during the bankruptcy, such as obfuscating the true owner of the notes, and improperly using insider positions to gain advantage.

**12. Movants respectfully represents to the Court as follows:**

On March 15. 2010, American Home filed Docket #8683, for settlement of claims with Deutsche Bank. DBNTC also filed claim #9950 ( the "AHMIT 2006-2 Transition Claim"), which asserted a claim related to the transition of servicing for the AHMIT 2006-2 transaction.

13. On March 16, 2010,  American Home filed Docket # 8756 for a settlement of claims with Wells Fargo.

14. On March 15, 2010, Docket # 8689,  American Home filed for a settlement of claims with American Home Mortgage Servicing FKA AH Mortgage Acquisitions, and DIP Wilbur Ross.

15. On September 12, 2008 Michael Strauss filed a proof of claim #10507.

## BACKGROUND

16.  On April 24, 2009 Dr. David and Elisabeth Jackson ("Movants"), party in interest herein, moved this Court for an order terminating or annulling the automatic stay (Docket #7319), imposed in this case by § 362(a) of Title 11, United States Code, to permit Movants to file a complaint against various Debtor entities.

17. On January 23, 2009 Dr. David and Elisabeth Judith Jackson filed a proof of claim #10713 and on May 22, 2009 #10714, #10715, #10716, #10717.

18. American Home has not objected to that claim or otherwise made any attempts to settle this matter despite repeated attempts in good faith that have been undertaken by us.

19. Since that time, Movants contend that American Home has made no affirmative efforts to settle the claim, or to move forward to object to the claim so that the Jackson's could have an evidentiary hearing to determine the fate of the claims. In fact, all attempts at good faith negotiations with American Home since this began have failed with no result. To attempt to unwind this loan we have spent:

Dave Aker - $14,360 – Legal Counsel in New York

William Jeffrey Barnes - $18,288 – Legal Counsel in Delaware & New York

Paula Rush - $4475 – Consultant Fees

Douglas Pettibone - $4000 – Legal Fees in New York

20. The originator of this mortgage loan/STRAUSS loan #0001215617 on property known as 12787 Lavender Keep Circle Fairfax VA., 22033 (Jackson property) was the Debtor/STRAUSS for the benefit and profit of all AHMIT 2006-2 TRUST parties, which include DBNTC, WELLS, SECURITIES LLC, AHMSI, DIP, and SECURITIES LLC.

21. DBNTC, WELLS, and SECURITIES LLC, are most certainly one of the entities that made margin calls for hundreds of millions of dollars or even billions, and cut off credit lines at the same time, sealing the fate of American Home to bankruptcy.

22. On top of those funds already extracted for the benefit of AHMIT 2006-2

TRUST parties, including SECURITIES LLC and STRAUSS may have also seized guarantee funds, swap payments, insurance proceeds and through the bankruptcy wants to recover more. Substantial breach and indemnification claims have been made against American Home by DBNTC and WELLS for the benefit of this TRUST and themselves as manager of the TRUST.

23.    DBNTC is an insider and  member of the unsecured creditors committee and if the plan goes effective, a member of the oversight committee.  DBNTC is the Trustee on AHMIT 2006-2. This creates a tremendous conflict of interest when it comes to settling a claim. The unsecured creditors committee which included DBNTC also joined in the Debtors objection to the Movant's  motions for relief from stay and for a proof of claim.

**24.**  WELLS was a significant financing partner and securitization partner of the Debtor.

**25.**  SECURITIES LLC is clearly an insider of the Debtor as it was created and managed by CEO Michael Strauss.

26. STRAUSS is clearly an insider as CEO of American Home.

**27.**  Wilbur Ross and his various entities, AH Mortgage Acquisitions, WLR Recovery Fund, and acting Debtor-in-Possession, is clearly an insider of the Debtor.

