## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE 2010 APR 13 PM 4:05

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| HOLDINGS, INC., a Delaware corporation, | ) | Case No. 07-11047 (CSS) |
| et. al., | ) | Jointly Administered |
| | ) | |
| Debtors, | ) | |
| | ) | |
| Paula Rush | ) | **Hearing Date: May 4, 2010** |
| Movant, | ) | |
| | ) | **Objections due by: April 25, 2010** |
| | ) | |
| DEUTSCHE BANK NATIONAL | ) | |
| TRUST CO. | ) | |
| | ) | |
| GOLDMAN SACHS | ) | |
| | ) | |
| GSR 2006-OA1 TRUST | ) | |
| | ) | |
| WELLS FARGO | )' | |
| | )' | |
| WLR RECOVERY FUND IIII, L.P. | )' | |
| | )' | |
| MICHAEL STRAUSS | ) | |
| Defendants | | |

## ADVERSARY PROCEEDING FOR EQUITABLE SUBORDINATION OF DEFENDANTS CLAIMS AND COMPLAINT FOR DECLARATORY JUDGEMENT AND OTHER RELIEF

The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number are: American Home Mortgage Holdings, Inc.("AHM Holdings") (6303); American Home Mortgage Investment Corp.

1

1.    Movant, Paula Rush, party in interest and claimant, pursuant to Federal Rule of

Bankruptcy Procedure 7001, §105 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq.

( the "Bankruptcy Code") and 28 U.S.C.  §2201, file this Complaint for Declaratory Judgment

against the Debtor, American Home ("AHM"), Deutsche Bank National Trust Co. ( "DBNTC"),

Wells Fargo ( "W.F"), Goldman Sachs( "G.S."), GSR 2006-OA1 ( "GSR"),  and WLR Recovery

Fund III, L.P. ("WLR") , and Michael Strauss ("STRAUSS").

2.    Movant requests that these Defendants claims are subordinated to Movants' claims

Filed on January 11, 2009,  related to litigation pending and recorded on Schedule #751121380,

which was later supplemented and amended by #10687, #10688, #10689.

3.    American Home has not objected to that claim or otherwise made any

attempts to settle this matter and continues to expend resources to fight the litigation.

American Home litigation schedule, Claim No. 8743 – 751121380 RUSH WMN -07-CV-854.

· 4.    On March 15, 2010, Docket No. 8683,  American Home,  debtors and debtors in

possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), filed motions

seeking orders  pursuant to Rule 9010(a) of the Federal Rules of Bankruptcy Procedure

( "Bankruptcy Rules") approving a stipulation and settlement by and among the Debtors and

Deutsche Bank National Trust Co., in the vague term of various capacities and on  April 8, 2010,

Docket No. 8756,  and Debtor's filed a Motion seeking a settlement under Rule 9019(a) with

---

( "AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM
Investment"), a Maryland corporation (1979);  American Home Mortgage Servicing, Inc.( "AHM Servicing"),
aMaryland corporation(7257); American Home Mortgage Corp. ("AHM Corp"), a New York corporation (1558);
American Home Mortgage Ventures LLC ( "AHM Ventures"), a Delaware limited liability company (1407);
Homegate Settlement Services, Inc. ( "Homegate"), a New York corporation (7491); and Great Oak Abstract Corp.
( "Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road,
Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving,
Texas 75063.

Wells Fargo Bank, N.A., and on March 16, 2010, Docket No. 8689, AHM filed a Motion seeking a settlement under Rule 9019(a) with American Home Mortgage Servicing, Inc. (FKA AH Mortgage Acquisition Co. Inc.) Collectively the "Defendants."

5.   Of note, on each petition the Debtors assert that they desire to avoid the cost of litigation regarding these claims, and the Debtors would like to compromise in light of the costs, uncertainties and risks associated with litigation; however when it comes to Movants litigation and claims Case No. WMN -07-CV-854, American Home shows no desire to avoid litigation, or to settle any claims, even though several causes of action have been upheld including, fraud, unjust enrichment, Maryland Consumer Protection Act, three Truth in Lending Act claims, and two RESPA claims. I have overwhelming evidence to support my claims but it appears a different standard applies to borrower claims.

## JURISDICTION

6.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157, 1334 and 2201, and 11 U.S.C. §105.

7.   Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409.

8.   This matter is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (K) and (O).

## PARTIES

9.   Plaintiff is a creditor and party in interest, with proof of claims filed against various Debtor entities and a lawsuit pending in Federal Court in Greenbelt Maryland.

10.   Defendant Deutsche Bank is a creditor in this Case, and Indenture Trustee for the loan transaction at issue which is the basis of Movant's claim, and was a major prepetition warehouse lender. Deutsche Bank is Indenture Trustee On loan trust GSR 2006-OA1, and

3

purported owner of Movant's mortgage note. Deutsche Bank is also an insider in the bankruptcy as a member of the unsecured creditor's committee member. Deutsche Bank was a substantial pre bankruptcy warehouse lender and securitization partner.

11.    Deutsche Bank is named as a defendant in this proceeding due to misconduct during the bankruptcy, such as obfuscating the true owner of the note from Movant, improperly using its position on the unsecured creditors committee, and initiating foreclosure actions in the name of American Home debtor entities after testimony in this Court stated the debtor did not own the loan. Deutsche Bank may have also been involved in potential acceptance and/or conversion of bankruptcy estate property in relation to Movant's loan. Although Movant repeatedly requested the true owner of the note in this Court, in a direct RESPA letter to American Home Mortgage servicing and directly to Deutsche Bank, at no time did any of these parties reply.

12.    Defendant WLR entered into a Debtor in Possession Lending Agreement with AHM and its parent holding company and affiliates that was approved by this Court on September 4, 2007 ( Docket # 555). Upon entering into this Agreement, Wilbur Ross steps into the shoes of a trustee and is a fiduciary required to act for the benefit of all creditors.

13.    WLR is a named Defendant due to the cooperation and participation in obfuscating the true owner of the note from Movant, and initiating foreclosure actions in the name of American Home debtor entities after testimony in this Court stated the debtor did not own the loan. Although Movant repeatedly requested the true owner of the note in this Court, and in a direct RESPA letter to American Home Mortgage Servicing FKA AHMSI, at no time did the new servicing unit reply.

14.    Wells Fargo was a substantial business partner of American Home as master

4

servicer and securities administrator on a large number American Home and third party securitizations. Wells Fargo funded loans and purchased loans from American Home.

15. Wells Fargo is named as a Defendant as they are Master servicer on GSR 2006-OA1 Trust. In this role Wells Fargo must approve all loss mitigation, foreclosure actions, and received regular monthly reports to forward onto investors through its www.Ctslink.com website. Wells Fargo would have also been the party that attempted to collect on mortgage insurance on a policy with TRIAD. TRIAD stated they had no idea of my issues with the loan, or offers made to resolve it early on. Although Movant repeatedly requested the true owner of the note in this Court, in RESPA letter to American Home Mortgage servicing and directly to Wells Fargo, at no time did any of these parties reply. A direct letter was also sent to Franklin Top of Chapman Cutler, counsel hired to monitor the American Home Mortgage bankruptcy.

