EXHIBIT A

G2 CAPITAL GROUP LLC.

Purchaser,

AMERICAN HOME MORTGAGE CORP.

and

AMERICAN HOME MORTGAGE ACCEPTANCE, INC.,

Sellers,

and

AMERICAN HOME MORTGAGE SERVICING INC.

Interim Servicer

# LOAN SALE AND INTERIM SERVICING AGREEMENT

Dated as of April 9, 2010

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ..... 1

Section 1.01. Definitions..... 1

ARTICLE II AGREEMENT TO PURCHASE; CONVEYANCE OF MORTGAGE LOANS AND REO PROPERTIES; PURCHASE PRICE; POSSESSION OF MORTGAGE LOAN DOCUMENTS; MAINTENANCE OF SERVICING FILES; BOOKS AND RECORDS; DELIVERY OF DOCUMENTS; CLOSING CONDITIONS; COSTS..... 8

Section 2.01. Agreement to Purchase; Conveyance of Mortgage Loans and REO Properties; Purchase Price; Possession of Mortgage Loan Documents; Maintenance of Servicing Files. ..... 8

Section 2.02. Books and Records; Transfers of Mortgage Loans and REO Property. ..... 10

Section 2.03. Delivery of Documents. ..... 11

Section 2.04. Closing Conditions..... 11

Section 2.05. Costs..... 12

Section 2.06. "As Is Where Is" Transaction. ..... 13

Section 2.07. Purchase Price Adjustment. ..... 14

ARTICLE III REPRESENTATIONS AND WARRANTIES..... 14

Section 3.01. Sellers Representations and Warranties..... 14

Section 3.02. Interim Servicer Representations and Warranties..... 15

Section 3.03. Purchaser Representations and Warranties. ..... 16

ARTICLE IV ADMINISTRATION AND SERVICING OF MORTGAGE LOANS DURING THE INTERIM SERVICING PERIOD ..... 16

Section 4.01. Interim Servicer to Act as Servicer. ..... 16

Section 4.02. Collection of Mortgage Loan Payments. ..... 17

Section 4.03. Disbursement of Mortgage Loan Proceeds. ..... 17

ARTICLE V TRANSFER OF SERVICING..... 18

Section 5.01. Assumption of Responsibilities at Transfer Date. ..... 18

ARTICLE VI SELLERS TO COOPERATE..... 20

# TABLE OF CONTENTS

**Page**

Section 6.01. Provision of Information; Right to Examine Sellers Records. .................. 20

ARTICLE VII MISCELLANEOUS PROVISIONS .................. 21

Section 7.01. No Recourse. .................. 21

Section 7.02. Amendment. .................. 21

Section 7.03. Survival. .................. 21

Section 7.04. Governing Law. .................. 21

Section 7.05. Venue and Retention of Jurisdiction. .................. 22

Section 7.06. Notices. .................. 23

Section 7.07. Severability of Provisions. .................. 23

Section 7.08. Relationship of Parties. .................. 24

Section 7.09. Successors and Assigns. .................. 24

Section 7.10. Further Agreements. .................. 24

Section 7.11. Confidential Information. .................. 24

Section 7.12. Information Security and Privacy. .................. 26

Section 7.13. Counterparts. .................. 27

Section 7.14. Exhibits. .................. 27

Section 7.15. General Interpretive Principles. .................. 27

Section 7.16. Reproduction of Documents. .................. 28

## EXHIBITS

Exhibit A MORTGAGE LOAN DOCUMENTS
Exhibit B FORM OF MEMORANDUM OF SALE
Exhibit C PURCHASE PRICE PER LOAN

# MORTGAGE LOAN SALE AND INTERIM SERVICING AGREEMENT

This is a Mortgage Loan Sale and Interim Servicing Agreement for adjustable and fixed rate first and second lien mortgage loans and residential property, dated and effective as of April 9, 2010, by and among (i) American Home Mortgage Corp., a New York corporation, and American Home Mortgage Acceptance, Inc., a Maryland corporation, as sellers (each, individually, a "Seller" and, collectively, the "Sellers"), (ii) American Home Mortgage Servicing Inc., a Delaware corporation as interim servicer (the "Interim Servicer") and (iii) G2 CAPITAL GROUP LLC., a Colorado Limited Liability Corporation, as purchaser (the "Purchaser" and together with the Sellers and the Interim Servicer, collectively, the "Parties").

W I T N E S S E T H

WHEREAS, on August 6, 2007, the Filing Entities (as defined herein) filed voluntary petitions for relief (the "Bankruptcy Cases") under Chapter 11 of Title 11, U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (together with any court having proper jurisdiction with respect to the Bankruptcy Cases, the "Bankruptcy Court");

WHEREAS, the Purchaser has agreed to purchase from the Sellers and the Sellers have agreed to sell to the Purchaser certain first and second lien adjustable and fixed rate Mortgage Loans (as defined herein), together with the servicing rights associated with such Mortgage Loans, and certain REO Properties (as defined herein); and

WHEREAS, the Purchaser, the Sellers, and the Interim Servicer wish to prescribe the manner of purchase of the Mortgage Loans and REO Properties and the conveyance, interim servicing and control of the Mortgage Loans and REO Properties.

NOW, THEREFORE, in consideration of the mutual agreements hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Purchaser, the Sellers, and the Interim Servicer agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.01. Definitions. Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

Accepted Practices: Procedures (including collection procedures) that comply with Applicable Laws and that are customarily employed and exercised in servicing and administering Mortgage Loans in its servicing portfolio, which procedures are in accordance with the terms of the Mortgage, the Mortgage Loan Note and accepted mortgage servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as the Mortgage Loans in the jurisdictions where the related Mortgage Property is located.

Adjustment Period: As defined in Section 2.01(c)(i).

governs the Cooperative Property, which Cooperative Corporation must qualify as a Cooperative Housing Corporation under Section 216 of the Code.

Cooperative Loan: Any Mortgage Loan secured by Cooperative Shares and a Proprietary Lease.

Cooperative Loan Documents: With respect to any Cooperative Loan, (i) the Cooperative Shares, together with a stock power in blank; (ii) the original executed Security Agreement (or a copy thereof certified by an authorized officer of the related Cooperative Corporation) and the assignment of the Security Agreement endorsed in blank; (iii) the original executed Proprietary Lease and the assignment of the Proprietary Lease endorsed in blank; (iv) the original executed Recognition Agreement and the assignment of the Recognition Agreement (or a blanket assignment of all Recognition Agreements) endorsed in blank; (v) the executed UCC-1 financing statement with evidence of recording thereon that has been filed in all places required to perfect the security interest in the Cooperative Shares and the Proprietary Lease; and (vi) Seller's executed UCC-3 financing statements (or copies thereof) or other appropriate UCC financing statements required by state law, evidencing a complete and unbroken chain of title from the mortgagee to such Seller with evidence of recording thereon (or in a form suitable for recordation).

