directions that the Purchaser may give. In addition, during the term of this Agreement, the appropriate Seller shall provide to the OCC and to comparable regulatory authorities supervising the Purchaser or any of Purchaser's assigns (including beneficial owners of securities issued in Securitization Transactions backed by the Mortgage Loans) and the examiners and supervisory agents of the OCC and such other authorities, access to the documentation required by applicable regulations of the OCC and other authorities with respect to the Mortgage Loans. Such access shall be afforded without charge, but only upon reasonable and prior written request and during normal business hours at the offices designated by the Sellers.

Each Seller shall execute and deliver all such instruments and take all such action as the Purchaser may reasonably request from time to time, in order to effectuate the purposes and to carry out the terms of this Agreement.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

Section 7.01.     No Recourse.

The Purchaser agrees that the obligations of the Sellers and the Interim Servicer to the Purchaser under this Agreement are non-recourse obligations of the Sellers and the Interim Servicer and, except to the extent set forth in this Article VII, the Purchaser shall have no recourse to the Sellers or to the Interim Servicer for any obligations of the Sellers or the Interim Servicer under this Agreement.

Section 7.02.     Amendment.

This Agreement may be amended from time to time by written agreement signed by the Sellers, the Interim Servicer and the Purchaser.

Section 7.03.     Survival.

The respective representations and warranties of the Parties contained herein and in any other agreement, certificate, instrument or other document associated therewith or herewith shall not survive and shall expire upon the closing on the Closing Date, except for the representations and warranties of the Interim Servicer in Section 3.02, which shall expire on the Servicing Transfer Date.

Section 7.04.     Governing Law.

THIS AGREEMENT SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH (A) THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO RULES GOVERNING THE CONFLICT OF LAWS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK) AND, (B) TO THE EXTENT APPLICABLE, THE BANKRUPTCY CODE.

Section 7.05. Venue and Retention of Jurisdiction.

(a) WITHOUT LIMITING ANY PARTY'S RIGHT TO APPEAL ANY ORDER OF THE BANKRUPTCY COURT, (I) THE BANKRUPTCY COURT SHALL RETAIN EXCLUSIVE JURISDICTION TO ENFORCE THE TERMS OF THIS AGREEMENT AND TO DECIDE ANY CLAIMS OR DISPUTES THAT MAY ARISE OR RESULT FROM, OR BE CONNECTED WITH, THIS AGREEMENT, ANY BREACH OR DEFAULT HEREUNDER, OR THE TRANSACTIONS CONTEMPLATED HEREBY, AND (II) ANY AND ALL PROCEEDINGS RELATED TO THE FOREGOING SHALL BE FILED AND MAINTAINED ONLY IN THE BANKRUPTCY COURT, AND THE PARTIES HEREBY CONSENT TO AND SUBMIT TO THE JURISDICTION AND VENUE OF THE BANKRUPTCY COURT AND SHALL RECEIVE NOTICES AT SUCH LOCATIONS AS INDICATED IN SECTION 7.06 HEREOF; PROVIDED, HOWEVER, THAT IF THE BANKRUPTCY CASES HAVE CLOSED, THE PARTIES AGREE TO UNCONDITIONALLY AND IRREVOCABLY SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE SITTING IN NEW CASTLE COUNTY OR THE STATE COURTS OF THE STATE OF DELAWARE SITTING IN NEW CASTLE COUNTY AND ANY APPELLATE COURT FROM ANY COURT THEREOF, FOR THE RESOLUTION OF ANY SUCH CLAIM OR DISPUTE. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH DISPUTE BROUGHT IN SUCH COURT OR ANY DEFENSE OF INCONVENIENT FORUM FOR THE MAINTENANCE OF SUCH DISPUTE. EACH OF THE PARTIES HERETO AGREES THAT A JUDGMENT IN ANY SUCH DISPUTE MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

(b) EACH OF THE PARTIES HERETO HEREBY CONSENTS TO PROCESS BEING SERVED BY ANY PARTY OF THIS AGREEMENT IN ANY SUIT, ACTION OR PROCEEDING BY DELIVERY OF A COPY THEREOF IN ACCORDANCE WITH THE PROVISIONS OF SECTION 7.06 HEREOF.

