## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| American Home Mortgage Holdings, Inc., a | ) | |
| Delaware corporation, *et al.*, | ) | Case No. 07-11047 (CSS) |
| | ) | |
| Debtors | ) | Jointly Administered |
| | ) | |
| | ) | **Hearing Date:  May 11, 2010 at 9:00 am** |

## REPLY OF WELLS FARGO BANK, AS MASTER SERVICER TO THE "DEEMED" OBJECTIONS OF PAULA RUSH AND DR. DAVID AND ELISABETH JACKSON TO THE MOTIONS OF THE DEBTOR TO APPROVE 9019 SETTLEMENTS WITH, INTER ALIA, WELLS FARGO BANK
### [D.I. NOS. 8756, 8770 & 8771]

NOW COMES Well Fargo Bank, National Association, as Master Servicer (*"Wells Fargo"*) for the GSR Mortgage Loan Trust 2006-OA1 and the AHMIT 2006-2 Trust and for its Reply to the objections to the Debtor's Motions to Approve 9019 Settlements, including one with Wells Fargo Bank as Master Servicer, states as follows:[1]

### SUMMARY

The objections of Paula Rush and Dr. David and Elisabeth Jackson (the *"Jackson's"* and collectively with Paula Rush, the *"Objectors"*) should be denied with respect to the settlement between the Debtors and Wells Fargo on grounds that (a) Wells Fargo, as Master Servicer, owes no duty, statutorily or otherwise to the Objectors, rather Wells Fargo owes a duty to investors to

---

[1] The objectors have styled their filings as adversary proceedings, but have failed to comply with numerous procedural requirements applicable thereto, such service of a summons, providing a proper period to answer or otherwise plead, and others. *See, e.g.*, FED.R.BANKR.P. 7004; 7012. However, since the objectors have set a "hearing date" for this matter, Wells Fargo files this Reply at the direction of the Court.

oversee the servicing function, (b) Wells Fargo is not in contractual privity with either of the Objectors, and (c) none of the Cure Amounts would inure to the benefit of the Estate – any cure amount not paid to Wells inures to the benefit of the Administrative Agent.

## BACKGROUND

1.     On August 6, 2007, each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the *"Bankruptcy Code"*).

2.     On August 6, 2007, the Debtors filed their Emergency Motion of the Debtors for Orders:  (A)(I) Approving Sales Procedures; (II) Scheduling A Hearing to Consider Sale of Certain Assets Used in the Debtor's Loan Servicing Business; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief; and (B)(I) Authorizing the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Purchase Agreement Thereto; (III) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and (IV) Granting Related Relief (the *"Sale Motion"*).  The Court approved the Sale Motion on August 7, 2007, establishing certain auction and sales procedures with respect to Debtors' loan servicing business, and establishing August 27, 2007 as the date upon which assumption notices were required to be filed.

3.     On or about August 27, 2007, the Debtors filed their Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations (the *"Assumption Notice"*).  The Debtors proposed a cure amount of "$0" for each of the servicing agreements listed on the schedule attached to the Assumption Notice.

4.     On October 30, 2007, the Court entered an Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and

(B) Granting Certain Related Relief (the *"Sale Approval Order"*) (Docket No. 1711).  The terms of the Sale Approval Order established a $10,000,000 reserve for the payment of cure claims with respect to contracts assumed by the purchaser.  Any amount of the $10,000,000 that was not necessary to pay cure costs reverts to the Administrative Agent, and not the Estate.  Sale Approval Order, Paragraph 11.

5.    Pursuant to the Sale Approval Order, Wells Fargo filed the Initial Omnibus Cure Claim of Wells Fargo Bank, N.A., as Master Servicer, Securities Administrator, Trust Administrator and/or Indenture Trustee Against Cure Escrow (Docket No. 2229) (the *"Initial Omnibus Cure Claim"*) on or about November 29, 2007, setting forth amounts owed with respect to defaults relating to Assumed Contracts[2] related to acts or omissions that occurred prior to October 30, 2007.

6.    Pursuant to the Sale Approval Order, the Debtors filed their Notice of Interim Period Cure Schedule (Docket No. 2166) (the *"Interim Period Cure Schedule"*) on or about November 26, 2007, setting forth proposed cure amounts with respect to, among other things, breaches of Assumed Contracts to which Wells Fargo is a party during the period between October 30, 2007 and November 16, 2007 (the *"Proposed Interim Cure Amounts"*).

7.    In accordance with paragraph 34 of the Sale Approval Order, Wells Fargo filed an Objection to the Proposed Interim Cure Amounts.

