UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
In re:                                                    :
                                                          :  Chapter 11
AMERICAN HOME MORTGAGE                                    :  Case No. 07-11047 (CSS)
HOLDING, INC., a Delaware corporation,                    :  Jointly Administered
et al.,[1]                                                :
                                                          :  Ref. Docket Nos. 8829, 8756, 8689, 8683
        Debtors.                                          :
---------------------------------------------------------X

**AMERICAN HOME MORTGAGE SERVICING, INC.'S JOINDER IN THE DEBTORS' REPLY TO BORROWER-CLAIMANTS' OBJECTIONS TO SETTLEMENTS WITH (I) AMERICAN HOME MORTGAGE SERVICING, INC. (F/K/A AH MORTGAGE ACQUISITION CO., INC.); (II) DEUTSCHE BANK NATIONAL TRUST COMPANY; AND (III) WELLS FARGO BANK, N.A.**

Paula Rush ("Rush") and Dr. David and Elisabeth Jackson (the "Jacksons") recently filed adversary proceedings that object to the settlement between the Debtors and American Home Mortgage Servicing, Inc. ("AHMSI"), among other settlements. AHMSI joins the Debtors' reply to those objections. AHMSI also provides the Court with the following additional information concerning the speculative nature of these adversary proceedings, further demonstrating that the Court should overrule the objections.

## BACKGROUND

1.  Before commencing voluntary bankruptcy cases under Chapter 11 of the Bankruptcy Code, the Debtors were primarily in the business of originating, selling, and servicing residential mortgage loans. During bankruptcy, the Debtors sold their servicing business to AHMSI—then known as AH Mortgage Acquisition Co.—pursuant to an asset

---

[1] The above-captioned debtors and debtors in possession in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation, formerly known as American Home Mortgage Servicing, Inc. (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

purchase agreement. [D.I. 931.] The Court approved this sale on October 30, 2007, free and clear of any liens, claims, and interests. [D.I. 1711.]

2. On May 23, 2008, AHMSI filed a motion for the allowance of an administrative claim, alleging breaches of the asset purchase agreement. [D.I. 4233.] Joined by the Official Committee of Unsecured Creditors (the "Committee"), the Debtors filed a preliminary objection to the motion on September 10, 2008. [D.I. 5798, 5811.] AHMSI and the Debtors thereafter engaged in extensive discovery, including the retention of experts to evaluate, quantify, and document the claims. Despite good-faith efforts to narrow the scope of discovery and otherwise minimize costs and expenses, AHMSI and the Debtors expended significant resources in connection with the litigation. Facing still more expenses and hoping to reach a mutually agreeable resolution, AHMSI and the Debtors agreed to curtail discovery and focus on settlement negotiations.

3. During settlement discussions, AHMSI and the Debtors agreed to work toward resolving not only the motion for an administrative claim but also certain other outstanding issues, including disputes over other funds allegedly owed. The time and effort that both sides put into these settlement discussions proved to be a success: after conferring for several months (together with consultation with the Committee's counsel), AHMSI and the Debtors entered into a settlement agreement resolving the motion as well as their other outstanding issues, ending a two-year long dispute. In addition to serving the interests of the Debtors and their estates, this settlement advances the paramount interests of their creditors. The settlement will save funds that the Debtors currently have on hand for creditors by eliminating the litigation's attendant expenses and by reducing potential administrative exposure. The settlement will also accelerate the payment of the funds that are owed to the Debtors, increasing the pool of funds on hand for creditors. The Debtors moved on March 16, 2010, for an order authorizing and approving this settlement. [D.I. 8689.]

2

## RUSH'S ADVERSARY PROCEEDING

4. Rush, appearing *pro se*, filed her adversary proceeding on April 13, 2010 against WLR Recovery Fund III, L.P. ("WLR Fund III"), among other entities, but not against AHMSI. [D.I. 8771.] WLR Fund III has never originated, sold, or serviced residential mortgage loans, and it has only two ties to these bankruptcy cases. First, it partially owns AHMSI. Second, it is the administrative agent for the lenders that provided debtor-in-possession financing to the Debtors. WLR Fund III does not have any claims being settled as a part of the settlement agreement between the Debtors and AHMSI.

5. According to Rush, her adversary proceeding "arises from the origination . . . and subsequent servicing" of her residential mortgage loan. [*Id*. ¶ 19.] She alleges that her loan "was originated on April 3, 2006 by American Home through Several Debtor entities," [*id*. ¶ 77], and was "highly predatory and illegally presented," [*id*. ¶ 50(i)]. Although WLR Fund III has never originated, sold, or serviced loans and is not one of the debtors in possession, Rush alleges that it is liable for this allegedly predatory and illegal behavior because "as Debtor in Possession [it] stepped into the proverbial shoes of the Debtor in servicing loans beginning in November of 2007." [*Id*. ¶ 58.] Rush further alleges that WLR Fund III, as an "insider[]," helped to conceal the identity of her loan's holder and initiated attempts to foreclose wrongfully on her home. [*Id*. ¶¶ 13, 112.] Based on these claims, Rush requests equitable subordination of any claims by WLR Fund III.

