# IN THE UNITED STATES DISTRICT
## FOR THE DISTRICT OF MARYLAND
### GREENBELT

PAULA RUSH,
2651 Peery Drive
Churchville, MD 21208
 Plaintiff pro se

v.

American Home Mortgage Holdings Inc
American Home Mortgage Corporation
538 Broadhollow Road
Melville, NY 11747

American Home Mortgage Servicing
4600 Regent Drive Suit 200
Irving Texas 75063

AHMSI ( Successor)
4600 Regent Drive Suit 200
Irving Texas 75063

WL  Ross and Co. LLC
1166  Avenue of the Americas 27th Floor
New York, New York 10036

The Loan Corporation
4890 W. Kennedy Blvd #260
Tampa FL 33609

Goldman Sachs
85 BROAD STREET
NEW YORK NY 10004
New York, New York 10004

GSR 2006-OA1 TRUST C/O
WELLS FARGO
9062 Old Annapolis Road Columbia, MD
21045-1951

BIERMAN GEESING & WARD
4520 East West Highway
Bethesda Md. 20814

**CASE NO. 07-854 (WMN)**

**COMPLAINT** FOR:
 INJUNCTIVE AND OTHER
EQUITABLE RELIEF, LOAN
RESCISSION, ORDER TO DISMISS
FORECLOSURE COMPLAINT, QUIET
TITLE, MONETARY DAMAGES,
PENALTIES, FEES AND COSTS

**JURY TRIAL DEMANDED**

**Pro se**

1

Deutsche Bank National Trust Company
1761 East St. Andrews Place
Santa Ana, CA 92705

Wells Fargo Bank, N.A.
9062 Old Annapolis Road
Columbia, MD   21045

CITIBANK N.A.
399 Park Avenue
 New York, 10022

MERS
1818 Library Street, Suite 300
Reston, VA 20190

DOE DEFENDANTS 1-100

Defendants

## INTRODUCTION

This action brought by Plaintiff, Paula Rush (hereinafter"Ms. Rush") is seeking

relief  from the predatory lending practices of the Defendant, American Home Mortgage

Holdings et al, (hereinafter "AHM DEFENDANTS") and American Brokers Conduit et

al ( hereinafter "ABC"), and American Home Mortgage Servicing ("Servicing") together

( "AHM Defendants"),  AHMSI ( Succesor), Goldman Sachs, Certificate Holders of GSR

2006-OA1 Trust ("GSR"), Deutsche Bank as Indenture Trustee ("Deutsche"), Wells

Fargo as Master Servicer ( "Wells"), Mortgage Electronic Registration Systmes ("

MERS"), Citibank N.A.  ("Citi"), WL Ross & Co., and DOE DEFEDANTS 1-100, for

numerous violations of Maryland State and Federal laws in relation to a mortgage loan

refinance Ms.Rush  obtained through AHM.

These violations including  but are not limited to, violations of RICO,

The Maryland Consumer Protection Act, TILA, RESPA, and related civil claims in

connection with a Pay Option Arm (herinafter "POA") loan product advertised

and sold through broker THE LOAN CORPORATION, ( hereinafter "TLC),

as contractual agent for "ABC" a division of "AHM." This contractual relationship

may have been as a "table funder" or "joint venture partner," as this was a typical

business model of American Home.

Goldman Sachs participated in the origination of this loan through funding it on a

warehouse credit line provided to American Home, as shareholder with voting securities

in American Home, and by demanding loans with certain loan terms for the planned

securitization of this loan. For financial gain, Deutsche Bank acted as Indenture Trustee,

and Wells Fargo acted as Master Servicer and Securities Administrator. In these roles

they aided and abetted the lenders, American Home Mortgage and Goldman Sachs in

securitizing and servicing/foreclosure of this loan. Securitizing with no regard for the

flaws in the loan, and servicing with no regard to the valid rescission claim against this

loan. The "Trust Parties" cared only about the financial gain, for themselves, and nothing

for the Plaintiff, the insurers or the investors.

The problems that Plaintiff has experienced mirror many practices already forbidden as a

result enforcement actions taken against many lenders. The claims also highlight and help

to bring attention to the growing concern of the practices lenders use to create loans and

then "sell off" the liabilities to unsuspecting investors who invest in mortgage securities.

The issues include, but are not limited to: a fraudulent inflated appraisal,

misrepresented interest rate and loan terms, bait- and- switch on every term in the loan,

an exorbitant broker kickback in the form of a YSP, document switching, equity

stripping, negative amortization, prepayment penalties, conflicting and misleading statements both orally and written, improvident lending, targeting a single unmarried woman, steering into a refinance promising non-existent benefits. All issues presented are covered by state consumer laws and federal statutory laws.

No effort has been made by American Home Mortgage Servicing to address plaintiff's concerns after plaintiff making them aware of said problems.

Plaintiff did send a rescission letter which was ignored by the agent for the trust parties, "AHM defendants," the trust defendants, "Deutsche", "Goldman" and lawyers for these parties, Cohn Goldberg Deutsche, Bierman Geesing & Ward, and lawyers for Wells Fargo, Chapman Cutler. Notice to an attorney is notice to the assignee.

This rescission and RESPA letter was said to be ignored by American Home in testimony in the Bankruptcy Case No. 07-11047 due to it immediately becoming a legal matter as this action was filed on April 3, 2007. First the rescission rules are not affected by any other proceedings. And, second the parties want to have it both ways in that they assert this is a legal matter tied to this case, but for the third time the GSR 2006-OA1 TRUST parties who have been hidden in this matter, have tried to effectuate a foreclosure three times.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action and venue is proper under MD. CTS & JUD. PRO. §6-102 and §6-103.   Because Plaintiff is domiciled in Maryland and inasmuch as AHM is a foreign business, which upon information and belief carries on regular business in the State of Maryland and derives substantial revenue from real estate, mortgage and other services regarding property in Maryland.

2.      Venue is proper in this Court under MD. CTS. & JUD. PRO. . §6-201 because

the Defendant conducts regular business in various counties in Maryland and the actions

giving rise to the suit concern real property located and damages caused in Maryland.

3.      Plaintiff and Defendants are citizens of different states and the amount in

controversy of this action exceeds one million dollars ($1,000,000.00), exclusive of interest

and costs. Venue is proper in this court under 28 USC 1391(b)(2).

## COMPLAINT

4.      Plaintiff, Paula Rush, brings this action on her own behalf against American

Home Mortgage Holdings et al, and American Brokers Conduit, a division of American

Home Mortgage Corporation, American Home Mortgage Servicing, The Loan Corporation,

Goldman Sachs as securitizer, issuer, and Manager of GSR 2006-OA1 and shareholder of

American Home, Deutsche Bank as Indenture Trustee and Custodian, Mortgage Electronic

Registration Systems as Nominee and Registrar, GSR 2006-OA1 Trust as a separate legal

entity and purported assignee or pledge of the note, Citibank with an unknown interest in the

loan, AHMSI as successor in interest as servicer for this loan from April 11, 2008 to present,

and  alleges upon information and belief and based on her investigation to date, as follows:

## THE PARTIES

5.      Plaintiff, Paula Rush is a resident and citizen of Maryland and owns her home

at 2651 Peery Drive Churchville MD. 21028.  Plaintiff is the borrower of a MTA Pay Option

Arm in a transaction which occurred on April 3, 2006, for a total loan amount of 586,500

inclusive of loan origination and settlement charges.

6.      Defendant, American Home Mortgage Holdings is incorporated under the laws

of the State of New York, having its principal place of business at 538 Broadhollow Rd. Melville NY 11747, and originates mortgages to consumers throughout the United States directly and through affiliates, brokers and divisions of American Home Mortgage.

7.    Defendant American Brokers Conduit is a division of American Home Mortgage and under this arrangement marketed, advertised, and sold the MTA Pay Option Arms in Maryland, and also marketed, advertised, and sold the loans throughout the United States.

8.    American Home Mortgage Investment Corp., a Maryland corporation ("AHM Investment" and, collectively with its subsidiaries), is in the business of investing in mortgage-backed securities and mortgage loans resulting from the securitization of residential mortgage loans that its subsidiaries originate and service.

9.    American Home Defendants are in Bankruptcy: American Home Mortgage Holdings Inc (6303), American Home Mortgage Investment Corp.( 3914) MD, American Home Mortgage Acceptance Inc.(1979) MD, American Home Mortgage Corp. (1558) NY, American Home Mortgage Servicing (7267) MD, Homegate Settlement Services Inc. (8580) NY, all have a principal business located at 538 Broadhollow Rd Melville NY 11747.

10.    The Originator was American Home Mortgage Corp. and, sold mortgage loans to the sponsor under its mortgage conduit program, and mortgage loans sold were sold to the sponsor that will be conveyed from the sponsor to the depositor and from the depositor to the trustee, on behalf of the trust fund, on the closing date.

11.    WL Ross and Co. LLC is a private equity firm specializing in restructurings, buyouts, turnarounds, and industry consolidations.  WL Ross & Co LLC was founded in 2000 and is based in New York, New York and has opened a servicing call center in Mumbai,

India. The firm operates as a subsidiary of Invesco Ltd. Established in April, 2008 by WL Ross and Co. LLC., AHMSI is one of the country's largest residential mortgage loan servicers of Alt-A and sub-prime loans. The company is headquartered in Irving, Texas, and operates as well through locations in Irvine, California; Jacksonville, Florida; and Pune, India.

**12.**    AHMSI -In August of 2007 Wilbur Ross agreed to act as debtor in possession ("DIP") for bankrupt American Home Mortgage.  In October of 2007, Wilbur Ross through AH Mortgage Acquisitions Inc., won an auction for the home-loan servicing unit of American Home Mortgage Investment Corp.  American Home Mortgage Servicing Inc has a total portfolio of more than $85 billion subprime and Alt-A loans and is owned by several funds ultimately controlled by Ross' private equity firm WL Ross and Co. As Ross was not previously a mortgage servicer, the closing of the sale was done in a two stage process, first an economic close and then a final close on April 11, 2008.  Specific acts complained of took place during this transition time and after the final close to Wilbur Ross.

On October 30, 2007, the Court entered and order ( Docket No. 1711) approving the sale of American Home Mortgage loan servicing business to AH Mortgage Acquisitions. There was an initial economic close on November 16, 2007 and the purchaser was to be responsible for all acts or omissions occurring during the period from the initial closing to the final closing of the sale on April 11, 2008 (Sale Order ¶35, 36). This sale was also subject to all claims and defenses that a mortgagor could assert against the previous holders of the mortgage servicing rights pursuant to Section 363(o) of title 11, United States Code, which states:

(o) Notwithstanding subsection (f), if a person purchases any interest in a consumer credit transaction that is subject to the Truth in Lending Act or any interest in a consumer credit contract (as defined in section 433.1 of title 16 of the Code of Federal Regulations (January 1, 2004), as amended from time to time), and if such interest is purchased through a sale under this section, then such person shall remain subject to all claims and defenses that are related to such consumer credit transaction or such consumer credit

contract, to the same extent as such person would be subject to such claims and defenses of the consumer had such interest been purchased at a sale not under this section..

**13.**    THE SPONSOR of Loan Trust GSR 2006-OA 1 and ASSIGNOR to the TRUST is Goldman Sachs Mortgage Company, a New York limited partnership (*"GSMC"* or the *"SPONSOR"*). GSMC is the parent of the Depositor and an affiliate of the Underwriter and Avelo.

**14.**    THE ISSUING ENTITY GSR Mortgage Loan Trust 2006- OA1, the Issuing Entity, will be formed on the Closing Date pursuant to the Trust Agreement. The Issuing Entity will be a New York common law trust with no officers or directors and no continuing duties other than to hold and service the Mortgage Loans and related assets and issue the certificates.

**15.**    THE UNDERWRITER  The underwriter for the offering of certificates is Goldman, Sachs & Co.

**16.**    THE DEPOSITOR The Depositor is GS Mortgage Securities Corp., a Delaware corporation. The Depositor is a wholly-owned subsidiary of the Sponsor, GSMC, and is an affiliate of the Underwriter and Avelo. GS Mortgage Securities Corp. was the ASSIGNEE of the Mortgage Notes. The Depositor will not have any business operations other than securitizing mortgage assets and related activities.

**17.**    THE SECURITIES ADMINISTRATOR Wells Fargo Bank, N.A. (*"WELLS FARGO"*) will act as Securities Administrator under the Trust Agreement. Wells Fargo is a national banking association and a wholly-owned subsidiary of Wells Fargo & Company. A diversified financial services company with approximately $482 billion in assets, 23 million customers and 153,000 employees, as of December 31, 2005, Wells Fargo & Company is a U.S. bank holding company, providing banking, insurance, trust, mortgage and consumer finance services throughout the United States and internationally. Wells Fargo provides retail and commercial banking services and corporate trust, custody, securities

lending, securities transfer, cash management, investment management and other financial
and fiduciary services. Wells Fargo maintains principal corporate trust offices located at 9062
Old Annapolis Road, Columbia, Maryland 21045-1951 (among other locations), and its office
for certificate transfer services is located at Sixth Street and Marquette Avenue, Minneapolis,
Minnesota 55479.

18.       THE MASTER SERVICER Wells Fargo Bank will act as the Master
Servicer for the Mortgage Loans pursuant to the terms of the Trust Agreement. The Master
Servicer is responsible for the aggregation of monthly Servicer reports and remittances and
for the oversight of the performance of the Servicers under the terms of their respective Sale
and Servicing Agreements. The Master Servicer also reviews the servicing of defaulted loans
for compliance with the terms of the Trust Agreement. Wells Fargo has been engaged in the
business of master servicing since June 30, 1995. As of June 30, 2006, Wells Fargo Bank was
acting as master servicer for approximately 1253 series of residential mortgage-backed
securities with an aggregate outstanding principal balance of approximately
$651,189,990,090.

19.       DEUTSCHE BANK  Trust Company Americas ("DBTCA"), headquarters
at 60 WALL STREET 11TH FLOOR NEW YORK, NY 10005,  is a New York State-
chartered bank that is a member of the Federal Reserve System ("Federal Reserve") and, as
such, is regulated by the Federal Reserve and the New York State Banking Department.
DBTCA provides banking and bank-eligible securities services.  In 2002, DBTCA changed
their name after becoming a subsidiary of the Deutsche Bank Trust Corporation (DBCorp).
These are subsidiaries of the Deutsche Bank AG headquartered in Frankfurt, Germany.

THE TRUSTEE Deutsche Bank National Trust Company (*DBNTC*) will act as Trustee.
DBNTC is a national banking association which has an office 1761 East St. Andrews Place
Santa Ana, California.

THE CUSTODIAN Deutsche Bank -The Custodian will act as custodian of the Mortgage
Loans pursuant to one or more separate custodial agreements and, in such capacity, and

pursuant to the Trust Agreement, will execute and deliver to the Securities Administrator and the Trustee, a custodial receipt representing that such Custodian possesses the mortgage loan files to which it agreed to act as custodian pursuant to such custodial agreement or custodial agreements, as the case may be. DBNTC will maintain the mortgage files in secure, fire-resistant facilities. The Custodian is responsible to hold and safeguard the applicable mortgage notes and other contents of the mortgage files on behalf of the Trustee, the Securities Administrator and the Certificateholders.

**20.**    SEC filings show that Goldman Sachs was simply a warehouse lender doing business with American Home under a conduit program. It was Goldman Sachs who sent the closing funds to the table.

**21.**    Goldman Sachs owed Voting Securities and Stock in American Home Mortgage Investment Corp. On Schedule 13G filed on December 31, 2006, pursuant to Rule 13d-1(b), Goldman Sachs Asset Management, L.P. with a principal office 32 Old Slip New York NY 10005, filed with the UNITED STATES SECURITIES AND EXCHANGE COMMISSION, ownership interest recorded as Cusip Number 0266OR107 in American Home Mortgage Investment Corp. with a Sole Voting Power of 2, 869,797 number of shares and a Sole Dispositive Power of 3,599,996, the aggregate amount beneficially owned. This represented 7.2% of the Class. Goldman Sachs filed this as an investment adviser in accordance with Rule 13d-1(b)(1)(ii)(E). In accordance with Securities and Exchange Commission ("SEC") Release No. 34-39538 (January 12, 1998), this filing reflects the securities beneficially owned by Goldman Sachs Asset Management, L.P. ("GSAM LP"). The issuer was American Home Mortgage Investment Corp. with an address of 538 Broadhollow Rd. Melvelle NY 11747.

As in Title 16: Commercial Practices, a Goldman Sachs entity had some control over the American Home Mortgage business structure and executives through the acquisition of the voting securities. As such Goldman Sachs was an affiliate of American Home.

    (f)(1) *Voting securities.* The term 'voting securities' means any securities which at present or upon conversion entitle the owner or holder thereof to vote for the election of directors of the

issuer, or of an entity included within the same person as the issuer, or, with respect to unincorporated entities, individuals exercising similar functions.

"Control" of an entity shall mean possession, directly or indirectly, of power to direct or cause the direction of management or policies of such entity, whether through ownership of voting securities, by contract or otherwise.

22.    Defendant The Loan Corporation, a Delaware Corp. acted as broker ( table funder) conducting business in Maryland under Mortgage lender license # 13131 or #9493- with a principal place of business at 4890 W. Kennedy Blvd. #260 Tampa FL. 33609 at the time of transaction and has now closed this business.  The Loan Corporation was properly served on Jennifer Jones, V.P. Compliance  on June 18, 2007.

23.    Defendant MERS is a mortgage electronic registration system which acted on this transaction as registrar and nominee for American Home Mortgage Corp.

"MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members." *Mortgage Elec. Reg. Sys., Inc. v. Nebraska Depart. of Banking*, 270 Neb. 529, 530, 704 N.W.2d 784 (2005).

24.    GSR 2006 –OA1 is a separate legal entity, a New York Statutory Trust, and purported holder of the mortgage note, or interest in the cash flow therein.

25.    CITIBANK is a entity claimed to have held a secured interest in this loan and that status is unknown.

26.    DOE 1-100 are unknown entities, possibly certificate holders, swap partners, or other unknown partial ownership parties.

## **FACTUAL ALLEGATIONS**

**27.**    Plaintiff realleges all of the foregoing paragraphs.

**28.**    AHM operates as a mortgage lender. Through various nationwide brokers and agents it direct markets mortgages. It advertises, solicits, markets, and brokers mortgage loans.

**29.**    ABC a division of AHM Company's agents complete loan applications on behalf of borrowers and those applications are submitted to the lender.

**30.**    In the month of Feb 2006, AHM direct mail marketed, advertised, and promoted the MTA Pay Option Arm via a direct mail flyer to Ms. Rush citing a pre qualified acceptance of a 1% interest rate due to Ms. Rush good credit standing and equity in her home.

**31.**    Plaintiff was refinanced using fraud and deception out of a loan with a 5.25% interest rate, into a highly predatory loan with no tangible benefit to Plaintiff.

