# EXHIBIT "A"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HELEN L. FORD,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation,<br><br>    Defendant. | Civil Action<br>No. CA09-12025-MLW |

## PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF

Pursuant to Fed. R. Civ. P. 65, the plaintiff, Helen L. Ford ("Ford"), by and through her undersigned counsel, states the following:

### INTRODUCTION

1. This matter involves a number of fraudulent transactions, beginning with the fraudulent conveyance of Two Rumeal Robinson Way in Cambridge, Massachusetts (hereinafter "the property") and culminating with the fraudulent lending of monies by the Defendant, American Home Mortgage Holdings, Inc. ("AHM") and the unlawful foreclosure and intended sale of the property by AHM's nominee, Mortgage Electronic Registration Systems, Inc. ("MERS").

2. Defendant AHM has engaged, and unless restrained and enjoined by this Court will continue to engage, in unscrupulous acts and practices that constitute mortgage fraud and unfair and deceptive trade practices.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the Plaintiff is a Massachusetts resident, the Defendant is a Delaware corporation, and the amount in controversy exceeds $75,000.

4. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Personal jurisdiction is proper in this Court pursuant to the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A §3, because AHM transacted business in the Commonwealth. Moreover, jurisdiction in the Commonwealth comports with due process because AHM had sufficient minimum contacts with the Commonwealth such that subjecting AHM to litigation in the Commonwealth would not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action occurred in the District of Massachusetts.

## PARTIES

7. Plaintiff Ford currently resides in a rented apartment in Somerville, Massachusetts.

8. Defendant AHM is a corporation formerly organized under the laws of Delaware. On August 6, 2007, AHM petitioned for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On February 23, 2009, the United States Bankruptcy Court for the District of Delaware entered an order confirming the liquidation of the

corporation. AHM lists its principal executive office as located at 538 Broadhollow Road, Melville, New York 11747. AHM maintains that process should be served on its registered agent, Corporation Service Company, located at 80 State Street, Albany, New York 12207.

## GENERAL ALLEGATIONS

9. Home purchases are generally financed by mortgages that are secured by a deed of trust and a note which, when executed on behalf of the same entity, entitle the holder of the note and deed of trust to foreclose on the property of the borrower if the borrower is in default.

10. The Massachusetts Predatory Home Loan Practices Act (the "Act"), codified in Chapter 183C of the Massachusetts General Laws, provides that any violation of the Act constitutes a violation of Section 93A and allows an aggrieved borrower to bring a civil suit for injunctive relief or damages.

11. A lender will be deemed to have violated the Act when it acts in bad faith.

12. The Act provides that a court may issue an order or injunction barring any judicial or non-judicial foreclosure or other lender action under the mortgage or deed of trust securing any home mortgage loan which violates the Act.

13. The laws governing security interests, including mortgage notes, are clear and set forth in revised Article 9 of the Uniform Commercial Code, which has been codified in Section 9 of Chapter 106 of the Massachusetts General Laws.

14. In order to enforce a security interest, including a mortgage note, the security interest must have attached to the collateral. Attachment occurs when (1) value is given by the creditor; (2) the debtor has rights in the collateral or the power to

     transfer rights in the collateral to a secured party; and (3) one of the following conditions is met: (a) the debtor has authenticated a security agreement that provides a description of the collateral; (b) the collateral is not a certified security and is in the possession of the secured party; and (c) the collateral is a certified security in registered form and the security certificate has been delivered to the secured party.

15. Imposed on all transactions governed by Article 9 is the obligation of good faith pursuant to Section 1-203 of Chapter 106 of the Massachusetts General Laws.

## FACTUAL ALLEGATIONS

16. Until 2003, Ford was the owner of the property located at Two Rumeal Robinson Way in Cambridge, Massachusetts 02139. As of 2003, the property was subject to neither a mortgage nor any other form of encumbrance. Ford owned the property with her husband for approximately 30 years.

17. In 2003, Ford's adopted son, Rumeal Robinson, approached Ford about obtaining a mortgage on the property in order to finance a land development project he was planning in Jamaica. Mr. Robinson told Ford that he intended to obtain a mortgage on the property and thereafter make the mortgage payments on his own. Ford agreed to these terms and to attend a meeting on June 16, 2003 to execute the mortgage. Mr. Robinson informed Ford that a Mr. Lloyd Richard Preston, Jr. ("Preston") would attend the meeting on his behalf on that date.

