## Exhibit 1

**Settlement Agreement**

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement ("Agreement") is entered into as of March 16, 2010 (the "Execution Date") by and among American Home Mortgage Servicing, Inc., a Delaware corporation formerly known as AH Mortgage Acquisition Co., Inc. ("AHMSI"), and American Home Mortgage Investment Corp., a Maryland corporation, as a debtor and debtor-in-possession ("AHM Investment"), American Home Mortgage Corp., a New York corporation, as a debtor and debtor-in-possession ("AHM Corp."), and AHM SV, Inc., a Maryland corporation formerly known as American Home Mortgage Servicing, Inc., as a debtor and debtor-in-possession ("AHM SV," and together with AHM Investment and AHM Corp., the "Sellers"). Each of AHMSI and the AHM Parties (as hereinafter defined) is referred to herein as a "Party" and collectively as the "Parties."

### RECITALS:

WHEREAS, AHMSI and the Sellers entered into an Asset Purchase Agreement, dated as of September 25, 2007 (as amended, the "APA"), which was approved by the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in an *Order Pursuant to Sections 105, 363, 364, 365, and 503(b) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief* [D.I. 1711], dated October 30, 2007 (the "Sale Approval Order"), pursuant to which AHMSI acquired substantially all of the assets used in the Sellers' residential mortgage loan servicing business;

WHEREAS, the Initial Closing of the transactions contemplated by the APA occurred on November 16, 2007, at which time, among other things, the Sellers established a reserve of $10 million (the "Cure Escrow") for the purpose of (i) curing any default with respect to any act or omission that occurred prior to the Initial Closing under any of the Assumed Contracts and (ii) compensating any party for actual pecuniary loss, if any, to such party resulting from a default arising from any act or omission that occurred prior to the Initial Closing under any of the Assumed Contracts (all claims for such cure or compensation, collectively, the "Seller Cure Claims");

WHEREAS, the Final Closing of the transactions contemplated by the APA occurred on April 11, 2008, at which time, among other things, AHMSI entered into those certain Interim Servicing Agreements and Subservicing Agreements listed on Exhibit A hereto (collectively, the "Subservicing Agreements") with AHM Corp., AHM SV, American Home Mortgage Acceptance Inc., a Maryland corporation and a debtor and debtor in possession ("AHM Acceptance," and together with the Sellers, the "AHM Parties"), and/or Broadhollow Funding, LLC, a Delaware limited liability company ("Broadhollow");

WHEREAS, during the period between the Initial Closing and the Final Closing (the "Interim Period"), (i) the Sellers were required to operate the Business and manage the Purchased Assets, Assumed Liabilities and Assumed Contracts in the Ordinary Course of Business, subject to the Bankruptcy Exceptions and consistent with the terms of the APA; (ii) all profits of the Business were to be solely for the account of AHMSI; and (iii) AHMSI was to be solely responsible for all Losses, costs and expenses of the Business during such period and was required to bear all Liabilities of the Business and all Losses incurred by the Sellers or their Affiliates in the operation of the Business or otherwise arising as a result of, or in connection with, the continued ownership of the Sellers of the Purchased Assets and the operation of the Business after the Initial Closing;

WHEREAS, the APA requires the Sellers and AHMSI to reconcile the net cash flow of the Business during the Interim Period as contemplated by Exhibit G to the APA (as amended from time to time, "APA Exhibit G"), following which reconciliation the Sellers or AHMSI, as the case may be, are required to make a Reconciliation Payment to the other with respect to the net sources and uses of cash for the Interim Period;

WHEREAS, various disputes have arisen among the Parties concerning, among other things, the Sellers' conduct of the Servicing Business during the Interim Period, the APA Exhibit G reconciliation and amounts owed under the Subservicing Agreements;

WHEREAS, AHMSI filed a motion in the Bankruptcy Court (as amended, the "AHMSI Motion")[1] seeking allowance and payment of an administrative claim in the amount of $17,238,989 (the "Asserted Claim Amount"), alleging that the Sellers materially violated the terms of the APA by, among other things, inappropriately using cash received by the Servicing Business during the Interim Period to pay liabilities that the Sellers retained under the APA;

