IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x
In re:                                                            :  Chapter 11
                                                                  :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                            :  Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                   :
                                                                  :  Jointly Administered
   Debtors.                                                       :
                                                                  :  **Re: Dkt. No. 8812**
                                                                  :
----------------------------------------------------------------- :
                                                                  x

**OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION OF DEBORAH MILLS TO (I) AMEND
HER PROOF OF CLAIM, (II) ALLOW ADMINISTRATIVE EXPENSE
CLAIM, (III) FOR AN ORDER GRANTING ADEQUATE PROTECTION
AND (IV) FOR AVOIDANCE OF POST PETITION TRANSFERS
OF ESTATE PROPERTY**

The Official Committee of Unsecured Creditors (the "*Committee*,") of American Home Mortgage Holdings, Inc. ("*AHM Holdings*"), and certain of its direct and indirect affiliates and subsidiaries (collectively, "*AHM*" or the "*Debtors*"),[1] hereby files this opposition (the "*Opposition*") to the *Motion of Deborah Mills for an Order to (I) Amend Proof of Claim and (II) Motion for Order of Allowed Administrative Expense Claim Priority Against the Estate Pursuant to Section 503(b) of the Bankruptcy Code in Immediately Available Funds and (III) Order of Right to Protection of Certain Property Interests Under Section 361 or (IV) Avoidance Action*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

128189.01600/40188435v.1

*Against the Debtors Pursuant to Section 549* (the "*Mills Motion*"). In support of this Opposition, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Rather than setting forth a sufficient legal or factual argument to justify her request for an administrative expense claim, adequate protection and/or the avoidance of a post-petition transfer, the Mills Motion is simply an attempt by Deborah Mills ("*Mills*") to attain a windfall payment at the expense of the Debtors' estates and their creditors. The residential property upon which Mills bases her claims was properly foreclosed on in compliance with all state laws and procedures prior to August 7, 2007, the Debtors' petition date. At the time of the Debtors' bankruptcy, Mills retained no interests in such property or the proceeds from the subsequent sale of the property. Thus, at best, all she can assert against the Debtors is an unsecured claim.

## BACKGROUND FACTS

2. On or about August 9, 2005, Deborah Mills purchased residential property located at 1880 Burnt Rock Way, Templeton, San Luis Obispo County, California (the "*Property*"). Mills financed the purchase of the Property by executing two notes with certain of the Debtors in the amounts of $962,500 and $200,000, each secured by a mortgage (together, the "*Mortgages*"). Mills defaulted on the Mortgages almost immediately.

3. On January 21, 2006, the Debtors provided Mills notice of the breach and acceleration of the notes. The Debtors subsequently recorded notices of default with the Clerk of San Luis Obispo County, officially commencing foreclosure proceedings and establishing a sale date of June 6, 2006, which was subsequently postponed until August 11, 2006.

4. On June 26, 2006, Mills filed a petition for relief under chapter 7 of title 11 of the United States Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the

2

Central District of California, Case No. 9:06-bk-10337-RR, before the Honorable Judge Robin Riblet (such proceeding referred to herein as the "*Mills Bankruptcy*").

5.  On June 30, 2006, AHM Acceptance (one of the Debtors) filed two substantially similar motions (the "*Lift Stay Motions*") for relief from the automatic stay, indicating that no payments had been received from Mills on the Mortgages since September 13, 2005, and that the outstanding prepetition claims arising from the Mortgages were $1,008,035.50 and $220,856.86 respectively.[2]

6.  On July 25, 2006, Judge Riblet entered orders granting the Lift Stay Motions (the "*Lift Stay Orders*"), terminating the automatic stay to allow AHM Acceptance "to enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable non-bankruptcy law, but may not pursue any deficiency claim against [Mills] or property of the estate except by filing a Proof of Claim pursuant to 11 U.S.C. § 501."

7.  On August 10, 2006, AHM Acceptance exercised its remedies under state law and completed a non-judicial foreclosure (a trustee's sale) of the Property (the "*Foreclosure*"). AHM Acceptance credit bid Mills' outstanding indebtedness at the trustee's sale and thereafter executed trustees deeds granting the property to AHM Servicing. Mills did not contest or file any objections to the foreclosure proceedings, or timely exercise any legal or equitable rights of cure or redemption prior to the Foreclosure.

8.  On July 19, 2007, Judge Riblet discharged Mills as a debtor and subsequently closed the Mills Bankruptcy.

---

[2]  Schedule D to Mills' chapter 7 petition listed AHM Servicing as having two secured claims in the amounts of $961,497.40 and $199,936.09, without deducting the value of collateral, reflecting the outstanding balances on the Mortgages. The claims asserted by AHM Acceptance in the Lift Stay Motions included prepetition principal, accrued interest, late charges, and costs, as well as post petition costs of $800 for each of the Mortgages, for total claims of $1,008,835.50 and $221,656.86.

