IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| AMERICAN HOME MORTGAGE ) | |
| HOLDINGS, INC., a Delaware corporation, ) | Case No. 07-11047 (CSS) |
| et al.[1] ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | **Ref. Docket No. 8812** |
| --------------------------------------------------------- ) | |

**DEBTORS' OBJECTION TO DEBORAH MILLS' MOTION FOR AN ORDER (I) AMENDING PROOF OF CLAIM, (II) ALLOWING AN ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO SECTION 503(B), (III) ORDERING A RIGHT OF PROTECTION OF CERTAIN PROPERTY INTERESTS PURSUANT TO SECTION 361 AND (IV) AN AVOIDANCE ACTION AGAINST THE DEBTORS PURSUANT TO SECTION 549**

The above-captioned debtors and debtors-in-possession ("AHM" or the "Debtors") make this objection (the "Objection") to the *Motion of Deborah Mills for an Order (I) Amending Proof of Claim, (II) Allowing an Administrative Expense Claim Pursuant to Section 503(b), (III) Ordering a Right of Protection of Certain Property Interests Pursuant to Section 361 and (IV) an Avoidance Action Against the Debtors Pursuant to Section 549* (the "Motion") filed by Deborah Mills ("Ms. Mills") on April 27, 2010. In support of this Objection, the Debtors respectfully represent as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc., f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

## PRELIMINARY STATEMENT[2]

1. The Debtors do not contest Ms. Mills request to file an amended claim, subject to a full reservation of the Debtors' rights to later object to such amended claims pursuant to 11 U.S.C. § 502. However, the Debtors submit that the remaining relief requested in the motion must be denied.

2. Ms. Mills' administrative claim request must be denied. AHM financed Ms. Mills home and she subsequently stopped making payments on her Loans. As a result, AHM initiated Foreclosure proceedings on the Property, which concluded on or about August of 2006 (one year prior to AHM's own bankruptcy). Despite Foreclosure, Ms. Mills continued to occupy the Property unlawfully forcing AHM to evict her in February 2007. Despite Ms. Mills' failure (i) to make timely mortgage payments, (ii) to assert any defenses against Foreclosure proceedings, or (iii) to seek timely reinstatement of her Loans, Ms. Mills now asks this Court to grant an administrative claim in the full amount of the original purchase price of her home.

3. There is, however, no basis for Ms. Mills to be entitled to an administrative expense claim. She did not enter into any post-petition transactions with the Debtors, did not hold any legal or equitable rights in the Property post-petition, and provided no actual or necessary benefit to the Debtors' estates. For instance, following the Foreclosure of the Property and expiration of the relevant California reinstatement laws, Ms. Mills' rights with respect to the Property ceased to exist. As a result, the Debtors were under no obligation to sell the Property back to Ms. Mills at any price (let alone for offers that were estimated to be ¼ of the appraised price)[3] or to provide her with new financing.

---

[2] Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to such terms *infra*.
[3] Notably, the ultimate sale of the Property, which was performed by the purchaser of the Debtors' servicing business, resulted in an amount equal to nearly three times the amount offered by Ms. Mills during the Debtors' bankruptcy.

4. Ms. Mills additionally requests (i) adequate protection payments pursuant to section 361 of the Bankruptcy Code and (ii) to institute an avoidance action pursuant to section 549 of the Bankruptcy Code. Because Ms. Mills has never held an interest in any Property of the Debtors' estates and is not a trustee, she has no legal or factual basis for either request.

## FACTUAL BACKGROUND

5. In August 2005 (two years prior to AHM's bankruptcy), Ms. Mills purchased 1880 Burnt Rock Way, Templeton, CA (the "Property"). The purchase of the Property was financed in part by a down payment on the Property in the approximate amount of $212,500.00[4] and in part by two mortgages from AHM in the total amounts of $962,500.00 (the "Loan") and $200,000.00 (the "Second Loan") (collectively, the "Loans"). The Loans funded on August 8, 2005.

