# EXHIBIT C



THIS SERVICES AGREEMENT, including all exhibits (collectively, the "Agreement"), is entered into as of December 31, 2008 (the "Effective Date"), by and between Electronic Evidence Discovery Incorporated, having its principal place of business at the Plaza at Yarrow Bay, Suite 200 – 3933 Lake Washington Blvd. NE, Kirkland, Washington 98033, USA (hereinafter "EED") and American Home Mortgage Corp., having its principal place of business at 538 Broadhollow Rd. Melville, NY 11747 (hereinafter "Client"). EED and Client may each be referred together as the "Parties".

SECTION 1 –SERVICES

1.1   By execution of this Agreement EED agrees to provide to Client, its electronic discovery services along with access to its hosted online discovery platform ("EED Application") collectively known as the ("Services") in accordance with the terms and conditions of this Agreement. The Services are not intended and do not constitute legal services or advice and no aspect of the Services creates an attorney-client relationship.

1.2   Subsequent to signing this Agreement the parties will agree to the scope of Services to be provided by EED to Client. These Services will be outlined in one or more sets of Project Intake Notes that will be approved by the Client. Once the Project Intake Notes are approved by Client they are then fully integrated into this Agreement as Exhibit B or, in the event that there are multiple sets of Project Intake Notes, B1, B2, etc. Any material changes to the Costs or the scope of Services must be completed in the form of a Change Order or other designated written document. A Change Order shall be attached and integrated into this Agreement as Exhibit C, or in the event that there are multiple Change Orders, C-1, C-2, etc. Failure to document a material change does not alter Client's payment obligations. Any services provided by EED that exceed the scope of the Services in any Project Intake Notes or subsequent Change Order will be included in the definition of "Services" if:  a) the additional services result from a delay caused by Client; b) EED provides reasonable and prompt notice to Client of the change in scope; or c) the change in scope is a the request of Client.

SECTION 2 – COMPENSATION AND PAYMENT

2.1   Costs.   The Price Schedule agreed to prior to execution of this Agreement ("Exhibit A") identifies the items and charges, expenses, billing rates and fees by operation of this Agreement. The information contained in the Price Schedule,

upon signing of this Agreement shall be fully integrated into this Agreement. As compensation for providing the Services, Client expressly agrees to be responsible for and pay to EED all Costs arising under this Agreement. Client further agrees that its payment obligations are not conditioned upon the occurrence of an event (e.g., 3rd party payment, insurance settlement, judgment outcome).

2.2   Invoice & Payment. EED shall submit to Client a monthly "Invoice" of Costs accrued during the course of performing the Services. Client shall pay the full amount of any Invoice within thirty (30) days from the date of Invoice. Client agrees that if any payment due under this Agreement is not received by EED within thirty (30) days from the date of invoice an administration fee of one and one-half percent (1.5%) for each thirty (30) day period shall be charged until all delinquent amounts have been paid in full. Client further agrees that in the event any amounts remain unpaid thirty (30) days from the date of invoice, in addition to any other rights EED may have under this Agreement or by operation of law, EED shall have the additional rights set forth in Section 5 of this Agreement.

2.3   Taxes. All Costs are exclusive of any local, county, state or federal sales, use, excise, gross receipts, business & occupation, personal property or other similar taxes or insurance charges due with respect to the performance of the Services.

SECTION 3 – INTELLECTUAL PROPERTY

3.1   EED Intellectual Property.  Includes all EED applications, code (source and object code forms), software, functionality customizations (and improvement thereto), derivative works, tools, products, content, URLs, domain names, technology, system or network architecture, topology, scripts, user interfaces, "look and feel", trade secrets, copyright rights, trademarks patent rights, know-how, inventions and rights of priority as recognized in any country or jurisdiction in the world.

3.2   Deliverables. All deliverables shall be owned by Client and include those items both paid for by Client and produced from Client Electronically Stored Information ("ESI"). Deliverables shall not contain EED Intellectual Property.

3.3 End-User License. During the term of this Agreement, EED will provide authorized end-users with access to the EED Application. Subject to Client's compliance with the terms and conditions of this Agreement, including payment obligations, EED hereby grants to all authorized end-users a nonexclusive, revocable, non-transferable and limited end-user license to access and use the EED Application for the duration of this Agreement. EED reserves any rights as they concern the EED Application not expressly granted by EED.

3.4 Client License. During the term of this Agreement, Client hereby grants to EED and its agents a nonexclusive, royalty-free right and license to access, store, reproduce, display, handle, perform, transmit, test or otherwise use all ESI for purposes of providing its Services. EED may use ESI for testing, development and bug fixes unless Client provides written instructions to the contrary.

