# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---

|  |  |  |
|---|---|---|
| ------------------------------------------------------- x | : | Chapter 11 |
| In re: | : |  |
|  | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | : |  |
| a Delaware corporation, et al.,[1] | : | Jointly Administered |
|  | : |  |
| Debtors. | : | **Objection Deadline: June 21, 2010, at 9:00 a.m. (ET)** |
|  | : | **Hearing Date: June 21, 2010 at 11:00 a.m. (ET)** |
| ------------------------------------------------------- x | : |  |

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 105(A) FOR AN ORDER APPROVING AND AUTHORIZING SETTLEMENT AGREEMENT RESOLVING ALL CLAIMS AND OTHER MATTERS WITH PAULA LYNN RUSH

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), seek entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and section 105(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") approving the settlement (the "Settlement") by and among the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), and Deutsche Bank National Trust Company ("DBNTC"), on the one hand (collectively, the "Lender/Servicer Parties"), and Paula L. Rush ("Ms. Rush"), on the other hand (collectively with the Lender/Servicer Parties and Ms. Rush, the "Parties"). In support of the Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

## JURISDICTION

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").  Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.    On August 14, 2007, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  On October 21, 2008, the US Trustee appointed an Official Committee of Borrowers (the "Borrowers Committee").  Ms. Rush is the Chairperson of the Borrowers Committee.  No trustee or examiner has been appointed.

4.    The Amended Chapter 11 Plan Of Liquidation Of The Debtors Dated As Of February 18, 2009 (the "Plan") was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042].  The Plan provides for the creation of a liquidating trust (the "Plan Trust") in which the property of the Debtors' bankruptcy estates will vest.  The Plan has not yet gone effective.

## RELEVANT BACKGROUND

5.    On April 3, 2006, Ms. Rush borrowed $586,500.00 from American Home Mortgage Corp., d/b/a American Brokers Conduit ("ABC"), in a cash-out refinance of the

Case 07-11047-CSS    Doc 8913    Filed 06/15/10    Page 3 of 10

property located at 2651 Peery Drive, Churchville, Maryland ("Property"). In connection

therewith, Ms. Rush executed an Adjustable Rate Note ("Note") and certain other documents and

security instruments in connection with the loan transaction - the financing details of the loan

transaction are evidenced by the HUD-1 Settlement Statement (collectively, the "Rush Loan").

ABC paid Ms. Rush's mortgage broker a yield-spread premium ("YSP"). Additionally, Ms.

Rush received $10,213.67 in cash from the settlement. Ms. Rush was permitted to make

monthly payments less than the payment required to fully-amortize the Rush Loan, until the

unpaid principal balance increased to 125% of the original principal amount; in this case,

$733,125. Rush made partial interest payments on the Rush Loan for several months and ceased

making any payments after September 2006. Ms. Rush has resided in the Property since the

inception of the Rush Loan.

      6.     The Rush Loan was sold by the Debtors approximately a year prior to the

Petition Date. The Rush Loan is presently owned by a non-debtor, third-party securitization trust

- GSR Mortgage Loan Trust 2006-OA1 (the "Trust"). DBNTC is the Indenture Trustee to the

Trust. Wells Fargo Bank, N.A. ("Wells Fargo") is the Master Servicer to the Trust. American

Home Mortgage Servicing, Inc. (f/k/a AH Mortgage Acquisition Co., Inc.) ("AHMSI") is the

Servicer of the Rush Loan for the Trust. Prior to the sale of the Debtors' servicing business to

AHMSI, the Rush Loan was serviced by AHM SV.

      7.     On April 3, 2007, Ms. Rush filed a *pro se* complaint against AHM[2] in the

United States District Court for the District of Maryland, asserting twelve counts for relief

relating to her mortgage with AHM and seeking rescission of the loan and monetary damages

---

[2]     Specifically, Ms. Rush named American Home Mortgage, Inc., AHM SV, and ABC as defendants. ABC and American Home Mortgage, Inc. were D/B/A of AHM Corp. Accordingly, AHM has treated the action as against AHM Corp. and AHM SV.

