UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE                                           :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]               :
                                                                 :   Jointly Administered
                        Debtors.                                 :
                                                                 :   **Docket Nos. 8913**
---------------------------------------------------------------- x

**DECLARATION OF KEVIN NYSTROM IN SUPPORT OF DEBTORS' MOTION
PURSUANT TO BANKRUPTCY RULE 9019
AND 11 U.S.C. § 105(A) FOR AN ORDER APPROVING AND AUTHORIZING
SETTLEMENT AGREEMENT RESOLVING ALL CLAIMS
AND OTHER MATTERS WITH PAULA LYNN RUSH [DOCKET NO. 8913]**

1. My name is Kevin Nystrom. I am over the age of 18 and competent to testify and make this Declaration. I am serving as the Chief Restructuring Officer of American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its affiliates, debtors and debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), and I am generally familiar with the day-to-day operations, businesses, financial affairs and books and records of the Debtors.

2. My current duties for the Debtors include overseeing the Debtors' overall financial condition, monitoring the Debtors' receipts and disbursements of cash, maintaining the Debtors' books and records, preparing financial projections, overseeing the claims reconciliation process, and communication with, among other parties, the Debtors' professionals and employees, the Official Committee of Unsecured Creditors' (the "Committee") professionals, the Plan Trustee

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation (f/k/a American Home Mortgage Servicing, Inc.) (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747

under the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 [D.I. 7029] (the "Plan") and his professionals, and other parties-in-interest in these chapter 11 cases.

3. In addition to my position at AHM, I am also a Managing Director at Zolfo Cooper. Zolfo Cooper specializes in providing restructuring advisory and crisis management services to financially distressed companies and their creditors. Zolfo Cooper is one of the world's leading financial advisory, interim management and litigation support firms, with a team of restructuring and litigation specialists. Zolfo Cooper specializes in advising debtors, creditors, investors and court-appointed officials in bankruptcy proceedings and out-of-court workouts. Zolfo Cooper has significant qualifications and experience in these matters. Zolfo Cooper has a reputation for quality and breadth of experience, and a proven track record for success, earned by serving clients in numerous nationally prominent bankruptcy proceedings.

4. I am authorized to submit this Declaration (the "Declaration") on behalf of the Debtors in support of the Debtors' Motion Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 105(a) for an Order Approving and Authorizing Settlement Agreement Resolving All Claims and Other Matters with Paula Lynn Rush (the "Settlement Motion").[2]

5. All facts set forth in this Declaration are based upon my personal knowledge, upon my review of relevant documents, upon my opinion based upon my experience and knowledge of the Debtors' operations and financial management or upon information provided to me by AHM, Zolfo Cooper and the Debtors' other advisors. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

6. Based on my familiarity with the Settlement Motion and the underlying settlement (the "Settlement"), including without limitation my participation in the negotiations thereof, my

---

2   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Motion.

knowledge of the facts and issues underlying the Settlement, and other diligence, I believe that: (i) approving the relief sought by the Debtors in the Settlement Motion and all of the terms and conditions of the Settlement are in the best interests of the Debtors, their estates, and creditors; (ii) the Settlement was negotiated at arm's length and in good faith by and among the parties and none of the counter-parties to the Settlement are insiders of the Debtors; (iii) the terms and conditions of the Settlement, including the releases contained therein, are fair and reasonable compromises by the parties; and (iv) entry into the Settlement is an exercise of the Debtors' sound business judgment.

