## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------- x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,[1]

Debtors.

------------------------------------------------------------------- x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

**Objection Deadline: August 9, 2010, at 4:00 p.m. (ET)**
**Hearing Date: August 16, 2010 at 10:00 a.m. (ET)**

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 105(A) FOR AN ORDER APPROVING AND AUTHORIZING SETTLEMENT AGREEMENT RESOLVING ALL CLAIMS AND OTHER MATTERS WITH DR. DAVID AND ELISABETH JACKSON

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its affiliates, the debtors and debtors in possession in the above-

captioned cases (collectively, "AHM" or the "Debtors"), seek entry of an order pursuant to Rule

9019(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and section 105(a)

of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code")

approving the settlement (the "Settlement") by and among the Debtors, on one hand, and Dr.

David and Elisabeth Jackson (collectively the "Jacksons" with the Debtors, the "Parties") on the

other hand (the "Motion"). In support of the Motion, the Debtors rely on the Declaration of

Kevin Nystrom in Support of Debtors' Motion Pursuant to Bankruptcy Rule 9019 and 11 U.S.C.

§ 105(a) for an Order Approving and Authorizing Settlement Agreement Resolving all Claims

---

[1]     The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

and Other Matters with Dr. David and Elisabeth Jackson, attached hereto as <u>Exhibit B</u>.  In further

support, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.      On August 6, 2007 (the "<u>Petition Date</u>"), each of the Debtors filed with

this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the

"<u>Bankruptcy Code</u>").  Each Debtor is continuing to operate its business and manage its

properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  The Debtors' cases have been consolidated for procedural purposes only and are being

jointly administered pursuant to an order of this Court.

3.      On August 14, 2007, the United States Trustee for the District of Delaware

(the "<u>US Trustee</u>") appointed the Committee.  On October 21, 2008, the US Trustee appointed an

Official Committee of Borrowers (the "<u>Borrowers Committee</u>").  No trustee or examiner has

been appointed.

4.      The Amended Chapter 11 Plan Of Liquidation Of The Debtors Dated As

Of February 18, 2009 (the "<u>Plan</u>") was confirmed under section 1129 of the Bankruptcy Code on

February 23, 2009 [D.I. 7042].  The Plan provides for the creation of a liquidating trust (the

"<u>Plan Trust</u>") in which the property of the Debtors' bankruptcy estates will vest.  The Plan has

not yet gone effective.

## RELEVANT BACKGROUND

5.      On March 24, 2006, the Jacksons borrowed $724,000.00 from American Home Mortgage Corp., d/b/a American Brokers Conduit ("ABC"), to refinance the property located at 12787 Lavender Keep Circle, Fairfax, Virginia ("Property").  In connection therewith, the Jacksons executed an Adjustable Rate Note ("Note") and certain other documents and security instruments in connection with the loan transaction - the financing details of the loan transaction are evidenced by the HUD-1 Settlement Statement (collectively, the "Jackson Loan").  The Jacksons were permitted to make monthly payments less than the payment required to fully-amortize the Jackson Loan, until the unpaid principal balance increased to 125% of the original principal amount

6.      The Jackson Loan was securitized as part of the AHMIT 2006-2 trust, and the Debtors' servicing rights to the loan were sold to AHMSI in connection with the sale of the Debtors' servicing business.

7.      The Jacksons have filed multiple claims in these chapter 11 cases.  On January 19, 2009, the Jacksons filed a proof of claim (#10647) against an unspecified debtor asserting an unsecured nonpriority claim of $1,872,000 and a secured claim of $600,000 relating to "Pay Option ARM Loan Fraud" (the "Orginal Claim").  On May 22, 2009, the Jacksons filed proofs of claim against AHM Corp., AHM SV, AHM Acceptance, AHM Investment, and AHM Holdings (#10713-10717, respectively, together with the Orginal Claim, the "Jackson Claims"), asserting unspecified priority claims in the amount of $2,425 and non-priority unsecured and secured claims in unliquidated amounts.

