UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------- x
In re:                                              :   Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                              :   Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                     :
a Delaware corporation, et al.,[1]                  :   Jointly Administered
                                                    :
       Debtors.                                     :   Objection Deadline: August 9, 2010, at 4:00 p.m. (ET)
                                                    :   Hearing Date: August 16, 2010 at 10:00 a.m. (ET)
                                                    :
------------------------------------------------------------- x

**MOTION OF THE DEBTORS FOR AN ORDER:  (A) AUTHORIZING AMERICAN HOME MORTGAGE HOLDINGS, INC. TO (I) FORM A SPECIAL PURPOSE ENTITY SUBSIDIARY; (II) TRANSFER ITS RIGHT TO RECEIVE CERTAIN ASSETS AS DIVIDENDS FROM AMERICAN HOME BANK TO THE WHOLLY OWNED SPECIAL PURPOSE ENTITY; AND (B) GRANTING RELATED RELIEF**

AHM Holdings, a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, "AHM" or the "Debtors"), hereby submit this motion (the "Motion"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order substantially in the form annexed hereto as Exhibit A (the "Order"): (A) authorizing AHM Holdings to (i) form a special purpose single member limited liability company (the "SPE"), and (ii) transfer its right to receive certain assets as dividends from the Bank to the SPE in exchange for one hundred percent (100%) of the limited liability company interests

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

in the SPE, and (B) granting related relief. In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, along with Bankruptcy Rules 2002, 6004 and 9014.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3. On August 14, 2007, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. On October 21, 2008, the US Trustee appointed an Official Committee of Borrowers (the "Borrowers Committee"). No trustee or examiner has been appointed.

4. The Amended Chapter 11 Plan Of Liquidation Of The Debtors Dated As Of February 18, 2009 (the "Plan") was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042]. The Plan provides for the creation of a liquidating trust (the "Plan Trust") in which the property of the Debtors' bankruptcy estates will vest. The Plan has not yet gone effective.

2

## AMERICAN HOME BANK DISSOLUTION PROCESS

5. The American Home Bank (the "Bank") was established in October 2006 when AHM Holdings purchased Flower Bank FSB, a one branch, Federal Deposit Insurance Corporation and the Office of Thrift Supervision ("OTS") regulated federal savings bank founded in 1987. The Bank is a one-branch bank headquartered in Chicago, Illinois and is wholly-owned by AHM Holdings. The Bank holds, among other things, mortgage loans (the "Mortgage Loans"), securities and cash deposits (the "Customer Deposits"). As of June 30, 2010, the Bank had approximately $55 million in total assets, and $13 million in total deposits.

6. After considerable marketing of the Bank for sale by the Debtors, through their investment banker Milestone Advisors, LLC ("Milestone"), AHM Holdings, the Bank, and The Bancorp entered into a Stock Purchase Agreement (the "SPA") to purchase the stock of the Bank. The SPA provided that if transaction contemplated by the SPA did not receive the approval of the OTS by September 30, 2009, subject to extension, the SPA could be terminated. The approval of OTS was not received and the SPA was terminated.

7. AHM Holdings, in consultation with the Bank, determined that the dissolution of the Bank and the liquidation of its assets would be the best course of action to maximize its value to the Debtors' estates, given the Bank's continued monthly operating losses.

## SUMMARY OF PROPOSED TRANSACTION

8. In connection with the liquidation of the Bank assets, the Bank, AHM Holdings and Silvergate Bank ("Silvergate") have negotiated a proposed transaction to transfer the Customer Deposits and maximize the value of the Mortgage Loans (the "Transaction"). The Transaction, which is subject to approval from the OTS and the board of directors of the Bank, has two primary components.

YCST01:9955079.2       066585.1001

9. One component of the Transaction is the assumption of the Customer Deposits by Silvergate. The OTS has expressed a preference that the Bank find another institution to assume the Customer Deposits rather than to simply return the Customer Deposits. As such, the first component of the Transaction is instrumental to the Bank asset liquidation process.

