# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | Case No. 07-11047 (CSS) |
| HOLDING, INC., a Delaware corporation, | ) | Jointly Administered |
| et al., | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

## DECLARATION OF HOPE DEL CARLO

I, HOPE DEL CARLO, declare:

1. I am over 18 years old, have personal knowledge of the facts set forth herein, and am otherwise competent to execute this declaration.

2. I submit this declaration in support of the Official Borrowers Committee's And Certain Individual Borrowers' Motion To Allow Borrowers To Pursue Discovery In Furtherance Of Claims And Defenses Against Non-Debtor Third Parties And, If Necessary, For Relief From The Automatic Stay, And Request For Inspection Of Debtors' Documents And Examinations Concerning Debtors' Records Pursuant To Federal Rule Of Bankruptcy Procedure 2004 (the "Motion").

3. I am an attorney admitted to practice in Oregon. Since 2008 I have worked as a staff attorney funded by the Institute for Foreclosure Legal Assistance at the Oregon Law Center ("OLC"). OLC is a non-profit that provides legal services to low-income Oregonians in the areas of employment, housing, public benefits, consumer protection, and civil rights. All of my clients at OLC are homeowners with pending litigation or other legal disputes against mortgage lenders, including foreclosure defense.

4. I represent Penny Montague, a homeowner who obtained a mortgage loan from the Debtors and who has asserted claims for rescission under the Truth in Lending Act ("TILA") against assignees of the loan, which has been securitized and is now one of many loans held by a trust called Structured Asset Mortgage Investments II Inc. Structured Asset Mortgage Investments II Trust 2007-AR4, Mortgage Pass-Through Certificate, Series 2007-AR-4. Wells Fargo is the trustee for the trust, and as the nominal holder of her loan, Ms. Montague has sued Wells Fargo for TILA rescission. She has also asserted fraud-like claims under Oregon's Mortgage Broker and Banker act against the mortgage broker and loan officer involved with making her loan.

5. I have represented low and middle-income homeowners in foreclosure proceedings and in litigation against mortgage lenders for over nine years.

6. Based on my experience representing homeowners in foreclosure proceedings and in litigation with mortgage lenders, I have personal knowledge regarding the requirements a mortgage holder must satisfy in order to foreclose on a home, the defenses homeowners may assert to foreclosure, the nature of claims borrowers may assert against lenders, and the documents and information that may be relevant in foreclosure proceedings and litigation between borrowers and lenders.

7. To support claims against servicers and holders of mortgage loans based upon fraudulent and illegal origination and servicing practices, and to support defenses to foreclosure, borrowers may need the following information and documents:

- Communications regarding the origination and documentation of mortgage loans;
- Documents describing a lender's underwriting practices and procedures;
- Marketing materials provided by lenders and brokers to homeowners;

2

- Documents regarding a lender's mortgage assignment practices and procedures, including documents concerning lenders' relationship with and authority provided to MERS; and

- Lenders' document retention practices and document retention efforts;

- Underwriting documents and loan files for individual borrowers, which may include, among other things, copies of a Borrowers' HUD-1 forms, Truth-In-Lending Act Disclosure Statements, notes, deeds, loan applications, good-faith estimates, income statements, and credit reports; and

- Internal communications regarding the approval and documentation of individual borrowers' loans.

8. Borrowers need access to these documents to support their claims and defenses against non-Debtor third parties, particularly third parties seeking to foreclose on their homes. Specifically, borrowers may need these documents to prove, among other things, that lenders or third parties:

- Failed to take into account future rate adjustments and negative amortization in determining borrowers' ability to repay;

- Misrepresented borrowers' income in determining borrowers' ability to repay;

- Failed to provide required documentation to borrowers;

- Misrepresented the terms of loans to borrowers;

- Knew that borrowers were likely to default on loans;

- Intentionally disregarded internal underwriting or fraud prevention policies;

- Failed to properly assign notes and mortgages to successors; and

- Deliberately entered into relationships with mortgage brokers who were poorly trained, poorly supervised, and provided with financial incentives to place loans with borrowers who were likely to default.

9. In my experience, the documents sought in the Motion can be helpful because manuals given by lenders to brokers (or used in-house) are useful in establishing whether the broker understood the loan it was selling, which can support a borrower's allegations that they

3

were intentionally defrauded. Manuals may also be useful for proving Truth in Lending Act violations, as they display the lender's understanding about how to effect compliant TILA disclosure; if the lender's standard practice was not compliant, this can be useful in showing how the violation happened, and that it was not an accidental, bona fide error. Information from manuals on the lender's commission and bonus policies for brokers can be useful for proving that the broker was motivated by its potential profit to "upsell" the borrower into a more expensive loan in order to increase its own fees.

      10.    Additionally, documents in files kept on correspondent brokers can also be useful. Documents such as wholesale lending agreements, which show the terms of any ongoing relationship between the lender and broker, can be used to establish agency (or lack of an agency relationship) between different parties to the loan transaction, because they divide responsibility between different actors. Broker files might also contain background information on brokers (such as their licenses, criminal background checks, insurance policies and bonds) that are impossible for borrowers to obtain in discovery from the broker itself; in the wake of the housing crisis, most fly-by-night mortgage brokers are now out of business and their files are difficult, if not impossible to find. Proving that a loan was made by an unlicensed broker can be useful even against the current assignee of the loan, as such information can be a powerful tool for combating the enforcement of such a note.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 30, 2010 in Portland, Oregon.

By: *Hope Del Carlo*
Hope Del Carlo
Staff Attorney, Oregon Law Center