IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered |

## DEBTORS' MOTION TO COMPEL

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby move, pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 37, as made applicable by Federal Rule of Bankruptcy Procedure 9014, for entry of an order, in the form attached hereto as Exhibit A, compelling Park National Bank and Trust of Chicago, the predecessor to North Star Trust Company, as successor-trustee to Park National Bank and Trust Company of Chicago ("Park National"), to produce certain documents to the Debtors and for certain other relief, including reasonable costs and attorneys' fees. In support of their motion (the "Motion"), the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT

1. This Motion seeks to remedy Park National's utter refusal to produce responsive and relevant discovery necessary to the preparation of the Debtors' case. After two months of silence and delay on the part of Park National, the Debtors are faced with the prospect of preparing for fact depositions (set to be completed in two weeks) and trial without the documents central to their case – documents that establish that Park National was undersecured on a mortgage and note it held on certain real property then owned by the Debtors (the "Property"). Without these documents, the Debtors are substantially prejudiced in developing the factual record necessary to present their case at trial.

2.    Because Park National has inexplicably refused to meaningfully respond to the Debtors' repeated attempts to obtain discovery, and have lodged a new and unsubstantiated relevance objection on the eve of the fact-deposition deadline, the Court should award the Debtors their reasonable costs and attorneys' fees for prosecuting this Motion. To adequately remedy Park National's refusal to cooperate in the discovery process, the Court should also direct that, by failing to provide relevant discovery, Park National sought to disguise the Property's low value.

## BACKGROUND

3.    On September 28, 2009, Park National initiated this contested matter in the above-captioned cases by filing its *Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection* [D.I. 8101] (the "Stay Relief Motion"), which sought, among others, to obtain relief from stay to foreclose a mortgage on the Property.

4.    In response, the Debtors filed their *(I) Limited Objection to Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection and (II) Request for Allowance and Payment of Section 506(c) Claim*, dated October 28, 2009 [D.I. 8226] (the "Section 506(c) Motion"). The Section 506(c) Motion responded to the Stay Relief Motion and asserted a claim against Park National pursuant to section 506(c) of the Bankruptcy Code.

5.    The Debtors and Park National thereafter entered into an agreed order [D.I. 8423] (the "Agreed Order"), entered on December 17, 2009, whereby the Debtors agreed to consent to stay relief and to abandon the Property. In turn, Park National expressly agreed, among other things, that nothing in the Agreed Order would affect any claim that the Debtors may have

against Park National or the Property pursuant to section 506(c) of the Bankruptcy Code (the "Section 506(c) Claim"). By allowing Park National to obtain stay relief and permitting the Debtors to preserve the Section 506(c) Claim, despite abandoning the Property, the Agreed Order resolved the Stay Relief Motion.

6. On November 20, 2009, Park National filed its *Opposition of Park National Bank to the Motion* [D.I. 8325] (the "Objection"). On January 7, 2010, the Debtors filed a reply to the Objection [D.I. 8480].

7. By agreement of the parties, on January 12, 2010, the Court held a hearing (the "Hearing") relating only to the issue of whether section 506(c), as amended, as a matter of law, entitles the Debtors to reimbursement for amounts expended on account of ad valorem taxes. At the Hearing, the Court deferred ruling and directed the parties to confer regarding a discovery schedule and date to conduct an evidentiary hearing related to the Debtors' claims against Park National under section 506(c).[1]

8. On February 26, 2010, the Debtors served their *First Set of Interrogatories, Requests for Production of Documents and Requests for Admission Directed to Park National Bank* (collectively, the "Discovery Requests," and, individually, the "Interrogatories" or "Document Requests") (attached hereto as Exhibit B). On April 5, 2010, Park National served its *Responses and Objections to Debtors' First Set of Interrogatories, First Request for the Production of Documents and First Request for Admissions* (the "Discovery Responses") (attached hereto as Exhibit C). Along with its Discovery Responses, Park National produced a

---

[1] After the hearing, on March 9, 2010, the Debtors filed their *Amended Motion for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) from Mount Prospect, Illinois* Property [D.I. 8665] (the "Amended Motion"), which amended the Section 506(c) Motion. On March 30, 2010, Park National filed its brief in opposition to the Amended Motion [D.I. 8724].

total of twenty documents to the Debtors. Of these documents – and despite requests calling for Park National to provide its correspondence related to the Property – no emails were produced.

