## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------x
                                            :   Chapter 11
In re:                                      :
                                            :   Case No. 07-11047 (CSS)
American Home Mortgage Holdings, Inc., et al,¹ :   (Jointly Administered)
                                            :
                             Debtors.       :
                                            :   Ref. Docket No. 9053
-----------------------------------------------------------x
```

**DEBTORS' OBJECTION TO THE OFFICIAL BORROWERS COMMITTEE'S AND
CERTAIN INDIVIDUAL BORROWERS' MOTION TO ALLOW BORROWERS TO
PURSUE DISCOVERY IN FURTHERANCE OF CLAIMS AND DEFENSES AGAINST
NON-DEBTOR THIRD PARTIES AND, IF NECESSARY, FOR RELIEF FROM THE
AUTOMATIC STAY, AND REQUEST FOR INSPECTION OF DEBTORS'
DOCUMENTS AND EXAMINATIONS CONCERNING DEBTORS' RECORDS
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

American Home Mortgage Holdings, Inc., *et al.* (the "*Debtors*") hereby file this objection

(the "*Objection*") to the *Official Borrowers Committee's and Certain Individual Borrowers'*

*Motion to Allow Borrowers to Pursue Discovery in Furtherance of Claims and Defenses Against*

*Non-Debtor Third Parties and, If Necessary, for Relief From the Automatic Stay, and Request*

*for Inspection of Debtors' Documents and Examinations Concerning Debtors' Records Pursuant*

*to Federal Rule of Bankruptcy Procedure 2004* [D.I. 9053] (the "*Discovery Motion*") filed by the

Official Committee of Borrowers (the "*Borrowers Committee*") and certain individual borrowers

(the "*Individual Movants*").[2]  In support of their Objection, the Debtors represent as follows:

### PRELIMINARY STATEMENT

1.       The Discovery Motion is not only rife with conclusory allegations and

unsupportable statements, but the relief requested therein is improper and duplicative of the

---

[1]       The Debtors are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.;
American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.);
American Home Mortgage Corp. ("AHM Corp."); American Home Mortgage Ventures LLC; Homegate Settlement
Services, Inc; and Great Oak Abstract Corp.

[2]       The Individual Movants are (1) Penny Montague; (2) Gracie Graves; (3) Marjorie Crawford; (4) Annie
Gordon; (5) Linda and Johnny Culpepper; and (6) Florence Dandridge.  Of these Individual Movants, Ms.
Montague, Ms. Graves and Ms. Dandridge are members of the Borrowers Committee.

Debtors' current efforts.  The Debtors have not "rebuffed" any information requests by

borrowers.  (Disc. Mot. 18, 22.)  *Not one* of the Individual Movants was disclosed to the Debtors

prior to the filing of the Motion – even after specific inquiry to the Borrowers Committee's

counsel for the identities of the Individual Movants.  Contrary to the Movants' certification[3] (*see*

Disc. Mot. fn. 4.) that they conferred with Debtors' counsel prior to filing the Discovery Motion,

the Individual Movants did not meet or confer with the Debtors pursuant to Local Rule 2004-1(a)

or make any request for information other than those requests made by the Individual Movants

and complied with by the Debtors months or years ago.

   2.  Equally troubling is the fact that the Discovery Motion is structured

around the concept that the automatic stay may obstruct borrowers from conducting third party

discovery.  As the Debtors advised the Borrowers Committee at the time of their meet and confer

(i) the Debtors agree that the automatic stay does not apply to third party discovery; (ii) even if

the stay could be construed to apply to third party discovery, the express terms of the Plan and

Confirmation Order modify the automatic stay for borrowers to conduct third party discovery – a

key provision that the Borrowers Committee fails to cite; and (iii) the Debtors have been

complying with such third party discovery requests without requiring stay relief.  (*See* Plan §

17.E.(iii) and Confirmation Order ¶ 51) (providing that the automatic stay is modified, to the

extent necessary, to permit "the borrower(s) under any mortgage loan origination or serviced by

one or more Debtors to seek third party discovery of the Debtors and/or the Plan Trust in

litigation with a non-Debtor party . . . .").  The Debtors have received and timely responded to

requests for loan files relating to over 300 borrowers (both informally or through subpoena) from

parties for information in connection with third party litigation.  The Borrowers Committee is

---

[3] Local Rule 2004-1(b) requires that a certification of counsel be included in a Rule 2004 Motion stating that a conference was held or a conference was not held and an explanation as to why no conference was held.  Because a separate certification was not included or otherwise filed, the Debtors believe that footnote 4 of the Discovery Motion is intended to comply with this rule, as the Discovery Motion is signed by counsel for the Borrowers Committee and each counsel for the Individual Movants.

well aware that the Debtors have responded to such requests from borrowers since several of the borrower requests came directly through its counsel. Perhaps most important is the fact that only a small number of these third party discovery requests have come from borrowers or their counsel, thereby making the basis of the Discovery Motion misleading and unnecessary.

