IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------X   Chapter 11
In re                                                            :
                                                                 :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDING, INC.,                            :
a Delaware corporation, et al.                                   :   Jointly Administered
                                                                 :
                                                      Debtors.   :   Hearing Date: 8/16/10 @ 10:00 am
                                                                 :
                                                                 :   Re: D.I. 9053
-----------------------------------------------------------------X
```

**REPLY OF OFFICIAL BORROWERS COMMITTEE AND CERTAIN INDIVIDUAL BORROWERS TO DEBTORS' AND UCC'S OBJECTIONS TO MOTION TO ALLOW BORROWERS TO PURSUE DISCOVERY IN FURTHERANCE OF CLAIMS AND DEFENSES AGAINST NON-DEBTOR THIRD PARTIES AND, IF NECESSARY, FOR RELIEF FROM THE AUTOMATIC STAY, AND REQUEST FOR INSPECTION OF DEBTORS' DOCUMENTS AND EXAMINATIONS CONCERNING DEBTORS' RECORDS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004**

The Official Committee of Borrowers (the "Borrowers Committee")[1] and certain individual borrower[2] movants[3] (together with the Borrowers Committee, the "Movants") respectfully submit this Reply Memorandum in support of their Motion To Allow Borrowers To Pursue Discovery In Furtherance Of Claims And Defenses Against Non-Debtor Third Parties And, If Necessary, For Relief From The Automatic Stay, And Request For Inspection of Debtors' Documents and Examinations Concerning Debtors' Records Pursuant To Federal Rule Of Bankruptcy Procedure 2004 (the "Motion").

---

[1] Pursuant to an order of this Court entered on October 10, 2008, the United States Trustee appointed the Borrowers Committee on October 21, 2010.
[2] Capitalized terms not otherwise defined herein have the meanings ascribed in the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan").
[3] The individual Borrower movants are: (1) Penny Montague; (2) Gracie Graves; (3) Marjorie Crawford; (4) Annie Gordon; (5) Linda and Johnny Culpepper; and (6) Florence Dandridge.

For many borrowers, the most valuable asset possessed by the estate is information that could be used to defend foreclosure actions and pursue claims against third parties. At least six individual borrower Movants are presently seeking such information and documents. Other borrowers may do so in the future. The Motion is an effort to obtain and preserve documents possessed by the Debtors in a coordinated and efficient manner that will minimize costs to the estate while ensuring that the Movants and other borrowers are not deprived of important information. Without the relief requested in the Motion, borrowers may never be able to efficiently identify and use documents that would be helpful in prosecuting their claims against non-Debtor third parties and asserting foreclosure defenses that could save their homes.

This Reply addresses arguments made by the Debtors and Official Committee of Unsecured Claimants (the "UCC") (together, the "Objectors") on five points: (1) the scope of discovery sought by the Movants; (2) the cost to the estate of the discovery sought by the Movants; (3) the Movants' satisfaction of their obligation to meet and confer with the Debtors; (4) the authority of the Borrowers Committee to file the Motion; and (5) the propriety of conducting examinations under Rule 2004.

## I. THE DEBTORS HAVE NEVER PRODUCED OR EVEN SEARCHED FOR MUCH OF THE INFORMATION SOUGHT IN THE MOTION

The Objectors contend that the Debtors have satisfied all borrower requests for information through their prior production of loan files and other selected documents. But the truth is that the Debtors have never produced, or even searched for, most of the documents sought by the Movants here. Most of the documents are in boxes that, upon information and belief, have not been opened for years (if ever). If the Debtors and UCC have their way, then nobody will *ever* have to search for or produce those documents in the future.

### A. The Debtors Divide-And-Conquer Strategy Is A Transparent Effort To Prevent Borrowers From Ever Seeing Important Documents.

The Debtors argue that each Movant borrower should be required to accept whatever third-party discovery can be obtained in his or her individual case. The Debtors' strategy is transparent: they want to argue in each individual case that the benefit of a thorough document search at the request of a single borrower would be outweighed by the large costs that the Debtors would incur in conducting such a search. The Debtors also hope that individual borrowers and their counsel will be too busy or too strapped for funds to make a serious effort to review the Debtors' documents, and will be persuaded to accept much more modest document productions.

