UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------ X   Chapter 11
In re                                                                        :
                                                                                   :   Case No. 07-11047 (CSS)
American Home Mortgage Holdings,           :
Inc., *et al.*,                                                          :   (Jointly Administered)
                                                                                   :
                                              Debtors.            :
------------------------------------------------------ X

**OPPOSITION OF U.S. BANK, N.A. (F/K/A PARK
NATIONAL BANK)  TO DEBTORS' MOTION TO COMPEL**

U.S. Bank National Association, as successor in interest to Park National Bank ("U.S. Bank"), by its attorneys, Womble Carlyle Sandridge & Rice, PLLC and Aronauer, Re & Yudell, LLP, objects to Debtors' motion to compel (the "Motion"), and respectfully represents as follows:

**Preliminary Statement**

1.        As the Court may recall, U.S. Bank was the owner and holder of the first mortgage lien of property owned by Debtors located in Mount Prospect, IL (the "Mortgaged Property").  By motion dated October 28, 2009, Debtors first sought recovery of certain real estate taxes from the Mortgaged Property under § 506(c) of the Bankruptcy Code.  On or about March 9, 2010, without seeking the permission of the Court and after the motion had been submitted to and argued before the Court, Debtors filed an Amended Motion under § 506(c) of the Bankruptcy Code.  Debtors' Amended Motion seeks recovery of substantial additional expenses and fails to mention or provide U.S. Bank with a credit for more than $335,000 in rents collected from the Mortgaged Property by Debtors.

2.	Debtors' current Motion is nothing more than an attempt to conduct a fishing expedition well beyond the bounds of the discovery parameters set forth by the Federal Courts.  In this contested matter, Debtors are not granted the virtually boundless breadth of a Bankruptcy Rule 2004 examination.  Instead, their requests are judged by the much stricter standards of Bankruptcy Rule 7026.  Debtors must show some relevance to the documents they are seeking, and that is something they are unable to do.  When the Court looks past the hyperbole, the Court will find that U.S. Bank has timely produced to Debtors all relevant documents in U.S. Bank's possession.

**Argument**

3.	While Debtors' Motion seeks to mislead the Court into believing that there are numerous documents which U.S. Bank has withheld without cause, that is not true.  Rather, there is a single category of documents on which the parties have a difference of opinion.  All other documents referenced by Debtors in their Motion, to the extent that U.S. Bank has such documents, have been produced to Debtors.

4.	Debtors' Motion references four categories of documents where U.S. Bank's document protection has allegedly been deficient.  Specifically, Debtors refer to (1) internal and external correspondence, (2) documents referred to in the original production but not produced, (3) documents in Park National's internal files (ie., the "credit file"), and (4) documents which post-date the Debtors' abandonment of the Mortgaged Property on December 31, 2009 which relate to the mortgage foreclosure action.  Each of these categories is addressed below.

**All Documents In The First**
**Three Categories Have Been Produced**

5.  Debtors' complaints revolve around both the timeliness of U.S. Bank's production and the completeness of the production. Debtors are mistaken on both points. In terms of timeliness, there is no basis to chastize, much less sanction, U.S. Bank for its production of documents on August 3, 2010 (and an additional production on August 11, 2010) in light of the timing of this action and Debtors' own actions with respect to its document production. While Debtors spend much time complaining about U.S. Bank's August 3, 2010 supplemental production of documents, Debtors fail to mention their own supplemental production of documents on August 5, 2010. A copy of the letter from Debtors' counsel concerning this supplemental production is annexed hereto as Exhibit B.

6.  Moreover, the Scheduling Order in this case was not entered until July 22, 2010. U.S. Bank has completed its remaining document production (other than those documents in dispute) within a very short period of time after the Scheduling Order was entered.

7.  Further, U.S. Bank's supplemental productions have been small. Debtors' Motion acknowledges that the August 3, 2010 production only consisted of twenty-two pages. The August 11 production consisted of only twenty-six pages. Certainly, Debtors have not been unduly burdened or prejudiced in their review of these small document productions.

8.  While Debtors' assert that U.S. Bank has not produced its "credit file," Debtors' motion disproves their claim. Debtors have in their possession (and attached to their motion) the memorandum to the credit file which was produced from the file. Thus, this claim makes no sense.

9. The other specific documents mentioned by Debtors in their motion have all been produced, to the extent they exist, except for one document which involves the fourth category of documents discussed below.

