**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al.*,[1] | Case No. 07-11047 (CSS) (Jointly Administered) |
| Debtor. | **Hearing Date: 9/23/2010 at 11:30 a.m. (ET)** **Objection Deadline: 9/13/2010 at 4:00 p.m. (ET)** |

**MOTION OF QUANTITATIVE RISK MANAGEMENT
INCORPORATED FOR ALLOWANCE OF ADMINISTRATIVE
EXPENSE CLAIM UNDER 11 U.S.C. § 503(b)(1)(A)**

Quantitative Risk Management Incorporated ("QRM"), an administrative creditor in the above-captioned jointly administered bankruptcy cases (the "Case"), by and through undersigned counsel, hereby moves (the "Motion") for allowance of an administrative expense claim in the amount of $262,663.04 for unpaid post-petition services and software provided by QRM to one or more of the captioned debtors[2] ("AHM"). In support of this Motion, QRM respectfully states as follows:

**JURISDICTION**

1.    On August 6, 2007 (the "Petition Date"), AHM and its co-debtors (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.    The Court has jurisdiction over the subject matter of this motion pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding arising under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") that the Court has

---

[1]  The Debtors in these cases are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.); American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

authority to hear and determine within the meaning of 28 U.S.C. § 157(b)(2)(8). The statutory predicate for the relief sought herein is 11 U.S.C. § 503(b)(1)(A).

3.      On February 23, 2009, this Court entered its Order (Docket No. 7042) confirming the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009* (Docket No. 6942) (the "Plan"). Pursuant to Article 14(A)(14) of the Plan, this Court retained jurisdiction "over requests for allowance and/or payment of Claims entitled to priority under § 507(a)(2) of the Bankruptcy Code and any objections thereto."

4.      This Motion is timely filed in that the "Administrative Claims Bar Date" (as defined in the Plan) has not occurred.

### RELEVANT HISTORY

5.      On or about September 1, 2004, QRM and the "American Home Mortgage and Affiliates" entered into that certain Mortgage Risk Management System Service Agreement, pursuant to which, *inter alia,* QRM agreed to provide the Debtors with interest rate risk management advisory services and related software for a specified period (as amended, restated, supplemented or otherwise modified from time to time, the "Agreement")[3]. The Agreement further provided that the "term" would be automatically extended for one-year renewal periods unless terminated by written notice by either party 30 days prior to the end of the then-current term. No notice of termination was provided by either party.

6.      Pursuant to the Agreement, QRM provided necessary and valuable services to AHM with respect to (a) valuing the risk levels of its mortgage portfolio, and (b) monitoring its mortgage trade positions. Without QRM's continued services post-petition, AHM would have (a) experienced serious impediments to (i) understanding its rapidly-changing risk position with

---

[3]   Due to confidentiality provisions contained in the Agreement, a copy of the Agreement has not been attached hereto, but can be provided for *in camera* inspection upon the Court's request.

respect to its mortgage assets and (ii) the valuation and orderly liquidation of its mortgage assets and/or (b) incurred significant expenses related to the acquisition of alternative risk assessment and valuation tools.  AHM was in the business of originating and purchasing mortgages and packaging such mortgages into securitized pools that were later sold.  As part of that process, AHM would develop an inventory of individual mortgages until such time that the inventory was large enough to meet securitization standards.  In order to protect itself from adverse changes in the value of the mortgages held in inventory, AHM would enter trades intended to hedge its interest rate exposure.  QRM's services were utilized to assess the level of risk of the AHM mortgage inventory, price and track the hedges that AHM had entered into.  In addition, to the benefits delivered in the normal course of business, these activities as delivered after the date of filing enabled AHM to perform an orderly and expedited liquidation of its trade positions and mortgages.

7.    In consideration of QRM providing services and software, the Debtors agreed to pay, in advance, a monthly service fee ("Monthly Service Fee") each quarter to QRM. Following the initial term of the Agreement, QRM was permitted to increase the then-current Monthly Service Fee.  QRM provided renewal options to AHM on March 22, 2007 with terms that ranged from the one-year auto-renewal to several years.  In exchange for the longer term renewals, QRM provided more favorable pricing.  After several inquiries on the part of QRM, QRM provided notice to AHM May 25, 2007 that it was defaulting to the one-year proposal it had sent.  On June 13, 2007 AHM responded, asking to whom the invoice would be sent.

CHICAGO/#2103588.5
#13101887v1

8.      From the Petition Date through January 31, 2008 (the day it ceased operating), AHM continued to use QRM's services under the Agreement at historically normal usage rates[4].

9.      As of the date of this Motion, the following amounts are due and owing by AHM to QRM, and are now overdue for payment:

| Period | Amount Due |
|---|---|
| August 6, 2007 – October 31, 2007 | $127,663.04 |
| November 1, 2007 – January 31, 2008 | $135,000.00 |
| **TOTAL** | **$262,663.04** |

10.      Thus, the total amount due and owing by AHM to QRM through January 31, 2008, the end of the term of the Agreement, is $262,663.04.  AHM has failed to pay that amount to QRM.

