IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>**Objection Deadline: September 15, 2010 at 4:00 p.m.**<br>**Hearing Date: September 23, 2010 at 11:30 a.m.**<br><br>**Docket Ref. No. 8665** |

## DEBTORS' MOTION TO EXCLUDE
## EXPERT TESTIMONY AND REPORTS OF STEVEN S. ALBERT

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby move for entry of an order, in the form attached hereto as Exhibit A, excluding from evidence the expert testimony and report(s) of Steven S. Albert, the proposed expert witness Park National Bank and Trust of Chicago, the predecessor to North Star Trust Company, as successor-trustee to Park National Bank and Trust Company of Chicago ("Park National"), has allegedly retained in connection with Debtors' Section 506(c) Motion (as defined below). In support of this motion (the "Motion"), the Debtors respectfully state as follows:

### PRELIMINARY STATEMENT[1]

1. This is the second time the Debtors have had to seek judicial intervention because Park National failed to provide discovery required by the Federal Rules of Civil Procedure (the "Federal Rules") and necessary to prosecute this contested matter. This Motion seeks to remedy Park National's refusal to comply with the disclosure requirements for expert testimony set forth

---

[1] Capitalized terms used but not otherwise defined in the preliminary statement shall have the meaning ascribed to such terms in the body of the Motion.

in Rule 26(a)(2)(B) of the Federal Rules. After repeated requests from the Debtors to remedy these deficiencies, the Expert Rebuttal Deadline and the Expert Deposition Deadline have both come and gone without the Debtors being provided the information they are entitled to under Rule 26.

2. Should the Court allow Park National to introduce evidence from its expert witness regarding the valuation of the Property that forms the basis of the Debtors' Section 506(c) Claim – an issue that is central to this dispute – the Debtors will be unfairly prejudiced. This undue prejudice will result because the Debtors have not had a fair opportunity to review all the facts, bases and reasons for Mr. Albert's opinions regarding valuation of the Property. Moreover, because the Debtors were not provided this information prior to the Expert Rebuttal Deadline or the Expert Deposition Deadline, despite repeated requests for the information, the Debtors were unable to prepare to depose Mr. Albert, prepare rebuttal testimony, or arrange the appearance of rebuttal experts.

3. Because Park National has repeatedly refused to meaningfully respond to the Debtors' various attempts to obtain the disclosures required of Park National and its expert witness under Rule 26, the Court should follow established Third Circuit precedent and preclude Park National from introducing its expert opinion evidence regarding the value of the Property.

## BACKGROUND

4. On September 28, 2009, Park National initiated this contested matter in the above-captioned cases by filing its *Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection* [Docket No. 8101] (the "Stay Relief Motion"), which sought, among other things, to obtain relief from stay to

foreclose a mortgage on the real property located at 950 North Elmhurst Road/150 West Rand Road, Mount Prospect, Illinois (the "Property").

5. In response, the Debtors filed *Debtors' (I) Limited Objection to Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection and (II) Request for Allowance and Payment of Section 506(c) Claim, dated October 28, 2009* [Docket No. 8226] (the "Section 506(c) Motion"). The Section 506(c) Motion responded to the Stay Relief Motion and asserted a claim against Park National pursuant to section 506(c) of the Bankruptcy Code.

6. The Debtors and Park National thereafter entered into an agreed order [Docket No. 8423] (the "Agreed Order"), entered on December 17, 2009, whereby the Debtors agreed to consent to stay relief and to abandon the Property. In turn, Park National expressly agreed, among other things, that nothing in the Agreed Order would affect any claim that the Debtors may have against Park National or the Property pursuant to section 506(c) of the Bankruptcy Code (the "Section 506(c) Claim"). By allowing Park National to obtain stay relief and permitting the Debtors to preserve the Section 506(c) Claim, despite abandoning the Property, the Agreed Order resolved the Stay Relief Motion.

7. On November 20, 2009, Park National filed its *Opposition of Park National Bank to the Motion* [Docket No. 8325] (the "Objection"). On January 7, 2010, the Debtors filed a reply to the Objection [Docket No. 8480].

8. By agreement of the parties, on January 12, 2010, the Court held a hearing (the "Hearing") relating only to the issue of whether section 506(c), as amended, as a matter of law, entitles the Debtors to reimbursement for amounts expended on account of ad valorem taxes. At the Hearing, the Court deferred ruling and directed the parties to confer regarding a discovery

schedule and date to conduct an evidentiary hearing related to the Debtors' claims against Park National under section 506(c).[2]

9. Following the Hearing, the parties exchanged certain non-expert discovery. As set forth in the *Debtors' Motion to Compel* (the "Motion to Compel") [Docket No. 9090], however, Park National's non-expert discovery was incomplete in numerous material respects, despite repeated requests from the Debtors that Park National remedy such deficiencies. Following a hearing on the Motion to Compel, the Court entered an order granting the Motion to Compel on August 18, 2010 (the "Motion to Compel Order") [Docket No. 953]. The Motion to Compel Order directed Park National to immediately provide the Debtors with all outstanding documents the Debtors had requested, and included a finding that Park National "sought to disguise a low value" of the property at the center of the Debtors' Section 506(c) Claim. Additionally, the Motion to Compel Order awarded the Debtors the costs of prosecuting the Motion to Compel, including reasonable attorneys' fees.

