**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>American Home Mortgage Holdings, Inc., *et al.*,<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br>(Jointly Administered)<br><br>**Objections Due: September 15, 2010 at 4:00 p.m. EDT**<br>**Hearing Date: September 23, 2010 at 11:30 a.m. EDT**<br><br>**Re: D.I. 9203** |

**CORRECTED OPPOSITION OF U.S. BANK, N.A. (F/K/A PARK NATIONAL BANK) TO DEBTORS' MOTION TO EXCLUDE EXPERT TESTIMONY AND REPORTS OF STEVEN S. ALBERT**

　　　　U.S. Bank National Association, as successor in interest to Park National Bank ("Park National"), by its attorneys, Womble Carlyle Sandridge & Rice, PLLC and Aronauer, Re & Yudell, LLP, objects to Debtors' motion to compel (the "Motion"), and respectfully represents as follows:

**Preliminary Statement**

　　　　Park National was the owner and holder of the first mortgage lien on property owned by Debtors located in Mount Prospect, IL (the "Mortgaged Property"). By motion dated October 28, 2009 (the "506(c) Motion"), Debtors first sought recovery of certain expenses from the Mortgaged Property under § 506(c) of the Bankruptcy Code. In their 506(c) Motion, Debtors limited the amounts sought to real estate taxes paid post-petition and asserted that Debtors were entitled to recovery of those taxes paid as a matter of law.

　　　　Following Park National's opposition to the 506(c) Motion, at a hearing on January 12, 2010, the Court rejected Debtors' assertion that the real estate taxes sought could be recovered simply because they were paid by Debtors. Rather, this Court held that to recover the

taxes paid, Debtors must prove the usual elements under § 506(c), namely that the expenses were reasonable, necessary, and were intended to benefit and directly benefitted the secured creditor (Park National).

In response, Debtors filed an amended motion, dated March 9, 2010 (the "Amended 506(c) Motion") in which they asserted claims for additional and different expenses. Park National objected to the Amended 506(c) Motion by its Opposition, dated March 30, 2010 (the "Opposition to Amended 506(c) Motion").

In its Amended 506(c) Motion, Debtors asserted that Park National was undersecured. As a result, one of the issues in this contested matter is the value of the Mortgaged Property. While Park National asserts that the relevant valuation date is the date Debtors' Petition was filed, Debtors have asserted the appropriate valuation date is some other, unstated, date.

In light of this dispute over valuation, Park National produced to Debtors its expert reports concerning the value of the Mortgaged Property. Due to the apparent dispute over the appropriate valuation date, Park National produced appraisals opining as to the value of the Mortgaged Property on August 7, 2007 (the "Petition Date") and July 3, 2009. These appraisal reports were produced in compliance with the deadline set forth in the Court's pretrial scheduling order.

Admittedly, Park National did not produce on that date all of the documents considered by the appraiser in reaching his conclusion of value. Counsel did not have the documents, and there were delays receiving the requested information from the appraiser.

All of those documents have now been produced to Debtors. They were received by counsel and were sent to Debtors' counsel the following day.

While there admittedly was a delay in producing these underlying documents, the delay is harmless. Debtors have had the reports themselves for nearly a year. These appraisals are the same appraisals which were annexed to Park National's motion for relief from stay which was filed with this Court in September 2009. Additional copies were produced in discovery, and we confirmed with Debtors' counsel some time ago that we would not be obtaining new appraisals and would be relying on the appraisals previously produced.

While Debtors claimed that they could not complete a rebuttal report and could not depose the appraiser, that is not true. Debtors could have completed rebuttal reports and reserved their rights to supplement those reports following receipt of any additional documents. Debtors also could have deposed the expert and sought a supplemental deposition if the additional documents produced raised any additional questions.[1]

The reports themselves set forth all necessary information. The basis for the expert's conclusions is in the reports. The methodologies used by the appraiser are detailed in the reports. The comparable properties used, the adjustments to those comparables, the cost analysis of the value and the income capitalization analysis are all set forth in the reports.

Certainly, there may be some additional information in the underlying documents recently produced. There could be some comparables not used in the report, there may be more detailed information on the source of the information on the Mortgaged Property used in the reports (although the reports themselves state that most information was from Debtors' broker, CB Richard Ellis), but this additional information is minor.

