Westlaw.

Page 1

Slip Copy, 2010 WL 2676383 (C.A.3 (Del.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2676383 (C.A.3 (Del.)))

**H**Only the Westlaw citation is currently available. This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)

United States Court of Appeals,
Third Circuit.
In re AMERICAN HOME MORTGAGE HOLDINGS, INC., et al, Debtors.
Wells Fargo Bank, N.A., in its Capacity as Securities Administrator,
v.
American Home Mortgage Investment Corporation; American Home Mortgage Acceptance Inc.; Bear Stearns Mortgage Capital Corporation; Bear Stearns & Co., Inc.; Bear Stearns International Limited; Strategic Mortgage Opportunities Reit Inc., Bear Stearns Mortgage Capital Corporation, Bear Stearns & Co., Inc., Bear Stearns International Limited, and Strategic Mortgage Opportunities Reit, Inc., Appellants.
No. 09-3568.

Submitted Under Third Circuit LAR 34.1(a) April 20, 2010.
Opinion Filed July 7, 2010.

**Background:** Dispute arose between Chapter 11 debtor and entity that had purchased a trust certificate from it regarding entitlement to particular month's principal and interest payment. The United States Bankruptcy Court for the District of Delaware denied buyer's motion for summary judgment, granted summary judgment in favor of debtor, and directed bank to distribute the subject principal and interest to debtor. Buyer appealed. The District Court, Joseph J. Farnan, J., 409 B.R. 284, affirmed, and buyer again appealed.

**Holdings:** The Court of Appeals, Ambro, Circuit Judge, held that:
(1) absent any language in repurchase agreement as to who would receive monthly distributions on trust certificate, after certificate was transferred "in blank" to entity which, not being real estate investment trust (REIT), was not qualified to be registered holder thereof, trust documents controlled distribution of monthly payments, and
(2) bankruptcy court did not abuse its discretion in denying equitable relief to buyer.

Affirmed.

West Headnotes

[1] Corporations 101 ⚖️480.5

101 Corporations
  101XI Corporate Powers and Liabilities
    101XI(D) Contracts and Indebtedness
      101k475 Mortgages and Trust Deeds by Corporation
        101k480.5 k. Assignment, Payment, Discharge, Release and Satisfaction. Most Cited Cases
Absent any language in repurchase agreement as to who would receive monthly distributions on trust certificate, after certificate was transferred "in blank" to entity which, not being real estate investment trust (REIT), was not qualified to be registered holder thereof, trust documents controlled distribution of monthly payments, and seller, as registered holder of certificate on payment date, before buyer had taken necessary steps to become certificate holder of record, was entitled to all principal and interest paid.

[2] Bankruptcy 51 ⚖️2125

51 Bankruptcy
  51II Courts; Proceedings in General
    51II(A) In General
      51k2124 Power and Authority
        51k2125 k. Equitable Powers and Principles. Most Cited Cases

Corporations 101 ⚖️480.5

101 Corporations
  101XI Corporate Powers and Liabilities
    101XI(D) Contracts and Indebtedness
      101k475 Mortgages and Trust Deeds by Corporation

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2676383 (C.A.3 (Del.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2676383 (C.A.3 (Del.)))

101k480.5 k. Assignment, Payment, Discharge, Release and Satisfaction. Most Cited Cases
Bankruptcy court did not abuse its discretion in denying equitable relief to allow buyer that had failed to take necessary steps of promptly forming real estate investment trust (REIT), transferring trust certificate that it acquired "in blank" from Chapter 11 debtor to this REIT, and registering the REIT's interest in certificate, to obtain principal and interest payments which, pursuant to terms of trust documents, were payable only to registered holders of certificate on payment date; bankruptcy court reasonably concluded that buyer's failure to promptly re-register trust certificate was more than mere clerical error.

Appeal from the United States District Court for the District of Delaware, (D.C. Civil Action No. 1-08-cv-00925), District Judge: Honorable Joseph J. Farnan.John T. Dorsey, Esq., Young, Conaway, Stargatt & Taylor, Wilmington, DE, for Debtor.

Todd C. Schiltz, Esq., Drinker, Biddle & Reath, Wilmington, DE, for Wells Fargo Bank.

John T. Dorsey, Esq., Susheel Kirpalani, Esq., James C. Tecce, Esq., Quinn, Emanuel, Urquhart, Oliver & Hedges, Owen H. Smith, Esq., Andrew W. Stern, Esq., Sidley Austin, New York, NY, Frederick B. Rosner, Esq., Messana, Rosner & Stern, Wilmington, DE, for Appellants.

Before SCIRICA,[FN*] Chief Judge, AMBRO, Circuit Judge and JONES [FN**], District Judge.

OPINION

AMBRO, Circuit Judge.

