## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,[1]

                  Debtors.

---------------------------------------------------------------- x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

**Objection Deadline: October 18, 2010 at 4:00 p.m. (ET)**
**Hearing Date: October 21, 2010 at 11:30 a.m. (ET)**

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 105(A) FOR AN ORDER APPROVING AND AUTHORIZING THE SETTLEMENT AGREEMENT RESOLVING ALL CLAIMS AND COUNTERCLAIMS AMONG THE DEBTORS, WATERFIELD SHAREHOLDER LLC, UNION FEDERAL BANK OF INDIANAPOLIS, HUNTINGTON BANCSHARES INCORPORATED AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware

corporation, and certain of its affiliates, the debtors and debtors in possession in the above-

captioned cases (collectively, "AHM" or the "Debtors"), submit this motion (the "Motion")

seeking entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules") and section 105(a) of Title 11 of the United States Code (the

"Bankruptcy Code") approving the settlement agreement (the "Settlement Agreement", attached

hereto as **Exhibit A**) by and among the Debtors, Waterfield Shareholder LLC ("Waterfield"),

Union Federal Bank of Indianapolis ("Union Federal"), Huntington Bancshares Incorporated

("Huntington") and the Official Committee of Unsecured Creditors in connection with Debtors

---

[1]     The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

chapter 11 cases (the "Committee," and collectively with the Debtors, Waterfield, Union Federal and Huntington, the "Parties"). In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition commencing the above captioned cases under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Bankruptcy Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.    On August 14, 2007, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. On October 21, 2008, the US Trustee appointed an Official Committee of Borrowers (the "Borrowers Committee"), which was disbanded on August 16, 2010. No trustee or examiner has been appointed.

4.    The Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan") was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [Docket No. 7042]. The Plan provides for the creation of a liquidating trust (the "Plan Trust") in which the property of the Debtors' bankruptcy estates will vest. The Plan has not yet gone effective.

## RELEVANT BACKGROUND

5.      AHM, Union Federal and Waterfield Financial Corporation ("WFC"),

entered into that certain Stock and Loan Mortgage Purchase Agreement dated January 12, 2006

(the "Purchase Agreement").

6.      AHM, Union Federal, Waterfield and JP Morgan Chase Bank, N.A. ("JP

Morgan") entered into that certain Escrow Agreement dated January 20, 2006 (the "Escrow

Agreement"). The Purchase Agreement and Escrow Agreement created an escrow (the

"Escrow") with JP Morgan acting as escrow agent. Pursuant to the Purchase Agreement and the

Escrow Agreement, the Escrow presently contains a portion of the purchase price under the

Purchase Agreement totaling approximately $54,681,511.59.

7.      On September 29, 2006, AHM commenced an action against Union

Federal, captioned *American Home Mortgage v. Union Federal Bank of Indianapolis*, Case No.

06-CV-7864 (JGK) (RLE), in the United States District Court for the Southern District of New

York (inclusive of all claims, counterclaims and defenses asserted therein, the "Action").

8.      In the Action, AHM alleges, among other things, that Union Federal has

breached the Purchase Agreement by (i) not providing a post-closing purchase price adjustment

that AHM contends is required and (ii) allegedly under-accruing reserves for loan recourse

obligations.

9.      AHM seeks damages and other relief from Union Federal and Waterfield

(collectively, the "Defendants") in the Action, including, but not limited to, an award of most of

the amount held in Escrow.

10.     In addition to denying AHM's claims in the Action and asserting

numerous affirmative defenses, the Defendants filed counterclaims including, but not limited to,

claims that (i) AHM allegedly breached the Purchase Agreement by failing to repurchase loans from investors after AHM acquired WFC and (ii) AHM allegedly breached the Escrow Agreement. AHM denied these claims and submitted various affirmative defenses.

11.     Waterfield and Union Federal seek an award of damages and other relief from AHM in the Action, including but not limited to an award of the entire Escrow, as well as other damages.

12.     On January 11, 2008, following the Petition Date, Union Federal and Waterfield each filed a Proof of Claim in the Bankruptcy Cases for the value of the counterclaims against AHM [Claim Nos. 9231 and 9232] (collectively and together with any claims or amounts set forth on the Debtors' Schedules of Assets and Liabilities [Docket Nos. 1343-1350, 1820-1824], the "Proofs of Claim").

13.     In order to resolve the Action and the Proofs of Claim, the Parties hereby seek approval of the Settlement Agreement.

## THE SETTLEMENT AGREEMENT

14.     The principal terms of the Settlement Agreement are set forth below:[2]

(1)     The Effective Date:  The Settlement Agreement shall be effective upon entry of the Bankruptcy Court order approving the Motion.

(2)     Release of Claims:  Upon the Effective Date, the AHM Releasing Entities shall release, acquit and forever discharge, and shall forever be enjoined from prosecution of, each and every Released Claim against any of the Defendants' Released Parties. Furthermore, the Defendant Releasing Entities shall release, acquit and forever discharge, and shall forever be enjoined from prosecution of, each and every Released Claims against any of the AHM Released Parties.  The intent of the Settlement Agreement is

---

[2]     The terms of the Settlement Agreement set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Settlement Agreement.  To the extent of any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

to release all of the Released Claims that are or were in existence on or prior to the Effective Date.  Upon the Effective Date, the Proofs of Claim shall be deemed withdrawn with prejudice and the Defendant Releasing Entities shall be prohibited from filing or asserting further claims of causes of action in the AHM Bankruptcy Proceedings.

