# EXHIBIT A

**Settlement Agreement**

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASES

Plaintiff-counterclaim defendant American Home Mortgage Corp. ("AHM"), defendants-counterclaim plaintiffs Waterfield Shareholder LLC ("Waterfield") and Union Federal Bank of Indianapolis ("Union Federal," and collectively "Defendants"), Huntington Bancshares Incorporated ("Huntington"), and the Official Committee of Unsecured Creditors in connection with AHM's chapter 11 proceedings (the "AHM Creditors' Committee"), by and through their attorneys, hereby enter into the following Settlement Agreement (the "Settlement Agreement" or "Agreement"), dated as of October 5, 2010.[1]

## RECITALS

WHEREAS, on September 29, 2006, AHM commenced an action against Union Federal, captioned *American Home Mortgage Corp. v. Union Federal Bank of Indianapolis*, Case No. 06-CV-7864 (JGK) (RLE), in the United States District Court for the Southern District of New York (inclusive of all claims, counterclaims and defenses asserted therein, the "Action"); and

WHEREAS, AHM alleges in the Action, among other things, that Union Federal has breached the Stock and Mortgage Loan Purchase Agreement between and among AHM, Union Federal, and Waterfield Financial Corporation ("WFC"), dated as of January 12, 2006 (the "Purchase Agreement") by (i) not providing a post-closing purchase price adjustment that AHM contends is required, and (ii) allegedly under-accruing reserves for loan recourse obligations; and

WHEREAS, AHM seeks an award of damages and other relief from Defendants in the Action, including but not limited to an award of most of the Escrow, which is an amount set aside from the purchase price paid under the Purchase Agreement, which totaled approximately $55 million; and

WHEREAS, in the Action, Waterfield and Union Federal denied the allegations asserted by AHM, asserted various affirmative defenses, and filed counterclaims including but not limited to claims that (i) AHM allegedly breached the Purchase Agreement by failing to repurchase loans from investors after AHM acquired WFC, contrary to § 10.4(e), and (ii) AHM allegedly breached the Escrow Agreement (the "Escrow Agreement") between and among AHM, Union Federal, Waterfield, and JP Morgan Chase Bank, N.A. ("JP Morgan" or the "Escrow Agent"); and

WHEREAS, Waterfield and Union Federal seek an award of damages and other relief from AHM in the Action, including but not limited to an award of the entire Escrow, as well as other damages; and

WHEREAS, AHM denied the allegations asserted by Defendants, and filed various affirmative defenses to the counterclaims; and

---

[1]    Capitalized terms not otherwise defined shall have the meanings set forth in Section I below.

WHEREAS, on August 6, 2007, AHM filed a voluntary petition for protection under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), captioned *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (CSS) (the "AHM Bankruptcy Proceedings"); and

WHEREAS, on January 11, 2008, Union Federal and Waterfield each filed a Proof of Claim in the AHM Bankruptcy Proceedings for the value of its counterclaims against AHM (Claim Nos. 9231 and 9232) (collectively, and together with any claims or amounts set forth on the Debtors' Schedules of Assets and Liabilities, the "Proofs of Claim"); and

WHEREAS, on February 23, 2009, the Bankruptcy Court entered an order confirming AHM's Amended Chapter 11 Plan Of Liquidation Of The Debtors Dated As Of February 18, 2009 (the "Plan"), which provides, in part, that upon the effective date of the Plan, AHM's interest in its Claims against Defendants is transferred to the Plan Trust (as defined in the Plan). The Plan effective date has not yet occurred; and

WHEREAS, under the Purchase Agreement, if an investor required Union Federal to repurchase certain Company Mortgage Loans, then AHM was required, upon notice, to fulfill such repurchase obligations. However, as a result of AHM's Plan, which has been confirmed by the Bankruptcy Court, allowance of claims against AHM arising from any alleged breach of repurchase obligations is governed by a protocol, the application of which to Union Federal's repurchase claims against AHM would be to disallow such claims and bar the assertion of such claims against the Plan Trust or property of the Plan Trust, on or after the effective date of the Plan; and

WHEREAS, AHM denies that it has any liability to Defendants, and Defendants deny that they have any liability to AHM, and each Party denies and disclaims all wrongdoing, liability, and damages whatsoever; and

WHEREAS, the Parties now desire to settle any and all matters, disputes and claims they may have against one another relating to the Action; and

WHEREAS, the Parties have agreed to the compromise and settlement of the Action subject to the terms and conditions set forth herein to avoid the burden, expense, and uncertainties that would be involved in litigating the Action to a conclusion, and to release Claims as set forth below; and

WHEREAS, the Parties and their counsel believe that the terms and conditions of this Settlement Agreement are fair, reasonable, adequate, and proper.

NOW, THEREFORE, in consideration of the mutual promises and agreements, covenants, representations, and warranties set forth herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, and intending to be legally bound;

IT IS HEREBY STIPULATED AND AGREED, by and among the Parties that all Released Claims are settled, compromised, and released as set forth below, and that all claims, counterclaims, and defenses asserted in the Action shall be dismissed with prejudice, and without fees or costs, on the following terms and conditions:

## ADDITIONAL DEFINITIONS

I.    The following additional definitions shall apply in this Settlement Agreement:

A.    The "AHM Releasing Entities" means AHM, AHM's Released Parties, the estate of AHM, and any and all claimants and successors-in-interest (whether real or alleged) to the estate of AHM in connection with the AHM Bankruptcy Proceedings (including but not limited to the AHM Creditors' Committee, the Plan Trust, and the Plan Trustee).

B.    "Claims" means any and all claims, counterclaims, defenses, rights, demands, causes of action, suits, matters, and issues, whether known or unknown, in contract, tort or otherwise, suspected or unsuspected, liquidated or unliquidated, whether past, present, or future, and including but not limited to the Proofs of Claim and all claims for costs and attorneys' fees.

C.    The "Defendant Releasing Entities" means Defendants, Defendants' Released Parties, and any and all successors-in-interest to the Defendants, individually or collectively, including but not limited to Huntington.

D.    The "Effective Date" of this Settlement Agreement shall be the date the Settlement Agreement is approved by the Bankruptcy Court.

E.    The "Escrow" means the escrow created pursuant to the Escrow Agreement and the Purchase Agreement, and held by JP Morgan as the Escrow Agent, pursuant to Sections 2.3 and 2.5 of the Purchase Agreement and Section 1 of the Escrow Agreement.

F.    "Parties" means the parties to this Settlement Agreement, namely, AHM, Union Federal, Waterfield, Huntington, and the AHM Creditors' Committee; each such entity, standing alone, is a "Party."

G.    "Released Claims" means any and all Claims that are, have been, might have been, or could now or in the future be asserted by (i) the AHM Releasing Entities against Union Federal (including its Released Parties) and/or Waterfield (including Waterfield's Released Parties), or (ii) the Defendant Releasing Entities against AHM (including its Released Parties) —

arising out of or related, directly or indirectly, in any way, to the transaction between AHM and Union Federal that is set forth and provided for in the Purchase Agreement and Escrow Agreement (including but not limited to the Claims, allegations, transactions, facts, matters and/or occurrences addressed, involved, set forth, referred to, or that could have been asserted in the Action),

3

whether such Claims arise under any contract, in tort, under federal or state statutory or common law, or under any other applicable law, rule, statute, regulation, obligation, right, duty, or requirement. Released Claims also include all Claims relating to or arising out of or connected with the litigation, defense, or settlement of the Action.

Released Claims do not include any claim to enforce the terms of this Settlement Agreement.

H.    "Released Parties" means AHM's Released Parties and Defendants' Released Parties, as defined below:

1.    "AHM's Released Parties" means AHM and its parents, subsidiaries, affiliates, and related entities, and any of its and their respective past, present, and future directors, officers, employees, owners, shareholders, members, agents, partners, principals, representatives, administrators, insurers, attorneys, advisors, predecessors, successors, heirs, assigns, devisees, executors, conservators, representatives, and families, and any person they represent, including, without limitation, the Plan Trust and the Plan Trustee;

2.    "Defendants' Released Parties" means Union Federal's Released Parties and Waterfield's Released Parties, collectively;

3.    "Union Federal's Released Parties" means Union Federal and its parents, subsidiaries, affiliates, and related entities, and any of its and their respective past, present, and future directors, officers, employees, owners, shareholders, members, agents, partners, principals, representatives, administrators, insurers, attorneys, advisors, predecessors, successors, heirs, assigns, devisees, executors, conservators, representatives, and families, and any person they represent; and

4.    "Waterfield's Released Parties" means Waterfield and its parents, subsidiaries, affiliates, and related entities, and any of its and their respective past, present, and future directors, officers, employees, owners, shareholders, members, agents, partners, principals, representatives, administrators, insurers, attorneys, advisors, predecessors, successors, heirs, assigns, devisees, executors, conservators, representatives, and families, and any person they represent.

I.    Singular and plural.  Terms that are defined in the plural also include the singular; terms that that are defined in the singular also include the plural.

**RELEASES; SCOPE AND EFFECT OF THE SETTLEMENT**

II.    The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of any and all Released Claims as against each of the Released Parties.

4

III.   As of the Effective Date, the AHM Releasing Entities shall release, acquit, and forever discharge, and shall forever be enjoined from prosecution of, each and every Released Claim against any of Defendants' Released Parties. This release is intended to be a complete release of all Released Claims that are or were in existence on or prior to the Effective Date of this Settlement Agreement, and in the event of any dispute as to its meaning is to be so construed.

IV.   As of the Effective Date, the Defendant Releasing Entities shall release, acquit, and forever discharge, and shall forever be enjoined from prosecution of, each and every Released Claim against any of AHM's Released Parties, including but not limited to the Proofs of Claim. This release is intended to be a complete release of all Released Claims that are or were in existence on or prior to the Effective Date of this Settlement Agreement, and in the event of any dispute as to its meaning is to be so construed.

## SETTLEMENT CONSIDERATION

V.   *Mutual Releases are Consideration.*  This Settlement Agreement and the consideration therefor are given by the Parties in return for, and are contingent upon, full and complete releases of all Released Claims against all Released Parties, as described above, which releases no longer may be challenged by any Party, and upon the covenants, representations, and warranties set forth throughout this Settlement Agreement.

VI.   *Economic Terms of the Agreement.*  Attached hereto as Exhibit A is a Resolution Certificate, executed by AHM and Defendants and which will be provided to the Escrow Agent, JP Morgan, within 5 business days after the Effective Date, instructing the Escrow Agent to wire $5,500,000 from the Escrow to AHM. The balance of the Escrow shall be distributed by the Escrow Agent to Waterfield and Huntington, pursuant to the terms of the Settlement Agreement and Mutual General Releases by and between Waterfield and Huntington (the "Huntington Settlement"), and AHM consents and does not object to, and disclaims any interest in, any additional payments from the Escrow. The parties understand from the Escrow Agent that as of September 1, 2010, the Escrow totaled approximately $54,681,511.59. In addition to the foregoing, the Parties agree that:

A.   The AHM Releasing Entities are not entitled to receive any amounts from Defendants or Defendants' Released Parties, except as set forth in this Agreement, and the AHM Releasing Entities shall bear their own attorneys' fees, expenses, and costs.

B.   The Defendant Releasing Entities are not entitled to receive any amounts from AHM except as set forth in this Agreement, and shall bear their own attorneys' fees, expenses, and costs.

VII.   *Dismissal of the Action.*  Within 5 business days after payment to AHM from the Escrow of the amount set forth in Section VI above, the Parties shall take the necessary steps to voluntarily dismiss the Action in its entirety with prejudice.

VIII.  *Resolution of Defendants' Proofs of Claim in the AHM Bankruptcy Proceedings.*  In connection with the AHM Bankruptcy Proceedings, the Parties will take all steps reasonably necessary to obtain approval for this Settlement Agreement from the Bankruptcy Court.  Upon the Effective Date, the Proofs of Claims shall be deemed withdrawn with prejudice and the Defendant Releasing Entities shall be prohibited from filing or asserting any further claims or causes of action in the AHM Bankruptcy Proceedings.

## NO ADMISSION OF WRONGDOING

IX.  Each of the Parties has denied, and continues to deny, that it has committed any wrongdoing, or violated any applicable contract, state or federal statutory or common law, statute, rule, regulation, obligation, right, duty, or requirement, and each of the Parties has denied and continues to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims.

X.  The Parties state that they have agreed to this Settlement Agreement solely because it will eliminate the burden, expense, and uncertainties of further litigation.

XI.  This Settlement Agreement, and any of its terms, any agreement or order relating hereto, and any payment or consideration provided for herein, is not and shall not be construed as an admission by any of the Parties of any fault, wrongdoing, or liability whatsoever, or as an admission by any Party of any lack of merit of the Claims asserted in the Action. This Settlement Agreement, and any of its terms, and any agreement or order relating hereto, shall not be deemed to be — and shall not be offered by any Party to be received in evidence in any arbitral, civil, criminal, administrative, or other proceeding, or utilized in any manner whatsoever as — a presumption, a concession, or an admission of any fault, wrongdoing, or liability whatsoever on the part of any Party; provided, however, that nothing contained in this paragraph shall prevent this Settlement Agreement or any other agreement or order relating hereto from being used, offered, or received in evidence in any proceeding to enforce or otherwise effectuate the Settlement Agreement or any agreement or order relating hereto.

## ADDITIONAL TERMS

XII.  *Parties Bound.*  This Settlement Agreement shall be binding upon and for the benefit of the AHM Releasing Entities and the Defendant Releasing Entities.

XIII.  *Authority.*  All persons executing this Settlement Agreement warrant and represent that they have full authority and have obtained all necessary consents and approvals from the entities for which they execute this Settlement Agreement.

XIV.  *Representation by Counsel.*  The Parties warrant that they are each represented by competent counsel with respect to this Action and this Settlement Agreement; each Party has been fully advised by counsel with respect to its rights and obligations and with respect to the execution of this Settlement Agreement; and each Party authorizes and

directs its attorneys to take such action as is necessary and appropriate to effectuate the terms of this Settlement Agreement.

XV.    *Entire Agreement.* The Settlement Agreement contains the entire agreement among the Parties with respect to the subject matter hereof, and supersedes any prior written or oral agreements, representations, warranties, or statements. No representation, warranty, covenant, or inducement has been made to any Party hereto concerning this Settlement Agreement, other than the representations, warranties, covenants, and inducements contained herein. This Settlement Agreement may not be altered, modified, or amended, or any of its provisions waived, except by a writing, executed by counsel for all of the Parties hereto.

XVI.    *No Waiver.* The failure of any Party to enforce at any time any provision of this Settlement Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Settlement Agreement or any part hereof, or the right of any Party thereafter to enforce each and every such provision. No waiver of any breach of this Settlement Agreement shall be held to constitute a waiver of any other breach.

XVII.    *Section Headings.* The section headings used throughout this Settlement Agreement are for convenience only and shall not affect the interpretation or construction of this Settlement Agreement.

XVIII.    *Construction and Interpretation.* In the event that any court or other adjudicative body of competent jurisdiction is called upon to interpret this Settlement Agreement, the language of the Settlement Agreement shall be construed as a whole, according to its fair meaning and intent, and not strictly for or against any Party, regardless of which Party drafted or was principally responsible for drafting the Settlement Agreement or any specific term or condition hereof. As such, the Settlement Agreement shall be deemed to have been drafted by all Parties jointly. No Party may offer in evidence or otherwise use, for purposes of suggesting any interpretation of this Settlement Agreement, any prior drafts of this Settlement Agreement.

XIX.    *Validity of Agreement.* If any provision of this Settlement Agreement is held to be void, illegal, or unenforceable by any court or other adjudicative body of competent jurisdiction, that provision shall be replaced by a valid and enforceable substitute provision that carries out, as closely as possible, the intentions of the Parties under the Settlement Agreement.

XX.    *Privilege.* Nothing in this Settlement Agreement, or the negotiations or proceedings relating hereto, is intended to be, or shall be deemed to constitute, a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege, the common interest privilege, or the work product immunity.

XXI.    *Costs and Attorneys' Fees.* Each Party shall pay its own costs and attorneys' fees in connection with the commencement, prosecution, and settlement of the Action.

XXII.  *Governing Law*.  This Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, and without regard to any otherwise applicable rules or principles governing choice of law.

XXIII.  *Remedies*.  The Parties agree that in the event of a default or breach of this Settlement Agreement, the non-defaulting or non-breaching party shall be entitled to specific performance of the Settlement Agreement, as well as any and all other remedies and relief available at law or in equity.  In addition to any other remedies, the prevailing Party in litigation for legal or equitable enforcement of the Settlement Agreement shall be entitled to the recovery of its reasonable attorneys' fees and costs.

XXIV.  *Jurisdiction and Venue*.  Each Party agrees that all Claims brought to enforce the terms of this Settlement Agreement shall be brought in the United States Bankruptcy Court for the District of Delaware.  Each Party consents to jurisdiction and venue in the United States Bankruptcy Court for the District of Delaware solely for the purpose of enforcing this Settlement Agreement.

XXV.  *Effective Date; Counterparts & Signature Pages*.  The Settlement Agreement shall become effective on the Effective Date.  The Settlement Agreement may be executed in one or more counterparts, all of which shall be considered the same as if a single document shall have been executed. Signature pages transmitted electronically (*e.g.*, by facsimile or Portable Document Format (.pdf) as an attachment to an email) shall have the full force and effect of original signatures.

\*          \*          \*

[SIGNATURE PAGE FOLLOWS]

IN WITNESS HEREOF, the Parties have executed this Settlement Agreement.

By: *Kevin Nystrom*
Title: *Chief Restructuring Officer*
American Home Mortgage Corp.
Dated: October ___, 2010

By: _____
Title:
Official Committee of Unsecured Creditors
Dated: October ___, 2010

By: _____
Title:
Waterfield Shareholder LLC
Dated: October ___, 2010

By: _____
Title:
Huntington Bancshares Incorporated,
    as successor to Union Federal Bank
    of Indianapolis
Dated: October ___, 2010

IN WITNESS HEREOF, the Parties have executed this Settlement Agreement.

By: _____
Title:
American Home Mortgage Corp.
Dated: October ___, 2010

By: _Edward L Schnitzer_
Title: Partner, Hahn & Hessen, Counsel for the
Official Committee of Unsecured Creditors
Dated: October _6_, 2010

By: _____
Title:
Waterfield Shareholder LLC
Dated: October ___, 2010

By: _____
Title:
Huntington Bancshares Incorporated,
   as successor to Union Federal Bank
   of Indianapolis
Dated: October ___, 2010

9

IN WITNESS HEREOF, the Parties have executed this Settlement Agreement.

| | |
|---|---|
| By: _____ | By: _____ |
| Title: | Title: |
| American Home Mortgage Corp. | Official Committee of Unsecured Creditors |
| Dated: October ___, 2010 | Dated: October ___, 2010 |

| | |
|---|---|
| By: _UEN CE OTTO_ | By: _____ |
| Title: _CEO_ | Title: |
| Waterfield Shareholder LLC | Huntington Bancshares Incorporated, |
| Dated: October _5_, 2010 | as successor to Union Federal Bank |
| | of Indianapolis |
| | Dated: October ___, 2010 |

9

IN WITNESS HEREOF, the Parties have executed this Settlement Agreement.


By: _____
Title:
American Home Mortgage Corp.
Dated: October ___, 2010

By: _____
Title:
Official Committee of Unsecured Creditors
Dated: October ___, 2010


By: _____
Title:
Waterfield Shareholder LLC
Dated: October ___, 2010

By:    Richard A Cheap
Title:   General Counsel & Secretary
Huntington Bancshares Incorporated,
    as successor to Union Federal Bank
    of Indianapolis
Dated: October 6, 2010


9

# EXHIBIT A

## RESOLUTION CERTIFICATE

to

JPMorgan Chase Bank, N.A.,

as Escrow Agent

The undersigned, American Home Mortgage Corp. ("Purchaser"), Huntington Bancshares Incorporated as successor to Union Federal Bank of Indianapolis ("Seller"), and Waterfield Shareholder LLC (Escrow Representative), pursuant to Section 4(b) of the Escrow Agreement dated as of January 20, 2006, among Purchaser, Seller, and you (terms defined in said Escrow Agreement have the same meanings when used herein), hereby:

(a)    certify that (i) Purchaser, Seller and Escrow Representative have resolved their dispute as to the matter described in the Certificate of Instruction dated September 29, 2006, and the related Objection Certificate dated October 18, 2006, and (ii) the final Owed Amount with respect to the matter described in such Certificates is $5,500,000;

(b)    instruct you to pay to Purchaser from the Escrow Fund the Owed Amount referred to in clause (ii) of paragraph (a) above, by wire transfer of immediately available funds to Purchaser's account at _____ (Account No. _____), within two business days of your receipt of this Resolution Certificate; and

(c)    agree that the Owed Amount designated in such Certificate of Instruction, to the extent, if any, it exceeds the Owed Amount referred to in clause (ii) of paragraph (a) above, shall be deemed not payable to the Indemnified Parties and such Certificate of Instruction is hereby cancelled; and

(d)    certify that, with the exception of the Owed Amount, Purchaser disclaims any and all right and interest in the funds held in the Escrow, and consents and does not object to

the payment of those funds to Seller and Escrow Representative, at such times and in such amounts as Seller and Escrow Representative will direct in a separate instruction.

By:_____
American Home Mortgage Corp.


By:_____
Huntington Bancshares Incorporated, as
successor to Union Federal Bank of Indianapolis


By:_____
Waterfield Shareholder LLC


Dated:    _____

the payment of those funds to Seller and Escrow Representative, at such times and in such amounts as Seller and Escrow Representative will direct in a separate instruction.

By:_____
    American Home Mortgage Corp.

By:_____
    Huntington Bancshares Incorporated, as
    successor to Union Federal Bank of Indianapolis

By:_____
    Waterfield Shareholder LLC

Dated:    _____

the payment of those funds to Seller and Escrow Representative, at such times and in such amounts as Seller and Escrow Representative will direct in a separate instruction.

By:_____
    American Home Mortgage Corp.


By:_____
    Huntington Bancshares Incorporated, as
    successor to Union Federal Bank of Indianapolis

By:_____ 10-5-2010
    Waterfield Shareholder LLC


Dated: _____