UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------- x    Chapter 11
In re                                             :
                                                  :    Case No. 07-11047 (CSS)
American Home Mortgage Holdings,                  :
Inc., et al.,                                     :    (Jointly Administered)
                                                  :
                              Debtors.            :
------------------------------------------------- x
```

# REPLY MEMORANDUM
# OF LAW IN FURTHER SUPPORT OF
# MOTION BY U.S. BANK, N.A. (F/K/A PARK
# NATIONAL BANK)  FOR SUMMARY JUDGMENT

Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone # (302) 252-4324

And

Aronauer, Re & Yudell, LLP
444 Madison Avenue, 17th Floor
New York, New York 10022
Telephone # (212) 755-6000

*Attorneys for Park National*

# **Table of Contents**

Table of Authorities. ........................................................................................................ ii

Preliminary Statement. ..................................................................................................... 1

    Point I:        Park National is Entitled to Summary
                        Judgment. .............................................................................................. 2

                        A.        The Standard of Review. ............................................................... 2

                        B.        Park National Was Oversecured on the Petition Date. ................... 3

                        C.        The Petition Date is the Proper Valuation Date. ............................ 4

                        D.        Debtors Cannot Prove a Benefit to Park National. ........................ 7

    Point II:       At a Minimum, Park National is Entitled
                        to Partial Summary Judgment. ................................................................ 8

Conclusion . ................................................................................................................... 10

**Table of Authorities**

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986). ........................ 2

D&M Land Co., LLC v. Branch Banking & Trust Co., 413 B.R. 133 (E.D.N.C. 2010). ........ 6, 7, 8

In re Boherer, 266 B.R. 200 (Bankr. N.D. Cal. 2001). ................................................ 4

In re C.S. Associates, 29 F.3d 903 (3d Cir. 1994). ..................................................... 4

In re Chambers, 419 B.R. 652 (Bankr. E.D. Tex. 2009)............................................... 4

In re Compton Impressions, Ltd., 217 F.3d 1256 (9th Cir. 2000)............................. 5, 6, 7

In re Consolidated Cotton Gin Co., Inc., 347 B.R. 572 (Bankr. N.D. Tex. 2006)..................... 7, 8

In re Crutcher Concrete Construction, 218 B.R. 376 (Bankr.W.D.Ky.1998) . ............................... 7

In re Falwell, Case No. 08-60495 (LYN), 2009 WL 6750628
  (Bankr. W.D. Va. December 4, 2009). ................................................................ 4

In re Flagstaff Foodservice Corp., 762 F.2d 10 (2d Cir. 1985)................................... 4-5

In re Glen Eden Hospital, Inc., 202 B.R. 589 (Bankr. E.D. Mich. 1995). ...................... 6

In re Kain, 86 B.R. 506 (Bankr. W.D. Mich. 1988)..................................................... 5

In re Mall at One Assoc., L.P., 185 B.R. 981 (Bankr. E.D. Pa. 1995)............................ 9

In re Parker, 148 B.R. 604 (Bankr. D. Idaho 1992). .................................................. 5

In re Roots Rents, Inc., 420 B.R. 28 (Bankr. D. Idaho 2009). ..................................... 4

In re Schreiber, 163 B.R. 327 (Bankr. N.D. Ill. 1994). ............................................... 5

In re Scott, 248 B.R. 786 (Bankr. N.D. Ill. 2000). ..................................................... 5

In re Visual Industries, Inc., 57 F.3d 321 (3d Cir. 1995). ........................................... 4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348 (1986)............ 3

Matter of Musgrove, 187 B.R. 808 (Bankr. N.D. Ga. 1995). ......................................................... 4

**RULES**

Fed. Rules Civ. Proc. 56(c), (e).................................................................................................... 3

**STATUTES**

11 U.S.C. § 363(a). ...................................................................................................................... 9

11 U.S.C. § 506(b). ............................................................................................................. *passim*

11 U.S.C. § 1325(a)(4)................................................................................................................. 5

**Preliminary Statement**

The one thing that should be clear from the Court's review of Debtors' opposition papers is that there is no dispute as to any material fact which would prohibit the Court from granting summary judgment to Park National. By Debtors' own admission, Park National was oversecured on the date of the Petition. Park National could have been paid in full by liquidation of the Mortgaged Property on the Petition Date. Accordingly, the operation of the Mortgaged Property and the payment of the expenses of the Mortgaged Property could only have benefitted Debtors who were trying to protect their equity in the Mortgaged Property.

The fact that Park National was oversecured on the Petition Date has been established. Debtors are bound by the judicial admission of this fact in their filed Schedules. While Debtors assert they are not bound by this admission, their argument is contrary to settled law, and they do not cite a single authority in support of their position.

Debtors also contest that the Petition Date is the proper valuation date. However, like their attempt to avoid their admission as to value, Debtors fail to cite a single authority holding that the proper valuation date is a date other than the Petition Date. Instead, Debtors attempt to obscure the lack of authority for their position by relying on the general "framework" for valuations for other purposes. The Court should reject this unsupported argument as inconsistent with the courts which have decided the issue.[1]

Debtors assert that the proper valuation date is the date the Mortgaged Property was sold at the foreclosure sale earlier this year. This date has no relevance since Debtors had

---

[1] The determination of the proper valuation date is a matter of law, not fact. Thus, that Debtors dispute that the Petition Date is the proper valuation does not prevent this Court from granting Park National summary judgment (or, at a minimum, determining the proper valuation date).

ceased incurring expenses for the Mortgaged Property many months prior. However, even if the Court were to adopt this date for valuation, Debtors claim still fails as a matter of law based upon their admission that the Mortgaged Property was sold at the foreclosure sale for $978,000. Debtors' Brief at 25. Even in this distressed sale situation which undoubtedly depressed the value, the Mortgaged Property still sold for well in excess of the amounts due Park National during the period in which the claimed expenditures were made.

Debtors' also argue, again without citation to any authority for their position, that Park National is not entitled to a credit for the rents collected by Debtors. This argument should be rejected on its face. For Park National to pay the expenses of the Mortgaged Property while Debtors collect the rents from the Mortgaged Property would be the height of inequity and contrary to clear mandates in the Bankruptcy Code.

Accordingly, summary judgment should be granted to Park National dismissing Debtors' 506(c) claims.

**Argument**

**Point I**

**Park National is Entitled to Summary Judgment**

A.   **The Standard of Review**

In seeking to defeat a motion for summary judgment, Debtors needed to establish that there was a dispute as to a material fact. "However, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). That

other, non-material facts are in dispute does not defeat a party's entitlement to summary judgment.

"[T]he [disputed] issue of fact must be 'genuine.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986) citing Fed.Rules Civ.Proc. 56(c), (e). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Id. (citations omitted). In addition, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted. Id. (citation and internal quotation omitted).

Debtors' claimed disputes as to facts are insufficient to defeat Park National's entitlement to summary judgment since those factual disputes do not involve facts which may determine the outcome of this dispute. Under this well-established standard, Park National is entitled to be granted summary judgment on all claims asserted by Debtors under 506(c).

B.  **Park National Was Oversecured on the Petition Date**

In its moving papers, Park National established that it was oversecured on the Petition Date. This fact was established by Debtors' admissions in its filed Schedules that the Mortgaged Property was worth $1,548,161.00 while Park National was only owed $930,536.00. Exhibit B: Schedules.

While Debtors argue that they should not be bound by this admission (Debtors' Brief at ¶ 37), they fail to cite a single case for their position and simply ignore the authority cited by Park National that an admission in Debtors' schedules is an unrebuttable judicial admission.

3

Quite simply, Debtors unsupported argument is contrary to the consistent holdings of numerous courts throughout the country.  See, e.g., In re Boherer, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) ("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.");  In re Falwell, Case No. 08-60495 (LYN), 2009 WL 6750628 at *12 (Bankr. W.D. Va. December 4, 2009) (citing Boherer with approval and holding that debtor's statements in schedules are "admitted under the penalty of perjury" and subsequent claim to the contrary could be violation of Rule 9011); In re Roots Rents, Inc.,420 B.R. 28, 40 (Bankr. D. Idaho 2009) (quoting Bohrer as rule on admissions); In re Chambers, 419 B.R. 652 (Bankr. E.D. Tex. 2009) ("Statements in the bankruptcy schedules are executed under penalty of perjury and, when offered against a debtor, are eligible for treatment as judicial admissions."); and Matter of Musgrove, 187 B.R. 808, 812 (Bankr. N.D. Ga. 1995) ("This entry in the Debtor's schedules, standing alone, constitutes a judicial admission.").

Accordingly, Debtors are bound by the admissions contained in their Schedules.

**C.     The Petition Date is the Proper Valuation Date**

It has long been a requirement that to prevail on a 506(c) claim a debtor must prove that "the expenditures provide a *direct* benefit to the secured creditors."  In re Visual Industries, Inc., 57 F.3d 321, 325 (3d Cir. 1995), *quoting*, In re C.S. Associates, 29 F.3d 903, 906 (3d Cir. 1994) (emphasis in original) (citations omitted).  Further, to prevail on their claim, Debtors "must show that ... funds were expended primarily for the benefit of the creditor and that the creditor directly benefitted from the expenditure."  In re Flagstaff Foodservice Corp., 762

F.2d 10, 12 (2d Cir.1985) (quoted with approval by the Third Circuit in C.S. Associates, 29 F.3d at 906). The mere fact that there is an incidental benefit to a secured creditor is insufficient under § 506(c). Id.

In applying this standard, courts have consistently denied a 506(c) claim where a creditor is oversecured on the date the petition is filed. See Park National's Brief at Point I. These courts properly reason that the expenditures provide no benefit to a fully secured creditor since the creditor can be paid in full by the liquidation of the collateral. See, e.g., In re Compton Impressions, Ltd., 217 F.3d 1256, 1261 (9th Cir. 2000) (denying 506(c) surcharge where oversecured creditor "could have fully recovered the unpaid balance of their loan if they had initially foreclosed") and other cases cited in Park National's moving brief at ¶ 34.

Debtors fail to cite a single decision which supports their assertion that the Mortgaged Property should be valued on a date other than the Petition Date in this matter seeking a 506(c) surcharge. The cases cited by Debtors concerning the general "framework" for valuations do not involve 506(c) claims involving oversecured creditors. Debtors' Brief at n. 9. Rather, Debtors rely on cases involving a cramdown plan under Chapter 13 where the valuation date is set by 11 U.S.C. § 1325(a)(4) (In re Scott, 248 B.R. 786 (Bankr. N.D. Ill. 2000)), a valuation date for determining the secured status of a tax lien creditor where liens having priority were reduced post-petition thus increasing the secured status of the non-consenual tax lien creditor (In re Schreiber, 163 B.R. 327 (Bankr. N.D. Ill. 1994)), a valuation date for adequate protection payments (In re Kain, 86 B.R. 506 (Bankr. W.D. Mich. 1988)), and a valuation date for a Chapter 13 cramdown (In re Parker, 148 B.R. 604 (Bankr. D. Idaho 1992)).

Debtors' attempts to distinguish the decisions cited by Park National fall far short of doing so. For example, the fact that the debtor in <u>Compton</u> was in default when its petition was filed does not alter the Ninth Circuit's reasoning in any way. In <u>Compton</u>, the Court's decision was based upon the fact that the sale of the property at the beginning of the case "would have resulted in the Banks being fully compensated." <u>Compton</u>, 217 F.3d at 1261. That the possible sale could have been by foreclosure was irrelevant since the <u>Compton</u> debtor valued the secured collateral "well-above the unpaid balance" due the secured creditor. <u>Id.</u>

Similarly, in <u>In re Glen Eden Hospital, Inc.</u>, 202 B.R. 589, 590 (Bankr. E.D. Mich. 1995), the Bankruptcy Court denied the 506(c) claim because the secured party "was oversecured by approximately $200,000 when the petition was filed." Debtors argue that this decision is "inapposite" because in <u>Glen Eden</u> the collateral was "disposed years after the petition date." Debtors' Brief at ¶ 58. However, the facts in <u>Glen Eden</u> are that the petition was filed on September 1993 and the hospital was sold in March 1995, a strikingly similar factual scenario to this matter where the Petition was filed in 2007 and the collateral was liquidated in 2009 or 2010.

Debtors also attempt to distinguish <u>D&M Land Co., LLC v. Branch Banking & Trust Co.</u>, 413 B.R. 133 (E.D.N.C. 2010) on the ground that in <u>D&M</u>, the secured creditor was undersecured years later when the property was sold. Debtors' Brief at ¶ 58. However, the facts and the holding in <u>D&M</u> reinforce Park National's right to summary judgment. The secured creditor in <u>D&M</u> was oversecured on the date the petition was filed but undersecured years later on the date the property was liquidated. <u>D&M</u>, 413 B.R. at 135. Under this set of facts, the exact same facts asserted by Debtors as existing here, the District Court held that the debtor was not entitled to a 506(c) surcharge.

> In denying the 506(c) claim to the debtor in D&M, the District Court stated:
>
> > A sale negotiated by the debtor where the single asset is real property and where the creditor is over-secured rarely will benefit the creditor because the creditor could have foreclosed upon and sold the collateral to satisfy the debt. *See* In re Compton Impressions, Ltd., 217 F.3d 1256 (9th Cir.2000) ("Additional expenses beyond those covered by the carve-outs merely aided the Debtor in its attempt to salvage some equity from the project; they were not necessary to the Banks, nor were they reasonably incurred insofar as the Banks' recovery was concerned."); In re Mall at One Associates, L.P., 185 B.R. 981, 990 (Bankr.E.D.Pa.1995) ("BNY was at all times a substantially oversecured creditor ... Therefore, every action which the Debtor took in this case short of allowing BNY to foreclose as soon as possible provided a clear detriment, rather than any direct benefit, to BNY."); In re Crutcher Concrete Construction, 218 B.R. 376, 380-81 (Bankr.W.D.Ky.1998) ("To demonstrate such a benefit, the Trustee must show that the secured creditor received over and above that which it could have realized without the Trustee's intervention.").

D&M, 413 B.R. at 138.

Thus, since Park National was oversecured on the Petition Date, summary judgment is appropriate.

### D.     **Debtors Cannot Prove a Benefit to Park National**

As is shown above, since Park National was oversecured on the Petition Date, none of the expenditures claimed by Debtors benefitted Park National.  Rather, they only benefitted Debtors' attempt to preserve their equity.

In addition to Park National's oversecured status, Debtors were using the Mortgaged Property for their own benefit.  Debtors attempt to distinguish the holding in In re Consolidated Cotton Gin Co., Inc., 347 B.R. 572 (Bankr. N.D. Tex. 2006) by arguing that it was

7

decided under a prior version of § 506(c). Debtors' Brief at n. 7. However, the Consolidated Cotton Court specifically addressed this issue in its decision and stated: "The addition of paid ad valorem taxes as an expense potentially subject to reimbursement by an amendment of section 506(c) and [sic] does not alter the Court's conclusion on this issue." Consolidated Cotton, 347 B.R. at 580.

There is simply no authority for what Debtors are asking this court to do. Just like in D&M, Park National could have been paid in full if Debtors had simply liquidated the Mortgaged Property at the beginning of the bankruptcy case. Since Park National was oversecured on the Petition Date based upon Debtors' own admissions, and since Debtors operated the Mortgaged Property post-petition for their own benefit, there was no direct benefit to Park National by Debtors' expenditures. Accordingly, Park National's motion for summary judgment should be granted.

**Point II**

**At a Minimum, Park National is
Entitle to Partial Summary Judgment**

In addition to their other objections, Debtors object to Park National receiving a credit for rents collected from the Mortgaged Property. However, Debtors can't have things both ways. They are not permitted to charge Park National with the expenses of the Mortgaged Property and, at the same time, operate the Mortgaged Property for their own benefit and keep the revenues for themselves. Such a double recovery is inequitable and is prohibited. Park National Brief, at Point III.

8

Debtors once again fail to cite a single authority in support of their claim to keep the rents and charge Park National with the expenses. Instead, Debtors unsuccessfully attempt to distinguish In re Mall at One Assoc., L.P., 185 B.R. 981, 989 (Bankr. E.D. Pa. 1995) which prohibits the exact unfair result Debtors seek in this matter. Debtors' Brief at ¶ 47. The fact that there was a cash collateral stipulation in Mall at One Assoc. and there is no cash collateral stipulation here does not change the result because the court's decision is not based upon the existence of a cash collateral stipulation. Rather, the decision in Mall at One Assoc. is predicated on the debtor using the secured creditor's cash collateral to operate the debtor's business. Mall at One Assoc., 189 B.R. at 990 ("The expenses requested were therefore already paid out of the Creditors' cash collateral in rents.").

As in Mall at One Assoc., Debtors have used Park National's cash collateral to operate the Mortgaged Property.[2] As such, Park National cannot be charged a second time for the expenses of the Mortgaged Property and is entitled to a credit for the rents collected by Debtors.

Similarly, with respect to the claim for insurance premiums, Debtors admit that they do not have proof of the exact amount of the expenditure. Rather since Debtors "could not itemize the insurance costs" for 2007-2009, they used the itemized amount for 2009-2010 "to arrive at a reasonable figure." Debtors' Brief at ¶ 51. Since Debtors are admittedly unable to

---

[2] That the rents are Park National's cash collateral is not subject to a *bona fide* dispute. See 11 U.S.C. § 363(a) defining "cash collateral" to include "rents" in which an entity other than the Debtors have an interest. See also Mortgage at 1 (grant of mortgage) and 2 (assignment of rents).

9

present proof of the actual amount expended to insure the Mortgaged Property, this portion of Debtors' 506(c) claim must be stricken.

### Conclusion

Based upon all of the foregoing, Park National's moving papers, and Debtors' own admissions, Park National is entitled to summary judgment on all claims. As a matter of law, Debtors are unable to prove that any of the claimed expenditures benefitted Park National because Park National was oversecured on the date Debtors' Petition was filed. Even if the Court were to adopt a later valuation date, the undisputed evidence establishes that Park National was oversecured at all times through, and including, the foreclosure sale of the Mortgaged Property earlier this year. At a minimum, Park National is entitled to be given a credit for all income collected by the Debtors during any time period Debtors are awarded reimbursement of expenses from Park National, and Debtors claims for reimbursement related to payment of insurance should also be limited to payments made after August 2009.

Dated: October 7, 2010

                                              Womble Carlyle Sandridge & Rice, PLLC

                                              By: /s/ Michael Busenkell
                                                  Michael Busenkell (Del. Bar No. 3933)
                                            222 Delaware Avenue, Suite 1501
                                            Wilmington, DE 19801
                                            Telephone # (302) 252-4324

                                            And

Aronauer, Re & Yudell, LLP
Kenneth S. Yudell, admitted Pro Hac Vice
444 Madison Avenue, 17th Floor
New York, New York 10022
Telephone # (212) 755-6000

*Attorneys for Park National*