IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:
:
: Chapter 11
:
: Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC., :
a Delaware corporation, et al.,[1] : Jointly Administered
:
Debtors. : Objection Deadline: November 3, 2010 at 4:00 p.m. (ET)
: Hearing Date: November 15, 2010 at 3:00 p.m. (ET)
:
------------------------------------------------------------ x

**DEBTORS' MOTION PURSUANT TO BANKRUPTCY
RULE 9019 AND 11 U.S.C. § 105(A) FOR AN ORDER APPROVING AND
AUTHORIZING THE RELEASE AND SETTLEMENT AGREEMENT RESOLVING ALL
CLAIMS AND COUNTERCLAIMS AMONG CERTAIN DEBTORS, AMERICAN
HOME BANK, A DIVISION OF FIRST NATIONAL BANK OF CHESTER COUNTY
AND AMERICAN HOME BANK**

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, "AHM" or the "Debtors"), submit this motion (the "Motion") seeking entry of an order pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") approving the release and settlement agreement (the "Settlement Agreement", attached hereto as **Exhibit A**) by and among American Home Mortgage Investment Corp. ("AHM Investment"), American Home Mortgage Corp. ("AHM Corp."), American Home Bank, a division of First National Bank of Chester County (f/k/a American Home Bank, N.A.)

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); AHM Investment, a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); AHM Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

("AHB") and American Home Bank ("American Home Bank", and collectively with AHM Investment, AHM Corp. and AHB, the "Parties"). In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition commencing the above captioned cases under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Bankruptcy Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3. On August 14, 2007, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. On October 21, 2008, the US Trustee appointed an Official Committee of Borrowers (the "Borrowers Committee"), which was disbanded on August 16, 2010. No trustee or examiner has been appointed.

4. The Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan") was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [Docket No. 7042]. The Plan provides for the creation of a liquidating trust (the "Plan Trust") in which the property of the Debtors' bankruptcy estates will vest. The Plan has not yet gone effective.

## RELEVANT BACKGROUND

5.     AHM Investment and AHM Corp. filed an action against AHB in the United States District Court for the Southern District of New York (the "SDNY"), on or about May 24, 2007, styled *American Home Mortgage Investment, Corp., and American Home Mortgage Corp. v. American Home Bank, N.A.*, (Index No. 07 Civ. 4077 (LAP)) (inclusive of all claims, counterclaims and defenses asserted therein, the "Action").

6.     The complaint filed in the Action (the "Complaint") alleges, among other things, service mark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); the use of false designations in commerce and false representations in commerce in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and common law service mark infringement, unfair competition, and deceptive trade practices under the laws of the State of New York.

7.     On or about July 13, 2007, AHB answered the Complaint and filed its own counterclaims against American Home Bank, AHM Investment, and AHM Corp. (collectively, the "AHM Parties") for, among other things, service mark infringement under Section 43(a) of the Lanham Act, common law service mark infringement, unfair competition and deceptive trade practices under the laws of the State of New York (the "Counterclaim").

8.     On January 8, 2008, following the Petition Date, AHB filed Proofs of Claim in the Bankruptcy Cases for its unliquidated claims against AHM Investment and AHM Corp. related to the Action [Claim Nos. 8480 and 8841] (collectively and together with any claims or amounts set forth on the Debtors' Schedules of Assets and Liabilities [Docket Nos. 1343-1350, 1820-1824], the "Proofs of Claim")

9. On or about January 10, 2008, the United States Patent and Trademark Office (the "US Patent Office") registered AHB's service mark, "American Home Bank," on the principal register.

10. American Home Mortgage Holdings, Inc., American Home Bank and The Bancorp, Inc. entered into a certain stock purchase agreement dated April 1, 2009 (the "SPA") to sell the stock of American Home Bank to The Bancorp, Inc.

11. On May 15, 2009, this Court approved by order [Docket No. 7398] the terms of a settlement by and among the Parties and The Bancorp, Inc. contingent upon the closing of the sale pursuant to the terms of the SPA (the "Original Settlement").

12. The SPA provided, however, that if the approval of the Office of Thrift Supervision ("OTS") was not received by September 30, 2009, subject to extension, the SPA could be terminated. OTS approval was not received and the SPA and the Original Settlement terminated.

13. American Home Bank is now in the process of liquidating and will cease using the name "American Home Bank" upon completion of its liquidation.

14. In order to resolve the Action, the Parties hereby seek approval of the Settlement Agreement.

## THE SETTLEMENT AGREEMENT

15. The principal terms of the Settlement Agreement are set forth below:[2]

    (1) <u>The Effective Date</u>: The Settlement Agreement shall be effective upon entry of the Bankruptcy Court order approving the Motion.

---

[2] The terms of the Settlement Agreement set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Settlement Agreement. To the extent of any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

(2) Limitation on Name Use: Prior to American Home Bank's completion of voluntary dissolution, the AHM Parties agree not to sell, assign, transfer or convey the right to use the name "American Home Bank" to any Party. The AHM Parties further promise to refrain from taking any further actions in the prosecution of AHM Investment's application with the US Patent Office to trademark the name "American Home Bank."

(3) Cessation of Name Use: Upon American Home Bank's completion of voluntary dissolution and the cancellation of American Home Bank's charter by the OTS, the AHM Parties shall cease using the name "American Home Bank" in commerce. The AHM Parties shall use commercially reasonable efforts to complete voluntary dissolution and cancel the charter by December 31, 2010, though AHB agrees that this in no way creates a binding obligation to complete voluntary dissolution and cancel the charter of American Home Bank by this date.

(4) Dismissal of the Action: Upon cancellation of American Home Bank's charter and the complete cessation by the AHM Parties of the use of the name "American Home Bank" in commerce, AHB and the Debtors promise to cause their attorneys to submit to the SDNY the stipulation (the "Stipulation"), substantially in the form attached as Exhibit A to the Settlement Agreement, dismissing the Action with prejudice.

(5) Mutual Release: Upon the filing of the Stipulation with the SDNY, the Parties, individually and on behalf of each of its subsidiaries and affiliates, irrevocably and unconditionally, without limitation, release, acquit and forever discharge the other Parties from any and all claims (including, without limitation, administrative or priority claims), counterclaims, actions, or causes of action, arising from, relating to, or connected with the use of the name "American Home Bank," including, without limitation, claims of service mark infringement and any other claims alleged by any Party in the Action. Upon the filing of the Stipulation with the SDNY, the Proofs of Claim and any other claims filed by or on behalf of AHB in the Bankruptcy Cases shall be deemed disallowed, with prejudice, and without the need for any further action by the Parties or order from the Bankruptcy Court.

(6) Admission: By entering into the Settlement Agreement, none of the Parties admits any liability to any other Party. None of the Settlement Agreement, any of its terms or provisions nor any of the negotiations or proceedings in connection with it (a) are, or are intended to be, an admission by any Party of any evidence of the truth of any fact alleged, or the validity of any claim that has been or could have been asserted, or of any liability, fault or wrongdoing of any Party, or (b) shall be offered or received in evidence in any action or proceeding of any kind other

> than such proceedings as may be necessary to consummate, defend or enforce this Agreement.

## RELIEF REQUESTED

16.  By this Motion, the Debtors respectfully request entry of an order, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, approving the Settlement Agreement and authorizing the Debtors to enter into the same. The Debtors have weighed the costs, risks and disruption that would arise from litigating the Action against the compromises contained within the Settlement Agreement. In the Debtors' judgment, the Settlement Agreement is reasonable and serves the best interests of the Debtors, their estates and creditors, particularly when compared with the costs and disruption of further litigation.

## BASIS FOR RELIEF REQUESTED

17.  Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'") (*quoting In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

18.  In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and

fair assessment of the [claims]." *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1153 (3d Cir. 1979); *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (quoting, *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

19. The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved. The four enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); accord *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

20. The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in *Meyers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996). The bankruptcy court should not substitute its judgment for that of the Debtors. *See Neshaminy Office Bldg.*, 62 B.R. at 803. The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

21. The Debtors respectfully request that the Court approve the Settlement Agreement because its terms lie well above the lowest point in the range of reasonable potential litigation possibilities. In addition, each of the applicable *Martin* factors weighs in favor of approving the Settlement Agreement. Accordingly, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

### A. The Probability Of Success In Litigation

22. While the Debtors believe they have a strong litigation position and would ultimately prevail, the Action (as with any litigation) has a level of risk. AHB is vigorously defending in the litigation and has asserted both full defenses and counterclaims. In light of the litigation risks, costs and distraction from the Debtors' efforts to effectuate the Plan, the Debtors believe that the terms of the Settlement Agreement are reasonable. The resolution of the Action under the terms of the Settlement Agreement, without the need for further litigation, is a favorable outcome because it will save the Debtors considerable time and expense attendant with litigation and will avoid distraction to the Debtors' efforts to maximize value for their creditors.

### B. The Likely Difficulties In Collection

23. If the AHM Parties are successful in prosecuting the Action, it is unclear how difficult collection of any judgment would be. However, given the vigorous defense by AHB and the possibility of an appeal, a significant period of time could elapse before the Debtors obtain access to any judgment.

### C. The Complexity Of The Litigation Involved And The Expense, Inconvenience And Delay Necessarily Attending It

24. The Settlement Agreement satisfies the third factor in *Martin's* four-factor test largely for the reasons set forth above. In determining whether to enter into the Settlement Agreement, the Debtors, in consultation with their professionals, analyzed the likely cost of

litigating the Action. These costs would include further motions practice, trial preparation, and expert expenses, among other things. As a result of such consultations, the Debtors believe the Settlement Agreement is a cost effective and efficient resolution of all matters between the Parties.

### D. The Paramount Interest Of Creditors

25. Entry into the Settlement Agreement serves the paramount interest of the creditors of the Debtors. The Settlement Agreement's resolution of the claims, counterclaims and defenses asserted among the Parties represents a savings for the creditors by obviating further litigation. Therefore, the "paramount interest of creditors" factor of *Martin's* four-factor test is satisfied and weighs in favor of the Court approving the Settlement Agreement.

### E. Summary

26. The resolution of the Action embodied in the Settlement Agreement represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes, obviates the expense, delay, and inconvenience attendant in any litigation, and advances the paramount interests of creditors. Therefore, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

### NOTICE

27. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) the Parties; (iii) counsel to the Committee; and (iv) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## NO PREVIOUS REQUEST

28.  No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court issue and enter an Order, in the form attached hereto as **Exhibit B**, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, (i) approving the Settlement Agreement, and (ii) granting such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
October 13, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Sean Beach
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors*