# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
|  | : | Case No. 07-11047 (CSS) |
| American Home Mortgage Holdings, Inc., *et al,*[1] | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : |  |
|  | : | **Re: D.I. 6495, 9332, 9333** |

----------------------------------------------------------------- x

## JOINT OBJECTION OF THE DEBTORS AND THE COMMITTEE TO THE SECOND INTERIM AND FINAL APPLICATIONS OF THE OFFICIAL COMMITTEE OF BORROWERS' LEGAL PROFESSIONALS FOR PAYMENT OF FEES AND EXPENSES

American Home Mortgage Holdings, Inc., *et al.*, the debtors and debtors in possession in the above captioned chapter 11 cases (the "Debtors") and the Official Committee of Unsecured Creditors (the "Creditors Committee"), hereby file this objection (the "Objection") to (i) the *Second and Final Application of Gilbert LLP for Allowance of Fees and Reimbursement of Expenses as Co-Counsel to the Official Committee of Borrowers for the Period of March 1, 2009 through August 16, 2010* [Docket No. 9332] (the "Final Gilbert Application") and (ii) the *Second Interim and Final Fee Application of Zuckerman Spaeder LLP for Approval and Allowance of Compensation and Reimbursement of Expenses* [Docket No. 9333] (the "Final Zuckerman Application, collectively with the Final Gilbert Application, the "Final Applications"), and in support thereof respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

## BACKGROUND

1.     On August 6, 2007 (the "Petition Date"), the Debtors commenced

voluntary cases (the "Bankruptcy Cases") under chapter 11 of title 11 of the United States Code

(the "Bankruptcy Code") with this Court.  Since the Petition Date, the Debtors have continued in

the operation of their businesses and the management of their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 14, 2007, the Office

of the United States Trustee (the "U.S. Trustee") appointed the Creditors Committee.  No trustee

or examiner has been appointed in these Cases.[2]

2.     On August 15, 2008, the Debtors filed their Chapter 11 Plan of Liquidation of the

Debtors (as amended, the "Plan") [Docket No. 5450] and Disclosure Statement Pursuant to

Section 1125 of the Bankruptcy Code with Respect to the Chapter 11 Plan of Liquidation of the

Debtors (as amended, the "Disclosure Statement") [Docket No. 5451].

3.     On September 9, 2008, certain individuals, through their co-counsel Gilbert

Oshinsky LLP (f/k/a Gilbert Randolph LLP) ("Gilbert") and Zuckerman Spaeder LLP

("Zuckerman", collectively with Gilbert, the "Borrowers' Committee Counsel") filed a motion

[Docket No. 5675] (the "Borrowers' Motion") seeking appointment of an official committee of

borrowers in the Bankruptcy Cases.  In the Borrowers' Motion, the movants argued that the cost

of the borrowers' committee's professionals "should be minimal" and that a borrowers'

committee's responsibilities "should have little overlap with those of the [Creditors']

Committee".  (B. Mot. at 18-19.)

4.     The Debtors and Creditors Committee objected to the Borrowers Motion [Docket

Nos. 6112 and 6115, respectively], specifically disputing that an additional statutory committee

---

[2]     By order dated April 1, 2009, however, the Court appointed a fee examiner to review and make
recommendations with respect to certain fee applications submitted by professionals [Docket No. 7218].

would entail "minimal" cost to the Debtors' estates. (Debtors' Obj. at ¶ 55-56; *accord* CC Obj. at ¶ 16 (noting that movants sought a "blank check" with respect to reimbursement of their costs)). At the October 8, 2008 hearing on the Borrowers' Motion, counsel for the movants assured the Court that a borrowers' committee would focus narrowly on issues relevant to borrowers, and would not be looking to touch on issues for which the Creditors Committee would be responsible to address.[3]

5.     On October 10, 2008, this Court entered an order (the "Appointment Order") [Docket No. 6220] directing the U.S. Trustee to appoint an Official Committee of Borrowers (the "Borrowers' Committee") and scheduling a hearing for October 22, 2008 to consider the scope of the appointment and any limitations that would be imposed on the Borrowers' Committee.

6.     By notice dated October 21, 2008 [Docket No. 6407], the U.S. Trustee appointed the Borrowers' Committee. The Court held a hearing on October 22, 2008, at which it made certain rulings with respect to the items left open in the Appointment Order. On November 4, 2008, the Court entered an order supplementing the Appointment Order (the "Retention Order") [Docket No. 6495] consistent with its rulings at the hearing, which ordered, *inter alia*, that (i) the scope of the Borrowers' Committee's rights and responsibilities was limited to matters relating to the Plan, global stay relief on behalf of all borrowers in foreclosure and any incidental related

---

[3]     Specifically, counsel stated:

[G]iven that first of all we've got a Borrowers Committee with a relatively narrow focus, we're not looking to – the Committee is not looking to touch on all issues in the case, the Creditors Committee is for that purpose. The [purpose of the] Borrowers Committee would be simply to focus on issues relative to the borrowers. Secondly, like I said, where this case is, the assets have mostly been liquidated. There's a plan on the table. It's just a question of addressing the notice and other problems that we've raised in our papers and getting the case to the finish line.

(10/8/08 Hr'g Tr. [Docket No. 6529] at 20:10-20.) Later in the hearing, counsel for the movants reiterated that the borrowers' committee "would not be seeking to do all the things that you normally have a committee look into, preference actions, that sort of thing, but there are some issues on which borrower interests and interest[s] of general unsecured creditors diverge, and on those issues, a Borrowers Committee would be active . . . ." (*Id.* at 70:12-17.) Counsel went on to state that "the suggestion that a Borrowers Committee's role should be narrow is one that the borrowers completely understand and accept, and we think it would be appropriate to go forward on that basis". (*Id.*

issues, (ii) the Borrowers' Committee was not authorized to retain any professionals other than counsel and (iii) the compensation and reimbursement of expenses of counsel for the Borrowers' Committee was capped at $250,000 (the "Fee Cap").

7.    On November 25, 2008, the Disclosure Statement was approved and confirmation of the Plan was initially scheduled for January 28, 2009 (the "Confirmation Hearing").[4]

8.    On January 22, 2009, the Borrowers Committee filed an objection to the Plan (the "Plan Objection") [Docket No. 6883] challenging, among other things: (i) the adequacy of notice of the bar dates established previously in the Bankruptcy Cases, (ii) the extension of the automatic stay post-confirmation, (iii) the alleged conflicts of interest of the Plan Trustee and the Plan Oversight Committee (as defined in the Plan), (iv) the Plan's exculpation provisions, (v) the proposed mechanism for the estimation, liquidation, and allowance of EPD/Breach Claims (as defined in the Plan) (such mechanism, the "EPD/Breach Claims Protocol"), (vi) the proposed comprehensive settlement of inter-debtor claims and potential inter-estate disputes in the Plan (the "Stipulated Asset Allocation"), and (vii) whether the Plan satisfied the "best interests of creditors" test of Bankruptcy Code section 1129(a)(7).  Given that the EPD/Breach Claims Protocol, the Stipulated Asset Allocation, and hypothetical chapter 7 liquidation analysis did not implicate "borrower" interests as such,[5] the Creditors Committee and the Debtors believe that the

---

at 70:22-25.)

[4]    Based in part on the Borrowers' Committee's intent to present expert testimony at the Confirmation Hearing, the Debtors adjourned the Confirmation Hearing to February 9, 2009, so as to provide time to review the Borrowers' Committee's expert report and depose the Borrowers' Committee's expert.

[5]    The Borrowers' Committee's challenge to the EPD/Breach Claims Protocol was that it would purportedly allow EPD/Breach Claims at inflated values, thus diluting the recoveries of other creditors of the respective Debtors' estates.  The challenge to the Stipulated Asset Allocation was that it purportedly disadvantaged AHM Corp., resulting in diminished recoveries for AHM Corp.'s creditors.  The Borrowers' Committee went on to argue that AHM Corp.'s creditors would fare better in a chapter 7 liquidation than they would fare under the Plan, thus implicating section 1129(a)(7) of the Bankruptcy Code.  The Debtors believe that objections to the Plan based on the Plan's general fairness to "creditors" obviously exceeded the narrow scope of the Borrowers' Committee's appointment and strayed significantly into territory properly reserved for the Creditors Committee.

Borrowers' Committee was using its objection to these critical elements of the Plan solely to obtain negotiation leverage.

9.      The Debtors and the Creditors Committee made numerous modifications to the Plan specifically to address anticipated borrower concerns.  When the Debtors and Creditors Committee were unwilling to accede to the Borrowers' Committee's demands with respect to Plan amendments, the Borrowers Committee pressed the Plan Objection, which was overruled *in toto* at the conclusion of the three-day hearing on confirmation of the Plan held February 9-11, 2009 (the "Confirmation Hearing").

10.     On April 16, 2009, the Borrowers' Committee Counsel submitted the *First Interim Application of Gilbert Oshinsky LLP for Allowance of Fees and Reimbursement of Expenses as Co-Counsel to the Official Committee of Borrowers for the Period of October 22, 2008 through February 28, 2009* [Docket No. 7286] (the "First Gilbert Application") and the *First Interim Fee Application of Zuckerman Spaeder LLP for Interim Approval and Allowance of Compensation and Reimbursement of Expenses* [Docket No. 7287] (the "First Zuckerman Application", collectively with the First Gilbert Application, the "First Interim Applications").

11.     In the First Interim Applications, the Borrowers' Committee Counsel requested legal fees totaling $540,174.25 and expenses totaling $25,489.20.  This request was for the period from October 2008 to February 2009 for Gilbert and from October 2008 to March 2009 for Zuckerman (together, the "First Application Period").  This request was more than double the Fee Cap established by the Court and far exceeded even the $400,000 increased cap requested by the Borrowers Committee.

12.     On May 5, 2009, the Debtors and the Creditors Committee objected to the First Interim Applications by the *Joint Objection of the Official Committee of Unsecured Creditors*

and the Debtors to the Applications of the Official Committee of Borrowers for Payment of Fees and Expenses of their Legal Professionals in Excess of the Court Determined Cap [Docket No. 7345] (the "First Fee Objection").

13.    Following a hearing on October 14, 2009, the Court granted the First Zuckerman Application in full by order dated December 10, 2009 [Docket No. 8393] and the First Gilbert Application in full by order dated January 11, 2010 [Docket No. 8489] (together, the "First Interim Fee Orders").

14.    On July 28, 2010, the *Borrowers' Committee filed the Official Borrowers Committees and Certain Individual Borrowers' Motion to Allow Borrowers to Pursue Discovery in Furtherance of Claims and Defenses Against Non-Debtor Third Parties and, if Necessary, for Relief from the Automatic Stay, and Request for Inspection of Debtors' Documents and Examinations Concerning Debtors' Records Pursuant to Federal Rule of Bankruptcy Procedure 2004* [Docket No. 9053] (the "Discovery Motion").  In the Discovery Motion, the Borrowers' Committee and certain individuals sought an order authorizing them to obtain documents and information from the Debtors pursuant to Federal Rule of Bankruptcy Procedure 2004.

15.    On August 9, 2010, the Debtors and Creditors Committee both filed an objection to the Discovery Motion [Docket Nos. 9094].  As with the many requests for third party discovery previously addressed by the Debtors without resort to motion practice, the Discovery Motion was settled by a stipulated order dated September 23, 2010 [Docket No. 9259].

16.    In the Final Applications, the Borrowers' Committee Counsel seek interim compensation in the amount of $126,843.00 and expense reimbursements in the amount of $12,992.49 for the period during March 1, 2009 through August 16, 2010 for Gilbert and April 1, 2009 through August 16, 2010 for Zuckerman (together, the "Second Application Period") and

- 6 -

final compensation in the amount of $662,104.90 and final expense reimbursements in the amount of $38,224.77[6] for the period during October 22, 2008 through August 16, 2010 (the "Final Application Period").

## ARGUMENT

17.     To avoid unnecessary duplication and cost to the Debtors' estates, the Court ordered a narrow scope of retention (plan and global stay relief issues on behalf of borrowers in foreclosure) and a $250,000 Fee Cap for Borrower Committee Counsel. The Court has approved over $565,000 in Borrower Committee Counsel fees and expenses to date. Borrower Committee Counsel again act as if the scope limitations and Fee Cap do not exist as they request nearly $140,000 more in fees and expenses. Instead of seeking prior approval to expand the scope of retention and increase the Fee Cap, they chose to first incur the fees and then to request Court approval. The Court should enforce the Retention Order and deny the additional fees being requested by Borrower Committee Counsel.

18.     The Borrowers' Committee has violated the Retention Order on several occasions by exceeding the scope and Fee Cap limitations. Leaving the Fee Cap aside for the moment, a large percentage of the fees requested for Second Application Period are for *ultra vires* activity. Specifically, the Borrowers' Committee exceeded the scope of the Retention Order by filing and seeking the relief requested in the Discovery Motion.

19.     By the Discovery Motion, the Borrowers' Committee sought Federal Rule of Bankruptcy Procedure 2004 inspection of all of the Debtors' records on behalf of *individual* borrowers for use in their actions against *third parties*. The Borrowers' Committee Counsel now request remuneration in the Final Applications claiming that the Discovery Motion was within

---

[6]     The Final Gilbert Application indicates that there is a reduction of $4,912.45 in fees and $256.92 in expenses for the First Application Period from those requested by Gilbert in the First Gilbert Application.

066585.1001

the scope of global stay relief.  The Borrowers' Committee makes this claim despite the fact that

(i) stay relief does not apply in the case of third party discovery; (ii) the Court already provided

global stay relief, to the extent necessary, for actions to halt foreclosures and third party

discovery in the *Findings of Fact, Conclusions of Law and Order Confirming the Amended*

*Chapter 11 Plan or Liquidation of the Debtors Dated February 18, 2009* [Docket No. 7042] (the

"Confirmation Order"); and (iii) the Borrowers' Committee exceeded the scope of duties of any

Official Committee, let alone the Borrowers' Committee Scope, by seeking to represent the

interests of individual members of its constituency, as opposed to the constituency itself.  This is

one recent example of the Borrowers' Committee's blatant disregard of the limits placed upon it

by the Retention Order and, along with the continuing disregard of the limits of the Fee Cap,

forms the basis for the Debtors and Creditors Committee request that the Court deny the fees

requested by Borrowers' Committee Counsel for the Second Application Period in excess of the

amount approved in the First Interim Fee Orders.

YCST01:10333195.3

066585.1001

**WHEREFORE**, the Debtors and Creditors Committee respectfully request that the Court sustain this Objection, deny the Applications' request to award the Borrowers' Committee professional fees in excess of the First Interim Fee Orders, and grant such other and further relief as it deems just and proper.

Dated:    Wilmington, Delaware
    November 8, 2010

| | |
|---|---|
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | BLANK ROME LLP |
| _/s/ Sean M. Beach_ | _/s/ Victoria A. Guilfoyle_ |
| Sean M. Beach (No. 4070) | Bonnie Glantz Fatell (No. 3809) |
| Margaret Whiteman Greecher (No. 4652) | David W. Carickhoff (No. 3715) |
| The Brandywine Building | Victoria A. Guilfoyle (No. 5183) |
| 1000 West Street, 17th Floor | 1201 Market Street, Suite 800 |
| Wilmington, Delaware 19801 | Wilmington, DE 19801 |
| Telephone: (302) 571-6600 | Telephone:(302) 425-6400 |
| Facsimile: (302) 571-1253 | Facsimile:(302) 425-6464 |
| | |
| Counsel for Debtors and Debtors in Possession | -and- |
| | HAHN & HESSEN LLP |
| | Mark S. Indelicato, Esq. |
| | Edward L. Schnitzer, Esq. |
| | 488 Madison Avenue |
| | New York, NY 10022 |
| | Telephone: (212) 478-7200 |
| | Facsimile: (212) 478-7400 |
| | |
| | Co-Counsel for the Official Committee of Unsecured Creditors |

YCST01:10333195.3

066585.1001