# EXHIBIT 6



ENDORSED FILED
MAY 1 0 2010
R. REED, Chief Administrative Officer
LASSEN COUNTY COURTS
By _J. Bareis_ Deputy

1  Treva J. Hearne
   SBN 159542
2  **HAGER & HEARNE**
   245 E. Liberty - Suite 110
3  Reno, Nevada 89501
   Tel: (775) 329-5800
4  Fax: (775) 329-5819
   Email: rhager@hagerhearnelaw.com
5         thearne@hagerhearnelaw.com

6  MARK MAUSERT
   SBN 099430
7  930 Evans Avenue
   Reno, Nevada 89512
8  (775) 786 5477
   (775) 786 9658- fax
9
   Attorneys for Plaintiff
10

11
            SUPERIOR COURT OF THE STATE OF CALIFORNIA
12
                        COUNTY OF LASSEN
13

| STATE OF CALIFORNIA ex rel. BARRETT R. BATES, qui tam plaintiff, on behalf of real parties in interest, ALAMEDA COUNTY, ALPINE COUNTY, AMADOR COUNTY, BUTTE COUNTY, CALAVERAS COUNTY, COLUSA COUNTY, CONTRA COSTA COUNTY, DEL NORTE COUNTY, EL DORADO COUNTY, FRESNO COUNTY, GLENN COUNTY, HUMBOLDT COUNTY, IMPERIAL COUNTY, INYO COUNTY, KERN COUNTY, KINGS COUNTY, LAKE COUNTY, LASSEN COUNTY, LOS ANGELES COUNTY, MADERA COUNTY, MARIN COUNTY, MARIPOSA COUNTY, MENDOCINO COUNTY, MERCED COUNTY, MODOC COUNTY, MONO COUNTY, MONTEREY COUNTY, NAPA COUNTY, NEVADA COUNTY, ORANGE COUNTY,PLACER COUNTY, PLUMAS COUNTY, RIVERSIDE COUNTY, SACRAMENTO COUNTY, SAN BENITO COUNTY, SAN BERNARDINO COUNTY, SAN DIEGO COUNTY, SAN FRANCISCO COUNTY, SAN JOAQUIN COUNTY, SAN LUIS OBISPO COUNTY, SAN MATEO COUNTY, SANTA BARBARA COUNTY, SANTA CLARA COUNTY, SANTA CRUZ COUNTY, SHASTA COUNTY, SIERRA COUNTY, SISKIYOU COUNTY, SOLANO | <u>Case No. 49097</u><br><u>Department 1</u><br><br><u>First Amended Complaint Pursuant to the California False Claims Act; Ca. Government Code § 12650 et seq.</u> |
|---|---|

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

1

MILLS 000899

| | |
|---|---|
| COUNTY, SONOMA COUNTY, STANISLAUS COUNTY, SUTTER COUNTY, TEHAMA COUNTY, TRINITY COUNTY, TULARE COUNTY, TUOLUMNE COUNTY, VENTURA COUNTY, YOLO COUNTY, and YUBA COUNTY, <br><br>Plaintiffs,<br>vs.<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., a Delaware corporation; BANK OF AMERICA, N.A., COUNTRYWIDE HOME LOANS, INC., nka BANK OF AMERICA, N.A., CITIMORTGAGE, INC., GMAC LLC, J. P. MORGAN CHASE BANK, WELLS FARGO, N.A., and DOES I-MMM.<br><br>Defendants. | |

COMES NOW the State of California ex rel. Barrett Bates, on behalf of real parties in interest, the Counties of California, above-named, by and through counsel Mark Mausert, and Treva J. Hearne, and hereby complains of defendants as follows:

### Statement of the Case

Plaintiff Barrett Bates seeks recovery pursuant to Ca. Government Code § 12650 et seq., the False Claims Act because the Defendants made false representations in order to avoid payment in full of all recording fees reflecting the establishment and/or transfer of secured interests in real property in the State. After having recorded false, fraudulent, misleading and untruthful documents with the land records of the counties of this State, Defendants failed to cure/correct said false, misleading and untruthful documents and, thereby, avoided, decreased and/or diminished their obligation to pay fees or monies to the counties, the above-named real parties in interest.

///

### Parties

2

MILLS 000900

1. Barry Bates, relator, is a resident of the State of Nevada and an original source of information and authorized to bring this action pursuant to and within the meaning of California Government Code§ 12652(3)( c)(1) and is the qui tam plaintiff because Plaintiff Bates has worked in the secondary mortgage market business and, during the course of his work in June 2009, became aware that the defendants were making false statements in order to avoid or decrease payments owed to the above-named Counties, and brings this action under the False Claims Act of California against defendants for violations of these sections.

2. The State of California is a sovereign State and is one of the United States of America and may be entitled damages for the benefit of the Counties based upon the false claims asserted herein.

3. The above-named Counties are political subdivisions of the State of California (the "State"), which will ultimately be entitled to a portion of the proceeds of this action. The Counties are the real parties in interest. Qui tam plaintiff Bates has brought this action on behalf of the real parties in interest.

4. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC., is a Delaware corporation, and has done business and is doing business in the State and/or in each of the above-named Counties, with its principle place of business in Reston, Virginia.

5. Defendant BANK OF AMERICA, N.A., (BofA) is a national association that originated and serviced residential home loans in the counties of the State.

6. Defendant COUNTRYWIDE HOME LOANS, INC., is a foreign corporation that originated and serviced home loans in the counties of the State.

7. Defendant J. P. MORGAN CHASE, INC. DBA CHASE HOME MORTGAGE CORPORATION is a corporation that originated and serviced residential home loans in the counties of the State.

8. Defendant CITIMORTGAGE, INC. is a corporation that originated and serviced residential home loans in the counties of the State.

MILLS 000901

9. Defendant GMAC MORTGAGE LLC is a limited liability corporation that originated and serviced residential home loans in the counties of the State and, upon information and belief, is wholly owned by GMAC MORTGAGE CORPORATION.

10. Defendant WELLS FARGO BANK, N.A. is a national association dba Well Fargo Home Mortgage Inc. that originated and serviced residential home loans in the counties of the State.

11. DOE defendants I – MMM are corporations, partnerships, limited liability companies, or some other entities which are liable and responsible for concealing, avoiding or decreasing fees or monies which were owed to the above-named counties and the State.

## General Allegations

12. Recovery is sought pursuant to California's False Claims Act, Ca. Government Code § 12650 et seq. and in particular, §§ 12651(7) & (8) for all acts which occurred within ten (10) years of the filing of the original complaint.

13. During the ten years immediately preceding the filing of the original Complaint herein, Defendants with full knowledge, and/or reckless disregard, and or willful ignorance, made false representations in order to avoid payment in full for all fees for recordation of documents reflecting the establishment and/or transfer of secured interests in real property in the State, and further failed to record documents with the intent of avoiding payments to the Counties.

14. The Defendants adopted the Mortgage Electronic Registration System (MERS) to deprive county and state governments of revenue used among other things to maintain county real property records, fund the judiciary, fund school systems, and provide other government services. But for the recordation of false statements, the Defendants would have paid additional recording fees to the Counties.

15. MERS is named in millions of recorded documents in the counties in the State. Defendants recorded or caused to be recorded deeds of trust/mortgages and other documents which identified MERS as the "beneficiary," which MERS is not, or the

4

"nominee of the lender" and "lender's successors and assigns," which MERS never was, and as holding "legal title" when the legal title rested with the Trustee in this State which uses a deed of trust to secure a mortgage; thereby, the Defendants falsely named, appointed and or characterized MERS in any of the afore-named capacities in numerous documents recorded throughout the counties of the State over the last ten (10) years.

16. Defendants made these characterizations for MERS despite the fact that MERS never had and has no employees, and, instead, purported to act since the inception of MERS, through alleged authorized certifying officers and signatories who were never authorized to act by any lawful official act or corporate resolution of MERS or to act in any MERS' representative capacity whatsoever. Further, such alleged signatories or certifying officers were not and are not authorized by any applicable law to take any action on behalf of MERS with regard to any documents recorded in the State bearing MERS' name or on MERS' behalf.

17. Additionally, these documents affected the interests in real estate and, if recorded, were required to be recorded truthfully so as to maintain the veracity and sanctity of the land records and to allow the general public to rely on the truth of any document filed therein.

18. Despite millions of deeds of trust that were executed with promissory notes which notes were then transferred to various MBS that were not members of MERS, the Defendants with reckless disregard, and or willful ignorance, failed to record the documents described in this Amended Complaint and other documents in the above-named Counties. Relator Bates now brings this action under Ca. Government Code § 12651 (7) & § 12651 (8) against defendants for violations of these sections.

19. As of September, 2009, MERS had been named as the mortgagee or beneficiary on approximately 62 million mortgages and deeds of trust in the United States by MERS members.

20. Defendants acted in concert in violation of California Government Code §§12650-12656, so as to commit the acts herein alleged and are each liable for the

MILLS 000903

violations of the False Claims Act.

21. Defendants obtained monies from borrowers on mortgages in each County of this State, pursuant to settlement statements which indicated recording fees were due and owing, which reflected each defendants' knowledge that such recordings were required by law, but which documents defendants thereafter failed to record.

22. Additionally, these documents affected the interests in real estate and were, therefore, to be recorded pursuant to Ca. Government Code §27280 and Ca. Civil Code § 880.350 and in order to proceed falsely under the provisions of Ca. Civil Code 2924 and other provisions of California law. Thus, Defendants recorded documents that did not reflect and do not reflect the true nature of the security instruments in the land recording systems throughout the State.

23. While recording deeds of trust, mortgages, or any other security instruments and/or assignments the Defendants availed themselves of protection from subsequent purchasers and lien holders as provided by the California recording statutes. When recording such interests Defendants were obliged to record only truthful documents pursuant to the laws of the State.

24. The Defendants' contractual and agency relationships with MERS also required, as does California law, that additional documents be truthfully recorded if there was a transfer of an interest in real property, i.e. the status of the loans and/or documents changed to a non-MERS Member. Specifically, MERS' policies and promises with their members oblige them to record and pay for recordation of documents reflecting the establishment and/or transfer of secured interests in real property, or beneficial interest in the underlying promissory notes, when a non-MERS member acquires an interest in any debt evidenced by a security instrument.

25. Defendants failed to record or cause to be recorded any such documents of a non-MERS member interest in the applicable loans and security instrument with the intent of avoiding payments to the Counties of the State. Specifically, all securitized mortgage trusts created by defendants were never members of MERS but yet allegedly

MILLS 000904

bought ownership interests in the applicable loans.

26. Based on the false representations, the recorded documents in the land records do not reflect the true beneficial ownership of the loans in question or accurately represent the ownership of the security instruments securing the loans/notes. Thus, the Defendants' own contractual relationships with MERS and with the residential mortgage backed securitization trusts which Defendants represent were also violated and not complied with as promised. Specifically, the applicable disclosures to investors of those securitization certificates obliged Defendants to truthfully record deeds of trust, mortgages, deeds of trust/mortgages assignments, and other documents evidencing the non-MERS Member investors' interest in real property, and, in an event of default, other foreclosure related documents recorded in the counties of the State.

27. But for the initial recordation of false statements and documents, which false documents also then created an obligation to record other curing/corrective documents, the Defendants would have paid additional recording fees to county recording offices that would have been used for the benefit of all residents of the counties and the State.

28. Using those false statements, the Defendants failed to satisfy their own contractual obligations, violated the sanctity of the land records and used those misleading documents to induce securitization and certificate investors to purchase residential mortgage backed securities issued from mortgage securitization pools that the Defendant financial institutions created, aggregated, sponsored, underwrote, and sold in the securities markets around the world. All the time that these acts were occurring, the Defendants failed to record any real estate interests of those securitizing trusts in the land records of the state; thereby, not paying the necessary recording fees in the applicable land recording offices.

29. But for the false assertions and claims in the recorded documents, MERS and/or the other Defendants would have recorded documents and paid county governments fees that accurately reflected the status of the respective loans and documents.

30. Falsely recording MERS as the beneficiary on their deeds of trust created an

MILLS 000905

oversimplified, illusory, and false chain of title that purported to justify payment of less money in recording fees; depriving the counties and the State from those fees and directly contributed to the financial deficits that the State of California and its counties are currently experiencing.

31. Further, in an event of foreclosure and in order to proceed under Ca. Government Code § 12651 et seq., Defendants continued to record false and misleading documents to avail themselves of the privilege of the non-judicial foreclosure statutes and falsely asserted that MERS was authorized, as a false "nominee of lender or beneficiary of lender," to record documents enabling Defendants to continue perpetrating the fiction in the recorded documents by filing additional documents purporting to designate substitute beneficiaries and appoint substitute trustees to commence foreclosure proceedings.

32. When a promissory note secured by a MERS deed of trust/mortgage was assigned to a mortgage backed security entity ("MBS"), a securitized mortgage investor pool, mortgage loan pool, special purpose vehicle ("SPV"), or other real estate mortgage investment conduit ("REMIC"), pursuant to MERS' own rules and membership agreements the agency authority, if any, and the relationship of MERS and all of its members to the promissory note and deed of trust/mortgage was extinguished, and a truthful recording should have been made to accurately reflect the change of status with respect to the loans.

33. The MERS membership agreement obliged Defendants to make two separate recordings in the event of a transfer to a mortgage backed security pool or trust (MBS, SPV, or REMIC) outside the MERS system: (1) an assignment of beneficial interest and (2) a designation of substitute trustee or beneficiary.

34. Immediately upon every such assignment to a securitized mortgage pool trust, the assignment of the Note and/or Deed of Trust to a new beneficiary was required to be recorded in the County where the real estate was located. Defendant MERS and the named Defendants, however, failed to make such recordings or pay the required fees.

MILLS 000906

35. Despite millions of deeds of trust in the State of California being executed with promissory notes, which notes were then allegedly transferred to various MBS, SPV or REMICs that were non-MERS Members, the Defendants intentionally failed to record the documents described above, and other documents, so as to reflect the non-MERS' Members' interest in the loans and in the land records.

36. As of September, 2009, MERS had been named as the mortgagee or beneficiary on approximately 62 million mortgages and deeds of trust in the United States.

37. Defendants violated the False Claims Act by taking such actions as preparing and recording documents containing information the Defendants knew was false including without limitation documents which incorrectly and untruthfully designate MERS as a beneficiary or nominee of lender, including but not limited to: (1) deeds of trust; (2) notices of substitute trustee; (3) notices of default; (4) trustees' deeds of sale following foreclosure; (5) recording documents which purported to assign *from* MERS to some other entities, even entities that are not MERS Members, a deed of trust/mortgage without first transferring the underlying promissory note evidencing such indebtedness; and (6) preparing and recording other documents intended to avoid or decrease recording fees re documents that would otherwise have reflected the truth.

38. Defendants with reckless disregard, and or willful ignorance, recorded, and continue to record documents wherein employees of companies other than MERS falsely identify themselves as being "officers and/or vice presidents" of MERS, or in some instances, of the Federal Deposit Insurance Corporation or other entity which has no knowledge of the actions of these supposed authorized signatories or certifying officers. These so called certifying "officers and/or vice presidents" have no employment relationship with MERS and are not, in fact, officers or vice presidents of MERS.

39. MERS and the other Defendants allow non-MERS employees to identify themselves as officers or vice presidents of MERS because such identification creates the illusion of a recorded chain of title whereby the actual creditors and/or loan beneficiaries remain hidden from public record. Because promissory notes were frequently assigned,

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

MILLS 000907

the falsely recorded documents decreased the number of recording fees paid by Defendants.

40. Defendants with reckless disregard, and/or willful ignorance, or otherwise, with the requisite actionable *scienter*, caused, and continue to cause to be made and used, false records and statements designed to conceal, avoid and/or decrease their obligations to pay recording fees to the above-named Counties of the State.

41. The stated MERS' business model was to eliminate the recordation of assignments and transfers of interests that affect real estate throughout the State and the remaining jurisdictions of the United States. MERS advertises itself, via its website and written material as providing the ability to avoid the time and expense of recording through a scheme whereby MERS falsely holds itself out to the world as a beneficiary, or as a nominee or mortgagee. Each Defendant knew or should have known at all relevant times that this recording fee avoidance scheme was predicated upon the false recordings disclosed in this Complaint.

42. Defendants and others affirmatively acted to cause MERS to be listed as the lien holder of record on all recorded security instruments relating to notes registered on the MERS® System.

43. The process of falsely using MERS as the beneficiary under a security instrument to avoid naming the true owner of the applicable Note was devised to eliminate recording of documents affecting interests in real estate, in violation of the state laws under which MBS trusts were created, the laws of the State as referred to hereinabove, and the Defendants continue to use those false documents to avoid payment of required recording fees and to pursue judicial and non-judicial foreclosures around the country.

44. When the note that was associated with a deed of trust on real estate was transferred to a non-MERS member, the policies and terms and conditions of MERS required that the assignment of the loan from MERS to the non-MERS member be executed by MERS and recorded in the county where the real property was located and thereby, the loan would be deactivated from the MERS® System.

MILLS 000908

45. Each and every loan registered on the MERS System secured by real property in the State that was secured by a deed of trust that designated MERS as the beneficiary and was assigned to an MBS is a loan that was required under MERS' rules to be deactivated and to be the subject of a recorded assignment of the deed of trust from MERS to the MBS pool.

46. MERS did and does maintain a list of all MERS Members, and no MBS pool and no trust (i.e. MBS, SPV, REMIC) which owned or owns loans secured by MERS deeds of trust on real estate in the State was or is a MERS Member.

47. Defendants failed to record the transfers of promissory notes and the assignment of the deeds of trust to non-MERS members, then continued, even after the Defendants knew such notes had been assigned outside the MERS system, to record documents which Defendants knew were false in that the documents purported to reflect a continuing relationship between MERS, and its MERS Members to those loans, and finally the Defendants failed to pay to the counties the recordation fee for documents the Defendants knew were required to be recorded in order to cause the real property recordation system in the State to reflect the true ownership thereof and convey any authority to act relative to those loans.

48. The failure to record the required transfers and assignments of security interests and the recordation of knowingly false documents was motivated by the financial self-interest of Defendants to improperly profit from their business activities, or alternatively, had that effect. Further, having filed false documents, such false recordings enabled Defendants to profit from their other activities with respect to their: (1) acquisition of credit default swaps; (2) credit derivatives; (3) lack of any loan origination underwriting standards; (4) lack of any underwriting standards for the securitized mortgage trusts the Defendants created; (5) hide/clouded their failure to comply with any IRS REMIC rules regarding transfer of loans to the REMIC entities; and (6) create the appearance of an arms-length transaction so as not to violate the well established principle of good faith and fair dealing.

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

MILLS 000909

49. The designation of MERS as a beneficiary or nominee of the lender on a deed of trust was a false designation of and/or by MERS in numerous ways, namely: (1) neither MERS nor the "lender" so designated was the true lender; (2) MERS was not the nominee of the true lender of the funds for which the promissory note was executed; (3) MERS did not collect or distribute payments, pay escrow items, hold client funds on deposit, pay insurance for clients or borrowers, or pay taxes; (4) MERS had no right to collect money on the note or to receive any proceeds or value from any foreclosure; and (5) the name "MERS" does not appear on any promissory note secured by real estate in the State.

50. The Defendants have used the non-judicial foreclosure statute to foreclose upon borrowers with false documents in violation of the laws of the State. If accurate and truthful records would be maintained and recorded by Defendants, these truthful documents would result in the payment of fees for the recording of such documents.

51. An example of how the Defendants availed themselves of the benefit of the non judicial foreclosure system through the recording of false statements without paying the obligations under those same recording statutes can be demonstrated by the cradle-to-grave review of the documents in the life-cycle of the MERS deed of trust of Luis Carlos Martinez of San Bernardino County.

   a. On or about July 19, 2007, Mr. Martinez refinanced his residence by executing a deed of trust with MortgageIt named as the "lender" and would be referred to in common parlance as the true beneficiary of the note because the "lender" is assumed to have been the entity that loaned the funds for the loan. MERS was named on the deed of trust as the beneficiary or the "nominee of the lender" and the Trustee named was Security Union Title Insurance Company. The deed of trust contained false statements in that MortgageIt was not the lender and loaned no funds, and MERS was not a beneficiary and was not an agent of the lender and had no authority to act as an agent of the true

MILLS 000910

lender/true beneficiary.

b. Mr. Martinez made his payments on the loan until the rate and payment adjusted. On November 28, 2008, Wells Fargo Home Mortgage recorded a Notice of Default Declaration pursuant to California Civil Code 2923.5 stating that Wells Fargo Home Mortgage was the mortgagee, beneficiary or their authorized agent. No document was recorded that transferred any interest in the loan or real property of Mr. Martinez to Wells Fargo Home Mortgage.

c. On December 3, 2008 a substitution of Trustee was recorded in Mr. Martinez's chain of title wherein Security Union Title and MERS represented themselves to be the Trustee and beneficiary under the deed of trust and MERS substituted First American Loanstar Services as Trustee for purposes of foreclosure. No document was recorded that gave authority to MERS to act as agent for the true lender to substitute the Trustee, and MERS did not allege to act on behalf of Wells Fargo Home Mortgage which had five days earlier recorded the Notice of Default Declaration as the alleged then beneficiary or agent of the beneficiary under the Martinez deed of trust.

d. On December 3, 2008, First American Loanstar Trustee recorded a Notice of Default with the false statement that Loanstar Trustee was authorized to act for the true lender or beneficiary of the promissory note and further implying that the beneficiary of the note held the deed of trust and held any security interest in the home of Mr. Martinez.

e. On January 7, 2009, a document was recorded in the chain of title of Mr. Martinez home signed by Kyle Forsgren who purported to sign on behalf of MERS, but is not an employee nor certifying officer of MERS, in Tarrant County, Texas, (First American Loanstar has a corporate office in Westlake, Texas). This Jan. 7, 2009 document purported to

13

MILLS 000911

assign the deed of trust to Wells Fargo Bank, N.A., not Wells Fargo Home Mortgage. No document was recorded that conveyed any interest in Mr. Martinez's home or loan to Wells Fargo Home Mortgage, the entity whose Notice of Default Declaration described in (b) above started the non-judicial foreclosure of the Martinez home.

    f. On March 4, 2009, First American Loanstar Trustee Services recorded a Notice of Trustee's sale on the Martinez home.

    g. After this Notice of Trustee's Sale, the Martinez home was allegedly sold by First American Loanstar Services to the alleged true owner of the loan since prior to the Notice of Default Declaration, Federal Home Mortgage Association (Fannie Mae). No document was previously recorded to show that Fannie Mae had ever declared a default, designated or authorized any agent to designate a substitute trustee, or ever owned any interest in the loan or real estate of Mr. Martinez.

52. When a mortgage loan is securitized (placed in a mortgage loan pool that is subsequently sold in the securities market), and *does not default*, the false designation of and use of MERS allows: (1) the loan funder; (2) the securitized loan sponsor; (3) the loan master servicer; (4) the loan sub-servicers; (5) the securitized loan trust; (6) the loan custodian; (7) the securitized loan trustee; (8) the credit default swap and credit derivatives parties/counter parties, and others, to avoid recording any interest that each and every one of them would have in the property secured by the deed of trust/mortgage.

53. MERS and the other Defendants effectuate transfers of real estate interests via "electronic handshake(s)" that the Legislature of the State intended to be recorded by the county land recorders for the purpose of providing an accessible public record that reflects the actual transfers of interests in real estate available to the public and, particularly, by other interested secured creditors and judgment holders where the real estate is situated. That is, Defendants availed themselves of the protection and benefit of the recording and non-judicial foreclosure statutes, while avoiding full payment and

MILLS 000912

1   while impairing integrity of the land records.

2   54. The Defendants knew, and should have known, the MERS system was a sham;
3   was intended to wrongfully bypass the counties' recording requirements; divested the
4   borrowers of the right to know who owned the promissory note that was executed with
5   the deed of trust/mortgage or other security instrument; and recorded false documents
6   to initiate and pursue non-judicial foreclosures, and to otherwise decrease or avoid
7   payment of fees to the Counties and the Cities where the real estate is located.

8   52. The Defendants' actions complained of hereinabove were taken with reckless
9   disregard, and or willful ignorance that the recording of false documents and the failure
10  to record truthful documents jeopardized the real property recording system adopted by
11  the Legislature for the purpose of maintaining certainty in real estate transactions and
12  for public knowledge.

13  53. These recordings and failures to record created/create a cloud on title as to
14  property secured by MERS deeds of trust/mortgages, security instruments and lien
15  releases throughout the State.

16  54. Unlike the recordation system adopted by the General Assembly of the State of
17  California, MERS does not have a reasonable monitoring system to ensure that
18  knowledge of the ownership of the interests in real estate is made available to the public.
19  MERS failed to monitor the documents recorded in the counties of the State and failed to
20  monitor the transfer of interests in real estate by MERS' members and so called
21  "authorized signatories" or "certifying officers."

22  55. Defendants have used these security instruments with MERS being falsely
23  designated as the "beneficiary" as a means of effectuating foreclosures by use of the
24  county Recorders just prior to the foreclosure by recording documents only to the extent
25  of effectuating the foreclosure without recording any of the interim transfers prior to the
26  foreclosure.

27  56. MERS claims to have "saved" at least $2.4 billion dollars in recording costs by
28  not filing or recording documents that reflect the transfer of an interest in real estate on

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800. FAX (775) 329-5819

MILLS 000913

1  loans that have a MERS deed of trust or security instrument, which documents would
2  have otherwise been recorded and which costs are due and owing to the counties of the
3  State by Defendants.

## CLAIM FOR RELIEF

(Violation of Ca. Government Code §12650: the False Claims Act)

57. The Plaintiff relator hereby incorporates all other paragraphs of this First Amended Complaint as if set forth herein.

58. MERS was formed and has operated in the State of California for ten (10) years immediately preceding the filing of this Complaint in this matter and continues to operate with the effect of avoiding and/or decreasing payment of fees or monies to the county Recorders of each county of the State in violation of Ca. Government Code §12650.

59. Defendants prepared and/or recorded false documents, including security instruments (e.g. deeds of trusts/mortgages), notices of declaration of default, notices of default, notices of appointment of substitute trustees, notices of sale, trustees' deeds upon sale, and other documents for the purpose of avoiding and/or decreasing their obligation to pay recording fees.

60. As a direct and proximate result of Defendants' actions as described herein, the above-named counties and the State have been deprived of revenues to which such governmental bodies were legally entitled.

61. As a further direct and proximate result of the Defendants' actions as complained of herein, the counties have been deprived of the use of these revenues and interest thereon.

62. Defendants, with willful ignorance or reckless disregard, failed to pay these recording fees and failed to disclose the transfers and assignments of interests in real estate which had the effect of avoiding and decreasing the recordation fees owed to the counties of the State of California.

63. Defendants, with willful ignorance or reckless disregard, made false, misleading,

MILLS 000914

and untruthful statements recorded in documents in the land records which falsely assert that an interest is held and/or transferred by MERS, or that MERS was or is authorized to act as an agent or nominee for non-MERS members.

64. Pursuant to Ca. Government Code §12650 Defendants are liable for three times the amount of damages actually sustained; for the costs of bringing this action; and for liquidated damages for each act constituting a violation of the False Claims Act.

65. Pursuant to the California False Claims Act, Relator Bates is entitled to recover reasonable expenses and attorneys' fees.

66. The acts of the Defendants in violation of the False Claims Act are continuing by Defendants, and the continuing acts are included as claims on behalf of the real parties in interest and by the Relator.

WHEREFORE, Plaintiff the State of California, *ex rel.* Barrett Bates requests that the Court enter judgment in favor of the State and its counties against Defendants as follows:

1. For treble damages for all recording fees which were not paid in full as required by the laws of the State on any and all such avoided recording fees during the ten (10) years immediately preceding the filing of the original complaint herein;

2. For civil penalties of between $5,000 and $10,000 for each unpaid and/or underpaid recording fee in the ten (10) years immediately preceding the filing of the original Complaint herein;

3. For civil penalties of between $5,000 and $10,000 for each false document recorded, without limitation, each deed of trust, deed of appointment of substitute trustee, deed of foreclosure sale, and other documents recorded in the ten (10) years immediately preceding the filing of the Complaint, which security instrument purported to secure an obligation by real estate in the State and in which MERS was named as beneficiary and/or nominee of the lender;

4. For civil penalties of between $5,000 and $10,000 for each act during the ten (10) years immediately preceding the filing of this Complaint for having knowingly made, used and caused to be made or used, false records and/or statements to conceal,

17

MILLS 000915

...

avoid or decrease obligations to pay or transmit money duly owed to the State and/or its Counties for recording fees reflecting the assignments of rights or interests in real property in the State;

5. For pre-judgment interest on all damages awarded;

6. For reasonable costs and attorneys' fees;

7. For an award to Plaintiff Bates in an amount consistent with the False Claims Act of California; and

8. For such other relief that the Court or jury deems just and equitable.

Dated this 10th day of May, 2010.

_____
Treva Hearne  SBN 159542

_____
Mark Mausert SBN 099430

HAGER & HEARNE
245 E. Liberty St., Ste 110
Reno, NV 89501
(775) 329-5800, FAX (775) 329-5819

18

MILLS 000916