# EXHIBIT 3

1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

-------------------------------- X

IN RE:

AMERICAN HOME MORTGAGE,        Case No.

HOLDINGS, INC., a Delaware     07-11047 (CSS)

corporation, et al.,

            Debtors.

----------------------------------X

DEPOSITION OF TAWNYA LETTAU

Wednesday, October 20, 2010

San Luis Obispo, California

Reported in stenotype by:

Elizabeth A. Doukas, RPR, CSR #9872

```
                                                118
1       So, I mean, I'll represent to you and, you
2   know, if we -- I don't think we're going to have a dispute,
3   but I will represent to you that that is the status of
4   Delaware law.
5       MS. ZIEG:  I'm going to object in one respect,
6   Stam, I disagree that you're entitled to know what
7   documents she looked at.  If she met with counsel and
8   looked at documents based on a conversation she had with
9   counsel, it could be deemed, under Delaware law, that what
10  documents she looked at is protected by work product,
11  unless, the exception would be, looking at that document in
12  some way refreshed her recollection that she testified to
13  today.
14      MR. STAMOULIS:  Well, then, I'll just ask the
15  general question.
16      Q.  Were you shown any documents during your
17  meeting with counsel today?
18      A.  Yes.
19      Q.  Okay.  Did any of those documents refresh your
20  recollection as to what occurred with regard to Ms. Mills'
21  loan?
22      A.  Yes.
23      Q.  And what documents were you shown?
24      A.  The application and a mortgage Broker
25  Agreement.
```

```
                                                119
1       Q.  Okay.  Was anyone who represented the debtors
2   present at your meeting today?
3       MR. YOO:  Counsel, just to be perfectly clear
4   so there's no misunderstanding, I had a meeting with my
5   client prior to the deposition, and there was understanding
6   that the deposition would take place in Ms. Lettau's
7   office, so there was a period of time where, you know,
8   counsel for the debtor was present in the presence of my
9   counsel and myself for approximately 15 minutes while we
10  were waiting for everyone to show up.
11      MS. ZIEG:  And then we found out that the
12  court reporter was in the wrong location with Ms. Mills and
13  we all had to walk down here.
14      MR. STAMOULIS:  Q.  Ms. Lettau, how many
15  conversations have you had with counsel for the debtors?
16      MS. ZIEG:  Objection, vague.
17      MR. YOO:  Go ahead and respond, if you can
18  recall.
19      THE WITNESS:  Two or three.
20      MR. STAMOULIS:  Q.  Do you recall the names
21  of the people at the debtors that you spoke to?
22      MS. ZIEG:  Objection, are you talking about
23  the debtors or are you talking about the names --
24      MR. STAMOULIS:  I'm sorry.
25      Q.  Debtor's counsel?
```

```
                                                120
1       A.  Erin Edwards.
2       Q.  I'm sorry, Erin Edwards, and anyone else?
3       A.  A phone call yesterday from Sharon.
4       Q.  Okay.  And what was the nature of those
5   communications that you had with debtors and -- debtor's
6   counsel?
7       A.  Erin's initial call to me was to try to get a
8   date and a time for a deposition, and that was primarily
9   it.  Sharon yesterday was just calling me to confirm
10  tomorrow, which was today.
11      Q.  Prior to today's deposition, did you ever
12  discuss with debtor's counsel the substance of your
13  recollection regarding the loan with Ms. Mills?
14      A.  No, I did not.
15      Q.  Okay.  Did you ever discuss with the expert
16  that is going to be used by debtors, Mr. Adelson, the
17  substance of your recollection with regard to the loan with
18  Ms. Mills?
19      A.  I've never even spoke with that gentleman or
20  person.
21      Q.  Prior to today's deposition did you ever
22  discuss with anyone the substance of your recollection with
23  regard to the Mills' loan?
24      A.  Only my attorney Chris.
25      MR. YOO:  Again, do not disclose the nature of
```

```
                                                121
1   that conversation.
2       MR. STAMOULIS:  Okay.
3       Q.  I don't want to know the nature of it, but do
4   you know when that discussion took place?
5       MR. YOO:  Counsel, I mean, I feel -- we've
6   had -- I've had numerous conversations with my client ever
7   since -- you know, ever since this notice of deposition was
8   set, I don't think you need to know the numbers.
9       I really -- in California, I don't think --
10  that really comes close to, you know, piercing the
11  attorney/client privilege, because that really cuts really
12  close to, you know, the work product.
13      MR. STAMOULIS:  Well --
14      MR. YOO:  And unless you can show me --
15      MR. STAMOULIS:  -- I'll --
16      MR. YOO:  Unless --
17      MR. STAMOULIS:  -- you know, Counsel, I'll
18  take your representation that there have been numerous
19  conversations.
20      Q.  I just want to confirm for a fact that no
21  conversations regarding the substance of Ms. Lettau's
22  recollection as to this particular loan were had with
23  either debtor's counsel or with debtor's expert prior to
24  today?
25      A.  Yes, the documentation was forwarded to me
```

31 (Pages 118 to 121)

## 122

1  with the declaration and other documentation to review, and
2  that was my job.
3      Q.  Okay.  But you did not have a conversation
4  with debtor's counsel prior to today about the substance of
5  your recollection regarding this loan; is that right?
6      A.  That's correct.
7      Q.  Okay.  Did anyone from American Brokers
8  Conduit or American Home Mortgage contact you recently with
9  regard to your attending deposition in this matter?
10     A.  No.
11     Q.  Did you speak to anyone at your employer with
12 regard to your pending deposition in this matter?
13     A.  My regional manager, only due to the fact that
14 I needed to seek counsel and have some time off.
15     Q.  Did you discuss with anyone other than your
16 attorney the fact that you were going to be deposed here
17 today?
18     A.  Again, my manager, and my husband.
19     Q.  Did your manager -- what if anything did your
20 manager say about today's deposition?
21     A.  We did not discuss anything but that I would
22 be here and he assisted me with counsel.
23     Q.  Did anyone attempt to influence your testimony
24 here today in any way?
25     A.  No.

## 123

1      Q.  Do you feel that the substance of your
2  testimony here today will in any way affect your employment
3  with Chase?
4      A.  No.
5      Q.  Do you feel that the substance of your
6  testimony here today will in any way have any financial
7  impact on you personally?
8      A.  No.
9      Q.  Do you feel that the substance of your
10 testimony here today could have any impact on you
11 professionally?
12     A.  No.
13     Q.  Do you recall receiving a telephone call from
14 myself --
15     A.  Yes.
16     Q.  -- prior to your testimony here today?
17     A.  Yes, I do.
18     Q.  Do you recall the nature of that telephone
19 conversation?
20     A.  Yes, I do.
21     Q.  What is your recollection of that
22 conversation?
23     A.  You introduced me as the attorney for Deborah
24 Mills.
25     Q.  Do you recall whether -- any other aspect of

## 124

1  our conversation?
2      A.  I do not.
3      Q.  Do you recall whether we discussed the
4  substance of your testimony here today in any way?
5      A.  Minimally, yes.
6      Q.  What is your recollection as to what that
7  substance was that we discussed?
8      A.  You asked me if -- I believe you asked me if
9  the loan was brokered.  And I needed to think about it, but
10 I did remember Deborah, and I did make a comment to you
11 that I do remember some confusion during the loan
12 transaction, and that was due to the FICO discrepancy of
13 the one-point exception.
14     Q.  Do you remember anything else about our
15 conversation?
16     A.  At this point I do not.  Without you telling
17 me to perhaps refresh my memory, but I do not at this
18 point.
19     Q.  All right.  Do you recall whether I attempted
20 to influence your testimony here today in any way?
21     A.  No, I do not.
22     MR. YOO:  Counsel, when did you contact my
23 client?
24     MR. STAMOULIS:  I think it was prior to her
25 being subpoenaed.

## 125

1      MR. YOO:  Okay.
2      THE WITNESS:  Yes, it was.
3      MR. STAMOULIS:  Q.  Well, let me ask you,
4  Ms. Lettau, do you recall when I contacted you?
5      A.  I do recall, I don't recall the date or time.
6      Q.  Do you recall whether it was before you
7  received the subpoena in this matter?
8      A.  Yes, it was before.
9      Q.  Okay.  And you were not represented by counsel
10 at the time that I contacted you; is that correct?
11     A.  Correct.
12     Q.  Okay.
13     MR. STAMOULIS:  All right, I have no further
14 questions of this witness.
15     MS. ZIEG:  I have just a few follow-up
16 questions.
17
18        FURTHER EXAMINATION
19
20 BY MS. ZIEG:
21     Q.  In your conversation with counsel for
22 Ms. Mills, did he inquire as to whether you'd be willing to
23 sign a declaration?
24     A.  Yes, he did.
25     Q.  And did he tell what you the substance of that

DiscoveryWorks Global      888.557.8650      dw-global.com