IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :   Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                           :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                               :
                                                                 :   Jointly Administered
                                                                 :
            Debtors.                                             :   **Reference Docket No. 9446**
---------------------------------------------------------------- x

## DEBTORS' OBJECTION TO, AND MOTION TO DISMISS, THE MOTION *IN LIMINE* OF CLAIMANT DEBORAH E. MILLS FOR AN ORDER EXCLUDING THE EXPERT TESTIMONY AND REPORT OF PHILIP M. ADLESON

The above captioned debtors and debtors in possession (collectively, the "Debtors") hereby object (the "Objection") to the Motion *In Limine* of Claimant Deborah E. Mills ("Claimant") for an Order Excluding the Expert Testimony and Report of Philip M. Adleson [D.I. 9446] (the "Motion") and seek to have the Motion dismissed pursuant to Del. Bankr. L.R. 7026-1 (c) (the "Motion to Dismiss"). In support of their Objection and Motion to Dismiss, the Debtors respectfully represent as follows:

## FACTUAL BACKGROUND[2]

1. On August 13, 2010, Claimant filed eight (8) amended claims against each of the Debtors each in the amount of $1,382,500 (the "Amended Claims").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2] The Debtors have detailed the facts surrounding this contested matter in the *Debtors' Objection to Administrative Expense Claims Numbered 10802, 10803, 10804, 10805, 10806, 10807, 10808 and 10809 Filed By Deborah Mills* [D. I. 9405] and incorporate those facts herein. Therefore, the foregoing factual background is summarized to those pertinent facts to the Motion.

2. On August 17, 2010, the Court entered the Scheduling Order Relating to the Motion of Deborah Mills for Order to (I) Amend Proof of Claim and (II) Motion for an Order of Allowed Administrative Expense Claim Priority Against the Estate Pursuant to Section 503(B) of the Bankruptcy Code in Immediately Available Funds and (III) Order of Right to Protection of Certain Property Interest Under Section 361 or (IV) Avoidance Action Against Debtors Pursuant to Section 549 [D.I. 9149] as amended on September 13, 2010 [D.I. 9213] (the "Scheduling Order").

3. The Scheduling Order scheduled an evidentiary hearing on the Amended Claims to be conducted on November 22 – 23, 2010 (the "Contested Matter").

4. On October 15, 2010, the Debtors served on Claimant the Expert Report of Phillip Adleson in Support of Debtors' Objection to Administrative Expense Claims Numbered 10802, 10803, 10804, 10805, 10806, 10807, 10808 and 10809 filed by Deborah Mills, attached hereto as <u>Exhibit 1</u> (the "Expert Report") as required under the Scheduling Order.

5. On November 14, 2010, Claimant filed the Motion *In Limine* of Claimant for an Order Excluding the Expert Testimony and Report of Philip M. Adleson [D.I. 9446].

## ARGUMENT IN RESPONSE TO MOTION IN LIMINE

**I. MR. ADLESON'S TESTIMONY IS ADMISSIBLE UNDER FEDERAL RULE OF EVIDENCE 702.**

6. The admissibility of expert testimony is governed by Federal Rule of Evidence 702 ("<u>Rule 702</u>"). Rule 702 provides:

> If the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In Kumho Tire Co. v. Carmicheal, the United States Supreme Court explained that Rule 702 applied to expert testimony that could be derived from foundations other than a scientific foundation. 526 U.S. 137 (1999). The Court noted that in making the determination of reliability and relevance of expert testimony the factors considered by a trial court may differ "depending on the nature of the issue, the expert's particular expertise, and the nature of his testimony." Id. at 150. Further, a trial court should "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 152.

7. Simply being a lawyer does not disqualify one from testifying as an expert. Askanase v. Fatjo, 130 F.3d 657, 672 (5th Cir. 1997). While a lawyer expert witness should not be allowed to give testimony on what the law is, it is customary to allow a lawyer witness to testify to standard industry practice. See Ting Ji v. Packert, 538 F. Supp. 2d 354 (D. Mass. 2008) (permitting testimony from an entertainment lawyer on standard industry practice); Gilliland v. Hergert, No. 2:05-cv-01059, 2007 U.S. Dist. LEXIS 84508 (W.D. Pa. Nov. 15, 2007) (allowing testimony of an attorney specializing in private equity transactions to provide the jury with useful knowledge of alternative available to private financing); Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562-63 (5th Cir. 2004) (allowing an attorney to testify regarding reasonable compensation for attorneys based on knowledge gained through experience and practice in the field); Hartzler v. Wiley, 277 F. Supp. 2d 1114, 1118-19 (D. Kan. 2003) (permitting testimony of an attorney on the custom and practice of markups in the construction industry). "[A]ttorneys, like other professionals, are permitted to explain ordinary practices in

their field based on their own experience and professional standards." Gilliland v. Hergert, 2007 U.S. Dist. LEXIS 84508, at *25; see also, United States v. Leo, 941 F.2d 181, 196 (3d Cir. 1991) (citing First Nat'l State Bank v. Reliance Elec. Co., 668 F.2d 725, 731 (3d Cir. 1981) "While it is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law to the jury, our Court has allowed expert testimony concerning business customs and practices."). Such testimony is often seen as helpful to the trier of fact and, therefore, is deemed admissible.

8.  Mr. Adleson's thirty years of experience in the relevant fields of real estate, mortgage lending and foreclosure in the state of California goes well beyond that of a general legal practitioner in the field. See Resume of Mr. Phillip M. Adleson, Esq., attached as Exhibit A to the Expert Report. Mr. Adleson consults with and educates numerous parties including lawyers, legislators, bankers, mortgage consultants and foreclosure specialists in California on topics related to California real estate law, including compliance programs for foreclosure specialists and courses for Department of Real Estate's Continuing Education Credits. In addition, Mr. Adleson has drafted and reviewed proposed legislation with respect to foreclosure law in California for the California Trustee's Association since 1984 as well as testified as an expert on foreclosure in California before the California State Senate and the California State Assembly Judiciary Committee.

9.  Through Mr. Adleson's extensive experience in the field, he has become intimately familiar with the customs and practices related to loan origination and foreclosure in California. Mr. Adleson discusses in detail the common and general practices of lenders, mortgage brokers, foreclosure specialists, and trustees under deeds of trust and beneficiaries under deeds of trust in California as well as the documentation customarily used by these

professionals in the Expert Report. Mr. Adelson further identifies specific facts related to this case that "meet the customs and practice of similar lenders doing business in California at the time" the Mills loans were made. See, e.g., Expert Report, 10.

10. The Debtors believe that Mr. Adleson's Expert Report and testimony will provide valuable assistance to the Court with respect to identifying customary documents, practices and procedures for lenders and mortgage brokers in originating deeds of trust in California as well as for foreclosure specialists to effectuate non-judicial foreclosures of deeds of trust. Because California is an escrow state and generally utilizes deeds of trust versus mortgages, significant differences exist with respect to the processes for originating and foreclosing loans in California versus other states. For example, Mr. Adleson can provide explanations that describe the practical implications of the escrow/title company practice versus attorney closings, such as the common occurrence of loan origination documents being signed at completely different times and why this is a common practice in many situations. Mr. Adleson can further provide explanation and insight regarding the practical implications of utilizing deed of trust instruments, as well as the non-judicial foreclosure procedure and the use of foreclosure specialists, the practices these professionals employ to effectuate non-judicial foreclosures and place such practices into context to explain why such practices are employed.

11. Based on Mr. Adleson's knowledge of these standards and practices, and in conjunction with his specific audit of the Mills Loans' files and the foreclosure file on the Second Deed of Trust, Mr. Adleson will opine that: (1) "the loan origination files for the first and second loans appear to meet customs and practice for similar lenders doing business in California at the time these loans were made" (Expert Report, 10); and (2) "the procedures required for a non-judicial foreclosure were followed in the foreclosure of the second deed of trust..." Id. at

11.[3] The Court, as the trier of fact, will determine the weight it assigns to Mr. Adleson's opinions. Accordingly, Mr. Adleson's testimony is proper and admissible under Rule 702.

## II. THE MOTION SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH DEL. BANKR. L.R. 7026-1 (C).

12. Pursuant to Bankr. L.R. 7026-1 (c), made applicable here by Federal Rule of Bankruptcy Procedure 9014(c), the Motion should be dismissed for failure to include an averment by Claimants' counsel that they made a reasonable effort to reach an agreement or otherwise resolve any technical issues with the Debtors prior to filing the Motion. Bankr. L.R. 7026-1 (c). As the rule explicitly provides, "failure to so aver may result in dismissal of the motion." Id. Here, Claimant's counsel not only failed to aver that they made a reasonable effort to resolve their discovery issues related to Mr. Adleson's report, which fact alone is grounds for dismissal, Claimant's counsel never even attempted to confer with Debtors' counsel to even raise the purported discovery issues, much less resolve them.

13. Claimant's counsel raised in the Motion, for the first time, just one week before trial, that Mr. Adleson's report fails to comply with Fed. R. Civ. P. 26(a)(2)(b). Despite numerous communications between Debtors' counsel and Claimants' counsel regarding scheduling the deposition of Mr. Adleson, which the Claimant ultimately chose not to take, Claimant's counsel never once raised the issue of any alleged deficiencies with Mr. Adleson's report or the supporting documentation Provided to Claimants' counsel Copies of relevant emails between counsel regarding scheduling the deposition of Mr. Adleson are attached hereto

---

[3] Claimant attached to the Mills Claims the Declaration of Christopher Austin in Support of the Administrative Expense Claim of Deborah E. Mills (the "Austin Declaration") which provided that "I likely will prepare an expert report ... I intend to conduct an in depth forensic auditing of the complete loan process – from origination to foreclosure – which, based on my preliminary review of documents in this matter, will likely show that origination of the Mills loan and the subsequent foreclosure by the Debtors were materially defective." Austin Declaration at ¶¶ 2 and 9. Mills Counsel has advised the Debtors that they are no longer relying on the testimony of Mr. Austin or the Austin Declaration. The Debtors can only surmise that Mr. Austin's audit of the Mills Loans' files also confirmed that no deficiencies existed in the origination or foreclosure of the Mills Loans.

as Exhibit 2. Raising these issues now at the eleventh hour is nothing more than disingenuous game playing.

14.   As clearly set forth in the Expert Report, it specifically includes "[a] partial list of my material qualifications and publications is set forth on my current resume which is attached hereto as Exhibit A and incorporated herein by reference." When serving the Expert Report, Debtors' counsel unintentionally did not attach the Exhibit A portion to the Expert Report. The plain language of the report clearly provides that an Exhibit A should have been attached and was being incorporated into the Expert Report. If Claimants' counsel merely called or emailed Debtors' counsel, this oversight would have been corrected immediately. In fact, upon reading the Motion, Debtors' counsel immediately supplied to Claimants' counsel a copy of Exhibit A to the Expert Report and a copy of the Expert Witness Fees and Costs Agreement upon realizing that it had been inadvertently omitted.

15.   Moreover, Claimant's counsel must have been aware of this missing attachment at least as of October 27, 2010, when they informed Debtors' counsel that "[a]fter reviewing the expert report of Phillip Adleson, we do not believe there is a need to depose him." Email from Richard Weinblatt to Erin Edwards dated October 27, 2010, included in Exhibit 2. Yet, instead of contacting Debtors' counsel to inquire about or request the missing attachment, as required by Del. Bank. L.R. 7026-1 (c), Claimant's counsel raised it for the first time in the Motion that was not filed until November 14, 2010. Holding this easily-curable oversight in their back pocket until the week before trial clearly evidences sandbagging and is in direct contravention to the reasonable effort requirement embodied in Del. Bank. L.R. 7026-1 (c).

16.   Claimant also makes the flagrantly disingenuous assertion that the Expert Report fails to disclose what information Mr. Adleson relied on to make "a key factual point"

that "I further understand that Lettau disputes Mill's version." Motion at p. 5. First and foremost, Mr. Adleson specifically states in the Expert Report that his opinion is not based on, nor would it be impacted by, whether or not Ms. Lettau did or did not make a statement to Ms. Mills.

> I understand that Mills may claim that Lettau spoke with someone at the Debtors' office who may have represented to Lettau that future financing would, or could, be made available. **I further understand that Lettau disputes Mills's version. Again, the factual issue is one for the finder of fact. This variation of the facts really would not change my opinion.** In the absence of any evidence in the file, it is questionable whether Chase or Debtors made such a representation. However, even if Lettau or Debtors' representatives did make such a representation, borrower reliance on such a representation would be questionable in light of the Debtors' policies and procedures.

Expert Report at p. 10 (emphasis added).[4] Second, in the section of the Expert Report titled "Materials Reviewed," Mr. Adleson lists "Conversations with various of Debtors' attorneys regarding depositions and various facts." Id. at p. 3.[5] To the extent Claimant thought

---

[4] Mr. Adleson also wrote "[t]o the extent that Chase [Lettau] made representations to Mills, any conclusions would have to be based upon verbal testimony of Mills, Lettau and others and would be something to be determined by the trier of fact." Id. at 9.

[5] Claimant alleges that because Ms. Lettau was not deposed until several days after the submission of the Expert Report, "Mr. Adleson's representations regarding the substance of Ms. Lettau's future testimony seem highly suspect." Motion at pp.5-6. This is nothing more than a red herring. The Debtors do not think this offensive and baseless allegation warrants discussion; however, to avoid any doubt that silence would infer adoption of the Claimant's allegation, the Debtors will remove the smoke and mirrors. In their Reponses to Claimant's First Set of Interrogatories dated September 17, 2010, the Debtors provided that Debtors' counsel contacted Tawyna Lettau in their Response to Claimant's Interrogatory Number 6 which asked "Identify each person You have contacted related to the Property." When Debtors' counsel initially contacted Ms. Lettau, they asked for her recollections about Ms. Mills and whether she specifically told Ms. Mills that she could access equity in the Property within two months of closing. Ms. Lettau provided that she did recall Ms. Mills and denied making any statements about accessing equity. After that time, Ms. Lettau retained counsel. Debtors' counsel also had a subsequent conversation with Ms. Lettau's counsel, Mr. Christopher Yoo, in which he confirmed that Ms. Lettau did not make any statements to Ms. Mills about accessing equity in the Property shortly after closing. When Claimant's counsel questioned Ms. Lettau regarding discussions with Ms. Mills regarding "a post-closing line of credit could be established to access part of the down payment," Ms. Lettau stated: "I was never asked about pulling money out, so, therefore, we did not have that conversation." (Lettau Dep. at 109:15 – 111:6)

Furthermore, the line of questioning cited in the Motion appears to be either inartful questions posed by Claimant's counsel or an intentional obfuscation of the issue for the sole purpose of setting up this Motion. The line of questions centered specifically on Ms. Lettau's discussions about "the substance of [Ms. Lettau's] recollection about this loan." Motion at p. 5. Claimant's counsel never asked any questions about any discussions Ms. Lettau

clarification was necessary regarding the sources Mr. Adleson listed in his Expert Report, the Debtors made Mr. Adleson available for deposition. Instead, Claimants' counsel chose to forgo conducting such a deposition. Email from Richard Weinblatt to Erin Edwards dated October 27, 2010, included in Exhibit 2.

17. Notwithstanding the fact that the Expert Report does provide the information underlying it consistent with the applicable rules, so no basis for exclusion exists, as discussed in detail above, Fed. R. Civ. P. 26(a)(2)(B)(ii) itself does not provide for the remedy of exclusion. Fed. R. Civ. P. 37, made applicable to this contested matter by Bankruptcy Rule 7037 and 9014, provides a mechanism for sanctioning a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.[6] See, e.g., Roberts v. Galen of Va., Inc., 325 F.3d 776, 782 (6th Cir. 2003).

---

had with Debtors' counsel with respect to statements about accessing equity. Moreover, Claimant's counsel specifically asked Ms. Lettau "Q: Did anyone attempt to influence your testimony here today in any way?" and she responded unequivocally, "A: No." Exhibit 3 to Motion, 122:23-25. Accordingly, to accuse Debtors' counsel of "highly suspect" behavior, which the Motion clearly implies, based on a couple of narrow and off topic questions is offensive.

[6] Claimant does not assert Rule 37 in the Motion. To seek a discovery sanction under Rule 37(a), a moving party is required to move for an order compelling discovery and for appropriate sanctions. Further, that motion must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1) and (3). Claimant never filed a motion to compel regarding the sources or disclosures in the Expert Report, much less did Claimant's counsel attempt to confer with Debtors' counsel regarding any alleged failure to make disclosure or discovery.

18.  Moreover, as the Court recognized in another contested matter in these cases, the sanction of excluding all expert testimony is a "somewhat vigorous and harsh remedy for violations in connection with discovery...." (Hearing Tr., at 34, Sept. 23, 2010) (Hearing on Debtors' Motion to Exclude Park National Bank's Expert Testimony and Report) (finding that because of the prejudice the Debtors suffered, and curing such prejudice would require an inordinate amount of time and expense, exclusion of expert testimony was an appropriate sanction for violating the disclosure and discovery requirements set forth in the scheduling order). See also; In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999) (citing Meyers v. Pennypack Woods Home Owner Ass'n., 559 F.2d 894, 904-05 (3d Cir. 1977)) (court should consider the so-called "Pennypack" factors when deciding whether to exclude expert testimony that fails to comply with Rule 26(a)(2)(B): (1) the prejudice or surprise to the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule would disrupt the trial; and (4) bad faith or willfulness in complying with a court's order).

19.  Here, the Claimant provides no basis for the harsh remedy of exclusion of expert testimony. Notably, the Claimant does not even allege any prejudice suffered as a result of any of the purported discovery violations. The Debtors have provided the missing disclosure information as well as cleared up any confusion on source material. If Claimant's counsel had simply reached out to Debtors' counsel prior to filing the Motion, as required by Del. Bankr. L.R. 7026-1(c), the Court's and the Debtors' time would have been saved from this meritless request to exclude the Expert Report. According, the Motion should be dismissed.

## CONCLUSION

For these reasons, the Court should grant the Motion to Dismiss, deny the Motion, and grant such other relief as appropriate.

Dated: Wilmington, Delaware
November 19, 2010

                        YOUNG CONAWAY STARGATT & TAYLOR, LLP

                        */s/ Erin Edwards*
                        Sean M. Beach (No. 4070)
                        Sharon M. Zieg (No. 4196)
                        Erin Edwards (No. 4392)
                        Margaret Whiteman Greecher (No. 4652)
                        Morgan L. Seward (No. 5388)
                        The Brandywine Building
                        1000 West Street, 17th Floor
                        Wilmington, Delaware 19801
                        Telephone: (302) 571-6600
                        Facsimile: (302) 571-1253

                        Counsel for Debtors and Debtors in Possession