# EXHIBIT 1

SCOTT R. MARTINEZ

Page 1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

- - -

```
 In Re:                  : CHAPTER 11
                         : CIVIL ACTION NO.
                         : 07-11047 (CSS)
                         :
 AMERICAN HOME           :
 MORTGAGE HOLDINGS,      :
 INC. A Delaware         :
 Corporation, et al.     :
                         : Jointly
         Debtors         : Administered
```

- - -

Deposition of SCOTT R. MARTINEZ taken pursuant to notice at the law offices of Young, Conaway, Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware, beginning at 11:15 a.m., on Monday, October 4, 2010, before Diane Fontanot, a Registered Professional Reporter and Notary Public.

- - -

DiPIERO COURT REPORTING
Registered Professional Reporters
404 South 16th Street
Philadelphia, PA 19146
(215) 735-8101

43b5658c-2441-4047-9c34-0cc4aa43eb8a

SCOTT R. MARTINEZ

Page 18

1         - - -
2         (Document marked as Exhibit
3    Mills 2 for identification.)
4         - - -
5    BY MR. STAMOULIS:
6    Q.    Actually, one more question about
7    Exhibit 1.  Did you speak to a Ms. Jane Larkin
8    in preparation for your deposition here today?
9    A.    In preparation for my deposition?
10   Q.    Yes.
11   A.    No.
12   Q.    Did Ms. Larkin convey any information
13   to you, the substance of which prepared you to
14   testify on the topics identified in Exhibit 1?
15         MS. ZIEG:  For this deposition?
16         MR. STAMOULIS:  Yes.
17         THE WITNESS:  No.
18   BY MR. STAMOULIS:
19   Q.    Have you ever spoken to Ms. Larkin?
20   A.    Yes.
21   Q.    Did you ever speak to her with regard
22   to Ms. Mills' claim against the Debtors?
23   A.    No.
24   Q.    Do you know if Ms. Larkin will be
25   designated as a corporate designee for the

DiPIERO COURT REPORTING
(215) 735-8101

SCOTT R. MARTINEZ

Page 19

1    Debtors?
2         MS. ZIEG:  It's a legal term.
3    Can you explain to him what you're seeking to
4    find out?
5         THE WITNESS:  Can you explain
6    that?
7    BY MR. STAMOULIS:
8    Q.    You have been designated as a
9    corporate designee in response to Exhibit 1.
10   Obviously other people may be designated to be
11   corporate designees at some point in this
12   matter.  I want to know if you know whether
13   there are any plans for Ms. Larkin to be
14   designated as a corporate designee?
15   A.    That's determined by Young Conaway in
16   their approach on how we're going to deal with
17   this claim.
18   Q.    Turning to Mills Exhibit 2, Mr.
19   Martinez, do you recognize this document?
20   A.    Yes.
21   Q.    Did you review the contents of this
22   document in preparation for your deposition
23   yesterday?
24   A.    I did, yes.
25   Q.    So, Mills 2 are the Debtors'

DiPIERO COURT REPORTING
(215) 735-8101

SCOTT R. MARTINEZ

Page 20

1    Supplemental Responses to the Discovery
2    Requests of Ms. Mills and they include the
3    initial responses as well.  Why don't we just
4    start with the Requests for Admission.  So, if
5    you will turn to Page 27.  If you go to Page
6    28, the Request for Admission Number 2 --
7    A.    I'm sorry.  Go to where?
8    Q.    Page 28, RFA Number 2.
9    A.    Okay.
10   Q.    RFA Number 2 reads, "Admit that a
11   mortgage for the Property was assigned to the
12   MERS data base."  And the response for that
13   Request for Admission is denied.  What is the
14   basis for the denial?
15   A.    It's the definition of "assigned".
16   The loan was registered in MERS.
17   Q.    Why are loans registered in MERS?
18   A.    What it's used for is to show proper
19   -- who owns the loan.
20   Q.    When the two loans for the property
21   were registered in MERS, who was listed as the
22   owner of the loans?
23   A.    I believe one of them was registered
24   in MERS as American Home Mortgage Holdings.  I
25   can't recall if it was the first or the

DiPIERO COURT REPORTING
(215) 735-8101

SCOTT R. MARTINEZ

Page 21

1    second.  I believe the first was registered as
2    American Home Mortgage Acceptance and I
3    believe the second one was American Home
4    Mortgage Holdings.
5    Q.    Now, after the loans were registered
6    in the MERS system, did the ownership of the
7    loans change?
8    A.    Could you be more specific in terms of
9    timing?
10   Q.    Let's go to Exhibit A.
11   A.    This is for loan ending 512?
12   Q.    Yes.  Actually, let's start with the
13   little loan first since there's only a few
14   transactions for that one.
15   A.    Okay.
16   Q.    It states here that the loan was
17   funded in August of 2005 and the legal entity
18   is AHM.  Would that have been the registered
19   owner of the loan in the MERS system?
20   A.    I don't have access to the MERS
21   system.  I can only say that American Home
22   Mortgage had showed that this loan closed in
23   the name of American Home Mortgage Corp.
24   Q.    But would it have been the practice of
25   the Debtors to then register that loan in MERS

DiPIERO COURT REPORTING
(215) 735-8101

SCOTT R. MARTINEZ

Page 22

1  with American Home Mortgage Corp as the owner?
2  **A.     I think fundamentally that's the way**
3  **it would work but I think the log-in for the**
4  **MERS or the license with MERS was American**
5  **Home Mortgage Holdings.  So, I don't recall**
6  **but it should be registered with the**
7  **appropriate owner in there.**
8  Q.     And sitting here today you don't know
9  who was registered with MERS as the initial
10 owner of the loan?
11 **A.     I don't recall but I believe, in**
12 **reviewing the documents, that it was American**
13 **Home Mortgage Holdings.**
14 Q.     And then in December of '05 it looks
15 like there is an intercompany transfer between
16 American Home Mortgage Corp and American Home
17 Mortgage Acceptance.  Do you know if that
18 change in ownership was recorded in the MERS
19 data base?
20 **A.     I don't recall.**
21 Q.     And then it was subsequently
22 transferred again on the same day from
23 American Home Mortgage Acceptance to American
24 Home Mortgage Securities, LLC?
25 **A.     It was sold.**

DiPIERO COURT REPORTING
(215) 735-8101

SCOTT R. MARTINEZ

Page 23

1  Q.     It was sold?
2  **A.     Yes.**
3  Q.     Do you know if the MERS data base was
4  then updated to reflect American Home Mortgage
5  Securities, LLC as the owner for this loan?
6  **A.     I don't recall.**
7  Q.     And, again, on the same day it was
8  transferred yet again from American Home
9  Mortgage Securities, LLC to American Home
10 Mortgage Investment Trust for specifically
11 2005-SD1.
12         Do you know if the MERS data
13 base was updated to reflect that transfer?
14 **A.     I don't recall.**
15 Q.     And then there are no other transfers
16 listed.  So, is it fair to say that based on
17 this document that was prepared in response to
18 discovery requests of the claimant, that the
19 loan was not transferred again from the
20 ownership of American Home Mortgage Investment
21 Trust?
22 **A.     2005-SD1?**
23 Q.     Yes.
24 **A.     That's my understanding, yes.**
25 Q.     And do you know if American Home

DiPIERO COURT REPORTING
(215) 735-8101

SCOTT R. MARTINEZ

Page 24

1  Mortgage Investment Trust is still listed as
2  the owner of the loan ending in 980?
3  **A.     I don't know.  I believe since the**
4  **property has been sold, I don't think they**
5  **would still be listed as the owner.**
6  Q.     But up until the sale of the property,
7  1880 Burnt Rock Way which occurred in 2009,
8  American Home Mortgage Investment Trust was
9  the owner of Loan Number 980; is that correct?
10        MS. ZIEG:  Objection, form.
11 BY MR. STAMOULIS:
12 **A.     Can you be more specific?**
13 Q.     Do you know when 1880 Burnt Rock Way
14 was sold by the Debtors to a third party?
15 **A.     Post foreclosure?**
16 Q.     Yes.
17 **A.     Yes.  January of 2009.**
18 Q.     So, between December 28, 2005 and up
19 until at least January of 2009, American Home
20 Mortgage Investment Trust owned the loan
21 ending in 980; is that correct?
22 **A.     The AHMAT 2005 SD-1 owned the loan**
23 **during that time period, yes.**
24 Q.     Thank you.
25        Let's go to RFA Number 3.

DiPIERO COURT REPORTING
(215) 735-8101

SCOTT R. MARTINEZ

Page 25

1  Request for Admission Number 3 states: "Admit
2  that prior to funding the Loans, Claimant was
3  told that she could borrow up to $50,000
4  against the Property shortly after the closing
5  of the Loans."  The response to that RFA is
6  denied.  What is the basis for the Debtors'
7  denial to that RFA?
8  **A.     The Debtors have no record of making**
9  **that representation to Ms. Mills.**
10 Q.     Are you aware that Ms. Mills has
11 represented in declaration that that
12 representation was made by a Ms. Tawnya
13 Latteu?
14 **A.     Am I aware that it's in her**
15 **declaration?**
16 Q.     Yes.
17 **A.     No.**
18 Q.     Do you know who Ms. Latteu is?
19 **A.     I do.**
20 Q.     What do you know about Ms. Latteu?
21 **A.     I know she was a mortgage broker with**
22 **J.P. Morgan Chase and she was the broker that**
23 **Ms. Mills hired or engaged to get her a**
24 **mortgage.**
25        MR. STAMOULIS:  Let's mark these

DiPIERO COURT REPORTING
(215) 735-8101