# EXHIBIT

# A

# COUNTER OFFER NO. 01

CALIFORNIA
ASSOCIATION
OF REALTORS

For Use by Seller or Buyer. May be used for Multiple Counter Offer.
(C.A.R. Form CO, Revised 10/04)

Date May 18, 2005, at _____, California.
This is a counter offer to the: ☒ California Residential Purchase Agreement, ☐ Counter Offer, or ☐ Other ("Offer"),
dated May 17, 2005, on property known as 1880 Burnt Rock Way Lot 895 ("Property"),
between _____ Deborah Mills ("Buyer") and
Hilliard Development LLC ("Seller").

1. TERMS: The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.

   C. 1. Purchase price to be $ 1,375,000.00,

      2. Seller to provide $ 25,000.00 in upgrades for extra concrete flat work, landscaping, etc.

      3. Seller to agree to pay Buyers non recurring closing cost not to exceed $ 3,500.00

   D. The following attached supplements are incorporated in this Counter Offer: ☐ Addendum No. ____

2. RIGHT TO ACCEPT OTHER OFFERS: Seller has the right to continue to offer the Property for sale or for other transaction, and to accept any other offer at any time prior to notification of acceptance, as described in paragraph 3. If this is a Seller Counter Offer, Seller's acceptance of another offer prior to Buyer's acceptance and communication of notification of this Counter Offer, shall revoke this Counter Offer.

3. EXPIRATION: This Counter Offer shall be deemed revoked and the deposits, if any, shall be returned unless this Counter Offer is signed by the Buyer or Seller to whom it is sent and a Copy of the signed Counter Offer is personally received by the person making this Counter Offer or their authorized agent by 5:00PM on the third Day after this Counter Offer is made or, (if checked) ☒ by ____ ☐ AM ☐ PM. This Counter Offer may be executed in counterparts.

4. ☐ (If checked) MULTIPLE COUNTER OFFER: Seller is making a Counter Offer(s) to another prospective buyer(s) on terms that may or may not be the same as in this Counter Offer. Acceptance of this Counter Offer by Buyer shall not be binding unless and until it is subsequently re-signed by Seller in paragraph 7 below and a Copy of the Counter Offer signed in paragraph 7 is personally received by Buyer or by _____, who is authorized to receive it, by 5:00PM on the third Day After this Counter Offer is made or, (if checked) ☐ by ____ (date), at ____ ☐ AM ☐ PM. Prior to the completion of all of these events, Buyer and Seller shall have no duties or obligations for the purchase or sale of the Property.

5. OFFER: ☐ BUYER OR ☒ SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   Hilliard Development LLC                                        Date May 18, 2005

6. ACCEPTANCE: I/WE accept the above Counter Offer (if checked ☐ SUBJECT TO THE ATTACHED COUNTER OFFER) and acknowledge receipt of a Copy.
   Date 5-19-05   Time 4:00 ☐ AM ☒ PM
   Date _____   Time _____ ☐ AM ☐ PM

7. MULTIPLE COUNTER OFFER SIGNATURE LINE: By signing below, Seller accepts this Multiple Counter Offer.
   (NOTE TO SELLER: Do NOT sign in this box until after Buyer signs in paragraph 6. (Paragraph 7 applies only if paragraph 4 is checked.)
   Date _____   Time _____ ☐ AM ☐ PM
   Date _____   Time _____ ☐ AM ☐ PM

8. ☐ (Initials) Confirmation of Acceptance: A Copy of Signed Acceptance was personally received by the maker of the Counter Offer, or that person's authorized agent as specified in paragraph 3 (or, if this is a Multiple Counter Offer, the Buyer or Buyer's authorized agent as specified in paragraph 4) on (date) 5-19-05, at ____ ☐ AM ☒ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1986-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

CO REVISED 10/04 (PAGE 1 OF 1)

**COUNTER OFFER (CO PAGE 1 OF 1)**

Agent: David Crabtree                    Phone: 805 434-6700   Fax: 805 434-6748
Broker: Home and Ranch Realtors   442 Main Street   Templeton CA 93465

Prepared using WINForms® software

Received Time May.19. 11:45AM

JUL 07 2005 14:17                                                    PAGE.02


AHM_MILLS002716

CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
For Use With Single Family Residential Property — Attached or Detached
(C.A.R. Form RPA-CA, Revised 10/02)

Date **Nov 17, 2005**, at **Paso Robles**, California.

**1. OFFER:**
A. THIS IS AN OFFER FROM **Deborah Mills** ("Buyer").
B. THE REAL PROPERTY TO BE ACQUIRED is described as **1800 Burnt Rock Way, Templeton CA 93465**, situated in
   **Templeton**, Assessor's Parcel No. _____, California, ("Property").
   County of _____
C. THE PURCHASE PRICE offered is **One Million Three Hundred Thousand**
   Dollars $ **1,300,000.00**.
D. CLOSE OF ESCROW shall occur on **(date)** (or ☒ **45** Days After Acceptance).

**2. FINANCE TERMS:** Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise
   agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not
   a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **5,000.00**
   to the agent submitting the offer (or to ☐ _____), by personal check
   (or ☐ _____), made payable to **Sellers Choice**
   which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance
   (or ☐ _____), with
   Escrow Holder, (or ☐ ☐ into Broker's trust account).
B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . $ **1,040,000.00**
   within _____ Days After Acceptance, or ☐ _____
C. FIRST LOAN IN THE AMOUNT OF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
   (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum
       interest of **7,000** % fixed rate, or _____ % initial adjustable rate with a maximum interest rate
       of _____ %, balance due in _____ years, amortized over **30** years. Buyer shall
       pay loan fees/points not to exceed _____ (These terms apply whether the designated loan
       is conventional, FHA or VA.)
   (2) ☐ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked):
       Seller shall pay _____ % discount points. Seller shall pay other fees not allowed to be paid by Buyer,
       ☐ not to exceed $ _____. Seller shall pay the cost of lender required Repairs (including
       those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed
       $ _____ (Actual loan amount may increase if mortgage insurance premiums, funding
       fees or closing costs are financed).
D. ADDITIONAL FINANCING TERMS: ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing,. . . . . . . $ **255,000.00**
   (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B)
E. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of . . . $ **1,300,000.00**
   to be deposited with Escrow Holder within sufficient time to close escrow.
F. PURCHASE PRICE (TOTAL): . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **1,300,000.00**
G. LOAN APPLICATIONS: Within 7 (or ☐ _____) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan
   broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan
   specified in 2C above.
H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7
   (or ☐ _____) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
I. LOAN CONTINGENCY REMOVAL: (i) Within 17 (or ☐ **21** ) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove
   the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are
   funded.
J. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no
   less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or
   ☐ **21** ) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement.
   If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or _____) Days
   After Acceptance.
K. ☐ NO LOAN CONTINGENCY (if checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this
   Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or
   other legal remedies.
L. ☐ ALL CASH OFFER (if checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ _____) Days After Acceptance,
   provide Seller written verification of sufficient funds to close this transaction.

**3. CLOSING AND OCCUPANCY:**
A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at **3:00** ☐ AM ☒ PM, ☒ on the date of Close Of Escrow;
   ☐ no later than _____ Days After Close Of Escrow; (C.A.R. Form PAA, paragraph 2.) ☐ transfer of title and
   occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their
   insurance and legal advisors.

Buyer's Initials ( _____ )( _____ )
Seller's Initials ( _____ )( _____ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1991-2004,
CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

RPA-CA REVISED 10/02 (PAGE 1 OF 8)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 8)**

Agent: **Ken Coffey**   Phone: **8052374700**   Fax: **8052374711**   Prepared using WINForms® software
Broker: **Prudential Hallmark 800 11th St, Paso Robles CA 93446**

JUL 07 2005 14:17                                                                                    PAGE.03

AHM_MILLS002717

Property Address: 3000 North Park Way,    San CA 93465                          Date: January 12, 2005

C. Tenant-occupied property: (i) Property shall be vacant at least 5 (or □ ___ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR ☐ (ii) (if checked) ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3).

OR ☐ (iii) (if checked) ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. ALLOCATION OF COSTS (if checked): Unless otherwise specified here, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. WOOD DESTROYING PEST INSPECTION:
  (1) ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by _any qualified Pt Page Inspcts is requested_, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached    garage    and    carports,    ☐ detached decks. ☐ The following other structures or areas _____. The Report shall include only the not include roof coverage. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ (if checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. OTHER INSPECTIONS AND REPORTS:
  (1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected _____
  (2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity _____
  (3) ☐ Buyer ☐ Seller shall pay for a natural hazard zone disclosure report prepared by _____
  (4) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____
  (5) ☐ Buyer ☐ Seller shall pay for the following inspection or report _____

C. GOVERNMENT REQUIREMENTS AND RETROFIT:
  (1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
  (2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government, retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.

D. ESCROW AND TITLE:
  (1) ☒ Buyer ☒ Seller shall pay escrow fee _Each to Pay Own_
       Escrow Holder shall be _Sellers's Choice_
  (2) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 12E _____
       Owner's title policy to be issued by _Seller's Choice_
       (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. OTHER COSTS:
  (1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee _____
  (2) ☐ Buyer ☒ Seller shall pay City transfer tax or transfer fee _____
  (3) ☐ Buyer ☒ Seller shall pay HOA transfer fee _____
  (4) ☐ Buyer ☒ Seller shall pay HOA document preparation fees _____
  (5) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ _____ , of a one-year home warranty plan, with the following optional coverage: _____
       issued by _____
  (6) ☐ Buyer ☐ Seller shall pay for _____
  (7) ☐ Buyer ☐ Seller shall pay for _____

5. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:
  A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures") and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordnance location disclosure (C.A.R. Form SSD).
     (2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.
     (3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 2 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 2 OF 8)                    PAGE 04

JUL 07 2005 14:19                                                                PAGE.04

Property Address: _____    Date: _____

(4) If any disclosure or notice specified in 3A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. DATA BASE DISCLOSURE: NOTICE: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. This data base is updated on a quarterly basis and a source of information about the presence of these individuals in any neighborhood. The Department of Justice also maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

6. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:

A. SELLER HAS: 7 (or [ ]_____) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or [ ]_____) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

7. CONDITIONS AFFECTING PROPERTY:

A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).

C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

8. ITEMS INCLUDED AND EXCLUDED:

A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. ITEMS INCLUDED IN SALE:

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and

(3) The following items: _____

(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

(5) All items included shall be transferred free of liens and without Seller warranty.

C. ITEMS EXCLUDED FROM SALE: _____

9. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's investigations and through the date possession is made available to Buyer.

Buyer's Initials ( ____ ) ( ____ )
Seller's Initials ( ____ ) ( ____ )

Reviewed by _____ Date _____

Copyright © 1991-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 3 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 8)

PAGE 05

JUL 07 2005 14:19

AHM_MILLS002719

Property Address: _____ Date: Nov 17, 2005

10. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. **BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY:** Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title, is a contingency of this Agreement as specified in paragraph 14B.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those matters; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. **SALE OF BUYER'S PROPERTY:**
   A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.
   OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).
   A. SELLER HAS 7 (or ☐ ____ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and 6, 6A, 7B and 12.
   B. (1) BUYER HAS 17 (or ☐ ____ ) Days After Acceptance, unless otherwise agreed in writing, to:
      (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint) hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
      (ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.
      (2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
      (3) By the end of the time specified in 14B(1) (or 2J for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) government-mandated inspections reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ ____ ) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.
   C. **CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:**
      (1) Seller right to Cancel; Buyer Contingencies: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.
      (2) Continuation of Contingency: Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).
      (3) Seller right to Cancel; Buyer Contract Obligations: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2H or 2L; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.
      (4) Notice To Buyer To Perform: The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ ____ ) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( ____ )( ____ )
Seller's Initials ( ____ )( ____ )

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 4 OF 8)

Reviewed by _____ Date _____

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA) PAGE 4 OF 8)

JUL 07 2005 14:20                                                        PAGE 06

Property Address: 1804 Burnt Bark Way ___ on CA 92665 ___ Date: Apr 27, 2005

**D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for Inability to obtain financing.

**E. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual, Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**15. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

**16. LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.

BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

**17. DISPUTE RESOLUTION:**

**A. MEDIATION:** Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

**B. ARBITRATION OF DISPUTES:** (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.

(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."    Buyer's Initials _____ / _____    Seller's Initials _____ / _____

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )
Reviewed by _____ Date _____

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 5 OF 8)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 8)

PAGE.07

JUL 07 2005 14:21

AHM_MILLS002721

Property Address: _____    Date: Nov 77, 2005

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER and SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

25. **OTHER TERMS AND CONDITIONS, including attached supplements:**
    A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
    B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: _____)
    C. ☐ Statewide Buyer and Statewide Advisory (C.A.R. Form SBSA)
    D. _____

26. **DEFINITIONS:** As used in this Agreement:
    A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
    B. "Agreement" means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
    C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
    D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
    E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    F. "Days" means calendar days, unless otherwise required by Law.
    G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
    H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
    J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
    L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
    N. Singular and Plural terms each include the other, when appropriate.

Buyer's Initials ( _____ ) ( _____ )
Seller's Initials ( _____ ) ( _____ )

Reviewed by _____ Date _____

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 8 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)

PAGE. 08

JUL 07 2005 14:21

AHM_MILLS002722

Property Address: _1000 Burma Rock Way___ _Fam_ _CA_ _93455_ ___ Date: _Nov 17, 2005_

**27. AGENCY:**

  A. **DISCLOSURE:** Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

  B. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

  C. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:

    Listing Agent _____Home And Ranch Realtors_____ [Print Firm Name] is the agent
    of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
    Selling Agent _____Prudential Hallmark Realty_____ [Print Firm Name] (if not same
    as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

**28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

  A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and C, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Buyer or Seller, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

  B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

  C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

  D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

**29. BROKER COMPENSATION FROM BUYER:** If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

**30. TERMS AND CONDITIONS OF OFFER:**

This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials [ ] [ ]
Seller's Initials [ ] [ ]
Reviewed by _____ Date _____

Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RPA-CA REVISED 10/02 (PAGE 7 OF 8)
CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 8)

JUL 87 2205 14:22                                                                 PAGE.09

AHM_MILLS002723

Property Address: 1890 Parms Rock Road, _____ Box __ 97465 _____ Date: May 17, 2005

31. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ Ken Coffey _____ who is authorized to receive it by 5:00 PM on the third calendar day after this offer is signed by Buyer (or, if checked, ☑ by _____ May 19, 2005 _____ (date), at _____ 1:00 _____ ☐ AM ☑ PM).

Date May 17, 2005
BUYER Deborah Millis
Deborah Millis
(Print Name)

Date _____
BUYER _____
(Print Name)

(Address)

32. BROKER COMPENSATION FROM SELLER:
   A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
   B. If escrow does not close, compensation is payable as specified in a separate written agreement.

33. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☑ (If checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED _____ 5-18-05

Date _____
SELLER _____
(Print Name)

Date _____
SELLER _____
(Print Name)

(Address)

_____ CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized
(_____) agent on (date) _____ at _____ ☐ AM ☐ PM. A binding Agreement is created when
(Initials) a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

REAL ESTATE BROKERS:
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 27.
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) Prudential Hallmark Realty _____ Ken Coffey Date May 17, 2005
By _____ City Paso Robles State CA Zip 93446
Address 100 11th Street _____
Telephone (805)237-4770 Fax (805)237-4771 E-mail _____

Real Estate Broker (Listing Firm) Re/max Hallmark? org? 2000 _____ David Crabtree State _____ Zip _____
By _____ City _____
Address _____
Telephone _____ Fax _____ E-mail _____

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____,
counter offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____ Escrow # _____
Escrow Holder _____ Date _____
By _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate, License # _____

Escrow Holder _____

( _____ ) REJECTION OF OFFER: No counter offer is being made. This offer was reviewed and rejected by Seller on
(Seller's Initials) _____ (Date)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published by the
California Association of REALTORS®

Reviewed by _____ Date _____

RPA-CA REVISED 10/02 (PAGE 8 OF 8)   CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 8)

PAGE 10

JUL 07 2005 14:23

AHM_MILLS002724

# EXHIBIT

# B

 

26405236

## MORTGAGE BROKER AGREEMENT

This Mortgage Broker Agreement (the "Agreement") is entered into on the date below (the "Agreement Date") by and between JPMorgan Chase Bank, N.A. ("Chase," "we," "us" or "our") and the persons identified as the borrower(s) below (the "Borrower," "you" or "your").

Borrower(s): Deborah E Mills          Date: 07/07/2005
                                      Type of loan requested: BROKERED OUT ARM
Telephone (Day): _____     Amount of Loan Requested: $ 962,500
Telephone (Evening): 805-302-7470     Property address: 1880 Burnt Rock Way
Fax: _____                 Templeton, CA  93465

Application Fee:                 $0.00 _____ (N/A if required by law or if property
                                 appraisal and/or credit report fee is shown below).

Mortgage Broker Fee Paid by Borrower:  _1.00__ % of the amount of the loan that is
                                 funded. The fee is estimated to be $ _9625.00_.

Yield Spread Premium (fee to Chase   _____ % of the amount of the loan that is
paid by mortgage lender):            funded. The fee is estimated to be $ _____.

Third Party Fees
   Property appraisal fee:           $350
   Credit report fee:                $_____ for each Borrower
   Courier, express mail, etc. fee:  $_____ for each delivery of documents
   _processing fee_               :  $ _250—_
                                  :  $_____

The parties agree as follows:

**1. Brokerage Services Generally.** You requested us to provide brokerage services to assist you in obtaining a loan as described above to be secured by a mortgage on the above residential property (the "Loan"). The Loan you are applying for will be from another mortgage lender (the "Lender") upon the terms and conditions you request or the Lender requires.

**2. Our Role.** We will act as independent contractor and not as your agent or fiduciary in providing services to you. Our services also benefit Lenders with which we have various independent contractor agreements. Chase is not acting as a mortgage lender or as the agent of the Lender in this transaction. Chase will not make you a mortgage loan or issue a commitment to you for a mortgage loan. Our services are consultative and you will rely on your judgement in choosing your Loan.

**3. Mortgage Lender.** We will submit your Loan application to one or more Lenders with which Chase works. We limit the number of these Lenders for efficiency in rendering brokerage services. While we seek to assist you in meeting your financial needs, we do not distribute the products of all lenders or investors in the market and cannot guaranty the lowest price or best terms available in the market.

Mortgage Broker Agreement
C-6024  (1/05)  (replaces 8/03) . page 1 of 3



DEPOSITION EXHIBIT
Mills D2
10/5/10

 

**4. Specific Chase Services.** We will perform one or more of the following services: help you prepare a Loan application; counsel you regarding the mortgage loan process; educate you regarding different types of loan products, features and options, including how the closing costs, interest rates, payments and terms can vary under each product; collect financial information; initiate/order verifications of employment, verifications of deposit, mortgage and other loan verifications, legal documents, appraisals, inspections or engineering reports; provide you with certain disclosures; explain loan eligibility requirements and, if reasonably feasible, help you clear credit problems; and maintain regular contact with you, the Lender, the closing agent, etc. to apprise them of the status of the application and Loan and to gather needed information. Chase may also provide related services, such as assisting you in prequalifying for a Loan and/or in obtaining from the Lender a "lock-in" of the interest rate and points for your Loan.

**5. Loan Approval and Terms.** We will use commercially reasonable efforts to assist you in obtaining a Loan. Chase does not guarantee that you will be approved for any particular loan product or, if you are approved, that you will receive the amount that you requested or any specific terms or conditions. The Lender is responsible for processing your Loan application, determining the Loan amount, and making any Loan commitment, giving applicable disclosures, agreeing to lock-in a rate, and funding the Loan. Any Loan will likely contain a variety of terms, conditions and requirements not set forth in this Agreement. If a Lender is not willing to provide you with an acceptable Loan, we will work with you to help you decide whether a Loan for a different amount or with different terms and conditions will nevertheless meet your needs.

**6. Your Duties.** You agree to cooperate and to provide complete and accurate information for your Loan application and Loan. We will help match you with an appropriate Loan solely on the basis of this information. You agree to notify us if you apply elsewhere for another Loan and, once we submit an application for you to a Lender, you agree not to apply directly to that Lender.

**7. Application Fee.** You agree to pay us an application fee in the amount stated above for our efforts in preparing and processing your Loan application. Whether or not you get a Loan, the Application Fee is non-refundable unless required by law.

**8. Mortgage Broker Fee.** You agree to pay us a mortgage broker fee in the amount stated above upon the funding of a Loan that is obtained through our efforts. You can pay the fee directly to us or have the closing agent collect it from the Loan proceeds and pay it to us. If the fee is added to your Loan amount, your Loan payments will increase in amount. The fee will be disclosed to you by the Lender. We may also be paid by the Lender based on (i) the value of the Loan or related servicing rights in the market place or (ii) other services, goods or facilities performed or provided by us to the Lender.

**9. Yield Spread Premium.** In order to fully compensate us for our services, upon funding of a Loan, the Lender will pay us a Yield Spread Premium in the amount stated above and will disclose to you the exact amount. This fee will cause the interest rate on your Loan to be higher than the rate that would otherwise apply and will increase your loan payments.

**10. Relationship Between the Mortgage Broker Fee and Yield Spread Premium.** The Mortgage Broker Fee, Yield Spread Premium, and your Loan's interest rate and payments are interrelated and may be negotiable. You may have flexibility to have our total compensation apportioned in a way that is most advantageous to you. *This is something that you should do before you sign this Agreement.* If you wish to avoid paying up front points and fees, you may pay a higher interest rate to the Lender, in which case the Lender will pay us a higher Yield Spread Premium. If you wish to pay a lower interest rate, you will pay higher up front points and fees.

AHM MILLS000085

 

**11. Third Party Fees.** You will be required to pay Chase the fees set forth above for services that will be performed by third parties in connection with the processing and funding of your Loan application. The fees for such third-party services are incurred once the services are ordered. These fees are non-refundable unless actual costs are lower than the amount collected.

**12. Termination of Agreement.** This Agreement shall terminate either: (i) following the funding of a Loan you obtain through our efforts or (ii) sixty (60) days from the Agreement Date if an acceptable Loan commitment cannot be obtained for you. Any rights of a party that have accrued prior to termination of this Agreement will survive termination.

**13. Notices.** All notices and communications under this Agreement must be in writing and personally delivered or mailed, postage prepaid, and addressed to the other party at the address set forth below.

**14. Authorization and Acknowledgement.** By signing below, you: (i) authorize Chase to order credit reports on you and release your loan application, credit reports and other data and information to any Lender; (ii) authorize any Lender or its affiliates to release to Chase any information relating to your Loan application or Loan; (iii) acknowledge with respect to the Loan that you and Chase have entered into this Agreement before Chase has performed any brokerage services and that this is the only agreement with Chase for brokerage services; and (iv) acknowledge that you have read and understand this Agreement and received a duplicate signed copy of it.

BORROWER(S)

By: _Tawnya Lettau_                    _____

Tawnya Lettau                          Borrower
                                       Deborah E Mills

Title: Senior Loan Officer

Date: _7/7/05_                         _____
                                       Borrower

Telephone: 805-593-1177               Date: _____

Fax: 805-547-1105                     Address: 1880 Burnt Rock Way

Address: 1101 Marsh Street            Templeton, CA  93465

San Luis Obispo, CA  9340

Mortgage Broker Agreement
C-6024  (1/05)  (replaces 8/03)  page 3 of 3

AHM MILLS000086

# EXHIBIT

# C

Approve REIT Product Exception Request

Page 1 of 2

Search Phone Directory [          ]

**AmericanHome Mortgage**   # Intranet solutions for all american home mortgage associates

Home   Departments   Tools/Applications   Email   Phone/Branch Directory

## Approve REIT Product Exception Request

**ABC REIT Exception Request**

| | | |
|---|---|---|
| **Date:** 07/12/2005 | **Business Type:** Wholesale | **Division:** West |
| **Requested by:** Martha Gramespacher | **Requestor's Email Address:** MGramespacher@abconduit.com | **Request ID:** 4069 |
| **Job Title:** Branch Manager | **Branch:** 003107 ABC Wholesale Fresno | |
| **Phone Number:** 5596504321 | **Fax Number:** | |
| **Loan Number:** | **Product Code:** 1964 | **Product Description:** Choice Expanded 2/28 |
| **Borrower First Name:** Deborah | **Borrower Middle Name:** E | **Borrower Last Name:** Mills |
| **Loan Amount:** 962500 | **FICO:** 659 | |
| **LTV:** 70.00 | **CLTV:** 90.00 | **HCLTV:** 0 |
| **Sale Price:** 0 | **Appraised value:** 0 | |
| **Doc Type:** SIFA | **Property State:** CA | **Purpose:** Purchase |
| **Occupancy Type:** Primary Home | **Property Type:** 1 Family | |
| **Ratio:** 29.82 | **DTI Ratio:** 34.991 | |
| **Reserves:** 244000 | **Cash Out Amount/Funds to Close:** 251656.62 | **2nd Mortgage Product Code** 1938 |
| **Is there an AHM 2nd Mortgage?** Yes | **2nd Mortgage Loan Number:** | |

**Exception Type:** FICO Score

**Reason for Exception:** 659 MID FICO, PROGRAM REQUIREMENT OF 660

**Compensating Factors:** RESERVES VERIFIED THRU CD AND LOAN PROCEEDS, EA LETTER FOR LAST FIVE YEARS, 20 YEARS AS LANDSCAPE DESIGNER, COSTING BORROWER $350 PER DAY, CLOSE OF ESCROW TO BE 07/01/2005

**Administrative Section For Reviewer's Use Only**

Regional Underwriting Manager Review

| | | |
|---|---|---|
| **Date:** 07/14/2005 | **Underwriting Decision:** Approved | **Reviewed By:** Lory Camp |

**Comments:** Exception Approved for 659 score, 1 pt below min required 660 for 1st mtg only. Subject to satis clear Alert, Owner occ purchase, stable Bor w/20 yrs SE same Job. 12 yr spotless credit history, conservativ yes VOR is file w/ no later. Strong savings, significant reserves after ttce of 274+ mos. NOTE: Piggyback reduced to $200,000, 70%LTV/85.55%CLTV, $1,375,000 SP/AV. Per branch strong appraisal yr/value other program and underwriting requirements apply. To S&P for pricing consideration.

Keep in file

http://www.ahmweb.com/admin/Approve_REIT_ExceptionRequest.asp?ID=4069        7/15/2005

(2pg)        AHM_MILLS000082

Approve REIT Product Exception Request                     Page 2 of 2

Notes:
Discussed w/Martha. Restructure and alternate program is best option. Martha will advise.

Notes sent to requester:
Yes

S&P Exceptions Review

| Date: | Decision: | Reviewed By: |
|---|---|---|
| 07/15/2005 | Approved | Ronda C Humphrey |

Comments:
Flea exception approved...Pricing adjustment 1.25% to both rate and margin inclusive of all pricing ad other program guidelines must be met.

| Adjustment to Rate: | Adjustment to Margin: | Adjustment to Price: |
|---|---|---|
| 1.250 | 1.250 | 0.000 |



navigation: home > admin > approve_reit_exceptionrequest

About Our Company | History of American Home | Our Mission Statement | Executive Biographies

AHM_MILLS000083

# EXHIBIT

# D

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when [ ] the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or [ ] the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | [ ] VA | [x] Conventional | [ ] Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | [ ] FHA | [ ] USDA/Rural Housing Service | | | 26005236 |

| Amount | Interest Rate | No. of Months | Amortization Type: | [ ] Fixed Rate | [ ] Other (explain): |
|---|---|---|---|---|---|
| $962,500 | 5.6250 % | 360 | | [ ] GPM | [x] ARM (type): INDEXED ONE ARM |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) | | No. of Units |
|---|---|---|
| 3000 Duzek Rock Way, Templeton, CA 93465 County: SAN LUIS OBISPO | | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| as per prelim | 2005 |

| Purpose of Loan | [x] Purchase | [ ] Construction | [ ] Other (explain): | Property will be: |
|---|---|---|---|---|
| | [ ] Refinance | [ ] Construction-Permanent | | [x] Primary Residence  [ ] Secondary Residence  [ ] Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements [ ] made [ ] to be made |
|---|---|---|---|---|
| | $ 0,000 | $ | | Cost: $ 0 |

| Title will be held in what Name(s): Deborah E Hills | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | Single | [x] Fee Simple  [ ] Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| Checking/Savings etc |

### III. BORROWER INFORMATION

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Deborah E Hills | |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| | | 03/20/1961 | 16 | | | | |

| [ ] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Co-Borrower) no. ___ ages ___ | [ ] Married [ ] Unmarried (include single, divorced, widowed) [ ] Separated | Dependents (not listed by Borrower) no. ___ ages ___ |
|---|---|---|---|

| Present Address (street, city, state, ZIP) [ ] Own [x] Rent  2 No. Yrs. | Present Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. |
|---|---|
| 179 Niblick Road #MB 163  Paso Robles, CA 93465 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| 179 Niblick Road #MB 163  Paso Robles, CA 93465 | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) [x] Own [ ] Rent  2yr No. Yrs. | Former Address (street, city, state, ZIP) [ ] Own [ ] Rent ___ No. Yrs. |
|---|---|
| 11130 Telegraph Road 50  Ventura, CA 93004 | |

### IV. EMPLOYMENT INFORMATION

| Name & Address of Employer | [x] Self Employed | Yrs. on this job | Name & Address of Employer | [ ] Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| Deborah Hills  179 Niblick Rd #143  Paso Robles, CA 93445 | | 20 Yrs | | | |
| | | Yrs. employed in this line of work/profession  20 | | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Owner/Landscape Design | 805-302-7479 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | [ ] Self Employed | Dates (from - to) | Name & Address of Employer | [ ] Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | | | | |
| | | Monthly Income | | | Monthly Income |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer | [ ] Self Employed | Dates (from - to) | Name & Address of Employer | [ ] Self Employed | Dates (from - to) |
|---|---|---|---|---|---|
| | | | | | |
| | | Monthly Income | | | Monthly Income |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

VMP-21N (0501)    VMP Mortgage Solutions (800)521-7291

AHM_MILLS000071

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | 28,552.00 | | 28,552.00 | Rent | 1,000.00 | |
| Overtime | | | | First Mortgage (P&I) | | 5,540.70 |
| Bonuses | | | | Other Financing (P&I) | | 2,291.80 |
| Commissions | | | | Hazard Insurance | | 206.73 |
| Dividends/Interest | | | | Real Estate Taxes | | 1,632.29 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other | | |
| Total | 28,552.00 | | 28,552.00 | Total | 1,000.00 | 9,544.72 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income | Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | | Monthly Amount |
|---|---|---|---|
| B/C | | | |

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☒ Not Jointly

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description | | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| Cash deposit toward purchase held by: | 5,000.00 | | $ Payment/Months | |
| Chicago Title Co | | Name and address of Company | | |
| List checking and savings accounts below | | Coluta National Bank | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Bingham Escrow | | | | |
| | | Name and address of Company | $ Payment/Months | |
| | | | 50.00 | 13,740.00 |
| Name and address of Bank, S&L, or Credit Union | 500,000.00 | US BANK/NA ND | 275 | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | CITI | 252.00 | 10,763.00 |
| | | | 37.00 | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | BANK AMERICA | 250.00 | 10,621.00 |
| | | | 61 | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| Stocks & Bonds (Company name/number & description) | | GMAC | 302.00 | 9,699.00 |
| | | | 32 | |
| | | Name and address of Company | $ Payment/Months | |
| Life insurance net cash value | | BANK AMERICA | 158.00 | 5,166.00 |
| Face amount: $ | | | 33 | |
| Subtotal Liquid Assets | 500,000.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | 190,000.00 | Name and address of Company | | |
| Vested interest in retirement fund | 0 | | $ Payment/Months | |
| Net worth of business(es) owned (attach financial statement) | 0 | | | |
| Automobiles owned (make and year) | 0 | | | |
| | | Acct. no. | | |
| Other Assets (itemize) | 0 | Alimony/Child Support/Separate Maintenance Payments Owed to: | | |
| | | Job-Related Expense (child care, union dues, etc.) | | |
| | | Total Monthly Payments | 1,305.00 | |
| Total Assets a. | 690,000.00 | Net Worth (a minus b) ▶ $ 638,747.00 | Total Liabilities b. | 51,253.00 |

Freddie Mac Form 65 06/04
Fannie Mae Form 1003 06/04

Page 2 of 4

FBB-21N (5205)

AHM_MILLS000072

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgage & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 11100 Telegraph Road Ventura, CA  93004 | SFR | 190,000 | $ | $ | $ | $ | $ |
| Totals | | 190,000 | | | | | |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. Purchase price | $ | 1,275,000 |
| b. Alterations, improvements, repairs | | 0 |
| c. Land (if acquired separately) | | 0 |
| d. Refinance (incl. debts to be paid off) | | 8,534 |
| e. Estimated prepaid items | | 12,920 |
| f. Estimated closing costs | | |
| g. PMI, MIP, Funding Fee | | 0 |
| h. Discount (if Borrower will pay) | | 0 |
| i. Total costs (add items a through h) | | 3,352,354 |
| j. Subordinate financing | | 275,000 |
| k. Borrower's closing costs paid by Seller | | 0 |
| l. Other Credits (explain) | | 0 |
| Paid by Lndr/Direct Bill/Other | | 0 |
| Paid at Application | | 0 |
| Paid outside of Closing | | 5000 |
| Earnest Money Deposit | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | 962,500 |
| n. PMI, MIP, Funding Fee Financed | | 0 |
| o. Loan amount (add m & n) | | 962,500 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | | 156,414 |

## VIII. DECLARATIONS

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | X |
| b. Have you been declared bankrupt within the past 7 years? | | X | | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | X |
| d. Are you a party to a lawsuit? | | X | | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | | X | | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | X |
| h. Is any part of the down payment borrowed? | | X | | X |
| i. Are you a co-maker or endorser on a note? | | X | | X |
| j. Are you a U.S. citizen? | X | | X | |
| k. Are you a permanent resident alien? | | X | | X |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | X | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X  Deborah Nills | 7/15/05 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, nor on whether you choose to furnish it. If you furnish this information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information. | CO-BORROWER ☐ I do not wish to furnish this information. |
|---|---|
| Ethnicity: ☐ Hispanic or Latino  ☐ Not Hispanic or Latino | Ethnicity: ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | Race: ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: ☐ Female  ☐ Male | Sex: ☐ Female  ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | | Name and Address of Interviewer's Employer |
|---|---|---|---|
| This application was taken by: | Tanya Lozano | | JPMorgan Chase Bank, N.A. |
| ☐ Face-to-face interview | Interviewer's Signature | 7/1/05 | 1101 Sixth Street |
| ☐ Mail | | | San Luis Obispo, CA  9240 |
| ☐ Telephone | Interviewer's Phone Number (incl. area code) | | |
| ☐ Internet | 805-553-1177 | | |

Page 3 of 4

Fannie Mae Form 1003  01/04
Freddie Mac Form 65  01/04

AHM_MILLS000073

VI. ASSETS AND LIABILITIES

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payment | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 11160 Telegraph Road Ventura, CA 93004 | | 190,000 | | | | | |
| Totals | | 190,000 | | | | | |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

VII. DETAILS OF TRANSACTION & VIII. DECLARATIONS

| | | VIII. DECLARATIONS |
|---|---|---|
| a. Purchase price | 1,275,000 | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. |
| b. Alterations, improvements, repairs | | |
| c. Land (if acquired separately) | | a. Are there any outstanding judgments against you? |
| d. Refinance (incl. debts to be paid off) | 5,550 | b. Have you been declared bankrupt within the past 7 years? |
| e. Estimated prepaid items | 11,220 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? |
| f. Estimated closing costs | | d. Are you a party to a lawsuit? |
| g. PMI, MIP, Funding Fee | | e. Have you directly or indirectly been obligated on any loan... |
| h. Discount (if Borrower will pay) | | |
| i. Total costs (add items a through h) | 1,292,914 | f. Are you presently delinquent or in default on any Federal debt... |
| j. Subordinate financing | 275,000 | g. Are you obligated to pay alimony, child support, or separate maintenance? |
| k. Borrower's closing costs paid by Seller | | h. Is any part of the down payment borrowed? |
| l. Other Credits (explain) | | i. Are you a co-maker or endorser on a note? |
| Paid by Lndr/Direct Bill/Other | | j. Are you a U.S. citizen? |
| Paid at Application | | k. Are you a permanent resident alien? |
| Paid Outside of Closing | | l. Do you intend to occupy the property as your primary residence? |
| Earnest Money Deposits | 5000 | m. Have you had an ownership interest in a property in the last three years? |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 962,500 | |
| n. PMI, MIP, Funding Fee financed | 0 | |
| o. Loan amount (add m & n) | 962,500 | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 150,414 | |

IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature...

Borrower's Signature                    Date          Co-Borrower's Signature          Date

X  _[signature]_  7/5/05          X

X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws...

| BORROWER | ☒ I do not wish to furnish this information. | CO-BORROWER | ☐ I do not wish to furnish this information. |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino  ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White | Race: | ☐ American Indian or Alaska Native  ☐ Asian  ☐ Black or African American  ☐ Native Hawaiian or Other Pacific Islander  ☐ White |
| Sex: | ☐ Female  ☐ Male | Sex: | ☐ Female  ☐ Male |

To be Completed by Interviewer

This application was taken by:
☐ Face-to-face interview
☐ Mail
☒ Telephone
☐ Internet

| Interviewer's Name (print or type) | Tawnya Leitzan | Date 7/7/05 |
| Interviewer's Signature | | |
| Interviewer's Phone Number (incl. area code) | 805-593-1177 | |

Name and Address of Interviewer's Employer
JPMorgan Chase Bank, N.A.
3101 Marsh Street
San Luis Obispo, CA 93401

1003-21N (11/03)                    Page 3 of 4                    Freddie Mac Form 65 01/04 / Fannie Mae Form 1003 01/04

AHM_MILLS000074

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower<br>Deborah K Mills | Agency Case Number: |
| | Co-Borrower | Lender Case Number:<br>26405336 |

LIABILITIES:

ADDITIONAL LIABILITIES

CAPITAL 1 BK ████████████████ Balance: $808.00 Payment: $27.00 for 34 Months

KOHLS DEP ST ████████████████ Balance: $326.00 Payment: $16.00 for 21 Months

Deborah D Mills

EMAIL:
Cell Phone:
Pager:

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
| X  *Deborah Mills* | 7/15/05 | X | |

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

████-21N (0305)                    Page 4 of 4

AHM_MILLS000075

## Continuation Sheet/Residential Loan Application

| | | Agency Case Number |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | **Borrower:** Deborah H Mills | |
| | **Co-Borrower:** | **Lender Case Number:** 26405236 |

IAROIEND1

ADDITIONAL LIABILITIES

CAPITAL 1 BK
　　Account #▓▓▓▓▓▓▓ Balance: $980.00 Payment: $27.00 for 36 Months

HSBIS DEP ST
　　Account #▓▓▓▓▓▓▓ Balance: $320.00 Payment: $16.00 for 21 Months

　　　　Deborah H Mills

EMAIL:
Cell Phone:
Pager:

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X  Deborah Mills | 7/5/05 | X | |

Page 4 of 6

▓▓▓-21N (9201)

Freddie Mac Form 65 0106
Fannie Mae Form 1003 0106

AHM_MILLS000076

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☒ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

| | | | |
|---|---|---|---|
| **I. TYPE OF MORTGAGE AND TERMS OF LOAN** | | Agency Case Number | Lender Case Number |
| | | | 26405299 |

| Mortgage Applied for: | ☐ VA | ☒ Conventional | ☐ Other (explain): | | |
|---|---|---|---|---|---|
| | ☐ FHA | ☐ USDA/Rural Housing Service | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate | ☐ Other (explain): |
|---|---|---|---|---|---|
| $ 200,000 | 11.5000 % | 360 | | ☐ GPM | ☒ ARM (type): IMONTHLY OFT 2ND - ARM |

| | | |
|---|---|---|
| **II. PROPERTY INFORMATION AND PURPOSE OF LOAN** | | No. of Units |
| | | 1 |

Subject Property Address (street, city, state, ZIP)
1880 Burnt Rock Way, Templeton, CA , 93465    County: SAN LUIS OBISPO

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| as per prelim | 2005 |

| Purpose of Loan | ☒ Purchase | ☐ Construction | ☐ Other (explain): | Property will be: |
|---|---|---|---|---|
| | ☐ Refinance | ☐ Construction-Permanent | | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| 0 | $ | | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made  ☐ to be made |
|---|---|---|---|---|---|
| | $ 962,500 | $ | | Cost: $ | |

| Title will be held in what Name(s) Deborah E Mills | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | Single | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)
Checking/Savings and

| | |
|---|---|
| **III. BORROWER INFORMATION** | **Co-Borrower** |

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Deborah E Mills | |

| Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| | | 03/20/1961 | 16 | | | | |

| ☐ Married  ☒ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Co-Borrower) no. | ☐ Married  ☐ Unmarried (include single, divorced, widowed)  ☐ Separated | Dependents (not listed by Borrower) no. |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent __ No. Yrs. | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent __ No. Yrs. |
|---|---|
| 179 Niblick Road PMB 163  Paso Robles, CA 93446 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| 179 Niblick Road PMB 163  Paso Robles, CA 93446 | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☒ Own  ☐ Rent 2yr No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent __ No. Yrs. |
|---|---|
| 11100 Telegraph Road 50  Ventura, CA 93004 | |

| | |
|---|---|
| **IV. EMPLOYMENT INFORMATION** | **Co-Borrower** |

| Name & Address of Employer  ☒ Self Employed | Yrs. on this job | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| Deborah Mills  179 Niblick Rd 163  Paso Robles, CA 93446 | 20 Yrs  Yrs. employed in this line of work/profession  20 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business  Owner/Landscape Design/ | Business Phone (incl. area code)  805-302-7470 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income  $ | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income  $ | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04
Page 1 of 4

Initials: _DM_

-21N (0305)    VMP Mortgage Solutions (800)521-7291

AHM_MILLS002424

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 28,552.00 | $ | $ 28,552.00 | Rent | $ 1,000.00 | |
| Overtime | | | | First Mortgage (P&I) | | 5,616.00 |
| Bonuses | | | | Other Financing (P&I) | | 2,221.00 |
| Commissions | | | | Hazard Insurance | | 50.33 |
| Dividends/Interest | | | | Real Estate Taxes | | 1,492.29 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other | | |
| Total | $ 28,552.00 | $ | $ 28,552.00 | Total | $ 1,000.00 | 9,390.51 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | • Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that this Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.    Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: Chicago Title Co | $ | Name and address of Company US BANC PLC, ND | $ Payment/Months 50.00 275 | 13,760.00 |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union Staybank Carter | | | | |
| Acct. no. 029-3090543-02 | $ 500,000.00 | Name and address of Company CITFI | $ Payment/Months 292.00 37 | 13,703.00 |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | $ | Name and address of Company MBNA AMERICA | $ Payment/Months 250.00 61.00 | 10,601.00 |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | $ | Name and address of Company CHASE | $ Payment/Months 302.00 32 | 9,699.00 |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | $ | Name and address of Company MBNA AMERICA | $ Payment/Months 155.00 33 | 5,166.00 |
| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company CAPITAL 1 BK | $ Payment/Months 27.00 34 | 500.00 |
| Life insurance net cash value Face amount $ | $ | | | |
| Subtotal Liquid Assets | $ 500,000.00 | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ 190,000.00 | Name and address of Company | $ Payment/Months | |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ 0 | |
| Total Assets a. | $ 690,000.00 | Total Monthly Payments | $ 1,100.00 | |
| | | Net Worth (a minus b) ► $ 638,747.00 | Total Liabilities b. | $ 51,253.00 |

Initials ___   Page 2 of 4

AHM_MILLS002425

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 11108 Telegraph Road Ventura, CA 93004 | R | COND | 190,000 | $ | $ | $ | $ |
| Totals | | 190,000 | $ | $ | $ | $ | |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

**VII. DETAILS OF TRANSACTION**

| | | |
|---|---|---|
| a. Purchase price | $ | 1,375,000 |
| b. Alterations, improvements, repairs | | 0 |
| c. Land (if acquired separately) | | 0 |
| d. Refinance (incl. debts to be paid off) | | 0 |
| e. Estimated prepaid items | | 0 |
| f. Estimated closing costs | | 0 |
| g. PMI, MIP, Funding Fee | | 0 |
| h. Discount (if Borrower will pay) | | 0 |
| i. Total costs (add items a through h) | | 1,375,000 |
| j. Subordinate financing | | 275,000 |
| k. Borrower's closing costs paid by Seller | | 0 |
| l. Other Credits (explain) | | |
| Paid by Lndr/Direct Bill/Other | | 0 |
| Paid at Application | | 0 |
| Paid Outside of Closing | | 0 |
| Earnest Money Deposit | | 0 |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | 200,000 |
| n. PMI, MIP, Funding Fee financed | | 0 |
| o. Loan amount (add m & n) | | 200,000 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | | 1,100,000 |

**VIII. DECLARATIONS**

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes / No | Co-Borrower Yes / No |
|---|---|---|
| a. Are there any outstanding judgments against you? | X | X |
| b. Have you been declared bankrupt within the past 7 years? | X | X |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | X | X |
| d. Are you a party to a lawsuit? | X | X |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | X | X |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? | X | X |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | X | X |
| h. Is any part of the down payment borrowed? | X | X |
| i. Are you a co-maker or endorser on a note? | X | X |
| j. Are you a U.S. citizen? | X | X |
| k. Are you a permanent resident alien? | X | X |
| l. Do you intend to occupy the property as your primary residence? | X | X |
| m. Have you had an ownership interest in a property in the last three years? | X | X |

**IX. ACKNOWLEDGEMENT AND AGREEMENT**

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application...

| Borrower's Signature | Date |
|---|---|
| X _Deborah Mills_ | 7/15/05 |

| Co-Borrower's Signature | Date |
|---|---|
| X | |

**X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES**

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws...

| | BORROWER | I do not wish to furnish this information | CO-BORROWER | I do not wish to furnish this information |
|---|---|---|---|---|
| Ethnicity: | Hispanic or Latino / Not Hispanic or Latino | | Hispanic or Latino / Not Hispanic or Latino | |
| Race: | American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White | | American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White | |
| Sex: | Female / Male | | Female / Male | |

| To be Completed by Interviewer | | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|---|
| This application was taken by: | | Tammy Zottos | JPMorgan Chase Bank, N.A. |
| Face-to-face interview | Interviewer's Signature | Date 7/7/05 | 1101 Marsh Street |
| Mail | | | San Luis Obispo, CA 93401 |
| X Telephone | Interviewer's Phone Number (incl. area code) 805-593-1177 | | |
| Internet | | | |

Freddie Mac Form 65 01/04
Fannie Mae Form 1003 01/04

Page 2 of 4

AHM_MILLS002426

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower Deborah E Mills | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: 26405239 |

LANDLORD:

ADDITIONAL LIABILITIES

MONLO DEB ST

Account #██████████ Balance: $328.00 Payments $16.00 for 21 Months

        Deborah E Mills

EMAIL:

Cell Phone:

Pager:

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _Deborah Mills_ | 17/15/05 | X | |

AHM_MILLS002427

# SINGBANC ESCROW & TRUST COMPANY

A First Fidelity Financial Escrow & Trust Company

County/City: Singapore, Zip Postal Code: 048027, Phone/Fax: 85- 64915199

Account Statement                    06 -16-2005

Ms. Deborah E. Mills
179 Niblick, #143
Paso Robles, CA 93446 USA

Thank you for your business

| CD Investment Account | |
|---|---|

| Previous Balance | $500,000.00 |
| Deposit and Credit | $500,000.00 |
| Withdrawal and Debit | 0 |
| New Balance | $500,000.00 |

| Deposit and Credit | Tran Date | Date Posted | Description | Place posted | Amount |
|---|---|---|---|---|---|
| | 12-08-03 | 12-08-03 | Certificate of Deposit | | $500,000.00 |

**Interest Information:** The interest on this account has been pre-selected and shall be paid pro-rata at the end of the CD term.

**Account Description:** This is a two year and one day brokered term Certificate of Deposit. A penalty of 12.5% per year will be assessed along with the administrative and accounting fees for any early withdrawals. Sixty days written notification is required for any early withdrawals per the instructions of the financial services agreement.

新行信托财产®                                    新行信托财产®

AHM_MILLS002483

myfaxsocial.damuypreview200000cd4M76s4S (1752x13742 BT) [1]

JUL 15 2005 10:45 FR DRHUE HLU        805 547 1189 TO 12278700        P.01

## GIFT LETTER

Date: 7/15/2005

Loan #: *PROSPASE*

Property Address: 2388 *tenney Block Way*, *Templeton*, CA *93465*

TO WHOM IT MAY CONCERN:

I/we, _Rodgers, Anthony Esquivel_
(Donor(s) Name(s))

_2795 Bayshore Drive, Ventura, Ca. 93001_
(Address)                                    (City, State, Zip)

the Donor(s), do hereby certify that I/we [X] will give or [ ] have given

in the □ _fleur_
(Relationship(s) to Recipient)

to _Deborah Ellen Mills_
(Recipient(s))

a gift in the amount of $_620,750._* . This is a bonafide gift, and there is no obligation, expressed or implied,
to repay this sum at any time. These funds are available and

[X] will be given on (or held than) the closing date or 7/8/05

[ ] have been given to the recipient(s) to be used for the purchase of property located at the Address above.

The source of the gifts:

X _Checking_
(Savings, Checking or Only Other)

X _8 V&S Bank_
(Name of Bank)

I/we certify that these funds are/not made available in excess from any investor or entity with an interest in the sale of the property including the seller, real estate agent or broker, builder, loan officer, or any entity associated with them.

X _____      7/15/05
(Signature(s) of Donor)               (Date)

X _Anthony Esquivel_                 7/15/05
(Print Name(s) of Donor)              (Date)

_Deborah Mills_                      7/15/2005
(Signature of Gift/Aid Receiver)

_____          7/15/2005
(Lender Official and Title)

NOTE: If the gift has not yet been given to the recipient, attach verification that the donor has sufficient assets to do so. If a copy of a round statement from the donor's bank verifying that the balance just least, or in excess of, the gift amount (this may be a copy of a checking account statement, saving, passbook statement, stock statement, or savings statement, or 2) a letter from the donor's bank verifying that the "drop line" at least" the amount of the gift to their account. If the employer has already received the funds, please like, note that they are included on the Verification of Deposit.

WARNING: Section 1010 of Title 18, U.S.C., Federal Housing Administration transactions, provides: "Whoever, for the purpose of influencing in any way the action of such Administration making, passes, uses, or published any statement, knowing the same to be false, shall be fined not more than $5,000 or imprisoned not more than two years, or both".

GIFT LETTER
GAMH (5/02) (others 1/07)

** TOTAL PAGE.02 **



AHM_MILLS002473

JUL 15 2005 12:00 FR CHASE SLO        805 547 1100 TO 15999504026        P.63/63

## Aliso Escrow, Inc.

5160 Telegraph Rd. Suite 102  Ventura, CA 93004
(805) 650-7007 Fax: (805) 650-1447

### SELLER'S FINAL SETTLEMENT STATEMENT

| | | DATE: | May 2, 2005 |
|---|---|---|---|
| PROPERTY: | 11100 Telegraph Road, Space 50 | | |
| | Ventura, CA 93004 | CLOSING DATE: | April 29, 2005 |
| SELLER: | DEBORAH MILLS | ESCROW NO.: | 1-15474-MH |

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 180,000.00 |
| **PAYOFF CHARGES - Community West Bank** | | |
| [Total Payoff $129,426.94] | | |
| Principal Balance | 115,824.33 | |
| Interest on Principal Balance at $31.1900/day from 04/15/2005 to 05/04/2005 | 592.61 | |
| UCC Termination fee | 10.00 | |
| **PRORATIONS/ADJUSTMENTS** | | |
| Taxes at $1384.16/annually from 04/29/2005 to 07/01/2005 | | 240.11 |
| Park Rent at $550.28/monthly from 04/29/2005 to 05/01/2005 | | 23.89 |
| **COMMISSION CHARGES** | | |
| California Oaks Realtors | 9,500.00 | |
| **DEPT. of HOUSING - Dept. of Housing and Community** | | |
| Development | 17.50 | |
| Registered Owner Transfer Tax | 25.00 | |
| Legal Owner Registration Fee | 25.00 | |
| Registration Fee | 60.00 | |
| Duplicate Fees | 5.00 | |
| Park Purchase Fund Fee | 5.00 | |
| Mobile Home Recovery Fund Fee | | |
| **OTHER DEBITS/CREDITS** | | |
| Hold for Realng of Steps | 300.00 | |
| DisclosureSave for Zone Disclosure Reports | 34.50 | |
| Dept. of Housing & Community Development for title search | 50.00 | |
| Hold for clear title | 75.00 | |
| hold for closing utilities | 200.00 | |
| **ESCROW CHARGES** | | |
| Escrow Fee | 530.00 | |
| Processing/wire fees | 115.00 | |
| Net Proceeds | 58,905.05 | |
| **TOTAL** | $ 190,263.99 | $ 190,263.99 |

### SAVE THIS STATEMENT FOR INCOME TAX PURPOSES

*Final Held*
*Funds to Clear*

AHM_MILLS002040



*Owen, Grecco & Associates*

### Tax Preparer's Attestation Memorandum

| | |
|---|---|
| **date:** | Jul. 13, 05 |
| **attn:** | Tawnya Lettau |
| **of:** | Chase Manhattan Bank |
| **re:** | Ms. Deborah Mills |
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮ |
| **Fax to:** | (805) 547-1105 |

This letter will confirm the fact that we have been engaged by Deborah Mills as her Certified Public Accountants since the filing of her 2001 individual income tax returns. She has engaged us to prepare her individual tax returns, including form 1040 and Schedule C, Profit & Loss from business or profession. Deborah Mills has been self-employed for several years.

The preparation of Deborah Mills tax returns has been prepared from information and oral representations provided by the taxpayer to us and we have not performed any third party verification of this information or representations made.

If you require any additional information, please feel free to contact the undersigned.

by: _____
Michael J. Owen
Certified Public Accountant

3600 So. Harbor Blvd, Suite 221    Channel Islands Harbor, CA 93035
Tel: 805.382.8800    Fax: 805.382.8802



AHM_MILLS002042

COPY

Grecco Bookkeeping Tax
and Business Services

Tax Preparer's Verification Memorandum

date:        June 16, 2005

to:          To Whom It May Concern

re:          Ms. Deborah Mills

This letter will confirm the fact that I have been engaged by Deborah Mills as her Enrolled Agent since the filing of her 2000 individual income tax returns. She has engaged me to prepare her individual tax returns, including form 1040, Schedule C, profit and loss from business as a sole proprietor. These tax returns have been prepared from information and oral representations by the taxpayer to me, without verification of proof.

Should you have any questions, please feel free to contact me.

by: *Michele Grecco, EA*
    Michele Grecco, Enrolled Agent
    Licensed to practice before the IRS
    Enrollment No. 66092

3600 S. Harbor Blvd., Suite 221, Channel Islands Harbor, CA 93035
phone 805-382-8800  facsimile 805-382-8802  e-mail Grecco@westlinkinternet.com

AHM_MILLS002482

# EXHIBIT

# E

FROM : POIRIER RESIDENCE          PHONE NO. : 8056592235          Jan. 19 2006 05:39PM P1
Aug 03 05 12:45p                                                              F. 1

Joe—

## INSTALLMENT PROMISSORY NOTE
## AND SECURITY AGREEMENT

DATE: August 3, 2005

FOR VALUE RECEIVED, the undersigned, Promises to pay to the order of Ernest Kuhn, "Lender", the sum of $164,201.09 together with one time interest thereon at the rate of Ten per centum (10%) from date payable or, on demand, the one-time installment to be paid on the 19 day of August, 2005, and principal sum and all accrued interest have been paid in full.

If default is made in the payment of any installment specified herein, or any part thereof, and such default shall continue for a period of 10 days, then the holder hereof, may, at its option, declare the whole sum then remaining unpaid immediately due and payable. In case of any such default, the undersigned agrees to pay all costs of collection, including a reasonable attorneys fees, whether or not suit is instituted.

Presentment for payment, demand, notice of dishonor, protest, notice of protest and any homestead or personal property exemption allowed by the constitutions or laws of any state are hereby waived by the undersigned. Failure by the holder hereof to exercise any option granted it hereunder shall not constitute a waiver of future rights. The term "undersigned" as used herein shall include all makers, co-makers, endorsers, sureties and guarantors hereof.

As security for the Loan, the Borrower does hereby grant, pledge, transfer, sell, assign, convey and deliver to the Lender, and do grant to the Lender a security interest in, all of the right, title and interest of such Borrowers, in, to and under the following (hereinafter collectively referred to as the "Collateral"):   Assets of Elea Management Group Inc. A California Corporation. In the event of Default under this agreement, the Lender shall have, in addition to any other rights under this agreement or under applicable law, the right without notice to the Borrower to take any or all of the following actions at the same or at different times:   (a) to collect all Collateral in the Borrowers' name and take control of any cash or non-cash proceeds of Collateral;  (b) to enforce payment of any Collateral, to prosecute any action or proceeding with respect to the Collateral, to extend the time of payment of any and all Collateral, to make allowance and adjustments with respect thereto and to issue credits in the name of the Borrower; (c) to settle, compromise, extend, renew, release, terminate or discharge, in whole or in part, any Collateral or deal with the same as the Lender may deem advisable;  (d) without notice or

# EXHIBIT "1"

9

FROM : POIRIER RESIDENCE                    PHONE NO. : 8056592235                    Jan. 19 2006 05:40PM P2

Aug 05 05 12:45p                                                                        p.2

advertisement, to sell, assign and deliver the Collateral or any other property held by the Lender, at public or private sale, for cash, upon credit or otherwise at the sole option and discretion of Lender and to bid or become purchaser at any such sale, and (e) to exercise, in addition to all other rights and remedies of a Lender upon default under the Uniform Commercial Code adopted by the State of California. The net cash proceeds resulting from the exercise of any of the foregoing rights, after deducting all charges, expenses, cost and attorneys' fees relating thereto, including any and all costs and expenses incurred in securing the possession of Collateral and preparing the same for sale, shall be applied by the Lender to the payment of the Liabilities, whether due or to become due, in such order and in such proportions as the Lender may elect, and Borrower shall remain liable to the Lender for any deficiency.

R. Anthony Esquivel and Deborah Mills – Borrower
Elea Management Group

10

# EXHIBIT

# F

ESCROW WAIVER LETTER

Borrower(s): Deborah E. Mills

Property Adress: 1880 Burnt Rock Way, Templeton, CA, 93465

Loan number: 0000930980

Lender has agreed to waive its requirement to establish an escrow account and collect money escrow payments to cover real estate taxes and hazard insurance premiums due on the property.

Borrower has agreed to pay all real estate taxes and hazard insurance premiums when due and before any penalties are levied.

Borrower has agreed to furnish to Lender, upon request, within 30 days after the due date, original receipts or facsimilies or other evidence satisfactory to Lender showing payment of such real estate taxes and hazard insurance premiums.

If at any time, the Borrower has defaulted on its obligations under this agreement, Lender may, in its sole direction:

1.   establish an escrow account.
2.   immediately collect funds sufficient to cover any outstanding taxes and insurance premiums due; and
3.   begin to collect, on a monthly basis, a sum for the annual taxes and insurance premiums, in addition to whatever cushion is permitted by law and your loan documents.

Nothing in the Agreement will affect or impair Lender's security interest in, or lien priority on the Property, and will not be deemed a waiver of Lender's right to enforce any of its rights or remedies contained in the Loan Documents.

Except as modified by this Agreement, all other terms and conditions of the Loan Documents remain in effect.

This Agreement is not assignable by the Borrower but shall be assignable by Lender and, in such event, shall insure to the benefit of and be binding upon its successors or assigns.

I/We ackowledge receipt of this Notice and understand the conditions of waiver.

Deborah E. Mills

Doc # 880001  App # 0000930980



AHM_MILLS002943

# EXHIBIT

# G

  

## American Home Mortgage Servicing

4600 Regent Blvd, Suite 200
Irving, Texas 75063
1-877-304-8300

December 22, 2005

Deborah Mills
1880 Burnt Rock Way
Templeton, CA 93465

Re:    American Home Mortgage Loan ▓▓▓▓▓▓
       Property 1880 Burnt Rock Way, Templeton, CA 93465

Dear Deborah Mills:

This letter is written to you to advise you that you are currently in default under the above referenced loan for non-payment of the monthly mortgage payments for the months of October 2005 through December 2005.

In order to cure this default, please forward to us the sum of $14,215.11 which includes unpaid mortgage payments, late charges and fees now due by certified check, cashiers check or money order. Any further delay in reinstating your mortgage account will result in additional attorney and foreclosure fees to you.

**NOTE**

As payments are due on the first day of each month and late charges are due after the 15th day of delinquency, the above total delinquency amount must be paid increased to include your January 1, 2006 payment, if not received prior to January 15, 2006 for the total of $18,722.12.

The total amount due indicated above should be mailed to American Home Mortgage Servicing Inc., 4600 Regent Blvd, Ste 200, Irving, Texas 75063. For your convenience, a self addressed envelope is enclosed. Please enclose the appropriate coupons with these funds.

In the event this default is not cured as herein stated, we may, at our option, Accelerate the loan, that is to say declare that all of the sums secured by your Deed of Trust shall be immediately due and payable with out father demand and invoke the power of sale and any other remedies permitted by applicable law. In the event we do Accelerate, then we shall entitled to collect all reasonable cost and expenses incurred in pursuing the remedies available to us including, but not limited to, reasonable Attorney fees.

A copy of this letter is being sent to you by regular first-class mail and certified. We await the courtesy of your reply.

Sincerely,

Amanda Ellsworth
1-877-304-8300 X 6822
Loss Mitigation Specialist



Licensed Mortgage Banker or Authorized Lender in the Fifty States and The District of Columbia • NYSE Listing Symbol – AHM

 

## American Home Mortgage Servicing

4600 Regent Blvd, Suite 200
Irving, Texas 75063
1-877-304-8300

December 22, 2005

Deborah Mills
1880 Burnt Rock Way
Templeton, CA 93465

Re:     American Home Mortgage Loan # ██████████
        Property  1880 Burnt Rock Way, Templeton, CA 93465

Dear Deborah Mills:

This letter is written to you to advise you that you are currently in default under the above referenced loan for non-payment of the monthly mortgage payments for the months of October 2005 through December 2005.

In order to cure this default, please forward to us the sum of $5941.74 which includes unpaid mortgage payments, late charges and fees now due by certified check, cashiers check or money order. Any further delay in reinstating your mortgage account will result in additional attorney and foreclosure fees to you.

**NOTE**

As payments are due on the first day of each month and late charges are due after the 15th day of delinquency, the above total delinquency amount must be paid increased to include your January 1, 2006 payment, if not received prior to January 15, 2006 for the total of $7922.32.

The total amount due indicated above should be mailed to American Home Mortgage Servicing Inc., 4600 Regent Blvd, Ste 200, Irving, Texas 75063. For your convenience, a self addressed envelope is enclosed.  Please enclose the appropriate coupons with these funds.

In the event this default is not cured as herein stated, we may, at our option, Accelerate the loan, that is to say declare that all of the sums secured by your Deed of Trust shall be immediately due and payable with out further demand and invoke the power of sale and any other remedies permitted by applicable law.  In the event we do Accelerate, then we shall entitled to collect all reasonable cost and expenses incurred in pursuing the remedies available to us including, but not limited to, reasonable Attorney fees.

A copy of this letter is being sent to you by regular first-class mail and certified.  We await the courtesy of your reply.

Sincerely,

Amanda Ellsworth
1-877-304-8300 X 6822
Loss Mitigation Specialist

△ π EXHIBIT 63
Deponent Deborah Mills
Date 10/19/10  Rptr. R13
WWW.DEPOBOOK.COM

Licensed Mortgage Banker or Authorized Lender in the Fifty States and The District of Columbia • NYSE Listing Symbol - AHM

AHM_MILLS000405

# EXHIBIT

# H

Branch :FA4,User :SL19                    Comment:                                    Station Id :LVLR

**JULIE RODEWALD**
San Luis Obispo County—Clerk/Recorder
Recorded at the request of
**Title Court Services Inc**

8C
5/15/2006
10:17 AM

DOC#: **2006033626**

| Titles: 1 | Pages: **2** |
|---|---|
| Fees | 10.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $10.00 |

RECORDING REQUESTED BY
And When Recorded Mail To:
  UNITED TITLE COMPANY
CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON  CA  92022-9004

66600520

Trustee Sale No. 1081027-01                    Space Above This Line For Recorder's Use

## NOTICE OF TRUSTEE'S SALE

APN: 020-285-020      TRA:
LOAN NO: XXXXXX0980
REF: MILLS, DEBORAH E.
     UNINS

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED July 15, 2005.  UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF
YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER

On June 07, 2006, at 11:30am, CAL-WESTERN RECONVEYANCE CORPORATION, as duly
appointed trustee under and pursuant to Deed of Trust recorded August 09, 2005, as Inst. No.
2005065865, in book XX, page XX, of Official Records in the office of the County Recorder of SAN
LUIS OBISPO County, State of CALIFORNIA executed by:

**DEBORAH E. MILLS, A SINGLE WOMAN**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK
DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL
CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN
ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102
OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

**AT THE OSOS STREET ENTRANCE NEAR THE DOOR TO THE SAN LUIS
OBISPO COUNTY COURTHOUSE
SAN LUIS OBISPO CALIFORNIA**

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County and State described as:

**COMPLETELY DESCRIBED IN SAID DEED OF TRUST.**

NOS.DOC                          Rev. 2/21/2006                          Page : of 2

Branch :FA4,User :SL19                              Comment:                                          Station Id :LVLR

## NOTICE OF TRUSTEE'S SALE

T.S. No: 1081027-01

The street address and other common designation, if any, of the real property described above is purported to be:
**1880 BURNT ROCK WAY**
**TEMPLETON CA 93465**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust to wit:

$199,936.09 with interest thereon from September 01, 2005 @ the rate of **11.500%** per annum as provided in said not(s) plus cost and any advances with interest.  ESTIMATED TOTAL DEBT: $220,322.17.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell.  The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR SALES INFORMATION: Mon – Fri 9:00am to 4:00pm (619)590-1221
**CAL-WESTERN RECONVEYANCE CORPORATION**
**525 EAST MAIN STREET**
**P.O. BOX 22004**
**EL CAJON CA  92022-9004**

Dated: May 08, 2006

By: _____
Authorized Signature

**Matt Johnson**

NOS.DOC                              Rev. 2/21/2006                              Page 2 of 2

**END OF DOCUMENT**

# EXHIBIT

# I

## AFFIDAVIT OF MAILING NOTICE OF TRUSTEE SALE

T.S. NO.: 1081027-01                    State: CA


STATE OF CALIFORNIA          }
                             }SS
COUNTY OF SAN DIEGO          }


I, _____ **Dave Neal** _____ being duly sworn, depose and say:


I am and at all time herein mentioned a citizen of the United States, over the age of eighteen years and a resident of San Diego, California;


That at the request of Cal-Western Reconveyance Corporation, a California Corporation, on May 18, 2006, I deposited in the United States Mail copies of the attached Notice of Trustee's Sale, in separate, sealed envelopes, Certified Mail and First Class Mail, postage prepaid, addressed respectively as follows:

**See Attached**


_____
Affiant


Anos.doc

Rev.
11/04/04

AHM_MILLS019108

RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

Trustee Sale No. 1081027-01                    Space Above This Line For Recorder's Use

# NOTICE OF TRUSTEE'S SALE

APN: 020-285-020        TRA:
LOAN NO: XXXXXX0980
REF: MILLS, DEBORAH E.
    UNINS

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED July 15, 2005. UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF
YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER.

On June 07, 2006, at 11:30am, CAL-WESTERN RECONVEYANCE CORPORATION, as duly
appointed trustee under and pursuant to Deed of Trust recorded August 09, 2005, as Inst. No.
2005065865, in book XX, page XX, of Official Records in the office of the County Recorder of SAN
LUIS OBISPO County, State of CALIFORNIA executed by:

### DEBORAH E. MILLS, A SINGLE WOMAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK
DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL
CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN
ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102
OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

AT THE OSOS STREET ENTRANCE NEAR THE DOOR TO THE SAN LUIS
OBISPO COUNTY COURTHOUSE
SAN LUIS OBISPO CALIFORNIA

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County and State described as:

COMPLETELY DESCRIBED IN SAID DEED OF TRUST.

NOS.DOC                        Rev. 3/21/2006                        Page 1 of 2

AHM_MILLS019109

## NOTICE OF TRUSTEE'S SALE

T.S. No: 1081027-01

The street address and other common designation, if any, of the real property described above is purported to be:

**1880 BURNT ROCK WAY
TEMPLETON CA 93465**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust to wit:

$199,936.09 with interest thereon from September 01, 2005 @ the rate of 11.500% per annum as provided in said not(s) plus cost and any advances with interest. ESTIMATED TOTAL DEBT: $220,322.17.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR SALES INFORMATION: Mon - Fri 9:00am to 4:00pm (619)590-1221
CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

Dated: May 08, 2006

By: _____
Authorized Signature

**Matt Johnson**

NOS DOC                        Rev. 2/21/2006                        Page 2 of 2

5/18/2006 12:50:56 PM

Sender: CalWestern Reconveyance
525 E Main
El Cajon CA 92020

Postal Class:    First Class

Type of Mailing:    NOS

Affidavit Attachment: 1081027-01 030 05050929 CWR

| Postal Number | Sequence | Recipient Name | Address Line 1/3 | Address Line 2/4 |
|---|---|---|---|---|
| 110419941410036938864 | 1 | DEBORAH E. MILLS | 1880 BURNT ROCK WAY | TEMPLETON  CA  93465 |
| 110419941410036938871 | 2 | DEBORAH E. MILLS | 179 NIBLICK ROAD PMB 143 | PASO ROBLES  CA  93446 |
| 110419941410036938888 | 4 | DEBORAH E. MILLS | 179 NIBLICK RD BOX 144 | TEMPLETON  CA  93465 |
| 110419941410036938895 | 5 | ERNEST KUHN | C/O DEBORAH MILLS TEMPLETON  CA  93465 | 1880 BURNT ROCK WAY |
| 110419941410036938901 | 6 | ERNEST KUHN | 1880 BURNT ROCK WAY | TEMPLETON  CA  93465 |
| 110419941410036938918 | 7 | JOSEPH L. STROHMAN, JR., ESQ. | FERGUSON,CASE,ORR,PATERSON & CUNNINGHAM VENTURA  CA  93004 | 1050 S. KIMBALL ROAD |

AHM-MILLS010111

5/18/2006 12:50:57 PM

Sender: CalWestern Reconveyance
525 E.Main
El Cajon CA 92020

Postal Class: Certified

Type of Mailing: NOS

Affidavit Attachment: 1081027-01 030 05090929 CWR

| Postal Number | Sequence | Recipient Name | Address Line 1/3 | Address Line 2/4 |
|---|---|---|---|---|
| 7104199414100563211 | 1 | DEBORAH E. MILLS | 1880 BURNT ROCK WAY | TEMPLETON CA 93465 |
| 7104199414100563228 | 2 | DEBORAH E. MILLS | 179 NIBLICK ROAD PMB 143 | PASO ROBLES CA 93446 |
| 7104199414100563235 | 4 | DEBORAH E. MILLS | 179 NIBLICK RD BOX 144 | TEMPLETON CA 93465 |
| 7104199414100563242 | 5 | ERNEST KUHN | C/O DEBORAH MILLS TEMPLETON CA 93465 | 1880 BURNT ROCK WAY |
| 7104199414100563259 | 6 | ERNEST KUHN | 1880 BURNT ROCK WAY | TEMPLETON CA 93465 |
| 7104199414100563266 | 7 | JOSEPH L STROHMAN, JR., ESQ. | FERGUSON,CASE,ORR,PATERSON & CUNNINGHAM VENTURA CA 93004 | 1050 S. KIMBALL ROAD |

# EXHIBIT

# J



**RELIABLE**
Posting & Publishing

525 East Main Street
P.O. Box 12229
El Cajon, CA 92022-2229
Phone: (619) 590-1400
FAX: (619) 590-1496
1-800-566-6223

## Certificate of Posting
### Property and Public Place

T.S. NO. *108/027-01*                    RPP No. *127408*

I certify that I am a U.S. citizen, a California resident, more than 18 years of age, and competent to be a witness as to the matters shown herein.

On the ___*16TH*___ day of *MAY*_____, 19 *2006*___, I posted a copy of the Notice of Trustee's Sale processed under the above shown file number, on the property set forth in the legal description in said Notice as follows:

(X) front door                    ( ) stake driven into the ground
( ) other door                    ( ) a guard gate or similar impediment
                                         where access to property was denied.

( )gate, fence or tree          ( ) other:

On the ___*9TH*___ day of *MAY*_____, 19 *2006*, I posted a copy of the Notice of Trustee's Sale in one public place as follows:
*SLO COURTHOUSE @ SUPERIOR COURT*

I certify under penalty of perjury that the foregoing is true and correct.
Dated this ___*16TH*___ day of *MAY*_____, 19 *2006* at:

*Donald K. Jourdan*
Reliable Posting & Publishing

## Statement of Property Condition

The following information was obtained at the time I posted the Notice of Trustee Sales on the said property.

1. Improved (X)                    Unimproved ( )
2. Appears to be:  Occupied (X)        Unoccupied ( )
3. Condition of property as compared with neighboring properties:
   Above Average ( )    Average (X)        Below average ( )
4. Condition of landscaping as compared with neighboring properties:
   Above Average ( )    Average (X)        Below average ( )

Comments: *MUSTARD COLOR STUCCO, TILE ROOF*

AHM MILLS019458

1880 Burnt Rock Way, Templeton, Ca. 93465





AHM MILLS019459

RECORDING REQUESTED BY
And When Recorded Mail To:

CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON. CA. 92022-9004

Trustee Sale No. 1081027-01                    Space Above This Line For Recorder's Use.

*127408*

## NOTICE OF TRUSTEE'S SALE

APN: 020-285-020      TRA:
LOAN NO: XXXXXX0900
REF: MILLS, DEBORAH E,
        UNINS

### IMPORTANT NOTICE TO PROPERTY OWNER:

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED July 15, 2005. UNLESS YOU
TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF
YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU
SHOULD CONTACT A LAWYER.

On June 07, 2006, at 11:30am, CAL-WESTERN RECONVEYANCE CORPORATION, as duly
appointed trustee under and pursuant to Deed of Trust recorded August 09, 2005, as Inst. No.
2005065865, in book XX, page XX, of Official Records in the office of the County Recorder of SAN
LUIS OBISPO County, State of CALIFORNIA executed by:

### DEBORAH E. MILLS, A SINGLE WOMAN

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK
DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL
CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN
ASSOCIATION, SAVINGS ASSOCIATION, OR SAVINGS BANK SPECIFIED IN SECTION 5102
OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

AT THE OSOS STREET ENTRANCE NEAR THE DOOR TO THE SAN LUIS
OBISPO COUNTY, COURTHOUSE
SAN LUIS OBISPO CALIFORNIA

all right, title and interest conveyed to and now held by it under said Deed of Trust in the property
situated in said County and State described as:

COMPLETELY DESCRIBED IN SAID DEED OF TRUST.

NOS.DOC                          Rev. 2/21/2006                          Page 1 of 2

AHM MILLS019460

## NOTICE OF TRUSTEE'S SALE

T.S. No: 1081027-01

The street address and other common designation, if any, of the real property described above is purported to be:
1880 BURNT ROCK WAY
TEMPLETON CA. 93465

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be held, but without covenant or warranty, express or implied, regarding title, possession, condition, or encumbrances, including fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust, to pay the remaining principal sums of the note(s) secured by said Deed of Trust to wit:

$199,936.09 with interest thereon from September 01, 2005 @ the rate of 11.500% per annum as provided in said note(s) plus cost and any advances with interest. ESTIMATED TOTAL DEBT: $220,322.17.

If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.

The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR SALES INFORMATION: Mon.– Fri 9:00am to 4:00pm (619)590-1221
CAL-WESTERN RECONVEYANCE CORPORATION
525 EAST MAIN STREET
P.O. BOX 22004
EL CAJON CA 92022-9004

Dated: May 08, 2006                                    By: _____
                                                              Authorized Signature          Matt Johnson

NOS.DOC                                    Rev. 2/21/2005                                    Page 2 of 2

# EXHIBIT

# K

# THE CAMBRIAN

2442 Main Street
Cambria, CA 93428

Business (805) 927-8562
Newsroom (805) 927-8895

In The Superior Court of The State of California
In and for the County of San Luis Obispo

AFFIDAVIT OF PUBLICATION

AD# 6378439
RELIABLE POSTING & PUBLISHING

STATE OF CALIFORNIA,

ss.

County of San Luis Obispo

I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen and not interested in the above entitled matter; I am now, and at all times embraced in the publication herein mentioned, was the principal clerk of the printers and publishers of THE CAMBRIAN, a newspaper of general circulation, printed and published weekly on each Thursday in the above named county and state; that notice at which the annexed clippings is a true printed copy, was published in the above-named newspaper and not in any supplement thereof - on the following dates, to-wit: MAY 18, 25; JUNE 1, 2006 that being as often during the said period as said newspaper was regularly published, that said notice was printed and published in each and every edition, issue and number thereof printed, published and circulated on said days, I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

*Janet E. Durand*

(Signature of Principal Clerk)

DATE: JUNE 1, 2006
AD COST: $502.20

AHM_MILLS019462

# EXHIBIT

# L

**Deborah Mills**
**Plant Health Care Consultant/Landscape Designer**
**1880 Burnt Rock Way**
Templeton, CA 93465

Amanda Ellsworth
American Home Mortgage Servicing
400 Regent Blvd., Suite 200
Irving Texas  75063

May 29, 2006

Dear Ms. Amanda Ellsworth,

First of all I want to "Thank you" for your consideration and express my gratitude in being able to work with you.

This letter shall serve as to explaining the circumstances that has caused the default of my mortgage loan, a position that I have never been in before. A chain of events that recently occurred that seemed to compile but there is light at the end of the tunnel.

Upon purchasing my home (one of the happiest times in my fiancé's and my lives) I had the unfortunate experience of dealing with the most unscrupulous movers (American Eagle Moving Company) that not only destroyed much of my personal property but they and emptied my bank account.

To make a long story short, every piece of furniture has been marred or damaged beyond repair. I can live with the huge gouge in my dining room table (table cloths work nicely) but anything that was electronic was stolen that assisted me in making a living.

I not only lost a very expensive TV camera but all of my still cameras were gone. The biggest financial hit was they had the audacity to take my computer. The critical issue with my computer was it was customized for my landscaping business and all of the information (a lesson well learned) was not backed up. Aside from my landscape business I am also a free-lance garden writer/photographer.

The result was I lost my whole landscape portfolio (before and after pictures, which is a selling point in the industry), over 480 garden articles that were written and stored on my computer (a source of income by republishing) but in addition over 1,200 photos' used in conjunction with my writing and education out-reach



MILLS000125

materials I utilize in public speaking forums and all of my personal information including my financials.

To give you a little geological background of the move I made. I choose to move to San Luis Obispo County from Ventura County (approximately 180 miles) because I felt the opportunity was there to make a smooth transition to the area. I could have the luxury of still working with established clients down south while I made a name for myself in the landscape design business up in this region.

The one and final decision-making factors to relocating to this area was that I would be able to secure additional income by working with the California based corporation, *Pacific Horticulture* on performing oak tree survey's for the city of Paso Robles.

In the state of California the native oak trees are protected under conservation act where developers or even homeowners cannot randomly cut down an oak tree without severe penalty or consequences.

There was a major housing development that was before the city's planning commission and every oak tree was to be documented for conservation purposes. *Pacific Horticulture* had approval from the city of Paso Robles to perform this type of work as a third party certified arborist with no political ties to either the city or the developer.

The owner of the company, Don Rodriguez, had contacted me prior to my move to see if I would head up the project for him. I agreed and work was to commence in September of 2005. September came and the development was placed on hold due to a decision made by the city council. Needless to say the project is presently still on hold.

Both my fiancé and myself found had to quickly find resolution to the situation. My fiancé placed his own company on hold and went back to work at a Venture Capital firm he had previously worked for in Los Angeles and I was in communication with everyone I possibly knew in the industry to try to make something happen. I contacted every newspaper, magazine publication in San Luis Obispo County looking for free-lance work aside from talking to Realtor Associations and passing out my business card at every nursery.

I was contacted by Lisa Oliver, an old client that was now establishing her own business, Star Manufactured Homes, based out of Camarillo California regarding my landscaping business. She had (in late September) over 35 homes sold and I was contacted to design and install all of the landscapes. The homes where being built and they would start coming into California beginning of November 2005 so my work would commence the second week of the month.

MILLS000126

Everything was on schedule but Mother Nature. Due to the serve rainy winter season we had (all the way up through April) the ground was so saturated with water the homes could not be brought to site.

In that duration, I began working with Layne Norcera, Managing Director of *CW Lenders*, whom I authorized to discuss with American Home Mortgage, my situation. He assured me that his company could assist the situation and he strung me along for two months about a bridge loan (as I am sure he did with you). He even went to the extent of opening up title insurance on the property and drawing up the contract. Then nothing. Absolutely nothing.

The first *Star Manufactured* home was delivered to site in March because the Arizona based company that constructed the homes could not hold the dwelling anymore. It was and set up in the month of March 2006 in Malibu (Point Dume Club) and I was to being and complete my work the last week of March. Due to the weather I ended up struggling through the month on March, April and May to complete the landscape because of the rainstorms. In that period of time I put over 2,800 miles on my truck to get the job done.

Presently now that the weather has changed with no more rainstorms the rest of the homes are coming off line and are being set into place as we speak. In addition to the original 35 homes she has sold 20 more that are slated for this year.

One relationship that I quickly developed in this area is with the Water Conservation Board in the County because we are liked minded when it comes to the environment. I just completed a design and installed a water-wise demonstration garden for teaching the public about how you can have a beautiful garden without wasting water. I was pleasantly surprised at the wonderful cover story that they are about to publish in their up-coming June Newsletter about the garden and my expertise. Already through the grapevine of my efforts with this project, I have secured a client in the area who has a 5-acre parcel to be landscape and work has already commenced as of last month.

My fiancé, Anthony Esquivel, has also made tremendous efforts rectify this horrible situation we are in. Even though he is not on title, this is his home too and he is working bell-to-bell to see we get through this. We were to be wed in March of this year. Due do these intricate circumstances; of course, it has been postponed, because the utmost importance to us is our home.

Aside from all of this, my mother (who is alone now) was diagnosed with Meniere's disease. Granted it is not life treating but it is life altering, where we had to make some changes in order to accommodate the situation.

I have never been in this type of situation where it seems everything that could go wrong did go wrong. It's not only embarrassing to me but it also goes against

MILLS000127

everything I stand for. But a breakthrough has been made and there is light at the end of the tunnel. With any situation, with a down there is always an up and it is my-hopes that you recognize that this perplexing situation has come to a close you can assist me with keeping my home.

Sincerely,


Deborah Mills

MILLS000128

# EXHIBIT

# M

**Deborah Mills**
**Plant Health Care Consultant/Landscape Designer**
**1880 Burnt Rock Way**
**Templeton, CA 93465**

VIA FAX

ATTN: Carol Oats

AHM Loan # ~~████████████~~

June 5, 2006

Dear Carol,

This letter shall serve as my request to postpone the sale of my home scheduled on June 7, 2006 per our conversation this afternoon regarding my situation. I want to emphasize that the money is there and in the works.

To follow in this facsimile is a letter from a hard moneylender to show that the money shall be guaranteed and paid to American Home Mortgage plus an e-mail correspondence from by fiancé's business associate also backing our endeavors.

In our conversation I clearly stated that I have family members rallying to our cause and shall assist with our situation but this is a confirmation that the transaction shall occur with or without them and all avenues are being pursued.

The total amount of monies ($47,500.00) shall be paid as requested by Amanda Ellsworth in our prior discussions as of last week in order to postpone the sale of my home.

Sincerely,

Deborah Mills

PS I shall call you upon transmission of this fax.

4 pages total

EXHIBIT 67
Deponent Deborah Mills
Date 10/19/10

MILLS000119

# *Market Place Properties LOC/B&B Investments*

June 1, 2006

### LOAN COMMITMENT
Owner occupied Transaction

Borrower (s) Company name TBD with Personal Guarantee of
Miss Deborah Mills

Subject Property: 1880 Burnt Rock Way, Templeton C, 93465

Loan Purpose: Short term private, owner occupied

| | |
|---|---|
| Loan Amount: | $ 48,000 TBD... |
| Interest Rate: | 12.5% |
| Term: | 6 months |
| Points: | 10 |
| Pre-payment: | 90 Days |
| Lien Position: | 3rd mortgage postion |
| Doc Prep Fee: | $ 1,500 (Need check prior to drawing documents) |
| Closing costs: | Included in Loan Amount |

Name of Lender: Market Place Properties LLC or its assignees

Pre-paid Interest: From closing through 90 days
Included in loan amount

Date offer expires: 06/07/06
Acceptance of this loan contigent upon: Final property review and satisfactory review by lender of the following:

1) Borrowers acceptance of loan terms and conditions;
2) Borrower to provide the following Information
3) Proof of purchase price contract / Note
4) Borrower proof of income, tax returns, years
5) Satisfactory title report
6) Complete application and credit report provided by borrower/ broker

Market Place Properties/B&B
Sidnie Herrera
Office fax 951-346-3570

MILLS 000488

# EXHIBIT

# N

JUN-06-2006 12:41 PM    Deborah Mills                    8852   2432                    P.81

**Deborah Mills**
**Plant Health Care Consultant/Landscape Designer**
**1880 Burnt Rock Way**
**Templeton, CA 93465**

**VIA FAX**

ATTN: Carol Oats

AHM Loan #

June 6, 2006

Dear Carol,

Per our conversation this morning it is our understanding the postponement of the sale of our home (1880 Burnt Rock Way, Templeton, CA 93465 re: loan number above) on June 7th, 2006 shall be put in place contingent on verification of funds being transferred to Anthony Esquivel which shall afford us another 10 business days to fully reinstate both loans with AHM in the total amount of $67,141.00 (sixty-seven thousand, one hundred and forty one dollars).

This letter serves the purpose that the above funds will be used to reinstate our loan and relationship with American Home Mortgage.

Thank you in advance.

Sincerely,

Deborah Mills & Anthony Esquivel

Attachment: Letter from First Fidelity Investments

Total pages 2

EXHIBIT 68
Deborah Mills
Deponent
10/19/10    Rptr 63
WWW.DEPOBOOK.COM

AHM_MILLS000355

## First fidelity financial

### F a x   c o v e r   s h e e t

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

**TO: Mr. Anthony Mancivel**

**C/O**

**Fax Number: 1-808-019-9498**

**From:**

Date: 06-06-2001

**RE: Account Information**

**No. Pages: 1**    **Information per your request**

**Neal Zurock**

AHM_MILLS000356

JUN-06-2006 12:42 PM    Deborah Mills        8052452432        P.03
    01/01/1997  00:25  854452    SING BANK & TRUST        PAGE  02

## First Fidelity

Chesterfield Gardens P.O.Box 2114, Byden Shipion,BS20 1DJ,BD23 Volce/1XP 00-0461-5169-1212

Date: 08-08-2006

Anthony Esquivel
1880 Burent Rock Way
Templeton,CA 93466

Ref. Certificate Number: ██████

Dear Mr. Esquivel,
This letter will confirm that your request to liquidate seventy- five thousand ($75,000.00) from your $125,000.00
certificate of Deposit funds has been approved and a wire transfer of funds will be sent within the next five business
days. Please be informed that a 21% early withdrawal penalty will be accessed to your account.

Regards

AHM_MILLS000357

JUN-06-2006 12:42 PM Deborah Mills                    9052 2452                    P.04



TRANSMISSION VERIFICATION REPORT

```
                                    TIME  : 06/06/2006 12:19
                                    NAME  : THE UPS STORE 1651
                                    FAX   : 9052378721
                                    TEL   : 9052378727
                                    SER.# : 000J5J701389
```

```
DATE,TIME              06/06  12:18
FAX NO./NAME           18664974861
DURATION               00:00:37
PAGE(S)                03
RESULT                 OK
MODE                   STANDARD
                       ECM
```

AHM_MILLS000358

# EXHIBIT

# O

Deborah Mills
Plant Health Care Consultant/Landscape Designer
1880 Burnt Rock Way
Templeton, CA  93465

VIA FAX    *2nd Transmission*

ATTN: Amanda Ellsworth
Fax: 866-468-6891    *and; Carol Oaks*

AHM Loan #

June 15, 2006

Dear Amanda,

I spoke to Carl Oats this morning since she was the person who put in place our postponement on the sale of our home. In our discussion she requested that I fax you confirmation that the funds were being transferred.

Per the following letter you can see what happened. We are now placed in the situation that most likely the funds shall not hit our account until June 22 or June 23rd (pending on your approval the request shall be placed). In order that we can get the monies (via your wiring instructions) comfortably we would need until the 26th of this month.

Thank you for your consideration and if you could be so kind as to let me know ASAP at 805-302-7479 we shall get the ball in the works.

Sincerely,
Deborah Mills

2 pages total

*P.S. Carol have a wonderful vacation!*

A-π EXHIBIT: 69
Deponent *Deborah Mills*
Date 06/19/10 Rptr XL3
WWW.DEPOBOOK.COM

AHM_MILLS000343

01/01/1997    08:22    054452                                    SING BANK & TRUST

**First Fidelity**
Investments

*Having revised*
Chesterfield Gardens P.O.Box 2114, Sydon Shipton.SE26 4OJ,B023 Voice/TXP 05-0491-8160-1212

Date 15-06-2006

Anthony Esquivel
1880 Burnt Rock Way
Templeton, CA 93465

Ref. Certificate Number ▓▓▓▓▓▓

Dear Mr. Esquivel,

This letter shall confirm the events that have transpired in liquidating your seventy-five thousand ($75,000.00) from your $125,000.00 certificate of Deposit funds. The request was placed on the 07-06-2006 but due to the time change between London and the US the order was not expedited until 08-06-2006. The funds were to arrive no later than 14-06-2006.

It is unfortunate for me to inform you is what transpired is they had an incorrect account number for deposit, so as a direct result the funds were returned.

I am not positive where the error occurred but I take full responsibility in this matter since you have been a long-standing client and value your business. As a gesture of apology instead of the 21% early withdrawal penalty it will be assessed at only 20%.

Upon your approval we shall have to start the process over, which will take and additional five business days.

It is my deepest apology that this has transpired and I hope this has not caused you any inconvenience.

Regards

*Tat Todayasi*

AHM_MILLS000344

# EXHIBIT

# P

**Deborah Mills**
**Plant Health Care Consultant/Landscape Designer**
*1880 Burnt Rock Way*
*Templeton, CA  93465*

VIA FAX

ATTN: Cal-Western

June 22, 2006 4:30 P.M Pacific Standard Time

RE: Trustee Sale #

To Whom It May Concern:

As requested by Cal-Western, this shall serve as written request for *postponement of one week* for the above Trustee sale numbers.

Funds to cure the default will not be certainly available until June 30, 2006.

Please inform me of reception and confirmation of this request by telephone at the following numbers

Thank you in advance for your cooperation.

Kindest Regards,

Deborah Mills



MILLS000120

# EXHIBIT

# Q

Case 9:06-bk-10337-RR    Doc 12    Filed 07/25/06    Entered 07/25/06 12:46:01    Desc
Main Document    Page 1 of 4

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Marisol  Antonio          BAR ID: 221387<br>ROUTH CRABTREE OLSEN, P.S.<br>505 N. Tustin Ave., Suite 243<br>Santa Ana, CA  92705<br>Telephone # 714-277-4915      Fax # 714-277-4899<br>☐ Individual appearing without counsel<br>☒ Attorney for: | **FILED & ENTERED**<br><br>**JUL 25 2006**<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY knstG    DEPUTY CLERK |

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | CHAPTER:    7 |
|---|---|
| In re:<br>Deborah E Mills,<br><br>                                                   Debtor(s). | CASE NO.:    ND-06-10337RR<br>DATE:    July 25, 2006<br>TIME:    9:00 AM |
| Sandra McBeth<br><br>                                                   Trustee. | CTRM:    201<br>FLOOR:    2nd |

### ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (Real Property)
### (MOVANT: American Home Mortgage Acceptance Inc. )

1.    The Motion was:    ☐ Contested    ☒ Uncontested    ☐ Settled by stipulation

2.    The Motion affects the following real property (the "Property"):
       *Street Address:*        1880 Burnt Rock Way
       *Apartment/Suite No.:*
       *City, State, Zip Code:*    Templeton, CA

       Legal description or document recording number (including county of recording):

          APN 020-285-020

          ☒ See attached page.

3.    The Motion is granted under:    ☒ 11 U.S.C. § 362(d)(1)    ☒ 11 U.S.C. § 362(d)(2)    ☐ 11 U.S.C. § 362(d)(3)
       ☐ 11 U.S.C. § 362(d)(4)

4.    As to Movant, its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is:
       a.    ☒ Terminated as to Debtor(s) and Debtor's(s') bankruptcy estate.
       b.    ☐ Annulled retroactively to the date of the bankruptcy petition filing.
       c.    ☐ Modified or conditioned as set forth in Exhibit _____ to this Order.

5.    ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable
       non-bankruptcy law, but may not pursue any deficiency claim against the Debtor(s) or property of the estate except by filing a
       Proof of Claim pursuant to 11 U.S.C. § 501.

                                        *(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised October 2005

**F 4001-1O.RP**

Case 9:06-bk-10337-RR    Doc 12    Filed 07/25/06    Entered 07/25/06 12:46:01    Desc
Order on Motion for Relief from Stay (Real Property) - Page 2 of 4

| (SHORT TITLE) | | CHAPTER: 7 |
|---|---|---|
| In Re<br>Deborah E Mills | Debtor(s) | CASE NO:<br>10337RR    ND-06- |

6.    ☐ Movant shall not conduct a foreclosure sale before the following date (*specify*):

7.    ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Attachment to this Order.

8.    ☐ In chapter 13 cases, the trustee shall not make any further payments on account of Movant's secured claim after entry of this Order. The secured portion of Movant's claim is deemed withdrawn upon entry of this Order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant shall return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this Order.

9.    This Court further orders as follows:
      a.    ☒ This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.
      b.    ☒ The 10-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.
      c.    ☐ The provisions set forth in the Extraordinary Relief Attachment shall also apply (*attach Optional Form F 4001-10.ER*).
      d.    ☐ See attached continuation page for additional provisions.

Dated:    July 25, 2006

*Robin Riblet*

UNITED STATES BANKRUPTCY JUDGE

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

F 4001-10.RP

*Revised October 2005*

Case 9:06-bk-10337-RR    Doc 12    Filed 07/25/06    Entered 07/25/06 12:46:01    Desc
Order on Motion for Relief from Stay (Regular Form) - Page 3 of 4

| | | |
|---|---|---|
| In Re | | CHAPTER:   7 |
| (SHORT TITLE) | | |
| Deborah E Mills | | CASE  NO:    ND-06- |
| | Debtor(s) | 10337RR |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1, that an ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (in whole or in part) was entered on *(specify date)*:

July 25, 2006

Dated:    July 25, 2006

JON D. CERETTO
Clerk of the Bankruptcy Court

By:        *Kam Rust*

_____

*Deputy Clerk*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

F 4001-1O.RP

*Revised October 2005*

| In Re | (SHORT TITLE) | | CHAPTER: 7 | |
|-------|---------------|---|------------|---|
| Deborah E Mills | | Debtor(s) | CASE NO:<br>10337RR | ND 06-10337RR |

## SERVICE LIST

Marisol  Antonio
505 N. Tustin Ave., Suite 243
Santa Ana, CA 92705

Deborah E Mills
1880 Burnt Rock Way
Templeton, CA 93465

Vaughn C. Taus
1042 Pacific Street Suite D
San Luis Obispo, CA 93401

Sandra McBeth
2450 Professional Parkway
Santa Maria, CA 93455

United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

F 4001-10.RP

Revised October 2005

County                              of San Luis Obispo
                [Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
Parcel 95 of Parcel Map COAL 99-0229, in the County of San Luis
Obispo, State of California, according to map recorded April 19, 2002
in Book 56, Page 39 of Parcel Maps, and Certification of Correction
recorded February 10, 2004 as Instrument No. 2004-010437 of Official
Records, in the Office of the County Recorder of said County.

Parcel ID Number: 020-285-020                    which currently has the address of
1890 Burnt Rock Way                                                    [Street]
Templeton
("Property Address"):                            [City], California 93465    [Zip Code]

"A"

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Marisol Antonio      BAR ID: 221387<br>ROUTH CRABTREE OLSEN, P.S.<br>505 N. Tustin Ave., Suite 243<br>Santa Ana, CA 92705<br>Telephone # 714-277-4915      Fax # 714-277-4899<br>☐ Individual appearing without counsel<br>☒ Attorney for: | **FILED & ENTERED**<br><br>JUL 25 2006<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY krusic      DEPUTY CLERK |

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | | |
|---|---|---|
| In re:<br>Deborah E Mills, | CHAPTER:     7 | |
| Debtor(s). | CASE NO.:     ND-06-10337RR<br>DATE:      July 25, 2006<br>TIME:      9:00 AM | |
| Sandra McBeth | | |
| Trustee. | CTRM:     201<br>FLOOR:     2nd | |

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### UNDER 11 U.S.C. § 362 (Real Property)
### (MOVANT: American Home Mortgage Acceptance, Inc. )

1. The Motion was:      ☐ Contested      ☒ Uncontested      ☐ Settled by stipulation

2. The Motion affects the following real property (the "Property"):
   Street Address:     1880 Burnt Rock Way
   Apartment/Suite No.:
   City, State, Zip Code: Templeton, CA 93465

   Legal description or document recording number (including county of recording):

   APN: 020-285-020
   Recorded 8/9/05, Doc No 2005065864, San Luis Obispo County.

   ☒ See attached page.

3. The Motion is granted under:   ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3)
   ☐ 11 U.S.C. § 362(d)(4)

4. As to Movant, its successors, transferees and assigns ("Movant"), the stay of 11 U.S.C. § 362(a) is:
   a.   ☒ Terminated as to Debtor(s) and Debtor's(s') bankruptcy estate.
   b.   ☐ Annulled retroactively to the date of the bankruptcy petition filing.
   c.   ☐ Modified or conditioned as set forth in Exhibit _____ to this Order.

5. ☒ Movant may enforce its remedies to foreclose upon and obtain possession of the Property in accordance with applicable non-bankruptcy law, but may not pursue any deficiency claim against the Debtor(s) or property of the estate except by filing a Proof of Claim pursuant to 11 U.S.C. § 501.

      *(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**F 4001-1O.RP**

Revised October 2005

| In Re<br>Deborah E Mills | (SHORT TITLE) | Debtor(s) | CHAPTER:   7<br>CASE   NO:<br>10337RR | ND-06- |
|---|---|---|---|---|

6. ☐ Movant shall not conduct a foreclosure sale before the following date (*specify*):

7. ☐ The stay shall remain in effect subject to the terms and conditions set forth in the Adequate Protection Attachment to this Order.

8. ☐ In chapter 13 cases, the trustee shall not make any further payments on account of Movant's secured claim after entry of this Order. The secured portion of Movant's claim is deemed withdrawn upon entry of this Order without prejudice to Movant's right to file an amended unsecured claim for any deficiency. Absent a stipulation or order to the contrary, Movant shall return to the trustee any payments received from the trustee on account of Movant's secured claim after entry of this Order.

9. This Court further orders as follows:
   a.  ☒ This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.
   b.  ☒ The 10-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.
   c.  ☐ The provisions set forth in the Extraordinary Relief Attachment shall also apply (*attach Optional Form F 4001-1O.ER*).
   d.  ☐ See attached continuation page for additional provisions.

Dated:   July 25, 2006

*Robin Riblet*

UNITED STATES BANKRUPTCY JUDGE

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised October 2005

| In Re (SHORT TITLE) | | CHAPTER:    7 |
| Deborah E Mills | Debtor(s) | CASE   NO:   ND-06-<br>10337RR |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1, that an ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (in whole or in part) was entered on *(specify date)*:

July 25, 2006

Dated:    July 25, 2006

JON D. CERETTO
Clerk of the Bankruptcy Court

By:    *Kam Rust*

*Deputy Clerk*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

F 4001-1O.RP

Revised October 2005

Case 9:06-bk-10337-RR    Doc 13    Filed 07/25/06    Entered 07/25/06 12:47:59    Desc
Order on Motion for Relief from Stay (Real Property) - Page 4 of 4

| (SHORT TITLE) | | CHAPTER: 7 |
| In Re | Debtor(s) | CASE NO: |
| Deborah E Mills | | 10337RR |  ND-06-

## SERVICE LIST

Marisol Antonio
505 N. Tustin Ave., Suite 243
Santa Ana, CA 92705

Deborah E Mills
1880 Burnt Rock Way
Templeton, CA 93465

Vaughn C. Taus
1042 Pacific Street Suite D
San Luis Obispo, CA 93401

Sandra McBeth
2450 Professional Parkway
Santa Maria, CA 93455

United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

F 4001-10.RP

Revised October 2005

Parcel 95 of Parcel Map COAL 99-0229, in the County of San Luis Obispo, State of
California, according to map recorded April 19, 2002 in Book 56, Page 33 of Parcel
Maps, and Certification of Correction recorded February 10, 2004 as Instrument No.
2004-010417 of Official Records, in the Office of the County Recorder of said
County.

which has the address of
[Street],

1880 Burnt Rock Way
Templeton                                        [City], California  93465        [Zip Code] (herein "Property Address");

DOC #:33965                    APPL #:0300932900

"A"

# EXHIBIT

# R

ORIGINAL

1  **MICHAELSON, SUSI & MICHAELSON**          (SPACE BELOW FOR FILING STAMP ONLY)
   A Professional Corporation
2            ATTORNEYS AT LAW
   SEVEN WEST FIGUEROA STREET, SECOND FLOOR
3     SANTA BARBARA, CALIFORNIA 93101-3191
          Telephone: (805) 965-1011
4          Facsimile: (805) 965-7351
   Joseph M. Sholder, Bar No. 126347
5

6  Attorneys for Ernest Kuhn

7

FILED

AUG 2 7 2007

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

8                **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA, NORTHERN DIVISION**

10

11  In re                          )   BK No.   ND 06-10337-RR
                                    )
12  DEBORAH E. MILLS,               )   Adv. No. 06-01097
                                    )
13            Debtor.               )   Chapter 7
                                    )
14  ────────────────────────        )   STIPULATION FOR JUDGMENT OF
                                    )   NONDISCHARGEABILITY OF DEBT
15  ERNEST KUHN,                    )   AND MUTUAL GENERAL RELEASE;
              Plaintiff,            )   ORDER THEREON
16  vs.                             )
                                    )
17  DEBORAH E. MILLS,               )   No Hearing Set or Required
                                    )
18            Defendant.            )
                                    )
19                                  )
                                    )
20  ────────────────────────        )

21        This Stipulation by and between Plaintiff Ernest Kuhn and

22  Defendant Deborah E. Mills is made with reference to the

23  following facts:

24        1.   Defendant Deborah E. Mills, the Debtor herein,

25  commenced this bankruptcy case by filing a Voluntary Chapter 7

26  Petition on June 26, 2006.

27

28

                                 -1-

1    2.   On September 12, 2006, Plaintiff Ernest Kuhn filed

2  herein a Complaint for Nondischargeability of Debt Pursuant to

3  11 U.S.C. § 523(a)(2).

4    3.   On October 13, 2006, Defendant Deborah E. Mills filed

5  herein her Answer to Complaint for Nondischargeability of Debt.

6    4.   To avoid the additional costs and uncertainties of

7  litigation, the Plaintiff and Defendant desire to settle this

8  matter as more specifically set forth below.

9    NOW THEREFORE IT IS STIPULATED by and between Plaintiff

10  Ernest Kuhn and Defendant Deborah E. Mills as follows:

11    5.   That judgment be entered against Defendant Deborah E.

12  Mills in favor of Plaintiff Ernest Kuhn in the amount of

13  $7,200.00.  Said judgment shall be payable without interest at

14  the rate of $150.00 per month for the first year, $200.00 per

15  month for the second year, and $250.00 per month for the third

16  year, with monthly payments commencing August 15, 2007 and

17  continuing on the 15th day of each successive month until the

18  amount of $7,200.00 has been paid in full, provided, however,

19  that the Plaintiff will accept in full satisfaction of the

20  judgment $5,000.00, including any monthly payments made

21  pursuant to the judgment, if said $5,000.00 is paid on or

22  before August 15, 2008.  All payments should be made payable to

23  Ernest Kuhn and mailed to 301 No. Catalina Street, Ventura, CA

24  93001-2474

25    6.   The judgment against Defendant Deborah E. Mills in

26  favor of Plaintiff Ernest Kuhn referred to in the paragraph

27  immediately above is nondischargable and shall survive the

28  discharge received by Defendant in this bankruptcy case.

1          7.   Each party shall bear his/her own fees and expenses

2    and shall enter into the Mutual General Release set forth

3    below.

4                    <u>MUTUAL GENERAL RELEASE</u>

5          This Mutual General Release is made by and between the

6    Plaintiff and Debtor/Defendant pursuant to the foregoing

7    Stipulation.

8          The parties to this Mutual General Release desire to

9    finally and completely settle any and all claims which they may

10   have, each against the other, arising out of the disputes which

11   are the subject of the foregoing Stipulation, or otherwise as

12   set forth below:

13          a.   In consideration for the mutual promises

14   contained in the Stipulation, and except for the obligation

15   imposed on Debtor/Defendant by this Stipulation, Plaintiff does

16   for himself and for his predecessors, successors, heirs,

17   assigns, partners and agents, and for any and all persons

18   claiming through or under it, release, discharge and forever

19   acquit Debtor/Defendant from any and all claims, demands,

20   causes of action, obligations, rights and/or liabilities of any

21   nature, whether anticipated or unanticipated, known or unknown,

22   past or present, contingent or fixed, whether or not heretofore

23   or hereafter arising out of or relating to disputes which are

24   the subject of the foregoing stipulation or otherwise.

25          b.   Plaintiff and any and all persons or entities

26   claiming through or under him, acknowledge and agree that they

27   are familiar with the provisions of California Code of Civil

28   Procedures Section 1542 and hereby knowingly and intentionally

                          - 3 -

1  waive any and all protection which is or may be given by said

2  section with respect to its release of claims against

3  Debtor/Defendant.  Section 1542 of the California Code of Civil

4  Procedure reads as follows:

5       A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH A

6  PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

7  THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER

8  MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR

9       c.    In consideration for the mutual promises

10  contained in the foregoing Stipulation, Debtor/Defendant does

11  for herself and for her predecessors, successors, heirs,

12  assigns, partners and agents, and for any and all persons

13  claiming through or under him, release, discharge and forever

14  acquit Plaintiff from any and all claims, demands, causes of

15  action, obligations, rights and/or liabilities of any nature,

16  whether anticipated or unanticipated, known or unknown, past or

17  present, contingent or fixed, whether or not heretofore or

18  hereafter arising out of or relating to the aforementioned

19  dispute or otherwise.

20       d.    Debtor/Defendant and any and all persons or

21  entities claiming through or under her, acknowledge and agree

22  that they are familiar with the provisions of California Code

23  of Civil Procedures Section 1542 and hereby knowingly and

24  intentionally waive any and all protection which is or may be

25  given by said section with respect to their release of claims

26  against Plaintiff.  Section 1542 of the California Code of

27  Civil Procedure reads as follows:

28

-4-

1    A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH A

2    PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

3    THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER

4    MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

5        Dated:  8-12-07

6                              _Ernest Kuhn_____

7                              ERNEST KUHN
                              Plaintiff

8        Dated:  8-27-07       MICHAELSON, SUSI & MICHAELSON

9                              A Professional Corporation

10                             By: _____

11                             JAY L. MICHAELSON
                              Attorneys for Plaintiff

12

13       Dated:

14

15                             _____
                              DEBORAH E. MILLS

16                             Defendant

17       Dated:

18

19                             _____
                              VAUGHN C. TAUS
                              Attorney for Defendant

20

21                             **ORDER**

22   Based upon the stipulation of the parties and for good

23   cause shown,

24   IT IS SO ORDERED that the Stipulation for Judgment of

25   Nondischargeability of Debt be and it is hereby approved; and

26   it is further,

27   ORDERED that judgment be and it is hereby entered against

28   Defendant Deborah E. Mills in favor of Plaintiff Ernest Kuhn in

-5-

1          A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH A

2    PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT

3    THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER

4    MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

5        Dated: 8-12-07

6                                _____
                                 ERNEST KUHN
7                                Plaintiff

8        Dated: 8-22-07          MICHAELSON, SUSI & MICHAELSON
                                 A Professional Corporation
9

10                              By: _____
11                                  JAY L. MICHAELSON
                                    Attorneys for Plaintiff
12

13       Dated: 08/21/07

14                               _____
15                               DEBORAH E. MILLS
                                 Defendant
16

17       Dated: 8/21/07

18                               _____
19                               VAUGHN C. TAUS
                                 Attorney for Defendant

20

21                               ORDER

22          Based upon the stipulation of the parties and for good

23   cause shown,

24          IT IS SO ORDERED that the Stipulation for Judgment of

25   Nondischargeability of Debt be and it is hereby approved; and

26   it is further,

27          ORDERED that judgment be and it is hereby entered against

28   Defendant Deborah E. Mills in favor of Plaintiff Ernest Kuhn in

                                  -5-

1   the amount of $7,200.00.  Said judgment shall be payable

2   without interest at the rate of $150.00 per month for the first

3   year, $200.00 per month for the second year, and $250.00 per

4   month for the third year, with monthly payments commencing

5   August 15, 2007 and continuing on the 15th day of each

6   successive month until the amount of $7,200.00 has been paid in

7   full, provided, however, that the Plaintiff will accept in full

8   satisfaction of the judgment $5,000.00, including any monthly

9   payments made pursuant to the judgment, if said $5,000.00 is

10  paid on or before August 15, 2008.

11       Dated:

12                              _____
                                HONORABLE ROBIN L. RIBLET
13                              UNITED STATES BANKRUPTCY JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DECLARATION OF SERVICE</u>
(U.S. Bankruptcy Court, Central District, Local Rule 7004-1[b])


KIMBERLIE WAGEMANN-CORDERO, the undersigned, hereby declares:

Declarant is a citizen of the United States and is employed by the law firm of Michaelson, Susi & Michaelson, a Professional Corporation, Seven West Figueroa Street, Second Floor, Santa Barbara, CA  93101-3191.  Declarant is over the age of 18 years and not a party to the within action.  On the <u>27th</u> day of <u>August</u>, 2007, at the direction of JOSEPH M. SHOLDER of said firm and a Member of the Bar of the United States District Court for the Central District of California, I served the within:

STIPULATION FOR JUDGMENT OF NONDISCHARGEABILITY OF DEBT AND MUTUAL GENERAL RELEASE; ORDER THEREON

on the interested parties in this matter by (X) mailing, with postage thereon fully prepaid; ( ) personally delivering; ( ) sending via FAX transmission with confirmation of transmittal by Transmit Confirmation Report and follow-up telephone call to the individuals at the addresses and FAX numbers listed below; or ( ) sending via overnight carrier, a true copy thereof to said party at his or their known address, to wit:

Vaughn C. Taus, Esq.
1042 Pacific Street, Suite D
San Luis Obispo, CA  93401

Joseph L. Strohman, Esq.
1050 S. Kimball Road
Ventura, CA  93004

Executed at Santa Barbara, California, on the <u>27th</u> day of <u>August</u>, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

KIMBERLIE WAGEMANN-CORDERO, Declarant

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| In re | CHAPTER 7 |
|---|---|
| Deborah E. Mills, | |
| Debtor. | CASE NUMBER: ND 06-10337-RR |

## NOTICE OF ENTRY OF JUDGMENT OR ORDER
## AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1. You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*:

   STIPULATION FOR JUDGMENT OF NONDISCHARGEABILITY OF DEBT AND MUTUAL GENERAL RELEASE; ORDER THEREON

   was entered on *(specify date)*:

2. I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on (specify date):

Dated:

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
    **Deputy Clerk**

*Rev. 1/01* This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1**

## SERVICE LIST

Joseph M. Sholder, Esq.
Michaelson, Susi & Michaelson
7 West Figueroa Street, 2nd Floor
Santa Barbara, CA  93101


Vaughn C. Taus, Esq.
1042 Pacific Street, Suite D
San Luis Obispo, CA  93401


Joseph L. Strohman, Esq.
1050 S. Kimball Road
Ventura, CA  93004

# EXHIBIT

# S

## Trula Jones

**From:**   vaughn taus [tauslawyer@yahoo.com]
**Sent:**   Wednesday, August 09, 2006 2:00 PM
**To:**   Trula Jones
**Subject:** Deborah Mills foreclosure

Dear Ms. Jones:

I explained on the telephone that my client now has some funds available and is expected to have significant additional funds available in the immediate future.  In order to remain in ownership of the home, my clients offer payment of one month of principal and interest on both the first and second deed of trust, to be made by way of cashier's check or mortgage to be received by your company tomorrow. For that payment my client seeks a delay in both foreclosure sales for a period of one week.  Before the end of that week, my client will make a second payment equalling  another month's payment of the promissory notes secured by both the first and second deed of trust.  For this second payment they seek an extension of the foreclosure sale for a period of an additional two weeks.  At that point, my clients believe they will be able to make and additional payment of two or three months of mortgage payments and propose a final date to pay off the entire balance of the arrearage.

Since my client has to arrange for a cashier's check or wire payment, I would like a response to this proposal as soon as possible.

Thank you for your consideration.

Yours truly,

Vaughn Taus

Talk is cheap. Use Yahoo! Messenger to make PC-to-Phone calls. Great rates starting at 1¢/min.

8/9/2006

AHM_MILLS000305

# EXHIBIT

# T

# PERSONAL PROPERTY AGREEMENT & RELEASE

The Undersigned acknowledge that when the Undersigned was locked out of the premises located at 1880 Burnt Rock Way, Templeton, CA 93465 ("Premises"), personal property remained on the Premises. In exchange for a waiver of storage charges, the Undersigned:

1.  Agrees to remove all personal property from the Premises the Undersigned wishes to remove by 5:00 p.m. on 4/01/07 with reasonable access to be arranged through Terry Miles (Phone Number (805) 466-5561), agent for unknown ("American Home Mortgage Servicing"). Such access does not constitute authorization to re-enter for purpose of occupancy. This agreement does not constitute a tenancy of any type. The right to have reasonable access to the Premises in order to remove personal property expires at 5:01 p.m. PST on 4/01/07 and thereafter the Undersigned is a trespasser.

2.  Transfers all right, title, and interest in and to any personal property remaining on the Premises at 5:01 p.m. PST on 4/01/07 to , and agrees neither unknown nor any of its agents are responsible for protection of said personal property while on the Premises prior to removal by the Undersigned, and further understands and agrees that after 5:01 p.m. on 4/01/07 will dispose of the remaining personal property in a manner and at a time to be chosen solely in the discretion of , including, but not limited to, throwing it away or donating it, and that such disposition of the remaining personal property will be done without any notice, whether actual, constructive, or implied, to the Undersigned.

3.  Releases , and their agents, employees, directors, officers, assigns, successors, and their successors and predecessors in interest to the Premises from any and all claims, obligations, and causes of action, known and unknown, the undersigned and the undersigned's agents, successors, and assigns possesses or may possess against , and their agents, employees, directors, officers, assigns, successors, and their successors and predecessors in interest to the Premises existing at the signing of this Agreement or which arise or may arise from this Agreement. In addition, the Undersigned waive the provisions of *Civil Code* § 1542, which provides:

    "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him would have materially affected his settlement with the debtor." (*Civil Code* § 1542).

4.  Represents and warrants that the Undersigned is the owner of any remaining items of personal property on the Premises, or otherwise has the authority to enter into this Agreement regarding the abandonment, release, and/or transfer of right, title, and interest pertaining to those remaining items of personal property.

5.  As used in this Agreement, the singular includes the plural and the masculine gender includes the feminine.

Date: 03/15/07

Personal Property Agreement & Release – Loan No. 1000928512 (J&A No. AHCA002X)

CONFIDENTIAL

AHMSI 000026

# EXHIBIT

# U

Apr. 2. 2007 7:27PM    SANTA LUCIA PROP 8054660474                No.1681   P. 2

# ANTHONY ESQUIVEL AND DEBORAH MILLS
## 1880 BURNT ROCK WAY TEMPLETON, CA 93465

**VIA FAX**

RE: Removal of possessions from property ID # 1000928512

To Whom It May Concern:

Unfortunately due to unforeseen circumstances beyond our control we will not have the capacity for removing the personal property at 1880 Burnt Rock Way, Templeton, CA 93465 on April 1, 2007 as agreed upon.

As of March 31, 2007, we have not received a written confirmation from United Freight Lines stating that they will in fact arrive at the property and remove the possessions. They have already delayed once and have not returned our phone calls.

We feel another moving company is needed. We are doing everything possible to find a mover under such short notice though it does not seem likely.

Are intent is to remove our possessions. However, we respectfully ask for your further consideration in allowing removal of our possessions in an orderly manner by extending the period to April 20, 2007, though perhaps sooner. In addition, we are concurrently in the process of finalizing our new residence and it is expected to conclude within two weeks.

Without our possessions would only serve to cause a severe hardship on our family. We submit a new signed Personal Property Agreement.

Thank you,

*[signature: Deborah Mills]*

*[signature: Esquivel]*



1‑53

5‑1

PHONE: 805 250 2498 • FAX: 821 860 1560

CONFIDENTIAL

AHMSI 000029

# PERSONAL PROPERTY AGREEMENT & RELEASE

The Undersigned acknowledge that when the Undersigned was locked out of the premises located at 7890 Burnt Rock Way, Templeton, CA 93465 ("Premises"), personal property remained on the Premises. In exchange for a waiver of storage charges, the Undersigned:

1. Agrees to remove all personal property from the Premises the Undersigned wishes to remove by 5:00 p.m. on _____ with reasonable access to be arranged through Terry Miles (Phone Number (805) 466-5561), agent for unknown ("American Home Mortgage Servicing"). Such access does not constitute authorization to re-enter for purpose of occupancy. This agreement does not constitute a tenancy of any type. The right to have reasonable access to the Premises in order to remove personal property expires at 5:01 p.m. PST on _____ and thereafter the Undersigned is a trespasser.

2. Transfers all right, title, and interest in and to any personal property remaining on the Premises at 5:01 p.m. PST on _____ to , and agrees neither unknown nor any of its agents are responsible for protection of said personal property while on the Premises prior to removal by the Undersigned, and further understands and agrees that after 5:01 p.m. on _____ will dispose of the remaining personal property in a manner and at a time to be chosen solely in the discretion of , including, but not limited to, throwing it away or donating it, and that such disposition of the remaining personal property will be done without any notice, whether actual, constructive, or implied, to the Undersigned.

3. Releases , and their agents, employees, directors, officers, assigns, successors, and their successors and predecessors in interest to the Premises from any and all claims, obligations, and causes of action, known and unknown, the undersigned and the undersigned's agents, successors, and assigns possesses or may possess against , and their agents, employees, directors, officers, assigns, successors, and their successors and predecessors in interest to the Premises existing at the signing of this Agreement or which arise or may arise from this Agreement. In addition, the Undersigned waive the provisions of *Civil Code* § 1542, which provides:

   "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him would have materially affected his settlement with the debtor." (*Civil Code* § 1542).

4. Represents and warrants that the Undersigned is the owner of any remaining items of personal property on the Premises, or otherwise has the authority to enter into this Agreement regarding the abandonment, release, and/or transfer of right, title, and interest pertaining to those remaining items of personal property.

5. As used in this Agreement, the singular includes the plural and the masculine gender includes the feminine.

   Date: _____

   3/31/07

Personal Property Agreement & Release – Loan No. 1000328512 (J&A No. AHCA002X)

CONFIDENTIAL

AHMSI_000030

5-2



5-3

CONFIDENTIAL

AHMSI 000031

# EXHIBIT

# V

# ALTERNATIVE
## Notice of Right to Reclaim Abandoned Personal Property

TO:   ANTHONY ESQUIVEL
AND/OR ALL OCCUPANTS
1880 Burnt Rock Way
Templeton, CA  93465

THIS IS AN ALTERNATIVE NOTICE.  YOU HAVE TRANSFERRED ALL REMAINING PERSONAL PROPERTY TO AMERICAN HOME PURSUANT TO A PERSONAL PROPERTY SURRENDER AGREEMENT AND RELEASE.  IF THAT RELEASE IS INVALID FOR ANY REASON, THEN THE TERMS OF NOTICE PREVAIL.  THIS NOTICE IS AN ALTERNATIVE NOTICE. IT DOES NOT WAIVE, ALTER OR AMEND ANY OF THE PROVISIONS OF THE PRIOR SIGNED RELEASE.

When you were locked out of the Premises located at 1880 Burnt Rock Way, Templeton, CA 93465 ("Premises") the following personal property remained:

*Entertainment center, small table, ladder, plants, clothes, roof tiles, boxes containing miscellaneous items, miscellaneous debris and trash.*

You may claim this personal property at 1880 Burnt Rock Way, Templeton, CA 93465 by contacting Terry Miles at (805) 466-5561.  AMERICAN HOME MORTGAGE SERVICING ("American Home"), its agents, and its assigns assume no liability for these items.

Unless you pay the reasonable cost of storage for all the above-described personal property, and take possession of the personal property you claim no later than 06/04/2007, this personal property may be disposed of pursuant to *Civil Code* § 1988.

Any motor vehicles listed on this Notice will be disposed of pursuant to the California Motor Vehicle Code for abandoned vehicles.  They are subject to immediate towing and storage.  If not on the property, their location can be obtained from Terry Miles at (805) 466-5561.

Because the above-described personal property is believed to be worth less than $300.00, it may be kept, sold, or destroyed without further notice if you fail to reclaim it within the time period indicated above.

Dated: 5/1?/2007

Jackson & Associates, Inc.

By:       _____
ROBERT E. JACKSON
Attorney for American Home
AHCA092X

# EXHIBIT

# W





CALIFORNIA
ASSOCIATION
OF REALTORS®

**RESIDENTIAL LISTING AGREEMENT**
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 4/06)

1. **EXCLUSIVE RIGHT TO SELL:** ___American Home Mortgage___ ("Seller")
hereby employs and grants ___Terry Miles Broker___ ("Broker")
beginning (date) ___March 27, 2007___ and ending at 11:59 P.M. on (date) ___June 30, 2007___ ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property in the City of ___Templeton___,
County of ___San Luis Obispo___, Assessor's Parcel No. ___020-285-020___,
California, described as: ___1880 Point Rock Way___ ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that
are attached to the Property are included, and personal property items are excluded, from the purchase price.
ADDITIONAL ITEMS EXCLUDED: _____
ADDITIONAL ITEMS INCLUDED: ___Built-in appliances; light fixtures___
Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase
agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the
sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase
agreement.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: ___One Million Four Hundred Forty-Three Thousand___
Dollars ($ ___1,443,000.00___ ).
   B. Additional Terms: ___Buyers to be pre-qualified with American Home Mortgage prior to offer___
___being negotiated.___

4. **COMPENSATION TO BROKER:**
Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker
individually and may be negotiable between Seller and Broker (real estate commissions include all
compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☐ ___4.000___ percent
of the listing price (or, if a purchase agreement is entered into, of the purchase price), or ☐ $ _____, as follows:
AND
      (1) If during the Listing Period, or any extension, Broker, Seller, cooperating broker, or any other person procures a buyer(s)
who offers to purchase the Property on the above price and terms, or on any price and terms acceptable to Seller. (Broker
is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing
Period.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension, Seller enters into a contract to sell, convey, lease or otherwise transfer the
Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the
Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any
cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the
Property. Seller, however, shall have no obligation to Broker under paragraph 4A(2) unless, not later than 3 calendar days
after the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of
such Prospective Buyers.
   OR (3) If, during the Listing Period or any extension, without Broker's prior written consent, Seller cancels this Agreement,
withdraws the Property from sale or makes it unmarketable, or the Property is conveyed, leased, rented or otherwise
transferred.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation due under paragraph 4A
shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount
equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow
expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS"):
         (i) by offering MLS brokers: either ☐ _____ percent of the purchase price, or ☐ $ _____.
         OR (ii) (if checked) ☐ as per Broker's policy.
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may
submit this Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property
involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property,
unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the
Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is
not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized
reproduction of this form, or any portion thereof, by photocopy machine or any other
means, including facsimile or computerized formats. Copyright © 1991-2006,
CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller acknowledges receipt of a copy of this page.
Seller's Initials ( X ) ( )
Reviewed by _____ Date _____

RLA REVISED 4/06 (PAGE 1 OF 3)
**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 3)**

Agent: Terry Miles  •  Phone: (805)4668300  Fax: (805)  Prepared using WINForms® software
Broker: Santa Lucia Properties-Miles  7401 El Camino Real  ,  Atascadero  CA 93422

AHM_MILLS020706
AHM_MILLS020706

Confidential

Property Address: *1880 Burnt Rock 1. Templeton, CA  93465*                                                Date: *March 27, 2007*

5. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:

6. **MULTIPLE LISTING SERVICE:** All terms of the transaction, including financing, if applicable, will be provided to the selected MLS for publication, dissemination and use by persons and entities on terms approved by the MLS. Seller authorizes Broker to comply with all applicable MLS rules. MLS rules allow MLS data to be made available by the MLS to additional internet sites unless Broker gives the MLS instructions to the contrary. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 48 hours or some other period of time after all necessary signatures have been obtained on the listing agreement. However, Broker will not have to submit this listing to the MLS. If, within that time, Broker submits to the MLS a form signed by Seller (C.A.R. Form SEL or the locally required form) instructing Broker to withhold the listing from the MLS. Information about this listing will be provided to the MLS of Broker's selection unless a form instructing Broker to withhold the listing from the MLS is attached to this listing Agreement.

7. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

8. **BROKER'S AND SELLER'S DUTIES:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized to order reports and disclosures as appropriate or necessary and advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney fees arising from any incorrect information supplied by Seller, or from any material facts that Seller knows but fails to disclose.

9. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

10. **AGENCY RELATIONSHIPS:**
    A. **Disclosure:** If the Property includes residential property with one-to-four dwelling units, Seller shall receive a "Disclosure Regarding Agency Relationships" form prior to entering into this Agreement.
    B. **Seller Representation:** Broker shall represent Seller in any resulting transaction, except as specified in paragraph 4F.
    C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and such Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
    D. **Other Sellers:** Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement.
    E. **Confirmation:** If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.

11. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox.

13. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. **ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.

16. **ADDITIONAL TERMS:** *Property is being sold in "AS IS" condition*

---

Seller acknowledges receipt of a copy of this page.
Seller's Initials ( X ) ( )
Reviewed by _____ Date _____

Copyright © 1991-2006, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
RLA REVISED 4/06 (PAGE 2 OF 3)

RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 3)

American Home

Property Address: <u>Templeton, CA 93465</u>                          Date: <u>March 27, 2007</u>
<u>1880 Burnt Rock ,</u>

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within 5 Days After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. **DISPUTE RESOLUTION:**
   A. **MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action, subject to paragraph 19B(2) below. Paragraph 19B(2) below applies whether or not the arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available, to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
   B. **ARBITRATION OF DISPUTES:** (1) Seller and Broker agree that any dispute or claim in law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraph 19B(2) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California law. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered in any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.
   (2) **EXCLUSIONS FROM MEDIATION AND ARBITRATION:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage, or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims, or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.
   "**NOTICE:** BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."
   "WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

   Seller's Initials _____ / _____        Broker's Initials _____ / _____

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller X _____ <u>American Home Mortgage</u> _____ Date _____
Address <u>1600 Regent Blvd Suite 200</u> _____ City <u>Irving</u> _____ State <u>TX</u> Zip <u>75063</u>
Telephone _____ Fax <u>(866)330-1039</u> _____ E-mail <u>Reandrea.Tilli@americanhm.com</u>

Seller _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

Real Estate Broker (Firm) _____ <u>Terry Miles Broker</u> _____ DRE Lic. # <u>00945439</u>
By (Agent) _____ <u>Terry Miles</u> DRE Lic. # <u>00945439</u> _____ Date <u>March 27, 2007</u>
Address <u>7401 El Camino Real</u> _____ City <u>Atascadero</u> _____ State <u>CA</u> Zip <u>93422</u>
Telephone <u>(805)466-5561</u> _____ Fax <u>(805)466-0474</u> _____ E-mail <u>terry@santaluciaproperties.com</u>

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SURE      Reviewed by _____ Date _____

RLA REVISED 4/06 (PAGE 3 OF 3)                          American Home

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 3)**

AHM_MILLS020708
AHM_MILLS020708



CALIFORNIA
ASSOCIATION
OF REALTORS©

**Seller's Advisory**

(C.A.R. Form SA, Revised 10/01)

("Property")

Property Address: _1880 Burnt Rock Way, Templeton, CA 93465_ . .

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If the Property you are selling is a residence with one to four units, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete). The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets titled "The Homeowners Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet on lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act.
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Mello-Roos disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have a 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements. However, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death. However, California Civil Code Section 1710.2 provides that _you have no disclosure duty_ for, (regardless of the date of occurrence) that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowners' association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2001, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Seller acknowledges receipt of copy of this page.

Seller's Initials ( X ) (_____)

| Reviewed by | |
|---|---|
| Broker or Designee _____ | Date _____ |

SA-11 REVISED 10/01 (PAGE 1 OF 2)

**SELLER'S ADVISORY (SA-11 PAGE 1 OF 2)**

| Agent: Terry Miles | Phone:(805)4668300 | Fax: (805) | Prepared using WINForms® software |
|---|---|---|---|
| Broker: Santa Lucia Properties-Miles  7401 El Camino Real | | , Atascadero      CA 93422 | |

AHM_MILLS020709
AHM_MILLS020709

Date: _March 27, 2007_

Property Address: _1880 Burnt Rock Way, 2   Igton  CA  93465_

## 3. CONTRACT TERMS AND LEGAL REQUIREMENTS:

A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.

C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.

D. **Government Retrofit Standards:** Unless exempt, you must comply with government retrofit standards, including, but not limited to, installing operable smoke detectors, bracing water heaters, and providing the buyer with corresponding statements of compliance. Some city and county governments may impose additional retrofit standards, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine the retrofit standards for your Property, the extent to which your Property complies with such standards, and the costs, if any, of compliance.

E. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

## 4. MARKETING CONSIDERATIONS:

A. **Pre-Sale Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems. Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional home inspections prior to sale, both generally, and for wood destroying pests and organisms, such as termites. By doing this, you then have an opportunity to make repairs before your Property is offered for sale, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a pest control report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.

B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.

C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video-tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property against injury, theft, loss, vandalism, damage, and other harm.

D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

## 5. OTHER ITEMS: _____

_____
_____
_____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller X _____  Date _____

Print Name _American Home Mortgage_

Seller _____  Date _____

Print Name _____

Real Estate Broker _Terry Miles Broker_ .    By _(signature)_
                                             (Agent) _Terry Miles_

Address _7401 El Camino Real_    City _Atascadero_    State _CA_  Zip _93422_

Telephone _(805)466-5561_    Fax _(805)466-0474_    E-mail _terry@santaluciaproperties.com_

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____  Date _____

American Home

SA-11 REVISED 10/01 (PAGE 2 OF 2)      SELLER'S ADVISORY (SA-11 PAGE 2 OF 2)

AHM_MILLS020710
AHM_MILLS020710

Confidential

 **American Home Mortgage Servicing**

Effective the date signed below, this REO Marketing Agreement (the "Agreement") is entered into by and between American Home Mortgage Servicing, Inc. ("AHM"), on the one hand, and Terry Miles Broker ("Broker"), on the other hand. Upon execution of this Agreement, AHM, at its sole option, agrees to assign the marketing duties for certain real property ("Property") owned by AHM and/or its investors to Broker in the manner described herein. Broker agrees to faithfully perform the duties described herein.

### I.
### PRE-MARKETING

A.  <u>Notification of Assignment</u>. AHM shall notify Broker of Broker's assignment to market a Property on behalf of AHM. Said notification may be made telephonically by AHM's REO coordinator. Included in the notification of assignment, AHM will provide information (i) identifying the AHM REO Manager responsible for the Property ("REO Manager") and (ii) relating to the Property, including foreclosure status, to the best of AHM's knowledge. If the initial assignment was made telephonically, AHM will confirm such assignment by letter sent to Broker and provide written authorization for Broker to market the Property pursuant to the terms of this agreement.

B.  <u>Taking Possession of Property</u>. Within 3 business days after the later of (i) the conclusion of a foreclosure sale and (ii) receipt of notification of assignment, Broker shall take all prudent steps, described herein, to ascertain the occupancy status of the Property by physically inspecting the Property. Broker shall approach occupant, if any, and ask occupant's intentions with respect to possession of the Property. If necessary, Broker shall provide occupant with a copy of the AHM authorization letter. Broker shall attempt to identify whether occupant is the former mortgagor, a tenant, or unknown. Broker is instructed to act politely and, additionally, to comply with the provisions of the Fair Debt Collection Act. Broker shall report occupancy status, as well as observed structural, repair, vandalism, or neighborhood concerns, to AHM's REO Manager assigned to the Property. Broker shall also report on any other conditions or issues requested by the REO Manager.

    a.  <u>Property Occupied</u>. Broker shall utilize the following procedures in the event that Broker determines that the Property is occupied:

        i.  <u>Re-Possession Procedures</u>. After advising the REO Manager of the occupancy status of the Property, Broker shall discuss with REO Manager AHM's eviction and/or "cash for keys" procedures. Broker shall obtain the REO Manager's instructions concerning such procedures and implement same. Broker shall refer to occupant move-out and release form in the AHM Broker package.

        ii.  <u>Drive-By Inspections</u>. Broker shall drive by the Property as often as possible, in any event not less than once per week (absent authorization from the REO Manager for less-frequent visits), and inform the REO Manager immediately if Property appears to have become vacant or if any unusual occurrences or hazards (Fire, theft, etc.,) are observed.

        iii.  <u>Broker's Price Opinion</u>. Broker shall complete a Broker's Price Opinion ("BPO") package in accordance with subsection C below.

        iv.  <u>Property Vacated</u>. Once Property is vacated by all occupants, Broker shall follow the procedures defined in subsection B below.

**EXHIBIT 13**

Licensed Or Authorized Mortgage Lender Throughout The Fifty States And The District of Columbia
An American Home Mortgage Investment Corp. Company
New York Stock Exchange Listing Symbol - AHM

AHM_MILLS020599
AHM_MILLS020699

Confidential

 **American Home Mortgage Servicing**

b. Property Vacant.

i. Taking Possession. Broker will notify AHM immediately of vacancy. AHM will order REO services, including security through its field asset services company. Broker will oversee the securing and initial services process; ensuring timely completion – within 72 hours. This process includes (i) rekey all external locks, including, where applicable, locks installed on outlying buildings and (ii) secure Property and, if necessary, prevent damages that could reasonably be expected to be incurred by weather factors (i.e. winterize). If Property is only partially vacant, (i.e. multi-unit properties), Broker shall request rekey of all locks securing vacant areas and otherwise secured such areas through AHM's field asset services company.

ii. Emergency Repairs. In the event of an emergency, Broker will immediately contact the AHM REO Manager and the AHM field services company. Should the AHM field services company, REO Manager, or other AHM personnel, fail to respond to Broker's request for authorization to commence emergency repairs within two (2) hours of such request, Broker is authorized to reasonably expend up to $2,500.00 for emergency repairs only. In addition to submitting billings in accordance with Section IV below, for all emergency repairs expensed, Broker must supply original photographs supporting the need for such expense with the billing.

iii. Personal Property. If Broker or his agent finds personal property, with an aggregate value estimated to be in excess of $300.00, that appears to be abandoned at the Property, Broker shall contact the REO Manager to determine the proper transfer or disposal of such personal property.

iv. Property Vandalized. If the Property has been damaged due to apparent vandalism or other criminal act, Broker shall (i) file a complaint with the appropriate law enforcement agency, (ii) make a record, including photographs, of the damage inflicted upon the Property, and (iii) obtain restoration bids from properly licensed, bonded, and insured contractors. Broker shall mail a copy of the filed complaint, along with original photographs and other information, to the REO Manager and to the Servicer (as identified by the REO Manager), who will file a hazard insurance claim, if appropriate. All repair bids should be mailed to the REO Manager – do not send any repair bids to the Servicer unless specifically requested by AHM.

v. Broker's Price Opinion. Broker shall complete a BPO package in accordance with subsection C below.

vi. Utilities. Immediately upon re-possession of the Property, Broker shall make all necessary arrangements to have the utilities (electricity, water, gas, etc.) activated. All utility accounts shall be opened in Broker's name.

vii. Additional Inspections. After having the utilities activated at the Property, Broker shall check all plumbing, heating, air conditioning, electrical, septic, well systems and the integrity of the roof, where possible. If any repairs are necessary during the marketing process, Broker shall submit to the REO Manager two (2) bids from contractor(s) who are licensed, bonded, and insured.

Licensed Or Authorized Mortgage Lender Throughout The Fifty States And The District of Columbia
An American Home Mortgage Investment Corp. Company
New York Stock Exchange Listing Symbol - AHM

Confidential

AHM_MILLS020700
AHM_MILLS020700

 **American Home Mortgage Servicing**

viii. Appraisals. AHM may retain the services of a qualified residential property appraiser ("Appraiser") to ascertain the current market value of the Property. Unless expressly authorized to do so in writing, Broker shall not provide an Appraiser with any marketing information or a copy of the Broker's Price Opinion under any circumstances. The Appraiser is solely responsible for (i) developing information relating to the Property and (ii) reaching an opinion of value for the Property.

ix. Internet Listings. Within five (5) business days after the submission of the initial BPO, Broker shall list the subject property on one or more major real estate listing internet home pages. The internet listing(s) shall contain a computerized, color photograph of the property and a detailed description of the home's key marketing features. If the REO Manager has not yet provided Broker with an initial listing price, the listing price shall be marked as "To be determined" or equivalent. Broker is responsible for updating and revising each internet listing as appropriate. Broker shall ensure that each property listing is hyperlinked to both the AHM and Loan Works home pages so that, among other things, the prospective purchaser will be directed to Loan Works for financing options. Broker should contact the REO Manager for more instructions, if necessary. Broker must comply with this requirement unless Broker has received written authorization from the REO Manager excusing Broker's performance.

C. BPO Procedures.

a. Timing. Within five (5) business days after receiving the Property assignment, Broker shall complete and mail to the REO Manager a typed Broker's Price Opinion ("BPO") package, with original photographs, interior (if available) and exterior, of the Property and contractor's repair bids, if necessary. As soon as practicable thereafter, the REO Manager shall send Broker written authorization or decline of the requested repairs.

b. Completed BPO. Broker shall complete all sections of the Broker's Price Opinion form. Broker shall also: (i) note any beneficial and/or adverse market conditions affecting the Property and (ii) recommend a proposed specific market strategy that the Broker, in Broker's considered opinion, believes will result in the most economic manner in which to sell the Property. Along with the typed, completed Broker Price Opinion form, Broker shall submit at least one photograph from each interior room (if vacant) and three photographs of the exterior of the Property. Photographs shall be mounted on a blank sheet of paper and labeled with descriptions indicating the condition of the Property and any observed damage or vandalism thereto.

II

MARKETING

A. Listing Agreement

a. Initial Listing. With the exception of listing price and listing dates left blank, Broker shall completely fill out the listing agreement provided to Broker by AHM. The REO Manager shall review the submitted listing agreement and, at AHM's sole discretion, the REO Manager shall execute the listing agreement and return same to Broker.

b. Listing Renewals. At least three (3) weeks prior to the expiration of a listing term, Broker shall submit an updated Broker's Price Opinion and Extension Agreement on a form provided by the REO Manager. Broker is not authorized to automatically renew any

Licensed Or Authorized Mortgage Lender Throughout The Fifty States And The District of Columbia
An American Home Mortgage Investment Corp. Company
New York Stock Exchange Listing Symbol - AHM

Confidential

AHM_MILLS020701
AHM_MILLS020701

 **American Home Mortgage Servicing**

listing agreement absent written authorization from AHM. Broker acknowledges that the decision to renew or extend a listing agreement is made in the sole and absolute discretion of AHM. Broker further acknowledges that AHM may consider the Broker's effectiveness marketing the Property, or other AHM properties, when deciding whether to renew or extend the listing agreement.

c. **Listing Disclosures/Advertising.** Broker shall ensure that the Property listing is disclosed in the Metro Listing Service ("MLS") and furnish AHM with the MLS listing information for the Property. If MLS is unavailable in Broker's local area, Broker shall notify the REO Manager of all equivalent local residential listing services and, if requested, disclose the Property listing to such services. In the event extensive repair of the Property is necessary and the REO Manager's concurrence is obtained, Broker shall defer listing the Property with MLS until such time as such repairs are completed. In addition to the foregoing, Broker shall purchase reasonable advertising of the Property and its listing.

d. **Repairs.** Broker shall ensure that any and all repair items approved by AHM are completed quickly and professionally. When the repair work is completed by the contractor(s), Broker shall inspect the completed project to ascertain whether all repairs were completed in a workmanlike manner.

   i. **Unsatisfactory Repairs.** If the repair work is not completed in a workmanlike manner, Broker shall provide contractor and AHM with a "punch list" of still-existing repair items. Broker shall confirm that all "punch list" repair items are completed by the contractor in a workmanlike manner. Once the repairs have been completed in a satisfactory manner, Broker shall perform all steps required by subsection (ii) below.

   ii. **Satisfactory Repairs.** If the repair work is completed in a workmanlike manner, Broker shall execute and date the authorized repair bid indicating that the work has been completed in a satisfactory manner. Broker shall immediately send the executed repair bid, complete with photographs of the completed work, to the REO Manager. Broker shall ensure that all contractors are licensed, bonded, and insured and that the contractor's social security number or tax identification number is included on the repair bid.

e. **Maintenance.** AHM employs a nationwide field services company. Broker will ensure properties are properly maintained. Home shall be maintained as follows:

   i. Yards are to be kept trimmed and watered;

   ii. Pool and spa must be secured and free of debris;

   iii. Pursuant to Section IV below, ongoing bills are to be presented monthly or within 30 days of close of escrow or expiration or termination of listing, whichever is sooner.

   iv. Broker shall not derive any economic benefit, directly or indirectly, from entering into service contracts with any vendors, including contractors, absent prior written approval of the REO Manager. Broker is required to disclose to AHM in writing any and all economic and familial relationships Broker has, or has ever had, with any vendor used by Broker.

Licensed Or Authorized Mortgage Lender Throughout The Fifty States And The District of Columbia
An American Home Mortgage Investment Corp. Company
New York Stock Exchange Listing Symbol– AHM

AHM_MILLS020702
AHM_MILLS020702

Confidential

 **American Home Mortgage Servicing**

    v. Broker has the sole responsibility for (i) paying vendors for services rendered, including utility bills, and (ii) requesting reimbursement from AHM pursuant to Section IV below.

f.  Reporting Requirements. On or before the 8th day of each month, Broker shall complete and submit to the REO Manager the AHM Status Report detailing the quantity and quality of potential buyers visiting the Property (i.e. traffic), the source of the traffic (Broker or Buyer's agent), Broker's marketing efforts (advertising, open houses, flyer, etc.), new listing and sales information in the relevant area, and any additional recommendations Broker believes will assist AHM in the marketing of the Property.

g.  Handling of Offers. Prior to the submission of any written offer to AHM, Broker shall obtain and review a report of the offeror's credit to determine whether the offeror pre-qualifies for extension of credit. Broker shall contact AHM's Direct to Consumer Group at 866-418-7300 / www.ahmhomes.com, to obtain such pre-qualification. Once the offeror is pre-qualified, Broker shall telecopy the offer (with notice of pre-qualification) to the REO Manager (Fax:    ). Upon receipt of the pre-qualified offer, AHM may, at its sole and absolute discretion.

    i.  Reject the offer;

    ii.  Execute and deliver to Broker a counteroffer with terms specified therein;

    iii.  Authorize the Broker to prepare a Purchase and Sale contract under the terms identified in the offer or counteroffer, where applicable;

h.  Purchase and Sale Contracts. All Purchase and Sale contracts are subject to AHM corporate approval and may only be executed by a corporate office of AHM. When submitting a Purchase and Sale contract, Broker must provide the REO Manager with:

    i.  A Purchase and Sale contract completed by Broker;

    ii.  An AHM "As-Is Property Addendum" completed by Broker;

    iii.  An AHM standard Counter Form (in the form attached hereto as Exhibit A)

    iv.  All counteroffers relating to the Property; and

    v.  A pro forma analysis of expected closing costs, including points, commissions, pest and any other closing costs applicable to the proposed sale.

i.  Acceptance of Offer. Upon receipt of the documents identified in subsection (h) above, AHM shall contact Broker with a verbal acceptance or denial of the proposed sale; if AHM has verbally accepted the proposed sale, Broker shall send originals of all documents identified in subsection (h) above by overnight delivery to the REO Manager. The REO Manager shall send the original signed documents by overnight delivery to Broker. AHM's Closing Coordinator shall then contact Broker with the name, address, and telephone number of the escrow/title officer or closing attorney responsible for completing the transaction. BROKER IS NOT AUTHORIZED TO EXECUTE ANY DOCUMENTS ON BEHALF OF AHM.

III.

Confidential

AHM_MILLS020703
AHM_MILLS020703

 **American Home Mortgage Servicing**

### Closing Procedures

A. <u>Initiation of Escrow.</u> Once Broker is notified of the escrow/title company or closing attorney to be used in the transaction, Broker shall telecopy a copy of the signed Purchase and Sale contract to the escrow agent/closing attorney to permit preparation of escrow instructions and other required closing documents. Within two (2) business days of receipt of the original, executed Purchase and Sale contract, Broker shall also deposit Buyer's earnest money, if any, with the local closer. Broker shall ensure that the earnest money deposit funds are honored by the buyer's bank. Upon clearance of the funds, Broker shall send a copy of the receipt to the Closing Coordinator.

B. <u>Broker's Closing Responsibilities.</u> In addition to the foregoing, Broker is solely responsible for the following:

    a. Obtaining loan approval confirmation

    b. Obtaining all required signatures from the parties;

    c. Facilitating a full appraisal of the Property;

    d. Obtaining valid title insurance;

    e. Ensuring that smoke detectors are operational at the Property;

    f. Facilitating Buyer's home inspection (septic, termite, roof, radon, etc.);

    g. Obtaining approval from the primary mortgage insurer, where applicable;

    h. Notifying the homeowner's association, where applicable, of the pending transfer of ownership; and

    i. Supervising completion of all required repairs prior to funding.

C. <u>Communication with Closing Coordinator.</u> Broker shall notify and keep apprised the Closing Coordinator when agreed-upon dates for contractual events (i.e. loan approval, inspection schedule, closing date, etc.) are not met. The Broker is responsible for strictly monitoring and controlling the closing process.

D. <u>Post-contractual Modifications.</u> Cancellations and any subsequent contractual modification requests should be addressed to the REO Manager, who shall instruct Broker on the proper response to such cancellation or request.

### IV.
### EXPENSE REIMBURSEMENT PROCEDURES

A. <u>Submission of Invoices.</u> Broker shall submit copies of invoices for which Broker requests reimbursement. All invoices must be submitted to AHM using the request for payment form attached hereto as Exhibit B. Expenses incurred without AHM approval will not be reimbursed by AHM and will be the sole responsibility of the Broker. With respect to repair work, Broker shall submit a copy of the bid authorized by AHM with Broker's request for payment. Broker shall submit reimbursement request to AHM on a monthly basis. Brokers should allow a minimum of thirty (30) days for processing of the payment/reimbursement.

Licensed Or Authorized Mortgage Lender Throughout The Fifty States And The District of Columbia.
An American Home Mortgage Investment Corp. Company
New York Stock Exchange Listing Symbol - AHM

AHM_MILLS020704
AHM_MILLS020704

Confidential

 **American Home Mortgage Servicing**

B. **Final Submission of Invoices.** Upon closing/settlement of the Property sale or expiration of the listing agreement ("End Date"), Broker shall submit, within five (5) business days, a final request for reimbursement of all expenses incurred but not yet claimed. AHM will not be responsible for payment of any services performed after the End Date. Utility service must be discontinued effective with the closing date that title is transferred. Final utility invoices should be submitted to AHM for reimbursement when received and will not be subject to the above five-day rule.

V.
### TERMINATION OF AGREEMENT

A. **Termination.** AHM hereby reserves the right to terminate this Agreement at any time, via telecopied written notice to Broker, with or without cause. In such an event, Broker shall submit a final reimbursement pursuant to Section IV (B) above.

B. **Judicial Intervention.** In the event of any lawsuits or other proceedings related to this Agreement, each of the Broker and AHM hereby: 1) waives its right to trial by jury, (2) consents to exclusive jurisdiction in the state and federal courts located in the County of Los Angeles, State of California, and (3) agrees that the prevailing party shall be entitled to recover from the non-prevailing party its reasonable attorneys' fees and costs.

If any term or provision of this document or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the other terms and provisions hereof shall not be affected thereby and such terms and provisions shall be valid and enforceable to the fullest extent permitted by law.

Executed this 31st day of March, 2007.

American Home Mortgage Servicing, Inc.

By: _____
Jane Larkin
Title:    Vice President – REO & Valuations

"BROKER"

By: _____
Terry Miles Broker

Licensed Or Authorized Mortgage Lender Throughout The Fifty States And The District of Columbia.
An American Home Mortgage Investment Corp. Company
New York Stock Exchange Listing Symbol – AHM

AHM_MILLS020705
AHM_MILLS020705

Confidential

# EXHIBIT

# X

 **i**

Anthony Esquivel <anthonius75@gmail.com>

## American Home Mortgage Forclosure Property Owners

Anthony Esquivel <anthonius75@gmail.com>                           Wed, Mar 7, 2007 at 4:45 PM
To: michael.strauss@americanhm.com, m.strauss@americanhm.com, mary.feder@americanhm.com

Anthony Esquivel And Deborah Mills
1880 Burnt rock way templeton, ca 93465
805-239-2432 310-525-3525



Michael Strauss
Chief Executive and Chairman
American Home Mortgage
Corporate Headquarters
538 Broadhollow Road
Melville, NY 11747

March 7, 2007

Dear Michael Strauss,

We wish to inform you directly in regards to the situation currently going on the property of 1880 Burnt Rock Way, Templeton, CA  93465 of which your company has foreclosed on. What we wish to inform you about is the conduct of your employees and agents, our prespective of the situation and how we feel that we have been wronged to a certain extent. We are specially requesting that the agents who are handling this property immediately suspend current procedures to allow us to voice our case.

We ask that you understand in advance, and respect, that we are perfectly clear and aware of being in foreclosure, evicted and the general procedures of foreclosure according to industry standards and law.

We also want it clear that we are grateful that your company financed our dream home and we are regretful that the relationship established with your company has deteriorated, due to unforeseen events, in our lives to such an extent as to where it now stands, but we sincerely give you our thanks for making it possible.

Our complaint is as follows:

Since December 2006 our financial situation finally turned around and we immediately tried to contact American Home Mortgage in order to initiate discussions to either enter escrow for buying the property back from you or have the loan reinstated or some such. Not one person at American Home Mortgage returned our numerous, relentless phone calls either to our attorney or us. Our attempt to get in discussions with American Home Mortgage continued into the early part of February. Then we were served an eviction notice. At that point your agents began accepting our phone calls and insisted that the protocol for buying back the property consisted of such and such steps. However, though complying with the procedures they continued with the eviction; so we left with dignity only two hours before the sheriff came with only the clothes on our back.

Now, they still will not allow us to buy back the property for reason that we must "pre qualify", which begs the question how can anyone qualify if they have just been foreclosed and reflected in credit? Even Mrs. Tillus told us that "we can try but it is not going to happen". Even though we have arranged private financing to buy back your paper, your company refuses in allowing us to buy it back.

We feel that once our situation was stabilized we made every reasonable attempt to work with American Home Mortgage and due to their lack of communication and stubbornness that we have been cheated out of any last

MILLS000356

right to save our home.

We also feel that, according to Bob Jackson, from Jackson and Associates (the law firm handling this property and coordinating procedures) that when we are told "You had your chances, don't play the blame game" is irrelevant.

The agent assigned to our property from American Home Mortgage, Terry Miles, has been the only one cooperative, professional and elegant in working with us; but even she has expressed frustration in dealing with American.

What we ask, once again, is for intervention from someone with authority at American Home Mortgage to immediately suspend all procedures currently in place in order to allow both American Home Mortgage and ourselves to speak in a reasonable manner for the best benefit for both parties.

The sheer incompetence of it all is astonishing. Please do what you can.

Sincerely,

Deborah Mills and Anthony Esquival

CC: Via fax; investor relations

MILLS000357

7-2