IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                          :   Chapter 11

                                  :

AMERICAN HOME MORTGAGE HOLDINGS, INC., :   Case No. 07-11047 (CSS)
a Delaware corporation, *et al.*,[1]          :

                                  :   Jointly Administered

                                  :   **Objection Deadline: TBD**

         Debtors.                   :   **Hearing Date: TBD**

------------------------------------------------------------ x

### DEBTORS' MOTION IN LIMINE FOR A DETERMINATION THAT JPMORGAN CHASE, N.A. AND TAWNYA LETTAU WERE NOT THE AGENTS OF THE DEBTORS

The above captioned debtors and debtors in possession (collectively, the "Debtors") respectfully move, in connection with the contested evidentiary hearing (the "Hearing") scheduled on the Administrative Expense Motion (as defined below), that JPMorgan Chase, N.A. ("Chase")[2] and its employee, mortgage broker Tawnya Lettau ("Ms. Lettau"), were not agents of the Debtors with respect to the loans made to Deborah Mills ("Ms. Mills"). In support of this motion (the "Motion"), the Debtors state as follows:

### PRELIMINARY STATEMENT

1.      The Debtors bring this Motion to establish, in advance of the Hearing, that Chase, whom Ms. Mills engaged as her mortgage broker, was not the agent of the Debtors with respect

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

[2]      Unless otherwise noted, all references herein to Chase shall be construed to refer to Ms. Lettau and Chase.

to the Mills Loans.[3]  On the contrary, Ms. Mills's own testimony and the Mortgage Broker

Agreement she entered into with Chase demonstrates that Chase was acting on behalf of Ms.

Mills, as well as performing services for and at the direction of Ms. Mills.

2.    Ms. Mills was aware that Chase may "shop the loan" to multiple lenders in order

to meet Ms. Mills's financial needs and requirements.  Further, both the Mortgage Broker

Agreement (between Ms. Mills and Chase) and the Agreement (between the Debtors and Chase)

explicitly state that Chase is not an agent of any particular lender and that Chase does not have

control over or the ability to bind the Debtors with respect to processing loans, including: (a)

determining the loan amount or (b) making any loan commitment.  Chase simply had the ability

to offer loan products to its clients (here, Ms. Mills) that were made available to the public by

any lenders, including but not limited to the Debtors, in accordance with the underwriting

guidelines approved by such lenders.  Ms. Mills understood that Chase was engaged to assist her

obtain financing and knew that there were no guarantees that she would be approved for

financing.

3.    Based on this undisputed evidence and the relevant law, Chase cannot be an agent

of the Debtors as a matter of law.  Accordingly, the Debtors respectfully request that the Court

enter an order determining that Chase was not the agent of the Debtors with respect to the Mills

Loans.[4]

## GENERAL BACKGROUND

4.    On November 19, 2007, Ms. Mills filed claim numbered 2743 (the "Original

Claim").  By the Original Claim, Ms. Mills asserted she was entitled to (i) a secured claim in the

---

[3]    Capitalized terms in the Preliminary Statement shall have the meanings ascribed to them in the body of this Motion.

[4]    Pursuant to Bankruptcy Local Rule 7026-1(c), the Debtors hereby certify that a reasonable effort has been made to reach agreement with Ms. Mills on the matters set forth in this Motion.

amount of $212,500.00 and (ii) an unsecured non-priority claim in the amount of $1,170,000.00 against American Home Mortgage Holdings, Inc.

5.        Subsequently, on March 31, 2010, Ms. Mills filed two amended claims, in which Ms. Mills asserted entitlement to two identical claims for (i) secured claims in the amount of $634,954.46 and (ii) unsecured non-priority claims in the amount of $747,545.54 against all Debtors (the "Subsequent Claims").

6.        On or about April 27, 2010, Ms. Mills, *pro se*, filed her *Motion for Order to (I) Amend Proof of Claim and (II) Motion for Order of Allowed Administrative Expense Claim Priority Against the Estate Pursuant to Section 503(b) of the Bankruptcy Code in Immediately Available Fund and (III) Order of Right to Protection of Certain Property Interests Under Section 361 or (IV) Avoidance Action Against Debtors Pursuant to Section 549* [D.I. 8812] (the "Administrative Expense Motion").  The Debtors objected to the Administrative Expense Motion [D.I. 8847], asserting, inter alia, that the Debtors did not oppose Ms. Mills's request to file an amended claim, but objected to any request for administrative priority, adequate protection payments under section 361 of the Bankruptcy Code and any avoidance action under section 549 of the Bankruptcy Code.

7.        Following Ms. Mills's retention of counsel, the parties agreed to litigate all issues with respect to Ms. Mills's claims against the Debtors in one trial, to be held in November 2010, and entered into an appropriate scheduling order [D.I. 9149 and amended at 9213].

## RELEVANT BACKGROUND

8.        At her deposition, Ms. Mills testified that she first contacted Chase in an effort to replace her previous mortgage broker, Roland Jones, who had provided unsatisfactory services according to Ms. Mills:

Q.     You state that, and this is in the first sentence: I had been working with Mr. Roland Jones who was securing a loan with Bridgeport Mortgage.

A.     Yeah.

Q.     Who is Roland Jones?

A.     He was my mortgage broker.

\*     \*     \*

A.     [I] had talked to Sarah [another Bridgeport employee] previously and I had also talked with Mr. Jones, but that week I couldn't get a hold of either of them and we were suppose to close escrow and I was like, oh, my God, what are we going to do?  We're supposed to close escrow and then that's when I sought out and found Tawnya [Lettau] and I said can you do this in four or five days?  I'm supposed to close escrow.

(Deposition Transcript of Deborah Mills ("Mills Tr.") at 95:15-20 & 99:03-11 (excerpts attached as Exhibit A); *see also id.* at 107:12-15 ("Q.  No, your initial discussion.  I think you said you called her by telephone on June 29th, is that correct?  A.  Yes, yes.").)

9.     Ms. Mills reached out to Ms. Lettau after receiving a recommendation from an appraiser:

Q.     And how did you come to know Ms. Lettau?

A.     I came to know her from one of the appraisers.

Q.     When did he or she give you Ms. Lettau's name?

\*     \*     \*

A.     When he had done the appraisal I was present on the property and we just got to talking, you know, and he had mentioned Tawnya to me that oh, you know, just through conversation that, you know, she's a gal that writes loans.  She's a great gal.  She lives locally, et cetera, et cetera, and so when I started having my concerns with Mr. Jones I called up [the appraiser] and said, okay, what's, who is that gal that you told me about?  I would like to call her and that's how I got her number.

(Mills Tr. at 104:16-105:13; *see also id.* at 107:20-22 ("I told [Ms. Lettau] I was referred by Chris from the appraiser's office and that if anyone could get a loan done it would be you . . . .").)

10.    Based on these communications, Chase and Ms. Mills, on or about July 7, 2005, executed and otherwise agreed to the mortgage broker agreement (the "Mortgage Broker Agreement") in the form attached hereto as Exhibit B.  The Mortgage Broker Agreement, in pertinent part, specifically provides:

> . . . *Chase is not acting as a mortgage lender or as the agent of the Lender in this transaction.*  Chase will not make you a mortgage loan or issue a commitment to you for a mortgage loan.  Our services are consultative and you will rely on your judgement [sic] in choosing your Loan.

(Mortgage Broker Agreement ¶ 2 (emphasis added).)  The Mortgage Broker Agreement contains no terms that identify the Debtors.  Ms. Mills was fully responsible for any and all payments to Chase under the agreement.  No lender was responsible to pay any amount to the Broker in connection with the Mills Loans and specifically excludes any yield spread premium.  (*See generally* Mortgage Broker Agreement (identifying no specific lenders and leaving yield spread premium clause blank).)

11.    Ms. Mills also testified that she read the Mortgage Broker Agreement, signed it, and understood its terms:

Q.    Have you read this agreement before?

A.    Back in 2005.

Q.    ... Did you sign this agreement?

A.    Yes, I did.

Q.    Do you know approximately when you signed this agreement?

*        *        *

A.   The same time that she [Ms. Lettau] signed it.

Q.   If you look on the top right part of the agreement it says the type of loan requested[:] brokered out [ARM].  Do you have an understanding of what that means?

A.   Brokered out meaning that it was going to be through another company aside from Chase and that ARM is an adjustable rate mortgage.

(Mills Tr. at 110:14-111:09.)

12.   Consistent with the express provisions of the Mortgage Broker Agreement, moreover, Ms. Mills testified that she understood that Chase was not an agent of the Debtors:

Q.   Chase is not acting . . . as the agent of the lender in this transaction.  What is your understanding of that?

A.   Chase is not acting as the agent, yeah.  The organization that she worked for was not the acting agent.  So, in other words, that Chase had nothing to do with this loan.  She was brokering it out independently. . . .

(Mills Tr. at 114:21-115:05; *see also id.* at 117:13-16 ("Q.  To your understanding was Chase working as the agent of American Home Mortgage?  A.  No, this was brokered out independently."); 119:19-21 ("Q.  … [D]oes this document mention American Home Mortgage at all?  A.  No, it doesn't.").)  Ms. Mills also testified that she knew Chase was not acting as a mortgage lender:

Q.   Chase is not acting as a mortgage lender in this transaction.  What is your understanding of that?

A.   That they're not acting as a mortgage lender.

Q.   So then they wouldn't be giving you a loan in connection with the property?

A.   Yeah, Chase would not be.

(*Id.* 114:12-19; *see also id.* at 113:09-13 ("Q.  Would it also be accurate to say based on that provision I just read to you that it's stating that Chase Manhattan Bank would not be the lender with respect to your loan?  A.  That was my understanding . . . .").)

13.    According to Ms. Mills, there were no American Home brochures, signs or other identification of "American Home" at Chase's office.  (Mills. Tr. at 106:22-107:06 ("Q.  When you went to the office did it have an American Home Mortgage sign anywhere outside?  A.  No, it did not.  Q.  W[ere] there any brochures or signs inside her office that said American Home?  A.  I don't remember.  I really didn't look for anything like that.  Q.  You don't recall seeing any?  A.  No.").)

14.    Ms. Mills, moreover, testified that Chase had the ability to submit her Loan Applications to multiple lenders:

> Q.    I believe your testimony at the last deposition was that you didn't discuss any particular lenders until the loan was ultimately approved?
>
> A.    Yeah, but she threw – she had thrown a couple of mortgage companies' names at me, because she was saying that she was going to have to broker this loan, that it couldn't go through Chase.

(Mills Tr. (Vol. II) at 612:05-08; *see also id.* at 123:03-05 ("[Ms. Lettau] said she was going to go out and see what she could get."); Mortgage Broker Agreement ¶ 3 (stating that Chase "will submit your Loan application to one or more Lenders with which Chase works.").)

15.    Further, as admitted by Ms. Mills, pursuant to the Mortgage Broker Agreement, Chase advised Ms. Mills on submitting and obtaining financing related to Ms. Mills's purchase of the Property, including, among other services listed in section 4 of the Mortgage Broker Agreement: assisting Ms. Mills prepare her Loan Applications; counseling Ms. Mills regarding the mortgage loan process; educating Ms. Mills regarding different types of loan products, features, and options, including how the closing costs, interest rates, payments, and terms can

vary under different loan products; verification of employment; and verification of deposit, mortgage, and other loan-related items. (Mills Tr. at 117:24-118:12 ("Q. [In] Section 4 it says specific Chase services. It lists a host of services in this paragraph. Did Ms. Lettau provide these services to you? . . . A. Uh-huh. Yes, she provided those services. Q. All of those services? A. Yes. Q. To you? A. Yes.") (referencing Mortgage Broker Agreement ¶ 4); 121:25-122:08 (admitting that Chase assisted her in preparing the applications for the Mills Loans); 122:10-13 ("Q. Did she discuss different loan options with you? A. In our first initial conversation, yes, what she was going to try to secure for me.").) Ms. Mills also knew there were no guarantees that she would be approved for financing. (*Id.* at 120:08-17 ("Q. Chase does not guarantee that you will be approved for any particular loan product . . . . What do you believe that means? A. Exactly what is says . . . . [T]here were no guarantees. We'll go through the process and we'll see if you qualify and move forward.").)

16.     Separately, on March 30, 2005, Chase and American Home Mortgage Corp. ("AHMC")[5] executed an agreement (the "Agreement") (attached hereto as Exhibit C) that authorized Chase to broker loans in which AHMC acted as a lender. Pursuant to section 9 of the Agreement, entitled "No Agency or Employment Relationship," Chase and AHMC agreed that:

> Broker shall have no authority to bind, obligate or commit Lender by any promise or representation unless specifically authorized by Lender in writing in a particular transaction. Broker shall not represent to any party that it in anyway represents lender or is authorized to act on behalf of Lender. *This Agreement shall not be construed as a partnership or joint venture, nor is the intent of the parties hereto to create an agency relationship. Broker is an independent contractor in all respects.* Neither party hereto shall be liable for any obligation incurred by the other except as provided herein.

(Agreement ¶ 9 (emphasis added).)

---

[5]     AHMC also conducted business under the tradename "American Brokers Conduit."

17.    The Agreement expressly provides that Chase "[i]t is hereby understood that **Broker shall make no credit commitments on behalf of Lender** and that Lender shall have the sole and absolute discretion to determine whether a loan will be granted and under what conditions." (*Id.* ¶ 2.C.) (emphasis added)  The Broker had no authority to speak on behalf of the Lenders with respect to any credit commitments and only had authority to solicit and process real estate loan applications.  (*Id.* ¶ 2.A.)

18.    Based on this evidence, and in an effort to streamline the issues and evidence to be presented at the Hearing, the Debtors request that the Court determine that Chase cannot, as a matter of law, be an agent of the Debtors with respect to the Mills Loans.

## ARGUMENT

19.    Under California law,[6] an agent is one who represents another, called the principal, in dealing with third persons.  CAL. CIV. CODE § 2295 (2009).  An agency relationship is only created when a principal in some manner indicates that an agent should act on his behalf and the agent must agree to act under his control.  *Van't Rood v. County of Santa Clara*, 113 Cal. App. 4th 549, 571 (Cal. Ct. App. 2003).  Customarily, as is the case here, a mortgage broker is retained by a borrower to act as a *borrower's* agent in negotiating an acceptable loan.  *See, e.g., House v. Cal State Mortg. Co.*, 2009 U.S. Dist. LEXIS 58529, at *64 (E.D. Cal. July 9, 2009) (citations omitted).

20.    In determining whether an agency relationship exists, California courts look to the following factors:

1. A writing setting forth an agency;
2. Participation in the negotiations;
3. Exercise of discretion;
4. Brings or helps to bring the parties to a meeting of the minds;

---

[6]    The parties have briefed the claims at issue pursuant to California law.  Therefore, this Motion cites California law on the question of agency.

5. Receives confidential information creating a fiduciary relationship; and

6. Degree of control of the principal over agent.

2 HARRY D. MILLER, CALIFORNIA REAL ESTATE § 3:5, at 29 (2000 & 2009-2010 Supp.) ("CALIFORNIA REAL ESTATE").

21.     Of these factors, an intent to create an agency relationship and control of the agent by the principal are the most essential.  "The primary test for the creation of an agency is the intention of the principal to employ the agent to act on behalf of the principal in dealing with third persons as the principal's representative, and the agent's intention to accept the employment."  CALIFORNIA REAL ESTATE § 3:5, at 25.  Thus, "[t]here is no agency relationship in the absence of such intent by both parties."  *Id.*

22.     Similarly, "[i]n the absence of the essential characteristic of the right of control, there is no true agency."  *Van't Rood*, 113 Cal. App. 4th at 572 (internal quotations omitted).  Control means the right to control the "means and manner in which the result is achieved."  *Wickham v. Southland Corp.*, 168 Cal. App. 3d 49, 59 (Cal. Ct. App. 1985).  As discussed below, both of these factors (and others) are absent from the relationship between the Debtors and Ms. Lettau and thus no agency relationship can exist as a matter of law.

23.     First, Chase and the Debtors had no intent to create an agency.  In fact, the Agreement expressly provides that it is <u>*not*</u> the intent of the parties to create an agency relationship.  (*See* Agreement ¶ 9 ("This Agreement shall not be construed as a partnership or joint venture, *nor is the intent of the parties hereto to create an agency relationship*.") (emphasis added).)  Indeed, the Agreement emphasizes that "Broker is an independent contractor in all respects."  (*Id.*)  The Debtors' lack of control over Chase is further demonstrated by the fact that the Mortgage Broker Agreement does not mention AHMC (or any of the other Debtors), nor does it even provide for a yield spread premium for a lender to pay.  (*See* ¶ 10, *supra*.)

Accordingly, both the Agreement and the Mortgage Broker Agreement are clear that Chase did

not act under the requisite control of AHMC.

24.    Moreover, Ms. Mills herself testified that she knew that (1) Chase was not the

Debtors' agent, and (2) Ms. Lettau was an employee of Chase.  (*See* Mills Tr. at 80:07 (admitting

that Ms. Lettau was not employed by the Debtors, but was simply a "broker"); *id.* at 114:25-

115:01 ("Chase is not acting as the agent [for the Debtors], yeah."); Mortgage Broker Agreement

¶ 2 ("Chase is not acting as a mortgage lender or as the agent of the Lender in this transaction.");

*see generally* ¶ 12-13, *supra*.)[7]

25.    Second, the Debtors never controlled the actions of Chase necessary for purposes

of establishing an agency relationship.  Under the Mortgage Broker Agreement, Chase explicitly

stated that it "will submit your Loan application to *one or more Lenders* with which Chase

works."  (Mortgage Broker Agreement ¶ 3 (emphasis added); *see also* Mills Tr. (Vol. II) at

612:05-08 ("She had thrown a couple of mortgage companies' names at me, because she was

saying that she was going to have to broker this loan, that it couldn't go through Chase."); *see*

*generally* ¶ 14, *supra*.)  This discretion on the part of Chase directly contradicts the finding of an

agency relationship with AHMC.

26.    Finally, no fiduciary relationship ever existed between Chase and the Debtors.

Chase had no obligation to act in the Debtors' interests under the Mortgage Broker Agreement or

the Agreement.  (*See* Mortgage Broker Agreement ¶ 3; Agreement ¶ 9 ("[Chase] shall not

represent to any party that it in anyway [sic] represents lender or is authorized to act on behalf of

---

[7]       Ms. Mills's belief that Chase did not act as the Debtors' agent also precludes the creation of an implied, or
"ostensible," agency.  Under California law, an agency is ostensible when the "principal intentionally, or by want of
ordinary care, causes a third person to believe another to be his agent who is not really employed by him."  CAL.
CIV. CODE § 2300.  Thus, to establish an ostensible agency "[t]he person dealing with an agent must do so with a
reasonable belief in the agent's authority," among others.  *J.L. v. Children's Institute, Inc.*, 177 Cal. App. 4th 388,
403-404 (Cal. App. Ct. 2009).  Because Ms. Mills testified that she had no such belief, no ostensible agency can
exist.  Similarly, AHMC did nothing to cause Ms. Mills to reasonably believe that Chase was its agent.

Lender."); Expert Report of Phillip Adleson in Support of *Debtors' Objection to Administrative Expense Claims Numbered 10802, 10803, 10804, 10805, 10806, 10807, 10808, and 10809 Filed by Deborah Mills* at 9 ("Because the brokers were not exclusive independent contractors, as here, the brokers were invariably not authorized to make loan commitments on behalf of Lender and the decision to accept a written loan application was solely in the absolute discretion of the Lender . . . . [U]nder the lender-broker agreement brokers have no authority to bind, obligate or commit Lender . . . by any promise or representation unless specifically authorized by the lender in writing in a particular transaction.  Brokers are not authorized to represent to the public that they represent the lender or that they are authorized to act on behalf of the lender.") (attached hereto as Exhibit D).)

27.    In the absence of any evidence establishing all of these key factors, no agency relationship exists between Chase and the Debtors as a matter of law.  Accordingly, Chase cannot, as a matter of law, be considered an agent of the Debtors.

## CONCLUSION

For the foregoing reasons, the Court should grant the Debtors' Motion and determine as a matter of law that Ms. Lettau and Chase was not an agent of the Debtors with respect to the Mills Loans.

Dated: Wilmington, Delaware  
      November 19, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Sharon M. Zieg*

_____

Sean M. Beach (No. 4070)  
Sharon M. Zieg (No. 4196)  
The Brandywine Building  
1000 West Street, 17th Floor  
Wilmington, Delaware 19801  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253  
Counsel for Debtors and Debtors in Possession