IN THE UNITED STATES BANKRUPTCY COURT
                      FOR THE DISTRICT OF DELAWARE

IN RE:                            )      Chapter 11
                                  )
                                  )
AMERICAN HOME MORTGAGE            )      Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware        )
Corporation, et al.,              )      Courtroom 6
                                  )      824 Market Street
            Debtors.              )      Wilmington, Delaware
                                  )
                                  )      November 24, 2010
                                  )      9:03 a.m.


                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
                    UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:


For Debtor:               Young, Conaway, Stargatt &
                          Taylor, LLP
                          BY:  SEAN M. BEACH, ESQ.
                          BY:  SHARON ZIEG, ESQ.
                          BY:  ERIN EDWARDS, ESQ.
                          BY:  MARGARET GREECHER, ESQ.
                          BY:  ANDREW LUNDGREN, ESQ.
                          BY:  MORGAN SEWARD, ESQ.
                          The Brandywine Building
                          1000 West Street, 17th Floor
                          Wilmington, DE  19801
                          (302) 571-6600


ECRO:                     LESLIE MURIN


Transcription Service:    DIAZ DATA SERVICES
                          331 Schuylkill Street
                          Harrisburg, Pennsylvania 17110
                          (717) 233-6664
                          www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

1  APPEARANCES:
   (Continued)
2
3  For the Official Committee      Hahn & Hessen, LLP
   of Unsecured Creditors:         BY:  EDWARD SCHNITZER, ESQ.
4                                  488 Madison Avenue
                                   New York, NY  10022
5                                  (212) 478-7200

6  For Deborah Mills:              Stamoulis & Weinblatt
                                   BY:  RICHARD WEINBLATT, ESQ.
7                                  BY:  STAMATIO STAMOULIS, ESQ.
                                   Two Fox Point Centre
8                                  6 Denny Road, Suite 307
                                   Wilmington, DE  19809
9                                  (302) 999-1540

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX

| WITNESSES FOR DEBTORS: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| SIMON SAKAMOTO | 7 | | | |

1  WILMINGTON, DELAWARE, WEDNESDAY, NOVEMBER 24, 2010, 9:03 AM

2           THE COURT:  For planning purposes, and I do

3  apologize, we are going to need to break at 11:15 so I can

4  go pick up my children and take them to my mother-in-law and

5  then come back because of the half-day today.  So I know Mr.

6  Beach said we would be done by one.  I guess you assumed

7  there would be no lunch.  So we'll -- we'll have to break

8  from, say, 11:15 to 12:30.  I apologize, but the more you

9  pay, the less often they actually go to school.

10          (Laughter)

11          THE COURT:  All right.  Ms. Zieg.

12          MS. ZIEG:  Good morning, Your Honor.  Sharon Zieg

13 of Young, Conaway, Stargatt and Taylor on behalf of the

14 debtors.  The debtors call their last witness to the stand,

15 Your Honor, Simon Sakamoto.

16          THE COURT:  Well, let's -- are we going to take

17 care of documents here.

18          MS. ZIEG:  Do you want to take care of that

19 first, Your Honor?

20          THE COURT:  Well, he wants to close his case,

21 so --

22          MS. ZIEG:  Oh.

23          THE COURT:  -- let's do the documents for Ms.

24 Mills.

25          MR. STAMOULIS:  Your Honor, I believe that we've

1   reached agreement on all the documents except for one.  The

2   one document that there is still, I believe, a relevance

3   objection to is Exhibit 99, which we used most recently with

4   Mr. Martinez, and that's the exhibit that showed the

5   repeated credit hits that occurred, and I can go into --

6             THE COURT:  No.  I think that's relevant.  I'll

7   overrule any relevance objection to the extent it still

8   exists.

9             MR. STAMOULIS:  Thank you, Your Honor.

10            THE COURT:  So do you have a list?

11            MS. ZIEG:  Yes, Your Honor.

12            One other thing I just wanted to clarify for the

13  record.  We have a stipulation regarding the authenticity of

14  all documents.  We've agreed and stipulated that all

15  documents are authenticated.

16            In addition, the debtors are admitting -- are

17  moving for the admission of Exhibits 1 through 312, and I'll

18  provide you with a -- that list.

19            THE COURT:  All 312?

20            MS. ZIEG:  Yes, Your Honor.

21            THE COURT:  Any objection?

22            MR. STAMOULIS:  No objection, Your Honor.  We

23  would move for the admission of 1 through 100.

24            THE COURT:  Any objection?

25            MS. ZIEG:  No, Your Honor.

1          THE COURT:  All right.  They're --

2          MS. ZIEG:  Oh, one other issue, Your Honor, is

3   with respect to the designations.  We withdraw all of our

4   objections to Ms. Mills' deposition designations.

5          In addition, we withdraw our deposition

6   designations of Mr. Esquivel since he was in attendance at

7   the hearing.

8          THE COURT:  Okay.

9          MR. STAMOULIS:  And then with that withdrawal of

10  that deposition, I think we withdraw any remaining

11  designation objections we have.

12          THE COURT:  Okay.

13          MR. STAMOULIS:  Thank you, Your Honor.

14          THE COURT:  All right.  And that will close Ms.

15  Mills' case?

16          MR. STAMOULIS:  Yes, Your Honor.  Claimant rests.

17          THE COURT:  Subject to rebut --

18          MR. STAMOULIS:  Claimant rests her case.

19          THE COURT:  Very good.  Thank you.

20          MR. STAMOULIS:  Thank you.

21          MS. ZIEG:  Your Honor, if I may approach with a

22  final copy of our exhibit list.

23          THE COURT:  Why don't you just give it to Ms.

24  Werkheiser (phonetic).  That's the easiest thing.

25          (Pause)

1          THE COURT:  All right.  Now you -- now let's call

2    your witness.

3          MS. ZIEG:  Thank you, Your Honor.

4          Debtors calls Simon Sakamoto to the stand.

5          THE COURT:  Please take the stand, sir, and

6    remain standing.

7          THE CLERK:  Please raise your right hand.

8        SIMON SAKAMOTO, WITNESS FOR THE DEBTORS, SWORN

9          THE CLERK:  Please state and spell your name for

10   the record.

11         THE WITNESS:  Simon Sakamoto, S-I-M-O-N S-A-K-A-

12   M-O-T-O.

13         THE CLERK:  Thank you.  You may be seated.

14                        DIRECT EXAMINATION

15   BY MS. ZIEG:

16   Q    Good morning, Mr. Sakamoto.

17        By whom are you currently employed?

18   A    I work for American Home Mortgage.

19   Q    And how long have you been employed by American Home

20   Mortgage?

21   A    I started in September 2003.

22   Q    And what is your current title with American Home

23   Mortgage?

24   A    Senior vice-president.

25   Q    And is that senior vice-president of any particular

1  division or simply --

2  A     The investment division.

3  Q     And prior to the debtors' bankruptcy, what was your

4  position with American Home Mortgage?

5  A     I was senior vice-president in charge of the

6  investment division, managing the day to day investment

7  activities of the real estate investment trust.

8  Q     And what are your current responsibilities with

9  respect to your position as senior vice-president?

10  A     Well, since we've filed for bankruptcy my

11  responsibility is to work with creditors on issues with

12  respect to their claims to mitigate our claims as well as to

13  recover uncontested assets for the estate.

14  Q     And prior to the debtors' bankruptcy and your position

15  as senior vice-president of the investment division, what

16  was your role?

17  A     I'm sorry.  Say that again, please.

18  Q     Prior to the bankruptcy --

19  A     Oh, okay.

20  Q     -- and your position --

21  A     The -- I had really two functions:  One is to manage

22  the investment portfolio.  I had -- I had a team of

23  portfolio managers and analysts to execute the day to day

24  investment activities of the real estate investment trust

25  portfolio and, also, to provide a supporting role for the

1  securitization team.

2  Q    And what was your role with respect to the

3  securitization team?

4  A    Well, it was primarily twofold:  One is to manage the

5  loans that were originated and the manage the interest rate

6  risk associated prior to the securitization; and then second

7  is to provide the information support about the loan

8  portfolio that was originated prior to the securitization to

9  the securitization team to provide a lot of the information;

10  also, to advise the securitization team as to which types of

11  securities that we should be selling to investors since we

12  ourselves were investors in mortgage-backed securities.

13  Q    And with respect to American Home Mortgage's structure

14  prior to the bankruptcy filing, what were the three revenue

15  channels of American Home Mortgage?

16  A    We had three business lines.  One was the origination

17  business; the second was the portfolio business which I was

18  in charge on a day to day basis; and the third is the

19  servicing.

20  Q    And you mentioned working with the securitization

21  team.  Can you explain for us what it means to securitize a

22  loan?

23  A    Well, the real estate investment trust part of the

24  business accumulated loans prior to securitization and once

25  we accumulated enough loans, sufficient quantities --

1  usually occurred prior to the calendar quarter end -- we

2  would work -- select underwriters to distribute the

3  potential securities that we created to investors.  And the

4  process involved, basically, working with them to go out

5  with a preliminary securitization structure to discuss the

6  type of returns and risks that these investors would get by

7  purchasing these securities.

8      And once we had sufficient number of interest in the

9  securitization, we would price the securitization, and then

10  the closing of the securitization would occur typically two

11  to a month afterwards.

12  Q    And what parts of the securitization process were you

13  personally involved in?

14  A    Well, once we started the securitization my team

15  assembled a lot of the information about the loans that

16  we've accumulated.  We passed it onto the securitization

17  team.  I was also involved in the pricing discussions of the

18  securitizations prior to the pricing to discuss which type

19  securities would best suit the needs of the investors.  So

20  it would be advice as to what kind of securities we want to

21  create, what kind of pricing we would expect to get and, you

22  know, to provide input to the overall economics of the

23  securitization for American Home.

24  Q    And how did the investment division of American Home

25  Mortgage change from 2008 when you started with American

1   Home Mortgage until 2007 just prior to the bankruptcy

2   filing?

3               THE COURT:  You said 2008.  You meant --

4               MS. ZIEG:  I'm sorry.

5               THE COURT:  -- 2003?

6               MS. ZIEG:  2003.  Thank you, Your Honor.

7               THE WITNESS:  Yes.  The -- American Home started

8   the investment business in 2003, so when I first got hired

9   into the company there was only three of us:  My boss, who's

10  the chief investment officer and then there was one other

11  person that worked with me.  He was the junior portfolio

12  manager, and all of us really -- we were a smaller business

13  unit at the time.  So we did both the investment function as

14  well as the securitization.  So I was directly involved in

15  the securitization from 2003 to late 2004.

16  Q    And what role did you play specifically with respect

17  to pulling loans to be securitized?

18  A     Well, I would work with our -- well, we worked with

19  our origination team to determine which loans that the real

20  estate investment trust would get, and then once we had the

21  loan pulled, we would work with the underwriters to

22  determine how to best pull these loans and to sell to

23  investors.  And we also provided detailed breakdown of the

24  loan pool in terms of its borrower characteristics as well

25  as its property characteristics.

1  Q      And you mentioned that you worked with the originators

2  and the underwriters.  Can you explain to me what

3  interaction occurred between the securitization team and the

4  underwriters and originators?

5  A      Well, the originate -- the -- my activities with the

6  origination team is primarily to verify which loans that w

7  would securitize, but, also, to utilize their expertise in

8  the interest rate hedging of the loans prior to the

9  securitization.

10        Now with respect to the underwriters, their job is

11  primarily to market the securities and ultimately sell these

12  mortgage-backed securities to institutional investors.  So I

13  would work with these -- the underwriters to determine which

14  type of loans that we wanted to securitization, provide all

15  the detailed information about the loan pool, and then

16  ultimately have discussions about which securities we should

17  sell at what price level to, again, determine the overall

18  economics for American Home.

19  Q      Were there any policies in place that -- whereby the

20  securitization team encouraged underwriters or the

21  originators to originate certain kinds of loans?

22  A      No.  Actually, the origination business and the

23  securitization business were two separate business entities.

24  They had two separate teams.  Although we did interact with

25  each other, the origination business had their own

1  underwriting guidelines at the time of the origination as

2  well as the type of borrower characteristics that would

3  determine certain things such as loan to value ratios, how

4  much money they could borrow against a home and the like.

5      And the securitization business was primarily a

6  disposition function for American Home and the

7  securitization process involved basically taking loans that

8  were already originated by the origination team and then

9  securitizing them.  At no point did we ever drive the

10 origination business as to how the loans should be

11 originated.

12 Q     And if there was any such policy would you have known

13 about it?

14 A     Absolutely.

15 Q     And why is that?

16 A     Because it was really my job to determine the type of

17 loans that went into the securitization because we wanted to

18 determine how we could securitize them, so I had to know the

19 characteristics of these loans.  But, again, that's not

20 something that -- that we were involved in terms of the

21 origination itself.

22         THE COURT:  I'm sorry.  Let me -- I'm going to

23 interrupt.

24         Basically, you had three different ways to deal

25 with originated loans, right?  You securitized them, you

1  sold them as whole loans or you held them?

2            THE WITNESS:  Correct.

3            THE COURT:  What percentage -- say in '05, what

4  percentage were you securitizing?

5            THE WITNESS:  In '05 I would say we securitized

6  substantially all the loans that --

7            THE COURT:  Substantially all the loans.

8            THE WITNESS:  -- the loans that the real estate

9  investment trust had obtain -- that originated or obtained.

10           THE COURT:  Okay.  And --

11           THE WITNESS:  Which is separate from the

12  origination loans.

13           THE COURT:  Well, that's what I'm -- what -- let

14  me ask a more specific question.

15           THE WITNESS:  Okay.

16           THE COURT:  What -- generally speaking, what

17  percentage of originated loans --

18           THE WITNESS:  Okay.

19           THE COURT:  -- was American Home then

20  securitizing through its real estate investment trust?

21           THE WITNESS:  Well, actually, I don't really know

22  what that number is, but I would say, you know, just the top

23  -- of the top of my head probably less than twenty percent.

24           THE COURT:  Okay.

25           THE WITNESS:  But, again, that's not a number

1   that I dealt with.

2           THE COURT:  And you would price the

3   securitization based on the portfolio?

4           THE WITNESS:  We would price the securitization

5   based on the loans that were either originated for the real

6   estate investment portfolio or, perhaps, loans that we may

7   have purchased from third parties.

8           THE COURT:  Well, what do you mean by "originated

9   for the real estate investment portfolio"?

10          THE WITNESS:  The way our --

11          THE COURT:  I guess -- here's my question.

12          THE WITNESS:  Okay.

13          THE COURT:  Are you pulling -- there's a pool of

14   a hundred originated loans and you want to securitize

15   twenty.

16          THE WITNESS:  Okay.

17          THE COURT:  Okay.  Are -- are -- as the

18   securitization department are you pulling the twenty that

19   you want out of that pool of one-hundred or are they placing

20   twenty with you and you price the securitization based on

21   the twenty you get?

22          THE WITNESS:  Well, generally, the real estate

23   investment -- or the investment division had already pre-

24   determined which types of loans would be originated for the

25   portfolio versus which types of loans that would be sold to

1  other investors.  So the --

2           THE COURT:  All right.

3           THE WITNESS:  -- the question -- the answer to

4  your question is we already pre-determined which loans --

5           THE COURT:  All right.  So you knew you wanted

6  certain types of loan.  You knew you wanted something in the

7  eighty percent loan-to-value range with certain

8  characteristics, credit scores, et cetera, et cetera --

9           THE WITNESS:  Yeah, generally.

10           THE COURT:  -- for a specific securitization.

11           THE WITNESS:  Well, we didn't have a specific

12  securitization in mind.

13           THE COURT:  But just generally to --

14           THE WITNESS:  But, generally, this is the types

15  of loans that we would put in our portfolio --

16           THE COURT:  Okay.

17           THE WITNESS:  -- and once we masked a sufficient

18  amount of quantities, we would securitize them.

19           THE COURT:  All right.  And the originators --

20  not necessarily the originators, but the other arm of

21  origination knew that these were the kind of loans that

22  would then go to the wreaths.

23           THE WITNESS:  Yes.

24           THE COURT:  So there was some coordination?

25           THE WITNESS:  Yes, but at no point did we dictate

what type of loan characteristics with respect to LTV.

THE COURT:  Right.  Just if they didn't originate
any of those, you wouldn't have any to securitize?

THE WITNESS:  Correct.

BY MS. ZIEG:

Q    You wouldn't have any to securitize from the loans
that were originated by the age and the origination
division?

A    Yes.

Q    But you would securitize those loans from other
sources?

A    Yes.

Q    And eighty percent of the loans that you securitized
came from other sources.  Is that correct?

A    What do you mean "other sources"?

Q    You said that you only securitized about eighty
percent of the loans that were originated by AHM's
origination division.

A    No.  Actually --

THE COURT:  No.  No.

THE WITNESS:  -- you asked me what percentage was
originated for third parties versus our own portfolio.  I
said it was probably twenty percent.  Again, I don't really
know what the number is.  But there were two separate
originations, one --

1          THE COURT:  I -- well, maybe we can -- I was

2   asking --

3          THE WITNESS:  Okay.

4          THE COURT:  -- of all of the AHM originations,

5   what percentage got securitized and you --

6          THE WITNESS:  And I -- I threw out a number, said

7   probably around twenty percent.

8          THE COURT:  Right.  Now Ms. Zieg is, I think,

9   assuming that what you meant was twenty percent of what you

10  securitized were AHM loans and eighty percent came from some

11  other source, but that's -- that's not what you meant by

12  that answer?

13         THE WITNESS:  No.  We --

14         THE COURT:  Okay.

15         THE WITNESS:  -- there's -- okay.  American as --

16  American Home as an entity originated, say, a hundred

17  percent, and of that twenty percent went into the portfolio

18  and the other eighty was originated for sale to other

19  parties.  Does -- does that clarify?

20         MS. ZIEG:  Thank you.

21         THE COURT:  I understand what you mean, and I

22  suppose that's all that matters, isn't it?

23         THE WITNESS:  Okay.

24         (Laughter)

25         MS. ZIEG:  That is all that matters, Your Honor.

1          THE WITNESS:  And, again, I -- I don't want to

2    say that that's an absolutely correct number.

3          THE COURT:  I understand.  That's an -- that's a

4    guesstimate --

5          THE WITNESS:  That's just a guess because I

6    wasn't really part of the business that made those

7    decisions.  I -- I just, you know, am making an educated

8    guess.

9          THE COURT:  Very good.  I appreciate that.  Thank

10   you.

11   BY MS. ZIEG:

12   Q    And approximately how many loans are included in each

13   pool?

14   A    Well, generally, the securitizations that we were

15   involved in contained anywhere from 1,000 to 5,000 loans.

16   There were some loans --

17   Q    And --

18   A    -- deals that had fewer than 1,000 and there were some

19   deals that were in excess of 20,000.

20   Q    And how was it determined which mortgages make up each

21   pool?

22   A    Generally, we would pool like type of loans.  For

23   example, fixed rate loans we would securitize into fixed

24   rate loan groups.  Arms would be securitized as another

25   group.  The option arms, again, would be another group,

1  hillocks and the like.  And the reason why we bucketed these

2  loans into groups is because the interest rate risk

3  associated with the securities that were created would be

4  very different and they appealed to different types of

5  investors.  So that's why we separated into those

6  categories.

7       We also, from time to time, separated the loan

8  balances between conforming balance and non-conforming

9  balance and the reason is because we had fairly strong

10  investor demand from Freddie Mac and Fanny Mae's portfolio.

11  So they were created for that purpose.

12  Q     And what would you call this process that you used in

13  deciding which loans to put in each pool?

14  A     Well, that's just part of the securitization process.

15  It's the process of determining how to best securitize so we

16  can maximize the proceeds for American Home.  So, primarily,

17  it's a profit maximization exercise for American Home.

18  Q     And how did you diversify the loan pools?

19  A     Well, generally, the origination created loans and

20  during the end of the quarter we would look to see what was

21  originated for the portfolio, and the diversification comes

22  from the fact that you have multiple borrowers in the pool,

23  so by virtue, you have the risk of a thousand borrowers as

24  opposed to a single borrower.  So I think that's the

25  greatest diversification there.

1    But in addition to that, you have diversification from

2  the fact that you have borrowers from different geographic

3  sections of the country.  Different sections of the country

4  have different employment rates, different real estate

5  prices, whether they're going up or down, so that creates

6  another level of diversification for the borrower.

7    You also have diversification because different

8  borrowers have different FICO scores as well as the loan to

9  value ratios.

10  Q    And what role does loan to value ratio of each

11  mortgage play with respect to diversification?

12  A    Well, the loan to value ratio is a measure of the risk

13  in the event that the borrower defaults.  If you have a high

14  concentration of high LTV loans, then the pool would have a

15  higher risk characteristic.  So an investor purchasing such

16  securities would demand a much higher return for that --

17  taking that risk.

18    Conversely, if you have a pool of concentration of low

19  LTV loans, then that means the return on those securities

20  would be much lower than what a typical mortgage-backed

21  securities investor would purchase.  So it would make sense

22  for us to have diversity in the loan to value ratios to

23  mitigate risk and, also, to provide sufficient return for

24  the typical mortgage-backed securities investor.

25  Q    And you spoke earlier about underwriters.

1  A      Okay.

2  Q      Is there a difference between a securitization

3  underwriter and an origination underwriter?

4  A      Well, first of all, there's no such thing as a

5  securitization underwriter.  There's only one underwriter

6  and they work for the origination side of the business.

7  Q      And how are loan pools marketed?

8  A      Well, first, once we have an idea how -- what kind of

9  securitization we would like to create based on our previous

10 experience, we would select a underwriter, such as JPMorgan,

11 Deutsche Bank, the big investment banks, and then they would

12 go out with a preliminary bond structure to institutional

13 investors, so it would be some large banks, insurance

14 companies, pension fund managers and the like, and they

15 would discuss about the characteristics of the loan pool

16 that's being marketed and the type of securities structures

17 that they would purchase and to determine, really, for the

18 investors, you know, the attractiveness of the

19 securitization as an investment.

20 Q      And what would the -- what would be the impact of

21 marketing a securitization that had all low LTV value loans?

22 A      Well, clearly, in that scenario you would have a very

23 low risk investment pool.  However, the returns that you

24 would get on such low risk investments would be, probably,

25 lower than what a typical mortgage-backed securities

1  investor would want to purchase.  So it probably wouldn't be

2  that attractive.

3  Q    And were you personally involved in the securitization

4  of Ms. Mills' loans?

5  A    No, I wasn't.

6  Q    And were you personally involved in the securitization

7  of Ms. Mills -- I'm sorry --

8          THE COURT:  You said Ms. Mills' loans?

9          MS. ZIEG:  Ms. Mills -- I was going to say the

10 first loan or the second loan.

11          THE WITNESS:  No, I wasn't in -- I was not

12 involved in either securitizations.

13 BY MS. ZIEG:

14 Q    And did American Home Mortgage securitize Ms. Mills'

15 first loan?

16 A    No, they did not.

17 Q    Who did?

18 A    DLJ.

19 Q    And what was American Home Mortgage's involvement with

20 respect to the securitization of Ms. Mills' first loan?

21 A    Well, first of all they originated the first lien

22 Mills' loan, and then they sold it to DLJ, and then DLJ

23 securitized using -- using American Home's shell.

24 Q    So with respect to Ms. Mills' first loan, the seventy

25 percent loan to value loan, it was sold as a whole loan

1  trade.  Is that correct?

2  A     Correct.

3  Q     So AHM never securitized that loan?

4  A     We didn't securitize them, but they did use our shelf

5  to securitize it.

6  Q     And what is the importance of the LTV of a loan when

7  there's a whole loan trade?

8  A     Well, it's one of the risk characteristics that any

9  purchaser with whole loans would look at, and to the extent

10 that there's a high concentration of high LTV loans, it

11 would be deemed more risky.  So either a potential purchaser

12 may not even purchase the pool or they may demand a much

13 higher return.

14 Q     So with respect to an -- the allegation that there was

15 some kind of policy that encouraged -- that the

16 securitization encouraged the originators to in -- or

17 decrease the loan to value, even if that policy existed it

18 would have had no effect on Ms. Mills' first loan.  Is that

19 correct?

20 A     That's right.

21        (Pause.)

22 Q     Have you personally reviewed Ms. Mills' response to

23 the debtors' objection to her administrative claim?

24 A     Yes, I have.

25 Q     And do you understand the arguments raised by Ms.

1 Mills in relation to the securitization of her mortgage?

2 A    Yes.

3 Q    Or her loans?

4 A    Yes.

5 Q    And what is your understanding of Ms. Mills' arguments

6 with respect to securitization of the loans?

7 A    Well, I found three allegations that were factually

8 incorrect:

9     First, she makes the allegation that the debtors

10 orchestrated a scheme to extract high down payments for the

11 securitization.  I believe I mentioned that the

12 securitization process and the origination process are two

13 independent business processes.  They are run by two

14 separate groups of people.

15     The origination process had their own underwriting

16 guidelines, and the origination of the loan is based on

17 those guidelines as well as the credit profile of the

18 borrower.  So they, themselves, would determine what LTV --

19 appropriate LTV should have.

20     The securitization process, which I was affiliated

21 with, is primarily a loan disposition function for American

22 Home.  So the process was basically whatever loans that we

23 have originated for the portfolio by the end of the quarter

24 we would securitize.  So there was no active policy that

25 would drive the origination process with respect to what

1  kind of LTVs that should be originated.

2  Q     And turning to Exhibit 295 --

3  A     Oh, okay.  The second factual -- or second allegation

4  that I think is factually incorrect is that she asserts that

5  the debtors tried to hide the delinquency of the Mills'

6  loans from the investors because that way the trust would

7  not have to be involved in the stay relief request of her

8  bankruptcy.  And I could tell you it's wrong because the

9  securitization operating agreements among all the parties

10  require that the securities administrator, which is Wells

11  Fargo for both securitizations, have to disclose the payment

12  status of every loan in the securitization.  And every month

13  the securities administrator publishes a report for the

14  investors which shows which loans are delinquent.

15  Q     And --

16  A     So -- go ahead.

17  Q     I apologize.

18          THE COURT:  And what was --

19  BY MS. ZIEG:

20  Q     If we can turn to Exhibit 295 it might help the judge

21  understand what you're talking about.

22          THE COURT:  Well, he -- you said there were

23  three.  What's the third?

24          THE WITNESS:  The third is she -- there's an

25  allegation that the debtors recovered proceeds from a

1  mortgage insurance policy.  The prospectus and the offering

2  circular indicate that the mortgage loans have mortgage

3  insurance, but only those mortgage loans whose LTV is

4  greater than eighty percent.  And I have reviewed the Mills'

5  first lien loan and the loan to value at the time of

6  origination was seventy percent.  So --

7          THE COURT:  But the cumulative -- the cumulative

8  one the value was over eighty, so does that matter?

9          THE WITNESS:  No.

10          THE COURT:  Why not?

11          THE WITNESS:  Because the mortgage insurance

12  requirement is based on the loan to value of the first lien,

13  and it was seventy so it wouldn't require.

14          Now mortgage insurance is not available on second

15  lien loans.  So neither loans would have had mortgage

16  insurance.

17          Now, of course, I didn't just rely on that.  I

18  actually had one of my colleagues at American Home, Eileen

19  Wanerka, and she actually verified that neither loans had

20  mortgage insurance in the securitization.

21          And, third, I actually examined the

22  securitization documents to see if there's pool level

23  insurance and there weren't any on either securitization.

24          THE COURT:  Okay.  What exhibit do you want to

25  go?

1          MS. ZIEG:  295, Your Honor.

2          THE COURT:  Okay.

3   BY MS. ZIEG:

4   Q    Mr. Sakamoto, there's an exhibit binder --

5   A    Okay.

6   Q    -- and if you'll turn to Exhibit 295 in that binder.

7        (Pause)

8   A    Okay.

9   Q    Mr. Sakamoto, can you tell me what this document is?

10  A    This is the monthly remittance report that Wells

11  Fargo, in the capacity of the securities administrator for

12  the securitization produces for the benefit of investors and

13  it shows the delinquency status of loans in the

14  securitization.  So the first page refers to the American

15  Home Mortgage assets, 2005-1.  It looks like it's the report

16  that was produced as of November 25th, 2005.

17  Q    And what's the source of this document?

18  A    This comes from the Wells Fargo, the securities

19  administration website, and this particular securitization

20  is a public deal so anybody has access to it.

21  Q    If you go eight pages into this document --

22  A    Okay.

23  Q    -- it says, Page 18 on the bottom, there's actually

24  two Page 18's, but can you -- it's the second 18.

25  A    Okay.

1          THE COURT:  Bates '07.

2          MS. ZIEG:  2107.  Yes.

3          THE WITNESS:  Yeah.  I'm there.

4    BY MS. ZIEG:

5    Q     And what is the date of this remittance report?

6    A     This is June 26th, 2006.

7    Q     And what is significant about this particular

8    remittance report?

9    A     It shows that the Mills' first lien loan, I think the

10   number is 0405, et cetera, that that particular loan on that

11   particular date was in -- the payment status was in

12   foreclosure.

13   Q     And are you speaking of the second line down where it

14   says, 0405465176?

15   A     Correct.

16   Q     And is that the AHM loan number for Ms. Mills' loan?

17   A     No.  This is the DLJ number that was used in the

18   securitization.

19   Q     And did you confirm that this was the number that DLJ

20   used for Ms. Mills' loan?

21   A     Yes, I did.  We looked at the original whole loan sale

22   of the loans from American Home to DLJ and that particular

23   funding memo had both the American Home loan number and the

24   DLJ number, and they matched to this report.

25   Q     And if you'll turn to Exhibit 296, please.

1   A       Okay.   I'm there.

2   Q       Can you tell me what this document is?

3   A       This is the monthly remittance report for the American

4   Home investment trust 2005-SD1 and, again, this is the

5   monthly report that's made available to investors in the

6   securitization, and it shows the delinquency status of the

7   loans.

8   Q       And what is the significance of a trust being a 2005-

9   SD1 trust?

10  A       Well, this particular securitization is a private

11  placement, so this report would only be available to actual

12  investors in the securitization.   Now American Home owned

13  the residual interest in the securitization so we had

14  authority to access this report.

15  Q       And what does SD mean in SD1?

16  A       It means scratch and dent.

17  Q       And what is a scratch and dent?

18  A       Scratch and dent is a securitization that -- that is

19  used to securitize loans that are delinquent, or loans that

20  were repurchased from original whole loan trades, or loans

21  that have deficiencies in some of their key documents.   So

22  as a result, this type of securitization is generally a

23  private placement sold to qualified institutional buyers

24  and, also, it involves higher level risk.   So, usually, only

25  a professional type investor would look at such a

1    transaction.

2    Q    And if you could turn six pages in on this document,

3    the Bates number at the bottom right-hand corner is 21-127.

4    A    Let's see.  How many pages?

5    Q    It's about six pages in, I think.  One, two, three,

6    four, five -- yes.  It says nineteen at the center.

7    A    Okay.

8    Q    And then at the bottom right-hand corner there's a

9    Bates number and the last three numbers of that Bates number

10   are 127.

11   A    Okay.

12   Q    Can you tell me what this document represents?

13   A    This is the monthly remittance report for the American

14   Home Mortgage investment trust 2005-SD1, which contains the

15   second lien loan, and it shows that as of June 26th, 2006,

16   the Mills' second lien loan was in foreclosure status.

17   Q    And I believe you testified that there were no

18   insurance claims made with respect to the foreclosure on

19   either of these loans?

20   A    Correct, because there were no insurance policies.

21   Q    Thank you.

22            MS. ZIEG:  I have no further questions.

23            THE COURT:  All right.

24            Any questions?

25            MR. STAMOULIS:  Yes, Your Honor.

1     THE COURT:  Okay.

2       CROSS-EXAMINATION

3 BY MR. STAMOULIS:

4 Q  Mr. Sakamoto, are you aware of who Mr. Strauss is?

5 A  Yes.

6 Q  In your role dealing with the securitization of these

7 loans, did you have occasion to review the press releases

8 that were issued by Michael Strauss concerning the

9 securitization of these loans?

10 A  No.

11 Q  No.  I would like you to turn to Exhibit 69, which is

12 in Volume II of the white binder.

13   (Pause)

14 A  Two-sixty-nine?

15 Q  I'm sorry.  Number 69 in Volume II of the white

16 binder.

17 A  Okay.

18 Q  And if you turn to Page -- by the way, this document

19 is a class action complaint that was filed against Michael

20 Strauss personally.  Were you aware of this complaint

21 existing?

22 A  Yes.

23 Q  Okay.  If you turn to Page 3 --

24 A  Is this the SCC complaint?

25 Q  This is not the SCC complaint, Your Honor.

1  A      Oh, then I'm not aware of it.

2  Q      Oh, you're not.  Oh --

3  A      I'm sorry.

4  Q      -- okay.  All right.  Well, if you turn to Page 3, it

5  has an excerpt of a press release issued by Michael Strauss.

6  The press release is dated July 26th, 2006, and I'm going to

7  read you a section that begins on Page 4.

8          MS. ZIEG:  Objection.  Hearsay.

9          MR. STAMOULIS:  I'm only going to --

10          MS. ZIEG:  It's a complaint.  It's what someone's

11  alleging in a complaint.

12          THE COURT:  You -- the document's in evidence.

13  You didn't object.  Overruled.

14  BY MR. STAMOULIS:

15  Q      Now in this press release that they quote from Michael

16  Strauss, they quote him as saying:

17          "We also continue to adhere to our core risk

18          mitigation strategies, including targeting a duration-

19          neutral matched book and purchasing mortgage insurance

20          to protect against credit losses.  Today,

21          approximately half of the loans we hold are insured,

22          either through borrower or lender-paid mortgage

23          insurance.  In addition to these core risk mitigation

24          strategies, we recently began hedging the value of our

25          mortgage service assets against the possibility of

1       declining interest rates."

2       Is it an accurate -- was that an accurate statement

3    that about half of the mortgages that you were securitizing

4    were insured?

5    A    The mortgages that we retain through securitization,

6    yeah.

7            THE COURT:  I -- I can't hear you.  I'm sorry.

8    Can you move the microphone a little closer?

9            THE WITNESS:  Okay.  The -- I believe the

10   mortgage insurance was purchased for loans that were

11   securitized for our own portfolio, but not for

12   securitization of loans that were securitized for sale to

13   other parties.

14   BY MR. STAMOULIS:

15   Q    Okay.  And you testified that this particular loan was

16   sold to DLJ?

17   A    Yes.

18   Q    Okay.  And DLJ securitized this loan?

19   A    Yes.

20   Q    And are you aware whether DLJ purchased mortgage

21   pooling insurance pursuant to the prospectus?

22   A    No.  I -- I already said that I examined both

23   securitizations and there's no pool insurance.  There's no

24   mortgage insurance at the loan level and there's no pool

25   insurance in the deal.

1  Q      And you -- you examined that on DLJ's side as well?

2  A      No.  I looked at the securitization operating

3  documents.  Those are the only documents.

4  Q      Okay.  But you don't know whether DLJ organized for

5  the purchase of mortgage pooling insurance for the loans

6  that it securitized?

7  A      It would be disclosed in the operating documents and

8  there weren't any disclosure.

9  Q      Okay.  So the prospectus disclosed that pooling

10 insurance would be purchased, but the operating agreement --

11 A      No.  Actually, the prospectus does not say that pool

12 insurance was purchased.

13 Q      It said that it would be purchased.

14 A      No.  It wouldn't -- it didn't say that.  I said that I

15 examined the securitizations documents and neither

16 securitizations had pool insurance.

17 Q      My question, does the prospectus state that pool

18 insurance would be purchased?

19 A      No.

20 Q      Let's go to the prospectus, which is Exhibit Number 38

21 in the first binder.

22        (Pause)

23 Q      You know what?  I'm going to skip this.  I'm not going

24 to fight over insurance at this point.

25 A      So are we done with this?

1   Q      Yeah.  We're done with this.

2          If you would turn to Exhibit 41 in the first binder.

3              MS. ZIEG:  I'm sorry, Stan.

4              MR. STAMOULIS:  Exhibit 41.

5   BY MR. STAMOULIS:

6   Q      Are you familiar with Exhibit Number 41?

7   A      Yes, I am.

8   Q      And this is the servicing agreement under which the

9   debtors serviced the 980 loan.  Is that correct?

10  A      This is the SD1 so it would be for the second lien

11  loan.  Yeah.

12  Q      Okay.  If you turn to the page Bates numbered 18386.

13  A      Okay.

14  Q      Do you see that there there's a Section 3.14 and a

15  Subsection (a) on that page?

16  A      Yes.

17  Q      Okay.  If you follow down one -- nine lines --

18              THE COURT:  Subsection (a).

19              MR. STAMOULIS:  Yes.  In Section (a).

20  BY MR. STAMOULIS:

21  Q      There is a sentence that begins, "Indenture trustee,"

22  or a line that begins, "Indenture trustee."  Do you see

23  that?

24  A      What, 3.14(a)?

25  Q      Yes.

1  A     Well, I found 3.414(a).  It says, "Indentured trustee

2  to cooperate."

3  Q     That's the name of the section.

4  A     Yeah.

5  Q     I would like you to go down nine lines in that

6  section.  There's a line that begins with the word,

7  "Indenture trustee."

8  A     Okay.

9  Q     Do you see that line?

10 A     Yeah.

11 Q     Okay.  It states in this servicing agreement:

12 "Indenture trustee shall release the related mortgage file

13 to the servicer or subservicer."  Now the subservicer here

14 is American Home Mortgage Servicing.  Is that right?

15 A     The subservicer?

16 Q     I'm sorry.  The servicer is American Home Mortgage --

17 A     Yeah.  The servicer --

18 Q     -- Servicing.

19 A     -- is American Home.

20 Q     Okay.  So:

21        "The indenture trustee shall release the related

22        mortgage file to the servicer or subservicer and

23        execute and deliver to the servicer, without recourse,

24        representation or warranty the request for re-

25        conveyance, deed of re-conveyance, or release or

1        satisfaction of mortgage or such instrument releasing

2        the lien of the security instrument."

3    Did I read that sentence correctly?

4            MS. ZIEG:  Objection, Your Honor.  This is

5    outside the scope of direct.  This relates to servicing of

6    the loan, not securitization of the loan.

7            MR. STAMOULIS:  I'm going to get there real

8    quick, Your Honor, with --

9            THE COURT:  Okay.

10           MR. STAMOULIS:  -- how this is relevant.

11           THE COURT:  All right.

12           MR. STAMOULIS:  Okay.

13           THE COURT:  So that's what the sentence says?

14    All right.

15           MR. STAMOULIS:  All right.  So that's what the

16    sentence says.

17    BY MR. STAMOULIS:

18    Q    I would also like you to -- to turn the page and go

19    to Section D, and the first sentence in Section D states:

20        "The indenture trustee shall execute and deliver to

21        the servicer any court pleadings, requests for

22        trustee's sale, or other documents prepared and

23        delivered to the indenture trustee."

24    Did you -- did I read that sentence correctly, or at

25    least that part of that sentence correctly?

1   A      Yeah.   That's what it says here.

2   Q      Okay.

3   A      Yeah.

4   Q      So pursuant to this servicing agreement, if a loan

5   went into foreclosure, all the debtors would have to do

6   would be go to the indenture trustee or -- and they would be

7   able to get them to sign on behalf of the true owner of the

8   note, any documents that were necessary for them to go

9   forward with the foreclosure?

10          MS. ZIEG:   Objection, Your Honor.   The document

11  speaks for itself, and objection on the basis that it's a

12  compound question.

13          THE COURT:   Overruled on both counts.

14          Do you understand the question?

15          THE WITNESS:   No, I don't understand.

16          THE COURT:   All right.

17          THE WITNESS:   Could you be a little more

18  specific?

19          THE COURT:   Could you rephrase?

20          MR. STAMOULIS:   Yeah.

21  BY MR. STAMOULIS:

22  Q      Is it your understanding of this agreement that the

23  indenture trustee and the beneficial owners of the

24  securitized notes would cooperate with the servicer in its

25  foreclosure efforts?

1  A      Well, my understanding is that the servicer's role in

2  the securitization is to service the loans, including they

3  have the discretion to foreclosure on a loan if it's

4  necessary.

5  Q      But this is an obligation not of the servicer in this

6  agreement.  This is an obligation of the beneficial owners

7  or the indenture trustee, is it not?

8  A      Well, I actually haven't read this section.

9          MS. ZIEG:  Objection.  Calls for a legal

10 conclusion.

11          THE COURT:  Sustained.

12 BY MR. STAMOULIS:

13 Q      Servicing never went to American Home Investment Trust

14 2005 SD1 to ask them to execute any documents that they

15 could forward with the foreclosure of the 980 loan, did

16 they, sir?

17          MS. ZIEG:  Objection.

18          THE WITNESS:  I'm not the servicer, so I don't

19 know the answer to that question.

20          THE COURT:  All right.  Well, the objection's

21 overruled and the answer is I don't know.

22          THE WITNESS:  I don't know.  I'm not the

23 BY MR. STAMOULIS:

24 Q      Okay.  If you'll turn to Exhibit 34 in the first

25 binder.

1        (Pause)

2    A    Okay.

3    Q    This is the motion brought for relief of the stay on

4    behalf of American Mortgage Acceptance, Inc. to foreclosure

5    on the 980 loan.  Have you ever seen this document before,

6    sir?

7            MS. ZIEG:  Objection, Your Honor.  Outside the

8    scope of direct examination.

9            THE WITNESS:  No, I haven't.

10           THE COURT:  No.  No.  No.  Wait a minute.  Wait a

11   minute.  Do you have a response to that?

12           MR. STAMOULIS:  Yes, Your Honor.  During direct

13   he specifically discussed the communications that were being

14   made by the servicer to the trust regarding the deficiencies

15   in the loans.

16           THE COURT:  Yes.

17           MR. STAMOULIS:  And I want to follow up and say

18   while the deficiencies were being reported, the servicer

19   never sought cooperation when they could have to get the

20   proper movant in front of the Court.

21           THE COURT:  All right.  I understand.  Overruled.

22           And what was the answer, sir?  I forget.  I'm

23   sorry.

24           THE WITNESS:  What was the question?

25           THE COURT:  Leslie.

1  BY MR. STAMOULIS:

2  Q      Well, the question was --

3          THE COURT:  Never mind.  Go ahead.

4  BY MR. STAMOULIS:

5  Q      Have you seen this document before?

6  A      No, I haven't.

7  Q      Okay.  Are you aware that the party that moved for

8  relief from the stay in Ms. Mills' personal bankruptcy with

9  regard to the 980 loan was American Home Mortgage

10 Acceptance, Inc?

11         MS. ZIEG:  Objection.  Lacks foundation.  He just

12 said he's never seen this document before.

13         THE COURT:  Well, he may other -- have other

14 information.  Overruled, if you know.

15         THE WITNESS:  Yeah.  I've heard of it.

16 BY MR. STAMOULIS:

17 Q      And are you aware, sir, if in this document, on Page

18 34 -- I'm sorry -- Document 34, Page 10 of 25 --

19 A      What page is that?

20 Q      On the top there's a line item that should say, "Main

21 Document, Page X of 25."  There's a header.

22 A      Wait.  Are we looking at Tab 34.

23 Q      And so I'm talking about Page 10 of 25.

24         MS. ZIEG:  Oh, 10.  I'm sorry.  I thought you

25 said 24.

```
 1              THE WITNESS:  Which?

 2              MS. ZIEG:  Did you say 10?

 3              MR. STAMOULIS:  Exhibit 34, Page 10 of 35.

 4              THE WITNESS:  Oh.  What page?

 5              MS. ZIEG:  Ten of 35 or ten of 25?

 6              THE COURT:  Wait a minute.  We're going to have a

 7   hopeless transcript here.  Where are we?

 8              MR. STAMOULIS:  Your Honor, unfortunately, this

 9   document is not Bate stamped.

10              THE COURT:  We're at --

11              MR. STAMOULIS:  Exhibit --

12              THE COURT:  -- Exhibit 34 and you want him to

13   look at 10 of 25?

14              MR. STAMOULIS:  That's correct, sir.

15              THE COURT:  All right.  Which is -- okay.  Got

16   it.

17              Ms. Zieg, you on board?

18              MS. ZIEG:  I am now.  He said --

19              THE COURT:  Very good.

20              MS. ZIEG:  -- thirty -- ten of 35.  That's why I

21   --

22              THE COURT:  I know he did.

23              MS. ZIEG:  -- couldn't understand.

24              THE COURT:  Okay.

25              MR. STAMOULIS:  I apologize, Your Honor.
```

1          THE WITNESS:  Okay.  I'm there.

2  BY MR. STAMOULIS:

3  Q     Sir, this is a document that American Home Mortgage

4  Acceptance, Inc. executed under penalty of perjury stating

5  that they owned the 980 loan that was submitted to the

6  bankruptcy court in California.

7          MS. ZIEG:  Objection.  It assumes facts not in

8  evidence.

9          THE COURT:  My copy isn't signed.

10          MR. STAMOULIS:  I believe it was efiled, Your

11  Honor.

12          THE COURT:  Well, the -- I don't -- I don't know

13  the process in California, but it says what it -- well, the

14  -- first of all, you interrupted him again because I don't

15  think he was done with his question.  That was the opening

16  clause.

17          Second of all, it says what it says.  So let's

18  ask the question.

19  BY MR. STAMOULIS:

20  Q     Sir, pursuant to the servicing agreement, this

21  declaration could have been signed by someone from American

22  Home Mortgage Investment Trust 2005 SD1, could it not have?

23          THE COURT:  If you know.

24          MS. ZIEG:  Objection, Your Honor.  Calls for

25  legal conclusion.

1          THE COURT:  If you know.

2          THE WITNESS:  I don't know.  I'm not -- I'm not

3 the servicer.  I've never worked as a servicer.  I never

4 worked as a foreclosure agent, so, you know, you're asking

5 me something that I don't have any experience.  So the

6 answer is, no.  I don't know.

7 BY MR. STAMOULIS:

8 Q    In your experience with securitizing these loans, are

9 you aware of any instance where the servicer wanted to get

10 to the trustee to have the trustee execute an affidavit of

11 ownership to be submitted in connection with moving for

12 relief from a bankruptcy stay?

13 A    I don't have any experience whatsoever.  The only

14 thing I know is the servicer's function, is hired by the

15 trust to service the loans, which includes foreclosure.

16 Beyond that, I don't know the details.

17 Q    Thank you, sir.  That's fair enough.

18      If you turn to page -- to Exhibit 34 in your second

19 white binder.

20      (Pause)

21 Q    And, sir, I would like for you to go to the next to

22 the last page of this exhibit.

23 A    Okay.

24          THE COURT:  And this is the chart relating to

25 Loan 928512?

1          MR. STAMOULIS:  Yes, Your Honor.

2          THE COURT:  Okay.

3          THE WITNESS:  Okay.

4   BY MR. STAMOULIS:

5   Q    Are you aware -- are you -- I'm sorry.  Let me start

6   again.  Mr. Sakamoto, are you familiar with the chain of

7   title that is associated with the 512 loan?

8   A    Yes, I am.

9   Q    So you're aware that on the same day that the loan was

10  funded it was transferred from Acceptance to American Home

11  Mortgage Corp.  Is that right?

12  A    Well, I worked on --

13         MS. ZIEG:  Objection, Your Honor.  It

14  mischaracterizes the document.

15         THE COURT:  How does it mischaracterize the

16  document?

17         MS. ZIEG:  He said, the same day it was funded it

18  was transferred to American Home Mortgage Corp.

19         THE COURT:  Yeah.

20         MS. ZIEG:  It was funded by American Home

21  Mortgage Corp.

22         THE COURT:  No.  Well, that's not what it says.

23  "Loan funded wire" --

24         MS. ZIEG:  Oh, I'm on the wrong exhibit.

25         THE COURT:  -- "American Home Mortgage

1   Acceptance, Inc."

2           MS. ZIEG:  I'm sorry.  I'm on the wrong page.  I

3   apologize, Your Honor.

4           THE WITNESS:  Well, I'm familiar with this chart

5   because I worked on part of it.   But then as far as, you

6   know, your question, it says what it says, though.

7   BY MR. STAMOULIS:

8   Q     Okay.  Now is American Home Mortgage Corp. -- why are

9   loans transferred to that entity?

10  A     I don't really know.

11  Q     Does the fact that this loan was transferred to that

12  entity indicate that it was predestined for securitization

13  in any way?

14  A     No.  I don't think you can make that determination.

15  This --

16  Q     So -- so the determination to securitize this note

17  came about two months later at the end of September.  Is

18  that accurate?

19  A     Well, based on the transfer it looks like it was sold

20  to DLJ.  So they made the decision to securitize, not us.

21  Q     Okay.  When would that decision to securitize this

22  note have been made?

23  A     I don't really know the answer.  It's their decision.

24  Q     But the reason why it was securitized, I believe you

25  testified on direct, is because that it fit into a certain

1  profile and category of loans that were designated for

2  securitization.  Is that right?

3           MS. ZIEG:  Objection, Your Honor.  Misstates the

4  testimony.

5           THE COURT:  Overruled.

6           THE WITNESS:  Now what's the question?

7  BY MR. STAMOULIS:

8  Q    Sir, did you testify on direct that --

9  A    I testified that --

10 Q    -- there were certain characteristics --

11 A    Yeah.  I testified I didn't work on these two

12 securitizations.

13 Q    You did testify generally, though, that there were

14 certain characteristics that loans had to meet in order to

15 be securitized.  Is that right?

16 A    Well, I testified that certain loan types would be

17 suitable for the portfolio and for the subsequent

18 securitization.

19 Q    And one of those -- and was there any special scrutiny

20 of the loans that were being securitized to make sure that

21 they met those characteristics?

22           MS. ZIEG:  Objection, Your Honor.  Vague.  By

23 whom?

24           THE COURT:  Do you mean generally speaking?

25           MR. STAMOULIS:  Generally speaking, Your Honor.

1          THE WITNESS:  Well, only to the extent that it

2   met certain characteristics.  For example, the portfolio

3   would accumulate loans that were easy to manage in terms of

4   interest rate risk.  So, generally, we securitized arms,

5   hillocks, option arms, and less fixed rate.

6   BY MR. STAMOULIS:

7   Q     But prior to selling these loans to a company like

8   DLJ, would someone go through and make sure that each and

9   every one of them met the characteristics that DLJ wanted to

10  purchase?

11         MS. ZIEG:  Objection, Your Honor.  This relates

12  to origination or the investment division because it was the

13  origination division that sold this loan.

14         THE WITNESS:  Well, first of all, the investment

15  division doesn't sell loans.

16         THE COURT:  Well --

17         MS. ZIEG:  I'm not --

18         THE COURT:  You know, when she objects usually --

19         MR. STAMOULIS:  Yeah.

20         THE COURT:  -- you're supposed to wait.  But --

21         THE WITNESS:  Right.  Oh, sorry.

22         MS. ZIEG:  I just want the question to be clear

23  to Mr. Sakamoto about what specifically Mr. Stamoulis is

24  talking about because he's -- I believe the witness is

25  thinking in terms of the investment division and I think

1  you're talking in terms of origination.

2          THE COURT:  You know what?  Rephrase.  Try to be

3  as specific as possible with your question.

4  BY MR. STAMOULIS:

5  Q    Mr. Sakamoto --

6          THE COURT:  I'm not sure I agree with the

7  characterization in the objection, but why don't you ask it

8  again as precisely as possible.

9          MR. STAMOULIS:  Thank you, Your Honor.  I will

10  attempt to do so.

11  BY MR. STAMOULIS:

12  Q    Mr. Sakamoto, would -- would the securitization

13  division review loans and the characteristics of those loans

14  prior to those loans being sold to a company like DLJ for

15  securitization?

16  A    Well, this particular loan, it appears that it was --

17  Q    I'm not asking about this particular loan.  I'm just

18  asking for what -- whether there was a procedure or a

19  process in place in the securitization division?

20  A    Well, it's generally the type of loans that we

21  originate for the portfolio we would review.

22  Q    Okay.  And now what about the type of loans that are

23  sold to a company like DLJ to securitize, would they be

24  reviewed?

25  A    No, because that's not really the purview under my

1  area.  It would be done by the origination side of the

2  business.

3  Q    Okay.

4  A    So they -- they clearly originate it, the loan, and

5  they sold to DLJ.  We have nothing to do with it.

6  Q    I see.  So someone in -- now do you know, Mr.

7  Sakamoto, whether anyone -- whether origination had a

8  procedure in place where they would review the

9  characteristics of the loan to make sure that they fit the

10 needs that their buyers were looking for, such as DLJ?

11 A    I don't' know any procedures.  But, you know, just

12 from a general business prospective I'm sure they had.  But,

13 you know, again, that's just, you know, anybody's guess.

14 Q    Okay.  So -- and you said one of the characteristics

15 during your testimony that is used in these loans is credit

16 score.  Is that right?

17 A    Yeah.

18 Q    Okay.  And so if a loan was being packaged up and sold

19 to a party like DLJ and that loan had a forged or a fake or

20 an altered credit score, that would not be acceptable, would

21 it?

22        MS. ZIEG:  Objection, Your Honor.  Calls for

23 speculation.  He just said he doesn't know what origination

24 would do.

25        THE COURT:  Sustained.  I think we're beyond the

1  scope of direct, too --

2            MR. STAMOULIS:  Okay.

3            THE COURT:  -- at this point.

4            MR. STAMOULIS:  Your Honor, I have no further

5  questions.

6            THE COURT:  All right.  Any redirect?

7            MS. ZIEG:  No, Your Honor.

8            THE COURT:  All right.  Thank you.  You may step

9  down, sir.  Thank you.

10            Any further witnesses?

11            MR. BEACH:  No, Your Honor.

12            THE COURT:  And all the documentary evidence is

13  in place, right?

14            MS. ZIEG:  Yes, Your Honor.

15            THE COURT:  All right.  We're going to close the

16  evidentiary record?

17            MR. STAMOULIS:  Yes, Your Honor.

18            THE COURT:  Okay.  How should we proceed?  We've

19  got a little over an hour.

20            Mr. Beach, do you want to make your closing?

21            MR. BEACH:  Sure, Your Honor.  It's his case so I

22  would --

23            THE COURT:  Well, all right.  How do we want to

24  proceed, then?

25            MR. BEACH:  -- suggest he goes first and --

1              MR. STAMOULIS:  I might -- I might be a little

2    bit longer, so I don't know how -- I'm very conscious of

3    Your Honor being able to get out of here on time.  So --

4              THE COURT:  Well, I don't want to interrupt you

5    in the middle of -- I don't want to interrupt you in the

6    middle of your summation, but I'll have to if it's 11:15 and

7    you're not finished.  So we can either start now or we can

8    start at 12:30.  I have a short drive home.  Your client has

9    a long flight and I'm sure you have a long -- well, some

10   people have long flights, et cetera.

11             Do you want to take a recess and talk about it?

12             MR. BEACH:  Sure, Your Honor.  We can take a

13   brief recess.

14             THE COURT:  All right.  Just let me know.  I

15   don't want to interrupt anybody.  All right.  I don't think

16   that's fair, but -- and I'm happy to start at 12:30.  That's

17   fine, or we can start in five or ten minutes but I don't --

18             MR. STAMOULIS:  Your Honor, I think --

19             THE COURT:  -- I don't want to interrupt anyone.

20             MR. STAMOULIS:  I'm sorry, Your Honor.  We can

21   figure something out in five minutes.

22             THE COURT:  All right.

23             MR. STAMOULIS:  Thank you.

24             (Recess)

25             THE CLERK:  All rise.

1           THE COURT:  Please be seated.

2           You may proceed.  I understand.

3           MR. BEACH:  Your Honor, just -- I just wanted to

4    make one comment.  The committee has just a few minutes of

5    comments at the end as well, but we think we can all get

6    done within the hour.

7           THE COURT:  I am walking off the bench at 11:15.

8           MR. BEACH:  Understood, Your Honor.

9           THE COURT:  Go ahead.

10          MR. STAMOULIS:  All right.

11          May it please the Court?

12          First, Your Honor, on behalf of Ms. Mills I would

13   like to sincerely thank you for giving us the opportunity to

14   fully and fairly present our case.  Obviously you've heard

15   the testimony and Ms. Mills has been dealing with this issue

16   for a long time coming and she genuinely and truly

17   appreciates the opportunity to be heard in court fully and

18   fairly.

19          I'll start right in, Your Honor.  We raise a

20   number of points in this case, the first of which is the

21   loan was fraudulently originated.

22          Your Honor, I believe the evidence establishes

23   that Ms. Lettau was the agent of the debtors.  Debtors' own

24   witness testified that the loans were sold -- that the loans

25   from the warehouse division were sold by the brokers and

1   that this -- these were warehouse loans, and that the

2   warehouse division employees did not communicate with the

3   employee -- with the borrowers and, in fact, were not

4   allowed to communicate with the borrowers.  All the

5   communications that borrowers had had to go through the

6   broker, which in this case was Ms. Lettau.  So Ms. Lettau

7   was the only link between Ms. Mills and AHM and we believe

8   that that makes it unreasonable to argue that she was not an

9   agent, if she was the only vehicle for communication.

10          Your Honor, the terms of the loan presented to

11  Ms. Mills were misrepresented to her.  Ms. Mills was told

12  that she had a 660 credit score.  Everything was priced for

13  her score to be 660.  She signed loan applications for both

14  of those loans on the 15th that stated -- that were based on

15  terms of having a 660 credit score.  They knew her house was

16  in escrow at that point.  Paragraph 19 of the stipulated

17  facts states that debtors knew that she was paying -- or

18  debtors admit that she was paying 350 per day since July 6th

19  to keep that house in escrow.  So everyone knew that time

20  was of the essence.

21          Now, they claim that as early as July 10th of

22  2005 they knew that her credit score was 659 and that they

23  told Lettau that her credit score was 659 on July 12th, yet

24  they waited until the afternoon of the 15th to change the

25  loan terms on Ms. Mills.

1           Your Honor, even if Ms. Mills always had this 659

2    credit score, the course of dealings here is the definition

3    of a classic bait and switch.  You know, they had -- they

4    had Ms. Mills where they wanted her.  They got her to

5    commit, and then they changed the deal on her at the last

6    minute when she had very little recourse to do anything

7    else.

8           And, Your Honor, we ask you to consider the

9    question of whether her credit score really always was 659.

10   Obviously, the credit score is important for a number of

11   reasons.  It's important for the securitization of the note.

12   It's important for the terms of the loan that's being

13   offered.  We presented Exhibit 12 which is a credit score

14   report and that document, Your Honor, has to be generated

15   pursuant to the Fair Credit Reporting Act.  This -- it's a

16   legally required document, and that document reported to Ms.

17   Mills that her credit score was 660.

18          And so we ask Your Honor to consider the

19   important nature of this legal document in giving your

20   weight to this computer error and the time when certain

21   things were printed to determine whether or not Ms. Mills

22   always did have a 659 credit score.

23          THE COURT:  Uh-huh.

24          MR. STAMOULIS:  Your Honor, we also believe that

25   we've established enough evidence showing that Ms. Mills was

1   promised this $50,000 as a lifeline in exchange for taking

2   these exception terms.  She's always been consistent in her

3   recollection of that promise.  Mr. Esquivel corroborated

4   that promise.

5          You know, when you look at the facts of this

6   situation, Your Honor, I mean, should she have demanded that

7   promise in writing?  It's -- I mean, maybe, but at the time,

8   time was running out and the facts show that she got to

9   Lettau's office on the morning of the 18th and received

10  enough assurances to make her go and sign the papers on the

11  afternoon of the 18th.  And, in fact, Mr. Martinez confirmed

12  that AHM's own records show Ms. Mills calling in October as

13  per the agreement, or what she alleges to be the agreement,

14  to access this equity in her home.

15         So we submit that there -- there is enough

16  evidence to support that this $50,000 was offered to her as

17  a basis to get her to sign and take this loan.

18         Your Honor, with regard to the foreclosure, we

19  believe that we've established conclusively that that

20  foreclosure was technically defective.  There's no question

21  that the wrong party moved for relief from the stay order in

22  Ms. Mills' bankruptcy.  And during their case, debtors made

23  a big deal about how Ms. Mills could have called MERS and

24  could have investigated the chain of title and could have

25  found out who really owned her loan and contested the motion

1    for relief from the stay.  But that ignores the fact that

2    debtors actually knew.  They knew at the time.  They knew

3    who owned this loan.  They knew the whole time, Your Honor,

4    and Exhibit 34 which was the motion for relief from the stay

5    includes a declaration that was signed under penalty of

6    perjury that Acceptance owned the loan.  And that wasn't

7    true.  Acceptance did not own the loan at the time, did not

8    have an interest in the loan at the time, and yet they moved

9    for the stay and got the Court to issue the order granting

10   the stay.

11          And, Your Honor, in our opposition -- in our

12   response to their objections we cite to the case In re:

13   Macelli (phonetic), which is found at 378 B.R. 19, and in

14   that case, that's the bankruptcy court in Connecticut

15   denying leave for relief from a stay because the wrong party

16   -- the party without an interest in the property was moving

17   for that relief.

18          And there the Court stated, and I quote:  "It is

19   the lender's responsibility to comply and the Court's

20   responsibility to ensure compliance."  And that quote was

21   made in the context of the representations as to who owns

22   the property when you move for relief from the stay.  So

23   this a duty that was on the lenders when they moved for a

24   stay to make sure that they were bringing the right party.

25          And as we demonstrated with Mr. Sakamoto, there

1  was -- there was no excuse for why the right party couldn't

2  have signed the motion.  They absolutely had a duty to

3  cooperate with the trust.  They absolutely could have gone

4  to the trust and gotten the right parties to sign that

5  motion.  They knew who owned the -- who had an interest in

6  the property at the time of the foreclosure, and they didn't

7  do it.

8          And it -- we'll settle this.  We also cite to

9  cases in our motion for summary judgment that as a result,

10  that's an action taken in violation of the stay and is --

11  the action is void ab initio.  So the foreclosure was never

12  effective.

13          But, Your Honor, even if you don't want to reach

14  the issue of this violation of the stay, there's an

15  alternate reason why this foreclosure is defective.  A

16  secondary reason that we raised in our motion for summary

17  judgment is based on the substitution of trustee document

18  and there we -- in our summary judgment motion we cite to In

19  re: Walker.  In re: Walker states that execution of a

20  substitution of trustee without ownership of the note is

21  void under California law.

22          Now Mr. Adleson took the stand yesterday and we

23  presented him with a copy of California Civil Code 29-34 and

24  it's Exhibit 100.

25          (Pause)

1          MR. STAMOULIS:  And, Your Honor, that section

2    states that, "In executing" -- I'm sorry.  It's 29-34(a).

3    That makes a big difference, apparently, in California.

4    That's a separate statute.

5          So California Civil Code 29-34(a), and that

6    statute talks about who has to sign a substitution of

7    trustee.  And it -- it states:  "The substitution executed

8    and acknowledged by, (A) All of the beneficiaries under the

9    deed of trust or their successors in interest" -- and then

10   I'm skipping ahead -- "or (b) the holders of more than fifty

11   percent of the record beneficial interest of a series of

12   notes secured by the same real property."

13         Now, Your Honor, if you -- if you look at the

14   deed of trust, which is Exhibit 25, and we establish with

15   both Mr. Martinez and with Mr. Adleson that there are two

16   beneficiaries under the deed of trust.  The deed of trust

17   has MERS as a beneficiary, as a nominee of the lender, and

18   it has the lender as a beneficiary under the deed of trust.

19   And we went through with Mr. Adleson and he admitted the

20   lender is a beneficiary under the deed of trust.

21         Under 29-34(a), either all of the beneficiaries

22   under the deed of trust have to sign the substitution of

23   trustee or the one beneficiary that has at least a fifty

24   percent beneficial interest in the property.

25         Now we established -- in fact, debtors

1   established that the chart in Exhibit 64 that shows the

2   transfer of beneficial interest, the beneficial interest at

3   the time the substitution of trustee was executed was held

4   by American Home Mortgage Investment Trust 2005 SD-1, and

5   the substitution of trustee is found at Exhibit 44 in our

6   volume.  There's only one signature on that substitution of

7   trustee, Your Honor, and that's MERS.  So it doesn't comply

8   with either (a) or (b) of 29-34(a).  It is only signed by

9   MERS.

10          And as a result, the actions taken -- and you saw

11  the whole flow chart.  Everything starts with that

12  substitution of trustee and then goes forward.  As Mr.

13  Adleson showed, all of those subsequent steps were all taken

14  by Cal Western.  They're all void.

15          And, Your Honor, I point you to Ung versus

16  Kohler, which is found at 135 Cal App 4th 186.  It's a First

17  District Appellate Division dated 2005 in California, and I

18  quote from that case:

19              "Because non-judicial foreclosure is a drastic

20              sanction and a draconian remedy, the statutory

21              requirements must be strictly complied with and a

22              trustee sale based on statutorily deficient

23              notice is -- of default is invalid."

24          So, Your Honor, the notice of default in this

25  case was -- is invalid because it was signed by Cal Western.

1  They were never properly made the substitution of trustee.

2         Your Honor, that -- that brings me to -- so we've

3  established a fraud -- we believe we've established a fraud

4  in the origination of the loan.  We've established improper

5  foreclosure.  You know, how do they relate to this

6  bankruptcy.  Your Honor, we believe that there is sufficient

7  post-petition conduct of the debtors to justify an

8  administrative expense claim here.

9         They foreclosed on the property and they held

10 that property -- the title to that property and declared

11 that that title was unencumbered free and clear.  Your

12 Honor, they used that property as collateral to secure their

13 debtor-in-possession financing.  You know, they listed it as

14 an unencumbered asset on their schedule and they borrowed

15 against it.  In fact, it's one of the largest unencumbered

16 assets on their schedules.

17        They also liquidated that property for $813,000 -

18 - $813,750, which netted them $634,954.  So that -- both

19 listing it in order to secure debtors-in-possession

20 financing and liquidating it to generate the $634,000 both

21 benefited the estate post-petition based on a property that

22 they should not have had title to.

23        Your Honor, another point with regard to the

24 post-petition conduct of the debtors is the credit report

25 hits on Exhibit 79 showing that these hits continued in

1   violation of the stay order in Ms. Mills' bankruptcy and it

2   was post-petition conduct because it continued from the time

3   of the petition date in August of '07 up until servicing.  I

4   don't know the -- I know that there was some dispute and an

5   appeal as to when servicing was ultimately sold by the

6   debtors, but it did continue through the time servicing was

7   sold.

8           THE COURT:  When did she get her discharge, '07?

9           MR. STAMOULIS:  Your Honor, she got her discharge

10  in, I believe it was --

11          THE COURT:  July of '07?

12          MR. STAMOULIS:  -- July of 2007.

13          THE COURT:  Okay.

14          MR. STAMOULIS:  Okay.

15          Your Honor, debtors raise a number of equitable

16  defenses and if Your Honor continues the equities, we

17  believe the equities here favor Ms. Mills.

18          First, she did not intentionally commit fraud on

19  her loan application.  The testimony makes clear there was

20  no intent.  And indeed, Your Honor, the loan application

21  that she submitted was not even the one that corresponded to

22  the product that she was sold.  You heard Mr. Adleson say

23  here yesterday that the -- your legal obligations regarding

24  to your statements on your loan application attach when you

25  file your final loan application, that it represents the

1   product that you're buying.

2           I mean, that's -- that might be hyper-technical,

3   Your Honor, but at the end of the day the application -- the

4   statements on her loan application had to be material, had

5   to be relied upon and, Your Honor, we submit that there --

6   that there was no intent and that there really hasn't been

7   any evidence -- they have not produced any underwriting

8   standards.  They have not showed you what the income cut-

9   offs were.  We don't know if her hundred-and-fifteen-

10  thousand-dollar net income would have qualified her for a

11  loan.  So, you know, I have not seen underwriting standards

12  produced that show the exact cut-off to whom these loans

13  were offered to.

14          And also, Your Honor, this -- this theory about

15  Ms. Mills lying on her loan application to get debtors'

16  money, it really doesn't make sense.  I mean, there's no

17  logical reason why Ms. Mills' would lie to get a loan for a

18  home that she couldn't afford and would eventually be

19  foreclosed on.

20          THE COURT:  But she did.  She did.  Forget lied.

21          MR. STAMOULIS:  Yeah.

22          THE COURT:  She did ask for a loan on a home she

23  couldn't afford, frankly, based on what her real financial

24  situation was.  So to say it doesn't make sense, perhaps it

25  doesn't, but it was done.

1          MR. STAMOULIS:  Okay.  Well, Your Honor, I submit

2    that -- that at the time based on the conditions that she

3    thought were going to exist, she believed that she could

4    afford this home, and this is not a situation where she had

5    no skin in the game.  I mean, you know, she came to the

6    table with $262,000.

7          THE COURT:  That she borrowed.

8          MR. STAMOULIS:  She borrowed $162,000 of it, Your

9    Honor.  $100,000 came out of her pocket and Mr. Esquivel's

10   pocket.  So, you know, this was not a zero percent down

11   situation.  I mean, she lost a lot -- all -- all of her

12   money.

13         THE COURT:  I understand.

14         MR. STAMOULIS:  Okay.

15         THE COURT:  And maybe I'm missing your point,

16   which was --

17         MR. STAMOULIS:  That there's no incentive.  I

18   mean, I --

19         THE COURT:  No incentive to do what?

20         MR. STAMOULIS:  To lie, to lie on her loan

21   application.

22         THE COURT:  Of course there is.  She wanted the

23   house.  It's her dream home.  It's a -- I must -- and I

24   should tell the parties, you know, I got on Google and I

25   found some pictures of some of the homes in the neighborhood

1  and some that are for sale and they're absolutely beautiful.

2  It's a beautiful location.  I completely understand wanting

3  to live there.  And she wanted that house and if -- of

4  course she had an incentive to get financing for it.  She

5  was paying $350 a day.  She wanted to go to closing.  She

6  had every incentive to do -- I'm not saying that -- and this

7  is separate -- this is a separate point.  I'm addressing

8  your incentive issue.

9          MR. STAMOULIS:  Right.  Okay.

10          THE COURT:  She had every incentive to do

11  whatever she had to do to get the financing.  And I

12  understand that she believed that her fortunes -- her

13  employment situation and Mr. Esquivel's would continue to

14  allow them to -- to service that loan.  But of course she

15  had every incentive to get the loan.  And she had every

16  incentive to do what she needed to do to get the loan.

17          MR. STAMOULIS:  All right, Your Honor.  Well --

18          THE COURT:  Well, you know, this is argument.

19  You can tell me I'm wrong, but --

20          MR. STAMOULIS:  I mean -- well, Your Honor may

21  believe that there was incentive.  We believe that there --

22  that there was no intent to lie; that there was no intent to

23  deceive here; that she signed the documents that gave them

24  access to her tax returns; that she did everything that was

25  asked of her; and that she was up front with debtors with

1   regard to her condition.

2           Your Honor, with regard -- now I would like to

3   turn to damages briefly.  Your Honor, we've raised a claim

4   under Section 23-94 of the California Civil code which

5   permits actual and punitive damages for the fraud in this

6   case.  Her actual damages, I think, are pretty clear which

7   is this $262,000.  The harm that she suffered is

8   immeasurable and we believe that --

9           THE COURT:  All right.  So the 262 is the actual

10  money put down to --

11          MR. STAMOULIS:  Yes.

12          THE COURT:  It's the deposit.

13          MR. STAMOULIS:  Yes.

14          THE COURT:  It's not total closing costs?

15          MR. STAMOULIS:  No.  It's -- 212 is the deposit,

16  plus about $50,000 in closing costs.  I think --

17          THE COURT:  All right.

18          MR. STAMOULIS:  -- it's forty-eight-something --

19          THE COURT:  So that's --

20          MR. STAMOULIS:  -- and so it comes -- plus --

21  yeah.  I think it came to 262 is -- was the amount.  That's

22  her actual damages.

23          THE COURT:  Okay.

24          MR. STAMOULIS:  But, Your Honor, it -- we also

25  make a claim for damages under this wrongful foreclosure and

1  that's pursuant to California Civil Code Section 33-33.

2  That section just provides for actual damages and that's the

3  section that's used on wrongful foreclosure.

4  　　　　Now, Your Honor, we began this case with -- with

5  a statement from the Court about is this really a no harm,

6  no foul offense, and -- and, Your Honor, it isn't.  Even if

7  no other fraud claim was being brought here, the mere

8  technical defect in the foreclosure entitles Ms. Mills to

9  damages under California law.  And -- and I point Your Honor

10 to a case called Manor Associates versus Keys, and this is a

11 slip up which it came out August 30th of 2010.  I only have

12 a docket number.  I can provide the Court later with a

13 Westlaw or Lexus number.  But it's CA number CV-99-1464 and

14 it's the Third District of the California Appellate Court.

15 　　　　And there, Your Honor, the Court discusses the

16 damages for improper foreclosure which is the net equity in

17 the property at the time of the foreclosure sale.  So,

18 essentially, Your Honor, they -- they -- in California, an

19 improper foreclosure is viewed as a forced sale.  You bought

20 it the day you foreclosed, and if Your Honor turns to --

21 would look at Exhibit 32 -- you don't have to do it now.

22 But Exhibit 32 is a collection of emails from servicing just

23 before for her foreclosure.  I think Your Honor may recall

24 Mr. Friedman from servicing talking about how, you know,

25 we're owned one-point-some million on this $1.4 million

1 dollar house.

2          So at the time they foreclosed, the value of the

3 house was $1.4 million.  They were owed $1.16 million in

4 outstanding loans.  So --

5          THE COURT:  Well, plus accrued fees, default --

6 plus accrued interest.

7          MR. STAMOULIS:  Well --

8          THE COURT:  In other words, one-point -- what did

9 you say, one -- that's the -- your -- when you say 1.1

10 you're talking about the unpaid principal.

11          MR. STAMOULIS:  That's the unpaid principal.

12          THE COURT:  Well, what about accrued fees,

13 interest?

14          MR. STAMOULIS:  I haven't researched that, Your

15 Honor, but I believe under this -- this doctrine where you -

16 - it's this forced sale approach I don't think they're

17 entitled to that --

18          THE COURT:  Well, no.  I mean, the forced sale is

19 -- the forced -- if you're going to talk about net equity

20 and property, you're going to talk about the value of the

21 collateral minus what's owed under the note.  The technical

22 default or if there is a technical problem in the

23 foreclosure, that doesn't affect the fact that a year and a

24 half of mortgage payments hadn't been made -- and I may be

25 getting that wrong.  It may be nine months.  I can't

1   remember.  When was the -- '06?

2           MS. GREECHER:  The foreclosure was August 10th of

3   2006.

4           THE COURT:  Okay.

5           MR. STAMOULIS:  Your Honor --

6           THE COURT:  And that was Ms. Greecher for the

7   record.

8           MR. STAMOULIS:  -- I have an answer for you.

9           THE COURT:  Okay.  I like answers.

10          MR. STAMOULIS:  If you look at Exhibit 34 of

11  Volume 1, you'll see that those are the motions that were

12  submitted for relief from the bankruptcy stay, and on the

13  page -- I believe it's 7 of 25 for the first motion -- 33

14  and 34.  So for Exhibit 34 on Page 7 of 25 they list the

15  total amount with all the fees and penalties and everything

16  on the little loan, as being 221.6, and on Page 7 of 35 of

17  Exhibit 33, they list the total amount outstanding on the

18  big loan as being 1.008 million.

19          THE COURT:  Which gets us to about 1.3 million.

20          MR. STAMOULIS:  So one-point --

21          THE COURT:  I'm sorry, one-point.

22          MR. STAMOULIS:  1.2 -- 1.229, so 1.23.  So 1.23

23  on a 1.4 --

24          THE COURT:  And your valuation evidence at 1.4

25  is?

1          MR. STAMOULIS:  Is the email from Mr. Friedman

2   found at Exhibit --

3          THE COURT:  Where he's asking permission to bid?

4          MR. STAMOULIS:  Where someone inside of American

5   Brokers Conduit is asking permission to buy the house and he

6   says, no.  We're not going to sell this for 962.  This is a

7   1.4-million-dollar house and we've got a policy of not

8   letting employees buy these things.  And that's found, Your

9   Honor, at Exhibit 32.  So if you subtract the one-point --

10          THE COURT:  The purchase price was 1.5,

11   approximately?

12          MS. MILLS:  1.37.

13          MR. STAMOULIS:  1.375, Your Honor.  So it was --

14   it may be a twenty-five-thousand-dollar appreciation from

15   the purchase price.

16          THE COURT:  Okay.

17          MR. STAMOULIS:  Okay.  So, Your Honor, we believe

18   that under California law she's strictly entitled to at

19   least those damages regardless of fraud, regardless of any

20   other conduct.  They made the defect in the foreclosure.

21   They're liable to her.  I -- I believe that the case that we

22   cite supports strict liability.

23          THE COURT:  No.  That would be an unsecured

24   claim.

25          MR. STAMOULIS:  Well, Your Honor, they -- but

1 they had title to the home and then they used that home

2 improperly at -- post-petition.

3          THE COURT:  Yeah.  But the wrong occurred in '06

4 and the case you're citing me to says the damages are

5 calculated as of the sale.

6          MR. STAMOULIS:  They're calculated as of the

7 sale, Your Honor, but we believe -- well, first, under

8 Redding, that it's a continuing tort because the wrongful

9 foreclosure was a tort and the use of the property on their

10 schedules and the liquidation to generate funds for the

11 estate when they didn't have proper title to it was a

12 continuation of that tort.

13          So their post-petition conduct with regard to the

14 property, we believe was a conversion.  They never had title

15 to the house.

16          THE COURT:  Not true.

17          MR. STAMOULIS:  Well, not -- well --

18          THE COURT:  Not true.

19          MR. STAMOULIS:  Well, under the -- well --

20          THE COURT:  Title transferred as of the -- as of

21 the sale.  It may have been an improper sale, but when the

22 hammer went down, title was transferred giving rise to

23 damages, perhaps, for doing it the wrong way.

24          MR. STAMOULIS:  Okay.

25          THE COURT:  But title transferred, right?  I

1  mean, and you're not attacking title at this point.  You're

2  not seeking --

3          MR. STAMOULIS:  No.  No.  We're not seeking re-

4  conveyance --

5          THE COURT:  -- replevin or re-conveyance.

6          MR. STAMOULIS:  -- of the property.  No.  No.

7  No.

8          The other point I want to address, Your Honor, is

9  with regard to this equitable set-off where I believe that

10  they claimed that they -- you know, they sold it and they

11  liquidated it at a loss post-petition.  You know, to the

12  extent that there's -- there's going to be any consideration

13  of that, Your Honor, the Court shouldn't look at what they

14  actually liquidated it for, but what they could have

15  liquidated it for, and I believe debtors themselves put

16  before the Court at least three offers that debtors had to

17  sell this property up to $1.1 million because debtors -- but

18  debtors declined to accept those offers.  So -- and we

19  believe that, you know, to the extent that anything is used

20  as a -- as a set-off it should be that 1.1-million-dollar

21  figure.

22          Your Honor, we've -- we've put forward all of our

23  evidence.  We believe that there is post-petition conduct

24  here that misused this asset.  We believe debtors are liable

25  to claimant.  We believe that we've made a case for actual

1  damages as well as punitive damages.  This 362(h)(k)

2  violation alone for the violation of the stay provides for

3  punitive damages and attorney's fees.

4          And, Your Honor, that -- that is not -- the last

5  point I'll finish with is the stay violation offense that we

6  raise is not a collateral attack on that order.  You know,

7  we're not asking Your Honor to find that the Court's -- to

8  rule in a way that is contrary to the Court's intent in that

9  opinion.  We're asking the Court to rule in a way that

10 punishes debtors for submitting a false statement to a

11 Court.  I mean, they told the Court that they had an

12 interest in the property when they didn't, and the Court

13 issued an order based on that representation.  And so that -

14 - that voids the foreclosure ab initio.  And we're -- we

15 believe that we're entitled to 362(k) damages for that.

16          THE COURT:  Okay.

17          MR. STAMOULIS:  Thank you, Your Honor.

18          THE COURT:  You're welcome.

19          Mr. Beach.

20          MR. BEACH:  Good morning, Your Honor.  For the

21 record, Sean Beach from Young, Conaway on behalf of the

22 debtors.

23          Your Honor, at the outset just to address some of

24 the deficiency claim impact and then the set-off price that

25 the debtors have, there was a three-hundred-and-twenty-

1  seven-thousand-dollar deficiency after the sale, plus

2  $180,000 of interest at the contract right that accrued

3  through the date of the sale, and 195 -- $194,000 in

4  penalties, so overall $702 plus any statutory interest.

5  We're not obviously claiming that.  I raise that against Ms.

6  Mills.  I raise that simply because the debtors were

7  significantly damaged by -- by this loan and Ms. Mills'

8  representations on that loan application, and our giving Ms.

9  mills that loan for 1.2 million.

10              THE COURT:  Well --

11              MR. BEACH:  Your Honor, I'll just --

12              THE COURT:  Well --

13              MR. BEACH:  Sorry, Your Honor.

14              THE COURT:  Any -- any -- any misrepresentations

15  didn't go to the value of the home or to the loan to value.

16  It went to whether she, frankly, had the means by which the

17  mortgage could be obtained.  But I haven't seen any

18  challenge that the property wasn't worth 1.35 million at the

19  time the loan was taken out, and if you sell it three years

20  later after the bottom falls out of the real estate market -

21  - and, of course, no one predicted that -- that's -- that's

22  not a result -- that doesn't flow from the fraud or

23  misrepresentations.  That flows from the -- the value, the

24  declining value of the property.

25              MR. BEACH:  I understand, Your Honor, but that

1   all -- if this loan hadn't been given, the debtors wouldn't

2   have been damaged an additional $702,000.  So to the extent

3   that Ms. Mills can prevail on any claim against the debtors

4   --

5           THE COURT:  Damages have to be related to the

6   wrongdoing in some way.

7           MR. BEACH:  Your Honor, the debtors would submit

8   that the wrongdoing began with the misrepresentations of the

9   loan application and continued as a result of those

10  misrepresentations, but I'll -- I'll move on, Your Honor.

11          THE COURT:  Okay.

12          MR. BEACH:  The only -- Ms. Mills raises

13  technical issues.  There are no -- and there really would be

14  no difference at the end of the day in terms of the result

15  here.  And I'm not going to start out with background

16  because Your Honor, in your comments when Mr. Stamoulis was

17  up, certainly understands the situation here and Ms. Mills'

18  situation.  So I'll focus on the specific claims being made

19  by Mr. Stamoulis.

20          And in the interest of time, Mr. Stamoulis first

21  started his argument suggesting that the debtors were an

22  agent of -- of Chase.  Your Honor, unless you want specific

23  comments on that, I'll --

24          THE COURT:  No.  No.  That --

25          MR. BEACH:  -- defer to my comments --

1              THE COURT:  That -- that Chase was an agent to

2    debtor.

3              MR. BEACH:  Right, Your Honor.

4              And, Your Honor, we argue that in connection with

5    the motion in limine, and unless Your Honor would like to

6    hear those arguments again, I think it's --

7              THE COURT:  Well --

8              MR. BEACH:  -- very clear based on the contract

9    terms and based on the relationship between the parties and

10   no additional evidence on the relationship that, clearly,

11   Chase was not the agent of the debtors.  They couldn't speak

12   on behalf of the debtors.  They couldn't bind the debtors to

13   any credit commitments or anything else for that matter

14   unless there was a specific writing and that specific

15   writing is always with respect to the actual loan that's

16   given.

17             THE COURT:  Well, couldn't they be acting with a

18   parent authority, especially in the context that Ms. Mills

19   could not communicate directly with the mortgage company,

20   but had to act in connection with the mortgage broker?

21             MR. BEACH:  It -- Your Honor, I would submit

22   that, no.  They had an independent contractor relationship.

23   With -- that relationship was defined in the contract very

24   specifically and --

25             THE COURT:  The contract between --

1          MR. BEACH:  Chase and the debtors.

2          THE COURT:  Right.  But what --

3          MR. BEACH:  It also -- with respect to the

4    contract --

5          THE COURT:  But Ms. Mills never saw that --

6          MR. BEACH:  -- that Ms. Mills --

7          THE COURT:  -- contract.  She did -- she's not

8    going to see that contract between the debtor and Chase.

9          MR. BEACH:  I understand, but she saw the

10   contract that she signed that says that any relationship

11   with a lender -- and Chase had relationships with multiple

12   lenders -- were independent contractor relationships or they

13   were not agency relationships. and that Chase could not bind

14   any lender and that all the underwriting was the

15   responsibility of the lender.  And that is in the agreement

16   that Ms. Mills signed with Chase.

17         THE COURT:  Uh-huh.

18         MR. BEACH:  Your Honor, the second point Mr.

19   Stamoulis raised was in connection with the credit score,

20   the allegation that the credit score was 660 and dropped to

21   659.  Your Honor, I think Ms. Wanerka's testimony yesterday

22   was very clear on that point; that the credit score was

23   already 659; that --

24         THE COURT:  Oh, I don't think there's any

25   question whatsoever that the credit score was always 659.

1          MR. BEACH:  Okay.

2          THE COURT:  But was there something untorid

3   (phonetic) in the -- or -- the way I see the facts the

4   credit score came in.  The product that was being sought

5   required a minimum score of 660.  It was submitted to

6   American Home.  When they actually pulled the credit score

7   it was 659.  So at that point an exception is requested by

8   the broker, I expect, and that takes until the 14th and the

9   exception is approved.  So even though it's 660 -- it's 659,

10  an exception is approved on July 14th and at that point, the

11  price of the exception were the modifications to the junior

12  loan.

13          Is there anything in that process by which Ms.

14  Mills is subject to a bait and switch in that she shows up.

15  She hears -- she thinks everything's cooking along and she

16  hears Friday afternoon that all of this has occurred?

17          MR. BEACH:  Not at all, Your Honor, and I'll

18  start with the testimony of Ms. Lettau, which you only have

19  in a transcript because she wasn't available for trial, but

20  there was a trial deposition an that's admitted into

21  evidence.

22          Ms. Lettau specifically testified that when --

23  when asked the question of -- and I don't think she knew

24  specifically in this circumstance, but if she were to submit

25  an exception, then it would have been at the request of her

1  client -- in that situation, Ms. Mills.  And so this would

2  have come from Ms. Lettau.  She would have put in 660 so

3  that she could make an application for that loan product at

4  the request of her client, Ms. Mills.

5          THE COURT:  And at that time Ms. Lettau did not

6  know the credit score of Ms. Mills?

7          MR. BEACH:  She did know the credit score --

8          THE COURT:  She did know that --

9          MR. BEACH:  -- of 659, but --

10          THE COURT:  -- it was 659.

11          MR. BEACH:  -- she knew that the product that she

12  was asking for an exception on, that based on her testimony

13  Ms. Mills would have requested her to ask for that exception

14  --

15          THE COURT:  Okay.

16          MR. BEACH:  -- was -- so the --

17          THE COURT:  Required 660.

18          MR. BEACH:  Exactly.  And, Your Honor, that's the

19  underwriting that was done.  As Your Honor noted before, Ms.

20  Mills was -- really wanted this property.  I mean, she was

21  going to get into this property no matter what.  She had

22  already subjected herself to a sixty-thousand-dollar down

23  payment.  That's before the debtors were even involved.  She

24  also negotiated another $10,000, $350 a day from when the

25  original closing was to occur to the other closing.

1          So she -- and -- and her own testimony says that

2   she had another broker and her testimony is that she had an

3   offer from that broker and that it was on better terms than

4   the American Home Mortgage terms.  This was the --

5          MS. ZIEG:  Bridgeport.

6          MR. BEACH:  -- the Bridgeport loan.

7          THE COURT:  Right.

8          MR. BEACH:  So she -- she had a better product.

9   She had a commitment, that's her testimony, and that she

10  just decided that she wasn't going to -- and she also

11  testified that even after she was not satisfied with her

12  broker, she decided not to call Bridgeport separately and

13  see if they would do the loan, and then -- so she gets rid

14  of that loan.  She subjects herself to a number of

15  additional fees and costs in terms of the down payment

16  that's she committed to, and with this seller her contract

17  specifically says that she loses that; again, before AHM is

18  involved in this situation at all.

19         And then -- and then approaches American Home.

20  American Home gets the application, I believe it's on the

21  10th, and works through the underwriting process, which as

22  Your Honor can imagine, has got to take a couple of days.

23  On the 14th, I believe, 14th or 15th Ms. Lettau is contacted

24  that the exception was approved, but not on the terms that

25  Ms. Mills applied for.  That was her application, her

1    request.  That's the loan that she wanted, but the exception

2    didn't come through, but it was still a very generous loan I

3    would submit to Your Honor:  962,000 on the first and 200 on

4    the second, with reasonable rates certainly with a loan of

5    that size and a loan to value that was given.

6           So, Your Honor, to answer your question, no.  I

7    don't believe that there was anything -- any kind of bait

8    and switch in connection with that situation.

9           THE COURT:  Okay.

10          MR. BEACH:  Your Honor, the next --

11          THE COURT:  Can you address for me this concept

12   of the technical default in the foreclosure, not the stay

13   relief, but the foreclosure?

14          MR. BEACH:  The substitution of trustee issue?

15          THE COURT:  Right.

16          MR. BEACH:  Yes, Your Honor.

17          And I'll first start by addressing the tender

18   rule, Your Honor, which is dispositive on this issue, if I

19   can find my notes on that.

20          Well, Your Honor, the tender rule in California,

21   as we've cited in our papers, stands for the proposition

22   that if a borrower is going to allege an improper

23   foreclosure, then the borrower must first be able to show

24   that they had the intent to and that they did try to

25   reinstate the loan by tendering the full reinstatement

1   amount of that loan or the total payoff of that loan.  The

2   clear testimony here is that Ms. Mills never had the where

3   with all to do that, and there's no evidence to the

4   contrary; that she ever had the ability to tender the full

5   amount that she was required to to cure that default.

6           Now Ms. Mills alleges that, so what.  In our

7   situation we're not asking for the property back.  We're

8   just asking for damages.  Well, their case law is also clear

9   on that point, Your Honor, which is that the tender rule is

10  in place, not simply in situations where a party is trying

11  to claim a defect in foreclosure to get the property back,

12  but also so that it's a no harm, no foul situation.  If they

13  can't tender and cure the default at that point, then it's

14  irrelevant in any event.

15          So the tender is a firm requirement whether or

16  not they're trying to get the property back or just claim

17  damages.  And, frankly, Your Honor, the case law also, I

18  believe, points to the proposition that you can't just wait

19  in the wings, especially now, three, four years later, wait

20  in the wings and say, well, I never really wanted the

21  property back anyway and then just claim a technical defect

22  years down the road so that you can claim damages.

23          So, Your Honor, the tender rule is dispositive;

24  that there can be no claim for an improper foreclosure as a

25  result of -- as a result of the fact that the evidence is

1   clear that Ms. Mills could never have the ability to

2   reinstate that.

3           But I will address for Your Honor the specific

4   issue as well.  First of all, In re: Walker, which is a case

5   that Ms. Mills' cites with respect to -- the only case that

6   they cite in support of that substitution of trustee issue,

7   In re: Walker doesn't even deal with a substitution of

8   trustee issue.  It deals with a transfer of title issue.

9   And it stands for the proposition, specifically, that:

10              "Any attempt to transfer a beneficial interest of

11              the trust deed without ownership of the

12              underlying note is void under California law.

13          Your Honor, I would submit that that case is

14   irrelevant.

15          With respect to some of the technical arguments

16   in connection with this, MERS simply substituted the

17   trustee.  You had a trust that stayed in place.  There was

18   as trustee.  MERS simply --

19              THE COURT:  Yeah.  What's the --

20              MR. BEACH:  -- substituted that trustee.

21              THE COURT:  -- timeline on this?  So the loan is

22   originated in 2005 and the trustee is Chicago Title.

23              MR. BEACH:  Right.

24              THE COURT:  And MERS is the -- is identified in

25   the documents as, I believe -- well, help me out.

1          MR. BEACH:  As a beneficiary.

2          THE COURT:  As the beneficial owner or beneficial

3   trustee?

4          MR. BEACH:  I mean, they're the beneficiary of

5   record.  They're the nominee of the lender, but they are

6   identified on the document as a beneficiary and the deed of

7   trust specifically gives them certain powers.

8          THE COURT:  Okay.

9          MR. BEACH:  And in particular, the deed of trust

10  -- in particular, in the first paragraph on Page 2 in the

11  deed of trust -- this is the deed of trust, of course, Ms.

12  Mills signed -- it says:

13          "Borrower understands and agrees that MERS holds

14          only legal title to the interest granted by

15          borrower in the deed of trust, but if necessary

16          to comply with law or custom, MERS, as nominee

17          for lender and lender's successors and assigns,

18          has the right to exercise any and all of those

19          interests including, but not limited to,

20          releasing or canceling this deed of trust."

21          And then it addresses the substitution of trustee

22  in Paragraph 21 --

23          THE COURT:  Okay.

24          MR. BEACH:  -- with respect to the ability to do

25  that.  And MERS is identified not only on the substitution

1  of trustee, but on the deed of trust as the beneficiary of

2  record, Section -- California Code Section -- I believe it's

3  29 --

4          THE COURT:  So under Paragraph 21 of the deed of

5  trust your position would be MERS has the right to designate

6  a substitute trustee?

7          MR. BEACH:  Absolutely, Your Honor.  Mr.

8  Adleson's testimony clearly backed that up as well.

9          THE COURT:  Uh-huh.

10          MR. BEACH:  And, also --

11          THE COURT:  But the statute seems to require MERS

12  plus, I guess, Chicago Title?

13          MR. BEACH:  I think Ms. Mills' argument is it

14  says all beneficiaries so that means that if the lender's a

15  beneficiary and MERS is a beneficiary of record, then it

16  would require those beneficiaries.  MERS, obviously, doesn't

17  have the substantive rights in this note that was given -- I

18  mean, but MERS was given the right to exercise certain

19  rights of the lenders so they were simply exercising the

20  right of the lender.  Having both of them do that would have

21  been duplicative.  So it wouldn't make any sense in any

22  event.

23          Not only that, but Mr. Adleson specifically

24  testified that it's the custom and practice of -- in

25  California that MERS or the nominee would be the one who

1 would do the substitution of trustee.  It's a ministerial

2 issue in any event.

3          Your Honor, we have very clear case law in

4 California on that point, and since this was an issue raised

5 in one paragraph of the summary judgment motion, it was

6 unclear to us that it was a big issue for them, but I will

7 cite these cases for you because they're directly on point

8 in connection with this issue.

9          One of them is Dancy versus Aurora Loan Services,

10 and we did provide these cases to counsel as well.  It is at

11 2010 U.S. District Lexus 116513.

12          THE COURT:  One -- 116 --

13          MR. BEACH:  116513.  It's a Northern District of

14 California case that was decided November 2, 2010, so just a

15 few weeks ago, Your Honor.

16          Yes, Your Honor.  We do have copies if you would

17 like us to hand them up.

18          THE COURT:  That's good.  You can give them to

19 Ms. Werkheiser, please.

20          MR. BEACH:  And the second --

21          THE COURT:  She does all the work.

22          MS. ZIEG:  At least you admit it.  The woman

23 behind the man.

24          THE COURT:  Go ahead.

25          (Laughter)

1          THE COURT:  I hope that didn't make it on the

2    record.  Go ahead, Mr. Beach.

3          MR. BEACH:  At least it wasn't the other way

4    around.

5          Your Honor, the next case is Lane versus V-Tech

6    Real Estate Industries Group, 713 F. Supp. 2d 1092, also an

7    Eastern District -- well, this is an Eastern District of

8    California case also decided in 2010.

9          Both of these cases involve situations of loan

10   sales on the secondary market and the Lane case,

11   particularly, provides that MERS does not lose the authority

12   to operate as the lenders' agent if the successor lender is

13   a securitization trust.  Both Arizona and Nevada that also

14   have -- that are also these deeds of trust states support

15   this proposition.  I believe these cases are, in fact, cited

16   in our brief -- in our objection or our reply to the --

17          THE COURT:  Okay.

18          MR. BEACH: -- claimant -- to the claim.  They're

19   both Arizona cases, Ramos versus MERS and In re: MERS.  I

20   can give you those cites, but I do believe they are in the

21   brief.  They also do support that proposition as well.

22          So, Your Honor, even if you -- even if Mills

23   could get past the tender rule, and I would submit, Your

24   Honor, that they can't -- this technical defect that they're

25   alleging does not exist.

1        THE COURT:  Let me ask you about the post -- her

2   post-petition or slash post-discharge hits on the credit

3   report between -- up until the transfer of servicing which

4   was --

5        MS. GREECHER:  April 11th, 2008.

6        THE COURT:  Yeah.  The day that will live in

7   infamy, April 11th, 2008.  Does that give rise to any kind

8   of administrative claim against the debtors?

9        MR. BEACH:  No, Your Honor.  I would submit that

10  it doesn't and I'll --

11        THE COURT:  Now once she's discharged she doesn't

12  owe you any -- personally doesn't owe you any money?

13        MR. BEACH:  No, she doesn't, Your Honor, and I'll

14  get to that specific point, but if -- if I can, I would just

15  like to make a couple of other preliminary --

16        THE COURT:  Yeah.

17        MR. BEACH:  -- arguments on that point as well --

18        THE COURT:  Please.

19        MR. BEACH:  -- with respect to this point.

20        Your Honor, a bankruptcy discharge -- first of

21  all, we would argue that this is not the right court to

22  decide this issue.  If they want to go enforce the discharge

23  injunction, that they should go to California and do that.

24  This is many years down the road.  It's an issue that --

25        THE COURT:  Well, but they would have to come

1  here first and get stay relief and then go there.

2          MR. BEACH:  They do now.  They --

3          THE COURT:  And you --

4          MR. BEACH:  -- didn't always have to do that,

5  Your Honor.  They could have -- you know, at -- this clearly

6  is a situation that could have been addressed quite a long

7  time --

8          THE COURT:  But, ultimately, they're going to --

9  it's going to result in a claim against the debtor and we'll

10 be right back here.

11         MR. BEACH:  Understood, Your Honor.  I do -- I

12 still would suggest, Your Honor, that the best court for

13 this would be the court in California and there's a case

14 that we believe is on point, Montanto versus First Light,

15 2007 Lexus 3125.  There, a bankruptcy court found that it

16 lacked jurisdiction to enforce the bankruptcy discharges

17 entered outside of its own federal district.  So I'll move

18 on from that point.

19         But in addition to that, Your Honor, there --

20 there's a huge proximate causation issue in connection with

21 their allegations of the credit reporting and the effect of

22 those credit scores.  We have no idea because they put no

23 expert testimony on in terms of what her credit score would

24 have been at the end of the sale -- the final sale of

25 servicing versus what it would have been at the petition

1  date versus what it would have been at any other period of

2  time.

3           Now what we do know is Ms. Mills' credit score

4  was 273 at the time that she filed for bankruptcy and

5  they're alleging now that it went down to 179.  Your Honor,

6  there are so many other factors that could have reduced it

7  that ninety points from 273 to 179.  She filed a bankruptcy.

8           As Your Honor is aware, that stays on your credit

9  report for a number of years.  She testified that she had

10 store -- she couldn't pay her storage fees and that the

11 storage company, post-bankruptcy, auctioned off her person -

12 - her personal property based on the non-payment of that

13 debt.  They essentially foreclosed on that property.  They

14 could have been submitting delinquencies in her credit

15 report.  She had many credit cards, a car loan.  She had the

16 delinquency with Mr. Coon (phonetic).  She had continuous

17 attempts to get loans.  All of these things could have

18 affected her credit score.

19          So there's no way that Ms. Mills can even come

20 close to assessing any damages on the debtors  and, frankly,

21 even if she could, those damages are limited to what's

22 available under the Fair Credit Reporting Act.

23          Now to deal a little bit more specifically with

24 your question.  I'll get back to the Fair Credit Reporting

25 Act in a moment.  Ms. Mills' bankruptcy discharge left in --

1   left in place, AHMs and Rembrights (sic).  So while they

2   didn't have the ability to collect on the debt, there was --

3   AHM never tried to collect on the debt and they -- and they

4   -- there's no evidence to the contrary.

5           Reporting the delinquency without more can't

6   possibly be considered a collection of the debt.

7           THE COURT:  Well, if I don't -- and this goes to

8   the Fair Debt Collection Act.  I mean, if I -- if I call, I

9   don't know, TRW or whoever the heck they are, Experian and I

10  say, Mr. Beach owes me a hundred grand and he hasn't paid it

11  and you never lent -- you never borrowed that money from me,

12  I mean, I'm committing a wring against you that could give

13  rise to damages.

14          MR. BEACH:  Well --

15          THE COURT:  And to say -- for the debtor to say

16  on a post-petition basis, Ms. Mills owes me a million

17  dollars and she hasn't paid it when there's been a discharge

18  and she doesn't, she no longer owes you that money.  Now I

19  don't know what the law -- without being reminded what the -

20  - what the Fair Debt Collection Act may or may not say about

21  that.  But is it -- doesn't -- isn't that a claim?

22          Now the damages that might arise from that claim

23  are -- are trickier based on some of the information you've

24  provided, which is, you know, can we simply look at, you

25  know, credit score as a result of that and I' -- and I would

1  have to -- I have a hard time -- maybe counsel can help me.

2  I'm looking at Exhibit 99 and these various reports and I'm

3  trying to figure out where on it it indicates credit report

4  or credit score, FICO score, and I can't -- I can't find it.

5          MR. STAMOULIS:  Your Honor, typically there's a

6  line that says, score report, and then it will say a number.

7  I'll find a specific --

8          MR. BEACH:  Well, Your Honor, I mean, that's part

9  of the problem, Your Honor.  This -- this claim or

10  allegation -- I don't even know if it can possibly be

11  considered a claim since the first time they raised it was

12  at trial.

13          THE COURT:  Uh-huh.

14          MR. BEACH:  But it is unclear on this document,

15  you know, whether these are actual credit scores, whether

16  this is something that's generated by AHM based on, you

17  know, certain reports.  So, generally, it's unclear.  In

18  connection with the Fair Debt -- Fair Credit Reporting Act,

19  Your Honor, the damages would arise under that and it is

20  very clear in the Fair Credit Reporting Act that before any

21  damages can arise, a dispute must be lodged to the credit

22  agency.  That credit agency would then be required to go to

23  the reporter only if the reporter wrongfully invalidates

24  that -- that report, then damages can arise and those

25  damages are capped at $1,000, Your Honor.

1          None of that happened.  There's no evidence that

2     she ever disputed the credit reporting.  There's no evidence

3     that AHM ever wrongfully invalidated the credit reporting.

4     So, Your Honor, for a number of reasons, not least of which

5     is the gating issue of jurisdiction, the proximate cause

6     issues, the limitation on damages, but also the fact that

7     she hasn't even alleged that she's made any dispute with the

8     credit reporting agency, there's no claim -- again, assuming

9     she can get passed the fact that she raised this for the

10    first time at trial, there can't possibly be a claim against

11    American Home both -- either pre-petition or post-petition.

12             THE COURT:  Okay.

13             MR. BEACH:  Your Honor, I know the committee just

14    had a minute or two of comments.  I can address some more

15    specific issues unless Your Honor is satisfied.

16             THE COURT:  Let me see if I have any remaining

17    questions.

18             (Pause)

19             THE COURT:  Briefly just address your response to

20    this -- I understand you believe Ms. Mills not to be your

21    agent, but --

22             MR. BEACH:  Ms. Lettau.

23             THE COURT:  Lettau.  I apologize.  Ms. Lettau?

24             MS. GREECHER:  Lettau.

25             MR. BEACH:  Lettau.

1           THE COURT:  Lettau not to be your agent.

2   Assuming arguendo she is your agent, this "promise" of

3   $50,000, being able to get $50,000 out in a couple of

4   months, can you address what your defense would be to that?

5           MR. BEACH:  Well, there are a number of reasons

6   why that's incredible, first of which her allegation is that

7   there was a representation by Ms. Lettau that she would be

8   able to take $50,000 out on or before December 2005.  She --

9   she says that the reason she needed to take that money out

10  was to pay her mortgage -- anticipating, I guess, an

11  inability to pay within a very short period of time.  She

12  defaulted two months before December 2005, Your Honor.  She

13  can't possibly have relied on that representation in

14  connection with -- in connection with her taking this loan

15  out when she didn't even have the ability to get to December

16  2005.

17          (Pause)

18          MR. BEACH:  Your Honor, in addition to that --

19  and Your Honor is well aware of all the issues with the loan

20  application.  She clearly had knowledge of the falsity of

21  the loan application.  She clearly knew that -- that the

22  debtors were relying on that loan application to give her a

23  loan.  She had no -- there was no justifiable reliance on

24  that statement when she knew in her own loan application she

25  couldn't do what she -- she didn't have the assets or the

1  financial where with all that she represented that she had.

2           So, Your Honor, I -- I mean, I'm not going to go

3  through all of our defenses.  Clearly, unclean hands is

4  squarely an issue with -- with respect to not only this

5  allegation, but all of these allegations in that the debtors

6  relied on a loan application that materially misrepresented

7  every single asset in that, in addition to some other

8  things.

9           THE COURT:  Okay.  Thank you.

10           MR. BEACH:  Thank you, Your Honor.

11           THE COURT:  You got two minutes.

12           MR. STAMOULIS:  May I also get thirty seconds,

13  Your Honor?

14           THE COURT:  Yes.

15           MR. SCHNITZER:  Good morning, Your Honor.  Edward

16  Schnitzer from Hahn and Hessen on behalf of the Committee.

17  I'll be brief.

18           Your Honor, for the reasons set forth in the

19  debtors' objection to Ms. Mills' claims, as well as Mr.

20  Beach's arguments, we believe her claims should be denied in

21  their entirety.

22           I just wanted to make two brief points:

23           One, what we've heard from the trial is this is

24  not a case of a shady broker cold calling someone to get

25  them to refinance.  It's also not a case of an uninformed

1   borrower being put into an adjustable mortgage without their

2   knowledge.  The reason I raise that Your Honor is the

3   committee does follow these claims and particularly this

4   claim to understand what's the context of the claim before

5   you.

6           As Your Honor knows, this is not the situation

7   here.  This is a situation where a borrower has

8   misrepresented her financial condition and then defaulted

9   because her true financial condition wasn't sufficient for

10  her to make the monthly payments.  This isn't a situation of

11  nefarious conduct by the debtors or anybody even alleged to

12  be their agent.  And for that reason, Your Honor, I think,

13  needs that in context.

14          Like I said, we have been monitoring this case.

15  We've been assisting the debtors.  We've reviewed the

16  pleadings, followed the pleadings.

17          The one other point I wanted to make that was in

18  the debtors' brief and I know that Mr. Beach didn't have

19  time to raise it, is the judicial estoppel argument, Your

20  Honor, and I would just highlight that for you; that as was

21  -- came out in evidence, Ms. Mills filed for bankruptcy.

22  She knew of her alleged fraud claims at that time.  She did

23  not disclose them.  Her bankruptcy was closed.  The law, we

24  believe, is very clear on that issue that for that reason

25  those claims cannot be brought at this time.

1              THE COURT:  Okay.

2              MR. BEACH:  Your Honor, just on that point, the

3    Crystal case, which is a Third Circuit case, is actually

4    factually on point as well.  It's a very similar situation

5    so I would point you to that for judicial --

6              THE COURT:  Thank you.

7              MR. BEACH: -- estoppel.

8              THE COURT:  Mr. Stamoulis.

9              MR. STAMOULIS:  Your Honor, we deal with the

10   estoppel issue in our opposition -- in our response to their

11   objection to claims.

12             Very quickly with regard to the case law that was

13   handed up, the case law that was handed up represents that

14   MERS has the power to execute a substitute of trustee.  It

15   does not address whether 29-34(a) is complied with when a

16   deed of trust contains multiple beneficiaries.  That's the

17   case here.  29-34(a) is crystal clear, Your Honor.  It

18   requires both signatures.  You can contract out of 29-34(a),

19   Your Honor, in the deed of trust.  And if Your Honor looks

20   at Section 21 of the deed of trust it specifies under

21   substitution of trustee that:  "An instrument executed and

22   acknowledged by lender and recorded in the office of the

23   recorder will affect the substitute of trustee."

24             So you don't have to have both signatures.  You

25   can contract out of it.  The deed of trust says lender or

1 successors and assigns has to sign it.  MERS isn't one of

2 them.

3              THE COURT:  I'm leaving.

4              MR. STAMOULIS:  Thank you.

5              THE COURT:  Thank you.

6              We'll reconvene at two o'clock.  I'll give a

7 ruling.

8              MS. ZIEG:  Thank you, Your Honor.

9              MR. BEACH:  Thank you, Your Honor.

10              THE COURT:  Did I say two o'clock?

11              MS. ZIEG:  You said two o'clock.  12:30 you mean?

12              THE COURT:  No.  I meant one.  I apologize.

13              MS. ZIEG:  One o'clock?

14              MS. GREECHER:  One o'clock.

15              THE COURT:  Yeah.  One o'clock.

16              MR. STAMOULIS:  Thank you, Your Honor.

17              (Recess)

18              THE CLERK:  All rise.

19              THE COURT:  Please be seated.

20              Okay.  I'm ready to rule.  I will do my best to

21 stay somewhat organized, but no promises.

22              All right.

23              Well, I think Ms. Mills' claim comes down to a

24 claim for fraud and related to the origination of the loan

25 and, specifically, a -- issues arising in relation to her

1   credit score 660, 659, what she was told, when she was told

2   it, a theory of bait and switch, in effect, as well as the

3   lie, what she purports to be a lie or promise of -- for the

4   fifty-thousand-dollar -- ability to pull 50k of equity out

5   of the house in a couple of months.

6           In addition, there are arguments as to the

7   deficiency of the foreclosure, both as a violation of the

8   automatic stay in the first instance and then a failure to

9   comply with the technical requirements of California non-

10  judicial foreclosure sales which are to be strictly

11  enforced.

12          The debtors counter that the -- there was no

13  fraud here by them and, indeed, they believe they were

14  frauded.  The agent, Tania Lettau, the broker is not -- they

15  argue is not an agent of American Home and as a result,

16  anything she said or didn't say cannot bind them, and that

17  the ultimate decision to be made is the actual final offer

18  of loan if you will from American Home which was the offer

19  of the loan that ultimately closed.

20          In addition, they argue that this credit score

21  was always 660; that the documents that appear to be

22  inconsistent are, in fact, not necessarily inconsistent and

23  we had extensive testimony as to exactly what happened there

24  and when.

25          With regard to the fifty-thousand-dollar promise,

1  the debtor had no knowledge of it and it was made, if it was

2  made, by someone who was not their agent and ultimately it

3  wouldn't have mattered in any event, even if that promise

4  had been made.

5          They argue that the foreclosure was in no way

6  technically defective, both at the stay relief notice --

7  excuse me -- both at the stay relief stage as well as in the

8  actual non-judicial foreclosure sale.

9          (Pause)

10          And that's a -- you know, that's a brief summary

11  of the major -- what I perceive to be the major issues in

12  the case.

13          I find that Ms. Mills wanted very much to

14  purchase this property.  She made an offer on the property,

15  and in her attempts to finance that property she committed

16  fraud and made fraudulent statements with intent to the

17  broker and as a -- and then as through the broker, the

18  broker relied on them and made them to American Home in

19  order to get this mortgage.

20          More specifically, she misrepresented her income

21  on her application.  She lied in connection with whether she

22  was borrowing the down payment.  She also admitted at

23  deposition she lied on her taxes.  She also failed to make

24  full disclosures on her bankruptcy schedules.  She also lied

25  in her deposition.

1          I can't underestimate or understate, excuse me,

2    the severity and import of those improper actions.

3          The debtor may not have been the best business

4    people in the world, but they were not in any way committing

5    any kind of fraud or improper nefarious activity here.  They

6    were relying on information provided to them by the broker

7    and on what they could verify and did verify.

8          Let me back up a bit.  She also lied about the

9    five-hundred-thousand-dollar CD.

10          They priced a loan according to their product.  I

11    believe it was made perfectly clear that they were seeking a

12    product that required a credit score of 660.  The credit

13    score at this relevant time was always 659.  An exception

14    was sought by the broker.  Exception was granted and a

15    change to the junior loan was implemented, which was

16    accepted.

17          I believe Tania Lettau did discuss or even

18    represent to Ms. Mills that she could take equity out of the

19    house in short order.  The debtor didn't do that and Ms.

20    Lettau was not the debtors' agent.  Whether there's some

21    claim or not against Ms. Lettau I have no idea under what

22    the applicable statute would be.

23          But the bottom line is that at least in

24    connection with why the events that transpired transpired,

25    the fifty-thousand-dollar promise was neither here nor

1  there.  Only one mortgage payment was made.  No other

2  mortgage payments were made.  Even two, three months access

3  to an additional $50,000, there's no evidence whatsoever in

4  the record that that would have ultimately made any

5  difference.

6          I'm sorry.  I lost my train of thought.

7          So there simply is no fraud here on behalf of the

8  debtor and there is nothing improper or nefarious on the

9  debtors' behalf in connection with the origination of this

10  loan that would give rise to any kind of claim, let alone an

11  administrative expense claim.

12          Now we turn to the foreclosure itself and the

13  automatic stay.

14          I find, as I did in connection with summary

15  judgment motion, and I see no reason based on the evidence

16  before the Court to change my mind, that any violation of

17  the automatic stay by naming the improper party was

18  technical in nature and made ultimately no difference.  If

19  the proper party had been listed, the stay would have been

20  lifted just the same.  There was no objection tendered at

21  the time basically because there was no defense under 362 at

22  the time.

23          The -- in addition, I -- I'm troubled and I think

24  it would -- is a collateral attack on the bankruptcy court's

25  order in California for me to hinder some sort of sanction

1   or claim based on a violation of the automatic stay.  But I

2   don't think there was one, and to the extent there was one,

3   it was technical in nature.

4          Indeed, I'm not sure there was one in that the

5   way the loans worked, I'm not at all sure it was improper

6   for the predecessor on that loan to seek stay relief.  It

7   doesn't matter in the long run.

8          In connection with the foreclosure under non-

9   judicial foreclosure, there is possibly a claim there in

10  that the Chicago Title did not sign the assignment of

11  trustee or substitution of trustee I believe it is.

12         First of all, I -- I'm not sure who that -- that

13  rule is designed to protect.  Frankly, I think it's designed

14  to protect Chicago Title and not Ms. Mills.

15         Second, even there was a technical default, it

16  was cured if you will when the hammer went down on the sale

17  and at that point Ms. Mills was limited to seeking to sue in

18  some way for a violation.  But that requires tender, which

19  was never made.  And in Mr. Adleson's testimony on these

20  issues was very helpful to the Court and directly on point

21  in connection and consistent with my ruling.

22         Moreover, if there were any claim related to that

23  foreclosure deficiency, it would be an unsecured claim, not

24  an administrative expense claim.  The harm occurred, if you

25  will, pre-petition and although damages may have continued

1  to accrue post-petition, the law on that is that that's a

2  pre-petition claim.

3           Also, in connection with continuing to "hit" the

4  credit report on a daily basis which may have been in

5  violation of the automatic stay or the discharge, I'm not

6  sure it was or wasn't based on the fact there's a continuing

7  in rem ability to go against the property.  But in any

8  event, there was not sufficient evidence to indicate what

9  actual damages may have arisen from the -- those actions.

10          At the end of the day, frankly, if there had been

11  a claim of any cognizable amount either unsecured or

12  administrative against the estate, I would have not allowed

13  that claim on equitable grounds of unclean hands.  You

14  simply can't gain the system by continuing to make a series

15  of false and misleading statements in written documents and

16  orally and at the end of the day come into court and seek

17  redress.

18          It's easy to understand how a person can put

19  themselves in this situation.  We all have dreams and

20  aspirations, and I think it was probably, frankly, something

21  that was simply beyond Ms. Mills' means ultimately to be

22  able to achieve.  We all make mistakes, but we don't and we

23  can't commit fraud or misrepresent facts to people in order

24  to achieve those dreams.  The reality is a company lent a

25  million dollars based on false statements and, ultimately,

1  that company was harmed in that they were unable to get a

2  full payment on their loan in the long run.  So a lot of

3  that had to do with just what happened in the next three to

4  four years, but as Mr. Beach said, what -- they wouldn't

5  have been in that position if the loan hadn't been made.

6          I understand as well the desire to have an

7  opportunity to tell the story, your story to the Court, Ms.

8  Mills, and I -- I understand your desire to do that and

9  that's why we're here.  If I could offer any advice and

10 presume to offer any advice to you, it would be that -- to

11 put this mistake and this case behind you and to move on

12 with your life.  I've -- in my experience in the law both as

13 a judge and a lawyer, I've known people and seen people

14 who've spent a lifetime continuing to litigate and fester,

15 if you will, over a wrong and it doesn't work -- it doesn't,

16 in the long term, benefit them.

17         You had a terrible last five years and I feel for

18 you.  I really do.  You've had your day in court and you've

19 lost.  I urge you to close this chapter of your life and to

20 move on if you can.  Obviously, you have your legal rights.

21 I'm not saying you don't.  You can appeal or what have you.

22 But that -- for -- that's unsolicited and probably unwelcome

23 advice from me.

24         Mr. Beach, would you please prepare a form of

25 order and circulate it, then submit it under certification.

1          MR. BEACH:  We'll do that, Your Honor.

2          THE COURT:  Any questions?

3          MR. BEACH:  No, Your Honor.

4          MR. STAMOULIS:  Your Honor, one last housekeeping

5   matter.  We have the technical Rule 45 violation.  I don't

6   know if Your Honor was going to at least grant sanctions for

7   the cost of bringing that violation to the attention of the

8   Court.

9          THE COURT:  I am not.  I am disturbed by it and

10  it shouldn't have happened, and counsel knows better.  But

11  given what developed at trial and how the case proceeded, I

12  don't believe there was substantial harm that arose from it

13  and I'm not going to award any damages.

14         All right.

15         MS. ZIEG:  Thank you, Your Honor.

16         THE COURT:  You're welcome.  Can you submit an

17  order on that, too?

18         MS. ZIEG:  Yes, Your Honor.

19         THE COURT:  All right.  We're adjourned.

20         MR. BEACH:  Thank you.

21         MS. ZIEG:  Happy Thanksgiving.

22     (Whereupon at 1:22 p.m., the hearing was adjourned)

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


Sherri Breach                           November 25, 2010

AAERT Cert. No. 397

Certified Court Transcriptionist

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **07-11047(css)** 1:7 | | **advise**(1) 9:10 | | **american**(51) 7:18 7:19 7:22 8:4 9:13 | | **and**(207) 68:15 68:20 69:20 69:23 69:24 |
| **1.1-million-dolla**(1) 73:20 | | **aert**(1) 108:9 | | 9:15 10:23 10:24 10:25 11:7 12:18 13:6 | | 70:6 70:12 70:14 70:15 70:15 70:16 70:24 |
| **1.4-million-dolla**(1) 71:7 | | **affect**(2) 69:23 98:23 | | 14:19 18:15 18:16 20:16 20:17 23:14 | | 71:5 71:7 71:8 72:1 72:4 72:9 72:10 73:1 |
| **2005-sd1**(2) 30:4 31:14 | | **affected**(1) 91:18 | | 23:19 23:23 25:21 27:14 28:14 29:22 | | 73:10 73:15 73:18 74:3 74:4 74:12 74:13 |
| **362(h)(k**(1) 74:1 | | **affidavit**(1) 45:10 | | 29:23 30:3 30:12 31:13 37:14 37:16 37:19 | | 74:14 74:24 75:3 75:7 75:8 75:19 75:21 |
| **a.m**(1) 1:14 | | **affiliated**(1) 5:1 | | 40:13 41:4 42:9 44:3 44:21 46:10 46:18 | | 76:9 76:13 76:15 76:17 76:20 77:4 77:5 |
| **ability**(7) 83:4 84:1 85:24 92:2 95:15 | | **affiliated**(1) 5:1 | | 46:20 46:25 47:8 61:4 71:4 79:6 81:4 | | 77:9 77:9 77:14 77:24 78:1 78:8 78:11 |
| 100:4 105:7 | | **afford**(3) 64:18 64:23 65:4 | | 81:19 81:20 94:11 100:15 100:18 101:18 | | 78:13 78:14 78:15 78:20 79:8 79:8 79:10 |
| | | **after**(3) 75:1 75:20 81:11 | | | | 79:14 79:15 79:17 79:23 80:1 80:5 80:18 |
| **able**(6) 39:7 53:3 82:23 95:3 95:8 105:22 | | **afternoon**(3) 55:24 57:11 79:16 | | **among**(1) 26:9 | | 81:1 81:1 81:2 81:3 81:9 81:10 81:12 |
| **about**(33) 9:7 10:15 12:15 12:16 13:13 | | **afterwards**(1) 10:11 | | **amount**(7) 16:18 67:21 70:15 70:17 83:1 | | 81:13 81:15 81:16 81:19 81:19 81:21 82:3 |
| 17:16 21:25 22:15 26:21 29:7 31:5 34:3 | | **again**(15) 8:17 12:17 13:19 14:25 17:23 | | 83:5 105:11 | | 82:5 82:8 82:17 82:24 83:3 83:13 83:17 |
| 42:23 47:17 49:23 49:24 50:17 50:22 | | 19:1 19:25 30:4 44:14 46:6 50:8 51:13 | | | | 83:20 83:21 84:9 84:22 84:24 85:6 85:9 |
| 53:11 57:23 60:6 64:14 67:16 68:5 68:24 | | 77:6 81:17 94:8 | | **analysts**(1) 8:23 | | 85:13 85:17 85:17 85:18 85:21 85:25 |
| 69:10 69:12 69:19 69:20 70:19 89:1 92:20 | | | | **and**(301) 4:2 4:4 4:4 4:13 5:4 5:5 5:14 | | 86:10 86:15 86:24 87:4 87:10 87:20 88:10 |
| 102:8 | | **age**(1) 17:7 | | 5:17 6:9 6:14 7:5 7:9 7:12 7:22 7:25 8:3 | | 88:13 88:19 88:23 89:10 89:13 89:23 90:1 |
| | | **agency**(4) 78:13 93:22 93:22 94:8 | | 8:8 8:14 8:14 8:20 8:23 8:25 9:2 9:5 9:6 | | 90:1 90:3 90:9 90:13 90:21 91:4 91:10 |
| **above-entitled**(1) 108:4 | | **agent**(12) 45:4 54:23 55:9 76:22 77:1 | | 9:13 9:18 9:20 9:24 10:3 10:6 10:8 10:9 | | 91:20 92:1 92:3 92:3 92:7 92:9 92:10 |
| **absolutely**(6) 13:14 19:2 59:2 59:3 66:1 | | 77:11 88:12 94:21 95:1 95:2 97:12 100:1 | | 10:12 10:21 10:24 11:10 11:12 11:16 | | 92:11 92:15 92:17 92:18 92:25 92:25 93:2 |
| 86:7 | | 100:15 101:2 102:20 | | 11:20 11:22 11:23 12:1 12:2 12:3 12:4 | | 93:2 93:4 93:6 93:19 93:24 95:19 96:16 |
| | | | | 12:11 12:15 12:22 13:4 13:5 13:6 13:8 | | 97:3 97:8 97:12 97:18 97:20 98:19 98:21 |
| **accept**(1) 73:18 | | **ago**(1) 87:15 | | 13:12 13:15 14:10 15:2 15:14 15:20 16:17 | | 98:22 99:1 99:24 99:25 100:2 100:8 |
| **acceptable**(1) 51:20 | | **agree**(1) 50:6 | | 16:19 17:7 17:13 18:5 18:6 18:10 18:17 | | 100:13 100:15 100:16 100:22 100:24 101:1 |
| **acceptance**(7) 41:4 42:10 44:4 46:10 47:1 | | **agreed**(1) 5:14 | | 18:18 18:21 19:1 19:12 19:17 19:18 19:20 | | 101:2 101:10 101:15 101:16 101:17 |
| 58:6 58:7 | | **agreement**(11) 5:1 35:10 36:8 37:11 39:4 | | 20:1 20:1 20:4 20:8 20:9 20:10 20:12 | | 101:17 101:18 102:1 102:7 102:7 102:14 |
| | | 39:22 40:6 44:20 57:13 57:13 78:15 | | 20:18 20:19 20:21 21:10 21:23 21:25 22: | | 102:19 103:8 103:12 103:15 103:18 103:28 |
| **accepted**(1) 102:16 | | | | 22:6 22:7 22:11 22:14 22:14 22:16 22:17 | | 104:2 104:14 104:17 104:19 104:20 |
| **access**(5) 28:20 30:14 57:14 66:24 103:2 | | **agreements**(1) 26:9 | | 22:23 22:23 23:6 23:14 23:19 23:22 23:22 | | 104:21 104:25 105:15 105:15 105:16 |
| **according**(1) 102:10 | | **agrees**(1) 85:13 | | 24:6 24:9 24:25 25:5 25:12 25:16 26:2 | | 105:16 105:19 105:20 105:22 105:25 106:8 |
| **accrue**(1) 105:1 | | | | 26:8 26:12 26:15 26:18 27:1 27:4 27:5 | | 106:8 106:9 106:11 106:11 106:13 106:13 |
| **accrued**(4) 69:5 69:6 69:12 75:2 | | **ahead**(6) 26:16 42:3 54:9 60:10 87:24 88: | | 27:13 27:19 27:21 27:23 28:6 28:12 28:11 | | 106:14 106:15 106:17 106:18 106:19 |
| **accumulate**(1) 49:3 | | 93:16 94:3 | | 28:19 29:5 29:7 29:13 29:16 29:19 29:22 | | 106:22 106:25 107:9 107:10 107:11 107:13 |
| **accumulated**(9) 9:24 9:25 10:16 | | | | 29:23 29:24 29:25 30:4 30:6 30:8 30:15 | | |
| **accurate**(3) 34:2 34:2 47:18 | | **ahm**(8) 18:4 18:10 24:3 29:16 55:7 81:17 | | 30:16 30:17 30:17 30:18 30:24 31:2 31:8 | | **andrew**(1) 1:28 |
| **achieve**(2) 105:22 105:24 | | 93:16 94:3 | | 31:9 31:15 31:17 32:18 33:6 33:19 34:15 | | **another**(6) 19:24 19:25 21:6 62:23 80:24 |
| **acknowledged**(2) 60:8 98:22 | | | | 34:18 34:20 34:23 34:24 35:1 35:7 35:15 | | 81:2 |
| **act**(8) 56:15 77:20 91:22 91:25 92:8 92:20 | | **ahm's**(1) 92:1 | | 36:8 36:14 37:22 37:23 38:18 38:19 38:20 | | |
| 93:18 93:20 | | **ahms**(1) 17:17 57:12 | | 38:22 39:6 39:11 39:23 40:21 41:17 41:17 | | **answer**(9) 16:3 18:12 40:19 40:21 41:22 |
| | | **all**(84) 4:11 5:1 5:14 5:14 5:19 6:1 6:3 | | 41:22 42:17 42:23 43:12 45:21 45:24 48: | | 45:6 47:23 70:8 82:6 |
| **acting**(1) 77:17 | | 6:14 7:1 11:12 12:14 14:6 14:7 16:2 16:5 | | 48:17 48:19 48:19 49:5 49:8 49:8 49:25 | | |
| **action**(3) 32:19 59:10 59:11 | | 16:19 18:4 18:22 18:25 22:4 22:21 23:21 | | 50:13 50:22 51:4 51:14 51:18 51:18 51:19 | | **answers**(1) 70:9 |
| **actions**(3) 61:10 102:2 105:9 | | 26:9 31:23 33:4 38:11 38:14 38:15 39:5 | | 52:12 52:25 53:6 53:9 53:11 53:16 54:14 | | **anticipating**(1) 95:10 |
| **active**(1) 25:24 | | 39:16 40:20 41:21 43:15 44:14 44:17 | | 54:15 54:16 54:16 54:17 54:25 55:1 55:3 | | **any**(67) 5:7 5:21 5:24 6:10 7:25 12:19 |
| **activities**(3) 8:7 8:24 12:5 | | 49:14 52:6 52:8 52:12 52:14 53:23 53:14 | | 55:7 55:7 55:22 56:3 56:5 56:8 56:14 | | 13:12 17:3 17:3 17:6 24:8 27:23 31:24 |
| **activity**(1) 102:5 | | 53:15 53:22 53:25 54:5 54:10 55:4 60:8 | | 57:17 57:22 57:23 57:24 57:25 58:4 58:6 | | 35:8 38:21 39:8 40:14 45:5 45:9 45:13 |
| **actual**(12) 30:11 67:5 67:6 67:9 67:22 | | 60:21 61:13 61:13 61:13 64:11 65:11 65:11 | | 58:8 58:9 58:11 58:13 58:18 58:18 58:19 | | 47:13 48:19 51:11 52:6 52:10 64:7 64:7 |
| 68:2 73:25 77:15 93:15 100:17 101:8 | | 66:17 67:9 67:17 70:15 73:22 76:1 78:14 | | 58:20 58:25 59:4 59:6 59:9 59:10 59:18 | | 64:10 85:18 86:21 86:21 87:2 89:7 89:12 |
| 105:9 | | 79:16 79:17 81:18 83:3 84:4 85:18 86:14 | | 59:22 59:23 60:1 60:5 60:7 60:8 60:9 | | 89:12 91:11 91:20 93:20 94:7 94:16 101:3 |
| **actually**(14) 4:9 12:22 14:21 17:19 27:18 | | 89:21 91:17 95:19 96:1 96:3 96:5 | | 60:14 60:15 60:17 60:19 60:19 61:4 61:7 | | 102:4 102:5 103:4 103:10 103:16 104:22 |
| 27:19 27:21 28:23 35:11 40:8 58:2 73:14 | | 98:18 99:22 104:5 104:12 105:19 105:22 | | 61:10 61:10 61:12 61:15 61:17 61:20 | | 105:7 105:11 106:9 106:10 107:2 107:13 |
| 79:6 98:3 | | 107:14 107:19 | | 61:21 62:9 62:10 62:11 62:14 62:20 63:1 | | |
| | | | | 63:4 63:16 63:20 64:5 64:6 64:14 64:18 | | **anybody**(3) 28:20 53:15 97:11 |
| **addition**(10) 5:16 6:5 21:1 33:23 90:19 | | **allegation**(8) 24:14 25:9 26:3 26:25 78:20 | | 65:4 65:9 65:15 65:23 65:24 66:1 66:1 | | **anybody's**(1) 51:13 |
| 95:18 96:7 100:6 100:20 103:23 | | 93:10 95:6 96:5 | | 66:3 66:3 66:6 66:11 66:13 66:15 66:25 | | **anyone**(2) 51:7 53:19 |
| | | | | 67:5 67:8 67:20 67:25 68:2 68:6 68:6 | | **anything**(5) 56:6 73:19 77:13 79:13 82:7 |
| **additional**(4) 76:2 77:10 81:15 103:3 | | **allegations**(3) 25:7 90:21 96:5 | | 68:9 68:9 68:10 68:13 | | 100:16 |
| **address**(8) 73:8 74:23 82:11 84:3 94:14 | | **allege**(1) 82:22 | | | | |
| 94:19 95:4 98:15 | | **alleged**(3) 94:7 97:11 97:22 | | | | **anyway**(1) 83:21 |
| | | **alleges**(2) 57:13 83:6 | | | | **anywhere**(1) 19:15 |
| **addressed**(1) 90:6 | | **alleging**(3) 33:11 88:25 91:5 | | | | **apologize**(7) 4:3 4:8 26:17 43:25 47:3 |
| **addresses**(1) 85:21 | | **allow**(1) 66:14 | | | | 94:23 99:12 |
| **addressing**(2) 66:7 82:17 | | **allowed**(2) 55:4 105:12 | | | | |
| **adhere**(1) 33:17 | | **alone**(2) 74:2 103:10 | | | | **app**(1) 61:16 |
| **adjourned**(2) 107:19 107:22 | | **along**(1) 79:15 | | | | **apparently**(1) 60:3 |
| **adjustable**(1) 97:1 | | **already**(6) 13:8 15:23 16:4 34:22 78:23 | | | | **appeal**(2) 63:5 106:21 |
| **adleson**(6) 59:22 60:15 60:19 61:13 63:22 | | 80:22 | | | | **appealed**(1) 20:4 |
| 86:23 | | | | | | **appear**(1) 100:21 |
| | | **also**(36) 8:25 9:10 10:17 11:23 12:7 20:7 | | | | **appears**(1) 50:16 |
| **adleson's**(2) 86:8 104:19 | | 21:7 21:23 30:24 33:17 38:18 56:24 59:8 | | | | **appellate**(2) 61:17 68:14 |
| **administration**(1) 28:19 | | 62:17 64:14 67:24 78:3 80:24 81:10 83:8 | | | | **applicable**(1) 102:22 |
| **administrativ**(6) 24:23 62:8 89:8 103:11 | | 83:12 83:17 86:10 88:6 88:8 88:13 88:14 | | | | **application**(19) 63:19 63:20 63:24 63:25 |
| 104:24 105:12 | | 88:21 94:6 96:12 96:25 101:22 101:23 | | | | 64:3 64:4 64:15 65:21 75:8 76:9 80:3 |
| | | 101:24 102:8 105:3 | | | | 81:20 81:25 95:20 95:21 95:22 95:24 96:6 |
| **administrator**(3) 26:10 26:13 28:11 | | | | | | 101:21 |
| **admission**(2) 5:17 5:23 | | **altered**(1) 51:20 | | | | |
| **admit**(2) 55:18 87:22 | | **alternate**(1) 59:15 | | | | |
| **admitted**(3) 60:19 79:20 101:22 | | **although**(2) 12:24 104:25 | | | | |
| **admitting**(1) 5:16 | | **always**(9) 56:1 56:9 56:22 57:2 77:15 | | | | **applications**(1) 55:13 |
| **advice**(4) 10:20 106:9 106:10 106:23 | | 78:25 90:4 100:21 102:13 | | | | **applied**(1) 81:25 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**appreciate**(1) 19:9
**appreciates**(1) 54:17
**appreciation**(1) 71:14
**approach**(2) 6:21 69:16
**approaches**(1) 81:19
**appropriate**(1) 25:19
**approved**(3) 79:9 79:10 81:24
**approximately**(3) 19:12 33:21 71:11
**april**(2) 89:5 89:7
**are**(58) 4:3 4:16 5:15 5:16 5:16 7:17 8:8 15:13 15:17 15:17 15:18 15:19 19:12 22:5 25:12 25:13 26:14 29:13 30:19 31:10 32:4 33:21 34:20 35:3 35:25 36:6 42:7 42:17 42:22 43:7 45:8 46:5 46:5 46:6 47:8 50:22 60:15 66:1 67:6 70:11 72:4 73:24 76:13 85:5 88:14 88:15 88:20 91:6 91:21 92:9 92:23 92:23 93:15 93:25 95:5 100:6 100:10 100:22

**area**(1) 51:1
**argue**(6) 55:8 77:4 89:21 100:15 100:20 101:5

**arguendo**(1) 95:2
**argument**(4) 66:18 76:21 86:13 97:19
**arguments**(7) 24:25 25:5 77:6 84:15 89:17 96:20 100:6

**arise**(4) 92:22 93:19 93:21 93:24
**arisen**(1) 105:9
**arising**(1) 99:25
**arizona**(2) 88:13 88:19
**arm**(1) 16:20
**arms**(4) 19:24 19:25 49:4 49:5
**arose**(1) 107:12
**around**(2) 18:7 88:4
**ask**(9) 14:14 40:14 40:14 44:18 50:7 56:8 56:18 64:22 80:13 89:1

**asked**(3) 17:21 66:25 79:23
**asking**(11) 18:12 45:4 50:17 50:18 71:3 71:5 74:7 74:9 80:12 83:8

**aspirations**(1) 105:20
**assembled**(1) 10:15
**asserts**(1) 26:4
**assessing**(1) 91:20
**asset**(3) 62:14 73:24 96:7
**assets**(5) 8:13 28:15 33:25 62:16 95:25
**assignment**(1) 104:10
**assigns**(2) 85:17 99:1
**assisting**(1) 97:15
**associated**(3) 9:6 20:3 46:7
**associates**(1) 68:10
**assumed**(1) 4:6
**assumes**(1) 44:7
**assuming**(3) 18:9 94:8 95:2
**assurances**(1) 57:10
**attach**(1) 63:24
**attack**(2) 74:6 103:24
**attacking**(1) 73:1
**attempt**(2) 50:10 84:10
**attempts**(2) 91:17 101:15
**attendance**(1) 6:6
**attention**(1) 107:7
**attorney's**(1) 74:3
**attractive**(1) 23:2
**attractiveness**(1) 22:18
**auctioned**(1) 91:11
**august**(3) 63:3 68:11 70:2
**aurora**(1) 87:9
**authenticated**(1) 5:15
**authenticity**(1) 5:13
**authority**(3) 30:14 77:18 88:11
**automatic**(5) 100:8 103:13 103:17 104:1 105:5

**available**(5) 27:14 30:5 30:11 79:19 91:22
**avenue**(1) 2:6

**award**(1) 107:13
**aware**(11) 32:4 32:20 33:1 34:20 42:7 42:17 45:9 46:5 46:9 91:8 95:19

**b.r**(1) 58:13
**back**(6) 4:5 83:7 83:11 83:16 83:21 90:10 91:24 102:8

**backed**(1) 86:8
**background**(1) 76:15
**bait**(4) 56:3 79:14 82:7 100:2
**balance**(2) 20:8 20:9
**balances**(1) 20:8
**bank**(1) 22:11
**bankruptcy**(27) 1:1 1:18 8:3 8:10 8:14 8:18 9:14 11:1 26:8 42:8 44:6 45:12 57:22 58:14 60:2 63:1 70:12 89:20 90:15 90:16 91:4 91:7 91:25 97:21 97:23 101:24 103:24

**banks**(2) 22:11 22:13
**based**(24) 15:3 15:5 15:20 22:9 25:16 27:12 47:19 55:14 59:17 61:22 62:21 64:23 65:2 74:13 77:8 77:9 80:12 91:12 92:23 93:16 103:15 104:1 105:6 105:25

**basically**(5) 10:4 13:7 13:24 25:22 103:21
**basis**(5) 9:18 39:11 57:17 92:16 105:4
**bate**(1) 43:9
**bates**(5) 29:1 31:3 31:9 31:9 36:12
**beach**(78) 1:24 4:6 52:11 52:20 52:21 52:25 53:12 54:3 54:8 74:19 74:20 74:21 75:11 75:13 75:25 76:7 76:12 76:25 77:3 77:8 77:21 78:1 78:3 78:6 78:9 78:18 79:1 79:17 80:7 80:9 80:11 80:16 80:18 81:6 81:8 82:10 82:14 82:16 84:20 84:23 85:1 85:4 85:9 85:24 86:7 86:10 86:13 87:13 87:20 88:2 88:3 88:18 89:9 89:13 89:17 89:19 90:2 90:4 90:11 92:10 92:14 93:8 93:14 94:13 94:22 94:25 95:5 95:18 96:10 97:18 98:2 98:7 99:9 106:4 106:24 107:1 107:3 107:20

**beach's**(1) 96:20
**beautiful**(2) 66:1 66:2
**because**(30) 4:5 13:16 13:17 19:5 20:2 20:9 21:7 26:6 26:8 27:11 31:20 44:14 47:5 47:25 49:12 49:24 50:25 58:15 61:15 61:25 63:2 72:8 73:17 75:6 76:16 79:19 87:7 90:22 97:9 103:21

**been**(28) 7:19 44:21 47:22 54:15 57:2 64:6 69:24 72:21 76:1 76:2 79:25 86:21 90:6 90:24 90:25 91:1 91:14 92:17 97:14 97:15 101:4 102:3 103:19 103:19 105:4 105:10 106:5 106:5

**before**(14) 1:17 41:5 42:5 42:12 68:23 73:16 80:19 80:23 81:17 93:20 95:8 95:11 97:4 103:16

**began**(3) 33:24 68:4 76:8
**begins**(4) 33:7 36:21 36:22 37:6
**behalf**(9) 4:13 39:7 41:4 54:12 74:21 77:12 96:16 103:7 103:9

**behind**(2) 87:23 106:11
**being**(17) 22:16 30:8 41:13 41:18 48:20 50:14 51:18 53:3 56:12 68:7 70:16 70:18 76:18 79:4 92:19 95:3 97:1

**believe**(49) 4:25 5:2 25:11 31:17 34:9 44:10 47:24 49:24 54:22 55:7 56:24 57:19 62:3 62:6 63:10 63:17 66:21 66:21 67:8 69:15 70:13 71:17 71:21 72:7 72:14 73:9 73:15 73:19 73:23 73:24 73:25 74:15 81:20 81:23 82:7 83:18 84:25 86:2 88:15 88:20 90:14 94:20 96:20 97:24 100:13 102:11 102:17 104:11 107:12

**believed**(2) 65:3 66:12
**bench**(1) 54:7

**beneficial**(9) 39:23 40:6 60:11 60:24 61:2 61:2 84:10 85:2 85:2

**beneficiaries**(6) 60:8 60:16 60:21 86:14 86:16 98:16

**beneficiary**(10) 60:17 60:18 60:20 60:23 85:1 85:4 85:6 86:1 86:15 86:15

**benefit**(2) 28:12 106:16
**benefited**(1) 62:21
**best**(6) 10:19 11:22 20:15 90:12 99:20 102:3

**better**(3) 81:3 81:8 107:10
**between**(8) 12:3 20:8 22:2 55:7 77:9 77:25 78:8 89:3

**beyond**(3) 45:16 51:25 105:21
**bid**(1) 71:3
**big**(5) 22:11 57:23 60:3 70:18 87:6
**bind**(3) 77:12 78:13 100:16
**binder**(8) 28:4 28:6 32:12 32:16 35:21 36:2 40:25 45:19

**bit**(3) 53:2 91:23 102:8
**board**(1) 43:17
**bond**(1) 22:12
**book**(1) 33:19
**borrow**(1) 13:4
**borrowed**(4) 62:14 65:7 65:8 92:11
**borrower**(13) 11:24 13:2 20:24 21:6 21:13 25:18 33:22 82:22 82:23 85:13 85:15 97:7

**borrowers**(7) 20:22 20:23 21:2 21:8 55:3 55:4 55:5

**borrowing**(1) 101:22
**boss**(1) 11:9
**both**(20) 11:13 26:11 29:23 34:22 39:13 55:13 60:15 62:18 62:20 86:20 88:9 88:13 88:19 94:11 98:18 98:24 100:7 101:6 101:7 106:12

**bottom**(5) 28:23 31:3 31:8 75:20 102:23
**bought**(1) 68:19
**brandywine**(1) 1:30
**breach**(1) 108:8
**break**(2) 4:3 4:7
**breakdown**(1) 11:23
**bridgeport**(3) 81:5 81:6 81:12
**brief**(7) 53:13 88:16 88:21 96:17 96:22 97:18 101:10

**briefly**(2) 67:3 94:19
**bringing**(2) 58:24 107:7
**brings**(1) 62:2
**broker**(13) 55:6 77:20 79:8 81:2 81:3 81:12 96:24 100:14 101:17 101:17 101:18 102:6 102:14

**brokers**(2) 54:25 71:5
**brought**(3) 41:3 68:7 97:25
**bucketed**(1) 20:1
**building**(1) 1:30
**business**(18) 9:16 9:17 9:17 9:24 11:8 11:12 12:22 12:23 12:23 12:25 13:5 13:10 19:6 22:6 25:13 51:2 51:12 102:3

**but**(98) 4:8 12:7 13:19 14:22 14:25 16:13 16:14 16:20 16:25 17:10 17:24 18:11 21:24:4 27:3 27:7 28:24 34:11 35:4 35:10 40:5 44:13 47:5 47:24 49:7 49:20 50:7 51:11 51:12 53:6 53:16 53:17 54:5 57:7 58:1 59:13 63:6 64:3 64:20 64:25 66:14 66:19 67:24 68:13 68:22 69:15 71:25 72:3 72:7 72:21 72:25 73:14 73:17 75:17 75:25 76:10 77:20 78:2 78:5 79:8 79:2 79:19 79:24 80:9 81:24 82:1 82:2 82:13 83:12 84:3 85:5 85:15 85:19 86:1 86:11 86:18 86:23 87:6 88:20 89:14 89:25 90:8 90:19 92:21 93:14 94:6 94:21 96:5 99:21 102:4 102:23 104:1 104:18 105:7 105:22 106:4 106:22 107:10

**buy**(2) 71:5 71:8
**buyers**(2) 30:23 51:10
**buying**(1) 64:1
**cal**(3) 61:14 61:16 61:25
**calculated**(2) 72:5 72:6
**calendar**(1) 10:1
**california**(24) 44:6 44:13 59:21 59:23 60:3 60:5 61:17 67:4 68:1 68:9 68:14 68:18 71:18 82:20 84:12 86:2 86:25 87:4 87:14 88:8 89:23 90:13 100:9 103:25

**call**(5) 4:14 7:1 20:12 81:12 92:8
**called**(2) 57:23 68:10
**calling**(2) 57:12 96:24
**calls**(4) 7:4 40:9 44:24 51:22
**came**(9) 17:14 18:10 47:17 65:5 65:9 67:21 68:11 79:4 97:21

**can**(45) 4:3 5:5 9:21 12:2 18:1 20:16 26:20 28:9 28:24 30:2 31:12 34:8 47:14 53:7 53:7 53:12 53:17 53:20 54:5 66:19 68:12 76:3 81:22 82:11 82:19 83:22 83:24 87:18 88:20 89:14 91:19 92:20 93:1 93:10 93:21 93:24 94:9 94:14 95:4 98:18 98:25 105:18 106:20 106:21 107:16

**can't**(13) 34:7 69:25 83:13 83:18 88:24 92:5 93:4 93:4 94:10 95:13 102:1 105:14 105:23

**canceling**(1) 85:20
**cannot**(2) 97:25 100:16
**capacity**(1) 28:11
**capped**(1) 93:25
**car**(1) 91:15
**cards**(1) 91:15
**care**(2) 4:17 4:18
**case**(41) 1:7 4:20 6:15 6:18 52:21 54:14 54:20 55:6 57:22 58:12 58:14 61:18 61:25 67:6 68:4 68:10 71:21 72:4 73:25 83:8 83:17 84:4 84:5 84:13 87:3 87:14 88:5 88:8 88:10 90:13 96:24 96:25 97:14 98:3 98:3 98:12 98:13 98:17 101:12 106:11 107:11

**cases**(6) 59:9 87:7 87:10 88:9 88:15 88:19
**categories**(1) 20:6
**category**(1) 48:1
**causation**(1) 90:20
**cause**(1) 94:5
**center**(1) 31:6
**centre**(1) 2:13
**cert**(1) 108:9
**certain**(13) 12:21 13:3 16:6 16:7 47:25 48:10 48:14 48:16 49:2 56:20 85:7 86:18 93:17

**certainly**(2) 76:17 82:4
**certification**(2) 106:25 108:1
**certified**(1) 108:10
**certify**(1) 108:2
**cetera**(4) 16:8 16:8 29:10 53:10
**chain**(2) 46:6 57:24
**challenge**(1) 75:18
**change**(4) 10:25 55:24 102:15 103:16
**changed**(1) 56:5
**channels**(1) 9:15

| Word | Page:Line |
|---|---|
| chapter(2) 1:4 106:19 | |
| characteristic(1) 21:15 | |
| characteristics(16) 11:24 11:25 13:2 13:19 16:8 17:12 22:15 24:8 48:10 48:14 48:21 49:2 49:9 50:13 51:9 51:14 | |
| characterization(1) 50:7 | |
| charge(2) 8:5 9:18 | |
| chart(4) 45:24 47:4 61:1 61:11 | |
| chase(8) 76:22 77:1 77:11 77:11 78:1 78:8 78:11 78:13 78:16 | |
| chicago(4) 84:22 86:12 104:10 104:14 | |
| chief(1) 11:10 | |
| children(1) 4:4 | |
| christopher(1) 1:17 | |
| circuit(1) 98:3 | |
| circular(1) 27:2 | |
| circulate(1) 106:25 | |
| circumstance(1) 79:24 | |
| cite(6) 58:12 59:8 59:18 71:22 84:6 87:7 | |
| cited(2) 82:21 88:15 | |
| cites(2) 84:5 88:20 | |
| citing(1) 72:4 | |
| civil(4) 59:23 60:5 67:4 68:1 | |
| claim(38) 24:23 55:21 62:8 67:3 67:25 68:7 71:24 74:24 76:3 83:11 83:16 83:21 83:22 83:24 88:18 89:8 90:9 92:21 92:22 93:9 93:11 94:8 94:10 97:4 97:4 99:23 99:24 102:21 103:10 103:11 104:1 104:9 104:22 104:23 104:24 105:2 105:11 105:11 | |
| claimant(4) 6:16 6:18 73:25 88:18 | |
| claimed(1) 73:10 | |
| claiming(1) 75:5 | |
| claims(10) 6:12 8:12 31:18 76:18 96:19 96:20 97:3 97:22 97:25 98:11 | |
| clarify(2) 5:12 18:19 | |
| class(1) 32:19 | |
| classic(1) 56:3 | |
| clause(1) 44:16 | |
| clear(14) 49:22 62:11 63:19 67:6 77:8 78:22 83:2 83:8 84:1 87:3 93:20 97:24 98:17 102:11 | |
| clearly(8) 22:22 51:4 77:10 86:8 90:5 95:20 95:21 96:3 | |
| clerk(5) 7:7 7:9 7:13 53:25 99:18 | |
| client(3) 53:8 80:1 80:4 | |
| close(5) 4:20 6:14 52:15 91:20 106:19 | |
| closed(2) 97:23 100:19 | |
| closer(1) 34:8 | |
| closing(7) 10:10 52:20 66:5 67:14 67:16 80:25 80:25 | |
| code(5) 59:23 60:5 67:4 68:1 86:2 | |
| cognizable(1) 105:11 | |
| cold(1) 96:24 | |
| collateral(4) 62:12 69:21 74:6 103:24 | |
| colleagues(1) 27:18 | |
| collect(2) 92:2 92:3 | |
| collection(4) 68:22 92:6 92:8 92:20 | |
| come(6) 4:5 80:2 82:2 89:25 91:19 105:16 | |
| comes(4) 20:21 28:18 67:20 99:23 | |
| coming(1) 54:16 | |
| commen(1) 54:4 | |
| comments(5) 54:5 76:16 76:23 76:25 94:1 | |
| commit(3) 56:5 63:18 105:23 | |
| commitment(1) 81:9 | |
| commitments(1) 77:13 | |
| committed(2) 81:16 101:15 | |
| committee(5) 2:4 54:4 94:13 96:16 97:3 | |
| committing(2) 92:12 102:4 | |
| communicat(3) 55:2 55:4 77:19 | |
| communication(1) 55:9 | |
| communications(2) 41:13 55:5 | |
| companies(1) 22:14 | |

| Word | Page:Line |
|---|---|
| company(8) 11:9 49:7 50:14 50:23 77:19 91:11 105:24 106:1 | |
| complain(6) 32:19 32:20 32:24 32:25 33:10 33:11 | |
| completely(1) 66:2 | |
| compliance(1) 58:20 | |
| complied(2) 61:21 98:15 | |
| comply(4) 58:19 61:7 85:16 100:9 | |
| compound(1) 39:12 | |
| computer(1) 56:20 | |
| conaway(3) 1:22 4:13 74:21 | |
| concentration(3) 21:14 21:18 24:10 | |
| concept(1) 82:11 | |
| concerning(1) 32:8 | |
| conclusion(2) 40:10 44:25 | |
| conclusively(1) 57:19 | |
| condition(3) 67:1 97:8 97:9 | |
| conditions(1) 65:2 | |
| conduct(7) 62:7 62:24 63:2 71:20 72:13 73:23 97:11 | |
| conduit(1) 71:5 | |
| confirm(1) 29:19 | |
| confirmed(1) 57:11 | |
| conforming(1) 20:8 | |
| connecticut(1) 58:14 | |
| connection(18) 45:11 77:4 77:20 78:19 82:8 84:16 87:8 90:20 93:18 95:14 95:14 101:21 102:24 103:9 103:14 104:8 104:21 105:3 | |
| conscious(1) 53:2 | |
| consider(2) 56:8 56:18 | |
| consideration(1) 73:12 | |
| considered(2) 92:6 93:11 | |
| consistent(2) 57:2 104:21 | |
| contacted(1) 81:23 | |
| contained(1) 19:15 | |
| contains(2) 31:14 98:16 | |
| contested(1) 57:25 | |
| context(4) 58:21 77:18 97:4 97:13 | |
| continuation(1) 72:12 | |
| continue(3) 33:17 63:6 66:13 | |
| continued(5) 62:12 63:6 63:26 79:6 104:25 | |
| continues(1) 63:16 | |
| continuing(5) 72:8 105:3 105:6 105:14 106:14 | |
| continuous(1) 91:16 | |
| contract(11) 75:2 77:8 77:23 77:25 78:4 78:7 78:8 78:10 81:16 98:18 98:25 | |
| contractor(1) 77:22 78:12 | |
| contrary(3) 74:8 83:4 92:4 | |
| conversely(1) 21:18 | |
| conversion(1) 72:14 | |
| conveyance(2) 37:25 73:4 | |
| cooking(1) 79:15 | |
| coon(1) 91:16 | |
| cooperate(3) 37:2 39:24 59:3 | |
| cooperation(1) 41:19 | |
| coordination(1) 16:24 | |
| copies(1) 18:1 | |
| copy(3) 6:22 44:9 59:23 | |
| core(2) 33:17 33:23 | |
| corner(2) 31:3 31:8 | |
| corp(4) 46:11 46:18 46:21 47:8 | |
| corporation(1) 1:9 | |
| correct(12) 14:2 17:4 17:14 19:2 24:1 24:2 24:19 25:19 31:20 36:9 43:14 108:2 | |
| correctly(4) 38:3 38:24 38:25 | |
| corresponded(1) 63:21 | |
| corroborated(1) 57:3 | |
| cost(1) 107:7 | |
| costs(3) 67:14 67:16 81:15 | |

| Word | Page:Line |
|---|---|
| could(32) 13:4 13:18 26:8 31:2 39:17 39:19 40:15 41:19 44:21 44:22 57:23 57:24 57:24 59:3 65:3 73:14 75:17 77:19 78:13 80:3 84:1 88:23 90:5 90:6 91:6 91:14 91:17 91:21 92:12 102:7 102:18 106:9 | |
| couldn't(7) 43:23 64:18 64:23 77:11 77:12 77:17 91:10 | |
| couldn't(1) 59:1 95:25 | |
| counsel(3) 87:10 93:1 107:10 | |
| counter(1) 100:12 | |
| country(2) 21:3 21:3 | |
| counts(1) 39:13 | |
| couple(4) 81:22 89:15 95:3 100:5 | |
| course(7) 27:17 56:2 65:22 66:4 66:14 75:21 85:11 | |
| court(259) 1:1 4:2 4:11 4:16 4:20 4:23 5:6 5:10 5:19 5:21 5:24 6:1 6:8 6:12 6:14 6:17 6:19 6:23 7:1 7:5 11:3 11:5 13:22 14:3 14:7 14:10 14:13 14:16 14:19 14:24 15:2 15:8 15:11 15:13 15:17 16:2 16:5 16:10 16:13 16:16 16:19 16:24 17:2 17:20 18:1 18:4 18:8 18:14 18:21 19:3 19:9 23:8 26:18 26:22 27:7 27:10 27:24 28:2 29:1 31:23 32:1 33:12 34:7 36:18 38:9 38:11 38:13 38:21 39:13 39:16 39:19 40:11 40:20 41:10 41:16 41:18 41:21 41:25 42:3 42:13 43:6 43:10 43:12 43:15 43:19 43:22 43:24 44:6 44:9 44:12 44:23 45:1 45:24 46:2 46:15 46:19 46:22 46:25 48:5 48:24 49:16 49:18 49:20 50:2 50:6 51:1 52:3 52:6 52:8 52:12 52:15 52:18 52:23 53:4 53:14 53:19 53:22 54:1 54:7 54:9 54:11 54:17 56:23 58:9 58:14 58:18 63:8 63:11 63:13 64:20 64:22 66:5 67:12 65:15 65:19 65:22 66:10 66:18 67:9 67:12 67:14 67:17 67:19 67:23 68:5 68:12 68:14 68:15 69:5 69:8 69:12 69:18 70:4 70:6 70:9 70:19 70:21 70:24 71:3 71:10 71:16 71:23 72:3 72:16 72:18 72:20 72:25 73:5 73:13 73:16 74:9 74:11 74:11 74:12 74:18 75:10 75:12 75:14 76:5 76:11 76:24 77:1 77:7 77:17 77:25 78:7 78:8 78:7 78:17 78:24 79:2 80:5 80:8 80:10 80:15 80:17 81:7 82:9 82:11 82:15 84:19 84:21 84:24 85:2 85:8 85:23 86:4 86:9 86:11 87:12 87:18 87:21 87:24 88:1 88:7 88:19 89:6 89:11 89:16 89:18 89:21 89:25 90:3 90:8 90:12 90:13 90:15 92:7 92:15 93:13 94:12 94:16 94:19 94:23 95:1 96:9 96:11 96:14 98:1 98:6 98:8 99:3 99:5 99:10 99:12 99:15 99:19 103:16 104:20 105:16 106:7 106:18 107:2 107:8 107:9 107:16 107:19 108:10 | |
| court's(4) 58:19 74:7 74:8 103:24 | |
| courtroom(1) 1:9 | |
| create(2) 10:21 22:9 | |
| created(4) 10:3 20:3 20:11 20:19 | |
| creates(1) 21:5 | |
| credit(54) 5:5 16:8 25:17 33:20 51:15 51:20 55:12 55:15 55:22 55:23 56:2 56:9 56:10 56:13 56:15 56:17 56:22 62:24 77:13 78:19 78:20 78:22 78:25 79:4 79:6 80:6 80:7 89:2 90:21 90:22 90:23 91:3 91:8 91:14 91:15 91:18 91:22 91:24 92:2 93:3 93:4 93:15 93:18 93:20 93:21 93:22 94:2 94:3 94:8 100:1 100:20 102:12 102:12 105:4 | |
| creditors(2) 2:5 8:11 | |
| cross(1) 3:4 | |
| cross-examination(1) 32:2 | |
| crystal(2) 98:3 98:17 | |
| cumulative(2) 27:7 27:7 | |
| cure(2) 83:5 83:13 | |
| cured(1) 104:16 | |
| current(2) 7:22 8:8 | |
| currently(1) 7:17 | |

| Word | Page:Line |
|---|---|
| custom(2) 85:16 86:24 | |
| cut(1) 64:8 | |
| cut-off(1) 64:12 | |
| cv-99-1464(1) 68:13 | |
| daily(1) 105:4 | |
| damaged(2) 75:7 76:2 | |
| damages(31) 67:3 67:5 67:6 67:22 67:25 68:2 68:9 68:16 71:19 72:4 72:23 74:1 74:1 74:3 74:15 76:5 83:8 83:17 83:22 91:20 91:21 92:13 92:22 93:19 93:21 93:24 93:25 94:6 104:25 105:9 107:13 | |
| dancy(1) 87:9 | |
| data(1) 1:37 | |
| date(5) 29:5 29:11 63:3 75:3 91:1 | |
| dated(2) 33:6 61:17 | |
| day(18) 8:6 8:6 8:23 8:23 9:18 9:18 46:9 46:17 55:18 64:3 66:5 68:20 76:14 80:24 89:6 105:10 105:16 106:18 | |
| days(1) 81:22 | |
| deal(8) 13:24 28:20 34:25 56:5 57:23 84:7 91:23 98:9 | |
| dealing(2) 32:6 54:15 | |
| dealings(1) 56:2 | |
| deals(3) 19:18 19:19 84:8 | |
| dealt(1) 15:1 | |
| deborah(1) 2:10 | |
| debt(7) 91:13 92:2 92:3 92:6 92:8 92:20 93:18 | |
| debtor(9) 1:22 77:2 78:8 90:9 92:15 101:1 102:3 102:19 103:8 | |
| debtor-in-possession(1) 62:13 | |
| debtors(57) 1:11 3:5 4:14 4:14 5:16 7:4 7:8 8:3 8:14 24:23 25:9 26:5 26:25 36:9 39:5 54:23 54:23 55:17 55:18 57:22 58:2 60:25 62:7 62:24 63:6 63:15 64:15 66:25 73:15 73:16 73:17 73:18 73:24 74:10 74:22 74:25 75:6 76:1 76:3 76:7 76:21 77:11 77:12 77:12 78:1 80:23 89:8 91:20 95:22 96:5 96:19 97:11 97:15 97:18 100:12 102:20 103:9 | |
| debtors-in-possession(1) 62:19 | |
| deceive(1) 66:23 | |
| december(3) 95:8 95:12 95:15 | |
| decide(1) 89:22 | |
| decided(4) 81:10 81:12 87:14 88:8 | |
| deciding(1) 20:13 | |
| decision(4) 47:20 47:21 47:23 100:17 | |
| decisions(1) 19:7 | |
| declaration(2) 44:21 58:5 | |
| declared(1) 62:10 | |
| declined(1) 73:18 | |
| declining(2) 34:1 75:24 | |
| decrease(1) 24:17 | |
| deed(21) 37:25 60:9 60:14 60:16 60:16 60:18 60:20 60:22 84:11 85:6 85:9 85:11 85:11 85:15 85:20 86:1 86:4 98:16 98:19 98:20 98:25 | |
| deeds(1) 88:14 | |
| deemed(1) 24:11 | |
| default(8) 61:23 61:24 69:5 69:22 82:12 83:5 83:13 104:15 | |
| defaulted(2) 95:12 97:8 | |
| defaults(1) 21:13 | |
| defect(5) 68:8 71:20 83:11 83:21 88:24 | |
| defective(1) 57:20 59:15 101:6 | |
| defense(2) 95:4 103:21 | |
| defenses(2) 63:16 96:3 | |
| defer(1) 76:25 | |
| deficiencies(3) 30:21 41:14 41:18 | |
| deficiency(4) 74:24 75:1 100:7 104:23 | |
| deficient(1) 61:22 | |

| Word | Page:Line |
| --- | --- |

defined(1) 77:23
definition(1) 56:2
delaware(4) 1:2 1:8 1:11 4:1
delinquencies(1) 91:14
delinquency(5) 26:5 28:13 30:6 91:16 92:5
delinquent(2) 26:14 30:19
deliver(2) 37:23 38:20
delivered(1) 38:23
demand(2) 20:10 21:16 24:12
demanded(1) 57:6
demonstrated(1) 58:25
denied(1) 96:20
denny(1) 2:14
dent(3) 30:16 30:17 30:18
denying(1) 58:15
department(1) 15:18
deposit(2) 67:12 67:15
deposition(6) 6:4 6:5 6:10 79:20 101:23 101:25

designate(1) 86:5
designated(1) 48:1
designation(1) 6:11
designations(3) 6:3 6:4 6:6
designed(2) 104:13 104:13
desire(1) 106:6 106:8
detailed(2) 11:23 12:15
details(1) 45:16
determination(2) 47:14 47:16
determine(10) 11:19 11:22 12:13 12:17 13:3 13:16 13:18 22:17 25:18 56:21

determined(2) 15:24 19:20
determining(1) 20:15
deutsche(1) 22:11
developed(1) 107:11
diaz(1) 1:37
dictate(1) 16:25
did(40) 10:24 11:13 11:16 12:24 13:9 16:25 20:18 23:14 23:16 23:17 24:4 29:19 29:21 32:7 38:3 38:24 38:24 40:15 43:2 43:22 48:8 48:13 55:2 56:22 58:7 58:7 63:6 63:8 63:18 64:20 64:20 64:22 66:24 69:8 78:7 80:5 80:7 80:8 82:24 87:10 97:22 99:10 102:7 102:17 103:14 104:10

didn't(16) 16:11 17:2 24:4 33:13 48:11 59:6 72:11 74:12 75:15 82:2 88:1 92:2 95:15 97:18 100:16 102:19

didn't(4) 27:17 35:14 90:4 95:25
difference(5) 22:2 60:3 76:14 103:5 103:18
different(9) 13:24 20:4 20:4 21:2 21:3 21:4 21:14 21:7 21:8

direct(8) 3:4 7:14 38:5 41:8 41:12 47:25 48:8 52:1

directly(4) 11:14 77:19 87:7 104:20
discharge(7) 63:8 63:9 89:20 89:22 91:25 92:17 105:5

discharged(1) 89:11
discharges(1) 90:16
disclose(2) 26:11 77:23
disclosed(2) 35:7 35:9
disclosure(1) 35:8
disclosures(1) 101:24
discretion(1) 40:3
discuss(4) 10:5 10:18 22:15 102:17
discussed(1) 41:13
discusses(1) 68:15
discussions(2) 10:17 12:16
disposition(2) 13:6 25:21
dispositive(2) 82:18 83:23
dispute(3) 63:4 93:21 94:7
disputed(1) 94:2
distribute(1) 10:2

district(8) 1:2 61:17 68:14 87:11 87:13 88:7 88:7 90:17

disturbed(1) 107:9
diversification(6) 20:21 20:25 21:1 21:6 21:7 21:11

diversify(1) 20:18
diversity(1) 21:22
division(17) 8:1 8:2 8:6 8:15 10:24 15:23 17:8 17:18 49:12 49:13 49:15 49:25 50:13 50:19 54:25 55:2 61:17

dlj(19) 23:18 23:22 23:22 29:17 29:19 29:22 29:24 34:16 34:18 34:20 35:4 47:20 49:8 49:9 50:14 50:23 51:5 51:10 51:19

dlj's(1) 35:1
docket(1) 68:12
doctrine(1) 69:15
document(26) 5:2 28:9 28:17 28:21 30:2 31:2 31:12 32:18 39:10 41:5 42:5 42:12 42:17 42:18 42:21 43:9 44:3 46:14 46:16 56:14 56:16 56:16 56:19 59:17 85:6 93:14

document's(1) 33:12
documentary(1) 52:12
documents(18) 4:17 4:23 5:1 5:14 5:15 27:22 30:21 35:3 35:3 35:7 35:15 38:22 39:8 40:14 66:23 84:25 100:21 105:15

does(15) 18:19 18:19 21:10 27:8 30:15 35:11 35:17 46:15 47:11 87:21 88:11 88:25 89:7 97:3 98:15

doesn't(17) 49:15 61:7 64:16 64:24 64:25 69:23 75:22 84:7 86:16 89:10 89:11 89:1 92:18 92:21 104:7 106:15 106:15

doesn't(2) 51:23 89:12
doing(1) 72:23
dollar(1) 69:1
dollars(2) 92:17 105:25
don't(40) 6:23 14:21 17:23 19:1 35:4 40:10 40:18 40:21 40:22 44:12 44:12 44:14 45:2 45:5 45:6 45:13 45:16 47:10 47:23 50:7 53:4 53:5 53:15 53:15 53:19 59:13 63:4 64:9 69:16 79:23 82:7 92:7 92:19 93:10 98:24 104:2 105:22 106:21 107:5 107:12

done(8) 4:6 35:25 36:1 44:15 51:1 54:6 64:25 80:19

don't(7) 47:14 51:11 53:2 53:17 68:21 78:24 92:9

down(17) 21:5 25:10 29:13 36:17 37:5 52:9 55:10 67:10 72:22 80:22 81:15 83:21 89:24 91:5 99:23 101:22 104:16

draconian(1) 61:20
drastic(1) 61:19
dream(1) 65:23
dreams(2) 105:19 105:24
drive(3) 13:9 25:25 53:8
dropped(1) 78:20
duplicative(1) 86:21
duration(1) 33:18
during(4) 20:20 41:12 51:15 57:22
duty(2) 58:23 59:2
each(6) 12:25 19:12 19:20 20:13 21:10
earlier(1) 21:25
early(1) 55:21
easiest(1) 6:24
eastern(2) 88:7 88:7
easy(2) 49:3 105:18
economics(2) 10:22 12:18
ecro(1) 1:35
educated(1) 19:7
edward(2) 2:5 96:15

edwards(1) 1:26
effect(3) 24:18 90:21 100:2
effective(1) 59:12
efforts(1) 39:25
efiled(1) 44:10
eight(1) 28:21
eighty(7) 16:7 17:13 17:16 18:10 18:18 27:4 27:8

eileen(1) 27:18
either(11) 15:5 23:12 24:11 27:23 31:19 33:22 53:7 60:21 61:8 94:11 105:11

electronic(2) 1:43 108:3
else(2) 56:7 77:13
email(1) 71:1
emails(1) 68:22
employed(2) 7:17 7:19
employee(1) 55:3
employees(2) 55:2 71:8
employment(2) 21:4 66:13
encouraged(3) 12:20 24:15 24:16
end(10) 10:1 20:20 25:23 47:17 54:5 64:3 76:14 90:24 105:10 105:16

enforce(2) 89:22 90:16
enforced(1) 100:11
enough(5) 9:25 45:11 56:25 57:10 57:15
ensure(1) 58:20
entered(1) 90:17
entirety(1) 96:21
entities(1) 12:23
entitled(3) 69:17 71:18 74:15
entitles(1) 68:8
entity(3) 18:16 47:9 47:12
equitable(2) 63:15 73:9 105:13
equities(2) 63:16 63:17
equity(5) 57:14 68:16 69:19 100:4 102:18
erin(1) 1:26
error(1) 56:20
escrow(2) 55:16 55:19
especially(2) 77:18 83:19
esq(9) 1:24 1:25 1:26 1:27 1:28 1:29 2:5 2:11 2:12

esquivel(2) 6:6 57:3
esquivel's(2) 65:9 66:13
essence(1) 55:20
essentially(2) 68:18 91:13
establish(1) 60:14
established(7) 56:25 57:19 60:25 61:1 62:3 62:3 62:4

establishes(1) 54:22
estate(16) 8:7 8:13 8:24 9:23 11:20 14:8 14:20 18:6 105:12

estoppel(3) 97:19 98:7 98:10
even(22) 24:12 24:17 56:1 59:13 63:21 68:6 79:9 80:23 81:11 84:7 88:22 88:22 91:19 91:21 93:10 94:7 95:15 97:11 101:2 102:17 103:2 104:15

event(6) 21:13 83:14 86:22 87:2 101:3 105:8

events(1) 102:24
eventually(1) 64:18
ever(5) 13:9 41:5 83:4 94:2 94:3
every(8) 26:12 26:12 49:9 66:6 66:10 66:15 66:15 96:7

everyone(1) 55:19
everything(4) 55:12 61:11 66:24 70:15
everything's(1) 79:15

evidence(20) 33:12 44:8 52:12 54:22 56:25 57:16 64:7 70:24 73:23 77:10 79:21 83:3 83:25 92:4 94:1 94:2 97:21 103:3 103:15 105:8

evidentiary(1) 52:16
exact(1) 64:12
exactly(2) 80:18 100:23
examination(2) 7:14 41:8
examined(4) 27:21 34:22 35:1 35:15
example(2) 19:23 49:2
except(1) 5:1
exception(12) 57:2 79:7 79:9 79:10 79:11 79:25 80:12 80:13 81:24 82:1 102:13 102:14

excerpt(1) 33:5
excess(1) 19:19
exchange(1) 57:1
excuse(3) 59:1 101:7 102:1
execute(6) 8:23 37:23 38:20 40:14 45:10 98:14

executed(4) 44:4 60:7 61:3 98:21
executing(1) 60:2
execution(1) 59:19
exercise(3) 20:17 85:18 86:18
exercising(1) 86:19
exhibit(36) 5:3 5:4 6:22 26:2 26:20 27:24 28:4 28:6 29:25 32:11 35:20 36:2 36:4 36:6 40:24 43:3 43:11 43:12 45:18 45:22 46:24 56:13 58:4 59:24 60:14 61:1 61:5 62:25 68:21 68:22 70:10 70:14 70:17 71:2 71:9 93:2

exhibits(1) 5:17
exist(2) 65:3 88:25
existed(1) 24:17
existing(1) 33:21
exists(1) 5:8
expect(2) 10:21 79:8
expense(2) 62:8 103:11 104:24
experian(1) 92:9
experience(5) 22:10 45:5 45:8 45:13
expert(1) 90:23
expertise(1) 12:7
explain(2) 9:21 12:2
extensive(1) 100:23
extent(7) 5:7 24:9 49:1 73:12 73:19 76:2 104:2

extract(1) 25:10
fact(15) 20:22 21:2 47:11 55:3 57:11 58:1 60:25 62:15 69:23 83:25 88:15 94:6 94:9 100:22 105:6

factors(1) 91:6
facts(6) 44:7 55:17 57:5 57:8 79:3 105:23
factual(1) 26:3
factually(3) 25:7 26:4 98:4
failed(1) 101:23
failure(1) 100:8
fair(10) 45:17 53:16 56:15 91:22 91:24 92:8 92:20 93:18 93:18 93:20

fairly(3) 20:9 54:14 54:18
fake(1) 51:19
falls(1) 75:23
false(3) 74:10 105:15 105:25
falsity(1) 95:20
familiar(3) 36:6 46:6 47:4
fanny(1) 20:10
far(1) 47:5
fargo(3) 26:11 28:11 28:18
favor(1) 63:17
federal(1) 90:17
feel(1) 106:17
fees(6) 69:5 69:12 70:15 74:3 81:15 91:10
fester(1) 106:14
few(2) 54:4 87:15
fewer(1) 19:18

| Word | Page:Line |
|---|---|
| **fico**(2) | 21:8 93:4 |
| **fifty**(2) | 60:10 60:23 |
| **fifty-thousand-dolla**(3) | 100:4 100:25 102:25 |
| **fight**(1) | 35:24 |
| **figure**(3) | 53:21 73:21 93:3 |
| **file**(3) | 37:12 37:22 63:25 |
| **filed**(5) | 8:10 32:19 91:4 91:7 97:21 |
| **filing**(2) | 9:14 11:2 |
| **final**(4) | 6:22 63:25 90:24 100:17 |
| **finance**(1) | 101:15 |
| **financial**(4) | 64:23 96:1 97:8 97:9 |
| **financing**(4) | 62:13 62:20 66:4 66:11 |
| **find**(6) | 74:7 82:19 93:4 93:7 101:13 |
| **fine**(1) | 53:17 |
| **finish**(1) | 74:5 |
| **finished**(1) | 53:7 |
| **firm**(1) | 83:15 |
| **first**(43) | 4:19 11:8 22:4 22:8 23:10 23:15 23:20 23:21 23:21 23:24 24:18 25:9 27:5 27:12 28:14 29:9 35:21 36:2 38:19 40:24 44:14 49:14 52:25 54:12 54:20 61:16 63:18 70:13 72:7 76:20 82:3 82:17 82:23 84:4 85:10 89:20 90:1 90:14 93:11 94:10 95:6 100:8 104:12 |
| **fit**(2) | 47:25 51:9 |
| **five**(4) | 31:6 53:17 53:21 106:17 |
| **five-hundred-thousand-dolla** | 102:9 |
| **fixed**(3) | 19:23 19:23 49:5 |
| **flight**(1) | 53:9 |
| **flights**(1) | 53:10 |
| **floor**(1) | 1:31 |
| **flow**(2) | 61:11 75:22 |
| **flows**(1) | 75:23 |
| **focus**(1) | 76:18 |
| **follow**(3) | 36:17 41:17 97:3 |
| **followed**(1) | 97:16 |
| **for**(161) | 1:2 1:22 2:4 2:10 3:5 4:2 4:23 5:1 5:12 5:17 5:23 7:8 7:9 7:18 8:10 8:11 8:25 9:21 10:23 12:18 13:6 15:5 15:9 15:24 16:10 17:22 18:18 19:22 20:1 20:16 20:17 20:21 21:6 21:16 21:22 21:22 22:6 22:17 25:10 25:21 25:23 26:11 26:16 28:11 28:12 29:16 29:20 30:3 31:13 34:10 34:11 34:11 34:23 36:18 36:10 37:24 38:21 39:8 39:11 40:9 41:3 42:7 44:24 45:11 45:21 47:12 48:1 48:17 48:17 49:2 50:14 50:18 50:21 51:10 51:22 54:13 54:16 55:9 55:12 55:13 56:10 56:11 56:1 57:1 57:21 58:1 58:4 58:9 58:15 58:17 58:22 58:23 59:1 59:9 59:16 62:17 64:10 64:17 64:22 66:1 66:4 67:5 67:25 68:2 68:16 68:23 70:6 70:8 70:12 70:13 70:14 71:6 72:10 72:23 73:14 73:15 73:25 74:2 74:2 74:10 74:15 74:20 75:9 77:13 79:19 80:3 80:12 80:13 81:25 82:11 82:21 83:7 83:8 83:24 84:3 84:9 85:17 87:6 87:7 90:12 91:4 91:9 92:15 94:4 94:9 96:18 97:9 97:12 97:20 97:21 97:24 98:5 99:24 100:3 103:25 104:6 104:18 106:17 106:22 107:6 |
| **forced**(4) | 68:19 69:16 69:18 69:19 |
| **foreclosed**(5) | 62:9 64:19 68:20 69:2 91:13 |
| **foreclosure**(43) | 29:12 31:16 31:18 39:5 39:9 39:25 40:3 40:15 41:4 45:4 45:15 57:18 57:20 59:6 59:11 59:15 61:19 62:3 67:25 68:3 68:8 68:16 68:17 68:19 68:23 69:23 70:2 71:20 72:9 74:14 82:12 82:13 82:23 83:11 83:24 100:7 100:10 101:5 101:8 103:12 104:8 104:9 104:23 |
| **foregoing**(1) | 108:2 |
| **forged**(1) | 51:19 |
| **forget**(2) | 41:22 64:20 |
| **form**(1) | 106:24 |
| **forth**(1) | 96:18 |
| **fortunes**(1) | 66:12 |
| **forty-eight-something**(1) | 67:18 |
| **forward**(4) | 39:9 40:15 61:12 73:22 |
| **foul**(2) | 68:6 83:12 |
| **found**(10) | 25:7 37:1 57:25 58:13 61:5 61:16 65:25 71:2 71:8 90:15 |
| **foundation**(1) | 42:11 |
| **four**(3) | 31:6 83:19 106:4 |
| **fox**(1) | 2:13 |
| **frankly**(7) | 64:23 75:16 83:17 91:20 104:13 105:10 105:20 |
| **fraud**(14) | 62:3 62:3 63:18 67:5 68:7 71:15 75:22 97:22 99:24 100:13 101:16 102:5 103:7 105:23 |
| **frauded**(1) | 100:14 |
| **fraudulent**(1) | 101:16 |
| **fraudulently**(1) | 54:21 |
| **freddie**(1) | 20:10 |
| **free**(1) | 62:11 |
| **friday**(1) | 79:16 |
| **friedman**(2) | 68:24 71:1 |
| **from**(57) | 4:8 10:25 11:15 14:11 15:7 17:6 17:10 17:14 18:10 19:15 20:7 20:10 20:22 21:1 21:2 26:6 26:25 28:18 29:22 30:20 33:15 42:8 44:21 45:12 46:10 51:12 54:23 57:21 58:1 58:4 58:15 58:22 61:18 63:2 68:5 68:22 68:24 70:12 71:1 71:14 74:21 75:22 75:23 80:2 80:24 81:3 90:18 91:7 92:11 92:22 96:16 96:23 100:18 105:9 106:23 107:12 108:3 |
| **front**(2) | 41:20 66:25 |
| **full**(4) | 82:25 83:4 101:24 106:2 |
| **fully**(2) | 54:14 54:17 |
| **function**(4) | 11:13 13:6 25:21 45:14 |
| **functions**(1) | 8:21 |
| **fund**(1) | 22:14 |
| **funded**(4) | 46:10 46:17 46:20 46:23 |
| **funding**(1) | 29:23 |
| **funds**(1) | 72:10 |
| **further**(3) | 31:22 52:4 52:10 |
| **gain**(1) | 105:14 |
| **game**(1) | 65:5 |
| **gating**(1) | 94:5 |
| **gave**(1) | 66:23 |
| **general**(1) | 51:12 |
| **generally**(15) | 14:16 15:22 16:9 16:13 16:14 19:14 19:22 20:19 30:22 48:13 48:24 48:25 49:4 50:20 93:17 |
| **generate**(2) | 62:20 72:10 |
| **generated**(2) | 56:14 93:16 |
| **generous**(1) | 82:2 |
| **genuinely**(1) | 54:16 |
| **geographic**(1) | 21:2 |
| **get**(34) | 10:6 10:21 11:20 15:21 22:24 38:7 39:7 41:19 41:25 53:3 54:5 57:17 63:8 64:15 64:17 66:4 66:11 66:15 66:17 90:21 92:2 83:11 83:16 88:23 89:14 90:1 91:16 91:17 91:22 94:9 95:3 95:15 96:12 96:24 101:19 106:22 |
| **gets**(3) | 70:19 81:13 81:20 |
| **getting**(1) | 59:23 |
| **give**(8) | 6:23 87:18 88:20 89:7 92:12 95:22 99:6 103:10 |
| **given**(6) | 76:1 77:16 82:5 86:17 86:18 107:11 |
| **gives**(1) | 85:7 |
| **giving**(4) | 54:13 56:19 72:22 75:8 |
| **goes**(3) | 52:25 61:12 92:7 |
| **going**(27) | 4:3 4:16 13:22 21:5 23:9 33:6 33:9 35:23 35:23 38:7 43:6 52:15 65:3 69:19 69:20 71:6 73:12 76:15 78:8 80:21 81:10 82:22 90:8 90:9 96:2 107:6 107:13 |
| **gone**(1) | 59:3 |
| **good**(8) | 4:12 6:19 7:16 19:9 43:19 74:20 87:18 96:15 |
| **google**(1) | 65:24 |
| **got**(12) | 11:8 18:5 43:15 52:19 56:4 57:8 58:9 63:9 65:24 71:7 81:22 96:11 |
| **gotten**(1) | 59:4 |
| **grand**(1) | 92:10 |
| **grant**(1) | 107:6 |
| **granted**(2) | 85:14 102:14 |
| **granting**(1) | 58:9 |
| **greater**(1) | 27:4 |
| **greatest**(1) | 20:25 |
| **greecher**(6) | 1:27 70:2 70:6 89:5 94:24 99:14 |
| **grounds**(1) | 105:13 |
| **group**(3) | 19:25 19:25 88:6 |
| **groups**(3) | 19:24 20:2 25:14 |
| **guess**(7) | 4:6 15:11 19:5 19:8 51:13 86:12 95:10 |
| **guesstimate**(1) | 19:4 |
| **guidelines**(3) | 13:1 25:16 25:17 |
| **had**(79) | 8:21 8:22 8:22 9:16 10:8 11:20 12:24 12:25 13:18 13:24 14:9 15:23 19:18 20:9 22:21 24:18 25:5 27:15 27:18 27:19 29:3 30:13 35:16 48:14 51:7 51:12 51:19 55:5 55:5 55:12 56:1 56:3 56:4 56:6 59:2 59:5 62:22 64:4 64:4 65:4 66:4 66:6 66:10 66:11 66:15 66:15 72:1 72:14 73:1 74:11 75:16 77:20 77:22 78:11 80:21 81:2 81:8 81:9 82:24 83:2 83:4 84:17 91:9 91:15 91:15 91:16 94:14 95:20 95:22 96:1 100:23 101:1 101:4 103:19 105:01 106:18 |
| **hadn't**(4) | 64:6 92:10 92:17 94:7 |
| **hahn**(2) | 3:4 96:16 |
| **half**(3) | 33:21 34:3 69:24 |
| **half-day**(1) | 4:5 |
| **hammer**(2) | 72:22 104:16 |
| **hand**(2) | 7:7 87:17 |
| **handed**(2) | 98:13 98:13 |
| **hands**(2) | 96:3 105:13 |
| **happened**(4) | 94:1 100:23 106:3 107:10 |
| **happy**(2) | 53:16 107:21 |
| **hard**(1) | 93:1 |
| **harm**(5) | 67:7 68:5 83:12 104:24 107:12 |
| **harmed**(1) | 106:1 |
| **harrisburg**(1) | 1:39 |
| **has**(17) | 28:20 33:5 53:8 54:4 54:15 56:14 60:6 60:17 60:18 60:23 79:16 81:22 85:18 86:5 97:7 98:14 99:1 |
| **hasn't**(4) | 64:6 92:10 92:17 94:7 |
| **have**(129) | 4:7 5:10 5:13 6:11 7:19 12:16 13:12 15:7 16:11 17:3 17:6 20:22 20:23 21:1 21:2 21:4 21:7 21:8 21:13 21:14 21:18 21:22 22:8 22:22 24:18 24:22 24:24 25:19 25:23 26:7 26:11 27:2 27:4 27:15 30:21 31:22 32:7 39:5 40:3 41:5 41:1 41:19 42:5 42:13 43:6 44:21 44:22 45:5 45:10 45:13 47:22 51:5 52:4 53:6 53:8 53:9 53:10 56:22 57:6 57:23 57:24 57:24 58:8 59:2 59:3 60:22 62:22 64:7 64:8 64:10 64:11 68:11 68:21 70:8 72:11 72:21 73:14 74:25 76:2 76:19 79:25 80:2 80:2 80:13 84:1 86:17 86:20 87:3 87:16 88:14 89:25 90:4 90:5 90:6 90:22 90:24 90:25 91:1 91:6 91:14 91:17 92:3 93:1 93:1 94:16 95:13 95:15 95:25 97:14 97:18 98:24 98:24 101:3 102:3 102:21 103:4 103:19 104:25 105:4 105:9 105:12 105:19 106:5 106:16 106:20 106:21 107:5 107:10 |
| **haven't**(4) | 40:8 41:9 69:14 75:17 |
| **haven't**(1) | 42:6 |
| **having**(2) | 55:15 86:20 |
| **he's**(3) | 42:12 49:24 71:3 |
| **head**(1) | 14:23 |
| **header**(1) | 42:21 |
| **hear**(2) | 34:7 77:6 |
| **heard**(5) | 42:15 54:14 54:17 63:22 96:23 |
| **hearing**(2) | 6:7 107:22 |
| **hears**(2) | 79:15 79:16 |
| **hearsay**(1) | 33:8 |
| **heck**(1) | 92:9 |
| **hedging**(2) | 12:8 33:24 |
| **held**(3) | 14:1 61:3 62:9 |
| **help**(3) | 26:20 84:25 93:1 |
| **helpful**(1) | 104:20 |
| **her**(78) | 6:18 24:23 25:1 25:3 26:7 55:11 55:13 55:15 55:22 55:23 56:4 56:4 56:5 56:9 56:17 57:2 57:10 57:14 57:16 57:17 57:25 63:9 63:19 64:4 64:9 64:10 64:15 64:23 65:9 65:11 65:20 65:23 66:12 66:12 66:25 67:1 67:6 67:22 68:23 71:21 79:25 80:4 80:13 81:1 81:2 81:9 81:11 81:16 81:25 81:25 89:1 90:23 91:10 91:11 91:12 91:14 91:18 95:6 95:14 95:22 95:24 96:20 97:8 97:9 97:10 97:22 97:23 99:25 101:15 101:20 101:21 101:23 101:24 101:25 |
| **here**(24) | 4:17 37:13 39:1 43:7 53:3 56:2 62:8 63:17 63:23 66:23 68:7 73:24 76:15 76:17 83:2 90:1 90:13 97:7 97:24 102:5 102:25 103:7 106:9 |
| **here's**(1) | 15:11 |
| **herself**(2) | 80:22 81:14 |
| **hessen**(2) | 2:4 96:16 |
| **hide**(1) | 26:5 |
| **high**(5) | 21:13 21:14 24:10 24:10 25:10 |
| **higher**(4) | 21:15 21:16 24:13 30:24 |
| **highlight**(1) | 97:20 |
| **hillocks**(2) | 20:1 49:5 |
| **him**(4) | 33:16 43:12 44:14 59:23 |
| **hinder**(1) | 103:25 |
| **hired**(2) | 11:8 45:14 |
| **his**(4) | 4:20 44:15 52:21 76:21 |
| **hit**(1) | 105:3 |
| **hits**(4) | 5:5 62:25 62:25 89:2 |
| **hold**(1) | 33:21 |
| **holders**(1) | 60:10 |
| **holdings**(1) | 1:8 |
| **holds**(1) | 85:13 |
| **home**(58) | 1:7 7:18 7:19 7:22 8:4 9:13 9:15 10:23 10:24 11:1 11:7 12:18 13:4 13:6 14:19 18:16 20:16 20:17 23:14 23:19 25:22 27:18 28:15 29:22 29:23 30:4 30:12 31:14 37:14 37:16 37:19 40:13 42:9 44:3 44:22 46:10 46:18 46:20 46:25 47:8 53:8 57:14 61:4 64:18 64:22 65:4 65:23 72:1 72:1 75:15 79:6 81:4 81:19 81:20 94:11 100:15 100:18 101:18 |
| **home's**(1) | 23:23 |
| **homes**(1) | 65:25 |

| Word | Page:Line |
|---|---|

honor(186) 4:12 4:15 4:19 4:25 5:9 5:11 5:20 5:22 5:25 6:2 6:13 6:16 6:21 7:3 11:6 18:25 28:1 31:25 32:25 38:4 38:8 39:10 41:7 41:12 43:8 43:25 44:11 44:24 46:1 46:13 47:3 48:3 48:22 48:25 49:11 50:9 51:22 52:4 52:7 52:11 52:14 52:17 52:21 53:3 53:12 53:18 53:20 54:3 54:8 54:12 54:19 54:22 55:10 56:1 56:8 56:14 56:18 56:24 57:6 57:18 58:3 58:11 59:13 60:1 60:13 61:7 61:15 61:24 62:2 62:6 62:12 62:23 63:9 63:15 63:16 63:20 64:3 64:5 64:14 65:1 65:9 66:17 66:20 67:2 67:3 67:24 68:8 68:15 68:18 68:20 68:23 69:15 70:5 71:9 71:13 71:17 71:25 72:7 73:8 73:13 73:22 74:4 74:7 74:17 74:20 74:23 75:11 75:13 75:25 76:10 76:16 76:22 77:3 77:4 77:5 77:21 78:18 78:21 79:17 80:18 80:19 81:22 82:6 82:10 82:16 82:18 82:20 83:9 83:17 83:23 84:3 84:13 86:7 87:3 87:15 87:16 88:5 88:22 88:24 89:9 89:13 89:20 90:5 90:11 90:12 90:19 91:5 91:8 93:5 93:8 93:9 93:19 93:25 94:4 94:15 95:12 95:18 95:19 96:2 96:10 96:13 96:16 96:18 97:2 97:6 97:12 97:20 98:2 98:9 98:17 98:19 98:19 99:8 99:9 99:16 107:1 107:3 107:4 107:6 107:15 107:18

honorable(1) 1:17
hope(1) 88:1
hopeless(1) 43:7
hour(2) 52:19 54:6
house(11) 55:15 55:19 65:23 66:3 69:1 69:3 71:5 71:7 72:15 100:5 102:19

housekeeping(1) 107:4
how(23) 7:19 10:24 11:22 13:3 13:10 13:18 19:12 19:20 20:15 20:18 22:7 22:8 31:4 38:10 46:15 52:18 52:23 53:2 57:23 62:5 68:24 105:18 107:11

however(1) 22:23
huge(1) 90:20
hundred(3) 15:14 18:16 92:10
hundred-and-fifteen(1) 64:9
hyper-technical(1) 64:2
i'll(19) 5:6 5:17 53:6 54:19 74:5 75:11 76:10 76:10 76:18 76:23 79:17 82:17 89:10 89:13 90:17 91:24 93:7 96:17 99:6
i'm(61) 8:17 11:4 13:22 13:22 14:13 23:7 29:3 32:15 33:1 33:3 33:6 33:9 34:7 35:23 35:23 36:3 38:7 40:18 40:22 41:22 42:18 42:23 42:24 44:1 45:2 45:2 46:5 46:24 47:2 47:2 47:4 49:17 50:6 50:17 50:17 51:12 52:3 53:9 53:16 53:20 60:2 60:10 66:6 66:7 66:19 70:21 76:15 92:12 93:2 93:2 96:2 99:3 99:20 103:6 103:23 104:4 104:5 104:12 105:5 106:21 107:13

i've(4) 42:15 45:3 106:12 106:13
idea(3) 22:8 90:22 102:21
identified(3) 84:24 85:6 85:25
ignores(1) 58:1
imagine(1) 81:22
immeasurabl(1) 67:8
impact(2) 22:20 74:24
implemented(1) 102:15
import(1) 102:2
importance(1) 24:6
important(4) 56:10 56:11 56:12 56:19
improper(1) 62:4 68:16 68:19 72:21 82:22 83:24 102:2 102:5 103:8 103:17 104:5
improperly(1) 72:2
inability(1) 95:11
inc(5) 1:8 41:4 42:10 44:4 47:1
incentive(9) 65:17 65:19 66:4 66:6 66:8 66:10 66:15 66:16 66:21

included(1) 19:12
includes(2) 45:15 58:5
including(3) 33:18 40:2 85:19
income(3) 64:8 64:10 101:20
inconsistent(2) 100:22 100:22
incorrect(2) 25:8 26:4
incredible(1) 95:6
indeed(3) 63:20 100:13 104:4
indenture(10) 36:21 36:22 37:7 37:12 37:21 38:20 38:23 39:6 39:23 40:7

indentured(1) 37:1
independen(3) 25:13 77:22 78:12
index(1) 3:1
indicate(3) 27:2 47:12 105:8
indicates(1) 93:3
industries(1) 88:6
infamy(1) 89:7
information(7) 9:7 9:9 10:15 12:15 42:14 92:23 102:6

initio(2) 59:11 74:14
injunction(1) 89:23
input(1) 10:22
inside(1) 71:4
instance(2) 45:9 100:8
institutional(3) 12:12 12:12 30:23
instrument(3) 38:1 38:2 98:21
insurance(23) 22:13 27:1 27:3 27:11 27:14 27:16 27:20 27:23 31:18 31:20 33:19 33:23 34:10 34:21 34:23 34:24 34:25 35:10 35:12 35:16 35:18 35:24

insured(2) 33:21 34:4
intent(7) 63:20 64:6 66:22 66:22 74:8 82:24 101:16

intentionally(1) 63:18
interact(1) 12:24
interaction(1) 12:3
interest(23) 9:5 10:8 12:8 20:2 30:13 34:1 49:4 58:8 58:16 59:5 60:9 60:11 60:24 61:2 61:2 69:6 69:13 74:12 75:2 75:4 76:20 84:10 85:14

interests(1) 85:19
interrupt(5) 13:23 53:4 53:5 53:15 53:19
interrupted(1) 44:14
into(14) 5:5 11:9 13:17 18:17 19:23 20:2 20:5 28:21 39:5 47:25 79:20 80:21 97:1 105:16
invalid(2) 61:23 61:25
invalidated(1) 94:3
invalidates(1) 93:23
investigated(1) 57:24
investment(31) 8:2 8:6 8:6 8:7 8:15 8:22 8:24 8:24 9:23 10:24 11:8 11:10 11:13 12:4 14:9 14:20 15:6 15:9 15:23 15:23 22:11 22:19 22:23 30:4 31:14 40:13 44:2 49:12 49:14 49:25 61:4

investments(1) 22:24
investor(6) 20:10 21:15 21:21 21:24 23:1 30:25

investors(16) 9:11 9:12 10:3 10:6 10:19 11:23 12:12 16:1 20:5 22:13 22:18 26:6 26:14 28:12 30:5 30:12

involve(1) 88:9
involved(13) 10:4 10:13 10:17 11:14 13:7 13:20 19:15 23:3 23:6 23:12 26:7 80:23 81:18
involvement(1) 23:19
involves(1) 30:24
irrelevant(3) 83:14 84:14
isn't(6) 18:22 44:9 68:6 92:21 97:10 99:1

issue(22) 6:2 54:15 58:9 59:14 66:8 82:14 82:18 84:4 84:6 84:8 84:8 87:2 87:4 87:6 87:8 89:22 89:24 90:20 94:5 96:4 97:24 98:10

issued(3) 32:8 33:5 74:13
issues(8) 8:11 76:13 94:6 94:15 95:19 99:25 101:11 104:20

it's(52) 20:15 20:17 24:8 26:8 28:15 28:24 31:5 33:10 33:10 39:1 40:3 47:23 50:20 52:21 53:6 56:11 56:12 56:15 57:7 59:24 60:2 61:16 62:15 65:23 65:23 66:2 67:12 67:14 67:15 67:18 68:13 68:14 69:16 70:13 72:8 77:6 79:9 79:9 80:22 83:12 83:13 86:2 86:24 87:1 87:13 89:24 90:9 93:17 96:25 98:4 104:13 105:18

item(1) 105:18
its(5) 11:24 11:25 14:20 39:24 90:17
itself(3) 13:21 39:11 103:12
i'm(3) 30:1 37:16 65:15
job(2) 12:10 13:16
jpmorgan(1) 22:10
judge(3) 1:18 26:20 106:13
judgment(5) 59:9 59:17 59:18 87:5 103:15
judicial(4) 97:19 98:5 100:10 104:9
july(7) 33:6 55:18 55:21 55:23 63:11 63:12 79:10

june(2) 29:6 31:15
junior(3) 11:11 79:11 102:15
jurisdiction(2) 90:16 94:5
just(38) 5:12 6:23 11:1 14:22 16:13 17:2 19:5 19:7 20:24 27:17 42:11 49:22 50:17 51:11 51:13 51:23 53:14 54:3 54:4 68:2 68:22 74:23 75:11 81:10 83:8 83:16 83:18 83:21 87:14 89:14 94:13 94:19 96:22 97:20 98:2 103:20 106:3

justifiable(1) 95:23
justify(1) 62:7
keep(1) 55:19
key(1) 30:21
keys(1) 68:10
kind(10) 10:20 10:21 16:21 22:8 24:15 26:1 82:7 89:7 102:5 103:10

kinds(1) 12:21
knew(17) 16:5 16:6 16:21 55:15 55:17 55:19 55:22 58:2 58:2 58:2 58:3 59:5 79:23 80:11 95:21 95:24 97:22

know(69) 4:5 10:22 13:18 14:21 14:22 17:24 19:7 22:18 35:4 35:23 40:19 40:21 40:22 42:14 43:22 44:12 44:23 45:1 45:2 45:4 45:6 45:14 45:16 47:6 47:10 47:23 49:18 50:2 51:6 51:11 51:11 51:13 51:13 51:23 53:14 56:3 57:5 62:5 62:13 63:4 63:4 64:9 64:11 65:5 65:10 65:24 66:18 68:24 73:10 73:11 73:19 74:6 80:6 80:7 80:8 90:5 91:3 92:9 92:19 92:24 92:25 93:10 93:15 93:17 94:13 97:18 101:10 107:6

knowledge(3) 95:20 97:2 101:1
known(2) 13:12 106:13
knows(2) 97:6 107:10
kohler(1) 61:16
lacked(1) 90:16
lacks(1) 42:11
lane(2) 88:5 88:10
large(1) 22:13
largest(1) 62:15
last(7) 4:14 31:9 45:22 56:5 74:4 106:17 107:4

late(1) 11:15
later(4) 47:17 68:12 75:20 83:19
laughter(3) 4:10 18:24 87:25

law(14) 59:21 68:9 71:18 83:8 83:17 84:12 85:16 87:3 92:19 97:23 98:12 98:13 105:1 106:12

lawyer(1) 106:13
least(9) 38:25 60:23 71:19 73:16 87:22 88:3 94:4 102:23 107:6

leave(1) 58:15
leaving(1) 99:3
left(2) 91:25 92:1
legal(6) 40:9 44:25 56:19 63:23 85:14 106:20

legally(1) 56:16
lender(12) 60:17 60:18 60:20 78:11 78:14 78:15 85:5 85:17 86:20 88:12 98:22 98:25

lender's(3) 58:19 85:17 86:14
lender-paid(1) 33:22
lenders(4) 58:23 78:12 86:19 88:12
lent(2) 92:11 105:24
leslie(2) 1:35 41:25
less(3) 4:9 14:23 49:5
let(8) 13:22 14:13 46:5 53:14 89:1 94:16 102:8 103:10

let's(6) 4:16 4:23 7:1 31:4 35:20 44:17
lettau(20) 54:23 55:6 55:6 55:9 55:23 79:18 79:22 80:2 80:5 81:23 94:22 94:23 94:23 94:24 94:25 95:1 95:7 100:14 102:17 102:20 102:21

lettau's(1) 57:9
letting(1) 71:8
level(5) 12:17 21:6 27:22 30:24 34:24
lexus(3) 68:13 87:11 90:15
liability(1) 71:22
liable(2) 71:21 73:24
lie(6) 64:17 65:20 65:20 66:22 100:3 100:3
lied(5) 64:20 101:21 101:23 101:24 102:8
lien(9) 23:21 27:5 27:12 27:15 29:9 31:15 31:16 36:10 38:2

life(2) 106:12 106:19
lifeline(1) 57:1
lifetime(1) 106:14
lifted(1) 103:20
light(1) 90:14
like(22) 13:4 19:22 20:1 22:9 22:14 28:15 32:11 37:5 38:18 45:21 47:19 49:7 50:14 50:23 51:19 54:13 67:2 70:9 77:5 87:17 89:15 97:14

limine(1) 77:5
limitation(1) 94:6
limited(3) 85:19 91:21 104:17
line(7) 29:13 36:22 37:6 37:9 42:20 93:6 102:23

lines(3) 9:16 36:17 37:5
link(1) 55:7
liquidated(4) 62:17 73:11 73:14 73:15
liquidating(1) 62:20
liquidation(1) 72:10
list(5) 5:10 5:18 6:22 70:14 70:17
listed(2) 62:13 103:19
listing(1) 62:19
litigate(1) 106:14
little(7) 34:8 39:17 52:19 53:1 56:6 70:16 71:23

live(2) 66:3 89:6
llp(2) 1:23 2:4

| Word | Page:Line |
|---|---|

**loan**(140) 9:7 9:22 11:21 11:24 12:15 13:3 16:6 17:1 19:24 20:7 20:18 21:8 21:10 21:12 22:21 22:7 22:15 23:10 23:15 23:20 23:22 23:24 23:25 23:25 23:25 24:2 24:6 24:7 24:17 24:18 25:16 25:21 26:12 27:5 27:5 27:12 29:9 29:10 29:16 29:16 29:20 29:21 29:23 30:20 31:15 31:16 34:15 34:18 34:24 36:9 36:11 38:6 38:6 39:4 40:3 40:15 41:5 42:9 44:5 45:25 46:7 46:9 46:23 47:11 48:16 49:13 50:16 50:17 51:4 51:9 51:18 51:19 54:21 55:10 55:13 55:25 56:12 57:17 57:25 58:3 58:6 58:7 58:8 62:4 63:19 63:20 63:24 63:25 64:4 64:11 64:15 64:17 64:22 65:20 66:1 66:15 66:16 70:16 70:18 75:7 75:8 75:9 75:15 75:19 76:1 76:9 77:3 80:2 81:6 81:13 81:14 82:1 82:7 82:2 82:4 82:5 82:25 83:1 83:1 84:21 87:9 88:9 91:15 95:14 95:19 95:21 95:22 95:23 95:24 96:6 99:24 100:18 100:19 102:10 102:15 103:1 104:6 106:2 106:5

**loan-to-value**(1) 16:7

**loans**(98) 9:5 9:24 9:25 10:15 11:17 11:19 11:22 12:6 12:12 12:21 13:7 13:10 13:17 13:19 13:25 14:1 14:6 14:7 14:8 14:12 14:17 15:5 15:6 15:14 15:24 15:25 16:4 16:15 16:21 17:6 17:10 17:13 17:17 18:10 19:12 19:15 19:16 19:22 19:23 20:2 20:13 20:19 21:14 21:19 22:3 22:4 23:8 24:9 24:10 25:3 25:6 25:22 26:6 26:14 27:2 27:3 27:15 27:15 27:19 28:13 29:2 30:7 30:19 30:19 30:19 31:19 32:7 32:9 33:21 34:10 34:12 35:5 40:2 41:15 45:8 45:15 47:9 48:1 48:14 48:20 49:3 49:7 49:15 50:13 50:13 50:14 50:20 50:22 51:15 54:24 54:24 55:1 55:14 64:12 69:4 91:17 104:5

**location**(1) 66:2
**lodged**(1) 93:21
**logical**(1) 64:17
**long**(9) 7:19 53:9 53:9 53:10 54:16 90:6 104:7 106:2 106:16
**longer**(2) 53:2 92:18
**look**(10) 20:20 24:9 30:25 43:13 57:5 60:13 68:21 70:10 73:13 92:24
**looked**(2) 29:21 35:2
**looking**(3) 42:22 51:10 93:2
**looks**(3) 28:15 47:19 98:19
**lose**(1) 88:11
**loses**(1) 81:17
**loss**(1) 73:11
**losses**(1) 33:20
**lost**(3) 65:11 103:6 106:19
**lot**(4) 9:9 10:15 65:11 106:2
**low**(4) 21:18 22:21 22:23 22:24
**lower**(2) 21:20 22:25
**ltv**(9) 17:1 21:14 21:19 22:21 24:6 24:10 25:18 25:19 27:3
**ltvs**(1) 26:1
**lunch**(1) 4:7
**lundgren**(1) 1:28
**lying**(1) 64:15
**m-o-t-o**(1) 7:12
**mac**(1) 20:10
**macelli**(1) 58:13
**made**(28) 19:6 30:5 31:18 41:14 47:20 47:22 57:22 58:21 62:1 69:24 71:20 73:25 76:18 94:7 100:17 101:1 101:2 101:4 101:14 101:16 101:18 102:11 103:1 103:2 103:4 103:18 104:19 106:5
**madison**(1) 2:6
**mae's**(1) 20:10
**main**(1) 42:20
**major**(2) 101:11 101:11

**make**(23) 19:20 21:21 47:14 48:20 49:8 51:9 52:20 54:4 57:10 58:24 64:16 64:24 67:25 80:3 86:21 88:1 89:15 96:22 97:10 97:17 101:23 105:14 105:22

**makes**(4) 25:9 55:8 60:3 63:19
**making**(1) 19:7
**man**(1) 87:23
**manage**(4) 8:21 9:4 9:5 49:3
**manager**(1) 11:12
**managers**(2) 8:23 22:14
**managing**(1) 8:6
**manor**(1) 68:10
**many**(5) 19:12 31:4 89:24 91:6 91:15
**margaret**(1) 1:27
**market**(1) 1:10 12:11 75:20 88:10
**marketed**(2) 22:7 22:16
**marketing**(1) 22:21
**martinez**(3) 5:4 57:11 60:15
**masked**(1) 16:17
**matched**(2) 29:24 33:19
**material**(1) 64:4
**materially**(1) 96:6
**matter**(6) 27:8 77:13 80:21 104:7 107:5 108:4
**mattered**(1) 101:3
**matters**(2) 18:22 18:25
**maximization**(1) 20:17
**maximize**(1) 20:16
**may**(22) 6:21 7:13 15:6 24:12 24:12 42:13 52:8 54:2 54:11 66:20 68:23 69:24 69:25 71:14 72:21 92:20 92:20 96:12 102:3 104:25 105:4 105:9
**maybe**(4) 18:1 57:7 65:15 93:1
**mean**(24) 15:8 17:15 18:21 30:15 48:24 57:6 57:7 64:2 64:16 65:5 65:11 65:18 66:20 69:18 73:1 74:11 80:20 85:4 86:18 92:8 92:12 93:8 96:2 99:11
**means**(6) 9:21 21:19 30:16 75:16 86:14 105:21
**meant**(4) 11:3 18:9 18:11 99:12
**measure**(1) 21:12
**meet**(1) 48:14
**memo**(1) 29:23
**mentioned**(3) 9:20 12:1 25:11
**mere**(1) 68:7
**merican**(1) 1:7
**mers**(11) 57:23 60:17 61:7 61:9 84:16 84:18 84:24 85:13 85:16 85:25 86:5 86:1 86:15 86:16 86:18 88:11 88:19 88:19 98:14 99:1
**met**(3) 48:21 49:2 49:9
**michael**(4) 32:8 32:19 33:5 33:15
**microphone**(1) 34:8
**middle**(2) 53:5 53:6
**might**(5) 26:20 53:1 53:1 64:2 92:22
**million**(11) 68:25 68:25 69:3 69:3 70:18 70:19 73:17 75:9 75:18 92:16 105:25
**mills**(81) 2:10 4:24 6:4 6:15 23:4 23:7 23:8 23:9 23:14 23:20 23:22 24:18 24:22 25:1 25:5 26:5 27:4 29:9 29:16 29:20 31:16 42:8 54:12 54:15 55:11 55:11 55:25 56:1 56:4 56:17 56:21 56:25 57:12 57:22 57:23 63:1 63:17 64:15 64:17 68:8 71:12 75:6 75:7 75:9 76:3 76:12 76:17 77:18 78:5 78:6 78:16 79:14 80:1 80:4 80:6 80:13 80:20 81:25 83:2 83:6 84:1 84:5 85:12 86:13 88:22 91:3 91:19 91:25 92:16 94:20 96:19 97:21 99:23 101:13 102:18 104:14 104:17 105:21 106:
**mind**(3) 16:12 42:3 103:16
**minimum**(1) 79:5
**ministerial**(1) 87:1

**minus**(1) 69:21
**minute**(5) 41:10 41:11 43:6 56:6 94:14
**minutes**(4) 53:17 53:21 54:4 96:11
**mischaracterize**(1) 46:15
**mischaracterizes**(1) 46:14
**misleading**(1) 105:15
**misrepresent**(1) 105:23
**misrepresentation**(4) 75:14 75:23 76:8 76:10
**misrepresented**(4) 55:11 96:6 97:8 101:20
**missing**(1) 65:15
**misstates**(1) 48:3
**mistake**(1) 106:11
**mistakes**(1) 105:22
**misused**(1) 73:24
**mitigate**(2) 8:12 21:23
**mitigation**(2) 33:18 33:23
**modifications**(1) 79:11
**moment**(1) 91:25
**money**(8) 13:4 64:16 65:12 67:10 89:12 92:11 92:18 95:9
**monitoring**(1) 97:14
**montano**(1) 90:14
**month**(2) 10:11 26:12
**monthly**(5) 28:10 30:3 30:5 31:13 97:10
**months**(6) 47:17 69:25 95:4 95:12 100:5 103:2
**more**(9) 4:8 14:14 24:11 39:17 60:10 91:23 92:5 94:14 101:20
**moreover**(1) 104:22
**morgan**(1) 1:29
**morning**(5) 4:12 7:16 57:9 74:20 96:15
**mortgage**(53) 1:7 7:18 7:22 8:4 9:15 10:25 11:1 11:21 13:14 25:1 27:1 27:2 27:2 27:3 27:11 27:14 27:15 27:20 28:15 31:14 33:19 33:22 33:25 34:10 34:20 34:24 35:5 37:12 37:14 37:16 37:22 38:1 41:4 42:9 44:3 44:22 46:18 46:21 46:25 47:8 61:4 69:24 75:17 77:19 77:20 81:4 95:10 97:1 101:19 103:1 103:2
**mortgage's**(2) 9:13 23:19
**mortgage-backed**(5) 9:12 12:12 21:20 21:24 22:25
**mortgages**(3) 19:20 34:3 34:5
**most**(1) 5:3
**mother-in-law**(1) 4:4
**motion**(12) 41:3 57:25 58:4 59:2 59:5 59:9 59:16 59:18 70:13 77:5 87:5 103:15
**motions**(1) 70:11
**movant**(1) 41:20
**move**(7) 5:3 34:8 58:22 76:10 90:17 106:11 106:20
**moved**(4) 42:7 57:21 58:8 58:23
**moving**(3) 5:17 45:11 58:16
**much**(5) 13:4 21:16 21:20 24:12 101:13
**multiple**(3) 30:22 78:11 98:16
**murin**(1) 1:35
**must**(4) 61:21 65:23 82:23 93:21
**name**(2) 7:9 37:3
**naming**(1) 103:17
**nature**(3) 56:19 103:18 104:3
**necessarily**(2) 16:20 100:22
**necessary**(3) 39:8 40:4 85:15
**need**(1) 4:3
**needed**(2) 66:16 95:9
**needs**(3) 10:19 51:10 97:13
**nefarious**(3) 97:11 102:5 103:8
**negotiated**(1) 80:24
**neighborhood**(1) 65:25
**neither**(4) 27:15 27:19 35:15 102:25
**net**(3) 64:10 68:16 69:19

**netted**(1) 62:18
**neutral**(1) 33:19
**nevada**(1) 88:13
**never**(18) 24:3 40:13 41:19 42:3 42:12 45:3 45:3 59:11 62:1 72:14 78:5 83:2 83:20 84:1 92:3 92:11 92:11 104:19
**new**(1) 2:7
**next**(4) 45:21 82:10 88:5 106:3
**nine**(3) 36:17 37:5 69:25
**nineteen**(1) 31:6
**ninety**(1) 91:7
**nominee**(4) 60:17 85:5 85:16 86:25
**non**(2) 100:9 104:8
**non-conforming**(1) 20:8
**non-judicial**(2) 61:19 101:8
**non-payment**(1) 91:12
**none**(1) 94:1
**nor**(1) 102:25
**northern**(1) 87:13
**not**(115) 11:19 14:25 16:20 18:11 23:11 23:16 24:12 26:7 27:10 27:14 32:25 33:1 33:2 34:11 35:11 35:23 38:6 40:5 40:7 40:18 40:22 43:9 44:7 44:22 45:2 45:2 46:22 47:20 49:17 50:6 50:17 50:25 51:20 53:7 55:2 55:3 55:8 56:21 58:7 58:7 62:22 63:18 63:21 64:7 64:8 64:11 65:4 65:10 66:6 67:6 71:6 71:7 72:16 72:17 72:18 73:1 73:2 73:3 74:4 74:6 74:7 75:5 75:22 76:15 77:11 77:19 78:7 78:13 78:13 79:17 80:5 81:11 81:12 81:24 82:12 83:7 83:10 83:16 85:19 85:25 86:23 88:11 88:25 89:21 92:20 94:4 94:20 95:1 96:2 96:4 96:24 96:25 97:6 97:23 98:15 100:14 100:15 100:22 101:2 102:3 102:4 102:20 102:21 104:4 104:5 104:10 104:12 104:14 104:23 105:5 105:8 105:12 106:21 107:9 107:13
**note**(8) 39:8 47:16 47:22 56:11 59:20 69:21 84:12 86:17
**noted**(1) 80:19
**notes**(3) 39:24 60:12 82:19
**nothing**(2) 51:5 103:8
**notice**(3) 61:23 61:24 101:6
**november**(5) 1:13 4:1 28:16 87:14 108:8
**now**(32) 7:1 7:1 12:10 18:8 27:14 27:17 31:15 33:15 37:13 43:18 47:8 48:6 50:22 51:6 53:7 55:21 59:22 60:13 60:25 67:2 68:4 68:21 83:6 83:19 89:11 90:2 91:3 91:5 91:23 92:18 92:22 103:12
**number**(29) 10:8 14:22 14:25 17:24 18:6 19:2 29:10 29:16 29:17 29:19 29:23 29:24 31:3 31:9 31:9 32:15 35:20 36:6 54:20 56:10 63:15 68:12 68:13 68:13 81:14 91:9 93:6 94:4 95:5
**numbered**(1) 36:12
**numbers**(1) 31:9
**o'clock**(6) 99:6 99:10 99:11 99:13 99:14 99:15
**object**(1) 33:13
**objection**(26) 5:3 5:7 5:21 5:22 5:24 24:23 33:8 38:4 39:10 39:11 40:9 40:17 41:7 42:11 44:7 44:24 46:13 48:3 48:22 49:11 50:7 51:22 88:16 96:19 98:11 103:20
**objection's**(1) 40:20
**objections**(2) 6:4 6:11 58:12
**objects**(1) 49:18
**obligation**(2) 40:5 40:6
**obligations**(1) 63:23
**obtain**(1) 14:9
**obtained**(2) 14:9 75:17
**obviously**(5) 54:14 56:10 75:5 86:16
**occasion**(1) 32:7
**occur**(2) 10:10 80:25

| Word | Page:Line |
|------|-----------|
| **occurred**(6) 5:5 10:1 12:3 72:3 79:16 104:24 | |
| **october**(1) 57:12 | |
| **off**(2) 54:7 91:11 | |
| **offense**(2) 68:6 74:5 | |
| **offer**(6) 81:3 100:17 100:18 101:14 106:9 106:10 | |
| **offered**(3) 56:13 57:16 64:13 | |
| **offering**(1) 27:1 | |
| **offers**(2) 73:16 73:18 | |
| **office**(2) 57:9 98:22 | |
| **officer**(1) 11:10 | |
| **official**(1) 2:4 | |
| **offs**(1) 64:9 | |
| **often**(1) 4:9 | |
| **okay**(84) 6:8 6:12 8:19 14:10 14:15 14:18 14:24 15:12 15:16 15:17 16:16 18:3 18:14 18:15 18:23 22:1 26:3 27:24 28:2 28:5 28:8 28:22 28:25 30:5 31:7 31:11 32:1 32:17 32:23 33:4 34:9 34:15 34:18 35:4 35:9 36:12 36:13 36:17 37:8 37:11 37:20 38:9 38:12 39:2 40:24 41:2 42:7 43:15 43:24 44:1 45:23 46:2 46:3 47:8 47:21 50:22 51:3 51:14 51:18 52:2 52:18 63:13 63:14 65:1 65:14 66:9 67:23 70:4 70:9 71:16 71:17 72:24 74:16 76:11 79:1 80:11 82:9 85:8 85:23 88:17 94:12 96:9 98:1 99:20 | |
| **once**(7) 9:24 10:2 10:8 10:14 11:20 16:17 22:8 89:11 | |
| **one**(42) 4:6 5:1 5:2 5:12 6:2 8:21 9:4 9:16 11:10 17:25 22:5 24:8 27:8 27:18 31:5 36:17 48:19 49:9 51:14 54:4 60:23 61:6 62:15 63:21 69:9 75:21 86:25 87:5 87:9 87:12 96:23 97:17 99:1 99:12 99:13 99:14 99:15 103:1 104:2 104:2 104:4 107:4 | |
| **one-hundred**(1) 15:19 | |
| **one-point**(4) 69:8 70:20 70:21 71:9 | |
| **one-point-som**(1) 68:25 | |
| **only**(24) 11:9 17:16 22:5 27:3 30:11 30:24 33:9 35:3 45:13 49:1 55:7 55:9 61:6 61:7 68:11 76:12 79:18 84:5 85:14 85:25 86:2 93:23 96:4 103:1 | |
| **onto**(1) 10:16 | |
| **opening**(1) 44:15 | |
| **operate**(1) 88:12 | |
| **operating**(4) 26:9 35:2 35:7 35:10 | |
| **opinion**(1) 74:9 | |
| **opportunity**(3) 54:13 54:17 106:7 | |
| **opposed**(1) 20:24 | |
| **opposition**(2) 58:11 98:10 | |
| **option**(2) 19:25 49:5 | |
| **orally**(1) 105:16 | |
| **orchestrated**(1) 25:10 | |
| **order**(13) 48:14 57:21 58:9 62:19 63:1 74:6 74:13 101:19 102:19 103:25 105:23 106:25 107:17 | |
| **organized**(2) 35:4 99:21 | |
| **original**(3) 29:21 30:20 80:25 | |
| **originate**(5) 12:5 12:21 17:2 50:21 51:4 | |
| **originated**(22) 9:5 9:8 13:8 13:11 13:25 14:9 14:17 15:5 15:8 15:14 15:24 17:7 17:17 17:22 18:16 18:18 20:21 23:21 25:23 26:1 54:21 84:22 | |
| **origination**(30) 9:16 11:19 12:6 12:22 12:25 13:1 13:8 13:10 13:21 14:12 16:21 17:7 17:18 20:19 22:3 22:6 25:12 25:15 25:16 25:25 27:6 49:12 49:13 50:1 51:1 51:7 51:23 62:4 99:24 103:9 | |
| **originations**(2) 17:25 18:4 | |

| Word | Page:Line |
|------|-----------|
| **originators**(6) 12:1 12:4 12:21 16:19 16:20 24:16 | |
| **other**(28) 5:12 6:2 11:10 12:25 16:1 16:20 17:10 17:14 17:15 18:11 18:18 18:18 34:13 38:22 42:13 42:13 68:7 69:8 71:20 73:8 80:25 88:3 89:15 91:1 91:6 96:7 97:17 103:1 | |
| **our**(31) 6:3 6:5 6:22 8:12 11:18 11:19 15:10 16:15 17:22 22:9 24:4 33:17 33:24 34:11 54:14 58:11 58:11 59:9 59:16 59:18 61:5 73:22 75:8 82:21 83:6 88:16 88:16 88:16 96:3 98:10 98:10 | |
| **ourselves**(1) 9:12 | |
| **out**(24) 10:4 15:19 18:6 22:12 53:3 53:21 57:8 57:25 65:9 68:11 75:19 75:20 76:15 84:25 93:3 95:3 95:8 95:9 95:15 97:21 98:18 98:25 100:4 102:18 | |
| **outset**(1) 74:23 | |
| **outside**(3) 38:5 41:7 90:17 | |
| **outstanding**(2) 69:4 70:17 | |
| **over**(4) 27:8 35:24 52:19 106:15 | |
| **overall**(3) 10:22 12:17 75:4 | |
| **overrule**(1) 5:7 | |
| **overruled**(6) 33:13 39:13 40:21 41:21 42:14 48:5 | |
| **owe**(2) 89:12 89:12 | |
| **owed**(2) 69:3 69:21 | |
| **owes**(3) 92:10 92:16 92:18 | |
| **own**(10) 12:25 17:22 25:15 34:11 54:23 57:12 58:7 81:1 90:17 95:24 | |
| **owned**(7) 30:12 44:5 57:25 58:3 58:6 59:5 68:25 | |
| **owner**(2) 39:7 85:2 | |
| **owners**(2) 39:23 40:6 | |
| **ownership**(3) 45:11 59:20 84:11 | |
| **owns**(1) 5:7 | |
| **p.m**(1) 107:22 | |
| **packaged**(1) 51:18 | |
| **page**(24) 28:14 28:23 28:24 32:18 32:23 33:4 33:7 36:12 36:15 38:18 42:17 42:18 42:19 42:21 42:23 43:3 43:4 45:18 45:22 47:2 70:13 70:14 70:16 85:10 | |
| **pages**(4) 28:21 31:2 31:4 31:5 | |
| **paid**(2) 92:10 92:17 | |
| **papers**(2) 57:10 82:21 | |
| **paragraph**(5) 55:16 85:10 85:22 86:4 87:5 | |
| **parent**(1) 77:18 | |
| **part**(6) 9:23 19:6 20:14 38:25 47:5 93:8 | |
| **particular**(12) 7:25 28:19 29:7 29:10 29:11 29:22 30:10 34:15 50:16 50:17 85:9 85:10 | |
| **particularly**(2) 88:11 97:3 | |
| **parties**(8) 15:7 17:22 18:19 26:9 34:13 59:4 65:24 77:9 | |
| **parts**(1) 10:12 | |
| **party**(10) 42:7 51:19 57:21 58:15 58:16 58:24 59:1 83:10 103:17 103:19 | |
| **passed**(2) 10:16 94:9 | |
| **past**(1) 88:23 | |
| **pause**(5) 6:25 24:21 28:7 32:13 35:22 41:1 45:20 59:25 94:18 95:17 101:9 | |
| **pay**(4) 4:9 91:10 95:10 95:11 | |
| **paying**(3) 55:17 55:18 66:5 | |
| **payment**(7) 26:11 29:11 80:23 81:15 101:22 103:1 106:2 | |
| **payments**(4) 25:10 69:24 97:10 103:2 | |
| **payoff**(1) 83:1 | |
| **penalties**(2) 70:15 75:4 | |

| Word | Page:Line |
|------|-----------|
| **penalty**(2) 44:4 58:5 | |
| **pennsylvania**(1) 1:39 | |
| **pension**(1) 22:14 | |
| **people**(6) 25:14 53:10 102:4 105:23 106:13 106:13 | |
| **per**(2) 55:18 57:13 | |
| **perceive**(1) 101:11 | |
| **percent**(16) 14:23 16:7 17:13 17:17 17:23 18:7 18:9 18:10 18:17 18:17 23:25 27:4 27:6 60:11 60:24 65:10 | |
| **percentage**(5) 14:3 14:4 14:17 17:21 18:5 | |
| **perfectly**(1) 102:11 | |
| **perhaps**(3) 15:6 64:24 72:23 | |
| **period**(2) 91:1 95:11 | |
| **perjury**(2) 44:4 58:6 | |
| **permission**(2) 71:3 71:5 | |
| **permits**(1) 67:5 | |
| **person**(3) 11:11 91:11 105:18 | |
| **personal**(2) 42:8 91:12 | |
| **personally**(6) 10:13 23:3 23:6 24:22 32:20 89:12 | |
| **petition**(2) 63:3 90:25 | |
| **phonetic**(4) 6:24 58:13 79:3 91:16 | |
| **pick**(1) 4:4 | |
| **pictures**(1) 65:25 | |
| **place**(7) 12:19 50:19 51:8 52:13 83:10 84:17 92:11 | |
| **placement**(2) 30:11 30:23 | |
| **placing**(1) 15:19 | |
| **planning**(1) 4:2 | |
| **play**(2) 11:16 21:11 | |
| **pleadings**(3) 38:21 97:16 97:16 | |
| **please**(11) 7:5 7:7 7:9 8:17 29:25 54:1 54:11 87:19 89:18 99:19 106:24 | |
| **plus**(7) 67:16 67:20 69:5 69:6 75:1 75:4 86:12 | |
| **pocket**(2) 65:9 65:10 | |
| **point**(33) 2:13 13:9 16:25 35:24 52:3 55:16 61:15 62:23 65:15 66:7 68:9 73:1 73:8 74:5 78:18 78:22 79:7 79:10 83:10 83:13 87:4 87:7 89:14 89:17 89:19 90:14 90:18 97:17 98:2 98:4 98:5 104:17 104:20 | |
| **points**(4) 54:20 83:18 91:7 96:22 | |
| **policies**(2) 12:19 31:20 | |
| **policy**(6) 13:12 24:15 24:17 25:24 27:1 29:21 19:22 20:13 20:23 20:25 21:14 21:18 22:15 22:23 24:12 27:22 34:23 34:24 35:11 35:16 35:17 | |
| **pooling**(3) 34:21 35:5 35:9 | |
| **pools**(2) 20:18 22:7 | |
| **portfolio**(20) 8:22 8:23 8:25 9:8 9:17 11:11 15:3 15:6 15:9 15:25 16:15 17:22 18:17 20:10 20:21 25:23 34:11 48:17 49:2 50:21 | |
| **position**(6) 8:4 8:9 8:14 8:20 86:5 106:5 | |
| **possibility**(1) 33:25 | |
| **possible**(2) 50:3 50:8 | |
| **possibly**(5) 92:6 93:10 94:10 95:13 104:9 | |
| **post**(1) 89:1 | |
| **post-bankruptcy**(1) 91:11 | |
| **post-discharg**(1) 89:2 | |
| **post-petition**(12) 62:7 62:21 62:24 63:2 72:2 72:13 73:11 73:23 89:2 92:16 94:11 105:1 | |
| **potential**(2) 10:3 24:11 | |
| **power**(1) 98:14 | |
| **powers**(1) 85:7 | |
| **ppearances**(2) 1:20 2:1 | |
| **practice**(1) 86:24 | |
| **pre**(1) 15:23 | |

| Word | Page:Line |
|------|-----------|
| **pre-determined**(1) 16:4 | |
| **pre-petition**(3) 94:11 104:25 105:2 | |
| **precisely**(1) 50:8 | |
| **predecessor**(1) 104:6 | |
| **predestined**(1) 47:12 | |
| **predicted**(1) 75:21 | |
| **preliminary**(3) 10:5 22:12 89:15 | |
| **prepare**(1) 106:24 | |
| **prepared**(1) 38:22 | |
| **present**(1) 54:14 | |
| **presented**(3) 55:10 56:13 59:23 | |
| **press**(4) 32:7 33:5 33:6 33:15 | |
| **presume**(1) 106:10 | |
| **pretty**(1) 67:6 | |
| **prevail**(1) 76:3 | |
| **previous**(1) 22:9 | |
| **price**(9) 10:9 12:17 15:2 15:4 15:20 71:10 71:15 74:24 79:11 | |
| **priced**(2) 55:12 102:10 | |
| **prices**(1) 21:5 | |
| **pricing**(5) 10:17 10:18 10:21 | |
| **primarily**(6) 9:4 12:6 12:11 13:5 20:16 25:21 | |
| **principal**(2) 69:10 69:11 | |
| **printed**(1) 56:21 | |
| **prior**(13) 8:3 8:14 8:18 9:6 9:8 9:14 9:24 10:1 10:18 11:1 12:8 49:7 50:14 | |
| **private**(2) 30:10 30:23 | |
| **probably**(7) 14:23 17:23 18:7 22:24 23:1 105:20 106:22 | |
| **problem**(2) 69:22 93:9 | |
| **procedure**(2) 50:18 51:8 | |
| **procedures**(1) 51:11 | |
| **proceed**(3) 52:18 52:24 54:2 | |
| **proceeded**(1) 107:11 | |
| **proceedings**(3) 1:16 1:43 108:4 | |
| **proceeds**(2) 20:16 26:25 | |
| **process**(16) 10:4 10:12 13:7 20:12 20:14 20:15 25:12 25:12 25:15 25:20 25:22 25:25 44:13 50:19 79:13 81:21 | |
| **processes**(1) 25:13 | |
| **produced**(4) 1:44 28:16 64:7 64:12 | |
| **produces**(1) 28:12 | |
| **product**(8) 63:22 64:1 79:4 80:3 80:11 81:8 102:10 102:12 | |
| **professional**(1) 30:25 | |
| **profile**(2) 25:17 48:1 | |
| **profit**(1) 20:17 | |
| **promise**(8) 57:3 57:4 57:7 95:2 100:3 100:25 101:3 102:25 | |
| **promised**(1) 57:1 | |
| **promises**(1) 99:21 | |
| **proper**(3) 41:20 72:11 103:19 | |
| **properly**(1) 62:1 | |
| **property**(33) 11:25 58:16 58:22 59:6 60:12 60:24 62:9 62:10 62:10 62:12 62:17 62:21 68:17 69:20 72:9 72:14 73:6 73:17 74:12 75:18 75:24 80:20 80:21 83:7 83:11 83:16 83:21 91:12 91:13 101:14 101:14 101:15 105:7 | |
| **proposition**(5) 82:21 83:18 84:9 88:15 88:21 | |
| **prospective**(1) 51:12 | |
| **prospectus**(6) 27:1 34:21 35:9 35:11 35:17 35:20 | |
| **protect**(3) 33:20 104:13 104:14 | |
| **provide**(6) 5:18 8:25 9:7 9:9 10:22 12:14 21:23 68:12 87:10 | |
| **provided**(3) 11:23 92:24 102:6 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**provides**(3) 68:2 74:2 88:11
**proximate**(2) 90:20 94:5
**public**(1) 28:20
**publishes**(1) 26:13
**pull**(1) 11:22 100:4
**pulled**(2) 11:21 79:6
**pulling**(3) 11:17 15:13 15:18
**punishes**(1) 74:10
**punitive**(3) 67:5 74:1 74:3
**purchase**(9) 21:21 22:17 23:1 24:12 35:5 49:10 71:10 71:15 101:14
**purchased**(7) 15:7 34:10 34:20 35:10 35:12 35:13 35:18
**purchaser**(2) 24:9 24:11
**purchasing**(3) 10:7 21:15 33:19
**purports**(1) 100:3
**purpose**(1) 20:11
**purposes**(1) 4:2
**pursuant**(5) 34:21 39:4 44:20 56:15 68:1
**purview**(1) 50:25
**put**(10) 16:15 20:13 67:10 73:15 73:22 80:2 90:22 97:1 105:18 106:11
**qualified**(2) 30:23 64:10
**quantities**(2) 9:25 16:18
**quarter**(3) 10:1 20:20 25:23
**question**(22) 14:14 15:11 16:3 16:4 35:17 39:12 39:14 40:19 41:24 42:2 44:15 44:18 47:6 48:6 49:22 50:3 56:9 57:20 78:25 79:23 82:6 91:24
**questions**(5) 31:22 31:24 52:5 94:17 107:2
**quick**(1) 38:8
**quickly**(1) 98:12
**quite**(1) 90:6
**quote**(5) 33:15 33:16 58:18 58:20 61:18
**raise**(8) 7:7 54:19 63:15 74:6 75:5 75:6 97:2 97:19
**raised**(7) 24:25 59:16 67:3 78:19 87:4 93:11 94:9
**raises**(1) 76:12
**ramos**(1) 88:19
**range**(1) 16:7
**rate**(7) 9:5 12:8 19:23 19:24 20:2 49:4
**rates**(3) 21:4 34:1 82:4
**ratio**(2) 21:10 21:12
**ratios**(3) 13:3 21:9 21:22
**re-conveyance**(2) 37:25 73:5
**reach**(1) 59:13
**reached**(1) 5:1
**read**(4) 33:7 38:3 38:24 40:8
**ready**(1) 99:20
**real**(15) 8:7 8:24 9:23 11:19 14:8 14:20 15:5 15:9 15:22 21:4 38:7 60:12 64:23 75:20 88:6
**reality**(1) 105:24
**really**(19) 8:21 11:12 13:16 14:21 17:23 19:6 22:17 41:10 47:23 50:25 56:9 57:25 64:6 64:16 68:5 76:13 80:20 83:20 106:18
**reason**(11) 20:1 20:9 47:24 59:15 59:16 64:17 95:9 97:2 97:12 97:24 103:15
**reasonable**(1) 82:4
**reasons**(4) 56:11 94:4 95:5 96:18
**rebut**(1) 6:17
**recall**(1) 68:23
**received**(1) 57:9
**recently**(2) 5:3 33:24
**recess**(4) 53:11 53:13 53:24 99:17
**recollection**(1) 57:3
**reconvene**(1) 99:6

**record**(11) 5:13 7:10 52:16 60:11 70:7 74:21 85:5 86:2 86:15 88:2 103:4
**recorded**(2) 1:43 98:22
**recorder**(1) 98:23
**recording**(2) 1:43 108:3
**records**(1) 57:12
**recourse**(2) 37:23 56:6
**recover**(1) 8:13
**recovered**(1) 26:25
**recross**(1) 3:4
**redding**(1) 72:8
**redirect**(2) 3:4 52:6
**redress**(1) 105:17
**reduced**(1) 91:6
**refers**(1) 28:14
**refinance**(1) 96:25
**regard**(9) 42:9 57:18 62:23 67:1 67:2 72:13 73:9 98:12 100:25
**regarding**(5) 5:13 41:14 63:23
**regardless**(2) 71:19 71:19
**reinstate**(2) 82:25 84:2
**reinstatement**(1) 82:25
**relate**(1) 62:5
**related**(5) 37:12 37:21 76:5 99:24 104:22
**relates**(2) 38:5 49:11
**relating**(1) 45:24
**relationship**(2) 25:1 99:25
**relationship**(5) 77:9 77:10 77:22 77:23 78:10
**relationships**(3) 78:11 78:12 78:13
**release**(6) 33:5 33:6 33:15 37:12 37:21 37:25
**releases**(1) 32:7
**releasing**(2) 38:1 85:20
**relevance**(2) 5:2 5:7
**relevant**(3) 5:6 38:10 102:13
**reliance**(1) 95:23
**relied**(4) 64:5 95:13 96:6 101:18
**relief**(16) 26:7 41:3 42:8 45:12 57:21 58:1 58:4 58:15 58:17 58:22 70:12 82:13 90:1 101:6 101:7 104:6
**rely**(1) 27:17
**relying**(2) 95:22 102:6
**rem**(1) 105:7
**remain**(1) 7:6
**remaining**(2) 6:10 94:16
**rembrights**(1) 92:1
**remedy**(1) 61:20
**remember**(1) 70:1
**reminded**(1) 92:19
**remittance**(5) 28:10 29:5 29:8 30:3 31:13
**repeated**(1) 5:5
**rephrase**(2) 39:19 50:2
**replevin**(1) 73:5
**reply**(1) 88:16
**report**(20) 26:13 28:10 28:15 29:5 29:8 29:24 30:3 30:5 30:11 30:14 31:13 56:14 62:24 89:3 91:9 91:15 93:3 93:6 93:24 105:4
**reported**(2) 41:18 56:16
**reporter**(2) 93:23 93:23
**reporting**(10) 56:15 90:21 91:22 91:24 92:5 93:18 93:20 94:2 94:3 94:8
**reports**(2) 93:2 93:17
**represent**(1) 102:18
**representation**(4) 37:24 74:13 95:7 95:13
**representations**(2) 58:21 75:8
**represented**(1) 96:1
**represents**(3) 31:12 63:25 98:13
**repurchased**(1) 30:20
**request**(5) 26:7 37:24 79:25 80:4 82:1
**requested**(2) 79:7 80:13
**requests**(1) 38:21

**require**(4) 26:10 27:13 86:11 86:16
**required**(6) 56:16 79:5 80:17 83:5 93:22 102:12
**requirement**(2) 27:12 83:15
**requirements**(2) 61:21 100:9
**requires**(2) 98:18 104:18
**researched**(1) 69:14
**residual**(1) 30:13
**respect**(22) 6:3 8:9 8:12 9:2 9:13 11:16 12:10 17:1 21:11 23:20 23:24 24:14 25:6 25:25 31:18 77:15 78:3 84:5 84:15 85:24 89:19 96:4
**response**(5) 24:22 41:11 58:12 94:19 98:10
**responsibilities**(1) 8:8
**responsibility**(4) 8:11 58:19 58:20 78:15
**rests**(2) 6:16 6:18
**result**(11) 30:22 59:9 61:10 75:22 76:9 76:14 83:25 83:25 90:9 92:25 100:15
**retain**(1) 34:5
**return**(4) 21:16 21:19 21:23 24:13
**returns**(3) 10:6 22:23 66:24
**revenue**(1) 9:14
**review**(4) 32:7 50:13 50:21 51:8
**reviewed**(4) 24:22 27:4 50:24 97:15
**richard**(1) 2:11
**rid**(1) 81:13
**right**(60) 4:11 6:1 6:14 7:1 7:7 13:25 16:5 16:5 16:19 17:2 18:24 20:21 23:23 33:4 37:14 38:11 38:14 38:15 39:16 40:20 41:21 43:15 46:11 48:2 48:15 49:21 51:1 52:6 52:8 52:13 52:15 52:23 53:14 53:15 53:22 54:10 54:19 58:24 59:1 59:4 66:9 66:17 67:9 67:17 72:25 75:2 77:3 78:2 81:7 82:15 84:23 85:18 86:5 86:18 86:20 89:21 90:10 99:22 107:14 107:19
**right-hand**(2) 31:3 31:8
**rights**(3) 86:17 86:19 106:20
**rise**(6) 53:25 72:22 89:7 92:13 99:18
**risk**(14) 9:6 20:2 20:23 21:12 21:15 21:17 21:23 22:23 22:24 24:8 30:3 33:17 33:2 49:4
**risks**(1) 10:6
**risky**(1) 24:11
**road**(3) 2:14 83:22 89:24
**role**(7) 8:16 8:25 9:2 11:16 21:10 32:6
**rule**(10) 74:8 74:9 82:18 82:20 83:9 83:23 88:23 99:20 104:13 107:5
**ruling**(2) 99:7 104:21
**run**(3) 25:13 104:7 106:2
**running**(1) 57:8
**s-a-k-a**(1) 7:11
**s-i-m-o-n**(1) 7:11
**said**(4) 4:6 11:3 17:16 17:23 18:6 23:8 26:22 34:22 35:13 35:14 42:12 42:25 43:18 46:17 51:14 51:23 97:14 99:11 100:16 106:4
**sakamoto**(15) 3:7 4:15 7:4 7:8 7:11 7:16 28:4 28:9 32:4 46:6 49:23 50:5 50:12 51:7 58:25
**sale**(20) 18:18 29:21 34:12 38:22 61:22 66:1 68:17 68:19 69:16 69:18 72:5 72:7 72:21 72:21 75:1 75:3 90:24 90:24 101:8 104:16
**sales**(2) 88:10 100:10
**same**(4) 46:9 46:17 60:12 103:20
**sanction**(2) 61:20 103:25
**sanctions**(1) 107:6
**satisfaction**(1) 38:1
**satisfied**(2) 81:11 94:15
**saw**(3) 61:10 78:5 78:9

**say**(25) 4:8 8:17 14:3 14:5 14:22 18:16 19:2 23:9 35:11 35:14 41:17 42:20 43:2 63:22 64:24 69:9 69:9 83:20 92:10 92:15 92:15 92:20 93:6 99:10 100:16
**saying**(3) 33:16 66:6 106:21
**says**(23) 28:23 29:14 31:6 37:1 38:13 38:16 39:1 44:13 44:17 44:17 46:22 47:6 47:6 71:6 72:4 78:10 81:1 81:17 85:12 86:14 93:6 95:9 98:25
**scc**(2) 32:24 32:25
**scenario**(1) 22:22
**schedule**(1) 62:14
**schedules**(3) 62:16 72:10 101:24
**scheme**(1) 25:10
**schnitzer**(3) 2:5 96:15 96:16
**school**(1) 4:9
**schuylkill**(1) 1:38
**scope**(3) 38:5 41:8 52:1
**score**(33) 51:16 51:20 55:12 55:13 55:15 55:22 55:23 56:2 56:9 56:10 56:13 56:17 56:22 78:19 78:20 78:22 78:25 79:4 79:5 79:6 80:6 80:7 90:23 91:3 91:18 92:25 93:4 93:4 93:6 100:1 100:20 102:12 102:13
**scores**(4) 16:8 21:8 90:22 93:15
**scratch**(2) 30:16 30:17 30:18
**scrutiny**(1) 48:19
**sd-1**(1) 61:4
**sd1**(5) 30:9 30:15 36:10 40:14 44:22
**sean**(2) 1:24 74:21
**seated**(3) 7:13 54:1 99:19
**second**(17) 9:6 9:17 23:10 26:3 26:3 27:14 28:24 29:13 31:15 31:16 36:10 44:17 45:18 78:18 82:4 87:20 104:15
**secondary**(2) 59:16 88:10
**seconds**(1) 96:12
**section**(16) 33:7 36:14 36:19 37:3 37:6 38:19 38:19 40:8 60:1 67:4 68:1 68:2 68:3 86:2 86:2 98:20
**sections**(2) 21:3 21:3
**secure**(2) 62:12 62:19
**secured**(1) 60:12
**securities**(20) 9:11 9:12 10:3 10:7 10:19 10:20 12:11 12:12 12:16 20:3 21:16 21:19 21:21 21:24 22:16 22:25 26:10 26:13 28:11 28:18
**securitization**(77) 9:1 9:3 9:6 9:8 9:9 9:10 9:20 9:24 10:5 10:9 10:9 10:10 10:12 10:14 10:16 10:23 11:14 11:15 12:3 12:9 12:14 12:20 12:23 13:5 13:7 13:17 15:3 15:4 15:18 15:20 16:10 16:12 20:14 22:2 22:5 22:9 22:19 22:22 23:3 23:6 23:20 24:16 25:1 25:6 25:11 25:12 25:20 26:9 26:12 27:20 27:22 27:23 28:12 28:14 28:19 29:18 30:6 30:10 30:12 30:13 30:18 30:22 32:6 32:9 34:5 34:12 35:2 38:6 40:2 47:12 48:2 48:18 50:12 50:15 50:19 56:11 88:13
**securitizations**(8) 10:18 19:14 23:12 26:11 34:23 35:15 35:16 48:12
**securitize**(19) 9:21 12:7 13:18 15:14 16:18 17:3 17:6 17:10 19:23 20:15 23:14 24:4 24:5 25:24 30:19 47:16 47:20 47:21 50:23
**securitized**(19) 11:17 13:25 14:5 17:13 17:16 18:5 18:10 19:24 23:23 24:3 34:11 34:12 34:18 35:6 39:24 47:24 48:15 48:20 49:4
**securitizing**(5) 13:9 14:4 14:20 34:3 45:8
**security**(3) 38:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

see(13) 20:20 27:22 31:4 36:14 36:22 37:9 51:6 70:11 78:8 79:3 81:13 94:16 103:15

seek(2) 104:6 105:16

seeking(4) 73:2 73:3 102:11 104:17

seems(1) 86:11

sense(6) 41:5 42:5 42:12 64:11 75:17

select(2) 10:2 22:10

sell(7) 11:22 12:11 12:17 49:15 71:6 73:17 75:19

seller(1) 81:16

selling(2) 9:11 49:7

senior(5) 7:24 7:25 8:5 8:9 8:15

sense(6) 21:21 64:16 64:24 86:21

sentence(7) 36:21 38:3 38:13 38:16 38:19 38:24 38:25

separate(8) 12:23 12:24 14:11 17:24 25:14 60:4 66:7 66:7

separated(2) 20:5 20:7

separately(1) 81:12

september(2) 7:21 47:17

series(2) 60:11 105:14

service(6) 1:37 1:44 33:25 40:2 45:15

serviced(1) 36:9

servicer(14) 37:13 37:16 37:17 37:22 37:23 38:21 39:24 40:5 40:18 41:14 41:18 45:3 45:3 45:9

servicer's(2) 40:1 45:14

services(2) 1:37 87:9

servicing(16) 9:19 36:8 37:11 37:14 37:18 38:5 39:4 40:13 44:20 63:3 63:5 63:6 68:22 68:24 89:3 90:25

set(1) 96:18

set-off(3) 73:9 73:20 74:24

settle(1) 59:8

seven-thousand-dolla(1) 75:1

seventy(3) 23:24 27:6 27:13

severity(1) 102:2

seward(1) 1:29

shady(1) 96:24

shall(3) 37:12 37:21 38:20

sharon(2) 1:25 4:12

she(141) 25:9 26:4 26:24 27:19 49:18 54:16 55:8 55:9 55:12 55:13 55:17 55:18 56:6 57:6 57:8 57:13 63:8 63:9 63:18 63:21 63:22 64:18 64:20 64:20 64:22 64:22 64:22 65:3 65:3 65:4 65:5 65:7 65:8 65:11 65:22 66:3 66:4 66:4 66:5 66:5 66:10 66:11 66:12 66:14 66:15 66:16 66:23 66:24 66:25 67:7 75:16 78:7 78:9 78:10 79:14 79:15 79:15 79:15 79:19 79:23 79:24 80:2 80:3 80:7 80:8 80:11 80:11 80:20 80:21 80:23 81:1 81:2 81:2 81:8 81:8 81:9 81:10 81:10 81:11 81:12 81:13 81:14 81:16 81:17 82:1 83:4 83:5 87:21 89:11 89:13 91:4 91:7 91:9 91:9 91:10 91:15 91:15 91:16 91:21 92:1 92:18 92:18 94:2 94:7 94:9 94:9 95:2 95:7 95:8 95:9 95:9 95:11 95:12 95:15 95:20 95:21 95:23 95:24 95:24 95:25 95:25 96:1 96:1 97:22 97:22 100:1 100:1 100:3 100:16 101:14 101:15 101:20 101:2 101:21 101:22 101:23 101:23 101:24 102:8 102:18

she's(5) 57:2 71:18 78:7 89:11 94:7

shelf(1) 24:4

shell(1) 23:23

sherri(1) 108:8

short(3) 53:8 95:11 102:19

should(13) 9:11 11:2 12:16 13:10 25:19 26:1 42:20 52:18 57:6 62:22 65:24 73:20 89:23 96:20

shouldn't(2) 73:13 107:10

---

show(4) 57:8 57:12 64:12 82:23

showed(3) 5:4 61:13 64:8

showing(2) 56:25 62:25

shows(7) 26:14 28:13 29:9 30:6 31:15 61:1 79:14

sic(1) 92:1

side(3) 22:6 35:1 51:1

sign(8) 39:7 57:10 57:17 59:4 60:6 60:22 99:1 104:10

signature(1) 61:6

signatures(2) 98:18 98:24

signed(11) 44:9 44:21 55:13 58:5 59:2 61:8 61:25 66:23 78:10 78:16 85:12

significance(1) 30:8

significant(1) 29:7

significantly(1) 75:7

similar(1) 98:4

simon(5) 3:7 4:15 7:4 7:8 7:11

simply(10) 8:1 75:6 83:10 84:16 84:18 86:19 92:24 103:7 105:14 105:21

since(6) 6:6 8:10 9:11 55:18 87:4 93:11

sincerely(1) 54:13

single(2) 20:24 96:7

sir(12) 7:5 40:16 41:6 41:22 42:17 43:14 44:3 44:20 45:17 45:21 48:8 52:9

situation(18) 57:6 64:24 65:4 65:11 66:13 76:17 76:18 80:1 81:18 82:8 83:7 83:12 90:6 97:6 97:7 97:10 98:4 105:19

situations(2) 83:10 88:9

six(2) 31:2 31:5

sixty-thousand-dolla(1) 80:22

size(1) 82:5

skin(1) 65:5

skip(1) 35:23

skipping(1) 49:8

slash(1) 89:2

slip(1) 68:11

smaller(1) 11:12

sold(18) 14:1 15:25 23:22 23:25 30:23 34:16 47:19 49:13 50:14 50:23 51:5 51:15 54:24 54:25 63:5 63:7 63:22 73:10

some(21) 16:24 18:10 19:16 19:18 22:13 24:15 30:21 53:9 63:25 65:25 66:1 74:23 76:6 84:15 92:23 94:14 96:7 102:20 103:25 104:18

someone(4) 44:21 49:8 51:6 71:4 96:24 101:2

someone's(1) 33:10

something(7) 13:20 16:6 45:5 53:21 79:2 93:16 105:20

somewhat(1) 99:21

sontchi(1) 1:17

sorry(20) 8:17 11:4 13:22 23:7 32:15 33:3 34:7 36:3 37:16 41:23 42:18 42:24 46:5 47:2 49:21 53:20 60:2 70:21 75:13 103:6

sort(1) 103:25

sought(3) 41:19 79:4 102:14

sound(1) 1:43 108:3

source(2) 18:11 28:17

sources(3) 17:11 17:14 17:15

speak(1) 77:11

speaking(4) 14:16 29:13 48:24 48:25

speaks(1) 39:11

special(1) 48:19

specific(13) 14:14 16:10 16:11 39:18 50:3 76:18 76:22 77:14 77:14 84:3 89:14 93:7 94:15

---

specifically(13) 11:16 41:13 49:23 77:24 79:22 79:24 81:17 84:9 85:7 86:23 91:23 99:25 101:20

specifies(1) 98:20

speculation(1) 51:23

spell(1) 7:9

spent(1) 106:14

spoke(1) 21:25

squarely(1) 96:4

stage(1) 101:7

stamatic(1) 2:12

stamoulis(112) 2:10 2:12 4:25 5:9 5:22 6:9 6:13 6:16 6:18 6:20 31:25 32:3 33:9 33:14 34:14 36:4 36:5 36:16 36:20 38:7 38:10 38:12 38:15 38:17 39:20 39:21 40:12 40:23 41:12 41:17 42:1 42:4 42:16 43:3 43:8 43:11 43:14 43:14 43:25 44:2 44:10 44:19 45:7 46:1 46:4 47:7 48:7 48:25 49:6 49:19 49:23 50:4 50:9 50:11 52:2 52:4 52:17 53:1 53:18 53:20 53:23 54:10 56:24 60:1 63:9 63:12 63:14 64:21 65:1 65:8 65:14 65:17 65:20 66:9 66:17 66:20 67:11 67:13 67:15 67:18 67:20 67:24 69:11 69:14 70:5 70:8 70:10 70:20 70:22 71:1 71:4 71:13 71:17 71:25 72:6 72:17 72:19 72:24 73:3 73:6 74:7 76:16 76:19 76:20 78:19 93:5 96:12 98:8 98:9 99:4 99:16 107:4

stamped(1) 43:9

stan(1) 36:3

stand(4) 4:14 7:4 7:5 59:22

standards(2) 64:8 64:11

standing(1) 7:6

stands(2) 82:21 84:9

stargatt(2) 1:22 4:13

start(9) 46:5 53:7 53:8 53:16 53:17 54:19 76:15 79:18 82:17

started(5) 7:21 10:14 10:25 11:7 76:21

starts(1) 61:11

state(2) 7:9 35:17

stated(2) 55:14 58:18

statement(4) 34:2 68:5 74:10 95:24

statements(5) 63:24 64:4 101:16 105:15 105:25

states(9) 1:1 1:18 37:11 38:19 55:17 59:19 60:2 60:7 88:14

stating(1) 44:4

status(5) 26:12 28:13 29:11 30:6 31:16

statute(4) 60:4 60:6 86:11 102:22

statutorily(1) 61:22

statutory(2) 61:20 75:4

stay(30) 26:7 41:3 42:8 45:12 57:21 58:1 58:4 58:9 58:10 58:15 58:22 58:24 59:10 59:14 63:1 70:12 74:2 74:5 82:12 90:1 99:21 100:8 101:6 101:7 103:13 103:17 103:19 104:1 104:6 105:5

stayed(1) 84:17

stays(1) 91:8

step(1) 52:8

steps(1) 61:13

still(4) 5:2 5:7 82:2 90:12

stipulated(2) 5:14 55:16

stipulation(1) 5:13

storage(2) 91:10 91:11

store(1) 91:10

story(2) 106:7 106:7

strategies(2) 33:18 33:24

strauss(5) 32:4 32:8 32:20 33:5 33:16

street(1) 1:10 1:31 1:38

strict(1) 71:22

strictly(3) 61:21 71:18 100:10

strong(1) 20:9

structure(3) 9:13 10:5 22:12

---

structures(1) 22:16

subject(2) 6:17 79:14

subjected(1) 80:22

subjects(1) 81:14

submit(12) 57:15 64:5 65:1 76:7 77:21 79:24 82:3 84:13 88:23 89:9 106:25 107:16

submitted(5) 44:5 45:11 63:21 70:12 79:5

submitting(2) 74:10 91:14

subsection(2) 36:15 36:18

subsequent(2) 48:17 61:13

subservicer(4) 37:13 37:13 37:15 37:22

substantial(1) 107:12

substantially(2) 14:6 14:7

substantive(1) 86:17

substitute(3) 86:6 98:14 98:23

substituted(2) 84:16 84:20

substitution(18) 59:17 59:20 60:6 60:7 60:22 61:3 61:5 61:6 61:12 62:1 82:14 84:6 84:7 85:21 85:25 87:1 98:21 104:11

subtract(1) 71:9

successor(1) 88:12

successors(3) 60:9 85:17 99:1

such(9) 13:3 13:12 21:15 22:4 22:10 22:24 30:25 38:1 51:10

sue(1) 104:17

suffered(1) 67:7

sufficient(7) 9:25 10:8 16:17 21:23 62:6 97:9 105:8

suggest(2) 52:25 90:12

suggesting(1) 76:21

suit(1) 10:19

suitable(1) 48:17

suite(1) 1:24

summary(6) 59:9 59:16 59:18 87:5 101:10 103:14

summation(1) 53:6

supp(1) 88:6

support(5) 9:7 57:16 84:6 88:14 88:21

supporting(1) 8:25

supports(1) 71:22

suppose(1) 18:22

supposed(1) 49:20

sure(13) 48:20 49:8 50:6 51:9 51:12 52:21 53:9 53:12 58:24 104:4 104:5 104:12 105:6

sustained(2) 40:11 51:25

switch(4) 56:3 79:14 82:8 100:2

sworn(1) 7:8

system(1) 105:14

tab(1) 42:22

table(1) 65:6

take(11) 4:4 4:16 4:18 7:5 53:11 53:12 57:17 81:22 95:8 95:9 102:18

taken(4) 59:10 61:10 61:13 75:19

takes(1) 79:8

taking(4) 13:7 21:17 57:1 95:14

talk(3) 53:11 69:19 69:20

talking(6) 26:21 42:23 49:24 50:1 68:24 69:10

talks(1) 60:6

tania(2) 100:14 102:17

targeting(1) 33:18

tax(1) 66:24

taxes(1) 101:23

taylor(2) 1:23 4:13

team(8) 8:22 9:1 9:3 9:9 9:10 9:21 10:14 10:17 11:19 12:3 12:6 12:20 13:8

teams(1) 12:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **technical**(13) 68:8 69:21 69:22 76:13 82:12 83:21 84:15 88:24 100:9 103:18 104:3 104:15 107:5 | | **that**(301) 4:18 4:25 5:2 5:4 5:5 5:14 5:18 6:9 6:10 6:14 7:25 8:17 9:5 9:8 9:11 10:6 10:15 10:15 11:11 11:19 12:1 12:6 12:14 12:19 13:2 13:7 13:15 13:17 13:20 13:20 14:6 14:8 14:9 14:22 15:1 15:5 15:6 15:18 15:19 15:25 16:15 16:21 16:21 17:13 17:14 17:16 17:17 18:9 18:12 18:17 18:19 18:22 18:25 18:25 19:2 19:6 19:9 19:14 19:16 19:19 20:3 20:11 20:12 20:22 21:1 21:2 21:5 21:13 21:16 21:17 21:19 22:17 22:21 22:22 22:23 23:2 24:1 24:3 24:8 24:10 24:14 24:15 24:15 24:17 24:18 25:7 25:9 25:11 25:22 25:24 26:1 26:4 26:4 26:4 26:6 26:10 26:25 27:2 27:8 27:17 27:19 28:6 28:10 28:16 29:9 29:10 29:10 29:10 29:16 29:17 29:19 29:19 29:22 30:18 30:18 30:19 30:19 30:21 31:15 31:17 32:8 32:19 33:7 33:15 34:2 34:3 34:3 34:5 34:10 34:12 34:15 34:22 35:17 36:9 36:14 36:15 36:21 36:22 36:22 37:5 37:6 37:9 37:14 38:3 38:24 38:25 38:25 39:8 39:11 39:22 40:1 40:14 40:19 41:11 41:13 42:7 42:7 42:19 42:20 44:3 44:5 44:5 44:15 45:5 45:16 46:7 46:9 46:9 46:11 47:9 47:11 47:11 47:12 47:14 47:18 47:21 47:25 48:1 48:2 48:8 48:9 49:3 49:8 49:9 49:13 50:16 50:20 50:22 51:9 51:10 51:15 51:16 51:19 51:20 52:4 54:24 54:24 55:1 55:1 55:5 55:8 55:8 55:8 55:12 55:14 55:14 55:16 55:17 55:18 55:19 55:19 55:21 55:22 55:22 55:23 56:14 56:16 56:17 56:24 56:25 57:4 57:6 57:8 57:12 57:15 57:16 57:19 57:19 57:19 57:21 58:1 58:5 58:6 58:6 58:14 58:17 58:20 58:23 58:24 59:4 59:9 59:16 59:19 60:1 60:2 60:3 60:5 60:15 60:23 61:1 61:1 61:6 61:11 61:18 62:2 62:2 62:6 62:10 62:11 62:11 62:12 62:17 62:18 62:21 62:25 63:4 63:21 63:21 63:22 63:23 63:25 64:1 64:2 64:5 64:6 64:6 64:12 64:18 65:2 65:2 65:2 | | **that**(301) 65:3 65:7 65:17 66:1 66:3 66:6 66:12 66:12 66:14 66:16 66:21 66:22 66:22 66:23 66:23 66:24 66:24 66:25 67:8 68:2 69:14 69:17 69:23 69:23 69:25 70:6 70:11 70:11 71:18 71:21 71:21 71:23 72:1 72:8 72:12 73:9 73:10 73:12 73:13 73:16 73:19 73:19 73:20 73:23 73:24 73:25 74:4 74:4 74:5 74:6 74:7 74:8 74:9 74:11 74:13 74:13 74:14 74:15 74:15 74:24 75:2 75:5 75:5 75:6 75:8 75:9 75:18 75:21 75:22 75:23 75:25 76:3 76:8 76:21 76:23 76:24 77:1 77:1 77:4 77:10 77:13 77:14 77:18 77:22 77:23 78:5 78:6 78:8 78:10 78:10 78:13 78:14 78:15 78:16 78:20 78:22 78:22 78:23 78:25 79:7 79:9 79:12 79:13 79:14 79:16 79:22 80:1 80:3 80:3 80:5 80:8 80:11 80:11 80:12 80:13 80:19 81:1 81:2 81:3 81:3 81:9 81:10 81:11 81:14 81:17 81:17 81:24 81:25 82:1 82:5 82:5 82:7 82:8 82:19 82:22 82:24 82:24 83:1 83:1 83:2 83:3 83:4 83:5 83:5 83:6 83:9 83:12 83:13 83:18 83:22 83:24 83:25 84:1 84:2 84:5 84:5 84:6 84:9 84:13 84:13 84:17 84:20 85:13 85:25 86:8 86:14 86:14 86:20 86:23 86:24 86:25 87:4 87:6 87:14 88:1 88:11 88:13 88:14 88:21 88:24 88:25 89:6 89:7 89:9 89:14 89:17 89:21 90:1 89:23 89:24 90:4 90:6 90:12 90:14 90:15 90:18 90:19 91:4 91:5 91:6 91:7 91:8 91:9 91:10 91:12 91:13 91:19 92:11 92:11 92:18 92:21 92:21 92:22 92:22 92:25 93:4 93:19 93:20 93:22 93:24 93:24 94:1 94:1 94:3 94:6 94:7 94:9 95:4 95:6 95:7 95:9 95:9 95:13 95:18 95:21 95:21 95:22 95:24 96:1 96:1 96:5 96:6 96:7 97:2 97:12 97:13 97:17 97:18 97:20 97:20 97:22 97:24 97:24 98:2 98:5 98:12 98:13 98:13 98:21 100:12 100:16 100:19 100:20 100:21 100:21 101:3 101:5 101:13 101:15 102:11 102:12 102:18 102:19 102:23 102:24 103:4 103:4 103:10 103:16 104:2 104:6 104:10 104:12 104:12 104:17 104:18 104:22 105:1 105:1 105:13 105:21 106:1 106:1 | | **the**(301) 1:1 1:2 1:17 1:30 2:4 4:2 4:5 4:8 4:9 4:11 4:13 4:14 4:14 4:16 4:20 4:23 4:23 5:1 5:1 5:4 5:4 5:6 5:7 5:10 5:12 5:13 5:16 5:17 5:19 5:21 5:23 5:24 6:1 6:3 6:7 6:8 6:12 6:14 6:17 6:19 6:23 6:24 7:1 7:4 7:5 7:5 7:7 7:8 7:9 7:10 7:11 7:13 8:2 8:3 8:5 8:6 8:7 8:13 8:14 8:15 8:18 8:21 8:22 8:23 8:24 8:25 9:2 9:4 9:5 9:5 9:6 9:7 9:7 9:8 9:9 9:9 9:10 9:14 9:14 9:16 9:17 9:17 9:18 9:18 9:20 9:23 9:23 10:1 10:2 10:3 10:5 10:8 10:9 10:10 10:10 10:12 10:14 10:15 10:15 10:16 10:17 10:17 10:18 10:19 10:19 10:22 10:22 10:24 11:1 11:3 11:5 11:7 11:7 11:8 11:9 11:10 11:11 11:13 11:13 11:14 11:15 11:19 11:20 11:21 11:23 12:1 12:2 12:3 12:3 12:5 12:5 12:5 12:8 12:8 12:8 12:19 12:20 12:22 12:22 12:25 13:1 13:1 13:2 13:4 13:5 13:6 13:8 13:9 13:10 13:16 13:17 13:18 13:20 13:22 14:2 14:3 14:5 14:6 14:7 14:7 14:8 14:8 14:8 14:10 14:11 14:11 14:13 14:15 14:16 14:18 14:19 14:21 14:22 14:23 14:24 14:25 15:2 15:2 15:3 15:4 15:4 15:5 15:5 15:8 15:9 15:10 15:10 15:11 15:12 15:13 15:16 15:17 15:17 15:18 15:20 15:21 15:22 15:22 15:23 15:24 16:1 16:2 16:3 16:3 16:3 16:5 16:6 16:9 16:10 16:11 16:13 16:14 16:14 16:16 16:17 16:19 16:19 16:20 16:20 16:21 16:22 16:23 16:24 16:25 17:2 17:4 17:6 17:7 17:7 17:13 17:17 17:20 17:21 17:24 18:1 18:3 18:4 18:4 18:6 18:8 18:13 18:14 18:15 18:17 18:18 18:21 18:23 19:1 19:3 19:5 19:6 19:9 19:14 19:25 20:1 20:1 20:2 20:3 20:7 20:9 20:14 20:15 20:16 20:18 20:19 20:20 20:20 20:21 20:21 20:22 20:22 20:23 20:24 21:2 21:3 21:3 21:6 21:8 21:12 21:12 21:13 21:13 21:14 21:19 21:22 21:24 22:6 22:6 22:11 22:14 22:15 22:15 22:16 22:17 22:18 |
| **technically**(2) 57:20 101:6 | | | | | | | |
| **tell**(7) 26:8 28:9 30:2 31:12 65:24 66:19 106:7 | | | | | | | |
| **ten**(4) 43:5 43:5 43:20 53:17 | | | | | | | |
| **tender**(9) 82:17 82:20 83:4 83:9 83:13 83:15 83:23 88:23 104:18 | | | | | | | |
| **tendered**(1) 103:20 | | | | | | | |
| **tendering**(1) 82:25 | | | | | | | |
| **term**(1) 106:16 | | | | | | | |
| **terms**(17) 11:24 13:20 49:3 49:25 50:1 55:10 55:15 55:25 56:12 57:2 76:14 77:9 81:3 81:4 81:15 81:24 90:23 | | | | | | | |
| **terrible**(1) 106:17 | | | | | | | |
| **testified**(11) 31:17 34:15 47:25 48:9 48:11 48:16 54:24 79:22 81:11 86:24 91:9 | | | | | | | |
| **testify**(2) 48:8 48:13 | | | | | | | |
| **testimony**(15) 48:4 51:15 54:15 63:19 78:21 79:18 80:12 81:1 81:2 81:9 83:2 86:8 90:23 100:23 104:19 | | | | | | | |
| **than**(7) 14:23 19:18 21:20 22:25 27:4 60:10 81:3 | | | | | | | |
| **thank**(27) 5:9 6:13 6:19 6:20 7:3 7:13 11:6 18:20 19:9 31:21 45:17 50:9 52:8 52:9 53:23 54:13 74:17 96:9 96:10 98:6 99:4 99:5 99:8 99:9 99:16 107:15 107:20 | | | | | **that**(10) 106:3 106:5 106:8 106:10 106:22 107:1 107:7 107:12 107:17 108:2 | | | |
| **thanksgiving**(1) 107:21 | | | | **that's**(64) 5:4 5:6 6:24 13:19 14:13 14:25 18:11 18:11 18:22 19:2 19:3 19:3 19:5 20:5 20:14 20:24 22:16 24:20 30:5 37:3 38:13 38:15 39:1 43:14 43:20 45:17 46:22 50:25 51:13 53:16 53:16 56:12 58:14 59:10 60:4 61:7 64:2 67:19 67:21 68:1 68:2 68:3 69:9 69:11 71:8 75:21 75:21 77:15 79:20 80:18 80:23 81:9 81:16 82:1 87:18 93:8 93:16 95:6 98:16 101:10 101:10 105:1 106:9 106:22 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**the(301)** 22:18 22:20 22:20 22:23 23:3 23:6 23:8 23:9 23:10 23:11 23:20 23:21 23:24 24:6 24:6 24:8 24:9 24:12 24:14 24:15 24:16 24:17 24:23 24:25 25:1 25:6 25:9 25:9 25:10 25:11 25:12 25:15 25:16 25:16 25:17 25:17 25:20 25:22 25:23 25:23 25:23 25:25 26:3 26:5 26:5 26:5 26:6 26:6 26:7 26:8 26:9 26:10 26:11 26:12 26:13 26:13 26:18 26:20 26:22 26:23 26:24 26:24 26:25 27:1 27:1 27:2 27:4 27:5 27:5 27:7 27:7 27:7 27:8 27:9 27:10 27:11 27:11 27:12 27:12 27:20 27:21 27:24 28:2 28:10 28:11 28:11 28:12 28:13 28:13 28:14 28:14 28:15 28:17 28:18 28:18 28:23 28:24 29:1 29:3 29:5 29:9 29:9 29:11 29:13 29:16 29:17 29:17 29:19 29:21 29:22 29:23 29:23 30:3 30:3 30:4 30:5 30:6 30:6 30:8 30:12 30:13 30:13 31:3 31:3 31:6 31:8 31:9 31:13 31:13 31:14 31:16 31:18 31:23 32:6 32:7 32:8 32:12 32:15 32:18 32:24 32:25 33:6 33:12 33:12 33:21 33:24 33:25 34:3 34:5 34:7 34:8 34:9 34:9 34:9 34:21 34:24 34:25 35:2 35:3 35:5 35:5 35:7 35:9 35:10 35:11 35:15 35:17 35:20 35:22 36:2 36:8 36:8 36:9 36:10 36:10 36:12 36:18 37:3 37:3 37:6 37:12 37:13 37:13 37:15 37:16 37:17 37:21 37:21 37:22 37:23 37:24 38:2 38:2 38:5 38:6 38:6 38:9 38:11 38:13 38:13 38:15 38:18 38:19 38:20 38:21 38:23 39:5 39:6 39:7 39:7 39:9 39:10 39:11 39:13 39:14 39:15 39:16 39:17 39:19 39:22 39:23 39:23 39:24 40:2 40:2 40:3 40:5 40:6 40:7 40:11 40:15 40:15 40:18 40:18 40:19 40:20 40:20 40:21 40:22 40:22 40:24 41:3 41:3 41:5 41:7 41:9 41:10 41:13 41:14 41:14 41:14 41:15 41:16 41:18 41:18 41:19 41:20 41:21 41:22 41:24 41:24 41:25 42:2 42:3 42:7 42:8 42:9 42:13 42:15 42:20 43:1 43:4 43:6 43:10 43:12 43:15 43:19 43:22 43:24 44:1 44:5 44:5 44:9 44:12 44:12 44:13 44:13 44:15 44:18 44:20 44:23 45:1 45:2 45:3 45:5 45:9 45:10 45:10

**the(301)** 45:13 45:14 45:14 45:15 45:16 45:21 45:22 45:24 45:24 46:2 46:3 46:6 46:7 46:9 46:9 46:14 46:15 46:15 46:17 46:19 46:22 46:24 46:25 47:2 47:4 47:11 47:16 47:17 47:19 47:20 47:23 47:24 48:5 48:6 48:6 48:17 48:17 48:20 48:24 49:1 49:1 49:2 49:9 49:12 49:12 49:14 49:14 49:16 49:18 49:20 49:21 49:22 49:24 49:25 50:2 50:6 50:6 50:7 50:12 50:13 50:19 50:20 50:21 50:22 50:25 51:1 51:4 51:8 51:9 51:9 51:14 51:25 51:25 52:3 52:6 52:8 52:12 52:12 52:15 52:15 52:18 52:23 53:4 53:5 53:5 53:14 53:19 53:22 53:23 54:1 54:4 54:5 54:6 54:7 54:7 54:9 54:11 54:13 54:15 54:17 54:24 54:25 54:25 55:1 55:2 55:3 55:4 55:4 55:5 55:7 55:9 55:10 55:10 55:14 55:16 55:20 55:24 55:24 56:2 56:2 56:5 56:8 56:10 56:11 56:12 56:16 56:15 56:18 56:20 56:23 57:5 57:7 57:8 57:9 57:9 57:10 57:10 57:11 57:13 57:13 57:18 57:21 57:21 57:24 57:25 58:1 58:2 58:3 58:4 58:4 58:6 58:7 58:7 58:8 58:8 58:9 58:9 58:10 58:12 58:14 58:15 58:16 58:16 58:18 58:19 58:21 58:21 58:22 58:22 58:23 58:24 59:1 59:2 59:3 59:4 59:4 59:5 59:6 59:6 59:10 59:11 59:11 59:14 59:14 59:17 59:20 59:22 60:7 60:8 60:10 60:11 60:12 60:13 60:16 60:16 60:17 60:18 60:18 60:19 60:20 60:21 60:22 60:22 60:23 60:24 61:1 61:1 61:2 61:3 61:3 61:5 61:10 61:11 61:20 61:24 62:1 62:4 62:4 62:7 62:9 62:10 62:15 62:20 62:21 62:22 62:24 63:1 63:2 63:3 63:4 63:5 63:6 63:8 63:11 63:13 63:16 63:17 63:19 63:20 63:21 63:22 63:23 63:25 64:3 64:3 64:3 64:3 64:8 64:12 64:20 64:22 65:2 65:2 65:5 65:5 65:7 65:13 65:15 65:19 65:22 65:22 65:24 65:25 65:25 66:10 66:11 66:15 66:16 66:18 66:23 67:4 67:5 67:7 67:9 67:9 67:9 67:12 67:12 67:14 67:15 67:17 67:18 67:21 67:23

**the(301)** 68:2 68:5 68:7 68:8 68:12 68:14 68:14 68:15 68:15 68:16 68:17 68:17 68:17 68:20 69:2 69:2 69:2 69:5 69:8 69:9 69:10 69:11 69:12 69:18 69:18 69:19 69:20 69:20 69:21 69:21 69:22 69:23 70:2 70:4 70:6 70:6 70:9 70:11 70:12 70:12 70:13 70:14 70:15 70:16 70:17 70:17 70:19 70:20 70:24 71:1 71:3 71:5 71:9 71:10 71:10 71:15 71:16 71:20 71:20 71:21 71:23 72:1 72:3 72:3 72:4 72:4 72:5 72:6 72:8 72:9 72:9 72:10 72:10 72:13 72:15 72:16 72:18 72:19 72:20 72:20 72:21 72:21 72:23 72:25 73:5 73:6 73:8 73:11 73:13 73:16 73:19 74:2 74:2 74:4 74:5 74:7 74:8 74:9 74:11 74:12 74:12 74:14 74:16 74:18 74:20 74:21 74:23 74:24 74:24 74:25 75:1 75:2 75:3 75:3 75:6 75:10 75:12 75:14 75:15 75:15 75:15 75:16 75:16 75:18 75:18 75:19 75:20 75:20 75:22 75:23 75:23 75:23 75:24 76:1 76:2 76:5 76:5 76:7 76:8 76:8 76:11 76:12 76:14 76:14 76:14 76:17 76:18 76:20 76:21 76:24 77:1 77:5 77:7 77:8 77:9 77:9 77:10 77:11 77:11 77:12 77:12 77:15 77:17 77:18 77:19 77:20 77:23 77:25 77:25 78:1 78:2 78:3 78:5 78:7 78:8 78:9 78:14 78:14 78:15 78:18 78:18 78:19 78:20 78:20 78:22 78:24 78:25 79:2 79:3 79:3 79:3 79:4 79:6 79:8 79:8 79:9 79:10 79:11 79:11 79:11 79:18 79:23 79:25 80:5 80:6 80:7 80:8 80:10 80:11 80:15 80:16 80:17 80:18 80:23 80:24 80:25 81:4 81:6 81:7 81:13 81:15 81:20 81:20 81:21 81:23 81:24 81:24 82:1 82:1 82:3 82:4 82:9 82:10 82:11 82:12 82:12 82:12 82:13 82:14 82:15 82:17 82:20 82:21 82:22 82:22 82:25 83:1 83:1 83:2 83:3 83:4 83:4 83:7 83:9 83:11 83:13 83:15 83:16 83:17 83:18 83:19 83:20 83:20 83:22 83:23 83:25 83:25 84:1 84:3 84:5 84:9 84:11 84:11 84:15 84:16 84:19 84:19 84:21 84:21 84:22 84:24 84:24 84:25 85:2 85:2 85:4 85:5 85:5 85:6 85:6 85:8 85:9 85:10

**the(291)** 85:10 85:11 85:14 85:15 85:18 85:21 85:23 85:24 85:25 86:1 86:1 86:4 86:5 86:9 86:11 86:11 86:14 86:17 86:18 86:19 86:19 86:20 86:24 86:25 86:25 87:1 87:5 87:12 87:18 87:20 87:21 87:21 87:22 87:23 87:24 88:1 88:1 88:3 88:5 88:10 88:10 88:11 88:12 88:12 88:16 88:17 88:18 88:20 88:23 89:1 89:1 89:2 89:3 89:6 89:6 89:8 89:11 89:16 89:18 89:21 89:22 89:24 89:25 90:3 90:8 90:9 90:12 90:13 90:16 90:21 90:21 90:24 90:24 90:24 90:25 91:4 91:10 91:12 91:15 91:20 91:22 91:24 92:2 92:2 92:3 92:4 92:5 92:6 92:7 92:8 92:9 92:15 92:15 92:19 92:19 92:20 92:22 92:23 93:3 93:11 93:13 93:18 93:19 93:20 93:21 93:23 93:23 94:2 94:3 94:5 94:5 94:6 94:6 94:7 94:9 94:9 94:12 94:13 94:16 94:19 94:23 95:1 95:9 95:15 95:19 95:19 95:20 95:21 95:21 95:25 95:25 96:5 96:9 96:11 96:14 96:16 96:18 96:18 96:23 97:2 97:2 97:4 97:4 97:6 97:10 97:11 97:15 97:15 97:16 97:17 97:18 97:19 97:23 98:1 98:2 98:6 98:8 98:9 98:12 98:13 98:14 98:16 98:19 98:20 98:22 98:22 98:23 98:25 99:3 99:5 99:10 99:12 99:15 99:18 99:19 99:24 99:24 100:2 100:3 100:5 100:6 100:7 100:7 100:8 100:9 100:12 100:12 100:14 100:14 100:17 100:18 100:19 100:21 100:25 101:1 101:5 101:6 101:7 101:7 101:11 101:11 101:12 101:14 101:16 101:17 101:17 101:22 102:2 102:3 102:3 102:4 102:6 102:8 102:12 102:14 102:15 102:18 102:19 102:20 102:22 102:23 102:24 102:25 103:4 103:7 103:8 103:9 103:12 103:12 103:15 103:16 103:17 103:17 103:19 103:19 103:20 103:21 103:22 103:23 103:24 104:1 104:2 104:4 104:5 104:6 104:7 104:8 104:10 104:10 104:16 104:16 104:20 104:24 105:1 105:3 105:5 105:5 105:6 105:7 105:9 105:10 105:10 105:12 105:14 105:16 105:16 105:24 106:2 106:3 106:5 106:6 106:7 106:7 106:16 106:17 107:5 107:7 107:7 107:7 107:9 107:11 107:16 107:19 107:22 108:2 108:3 108:3 108:4

**their(26)** 4:14 8:12 12:7 12:10 12:25 25:15 30:21 47:23 51:10 57:22 58:12 60:9 62:12 62:14 62:16 72:9 72:13 83:8 90:21 96:21 97:1 97:12 98:10 101:2 102:10 106:2

**them(31)** 4:4 10:4 13:9 13:18 13:25 14:1 14:1 16:18 24:4 39:7 39:8 40:14 49:9 62:18 66:14 66:23 85:7 86:20 87:6 87:9 87:17 87:18 96:25 97:23 99:2 100:13 100:16 101:18 101:18 102:6 106:16

**themselves(3)** 25:18 73:15 105:19

**then(41)** 4:5 6:9 9:6 10:9 11:10 11:20 12:15 13:8 14:19 16:22 21:14 21:19 22:11 23:22 23:22 31:8 33:1 47:5 52:24 56:5 60:9 61:12 72:1 74:24 79:25 81:13 81:19 81:19 82:23 83:13 83:21 85:21 86:15 90:1 93:6 93:22 93:24 97:8 100:8 101:17 106:25

**theory(2)** 64:14 100:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| there(88) | 4:7  5:2  11:9  11:10  12:19  13:12  16:24  17:24  19:16  19:18  20:25  22:2  24:7  25:24  26:22  27:23  29:3  30:1  31:17  31:20  35:8  36:14  36:21  38:7  44:1  48:10  48:13  48:19  50:18  57:15  57:15  58:18  58:25  59:  59:18  60:15  62:6  63:4  63:19  64:5  64:6  64:6  65:22  66:3  66:21  66:21  66:22  68:15  69:22  73:23  74:25  76:13  76:13  77:14  79:2  79:13  79:20  82:7  83:24  84:17  90:1  90:15  90:19  91:6  92:2  94:10  95:5  95:7  95:23  100:6  100:12  100:23  103:1  103:7  103:8  103:20  103:21  104:2  104:2  104:4  104:9  104:9  104:15  104:22  105:8  105:10  107:12 | this(166) | 16:14  20:12  28:9  28:10  28:17  28:18  28:19  28:21  29:5  29:6  29:7  29:17  29:19  29:24  30:2  30:3  30:4  30:10  30:11  30:14  30:22  31:2  31:12  31:13  32:18  32:22  32:24  32:25  33:13  34:15  34:18  35:23  35:21  36:3  36:1  36:8  36:10  37:11  38:4  38:5  38:10  39:4  39:22  40:5  40:5  40:6  40:8  41:3  41:5  42:5  42:12  42:17  43:8  44:3  44:20  45:22  45:24  47:4  47:11  47:15  47:16  47:21  49:11  49:13  50:16  50:17  52:  54:15  54:20  55:1  55:6  56:1  56:15  56:19  56:20  57:1  57:5  57:14  57:16  57:17  58:3  58:23  59:8  59:14  59:15  61:24  62:5  64:14  64:15  64:5  65:10  66:6  66:7  66:18  67:5  67:7  67:25  68:4  68:5  68:10  68:25  69:15  69:15  69:16  71:6  71:6  73:1  73:9  73:17  73:24  74:1  75:7  76:1  79:16  79:24  80:1  80:20  80:21  81:4  81:16  81:18  82:11  82:18  84:16  84:21  85:11  85:20  86:17  87:  87:8  88:7  88:15  88:24  89:19  89:22  90:3  89:24  90:5  91:13  92:7  93:9  93:9  93:14  93:16  94:9  94:20  95:2  95:14  96:4  96:23  97:3  97:6  97:7  97:10  97:14  97:25  100:20  101:14  101:19  102:13  103:9  105:19  106:1  106:11  106:19 | tried(2) | 26:5  92:3 | underwriting(7) | 13:1  25:15  64:7  64:11  78:14  80:19  81:21 |
| | | | | troubled(1) | 103:23 | | |
| | | | | true(5) | 39:7  58:7  72:16  72:18  97:9 | unencumbered(3) | 62:11  62:14  62:15 |
| | | | | truly(1) | 54:16 | unfortunately(1) | 43:8 |
| | | | | trust(41) | 8:7  8:24  9:23  11:20  14:9  14:20  26:6  30:4  30:8  30:9  31:14  40:13  41:14  44:22  45:15  59:3  59:4  60:9  60:14  60:16  60:16  60:18  60:20  60:22  61:4  84:11  84:17  85:7  85:9  85:11  85:11  85:15  85:20  86:1  86:5  88:13  88:14  98:16  98:19  98:20  98:25 | ung(1) | 61:15 |
| | | | | | | uninformed(1) | 96:25 |
| | | | | | | unit(1) | 11:13 |
| | | | | | | united(2) | 1:1  1:18 |
| | | | | | | unless(4) | 76:22  77:5  77:14  94:15 |
| there's(39) | 15:13  18:15  22:4  22:5  24:7  24:10  26:24  27:22  28:4  28:23  31:8  34:23  34:23  34:24  36:14  36:17  42:20  42:21  57:20  59:14  61:6  64:16  65:17  73:12  73:12  78:2  83:3  90:13  90:20  91:19  92:4  92:17  93:5  94:1  94:2  94:8  102:20  103:3  105:6 | | | | | unpaid(2) | 69:10  69:11 |
| | | | | | | unreasonable(1) | 55:8 |
| | | | | | | unsecured(4) | 2:5  71:23  104:23  105:11 |
| | | | | | | unsolicited(1) | 106:22 |
| | | | | | | until(5) | 11:1  55:24  63:3  79:8  89:3 |
| | | | | trustee(40) | 36:21  36:22  37:1  37:7  37:12  37:21  38:20  38:23  39:6  39:23  40:7  45:10  45:19  59:17  59:20  60:7  60:23  61:3  61:5  61:7  61:12  61:22  62:1  82:14  84:6  84:8  84:17  84:18  84:20  84:22  85:3  85:21  86:1  86:6  87:1  98:14  98:21  98:23  104:11  104:11 | untorid(1) | 79:2 |
| | | | | | | unwelcome(1) | 106:22 |
| | | | | | | upon(1) | 64:5 |
| | | | | | | urge(1) | 106:19 |
| | | | | | | use(2) | 24:4  72:9 |
| | | | | trustee's(1) | 38:22 | used(10) | 5:3  20:12  29:17  29:20  30:19  51:15  62:12  68:3  72:1  73:19 |
| | | | | try(1) | 92:9 | | |
| | | | | trying(2) | 50:2  82:24 | using(2) | 23:23  23:23 |
| these(32) | 10:6  10:7  11:22  12:11  12:13  13:19  16:21  20:1  31:19  32:9  33:23  45:8  48:11  49:7  51:15  55:1  57:2  62:25  64:12  71:8  87:7  87:10  88:9  88:14  88:15  91:17  93:2  93:15  96:5  97:3  104:19 | trying(3) | 83:10  83:16  93:3 | usually(3) | 10:1  30:24  49:18 |
| | | | | turn(15) | 26:20  28:6  29:25  31:2  32:11  32:18  32:23  33:4  36:2  36:12  38:18  40:24  45:18  67:3  103:12 | utilize(1) | 12:7 |
| | | | | | | v-tech(1) | 88:5 |
| | | | | | | vague(1) | 48:22 |
| | | | | | | valuation(1) | 70:24 |
| | | | | turning(1) | 26:2 | value(19) | 13:3  21:9  21:10  21:12  21:22  22:21  23:25  24:17  27:5  27:8  27:12  33:24  69:2  69:20  75:15  75:15  75:20  75:24  82:5 |
| | | | | turns(1) | 68:20 | | |
| they(130) | 4:9  12:24  13:4  15:19  17:2  20:4  20:11  22:6  22:11  22:14  22:17  23:16  23:22  23:22  24:4  24:12  25:13  25:18  29:24  33:11  33:16  39:6  40:2  40:14  40:16  41:19  44:5  47:20  48:21  50:23  51:4  51:4  51:5  51:8  51:9  51:12  55:15  55:21  55:22  55:22  55:24  56:3  56:3  56:4  56:4  56:5  58:2  58:2  58:3  58:8  58:23  58:24  59:2  59:3  59:5  59:6  62:1  62:5  62:9  62:9  62:12  62:13  62:14  62:17  62:22  64:7  64:8  68:18  68:18  69:2  69:3  70:14  71:10  71:20  71:25  72:1  72:1  72:11  72:14  73:10  73:10  73:10  73:10  73:13  73:14  74:11  74:11  74:12  77:11  77:12  77:17  77:22  78:12  79:6  81:13  82:21  82:24  83:12  84:6  85:5  86:19  88:20  88:21  88:24  89:22  89:25  90:2  90:2  90:5  90:22  91:13  91:13  92:1  92:3  92:3  92:9  93:11  100:13  100:13  100:14  100:20  101:5  102:4  102:5  102:7  102:10  102:11  106:1  106:4 | twenty(9) | 14:23  15:15  15:18  15:20  15:21  17:23  18:7  18:9  18:17 | | |
| | | | | twenty-five-thousand-dollar(1) | 71:14 | various(1) | 93:2 |
| | | | | two(21) | 2:13  8:21  10:10  12:23  12:24  17:24  25:12  25:13  28:24  31:5  47:17  48:1  60:15  94:14  95:12  96:11  96:22  99:6  99:10  99:11  103:2 | vehicle(1) | 55:9 |
| | | | | | | verified(1) | 27:19 |
| | | | | | | verify(3) | 12:6  102:7  102:7 |
| | | | | two-sixty-nine(1) | 32:14 | versus(10) | 15:25  17:22  61:15  68:10  87:9  88:5  88:19  90:14  90:25  91:1 |
| | | | | twofold(1) | 9:4 | | |
| they're(15) | 6:1  21:5  61:14  66:1  69:16  71:21  72:6  83:16  85:4  85:5  87:7  88:18  88:24  90:8  91:5 | type(12) | 10:6  10:18  12:14  13:2  13:16  17:1  19:22  22:16  30:22  30:25  50:20  50:22 | very(19) | 6:19  19:9  20:4  22:22  43:19  53:2  56:6  77:8  77:23  78:22  82:2  87:3  93:20  95:11  97:24  98:4  98:12  101:13  104:20 |
| | | | | | | vice-president(5) | 7:24  7:25  8:5  8:9  8:15 |
| | | | | types(7) | 9:10  15:24  15:25  16:6  16:14  20:4  48:16 | viewed(1) | 68:17 |
| | | | | | | violation(13) | 59:10  59:14  63:1  74:2  74:2  74:5  100:7  103:16  104:1  104:18  105:5  107:5  107:7 |
| thing(4) | 5:12  6:24  22:4  45:14 | time(38) | 11:13  13:1  20:7  20:7  27:5  53:3  54:16  55:19  56:20  57:7  57:8  58:2  58:7  58:8  59:6  61:3  63:2  63:6  65:2  68:17  69:2  75:19  76:20  80:5  90:7  91:2  91:4  93:1  93:11  94:10  95:11  97:19  97:22  97:22  102:13  103:21  103:22 | typical(3) | 21:20  21:24  22:25 | | |
| things(5) | 13:3  56:21  71:8  91:17  96:8 | | | typically(2) | 10:10  93:5 | | |
| think(30) | 5:6  6:10  18:20  24:24  29:9  31:5  44:15  47:14  49:25  51:25  53:15  53:18  54:5  67:6  67:16  67:21  68:23  69:16  77:6  78:21  78:24  79:23  86:13  97:12  99:23  103:23  104:2  104:13  105:20 | | | u.s(1) | 87:11 | virtue(1) | 20:23 |
| | | | | uh-huh(4) | 56:23  78:17  86:9  93:13 | void(4) | 59:11  59:21  61:14  84:12 |
| | | | | ultimate(1) | 100:17 | voids(1) | 74:14 |
| | | | | ultimately(10) | 12:11  12:16  63:5  90:8  100:19  101:2  103:4  103:18  105:21  105:25 | volume(4) | 32:12  32:15  61:6  70:11 |
| | | | | | | wait(7) | 41:10  41:10  42:22  43:6  49:20  83:18  83:19 |
| | | | timeline(1) | 84:21 | | | | |
| thinking(1) | 49:25 | title(19) | 7:22  46:7  57:24  62:10  62:11  73:1  84:8  84:22  85:14  86:12  104:10  104:14 | unable(1) | 106:1 | | |
| thinks(1) | 79:15 | | | unclean(2) | 96:3  105:13 | waited(1) | 55:24 |
| third(8) | 9:18  15:7  17:22  26:23  26:24  27:21  68:14  98:3 | today(2) | 4:5  33:20 | unclear(3) | 87:6  93:14  93:17 | walker(4) | 59:19  59:19  84:4  84:7 |
| | | | | uncontested(1) | 8:13 | walking(1) | 54:7 |
| | | told(5) | 55:11  55:23  74:11  100:1  100:1 | under(28) | 36:8  44:4  50:25  58:5  59:21  60:8  60:16  60:18  60:20  60:22  61:4  67:25  68:9  69:15  69:21  71:18  72:7  72:19  84:12  86:4  91:22  93:19  98:20  102:21  103:21  104:8  106:25 | wanerka(1) | 27:19 |
| thirty(2) | 43:20  96:12 | too(2) | 52:1  107:17 | | | wanerka's(1) | 78:21 |
| | | took(1) | 59:22 | | | want(21) | 4:18  10:20  15:14  15:19  19:1  23:1  27:24  41:17  43:12  49:22  52:20  52:23  53:4  53:5  53:11  53:15  53:19  59:13  73:8  76:22  89:22 |
| | | top(3) | 14:22  14:23  42:20 | | | | |
| | | tort(3) | 72:8  72:9  72:12 | | | | |
| | | total(4) | 67:14  70:15  70:17  83:1 | underestimat(1) | 102:1 | | |
| | | trade(2) | 24:1  24:7 | underlying(1) | 84:12 | | |
| | | trades(1) | 30:20 | understand(19) | 18:21  19:3  24:25  26:21  39:14  39:15  41:21  43:23  54:2  65:13  66:2  66:12  75:25  78:9  94:20  97:4  105:18  106:6  106:8 | wanted(18) | 5:12  12:14  13:17  16:5  16:6  45:9  49:9  54:3  56:4  65:22  66:3  66:5  80:20  82:1  83:20  96:22  97:17  101:13 |
| | | train(1) | 103:6 | | | | |
| | | transaction(1) | 31:1 | | | | |
| | | transcript(5) | 1:16  1:44  43:7  79:19  108:3 | | | | |
| | | transcription(2) | 1:37  1:44 | | | | |
| | | transcriptionist(1) | 108:10 | understanding(3) | 25:5  39:22  40:1 | | |
| | | transfer(5) | 47:19  61:2  84:8  84:10  89:3 | understands(2) | 76:17  85:13 | wanting(1) | 66:2 |
| | | transferred(7) | 46:10  46:18  47:9  47:11  72:20  72:22  72:24 | understate(1) | 102:1 | wants(1) | 4:20 |
| | | | | understood(2) | 54:8  90:11 | warehouse(3) | 54:25  55:1  55:2 |
| | | | | underwriter(5) | 22:3  22:3  22:5  22:5  22:10 | warranty(1) | 37:24 |
| | | transpired(2) | 102:24  102:24 | underwriters(8) | 10:2  11:21  12:2  12:4  12:10  12:13  12:20  21:25 | | |
| | | trial(6) | 79:19  79:20  93:12  94:10  96:23  107:11 | | | | |
| | | trickier(1) | 92:23 | | | | |

| Word | Page:Line |
|---|---|
| **was**(229) | 6:6 8:3 8:5 8:16 9:2 9:4 9:8 9:16 9:17 9:17 10:17 11:9 11:10 11:11 11:14 13:5 13:12 13:16 14:19 16:24 17:23 17:23 18:1 18:9 18:18 19:20 20:20 23:9 23:11 23:19 23:25 24:14 25:20 25:22 25:24 26:18 27:6 27:8 27:13 28:16 29:11 29:11 29:17 29:19 31:16 32:19 34:2 34:10 34:15 35:12 41:22 41:24 42:2 42:9 44:5 44:10 44:15 44:15 46:9 46:10 46:17 46:18 46:20 47:11 47:12 47:19 47:24 48:19 49:12 50:16 50:18 51:18 54:21 54:23 55:6 55:7 55:8 55:9 55:11 55:12 55:15 55:17 55:18 55:20 55:22 55:23 56:9 56:17 56:25 57:8 57:16 57:20 58:4 58:5 58:16 58:20 58:23 59:1 59:1 59:11 61:3 61:3 61:25 61:25 62:11 63:2 63:4 63:5 63:6 63:10 63:19 63:21 63:22 64:6 64:24 64:25 65:10 65:16 66:5 66:21 66:22 66:22 66:24 66:25 67:21 68:7 69:3 70:1 70:2 70:6 71:10 71:13 72:9 72:11 72:14 72:22 74:25 75:19 76:16 77:11 77:14 77:23 78:14 78:19 78:20 78:22 78:22 78:25 79:2 79:4 79:5 79:7 79:20 80:10 80:12 80:16 80:19 80:20 80:20 80:25 81:3 81:4 81:11 81:24 81:25 82:2 82:5 82:7 83:5 84:17 86:17 86:18 87:4 87:5 87:6 87:14 89:4 91:4 92:2 93:11 95:7 95:10 95:23 97:17 97:20 97:23 98:12 98:13 100:1 100:1 100:12 100:18 100:21 101:1 101:1 101:2 101:5 101:22 102:11 102:13 102:14 102:14 102:15 102:15 102:20 102:25 103:1 103:17 103:21 103:21 104:2 104:2 104:3 104:4 104:5 104:15 104:16 104:17 104:19 104:20 105:8 105:20 105:21 106:1 107:6 107:12 107:22 |
| **wasn't**(10) | 19:6 23:5 23:11 58:6 75:18 79:19 81:10 88:3 97:9 105:6 |
| **way**(15) | 15:10 26:6 32:18 47:13 72:23 74:8 74:9 76:6 79:3 88:3 91:19 101:5 102:4 104:5 104:18 |
| **ways**(1) | 13:24 |
| **we'll**(6) | 4:7 4:7 59:8 90:9 99:6 107:1 |
| **we're**(17) | 36:1 43:6 43:10 51:25 52:15 68:25 71:6 73:7 74:9 74:14 74:15 75:5 83:7 83:7 106:9 107:19 |
| **we've**(19) | 4:25 5:14 8:10 10:16 52:18 56:25 57:19 62:2 62:3 62:4 67:3 71:7 73:22 73:22 73:25 82:21 96:23 97:15 97:15 |
| **website**(1) | 28:19 |
| **wednesday**(1) | 4:1 |
| **weeks**(1) | 87:15 |
| **weight**(1) | 56:20 |
| **weinblatt**(2) | 2:10 2:11 |
| **welcome**(2) | 74:18 107:16 |
| **well**(98) | 4:16 4:20 8:10 8:12 9:4 9:23 10:14 11:14 11:18 11:18 11:24 12:5 13:2 14:13 14:21 15:8 15:22 16:11 18:1 19:14 20:14 20:19 21:8 21:12 22:4 22:8 22:22 23:21 24:8 25:7 25:17 26:22 30:10 33:4 35:1 37:1 40:1 40:8 40:20 42:2 42:13 44:12 44:13 46:12 46:22 47:4 47:19 48:16 49:1 49:14 49:16 50:16 50:20 52:23 53:4 53:9 54:5 65:1 66:17 66:18 66:20 69:5 69:7 69:12 69:18 71:25 72:7 72:17 72:17 72:19 72:19 74:1 75:10 75:12 77:7 77:17 82:20 83:8 83:20 84:4 84:25 86:8 87:10 88:7 88:21 89:17 89:25 92:7 92:14 93:8 95:5 95:19 96:19 98:4 99:23 100:2 101:7 106:6 |
| **wells**(3) | 26:10 28:10 28:18 |
| **went**(9) | 13:17 18:17 39:5 40:13 60:19 72:22 75:16 91:5 104:16 |
| **were**(75) | 9:5 9:12 9:14 10:12 11:12 12:19 12:23 13:8 13:20 14:4 15:5 16:21 17:7 17:17 17:24 18:10 19:14 19:16 19:18 19:19 20:3 20:11 23:3 23:6 25:7 26:22 30:20 31:17 31:20 32:8 32:20 34:3 34:4 34:10 34:12 39:8 41:13 41:18 48:1 48:10 48:13 48:20 49:3 51:10 54:24 54:25 55:1 55:11 55:14 56:21 58:24 61:13 62:1 64:9 64:13 65:3 69:3 70:11 75:6 76:21 78:12 78:13 79:11 79:24 80:23 86:19 95:22 100:13 102:4 102:6 102:11 103:2 104:22 106:1 |
| **weren't**(2) | 27:23 35:8 |
| **werkheiser**(2) | 6:24 87:19 |
| **west**(1) | 1:31 |
| **western**(2) | 61:14 61:25 |
| **westlaw**(1) | 68:13 |
| **what**(106) | 7:22 8:3 8:8 8:15 9:2 9:14 9:21 10:12 10:20 10:21 11:16 12:2 12:17 14:3 14:3 14:13 14:13 14:16 14:16 14:22 15:8 17:1 17:15 17:21 17:24 18:5 18:9 18:9 18:11 18:21 20:12 20:20 21:10 21:22 22:20 22:20 22:25 23:19 24:6 25:5 25:18 25:25 26:18 26:21 27:24 28:9 29:5 29:7 30:2 30:8 30:15 30:17 31:12 33:10 35:23 36:24 38:13 38:15 39:1 41:22 41:24 42:19 43:4 44:13 44:17 46:22 47:6 49:23 50:2 50:18 50:22 51:23 57:13 64:8 64:23 65:19 66:16 69:8 69:12 73:13 73:14 74:22 80:21 83:6 90:23 90:25 91:1 91:3 92:19 92:19 92:20 95:4 95:25 96:23 100:1 100:1 100:23 100:11 101:2 102:7 102:21 105:8 106:3 106:4 106:21 107:11 |
| **what's**(7) | 26:23 28:17 48:6 69:21 84:19 91:21 97:4 |
| **whatever**(2) | 25:22 66:11 |
| **whatsoever**(3) | 45:13 78:25 103:3 |
| **when**(31) | 10:25 11:8 24:6 41:19 47:21 49:18 56:6 56:20 57:5 58:22 58:23 63:5 63:8 63:24 69:9 70:1 72:11 72:12 76:16 79:6 79:22 79:23 80:24 92:17 95:15 95:24 98:15 100:24 104:16 |
| **where**(15) | 29:13 43:7 45:9 51:8 56:4 65:4 69:15 71:3 71:4 73:9 83:2 83:10 93:3 96:1 97:7 |
| **whereby**(1) | 12:19 |
| **whereupon**(1) | 107:22 |
| **whether**(15) | 21:5 34:20 35:4 50:18 51:7 51:7 56:9 56:21 75:16 83:15 93:15 93:15 98:15 101:21 102:20 |
| **which**(56) | 5:3 9:10 9:17 10:18 11:19 12:6 12:13 12:16 14:11 15:24 15:25 16:4 19:20 20:13 25:20 26:10 26:14 31:14 32:11 35:20 36:8 43:1 43:15 45:15 54:20 55:6 56:13 58:9 60:14 61:16 62:18 65:16 67:4 67:6 68:11 68:16 70:19 75:16 79:13 79:18 81:21 82:18 83:9 84:4 89:3 92:24 94:4 95:6 98:3 100:10 100:18 102:15 104:18 105:4 |
| **while**(2) | 41:18 92:1 |
| **white**(3) | 32:12 32:15 45:19 |
| **who**(11) | 23:17 32:4 57:25 58:3 58:21 59:5 59:5 60:6 86:25 101:2 104:12 |
| **who's**(1) | 11:9 |
| **who've**(1) | 106:14 |
| **whoever**(1) | 92:9 |
| **whole**(8) | 14:1 23:25 24:7 24:9 29:21 30:20 58:3 61:11 |
| **whom**(3) | 7:17 48:23 64:12 |
| **whose**(1) | 27:3 |
| **why**(15) | 6:23 13:15 20:1 20:5 27:10 43:20 47:8 47:24 50:7 59:1 59:15 64:17 95:6 102:24 106:9 |
| **will**(12) | 6:14 50:9 84:3 87:6 89:6 93:6 98:23 99:20 100:18 104:16 104:25 106:15 |
| **wilmington**(4) | 1:11 1:32 2:15 4:1 |
| **wings**(2) | 83:19 83:20 |
| **wire**(1) | 46:23 |
| **with**(142) | 5:3 5:18 6:3 6:9 6:21 7:22 8:4 8:8 8:11 8:11 9:2 9:10 10:4 10:5 10:25 11:11 11:16 11:18 11:18 11:21 12:5 12:10 12:13 12:24 13:25 15:1 15:20 16:7 17:1 20:3 21:11 22:12 23:19 23:24 24:9 24:14 25:6 25:21 25:25 33:4 33:6 35:25 36:1 36:6 37:6 38:8 39:9 39:24 40:15 42:8 44:15 45:8 45:11 46:6 46:7 47:4 50:3 50:6 51:5 54:15 55:2 55:3 55:4 57:18 58:25 59:3 59:23 60:14 60:15 60:19 62:8 61:11 61:21 62:23 65:6 66:25 66:25 67:2 68:4 68:4 68:12 70:15 72:13 73:9 74:5 76:8 76:15 77:4 77:15 77:17 77:19 77:20 77:23 78:3 78:11 78:11 78:16 78:19 79:18 81:11 81:16 82:4 82:8 83:3 84:5 84:7 84:8 84:15 84:16 85:16 85:24 87:8 89:19 90:20 91:16 91:23 93:18 94:7 95:14 95:14 95:19 96:1 96:4 96:4 98:12 98:15 100:9 100:25 101:16 101:21 102:24 103:9 103:14 104:8 104:21 105:3 106:3 106:12 |
| **withdraw**(3) | 6:3 6:5 6:10 |
| **withdrawal**(1) | 6:9 |
| **within**(2) | 54:6 95:11 |
| **without**(7) | 37:23 58:16 59:20 84:11 92:5 92:19 97:1 |
| **witness**(59) | 4:14 7:2 7:8 7:11 11:7 14:2 14:5 14:8 14:11 14:15 14:18 14:21 14:25 15:4 15:10 15:12 15:16 16:2 16:9 16:11 16:14 16:17 16:23 16:25 17:4 17:22 18:3 18:6 18:13 18:15 18:23 19:1 19:5 19:11 26:24 27:9 27:11 29:3 34:9 39:15 39:17 40:18 40:22 41:9 41:24 42:15 43:1 43:44 44:1 45:2 46:3 47:4 48:6 49:1 49:14 49:21 49:24 50:14 |
| **witnesses**(2) | 3:4 52:10 |
| **woman**(1) | 87:22 |
| **word**(1) | 37:6 |
| **words**(1) | 69:8 |
| **work**(10) | 7:18 8:11 10:2 11:18 11:21 11:23 22:6 48:11 87:21 106:15 |
| **worked**(8) | 11:11 11:18 12:1 45:3 45:4 46:12 47:5 104:5 |
| **working**(2) | 9:20 10:4 |
| **works**(1) | 81:21 |
| **world**(1) | 102:4 |
| **worth**(1) | 75:18 |
| **would**(140) | 4:6 4:7 5:23 10:2 10:6 10:9 10:10 10:19 10:20 10:21 11:18 11:20 11:21 12:7 12:13 13:2 13:12 14:5 14:22 15:2 15:4 15:24 15:25 16:15 16:18 16:22 17:10 19:22 19:23 19:24 19:25 20:3 20:12 20:20 21:14 21:16 21:20 21:21 21:22 22:10 22:11 22:13 22:15 22:17 22:20 22:20 22:22 22:24 22:24 23:1 24:9 24:11 24:18 25:18 25:24 25:25 26:6 27:15 30:11 30:25 32:11 35:7 35:10 35:13 35:18 36:2 36:10 37:5 38:18 39:5 39:6 39:24 45:21 47:21 48:16 49:3 49:8 50:12 50:12 50:21 50:23 51:1 51:8 51:20 51:20 51:24 52:22 54:12 64:10 64:17 64:18 66:13 67:2 68:21 71:23 76:7 76:13 77:5 77:21 79:25 80:1 80:2 80:3 81:13 82:3 84:13 86:5 86:16 86:20 86:25 87:1 87:16 88:23 89:9 89:14 89:21 89:25 90:12 90:13 90:23 90:25 91:1 92:25 93:19 93:22 95:4 95:7 97:20 98:5 102:22 103:4 103:10 103:19 103:24 104:23 105:12 106:10 106:24 |
| **wouldn't**(9) | 17:3 17:6 23:1 27:13 35:14 76:1 86:21 103:1 106:4 |
| **wreaths**(1) | 16:22 |
| **wring**(1) | 92:12 |
| **writing**(3) | 57:7 77:14 77:15 |
| **written**(1) | 105:15 |
| **wrong**(10) | 26:8 46:24 47:2 57:21 58:15 66:19 69:21 72:3 72:23 106:15 |
| **wrongdoing**(2) | 76:6 76:8 |
| **wrongful**(3) | 67:25 68:3 72:8 |
| **wrongfully**(2) | 93:23 94:3 |
| **www.diazdata.com**(1) | 1:41 |
| **yeah**(23) | 16:9 29:3 34:6 36:1 36:11 37:4 37:10 37:17 39:1 39:3 39:20 42:15 46:19 48:11 49:19 51:17 64:21 67:21 72:3 84:19 89:6 89:16 99:15 |
| **year**(1) | 69:23 |
| **years**(7) | 75:19 83:19 83:22 89:24 91:9 106:4 106:17 |
| **yes**(35) | 5:11 5:20 6:16 11:7 16:23 16:25 17:9 17:12 24:24 25:2 25:4 29:2 29:21 31:6 31:25 32:5 32:22 34:17 34:19 36:7 36:16 36:19 36:25 41:12 41:16 46:1 46:8 52:14 52:17 67:11 67:13 82:16 87:16 96:14 107:18 |
| **yesterday**(3) | 59:22 63:23 78:21 |
| **yet**(2) | 55:23 58:8 |
| **york**(1) | 2:7 |

| Word | Page:Line | Word | Page:Line |
|---|---|---|---|
| **you**(276) 4:6 4:8 4:18 5:9 5:10 5:18 6:13 6:19 6:20 6:23 7:1 7:3 7:13 7:13 7:17 7:19 9:20 9:21 10:12 10:21 10:25 11:3 11:3 11:6 11:16 12:1 12:1 31:25 32:6 13:24 13:25 13:25 14:1 14:4 14:22 15:2 15:8 15:13 15:14 15:18 15:19 15:20 15:20 15:21 16:5 16:5 16:6 16:6 17:3 17:6 17:10 17:13 17:15 17:16 17:16 17:21 18:5 18:9 18:9 18:11 18:20 18:21 19:7 19:10 20:12 20:12 20:18 20:22 20:23 21:1 21:2 21:7 21:13 21:18 21:25 22:18 22:22 22:25 23:3 23:6 23:8 24:22 24:25 26:8 26:22 27:24 28:9 28:21 28:24 29:13 29:19 30:2 31:2 31:12 31:17 31:21 32:2 32:7 32:11 32:18 32:20 32:23 33:4 33:7 33:12 33:13 34:3 34:7 34:8 34:15 34:20 35:1 35:1 35:4 35:23 36:2 36:6 36:12 36:14 36:17 36:22 37:5 37:9 38:18 38:24 39:14 39:17 39:19 41:5 41:11 42:5 42:7 42:14 42:17 42:24 43:2 43:12 43:17 44:14 44:23 45:1 45:4 45:9 45:17 45:18 45:21 46:5 46:5 46:6 47:5 47:14 47:24 48:8 48:13 48:24 49:18 50:2 50:7 50:9 51:6 51:11 51:13 51:13 51:14 52:8 52:8 52:9 52:20 53:4 53:5 53:9 53:11 53:23 54:2 54:13 56:3 56:8 57:5 57:5 58:22 59:13 60:13 60:13 61:10 61:15 62:5 62:13 63:22 63:24 64:8 64:11 65:5 65:10 65:24 66:18 66:19 68:19 68:20 68:21 68:24 69:9 69:9 69:15 70:8 70:10 71:9 73:10 73:11 73:19 74:6 74:17 75:19 76:22 79:18 82:11 83:18 83:22 84:17 87:7 87:16 87:18 87:22 88:20 88:22 89:1 89:12 89:12 90:3 90:5 92:11 92:11 92:12 92:18 92:24 92:24 93:15 93:16 94:20 95:4 96:9 96:10 96:11 97:5 97:20 98:5 98:6 98:18 98:24 98:24 99:4 99:5 99:8 99:9 99:11 99:11 99:16 100:18 101:10 104:16 104:24 105:13 106:10 106:11 106:15 106:17 106:18 106:19 106:20 106:20 106:21 106:21 106:24 107:15 107:16 107:20 **your**(234) 4:12 4:15 4:19 4:25 5:9 5:11 5:20 5:22 5:25 6:2 6:13 6:16 6:21 7:2 7:3 7:7 7:9 7:22 8:3 8:8 8:9 8:14 8:16 8:20 9:2 11:6 16:4 18:25 25:5 28:1 31:25 32:6 32:25 38:4 38:8 39:10 39:22 41:7 41:12 43:8 43:25 44:10 44:24 45:8 45:18 46:1 46:13 47:3 47:6 48:3 48:22 48:25 49:11 50:3 50:9 51:15 51:22 52:4 52:7 52:11 52:14 52:17 52:20 52:21 53:3 53:6 53:8 53:12 53:18 53:20 54:3 54:8 54:12 54:19 54:22 55:10 56:1 56:8 56:14 56:18 56:19 56:24 57:6 57:18 58:3 58:11 59:13 60:1 60:13 61:7 61:15 61:24 62:2 62:6 62:11 62:23 63:9 63:15 63:16 63:20 63:23 63:24 63:24 63:25 64:3 64:5 64:14 65:1 65:8 65:15 66:8 66:17 66:20 67:2 67:3 67:24 68:4 68:6 68:9 68:15 68:18 68:20 68:23 69:9 69:14 70:5 70:24 71:8 71:13 71:17 71:25 72:7 73:8 73:13 73:22 74:4 74:7 74:17 74:20 74:23 75:11 75:13 75:25 76:7 76:10 76:16 76:16 76:22 77:3 77:4 77:5 77:21 78:18 78:21 79:17 80:18 80:19 81:22 82:3 82:6 82:6 82:10 82:16 82:18 82:20 83:9 83:17 83:23 84:3 84:13 86:5 86:7 87:3 87:15 87:16 88:5 88:22 88:23 89:9 89:13 89:20 90:5 90:11 90:12 90:19 91:5 91:8 91:8 91:24 93:5 93:8 93:9 93:19 93:25 94:4 94:13 94:15 94:19 94:20 95:1 95:2 95:4 95:12 95:18 95:19 96:2 96:10 96:15 96:18 96:19 97:2 97:6 97:12 97:19 98:2 98:9 98:17 98:19 98:19 99:8 99:9 99:16 106:7 106:8 106:12 106:18 106:19 106:20 107:1 107:3 107:4 107:6 107:15 107:18 |
| **you'll**(4) 28:6 29:25 40:24 70:11 **you're**(16) 26:21 33:2 45:4 46:9 49:20 50:1 53:7 64:1 69:10 69:19 69:20 72:4 73:1 73:1 74:18 107:16 | **zero**(1) 65:10 **zieg**(67) 1:25 4:11 4:12 4:12 4:18 4:22 5:11 5:20 5:25 6:2 6:21 7:3 7:15 11:4 11:6 17:5 18:8 18:20 18:25 19:11 23:9 23:13 26:19 28:1 28:3 29:2 29:4 31:22 33:8 33:10 36:3 38:4 39:10 40:9 40:17 41:7 42:11 42:24 43:2 43:5 43:17 43:18 43:20 43:23 44:7 44:24 46:13 46:17 46:20 46:24 47:2 48:3 48:22 49:11 49:17 49:22 51:22 52:7 52:14 81:5 87:22 99:8 99:11 99:13 107:15 107:18 107:21 |
| **you've**(4) 54:14 92:23 106:18 106:18 **young**(3) 1:22 4:13 74:21 | |