**28.  TRUST INFORMATION TAKEN OFF SEC FILINGS FOR AHMIT 2006-2**

**THE TRUST**
**American Home Mortgage Investment Trust 2006-2** (Subject) (**0001365771**)
IRS No.: | State of Incorp.: **DE** | Fiscal Year End: **1231**
Type: **FWP** | Act: **34** | File No.: **333-131636-01** | Film No.: **06935311**
SIC: **6189** Asset-Backed Securities
Commission File Number of issuing entity: **333-131636-01 American Home Mortgage
Investment Trust 2006-2** (Exact name of issuing entity as specified in its charter)

Business Address
520 BROADHOLLOW RD
MELVILLE NY 11747

Mailing Address
520 BROADHOLLOW
ROAD

6

| | |
|---|---|
| (516) 620-1072 | MELVILLE NY 11747 |
| Issuing Entity or Trust | American Home Mortgage Investment Trust 2006-2. |
| Title of Series | Mortgage-Backed Notes, Series 2006-2. |
| Cut-off Date | With respect to the mortgage loans <u>June 1, 2006</u> and the HELOCs, <u>June 20, 2006</u>. |
| Closing Date | On or about <u>June 30, 2006</u>. |
| Depositor | American Home Mortgage Securities LLC. |
| Sponsor | American Home Mortgage Acceptance, Inc., an affiliate of the depositor and the RMBS Servicer, and one or more special purpose entities established by American Home Mortgage Acceptance, Inc. or one of its subsidiaries. |
| RMBS Master Servicer | Wells Fargo Bank, N.A. |
| RMBS Servicer | American Home Mortgage Servicing, Inc. |
| Indenture Trustee | **Deutsche Bank Trust Company Americas.** |
| Securities Administrator | Wells Fargo Bank, N.A. |

This Note is one of a duly authorized issue of the Issuing Entity's Mortgage-Backed Notes, Series 2006-2 (the *"Notes"*), issued under an <u>Indenture</u> dated as of <u>June 30, 2006</u> (the *"Indenture"*), between the Issuing Entity, Deutsche Bank Trust Company Americas, as <u>indenture</u> trustee (the *"Indenture Trustee"*) Wells Fargo Bank, N.A., as securities administrator (the *"Securities Administrator"*)

29.    Movants originally tried to negotiate with American Home Servicing at

4600 Regent Boulevard, Suite 200 <u>Irving, TX 75063</u> BEFORE THE FINAL TRANSFER and

during the bankruptcy, and negotiations continued after the unit transferred to Wilbur Ross and

AH Mortgage Acquisition Co., Inc., an affiliate of WL Ross & Co. LLC ( Final Close

4/11/08)1166 Avenue of the Americas New York  New York 10036.

30.    American Home Servicing and FKA AH Mortgage Acquisition Co., Inc,

Has not acted in good faith, did not comply with disclosure requests or RESPA letter timely, and

7

Refuses to work out this loan even though MOVANT has proof it would be in the best interest

of the investors. The best interest test is the determining factor that a servicer must abide be in

determining to modify a loan.   In this case static pool data shows that investors receive only a

very low pass through rate, and AHMSI wants the Jackson's to pay a higher rate to compensate

for other borrowers who are not making payments at all.

31.  Another factor could be the CIFG insurance policy and attempts to collect rather than

engage in loan workouts.  In bad faith, the DIP, AHMSI, DBNTC, SEURITIES LLC, AHMIT

2006-2 Trust, and WELLS have refused to assist the Plaintiffs. These entities are acting

under contractual agreements as agents for certificate holders of  AHMIT 2006-2 TRUST.


32.  To be clear, Movants  assert that these parties should "FIX" the predatory loan they

should have never been sold in the first place and it is unjust for these parties to profit unjustly at

their expense.

33.  American Home Mortgage Servicing did not properly respond to Movant's

RESPA "qualified written requests" and request for disclosure required under TILA 1641 (f)(2),

sent on May 10, 2008 which demanded relief such as the rescission of the loan.

34.  This request was sent to:

**American Home Mortgage Compliance**
John Kalas Senior Vice President
Deputy General Counsel
538 Broadhollow Road
Melville NY 11747

**AH Mortgage Acquisition Co., Inc., an affiliate of**
**WL Ross & Co. LLC**
1166 Avenue of the Americas
New York  New York 10036

**American Home Mortgage Servicing**
ATTEN: David Friedman

4600 Regent Boulevard, Suite 200
Irving, TX 75063

35. American Home the Debtor, or FKA AH Mortgage Acquisitions, never responded to our RESPA letter informing us who was in fact the true holder or master servicer of our loan. So on or about March, 2008 we hired Paula Rush to find our note in an American Home Mortgage securitization.

36. Rush discovered that our loan was held in AHMIT 2006-2 and that Deutsche Bank was the Indenture Trustee. As such we believe that if our claim was litigated in this Court, and found to be valid, we could assert a claim for equitable subordination of the claims of Deutsche Bank.

## POWER OF THE COURT

37. The source of the court's power is section 105 of the Code, which states that bankruptcy judges have the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Code.

38. This Bankruptcy Court has broad power to subordinate claims based on "principles of equitable subordination." Such power naturally affords discretion to consider the substance of claims in order to implement the primary bankruptcy goal of achieving a fair distribution of the estate among all creditors.

39. The bankruptcy court is a court of "equity." As such this Court is empowered to grant a broad spectrum of relief in keeping with fundamental notions of fairness as opposed to principles of black-letter law.

40. This Court can exercise its discretion to produce fair and just results "to the end that

fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." One of the remedies available to a bankruptcy court in exercising this broad equitable mandate is "equitable subordination."

41.   It is expressly recognized in Bankruptcy Code section 510(c), which provides that the bankruptcy court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim.

42.   Under the *Mobile Steel* standard, a claim can be subordinated if the claimant engaged in some type of inequitable conduct that resulted in injury to creditors (or conferred an unfair advantage on the claimant) and if equitable subordination of the claim is consistent with the provisions of the Bankruptcy Code.

43.   The court should look to the origin and nature of the Movant's claim, the lawsuit pending in New York,  and decide whether equity requires that it be subordinated to claims of Defendants.

44.   This Court has the authority to determine the priority of Movant's claims to other insider claims. It would be unfair and unjust that parties who participated in financing illegal and predatory loan activities and then furthered those activities and harm during the bankruptcy should have claims settled in front of and in seniority to a claimant who they directly harmed.

45. *In re 9281 Shore Road Owners Corp*, 187 B.R. 837, 853 (Bankr. E.D.N.Y. 1995) ("The basis for these rules of equitable duty to sift the circumstances surrounding any claim to see that injustice or unfairness is not subordination is that the bankruptcy court has the equitable power and the done in administration of the bankrupt estate"); Walker v. Bryans (In re Walker), 224 B.R. 239, 242 (Bankr. M.D. Ga. 1998) ("For example, this Court might decide that the conduct of Defendant in the foreclosure warrants equitable subordination of Defendant's claim while, at

the same time, a state court might rule that foreclosure was proper and that no damages are warranted").

46. *In re CRD Sales and Leasing, Inc.*, supra, 231 B.R. at 218-20 ("Equitable subordination, for lack of a better term, is the proverbial 500-pound gorilla of this case – the doctrine is not bound by state law, and it can trump the state law foreclosure, even if that foreclosure is legally valid"; the court also noted that "[b]ecause the equitable subordination claim dominates this proceeding, we think that the entire matter is core under 28 U.S.C. §§ 157(B)(K) & (O). Accordingly, mandatory abstention does not apply").

### EQUITABLE SUBORDINATION

47. Section 510(c) of the Bankruptcy Code states that a bankruptcy court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim … or order that any lien securing such subordinated claim be transferred to the estate." In effect, Section 510(c) allows the otherwise applicable statutory bankruptcy priority scheme to be adjusted if a creditor has acted inequitably.

48. The principles of equitable subordination are not set out in the Code, and are defined by law. See, e.g., Pepper v. Litton, 308 U.S. 295, 305 (1939) (ruling that the bankruptcy court has exclusive jurisdiction over subordination, allowance, and disallowance of claims, and that the court may reject a claim in whole or in part according to the equities of each case); In re 80 Nassau Associates, 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994) (the court, citing In re Kansas City Journalism, 144 F.2d 791, 800 (8th Cir. 1944), stated that "[t]he power to subordinate a claim derives from the Bankruptcy Court's general equitable power to adjust equities among creditors in relation to the liquidation results"); In re Poughkeepsie Hotel Assoc. Joint Venture, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) ("The notion of equitable subordination, as embodied in § 510(c), is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting"); HBE Leasing Corp. v. Frank, 48 F.3d 623, 633 (2nd Cir. 1995) ("[e]quitable subordination is distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others").

### INSIDER – HEIGHTENED SCRUTINY STANDARD APPLIES

49. Defendants are all clearly insiders of the bankruptcy and were substantial business

11

partners of the various American Home debtor entities. In fact, Defendants supported the debtors

business of making predatory loans, by financing those activities with actual knowledge of the

business structure.

50. Wilbur Ross is clearly an insider of the bankruptcy and a fiduciary as Debtor in

possession. On May 23, 2008, the Purchaser filed a motion for allowance of an administrative

expense claim for alleged breaches of the APA (D.I. 4233) (as amended, the "AHMSI Motion").

In the AHMSI Motion, the Purchaser alleged that, during the period between the Initial Closing

and the Final Closing when the Sellers were operating the Servicing Business for the Purchaser's

risk and benefit, the Sellers used funds from accounts for the benefit of the Purchaser to remedy

shortfalls in unidentified investors' custodial accounts that had resulted from pre-Initial Closing

acts or omissions of the Sellers.


51. Plaintiff is troubled by the assertion that unidentified investors were the beneficiary of

amounts that AHMSI now makes claim for those missing funds. Shouldn't it be a requirement

that as Debtor in Possession, Wilbur Ross define where those funds went before making a claim

to retrieve them from the estate?


52. American Home Mortgage Securities LLC, sole manager was CEO

Michael Strauss, clearly an insider who has made a 1,000,000 contract termination claim.

STRAUSS is clearly an insider as CEO and acted in a manner which was inequitable

in that he ignored and refused to rescind Plaintiff's loan, did not communicate Plaintiff's offer of

settlement to TRIAD or issues asserted with the loan, and engaged in unfair conduct in

obfuscating the true holder of the note. The Court should consider the allegations contained in

the SEC lawsuit even though the matter was settled without admitting liability which would have

canceled the STRAUSS claim. STRAUSS paid a 2.25 million dollar fine to the SEC to settle the

complaint against him, *SEC v. Strauss et al.*, filed April 2009.  STRAUSS is barred from serving

as an officer or director of a public company for five years. The conduct complained of does

involve hiding known insolvency issues, fraud and misrepresentations of loan quality,

accounting fraud and also false and misleading disclosures and overall company viability. In it

the SEC alleged that defendants engaged in accounting fraud and also made false and misleading

disclosures to conceal from investors the company's worsening financial condition in early 2007

as the subprime crisis emerged.

LR-21014  Apr. 28, 2009  Michael Strauss, Stephen Hozie and Robert Bernstein
                          Other Release No.: AAER-2967
                          **See also:** SEC Complaint


*Securities and Exchange Commission v. Michael Strauss, Stephen Hozie and Robert*
*Bernstein*, Civil Action No. 09-CV-4150 (RB) (S.D.N.Y. April 28, 2009)

On April 28, 2009, the Securities and Exchange Commission filed a civil action in the United
States District Court for the Southern District of New York against former senior officers at
American Home Mortgage Investment Corp., Michael Strauss, Stephen Hozie and Robert
Bernstein. The Commission alleges that Strauss and Hozie engaged in accounting fraud and
made false and misleading disclosures that were designed to conceal from investors that
American Home Mortgage's financial condition and prospects had significantly worsened in the
first four months of 2007.

The complaint alleges that Strauss and Hozie fraudulently understated American Home
Mortgage's first quarter 2007 loan loss reserves by tens of millions of dollars, converting the
company's loss into a fictional profit. In fact, as Strauss and Hozie knew, the company's own
analysis showed that American Home Mortgage needed significant additional reserves. The
analysis also showed that the company's losses on its delinquent second liens were mounting
quickly and that American Home Mortgage would lose at least 72% of the value of these loans
after the properties went through foreclosure. Strauss and Hozie knowingly failed to reserve
adequately for the expected losses caused by these delinquent loans.

According to the SEC's complaint, Strauss and Hozie made misleading disclosures concerning,
among other things, **the riskiness of the mortgages** the company originated and held and the
company's liquidity. Strauss and Hozie also failed to disclose the fact that, during the month of
**April 2007, American Home Mortgage was forced to sell the majority of its multi-billion**
**dollar mortgage-backed securities portfolio** to meet pressing liquidity demands. The

complaint further alleges that Strauss, Hozie and Bernstein misled American Home Mortgage's auditor about the adequacy of the reserves.

 The Commission's complaint seeks permanent injunctions against future violations, disgorgement of ill-gotten gains plus prejudgment interest and the imposition of civil penalties. The complaint also seeks officer and director bars against Strauss and Hozie.

Strauss has agreed to settle the SEC's charges without admitting or denying the allegations. He will be permanently enjoined from violating the antifraud, reporting, record-keeping, and internal controls provisions of the federal securities laws and will pay approximately $2.2 million in disgorgement and prejudgment interest and a $250,000 penalty. Strauss will also be barred from serving as an officer or director of a public company for five years.

53. The threshold inquiry in determining whether to equitably subordinate is always whether "inequitable conduct" exists. Fraud, illegality, breach of fiduciary duty or the claimant's use of a debtor as a mere instrumentality or alter ego generally constitute inequitable conduct. *[3]* In addition, "undercapitalization"—in the context where an insider loan is made to a company with insufficient capital to sustain operations—may indicate, but does not by itself constitute, inequitable conduct. *[4]* Inequitable conduct is most often found—and the remedy of equitable subordination most often applied—in connection with the acts of an insider.

54. In general, the equitable subordination doctrine is limited to reordering priorities, and does not permit total disallowance of a claim. However, if the conduct of the creditor is so egregious that it affects the validity of the claim under applicable principles of law, the debtor can ask the court to disallow it in full as part of the claims avoidance process. See In re Mobile Steel Co., supra, 563 F. 2d at 699 n. 10.

## ACTUAL CONTROVERSY

55. The Federal Declaratory Judgment Act, 28 U.S.C. §2201, empowers the Court to declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction.

56. Based on the facts stated above, an actual controversy exists between the parties.

57. By virtue of the foregoing and pursuant to 28 U.S.C. §2201, the Movant is entitled to

a judgment declaring the rights and legal relationships of the parties generally and, specifically,

that- at the time of bankruptcy American Home claimed to be the Owner of the Note and

therefore the Defendants must prove up ownership of the Note or disgorge their interests to this

bankruptcy estate; and by their actions complained of herein must subordinate all claims on this

estate to Movant.

58. Movant requests that this Court supersede any rights that Defendants claim to have in

this loan pursuant to principles of silence estoppels.

## COUNT 1
### (Declaratory Judgment)

59. Plaintiff incorporates by reference each and every allegation contained in Paragraphs
1 through 58 inclusive, as if fully set forth herein.

60. It would be unfair and inequitable for any party who used this bankruptcy to protect

themselves from liabilities or assisted other in protecting themselves from liabilities, to retain the

fruits of the fraud.

61. Plaintiff requests a declaratory judgment that these Defendants and all of them, claims

are subordinated to Plaintiff's claims due to inequitable conduct and unfair advantage acting as

insiders of this bankruptcy.

62. Plaintiff requests a declaratory judgment that these Defendants produce a note with all

chain of assignments to put to rest all uncertainties of ownership of the note.

63. Plaintiff requests a declaratory judgment that these Defendants disclose all margin calls

15

paid on this trust in the ninety days leading up to the bankruptcy.

64. Plaintiff requests declaratory relief that these Defendants disclose all insurance recoveries paid in relation to Plaintiff's loan.

65. Plaintiff continues to be injured by these parties wrongful actions.

### COUNT 2
### (Unjust Enrichment)

66. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 65 inclusive, as if fully set forth herein.

67. It would be unjust and unfair for the Defendants who may have already reaped substantial monetary recoveries on this loan to seek additional and possibly duplicative recoveries at the Plaintiff's expense.

68. Plaintiff requests that these Defendants disgorge any funds received for this loan from insurances, margin calls, or other benefits.

69. On Docket #4104 filed on May 20, 2008, American Home describes the margin calls and that these margin calls sent it into bankruptcy. American Home does not make it clear which parties exercised remedies against the Debtor, however it is clear from the Deutsche Bank and Wells Fargo made substantial claims, on behalf of AHMIT 2006-2 and other trusts.
Paragraph 9. "In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders- the financial institutions that provide short term credit facilities needed to originate and purchase loans-began to exercise

remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and

threatening AHM's continued viability."

Paragraph 11. " The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business."

70. Plaintiff requests that these Defendants disgorge and subordinate all claims made against

this loan trust or this loan, including indemnification claims to Plaintiff's claims.

71. Plaintiff continues to be injured by these parties wrongful actions.

## COUNT 3
### (Administrative Priority Claim)

72. Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1

through 70 inclusive, as if fully set forth herein.

73. Plaintiff asserts that her proofs of claim should be elevated to priority status as

substantial misconduct and intentional interference and advantage did occur while using the

bankruptcy court for cover.

74. These actions took place pre petition in originating a predatory and fraud laden pay

option arm loan and post petition aiding and abetting the fraud refusing to address Plaintiff's

issues with this loan. The only goal of all Defendants is to convert our property to collect on

insurances.

75. These action took place under Wilbur Ross, WLR Recovery Fund, and his new servicing

platform " AHMSI." These parties took these actions while a fiduciary as Debtor in

Possession.

76. These actions were taken by all Defendants acting in concert.

## CONCLUSION

77.    Movants have exhausted every other avenue for resolution and:


## MOVANT MEETS THE  THREE-PART TEST REQUIRED FOR SUBORDINATION

Equitable subordination is a doctrine unique to bankruptcy law. The Bankruptcy Code
expressly recognizes the right to equitably subordinate certain claims. A majority of courts
interpreting the subordination provision of the Bankruptcy Code adopt a three-part test:

(1) the claimant has engaged in inequitable conduct;

(2) the misconduct results in injury to competing claimants; and

(3) the subordination is not inconsistent with bankruptcy law.

The determination to equitably subordinate is also guided by the following factors:

(i)    the inequitable conduct justifying the subordination of a claim need not be related to
the acquisition or assertion of such claim;

(ii)    a claim should be subordinated only to the extent necessary to offset the harm which
the debtor and its creditors suffered on account of the inequitable conduct and

(iii)    insider transactions should be subjected to heightened scrutiny.

78.  Plaintiffs have a direct Section 510(c) claim against Defendants, as insiders Defendants
acted inequitably toward Plaintiff and caused the particularized harm to us. As such we are
able to seek equitable subordination of Defendant's claims.

79.  Defendants' engaged in inequitable conduct and the misconduct has resulted in a
substantial injury to Plaintiffs and also conferred an unfair advantage. In this case Defendants
and Plaintiffs had unique dealings solely between us, and a direct Section 510(c) claim may be
brought.

80.  Once you are saddled with a pay option arm loan with a substantial prepayment penalty
there is no escape other than foreclosure or paying exorbitant interest rates that were not

18

presented in the first instance. Many cases have found that fraud in the origination is evident in these pay option arm loans, as brokers were incentivized to push these loans on unsuspecting borrowers who had no prior experience with such exotic loans.

81. American Home has ignored our claim, and as this bankruptcy has not made any Progress toward a plan becoming effective, the risk is real that American Home will become insolvent and no recovery will be distributed to unsecured creditors. It is unfair and unjust for American Home to settle with parties who may have played a substantial role in the loan violations we assert, as they were in conspiracy with American Home funding and purchasing the notes.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that this Court grant the relief requested herein against the Defendants.

A. Declare that these Defendants produce a note with all chain of assignments to put to rest all uncertainties of ownership of the note;

B. Declare these Defendants disclose all margin calls paid on this trust in the ninety days leading up to the bankruptcy;

C. Declare that these Defendants disclose all insurance recoveries paid in relation to Plaintiff's loan;

D. Declare that Defendants produce all communications between them relating to the Plaintiffs loan;

E. Declare that Defendant Deutsche Bank state under oath that it recused itself from all issues that the unsecured creditors committee considered concerning loans which it had a

direct financial interest in or interest in the nature of a supervisory role on behalf of others in;

F. Declare that Plaintiff's claims are administrative priority due to substantial misconduct during the bankruptcy;

G. Declare that these Defendants and all of them, claims are subordinated to Plaintiff's claims due to inequitable conduct and unfair advantage acting as insiders of this bankruptcy.

H. Wherefore Plaintiff demands judgment in the amount of $700,000 as an administrative priority claim, and declares that this sum is priority over of all Defendants claims.

RESPECTFULLY SUBMITTED,


_E. Judith Jackson_     Date: _4/13/10_
Elisabeth/Judith Jackson

Dr. David and Elisabeth Judith Jackson
12787 Lavender Keep Circle Fairfax VA 22033
703-378-6750
EJJsInSIGHTs@aol.com