16. Goldman Sachs and loan trust GSR 2006-OA1 is named Defendant in this proceeding as this is the purported entity claiming ownership in this loan. Agents for this loan Trust, WLR Recovery Fund III, Deutsche Bank, American Home Mortgage Servicing FKA AHMSI, and Goldman Sachs, all committed misconduct during the bankruptcy, such as obfuscating the true owner of the note from Movant, improperly using its position on the unsecured creditors committee, and initiating foreclosure actions in the name of American Home debtor entities after testimony in this Court stated the debtor did not own the loan.

17. Michael Strauss filed a contract termination claim #10507 for 1 million dollars on September 12, 2008. Strauss paid a 2.25 million dollar fine to the SEC to settle charges against him and was sanctioned. As CEO Strauss pushed the highly predatory Pay Option Arm loans, and amassed a huge leveraged portfolio of those loans. In fact, this loan was more than 75% of

the Debtors total origination volume. If not for Strauss insistence on pushing these loans, and Strauss design of disclosures, and sales incentives, Plaintiff would not be saddled with this loan.

## COMPLAINT

18.    Plaintiff, Paula Rush, hereby brings this action against Defendants DEUTSCHE BANK NATIONAL TRUST CO., GOLDMAN SACHS, GSR 2006-OA1 TRUST, WELLS FARGO and WLR RECOVERY FUND IIII, L.P., and MICHAEL STRAUSS and in support of this action Plaintiff avers as follows:

19.    This Claim arises from the origination of this loan and subsequent servicing of Movants loan. This adversary proceeding and request for equitable subordination relates to the Conduct of Defendants during the bankruptcy proceedings. Part of this action is embodied in the lawsuit pending in Federal Court in Greenbelt Maryland, and proofs of claims filed in this Court. Part of this adversary concerns actions taken by bankruptcy participants during the bankruptcy in various roles as creditors, stockholders, secured lenders, Indenture Trustees, fiduciary committee members, and fiduciary Debtors in Possession.

20.    Movant has been in a game of chase the proper party since January of 2007. In Docket No. 5356, filed on August 12, 2008, Deutsche Bank National Trust company responds to Debtors Objection to Claims Nos. 9183, 9184,9185, 9187, 9188, and 9189. The attachments #1, #2, #3 are Exception reports that these claims are based on. In those exception reports it is revealed that among other document discrepancies, in GSR 2006-OA1 trust over 6,000 MERS assignment are missing. As a clarification, only 12% of the loan in this trust were originated by American Home, so it is unclear what percentage of claim Deutsche Bank is claiming pursuant to this trust. That aside, the loan trust only held 7,000 at inception, and here

Deutsche openly admits it does not have proper assignments on the majority of them. So it is as clear as mud who owns Movants loan or who can prove they own Movant's loan.

## CONFLICTING OWNERSHIP

21. STRAUSS engaged in obfuscating the true owner of the note throughout the time that his company serviced this loan.

22. MERS –States American Home Corp registered the loan.

23. TAX PAYEE ON STATEMENT – States American Home Owns Note

24. TRUST ATTESTATIONS – ASSIGNED TO GSR 2006-OA1

25. DETUSCHE BANK EXCEPTION REPORT – MERS MISSING ASSIGNMENTS 6,000 loans.

26. MOVANTS BANKRUPTCY - MERS AS NOMINEE FOR AMERICAN HOME MORTGAGE  CORPORATION.

27. TESTIMONY OF DICKMAN ON 10/31/07 – SOLD TO THIRD PARTY PRE PETITON

28. FORECLOSURE COHN GOLDBERG DEUTSCHE – AMERICAN HOME HOLDER OF NOTE

29. FORECLOSURE BIERMAN GEESING AND WARD-AMERICAN HOME HOLDER OF THE NOTE

30. 2nd FORECLOSURE BIERMAN GEESING AND WARD – DEUTSCHE BANK as TRUSTEE FOR CERTIFICATE HOLDER OF GSR 2006-OA1.

31. This would be the perfect time for someone to produce the note, with all proper assignments to match this crazy chain of ownership and put the issue to reset once and for all.

Movant asserts that they can't do this, as it will prove that substantial misconduct did take place and fraud pleading were filed with various Courts.

32.    Movant requested this information in a RESPA letter, in this Court, and in certified letters. Movant has found the SEC filing which lists this loan as pledged to GSR 2006-OA1 yet not one party has ever admitted or denied, or produced any assignment of interest.

33.    Insiders, DBNTC, Goldman Sachs, and Debtor in Possession, Wilbur Ross have all conspired to foreclose on the Movant's property using the name of the Debtor American Home Mortgage Corporation and American Home Mortgage Servicing Inc., while at the same time putting a witness on the stand October 31, 2007, stating that the Debtor had sold the loan pre petition to an undisclosed third party.

34.    In Movant's Federal lawsuit, WMN 07-854 on April 7, 2010, Movant was again denied adding new party defendants on the grounds that Movant is not clear as to who actually owns the note. This is not clear, as these parties have filed conflicting court documents, and have given conflicting testimony. This obfuscation of the true owner of the note, has successfully derailed a proper remedy of rescission asserted due to a statute of limitation problem for bringing that action. So Deutsche Bank and Goldman Sachs have successfully used American Home Mortgage debtor entities, and bankruptcy to hide and protect themselves from Plaintiff.

35.    Both Goldman Sachs and Deutsche Bank are insiders (*e.g.*, corporate fiduciaries) of this bankruptcy estate. Goldman Sachs was the next largest shareholder second only to Michael Strauss, and held voting securities. Deutsche Bank was a major warehouse lender, and securitization partner managing and controlling direct held American Home mortgage loan trust, and third party securitizations. Deutsche Bank has been a member of the unsecured creditors committee since the inception of that committee and to the present.

8

36.    Deutsche Bank's actions  transgress mere self-enrichment and confer an unfair advantage upon the Movant therefore Movant should be allowed the remedy of equitable subordination pursuant to Section 510(c) of the Bankruptcy Code.

37.    Movant spent months cross referencing servicing records with bank account records, searching SEC filings, and doing intensive research to even obtain the purported pledgee securitized trusts.

## POWER OF THE COURT

38.    The source of the court's power is section 105 of the Code, which states that bankruptcy judges have the authority to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Code.

39.    This Bankruptcy Court has broad power to subordinate claims based on "principles of equitable subordination." Such power naturally affords discretion to consider the substance of claims in order to implement the primary bankruptcy goal of achieving a fair distribution of the estate among all creditors.

40.    The bankruptcy court is a court of "equity." As such this Court is empowered to grant a broad spectrum of relief in keeping with fundamental notions of fairness as opposed to principles of black-letter law.

41.    This Court can exercise its discretion to produce fair and just results "to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." One of the remedies available to a bankruptcy court in exercising this broad equitable mandate is "equitable subordination."

42.    It is expressly recognized in Bankruptcy Code section 510(c), which provides that

9

the bankruptcy court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim.

43.    Under the *Mobile Steel* standard, a claim can be subordinated if the claimant engaged in some type of inequitable conduct that resulted in injury to creditors (or conferred an unfair advantage on the claimant) and if equitable subordination of the claim is consistent with the provisions of the Bankruptcy Code.

44.    The court should look to the origin and nature of the Movant's claim and decide whether equity requires that it be subordinated to claims of Deutsche Bank, and Deutsche Bank as agent for Goldman Sachs, and Goldman Sachs Trust GSR 2006-OA1.

45.    This Court has the authority to determine the priority of Movant's claims to other insider claims. It would be unfair and unjust that parties who participated in financing illegal and predatory loan activities and then furthered those activities and harm during the bankruptcy should have claims settled in front of and in seniority to a claimant who they directly harmed.

46.    *In re 9281 Shore Road Owners Corp*, 187 B.R. 837, 853 (Bankr. E.D.N.Y. 1995) ("The basis for these rules of equitable duty to sift the circumstances surrounding any claim to see that injustice or unfairness is not subordination is that the bankruptcy court has the equitable power and the done in administration of the bankrupt estate"); Walker v. Bryans (In re Walker), 224 B.R. 239, 242 (Bankr. M.D. Ga. 1998) ("For example, this Court might decide that the conduct of Defendant in the foreclosure warrants equitable subordination of Defendant's claim while, at the same time, a state court might rule that foreclosure was proper and that no damages are warranted").

47.    *In re CRD Sales and Leasing, Inc.*, supra, 231 B.R. at 218-20 ("Equitable

10

subordination, for lack of a better term, is the proverbial 500-pound gorilla of this case – the doctrine is not bound by state law, and it can trump the state law foreclosure, even if that foreclosure is legally valid"; the court also noted that "[b]ecause the equitable subordination claim dominates this proceeding, we think that the entire matter is core under 28 U.S.C. §§ 157(B)(K) & (O). Accordingly, mandatory abstention does not apply").

## MOVANT MEETS THE  THREE-PART TEST REQUIRED FOR SUBORDINATION

48.    Equitable subordination is a doctrine unique to bankruptcy law. The Bankruptcy Code expressly recognizes the right to equitably subordinate certain claims. A majority of courts interpreting the subordination provision of the Bankruptcy Code adopt a three-part test:

(1) the claimant has engaged in inequitable conduct;

(2) the misconduct results in injury to competing claimants; and

(3) the subordination is not inconsistent with bankruptcy law.

The determination to equitably subordinate is also guided by the following factors:

(i)     the inequitable conduct justifying the subordination of a claim need not be related to the acquisition or assertion of such claim;

(ii)     a claim should be subordinated only to the extent necessary to offset the harm which the debtor and its creditors suffered on account of the inequitable conduct and

(iii)     insider transactions should be subjected to heightened scrutiny.

49.    Movant has a direct Section 510(c) claim, as insiders DBNTC, GOLDMAN SACHS, GSR 2006-OA1 TRUST, WELLS FARGO and WLR RECOVERY FUND IIII, L.P, acted inequitably toward Movant and caused the particularized harm to that other creditor. The other creditor may then be able to seek equitable subordination of the first creditor's claim.

50.   DBNTC, GOLDMAN SACHS, GSR 2006-OA1 TRUST, WELLS FARGO and

11

WLR RECOVERY FUND IIII, L.P., and STRAUSS have engaged in inequitable conduct and the misconduct has resulted in a substantial injury to Movant and also conferred an unfair advantage on Movant. In this case these creditors and Movant, have had unique dealings solely between us, and a direct Section 510(c) claim may be brought.

**During the American Home bankruptcy:**

(a) (" DBNTC"), sitting on the unsecured creditors committee, Goldman Sachs and STRAUSS still managing the Debtor, and DIP ROSS, assisted in blocking Movant from discovering who was holding her note.

(b) DBNTC., GOLDMAN SACHS, GSR 2006-OA1 TRUST, WELLS FARGO and WLR RECOVERY FUND IIII, L.P did not respond to a direct RESPA letter and phone inquiries regarding true owner of the note.

(C) DBNTC, GOLDMAN SACHS, GSR 2006-OA1 TRUST, WELLS FARGO and WLR RECOVERY FUND IIII, L.P., and FKA AHMSI, and STRAUSS filed petitions in Harford County State Court foreclosure action Case No. 12CO6003300 stating that American Home Mortgage Servicing was the holder of the note and again in foreclosure action 12CO9003948.

(d) DBNTC, GOLDMAN SACHS, GSR 2006-OA1 TRUST, and WELLS FARGO BANK would have been provide with reports from WLR RECOVERY FUND IIII, L.P., and FKA AHMSI, specific to delinquent loans such as Movant's loan.

(e) DBNTC was aware of Movants issues as a member of the unsecured creditors committee.

(f) WLR RECOVERY FUND IIII, L.P., and FKA AHMSI were aware of Movants issues as Debtor in Possession and servicer of the loan and attempts at foreclosure.

(g) WELLS FARGO as Master Servicer and Securities Administrator were aware of the issues with Movant's loan and attempts at foreclosure.

12

(h) Clearly WELLS FARGO AND DEUTSCHE BANK were aware of Movants claims when they asked for indemnification from litigation on Docket # 5275 filed by DBNTC, and Docket # 5206, f iled by WELLS FARGO. Both filed in unison a motion with substantially the same paragraph content.

**Prior to the American Home bankruptcy:**

(i) DBNTC., GOLDMAN SACHS, and  WELLS FARGO provided the Debtors with warehouse financing to originate this highly predatory and illegally presented loan.

(j)  DBNTC is familiar with these types of predatory  loans as it originated them through a subsidiary known as MortgageIt.  DBNTC also managed a large number of securitized trust containing this type of loan.

(k) GOLDMAN SACHS is familiar with these types of loans as it originated many trusts with this type of loan purchased from various originators.

(l)  WELLS FARGO is familiar with these types of loans as it originated many trusts with this type of loan purchased from various originators. WELLS FARGO also managed a large number of securitized trusts containing this type of loan.

(m) DBNTC, GOLDMAN SACHS, GSR 2006-OA1 TRUST,  WELLS FARGO, AHM, and STRAUSS , ignored Plaintiffs RESPA rescission letter sent to American Home Mortgage Servicing on April 1, 2007.

(n) DBNTC, GOLDMAN SACHS, GSR 2006-OA1 TRUST, STRAUSS and WELLS FARGO  allowed American Home Mortgage Servicing to file a petition into Movants' bankruptcy Case No. 07-10250, stating MERS was nominee for American Home Mortgage Corporation.

## EQUITABLE SUBORDINATION

51.   Section 510(c) of the Bankruptcy Code states that a bankruptcy court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim … or order that any lien securing such subordinated claim be transferred to the estate." In effect, Section 510(c) allows the otherwise applicable statutory bankruptcy priority scheme to be adjusted if a creditor has acted inequitably.

52.   The principles of equitable subordination are not set out in the Code, and are defined by law. See, e.g., Pepper v. Litton, 308 U.S. 295, 305 (1939) (ruling that the bankruptcy court has exclusive jurisdiction over subordination, allowance, and disallowance of claims, and that the court may reject a claim in whole or in part according to the equities of each case); In re 80 Nassau Associates, 169 B.R. 832, 837 (Bankr. S.D.N.Y. 1994) (the court, citing In re Kansas City Journalism, 144 F.2d 791, 800 (8th Cir. 1944), stated that "[t]he power to subordinate a claim derives from the Bankruptcy Court's general equitable power to adjust equities among creditors in relation to the liquidation results"); In re Poughkeepsie Hotel Assoc. Joint Venture, 132 B.R. 287, 292 (Bankr. S.D.N.Y. 1991) ("The notion of equitable subordination, as embodied in § 510(c), is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting"); HBE Leasing Corp. v. Frank, 48 F.3d 623, 633 (2nd Cir. 1995) ("[e]quitable subordination is distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others").

## DEFENDANTS ARE INSIDERS – HEIGHTENED SCRUTINY STANDARD APPLIES

53.   DBNTC, GOLDMAN SACHS, WELLS FARGO and WLR RECOVERY FUND III, L.P., FKA AHMSI, and STRAUSS  are  clearly insiders of the bankruptcy and were substantial business partners of the American Home Mortgage debtor entities.

54.   It is clear that if Movant hadn't figured out who "claims" to own her loan on her

own, this motion would not even be possible. This bankruptcy has been used by these parties to hide their relationship with this loan, and they used their positions as insiders to accomplish this. Despite Movants repeated efforts in this venue, at no time did anyone inform Movant of who owned the note, or make any effort to settle my claims or litigation. It wasn't until 2009 that Deutsche Bank finally filed anything with their name or the trust name on it.

55.    No amount of maneuvering can obscure the true nature of these actions. Subordination is even more compelling considering the parties are all considered insiders in this case, and all the parties were notified numerous times of the issues which Movant had in connection to her loan.

56.    The litigation was filed  pre petition, and during the bankruptcy these parties engaged in inequitable conduct to further their interests and  harm Movant's chance at recovery not only against American Home but against them as well.

57.    DBNTC, GOLDMAN SACHS,  and WELLS FARGO  supported the debtors business of making predatory loans, by financing those activities and managing those assets after origination with actual knowledge of the business structure.  In those capacities each had significant roles in accepting or rejecting loans, and in determining loss mitigation, or foreclosure actions.

58.    Wilbur Ross and his entities are clearly an insider of the bankruptcy and a fiduciary as Debtor in Possession and stepped into the proverbial shoes of the Debtor in servicing loans beginning in November of 2007.

59.    On May 23, 2008, the Purchaser filed a motion for allowance of an administrative expense claim for alleged breaches of the APA (D.I. 4233) (as amended, the "AHMSI Motion"). In the AHMSI Motion, the Purchaser alleged that, during the period between

the Initial Closing and the Final Closing when the Sellers were operating the Servicing Business for the Purchaser's risk and benefit, the Sellers used funds from accounts for the benefit of the Purchaser to remedy shortfalls in unidentified investors' custodial accounts that had resulted from pre-Initial Closing acts or omissions of the Sellers.

60.   Plaintiff is troubled by the assertion that unidentified investors were the beneficiary of amounts that were misappropriated that this Debtor in Possession  now makes claim for those missing funds.  Not only does the Debtor in Possession not seek to identify where the funds went, but also seeks a complete and total release of liability for all parties including Employees and executive of American Home.

61.   Goldman Sachs was the next largest shareholder, second only to CEO Michael Strauss, and held voting securities, clearly an insider. During this bankruptcy all executives were terminated including Michael Strauss and logic tells us that the board members took over making decisions during the bankruptcy. That board included Goldman Sachs.

62.   It is clear from the events leading up to the Bankruptcy that it was these Defendants who controlled the American Home business in a substantial way.   The threshold inquiry in determining whether to equitably subordinate is always whether "inequitable conduct" exists. Fraud, illegality, breach of fiduciary duty or the claimant's use of a debtor as a mere instrumentality or alter ego generally constitute inequitable conduct. [3] In addition, "undercapitalization"—in the context where an insider loan is made to a company with insufficient capital to sustain operations—may indicate, but does not by itself constitute, inequitable conduct. [4] Inequitable conduct is most often found—and the remedy of equitable subordination most often applied—in connection with the acts of an insider.

63.  STRAUSS is clearly an insider as CEO and acted in a manner which was inequitable

in that he ignored and refused to rescind Plaintiff's loan, did not communicate Plaintiff's offer of

settlement to TRIAD or issues asserted with the loan, and engaged in unfair conduct in

obfuscating the true holder of the note. The Court should consider the allegations contained in

the SEC lawsuit even though the matter was settled without admitting liability which would have

canceled the STRAUSS claim. STRAUSS paid a 2.25 million dollar fine to the SEC to settle the

complaint against him, *SEC v. Strauss et al.*, filed April 2009.  STRAUSS is barred from serving

as an officer or director of a public company for five years. The conduct complained of does

involve hiding known insolvency issues, fraud and misrepresentations of loan quality,

accounting fraud and also false and misleading disclosures and overall company viability. In it

the SEC alleged that defendants engaged in accounting fraud and also made false and misleading

disclosures to conceal from investors the company's worsening financial condition in early 2007

as the subprime crisis emerged.

<u>LR-21014</u>  Apr. 28, 2009  Michael Strauss, Stephen Hozie and Robert Bernstein
                            Other Release No.: AAER-2967
                            **See also:** <u>SEC Complaint</u>

*Securities and Exchange Commission v. Michael Strauss, Stephen Hozie and Robert Bernstein*, **Civil Action No. 09-CV-4150 (RB) (S.D.N.Y. April 28, 2009)**

On April 28, 2009, the Securities and Exchange Commission filed a civil action in the United States District Court for the Southern District of New York against former senior officers at American Home Mortgage Investment Corp., Michael Strauss and Robert Bernstein. The Commission alleges that Strauss and Hozie engaged in accounting fraud and made false and misleading disclosures that were designed to conceal from investors that American Home Mortgage's financial condition and prospects had significantly worsened in the first four months of 2007.

The complaint alleges that Strauss and Hozie fraudulently understated American Home Mortgage's first quarter 2007 loan loss reserves by tens of millions of dollars, converting the company's loss into a fictional profit. In fact, as Strauss and Hozie knew, the company's own analysis showed that American Home Mortgage needed significant additional reserves. The analysis also showed that the company's losses on its delinquent second liens were mounting quickly and that American Home Mortgage would lose at least 72% of the value of these loans

after the properties went through foreclosure. Strauss and Hozie knowingly failed to reserve adequately for the expected losses caused by these delinquent loans.

According to the SEC's complaint, Strauss and Hozie made misleading disclosures concerning, among other things, **the riskiness of the mortgages** the company originated and held and the company's liquidity. Strauss and Hozie also failed to disclose the fact that, during the month of **April 2007, American Home Mortgage was forced to sell the majority of its multi-billion dollar mortgage-backed securities portfolio** to meet pressing liquidity demands. The complaint further alleges that Strauss, Hozie and Bernstein misled American Home Mortgage's auditor about the adequacy of the reserves.

 The Commission's complaint seeks permanent injunctions against future violations, disgorgement of ill-gotten gains plus prejudgment interest and the imposition of civil penalties. The complaint also seeks officer and director bars against Strauss and Hozie.

Strauss has agreed to settle the SEC's charges without admitting or denying the allegations. He will be permanently enjoined from violating the antifraud, reporting, record-keeping, and internal controls provisions of the federal securities laws and will pay approximately $2.2 million in disgorgement and prejudgment interest and a $250,000 penalty. Strauss will also be barred from serving as an officer or director of a public company for five years.

64.   In general, the equitable subordination doctrine is limited to reordering priorities,

and does not permit total disallowance of a claim. However, if the conduct of the creditor is so

egregious that it affects the validity of the claim under applicable principles of law, the debtor

can ask the court to disallow it in full as part of the claims avoidance process. See In re Mobile

Steel Co., supra, 563 F. 2d at 699 n. 10.

## AMERICAN HOME INSOLVENCY

65.   It is clear from the claims filed against American Home in this bankruptcy,

the SEC case against Strauss, Hozie and Bernstein, and the California Department of

Corporations investigation done in February of 2007, that American Home was

operating as insolvent for some time before filing bankruptcy.  From the claims filed it is clear

that American Home had not paid a slew of small creditors at the same time it paid out 20 billion

dollars to some undisclosed creditors. Of the 20 billion dollars was paid out from the estate, 16

18

billion from American Home Mortgage Corporation. This is the entity that American Home also attempted to sequester borrower claims in.

66.    Although it was not revealed who in fact received these funds, it is clear it wasn't the small creditors. American Home admits it was the margin calls that drove it into bankruptcy. The banks had the best of both worlds, the loans were supposed to be wholly sold and assigned to the securitized trust, yet the trust parties were allowed to make margin calls on debtor companies when those securities decreased in value. So were these true sales, or secured financings? Out of reach of any claw backs in the bankruptcy or structured to avoid claw backs?

67.    The court should invoke equitable principles due to the fact that American Home was an insolvent corporation when Deutsche Bank made margin calls. Deutsche Bank was aware of the safe harbor provisions of the bankruptcy code prior to American Home's bankruptcy and knew that the margin calls would not be questioned. This Court should consider the margin calls and simultaneously cutting off credit lines, and Deutsche Bank's knowledge that this would drive American Home into Bankruptcy.

68.    Movant alleges that American Home made these distributions while the corporation was insolvent. Had American Home filed for bankruptcy first, these margin calls would not have been paid, and would have become just a claim against the estate. These Defendants gained advantage over all other creditors by exercising rights before bankruptcy knowing that American Home was insolvent, and that margin calls would be protected under safe harbor laws. During this bankruptcy the unsecured creditors committee chose not to investigate the legitimacy of those margin calls.

69. The subordination provision of the Bankruptcy policy promotes a fair distribution to

19

unsecured creditors. Deutsche Bank through margin calls and other insurance recoveries, may have already recovered a substantial amount against the American Home estate.

70.   Deutsche Bank claims may inure to the benefit of Goldman Sachs, a shareholder with voting securities. In fact, it was Deutsche Bank, Goldman Sachs and others who forced the bankruptcy. At the same time making margin calls for millions of dollars, credit lines were cut off, so these parties KNEW that a bankruptcy was imminent.

71.   The legitimacy of these transactions was never questioned by the unsecured creditors committee or Debtor in Possession. Debtor in Possession, Wilbur Ross; Deutsche Bank as Indenture Trustee and a member of unsecured Creditors Committee member; and Goldman Sachs the next largest shareholder second only to Michael Strauss, all participated in attempting to ensure that they received and kept the majority of funds that could be extracted from this bankrupt company. At the same time these parties did engage in activities to derail Movants efforts to seek recovery not only in this venue, but in a pre-petition lawsuit.

72.   Considering Defendants  may have already claimed substantial funds against GSR 2006-OA1 and now seeks to recoup more funds, and Deutsche Bank engaged in numerous instances of inequitable conduct as an insider and fiduciary,  Plaintiff asserts that her claims are supersede their claims in this bankruptcy.

73.   At this time, the Court has not been provided any information on who was the beneficiary of those margin calls, including GSR 2006-OA1 trust. This trust may have also been compensated for this loan, with a seizure of a guarantee fund, advance principal and interest paid by American Home Mortgage Servicing, bonds posted with Harford County, repurchase or indemnification claims.

74. The margin calls made pre petition enriched certain creditors, and now it is clear

while a conversion to a liquidation may be in the near future, those same creditors and
Defendants in this action are being offered settlement of claims.  These parties got the loans, the
guarantee funds, the margin call funds, the credit enhancements ( insurances), and may have
received other unknown benefits, and now will get additional funds. This is unfair and unjust.

75.    The Motions for settlements with WELLS FARGO, DBNTC, and AHMSI are  not

clear on exactly which claims are being settled and what particular loan or loan trust the
settlements apply to. The request seems to be a general request for funds from the cure escrow.

76.    Deutsche Bank and Goldman Sachs were positioned to reap all benefits possible
during the bankruptcy of American Home. Wilbur Ross as Debtor in Possession acquired the
servicing unit and in that capacity became an agent of Deutsche Bank and Goldman Sachs in the
servicing, collection, and foreclosure attempts on this loan. At no time did any of these entities
outside of the bankruptcy attempt to reach out to Movant and resolve problems.

## BACKGROUND

77.    My loan # 1222336 was originated on April 3, 2006 by American Home through
Several Debtor entities. On April 1, 2007 I tendered a rescission letter to American Home
Mortgage Servicing.  On  April 3, 2007 I filed a lawsuit in District Court in Maryland. On
August 6, 2007 that case was stayed due to American Home filing bankruptcy.

78.    Movants' proof of claims are, in substance, based on origination of the loan which
Deutsche Bank and Goldman Sachs funded, and inherent fraud, misrepresentation, and violations
of Federal and State laws. These violations are apparent on the face of the documents

79.    The Federal Court in WMN 07-854 has  already found  that the Note itself was not

in keeping with requirement of TILA, and upheld violations apparent on the face of the
documents.

## AIDING AND ABETTING FRAUD

80. These Defendants have no defense to aiding and abetting American Home Mortgage
Actions as they are all aware that fraud counts have been upheld on American Home Mortgage
Motion to Dismiss, and  aware of this fact, Goldman Sachs and Deutsche Bank are now aiding
and abetting the fraud after the fact.

81.  Goldman Sachs and Deutsche Bank are using American Home and its estate
resources to continue to protect themselves and American Home counsel has objected twice to
adding them as Defendants in the lawsuit pending.  A question this Court should address is
Goldman Sachs and Deutsche Bank impermissible using the Debtor estate resources to defend
themselves. Although indemnifications existed prepetition, after the bankruptcy they should
result in only a claim against the estate for damages, not a continuation of the use of Debtor
estate resources.

82.  Deutsche Bank and Goldman Sachs were sent a certified letter directly noticing
them.  Movant has also called Goldman Sachs and Deutsche Bank directly about the origination
issues and these parties have refused to acknowledge any liability, acknowledge ownership of the
loan, or assist in loss mitigation.  These actions have escalated damages to the estate.

83.  On October 31, 2007,  Movant asked for the true owner of the note. This request
was never complied with and the Debtors asserted that they did not have to comply. At this time
I had no idea who owned my note.  After receiving my loan file just before this hearing, Movant
spent months trying to figure it out. I was forced to cross reference bank account numbers that

22

had been published in this case with numbers found in my servicing file records. I then had to

search SEC filings to confirm the loan trust my loan was purported to be in. It was then that I

discovered Deutsche Bank as Indenture Trustee and Goldman Sachs as purchaser and securitizer

of my loan. After that discovery Movant contacted those parties directly and DB nor GS would

claim ownership of the note.

84. After the discovery, it became clear that Deutsche Bank sitting on the

unsecured creditors committee, and Goldman Sachs as the next largest shareholder with voting

securities, would have had actual knowledge of my efforts to discover their identity. I believe

these parties actively engaged in activities which were inappropriate, using insider positions in

the bankruptcy case.

85. On July18, 2008 I was granted relief from stay to proceed with my

case in Federal Court in Greenbelt Maryland before the Honorable William Nickerson. Due to

the bankruptcy of American Home and obfuscation of the true owners of the note, my case has

moved slowly and discovery has not even begun.

86. On December 3, 2009 the Federal Court in Greenbelt Md., upheld causes

of action under Fraud, The Maryland Consumer Protection Act, TILA, and unjust enrichment,

with leave to amend the RESPA claims thereby denying American Home's motion to dismiss.

Since that time the Honorable William Nickerson has allowed adding RESPA claims, but has

once again denied adding new party defendants. **In the memorandum he asserts that Plaintiff**

**does not clearly allege that these parties are the holder of the note**. Plaintiff can't state with

certainty that these parties are the holders on my note due to conflicting statements and filings

into various Courts. **See** Exhibit __

87. American Home has made no effort whatsoever to settle this case with me

even though I made a reasonable offer as early as July of 2007 through counsel assisting me at the time, John Pica. The offer was to just give me back the loan I was refinanced out of and $30,000 in damages. Pica even offered to waive his fees. TRIAD the insurer on this loan was never notified of that offer. No counter offer occurred, however Weiner Brodsky Sidman Kider did ask me to dismiss my case, stating they would engage in negotiations. This was deception and abuse. Had I dismissed my case at that time, and American Home went into bankruptcy, I would have had no protections.

88.   During the last three years American Home Servicing, Debtor entity and new Ross managed AHMSI,  acting as agent for Deutsche Bank and Goldman Sachs, has attempted to convert my home several times. The first in November of 2007, four months after the bankruptcy claiming that MERS as nominee for American Home Mortgage Corporation was the holder of the note ( Case No. 12CO6003300). I was forced to file for bankruptcy to protect my home. Subsequently I dropped out to  pursue my affirmative action.  Despite a rescission letter sent on April 1, 2007 and lawsuit pending in Federal Court, in March of 2009 AHMSI sent a letter stating Citibank was the secured party.  After challenging these assertions, in April of 2009, a letter from Bierman Geesing and Ward was sent stating that they were stopping the foreclosure action based on the affirmative Federal Case. It wasn't until November of 2009, that Bierman Geesing started again to commence foreclosure, only this time it did claim Deutsche Bank as proper party( Case No. 12co9003948),  naming the true party in interest Deutsche Bank as Indenture Trustee for GSR 2006-OA1. These parties, Deutsche Bank sitting on the unsecured creditors committee, and Goldman Sachs, next largest shareholder second only the Michael Strauss, remained silent as they watched my lawsuit, my petitions in this Court asking for the true owner of the note, and they safely hid behind the Debtor.

89. On Docket #5275, Deutsche Bank reveals they are aware of claims I have against American Home and demands indemnifications for claims against DB, including litigation of Paula Rush. August 11, 2008 I sent a letter directly to all trust parties, including Deutsche Bank demanding they come forward and admit or deny the ownership of the note, and address my issues of rescission and damage claims. No answer ever came.

90. It is clear from the ruling in my case in Greenbelt that Judge Nickerson believes that American Home has violated several laws and the documents themselves can't be contradicted. Judge Nickerson stated; the "plaintiff has substantial pretrial evidence."

91. One cause of action that has been upheld is fraud. A remedy for fraud is treble damages and the Debtor and associated insider Defendants can't be protected by the American Home bankruptcy filing. Treble damages are warranted in this case not only due to the fraud in origination, but also the misrepresentations and concealment of true owners of the note during the American Home bankruptcy.

An obligation to pay treble damages satisfies the threshold condition that it constitute a "debt." That word is defined as liability on a "claim," §101(12), which in turn is defined as a "right to payment," §101(5)(A), which this Court has said means an enforceable obligation, *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U.S. 552, 559. An award of treble damages is an enforceable obligation of the debtor, and the creditor has a corresponding right to payment. Moreover, the phrase "to the extent obtained by" in §523(a)(2)(A) modifies "money, property, services, or ... credit"–not "any debt"–so that the exception encompasses "any debt ... for money, property, [etc.], to the extent [that the money, property, etc., is] obtained by" fraud. The Court rejects petitioner's argument that a "debt for" money, property, etc., is necessarily limited to the value of the "money, property, services, or ... credit" the debtor obtained by fraud,

such that a restitutionary ceiling would be imposed on the extent to which a debtor's liability for fraud is nondischargeable. That argument is at odds with the meaning of "debt for" in parallel exceptions to discharge set forth in §523(a), which use "debt for" to mean "debt as a result of," "debt with respect to," "debt by reason of," and the like. The Court's reading of §523(a)(2)(A) is also reinforced by the fraud exception's history.

Moreover, §523(a)'s various exceptions from discharge reflect Congress' conclusion that the creditors' interest in recovering full payment of debts in these categories outweighs the debtors' interest in a complete fresh start, see *Grogan* v. *Garner*, 498 U.S. 279, 287. Pp. 4—10. 106 F.3d 52, affirmed. O'Connor, J., delivered the opinion for a unanimous Court.

92.    Plaintiff's claim for loan rescission may be affected by actions taken in this Court by the Debtors and Defendant insiders to the bankruptcy. The fact that the true owner of the note had been obfuscated may affect the ability to obtain that remedy against those parties due to statute of limitations. I intend to argue fraudulent concealment, and notice to agent American Home, however these Defendant parties may have hidden themselves long enough to avoid affirmative remedies against them. Some Courts have upheld strict 3 year rescission guidelines. *In re: Meyer* v. *Countrywide* Bankruptcy Case No. 06-13841, of which Deutsche Bank was the true party in interest, they successfully argued that at the same time Countrywide would not give the borrower the true owner of the obligation, the statute of limitations had run out.

93.  DBNTC, GOLDMAN SACHS, and WELLS FARGO are most certainly entities that made margin calls for hundreds of millions of dollars or even billions, and cut off credit lines at the same time, sealing the fate of American Home to bankruptcy.

26

In the Caylon litigation transcript SAKAMOTO made it is clear that the Debtor believed that these margin calls were not legitimate. SAKAMOTO stated: "Well, I think the margin calls were based on the creditors thought we might have financial difficulties, so they wanted to get an extra amount of cash to protect themselves, not necessarily based on a justified decrease in value of loans or securities.

94.    On top of margin call funds that may have been extracted for the benefit of GSR 2006-OA1 and unknown certificate holders which may include Goldman Sachs and DBNTC, These Defendants may have also seized guarantee funds, swap payments, insurance Proceeds, and now seek to recover more.

95.  Substantial breach and indemnification claims have been made against American Home by DBNTC  for the benefit of this Trust and itself as manager of this Trust.

96.  DBNTC  is a member of the unsecured creditors committee and if the plan goes effective, a member of the oversight committee.  DBNTC is the Trustee on the Movants Trust, GSR 2006-OA1. This creates a tremendous conflict of interest when it comes to settling a claim.  Short of Court intervention Movant stands no chance of resolving her claim in any fair and impartial manner.

97.  Movant directly notified DBNTC, GOLDMAN SACHS,  WELLS FARGO and WLR RECOVERY FUND III, L.P., and FKA AHMSI  and other trust parties directly on August 11, 2008,  and not one ever responded. These entities were acting under contractual agreements as agents for GSR 2006-OA1 Trust certificate  holders.

98.   American Home Servicing and F/K/A AH Mortgage Acquisition Co., Inc, AHMSI did not act in good faith, or ever comply with disclosure requests.

99.  On October 31, 2007 American Home presented a witness, Mr. Dickman,  who

27

openly admitted that AHM does not give the information of the true owners of the notes to borrowers. This is not a choice they get to make.

100.    What role DBNTC, GOLDMAN SACHS, WELLS FARGO and WLR RECOVERY FUND III, L.P., and FKA AHMSI played in that decision is unknown, however DBNTC did sit on the unsecured creditors committee who participated in that decision and did nothing to clarify it, or object to it.

Truth in Lending Act 15 U.S.C. Section 1641

 (f) Treatment of servicer (2) Servicer not treated as owner on basis of assignment for administrative convenience A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. **Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.**

(3) "Servicer" defined

For purposes of this subsection, the term "servicer" has the same meaning as in section 2605(i)(2) of title 12.

101.    The question this Court must answer is: Did DBNTC, GOLDMAN SACHS, WELLS FARGO and WLR RECOVERY FUND III, L.P., and FKA AHMSI improperly use the bankruptcy of American Home to protect themselves from Plaintiff's claims? Did Michael Strauss assist them?

102.    DBNTC, GOLDMAN SACHS, WELLS FARGO and WLR RECOVERY

28

FUND III, L.P., and FKA AHMSI did not follow proper servicing Regulation AB guidelines, which require foreclosures are to be done in the name of Deutsche Bank as Indenture Trustee for the certificate holders of GSR 2006-OA1 when the first foreclosure action was filed on November 14, 2007, by Cohn Goldberg Deutsch LLC asserting that American Home Mortgage was the holder of the note. Or did American Home and Deutsche Bank misrepresent ownership of this note at the hearing on October 31, 2007?

**103.**    DBNTC, GOLDMAN SACHS and GSR 2006-OA1, would have been the correct party in interest and may have been subject to a right of rescission under TRUTH IN LENDING ACT (TILA) 15 USC 1635. - Right of rescission. Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

## HARM TO MOVANT

104.    DBNTC, Goldman Sachs, STRAUSS, and DIP Wilbur Ross actions may have cost Movant remedies which could have been exercised against them but have been lost due to concealment of their identity and now expiration of the statute of limitation.

105.    This is a trick that DBNTC is familiar with. ***In re Meyer v. Countrywide,***, it was found that at the same time Countrywide as servicer and originator refused to give the Meyer's counsel the true holder of the note under the Truth in Lending Act, 15 U.S.C. 1641(f)(2) the statue of limitations had run out to pursue certain affirmative claims against Deutsche Bank.

106.    The harm Movant suffered and continues to suffer is clear. The parties inflicting that harm is clear.

107.    Defendants are all insiders as that term is defined in the bankruptcy code. As such these Defendants should be held to a higher standard of good faith and fair dealing.

108.    DBNTC was an insider prepetition as a major warehouse lender and Indenture Trustee and business partner, and post petition fiduciary as a member of the unsecured creditors committee.

109.    GOLDMAN SACH was a major shareholder and held voting securities.

110.    Wilbur Ross was acting in a fiduciary capacity as Debtor in Possession.

111.    In re Astroline Communications Co., 226 B.R. 324, 329 (Bankr. D. Conn. 1998) (noting that if creditor is shown to be an insider of debtor, its conduct is subject to higher level of scrutiny and insider has the burden of proving good faith and fair dealing); Fluharty v. Wood Products, Inc. (In re Daugherty Coal Co., Inc.), 144 B.R. 320, 323 (N.D. W.Va. 1992) (holding that where the claimant is fiduciary of the debtor or an insider, trustee or DIP must only prove unfairness in transaction; otherwise subordination is proper only in cases of fraud, spoliation or overreaching).

Section 510(c) of the Bankruptcy Code (11 U.S.C. § 510(c) (1994)) permits the bankruptcy court to subordinate, on equitable grounds, all or part of a lender's allowed claim or interest, to transfer any lien securing a subordinated claim to the bankruptcy estate, or to disallow the claim entirely, in the appropriate circumstances, even if no preferential transfer (under § 547 of the Bankruptcy Code) or fraudulent conveyance (under § 548 of the Bankruptcy Code) has occurred.

The bankruptcy court generally invokes the sanctions set forth in § 510(c) when the lender has engaged in overreaching or lender control, which occurs when the lender steps beyond the traditional role of a lender and participates in the debtor's business or engages in other egregious conduct that justifies the use of the court's equitable powers. In these situations, the court may decide to subordinate, recharacterize, or even disallow a transaction that would not constitute a preferential transfer or a fraudulent conveyance.

112.    Here, Defendants used their positions as insiders to prevent Movant from determining the true parties in interest, and actively engaged in fraudulent concealment by allowing American Home Mortgage Corporation and American Home Mortgage Servicing to present itself as holder of the note, and then allowed AHM to testify that it was not holder of the note on October 31, 2007.  Even after testimony was given that American Home Debtor entities were not the holder of the note, a foreclosure was commenced asserting that they were in fact holder of the note.

113.    General recovery is in doubt for creditors who are not settled out, as the bank sale clearly fell through. It is plausible that the only parties who will recover are settlements which are reached now before the announcement of a conversion to Chapter 7. It is clear that certain parties are now clamoring to seek settlements. Movant asserts this is not a coincidence. It is becoming clear that settlements are being proposed one after another with large business participants and insiders of American Home; Deutsche Bank; Wilbur Ross; and Wells Fargo; immediately after the sale of the bank fell through.

114.    Movant believes the writing is on the wall and these entities are getting what they can before the announcement of a conversion to liquidation can be made. This also constitutes inequitable conduct as insiders they know what is happening.

## DOUBLE RECOVERY?

115.    The GSR 2006-OA certificate holders may include Deutsche Bank and/or Goldman Sachs. It is common that unsold securities are held by the issuer and the issuer or securitizer may hold residual interest such as net interest margin securities. As revealed in AIG transactions, Goldman Sachs may also be the beneficiary of credit default swaps which it may have already been paid on through the Maiden Lane III transaction with the Federal Reserve. In addition, Movant's loan was covered with undisclosed mortgage insurance with TRIAD, a required disclosure under the Homeowner Protection Act of 1998. On top of that direct policy, bulk and supplemental policies were also in effect on this loan trust. Deutsche Bank and/or Goldman Sachs may have already made substantial claims related to this loan.

116.    It is equally unclear why Goldman Sachs would not have required American

31

Home to repurchase this loan in September of 2007 when Movant asserted issues and stopped making payments. The only plausible explanation is that Goldman Sachs and Deutsche Bank believed they could sell Movants' home and collect on insurance policies and be made whole.

## ACTUAL CONTROVERSY

117.    The Federal Declaratory Judgment Act, 28 U.S.C. $2201, empowers the Court to declare the rights and other legal relations of any interested party in a case of actual controversy within its jurisdiction.

118.    Based on the facts stated above, an actual controversy exists between the parties.

119.    By virtue of the foregoing and pursuant to 28 U.S.C. 2201, the Movant is entitled to a judgment declaring the rights and legal relationships of the parties generally and, specifically, that- at the time of bankruptcy American Home claimed to be the Owner of the Note and therefore the Defendants must prove up ownership of the Note or disgorge their interests to this bankruptcy estate; and by their actions complained of herein must subordinate all claims on this estate to Movant.

120.    Movant requests that this Court supersede any rights that Defendants claim to have in this loan pursuant to principles of silence estoppels.

## COUNT 1

### (Declaratory Judgment)

121.    Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 120 inclusive, as if fully set forth herein.

122.    It would be unfair and inequitable for any party who used this bankruptcy to

protect themselves from liabilities or assisted other in protecting themselves from liabilities, to retain the fruits of the fraud.

123.      Plaintiff requests a declaratory judgment that these Defendants and all of them, claims are subordinated to Plaintiff's claims due to inequitable conduct and unfair advantage acting as insiders of this bankruptcy.

124.      Plaintiff requests a declaratory judgment that these Defendants produce a note with all chain of assignments to put to rest all uncertainties of ownership of the note.

125.      Plaintiff requests a declaratory judgment that these Defendants disclose all margin calls paid on this  trust in the ninety days leading up to the bankruptcy.

126.      Plaintiff requests declaratory relief that these Defendants disclose all insurance recoveries paid in relation to Plaintiff's loan.

127.      Plaintiff continues to be injured by these parties wrongful actions.

## COUNT 2

### (Unjust Enrichment)

128.      Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 127 inclusive, as if fully set forth herein.

129.      It would be unjust and unfair for the Defendants who may have already reaped substantial monetary recoveries on this loan to seek additional and possibly duplicative recoveries at the Plaintiff's expense.

130.      On Docket #4104 filed on May 20, 2008, American Home describes the margin calls and that these margin calls sent it into bankruptcy. American Home does not make it clear which parties exercised remedies against the Debtor, however it is clear from the Deutsche Bank and Wells Fargo claims, on behalf of Goldman Sachs and others, likely exercised such remedies.

Paragraph 9. "In the weeks prior to the Petition Date, this unprecedented disruption in the credit markets caused major write-downs of the Debtors' loan and security portfolios and consequently resulted in margin calls for hundreds of millions of dollars with respect to the Debtors' loans. During this time, certain of the Debtors' warehouse lenders- the financial institutions that provide short term credit facilities needed to originate and purchase loans-began to exercise remedies against the Debtors, thereby restricting the Debtors' ability to originate loans and threatening AHM's continued viability."

Paragraph 11. " The Debtors' inability to originate loans and the exercise of remedies by certain warehouse lenders against the Debtors created a severe liquidity crisis and forced the Debtors to discontinue their retail and indirect loan origination business."

131.     Plaintiff requests that these Defendants disgorge any funds received for this loan from insurances, margin calls, or other benefits.

132.     Plaintiff requests that these Defendants disgorge and subordinate all claims made against this loan trust or this loan, including indemnification claims to Plaintiff's claims.

133.     Plaintiff continues to be injured by these parties wrongful actions.

## COUNT 3

### (Administrative Priority Claim)

134.     Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 133 inclusive, as if fully set forth herein.

135.     Plaintiff asserts that her proofs of claim should be elevated to priority status as substantial misconduct and intentional interference and advantage did occur while using the bankruptcy court for cover. These Defendants purposefully attempted to convert Plaintiff's

home while simultaneously misrepresenting the ownership of the note on more than one occasion to different Courts. Here these Defendants acting in concert,  stated that a third party owned the note. In Baltimore City Federal Court these Defendants acting in concert stated that MERS as nominee for American Home Mortgage Corp owned the loan. In Harford County

136.    On October 31, 2007 American Home and the unsecured creditors committee jointly objected to Plaintiff petition, which included among other requests, a request for true holder of the note under 15 U.S.C. 1641(f)(2).

137.    These Defendants acting in concert prepared and presented witness testimony wherein Mr. Dickman made it clear that American Home does not disclose note ownership. This is not a choice they get to make and it is fraudulent concealment.

138.    These Defendants acted in concert to hide themselves to avoid answering Plaintiff's allegations asserted in her Federal case pending WMN 07-0854.

139.    These actions took place post petition.

140.    These actions were taken by insiders as that term is defined in the bankruptcy code.

141.    These action were taken by fiduciaries of the estate,  Wilbur Ross and WLR Recovery Fund, and Deutsche Bank fiduciary to all unsecured creditors including Movant.


## CONCLUSION

142.    Movant is entitled to equitable subordination for the Defendants preventing a resolution and deflecting liabilities using American Home Mortgage bankruptcy as a front and possibly using an insider positions against Movant.

143.    If Defendants claims are settled out, and American Home goes into insolvency

there will be no chance at recovery, or equitable subordination of claims.

144.     Therefore Plaintiff requests that this Court, for the conduct alleged herein, equitably subordinate Defendants claims to Plaintiffs claims.

145.     The bankruptcy has not progressed to a plan becoming effective, and the risk is real that American Home will become insolvent and no recovery will be distributed to unsecured creditors. It is unfair and unjust for American Home to settle with parties who may have played a substantial role in the originations and loan violations I assert, and those same parties actually created the necessity for bankruptcy by making enormous margin calls and cutting off credit lines at the same time. These parties were able to rely on safe harbor laws and those margin calls were never challenged in this Court.

146.     Plaintiff asserts the bankruptcy Court was used as a protective shield to ensure that true owners of the notes were not revealed and borrowers were left to fend for themselves to even ascertain the identity and those same parties use insider positions in the bankruptcy to settle claims ahead of borrower claimants.

147.     Plaintiff's home is in danger of loss through foreclosure. Once you are saddled with a pay option arm loan with a substantial prepayment penalty there is no escape other than foreclosure or paying exorbitant interest rates that were not presented in the first instance.

148.     Plaintiff would have been better off left alone in the loan American Home financed which was 5.25% interest and no prepayment penalty. American Home misled Plaintiff into refinancing into a misrepresented 1% loan that actually was 7.5% and grew within 6 months to 8.5%.

149.     In Movant's case in Federal Court in Greenbelt, Judge Nickerson has already ruled that the 1% was misleading, and that no full payment schedule was revealed, and nowhere

did the paperwork reveal that this was a discounted rate.

150.    Counts relating to fraud have been allowed to go forward in the litigation pending.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request that this Court grant the relief requested herein against the Defendants.

A.  Declare that these Defendants produce a note with all chain of assignments to put to rest all uncertainties of ownership of the note;

B.  Declare these Defendants disclose all margin calls paid on this trust in the ninety days leading up to the bankruptcy;

C.  Declare that these Defendants disclose all insurance recoveries paid in relation to Plaintiff's loan;

D.  Declare that Defendants produce all communications between them relating to the Plaintiffs loan;

E.  Declare that Defendant Deutsche Bank state under oath that it recused itself from all issues that the unsecured creditors committee considered concerning loans which it had a direct financial interest in or interest in the nature of a supervisory role on behalf of others in;

F.  Declare that Plaintiff is entitled to an administrative priority claim due to substantial misconduct during the bankruptcy;

G.  Declare that these Defendants and all of them, claims are subordinated to Plaintiff's claims due to inequitable conduct and unfair advantage acting as insiders of this bankruptcy.

H. Declare that Plaintiffs' claim is for $650,000, the full value claimed in the foreclosure filings, which these Defendants have attempted to covert using fraud and fraudulent concealment during the bankruptcy, and Defendants used obfuscation of the true party in interest to avoid facing liabilities in relation to origination issues.


Respectfully submitted,


_____    Date: 4/13/10


Paula Rush
2651 Peery Drive
Churchville Md. 21028
410-914-5286  443-676-3509
paularush@comcast.net