Cooperative Property: The real property and improvements owned by the Cooperative Corporation, that includes the allocation of individual dwelling units to the holders of the Cooperative Shares of the Cooperative Corporation.

Cooperative Shares: Shares issued by a Cooperative Corporation.

Cooperative Unit: A single family dwelling located in a Cooperative Property.

Customer Information: As defined in Section 7.11(c).

Cut-off Date: With respect to each Mortgage Loan, the close of business on March 31, 2010.

Defaulted Mortgage Loan: As of any date of determination, a Mortgage Loan that is 60 days or more delinquent in accordance with the OTS method of calculating delinquencies.

Discloser: As defined in Section 7.11(b).

Fannie Mae: Federal National Mortgage Association (FNMA), or any successor thereto.

Filing Entities: American Home Mortgage Holdings, Inc., a Delaware corporation, American Home Mortgage Investment Corp., a Maryland corporation, American Home Mortgage Acceptance, Inc., a Maryland corporation, AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation, American Home Mortgage Corp., a New York corporation, American Home Mortgage Ventures LLC, a Delaware limited liability company, Homegate Settlement Services, Inc., a New York corporation, and Great Oak Abstract Corp., a New York corporation.

Flood Zone Service Contract: A transferable contract maintained for the Mortgaged Property with a flood zone service provider acceptable to the Purchaser for the purpose of obtaining the current flood zone relating to such Mortgaged Property.

Freddie Mac: Federal Home Loan Mortgage Corporation (FHLMC), or any successor thereto.

GAAP: Generally accepted accounting principles, consistently applied.

Interim Servicer: American Home Mortgage Servicing Inc.

Interim Servicing Period: With respect to each Mortgage Loan Package, the period of time from and including the Closing Date to, but not including, the Servicing Transfer Date.

Interim Servicing Fee: With respect to each Mortgage Loan, a non-refundable, non-pro-ratable servicing fee in the amount of (A)(x) $25 per month per Mortgage Loan if such Mortgage Loan is not a Defaulted Mortgage Loan or (y) $75 per month if such Mortgage Loan is a Defaulted Mortgage Loan not described in (B) below; or (B) $0 per month for all Mortgage Loans that (i) are 180 days or more delinquent in accordance with the OTS method of calculating delinquencies, (ii) have a Loan-to-Value Ratio in excess of one hundred percent (100%) and (iii) have been charged-off in accordance with Accepted Practices.

Investor: With respect to each MERS Designated Mortgage Loan, the Person named on the MERS System as the investor pursuant to the MERS Procedures Manual.

Loan-to-Value Ratio: With respect to any Mortgage Loan as of any date of determination, the ratio on such date of (i) the outstanding principal amount of the Mortgage Loan (unless otherwise indicated) to (ii) the Appraised Value of the Mortgaged Property as reduced by the outstanding principal amount of any other mortgage on the Mortgage Property that is senior to the Mortgage Loan.

Memorandum of Sale: With respect to the Mortgage Loan Package, the memorandum of sale, substantially in the form of Exhibit B attached hereto, confirming the sale by the Sellers and the purchase by the Purchaser of the Mortgage Loan Package on the Closing Date.

MERS: MERSCORP, Inc., its successors and assigns.

MERS Designated Mortgage Loan: A Mortgage Loan for which (a) a Seller has designated or will designate MERS as, and has taken or will take such action as is necessary to cause MERS to be, the mortgagee of record, as nominee for such Seller, in accordance with the MERS Procedure Manual and (b) a Seller has designated or will designate the Purchaser or its designee as the Investor on the MERS System.

MERS Procedures Manual: Collectively, the policies and procedures manuals published by MERS, including without limitation, the MERS Procedures Manual and the MERS Quality Assurance Procedures Manual, in each case, as it may be amended, supplemented or otherwise modified from time to time and as available from the MERS website.

MERS System:    MERS mortgage electronic registry system, as more particularly described in the MERS Procedures Manual.

MOM Mortgage Loan:  A Mortgage Loan that was registered on the MERS System at the time of origination thereof and for which MERS appears as the record mortgagee or beneficiary on the related Mortgage.

Monthly Payment:  With respect to any Mortgage Loan, the scheduled monthly payment of principal and/or interest on a Mortgage Loan.

Mortgage:  With respect to any Mortgage Loan, the mortgage, deed of trust or other instrument securing a Mortgage Loan Note that creates a first or second lien on the Mortgaged Property securing the Mortgage Loan Note.

Mortgage Loan:  Each first lien and second lien residential mortgage loan sold, assigned, and transferred to the Purchaser pursuant to this Agreement and identified on the Mortgage Loan Schedule annexed to the Memorandum of Sale, which Mortgage Loan includes without limitation the Mortgage Loan Documents, the Monthly Payments, Principal Prepayments, servicing rights, liquidation proceeds, condemnation proceeds, insurance proceeds and all other rights, benefits, proceeds and obligations arising from or in connection with such Mortgage Loan.

Mortgage Loan Documents:  With respect to each Mortgage Loan, all documents in the Sellers' possession evidencing the Sellers' obligation to fund, the borrower's obligation to repay, and guarantees of the borrower's obligations, and any mortgage or security documents related thereto, including without limitation the Mortgage Loan Note and any other documents referred to in Exhibit A.

Mortgage Loan Interest Rate:  The annual rate of interest borne on a Mortgage Loan Note in accordance with the provisions of the Mortgage Loan Note.

Mortgage Loan Note:  The adjustable or fixed-rate promissory note evidencing the indebtedness of a Mortgagor secured by a Mortgage.

Mortgage Loan Package:  The pool of Mortgage Loans purchased on the Closing Date, on a servicing released basis, and any REO Property purchased on the Closing Date, all as described in the Mortgage Loan Schedule annexed to the Memorandum of Sale.

Mortgage Loan Schedule:  With respect to the Mortgage Loan Package, the schedule of Mortgage Loans and REO Properties annexed to the Memorandum of Sale.

Mortgaged Property:  With respect to each Mortgage Loan, the Mortgagor's real property or leasehold interest, including any improvements, securing repayment of the debt evidenced by a related Mortgage Loan Note, consisting of an unsubordinated estate in fee simple or, with respect to real property located in jurisdictions in which the use of leasehold estates for residential properties is a widely-accepted practice, a leasehold estate, in a single parcel or multiple parcels of real property improved or to be improved by a residential dwelling.  With respect to each Cooperative Loan, the Cooperative Shares allocated to a Cooperative Unit in the

related Cooperative Corporation that were pledged to secure such Cooperative Loan and the related Proprietary Lease.

Mortgagor: The obligor on a Mortgage Loan Note.

OCC: The Office of the Comptroller of the Currency.

Officer's Certificate: A certificate signed by a duly elected and authorized officer of a Seller.

Originator: With respect to any Mortgage Loan, the entity that closed or funded such Mortgage Loan.

Parties: As defined in the introductory paragraph.

Permitted Encumbrances: With respect to any REO Property, any and all covenants, rights of way, easements, conditions, and restrictions of record and any and all liens for any current or prior property or other taxes assessed against such REO Property, without regard to whether such property or other taxes are then due and payable.

Person: Any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof.

Privacy Laws: As defined in Section 7.12.

Proprietary Lease: With respect to any Cooperative Unit, a lease or occupancy agreement between a Cooperative Corporation and a holder of related Cooperative Shares.

Purchase Price: The price specified in Section 2.01(b) and paid on the Closing Date for the Mortgage Loans and REO Properties included in the Mortgage Loan Schedule, as calculated and adjusted as set forth in this Agreement.

Purchase Price Adjustment: As defined in Section 2.01(c)(i).

Purchaser: As defined in the introductory paragraph, and any Person succeeding thereto in accordance with the provisions of this Agreement.

Qualified Appraiser: An appraiser, duly appointed by a Seller, who had no interest, direct or indirect, in the Mortgaged Property or in any loan made on the security thereof at the time at which the appraisal was made, and whose compensation was not affected by the approval or disapproval of the Mortgage Loan, and such appraiser and the appraisal made by such appraiser both satisfied the requirements of Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date of the appraisal.

Quitclaim Deed: A deed in recordable form sufficient under the laws of the jurisdiction wherein the related REO Property is located to reflect the sale and conveyance of the REO Property to the Purchaser.

Recipient: As defined in Section 7.11(b).

REO Property: Each Mortgaged Property acquired by Seller through foreclosure, acceptance of a deed in lieu of foreclosure, or otherwise in connection with the default or imminent default of a Mortgage Loan.

Recognition Agreement: With respect to any Cooperative Loan, an agreement between the related Cooperative Corporation and the originator of such Mortgage Loan to establish the rights of such originator in the related Cooperative Property.

Sale Notice: The notice of Sellers' intent to sell the Mortgage Loans and REO Properties listed in Exhibit C pursuant to the terms of this Agreement and the sale procedures approved by the Bankruptcy Court for miscellaneous loan sales.

Security Agreement: With respect to any Cooperative Loan, the agreement between the owner of the related Cooperative Shares and the originator of the related Mortgage Loan Note that defines the terms of the security interest in such Cooperative Shares and the related Proprietary Lease.

Securitization Transaction: Any transaction involving either (1) a sale or other transfer of some or all of the Mortgage Loans directly or indirectly to an issuing entity in connection with an issuance of publicly offered or privately placed, rated or unrated mortgage-backed securities or (2) an issuance of publicly offered or privately placed, rated or unrated securities, the payments on which are determined primarily by reference to one or more portfolios of residential mortgage loans consisting, in whole or in part, of some or all of the Mortgage Loans.

Sellers: As defined in the introductory paragraph, and any Person succeeding thereto in accordance with the provisions of this Agreement.

Servicing Advances: All customary, reasonable and necessary "out of pocket" costs and expenses (including reasonable attorneys' fees and disbursements) incurred in the performance of the Interim Servicer's servicing obligations in connection with the Mortgage Loans.

Servicing Fees: The sum of (i) the Interim Servicing Fees (excluding Ancillary Income) payable to the Interim Servicer for the Mortgage Loans and (ii) any Ancillary Income.

Servicing File: With respect to each Mortgage Loan, any file (including imaged files) in the Interim Servicer's or a Seller's possession relating to the servicing and administration of such Mortgage Loan.

Servicing Transfer Date: The date on which the responsibility for the servicing of the Mortgage Loans included in the Mortgage Loan Package transfers from the Interim Servicer to the successor servicer, which date shall be the date that is thirty (30) calendar days after the

Closing Date, unless otherwise agreed to between the Interim Servicer and the Purchaser as provided in Section 4.01.

Stated Principal Balance: As to each Mortgage Loan, the actual principal balance of the Mortgage Loan at the Sellers' close of business on the Cut-off Date; and as to each REO Property, the actual principal balance of the Mortgage Loan with respect to such REO Property on the date immediately prior to the foreclosure, acceptance of a deed in lieu of foreclosure, or other acquisition of such REO Property by Seller in connection with the default or imminent default of such Mortgage Loan.

Tax Service Contract: A transferable contract maintained for the Mortgaged Property with a tax service provider for the purpose of obtaining current information from local taxing authorities relating to such Mortgaged Property.

Title Insurance Policy: With respect to each Mortgage, the original lender's or mortgagee policy of title insurance insuring the same, including all endorsements thereto, or, if such policy has not been issued, the preliminary report or irrevocable binder or commitment to issue the same.

## ARTICLE II

## AGREEMENT TO PURCHASE; CONVEYANCE OF MORTGAGE LOANS AND REO PROPERTIES; PURCHASE PRICE; POSSESSION OF MORTGAGE LOAN DOCUMENTS; MAINTENANCE OF SERVICING FILES; BOOKS AND RECORDS; DELIVERY OF DOCUMENTS; CLOSING CONDITIONS; COSTS

Section 2.01. Agreement to Purchase; Conveyance of Mortgage Loans and REO Properties; Purchase Price; Possession of Mortgage Loan Documents; Maintenance of Servicing Files.

(a) *Agreement to Purchase; Conveyance of Mortgage Loans and REO Properties*

In exchange for the payment of the Purchase Price on the Closing Date, the Sellers agree to sell and the Purchaser agrees to purchase, without recourse, but subject to the terms of this Agreement, on a servicing released basis, all of the right, title and interest of the Sellers in and to the Mortgage Loans and the REO Properties in the Mortgage Loan Package. The Sellers shall (i) use commercially reasonable efforts to deliver to the Purchaser a computer readable file in a format reasonably acceptable to the Purchaser containing all information in the Sellers' possession or control necessary for the Purchaser to board the Mortgage Loans on its servicing system and (ii) deliver the Mortgage Loan Documents to the Purchaser on the Closing Date. If at any time prior to the Closing Date any REO Property listed on Exhibit C becomes subject to a contract for sale, the Sellers shall have the right to remove such REO Property from the pool of REO Properties being sold pursuant to this Agreement, and upon removal of such REO Property from the pool, the Purchase Price shall be adjusted as provided in Section 2.01(c)(i)(C). Purchaser acknowledges that (x) Sellers are only obligated to deliver Mortgage Loan Documents to extent they are in Sellers' possession, (y) Sellers may not have in their possession any

Mortgage Loan Documents for some of Mortgage Loans being sold, and (z) the only evidence of ownership that Purchaser will receive with respect to such Mortgage Loans will be the Memorandum of Sale. Purchaser hereby agrees that, where this Agreement requires delivery by Sellers of any Mortgage Loan Documents for a Mortgage Loan for which the Sellers have no Mortgage Loan Documents in their possession, such delivery shall be deemed to have automatically occurred. Purchaser further agrees that neither (I) the fact that Sellers do not have any particular Mortgage Loan Document, or any Mortgage Loan Documents, for any given Mortgage Loan in their possession nor (II) the delivery by Sellers to Purchaser of the Memorandum of Sale as the sole evidence of ownership of any Mortgage Loan shall result in a reduction of the Purchase Price for that Mortgage Loan.

(b) *Purchase Price*

Subject to Section 2.05, the Purchase Price for the Mortgage Loans and REO Properties listed on the Mortgage Loan Schedule shall be Seven Hundred Six Thousand Six Hundred Seven and 00/100 Dollars ($706,607.00), subject to adjustment as provided herein, such Purchase Price being allocated to each Mortgage Loan and REO Property as provided in Exhibit C. With respect to any Mortgage Loan that is not a Defaulted Mortgage Loan as of the Cut-off Date, the Purchaser shall pay to the Sellers on the Closing Date, in addition to the Purchase Price specified, up to fifty-nine (59) days of accrued and, as of the Closing Date, unpaid interest at the Mortgage Loan Interest Rate on the Stated Principal Balance for each Mortgage Loan. For the avoidance of doubt, for any Mortgage Loan that is a Defaulted Mortgage Loan as of the Cut-off Date, Purchaser shall have no obligation to pay accrued interest on such Mortgage Loans.

(c) *Purchase Price Adjustment*

(i) The period of time after the Cut-off Date but prior to the Closing Date shall be referred to as the "Adjustment Period." The Purchase Price shall be adjusted by reducing the Purchase Price by the amount of (A) any partial principal payments received and retained by a Seller during the Adjustment Period multiplied by ________% (provided, however, that this clause (A) shall not apply to any Mortgage Loan to which clause (B) is applicable), (B) the Purchase Price related to any Mortgage Loans paid off in full during the Adjustment Period, which paid in full Mortgage Loans shall be deleted and excluded from the Mortgage Loan Package, and (C) the Purchase Price related to any REO Property that becomes subject to a contract for sale, which REO Property shall be deleted and excluded from the Mortgage Loan Package (the aggregate total of such adjustments, the "Purchase Price Adjustment").

(ii) Except for principal received and retained by a Seller resulting in a Purchase Price Adjustment described in Section 2.01(c)(i) above, with respect to each Mortgage Loan purchased, the Purchaser shall own and be entitled to receive: (A) the principal portion of all Monthly Payments received after the Cut-off Date and (B) all other payments and recoveries of principal collected on or after the Cut-off Date. Subject to the foregoing, with respect to each Mortgage Loan purchased, the Purchaser shall own and be entitled to receive all payments, whether of principal, interest, or otherwise, collected on or after the Closing Date and all payments of interest on the Mortgage Loans that are accrued and unpaid as of the Closing Date.

(d)    *Possession of Mortgage Loan Documents; Maintenance of Servicing Files*

The contents of each Servicing File in the possession of the Interim Servicer are and shall be held in trust by the Interim Servicer, for the benefit of the Purchaser as the owner thereof as of the Cut-off Date.   The Interim Servicer shall maintain the Servicing File substantially as it exists on the date of this Agreement, in accordance with this Agreement; provided, however, that the Sellers, to the extent resources are available for such purposes, shall use commercially reasonable efforts to ensure that the documents to be included in the Servicing File are complete. To the extent there is a cost associated with the Sellers' attempted recovery of missing documents, the Sellers shall provide the Purchaser with an estimate of such cost, and if the Purchaser directs the Sellers to pursue the recovery, the Purchaser shall advance or promptly reimburse the Sellers for the actual cost.   Possession of each Servicing File by the Interim Servicer is at the will of the Purchaser for the sole purpose of servicing the related Mortgage Loan during the Interim Servicing Period, and such retention and possession by the Interim Servicer is in a custodial capacity only.  Upon the sale of the Mortgage Loans, for each Mortgage Loan, the ownership of the Mortgage Loan Documents and the related Servicing Files shall vest immediately in the Purchaser, and the ownership of all records and documents with respect to the related Mortgage Loans prepared by or that come into the possession of the Sellers or the Interim Servicer shall vest immediately in the Purchaser and shall be retained and maintained by the Sellers or the Interim Servicer, in trust, at the will of the Purchaser and only in such custodial capacity.  Each of the Sellers and the Interim Servicer shall appropriately mark in its books and records the Purchaser's ownership of the Mortgage Loan and the related Mortgage Loan Documents and Servicing Files.  As of the Closing Date, each of the Sellers and the Interim Servicer shall release their respective custody of the contents of any Servicing File only in accordance with written instructions from the Purchaser or in connection with the transfer of servicing pursuant to Section 5.01.  Servicing Files for the Mortgage Loans shall be delivered to the successor servicer on or before the Servicing Transfer Date.

(e)    *Flood Zone Service Contract and Tax Service Contract*

With respect to each Mortgage Loan, the Sellers shall assign or cause to be assigned to the Purchaser any existing Flood Zone Service Contract with First American Corporation, and assign or cause to be assigned to the Purchaser any existing life of loan Tax Service Contract.

(f)    *Home Mortgage Disclosure Act*

The Sellers shall provide to the Purchaser all data and information in their possession (in form and substance reasonably acceptable to the Purchaser) required to be collected by the Originator or owner of mortgage loans under the Home Mortgage Disclosure Act, to the extent applicable.

Section 2.02.    Books and Records; Transfers of Mortgage Loans and REO Property.

The sale of each Mortgage Loan and each REO Property shall be reflected on each Seller's balance sheet and other financial statements, tax returns and business records as a sale of assets by such Seller.  Until the Closing Date, the Sellers shall be responsible for maintaining,

and shall maintain, a complete set of books and records, to the extent a complete set exists, for each Mortgage Loan and each REO Property that shall be marked clearly to reflect the ownership of each Mortgage Loan or REO Property by the Purchaser from and after the Cut-off Date.

For the purposes of this Agreement, the Sellers shall be under no obligation to deal with any person with respect to this Agreement or the Mortgage Loans unless the books and records show such person as the owner of the Mortgage Loan. The Purchaser may, subject to the terms of this Agreement, sell and transfer one or more of the Mortgage Loans. With respect to any transfer of a Mortgage Loan prior to the Servicing Transfer Date, the Purchaser also shall advise the Sellers and the Interim Servicer of the transfer. Upon receipt of notice of the transfer from Purchaser, the Sellers and the Interim Servicer shall mark its books and records to reflect the ownership of the Mortgage Loans of such assignee.

Section 2.03.    Delivery of Documents.

On the Closing Date, the Seller will, with respect to each Mortgage Loan, deliver and release the Mortgage Loan Documents to the Purchaser or its designee in accordance with this Agreement. In addition, in connection with the assignment of any MERS Designated Mortgage Loan, each Seller agrees that on or prior to the Closing Date it will cause the MERS System to indicate that the related Mortgage Loans have been assigned by such Seller to the Purchaser. Each Seller further agrees that it will not alter the information referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement.

The Purchaser shall be responsible for preparing, tendering to the Sellers for execution, and recording the Assignments of Mortgage, other than for MOM Mortgage Loans.

All recording fees and other costs associated with the preparation and recording of Assignments of Mortgage, Quitclaim Deeds, and other relevant documents with respect to transfers to the Purchaser or its designee will be borne by the Purchaser.

Except as otherwise provided in this Section 2.03, upon receipt of any Mortgage Loan Document, the receiving Seller shall deliver such document to the Purchaser or its designee. In the event that a representative of Sellers provided a report to Purchaser indicating that a Mortgage Loan Document was available for delivery to Purchaser on the Closing Date, and such document is not delivered to Purchaser on the Closing Date, Sellers will use commercially reasonable efforts to deliver such document; provided, however, that if Sellers have exercised commercially reasonable efforts to deliver such document, Sellers shall not be liable to Purchaser for failure to deliver the document.

Section 2.04.    Closing Conditions.

The closing for the purchase and sale of the Mortgage Loan Package shall take place on the Closing Date. The closing shall be either: by telephone, confirmed by letter or wire as the parties shall agree; or conducted in person, at such place as the parties may agree.

The closing for the Mortgage Loan Package shall be subject to the satisfaction of each of the following conditions:

(a) with respect to the Purchaser's obligations to close:

(i) the Sellers shall have delivered, or pursuant to Section 2.01(a) be deemed to have automatically delivered, to the Purchaser the Mortgage Loan Documents for each Mortgage Loan;

(ii) the Interim Servicer shall have delivered to the Purchaser a Quitclaim Deed for each REO Property;

(iii) all of the representations and warranties of the Sellers under this Agreement shall be true and correct as of the Closing Date (or such other date specified herein) in all material respects;

(iv) all other terms and conditions of this Agreement to be satisfied by the Sellers shall have been complied with in all material respects; and

(v) no objections to the Sale Notice were filed with the Bankruptcy Court, or if objections are filed, the objections are resolved or the Bankruptcy Court approves the sale of the REO Properties and the Mortgage Loans to Purchaser.

(b) with respect to the Sellers' obligations to close:

(i) all of the representations and warranties of the Purchaser under this Agreement shall be true and correct as of the Closing Date (or such other date specified herein) in all material respects;

(ii) all terms and conditions of this Agreement to be satisfied by the Purchaser shall have been complied with in all material respects; and

(iii) no objections to the Sale Notice were filed with the Bankruptcy Court, or if objections are filed, the objections are resolved or the Bankruptcy Court approves the sale of the REO Properties and the Mortgage Loans to Purchaser.

(c) Upon satisfaction of the foregoing conditions, the Purchaser shall pay to the Sellers on the Closing Date the Purchase Price for the Mortgage Loan Package, together with any fees payable by Purchaser that are contemplated by this Agreement by wire transfer of immediately available funds to an account or accounts designated by the Sellers in writing to the Purchaser. The Purchaser shall pay the deboarding fees set forth in Section 2.05 for the Mortgage Loans in the Mortgage Loan Package directly to the Interim Servicer on the Closing Date.

(d) Sellers agree to provide the Interim Servicer with a copy of the Memorandum of Sale on the Closing Date.

Section 2.05. Costs.

Each Seller shall pay any commissions due its salesmen, and the legal fees and expenses of its attorneys associated with the sale of the Mortgage Loans in the Mortgage Loan Package.

Additionally, to the extent any taxes are due on the real estate securing a Mortgage Loan and have not been paid by the Interim Servicer through Servicing Advances, and provided that the Purchaser has provided to the Sellers a request for such payment on a loan-level basis prior to the Closing Date, the Sellers shall be responsible for paying to the Purchaser on the Closing Date the amount of such real estate taxes due. All other costs, fees, and expenses specified herein or incurred in connection with the transfer and delivery of the Mortgage Loans or any REO Property and the transactions contemplated herein, including without limitation recording fees, MERS costs and fees, deboarding fees charged by the Interim Servicer in the amount of $25 per Mortgage Loan (such deboarding fees being exclusive of all costs and expenses of deboarding) that has not already been deboarded, realty transfer taxes, all outstanding or assessed property or other taxes with respect to any REO Property, fees for title policy endorsements and continuations, fees for recording Assignments of Mortgage or Quitclaim Deeds, if any, and the Purchaser's attorney's fees, shall be paid by the Purchaser.

The Interim Servicer may delegate its duties with one or more vendors (including any affiliate of the Interim Servicer) to perform a portion of the servicing functions on behalf of the Interim Servicer; provided, that the Interim Servicer shall remain obligated and be liable for servicing and administering the Mortgage Loans in accordance with this Agreement without diminution of such obligation and liability by virtue of the delegation of such duties, to the same extent and under the same terms and conditions as if the Interim Servicer alone were servicing and administering the Mortgage Loans. The fees and expenses of any vendor, subcontractor or subservicer that the Interim Servicer has delegated duties thereto shall be agreed between the Interim Servicer and such vendor, and neither the Purchaser nor the Sellers will have any responsibility therefor whatsoever. All actions of a vendor taken pursuant to such delegation of duties will be taken as agent of the Interim Servicer with the same force and effect as though performed by the Interim Servicer.

Section 2.06.        "As Is Where Is" Transaction.

PURCHASER HEREBY ACKNOWLEDGES AND AGREES THAT, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, THE SELLERS AND THE INTERIM SERVICER MAKE NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO ANY MATTER RELATING TO THE MORTGAGE LOANS OR REO PROPERTIES. WITHOUT IN ANY WAY LIMITING THE FOREGOING, THE SELLERS AND INTERIM SERVICER EACH HEREBY DISCLAIM ANY WARRANTY (EXPRESS OR IMPLIED) OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE MORTGAGE LOANS OR REO PROPERTIES. PURCHASER FURTHER ACKNOWLEDGES THAT PURCHASER HAS CONDUCTED AN INDEPENDENT INSPECTION AND INVESTIGATION OF THE PHYSICAL CONDITION OF ALL PORTIONS OF THE MORTGAGE LOANS, THE MORTGAGED PROPERTIES, AND REO PROPERTIES AND ALL SUCH OTHER MATTERS RELATING TO OR AFFECTING THE MORTGAGE LOANS OR REO PROPERTIES AS PURCHASER DEEMED NECESSARY OR APPROPRIATE AND THAT IN PROCEEDING WITH ITS ACQUISITION OF THE MORTGAGE LOANS AND REO PROPERTIES, PURCHASER IS DOING SO BASED SOLELY UPON SUCH INDEPENDENT INSPECTIONS AND INVESTIGATIONS. ACCORDINGLY, EXCEPT AS EXPRESSLY SET FORTH IN THE AGREEMENT, PURCHASER WILL ACCEPT THE

MORTGAGE LOANS AND REO PROPERTIES ON THE CLOSING DATE "AS IS" AND "WHERE IS".

Section 2.07. Purchase Price Adjustment.

On the Closing Date, the amount payable by the Purchaser on the Closing Date shall be reduced by an amount equal to the Purchase Price Adjustment, if any.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

Section 3.01. Sellers Representations and Warranties.

The Sellers represent and warrant to Purchaser as of the date hereof and as of the Closing Date as follows:

(a) Status, Authority, Authorization. Except as a result of the commencement of the Bankruptcy Cases, each Seller (i) has been duly incorporated and is validly existing in good standing as a corporation under the laws of its jurisdiction of incorporation, (ii) has the corporate power and authority to execute and deliver, and perform its obligations under, this Agreement, and (iii) has duly authorized its execution and delivery, and performance of its obligations under, this Agreement.

(b) No Prohibitions or Violations. Each Seller's execution and delivery of, and performance of its obligations under, this Agreement, are not prohibited by and do not violate (i) such Seller's certificate or articles of incorporation or bylaws, or (ii) any judgment or order entered against such Seller in an action or proceeding to which such Seller is a party by any court or administrative agency.

(c) No Litigation Pending. Excepting any action, suit, proceeding or investigation related to the Bankruptcy Cases, there is no action, suit, proceeding or investigation pending or, to the Sellers' knowledge, threatened against Sellers that, if determined adversely to such Seller either in any one instance or in the aggregate, would materially adversely affect the validity of this Agreement or that Seller's ability to perform its obligations under this Agreement.

(d) No Consent Required. No consent, approval, authorization or order of any court or governmental agency or body is required to be obtained, made, or given for each Seller's execution, delivery and performance of their obligations under this Agreement, other than the approval of the Bankruptcy Court.

(e) Right to Transfer. As to each Mortgage Loan and each REO Property, subject to and upon the approval of the Bankruptcy Court of this Agreement, the Sellers shall have full right to transfer and sell such Mortgage Loan and REO Property to Purchaser free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest other than Permitted Encumbrances with respect to any REO Property.

                                    

Section 3.02. Interim Servicer Representations and Warranties.

The Interim Servicer represents and warrants to Purchaser as of the date hereof and as of the Closing Date as follows:

(a) Status, Authority, Authorization; Licensing. The Interim Servicer (i) has been duly incorporated and is validly existing in good standing as a corporation under the laws of its jurisdiction of incorporation, (ii) has the corporate power and authority to execute and deliver, and perform its obligations under, this Agreement, (iii) has duly authorized its execution and delivery, and performance of its obligations under, this Agreement, (iv) is duly qualified to do business as a foreign corporation and is in good standing in each jurisdiction in which the character of the business transacted by it (after taking into account its duties hereunder) or properties owned, or leased or serviced by it requires such qualification (except where there is an applicable statutory exemption applicable to the Servicer), and (v) has all material licenses necessary to carry on its business as now being conducted (after taking into account its duties hereunder) and to perform all of its obligations hereunder and is in material compliance with state laws requiring licensing to the extent necessary to permit the servicing of the Mortgage Loans in accordance with this Agreement.

(b) No Prohibitions or Violations. The Interim Servicer's execution and delivery of, and performance of its obligations under, this Agreement, are not prohibited by and do not violate (i) the Interim Servicer's certificate of incorporation or bylaws, or (ii) any judgment or order entered against the Interim Servicer in an action or proceeding to which the Interim Servicer is a party by any court or administrative agency, and (iii) shall not constitute a breach of any mortgage, indenture, contract or other agreement to which the Interim Servicer is a party or by which the Interim Servicer may be bound. When executed and delivered, this Agreement will constitute the legal, valid and binding obligation of the Interim Servicer enforceable against it in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally and by the availability of equitable remedies.

(c) No Litigation Pending. There is no action, suit, proceeding or investigation pending or, to the Interim Servicer's knowledge, threatened against the Interim Servicer that, if determined adversely to the Interim Servicer either in any one instance or in the aggregate, would materially adversely affect the validity of this Agreement or the Interim Servicer's ability to perform its obligations under this Agreement.

(d) No Consent Required. No consent, approval, authorization or order of any court or governmental agency or body is required to be obtained, made, or given for the Interim Servicer's execution, delivery and performance of their obligations under this Agreement, other than the approval of the Bankruptcy Court.

(e) Ordinary Course of Business. The consummation of the transactions contemplated by this Agreement is in the ordinary course of business of the Interim Servicer.

(f) Compliance with MERS. The Interim Servicer is a member of MERS in good standing, and will remain a member of MERS in good standing for as long as any Mortgage Loans are registered with MERS.

(g) Ability to Service. The Interim Servicer has the facilities, procedures, and experienced personnel necessary for the sound servicing of mortgage loans of the same type as the Mortgage Loans. The Interim Servicer is in good standing to enforce and service mortgage loans in the jurisdiction wherein the Mortgaged Properties are located.

Section 3.03. Purchaser Representations and Warranties.

Purchaser represents and warrants to the Sellers as of the date hereof and as of the Closing Date as follows:

(a) Status, Authority, Authorization. Purchaser (i) has been duly incorporated or formed and is validly existing in good standing under the laws of its jurisdiction of incorporation or formation, (ii) has the power and authority to execute and deliver, and perform its obligations under, this Agreement, and (iii) has duly authorized its execution and delivery, and performance of its obligations under, this Agreement.

(b) No Prohibitions or Violations. Purchaser's execution and delivery of, and performance of its obligations under, this Agreement, are not prohibited by and do not violate (i) Purchaser's certificate of incorporation or bylaws, certificate of formation, limited liability company agreement, or other organic documents, as applicable, or (ii) any judgment or order entered against Purchaser in an action or proceeding to which Purchaser is a party by any court or administrative agency.

(c) No Litigation Pending. There is no action, suit, proceeding or investigation pending or, to the best of Purchaser's knowledge, threatened against Purchaser that, if determined adversely to Purchaser either in any one instance or in the aggregate, would materially adversely affect the validity of this Agreement or Purchaser's ability to perform its obligations under this Agreement.

(d) No Consent Required. No consent, approval, authorization or order of any court or governmental agency or body is required to be obtained, made, or given for the Purchaser's execution, delivery and performance of its obligations under this Agreement.

(e) Funding. Purchaser has all funds in cash necessary to consummate the Sale.

## ARTICLE IV

## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS DURING THE INTERIM SERVICING PERIOD

Section 4.01. Interim Servicer to Act as Servicer.

The Mortgage Loans are being sold by the Sellers to the Purchaser on a servicing released basis. During the Interim Servicing Period, the Interim Servicer, as an independent

contractor, shall service and administer the Mortgage Loans on behalf of the Purchaser on an actual/actual basis and the Interim Servicer shall have full power and authority to do any and all things in connection with such servicing and administration that the Interim Servicer may deem necessary or desirable, consistent with the terms of this Agreement and with Accepted Practices in consideration of payment of the Servicing Fee; provided, however, that the servicing activities of the Interim Servicer hereunder shall be restricted to such minimal servicing and collection activities as are necessary for preserving and administering the Mortgage Loans on a temporary basis, it being agreed and understood that the servicing of the Mortgage Loans is intended to be transferred to the Purchaser or the Purchaser's designee on or before the Servicing Transfer Date. The Interim Servicer will advise Purchaser from time to time of such servicing actions, including, without limitation, filing of notices of default, that the Interim Servicer believes should be taken with respect to the Mortgage Loans and will take such actions to the extent authorized to do so by the Purchaser. In the event that servicing of the Mortgage Loans is not transferred to the Purchaser or the Purchaser's designee on or before the forty-fifth (45th) calendar day following the Closing Date, the Interim Servicer shall have no further duties, obligations or responsibilities for servicing the Mortgage Loans, unless the Interim Servicer and the Purchaser have entered into a mutually agreeable servicing agreement to govern the servicing of the Mortgage Loans thereafter.

Section 4.02.    Collection of Mortgage Loan Payments.

Continuously from the Closing Date until the Servicing Transfer Date, in accordance with this Agreement and Accepted Practices, the Interim Servicer shall proceed diligently to collect all payments due under each of the Mortgage Loans when the same shall become due and payable and shall ascertain and estimate all other charges that will become due and payable with respect to the Mortgage Loan and the Mortgaged Property, to the end that the installments payable by the Mortgagors will be sufficient to pay such charges as and when they become due and payable. The Interim Servicer shall remit to the Purchaser on or before the fifth (5th) Business Day following the end of each month during the Interim Servicing Period any and all amounts received on account of the Mortgage Loans during the Interim Servicing Period, less the Servicing Fee, including, without limitation, payments of principal and interest and insurance proceeds, such remittance to be by wire transfer in the case of cash received and by overnight delivery service with respect to checks and other instruments. Such remittance shall be accompanied by a report in form and detail reasonably satisfactory to Purchaser setting forth the source and application of all amounts received. As compensation for its services hereunder, the Interim Servicer shall be entitled to retain all Servicing Fees for the Mortgage Loans serviced hereunder. For the avoidance of doubt, if the amounts received on account of the Mortgage Loans after the Cut-off Date are insufficient to pay the Servicing Fee to the Interim Servicer, all such amounts received by the Interim Servicer shall be kept by the Interim Servicer as partial satisfaction of the Servicing Fee, and the Purchaser shall pay the balance of the Servicing Fee to the Interim Servicer.

Section 4.03.    Disbursement of Mortgage Loan Proceeds.

Continuously from the date hereof until the Servicing Transfer Date, in accordance with this Agreement and Accepted Practices, the Interim Servicer shall proceed diligently to disburse all escrow amounts due for disbursement, if applicable, under each of the Mortgage Loans when

the same shall have been requested or are otherwise due for disbursement under the terms of such Mortgage Loans.

## ARTICLE V

## TRANSFER OF SERVICING

Section 5.01. Assumption of Responsibilities at Transfer Date.

On the Servicing Transfer Date, the Purchaser, or its designee, shall assume all servicing responsibilities related to, and the Interim Servicer will cease all servicing responsibilities (except as expressly set forth herein) related to, the Mortgage Loans. On or prior to the Servicing Transfer Date (or in the case of (c), (d) and (e) below, within three (3) Business Days from and after the Servicing Transfer Date or by such other date as may be specified in this Agreement or as may be otherwise agreed), the Interim Servicer will take such steps in accordance with Accepted Practices as may be necessary or appropriate to effectuate and evidence the transfer of the servicing of the Mortgage Loans to the Purchaser, or its designee, including but not limited to the following:

(a) Notice to the Mortgagors. At least fifteen (15) calendar days prior to the Servicing Transfer Date, the Interim Servicer shall mail to each Mortgagor a letter advising the Mortgagor of the transfer of the servicing of the related Mortgage Loan to the Purchaser, or its designee. The Interim Servicer shall provide the Purchaser with copies of all such related notices no later than thirty (30) calendar days from and after the Servicing Transfer Date.

(b) Notice to Insurance Companies. The Interim Servicer shall transmit to the applicable insurance companies and/or their agents, notification of the transfer of the servicing of the Mortgage Loans to the Purchaser, or its designee, and instructions to deliver all insurance statements to the Purchaser, or its designee, from and after the Servicing Transfer Date. The Interim Servicer shall provide the Purchaser with copies of all such notifications no later than fifteen (15) calendar days from and after the Servicing Transfer Date.

(c) Delivery of Servicing Records. The Interim Servicer shall forward to the Purchaser, or its designee, all servicing records and the Servicing Files in the Interim Servicer's possession relating to each Mortgage Loan, and shall make any such records available to the Purchaser, or its designee, during normal business hours.

(d) Escrow Deposits and Interest Reserves. Any funds held by the Interim Servicer belonging to Mortgagors to be disbursed in accordance with the corresponding Mortgage Loan Documents and remaining on deposit as of the Servicing Transfer Date shall be turned over to Purchaser. In addition, there exist with respect to certain Mortgage Loans as-yet unfunded interest reserves designated for the making of monthly interest payments in accordance with the corresponding Mortgage Loan Documents. Any such funds remaining on deposit as of the Servicing Transfer Date shall be turned over to Purchaser.

(e) Payments Received and Disbursements Made Prior to Servicing Transfer Date. Prior to the Servicing Transfer Date, all payments received and disbursements made by the

Interim Servicer on each Mortgage Loan shall be properly applied by the Interim Servicer to or against the account of the particular Mortgagor.

(f) Payments Received and Disbursements Made After the Servicing Transfer Date. The amount of any Monthly Payments for the Mortgage Loans received by Interim Servicer after the Servicing Transfer Date shall be forwarded to the Purchaser by wire transfer or overnight mail within two (2) Business Days of receipt. The Interim Servicer shall notify the Purchaser of the particulars of the payment, which notification requirement shall be satisfied if the Interim Servicer forwards with its payment sufficient information to permit appropriate processing of the payment to the Purchaser. The Interim Servicer shall have no obligation to disburse funds with respect to any Mortgage Loan on or after the Servicing Transfer Date.

(g) Misapplied Payments. Misapplied payments (including without limitation payments returned for insufficient funds) on Mortgage Loans shall be processed as follows: (i) all parties shall cooperate in correcting misapplication errors; (ii) the party receiving notice of a misapplied payment occurring prior to the Servicing Transfer Date and discovered after the Servicing Transfer Date shall immediately notify the other party; (iii) if a misapplied payment occurred prior to the Servicing Transfer Date cannot be identified and said misapplied payment has resulted in a shortage in a custodial account or escrow account, the appropriate Seller and the Interim Servicer shall be liable for the amount of such shortage; the appropriate Seller and/or the Interim Servicer shall reimburse the Purchaser for the amount of such shortage within thirty (30) calendar days after the receipt of written demand thereof from the Purchaser; (iv) if a misapplied payment that occurred prior to the Servicing Transfer Date has created an improper Purchase Price or Purchase Price Adjustment as the result of an inaccurate outstanding principal balance, the party with notice of such misapplied payment shall promptly inform the other party and a wire transfer or check shall be issued to the party shorted by the improper payment application within ten (10) Business Days after notice thereof by the other party; and (v) any wire transfer or check issued under the provisions of this paragraph shall be accompanied by a statement indicating the corresponding Seller and/or the Purchaser Mortgage Loan identification number and an explanation of the allocation of any such payments or by facsimile.

(h) Reconciliation. The Interim Servicer shall, on or before the Servicing Transfer Date, reconcile principal balances and make any monetary adjustments for the Mortgage Loans as agreed to by Sellers and Purchaser. Any such monetary adjustments will be transferred among, the Interim Servicer, the Sellers, and the Purchaser as appropriate.

(i) IRS Forms. The Interim Servicer shall file all IRS forms each is required to file in relation to the servicing and/or ownership of the Mortgage Loans on or before the Servicing Transfer Date.

(j) Insurance Policies. For thirty (30) calendar days after the Servicing Transfer Date, the Interim Servicer shall deliver such insurance policies or renewals and invoices as it may receive with respect to the Mortgage Loans to Purchaser within five (5) Business Days of its receipt of same, and thereafter the Interim Servicer shall exercise commercially reasonable efforts to deliver such insurance policies or renewals and invoices as it may receive with respect to the Mortgage Loans to Purchaser within a reasonable time of its receipt of same.

(k)     Transfer of Servicing.  On the Servicing Transfer Date, the Interim Servicer shall transfer servicing of the related Mortgage Loans to the Purchaser or its designee pursuant to the terms of this Agreement and the procedures reasonably agreed to by the Interim Servicer, the Sellers, the Purchaser and the Purchaser's designee, if any.

(l)     Reimbursement for Servicing Advances.  Following the Servicing Transfer Date, the Interim Servicer shall be reimbursed by the Purchaser for any unreimbursed and properly made Servicing Advances made or incurred (including, without limitation, professional fees that have been incurred for services rendered but not yet billed for) after the Cut-off Date with respect to any related Mortgage Loan; provided that the Purchaser shall not be liable for any such Servicing Advances to the extent the Interim Servicer's invoice (and detail of such Servicing Advances) is received by the Purchaser more than sixty (60) calendar days following the Servicing Transfer Date.  Such reimbursement shall be paid by the Purchaser or its designee to the Interim Servicer following the delivery to the Purchaser of invoice(s), in form and substance in accordance with Accepted Practices, including, but not limited to, reasonable detail of the Servicing Advances or other evidence of such amounts.  For the avoidance of doubt, Purchaser shall not be required to make any reimbursements or any other type of payment whatsoever in respect of Servicing Advances that were made or incurred on or prior to the Cut-off Date.  The Sellers are responsible for reimbursing the Interim Servicer for any unreimbursed Servicing Advances made or incurred (including, without limitation, professional fees that have been incurred for services rendered but not yet billed for) prior to or on the Cut-off Date with respect to any related Mortgage Loan.  Such reimbursement shall be paid by the Sellers to the Interim Servicer following the delivery to the Sellers of invoice(s), in form and substance in accordance with Accepted Practices, including, but not limited to, reasonable detail of the Servicing Advances or other evidence of such amounts.  The Interim Servicer is not obligated to make any Servicing Advances, and shall make Servicing Advances only to the extent it reasonably believes that it will be promptly reimbursed for such Servicing Advances.  Any Servicing Advances made by the Interim Servicer shall be restricted to such minimal Servicing Advances as are necessary for preserving and administering the Mortgage Loans on a temporary basis, it being agreed and understood that the servicing of the Mortgage Loans is intended to be transferred to the Purchaser or the Purchaser's designee on or before the Servicing Transfer Date. This paragraph shall survive the termination of this Agreement.

## ARTICLE VI

## SELLERS TO COOPERATE

Section 6.01.     Provision of Information; Right to Examine Sellers Records.

During the term of this Agreement, the Sellers shall furnish to the Purchaser such periodic, special, or other reports or information as the Purchaser may reasonably request, and copies or originals of any documents contained in the Servicing File for each Mortgage Loan provided for herein.  All periodic, special or other reports or information not provided for in this Agreement as shall be necessary, reasonable, or appropriate with respect to the Purchaser or any regulatory agency will be provided at the Purchaser's expense after delivery to Purchaser of invoices with reasonable detail or other evidence of such amounts.  All such reports, documents or information shall be provided by and in accordance with all reasonable instructions and