(c) EACH OF THE SELLERS, THE INTERIM SERVICER AND THE PURCHASER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY AND ALL RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OR ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT, OR ANY OTHER DOCUMENTS AND INSTRUMENTS EXECUTED IN CONNECTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN), OR ACTIONS OF THE SELLERS OR THE PURCHASER. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PURCHASER TO ENTER INTO THIS AGREEMENT.

Section 7.06.    Notices.

All demands, notices and communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered at or delivered by overnight courier as follows:

(a)    if to the Sellers:

c/o American Home Mortgage Corp.
538 Broadhollow Road
Melville, New York 11747
Attention: Damian Voulo
Phone: (631) 622-3273
Fax: (206) 339-2781

or such other address as may hereafter be furnished to the Purchaser and the Interim Servicer in writing by the Sellers in accordance with this Section 7.06;

(b)    if to the Interim Servicer:

American Home Mortgage Servicing Inc.
1525 S. Beltline Road
Coppell, Texas 75019
Attention: Robert J. Love
Phone: (469) 645-3082
Fax: (877) 718-7805

or such other address as may hereafter be furnished to the Purchaser and the Sellers in writing by the Interim Servicer in accordance with this Section 7.06;

(c)    if to the Purchaser:

**West Coast Servicing, Inc.**
**17011 Beach Blvd.**
**Suite 300**
**Huntington Beach, CA  92647**
**Attention:  Glenn Ohno, Secretary**
**Phone:  (714) 596 6333 ext. 16**
**Fax:  (714) 596 6331**

or such other address as may hereafter be furnished to the Sellers and the Interim Servicer in writing by the Purchaser in accordance with this Section 7.06.

Section 7.07.    Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be held invalid for any reason whatsoever, then such covenants, agreements, provisions or

terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement.

Section 7.08.    Relationship of Parties.

Nothing herein contained shall be deemed or construed to create a partnership or joint venture between the parties hereto and the services of the Sellers and the Interim Servicer shall be rendered as an independent contractor and not as agent for the Purchaser.

Section 7.09.    Successors and Assigns.

This Agreement shall bind and inure to the benefit of and be enforceable by the Sellers, Interim Servicer and the Purchaser and the respective permitted successors and assigns of the Sellers, the Interim Servicer and the Purchaser. After the Closing Date, this Agreement shall not be assigned, pledged or hypothecated by any of the Purchaser, the Sellers, or the Interim Servicer to a third party without the prior written consent of the Purchaser, the Sellers, or the Interim Servicer, as applicable, which consent may be withheld by the Purchaser in its sole discretion.

Section 7.10.    Further Agreements.

The Purchaser, the Sellers and the Interim Servicer each agree to execute and deliver to the other such additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

Section 7.11.    Confidential Information.

(a)    The Purchaser, the Sellers, and the Interim Servicer hereby acknowledge that certain information including, without limitation, the Mortgage Loans, is confidential, sensitive, or proprietary in nature. Any of the Purchaser, the Sellers, or the Interim Servicer may also designate information disclosed in connection with the transaction contemplated by this Agreement as "Confidential Information" by written notice to the other party at the time of initial disclosure of such information. Each of the Purchaser, the Sellers, and the Interim Servicer agrees that it shall use such Confidential Information solely for the purpose of fulfilling the terms and conditions of this Agreement and shall disclose such Confidential Information only to its affiliates and its affiliates' directors, officers, employees, agents or advisors (including, without limitation, attorneys, accountants, consultants, bankers and financial advisors), controlling persons (collectively, its "Representatives") to the extent reasonably necessary or expedient for the performance of its obligations under this Agreement. Such Representatives shall use commercially reasonable safeguards to maintain the confidentiality of such Confidential Information and to prevent its disclosure to any person not authorized to receive such information.

(b)    The term "Confidential Information" shall mean this Agreement and all proprietary information, data, trade secrets, business information and other information of any kind whatsoever that: (a) a party hereto ("Discloser") discloses, in writing, to the other party ("Recipient") or to which Recipient obtains access in connection with the negotiation and performance of this Agreement, and that (b) relates to: (i) a party hereto or its customers, or (ii)

third-party vendors or licensors who have made confidential or proprietary information available to a party hereto. Confidential Information shall include Customer Information (as defined below).

(c) The Sellers and the Interim Servicer acknowledge that the Purchaser has a responsibility to its customers to keep information about its customers and their accounts ("Customer Information") strictly confidential. In addition to the other requirements set forth in this Section 7.11 regarding Confidential Information, Customer Information shall also be subject to the additional restrictions set forth in this Subsection. The Sellers and the Interim Servicer shall not disclose or use Customer Information other than to carry out the purposes for which such Customer Information has been disclosed to the Sellers or the Interim Servicer. The Sellers and the Interim Servicer shall not disclose any Customer Information other than on a "need to know" basis and then only to: (a) affiliates of the Purchaser; (b) its and its affiliates' Representatives; (c) affiliates of the Sellers and the Interim Servicer provided that such affiliates shall be restricted in use and redisclosure of the Customer Information to the same extent as the Sellers or the Interim Servicer; (d) to subcontractors provided that such subcontractors shall have entered into a confidentiality agreement no less restrictive than the terms hereof; (e) to independent contractors, agents, experts and consultants hired or engaged by the Purchaser, provided that all such persons are subject to a confidentiality agreement that shall be no less restrictive than the provisions of this Section; or (f) pursuant to the exceptions set forth in 15 U.S.C. § 6802(e) and accompanying regulations that disclosures are made in the ordinary course of business. In addition, each party further agrees that any Customer Information transmitted electronically by either party must be encrypted. The restrictions set forth herein shall apply during the term and after the termination of this Agreement.

(d) Each of the Purchaser, the Sellers and the Interim Servicer, as the Recipient, hereby agrees on behalf of itself and its employees, officers, affiliates and subcontractors that it will not disclose Confidential Information to any person for any reason whatsoever, other than on a "need to know basis" and then only to: (a) its employees and officers; (b) subcontractors and other third parties specifically permitted under this Agreement, provided that all such persons agree to the provisions of this Agreement applicable to such persons or are subject to a confidentiality agreement that shall be no less restrictive than the provisions of this Section 7.11; (c) independent contractors, agents, experts and consultants hired or engaged by the Purchaser, provided that all such persons are subject to a confidentiality agreement that shall be no less restrictive than the provisions of this Section 7.11; and (d) as required by law or regulation, including in connection with the Bankruptcy Cases, or as otherwise permitted by this Agreement, either during the term of this Agreement or after the termination or expiration of this Agreement. Prior to any disclosure of Confidential Information as required by law or regulation, the party making such disclosure (except as may be prohibited by law or regulations) shall use its commercially reasonable efforts to: (i) notify the other party of any actual or threatened legal compulsion of such disclosure, and any actual or asserted legal obligation of disclosure promptly upon learning thereof, and (ii) cooperate with the other party's (and at the other party's sole expense) reasonable, lawful efforts to resist, limit or delay disclosure.

(e) Upon the termination or expiration of this Agreement, the Recipient shall (except as may be required to be maintained by law or regulation) as promptly as practicable destroy or return, in its sole discretion, all Confidential Information, including Customer Information, in the

possession of the Recipient or in the possession of any third party over which Recipient has or may exercise control to the extent such Confidential Information is not required for legal and compliance, audit or record keeping purposes, including compliance with any bona fide records retention policy; provided that Customer Information that is also Customer Information of the Recipient (independent of the transactions contemplated by this Agreement) shall not be required to be returned or destroyed.

(f)     With the exception of the obligations related to Customer Information, the obligations of confidentiality in this Section 7.11 shall not apply to any information that any of the Purchaser, the Sellers, or the Interim Servicer rightfully has in its possession when disclosed to it by the other party, information that any of the Purchaser, the Sellers or the Interim Servicer independently develops, information that is or becomes known to the public other than by breach of this Section 7.11, or information rightfully received by any of the Purchaser, the Sellers or the Interim Servicer from a third party without the obligation of confidentiality.

(g)     None of the Purchaser, the Sellers, nor the Interim Servicer shall issue any media releases, public announcements and public disclosures relating to this Agreement or use the name or logo of the other party, including, without limitation, for or in connection with any promotional or marketing material, or customer lists; provided, however, that this restriction shall not apply to any disclosure required in connection with the Bankruptcy Cases or by legal, accounting or regulatory requirements beyond the reasonable control of such party.

(h)     Notwithstanding anything set forth to the contrary in this Agreement, subject to Applicable Law, the provisions of Section 7.11 (other than Section 7.11(g)) shall expire and be of no further force and effect on the Closing Date.

Section 7.12.     Information Security and Privacy.

The Sellers and the Interim Servicer acknowledge that the Purchaser is required to comply with the information security standards required by the Gramm-Leach-Bliley Act (15 U.S.C. 6801, 6805(b)(1)), as amended, and the regulations issued thereunder (12 C.F.R. Part 40) (collectively, the "GLB Act") and with other statutory and regulatory requirements (collectively, "Privacy Laws") as well as its internal information security program for information protection. If applicable, the Sellers and the Interim Servicer shall make commercially reasonable efforts to assist the Purchaser to so comply and to conform to its own policies for information protection with applicable Privacy Laws, as amended from time to time. At the Purchaser's request, the Sellers and the Interim Servicer shall make commercially reasonable modifications to their information security program or to the procedures and practices thereunder to conform to the Purchaser's security requirements as they exist from time to time.

(a)     Within ten (10) calendar days of the Purchaser's written request, the Sellers and the Interim Servicer shall deliver to the Purchaser's information protection department a copy of its written information security program. The program shall be designed to:

(i)     Ensure the security, integrity and confidentiality of Confidential Information;

(ii) Protect against any anticipated threats or hazards to the security or integrity of such Confidential Information;

(iii) Protect against unauthorized access to or use of such Confidential Information that could result in substantial harm or inconvenience to the person that is the subject of such information; and

(iv) Ensure the proper disposal of such Confidential Information.

The Interim Servicer confirms that it has complied with and is in compliance with all applicable Privacy Laws.

Section 7.13.    Counterparts.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

Section 7.14.    Exhibits.

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

Section 7.15.    General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a) the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with GAAP;

(c) references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d) a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e) the words "herein," "hereof," "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f) the term "include" or "including" shall mean without limitation by reason of enumeration.

Section 7.16.   Reproduction of Documents.

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications that may hereafter be executed, (b) documents received by any party at the closing, and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

*{Signature Page Follows}*

IN WITNESS WHEREOF, the Sellers, the Purchaser, and the Interim Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

**G2 Capital Group LLC**
Purchaser

By: ______________________________

Name: Greg Graeber

Title: Managing Member

**AMERICAN HOME MORTGAGE CORP.**
Seller

By: ______________________________

Name: ______________________________

Title: ______________________________

**AMERICAN HOME MORTGAGE SERVICING, INC.**
Interim Servicer

By: ______________________________

Name: ______________________________

Title: ______________________________

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**
Seller

By: ______________________________

Name: ______________________________

Title: ______________________________

IN WITNESS WHEREOF, the Sellers, the Purchaser, and the Interim Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

**G2 Capital Group LLC**
Purchaser

By: [signature]

Name: Greg Graeber

Title: Managing Member

**AMERICAN HOME MORTGAGE CORP.**
Seller

By: [signature]

Name: Kevin Nystrom

Title: Chief Restructuring Officer

**AMERICAN HOME MORTGAGE SERVICING, INC.**
Interim Servicer

By: ______________________

Name: ______________________

Title: ______________________

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**
Seller

By: [signature]

Name: Kevin Nystrom

Title: Chief Restructuring Officer

IN WITNESS WHEREOF, the Sellers, the Purchaser, and the Interim Servicer have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the day and year first above written.

**G2 Capital Group LLC**
Purchaser

By: ______________________

Name: Greg Graeber

Title: Managing Member

**AMERICAN HOME MORTGAGE CORP.**
Seller

By: ______________________

Name: ______________________

Title: ______________________

**AMERICAN HOME MORTGAGE SERVICING, INC.**
Interim Servicer

By: ______________________

Name: Jordan Dorchuck

Title: EVP, CLO

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**
Seller

By: ______________________

Name: ______________________

Title: ______________________

EXHIBIT A

MORTGAGE LOAN DOCUMENTS (TO THE EXTENT IN SELLERS' POSSESSION)

1. The original Mortgage Loan Note endorsed "Pay to the order of **WEST COAST SERVICING, INC.**, without recourse" and signed in the name of the Seller by an authorized officer (provided that, in the event that the Mortgage Loan was acquired by the Seller in a merger, the signature must be substantially in the following form: "[Seller], successor by merger to [name of predecessor]"; and in the event that the Mortgage Loan was acquired or originated by the Seller while doing business under another name, the signature must be substantially in the following form: "[Seller], formerly known as [previous name]"); or a lost note affidavit, in the form attached to this Exhibit A, with a copy of the original Mortgage Loan Note attached thereto.

2. The original Mortgage, with evidence of recording thereon, or, if unavailable, documentation reflecting the tender of such original Mortgage for recording that may include (i) in the case of a delay caused by the public recording office, an Officer's Certificate stating that such Mortgage has been dispatched to the appropriate public recording office for recordation and that the original recorded Mortgage or a copy of such Mortgage certified by such public recording office to be a true and complete copy of the original recorded Mortgage will be promptly delivered to the Purchaser or the Purchaser's designee (as Purchaser shall direct) upon receipt thereof by the Seller; or (ii) in the case of a Mortgage where a public recording office retains the original recorded Mortgage or in the case where a Mortgage is lost after recordation in a public recording office, a copy of such Mortgage certified by such public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded Mortgage.

3. The original of any document sent for recordation in connection with all assumption, modification, consolidation or extension agreements, with evidence of recording thereon, or, if unavailable, documentation reflecting the tender of such original document for recording that may include (i) in the case of a delay caused by the public recording office, an Officer's Certificate stating that such document has been dispatched to the appropriate public recording office for recordation and that the original recorded document or a copy of such document certified by such public recording office to be a true and complete copy of the original recorded document will be promptly delivered to the Purchaser or Purchaser's designee (as Purchaser shall direct) upon receipt thereof by the Seller; or (ii) in the case of a document where a public recording office retains the original recorded document or in the case where a document is lost after recordation in a public recording office, a copy of such document certified by such public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded document.

4.  The original of any Assignment of Mortgage to MERS or in blank for each Mortgage Loan (other than MOM Mortgage Loans), originals or certified true copies thereof sent for recordation with evidence of recording thereon, or, if unavailable, documentation reflecting the tender of such original document for recording that may include (i) in the case of a delay caused by the public recording office, an Officer's Certificate stating that such document has been dispatched to the appropriate public recording office for recordation and that the original recorded document or a copy of such document certified by such public recording office to be a true and complete copy of the original recorded document will be promptly delivered to the Purchaser or Purchaser's designee (as Purchaser shall direct) upon receipt thereof by the Seller; or (ii) in the case of a document where a public recording office retains the original recorded document or in the case where a document is lost after recordation in a public recording office, a copy of such document certified by such public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded document. With respect to each Mortgage Loan (including MOM Mortgage Loans) the Seller shall take all actions as are reasonably necessary to cause the Purchaser or its designee to be shown as the owner of the related Mortgage Loan on the records of MERS for purposes of the system of recording transfers of beneficial ownership of mortgages maintained by MERS at the sale cost and expense of the Purchaser.

5.  The original of any document sent for recordation in connection with all intervening assignments of the Mortgage, if any, with evidence of recording thereon, or, if unavailable, documentation reflecting the tender of such original document for recording that may include (i) in the case of a delay caused by the public recording office, an Officer's Certificate stating that such document has been dispatched to the appropriate public recording office for recordation and that the original recorded document or a copy of such document certified by such public recording office to be a true and complete copy of the original recorded document will be promptly delivered to the Purchaser or Purchaser's designee (as Purchaser shall direct) upon receipt thereof by the Seller; or (ii) in the case of a document where a public recording office retains the original recorded document or in the case where a document is lost after recordation in a public recording office, a copy of such document certified by such public recording office or by the title insurance company that issued the title policy to be a true and complete copy of the original recorded document.

6.  The original lender's or mortgagee's policy of title insurance or, if such policy has not been issued, the preliminary report or irrevocable binder or commitment to issue the same.

7.  Any security agreement, chattel mortgage or equivalent executed in connection with the Mortgage.

8.  For each Mortgage Loan that is secured by a residential long-term lease, if any, a copy of the lease with evidence of recording indicated thereon, or, if the lease is

in the process of being recorded, a photocopy of the lease, certified by an officer of the respective prior owner of such Mortgage Loan or by the applicable title insurance company, closing/settlement/escrow agent or company or closing attorney to be a true and correct copy of the lease transmitted for recordation.

9. All other documents held by Sellers with respect to each Mortgage Loan as part of the mortgage loan file.

10. Payment history for any Mortgage Loan that has been closed for more than ninety (90) calendar days.

11. Fully executed power of attorney, if applicable.

12. With respect to any Cooperative Loan, the applicable Cooperative Loan Documents.

FORM OF LOST NOTE AFFIDAVIT

# AFFIDAVIT OF LOST NOTE

STATE OF NEW YORK

COUNTY OF SUFFOLK

I, Eileen Wanerka, an Assistant Vice President of American Home Mortgage Corp., personally appeared before me, ___________________, a Notary Public in and for the County of Suffolk, in the State of New York, and made the following oath before me in this County:

1. ___________________ originated a loan evidenced by a certain Note dated ___________________ executed by _________________________________ (the "Borrower(s)") in the amount of $________________and payable to ________________________.

2. The Note secures a Mortgage dated _________________ from the (Borrower(s)) to ___________________________.

3. The original Note has been lost and after diligent search has not been found or recovered by American Home Mortgage Corp. A copy of the Note is attached as Exhibit A.

4. American Home Mortgage Corp. represents and warrants that it has not previously hypothecated, transferred, sold, pledged or assigned the Note.

Dated: ____________________

American Home Mortgage Corp.

___________________________
By: Eileen Wanerka
Its: Assistant Vice President

Sworn to before me this
____ **day of** ______________, **2010**

___________________________
Notary Public

My Commission Expires: _______________________

EXHIBIT B

FORM OF MEMORANDUM OF SALE

CLOSING DATE: [CLOSING DATE]

This Memorandum of Sale (this "Memorandum"), dated as of the Closing Date referred to above, confirms the sale by American Home Mortgage Corp., a New York corporation, and American Home Mortgage Acceptance, Inc., a Maryland corporation (collectively, the "Sellers") to G2 CAPITAL GROUP LLC., a Colorado Limited Liability Corporation, (the "Purchaser"), and the purchase by the Purchaser from the Sellers, of (i) the first and second lien adjustable and fixed rate residential mortgage loans on a servicing released basis described on the Mortgage Loan Schedule attached hereto as Schedule I (the "Mortgage Loans") and (ii) real estate described on the Mortgage Loan Schedule attached hereto as Schedule I (the "REO Property"), pursuant to the terms of the Mortgage Loan Sale and Interim Servicing Agreement (the "Agreement"), dated as of April 9, 2010, by and among the Purchaser, the Sellers and the Interim Servicer.

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Sellers do hereby bargain, sell, convey, assign and transfer to Purchaser without recourse, except as provided in the Agreement, and on a servicing released basis, all right, title and interest of the Sellers in and to each of the Mortgage Loans, together with all Mortgage Loan Documents and documents maintained as part of the related Servicing Files, all payments of principal (except for principal received and retained by a Seller resulting in a Purchase Price Adjustment) received on the Mortgage Loans after the Cut-off Date, all payments of interest received on the Mortgage Loans after the Closing Date, all other unscheduled collections collected in respect of the Mortgage Loans after the Cut-off Date, each REO Property, and all proceeds of the foregoing, subject, however, to the rights of the Sellers under the Agreement.

The Sellers hereby acknowledge receipt of the Purchase Price with respect to the Mortgage Loans and REO Property.

The Sellers have delivered to the Purchaser or its designee on the date hereof the Mortgage Loan Documents with respect to each Mortgage Loan that are in Sellers' possession.

The Sellers hereby acknowledge their duties and obligations under the Agreement with respect to the Mortgage Loans and REO Property.

Capitalized terms that are used herein but are not defined herein shall have the respective meanings set forth in the Agreement.

IN WITNESS WHEREOF, the parties hereto, by the hands of their duly authorize officers, execute this Memorandum of Sale as of the Closing Date referred to above.

**G2 Capital Group LLC**

Purchaser

By: ____________________

Name: Greg Graeber

Title: Managing Member

**AMERICAN HOME MORTGAGE CORP.**
as Seller

By: ____________________

Name: ____________________

Its: ____________________

**AMERICAN HOME MORTGAGE ACCEPTANCE, INC.**
as Seller

By: ____________________

Name: ____________________

Its: ____________________

SCHEDULE I to EXHIBIT B - FORM OF MEMORANDUM OF SALE

[to be completed at Closing]

EXHIBIT C Attached

PURCHASE PRICE PER LOAN/REO PROPERTY

| Mortgage Loan Number | Address | Purchase Price |
|---|---|---|
| 30461958 | 430 M ST SW N207, WASHINGTON, D.C. 20024 | |
| 30645246 | 13950 SW 109 ST, MIAMI, FL 33186 | |
| 30718399 | 3880 E WASHINGTON CT, GILBERT, AZ 85234 | |
| 30001028 | 32 WINDWARD DR, SEVERNA PARK, MD 21146 | |
| 30001226 | 55 M ST NW, WASHINGTON, D.C. 20001 | |
| 30001432 | 9 SHERMAN DR, CLAYMONT, DE 19703 | |
| 30001895 | 1720 FARMINGTON AVE, POTTSTOWN, PA 19464 | |
| 30001911 | 6923 FURNESS AVENUE, OXON HILL, MD 20745 | |
| 31500424 | 426 QUINCY ST, BROOKLYN, NY 11216 | |
| 31527062 | 6257 MULLIN ST, JUPITER, FL 33458 | |
| 31529431 | 77 S PARK AVE, ROCKVILLE CENTRE, NY 11570 | |
| 32200412 | 912 DOLPHIN HARBOUR DR<br>PANAMA CITY BEACH, FL 32407 | |
| 32200438 | 6103 NORTHWAY DRIVE, SPRING TX 77389 | |
| 32200446 | 24310 CREEKVIEW DRIVE, SPRING TX 77389 | |
| 30012504 | 1628 SWORD DANCER DR<br>VIRGINIA BEACH, VA 23454 | |
| 30015622 | 1420 NEW CASTLE ST, SAVANNAH, GA 31405 | |
| 30019715 | 219 SULIS ST, PHILADELPHIA, PA 19120 | |
| 30031470 | 116 ASH CT, ASHLAND CITY, TN 37015 | |
| 32200057 | 625 LUCKNOW ROAD, SUSQUEHANNA, PA 17110 | |
| 30060446 | 2301 PINE KNOLL TERR, BURLINGTON, NC 27217 | |
| 30016240 | 5 B E DUNDEE QUARTER 2, PALATINE, IL 60074 | |
| 30065197 | 1237 BLANCHARD, CINCINNATI, OH 45205 | |
| 30083026 | 5090 BLUE HOLE RD, ANTIOCH, TN 37013 | |