8.    Wells Fargo and the Debtors have resolved the dispute as it relates to the Proposed Interim Cure Amounts and, in accordance with the formula set forth in the Plan of Reorganization approved by this Court, have liquidated the unsecured repurchase claims in transactions for which it serves as Trustee.  The proposed settlement is currently before the Court on Debtors' 9019 motion.

---

[2]    Unless otherwise indicated, capitalized terms not defined herein shall have the same meaning given to such terms in the Sale Approval Order.

9.    More specifically as it relates to these matters, Wells Fargo serves as Master Servicer under (a) the terms of the Master Servicing and Trust Agreement for the GSR Mortgage Loan Trust 2006-OA1 among GS Mortgage Securities Corp., as Depositor, Deutsche Bank National Trust Company, as Trustee and Custodian, and Wells Fargo dated as of August 1, 2006 (the *"2006-OA1 MSA"* and the transaction, the *"GSR 2006-OA1"* transaction); and (b) the terms of that certain RMBS Master Servicing Agreement dated as of June 29, 2006 by and between Wells Fargo Bank, N.A., as RMBS Master Servicer and Securities Administrator, American Home Mortgage Investment Trust 2006-2, as Issuing Entity, American Home Mortgage Acceptance, Inc., as Sponsor and Deutsche Bank Trust Company Americas, as Indenture Trustee (the *"2006-2 MSA"* and the transaction, the *"AHMIT 2006-2"* transaction).  In its capacity as Master Servicer, Wells Fargo generally monitors the activities of the servicer, but has no role whatsoever in the servicing of mortgage loans of individual borrowers.  It has no contact with any individual borrower and does not collect any principal, interest or other payment from any borrower.  Wells Fargo's role as Master Servicer is to monitor the activities of the servicer for the benefit of the relevant Indenture Trustee and investors in the Notes to ensure that no events of default occur regarding the servicer's relevant obligations to the certificateholders in the GSR 2006-OA1 transaction.  Wells Fargo has no obligations under the terms of either the 2006-OA1 MSA or the 2006-2 MSA  whatsoever to either of the Objectors.  See Declaration of William Fay at ¶2 (*"Decl. of Fay"*).

10.    On April 3, 2007, Paula Rush filed a complaint in the United States District Court for the District of Maryland seeking both damages and rescission of the mortgage she had entered with the defendants named in the suit (the *"Maryland Case"*).  Ms. Rush named American Home Mortgage Corp., d/b/a American Brokers Conduit, and AHM SV, Inc. (collectively, "AHM") as defendants in the Maryland Case.  On July 18, 2008, this Court lifted the automatic stay and granted Ms. Rush leave to pursue certain claims in the Maryland Case.  As a result, the United States District Court for the District of Maryland is currently presiding over these same factual issues raised by Ms. Rush in her objection to the proposed settlement.  On December 3, 2009,

- 4 -

Judge Nickerson denied in part a motion to dismiss  See December 3, 2009, Order and Memorandum (attached as Exhibit 1).  As a result, Ms. Rush remains able to pursue four counts from her complaint against the AHM Defendants: 1) the timeliness of the § 226.18 Truth-in-Lending Act (TILA) claims and violations of § 226.19(b) variable rate disclosure requirements; 2) violations of the disclosure requirements under 12 C.F.R. § 226.20(c)(5); 3) fraud and deceptive acts; and 4) unjust enrichment.  Further, on April 6, 2010, Judge Nickerson issued another opinion denying Plaintiff's motion to add Wells Fargo as a defendant in that case. Decl. of Fay at ¶5 and Ex. C.  That opinion provides in relevant part:

> For the most part [Ms. Rush's] factual allegations against each of the parties, other than the AHM Defendants, is that they refused to answer her letters and phone calls, failed to reach out to try to resolve the issues, and conspired to prevent her from discovering the true owner of her loan.  *[Ms. Rush] does not allege, however, why they should have responded to her requests*…. Thus while the Court has sympathy for [Ms. Rush] in attempting to understand the great complexities of securitized loans, she has failed to make clear how she has any actual claim against any of these proposed additional defendants and Plaintiff's motion to amend her Complaint to add these defendants will be denied.

Decl. of Fay at Ex. C, page 9 (Memorandum Opinion dated April 6, 2010, *Paula Rush v. American Home Mortgage, Inc., et al,* Civil Action No. WNN-07-CV-0854 pending in the United States District Court for the District of Maryland).  On facts similar, if not identical, to those alleged by each of Ms. Rush and the Jackson's, the Maryland District Court refused to even let Ms. Rush amend her complaint to assert such claims.

11.    Further, Ms. Rush's allegation that no one responded to her inquiries is incorrect. Wells Fargo responded to Ms. Rush by advising her that it was the Master Servicer, briefly describing the role of the Master Servicer, and advising that any inquiries with respect to her loan needed to be directed to the Servicer.  Decl. of Fay at Ex. D.  Ms. Rush, however, apparently didn't like the answer, and (a) attempted to include Wells Fargo as a defendant in the Maryland Case, (b) brought an adversary proceeding in this case, and (c) apparently for a consulting fee, encouraged others to take similar action.

WM01/ 7839803.1

## ARGUMENT

### A.      Neither the Jackson's nor Ms. Rush Have A Claim Against Wells Fargo under the Truth in Lending Act or RESPA

12.      Wells Fargo, as Master Servicer, owes no duty under applicable statutes to either of the Objectors.  While it is difficult to discern exactly what each of the Objectors are complaining about, the key element appears to be the contention that the named defendants, including Wells Fargo, violated the Truth in Lending Act in 15 U.S.C. § 1641(f)(2).  That section provides in relevant part:

> A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation.  *Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation.*

11 U.S.C. § 1641(f)(2).  Subsection (f)(3) provides that the term servicer has the same meaning as set forth in 12 U.S.C. § 2605(i)(2).  The Real Estate Settlement Procedures Act has a similar requirement for federally related mortgage loans, providing:

> (A)      In general.  If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response…

12 U.S.C. § 2605(c).  Each of these provisions requires action of the *servicer*.  Servicer is defined as follows:

> (2)      Servicer.  The term "servicer" means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan).  The term does not include—
>
>> (A)      the Federal Deposit Insurance Corporation or the Resolution Trust Corporation, in connection with assets acquired, assigned, sold or transferred pursuant to

- 6 -

section 13(c) of the Federal Deposit Insurance Act [12 USCS § 1823(c)] or as receiver or conservator of an insured depository institution; and

(B)    the Government National Mortgage Association, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Resolution Trust Corporation, or the Federal Deposit Insurance Corporation, in any case in which the assignment, sale, or transfer of the servicing of the mortgage loan is preceded by—

(i)    termination of the contract for servicing the loan for cause;

(ii)    commencement of proceedings for bankruptcy of the servicer; or

(iii)    commencement of proceedings by the Federal Deposit Insurance Corporation or the Resolution Trust Corporation for conservatorship or receivership of the servicer (or an entity by which the servicer is owned or controlled).

(3)    Servicing.    The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 USCS § 2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(2).  There are no factual allegations, nor could there be any, that Wells Fargo is the servicer of the loans.  There are no allegations, nor could there be any, that Wells Fargo ever received any payments from either Ms. Rush or the Jacksons, as contemplated by the definition of "servicing", and therefore Wells Fargo cannot constitute a servicer for purposes of RESPA or TILA.  In fact Ms. Rush and the Jackson's admit that Wells Fargo is the Master Servicer.  It is no wonder Judge Nickerson would not even allow Ms. Rush to amend her complaint to name Wells Fargo in the Maryland Case.  She has no cognizable statutory claim against Wells Fargo.

**B.    Plaintiff Also Lacks Standing Because She is Not a Party to the Master Servicing Agreement or Any Agreement With Wells Fargo**

13.    The 2006-OA1 MSA is between Wells Fargo and GS Mortgage Securities Corp., as Depositor, and Deutsche Bank National Trust Company, as Trustee and Custodian.  (Decl. of Fay at ¶2).  The 2006-2 MSA is between Wells Fargo, the Issuer and the Indenture Trustee.  Neither Objector is a party to these agreements.  Nevertheless, the Objectors appear to assert that Wells Fargo breached some legal or equitable obligation under the respective MSA to the Objectors, by, *inter alia*, refusing to approve "loss mitigation" (¶57), approving "foreclosure actions" (¶15) and not replying to a letter from Ms. Rush (¶15).[3]

14.    Where an objector makes a claim under a contract that they are not a party to, they lack standing, and denial is appropriate.  *See, e.g., Pyles v. United Air Lines, Inc.,* 79 F.3d 1046, 1049 (11th Cir. 1996) (claim of a plaintiff who is not party to subject agreement dismissed for failure to state a claim).  In the context of a complaint, where a plaintiff lacks standing to pursue a claim, it should be dismissed under 12(b)(6).  *See, Bleiler v. Cristwood Constr., Inc.*, 72 F.3d 12, 15 n.1 (2d Cir. 1995).  As described below, the Objectors claims fail because Wells Fargo is not the servicer of their loans.  Further, since none of the Objectors is a party to the MSA, they have no right to assert claims for purported breaches of obligations thereunder.  In any event, because the Objectors fail to establish the threshold requirement of standing, their objection provides no basis for not approving the settlement.[4]

---

[3]    While not relevant to the issue of whether Ms. Rush has standing, as noted above, this allegation is actually false.  Wells Fargo's counsel wrote to Ms. Rush on March 6, 2008 explaining the role of the Master Servicer in this transaction and informing her that Wells Fargo has no role in managing her loan.  March 6, 2008 Letter (Decl of Fay at ¶6 and Ex. D).  Despite having this information for over two years, Ms. Rush attempted to drag Wells Fargo into the Maryland Case and now makes the same baseless assertion that Wells Fargo is in charge of her loan.

[4]    Ms. Rush also asserts that Wells Fargo might have attempted to collect on an unspecified mortgage insurance policy with a company called "TRIAD," but also alleges that TRIAD stated that they "had no idea" of the issues regarding Ms. Rush's loan.  ¶15.  Ms. Rush does not make any allegations that reveal how this alleged interaction by Wells Fargo with "TRIAD" is in any way connected to her claims or how, if true, collecting on a mortgage insurance policy is related to this case.

**C.    Objectors Misunderstand the Role of the "Master" Servicer and Have No Claims Against Wells Fargo; Wells Fargo Had No Role Whatsoever in Loss Mitigation, Foreclosure Suits, or Otherwise Administering their Loan**

15.    Assuming that the Objectors' loans are in one or more of the securitizations for which Wells Fargo serves as Master Servicer, the Objectors misunderstands the role that a Master Servicer plays in connection with a securitization transaction.  The duties of Wells Fargo, as Master Servicer, are set forth in Section 9.01 of the MSA.  Section 9.01(a) provides:

> The Master Servicer, on behalf of the Trustee, the Securities Administrator, the Depositor, and the Certificateholders, shall *monitor the performance of the Servicers* under the related Servicer Agreements, and (except as set forth below) shall use its reasonable good faith efforts to cause the Servicers to duly and punctually perform their duties and obligations thereunder as applicable.

MSA §9.01(a) (Decl. of Fay Ex. A) (emphasis added).  As such, the duties of Wells Fargo as Master Servicer are simply to monitor the performance of the servicer, not to prosecute foreclosures or otherwise deal with matters relating to individual homeowners.  Further, pursuant to Section 9.01, the duties of the Master Servicer are owed solely to "the Trustee, the Securities Administrator, the Depositor, and the Certificateholders."  *Id*.  This list does *not* include individual borrowers.  The Objectors have cited no authority which would support their apparent claims that the Master Services owes them a duty and that a cause of action exists for a breach of that duty.

16.    Thus, under the MSA, Wells Fargo has no interaction, let alone any obligation, to individual homeowners.  Rather, in both of these transactions (which the Objectors assert contains their loans), the Master Servicer does not oversee the servicing of the mortgage loans for the benefit of individual mortgage loan obligors.  In other words, the Master Servicer does not micromanage individual mortgage loans.  It is only when the servicer defaults on its obligations to the Certificateholders in either transaction that Wells Fargo could hypothetically become the servicer.  *See,* MSA §7.02 (Decl. of Fay Ex. A). Therefore, Wells Fargo has no obligation to resolve any disputes between individual mortgage loan obligors and the servicer.

**D.      The Estate Has No Interest in the Cure Escrow.**

17.      Even should Ms. Rush or the Jackson's convince this Court that Wells Fargo is not entitled to the cure amount as settled, the benefit of these savings does not inure to the benefit of the estate, Ms. Rush or the Jacksons; rather it inures to the benefit of the Administrative Agent, Bank of America.  The Sale Order provides as follows:

> Notwithstanding anything to the contrary in this Order or elsewhere, the Administrative Agent's security interests in and liens on all amounts in the Dispute Escrow, the Cure Escrow and the Deposit Escrow shall continue as provided in the Cash Collateral Order, subject to paragraph 2 of the Dispute Escrow Agreement, paragraph 2 of the Cure Escrow Agreement and paragraph 2 of the Deposit Escrow Agreement and regardless of whether the Termination Date (as defined in the Cash Collateral Order) has occurred.

Sale Order ¶ 11, p. 19.  Thus, even if the Objectors objections are upheld, any savings would inure to the benefit of the Administrative Agent.

**E.      The Objector's Unjust Enrichment Claims Fail Because She Does Not Allege that Wells Fargo was Enriched at Their Expense**

18.      Objectors' unjust enrichment claims fail because they do not allege any enrichment by Wells Fargo that was *at their expense.  See, Universal City Studios v. Nintendo Co.,* 797 F.2d 70, 79 (2d Cir. 1986) (dismissing unjust enrichment claim under New York law because the defendant's enrichment was not at plaintiff's expense) (emphasis added).  The objections include sporadic, irrelevant allegations of benefit to Wells Fargo such as that it benefitted from "billions" of dollars of margin calls[5] toward AHM (¶93, ¶130-132), but any "unjust" benefit received by Wells Fargo is alleged to be at AHM's expense, not the expense of the Objectors.  Similarly, Objectors' allegations that Wells Fargo received benefits from "insurances [sic]" and "other benefits" (¶131) fails to allege any enrichment at the Objectors' expense.  Any purported "unjust" insurance payouts would have been at the expense of the insurance company, not Objector.

---

5        This allegation is not supported by any fact but is pure supposition and speculation.

WM01/ 7839803.1

**F.      The Alleged Misconduct is not Fraud as a Matter of Law**

19.    While the objections contain no particularized allegations of fraud as to Wells Fargo,
even if the objections could be read to plead some type of conduct by Wells Fargo that somehow
failed to stop the bad acts of AHM as servicer or aided the unspecified bad acts alluded to in the
Maryland Case, such conduct would not be actionable at law.   In *B.E.L.T., Inc. v. Wachovia
Corp.,* 403 F.3d 474 (7th Cir. 2005), the Seventh Circuit rejected the contention that a lender
could commit fraud by failing to police the activities of others, holding:

> It is not any flavor of "fraud" to omit steps that might have
> protected strangers from your customers' machinations . . . There
> can be no fraud without a representation made with intent to
> deceive . . . and [the bank] did not make any representation to the
> plaintiffs. Nor did it have a duty to speak up for their benefit .

*Id.* at 477 (citations omitted).

20.    Further even if Wells Fargo had some role (which it did not) in "accepting or
rejecting loans, in determining loss mitigation, or foreclosure actions" (¶57), Objectors fail to
allege any facts describing this alleged "role" or how Wells Fargo was connected in any way to
Objector's specific loan or the alleged misconduct associated therewith.   Ms. Rush for example,
makes a vague (and baseless) allegation that Wells Fargo somehow generally "supported the
debtors business of making predatory loans" Rush Complaint at (¶57) but does not allege that the
Objectors had any direct loan with Wells Fargo or plead any facts describing how Wells Fargo
supposedly supported Debtors' business, how the loans were "predatory," or how she was injured
by Wells Fargo.   Wells Fargo merely provided a service, as Master Servicer, to the Indenture
Trustee and investors.   Based on these allegations, Wells Fargo has no notice of what it allegedly
did wrong or how that can be connected to an actionable claim for fraud or any other relief.

**G.      Objectors' Allegations of Wells Fargo's Insider Status Lack Any Facts,
          Are Conclusory And Untrue**

20.    Wells Fargo is not an insider for purposes of the Bankruptcy Code.   It meets none of
the criteria or earmarks of insider status.   Wells Fargo does not own AHM, it does not control

AHM, and does not make *any* decision on AHM's behalf.  The Objectors fail to even allege any of these classic earmarks of insider status.  Wells Fargo was merely a business partner of AHM, providing business services, not to AHM, but to Indenture Trustees, investors and certain SPV's (i.e. Special Purpose Vehicles) as a Master Servicer.  Neither Objector has met the burden for alleging insider status.

## CONCLUSION

Whatever rights Objectors may have against AHM or any other party should be addressed in the Maryland Case.  Unless and until Objectors can make particular, plausible allegations of misconduct on the part of Wells Fargo that are actionable, they should not be permitted to sully Wells Fargo's reputation with inflammatory and baseless allegations of "predatory lending" and otherwise force it to incur substantial costs in defending these claims.

WHEREFORE, Wells Fargo Bank, N.A., as Master Servicer respectfully requests that Objections be denied in their entirety.

Respectfully Submitted,

/s/ TODD C. SCHILTZ
**DRINKER BIDDLE LLP**
Todd C. Schiltz (#3253)
1100 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 467-4225

Todd.Schiltz@dbr.com

and

**CHAPMAN AND CUTLER LLP**
Franklin H. Top, III
James Heiser
111 West Monroe Street
Chicago, IL 60603
Telephone:  (312) 845-3824
top@chapman.com
heiser@chapman.com

- 12 -

WM01/ 7839803.1