6. In addition, at a few points in her complaint, Rush objects to the Debtors' motion for approval of their settlement with AHMSI. [*See id.* ¶¶ 4, 72, 75.] However, because Rush has not sued to subordinate AHMSI's claims, at no point in the adversary proceeding does she request relief that would actually impact that settlement agreement. [*See id.* at 37-38 ("Prayer for Relief").]

7. As Rush concedes, the issues in her adversary proceeding overlap with a lawsuit that she has pending against AHMSI and others in the U.S. District Court for the Northern District of Maryland. [*See id.* ¶ 19 ("Part of this action is embodied in the lawsuit pending in

3

Federal Court in Greenbelt Maryland . . . .").] She filed that lawsuit over two years ago, *pro se*, asserting claims based on the same allegation of "predatory" lending. [Ex. 1 at 2 ("This action . . . is seeking relief from the predatory lending practices of the Defendant, American Home Mortgage Servicing et al . . . .").] She requests actual damages and loan recession, among other relief. [*Id.* at 42.]

### THE JACKSONS' ADVERSARY PROCEEDING

8. The Jacksons, also appearing *pro se*, filed their adversary proceeding on April 13, 2010 against AHMSI, among other entities. [D.I. 8770.] According to the Jacksons, their adversary proceeding "relates to the origination and servicing" of their residential mortgage loan. [*Id.* ¶ 2.] The Jacksons allege that the loan, originated in 2006, was "predatory and fraud laden," [*see id.* ¶¶ 28, 74], and that AHMSI "supported the debtors [sic] business of making predatory loans [] by financing those activities with actual knowledge of the business structure," [*id.* ¶ 49]. The Jacksons further allege that AHMSI aided and abetted fraud by refusing to address "issues" with the loan, [*see id.* ¶¶ 74-74], and "committed misconduct" by "obfuscating the true owner" of the loan, [*id.* ¶ 11.] Based on these allegations, the Jacksons request equitable subordination of any claims by AHMSI.

9. Like Rush, the Jacksons object to the Debtors' motion for approval of their settlement with AHMSI. [*See id.* ¶¶ 14, 44.] The Jacksons contend that "it would be unfair and unjust that parties who participated in illegal and predatory loan activities and harm during the bankruptcy should have claims settled in front of and in seniority to a claimant who they directly harmed." [*Id.* ¶ 44.] Also like Rush, the issues in the Jacksons' adversary proceeding overlap with a lawsuit that they have pending in the U.S. District Court for the Southern District of New York. [*Id.* ¶ 2 ("Part of this action is embodied in the lawsuit pending in Federal Court in New York . . . .").] In that lawsuit, the Jacksons assert claims based on the same allegation that their loan was predatory and fraudulent. [Ex. 2 at 15-36.] They request actual damages and loan recession, among other relief. [*Id.* at 36-37.]

4

**ARGUMENT AND AUTHORITIES**

10. There are at least two reasons, in addition to those that the Debtors raised in their reply, why the adversary proceedings filed by Rush and the Jacksons should not delay or interfere with this Court's decision on whether to approve the settlement agreement with AHMSI. First, Rush's adversary proceeding bears no relation to that settlement. The settlement between the Debtors and AHMSI neither involves nor settles any administrative claim by WLR Fund III. The only administrative claim being settled belongs to AHMSI, which Rush has not asserted any claims against in her adversary proceeding.

11. Second, the equitable-subordination claims by Rush and the Jacksons will fail as matter of law. The claims are based, primarily, on allegations that the Debtors engaged in predatory and fraudulent conduct in originating the loans of both Rush and the Jacksons back in 2006. With this Court's approval, however, the Debtors sold their servicing business to AHMSI in 2007 *free and clear of any liens, claims, and interests*. Section 363(f) of the Bankruptcy Code therefore bars any attempt to pass on liability for any inequitable conduct that occurred in the origination of either one of these loans. *In re Trans World Airlines, Inc.*, 322 F.3d 283, 285 (3d Cir. 2003) ("Because section 363(f) of the Bankruptcy Code permits a sale of property 'free and clear' of an 'interest in such property[,]' and because the claims against [Debtor] here were connected to or arise from the assets sold, we affirm the Bankruptcy Court's order approving the sale 'free and clear' of successor liability.").

12. To be sure, AHMSI and the Debtors put substantial time and effort into reaching their settlement and ending a two-year long dispute. The settlement benefits all interested parties, including creditors, by saving and increasing the amount of funds that the Debtors will have on hand to facilitate their plan's effectiveness. There is no basis for short-circuiting those efforts and delaying those benefits as a result of these speculative adversary proceedings, the principal subjects of which are already being litigated by Rush in U.S. District Court in Maryland and by the Jacksons in U.S. District Court in New York.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, AHMSI respectfully requests that this Court overrule the objections of Rush and the Jacksons to AHMSI's settlement with the Debtors.

Dated: May 6, 2010

Respectfully submitted,

*/s/ Victoria W. Counihan*
Victoria W. Counihan (BAR #3488)
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000

and

Keith C. McDole (TX 13533740)
Daniel P. Winikka (TX 00794873)
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
(214) 220-3939

COUNSEL FOR AMERICAN HOME
MORTGAGE SERVICING, INC.