**32.**    Plaintiff tendered a valid rescission to American Home Mortgage Servicing as agent, and subsequent rescission notices to legal counsel for American Home, Assignees, and Wells Fargo as Master servicer of this Trust.

**33.**    Plaintiff conducted extensive due diligence to learn the true holder of the note, including, petitioning for disclosure under TILA 1641(f)(2) in the Delaware Bankruptcy Court of American Home Mortgage, appeared at hearings requesting disclosure, sent numerous certified letters to ALL parties, and no one ever answered.  Plaintiff spent hundreds of hours of time trying to figure it out on her own and requested confirmation in writing from the parties of interest, Wells Fargo as Master Servicer, Deutsche Bank as Indenture Trustee, and Goldman Sachs as Parties to securitized Trust GSR 2006-OA1.

**34.**    Despite massive amount of due diligence by Plaintiff, the parties to GSR 2006-OA1 chose to hide and mislead Plaintiff.  Goldman Sachs, Wells Fargo and Deutsche Bank outright refused to answer letters and phone calls requesting they admit or rights and

capacities regarding this loan. Plaintiff sent emails, certified letters, and petitioned several times on this very issue into the bankruptcy Court of American Home.

**35.**   In the bankruptcy Court of American Home Mortgage after Plaintiff petitioned for the true owner of the note under 15 U.S.C. 1641(f)(2), American Home ortgage, Goldman Sachs as board member with voting securities, and Deutsche Bank sitting on the unsecured creditors committee, conspired to put a witness on the stand who testified that American Home Mortgage did not have to give a borrower any disclosure about the owner of the note or master servicer.   **SEE** TRO EXHIBIT # 28

**36.**   A letter to Chapman Cutler as counsel of record for Wells Fargo as Master Servicer and Securities Administrator of GSR 2006-OA1, was responded to but stated, they could not confirm or deny any interest in this loan. The letter goes on to state that Wells Fargo does not condone any acts of American Home that may be viewed as inappropriate, however, in the role of Master Servicer it is Wells Fargo's job to oversee the servicing. **SEE** TRO EXHIBIT # 13

**37.**   Wells Fargo did nothing to reach out to Plaintiff and try and resolve the issues. More disturbing is the fact that after Plaintiff spent hundreds of hours trying to find who held this loan to engage in loss mitigation and alert them of the problems, it is clear that Wells Fargo can discover in about 2 minutes by a simple check of its database or ctslink site provided to investors, whether it is the master servicer on a loan.

**38.**   Goldman Sachs held shares in American Home of 3,599,996, cusip number 0266OR107, which the amount of shares is second only to CEO Michael Strauss who held 4,542,106 some of which were pledged to others. Goldman Sachs held voting securities thereby it had a voice in all aspects of American Home's business. In addition Goldman Sachs provided American Home with a warehouse credit line to originate loans for Goldman Sachs. This line is believed to be represented on the serving records as investor #21 and/or #514 which are not indentified. Investor #21 simply is revealed as a warehouse line, and #514 is off books of American Home and not revealed on bankruptcy schedules.

**39.**    Deutsche Bank Trust Company Americas, at all time relevant to this complaint, was acted as Indenture Trustee on over 70 securitized trust created by American Home. The securitization business was conducted out of 1761 East St. Andrews Place, Santa Ana, CA. 92705.  On August 30, 2007 Deutsche Bank wrote a letter to all securitization loan servicers as Trustee, reminding them that loans are to be serviced and foreclosed in keeping with all Federal, state, and all local rules and regulations, and to "at all times" represent the servicer in its representative capacity and Deutsche Bank as Trustee of ( insert name of relevant trust)  in all pleadings, cooprespondance and relevant documents.

**40.**   Deutsche Bank and Wells Fargo have filed cure claims, breach claims, default management and indemnification claims against American Home Mortgage for GSR 2006-OA1. **SEE** TRO EXHIBIT # 35

**41.**   In addition, Deutsche Bank has filed an exception report which shows that MERS assignments are completely missing on over 6021 loan, and on 2 it states not received, 1 unrecorded, and 23 more missing intervening assignments. So on 6047 out of 7276 total loans, chain of assignments are missing. **SEE** TRO EXHIBIT #34

## DEFENSIVE CLAIMS
### UNCLEAN HANDS

**42.**    American Home, AHMSI, Goldman Sachs, Deutsche Bank, and Wells Fargo have unclean hands, as they "force placed" this insurance  without proper disclosure as required by the Homeowner Protection Act of 1996, which sets forth that any lender paid mortgage insurance ("LPMI") must be disclosed to the borrower. These same parties attempted to hide the problems with this loan from TRIAD in order to collect on this insurances, and most likely additional layers of insurances.  Wells Fargo as master servicer would be required to collect this insurance on behalf of the Trust. American Home was required to file reports to the insurer TRIAD at the inception of default through foreclosure. Deutsche Bank as Indenture Trustee was responsible for acting as trustee in the foreclosure

process. Goldman Sachs participated in this fraud to protect itself from the backlash of repurchase liabilities for breaches it is contractually bound by in the securitization transaction. American Home is liable as seller to Goldman Sachs, and Goldman Sachs as seller is liable to GSR 2006-OA1 trust certificate holders. All acted in furtherance of their own interests to the detriment of the Plaintiff.

**43.** Defensive claims also include unclean hands for failure to disclose ownership under  under TILA 15 U.S.C. 1641(f)(2), after numerous direct request in letters, emails, phone calls, petitions, hearings, to all trust parties. Including a conspiracy to derail litigation, going as far as to put a witness on the stand in a Federal Court to testify that there was no obligation to comply with 15 USC 1641(f)(2).

**44.** Defensive claims include failing to follow insurer TRIAD loss mitigation guidelines and instead misrepresenting the loan to TRIAD and failing to communicate an reasonable offer to settle this matter as early as April of 2007. Instead the parties attempted to collect on insurances.

## COUNT ONE

### VIOLATIONS OF THE TRUTH IN LENDING ACT PRIOR TO CLOSING

**45.** Plaintiff realleges all of the foregoing paragraphs.

**46.** Plaintiff seeks a remedy under the Truth in Lending Act ("TILA"), 15 U.S.C. 1601 et seq., to obtain rescission, injunctive relief, redress, restitution, disgorgement, money damages, attorneys' fees and other equitable relief against Defendants for engaging in Unfair or deceptive acts or practices in violation of TILA, 15 U.S.C. 1601 et seq., and its Implementing Regulation Z, 12 C.F.R. Part 226.

**47.** Through various forms of media including, but not limited to; print ads, brochures, the Internet, direct mailers and promotional documents, ABC marketed, advertised and warranted that the MTA Power Option Arm (herinafter "POA") loan was fit for the

ordinary purpose for which it was presented as a financial tool to build wealth and eliminate debt via a 1% interest rate.

48.    AHM through ABC, marketed, advertised, and sold the POA to Ms. Rush via a direct mail flyer and subsequent phone conversations. In conjunction with the sale, ABC and AHM marketed, advertised and warranted that this loan was a financial tool to build wealth, eliminate debt, and would save large sums of money for the plaintiff via terms of a 1% interest rate, $56,000 cash out, and no prepayment penalty.

49.    Despite AHM representations, the loan program conceals material fact omissions, and material fact misrepresentations, the effect of which is that the actual wealth building is only for the lender at the borrower's expense.

50.    The POA loan advertisements fail to point out the effect of negative amortization, the volatile nature of real estate appreciation, or the true interest rate/payment rate and subsequent negative amortization on the purported savings. This renders them unable to perform the ordinary purposes for which they are sold. "AHM" know this to be true and generally has purchased supplemental credit insurance for the pay option ARM loans retained in the Company's portfolio if such loans have an initial loan-to-value ratio between 75% and 80%. In addition, the Company generally is the beneficiary of a borrower-paid insurance policy on these types of loans if the initial loan-to-value ratio is greater than 80%.

51.    Defendant sells loans with a teaser rate stated in their Truth in Lending Disclosure Statements that misled the plaintiff into thinking she was buying a loan product with loan Interest rate that was lower than the rate actually being charged on her mortgage account.

52.    AHM knew or should have known that the refinancing of her current loan with

and interest rate of 5.25% with the POA loan program promised non-existent benefits of saving money to plaintiff. The POA loan programs do not perform in accordance with the advertisements, marketing materials and written promises disseminated by ABC and AHM nor with the reasonable expectations of ordinary consumers.

**53.**    In addition, Defendant processed the loan application for a 1% interest rate loan which they do not offer.   The Defendant knew or should have known that proper disclosures according to Regulation Z were not being given to the plaintiff at the time the mortgage application was submitted or within 3 days of application.

**54.**    The Plaintiff signed an application for a mortgage with an interest rate of 1% for 480 months. The application misrepresents the product being sold. The Defendant knew or should have known that the product being sold to the Plaintiff was different from what was applied for and what was represented to her in various documents, including the preliminary TILDS.

**55.**    After completing loan applications for consumers, AHM failed to provide documents required within 3 days of receiving an application. The loan application started in early February, appraisal was done on Feb. 22, 2006 and preliminary "Federal Truth-in-Lending Disclosure Statements" and "Good Faith Estimate" were done on March 13, 2006. All loan terms were changed between March 13, 2006 and closing which occurred on April 3, 2006.

**56.**    The  provided  documents  entitled  preliminary  "Federal  Truth-in-Lending Disclosure Statements" and "Good Faith Estimate" did nothing to clarify but instead continued to misrepresent the terms of the loans being offered, the POA loan programs contained a crucial misrepresentation of material facts. The 1% interest rate for 480 months

listed using this exact term on the Loan Application and Good Faith estimate, was actually only offered for 23 days of the loan and the actual interest rate was between 7% and 8%.

57.    The effect of which is meant to confuse an ordinary consumer.

58.    The loan program didn't save the plaintiff any money, but in fact cost her much more then the existing loan with a interest rate of 5.25% locked in for five years which plaintiff was mislead into refinancing. Her previous loan payment was $2611 and her new loan payment was $2055 for a difference of $556 and then the negative amortised interest of $2,300 was added to her principal balance. In fact this loan was immediately costing her $1,744 per month more. In addition the closing costs, this loan cost her over $30,000 equity in her house in the first year.

59.    On the preliminary "Good Faith Estimate" that AHM provided to Plaintiff, AHM has checked the box, "will not" have to pay a prepayment penalty. Then changed this at closing.

60.    On the preliminary documents entitled "Federal Truth-in-Lending Disclosure Statement," and "Good Faith Estimate," the documents differ substantially on every item from the final documents when there was no change in the loan program being sold, or no change in the affiliated companies providing settlement services.

61.    Defendant used deceptive language on its "Good Faith Estimate" and "Truth in Lending Disclosure Statements" that violates the TILA requirements that  language be both "clear and conspicuous" and that such  language not be misleading.

62.    As an example, on the "Good Faith Estimate" at the top of the page it says Type of Loan : Conventional; Rate 1%; Term 480 months. No other rate is mentioned. No where on the document do the words ARM, Pay Option Arm, Negative Amortization, Index

plus Margin, or any clarifications appear.

**63.** On the "Truth In Lending Disclosure Statement" for the Plaintiff's loan, Defendant again used the word "Conventional to describe the loan. No where on this document do the words ARM, Pay Option Arm, Negative Amortization, Index plus Margin, or any clarifications appear. They used "Conventional" on this document and omitted the reference they made to interest rate previous in this space next to conventional. The only reference made to interest rate on this document was APR of "6.320e" which does not reflect the final interest rate in any way.

**64.** AHM could have easily spelled out that the loan was and MTA Pay Option ARM or even just ARM, and the real rate of interest, on the loan application, on the TILDS, or on the GFE.

**65.** The above use of language and conflicting statements was intentional to mislead the Plaintiff as to the true nature of her loan. The only references closer to the actual interest rate on plaintiffs loan documents can be found in places which ask for a APR, a terminology even AHM on their own web site state is not understood by most consumers. This is downloaded from AHM website on April 1, 2007. They state the following; " There is a lot of talk in the industry about annual percentage rate (APR). In fact, APR is a required disclosure on many advertisements. While most people have a vague understanding of APR, few fully understand the concept; yet many make decisions based on it. This is one of those subjects where a little information can be counterproductive. Many people make decisions–bad decisions–using a tool they don't really understand." And also, "You should also be aware that not all lenders follow the rules of calculating APR under the Truth in Lending Act. For example, the application fee may or may not be included in the APR calculation,

depending on how the lender conducts business. Yet the actual fees that are included in the APR do not have to be separately disclosed. One lender may offer an incredibly low rate and show a very low APR because the loan has been packaged to avoid including substantial fees in the APR calculation. Ask to see a breakdown of fees charged."

"For adjustable rate mortgages (ARMs), the APR is based on the "accrual rate" of the loan, which assumes the loan rate will make adjustments based on the current index and margin for the loan and other adjustment restrictions. Of course, economic conditions are likely to change, so the actual APR will probably be different. Many software programs used by lending institutions rely on the person generating the quote to enter the current ARM index and margin. Be careful that your ARM quote doesn't use an inaccurately low index. In fact, you should ask the lender what index and margin was used for the quote. Borrowers can use APR for a quick analysis of a loan proposal. For example, if a lender quotes a rate well below the market rate, but the APR is substantially higher, the borrower can assume the loan requires payment of high fees. As mentioned previously, however, some fees may not be included in the APR, so this "quick check" isn't foolproof."

66.    Considering this statement, AHM by their own admission understands that most borrowers don't understand the APR or how it is calculated. They also admit that lenders can change the outcome of the APR based on how they "package" a loan. AHM uses the 1% teaser rate to change the outcome of the APR rate presented in the "Truth and Lending Disclosure Statement" thereby rendering it a false misrepresentation of true disclosure. Also, their admission of a "vague understanding" by consumers in conjunction with all of their other conflicting statements in loan documents prove a pattern of intentionally trying to deceive through methods they are very familiar with.

67.     In truth, AHM is presenting terms and interest rates it has no intention of

offering. The mortgage note issued to Plaintiff was for a mortgage that charged 1% interest

for only 23 days. After that time, the rate of interest immediately went to a eight times higher

rate and has been adjusting to a much higher interest rate each month thereafter. This has

caused the loan of the Plaintiff to negatively amortize and is causing her to pay a higher

interest rate than represented in the majority of the documents.

## COUNT TWO

### SERVICING MORTGAGE LOANS WITHOUT MANDATORY

### TRUTH IN LENDING DISCLOSURES SUBSEQUENT TO CLOSING

68.     Plaintiffs reallege all of the foregoing paragraphs.

69.     The actual mortgage note issued to Plaintiff was for a mortgage that charged

1% interest for only 23 days. After that time, the rate of interest immediately went to a rate

eight times higher rate and has been adjusting to a much higher interest rate each month

thereafter calculated on an index plus margin.

70.     This has caused the loan of the Plaintiff to negatively amortize based on a

higher interest rate than represented in the majority of the documents.

71.     The Truth in Lending Act requires mandatory disclosures to adjustable rate

mortgage customers subsequent to closing. Among the requirements of Regulation Z,  is a

duty of the servicing lender to notify variable rate customers 25 days prior to making any

change in the interest rate on a variable rate loan.

72.     According to Federal Regulations, the following disclosures must be given:

§ 226.20 Subsequent disclosure requirements. An adjustment to the interest rate with or

without a corresponding adjustment to the payment in a variable-rate transaction subject to

§226.19(b) is an event requiring new disclosures to the consumer. At least once each year during

which an interest rate adjustment is implemented without an accompanying payment change, and

at least 25, but no more than 120, calendar days before payment at a new level is due, the

following disclosures, as applicable, must be delivered or placed in the mail:

(1) The current and **prior interest rates.**
(2) The index values upon which the current and prior interest rates are based.
(3) The extent to which the creditor has foregone any increase in the interest rate.
(4) The contractual effects of the adjustment, including **the payment due after the adjustment is made,** and a statement of the loan balance.
(5) **The payment, if different from that referred to in paragraph (c)(4) of this section, that would be required to fully amortize the loan at the new interest rate over the remainder of the loan term.**
 *[Codified to 12 C.F.R. § 226.20]*
 *[Section 226.20 amended at 52 Fed. Reg. 48671, December 24, 1987, effective December 28, 1987, but compliance optional until October 1, 1988]*

73.    The Defendant sold Plaintiff a loan wherein the Defendant apparently was

charging 1% note interest for the first 23 days of April 2006. In the month of May 2006,

Defendant began charging a note interest rate of over 7% without providing advance notice

consistent with the foregoing Regulation Z requirements. Even though the rate continued to

rise each and every month the disclosure of rate increases came after they had been

implemented with no new payment schedule needed to fully amortize the loan, therfore the

Defendant did not provide advanced notice consistent with the foregoing Regulation Z

requirements, or identify the payment which would be required to fully amortise the loan.

74.    Defendant failed to make disclosures thereby collecting interest illegally on

plaintiffs loan.

22

**COUNT THREE – FALSE ADVERTISING**

    **75.**    Plaintiff realleges all of the foregoing paragraphs.

    **76.**    Plaintiff seeks a remedy for deceptive advertising and bait and switch sales of mortgages which violate the the following: TILA, 12 CFR 226.16 (a) ( Regualation Z)

    **77.**    On the preliminary "Good Faith Estimate" that AHM has provided to consumers, AHM has checked the box that is, "will not" have to pay a prepayment penalty. On the closing documents that was changed to "may," which effectively meant, "will" have to pay a prepayment penalty. Plaintiff does have a prepayment penalty on her loan.

    **78.**    AHM through ABC, marketed, advertised, and sold the MTA Power Option Arm (herinafter "POA")  to Ms. Rush via a direct mail flyer and subsequent phone conversations. In conjunction with the sale, ABC and AHM marketed, advertised and warranted that this loan was a financial tool to build wealth, eliminate debt, and would save large sums of money for the plaintiff via terms of a 1% interest rate, $56,000 cash out, and no prepayment penalty.

    **79.**    Under 25. Under TILA, 15 U.S.C. 1601 et seq. and its implementing Regulation Z, 12 C.F.R. Part 226, persons who advertise "closed-end credit," as defined in 12 C.F.R. section

226.2(a)(10), must comply with the applicable provisions of TILA and Regulation Z, including but not limited to, Sections 226.4, 226.22, and 226.24 of Regulation Z, 12 C.F.R. Section 226 et seq. "Credit means the right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. section 226.2(a)(14). "Closed-end credit means consumer credit other than open-end credit," and "open-end credit" is defined as "consumer credit extended by a creditor under a plan in which: (i) The creditor

reasonablycontemplates repeated transactions; (ii) The creditor may impose a finance

charge fromtime to time on an outstanding unpaid balance; and (iii) The amount of credit

that may beextended to the consumer during the term of the plan (up to any limit set by

the creditor) is generally made available to the extent that any outstanding balance is

repaid." 12 C.F.R. sections 226.2(a)(10) & (20). The regulation on advertising says the

following: § 226.24 Advertising.

(a) Actually available terms. If an advertisement for credit states specific credit terms, it
shall state only those terms that actually are or will be arranged or offered by the creditor.
(b) Advertisement of rate of finance charge. If an advertisement states a rate of
finance charge, it shall state the rate as an "annual percentage rate," using that term. If
the annual percentage rate may be increased after consummation, the advertisement
shall state that fact. The advertisement shall not state any other rate, except that a simple
annual rate or periodic rate that is applied to an unpaid balance may be stated in
conjunction with, but not more conspicuously than, the annual percentage rate.
(c) Advertisement of terms that require additional disclosures. (1) If any of the following
terms is set forth in an advertisement, the advertisement shall meet the requirements of
paragraph (c)(2) of this section:
(i) The amount or percentage of any downpayment.
(ii) The number of payments or period of repayment.
(iii) The amount of any payment.
(iv) The amount of any finance charge.
(2) An advertisement stating any of the terms in paragraph (c)(1) of this section shall
state the following terms, (An example of one or more typical extensions of
credit with a statement of all the terms applicable to each may be used.)
as applicable:
 (i) The amount or percentage of the downpayment.
(ii) The terms of repayment.
(iii) The "annual percentage rate," using that term, and, if the rate may be increased
after consummation, that fact.
(d) Catalogs and multiple-page advertisements; electronic advertisements. (1) If a
catalog or other multiple-page advertisement, or an advertisement using electronic
communication gives information in a table or schedule in sufficient detail to permit
determination of the disclosures required by paragraph (c)(2) of this section, it shall be
considered a single advertisement if:
(i) The table or schedule is clearly and conspicuously set forth; and
(ii) Any statement of terms of the credit terms in paragraph (c)(1) of this section
appearing anywhere else in the catalog or advertisement clearly refers to the page or
location where the table or schedule begins.
(2) A catalog or other multiple-page advertisement or an advertisement using
electronic communication complies with paragraph (c)(2) of this section if the table or

schedule of terms includes all appropriate disclosures for a representative scale of amounts up to the level of the more commonly sold higher-priced property or services offered. [Codified to 12 C.F.R. § 226.24][Section 226.24 amended at 66 Fed. Reg. 17338, March 30, 2001, effective March 30, 2001]

**80.**    The Defendant violated the TILA rules on advertising as published in

Regulation Z. Defendants have advertised closed-end credit to consumers by disseminating

false advertisements for mortgage loans, including but not limited to advertisements,

marketing brochures and other mortgage documentation for loans at a lower rate than are

actually being charged, stating teaser rates such as "1%" and other misleading implications.

**81.**    In addition, Defendant is processing applications for a 1% interest rate loan

which they do not offer.  The Defendant knew or should have known that  proper disclosures

according to Regulation Z were not being given to the plaintiff at the time the mortgage

application was submitted. As an example, the Plaintiff signed an application for a mortgage

with an interest rate of  1% for 480 months. The application misrepresents the product being

sold. The Defendant knew or should have known that the product being sold to the Plaintiff

was different from what was applied for and what was represented to her in various

advertisement documents.

**82.**    AHM knew or should have known that the refinancing of plaintiffs current

loan with the POA loan program promised non-existent benefits to plaintiff. The POA loan

programs do not perform in accordance with the advertisements, marketing materials and

written promises disseminated by ABC and AHM nor with the reasonable expectations of

ordinary consumers.

**83.**    At the time of initial direct mail offer and loan application, and then again in

the subsequent Good Faith Estimate, the POA loan programs contained a crucial

misrepresentation of material fact, the 1% interest rate listed using this exact term on the loan application and Good Faith estimate, was blantantly false advertising. The rate of 1% was only offered for 23 days of the loan and the actual interest rate was closer to 8%.

84.    Notwithstanding its advertisements, AHM has never offered an interest rate of 1% "conventional" loans. Instead, a loan that AHM has falsely advertised as a 1% and "conventional" loan is in fact an adjustable rate mortgage (Negative Amortization ARM) for which the interest rate varies each month and the minimum payment is the only aspect the rate relates to. The rate adjusts each and every month that the loan is in existence.

85.    This loan features four payment options, however only the lowest payment is used on the TILDS thereby leaving the plaintiff to assume this is the payment she should be making thereby encouraging the negative amortization aspect of this loan. No other payment option is presented on the TILDS or amortization schedule provided to show this aspect of the loan.

86.    The effect of which is that the loan program didn't save the plaintiff any money, but in fact cost her much more then the existing loan with a interest rate of 5.25% locked in for five years which plaintiff was mislead into refinancing.

87.    The minimum payment amount for the first year of this loan has been the amount that would be due if the consumer truly had  a 1% loan. The actual interest rate charged is in fact considerably higher and varies monthly causing negative amortization. The minimum payment does rise each year at rate which is not explained well anywhere in the loan document of how this increase is calculated. The minimum payment option "will" result in negative amortisation under any circumstances, however they chose to use the word, "may" even though they know each month any unpaid interest is added to the principal of the loan,

so that the principal balance increases rather than decreases for periods during the course of the loan.

**88.**    This loan is not a 1% or "conventional" loan as those terms are understood by consumers. AHM has made mail advertisements, brochures and other documents and information disseminated to consumers and helped mortgage brokers create such advertisements on its behalf. Many of the company's advertisements, brochures and other documents disseminated to customers indicate "boldly" a low teaser rate, without disclosing that the teaser rate is only available for the first month of a 40-year loan and would increase after the first month, and then use very small disclaimers to state that interest would accrue at an APR rate substantially higher than the teaser payment rate.

**89.**    ABC has also completed applications on behalf of consumers and obtained consumers' signatures only at closing on applications for loans that AHM has not offered or that were not available to the consumers, including but not limited to a 1%. AHM requires that applications be signed at the closing so AHM is ultimately responsible for the content of the applications and the related marketing programs. As an example, the Plaintiff in this action signed an application for a 40 year conventional mortgage with an interest rate of 1%. The application was filled out by a broker working on behalf of the Defendant in April 2006. The application was signed at the request of the Defendant at the mortgage closing in April 2006. At no time did AHM disclose to the Plaintiffs that no such loan program was being offered.

**90.**    The effect of which is that the loan program didn't save the plaintiff any money, but in fact cost her much more then the existing loan with a interest rate of 5.25% locked in for five years which plaintiff was mislead into refinancing.

**91.**    The result of which led to devastating loss of financial security, pending foreclosure, substantial loss of equity in home, and continued duress due to an expensive illegal prepayment penalty locking plaintiff into said loan.

**92.**    The mortgage when issued differs substantially from the program advertised and disclosed in AHM documentation and advertising.  In credit advertisements, Defendants have violated the requirements of TILA and Regulation Z by:

A. advertising credit terms other than those terms that actually are or will be arranged or offered by the creditor, in violation of Section 226.24(a) of Regulation Z, 12 C.F.R. 5 226.24(a);
B. stating a rate of finance charge without clearly and conspicuously disclosing the annual percentage rate, and, if the annual percentage rate may be increased after consummation, that fact, and advertising a payment rate without clearly and conspicuously making other required disclosures, in violation of Sections 144(c) and 107 of TILA, 15 U.S.C.sections 1664(c) & 1606, Sections 226.24(b) and 226.22 of Regulation Z, 12 C.F.R. sections 226.24(b) & 226.22, and Section 226.24(b)-4 of the Federal Reserve Board's Official Staff Commentary to Regulation Z, 12 C.F.R, Section 226.24(b)-4, Supp. 1; and stating the period of repayment and/or the amount of a payment, but
C. failing to disclose clearly and conspicuously one or both of the following items: (1) the terms of repayment and (2) the annual percentage rate, using that term, and, if the rate may be increased after consummation, that fact, in violation of Section 144(d) of TILA, 15 U.S.C. section l664(d), and Section 226.24(c) of Regulation Z, 12 C.F.R. section 226.24(c).

**93.**    Therefore, Defendant's representations, as alleged above, were, and are, false or misleading. Defendants' practices constitute deceptive acts or practices.

**94.**    To facilitate this loan a reference is made to a 1% rate throughout all the loan documents to confuse and mislead.

A)The initial mailer;

B)the loan application;

C)the good faith estimate;

D)adjustable rate rider;

F)and adjustable rate note.

**95.**    In the course of advertising and offering a loan to Plaintiff, Defendants have represented, expressly or by implication, that the monthly payment of a specified amount or at a specified rate is the cost of obtaining a loan through AHM. Defendants have failed to disclose or to disclose adequately that;

(1) monthly payment of the specified amount or at the specified rate will result in negative amortization and cause an increase in the total debt during the course of the loan, and

(2) the monthly payment amount will increase. This additional information would have been material to consumers in deciding whether to apply for and obtain a loan through AHM. The failure to disclose, or disclose adequately, this information in light of the representations made was and is a deceptive practice.

**96.**    In the course and conduct of advertising and offering credit, Defendants have represented both orally and written, and on their web site, expressly or by implication, that cash savings or annual savings of refinancing and/or consolidating existing debts into a mortgage loan obtained through AHM.

**97.**    In truth and in fact, the cash savings have not accurately illustrated the potential annual savings or lack thereof in regards to the refinancing and/or consolidating plaintiffs first  mortgage with a rate of 5.25% and home equity loan into a mortgage loan obtained through AHM.

**98.**    Defendants' representations, as alleged in this complaint, were false and misleading.

**99.**    The only references closer to the actual interest rate on Plaintiffs loan documents can be found in places which ask for a APR or a reference to how rate is calculated like index plus margin. A terminology even AHM on their own website say is a

term not understood by most consumers.

**100.**   On the Adjustable Rate Rider they use the term "at a yearly rate of 1%" then reference second the 7.438% rate.   Clearly 1% is used much more frequently then any other rate throughout loan documents and always used previous to any other rate.

## COUNT FOUR – FRAUD AND DECEPTIVE ACTS

**101.**   To facilitate this loan and create a LTV ratio which worked a material fact misrepresentation was made both verbally and on documents provided to plaintiff using a grossly inflated appraisal by counting non-existent finished square footage in plaintiffs home. The appraisal which was done on Plaintiff property on Feb. 22, 2006 ordered by ABC was withheld from the plaintiff even as she requested it. The broker stated a verbal value of $870,000 and put this value on the loan application. At no other time did plaintiff see any other value placed on her property. Upon receiving the appraisal after demanding it for bankruptcy court, plaintiff noticed irregularities. First, the amount of the appraisal was not $870,000 but $790,000. Then upon further inspection  The basement in plaintiffs home was counted as finished as well as an inflated square footage on the main living levels. The appraiser added over $146,000 in value to the appraisal using non-existent finished SF. He also ignored lower comparable properties which were available at that time and instead used the highest comparable he could find even if they were further away and did not reflect the values of the neighbourhood this property was in.

**102.**   Loan would not have been possible using actual finished SF as this would have resulted in a much lower LTV ratio. LTV ratio is one of the selling tools AHM mortgage is describing their portfolio to investors, an incentive for them to inflate appraisals.

**103.**   ABC chose appraiser and controlled transaction completely by withholding

appraisal from plaintiff even though she was forced to pay for it directly to the appraiser. Appraiser refused on previous occasion to give Plaintiff appraisal citing he works for the lender. Finally Plaintiff demanded the appraisal cited the bankruptcy court demanded it, and finally received the appraisal in Jan of 2007 via email from the appraiser 11 months after loan transaction.

**104.**    Fraud occurred when ABC made a false statement of material fact that was known to be or believed to be false when made that was intended to induce the plaintiff to act and led to subsequent action by the plaintiff in reliance on the validity of the representation and resulted in damage to the Plaintiff. This statement of appraised value was represented both verbally, and on the loan application.

**105.**    Fraud occurred in making this misrepresentation, Plaintiff, to her detriment relied on this fact as a major factor in taking out the loan.

**106.**    Fraud occurred in making a promise of a 1% interest rate, $56,000 cash out to pay credit debt, and no prepayment penalty, with no intent to perform that promise when Plaintiff reasonably relied on that representation to her detriment.

**107.**    The Plaintiff acted in reliance upon these statements and the plaintiff thereby suffered injury.

**108.**    AHM has engaged in unfair or deceptive trade acts or practices in violation of Maryland Code §4-88-107, §4-88-108, including, but not limited to: the aforementioned conduct is and was deceptive, false, fraudulent, and constitutes unconscionable, unfair and deceptive commercial practices in that AHM has, by the use of false or deceptive statements and/or knowing intentional material omissions, misrepresented and/or concealed the true nature of the MTA Pay Option Arm loan programs.

**109.** As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff has been damaged as alleged herein, and are entitled to recover actual damages and any other damages permitted by the applicable consumer protection statute, in an amount to be proven at trial as well as attorneys' fees and costs.

**110.** Under the Consumer Fraud and Deceptive Business Practices Act unfair practices are: Deception, fraud, false pretence, false promise, misrepresentation, concealment, or suppression, or omission of a material fact. Throughout this complaint each of these practices can be found.

**111.** Under The Maryland Consumer Protection Act " Md. Code Ann., Comm. Law §§ 13-101, *et seq.* a wide variety of deceptive trade practices are expressly prohibited including, "deception, fraud, false pretence, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same." *Id.* § 13-301(9).

**112.** Defendant paid the broker a YSP of $19794 an exorbitant fee, or "unearned gravy" for delivering such harsh mortgage terms as an above par rate and a prepayment penalty in violation of The Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq., 24 C.F.R. Part 3500 et seq., 1974. (RESPA).

**113.** Defendant also provided a document to plaintiff, which stated, "we will require you to use these affiliated companies, which we have used in the past." Thereby taking away the choice of settlement and title company services allowed by law under RESPA.

**114.** The   remedy is full loan rescission releasing the security interest in the property and giving rise to an Order to Dismiss the Complaint for Foreclosure of Mortgage

**115.** To facilitate this loan a material fact misrepresentation was made of promised

false benefits. AHM disseminates benefits of savings and appreciation of real estate as reasoning for the financial benefit of the Pay Option Arm. Nowhere in their advertising do they account for, include, or explain the aspect of negative amortisation.

116. Savings "does not" occur due to negative amortisation, and based on a higher interest rate. Rate of appreciation is a subjective/market driven variable that cannot and should not be promised as a benefit.

117. Negative amortisation is the only "guarantee" in these loans if you pay the payment amount listed on TILDS, and it is the only facet of the loan not accounted for in any presentation of this loan. Negative amortisation is banned in Md. Commercial Law Code §12-127, 12-311, 12-409.1 and 12-1029

118. AHM uses "Bait and Switch" to totally change the initial loan terms offered to borrower and presented in loan application and Good Faith documents. Between the date of March 13, 2006 and April 3, 2006 every meaningful aspect of loan offered was changed in violation of ECOA .

119. All of these issues reduce this contract to nothing more then a fraudulent sham aimed at inducing the plaintiff to enter into a loan for the sole benefit of unjust enrichment of the defendant

120. No actual index or margin rate was presented in any preliminary documents. The only references to indexes and margins is a generic one that a rate will be calculated using an index and margin. No actual numbers are revealed on what these indexes or margins will be until closing.

121. In the generic disclosures which are seven pages referencing 1, 3, 3, 6, and 12, Month MTA Power ARMs, there is no exact reference stating which program the loan offered

actually is.

**122.**   If seven pages of programs wasn't enough to confuse the ordinary consumer, the references to indexes and margins, and calculators they offer are all based on a 15 or 30 year loan, and plaintiff was given a 40 year loan rendering them useless.

**123.**   To facilitate the fradulent transactions, AHM/ABC uses different documents in the Good Faith presentation and then change the final documents. Two of the noted changes are addding an extra disclaimor using a different document in the mountain of documents at closing and changing the sheet which reads "you will be required" to use our affiliate companies to "you can choose."

**124.**   As a result of the fraudulent misrepresentation, Plaintiff has suffered damages, in that she was sold a loan program that she would not otherwise have purchased had she known of the truthful terms and non-existent benefits of the loan. AHM effectively trapped Plantiff into this loan by the use of a prepayment penalty.  Plaintiff is in bankruptcy and facing foreclosure, is emotionally destroyed, and her good credit is ruined. Damages are severe.

**125.**   ABC baited plaintiff into this transaction promising 1% interest rate and then proceeded to immediately in less then one month increase the rate to 7.43 and increase it every month thereafter. Maryland commercial code states," The interest rate may not be adjusted more frequently than once in a 6 month period.  The amount of increase in any 6 month period may not be more than the equivalent of 1 percentage point above the rate in effect prior to the rate change. §12-118(ii).

**126.**   American Home Mortgage is well aware of how these loans are marketed as they lend directly and promote the same benefits on their own web site.  To date, however,

American Home Mortgage has failed to institute any programs to restructure or replace their practices even as many other lenders, including but not limited to; Ameriquest, New Century, Wells Fargo, Countrywide and most recently Chevy Chase Bank have been given harsh penalties, lost court cases and been forced by state and federal regulators to reform said practices. Many courts, federal agencies, and lawmakers have expressed their findings on many of the issues raised in this complaint. AHM willfully continues to practice predatory practices ignoring all the of overwhelming condemnation of   practices contained in this complaint.

## COUNT FIVE- RICO

### AGAINST GOLDMAN SACHS, GSR 2006-OA1 Trust, Deutsche Bank, Wells Fargo,

### AHMSI, MERS, CITIBANK, AMERICAN HOME DEFENDANTS

**127.**    RICO violation occurred when American Home Goldman Sachs, Deutsche Bank, Wells Fargo, GSR 2006-OA1 Trust, Citibank, MERS, all participated directly or indirectly in a pattern of racketeering activity to acquire an interest in the real property located at 2651 Peery Drive Churchville Md. 21028.

**128.**    The acts of these parties    caused the Plaintiff's injuries. The acts included conspiracy to create a loan by instructing American Home which types of loans and terms were desired. Terms which were detrimental for the Plaintiff such as a Pay Option Arm loan with a large margin and a prepayment penalty. These terms were highly desirable to the "TRUST" parties as they intended to use the characteristics to sell the loan on the secondary market and enrich themselves and enrich themselves further after the sale with fees for managing this loan. This group conspiracy goes on as all of these parties are still in the roles

of manager of this Trust. In this role these parties have attempted to convert and steal this property several time with no regard to the Plaintiff's claims or rescission. In fact, they have chosen to hide themselves to deflect liability.   Defendants are liable for aiding and abetting the predicate acts of the RICO violation because there was an illegal act. The lender was aware of its role in the unlawful act. The lender knowingly rendered substantial assistance in the act.

129.    These parties and all of them are_ liable for a civil RICO violation because the conduct has resulted in ongoing profits to all parties, and because Plaintiff suffered an economic injury. These profits include; Securitizing fees, Management fees, Fees off float on deposit accounts, and for default management and master servicing. Ancillary benefits may also exist such as insurances and residual interest. Investor may own the prepayment penalties collection rights or the securitizer may own that right.

130.    There is clear evidence of a scheme by all Defendants to defraud Plaintiff and many other unwitting parties including investors and the lender's conduct has a "criminal dimension and degree."

131.    All Defendants-disseminate misleading information to investors via their web sites and in  SEC filings to promote their revenue regarding GSR 2006-OA1 Trust.

132.    AHM uses a pattern and practice of affiliated_companies and divisions to control the entire transaction. One such company was Goldman Sachs. Goldman Sachs offered warehouse lines of credit to American Home to originate loans that Goldman Sachs would then securitize. Goldman Sachs does not disclose to the borrower that in fact they are the funder, and instead attempt to hide that fact.

133.    Goldman Sachs and American Home,   uses a pattern and practice of an

incentive, or kickback in the form of a YSP or "unearned gravy" of over $19,794 paid on Plaintiffs loan for delivering a higher than par rate and other harsh loan terms and inflated fees, They paid this incentive for targeting, steering and negligently representing terms and benefits of the MTA Pay Option Arm to induce Plaintiff into taking this loan,  and for delivering a loan they can sell for a higher value to investors. The amount paid was not based on any legitimate services provided, but rather a kickback based on the less favorable loan terms and interest rate delivered. This violates Maryland Finder's Fee Act, MD. CODE ANN. Com. Law §12-801 et seq. And Federal statute Prohibition against unearned fees and fee splitting: 12 USC 2607 (b) 24 CFR 3500.14,  RICO, and RESPA.

**134.**    This payment was made between employer (lender AHM or securitizer Goldman Sachs) to (broker The Loan Corporation ).  It is unclear if the YSP was shared by American Home or American Brokers Conduit. Broker rules state that a mortgage broker may not be a director, officer, or employee of any lender where he places a loan.  Md Commerical Code §12-803 A mortgage broker may not charge a finder's fee in any transaction of the mortgage broker is the lender or an owner, part owner, partner, director, officer, or employee of the lender. Commercial Code §12-804(e)

**135.**    ABC included documents which state " you must use our  affiliate companies," and has utilized a number of divisions and  affiliate companies to facilitate the entire transaction in violation of RESPA.  This is a clear pattern and practice of using affiliates and divisions to control the outcome of the loans it ultimately controls.

**136.**    All Trust Defendants and AHM uses the information such as LTV ratios to qualify the value of the assets it holds. Therefore All Trust Defendants and AHM benefits from over appraising the value of  its real estate holdings to inflate or give the effect of

inflating the overall value of its companies stock

**137.**   Although ABC pulled all three of Plaintiffs credit scores they chose to use only one in her loan information. AHM uses such information as and credit scores to qualify the stability of the borrowers of the assets it holds, Therefore AHM benefits from using only the highest credit scores even when they pull all three credit scores to inflate or give the effect of inflating the overall value of its companies stock

**138.**   American Home Defendants, and all Trust Defendants,  have offered no alternatives for relief and instead only wants to foreclosure and steal property it acquired fraudulently even as Plaintiff alerted counsel for the Defendant in the foreclosure proceedings of her issues.

**139.**   American Home Defendants, and all Trust Defendants knew or should have known that the POA loan poses a real and unreasonable damage to consumers' due to loss of equity, stripped through refinancing costs and misrepresented interest rates. In fact, it has been widely reported that Goldman Sachs did know of the dangers and "bet" heavily against the very securities it was creating. In addition, as the Trust are created a stress test and/or modeling assumptions is done which shows the likely default scenarios. Based on these assumptions "credit enhancements" or insurances are placed to cover losses. It is clear that this loan was considered to be risky as even though Plaintiff had 75% equity according to the appraisal, lender paid mortgage insurance was placed on this loan and charged to Plaintiff as an increase of .47%.

**140.**   As a result of this conspiracy, the plaintiff has suffered irreparable damages to her credit, her security, her home equity, and her well being.

### COUNT NINE- UNJUST ENRICHMENT/RESTITUTION

141.    Plaintiff realleges all of the foregoing paragraphs.

142.    Defendant is a "lender" as that term is defined in Maryland Code.

143.    Plaintiff is a "borrower" as that term is defined in Maryland Code.

144.    Defendant marketed, advertised and/or promoted the loan program as a financial tool to build wealth and eliminate debt, fit for the ordinary purpose for which they were to be used as set forth more fully above.

145.    Defendant accepted payments from Plaintiff for the settlement and subsequent mortgage payments for the loan it originated.

146.    Plaintiff did not receive a loan product that was fit for the ordinary purpose for which it was to be used.

147.    American Home Mortgage breached these representations and implied representations. American Home Mortgage made and/or allowed these misrepresentations to be made with the intent of inducing Plaintiff to enter into a loan agreement.

148.    American Home Mortgage and its affiliated companies overcharged fees of $400 for an appraisal, and $966 for recording fees.

149.    It would be inequitable for Defendant to retain this money and security interest in this property, in light of its misrepresentations and omissions, because Plaintiff did not, in fact, receive products that were in keeping with the promised benefits, and fit for the ordinary purpose for which they were to be used.

150.    If Plaintiff had known the true facts, she would not have entered into loan.

151.    As a result of the foregoing, plaintiff has suffered damages that were directly and proximately caused by the misrepresented loan product. Plaintiff is entitled to damages in an amount to be determined at trial.

152.    The problems that Plaintiff has had with her loan read like a poster for Predatory lending including, but are not limited to: a fraudulent inflated appraisal, misrepresented interest rate and loan terms, bait and switch on every term in the loan, an exhorbitant YSP, document switching, equity stripping, negative amortization, prepayment penalty, conflicting statements both orally and written, targeting a single unmarried woman, steering into a refinance promising non-existent benefits.

## NEW COUNT TEN

### Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA")
AGAINST AMERICAN HOME MORTGAGE DEFENDANTS

153.    Plaintiff realleges all of the foregoing paragraphs.

154.    "AHM DEFENDANTS" were in the business of conducting property settlement services and title services for residential mortgage loans as defined by Title 12-2602 (B)(3)(4) in Maryland for various lenders who originate and service the mortgages.

155.    AHM underwrites each loan submitted to it by its brokers; if it approves the application, the loan is funded in AHM's name. The actions by AHM and its brokers in the origination and making of the mortgage loan constitute a settlement service as defined by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602(3).

156.    Plaintiff was not given any choice or informed of any choice of settlement provider but given a form that said she would have to use American Home's settlement provider. "AHM DEFENDANTS" acting in collusion with Chicago Title/SerivceLink did take away Plaintiff's right of choice of settlement provider in violation of §12-119 of Md Code and §12-120 (c). Documents show that ServiceLink was the appointed settlement agent as an invoice was sent on 3/10/2006 before Plaintiff was even given a

Good Faith estimate from American Home.

**157.**    "AHM" DEFENDANTS" did participate in an undisclosed affiliated business arrangement with ServiceLink("SL") and Chicago Title, as defined under Title 12-2602 (B)(7)(A)(B)and (8)(D). Plaintiff has obtained fee scheduled filed with Maryland Insurance Administration which show that a lender affiliated platform and fee schedule was filed.

**158.**    American Home took away Plaintiffs rights by not following the requirement set forth as follows: If the lender conditions the settlement under §12-120 (c) then the lender must  §12-119 (b)(1) provide the borrower with, The lender's requirements concerning selection of an attorney, title insurance company, or other person to perform settlement services relating to the purchase of the real property; (2) The borrower's ability to choose an attorney or title insurance company under another §12-120 (c) of this subtitle; and (3) A good faith estimate of the fee or fees to be charged to the borrower. (c) if notice is required by this section: (1) The notice shall be provided at the time of or within 3 days after the application for a loan, or earlier upon request; and (2) A copy of the notice, signed by the applicant, shall accompany any executed application for a loan.

**159.**    The statement in Plaintiff's Good Faith documents and ABA documents, "You will be required," took away Plaintiff's  choice of settlement and title company services allowed by law in violation of 12 U.S. C. § 2607(d)(2) stating a lender can not require the use of title company directly or indirectly.

**160.**    AHM brokers' fees are paid in three different ways, with all costs ultimately borne by the borrower: (a) through "up-front" charges, fees, or points, with points being a percentage of the loan amount paid to the broker (usually at loan closing from the proceeds of the loan); (b) through "back-end" fees (also called "yield spread premiums"), whereby the borrower accepts an interest rate that is higher than AHM's par interest rate and AHM makes a direct payment to the broker for securing the higher-than-par loan; and (c) through

"miscellaneous" fees, which are usually paid out of loan proceeds. During the 2006 period, almost all of AHM's borrowers incurred front fees, one-third incurred both front and back fees, and one-tenth incurred all three kinds of fees.

161.    AHM's policies and practices, as alleged herein, constitute:

a.              The giving of a kickback or thing of value for the referral of settlement service business involving a federally related mortgage loan in violation of Section 8(a) of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(a); and

b.              The giving of a portion or percentage of a settlement service charge involving a federally related mortgage loan other than for services actually performed in violation of Section (8)(b) of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(b).

162.    AHM is responsible for the fees charged to borrowers for its loans. It individually underwrote and funded each loan, it approved each loan fee paid to a broker, and it aided its brokers in obtaining unearned fees described herein. With respect to a substantial portion of the loans, AHM was aware that little or no services were being performed in exchange for the broker charges. Further, AHM knew that the total of the broker compensation did not bear a reasonable relation to the level of the goods and services that the brokers provided or performed. In fact, AHM aided its brokers in obtaining the unearned fees described herein by performing many of the services for the brokers.

163.    AHM's paid The Loan Corporation a YSP of $19794 which is an excessive fee which could not be based on any actual services rendered. AHM's payments to brokers, the performance of services for the brokers by AHM for which the brokers received payment, and the approval and assistance given to brokers by AHM that provided an opportunity to charge unearned fees, constituted things of value in exchange for the brokers' referrals of loan business to AHM.

164.    Plaintiff alleges that she was offered a higher then par rate loan, a prepayment penalty, and charged inflated fees based on a rate sheet provided to The Loan Corporation and a demand from Goldman Sachs for such high rate pay option arm loans.

165.    The payment to The Loan Corporation of a $19,792, yield spread premium ("YSP") was an illegal kickbacks or referral fees under RESPA where the lender's payments were based exclusively on interest rate differentials reflected on rate sheets, and the fee was not reasonable for the services performed. In fact the loan was assigned to American Brokers Conduit just two week after application was made. One or two points would be ample compensation to a mortgage broker and the industry standard. On this loan one point would have been $5, 865 or two points $11,730. Both those fees would have been excessive for a broker who simply flipped the loan to the lender. The broker also was paid additional fees of $810 on top of the YSP. 12 USC 2607(a)

HUD's regulations as noted state: "If the payment of a thing of value bears no relationship to the goods or services provided, then the excess is not for services or goods actually performed or provided." 24 CFR 3500.14(g)(2).

166.    When American Home Mortgage funded the loan on a Goldman Sachs warehouse line, it was actually Goldman as funder who paid the yield spread premium that violated Section 8 of RESPA. Goldman Sachs regularly paid YSP's where pursuant to a prior understanding with mortgage brokers, they paid yield spread premiums to the brokers based solely on the brokers' delivery of above par interest rate loans.

167.    Clearly, in all of these instances, the source of the payment — whether from consumers, other settlement service providers, or other third parties — is not relevant in determining whether the fee is earned or unearned because ultimately, all settlement payments come directly or indirectly from the consumer. See 24 CFR 3500.14(c). Therefore, a single settlement service provider violates Section 8(b) whenever it receives an unearned fee.

168.    It is unclear if American Brokers Conduit paid this fee entirely to The Loan Corporation or shared in some part of it under a Joint Venture agreement. American Home routinely engaged in such joint ventures with various brokerage houses. Discovery is necessary to prove this claim. 12 USC 2607(b).

**169.**    It is HUD's position that Section 8(b) proscribes the acceptance of any portion or part of a charge other than for services actually performed. Inasmuch as Section 8(b)'s proscription against "any portion, split, or percentage" of an unearned charge for settlement services is written in the disjunctive, the prohibition is not limited to a split. In HUD's view, Section 8(b) forbids the paying or accepting of any portion or percentage of a settlement service — including up to 100% — that is unearned, whether the entire charge is divided or split among more than one person or entity or is retained by a single person. Simply put, given that Section 8(b) proscribes unearned portions or percentages as well as splits, HUD does not regard the provision as restricting only fee splitting among settlement service providers. Further, since Section 8(b) on its face prohibits the giving or accepting of an unearned fee by any person, and 24 CFR 3500.14(c) speaks of a charge by "a person," it is also incorrect to conclude that the Section 8(b) proscription covers only payments or charges among settlement service providers.

In the preamble to HUD's 1992 final rule revising Regulation X (57 FR 49600 (November 2, 1992)), HUD stated: "Section 8 of RESPA (12 USC 2607) prohibits kickbacks for referral of business incident to or part of a settlement service and also prohibits the splitting of a charge for a settlement service, other than for services actually performed (i.e., no payment of unearned fees)." 57 FR 49600 (November 2, 1992).

**170.**    TIMELY DISCLOSURES - The Loan Corporation and American Brokers Conduit did not provide the Plaintiff with a good faith estimate within 3 days of making loan application. Plaintiff's credit report was pulled on Feb. 17, 2006, the first set of Good Faith documents was sent out in March, and appraisal was done on Feb. 22, 2006, and the loan was assigned to American Broker Conduit on March 7, 2006.

**171.**    Plaintiff received nothing from American Brokers Conduit until March 13, 2006. Even then American Brokers Conduit sent out good faith estimates that bore no resemblance to the final loan transaction. No subsequent disclosure were given before closing.

**172.**    RESPA also requires the disclosure of settlement costs to consumers at the time of or within 3 days of loan application, and again at the time of real estate settlement. 12 USC 2603-4. RESPA's requirements apply to transactions involving a "federally related mortgage loan" as that term is defined at 12 USC 2602(1).

**173.**    In a 1992 rule concerning RESPA, HUD specifically listed yield spread premiums as an example of fees that must be disclosed. The example was codified as Illustrations of Requirements of RESPA, Fact Situations 5 and 13 in Appendix B to 24 CFR part 3500. (See also Instructions at Appendix A to 24 CFR part 3500 for Completing HUD-1 and HUD-1A Settlement Statements.)

**174.**    There was no disclosure of the YSP on the Good Faith Estimates as required under HUD policies. HUD requires the disclosure of yield spread premiums on the Good Faith Estimate and the HUD-1.

The 1999 Statement of Policy said:
The Department has always indicated that any fees charged in settlement transactions should be clearly disclosed so that the consumer can understand the nature and recipient of the payment. Code-like abbreviations like 'YSP to DBG, POC', for instance, have been noted. [Footnote omitted.] Also the Department has seen examples on the GFE and/or the settlement statement where the identity and/or purposes of the fees are not clearly disclosed.

The Department considers unclear and confusing disclosures to be contrary to the statute's and the regulation's purposes of making RESPA-covered transactions understandable to the consumer. At a minimum, all fees to the mortgage broker are to be clearly labeled and properly estimated on the GFE. On the settlement statement, the name of the recipient of the fee (in this case, the mortgage broker) is to be clearly labeled and listed, and the fee received from a lender is to be clearly labeled and listed in the interest of clarity. 64 FR 10086-10087.

**175.**    Plaintiff was charged $810 processing fee for The Loan Corporation

on top of the $19,794 YSP. This was a charge for no services provided.

176.    On this loan Chicago Title's wholly owned company ServiceLink acted as title agent, closing agent, and signing agent. In this capacity it charged Plaintiff $450 Settlement or closing fee, $210 Abstract or Title search fee, and $100 signing fee. Chicago Title also charged $1130 for title insurance.

A single service provider is also prohibited from charging a duplicative fee. Further, a single service provider cannot serve in two capacities, e.g., a title agent and closing attorney, and be paid twice for the same service. The fee the service provider would be receiving in this case is duplicative under 24 CFR 3000.14(c) and not necessary and distinct under 24 CFR 3000.14(g)(3).

A settlement service provider may not levy an additional charge upon a borrower for another settlement service provider's services without providing additional services that are bona fide and justify the increased charge. Accordingly, a settlement service provider may not mark-up the cost of another provider's services without providing additional settlement services; such payment must be for services that are actual, necessary and distinct services provided to justify the charge. 24 CFR 3500.14(g)(3).  The HUD regulation implementing Section 8(b) states: "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates this Section." 24 CFR 3500.14 (c).

177.    In addition under Sections 4 & 5 of RESPA - Plaintiff was charged more at closing  than was disclosed on the Good Faith Estimates.  Considering it is clear SERVICELINK was the chosen provider from the onset of this transaction, and considering "AHM" and "SL" conducted regular business with each  other, the fee schedule would have been clearly determined.

## PRAYER FOR RELIEF ON ALL COUNTS

WHEREFORE, Plaintiff has suffered substantial injury as a result of Defendants ' unlawful acts , and Plaintiff prays for relief in Plaintiff's favor and against ALL Defendants;

a.  A monetary judgment of Six Hundred Thousand Dollars ($ 600,000) or voided interest in property, and;

b.  award  punitive damages for the willful, malicious, negligent, and illegal acts and practices, as set forth in each of the Counts above in a monetary judgment of One Million Dollars ($1,000,000), and;

c.  award actual damages, and;

d.  award Statutorily provided damages, and;

e.  award  reasonable  fees and the costs of this action, and;

f.  award injunctive relief against foreclosure, and;

g.  award remedies allowed under all COUNTS, and;

h.  award  restitution and/or disgorgement of amounts paid by Plaintiff for all the settlement services, payments, interest, unearned fees, and overcharges, together with interest from the date of payment, and;

i.   all other permissible damages, pre-judgment and post judgment interest, and costs of bringing suit, and;

j.   And for such other relief at this Court may deem just and proper.


## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of 12 on all issues so triable.

Plaintiff reserves the right to amend complaint as further investigation and discovery may reveal additional causes of action.

_____    Date: 1-5-10

Paula Rush
Pro se
2651 Peery Drive  Churchville Md. 21028
443-676-3509
paularush@comcast.net

47

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing

has been forwarded, via U.S. Mail,  on this 5th day of January 2009 to:


BIERMAN GEESING & WARD
4520 East West Highway
Bethesda Md. 20814]

Weiner Brodsky Sidman Kider PC
1300 19th Street NW 5th Floor
Washington, DC 20036-1609
phone 202 628 2000
facsimile 202 628 2011

_____

Paula Rush 2651 Peery Drive Churchville Md. 21028
paularush@comcast.net  410-914-5286

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

PAULA RUSH                          *
                                    *
          v.                        *          Civil Action WMN-07-CV-0854
                                    *
AMERICAN HOME MORTGAGE, INC.        *
et al.                              *

     *    *    *    *    *    *    *    *    *    *    *    *

**MEMORANDUM**

Plaintiff filed her Complaint in this action on April 3,
2007, seeking both rescission of her mortgage with Defendants
and damages.  The Court administratively closed the case in
October 2007 due to the dismissal of several named Defendants
and the bankruptcy proceedings of the remaining Defendants.  The
Court reopened the case in August 2009 on Plaintiff's motion and
in December 2009, the Court denied in part and granted in part
the remaining Defendants' Motion to Dismiss.  The Court denied
several of Plaintiffs' claims without prejudice to allow
Plaintiff to seek leave to amend.  On November 13, 2009, the
Substitute Trustee for Rush's Deed of Trust instituted a
foreclosure action with notice provided to Plaintiff on December
7, 2009.  The Substitute Trustee notified Plaintiff of a pending
foreclosure sale scheduled for January 8, 2010.  In response,
Plaintiff filed this Emergency Motion for Temporary Restraining
Order, Paper No. 51, on January 8, 2010, asking this Court 1) to
prevent the foreclosure sale of the Subject Property; 2) to

1

obtain discovery; 3) to have this Court "take jurisdiction of the foreclosure action;" and 4) for this Court to dismiss the proceeding currently pending in Harford County Circuit Court, Maryland, Case No. 12-C-09-003948.  Defendants responded to Plaintiff's motion and the time for Plaintiff's Reply is past. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff's Emergency Motion for Temporary Restraining Order will be denied as set forth below.

Defendants informed the Court in their Opposition that the Substitute Trustee for Rush's Deed of Trust has cancelled the foreclosure sale scheduled for January 8, 2010, and that there is no other foreclosure sale date scheduled for the property. For this reason, the Court finds that Plaintiff's Motion for a Temporary Restraining Order is moot and will be denied.

Plaintiff's request for discovery is premature and will also be denied.  Plaintiff recently sought leave to amend her Complaint, delaying Defendants' Answer and the issuance of the Court's scheduling order.  Because the scheduling order has not yet been issued, pursuant to Local Rule 104.4, the discovery conference required to take place prior to the beginning of discovery under Federal Rules of Civil Procedure 26(d) and 26(f) has yet to occur.  Plaintiff has provided no good reason as to why discovery must proceed prior to the normal course of events.

Finally, Plaintiff requested this Court to take
jurisdiction over the State court foreclosure action and dismiss
it.  Plaintiff has provided no grounds by which this Court could
dismiss a state court case.  Instead, 28 U.S.C. § 2283 permits a
U.S. Court to only "grant an injunction to stay proceedings in a
State court" under three circumstances: 1) when expressly
authorized by Act of Congress; 2) where necessary in aid of its
jurisdiction; or 3) to protect or effectuate its judgments.  See
also Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 630 (1977).
Here, there is no Act of Congress authorizing a stay nor has
this Court rendered a judgment in need of protection.  Thus, the
Court may only institute a stay if it is necessary in order to
aid its jurisdiction.

The Court does not find that a stay is warranted here to
aid its jurisdiction.  Defendants argue that the foreclosure
case was initially instituted against Rush in December 2006 and
that this Court would not be, therefore, protecting its
jurisdiction by staying the State court foreclosure action.  In
reviewing the docket of the December 2006 foreclosure case, it
appears that the court dismissed it without prejudice for lack
of prosecution in September 2008.  The recent foreclosure case,
however, was instituted in November 2009, well after Plaintiff
filed her case here and Defendants' argument seems groundless.
Nonetheless, Plaintiff's only claims currently before the Court

3

following Defendants' motion to dismiss that would possibly be
affected by the foreclosure action are her fraud claim and her
claim for violation of the Maryland Consumer Fraud and Deceptive
Practices Act, both State court claims.  The State court is
better positioned to decide these claims than this Court.
Moreover, while Plaintiff has moved for leave to amend her
Complaint to state a rescission claim under the Truth-in-Lending
Act, this claim is not yet properly before the Court so there is
no jurisdiction to protect.  Finally, Plaintiff's only federal
claims upon which this Court has allowed her to proceed may
result only in an award of damages, which would be unaffected by
the State foreclosure action.  Thus, this Court has no grounds
by which to "take jurisdiction of the foreclosure action" or to
stay or dismiss that action.

     For the foregoing reasons, Plaintiff's Emergency Motion for
Temporary Restraining Order will be denied.  A separate order
will issue.



                         _____/s/_____
                         William M. Nickerson
                         Senior United States District Judge
February 4, 2010



                              4

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

PAULA RUSH                        *
                                  *
          v.                      *          Civil Action WMN-07-CV-0854
                                  *
AMERICAN HOME MORTGAGE, INC.      *
et al.                            *

      *    *    *    *    *    *    *    *    *    *    *    *

### MEMORANDUM

Before the Court is Plaintiff Paula Rush's Motion to Add
New Party Defendants and Injunctive Relief.  Paper No. 50.  On
December 3, 2009, this Court granted in part and denied in part
Defendants American Home Mortgage Corp., d/b/a American Brokers
Conduit, and AHM SV, Inc's (together AHM Defendants) motion to
dismiss (December 3, 2009, Order and Memorandum).  Paper No. 46.
Plaintiff thus remains with four counts from her initial
Complaint against AHM Defendants: 1) the timeliness of the §
226.18 Truth-in-Lending Act (TILA) claims and violations of §
226.19(b) variable rate disclosure requirements; 2) violations
of the disclosure requirements under 12 C.F.R. § 226.20(c)(5);
4) fraud and deceptive acts; and 5) unjust enrichment.  This
Court allowed Plaintiff leave to amend two of her dismissed
claims, however, a claim under the Real Estate Settlement
Procedures Act (RESPA) and a claim for rescission under the
Truth in Lending Act (TILA).  Plaintiff's motion now seeks to

1

add many new Defendants and claims in addition to the RESPA and TILA rescission claims.

Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the Motion to Add New Party Defendants and Injunctive Relief will be granted in part and denied in part as set forth below.

## I.   BACKGROUND

The relevant facts of this case and the procedural background are summarized in the Court's December 3, 2009, Memorandum.  Paper No. 45.  Briefly, however, Plaintiff's allegations stem from the refinancing of her existing home loan with American Home Mortgage Corp. ("AHMC") d/b/a American Brokers Conduit ("ABC") by entering into an MTA Pay Option ARM loan agreement on April 3, 2006.  AHM SV, Inc. is the servicer of her loan.

Plaintiff now seeks to add numerous new defendants seemingly with the intent of alleging that at least one of them is the current holder of her mortgage note.  The new defendants that Plaintiff is seeking to add are WL Ross and Co. LLC; The Loan Corporation; Goldman Sachs; GSR 2006-OA1 Trust c/o Wells Fargo; Bierman Geesing & Ward; Deutsche Bank National Trust Company; Wells Fargo Bank, N.A.; Citibank N.A.; MERS; and DOE Defendants 1-100.

Plaintiff also seeks to amend her Complaint with a series
of new claims, some of which she includes in an attached revised
Complaint, but most of which she alleges only in the body of her
motion.  The majority of the proposed claims focus on
allegations that AHM Defendants and the proposed defendants hid
the identity of the owner of her mortgage note from her despite
her diligence in pursuing the matter.  In the revised Complaint
attached to her motion she adds the following claims: "Defensive
Claims: Unclean Hands" against AHM Defendants, Goldman Sachs,
Deutsche Bank, and Wells Fargo," and violations of RESPA against
AHM Defendants.  She also appears to be realleging her claims
for false advertising under TILA, and the Racketeer Influenced
and Corrupt Organizations Act (RICO) without alleging any new
facts, although she also adds Goldman Sachs, GSR 2006-OA1 Trust,
Deutsche Bank, Wells Fargo, AHMSI, MERS, and Citibank as
defendants to the RICO claim.  In addition to the claims in the
attached revised Complaint, Plaintiff seems to allege many
additional claims in the body of her motion itself against AHM
Defendants, Goldman Sachs, all GSR 2006-OA1 Trust Parties, [1] and

---

[1] Plaintiff repeatedly uses the term "all GSR 2006-OA1 Trust
Parties" and "Trust Parties" throughout her motion and her
revised Complaint.  She never formally defines the term,
however, and thus the Court is not clear regarding which
potential defendants the phrase includes.  The Court does not
want to continually refer to this problem throughout its
memorandum, however.  Suffice it to say that Plaintiff has not

unknown Doe Parties, including: Unjust Enrichment, Violation of the Homeowner Protection Act of 1998, Fraudulent Concealment (Plaintiff also brings this claim against Bierman Geesing & Ward), Void Interest-Quiet Title, TILA Rescission-Overcharges, TILA Right of Rescission, Failure to Respond to Rescission Letter, and Failure to Respond to Request Under TILA 15 U.S.C. § 1641(f)(2).

## II.    AMENDED OR SUPPLEMENTAL PLEADING: COMPLIANCE WITH FEDERAL RULES OF CIVIL PROCEDURE 15(A) AND (D) AND LOCAL RULE 103

Plaintiff argues that her revised Complaint should be considered a "supplemental complaint" under Federal Rule of Civil Procedure 15(d).  Defendants argue that it is not a supplemental pleading, however, because it is not alleging any claims based on facts that took place after Plaintiff filed her initial Complaint.  When a pleading is revised to include matters that occurred subsequent to the filing of a complaint, it is considered a supplemental pleading under Federal Rule of Civil Procedure 15(d).  Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002).  When the additional allegations include matters that occurred prior and up to the filing of the initial Complaint, they are considered amendments to the pleading and are considered under Rule 15(a).  Rowe v. U.S. Fidelity &

---

stated any claims sufficiently against "all GSR 2006-OA1 Trust Parties" or the "Trust Parties."

Guaranty Co., 421 F.2d 937, 942 (4th Cir. 1970).  While the

distinction is not particularly relevant in terms of the

standard for granting a motion to amend,[2] it is relevant as to

whether the revised complaint must comply with Local Rule 103.

Here, Plaintiff alleges that she did not discover the newly

proposed defendants until after the filing of her Complaint due

to their efforts to conceal the identity of the owner of her

loan.  The majority, if not all, of the new matters relate to

events occurring prior to the filing of her initial Complaint,

however.  Plaintiff must, therefore, comply with Local Rule 103.[3]

Under Local Rule 103.6.c, when filing an amended complaint

under Rule 15(a), the party must file both a clean copy of the

amended pleading and a blacklined copy of the pleading.  Here,

Plaintiff filed both a clean copy and a blacklined copy of the

amended Complaint, but they contain only some of the proposed

amendments discussed in Plaintiff's motion.  Thus, only the

proposed defendants and new claims contained in the amended

---

[2] Franks, 313 F.3d at 198 n.15.  In either an amended or
supplemental complaint, leave to amend or supplement should be
freely granted and denied only where good reason exists such as
prejudice to defendant.  Id.

[3] Plaintiff's amended claims for "unclean Hands," "fraudulent
concealment," and "void interest-quiet title," may include
events that took place following the filing of the initial
Complaint.  Plaintiff does not provide any information in her
Complaint, however, as to when the specific alleged events
occurred relating to those claims.  Moreover, none of these
claims are properly alleged as discussed infra.

Complaint, her claims for "Unclean Hands" and violations of

RESPA, comply with Local Rule 103.6.c.  Amendments discussed

only in the motion itself, but not in the amended Complaint

attached to the motion will, therefore, be denied on the basis

of Plaintiff's non-compliance with Local Rule 103.6.c.[4]

## III. STANDARD FOR GRANTING LEAVE TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure allows

for the amendment of pleadings by leave of court.  Courts are

instructed to freely give leave when justice so requires.  Fed.

R. Civ. P. 15(a)(2).  "Leave to amend is not to be granted

automatically," however.  _Deasy v. Hill_, 833 F.2d 38, 40 (4th

Cir. 1987).  "A motion to amend should be denied only where it

would be prejudicial, there has been bad faith, or the amendment

would be futile."  _Nourison Rug Corp. v. Parvizian_, 535 F.3d

295, 298 (4th Cir. 2008).

---

[4] In addition, under Local Rule 103.6.d, the party seeking to
amend must attempt to obtain the consent of the other counsel
and state in the motion to amend whether such consent has been
obtained.  The Parties dispute whether Plaintiff sought such
consent.  Plaintiff states in her motion that she discussed the
Amended Complaint with counsel for AHM Defendants, and that they
did not object.  AHM Defendants, however, allege that Plaintiff
did not discuss adding the parties and that they did not consent
to an amended pleading beyond the two claims that the Court gave
leave to amend.  The Court need not resolve this dispute,
however, as the Court will not be granting Plaintiff's motion as
to the newly proposed defendants and will only be granting her
motion to amend as to portions of Plaintiff's proposed RESPA
claim, for which this Court granted Plaintiff leave to amend.

Defendants here do not argue prejudice or bad faith, but argue that the amendments, including both proposed parties and claims, would be futile and, therefore, that leave should be denied.  Futility arguments are governed by the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Openshaw v. Cohen, Klingenstein & Marks, Inc., 320 F. Supp. 2d 357, 359 (D. Md. 2004) (citing Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995)).  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997) (citing Little v. Federal Bureau of Investigation, 1 F.3d 255, 256 (4th Cir. 1993)).

## IV.  COMPLIANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 8

First and foremost, Plaintiff's Amended Complaint does not conform to Rule 8(a) and (e).  As discussed previously by this Court in its December 3, 2009, Memorandum, Rule 8(a) requires

that the Complaint contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."
Moreover, under Rule 8(d), the averments of the Complaint must
be "simple, concise, and direct."  Although the Court gave
Plaintiff significant leeway on her initial Complaint in
recognition of her pro se status, see Haines v. Kerner, 404 U.S.
519, 520 (1972), Plaintiff's amendments here for the most part
have confounded this Court and are significantly lacking in
detail as to who did what and when.  Plaintiff goes through a
lengthy explanation of each of the proposed additional
defendants, but it is never clear to the Court what role the
proposed defendants have in relation to her loan or why she has
any claim against them.  Plaintiff alleges that MERS, Goldman
Sachs, and Deutsche Bank have at various times claimed ownership
of her mortgage note.  She also alleges that GSR 2006-OA1 Trust
is the purported assignee or pledge of her mortgage note and
Citibank has an unknown interest in her loan.  At no time,
however, does she ever clarify who is the actual owner of her
loan.  The best the Court can surmise is that most, if not all,
of the proposed defendants were involved in the origination,
servicing, or holding of mortgages and may have been involved in
those activities in relation to her loan, but Plaintiff never
makes this clear.

For the most part, Plaintiff's factual allegations against each of the parties, other than the AHM Defendants, is that they refused to answer her letters and phone calls, failed to reach out to try to resolve the issues, and conspired to prevent her from discovering the true owner of her loan.  Plaintiff does not allege, however, why they should have responded to her requests. Moreover, Plaintiff does not even attempt to state any claims against two of the proposed defendants, WL Ross and Co. LLC, and The Loan Corporation.  Thus, while the Court has sympathy for Plaintiff in attempting to understand the great complexities of securitized loans, she has failed to make clear how she has any actual claim against any of these proposed additional defendants and Plaintiff's motion to amend her Complaint to add these defendants will be denied.

**IV.   THE NEW CLAIMS IN THE AMENDED COMPLAINT**

Even if this Court were able to look past Plaintiff's very confusing amended Complaint by virtue of her pro se status, amendment to add these new claims would be futile as they could not withstand a motion to dismiss.  First, Plaintiff's amended Complaint attached to her motion realleges a claim for false advertising under TILA, 15 U.S.C. § 1664, without alleging any new facts.  Her false advertising claim is not viable, however, for the same reason that she failed to adequately allege a false advertising claim in her initial complaint – there is no private

9

remedy for a TILA false advertising violation.  Dec. 3, 2009,

Memo. at 39.  Similarly, although Plaintiff adds Goldman Sachs,

GSR 2006-OA1 Trust, Deutsche Bank, Wells Fargo, AHMSI, MERS, and

Citibank as defendants to the RICO claim, 18 U.S.C. § 1961 et

seq., her amended claim suffers from the same deficiency as the

RICO claim in her initial Complaint - she alleges no enterprise

separate from the proposed defendants.  Id. at 49.  Thus, her

realleged RICO claim is also not viable.

Plaintiff alleges only two new claims in the attached

Amended Complaint.  The first Plaintiff labels as the "Defensive

Claim" of "Unclean Hands."  The doctrine of unclean hands is a

defense against a claim in equity.  ABF Freight System, Inc. v.

N.L.R.B., 510 U.S. 317, 329-330 (1994) ("The unclean hands

doctrine closes the door of a court of equity to one tainted

with inequitableness or bad faith relative to the matter in

which he seeks relief...") (internal quotations omitted).

Plaintiff's intent with this "defensive claim" seems to be to

seek injunctive relief that would have the effect of preventing

foreclosure in the currently pending State court foreclosure

proceeding.  Plaintiff alleges that the proposed defendants have

unclean hands for three reasons: 1) "they 'force placed' this

insurance without proper disclosure as required by the Homeowner

Protection Act of 1996" and attempted to hide the problems with

this loan from TRIAD;[5] 2) they failed to disclose ownership as required by TILA 15 U.S.C. § 1641(f)(2) after numerous requests; and 3) they failed to follow insurer TRIAD loss mitigation guidelines.  As to the first and third reasons, the Complaint does not make clear how the AHM Defendants and proposed defendants' actions toward TRIAD create any cause of action on the part of Plaintiff.  Thus, they cannot be said, at least based on the facts presented by Plaintiff, to create a "defensive claim" of unclean hands that could result in injunctive relief prohibiting foreclosure.

As to Plaintiff's argument that the AHM Defendants and proposed defendants violated 15 U.S.C. § 1641(f)(2) by not disclosing the ownership of her loan.[6]  15 U.S.C. § 1640(a) provides for a claim for damages for violation of § 1641(f), of which Plaintiff is well aware since she stated this violation as a separate claim in her motion.  Plaintiff does not explain how the disclosure requirement would also provide grounds for injunctive relief to prevent foreclosure as there is no such statutory provision.  When a statute creating a duty provides for an explicit remedy for a violation of that duty, courts are wary of providing other, non-statutory relief.  <u>Middlesex County</u>

---

[5] Plaintiff does not explain in her amended Complaint who or what TRIAD is, but the Court understands it to be an insurance company.

[6] <u>See</u> <u>infra</u> at p. 23 for a discussion of 15 U.S.C. § 1641(f)(2).

Sewerage Authority v. National Sea Clammers Ass'n, 453 U.S. 1,
14-15 (1981) ("[I]t is an elemental canon of statutory
construction that where a statute expressly provides a
particular remedy or remedies, a court must be chary of reading
others into it."). Thus, the Court will deny Plaintiff's motion
to amend to add a "defensive claim" of "unclean hands" as it
would be futile.

The second amended claim, count ten in the amended
Complaint, is for violations of RESPA, 12 U.S.C. § 2601 et seq.
Congress enacted RESPA to protect home buyers "from
unnecessarily high settlement charges caused by certain abusive
practices." 12 U.S.C. § 2601(a). To that end, RESPA prohibits
the paying or accepting of "kickbacks or referral fees that tend
to increase unnecessarily the costs of certain settlement
services." Id. § 2601(b)(2). Plaintiff alleges that AHM
Defendants violated RESPA in three ways: 1) by requiring her to
use their affiliated settlement provider, Service Link; 2) by
paying a yield spread premium (YSP) of $19,792 to her mortgage
broker, The Loan Corporation; and 3) by not providing Plaintiff
with a good faith estimate within three days of her loan
application.[7]

_____

[7] Plaintiff also seems to be alleging that Service Link, who she
alleges acted as the title agent, closing agent, and signing
agent on her mortgage note, violated RESPA by charging
duplicative fees for its services: settlement fee, abstract or

Section 2607(a) of RESPA prohibits the giving and accepting

of fees, kickbacks, or any "thing of value pursuant to any

agreement or understanding, oral or otherwise, that business

incident to or a part of a real estate settlement service

involving a federally related mortgage loan shall be referred to

any person." Section 2607(b) prohibits the giving and accepting

"any portion, split, or percentage of any charge made or

received for the rendering of a real estate settlement service

in connection with a transaction involving a federally related

mortgage loan other than for services actually performed."

Section 2607(c)(4) provides a limitation on the prohibitions,

however, for "affiliated business arrangements so long as (A) a

disclosure is made of the existence of such an arrangement to

the person being referred and, in connection with such a

referral, such person is provided a written estimate of the

charge or range of charges generally made by the provider to

which the person is referred [within a certain time frame

depending on how the referral is made]; (B) such person is not

----

title search fee, signing fee, and title insurance. The heading
to Plaintiff's RESPA count only states that it is against AHM
Defendants, however. Moreover, this Court dismissed Plaintiff's
initial Complaint against Service Link on October 25, 2007.
Paper No. 33. Moreover, even if Plaintiff were attempting to
amend her Complaint to re-add Service Link as a defendant, the
claim would be futile as RESPA violations under § 2607 have a
one year statute of limitations and Plaintiff is bringing this
claim well more than one year after the violation. Thus, to
the extent Plaintiff is attempting to amend her Complaint to
state a claim against Service Link it will be denied.

required to use any particular provider of settlement services,

and (C) the only thing of value that is received from the

arrangement, other than the payments permitted under this

subsection, is a return of the ownership interest or franchise

relationship. . . ."

AHM Defendants argue that amendment to add a claim

regarding the requirement to use their settlement provider would

be futile because Plaintiff's documents prove that she was not

required to use any affiliated providers.  They argue that the

Good Faith Estimate signed by Plaintiff has a section for

identifying any required service providers and it is blank so

she could not have been required to use their affiliated

provider.[8]  The lack of disclosure of a required settlement

_____

[8]    This Court discussed at length in its December 3, 2009,
Memorandum its ability to use documents external to the
Complaint in deciding on a motion to dismiss and will not repeat
that discussion here.  Suffice it to say, however, in that
discussion the Court recognized the Good Faith Estimate attached
to Plaintiff's initial Complaint as part of the Complaint and it
may be considered on a motion to dismiss, or in this case to
determine the futility of Plaintiff's amended claims.

    AHM Defendants also point to a disclosure signed by
Plaintiff that they have an affiliated business arrangement with
Homegate Settlement Services, who may provide flood
determination and appraisal services.  As the Court determined
in its December 3, 2009, Memorandum, the Affiliated Business
Arrangement Disclosure attached by AHM Defendants to their
motion is disputed by Plaintiff and, therefore, may not be
considered on a motion to dismiss.  Moreover, even if the Court
were to consider it, it only mentions Homegate Settlement
Services and not Service Link or the services that Service Link
provides.  Thus it would fail to show that AHM Defendants had

provider does not prove that she was not required to use Service

Link as her settlement provider, however.   Taking Plaintiff's

allegation as true, which this Court must here, it does nothing

more than show that AHM Defendants didn't disclose it on the

Good Faith Estimate.   Thus, Plaintiff has sufficiently stated a

RESPA claim against AHM Defendants as to her allegation that

they required her to use Service Link without properly

disclosing the affiliation.   As Plaintiff properly states a

claim, the amendment will be permitted.

AHM Defendants next argue that Plaintiff has not clearly

stated who paid the YSP, AHM Defendants or Goldman Sachs, and so

her claim that a YSP was paid in violation of RESPA § 2607(a) is

not viable.   Plaintiff alleges clearly, however, that AHM

Defendants paid the YSP to her mortgage broker, The Loan

Corporation in paragraph 204 of her Amended Complaint.   As to

Goldman Sachs, Plaintiff appears to allege, albeit inartfully,

only that they provided the funding to American Home Mortgage

for her loan.   Thus, AHM Defendants' argument does not

demonstrate that amendment to add a RESPA claim as to the YSP

would be futile.

The Department of Housing and Urban Development and courts

have recognized that payment of a YSP to a broker may be a RESPA

---

disclosed the affiliated business arrangement or that Plaintiff
had not been required to use Service Link.

violation under § 2607(a) either if the service was not actually
provided or if the payment is not reasonably related to the
value of the services actually performed.  See Department of
Housing and Urban Development ("HUD") 2001-1 Policy Statement,
66 Fed. Reg. 53052, 53054-55 (2001); Geraci v. Homestreet Bank,
347 F.3d 749, 751 (9th Cir. 2003).  Here, Plaintiff alleges
that, while the Loan Corporation acted as her mortgage broker,
the YSP paid was unreasonable in relation to the value of the
services provided.  Thus, Plaintiff has adequately alleged a
RESPA claim against AHM Defendants on the basis of the YSP
payment to The Loan Corporation and the motion to amend will be
granted as to that claim.

Plaintiff's final RESPA claim as to AHM not providing the
good faith estimate within three days of her loan application,
however, is without merit.  First, it is not entirely clear of
which RESPA section Plaintiff is alleging a violation.
Plaintiff states in her Complaint that it is a violation of
RESPA § 2603, but this section only requires that the Secretary
of Housing and Urban Development formulate a standard statement
of settlement costs and that a borrower must be presented with
this statement at or before settlement by the person conducting
the settlement.  It does not state any three day rule.
Moreover, Congress provided no express cause of action for
violation of § 2603.  Martinez v. Wells Fargo Home Mortg., Inc.

__ F.3d __, 2010 WL 779549, at *6 (9th Cir. 2010).  In addition,
while the Fourth Circuit has not ruled on this issue, the
Northern District of California concluded, after a thoughtful
analysis, that Congress did not intend to provide an implied
private right of action under § 2603.  Bloom v. Martin, 865
F.Supp. 1377, 1384 (N.D. Cal. 1994).  This Court agrees with
that court's analysis and finds no explicit or implied private
right of action under § 2603.

     RESPA § 2604 (12 U.S.C. § 2604), unlike § 2603, has a three
day requirement, but, similarly to § 2603, the Eleventh Circuit
has determined that it does not provide for a private right of
action either explicitly or impliedly.  Collins v. FMHA-USDA,
105 F.3d 1366, 1367-68 (11th Cir. 1997).  Both the Northern
District of California and the Eleventh Circuit's reasoning
relied primarily on the fact that RESPA explicitly provides for
private rights of action for certain sections, §§ § 2605, 2607
and 2608), but not for § 2603 or § 2604, indicating that
Congress did not intend for there to be a private cause of
action for violations of these sections.  Collins, 105 F.3d at
1368; Bloom, 865 F. Supp. at 1384.  The Court agrees with both
analyses and concludes that Plaintiff's amendment to state a
RESPA cause of action against AHM Defendants for a failure to
provide her with a good faith estimate within three days of

issuing her loan application would be futile and will not be granted.

## V.   THE NEW CLAIMS IN PLAINTIFF'S MOTION

Although the Court is denying amendments found in the motion that have not been included in Plaintiff's Amended Complaint on Local Rule 103 grounds, even if the Court were to consider these additional claims on the basis of Plaintiff's pro se status, the Court would still deny the amendments on futility grounds.

Plaintiff's Count 11 in the motion is for unjust enrichment. Plaintiff alleges that her loan was charged an interest rate increase to pay for an insurance policy issued by TRIAD and that she was not informed of this, but she does not allege how that constitutes unjust enrichment, who was unjustly enriched, or specifically what any of the proposed defendants against whom she states the claim did to cause the unjust enrichment. Thus, she has failed to state a claim for unjust enrichment.

Plaintiff's Count 12 in her motion is for violation of the Homeowner Protection Act of 1998 (HPA), 12 U.S.C. § 4901 et seq. Plaintiff alleges only that her mortgage was charged a .47% interest rate increase to pay for an insurance policy from TRIAD. She also alleges that she did not discover the violation until February 2007. Assuming that these facts would properly

allege a violation of the HPA, which the Court does not decide here, Plaintiff's claim is barred by the statute of limitations. Under 12 U.S.C. § 4907, "no action may be brought by a mortgagor [against any servicer, mortgagee, or mortgage insurer for a violation of the Act] later than 2 years after the date of the discovery of the violation that is the subject of the action." Plaintiff alleges that she discovered the violation in February 2007, but she is bringing this claim as part of her amended Complaint on January 5, 2010, almost three years after the discovery of her claim.

Plaintiff's Count 13 in her motion is for "fraudulent concealment."  Under Maryland law, a claim for fraud must include allegations of a fraudulent statement upon which the Plaintiff reasonably relied, which resulted in damages to the Plaintiff.  <u>Suburban Properties Mgt., Inc. v. Johnson</u>, 204 A.2d 326, 329 (Md. 1964).  Plaintiff's allegations all center around false statements made by AHM and proposed defendants to TRIAD relating to their insurance contract, however, and not around statements made to Plaintiff.  Moreover, Plaintiff does not allege how she relied on these statements or was injured by them.  Thus, Plaintiff has not stated a claim for fraud sufficient to withstand a motion to dismiss.

Plaintiff's Count 14 is titled "void interest-quiet title." Plaintiff requests this relief on two grounds: 1) the principle

of estoppel by silence,[9] and 2) her rescission claim under TILA,
15 U.S.C. § 1635.  The Court will address Plaintiff's claim for
rescission below.  As to Plaintiff's claim that the security
interest should be void on principles of estoppel by silence,
Plaintiff seems to be alleging that the proposed defendants'
obfuscation of the actual owner of her mortgage note prevented
her from bringing a rescission claim against them, which should
prevent them from exercising any security interest that they may
have.

In order to support a finding of estoppel by silence,
Plaintiff would have to allege that the owner of the note was
attempting to assert rights that would not have existed but for
its voluntary conduct that led Plaintiff to change her position
for the worse after relying in good faith on the mortgage note
owner's conduct.  See Dahl v. Brunswick Corp., 356 A.2d 221,
230 (Md. 1976) (quoting 3 J. Pomeroy, Equity Jurisprudence §
804, at 189 (5th ed. 1941)).  Silence by the party attempting to

---

[9] Plaintiff also alleges a theory of estoppel by acquiescence,
which would not apply here.  Acquiescence is theory of quasi-
estoppel when a party waives its ability to exert its rights
when it has acquiesced to certain conduct or circumstances that
abridged those rights for a period of time.  See Alvey v. Alvey,
155 A.2d 491 (Md. 1959).  Here, the proposed defendants are not
alleged to have acquiesced to behavior by Plaintiff in violation
of their rights, but rather are alleged to have either been
silent or actively prevented Plaintiff from knowing who the
actual owner is of her mortgage note thereby preventing her from
exercising her alleged rights.

assert a right will not result in estoppel unless there is a
duty to speak or act.  Id. at 231.  Here, Plaintiff does not
allege that the proposed defendants' silence regarding the
ownership induced her to do anything.  Rather, her allegation is
only that their silence prevented her from exerting her rights
after she entered into the mortgage.  She also does not allege
that the proposed defendants had a duty to speak or act so that
she could file a rescission action other than the statutory
requirement that the servicer reveal the owner or master
servicer under TILA 15 U.S.C. § 1641(f)(2).  Plaintiff's claim
for violation of § 1641(f)(2), as already discussed, provides
monetary damages and not a voided security interest.  Finally,
even if Plaintiff's allegations were sufficient to allow this
Court to void the owner's security interest in her mortgage
note, Plaintiff has still not alleged who the owner of the note
is against whom the Court could issue an injunction voiding
their security interest.  Thus, Plaintiff has not sufficiently
alleged a claim under estoppel by silence principles.

Plaintiff's Counts 15 and 16 in her motion are both claims
for rescission under TILA, 15 U.S.C. § 1635, albeit on different
grounds.  This Court previously granted Plaintiff leave to amend
her rescission claim in its December 3, 2009, Order.  Plaintiff
still fails to allege sufficient facts to state a claim,
however, as she does not identify the proper party against whom

rescission could be exercised.  Plaintiff admits as much in her

motion, "[s]ince the rescission process was intended to be self-

enforcing, failure to comply with the rescission obligations

subjects . . . whomever wants to claim interest, to potential

liability." Pl. Mot. at 22 (emphasis added).  The court notes,

however, that there is a State court foreclosure action

instituted against Plaintiff, in which the Plaintiff in that

action may be required to establish its ownership of her

mortgage note.  For that reason, Plaintiff may be able to raise

her rescission claim there without the same difficulties in

establishing the proper party against whom to claim rescission

here.

　　Plaintiff's Count 19[10] seeks damages under 15 U.S.C. § 1640

for the failure to take action to rescind Plaintiff's mortgage

within 20 days following Plaintiff's notice of rescission as

required by 15 U.S.C. § 1635.  While § 1640(a) specifically

provides for damages for such a failure, they are subject to a

one year statute of limitations, with certain exceptions not

applicable here.[11]  15 U.S.C. § 1640(e).  Plaintiff alleges that

she submitted her notice of rescission to AHM Defendants, to the

---

[10] Plaintiff's motion does not contain enumerated Counts 17 and
18.

[11] Claims under § 1640(a) are subject to a one year statute of
limitations except when they are brought as a defense by
recoupment or set-off to an action to collect the debt.  15
U.S.C. § 1640(e).

"Trust parties" and to attorneys for the "Trust parties" on April 1, 2007.  Thus, the parties had twenty days to respond to her letter, until April 21, 2007.  Plaintiff did not bring this claim for failure to rescind, however, until January 5, 2010, when she filed her amended Complaint, well over one year after her claim became ripe.  Thus, Plaintiff's claim is time barred.

Similar to Count 19, Plaintiff's Count 20 is titled "Failure to Respond to Request Under TILA 15 U.S.C. § 1641(f)(2)."  Section 1641(f)(2) requires that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation."  Section 1640(a) provides for damages for violations of § 1641(f).  While Plaintiff alleges that Count 20 is for violation of § 1641, the facts that she alleges in relation to this Count are almost identical to those under Count 19 for failing to respond to her notice for rescission and do not discuss a request for the name of the owner or master servicer.  While Plaintiff alleges elsewhere in her motion that she made numerous requests for the disclosure of the owner, it also appears that she received responses to some of her requests so it is impossible to know to which request she is alleging a violation of § 1641(f), who failed to respond, and whether or not the violation is brought within the one year time

limitation.    Thus, here again, Plaintiff fails to sufficiently
allege a claim.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to add
new party defendants and injunctive relief will be granted in
part and denied in part.    Plaintiff's motion will be denied as
to adding new party defendants.    Plaintiff's motion will be
granted as to amending her complaint to state a RESPA claim
(Count 10) against AHM Defendants for requiring her to use their
affiliated settlement provider, and for paying a yield spread
premium of $19,792 to her mortgage broker, but will be denied as
to her RESPA claim for failing to provide her with a good faith
estimate within three days of her loan application.    Plaintiff's
motion as to all other claims and additional relief will be
denied.    A separate order will issue.

_____/s/_____

William M. Nickerson
Senior United States District Judge
April 6, 2010

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

_____
                                        )
PAULA RUSH,                             )
                                        )
                    Plaintiff,          )        Case No. 07-854 (WMN)
                                        )
            v.                          )
                                        )
AMERICAN HOME MORTGAGE CORP.,           )
d/b/a AMERICAN BROKERS CONDUIT, and     )
AHM SV, INC.,                           )
                                        )
                    Defendants.         )
_____)

### DEFENDANTS AMERICAN HOME MORTGAGE CORP., D/B/A
### AMERICAN BROKERS CONDUIT, AND AHM SV, INC.'S
### ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

Defendants American Home Mortgage Corp., d/b/a  American Brokers Conduit, and

AHM SV, Inc.,  (collectively, "American Home"), for their Answer to Plaintiff Paula Rush's

("Plaintiff") Amended Complaint filed January 5, 2010, Docket Entry No. 50-1 ("Amended

Complaint"), aver as follows:

### INTRODUCTION

With respect to the allegations of these paragraphs, American Home avers that the allegations of

these paragraphs are immaterial to the litigation and require no response.  To the extent a response is

required, however, American Home denies the allegations of these paragraphs.

### JURISDICTION AND VENUE

1.      American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the

allegations of this paragraph.

2.      American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

3.      American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

## COMPLAINT

4.      American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

## THE PARTIES

5.      American Home avers that the terms of Plaintiff's loan transaction speak for themselves. To the extent a further response is required, American Home denies the allegations of this paragraph.

6.      American Home avers that American Home Mortgage Corp., d/b/a American Brokers Conduit, is a subsidiary of American Home Mortgage Holdings, Inc., which in turn is a subsidiary of American Home Mortgage Investment Corp.  AHM SV, Inc. is an affiliate of American Home Mortgage Corp., and is owned by American Home Mortgage Holdings, Inc.  American Home Mortgage Investment Corp., a publicly traded corporation, filed for bankruptcy on August 6, 2007.  *See In re American Home Mortgage Holdings, Inc., et al.*, No. 07-11047 (Bankr. D. Del.) (jointly administered). To the extent a further response is required, American Home denies the allegations of this paragraph.

7.      American Home avers that American Brokers Conduit is a d/b/a of American Home Mortgage Corp.  To the extent a further response is required, American Home denies the allegations of this paragraph.

8.      American Home avers that American Home Mortgage Investment Corp. is not a party to this matter and that the allegations of these paragraphs are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of these paragraphs.

9.      American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

10.     American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

11.     American Home avers that "WL Ross and Co. LLC" is not a party to this matter and that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

12.     American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

13.     American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

14.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

15.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

16.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

17.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

18.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

19.    American Home avers that no Deutsche Bank entities are a party to this matter and that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

20.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

21.      American Home avers that the allegations of this paragraph are immaterial to the
litigation and require no response.  To the extent a response is required, however, American Home
denies the allegations of this paragraph.

22.      American Home avers that the allegations of this paragraph are immaterial to the
litigation and require no response.  To the extent a response is required, however, American Home
denies the allegations of this paragraph.

23.      American Home avers that MERS is not a party to this matter and that the allegations of
this paragraph are immaterial to the litigation and require no response.  To the extent a response is
required, however, American Home denies the allegations of this paragraph.

24.      American Home avers that the allegations of this paragraph are immaterial to the
litigation and require no response.  To the extent a response is required, however, American Home
denies the allegations of this paragraph.

25.      American Home avers that the allegations of this paragraph are immaterial to the
litigation and require no response.  To the extent a response is required, however, American Home
denies the allegations of this paragraph.

26.      American Home avers that the allegations of this paragraph are immaterial to the
litigation and require no response.  To the extent a response is required, however, American Home
denies the allegations of this paragraph.

## **FACTUAL ALLEGATIONS**

27.      American Home repeats and realleges its averments with respect to the preceding
paragraphs as set forth herein.

28.     American Home avers that the term "AHM" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

29.     American Home avers that term "AHM" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

30.     American Home avers that term "AHM" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

31.     American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

32.     American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

33.     American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

34.     American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  By way of further response, American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

6

35.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

36.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

37.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

38.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

39.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

40.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

41.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

## DEFENSIVE CLAIMS: UNCLEAN HANDS

42.     American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

43.     American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

44.     American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

## COUNT ONE: VIOLATIONS OF TRUTH IN LENDING ACT PRIOR TO CLOSING

45.     American Home repeats and realleges its averments with respect to the preceding paragraphs as set forth herein.

46.     American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

47.     American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

48.     American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

49.     American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

50.     American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

51.     American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

52.     American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

53.     American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

54.     American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

55.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

56.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

57.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

58.    American Home avers that the terms of Plaintiff's loan transaction speak for themselves.  To the extent a further response is required, American Home denies the allegations of this paragraph.

59.    American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

60.    American Home avers that the documents of Plaintiff's loan transaction speak for themselves.  To the extent a further response is required, American Home denies the allegations of this paragraph.

61.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

62.    American Home avers that the documents of Plaintiff's loan transaction speak for themselves.  To the extent a further response is required, American Home denies the allegations of this paragraph.

63.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the documents of Plaintiff's loan transaction speak for themselves. To the extent a further response is required, American Home denies the allegations of this paragraph.

64.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

65.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

66.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

67.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

**COUNT TWO: SERVICING MORTGAGE LOANS WITHOUT MANDATORY TRUTH IN LENDING DISCLOSURES SUBSEQUENT TO CLOSING**

68.    American Home repeats and realleges its averments with respect to the preceding paragraphs as set forth herein.

69.    American Home avers that the terms of Plaintiff's loan transaction speak for themselves. To the extent a further response is required, American Home denies the allegations of this paragraph.

70.    American Home avers that the documents of Plaintiff's loan transaction speak for themselves.  To the extent a further response is required, American Home denies the allegations of this paragraph.

71.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

72.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

73.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

74.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

## COUNT THREE: FALSE ADVERTISING

75.    American Home repeats and realleges its averments with respect to the preceding paragraphs as set forth herein.

76 through 100.        With respect to the allegations of these paragraphs, this Count was dismissed by the Court in its Order of December 3, 2009, Docket Entry No. 46, and thus no response is required.  To the extent a response is required, however, American Home denies the allegations of these paragraphs.

## COUNT FOUR: FRAUD AND DECEPTIVE ACTS

101.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

102.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

103.    American Home avers that it lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of this paragraph and, on that basis, denies the allegations of this paragraph.

104.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

105.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

106.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

107.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

108.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

109.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

110.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

111.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

112.    American Home avers that the term "Defendant" has not been defined by Plaintiff and

American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

113.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

114.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

115.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

116.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

117.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

118.    American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

119.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

120.    American Home avers that the documents of Plaintiff's loan transaction speak for themselves.  To the extent a further response is required, American Home denies the allegations of this paragraph.

121.    American Home avers that the documents of Plaintiff's loan transaction speak for themselves.  To the extent a further response is required, American Home denies the allegations of this paragraph.

122.    American Home avers that the documents of Plaintiff's loan transaction speak for themselves.  To the extent a further response is required, American Home denies the allegations of this paragraph.

123.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

124.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

125.    American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

126.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

## COUNT FIVE: RICO

127 though 140.        With respect to the allegations of these paragraphs, this Count was dismissed by the Court in its Order of December 3, 2009, Docket Entry No. 46; and further disallowed by the Court in its Order of April 6, 2010, Docket Entry No. 57, and thus no response is required.  To the extent a response is required, however, American Home denies the allegations of these paragraphs.

## COUNT NINE: UNJUST ENRICHMENT/RESTITUTION

141.    American Home repeats and realleges its averments with respect to the preceding paragraphs as set forth herein.

142.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

143.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

144.    American Home avers that the term "Defendant" has not been defined by Plaintiff and

American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

146.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

146.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

147.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

148.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

149.    American Home avers that the term "Defendant" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

150.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

151.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

152.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

### NEW COUNT TEN: REAL ESTATE SETTLEMENT PROCEDURES ACT

153.    American Home repeats and realleges its averments with respect to the preceding paragraphs as set forth herein.

154.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

155.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

156.    American Home avers that the allegations of this paragraph are legal conclusions which

require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

157.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

158.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

159.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

160.    American Home avers that the term "AHM" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

161.    American Home avers that the term "AHM" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

162.    American Home avers that the term "AHM" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

163.    American Home avers that the term "AHM" has not been defined by Plaintiff and American Home thus cannot respond accurately to the allegations of this paragraph.  By way of further response, American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

164.    American Home avers that the allegations of this paragraph are immaterial to the litigation and require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

165.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

166.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

167.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

168.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

169.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

170.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

171.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

172.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

173.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

174.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

175.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

176.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

177.    American Home avers that the allegations of this paragraph are legal conclusions which require no response.  To the extent a response is required, however, American Home denies the allegations of this paragraph.

## PRAYER FOR RELIEF ON ALL COUNTS

American Home denies that Plaintiff is entitled to any relief.  On information and belief, American Home further denies all allegations not previously admitted or denied, including any titles, headers, subparagraphs, or footnotes in the Amended Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

American Home asserts the following affirmative and other defenses to the Complaint:

## FIRST DEFENSE

1.    Plaintiff fails to state any claim upon which relief may be granted.

## SECOND DEFENSE

2.    Plaintiff's claims are barred or reduced by her assumption of the risk, contributory negligence, mistake or fraud.

## THIRD DEFENSE

3.    American Home is entitled to an offset of any liability it may have.

## FOURTH DEFENSE

4.      Plaintiff is barred from entitlement to any relief by virtue of her unclean hands and

breaches of statutory, common law, and other duties.

## FIFTH DEFENSE

5.      Plaintiff's claims are barred by the applicable statutes of limitations and/or repose.

## SIXTH DEFENSE

6.      Plaintiff's claims are barred by the doctrine of laches.

## SEVENTH DEFENSE

7.      Plaintiff's claims are barred to the extent Plaintiff lacks standing or the capacity to sue.

## EIGHTH DEFENSE

8.      Plaintiff failed to mitigate any damages or injury.

## NINTH DEFENSE

9.      Plaintiff's claims are barred by the doctrines of res judicata and collateral estoppel.

## TENTH DEFENSE

10.     Plaintiff failed to join a necessary and/or indispensable party to this action.

## ELEVENTH DEFENSE

11.     Plaintiff's claims are barred or reduced to the extent any injury to Plaintiff was caused by

the acts or omissions of third parties for whom American Home is not responsible.

## TWELFTH DEFENSE

12.     Plaintiff's claims are barred by any other matter constituting an avoidance or affirmative

defense on legal or equitable grounds.  To the extent that Plaintiff failed to set forth her claims with

sufficient particularity to permit American Home to determine all applicable and available defenses,

American Home reserves the right to amend and/or supplement this Answer with additional defenses when and if such information is ascertained.

WHEREFORE, American Home demands the following relief:

1.      Dismissal of Plaintiff's Complaint;

2.      Judgment in favor of American Home;

3.      An award of costs and attorneys' fees; and

4.      Such other relief that the Court may deem just and equitable.

Date:  April 20, 2010                              _____/s/ Scott D. Burke_____
                                                   Scott D. Burke (Bar No. 016117)
                                                   David M. Souders (Bar No. 015102)
                                                   WEINER BRODSKY SIDMAN KIDER PC
                                                   1300 19th Street NW, Fifth Floor
                                                   Washington, DC  20036
                                                   202.628.2000
                                                   202.628.2011 (facsimile)

                                                   *Counsel for Defendant AHM SV, Inc., and
                                                   American Home Mortgage Corp.*

**CERTIFICATE OF SERVICE**

I, Scott D. Burke, certify that I caused a true and correct copy of the foregoing to be served, on

April 20, 2010, via electronic mail to paularush@comcast.net, as well as First-Class Mail, postage

prepaid, upon the following:

> Paula Rush
> 2651 Peery Drive
> Churchville, MD  21028

> ____/s/ Scott D. Burke_____
> Scott D. Burke

F:\98077\079\AHM Rush Answer 4.20.2010.doc

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PAULA RUSH                                    *
           Plaintiff(s)
                                     *

           vs.                                    *          Civil Action No.: WMN-07-854

                                     *
AMERICAN HOME MORTGAGE,
INC., et al.                                  *
           Defendant(s)

                                ******

## <u>SCHEDULING ORDER</u>

Defendant(s) has(have) filed an answer to plaintiff's complaint.  The plaintiff is

proceeding <u>pro se</u> (representing her or himself).  The following schedule shall control the

progress of the case:

### I.  <u>Discovery</u>[1]

Rule 26(a)(1) initial disclosures are required to be served on opposing parties on or

before June 28, 2010.  All depositions and other discovery shall be completed by <u>July 28, 2010</u>.

Interrogatories (a series of written questions to be answered in writing under oath) and requests

for production of documents must be served on the opposing party sufficiently early to insure

that they are answered prior to this discovery deadline.[2]

---

[1]Discovery is governed by Fed. R. Civ. P. 26-37 and 45 as well as Local Rule 104 (D. Md.).  The Local Rules of this court and links to the Federal Rules of Civil Procedure may be found on the court's web site: www.mdd.uscourts.gov.  The court libraries and many local libraries have copies of these rules for public review.  Information on where to purchase printed copies of the rules is available from the clerk's office.

[2]Local Rule 104.5 (D. Md.) requires that discovery requests are <u>not</u> to be filed with this Court.

II.  Status Report

The parties shall file by July 28, 2010, a status report discussing: (1) whether or not

discovery has been completed; (2) whether or not any motions are pending; (3) whether or not

any party intends to file motions; (4) the anticipated length of trial; and (5) the possibility that

the case will be settled.

III. Summary Judgment Motions

All motions for summary judgment shall be filed on or before August 30, 2010.  These

motions, along with any supporting papers, are filed by either party that chooses to do so

asserting that there is no genuine dispute of material fact in regard to the claims before this

Court.  After motions and responses to those motions have been filed, the Court will advise the

parties if a hearing is to be scheduled.

IV.  Changes in Schedule

No changes in the schedule set forth herein will be permitted, unless authorized by the

Court for good cause shown.

V.  Service Requirement

All documents filed with the Court other than the original complaint must bear a

certificate of service stating that each of the parties has been sent a copy of that document.

The Clerk of the Court SHALL SEND a copy of this Order to the plaintiff pro se and to

defense counsel.

/s/

Date:   4/28/10                                      _____
                                                     William M. Nickerson
                                                     Senior United States District Judge



- [Query](#)
- [Reports](#)
- [Utilities](#)
- [Logout](#)

CLOSED

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:08-cv-00604-WMN

Rush v. Servicelink
Assigned to: Judge William M Nickerson
Cause: 28:1441 Petition for Removal - Fair Credit
Reporti

Date Filed: 03/06/2008
Date Terminated: 06/16/2008
Jury Demand: Plaintiff
Nature of Suit: 371 Truth in Lending
Jurisdiction: Federal Question

**Plaintiff**

**Paula Rush**                    represented by    **Paula Rush**
2651 Peery Drive
Churchville, MD 21208
443-676-3509
PRO SE

V.

**Defendant**

**Servicelink**                   represented by    **Ellen Connelly Cohen**
Pillsbury Winthrop Shaw Pittman
LLP
2300 N St NW
Washington, DC 20037
12026638000
Fax: 12026638007
Email:
ellen.cohen@pillsburylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Jeffrey MacLean**
Pillsbury Winthrop Shaw Pittman LLP
2300 N St NW
Washington, DC 20037
12026638183
Fax: 12026638007
Email: matthew.maclean@pillsburylaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/06/2008 | 1 | NOTICE OF REMOVAL from Circuit Court for Harford County, Maryland, case number 12-C-07-003516 OC. ( Filing fee $ 350 receipt number 14637023945), filed by Servicelink. (Attachments: # 1 Civil Cover Sheet)(ljs, Deputy Clerk). (Entered: 03/06/2008) |
| 03/06/2008 | 2 | COMPLAINT against Servicelink, filed by Paula Rush. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L)(ljs, Deputy Clerk) (Entered: 03/06/2008) |
| 03/06/2008 | 3 | Summons Issued 60 days as to Servicelink. (ljs, Deputy Clerk) (Entered: 03/06/2008) |
| 03/06/2008 | | The above pleadings 2 and 3 are copies filed in the Circuit Court for Harford County, Maryland (ljs, Deputy Clerk) (Entered: 03/06/2008) |
| 03/07/2008 | 4 | Correspondence re: Warning Letter (c/m MacLean) (ljs, Deputy Clerk) (Entered: 03/07/2008) |
| 03/07/2008 | | Deficiency Notice as to ServiceLink. Your Local Rule 103.3 disclosure statement has not been filed. The Statement must be filed by 3/18/2008 (ljs, Deputy Clerk) (Entered: 03/07/2008) |
| 03/07/2008 | 5 | Standing ORDER re: Removal. Signed by Judge William M Nickerson on 3/7/08. (c/m MacLean, Rush)(ljs, Deputy Clerk) (Entered: 03/07/2008) |
| 03/13/2008 | 6 | Local Rule 103.3 Disclosure Statement by Servicelink. (Cohen, Ellen) (Entered: 03/13/2008) |
| 03/13/2008 | 7 | NOTICE by Servicelink re 5 Order *Statement in Response to Standing Order Concerning Removal* (Cohen, Ellen) (Entered: 03/13/2008) |
| 03/13/2008 | 8 | MOTION to Dismiss by Servicelink Responses due by 3/31/2008 |

| | | |
|---|---|---|
| | | (Attachments: # 1 Memorandum in Suport of Motion, # 2 Exhibit, # 3 Text of Proposed Order)(Cohen, Ellen) (Entered: 03/13/2008) |
| 03/14/2008 | 9 | Rule 12/56 letter mailed to plaintiff. (hml, Deputy Clerk) (Entered: 03/14/2008) |
| 03/31/2008 | 10 | MOTION to Consolidate Cases WMN-08-604 and WMN-07-854 by Paula Rush. Responses due by 4/17/2008. Associated Cases: 1:08-cv-00604-WMN, 1:07-cv-00854-WMN(hml, Deputy Clerk) (Entered: 04/01/2008) |
| 03/31/2008 | 11 | MOTION for Extension of Time to File Response as to 8 MOTION to Dismiss by Paula Rush. Responses due by 4/17/2008.(hml, Deputy Clerk) (Entered: 04/01/2008) |
| 04/02/2008 | 12 | PAPERLESS ORDER granting 11 Motion for Extension of Time to File Response/Reply. Signed by Judge William M Nickerson on 4/2/08. (cae, Chambers) (Entered: 04/02/2008) |
| 04/04/2008 | 13 | RESPONSE in Opposition re 10 MOTION to Consolidate Cases filed by Servicelink. Replies due by 4/18/2008. (Attachments: # 1 Text of Proposed Order)(Cohen, Ellen) (Entered: 04/04/2008) |
| 04/07/2008 | 14 | MOTION for Leave to File Amended Complaint by Paula Rush. Responses due by 4/24/2008 (Attachments: # 1 Amended Complaint)(hml, Deputy Clerk) (Entered: 04/09/2008) |
| 04/07/2008 | 15 | RESPONSE in Opposition re 8 MOTION to Dismiss filed by Paula Rush. Replies due by 4/21/2008. (Attachments: # 1 Table of Contents, # 2 Exhibits 1-11)(hml, Deputy Clerk) (Entered: 04/09/2008) |
| 04/15/2008 | 16 | PAPERLESS ORDER granting 14 Motion for Leave to File Amended Complaint. Signed by Judge William M Nickerson on 4/15/08. (cae, Chambers) (Entered: 04/15/2008) |
| 04/21/2008 | 17 | REPLY to Response to Motion re 8 MOTION to Dismiss filed by Servicelink. (Cohen, Ellen) (Entered: 04/21/2008) |
| 04/24/2008 | 18 | MOTION to Dismiss *Amended Complaint* by Servicelink Responses due by 5/12/2008 (Attachments: # 1 Memorandum in Support of Motion, # 2 Text of Proposed Order)(Cohen, Ellen) (Entered: 04/24/2008) |
| 04/25/2008 | 19 | Rule 12/56 letter mailed to plaintiff. (hml, Deputy Clerk) (Entered: 04/25/2008) |
| 06/16/2008 | 20 | MEMORANDUM. Signed by Judge William M Nickerson on 6/16/08. (c/m to pro se)(eg, Deputy Clerk) (Entered: 06/16/2008) |
| 06/16/2008 | 21 | ORDER denying 10 Motion to Consolidate Cases; granting in part and denying in part 18 Motion to Dismiss; REMANDING the case to the |

| | | |
|---|---|---|
| | | Circuit Court for Harford County, Md. Signed by Judge William M Nickerson on 6/16/08. (c/m to pro se) (eg, Deputy Clerk) (Entered: 06/16/2008) |
| 06/16/2008 | 22 | Correspondence from Clerk to the Circuit Court for Harford County, MD re: Remand. (eg, Deputy Clerk) (Additional attachment(s) added on 6/16/2008: # 1 certified mail return receipt) (eg, Deputy Clerk). (Entered: 06/16/2008) |
| 06/24/2008 | 23 | CERTIFIED Mail Receipt Returned Executed to the Circuit Court for Harford County re Remand.(hml, Deputy Clerk) (Entered: 06/24/2008) |

**PACER Service Center**

**Transaction Receipt**

| | | | |
|---|---|---|---|
| | | | |
| | | | |
| | 05/07/2010 10:45:21 | | |
| **PACER Login:** | yc0001 | **Client Code:** | 066585.1001 pjack |
| **Description:** | Docket Report | **Search Criteria:** | 1:08-cv-00604-WMN |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |
| | | | |
| | | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PAULA RUSH                          :
                                    :
                                    :
v.                                  :    Civil No. WMN-08-604
                                    :
SERVICELINK                         :

### MEMORANDUM

Now pending before this Court is the motion to dismiss, Paper No. 8, filed by Defendant, Servicelink. Paper No. 8. The motion is ripe for decision. Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion will be granted as to Plaintiff's federal law claims and that the remaining state law claims will be remanded to state court.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case arises out of a home refinance transaction entered into by Plaintiff, pro se, Paula Rush in which Defendant Servicelink acted as the settlement agent. Plaintiff closed on her loan transaction on April 3, 2006, at her home located at 2651 Peery Drive, Churchville, Maryland. A notary employed by Servicelink, Larry Provencal, acted as the settlement agent at the closing. Plaintiff alleges, inter alia, that Servicelink overcharged her for the recordation of her deed in the amount of $966[1]; that Servicelink recorded a deed that had been

_____

[1]There appears to be no dispute that Servicelink overcharged Plaintiff for recordation of the deed. Plaintiff apparently paid fees on the total amount of the loan, whereas, because she was refinancing her home, she was only required to pay recordation fees on the amount of the loan less the outstanding principal on her original mortgages. She alleges that she notified Servicelink of this overcharge on April 15, 2007 - a little over one year after the transaction. Am. Compl. at ¶ 87. Servicelink issued her a refund check for $966 on April 17, 2007. Id. & Ex. H (refund check).

altered and that she had not signed; that Servicelink did not explain
the loan documents to her prior to her signing them; that Servicelink
forced her to waive her three day right of rescission; and that
Servicelink failed to timely disburse the loan proceeds.

Plaintiff previously brought an action in this Court arising from
the same transaction against Servicelink as well as the mortgage
lender, loan originator, loan servicer, and appraiser.  See Rush v.
American Home Mortgage et al., Civ. No. WMN-07-854 (American Home).[2]
She alleged federal law claims against the lender, loan originator,
and loan servicer (the American Home Defendants or AHM), but alleged
only state law claims against Servicelink and the appraiser.  After
AHM filed a suggestion of bankruptcy, staying the action against them,
this Court declined to exercise supplemental jurisdiction over the
state law claims, dismissing the complaint without prejudice as to
Servicelink and the appraiser and administratively closing the case on
October 25, 2007.  Thirty-one days thereafter, Plaintiff filed suit
against Servicelink in the Circuit Court for Harford County, Maryland
asserting both federal and state law claims.  Within thirty days of
being served in that action, Servicelink removed the case to this
Court on the basis of federal question jurisdiction.  See Notice of
Removal ¶ 5.

On March 13, 2008, Servicelink moved to dismiss Plaintiff's
complaint.  Plaintiff filed an amended complaint seeking to address

_____

[2]Plaintiff also has filed a motion to consolidate this
action with American Home.  Paper No. 10.  As will be discussed,
infra, that action is currently administratively closed due to a
bankruptcy stay.  The motion to consolidate will be denied as it
would not further the interests of efficiency or judicial economy
to consolidate under these circumstances.

some of the deficiencies raised in the motion to dismiss.[3]  The Amended

Complaint asserts three federal law claims - 1) Truth in Lending Act

(TILA) (Count I); 2) Real Estate Settlement Procedures Act (RESPA)

(Count II); and 3) Racketeer Influenced and Corrupt Organization Act

(RICO) (Count V) - and nine state law claims - 1) Voidable Title

(Count III); 2) Common Law Theft (Count IV); 3) Fraud and Deceptive

Acts (Count VI); 4) Negligence (Count VII); 4) Breach of Fiduciary

Duty (Count VIII); 6) Unjust Enrichment/Restitution (Count IX); 7)

Breach of Contract (Count X); 8) Conversion (Count XI); and 9)

Vicarious Liability (Count XII).  Servicelink has moved to dismiss the

amended complaint in its entirety.[4]

## II.  STANDARD OF LAW

To survive a Rule 12(b)(6) motion to dismiss, "detailed factual

allegations" are not required, but a plaintiff must "provide the

'grounds' of h[er] 'entitle[ment] to relief'" and this "requires more

than labels and conclusions, [or] a formulaic recitation of the

elements of a cause of action[.]"  Bell Atlantic Corp. v. Twombley,

127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  In

considering such a motion, the court is required to accept as true all

well-pled allegations in the Complaint, and to construe the facts and

---

[3]Plaintiff's motion for leave to amend her complaint, Paper
No. 14, filed on April 7, 2008, was granted by a paperless order
of this Court on April 14, 2008.  The Amended Complaint, which
was attached to the motion for leave as Exhibit 1, never was
docketed, however.  The Court will direct the Clerk of the Court
to docket the Amended Complaint as of April 14, 2008.

[4]Plaintiff filed an opposition to Servicelink's motion to
dismiss the original complaint, but she has not opposed the
motion to dismiss the amended complaint.  As Servicelink's motion
to dismiss the amended complaint incorporates most of the same
arguments raised in the prior motion to dismiss, the Court will
treat Plaintiff's opposition as being addressed to the latter
motion.

3

reasonable inferences from those facts in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  A plaintiff must have alleged facts "to raise a right to relief above the speculative level[.]"  Twombley, 127 S.Ct. at 1965.  "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 1969.

When a plaintiff alleges fraud, "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).  Thus, the plaintiff must plead the facts showing "the time, place, and contents of false representations, as well as the identity of the person making the representations and what he obtained thereby."  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).  Rule 9(b) is read in conjunction with Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief.

III.  DISCUSSION

A. Truth in Lending Act - Count I

Plaintiff asserts that Servicelink violated TILA, 15 U.S.C. § 1601 et seq., by, inter alia, misrepresenting the amount of recordation fees on the HUD-1 form presented to Plaintiff. Servicelink argues that Plaintiff cannot assert a cause of action against it under TILA because the Act applies only to creditors. Plaintiff does not respond to this argument in her opposition.

That TILA applies only to creditors cannot be disputed.  See 15 U.S.C. § 1601 et seq. (applying disclosure requirements to "creditors" and defining the term to mean those who "regularly extend consumer

4

credit" and to whom the borrower's debt initially is payable); <u>see</u>
<u>also</u> <u>Redic v. Gary H. Watts Realty Co.</u>, 762 F.2d 1181, 1185 (4th Cir.
1985) ("Only 'creditors' are subject to [TILA]'s civil penalties").
Plaintiff does not allege that Servicelink regularly extends consumer
credit, but rather alleges that it performs settlement services.  Am.
Compl. ¶ 7.  Accordingly, her TILA claim is not cognizable against
Servicelink and Count I will be dismissed.[5]

### B. Real Estate Settlement Practices Act - Count II

Plaintiff alleges that Servicelink engaged in fee splitting
and/or illegal referrals in violation of section 2607 of RESPA.  <u>See</u>
12 U.S.C. § 2607.  Servicelink contends that Plaintiff fails to state
claim under RESPA and, alternatively, that her action is barred by
RESPA's one-year statute of limitations.

The Court will begin by considering whether Plaintiff's action is
time barred.  For this court to dismiss a claim as time barred on a
12(b)(6) motion, the existence of the limitations defense must appear
on the face of the complaint.  <u>See</u> <u>Mullinax v. Radian Guar. Inc.</u>, 199
F. Supp. 2d 311, 323 (M.D.N.C. 2002); <u>see also</u> Wright & Miller, 5B
<u>Federal Practice and Procedure</u> § 1357 at p. 714 (3d ed 2004) (noting
that running of a statute of limitations is "the most common situation
in which [an] affirmative defense . . . provides a basis for a motion
to dismiss").  In the instant case, the relevant dates all are alleged
in Plaintiff's amended complaint and, thus, limitations may be grounds
for dismissal.

RESPA provides that a cause of action alleging a violation of

---

[5]The Court need not address Servicelink's alternative
arguments that Plaintiff's cause of action is barred by the
applicable statute of limitations or that the conduct alleged
does not violate TILA.

section 2607 must be brought "within . . . 1 year . . . from the date

of the occurrence of the violation."  12 U.S.C. § 2614.  The "date of

the occurrence of the violation" under RESPA occurs no later than the

date of closing on the subject loan transaction as this is when the

borrower is overcharged or charged fees incident to an illegal

referral arrangement.  See Mullinax, 199 F. Supp. 2d at 325; see also

Snow v. First American Title Ins. Co., 332 F.3d 356, 359 (5th Cir.

2003) (date of occurrence "refers to the closing"); Perkins v.

Johnson, – F. Supp. 2d –, Civ. No. 06-cv-1503-RAB-PAC, 2008 WL 538882,

at *5 (D. Colo. Feb. 25, 2008) (noting that "Courts have predominantly

found the 'date of occurrence' to refer to the date of the closing of

the loan" and collecting cases).[6]

Turning to the allegations of the amended complaint, there can be

no dispute that Plaintiff brought this action after the statute of

limitations expired.  Plaintiff closed on her loan on April 3, 2006.

Am. Comp. ¶ 5.  Thus, the one year limitations period expired on April

3, 2007.  She filed the instant action in the Circuit Court for

Harford County, Maryland on November 27, 2007, well beyond that date.

---

[6]The majority of those courts that have considered the issue
also have determined that the "discovery rule" is inapplicable to
the RESPA statute of limitations because the limitations period
begins to run from the "date of the occurrence of the violation"
not from the date when the claim accrues.  See Mullinax, 199 F.
Supp. 2d at 324; Snow, 332 F.3d at 361; Perkins, 2008 WL 538882
at * 6; see also Hamilton v. First Source Bank, 928 F.2d 86 (4th
Cir. 1990) (holding that the discovery rule is inapplicable to
the ADEA's statute of limitations, which requires a claim to be
filed within 180 days "after the alleged unlawful practice
occurred")(emphasis added); but see Estate of Henderson ex rel.
Johnson v. Meritage Mortgage Co., 293 F. Supp. 2d 830, 835 (N.D.
Ill. 2003) (concluding that the statutes of limitations on
numerous state and federal claims, including a RESPA claim, did
not begin the run until the Estate of a deceased woman who had
suffered from dementia discovered the claims);

Plaintiff raises two arguments as to why this action is not time barred.  First, she asserts that, because this Court declined to exercise supplemental jurisdiction over state law claims against Servicelink in the <u>American Home</u> action, the statute of limitations was tolled as to those claims pursuant to 28 U.S.C. § 1367(d)[7] during the pendency of that action and for an additional thirty days thereafter.  Servicelink responds that, since Plaintiff did not assert a RESPA claim against it in her original action, section 1367(d)'s tolling provision is inapplicable and, in any event, Plaintiff brought this action thirty-one days after the dismissal of the claims in her prior action.  The Court agrees with Servicelink that there can be no tolling under section 1367(d) for a claim that was not asserted against Servicelink in the original complaint and that, even if there had been tolling, the tolling period expired the day before Plaintiff brought her action in state court.

Plaintiff next argues that the statute of limitations should be equitably tolled.[8]  "The doctrine of equitable tolling is applied

---

[7]28 U.S.C. § 1367(d) provides, in pertinent part:

The period of limitations for any claim [over which the district court has supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

[8]Plaintiff also asserts in her amended complaint that Servicelink is "estopped" from asserting limitations.  To the extent that she seeks to assert equitable estoppel in addition to equitable tolling, her argument must fail.  Equitable estoppel applies with respect to statutes of limitations where "a plaintiff is aware of [her] potential claim, but 'the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline.'"  <u>Mullinax</u>, 199 F. Supp. 2d at 326 (quoting <u>English v. Pabst Brewing Co.</u>, 828 F.2d 1047, 1049 (4th Cir. 1987)).  Plaintiff does not allege that she was aware of her RESPA claim against Servicelink during the running of the

7

sparingly." <u>Jones v. Saxon Mortgage Inc.</u>, 980 F. Supp. 842, 846 (E.D.
Va. 1997) (citing <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 96
(1990)).  Plaintiff argues equitable tolling on the basis of
fraudulent concealment.  Fraudulent concealment "does not stop the
clock; it moves the clock, starting it from when the wrong was
discovered rather than when it was committed." <u>GO Computer, Inc. v.
Microsoft Corp.</u>, 508 F.3d 170, 178(4th Cir. 2007)(citing <u>Bailey v.
Glover</u>, 88 U.S. (21 Wall.) 342, 349-50 (1874)).  In this circuit, a
three part test applies where fraudulent concealment is asserted: "a
claimant must establish that (1) the party pleading the statute [of
limitations] fraudulently concealed facts which are the basis of a
claim, and that (2) the claimant failed to discover those facts within
the statutory period, despite (3) the exercise of due diligence."
<u>Pocahontas Supreme Coal Co. v. Bethlehem Steel</u>, 828 F.2d 211, 218 (4th
Cir. 1987).

Plaintiff alleges in her amended complaint, in a section entitled
"Estoppel from Pleading and Tolling of Applicable Statute of
Limitations," that Servicelink "knew of the misrepresented material
facts of fees on the final HUD-1 interest rate, and has known of the
misrepresented facts in the loan for some time, and had concealed it
from Plaintiff, and has offered no explanations for the actions."[9]  Am.

---

limitations period, but was prevented or discouraged from filing
her claim due to misconduct on the part of Servicelink.
Accordingly, Servicelink is not equitably estopped from raising
the defense.

[9]Plaintiff does not allege in her amended complaint when she
discovered the facts giving rise to her cause of action under
RESPA.  She does assert in her opposition that she learned of the
overcharge for recordation of the deed on April 14, 2007, less
than a year before she brought this action.  Opp'n at ¶ 26.
Because Plaintiff could amend her complaint to so allege, the
Court will assume for purposes of this discussion that her action

Compl. ¶ 185.  She also makes various allegations throughout the amended complaint suggestive of the same argument.  <u>See</u> <u>id.</u> at ¶ 61 (Servicelink did not leave copies of settlement documents with Plaintiff after closing); <u>id.</u> at ¶ 64 (changes made to documents after closing and failure to leave documents with Plaintiff were "part of the concealment"); <u>id.</u> at ¶ 85 (Servicelink would have learned of the overcharge when it recorded the deed because the Clerk of the Court only accepts payment in the exact amount).

Accepting the truth of these allegations, they do not rise to the level of fraudulent concealment.  Plaintiff essentially alleges that Servicelink knew of its own wrongdoing, but did not disclose it.  "'[M]ere silence, or one's unwillingness to divulge one's allegedly wrongful activities,' does not by itself establish fraudulent concealment," however.  <u>Mullinax</u>, 199 F. Supp. 2d at 329 (quoting <u>Pinney Dock & Transp. Co. v. Penn Cent. Corp.</u>, 838 F.2d 1445, 1472 (6th Cir. 1988)).  "'Fraudulent concealment' implies conduct more affirmatively directed at deflecting litigation[.]"  <u>Pocahontas</u>, 828 F.2d at 219.  Moreover, Plaintiff does not make any allegations concerning the actions she took to discover Servicelink's alleged wrongdoing prior to the running of the statute of limitations, thus there is a complete lack of pleading with respect to due diligence.  Finally, her allegations regarding Servicelink's concealment are vague and conclusory and do not provide sufficient particularity as required under Rule 9(b) of the Federal Rules of Civil Procedure.  <u>See</u> <u>id.</u> at 219 (fraudulent concealment must be pled with particularity).  The statute of limitations having run and Plaintiff having failed to

---

would have been timely based upon the date when she discovered the alleged RESPA violations.

9

adequately plead equitable tolling, this Court will dismiss Count II
of the amended complaint.

### C. RICO - Count V

Plaintiff alleges that Servicelink engaged in a RICO conspiracy
with the <u>American Home</u> Defendants and Chicago Title, Servicelink's
parent company, to defraud her.[10]   In order to plead a cause of action
under RICO, a plaintiff must allege a "pattern of racketeering
activity" and "adequately plead at least two predicate acts of
racketeering activity[.]"   <u>Am. Chiropractic Assoc. Inc. v. Trigon</u>
<u>Healthcare Inc.</u>, 367 F.3d 212, 233 (4th Cir. 2004) (citing 18 U.S.C. §
1961(5)).   Plaintiff alleges that Servicelink engaged in two types of
predicate acts: mail fraud in violation of 18 U.S.C. § 1341 and wire
fraud in violation of 18 U.S.C. § 1343.   <u>See</u> Am. Compl. ¶ 18
("Servicelink aided and abetted the Fraud and used wire and mail in
the scheme.").   She does not, however, allege the predicate acts with
adequate particularity under Rule 9(b) of the Federal Rules of Civil
Procedure to survive a motion to dismiss.   <u>See</u> <u>Choimbol v. Fairfield</u>
<u>Resorts, Inc.</u>, 428 F. Supp. 2d 437, 445 (E.D. Va. 2006) (heightened
pleading standards of Rule 9(b) apply to allegations of mail and wire
fraud).   Plaintiff does not plead the contents of the wires or
mailings, who sent them, or when they were sent.   <u>See</u> <u>Lust v. Burke</u>,
876 F. Supp. 1474, 1480 (D. Md. 1994) ("In a RICO case, the
'circumstances constituting fraud' under Rule 9(b) refer to such

---

[10]Plaintiff alleges that she was forced by her lender to use
Servicelink's services.   Even to the extent that this may
constitute a RESPA violation, violations of RESPA are not
predicate acts for RICO purposes.   <u>See</u> <u>Kerby v. Mortgage Funding</u>
<u>Corp.</u>, 992 F. Supp. 787, 798 n.3 (Md. 1998).

matters as the time, place and contents of the false representations, as well as the identity of the person making the representation, and what [was] obtained thereby.") (internal quotation omitted)(alteration in original).

Even if this Court were to conclude that Plaintiff had pled the predicate acts sufficiently, she has failed to adequately allege a pattern of racketeering activity.  In order to show a pattern, a "plaintiff . . . must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238 (1989).  "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  Id. at 241.  Viewing the allegations of the amended complaint in the light most favorable to the Plaintiff, there can be no doubt that Plaintiff has failed to satisfy this requirement.  Her allegations of the predicate acts making up the alleged RICO conspiracy span, at most, a period of a few months prior to her loan closing - an insufficient time span for a RICO conspiracy.[11]  See id. at 242. ("predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement").  For all of these reasons, Count V must be dismissed.

### D. Supplemental Jurisdiction

---

[11]Plaintiff's only allegations of continuing conduct are vague and conclusory.  See Am. Comp. ¶ 108 ("[t]his conduct constituted a pattern which has been identified in other regulatory actions against Servicelink").

11

As discussed above, Plaintiff filed this action in state court and it was removed to this Court solely on the basis of federal question jurisdiction.  <u>See</u> Notice of Removal at ¶ 5.  The federal law claims all having been dismissed, this Court, in its discretion, declines to exercise supplemental jurisdiction over the remaining state law claims and will remand this case to the Circuit Court for Harford County, Maryland.  <u>See</u> 28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction"); <u>see also</u> <u>Hinson v. Norwest Fin. South Carolina</u>, 239 F.3d 611, 617 (4th Cir. 2001) (district court has inherent power to remand removed case if it declines to exercise supplemental jurisdiction under section 1367(c)).  Accordingly, the Court will not address the merits of Servicelink's arguments with respect to dismissal of the remaining nine state law counts.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court will deny Plaintiff's motion to consolidate, will grant Servicelink's motion to dismiss as to Counts I, II, and V, and will remand this case to the Circuit Court for Harford County, Maryland.  A separate order will follow.


/S/

_____
William M. Nickerson
Senior United States District Judge


DATED: June 16, 2008


12