18. On June 16, 2003, Ford arrived at the meeting to execute the mortgage. In accordance with Ford's conversation with her son, Preston was present at the meeting to execute the mortgage. Without the assistance of counsel and

believing, because of Mr. Robinson's representations, that she was signing a mortgage document for her son, Ford executed a document entitled "Massachusetts Quitclaim Deed". Rather than signing a mortgage document, as Ford intended, Ford actually signed a deed conveying the property to Preston for the consideration paid of $600,000. At no point during the meeting did Ford understand or believe that she was conveying the property. Moreover, Ford did not receive as payment any of the monies resulting from the sale.

19. Unbeknownst to Ford, Preston obtained financing for the transaction through Argent Mortgage Company, LLC ("Argent"). Through Argent, Preston secured a $500,000 on mortgage on the property.

20. Unbeknownst to Ford, on February 7, 2004, Preston conveyed the property to Mr. Jorge L. Rodriguez ("Rodriguez") for the consideration paid of $625,000. Ford did not receive as payment any monies resulting from the sale.

21. Rodriguez obtained financing for the transaction through WMC Mortgage Corporation ("WMC"). Through WMC, Rodriguez secured a $562,500 mortgage on the property which he used, presumably, to pay off the prior mortgage. Ford did not receive any of the monies remaining after the mortgage payoff.

22. Unbeknownst to Ford, on September 6, 2006, Rodriguez conveyed the property to Mr. Stephen D. Hodge ("Hodge") for the consideration paid of $1,000,000. Ford did not receive as payment any monies resulting from the sale.

23. Hodge obtained financing for the transaction through AHM. Through AHM, Hodge secured a $700,000 mortgage on the property which he used, presumably, to pay off the prior mortgage.

Ford did not receive any of the monies remaining after the mortgage payoff.

24. Each subsequent transfer of the property, after the original "sale" from Ford to Preston, was secured by an inflated mortgage which was used to pay off the prior mortgage and for the subsequent mortgagee's personal gain. At no point, during any transaction, did Ford receive any of the excess monies from the inflated mortgages.

25. Upon defaulting on the mortgage, on May 1, 2007, Hodge executed a "Massachusetts Foreclosure Deed", effectively conveying the property to Mortgage Electronic Registration Systems, Inc. ("MERS"), having its usual place of business at 4600 Regent Boulevard, Suite 200, Irving, Texas, as Nominee for AHM, for the consideration paid of $236,000.

26. In December 2007, Ford received an eviction notice from Cambridge District Court ordering that Ford vacate her home by February 2008.

27. On August 27, 2009, Ford's son, Rumeal Robinson, along with Brian Jermaine Williams, a Commercial Loan Officer for Community State Bank, an institute insured by the Federal Deposit Insurance Corporation, and Stephenie Hodge, the romantic interest of Mr. Rumeal Robinson, were indicted in the United States District Court for the Southern District of Iowa on grounds of federal wire fraud, bank fraud, conspiracy to commit bank fraud, and issuing false statements to financial institutions.

28. The pending foreclosure on Plaintiff's home complained of herein was initiated by the Defendant who had and has no lawful right to initiate, advance or maintain any foreclosure action against the Plaintiff.

## FIRST CAUSE OF ACTION: QUIET TITLE AGAINST AHM DUE TO FRAUD IN THE FACTUM

29. Plaintiff Ford hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 28, inclusive, as if set forth in full in this cause of action.

30. Defendant AHM has asserted, through its nominee, MERS, claim to the property by executing a Massachusetts Foreclosure Deed on January 6, 2006 and by filing a Notice of Sale in the Cambridge Chronicle on March 29, 2007.

31. Plaintiff Ford is the rightful owner of the property because fraud in the factum occurred at the time of the original conveyance. Fraud in the factum of an original conveyance renders all future transactions involving the property void.

32. Fraud in the factum is a "real" defense which may be asserted against all subsequent purchasers of the instrument, including subsequent holders in due course.

33. Fraud in the factum occurs when a party signs a document without knowledge of its true contents and the misrepresentation goes to the essence of the transaction.

34. Plaintiff Ford signed the "Massachusetts Quitclaim Deed" on June 16, 2003 because she believed the instrument was a mortgage, not a deed. Ford was unaware of the document's true contents and this misrepresentation went to the essence of the transaction.

35. Defendant AHM had no lawful right to initiate the foreclosure proceeding because fraud in the factum existed at the time of the original conveyance which rendered all subsequent conveyances and transactions related to the original conveyance void. Even if AHM qualified as a holder in due course (which it does

not, discussed *infra* herein), it would still be subject to Ford's real defense of fraud in the factum.

### SECOND CAUSE OF ACTION: QUIET TITLE AGAINST AHM DUE TO FRAUD IN THE INDUCEMENT

36. Plaintiff Ford hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 35, inclusive, as if set forth in full in this cause of action.

37. Defendant AHM has asserted, through its nominee, MERS, claim to the property by executing a Massachusetts Foreclosure Deed on January 6, 2006 and by filing a Notice of Sale in the Cambridge Chronicle on March 29, 2007.

38. Plaintiff Ford is the rightful owner of the property because fraud in the inducement existed at the time of the original conveyance.

39. Fraud in the inducement occurs when someone signs a document because he or she is misled regarding its terms.

40. Fraud in the inducement is a "personal defense" and may be asserted only against those subsequent purchasers who do not qualify as holders in due course.

41. Fraud in the inducement occurred because Ford was misled regarding the terms of the deed. Ford's son told her that she would be signing a mortgage, not a deed, on June 16, 2003. Additionally, Ford's son assured her that the "mortgage" was for the purpose of assisting him with financing a business venture in Jamaica. Not only did Ford sign a deed instead of a mortgage, there also was no business venture in Jamaica.

42. AHM does not qualify as a holder in due course because it took the instrument in bad faith and with notice of another party's claim or defense to the instrument in violation of Section 1-203 of Chapter 106 of the Massachusetts General Laws.

43. At the time of issuing the mortgage and obtaining the note from Hodge, AHM knew or had reason to know that its loan was just one of many by-products resulting from a protracted history of fraudulent conveyances concerning the property.

44. At the time of issuing the mortgage and obtaining the note from Hodge, AHM knew or had reason to know that the property had been sold and resold three times within three years—an unlikely and noteworthy fact.

45. At the time of issuing the mortgage and obtaining the note from Hodge, AHM knew or had reason to know that the price of the property had increased exponentially from three years prior (the property sold for $600,000 at the original conveyance and $1,000,000 at the final conveyance to Hodge)—an unlikely and noteworthy fact.

46. At the time of issuing the mortgage and obtaining the note from Hodge, AHM knew or had reason to know that in each subsequent conveyance (after the original conveyance), the amount of monies financed for each respective transaction was not proportionate to the consideration paid for each respective conveyance.

47. Most significantly, at the time of issuing the mortgage and obtaining the note from Hodge, AHM knew or had reason to know that the amount it loaned to Hodge was not proportionate to the consideration paid by Hodge for the property.

      Hodge secured a mortgage from AHM for $700,000 even though the cost of the property was $1,000,000.

48. Because of the preceding red flags, AHM knew or should have known that its decision to authorize a loan to Hodge in the amount of $700,000 was just one transaction in a long-line of fraudulent conveyances and related fraudulent financing transactions.

49. As a result, AHM did not and does not qualify as a holder in due course because it accepted a note in bad faith and with knowledge of prior claims to the note.

50. Because AHM does not qualify as a proper holder because it acted in bad faith, AHM is subject to Ford's fraud in the inducement defense. As a result AHM may not lawfully foreclose the property.

### THIRD CAUSE OF ACTION: ENJOIN SALE OF PROPERTY WHILE PETITION PENDING IN BANKRUPTCY COURT

51. Plaintiff Ford hereby realleges and incorporates by reference the allegations contained in paragraphs 1 through 50, inclusive, as if set forth in full in this cause of action.

52. On August 6, 2007, AHM voluntarily filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code.

53. An automatic stay was imposed, thus halting legal actions from creditors. As a result, Plaintiff Ford requires additional time in order to petition the United States Bankruptcy Court for relief from the automatic stay so that she may proceed with her quiet title actions.

## REQUEST FOR RELIEF

WHEREFORE, the plaintiff, Helen Ford, respectfully requests for judgment against the Defendant as follows:

54. That the foreclosure of the property be deemed illegal and void and permanently enjoined;

55. That any potential foreclosure of the property be temporarily enjoined while the Plaintiff petitions the United States Bankruptcy Court for relief from the automatic stay;

56. That the loan transaction at issue in this litigation be deemed void as a result of Defendant's fraud and violation of various statutory requirements alleged in this Complaint;

57. For restitutionary disgorgement of the amounts misappropriated and unjustly gained;

58. That the Defendant's actions be determined to be unfair and deceptive business practices in violation of Massachusetts law and that the Court award all such relief to the Plaintiff as the Plaintiff may be entitled;

59. That a permanent injunction is issued precluding the Defendant from engaging in the wrongful conduct identified herein;

60. For award of any statutory damages;

61. For such other and further relief as this Court deems just and proper.

PLAINTIFF,
HELEN L. FORD


By:    /s/ Dennis A. Benzan
       _____
       Dennis Benzan, BBO #668755
       Altman & Altman, LLP
       689 Massachusetts Avenue
       Cambridge, Massachusetts 02139
       (617) 492-3000
       (617) 491-3299 (facsimile)