WHEREAS, the Sellers and their affiliated debtors and debtors in possession (collectively, the "Debtors") filed a preliminary objection to the AHMSI Motion [D.I. 5798] (the "Preliminary Objection"), which was joined [D.I. 5811] by the official committee of unsecured creditors appointed in the Bankruptcy Cases (the "Creditors Committee"), wherein the Debtors, among other things, (i) asserted that $7,550,921 of the Asserted Claim Amount represented Seller Cure Claims that were payable, if at all, solely from the Cure Escrow in accordance with the Sale Approval Order; (ii) asserted certain legal defenses to $1,623,274 of the Asserted Claim Amount; and (iii) reserved the right to dispute the factual assertions in the AHMSI Motion;

---

[1] On May 23, 2008, AHMSI filed its *Motion for an Order Granting the Allowance and Payment of an Administrative Expense Claim for Breaches by Certain Debtors of the Asset Purchase Agreement for the Sale of the Debtors' Mortgage Servicing Business* [D.I. 4233]. On June 2, 2008, AHMSI filed a supplement to the Original Motion [D.I. 4338], which it withdrew on June 4, 2008 [D.I. 4359]. On August 18, 2008, AHMSI filed its *Amended Motion for an Order Granting the Allowance and Payment of an Administrative Expense Claim for Breaches by Certain Debtors of the Asset Purchase Agreement for the Sale of the Debtors' Mortgage Servicing Business* [D.I. 5495].

WHEREAS, on February 23, 2009, the Bankruptcy Court entered an order [D.I. 7042] (as amended, the "Plan Confirmation Order") confirming the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009* [D.I. 7029] (as may be amended, the "Plan");

WHEREAS, the Sellers have threatened to assert claims against certain employees of AHMSI who formerly were employed by the Sellers prior to the Final Closing for breach of fiduciary duties and other obligations to the Sellers;

WHEREAS, notwithstanding the Sellers' and AHMSI's good faith efforts to narrow the scope of discovery concerning the AHMSI Motion and otherwise to minimize litigation costs and expenses, the Sellers and AHMSI have expended, and expect that they will continue to expend, significant financial and human resources in connection with litigating the AHMSI Motion; and

WHEREAS, the Sellers and AHMSI wish to avoid further costly litigation concerning the AHMSI Motion, and the necessity of litigation with respect to certain other disputes between AHMSI and the AHM Parties, and, toward these ends, the Parties have engaged in good-faith settlement negotiations in an attempt to reconcile their positions.

NOW, THEREFORE, in consideration of the mutual promises, representations, warranties and agreements, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**AGREEMENTS:**

1. <u>Capitalized Terms</u>. Capitalized terms used herein (including the foregoing recitals) that are not otherwise defined shall have the meanings ascribed to those terms in the Sale Approval Order or, to the extent not defined therein, the APA.

2. <u>Effectiveness</u>. As soon as practicable following the execution of this Agreement by all of the Parties, Sellers shall seek entry of an order by the Bankruptcy Court, substantially in the form attached hereto as Exhibit B (the "Settlement Approval Order"), approving their entry into this Agreement and the performance of the transactions and obligations contemplated hereby pursuant to Federal Rule of Bankruptcy Procedure 9019. Except as otherwise expressly provided herein, this Agreement shall become effective immediately when the Settlement Approval Order becomes a final, non-appealable order (such time, the "Effective Time"). If the Effective Time does not occur by April 30, 2010, either AHMSI or the Sellers shall have the option to terminate this Agreement by written notice to the other Party and upon such termination this Agreement will be of no force or effect, *ab initio*, without any further action by any of the Parties.

3. <u>Settlement of AHMSI Motion Claims</u>. At the Effective Time, without any further action by any Party or the Bankruptcy Court, AHMSI shall be allowed an administrative expense priority claim against Sellers' estates pursuant to Section 503(b)

of the Bankruptcy Code in the amount of $6,000,000 (the "AHMSI Motion Claim"). Sellers shall pay the AHMSI Motion Claim to AHMSI in immediately available funds on the day on which the Effective Time occurs. As soon as practicable after the Effective Time, AHMSI shall withdraw the AHMSI Motion, with prejudice to all claims asserted therein other than Account Shortfall Claims (as defined in Exhibit C hereto).

4. Payment of Other Claims and Expenses.

(a) The Parties acknowledge and agree that the amounts set forth as servicing fees, LPMI advances, and HELOC advances identified in Part 1 of Exhibit D (collectively, the "AHMSI Owed Amounts") are due and payable to AHMSI pursuant to the terms of the APA or the Subservicing Agreements.

(b) The Parties acknowledge and agree that the amounts set forth as subservicing fees, overhead and insurance costs paid during the Interim Period, net corporate and escrow advances (collectively, the "Sellers Owed Amounts") and principal and interest for unencumbered loans (the "P&I Owed Amounts"), each identified in Part 2 of Exhibit D, are due and payable to the AHM Parties pursuant to the terms of the APA or the Subservicing Agreements. On the day on which the Effective Time occurs, (i) AHMSI shall pay to the applicable AHM Party from the applicable custodial account, in immediately available funds, the P&I Owed Amounts as identified in Part 2 of Exhibit D and (ii) AHMSI shall pay to Sellers in immediately available funds an amount equal to the excess of the Sellers Owed Amounts over the AHMSI Owed Amounts.

(c) The Parties acknowledge that any amounts payable pursuant to this paragraph 4 are (i) not payable with respect to any claims asserted in the AHMSI Motion, as a part of the Asserted Claim Amount, or as a part of the AHMSI Motion Claim; and (ii) in addition to, and separate from, the amounts payable pursuant to paragraph 3.

5. Mutual Release. Effective as of the Effective Time:

(a) AHMSI, individually and on behalf of each of its subsidiaries and affiliates, present and former officers, directors, parents, general partners, management companies, shareholders, partners, associates, predecessors, members, successors, legal representatives, attorneys, assigns, agents and employees (each an "AHMSI Releasing Party" and collectively the "AHMSI Releasing Parties"), irrevocably and unconditionally, without limitation, hereby release, acquit and forever discharge each Seller, and each of their respective subsidiaries and affiliates, present and former officers, directors, parents, general partners, management companies, shareholders, partners, associates, predecessors, members, successors (including, without limitation, the Plan Trust and the Plan Trustee (as defined in the Plan Confirmation Order)), legal representatives, attorneys, assigns, agents and employees (each an "AHM Released Party" and collectively the "AHM Released Parties") from any and all judgments, executions, actionable matters, causes of action, claims,

counterclaims, demands, rights (including rights of offset and set-off), suits, debts and sums of money, obligations, duties, liabilities, injuries, damages, losses, compensation, costs, expenses (including, without limitation, attorneys' fees), of every name, kind or nature whatsoever whether claimed to be against person, entity or property, in law or in equity, whether such claims are presently known or unknown, direct or indirect, fixed or contingent, which any AHMSI Releasing Party has ever had, or now has, or which any AHMSI Releasing Party may claim to have against any AHM Released Party, arising from or relating to the APA, the Sale Approval Order, or any agreement or transaction contemplated by the APA or the Sale Approval Order, <u>other than</u> those claims specifically identified on Exhibit C hereto (<u>provided that</u> AHMSI's sole recourse with respect to any Account Shortfall Claims (as defined in Exhibit C) shall be the Cure Escrow as provided in paragraph 7 hereof); and

(b)     Sellers individually and on behalf of each of their respective subsidiaries and affiliates, present and former officers, directors, parents, general partners, management companies, shareholders, partners, associates, predecessors, members, successors (including, without limitation, the Plan Trust and the Plan Trustee (as defined in the Plan Confirmation Order)), legal representatives, attorneys, assigns, agents and employees (each an "<u>AHM Releasing Party</u>" and collectively, the "<u>AHM Releasing Parties</u>"), irrevocably and unconditionally, without limitation, hereby release, acquit and forever discharge AHMSI and each of its subsidiaries and affiliates and each of their respective present and former officers, directors, parents, general partners, management companies, shareholders, partners, associates, predecessors, members, successors, legal representatives, attorneys, assigns, agents and employees (each an "<u>AHMSI Released Party</u>" and collectively, the "<u>AHMSI Released Parties</u>") from any and all judgments, executions, actionable matters, causes of action, claims, counterclaims, demands, rights (including rights of offset and set-off), suits, debts and sums of money, obligations, duties, liabilities, injuries, damages, losses, compensation, costs, and expenses (including, without limitation, attorneys' fees) of every name, kind or nature whatsoever whether claimed to be against person, entity or property, in law or in equity, whether such claims are presently known or unknown, direct or indirect, fixed or contingent, which any AHM Releasing Party or any of their respective estates has ever had, or now has, or which any AHM Releasing Party or any of their respective estates may claim to have against any AHMSI Released Party, arising from or relating to the APA, the Sale Approval Order, or any agreement or transaction contemplated by the APA or the Sale Approval Order, <u>other than</u> those claims specifically identified on Exhibit C hereto.

6.     <u>Release of Claims Against AHMSI Employees</u>.  Effective as of the Effective Time, Sellers, individually and on behalf of each of the other AHM Releasing Parties, hereby release, acquit and forever discharge each and every present and former employee of AHMSI listed on Exhibit E hereto (the "<u>Released Employees</u>") from any and all claims, whether such claims are presently known or unknown, direct or indirect, fixed or contingent, which any of the AHM Releasing Parties or any of their

respective estates has ever had, or now has, or which any of the AHM Releasing Parties or any of their respective estates may claim to have against them, arising from or related to their employment by any of Sellers or their respective affiliates; provided that, this release will only be effective for the applicable employee for so long as that employee does not bring a claim against the estate of any AHM Releasing Parties, excluding claims that are (i) allowed as an administrative expense under § 503(b)(1)(A)(i) of the Bankruptcy Code or (ii) entitled to priority under § 507(a)(4) or (a)(5) of the Bankruptcy Code (claims under subparagraph (i) and (ii), "Employee Permitted Claims") and, in the event the applicable employee brings any claim other than an Employee Permitted Claim against any AHM Releasing Parties, the release granted to the applicable employee shall be of no force or effect, *void ab initio*, without any further action by any of the Parties.

       7.    Claims not Released; Limitations on Account Shortfall Claims. For the avoidance of doubt, this Agreement shall have no effect on, and AHMSI and the Sellers are not settling, discharging or waiving, any claims set forth in Exhibit C; provided that AHMSI's sole recourse on account of any Account Shortfall Claim (as defined in Exhibit C) shall be against the Cure Escrow, to the extent (and only to the extent) permitted by the Sale Approval Order. Sellers shall not, and each Seller shall cause their respective affiliates not to, object to the allowance or payment of any Account Shortfall Claim asserted by AHMSI against the Cure Escrow; provided, however, that nothing in this Agreement or the Settlement Approval Order is intended, nor shall it be construed:

      (a)    to affect the rights, if any, of any party in interest (including, but not limited to, the Administrative Agent) other than Sellers and their respective affiliates to object to any Account Shortfall Claim asserted against the Cure Escrow on any basis whatsoever;

      (b)    as an acknowledgement, admission, or finding (i) as to the validity, amount or timeliness of any Account Shortfall Claim or (ii) that any Account Shortfall Claim constitutes a Seller Cure Claim that is properly assertable against the Cure Escrow in accordance with the Sale Approval Order, it being understood by AHMSI and the Sellers that this Agreement shall not create or give rise to any Seller Cure Claim, or substantive or procedural right or remedy, that did not previously exist under a prior agreement or order of the Bankruptcy Court, or otherwise under applicable Law;

      (c)    to require Sellers to cooperate with or assist AHMSI in the pursuit of any Account Shortfall Claim against the Cure Escrow, except to the extent provided in paragraph 13 of this Agreement; or

      (d)    to prohibit Sellers, solely to the extent required by the *Stipulation of Settlement Among (i) the Debtors, (ii) Bank of America, N.A., as Administrative Agent, and (iii) the Official Committee of Unsecured Creditors and Granting Related Relief* (the "BofA Settlement Stipulation") as approved by Order of the Bankruptcy Court dated August 5, 2008 [D.I. 5308], from (i) litigating or otherwise

resolving the claim against the Cure Escrow of any party identified on Exhibit B to the BofA Settlement Stipulation, or (ii) at the Administrative Agent's request, providing reasonable cooperation to the Administrative Agent in connection with litigation of any claim against the Cure Escrow.

8. **No Admission of Liability.** By entering into this Agreement, none of the Parties admits any liability to any other Party. The Parties are settling the claims set forth herein solely in the interest of reasonable compromise and avoidance of continued expense and burden associated with the negotiation and continued litigation of the AHMSI Motion. None of this Agreement, any of its terms or provisions nor any of the negotiations or proceedings in connection with it (a) are, or are intended to be, an admission by any Party of any evidence of the truth of any fact alleged, or the validity of any claim that has been or could have been asserted, or of any liability, fault or wrongdoing of any Party, or (b) shall be offered or received in evidence in any action or proceeding of any kind other than such proceedings as may be necessary to consummate, defend or enforce this Agreement.

9. **Representations and Warranties of AHMSI.** AHMSI represents and warrants to the AHM Parties (which representations and warranties shall survive the execution and delivery of this Agreement and the completion of the transactions contemplated hereby) the following:

(a) **Legal Power; Organization.** AHMSI has been duly incorporated, and is validly existing and in good standing under the laws of its jurisdiction of incorporation, has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby, and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement;

(b) **Binding Agreement.** This Agreement has been duly executed and delivered by AHMSI and, assuming due and valid authorization, execution and delivery by Sellers, this Agreement constitutes a legal, valid and binding obligation of AHMSI, enforceable against AHMSI in accordance with its terms, except as limited by the Enforceability Exceptions;

(c) **Duly Authorized Agents.** The person executing this Agreement on behalf of AHMSI is a duly authorized agent of AHMSI and has the full authority to enter into this Agreement; and

(d) **Unpaid Expenses.** AHMSI has not received any single invoice or group of related invoices that are unpaid as of the date hereof and that exceed $25,000 in one instance or more than $100,000 in the aggregate that, in each instance, relate to the operation of the Business within the period between November 16, 2007 and April 11, 2008, other than invoices for ordinary course professionals (e.g., attorneys).

(e) <u>Right to Settle Claims</u>. AHMSI is the sole and lawful owner of all rights, title and interests in any and all payments or other claims that are being reconciled and paid pursuant to paragraph 4(a) of, and Part 1 of Exhibit D to, this Agreement. AHMSI has not assigned, transferred or conveyed, in whole or in part, any of its rights, title or interests in (i) any claims against the AHM Released Parties which are released pursuant to this Agreement or (ii) any payments or other claims that are being reconciled and paid pursuant to paragraph 4(a) of, and Part 1 of Exhibit D to, this Agreement

(f) <u>Certain Custodial Accounts</u>. As of the date hereof and as of the day on which the Effective Time occurs, the amounts held in the principal and interest custodial accounts for each of the Unencumbered Loans listed in Part 2 of Exhibit D equals or exceeds the individual amount owed to the AHM Parties set forth opposite of such Unencumbered Loan in Part 2 of Exhibit D.

10. <u>Representations and Warranties of Sellers</u>. Sellers represent and warrant to AHMSI (which representations and warranties shall survive the execution and delivery of this Agreement and the completion of the transactions contemplated hereby) the following:

(a) <u>Legal Power; Organization</u>. Each Seller has been duly incorporated and is validly existing and in good standing under the laws of its jurisdiction of incorporation has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby (subject to entry of the Settlement Approval Order), and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement;

(b) <u>Binding Agreement</u>. This Agreement has been duly executed and delivered by each Seller and, assuming due and valid authorization, execution and delivery by AHMSI, and subject to entry of the Settlement Approval Order, this Agreement constitutes a legal, valid and binding obligation of each Seller and their respective successors (including the Plan Trust and Plan Trustee (as defined in the Plan Confirmation Order)), enforceable against each of them in accordance with its terms, except as limited by the Enforceability Exceptions;

(c) <u>Duly Authorized Agents</u>. The persons executing this Agreement on behalf of Sellers are duly authorized agents of Sellers whom they represent and have the full authority to enter into this Agreement;

(d) <u>Plan Not Yet Effective</u>. As of the date hereof, the Plan has not yet become effective. No consent, approval or authorization by the Plan Trust or the Plan Trustee (as defined in the Plan Confirmation Order) or by any Plan oversight committee or other Person (other than the Bankruptcy Court) is required in connection with the execution and delivery of this Agreement or the completion of the transactions contemplated hereby; and

(e) <u>Cure Escrow</u>. As of the date hereof, an aggregate amount of $2,648,316 claims have been adjudicated as payable or have been agreed to be paid from the Cure Escrow; and an aggregate amount of $3,268,596 of disputed claims remain alleged to be outstanding against the Cure Escrow.

(f) <u>Broadhollow Reconciliations</u>. The reconciliations set forth in Part 2 of Exhibit D account for all obligations of AHMSI with respect to net corporate and escrow advances and principal and interest for unencumbered loans owned by Broadhollow for the respective periods set forth on Exhibit D under the Interim Servicing Agreement, dated April 11, 2008, by and between Broadhollow and AHMSI.

(g) <u>Right to Settle Claims</u>. The Sellers are the sole and lawful owners of all rights, title and interests in any and all payments or other claims that are being reconciled and paid pursuant to paragraph 4(b) of, and Part 2 of Exhibit D to, this Agreement (except to the extent arising from, or relating or otherwise allocable to, the Interim Servicing Agreement, dated April 11, 2008, by and between AHM Acceptance and AHMSI or the Subservicing Agreement, dated April 11, 2008, by and between AHM Acceptance and AHMSI). The Sellers have not assigned, transferred or conveyed, in whole or in part, any of their rights, title or interests in (i) any claims against the AHMSI Released Parties or against the Released Employees which are released pursuant to this Agreement or (ii) any payments or other claims that are being reconciled and paid pursuant to paragraph 4(b) of, and Part 2 of Exhibit D to, this Agreement (except to the extent arising from, or relating or otherwise allocable to, the Interim Servicing Agreement, dated April 11, 2008, by and between AHM Acceptance and AHMSI or the Subservicing Agreement, dated April 11, 2008, by and between AHM Acceptance and AHMSI).

11. <u>Representations and Warranties of AHM Acceptance</u>. AHM Acceptance represents and warrants to AHMSI (which representations and warranties shall survive the execution and delivery of this Agreement and the completion of the transactions contemplated hereby) the following:

(a) <u>Legal Power; Organization</u>. AHM Acceptance has been duly incorporated and is validly existing and in good standing under the laws of its jurisdiction of incorporation, has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby (subject to entry of the Settlement Approval Order), and has taken all necessary corporate or other action to authorize the execution, delivery and performance of this Agreement;

(b) <u>Binding Agreement</u>. This Agreement has been duly executed and delivered by AHM Acceptance and, assuming due and valid authorization, execution and delivery by each of the other Parties, and subject to entry of the Settlement Approval Order, this Agreement constitutes a legal, valid and binding obligation of AHM Acceptance and its successors (including the Plan Trust and

Plan Trustee (as defined in the Plan Confirmation Order)), enforceable against each of them in accordance with its terms, except as limited by the Enforceability Exceptions; and

(c) <u>Duly Authorized Agents</u>. The person executing this Agreement on behalf of AHM Acceptance is a duly authorized agent of AHM Acceptance whom it represents and has the full authority to enter into this Agreement.

(d) <u>Right to Payments</u>. AHM Acceptance is the sole and lawful owner of all rights, title and interests in the right to any and all payments or other claim that is being reconciled and paid pursuant to paragraph 4(b) of, and Part 2 of Exhibit D to, this Agreement to the extent arising from, or relating or otherwise allocable to, the Interim Servicing Agreement, dated April 11, 2008, by and between AHM Acceptance and AHMSI or the Subservicing Agreement, dated April 11, 2008, by and between AHM Acceptance and AHMSI and, in each case, AHM Acceptance has not assigned, transferred or conveyed, in whole or in part, any of its rights, title or interests in any such claim or right to payment to any other Person.

12. <u>Cooperation Regarding Loan/REO Sales by Sellers</u>. From and after the Effective Time, AHMSI shall cooperate reasonably and in good faith with Sellers to facilitate Sellers' sale of any Mortgage Loans or REO Property owned or held for the benefit of any Seller or any affiliate of Seller and being serviced by AHMSI pursuant to one of the Subservicing Agreements.

13. <u>Cooperation Regarding Third-Party Litigation</u>. From and after the Effective Time, the Parties shall cooperate reasonably and in good faith to make non-privileged information and documentation relating to the Business prior to the Final Closing in their possession available (a) to each other in litigation with third parties, and (b) to the Committee in any litigation brought by the Committee on behalf of the Debtors' bankruptcy estates, so long as making such information or documentation available does not violate applicable Law (including privacy Laws), <u>provided</u> <u>that</u> the requesting party pays (or, with respect to requests by the Committee, the Debtors pay) all reasonable costs (including both third party out-of-pocket costs and internal time) of the requested party associated with making the information and documentation available. For purposes of calculating the cost of internal time in the event AHMSI is the requested party, (i) all persons with titles of assistant vice president and below (including those individuals with no titles, but excluding in all cases in-house attorneys) will be charged at the rate of $75.00 per hour and (ii) all persons with titles higher than assistant vice president and all in-house attorneys, regardless of title, will be charged at the rate of $125 per hour. For the avoidance of doubt, (A) no requested party shall be required to provide information or documentation hereunder prior to it being paid all amounts due to it under this paragraph 13 and (B) a requested party may refuse to cooperate to make information and documentation available to a requesting party if the requested party reasonably believes that such cooperation would violate applicable privacy Laws in the absence of a subpoena, court order or other form of binding directive issued by a Government Entity that, if issued, would qualify as an exception to the requested party's

obligation to maintain the confidentiality or privacy of the requested information or documentation.

14. <u>No Waiver</u>. No failure by any Party to exercise or delay in exercising any particular right, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any other right, power or privilege hereunder preclude any other or further exercise thereof, or the exercise of any other right, power or privilege. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law or in any other agreement.

15. <u>Attorneys' Fees</u>. The Parties will bear their own attorneys' fees and costs incurred in litigating the AHMSI Motion, including the fees and costs associated with the execution of this Agreement and seeking the Bankruptcy Court's entry of the Settlement Approval Order.

16. <u>Successors</u>. This Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective successors (including, without limitation, the Plan Trust and the Plan Trustee (as defined in the Plan Confirmation Order)), assigns, purchasers and representatives.

17. <u>Entire Agreement; No Third Party Beneficiaries</u>. This Agreement (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof, and (b) is not intended to confer any rights or remedies upon any person or entity other than the Parties, except as provided in paragraphs 5, 6, 13 and 16.

18. <u>Severability</u>. If any of the provisions contained in this Agreement or any other documents referred to herein or executed in connection with this Agreement or otherwise should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein and therein shall not in any way be affected thereby. It is the intention of the Parties that if any such provision is held to be illegal, invalid, or unenforceable, there will be added in lieu thereof a provision as similar to such provision as is possible to be legal, valid and enforceable.

19. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when two or more counterparts have been signed by each of the Parties and delivered to the other Parties. Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of such counterparts is confirmed.

20. <u>Descriptive Headings</u>. Descriptive headings of the several sections of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

21. <u>Consultation with Attorneys</u>. Each Party has consulted with its own attorneys in the negotiation and drafting of this Agreement and fully understands the

terms hereof, and that each Party has received legal advice from its own attorneys regarding the advisability of entering into the settlement provided for herein and is voluntarily executing this Agreement.

22. <u>Governing Law and Waiver of Jury Trial</u>. This Agreement shall be construed and enforced in accordance with the (a) the internal laws of the State of New York without giving effect to the rules governing the conflict of laws and (b) to the extent applicable, Title 11, U.S.C. §§ 101, et seq., as amended. THE PARTIES IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION RELATING TO THIS AGREEMENT.

23. <u>Venue and Retention of Jurisdiction</u>. (a) Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 11.6 of the APA; <u>provided, however,</u> that if the Bankruptcy Cases of the Sellers have closed, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County for the resolution of any or all claims and disputes which arise or result from, or are connected with this Agreement, any breach or defaults hereunder, or the transactions contemplated hereby that may be properly brought in federal court and submit to the exclusive jurisdiction of the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute that may not be properly brought in federal court. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

(b) Each of the Parties hereby consents to process being served by any Party in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 11.6 of the APA, including AHM Acceptance consenting to being served at the address provided for notice to Sellers.

24. <u>Construction</u>. The Parties have cooperated in the drafting and preparation of this Agreement. Therefore, in any construction to be made of this Agreement, the Agreement shall not be construed for or against any Party on that basis.

IN WITNESS HEREOF, AHMSI and Sellers have caused this Release and Settlement Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

AMERICAN HOME MORTGAGE SERVICING, INC. (formerly known as AH Mortgage Acquisition Co., Inc.)

By: _____
Name: DAVID M. FRIEDMAN
Title: PRESIDENT

AMERICAN HOME MORTGAGE INVESTMENT CORP., as Seller and Debtor and Debtor-in-Possession

By: _____
Name:
Title:

AMERICAN HOME MORTGAGE CORP., as Seller and Debtor and Debtor-in-Possession

By: _____
Name:
Title:

AHM SV, INC. (formerly known as American Home Mortgage Servicing, Inc.), as Seller and Debtor and Debtor-in-Possession

By: _____
Name:
Title:

**Signature Page to Release and Settlement Agreement**

DLI-6279799

IN WITNESS HEREOF, AHMSI and Sellers have caused this Release and Settlement Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

AMERICAN HOME MORTGAGE SERVICING, INC. (formerly known as AH Mortgage Acquisition Co., Inc.)

By: _____
Name:
Title:

AMERICAN HOME MORTGAGE INVESTMENT CORP., as Seller and Debtor and Debtor-in-Possession

By: _/s/ Kevin Nystrom_____
Name: Kevin Nystrom
Title: Chief Restructuring Officer

AMERICAN HOME MORTGAGE CORP., as Seller and Debtor and Debtor-in-Possession

By: _/s/ Kevin Nystrom_____
Name: Kevin Nystrom
Title: Chief Restructuring Officer

AHM SV, INC. (formerly known as American Home Mortgage Servicing, Inc.), as Seller and Debtor and Debtor-in-Possession

By: _/s/ Kevin Nystrom_____
Name: Kevin Nystrom
Title: Chief Restructuring Officer

**Signature Page to Release and Settlement Agreement**

      Agreed to and accepted solely as to the provisions of paragraph 1, the last sentence of paragraph 2, paragraph 4, paragraph 5 (to the extent it relates to subpart 3 of Exhibit C), paragraphs 6 - 9, paragraph 11, and paragraphs 13 - 24 hereof.

                                  AMERICAN HOME MORTGAGE
                                  ACCEPTANCE INC., as Debtor and
                                  Debtor-in-Possession

                                  By: /s/ Kevin Nystrom
                                  Name: Kevin Nystrom
                                  Title: Chief Restructuring Officer

**Signature Page to Release and Settlement Agreement**