9. On August 6, 2007 (the "*Petition Date*"), each of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. *The Amended Chapter 11 Plan Of Liquidation Of The Debtors* Dated As Of February 18, 2009 [Docket No. 7042] (the "*Plan*") was confirmed. The Plan has not yet gone effective.

10. The Debtors' schedules listed the Property as real estate owned by the estate (referred to as an REO) in the amount of $1,170,000. The schedules listed the Property without any other encumbrances or security interests.

11. On August 24, 2007, this Court entered an *Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code (I) Confirming the Debtors' Authority (a) to Sell Certain Real Estate Owned by the Debtors in the Ordinary Course Free and Clear of Any and All Liens and Encumbrances, (b) to Continue Funding Servicing Advances and Deducting Such Servicing Advances from the Proceeds of the Sale, (c) to Distribute Proceeds of the Sale, and (II) Granting Related Relief* (the "*REO Sale Order*")[D.I. 347].

12. On September 3, 2008, Mills contacted the Debtors and offered to purchase the Property for $300,000. The Debtors rejected her offer and informed her that the estimated value of the Property was substantially higher than her offered price.[3]

13. On January 13, 2009, pursuant to the REO Sale Order, AHM Servicing sold the Property for a contract price of $813,750, netting proceeds in the amount of $634,954.46 to the estates.

---

[3] The Debtors received a Broker Price Opinion in October 2008 from the broker firm Williams and Williams, suggesting a listing price of $900,000.

4

**Claims Asserted by Mills**

14. On November 19, 2007, Mills filed proof of claim no. 2743 ("*Claim 2743*" or the "*Mills Claim*") against AHM Holdings in the amount of $1,170,000, asserting, *inter alia*, loss of Mills' down payment, mortgage hypothecation, and fraud.

15. On March 31, 2010, Mills filed an amended proof of claim (the "*Amended Mills Claim*") seeking to add additional claims and allege a secured interest in the $634,954.46 proceeds realized by the estate in the disposition of the Property, and an unsecured amount of $747,545.54. The Mills Motion seeks an order to allow the Amended Mills Claim against all of the Debtors.

**ARGUMENT**

**I.     Mills Is Not Entitled To An Administrative Expense Claim, Adequate Protection And/Or Avoidance Of A Post-Petition Transfer**

16. Mills asserts (a) an administrative expense claim in the amount of $634,954.46 (the "*Mills Admin Claim*"), (b) an entitlement to adequate protection (the "*Mills Protection Claim*"), and (c) a claim to avoid the transfer of the Property (the "*Mills Avoidance Claim*"). As she had no interest in the Property at the time the Debtors filed for bankruptcy, the Mills Admin Claim, the Mills Protection Claim and the Mills Avoidance Claim should be denied.

   A.   *Mills Retained No Interest In The Property After the Foreclosure*

17. Fundamental to the Mills Admin Claim, the Mills Protection Claim and the Mills Avoidance Claim is Mills' claim that she retained some rights or interests in the Property after the Foreclosure. As the Foreclosure ended all such rights, the Mills Admin Claim, the Mills Protection Claim and the Mills Avoidance Claim should be denied.

18. California public policy strongly favors finality of foreclosure sales that occur within the state. See, e.g., Alliance Mortgage Co. v. Laurie Samuel Rothwell, 900 P.2d 601 (Cal.

5

1995). The policy behind the doctrine of a trustee's sale (non-judicial foreclosure) is that such a sale should constitute a final adjudication of the rights of the borrower and the lender where the debtor has no post-sale right of redemption and the creditor may not seek a deficiency judgment. See Alliance Mortgage, 900 P.2d at 606-08. Where a lender chooses to bid, it does so in the capacity of a purchaser, is entitled to credit bid up to the amount of the outstanding indebtedness, and, if that bid is successful, the lender takes title to the property and releases the borrower from further obligations under the defaulted note. Id. Such a sale "may only be set aside if the price is so low as to shock the conscience or raise a presumption of fraud or unfairness." Id.

19. Mills' rights to the Property were put to rest at the August 2006 Foreclosure. The Debtors received permission to exercise their state law rights in the Lift Stay Orders entered in the Mills Bankruptcy. After being authorized "to foreclose upon and obtain possession of the Property in accordance with applicable non-bankruptcy law, but may not pursue any deficiency claim against the Debtor(s) or property of the estate except by filing a Proof of Claim pursuant to 11 U.S.C. § 501" (Lift Stay Orders, ¶ 5 ), the Debtors proceeded to foreclose on the Property in compliance with their rights under California law.

20. At the Foreclosure, AHM Acceptance successfully credit bid the outstanding balance of the debt and took title to the Property, which in turn released Mills from further obligations under the Mortgages (including the fact that she had failed to make any mortgage payments for almost a year on Mortgages with owed outstanding balances of $961,497.40 and $199,936.09) or for any deficiency claim or judgment.[4] Mills no longer retained any legal, equitable, or any other rights in the Property, and relinquished any rights, if any, to reclaim or redeem the Property. As such, and as reflected on the Debtors' schedules, the Property was

---

[4] In fact, by the time the Property was sold to a third party in 2009, the sale only generated $813,750 (of which the Debtors realized $634,954.46), approximately $300,000 below the balance of the Mortgages.

property of the estates free of any liens, interests or encumbrances asserted by Mills. Any objection Mills had to the Foreclosure should have been raised during the Mills Bankruptcy, when AHM Acceptance moved to lift the automatic stay to foreclose upon the Property, or alternatively, during the Foreclosure itself.

### B. *Mills Is Not Entitled To An Administrative Priority Claim*

21.    In the Mills Admin Claim, Mills asserts an interest in the $634,954.46 in proceeds realized by the estates after the 2009 disposition of the Property, and requests this Court to allow an administrative expense claim in that amount. As discussed above, any and all rights that Mills had in the property were relinquished in August 2006 by way of the Foreclosure. Mills fails to provide any factual or legal basis as to why she has any interest in the Property after the Foreclosure or a claim to the proceeds from the subsequent sale, let alone any factual or legal grounds for an administrative priority claim under section 503(b). As such, her claim for an administrative priority claim should be denied.

### C. *Mills Is Not Entitled To Adequate Protection*

22.    By the Mills Protection Claim, Mills claims that she is/was entitled to adequate protection relating to the Debtors' sale of the Property. Under section 361, when adequate protection is required under section 362, 363, or 364 of an interest of an entity in property, the court may order that such adequate protection be provided. As set forth above, any right or interest Mills had in the Property ended approximately a year before the Petition Date. As such, Mills cannot seek adequate protection under sections 362, 363 or 364 for her nonexistent right or interest.

*D. Mills Cannot Bring An Avoidance Action*

23. Mills asserts that should the Court not grant her motion to amend and allow an administrative priority claim, then the Court should avoid the transfer of the Property under section 549 of the Bankruptcy Code. This claim has no merit.

24. First, Mills has no standing to bring such a claim. Section 549 claims can only be asserted by a Trustee. As Mills is not a Trustee, she has no standing to seek to avoid a post-petition transfer. Furthermore, even if she had standing to bring such a claim, such a claim would be frivolous as the transfer of the Property was authorized by this Court in the REO Sale Order, and thus unavoidable under section 549(a)(2)(B) of the Bankruptcy Code. Lastly, even if the transfer was avoided, such avoidance would not benefit Mills. The Property would just return to the Debtors' estates and would continue to be free of any interest of Mills as the Foreclosure ended any interest she had in the Property.

## II.  Mills' Request To Amend Her Claim

25. By the Amended Mills Claim, Mills asserts an interest in the $634,954.46 in proceeds realized by the Debtors' estates after the 2009 disposition of the Property. Mills states that the amount "reflects the exact amount the debtors received in liquidating [sic] of the property that I *specifically* claimed against the estate and was liquidated without my claim being addressed."

26. As discussed in section I.B. *supra*, any and all rights that Mills had in the Property were relinquished in August 2006 by way of the Foreclosure. Contrary to Mills' claim, her rights to the Property were not reincarnated simply because she filed a claim against the Debtors. Her rights ended in August of 2006 at the Foreclosure and thus she has no right to the proceeds of the subsequent sale of the Property. Although the Committee disputes Mills' claim to any

proceeds realized from the disposition of the Property, the Committee has no objection to her amending her claim and reserves all rights to object to such amended claim.

## CONCLUSION

**WHEREFORE**, the Official Committee of Unsecured Creditors respectfully requests that the Court deny the Mills Administrative Claim, the Mills Protection Claim and the Mills Avoidance Claim.

Dated:  Wilmington, Delaware
       May 11, 2010

BLANK ROME LLP

  */s/ Victoria Guilfoyle*
Bonnie Glantz Fatell (No. 3809)
David W. Carickhoff (No. 3715)
Victoria A. Guilfoyle (No. 5183)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:(302) 425-6400
Facsimile:(302) 425-6464

-and-

HAHN & HESSEN LLP
Mark S. Indelicato, Esq.
Edward L. Schnitzer, Esq.
Zahir A. Virani, Esq.
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel for the Official Committee of Unsecured Creditors*