6. On or about January 2006, following four months of Ms. Mills failing to make any payments on the Loan, AHM began the foreclosure proceedings (the "Foreclosure").

7. On June 26, 2006, Ms. Mills filed Chapter 7 bankruptcy (the "Mills Bankruptcy") in the United States Bankruptcy Court for the Central District of California. In the Mills Bankruptcy, Ms. Mills listed the Property as an undisputed liability on Schedule A and AHM as an undisputed creditor holding secured claims on Schedule D. *See* Mills Bankruptcy, Schedules, Case No. 06-10337, D.I. 1 & 10, attached hereto as Exhibit B and C.[5] Ms. Mills did

---

[4] It appears that, of the $212,500.00 down payment, $164,201.00 was borrowed from an acquaintance Mr. Ernest Kuhn (the "Kuhn Loan"). The Kuhn Loan was later the subject of an adversary against Ms. Mills to seek non-dischargeability of the Kuhn Loan in the Mills Bankruptcy pursuant to 11 U.S.C. § 523(a)(2) (obtaining funds through false pretenses). *See* Adversary Case No. 9:06-AP-01097; *see also* Kuhn Complaint, Mills Bankruptcy D.I. 24, attached hereto as Exhibit A. The adversary concluded with a stipulation of non-dischargability of debt and a general mutual release.

[5] Ms. Mills schedules were amended at various times during the pendency of her bankruptcy proceeding, however, the relevant schedules, Schedule A – Real Property and Schedule D – Creditors Holding Secured Claims, were filed only at D.I. 1 and 10.

3

not schedule any litigation or potential claim against the Debtors for fraud in connection with the Loans. *See* Exhibit B. Nor did she contest the relief from stay motion filed by the Debtors for the Loans. *See* Mills Bankruptcy, Stay Relief Motion & Order, Case No. 06-10337, D.I. 7, 9, 12 & 13 attached hereto as Exhibit D, E, F and G.

        8.      Following the uncontested relief from stay in the Mills Bankruptcy, in August of the 2006, the Foreclosure concluded. Despite the Foreclosure, Ms. Mills continued to occupy the Property unlawfully. AHM was forced to commence eviction proceedings, and Ms. Mills was evicted from the Property on or about February 2007. Ms. Mills did not pay rent during the time period in which she remained on the Property.

        9.      On March 7, 2007, Ms. Mills wrote a letter to former Chief Executive Officer of American Home Mortgage, Inc. Michael Strauss (the "Strauss Letter"). Pursuant to the Strauss Letter, Ms. Mills admits that her payments on the Loan ceased "due to unforeseen events" in her life. *See* Strauss Letter, attached hereto as Exhibit H. She concedes that her efforts to rectify any defaults on the Loan or repurchase the Property did not occur until December 2006 – approximately four months after Ms. Mills right to reinstatement had expired and the Debtors had completed the Foreclosure of the Property. *See* Exhibit H.

       10.     On August 3, 2007, the Debtors ceased originating loans and implemented a reduction in workforce. [D.I. 3] On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code. At the time of filing, the Debtors owned the Property and listed it as an asset on their Schedules of Assets and Liabilities. The Property was listed as a real estate owned property with an estimated value of $1.17 million. [D.I. 1350].

11. On October 30, 2007, this Court entered an order (the "Servicing Sale Order") approving the Debtors' sale (the "Sale") of the mortgage servicing business to AH Mortgage Acquisition Co. (the "Purchaser") [D.I. 1711]. Following the final closing of the Sale on April 11, 2008, the Property was serviced by the Purchaser and owned by the Debtors.

12. On November 19, 2007, Ms. Mills filed Claim Number 2743 (the "Original Claim"). Ms. Mills asserted she was entitled to (i) a secured claim in the amount of $212,500.00 and (ii) an unsecured non-priority claim in the amount of $1,170,000.00 against American Home Mortgage Holdings, Inc. Ms. Mills states the debt was incurred as of August 9, 2005 for "loss of down payment, mortgage hypothecation, fraud, and incompetence."

13. The Debtors' counsel received a written offer of $300,000 to purchase the Property via email from Ms. Mills on September 3, 2008. The offer did not evidence any financial wherewithal for the purchase. The Debtors sent a letter to Ms. Mills rejecting the offer and inviting her to make a higher offer for consideration through the appropriate real estate broker. *See* Exhibit I. Additionally, in October 2008, the Debtors obtained a broker price opinion (the "BPO") of the Property. The BPO assessed the proper list price for the Property, considering the then current real estate market, was approximately $900,000.00. *See* Exhibit J. The Debtors have no record of any other offer from Ms. Mills to purchase the Property.

14. The Property was sold on behalf of the Debtors by American Home Mortgage Servicing, Inc. ("AHMSI") on January 13, 2009 for $813,750.00. The Debtors received $634,954.46 from the sale of the Property.

15. On March 31, 2010, Ms. Mills filed two amended claims. Ms. Mills now asserts she is entitled to two identical claims for (i) secured claims in the amount of $634,954.46

and (ii) unsecured non-priority claims in the amount of $747,545.54 against all Debtors (the "Amended Claims").

16. Despite the fact that it appears Ms. Mills' claims (both the Orginal Claim and the Amended Claims) against the Debtors' estates rest solely on her belief that the Debtors were under some obligation to refinance her repurchase of the Property or to sell the Property for far less than market value, the Debtors have attempted to settle Ms. Mills' claim. The Debtors sent a letter to Ms. Mills dated November 3, 2009, offering a reasonable settlement offer (the "Settlement Offer"), pursuant to the *Findings of Fact, Conclusions of Law and Order Confirming the Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009*.[6] To date the Debtors have received no response from Ms. Mills regarding the Settlement Offer.

## OBJECTION

### I. DEBTORS DO NOT OBJECT TO THE AMENDMENT OF MS. MILLS' CLAIM.

17. The Debtors do not object to Ms. Mills amending her Original Claim. However, the Debtors do not agree to an allowance of any such Amended Claims and reserve all rights to further object to the Amended Claims. The Debtors reserve the right to object to the amount, priority and liability of each of the Claims, including Claim Numbers 2743, 10764 and 10765. In addition any order authorizing the filing of the amended claim should also provide that the Orginal Claim is expunged as amended and superseded by the Amended Claims.

### II. MS. MILLS IS NOT ENTITLED TO ANY ADMINISTRATIVE PRIORITY CLAIM AGAINST THE DEBTORS' ESTATES

18. Ms. Mills cannot establish the minimum requirements for an administrative priority claim against the Debtors. For instance, there have been no post-petition

---

[6] The Settlement Offer was sent to both addresses the Debtors could obtain for Ms. Mills, including that which she provided on her Original Claim form and to Epiq Bankruptcy Solutions, the Debtors' claims agent.

transactions between Ms. Mills and the debtors-in-possession. Any legal and equitable right that Ms. Mills had in the Property terminated well before the Petition Date as a result of the Foreclosure and eviction. Finally, Ms. Mills cannot establish that she provided any actual and necessary post-petition benefit to the Debtors' estates.

    A.    **Ms. Mills transactions with the Debtors were entirely prepetition and she has no provided any benefit to the bankruptcy estate; thus, there is no conceivable administrative priority status to her claim.**

    19.    Section 503 of the Bankruptcy Code affords administrative expense priority to claims representing "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To be considered an actual, necessary cost and expense of preserving the estate, a claim "must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the operation of the business." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (internal citation omitted).

    20.    In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed. In re Bernard Techs., Inc., 342 B.R. 174, 177 (Bankr. D. Del. 2006) (Walrath, J.). Accordingly, Ms. Mills under section 503(b)(1)(A) carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Id. (quoting Calpine, 181 F.3d at 533); see In re Unidigital, Inc., 262 B.R. 283 ("Claimants who seek payment ahead of other unsecured claims bear the burden of establishing that their claim qualifies for priority status."). Ms. Mills must prove her entitlement to an administrative expense claim against the Debtors by a preponderance of the evidence. Bernard Techs., 342 B.R. at 177.

21. Ms. Mills cannot meet this burden. First, Ms. Mills cannot establish a "transaction with the Debtor-in-Possession." The final act of the Debtors with respect to Ms. Mills and the Property (i.e., the eviction of Ms. Mills from the Property) occurred six months prior to the Debtors' bankruptcy filings. More importantly, any potential obligation to Ms. Mills and her potential legal interest in the Property concluded – at the latest – November 2006, more than eight (8) months before the Debtors ever filed bankruptcy. Ms. Mills cannot, nor has she attempted to, point to any post-petition transaction with the Debtor-in-Possession that would entitle her claim to administrative priority. Ms. Mills herself asserts on the Original Claim form and both Amended Claim forms, the alleged debt was incurred on August 9, 2005.

22. Furthermore, Ms. Mills cannot establish a benefit to the Debtors' estate. Ms. Mills repeatedly asserts that the Debtors have "double benefited" from the Property. *See* Mills' Motion, pg. 2. The Loans to finance Ms. Mills' purchase of the Property were initially funded in August of 2005 for $962,500.00 and $200,000.00. The Debtors re-obtained the Property at the Foreclosure Sale in 2006 for the amount of the initial Loan of $962,500 and the Second Loan was stripped from the Property. The Debtors were then unable to sell the Property again until January of 2009, and then only for $813,750.00. Moreover, pursuant to California Law governing non-judicial foreclosures, any claims against Ms. Mills for a deficiency to recover the loss sustained by the Debtors on the Loans was forgiven. *See* Cal. Civ. Code § 2928. The Debtors' estates have clearly not benefited from the sale of the Property and have, in fact, lost several hundred thousand dollars. Ms. Mills is unable to establish any transaction with the Debtor-in-Possession or a benefit to the Bankruptcy Estate, both of which are required to establish an allowed administrative claim.

8

### B. Ms. Mills Is Not Entitled to any Claim Against the Debtors.

23. Based on the detailed factual account above and leaving aside any issue of priority, the Debtors do not believe that any liability exists to Ms. Mills. Ms. Mills argues that once she alleged financial stability in December 2006, the Debtors were obligated to either (i) reinstate her original Loan or (ii) finance Ms. Mills repurchase of the Property through a new loan. In fact, the Debtors were under no further obligation to Ms. Mills after the Foreclosure Sale was completed in August of 2006, and any potential right to redemption ended in November of 2006. Cal. Civ. Code Proc. §§ 729.030; 729.060.

24. Furthermore, to the extent that Ms. Mills now alleges fraud in association with her Loans, she should be estopped from doing so. Ms. Mills filed personal bankruptcy in 2006 and was given amble opportunity to raise any defenses, including fraud, to the Loans. She did not and, therefore, should be precluded from asserting such claims now.

#### 1. *The Debtors had no further obligation pursuant to the Loan.*

25. Under California law, pursuant to a non-judicial foreclosure the property owner has the option to regain control of the property through reinstatement of the loan. Pursuant to Section 2924c(e) of the California Civil Code, a mortgagor has until five (5) business days prior to the scheduled foreclosure sale to attempt to reinstate the defaulted loan by providing the mortgagee with the amounts in default on the loan. Cal. Civ. Code § 2924c(e). A mortgagee, must accept the payment and reinstate the loan within that period.

26. Here, the Foreclosure Sale took place on August 10, 2006. Ms. Mills had up to August 5, 2006 to cure the defaults and reinstate the Loan. However, Ms. Mills did not attempt to reinstate the Loan within the prescribed period of time under California Law.

Moreover, pursuant to the non-judicial Foreclosure of the Property, Ms. Mills had no statutory right to redemption under California Law.[7]

27. Because Ms. Mills neither acted with in the prescribed period for reinstatement of the Loan and was not eligible to redeem her Property, the Debtors have no further obligation to Ms. Mills.

### 2. *The Debtors were under no obligation to provide Ms. Mills with a second loan with which to repurchase the Property.*

28. Alternatively, Ms. Mills appears to assert that the Debtors were under an obligation to provide her with a new loan in which to finance the repurchase of the Property. Ms. Mills alleges that she was treated unfairly by the Debtors because after the Property Foreclosure and Chapter 7 bankruptcy, she was told by the Debtors she no longer qualified for a loan. *See* Mills' Amended Proof of Claim No. 10764, pg. 15 (Letter to Court, Dated September 22, 2008). The Debtors were not required to provide financing to any person, including Ms. Mills, if it is not in their economic interest. *See Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (Cal. Ct. App. 1991) (A lender is entitled to pursue its own economic interest in a loan transaction). Given Ms. Mills' cessation of payments on her original Loan and her subsequent bankruptcy (including a lawsuit against Ms. Mills alleging fraudulent procurement by Ms. Mills of the down payment on the Property), the Debtors acted in their best interest to refuse any further business transactions with Ms. Mills. Moreover, given the Debtors' cessation of their loan origination business and subsequent bankruptcy filing, the Debtors could not provide Ms. Mills – or anyone - funding opportunities post-petition.

---

[7] California law provides only for a statutory right to redemption pursuant to a judicial foreclosure. Cal. Civ. Code Proc. §§ 726; 729.030. After a judicial foreclosure, the proceeds of which are sufficient to satisfy the debt, a mortgagor has three (3) months in which to redeem the property for the full amount of the purchase price. Cal. Civ. Code Proc. §§ 729.030; 729.060. Thus, even if the statutory redemption were applicable, Ms. Mills failed to provide the Debtors with the entire amount of the purchase price within the prescribed time period (which expired November 10, 2006).

### III. MS. MILLS IS NOT ENTITLED TO A RIGHT OF PROTECTION OF PROPERTY INTERESTS PURSUANT TO SECTION 361.

29. Section 361 of the Bankruptcy Code provides adequate protection in the form of a cash payment or periodic cash payments to an entity to the extent that the use, sale, or lease of property pursuant to Section 362, 363, or 364 of the Bankruptcy Code results in "a decrease in value of such entity's interest in such property..." 11 U.S.C. § 361(1). Ms. Mills holds no interest in any property of the Debtors' estate. Therefore, Ms. Mills is not entitled to any payments constituting adequate protection.

### IV. MS. MILLS CANNOT INSTITUTE AN AVOIDANCE ACTION PURSUANT TO SECTION 549.

30. Pursuant to Section 549 of the Bankruptcy Code, a *trustee* may avoid a transfer of property of the estate that occurs after the commencement of the case and that is authorized only under section 303(f) and 542(c). 11 U.S.C. § 549(a)(1) - (2) (emphasis added). Section 549 is specifically reserved for use by a bankruptcy trustee. Ms. Mills is not the Debtors' trustee and cannot institute an avoidance action.

## **CONCLUSION**

WHEREFORE, the Debtors do not object to authorizing the filing of the Amended Claims subject to a full reservation of rights on behalf of the Debtors to object to such claims, respectfully request that the Court enter an order denying the remaining relief requested in the Motion with prejudice, and granting the Debtors such other and further relief as is just and proper.

Dated: Wilmington, Delaware
       May 11, 2010

                        YOUNG CONAWAY STARGATT & TAYLOR, LLP

                        */s/ Sean M. Beach*
                        Sean M. Beach (No. 4070)
                        Margaret Whiteman Greecher (No. 4652)
                        Morgan Seward (No. 5388)
                        The Brandywine Building
                        1000 West Street, 17th Floor
                        Wilmington, Delaware 19801
                        Telephone: (302) 571-6600
                        Facsimile: (302) 571-1253

                        Counsel for Debtors and
                        Debtors in Possession