SECTION 4 – CONFIDENTIAL & PRIVILEGED INFORMATION

4.1 Confidential Information. The Parties acknowledge that during the Term of this Agreement they may come into possession of or become acquainted with certain confidential information of the other party. For EED, Confidential Information shall include all EED Intellectual Property, client information contacts, business information, marketing and sales information, strategies and business processes. For Client, Confidential Information shall include all ESI, Deliverables and evidence. For both parties it shall include all information not generally known to the public that either derives economic value, actual or potential, from not being generally known, or has a character such that a party has a legitimate interest in maintaining its secrecy. Confidential Information does not include information that (1) is in the public domain at the time a party receives the information; (2) is known by a party prior to the Effective date of this Agreement; or (3) becomes publicly known to a party by some means other than as a result of breach of law or of obligations under this Agreement.

4.2 Disclosure and Termination. The Receiving Party shall only disclose Confidential Information to employees, independent contractors, subcontractors, attorneys, accountants and investment advisors ("Personnel") of the Receiving Party, to the extent such Personnel have a need to know such information for the purposes described in this Agreement, and provided that such Personnel treat Confidential Information as strictly confidential and with the same or greater standard of care as it uses for its own confidential information. Each of the Parties acknowledges that use or disclosure of Confidential Information in violation of this Agreement may cause irreparable injury to the Disclosing Party for which other remedies at law would be inadequate, and each of the Parties agree that a Disclosing Party shall have the right to seek injunctive or other equitable relief as may be necessary or appropriate to prevent any use or disclosure of the Confidential Information in violation of this Agreement, and may also exercise such other rights and remedies as such Disclosing Party may have at law or in equity. Upon termination or expiration of this Agreement, or upon the Disclosing Party's earlier request, and upon the provision of Disposition instructions in Section 5.5, the Receiving Party shall either (a) promptly deliver to the Disclosing Party all Confidential Information, any copies or partial copies thereof and material containing Confidential Information, and certify to the Disclosing Party in writing that it has complied with this Section; or (b) destroy all Confidential Information and certify to the Disclosing Party in writing that it has complied with this Section.

SECTION 5- TERM & TERMINATION

5.1 Commencement. The Parties hereby agree that unless separately set out in a written document executed by the Parties, this Agreement shall remain in full force and effect until terminated as set forth below.

5.2 Termination. This Agreement shall be terminated ("Termination") upon: (i) completion of the Services as set forth in the Project Intake Notes; (ii) for any reason by Client upon delivery of written notice to EED at least thirty (30) calendar days prior to the date of termination; (iii) for any reason by EED upon delivery of written notice to Client at least sixty (60) calendar days prior to the date of termination; or (iv) in the event Client fails to pay under Section 2 above and notice as set forth in Section 5.3 has been provided to Client.

5.3 Termination for Failure to Pay. Pursuant to Section 5.2(iv) above, EED may terminate this Agreement and the Services being provided (e.g., consulting, access and networking rights) if Client fails to fully pay all invoices, after receipt of an initial thirty (30) day written demand notice, and Client then continues to fail to pay after a second (2nd) demand with a notice period of fifteen (15) days (for a cumulative forty-five (45) day period to cure).

5.4 Post Termination. Upon termination of this Agreement, Client agrees to pay all Costs due and owing, including those incurred as a result of EED's transfer of any ESI.

5.5  ESI Disposition. During the course of this Agreement, EED will be in receipt and possession of ESI in varying states of form and media (e.g., tapes, hard drives, digital, electronic, paper, etc.). As long as Client's obligations are fully satisfied (e.g., payment of all Costs) then, at Termination, Client will be required to instruct EED in writing on the disposition of the ESI (e.g., export ESI in an approved format, destroy ESI, etc.). Client shall bear the full cost of disposition of ESI. EED shall not be obligated to transfer or deliver any ESI if payment remains outstanding. Client understands and acknowledges that as a result of the unique EED processes not all ESI (e.g., annotation history) as it exists in the EED Application may be available for transfer in a third-form. In the event Client does not provide written notice to EED regarding the disposition of ESI within sixty (60) days following the expiration or termination of this Agreement, EED may dispose of all ESI as EED deems appropriate and Client waives all claims of liability that may be asserted against EED for any such actions.

SECTION 6 – REPRESENTATIONS & WARRANTIES

6.1  EED Represents and Warrants the following. (i) EED shall perform all Services in a professional and workmanlike manner, consistent with industry standards; (ii) EED will not knowingly infringe on, violate or misappropriate any intellectual property right of any entity; and (iii) EED cannot and therefore does not make any representations or warranties as to the success or outcome of litigation or any legal proceedings or as to the acceptance or admissibility of ESI.

6.2  Client, Represents and Warrants the following. (i) Client has the right and authority to enter into this Agreement; (ii) Client authorizes EED to handle, review and manage all ESI provided to EED under this Agreement; (iii) Client's provision of or any granting of access to any ESI to EED and its subcontractors does not and will not conflict with or result in a breach or default of any term or provision of any agreement, obligation or duty to which Client is a party or by which Client is bound or obligated; and (iv) any granting of access to ESI or provision of ESI by Client to EED and its subcontractors complies with all applicable laws, regulations, and statutes, including, but not limited to, the Health Insurance Portability and Accountability Act of 1996; the Gramm-Leach-Bliley Act; and the European Commission's Directive on Data Protection.

6.3  Disclaimer of Warranties. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH IN SECTION 6.1, EED AND ITS SUPPLIERS MAKE NO WARRANTIES OR REPRESENTATIONS AND EXPRESSLY DISCLAIM ALL OTHER WARRANTIES, GUARANTEES AND CONDITIONS OF ANY KIND AS THEY MAY RELATE TO THE RENDERING OF THE SERVICES OR THE USE OF THE EED APPLICATION, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE.

SECTION 7 – INDEMNIFICATION & LIMITATION OF LIABILITY

7.1  Indemnification. Each party shall, at its own expense, indemnify, defend and hold the other harmless from and against any and all damages, loss, claims, liabilities, expenses and costs of whatever kind or nature, including, without limitation, attorneys' fees and litigation costs, arising out of, or relating to or resulting from any breach of a representation, warranty or obligation in this Agreement. Subject to this Section the indemnifying party shall have the sole right to control the defense and settlement of all such claims, lawsuits and other proceedings, provided, that, (i) the indemnifying party shall not have any right to settle any such claim, suits or other proceedings against the indemnified party without that party's prior written consent, which consent will not be unreasonably delayed or withheld; and (ii) the indemnified party reserves the right, at its own expense and sole discretion, to retain its own counsel and assert its own defense in any such claim, suit or other proceeding. Nothing in this provision shall obligate either party to indemnify the other for claims resulting from any intentional or negligent act or omission on the party of the indemnifying party, its officers, directors, employees or representatives in the performance of, or the failure to perform, this Agreement.

7.2  Limitation of Liability. EXCEPT WITH RESPECT TO THE PAYMENT OBLIGATIONS IN SECTION 2, THE CONFIDENTIALITY OBLIGATIONS IN SECTION 4, AND THE INDEMNIFICATION OBLIGATIONS IN SECTION 7.1, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER UNDER THIS AGREEMENT OR OTHERWISE, FOR CONSEQUENTIAL, EXEMPLARY, SPECIAL, INCIDENTAL, OR PUNITIVE DAMAGES INCLUDING, WITHOUT LIMITATION, LOSS OF REVENUE, LOSS OR DESTRUCTION OF ESI, ANTICIPATED PROFITS OR LOST BUSINESS, REPLACEMENT SERVICES, OR DOWNTIME COSTS ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT. IN ADDITION, TO THE EXTENT PERMITTED BY LAW,

NEITHER PARTY SHALL BE LIABLE FOR DAMAGES IN EXCESS OF THE VALUE RECEIVED UNDER THIS AGREEMENT DURING THE THREE (3) MONTH PERIOD PRECEDING THE DATE ON WHICH A CLAIM FOR DAMAGES IS MADE. THE FOREGOING LIMITATIONS SHALL APPLY TO ALL CAUSES OF ACTION IN THE AGGREGATE.

SECTION 8 – GENERAL TERMS & CONDITIONS

8.1    Arbitration; Attorneys' Fees; Jurisdiction/Venue. Any dispute, controversy or claim, whether based on contract, tort, statute or other legal or equitable theory (including any amendments or extensions thereto) (collectively, a "Claim") arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules and its Optional Procedures for Large, Complex Commercial Disputes. The arbitration shall be heard and determined by a panel of three (3) arbitrators selected by the AAA, and each such arbitrator shall be an attorney having experience and familiarity with information technology disputes. The arbitration proceeding shall occur in Seattle, Washington, each party shall bear its own costs relating to such arbitration, and the parties shall equally share the arbitrators' fees. In no event shall any arbitration award provide a remedy beyond those permitted under this Agreement, and any award providing a remedy beyond those permitted under this Agreement shall not be confirmed, no presumption of validity shall attach, and such award shall be vacated. Any proceedings pursuant to this Section 8.1 are confidential and will be treated as compromise and settlement negotiations for purposes of the applicable rules of evidence. Either party may, without waiving any remedy under this Agreement, seek from any court of competent jurisdiction within the State of Washington, any interim or provisional relief that such party deems necessary to protect its Confidential Information and property rights, pending the establishment of the arbitral tribunal (or pending the arbitral tribunal's determination of the merits of the Claim). The validity, interpretation and performance of this Agreement shall be governed exclusively by the laws of the State of Washington, with personal jurisdiction in the State of Washington, excluding its conflict of law rules. Any proceeding between the parties not subject to arbitration pursuant to this Section 8.1 shall be under the exclusive jurisdiction and venue in the federal courts in the State of Washington, or in the event there is no federal subject matter jurisdiction, in the state courts located in King County, Washington. This choice of jurisdiction and venue shall not prevent either party from seeking injunctive relief with respect to a violation of intellectual property rights, confidentiality obligations or enforcement or recognition of any award or order in any appropriate jurisdiction. In the event a suit or action with respect to this Agreement is commenced including actions for indemnification, the prevailing party shall be entitled to recover reasonable attorneys' fees and other costs, (e.g., costs of appeal).

8.2    Interpretation. This Agreement has been drafted and negotiated by the Parties and shall be fairly interpreted in accordance with its terms without any presumption or strict construction in favor of or against either party. This Agreement including all exhibits constitutes the entire and final agreement between the parties and supersedes all prior or contemporaneous written or verbal agreements and communications. The provisions of this Agreement may not be explained, supplemented, or qualified through evidence of trade usage or prior course of dealings. The parties intend that all exhibits to this Agreement are integrated and interpreted as if they were fully embodied herein. This Agreement shall not be modified except by a written agreement signed on behalf of Client and EED by their respective duly authorized representatives. All captions and headings in this Agreement are intended solely for the convenience of the Parties and shall be given no other force or effect.

8.3    Severability and Surviving Sections. It is expressly agreed that the following sections are intended to be severable, independent and shall survive termination or expiration of this Agreement: Section 2, Section 3, Section 4, Section 6 and Section 7. In the event that any provision of this Agreement is found invalid or unenforceable pursuant to judicial decree or decision, the remainder of this Agreement will remain valid and enforceable according to its terms.

8.4    Force Majeure. Except with respect to payment obligations hereunder, neither party shall be liable for any delay or failure to meet its obligations pursuant to this Agreement due to circumstances beyond its reasonable control, including, but not limited to acts of terrorism, war, riots, insurrection, civil commotion, power loss, fire, flood, or storm or any damage or delay which is a direct result of such an event.

8.5    Breach, Remedies & Waiver. For purposes of this Agreement, a material breach shall include but not be limited to a party failing to perform under this Agreement (e.g., non-payment). Any breach under this Agreement shall

allow the non-breaching party to pursue all available remedies against the breaching party including injunctive relief. No remedy conferred by any of the specific provisions of the Agreement is intended to be exclusive of any other remedy. Each remedy shall be cumulative and shall be in addition to every other remedy given hereunder, now or hereafter existing at law or in equity or by statute or otherwise. The election of any one or more remedies by either party shall not constitute a waiver of the right to pursue other available remedies. No waiver of this Agreement shall be effective unless in writing and signed by the waiving party. The failure of either party at any time to require performance by the other of any provision hereof shall not affect in any way the right to require such performance at any time thereafter; nor shall the waiver by either party of a breach of any provision be held to be a waiver of the other remaining terms and conditions of this Agreement.

8.6   Threat. EED reserves the right to suspend, terminate or block access to all or any part of the EED Application, if it determines there is possible immediate and material threat to the EED Application.

8.7   Notices. For purpose of this Agreement, any notification regarding breach or default shall be provided in writing by personal delivery or prepaid first class registered or certified U.S. Mail as well as electronic mail with a confirmation of receipt, to the following addresses:

**Electronic Evidence Discovery, Incorporated:**
  The Plaza at Yarrow Point, Suite 200
  3933 Lake Washington Blvd. NE
  Kirkland, Washington 98033
  ATTN: Legal Department
  jeking@eedinc.com

**Client:**
  American Home Mortgage Corp.
  538 Broadhollow Rd.
  Melville, NY 11747
  ATTN: Accounts Payable

WE THE UNDERSIGNED AS PARTIES TO THIS AGREEMENT AGREE TO THE TERMS AS SET FORTH ABOVE AND INTEND TO BE LEGALLY BOUND BY THESE TERMS, AS OF THE EFFECTIVE DATE FIRST WRITTEN ABOVE.

**Electronic Evidence Discovery, Incorporated**

X _[signature]_
Sign

Jennifer King
Print/Type Name

Corporate Counsel
Print/Type Title

1/20/2009
Date


**Client: [American Home Mortgage Corp.]**

X _[signature]_
Sign

Gregory Zimmer
Print/Type Name

Attorney
Print/Type Title

1/6/08
Date

Project Name: CWT/AHM litigation / Number: _____

CONFIDENTIAL INFORMATION