YCST01:9770914.2                       3                066585.1001

(the "Maryland District Court Action"). On the Petition Date, the litigation was stayed. Ms. Rush has filed four (4) proofs of claim in the Debtors Chapter 11 Cases. Those claims include: (i) Claim No. 8743; (ii) Claim No. 10687; (iii) Claim No. 10688; and (iv) Claim No. 10689 (collectively, the "Rush Filed Claims"). Each of the Rush Filed Claims indicate the claim was incurred on April 3, 2006 and requests a $1,090,000 general unsecured claim and a $700,000 secured claim. With the consent of the Debtors, the Court lifted the automatic stay on July 17, 2008 and allowed Ms. Rush to continue litigating her claims in the Maryland District Court Action. Ms. Rush has also indicated in certain pleadings filed with the Bankruptcy Court that she will be filing administrative expense claims against the Debtors and their estates for alleged post-Petition Date misconduct by the Debtors. For instance, the Subordination Action (defined below) which does not name the Debtors as defendants suggests entitlement to administrative priority claims in the amount of $650,000 on a "post-petition aiding and abetting fraud" theory.

8.      Ms. Rush has further indicated that she intends to assert claims and causes of action against the Trust, DBNTC, Wells Fargo and AHMSI. In addition, on or about April 13, 2010, Ms. Rush, *pro se*, filed her *Adversary Proceeding for Equitable Subordination of Defendants Claims and Complaint for Declaratory Judgement [sic] and Other Relief* (Adv. Proc. No. 10-50917 (CSS) against the Trust, DBNTC, Wells Fargo, AHMSI and others (the "Subordination Action"). The Subordination Action seeks a wide array of relief, including, *inter alia*, subordination of defendants' claims and disgorgement of payments received by the defendants on account of the Rush Loan.

9.      On May 11, 2010, Judge Sontchi ordered the Debtors, the Committee and Ms. Rush to mediate their various disputes before the Honorable Brendan Linehan Shannon (the "Mediator" or "Judge Shannon"). The mediation was successfully conducted on June 4, 2010

resulting in a settlement in principle, subject to documentation and approval by the Bankruptcy Court.

10.     The Parties desire to resolve their differences with respect to all claims, causes of action and other matters between the Lender/Servicer Parties and Ms. Rush without resort to further litigation and without admission of any fault or liability and, as a result of negotiations, have an agreement in principal, subject to final documentation.[3] The effectiveness of the Settlement is conditioned upon approval of the Bankruptcy Court.

## RELIEF REQUESTED

11.     By this Motion, the Debtors respectfully request entry of an order, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, approving the Settlement and authorizing the Debtors to enter into the same.  The Debtors have weighed the costs, risks and disruption that would arise from litigating the Rush Action and other actions, including the Subordination Action, against the compromises contained within the Settlement. In the Debtors' judgment, the Settlement is fair and reasonable and serves the best interests of the Debtors, their estates and creditors, particularly compared with the costs and disruption of further litigation.

## BASIS FOR RELIEF REQUESTED

12.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P 9019(a).  The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Cent. Transp. Co., 596 F.2d 1102 (3d

---

[3]     As agreed upon by the Parties, the Parties intend to file the Settlement under seal.  A motion to file the Settlement under seal will be filed contemporaneously herewith.

Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), <u>quoting</u> <u>In re Protective Committee for Indep. Stockholders of TMT Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968).

13.     In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimated the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." <u>In re Penn Cent. Transp. Co.</u>, 596 F.2d 1127, 1153 (3d Cir. 1979); <u>see also</u> <u>In re Marvel Entm't Group, Inc.</u>, 222 B.R. 243 (D. Del. 1998) (quoting, <u>In re Louise's Inc.</u>, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

14.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." <u>Meyers v. Martin (In re Martin)</u>, 91 F.3d 389, 393 (3d Cir. 1996); <u>accord</u> <u>Will v. Northwestern Univ. (In re Nutraquest, Inc.)</u>, 434 F.3d 639, 644 (3d Cir. 2006).

15.     The decision to approve a settlement "is within the sound discretion of the bankruptcy court." <u>In re World Health Alternatives, Inc.</u>, 344 B.R. at 296; <u>see also</u> <u>In re Neshaminy Office Building Associates</u>, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in <u>Meyers v. Martin (In re Martin)</u>, 91 F.3d 389. The bankruptcy court should not substitute its

judgment for that of the Debtors.  See In re Neshaminy Office Building Associates, 62 B.R. at

803.  The court is not to decide the numerous questions of law or fact raised by litigation, but

rather should canvas the issues to see whether the settlement falls below the lowest point in the

range of reasonableness.  See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert.

denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296

(stating that "the court does not have to be convinced that the settlement is the best possible

compromise.  Rather, the court must conclude that the settlement is within the reasonable range

of litigation possibilities.") (internal citations and quotations omitted).

      16.     The Debtors respectfully request that the Court approve the Settlement

because entry into the terms of which lies well above the lowest point in the range of reasonable

potential litigation possibilities.  In addition, each of the applicable Martin factors weighs in

favor of approving the Settlement.  Accordingly, the Settlement should be approved pursuant to

Bankruptcy Rule 9019.

### A.     The Probability Of Success In Litigation

      17.     While the Debtors are confident that they would prevail in litigation, the

settlement is reasonable in light of the anticipated transaction costs associated with litigating

with Ms. Rush in and out of Bankruptcy Court.  In addition, litigation with Ms. Rush would also

divert the Debtors' limited resources from their efforts to effectuate the Plan.  The resolution of

these disputes with Rush under the terms of the Settlement, without the need for further

litigation, is a favorable outcome because it will save the Debtors significant time and expense

attendant with litigation, and avoid significant distraction to the Debtors' efforts to maximize

value for the Debtors' creditors.

**B.** **The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It**

18.    The Stipulation satisfies the second factor in <u>Martin's</u> four-factor test largely for the reasons set forth above.  In determining whether to enter into the Settlement, the Debtors, in consultation with their professionals and the other Lender/Servicer Parties, analyzed the likely cost of litigating all matters to completion with Ms. Rush.  While the Lender/Servicer Parties have strong defenses to all claims asserted against them by Ms. Rush, the Settlement is a cost effective and efficient resolution of all matters with Ms. Rush.

**C.** **The Paramount Interest Of Creditors**

19.    Entry into the Settlement serves the paramount interest of creditors of the Debtors.  The Settlement's resolution of the claims asserted against the Debtors in the Rush Action, as well as settlement of related issues including the disposition of the Property and other actions in the bankruptcy cases, represents a savings for the creditors by obviating further litigation, thereby saving the expenses attendant with the same.  Therefore, the third factor of <u>Martin's</u> four-factor test is satisfied and weighs in favor of the Court approving the Settlement.

**D.    The Likely Difficulties In Collection**

20.    Finally, to the extent that amounts are owing by Ms. Rush pursuant to the Rush Loan, such amounts would be collected by a non-Debtor party.  Accordingly, the fourth factor enunciated by the Third Circuit in <u>Martin</u> is not applicable under these circumstances.

**E.    Summary**

21.    The resolution of the claims and actions asserted against the Debtors by Ms. Rush embodied in the Settlement: (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay, inconvenience and uncertainty attendant in any litigation with Ms. Rush; and (iv) advances the paramount interests of creditors.  Therefore, the Settlement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

<u>NOTICE</u>

22.    Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Lender/Servicer Parties; (iii) Ms. Rush; (iv) counsel to the Committee; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

<u>NO PREVIOUS REQUEST</u>

23.    No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court issue and enter an

Order, in the form attached hereto as Exhibit A, pursuant to Bankruptcy Rule 9019 and section

105(a) of the Bankruptcy Code, (i) approving the Settlement, and (ii) granting such other and

further relief as may be just and proper.

Dated: Wilmington, Delaware
       June 15, 2010

                                            YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                            Sean M. Beach (No. 4070)
                                            Margaret Whiteman Greecher (No. 4652)
                                            The Brandywine Building
                                            1000 West Street, 17th Floor
                                            Wilmington, Delaware 19801
                                            Telephone: (302) 571-6600
                                            Facsimile: (302) 571-1253

                                            Counsel to the Debtors