## I.   FACTUAL BACKGROUND SURROUNDING THE SETTLEMENT

7. On April 3, 2006, Ms. Rush borrowed $586,500.00 from American Home Mortgage Corp., d/b/a American Brokers Conduit ("ABC"), in a cash-out refinance of the property located at 2651 Peery Drive, Churchville, Maryland ("Property"). In connection therewith, Ms. Rush executed an Adjustable Rate Note ("Note") and certain other documents and security instruments in connection with the loan transaction - the financing details of the loan transaction are evidenced by the HUD-1 Settlement Statement (collectively, the "Rush Loan"). ABC paid Ms. Rush's mortgage broker a yield-spread premium ("YSP"). Additionally, Ms. Rush received $10,213.67 in cash from the settlement. Ms. Rush was permitted to make monthly payments less than the payment required to fully-amortize the Rush Loan, until the unpaid principal balance increased to 125% of the original principal amount; in this case, $733,125.00. Rush made partial interest payments on the Rush Loan for several months and ceased making any payments after September 2006. Ms. Rush has resided in the Property since the inception of the Rush Loan.

8. The Rush Loan was sold by the Debtors approximately a year prior to the Petition Date. The Rush Loan is presently owned by a non-debtor, third-party securitization trust - GSR Mortgage Loan Trust 2006-OA1 (the "Trust"). Deutsche Bank National Trust Company ("DBNTC") is the Indenture Trustee to the Trust. Wells Fargo Bank, N.A. ("Wells Fargo") is

the Master Servicer to the Trust. American Home Mortgage Servicing, Inc. (f/k/a AH Mortgage Acquisition Co., Inc.) ("AHMSI") is the Servicer of the Rush Loan for the Trust. Prior to the sale of the Debtors' servicing business to AHMSI, the Rush Loan was serviced by AHM SV.

9. On April 3, 2007, Ms. Rush filed a *pro se* complaint against AHM[3] in the United States District Court for the District of Maryland, asserting twelve counts for relief relating to her mortgage with AHM and seeking rescission of the loan and monetary damages (the "Maryland District Court Action"). On the Petition Date, the litigation was stayed. Ms. Rush has filed four (4) proofs of claim in the Debtors Chapter 11 Cases. Those claims include: (i) Claim No. 8743; (ii) Claim No. 10687; (iii) Claim No. 10688; and (iv) Claim No. 10689 (collectively, the "Rush Filed Claims"). Each of the Rush Filed Claims indicate the claim was incurred on April 3, 2006 and requests a $1,090,000 general unsecured claim and a $700,000 secured claim. With the consent of the Debtors, the Court lifted the automatic stay on July 17, 2008 and allowed Ms. Rush to continue litigating her claims in the Maryland District Court Action. Ms. Rush has also indicated in certain pleadings filed with the Bankruptcy Court that she will be filing administrative expense claims against the Debtors and their estates for alleged post-Petition Date misconduct by the Debtors. For instance, the Subordination Action (defined below) which does not name the Debtors as defendants suggests entitlement to administrative priority claims in the amount of $650,000 on a "post-petition aiding and abetting fraud" theory.

10. Ms. Rush has further indicated that she intends to assert claims and causes of action against the Trust, DBNTC, Wells Fargo and AHMSI. In addition, on or about April 13, 2010, Ms. Rush, *pro se*, filed her *Adversary Proceeding for Equitable Subordination of Defendants Claims and Complaint for Declaratory Judgement [sic] and Other Relief* (Adv. Proc. No. 10-50917 (CSS) against the Trust, DBNTC, Wells Fargo, AHMSI and others (the "Subordination

Action"). The Subordination Action seeks a wide array of relief, including, *inter alia*, subordination of defendants' claims and disgorgement of payments received by the defendants on account of the Rush Loan.

11. On May 11, 2010, Judge Sontchi ordered the Debtors, the Committee and Ms. Rush to mediate their various disputes before the Honorable Brendan Linehan Shannon (the "Mediator" or "Judge Shannon"). The mediation was successfully conducted on June 4, 2010 resulting in a settlement in principle, subject to documentation and approval by the Bankruptcy Court.

## II. THE SETTLEMENT AND REASONABLENESS THEREOF[4]

12. While the specific terms of the Settlement are confidential and will be disclosed to the Court under seal, I can advise that the Debtors believe that the Settlement constitutes a global resolution of all disputes arising by and among the Lender/Servicer Parties, including the Debtors, and Ms. Rush.

13. In my judgment on behalf of the Debtors, I believe that the resolutions embodied in the Settlement, as set forth on the record, are reasonable and in the best interest of the Debtors, their estates, their creditors and other parties in interest. The Settlement provides for a fair and practical resolution of numerous disputed issues which, if litigated to their conclusion, would require utilizing the Debtors' limited resources and, in all likelihood, would further delay the effectiveness of the Plan. The Settlement was the product of significant, mediated discussions and negotiations among the Debtors, the Committee, DBNTC and Ms. Rush and represents a global settlement among the parties, and the settlement embodied therein falls well above the

---

[3] Specifically, Ms. Rush named American Home Mortgage, Inc., AHM SV, and ABC as defendants. ABC and American Home Mortgage, Inc. were D/B/A of AHM Corp. Accordingly, AHM has treated the action as against AHM Corp. and AHM SV.

[4] The terms of the Settlement Agreement set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Settlement Agreement. To the extent of any

lowest point in the range of reasonableness. In addition, each of the factors discussed below weighs in favor of approving the Settlement. The Settlement is in no way any admission to the legitimacy of any of the claims asserted by Ms. Rush.

### 1. The Probability of Success in Litigation

14. While the Debtors are confident that they would prevail in litigation, the Settlement is reasonable in light of the anticipated transaction costs associated with litigating with Ms. Rush in and out of Bankruptcy Court. In addition, litigation with Ms. Rush would also divert the Debtors' limited resources from their efforts to effectuate the Plan. The resolution of these disputes with Rush under the terms of the Settlement, without the need for further litigation, is a favorable outcome because it will save the Debtors significant time and expense attendant with litigation, and avoid significant distraction to the Debtors' efforts to maximize value for the Debtors' creditors.

### 2. The Likely Difficulties in Collection

15. To the extent that amounts are owing by Ms. Rush pursuant to the terms of the Rush Loan, such amounts would be collected by a non-Debtor party. Accordingly, the Debtors do not believe that collection of any judgment that could be obtained is an issue and therefore this factor is neutral.

### 3. The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It

16. While I believe, based on advice from counsel, that some of the issues raised in the Rush Claims, the Maryland District Court Action, and other actions such as the Subordination Action could be disposed of as a matter of law, the bulk of the litigation would surround issues the Debtors acknowledge would require factual discovery and evidentiary hearings. In determining whether to enter into the Settlement, the Debtors, in consultation with their

---

inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall

professionals and the other Lender/Servicer Parties, analyzed the likely cost of litigating all matters to completion with Ms. Rush. While the Lender/Servicer Parties have strong defenses to all claims asserted against them by Ms. Rush, I believe that the Settlement is a cost effective and efficient resolution of all matters with Ms. Rush.

### 4. The Paramount Interest of Creditors

17. I further believe that entry into the Settlement serves the paramount interest of creditors of the Debtors. The Settlement's resolution of the claims asserted against the Debtors in the Rush Action, as well as settlement of related issues including the disposition of the Property and other actions in the bankruptcy cases, represents a savings for the creditors by obviating further litigation, thereby saving the expenses attendant with the same.

### III. CONCLUSION

18. I, on behalf of the Debtors, believe that the Settlement is in the best interest of the Debtors, the Debtors' estates and creditors. The resolution and compromise of the disputes and issues between the parties to the Settlement as embodied in the terms of the Settlement: (i) are in the economic best interests of the estates; (ii) represent settlements that rest well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviate the expense, delay, inconvenience and uncertainty that would attend any litigation of the parties' issues; and (iv) advance the paramount interests of creditors.

*[The Remainder of this Page is Intentionally Left Blank]*

---

govern.

19. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 18, 2010                                       Respectfully submitted,

                                                           _____
                                                           Kevin Nystrom