8.      On April 13, 2010, the Jacksons filed Adversary Proceeding No. 10-50915 against Deutsche Bank National Trust Co., AHMIT 2006-2 Trust, American Home Mortgage

Securities, LLC, Michael Strauss, Wells Fargo Bank N.A., Wilbur Ross, WLR Recovery Fund

III, L.P., AH Mortgage Acquisitions, and AHMSI seeking equitable subordination against each

of the foregoing Defendants (the "Jackson Subordination Action"). The Jackson Subordination

Action purports that the Jacksons are entitled to an administrative expense claim pursuant to 11

U.S.C. §503(b) in the amount of approximately $700,000.00.

        9.      On May 11, 2010, Judge Sontchi ordered the Debtors, the Committee and

the Jacksons to mediate their various disputes before the Honorable Brendan Linehan Shannon

(the "Mediator" or "Judge Shannon"). The mediation was conducted on June 4, 2010 and

continued informally thereafter; resulting in a settlement in principle, subject to documentation

and approval by the Bankruptcy Court.

        10.     The Parties desire to resolve their differences with respect to all claims,

causes of action and other matters between the Debtors and the Jacksons without resort to further

litigation and without admission of any fault or liability and, as a result of negotiations, have

agreed on the Settlement attached hereto as Exhibit A.[2] The effectiveness of the Settlement is

conditioned upon approval of the Bankruptcy Court.

## RELIEF REQUESTED

        11.     By this Motion, the Debtors respectfully request entry of an order,

pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, approving the

Settlement and authorizing the Debtors to enter into the same. The Debtors have weighed the

costs, risks and disruption that would arise from litigating the Jackson Claims and the

Subordination Action, against the compromises contained within the Settlement. In the Debtors'

---

[2]     As agreed upon by the Parties, the Parties intend to file the Settlement under seal. A motion to file the
Settlement under seal will be filed contemporaneously herewith.

judgment, the Settlement is reasonable and serves the best interests of the Debtors, their estates

and creditors, particularly compared with the costs and disruption of further litigation.

**BASIS FOR RELIEF REQUESTED**

12.    Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after

a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The

settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is

encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344

B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Cent. Transp. Co., 596 F.2d 1102 (3d

Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it

will often be wise to arrange the settlement of claims . . . .'"), quoting In re Protective Committee

for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

13.    In determining the fairness and equity of a compromise in bankruptcy, the

United States Court of Appeals for the Third Circuit has stated that it is important that the

bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective

opinion of the probabilities of ultimate success should the claims be litigated, and estimated the

complexity, expense and likely duration of such litigation, and other factors relevant to a full and

fair assessment of the [claims]." In re Penn Cent. Transp. Co., 596 F.2d 1127, 1153 (3d Cir.

1979); see also In re Marvel Entm't Group, Inc., 222 B.R. 243 (D. Del. 1998) (quoting, In re

Louise's Inc., 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether

'the compromise is fair, reasonable, and in the interest of the estate.'").

14.    The Third Circuit Court of Appeals has enumerated four factors that

should be considered in determining whether a settlement should be approved. The four

enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in

collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Meyers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); accord Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006).

15.    The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in Meyers v. Martin (In re Martin), 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the Debtors. See In re Neshaminy Office Building Associates, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. See In re W.T. Grant and Co., 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also In re World Health Alternatives, Inc., 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

16.    The Debtors respectfully request that the Court approve the Settlement because its terms lie well above the lowest point in the range of reasonable potential litigation possibilities. In addition, each of the applicable Martin factors weighs in favor of approving the Settlement. Accordingly, the Settlement should be approved pursuant to Bankruptcy Rule 9019.

A.    **The Probability Of Success In Litigation**

17.    While the Debtors are confident that they would prevail in litigation, the settlement is reasonable in light of the anticipated transaction costs associated with litigating

with the Jacksons.  In addition, litigating the Jackson Claims would also divert the Debtors'

limited resources from their efforts to effectuate the Plan.  The resolution of the Jackson Claims

under the terms of the Settlement, without the need for further litigation, is a favorable outcome

because it will save the Debtors time and expense attendant with litigation, and avoid distraction

to the Debtors' efforts to maximize value for the Debtors' creditors.

**B.      The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It**

18.    The Stipulation satisfies the second factor in <u>Martin's</u> four-factor test

largely for the reasons set forth above.  In determining whether to enter into the Settlement, the

Debtors, in consultation with their professionals, analyzed the likely cost of litigating the Jackson

Claims.  While the Debtors have strong arguments against liability on all claims asserted against

them by the Jacksons, the Settlement is a cost effective and efficient resolution of all matters

with the Jacksons.

**C.      The Paramount Interest Of Creditors**

19.    Entry into the Settlement serves the paramount interest of creditors of the

Debtors.  The Settlement's resolution of the claims asserted against the Debtors by the Jacksons

represents a savings for the creditors by obviating further litigation, thereby saving the expenses

attendant with the same.  Therefore, the third factor of <u>Martin's</u> four-factor test is satisfied and

weighs in favor of the Court approving the Settlement.

**D.      The Likely Difficulties In Collection**

20.    Finally, to the extent that amounts are owing to the Jacksons pursuant to

the Jackson Loan, such amounts would be collected by a non-Debtor party.  Accordingly, the

fourth factor enunciated by the Third Circuit in <u>Martin</u> is not applicable under these

circumstances.

E.    **Summary**

21.    The resolution of the claims asserted against the Debtors by the Jacksons embodied in the Settlement represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes, obviates the expense, delay, and inconvenience attendant in any litigation, and advances the paramount interests of creditors.  Therefore, the Settlement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

## <u>NOTICE</u>

22.    Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) Dr. David and Elisabeth Jackson; (iii) counsel to the Committee; and (iv) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## <u>NO PREVIOUS REQUEST</u>

23.    No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court issue and enter an

Order, in the form attached hereto as Exhibit C, pursuant to Bankruptcy Rule 9019 and section

105(a) of the Bankruptcy Code, (i) approving the Settlement, and (ii) granting such other and

further relief as may be just and proper.

Dated: Wilmington, Delaware
        July 26, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Morgan L. Seward (No. 5388)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors

# EXHIBIT A

**Settlement Agreement**

**\*FILED UNDER SEAL\***

**EXHIBIT B**

**Nystrom Declaration**

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x
In re:                                    :   Chapter 11
                                          :
AMERICAN HOME MORTGAGE                     :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,¹ :
                                          :   Jointly Administered
                    Debtors.              :
------------------------------------------------------------- x
```

## DECLARATION OF KEVIN NYSTROM IN SUPPORT OF DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 105(A) FOR AN ORDER APPROVING AND AUTHORIZING SETTLEMENT AGREEMENT RESOLVING ALL CLAIMS AND OTHER MATTERS WITH DR. DAVID AND ELISABETH JACKSON

1.    My name is Kevin Nystrom.  I am over the age of 18 and competent to testify and make this Declaration.  I am serving as the Chief Restructuring Officer of American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its affiliates, debtors and debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), and I am generally familiar with the day-to-day operations, businesses, financial affairs and books and records of the Debtors.

2.    My current duties for the Debtors include overseeing the Debtors' overall financial condition, monitoring the Debtors' receipts and disbursements of cash, maintaining the Debtors' books and records, preparing financial projections, overseeing the claims reconciliation process, and communication with, among other parties, the Debtors' professionals and employees, the Official Committee of Unsecured Creditors' (the "Committee") professionals, the Plan Trustee under the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009

---

1       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation (f/k/a American Home Mortgage Servicing, Inc.) (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak

[D.I. 7029] (the "Plan") and his professionals, and other parties-in-interest in these chapter 11 cases.

3.   In addition to my position at AHM, I am also a Managing Director at Zolfo Cooper. Zolfo Cooper specializes in providing restructuring advisory and crisis management services to financially distressed companies and their creditors.  Zolfo Cooper is one of the world's leading financial advisory, interim management and litigation support firms, with a team of restructuring and litigation specialists.  Zolfo Cooper specializes in advising debtors, creditors, investors and court-appointed officials in bankruptcy proceedings and out-of-court workouts.  Zolfo Cooper has significant qualifications and experience in these matters.  Zolfo Cooper has a reputation for quality and breadth of experience, and a proven track record for success, earned by serving clients in numerous nationally prominent bankruptcy proceedings.

4.   I am authorized to submit this Declaration (the "Declaration") on behalf of the Debtors in support of the Debtors' Motion Pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 105(a) for an Order Approving and Authorizing Settlement Agreement Resolving All Claims and Other Matters with Dr. David and Elisabeth Jackson (the "Settlement Motion")[2] and the Motion to File Jackson Settlement Under Seal (the "Seal Motion").

5.   All facts set forth in this Declaration are based upon my personal knowledge, upon my review of relevant documents, upon my opinion based upon my experience and knowledge of the Debtors' operations and financial management or upon information provided to me by AHM, Zolfo Cooper and the Debtors' other advisors.  If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

---

Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747

[2]        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Settlement Motion.

6. Based on my familiarity with the Settlement Motion and the underlying settlement (the "Settlement"), including without limitation my participation in the negotiations thereof, my knowledge of the facts and issues underlying the Settlement, and other diligence, I believe that: (i) approving the relief sought by the Debtors in the Settlement Motion and all of the terms and conditions of the Settlement are in the best interests of the Debtors, their estates, and creditors; (ii) the Settlement was negotiated at arm's length and in good faith by and among the parties and none of the counter-parties to the Settlement are insiders of the Debtors; (iii) the terms and conditions of the Settlement, including the releases contained therein, are fair and reasonable compromises by the parties; and (iv) entry into the Settlement is an exercise of the Debtors' sound business judgment. Additionally, I believe that, pursuant to the Parties agreement, it is in the best interest of the Parties for the Settlement to remain under seal and confidential.

## I.    FACTUAL BACKGROUND SURROUNDING THE SETTLEMENT

7. On March 24, 2006, the Jacksons borrowed $724,000.00 from American Home Mortgage Corp., d/b/a American Brokers Conduit ("ABC"), to refinance the property located at 12787 Lavender Keep Circle, Fairfax, Virginia ("Property"). In connection therewith, the Jacksons executed an Adjustable Rate Note ("Note") and certain other documents and security instruments in connection with the loan transaction - the financing details of the loan transaction are evidenced by the HUD-1 Settlement Statement (collectively, the "Jackson Loan"). The Jacksons were permitted to make monthly payments less than the payment required to fully-amortize the Jackson Loan, until the unpaid principal balance increased to 125% of the original principal amount

8. The Jackson Loan was securitized as part of the AHMIT 2006-2 trust, and the Debtors' servicing rights to the loan were sold to AHMSI in connection with the sale of the Debtors' servicing business.

9. The Jacksons have filed multiple claims in these chapter 11 cases. On January 19, 2009, the Jacksons filed a proof of claim (#10647) against an unspecified debtor asserting an unsecured nonpriority claim of $1,872,000 and a secured claim of $600,000 relating to "Pay Option ARM Loan Fraud" (the "Orginal Claim"). On May 22, 2009, the Jacksons filed proofs of claim against AHM Corp., AHM SV, AHM Acceptance, AHM Investment, and AHM Holdings (#10713-10717, respectively, together with the Orginal Claim, the "Jackson Claims"), asserting unspecified priority claims in the amount of $2,425 and non-priority unsecured and secured claims in unliquidated amounts.

10. On April 13, 2010, the Jacksons filed Adversary Proceeding No. 10-50915 against Deutsche Bank National Trust Co., AHMIT 2006-2 Trust, American Home Mortgage Securities, LLC, Michael Strauss, Wells Fargo Bank N.A., Wilbur Ross, WLR Recovery Fund III, L.P., AH Mortgage Acquisitions, and AHMSI seeking equitable subordination against each of the foregoing Defendants (the "Jackson Subordination Action"). The Jackson Subordination Action purports that the Jacksons are entitled to an administrative expense claim pursuant to 11 U.S.C. §503(b) in the amount of approximately $700,000.00.

11. On May 11, 2010, Judge Sontchi ordered the Debtors, the Committee and the Jacksons to mediate their various disputes before the Honorable Brendan Linehan Shannon (the "Mediator" or "Judge Shannon"). The mediation was conducted on June 4, 2010 and continued informally thereafter; resulting in a settlement in principle, subject to documentation and approval by the Bankruptcy Court.

066585.1001

## II.    THE SETTLEMENT AND REASONABLENESS THEREOF[3]

12. While the specific terms of the Settlement are confidential and will be disclosed to the Court under seal, I can advise that the Debtors believe that the Settlement constitutes a global resolution of all disputes arising by and among the Debtors and the Jacksons.

13. In my judgment on behalf of the Debtors, I believe that the resolutions embodied in the Settlement, as set forth on the record, are reasonable and in the best interest of the Debtors, their estates, their creditors and other parties in interest. The Settlement provides for a fair and practical resolution of numerous disputed issues which, if litigated to their conclusion, would require utilizing the Debtors' limited resources and, in all likelihood, would further delay the effectiveness of the Plan. The Settlement was the product of significant, mediated discussions and negotiations among the Debtors and the Jacksons, and the settlement embodied therein falls well above the lowest point in the range of reasonableness. In addition, each of the factors discussed below weighs in favor of approving the Settlement. The Settlement is in no way any admission to the legitimacy of any of the claims asserted by the Jacksons.

### 1.    The Probability of Success in Litigation

14. While the Debtors are confident that they would prevail in litigation, the Settlement is reasonable in light of the anticipated transaction costs associated with litigating with the Jacksons. In addition, litigation with the Jacksons would also divert the Debtors' limited resources from their efforts to effectuate the Plan. The resolution of these disputes with the Jacksons under the terms of the Settlement, without the need for further litigation, is a favorable outcome because it will save the Debtors significant time and expense attendant with litigation,

---

[3]    The terms of the Settlement Agreement set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Settlement Agreement. To the extent of any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

and avoid significant distraction to the Debtors' efforts to maximize value for the Debtors' creditors.

### 2.     The Likely Difficulties in Collection

15. To the extent that amounts are owing by the Jacksons pursuant to the terms of the Jackson Loan, such amounts would be collected by a non-Debtor party.    Accordingly, the Debtors do not believe that collection of any judgment that could be obtained is an issue and therefore this factor is neutral.

### 3.     The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Necessarily Attending It

16. While I believe, based on advice from counsel, that some issues raised in the Jackson Claims and the Subordination Action could be disposed of as a matter of law, the bulk of litigation would surround issues the Debtors acknowledge would require factual discovery and evidentiary hearings.    In determining whether to enter into the Settlement, the Debtors, in consultation with their professionals, analyzed the likely cost of litigating the Jackson Claims. While the Debtors have strong arguments against liability on all claims asserted against them by the Jacksons, the Settlement is a cost effective and efficient resolution of all matters with the Jacksons.

### 4.     The Paramount Interest of Creditors

17. I further believe that entry into the Settlement serves the paramount interest of creditors of the Debtors.    The Settlement's resolution of the claims asserted against the Debtors by the Jacksons represents a savings for the creditors by obviating further litigation, thereby saving the expenses attendant with the same.

### III.    FILING THE SETTLEMENT UNDER SEAL IS NECESSARY TO PROTECT THE INTERESTS OF THE PARTIES

18. I further believe the terms of the Settlement are confidential and constitute sensitive commercial information and confidential personal information.    Revealing the terms of the

Settlement would provide an unfair advantage to those third parties that allegedly hold similar claims or causes of action against not only the Debtors, but the other non-Debtor parties. In addition, the Settlement contains certain personally identifiable confidential information of the Jacksons. Based on these circumstances, I believe it is necessary for the Settlement to remain under seal and confidential.

## IV.    CONCLUSION

19. I, on behalf of the Debtors, believe that the Settlement is in the best interest of the Debtors, the Debtors' estates and creditors. The resolution and compromise of the disputes and issues between the parties to the Settlement as embodied in the terms of the Settlement: (i) are in the economic best interests of the estates; (ii) represent settlements that rest well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviate the expense, delay, inconvenience and uncertainty that would attend any litigation of the parties' issues; and (iv) advance the paramount interests of creditors. Further, I believe, the circumstances warrant the Settlement remaining under seal and confidential.

*[Remainder of Page Left Intentionally Blank]*

20. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: July 26, 2010

Respectfully submitted,

Kevin Nystrom

066585.1001