10. The second component of the Transaction involves maximizing the value of the Mortgage Loans. As part of this component of the Transaction, AHM Holdings proposes to form a wholly owned special purpose entity (the "SPE"). Upon the formation of the SPE, AHM Holdings will transfer to the SPE all of AHM Holdings' rights, title, and interest to receive dividends of Mortgage Loans from the Bank. The Bank will then issue a dividend of the Mortgage Loans to the SPE.

11. After the above structure is in place, the SPE would enter into a loan (the "Loan") with Silvergate that would be collateralized solely by the Mortgage Loans with no recourse to any of the Debtors, the Plan Trust or their assets. The Loan amount is estimated to be approximately $2,068,000, or 47% of the unpaid principal balance of the Mortgage Loans multiplied by an advance rate of 80% (the "Loan Amount"). It is anticipated that a substantial portion of the Loan Amount will be available to dividend to AHM Holdings. The Loan will have a three-year term with a 7.15% interest rate, during which term the SPE would only have to pay interest on the Loan. The payments of principal and interest collected from the Mortgage Loans would be used to pay the interest on the Loan; however, any additional principal and interest collected on the Mortgage Loans beyond what is necessary to pay interest on the Loan will be used to pay down the principal on the Loan. At the end of the term of the Loan, the SPE will market the Mortgage Loans and provide Silvergate an opportunity to match any offer received for the

Mortgage Loans. After the Loan is paid in its entirety, then all proceeds from the Mortgage Loans shall be split evenly between the SPE and Silvergate.

12. The Transaction is the culmination of an extensive marketing and negotiation process by the Bank, including a full marketing effort for the Mortgage Loans in a standalone sale transaction. The Bank believes that the Transaction will result in the highest and best overall value for AHM Holdings.

### RELIEF REQUESTED

13. By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A: (A) authorizing AHM Holdings, without further notice or hearing from this Court or further corporate action, to (i) form a special purpose single member limited liability company (the "SPE"), and (ii) transfer its right to receive certain assets as dividends from the Bank to the SPE in exchange for one hundred percent (100%) of the limited liability company interests in the SPE, and (B) granting related relief.

### AUTHORITY FOR REQUESTED RELIEF

14. Assets of the non-debtor Bank are not property of the Debtors' bankruptcy estates; however, AHM's rights to a dividend from the Bank is property of AHM Holdings' bankruptcy estate. See 11 U.S.C. § 541(a); United States W. Fin. Servs. v. Berlin (In re Berlin), 151 B.R. 719, 723 (Bankr. W.D. Pa. 1993) ("The general rule is that although the interest of a debtor in a partnership is estate property, any property owned by the partnership itself is not estate property." (citing E.A. Martin Machinery Co. v. Williams, 875 F.2d 668, 670 (8th Cir. 1989)). Property of the bankruptcy estate may be used, sold, or leased by the debtor in possession ("DIP"). 11 U.S.C. §§ 363 and 1107.

15. Where operation of the debtor's business is authorized, the DIP may use property of the estate in the ordinary course of business without notice or a hearing, unless otherwise ordered by the Court. 11 U.S.C. § 363(c)(1). The DIP may use property of the estate outside the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). The Debtors assume *arguendo*, for purposes of this Motion, that AHM Holdings' formation of a wholly owned SPE and the transfer of its rights to receive a dividend of certain assets to the SPE is a "use" of estate property outside the ordinary course of business.

16. Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize a DIP's use of property outside the ordinary course of business. However, courts in this Circuit and others have required that the decision to *sell* assets outside the ordinary course of business be based upon the sound business judgment of the debtors. See In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986); see also Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D.D.C. 1991).

17. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper. In re Fesco Plastics

Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus), 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002). Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); In re Cooper Props. Liquidating Trust, Inc., 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

18.   Assuming a "sound business judgment" test would govern the relief requested herein, the Debtors respectfully submit that the formation of the SPE and the transfer of AHM Holdings' rights to receive a dividend of the Mortgage Loans to the SPE is an exercise of sound business judgment and should be approved.

19.   The "sound business judgment" test ordinarily requires a debtor to establish four elements in order to justify a sale of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtors have obtained a fair and reasonable price, and (d) good faith. Abbotts Dairies, 788 F.2d 143; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989). A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction

depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization).

20. The Debtors submit that more than ample business justification exists for the relief requested herein. The Bank is one of the (if not *the*) largest unliquidated assets of the Debtors' bankruptcy estates, the liquidation of which will facilitate the effectiveness, and eventual consummation, of the Plan—the ultimate goal of these chapter 11 cases. In the Debtors informed business judgment, permitting the formation of the SPE and the transfer of rights to dividend the Mortgage Loans to the SPE will provide three primary benefits to AHM Holdings. AHM Holdings will continue to be the sole shareholder of the non-debtor entity holding the Mortgage Loans, while consummating the Transaction that will: (i) permit an efficient assumption of the Deposits (a strong preference of the OTS) and expedite the Bank dissolution process; (ii) provide short-term liquidity to AHM Holdings from the value of the Mortgage Loans; and (iii) allow the Bank to share the risks and benefits of upside on the performance of the Mortgage Loans.

21. To the extent the "notice" requirement of the Abbotts Dairies test applies to a use of property contemplated herein, the Debtors submit that all interested parties have been on notice for quite some time of the Debtors' intention to sell the stock in the Bank (which was previously approved by order of this Court after full notice to all parties in interest) and then also to authorize AHM Holdings to vote its shares to liquidate the Bank assets (which was also previously approved by the Court and noticed on a broad group of interested parties). Moreover, through disclosure and solicitation of the Plan, which was ultimately accepted by the overwhelming majority of creditors and confirmed by order of this Court, the Debtors made all parties in interest

aware of their intention to liquidate all their remaining assets on limited notice to parties in interest (i.e., by action of the Plan Trustee in consultation with the Plan Oversight Committee). Accordingly, the Debtors respectfully submit that, under the circumstances, this Motion constitutes sufficient notice for purposes of the second prong of the <u>Abbotts Dairies</u> standard, to the extent applicable.

22.    As stated above, the benefits to be derived from putting in place the structure necessary to consummate the Transaction justify the approval of the Motion. This position is supported by the extensive marketing of the Bank assets (including the Customer Deposits and Mortgage Loans) over a period of more than two years. Taking into consideration the market testing of the Bank assets, the costs associated with the Transaction, and industry standards, the relief sought is fair and reasonable to the Debtors, and the third prong of the <u>Abbotts Dairies</u> standard is satisfied.

23.    Finally, AHM Holdings has satisfied the "good faith" prong of the <u>Abbotts Dairies</u> standard, to the extent applicable. The relief sought herein is in furtherance of the liquidation of the Bank assets previously authorized by this Court and is the culmination of more than two years of active marketing, which resulted in a prior sale transaction being approved by this Court as being in good faith. So too will a potential liquidation of the Bank and the consummation of the Transaction proceed with the utmost good faith. Silvergate is not an insider of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arms length, good-faith basis.

24.    For the reasons set forth above, the Debtors respectfully submit that the relief sought herein would constitute an exercise of sound business judgment and would be in the best interests of the Debtors' estates and creditors.

25. The Debtors further submit that waiver of the 10-day stay of Bankruptcy Rule 6004(h), to the extent applicable, is appropriate. Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the ten (10) day stay period, Collier on Bankruptcy suggests that the ten (10) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy 15th Ed. Rev., ¶6064.09 (L. King, 15th rev. ed. 1988). Furthermore, Collier's provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal. Id. The Debtors hereby request that the Court waive the ten-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

26. Notice of this Motion has been provided to: (a) counsel to the Committee; (b) Silvergate; (c) the Office of the United States Trustee for the District of Delaware; (d) the Internal Revenue Service; (e) the U.S. Securities and Exchange Commission; (f) the OTS; and (g) all parties that have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request (i) entry of the proposed Order, substantially in the form annexed hereto as <u>Exhibit A</u>, and (ii) granting such further relief as the Court deems just and proper.

Dated: July 26, 2010  YOUNG CONAWAY STARGATT & TAYLOR, LLP
      Wilmington, Delaware

                                  /s/ Sean M. Beach
                              James L. Patton, Jr. (No. 2202)
                              Pauline K. Morgan (No. 3650)
                              Sean M. Beach (No. 4070)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              (302) 571-6600

                              Counsel for the Debtors and Debtors-in-Possession