9. Pursuant to the Court's directive, on May 12, 2010, the Debtors contacted Park National to discuss, among other things, the adequacy of the discovery responses and document production Park National provided to the Debtors. (*See* Email from Sharon Zieg to Kenneth Yudell *et al.*, May 12, 2010 (attached hereto as <u>Exhibit D</u>).) During the ensuing May 18 teleconference, the Debtors informed Park National of certain deficiencies in Park National's document production. Specifically, the Debtors inquired into at least four categories of documents that Park National failed to produce (collectively, the "<u>Requested Documents</u>"):

- Documents concerning Park National's foreclosure and corresponding credit bid for the Property, none of which had been produced;

- Park National's correspondence concerning the Property, including emails internal to Park National and with third parties, none of which had been produced;

- Documents concerning the Property referred to in Park National's document production, but not actually produced (including an Inspection Report and Phase I report created and/or ordered by Park National); and

- Other documents in Park National's "Credit File," which are referred to in its document production, but the contents of which had not been produced.

On this call, Park National represented that it would look into the Requested Documents and respond to the Debtors' requests.

10. Following the call, Park National fell silent for nearly two months despite counsel for the Debtors' repeated attempts to contact counsel for Park National. On July 12, 2010, having heard no response from Park National, the Debtors sent Park National an email seeking a status update on the requested supplemental production. Again hearing nothing, the Debtors sent a follow-up email on July 15. Finally, on July 26, the Debtors sent a third email seeking to

obtain a response from Park National, and informed Park National that they would be required to file a motion to compel should Park National's inexplicable silence persist. (The emails described in this paragraph are attached hereto as Exhibit E.)

11. Finally, for the first time since May, Park National provided a response concerning the Requested Documents on July 28. In that email, Park National represented that it would "try to get the info[rmation] by the end of the week." (*See* Email from Kenneth Yudell to Sharon Zieg, July 28, 2010 (attached hereto as Exhibit F).)

12. On July 29, 2010, the Debtors sent another email to Park National to schedule a teleconference for the following Monday, August 2. Again, Park National did not respond, and did not produce any documents. Finally, on August 2, Park National responded by saying that a supplemental production of documents would be mailed to the Debtors on August 2 or 3.[2] Park National also agreed to participate in a teleconference on August 3. (The emails described in this paragraph are attached hereto as Exhibit G.)

13. During that teleconference, Park National informed the Debtors for the first time that it objected, on relevance grounds, to the production of all documents that post-date the Debtors' December 2009 abandonment of the Property (the "Relevance Objection"). (*See* Email from Andrew A. Lundgren to Kenneth Yudell, Aug. 3, 2010 (attached hereto as Exhibit H).) According to Park National, such documents – which include documents concerning the Foreclosure, among others – are irrelevant to the Debtors' claims. (*See* Email from Kenneth Yudell to Andrew A. Lundgren, Aug. 4, 2010 (attached hereto as Exhibit I).) Notwithstanding the absurdity of this objection, Park National only lodged this objection after nearly two months of silence on the Debtors' supplementation requests.

---

[2] The Debtors received on August 4, over two months after the Debtors' May 18 request for supplementation, Park National's supplemental production of documents. It comprises twenty-two pages of appraisal-related documents.

14. Having heard the Relevance Objection for the first time less than two weeks before fact depositions are set to be completed [*see* Docket No. 9041, ¶ 4 (setting fact-deposition deadline of August 16, 2010)], and having received only twenty-two pages of supplemental production concerning the Requested Documents, the Debtors have been forced to seek judicial intervention to obtain the discovery necessary to prosecute this contested matter.[3]

**ARGUMENT**

15. Federal Rule of Civil Procedure 26 provides, in part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). Relevance for the purposes of discovery is defined broadly. *See Corning Inc. v. SRU Biosystems, LLC*, 2004 U.S. Dist. LEXIS 14831, at *3 (D. Del. July 7, 2004). Indeed, the very "purpose of discovery is to allow a broad search for facts . . . which may aid a party in the preparation or presentation of his case." FED. R. CIV. P. 26 Advisory Comm. Notes (1946 Amendments). If a party learns that any discovery response it has provided to an opposing party is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing, then the disclosing party is required to timely supplement or correct its discovery response. FED. R. CIV. P. 26(e)(1).

16. Where a party does not timely adhere to these mandates, Federal Rule of Civil Procedure 37, made applicable to this contested matter by Bankruptcy Rules 7037 and 9014, allows a party to file a motion for an order compelling disclosure or discovery. Specifically, Rule 37(a)(3)(B) provides that "[a] party seeking discovery may move for an order compelling

---

[3] The Debtors hereby certify, pursuant to Federal Rule of Civil Procedure 37(a)(1), Federal Rule of Bankruptcy Procedure 7026, and Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, that they have in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). For purposes of making such a motion, "an evasive or incomplete disclosure, answer, or response is treated as a failure to disclose, answer, or respond." *Id.* 37(a)(4).

### A. THE COURT SHOULD COMPEL PARK NATIONAL TO PRODUCE THE REQUESTED DOCUMENTS

17. Given, among other things, Park National's complete and unexplained failure to respond to the Debtors' numerous requests for supplementation, the Court should compel Park National to produce the Requested Documents. First, the Requested Documents should be produced because they are relevant – and crucial – to the Debtors' case. As ordered by the Court at the Hearing, the upcoming trial on the Section 506(c) Claim will focus on whether Park National, as a holder of the Debtors' mortgage, was oversecured or undersecured in the Property. Implicit in the scope of trial will be Park National's own thoughts and conduct concerning the value of the Property, including what actions it took to foreclose on and credit bid for the Property, what consultations it had internally and with third parties about the condition and marketability of the Property, and what internal documents it prepared concerning the Property. Such documents include, but are not limited to, documents involving Park National's foreclosure and purchase of the Property, activity that establishes the only clear indicator of what the value of the Property actually is, regardless of when that value was realized or what the Court eventually decides is the relevant time period for valuing the Property. In short, the trial will necessarily involve evidence of Park National's own actions in valuing the Property up until the time it was actually sold.

18. The Requested Documents all directly relate to these topics. As noted above, the Debtors sought a supplementation of four basic document categories responsive to the Document Requests: (1) foreclosure and credit-bid documents; (2) internal and external correspondence; (3)

documents referenced in the original production but not produced; and (4) documents in Park National's internal files. (*See, e.g.*, Document Request No. 2 (requesting documents concerning the Property, including documents concerning any credit bid or sale of the Property); No. 4 (requesting documents concerning any valuations of the Property); No. 5 (requesting documents reviewed, referred to, or relied upon in valuing the Property); No. 6 (requesting documents provided to or exchanged with any appraiser of the Property).) Without these fundamental types of documents – documents created in the ordinary course of any business that provides real estate lending – the Debtors are left with an incomplete record on which to take depositions and to prepare for trial.

19. Park National's failure to produce the Requested Documents is compounded by the fact that the existing discovery in this case confirms that such documents exist. For example, Park National claims that it possesses no non-privileged emails concerning the Property.[4] (*See* Discovery Responses, Response to Interrogatory No. 4 ("We are not aware of any non-privileged communications at this time.").) This contention is false. Third-party discovery to date has revealed that Park National has received several communications with at least one bidder for the Property in the relevant timeframe. (*See* Email from Martin Gardner (Park National) to Jonathan Berger (the Equitable Funds LLC ("Equitable")), June 12, 2008, Bates No. 0102; Email from Jonathan Berger (Equitable) to Frederick Body (Park National), May 27, 2009, Bates No. 0378 (collectively attached hereto as Exhibit J).)

20. As for documents concerning Park National's foreclosure and credit bid for the Property (the "Foreclosure"), and the other post-December 2009 documents subject to the

---

[4] Notably, Park National has not produced a privilege log. Thus, the Debtors have been unable to assess Park National's blanket claim of privilege on every email in its possession. *See* FED. R. CIV. P. 26(a)(5)(A) (directing that party withholding information on basis of privilege "must . . . describe the nature of the documents, communications, or tangible things . . . in a manner that . . . will enable other parties to assess the claim.").

Relevance Objection, Park National cannot possibly contend that such documents are not relevant. Because the Debtors abandoned the Property as part of the Agreed Order – and explicitly preserved the Section 506(c) Claim in exchange for stipulating to stay relief for Park National – the value achieved at the Foreclosure is the only sale value the parties have to develop during discovery. For Park National to lodge a blanket objection on relevance grounds to producing documents related to the Foreclosure (or any other document produced around the same time) contravenes the fundamental factfinding principle of discovery. It also violates Rule 26's mandate that discovery may be had on information that is "relevant to *any party's claim* . . ." in the litigation. *See* FED. R. CIV. P. 26(b)(1) (emphasis added). Because the Debtors' claim of value concerns, among others, the post-abandonment time period when the Property was actually sold, the Relevance Objection is meritless.[5]

21.    Furthermore, Park National's own document production indicates that there are other, responsive documents concerning the Property that were not included in the twenty-document production it made to the Debtors. (*See, e.g.*, Frederick D. Body, Memo to Credit File, October 19, 2007, PN000077 (noting that Park National memorandum is being sent to "Credit File," which has not been produced); *id.* (noting that the Debtors obtaining an extension to assume or reject unexpired leases of non-residential properties is a "good thing for us"; no documents have been produced to identify who Mr. Body is referring to); Frederick D. Body, Memo to Credit File, Nov. 13, 2009, PN000083 (noting that Park National ordered a "Phase I" on December 23, 2009, which has not been produced); *id.* (noting that Eric Janssen was appointed as a limited purpose receiver for the Property on December 29, 2010; no

---

[5] Any assertion by Park National that the date of valuing the Property is earlier than the Foreclosure is wholly misplaced during this discovery phase of the proceedings. The Court has not adjudicated the date on which the Property should be valued and will not do so until reaching its decision following trial. The Debtors here are simply requesting the documents and information necessary to prepare an evidentiary record for that trial.

communications with Mr. Janssen have been produced) (collectively attached hereto as <u>Exhibit K</u>).) Because the Requested Documents are central to the Debtors' case, and almost certainly exist, any assertion by Park National to the contrary is unfounded.

22. Finally, Park National should be compelled to produce the Requested Documents because the Debtors will be prejudiced in preparing their case without them. Under the Scheduling Order, the deadline to complete depositions is August 16, 2010, less than two weeks away. At this late stage of discovery, Park National still has yet to produce the Requested Documents – documents that are fundamental to uncovering Park National's own assessment and analysis of the Property. Without these documents, the Debtors' ability to adequately prepare for depositions – and therefore its ability to prepare its case – is impaired. Even if the Court were to allow a second round of depositions to compensate for an eleventh-hour document production, the Debtors would still have to incur additional expense in prosecuting such depositions. Thus, unless Park National supplements its document production immediately, the Debtors will be substantially prejudiced in preparing and presenting their case at trial.

### B. THE COURT SHOULD AWARD THE DEBTORS THEIR COSTS IN PREPARING THE MOTION AND ISSUE OTHER APPROPRIATE RELIEF

23. Given Park National's demonstrated inability to work with the Debtors to resolve this discovery dispute, the Court should award the Debtors additional relief. Federal Rule of Civil Procedure 37 provides that if a motion to compel discovery is granted (or if the requested discovery is provided after the motion to compel is filed), unless opposition to the motion is substantially justified or an award is otherwise unjust, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A); *see also*

*Rohm & Haas Co. v. Brotech Corp.*, 1990 U.S. Dist. LEXIS 20117, at *25-26 (D. Del. Sept. 14, 1990) (finding defendant filed its responses in an untimely fashion and then provided inadequate answers, and awarding reasonable costs and attorneys' fees incurred in connection with motion to compel brought to remedy inadequate answers); *cf. Haraway v. NASCAR*, 213 F.R.D. 161, 165 (D. Del. 2003) ("[C]ourts have readily awarded sanctions against individuals who have in some measure complied with Rule 37(d) [which, among others, remedies a failure to answer document requests and interrogatories,] but have violated the basic requirement of the Rule to cooperate in discovery.").

24.    Moreover, where a party fails to supplement its discovery, the Court, unless the failure is substantially justified or harmless, may enter an order "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." FED. R. CIV. P. 37(b)(2)(A)(i) (incorporated by virtue of FED. R. CIV. P. 37(c)(1)(C)).

25.    As demonstrated above, Park National has willfully ignored its obligations under the discovery rules, and has refused to meaningfully respond to the Debtors' repeated calls for supplementation and additional information, all without justification and to the Debtors' detriment. Accordingly, the Court should order that (1) Park National pay the Debtors' costs, including reasonable attorneys' fees, in prosecuting this Motion; and (2) it is established that Park National sought to disguise a low value of the Property by failing to supplement its Discovery Responses to account for the Requested Documents and the Foreclosure (the "Additional Relief").

## CONCLUSION

The Requested Documents are relevant, responsive, and necessary to the Debtors' ability to adequately prepare for depositions and trial. Accordingly, the Court should grant the Motion and compel Park National to produce the Requested Documents. Given Park National's silence, delay, and unwillingness to work with the Debtors on resolving this dispute, the Court should also award the Debtors the Additional Relief.

Dated: Wilmington, Delaware
August 6, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Andrew A. Lundgren
_____
Sean M. Beach (No. 4070)
Sharon M. Zieg (No. 4196)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to Debtors and Debtors in Possession*