3.    With respect to the *five of the six* Individual Movants who have litigation currently pending, the Debtors believe that the Discovery Motion is moot. Given that Rule 2004 of the Federal Rules of Bankruptcy Procedure ("*Rule 2004*") is intended as a prelitigation device, any examination by these Individual Movants should be denied; instead, they should be directed to follow the applicable federal and state rules regarding third party discovery. The *sole* Individual Movant who does not have current litigation pending -- Ms. Dandridge-- received her loan file from the Debtors on or about January 26, 2009. The Debtors are unaware of any requests by Ms. Dandridge or her counsel for further information. Had the Debtors been given the opportunity for a meet and confer, they could have mutually agreed upon an appropriate scope for requests related to Ms. Dandridge's potential claims or defenses against third parties.[4] Given the failure of Ms. Dandridge's counsel to communicate with Debtors' counsel, the Debtors believe that the Rule 2004 request should be denied as premature. To the extent that such parties cannot reach an agreement, Ms. Dandridge could seek relief from the Court at a later date on the presumably narrow issues that may then exist.

4.    The Borrowers Committee requests to perform its own Rule 2004 examination[5] for the benefit of *individual* borrowers' claims and defenses against *non-debtor third parties*. Not only is this request well beyond the scope of the Borrowers Committee retention, it is wholly outside the authority of any official committee, whose function is to

---

[4]    The Debtors intend to reach out to counsel for Ms. Dandridge prior to the hearing to consider the Discovery Motion.

[5]    It is unclear from the Discovery Motion whether the Borrowers Committee is seeking to serve third party discovery on the Debtors (*see* Disc. Mot. 5). To the extent such relief is requested, the Debtors assert that the Borrowers Committee lacks standing to do so.

represent a creditor constituency as a whole with respect to the administration of the Debtors' estates. Even assuming that authority for such action exists, there is simply no reasonable cause to permit such relief. The Borrowers Committee's argument is premised on allegations that (i) the destruction of relevant documents is imminent (*see* Disc. Mot. 14-15); (ii) the Debtors are "rebuffing" requests from borrowers (*see* Disc. Mot. 18, 22); and (iii) the Borrowers Committee can somehow minimize the number of individual requests and create an efficiency which minimizes costs to the estate (*see* Disc. Mot. 24). These allegations are simply untrue.

5.    First, the Debtors do not have any requests to destroy documents currently pending and are required to seek Court authority to do so. Second, as noted above, *none* of the Individual Movants requested information from the Debtors prior to the filing of the Discovery Motion, so there was nothing for the Debtors to rebuff. Moreover, four of the six Individual Movants requested, and received, copies of their loan files from the Debtors in 2009. The Debtors are unaware of any requests – for loan files or otherwise – from the other two Individual Movants. If such Individual Movants seek information from the Debtors, then such requests must be made informally upon a meet and confer or through subpoena. If a dispute arises, then a court of appropriate jurisdiction will address a motion to compel compliance with such subpoena and this Court need not address the issue. Third, the Borrowers Committee's requested fishing expedition is duplicative of the Debtors' current efforts, requiring the estates to incur unnecessary costs without any added benefit. There have been very few borrower requests made in connection with third party litigation and those that have been made have been complied with on a timely and efficient basis. Since the Borrowers Committee and its counsel do not represent individual borrowers, they cannot bind individual borrowers or limit the discovery of individual borrowers. Accordingly, the argument that the Borrowers Committee can coordinate or channel borrower discovery or Rule 2004 examinations is flawed.

6.    Finally, the Debtors object to the relief requested in the Discovery Motion because it, in effect, seeks reconsideration of the Confirmation Order. The Discovery Motion asserts that the appointment of the Borrower Information Ombudsperson, which was included in the Plan and Confirmation Order, has been delayed since the Plan is not yet effective. What the Borrowers Committee fails to mention to the Court is that, during the meet and confer, the Debtors agreed to seek to appoint the Borrower Information Ombudsperson now if the Borrowers Committee so desired. The Borrowers Committee never responded to this offer, and now even suggests that the scope of the Borrower Information Ombudspersons duties are insufficient (Disc. Mot. 17, 24). The proposed order provides that the Borrower Information Ombudsperson's duties should include maintaining any and all documents that the Borrowers Committee or individual borrowers deem potentially relevant (Proposed Order ¶ 7). The role of the Borrower Information Ombudsperson, as well as the potential destruction of documents relevant to borrowers, was contested by the Borrowers Committee at the Debtors' three-day Confirmation Hearing and was overruled by this Court. The Borrowers Committee should not now be allowed to relitigate the issue.

7.    For the foregoing reasons, as well as those stated below, the Debtors request that this Court deny the Discovery Motion.

## BACKGROUND

**A.    General Background**

8.    On August 6, 2007 (the "*Petition Date*"), the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*") with this Court. Since the Petition Date, the Debtors have continued in the operation of their businesses and the management of their properties as debtors-in-possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.[6]

9.      On August 14, 2007, the Office of the United States Trustee (the "*U.S. Trustee*") appointed the Official Committee of Unsecured Creditors (the "*Committee*").  As discussed more fully below, the Borrowers Committee was appointed on October 21, 2008.

10.      On August 15, 2008, the Debtors filed their Chapter 11 Plan of Liquidation of the Debtors (as amended, the "*Plan*") [D.I. 5450] and Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the Chapter 11 Plan of Liquidation of the Debtors (as amended, the "*Disclosure Statement*") [D.I. 5451].  As discussed more fully below, the Plan was confirmed on February 23, 2009 [D.I. 7042] (the "*Confirmation Order*"), but is not yet effective.

**B.      Appointment of the Borrowers Committee and Limitation of Scope**

11.      On September 9, 2008, certain individuals, through their co-counsel Gilbert Oshinsky LLP (f/k/a Gilbert Randolph LLP) and Zuckerman Spaeder LLP, filed a motion [D.I. 5675] (the "*Appointment Motion*") seeking appointment of an official committee of borrowers in these cases.

12.      The Committee and the Debtors objected to the Appointment Motion [D.I. 6112 and 6115, respectively].  In its oral ruling approving the Motion at the conclusion of the hearing, the Court indicated it was cognizant of the delay and additional expense that would be imposed by creation of an additional statutory committee, but believed it was possible to "fashion a remedy that would, while not eliminating that expense, hopefully limit it significantly."  (*Id.* at 77:23-78:5.)

13.      On October 10, 2008, this Court entered an order (the "*Appointment Order*") [D.I. 6220] directing the U.S. Trustee to appoint the Borrowers Committee and

---

[6]      By order dated April 1, 2009, however, the Court appointed a fee examiner to review and make recommendations with respect to certain fee applications submitted by professionals [D.I. 7218].

scheduling a status conference for October 22, 2008, to consider the scope of the appointment and any limitations that would be imposed on the Borrowers Committee.

14.     On October 20, 2008, the Debtors filed a motion [D.I. 6285] to extend the time within which to file a notice of appeal from the Appointment Order (the "*Appeal Motion*").

15.     By notice dated October 21, 2008 [D.I. 6407], the U.S. Trustee appointed the Borrowers Committee.  On November 4, 2008, the Court entered an order supplementing the Appointment Order (the "*Supplemental Order*") [D.I. 6495] consistent with its rulings at a status conference held on October 22, 2008, which ordered, *inter alia*, that (i) the scope of the Borrowers Committee's rights and responsibilities was limited to matters relating to the Plan, global stay relief on behalf of all borrowers in foreclosure and any incidental related issues (the "*Borrowers Committee Scope*"), (ii) the Borrowers Committee was not authorized to retain any professionals other than counsel and (iii) the compensation and reimbursement of expenses of counsel for the Borrowers Committee was capped at $250,000 (the "*Fee Cap*").  Upon entry of the Supplemental Order, and in reliance on the Borrowers Committee Scope and the Fee Cap therein, the Debtors withdrew their Appeal Motion [D.I. 6513].

16.     Despite entry of the Fee Cap under the Supplemental Order, the Borrowers Committee has already sought, and obtained, payment of fees and expenses in excess of $550,000.

## C.     Disclosure Statement Approval and Confirmation

17.     On November 25, 2008, the Disclosure Statement was approved and confirmation of the Plan was initially scheduled for January 28, 2009.

18.     On January 22, 2009, the Borrowers Committee filed an objection to the Plan (the "*Plan Objection*") [D.I. 6883] challenging, among other things: (i) the adequacy of notice of the bar dates established previously in the Cases, (ii) the extension of the automatic stay post-confirmation, (iii) the alleged conflicts of interest of the Plan Trustee and the Plan Oversight

Committee (as defined in the Plan), (iv) the Plan's exculpation provisions, (v) the proposed mechanism for the estimation, liquidation, and allowance of EPD/Breach Claims (as defined in the Plan) (such mechanism, the "*EPD/Breach Claims Protocol*"), (vi) the proposed comprehensive settlement of inter-debtor claims and potential inter-estate disputes in the Plan (the "*Stipulated Asset Allocation*"), and (vii) whether the Plan satisfied the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code.

19.    On February 5, 2009, the Debtors voluntarily amended the Plan [D.I. 6942], which included an article (Article 17) completely devoted to borrower issues.  Article 17.E. of the Plan provides for the modification of the automatic stay, to the extent necessary, to permit "the borrower(s) under any mortgage loan origination or serviced by one or more Debtors to seek third party discovery of the Debtors and/or the Plan Trust in litigation with a non-Debtor party, provided, however, that nothing in this Article 17 shall be construed to require the Debtors or the Plan Trustee, as applicable to respond to any such request for discovery or prevent the Debtors or the Plan Trustee, as applicable, from opposing any request for discovery on any grounds available under applicable law."

20.    Additionally, the amended Plan incorporated the concept of the Borrower Information Ombudsperson, who will be authorized to provide borrowers with a copy of his or her loan files and disclose the identity of the purchaser of such borrower's mortgage loan from the Debtors and the servicer of such loan immediately following such sale.  (Plan § 17.H.)  Once appointed, the Borrower Information Ombudsperson will be allocated $50,000 for compensation and reimbursement of expenses. *Id.*

21.    The Plan also expressly provides that the Debtors or their successors, including the Plan Trustee, must seek prior Court approval upon notice and a hearing to destroy documents except as previously authorized under prior destruction orders.  (Plan § 8.F.5.c.(xviii)).

22.     On February 9, 2009, the Borrowers Committee filed its *Reply of the Official Committee of Borrowers to the Briefs in Support of Confirmation of the Debtors' Amended Chapter 11 Plan of Liquidation* [D.I. 6964] (the "*Plan Reply*"). In its Plan Reply, the Borrowers Committee objected to the plan amendments, alleging that the Plan did not adequately ensure the preservation and dissemination of borrower-related information. (Plan Reply 7-8.) The Borrowers Committee specifically argued that the restrictions placed on the Borrower Information Ombudsperson "render[ed] the value of the ombudsperson illusory." (Plan Reply 7.)

23.     Despite the amendments by the Debtors to address borrower issues, the Borrowers Committee pressed the Plan Objection – ultimately the only unsettled Plan objection, resulting in a three-day hearing on confirmation of the Plan held February 9-11, 2009 (the "*Confirmation Hearing*"). At the Confirmation Hearing, the Borrowers Committee argued their issues regarding, among other things, the Borrower Information Ombudsperson and the potential destruction of documents relevant to borrower litigation against third parties.[7]

24.     At the conclusion of the Confirmation Hearing, the Court overruled the Plan Objection *in toto*. With respect to the document issues, the Court stated "[t]he destruction of documents point I really don't think applies to confirmation whatsoever. That's an issue as to previous orders of this Court. I assume the Debtors are complying with it. There is some processes available in Article 17 that deal with helping borrowers get access to information.

---

[7]     *See* 2/11/09 Hr'g Tr. 112: 5-13 (Mr. Weisbrod: "We've hear[d] that these loans may not even finish resetting until 2010, 2011, and so, if the trust is gone, that's a big problem for borrowers for the obvious reason that there's nobody to pay [borrower claims]. It's also a problem because there won't be an ombudsperson to give them their loans, and their loan files. I mean, it's really - - the debtors have duties now to preserve evidence, you know, as part of third party discovery processes and all kinds of things, and this isn't going to enable them to satisfy those duties."); 2/11/09 Hr'g Tr. 115 ("I'm not sure – it sounds to me like from the perspective of an individual borrower they have no idea still, and that is part of our problem, and maybe the ombudsperson who will be paid $50,000 total, and may be fired after $50,000 is up, will be able to help them figure that out. But right now, from the point of view of an individual borrower, we don't have an answer about what's going on with their documents. I understand the general procedures. It sounds pretty good, but it also sounds like there's no mechanism for verifying that individual borrower's loans aren't falling through the cracks. And so, that is a problem of great concern to borrowers who need these loans to be able to authenticate the background documents when they go to challenge their mortgages.").

Borrowers always had the ability to try to work through their servicers although I understand that is an very imperfect way to get information." (2/11/09 Hr'g Tr. 151: 1-10.)

**D.    Borrower Requests for Documents**

25.    The Debtors have been diligently attending to the requests of third party litigants, including borrowers and their counsel, whether through informal or formal requests, subpoenas, or in response to various complaints. Since the fourth quarter of 2008, documents have been provided with respect to over 300 borrowers. Few requests have been made by individual borrowers or their counsel.

26.    Of the Individual Movants, three (Ms. Graves, Ms. Dandridge, and Ms. Montague) are members of the Borrowers Committee. The Debtors' records reflect that Ms. Graves and Ms. Dandridge both received their respective loan files on January 26, 2009, and Ms. Montague received her loan file on February 24, 2009. Pursuant to subsequent request, Ms. Crawford received her loan file on December 21, 2009 – a mere four days after her request. The Culpeppers do not have a loan with the Debtors and, accordingly, the Debtors do not have a loan file to provide. To the best of the Debtors' knowledge, the Culpeppers and Ms. Gordon have not requested copies of loan files. As stated above, until the filing of the Discovery Motion, *none* of the Individual Movants had requested any documentation other than their loan file.

**E.    The Current Discovery Motion**

27.    On July 1, 2010, counsel for the Borrowers Committee sent an e-mail to Debtors' counsel and the Committee's counsel attaching only the proposed form of order and requesting a conference.

28.    Counsel for the Debtors and Borrowers Committee agreed upon a teleconference on July 8, 2010. At such time, Debtors' counsel (i) indicated that the automatic stay was either inapplicable to third party discovery or already modified pursuant to the Confirmation Order, (ii) stated that the Debtors had received and have been complying with

borrower information requests in connection with third party litigation, (iii) stated the Debtors' position that (a) the relief requested by the Borrowers Committee is outside of the Borrowers Committee Scope, (b) the relief requested is outside the appropriate scope of any official committee that did not have pending or contemplated litigation, (c) the proposed order, which has no scope of inquiry, was overly and unnecessarily broad, and (d) the relief was tantamount to seeking a reconsideration of the Confirmation Order, (iv) stated that the Debtors would seek approval to appoint the Borrower Information Ombudsperson early if the Borrowers Committee so desired, (v) requested the names of the Individual Movants, (vi) pointed out that there are no pending requests to destroy documents and that any such requests must be made by motion on notice, and (vii) inquired as to whether Borrowers Committee counsel intended to seek compensation for the work contemplated to be performed pursuant to the relief sought in the proposed order and whether such professionals had incurred any fees since the filing of their last fee application.

29.     Without further discussion, disclosure or response – including the identification of the Individual Movants or their counsel – on July 28, 2010, the Borrowers Committee and Individual Movants filed the Discovery Motion.

## OBJECTION

### A.     Individual Movants Should Seek Third Party Discovery Through Appropriate Channels In Their Underlying Actions

30.     Put simply, there is no basis for granting the Individual Movants' request under Local Rule 2004.  The Debtors do <u>not</u> dispute the Movants' contention that the automatic stay does not apply to third party discovery requests.  (Disc. Mot. 19-20.)  Furthermore, this Court has granted modified stay relief through the Confirmation Order and Plan, which provides, in pertinent part, that borrowers may compel third party discovery from the Debtors and/or Plan Trust in litigation with a non-Debtor party.  (Confirmation Order ¶ 51(iii)).  During the July 8th teleconference, the Debtors advised the Borrowers Committee that the Debtors were actively

responding to formal and informal borrower requests (as further evidenced by several requests

that were made through the Borrowers Committee counsel). The Debtors will continue to

comply with third party discovery when issued and, as a result, the Discovery Motion is

unnecessary with respect to five of the six Individual Movants who have underlying actions

pending in federal or state court.[8]

31.    To the extent that the Individual Movants are attempting to use Rule 2004

as an avenue to inspect <u>all</u> of the Debtors' records (*see* Proposed Order ¶ 4), this is exactly the

type of back door circumvention of the limitations of the Federal Rules of Procedure that Rule

2004 is not intended to permit. *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 30 (Bankr.

N.D.N.Y. 1996) ("courts are wary of attempts to utilize Fed. R. Bankr. P. [sic] 2004 to avoid the

restrictions of the Fed.R.Civ.P."); *see also In re Enron Corp.*, 281 B.R. 836, 840 (Bankr.

S.D.N.Y. 2002) ("[O]nce an adversary proceeding or contested matter is commenced, discovery

should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004."). Courts

have been highly critical of the use of Rule 2004 to circumvent traditional discovery under the

Federal Rules of Civil Procedure (the "*Federal Rules*") because of "the distinction between the

broad fishing expedition-like nature of the Rule 2004 exam . . . and the more restrictive nature of

discovery under" the Federal Rules. *In re 2435 Plainfield Ave., Inc.*, 223 B.R. 440, 456 (Bankr.

D.N.J. 1998); *Snyder v. Society Bank*, 181 B.R. 40, 42 (S.D. Tex. 1994) ("The use of Rule 2004

to further its case in state court constitutes an abuse of Rule 2004.").

32.    Given the clear case law regarding the inapplicability of the automatic stay

to third party discovery, the language of the Confirmation Order, and the Debtors'

responsiveness to discovery requests, there is simply no need for the relief requested by the

---

[8]    The Discovery Motion notes pending litigation with respect to Ms. Montague (p. 10), Ms. Graves, (p. 11)
Ms. Crawford (p. 12) and Ms. Gordon (p. 13). Pursuant to the affidavit of their attorney, Ms. Kushnir Groman, Mr.
& Ms. Culpepper have claims pending in Cook County, Illinois. (Groman Aff ¶ 3.) Based on the pleading, Ms.
Dandridge is the only Individual Movant who may not have current litigation pending.

Individual Movants who have litigation pending, and, accordingly, the Debtors ask that the relief requested by these parties be denied.

**B.     The Discovery Motion Should Be Denied for Failure to Confer with Debtors' Counsel As Required By Local Rule 2004-1**

33.     Local Rule 2004-1(a) requires that counsel for the moving party shall attempt to confer with the proposed examinee's counsel to attempt to arrange for a mutually agreeable date, time, place and scope of the examination or production.  Del. L.R. 2004-1(a).  Borrowers Committee's counsel conferred with Debtors' counsel; however, the meet and confer was limited to only the relief requested in the Discovery Motion by the Borrowers Committee, and the Borrowers Committee failed or refused to disclose the identities of the Individual Movants.  Accordingly, *none* of the Individual Movants complied with the "meet and confer" requirement under Local Rule 2004-1 (nor did any of their counsel provide certification that a "meet and confer" was unnecessary).

34.     Circumstances like these are undoubtedly the impetus of the meet and confer requirement of Local Rule 2004-1(a).  As noted above, the Debtors have been complying with, and are willing to comply with, any third party discovery issued through the underlying litigations of the Individual Movants; thus, this filing is an unnecessary burden on this Court.  Moreover, with respect to the *sole* Individual Movant who does not have current litigation pending -- Ms. Dandridge—the Debtors provided her with her loan file over a year and a half ago and are unaware of any further information requests by Ms. Dandridge or her counsel.  Had counsel for Ms. Dandridge conferred with the Debtors as required by Local Rule 2004-1, the Debtors and Ms. Dandridge's counsel could have mutually agreed upon an appropriate scope for requests related to Ms. Dandridge's potential claims or defenses against third parties.

35.     Given the failure of the Individual Movants to communicate with the Debtors, the Rule 2004 request should be denied as premature.  To the extent that such parties

cannot reach an agreement, the Individual Movants could seek relief from the Court at a later

date on the narrow issues that remain in dispute.

**C.    The Proposed Actions By the Borrowers Committee
Are Inappropriate and Should Be Denied**

       *1.    The Borrowers Committee Does Not Have
Authority for the Relief Requested*

36.    The relief requested by the Borrowers Committee should be denied

because the Borrowers Committee lacks the authority to seek the relief requested in, or to

perform such actions proposed under, the Discovery Motion.  The Borrower Committee Scope

was limited by this Court to: "(i) matters relating to the chapter 11 plan and disclosure statement,

(ii) global stay relief on behalf of all borrowers in connection with foreclosures actions, and (iii)

any issues relating to the appointment of the Borrowers Committee and administrative matters

incidental to the foregoing . . . ." (Supplemental Order 2.)  The Borrowers Committee asserts that

its request to inspect all of the Debtors' records themselves is equivalent to the pursuit of global

stay relief on behalf of borrowers in connection with foreclosure actions.  This assertion defies

logic, especially given that (i) the Debtors advised that the relief requested in the Discovery

Motion was unnecessary because they are complying with third party discovery; (ii) the

Borrowers Committee appropriately cites caselaw that stay relief does not apply in the case of

third party discovery; and (iii) this Court has already provided global stay relief, to the extent

necessary, for actions to halt foreclosures and third party discovery in the Confirmation Order.

(*See* Confirmation Order ¶ 51).  Equally illogical is the Borrowers Committee's failure to

address payment for the expenses of its new request, especially in light of the fact that the

Borrowers Committee has not sought an increase in the Fee Cap,[9] or even filed a fee application for any period after March 31, 2009.

37.    Moreover, leave for filing the Discovery Motion, and any of the relief requested by the Borrowers Committee, should be denied because the actions that the Borrowers Committee and its counsel propose to take are wholly outside of the authority of *any* official committee.  By the Discovery Motion, the Borrowers Committee seeks to conduct discovery for the benefit of *individual borrowers* for causes of action against *third parties*.

38.    First, it is axiomatic that representation of a committee is not the same as representing the individual members of that committee. *E.g., In re Kensington Int'l Ltd.*, 368 F.3d 289 (3d Cir. 2004) (the duty of the committee and its counsel extents to the class as a whole, not to its individual members so while the committee had a duty to represent the collective interests of the represented class of creditors, it did not have the authority to bind each individual creditor); *see also In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 717 (Bankr. S.D.N.Y 1992) ("Counsel for the committee … do not represent any individual creditor's interests in [a] case; they were retained to represent the entire… class.  Therefore, counsel for the [ ] committee do not owe a duty to [one creditor] to maximize its interests at the expense of the remaining creditors in the represented class."); *In re Buffalo Coal Co.*, Case No. 06-366, 2008 Bankr. LEXIS 1259, *15 (Bankr. N.D.W.V. Apr. 30, 2008).  Accordingly, the Borrowers Committee has no authority to conduct discovery on behalf of individual borrowers.

39.    Second, the Borrowers Committee is seeking to conduct the discovery for causes of action against *third parties*.  Such actions are undoubtedly outside and independent of the Debtors' bankruptcy cases and, accordingly, not within the purview of an official committee.

---

[9]    The Debtors reserve their rights to contest any such increase. *See In re Eagle-Picher Indus., Inc.*, 167 B.R. 102, 103 (Bankr. S.D. Ohio 1994) (stating that not all services beneficial to creditors should be financed by the bankruptcy estate); *Johns-Manville Corp. v. Equity Sec. Holders Comm., A.F. (In re Johns-Manville Corp.)*, 52 B.R. 879, 882 (Bankr. S.D.N.Y.) (breach of committee member's fiduciary duty is "especially egregious to the extent has an individual receives advice and counsel from professionals paid with estate funds.")

*In re Commercial Mortgage*, 414 B.R. 389, 400 (Bankr. N.D. Ill. 2009) ("Section 1103 'does not

grant [the creditors committee] blanket authority to represent its constituency in matters outside

and independent of the bankruptcy case . . . a reasonable construction of § 1103(c)(5) is that a

committee can perform such other services *within the bankruptcy case* as are in the interest of

those represented."); *Johns-Manville Corp.*, 52 B.R. at 884 (denying equity committee authority

to commence action for a shareholder meeting, stating "[w]hile § 1103 contemplates a committee

taking an active role in the reorganization proceedings, it does not grant a committee blanket

authority to represent its constituency in matters outside and independent of the bankruptcy

case."); *see also Official Comm. of Tort Claimants v. Dow Corning Corp. (In re Dow Corning

Corp.)*, Case No. 97-1809, 1998 U.S. App. LEXIS 7123 (6th Cir. Apr. 6, 1998) (denying the tort

claimants committee's authority to provide legislative lobbying services regarding tort reform

despite the fact that the debtor was lobbying for legislation that would retroactively eliminate or

restrict certain causes of action which some tort claimants may have against the debtor).

      2.     *The Discovery Motion is Tantamount to*
                  *Reconsideration of the Confirmation Order*

    40.    Prior to confirmation, the Debtors voluntarily made modifications to the

Plan to address borrower specific issues, including the inclusion of the Borrower Information

Ombudsperson. (*See* Plan § 17.H.) Once appointed, the Borrower Information Ombudsperson

will be authorized, upon request from a borrower, to provide the borrower with a copy of his or

her loan file (less any portion of the file that is subject to confidentiality agreements with third

parties) and disclose the identity of the purchaser of such borrower's mortgage loan from the

Debtors and the servicer of such loan immediately following such sale. The Plan and

Confirmation Order expressly identifies the information and documents that the Borrower

Information Ombudsperson will be required to maintain and provides that the appointment of the

Borrower Information Ombudsperson is not to be construed as a prohibition of the Debtors or

Plan Trustee to seek authority from the Bankruptcy Court to abandon or destroy any Records by motion on notice to all interested Persons, with an opportunity to be heard. *Id.*

41.    As detailed in the background section above, the Borrowers Committee raised the same issues regarding the maintenance and destruction of documents relating to the third party litigation and the insufficiency of the Borrower Information Ombudsperson in its Plan Objection, Plan Reply and during the Confirmation Hearing.  The Court considered such objections and overruled them *in toto*.

42.    Despite being overruled by this Court at confirmation, the Borrowers Committee now reprises its objections to the adequacy of the Borrower Information Ombudsperson through the Discovery Motion by (i) seeking to expand the scope of the Borrower Information Ombudsperson to include the provision of additional documents deemed relevant by the Borrowers Committee and any other individual borrower, and (ii) prohibiting the destruction of burdensome documents through required maintenance by the Borrower Information Ombudsperson. [10]  (*See* Disc. Mot. 17) ("and, in any event, a Borrowers Information Ombudsperson would not necessarily be in position to provide borrowers with all documents needed to support their claims and defenses"); *Id.* at 24 ("the documents deemed to be most relevant will be held by the Debtors (and, later, the Borrower Information Ombudsperson)..."; (Proposed Order ¶ 7) (ordering that "Documents designated by either the Borrowers Committee or individual borrower Movants will be copied and held by the Debtors (and, upon the Plan becoming effective, the Borrower Information Ombudsperson) and made available to individual borrowers upon request.").  The attempts to reconsider the Confirmation Order is further

---

[10]    Notably, this is not the first attempt by the Borrowers Committee to belatedly seek reconsideration of the Borrowers Information Ombudsperson.  *See* Motion of Official Committee of Borrowers for Release of Funds [Docket No. 7619] (requesting this Court revisit the Plan to eliminate the appointment of a borrower ombudsperson and to convert the $50,000 fund provided for the ombudsperson's services to be used to investigate post-confirmation activities in these cases).  The motion was filed by unofficial counsel to the Borrowers Committee and subsequently withdrawn.

highlighted by the fact that the Debtors' offer to seek the immediate appointment of the

Borrower Information Ombudsperson was ignored.

43.     Put simply, there is no basis to reconsider the appointment of the

Borrowers Information Ombudsperson;[11] accordingly, the relief requested by the Discovery

Motion should be denied.

> 3.     *The Investigation by the Borrowers Committee Will Not Create Efficiency,
> But Rather Will Cause Duplication of Efforts at the Expense of the
> Debtors, Their Estates and Creditors*

44.     The Borrowers Committee has no personal or professional knowledge

regarding each and every individual borrower's loan transaction, and therefore, is unequipped to

perform an investigation into causes of action and defenses of all individuals with respect to third

parties.  As a result, any investigation by the Borrowers Committee will be unproductive, yet

costly to the Debtors' estates.

45.     Moreover, the Borrowers Committee does not have the authority to bind

the individual constituents of the class they represent.  *In re Kensington*, 368 F.3d at 315.

Therefore, this unfettered investigation of the records will not stop borrowers, either *pro se* or

represented by their own counsel, from issuing third party discovery against the Debtors or

requesting their own examination of the Debtors pursuant to Rule 2004.  Thus, the relief

requested by the Discovery Motion would serve no justifiable purpose, but will cause duplication

of efforts between the Borrowers Committee and individual borrowers and/or their counsel.

46.     Not only will the Borrowers Committee's efforts be duplicative of

individual borrower requests, it will also be duplicative of the Debtors' current efforts.  As the

Debtors respond to the formal and informal requests of borrowers and/or their counsel, the

Debtors are electronically saving the responsive documents on the Debtors' system (to the extent

---

[11]     A motion to reconsider is evaluated under Rule 9023 and Federal Rule of Civil Procedure 59(e), and it may be granted only (x) when there is (i) a clear error of law, (ii) newly discovered evidence, (iii) an intervening change in law; or (y) to prevent manifest injustice.  *See Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

not already held electronically), essentially creating the document database the Borrowers

Committee wants on a rolling basis. To the extent that additional documents are requested

through the third party discovery of the Individual Movants, as well as any other borrowers, the

Debtors will include such documents to the database. To the extent that documents are not

requested, the Debtors would submit that they are not relevant to the borrowers' claims and

defenses.

**D.      The Broad Language of the Proposed Order Lacks "Good Cause"
and Raises Consumer Privacy and Other Issues**

47.    Assuming *arguendo* that any of the relief requested by the Movants may

be appropriate, the breadth of Movants' request is so vast that the request lacks good cause. *See*

*In re Enron Corp.*, 281 B.R. at 842 (quoting *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr.

D. Mass. 1983) ("Despite the breadth of Bankruptcy Rule 2004, 'it must *first* be determined that

the examination is proper.'"). While the scope of a Rule 2004 examination is broad, it "is not

limitless; the examination should not be so broad as to be more disruptive and costly to the

debtor than beneficial to the creditor." *In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D. N.Y.

1987). Accordingly, a movant "must meet a threshold standard of 'good cause' before she will

be permitted to conduct examinations and require the production of documents." *In re*

*Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).

48.    The analysis for good cause can be broken down into two elements: (1)

the examination must be necessary to (a) establish a claim or (b) prevent undue hardship or

injustice, and (2) the cost must not outweigh the benefit. *In re Express One Int'l, Inc.*, 217 B.R.

at 215, 217 (Bankr. E.D. Tex. 1998) ("[G]ood cause requires a showing that the examination

sought is necessary to establish the claim of the party seeking the examination, or the denial of

such request would cause the proposed examiner undue hardship or injustice. Furthermore, if the

cost and disruption to the examinee attendant to a requested examination outweigh the benefits to

the examiner, the request should be denied." ).

49.     Before applying the *Express One* analysis to this case, it should be noted that the evidence necessary to support a showing of good cause varies based upon the facts of a case.  Tightly-focused inquiries that only involve dealings between the debtor and creditor are less intrusive, and require a lower level of good cause than inquiries that seek "far-reaching information on policies and procedures of general application," which require "a correspondingly higher showing of good cause" because of their inherently intrusive nature.  *In re Countrywide Home Loans, Inc.*, 384 B.R. at 393.  In this case, the burden imposed on the Movants must be high because they seek an unfettered review of all of the Debtors' documents.  Such a request is the epitome of "far-reaching information on policies and procedures of general application." *Id.*

50.     Here, the Movants do not satisfy the second element of the *Express One* analysis because the burden to the Debtors would far outweigh the benefit to the Movants of examining the documents requested (i.e., all of the Debtors' documents).  Without question, the Debtors' documents include confidential consumer information of borrowers including, but not limited to, names, addresses, social security numbers, bank accounts, credit reports and other financial information – as well as material that must remain confidential pursuant to third party confidentiality agreements (such as the corporate credit reports maintained by the credit reporting agencies).  As a result, the Debtors cannot simply open the door for any person wishing to examine the Debtors' records – they must first review each document and redact such confidential information.  Performing such a task on every document of the Debtors would be prohibitively burdensome and costly.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order (i) denying the

relief requested by the Discovery Motion, and (ii) granting such other relief as may be necessary.

Dated: August 09, 2010          YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
      Wilmington, Delaware

                                                */s/ Margaret Whiteman Greecher*
                                                Sean M. Beach (No. 4070)
                                                Margaret Whiteman Greecher (No. 4652)
                                                The Brandywine Building
                                                1000 West Street - 17th Floor
                                                P.O. Box 391
                                                Wilmington, Delaware  19899
                                                Telephone: (302) 571-6600
                                                Facsimile: (302) 571-1253

                                                Counsel to Debtors and Debtors in Possession