The reality is that the Movants share the Debtors' concerns about unnecessary costs and inefficiencies. Such concerns are among the main reasons why several borrowers represented by legal services lawyers from across the United States have joined forces in an effort to streamline the document collection process. But when multiple borrowers act together, the cost-benefit analysis clearly favors searching for and producing the relevant documents.

As outlined in more detail in the Motion, the documents sought by the Movants may be very important to a large number of borrowers in cases against non-Debtor parties across the country. Indeed, the ability of many borrowers to keep their homes may turn on whether they can show that the Debtors were engaged in systematic practices that violated various consumer protection laws or resulted in defective mortgage assignments. The Debtors and UCC do not dispute the contentions of the six legal services lawyers who submitted declarations stating that documents in the Debtors' possession could be extremely helpful in defending individual foreclosure cases and pursuing claims against third parties.

Unfortunately, as a practical matter of economics, obtaining such documents may be difficult unless there is a coordinated effort to identify and preserve them. That is not an argument for keeping the documents hidden away. It is an argument for granting the relief requested in the Motion.

### B. The Movants Seek More Than Loan Files.

To date, the Debtors generally have been responsive in producing loan files, and they have produced a handful of documents that happen to be accessible electronically, but the Debtors have produced little else in response to borrower requests. Despite the bluster of the Objectors' oppositions, this is not even a disputed fact. Throughout these proceedings, counsel for the Debtors and UCC repeatedly have confirmed that many boxes of documents have not been searched in response to any discovery request by anyone.

As discussed in the declarations submitted by the six legal services lawyers in support of the Motion, categories of documents and information borrowers may need to support their claims and defenses against non-Debtors include the following:

- Documents describing American Home's relationships and business dealings with brokers;
- Communications regarding the origination and documentation of mortgage loans;
- Documents describing American Home's underwriting practices and procedures;
- Documents describing American Home's role in correspondent lending or its relationship with warehouse lenders;
- Marketing materials provided to homeowners and/or brokers;
- Documents regarding American Home's mortgage assignment practices and procedures, including documents concerning American Home's relationship with and authority provided to MERS; and
- American Home's document retention practices and document retention efforts.

Thus, in their individual cases, most of the individual borrower Movants plan to serve discovery that, upon information and belief, requests documents and information far beyond the scope of what the Debtors have produced to borrowers in the past. For example, Movant Penny Montague will serve

third-party discovery substantially in the form of the discovery attached hereto as Attachment A. *See* Winstead Declaration. Ms. Montague will request, among other things: (1) assignments and other documents that transfer or purport to transfer the ownership of any interest in her notes and trust deeds; (2) correspondence between American Home and any mortgage broker, signing service, title company, or escrow office, or any of their agents, regarding any of Ms. Montague's credit transactions; and (3) documents relating to any policies or internal procedures used by the Debtors: (a) to ensure that American Home and any originating brokers were in compliance with the Truth in Lending Act, including its rescission procedures, found at 15 U.S.C. § 1635; (b) to ensure that American Home's originating brokers, employees, and agents understood their duties in the event of a consumer's exercise of the extended right to rescind under the Truth in Lending Act; and (c) to inform American Home of possible violations of the Truth in Lending Act by its employees. Other individual borrower Movants will serve similar discovery requests.

While the Debtors contend that they already are satisfying borrowers' discovery requests, and that the Movants' requests here are therefore unnecessary, the Debtors also contend that the Movants requests are too broad, in that they potentially cover thousands of boxes of documents possessed by the Debtors. The problem with the Debtors' argument is that it is impossible for borrowers to know, without the cooperation of the Debtors, what to request and where to look for responsive documents. That is why an initial Rule 2004 examination is needed. Such an examination would benefit the borrower Movants and all other borrowers who may have a need in the future for access to the Debtors' documents that are relevant to foreclosure defenses and third-party claims.

The Debtors seem to be arguing that a borrower's request is overly broad if it seeks information that does not pertain to a specific borrower's loan or calls for the production of documents that have not already been scanned and indexed. To the extent that the Debtors are taking this position, it is untenable. Borrowers are entitled to information about the Debtors' practices in general. It does not matter whether the relevant documents already have been scanned and indexed or not. By way of example, certain individual borrower Movants may seek to establish a pattern and practice of illegal loan disclosure practices by the Debtors. Or they may seek to establish that the Debtors lacked an appropriate system for assigning mortgages to third parties. Or they may seek to establish that the Debtors failed to supervise brokers or gave brokers improper incentives. Those are important and legitimate areas of inquiry that are of great importance to the majority of borrowers facing foreclosure.

There is no reason to believe that all or even most of the documents relevant to those borrowers have been scanned and indexed. The importance of having someone search through the previously unsearched boxes is illustrated by the problems associated with the manual attached hereto as Attachment B and titled "Power ARM Selling Skills." This document indicates that the Debtors were targeting "retired persons" for payment option ARMs (*see* page 4) and contains a sales script that instructed American Home employees to downplay the negative amortization features of payment option ARMs (*see* page 57). This document was provided to the Borrowers Committee anonymously. *See* Winstead Declaration. When counsel for the Borrowers Committee asked Debtors' counsel to authenticate it, Debtors' counsel responded that the document was not included among the manuals that had been scanned and indexed. Many borrowers may benefit if someone looks in the Debtors' boxes to see whether this incriminating document was kept in the Debtors' files, or, perhaps, on the desks of the Debtors' sales force.

For a borrower facing foreclosure, finding proof that the Debtors had documents like the Power ARM Selling Skills manual could be valuable in much the same way that finding proof of insurance coverage under a general liability insurance policy can be valuable to a tort creditor seeking other sources of payment for a personal injury claim. For particular types of claimants, papers that have no value to most creditors can turn out to be extremely important.

Finally, Debtors also argue that the Motion should not be granted because the order confirming the Debtors' Plan of liquidation provides sufficient relief. However, the Plan is not effective at this time. Even if it were on the verge of becoming effective, the Debtors have not shown that, once appointed, the Plan Trustee and Borrowers Information Ombudsperson actually would provide the information at issue.

## II. THE COST TO THE ESTATE OF ALLOWING THE DISCOVERY SOUGHT BY THE MOVANTS WILL BE MINIMAL COMPARED TO THE POTENTIAL BENEFITS TO BORROWERS

The Debtors and UCC also object to the Motion based on the costs the estate will incur in responding to the discovery sought by borrowers and the alleged potential delay of the Plan's effective date that such discovery could cause. Those objections are unsubstantiated.

The document review described in the Motion, as well as parts (if not all) of the Rule 2004 examinations will be conducted by the individual Movants' counsel. The individual Movants' counsel are legal services lawyers who will not seek compensation from the estate for their time. The costs of scanning relevant documents will be borne by the legal services organizations that represent the individual Movants. (They regard this as a very important undertaking and are in the process of securing funds for this purpose.)

The main expenses to the estate, if the Motion is granted, likely would be: (1) making a records custodian available for two Rule 2004 examinations; and (2) identifying documents that are potentially

responsive to borrower discovery requests and making them available for review. A coordinated review[4] of a large volume of potentially relevant documents by the individual Movants' counsel will save the Debtors and the borrowers the time and effort that they otherwise would incur in satisfying multiple borrower discovery requests, many of which will overlap, seriatim.

The Debtors have not quantified the costs that they believe they will incur if the Motion is granted. In addition, there is simply no support for the Objectors' bald assertion that the discovery requested by the Movants would affect the Plan's effective date.

There is really only one scenario under which denying the Motion would save the estate money, and that is if the Debtors never are forced to make their documents available to any borrower in any case. That simply is not a justifiable outcome when the Debtors are notorious for their origination of tens of thousands of payment option ARM mortgages and other allegedly predatory mortgage products, and borrowers across the country may need the Debtors' documents in order to stay in their homes.

### III. THE MOVANTS SATISFIED THEIR OBLIGATION TO MEET AND CONFER WITH THE DEBTORS

Prior to filing the Motion, counsel for the Borrowers Committee provided the Debtors with a copy of the Proposed Order and participated in a call with the Debtors. Borrowers Committee counsel informed the Debtors during a July 8, 2010 conference call that the relief described in the Proposed Order would be sought by six individual borrower Movants who had authorized the Borrowers Committee to speak on their behalf during the meet-and-confer process. The Debtors admit that during the July 8, 2010 conference call they indicated that they would oppose the Motion for the reasons eventually stated in their objections. Debtors' Objection at 10-11.

---

[4] The Debtors contend that they cannot allow borrowers to conduct a review of potentially relevant materials due to existing confidentiality agreements and consumer privacy regulations. The Borrowers Committee and individual borrower Movants believe that the Debtors' confidentiality and privacy concerns can be resolved through an agreement that would govern borrowers' review of the Debtors' documents and limit the dissemination of sensitive information.

No further efforts to meet and confer were required. In any case, the Objectors' complaints about the meet-and-confer process are moot because counsel for two individual borrower Movants (Ms. Montague and Florence Dandridge) have met and conferred with the Debtors since the Objectors filed their objections and the Debtors have given no assurances that the information requested will be made available to any borrowers at any time. This result should come as no surprise. The Debtors' opposition to the Motion is not specific as to any individual borrower, and the Debtors plainly would have opposed the Motion even if they had conducted six individual conferences with counsel to each of the individual Movants. Their argument that six separate conferences should have been held underscores the inefficiencies for borrowers that the Debtors are trying to perpetuate.

## IV. THE BORROWERS COMMITTEE WAS PREVIOUSLY AUTHORIZED TO SEEK GLOBAL STAY RELIEF AND SHOULD BE PERMITTED TO FILE THE MOTION

The Objectors attempt to distract the Court from the merits of the Motion by suggesting that the Borrowers Committee has exceeded the scope of its authority in bringing the Motion. As discussed in the Motion, the discovery sought will be used by borrowers, including certain of the individual borrower Movants, to defend foreclosure actions. The Court previously authorized the Borrowers Committee to pursue global stay relief on behalf of all borrowers, and the need for global stay relief is readily apparent here. Many borrowers have filed proofs of claim against the Debtors. In some individual lawsuits, the Debtors are not parties in interest, but they are named as third-party defendants. Under the circumstances, lawyers representing individual homeowners easily could be uncertain about whether they are permitted to proceed with discovery without permission from this Court.

Furthermore, to the extent that the relief sought by the Borrowers Committee in the Motion exceeds the scope of its authority, the Borrowers Committee has respectfully asked that the Court grant it authority to seek such relief. As noted above, from the perspective of many borrowers, the Debtors'

documents are the most valuable assets in the Debtors' estates. (Supporting a foreclosure defense with documentary evidence is likely to be far more valuable to a homeowner than collecting pennies on the dollar on a consumer protection claim asserted directly against the Debtors.) It is therefore appropriate for the Borrowers Committee, which is uniquely responsible for looking out for the welfare of all borrowers, to file a Motion seeking relief that would allow all borrowers to take advantage of these critically important estate assets. Indeed, it is not at all clear that the documents at issue would even be preserved, let alone searched and produced, absent the pending Motion.

## V.   THE REQUESTED RULE 2004 EXAMINATIONS ARE PROPER

Committees and individual claimants often take Rule 2004 examinations. As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for discovering assets, examining transactions and determining whether wrongdoing has occurred. *In re Enron Corp.*, 281 B.R. 836, 840 (S.D.N.Y. 2002). The Movants want to conduct Rule 2004 examinations concerning documents possessed by the Debtors that are valuable assets of the estate. The fact that these documents may not strike the Debtors or UCC as particularly valuable does not mean that they are improper subjects of a Rule 2004 examination.

Contrary to the Debtors' contentions, the requested Rule 2004 examinations are not an effort by the Movants to conduct an end run around the applicable procedural rules in their underlying cases. Rather, for most of the Movants, the examinations have been requested to facilitate an efficient use of the discovery mechanisms that the Debtors say the Movants should be utilizing. Once borrowers better understand the universe of documents possessed by the Debtors, they will be able to focus their efforts to identify, locate, authenticate and obtain through a cooperative production process the documents and information that are relevant to their claims and defenses. The Rule 2004 examinations requested here are not meant to supplant traditional discovery mechanisms, but rather to complement them.

There are several important differences between this case and many of the cases cited by the Debtors for the proposition that a Rule 2004 examination cannot properly be conducted when there is pending litigation. First, the pending litigations outside of the Bankruptcy Cases involving five of the individual Movants do not involve the Debtors (except where the Debtors are nominal defendants). This Court has recognized that the "pending proceeding" rule relied upon by the Objectors does not preclude a Rule 2004 examination of an entity that is not a party to the pending non-bankruptcy litigation. *See In re Washington Mutual, Inc.*, 408 B.R. 45, 51-53 (Bankr. D. Del. 2009) (holding that debtors were allowed to take a Rule 2004 examination of an entity where information obtained could be used in litigation in which the examinee was not a party). Second, the purpose of the Rule 2004 examinations here is not to explore substantive topics with the witnesses, but rather to identify repositories of documents and, while knowledgeable witnesses may still be available, authenticate such documents. Third, to the extent that the Borrowers Committee participates in the Rule 2004 examinations, it will act for the benefit of all borrowers, including many who have no pending litigation against the Debtors or any other party. The Borrowers Committee itself is not in litigation with any party. Again, the "pending proceeding rule" simply does not apply here.

We also note that Movant Dandridge is not currently in litigation because foreclosure proceedings have not yet been initiated against her. She simply does not have any alternative discovery mechanisms available to her. Therefore, even if the Debtors' narrow understanding of Rule 2004 were correct, their arguments would not justify their effort to preclude Ms. Dandridge (or any other borrower who is not in litigation) from conducting the requested Rule 2004 examinations. The Debtors' documents are plainly valuable to her, and she is properly attempting to have her counsel inspect and copy them.

## VI. CONCLUSION

Because borrowers continue to need access to a variety of American Home documents that may be relevant to their claims and defenses against non-Debtor third parties, the Motion should be granted.

Dated: Wilmington, Delaware
       August 12, 2010

ZUCKERMAN SPAEDER LLP

_____
Thomas G. Macauley (ID No. 3411)
919 Market Street, Suite 990
Wilmington, DE 19801
Telephone: (302) 427-0400
Facsimile: (302) 427-8242

- and -

GILBERT LLP
Stephen A. Weisbrod
W. Hunter Winstead
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
Telephone: (202) 772-1962
Facsimile: (202) 772-3962

Attorneys for the Official Committee of Borrowers

AARP MARYLAND
Rawle Andrews Jr.
200 St. Paul Place, Suite 2510
Baltimore, Maryland 21202
Telephone: (410) 895-7601
Facsimile: (410) 837-0269

Attorneys for Gracie Graves

LEGAL ASSISTANCE FOUNDATION OF
METROPOLITAN CHICAGO
Peter Bibler
111 West Jackson Boulevard, 3rd Floor
Chicago, Illinois 60604
Telephone: (312) 341-1070
Facsimile: (312) 341-1041

Attorneys for Annie Gordon

LEGAL ASSISTANCE FOUNDATION OF
METROPOLITAN CHICAGO
Tamara F. Kushnir Groman
111 West Jackson Boulevard, 3rd Floor
Chicago, Illinois 60604
Telephone: (312) 341-1070
Facsimile: (312) 341-1041

Attorneys for Johnny and Linda Culpepper

OREGON LAW CENTER
Hope Del Carlo
921 SW Washington, Suite 516
Portland, Oregon 97205
Telephone: (503) 295-2760

Attorneys for Penny Montague

SOUTH BROOKLYN LEGAL SERVICES
Meghan Faux
105 Court Street, 3rd Floor
Brooklyn, New York 11201
Telephone: (718) 237-5500
Facsimile: (718) 855-0733

Attorneys for Marjorie Crawford

STATEN ISLAND LEGAL SERVICES
Margaret Becker
36 Richmond Terrace, Ste. 205
Staten Island, New York 10301
Telephone: (718) 233-6480
Facsimile: (718) 448-2264

Attorneys for Florence Dandridge