**The Fourth Category --
The Post-Abandonment Documents**

10. The fourth category of documents at issue concern documents which can have no possible relevance to the matters at issue in this contested matter. As the Court may recall, on December 31, 2009, Debtors abandoned the Mortgaged Property in accordance with the Order of this Court dated December 17, 2009. A copy of this Order is annexed hereto as Exhibit A. Debtors do not (and can not) make any claim for expenses incurred after December 17, 2009 pursuant to the terms of this Order.

11. Despite this established fact, Debtors seek production of documents concerning the operations of Mortgaged Property after the December 17, 2009 deadline and after their December 31, 2009 abandonment of the Mortgaged Property. Among other documents, Debtors seek production of documents related to the mortgage foreclosure action commenced by U.S. Bank and the actions of the court-appointed receiver in the mortgage foreclosure action. How these documents can have any bearing on Debtors' right to surcharge U.S. Bank is unknown and has never been explained by Debtors.

12. These documents can have no possible relevance to the claims or defenses in this contested matter since Debtors are not making any claim for reimbursement of expenses after they abandoned the Mortgaged Property. Such a proposition would, in fact, be absurd since following abandonment, Debtors would not have incurred any additional expenses related to the

4

Mortgaged Property and are barred from charging U.S. Bank with any such expenses by the December 17, 2009 Order .

13. Debtors misleadingly assert that U.S. Bank's objection to the production of these post-abandonment documents is a new objection allegedly first made in an early August conference call. That is not true. U.S. Bank's Responses and Objections to Debtors' Interrogatories and document requests (the "Responses") clearly set forth U.S. Bank's Objections on the grounds of relevance. A copy of the Responses is annexed hereto as Exhibit C.

14. For example, in response to Debtors' Interrogatory No. 5 concerning U.S. Bank credit bidding, U.S. Bank responded as follows:

> Identify the amount(s) You intend(ed) to credit bid at any auction of the Property.
>
> Response: This request is not relevant to the matters at issue. As such, no response is required.

15. Similarly, in response to Document Request No. 2, U.S. Bank responded as follows:

> All Documents concerning the Property, including, but limited to Documents that refer or relate to any alleged default of the Debtors' under the Note, Park National's intent to credit bid at any auction of the Property, the Sale of the Property, the Rents, Park National's security interests under the Note, and any extensions of the maturity date under the Note.
>
> Response: Park National objects to this Request as oppressive, unduly burdensome, requesting information not relevant to the issues in dispute and not reasonably calculated to lead to the discovery of relevant evidence.

16. That U.S. Bank was not producing documents in response to this request was clear. When U.S. Bank was stating objections but still producing documents, its responses stated: "Notwithstanding and without waiving the General Objections, Park National refers

Debtors to the documents accompanying this Response." No such statement was included in response to Document Request No. 2.

17. Thus, since U.S. Bank made its objections to the requested discovery in April, Debtors cannot claim surprise or delay by U.S. Bank in August.

18. Debtors correctly note in their Motion that one of the issues in this contested matter is whether U.S. Bank was oversecured at the time the claimed expenses were incurred by Debtors. As the Court may recall, it is U.S. Bank's position that since U.S. Bank was oversecured when all of the claimed expenses were incurred, the payment of those expenses did not primarily benefit U.S. Bank. See In re Flagstaff Foodservice Corp., 762 F.2d 10, 12 (2d Cir.1985) (quoted with approval by the 3rd Circuit in C.S. Associates, 2 29 F.3d 903, 906 (3d Cir. 1994)).

19. Indeed, the mere fact that U.S. Bank was extremely oversercured at the time Debtors' bankruptcy petition was filed should dispose of this issue. That is because if the Mortgaged Property were liquidated at that time, U.S. Bank would have been paid in full. See, e.g., In re Glen Eden Hospital, Inc., 202 B.R. 589, 590 (Bankr. E.D. Mich. 1995) (rejecting claim for § 506(c) surcharge where secured creditor fully secured at time the petition was filed). Thus, all of the post-petition payments did not benefit U.S. Bank. Rather, Debtor paid those post-petition expenses for its own benefit to protect Debtors' equity in the Mortgaged Property. See, e.g., In re Glen Eden Hospital, Inc., 202 B.R. 589, 590 (Bankr. E.D. Mich. 1995) (rejecting claim for § 506(c) surcharge where secured creditor fully secured at time the petition was filed).[1]

---

[1] While Debtors assert in a footnote that the valuation date is irrelevant at this stage, U.S. Bank disagrees. Indeed, in the absence of direction from the Court as to the appropriate valuation date, the parties will be unable to appropriately prepare for trial.

6

20. Debtors make a naked assertion that the foreclosure sale of the Mortgaged Property in May 2010 is somehow relevant to the matters at issue in this contested matter. However, Debtors submit nothing to support this assertion. As stated above, the only relevant date is August 7, 2007, the date the Debtors' Petition was filed.

21. Even if the Court were to select a later date for valuation, in order to provide a benefit to U.S. Bank, an expenditure by Debtors must still have been made at a time when U.S. Bank was undersecured. If U.S. Bank was oversecured when the expenditure was made by Debtors, then the expenditure primarily benefitted Debtors by preserving Debtors' equity in the Mortgaged Property. Any benefit to U.S. Bank would only have been indirect and would not support a 506(c) claim.

22. If Debtors were making a claim for reimbursement of expenses incurred in or around May 2010, which they are not, then the value of the Mortgaged Property in May 2010 may have some relevance. However, even under that scenario the relevance would be extremely limited because the foreclosure sale was nothing more than a distressed sale which is not a true indicator of value. See, e.g., Till v. SCS Credit Corp., 541 U.S. 465, 502-503, 124 S.Ct. 1951, 1975 (2004) (noting that in forced liquidation, creditor "receives only a lesser foreclosure value because collateral markets are not perfectly liquid"); In re Richardson, 23 B.R. 434 (Bankr. UT 1982) ("[T]he price obtained at foreclosure is weak evidence of value."); cf. In re American Home Mortg. Holdings, Inc., 411 B.R. 181, 190 (Bankr. Del. 2009) ("if the market is currently disrupted or dysfunctional it may not fairly reflect the potential sale price of an asset"). However, the Debtors did not incur any expenses in 2010 since the Mortgaged Property was abandoned more than five months prior to the foreclosure sale. Further, the December 17, 2009

7

Order relieved Debtors of any obligation to maintain the Mortgaged Property and barred Debtors from seeking to hold U.S. Bank liable for any expenditures made after that date.

23. Accordingly, there is no relevance to the documents requested by Debtors concerning the mortgage foreclosure action. They have no bearing on the issues in this contested matter, and U.S. Bank should not be obligated to produce them.

**There Is No Basis for Sanctions**

24. U.S. Bank has timely complied with its discovery obligations. U.S. Bank produced the large majority of its documents voluntarily in April, months prior to the entry of the Scheduling Order. Other than the irrelevant, post-abandonment documents, U.S. Bank has produced all responsive documents in its possession.

25. That U.S. Bank produced 2 small supplemental productions on August 3 and August 11 is not the basis to award sanctions. The Scheduling Order had only been entered on July 22, and Debtors were still making their own supplemental productions, including one on August 5.

26. While Debtors mention in a footnote U.S. Bank's failure to produce a privilege log, Debtors have never requested a privilege log from U.S. Bank. Further, Debtors have not produced a privilege log with respect to their own production despite having marked numerous pages in their production as "redacted."

**Conclusion**

Based upon all of the foregoing, it is clear that U.S. Bank has appropriately complied with its discovery obligations. There is no relevance to the post-abandonment documents, and thus they need not be produced. Even if the Court were to direct U.S. Bank to produce the post-abandonment documents, there is certainly no basis for an award of sanctions or attorneys fees in light of the bona fide nature of the dispute concerning the relevance of those documents. Accordingly, Debtors' Motion should denied in its entirety.

Dated: August 13, 2010

                                                  Womble Carlyle Sandridge & Rice, PLLC

                                                  By: /s/ Michael Busenkell
                                                        Michael Busenkell (Del. Bar No. 3933)
                                                222 Delaware Avenue, Suite 1501
                                                Wilmington, DE 19801
                                                Telephone # (302) 252-4324

                                                And

                                                Aronauer, Re & Yudell, LLP
                                                Kenneth S. Yudell, admitted Pro Hac Vice
                                                444 Madison Avenue, 17th Floor
                                                New York, New York 10022
                                                Telephone # (212) 755-6000

                                                *Attorneys for Park National*