## RELIEF REQUESTED

### I.      Allowance and Payment of Administrative Expense

11.      Under 11 U.S.C. § 503(b)(1)(A):

(b) After notice and a hearing, there shall be allowed administrative expenses . . . , including —

(l)(A) the actual, necessary costs and expenses of preserving the estate . . . .

11 U.S.C. § 503(b)(1)(A) ("503(b)(1)(A)").

12.      "[A] debt qualifies as an [administrative expense under 503(b)(1)(A)] only if (1) it arose from a transaction with the bankruptcy estate and (2) directly and substantially benefitted the estate."  In re Sunarhauserman, Inc., 126 F.3d 811, 816 (6th Cir. 1997), citing In re White Motor Corp., 831 F.2d 106 (6th Cir. 1987).  However, as courts have recently noted, the debtor's

---

[4]  QRM can monitor the Debtors' usage of its software.  Similarly, QRM keeps logs of service calls requested by the Debtors.  Both of these factors evidence that the Debtors postpetition usage was consistent with its historical prepetition usage.  A former employee of AHM has also confirmed in documented communications that AHM continued to use and rely on QRM's services postpetition.  Upon request from the Court, the former employee will provide an affidavit to this effect.

post-petition use of services is independently sufficient to establish that such use is an actual, necessary expense of preserving the debtor's estate.  In re Goody's Family Clothing, Inc., 392 B.R. 604, 614 (Bankr. D. Del. 2008) (holding that post-petition occupation of non-residential real property established that payment for such use was an actual, necessary expense of preserving the debtors' estates), citing See Zagata Fabricators, Inc. v. Superior Air Prods., 893 F.2d 624, 627 (3d Cir. 1990); In re Garden Ridge Corp., 321 B.R. 669, 676 (Bankr. D. Del. 2005); In re DVI, Inc., 308 B.R. 703, 708 (Bankr. D. Del. 2004); In re ZB Co., Inc., 302 B.R. 316, 319 (Bankr. D. Del. 2003); In re HQ Global Holdings, Inc., 282 B.R. 169, 173 (Bankr. D. Del. 2002).

13.    The requirement that there be a transaction with the debtor is satisfied here.  All interest rate risk management advisory services and software provided by QRM to AHM were provided under the terms of the Agreement.  Therefore, all services and software QRM provided to AHM on and since the Petition Date represent a series of transactions with AHM.  In re Goody's Family Clothing, Inc., 401 B.R. 656, 671 (D. Del. 2009) ("To be eligible for administrative expense priority, a post-petition transaction need not involve the exchange of money or formation of a contract.  Indeed, a claimant's performance of a pre-petition contract, and a debtor's acceptance of that performance, can establish a post-petition transaction.").

14.    Likewise, the services that QRM provided to AHM on and after the Petition Date represent an actual, necessary expense of preserving the estate.  Thus, the consideration supporting QRM's rights to payment under the Agreement and Amendment was beneficial to the estate.  As noted above, when a debtor makes use of a party's services post-petition, that use in and of itself, and without the need for further inquiry, establishes that such use was an actual, necessary expense of preserving the estate.  In this case, post-petition, AHM used QRM's

- 5-

services under the Agreement at historically normal usage rates.  Thus, the services that are the subject of this Motion provided a benefit to the estate.

15.    Therefore, having satisfied the requirements of Bankruptcy Code section 503(b)(1)(A), it is appropriate for this Court to allow an administrative expense in the amount of $262,663.04, representing the value of post-petition services AHM owes QRM through January 31, 2008.

### NOTICE

16.    Notice of this Motion has been provided to: (1) counsel to the Debtors; (2) the Office of the United States Trustee; and (3) all parties who have noted their appearances pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  QRM submits that no further or other notice is required.

WHEREFORE, QRM respectfully requests that the Court enter an order, in substantially the form attached hereto as Exhibit A (a) granting this Motion and allowing QRM's administrative expense in the amount of $262,663.04; (b) ordering that payment of such administrative expense be made in accordance with the Plan; and (c) granting such other and further relief as may be just and proper.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

CHICAGO/#2103588.5
#13101887v1

Dated: August 27, 2010
      Wilmington, Delaware

PEPPER HAMILTON LLP


By:  /s/ Evelyn J. Meltzer
Henry Jaffe (DE Bar No. 2987)
Evelyn J. Meltzer (DE Bar No. 4581)
Hercules Plaza, Suite 5100
1313 North Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

-and-

Michael M. Eidelman, Bar No. 06197788
VEDDER PRICE P.C.
222 North LaSalle Street
Suite 2600
Chicago, IL  60601-1003
Telephone:  (312) 609-7500
Facsimile:  (312) 609-5005

*Attorneys for Quantitative Risk Management, Inc.*