10. Shortly before the Motion to Compel was filed, the Debtors submitted, under certification of counsel, a proposed scheduling order (the "Scheduling Order") to the Court. The Court entered the Scheduling Order on July 22, 2010 [Docket No. 9041]. The Scheduling Order provides, inter alia, that unless otherwise agreed to by the parties and ordered by the Court, Federal Rule of Civil Procedure 26(a)(2) will govern any expert disclosures and reports to be used in this dispute, and that such expert disclosures and reports should be served on opposing counsel no later than August 12, 2010. Scheduling Order, ¶ 11.

---

[2] After the hearing, on March 9, 2010, the Debtors filed their *Amended Motion for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) from Mount Prospect, Illinois* Property [Docket No. 8665] (the "Amended Motion"), which amended the Section 506(c) Motion. On March 30, 2010, Park National filed its brief in opposition to the Amended Motion [Docket No. 8724].

11. On August 18, 2010, the Debtors received Park National's expert disclosures (the "Expert Disclosures") via first-class mail. Included in the Expert Disclosures are two documents that purport to be expert reports. These documents are (i) that certain *Summary Report on 950 N. Elmhurst Road, Mt. Prospect, Illinois, as of August 7, 2007*, and (ii) that certain *Summary Report on 950 N. Elmhurst Road, Mt. Prospect, Illinois, as of July 3, 2009* (each a "Summary Report" and, collectively, the "Summary Reports") (attached hereto as Exhibit B). Both of the Summary Reports were prepared under the supervision of Steven S. Albert, MAI, SRA, whom Park National intends to call to testify at the trial of this contested matter.

12. The Expert Disclosures did not include Mr. Albert's full expert reports (each an "Expert Report" and collectively the "Expert Reports"), despite the fact that each Summary Report made reference to the same. Likewise, the Expert Disclosures did not contain all information considered by Mr. Albert in drafting his Expert Reports, or even all information used in drafting the Summary Reports (the "Expert Report Data"). Specifically, as set forth in greater detail below, the Expert Disclosures did not contain certain supporting documentation, reasoning and analyses that are admittedly in the appraiser's file. Counsel to the Debtors subsequently requested this information from counsel to Park National on three separate occasions. *See* Email from Sharon Zieg to Kenneth Yudell, Aug. 26, 2010, 4:33 p.m.; Email from Sharon Zieg to Kenneth Yudell, Aug. 25, 2010, 5:40 p.m.; Email from Andrew Lundgren to Kenneth Yudell, Aug. 23, 2010, 11:12 a.m. (collectively attached hereto as Exhibit C).[3]

13. Despite these repeated requests, Park National has supplied neither Mr. Albert's Expert Reports, nor the materials relied on by Mr. Albert to draft the Expert Reports or the

---

[3] On the basis of this correspondence, the Debtors hereby certify, pursuant to Federal Rule of Civil Procedure 37(a)(1), Federal Rule of Bankruptcy Procedure 7026, and Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, that they have in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Summary Reports. As a result, Park National failed to provide an Expert Report pursuant to Rule 26 by the scheduling order's deadline.[4] Further, as a result of Park National's failure to provide the Expert Report Data, the Debtors (1) were unable to file a rebuttal expert report by the deadline (the "Expert Rebuttal Deadline"); (2) were unable depose Mr. Albert before the deadline to depose expert witnesses (the "Expert Deposition Deadline") and (3) are clearly prejudiced. Under the Scheduling Order, these deadlines were August 26, 2010 and September 8, 2010, respectively.

## ARGUMENT

14.     For the second time, the Debtors have been forced to seek judicial intervention because they were not provided the discovery required by the Federal Rules and necessary to prosecute this contested matter. In the first instance, the Court, among other things, required the immediate production of all outstanding documents the Debtors had requested. Having continued this course of conduct with respect to expert discovery, the Debtors submit that Park National's refusal to produce such expert discovery, as required by Rule 26, has prejudiced the Debtors and warrants exclusion of any expert report prepared by Mr. Albert and any expert testimony he may provide at trial.

*A.*     *The Court Should Exclude The Expert Testimony And Report Of Steven S. Albert Pursuant To Rules 26 And 37 Of The Federal Rules Of Civil Procedure*

15.     Federal Rule of Civil Procedure 26(a)(2)(B) requires, in part, that all expert witnesses "retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony" to provide an appropriate written report. FED. R. CIV. P. 26(a)(2)(B). This written report must contain:

---

[4]     Indeed, counsel for Park National has represented that its production of all documents is "complete." *See* Email from Kenneth Yudell to Sharon Zieg, Aug. 27, 2010, 9:00 p.m. (Exhibit C).

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the data or other information considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(i)-(vi).

16. The courts have read these requirements broadly. To satisfy Rule 26, an expert report "must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions. It must explain factually why and how the witness has reached them." *Dunkin Donuts, Inc. v. Patel*, 174 F. Supp. 2d 202, 211 (D.N.J. 2001). Additionally, courts also have read the requirement that an expert report "contain ... any exhibits" that may be used to summarize or support an expert's opinion broadly, to require more than simple references to the exhibits. Merely including references to such exhibits does not meet the requirement of Rule 26(a)(2)(B). *Pierce v. CVS Pharm., Inc.*, 2007 U.S. Dist. LEXIS 69006 (D. Ariz. Sept. 13, 2007).

17. Where a party does not timely adhere to the mandates of Rule 26, Federal Rule of Civil Procedure 37, made applicable to this contested matter by Bankruptcy Rules 7037 and 9014, provides a remedy. Rule 37(c)(1) provides for the exclusion of evidence when information is not disclosed in accordance with Rule 26(a). That is, Rule 37 mandates that a trial court sanction a party for discovery violations in connection with Rule 26 unless the violation was

harmless or is substantially justified. *See, e.g., Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

18. The Third Circuit, moreover, has expressly held that the "[e]xclusion of testimony is an appropriate sanction" when a party fails to comply with the disclosure rules governing expert testimony and reports. *Coalition to Save Our Children v. State Board of Education*, 90 F.3d 752, 775 (3d Cir. 1999); *see also Canterna v. United States*, 2008 U.S. App. LEXIS 16653, at *10-11 (3d Cir. Mar. 7, 2008) ("[Any] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.") (quoting FED. R. CIV. P. 37(c)(1)).

19. In deciding whether to exclude expert testimony that fails to comply with Rule 26(a)(2)(B), a court should consider the following so-called *Pennypack* factors: (1) the prejudice or surprise to the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule would disrupt the trial; and (4) bad faith or willfulness in complying with a court's order. *See In re TMI Litigation*, 193 F.3d 613, 721 (3d Cir. 1999) (citing *Meyers v. Pennypack Woods Home Owner Assn.*, 559 F.2d 894, 904-05 (3d Cir. 1977)).

20. In the instant case, Park National's Expert Disclosures and the Summary Reports fall far short of meeting the requirements of Rule 26(a)(2)(B) for numerous reasons. First, the Summary Reports contain numerous "adjustments" and estimates, but not the "basis and reasons" for these adjustments and estimates. *See, e.g.*, 2007 Summary Report at 27, 30, 33, 37,

46, 48; 2009 Summary Report at 27, 30, 33, 37, 46, 48. Indeed, most disturbing is the statement in the Summary Reports that the Summary Reports present "only summary discussions of the data, reasoning and analyses that are in the appraisal process to develop the appraiser's opinion of value. *Supporting documentation, reasoning and analyses are in the appraiser's file.*" See 2009 Summary Report, Cover Letter from Douglas Roe and Steven S. Albert to Joseph Aronauer, Sept. 1, 2009 (emphasis added). *See also* 2007 Summary Report and 2009 Summary Report at 51 ("Upon request, we will prepare a formal appraisal report *complete with supporting data and documentation ...*") (emphasis added). It is precisely this "supporting data" and "supporting documentation, reasoning and analyses" that must be provided in an expert report under Rule 26, not locked away in an expert's file where the Debtors cannot review it. *See* FED. R. CIV. P. 26(a)(2)(B)(ii). Moreover, this documentation and the formal Expert Reports themselves are, at a minimum, exhibits to the Summary Reports that must be provided to the Debtors, not merely referenced in the Summary Reports. Park National's failure to append this information to the Expert Reports – or produce such information after repeated requests – warrants exclusion of the testimony and reports of Mr. Albert. *See Minebea Co. v. Papst*, 231 F.R.D. 3 (D.D.C. 2005).

21.     Park National has also failed to comply with several other Rule 26 disclosure requirements. The Expert Disclosures contain neither a list of all other cases in which, during the previous four years, Mr. Albert testified as an expert at trial or by deposition, nor a statement of the compensation to be paid for the appraisals and testimony in this case. *See* FED. R. CIV. P. 26(a)(2)(B)(v) & (vi). This is the case despite the fact that Mr. Albert's resume represents that he has been "[q]ualifed as an expert witness in circuit court in numerous condemnations, zoning,

divorce and partition cases." 2007 and 2009 Summary Reports at 60. This deficiency similarly justifies exclusion of Mr. Albert's testimony and reports.

22. Furthermore, the *Pennypack* factors weigh in favor of excluding Mr. Albert's expert reports and expert testimony. As to the first factor – prejudice – the Debtors would be substantially prejudiced if the Court were to allow Mr. Albert to opine on the value of the Property because the Debtor has not had a fair opportunity to review all the facts, bases and reasons for Mr. Albert's opinions regarding valuation. Moreover, because the Debtors were not provided this information prior to the Expert Rebuttal Deadline or the Expert Deposition Deadline, despite repeated requests for the information, this prejudice is magnified. The Debtors were unable to use this information to depose Mr. Albert, prepare rebuttal testimony, or arrange the appearance of rebuttal experts. Given that the drafters of Rule 26(a)(2)(B) added the disclosure requirements set forth in Rule 26 to ensure "that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses," FED. R. CIV. P. 26(a)(2) Advisory Comm. Note (1993), this is exactly the type of prejudice Rule 26 was designed to avoid. The failure to provide the information required by Rule 26(a)(2)(B) prevented the Debtors from adequately preparing their rebuttal expert case or testing the veracity of Mr. Albert's conclusions.

23. As to the second factor – the ability to cure the prejudice – the Debtors would have no recourse to cure the prejudice at this late date, just weeks before trial.[5] As to the third factor – the potential disruption of the trial schedule – waiver of the rule would necessitate a

---

[5] Of course, this would not be the case if the Court compelled Park National to produce Expert Disclosures in compliance with Rule 26 and extended the Expert Rebuttal Deadline and the Expert Deposition Deadline so as to allow the Debtors time to fully and fairly respond to this new information. To the extent that the Court believes the preclusion of Mr. Albert's expert opinion is not appropriate, the Debtors request such alternative relief. But as set forth above, such a remedy would necessitate delay of the trial in this contested matter, which is scheduled to take place in three weeks.

delay of the trial, scheduled for the end of September, to give the Debtors opportunity to review the new expert reports and procure rebuttal experts.

24.   Finally, as to the fourth factor, Park National has evidenced bad faith by withholding the expert information from the Debtors despite the Debtors' repeated requests for the same. In addition, as the Court is aware from the Motion to Compel, Park National has consistently refused to comply with its other discovery obligations in this matter. This pattern demonstrates, in the very least, a systemic refusal to cooperate in discovery, and amounts to bad faith.[6] Under all the Third Circuit's *Pennypack* factors, Mr. Albert's expert opinions, both written and testimonial, should be excluded from evidence.

B.   *Reservation Of Daubert And Other Substantive Objections*

25.   Even with the dearth of information concerning the bases for his opinions available to the Debtors, it is clear that there are many flaws in the methodology used by Mr. Albert to appraise the Property. The Debtors intend to file appropriate *Daubert* challenges to Mr. Albert's expert testimony and reports. The Debtors believe, however, that substantive objections to the methodology and qualifications of experts are premature. As demonstrated above, controlling Third Circuit case law directs that where, as here, there is a wholesale failure by a party to follow Rule 26's expert-disclosure requirements and to respond to a party's repeated requests to remedy such deficiencies, the proffering party's expert and accompanying reports should be excluded from evidence.

---

[6]   For example, Park National failed to provide its supplemental interrogatory responses until the day before the Debtors deposed, in Chicago, Park National's 30(b)(6) designee, Frederick Body. At that deposition, however, Mr. Body testified that he had sent the information contained in the supplemental interrogatory responses to counsel for Park National a week before his deposition. *See* Deposition Tr. of Frederick Body, Sept. 1, 2010, at 81:6-82:03 (attached hereto as Exhibit D). Why counsel for Park National waited until the day before Park National's deposition was to commence to produce this discovery remains unexplained.

By way of further example, Park National produced communications it had with a non-party, The Equitable Funds, only after the Debtors subpoenaed that non-party for its records. Why relevant and responsive communications with non-parties were produced only after the Debtors uncovered evidence of their existence is left unexplained by Park National.

## CONCLUSION

Park National's refusal to produce the expert discovery it is required to produce under Rule 26 has prejudiced the Debtors both in their ability to fairly examine the facts and circumstances surrounding Mr. Albert's expert opinion concerning valuation and to adequately prepare a rebuttal-expert case. Accordingly, the Court should grant the Motion and exclude the expert testimony and reports of Mr. Albert.

Dated: Wilmington, Delaware
September 8, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Sean M. Beach (No. 4070)
Sharon M. Zieg (No. 4196)
Andrew A. Lundgren (No. 4429)
Justin H. Rucki (No. 5304)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to Debtors and Debtors in Possession*