---

[1] Park National's counsel has been willing throughout the case to cooperate in scheduling dates, including having depositions on September 1 and September 2. We would not have objected to supplementation based upon issues raised by later-produced documents.

Further, we are not dealing with unique methodologies or extremely complex calculations. These are appraisals. The appraiser used the three typical, generally accepted methods of valuing real property, namely, the cost approach, the income capitalization approach, and the sales comparison approach. Each of these approaches to value are fully detailed in the reports including explanations of the various methodologies, the expert's calculations and his conclusions.

One would think, upon reading Debtors' papers, that the reports consist of a sheet or two of papers with a statement of value. That is not true. Each report is more than 60 pages long and contains the appraiser's detailed analysis.

Courts in this Circuit have repeatedly recognized that exclusion of expert testimony is a "drastic" remedy which "should be imposed only in the most extreme circumstances." Teleglobe Comm. Corp. v. BCE Inc., 392 B.R. 561, 579 (Bankr. D. Del. 2008), citing, Konstantopoulos v. Westvaco Corp., 112 F. 3d 710, 719 (3rd Cir. 1997). See also Inline Connection Corp. v. AOL Time Warner Inc., 472 F. Supp.2d 604, 611 (D. Del. 2007), citing, In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 791-792 (3d Cir.1994) (finding that the exclusion of critical evidence is an "extreme" sanction).

Here there is no need for such an extreme sanction. Any violation has been cured by the production of the requested supporting documents from the appraiser's files. Debtors have been in a position to prepare their rebuttal for many months. They still have two weeks to complete any rebuttal reports and depose the expert prior to trial. Alternatively, the trial can be pushed back for a short period of time to allow Debtors additional time to complete their rebuttal reports and deposition. Thus, there is little or no prejudice, and there has been no surprise.

Further, there has not been any bad faith or willful misconduct. There have been delays in production by both parties. Debtors produced an additional 85 pages of documents just last week and have made several additional productions of documents after the discovery deadline and after Debtors' 30(b)(6) deposition was completed.

Park National and its counsel have always acted in good faith. The prior discovery dispute was a legal dispute as to the appropriate valuation date. While the Court disagreed with Park National's legal position, the dispute was not based upon a disregard of discovery obligations. Immediately following the Court's decision, Park National began producing the documents it was directed to produce.[2]

---

[2] Debtors have disingenuously attempted to disparage Park National and its counsel's actions during discovery. Those allegations are strenuously denied. For example, the allegation that counsel waited a week after receiving information to serve amended interrogatory answers is untrue. The testimony of Mr. Body (attached to Debtors' motion papers) in response to the question "When did Mr. Yudell ask you for that information?" was "Last week, I believe. I think it was last week." There is no testimony as to when the requested information was delivered to counsel, and thus no basis for the allegation made by Debtors that counsel waited a week after receiving the information to produce amended responses.

Similarly, Park National and its counsel are apparently being chastised by Debtors for being conscientious of its obligations to supplement its responses. After noting in discovery from other parties that additional communications involving Park National were not previously located and produced, Park National conducted additional searches to locate the missing communications and any related documents which may have been missed in the prior search. That Park National complied with its discovery obligations to supplement its production should be applauded. It should not be punished for complying with its obligation to supplement its prior production.

As mentioned, Debtors produced an additional 85 pages of documents just last week. These are not newly created documents, but documents that were from 2007, 2008 and 2009. Park National is not alleging bad faith or misconduct because Debtors complied with their obligations to supplement their production.

**Conclusion**

Based upon all of the foregoing, Debtors' motion to exclude Park National's expert should be denied. The documents have been produced. There is no basis for the requested drastic remedy of exclusion.

Dated: September 16, 2010

                                  Womble Carlyle Sandridge & Rice, PLLC

                                  By:   /s/ Michael Busenkell
                                  Michael Busenkell (Del. Bar No. 3933)
                                  222 Delaware Avenue, Suite 1501
                                  Wilmington, DE 19801
                                  Telephone: (302) 252-4324
                                  Facsimile: (302) 661-7724
                                  E-mail: mbusenkell@wcsr.com

                                  And

                                  Aronauer, Re & Yudell, LLP
                                  Kenneth S. Yudell, admitted Pro Hac Vice
                                  444 Madison Avenue, 17th Floor
                                  New York, New York 10022
                                  Telephone # (212) 755-6000

                                  *Attorneys for U.S. Bank, N.A. as successor in interest to Park National Bank*