Bear Stearns International Ltd., et al., (Bear Stears) appeals the District Court's affirmance of the Bankruptcy Court's order granting summary judgment for American Home Mortgage Investment Corp., et al., ("American Home") in an interpleader action. We affirm as well.[FN1]

I.

The interpleader action in this appeal concerns a payment dispute between Bear Stearns and American Home as to which party has the right to a single $1.8 million monthly distribution from a Delaware statutory trust. American Home held a Trust Certificate, which represented a fractional, undivided interest in that trust. The Trust Certificate provided that (i) monthly distributions be paid to the registered certificateholder as of the record date, and (ii) that the certificate could be transferred only to an entity that qualified as a real estate investment trust (REIT) or qualified REIT subsidiary, as those terms are defined in the Internal Revenue Code, 26 U.S.C. §§ 856(a) and (i). App. 337, 335.

American Home sold the Trust Certificate to Bear Stearns in May 2007 as part of a repurchase agreement (the "Repo Agreement"), whereby American Home transferred to Bear Stearns all "right, title[,] and interest" in the certificate for $19,534,000, and agreed to repurchase the Trust Certificate for $19,636,879.07. App. 332.[FN2]

Normally in such transactions Bear Stearns would re-register the purchased securities in its own name. Consequently, any income from those purchased securities during the term of the Repo Agreement would be made to Bear Stearns, who would then, pursuant to Section 5(i) of the Repo Agreement, transfer that income to the securities seller (here, American Home.) In this transaction, however, because Bear Stearns was not a REIT, it did not re-register the Trust Certificate in its name. Instead, American Home transferred the Trust Certificate "in blank," meaning that the transferee's identity was left blank in the transfer documents. The significance of making the transfer "in blank" was that Bear Stearns obtained a fully negotiable Trust Certificate but that American Home remained the registered certificateholder.

As the registered certificateholder, American Home received the monthly payments directly from the Certificate Registrar of the trust, Wells Fargo, during May, June, and July 2009. On August 3, Bear Stearns terminated the Repo Agreement following American Home's failure to meet a margin call.[FN3] Three days later, American Home and several of its affiliates filed for bankruptcy protection in the District of Delaware. Bear Stearns then exercised its right to liquidate the Trust Certificate and sold it to a Bear-Stearns-created REIT, the Strategic Mortgage Opportunities REIT, Inc. ("Strategic Mortgage").

Though Bear Stearns was entitled to register the Trust

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2676383 (C.A.3 (Del.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2676383 (C.A.3 (Del.)))

Certificate in Strategic Mortgage's name when it did, it failed to do so by the August record date. In September, before the August payment had been made, Bear Stearns became aware of its error and communicated with both **Wells Fargo** and **American Home**, indicating that it was entitled to the August payment.

**Wells Fargo**, in the position of having to make a payment to either Bear Stearns or **American Home**, filed this interpleader action in the Bankruptcy Court. Both Bear Stearns and **American Home** filed motions for summary judgment. Bear Stearns argued that the "all right, title[,] and interest" language in the Repo Agreement included **American Home's** right to the monthly distributions. In the alternative, it argued that, even if **American Home** were technically entitled to the payment, Bear Stearns was equitably entitled to the payment because the failure to re-register the Trust Certificate was just a "clerical error." In contrast, **American Home** argued that it was entitled to the payment because the language in the Trust Agreement and the Trust Certificate (collectively, the "Trust Documents") indicated that the payment should be made only to the registered certificateholder as of the record date.

After hearing oral argument, the Bankruptcy Court granted summary judgment for **American Home**. It held that, "[a]bsent the expressed intent of the parties in the Repo Agreement that the clear and unambiguous terms of the Trust Documents are supplemented by the Repo Agreement, the terms of the Trust Document must control." App. 31.

In addition, the Bankruptcy Court denied Bear Stearns' request for equitable relief because (i) the act of registering a certificate is not a "clerical error" but rather "a legally significant act," App. 29; (ii) granting equitable relief would "create confusion, introduce uncertainty and ultimately reduce liquidity in the secondary securities markets," App. 29-30; and (iii) the Trust Certificate "cannot be rewritten on equitable grounds," App. 30.

The District Court affirmed the summary judgment order for **American Home**. It concluded that the Bankruptcy Court properly interpreted the Trust Documents and the Repo Agreement. In addition, it held that the Bankruptcy Court did not abuse its discretion when denying equitable relief because Bear Stearns had not taken steps to protect itself. App. 12.

Bear Stearns urges us to reverse the District Court's order because the Repo Agreement directs that the payment be made to Bear Stearns; alternatively, if **American Home** is entitled to the payment under the Trust Documents, Bear Stearns argues that it should nonetheless be entitled to the payment under principles of equity. To hold otherwise, it contends, would unjustly enrich **American Home**.

II.

[1] We find Bear Stearns' arguments unavailing. Applying English law to interpret the language in the Repo Agreement (following the parties' choice-of-law provision), we reach the same conclusion as the Bankruptcy Court: the Repo Agreement was silent as to the distributions to be made under the Trust Certificate. "Under English law, the words of a contract are interpreted in accordance with their plain and ordinary meaning." *Crown Cork & Seal Tech. Corp. v. Continental Pet Tech. Inc.*, 232 F.Supp.2d 294, 298 (D.Del.2002) (citing *Investors Compensation Scheme Ltd. v. West Bromwich Bldg. Soc'y*, [1998] 1 W.L.R. 896, 913)). "[T]he test for ascertaining the meaning of terms in a contract is to determine how the language of the contract would have been understood by a reasonable person having all of the background knowledge and information that would reasonably have been available to the parties in the situation in which they were at the time of the contract." *Id.* at 299. This relevant background knowledge is termed the "matrix of fact" and "includes anything which would have affected the way in which the language of the document would have been understood by a reasonable man." *Id.*

Section 6(f) of the Repo Agreement states that **American Home** transferred all "right, title[,] and interest" in the Trust Certificate. App. 299. This entitled Bear Stearns to transfer the Trust Certificate and to become the registered certificateholder. Nothing in this language or elsewhere in the Repo Agreement, however, addresses the right to income from the Trust Certificate. The only language in the Repo Agreement concerning income from securities is contained in Section 5(i), which states that, if Bear Stearns receives any income from the Trust Certificate during the term of the Repo Agreement, it will transfer that income to American Home.App. 297 at § 5(i). This provision, however, does not indicate to which party the Certif-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 2676383 (C.A.3 (Del.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2010 WL 2676383 (C.A.3 (Del.)))

icate Registrar was to make the monthly distributions.

Without any language in the Repo Agreement indicating to whom **Wells Fargo** was to make the monthly distributions, the Trust Documents control the distribution of the monthly payments. In interpreting the provisions of the Trust Documents, we apply Delaware law, which instructs that a party is bound by the plain meaning of clear and unequivocal contract terms. Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1195-96 (Del.1992). The Trust Documents state that payments will be made to the registered certificateholder as of the record date:

> There will be distributed ... to the Person in whose name this Certificate is registered at the close of business on the last Business Day of the month immediately preceding such Payment Date (the "Record Date")[ ] such Certificateholder's Percentage Interest in the amount to be distributed to Certificateholders on such Payment Date.

App. 337. This language clearly and unequivocally entitles the registered certificateholder as of the August record date to the August payment, and the parties agree that the Trust Certificate was registered to **American Home**.[FN4]

[2] Finally, we agree with the District Court that the Bankruptcy Court did not abuse its discretion in denying Bear Stearns equitable relief. The Bankruptcy Court's denial was premised on the reasonable conclusion that Bear Stearns' failure to re-register the Trust Certificate was more than a clerical error.

### III.

Accordingly, we affirm the District Court's order affirming the Bankruptcy Court's order granting summary judgment for **American Home**.

> FN* Judge Scirica completed his term as Chief Judge on May 4, 2010.

> FN** The Honorable John E. Jones, III, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

FN1. The Bankruptcy Court had jurisdiction over the interpleader action under 28 U.S.C. §§ 157(b) and 1334; the District Court had jurisdiction to review the Bankruptcy Court's final order under 28 U.S.C. § 158(a)(1); and we have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. "Since the District Court sat as an appellate court to review the Bankruptcy Court, 'we review its legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof.'" In re Tower Air, Inc., 397 F.3d 191, 195 (3d Cir.2005) (citing In re Engel, 124 F.3d 567, 571 (3d Cir.1997)).

FN2. While this arrangement is functionally similar to a loan secured by the Trust Certificate, it is nonetheless treated as a repurchase agreement (or "repo"), as the Bankruptcy Court discussed in another adversary proceeding in this bankruptcy case, Calyon New York Branch v. American Home Mortgage Corp., et al. (In re American Home Mortgage, Inc.), 379 B.R. 503, 515-17 (Bankr.D.Del.2008).

FN3. The parties have stipulated that, for purposes of this proceeding, Bear Stearns was entitled to make this margin call. App. 189.

FN4. Bear Stearns' contends the Trust Documents were ambiguous because Section 3.07 of the Trust Agreement states that the Certificate Registrar "*may* treat the Person in whose name this Certificate is registered as the owner thereof for all purposes," App. 342 (emphasis supplied). As the Bankruptcy Court found, however, this language is not inconsistent with other provisions of the Trust Documents that clearly require distributions to be made to the registered certificateholder. App. 28. Hence there is no ambiguity.

C.A.3 (Del.),2010.
In re American Home Mortg. Holdings, Inc.
Slip Copy, 2010 WL 2676383 (C.A.3 (Del.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.