(3)    <u>Consideration for Release</u>:  The mutual release of all Released Claims by the AHM Releasing Entities and the Defendants' Releasing Entities is consideration for those releases.  Furthermore, on the Effective Date, AHM and the Defendants shall provide JP Morgan with the Resolution Certificate attached as Exhibit A to the Settlement Agreement.  The Resolution Certificate provides that $5,500,000 of the Escrow will be wired to AHM.  The remainder of the approximately $54,681,511.59 in Escrow shall be released to Waterfield and Huntington pursuant to the terms of the Huntington Settlement.

(4)    <u>Dismissal of the Action</u>:  Within five (5) business days after receipt of the above consideration from Escrow, the Parties shall take the necessary steps to voluntarily dismiss the Action in its entirety with prejudice.

(5)    <u>Admission</u>:  No part of the Settlement Agreement, nor any agreement or order relating thereto, shall constitute or be construed as an admission by any of the Parties of any fault, wrongdoing or liability, or as an admission by any Party of any lack of merit of the Claims in the Action; <u>provided, however</u>, that nothing contained in the Settlement Agreement shall prevent that agreement from being used, offered or received in evidence in any proceeding to enforce or effectuate the Settlement Agreement.

## **RELIEF REQUESTED**

15.    By this Motion, the Debtors respectfully request entry of an order, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, approving the Settlement Agreement and authorizing the Debtors to enter into the same.  The Debtors have weighed the costs, risks and disruption that would arise from litigating the Action, against the compromises contained within the Settlement Agreement.  In the Debtors' judgment, the

## BASIS FOR RELIEF REQUESTED

16.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'") (*quoting In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

17.     In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1153 (3d Cir. 1979); *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (quoting, *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

18.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved.  The four enumerated factors are:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin*

*(In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); accord *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

19.     The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in *Meyers v. Martin (In re Martin)*, 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the Debtors. *See Neshaminy Office Bldg.*, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

20.     The Debtors respectfully request that the Court approve the Settlement Agreement because its terms lie well above the lowest point in the range of reasonable potential litigation possibilities. In addition, each of the applicable *Martin* factors weighs in favor of approving the Settlement Agreement. A further benefit of the settlement is that the Debtors believe that the funds to be paid to the Debtors' estates under the terms of the Settlement Agreement will be sufficient to allow the Plan to go effective. Accordingly, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

## A.      The Probability Of Success In Litigation

21.      While the Debtors believe they have a strong litigation position and would ultimately prevail, the Action (as with any litigation) has a level of risk.  The Defendants are vigorously defending the litigation and have asserted full defenses and counterclaims.  In light of the litigation risks, costs and distraction from the Debtors' efforts to effectuate the Plan, the Debtors believe that the terms of the Settlement Agreement are reasonable.  The resolution of the Action under the terms of the Settlement Agreement, without the need for further litigation, is a favorable outcome because it will save the Debtors considerable time and expense attendant with litigation, will avoid distraction to the Debtors' efforts to maximize value for their creditors and will get the Debtors one step closer to permitting the confirmed Plan to go effective.

## B.      The Likely Difficulties In Collection

22.      If the AHM Parties are successful in prosecuting the Action, it is unclear how difficult the collection of any judgment would be.  Given the vigorous defense by AHB and the possibility of an appeal, however, a significant period of time could elapse before the AHM Parties obtain access to any judgment.

## C.      The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It

23.      The Settlement Agreement satisfies the third factor in *Martin's* four-factor test largely for the reasons set forth above.  In determining whether to enter into the Settlement Agreement, the Debtors, in consultation with their professionals and the Committee, analyzed the likely cost of litigating the Action.  These costs, which would likely be substantial, would include further motions practice, trial preparation, and expert expenses, among other things.  As a result of such consultations, the Debtors believe the Settlement Agreement is a cost effective and efficient resolution of all matters between the Parties.

### D.    The Paramount Interest Of Creditors

24.    Entry into the Settlement Agreement serves the paramount interest of the creditors of the Debtors.  The Settlement Agreement's resolution of the claims, counterclaims, and defenses asserted among the Parties represents a savings for the creditors by obviating further litigation.  Furthermore, the Debtors believe that the settlement funds will permit the Plan to become effective – a significant step for the creditors of the Debtors and toward the conclusion of these chapter 11 cases.  Therefore, the "paramount interest of creditors" factor of *Martin's* four-factor test is satisfied and weighs in favor of the Court approving the Settlement Agreement.

### E.    Summary

25.    The resolution of the Action embodied in the Settlement Agreement represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes, obviates the expense, delay, and inconvenience attendant in any litigation, and advances the paramount interests of creditors.  Therefore, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

### NOTICE

26.    Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) the Parties; (iii) counsel to the Committee; (iv) JP Morgan Chase Bank, N.A., as Escrow agent under the Escrow Agreement; and (v) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

27.    No prior request for the relief sought in this Motion has been made to this

or any other court.

WHEREFORE, the Debtors respectfully request that this Court issue and enter an

Order, in the form attached hereto as **Exhibit B**, pursuant to Bankruptcy Rule 9019 and section

105(a) of the Bankruptcy Code, (i) approving the Settlement Agreement, and (ii) granting such

other and further relief as may be just and proper.

Dated:  Wilmington, Delaware
        October 6, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP


_____/s/ Sean Beach_____
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors*