```
                  IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE

IN RE:                          )    Chapter 11
                                )
                                )
AMERICAN HOME MORTGAGE          )    Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware      )
Corporation, et al.,            )    Courtroom 6
                                )    824 Market Street
            Debtors.            )    Wilmington, Delaware
                                )
                                )    November 22, 2010
                                )    10:00 a.m.


                      TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
                  UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Debtor:                 Young, Conaway, Stargatt &
                            Taylor, LLP
                            BY:  SEAN M. BEACH, ESQ.
                            BY:  SHARON ZIEG, ESQ.
                            BY:  ERIN EDWARDS, ESQ.
                            BY:  MARGARET GREECHER, ESQ.
                            BY:  MORGAN SEWARD, ESQ.
                            BY:  ANDREW A. LUNDGREU, ESQ.
                            The Brandywine Building
                            1000 West Street, 17th Floor
                            Wilmington, DE  19801
                            (302) 571-6600


ECRO:                       LESLIE MURIN

Transcription Service:      DIAZ DATA SERVICES
                            331 Schuylkill Street
                            Harrisburg, Pennsylvania 17110
                            (717) 233-6664
                            www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
 1  APPEARANCES:
    (Continued)
 2
    For the Official Committee      Hahn & Hessen, LLP
 3  of Unsecured Creditors:         BY:  EDWARD SCHNITZER, ESQ.
                                    488 Madison Avenue
 4                                  New York, NY  10022
                                    (212) 478-7200
 5


 6  For Claimant, Deborah Mills:    Stamoulis & Weinblatt
                                    BY:  RICHARD WEINBLATT, ESQ.
 7                                  BY:  STAMATIO STAMOULIS, ESQ.
                                    Two Fox Point Centre
 8                                  6 Denny Road, Suite 307
                                    Wilmington, DE  19809
 9                                  (302) 999-1540

10                                  BY:  ANTHONY ESQUIVEL
                                    BY:  CANDICE HEBDEN
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                                   INDEX

2                                                          Further

3    WITNESSES FOR THE        Direct  Cross  Redirect  Recross  Redirect

4    CLAIMANT:

5    Deborah Mills              48     129

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  WILMINGTON, DELAWARE, MONDAY, NOVEMBER 22, 2010, 10:10 A.M.

2          THE COURT:  Please be seated.

3          MR. BEACH:  Good morning, Your Honor.  May it

4  please the Court, Sean Beach from Young Conaway on behalf of

5  the debtors.

6          THE COURT:  Good morning.

7          MR. BEACH:  Your Honor, as you know, today we're

8  here with respect to the contested administrative expense

9  claim of Ms. Deborah Mills.  There are five items on the

10 agenda today.  The first one is her administrative expense

11 claim and then the remaining ones are motions in limine and

12 the summary judgment motion that we discussed the other day.

13          Just a couple housekeeping matters.  We agreed to

14 a form of order in connection with your ruling on the

15 debtors' motion in limine last week.  And if it's acceptable

16 to Your Honor, I'd like to approach and hand you a copy of

17 that order, as well as, two exhibits that were redacted and

18 not included in your hearing binder because they had some

19 personally identifiable information in it and we neglected

20 to put it in there with respect to the debtors' reply to

21 the --

22          THE COURT:  Okay.

23          MR. BEACH:  -- summary judgment motion.  May I

24 approach?

25          THE COURT:  Yes.  Thank you.

1                MR. BEACH:  With respect to the exhibits, they

2    are Exhibits A and B with respect to the debtors' reply to

3    the --

4                THE COURT:  Objection.

5                MR. BEACH:  -- response of Ms. Mills, yeah, in

6    connection with the administrative claim.

7                THE COURT:  What's today?

8                MR. BEACH:  The 22nd, Your Honor.

9                THE COURT:  Thank you.  I know it's Monday.  I

10   got that much.  That's about all I can do.  All right, I

11   signed the order.

12               MR. BEACH:  Thank you, Your Honor.  Your Honor, I

13   believe as discussed the other day, the plan was to commence

14   with argument in connection with the summary judgment motion

15   and the motions in limine.  If that course is still

16   acceptable to Your Honor, I'll cede the podium to Ms. Mills'

17   counsel to -- with respect to the summary judgment motion.

18               THE COURT:  Well, let's start with the motions in

19   limine, please.

20               MR. BEACH:  Sure, Your Honor.  Then the first

21   motion in limine is Item No. 3 on the agenda.  It's Ms.

22   Mills' motion to exclude any evidence related to tax returns

23   and --

24               THE COURT:  Um-hum.

25               MR. BEACH:  -- schedules submitted during her

1   personal bankruptcy and I'll cede the podium to Ms. Mills'

2   counsel.

3             THE COURT:  All right, thank you.

4             MR. STAMOULIS:  Good morning, Your Honor.  Stam

5   Stamoulis on behalf of Ms. Mills whom by the way is seated

6   next to me at counsel table.

7             THE COURT:  Welcome.

8             MR. STAMOULIS:  Your Honor, I believe the

9   principal points of our argument are set forth in our brief.

10  The few that I'd like to raise here on oral argument are

11  with regard to the objection to the Mill filed by debtors'

12  counsel.

13            The first is they raised this need to use these

14  tax returns as part of their unclean hands defense.  As the

15  Court well knows, unclean hands is a defense that's used

16  when seeking equitable remedies.  There's no equitable

17  remedy here sought.  Every remedy Ms. Mills is seeking

18  through this claim is monetary.  We're not asking you to

19  give the house back.  And so as a result, unclean hands is

20  not applicable here.

21            With regard to the equitable estoppel claim,

22  that's an affirmative defense that the debtors bear the

23  burden on.  And it's a defense that relies on the debtors

24  proving that -- two things.  First, that the

25  misrepresentations that were made to the extent there were

1  any in the loan application were material.  And the second

2  is that the debtors actually relied on material

3  misrepresentations as a basis for their course of conduct.

4          Your Honor, that claim is not properly before the

5  Court and really can't be addressed by the Court.  There's

6  simply been no evidence introduced regarding either of those

7  two facts.  I mean, for example, the thing that comes first

8  to mind is that there's no affidavit from someone in the

9  underwriting department at American Home which recites under

10 oath that had they known this information, they would not

11 have done what they did.  There's no witness from

12 underwriting to talk about the underwriting standards and

13 their decision making process on the trial list.  There has

14 been no production by the debtors of their underwriting

15 standards to even present to Your Honor so that Your Honor

16 can review them to determine if this misrepresentation was

17 material and was relied upon to their detriment.

18         Basically, Your Honor, there's no way to know

19 what information would have changed the minds of the debtors

20 with regard to issuing this loan.  And as a result, the

21 defense is far too speculative.  And so they're asking the

22 Court on its own to sit in the place of an underwriter and

23 determine that as an underwriter this would have changed my

24 mind with no assistance to the Court on that regard.

25         So given that the unclean hands defense is

1  inapplicable and this equitable estoppel defense is not

2  really properly before Your Honor, the only thing that's

3  really left with regard to the statements on the tax returns

4  and Ms. Mills, you know, use of those statements is her

5  credibility.  And that basically relegates this evidence;

6  the tax returns, the bankruptcy schedules as being

7  collateral evidence with regard to the credibility of a

8  witness which is exactly what Rule of Evidence 608 is

9  designed to exclude.  And that's why the principal basis of

10 our arguments in our motion in limine is that this is not

11 something that is relevant and this is not something that's

12 permissible under Rule 608.  If they want to attack Ms.

13 Mill's credibility on the stand, they're more than welcome

14 to, but they shouldn't be able to use extrinsic evidence to

15 go after that.

16         And that's all I have to say on that MIL.

17         THE COURT:  All right.  Response?

18         MS. ZIEG:  Good morning, Your Honor.  Sharon Zieg

19 of Young, Conaway, Stargatt & Taylor on behalf of the

20 debtors.

21         Your Honor, when we first reviewed the motion to

22 exclude, I just couldn't believe, I couldn't understand how

23 it could not be relevant.  With respect to Mr. Stamoulis'

24 argument that unclean hands can only apply when you're

25 seeking an equitable remedy, that's completely inaccurate.

1 The issue about unclean hands is that is an equitable
2 doctrine.  That it's an equitable defense.  That doesn't
3 mean that it doesn't apply in all cases.  Notwithstanding,
4 there's also the defenses raised by the debtors of equitable
5 estoppel waiver.  There's also the -- a component of Ms.
6 Mills' claim justified reliance.  If she made material
7 misrepresentations on her loan application, that would be a
8 defense for the debtors with respect for unclean hands and
9 it also would not support a major element of her claim which
10 is justifiable reliance.
11          As to the fact that Mr. Stamoulis is saying that
12 we're only trying to use the tax returns as character
13 evidence under 608, we are not trying to use the tax returns
14 necessary as character evidence.  We're seeking to use the
15 tax returns under Federal Rule of Evidence 405(b) which
16 permits us to use certain instances of conduct to the extent
17 it's relevant to a claim or defense.
18          The tax returns are what they are.  We are not
19 saying that Ms. Mills lied on her tax returns and now she's
20 acting inconformity therewith.  Ms. Mills stated on her loan
21 application that she had $28,000 a month in gross income.
22 Her tax returns say for those years she only made
23 approximately $51,000 gross.  We're using her tax returns to
24 establish that there was misrepresentations.  Gross,
25 inflated misrepresentations of her income on her loan

1 application.  That the debtors relied on that loan

2 application in giving her her loan and she -- that if she

3 had not made those representations, she would not have

4 gotten that loan.

5         With respect to Mr. Stamoulis' statement that the

6 debtors don't have anyone here and are not going to put on

7 any witnesses related to underwriting, that's simply untrue.

8 In the pre-trial order, we've identified Ms. Ilene Wannaka

9 [ph] as someone who's going to testify about the debtors'

10 underwriting procedures.

11         To the extent that the Court has any other

12 questions, I'm happy to go through it, but I wanted to make

13 this as brief as possible.

14         THE COURT:  Okay, thank you.  Reply?

15         MR. STAMOULIS:  I said everything I have to say

16 on that, Your Honor.

17         THE COURT:  Okay.

18         MR. STAMOULIS:  So I think there's really nothing

19 to apply to on that ground.  Just stressing that really this

20 is a collateral matter.  This is -- they have not brought a

21 claim against Ms. Mills asserting fraud based on the loan

22 application.  Really, the -- I think the primary basis for

23 this is a credibility attack.

24         THE COURT:  Okay, thank you.  Well I'm going to

25 deny the motion in limine.  I believe that the evidence that

1  is being sought to be excluded is relevant to the elements

2  of both Ms. Mills' claim itself, as well as, to the debtors

3  various defenses including any equitable defenses.

4  Equitable defenses are not necessarily limited to a response

5  to a request for equitable relief.  You could assert an

6  equitable defense in connection with a remedy being sought

7  against you at law.  In any event, I don't really think I

8  need to get there.  I think that it is appropriate under

9  405(b), as well as, relevant to the defense on the fraud

10 claim.

11         So I'm going to overrule the motion in limine and

12 allow the evidence.

13         MS. ZIEG:  Thank you, Your Honor.

14         THE COURT:  You're welcome.  Now we have the

15 motion on the expert testimony, Mr. Adelson [ph].

16         MR. STAMOULIS:  Well again, Your Honor, the

17 primary thrust of our argument is in our pleadings that Mr.

18 Adelson is not going to testify on anything more other than

19 legal issues and that the case law with regard -- it's up to

20 Your Honor's discretion as to whether you want to apply --

21 you want to permit a legal expert to testify at trial so we

22 defer to Your Honor's discretion on that.

23         I do want to address one issue raised in their

24 opposition brief.  With regard to the Rule 26 arguments,

25 debtors have cured that and we withdraw the motion based on

1   Rule 26.  In their Footnote 5, debtors make clear that,

2   indeed, Ms. Le Teau [ph] did speak with them before her

3   deposition and revealed to them the substance of her

4   testimony.

5         This is a very new fact to us, Your Honor,

6   because if Your Honor looks at the transcript of Ms. Le Teau

7   which I will just note on the record, you don't have to do

8   it now is Exhibit 7.  I'm sorry, Exhibit 67 in our trial

9   binder and the page and line cites would be from 119 Line 14

10  to 120 Line 20 and Page 121, Line 20 to 122 Line 6.  Reading

11  that testimony from Ms. Le Teau's transcript, she could not

12  have been more clear at her deposition that she did not

13  speak with debtors' counsel before her deposition regarding

14  the substance of her testimony.  That all she did was talk

15  to them about scheduling.

16        And so based on the representations of debtors'

17  counsel in Footnote 5, we withdraw our claim that --

18  questioning the credibility of Mr. Adelson for saying that

19  he had this information for Ms. Le Teau.  But we believe

20  that Footnote 5 when held up against the transcript cites

21  that I pointed to Your Honor speaks volumes about the

22  credibility of Ms. Le Teau.  Thank you, Your Honor.

23        THE COURT:  All right.

24        MS. EDWARDS:  Good morning, Your Honor.  Erin

25  Edwards from Young, Conaway, Stargatt & Taylor on behalf of

1   the debtors.

2           Mr. Stamoulis just represented that he's

3   withdrawn the second half of his motion in response to our

4   motion to dismiss.  However, he did spend quite a bit of

5   time arguing about our one footnote that is addressed in

6   that section.  So I would like to address that.

7           Ms. Le Teau, we disclosed -- the debtors

8   disclosed in their response to interrogatory questions, that

9   we did, in fact, contact Ms. Le Teau.  We had further

10  conversation, subsequent conversations also with her counsel

11  who make -- who confirmed to us that her position was going

12  to be that she never made any statements regarding -- made

13  any statements to, specifically to Ms. Mills regarding

14  refinancing within a short period of time of $50,000.

15          Based off of that, also the line of questioning

16  which we clearly set forth in our response though -- even

17  though they're withdrawing that, I suggest -- I also implore

18  that you would read that section that we clearly describe

19  while Mr. Stamoulis thinks those questions were clear, we

20  disagree with that.  And we think that she was answering

21  specifically the question he posed and that it wasn't opened

22  up.  And we think that knowing -- since he knew he wanted to

23  get this point made, he should have asked more clear

24  questions.

25          With respect to Mr. Adelson's testimony, he will

1  not be just a -- he will not be giving legal opinions as

2  they propose.  In fact, he's going to be -- Mr. Adelson will

3  testify to the customs and practices in the loan origination

4  and foreclosure fields in the State of California during the

5  relevant times of these loans.

6           Mr. Adelson's experience is vast.  As you can see

7  from his attached resume, he has over 30 years of experience

8  in the relevant fields of real estate lending or foreclosure

9  in the State of California.  In addition to the specialized

10 field -- practice in these fields for over 30 years, he's

11 been an educator in these fields as well. Specifically, he's

12 taught many lectures and compliance courses.  As one of the

13 memberships, he also teaches -- excuse me, he teaches

14 foreclosure certification courses specifically to UTA.  And

15 that's a membership and that's the United -- excuse me, the

16 United Trustee's Association which is a membership that's

17 comprised of parties who act as trustees under deeds of

18 trust, including title companies, financial institutions,

19 and independent foreclosure specialists.  He's also taught

20 many courses over the years for real estate continuing legal

21 education credits.  Throughout these vast 30 years of

22 experience, he's intimately familiar with the customs and

23 practices related to the loan origination foreclosure -- and

24 foreclosure processes in California.

25           The reason why that's relevant in this hearing is

1  because there's significant differences that exist between -

2  - in -- excuse me, significant differences exist in

3  California with respect to the processes for loan

4  origination and foreclosure.  For example, with California

5  being a title escrow state, instead of there being a loan

6  closing with all of the documents being signed at once with

7  an attorney present, under the escrow state, the documents

8  can be signed over a period of time which would explain why

9  there might be different dates on different documents.  And

10  so long as they're all in escrow by the time of close of

11  escrow that can be okay.

12         And Mr. Adelson can explain.  He walk through the

13  common occurrences of when loan origination documents might

14  be signed at different times and why that's a completely

15  different occurrence.  He further can look at -- he can

16  opine on his review of Ms. Mills' specific loans --

17         THE COURT:  And there you right there.

18         MS. EDWARDS:  Yes.

19         THE COURT:  Isn't that my job?

20         MS. EDWARDS:  He can opine at what customary

21  documents he saw in the loan file and why he thinks that the

22  dates being varied based off of the application of the

23  escrow process, explaining why there might be some

24  differences in the dates and explain to you as why it's a

25  practice.

1           THE COURT:  So when he provides an opinion as to

2    really a description and explanation of a set of law not

3    familiar to the Court, that's one thing.

4           MS. EDWARDS:  Right.

5           THE COURT:  And it can be quite helpful.  But

6    when he then says having done that, I'm now going to take

7    the facts of this case, Judge, and tell you what the answer

8    is, I'm pretty sure that's my job description for better or

9    for worse and not an expert's job description.  I mean, even

10   a financial expert who's going to give me an opinion as to

11   the value of something isn't going to then tell me whether

12   or not that is a reasonable exercise of business judgment,

13   that next step.  And my concern in this would be to have a

14   witness that's saying all right, Judge, here's the law that

15   you're not familiar with and let me explain it to you which

16   is one thing.  And then having done that, let me take the

17   facts of this case, apply the law I just explained to you

18   and tell you what the answer is.  I think that's a

19   completely different issue.

20          MS. EDWARDS:  Well, Your Honor, I think it's not

21   going that far.  I think what he wants to say is here the

22   law and here -- excuse me, not here's the law.  Here are the

23   customs and practices in the State of California and here's

24   why these industries use these --

25          THE COURT:  Well --

1          MS. EDWARDS:  -- which relate to the law.

2          THE COURT:  But there --

3          MS. EDWARDS:  It's obviously -- it's based from

4    the law that they've come up with these industries and

5    standards.

6          THE COURT:  I understand, but I mean, what we

7    have here is -- one of the elements we have is a wrongful or

8    fraud foreclosure and I've got -- I'm looking at your

9    response that Mr. Adelson will opine that one, the loan

10   origination files for the first and second loans appear to

11   meet customs and practices.  Two, procedures required for a

12   non-judicial foreclosure were followed in the foreclosure,

13   the second deed of trust.  I mean, to me, that's the

14   ultimate issue or one of the ultimate issues that I have to

15   decide.

16         MS. EDWARDS:  That's correct, Your Honor.  But

17   this goes -- he is going to talk to you in the context of

18   what's customary and normal in California.  And based off of

19   that, he's going to say, I don't see anything wrong with

20   these loan documents because I looked for X, Y, Z documents

21   and then they were there.  There was nothing to indicate

22   anything otherwise.  It's the customs and practices of the -

23   - of a non-judicial foreclosure.  By the terms of that

24   itself, it is statutory.  And it's a very technical statute

25   that sets forth many procedures that are supposed to be met.

1    And Mr. Adelson can walk through those steps and show how he

2    in compliance programs teaches non-foreclosure specialists

3    to try and effectuate that statue.  But like anything else,

4    it's ultimately up to the Court to decide did they do their

5    job right?

6              THE COURT:  All right, thank you.  Is there a

7    reply?

8              MR. STAMOULIS:  No reply.

9              THE COURT:  All right.  I'm going to grant the

10   motion in part and deny it in part.  I am going to allow the

11   expert, Mr. Adelson to testify as to the customs, practices,

12   and procedures generally in the State of California

13   governing the loan origination foreclosures, et cetera.

14   However, I am not going to allow any opinion as to the

15   specifics of this case and whether the facts in this case

16   met or did not meet the normal the customs and practices.

17   That will be something you can argue in oral argument.  And

18   that will be something that I'll have to ultimately decide

19   based on the facts that I have in front of me, but I'm not

20   going to allow an expert to testify as to those elements.

21              MS. EDWARDS:  Thank you, Your Honor.

22              THE COURT:  You're welcome.  Mr. Beach?

23              MR. BEACH:  Thank you, Your Honor.  The next item

24   on the agenda is Item No. 5.  It's the motion in limine

25   filed by the debtors.  To determine that Chase and Ms. Le

1  Teau were not the debtors' agents.  Your Honor, the debtors

2  bring this motion to establish in advance of the hearing

3  that both Chase and Ms. Le Teau were not the debtors'

4  agents.  They were working for Ms. Mills and that the

5  relationship established between Chase and the debtors did

6  not amount to an agency relationship which would allow Ms.

7  Le Teau or Chase to speak on the debtors' behalf or bind the

8  debtors to any commitments and that's clear in the

9  documents.

10        Your Honor, as you know, an agency is a fiduciary

11 relationship created by contract or by an agent may act on

12 behalf of another party and they bind that other party, the

13 principal.  A mortgage broker is normally like Ms. Mills in

14 this situation, a mortgage broker is typically retained by

15 the borrower to act on that borrower's behalf.  The main

16 factors under California Law to determine if an agency

17 relationship was established is to look to the intent to

18 create an agency relation and the control of the agent by

19 the principal.  There -- none of those facts are present

20 here, Your Honor.  And in the absence of these essential

21 characteristics, again, intent and control, there is not

22 agency relationship.

23        Chase and American Home Mortgage entered into a

24 broker agreement that authorized Chase to do basically one

25 main thing and that's to find loans, to solicit loans and to

1   process loans.  The agreement expressly provides that Chase

2   shall not or shall make no credit commitments on behalf of

3   the lenders and that the lender shall have the sole and

4   absolute discretion to determine whether a loan will be

5   granted and under what conditions.

6         Section 9 of that same agreement, Your Honor is

7   entitled no agency or employment relationship.  And some of

8   the pertinent provisions in that section state that the

9   broker shall have no authority to bind, obligate, or commit

10  the lender by any promise or representation unless

11  specifically authorized by the lender in writing in a

12  particular transaction.  Next, the broker shall not

13  represent to any party that it in any way represents the

14  lender or is authorized to act on behalf of the lender.

15  Third, this agreement shall not be construed as a

16  partnership or joint venture, nor is the intent of the

17  parties hereto to create an agency relationship.  And last,

18  the broker is an independent contractor in all respects.

19        Your Honor, in addition to that agreement, Chase

20  and Ms. Mills entered into a broker agreement which is

21  telling in terms of the relationship as well.  In

22  particular, and this is Exhibit B to the debtors' motion,

23  Ms. Mills admitted that she entered into this agreement.

24  That she signed this agreement at the same time on July 7,

25  2005 as Ms. Le Teau signed it.  And it specifically provides

1   in Paragraph 2 that Chase is not acting as a mortgage lender

2   or as an agent of the lender in this transaction.  Our

3   services are consultative and you will rely on your judgment

4   in choosing your loan.

5          The Mills/Chase agreement doesn't identify the

6   debtors anywhere on the agreement.  The fee is solely paid

7   by Mills.  This is not one of the loans that I know Your

8   Honor has seen before where there's a yield spread premium

9   that's -- could arguably, you know, be a payment coming from

10  the lender showing some connection with the lenders.

11  There's no such yield spread premium here.  The loan

12  application was to be submitted to one or more lenders so it

13  could have been to several lenders.  There was no exclusive

14  relationship with the debtors in this transaction.  Mills

15  admits in her deposition that all of the many services that

16  are identified in that agreement were, in fact, provided to

17  Ms. Mills specifically.

18          So, Your Honor, there can be no evidence that

19  there was any intent to create an agency relationship based

20  on the expressed terms of the agreement.  And the agreement

21  emphasizes that the broker is an independent contractor in

22  all respects.  And independent contractor is as defined in

23  Black's, one who is for a specific purpose, but who is left

24  free to do the assigned work and to choose the method for

25  accomplishing that work.  So Ms. Le Teau and Chase had full

1   responsibility to determine how they were going to

2   accomplish their work.  The debtors did not have any

3   requisite control over Chase.  As you know, one of the few

4   remaining financial institutions of its size in and of

5   itself would indicate that there wasn't control by American

6   Home Mortgage in addition to the expressed terms of the

7   agreement, both agreements I should say.  So there was no

8   fiduciary relationship that ever existed between Chase and

9   the debtors.  Chase had no obligation to act on the debtors'

10  interests under the agreement.

11          Your Honor, I was looking for an analogy.  There

12  are plenty of cases that support the concept that a real

13  estate broker agreement between a lender and a broker is not

14  an agency relationship, but an independent contractor

15  relationship.  But I think also looking to insurance brokers

16  is an analogous type of relationship as well.  And there's a

17  case in *Independent Fire Insurance Company vs. Lee.*  It's at

18  *782 Federal Supplement 1144.*  This was not cited in our

19  brief, but we do have copies for the Court, if you'd like to

20  see them.

21          In that case, the District Court affirmed by the

22  Circuit Court explicitly held that an insurance broker that

23  procures an insurance policy on behalf of a prospective

24  insured is not the agent of the insurance company.  There

25  the insured contracted with the insurance broker to renew an

1  insurance policy on several apartment buildings.  Based in

2  part on the misrepresentations made in the policy

3  application, the insurance company sought a declaration that

4  the policy had never been issued.  The Court had to

5  determine whether the broker could be considered an agent of

6  the insurance company for the purposes of the application

7  for insurance.  The Court rejected this contention that the

8  broker acted as  an agent of the insurance company and

9  specifically found as here, the broker was licensed by a

10 number of insurance companies.  The broker had no authority

11 to bind the insurance company.  The agreement permitted the

12 broker to work with other companies.

13         So as a result, the Court held that any wrongful

14 acts of the agent and I'll quote, "in preparing the

15 application for insurance are not imputable to insurance

16 company nor is any commitment made by him to the insured

17 binding upon it".  And that's on Pages 1157 and 1158.

18         Your Honor, we argue that the result should be

19 the same here as it was in that Fire Insurance Company.

20 That there is no agency relationship between the debtors and

21 Chase and ask that Your Honor grant the motion.

22         THE COURT:  Okay, thank you.  Response?

23         MR. STAMOULIS:  Briefly, Your Honor.  This is one

24 of those last minute motions in limine that came in.  And

25 Your Honor had permitted us last Wednesday to not have to

1  file a written response to certain last minute motions.

2        In an effort to reduce the burden on the Court,

3  we offered to stipulate to Mr. Beach prior to coming in here

4  today, that Ms. Le Teau's conduct in this matter is governed

5  by the agreement between Chase and American Home Mortgage or

6  American Brokers Conduit.  And that all the acts that she

7  took were governed by that agreement.  And the agreement is

8  what the agreement is.  And if the agreement, pardon me,

9  made her an agent so be it.  If the agreement doesn't make

10  her an agent so be it.  But the Court doesn't need to

11  affirmatively decide whether or not she's an agent, just

12  that she's bound by the terms of that agreement.

13        And I would point Your Honor to Section 2(a) of

14  the agreement which says that part of her job is to solicit

15  loan applications from people like Ms. Mills.  And she's

16  compensated by -- or Chase is compensated by A, B, C, for

17  those selling efforts.  And part of selling something, Your

18  Honor is telling the consumer that's going to buy it what it

19  is describing it, giving them the features and the terms.

20  And so, Your Honor, we offer at this point to stipulate that

21  the conduct of Ms. Le Teau is governed by the agreement

22  between Chase and A, B, C, whatever that agreement means.

23        THE COURT:  Mr. Beach?

24        MR. BEACH:  Your Honor, I'll just address the

25  stipulation point.  And, Your Honor, we discussed this one

1   when I reached out to Mr. Stamoulis to address the issue

2   prior to filing the motion.  What Mr. Stamoulis is not

3   agreeing to is the significance of an agency relationship

4   and the ability to bind or impute commitments on the

5   debtors.  We think based on the clear expressed terms of

6   these two agreements, plus the admissions of Ms. Le Teau

7   there clearly is no agency relationship here.  And that's

8   obviously an important fact that will limit the issues that

9   need to be litigated over the coming days.  And so

10  stipulating simply that a contract says what a contract says

11  is stipulating to nothing, in my view.

12          So, Your Honor, we do still request that Your

13  Honor grant the motion.

14          THE COURT:  All right.  Well I'm going to deny

15  the motion.  I don't think it's a proper motion in limine.

16  A motion in limine is designed to come at the beginning of

17  trial in connection with whether certain evidence may or may

18  not be introduced in trial.  This really is more along akin,

19  frankly to a motion for summary judgment where you're asking

20  the Court to make a specific factual and legal ruling the

21  effect of which will be to limit the evidence that may need

22  to be admitted into trial, but I think it's an important

23  distinction.  And I'm going to hold to it.  Having a

24  discussion about whether an expert report is proper or not,

25  that's proper for a motion in limine.  The motion to exclude

1  the evidence about the tax returns, that's fine.  This

2  really is not that at all.

3          This is a request that the Court make an

4  affirmative finding and I'm not going to do it in the

5  context of a motion in limine.  So we'll have to have a

6  trial on it.  But if you still offer the stipulation, it is

7  what it is and he says he does.

8          MR. STAMOULIS:  It is what it is, Your Honor.

9          THE COURT:  Very good.

10          MR. BEACH:  Thank you, Your Honor.  And I believe

11  Your Honor indicated this at the end, but obviously the

12  issue is still an open issue throughout the course of the

13  litigation and we're not precluded with the denial of that

14  motion.

15          THE COURT:  No, I'm not precluding anything.  I'm

16  just -- it's not a proper motion in limine.

17          MR. BEACH:  Understood.  Your Honor, that brings

18  us back to the motion for summary judgment.

19          THE COURT:  Yes.

20          MR. BEACH:  And I'll cede the podium to Mr.

21  Stamoulis.

22          MR. WEINBLATT:  Good morning, Your Honor.  Rich

23  Weinblatt on behalf of Deborah Mills.

24          THE COURT:  Good morning.  Sorry, go ahead,

25  sorry.

1          MR. WEINBLATT:  A summary judgment should be

2    awarded when there's no genuine issue as to any material

3    fact.  There are -- there's no dispute that AHM Acceptance

4    is the party that moved in Deborah Mills' bankruptcy case in

5    California for relief of the automatic stay.  There's also

6    no dispute that at the time of seeking relief from the

7    automatic stay, AHM Acceptance had no rights to the balloon

8    note or the deed of trust on which they were seeking relief

9    from the automatic stay.  At that point in time, AHMIT 2005

10   SD1 was the owner.  That's also not in dispute.

11         Now the Court's order granting relief from the

12   stay does state that if the relief is as to movant, it's

13   successors, transferees, and assigns.  It is a contorted

14   reading of that order to believe that that covers past

15   owners of the balloon note and deed of trust.  As we have

16   stated in our reply brief, all of those terms are in the

17   future.

18         THE COURT:  So you're saying it should have said

19   predecessor?

20         MR. WEINBLATT:  Correct, exactly, and it doesn't.

21   So AHM Acceptance was not a proper party.  There's no

22   disputing that.

23         THE COURT:  All right.  Well help me out on that.

24   The movant is the -- is not the proper party.

25         MR. WEINBLATT:  Correct.

1              THE COURT:  Who is the proper party?

2              MR. WEINBLATT:  AHMIT 2005 SD1.

3              THE COURT:  Okay.  And they are a predecessor,

4  not

5              MR. WEINBLATT:  No --

6              THE COURT:  -- a subsequent to AHM Acceptance?

7              MR. WEINBLATT:  They're subsequent to AHM

8  Acceptance.  Correct.

9              THE COURT:  Okay.

10             MR. WEINBLATT:  So AHM IT for short, they

11  purchased the balloon note and deed of trust six months

12  before Ms. Mills filed for bankruptcy.

13             THE COURT:  Okay.

14             MR. WEINBLATT:  Or approximately six months

15  before.

16             THE COURT:  All right.

17             MR. WEINBLATT:  So the only party that can seek

18  relief from the stay was AHMIT and they didn't, instead it

19  was AHM Acceptance.

20             THE COURT:  Okay.

21             MR. WEINBLATT:  All right, now Your Honor is

22  correct if the order did state movant and its predecessors

23  or if it said -- well even at that point, the movant, its

24  predecessors and interests were the holders of the note or

25  the holders of the balloon note, then that might be okay,

1  but it didn't.  So basically, the Court awarded AHM

2  Acceptance relief to sell property that it had no title to,

3  no right to --

4           THE COURT:  Why didn't you raise this defense at

5  the time of the motion being filed?

6           MR. WEINBLATT:  As indicated in the briefing, the

7  debtors used MERS which is the Mortgage Electronic

8  Registration System in which they were supposed to be

9  recording title changes and balloon note and deed of trust

10 and that is not accessible to the public.  Ms. Mills at that

11 point in time had no idea who was the proper holder of the

12 balloon note and deed of trust.  Even during the deposition

13 of debtors' corporate designee, he testified that he didn't

14 know if all the transfers were registered and he didn't have

15 access to the MERS system.

16          THE COURT:  Um-hum.

17          MR. WEINBLATT:  So if debtors' own corporate

18 designee is acknowledging that he doesn't have access to the

19 system and he doesn't know, how is Ms. Mills supposed to

20 know or her counsel in the bankruptcy case at that point.

21          THE COURT:  All right.  And when did she become

22 aware?

23          MR. WEINBLATT:  It wasn't until discovery in this

24 case when the documents revealed -- and their interrogatory

25 responses which are attached to the opening -- to the

1    declaration support of the opening brief.

2              THE COURT:  So after the seven was closed?

3              MR. WEINBLATT:  Correct, yes.  This was only a

4    recent finding of -- and if you notice in the briefing, the

5    debtors don't contest this.  Now they do bring up the tender

6    rule as a defense, however, the tender rule applies to

7    damages.  That doesn't have anything to do with the facts

8    that we laid out.  And further, the tender rule applies to

9    when a plaintiff seeks to set aside a foreclosure.  It's

10   equitable.  And here's it's legal.

11             And there are some cases in California that do

12   mention that.  For example, in *Azenie [ph] v. Countrywide*

13   *Home Loans* from the Southern District of California, it was

14   decided December 29, 2009.  The cite is *2009 U.S. DIST.Lexus*

15   *120599*.  The Plaintiff asserted a regular unlawful sale

16   procedures -- sorry, I misstated.  They cite relief for a

17   host of allegedly fraudulent and unlawful business practices

18   relating to the marketing of the subject loan which deal

19   with a foreclosure.  The defendant raised the tender rule

20   and the Court said it's inapplicable here because the

21   plaintiffs do not seek to set aside the foreclosure sale.

22   Now in this case, although the complaint was dismissed, it

23   was dismissed with leave to amend to assert more facts based

24   on the seeking of a legal remedy not an equitable remedy.

25             And just to clarify, in the pre-trial order when

1  discussing this, Section 362(h) of the Bankruptcy Code is

2  referred to, however, there was an amendment that was passed

3  at some point in 2005 that current Section 362(k) is what

4  362(h) was.

5          THE COURT:  So you're referring to K?

6          MR. WEINBLATT:  Correct.  At this point, it's now

7  K.

8          THE COURT:  You know, I've been practicing for a

9  long, long time and they go and they change the letters and

10  the numbers and, you know, it really ticks me off.

11                    (Laughter)

12          MR. WEINBLATT:  Well, Your Honor --

13          THE COURT:  I still talk about what is it

14  503(b)(6) and I always get that one wrong.

15          MR. WEINBLATT:  So, Your Honor --

16          THE COURT:  I certainly understand being --

17  making those types of mistakes.

18          MR. WEINBLATT:  Yes.  We apologize for that.

19  There's also an unpublished opinion by the Court of Appeals

20  California, Third Appellate District.  It's *Clark v.*

21  *Transpack Corporation, 2007, CAL. APP. Unpub. Lexus 7746.* At

22  *8 Footnote 1.  This case was decided September 25, 2007.

23  It's talking about the lack of clarity in the law concerning

24  whether a plaintiff can recover legal damages in a wrongful

25  foreclosure case if the Claimant did not tender the full

1  amount of the debt owed.  And in the footnote, it says "it

2  would see that because tendering the amount owed is relevant

3  to equitable remedies of setting aside the sale and

4  restoring the property to the plaintiffs.  The purpose for

5  requiring the tender does not apply to legal damages which

6  can be calculated without regard to whether the amount owed

7  has been tendered."

8           So this whole notion that there was no tender for

9  the full amount of the loan is irrelevant because Ms. Mills

10 is not seeking that the foreclosure be overturned.

11           THE COURT:  Okay.

12           MR. WEINBLATT:  Okay.  Thank you.

13           THE COURT:  You're welcome.

14           MR. BEACH:  Your Honor, for the record, Sean

15 Beach on behalf of the debtors.

16           Your Honor, first of all as you know, Ms. Mills

17 did not contest this -- these -- both stay relief motions.

18 She filed her bankruptcy case for the purpose of stalling

19 the foreclosure, yet she didn't object to the stay relief

20 motions.  She testified on her deposition that Mr. Toss who

21 was her bankruptcy attorney, she specifically discussed the

22 matter with him.

23           She also testified that Mr. Toss was specifically

24 representing her with respect to stay relief issues and her

25 bankruptcy.  And she specifically testified that she

1  understood if the stay relief motion was granted, that the

2  foreclosure would continue.  Those stay relief motions very

3  specifically identify both the property and it identified

4  the specific loan numbers both, you know, in the separate

5  motions it specifically identified those loan numbers.  Ms.

6  Mills in her schedules, identified the owner of the loan as

7  American Home Mortgage Servicing.  American Home Mortgage

8  Acceptance filed the motion.  She certainly could have seen

9  a discrepancy there if she had a concern.

10          More telling, I think is the fact that the deed

11  of trust signed by Ms. Mills and initialed on every one of

12  the pages right in the first preamble and I believe it's an

13  exhibit to the plaintiff's motion.  But it specifically says

14  -- it's got a 1-800 number and an address for MERS.  And if

15  called, they would have given them information regarding the

16  owner of a loan if they wanted that.  Plus, it defies logic

17  that counsel is now saying that they found out in discovery

18  here.  If they wanted to -- if they wanted to file an

19  objection to the motion back four years ago, they could have

20  served discovery at that time and found it or they could

21  have just called the 1-800 number and found it.  But either

22  way, you know, that argument is not credible.

23          Now, I don't even think you need to get there,

24  Your Honor, because obviously the plain reading of that

25  order clearly shows that American Home Mortgage Acceptance

1   is the predecessor of any of the entities that would have

2   foreclosed on that loan, the successors, transferees, and

3   assigns.  And that all of those were the successors of

4   American Home Mortgage Acceptance.  You can't read that

5   provision any other way.  American Home Mortgage Acceptance

6   has successors, transferees, and assigns.  And those are the

7   parties that had authority to foreclose on the loan; the

8   servicer, the --

9           THE COURT:  Well but it raises the -- well maybe

10  it raises how many angles are in the head of pin argument.

11  But to have the originator of a note that is -- gets sold

12  five, six, seven times be the movant for stay relief at a

13  time when the originator no longer has any property interest

14  in the note, that -- I mean, they're not a party and

15  interest at the time under the Bankruptcy Code.

16          MR. BEACH:  Well --

17          THE COURT:  So it really isn't -- the way I read

18  the argument is it's not necessarily that American Home

19  Acceptance its successors and assigns wouldn't have been

20  covered, it is that American Home Acceptance itself was not

21  a party and interest at the time the motion was made.  And

22  as a result, I'm not quite sure what the argument is.  That

23  the action was void of an issue I take it or -- and that if

24  the immediate successor had actually -- if the actual owner

25  at the time had brought the action, it would have been fine.

1                    MR. BEACH:  Well --

2                    THE COURT:  I've never run into this situation

3    before in -- that I recall.

4                    MR. BEACH:  Nor have I, Your Honor.  And I don't

5    suggest it's a -- not a unique situation, but unlike what

6    counsel --

7                    THE COURT:  But your point is -- and your point

8    is well, they could have found out, but their response, I

9    guess would be look, they're not the ones seeking stay

10   relief from the Court.  They're not the one with the sort of

11   burden, if you will, of making sure they get it right.  And

12   of course then your response would be well, but we are not

13   the one that filed bankruptcy.  We have a little bit of a

14   chicken and egg problem here.

15                   MR. BEACH:  You're right, Your Honor.  And unlike

16   what counsel said, we're not conceding that American Home

17   Mortgage Acceptance didn't have the right to file that

18   motion.  They did have repurchase obligations.  But -- and

19   it's a tough argument, I recognize that.  But that's an

20   argument that would need to be made 3,000 miles away in a

21   Court in California.

22                   And it clearly -- we cited a case directly on

23   point in terms of collateral attack and stay relief orders.

24   These stay relief orders are to be respected.  And

25   collateral attacks like this four years later, in fact, that

1  case and let me just find it for a moment.  It's the

2  Andratta [ph] case.  Specifically, found and let me find the

3  appropriate provision.  The instance complaint was filed

4  unconscionably late, one year after the entry of the stay

5  relief order, after substantive rights had been exercised

6  and the property sold.

7          So this, I believe is an Arizona Bankruptcy

8  Court, but that Court found that one year after the stay

9  relief order was entered was an unconscionably long period

10  of time to now try to file a motion.  And the facts of that

11  case are strikingly similar to this one in terms of the

12  allegations that were made. But my point of that, Your

13  Honor, obviously is a collateral attack on a stay relief

14  order, first of all is improper in this Court.

15          Second of all, it's not proper at -- you know, in

16  a completely separate proceeding where they're trying to

17  gain a litigation advantage on an issue that could have been

18  brought four years ago in a bankruptcy case that lasted over

19  a year.  As Your Honor can appreciate, that bankruptcy

20  lasted a significant period of time, partially because an

21  81-year-old man filed a fraud claim against Ms. Mills and

22  that lasted quite a bit of time before that adversary was

23  settled.  But that bankruptcy lasted until -- well it was

24  close, after the debtors' bankruptcy case was filed.  I

25  believe that she had a discharge in July of '07, but the

1  bankruptcy was filed in June 26 of '06, so the bankruptcy

2  lasted a significant period of time.

3           And certainly, she -- Ms. Mills already conceded

4  that she should have listed this fraud claim on our

5  schedules.  Well, she certainly knew about the facts.  Since

6  the stay relief was granted in July of '06, she had a year

7  while her bankruptcy case was still open to bring that

8  claim.  And she had three years to go ahead and reopen that

9  and vacate the order.  But on the face of that order,

10  American Home Mortgage Acceptance has successors,

11  transferees, and assigns and those are the same parties that

12  pursued the foreclosure.

13           Not only that, Your Honor, Ms. Mills never had

14  the financial wherewithal ever to cure the loan, let alone

15  pay off all the debtors on that loan.  And that evidence is

16  very clear in her deposition.  So her suggestion that that

17  had any effect on her is no relevant at all.

18           And, Your Honor, I'm happy to go through more

19  arguments about collateral attacks, but -- and standing

20  issues and the like, but --

21           THE COURT:  I think I got it.  Any specific

22  reply?

23           MR. WEINBLATT:  Yes, Your Honor.  Regarding the

24  Andratta Financing case, in debtors own brief on Page 10,

25  when describing Andratta, it says "the debtor contended that

1    the Bankruptcy Court should nullify the stay relief order"

2    and "void" the trustee sale of certain real property due to

3    alleged fraud.  That's distinguishable.

4           We're not asking for the -- we're not challenging

5    the stay order.  We're not challenging the ownership of the

6    current owner of the property.  What is being challenged is

7    that AHMIT foreclosed without seeing relief from the

8    Bankruptcy Court.  So, therefore, AHMIT violated the stay

9    and there's no dispute as to that.  In addition --

10          THE COURT:  Well let's say that's true.

11          MR. WEINBLATT:  Okay.

12          THE COURT:  Why -- where does that get you in

13   this case?  You want me to award damages for violation of

14   the automatic stay?

15          MR. WEINBLATT:  What we want is a finding of fact

16   that the stay was violated when the house was foreclosed

17   upon.  Because what happened was AHMIT foreclosed and then

18   the debtors profited from the sale of the house.  So they

19   reaped a benefit by a violation of the stay.

20          THE COURT:  They lost $700,000 when they sold the

21   house, $600,000.

22          MR. WEINBLATT:  I think when all was said and

23   done, but that's about right.

24          THE COURT:  Well I guess my point is if you're

25   asking me -- because you point to willful violation and

1  damages in your papers.  So you're asking for damages for a

2  willful violation of the automatic stay and --

3              MR. WEINBLATT:  Well, Your Honor -- sorry, go

4  ahead.

5              THE COURT:  I'm sorry.  And I guess my question

6  is am I the right guy or person to be having that question,

7  having that dispute in front of me.  Isn't it the -- isn't

8  it a question for the Bankruptcy Judge who had the Chapter 7

9  case?

10             MR. WEINBLATT:  One of the theories that we

11 presented is the debtors improper actions through the

12 origination and the selling of the loan -- and selling of

13 the house.

14             THE COURT:  Right.

15             MR. WEINBLATT:  This was one part of that story.

16             THE COURT:  Right.

17             MR. WEINBLATT:  The debtors got the money.  The

18 debtors got around $700,000 because of the sale.  That's why

19 we're here.  So if there's going to be arguments regarding

20 how much money should be given Ms. Mills, that's not the

21 subject of this motion for summary judgment.  This is just

22 for the finding of fact that the debtors did foreclose

23 improperly.

24             THE COURT:  All right.  Okay.  Last word, Mr.

25 Beach?

1          MR. BEACH:  Your Honor, I think the committee

2    might have a comment as well, but I'll be brief.

3          Counsel has now said several times that his claim

4    is that AHMIT SD1 trust violated the automatic stay.  First

5    of all, it's not true.  Second of all, they're not even a

6    debtor so it -- even if they did, it's irrelevant to these

7    proceedings.

8          He's arguing that the entities that foreclosed

9    did it in violation of the stay.  The order is very clear

10   that those entities that foreclosed and I recognized the

11   nuance that we're dealing with here, Your Honor, but that

12   order on its face provides that the parties that foreclosed

13   had relief from the automatic stay to do so.  And if they --

14   and this is -- while the tender rule might not specifically

15   apply in this circumstance, the rational does.  You can't

16   lay and wait and sit on a technical defect in a foreclosure

17   with the -- because you can't pay.  You can't cure it and

18   you can't pay it back.  And then four years later come back

19   and assert damages for that.  That's the type of -- first

20   all, that's why this order shouldn't be collaterally

21   attached in any event and that's why they should go to

22   California.

23         But second of all, that's why there can't

24   possibly be any damages.  And I understand that's not where

25   we're going for right now.  But, Your Honor, I certainly

1  would implore you to deny this summary judgment motion based

2  on the face of the order, the -- and the improper collateral

3  attack being brought.

4              THE COURT:  Okay.

5              MR. SCHNITZER:  Good morning, Your Honor.  Edward

6  Schnitzer from Hahn & Hessen on behalf of the committee.

7              Your Honor, I'll be brief.  I just wanted you to

8  be aware, the committee has been actively following this

9  case.  We've been participating with the debtors at the

10  various depositions and the motion pleadings.  We have

11  reviewed the pleadings here.  We've also discussed with the

12  debtors.  The committee does agree with the debtors'

13  position on summary judgment.  I'm sure you don't want to

14  hear me repeat Mr. Beach's comments, but I just wanted you

15  to be aware that the committee was --

16              THE COURT:  All right.

17              MR. SCHNITZER:  Has been playing an active role

18  and agrees.

19              THE COURT:  Okay.  All right.  I'm going to take

20  a short recess.

21              (Recess from 11:06 a.m. to 11:27 a.m.)

22              THE CLERK:  All rise.

23              THE COURT:  Please be seated.  Okay, thank you

24  for the break.  I'm going to deny the motion for summary

25  judgment for a couple reasons.

1    It raises a fascinating technical issue as to

2 whether in a chain of title A, B, C, D, whether A can move

3 for relief from the automatic stay at the time B owns the

4 property and obtain stay relief that would affect A, B, C,

5 and D or A, the proper movant.  And you get into a I think a

6 technical question and it would depend upon the facts and

7 circumstances of the particular loan documents, et cetera as

8 to whether that would be proper to allow that Party A to

9 bring the stay relief.

10    Well the reality here is that no one brought that

11 issue before the Court at the time.  Ms. Mills and her

12 counsel argue that they didn't know at the time so thus it

13 was out of their control to raise the issue with the Court.

14 And that the Court entered an order granting A, stay relief

15 and B through its nominee or successor eventually did do the

16 stay relief purportedly pursuant to the authorization in the

17 motion.  And here we are four years later and the defect,

18 technical defect is brought to this Court's attention.  And

19 the citation by Ms. Mills and her counsel to the fact that

20 the stay relief orders are to be narrowly construed are

21 certainly true.

22    And then I go back in time and I think there are

23 a couple of issues.  One, I have grave concerns about

24 collaterally attacking another Court's order four years

25 later when a lot of water's gone under the bridge.

1          Two, what would have been different in four years

2    ago if the right party had brought the action?  What if B

3    and not Party A had sought the stay relief?  Well, the

4    reality is not a thing would have been different.  Stay

5    relief would have been granted to B and everything would

6    have been the same.

7          Third, what if stay relief hadn't been granted?

8    Well, the facts at least as I have in front of them for

9    purposes of summary judgment indicate that if the case had

10   simply waited until discharge of an entering of the case had

11   been closed and stay -- and foreclosure had proceeded at

12   that point, at that point there still was not an ability or

13   a possibility there wasn't an ability to make the loan -- to

14   cure the loan defaults even if they were discharged and stay

15   relief could have gone forward.  Not stay relief, excuse me,

16   foreclosure could have gone forward in any event.

17         So it really becomes a no harm, no foul issue,

18   especially in light of the passage of time and the actions

19   that were taken pursuant to the purported Court authority

20   four years ago.  So based on the fact that it would be a

21   collateral attack of a Court's order and based on the length

22   of time and based on the fact that I think frankly, it was

23   technical defect with no substantive difference and it been

24   done correctly, there would not have been any different

25   result, I'm going to deny the motion for summary judgment.

1          MR. STAMOULIS:  Your Honor, may I just address

2  for brief clarification that ruling?

3          THE COURT:  Yes.

4          MR. STAMOULIS:  First off, just to clarify, that

5  it's being denied with prejudice or without prejudice as to

6  whether we can introduce more facts regarding that at trial?

7          THE COURT:  Well, it's a summary judgment motion.

8  It's being denied, I guess without prejudice to your --

9  well, let's put it this way, if it's with prejudice do you

10 bring in another summary judgment motion?

11         MR. STAMOULIS:  Okay.  Absolutely --

12         THE COURT:  But it's without prejudice in the

13 underlying facts.

14         MR. STAMOULIS:  Okay.  Granted, Your Honor.  So

15 the fact that it's without prejudice because --

16         THE COURT:  I mean, you brought a summary motion.

17 I have to take ever fact --

18         MR. STAMOULIS:  Yes.

19         THE COURT:  -- to the other side's --

20         MR. STAMOULIS:  So long as it's without prejudice

21 because --

22         THE COURT:  You can still make your case or try

23 to.

24         MR. STAMOULIS:  Okay.  Thank you, Your Honor

25 because the -- part of our basis for seeking administrative

1  expense status here is that the foreclosure was defective

2  and as a result, Ms. Mills still had rights to the property

3  at the time the debtors liquidated it post-petition.  And so

4  we want to be able to present that evidence and make that

5  case in pursuing Ms. Mills administrative expense status.

6            THE COURT:  Um-hum.

7            MR. STAMOULIS:  The second housekeeping matter,

8  Your Honor is I believe that you were going to determine at

9  this point prior to trial and prior to Ms. Mills taking the

10 stand, whether you were going to admit into evidence the tax

11 returns that were procured in violation of Rule 45.  I think

12 Your Honor was going to decide the motion in limine as to

13 their relevance first and then determine whether the Rule 45

14 violation would have any impact on the specific exhibits or

15 in the alternative, whether there would be sanctions for the

16 Rule 45 violation.

17            THE COURT:  All right.  Thank you for reminding

18 me.  Do you want to be heard further on that?

19            MS. ZIEG:  Your Honor, to the extent Mr.

20 Stamoulis is willing to stipulate to the fact that the

21 bankruptcy schedules accurately reflect the amounts that are

22 on Ms. Mills' tax returns for the Years 2003 and 2004, I

23 don't see any reason to have the tax returns themselves

24 admitted.

25            THE COURT:  All right.  So the schedules you got

1  "properly" and it was the tax returns themselves that

2  purportedly violated Rule 45?

3          MS. ZIEG:  Yes, Your Honor.  The only issue I

4  believe is I don't think the 2003 tax returns are on the

5  schedules.  If you could just give me a moment to look.

6          MR. STAMOULIS:  Your Honor, while Ms. Zieg is

7  looking for those documents, we are not going to enter into

8  any stipulation that any document is anything beyond what it

9  is.  The schedules are the schedules, the tax returns are

10 the tax returns.  They're trying to prove a tax fraud case

11 here, Your Honor.  And so, Your Honor can determine what's

12 necessary to prove that case.

13         MS. ZIEG:  With that representation, I don't

14 think there's anything else that we can do other than as we

15 sought in our response to their motion in limine is an

16 adverse inference from this Court that Ms. Mills grossly

17 inflated her gross income on her loan application.

18         THE COURT:  Well, we don't have to get into that.

19 The documents have been -- I've denied the motion in limine

20 on the tax documents.  You did violate or counsel for the

21 debtor did violate Rule 45 by not providing advance notice.

22 However, I'm certainly not going to impose a sanction, a

23 discovery sanction that would involve not having the

24 documents in evidence.  So the documents will continue to be

25 made available to be in evidence.  I am going to think

1 further on whether I'll impose some other sanction against

2 counsel.  I just haven't make up my mind.

3          MS. ZIEG:  And thank you, Your Honor.  Would you

4 like us to brief that issue?

5          THE COURT:  I might.  Let me think about it.

6          MS. ZIEG:  Happy to do so.

7          THE COURT:  All right.  I think that takes care

8 of everything except -- preliminarily.  So how do we go from

9 here?

10          MR. STAMOULIS:  Well, Your Honor, we were just

11 going to given the time spent on the motions, we were just

12 going to call our first witness and begin the case.

13          THE COURT:  That's fine, let's do it.

14          MR. STAMOULIS:  Okay.  The claimant calls Deborah

15 E. Mills to the stand.

16          THE COURT:  All right.  I'm sorry.

17          DEBORAH E. MILLS, CLAIMANTS' WITNESS, SWORN

18          THE CLERK:  Thank you, please be seated.

19          THE COURT:  Okay.

20          MR. STAMOULIS:  Ms. Mills, next to you, you'll

21 see a cart with a number of binders.  Throughout the course

22 of your testimony, we're going to be referring to several

23 exhibits and we will instruct you to pull one of those

24 binders or we'll with the permission of the Court come up

25 and pull the binder for you and put the document in front of

1  you so that you can see what we're talking about.

2           THE COURT:  That's fine.  Are we going to be

3  using the computers?

4           MR. STAMOULIS:  I don't believe so, Your Honor.

5           THE COURT:  We got to move this monitor.  I can't

6  see her.  I thought we were going to do that.  Can we unplug

7  it?  I prefer not to have it at all, but that's better.

8  That's good.  And can you see her?  Okay.  I thought we had

9  already arranged to do that so.  All right, I'm sorry, go

10  ahead, sir.

11                      DIRECT EXAMINATION

12  BY MR. STAMOULIS:

13  Q.    Good morning, Ms. Mills.  For the record, can you

14  please state where you presently reside?

15  A.    I presently reside at 2639 Crows Nest Loop, Bradley,

16  California  93426.

17  Q.    And are you presently employed?

18  A.    Yes, I am.

19  Q.    What is your current occupation?

20  A.    I am a clerk and also work in the kitchen of B Rock

21  Store where I ring up customers or I make sandwiches or I

22  make pizza or whatever is that's required of me.

23  Q.    Can you state on the record a brief description of

24  your prior work history?

25  A.    My prior work history was as a landscape designer and

1  I serviced large clients, would do residential, commercial

2  projects.  I was also a founder of Green Cure, Inc., which

3  was a non-profit where we took vacant lots and made

4  community gardens out of them because our feeling was that

5  everyone should have a garden, even if it was in the city.

6  One of the most monumental things, I had a television show

7  called Deborah's Garden.  But I also implemented for Ventura

8  County their integrated pest management program which was a

9  county outreach.  I also trained all the staff for the

10 county, plus nursery staff and did public outreach.  I wrote

11 a gardening column aside from being very community minded

12 and doing things for the community.

13 Q.    Where did your television program air?

14 A.    It aired throughout Ventura County, Ventura, Camario

15 [ph], Thousand Oaks, Oxnard, weekly program.

16 Q.    Okay.  How long did you work on this program?

17 A.    Oh, I did about 56 episodes and that's a lot in --

18 usually with broadcasts, they only do 13 a year so it was a

19 great body of work.

20 Q.    And what was the subject matter of the program?

21 A.    The subject matter, it was taking people behind the

22 scenes meeting different horticultural growers, learning

23 about organics, learning about GMO's, things that were of

24 interest for the public to be aware of.

25 Q.    Okay.  Now what employment did you have in 2005 when

1  you came to apply for the loan to purchase 1880 Burnt

2  Walkway?

3  A.    I had my landscape business and I had many commercial

4  clients that I would, you know, work with on an ongoing

5  basis.  One in particular was Malibu Mountain Club and they

6  had a lot of special events and weddings and the place

7  always had to look pristine so I worked closely with them.

8  Q.    Did you do your work through a formal employer at that

9  time?

10  A.    No, I was self-employed.

11  Q.    Okay.  And what was the name of your business?

12  A.    Deborah Mills.

13  Q.    And did you file corporate tax returns or individual

14  tax returns for your business?

15  A.    Individual tax returns for my landscape business, yes.

16  Q.    Okay.  And how would those tax returns be prepared?

17  A.    I had a business -- Michele Greco from -- she was the

18  one who did my taxes for over 15 years.

19  Q.    And what was your procedure or your process for having

20  your taxes done each year?

21  A.    I would gather up all of my receipts and my invoices

22  and I would get those to her and then she would do my tax

23  returns.  When I had my video production company which was

24  an S Corp, that was a little bit more in depth and, you

25  know, there was several tax returns.

1  Q.   Generally speaking, do you recall what your -- how

2  much money you were making annually back in 2005?

3  A.   2005 that's when -- that was in the transition --

4         MS. ZIEG:  Objection, vague.

5         THE COURT:  Overruled.

6         MR. STAMOULIS:  You know, let me actually

7  withdraw the question and redefine the time period more

8  tightly.  How about for the fiscal year 2004 since that

9  would have been the first fiscal year, the last fiscal year

10 before you applied for you tax -- for your loan --

11        THE COURT:  What do you mean by fiscal year?  You

12 mean calendar?

13 BY MR. STAMOULIS:

14 Q.   I'm sorry, calendar year.  The calendar year January

15 1, 2004 through December 31, 2004, do you have a general

16 recollection as to what your income was at that time?

17 A.   I can't recollect completely.  It was -- I'm sorry, I

18 --

19 Q.   Well, you know, what, we'll go back through and we'll

20 do it with documents so -- now what was your relationship to

21 Mr. Esquivel in 2005?

22 A.   2005 we were engaged to be married.

23 Q.   And did there come a time in 2005 when you and Mr.

24 Esquivel decided to purchase a house together?

25 A.   Yes, we did, yes.

1  Q.    When did you make that decision?

2  A.    Well, actually in -- it was 2004, we had made it a

3  conscious decision that we wanted to relocate to the central

4  coast of California.  And so we had taken several trips up

5  to the area to kind of define and see where we wanted to be.

6  We would go up and we would stay and I'd go to city council

7  meetings and find out more about the different communities

8  and then that's when we made our choice that we really

9  wanted to be in North County in the Templeton area.

10 Q.    And what was Mr. Esquivel's occupation at the time?

11 A.    His occupation, he had Elia [ph] Management which was

12 he was -- investments and that was his company.

13 Q.    At the time, did you know what Mr. Esquivel's income,

14 annual income was?

15 A.    No, I did not.

16 Q.    You testified that you planned to relocate to the

17 central coast.  What was your plan for your business at that

18 time?

19 A.    Well, part of the plan was because it was only two

20 hours away, that I could still maintain my ongoing projects,

21 but there was also an opportunity with Pacific Horticulture

22 because up in the central coast area, the California Oaks

23 are under protective -- they're under protection.  And

24 working with them, there were several oak tree projects that

25 were going up.  And, you know, whenever there was

1  construction, I don't know what the laws are in this state,

2  but in California, there is very stringent laws that if

3  they're doing construction around these 100-year-old oaks,

4  that they had be cared for.  And to make sure that they

5  weren't damaged.  And so that was part of my reason to go up

6  there.  And the first project was going to be the Union

7  Street project in the City of Paso.

8  Q.    Okay.  At some point in '05, did you find a house that

9  you would consider purchasing?

10  A.    Yes, I did.  Yes, I did, that was in May.

11  Q.    And what was the address of the house?

12  A.    1880 Burnt Rock Way.  I'm sorry.

13         THE COURT:  Take your time, ma'am.  Counsel,

14  there are tissues --

15         MS. MILLS:  I have one, thank you, Your Honor.  I

16  remember finding my home.  Anthony was still -- he was

17  working down in Ventura and we were -- I was living at a

18  vacation rental.  And it just so happened that there was --

19  the house was located in the Sienna Isabel Ranch which was a

20  gated community.  And I happened to see these open house

21  signs.  And I drove into the community and I drove up to my

22  dream home.  I walked in to the house and I just -- I knew

23  it was for me.  It had a beautiful kitchen and I love to

24  cook.  And it had the views and there was like 30 oaks.  I

25  would have 30 of my own oaks.  And I just knew it was my

1 home.

2          MR. STAMOULIS:  Your Honor, we're almost at noon.

3 Would the Court want to take a lunch break now or should we

4 -- Ms. Mills, do you think you can continue?

5          MS. MILLS:  Yeah.

6          THE COURT:  We can take a short recess.  I would

7 like to push on if we can.  But if you need a recess to

8 gather your thoughts, ma'am, that's fine.

9          MS. MILLS:  No, I'm fine.  I'm sorry.

10          THE COURT:  Okay.

11          MS. MILLS:  I just --

12          THE COURT:  No, it's certainly understandable.

13          MS. MILLS:  Let's go forward.

14 BY MR. STAMOULIS:

15 Q.    Ms. Mills, did there come a time when you made an

16 offer to purchase 1880 Burnt Rock Way?

17 A.    Yes, I did.  After I saw the house, I called Anthony

18 and I was very excited about it.  And he was coming up that

19 weekend.  And I said I want you to see the house and so it

20 was maybe three days after that, he came up.  He saw the

21 house.  He fell in love with it like I did and then we made

22 an offer on the house.

23 Q.    Okay.  Was that offer accepted?

24 A.    Yes, it was.  And then I moved forward with getting

25 the financing.

1  Q.    What did you do initially get financing to purchase

2  the home?

3  A.    What I did initially was I called a couple different

4  mortgage brokers and then I found Mr. Jones.  And he was an

5  independent mortgage broker.  And I started working with him

6  in the process.

7  Q.    All right.  And was Mr. Jones able to get you an offer

8  of finance --

9              THE COURT:  I'm sorry.  And this is in June of

10 '05 or May?  I apologize.

11             MS. MILLS:  It was -- this was in actually May,

12 yeah, I'm sorry.

13             THE COURT:  That's okay.  I just --

14             MS. MILLS:  I had to stop and think.  Yeah, it

15 was May.

16             THE COURT:  All right.  Please go ahead.

17             MR. STAMOULIS:  I'll do a better job with the

18 timeline, Your Honor.

19             THE COURT:  No, it's me, it's me.

20 BY MR. STAMOULIS:

21 Q.    The -- so in May of 2005 was Mr. Jones able to secure

22 you an offer of financing to purchase the property?

23 A.    Well, you know, we went through the process where we

24 discussed like 100 percent financing and different programs

25 and different lenders.  And we eventually, you know, came

1   with Bridgeport was the company.  And the best that they
2   could do was like 5 percent down and with all the closing
3   costs it was going to be $88,000 to get into the property.
4   So we moved forward with it and signed the loan docs and
5   everything and we were trying to close actually before
6   Fourth of July because we knew the back balcony there's two
7   different fireworks that go on in Paso Robles and we wanted
8   to spend our Fourth of July watching to two fireworks at the
9   same time from our home.  And we weren't going to be able to
10  close by the fourth so it was going to be on the eighth of
11  July.  But that week which was like the 29th of June, all of
12  a sudden, I couldn't get a hold of Mr. Jones.  And I was
13  perplexed about that because we had been talking, you know,
14  way since May, you know, and I was talking to him a couple
15  times a day, you know, the process and all of this and then
16  all of a sudden that week, could not get through to him.  I
17  had talked to the underwriter, her name was Sarah at
18  Bridgeport.  Could not get through to her.  And I started to
19  get my concerns like what's going on here?  You know, what's
20  our next step to closing escrow?  And when, you know, the
21  house had to be appraised by two different appraisers.  And
22  I had met -- there was one appraiser --
23  Q.    Well, let me just stop you for a moment.
24  A.    Okay.
25  Q.    Before you go too far.

1  A.    Okay.

2  Q.    Do you recall what, if any, financial information you

3  provided so that Bridgeport could consider underwriting your

4  loan?

5  A.    The same thing that I provided for American Home

6  Mortgage, two years tax returns, 24 months of banking

7  statements, a copy of my CD, filled out, you know, the

8  standard.  I was self-employed so it's not like I had a W9

9  or something to present.  So I provided all my banking

10 statements and that.

11 Q.    Okay.  And this loan that was offered by Bridgeport,

12 this $88,000 down which would represent 95 percent financing

13 for the property was that a formal offer that was made to

14 you by Bridgeport?

15 A.    Yes, it was.  Yes, it was.  You know, we kind of went

16 around.  First I came in higher and then he was able to get

17 it down, you know, to a lower -- to using Bridgeport for the

18 $88,000.

19 Q.    Okay.  Now I believe it's -- you had begun to testify

20 that you experienced some unresponsiveness with regard to

21 their broker and their underwriter and that you had followed

22 up on that.  What ultimately happened with this offer of

23 financing from Bridgeport?

24 A.    Well what ended up happening was after the Fourth of

25 July weekend, I finally got a hold of Mr. Jones and he was,

1  you know, he finally picked up the phone and he said that

2  the underwriter had quit before the four day weekend and

3  just left my loan unattended on her desk and no one picked

4  up, you know, all of her things that were on her desk so my

5  loan had basically fallen through the cracks.  And if we

6  were going to move forward, it was like we were going to

7  have to start the process all over again.  So it's like I

8  guess her last week of work or whatever she just, you know,

9  let those things sit on her desk and it wasn't complete in

10  order to close escrow.  We wouldn't have been able to close

11  escrow by the 8th.

12  Q.    Okay.  What actions did you take in response to

13  learning about this abandonment of your loan application?

14  A.    I had already had one conversation with Tonya Le Teau.

15  She was referred to me by one of the appraisers that had

16  been out at the house that, you know, she's a local girl,

17  she knows, you know, the area.  She can get things done.  So

18  I had talked to her before the Fourth of July weekend.  But

19  then once I got to the bottom of what happened with my loan,

20  then I entered into an agreement with Tonya Le Teau to find

21  funding for the property.

22  Q.    If you'll grab the first binder and turn to Exhibit 3.

23  Okay.  Is this a version of the agreement that you entered

24  into with Ms. Le Teau?

25  A.    Yes, it is.

1    Q.    Okay.  If you turn to the last page of this exhibit,
2    you'll see that it is not signed by you.  Did you ever sign
3    a version of this agreement?
4    A.    I don't remember if I signed it.  I remember seeing
5    it.  I'm not sure if I signed it or not.
6    Q.    Now if you see Point 6 under the -- under Page 2 of
7    this agreement, it talks about your duties under the
8    agreement.  Do you see Point 6?
9    A.    Yes, I do.
10   Q.    And reading Point 6 into the record it says you agree
11   to cooperate and to provide complete and accurate
12   information for your loan application and loan.  We'll help
13   you match -- we will help match you with an appropriate loan
14   solely on the basis of this information.  What, if any,
15   information did you provide Ms. Le Teau in connection with
16   securing your loan?
17   A.    I provided her the exact same thing that I had
18   provided Bridgeport, two years worth of banking statements,
19   two years tax returns, you know, a copy of my CD.
20   Q.    We're done with that document, you don't need to hold
21   it in front of you.
22   A.    Okay.
23   Q.    And how did Ms. Mills -- I'm sorry, how did Ms. Le
24   Teau go forward with -- after you've given her this
25   information?

1   A.    Well, I remember that she had emailed me what do you

2   call it, a release, you know, for the credit score so that

3   she could run my credit.  And that was at the same time then

4   I faxed all that information to her.  And I'm sorry, I feel

5   like I forgot half your question.

6   Q.    Well, let's back up.  Around what time period was it

7   that you were providing this information to Ms. Le Teau?

8   A.    It was the 7th of July.

9   Q.    Okay.  And you say she ran your credit on the 7th of

10  July.  Is that right?

11  A.    That's correct, yes.

12  Q.    Did you learn from her what your credit score was on

13  the 7th of July?

14  A.    She never told me, but, you know, she was assured that

15  we could get --

16              MS. ZIEG:  Objection, hearsay, Your Honor.

17              THE COURT:  Sustained.

18              MR. STAMOULIS:  Did you -- prior to going to Ms.

19  Le Teau, did you have an understanding of what your credit

20  score was?

21              MS. MILLS:  Yes, when I started this whole

22  process it was 703.

23              MR. STAMOULIS:  Pardon me.

24              THE COURT:  When you say started this whole

25  process, can you be a little more specific?

1          MS. MILLS:  When I started prior to Ms. Le Teau

2    with Bridgeport when I --

3          THE COURT:  So May?

4          MS. MILLS:  Yeah, it was in May it was 703.

5    BY MR. STAMOULIS:

6    Q.    Now was Ms. Le Teau able to secure an offer of

7    financing for you?

8    A.    Yes, she was.

9    Q.    And what were the terms for the first offer of

10   financing that she came to you with?

11   A.    Well, you know, we had discussed many, but then she

12   came back with me, to me with American Home Mortgage and

13   that the total down payment with closing costs and

14   everything would be -- it was around $137,000.

15   Q.    Okay.  And do you know what percentage of that

16   $137,000 was going to be closing costs?

17   A.    I can't remember, maybe about $20,000 or $30,000 of

18   it, I think.

19   Q.    Okay.  What, if any, decisions did you make upon

20   receiving this offer of a loan with $137,000 down?

21   A.    Well, I discussed it with Anthony and decided to move

22   forward.  You know, she seemed, you know, we had requested

23   to try to get this done as quickly as possible and that we

24   would be able to close escrow and be able to move into it.

25   So we thought okay, let's go for it, so we did.

1  Q.    Okay.  Did there come a time when Ms. Le Teau asked

2  you to provide her more information so that she could

3  continue with your loan application processing?

4  A.    Yes.  Actually, she requested --

5              MS. ZIEG:  Objection, hearsay.

6              THE COURT:  She requested of you?

7              MS. MILLS:  Yes, she requested --

8              THE COURT:  Overruled, go ahead.

9              MS. MILLS:  She requested a gift letter and then

10  also a letter from my CPA stating that I had been self

11  employed.

12              MR. STAMOULIS:  And these requests, did they come

13  after you had already provided her with you said three years

14  of tax returns and 24 months of bank statements?

15              MS. MILLS:  It was two years tax returns and two

16  years banking statements.  And also part of the process is

17  she did email me a loan application that I hand filled out

18  and faxed that along with all the information that she

19  requested.  And this was after that then actually, Anthony

20  dropped those items off at her office.

21              THE COURT:  I'm sorry, it was a gift letter and

22  what?

23              MS. MILLS:  A gift letter and a letter from my

24  accountant stating that I was self employed.

25              THE COURT:  Oh, okay.

1  BY MR. STAMOULIS:

2  Q.   Oh, and I think you also testified that she asked you

3  for a bank statement regarding your CD.  Is that correct?

4  A.   Yes and that was provided to her, too.

5  Q.   Okay.  Can you describe what this CD product is that

6  Ms. Le Teau requested documentation about?

7  A.   The CD was put in my name and behalf of Elia

8  Management, Anthony's Company.

9  Q.   When was this certificate of deposit created?

10  A.   2003.

11  Q.   Do you recall how much was placed into this

12  certificate of deposit for you?

13  A.   $500,000.

14  Q.   And do you recall what the -- why this $500,000 was

15  placed into a CD in your name?

16       MS. ZIEG:  Objection, Your Honor.  Ms. Mills

17  prior testimony that she is bound to said that she didn't

18  know how any of this came about --

19       THE COURT:  Well that's a question for cross

20  examination.  You can impeach her on cross.  Overruled.

21       MS. MILLS:  Can you repeat the question?

22  BY MR. STAMOULIS:

23  Q.   How did you come to have a CD with $500,000 in it

24  placed in your name --

25  A.   That --

1  Q.      -- back in 2003 when it was created?

2  A.      Back in 2003, that was created by Anthony in his

3  business, Elia Management.

4  Q.      Okay.  And do you understand the circumstances of how

5  it was created?

6  A.      Well it was created for trading purposes, for -- with

7  his investors and with -- also with the investments that I

8  had made.

9  Q.      Now was this CD which had a value of $500,000

10 disclosed in your first application to Bridgeport?

11 A.      Of course, yes.

12 Q.      And was this CD disclosed to Ms. Le Teau?

13 A.      Yes.

14 Q.      Okay.  Did you have authority pursuant to the creation

15 of this CD to list this CD as an asset for the purpose of

16 obtaining financing?

17 A.      Yes, I did.

18 Q.      Okay.  And --

19           MS. ZIEG:  Objection, I move to strike.  That

20 called for legal conclusion.

21           THE COURT:  Sustained.  You can ask her as to her

22 belief, counsel.

23           MR. STAMOULIS:  Was it your belief that you had

24 the authority to list this CD as an asset for the purpose of

25 obtaining financing?

1          MS. ZIEG:  Yes, lacks foundation.

2          THE COURT:  Overruled.  The answer was yes.

3          MS. MILLS:  Yes, it was my belief.

4          MR. STAMOULIS:  Just to follow up, Your Honor, I

5  have a document that we received yesterday.  I'm not marking

6  it as trial exhibit, I just want to place it before the

7  witness to review to refresh her recollection for the

8  foundational basis of that answer.

9          THE COURT:  Well, wait a minute.

10          MS. ZIEG:  Your Honor, she's been testifying she

11  couldn't remember anything.

12          THE COURT:  Yeah, you can't refresh the

13  recollection if it doesn't need refreshing.  And has counsel

14  seen it?  No.  Well, oh -- no, no, no, no.  Let her look at

15  it.

16          MS. ZIEG:  I'm sorry, Your Honor, I was looking

17  at the document.  Did you have a question pending?

18          THE COURT:  Well I guess you wanted me to sustain

19  the objection as to foundation.

20          MS. ZIEG:  Yes.

21          MR. STAMOULIS:  That's --

22          THE COURT:  In which case you could then refresh

23  her recollection.  Let's do that.  Ask her as to -- ask her

24  a question as to -- let me do it.  Ma'am, I'm sorry, I'm

25  making a mess of my evidentiary record.  I apologize.

1           MS. MILLS:  Okay.

2           THE COURT:  What is the basis for your belief

3   that you had authority to list the CD as an asset on your

4   loan application?

5           MS. MILLS:  Because the CD was placed in my name.

6   It was under the care of Elia Management.

7           THE COURT:  Okay.  And you want to show a

8   document that will do what?

9           MR. STAMOULIS:  Ms. Zieg had objected that the

10  witness did not have the foundation to speak to what she

11  could or could not do with the asset.  And I have the

12  agreement which we just received yesterday, Your Honor, that

13  actually tells her what she could or could not do with the

14  asset.

15          MS. ZIEG:  Your Honor, regardless of the fact

16  that they received this just yesterday and the regardless of

17  the purpose they want to use this document, this document is

18  specifically responsive to our discovery request and was not

19  produced and it was created in 2003.

20          THE COURT:  Where did it come from?

21          MR. STAMOULIS:  Your Honor, Mr. Esquivel who was

22  the owner of Elia Management was able to obtain a copy of

23  this document by -- actually, I can't speak to exactly how

24  he went back and was able to get a copy of it, but at the

25  time, it was not available.  It was also not something that

1  we looked at with regard to Ms. Mills' discovery responses

2  back in September because we were not aware at that time

3  that the debtors primary defense was going to be that she

4  committed fraud on her loan application.

5         THE COURT:  All right.  I'm not going to allow

6  this document, it's too late.

7         MR. STAMOULIS:  Okay, thank you, Your Honor.  But

8  to clarify, Ms. Mills, your recollection is is that you had

9  the understanding that you could list this CD as an asset

10  for the purpose of obtaining and securing financing?

11         MS. MILLS:  Correct.

12         MS. ZIEG:  Objection.  It assumes facts not in

13  evidence.

14         THE COURT:  Overruled.

15         MS. MILLS:  Correct.

16         MR. STAMOULIS:  Thank you, Ms. Mills.  So Ms. Le

17  Teau had received your initial information.  She received

18  your supplemental information.  She provided you with an

19  initial offer of financing terms.

20         MS. ZIEG:  Objection, Your Honor.  It

21  mischaracterizes the testimony.

22         THE COURT:  Let's wait till the question is

23  finished, Ms. Zieg before we actually go --

24         MS. ZIEG:  Sorry, Your Honor.

25         MR. STAMOULIS:  I was just going to ask what

1  happened next in the process?

2              THE COURT:  All right.  I'll allow the question

3  as to the timeline as to the technical whether he

4  mischaracterized what we had already talked about or not.

5  I'll let the record figure that out.  But what happened

6  next?  If you understand --

7              MS. MILLS:  Do you -- I --

8              THE COURT:  You've provided two rounds of

9  documents --

10             MS. MILLS:  Yeah.

11             THE COURT:  -- to Ms. Le Teau.

12             MS. MILLS:  Um-hum.

13             THE COURT:  And you've -- and she's given you the

14  -- or communicated to you the offer that would be

15  approximately $137,000 down payment.

16             MS. MILLS:  Correct.

17             THE COURT:  So then the question of counsel is

18  what happened next?

19             MS. MILLS:  What happened next was escrow was set

20  up with Chicago Title.  I got them a $5,000 deposit.  I went

21  in and I signed initial documentation for the loan.

22             MR. STAMOULIS:  And on what date did you sign the

23  initial documentation for the loan?

24             MS. MILLS:  In the 15th.

25             THE COURT:  Of July?

1          MS. MILLS:  Of July.  And then that's when -- I

2    went in, I think it was about 11:00 and I signed those

3    documents.  And then I got a phone call from Tonya saying

4    that they had run my credit score --

5          MS. ZIEG:  Objection, calls for hearsay.  She got

6    a call from Tonya saying --

7          THE COURT:  I understand.  I'll allow the

8    question, overruled.  Go ahead.

9          MS. MILLS:  I got a telephone call from Tonya Le

10   Teau stating that my credit score had been run again by

11   American Home Mortgage and that my -- or ABC Conduit in that

12   my credit score went down one point from 660 to 659.  And

13   that they were willing to make an exception if I came up

14   with an additional $75,000.  And there was a report written

15   that they took that into consideration because I had

16   excellent credit.  I had a spotless credit report, very low

17   debt.

18   BY MR. STAMOULIS:

19   Q.    Well Ms. Mills, before you get too far, let's --

20   A.    Well -- I'm sorry.

21   Q.    I know this hearing is a long time coming for you so -

22   -

23   A.    Yeah.

24   Q.    -- we'll get to everything.  Can you please turn to

25   Tab #2 in your binder?

1   A.    I'm here.

2   Q.    Do you see maybe three quarters of the way down the

3   page, it says reason for exception 659 MIDFICO program

4   requirement of 660.

5   A.    Yes, I do.

6   Q.    So is that consistent with your recollection that an

7   exception occurred because your credit score was 659 instead

8   of 660?

9   A.    Correct.  And it evidently had gone down one point.

10  Q.    And --

11        THE COURT:  And the evidently gone down one

12  point, that's what you claim Ms. Le Teau told you?

13        MS. MILLS:  Yes.

14  BY MR. STAMOULIS:

15  Q.    And so in the comment section, do you see that the --

16  I guess the next to the last sentence it has a note that

17  says that the piggyback loan is a -- or I'm sorry, the

18  piggyback is reduced to $200,000.  Is that consistent with

19  your recollection that you were initially going to get a

20  $275,000 piggyback loan, but then they reduced it to

21  $200,000, resulting in you having to put an additional

22  $75,000 down?

23  A.    Correct.

24  Q.    And if you turn the page, the last set of comments, do

25  you see that they made a pricing adjustment adding 1.25

1  percent to both the rate and margin, inclusive of pricing.

2  Do you see that?

3  A.    Yes, I do.

4  Q.    Okay.  So in addition to asking you to put an

5  additional $75,000 down, they also increased the interest

6  rate by 1.25 percent.  Is that accurate?

7  A.    Correct.

8  Q.    Okay.  So after this exception, did you know what was

9  going to be required of you in order to close on this

10  property?

11  A.    Yeah, we were going to need about $212,000.  I was

12  shocked after I got the telephone call and I said, Tonya, I

13  have to discuss this with Anthony.  You know, this is a lot

14  of money.  And so I called Anthony.  He was on his way

15  coming back up from Ventura and he called and spoke directly

16  to Tonya and said we need the weekend to think about this

17  and we'll be in your office on Monday to let you know how

18  we'll proceed.

19  Q.    So that would have been Friday, July 15th of 2005.

20  What happened on Monday, July 18 of 2005?

21  A.    Well we want to Tonya's office.  We met with her and

22  her assistant.  And, you know, it was like, you know, this

23  is going to be hard for us to come up with an additional

24  $75,000.  We're going to have to seek money somewhere.  And

25  the only way that we could move forward with this is that if

1   there was a way that we could pull out money in a relatively

2   short period of time.  And Tonya made it very clear that

3   with --

4           MS. ZIEG:  Objection, hearsay.

5           THE COURT:  Sustained.

6           MR. STAMOULIS:  Ms. Mills, when you -- why on the

7   18th were you continuing to pursue this loan when the down

8   payment terms had gone up on you from the $88,000 that was

9   initially required for you to close on the Bridgeport loan

10  more than doubling now to $212,000?  Why didn't -- why did

11  you not just walk away from this loan?

12          MS. MILLS:  Because this was our dream home.  We

13  were afraid we were going to lose the property.  We didn't

14  have time to go through another whole loan process to get

15  something done.  And we got that assurance that we would be

16  able to through a HELOC or somehow --

17          MS. ZIEG:  Objection, hearsay.

18          THE COURT:  Sustained.  I'm sorry, Ms. Mills --

19          MS. MILLS:  That's fine.

20          THE COURT:  -- you can't tell me -- you can't

21  testify as to what Ms. Le Teau told you for the truth of

22  whether it's true or not.  You can -- all you can tell me

23  is, you know --

24          MS. MILLS:  My understanding?

25          THE COURT:  Well, counsel will direct you.

1          MR. STAMOULIS:  I apologize, Your Honor.  I'll do

2   a better job of --

3          THE COURT:  That's all right.

4          MR. STAMOULIS:  -- keeping the answers concise.

5   So you went in.  Did you go in by yourself to Ms. Le Teau's

6   office on Monday?

7          MS. MILLS:  No, Anthony and I both went in.

8          MR. STAMOULIS:  And did you express your concerns

9   to Ms. Le Teau regarding the financial burden that the down

10  payment would place on you?

11         MS. MILLS:  Yes, we did.

12         MR. STAMOULIS:  Okay.  And what was your

13  understanding with regard to how American Home was going to

14  address that financial burden?

15         MS. ZIEG:  Objection, hearsay.  The basis for

16  understanding is hearsay.

17         THE COURT:  Well, American Home is -- this is a

18  whole agency issue.

19         MS. ZIEG:  Yes.

20         THE COURT:  American Home is a debtor, it's

21  admission of a part opponent.  But the question is what's

22  the source of the information.

23         MS. ZIEG:  Yes, Your Honor.

24         THE COURT:  Isn't Ms. Le Teau on the witness

25  list?

1          MS. ZIEG:  She's not on the witness list for the

2    hearing.  She is one of the deposition designees.

3          MR. STAMOULIS:  Your Honor, her testimony was

4    that she had no recollection with regard to --

5          THE COURT:  This conversation?

6          MR. STAMOULIS:  -- this conversation.

7          MS. ZIEG:  Actually, her testimony was that she

8    would never have made a statement like that.

9          THE COURT:  Well --

10         MR. STAMOULIS:  But that she had no specific

11   recollection with regard to this testimony.

12         MS. ZIEG:  But she would never state that.

13         THE COURT:  Can you point me to that part of the

14   deposition, please?

15         MR. STAMOULIS:  The part where she has no

16   recollection, Your Honor or --

17         THE COURT:  Yes.

18         MR. STAMOULIS:  Okay.  If, Your Honor, would turn

19   to I believe it's our Exhibit 67.

20         THE COURT:  Well I have the deposition here.    I

21   have the copy with the designations.

22         MR. STAMOULIS:  Okay. That's fine, Your Honor.

23   It begins on Page 111, Your Honor on Line 23.  And would

24   Your Honor like me to read into the record?

25         THE COURT:  What page?

1          MR. STAMOULIS:  Page 111, Line 23.

2          THE COURT:  No, I just want to read it myself.

3          MR. STAMOULIS:  If Your Honor begins on 111, Line

4  23 and continues through 113, Line 11 --

5          THE COURT:  All right, let me have a look at that

6  then, hang on.

7          MS. ZIEG:  If I may, Your Honor, I'm also going

8  to ask you to read something.

9          THE COURT:  I understand.  Okay.

10         MS. ZIEG:  And if you would also read Page 127,

11 beginning with Line 23 and continuing to 128 to Line 16 on

12 128.

13         THE COURT:  So Page 127 to 128?

14         MS. ZIEG:  Yes.

15         THE COURT:  Okay.

16         MS. ZIEG:  Where she's talking about the fact

17 that she wouldn't do it because --

18         THE COURT:  The HELOC.

19         MS. ZIEG:  if she already had a second, she

20 couldn't get a HELOC.

21         THE COURT:  All right.

22         MS. ZIEG:  Since this it's a piggyback loan, she

23 wouldn't have offered to refinance.

24         THE COURT:  That's not what I'm reading.  Maybe I

25 didn't go back far enough --

1            MS. ZIEG:  Well, maybe I got it wrong.

2            THE COURT:  -- to get context.

3            MS. ZIEG:  I'm sorry?  I'm sorry, that might be

4    the wrong one.  I think that's the wrong cite.  If you look

5    at 68, 18, Line 18.

6            THE COURT:  Page 68?

7            MS. ZIEG:  68, 6-8, Line 18.  Nobody's ever said

8    they couldn't hear me.

9            THE COURT:  Okay.  I didn't know.

10            MS. ZIEG:  You put your hand up.  To 69, 17.

11            THE COURT:  Okay.

12            MS. ZIEG:  There's more, Your Honor.

13            THE COURT:  All right.

14            MS. ZIEG:  Page 75, yeah Line 75.  I'm sorry,

15    Page 75, Line 6, all the way through to 76, Line 7.

16            THE COURT:  Give me a minute.

17            MS. ZIEG:  And 77, Line 5 to Line 11.

18            THE COURT:  All right.  And why is Ms. Le Teau

19    not here?

20            MR. STAMOULIS:  Your Honor, when we deposed her,

21    well, first of all, we wanted to minimize the burden on

22    third parties.  But when we deposed her, she made it very

23    clear that she had no recollection.  And when I asked her

24    whether she recalled something, she would say yes.  When I

25    asked -- and then tell me what it was.  When I asked her

1    whether she didn't recall anything or whether she recalled

2    something then she would say no, she did not recall.  So she

3    understood what do you recall means.  And she answered the

4    questions.  And based on this document and her testimony, we

5    felt that the internal inconsistencies that really we were

6    not going to get anywhere with having her here. We had

7    inquired, Your Honor, about possibly playing Ms. Le Teau's

8    video so that Your Honor could see Ms. Le Teau in answering

9    these questions and evaluate the credibility of the witness

10   as to whether or not she did have a recollection or did not

11   have a recollection.

12        MS. ZIEG:  Your Honor, to answer your question

13   briefly, she's outside the subpoena power of Court I think

14   is the answer.

15        THE COURT:  All right.  I am going to overrule

16   the hearsay objection in connection with the conversation of

17   July 18 in the office and the statements of Ms. Le Teau

18   during that conversation for two reasons.  One, I believe

19   that in effect that the declarant is unavailable under Rule

20   804(a), excuse me, (3) and (5).  And as a result, it is an

21   exception to the hearsay rule.  All right.

22        MR. STAMOULIS:  Thank you, Your Honor.

23        THE COURT:  You may continue that conversation.

24        MS. ZIEG:  Your Honor, could you just provide

25   clarification as to why it's an exception under the hearsay

1  rule?  What provision of the hearsay exceptions?

2           THE COURT:  The person who -- the declarant --

3           MS. ZIEG:  I apologize, I just want to make for

4  clarification purposes of the record.

5           THE COURT:  Yeah, I just -- that's fine.  The

6  witness is unavailable if the declarant testifies to a lack

7  of memory of the subject matter of the declarant's

8  statement.  And I believe there is testimony in the

9  transcript to that effect.  And (5) is absent from the

10 hearing and the proponent of a statement has been unable to

11 procure the declarant's attendance by process or other

12 reasonable means.  Frankly, that's weaker.  I don't think I

13 need that.  I think (3) is the primary basis of my ruling.

14          MS. ZIEG:  Thank you, Your Honor.

15          THE COURT:  You're welcome.

16          MR. STAMOULIS:  Thank you, Your Honor.

17          THE COURT:  All right.  So after all of that,

18 let's -- who's going to -- Ms. Mills, your counsel is now

19 going to go through the conversation you had on Monday, July

20 18 with Ms. Le Teau and Mr. --

21          MR. STAMOULIS:  Esquivel.

22          MS. MILLS:  Esquivel.

23          THE COURT:  -- Esquivel, I apologize.  Yes, Ms.

24 Zieg.

25          MS. ZIEG:  One last clarification.  She's not

1  being allowed to -- this statement is not being admissible

2  for the truth of the matter asserted.  Correct?  It's not

3  being admitted for the truth of the matter asserted is it?

4            THE COURT:  Yes, it is.

5            MS. ZIEG:  Okay.

6            THE COURT:  Go ahead.

7            MR. STAMOULIS:  Ms. Mills, so we left off where

8  you and Mr. Esquivel had gotten into Ms. Le Teau's office to

9  talk to her about the exception that was being made with

10 regard to your loan.  And you had expressed to her that you

11 were going to have trouble making that kind of a down

12 payment.  What was represented to you as a potential

13 solution to that problem?

14           MS. MILLS:  Well, she gave us assurance that

15 American Home Mortgage would allow a HELOC or some sort of

16 mechanism where we would, I don't know either refinance a

17 second and be able to take -- to access $50,000.  Another

18 option that was brought to the table was her assistant,

19 Kathy was even talking about going back to the building

20 since they all knew the builder --

21           MS. ZIEG:  Objection, Your Honor, hearsay.

22           MR. STAMOULIS:  You know what, let's --

23           MS. MILLS:  Okay.  Never --

24           THE COURT:  Keep Kathy out of it.

25           MR. STAMOULIS:  Yes.

1            MS. MILLS:  Okay.

2   BY MR. STAMOULIS:

3   Q.    Let's just focus on the -- what was represented to you

4   by Ms. Le Teau.  So what did -- so Ms. Le Teau represented

5   what?

6   A.    She represented we would be able to access $50,000 in

7   some sort of mechanism through American Home Mortgage.  I

8   mean, she was that convincing enough that like don't worry

9   about it, just put everything into it.  You'll be able to

10  pull some money out.  So we, based on that decision, we

11  moved forward and I went back into the escrow office that

12  afternoon and signed additional papers.  But we would not

13  have done it if we did not have that assurance that we would

14  be able to access money.

15  Q.    Okay.  And so at what time of the day was this

16  assurance made?

17  A.    It was -- we were at her office first thing, so it was

18  like 8:30, 9:00.

19  Q.    And at what time did you go to the title office to

20  sign the papers?

21  A.    I believe it was around 3:00.  She put in a call

22  saying okay, Deborah's coming that, you know, we got to

23  change these papers.  You know, have them ready for her to

24  come in and sign.

25  Q.    Was this assurance important to you?

1   A.     Absolutely.  We would not have done it unless we had

2   that.  There's no way we would have done it.

3   Q.     Did it occur to you to wait to get this assurance in

4   writing before moving forward?

5   A.     I -- you know what, I mean, I thought I was going to

6   George Bailey to get a loan.  You know, I just now find out

7   through this whole discovery process that it was some stated

8   income hybrid whatever.  I thought I was showing my banking

9   statement, showing everything that I had.  You know, I'm old

10  school.  You know, I -- a handshake was a handshake.  I

11  thought there's no problem, okay.

12  Q.     After you went into Chicago Title to sign the papers,

13  did you go forward with the closing on the property?

14  A.     Yes, we did.

15  Q.     Okay.  Ms. Mills, if you could pull your -- the first

16  binder and look at Tab #21.

17              THE COURT:  I'm sorry, which tab?

18              MR. STAMOULIS:  Tab #21, Your Honor.

19              THE COURT:  Thank you.

20  BY MR. STAMOULIS:

21  Q.     Ms. Mills, do you recognize this document?

22  A.     Yes, I do.

23  Q.     Okay.  Is this the HUD statement for the closing of

24  your property 1880 Burnt Rock Way?

25  A.     I'm not sure if it's the final one, but it looks -- it

1   appears to be.

2   Q.    Okay.  If you go into the first column, the second

3   section that starts with the number 200 amounts paid, you'll

4   see that there's $5,000 deposit or earnest money, $962,500

5   for a principal loan, and $200,000 for a second new loan.

6   Do you see those two terms, those three terms?

7   A.    Yes, I do, yes.

8   Q.    Do the $962,000 and the $200,000 represent the amounts

9   of the exception term loans that you received from American

10  Home?

11  A.    Yes.

12  Q.    Okay.

13  A.    Which they applied it to the second loan.

14  Q.    Now if you turn to the second page, there's a column

15  that states paid from borrower's funds at settlement.

16  A.    On the --

17  Q.    On the second page --

18  A.    Um-hum.

19  Q.    -- one of the vertical columns is entitled paid from

20  borrower's funds at settlement.  Do you see that column?

21  A.    No, I -- oh, yes, I'm sorry.

22  Q.    Okay.

23  A.    Yeah.

24  Q.    If you run down to the bottom of that column, you'll

25  see a number $29,724.16.  Do you see that number?

1  A.    Yes, I do.

2  Q.    Okay.  Do you know if that number represents the

3  actual closing costs that you paid to close this loan?

4  A.    I believe those are the escrow amounts, but then there

5  was also where we had to come up with an additional $55,000

6  where we paid $350 a day until we closed escrow.

7  Q.    Okay.  Let me ask it this way.  At the closing for

8  your home, inclusive of your down payment, your closing

9  costs, whatever escrow you were paying for the home, how

10  much money did you put into this home?

11  A.    Well there was the $212,500, plus then there was an

12  additional $50,000.

13  Q.    Okay.  All right.  So about $262,000.  Is that

14  accurate as to what you paid at closing?

15  A.    Yes.

16  Q.    After you closed on the house, did there come a time

17  when you took residence in the home?

18  A.    We moved in the day we got the keys on August 8.

19  Q.    Okay.  And when was your first mortgage payment due?

20  A.    Our first mortgage payment was due September.

21  Q.    Did you make that payment?

22  A.    It was a little bit late, but the payment was made.

23  Q.    Okay.  Did you make it for the full amount?

24  A.    Yes.  And actually, it was a little bit more because

25  there was confusion with the -- because, you know, they

1  switched it up.  We actually erred.  We paid more of a

2  payment to just make sure.  We weren't sure which statement

3  was the correct statement, so we did actually pay more than

4  what the actual amount was which was then applied to the

5  principal.

6  Q.    Did you make your second mortgage payment?

7  A.    No, we did not.

8  Q.    Your second mortgage payment was due in October of

9  2005.  Is that correct?

10  A.    Correct.

11  Q.    Okay.  Prior to this mortgage payment being due, did

12  you make any effort to access the equity in the property?

13  A.    Yes, I called American Home Mortgage and said, okay, I

14  mean, I know it's a little bit early because we were told,

15  you know, two months, but I wanted to start the process of

16  where we could access that $50,000.

17  Q.    Okay.  And what were you told when you contacted

18  American Home Mortgage about accessing the $50,000?

19  A.    They said, no, you can't.  There is not enough

20  seasoning.  And I said, well is there someone else I can

21  talk to?  I was told that I would be able to access this.

22  And then -- and I don't remember the person I talked to.

23  And then, you know, they gave me someone else's number and I

24  even went back to Tonya and said hey, you know, I was told

25  that I would be able to access this money and now they tell

1  me about this seasoning thing.  And her response was, you

2  know --

3          MS. ZIEG:  Objection, hearsay.

4          THE COURT:  And this was all the testimony in

5  that deposition about seasoning that you pointed to me

6  earlier.  Correct?

7          MS. ZIEG:  Yes, Your Honor, but this specific

8  conversation was outright asked Ms. Le Teau and Ms. Le Teau

9  testified that she had not been contacted by Ms. Mills after

10  the loan closed.

11          THE COURT:  Is that in the deposition?

12          MS. ZIEG:  Yes, Your Honor.

13          THE COURT:  Show me.

14          MR. STAMOULIS:  Your Honor, we would refer the

15  Court to the same.  We did not limit our questions

16  temporally.  We asked her whether she ever discussed with

17  Ms. Mills about getting access to that equity and she said

18  she couldn't recall, period.

19          THE COURT:  Well, you need to show me.

20          MR. STAMOULIS:  Exhibit -- well --

21          THE COURT:  What you already showed me?

22          MR. STAMOULIS:  Yeah, someone showed you, Page

23  116, Your Honor, through 117.

24          THE COURT:  Oh, I see what you're saying.  All

25  right.  So Line 20.  Do you recall whether Ms. Mills asked

1  about getting access to her what would now be $212,000 down

2  payment after she closed on the loan.  She says, I do not.

3            MR. STAMOULIS:  That's correct, Your Honor.

4            THE COURT:  All right.  And --

5            MS. ZIEG:  We're looking for it, Your Honor.

6            THE COURT:  Okay.  Again, I'll focus on 804, but

7  it's limited.  Even if she's unavailable, it would only be

8  to the extent it was a statement against interest.  So I

9  don't know what the answers are until I hear the answer, but

10  it's quite possible it doesn't qualify under the rule in any

11  event.  Well, let's figure out whether she's -- meets the

12  definition of unavailability.

13            MR. STAMOULIS:  Ms. Mills, may I continue?

14            THE COURT:  Hang on, hang on.  Ms. Zieg wants to

15  point me to something.

16            MS. ZIEG:  No, I just want to understand the

17  basis for whether it would be or would not be admissible,

18  Ms. Le Teau's statement.

19            THE COURT:  Well, as I previously ruled under

20  804, if the declarant is unavailable, there's a narrow

21  exception to hearsay for unavailability of the witness.

22            MS. ZIEG:  Correct.

23            THE COURT:  So I previously ruled in the previous

24  conversation that she was unavailable because under the

25  definition, she testified as to a lack of memory of the

1   subject matter.  And then also, she was absent because she

2   was outside of the subpoena range.  But that in and of

3   itself and you had asked does it go to the substance and I

4   had ruled yes because in my mind there is sufficiently a

5   statement against interest qualified under 804(b)(3) as

6   potentially a statement against interest.  So this is a

7   slightly different context.  It goes to the first question

8   is about availability, but I don't even know what the

9   substance of the conversation was so.

10          MS. ZIEG:  There wouldn't be anything that would

11  be a statement against Ms. Le Teau's interest about whether

12  or not she contacted Ms. Le Teau.

13          THE COURT:  Well, no, the -- he's going to ask

14  her --

15          MS. ZIEG:  Oh, about what Ms. Le Teau --

16          THE COURT:  You talked to Ms. Le Teau and she's

17  going to say yes.  And then he's going to say what did Ms.

18  Le Teau say.  And you're going to say objection, hearsay.

19          MS. ZIEG:  I know what -- right, I'm going to say

20  objection, hearsay, I know what she's going to say.  And I

21  can represent to the Court that it's not a statement against

22  Ms. Le Teau's interest.

23          THE COURT:  Well, let's do this.  Let's talk

24  about whether we meet the unavailability issue before.  Did

25  she -- clearly what was just pointed to me by counsel in her

1   deposition indicates that he asked her whether she had a

2   conversation with Ms. Mills after the closing about tapping

3   the equity and she said no.  Oh, excuse me, she said I don't

4   recall.

5           MR. STAMOULIS:  I don't recall.

6           MS. ZIEG:  Are you aware?  And we're looking for

7   the other citation --

8           THE COURT:  And you're looking --

9           MS. ZIEG:  -- where it says I think her words

10  were no, but I couldn't have --

11          THE COURT:  All right.

12          MS. ZIEG:  -- played with words there.

13          THE COURT:  But if there's an inconsistency.

14          MR. STAMOULIS:  Your Honor, I would like to just

15  go ahead and withdraw the question.

16          MS. ZIEG:  I'm sorry.

17          MR. STAMOULIS:  I'm going to --

18          MS. ZIEG:  With respect to the statement where

19  the answer was emphatically no, not that she wasn't aware,

20  if you turn to Page 58, Line 25.  After closing on the

21  property, did Ms. Mills ever contact you about accessing her

22  equity in the property?  No.  Did she ever contact you about

23  refinancing a first or second loan?  No.

24          THE COURT:  Okay.  Your question is withdrawn?

25          MR. STAMOULIS:  Your Honor, I withdraw the

1  question.

2          THE COURT:  Very good.

3  BY MR. STAMOULIS:

4  Q.   Ms. Mills, you testified that you went to AHM and

5  asked them for that $50,000 loan and they told you no.  And

6  then you testified that you went to Ms. Le Teau and told her

7  about that.  Regardless of what Ms. Le Teau told you, what

8  did you do next?

9  A.   I started calling everyone that I possibly could at

10  American Home Mortgage and I immediately tried to secure

11  some funding somewhere.  I went to Mid State Bank to try to,

12  you know, to get, you know, to get a small loan to get

13  through.

14  Q.   When did you go to that bank?

15  A.   Immediately after I talked to American Home Mortgage.

16  Q.   So in October of 2005?

17  A.   Yes.

18  Q.   And what did -- what happened with that application?

19          THE COURT:  Tell me what happened, don't tell me

20  what somebody told you.

21          MR. STAMOULIS:  Yes.

22          MS. MILLS:  Okay.  What happened was I learned a

23  lesson of LTV.  I did not -- I wasn't able to --

24          THE COURT:  And by LTV you mean loan to value?

25          MS. MILLS:  Loan to value, correct.

1          MR. STAMOULIS:  So in short, your application was

2    rejected by that bank.  Is that right?

3          MS. MILLS:  Correct, because of LTV.

4          MR. STAMOULIS:  Okay.  And what did you do next?

5    Did you continue your efforts to seek additional financing?

6          MS. MILLS:  Of course I did.  Bayview Funding,

7    they were based out of Florida.  They were willing to

8    rewrite our or rewrite -- refinance the second.  We had an

9    appraiser come out, the whole nine yards, but then at the

10   last moment when they ran my credit score, my credit score

11   went down to like 480.  It had dropped like a rock.

12         MR. STAMOULIS:  Do you know why your credit score

13   dropped?

14         THE COURT:  You didn't make a mortgage payment.

15         MS. MILLS:  I know now why.  At that time, I

16   didn't know why my credit score dropped.

17         MR. STAMOULIS:  And what is your understanding of

18   why your credit score dropped?

19         MS. MILLS:  My credit score dropped --

20         MS. ZIEG:  Objection, foundation.

21         THE COURT:  Well what -- you have to lay a

22   foundation.

23   BY MR. STAMOULIS:

24   Q.   Yes.  Ms. Mills, as part of this case, did you have --

25   did you sign a protective order?  As part of this proceeding

1 │ --

2 │ A.    Yes.

3 │ Q.    -- did you sign a protective order?

4 │ A.    Yes, I did.

5 │ Q.    Pursuant to that protective order, were you allowed to

6 │ review certain documents produced by American Home Mortgage

7 │ in response to our discovery requests?

8 │ A.    Oh, yes.

9 │ Q.    In reviewing those documents by American Home

10 │ Mortgage, did any of those documents refresh your

11 │ recollection or enlighten your understanding as to why your

12 │ credit score dropped?

13 │ A.    Yes.  I saw documentation that -- well on July 10, the

14 │ day that an exception was made on my first loan it shows a

15 │ credit score of 660 and on the second credit score for the

16 │ second loan it shows 659.

17 │ Q.    And did you have an understanding as to what happened

18 │ after you missed your first payment?

19 │ A.    Upon looking at documentations as of yesterday which

20 │ totally shocked me, American Home Mortgage to this day has

21 │ been sending in -- that I'm delinquent on this mortgage.

22 │ They have been reporting on my credit score that I am

23 │ delinquent up until the last document that I could see was

24 │ January of '09 and my credit score was at 179.

25 │ Q.    And so is it your testimony, Ms. Mills that the

1  delinquency reporting by American Home lowered your credit

2  score and thus you were not able to obtain financing when

3  you started seeking it in October?

4          MS. ZIEG:  Objection, mischaracterizes the

5  testimony.  She stated that it now is a particular number,

6  not what it was then.

7          THE COURT:  Overruled.

8          MS. MILLS:  Okay.

9  BY MR. STAMOULIS:

10 Q.    This is in October or November --

11 A.    Okay.

12 Q.    -- when you had testified earlier that your credit

13 score was dropped down to the 400 something range.  All

14 right.  It was -- did I correctly represent your testimony?

15 A.    Yes.

16 Q.    Okay.  So when you learned that your credit score had

17 been dropped down into the 400's did you continue to seek

18 financing to try --

19 A.    Every time I possibly could.

20 Q.    Okay.

21 A.    There was Emerald Mortgage, there was several of them.

22 Q.    Okay.  Did there come a time when you contacted

23 someone named Lane Nosara?

24 A.    Yes, that was in December of 2005.

25 Q.    Okay.  And what was the purpose behind you contacting

1  Mr. Nosara?

2  A.    He was ready and willing to refinance the whole

3  enchilada.  And he had taken out escrow insurance and he

4  took out title insurance and he started dealing with

5  American Home Mortgage.  And then one day out of the blue, I

6  get a telephone --

7              MS. ZIEG:  Objection, hearsay.

8              MS. MILLS:  Okay.

9              THE COURT:  It's not hearsay for her to say she

10  got a phone call, Ms. Zieg.

11             MS. ZIEG:  She's about to testify to hearsay.

12             THE COURT:  Well, let's wait for the question.

13  Continue to speak.  One day you got a phone call.

14             MS. MILLS:  One day I had a phone call and it was

15  Lane Nosara and he told me --

16             MR. STAMOULIS:  I'm going to stop you right

17  there.

18             MS. MILLS:  Okay.

19  BY MR. STAMOULIS:

20  Q.    With regard to What Mr. Nosara told you.

21  A.    Okay.

22  Q.    Was it your understanding that Mr. Nosara contacted

23  American Home?

24  A.    Correct.

25  Q.    Okay.  And if you could just turn to Exhibit 4 in your

1  binder.  This document is dated 1/25/06.  And in the middle,

2  the note is received authorization letter to speak with Lane

3  Mark Nosara, managing partner of CW Lenders.  Ms. Miss is

4  this date, January 25, '06, consistent with when Mr. Nosara

5  would have been contacting AHM on your behalf?

6  A.    To be quite honest, I thought it was earlier.  It was

7  in December.

8  Q.    And do you know what the nature of the funding Mr.

9  Nosara was going to provide to you?

10  A.    He was going to refinance both loans.

11  Q.    So fully --

12  A.    Fully, fully.

13  Q.    -- payoff --

14  A.    American Home Mortgage and it would be then with C. W.

15  Lenders.

16  Q.    Okay.  And did Mr. Nosara ever end up doing that?

17  A.    No.

18  Q.    Do you know why that didn't happen?

19  A.    Supposedly something with timing.  When he was -- I'm

20  afraid to say anything, I'm going to be objected.

21        THE COURT:  Well, let me worry about that.  Tell

22  your story, we'll figure it out.

23        MS. MILLS:  Okay.  He contacted American Home

24  Mortgage and he -- it had to do something with timing, that

25  the timing wasn't correct and he just decided not to move

1  forward with it.

2  BY MR. STAMOULIS:

3  Q.    After Mr. Nosara decided not to move forward, did you

4  continue to seek financing to refinance these loans?

5  A.    Yes, I did.

6  Q.    Okay.  Did there come a time to -- when you dealt with

7  Ms. Bernadine Beauregard?

8  A.    Yes, I did.

9  Q.    And what was Ms. Beauregard going to do for you?

10  A.    She was going to -- basically, she represented

11  investors.  They were going to take up a third, the amount

12  was going to be $47,000 that was to cure the default in late

13  May of 2006.

14  Q.    Okay.  So is it your understanding that the $47,000

15  that was being brought to the table by Ms. Beauregard on

16  behalf of her investors would have fully cured your default

17  in May of 2006?

18  A.    Correct.

19  Q.    Okay.  And what happened with that offer of financing?

20  A.    Well, we could not get assurance that American Home

21  Mortgage would not continue to foreclose.  She needed that

22  for her investors and she wanted that in writing and that

23  was -- American Home Mortgage would not comply.

24         MR. STAMOULIS:  Your Honor, this brings us to an

25  exhibit that continues to have a hearsay objection on it

1  between Ms. Mills and Ms. Beauregard regarding what was --

2  what AHM had told Ms. Beauregard about refusing to give her

3  assurances that they would not foreclose even if she brought

4  the loan current.  If Your Honor rules that that -- that Ms.

5  Beauregard's recollection of that in the email chain is a

6  statement against interest, we'll move forward with the

7  exhibit.

8              MS. ZIEG:  The statement against Ms. Beauregard's

9  interests?

10             MR. STAMOULIS:  A statement against AHM's

11 interest that despite the fact that she was going to bring

12 the loan current, AHM would not stop their foreclosure

13 process.

14             MS. ZIEG:  You have a double hearsay issue

15 because you're saying that she told you that AHM told her.

16 So it would --

17             THE COURT:  All right.  So what do we have here?

18 We have a document that you say indicates --

19             MR. STAMOULIS:  It's an email from Ms. Beauregard

20 to Ms. Mills --

21             THE COURT:  All right.

22             MR. STAMOULIS:  -- saying the reason --

23             MS. ZIEG:  No --

24             THE COURT:  What AHM told --

25             MR. STAMOULIS:  Ms. Beauregard.

1                 THE COURT:  -- Ms. Beauregard.  So it is double
2     hearsay.  Correct.
3                 MS. ZIEG:  Yes.
4                 THE COURT:  And your issue is that it -- the
5     statement from AHM to Ms. Beauregard is a statement against
6     interest.
7                 MR. STAMOULIS:  That's right.
8                 THE COURT:  And why is -- why should I admit the
9     statement, out of Court statement from Ms. Beauregard to
10    your client?
11                MR. STAMOULIS:  Ms. Beauregard is again a witness
12    that is in California, is not available, but there is some
13    particular reliability to the statement because debtors did
14    contact her.  They spoke with her prior to trial and so I
15    think they would be well aware of the nature of the
16    statement.
17                MS. ZIEG:  Yes and we had a conversation with Mr.
18    Stamoulis that if he wanted to use the statement, we
19    intended to depose her, but if he didn't want to use this
20    statement that we wouldn't be deposing her.  And we chose
21    not to depose her because he said he wasn't going to be
22    using the email.  In addition, this is all part and parcel
23    of partially our stipulated facts.  We have a stipulated
24    fact 47 that begins speaking about the transaction that
25    occurred between Ms. Beauregard and AHM.  And the testimony

1    that's been presented actually contradicts the stipulated

2    fact.  The stipulated fact is that Ms. Mills knew that the

3    amount required to reinstate the loan was $67,141 on June 5,

4    2006 when they were dealing with Ms. Beauregard.  And that

5    Ms. Beauregard's loan commitment was for -- this part is not

6    stipulated, but that there was an amount of a contingent

7    loan commitment and the amount is in the document and that's

8    the $47,500.  But the fact that the $47,500 would cure the

9    default is inaccurate.

10              THE COURT:  But your fighting is still heard over

11   this document.

12              MS. ZIEG:  I don't care about this document, but

13   the email?

14              THE COURT:  Yeah.

15              MS. ZIEG:  The email is an email that Ms. Mills

16   sent to Ms. Beauregard saying can you confirm this is what

17   happened about a month ago when Ms. Beauregard would not

18   execute a declaration.

19              THE COURT:  Oh, it's not contemporaneous?

20              MS. ZIEG:  No.

21              THE COURT:  It's not contemporaneous?

22              MS. ZIEG:  No.

23              THE COURT:  Objection is sustained.  Let's take a

24   lunch break.  We'll reconvene at 2:00.  Ms. Mills, during

25   the break, you may not discuss the substance of your

1   testimony with anyone, all right?  You can talk about things

2   like how to answer questions or not answer questions, but

3   not the substance, all right?

4              MS. MILLS:  Thank you.

5              THE COURT:  We're in adjournment until 2:00.

6              MR. STAMOULIS:  Thank you, Your Honor.

7                (Recess from 1:00 p.m. to 2:09 p.m.)

8              COURT CLERK:  All rise.

9              THE COURT:  Please be seated.  Ms. Mills, you can

10  please retake the stand.  And your affirmation from this

11  morning is still in place.  We'll be able to see you a

12  little bit better there now.  You may proceed.

13             MR. STAMOULIS:  Your Honor, before I pick up on

14  my questioning, I just want to -- there was one more exhibit

15  in the line of questioning that I had earlier.  This is not

16  the new exhibit, but one more exhibit in the line of

17  questioning that I had earlier.

18             We dealt with the non-contemporaneous email.  I

19  was then going to follow up with some questioning on Exhibit

20  74 which is the contemporaneous documents from Ms.

21  Beauregard and primarily the document that sets out the

22  terms of the commitment that was being offered by Ms.

23  Beauregard and that document as well has a hearsay

24  objection.  And so I'd like to limit the testimony just to

25  the first page, not to the 2006 dated emails that fall

1  behind it.  And I'm wondering if counsel's going to have an

2  objection to the first page of Exhibit 74.

3              MS. ZIEG:  No, sir.

4              MR. STAMOULIS:  No objection, okay.

5              THE COURT:  All right, you may proceed.

6              MR. STAMOULIS:  All right, thank you.  Ms. Mills,

7  can you please turn to Exhibit Tab #74?

8              THE COURT:  The second binder.

9              MS. MILLS:  I have it in front of me.

10 BY MR. STAMOULIS:

11 Q.    Ms. Mills, does the first page of Exhibit 74

12 accurately represent the terms that were being offered by

13 Ms. Beauregard to assist you in refinancing?

14 A.    Correct.

15 Q.    And what ultimately happened with Ms. Beauregard's

16 offer to help you refinance?

17 A.    She could not get written assurance from American Home

18 Mortgage that they were still not going to foreclose on the

19 property.  And that's what she needed for her investors.

20 Q.    So she did not assist you in refinancing your home?

21 A.    No.

22 Q.    After you concluded your efforts to refinance with Ms.

23 Beauregard, what did you do next?

24 A.    I ended up declaring bankruptcy.

25 Q.    After you entered into bankruptcy, did you continue to

1  work with AHM to try to get back your home?

2  A.    Yes, I did.

3  Q.    And did you continue to seek financing to refinance

4  the loans with AHM?

5  A.    Yes, I did.

6  Q.    Okay.  Can you please turn to Exhibit Tab #32?  The

7  first email dated June 6 of 2006, in the second sentence

8  reads on this particular account, the debtor is going to

9  bring the total amount due to reinstate the loan.  If this

10 has not happened, we will go to sale and bid full debt which

11 is about $1.2 million on a property worth $1.4.  Were you

12 still stating in June of '06, that you were going to bring

13 this loan current?

14 A.    Yes.

15 Q.    Okay.  What efforts after you filed for bankruptcy,

16 did you undertake to continue to try to bring your loans

17 current or to refinance?

18 A.    We just kept on seeking funding from a hard money

19 lender.

20 Q.    Did there come a time when you contacted someone named

21 Mr. Norwood?

22 A.    Yes.  Prior to that, it was Curtis and Vanessa Brown.

23 They were one of Anthony's investors and Anthony had made

24 them aware of what was going on and they were willing to buy

25 the property and let us reside in the property and then at a

1  later date, we would buy the home back from them.

2  Q.    What time period roughly did you approach Mr. and Mrs.

3  Brown?

4  A.    It was December.

5  Q.    And did they ever come to make an offer on the

6  property?

7  A.    Yes, they did.

8  Q.    And do you recall the amount that was offered to buy

9  the property on your behalf?

10  A.    I believe --

11          MS. ZIEG:  Objection, foundation.

12          THE COURT:  Can you lay the foundation?

13          MR. STAMOULIS:  Yes.  Are you aware of how much

14  Mr. and Mrs. Brown offered AHM to purchase the property on

15  your behalf?

16          MS. MILLS:  $850,000.

17          MR. STAMOULIS:  Are you --

18          MR. BEACH:  Move to strike, Your Honor.

19          THE COURT:  It's stricken.  How do you know?

20          MS. MILLS:  Because I saw the loan application

21  and I delivered to Terry Miles who was the American Home

22  Mortgage, the listing agent.  They were -- they resided down

23  in Los Angeles and they had faxed the information and got

24  the deposit check, the $25,000 to me.

25          THE COURT:  So you --

1          MS. MILLS:  And I personally delivered it to

2   Terry Miles.

3          THE COURT:  All right.  And the amount was?

4          MS. MILLS:  $850,000.

5          THE COURT:  Okay.

6   BY MR. STAMOULIS:

7   Q.    And that was in December of 2006.  Is that correct?

8   A.    No, it was after that point.  This right after we left

9   the property.

10  Q.    Okay.  Was the offer for $850,000 -- or I'm sorry,

11  when would that be?

12  A.    March.

13  Q.    March of 2007?

14  A.    Yes.

15  Q.    Okay.  Was the offer for $850,000 to purchase the

16  property in March of 2007 -- well, do you know whether or

17  not that offer was accepted by AHM?

18  A.    It was not.

19  Q.    How do you know that?

20  A.    Because their offer, I believe was on March 7.  Larry

21  Norwood also put in an offer which was --

22  Q.    Well before we get to that, Ms. Mills.

23  A.    Okay.

24  Q.    Just --

25  A.    I'm sorry.

1    Q.     -- one at time.  We're going to --

2    A.     Okay.

3    Q.     -- try to follow the rules of evidence as best we can.

4    A.     Can you repeat the question?

5    Q.     Yes.  How do you know whether or not the offer by the

6    Brown's was accepted by AHM or rejected?

7    A.     By Terry Miles.

8    Q.     Okay.  And so you know because Terry Miles

9    communicated it to you?

10   A.     Correct.

11   Q.     Okay.  And what is your understanding as to whether or

12   not the offer was accepted or rejected?

13   A.     They just said no.

14   Q.     Okay.  Did there come a time that you worked with

15   someone named Larry Norwood to repurchase or refinance your

16   home?

17   A.     Yes, we did.

18   Q.     And during what time period did you work with Mr.

19   Norwood?

20   A.     That was March 12 of 2007.

21   Q.     Okay.  Do you know whether Mr. Norwood made an offer

22   to purchase the property on your behalf?

23   A.     Yes, I did.

24   Q.     How do you know that fact?

25   A.     There again, I personally took the loan application

1  that he filled -- he provided the information on and

2  delivered it to Terry Miles.  And since he was in Georgia

3  from my own personal account, I put $25,000 or wrote a check

4  on his behalf for $25,000.

5          MR. STAMOULIS:  Okay.  Now at this point, Your

6  Honor, we wanted to include an additional exhibit on our

7  exhibit list.  And I have provided it.  It was -- we didn't

8  realize that we would need it.  I provided a copy to the

9  debtors.  I think they're still considering it.  I don't

10 know it's -- that they going to have any objection to us

11 adding an exhibit.

12         MS. ZIEG:  Your Honor, it's a rather lengthy

13 document.  I just wanted to have the opportunity to look

14 through it for whether or not it's admitted into evidence,

15 but I agreed to allow Mr. Stamoulis to cross -- or to

16 examine Ms. Mills with respect to the document.

17         THE COURT:  Very good.

18         MR. STAMOULIS:  Your Honor, may I approach both

19 the witness and the Court --

20         THE COURT:  Yes.

21         MR. STAMOULIS:  -- to give you copies?

22         THE COURT:  Yes.  Thank you.

23         MR. STAMOULIS:  Ms. Mills, can you please turn to

24 the page in what the claimant will mark as Exhibit 99, the

25 page with the base number ending in 782.

1            MS. MILLS:  782?

2            MR. STAMOULIS:  Yes.

3            MS. MILLS:  I don't have a 782.

4            THE COURT:  It's double sided, ma'am.

5            MS. MILLS:  Oh, thank you.

6            THE COURT:  That's all right.

7    BY MR. STAMOULIS:

8    Q.    Okay.  Ms. Mills, do you see that the first line item

9    in -- first of all, have -- do you know what this document

10   is?

11   A.    Yes, this is the -- I don't know the official name of

12   it, but it's like the record of everything that transpired

13   with the loans.

14   Q.    Is it your understanding that this is a document that

15   was produced by the debtors to you?

16   A.    Correct.

17   Q.    Okay.  If you look at the first line item on the page

18   ending 782, on April 10 of 2007, do you see that?

19   A.    Yes.

20   Q.    Okay.  Do you see the comment multiple offers

21   received, the $1,025,000?

22   A.    Yes.

23   Q.    Do you see that?

24   A.    Yes, I do.

25   Q.    Okay.  Do you know what offer that pertains to?

1  A.    That was Mr. Norwood.

2  Q.    Okay.  And what were the terms of -- did you have an -

3  - was there an arrangement between you and Mr. Norwood

4  regarding Mr. Norwood's efforts to assist you in this

5  matter?

6  A.    What do you mean by terms?  I'm not --

7  Q.    Well, what do you understand to be the nature of what

8  Mr. Norwood was going to do, if anything, for you?

9  A.    Okay.  He was going to purchase the property.  We were

10 to reside in the property and at a later date either you

11 know what I mean, take over the loan.

12 Q.    Okay.  And it's your understanding that Mr. Norwood

13 made an offer of $1,025,000 to purchase the property?

14 A.    Correct.

15 Q.    Okay.  Do you have any understanding as what Mr.

16 Norwood's financial condition was?

17 A.    He was a --

18          MS. ZIEG:  Objection, foundation.

19          THE COURT:  Overruled.

20 BY MR. STAMOULIS:

21 Q.    If you have an understanding, would you please explain

22 to the Court how you have that understanding and what your

23 understanding is?

24 A.    Of his --

25 Q.    Financial condition.

1  A.    -- financial?  He was a big investor of Anthony's.

2  And Arrow Wireless alone he put $250,000 down and he had a

3  very successful business in Atlanta, Georgia.

4  Q.    Okay.  Do you have any understanding as to whether or

5  not the $1,025,000 offer made by Mr. Norwood to the debtors

6  was accepted?

7  A.    It was not.

8  Q.    Okay.  What happened after Mr. Norwood's offer was

9  rejected?

10  A.    Well the way that they went about it was just like no,

11  it's not -- I believe that was about the same time that we

12  wrote a letter to Michael Strauss.

13  Q.    Well what did you tell Michael Strauss?

14  A.    We were relaying to him that -- how his employees and

15  representatives, everything had fallen on deaf ears.  We

16  wanted to get our house back.  And just let him know the

17  conduct of what was going on.  That they were never

18  receptive, never wanted to work with us, never wanted -- we

19  had to make him aware.

20  Q.    Ms. Mills, can you please turn to Exhibit #71?  Is

21  this the letter that you wrote to Mr. Strauss?

22  A.    Yes.

23  Q.    If you turn to the second page, you state, we feel

24  that once our situation is stabilized -- once our situation

25  was stabilized, we made every reasonable effort and attempt

1    to work with American Home Mortgage and due to their lack of

2    communication and stubbornness, that we have been cheated

3    out of our last right to save our home.  Did you make that

4    statement?

5    A.    Yes, I did.

6    Q.    Okay.  Do you know whether Mr. Strauss ever received

7    this letter?

8    A.    Yes, he did.

9    Q.    And did you get a response back?

10    A.    Anthony talked to him on the telephone.

11    Q.    And what did -- well we can ask Mr. Esquivel what --

12    A.    Yes.

13    Q.    -- if anything Mr. Strauss said.  I can feel Sharon

14    breathing on me.

15            MS. ZIEG:  I'm still sitting.

16    BY MR. STAMOULIS:

17    Q.    Now at this point in time, April of '07, the

18    foreclosure on your property was completed.  Is that

19    correct?

20    A.    Correct.

21    Q.    Were you still residing in the property?

22    A.    We left on our own accord, I think it was March 1

23    or 2.

24    Q.    Of 2007?

25    A.    Of 2007.

1    Q.    So at the time the Norwood offer came in, you had

2    already vacated the property?

3    A.    Yes.

4    Q.    Okay.  And did -- Ms. Mills, did there come a time in

5    your personal Chapter 7 bankruptcy where you received a

6    discharge of your debts?

7    A.    Yes, I did.

8    Q.    Okay.  Now who was your attorney in your Chapter 7

9    bankruptcy?

10   A.    Mr. Von Touss [ph].

11   Q.    Okay.  Do you know whether Mr. Touss had any contact

12   or communications with American Home Mortgage throughout

13   your bankruptcy?

14   A.    Yes, he did.

15   Q.    And what were the natures -- do you know what the

16   nature was of his interaction with AHM?

17   A.    He was trying to help us get our house back.

18   Q.    Okay.  What, if any, of the facts, many of which

19   you've testified to here today was Mr. Touss aware of during

20   the time that he was helping you with your bankruptcy?

21   A.    I don't completely understand your question.

22   Q.    For example was -- do you know whether Mr. Touss was

23   aware that you had this issue with the one point drop on

24   your credit score and then having to go back with more

25   money?

1  A.    He was aware of everything.  He was my attorney and I

2  told him everything.  He was --

3  Q.    Ms. Mills did -- at the time that you filed your

4  schedules for your bankruptcy discharge, did it occur to you

5  to list a potential claim against American Home?

6  A.    No, no.  I -- all I wanted was to get my house back.

7  Q.    Ms. Mills, did your attorney ever suggest that you

8  should list as a potential asset, a claim against American

9  Home Mortgage?

10  A.    No.

11  Q.    Okay.  And you actually never did list a claim against

12  American Home Mortgage on your schedules, did you?

13  A.    No.

14  Q.    And after you were -- I guess the eviction was

15  completed.  We'll call it an eviction whether or not you

16  left voluntarily or not, we won't reach that.  Did you

17  continue to use efforts to try to get your house back?

18  A.    Yes.

19  Q.    And what else did you do?

20  A.    Well we had -- I think Larry ended up making a few

21  offers on the property.  I don't remember exactly how many.

22  That time is really hard for me to remember all of our

23  efforts.  It was really hard living in a hotel and trying to

24  function.  And then the -- the next thing is when American

25  Home Mortgage, you know, put the petition in for bankruptcy

1  and that's when we, you know, decided instead of like trying

2  to file some lawsuit in California was to go with the

3  process of this -- their bankruptcy.

4  Q.    Ms. Mills, I'd like you to turn to Exhibit #73. Do you

5  know what this document is?

6  A.    Yes.  It's an e-mail that I sent to Mr. Indelacado

7  [ph].

8  Q.    Why did you send this e-mail?

9  A.    I had contacted Mr. Indelacado because he was, you

10  know, for the unsecured committees and he was someone that I

11  could talk to about still wanting to get my home back.

12  Q.    Do you see on page two of the e-mail, you start a

13  numbered list that goes from 1 to 13, with regard to your

14  various complaints about the process and the foreclosure.

15  Do you recall writing that section?

16  A.    Yes.

17  Q.    Did you get a response back to this letter?

18  A.    Not a written response, but we talked on the

19  telephone, I believe.

20  Q.    What were you -- were you ever offered a settlement of

21  your claim by American Home?

22  A.    No.

23  Q.    Is it your understanding that as part of the document

24  production in this litigation they did produce -- that

25  American Home did produce a letter offering to settle your

1  claim, but that was sent to an address that you did not

2  reside at?

3  A.    We moved in October and that supposed settlement was

4  like November 3, and I think you really have to understand

5  where we live is in rural California.  We moved half mile

6  away.  My mailman knows who I am, and he even drops off my

7  mail at B Rock so I do not see how that letter -- we also

8  had put in forwarding and I had also sent Mr. Indelacado an

9  e-quip that the address changed.

10 Q.    Do you recall sitting here today the amount of

11 settlement that was offered to you?

12 A.    It was like $5,000 or something.

13 Q.    Is it your understanding that's the only settlement

14 offer you've ever received from American Home?

15 A.    Yes, that I've seen through the discovery process.

16 Q.    Ms. Mills, I'd like you to go to Exhibit 1 in your

17 binder.  Ms. Mills, do you recognize Exhibit 1 to be the

18 loan application that you submitted to American Home for the

19 loan?

20 A.    Yes, this is the one that I signed at the escrow

21 office.

22 Q.    Did you type this application out?

23 A.    No, I did not.

24 Q.    Do you know who typed it out?

25 A.    Tonya Le Teau.

1  Q.    Does this information -- I'm sorry.  Did Ms. Le Teau

2  consult with you while typing out this application?

3  A.    She went -- as I mentioned before, I did a handwritten

4  application.  I faxed it over to her, and then she verbally,

5  over the phone, went over this -- the application with me,

6  but I didn't see this until I was in the escrow office and

7  signed on the 15th.

8  Q.    If you go to the second page, you'll see that at the

9  top of the page, there's a column for base employment

10 income, a row for base employment income, and your base

11 employment income is listed at $28,553, and that would be

12 monthly income.  Do you see that entry?

13 A.    Yes, I see that.

14 Q.    Okay.  What was your monthly income at the time that

15 this loan application was filled out?

16 A.    It was not that amount.  I don't know where she came

17 up with that figure.

18 Q.    Now you did testify that you had provided Ms. Le Teau

19 with your tax returns.  Is that correct?

20 A.    Correct.

21 Q.    Okay.  And did you review this loan application prior

22 to signing it?

23 A.    It was Lori Philipino, the escrow agent, had a big

24 stack of papers.  I mean I didn't sit there and scrutinize

25 it.  I just signed a bunch of documents that day.

1   Q.    Okay.  And can you please turn to tab number 10 in

2 your binder?  Do you recall signing this document as part of

3 your closing documents?

4   A.    Yes, I do.

5   Q.    Okay.  And do you understand that -- and did you

6 deliver this document to Ms. Le Teau?

7   A.    This, there again, was signed at the escrow office.

8   Q.    And do you understand that -- this document as giving

9 AHM the authority to get your tax returns?

10   A.    I guess that's what it is, yeah.  I --

11   Q.    And you signed this document on July 19 of '05.  Is

12 that right?

13   A.    Yes.

14   Q.    Okay.  And you closed on your house on August 8th of

15 '05.  Is that right?

16   A.    Correct.

17   Q.    Okay.  Do you know whether AHM pulled your tax returns

18 to the extent they were missing any beyond what you provided

19 Ms. Le Teau between July 19th and August 8th?

20   A.    I don't know if they did.  I would assume they would,

21 but I -- but I don't know.

22   Q.    Do you have any understanding or idea of what occurred

23 during the underwriting process where the materials that you

24 provided to AHM were reviewed prior to closing your loan on

25 August 8th?

1  A.    I supplied them everything.  I assumed that they would

2  verify and check my accounts and do their due diligence.

3  Q.    Ms. Mills, you're aware that in -- that after the

4  petition date, the debtors ultimately liquidated your home.

5  Is that right?

6  A.    Correct.

7  Q.    And that they -- that the liquidation generated

8  approximately $600,000 and some for the debtors' estate.  Is

9  that right?

10 A.    Correct.

11 Q.    As part of closing on this house, you supplied a

12 $212,000 down payment.  Is that right?

13 A.    Correct.

14 Q.    Did you get any part of that down payment back as a

15 result of the liquidation?

16 A.    No.

17 Q.    Now part of that down payment, Ms. Mills, was a loan

18 to you, was it not?

19 A.    Correct.

20 Q.    Who loaned that money to you?

21 A.    Ernest Quhen [ph].

22 Q.    Who is Mr. Quhen?

23 A.    I just recently found out he passed away, but he was

24 -- he was like my dad, like a surrogate dad.  He's very dear

25 to my heart, and he helped us out.  He believed in us.

1 Q.    What portion of your $212,000 down payment did Mr.

2 Quhen loan you?

3 A.    $162,500.

4 Q.    And during your bankruptcy, did Mr. Quhen file a claim

5 against your estate for that loan?

6 A.    He filed a claim and we came to a settlement agreement

7 of $7,500.

8 Q.    Have you -- have you ever paid that settlement?

9 A.    I only made a few payments, but it's my intent that I

10 want to pay his estate $162,500 for his grandchildren.

11 Q.    So if you're awarded any funds as a result of this

12 administrative expense claim, is it your intent to use those

13 funds to repay the full -- to the extent that you can, the

14 full $162,500 to Mr. Quhen?

15        MS. ZIEG:  Objection.  Relevance.

16        THE COURT:  Relevance?

17        MR. STAMOULIS:  Your Honor, there -- one of the

18 defenses that -- equitable defenses that the debtors have

19 raised is that she should not be entitled to the full amount

20 of her administrative expense claim because she borrowed

21 part of the money that she used for her down payment, and

22 that debt was discharged in bankruptcy.  So to give her any

23 aspect of the portion that was discharged from bankruptcy

24 would be inequitable and a windfall for Ms. Mills.

25        THE COURT:  All right.  Overruled.

1  BY MR. STAMOULIS:

2  Q.    So Ms. Mills, sitting here today, under oath, in this

3  court, is it your intent, to the extent that you're able to

4  from any recovery, to repay the $162,500, that Mr. Quhen

5  lent you as part of your down payment?

6  A.    Yes, I do.  That's always been my intent, and I feel

7  that's the first thing.

8  Q.    Okay.  Now in addition to the $212,000 down payment

9  that you lost as a result of liquidation of your home, you

10  also, I think we discussed earlier, paid approximately

11  $50,000 in closing costs and escrow fees.  Is that accurate?

12  A.    Correct.

13  Q.    Okay.  And you lost that too as a result of the

14  liquidation.  Is that right?

15  A.    Correct.

16  Q.    And as part of your -- after you left the home, did

17  you incur any expenses as a result of having to leave your

18  home from the foreclosure?

19  A.    Well, we stayed at LaKinta Hotel.  We spent about

20  $8,000 because we were still under the belief that we could

21  get our house back, and yes, $8,000 went to hotel bills.

22  Q.    Did you suffer any other damages as a result of

23  leaving the home after the foreclosure?

24  A.    I lost everything.  I lost my -- my life, my tools of

25  the trade.  I mean, I got some things and I put them into

1  storage, and I ended up working three jobs just to try to

2  keep -- keep going, and I had some of my personal belongings

3  and I lost a lot of them in storage because I couldn't pay

4  the storage fees.  It was so bad that I mean, I have my

5  pride and everything, but I, you know, was going to food

6  banks so that we could eat.

7  Q.    Do you know the approximate value of the material that

8  you had in storage that was liquidated because of your past-

9  due storage fees?

10 A.    It was probably about $40,000 worth of stuff,

11 equipment.

12 Q.    What kind of equipment?

13 A.    Irrigation supplies, tools that I used, weed whackers,

14 shovels, and just personal papers and I lost half my

15 library, my books.

16 Q.    Now after the foreclosure and moving to the -- your

17 new residence, you didn't work in landscaping immediately

18 again, did you?

19 A.    No.

20 Q.    Okay.  Did there come a time recently when you tried

21 to get back into the landscaping business?

22 A.    I haven't had the means.  I can't replace all the

23 tools that I had.  I've just been in survival mode.

24 Q.    Did you recently apply for any jobs where your

25 horticultural background would have been an asset to you?

1 A.    Yes, I did, and upon seeing this document with --

2 Q.    Let's take it one step at a time --

3 A.    Okay.

4 Q.    -- Ms. Mills.  Did you apply for a job recently where

5 your horticultural skills would have been an asset to you?

6 A.    Yes, for the city of Paso Robles, and their water

7 conservation, and IPM program that they were launching.  It

8 was almost an exact duplicate of what I launched in Ventura

9 County and I went through a rigorous interview process with

10 being interviewed by panels and by -- I was an ideal

11 candidate, and you know, they pulled the criminal record and

12 that, and the last thing was they pulled my credit and then

13 I never heard back.

14 Q.    And did you ultimately get that job?

15 A.    No, I did not.

16 Q.    Ms. Mills, I'd like you to go to Exhibit 99, which I

17 handed up to you.  And we're going to start on page 799 of

18 this exhibit, and work our way towards the front of the

19 exhibit.

20        MS. ZIEG:  I'm sorry.  Is that the one you just handed

21 me?

22        MR. STAMOULIS:  Yes.

23        THE COURT:  Where are we starting?

24        MR. STAMOULIS:  Page 799, Your Honor.

25        THE COURT:  Um-hum.  Let me know when you're at that

1 page?

2        MS. MILLS:  I -- I'm sorry.  I'm at the page.

3 BY MR. STAMOULIS:

4 Q.    799.  Are you there?

5 A.    Yeah.

6 Q.    Okay.  If you go to the fifth line down on 799 -- I'm

7 sorry, a little further -- the seventh line down on 799, do

8 you see that on January 31, of '06, they reported your

9 account to the credit bureau?

10 A.    Correct.

11 Q.    Okay.  Do you see two lines above that, on February

12 28th, they reported it again to the credit bureau?

13 A.    Correct.

14 Q.    Okay.  Do you see that on March 24th, your score

15 dropped to 350?

16 A.    Yes, I do.

17 Q.    Okay.  If you go to Page 798.  Do you see on the last

18 entry of the list of entries on 798, 3/31/06 they reported

19 your account to the credit bureau?

20 A.    Correct.

21 Q.    And then above that on April 3 of '06, your score

22 dropped to 346.

23 A.    Yes.

24 Q.    Do you see that above that -- on I'm sorry, the top

25 line in this page on April 29 of '06, they reported your

1  account again to the Credit Bureau?

2  A.    Correct.

3  Q.    Okay.  And if you turn to the next page.

4  A.    Oh, I'm sorry.

5          MS. ZIEG:  Objection, Your Honor.  I'm not sure

6  how this is relevant.  It doesn't relate to any of the

7  claims that they have stated.

8          THE COURT:  Well, if you want to put the document

9  in evidence that's fine, but if you're just going to ask her

10  to read line by line and say whether it says what you say it

11  says, that's not particularly helpful. It's a bit of a waste

12  of time.

13          MR. STAMOULIS:  Sure.

14          THE COURT:  And this was an internal document

15  created by --

16          MS. ZIEG:  This was an internal document,

17  correct, but the fact is we've asked Ms. Mills.  She hasn't

18  supplemented her interrogatory responses other than what was

19  in her response so she just supplemented her interrogatory

20  responses a week ago and nothing having to with anything

21  like is related to a basis for any claim.

22          THE COURT:  Well, the fact is what it is.  I

23  mean --

24          MS. ZIEG:  Well the document is what it is.

25          THE COURT:  That's what I mean.  That's what I

1   mean.

2           MS. ZIEG:  The relevance for why she's testing

3   about it I have --

4           THE COURT:  Well --

5           MR. STAMOULIS:  Your Honor, I will get to the

6   point quickly --

7           THE COURT:  All right, please do.

8           MR. STAMOULIS:  -- with this.  Ms. Mills, you've

9   seen this document before, have you not?

10          THE COURT:  Yes.

11          MR. STAMOULIS:  Okay.  Based on your reviewing

12  this document, is it your understanding that after your

13  foreclosure was complete, the debtors continued to ding your

14  credit score because of your deficient loan -- outstanding

15  loan balance?

16          MS. ZIEG:  Objection to relevance.  Objection to

17  foundation.

18          THE COURT:  Well the foundation is the document.

19          MR. STAMOULIS:  Yes.

20          MS. ZIEG:  The foundation is --

21          MR. STAMOULIS:  Your Honor, this goes to damages.

22  Ms. Mills was just recently denied a job as a result of her

23  poor credit.  This document --

24          THE COURT:  Well that's your position, I get

25  that.

1          MR. STAMOULIS:  Yes.  But -- and this document

2    demonstrates that after the foreclosure, after the eviction,

3    after the discharge from her bankruptcy, after the petition

4    date, after the liquidation of the property, American Home

5    continues to ding her credit on an almost monthly basis and

6    has dropped her score --

7          THE COURT:  When was the discharge?

8          MR. STAMOULIS:  The discharge was in the summer

9    of '07.

10          THE COURT:  Right.

11          MS. ZIEG:  Your Honor --

12          THE COURT:  And you have -- this document

13    indicates that they reported her post --

14          MR. STAMOULIS:  They continued to --

15          THE COURT:  -- discharge?

16          MR. STAMOULIS:  Post, yes, post discharge, Your

17    Honor.

18          THE COURT:  Where does it show me that?

19          MR. STAMOULIS:  If, Your Honor, would turn to the

20    page, I mean, we can start on 7 -- let me see right here,

21    774.

22          MS. ZIEG:  If I may interject, Your Honor.  We

23    still have the issue of the fact that it's not relevant and

24    there is no foundation.  To the extent that -- I don't know

25    what this document says.  I haven't had a chance to look at

1  it.

2          THE COURT:  I've asked him a question, okay?

3          MS. ZIEG:  Oh, I'm sorry.

4          THE COURT:  I'm going to give him an opportunity

5  to answer my question.

6          MR. STAMOULIS:  Okay.  Your Honor, if you go to

7  Page 774 --

8          THE COURT:  Yeah, I see where you're talking.

9          MR. STAMOULIS:  -- 9/30/07, they hit her credit.

10          THE COURT:  Um-hum.

11          MR. STAMOULIS:  And 773, they hit her credit on

12  10/31, 11/30, and 12/31.  772, they hit her credit on 1/3,

13  1/30 -- I'm sorry, 1/31 and 2/29.  And this is also post

14  petition date as well.  This is post petition conduct of the

15  debtors.  On 770, they hit her credit score on 3/31/08.  On

16  769, they hit her credit score 4/30 of '08, 5/31 of '08,

17  6/30 of '08.

18          THE COURT:  Well, by that time, it's not the

19  debtor anymore.

20          MS. ZIEG:  Yeah, that was my next point.

21          THE COURT:  It was the servicer.

22          MR. STAMOULIS:  Well, okay.

23          THE COURT:  All right, I see your point.

24          MR. STAMOULIS:  And they've driven -- so Ms.

25  Mills, as a result of this --

1              THE COURT:  Hang on, hang on, now --

2              MS. ZIEG:  We still have issues with the fact

3    that they're attempting to use this document and the purpose

4    for which they are using it.  Ms. Mills had the opportunity

5    to supplement her interrogatory responses.  As a matter of

6    fact, she did over a week ago.  They've never disclosed any

7    of this.  We haven't had the opportunity to --

8              THE COURT:  Disclose any of what?  Any --

9              MS. ZIEG:  Any of the things -- any of the

10   assertions they're now making that there's damages related

11   to, I'm going to use Mr. Stamoulis' word, dinging her

12   credit.  We have no idea what --

13             THE COURT:  Mr. Stamoulis?

14             MS. ZIEG:  -- what the damages may be to that.

15   We have no idea why she didn't get a job.  We would have the

16   opportunity to do discovery on that.

17             THE COURT:  Yes, sir?

18             MR. STAMOULIS:  Your Honor, the claims that we've

19   made are for the conduct in violation of the say and for

20   wrongful foreclosure.  The conduct with regard to the credit

21   score is the basis of the fraud claim.  We allege that there

22   were -- there was some irregularities and manipulation of

23   the credit score to -- and we had a motion in limine about

24   this that they lowered her credit score to get her to put

25   more money down.  The reason why we are putting this into

1  the record, Your Honor is to support our claim for punitive

2  damages based on the willful conduct of the debtors with

3  regard to her credit score.

4          THE COURT:  Well, the only punitive damages that

5  are still in play are statutory.

6          MR. STAMOULIS:  Yes, Your Honor.

7          THE COURT:  And you would have to show

8  willfulness.  Is that your point?

9          MR. STAMOULIS:  Yes.  Pursuant to the new 363(k),

10  Your Honor, because the liquidation -- because the

11  foreclosure on her home violated the stay and she would be

12  entitled to all consequential damages as a result of that

13  foreclosure, the hits to her credit score are consequential

14  damages as a result of the improper foreclosure that was

15  taken in violation of the stay.  And the continuing nature

16  of these hits goes to the willfulness of the debtors.

17          THE COURT:  All right.  That's not relevant for

18  today's purposes.  I'm going overrule the -- or sustain the

19  objection in connection with this line of questioning.

20  Whether or not the stay was violated willfully, that

21  happened four years ago.  The continued "violations" of the

22  automatic stay related to actions to foreclose, that doesn't

23  really get to the willful nature of it at all.  Once the

24  bullet's out of the gun, it's out of the gun.  If your

25  client's been damaged so be it, but I don't see this

1  evidence as having anything to do with the willful

2  violation, the willfulness of the violation.

3         MR. STAMOULIS:  I guess, I apologize for being

4  unclear, Your Honor.  I presented this as one of the

5  consequential damages that occurs as a result of the 362(k)

6  violation.

7         THE COURT:  All right.  I think we've got -- I

8  think we've developed it enough.

9         MR. STAMOULIS:  Okay, thank you, Your Honor.  Ms.

10  Mills, up until the liquidation of your home by the debtors

11  post petition, what was your objective in pursuing your

12  claims against the debtors?

13         MS. MILLS:  What was my objective?

14         MR. STAMOULIS:  Yes.  What did you want out of

15  your proof of claim?

16         MS. MILLS:  On my proof -- I've always just

17  wanted my house back.  That's -- and that can't happen.

18         MR. STAMOULIS:  And you understand that that

19  can't happen now?

20         MS. MILLS:  I understand that, yes.

21         MR. STAMOULIS:  Okay.  Thank you, Your Honor, I

22  have no further questions.

23         THE COURT:  All right, thank you.  Cross?

24         MS. ZIEG:  May we have a short recess before we

25  begin cross?

1          MR. BEACH:  Yes.

2          MS. ZIEG:  Thank you.

3             (Recess from 2:56 p.m. to 3:13 p.m.)

4          THE CLERK:  All rise.

5          MR. BEACH:  Please be seated.  All right, Ms.

6    Zieg?

7                    CROSS EXAMINATION

8    BY MS. ZIEG:

9    Q.    Good afternoon.  Sharon Zieg again for the record of

10   Young, Conaway, Stargatt & Taylor on behalf of the debtors.

11   Good afternoon, Ms. Mills.  Ms. Mills, you stated that the

12   basis for your fraudulent inducement claims are statements

13   made to you by Ms. Le Teau.  Correct?

14   A.    Correct.

15   Q.    And Ms. Le Teau was your mortgage broker with respect

16   to the loans that were underwritten by AHM.  Correct?

17   A.    Correct.

18   Q.    And you also testified that prior to closing on those

19   loans, you never had any contact with anyone at AHM

20   directly.  Correct?

21   A.    Correct.

22   Q.    You began -- you testified that you began working with

23   Bridgeport Mortgage before or after you entered into the

24   purchase agreement on the property?

25   A.    I can't remember.  I believe it was simultaneously.

1  Q.    Well, when you entered into the purchase agreement on

2  the property and you provided a loan contingency, did you

3  have any kind of pre-approval with respect to that loan

4  contingency?

5  A.    I believe I did with Mr. Jones, yes.

6  Q.    Okay.  And if you could turn to Exhibit 73 for me,

7  please.

8          THE COURT:  Which exhibits are we going to be in

9  here?

10          MS. ZIEG:  We're on -- oh, I'm sorry.

11          THE COURT:  Are we going to be in the black

12  binders?

13          MS. ZIEG:  We're in the black binders, yes, sir.

14          THE COURT:  Excuse me.

15  BY MS. ZIEG:

16  Q.    Are you there, Ms. Mills?

17  A.    Yes, I am.

18  Q.    73.  If you turn to the second page of the document

19  that's identified as Exhibit 73, it's AHM Mills 2850,

20  correct, is at the bottom right hand corner?  On the second

21  page.

22  A.    On the second page, bottom right hand corner?

23  Q.    It should say 2850.

24          THE COURT:  At the very bottom end there's a what

25  we call Bates number.

1        MS. MILLS:  Oh, I'm sorry.

2           MS. ZIEG:  Okay.

3        MS. MILLS:  Yes.

4    BY MS. ZIEG:

5    Q.    And this is a copy of the purchase agreement that you

6    sent to the builder of the property.  Correct?

7    A.    Correct.

8    Q.    And the previous page or the first page of this

9    exhibit, this is the builder's counter offer.  Correct?

10   A.    Correct.

11   Q.    Okay.  And you accepted this counter offer and this

12   became the purchase agreement for the property.  Correct?

13   A.    Correct.

14   Q.    Okay.  And if you look to the second page which was

15   your offer to purchase the property and you look to Section

16   C, it says first loan in the amount of $1,040,000.  Do you

17   see that?

18   A.    Yes, I do.

19   Q.    So you were planning on getting a first loan for

20   $1,040,000?

21   A.    That's what we discussed, but that was not the --

22   these aren't the final terms.

23   Q.    Correct.  But you made a purchase agreement to

24   purchase the property so long as you obtained financing of

25   $1,040,000.  Correct?

1   A.    Correct.

2   Q.    Which would have required a down payment of $270,000,

3   once the purchase agreement was counter offered.  Correct?

4   A.    Correct.

5   Q.    So accordingly, so as long as you could obtain

6   financing for $1,040,000, you would have to purchase the

7   property under this purchase agreement.  Correct?

8   A.    Correct.

9   Q.    Okay.  And again, this is under the financing that you

10  were working with Mr. Jones for, but those -- that financing

11  changed.  Correct?

12  A.    Correct, it changed.

13  Q.    Okay.  And eventually what happened with Mr. Jones,

14  according to your testimony, is that you were able to get

15  more beneficial loan terms.  Correct?

16  A.    Correct.

17  Q.    You were able to apply for a loan that only required 5

18  percent down.

19  A.    Correct.

20  Q.    Plus closing costs.

21  A.    Yes.

22  Q.    And you testified that the 5 percent down was $68,000

23  and the closing costs were approximately $20,000.  So,

24  therefore, with Mr. Jones' loan, you were going to have to

25  put approximately $88,000 down on the property.  Correct?

1  A.    Correct.

2  Q.    Okay.  And you were supposed to close on the property

3  was it July 1, the weekend before Fourth of July or July 8?

4  A.    We wanted to close on July 1, but just due to

5  circumstances, it changed to the 8th.

6  Q.    Okay.  And you testified that at some point during the

7  week before July 8, sometime during the week of June 25, you

8  lost contact with Mr. Jones.  Correct?

9  A.    Correct.

10  Q.    And that you went back to an appraiser who had

11  appraised your property to find out the name of someone he

12  had recommended.  Correct?

13  A.    Correct.

14  Q.    And that person was Ms. Le Teau?

15  A.    Correct.

16  Q.    And Ms. Le Teau worked for Chase?

17  A.    Correct.

18  Q.    So you contacted Ms. Le Teau at Chase to underwrite

19  your loan.  Correct?

20  A.    Correct.

21  Q.    And you had no idea at that point in time which lender

22  she was going to use for your loan.  Correct?

23  A.    I had no idea.

24  Q.    Okay.  Now you previously testified that you and Mr.

25  Esquivel had started thinking about purchasing a property on

1   the west coast in late 2004.  Correct?

2   A.    Yes.

3   Q.    Okay.

4   A.    Correct.

5   Q.    And that you really started focusing on the San Luis

6   Obispo area sometime in early -- of 2005?

7   A.    Correct.

8   Q.    Okay.  And you testified that you were moving to San

9   Luis -- or the final reason you moved to -- you were

10  choosing to move to San Luis Obispo is because you obtained

11  a job to preserve the California Oaks.  Correct?

12  A.    That was partial reason.  We did our research and we

13  decided that that was an ideal location for us, for both of

14  us --

15  Q.    But the ultimate --

16  A.    -- business-wise.

17  Q.    -- decision to chose the San Luis Obispo area was

18  because you obtained a job to preserve the California Oaks.

19  A.    It wasn't a job, it was a consulting job with Pacific

20  Horticulture.  That was one of the determining factors, but

21  it's also because there was a lot of building going on in

22  the area and a need for landscape design work.

23  Q.    Okay.  And how long was that consulting job for

24  Preserve Horticulture is that what you called it?  I'm

25  sorry.

1  A.    Pacific.

2  Q.    Pacific Horticulture.

3  A.    Yeah.

4  Q.    How long was that job supposed to last?

5  A.    It was supposed to be a yearlong project, but the city

6  of Paso had -- the city council decided to prolong the start

7  date on it and they also downsized the project quite a bit.

8  So by the time that it did come into fruition, I worked on

9  it maybe just a couple months, that was it.

10 Q.    Okay.  But it was supposed to be a job that you had

11 every day and that paid well.  Correct?

12 A.    Correct.

13 Q.    You also understood that when you met with Ms. Le Teau

14 during the initial contact with Ms. Le Teau, that she was

15 going to shop your loan.  Correct?

16 A.    Correct.

17 Q.    She was going to throw your loan out to a couple

18 different lenders and see what she could do for you?

19 A.    Yes.  She talked about two or three different lender's

20 names to me.

21 Q.    Okay.  And at your deposition, you testified that when

22 we showed you a copy of the broker's agreement with Ms. Le

23 Teau, you testified that you did sign that agreement.  Isn't

24 that correct?

25 A.    Yes.  I believe I did sign the agreement.  The one

1    that I saw today did not have a, you know, my signature on

2    it.

3    Q.    But you believe you signed that agreement?

4    A.    I believe I signed it, yes.

5    Q.    And before you filled out a loan application with Ms.

6    Le Teau or the handwritten loan application or the one you

7    sat down with Ms. Le Teau and filled out, you knew that Ms.

8    Le Teau could only obtain 90 percent financing for you.

9    Correct?

10    A.    At that point, no, I -- she was still talking about

11    other possibilities, you know, when I -- in the first

12    initial -- after she checked my credit score and I did the

13    loan application, there was -- it was still not solid what

14    the loan would be.

15    Q.    Can you turn to Exhibit 26, please?  Ms. Mills,

16    Exhibit 26 is a copy of a good faith estimate settlement --

17    for settlement charges.  Have you ever seen a copy of this

18    document before?

19    A.    I'm not sure if I've seen it before.

20    Q.    Okay.  If you could turn to the next page, the second

21    page of this exhibit.  At the center of that page is that

22    your signature?

23    A.    Yes, it is.

24    Q.    Okay.  Is -- does that refresh your recollection of

25    whether or not you've seen this document before?

1    A.    Yeah.

2    Q.    Okay.  And this is a copy of a document that you

3    reviewed and signed on July 7, 2005.  Is that correct?

4    A.    Well that's what I have it dated so I must have signed

5    it that day.

6    Q.    Okay.  And if you look at the last section of the

7    second page on the right hand side, it's a little bit

8    difficult to read.  It says down payment $137,500.  Is that

9    correct?

10   A.    I'm sorry, what page, the second page?

11   Q.    The second page where your signature is, the next

12   section below your signature.  It says down payment

13   $137,500.

14   A.    Correct.

15   Q.    Okay.  So as of July 7, 2005, Ms. Le Teau had provided

16   you with the good faith settlement charges, assuming that

17   you had a 90 percent finance -- had 90 percent financing on

18   the loan?

19   A.    Okay.

20   Q.    Is that correct?

21   A.    That's correct.

22   Q.    Okay.  And this is going to be really difficult to

23   read.  If you look at the bottom where it says cash to close

24   --

25   A.    Yeah, I can --

1   Q.    Ms. Mills -- Ms. Le Teau -- I'm going to -- Ms. Le

2   Teau tried to tell you exactly how much you were going to

3   need to close on the property. Is that correct?

4   A.    Correct.

5   Q.    Okay.  If I represented to you that that was

6   approximately $150,000 would that sound about right to you?

7   A.    That sounds about right, yeah.

8   Q.    Okay.  There's a clearer version of this, but it

9   doesn't have your signature on it.  Okay.  So as of July 7,

10  2007, you knew that you were going to need a down payment of

11  $137,500 for the property, plus closing costs.  Correct?

12  A.    Correct.

13  Q.    Okay.  If you turn to Exhibit 127, please.

14          THE COURT:  I'm sorry, which one?

15          MS. ZIEG:  127, sir.  Ms. Mills, do you know what

16  this document is?

17          MS. MILLS:  It's a declaration of mine in support

18  of the administrative expense claim.

19          MS. ZIEG:  Okay.  And if you look at Paragraph

20  11.  I'm sorry, Your Honor, have you gotten to that document

21  yet?

22          THE COURT:  No.

23          MS. ZIEG:  I'm sorry.

24          THE COURT:  Okay.  I'm caught up.

25  BY MS. ZIEG:

1  Q.    Okay.  Paragraph 11 of that document, Ms. Mills.

2  A.    Um-hum.

3  Q.    You represented in your administrative claim that Ms.

4  Le Teau had come back to you with a down payment of $68,000

5  and closing costs of around $20,000.  Is that correct?

6  A.    Correct.

7  Q.    That's what it states there.  But that's inaccurate,

8  isn't it?

9  A.    Well, remember, I first talked to her, it was the week

10 of the 29th.  And then that's what she was telling me that's

11 what we were aiming for.  So the 29th, and I didn't sign

12 that doc till the 7th.  I mean, you know, we had talked

13 about different variables.

14 Q.    But this is within five days she came back, so this is

15 after your conversation with her on the 29th.

16 A.    Yeah, so the 29th, 30th.

17 Q.    And she told -- you said that she couldn't get you

18 anything less than 90 percent financing.  So if she came

19 back to you and stated that we could do a loan, but it would

20 need to be down payment of around $68,000, that's

21 inaccurate.

22 A.    She was trying to match Bridgeport's.  This was -- on

23 the 7th, that was the day that I gave her release of credit

24 score.  We were on the phone from morning till -- you know,

25 faxing back and forth things.

1  Q.     So you were talking to her and she was trying to

2  obtain a loan that only required 5 percent down?

3  A.     That's what she first --

4  Q.     But all she could eventually do was get you 10 percent

5  down?

6  A.     Exactly.

7  Q.     Okay.  Also in this document in Paragraph 12, the next

8  paragraph, you represent that Ms. Le Teau didn't get back to

9  you for several days, but that you were still comfortable

10  with her.  And that when she did get back to you, she

11  informed you there was a problem.  Is that correct?

12  A.     Correct.

13  Q.     Okay.

14  A.     Well, yeah, correct.

15  Q.     Okay.  And in your declaration, you state that she

16  told you that your credit score was a few points off.

17  Correct?

18  A.     Correct.

19  Q.     But that at that time, she represented to you that the

20  debtors would make an exception, but your down payment would

21  have to be increased to $212,500.  Is that correct?

22  A.     Correct.  And an additional $75,000, correct.

23  Q.     And then in Paragraph 13 of your declaration, you

24  stated that you were shocked by that, but at that point in

25  the conversation, she told you you could pull out at least

1   $50,000 within two months.  Is that correct?

2   A.    Correct.

3   Q.    Is that your testimony that on the phone that day she

4   told you that you could pull out at least $50,000?

5   A.    Yes.

6   Q.    So in the same conversation, she told you your credit

7   score had gone down one point?

8   A.    Um-hum.

9   Q.    You told her that you were concerned about that.

10  Correct?

11  A.    Yes.

12  Q.    And immediately she told you you could probably pull

13  out about $50,000 within two months of closing on the loan?

14  A.    Correct.

15  Q.    But she never went back to the debtors.  It was in the

16  same conversation.  Correct?

17  A.    We had that conversation and I said that I had to

18  discuss this with Anthony and we needed a couple days to

19  think about this.  And then Anthony had called her and spoke

20  to her.  And then we got back with her on that Monday and

21  she gave the assurance that that could be done.

22  Q.    But she gave you the assurance on the phone call that

23  you had with her --

24  A.    Yes.

25  Q.    -- on the 15th.  Correct?

1   A.     Correct.

2              MS. ZIEG:  At the same time, she told you --

3              MR. STAMOULIS:  Objection, Your Honor.  I mean,

4   Ms. Mills just clarified that she got that assurance on

5   Monday and I think that misstates her just recent testimony.

6              THE COURT:  Overruled.  You can get into that on

7   redirect.

8              MS. ZIEG:  So in that same conversation, she told

9   you that you could pull out the $50,000.  Correct?

10             MS. MILLS:  Correct.

11             MS. ZIEG:  But she never went back to the debtors

12  after you told her you had concerns about closing on a loan

13  that increased your down payment by $75,000.  Correct?

14             MR. STAMOULIS:  Objection, Your Honor.  That

15  calls for speculation as to whether Ms. Le Teau ever went

16  back to the debtors.

17             MS. ZIEG:  I'm asking for her testimony about

18  what happened on that conversation.

19             THE COURT:  Overruled.  Do you understand the

20  question?

21             MS. MILLS:  I understand the question.  She

22  called me up about the exception and, of course, anyone was

23  going to be concerned if they have to come up with more

24  money down.  I can only assume that she, you know, this was

25  going to be a concern that she knew all of the options of

1  what we could do.

2          MS. ZIEG:  So you're speculating that Ms. Le Teau

3  was giving you options before you told her you had concerns?

4          MS. MILLS:  I'm not Tonya.  I can only assume

5  that any good broker would know all the possibilities.

6          MS. ZIEG:  Okay.  And based on your conversations

7  with Ms. Le Teau between June 29, 2010 and July 7 and a

8  little bit thereafter --

9          THE COURT:  You said 2010.

10          MS. ZIEG:  I'm sorry.  Yeah, I'm way ahead.  June

11  29, 2005 and July 7, 2010, you decided to submit a loan

12  application.  Correct?

13          MS. MILLS:  Correct.

14          THE COURT:  You said 2010 again.

15          MS. ZIEG:  Did I do that?  I'm so sorry.

16          THE COURT:  It's all right.  Just for the record,

17  we should be right.

18  BY MS. ZIEG:

19  Q.    I appreciate that.  I'm going to write 2005 over here.

20  So you testified today that you -- that Ms. Le Teau sent you

21  via email a loan application.  Is that correct?

22  A.    Correct.

23  Q.    And that you filled out that loan application by hand.

24  Correct?

25  A.    By hand, yes.

1  Q.    And that you sent that loan application back.

2  A.    I faxed it back to her.

3  Q.    You faxed it back to her or Mr. Esquivel --

4  A.    No.

5  Q.    -- delivered it back to her?

6  A.    No, no, I faxed it back to her.

7  Q.    Okay.  So you faxed a copy of the loan application

8  back to Ms. Le Teau and then she typed it up.

9  A.    Correct.

10  Q.    And that is what became the loan application that was

11  submitted to AHM?

12  A.    Correct.  I --

13  Q.    And prior to submitting that loan application to AHM,

14  you reviewed it and sign it.

15  A.    No, I did not.

16  Q.    You did not sign it.

17  A.    She verbally went over on the telephone what the loan

18  application was.  I didn't sign the loan application until

19  July 15.

20  Q.    Okay.  And --

21  A.    At the escrow office.

22  Q.    Okay.  And on July 15, when you signed the loan

23  application, did you review the loan application?

24  A.    No, I did not.  I was signing all kinds of papers.  I

25  did not take the time to go through all those docs.

1  Q.    Okay.  So you just signed the loan application without

2  reviewing what you were submitting to the debtors in

3  obtaining a loan for $1.1 million?

4  A.    Correct.  They -- Ms. Philipino had stacks of papers

5  and she would briefly go okay, this is this, sign here, this

6  is this, sign there.  I mean, it was a huge stack of papers.

7  Q.    Ms. Mills, didn't you previously testify that you went

8  into -- when you went into Ms. Philipino's office on July

9  17, that was the time that she went over everything with you

10 very carefully and gave you an explanation of everything you

11 were signing?

12 A.    It was on July 15.

13 Q.    I'm sorry, July 15, 2005, when you went into Ms.

14 Philipino's office, at that point in time, the documents you

15 signed that day she went over with you carefully.

16 A.    Yeah, well, more carefully than on the other days that

17 I went in and signed.  She said, here's your loan

18 application, sign this.  This is your disclaimer or, you

19 know, she briefly, you know, the other times when I went in

20 to sign it was just kind of like sign, sign, sign, sign.  I

21 mean, her indepthness it's kind of -- I don't know how to

22 put it on a scale.

23 Q.    Could you turn to exhibit -- Debtors' Exhibit 1, Ms.

24 Mills.

25 A.    I'm here.

1   Q.    Okay.  And the third page in, it says 73 are the last

2   two numbers.

3   A.    On -- yes, 73.

4   Q.    Okay.  And is that your signature, Ms. Mills on Page

5   73?

6   A.    Yes, it is.

7   Q.    And it's dated the 15th of July 2005?

8   A.    Correct.

9   Q.    And do you understand what the acknowledgement above

10  your signature is stating?

11  A.    I'd have to read it.  I mean --

12  Q.    Did you read it before you signed the document?

13  A.    No, I did not.

14  Q.    But you initialed and signed every page of this

15  document.  Correct?

16  A.    Correct.

17  Q.    And you understood that this was your loan application

18  that was being submitted to the debtors.  Correct?

19  A.    Correct.

20  Q.    And you understood that this loan application was the

21  loan application upon which the debtors would be basing

22  whether to underwrite your loans?

23  A.    Correct.  I mean --

24  Q.    Okay.  If you will turn to the first page of this

25  exhibit.  Under the -- I'm going to use II is the second

1  section.  The sections are in the darker shaded area.  It

2  says property information and purpose of loan.  It says --

3  the bottom block in that section says sources of down

4  payment.

5  A.    Yes.

6  Q.    Okay.  And it says checking, savings, and CD.

7  Correct?

8  A.    Yes, but the CD should not have been there.

9  Q.    But you represented at your -- the CD shouldn't be

10  there?

11  A.    No.

12  Q.    Okay.

13  A.    It was never intended to be used for the down payment.

14  Q.    And what CD is that?

15  A.    The Singh Bank CD.

16  Q.    And that's the Singh Bank CD?

17  A.    Correct.

18  Q.    Okay.  You had no other CD's?

19  A.    That was it.

20  Q.    Okay.  So Ms. Le Teau put the CD in that section, but

21  you didn't authorize her to put it there.  Is that correct?

22  A.    I did not --

23  Q.    Is that your testimony?

24  A.    Correct.

25  Q.    Okay.  If you could turn to the next page, monthly

1  income and combined income.  I'm sorry, combined housing

2  expense information.

3  A.    Yes.

4  Q.    I believe you testified in your direct examination

5  that Ms. Le Teau filled in this section of the loan

6  application.  Correct?

7  A.    Correct.

8  Q.    And you stated that your gross income was nowhere near

9  $28,000.  Is that correct?

10  A.    Correct, not per month.

11  Q.    But Ms. Mills, at your deposition, didn't you testify

12  that your gross income for the second half of 2004 and the

13  first half of 2005 was at least on average $28,000 a month?

14  A.    You know, at that deposition, I was mortified.  I made

15  a mistake.  And I was just -- I had never been through a

16  process like that and I made a mistake.

17  Q.    You made a mistake as to whether or not in your

18  deposition you represented you made $330,000 a year?

19  A.    I wasn't doing the math at the deposition.  I was --

20  I'm sorry, you guys scared me.

21  Q.    And with respect to your first -- your 2004 income,

22  you testified at your deposition that you made approximately

23  $290,000 just in the Year of 2004.  That's what you

24  testified to at your deposition.  Is that correct?

25  A.    I don't remember.

1  Q.    Well let's turn to your deposition.

2           THE COURT:  Ms. Mills, were you represented by

3  counsel at the time of your deposition?

4           MS. MILLS:  Yes, I was.

5           THE COURT:  Okay.  Where are we?

6  BY MS. ZIEG:

7  Q.    Okay.  If we turn to Page 317, Line 10 when we're

8  talking about your loan application.

9  A.    Which line, I'm sorry?

10  Q.    It's Line 10.  317, Line 10.  It's in green.

11  A.    Yes.

12  Q.    You testified -- and then do you see on the left side

13  of the column it says gross, gross monthly income.  You

14  answered um-hum.  What is your understanding what that

15  means?  That's before income tax.  It's the best way to --

16  that's the best way to say gross.  That's the best way to

17  say what gross is.  Is that correct?

18  A.    Correct.

19  Q.    So you knew exactly what Mr. Beach was talking about

20  at your deposition when you were talking about gross income.

21  Correct?

22  A.    Correct.

23  Q.    And then if you turn to Page 319, Line 13, Mr. Beach

24  questions so that would be -- and then you go a year beyond,

25  the next half of the year, how much did you make in the

1  first six months of 2004?  And you answered 2004, I don't

2  remember, okay.  Do you have any approximation?  I don't.

3  Do you think it's $28,000 a month gross?  Probably pretty

4  close, I think.  Pretty close?  Yeah.  Do you think it was

5  at least $20,000 a month gross?  At least, yeah.  So for

6  2004, for the first half of the year, you believe you made

7  approximately $28,000 a month gross and for the other half

8  of the year, approximately $20,000 a month gross?  If you

9  average it out, yeah.  Was that your testimony?

10 A.    Yes, it was but if -- you know, 2004, I don't

11 remember.  On Line 17, I was going through the process of

12 the deposition and the discovery.

13 Q.    Okay.  So let's talk about 2005 then.  If you turn to

14 Page 321.  Actually, I probably should start on 320.  So in

15 2004, you made -- I'm sorry, line -- I'm going to start with

16 16.  It makes it -- it flows better, I apologize.  So 320,

17 Line 16.  So in 2004, you made approximately $290,000 gross.

18 And in 2005, you said through July 15, you were making on

19 average $28,500 a year.  I'm sorry is that correct, gross

20 again?  Correct, gross.  And then for the rest of the year,

21 so between July 15 and the end of the year, December 31,

22 that you would say your average income, gross income per

23 month and it dropped like a rock because we had moved.  And

24 then if you move to Line 9, you say approximately how much

25 do you think?  After July 15?  Yes, it dropped.  It went

1  down.  It dropped like a rock.  I mean, anywhere from $5,000

2  to $10,000 gross.  It dropped to gross.  So $5,000 to

3  $10,000 a month on average?  On average, yes.  So you were

4  making at least $5,000 a month gross?  On average.  So that

5  would be for August, September, November, and December, a

6  five month period?  Yes.  And then you go on to continue

7  about the conversation about that half of the year, until

8  you get to Line 6 on 322, Line 6.  And the question is and

9  then for the rest -- the first seven months of the year, you

10 were making approximately $28,000 a month?  Yes.  That's

11 because I moved from Ventura to a whole new community,

12 right?  So for the first seven months, you made

13 approximately $170,000.  Does that sound right?  Gross, yes.

14 Was that your testimony, Ms. Mills?

15 A.    Yes, it was.

16 Q.    Turning back to Exhibit 1 under assets which is in

17 Section 6, the same page, this is the CD Bank, I mean, the

18 Singh Bank CD we were discussing.  Correct?

19 A.    Correct.

20 Q.    And you testified on direct examination that the CD

21 shouldn't have been on the first page of the source of down

22 payment, but it should have been on this page.  Is that

23 correct?

24 A.    As an asset, yes.

25 Q.    It was an asset of yours?

1  A.     Yes.

2  Q.     That's correct.  Okay.  And you testified on your

3  direct examination that that CD was created in 2003.

4  Correct?

5  A.     Correct.

6  Q.     Do you recall that at your deposition, you thought

7  that CD was created in 2005?

8  A.     No, I did not.

9  Q.     If you'll page -- turn to Page 291, Line 5.

10  A.     What page?

11  Q.     291.  It's actually 290, if you start at the end.  It

12  says Line 23.  The question was I'd like to know what your

13  recollection is in terms of when that CD is established.

14              THE COURT:  It says escrow.

15              MR. BEACH:  I'm sorry, escrow.  We're talking

16  about the CD.  Can we stipulate that we're talking about the

17  CD?

18              THE COURT:  All right, well if we're going to

19  quote the deposition --

20              MS. ZIEG:  Ms. Mills?

21              THE COURT:  -- let's be accurate.

22              MS. ZIEG:  I apologize.

23              MS. MILLS:  I'm sorry, where -- 291, where are

24  you starting?

25              MS. ZIEG:  I'm sorry, 290, Line 23.

1          MS. MILLS:  29?

2          MS. ZIEG:  Um-hum.  Are we discussing the CD on

3    that page, Ms. Mills?

4          MS. MILLS:  Yes, we are.

5          MS. ZIEG:  Okay.  S in Line 23, it starts I'd

6    like to know what your recollection is in terms of when that

7    escrow is established.  Did you understand that that escrow

8    was the CD in that question?

9          MS. MILLS:  No.

10         THE COURT:  If you don't recall, ma'am, you don't

11   recall.

12         MS. MILLS:  I don't recall.

13   BY MS. ZIEG:

14   Q.   Okay.  So you don't recall if the CD was what you were

15   talking about in that line of questioning?

16   A.   It's unclear to me.

17   Q.   Okay.  Okay.  Turning back to the loan application,

18   the second page where it says the CD.

19   A.   Um-hum.

20   Q.   The Singh Bank escrow, well it's called escrow.

21   Correct, Ms. Mills on your loan application?  It says Singh

22   Bank escrow on your loan application.

23   A.   Where is it?

24   Q.   We were just talking about assets under 6.

25         THE COURT:  It's Exhibit 1.

1          MS. MILLS:  Yes.  Are we on Page 1 or 2?  Where

2  are we at?

3          MS. ZIEG:  Page 2.

4          MS. MILLS:  Page 2.

5          MS. ZIEG:  Of Exhibit 1.

6          MS. MILLS:  Of Exhibit 1, correct.

7          MS. ZIEG:  Okay.

8          MS. MILLS:  Okay, I see it, yes.

9  BY MS. ZIEG:

10 Q.    Do you see the Singh -- it's called Singh Bank escrow?

11 A.    Yes, yes.

12 Q.    Okay.  And it states that it was for $500,000.

13 Correct?

14 A.    Correct.

15 Q.    And at your deposition, you testified that you didn't

16 have access to these funds.  Correct?

17 A.    It was -- the CD was set up by Anthony in Elia

18 Management.  It was not for the purpose of the house.  It

19 was for the business for Elia Management.

20 Q.    So the name on that account was Elia Management?

21 A.    No, it was put in my name.

22 Q.    It was put in your name alone?

23 A.    My name alone.  Correct.

24 Q.    Okay.  And on your direct examination, you testified

25 that Mr. Esquivel set up that CD in your name alone, but it

1  was your money and also investor's money?

2  A.    Correct.

3  Q.    And so you had money in that CD as well?

4  A.    Well I had invested in Elia Management.

5  Q.    But you didn't invest in that CD?

6  A.    Per se.

7  Q.    So your money and investor's money was combined in

8  that CD.  Correct?

9  A.    Correct.

10  Q.    But it was only in your name?

11  A.    Correct.

12  Q.    And you testified that Mr. Esquivel set that CD up

13  through his company, Elia Management.  Correct?

14  A.    Correct.

15  Q.    You also testified that the CD was collateralized.  Is

16  that correct in your deposition?

17  A.    It wasn't meant to be -- I can't say that word,

18  collateralized.

19  Q.    Okay.

20  A.    But it was an asset of mine.

21  Q.    Okay.  It was an asset of yours?

22  A.    Um-hum.

23  Q.    But it was also an asset of these investors as well.

24  Is that correct?

25  A.    Correct.

1  Q.    But only your name is on the account statement.

2  A.    Correct.

3  Q.    I'd like to talk about the account statement for a

4  moment.  It's Debtor's Exhibit 17.  If I may approach, I

5  have a better copy of 17.

6            THE COURT:  Yes.  Thank you.

7  BY MS. ZIEG:

8  Q.    Ms. Mills is this a copy of the account statement you

9  provided to Ms. Le Teau as support for your loan

10 application?

11 A.    Correct.

12 Q.    And on this account statement, it states Ms. Deborah

13 Mills?

14 A.    Yes.

15 Q.    As the account holder?

16 A.    Yes.

17 Q.    Okay.  Are you aware that an account statement titled

18 in your name entitles you to 100 percent of the funds in

19 that account?

20 A.    But it wasn't -- it was for the use of the business

21 and I knew that for Elia Management, even though --

22 Q.    But did the debtors know that when you submitted this

23 account statement?

24            MR. STAMOULIS:  Objection, Your Honor, calls for

25 speculation.

1            THE COURT:  Sustained.

2            MS. MILLS:  I have no idea.

3            THE COURT:  Answer stricken.

4  BY MS. ZIEG:

5  Q.    So you were aware that the account was titled in your

6  name.  Correct?

7  A.    Correct.

8  Q.    And were you also aware that when an account is titled

9  in your name that you control the funds in that account?

10  A.    I had -- no.  It was in Elia Management's -- it was

11  for the purpose of Elia Management and the other investors,

12  but it's also an asset of my own.

13  Q.    But it wasn't a $500,000 asset of your own because

14  that was mixed with other people's money.  Correct?

15  A.    But the CD was put in my name.

16  Q.    Did you explain anywhere on your loan application that

17  the CD was in your name, but it didn't necessarily identify

18  the funds were yours?

19  A.    I was never asked that question.  I submitted this and

20  --

21  Q.    Did you ever discuss with Mr. Esquivel accessing your

22  funds in this CD to cure the default on the loans?

23  A.    No.  This was for use of Elia Management.  It was --

24  Q.    So even the funds in here that were your funds, you

25  couldn't use?

1   A.    No, because that was for the business.  That was for

2   Elia Management.  That was allotted to somewhere else.  And

3   as I explained in my depo with you, Anthony can explain it

4   better.  I don't know -- he's the Series 65 investment

5   advisor.

6   Q.    Well, at your deposition, you didn't explain it, as

7   well, as you did on your direct testimony today.  So did you

8   have a conversation with Mr. Esquivel explaining to you how

9   this CD worked?

10  A.    Afterwards, yeah.

11  Q.    But you didn't ask him whether or not you could have

12  accessed the funds to pay --

13  A.    That -- when the CD was taken out in 2003, it was for

14  the use of Elia Management to start his company and that was

15  understood.  And it was never to be tapped into for personal

16  reasons.

17  Q.    If you'll turn back to Exhibit 1, Ms. Mills.  Turning

18  to the next page, it's the third page.  It has your

19  signature on it.  And it has Bates number 73 at the bottom.

20  A.    Yes.

21          THE COURT:  Where are we, Exhibit 1?

22          MS. ZIEG:  I'm sorry, we're still back at --

23  we're back at Exhibit 1, Your Honor.

24          THE COURT:  Okay.

25          MS. ZIEG:  I apologize.

1              THE COURT:  No, no.  Page 3?

2              MS. ZIEG:  Page 3, yes.  It's very small, but you

3    can see at the bottom center of the page, it says Page 3 of

4    4.

5              THE COURT:  Um-hum.

6    BY MS. ZIEG:

7    Q.    I'm just giving you the Bates numbers because it's

8    more easily identifiable.  If you look at Page 3 and the

9    section is 8 declarations, it's on the right hand side of

10   the page.  Do you see that?

11   A.    Yes, I do.

12   Q.    And D.  It says are you a party to a lawsuit?  Do you

13   see that?

14   A.    Yes, I do.

15   Q.    And you testified at your deposition that the -- you

16   answered to that question no, but that was inaccurate.

17   Correct?

18   A.    Correct.

19   Q.    And you, in fact, were involved in litigation that was

20   directly related to the settlement funds from a prior home

21   that you had that you used for your down payment.

22   A.    But that was -- that case was dismissed.  I knew it

23   was going to be dismissed.  I had met with the mediators.

24   It was a frivolous lawsuit from an ex-boyfriend.

25   Q.    But that case was pending at the time.  Correct?

1  A.    It was pending at the time, but there was no merit to

2  it and I knew it.

3  Q.    So you testified that the reason you didn't list it

4  here was because there was no merit to the case?

5  A.    There was no merit to it.  There was absolutely no

6  merit to it.

7  Q.    But it was directly related to settlement proceeds

8  that you used as a down payment for your home.  Correct?

9  A.    It was a frivolous lawsuit that was without merit.

10 Q.    If you turn to H in that same section.  It says is any

11 part of the down payment borrowed?  Do you see that?

12 A.    Yes, I do.

13 Q.    And you checked no.  Correct?

14 A.    Yes.

15 Q.    That's not accurate is it?

16 A.    No, but Tonya Le Teau was made aware when we had that

17 meeting in her office, that were going to have to come up

18 with money from somewhere.  She was aware of it.

19 Q.    And did you tell her you were going to be borrowing

20 the money?

21 A.    Yes.

22 Q.    Did you tell her you needed to update your loan

23 application?

24 A.    I -- she's the broker.  I don't know why she didn't

25 update it.  And if you noticed, this was signed on the 15th

1  and that's when the -- in between the -- you know, the

2  exception.  This was signed before she came back to me with

3  the exception.

4  Q.   Okay.  And Ms. Mills, did you borrow money for your

5  down payment?

6  A.   Yes, I did.

7  Q.   And how much money did you borrower for your down

8  payment?

9  A.   I borrowed $162,500 from Ernie Quhen.

10  Q.   Okay.  And when you were originally applying for the

11  loan did you think you --

12        THE COURT:  Wait a minute, wait a minute, wait a

13  minute.  You -- this dated July 15.

14        MS. MILLS:  Correct.

15        THE COURT:  And you had the -- that was the day

16  she came back and said it has to be a different setup

17  because of the credit score?

18        MS. MILLS:  Correct.

19        THE COURT:  Okay.

20        MS. MILLS:  I was in the escrow office in the

21  morning and she called me that afternoon.

22        THE COURT:  Oh, that afternoon.  And then you

23  found out that that meant you needed $75,000 more.

24        MS. MILLS:  Correct.

25        THE COURT:  But you borrowed $172,000.

1              MS. MILLS:  $162,000.

2              THE COURT:  All right.  Had you always planned on

3    borrowing money?

4              MS. MILLS:  No, we were -- a payment was supposed

5    to be coming in to Elia Management and that was forestalled

6    and that's why we did the loan with Ernie.

7              THE COURT:  Um-hum, okay.

8    BY MS. ZIEG:

9    Q.    Ms. Mills, you testified that there was money that you

10   were expecting to come into Elia Management that was

11   stalled.

12   A.    Um-hum.

13   Q.    And when was that money stalled?

14   A.    The week of closing escrow.

15   Q.    The week of closing escrow?

16   A.    Yes.

17   Q.    And so as a result of that, you had to borrow money

18   from Mr. Quhen.  Correct?

19   A.    Yes, correct.

20   Q.    So if that money had come in, then you wouldn't have

21   had to borrow money from Mr. Quhen?

22   A.    Correct.

23   Q.    And you most likely wouldn't have needed money from

24   the debtors to pull out as equity on the loan either, would

25   you?

1  A.    No, we still needed to be able to have that.

2  Q.    Well how much money was coming in from Elia Management

3  that didn't come in?

4  A.    Well, that was -- I don't remember.  You're going to

5  have to -- I can't speak for what Anthony had coming in from

6  his client.

7  Q.    Ms. Mills, you testified that you were obtaining a

8  $68,000 gift from Mr. Esquivel to assist with the down

9  payment on the house.  Correct?

10  A.    Correct.

11  Q.    And that you were getting $58,000 from the settlement

12  of your home that was involved with pending litigation.

13  Correct?

14  A.    The house had been sold in April.

15  Q.    Correct.  But you still had those funds?

16  A.    Yeah.

17  Q.    And you used that $58,000 for the down payment on this

18  house.  Correct?

19  A.    Yes.

20  Q.    If Mr. Esquivel's money from Elia Management was going

21  to be used as a source of down payment, where is that listed

22  on this loan application?

23  A.    I don't know.  As I told you, Tonya filled this out.

24  She requested also the gift letter from Anthony and I did

25  not sign this until I was in the escrow office.

1  Q.    But the gift letter only identifies $68,000 being

2  gifted.  Is that correct?

3  A.    That's correct.

4  Q.    Were you going to borrow the money from Elia

5  Management or Anthony that was coming in that didn't come

6  in?

7  A.    We were buying the house together even though it was

8  in my name.

9  Q.    Was he going to be gifting you that money?

10 A.    I guess you say it was being gifted.  I --

11 Q.    Turning back to the money that you borrowed from Mr.

12 Quhen for your down payment, did you tell Mr. Quhen that you

13 just needed that down payment or that loan for a short

14 period of time?

15 A.    Correct.

16 Q.    And why did you tell him you only needed it for a

17 short period of time?

18 A.    Because we believed that the -- Anthony's clients were

19 making the investment that they promised to do and that's

20 where the money was going to be coming in for the rest of

21 the down payment.  That went south.

22 Q.    So you weren't able to pay Mr. Quhen back because

23 Anthony's money didn't come in for Elia Management.

24 Correct?

25 A.    Correct.

1  Q.    And so when the 16 days expired at the end of the

2  promissory note --

3  A.    Um-hum.

4  Q.    -- you weren't able to pay back, Mr. Quhen?

5  A.    No, I was not.

6  Q.    You also testified that -- I'm sorry.  are you also

7  aware that Mr. Quhen in his lawsuit against you, stated that

8  you had told him that you never closed escrow on the house?

9  A.    I don't remember that.

10 Q.    I apologize.  Did you tell Mr. Quhen, that the money

11 that you were -- that the loan that was funding the purchase

12 of the property never came through?

13 A.    I'm sorry, can you repeat that?

14 Q.    Did you testify -- did you tell Mr. Quhen that the

15 money that you were using to fund the loan never came

16 through?

17 A.    Yes, we told him.

18 Q.    And when did you tell him that?

19 A.    As soon as we found out.  I don't know the date.

20 Q.    Ms. Mills, you testified that you put the utilities

21 for the house in your name.  Is that correct?

22 A.    Correct.

23 Q.    And you did that so that the utilities were on in the

24 house as of July 8.  Correct?

25 A.    Correct.

1  Q.    Even though you hadn't purchased the property yet.

2  A.    Correct.

3  Q.    And that you had entered into an amendment to the

4  escrow with the builder.  Is that correct or the seller?

5  A.    Correct.

6  Q.    Correct.  And that pursuant to that escrow agreement,

7  you had to put an additional $55,000 into escrow.  Is that

8  correct?

9  A.    Correct.

10  Q.    And then you had to pay an additional $350 per day

11  from July 6 until you closed.  Is that correct?

12  A.    Correct, yeah.

13  Q.    Ms. Mills, do you know the disposition of the $212,500

14  you paid at closing?  Do you know what happened to that

15  money?

16  A.    I'm assuming it went to American Home Mortgage.

17  Q.    Do you think it went to American Home Mortgage or do

18  you think it went to the seller of the property?

19  A.    I guess it went to the seller of the property.  I'm

20  getting confused.  It went to the seller of the property and

21  then American Home Mortgage funded the rest.

22  Q.    Okay.  You testified that you made one payment in

23  September of 2005.  Correct?

24  A.    Correct.

25  Q.    And that you didn't make another payment after that.

1  Correct?

2  A.    Correct.

3  Q.    Okay.  And that you attempted to cure the default

4  vigorously.  Correct?

5  A.    Correct.

6  Q.    You also testified that the movers that moved you into

7  the Burnt Rock property were -- strike that.  That the

8  movers who moved you into the property had stolen a lot of

9  your property.  Correct?

10  A.    Correct and destroyed a lot of things.

11  Q.    And destroyed a lot of your property.  Correct.  And

12  you also testified that they cleaned out your bank account.

13  Correct?

14  A.    The one account I had that they had access to with my

15  debit card, yes.

16  Q.    Okay.  And you testified that they had damaged your

17  property that you used in your business.  Correct?

18  A.    Correct.  Well the main thing was my computer.

19  Q.    Okay.  And you --

20  A.    That they took.

21  Q.    The main thing was your computer?

22  A.    Well, one of the main things, yes.

23  Q.    And your video camera equipment.  Correct?

24  A.    Correct.

25  Q.    Did they steal any tools?

1  A.    No, but they -- anything that was electronic they

2  took.

3  Q.    And you testified that the property that was stolen by

4  the movers whether it was items or funds impacted your

5  business.  Is that correct?

6  A.    It impacted everything, yes.

7  Q.    And, in fact, you testified that it negatively

8  impacted your business.  Correct?

9  A.    Correct.

10 Q.    And you testified that it, in fact, severely

11 negatively impacted your business.  Is that correct?

12 A.    Correct.

13 Q.    You further testified that after moving into the Burnt

14 Rock property, that the economy started to change.  Correct?

15 A.    Correct.

16 Q.    And that no homes were selling and that there was no

17 use for your design services.  Correct?

18 A.    It ended up being that way, but no, I still maintained

19 clients down in Ventura and did work down in Ventura and

20 Malibu.

21 Q.    So did it decrease or did it stay the same?

22 A.    It decreased.  Well, first of all, I was new to a new

23 area and I never had that opportunity to jumpstart my

24 business in that area.  So I was driving down to Ventura and

25 Malibu and doing projects where I was known and I was

1  recognized.  And you have to also remember that we were

2  coming upon the winter months and not a lot of work happens

3  during the rainy season.

4  Q.    You also testified that you moved to San Luis Obispo

5  for the job with Pacific Horticulture. Correct?

6  A.    Correct.  And as I mentioned, the city council put

7  that job on hold.

8  Q.    And when did the city council put that job on hold?

9  A.    I don't remember the exact date, but it was -- I

10  believe the start date was supposed to be in September and

11  then they postponed it.  I'm --

12  Q.    So in September of 2005, Pacific Horticulture stalled

13  the project that you were relying on for income for the next

14  coming year.  Correct?

15  A.    Well it wasn't my sole income.  I also did landscape

16  and I had my business and I was writer and that was part

17  with the computer where I lost all my articles, ten years

18  worth of writing, my photographs, my portfolio.

19  Q.    And all of those things severely impacted your ability

20  to have a steady income.  Correct?

21  A.    Yes, it had an impact.

22  Q.    If you could turn to Exhibit 160, please.

23          THE COURT:  Let's actually -- let's take a short

24  recess right now.

25              (Recess from 4:10 p.m. to 4:21 p.m.)

1        THE CLERK:  All rise.

2        THE COURT:  Please be seated.

3        MS. ZIEG:  Thank you, Your Honor.  Ms. Mills

4  before the break, we were turning to Exhibit 160.  Correct?

5        MS. MILLS:  Okay.

6        THE COURT:  Okay.

7  BY MS. ZIEG:

8  Q.    Ms. Mills is Exhibit 160, a letter that you wrote to

9  Amanda Ellsworth of American Home Mortgage Servicing?

10  A.    Correct.

11  Q.    And you previously testified that you were working

12  with Amanda Ellsworth and Carol Oats.  Is that correct?

13  A.    Correct.

14  Q.    And that Ms. Oats and Ms. Ellsworth -- I'm sorry, Ms.

15  Oats and Ms. Ellsworth worked for American Home Mortgage

16  Servicing.  Correct?

17  A.    Correct.

18  Q.    And that they worked in servicing's loss mitigation

19  department.  Correct?

20  A.    Correct.

21  Q.    And they were working with you to cure the defaults on

22  the loan or reinstate the loans.  Correct?

23  A.    Correct.

24  Q.    And that was at or about the time of May of 2006.

25  Correct?

1  A.    Correct.

2  Q.    Okay.  And this is the letter that you sent to Ms.

3  Ellsworth regarding the circumstances that caused the

4  defaults on your loan.  Correct?

5  A.    Correct.

6  Q.    And in the first paragraph of that letter, you

7  represented to Ms. Ellsworth that -- I'm sorry, the second

8  paragraph of this -- sorry, one moment, I'm not doing very

9  good here.  The third paragraph of this letter, you

10  represented that American Eagle Moving Company not only

11  destroyed much of my personal property, but that they and

12  emptied my bank account.  Correct?

13  A.    Correct.

14  Q.    And that's the moving company we previously discussed.

15  Correct?

16  A.    Correct, um-hum.

17  Q.    And then you stated that the biggest financial hit was

18  that they have the audacity to take my computer.  The

19  critical issue with my computer was that it was customized

20  for my landscaping business.

21  A.    Correct.

22  Q.    Is that correct?

23  A.    Yes.

24  Q.    Okay.  You also testified in the -- I'm sorry.  You

25  also represented to Ms. Ellsworth on the next page, the

1  second full paragraph, that the one and final decision

2  making factor to relocating to the area or this area was

3  that I would be able to secure additional income by working

4  with the California based corporation, Pacific Horticulture.

5  Is that correct?

6  A.    Correct.

7  Q.    Okay.  And then the third paragraph down from there

8  you represent that that job was supposed to commence in

9  September of 2005.

10  A.    Correct.

11  Q.    Okay.  You also represented that you in late -- I'm

12  sorry, in the two more paragraphs down, the last paragraph

13  on that page, you represented that in late September, you

14  were contacted to design and install landscape for over 35

15  homes.  Correct?

16  A.    Correct.

17  Q.    And that in the next paragraph, you represent that due

18  to the rainy season, those 35 homes were stalled.  Is that

19  correct?

20  A.    Correct, yeah.

21  Q.    And then in the next paragraph which is the first full

22  paragraph on the page with Mills 127 at the bottom right

23  hand corner, you represent that you were working with Lane

24  Nosara.  Is that how you pronounce it?

25  A.    Nosara.

1  Q.    Nosara.

2  A.    Um-hum.

3  Q.    And you previously testified about is it Mr. or Ms.

4  Nosara?  Is it a male or a female?

5  A.    No, it's a male.

6  Q.    A male.  So Mr. Nosara, you testified that he was

7  assisting you with refinancing both loans.  Is that correct?

8  A.    Yeah.

9  Q.    But in this letter, in that paragraph, you represent

10 that he was going to assist you with a bridge loan.

11 A.    Well his whole point was to try to -- was going to be

12 a two step phase process where we'd get a bridge loan and

13 then he was going to refinance both of them.

14 Q.    Okay.  And you represent in that paragraph that Mr.

15 Nosara is the one that strong you along for two months.  Is

16 that correct?

17 A.    That's correct.

18 Q.    And that you went to the extent of opening up title

19 insurance on the property and drawing up the contract, then

20 nothing, absolutely nothing.  Correct?

21 A.    Correct, because of him contacting American Home

22 Mortgage.  You have to understand, this was a hardship

23 letter that I wrote by request for American Home Mortgage

24 Servicing.  They needed to have a hardship letter.  I was

25 trying to work with them.  So I am not going to sit here and

1   say anything about -- I didn't know at that point if it was

2   Lane or if it was American Home Mortgage, you know, because

3   as I stated in my deposition before, he called me up and

4   says I don't know, something's not right, Ms. Mills, you're

5   on your own.

6   Q.    Ms. Mills, we don't need to hear what he said to you.

7   A.    Okay, well --

8   Q.    If we move to -- and as a result of this letter, the

9   foreclosure that was supposed to occur on your property on

10  June 6 was postponed?

11  A.    Correct.

12  Q.    And then on June 5 -- I'm sorry.  And turning to

13  Exhibit 161.

14  A.    161.  Yeah, I'm here.

15  Q.    This is another letter that you wrote to servicing's

16  loss mitigation department.  Correct?

17  A.    Correct.

18  Q.    And in this letter, you represent that you're

19  obtaining financing to cure the default on the property.

20  Correct?

21  A.    Correct, that's correct.

22  Q.    And that your understanding was the amount of that

23  default was $47,500.  Correct?

24  A.    Correct.  And that's when I was working with Bernadine

25  Beauregard.

1  Q.    Okay.  And if you turn to 162, it's another letter

2  from you to Ms. Oats in AHM's servicing's loss mitigation

3  department.  And in this letter, it's corrected that the

4  amount that you will need to reinstate both loans with AHM

5  is $67,141.  Is that correct?

6  A.    That's correct.

7  Q.    Okay.  And if you turn back one page to 161 again, the

8  exhibit to that document is the Market Place Properties loan

9  commitment.  Correct?

10  A.    Correct.

11  Q.    That you discussed on your direct examination?

12  A.    Correct.

13  Q.    And under loan amount, it says $48,000 to be

14  determine.  Correct?

15  A.    On the second one, correct, yes.

16  Q.    Okay.  And this financing was contingent financing.

17  Correct?

18  A.    It was contingent on having the assurance from

19  American Home Mortgage with -- this is relating back to

20  Bernadine.  With her investors, they want written assurance

21  that they were still not going to foreclose on the property.

22  Q.    So the only thing that was holding up the finality of

23  this commitment was not obtaining assurances from American

24  Home Mortgage?

25  A.    Correct.

1  Q.    If you look at the bottom of this exhibit, Ms. Mills

2  where it says date offer expires 6/7/06.

3  A.    Where at?

4  Q.    Do you -- it says at the bottom after the --

5  A.    Yes.

6  Q.    It says date offer expires June 7, 2006.  Do you see

7  that?

8  A.    Yes, I do.

9  Q.    It says acceptance of this loan is contingent upon

10 final property review and satisfactory review by lender of

11 the following.  And then it lists six things that this loan

12 commitment is contingent on, including your acceptance of

13 loan terms and conditions which the loan amount above is to

14 be determined.  The borrower to provide the following

15 information, proof of purchase price, contract note,

16 borrower's proof of income, tax return, years satisfactory

17 title -- I'm sorry, years.  I don't know what that means, a

18 satisfactory title report, complete application and credit

19 report provided by borrower/broker.  Is that correct?

20 A.    Correct.

21 Q.    So contrary to your representation that this loan was

22 not contingent, it was contingent when you sent this letter

23 to Ms. Oats on June 5, 2006.  Is that correct?

24 A.    I guess so.  Bernadine was the one who supplied it and

25 she was dealing with Carol Oats and talking to her.

1  Q.    So this is Ms. Beauregard's fault?

2  A.    This is her document, yes.

3  Q.    Okay.  And if we turn to 162 again, in 162, this is

4  another request by you to get a postponement on the loan.

5  Correct?

6  A.    A postponement on the sale.

7  Q.    I'm sorry, postponement on the sale, I apologize.  And

8  pursuant to this letter, you're representing to Ms. Oats

9  that -- shall be put in place -- I'm sorry.  The funds are

10 being transferred by Mr. Esquivel that will give you another

11 ten business days to reinstate your loan.  Is that correct?

12 A.    Correct.

13 Q.    And then if you look at the attachment to this letter,

14 this is the information you were providing to American Home

15 Servicing to confirm that you had money in place to

16 reinstate the loan.  Correct?

17 A.    Correct.

18 Q.    And pursuant to this letter, it says -- I'm sorry, the

19 bottom right hand corner is Bates numbers 357, the letter

20 that was attached to the fax?

21 A.    Correct.

22 Q.    It says this letter will confirm that your request to

23 liquidate $75,000 from your $125,000 certificate of deposit

24 funds have been approved and a wire transfer of funds will

25 be sent within the next five business days.  Is that

1   correct?

2   A.    That's correct.

3   Q.    Did Mr. Esquivel ever receive this money?

4   A.    There was something that happened. All I remember,

5   there was something that happened with the wiring.  He's

6   going to have to speak on that.

7   Q.    But was it your understanding that the debtors

8   understood that you were getting in $75,000 to reinstate the

9   loan and as a --

10  A.    Correct, but we still never got the assurance from

11  them that they were still not going to foreclose.  If you

12  look on the one letter that you have on June 5, I was under

13  the assumption by what they told me $47,000.  The next day,

14  I got another figure from somebody that it was actually

15  $67,000.  This was so typical of American Home Mortgage and

16  how they operated.

17  Q.    But they postponed the sale on reliance of your facts

18  that it established that Mr. Esquivel had $75,000 that he

19  was liquidating --

20  A.    Correct, but we still wanted to also have assurance

21  for ourselves that they still were not going to foreclose.

22  Q.    Did you ever attempt to tender that $75,000 to

23  American Home Mortgage?

24  A.    No, we did not.

25  Q.    Did Mr. Esquivel ever obtain the $75,000 as referenced

1  in this letter?

2  A.    You are going to have to discuss that with him.  That

3  was with Elia Management.  I -- all I know is there was

4  something that went wrong with the wire, but at the same

5  time, we had to think long and hard.  We had other promises

6  from American Home Mortgage about the $50,000 and that

7  didn't come through.  And for us to come up and put another

8  $67,000 down and not have the assurance that they're still

9  not going to foreclose on us, that was over the top and

10  that's why I declared bankruptcy. That's why I went into

11  bankruptcy.  I was trying to also get the house into some

12  sort of legal form where then maybe we could still work in -

13  - but do it in a form where it was in a legal venue, I guess

14  is what I'm trying to say.

15  Q.    And shortly after this letter was sent to American

16  Home Mortgage, you filed for bankruptcy.  Is that correct?

17  A.    Shortly thereafter, yes.

18  Q.    Okay.  On June 15, 2000 -- I'm sorry, Exhibit 163.

19  This is another letter that you sent to American Home

20  Mortgage Servicing on June 15.  Is that correct?

21  A.    Correct.

22  Q.    And in this letter, you're seeking another extension

23  of funds.  I'm sorry, another extension of the foreclosure

24  sale because the funds are coming in, but there was, I think

25  you had mentioned this in your prior testimony that there

1  was a mess up with where the funds were going?

2  A.    Correct.

3  Q.    Okay.  In this letter, do you ever represent to Ms.

4  Mills that you're waiting for their assurance that you --

5  they won't foreclose on the loan if you provide them with

6  those funds?

7  A.    I -- we verbally had discussed that.  And that was --

8  that's what we needed.  We still tried to work with them and

9  at the same time, we had to make an evaluation and a

10 decision and then that's why I turned around and I went

11 bankrupt.

12 Q.    Why didn't you simply ask in any of these letters we

13 need your assurance?

14 A.    I don't know why.

15 Q.    Exhibit 164.  Ms. Mills was it your understanding when

16 you got the extension of the -- I'm sorry, I should say the

17 postponement of the foreclosure sale to June 26, that that

18 was the last extension the debtors were going to give you?

19 A.    Understood, yeah.

20 Q.    And is -- looking at Exhibit 164 is that why you sent

21 a letter to Cal Western requesting an extension of the

22 foreclosure sale?

23 A.    There again it was in that decision making process to

24 go bankrupt.

25 Q.    Okay.  And then on June 26, you filed for bankruptcy.

1   Is that correct?

2   A.    Correct.

3   Q.    And you filed for bankruptcy, I believe you testified

4   really to stop the foreclosure.  Is that correct?

5   A.    Correct.

6   Q.    At any point in time between May of 2006 and the

7   filing of your bankruptcy on June 26, 2006, did the debtor

8   offer you any type of payment plan to cure the default on

9   your loan?

10  A.    Yes, they wanted to raise my mortgage payment up to

11  $10,000 a month.  That was the only resolution they ever

12  offered me.

13  Q.    But they offered you a resolution other than having to

14  pay the $61,000 or $67,000 all at one time.  Correct?

15  A.    I don't remember the whole thing.  All I know is that

16  the payment was going to go up to $10,000.  I think there

17  was also -- I don't remember the whole proposal that they

18  gave me, that's the only thing that sticks in my mind is

19  that the price was going -- the mortgage was going to go up

20  $3,000.  I mean, bring it up to $10,000 a month.

21  Q.    Could you turn to Exhibit 209, please?

22              THE COURT:  209?

23              MS. ZIEG:  209, Yes, Your Honor.

24              MS. MILLS:  Would that be binder 3 or --

25  BY MS. ZIEG:

1  Q.    Ms. Mills is this a copy of a letter that you and

2  Anthony wrote to this Court?

3  A.    Correct.

4  Q.    And you sent this letter to this Court?

5  A.    Correct.

6  Q.    And if you turn to the second page of this letter,

7  there's bullet points on that page.  Do you see those?

8  A.    Correct.

9  Q.    And the third bullet point up from the bottom, you

10 represent to this Court that American Home Mortgage offered

11 to tack on -- I'm sorry, let's see.  Then all -- them said,

12 they said all they can do is tack on the delinquent payments

13 to our regular payments over several months, i.e. --

14          THE COURT:  Where are you?

15          MS. ZIEG:  I'm sorry, I'm on the second page of

16 this letter.

17          THE COURT:  Yeah.

18          MS. ZIEG:  The third bullet point up from the

19 bottom.

20          THE COURT:  Oh, from the bottom.

21          MS. ZIEG:  The last part of that bullet point.

22          THE COURT:  All right.

23 BY MS. ZIEG:

24 Q.    You represented to this Court that the debtors have

25 proposed making an additional $3,000 payment on top of your

1  $6,500 regularly monthly payment until you could catch up

2  with your default.  Is that correct?

3  A.    Correct.

4  Q.    You previously testified that you weren't willing to

5  hand over $67,000 to the debtors because that was a lot of

6  money at one time.

7  A.    Correct.

8  Q.    What about providing -- the debtors providing you with

9  an opportunity to pay over time?

10  A.    I didn't believe them.  I didn't believe at -- I did

11  not believe anything that came out of American Home Mortgage

12  at that point.

13  Q.    So it wouldn't have mattered what they did, you

14  weren't going to believe them?

15  A.    No, I -- all the telephone calls I made in all the

16  times that I -- they had me on this calling tree that I

17  would call so and so and then I wouldn't get a return phone

18  call.  I'd finally get through to somebody.  I had no faith

19  in American Home Mortgage.  I wanted to get out from

20  underneath them as quickly as I could somehow.

21  Q.    Okay.  And you also represent in the first bullet

22  point of this letter, that the down payment of $212,500 was

23  your savings.  Is that correct?

24  A.    Correct.

25  Q.    But that wasn't an accurate representation was that?

1   A.      No, it wasn't.

2   Q.      Turning back to Exhibit 166.   Is this a copy of your

3   bankruptcy petition, Ms. Mills?

4   A.      Correct.

5   Q.      Ms. Mills, after you filed your bankruptcy petition,

6   why didn't you make an offer to the debtors to cure the loan

7   and enter an order in the bankruptcy?

8   A.      Because they immediately did what do you call it, a

9   stay or relief and my attorney, he was -- as I mentioned,

10  had called on behalf of us and was trying to work with

11  American Home Mortgage, my bankruptcy attorney was.   But the

12  stay of relief happened so quickly, he said they must really

13  want your home.   But he did make telephone calls and I think

14  there was correspondence between American Home Mortgage and

15  my attorney, but there was no resolution.

16  Q.      Did your bank -- did your lawyer ever tell you that

17  you might be able to get an order that directed American

18  Home Mortgage not to foreclose on the property if you paid

19  them the reinstatement amount?

20  A.      I don't remember.

21  Q.      Did your lawyer ever offer American Home Mortgage the

22  reinstatement amount?

23  A.      I know he offered -- he made an offer.   I don't know

24  if it was the full reinstatement amount.

25  Q.      Do you recall if that offer was $10,000?

1  A.    I don't remember at this point.

2  Q.    If you turn to page -- if you look at the top of each

3  of these filings, Ms. Mills, there is a case number which is

4  your bankruptcy case number.  And then the next line under

5  that tells you main docket Page 1 of 13.  Do you see that on

6  the first page?

7  A.    On the first page?

8  Q.    It's right above the actual block that's the petition.

9  It says main document --

10 A.    Yes.

11 Q.    Do you see that?

12 A.    Yeah.

13 Q.    I'm going to refer to those pages just as we're going

14 through here.  Do you understand that?

15 A.    Yes.

16 Q.    Okay.  So if you turn to Page 5 of 13 --

17        THE COURT:  Five of 47?

18        MS. ZIEG:  No, we're on 166, Your Honor.

19        THE COURT:  Oh, I'm in the wrong one, I'm sorry.

20        MS. ZIEG:  167 is the amended schedules.

21        THE COURT:  Page 5, sorry.

22 BY MS. ZIEG:

23 Q.    Ms. Mills, on Page 5 of your schedules you list

24 American Home Mortgage Servicing as a debtor.  I'm sorry, as

25 a creditor in your bankruptcy.  Is that correct?

1  A.    Correct.

2  Q.    And the amounts listed there are the amounts that you

3  owed on those -- on your loans.  Is that correct?

4  A.    Correct.

5  Q.    And in the column between the address of the property

6  and the amount that's owed there are three skinny columns.

7  Do you see those?

8  A.    Yes.

9  Q.    If you believe that American Home Mortgage has -- if

10  you had claims against American Home Mortgage, why didn't

11  you check any of these boxes?

12  A.    Because all I wanted was to get my home back.  I

13  wasn't documenting this to like have a big case against

14  American Home Mortgage.  The only thing I wanted was I

15  wanted to get my house back and I wanted to go home.

16  Q.    Did you --

17  A.    And I wasn't planning some big lawsuit against

18  American Home Mortgage.

19  Q.    You testified that you told your lawyer though

20  everything about the property.  Is that correct?

21  A.    Correct.

22  Q.    If you turn to Exhibit 167, please, and Page 23 of 47.

23  Ms. Mills, did you understand when you were submitting your

24  statement of financial affairs that you were -- by signing

25  this document, you were doing so under the penalty of

1    perjury?

2    A.    Correct.

3    Q.    And if you turn to Page 14 of that same -- 14 of 47 of

4    that same document.  Are you there, ma'am?

5    A.    Yes.

6    Q.    Okay.  And #1 it says income from employment or

7    operations of business.  Correct?

8    A.    Correct.

9    Q.    And it lists your income for -- your gross income for

10   2004 at $56,054.  Is that correct?

11   A.    Correct.

12   Q.    And it lists your income for 2005 at $115,810.  Is

13   that correct?

14   A.    Correct.

15   Q.    So that's an accurate representation of what your

16   income was in 2004 and 2005?

17   A.    Correct.

18   Q.    So based on the income that's listed here, you applied

19   for a mortgage for $100 -- I'm sorry, $1,375,000?

20   A.    Correct.

21   Q.    And your monthly payments on that mortgage were

22   approximately $6,500.  Is that correct?

23   A.    Correct.

24   Q.    Ms. Mills, how did you think you could afford a

25   mortgage on a property for $6,500 a month?

1   A.    As I stated, I -- with Pacific Horticulture, with my

2   landscape business, and of course, Anthony and I were to be

3   married which we put on postponement understandably.

4   Q.    Ms. Mills, I believe that you testified at some point

5   that you understand the concept of debt ratios?

6   A.    Yeah.

7   Q.    And what is that?

8   A.    Debt ratio is your, what do you call it?  I don't know

9   how to explain it.  Your -- what your credit is and what you

10  owe.

11  Q.    Okay.  And so you understand that that's a ratio that

12  you use in determining whether or not you can afford to

13  enter into a transaction?

14  A.    Yeah, correct.

15  Q.    Did you do any kind of debt ratio when you determined

16  whether or not to purchase the property and enter into the

17  loans?

18  A.    Anthony and I sat down and worked it out, yes.

19  Q.    If you turn to Page 18 of 47, Ms. Mills.  Ms. Mills,

20  do you know what happened to the $500,000 CD?

21  A.    Yes, it went back into Elia Management.

22  Q.    And do you know when that happened?

23  A.    December.

24  Q.    Of 2005?

25  A.    Of 2005, I believe.

1  Q.    Okay.  Was it any longer in your name after that?

2  A.    No.

3  Q.    Would you have considered that a closed account?

4  A.    I -- as -- I'm going to have to field that question to

5  Anthony because that was in Elia Management.  I never got

6  any interest off that.  I never --

7  Q.    Did you tell your bankruptcy attorney about the

8  $500,000?

9  A.    Yeah, he knew about -- yes.

10  Q.    And it's not listed here as closed, end of the closed

11  accounts.

12  A.    I don't know what to tell you, but my bankruptcy

13  attorney knew.

14  Q.    Okay.  If you could turn to Page 20, Ms. Mills.  Ms.

15  Mills, previously you testified that you provided all of

16  your information to your accountant, all your receipts, all

17  your books and records and they would prepare your tax

18  returns.  Is that correct?

19  A.    Correct.

20  Q.    And was that the same thing that happened in the Year

21  2005?

22  A.    No, it did not go to -- it did not go to Greco.

23  Q.    Did it go to someone else?

24  A.    No.

25  Q.    Who did your 2005 --

1  A.    I believe Anthony and myself did them.

2  Q.    Okay.  And if you look at Question 19, it says lists

3  all bookkeepers and accountants who within two years

4  immediately preceding the filing of the bankruptcy case kept

5  or supervised the keeping of books of account and records of

6  the debtor.  And you list yourself and the dates of services

7  rendered you list as January 1, 1995 to July 7, 2006.  Is

8  that correct?

9  A.    Yeah.

10 Q.    Why is Greco Business Services, your accountant, not

11 listed here?

12 A.    I don't know.  Von had all that information.  He had

13 all my tax returns.  He has all my banking statements.  I

14 was relying on a bankruptcy attorney.

15 Q.    Did you review these documents, Ms. Mills?

16 A.    Yes, I did review them.

17 Q.    And you previously testified that you understood in

18 signing these documents that you were submitting that they

19 were accurate under the penalty of perjury.  Is that

20 correct?

21 A.    Correct.

22 Q.    Did you ever sit down with Mr. -- strike that.  You

23 can turn back to Exhibit 166 for a minute, please.

24         THE COURT:  Ms. Zieg, you got about five minutes

25 to find a -- we're going to stop about 5:00 so whenever you

1  get to a natural breaking point.

2              MS. ZIEG:  Okay.

3              MS. MILLS:  What page were we --

4  BY MS. ZIEG:

5  Q.    I'm sorry, 166, please, where it says 8 of 13.

6  A.    Eight -- wait a minute, okay.  And then what page, 8?

7  Q.    Eight to 13, please.  Ms. Mills you previously -- I'm

8  sorry are you there?

9  A.    Yes.

10 Q.    Okay.  Ms. Mills, you previously testified that you

11 purposely did not mention the Quhen loans in your bankruptcy

12 schedules because you intended to pay him back.  Is that

13 correct?

14 A.    Correct.

15 Q.    So you told your lawyer about the loan to Mr. -- or

16 the amount owed to Mr. Quhen and purposely excluded them

17 from your bankruptcy schedule?

18 A.    Von knew, yes.

19 Q.    But you were going to pay him back even though --

20 A.    Somehow, some way I was going to pay him back, yes.

21 Q.    But not the other creditors listed on Schedule F.

22 Correct?

23 A.    Correct.

24 Q.    In fact, Ms. Mills, didn't you enter into a settlement

25 agreement with Mr. Quhen on -- during your bankruptcy?

1    A.    Correct.

2    Q.    And pursuant to that settlement agreement, you were

3    going to pay him $7,500.  Is that correct?

4    A.    Correct.

5    Q.    And although you knew that the Court entered in an

6    agreement and proving a settlement agreement with Mr. Quhen

7    for $7,500 and full satisfaction of the debt, that it was

8    your understanding that that was just a legal agreement.

9    Correct?

10   A.    That was our legal agreement.  Correct.

11   Q.    It was your own the record agreement?

12   A.    It was on the record agreement, yes.

13   Q.    But that's not the agreement you actually entered into

14   with Mr. Quhen?

15   A.    It was always understood that my intent was to pay him

16   back.

17   Q.    So you representation to the Bankruptcy Court with

18   respect to the Quhen settlement was false.  Is that correct?

19   A.    No, it was an unspoken understanding.  He was like my

20   father.

21   Q.    Ms. Mills, you entered into this stipulation with Mr.

22   Quhen in September of 2007.  Is that correct?

23   A.    Correct.

24   Q.    And you closed your bankruptcy case on October 9,

25   2007.  Is that correct?

1   A.    Correct.

2           MS. ZIEG:  This would probably be a good place to

3   stop.  I probably have about 15 to 20 minutes more maybe,

4   but I don't know if you want to keep going or --

5           THE COURT:  The question is whether I believe

6   you, Ms. Zieg.

7                           (Laughter)

8           MS. ZIEG:  I'm sorry?

9           THE COURT:  The question is whether I believe

10  you.

11                          (Laughter)

12          MS. ZIEG:  Oh, look at how --

13          THE COURT:  If I let you go 15 or 20 minutes and

14  you're not finished.  It's nothing personal, it's a

15  professional problem.

16          MS. ZIEG:  I can speak really quickly, Your

17  Honor.

18          THE COURT:  Yeah, well, we're going to break

19  because we'll have redirect in any event, I'm sure.  All

20  right, so that will do it for the day.  We'll see you here

21  tomorrow at 10:00.  You may leave your things.  Ma'am, you

22  may not discuss the substance of your testimony overnight

23  since you're still under oath.  And we'll reconvene tomorrow

24  at 10:00 a.m.

25      (Whereupon at 4:57 p.m., the hearing was adjourned.)

1

2                          CERTIFICATION

3          I certify that the foregoing is a correct

4    transcript from the electronic sound recording of the

5    proceedings in the above-entitled matter.

6

7

8    _____          24 November 2010

9    Traci L. Calaman                           Date

10   Transcriber

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| Word | Page:Line |
|------|-----------|

**07-11047**(css)(1) 1:7
**100-year-old**(1) 53:3
**503(b)(6**(1) 31:14
**804(b)(3**(1) 87:5
**81-year-old**(1) 36:21
**a.m**(5) 1:14 4:1 41:21 41:21 193:24
**abandonmen**(1) 58:13
**abc**(1) 69:11
**ability**(4) 25:4 43:12 43:13 169:19
**able**(30) 8:14 45:4 55:7 55:21 56:9 57:16
58:10 61:6 61:24 61:24 66:22 66:24 72:1
79:17 80:6 80:9 80:14 84:21 84:25 89:23
92:2 99:11 118:3 132:14 132:17 163:1
164:22 165:4 172:3 184:17
**about**(103) 5:10 7:12 9:1 10:9 12:15
12:21 13:5 25:24 26:1 31:13 31:23 37:5
37:19 38:23 42:23 47:5 48:1 49:17 49:23
49:23 51:8 52:7 54:18 56:13 58:13 59:7
61:17 63:6 63:18 68:4 69:2 71:11 71:16
75:16 77:7 79:9 79:19 80:20 83:13 84:18
85:1 85:5 85:17 86:1 87:8 87:11 87:15
87:24 88:22 88:21 88:22 89:7 93:11 94:21
96:2 97:24 98:12 98:17 99:1 101:11
108:10 108:11 112:11 112:14 118:19
119:10 123:3 126:23 133:25 135:19 136:1
138:6 138:7 139:13 141:9 141:13 141:19
142:12 142:17 142:22 149:8 149:19 149:2
150:13 151:7 151:7 152:16 152:16 153:15
153:24 156:3 170:24 173:3 174:1 179:6
183:8 186:20 189:7 189:9 190:24 190:25
191:15 193:3
**above**(6) 121:11 121:21 121:24 146:9
176:13 185:8
**aboveentitled**   (1) 194:5
**absence**(1) 19:20
**absent**(2) 78:9 87:1
**absolute**(1) 20:4
**absolutely**(4) 44:11 81:1 160:5 173:20
**acceptable**(2) 4:15 5:16
**acceptance**(17) 27:3 27:7 27:21 28:6 28:8
28:19 29:2 33:8 33:25 34:4 34:5 34:19
34:20 35:17 37:10 176:9 176:12
**accepted**(6) 54:23 103:17 104:6 104:12
108:6 131:11
**access**(13) 29:15 29:18 79:17 80:6 80:14
84:12 84:16 84:21 84:25 85:17 86:1
154:16 167:14
**accessed**(1) 158:12
**accessible**(1) 29:10
**accessing**(3) 84:18 88:21 157:21
**accomplish**(1) 22:2
**accomplishing**(1) 21:25
**accord**(1) 109:22
**according**(1) 132:14
**accordingly**(1) 132:5
**account**(22) 101:8 105:3 121:9 121:19
122:1 124:20 156:1 156:3 156:8 156:12
156:15 156:17 156:19 156:23 157:5 157:8
157:9 167:12 167:14 171:12 189:3 190:5
**accountant**(3) 62:24 189:16 190:10
**accountants**(1) 190:3
**accounts**(2) 116:2 156:6
**accurate**(9) 59:11 71:6 83:14 118:11
152:21 160:15 183:25 187:15 190:19
**accurately**(2) 45:21 100:12
**acknowledgemen**(1) 146:9
**acknowledging**(1) 29:18
**act**(5) 14:17 19:11 19:15 20:14 22:9
**acted**(1) 23:8
**acting**(2) 9:20 21:1
**action**(3) 34:23 34:25 43:2
**actions**(4) 39:11 43:18 58:12 127:22

**active**(1) 41:17
**actively**(1) 41:8
**acts**(2) 23:14 24:6
**actual**(4) 34:24 83:3 84:4 185:8
**actually**(12) 34:24 51:6 52:2 55:11
56:5 62:4 62:19 66:13 66:23 67:23 74:7
83:24 84:1 84:3 98:1 111:11 150:14
152:11 169:23 178:14 192:13
**adding**(2) 70:25 105:11
**addition**(7) 14:9 20:19 22:6 38:9 71:4
97:22 118:8
**additional**(14) 69:14 70:21 71:5 71:23
80:12 83:5 83:12 90:5 105:6 140:22 166:
166:10 172:3 182:25
**address**(11) 11:23 13:6 24:24 25:1 33:14
44:1 53:11 73:14 113:1 113:9 186:5
**addressed**(2) 7:5 13:5
**adelson**(8) 11:15 11:18 12:18 14:2 15:12
17:9 18:1 18:1
**adelson's**(2) 13:25 14:6
**adjourned**(1) 193:25
**adjournment**(1) 99:5
**adjustment**(1) 70:25
**administrativ**(9) 4:8 4:10 5:6 44:25 45:5
117:12 117:20 138:18 139:3
**admissible**(2) 79:1 86:17
**admission**(1) 73:21
**admissions**(1) 25:6
**admit**(2) 45:10 97:8
**admits**(1) 21:15
**admitted**(5) 20:23 25:22 45:24 79:3 105:1
**advance**(1) 19:2 46:21
**advantage**(1) 36:17
**adversary**(1) 36:22
**adverse**(1) 46:16
**advisor**(1) 158:5
**affairs**(1) 186:24
**affect**(1) 42:4
**affidavit**(1) 7:8
**affirmation**(1) 99:10
**affirmative**(2) 6:22 26:4
**affirmatively**(1) 24:11
**affirmed**(1) 22:21
**afford**(2) 187:24 188:12
**afraid**(2) 72:13 94:20
**after**(52) 8:15 30:2 36:4 36:5 36:8 36:24
54:17 54:20 57:24 59:24 62:13 62:19 71:
71:12 78:17 81:12 83:16 85:9 86:2 88:2
88:20 89:15 91:18 95:3 100:22 100:25
101:15 103:8 103:8 108:8 111:14 116:3
118:16 118:23 119:16 123:12 124:2 124:
124:3 124:3 124:4 129:23 136:12 139:15
142:12 150:25 166:25 168:13 176:4 179:
184:5 189:1
**afternoon**(5) 80:12 129:9 129:11 161:21
161:22
**afterwards**(1) 158:10
**again**(18) 11:16 19:21 58:7 58:7 69:10 86:6
97:11 104:25 115:7 119:18 121:12 122:1
129:9 132:9 143:14 150:20 175:7 177:3
180:23
**against**(23) 10:21 11:7 12:20 36:21 47:1
86:8 87:5 87:6 87:11 87:21 96:6 96:8
96:10 97:5 111:5 111:8 111:11 117:5
128:12 165:7 186:10 186:13 186:17
**agency**(13) 19:6 19:10 19:16 19:18 19:22
20:7 20:17 21:19 22:14 23:20 25:3 25:7
73:18
**agenda**(3) 4:10 5:21 18:24

**agent**(12) 19:11 19:18 21:2 22:24 23:5
23:8 23:14 24:9 24:10 24:11 102:22
114:23
**agents**(2) 19:1 19:4
**ago**(8) 33:19 36:18 43:2 43:20 98:17
122:20 126:6 127:21
**agree**(2) 41:12 59:10
**agreed**(2) 4:13 105:15
**agreeing**(1) 25:3
**agreement**(55) 19:24 20:1 20:6 20:15
20:19 20:20 20:23 20:24 21:5 21:6 21:16
21:20 21:20 22:7 22:10 22:13 23:11 24:5
24:7 24:7 24:8 24:8 24:9 24:12 24:14
24:21 24:22 58:20 58:23 59:3 59:7 59:8
66:12 117:6 129:24 130:1 131:5 131:12
131:23 132:3 132:7 135:22 135:23 135:25
136:3 166:6 191:25 192:2 192:6 192:6
192:8 192:10 192:11 192:12 192:13
**agreements**(2) 22:7 25:6
**agrees**(1) 41:18
**ahead**(6) 26:24 37:8 39:4 48:10 55:16
62:8 69:8 79:6 88:15 143:10
**ahm**(30) 27:3 27:7 27:21 28:6 28:7 28:10
28:19 29:1 89:4 94:5 96:2 96:12 96:15
96:24 97:5 97:25 101:1 101:4 102:14
103:17 104:6 110:16 115:17 115:24 129:1
129:19 130:19 144:11 144:13 175:4
**ahm's**(2) 96:10 175:2
**ahmit**(7) 27:9 28:2 28:18 38:7 38:8 38:17
40:4
**aiming**(1) 139:11
**air**(1) 49:13
**aired**(1) 49:14
**akin**(1) 25:18
**all**(134) 5:10 5:10 6:3 8:16 8:17 9:3 12:14
12:23 15:6 15:10 16:14 18:6 18:9 20:18
21:15 21:22 24:6 25:14 26:2 27:16 27:23
28:16 28:21 29:14 32:16 32:16 34:3 36:14
36:15 37:15 37:17 38:22 39:24 40:5 40:5
40:20 40:23 41:16 41:19 41:22 45:17
45:25 47:7 47:16 48:7 48:9 49:9 50:21
55:7 55:15 56:2 56:11 56:15 56:16 57:9
58:4 58:7 60:4 62:18 67:5 68:2 72:22
73:3 75:5 75:21 76:13 76:15 76:18 76:21
77:15 77:21 78:17 78:17 79:20 83:13 85:4
85:24 86:4 88:11 92:13 96:17 96:21 97:22
99:1 99:3 99:8 100:5 100:6 103:3 106:6
106:9 111:6 111:22 117:25 119:22 123:7
129:4 129:5 140:4 142:25 143:5 143:16
144:24 144:25 152:18 162:2 168:22 169:17
169:19 170:1 178:4 179:3 181:14 181:15
182:11 182:12 182:22 183:15 183:15
186:12 189:15 189:16 189:16 190:3 190:12
190:13 190:13 193:19
**allegations**(1) 36:12
**allege**(1) 126:21
**alleged**(1) 38:3
**allegedly**(1) 30:17
**allotted**(1) 158:2
**allow**(11) 11:12 18:10 18:14 18:20 19:6
42:8 67:5 68:2 69:7 79:15 105:15
**allowed**(2) 79:1 91:5
**almost**(3) 54:2 120:8 124:5
**alone**(5) 37:14 108:2 154:22 154:23 154:25
**along**(3) 25:18 62:18 173:15
**already**(8) 37:3 48:9 58:14 62:13 68:4
75:19 85:21 110:2

**also**(59) 9:4 9:5 9:9 13:10 13:15 13:17
14:13 14:19 14:25 17:5 25:17 27:10 31:19 32:23
41:11 48:20 49:2 49:7 49:9 52:21 62:10
62:16 63:2 64:7 66:25 71:5 75:7 75:10
83:5 87:1 103:21 113:7 113:8 118:10
125:13 129:18 134:21 135:7 135:13 140:7
155:1 155:15 155:23 157:8 157:12 163:24
165:6 165:6 167:6 167:12 169:1 169:4
169:15 171:24 171:25 172:11 178:20
179:11 181:17 183:21
**alternative**(1) 45:15
**although**(2) 30:22 192:5
**always**(6) 31:14 50:7 118:6 128:16 162:2
192:15
**amanda**(2) 170:9 170:12
**amend**(1) 30:23
**amended**(1) 185:20
**amendmen**(2) 31:2 166:3
**american**(79) 7:9 19:23 22:5 24:5 24:6
33:7 33:7 33:25 34:4 34:5 34:18 34:20
35:16 37:10 57:5 61:12 69:11 73:13 73:17
73:20 79:15 80:7 82:9 84:13 84:18 89:10
89:15 91:6 91:9 91:20 92:1 93:5 93:23
94:14 94:23 95:20 95:23 100:17 102:21
109:1 110:12 111:5 111:8 111:12 111:24
112:21 112:25 113:14 113:18 124:4 166:15
166:17 166:21 170:9 170:15 171:10
173:21 173:23 174:2 175:19 175:23 177:14
178:15 178:23 179:6 179:15 179:19
182:10 183:11 183:19 184:11 184:14
184:17 184:21 185:24 186:9 186:10 186:14
186:18
**amount**(27) 19:6 32:1 32:2 32:6 32:9
83:23 84:4 95:11 98:3 98:6 98:7 101:9
102:8 103:3 113:10 114:16 117:19 131:16
174:22 175:4 175:13 176:13 184:19 184:22
184:24 186:6 191:16
**amounts**(6) 45:21 82:3 82:8 83:4 186:2
186:2
**analogous**(1) 22:16
**analogy**(1) 22:11

| Word | Page:Line |
|------|-----------|

**and**(301) 4:11 4:11 4:15 4:16 4:17 4:19 5:2 5:15 5:23 6:1 6:19 6:23 7:1 7:5 7:12 7:17 7:20 7:21 7:22 8:1 8:4 8:5 8:9 8:11 8:16 9:8 9:19 10:2 10:6 11:11 11:19 11:25 12:3 12:9 12:9 12:10 12:16 13:20 13:21 13:22 14:3 14:4 14:12 14:14 14:15 14:19 14:22 14:23 15:4 15:9 15:12 15:14 15:17 15:21 15:24 16:2 16:5 16:7 16:9 16:13 16:15 16:16 16:18 16:22 16:23 16:23 17:4 17:8 17:10 17:11 17:18 17:21 17:22 17:24 18:1 18:1 18:3 18:10 18:12 18:15 18:16 18:17 18:25 19:3 19:4 19:5 19:8 19:12 19:18 19:20 19:21 19:23 19:25 19:25 20:3 20:3 20:5 20:7 20:17 20:20 20:22 20:25 21:3 21:20 21:22 21:24 21:25 22:4 22:8 22:13 22:16 23:8 23:14 23:17 23:17 23:20 23:21 23:24 24:5 24:6 24:7 24:8 24:13 24:15 24:17 24:19 24:20 24:22 24:25 25:4 25:7 25:9 25:20 25:23 26:4 26:7 26:10 26:13 26:20 27:13 27:15 27:20 28:3 28:11 28:18 28:22 28:24 29:9 29:9 29:10 29:12 29:14 29:19 29:21 29:24 30:4 30:8 30:10 30:11 30:17 30:20 30:25 31:9 31:9 31:10 31:14 32:1 32:3 32:24 32:25 33:3 33:11 33:12 33:14 33:20 33:21 34:2 34:3 34:6 34:6 34:14 34:19 34:21 34:21 34:23 35:4 35:7 35:11 35:14 35:15 35:18 35:22 35:24 36:1 36:2 36:6 36:10 36:21 37:3 37:8 37:8 37:9 37:11 37:11 37:15 37:18 37:19 37:20 38:2 38:9 38:17 38:22 38:25 39:2 39:5 39:12 39:12 40:10 40:13 40:14 40:16 40:16 40:17 40:18 40:19 40:21 40:24 41:10 41:18 42:4 42:5 42:5 42:6 42:6 42:11 42:14 42:15 42:17 42:17 42:18 42:19 42:22 42:22 43:3 43:5 43:11 43:11 43:14 43:18 43:21 43:22 43:23 45:2 45:3 45:4 45:9 45:13 45:22 46:1 46:11 47:3 47:12 47:23 47:25 47:25 48:8 48:17 48:20 48:25 49:3 49:10 49:12 49:17 49:20 50:3 50:5 50:6 50:6 50:11 50:13 50:16 50:19 50:21 50:22 50:22 50:24 51:7 51:19 51:23 51:23 52:4 52:5 52:6 52:6 52:7 52:8

**and**(301) 52:10 52:12 52:23 52:25 53:4 53:5 53:6 53:11 53:17 53:18 53:20 53:21 53:21 53:22 53:23 53:24 53:24 53:25 54:5 54:5 55:7 55:9 55:14 55:24 55:25 55:25 56:1 56:2 56:4 56:4 56:5 56:7 56:9 56:12 56:14 56:15 56:15 56:18 56:20 56:21 57:10 57:11 57:16 57:21 57:21 57:25 58:1 58:2 58:3 58:5 58:9 58:22 59:10 59:11 59:11 59:12 59:23 60:3 60:4 60:9 60:11 61:12 61:13 61:15 61:21 61:23 61:24 62:9 62:12 62:14 62:15 62:16 62:18 62:19 62:21 62:23 63:2 63:4 63:7 63:14 64:4 64:7 64:12 64:18 65:1 65:7 66:11 66:16 66:18 66:19 66:24 67:10 68:13 68:13 68:21 68:22 69:1 69:2 69:3 69:11 69:12 69:14 70:9 70:10 70:11 70:15 70:24 71:1 71:12 71:14 71:15 71:15 71:16 71:17 71:21 71:22 71:24 72:2 72:15 73:7 73:8 76:23 76:25 77:3 77:4 77:4 77:9 77:17 77:20 77:20 78:8 78:9 78:10 78:10 79:8 79:10 79:17 80:11 80:12 80:15 80:19 80:20 81:16 82:5 82:8 83:19 83:24 84:13 84:17 84:20 84:22 84:22 84:23 84:23 85:1 85:4 85:8 85:17 86:4 87:1 87:2 87:3 87:3 87:16 87:17 87:18 88:1 88:8 88:15 88:18 89:4 89:5 89:6 89:10 89:18 89:24 90:4 90:17 91:3 91:17 91:24 91:25 92:2 92:25 93:2 93:3 93:3 93:4 93:5 93:14 93:15 93:25 94:1 94:8 94:14 94:16 94:24 95:9 95:19 95:22 95:22 96:1 97:4 97:8 97:14 97:17 97:20 97:22 97:25 97:25 98:4 98:7 98:7 99:10 99:21 99:23 99:24 100:1 100:15 100:19 101:3 101:10 101:10 102:1 102:14 102:21 102:23 102:23 103:1 103:3 103:7 104:8 104:11 104:18 105:1 105:2 105:7 105:19 107:2 107:3 107:10 107:12 107:22 108:2 108:2 108:14 108:16 108:25 109:1 109:2 109:9 109:11 110:4 110:15 110:24 111:1 111:11 111:14 111:19 111:24 112:1 112:10 112:18 113:3 113:4 113:6 113:8 114:4 114:6 114:10 114:11 114:21 114:24 115:1 115:5

**and**(301) 115:5 115:8 115:11 115:14 115:19 116:2 116:7 116:8 116:12 116:25 117:4 117:6 117:21 117:24 118:6 118:11 118:13 118:16 118:21 118:25 119:1 119:2 119:3 119:5 119:14 119:14 119:16 120:1 120:6 120:7 120:9 120:10 120:11 120:11 120:12 120:12 120:14 120:17 120:18 121:21 122:3 122:10 122:14 122:20 124:1 124:5 124:12 124:23 125:11 125:12 125:12 125:13 125:24 126:3 126:19 126:22 126:23 127:7 127:11 127:15 128:17 128:18 129:15 129:18 130:2 130:6 131:5 131:8 131:11 131:11 131:14 131:15 132:9 132:17 132:22 132:23 133:2 133:6 133:10 133:12 133:16 133:21 133:24 134:5 134:8 134:12 134:22 134:23 135:7 135:11 135:18 135:22 136:5 136:7 136:12 137:2 137:3 137:6 137:22 138:19 139:5 139:10 139:11 139:11 139:19 139:25 140:1 140:10 140:15 140:22 140:23 141:12 141:17 141:18 141:19 141:19 141:20 141:20 142:2 142:5 143:6 143:7 143:11 143:23 144:1 144:8 144:10 144:13 144:14 144:20 144:20 145:4 145:15 145:17 146:4 146:9 146:11 146:14 146:17 146:20 147:2 147:6 147:6 147:14 147:16 148:1 148:8 148:12 148:15 148:16 148:21 149:12 149:23 149:24 150:1 150:7 150:12 150:18 150:20 150:21 150:23 150:23 151:5 151:6 151:8 151:8 151:8 151:25 153:5 155:7 155:12 156:12 156:21 157:8 157:11 157:19 157:22 158:2 158:14 158:19 158:25 159:8 159:12 159:15 159:19 160:2 160:13 160:19 160:25 161:1 161:4 161:7 161:10 161:15 161:16 161:21 161:22 162:2 162:6 162:13 162:23 163:1 163:17 163:24 164:16 164:19 165:1 165:1 165:23 166:3 166:6 166:10 166:20 166:25 167:3 167:10 167:11 167:11 167:16 167:17 167:23 168:3 168:7 168:10 168:16 168:18 168:19 168:19 169:2 169:6 169:8 169:10 169:16 169:16 169:16 169:19 170:11 170:12 170:14 170:15 170:18 170:21 170:24 171:2 171:6 171:11 171:14 171:17 172:1 172:7 172:14 172:17 172:21 173:3 173:12 173:14 173:18 173:19 174:3 174:8 174:12 174:12 174:18 174:22 174:24 175:1 175:3 175:7 175:13 175:16 176:10 176:11 176:13 176:18 176:24 176:25 177:3 177:7 177:13 177:18 177:24 178:9 178:15 179:5 179:6 179:7 179:7 179:8

**and**(66) 179:9 179:15 179:22 180:7 180:8 180:9 180:10 180:10 180:20 180:25 181:3 181:6 182:1 182:4 182:6 182:9 183:17 183:17 183:21 184:7 184:9 184:10 184:13 184:14 185:4 186:2 186:5 186:6 186:15 186:17 186:22 187:3 187:6 187:9 187:12 187:16 187:21 188:2 188:2 188:7 188:9 188:11 188:16 188:18 188:18 188:22 189:10 189:17 189:17 190:1 190:2 190:3 190:5 190:6 190:6 190:17 191:6 191:16 192:2 192:5 192:6 192:7 192:24 193:13 193:23

**andratta**(3) 36:2 37:24 37:25
**andrew**(1) 1:31
**angeles**(1) 102:23
**angles**(1) 34:10
**annual**(1) 52:14
**annually**(1) 51:2
**another**(15) 19:12 42:24 44:10 72:14 79:17 166:25 174:15 175:1 177:4 177:10 178:14 179:7 179:19 179:22 193:13
**answer**(12) 16:7 16:18 65:2 65:8 77:12 77:14 86:9 88:19 99:2 99:2 125:5 157:3

**answered**(4) 77:3 149:14 150:1 159:16
**answering**(2) 13:20 77:8
**answers**(2) 73:4 86:9
**anthony**(23) 2:19 53:16 54:17 61:21 62:19 64:2 71:13 71:14 73:7 101:23 109:10 141:18 141:19 154:17 158:3 163:5 163:24 164:5 182:2 188:2 188:18 189:5 190:1
**anthony's**(5) 63:8 101:23 108:1 164:18 164:23
**any**(73) 5:22 7:1 10:7 10:11 11:3 11:7 13:12 13:13 18:14 19:8 20:10 20:13 20:13 21:19 22:2 23:13 23:16 27:2 34:1 34:5 34:13 37:17 37:21 40:21 40:24 43:16 43:24 43:24 45:5 44:6 46:8 46:8 57:2 59:14 61:19 63:18 84:12 86:10 91:10 105:10 107:15 108:4 110:11 110:18 115:18 115:22 116:14 117:11 117:22 118:4 118:17 118:22 119:24 122:6 122:21 126:6 126:8 126:8 126:9 128:3 143:5 150:2 160:10 167:25 180:12 181:6 181:8 186:11 188:15 189:1 189:6 193:19

**anymore**(1) 125:19
**anyone**(4) 10:6 99:1 129:19 142:22
**anything**(20) 11:18 17:19 17:22 18:3 26:15 30:7 46:8 46:14 65:11 77:1 87:10 94:20 107:8 109:13 122:20 128:1 139:18 168:1 174:1 183:11

**anywhere**(4) 21:6 77:6 151:1 157:16
**apartment**(1) 23:1
**apologize**(12) 31:18 55:10 65:25 73:1 78:3 78:23 128:3 150:16 152:22 158:25 165:10 177:7
**app**(1) 31:21
**appeals**(1) 31:19
**appear**(1) 17:10
**appears**(1) 82:1
**appellate**(1) 31:20
**applicable**(1) 6:20
**application**(59) 7:1 9:7 9:21 10:1 10:2 10:22 15:22 21:12 23:3 23:6 23:15 46:17 58:13 59:12 62:3 62:17 64:10 66:4 67:4 89:18 90:1 102:20 104:25 113:18 113:22 114:2 114:4 114:5 114:15 114:21 136:5 136:6 136:13 143:12 143:21 143:23 144:1 144:7 144:10 144:13 144:18 144:18 144:23 144:23 145:1 145:18 146:17 146:20 146:21 148:6 149:8 153:17 153:21 153:22 156:10 157:16 160:23 163:22 176:18

**applications**(1) 24:15
**applied**(4) 51:10 82:13 84:4 187:18
**applies**(2) 30:6 30:8
**apply**(11) 8:24 9:3 10:19 11:20 16:17 32:5 40:15 50:1 119:24 120:4 132:17
**applying**(1) 161:10
**appraised**(2) 56:21 133:11
**appraiser**(3) 56:22 90:9 133:10
**appraisers**(2) 56:21 58:15
**appreciate**(2) 36:19 143:19
**approach**(5) 4:16 4:24 102:2 105:18 156:4
**appropriate**(3) 11:8 36:3 59:13
**approved**(1) 177:24
**approximat**(1) 119:7
**approximately**(16) 9:23 28:14 68:15 116:8 118:10 132:23 132:25 138:6 148:22 150:7 150:8 150:17 150:24 151:10 151:13 187:22

**approximation**(1) 150:2
**april**(5) 106:18 109:17 121:21 121:25 163:14

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **are**(80) 4:9 4:11 5:2 6:9 6:10 9:13 9:18 9:18 9:18 10:6 11:4 16:22 17:25 19:19 21:3 21:16 22:12 23:15 27:3 27:16 28:3 29:25 30:11 34:6 34:10 35:12 35:24 36:1 37:11 42:17 42:20 42:20 42:22 45:21 46:4 46:7 46:9 46:9 48:2 48:17 52:23 53:1 53:14 83:4 86:9 88:6 102:13 102:17 120:23 121:4 126:4 126:19 126:25 127:5 127:5 127:13 129:12 130:8 130:11 130:16 146:1 147:1 149:5 152:23 153:2 153:4 154:1 154:2 156:17 158:21 159:12 165:6 177:9 179:2 179:24 182:14 186:2 186:6 187:4 191:8 | | **attacks**(2) 35:25 37:19 **attempt**(2) 108:25 178:22 **attempted**(1) 167:3 **attempting**(1) 126:3 **attendance**(1) 78:11 **attention**(1) 87:8 **attorney**(11) 15:7 32:21 110:8 111:1 111:7 184:9 184:11 184:15 189:7 189:13 190:14 **audacity**(1) 171:18 **august**(5) 83:18 115:14 115:19 115:25 **authority**(8) 20:9 23:10 34:7 43:19 64:14 64:24 66:3 115:9 **authorization**(2) 42:16 94:2 **authorize**(1) 147:21 **authorized**(3) 19:24 20:11 20:14 **automatic**(9) 27:5 27:7 27:9 38:14 39:2 40:4 40:13 42:3 127:22 **availability**(1) 87:8 **available**(3) 46:25 66:25 97:12 **avenue**(1) 2:6 **average**(7) 148:13 150:9 150:19 150:22 151:3 151:3 151:4 **award**(1) 38:13 **awarded**(3) 27:2 29:1 117:11 **aware**(21) 29:22 41:8 41:15 49:24 67:2 88:6 88:19 97:15 101:24 102:13 108:19 110:19 110:23 111:1 116:3 156:17 157:5 157:8 160:16 160:18 165:7 **away**(5) 35:20 52:20 72:11 113:6 116:23 **azenie**(1) 30:12 **back**(73) 6:19 26:18 33:19 40:18 40:18 42:22 51:2 51:19 56:6 60:6 61:2 64:1 64:2 66:24 67:2 71:15 75:25 79:19 80:11 84:24 101:1 102:1 108:16 109:9 110:17 110:24 111:6 111:17 112:11 112:17 116:1 118:21 119:21 120:13 128:17 133:10 139:4 139:14 139:19 139:25 140:8 140:10 141:15 141:20 142:11 142:16 144:1 144:2 144:3 144:5 144:6 144:8 151:16 153:17 158:17 158:22 158:23 161:2 161:16 164:1 164:22 165:4 175:7 175:19 184:2 186:12 186:15 188:21 190:23 191:12 191:19 191:20 192:16 **background**(1) 119:25 **bad**(1) 119:4 **bailey**(1) 81:6 **balance**(1) 123:15 **balcony**(1) 56:6 **balloon**(6) 27:7 27:15 28:11 28:25 29:9 29:12 **bank**(15) 62:14 63:3 89:11 89:14 90:2 147:15 147:16 151:17 151:18 153:20 153:22 154:10 167:12 171:12 184:16 **banking**(6) 57:6 57:9 59:18 62:16 81:8 190:13 **bankrupt**(2) 180:11 180:24 **bankruptcy**(60) 1:1 1:19 6:1 8:6 27:4 28:12 29:20 31:1 32:18 32:21 32:25 34:13 35:13 36:7 36:18 36:19 36:23 36:24 37:1 37:3 37:7 38:1 38:8 39:8 45:21 100:24 100:25 101:15 110:5 110:19 110:13 110:20 111:4 111:25 112:3 117:4 117:22 117:23 124:3 179:10 179:11 179:16 180:25 181:3 181:7 184:3 184:5 184:7 184:11 185:4 185:25 189:7 189:12 190:4 190:14 191:11 191:17 191:25 192:17 192:24 **banks**(1) 119:6 **base**(4) 105:25 114:9 114:10 114:10 | **based**(24) 10:21 11:25 12:16 13:15 15:22 17:3 17:18 18:19 21:19 23:1 25:5 30:23 41:1 43:20 43:21 43:22 77:4 80:10 90:7 123:11 127:2 143:6 172:4 187:18 **basically**(6) 7:18 8:5 19:24 29:1 58:5 **basing**(1) 146:21 **basis**(15) 7:3 8:9 10:22 44:25 50:5 59:14 65:8 66:2 73:15 78:13 86:17 122:21 124:24 126:21 129:12 **bates**(4) 130:25 158:19 159:7 177:19 **bayview**(1) 90:6 **beach**(33) 1:26 4:3 4:4 4:7 4:23 5:1 5:5 5:8 5:12 5:20 5:25 18:22 18:23 24:3 24:23 24:24 26:10 26:17 26:20 32:14 32:15 34:16 35:1 35:4 35:15 39:25 40:1 102:18 129:1 129:5 149:19 149:23 152:15 **beach's**(1) 41:14 **bear**(1) 6:22 **beauregard**(20) 95:7 95:9 95:15 96:1 96:2 96:19 96:25 97:1 97:9 97:11 97:25 98:4 98:16 98:17 99:21 99:23 100:13 100:23 174:25 **beauregard's**(5) 96:5 96:8 98:5 100:15 177:1 **beautiful**(1) 53:23 **became**(2) 131:12 144:10 **because**(69) 4:18 12:6 15:1 17:20 30:20 32:2 32:9 33:24 36:20 38:7 38:25 39:18 40:17 44:15 44:21 44:25 49:4 52:19 52:2 56:6 56:13 66:5 67:2 69:15 70:7 72:12 75:17 83:24 83:25 84:14 86:24 87:1 87:4 90:3 96:15 97:13 97:21 102:20 103:20 104:8 112:9 117:20 118:20 119:3 119:8 123:14 127:10 127:10 134:10 134:18 134:21 150:23 151:11 157:13 158:1 159:7 160:4 161:17 164:18 164:22 173:21 174:2 179:24 183:5 184:8 186:12 189:5 191:12 193:19 **become**(1) 29:21 **becomes**(1) 43:17 **been**(51) 7:6 7:14 12:12 14:11 21:13 23:4 31:8 32:7 34:19 34:25 36:5 39:11 41:9 41:17 43:1 43:4 43:5 43:6 43:7 43:11 43:23 43:24 46:19 51:9 56:13 58:10 58:16 62:10 65:10 69:10 71:19 78:10 85:9 91:21 91:22 92:17 94:5 98:1 109:2 118:6 119:23 119:25 120:5 127:25 147:8 148:15 151:21 151:22 163:14 177:24 **before**(39) 1:18 7:4 8:2 12:2 12:13 21:8 28:12 28:15 35:3 36:22 42:11 51:10 56:5 56:25 58:2 58:18 65:6 67:23 69:19 81:4 87:24 99:13 103:22 114:3 123:9 128:24 129:23 133:3 133:7 136:5 136:18 136:19 136:25 143:3 146:12 149:15 161:2 170:4 174:3 **began**(2) 129:22 129:23 **begin**(2) 47:12 128:25 **beginning**(2) 25:16 75:11 **begins**(3) 74:23 75:3 97:24 **begun**(1) 57:19 **behalf**(22) 4:4 6:5 8:19 12:25 19:7 19:12 19:15 20:2 20:14 22:23 26:23 32:15 41:6 63:7 94:5 95:16 102:9 102:15 104:22 105:4 129:10 184:10 **behind**(3) 49:21 92:25 100:1 **being**(29) 8:6 11:1 11:6 15:5 15:5 15:6 44:11 79:1 79:7 79:3 79:9 84:11 95:15 99:22 100:12 120:10 128:3 146:18 164:1 164:10 168:18 177:10 **belief**(5) 64:22 64:23 65:3 66:2 118:20 | **believe**(42) 5:13 6:8 8:22 10:25 12:19 26:10 27:14 33:12 36:7 36:25 45:8 46:4 48:4 57:19 74:19 77:18 78:8 80:21 83:4 102:10 103:20 108:11 112:19 129:25 130:5 135:25 136:3 136:4 148:4 150:6 169:10 181:3 183:10 183:10 183:11 183:14 186:9 188:4 188:25 190:1 193:5 193:9 **believed**(2) 116:25 164:18 **belongings**(1) 119:2 **below**(1) 137:12 **beneficial**(1) 19:22 **benefit**(1) 38:19 **bernadine**(4) 95:7 174:24 175:20 176:24 **best**(5) 56:1 104:3 149:15 149:16 149:16 **better**(8) 16:8 48:7 55:17 73:2 99:12 150:16 155:6 158:4 **between**(17) 15:1 19:5 22:8 22:13 23:20 24:5 24:22 96:1 97:25 107:3 115:19 143:7 150:21 161:1 181:6 184:14 186:5 **beyond**(3) 46:8 115:18 149:24 **bid**(1) 101:10 **big**(1) 108:1 114:23 186:13 186:17 **biggest**(1) 171:17 **bind**(5) 19:7 19:12 20:9 23:11 25:4 **binder**(11) 4:9 42:9 47:25 58:22 69:25 81:16 94:1 100:8 113:17 115:2 181:24 **binders**(4) 47:21 47:24 130:12 130:13 **binding**(1) 23:17 **bit**(12) 13:4 35:13 36:22 50:24 83:22 83:24 84:14 99:12 122:11 135:7 137:7 143:8 **black**(2) 130:11 130:13 **black's**(1) 21:23 **block**(2) 147:3 185:8 **blue**(1) 93:5 **body**(1) 49:19 **bookkeepers**(1) 190:3 **books**(3) 119:15 189:17 190:5 **borrow**(4) 161:4 162:17 162:21 164:4 **borrowed**(5) 117:20 160:11 161:9 161:25 164:11 **borrower**(3) 19:15 161:7 176:14 **borrower's**(4) 19:15 82:15 82:20 176:16 **borrower/broker**(1) 176:19 **borrowing**(2) 160:19 162:3 **both**(14) 11:2 19:3 22:7 32:17 33:3 33:4 71:1 73:7 94:10 105:18 134:13 173:7 173:13 175:4 **bottom**(16) 58:19 82:24 130:20 130:22 130:24 137:23 147:3 158:19 159:3 172:22 176:1 176:4 177:19 182:9 182:19 182:20 **bound**(2) 24:12 63:17 **boxes**(1) 186:11 **bradley**(1) 48:15 **brandywine**(1) 1:32 **break**(6) 41:24 54:3 98:24 98:25 170:4 193:18 **breaking**(1) 191:1 **breathing**(1) 109:14 **bridge**(3) 42:25 173:10 173:12 **bridgeport**(12) 56:1 56:18 57:3 57:11 57:14 57:17 57:23 59:18 61:2 64:10 72:9 129:23 **bridgeport's**(1) 139:22 **brief**(6) 6:9 10:13 11:24 22:19 27:16 30:1 37:24 40:2 41:7 44:2 47:4 48:23 **briefing**(2) 29:6 30:4 **briefly**(4) 23:23 77:13 145:5 145:19 |
| **area**(12) 52:5 52:9 52:22 58:17 134:6 134:17 134:22 147:1 168:23 168:24 172:2 172:2 **aren't**(1) 131:22 **arguably**(1) 21:9 **argue**(3) 18:17 23:18 42:12 **arguing**(1) 13:5 40:8 **argument**(12) 5:14 6:9 6:10 8:24 11:17 18:17 33:22 34:10 34:18 34:22 35:19 35:20 **arguments**(4) 8:10 11:24 37:19 39:19 **arizona**(1) 36:7 **around**(9) 39:18 53:3 57:16 60:6 61:14 80:21 135:5 139:20 180:10 **arranged**(1) 48:9 **arrangement**(1) 107:3 **arrow**(1) 108:2 **articles**(1) 169:17 **aside**(4) 30:9 30:21 32:3 49:11 **ask**(12) 23:21 64:21 65:23 65:23 67:25 75:8 83:7 87:13 109:11 122:9 158:11 180:12 **asked**(15) 13:23 62:1 63:2 76:23 76:25 76:25 85:8 85:16 85:25 87:3 88:1 89:5 122:17 125:2 157:19 **asking**(8) 6:18 7:21 25:19 38:4 38:25 39:1 71:4 142:17 **aspect**(1) 117:23 **assert**(3) 11:5 30:23 40:19 **asserted**(3) 30:5 79:2 79:3 **asserting**(1) 10:21 **assertions**(1) 126:10 **asset**(16) 64:15 64:24 66:3 66:11 66:14 67:9 111:8 119:25 120:5 121:4 151:24 151:25 155:20 155:21 155:23 157:12 157:13 **assets**(2) 151:16 153:24 **assigned**(1) 21:24 **assigns**(5) 27:13 34:3 34:6 34:19 37:11 **assist**(5) 100:13 100:20 107:4 163:8 173:10 **assistance**(1) 7:24 **assistant**(2) 71:22 79:18 **assisting**(1) 173:7 **association**(1) 14:16 **assume**(3) 115:20 142:24 143:4 **assumed**(1) 116:11 **assumes**(1) 67:12 **assuming**(2) 137:16 166:16 **assumption**(1) 178:13 **assurance**(18) 72:15 79:14 80:13 80:16 80:25 81:3 95:20 100:17 141:21 141:22 142:4 175:18 175:20 178:10 178:20 179:8 180:4 180:13 **assurances**(2) 96:3 175:23 **assured**(1) 60:14 **atlanta**(1) 108:3 **attached**(4) 14:7 29:25 40:21 177:20 **attachment**(1) 177:13 **attack**(6) 8:12 10:23 35:23 36:13 41:3 42:24 **attacking**(1) 42:24 | | | | | | |

| Word | Page:Line |
|------|-----------|

**bring**(10) 19:2 30:5 37:7 42:9 44:10 96:1 101:9 101:12 101:16 181:20

**brings**(2) 26:17 95:24
**broadcasts**(1) 49:18
**broker**(22) 19:13 19:14 19:24 20:9 20:12 20:18 20:20 21:21 22:13 22:13 22:22 22:25 23:5 23:8 23:9 23:10 23:12 55:7 57:21 129:15 143:5 160:24

**broker's**(1) 135:22
**brokers**(3) 22:15 24:6 55:4
**brought**(11) 10:20 34:25 36:18 41:3 42:10 42:18 43:2 44:16 79:18 95:15 96:3

**brown**(3) 101:22 102:3 102:14
**brown's**(1) 104:6
**builder**(3) 79:20 131:6 166:4
**builder's**(1) 131:9
**building**(1) 1:32 79:19 134:21
**buildings**(1) 23:1
**bullet**(5) 182:7 182:9 182:18 182:21
**bullet's**(1) 127:24
**bunch**(1) 114:25
**burden**(6) 6:23 24:2 35:11 73:9 73:14  76:21

**bureau**(4) 121:9 121:12 121:19 122:1
**burnt**(6) 50:1 53:12 54:16 81:24 167:7 168:13

**business**(26) 16:12 30:17 50:3 50:11 50:14 50:15 50:17 52:17 64:3 108:3 119:21 154:19 156:20 158:1 167:17 168:5 168:8 168:11 168:24 169:16 171:20 177:11 177:25 187:7 188:2 190:10

**business-wise**(1) 134:16

**but**(167) 8:14 10:12 12:19 16:5 17:2 17:6 17:16 18:3 18:19 21:23 22:14 22:15 22:19 24:10 25:22 26:6 26:11 29:1 33:13 33:21 34:9 34:11 35:7 35:8 35:12 35:18 35:19 36:8 36:12 36:23 36:25 37:9 37:20 38:23 40:2 40:11 40:23 40:25 41:14 44:12 48:7 49:7 52:21 53:2 54:7 56:1 58:18 60:14 61:11 66:24 67:7 68:5 70:20 73:21 74:10 74:12 76:22 80:22 83:25 83:4 83:22 84:15 85:7 86:6 86:9 87:2 87:8 88:10 88:13 90:9 97:12 97:19 98:6 98:8 98:10 98:12 99:2 99:16 105:15 106:12 112:18 113:1 114:6 115:21 115:21 116:23 117:9 119:5 122:9 122:17 124:1 127:25 131:21 131:23 132:10 133:4 134:2 135:5 135:10 136:3 138:8 139:7 139:14 139:19 140:4 140:9 140:19 140:20 140:24 141:15 141:22 142:11 146:14 147:8 147:9 147:20 148:11 150:10 151:22 154:25 155:10 155:20 155:23 156:1 156:20 156:22 157:12 157:13 157:15 157:17 158:11 159:2 159:16 159:22 159:25 160:1 160:7 160:16 161:25 163:15 164:1 168:1 168:18 169:9 171:11 173:9 178:7 178:10 178:17 178:20 179:4 179:13 179:24 181:1 183:25 184:11 184:13 184:15 189:12 191:19 191:21 192:13 193:4

**buy**(4) 24:18 101:24 102:1 102:8
**buying**(1) 164:7
**cal**(2) 31:21 180:21
**calaman**(1) 194:9
**calculated**(1) 32:6
**calendar**(3) 51:12 51:14 51:14
**california**(25) 14:4 14:9 14:24 15:3 15:4 16:23 17:18 18:12 19:16 27:5 30:11 30:13 31:20 35:21 40:22 48:16 52:4 52:22 53:2 97:12 112:2 113:5 134:11 134:18 172:4

**call**(17) 47:12 60:2 69:3 69:6 69:9 71:12 80:21 93:10 93:13 93:14 111:15 130:25 141:22 183:17 183:18 184:8 188:8

**called**(17) 33:15 33:21 49:7 54:17 55:3 64:20 71:14 71:15 84:13 134:24 141:19 142:22 153:20 154:10 161:21 174:3 184:12

**calling**(2) 89:9 183:16
**calls**(6) 47:14 69:5 142:15 156:24 183:15 184:13

**camario**(1) 49:14
**came**(16) 23:24 50:1 54:20 55:25 57:16 61:10 61:12 63:18 69:13 110:1 114:16 117:6 139:14 139:18 161:2 161:16 165:12 165:15 183:11

**camera**(1) 167:23
**can**(71) 5:10 7:16 8:24 14:6 15:8 15:11 15:12 15:15 15:15 15:20 16:5 18:1 18:17 21:18 28:17 31:24 32:6 36:19 42:2 44:6 44:22 46:11 46:14 48:1 48:6 48:8 48:13 48:23 54:4 54:6 54:7 58:17 60:25 63:5 63:20 63:21 64:21 69:24 72:22 72:22 74:13 84:20 87:21 98:16 99:1 99:9 100:7 101:6 102:12 104:3 104:4 105:23 108:20 109:11 109:13 115:1 117:13 124:20 136:1 137:25 142:6 142:24 143:4 152:16 158:3 159:3 165:13 182:12 188:12 190:23 193:16

**candice**(1) 2:20
**candidate**(1) 120:11
**can't**(1) 119:22
**card**(1) 167:15
**care**(3) 47:7 66:6 98:12
**cared**(1) 53:4
**carefully**(3) 145:10 145:15 145:16
**carol**(2) 170:12 176:25
**cart**(1) 47:21
**case**(43) 1:7 11:19 16:7 16:17 18:15 18:15 22:17 22:21 27:4 29:20 29:24 30:22 31:2 31:25 32:18 35:22 36:1 36:2 36:11 36:18 36:24 37:7 37:24 38:13 39:9 41:9 43:9 43:10 44:22 45:5 46:10 46:12 47:12 65:22 90:24 159:22 159:25 160:4 185:3 185:4 186:13 190:4 192:24

**cases**(3) 9:3 22:12 30:11
**cash**(1) 137:23
**catch**(1) 183:1
**caught**(1) 138:24
**caused**(1) 171:3
**cd's**(1) 147:18
**cede**(5) 5:16 6:1 26:20
**center**(2) 136:21 159:3
**central**(3) 52:3 52:17 52:22
**centre**(1) 2:14
**certain**(5) 9:16 24:1 25:17 38:2 91:6
**certainly**(8) 31:16 33:8 37:3 37:5 40:25 42:21 46:22 54:12

**certificate**(3) 63:9 63:12 177:23
**certification**(2) 14:14 194:2
**certify**(1) 194:3
**cetera**(2) 18:13 42:7
**chain**(2) 42:2 96:5
**challenged**(1) 38:6
**challenging**(2) 38:4 38:5
**chance**(1) 124:25
**change**(3) 31:9 80:23 168:14
**changed**(6) 7:19 7:23 113:9 132:11 132:12 133:5

**changes**(1) 29:9

**chapter**(1) 1:4 39:8 110:5 110:8
**character**(2) 9:12 9:14
**characteristics**(1) 19:21
**charges**(2) 136:17 137:16
**chase**(19) 18:25 19:3 19:5 19:7 19:23 19:24 20:1 20:19 21:1 21:25 22:3 22:8 22:9 23:21 24:5 24:16 24:22 133:16 133:18

**cheated**(1) 109:2
**check**(4) 102:24 105:3 116:2 186:11
**checked**(2) 136:12 160:13
**checking**(1) 147:6
**chicago**(2) 68:20 81:12
**chicken**(1) 35:14
**choice**(1) 52:8
**choose**(1) 21:24
**choosing**(2) 21:4 134:10
**chose**(2) 97:20 134:17
**christopher**(1) 1:18
**circuit**(1) 22:22
**circumstance**(1) 40:15
**circumstances**(4) 42:7 64:4 133:5 171:3
**citation**(2) 42:19 88:7
**cite**(3) 30:14 30:16 76:4
**cited**(2) 21:18 35:22
**cites**(2) 12:9 12:20
**city**(8) 49:5 52:6 53:7 120:6 135:5 135:6 169:6 169:8

**claim**(33) 4:9 4:11 5:6 6:18 6:21 7:4 9:6 9:9 9:17 10:21 11:2 11:10 12:17 36:21 37:4 37:8 40:3 70:12 111:5 111:8 111:11 112:21 113:1 117:4 117:16 117:12 117:20 122:21 126:21 127:1 128:15 138:18 139:3 193:16

**claimant**(5) 2:11 3:4 31:25 47:14 105:24
**claimants**(1) 47:17
**claims**(5) 122:7 126:18 128:12 129:12 186:10

**clarification**(4) 44:2 77:25 78:4 78:25
**clarified**(1) 142:4
**clarify**(3) 30:25 44:4 67:8
**clarity**(1) 31:23
**clark**(1) 31:20
**cleaned**(1) 167:12
**clear**(10) 12:1 12:12 13:19 13:23 19:8 25:5 37:16 40:9 72:2 76:23

**clearer**(1) 138:8
**clearly**(6) 13:16 13:18 25:7 33:25 35:22 87:25

**clerk**(6) 41:22 47:18 48:20 99:8 129:4 170:1

**client**(2) 97:10 163:6
**client's**(1) 127:25
**clients**(4) 49:1 50:4 164:18 168:19
**close**(16) 15:10 36:24 56:5 56:10 58:10 58:10 61:24 71:9 72:9 83:3 133:2 133:4 137:23 138:3 150:4 150:4

**closed**(13) 30:2 43:11 83:6 83:16 85:10 86:2 115:14 165:8 166:11 189:3 189:10 189:10 192:24

**closely**(1) 50:7
**closing**(27) 15:6 56:2 56:20 61:13 61:16 81:13 81:23 83:3 83:7 83:8 83:14 88:2 88:20 115:3 115:24 116:11 118:11 129:18 132:20 132:23 138:11 139:5 141:13 142:1 162:14 162:15 166:14

**club**(1) 50:5
**coast**(4) 52:4 52:17 52:22 134:1
**code**(2) 31:1 34:15

**collateral**(8) 8:7 10:20 35:23 35:25 36:13 37:19 41:2 43:21

**collateralized**(2) 155:15 155:18
**collaterally**(2) 40:20 42:24
**column**(8) 49:11 82:2 82:14 82:20 82:24 114:9 149:13 186:5

**columns**(2) 82:19 186:6
**combined**(3) 148:1 148:1 155:7
**come**(33) 17:4 25:16 40:18 47:24 51:23 54:15 62:1 62:12 63:23 66:20 71:23 80:24 83:5 83:16 90:9 92:22 95:6 101:20 102:5 104:14 110:4 119:20 135:8 139:4 142:23 160:17 162:10 162:20 163:3 164:5 164:23 179:7 179:7

**comes**(1) 7:7
**comfortable**(1) 140:9
**coming**(15) 21:9 24:3 25:9 54:18 69:21 71:15 80:22 162:5 163:2 163:5 164:5 164:20 169:2 169:14 179:24

**commence**(2) 5:13 172:8
**comment**(3) 40:2 70:15 106:20
**comments**(2) 41:14 70:24
**commercial**(2) 49:1 50:3
**commit**(1) 20:9
**commitment**(7) 23:16 98:5 98:7 99:22 175:9 175:23 176:12

**commitments**(3) 19:8 20:2 25:4
**committed**(1) 67:4
**committee**(6) 2:4 40:1 41:6 41:8 41:12 41:15

**committees**(1) 112:10
**common**(1) 15:13
**communicated**(2) 68:14 104:9
**communication**(1) 109:2
**communications**(1) 110:12
**communities**(1) 52:7
**community**(6) 49:4 49:11 49:12 53:20 53:21 151:11

**companies**(3) 14:18 23:10 23:12
**company**(16) 22:17 22:24 23:3 23:6 23:8 23:11 23:16 23:19 50:23 52:12 56:1 63:8 155:13 158:14 171:10 171:14

**compensated**(2) 24:16 24:16
**complaint**(3) 30:22 36:3
**complaints**(1) 112:14
**complete**(4) 58:9 59:11 123:13 176:18
**completed**(2) 109:18 111:15
**completely**(6) 8:25 15:14 16:19 36:16 51:17 110:21

**compliance**(2) 14:12 18:2
**comply**(1) 95:23
**component**(1) 9:5
**comprised**(1) 14:17
**computer**(5) 167:18 167:21 169:17 171:18 171:19

**computers**(1) 48:3
**conaway**(5) 1:24 4:4 8:19 12:25 129:10
**conceded**(1) 37:3
**conceding**(1) 35:16
**concept**(2) 22:12 188:5
**concern**(3) 16:13 33:9 142:25
**concerned**(2) 141:9 142:23
**concerning**(1) 31:23
**concerns**(5) 42:23 56:19 73:8 142:12 143:2
**concise**(1) 73:4
**concluded**(1) 100:22
**conclusion**(1) 64:20
**condition**(2) 107:16 107:25
**conditions**(2) 20:5 176:13

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **conduct**(9) 7:3 9:16 24:4 24:21 108:17 125:14 126:19 126:20 127:2 | | **correct**(301) 17:16 27:20 27:25 28:8 28:22 30:3 31:6 60:11 63:3 67:11 67:15 68:16 70:9 70:23 71:7 79:2 84:3 84:9 84:10 85:6 86:3 86:22 89:25 90:3 93:24 94:25 95:18 97:2 100:14 103:7 104:10 106:16 107:14 109:19 109:20 114:19 114:20 115:16 116:6 116:10 116:13 116:19 118:1 118:15 121:10 121:13 121:20 122:2 122:17 129:13 129:14 129:16 129:17 129:20 129:21 130:20 131:6 131:7 131:9 131:10 131:12 131:13 131:23 131:25 132:3 132:13 132:4 132:7 132:8 132:11 132:12 132:15 132:16 132:19 132:25 133:1 133:8 133:9 133:12 133:13 133:15 133:17 133:17 133:20 133:22 134:1 134:4 134:7 134:11 135:11 135:12 135:15 135:16 135:24 136:7 137:3 137:9 137:14 137:20 137:21 138:3 138:4 138:11 138:12 139:5 139:6 140:11 140:12 140:14 140:17 140:18 140:21 140:22 140:22 141:1 141:2 141:10 141:14 141:16 141:25 142:1 142:9 142:10 142:13 143:12 143:13 143:21 143:22 143:24 144:9 144:12 145:4 146:8 146:15 146:16 146:18 146:19 146:23 147:7 147:17 147:21 147:25 148:6 148:7 148:9 148:10 148:24 149:17 149:18 149:21 149:22 150:19 150:20 151:18 151:19 151:23 152:2 152:4 152:5 153:21 154:6 154:13 154:14 154:16 154:21 155:2 155:8 155:9 155:11 155:13 155:14 155:16 155:24 155:25 156:2 156:11 157:6 157:7 157:14 159:17 159:18 159:25 160:8 160:13 161:14 161:18 161:24 162:18 162:19 162:22 163:9 163:10 163:13 163:13 163:18 164:2 164:3 164:15 164:24 164:24 165:21 165:22 165:24 165:25 166:2 166:4 166:5 166:6 166:8 166:9 166:11 166:12 166:23 166:24 167:1 167:2 167:4 167:5 167:9 167:10 167:11 167:13 167:17 167:17 167:23 167:24 168:5 168:8 168:9 168:11 168:12 168:14 168:15 168:17 169:5 169:6 169:14 169:20 170:4 170:10 170:12 170:17 170:23 170:25 171:1 171:4 171:5 171:12 171:13 171:15 171:16 171:21 171:22 172:2 172:6 172:10 172:15 172:16 172:19 172:20 173:7 173:16 173:17 173:20 173:23 174:11 174:16 174:17 174:20 174:21 174:21 174:23 174:24 175:5 175:6 175:9 175:10 175:12 175:14 175:15 175:17 175:25 176:19 176:20 176:23 177:5 177:11 177:12 177:16 177:17 177:21 178:1 178:14 178:10 178:20 179:16 | | **could**(66) 8:23 11:5 12:11 21:9 21:13 23:5 33:8 33:19 33:20 35:8 36:17 43:15 43:16 46:5 52:20 56:2 56:16 56:18 57:3 60:3 60:15 62:2 65:22 66:11 66:11 66:13 66:21 67:9 71:25 72:1 77:8 77:24 81:15 84:16 89:9 91:23 92:19 93:25 95:20 100:17 112:11 118:20 119:16 130:6 132:5 135:18 136:8 136:20 139:19 140:4 140:25 141:4 141:12 141:21 142:9 143:1 145:23 147:25 158:11 169:22 179:12 181:21 183:1 183:2 187:24 189:14 | | **court**(52) 130:24 138:14 138:22 138:24 142:6 142:19 143:9 143:14 143:16 149:2 149:5 152:14 152:18 152:21 153:10 153:25 156:6 157:1 157:3 158:21 158:24 159:1 159:5 161:12 161:15 161:19 161:22 161:25 162:2 162:7 169:23 170:2 170:6 181:22 182:2 182:4 182:10 182:14 182:17 182:20 182:22 182:24 185:17 185:19 185:21 190:24 192:5 192:17 193:5 193:9 193:13 193:16 |
| **conduit**(2) 24:6 69:11 | | | | | | **court's**(4) 27:11 42:18 42:24 43:21 | |
| **confirm**(3) 98:16 177:15 177:22 | | | | | | **courtroom**(1) 1:9 | |
| **confirmed**(1) 13:11 | | | | | | **covered**(1) 34:20 | |
| **confused**(1) 166:20 | | | | | | **covers**(1) 27:14 | |
| **confusion**(1) 83:25 | | | | **couldn't**(10) 8:22 8:22 56:12 65:11 75:20 76:8 85:18 88:10 139:17 157:25 | | **cpa**(1) 62:10 | |
| **connection**(9) 4:14 5:6 5:14 11:6 21:10 25:17 59:15 77:16 127:19 | | | | | | **cracks**(1) 58:5 | |
| | | | | **couldn't**(1) 119:3 | | **create**(3) 19:18 20:17 21:19 | |
| **conscious**(1) 52:3 | | | | **council**(4) 52:6 135:6 169:6 169:8 | | **created**(10) 19:11 63:9 64:1 64:2 64:5 64:6 66:19 122:15 152:3 152:7 | |
| **consequential**(3) 127:12 127:13 128:5 | | | | **counsel**(24) 5:17 6:2 6:6 6:12 12:13 12:17 13:10 29:20 33:17 35:6 35:16 40:3 42:12 42:19 46:20 47:2 53:13 64:22 65:13 68:1 72:25 78:18 87:25 149:9 | | | |
| **conservation**(1) 120:7 | | | | | | **creation**(1) 64:14 | |
| **consider**(2) 53:9 57:3 | | | | | | **credibility**(7) 8:5 8:7 8:13 10:23 12:18 12:22 77:9 | |
| **consideration**(1) 69:15 | | | | | | | |
| **considered**(2) 23:5 189:3 | | | | **counsel's**(1) 100:1 | | **credible**(1) 33:22 | |
| **considering**(1) 105:9 | | | | **counter**(3) 131:9 131:11 132:3 | | **credit**(53) 20:2 60:2 60:3 60:9 60:12 60:19 69:4 69:10 69:12 69:16 69:16 70:7 90:10 90:10 90:12 90:16 90:18 90:19 91:12 91:15 91:15 91:22 91:24 92:1 92:12 92:16 110:24 120:12 121:9 121:12 121:19 122:1 123:14 123:23 124:5 125:9 125:11 125:12 125:15 125:16 126:12 126:20 126:23 126:24 127:3 127:13 136:12 139:23 140:16 141:6 161:17 176:18 188:9 | |
| **consistent**(3) 70:6 70:18 94:4 | | | | **countrywide**(1) 30:12 | | | |
| **construction**(2) 53:1 53:3 | | | | **county**(6) 49:8 49:9 49:10 49:14 52:9 | | | |
| **construed**(2) 20:15 42:20 | | | | **couple**(8) 4:13 41:25 42:23 55:3 56:14 139:9 135:17 141:18 | | | |
| **consult**(1) 114:2 | | | | | | | |
| **consultative**(1) 21:3 | | | | **course**(9) 5:15 7:3 26:12 35:12 47:21 64:11 90:6 142:22 188:9 | | | |
| **consulting**(2) 134:19 134:23 | | | | | | | |
| **consumer**(1) 24:18 | | | | | | | |
| **contact**(8) 13:9 88:21 88:22 97:14 110:11 129:19 133:8 135:14 | | | | **courses**(3) 14:12 14:14 14:20 | | **creditor**(1) 185:25 | |
| | | | | **court**(301) 1:1 4:2 4:4 4:6 4:22 4:25 5:4 5:7 5:9 5:18 5:24 6:3 6:7 6:15 7:5 7:7 7:22 7:24 8:7 10:1 10:14 10:17 10:24 11:14 12:23 15:17 15:19 16:1 16:3 16:5 16:25 17:7 17:14 18:4 18:6 18:9 18:22 22:19 22:21 22:22 23:4 23:7 23:13 23:22 24:2 24:10 24:23 25:14 25:20 26:3 26:9 26:15 26:19 26:24 27:18 27:23 28:1 28:3 28:6 28:9 28:13 28:16 28:20 29:1 29:4 29:16 29:21 30:2 30:20 31:5 31:8 31:13 31:16 31:19 32:11 32:13 34:9 34:17 35:2 35:7 35:10 35:21 36:8 36:8 36:14 37:21 38:1 38:8 38:10 38:12 38:20 38:24 39:5 39:14 39:16 39:24 41:4 41:16 41:19 42:2 42:11 42:13 42:14 43:19 44:3 44:7 44:12 44:16 44:19 44:22 45:6 45:17 45:25 46:16 46:18 47:5 47:7 47:13 47:16 47:19 47:24 48:2 48:5 51:5 51:11 53:13 54:3 54:6 54:10 54:12 55:9 55:13 55:16 55:19 60:17 60:24 61:3 62:6 62:8 62:21 62:25 63:19 66:7 66:20 67:5 67:14 67:22 68:2 68:8 68:11 68:13 68:17 68:25 69:7 70:11 72:5 72:18 72:20 72:25 73:3 73:17 73:20 73:24 74:5 74:9 74:13 74:17 74:20 74:25 75:2 75:5 75:9 75:13 75:15 75:18 75:21 75:24 76:2 76:6 76:9 76:11 76:13 76:16 76:18 77:17 77:15 77:23 78:2 78:5 78:15 78:17 78:23 79:4 79:6 79:24 81:7 81:19 85:4 85:11 85:13 85:15 85:19 85:21 85:24 86:6 86:14 86:19 86:23 87:13 87:16 87:23 88:8 88:11 88:13 88:24 89:2 89:19 89:24 90:14 90:21 92:7 93:9 93:12 94:21 96:17 96:21 96:24 97:1 97:4 97:8 97:9 98:10 98:14 98:19 98:21 98:23 99:5 99:8 99:9 100:5 100:8 102:12 102:19 102:25 103:3 103:5 105:17 105:19 105:20 105:22 106:4 106:6 107:19 107:22 117:16 117:25 118:3 120:23 120:25 122:8 122:14 122:22 122:25 123:4 123:7 123:10 123:18 123:24 124:7 124:10 124:12 124:15 124:18 125:2 125:4 125:8 126:16 126:18 126:21 125:24 126:1 126:8 126:13 126:17 127:4 127:7 127:17 128:7 128:23 130:8 130:11 130:14 | | **creditors**(2) 2:5 191:21 | |
| **contacted**(10) 84:17 85:9 87:12 92:22 93:22 94:23 101:20 112:9 133:18 172:1 | | | | | | **credits**(1) 14:21 | |
| | | | | | | **criminal**(1) 120:11 | |
| | | | | | | **critical**(1) 171:19 | |
| **contacting**(3) 92:25 94:5 173:21 | | | | | | **cross**(7) 3:3 63:19 63:20 105:15 128:23 128:25 129:7 | |
| **contemporaneous**(3) 98:19 98:21 99:20 | | | | | | | |
| **contended**(1) 37:25 | | | | | | **crows**(1) 48:15 | |
| **contention**(1) 23:7 | | | | | | **cure**(12) 37:14 40:17 43:14 49:2 95:12 98:8 157:22 167:3 170:21 174:19 181:8 184:6 | |
| **contest**(2) 30:5 32:17 | | | | | | | |
| **contested**(1) 4:9 | | | | | | **cured**(2) 11:25 95:16 | |
| **context**(4) 17:17 26:5 76:2 87:7 | | | | | | **current**(7) 31:3 38:6 48:19 96:4 96:12 101:13 101:17 | |
| **contingency**(2) 130:2 130:4 | | | | | | | |
| **contingent**(7) 98:6 175:16 175:18 176:9 176:12 176:22 176:22 | | | | | | **curtis**(1) 101:22 | |
| **continue**(16) 33:2 46:24 54:4 54:4 62:3 77:23 86:13 90:5 92:17 93:13 95:4 95:11 100:25 101:3 101:16 111:17 151:6 | | | | | | **customary**(2) 15:20 17:18 | |
| | | | | | | **customers**(1) 48:21 | |
| | | | | | | **customized**(1) 171:19 | |
| **continued**(4) 2:2 123:13 124:14 127:21 | | | | | | **customs**(7) 14:3 14:22 16:23 17:11 17:22 18:11 18:16 | |
| **continues**(3) 75:4 95:25 124:5 | | | | | | | |
| **continuing**(4) 14:20 72:7 75:11 127:15 | | | | | | | |
| **contorted**(1) 27:13 | | | | | | **dad**(2) 116:24 116:24 | |
| **contract**(5) 19:11 25:10 25:10 173:19 176:15 | | **correct**(55) 179:20 179:21 180:2 181:1 181:2 181:4 181:5 181:14 182:3 182:5 182:8 183:2 183:3 183:7 183:23 183:24 184:4 185:25 186:1 186:3 186:4 186:20 186:21 187:2 187:7 187:8 187:10 187:11 187:13 187:14 187:17 187:20 187:22 187:23 188:14 189:18 189:19 190:8 190:2 190:21 191:13 191:14 191:22 191:23 192:1 192:3 192:4 192:9 192:10 192:18 192:22 192:23 192:25 193:1 193:4 | | | | **damaged**(3) 53:5 127:25 167:16 | |
| | | | | | | **damages**(17) 30:7 31:24 32:5 38:13 39:1 39:1 40:19 40:24 118:22 123:21 126:10 126:14 127:2 127:12 127:14 128:5 | |
| **contracted**(1) 22:25 | | | | | | | |
| **contractor**(4) 20:18 21:21 21:22 22:14 | | | | | | | |
| **contradicts**(1) 98:1 | | **corrected**(1) 175:3 | | | | **darker**(1) 147:1 | |
| **contrary**(1) 176:21 | | **correctly**(2) 43:24 92:14 | | | | **data**(1) 1:39 | |
| **control**(6) 19:18 19:21 22:3 22:5 42:13 157:9 | | **correspondence**(1) 184:14 | | | | **date**(14) 68:22 94:4 102:1 107:10 116:4 124:4 125:14 135:7 165:19 169:9 169:10 176:2 176:6 194:9 | |
| | | **costs**(10) 56:3 61:13 61:16 83:3 83:9 118:11 132:20 132:23 138:11 139:5 | | | | | |
| **conversation**(22) 13:10 58:14 74:5 74:6 77:16 77:18 77:23 78:19 85:8 86:24 87:9 88:2 97:17 139:15 140:25 141:6 141:16 141:17 142:8 142:18 151:7 158:8 | | | | | | **dated**(6) 94:1 99:25 101:7 137:4 146:7 161:13 | |
| | | | | | | | |
| **conversations**(2) 13:10 143:6 | | | | | | **dates**(4) 15:9 15:22 15:24 190:6 | |
| **convincing**(1) 80:8 | | | | | | **day**(21) 9:12 41:14 51:30 93:5 58:2 80:15 83:6 83:18 91:14 91:20 93:5 93:13 93:14 114:25 135:11 137:5 139:23 141:3 145:15 161:15 166:10 178:13 193:20 | |
| **cook**(1) 53:24 | | | | | | | |
| **cooperate**(1) 59:11 | | | | | | | |
| **copies**(2) 22:19 105:21 | | | | | | | |
| **copy**(17) 4:16 57:7 59:19 66:22 66:24 74:21 105:8 135:11 135:22 136:16 136:17 137:2 144:7 156:5 156:8 182:1 184:2 | | | | | | | |
| | | | | | | | |
| **corner**(4) 130:20 130:22 172:23 177:19 | | | | | | | |
| **corp**(1) 50:24 | | | | | | | |
| **corporate**(3) 29:13 29:17 50:13 | | | | | | | |
| **corporation**(3) 1:9 31:21 172:4 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**days(9)** 25:9 54:20 139:14 140:9 141:18 145:16 165:1 177:11 177:25
**deaf(1)** 108:15
**deal(1)** 30:18
**dealing(4)** 40:11 93:4 98:4 176:25
**dealt(2)** 95:6 99:18
**dear(1)** 116:24
**debit(1)** 167:15
**deborah(9)** 2:11 3:5 4:9 26:23 27:4 47:14 47:17 50:12 156:12
**deborah's(2)** 49:7 80:22
**debt(8)** 32:1 69:17 101:10 117:22 188:5 188:8 188:15 192:7
**debtor(10)** 1:24 37:25 40:6 46:21 73:20 101:8 125:19 181:7 185:24 190:6
**debtor's(1)** 156:4
**debtors(86)** 1:11 4:5 4:15 4:20 5:2 6:11 6:22 6:23 7:2 7:14 7:19 8:20 9:4 9:8 10: 10:6 10:9 11:2 11:25 12:1 12:13 12:16 13:1 13:7 18:25 19:1 19:1 19:3 19:5 19:7 19:8 20:22 21:6 21:14 22:2 22:9 22:9 23:20 25:5 29:7 29:13 29:17 30:5 32:15 36:24 37:15 37:24 38:18 39:11 39:17 39:18 39:22 41:9 41:12 41:12 45:3 67:3 97:13 105:9 106:15 108:5 116:4 117:18 123:13 125:15 127:2 127:16 128:10 128:1 129:10 140:20 141:15 142:11 142:16 145:2 145:23 146:18 146:21 156:22 162:2 178:7 180:18 182:24 183:5 183:8 184:6
**debtors'(1)** 116:8
**debts(1)** 110:6
**december(9)** 30:14 51:15 92:24 94:7 102:4 103:7 150:21 151:5 188:23
**decide(5)** 17:15 18:4 18:18 24:11 45:12
**decided(10)** 30:14 31:22 51:24 61:21 94:25 95:3 112:1 134:13 135:6 143:11
**decision(8)** 7:13 52:1 52:3 80:10 134:17 172:1 180:10 180:23
**decisions(1)** 61:19
**declarant(4)** 77:19 78:2 78:6 86:20
**declarant's(2)** 78:7 78:11
**declaration(6)** 23:3 30:1 98:18 138:17 140:15 140:23
**declarations(1)** 159:9
**declared(1)** 179:10
**declaring(1)** 100:24
**decrease(1)** 168:21
**decreased(1)** 168:22
**deed(7)** 17:13 27:8 27:15 28:11 29:9 29:12 33:10
**deeds(1)** 14:17
**default(9)** 95:12 95:16 98:9 157:22 167:3 174:19 174:23 181:8 183:2
**defaults(3)** 43:14 170:21 171:4
**defect(4)** 40:16 42:17 42:18 43:23
**defective(1)** 45:1
**defendant(1)** 30:19
**defense(15)** 6:14 6:15 6:22 6:23 7:21 7:25 8:1 9:2 9:17 11:6 11:9 29:4 30:6 67:3
**defenses(6)** 9:4 11:3 11:3 11:4 117:18 117:18
**defer(1)** 11:22
**deficient(1)** 123:14
**defies(1)** 33:16
**define(1)** 52:5
**defined(1)** 21:22

**definition(2)** 86:12 86:25
**delaware(4)** 1:2 1:8 1:11 4:1
**delinquency(1)** 92:1
**delinquent(3)** 91:21 91:23 182:12
**deliver(1)** 115:6
**delivered(4)** 102:21 103:1 105:2 144:5
**demonstrates(1)** 124:2
**denial(1)** 26:13
**denied(4)** 44:5 44:8 46:19 123:22
**denny(1)** 2:15
**deny(6)** 10:25 18:10 25:14 41:1 41:24
**department(4)** 7:9 170:19 174:16 175:3
**depend(1)** 42:6
**depo(1)** 158:3
**depose(2)** 97:19 97:21
**deposed(2)** 76:20 76:22
**deposing(1)** 97:20
**deposit(6)** 63:9 63:12 68:20 82:4 102:24 177:23
**deposition(31)** 12:3 12:12 12:13 21:15 29:12 32:20 37:16 74:2 74:14 74:20 85:5 85:11 88:1 135:21 148:11 148:14 148:18 148:19 148:22 148:24 149:1 149:3 149:20 150:12 152:6 152:19 154:15 155:16 158:6 159:15 174:3
**depositions(1)** 41:10
**depth(1)** 50:24
**describe(2)** 13:18 63:5
**describing(2)** 24:19 37:25
**description(4)** 16:2 16:8 16:9 48:23
**design(3)** 134:22 168:17 172:14
**designations(1)** 74:21
**designed(2)** 8:9 25:16
**designee(2)** 29:13 29:18
**designees(1)** 74:2
**designer(1)** 48:25
**desk(3)** 58:3 58:4 58:9
**despite(1)** 96:11
**destroyed(3)** 167:10 167:11 171:11
**determine(11)** 7:16 7:23 18:25 19:16 20:4 22:1 23:5 45:8 45:13 46:11 175:14
**determined(3)** 176:14 188:15
**determining(2)** 134:20 188:12
**detriment(1)** 7:17
**developed(1)** 128:8
**diaz(1)** 1:39

**did(244)** 7:11 12:2 12:12 12:14 13:4 13:9 18:4 18:16 19:5 22:22 28:22 29:21 31:25 32:17 35:18 39:22 40:6 40:9 42:15 46:20 46:21 49:10 49:13 49:16 49:17 49:25 50:13 50:13 50:18 51:23 51:25 52:1 52:13 52:15 53:8 53:10 53:10 54:15 54:17 54:21 55:1 55:3 58:12 59:2 59:15 59:23 59:23 60:12 60:18 60:19 61:19 61:25 62:1 62:12 62:17 63:23 64:14 64:17 65:17 66:10 66:20 68:22 71:8 72:10 73:5 73:8 73:11 77:2 77:10 77:10 80:4 80:13 80:19 81:3 81:13 81:14 83:10 83:16 83:21 83:23 84:3 84:6 84:7 84:11 85:15 87:17 87:24 88:21 88:22 89:8 89:14 89:18 89:23 90:4 90:5 90:24 90:25 91:3 91:4 91:10 91:17 92:14 92:17 92:22 94:16 95:3 95:5 95:6 95:8 97:13 100:20 100:23 100:25 101:2 101:3 101:5 101:16 101:20 102:2 102:5 102:7 104:14 104:17 104:18 104:23 107:2 108:1 109:3 109:5 109:8 109:9 109:11 110:4 110:4 110:7 110:14 111:3 111:4 111:7 111:11 111:12 111:16 111:19 112:8 112:1 112:24 112:25 113:1 113:22 113:23 114: 114:3 114:18 114:21 115:5 115:20 116:14 117:1 117:4 118:16 118:22 119:18 119:20 119:24 120:1 120:4 120:14 120:15 126:4 128:14 130:2 130:5 134:12 135:8 135:23 135:25 136:1 136:12 140:10 143:15 144:1 144:16 144:23 144:24 144:25 146:12 146:13 147:22 149:25 152:8 153:7 152:22 157:16 157:21 158:7 158:7 160:19 160:22 161:4 161:6 161:7 161:11 162:6 163:24 162:12 164:16 165:10 165:14 165:14 165:18 165:23 167:25 168:19 168:21 168:21 169:8 169:15 178:3 178:2 178:24 178:25 181:7 183:10 183:13 183:4 184:13 184:14 184:16 184:21 186:16 186:23 187:24 188:15 189:7 189:22 189:22 189:2 189:25 190:1 190:15 190:16 190:22 191:11
**didn't(45)** 28:18 29:1 29:4 29:13 29:14 32:19 35:17 42:12 63:17 72:10 72:13 75:25 76:9 77:1 90:14 90:16 94:19 105:7 126:15 139:11 140:8 144:18 145:7 147:21 148:11 154:15 155:5 157:17 158:6 158:11 160:3 160:24 163:3 164:5 164:23 166:25 174:1 179:7 180:12 183:10 183:10 184:6 186:10 191:24
**didn't(3)** 114:6 114:24 119:17
**difference(1)** 43:23
**differences(3)** 15:1 15:2 15:24
**different(20)** 15:9 15:9 15:14 15:15 16:19 43:1 43:4 43:24 49:22 52:7 55:3 55:24 55:25 56:7 56:21 87:7 135:18 135:19 139:13 161:16
**difficult(2)** 137:8 137:22
**diligence(1)** 116:2
**ding(2)** 123:13 124:5
**dinging(1)** 126:11
**direct(9)** 3:3 48:11 72:25 148:4 151:20 152:3 154:24 158:7 175:11
**directed(1)** 184:17
**directly(5)** 35:22 71:15 129:20 159:20
**disagree(1)** 13:20
**discharge(9)** 36:25 43:10 110:6 111:4 124:3 124:7 124:8 124:15 124:16
**discharged(3)** 43:14 117:22 117:23
**disclaimer(1)** 145:18
**disclose(1)** 126:8
**disclosed(5)** 13:7 13:8 64:10 64:12 126:6
**discovery(11)** 29:23 33:17 33:20 46:23 66:18 67:1 81:7 91:7 113:15 126:16 150:12
**discrepancy(1)** 33:9
**discretion(3)** 11:20 11:22 20:4

**discuss(6)** 71:13 98:25 141:18 157:21 179:2 193:22
**discussed(14)** 4:12 5:13 24:25 32:21 41:11 55:24 61:11 61:21 85:16 118:10 131:21 171:14 175:11 180:7
**discussing(3)** 31:1 151:18 153:2
**discussion(1)** 25:24
**dismiss(1)** 13:4
**dismissed(4)** 30:22 30:23 159:22 159:23
**disposition(1)** 166:13
**dispute(5)** 27:3 27:6 27:10 38:9 39:7
**disputing(1)** 27:22
**dist.lexus(1)** 30:14
**distinction(1)** 25:23
**distinguishabl(1)** 38:3
**district(4)** 1:2 22:21 30:13 31:20
**doc(1)** 139:12
**docket(1)** 185:5
**docs(2)** 56:4 144:25
**doctrine(1)** 9:2
**document(58)** 46:8 47:25 59:20 65:5 65:17 66:8 66:17 66:17 66:23 67:6 77:4 81:21 91:23 94:1 96:18 98:7 98:11 98:12 99:21 99:23 105:13 105:16 106:9 106:14 112:5 112:13 112:5 115:6 115:8 115:11 120:1 122:8 122:14 122:16 122:24 123:9 123:12 123:18 123:23 124:1 124:12 124:25 126:3 130:18 136:18 136:25 137:22 138:16 138:20 139:1 140:7 146:12 146:15 175:8 177:2 185:9 186:25 187:4
**documentation(4)** 63:6 68:21 68:23 91:13
**documentations(1)** 191:19
**documenting(1)** 186:13
**documents(27)** 15:6 15:7 15:9 15:13 15:21 17:20 17:20 19:9 29:24 42:7 46:7 46:19 46:20 46:24 46:24 52:10 68:9 69:3 91:6 91:9 91:10 99:20 114:25 115:3 145:14 190:15 190:18
**does(12)** 26:7 27:12 32:5 38:12 40:15 41:12 87:3 100:11 114:1 124:18 136:24 151:13
**doesn't(14)** 9:2 9:3 21:5 24:9 24:10 27:20 29:18 29:19 30:7 65:13 86:10 122:6 127:22 138:9
**doing(7)** 49:12 53:3 94:16 148:19 168:25 171:8 186:25
**don't(63)** 10:6 11:7 12:7 17:19 25:15 30:5 33:23 35:4 41:13 45:23 46:4 46:13 46:18 48:4 53:1 59:2 59:20 78:12 79:16 80:8 84:22 86:9 87:8 88:3 88:5 89:19 98:12 105:9 106:3 106:11 110:21 111:21 124:24 127:25 145:21 148:25 150:1 150:2 150:10 153:10 153:10 153:12 153:14 158:4 160:24 163:4 163:23 165:9 165:19 169:9 174:4 174:6 176:17 180:14 181:15 181:17 184:20 184:23 185:1 188:8 189:12 190:12 193:4
**done(14)** 7:11 16:6 16:16 38:23 43:24 50:20 58:17 59:20 61:23 72:15 80:13 81:1 81:2 141:21
**don't(3)** 114:16 115:20 115:21
**double(3)** 96:14 97:1 106:4
**doubling(1)** 72:10

| Word | Page:Line |
|------|-----------|
| **down**(74) | 53:17 56:2 57:12 57:17 61:13 61:20 68:15 69:12 70:2 70:9 70:11 70:22 71:5 72:17 73:9 79:11 82:24 83:8 86:1 90:11 92:13 92:17 102:22 108:2 116:12 116:14 116:17 117:1 117:21 118:5 118:8 121:6 121:7 126:25 132:2 132:18 132:22 132:25 136:7 137:8 137:12 138:10 139:4 139:20 140:2 140:5 140:20 141:7 142:13 142:24 147:3 147:13 147:13 151:1 151:21 159:21 160:8 160:11 161:5 161:7 163:8 163:17 163:21 164:12 164:13 164:21 168:19 168:19 168:24 172:7 172:12 179:8 183:22 188:18 190:22 |
| **downsized**(1) | 135:7 |
| **drawing**(1) | 173:19 |
| **dream**(2) | 53:22 72:12 |
| **driven**(1) | 125:24 |
| **driving**(1) | 168:24 |
| **drop**(1) | 110:23 |
| **dropped**(16) | 62:20 90:11 90:13 90:16 90:18 90:19 91:12 92:13 92:17 121:15 121:22 124:6 150:23 150:25 151:1 151:2 |
| **drops**(1) | 113:6 |
| **drove**(2) | 53:21 53:21 |
| **due**(11) | 38:2 83:19 83:20 84:8 84:11 101:9 109:1 116:2 119:9 133:4 172:17 |
| **duplicate**(1) | 120:8 |
| **during**(14) | 5:25 14:4 29:12 77:18 98:24 104:18 110:19 115:23 117:4 133:6 133:7 135:14 169:3 191:25 |
| **duties**(1) | 59:7 |
| **e-mail**(3) | 112:6 112:8 112:12 |
| **e-quip**(1) | 113:9 |
| **each**(2) | 50:20 185:2 |
| **eagle**(1) | 171:10 |
| **earlier**(6) | 85:6 92:12 94:6 99:15 99:17 118:10 |
| **early**(2) | 84:14 134:6 |
| **earnest**(1) | 82:4 |
| **ears**(1) | 108:15 |
| **easily**(1) | 159:8 |
| **eat**(1) | 119:6 |
| **economy**(1) | 168:14 |
| **ecro**(1) | 1:37 |
| **education**(1) | 14:21 |
| **educator**(1) | 14:11 |
| **edward**(2) | 2:5 41:5 |
| **edwards**(11) | 1:28 12:24 12:25 15:18 15:20 16:4 16:20 17:12 17:3 17:16 18:21 |
| **effect**(4) | 25:21 37:17 77:19 78:9 |
| **effectuate**(1) | 8:13 |
| **effort**(3) | 24:2 84:12 108:25 |
| **efforts**(7) | 24:17 90:5 100:22 101:15 107:4 111:17 111:23 |
| **egg**(1) | 35:14 |
| **eight**(2) | 191:6 191:7 |
| **eighth**(1) | 56:10 |
| **either**(5) | 7:6 33:21 79:16 107:10 162:24 |
| **electronic**(4) | 1:45 29:7 168:1 194:4 |
| **element**(1) | 9:9 |
| **elements**(3) | 11:1 17:7 18:20 |
| **elia**(25) | 52:11 63:7 64:3 66:6 66:22 154:17 154:19 154:20 155:4 155:13 156:21 157:10 157:11 157:23 158:2 158:14 162:... 162:10 163:2 163:20 164:4 164:23 179:3 188:21 189:5 |
| **ellsworth**(7) | 170:9 170:12 170:14 170:15 171:3 171:7 171:25 |
| **else**(6) | 18:3 46:14 84:20 111:19 158:2 189:23 |
| **else's**(1) | 84:23 |
| **email**(10) | 62:17 96:5 96:19 97:22 98:13 98:15 98:15 99:18 101:7 143:21 |
| **emailed**(1) | 60:1 |
| **emails**(1) | 99:25 |
| **emerald**(1) | 92:21 |
| **emphasizes**(1) | 21:21 |
| **emphatically**(1) | 88:19 |
| **employed**(3) | 48:17 62:11 62:24 |
| **employees**(1) | 108:14 |
| **employer**(1) | 50:8 |
| **employment**(6) | 20:7 49:25 114:9 114:10 114:11 187:6 |
| **emptied**(1) | 171:12 |
| **enchilada**(1) | 93:3 |
| **end**(7) | 26:11 94:16 130:24 150:21 152:11 165:1 189:10 |
| **ended**(5) | 57:24 100:24 111:20 119:1 |
| **ending**(2) | 105:25 106:18 |
| **engaged**(1) | 51:22 |
| **enlighten**(1) | 91:11 |
| **enough**(4) | 75:25 80:8 84:19 128:8 |
| **enter**(5) | 46:7 184:7 188:13 188:16 191:24 |
| **entered**(14) | 19:23 20:20 20:23 36:9 42:14 58:20 58:23 100:25 129:23 130:1 166:3 192:5 192:13 192:21 |
| **entering**(1) | 43:10 |
| **entities**(3) | 34:1 40:8 40:10 |
| **entitled**(4) | 20:7 82:19 117:19 127:12 |
| **entitles**(1) | 156:18 |
| **entries**(1) | 121:18 |
| **entry**(3) | 36:4 114:12 121:18 |
| **episodes**(1) | 49:17 |
| **equipment**(3) | 119:11 119:12 167:23 |
| **equitable**(16) | 6:16 6:16 6:21 8:1 8:25 9:1 9:2 9:4 11:3 11:4 11:5 11:6 30:10 30:24 32:3 117:18 |
| **equity**(5) | 84:12 85:17 88:3 88:22 162:24 |
| **erin**(1) | 1:28 12:24 |
| **ernest**(1) | 116:21 |
| **ernie**(2) | 161:9 162:6 |
| **erred**(1) | 84:1 |
| **escrow**(37) | 15:5 15:7 15:10 15:11 15:23 56:20 58:10 58:11 61:24 68:19 80:11 83:... 83:6 83:9 93:3 113:20 114:6 114:23 115:... 118:11 142:21 152:14 152:15 153:7 153:... 153:20 153:20 153:22 154:10 161:20 162:14 162:15 162:25 165:8 166:4 166:6 166:7 |
| **especially**(1) | 43:18 |
| **esq**(9) | 1:26 1:27 1:28 1:29 1:30 1:31 2:5 2:12 2:13 |
| **esquival**(20) | 2:19 51:21 51:24 66:21 78:22 78:23 79:8 109:11 133:25 144:3 154:25 155:12 157:21 158:8 163:8 177:10 178:3 178:18 178:25 |
| **esquival's**(3) | 52:10 52:13 163:20 |
| **essential**(1) | 19:20 |
| **establish**(2) | 9:24 19:2 |
| **established**(5) | 19:5 19:17 152:13 153:7 178:18 |
| **estate**(6) | 14:8 14:20 22:13 116:8 117:5 117:10 |
| **estimate**(1) | 136:16 |
| **estoppel**(3) | 6:21 8:1 9:5 |
| **evaluate**(1) | 77:9 |
| **evaluation**(1) | 180:9 |
| **even**(21) | 7:15 13:16 16:9 28:23 29:12 33:23 40:5 40:6 43:14 49:5 79:19 84:24 86:7 87:8 96:3 113:6 156:21 157:24 164:7 166:1 191:19 |
| **event**(5) | 11:7 40:21 43:16 86:11 193:19 |
| **events**(1) | 50:6 |
| **eventually**(4) | 42:15 55:25 132:13 140:4 |
| **ever**(26) | 22:8 37:14 44:17 59:2 76:7 85:16 88:21 88:22 94:16 102:5 109:6 111:7 112:20 113:14 117:8 136:17 142:15 157:2 178:3 178:22 178:25 180:3 181:11 184:16 184:21 190:22 |
| **every**(6) | 6:17 33:11 92:19 108:25 135:11 146:14 |
| **everyone**(2) | 49:5 89:9 |
| **everything**(19) | 10:15 43:5 47:8 56:5 61:14 69:24 80:9 81:9 106:12 108:15 111:1 111:2 116:1 118:24 119:5 145:9 145:10 168:6 186:20 |
| **eviction**(1) | 111:14 111:15 124:2 |
| **evidence**(25) | 5:22 7:6 8:5 8:7 8:8 8:14 9:13 9:14 9:15 10:25 11:12 21:18 25:17 25:21 26:1 37:15 45:4 45:10 46:24 46:25 67:13 104:3 105:14 122:9 128:1 |
| **evidentiary**(1) | 65:25 |
| **evidently**(2) | 70:9 70:11 |
| **ex-boyfriend**(1) | 159:24 |
| **exact**(3) | 50:9 120:8 169:9 |
| **exactly**(7) | 8:8 27:20 66:23 111:21 138:2 140:6 149:19 |
| **examination**(8) | 48:11 63:20 129:7 148:4 151:20 152:3 154:24 175:11 |
| **examine**(1) | 105:16 |
| **example**(4) | 7:7 15:4 30:12 110:22 |
| **excellent**(1) | 69:16 |
| **except**(1) | 47:8 |
| **exception**(14) | 69:13 70:3 70:7 71:8 77:21 77:25 79:9 82:9 86:21 91:14 140:20 142:22 161:2 161:3 |
| **exceptions**(1) | 78:1 |
| **excited**(1) | 54:18 |
| **exclude**(4) | 5:22 8:9 8:22 25:25 |
| **excluded**(2) | 11:1 191:16 |
| **exclusive**(1) | 21:13 |
| **excuse**(8) | 14:13 14:15 15:2 16:22 43:15 77:20 88:3 130:14 |
| **execute**(1) | 98:18 |
| **exercise**(1) | 16:12 |
| **exercised**(1) | 36:5 |
| **exhibit**(62) | 12:8 12:8 20:22 33:13 58:22 59:1 65:6 74:19 85:20 93:25 95:25 96:7 99:14 99:16 99:16 99:19 100:2 100:7 100:11 101:6 105:6 105:7 105:11 105:24 108:20 112:4 113:12 113:16 120:16 120:1 120:19 130:6 130:19 131:9 136:15 136:16 136:21 138:13 145:23 145:23 146:25 151:16 153:25 154:5 154:6 156:4 158:17 158:21 158:23 169:22 170:4 170:8 174:13 175:8 176:1 179:18 180:10 180:20 181:21 184:2 186:22 190:23 |
| **exhibits**(6) | 4:17 5:1 5:2 45:14 47:23 130:8 |
| **exist**(2) | 15:1 15:2 |
| **existed**(1) | 22:8 |
| **expecting**(1) | 162:10 |
| **expense**(8) | 4:8 4:10 45:1 45:5 117:12 117:20 138:18 148:2 |
| **expenses**(1) | 118:17 |
| **experience**(3) | 14:6 14:7 14:22 |
| **experienced**(1) | 57:20 |
| **expert**(6) | 11:15 11:21 16:10 18:11 18:20 25:24 |
| **expert's**(1) | 16:9 |
| **expired**(1) | 165:1 |
| **expires**(2) | 176:2 176:6 |
| **explain**(9) | 15:8 15:12 15:24 16:15 107:21 157:16 158:3 158:6 188:9 |
| **explained**(2) | 16:17 158:3 |
| **explaining**(1) | 15:23 158:8 |
| **explanation**(2) | 16:2 145:10 |
| **explicitly**(1) | 22:22 |
| **express**(1) | 73:8 |
| **expressed**(4) | 21:20 22:6 25:5 79:10 |
| **expressly**(1) | 20:1 |
| **extension**(5) | 179:22 179:23 180:16 180:18 180:21 |
| **extent**(10) | 6:25 9:16 10:11 45:19 86:8 115:18 117:13 118:3 124:24 173:18 |
| **extrinsic**(1) | 8:14 |
| **face**(3) | 37:9 40:12 41:2 |
| **fact**(34) | 9:11 12:5 13:9 14:2 21:16 25:8 27:3 33:10 35:25 38:15 39:22 42:19 43:20 43:22 44:15 44:17 45:20 66:15 75:16 96:11 97:24 98:2 98:2 98:8 104:24 122:17 122:22 124:23 126:2 126:6 159:19 168:7 168:10 191:24 |
| **factor**(1) | 172:2 |
| **facts**(2) | 19:16 134:20 |
| **factual**(18) | 7:7 16:7 16:17 18:15 18:19 19:19 30:7 30:23 36:10 37:5 42:6 43:8 44:6 44:13 67:12 97:23 110:18 178:17 |
| **factual**(1) | 25:20 |
| **faith**(3) | 136:16 137:16 183:18 |
| **fall**(1) | 99:25 |
| **fallen**(2) | 58:5 108:15 |
| **false**(1) | 192:18 |
| **familiar**(3) | 14:22 16:3 16:15 |
| **far**(5) | 7:21 16:21 56:25 69:19 75:25 |
| **fascinating**(1) | 42:1 |
| **father**(1) | 192:20 |
| **fault**(1) | 177:1 |
| **fax**(1) | 177:20 |
| **faxed**(6) | 60:4 62:18 102:23 114:4 142:2 144:3 144:6 144:7 |
| **faxing**(1) | 139:25 |
| **features**(1) | 24:19 |
| **february**(1) | 121:11 |
| **federal**(2) | 9:15 22:18 |
| **fee**(1) | 21:6 |
| **feel**(4) | 60:4 108:23 109:13 118:6 |
| **feeling**(1) | 49:4 |
| **fees**(3) | 118:11 119:4 119:9 |
| **fell**(1) | 54:21 |
| **felt**(1) | 77:5 |
| **female**(1) | 173:4 |
| **few**(5) | 6:10 22:3 111:20 117:9 140:16 |
| **fiduciary**(2) | 19:10 22:8 |
| **field**(2) | 14:10 189:4 |
| **fields**(4) | 14:4 14:8 14:10 14:11 |
| **fifth**(1) | 121:6 |
| **fighting**(1) | 98:10 |
| **figure**(5) | 68:5 86:11 94:22 114:17 178:14 |
| **file**(18) | 15:21 24:1 33:18 35:17 36:10 50:13 112:2 117:4 |
| **filed**(18) | 6:11 18:25 28:12 29:5 32:18 33:8 35:13 36:3 36:21 36:24 37:1 101:15 111:3 117:6 179:16 180:25 181:3 184:5 |
| **files**(1) | 17:10 |
| **filing**(3) | 25:2 181:7 190:4 |
| **filings**(1) | 185:3 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **filled**(9) 57:7 62:17 105:1 114:15 136:5 136:7 143:23 148:5 163:23 | | **for**(257) 1:2 1:24 2:4 2:11 3:3 7:3 7:7 9:8 9:8 9:22 10:22 11:5 12:18 12:19 14:10 14:20 15:3 15:4 16:8 16:9 17:10 17:11 19:24 19:24 21:23 21:24 22:11 22:19 23:6 23:7 23:15 24:16 25:19 25:25 26:18 27:5 28:10 28:12 30:12 30:16 31:8 31:18 32:4 32:8 32:14 32:18 33:14 34:12 36:1 38:4 38:15 39:1 39:1 39:8 39:21 39:22 40:19 40:25 41:24 41:24 41:25 42:3 43:8 43:25 44:2 44:25 45:15 45:17 45:22 46:20 47:25 48:13 49:7 49:9 49:12 49:24 50:1 50:14 50:15 50:18 50:19 51:8 51:10 51:16 52:17 53:4 53:23 56:23 57:5 57:13 57:17 58:21 59:12 60:2 61:7 61:9 61:25 63:3 63:12 63:19 64:6 64:6 64:15 64:20 64:24 65:7 66:2 67:10 68:21 68:23 69:5 69:21 70:3 71:23 72:9 72:21 73:15 74:1 77:18 78:3 79:2 79:3 80:23 81:23 82:5 82:5 83:7 83:9 83:23 86:5 86:17 86:21 88:6 89:5 91:15 93:9 93:12 95:9 95:22 98:5 100:19 101:15 103:10 103:15 105:4 105:1 107:8 110:22 111:4 111:22 111:25 112:10 113:18 114:9 114:10 116:8 117:5 117:10 117:21 117:24 119:24 120:4 120:6 122:21 123:2 126:4 126:19 126:19 127:1 127:17 128:3 129:9 129:12 130:6 131:12 131:19 132:6 132:10 132:17 133:16 133:22 134:1 134:13 134:22 134:23 135:18 136:8 136:17 138:11 139:11 140:9 142:15 142:1 143:16 145:3 147:13 148:12 150:5 150:6 150:7 150:20 151:5 151:9 151:12 154:12 154:18 154:19 154:19 156:3 156:9 156:20 156:21 156:24 157:11 157:23 158:1 158:5 158:8 158:15 159:21 160:8 161:4 161:7 161:10 163:5 163:17 164:12 164:13 164:1 164:20 164:23 165:21 168:17 169:5 169:13 169:13 170:15 171:20 172:14 173:15 173:23 178:21 179:7 179:16 180:4 180:25 181:3 187:9 187:9 187:12 187:19 187:19 187:25 190:23 192:7 193:20 | | **gets**(1) 34:11
**getting**(5) 54:24 85:17 86:1 131:19 163:11 166:20 178:8
**gift**(6) 62:9 62:21 62:23 163:8 163:24
**gifted**(2) 164:2 164:10
**gifting**(1) 164:9
**girl**(1) 58:16
**give**(10) 6:19 16:10 46:5 76:16 96:2 105:21 117:22 125:4 177:10 180:18
**given**(7) 7:25 33:15 39:20 47:11 59:24 68:13
**giving**(6) 10:2 14:1 24:19 115:8 143:3 159:7
**gmo's**(1) 49:23
**goes**(5) 17:17 87:7 112:13 123:21 127:16
**going**(152) 10:6 10:9 10:24 11:11 11:18 13:11 14:2 16:6 16:10 16:11 16:21 17:17 17:19 18:9 18:10 18:14 18:20 22:1 24:18 25:14 25:23 26:4 39:19 40:25 41:19 41:24 43:25 45:8 45:10 45:12 46:7 46:22 46:25 47:11 47:12 47:22 48:2 48:6 52:25 53:6 56:3 56:9 56:10 56:19 58:6 58:6 60:18 61:16 67:3 67:5 67:25 70:19 71:9 71:11 71:23 72:14 72:13 73:13 75:7 77:6 77:15 78:18 78:19 79:11 79:19 81:5 87:13 87:17 87:17 87:18 87:19 87:20 88:17 93:16 94:9 94:10 94:20 95:9 95:10 95:11 95:12 96:11 97:21 99:19 100:1 100:18 101:8 101:12 101:24 104:1 105:10 107:8 107:9 108:17 119:2 119:5 120:17 122:9 125:4 126:11 127:18 130:8 130:11 132:24 133:22 134:21 135:15 135:17 137:22 138:1 138:2 138:10 142:23 142:25 143:19 146:25 150:11 150:15 152:18 159:23 160:17 160:19 163:4 163:20 164:4 164:9 164:20 173:10 173:11 173:13 173:25 175:21 178:6 178:11 178:21 179:2 179:9 180:1 180:18 181:16 181:19 181:19 181:18 183:13 185:13 185:13 189:4 190:25 191:19 191:20 192:3 193:4 193:18 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **guess**(14) 35:9  38:24  39:5  44:8  58:8  65:18  70:16  111:14  115:10  128:3  164:10  166:19  176:24  179:13 | | **have**(186) 7:11  7:19  7:23  8:16  10:3  10:6  10:15  10:20  11:14  11:25  12:7  12:12  13:29  16:13  17:7  17:7  17:14  18:18  18:19  20:3  20:9  21:13  22:2  22:19  23:25  26:5  26:5  27:15  27:18  29:14  29:18  30:7  33:8  33:15  33:19  33:21  34:1  34:11  34:19  34:25  35:4  35:8  35:13  35:17  35:18  36:17  37:4  40:2  41:10  42:23  43:1  43:4  43:5  43:6  43:8  43:15  43:16  43:24  44:17  45:14  45:23  46:18  46:19  48:7  49:5  49:25  51:9  51:15  53:15  53:25  58:7  58:10  60:19  63:23  64:14  65:5  65:17  66:10  66:11  71:13  71:19  71:22  72:14  74:8  74:20  74:21  75:5  75:23  77:10  77:11  79:11  80:13  80:13  80:23  81:1  81:2  88:10  90:21  90:24  91:17  91:22  94:5  95:1  95:25  96:14  96:17  96:18  97:23  100:1  100:9  105:7  105:10  105:13  106:3  106:9  107:2  107:15  107:21  107:22  108:4  109:2  113:4  115:22  117:8  117:8  117:18  119:4  119:25  120:5  122:7  123:3  123:9  124:12  124:23  126:2  126:12  126:15  126:15  127:7  128:22  128:24  130:3  132:2  132:6  132:24  136:1  136:17  137:4  137:4  138:9  138:20  140:21  142:23  146:11  147:8  150:2  151:21  151:22  154:16  156:5  157:2  158:8  158:11  167:10  162:20  162:23  163:1  163:5  169:1  169:20  171:18  173:22  173:24  177:24  178:12  178:20  179:2  179:8  182:24  183:1  186:13  189:3  189:4  193:3  193:19 | | **her**(154) 4:10  5:25  8:4  9:7  9:9  9:19  9:20  9:22  9:23  9:25  9:25  10:2  10:2  12:2  12:3  12:12  12:13  12:14  13:10  13:11  21:15  24:9  24:10  24:14  29:20  32:18  32:20  32:21  32:24  32:24  33:6  37:7  37:16  37:16  37:17  42:11  42:19  46:17  46:17  48:6  48:8  50:22  56:17  56:18  58:3  58:4  58:4  58:8  58:9  58:18  59:17  59:24  60:4  60:12  62:2  62:13  62:20  63:4  63:20  64:21  64:21  65:7  65:14  65:23  65:23  65:23  66:13  67:4  71:21  71:22  74:3  74:7  76:20  76:22  76:23  76:25  77:4  77:6  79:9  79:10  79:18  80:17  80:23  85:1  85:16  86:1  87:14  87:25  88:1  88:9  88:21  89:6  93:9  95:16  95:22  96:15  97:14  97:17  97:19  97:20  97:21  100:19  114:4  117:20  117:21  117:22  122:9  122:18  122:18  122:19  123:22  124:3  124:5  124:6  124:13  125:9  125:11  125:12  125:15  125:16  126:5  126:11  126:24  126:24  127:3  127:11  127:15  139:9  139:15  139:23  140:1  140:10  141:9  141:19  141:20  141:23  142:5  142:11  142:17  143:3  144:2  144:3  144:5  144:6  145:21  147:21  160:17  160:19  160:22  175:20  176:25  177:2 | | **homes**(3) 168:16  172:15  172:18  **honest**(1) 94:6  **honor**(162) 4:3  4:7  4:16  5:8  5:12  5:12  5:16  5:20  6:4  6:8  7:4  7:15  7:15  7:18  8:2  8:18  8:21  10:16  11:13  11:16  12:5  12:6  12:21  12:22  12:24  16:20  17:16  18:21  18:23  19:1  19:10  19:20  20:6  20:19  21:8  21:18  22:11  23:18  23:21  23:23  23:25  24:13  24:18  24:20  24:24  24:25  25:12  25:13  26:8  26:10  26:11  26:17  26:22  28:21  31:12  31:15  32:14  32:16  33:24  35:4  35:15  36:13  36:19  37:13  37:18  37:23  39:3  40:1  40:11  40:25  41:5  41:7  44:1  44:14  44:24  45:8  45:12  45:19  46:3  46:6  46:11  46:11  47:3  47:10  48:4  53:15  54:2  55:18  60:16  63:16  65:6  65:10  65:16  66:12  66:15  66:21  67:7  67:20  67:24  73:1  73:23  74:3  74:16  74:18  74:22  74:23  74:24  75:3  75:7  76:12  76:20  77:7  77:8  77:12  77:22  77:24  78:14  78:16  79:21  81:18  85:7  85:12  85:14  85:23  86:3  86:5  88:14  88:25  95:24  96:4  99:6  99:13  102:18  105:6  105:12  105:18  117:17  120:24  122:5  123:5  123:21  124:11  124:17  124:19  124:22  125:6  126:18  127:1  127:6  127:10  128:4  128:9  128:21  138:20  142:3  142:14  156:24  158:23  170:3  181:23  185:18  193:17 |
| **gun**(2) 127:24  127:24  **guy**(1) 39:6  **guys**(1) 148:20 | | | | | | **honor's**(2) 11:20  11:22  **honorable**(1) 1:18 |
| **had**(191) 4:18  7:10  9:21  10:3  12:19  13:9  21:25  22:9  23:4  23:4  23:10  23:25  27:7  29:2  29:11  33:9  34:7  34:24  34:25  36:5  36:25  37:6  37:8  37:13  37:17  39:8  40:13  43:2  43:3  43:9  43:10  43:11  45:2  48:8  49:6  50:3  50:3  50:6  50:7  50:17  50:23  52:2  52:4  52:11  53:4  53:23  53:24  55:14  56:13  56:17  56:21  56:22  57:8  57:19  57:23  58:2  58:5  58:14  58:15  58:18  59:17  60:1  61:11  61:22  62:10  62:13  64:8  64:9  64:23  66:3  66:9  67:8  67:17  68:4  69:4  69:10  69:15  69:16  70:9  72:8  74:4  74:10  75:19  76:23  77:6  78:19  79:8  79:10  81:1  81:9  83:5  85:9  87:3  87:4  88:1  90:8  90:11  92:12  92:16  93:3  93:14  94:24  96:2  97:17  99:15  99:17  101:23  102:23  108:2  108:15  108:19  110:1  110:11  110:23  111:20  112:9  113:8  113:8  114:18  114:23  119:2  119:8  119:22  119:23  124:25  126:4  126:7  126:23  129:19  133:10  133:12  133:21  133:23  133:25  135:6  135:10  137:15  137:17  137:21  139:4  139:12  141:7  141:17  141:17  141:19  141:23  142:12  143:3  145:4  147:18  148:15  150:23  155:3  155:4  157:10  159:21  159:23  160:16  161:15  162:2  162:17  162:20  162:22  163:5  163:14  163:15  165:8  166:3  166:7  166:10  167:8  167:14  167:14  167:16  168:2  169:16  169:21  177:15  178:18  179:5  179:25  179:25  180:7  180:9  183:16  183:18  184:10  186:10  190:12  190:12 | | **haven't**(3) 47:2  124:25  126:7  **he's**(12) 13:2  14:2  14:10  14:11  14:19  14:22  17:19  40:8  87:13  87:17  158:4  178:4  **head**(1) 34:10  **hear**(4) 41:14  76:8  86:9  174:6  **heard**(3) 45:18  98:10  120:13  **hearing**(7) 4:18  14:25  19:2  69:21  74:2  78:10  193:25  **hearsay**(23) 60:16  62:5  69:5  72:4  72:17  73:15  73:16  77:16  77:21  77:25  78:1  79:21  85:3  86:21  87:18  87:20  93:7  93:9  93:11  95:25  96:14  97:2  99:23  **heart**(1) 116:25  **hebden**(1) 2:20  **held**(3) 12:20  22:22  23:13  **heloc**(4) 72:16  75:18  75:20  79:15  **help**(5) 27:23  59:12  59:13  100:16  110:17  **helped**(1) 116:25  **helpful**(2) 16:5  122:11  **helping**(1) 110:20 | | **her**(50) 4:8  6:10  6:17  6:20  10:6  16:21  16:22  16:22  17:7  19:20  21:11  23:9  23:19  23:43  25:7  30:20  33:18  35:14  39:19  40:11  41:11  42:10  42:17  45:1  46:11  47:9  56:19  70:1  74:20  76:19  77:6  96:17  110:19  113:10  118:2  124:20  130:9  143:19  145:5  145:25  157:24  160:4  171:9  173:25  174:14  185:14  187:18  189:10  190:11  193:20  **here's**(5) 5:16:14  16:22  16:23  30:10  145:17  **hereto**(1) 20:17  **hessen**(2) 2:4  41:6  **hey**(1) 84:24  **he's**(1) 116:24  **higher**(1) 57:16  **him**(24) 23:16  32:22  55:5  56:14  56:16  108:14  108:16  108:19  109:10  111:2  125:2  125:4  158:11  164:16  165:8  165:17  165:18  173:21  179:2  191:12  191:19  191:20  192:3  192:15  **his**(20) 13:3  14:7  15:16  40:3  52:11  52:12  64:2  64:7  71:14  105:4  107:24  108:14  110:16  117:10  117:10  117:10  155:13  158:14  163:  165:7  173:11  **history**(2) 48:24  48:25  **hit**(6) 125:9  125:11  125:12  125:15  125:16  171:17  **hits**(2) 127:13  127:16  **hold**(6) 25:23  56:12  57:25  59:20  169:7  169:8  **holder**(2) 29:11  156:15  **holders**(2) 28:24  28:25  **holding**(1) 175:22  **holdings**(1) 1:8  **home**(108) 1:7  7:9  19:23  22:6  24:5  30:13  33:7  33:7  33:25  34:4  34:5  34:18  34:20  35:16  37:10  53:16  53:22  54:1  55:2  56:9  57:5  61:12  69:11  72:12  73:13  73:17  73:20  79:15  80:7  82:10  83:8  83:9  83:10  83:17  84:13  84:18  89:10  89:15  91:6  91:9  91:20  92:1  93:5  93:23  94:14  94:23  95:20  95:23  100:17  100:20  101:1  102:1  102:21  104:16  109:1  109:3  110:12  111:5  111:9  111:12  111:25  112:11  112:21  112:25  113:14  113:18  116:4  118:9  118:16  118:18  118:23  124:4  127:11  128:10  159:16  160:8  163:12  166:16  166:17  166:19  170:7  170:15  173:21  173:23  174:2  175:19  175:24  177:14  178:15  178:23  179:6  179:16  179:19  182:10  183:11  183:19  184:11  184:13  184:14  184:18  184:21  185:24  186:9  186:10  186:12  186:14  186:15  186:18 | | **host**(1) 30:17  **hotel**(3) 111:23  118:19  118:21  **hours**(1) 52:20  **house**(36) 6:19  38:16  38:18  38:21  39:13  51:24  53:8  53:11  53:19  53:20  53:22  54:17  54:19  54:21  54:22  56:21  58:16  83:16  108:16  110:17  111:6  111:17  115:14  116:11  118:21  128:17  154:18  163:9  163:14  163:18  164:7  165:8  165:21  165:24  179:11  186:15  **housekeeping**(2) 4:13  45:7  **housing**(1) 148:1  **how**(46) 8:22  18:1  22:1  29:19  34:10  39:20  47:8  49:16  50:16  51:1  51:8  59:23  59:23  63:11  63:18  63:23  64:4  66:23  71:17  73:13  83:9  99:2  102:13  102:19  103:19  104:5  104:24  107:22  108:14  111:21  113:17  122:6  134:23  135:4  138:2  145:21  149:25  150:24  158:8  161:7  163:2  172:24  178:16  187:24  188:9  193:12  **however**(5) 13:4  18:14  30:6  31:2  46:22  **hud**(1) 81:23  **huge**(1) 145:6  **hybrid**(1) 81:8 |
| **hadn't**(2) 43:7  166:1  **hahn**(2) 2:4  41:6  **half**(10) 13:3  60:5  113:5  119:14  148:12  148:13  149:25  150:6  150:7  151:7  **hand**(12) 4:16  62:17  76:10  130:20  130:22  137:7  143:23  143:25  159:9  172:23  177:19  183:5  **handed**(2) 120:17  120:20  **hands**(7) 6:14  6:15  6:19  7:25  8:24  9:1  9:8  **handshake**(2) 81:10  81:10  **handwritten**(2) 114:3  136:6  **hang**(5) 75:6  86:14  86:14  126:1  126:1  **happen**(3) 94:18  128:17  128:19  **happened**(29) 38:17  53:18  53:20  57:22  58:19  68:1  68:5  68:18  68:19  71:20  89:18  89:19  89:22  91:17  95:19  98:17  100:15  101:10  108:8  127:21  132:13  142:18  166:1  178:4  178:5  184:12  188:20  188:22  189:20  **happening**(1) 57:24  **happens**(1) 169:2  **happy**(3) 10:12  37:18  47:6  **hard**(5) 71:23  101:18  111:22  111:23  179:5  **hardship**(2) 173:22  173:24  **harm**(1) 43:17  **harrisburg**(1) 1:41  **has**(24) 7:13  10:11  14:7  21:8  32:7  34:6  34:13  37:10  40:3  41:8  41:17  65:13  70:16  74:15  78:10  91:20  99:23  101:10  124:6  158:18  158:19  161:16  186:9  190:13  **hasn't**(1) 122:17 | | | | | | **i'd**(10) 4:16  6:10  52:6  99:24  112:4  146:11  152:12  153:5  156:3  183:18  **i'll**(15) 5:16  6:1  18:18  23:14  24:24  26:20  40:2  41:7  47:1  55:17  68:2  68:5  69:7  73:1  86:6  **i'm** |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **i'm**(136) 10:12 10:24 11:11 12:8 16:6 16:8 17:8 18:9 18:19 25:14 25:23 26:4 26:15 26:15 34:22 37:18 39:5 41:13 41:19 41:24 43:25 46:22 47:16 48:9 51:14 51:17 53:11 54:9 54:9 55:9 55:12 59:5 59:23 60:4 62:21 65:5 65:16 65:24 65:24 67:5 69:20 70:1 70:17 72:18 75:7 75:24 76:3 76:3 76:14 81:9 81:17 81:25 82:21 87:19 88:16 88:17 91:21 93:16 94:19 94:20 100:1 103:10 103:25 107:6 109:15 121:24 122:4 122:5 125:3 125:4 125:13 126:11 127:18 130:10 131:1 134:24 136:19 137:10 138:1 138:14 138:20 138:23 138:24 142:17 143: 143:10 143:10 143:15 143:19 145:13 145:25 146:25 148:1 148:20 149:9 150:15 150:15 150:19 152:15 152:23 152:25 158:22 159:7 165:6 165:13 166:16 166:19 169:11 170:14 171:7 171:8 171:24 172:11 174:12 174:14 176:17 177:7 177:9 177:18 179:14 179:18 179:23 180:16 182:11 182:15 182:15 185:13 185:19 185:19 185:24 187:19 189:4 191:5 191:7 193:8 193:19 | | **independent**(7) 14:19 20:18 21:21 21:22 22:14 22:17 55:5<br>**indepthness**(1) 145:21<br>**index**(1) 3:1<br>**indicate**(3) 17:21 22:5 43:9<br>**indicated**(2) 26:11 29:6<br>**indicates**(3) 88:1 96:18 124:13<br>**individual**(2) 50:13 50:15<br>**inducement**(1) 129:12<br>**industries**(2) 16:24 17:4<br>**inequitable**(1) 117:24<br>**inference**(1) 46:16<br>**inflated**(2) 9:25 46:17<br>**information**(26) 4:19 7:10 7:19 12:19 33:15 57:2 59:12 59:14 59:15 59:25 60:4 60:7 62:2 62:18 67:17 67:18 73:22 102:23 105:1 114:1 147:2 148:2 176:15 177:14 189:16 190:12<br><br>**informed**(1) 140:11<br>**initial**(6) 67:17 67:19 68:21 68:23 135:14 136:12<br><br>**initialed**(2) 33:11 146:14<br>**initially**(4) 55:1 55:3 70:19 72:9<br>**inquired**(1) 77:7<br>**install**(1) 172:14<br>**instance**(1) 36:3<br>**instances**(1) 9:16<br>**instead**(4) 15:5 28:18 70:7 112:1<br>**institutions**(2) 14:18 22:4<br>**instruct**(1) 47:23<br>**insurance**(19) 22:15 22:17 22:22 22:23 22:24 22:25 23:1 23:3 23:6 23:7 23:8 23:10 23:11 23:15 23:15 23:19 93:3 93:4 173:19<br>**insured**(3) 22:24 22:25 23:16<br>**integrated**(1) 49:8<br>**intended**(3) 97:19 147:13 191:12<br>**intent**(9) 19:17 19:21 20:16 21:19 117:9 117:12 118:3 118:6 192:15<br><br>**interaction**(1) 110:16<br>**interest**(14) 34:13 34:15 34:15 49:24 71:5 86:8 87:5 87:6 87:11 87:22 96:6 96:11 97:6 189:6<br><br>**interests**(3) 22:10 28:24 96:9<br>**interject**(1) 124:22<br>**internal**(3) 77:5 122:14 122:16<br>**interrogatory**(5) 13:8 29:24 122:18 122:19 126:5<br><br>**interview**(1) 120:9<br>**interviewed**(1) 120:10<br>**intimately**(1) 14:22<br>**into**(35) 19:23 20:20 20:23 25:22 35:2 42:5 45:10 46:7 46:18 53:21 56:3 58:20 58:24 59:10 61:24 63:11 63:15 69:15 74:24 79:8 80:9 80:11 81:12 82:2 83:10 92:17 100:25 105:14 118:25 119:21 126:23 129:23 130:1 135:8 142:6 145:8 145:8 145:13 158:15 162:10 166:3 166:7 167:6 167:8 168:13 170:10 179:11 188:13 188:1 188:21 191:24 192:12 192:13 192:21<br><br>**introduce**(1) 44:6<br>**introduced**(2) 7:6 25:18<br>**invest**(1) 155:5<br>**invested**(1) 155:4<br>**investment**(2) 158:4 164:19<br>**investments**(2) 52:12 64:7<br>**investor**(1) 108:1<br>**investor's**(2) 155:1 155:7<br>**investors**(9) 64:7 95:11 95:16 95:22 100:19 101:23 155:23 157:11 175:20<br><br>**invoices**(1) 50:21 | **involve**(1) 46:23<br>**involved**(2) 159:19 163:12<br>**ipm**(1) 120:7<br>**irregularities**(1) 126:22<br>**irrelevant**(2) 32:9 40:6<br>**irrigation**(1) 119:13<br>**isabel**(1) 53:19<br>**isn't**(8) 15:19 16:11 34:17 39:7 39:7 73:24 135:23 139:8<br><br>**issue**(23) 9:1 11:23 16:19 17:14 25:1 26:12 26:12 27:2 34:23 36:17 42:1 42:11 42:13 43:17 46:3 47:4 73:18 87:24 96:14 97:4 110:23 124:23 171:19<br><br>**issued**(1) 23:4<br>**issues**(7) 11:19 17:14 25:8 32:24 37:20 42:23 126:2<br><br>**issuing**(1) 7:20<br>**it's**(105) 4:15 5:9 5:21 6:23 9:2 9:17 11:19 15:24 16:20 17:3 17:3 17:22 17:24 18:4 18:24 22:17 25:15 25:22 26:16 27:11 30:9 30:10 30:20 31:6 31:20 31:23 33:12 33:14 34:18 35:5 35:19 36:1 36:15 40:5 40:6 44:5 44:7 44:8 44:9 44:12 44:15 44:20 54:12 55:19 55:19 57:8 57:19 58:7 67:6 72:22 73:20 74:19 75:22 77:25 79:2 81:25 84:14 86:7 86:10 87:21 93:9 96:19 98:19 98:21 102:19 105:10 105:12 105:14 106:4 106:12 107:12 108:11 121:21 124:2 125:18 127:24 130:19 134:21 137:7 138:17 143:16 145:21 146:7 149:10 149:11 149:15 150:3 152:11 153:16 153:20 153:25 154:10 156:4 157:12 158:18 159:2 159:7 159:9 173:5 175:1 175:3 185:8 189:10 193:14 193:14<br><br>**item**(5) 5:21 18:23 18:24 106:8 106:17<br>**items**(3) 4:9 62:20 168:4<br>**its**(7) 7:22 22:4 28:22 28:23 34:19 40:12 42:15<br><br>**itself**(5) 11:2 17:24 22:5 34:20 87:3 | **just**(81) 4:13 8:22 10:19 12:7 13:2 14:1 16:17 24:11 24:24 24:24 26:16 30:25 33:21 36:1 39:21 41:7 41:14 44:1 44:4 46:5 47:2 47:10 47:11 53:18 53:22 53:25 54:11 55:13 56:23 58:3 58:8 65:4 65:6 66:12 66:16 67:25 72:11 75:2 77:24 78:3 78:5 80:3 80:9 81:6 84:2 86:16 87:25 88:14 93:25 94:25 99:14 99:24 101:18 103:24 104:13 105:13 108:10 108:16 114:25 116:23 119:1 119:14 119:23 120:20 122:9 122:19 123:22 128:16 133:4 135:9 142:4 142:5 143:16 145:1 145:20 148:15 148:23 153:24 159:7 164:13 185:13 192:8<br><br>**justifiable**(1) 9:10<br>**justified**(1) 9:6<br>**kathy**(2) 79:19 79:24<br>**keep**(4) 79:24 119:2 119:2 193:4<br>**keeping**(2) 73:4 190:5<br>**kept**(2) 101:18 190:4<br>**keys**(1) 83:18<br>**kind**(8) 52:5 57:15 79:11 119:12 130:3 145:20 145:21 188:15<br><br>**kinds**(1) 144:24<br>**kitchen**(2) 48:20 53:23<br>**knew**(18) 13:22 37:5 53:22 53:25 56:6 79:20 98:2 136:7 138:10 142:25 149:19 156:21 159:22 160:2 189:9 189:13 191:18 192:5<br><br>**know**(150) 4:7 5:9 7:18 8:4 19:10 21:7 21:9 22:3 29:14 29:19 29:20 31:8 31:10 32:16 33:4 33:22 36:15 42:12 50:4 50:25 51:6 51:19 52:13 52:25 53:1 55:23 55:25 56:13 56:14 56:15 56:19 56:20 57:7 57:15 57:17 58:1 58:4 58:8 58:16 58:17 59:19 60:2 60:14 61:11 61:15 61:22 61:22 63:18 69:21 71:8 71:13 71:17 71:22 71:22 72:23 76:9 79:16 79:22 80:22 80:23 81:5 81:6 81:9 81:10 83:2 83:25 84:14 84:15 84:23 84:24 85:2 86:9 87:8 87:19 87:20 89:12 89:12 90:12 90:15 90:16 94:8 94:18 102:19 103:16 103:19 104:5 104:8 104:21 104:24 105:10 106:9 106:11 106:25 107:11 108:16 109:6 110:11 110:15 110:22 111:25 112:1 112:5 112:10 113:24 114:16 115:17 115:20 115:21 119:5 119:7 120:11 120:25 124:24 136:1 136:11 138:15 139:12 139:24 142:24 143:5 145:19 145:19 145:21 148:14 150:10 152:12 153:6 156:22 158:4 160:24 161:1 163:23 165:19 166:13 166:14 174:1 174:2 174:4 176:17 179:3 180:14 181:15 184:23 184:23 188:8 188:20 188:22 189:12 190:12 193:4<br><br>**knowing**(1) 13:22<br>**known**(2) 7:10 168:25<br>**knows**(3) 6:15 58:17 113:6<br>**lack**(4) 31:23 78:6 86:25 109:1<br>**lacks**(1) 65:1<br>**laid**(1) 30:8<br>**lakinta**(1) 118:19<br>**landscape**(7) 48:25 50:3 50:15 134:22 169:15 172:14 188:2<br><br>**landscaping**(3) 119:17 119:21 171:20<br>**lane**(5) 92:23 93:15 94:2 172:23 174:2<br>**large**(1) 49:1<br>**larry**(3) 103:20 104:15 111:20<br>**last**(23) 4:15 20:17 23:24 23:25 24:1 39:24 51:9 58:8 59:1 70:16 70:24 78:25 90:10 91:23 109:3 120:12 121:17 135:4 137:6 146:1 172:12 180:18 182:21<br><br>**lasted**(5) 36:18 36:20 36:22 36:23 37:2 |
| **i've**(17) 7:8 31:8 35:2 46:19 125:2 128:16 136:19 | | | | | | | |
| **i.e.**(1) 182:13<br>**idea**(7) 29:11 115:22 126:12 126:15 133:21 133:23 157:2<br><br>**ideal**(2) 120:10 134:13<br>**identifiable**(2) 4:19 159:8<br>**identified**(6) 10:8 21:16 33:3 33:5 33:6 130:19<br><br>**identifies**(1) 164:1<br>**identify**(3) 21:5 33:3 157:17<br>**ilene**(1) 10:8<br>**immediate**(1) 34:24<br>**immediately**(6) 89:10 89:15 119:17 141:12 184:8 190:4<br><br>**impact**(2) 45:14 169:21<br>**impacted**(5) 168:4 168:6 168:8 168:11 169:19<br><br>**impeach**(1) 63:20<br>**implemented**(1) 49:7<br>**implore**(2) 13:17 41:1<br>**important**(3) 25:8 25:22 80:25<br>**impose**(2) 46:22 47:1<br>**improper**(4) 36:14 39:11 41:2 127:14<br>**improperly**(1) 39:23<br>**imputable**(1) 23:15<br>**impute**(1) 25:4<br>**inaccurate**(5) 8:25 98:9 139:7 139:21 159:16<br><br>**inapplicable**(2) 8:1 30:20<br>**inc**(2) 1:8 49:2<br>**include**(1) 105:6<br>**included**(1) 4:18<br>**including**(3) 11:3 14:18 176:12<br>**inclusive**(2) 71:1 83:8<br>**income**(33) 9:21 9:25 46:17 51:16 52:13 52:14 81:8 114:10 114:10 114:11 114:12 114:14 148:1 148:1 148:8 148:12 148:21 149:13 149:15 149:20 150:22 150:22 169:13 169:15 169:20 172:3 176:16 187:6 187:9 187:9 187:12 187:16 187:18<br><br>**inconformity**(1) 9:20<br>**inconsistencies**(1) 77:5<br>**inconsistency**(1) 88:13<br>**increased**(3) 71:5 140:21 142:13<br>**incur**(1) 118:17<br>**indeed**(1) 12:2<br>**indelacado**(1) 112:6 112:9 113:8 | | | | **january**(5) 51:14 91:24 94:4 121:8 190:7<br>**job**(22) 15:19 16:8 16:9 18:5 24:14 55:17 73:2 120:4 120:14 123:22 126:15 134:11 134:18 134:19 134:19 134:23 135:4 135:1 169:5 169:7 169:8 172:8<br><br>**jobs**(2) 119:1 119:24<br>**joint**(1) 20:16<br>**jones**(10) 55:4 55:7 55:21 56:12 57:25 130:5 132:10 132:13 132:24 133:8<br><br>**judge**(4) 1:19 16:7 16:14 39:8<br>**judgment**(17) 4:12 4:23 5:14 5:17 16:12 21:3 25:19 26:18 27:1 39:21 41:1 41:13 41:25 43:9 43:25 44:7 44:10<br><br>**july**(43) 20:24 36:25 37:6 56:6 56:8 56:11 71:19 71:20 77:17 78:19 91:13 115:11 115:19 133:3 133:3 133:3 133:4 133:7 137:3 137:15 138:9 143:7 143:11 144:19 144:22 145:8 145:12 145:13 146:7 150:18 150:21 150:25 161:13 165:24 166:11 190:<br><br>**jumpstart**(1) 168:23<br>**june**(19) 37:1 55:9 56:11 98:3 101:7 101:12 133:7 143:7 143:10 174:10 174:12 176:6 176:23 178:12 179:18 179:20 180:1 180:25 181:7 | **kitchen** ... | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **later**(6) 35:25 40:18 42:17 42:25 102:1 107:10 | | **like**(51) 4:16 6:10 13:6 18:3 19:13 22:19 24:15 35:25 37:20 47:4 53:24 54:7 54:21 55:24 56:2 56:11 56:19 57:8 58:6 58:7 60:5 71:22 74:8 74:24 80:8 80:18 88:14 90:11 90:11 99:2 99:24 106:12 108:10 112:1 112:4 113:4 113:12 113:16 116:24 116:24 120:16 122:21 145:20 148:16 150:23 151:1 152:12 153:6 156:3 186:13 192:19 | | **loaned**(1) 116:20 **loans**(24) 14:5 15:16 17:10 19:25 19:25 20:1 21:7 30:13 82:9 94:10 95:4 101:4 101:16 106:13 129:16 129:19 146:22 157:22 170:22 173:7 175:4 186:3 188:17 191:11 **local**(1) 58:16 **located**(1) 53:19 **location**(1) 134:13 **logic**(1) 33:16 | | **management**(25) 49:8 52:11 63:8 64:3 66:6 66:22 154:18 154:19 154:20 155:4 155:13 156:21 157:11 157:23 158:2 158:14 162:5 162:10 163:2 163:20 164:5 164:23 179:3 188:21 189:5 |
| | | | | **long**(12) 15:10 31:9 31:9 36:9 44:20 49:16 69:21 131:24 132:5 134:23 135:4 179:5 | | **management's**(1) 157:10 **managing**(1) 94:3 **manipulation**(1) 126:22 **many**(9) 14:12 14:20 17:25 21:15 34:10 50:3 61:11 110:18 111:21 |
| **laughter**(1) 89:22 92:16 **launched**(1) 120:8 **launching**(1) 120:7 | | **likely**(1) 162:23 **limine**(19) 4:11 4:15 5:15 5:19 5:21 8:10 10:25 11:11 18:24 23:24 25:15 25:16 25:25 26:5 26:16 45:12 46:15 46:19 126:23 | | | | |
| **law**(11) 11:7 11:19 16:2 16:14 16:17 16:22 16:22 17:1 17:4 19:16 31:23 | | | | **longer**(2) 34:13 197:16 **look**(24) 15:15 19:17 35:9 46:5 50:7 65:14 75:5 76:4 81:16 105:13 106:17 124:25 131:14 131:15 137:6 137:23 138:19 159:8 176:1 177:13 178:12 185:2 190:2 193:12 | | **march**(7) 103:12 103:13 103:16 103:20 104:20 109:22 121:14 |
| **laws**(2) 53:1 53:2 **lawsuit**(6) 112:2 159:12 159:24 160:9 165:7 186:17 | | **limit**(4) 25:8 25:21 85:15 99:24 **limited**(2) 11:4 86:7 **line**(48) 12:9 12:9 12:10 12:10 12:10 13:15 74:23 75:1 75:3 75:4 75:11 75:11 76:5 76:7 76:14 76:15 76:15 76:17 76:17 85:25 88:20 99:15 99:16 106:8 106:17 121:6 121:17 121:25 122:10 122:10 127:19 149:7 149:9 149:10 149:10 149:23 150:11 150:15 150:17 150:24 151:8 151:8 152:9 152:12 152:25 153:5 153:15 185:4 | | | | **margaret**(1) 1:29 **margin**(1) 71:1 **mark**(2) 94:3 105:24 **market**(2) 1:10 175:8 **marketing**(1) 30:18 **marking**(1) 65:5 **married**(2) 51:22 188:3 **match**(3) 59:13 59:13 139:22 |
| **lawyer**(4) 184:16 184:21 186:19 191:15 **lay**(3) 40:16 90:21 102:12 **learn**(1) 60:12 **learned**(2) 89:22 92:16 **learning**(3) 49:22 49:23 58:13 **least**(7) 43:8 140:25 141:4 148:13 150:5 150:5 151:4 | | | | **looked**(2) 17:20 67:1 **looking**(10) 17:8 22:11 22:15 46:7 65:16 86:5 88:6 88:8 91:19 180:20 | | **material**(6) 7:1 7:2 7:17 9:6 27:2 119:7 **materials**(1) 115:23 **math**(1) 148:19 **matter**(13) 10:20 24:4 32:22 45:7 49:20 49:21 78:7 79:2 79:3 87:1 107:5 126:5 194:5 **mattered**(1) 183:13 |
| **leave**(3) 30:23 118:17 193:21 **leaving**(1) 118:23 **lectures**(1) 14:12 **lee**(1) 22:17 | | **lines**(1) 121:11 **liquidate**(1) 177:23 **liquidated**(3) 45:3 116:4 119:8 **liquidating**(1) 178:19 **liquidation**(7) 116:7 116:15 118:9 118:14 124:4 127:10 128:10 | | **looks**(2) 12:6 81:25 **loop**(1) 48:15 **lori**(1) 114:23 **los**(1) 102:23 **lose**(1) 72:13 | | **matters**(1) 4:13 **may**(32) 4:3 4:23 19:11 25:17 25:17 25:21 44:1 53:10 55:10 55:11 55:15 55:21 56:14 61:3 61:4 75:7 77:23 86:13 95:13 95:17 98:25 99:12 100:5 105:18 124:22 126:14 128:24 156:4 170:24 181:6 193:21 193:22 |
| **left**(9) 8:3 21:23 58:3 79:7 103:8 109:22 111:16 118:16 149:12 | | | | **loss**(3) 170:18 174:16 175:2 **lost**(9) 38:20 118:9 118:13 118:24 118:24 119:3 119:14 133:8 169:17 | | |
| **legal**(14) 11:19 11:21 14:1 14:20 25:20 30:10 30:24 31:24 32:5 64:20 179:12 179:13 192:8 192:10 | | **list**(17) 7:13 64:15 64:24 66:3 67:9 73:25 74:1 105:7 111:5 111:8 111:11 112:13 121:18 160:3 185:23 190:6 190:7 | | **lot**(11) 42:25 49:17 50:6 71:13 119:3 134:21 167:8 167:10 167:11 169:2 183:5 | | **maybe**(9) 34:9 54:20 61:17 70:2 75:24 76:1 135:9 179:12 193:3 |
| **lender**(12) 20:3 20:10 20:11 20:14 20:14 21:1 21:2 21:10 22:13 101:19 133:21 176:10 **lender's**(1) 135:19 **lenders**(8) 20:3 21:10 21:12 21:13 55:25 94:3 94:15 135:18 | | **listed**(8) 37:4 114:11 163:21 186:2 187:18 189:10 190:11 191:21 | | **lots**(1) 49:3 **love**(2) 53:23 54:21 **low**(1) 69:16 **lower**(1) 57:17 | | **mean**(31) 7:7 9:3 16:9 17:6 17:13 34:14 44:16 51:11 51:12 80:8 81:5 84:14 89:24 107:6 107:11 114:24 118:25 119:4 122:23 122:25 123:1 124:20 139:12 142:3 145:6 145:21 146:11 146:23 151:1 151:17 181:20 |
| | | **listing**(1) 102:22 **lists**(4) 176:11 187:9 187:12 190:2 **litigated**(1) 25:9 **litigation**(5) 26:13 36:17 112:24 159:19 163:12 | | **lowered**(2) 92:1 126:24 **ltv**(3) 89:23 89:24 90:3 **luis**(5) 134:5 134:9 134:10 134:17 169:4 **lunch**(2) 54:3 98:24 **lundgreu**(1) 1:31 | | |
| **lending**(1) 14:8 **length**(1) 43:21 **lengthy**(1) 105:12 **lent**(1) 118:5 **leslie**(1) 1:37 **less**(1) 139:18 **lesson**(1) 89:23 | | | | | | **means**(6) 24:22 77:3 78:12 119:22 149:15 176:17 |
| | | **live**(1) 113:5 **living**(2) 53:17 111:23 **llp**(2) 1:25 2:4 **loan**(171) 7:1 7:20 9:7 9:20 9:25 10:1 10:2 10:4 10:21 14:3 14:23 15:3 15:5 15:13 15:21 17:9 17:20 18:13 20:4 21:4 21:11 24:15 30:18 32:9 33:4 33:5 33:6 33:16 34:2 34:7 37:14 37:15 39:12 42:7 43:13 43:14 46:17 50:1 51:10 56:4 57:4 57:11 58:3 58:5 58:13 58:19 59:12 59:13 59:16 61:20 62:3 62:17 66:4 67:4 68:21 68:23 70:17 70:20 72:7 72:9 72:11 74:21 78:23 79:10 81:6 82:5 82:5 82:13 83:3 85:10 86:2 88:23 89:5 89:12 89:24 89:25 91:14 91:16 96:4 96:12 98:3 98:5 98:7 101:9 101:13 102:20 104:25 107:11 113:18 113:19 114:15 114:21 115:24 116:17 117:12 117:5 123:14 123:15 130:2 130:3 131:16 131:19 132:15 132:17 132:22 133:19 133:22 135:15 135:17 136:5 136:7 136:13 136:14 137:18 139:19 140:2 142:1 142:12 143:11 143:21 143:23 144:1 144:7 144:10 144:13 144:17 144:18 144:22 144:23 145:1 145:3 145:17 146:17 146:20 146:21 147:2 148:5 149:8 153:17 153:21 153:22 156:9 157:16 160:22 161:11 162:6 162:24 163:22 164:13 165:11 165:15 170:22 171:4 173:10 173:12 175:8 175:13 176:9 176:11 176:13 176:13 176:21 177:4 177:11 177:16 178:9 180:5 181:9 184:6 191:15 | | **ma'am**(7) 53:13 54:8 65:24 106:4 153:10 185:5 185:9 **made**(51) 6:25 9:6 9:22 10:3 13:12 13:12 13:23 23:2 23:16 24:9 34:21 35:20 36:12 46:25 49:3 52:2 52:8 54:15 54:21 57:13 64:8 70:25 72:2 74:8 76:22 79:9 80:16 83:22 91:14 101:23 104:21 107:13 108:5 108:25 117:9 126:19 129:13 131:23 148:1 148:16 148:17 148:18 148:22 150:6 150:15 150:17 151:12 160:16 166:22 183:15 184:23 | | **meant**(2) 155:17 161:23 **mechanism**(2) 79:16 80:7 **mediators**(1) 159:23 **meet**(3) 17:11 18:16 87:24 **meeting**(2) 49:22 160:17 **meetings**(1) 52:7 **meets**(1) 86:11 **membership**(2) 14:15 14:16 **memberships**(1) 14:13 **memory**(2) 78:7 86:25 **mention**(2) 30:12 191:11 **mentioned**(4) 114:3 169:6 179:25 184:9 **merican**(1) 1:7 **merit**(5) 160:1 160:4 160:5 160:6 160:9 **mers**(3) 29:7 29:15 33:14 **mess**(2) 65:25 180:1 **met**(6) 17:25 18:16 56:22 71:21 135:13 159:23 |
| **letter**(44) 62:9 62:10 62:21 62:23 62:23 94:2 108:12 108:21 109:7 112:17 112:25 113:7 163:24 164:1 170:8 171:2 171:6 171:9 173:9 173:23 173:24 174:8 174:15 174:18 175:1 175:3 176:22 177:8 177:13 177:18 177:19 177:22 178:12 179:1 179:1 179:19 179:22 180:3 180:21 182:1 182:4 182:6 182:16 183:22 | | | | | | |
| | | | | **madison**(1) 2:6 **mail**(1) 113:7 **mailman**(1) 113:6 **main**(7) 19:15 19:25 167:18 167:21 167:22 185:5 185:9 | | |
| | | | | | | **method**(1) 21:24 **michaek**(2) 108:12 108:13 **michele**(1) 50:17 **mid**(1) 89:11 **middle**(1) 94:1 **midfico**(1) 70:3 **might**(9) 15:9 15:13 15:23 28:25 40:2 40:14 47:5 76:3 184:17 |
| **letters**(2) 31:9 180:12 **let's**(1) 120:2 **lexus**(1) 31:21 **library**(1) 119:15 **licensed**(1) 23:9 **lied**(1) 9:19 **life**(1) 118:24 **light**(1) 43:18 | | | | **maintain**(1) 52:20 **maintained**(1) 168:18 **major**(1) 9:9 **make**(33) 10:12 12:1 13:11 20:2 24:9 25:20 26:3 43:13 44:22 45:4 47:2 48:21 48:22 52:1 53:4 61:19 69:13 78:3 83:21 83:23 84:2 84:6 84:12 90:14 102:18 109:3 140:20 149:25 166:25 180:9 184:6 184:13 **makes**(1) 150:16 **making**(13) 7:13 31:17 35:11 51:2 65:25 79:11 111:20 126:10 150:18 151:4 151:10 164:19 172:2 180:23 182:25 | | |
| | | | | **male**(3) 173:4 173:5 173:6 **malibu**(3) 50:5 168:20 168:25 **man**(1) 36:21 | | **mil**(1) 8:16 **mile**(1) 113:5 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**miles**(6) 35:20 102:21 103:2 104:7 104:8 105:2

**mill**(1) 6:11

**mill's**(1) 8:13

**million**(2) 101:11 145:3

**mills**(244) 2:11 3:5 4:9 5:5 5:16 5:22 6:1 6:5 6:17 8:4 9:6 9:19 9:20 10:21 11:2 13:13 15:16 19:4 19:13 20:20 20:23 21:7 21:14 21:17 24:15 26:23 27:4 28:12 29:10 29:19 32:9 32:16 33:6 33:11 36:21 37:3 37:13 39:20 42:11 42:19 45:2 45:5 45:9 45:22 46:16 47:15 47:17 47:20 48:13 50:12 53:15 54:4 54:5 54:9 54:11 54:13 54:15 55:11 55:14 59:23 62:21 61:1 61:4 62:7 62:9 62:15 62:23 63:6 63:21 65:3 66:1 66:5 67:1 67:8 67:11 67:15 67:16 68:7 68:10 68:12 68:16 68:19 68:24 69:1 69:9 69:19 70:13 72:6 72:12 72:18 72:19 72:24 73:7 73:11 78:18 78:22 79:7 79:14 79:23 80:11 81:15 81:21 85:9 85:17 85:25 86:13 88:2 88:21 89:4 89:22 89:25 90:1 90:6 90:15 90:19 90:24 91:25 92:8 93:8 93:14 93:18 94:23 96:1 96:20 98:2 98:15 98:24 99:4 99:9 100:6 100:9 100:11 102:16 102:20 103:1 103:4 103:22 105:16 105:23 106:1 106:3 106:5 106:8 108:20 110:4 111:3 111:7 112:4 113:16 113:17 116:3 116:17 117:24 118:2 120:4 120:16 121:2 122:17 123:8 123:22 125:25 126:4 128:10 128:13 128:16 128:20 129:11 129:11 130:16 130:19 131:1 131:3 136:15 138:1 138:15 138:17 139:1 142:4 142:10 142:21 143:4 143:13 145:7 145:24 146:4 148:11 149:2 149:4 151:14 152:20 152:23 153:1 153:3 153:4 153:9 153:12 153:21 154:1 154:4 154:6 154:8 156:8 156:13 157:2 158:17 161:4 161:14 161:18 161:20 161:24 162:1 162:4 162:9 163:7 165:20 166:13 170:3 170:5 170:8 172:22 174:4 174:6 176:1 180:4 180:15 181:24 182:1 184:3 184:5 185:3 185:23 186:23 187:24 188:4 188:19 188:19 189:14 189:15 190:1 191:3 191:7 191:10 191:24 192:21

**mills/chase**(1) 21:5

**mind**(5) 7:8 7:24 47:2 87:4 181:18

**minded**(1) 49:11

**minds**(1) 7:19

**mine**(2) 138:17 155:20

**minimize**(1) 76:21

**minute**(9) 23:24 24:1 65:9 76:16 161:12 161:12 161:13 190:23 191:6

**minutes**(3) 190:24 193:3 193:13

**mischaracterized**(1) 68:4

**mischaracterize**(2) 67:21 92:4

**misrepresentation**(1) 7:16

**misrepresentation**(6) 6:25 7:3 9:7 9:24 9:25 23:2

**miss**(1) 94:3

**missed**(1) 91:18

**missing**(1) 115:18

**misstated**(1) 30:16

**misstates**(1) 142:5

**mistake**(3) 148:15 148:16 148:17

**mistakes**(1) 31:17

**mitigation**(3) 170:18 174:16 175:2

**mixed**(1) 157:14

**mode**(1) 119:23

**moment**(6) 36:1 46:5 56:23 90:10 156:4 171:8

**monday**(8) 4:1 5:9 71:17 71:20 73:6 78:19 141:20 142:5

**monetary**(1) 6:18

**money**(47) 39:17 39:20 51:2 71:14 71:24 72:1 80:10 80:14 82:4 83:10 84:25 101:18 110:25 116:20 117:21 126:25 142:24 155:1 155:1 155:3 155:7 155:7 157:14 160:18 160:20 161:4 161:7 162:3 162:9 162:13 162:17 162:20 162:21 162:23 163:2 163:2 164:4 164:9 164:11 164:20 164:23 165:11 165:15 166:15 177:15 178:3 183:6

**monitor**(1) 48:5

**month**(16) 9:21 98:17 148:10 148:13 150:3 150:5 150:7 150:8 150:23 151:3 151:4 151:6 151:10 181:11 181:20 187:25

**monthly**(7) 114:12 114:14 124:5 147:25 149:13 183:1 187:21

**months**(14) 28:11 28:14 57:6 62:14 84:15 134:11 141:1 141:13 150:1 151:9 151:12 169:2 173:15 182:13

**monumental**(1) 49:6

**more**(31) 8:13 11:18 12:12 13:23 21:12 52:7 60:25 62:2 72:10 76:12 83:24 84:1 84:3 99:14 99:16 110:24 126:25 132:15 142:23 145:16 159:8 161:23 172:12 193:3

**morgan**(1) 1:30

**morning**(12) 4:3 4:6 6:4 8:18 12:24 26:22 26:24 41:5 48:13 99:11 139:24 161:21

**mortgage**(83) 1:7 9:13 19:14 19:23 21:1 22:6 24:5 29:7 33:7 33:7 33:25 34:4 34:5 35:17 37:10 55:4 55:5 57:6 61:12 69:11 79:15 80:7 83:19 83:20 84:6 84:8 84:11 84:13 84:18 89:10 89:15 90:14 91:6 91:19 91:20 91:21 92:21 93:5 94:14 94:24 95:2 95:23 100:18 102:22 109:1 110:12 111:9 111:12 111:25 120:15 129:23 166:16 166:17 166:21 170:9 170:15 173:22 173:25 174:2 175:19 175:24 178:15 178:23 179:6 179:16 179:20 181:10 181:19 182:10 183:11 183:19 184:11 184:14 184:18 184:21 184:24 186:9 186:10 186:14 186:18 186:17:19 187:21 187:25

**mortified**(1) 148:14

**most**(2) 49:6 162:23

**motion**(53) 4:12 4:15 4:23 5:14 5:17 5:21 5:22 8:10 8:21 10:25 11:11 11:15 12:5 13:3 13:4 18:10 18:24 19:2 20:22 23:21 25:2 25:13 25:15 25:15 25:19 25:19 25:22 25:25 26:5 26:14 26:16 26:18 29:5 33:1 33:8 33:13 33:19 34:21 35:18 36:10 39:2 41:1 41:10 41:24 42:17 43:25 44:7 44:10 44:16 45:12 46:15 46:19 126:23

**motions**(10) 4:11 5:15 5:18 23:24 24:1 32:17 32:20 33:2 33:5 47:11

**mountain**(1) 50:5

**movant**(6) 27:12 27:24 28:22 28:23 34:12 42:5

**move**(14) 42:2 48:5 58:6 61:21 61:24 64:19 71:25 94:25 95:3 96:6 102:18 134:10 150:24 174:8

**moved**(13) 27:4 54:24 56:4 80:11 83:18 113:3 113:5 134:9 150:23 151:11 167:6 167:8 169:4

**movers**(3) 167:6 167:8 168:4

**moving**(6) 81:4 119:16 134:8 168:13 171:10 171:14

**mrs**(2) 102:2 102:14

**much**(12) 5:10 39:20 51:2 63:11 83:10 102:13 138:2 149:25 150:24 161:7 163:2 171:11

**multiple**(1) 106:20

**murin**(1) 1:37

**must**(2) 137:4 184:12

**myself**(2) 75:2 190:1

**name**(23) 50:11 56:17 63:7 63:15 63:24 66:5 106:11 133:11 154:20 154:21 154:22 154:23 154:25 155:10 156:1 156:18 157:6 157:9 157:15 157:17 164:8 165:21 189:1

**named**(3) 92:23 101:20 104:15

**names**(1) 135:20

**narrow**(1) 86:20

**narrowly**(1) 42:20

**natural**(1) 191:1

**nature**(6) 94:8 97:15 107:7 110:16 127:15 127:23

**natures**(1) 110:15

**near**(1) 148:8

**necessarily**(3) 11:4 34:18 157:17

**necessary**(2) 9:14 46:12

**need**(22) 6:13 11:8 24:10 25:9 25:21 33:23 35:20 54:7 59:20 65:13 71:11 71:16 78:13 85:19 105:8 134:22 138:3 138:10 139:20 174:6 175:4 180:13

**needed**(11) 95:21 100:19 141:18 160:22 161:23 162:23 163:1 164:13 164:16 173:2 180:8

**negatively**(2) 168:7 168:11

**neglected**(1) 4:19

**nest**(1) 48:15

**never**(28) 13:12 23:4 33:4 35:2 37:13 60:14 74:8 74:12 79:23 108:17 108:18 108:18 111:11 120:13 126:6 129:19 141:15 142:1 147:13 148:15 157:19 158:15 165:8 165:12 165:15 168:23 178:10 189:5 189:6

**new**(9) 2:7 12:5 82:5 99:16 119:17 127:9 151:11 168:22 168:22

**next**(30) 6:6 16:13 18:23 20:12 47:20 56:20 68:1 68:6 68:18 68:19 70:16 89:8 90:4 100:23 111:24 122:3 125:20 136:20 137:11 140:7 147:25 149:25 158:18 169:1 171:25 172:17 172:21 177:25 178:13 185:4

**nine**(1) 90:9

**nobody's**(1) 76:7

**nominee**(1) 42:15

**non-contemporaneous**(1) 99:18

**non-foreclosure**(1) 18:2

**non-judicial**(2) 17:12 17:23

**non-profit**(1) 49:3

**none**(1) 19:19

**noon**(1) 54:2

**nor**(3) 20:16 23:16 35:4

**normal**(2) 17:18 18:16

**normally**(1) 19:13

**north**(1) 52:9

**norwood**(11) 101:21 103:21 104:15 104:19 104:21 107:1 107:3 107:8 107:12 108:5 110:1

**norwood's**(1) 107:4 107:16 108:8

**nosara**(16) 92:23 93:1 93:15 93:20 93:22 94:3 94:4 94:9 94:16 95:3 172:25 173:1 173:4 173:6 173:15

**not**(238) 4:18 6:18 6:20 7:4 7:10 8:1 8:10 8:11 8:23 9:9 9:13 9:18 10:3 10:3 10:6 10:20 11:4 11:18 12:11 12:12 14:1 14:1 16:2 16:9 16:12 16:15 16:20 16:22 18:14 18:16 18:19 19:1 19:3 19:6 19:21 20:2 20:12 20:15 21:1 21:7 22:2 22:13 22:18 22:24 23:15 23:25 24:11 25:2 25:18 25:24 26:2 26:4 26:13 26:15 26:16 27:10 27:21 27:24 28:4 29:10 30:21 30:24 31:25 32:5 32:10 32:17 33:22 34:14 34:18 34:20 34:22 35:5 35:9 35:10 35:12 35:16 36:15 37:13 38:4 38:4 38:5 39:20 40:5 40:5 40:14 40:24 43:3 43:4 43:12 43:15 43:24 46:7 46:21 46:22 46:23 48:7 52:15 56:16 56:18 57:8 59:2 59:5 59:5 65:6 66:10 66:11 66:13 66:18 66:25 66:25 67:2 67:5 67:12 68:4 72:11 72:22 74:1 75:24 76:19 77:2 77:6 77:10 77:10 78:25 79:1 79:2 80:12 80:13 81:1 81:25 84:7 84:19 85:9 85:15 86:2 86:17 87:12 87:21 88:19 89:23 92:2 92:3 93:9 94:25 95:3 95:20 95:21 95:23 96:3 96:12 97:12 97:21 98:5 98:17 98:19 98:21 98:25 99:2 99:3 99:15 99:25 100:17 100:18 100:20 101:10 103:17 103:18 104:5 104:12 105:14 107:6 108:5 108:7 108:11 111:15 111:16 112:18 113:1 113:7 113:23 114:16 116:18 117:19 120:15 122:5 122:11 123:9 124:23 125:18 127:17 127:20 131:21 136:1 136:13 136:19 136:25 143:4 144:15 144:16 144:24 144:25 146:13 147:8 147:22 148:10 148:17 152:8 154:18 158:11 160:15 163:25 165:5 169:2 171:8 171:10 173:25 174:4 175:21 175:23 176:22 178:11 178:21 178:24 179:8 179:9 183:11 184:18 188:12 188:16 189:10 189:22 189:22 190:10 191:11 191:21 192:13 193:14 193:22

**note**(14) 12:17 27:8 27:15 28:11 28:24 28:25 29:9 29:12 34:11 34:14 70:16 94:2 165:2 176:15

**nothing**(7) 10:18 17:21 25:11 122:20 173:20 173:20 193:14

**notice**(2) 30:4 46:21

**noticed**(1) 160:25

**notion**(1) 32:8

**notwithstanding**(1) 9:3

**november**(6) 1:13 4:1 92:10 113:4 151:5 194:8

**now**(42) 9:19 11:14 12:8 16:6 27:11 28:21 30:5 30:22 31:6 33:17 33:23 36:10 40:3 40:25 49:25 51:20 54:3 57:19 59:6 61:6 64:9 72:10 78:18 81:6 82:14 84:25 86:1 90:15 92:5 99:12 105:5 109:17 110:8 114:18 116:17 118:8 119:16 126:1 126:10 128:19 133:24 169:24

**nowhere**(1) 148:8

**nuance**(1) 40:11

**nullify**(1) 38:1

**number**(16) 23:10 33:14 33:21 47:21 82:3 82:25 82:25 83:2 84:23 92:5 105:25 115:1 130:25 158:19 185:3 185:4

**numbered**(1) 112:13

**numbers**(6) 31:10 33:4 33:5 146:2 159:7 177:19

**nursery**(1) 49:10

**oak**(1) 52:24

**oaks**(7) 49:15 52:22 53:3 53:24 53:25 134:11 134:18

**oath**(3) 7:10 118:2 193:23

**oats**(7) 170:12 170:14 170:15 175:2 176:23 176:25 177:8

**obispo**(4) 134:6 134:10 134:17 169:4

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| object(1) 32:19 | | okay(245) 4:22 10:14 10:17 10:24 15:11 23:22 28:3 28:9 28:13 28:20 28:25 32:11 32:12 38:11 39:24 41:4 41:9 41:23 44:11 44:14 44:24 47:14 47:19 48:8 49:16 49:22 50:11 50:16 53:8 54:10 54:23 55:13 56:24 57:1 57:11 57:19 58:12 58:23 59:1 59:22 60:9 61:15 61:19 61:25 62:1 62:25 63:5 64:8 64:14 64:18 66:1 66:7 67:7 71:4 71:8 73:12 74:18 74:22 75:9 75:15 76:9 76:11 79:5 79:23 80:1 80:15 80:22 81:11 81:15 81:23 82:2 82:12 82:22 83:2 83:7 83:13 83:19 83:23 84:11 84:13 84:17 86:1 88:24 89:22 90:4 92:8 92:11 92:16 92:20 92:22 92:25 93:8 93:18 93:21 93:25 94:14 94:23 95:6 95:14 95:19 100:4 101:6 101:15 103:5 103:10 103:15 103:23 104:2 104:8 104:11 104:14 104:21 105:5 106:8 106:17 106:20 106:25 107:2 107:9 107:12 107:15 108:4 108:8 109:6 110:4 110:8 110:11 110:18 111:11 114:14 114:21 115:115:5 115:14 115:17 118:8 118:13 119:20 120:3 121:6 121:11 121:14 121:17 122:3 123:11 125:2 125:6 125:22 128:9 128:21 130:6 131:2 131:11 131:14 132:9 132:13 133:2 133:6 133:24 134:3 134:8 134:23 135:10 135:21 136:20 136:24 137:2 137:6 137:15 137:19 137:22 138:5 138:8 138:9 138:13 138:19 138:24 139:1 140:7 140:13 140:15 143:6 144:7 144:20 144:22 145:1 145:5 146:1 146:4 146:24 147:6 147:12 147:18 147:20 147:25 149:5 149:7 150:2 150:13 152:2 153:5 153:14 153:17 153:17 154:7 154:8 154:12 154:24 155:19 155:21 156:17 158:24 161:4 161:10 161:19 162:7 166:22 167:3 167:16 167:19 170:5 170:6 171:17 171:24 172:7 172:11 173:14 174:7 175:1 175:7 175:16 177:3 179:18 180:3 180:25 182:21 185:16 187:6 188:11 189:1 189:14 190:2 191:2 191:6 191:10 | oral(2) 6:10 18:17 order(30) 4:14 4:17 5:11 10:8 27:11 27:14 28:22 30:25 33:25 36:5 36:9 36:14 37:9 37:9 38:1 38:5 40:9 40:12 40:20 41:2 42:14 42:24 43:21 58:10 71:9 90:25 91:3 91:5 184:7 184:17 | page(98) 12:9 12:10 37:24 59:1 59:6 70:3 70:24 74:23 74:25 75:1 75:10 75:13 76:6 76:14 76:15 82:14 82:17 85:22 88:20 99:25 100:2 100:11 105:24 105:25 106:17 108:23 112:12 114:8 114:9 120:17 120:24 121:1 121:2 121:17 121:25 122:3 124:20 125:7 130:18 130:21 130:22 131:8 131:8 131:14 136:20 136:21 136:21 137:17 137:10 137:11 146:1 146:4 146:14 146:24 147:25 149:7 149:23 150:14 151:17 151:22 151:22 152:9 152:9 152:10 153:3 153:18 154:1 154:3 154:4 158:18 158:18 159:1 159:2 159:3 159:3 159:8 159:10 171:25 172:13 172:22 175:7 182:6 182:7 182:15 185:2 185:5 185:6 185:7 185:16 185:21 185:23 186:22 187:3 188:19 189:14 191:3 191:6 |
| objected(2) 66:9 94:20 | | | | orders(3) 35:23 35:24 42:20 | | |
| objection(39) 5:4 6:11 33:19 51:4 60:16 62:5 63:16 64:19 65:19 67:12 67:20 69:5 72:4 72:17 73:15 77:16 79:21 85:3 87:18 87:20 90:20 92:4 93:7 95:25 98:23 99:24 100:2 100:4 102:11 105:10 107:18 117:15 122:5 123:16 123:16 127:19 142:3 142:14 156:24 | | | | organics(1) 49:23 | | |
| objective(2) 128:11 128:13 | | | | originally(1) 161:10 | | |
| obligate(1) 20:9 | | | | origination(7) 14:3 14:23 15:4 15:13 17:10 18:13 39:12 | | |
| obligation(1) 22:9 | | | | originator(2) 34:11 34:13 | | pages(3) 23:17 33:12 185:13 |
| obligations(1) 35:18 | | | | other(24) 4:12 5:13 10:11 11:18 19:12 23:12 34:5 44:19 46:14 47:1 78:11 88:7 118:22 122:18 136:11 145:16 145:19 191:21 148:15 150:7 157:11 157:14 179:5 181:13 | | paid(13) 21:6 82:3 82:15 82:19 83:3 83:6 83:14 84:1 117:8 118:10 135:11 166:14 184:18 |
| obtain(7) 42:4 66:22 92:2 132:5 136:8 140:2 178:25 | | | | otherwise(1) 17:22 | | panels(1) 120:10 |
| obtained(3) 131:24 134:10 134:18 | | | | our(46) 6:9 6:9 8:10 8:10 11:17 11:17 12:8 12:17 13:3 13:16 21:2 22:18 27:16 37:4 44:25 46:15 47:12 49:4 52:8 56:8 56:9 56:20 66:18 72:12 74:19 83:20 85:15 90:8 91:7 97:23 105:6 108:16 108:24 108:24 109:3 109:3 109:22 110:17 111:22 118:21 120:18 127:1 134:12 182:1 192:10 | | papers(10) 39:1 80:12 80:20 80:23 81:6 114:24 119:14 144:24 145:4 145:6 |
| obtaining(7) 64:16 64:25 67:10 145:3 163:7 174:19 175:23 | | | | | | paragraph(17) 21:1 138:19 139:1 140:7 140:8 140:23 171:6 171:8 171:9 172:1 172:7 172:12 172:17 172:21 172:22 173:9 173:14 |
| obviously(5) 17:3 25:8 26:11 33:24 36:13 | | | | ourselves(1) 178:21 | | |
| occupation(3) 48:19 52:10 52:11 | | old(1) 81:9 | | out(54) 25:1 27:23 30:8 33:17 35:8 42:13 49:4 52:7 57:7 58:16 62:17 68:5 72:1 79:24 80:10 81:6 86:11 90:7 90:9 93:3 93:4 93:5 94:22 97:9 99:21 109:3 113:22 113:24 114:2 114:15 116:23 116:25 127:24 128:14 133:11 135:17 136:1 140:25 141:4 141:13 142:9 143:23 150:9 158:13 161:23 162:24 163:23 165:19 167:12 183:11 183:19 188:18 | | paragraphs(1) 172:12 |
| occur(3) 81:3 111:4 174:9 | | once(6) 15:6 58:19 108:24 108:24 127:23 132:3 | | | | parcel(1) 97:22 |
| occurred(3) 70:7 97:25 115:22 | | | | | | pardon(2) 24:8 60:23 |
| occurrence(1) 15:15 | | | | | | part(29) 6:14 18:10 18:10 23:2 24:14 24:17 39:15 44:25 52:19 53:5 62:16 73:21 74:13 74:15 90:24 90:25 97:22 98:5 112:23 115:2 116:11 116:14 116:17 117:21 118:5 118:16 160:11 169:16 182:21 |
| occurrences(1) 15:13 | | | | | | |
| occurs(1) 128:5 | | one(76) 4:10 11:23 13:5 14:12 16:3 16:16 17:7 17:9 17:14 19:24 21:7 21:12 21:23 22:3 23:23 24:25 31:14 33:11 35:10 35:11 36:4 36:8 36:11 39:10 39:15 42:10 42:23 47:23 49:6 50:5 50:18 53:15 56:22 58:3 58:14 58:15 69:12 70:9 70:11 74:2 76:4 77:18 78:25 81:25 82:19 93:5 93:13 93:13 99:14 99:16 101:23 104:1 110:23 113:20 117:17 120:2 120:20 128:4 134:20 135:25 136:6 138:14 141:7 166:22 167:14 167:22 171:8 172:1 173:15 175:7 175:15 176:24 178:12 181:14 183:6 185:19 | | |
| october(6) 84:8 89:16 92:3 92:10 113:3 192:24 | | | | outreach(2) 49:9 49:10 | | |
| | | | | outright(1) 85:8 | | partial(1) 134:12 |
| off(11) 13:15 15:22 17:18 31:10 37:15 44:4 62:20 79:7 113:6 140:16 189:6 | | | | outside(2) 77:13 87:2 | | partially(2) 36:20 97:23 |
| | | | | outstanding(1) 123:14 | | participating(1) 41:9 |
| | | | | over(24) 14:7 14:10 14:20 15:8 22:3 25:9 36:18 50:18 58:7 98:10 107:11 114:4 114:5 114:5 126:6 143:19 144:17 145:9 145:15 172:14 179:9 182:13 183:5 183:9 | | particular(7) 20:12 20:22 42:7 50:5 92:5 97:13 101:8 |
| offer(41) 24:20 26:6 54:16 54:22 54:23 55:7 55:22 57:13 57:22 61:6 61:9 61:20 67:19 68:14 95:19 100:16 102:5 103:10 103:15 103:17 103:20 103:21 104:5 104:1 104:21 106:25 107:13 108:5 108:8 110:1 113:14 131:9 131:11 131:15 176:2 176:6 181:8 184:6 184:21 184:23 184:25 | | | | | | particularly(1) 122:11 |
| | | | | overnight(1) 193:22 | | parties(6) 14:17 20:17 34:7 37:11 40:12 76:22 |
| | | | | overrule(3) 11:11 77:15 127:18 | | |
| | | | | overruled(11) 51:5 62:8 63:20 65:2 67:14 69:8 92:7 107:19 117:25 142:6 142:19 | | partner(1) 94:3 |
| offered(14) 24:3 57:11 75:23 99:22 100:12 102:8 102:14 112:20 113:11 132:3 181:12 181:13 182:10 184:23 | | | | | | partnership(1) 20:16 |
| | | | | overturned(1) 32:10 | | party(14) 19:12 19:12 20:13 27:4 27:21 27:24 28:1 28:17 34:14 34:21 42:8 43:2 43:3 159:12 |
| | | ones(2) 4:11 35:9 | | owe(1) 188:10 | | |
| | | ongoing(2) 50:4 52:20 | | owed(6) 32:1 32:2 32:6 186:3 186:6 | | paso(4) 53:7 56:7 120:6 135:6 |
| offering(1) 112:25 | | only(29) 8:2 8:24 9:12 9:22 28:17 30:3 37:13 46:3 49:18 52:19 71:25 86:7 113:1 117:9 127:4 132:17 136:8 140:2 142:24 143:4 155:10 156:1 164:1 164:16 171:10 175:22 181:11 181:18 186:14 | | own(10) 7:22 29:17 37:24 53:25 105:3 109:22 157:12 157:13 174:5 192:11 | | passage(1) 43:18 |
| offers(2) 106:20 111:21 | | | | | | passed(2) 31:2 116:23 |
| office(18) 62:20 71:17 71:21 73:6 77:17 79:8 80:11 80:17 80:19 112:21 114:6 115:7 144:21 145:8 145:14 160:17 161:20 163:25 | | | | owner(6) 27:10 33:6 33:16 34:24 38:6 66:22 | | past(2) 27:14 119:8 |
| | | | | | | pay(17) 37:15 40:17 40:18 84:3 117:10 119:3 158:12 164:22 165:4 166:10 181:14 183:9 191:12 191:19 191:20 192:3 192:15 |
| official(2) 2:4 106:11 | | | | owners(1) 27:15 | | |
| | | | | ownership(1) 38:5 | | |
| | | open(3) 26:12 37:7 53:20 | | owns(1) 42:3 | | paying(1) 83:9 |
| | | opened(1) 13:21 | | oxnard(1) 49:15 | | |
| | | opening(3) 29:25 30:1 173:18 | | | | |
| | | operated(1) 178:16 | | p.m(7) 99:7 99:7 129:3 129:3 169:25 169:25 193:25 | | payment(56) 29:1 61:13 68:15 72:8 73:10 79:12 83:8 83:19 83:20 83:20 83:21 83:22 84:2 84:6 84:8 84:11 86:2 90:14 91:18 116:12 116:14 116:17 117:1 117:21 118:5 118:8 132:2 137:8 137:12 138:10 139:4 139:20 140:20 142:13 147:4 147:13 151:22 159:2 160:8 160:11 161:5 161:8 162:4 163:9 163:17 163:21 164:12 164:13 164:21 166:22 166:25 181:8 181:10 181:16 182:25 183:1 183:22 |
| | | operations(1) 187:7 | | | | |
| | | opine(3) 15:16 15:20 17:9 | | pacific(8) 52:21 134:19 135:1 135:2 169:5 169:12 172:4 188:1 | | |
| | | opinion(6) 16:1 16:10 18:14 31:19 | | | | |
| | | opinions(1) 14:1 | | | | |
| | | opponent(1) 73:21 | | | | payments(4) 117:9 182:12 182:13 187:21 |
| | | opportunity(8) 52:21 105:13 125:4 126:4 126:7 126:16 144:8 182:8 183:9 | | | | payoff(1) 94:13 |
| | | | | | | penalty(2) 186:25 190:19 |
| | | opposition(1) 11:24 | | | | pending(4) 65:17 159:25 160:1 163:12 |
| | | option(1) 79:18 | | | | pennsylvania(1) 1:41 |
| | | options(2) 142:25 143:3 | | | | |

| Word | Page:Line |
|---|---|
| people(2) | 24:15 49:21 |
| people's(1) | 157:14 |
| per(4) | 148:10 150:22 155:6 166:10 |
| percent(14) | 55:24 56:2 57:12 71:1 71:6 132:18 132:22 136:8 137:17 137:17 139:1 140:2 140:4 156:18 |
| percentage(1) | 61:15 |
| period(14) | 13:14 15:8 36:9 36:20 37:2 51:7 60:6 72:2 85:18 102:2 104:18 151:6 164:14 164:17 |
| perjury(2) | 187:1 190:19 |
| permissible(1) | 8:12 |
| permission(1) | 47:24 |
| permit(1) | 11:21 |
| permits(1) | 9:16 |
| permitted(2) | 23:11 23:25 |
| perplexed(1) | 56:13 |
| person(4) | 39:6 78:2 84:22 133:14 |
| personal(8) | 6:1 105:3 110:5 119:2 119:14 158:15 171:11 193:14 |
| personally(3) | 4:19 103:1 104:25 |
| pertains(1) | 106:25 |
| pertinent(1) | 20:8 |
| pest(1) | 49:8 |
| petition(9) | 111:25 116:4 124:3 125:14 125:14 128:11 184:3 184:5 185:8 |
| phase(1) | 173:12 |
| philipino(2) | 114:23 145:4 |
| philipino's(2) | 145:8 145:14 |
| phone(10) | 58:1 69:3 93:10 93:13 93:14 114:5 139:24 141:3 141:22 183:17 |
| photographs(1) | 169:18 |
| pick(1) | 99:13 |
| picked(2) | 58:1 58:3 |
| piggyback(4) | 70:17 70:18 70:20 75:22 |
| pin(1) | 34:10 |
| pizza(1) | 48:22 |
| place(9) | 7:22 50:6 65:6 73:10 99:11 175:8 177:9 177:15 193:2 |
| placed(4) | 63:11 63:15 63:24 66:5 |
| plain(1) | 33:24 |
| plaintiff(3) | 30:9 30:15 31:24 |
| plaintiff's(1) | 33:13 |
| plaintiffs(2) | 30:21 32:4 |
| plan(4) | 5:13 52:17 52:19 181:8 |
| planned(2) | 52:16 162:2 |
| planning(3) | 131:19 186:17 |
| play(1) | 127:5 |
| played(1) | 88:12 |
| playing(2) | 41:17 77:7 |
| pleadings(3) | 11:17 41:10 41:11 |
| please(29) | 4:2 4:4 5:19 41:23 47:18 48:14 55:16 69:24 74:14 99:9 99:10 100:7 101:6 105:23 107:21 108:20 115:1 123:7 129:5 130:7 136:15 138:13 169:22 181:21 186:22 190:23 191:5 191:7 |
| plenty(1) | 22:12 |
| plus(6) | 25:6 33:16 49:10 83:11 132:20 138:11 |
| podium(3) | 5:16 6:1 26:20 |
| point(54) | 2:14 13:23 24:13 24:20 24:25 27:9 28:23 29:11 29:20 31:3 31:6 35:7 35:7 35:23 36:12 38:24 38:25 43:12 43:11 45:9 53:8 59:6 59:8 59:10 62:10 70:12 74:13 86:15 103:8 105:5 109:17 110:23 123:6 125:20 125:23 127:8 133:6 133:21 136:10 140:24 141:7 145:14 173:1 174:1 181:6 182:9 182:18 182:21 183:12 183:22 185:1 188:4 191:1 |
| pointed(3) | 12:21 85:5 87:25 |

| Word | Page:Line |
|---|---|
| points(3) | 6:9 140:16 182:7 |
| policy(4) | 22:23 23:1 23:2 23:4 |
| poor(1) | 123:23 |
| portfolio(1) | 169:18 |
| portion(2) | 117:1 117:23 |
| posed(1) | 13:21 |
| position(3) | 13:11 41:13 123:24 |
| possibilities(2) | 136:11 143:5 |
| possibility(1) | 43:13 |
| possible(3) | 10:13 61:23 86:10 |
| possibly(4) | 40:24 77:7 89:9 92:19 |
| post(6) | 124:13 124:16 124:16 125:13 125:14 128:11 |
| post-petition(1) | 45:3 |
| postponed(3) | 169:11 174:10 178:17 |
| postponement(5) | 177:4 177:6 177:7 180:17 188:3 |
| potential(3) | 79:12 111:5 111:8 |
| potentially(1) | 87:6 |
| power(1) | 77:13 |
| ppearances(2) | 1:22 2:1 |
| practice(2) | 14:10 15:25 |
| practices(8) | 14:3 14:23 16:23 17:11 17:22 18:11 18:16 30:17 |
| practicing(1) | 31:8 |
| pre-approval(1) | 130:3 |
| pre-trial(2) | 10:8 30:25 |
| preamble(1) | 33:12 |
| preceding(1) | 190:4 |
| precluded(1) | 26:13 |
| precluding(1) | 26:15 |
| predecessor(3) | 27:19 28:3 34:1 |
| predecessors(2) | 28:22 28:24 |
| prefer(1) | 48:7 |
| prejudice(7) | 44:5 44:5 44:8 44:9 44:12 44:15 44:20 |
| preliminarily(1) | 47:8 |
| premium(2) | 21:8 21:11 |
| prepare(1) | 189:17 |
| prepared(1) | 50:16 |
| preparing(1) | 23:14 |
| present(5) | 7:15 15:7 19:19 45:4 57:9 |
| presented(3) | 39:11 98:1 128:4 |
| presently(3) | 48:14 48:15 48:17 |
| preserve(3) | 134:11 134:18 134:24 |
| pretty(3) | 16:8 150:3 150:4 |
| previous(2) | 86:23 131:8 |
| previously(12) | 86:19 86:23 133:24 145:7 170:11 171:14 173:3 183:4 189:15 190:17 191:7 191:10 |
| price(2) | 176:15 181:19 |
| pricing(2) | 70:25 71:1 |
| pride(1) | 119:5 |
| primarily(1) | 99:21 |
| primary(4) | 10:22 11:17 67:3 78:13 |
| principal(6) | 6:9 8:9 19:13 19:19 82:5 84:5 |
| prior(18) | 24:3 25:2 45:9 45:9 48:24 48:25 60:18 61:1 63:17 84:11 97:14 101:22 114:21 115:24 129:18 144:13 159:20 179:25 |
| pristine(1) | 50:7 |
| probably(3) | 119:10 141:12 150:3 150:14 193:2 193:3 |
| problem(5) | 35:14 79:13 81:11 140:11 193:15 |
| procedure(1) | 50:19 |
| procedures(5) | 10:10 17:11 17:25 18:12 30:16 |
| proceed(3) | 71:18 99:12 100:5 |
| proceeded(1) | 43:11 |
| proceeding(2) | 36:16 90:25 |

| Word | Page:Line |
|---|---|
| proceedings(4) | 1:17 1:45 40:7 194:5 |
| proceeds(1) | 160:7 |
| process(26) | 7:13 15:23 20:1 50:19 55:6 55:23 56:15 58:7 60:22 60:25 62:16 68:1 72:14 78:11 81:7 84:15 96:13 112:3 112:14 113:15 115:23 120:9 148:16 150:1 173:12 180:23 |
| processes(2) | 14:24 15:3 |
| processing(1) | 62:3 |
| procure(1) | 78:11 |
| procured(1) | 45:11 |
| procures(1) | 22:23 |
| produce(2) | 112:24 112:25 |
| produced(4) | 1:46 66:19 91:6 106:15 |
| product(1) | 63:5 |
| production(3) | 7:14 50:23 112:24 |
| professional(1) | 193:15 |
| profited(1) | 38:18 |
| program(7) | 49:8 49:13 49:15 49:16 49:20 70:3 120:7 |
| programs(2) | 18:2 55:24 |
| project(5) | 53:6 53:7 135:5 135:7 169:13 |
| projects(4) | 49:2 52:20 52:24 168:25 |
| prolong(1) | 135:6 |
| promise(1) | 20:10 |
| promised(1) | 164:19 |
| promises(1) | 179:5 |
| promissory(1) | 165:2 |
| pronounce(1) | 172:24 |
| proof(4) | 128:15 128:16 176:15 176:16 |
| proper(11) | 25:15 25:24 25:25 26:16 27:21 27:24 28:1 29:11 36:15 42:5 42:8 |
| properly(3) | 7:4 8:2 46:1 |
| properties(1) | 175:8 |
| property(75) | 29:2 32:4 32:4 33:3 34:13 36:6 38:2 38:6 42:4 45:2 52:6 56:3 57:13 58:21 71:10 72:13 81:13 81:24 84:12 88:21 88:22 100:19 101:1 101:25 101:25 102:6 102:9 102:14 103:9 103:16 104:22 107:9 107:10 107:13 109:18 109:21 110:2 111:21 124:4 129:24 130:2 131:6 131:12 131:15 133:15 133:21 135:13 137:3 137:22 137:25 142:3 165:12 166:1 166:18 166:17 167:6 167:9 167:17 168:3 168:14 171:11 173:1 174:9 174:19 175:21 176:10 184:18 186:5 186:20 187:25 188:16 |
| proponent(1) | 78:10 |
| proposal(1) | 181:17 |
| propose(1) | 14:2 |
| proposed(1) | 182:25 |
| prospective(1) | 22:23 |
| protection(1) | 52:23 |
| protective(4) | 52:23 90:25 91:3 91:5 |
| prove(2) | 46:10 46:12 |
| provide(7) | 59:11 59:15 62:2 77:24 94:9 176:14 180:5 |
| provided(21) | 21:16 57:3 57:5 57:9 59:17 59:18 62:13 63:4 67:18 68:8 105:1 105:7 105:8 114:18 115:18 115:24 130:2 137:15 156:9 176:19 189:15 |
| provides(4) | 16:1 20:1 20:25 40:12 |
| providing(5) | 46:21 60:7 177:14 183:8 |
| proving(2) | 6:24 192:6 |
| provision(3) | 34:5 36:3 78:1 |
| provisions(1) | 20:8 |
| public(3) | 29:10 49:10 49:24 |
| pull(10) | 47:23 47:25 72:1 80:10 81:15 140:25 141:4 141:12 142:9 162:24 |
| pulled(3) | 115:17 120:11 120:12 |
| punitive(2) | 127:1 127:4 |

| Word | Page:Line |
|---|---|
| purchase(23) | 50:1 51:24 54:16 55:1 55:22 102:14 103:15 104:22 107:9 107:13 129:24 130:1 131:5 131:12 131:15 131:23 131:24 132:3 132:6 132:7 165:11 176:15 188:16 |
| purchased(2) | 28:11 166:1 |
| purchasing(2) | 53:9 133:25 |
| purported(1) | 43:19 |
| purportedly(2) | 42:16 46:2 |
| purpose(12) | 21:23 32:4 32:18 64:15 64:24 66:17 67:10 92:25 126:3 147:2 154:18 157:11 |
| purposely(2) | 191:11 191:16 |
| purposes(9) | 23:6 43:9 64:6 78:4 127:18 |
| pursuant(9) | 42:16 43:19 64:14 91:5 127:9 166:6 177:8 177:18 192:2 |
| pursue(1) | 72:7 |
| pursued(1) | 37:12 |
| pursuing(2) | 45:5 128:11 |
| push(1) | 54:7 |
| put(33) | 4:20 10:6 44:9 47:25 63:7 70:21 71:4 76:10 80:9 80:21 83:10 103:21 105:3 108:2 111:25 113:8 118:25 122:8 126:24 132:25 145:22 147:20 147:21 154:21 154:22 157:15 165:20 166:7 169:6 169:8 177:9 179:7 188:3 |
| putting(1) | 126:25 |
| qualified(1) | 87:5 |
| qualify(1) | 86:10 |
| quarters(1) | 70:2 |
| question(37) | 13:21 39:5 39:6 39:8 42:6 51:7 60:5 63:19 63:21 65:17 65:24 67:22 68:2 68:17 69:8 73:21 77:12 87:7 88:15 88:24 89:1 93:12 104:4 110:21 125:2 125:5 142:20 142:21 151:8 152:12 153:8 157:19 159:16 189:4 190:2 193:5 193:9 |
| questioning(8) | 12:18 13:15 99:14 99:15 99:17 99:19 127:19 153:15 |
| questions(11) | 10:12 13:18 13:19 13:24 77:4 77:9 85:15 99:2 99:2 128:22 149:24 |
| quhen(23) | 116:21 116:22 117:2 117:4 117:14 118:4 161:9 162:18 162:21 164:12 164:12 164:22 165:4 165:7 165:10 165:14 191:11 191:16 191:25 192:6 192:14 192:18 192:22 |
| quickly(5) | 61:23 123:6 183:20 184:12 193:16 |
| quit(1) | 58:2 |
| quite(7) | 13:4 16:5 34:22 36:22 86:10 94:6 135:7 |
| quote(2) | 23:14 152:19 |
| rainy(2) | 169:3 172:18 |
| raise(4) | 6:10 29:4 42:13 181:10 |
| raised(5) | 6:13 9:4 11:23 30:19 117:19 |
| raises(3) | 34:9 34:10 42:1 |
| ran(2) | 60:9 90:10 |
| ranch(1) | 53:19 |
| range(2) | 87:2 92:13 |
| rate(2) | 71:1 71:6 |
| rather(1) | 105:12 |
| ratio(3) | 188:8 188:11 188:15 |
| rational(1) | 40:15 |
| ratios(1) | 188:5 |
| reach(1) | 111:16 |
| reached(1) | 25:1 |
| read(12) | 13:18 34:4 34:17 74:24 75:2 75:10 122:10 137:8 137:23 146:11 146:12 |
| reading(5) | 12:10 27:14 33:24 59:10 75:24 |
| reads(1) | 101:8 |
| ready(2) | 80:23 93:2 |
| real(4) | 14:8 14:20 22:12 38:2 |

Case 09-14814-LBR    AMERICAN HOME MORTGAGE    Filed 11/22/10    Page 209 of 219

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **reality**(2) 42:10 43:4 | | **regardless**(3) 66:15 66:16 89:7 | | **represented**(18) 13:2 79:12 80:3 80:4 80:6 | | **right**(100) 5:10 6:3 8:17 12:23 15:17 16:4 | |

**realize**(1) 105:8
**really**(24) 7:5 8:2 8:3 10:18 10:19 10:22 11:7 16:2 25:18 26:2 31:10 34:17 43:17 52:8 77:5 111:22 111:23 113:4 127:23 134:5 137:22 181:4 184:12 193:16

**reaped**(1) 38:19
**reason**(9) 14:25 45:23 53:5 70:3 96:22 126:25 134:9 134:12 160:3

**reasonable**(3) 16:12 78:12 108:25
**reasons**(3) 41:25 77:18 158:16
**recall**(22) 35:3 51:1 57:2 63:11 63:14 77:1 77:2 77:3 85:18 85:25 88:4 88:5 102:8 112:15 113:10 115:2 152:6 153:10 153:11 153:12 153:14 184:25

**recalled**(2) 76:24 77:1
**receipts**(2) 50:21 189:16
**receive**(1) 178:3
**received**(11) 65:5 66:12 66:16 67:17 67:17 82:9 94:2 106:21 109:6 110:5 113:14

**receiving**(1) 61:20
**recent**(2) 30:4 142:5
**recently**(5) 116:23 119:20 119:24 120:4 123:22

**receptive**(1) 108:18
**recess**(9) 41:20 41:21 54:6 54:7 99:7 128:24 129:3 169:24 169:25

**recites**(1) 7:9
**recognize**(3) 35:19 81:21 113:17
**recognized**(2) 40:10 169:1
**recollect**(1) 51:17
**recollection**(18) 51:16 65:7 65:13 65:23 67:8 70:6 70:19 74:4 74:11 74:6 76:23 77:10 77:11 91:11 96:5 136:24 152:13 153:6

**recommended**(1) 133:12
**reconvene**(2) 98:24 193:23
**record**(16) 12:7 32:14 48:13 48:23 59:10 65:25 68:5 74:24 78:4 106:12 120:11 127:1 129:9 143:16 192:11 192:12

**recorded**(1) 1:45
**recording**(3) 1:45 29:9 194:4
**records**(2) 189:17 190:5
**recover**(1) 31:24
**recovery**(1) 118:4
**recross**(1) 3:3
**redacted**(1) 4:17
**redefine**(1) 51:7
**redirect**(4) 3:3 3:3 142:7 193:19
**reduce**(1) 24:2
**reduced**(2) 70:18 70:20
**refer**(2) 85:14 185:13
**referenced**(1) 178:25
**referred**(2) 31:2 58:15
**referring**(2) 31:5 47:22
**refinance**(12) 75:23 79:16 90:8 93:2 94:10 95:4 100:16 100:22 101:3 101:17 104:15 173:13

**refinancing**(5) 13:14 88:23 100:13 100:20 173:7

**reflect**(1) 45:21
**refresh**(5) 65:7 65:12 65:22 91:10 136:24
**refreshing**(1) 65:13
**refusing**(1) 96:2
**regard**(19) 6:11 6:21 7:20 7:24 8:3 8:7 11:19 11:24 32:6 57:20 67:1 73:13 74:4 74:11 79:10 93:20 112:13 126:20 127:3

**regarding**(13) 7:6 12:13 13:12 13:13 33:15 37:23 39:19 44:6 63:3 73:9 96:1 107:4 171:3

**registered**(1) 29:14
**registration**(1) 29:8
**regular**(2) 30:15 182:13
**regularly**(1) 183:1
**reinstate**(7) 98:3 101:9 170:22 175:4 177:11 177:16 178:8

**reinstatement**(3) 184:19 184:22 184:24
**rejected**(5) 23:7 90:2 104:6 104:12 108:9
**relate**(2) 17:1 122:6
**related**(8) 5:22 10:7 14:23 122:21 126:10 127:22 159:20 160:7

**relating**(2) 30:18 175:19
**relation**(1) 19:18
**relationship**(18) 19:5 19:6 19:11 19:17 19:22 20:7 20:17 20:21 21:14 21:19 22:8 22:14 22:15 22:16 23:20 25:3 25:7 51:20

**relatively**(1) 72:1
**relaying**(1) 108:14
**release**(2) 60:2 139:23
**relegates**(1) 8:5
**relevance**(5) 45:13 117:15 117:16 123:2 123:16

**relevant**(13) 8:11 8:23 9:17 11:1 11:9 14:5 14:8 14:25 23:2 37:17 122:6 124:23 127:17

**reliability**(1) 97:13
**reliance**(3) 9:6 9:10 178:11
**relied**(3) 7:2 7:17 10:1
**relief**(38) 11:5 27:5 27:6 27:8 27:11 27:12 28:18 29:2 30:16 32:17 32:19 32:24 33:1 33:2 34:12 35:10 35:23 35:24 36:5 36:9 36:13 37:6 38:1 38:7 40:13 42:3 42:4 42:9 42:14 42:16 42:20 43:3 43:5 43:7 43:15 43:15 184:9 184:12

**relies**(1) 6:23
**relocate**(2) 52:3 52:16
**relocating**(1) 172:2
**rely**(1) 21:3
**relying**(2) 169:13 190:14
**remaining**(2) 4:11 22:4
**remedies**(2) 6:16 32:3
**remedy**(6) 6:17 6:17 8:25 11:6 30:24
**remember**(23) 53:16 59:4 59:4 60:1 61:17 65:11 84:22 111:21 111:22 129:25 139:9 148:25 150:2 150:11 163:4 165:9 169:1 169:9 178:4 181:15 181:17 184:20 185:1

**reminding**(1) 45:17
**rendered**(1) 190:7
**renew**(1) 22:25
**rental**(1) 53:18
**reopen**(1) 37:8
**repay**(2) 117:13 118:4
**repeat**(4) 41:14 63:21 104:4 165:13
**replace**(1) 119:22
**reply**(7) 4:20 5:2 10:14 18:7 18:8 27:16 37:22

**report**(5) 25:24 69:14 69:16 176:18 176:19
**reported**(5) 121:8 121:12 121:18 121:25 124:13

**reporting**(2) 91:22 92:1
**represent**(16) 20:13 57:12 82:8 87:21 92:14 100:12 140:8 172:8 172:17 172:23 173:9 173:14 174:18 180:3 182:10 183:21

**representation**(6) 20:10 46:13 176:21 183:25 187:15 192:17

**representations**(2) 10:3 12:16
**representatives**(1) 108:15

**represented**(18) 13:2 79:12 80:3 80:4 80:6 95:10 138:5 139:3 140:19 147:9 148:18 149:2 171:7 171:10 171:25 172:11 172:13 182:24

**representing**(2) 32:24 177:8
**represents**(2) 20:13 83:2
**repurchase**(2) 35:18 104:15
**request**(7) 11:5 25:12 26:3 66:18 173:23 177:4 177:22

**requested**(8) 61:22 62:4 62:6 62:7 62:9 62:19 63:6 163:24

**requesting**(1) 180:21
**requests**(2) 62:12 91:7
**required**(8) 17:11 48:22 71:9 72:9 98:3 132:2 132:17 140:2

**requirement**(1) 70:4
**requiring**(1) 32:5
**requisite**(1) 22:3
**research**(1) 134:12
**reside**(5) 48:14 48:15 101:25 107:10 113:2
**resided**(1) 102:22
**residence**(2) 83:17 119:17
**residential**(1) 49:1
**residing**(1) 109:21
**resolution**(3) 181:11 181:13 184:15
**respect**(17) 4:8 4:20 5:1 5:2 5:17 8:23 9:8 10:5 13:25 15:3 32:24 88:18 105:16 129:15 130:3 148:21 192:18

**respected**(1) 35:24
**respects**(2) 20:18 21:22
**response**(19) 5:5 8:17 11:4 13:3 13:8 13:16 17:9 23:22 24:1 35:8 35:12 46:15 58:12 85:1 91:7 109:9 112:17 112:18 122:19

**responses**(5) 29:25 67:1 122:18 122:20 126:5

**responsibility**(1) 22:1
**responsive**(1) 66:18
**rest**(4) 150:20 151:9 164:20 166:21
**restoring**(1) 32:4
**result**(21) 6:19 7:20 23:13 23:18 34:22 43:25 45:2 77:20 116:15 117:11 118:9 118:13 118:17 118:22 123:22 125:25 127:12 127:14 128:5 162:17 174:8

**resulting**(1) 70:21
**resume**(1) 14:7
**retained**(1) 19:14
**retake**(1) 99:10
**return**(2) 176:16 183:17
**returns**(34) 5:22 6:14 8:3 8:6 9:12 9:13 9:15 9:18 9:19 9:22 9:23 26:1 45:11 45:22 45:23 46:1 46:4 46:9 46:10 50:13 50:14 50:15 50:16 50:23 50:25 57:6 59:15 62:14 62:15 114:19 115:9 115:17 189:18 190:13

**revealed**(2) 12:3 29:24
**review**(10) 7:16 15:16 65:7 91:6 114:21 144:23 176:10 176:10 190:15 190:16

**reviewed**(5) 8:21 41:11 115:24 137:3
**reviewing**(3) 91:9 123:11 145:2
**rewrite**(2) 90:8 90:8
**rich**(1) 26:22
**richard**(1) 2:12

16:14 18:5 18:6 18:9 25:14 27:23 28:16 28:21 29:3 29:21 33:12 35:11 35:15 35:17 38:23 39:6 39:14 39:16 39:24 40:25 41:16 41:19 43:2 45:17 45:25 47:7 47:16 48:9 55:7 55:16 60:17 67:5 68:2 73:3 75:5 75:21 76:13 76:18 77:15 77:21 78:17 83:13 85:25 86:4 87:19 88:11 90:2 92:14 93:16 96:17 96:21 97:7 99:1 99:3 100:5 100:6 103:3 103:8 106:6 109:3 115:12 115:15 116:5 116:9 116:12 117:25 118:14 123:7 124:10 124:20 125:23 127:17 128:7 128:23 129:5 130:20 130:22 137:7 138:6 138:7 143:16 143:17 151:12 151:13 152:18 159:9 162:2 169:24 172:22 174:4 177:19 182:22 185:8 193:20

**rights**(3) 27:7 36:5 45:2
**rigorous**(1) 120:9
**ring**(1) 48:21
**rise**(4) 41:22 99:8 129:4 170:1
**road**(1) 2:15
**robles**(2) 56:7 120:6
**rock**(10) 48:20 53:12 54:16 81:24 90:11 113:7 150:23 151:1 167:7 168:14

**role**(1) 41:17
**roughly**(1) 102:2
**round**(1) 114:10
**row**(1) 68:8
**rule**(19) 8:8 8:12 9:15 11:24 12:1 30:6 30:6 30:8 30:19 40:14 45:11 45:13 45:16 46:2 46:21 77:19 77:21 78:1 86:10

**ruled**(3) 86:19 86:23 87:4
**rules**(2) 96:4 104:3
**ruling**(4) 14:4 25:20 44:2 78:13
**run**(5) 35:2 60:3 69:4 69:10 82:24
**rural**(1) 113:5

**said**(35) 10:15 27:18 28:23 30:20 35:16 38:22 40:3 54:9 58:1 62:13 63:17 71:12 71:16 76:7 84:13 84:19 84:20 84:24 85:17 88:3 88:3 97:21 104:13 109:13 139:17 141:17 143:9 143:14 145:17 150:18 161:15 176:6 182:11 182:12 184:12

**sale**(13) 30:15 30:21 32:3 38:2 38:18 39:18 101:10 177:6 177:7 178:17 179:24 180:17 180:22

**same**(23) 20:6 20:24 23:19 37:11 43:6 56:9 57:5 59:17 60:3 85:15 108:1 141:6 141:16 142:2 142:8 151:17 160:10 168:21 179:4 180:9 187:3 187:4 189:20

**san**(5) 134:5 134:8 134:10 134:17 169:4
**sanction**(3) 46:22 46:23 47:1
**sanctions**(1) 45:15
**sandwiches**(1) 48:21
**sarah**(1) 56:17
**sat**(2) 136:7 188:18
**satisfaction**(1) 192:7
**satisfactory**(3) 176:10 176:16 176:18
**save**(1) 109:3
**savings**(2) 147:6 183:23
**saw**(6) 15:21 54:17 54:20 91:13 102:20 136:1

**say**(33) 8:16 9:22 10:15 16:21 17:19 22:7 38:10 60:9 60:24 76:24 77:2 87:17 87:17 87:18 87:18 87:19 87:20 93:9 94:20 96:18 122:10 122:10 126:19 130:23 149:16 149:17 150:22 150:24 155:17 164:10 174:1 179:14 180:16

**saying**(13) 9:11 9:19 12:18 16:14 27:18 33:17 69:3 69:6 80:22 85:24 96:15 96:22 98:16

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **says**(45) 16:6 24:14 25:10 25:10 26:7 32:1 33:13 37:25 59:10 70:3 70:17 86:2 88:9 122:10 122:11 124:25 131:16 137:8 137:11 137:23 146:1 147:2 147:2 147:3 147:6 149:13 152:12 152:14 153:18 153:21 159:12 159:12 160:10 174:4 175:13 176:2 176:4 176:6 176:9 177:18 177:22 185:9 187:6 190:2 191:5 | | **seller**(4) 166:4 166:18 166:19 166:20<br>**selling**(5) 24:17 24:17 39:12 39:12 168:16<br>**send**(1) 112:8<br>**sending**(1) 91:21<br>**sent**(14) 98:16 112:6 113:1 113:8 131:6 143:20 144:1 171:2 176:22 177:25 179:15 179:19 180:20 182:4 | | **she's**(18) 9:19 24:11 24:12 24:15 58:16 65:10 68:13 74:1 75:16 77:13 78:25 86:7 86:11 87:16 87:20 93:11 123:2 160:24<br><br>**shocked**(3) 71:12 91:20 140:24<br>**shop**(1) 135:15<br>**short**(10) 13:14 28:10 41:20 54:6 72:2 90:1 128:24 164:13 164:17 169:23 | | **someone**(11) 7:8 10:9 84:20 84:23 85:22 92:23 101:20 104:15 112:10 133:11 189:23<br><br>**something**(20) 8:11 8:11 16:11 18:17 18:18 24:17 57:9 66:25 72:15 75:8 76:24 77:2 86:15 92:13 94:19 94:24 113:12 178:4 178:5 179:4 |
| **scale**(1) 145:22<br>**scared**(1) 148:20<br>**scenes**(1) 49:22<br>**schedule**(2) 191:17 191:21<br>**schedules**(14) 5:25 8:6 33:6 37:5 45:21 45:25 46:5 46:9 46:9 111:4 111:12 185:20 185:23 191:12 | | **sentence**(2) 70:16 101:7<br>**separate**(2) 33:4 36:16<br>**september**(10) 31:22 67:2 83:20 151:5 166:23 169:10 169:12 172:9 172:13 192:2<br>**series**(1) 158:4<br>**served**(1) 33:20 | | **shortly**(2) 179:15 179:17<br>**should**(20) 13:23 22:7 23:18 27:1 27:18 37:4 38:1 39:20 40:21 49:5 54:3 97:8 111:8 117:19 130:23 143:17 147:8 150:14 151:22 180:16 | | **something's**(1) 174:4<br>**sometime**(2) 133:7 134:6<br>**somewhere**(4) 71:24 89:11 158:2 160:18<br>**sontchi**(1) 1:18<br>**soon**(1) 165:19 |
| **scheduling**(1) 12:15<br>**schnitzer**(4) 2:5 41:5 41:6 41:17<br>**school**(1) 81:10<br>**schuylkill**(1) 1:40<br>**score**(38) 60:2 60:12 60:20 69:4 69:10 69:12 70:7 90:10 90:10 90:12 90:16 90:18 90:19 91:12 91:15 91:15 91:22 91:24 92:2 92:13 92:16 110:24 121:14 121:21 123:14 124:6 125:15 125:16 126:21 126:23 126:2 127:3 127:13 136:12 139:24 140:16 141:7 161:17 | | **service**(1) 1:39  1:46<br>**serviced**(1) 49:1<br>**servicer**(2) 34:8 125:21<br>**services**(6) 1:39 21:3 21:15 168:17 190:6 190:10<br><br>**servicing**(7) 33:7 170:9 170:16 173:24 177:15 179:20 185:5<br>**servicing's**(3) 170:18 174:15 175:2<br>**set**(10) 6:9 13:16 16:2 30:9 30:21 68:19 70:24 154:17 154:25 155:12 | | **shouldn't**(4) 8:14 40:20 147:9 151:21<br>**shovels**(1) 119:14<br>**show**(7) 18:1 49:6 66:7 85:13 85:19 124:18 127:7<br><br>**showed**(3) 85:21 85:22 135:22<br>**showing**(3) 21:10 81:8 81:9<br>**shows**(3) 33:25 91:14 91:16<br>**side**(3) 137:7 149:12 159:9<br>**side's**(1) 44:19<br>**sided**(1) 106:4<br>**sienna**(1) 91:19 | | **sorry**(82) 12:8 26:24 26:25 30:16 39:3 39:5 47:16 48:9 51:14 51:17 53:12 54:9 55:9 55:12 59:23 60:4 62:21 65:16 65:24 67:24 69:20 70:17 72:18 76:3 76:3 76:14 81:17 82:21 88:16 103:10 103:25 114:1 120:20 121:2 121:7 121:24 122:4 125:3 125:13 130:10 131:1 134:25 137:10 138:14 138:20 138:23 143:10 143:15 145:3 148:1 148:20 149:9 150:15 150:19 152:15 152:23 152:25 158:22 165:6 165:13 170:14 171:7 171:8 171:24 172:12 174:12 176:17 177:7 177:9 177:18 177:18 179:23 180:16 182:11 182:15 185:19 185:21 185:24 187:19 191:15 191:8 193:8 |
| **scrutinize**(1) 114:24<br>**sd1**(3) 27:10 28:2 40:4<br>**sean**(3) 1:26 4:4 32:14<br>**season**(2) 169:3 172:18<br>**seasoning**(3) 84:20 85:1 85:5<br>**seated**(7) 4:2 6:5 41:23 47:18 99:9 129:5 170:2 | | **sets**(2) 17:25 99:21<br>**setting**(1) 32:3<br>**settle**(1) 112:25<br>**settled**(1) 36:23<br>**settlement**(18) 82:15 82:20 112:20 113:3 113:11 113:13 117:6 117:8 136:16 136:17 137:16 159:20 160:7 163:11 191:24 192:2 192:6 192:18 | | **sign**(22) 59:2 68:22 80:20 80:24 81:12 90:25 91:3 135:23 135:25 139:11 144:14 144:16 144:18 145:5 145:6 145:18 145:20 145:20 145:20 145:20 145:20 163:25<br>**signature**(8) 136:1 136:22 137:11 137:12 138:9 146:4 146:10 158:19 | | **sort**(4) 35:10 79:15 80:7 179:12<br>**sought**(6) 6:17 11:1 11:6 23:3 43:3 46:15<br>**sound**(4) 1:45 138:6 151:13 194:4<br>**sounds**(1) 138:7<br>**source**(3) 73:22 151:21 163:21<br>**sources**(1) 147:3<br>**south**(1) 164:21<br>**southern**(1) 30:13 |
| **second**(41) 7:1 13:3 17:10 17:13 36:15 40:5 40:23 45:7 75:19 79:17 82:8 82:15 82:13 82:14 82:17 84:6 84:8 88:23 90:8 91:15 91:16 100:8 101:7 108:23 114:8 130:18 130:20 130:22 131:14 136:20 137:10 137:11 146:25 148:12 153:18 171:7 172:1 175:15 182:6 182:15 | | **setup**(1) 161:16<br>**seven**(4) 30:2 34:12 151:9 151:12<br>**seventh**(1) 121:7<br>**several**(10) 21:13 23:1 40:3 47:22 50:25 52:4 52:24 92:21 140:9 182:13<br><br>**severely**(2) 168:10 169:19<br>**seward**(1) 1:30<br>**shaded**(1) 147:1 | | **signed**(31) 5:11 15:6 15:8 15:14 20:24 20:25 33:11 56:4 59:2 59:4 59:5 68:21 69:2 80:12 132:10 114:7 114:25 115:7 115:11 136:3 136:4 137:3 137:4 142:2 145:1 145:15 145:17 146:12 146:14 160:2 161:2<br>**significance**(1) 25:3<br>**significant**(4) 15:1 15:2 36:20 37:2<br>**signing**(6) 114:22 115:2 144:24 145:11 186:24 190:18 | | **speak**(10) 12:12 12:13 19:7 66:10 66:23 93:13 94:2 163:5 178:6 193:16<br><br>**speaking**(2) 51:1 97:24<br>**speaks**(1) 12:21<br>**special**(1) 50:6<br>**specialists**(2) 14:19 18:2<br>**specialized**(1) 14:9<br>**specific**(9) 15:16 21:23 25:20 33:4 37:21 45:14 60:25 74:10 85:7 |
| **section**(20) 13:6 13:18 20:6 20:8 24:13 31:1 31:3 70:15 82:3 112:5 131:15 137:6 137:12 147:1 147:3 147:20 148:5 151:17 159:9 160:10 | | **shall**(7) 20:2 20:2 20:3 20:9 20:12 20:15 177:9 | | **signs**(1) 53:21<br>**similar**(1) 36:11<br>**simply**(5) 7:6 10:7 25:10 43:10 180:12<br>**simultaneously**(1) 129:25<br>**since**(8) 13:22 37:5 51:8 56:14 75:22 79:20 105:2 193:23 | | **specifically**(17) 13:13 13:21 14:11 14:14 20:11 20:25 21:7 23:9 32:21 32:23 32:25 33:3 33:5 33:13 36:2 40:14 66:18 |
| **sections**(1) 147:1<br>**secure**(4) 55:21 61:6 89:10 172:3<br>**securing**(2) 59:16 67:10<br>**see**(63) 14:6 17:19 22:20 32:2 45:23 47:21 48:1 48:6 48:8 52:5 53:20 54:19 59:2 59:6 59:8 70:2 70:15 70:25 71:2 77:8 82:4 82:6 82:20 82:25 82:25 85:24 91:23 99:11 106:8 106:18 106:20 106:23 112:12 113:7 114:6 114:8 114:12 114:13 121:8 121:11 121:14 121:17 121:24 124:20 125:25 125:23 127:25 131:17 135:18 149:12 154:8 154:10 159:3 159:10 159:13 160:11 176:6 182:7 182:11 185:5 185:11 186:7 193:20 | | **sharon**(4) 1:27 8:18 109:13 129:9<br>**she**(175) 9:6 9:21 9:22 10:2 10:2 10:3 12:11 12:12 12:14 13:12 13:20 20:23 20:24 24:6 29:21 32:18 32:19 32:20 32:23 32:25 32:25 33:8 33:9 36:25 37:3 37:4 37:5 37:6 37:8 50:17 50:22 58:8 58:15 58:17 58:17 60:1 60:3 60:9 60:14 61:6 61:8 61:10 61:11 61:21 62:22 62:4 62:6 62:7 62:9 62:17 62:18 63:2 63:17 63:17 65:10 66:10 66:13 67:3 67:17 67:15 69:5 74:2 74:4 74:7 74:10 74:12 74:15 75:17 75:19 75:19 75:22 76:22 76:23 76:24 76:24 77:1 77:1 77:2 77:2 77:3 77:3 77:10 79:14 80:6 80:8 80:21 85:9 85:16 85:17 85:18 86:2 86:2 86:24 86:25 87:1 87:1 87:12 87:25 88:1 88:3 88:19 88:22 92:5 93:9 95:10 95:10 95:21 95:22 96:3 96:11 96:15 100:17 100:19 100:20 114:3 114:4 114:16 117:19 117:20 117:21 122:17 122:19 126:6 126:15 127:1 133:22 135:14 135:17 135:18 135:19 139:17 139:18 139:22 140:1 140:3 140:4 140:10 140:10 140:15 140:19 140:25 141:1 141:6 141:12 141:15 141:21 141:22 142:4 142:8 142:11 142:21 142:24 142:25 144:8 144:17 145:5 145:9 145:15 145:17 145:19 160:18 160:24 161:2 161:16 161:2 182:24 176:25 | | **singh**(7) 147:15 147:16 151:18 153:20 153:21 154:10 154:10<br><br>**sir**(5) 48:10 100:3 126:17 130:13 138:15<br>**sit**(6) 7:22 40:16 58:9 114:24 173:25<br>**sitting**(3) 109:15 113:10 118:2<br>**situation**(5) 19:14 35:2 35:5 108:24 108:24<br>**six**(5) 28:11 28:14 34:12 150:1 176:11<br>**size**(1) 22:4<br>**skills**(1) 120:5<br>**skinny**(1) 186:6<br>**slightly**(1) 87:7<br>**small**(2) 89:12 159:2<br>**sold**(4) 34:11 36:6 38:20 163:14<br>**sole**(2) 20:3 169:15<br>**solely**(2) 21:6 59:14<br>**solicit**(2) 19:25 24:14<br>**solid**(1) 136:13<br>**solution**(1) 79:13<br>**some**(26) 4:18 15:23 20:7 21:10 30:11 31:3 47:11 53:8 57:20 79:15 80:7 80:10 81:7 89:11 97:12 99:19 112:2 116:8 18:25 119:2 126:22 133:6 179:11 186:17 188:4 191:20 | | **specifics**(1) 18:15<br>**speculating**(1) 143:2<br>**speculation**(2) 142:15 156:25<br>**speculative**(1) 7:21<br>**spend**(2) 13:4 56:8<br>**spent**(2) 47:11 118:19<br>**spoke**(3) 71:15 97:14 141:19<br>**spotless**(1) 69:16<br>**spread**(2) 21:8 21:11<br>**stabilized**(2) 108:24 108:25<br>**stack**(2) 114:24 145:6<br>**stacks**(1) 145:4<br>**staff**(2) 49:9 49:10<br>**stalled**(4) 162:11 162:13 169:12 172:18<br>**stalling**(1) 32:18<br>**stam**(1) 6:4<br>**stamatio**(1) 2:13 |
| **seeing**(3) 38:7 59:4 120:1<br>**seek**(7) 28:17 30:21 71:24 90:5 92:17 95:4 101:3 | | | | **somebody**(3) 89:20 178:14 183:18<br>**somehow**(3) 72:16 183:20 191:20 | | |
| **seeking**(13) 6:16 6:17 8:25 9:14 27:6 27:8 30:24 32:10 35:9 44:25 92:3 101:18 179:22<br>**seeks**(1) 30:9<br>**seemed**(1) 61:22<br>**seen**(8) 21:8 33:8 65:14 113:15 123:9 136:17 136:19 136:25 | | | | | | |
| **self**(2) 62:10 62:24<br>**self-employed**(2) 50:10 57:8<br>**sell**(1) 29:2 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **stamoulis**(159) 2:11 2:13 6:4 6:5 6:8 8:23 9:11 10:5 10:15 10:18 11:16 13:2 13:19 18:8 23:23 25:1 25:2 26:8 26:21 44:1 44:4 44:11 44:14 44:18 44:20 44:24 45:7 45:20 46:6 47:10 47:14 47:20 48:4 48:12 51:6 51:13 54:2 54:14 55:17 55:20 60:18 60:23 61:5 62:12 63:1 63:22 64:23 65:4 65:21 66:9 66:21 67:7 67:16 67:25 68:22 69:18 70:14 72:6 73:1 73:4 73:8 73:12 74:3 74:6 74:10 74:15 74:18 74:22 75:1 75:3 76:20 77:22 78:16 79:7 79:22 79:25 80:2 81:18 81:20 85:14 85:20 85:22 86:3 86:13 88:5 88:14 88:17 88:25 89:3 89:21 90:1 90:4 90:12 90:17 90:23 92:9 93:16 93:19 95:2 95:24 96:10 96:19 96:22 96:25 97:7 97:11 97:18 99:6 99:13 100:4 100:6 100:10 102:13 102:17 103:6 105:5 105:15 105:18 105:21 105:23 106:2 106:7 107:20 109:16 117:17 118:1 120:22 120:2 121:3 122:13 123:5 123:8 123:11 123:19 123:21 124:1 124:8 124:14 124:16 124:19 125:6 125:9 125:11 125:22 125:24 126:11 126:13 126:18 127:6 127:9 128:3 128:9 128:14 128:18 128:21 142:3 142:14 156:2 | | **still**(39) 5:15 25:12 26:6 26:12 31:13 37:7 43:12 44:22 45:2 52:20 53:16 98:10 99:1 100:18 101:12 105:9 109:15 109:21 112:1 118:20 124:23 126:2 127:5 136:10 136:15 140:9 158:22 163:1 163:15 168:18 175:21 178:10 178:11 178:20 178:21 179:8 179:12 180:8 193:23 | | **surrogate**(1) 116:24 | | **tender**(9) 30:5 30:6 30:8 30:19 31:25 32:5 32:8 40:14 178:22 |
| | | | | **survival**(1) 119:23 | | |
| | | | | **sustain**(2) 65:18 127:18 | | **tendered**(1) 32:7 |
| | | | | **sustained**(6) 60:17 64:21 72:5 72:18 98:23 157:1 | | **tendering**(1) 32:2 |
| | | | | | | **term**(1) 82:9 |
| | | | | **switched**(1) 84:1 | | **terms**(24) 17:23 20:21 21:20 22:6 24:12 24:19 25:5 27:16 35:23 36:11 61:9 67:19 72:8 82:6 82:6 99:22 100:12 107:2 107:6 131:22 132:15 152:13 153:6 176:13 |
| | | **stipulate**(4) 24:3 24:20 45:20 152:16 | | **sworn**(1) 47:17 | | |
| | | **stipulated**(5) 97:23 97:23 98:1 98:2 98:6 | | **system**(3) 29:8 29:15 29:19 | | |
| | | **stipulating**(2) 25:10 25:11 | | **tab**(5) 69:25 81:16 81:17 81:18 100:7 101:6 115:1 | | **terry**(5) 102:21 103:2 104:7 104:8 105:2 |
| | | **stipulation**(4) 24:25 26:6 46:8 192:21 | | | | **testified**(57) 29:13 32:20 32:23 32:25 52:16 63:2 85:9 86:25 89:4 89:6 92:12 110:19 129:18 129:22 132:22 133:6 133:24 134:8 135:21 135:23 143:20 148:4 148:22 148:24 149:12 151:20 152:2 154:15 154:24 155:12 155:15 159:15 160:3 162:9 163:7 165:6 165:20 166:22 167:6 167:12 167:16 168:3 168:7 168:10 168:13 169:4 170:11 171:24 173:3 173:6 181:3 183:4 186:19 188:4 189:15 190:17 191:10 |
| | | **stolen**(2) 167:8 168:3 | | **table**(3) 6:6 79:18 95:15 | | |
| | | **stop**(7) 55:14 56:23 93:16 96:12 181:4 190:25 193:3 | | **tack**(2) 182:11 182:12 | | |
| | | | | **take**(17) 16:6 16:16 34:23 41:19 44:17 53:13 54:3 54:6 58:12 79:17 95:11 98:23 104:21 144:25 169:23 171:18 | | |
| | | **storage**(5) 119:1 119:3 119:4 119:8 119:9 | | | | |
| | | **store**(1) 48:21 | | **taken**(5) 43:19 52:4 93:3 127:15 158:13 | | |
| | | **story**(2) 39:15 94:22 | | **takes**(1) 47:7 | | |
| | | **strauss**(5) 108:12 108:13 108:21 109:6 109:13 | | **taking**(2) 45:9 49:21 | | **testifies**(1) 78:6 |
| | | | | **talk**(11) 7:12 12:14 17:17 31:13 79:9 84:21 87:23 99:1 112:11 150:13 156:3 | | **testify**(13) 10:9 11:18 11:21 14:3 18:11 18:20 57:19 72:21 93:11 114:18 145:7 148:11 165:14 |
| | | **street**(4) 1:10 1:33 1:40 53:7 | | | | |
| | | **stressing**(1) 10:19 | | | | |
| | | **stricken**(2) 102:19 157:3 | | **talked**(11) 56:17 58:18 68:4 84:22 87:16 89:15 109:10 112:18 135:19 139:9 139:12 | | |
| **stand**(4) 8:13 45:10 47:15 99:10 | | **strike**(4) 64:19 102:18 167:7 190:22 | | | | **testifying**(1) 65:10 |
| **standard**(1) 57:8 | | **strikingly**(1) 36:11 | | | | **testimony**(30) 11:15 12:4 12:11 12:14 13:25 47:22 63:17 67:21 74:3 74:7 74:11 77:4 78:8 85:4 91:25 92:5 92:14 97:25 99:1 99:24 132:14 141:3 142:5 142:17 147:23 150:9 151:14 158:7 179:25 193:22 |
| **standards**(3) 7:12 7:15 17:5 | | **stringent**(1) 53:2 | | **talking**(17) 31:23 48:1 56:13 56:14 75:16 79:19 125:8 136:10 140:1 149:8 149:19 149:20 152:15 152:16 153:15 153:24 176:25 | | |
| **standing**(1) 37:19 | | **strong**(1) 173:15 | | | | |
| **stargatt**(4) 1:24 1:25 1:22 129:10 | | **stubbornness**(1) 109:2 | | | | |
| **start**(12) 5:18 58:7 84:15 112:12 120:17 124:20 135:6 150:14 150:15 152:11 158:1 169:10 | | **stuff**(1) 119:10 | | **talks**(1) 59:7 | | |
| | | **subject**(6) 30:18 39:21 49:20 49:21 78:7 87:1 | | **tapped**(1) 158:15 | | |
| | | | | **tapping**(1) 88:2 | | |
| | | | | **taught**(2) 14:12 14:19 | | **testing**(1) 123:2 |
| **started**(11) 55:5 56:18 60:21 60:24 61:1 89:9 92:3 93:4 133:25 134:5 168:14 | | **submit**(1) 143:11 | | **tax**(39) 5:22 6:14 8:3 8:6 9:12 9:13 9:15 9:18 9:19 9:22 9:23 26:1 45:10 45:22 45:23 46:1 46:4 46:9 46:10 46:10 46:20 50:13 50:14 50:15 50:16 50:22 50:25 51:10 57:6 59:19 62:14 62:15 114:19 115:9 115:17 149:15 176:16 189:17 190:1 | | |
| | | **submitted**(7) 5:25 21:12 113:18 144:11 146:18 156:22 157:19 | | | | **than**(9) 8:13 11:18 46:14 72:10 84:3 122:18 139:18 145:16 181:13 |
| **starting**(2) 120:23 152:24 | | | | | | |
| **starts**(2) 82:3 153:5 | | **submitting**(4) 144:13 145:2 186:23 190:18 | | | | **thank**(37) 4:25 5:9 5:12 6:3 10:14 10:24 11:13 12:22 18:6 18:21 18:23 23:22 26:10 32:12 41:23 44:24 45:17 47:3 47:18 53:15 67:7 67:16 77:22 78:14 78:16 81:19 99:4 99:6 100:6 105:22 106:5 128:9 128:21 128:23 129:2 156:6 170:3 |
| **state**(16) 14:4 14:9 15:5 15:7 16:23 18:12 20:8 27:12 28:22 48:14 48:23 53:1 74:12 89:11 108:23 140:15 | | **subpoena**(2) 77:13 87:2 | | **taxes**(2) 50:18 50:20 | | |
| | | **subsequent**(3) 13:10 28:6 28:7 | | **taylor**(4) 1:25 8:19 12:25 129:10 | | |
| | | **substance**(7) 12:3 12:14 87:3 87:9 98:25 99:3 193:22 | | **teaches**(3) 14:13 14:13 18:2 | | |
| **stated**(13) 9:20 27:16 81:7 92:5 122:7 129:11 139:19 140:24 148:8 165:7 171:17 174:3 188:1 | | | | **teau**(76) 12:2 12:6 12:19 12:22 13:7 13:9 19:1 19:3 19:7 20:25 21:25 24:21 25:6 58:14 58:20 58:24 59:15 59:24 60:7 60:19 61:1 61:6 62:1 63:6 64:12 67:17 68:11 69:10 70:12 72:21 73:9 73:24 76:18 77:8 77:17 78:20 80:4 80:4 85:8 85:8 87:12 87:15 87:16 87:18 89:6 89:7 113:25 114:1 114:18 115:6 115:19 129:13 129:15 133:14 133:16 133:18 135:13 135:14 135:23 136:6 136:7 136:8 137:15 138:1 138:2 139:4 140:8 142:15 143:2 143:7 143:20 144:8 147:20 148:5 156:9 160:16 | | |
| | | **substantive**(2) 36:5 43:23 | | | | |
| | | **successful**(1) 108:3 | | | | |
| | | **successor**(2) 34:24 42:15 | | | | |
| **statement**(36) 10:5 63:3 74:8 78:8 78:10 79:1 81:9 81:23 84:2 84:3 86:8 86:18 87:5 87:6 87:11 87:21 88:18 96:6 96:8 96:10 97:5 97:5 97:9 97:9 97:13 97:16 97:18 97:20 109:4 156:1 156:3 156:8 156:12 156:17 156:23 186:24 | | **successors**(6) 27:13 34:2 34:3 34:6 34:19 37:10 | | | | |
| | | **such**(1) 21:11 | | | | |
| | | **sudden**(2) 56:12 56:16 | | | | |
| | | **suffer**(1) 118:22 | | | | |
| | | **sufficiently**(1) 87:4 | | | | |
| **statements**(12) 8:3 8:4 13:12 13:13 57:7 57:10 59:18 62:14 62:16 77:17 129:12 190:13 | | **suggest**(3) 13:17 35:5 111:7 | | | | |
| | | **suggestion**(1) 37:16 | | | | |
| **states**(6) 1:1 1:19 82:15 139:7 154:12 156:12 | | **suite**(1) 2:15 | | **teau's**(8) 12:11 24:4 73:5 77:7 79:8 86:18 87:11 87:22 | | |
| | | **summary**(16) 4:12 4:23 5:14 5:17 25:19 26:18 27:1 39:21 41:1 41:13 41:24 43:9 43:25 44:7 44:10 44:16 | | | | |
| **stating**(5) 62:10 62:24 69:10 101:12 146:1 | | | | **technical**(7) 17:24 40:16 42:1 42:6 42:18 43:23 68:3 | | |
| **statue**(1) 18:3 | | | | | | |
| **status**(2) 45:1 45:5 | | **summer**(1) 124:8 | | | | |
| **statute**(1) 17:24 | | **supervised**(1) 190:5 | | **telephone**(8) 69:9 71:12 93:6 109:10 112:19 144:17 183:15 184:13 | | |
| **statutory**(2) 17:24 127:5 | | **supplement**(2) 22:18 126:5 | | | | |
| **stay**(48) 27:5 27:7 27:9 27:12 28:18 32:17 32:19 32:24 33:1 33:2 34:12 35:9 35:23 35:24 36:4 36:8 36:13 37:6 38:1 38:5 38:8 38:14 38:16 38:19 39:2 40:4 40:9 40:13 42:3 42:4 42:9 42:14 42:16 42:20 43:3 43:4 43:7 43:11 43:14 43:15 52:6 127:11 127:15 127:20 127:22 168:21 184:9 184:12 | | **supplemental**(1) 67:18 | | **television**(2) 49:6 49:13 | | |
| | | **supplemented**(2) 122:18 122:19 | | | | |
| | | **supplied**(3) 116:1 116:11 176:24 | | **tell**(22) 16:7 16:11 16:18 72:20 72:22 76:25 84:25 89:19 89:19 94:21 108:13 138:2 160:19 160:22 164:12 164:16 165:10 165:14 165:18 184:16 189:7 189:12 | | |
| | | **supplies**(1) 119:13 | | | | |
| | | **support**(6) 9:9 22:12 30:1 127:1 138:17 156:9 | | | | |
| | | **supposed**(12) 17:25 29:8 29:19 113:3 133:2 135:4 135:5 135:10 162:4 169:10 172:8 174:9 | | **telling**(4) 20:21 24:18 33:10 139:10 | | |
| **stayed**(1) 118:19 | | | | **tells**(2) 66:13 185:5 | | |
| **steady**(1) 169:20 | | **supposedly**(1) 94:19 | | **templeton**(1) 52:9 | | |
| **steal**(1) 167:25 | | **sure**(14) 5:20 16:8 34:22 35:11 41:13 53:11 59:5 81:25 84:2 84:2 122:13 136:10 193:19 | | **temporally**(1) 85:16 | | |
| **step**(4) 16:13 56:20 120:2 173:12 | | | | **ten**(2) 169:17 177:11 | | |
| **steps**(1) 18:1 | | | | | | |
| **sticks**(1) 181:18 | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| that(301) | 4:12 4:17 4:17 5:10 5:15 6:10 6:22 6:23 6:24 6:24 6:25 7:2 7:4 7:7 7:8 7:10 7:15 7:23 7:24 7:25 8:5 8:10 8:11 8:15 8:16 8:24 9:1 9:2 9:2 9:3 9:7 9:11 9:11 9:19 9:21 9:24 10:1 10:1 10:2 10:4 10:5 10:11 10:16 10:19 10:19 10:25 10:25 11:8 11:17 11:19 11:22 11:25 12:1 12:11 12:12 12:14 12:17 12:18 12:20 12:21 13:2 13:5 13:6 13:6 13:8 13:11 13:12 13:15 13:17 13:18 13:18 13:18 13:20 13:20 13:21 13:22 15:1 15:11 15:19 15:21 16:6 16:12 16:13 16:14 16:16 16:21 17:4 17:9 17:9 17:14 17:19 17:23 17:25 17:25 18:3 18:17 18:18 18:18 18:19 18:25 19:3 19:4 19:12 19:15 19:24 20:1 20:3 20:6 20:8 20:8 20:13 20:19 20:23 20:24 21:1 21:7 21:15 21:15 21:16 21:18 21:21 21:25 22:5 22:8 22:12 22:12 22:21 22:22 22:22 23:3 23:7 23:13 23:18 23:19 23:20 23:21 23:24 24:4 24:6 24:6 24:7 24:12 24:14 24:17 24:20 24:22 25:8 25:8 25:10 25:12 25:21 26:2 26:3 26:13 26:17 27:3 27:4 27:6 27:9 27:12 27:14 27:14 27:14 27:22 27:23 28:17 28:23 28:25 29:2 29:10 29:10 29:13 29:18 29:20 30:7 30:8 30:11 30:12 31:2 31:3 31:14 31:18 32:2 32:8 32:10 32:20 32:23 32:25 33:1 33:10 33:16 33:17 33:17 33:20 33:22 33:24 33:25 34:1 34:2 34:3 34:4 34:7 34:11 34:14 34:18 34:20 34:22 34:23 35:3 35:13 35:16 35:17 35:19 35:20 35:25 36:8 36:8 36:10 36:12 36:12 36:17 36:18 36:19 36:22 36:22 36:23 36:25 37:4 37:7 37:8 37:9 37:11 37:13 37:15 37:15 37:16 37:16 37:25 38:7 38:9 38:12 38:16 39:6 39:7 39:10 39:15 39:22 40:3 40:4 40:8 40:8 40:10 40:10 40:11 40:11 40:12 40:12 40:19 41:15 42:4 42:8 42:8 42:10 42:10 42:12 42:14 42:19 43:9 43:12 43:12 43:19 43:20 43:22 44:2 44:4 44:6 44:15 45:1 45:4 45:4 45:8 45:11 45:18 45:20 45:21 46:1 46:8 46:12 46:13 46:14 46:16 46:18 46:23 47:4 47:7 48:1 48:6 48:9 49:4 49:23 50:4 | that(301) | 50:8 50:24 51:3 51:8 51:16 52:1 52:3 52:8 52:12 52:16 52:17 52:20 52:24 53:2 53:4 53:4 53:5 53:8 53:10 53:18 54:18 54:20 54:23 56:1 56:7 56:11 56:13 56:16 57:3 57:5 57:10 57:11 57:13 57:13 57:20 57:21 57:22 58:1 58:4 58:15 58:16 58:23 59:2 59:17 59:20 60:1 60:2 60:3 60:4 60:7 60:10 60:14 61:10 61:13 61:15 61:23 62:2 62:10 62:17 62:18 62:18 62:19 62:24 63:2 63:3 63:4 63:5 63:17 63:25 64:2 64:7 64:19 64:23 65:5 65:8 65:23 66:3 66:8 66:9 66:12 66:16 66:25 67:2 67:3 67:3 67:8 67:9 68:5 68:14 69:4 69:10 69:11 69:11 69:13 69:15 69:15 70:2 70:6 70:15 70:16 70:17 70:18 70:19 70:25 71:2 71:6 71:7 71:19 71:25 71:25 72:1 72:2 72:8 72:15 72:15 73:9 73:14 74:4 74:7 74:8 74:10 74:12 74:13 75:5 75:17 76:3 76:23 77:5 77:5 77:8 77:18 77:19 77:19 77:23 78:9 78:13 78:17 79:9 79:10 79:11 79:13 79:14 79:18 80:8 80:8 80:10 80:11 80:13 80:13 80:22 81:2 81:7 81:9 82:3 82:4 82:9 82:15 82:20 82:24 82:25 83:2 83:3 83:13 83:21 84:9 84:16 84:21 84:25 85:5 85:5 85:9 85:11 85:17 86:24 87:2 87:10 87:21 88:1 88:19 89:4 89:5 89:6 90:4 91:4 92:24 95:12 95:14 95:15 95:19 95:20 95:21 95:22 95:22 95:25 96:3 96:4 96:4 96:5 96:11 96:11 96:15 96:16 96:18 97:4 97:12 97:18 97:20 97:24 97:24 98:2 98:2 98:4 98:6 98:8 98:15 99:15 99:17 99:21 99:22 99:23 99:25 100:12 100:18 101:12 101:22 102:8 103:7 103:7 103:8 103:11 103:17 103:19 103:22 104:1 104:20 104:24 105:1 105:8 105:10 106:8 106:12 106:14 106:14 106:18 106:23 106:25 107:1 107:12 107:22 108:10 108:1 108:11 108:14 108:17 108:21 108:24 109:2 109:3 109:18 110:20 110:23 111:3 111:7 111:16 111:22 112:6 112:10 112:13 112:15 112:23 112:24 113:1 113:1 113:3 113:7 113:9 113:11 113:15 113:18 113:20 | that(301) | 114:8 114:11 114:12 114:13 114:14 114:16 114:17 114:18 114:19 114:25 115:5 115:8 115:12 115:15 115:23 116:1 116:3 116:3 116:5 116:7 116:7 116:9 116:12 116:14 116:17 116:20 117:5 117:8 117:9 117:13 117:18 117:18 117:19 117:21 117:22 117:23 118:3 118:4 118:9 118:11 118:13 118:14 118:20 119:4 119:6 119:7 119:8 119:13 119:23 120:7 120:12 120:14 120:20 120:25 121:8 121:11 121:1 121:21 121:24 121:24 122:7 123:12 123:25 124:2 124:13 124:18 124:23 124:2 125:18 125:20 126:3 126:10 126:14 126:16 126:18 126:21 126:24 127:4 127:8 127:12 127:14 127:20 127:22 128:5 128:1 128:18 128:18 128:20 129:11 129:16 129:18 129:22 130:3 131:5 131:17 131:21 132:9 132:10 132:14 132:17 132:22 133:6 133:10 133:14 133:21 133:24 134:5 134:8 134:12 134:13 134:14 134:20 134:23 134:24 135:4 135:8 135:9 135:10 135:11 135:13 135:14 135:21 135:23 135:23 135:24 136:1 136:3 136:7 136:10 136:21 136:21 136:24 137:2 137:3 137:5 137:8 137:16 137:20 138:3 138:5 138:5 138:6 138:7 138:10 138:20 139:1 139:3 139:5 139:12 139:17 139:19 139:23 139:23 140:1 140:8 140:9 140:9 140:10 140:15 140:16 140:19 140:19 140:21 140:24 140:24 140:24 141:1 141:3 141:3 141:3 141:20 141:21 141:21 141:22 142:4 142:4 142:5 142:6 142:8 142:9 142:13 142:14 142:18 142:24 142:25 143:2 143:5 143:15 143:19 143:20 143:20 143:21 143:23 143:23 144:1 144:1 144:10 144:13 145:7 145:9 145:14 145:15 145:16 146:4 146:17 146:18 146:20 147:3 147:14 147:19 147:22 147:21 147:23 148:5 148:8 148:9 148:12 148:14 148:16 148:22 148:24 149:14 149:17 149:24 150:9 150:19 150:22 151:4 151:7 151:13 151:14 151:20 151:22 152:2 152:3 152:6 152:7 152:13 152:16 153:3 153:6 153:7 153:7 153:8 153:15 154:12 154:15 154:20 154:25 154:25 155:3 155:15 155:12 155:12 155:15 155:16 155:1 155:24 156:17 156:19 156:21 156:22 157:5 157:8 157:9 157:9 157:14 157:16 157:19 157:24 158:1 158:1 158:2 158:13 158:14 159:10 159:13 159:15 159:16 159:16 159:19 159:21 159:22 159:22 159:25 160:3 160:8 160:9 160:10 160:11 160:16 | that(266) | 160:17 161:15 161:21 161:22 161:23 161:23 162:5 162:9 162:9 162:10 162:13 162:17 162:20 163:1 163:3 163:4 163:7 163:11 163:12 163:17 163:21 164:2 164:5 164:5 164:9 164:11 164:12 164:13 164:13 164:18 164:19 164:21 165:6 165:7 165:7 165:8 165:9 165:10 165:11 165:11 165:11 165:13 165:14 165:15 165:18 165:20 165:21 165:23 165:23 166:3 166:4 166:6 166:6 166:7 166:11 166:14 166:22 166:25 166:25 167:3 167:6 167:6 167:7 167:7 167:12 167:14 167:16 167:17 167:20 168:1 168:3 168:3 168:5 168:7 168:10 168:11 168:13 168:14 168:16 168:16 168:18 168:23 168:24 169:1 169:4 169:7 169:8 169:13 169:16 170:8 170:11 170:12 170:14 170:18 170:24 171:2 171:3 171:6 171:7 171:10 171:11 171:17 171:19 171:22 172:1 172:3 172:5 172:8 172:8 172:11 172:13 172:13 172:17 172:17 172:18 172:23 172:24 173:6 173:7 173:9 173:10 173:14 173:14 173:15 173:16 173:18 173:23 174:1 174:9 174:15 174:18 174:22 174:22 175:3 175:4 175:5 175:8 175:11 175:21 175:22 176:7 176:11 176:17 176:19 176:21 176:23 177:9 177:10 177:11 177:15 177:20 177:22 177:25 178:4 178:5 178:6 178:7 178:8 178:11 178:12 178:14 178:18 178:18 178:18 178:21 178:22 179:2 179:2 179:4 179:6 179:8 179:9 179:16 179:19 179:20 179:25 180:4 180:4 180:7 180:7 180:17 180:17 180:20 180:23 181:1 181:4 181:11 181:15 181:17 181:18 181:19 181:24 182:1 182:7 182:10 182:21 182:24 183:2 183:4 183:5 183:11 183:12 183:16 183:16 183:22 183:23 183:25 183:25 184:16 184:17 184:25 185:5 185:5 185:11 185:14 185:25 186:2 186:3 186:9 186:19 186:20 186:24 187:3 187:4 187:10 187:13 187:21 187:22 188:4 188:5 188:7 188:11 188:11 188:22 189:1 189:3 189:4 189:5 189:6 189:15 189:18 189:20 189:20 190:8 190:12 190:17 190:18 190:18 190:19 190:20 191:12 192:2 192:3 192:5 192:7 192:8 192:8 192:10 192:15 192:18 192:22 192:25 193:20 194:3 |
| | | | | | | that's(115) | 5:10 6:15 6:22 8:2 8:9 8:11 8:16 8:25 10:7 14:15 14:15 14:16 14:25 15:14 16:3 16:8 16:14 16:18 17:13 17:16 19:8 19:25 21:9 23:17 24:18 25:7 25:25 26:1 27:10 35:19 38:3 38:10 38:23 39:18 39:20 40:19 40:20 40:21 40:23 40:24 47:13 48:2 48:7 48:8 48:22 49:17 51:3 52:8 54:8 55:13 60:11 63:19 65:21 69:1 70:12 72:19 73:3 74:22 75:24 76:4 78:5 78:12 86:3 97:7 98:1 98:7 100:19 106:6 112:1 122:9 122:11 122:25 122:25 123:24 127:17 128:17 130:19 131:21 137:4 137:21 139:7 139:7 139:10 139:10 139:20 140:3 147:16 148:23 149:15 149:16 149:16 151:10 152:2 160:15 161:1 162:6 164:3 164:19 171:14 173:17 174:21 174:24 175:6 178:2 179:10 179:10 180:8 180:10 181:18 185:8 186:6 187:15 187:18 188:11 192:13 |
| | | | | | | that's(4) | 113:13 115:10 118:6 118:7 |

# AMERICAN HOME MORTGAGE 11.22.10.EC.DOC

| Word | Page:Line |
|---|---|

**the**(301) 1:1 1:2 1:18 1:32 2:4 3:3 4:2 4:4 4:5 4:6 4:8 4:9 4:10 4:11 4:12 4:12 4:14 4:20 4:21 4:22 4:25 5:1 5:2 5:3 5:4 5:6 5:7 5:8 5:9 5:11 5:13 5:13 5:14 5:15 5:15 5:17 5:18 5:18 5:20 5:21 5:24 6:1 6:3 6:5 6:7 6:8 6:10 6:11 6:11 6:13 6:14 6:19 6:21 6:22 6:22 6:23 6:24 6:25 7:1 7:1 7:2 7:4 7:5 7:7 7:8 7:12 7:13 7:14 7:19 7:19 7:20 7:21 7:22 7:24 7:25 8:2 8:3 8:6 8:6 8:7 8:9 8:13 8:17 8:19 8:21 9:1 9:4 9:4 9:5 9:8 9:11 9:12 9:13 9:14 9:16 9:18 10:1 10:5 10:8 10:9 10:11 10:11 10:14 10:17 10:21 10:22 10:22 10:24 10:25 10:25 11:1 11:2 11:9 11:9 11:11 11:12 11:14 11:14 11:15 11:16 11:19 11:24 11:25 12:3 12:6 12:7 12:9 12:14 12:16 12:18 12:20 12:21 12:23 13:1 13:3 13:7 13:15 13:21 14:3 14:3 14:4 14:4 14:8 14:9 14:9 14:12 14:15 14:15 14:20 14:22 14:23 14:25 15:3 15:6 15:7 15:10 15:12 15:15 15:19 15:21 15:21 15:22 15:22 15:24 16:1 16:3 16:5 16:7 16:7 16:11 16:14 16:16 16:17 16:18 16:21 16:22 16:22 16:23 16:25 17:1 17:2 17:4 17:6 17:7 17:9 17:10 17:12 17:13 17:13 17:14 17:17 17:22 17:22 17:23 18:4 18:6 18:9 18:9 18:10 18:11 18:12 18:13 18:14 18:15 18:16 18:16 18:19 18:22 18:23 18:24 18:24 18:25 19:1 19:1 19:2 19:3 19:4 19:5 19:7 19:7 19:8 19:12 19:15 19:15 19:17 19:18 19:18 19:19 19:20 20: 20:3 20:3 20:8 20:8 20:10 20:11 20:12 20:13 20:14 20:16 20:16 20:18 20:21 20:22 20:24 21:2 21:5 21:5 21:6 21:6 21:7 21:10 21:10 21:11 21:14 21:15 21:20 21:20 21:20 21:21 21:24 21:24 22: 22:3 22:6 22:6 22:9 22:9 22:10 22:12 22:19 22:21 22:21 22:24 22:24 22:25 22:25 23:2 23:2 23:3 23:4 23:4 23:5 23:6 23:6 23:6 23:7 23:7 23:8 23:9 23:10 23:11 23:11 23:13 23:14 23:14 23:16

**the**(301) 23:18 23:19 23:20 23:21 23:22 24:2 24:2 24:5 24:6 24:7 24:8 24:8 24:9 24:10 24:12 24:14 24:18 24:19 24:19 24:21 24:21 24:23 24:24 25:1 25:2 25:3 25:4 25:4 25:5 25:6 25:8 25:9 25:13 25:14 25:15 25:16 25:20 25:20 25:21 25:25 26:1 26:1 26:3 26:4 26:6 26:9 26:11 26:11 26:12 26:12 26:13 26:15 26:18 26:19 26:20 26:24 27:4 27:5 27:6 27:6 27:7 27:8 27:9 27:10 27:11 27:11 27:12 27:15 27:16 27:18 27:23 27:24 27:24 27:24 28:1 28:1 28:3 28:6 28:9 28:11 28:13 28:16 28:17 28:18 28:20 28:22 28:23 28:24 28:24 28:25 28:25 29: 29:4 29:5 29:5 29:6 29:6 29:7 29:10 29:12 29:11 29:12 29:14 29:15 29:16 29:18 29:20 29:21 29:24 29:25 29:25 30: 30:3 30:2 30:4 30:4 30:5 30:6 30:7 30:8 30:13 30:14 30:15 30:18 30:18 30:19 30:19 30:20 30:20 30:21 30:22 30:24 30:25 31:1 31:5 31:8 31:9 31:10 31:13 31:16 31:19 31:23 31:23 31:25 31:25 32:2 32:1 32:2 32:3 32:4 32:4 32:5 32:6 32:8 32:12 32:12 32:13 32:14 32:15 32:18 32:19 32:19 32:21 33:1 33:1 33:3 33:4 33:4 33:6 33:6 33:8 33:8 33:10 33:10 33:12 33:12 33:13 33:13 33:15 33:19 33:21 34:4 34:9 34:1 34:2 34:3 34:6 34:7 34:7 34:8 34:9 34:9 34:10 34:11 34:12 34:13 34:21 34:21 34:22 34:23 34:24 34:24 34:25 34:25 35:2 35:7 35:9 35:10 35:15 35:10 35:13 35:17 36:1 36:2 36:3 36:4 36:4 36:6 36:8 36:10 36:11 36:24 36:25 37:1 37:5 37:6 37:9 37:9 37:11 37:12 37:14 37:14 37:15 37:20 37:21 37:23 37:25 38:1 38:1 38:2 38:4 38:5 38:5 38:5 38:6 38:7 38:8 38:10 38:12 38:14 38:16 38:16 38:18 38:18 38:18 38:19 38:20 38:20 38:24 39:2 39:5 39:6 39:7 39:8 39:8 39:10 39:11 39:11 39:12 39:12 39:1 39:14 39:16 39:17 39:17 39:18 39:20 39:22 39:22 39:24 40:1 40:4 40:8 40:9 40:9 40:10 40:12 40:13 40:14 40:15 40:17 40:19 41:2 41:2

**the**(301) 41:2 41:2 41:4 41:6 41:8 41:9 41:9 41:10 41:11 41:11 41:12 41:12 41:15 41:16 41:19 41:22 41:23 41:24 41:24 42:3 42:3 42:5 42:6 42:7 42:9 42:10 42:11 42:11 42:12 42:13 42:13 42:14 42:20 42:25 43:2 43:2 43:3 43:3 43:6 43:8 43:9 43:10 43:13 43:14 43:18 43:18 43:19 43:20 43:21 43:22 43:25 44:3 44:7 44:12 44:12 44:15 44:16 44:19 44:19 44:22 44:25 45:1 45:2 45:3 45:3 45:6 45:7 45:9 45:10 45:12 45:13 45:14 45:15 45:17 45:19 45:20 45:20 45:21 45:22 45:23 45:25 45:25 46:1 46:3 46:4 46:4 46:9 46:9 46:9 46:10 46:18 46:19 46:19 46:20 46:20 46:23 46:24 47:5 47:7 47:11 47:11 47:12 47:13 47:14 47:15 47:25 47:25 48:2 48:3 48:5 48:13 48:20 48:23 49:5 49:6 49:9 49:9 49:12 49:20 49:20 49:21 49:21 49:24 50:1 50:6 50:11 50:17 51:3 51:5 51:7 51:7 51:8 51:9 51:9 51:11 51:14 52:3 52:5 52:7 52:9 52:10 52:13 52:16 52:19 52:22 52:22 53:1 53:6 53:6 53:7 53:11 53:11 53:13 53:19 53:19 53:21 53:22 53:24 54:3 54:6 54:10 54:12 54:17 54:19 54:20 54:22 54:25 55:2 55:23 55:9 55:13 55:16 55:19 55:21 55:22 55:23 56:1 56:1 56:2 56:3 56:4 56:6 56:8 56:10 56:10 56:11 56:16 56:18 56:20 57:7 57:13 57:17 57:24 58:1 58:2 58:2 58:5 58:7 58:11 58:15 58:16 58:17 58:18 58:19 58:21 58:22 58:23 59:1 59:6 59:7 59:10 59:14 59:17 60:2 60:3 60:8 60:9 60:13 60:17 60:24 61:3 61:9 61:9 61:13 62:6 62:8 62:16 62:18 62:21 62:25 63:7 63:14 63:19 63:21 64:4 64:7 64:14 64:15 64:21 64:24 64:24 65:2 65:6 65:7 65:9 65:12 65:12 65:17 65:18 65:19 65:22 66:2 66:2 66:3 66:5 66:6 66:7 66:9 66:10 66:11 66:11 66:13 66:15 66:16 66:17 66:20 66:22 66:24 67:3 67:5 67:9 67:10 67:14 67:21 67:22 67:22 68:1 68:2 68:2 68:3 68:3 68:5 68:8 68:11

**the**(301) 68:13 68:13 68:14 68:17 68:17 68:21 68:22 68:23 68:24 68:25 69:7 69:7 70:2 70:2 70:11 70:11 70:15 70:15 70:16 70:16 70:17 70:17 70:24 70:24 71:1 71:5 71:12 71:16 71:25 72:5 72:6 72:7 72:8 72:9 72:13 72:18 72:20 72:21 72:25 73:3 73:4 73:9 73:9 73:15 73:17 73:20 73:21 73:22 73:22 73:24 73:24 74:1 74:1 74:2 74:5 74:9 74:13 74:13 74:15 74:17 74:20 74:20 74:21 74:21 74:24 74:25 75:2 75:5 75:9 75:13 75:15 75:16 75:18 75:18 75:21 75:24 76:2 76:4 76:4 76:6 76:9 76:11 76:13 76:15 76:16 76:18 76:21 77:3 77:5 77:9 77:9 77:13 77:14 77:15 77:16 77:16 77:17 77:17 77:19 77:21 77:23 77:25 78:1 78:2 78:2 78:2 78:4 78:5 78:5 78:6 78:7 78:7 78:8 78:9 78:10 78:11 78:13 78:15 78:17 78:19 78:23 79:2 79:2 79:3 79:4 79:6 79:9 79:18 79:19 79:20 79:24 80:3 80:11 80:15 80:19 80:20 81:12 81:13 81:13 81:15 81:17 81:19 81:23 81:23 82:13 82:14 82:16 82:17 82:19 82:24 83:2 83:4 83:7 83:9 83:11 83:16 83:17 83:18 83:18 83:22 83:23 83:25 84:3 84:4 84:4 84:12 84:12 84:15 84:18 84:22 85:4 85:4 85:10 85:11 85:11 85:13 85:14 85:15 85:19 85:21 85:24 86:2 86:4 86:6 86:8 86:9 86:9 86:10 86:11 86:14 86:16 86:19 86:20 86:21 86:23 86:24 86:25 87:2 87:3 87:7 87:8 87:9 87:13 87:13 87:16 87:21 87:23 87:24 88:2 88:3 88:7 88:8 88:11 88:13 88:15 88:18 88:19 88:20 88:22 88:24 88:25 89:2 89:19 89:24 90:8 90:9 90:9 90:14 90:21 91:13 91:15 91:15 91:23 91:25 92:4 92:7 92:13 92:17 92:25 93:2 93:5 93:9 93:12 93:12 94:1 94:2 94:8 94:8 94:21 94:25 95:11 95:12 95:14 95:15 96:4 96:5 96:6 96:8 96:11 96:12 96:17 96:22 96:24 97:1 97:4 97:4 97:8 97:8 97:13 97:15 97:15 97:18 97:22 97:24 97:25 98:1 98:2 98:2 98:3 98:7 98:7 98:8 98:8 98:8 98:10 98:13 98:14 98:15 98:19

| Word | Page:Line |
|---|---|
| **the**(301) | 98:21 98:23 98:25 98:25 99:3 99:5 99:9 99:10 99:15 99:16 99:16 99:18 99:20 99:21 99:21 99:22 99:24 99:25 99:25 100:2 100:5 100:8 100:8 100:11 100:12 100:18 101:4 101:6 101:7 101:8 101:9 101:9 101:25 101:25 102:1 102:5 102:8 102:9 102:12 102:12 102:14 102:19 102:20 102:21 102:22 102:23 102:24 102:24 102:25 103:3 103:3 103:5 103:9 103:10 103:15 103:15 104:3 104:4 104:5 104:5 104:12 104:22 104:25 105:1 105:8 105:13 105:16 105:17 105:19 105:19 105:20 105:22 105:24 105:24 105:24 105:25 106:4 106:6 106:8 106:11 106:11 106:12 106:13 106:15 106:17 106:17 106:20 106:21 107:2 107:7 107:9 107:10 107:11 107:13 107:19 107:22 108:5 108:5 108:10 108:11 108:16 108:21 108:23 109:10 109:17 109:21 110:1 110:1 110:2 110:15 110:15 110:18 110:20 110:23 111: 111:14 111:21 111:24 111:24 111:25 112:2 112:10 112:12 112:14 112:14 112:21 112:23 112:19 113:10 113:13 113:15 113:17 113:18 113:20 113:20 114:5 114:5 114:6 114:7 114:8 114:8 114:9 114:14 114:23 115:7 115:9 115:18 115:23 115:23 116:3 116:4 116:7 116:8 116:15 117:13 117:13 117:13 117:16 117:17 117:18 117:19 117:21 117:23 117:25 118:3 118:4 118:7 118:8 118:13 118:16 118:18 118:20 118:23 118:23 118:25 119:4 119:7 119:7 119:16 119:16 119:21 119:22 119:22 120: 120:11 120:12 120:18 120:18 120:20 120:23 120:25 121:2 121:6 121:7 121:9 121:12 121:17 121:18 121:19 121:24 122: 122:3 122:6 122:8 122:8 122:14 122:17 122:22 122:22 122:24 122:25 123:2 123:4 123:5 123:7 123:10 123:13 123:18 123:18 123:18 123:20 123:24 124:2 124:2 124:3 124:3 124:4 124:4 124:7 124:7 124:8 124:8 124:10 124:12 124:15 124:18 124:1 124:23 124:24 124:25 124:25 125:4 125:8 125:10 125:14 125:18 125:18 125:21 125:21 125:23 126:1 126:2 126:3 126:4 126:7 126:8 126:9 126:9 126:13 126:14 126:15 126:17 126:18 126:19 126:19 126:20 126:20 126:21 126:21 126:23 126:25 127:1 127:2 127:2 127:4 127:4 127:7 127:9 127:10 127:10 127:11 127:13 127:14 127:15 127:15 127:16 127:16 127:17 127:18 127:18 127:20 127:21 127:21 127:23 127:23 127:24 127:24 128: 128:2 128:2 128:4 |
| **the**(301) | 128:5 128:7 128:10 128:10 128:12 128:23 129:4 129:9 129:10 129:11 129:16 129:23 129:24 130:1 130:2 130:8 130:11 130:11 130:13 130:14 130:18 130:18 130:20 130:20 130:22 130:24 130:24 131:5 131:6 131:6 131:8 131:8 131:9 131:12 131:12 131:14 131:14 131:15 131:1 131:21 131:22 131:24 132:3 132:6 132:9 132:22 132:23 132:25 133:2 133:3 133:5 133:6 133:7 134:1 134:9 134:11 134:13 134:14 134:18 134:20 134:22 135:5 135:6 135:6 135:7 135:8 135:14 135:22 135:25 135:25 136:6 136:6 136:11 136:12 136:14 136:20 136:20 136:21 137:6 137:6 137:7 137:10 137:11 137:11 137:16 137:18 137:23 138:3 138:1 138:14 138:18 138:22 138:24 139:9 139:10 139:11 139:12 139:15 139:16 139:23 139:23 139:24 140:7 140:19 140:2 141:3 141:6 141:13 141:15 141:15 141:16 141:22 142:6 142:19 142:21 142:22 142:25 143:5 143:9 143:14 143:16 144:6 144:7 144:10 144:17 144:17 144:17 144:21 144:22 144:23 144:25 145:1 145:2 145:9 145:14 145:16 145:19 146:1 146:1 146:7 146:9 146:12 146:18 146:20 146:21 146:24 146:25 146:25 147:1 147:1 147:3 147:8 147:9 147:13 147:15 147:16 147:20 147:25 148:1 148:12 148:19 148:1 148:23 149:2 149:3 149:5 149:12 149:13 149:15 149:16 149:16 149:24 149:25 149:25 150:6 150:6 150:7 150:8 150:11 150:12 150:12 150:20 150:21 150:21 151:7 151:7 151:8 151:9 151:9 151:11 151:12 151:17 151:17 151:17 151:17 151:21 151:22 152:1 152:12 152:14 152:16 152:16 152:18 152:19 152:21 153: 153:8 153:10 153:14 153:17 153:18 153:18 153:20 153:25 154:10 154:1 154:18 154:18 154:19 154:20 155:15 156: 156:3 156:6 156:8 156:15 156:18 156:20 156:20 156:22 157:1 157:3 157:5 157:9 157:11 157:11 157:15 157:17 157:18 157:22 157:22 157:24 158:1 158:4 158:12 158:13 158:14 158:18 158:18 158:19 158:21 158:24 159:1 159:3 159:3 159:5 159:7 159:8 159:9 159:10 159:15 159:20 159:23 159:25 160:1 160:3 160:4 160:11 160:20 160:24 160:25 161:1 161:1 161:1 161:3 161:10 161:12 161:15 161:15 161:1 161:17 161:19 161:20 161:20 161:22 161:25 162:2 162:6 162:7 162:14 162:15 |
| **the**(267) | 162:24 162:24 163:8 163:9 163:11 163:14 163:17 163:24 163:2 164:4 164:7 164:11 164:18 164:19 164:2 164:20 164:21 165:1 165:1 165:1 165:8 165:10 165:11 165:12 165:14 165:15 165:19 165:20 165:21 165:23 165:23 166:1 166:3 166:4 166:13 166:16 166:18 166:16 166:19 166:20 166:20 166:21 167:3 167:6 167:7 167:7 167:8 167:14 167:16 167:18 167:21 167:22 168:3 168:4 168:13 168:14 168:21 169:2 169:3 169:5 169:6 169:8 169:9 169:10 169:13 169:13 169:17 169:23 170:1 170:2 170:4 170:6 170:21 170:22 170:22 170:24 171:2 171:3 171:3 171:6 171:7 171:9 171:14 171:17 171:18 171:18 171:24 171:25 172:5 172:1 172:2 172:4 172:7 172:12 172:12 172:17 172:18 172:21 172:21 172:22 172:22 173:15 173:18 173:19 173:19 174:8 174:19 174:19 174:22 175:3 175:7 175:8 175:15 175:18 175:21 175:22 175:22 176:1 176:4 176:4 176:11 176:13 176:14 176:16 176:24 177:4 177:6 177:7 177:7 177:19 177:20 177:25 178:5 178:7 178:8 178:10 178:12 178:13 178:17 178:25 179:4 179:4 179:6 179:8 179:9 179:11 179:23 179:24 180:1 180:5 180:9 180:16 180:16 180:17 180:18 180:18 180:21 181:4 181:6 181:7 181:8 181:11 181:14 181:15 181:16 181:17 181:18 181:19 181:19 181:22 182:6 182:9 182:9 182:12 182:14 182:15 182:17 182:21 182:18 182:20 182:20 182:21 182:22 182:24 183:5 183:8 183:15 183:15 183:21 183:22 184:6 184:6 184:7 184:11 184:19 184:21 184:24 185:2 185:4 185:6 185:7 185:8 185:15 185:17 185:19 185:19 185:20 185:21 186:2 186:2 186:5 186:6 186:14 186:20 186:25 187:18 188:5 188:16 188:16 188:20 189:7 189:10 189:20 189:20 190:4 190:5 190:6 190:10 190:19 190:24 191:11 191:15 191:16 191:21 191:22 192:7 192:11 192:12 192:13 192:17 192:18 193:5 193:5 193:9 193:9 193:13 193:18 193:18 193:22 193:25 194: 194:4 194:4 194:5 |
| **their**(25) | 6:14 7:3 7:13 7:14 7:17 11:23 12:1 13:8 18:4 22:2 29:24 35:8 42:13 45:13 46:15 49:8 57:21 57:21 96:12 103:20 109:1 112:3 116:24 120:6 180:4 |
| **them**(33) | 7:16 12:2 12:3 12:15 22:20 24:19 33:15 43:8 49:4 50:7 52:24 68:20 80:23 89:5 92:21 101:24 102:1 116:1 118:25 119:3 173:13 173:25 178:11 180:5 180:8 182:11 183:10 183:14 183:20 184:1 190:1 190:16 191:16 |
| **themselves**(2) | 45:23 46:1 |
| **then**(85) | 4:11 5:20 16:6 16:11 16:16 17:21 28:25 35:12 38:17 40:18 42:22 45:13 50:22 52:8 54:21 54:24 55:4 56:15 57:16 58:19 58:20 60:3 61:11 62:9 62:19 68:17 69:1 69:3 70:20 75:6 76:25 77:2 83:4 83:11 84:4 84:22 84:23 87:1 87:17 89:6 90:9 92:6 93:5 94:14 99:19 101:25 110:24 111:24 114:4 120:12 121:21 139:1 140:23 141:19 141:20 144:8 149:12 149:23 149:24 150:13 150:20 150:24 151: 151:9 161:22 162:20 166:10 166:21 169:11 171:17 172:7 172:21 173:13 173:1 174:12 176:11 177:13 179:12 180:10 180:25 182:11 183:17 185:4 191:6 |
| **theories**(1) | 39:10 |
| **there**(116) | 4:9 4:20 6:25 7:13 9:24 11:8 15:5 15:9 15:17 15:17 15:23 17:2 17:21 17:21 18:6 19:19 19:21 21:13 21:18 21:19 22:5 22:7 22:11 22:24 23:20 25:7 27:3 30:11 31:2 32:8 33:9 33:23 40:23 42:22 43:12 43:13 43:24 45:15 50:25 51:23 52:21 52:24 52:25 53:2 53:6 53:14 53:18 53:24 54:15 56:22 62:1 69:14 72:1 78:8 83:4 83:11 83:11 83:16 83:25 84:19 84:20 87:4 87:10 88:12 92:21 92:21 92:22 93:17 95:6 97:12 98:6 99:12 99:14 101:20 104:14 104:25 107:3 110:4 114:24 115:7 117:17 119:20 121:4 124:24 126:21 126:22 130:16 134:21 136:13 139:7 140:11 145:6 147:8 147:10 147:21 160:1 160:4 160:5 160:5 162:9 168:16 172:7 178:4 178:5 179:3 179:24 179:25 180:23 181:16 184:14 184:15 185:3 186:2 186:6 187:4 191:8 |
| **there's**(32) | 6:16 7:5 7:8 7:11 7:18 9:4 9:5 10:18 15:1 21:8 21:11 22:16 27:2 27:3 27:5 27:21 31:19 38:9 39:19 46:14 56:6 76:12 81:2 81:11 82:4 82:14 86:20 88:13 126:10 130:24 138:8 182:7 |
| **thereafter**(2) | 143:8 179:17 |
| **therefore**(2) | 38:8 132:24 |
| **therewith**(1) | 9:20 |
| **there's**(1) | 114:9 |
| **these**(29) | 6:13 14:5 14:10 14:11 14:21 16:24 16:24 17:9 19:9 19:20 25:6 32:17 35:24 40:6 53:3 53:20 62:12 77:9 80:23 95:4 127:16 131:22 154:16 155:23 180:12 185:3 186:11 190:15 190:18 |
| **they**(146) | 4:18 5:1 6:13 7:10 7:10 7:11 8:12 8:14 9:18 10:20 14:2 17:21 18:4 19:4 19:12 22:1 27:8 28:3 28:10 28:18 29:8 30:5 30:16 31:9 31:9 33:15 33:16 33:17 33:18 33:18 33:19 33:20 35:8 35:11 35:18 38:18 38:20 38:20 40:6 40:13 40:21 42:12 43:14 49:18 50:5 53:4 53:4 56:1 62:12 66:16 66:17 69:4 69:13 69:15 70:20 70:25 71:5 76:8 79:20 82:13 83:25 84:19 84:23 84:25 89:5 90:7 90:7 90:10 91:22 95:11 96:3 97:14 97:15 98:4 100:18 101:23 101:24 102:5 102:7 102:22 102:22 102:23 104:13 105:10 108:10 108:17 112:24 115:18 115:20 115:20 116:1 116:7 120:7 120:11 120:12 121:8 121:12 121:18 121:25 122:7 124:13 124:14 124:9 125:11 125:12 125:15 125:16 126:4 126:24 135:7 142:23 145:4 164:19 167:12 167:16 167:18 167:20 167:25 168:1 168:1 169:11 170:18 170:21 171:1 171:18 173:24 175:20 175:21 178:11 178:13 178:16 178:17 178:21 180:5 181:10 181:11 181:13 181:17 182:12 182:12 183:13 183:16 184:8 184:12 189:17 190:18 |
| **they're**(17) | 7:21 8:13 13:17 15:10 28:7 34:14 35:9 35:10 36:16 40:5 46:10 52:23 53:3 105:9 126:3 126:10 179:8 |
| **they've**(3) | 17:4 125:24 126:6 |
| **thing**(20) | 7:7 8:2 16:3 16:16 19:25 43:4 57:5 59:17 80:17 85:1 111:24 118:7 120:12 167:18 167:21 175:22 181:15 181:18 186:14 189:20 |
| **things**(16) | 6:24 49:6 49:12 49:23 58:4 58:9 58:17 99:1 118:25 126:9 139:25 167:10 167:22 169:19 176:11 193:21 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **think**(60) 10:18 10:22 11:7 11:8 13:20 13:22 16:18 16:20 16:21 22:15 25:5 25:15 25:22 33:10 33:23 37:21 38:22 40:1 42:5 42:22 43:22 45:11 46:4 46:14 46:25 47:5 47:7 54:4 55:14 61:18 63:2 69:2 71:16 76:4 77:13 78:12 78:13 88:9 97:15 105:9 109:22 111:20 113:4 118:10 128:7 128:8 141:19 142:5 150:3 150:4 150:25 161:11 166:17 166:18 179:5 179:24 181:1 184:13 187:24 | | **thought**(8) 48:6 48:8 61:25 81:5 81:8 181:11 94:6 152:6 | | **trading**(1) 64:6 | | **unclean**(7) 6:14 6:15 6:19 7:25 8:24 9:1 9:8 | |
| | | | | **trained**(1) 49:9 | | | |
| | | | | **transaction**(5) 20:12 21:2 21:14 97:24 188:13 | | | |
| | | **thoughts**(1) 54:8 | | | | **unclear**(2) 128:4 153:16 | |
| | | **thousand**(1) 49:15 | | | | **unconscionably**(2) 36:4 36:9 | |
| **thinking**(1) 133:25 | | **three**(8) 37:8 54:20 62:13 70:2 82:6 119:1 135:19 186:6 | | **transcriber**(1) 194:10 | | **under**(37) 7:9 8:12 9:13 9:15 11:8 14:17 | |
| **thinks**(2) 13:19 15:21 | | | | **transcript**(7) 1:17 1:46 12:6 12:11 12:20 78:9 194:4 | | 15:7 19:16 20:5 22:10 34:15 42:25 52:23 52:23 59:6 59:6 59:7 66:6 77:19 77:25 | |
| **third**(11) 20:15 31:20 43:7 76:22 95:11 146:1 158:18 171:9 172:7 182:9 182:18 | | **through**(36) 6:18 10:12 15:12 18:1 37:18 39:11 42:15 50:8 51:15 51:19 55:23 56:11 56:18 58:5 72:14 72:16 75:4 76:15 78:19 80:7 81:7 85:23 89:13 105:14 113:15 120:9 144:25 148:15 150:11 150:18 155:1 165:12 165:16 179:7 183:18 185:14 | | **transcription**(2) 1:39 1:46 | | 86:10 86:19 86:24 87:5 118:2 118:20 132:7 132:9 146:25 151:16 153:24 175:13 178:12 185:4 186:25 190:19 193:23 | |
| | | | | **transfer**(1) 177:24 | | | |
| **this**(301) 6:13 6:18 7:10 7:16 7:20 7:23 8:1 8:5 8:10 8:11 10:13 10:19 10:20 10:23 12:5 12:19 13:23 14:25 16:7 16:13 16:17 17:17 18:15 18:15 19:2 19:14 20:15 20:22 20:23 20:24 21:2 21:7 21:14 22:18 23:7 23:23 24:4 24:20 24:25 25:18 26:1 26:3 26:11 29:4 29:23 30:3 30:5 30:22 31:1 31:6 31:22 32:8 32:17 35:2 35:25 36:7 36:11 36:14 37:4 38:13 39:15 39:21 39:21 40:14 40:15 40:20 41:8 42:18 44:9 45:9 46:16 48:5 49:16 53:1 55:9 55:11 56:15 57:11 57:12 57:22 58:13 58:23 59:1 59:3 59:7 59:14 59:24 60:7 60:21 60:24 61:20 61:23 62:19 63:5 63:9 63:11 63:14 63:18 64:9 64:12 64:15 64:15 64:24 66:16 66:17 66:17 66:23 67:6 67:9 69:21 71:8 71:9 71:13 71:13 71:16 71:22 71:25 72:7 72:11 72:12 73:17 74:5 74:6 74:11 75:22 77:4 79:1 80:15 80:25 81:3 81:7 81:21 81:23 83:3 83:7 83:10 84:11 84:21 84:25 85:1 85:4 85:7 87:6 87:23 90:24 90:25 91:20 91:21 92:10 94:1 94:4 95:24 97:19 97:22 98:5 98:11 98:16 99:10 99:15 101:8 101:9 101:13 103:8 105:5 106:9 106:11 106:14 107:4 108:21 109:7 109:17 110:23 112:3 112:5 112:8 112:17 112:24 113:20 113:22 114:1 114:2 114:5 114:6 114:15 114:21 115:2 115:6 115:7 115:8 115:11 116:11 117:11 118:2 120:1 120:18 121:25 122:6 122:14 122:16 123:8 123:9 123:12 123:21 123:23 124:1 124:12 124:25 125:13 125:14 125:25 126:7 126:24 126:25 127:19 127:25 128:4 131:5 131:8 131:9 131:11 131:11 132:7 132:9 136:17 136:21 136:25 137:2 137:22 138:8 138:16 139:14 139:14 139:22 140:7 141:18 141:19 142:24 144:5 144:5 145:5 145:6 145:18 145:18 146:14 146:17 146:24 148:5 151:17 151:22 156:8 156:12 156:22 157:19 157:22 157:23 158:9 160:2 161:2 161:13 163:17 163:22 163:23 163:25 171:2 171:8 171:9 172:2 173:9 173:22 174:8 174:15 174:18 175:3 175:16 175:19 175:23 176:1 176:9 176:11 176:21 176:22 177:1 177:2 177:3 177:8 177:13 177:14 177:18 177:22 178:3 178:15 179:1 179:15 179:19 179:22 179:25 180:3 | | **throughout**(5) 14:21 26:12 47:21 49:14 110:12 | | **transferees**(4) 27:13 34:2 34:6 37:11 | | **underlying**(1) 44:13 | |
| | | | | **transferred**(1) 177:10 | | **underneath**(1) 183:20 | |
| | | | | **transfers**(1) 29:14 | | **understand**(25) 8:22 17:6 31:16 40:24 64:4 68:6 69:7 75:9 86:16 107:7 110:21 113:4 115:5 115:8 128:18 128:20 142:19 142:21 146:9 153:7 173:22 185:14 186:23 188:5 188:11 | |
| | | | | **transition**(1) 51:3 | | | |
| | | | | **transpack**(1) 31:21 | | | |
| | | **throw**(1) 135:17 | | **transpired**(1) 106:12 | | | |
| | | **thrust**(1) 11:17 | | **tree**(2) 52:24 183:16 | | | |
| | | **thus**(2) 42:12 92:2 | | **trial**(11) 7:13 11:21 12:8 25:17 25:18 25:22 26:6 44:6 45:9 65:6 97:14 | | **understandable**(1) 54:12 | |
| | | **ticks**(1) 31:10 | | | | **understandably**(1) 188:3 | |
| | | **tightly**(1) 51:8 | | | | **understanding**(28) 60:19 67:9 72:24 73:13 73:16 90:17 91:11 91:17 93:22 95:14 104:11 106:14 107:12 107:15 107:21 107:22 107:23 108:4 112:23 113:13 115:22 123:12 149:14 174:22 178:7 180:15 192:8 192:19 | |
| | | **till**(3) 67:22 139:12 139:24 | | **tried**(4) 89:10 119:20 138:2 180:8 | | | |
| | | **time**(88) 13:5 13:14 15:8 15:10 20:24 27:2 27:9 29:5 29:11 31:9 33:20 34:13 34:15 34:21 34:25 36:10 36:20 36:22 37:2 42:3 42:11 42:12 42:22 43:18 43:22 45:3 47:1 50:9 51:7 51:16 51:23 52:10 52:13 52:18 53:13 54:15 56:9 60:3 60:6 62:1 66:25 67:2 69:21 72:2 72:14 80:8 80:19 83:16 90:15 92:19 92:22 95:6 101:20 102:2 104:1 104:14 104:18 108:11 109:17 110:17 110:20 111:3 111:22 114:14 119:20 120:2 122:12 125:18 133:21 135:8 140:19 142:2 144:25 145:9 145:14 149:3 159:25 160:1 164:14 164:17 170:24 179:5 180:9 181:6 181:14 183:6 183:9 | | **trips**(1) 52:4 | | | |
| | | | | **trouble**(1) 79:11 | | | |
| | | | | **true**(4) 38:10 40:5 42:21 72:22 | | **understood**(11) 26:17 33:1 77:3 135:13 146:17 146:20 158:15 178:8 180:19 190:17 192:15 | |
| | | | | **trust**(9) 14:18 17:13 27:8 27:15 28:11 29:9 29:12 33:11 40:4 | | | |
| | | | | **trustee**(1) 38:2 | | | |
| | | | | **trustee's**(1) 14:16 | | **undertake**(1) 101:16 | |
| | | | | **trustees**(1) 14:17 | | **underwrite**(2) 133:18 146:22 | |
| | | | | **truth**(3) 72:21 79:2 79:3 | | **underwriter**(5) 7:22 7:23 56:17 57:21 58:2 | |
| | | **timeline**(2) 55:18 68:3 | | **try**(12) 18:3 36:10 44:22 61:23 89:11 92:18 101:1 101:16 104:3 111:17 119:1 173:11 | | **underwriting**(8) 7:9 7:12 7:12 7:14 10:7 10:10 57:3 115:23 | |
| | | **times**(7) 14:5 15:14 34:12 40:3 56:15 145:19 183:16 | | | | | |
| | | | | | | **underwritten**(1) 129:16 | |
| | | | | **trying**(14) 9:12 9:13 36:16 46:10 56:5 110:17 111:23 112:1 139:22 140:1 173:25 179:11 179:14 184:10 | | **union**(1) 53:6 | |
| | | **timing**(3) 94:19 94:24 94:25 | | | | **unique**(1) 35:5 | |
| | | **tissues**(1) 53:14 | | | | **united**(4) 1:1 1:19 14:15 14:16 | |
| | | **title**(12) 14:18 15:5 29:2 29:9 42:2 68:20 80:19 81:12 93:4 173:18 176:17 176:18 | | **turn**(45) 58:22 59:1 69:24 70:24 74:18 82:14 88:20 93:25 100:7 101:6 105:23 108:20 108:23 112:4 115:1 122:3 124:19 130:6 130:18 136:15 136:20 138:13 142:1 146:24 147:25 149:1 149:7 149:23 150:17 152:9 158:17 160:10 169:22 175:1 175:7 177:3 181:21 182:6 185:2 185:16 186:22 187:3 188:19 189:14 190:23 | | **unlawful**(2) 30:15 30:17 | |
| | | | | | | **unless**(2) 20:10 81:1 | |
| | | | | | | **unlike**(2) 35:5 35:15 | |
| | | | | | | **unplug**(1) 48:6 | |
| | | **titled**(3) 156:17 157:5 157:8 | | | | **unpub**(1) 31:21 | |
| | | **today**(10) 4:7 4:10 5:7 24:4 110:19 113:1 118:2 136:1 143:20 158:7 | | | | **unpublished**(1) 31:19 | |
| | | | | **turned**(1) 180:10 | | **unresponsiveness**(1) 57:20 | |
| | | | | **turning**(7) 151:16 153:17 158:17 164:11 170:4 174:12 184:2 | | **unsecured**(2) 2:5 110:10 | |
| **this**(16) 182:1 182:2 182:4 182:4 182:6 182:10 182:16 182:24 183:16 183:22 184:1 185:1 186:13 186:25 192:21 193:2 | | **today's**(1) 127:18 | | | | **unspoken**(1) 192:19 | |
| | | **together**(2) 51:24 164:7 | | | | **until**(14) 29:23 36:23 43:10 83:6 86:9 91:23 99:5 114:6 128:10 144:18 151:7 163:25 166:11 183:1 | |
| | | **told**(35) 60:14 70:12 72:21 84:14 84:17 84:21 84:24 89:5 89:6 89:7 89:20 93:15 93:20 96:2 96:15 96:15 96:24 111:2 139:17 140:16 140:25 141:4 141:6 141:9 141:12 142:2 142:8 142:12 143:3 163:23 165:8 165:17 178:13 186:19 191:15 | | **two**(30) 2:14 4:17 6:24 7:7 17:11 25:6 43:1 52:19 56:6 56:8 56:21 57:6 59:18 59:19 62:15 62:15 68:8 77:18 82:6 84:15 112:12 121:11 135:19 141:1 141:13 146:2 172:12 173:12 173:15 190:3 | | | |
| | | | | | | **untrue**(1) 10:7 | |
| | | | | | | **update**(2) 160:22 160:25 | |
| | | | | | | **upon**(5) 7:17 23:17 38:17 42:6 61:19 | |
| **those**(42) 7:6 8:4 9:22 10:3 13:9 18:1 18:20 19:19 23:24 24:17 27:16 31:17 33:2 33:5 34:3 34:6 37:11 40:10 46:7 47:23 50:16 50:22 58:9 62:20 69:2 82:6 82:6 83:4 91:9 91:10 117:12 129:18 132:10 144:25 163:15 169:19 172:18 180:6 182:7 185:13 186:3 186:7 | | | | | | 91:19 120:1 146:21 169:2 176:9 | |
| | | | | **type**(4) 22:16 40:19 113:22 181:8 | | **use**(23) 6:13 8:4 8:14 9:12 9:13 9:14 9:16 16:24 66:17 97:18 97:19 111:17 117:12 126:3 126:11 133:22 146:25 156:20 157:23 157:25 158:14 168:17 188:12 | |
| | | | | **typed**(2) 113:24 144:8 | | | |
| | | | | **types**(1) 31:17 | | | |
| | | **tomorrow**(2) 193:21 193:23 | | **typical**(1) 178:15 | | | |
| | | **tonya**(13) 58:14 58:20 69:3 69:6 69:9 71:12 71:16 72:2 84:24 113:25 143:4 160:16 163:23 | | **typically**(1) 19:14 | | | |
| | | | | **typing**(1) 114:2 | | **used**(10) 6:15 29:7 117:21 119:13 147:13 159:21 160:8 163:17 163:21 167:17 | |
| | | **tonya's**(1) 71:21 | | **u.s**(1) 30:14 | | | |
| | | **too**(6) 7:21 56:25 63:4 67:6 69:19 118:4 | | **ultimate**(3) 17:14 17:14 134:15 | | | |
| | | **took**(4) 24:7 49:3 69:15 83:17 93:4 104:22 167:20 168:2 | | **ultimately**(6) 18:4 18:18 57:22 100:15 116:4 120:14 | | **using**(6) 9:23 48:3 57:17 97:22 126:4 165:15 | |
| | | | | **um-hum**(19) 5:24 29:16 45:6 68:12 82:18 120:25 125:10 139:2 141:8 149:14 153:2 153:19 155:22 159:5 162:7 162:12 165:3 171:16 173:2 | | | |
| | | **tools**(1) 118:24 119:13 119:23 167:25 | | | | **usually**(1) 49:18 | |
| | | **top**(5) 114:9 121:24 179:9 182:25 185:2 | | | | **uta**(1) 14:14 | |
| | | **toss**(2) 32:20 32:23 | | | | **utilities**(2) 165:20 165:23 | |
| | | **total**(2) 61:13 101:9 | | | | **vacant**(1) 49:3 | |
| | | **totally**(1) 91:20 | | **unable**(1) 78:10 | | **vacate**(1) 37:9 | |
| | | **tough**(1) 35:19 | | **unattended**(1) 58:3 | | **vacated**(1) 110:2 | |
| | | **touss**(4) 110:10 110:11 110:19 110:22 | | **unavailability**(3) 86:12 86:21 87:24 | | **vacation**(1) 53:18 | |
| | | **towards**(1) 120:18 | | **unavailable**(5) 77:19 78:6 86:7 86:20 | | **vague**(1) 51:4 | |
| **though**(7) 13:16 13:17 156:21 164:7 166:1 186:19 191:19 | | **traci**(1) 194:9 | | | | **value**(5) 16:11 64:9 89:24 89:25 117:7 | |
| | | **trade**(1) 118:25 | | | | | |

Word Page:Line

**vanessa**(1) 101:22
**variables**(1) 139:13
**varied**(1) 15:22
**various**(3) 11:3 41:10 112:14
**vast**(2) 14:6 14:21
**ventura**(10) 49:7 49:14 49:14 53:17 71:15 120:8 151:11 168:19 168:19 168:24

**venture**(1) 20:16
**venue**(1) 179:13
**verbally**(3) 114:4 144:17 180:7
**verify**(1) 116:2
**version**(3) 58:23 59:3 138:8
**vertical**(1) 82:19
**very**(20) 12:5 17:24 26:9 33:2 37:16 40:9 49:11 53:2 54:18 69:16 72:2 76:22 89:2 105:17 108:3 116:24 130:24 145:10 159:2 171:8
**via**(1) 143:21
**video**(3) 50:23 77:8 167:23
**view**(1) 25:11
**views**(1) 53:24
**vigorously**(1) 167:4
**violate**(2) 46:20 46:21
**violated**(6) 38:8 38:16 40:4 46:2 127:11 127:20

**violation**(13) 38:13 38:19 38:25 39:2 40:9 45:11 45:14 45:16 126:19 127:15 128:2 128:2 128:6

**violations**(1) 127:21
**void**(2) 34:23 38:2
**volumes**(1) 12:21
**voluntarily**(1) 111:16
**von**(3) 110:10 190:12 191:18
**wait**(9) 40:16 65:9 67:22 81:3 93:12 161:12 161:12 161:12 191:6

**waited**(1) 43:10
**waiting**(1) 180:4
**waiver**(1) 9:5
**walk**(3) 15:12 18:1 72:11
**walked**(1) 53:22
**walkway**(1) 50:2
**wannaka**(1) 10:8
**want**(26) 8:12 11:20 11:21 11:23 38:13 38:15 41:13 45:4 45:18 54:3 54:19 65:6 66:7 66:17 71:21 75:2 78:3 86:16 97:19 99:14 117:10 122:8 128:14 175:20 184:13 193:4
**wanted**(31) 10:12 13:22 33:16 33:18 33:18 41:7 41:14 52:3 52:5 52:9 56:7 65:18 76:21 84:15 95:22 97:18 105:6 105:13 108:16 108:18 108:18 111:6 128:17 133:4 178:20 181:10 183:19 186:12 186:14 186:15 186:15

**wanting**(1) 112:11
**wants**(2) 16:21 86:14

Word Page:Line

**was**(301) 5:13 7:16 7:17 9:24 12:14 13:11 13:20 17:21 19:17 21:12 21:13 21:19 22:7 22:11 22:18 23:9 23:19 27:10 27:21 28:18 28:19 29:11 30:2 30:3 30:13 30:22 30:23 31:2 31:2 31:4 31:22 32:8 32:21 32:23 33:1 34:20 34:21 34:23 36:3 36:9 36:9 36:22 36:23 36:24 37:1 37:6 37:7 38:16 38:16 38:17 38:22 39:15 41:15 42:13 43:12 43:22 45:1 45:12 46:1 48:25 49:2 49:3 49:4 49:5 49:8 49:18 49:20 49:21 50:5 50:10 50:11 50:17 50:19 50:23 50:24 50:25 51:3 51:16 51:17 51:20 52:2 52:10 52:11 52:12 52:12 52:14 52:17 52:19 52:19 52:21 52:25 53:5 53:6 53:10 53:11 53:16 53:16 53:17 53:18 53:19 53:19 53:23 53:24 53:25 54:18 54:18 54:20 54:23 54:24 55:3 55:4 55:7 55:11 55:11 55:15 55:21 56:1 56:2 56:3 56:10 56:11 56:12 56:14 56:17 56:22 57:8 57:11 57:13 57:13 57:15 57:15 57:16 57:24 57:25 58:6 58:15 60:3 60:6 60:8 60:12 60:14 60:20 60:22 61:4 61:4 61:6 61:8 61:14 61:16 62:15 62:19 62:21 62:24 63:4 63:7 63:9 63:11 63:14 64:1 64:2 64:5 64:6 64:9 64:12 64:23 65:2 65:3 65:16 66:5 66:6 66:18 66:19 66:21 66:22 66:24 66:25 66:25 67:3 67:25 68:19 68:19 69:2 69:14 70:7 71:8 71:11 71:14 71:22 72:1 72:8 72:12 73:12 73:13 74:3 74:7 76:25 79:9 79:12 79:18 79:18 79:19 80:3 80:8 80:15 80:17 80:17 80:21 80:25 81:5 81:7 81:8 81:10 83:5 83:11 83:11 83:19 83:20 83:22 83:22 83:24 83:25 84:3 84:4 84:4 84:8 84:21 84:24 85:1 85:4 85:8 86:8 86:24 87:1 87:2 87:9 87:25 88:19 89:22 90:1 91:14 91:23 91:24 92:6 92:13 92:14 92:21 92:21 92:24 92:25 93:2 93:14 93:22 94:6 94:6 94:9 94:10 94:19 95:9 95:10 95:12 95:12 95:15 95:23 96:1 96:11 98:3 98:5 98:6 99:14 99:19 99:22 101:22 101:24 102:4 102:8 102:21 103:3 103:7 103:8 103:10 103:15 103:17 103:18 103:20 103:21 104:6 104:12 104:20 105:2 105:7 106:15 107:1 107:3 107:8 107:9 107:16 107:17 108:1 108:6 108:7 108:8

Word Page:Line

**was**(296) 108:10 108:11 108:17 108:25 109:18 109:22 110:8 110:16 110:17 110:1 110:20 110:22 110:22 111:1 111:1 111:2 111:6 111:14 111:23 112:2 112:9 112:10 113:1 113:3 113:11 113:12 114:6 114:14 114:15 114:16 114:23 115:7 116:17 116:1 116:23 116:24 117:22 117:23 119:4 119:5 119:8 119:10 120:8 120:10 120:12 122:14 122:16 122:18 123:13 123:22 124:7 124:8 125:20 125:21 126:22 127:14 127:20 128:11 128:13 129:15 129:25 131:14 131:21 132:3 132:22 133:3 133:14 133:22 134:12 134:13 134:17 134:19 134:20 134:21 134:23 135:4 135:5 135:9 135:10 135:14 135:17 136:10 136:13 136:13 138: 139:9 139:10 139:22 139:22 139:23 140:1 140:4 140:11 140:16 141:15 142:22 142:2 143:3 144:10 144:18 144:24 145:6 145:9 145:12 145:20 146:17 146:18 146:20 147:13 147:19 148:8 148:13 148:14 148:15 148:19 149:4 149:19 150:4 150:9 150:10 150:11 151:14 151:15 151:25 152:3 152:7 152:12 153:8 153:14 154:12 154:17 154:1 154:18 154:19 154:20 154:21 154:22 155:1 155:7 155:10 155:15 155:20 155:21 155:23 156:20 157:5 157:10 157:10 157:1 157:15 157:17 157:19 157:23 157:23 158:1 158:1 158:2 158:13 158:13 158:14 158:15 159:16 159:19 159:22 159:22 159:23 159:24 159:25 160:1 160:1 160:4 160:4 160:5 160:5 160:7 160:9 160:9 160:16 160:18 160:25 161:2 161:15 161:2 162:4 162:5 162:9 162:10 162:13 163:2 163:4 163:12 163:20 163:25 164:5 164:7 164:9 164:10 164:20 165:5 165:11 167:18 167:21 168:1 168:3 168:4 168:16 168:22 168:24 168:25 168:25 169:9 169:10 169:1 169:16 170:24 171:17 171:19 171:19 172:2 172:8 173:6 173:10 173:11 173:11 173:13 173:22 173:24 174:1 174:2 174:9 174:10 174:22 174:23 174:24 175:16 175:18 175:22 175:23 176:21 176:22 176:24 176:25 177:20 178:4 178:5 178:7 178:12 178:14 178:15 178:19 179:3 179:3 179:9 179:11 179:13 179:15 179:24 180:1 180:7 180:15 180:18 180:23 181:11 181:1 181:17 181:19 181:19 183:5 183:22 183:25 184:9 184:10 184:11 184:14 184:1 184:24 184:25 186:12 186:14 187:16 189:1 189:5 189:20 190:14 191:20 192:7 192:8 192:10 192:11 192:12 192:15 192:1 192:18 192:19 192:19 193:25

**wasn't**(19) 13:21 22:5 29:23 43:13 58:9 88:19 89:23 94:25 97:21 134:19 148:19 155:17 156:20 157:13 169:15 183:25 184: 186:13 186:17

**waste**(1) 122:11
**watching**(1) 56:8
**water**(1) 120:6
**water's**(1) 42:25
**way**(26) 6:5 7:18 20:13 33:22 34:5 34:17 44:9 53:12 54:16 56:14 70:2 71:14 71:25 72:1 76:15 81:2 81:24 83:7 108:10 120:18 143:10 149:15 149:16 149:16 168:18 191:20
**we'd**(1) 173:12
**we'll**(16) 26:5 47:24 51:19 51:19 59:12 69:24 71:17 71:18 94:22 96:6 98:24 99:11 111:15 193:19 193:20 193:23

**we're**(34) 4:7 6:18 9:12 9:14 9:23 26:13 35:16 38:4 38:4 38:5 39:19 40:11 40:25 47:22 48:1 54:2 59:20 71:24 86:5 88:6 99:5 104:1 130:10 130:13 149:7 152:15 152:16 152:18 158:22 158:23 185:13 185:18 190:25 193:18

Word Page:Line

**we've**(7) 10:8 41:9 41:11 122:17 126:18 128:7 128:8

**weaker**(1) 78:12
**weddings**(1) 50:6
**wednesday**(1) 23:25
**weed**(1) 119:13
**week**(11) 4:15 56:11 56:16 58:8 122:20 126:6 133:7 133:7 139:9 162:14 162:15

**weekend**(6) 54:19 57:25 58:2 58:18 71:16 133:3

**weekly**(1) 49:15
**weinblatt**(31) 2:11 2:12 26:22 26:23 27:1 27:20 27:25 28:2 28:5 28:7 28:10 28:14 28:17 28:21 29:6 29:17 29:23 30:3 31:6 31:12 31:15 31:18 32:12 37:23 38:11 38:15 38:22 39:3 39:10 39:15 39:17

**welcome**(6) 6:7 8:13 11:14 18:22 32:13 78:15

**well**(116) 4:17 5:18 6:15 10:24 11:2 11:9 11:16 14:11 16:20 16:25 20:21 22:16 25:14 27:23 28:23 31:12 34:9 34:9 34:16 35:1 35:8 35:12 36:23 37:5 38:10 38:24 39:3 40:2 42:10 43:3 43:8 44:7 44:9 46:18 47:10 51:19 52:2 52:19 55:23 56:23 57:24 60:1 60:6 61:11 61:21 63:19 64:6 65:9 65:14 65:18 69:19 69:20 71:21 72:25 73:17 74:9 74:20 76:1 76:21 79:14 83:11 84:20 85:19 85:20 86:11 86:19 87:13 87:23 90:21 91:13 93:12 94:21 95:20 97:15 99:23 103:16 103:22 107:7 108:10 108:13 109:11 111:20 118:19 122:8 122:22 122:24 123:4 123:18 123:24 125:14 125:18 125:22 127:4 130:1 135:11 137:4 139:9 140:14 145:16 149:1 152:18 153:20 155:3 155:4 155:23 158:6 158:7 163:2 163:4 167:18 167:22 168:22 169:15 173:11 174:7 193:18

**went**(44) 55:23 57:15 66:24 68:20 69:2 69:12 73:5 73:7 80:11 81:12 84:24 89:4 89:6 89:11 90:11 108:10 114:3 114:5 118:21 120:9 133:10 141:15 142:11 142:15 144:17 145:7 145:8 145:9 145:13 145:15 145:17 145:19 150:25 164:21 166:16 166:17 166:18 166:19 166:20 173:18 179:4 179:10 180:10 188:21

**were**(153) 4:17 6:25 6:25 7:1 13:19 17:12 17:21 19:1 19:3 19:4 21:16 22:1 24:7 27:8 28:24 29:8 29:14 34:3 36:12 43:14 43:19 45:8 45:10 45:11 47:10 47:11 48:6 49:23 51:2 51:22 52:24 52:25 53:17 56:5 58:4 58:6 58:6 60:7 61:9 67:2 69:13 70:19 71:11 72:7 72:13 72:13 77:5 79:11 80:17 83:9 84:14 84:17 88:10 90:7 90:7 91:5 92:2 95:11 98:4 100:12 100:18 101:11 101:12 101:23 101:24 102:22 107:2 107:9 108:14 108:17 109:21 110:15 111:14 112:20 112:20 115:18 115:24 118:20 120:7 126:22 129:16 131:19 132:10 132:14 132:17 132:23 132:24 133:2 134:8 134:9 138:2 138:10 139:11 139:24 140:1 140:9 140:24 141:9 145:2 145:11 149:2 149:20 150:18 151:3 151:10 151:18 153:14 153:24 157:5 157:8 157:18 157:24 159:19 160:17 160:19 161:10 162:4 162:10 163:7 163:11 164:4 164:7 164:18 165:11 165:15 165:23 167:7 168:16 169:1 169:13 170:4 170:11 170:21 172:14 172:18 172:23 175:21 177:14 178:8 178:11 178:21 180:1 180:18 186:23 186:24 186:25 187:21 188:2 190:18 190:19 191:3 191:19 192:2

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

**weren't**(7) 53:5 56:9 84:2 164:22 165:4 183:4 183:14

**west**(2) 1:33 134:1

**western**(1) 180:21

**we're**(1) 120:17

**whackers**(1) 119:13

**what**(222) 7:11 7:19 8:8 9:18 15:20 16:7 16:18 16:21 17:6 20:5 24:8 24:18 25:2 25:10 26:7 26:8 31:3 31:13 34:22 35:5 35:16 38:6 38:15 38:17 43:1 43:2 43:7 46:8 48:1 48:19 49:20 49:25 50:11 50:19 51:1 51:11 51:16 51:19 51:20 52:10 52:13 52:17 53:1 53:11 55:1 55:3 57:2 57:22 57:24 58:12 58:19 59:14 60:1 60:6 60:12 60:19 61:9 61:15 61:19 62:22 63:5 63:14 66:2 66:8 66:10 66:13 67:25 68:4 68:5 68:18 68:19 68:22 70:12 71:8 71:20 72:2 73:12 74:25 75:24 76:25 77:3 78:1 79:12 79:22 80:3 80:4 80:5 80:15 80:19 81:5 83:14 84:4 84:17 85:21 85:24 86:1 86:9 87:8 87:15 87:17 87:19 87:20 87:25 89:7 89:7 89:18 89:18 89:19 89:20 89:22 90:4 90:17 90:21 91:17 92:6 92:25 93:20 94:8 95:9 95:19 96:1 96:2 96:17 96:24 98:16 100:15 100:19 100:23 101:15 101:24 102:4 104:11 104:18 105:24 106:9 106:25 107:6 107:17 107:7 107:11 107:15 107:22 108:8 108:13 108:17 109:11 109:11 110:1 110:15 110:18 111:19 112:5 112:20 114:14 115:10 115:18 115:22 117:1 119:1 120:8 122:10 122:18 122:22 122:24 122:25 122:25 124:25 126:8 126:12 126:1 128:11 128:13 128:14 130:24 131:21 132:13 134:24 135:18 136:13 137:4 137:21 138:15 139:7 139:10 139:11 140:3 142:18 143:1 144:10 144:17 145:2 146:9 147:14 148:23 149:14 149:14 149:17 149:19 152:10 152:12 153:6 153:14 163:5 166:14 174:6 176:17 178:13 179:14 180:8 183:8 183:13 184:8 187:15 188:7 188:8 188:9 188:9 188:20 189:12 191:3 191:6

**what's**(6) 5:7 17:18 46:11 56:19 56:19 73:21

**whatever**(5) 24:22 48:22 58:8 81:8 83:9

**when**(92) 6:16 8:21 8:24 12:20 15:13 16:1 16:6 25:1 27:2 29:21 29:24 30:9 30:25 34:13 37:25 38:16 38:20 38:22 42:25 49:25 50:23 51:3 51:23 52:1 52:8 54:15 56:20 60:21 60:24 61:1 61:2 62:1 63:9 64:1 69:1 72:6 72:7 76:20 76:22 76:23 76:24 76:25 83:17 83:19 84:17 89:14 90:10 92:2 92:12 92:16 92:22 94:4 94:19 95:6 98:4 98:17 101:20 103:11 111:24 112:1 119:20 120:25 124:7 130:1 135:13 135:21 136:11 140:10 144:22 145:8 145:13 145:19 149:7 149:20 152:13 153:6 156:22 157:8 158:13 160:16 161:1 161:10 162:13 165:1 165:18 169:8 174:24 176:22 180:15 186:23 188:15 188:22

**whenever**(2) 52:25 190:25

**where**(51) 21:8 25:19 36:16 38:12 40:24 48:14 48:21 49:3 49:13 52:5 55:23 66:20 74:15 75:16 79:7 79:16 83:5 83:6 84:16 88:9 88:18 110:5 113:5 114:16 115:23 119:24 120:4 120:23 124:18 125:8 137:11 137:23 149:5 152:23 152:23 153:18 153:23 154:1 158:21 163:21 164:20 168:25 169:17 173:12 176:2 176:3 179:12 179:13 180:1 182:14 191:5

**whereupon**(1) 193:25
**wherewithal**(1) 37:14

**whether**(54) 11:20 16:11 18:15 20:4 23:5 24:11 25:17 25:24 31:24 32:6 42:2 42:2 42:8 44:6 45:10 45:13 45:15 47:1 68:3 72:22 76:24 77:1 77:1 77:10 85:16 85:25 86:11 86:17 87:11 87:24 88:1 103:16 104:5 104:11 104:21 105:14 108:4 109:6 110:11 110:22 111:15 115:17 122:10 127:20 136:25 142:15 146:22 148:17 158:11 168:14 188:12 188:16 193:5 193:9

**which**(53) 7:9 8:8 9:9 9:15 12:7 13:16 14:16 15:8 16:15 17:1 19:6 20:20 24:14 25:21 27:8 29:7 29:8 29:25 30:18 32:5 49:2 49:8 50:23 52:11 53:19 56:1 57:12 64:9 65:22 66:12 81:17 82:13 84:2 84:4 91:19 99:20 101:10 103:21 110:18 120:16 126:4 130:8 131:14 132:2 133:21 138:14 142:21 149:9 151:16 172:21 176:13 185:3 188:3

**while**(5) 13:19 37:7 40:14 46:6 114:2

**who**(23) 13:11 13:11 14:17 21:23 21:23 28:1 29:11 32:20 39:8 50:18 66:21 78:2 102:21 110:8 113:6 113:24 116:20 116:22 133:10 167:8 176:24 189:25 190:3

**who's**(3) 10:9 16:10 78:18

**whole**(12) 32:8 60:21 60:24 72:14 73:18 91:19 99:20 101:10 103:21 110:18 120:16 126:4 130:8 131:14 132:2 133:21 138:14 181:17

**whom**(1) 6:5

**why**(44) 8:9 14:25 15:8 15:14 15:21 15:23 15:24 16:24 29:4 38:12 39:18 40:20 40:22 40:23 63:4 72:6 72:10 72:10 76:18 77:2 90:12 90:15 90:16 90:18 91:11 94:18 97:3 97:8 112:8 123:2 126:15 126:25 160:24 162:6 164:16 179:10 179:10 180:10 180:1 180:14 180:20 184:6 186:10 190:10

**will**(26) 12:7 13:25 14:1 14:2 17:9 18:17 18:18 20:4 21:3 25:8 25:21 35:11 46:24 47:23 59:13 66:8 72:25 101:10 105:24 123:5 146:24 175:4 177:10 177:22 177:24 193:20

**willful**(5) 38:25 39:2 127:2 127:23 128:1
**willfully**(1) 127:20
**willfulness**(3) 127:8 127:16 128:2
**willing**(6) 45:20 69:13 90:7 93:2 101:24 183:4

**wilmington**(4) 1:11 1:34 2:16 4:1
**windfall**(1) 117:24
**winter**(1) 169:2
**wire**(2) 177:24 179:4
**wireless**(1) 108:2
**wiring**(1) 178:5

**with**(249) 4:8 4:14 4:20 5:1 5:2 5:6 5:14 5:14 5:17 5:18 6:11 6:21 7:20 7:24 8:3 8:7 8:23 9:8 10:5 11:6 11:19 11:24 12:2 12:13 13:10 13:20 13:25 14:22 15:3 15:4 15:6 15:6 16:15 17:4 17:19 21:10 21:14 22:25 23:12 25:17 26:13 30:7 30:19 30:22 32:22 32:24 35:10 40:11 40:17 41:9 41:15 41:12 42:13 43:23 44:6 46:13 47:21 47:24 49:18 50:4 50:7 51:20 52:21 52:24 54:21 54:24 55:5 55:17 56:1 56:2 56:4 57:20 57:22 58:14 58:19 58:20 58:24 59:13 59:15 59:20 59:24 61:2 61:10 61:13 61:12 61:13 61:20 61:21 62:3 62:13 62:2 63:23 64:6 64:7 64:11 66:11 66:13 67:1 67:18 68:20 69:14 70:6 70:18 71:13 71:22 71:23 71:25 72:3 73:13 74:4 74:11 74:21 75:11 77:6 77:16 78:20 79:9 81:13 82:3 83:5 83:25 85:16 88:22 88:18 89:18 93:4 93:20 94:2 94:4 94:14 94:19 94:24 95:6 95:16 95:19 96:6 97:14 97:17 98:4 99:1 99:18 99:19 100:15 100:22 101:1 101:4 104:14 104:18 105:16 105:25 106:1 108:18 109:1 110:12 110:16 110:20 110:23 110:24 112:2 112:13 114:2 114:5 114:17 114:19 120:1 120:9 122:20 123:8 126:2 126:20 127:2 127:19 128:1 129:15 129:19 129:22 130:3 130:5 132:10 132:13 132:24 133:8 134:19 135:13 135:14 135:2 136:5 136:7 137:16 139:4 139:15 140:10 141:18 141:20 141:23 142:23 145:7 145:9 145:15 148:21 150:15 157:14 157:21 158:8 158:9 159:6 160:18 161:2 162:6 163:8 163:12 166:4 167:14 169:5 169:17 170:12 170:21 171:9 171:14 172:22 172:23 173:7 173:10 173:25 174:24 175:4 175:19 175:20 176:25 178:5 179:2 179:3 179:4 180:1 180:5 180:8 183:2 183:8 184:10 188:1 188:1 190:22 191:25 192:6 192:14 192:17 192:21

**withdraw**(5) 11:25 12:17 51:7 88:15 88:25
**withdrawing**(1) 13:17
**withdrawn**(2) 13:3 88:24
**within**(6) 13:14 139:14 141:1 141:13 177:25 190:3

**without**(9) 32:6 38:7 44:5 44:8 44:12 44:15 44:20 145:1 160:9

**witness**(14) 7:11 8:8 16:14 47:12 47:17 65:7 66:10 73:24 74:1 77:9 78:6 86:21 97:11 105:19
**witnesses**(2) 3:3 10:7
**won't**(2) 111:16 180:5
**wondering**(1) 100:1
**word**(3) 39:24 126:11 155:17
**words**(2) 88:9 88:12
**work**(25) 21:24 21:25 22:2 23:12 48:20 48:24 48:25 49:16 49:19 50:4 50:8 58:8 101:1 104:18 108:18 109:1 119:17 120:18 134:22 168:19 169:2 173:25 179:12 180:8 184:10
**worked**(8) 50:7 104:14 133:16 135:8 158:9 170:15 170:18 188:18

**working**(12) 19:4 52:24 53:17 55:5 119:1 129:22 132:10 170:11 170:21 172:3 172:23 174:24

**worry**(2) 80:8 94:21
**worse**(1) 16:9
**worth**(4) 59:18 101:11 119:10 169:18

**would**(125) 7:10 7:19 7:23 9:7 9:9 10:3 12:9 13:6 13:18 15:8 16:13 19:6 22:5 24:13 32:2 33:2 33:8 33:15 34:1 34:25 35:9 35:12 35:20 41:1 42:4 42:6 42:8 43:1 43:4 43:5 43:5 43:20 43:24 45:14 45:15 46:23 47:3 49:1 50:4 50:16 50:21 50:22 50:22 51:9 52:6 52:6 53:9 53:25 54:3 54:6 57:12 61:6 61:24 68:14 71:19 72:15 73:10 74:8 74:12 74:18 74:23 75:10 76:24 77:2 79:15 79:16 80:6 80:12 80:13 81:1 81:2 84:21 84:25 85:14 86:1 86:7 86:17 86:17 88:14 94:5 94:14 95:16 95:21 95:23 96:3 96:12 96:16 97:15 98:8 98:17 102:1 103:11 105:8 107:21 114:11 115:20 115:20 116:1 117:24 119:25 120:5 124:19 126:15 127:7 127:11 132:2 132:6 136:14 138:6 139:19 140:20 140:20 143:5 145:5 146:21 149:24 150:22 151:5 162:24 172:3 181:24 183:17 189:3 189:17 193:2

**wouldn't**(10) 34:19 58:10 75:17 75:23 87:10 97:20 162:20 162:23 183:13 183:17

**write**(1) 143:19
**writer**(1) 169:16
**writing**(5) 20:11 81:4 95:22 112:15 169:18
**written**(5) 24:1 69:14 100:17 112:18
**wrong**(7) 17:19 31:14 76:1 76:4 76:4 179:4 185:19

**wrongful**(4) 17:7 23:13 31:24 126:20
**wrote**(8) 49:10 105:3 108:12 108:21 170:8 173:23 174:15 182:2

**www.diazdata.com**(1) 1:43
**yards**(1) 90:9
**yeah**(43) 5:5 54:5 55:12 55:14 61:4 65:12 68:10 69:23 71:11 76:14 78:5 82:23 85:22 98:14 115:10 121:5 125:8 125:20 135:3 137:1 137:25 138:7 139:16 140:14 143:10 145:16 150:4 150:5 150:9 158:10 163:16 166:12 172:20 173:8 174:14 180:19 182:17 185:12 188:6 188:14 189:9 190:9 193:14

**year**(25) 36:4 36:8 36:19 37:6 49:18 50:20 51:8 51:9 51:9 51:11 51:14 51:14 148:18 148:23 149:24 149:25 150:6 150:8 150:19 150:20 150:21 151:7 151:9 169:14 189:20

**yearlong**(1) 135:5
**years**(27) 9:22 14:7 14:10 14:20 14:21 33:19 35:25 36:18 37:8 40:18 42:17 42:24 43:1 43:20 45:22 50:18 57:6 59:18 59:19 62:13 62:15 62:16 127:21 169:17 176:16 176:17 190:3

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**yes**(197) 4:25 15:18 26:19 30:3 31:18 37:23 44:3 44:18 46:3 48:18 50:15 51:25 51:25 53:10 53:10 54:17 54:24 57:15 57:15 58:25 59:9 60:11 60:21 61:8 62:4 62:7 63:4 64:11 64:13 64:17 65:1 65:2 65:3 65:20 70:5 70:13 71:3 73:11 73:19 73:23 74:17 75:14 76:24 78:23 79:4 79:25 81:14 81:22 82:7 82:17 82:21 83:1 83:15 83:24 84:13 85:7 85:12 87:4 87:17 89:17 89:21 90:24 91:2 91:4 91:8 91:13 92:15 92:24 95:5 95:8 97:3 97:17 101:2 101:5 101:14 101:22 102:7 102:13 103:14 104:5 104:17 104:23 105:20 105:22 106:2 106:11 106:19 106:22 106:24 108:22 109:5 109:8 109:12 110:3 110:7 110:14 111:18 112:6 112:16 113:15 113:20 114:13 115:4 115:13 118:6 118:21 120:1 120:6 120:22 121:16 121:23 123:10 123:19 124:1 124:15 126:17 127:6 127:9 128:14 128:20 129:1 130:5 130:13 130:17 131:3 131:18 132:21 134:2 135:19 135:25 136:4 136:23 141:5 141:11 141:24 143:25 146:3 146:6 147:5 147:8 148:3 149:4 149:11 150:10 150:25 151:3 151:6 151:10 151:13 151:15 151:24 152:1 153:4 154:1 154:8 154:11 154:11 156:6 156:14 156:16 158:20 159:2 159:11 159:14 160:12 160:14 160:21 161:6 162:1 162:19 163:19 165:17 167:15 167:22 168:6 169:21 171:23 175:15 176:5 176:8 177:2 179:17 181:10 181:23 185:10 185:1 186:8 187:5 188:18 188:21 189:9 190:16 191:9 191:18 191:20 192:12

**yesterday**(4) 65:5 66:12 66:16 91:19
**yet**(3) 32:19 138:21 166:1
**yield**(2) 21:8 21:11
**york**(1) 2:7

**you**(301) 4:7 4:16 4:25 5:9 5:12 6:3 6:18 8:4 10:14 10:24 11:5 11:7 11:13 11:20 11:21 12:7 12:22 13:18 14:6 15:17 15:24 16:7 16:15 16:17 16:18 17:17 18:6 18:17 18:21 18:23 19:10 21:3 21:9 22:3 23:22 26:6 26:10 29:4 30:4 31:8 31:10 32:12 32:16 33:4 33:22 33:23 34:4 35:11 36:15 38:12 38:13 38:25 40:15 40:17 40:17 40:18 41:1 41:7 41:13 41:14 41:23 42:5 44:9 44:16 44:22 44:24 45:8 45:10 45:17 45:18 45:25 46:5 46:20 47:3 47:18 47:20 47:23 47:25 48:1 48:1 48:8 48:13 48:14 48:17 48:23 49:16 49:25 50:1 50:4 50:8 50:13 50:24 51:1 51:2 51:6 51:10 51:10 51:11 51:11 51:15 51:19 51:23 52:4 54:4 54:4 54:7 54:15 54:19 55:1 55:7 55:22 55:23 55:25 56:13 56:14 56:15 56:19 56:20 56:23 56:25 57:2 57:2 57:7 57:14 57:15 57:17 57:19 57:20 57:21 58:1 58:4 58:8 58:12 58:16 58:17 58:23 59:1 59:2 59:2 59:6 59:8 59:10 59:13 59:13 59:15 59:19 59:20 59:21 60:1 60:2 60:7 60:9 60:12 60:14 60:18 60:19 60:24 60:25 61:7 61:10 61:11 61:15 61:19 61:22 61:22 62:2 62:6 62:13 62:13 63:2 63:2 63:5 63:11 63:12 63:14 63:20 63:21 63:23 64:5 64:14 64:21 64:23 65:17 65:18 65:22 66:3 66:7 67:7 67:8 67:9 67:16 68:6 68:7 68:13 68:14 68:22 69:19 69:21 69:24 70:2 70:12 70:12 70:15 70:19 70:21 70:24 70:25 71:2 71:4 71:8 71:9 71:13 71:17 71:22 71:22 72:6 72:7 72:8 72:9 72:11 72:20 72:20 72:21 72:22 72:23 72:25 73:5 73:5 73:8 73:10 74:13 75:8 75:10 76:4 76:10 77:3 77:22 77:23 77:24 78:14 78:16 78:19 79:8 79:10 79:10 79:12 79:22 80:3 80:19 80:22 80:23 80:25 81:3 81:5 81:6 81:9 81:10 81:12 81:13 81:15 81:19 81:21 82:2 82:6 82:9 82:14 82:20 82:24 82:25 83:2 83:3 83:9 83:10 83:14 83:16 83:17 83:21 83:23 83:25 84:6 84:12 84:15 84:17 84:17 84:19 84:23 84:24 85:1 85:5 85:19

**you**(301) 85:21 85:22 85:25 87:3 87:16 88:6 88:20 88:21 88:22 89:4 89:4 89:5 89:6 89:6 89:7 89:8 89:12 89:12 89:14 89:20 89:24 90:4 90:5 90:12 90:14 90:21 90:24 90:25 91:3 91:5 91:17 91:18 92:2 92:3 92:12 92:16 92:17 92:22 92:25 93:15 93:16 93:20 93:25 94:8 94:9 94:18 95:3 95:6 95:9 96:14 96:15 96:18 98:16 98:25 99:1 99:4 99:6 99:9 99:11 99:12 100:5 100:6 100:7 100:13 100:16 100:20 100:23 100:25 100:25 101:3 101:6 101:11 101:12 101:15 101:16 101:20 102:2 102:8 102:12 102:13 102:17 102:19 102:25 103:16 103:19 104:4 104:5 104:8 104:9 104:14 104:18 104:21 104:24 105:21 105:23 106:5 106:8 106:9 106:15 106:17 106:18 106:20 106:23 106:25 107:3 107:4 107:6 107:7 107:8 107:10 107:15 107:17 107:21 107:22 108:4 108:15 108:20 108:21 108:23 108:23 109:3 109:6 109:20 109:21 110:1 110:5 110:11 110:15 110:20 110:22 110:23 111:3 111:4 111:7 111:11 111:12 111:14 111:15 111:16 111:19 111:25 112:1 112:4 112:4 112:8 112:20 113:1 113:4 113:10 113:11 113:16 113:17 113:18 113:24 114:2 114:8 114:12 114:18 114:18 114:21 115:1 115:5 115:9 115:15 115:18 115:22 115:23 116:11 116:16 116:18 116:20 117:2 117:8 117:8 117:13 118:5 118:9 118:13 118:15 118:16 118:18 118:22 119:5 119:7 119:8 119:17 119:18 119:20 119:24 119:25 120:4 120:5 120:11 120:14 120:16 120:17 120:20 121:4 121:6 121:8 121:11 121:14 121:17 121:17 121:22 122:3 122:8 122:10 123:9 124:12 125:6 127:7 128:9 128:14 128:18 128:21 128:23 129:2 129:9 129:11 129:13 129:18 129:19 129:23 130:6 130:16 130:18 131:5 131:11 131:14 131:14 132:6 132:9 132:14 132:17 132:22 132:24 133:3 133:6 133:7 133:10 133:18 133:24 134:5 134:8 134:8 134:9 134:9 134:10 134:18 134:24 135:10 135:13 135:18 135:21 135:22 135:23 135:23 136:1 136:3 136:3 136:5 136:6 136:7 136:8 136:11 136:15 136:17 136:20 137:2 137:6 137:16 137:17 137:23

**you**(301) 138:2 138:2 138:5 138:6 138:10 138:10 138:13 138:15 138:19 138:20 139:3 139:4 139:12 139:17 139:17 139:19 139:24 140:1 140:4 140:8 140:9 140:9 140:10 140:11 140:15 140:16 140:19 140:23 140:24 140:25 140:25 141:4 141:4 141:6 141:9 141:9 141:17 141:12 141:21 141:23 142:2 142:6 142:9 142:9 142:12 142:12 142:19 142:24 143:3 143:3 143:3 143:9 143:11 143:14 143:20 143:20 143:22 143:23 144:1 144:3 144:7 144:14 144:16 144:22 144:23 145:1 145:2 145:7 145:8 145:9 145:10 145:13 145:14 145:15 145:18 145:19 145:23 146:9 146:12 146:12 146:14 146:17 146:20 146:24 147:9 147:18 147:21 147:25 148:4 148:8 148:11 148:14 148:17 148:18 148:18 148:20 148:22 148:22 148:23 149:2 149:12 149:12 149:13 149:19 149:20 149:23 149:24 149:25 150:1 150:2 150:3 150:4 150:6 150:6 150:8 150:10 150:13 150:15 150:17 150:18 150:18 150:22 150:24 150:24 150:25 151:3 151:6 151:8 151:9 151:12 151:20 152:2 152:6 152:11 152:24 153:7 153:10 153:10 153:14 154:10 154:15 154:15 154:24 155:3 155:5 155:6 155:8 155:12 155:15 156:17 156:18 156:22 157:5 157:8 157:9 157:16 157:21 157:24 158:3 158:6 158:7 158:7 158:8 158:11 158:11 159:2 159:7 159:8 159:10 159:12 159:12 159:15 159:15 159:19 159:21 159:21 160:3 160:3 160:10 160:11 160:11 160:13 161:15 161:22 161:23 161:25 162:2 162:9 162:9 162:17 162:20 162:22 162:25 163:7 163:7 163:11 163:15 163:17 163:23 164:4 164:9 164:10 164:11 164:12 164:12 164:16 164:16 164:22 165:4 165:6 165:6 165:7 165:8 165:15 165:18 165:20 165:20 165:23 166:1 166:3 166:7 166:10 166:11 166:13 166:14 166:14 166:17 166:18 166:22 166:25 167:3 167:6 167:6 167:8 167:12 167:16 167:17 167:19 168:3 168:7 168:10 168:13 169:1 169:4 169:4 169:13 169:22 170:3 170:8 170:11 170:11 170:21 171:2 171:6 171:9 171:17 171:24 171:24 172:8 172:11 172:11 172:13 172:13 172:17 172:23 172:23 172:24 173:3 173:6 173:7 173:9 173:10 173:14 173:15 173:18 173:22 174:2 174:6

**you**(133) 174:15 174:18 175:1 175:2 175:4 175:7 175:11 176:1 176:4 176:6 176:22 177:4 177:10 177:13 177:14 177:15 178:8 178:11 178:12 178:22 179:2 179:16 179:19 179:25 180:3 180:4 180:5 180:12 180:16 180:18 180:20 180:25 181:3 181:3 181:8 181:13 181:21 182:1 182:6 182:7 182:9 182:14 182:24 183:1 183:4 183:4 183:8 183:13 183:21 184:5 184:6 184:8 184:16 184:17 184:18 184:25 185:2 185:2 185:5 185:5 185:11 185:14 185:16 185:23 186:2 186:7 186:9 186:10 186:11 186:16 186:19 186:19 186:22 186:23 186:24 186:25 187:3 187:4 187:18 187:24 187:24 188:4 188:5 188:8 188:9 188:11 188:12 188:12 188:15 188:15 188:19 188:20 188:22 189:3 189:7 189:12 189:14 189:15 189:15 190:2 190:6 190:7 190:15 190:17 190:17 190:18 190:20 190:22 190:24 190:25 191:7 191:8 191:10 191:12 191:15 191:19 191:24 192:2 192:5 192:13 192:17 192:21 192:24 193:4 193:6 193:10 193:13 193:20 193:21 193:21

**you'd**(1) 22:19

| Word | Page:Line | Word | Page:Line |
|---|---|---|---|
| **you'll**(8) 47:20 58:22 59:2 80:9 82:3 82:24 152:9 158:17 | | **your**(186) 123:21 123:24 124:11 124:16 124:19 124:22 125:6 125:23 126:18 127:1 127:6 127:8 127:10 127:24 128:4 128:9 128:10 128:11 128:11 128:15 128:21 129:12 129:15 131:15 132:14 133:11 133:19 133:22 135:15 135:17 135:21 136:22 136:24 137:11 137:12 138:9 138:20 139:3 139:15 140:15 140:16 140:20 140:23 141:3 141:6 142:3 142:13 142:14 143:6 145:17 145:18 146:4 146:10 146:17 146:22 147:9 147:23 148:4 148:8 148:11 148:12 148:17 148:21 148:21 148:22 148:24 149:1 149:3 149:8 149:14 149:20 150:9 150:22 151:14 152:2 152:12 153:6 153:21 153:22 154:15 154:22 154:24 154:25 155:1 155:7 155:10 155:16 156:1 156:9 156:18 156:24 157:5 157:9 157:13 157:16 157:17 157:21 157:24 158:6 158:7 158:18 158:23 159:15 159:21 160:8 160:22 161:4 161:7 163:12 164:12 165:21 167:9 167:11 167:12 167:16 167:17 167:21 167:23 168:4 168:8 168:11 168:17 169:19 170:3 171:4 174:5 174:9 174:22 175:11 176:12 176:21 177:11 177:22 177:23 178:7 178:17 179:25 180:13 180:15 181:7 181:9 181:23 182:25 183:2 183:23 184:2 184:5 184:13 184:16 184:16 184:21 185:4 185:18 185:23 185:25 186:3 186:19 186:23 187:9 187:12 187:15 187:21 188:8 188:9 188:9 189:1 189:7 189:16 189:16 189:16 189:17 189:17 189:25 190:10 191:11 191:15 191:17 191:25 192:8 192:11 192:24 193:16 193:21 193:22 |
| **you're**(27) 8:24 11:14 16:15 18:22 25:19 27:18 31:5 32:13 35:15 38:24 39:1 78:15 85:24 87:18 88:8 96:15 122:9 125:8 143:23 163:4 174:4 174:18 177:8 179:22 180:4 193:14 193:23 | | |
| **you've**(6) 59:24 68:8 68:13 110:19 123:8 136:25 | | |
| **young**(5) 1:24 4:4 8:19 12:25 129:10 | | **yours**(3) 151:25 155:21 157:18 |
| **your**(301) 4:3 4:7 4:14 4:16 4:18 5:8 5:12 5:12 5:16 5:20 6:4 6:8 7:4 7:15 7:15 7:18 8:2 8:18 8:21 10:16 11:13 11:16 11:20 11:22 12:5 12:6 12:21 12:22 12:24 16:20 17:8 17:16 18:21 18:23 19:1 19:10 19:20 20:6 20:19 21:3 21:4 21:7 21:18 22:11 23:18 23:21 23:23 23:25 24:13 24:17 24:20 24:24 24:25 25:12 25:12 26:8 26:10 26:11 26:17 26:22 28:21 31:12 31:15 32:14 32:16 33:24 35:4 35:7 35:7 35:12 35:15 36:12 36:19 37:13 37:18 37:23 39:1 39:3 40:1 40:11 40:25 41:5 41:7 44:1 44:8 44:14 44:22 44:24 45:8 45:12 45:19 46:3 46:6 46:11 46:11 47:3 47:10 47:22 48:4 48:19 48:24 49:13 50:8 50:11 50:14 50:19 50:19 50:20 51:1 51:10 51:16 51:20 52:17 52:17 53:13 53:15 54:2 54:8 55:18 57:3 58:13 59:7 59:12 59:16 60:5 60:9 60:12 60:16 60:19 62:3 63:3 63:15 63:16 63:24 64:10 64:23 65:4 65:10 65:16 66:2 66:3 66:12 66:15 66:21 67:7 67:8 67:17 67:18 67:20 67:24 69:25 70:6 70:7 70:19 71:17 73:1 73:8 73:12 73:23 74:3 74:16 74:18 74:22 74:23 74:24 75:3 75:7 76:10 76:12 76:20 77:7 77:8 77:12 77:12 77:22 77:24 78:14 78:16 78:18 79:10 79:21 81:15 81:18 81:24 83:8 83:8 83:8 83:19 84:6 84:8 85:7 85:12 85:14 85:23 86:3 86:5 88:14 88:24 88:25 90:1 90:5 90:12 90:17 90:18 91:10 91:11 91:11 91:18 91:25 92:1 92:12 92:14 92:16 93:22 93:25 94:5 94:22 95:14 95:16 95:24 96:4 97:4 97:10 98:10 98:25 99:6 99:10 99:13 100:20 100:22 101:1 101:16 102:9 102:15 102:18 104:11 104:15 104:22 105:5 105:17 105:18 106:14 107:12 107:22 109:18 110:5 110:6 110:8 110:8 110:13 110:20 110:21 110:24 111:3 111:4 111:7 111:12 111:17 112:13 112:21 112:23 112:25 113:13 113:16 114:10 114:14 114:19 115:2 115:3 115:9 115:14 115:17 115:24 116:4 117:1 117:4 117:5 117:12 117:17 118:3 118:5 118:9 118:16 118:17 119:8 119:16 119:24 120:5 120:24 121:8 121:14 121:19 121:21 121:25 122:5 123:5 123:11 123:12 123:12 123:13 123:14 | | **yourself**(2) 73:5 190:6 |
| | | **you'll**(1) 114:8 |
| | | **you're**(4) 116:3 117:11 118:3 120:25 |
| | | **you've**(1) 113:14 |
| | | **zieg**(164) 1:27 8:18 8:18 11:13 45:19 46:3 46:6 46:13 47:3 47:6 51:4 60:16 62:5 63:16 64:19 65:1 65:10 65:16 65:20 66:9 66:15 67:12 67:20 67:23 67:24 69:5 72:4 72:17 73:15 73:19 73:23 74:1 74:7 74:12 75:7 75:10 75:14 75:16 75:19 75:22 76:1 76:3 76:7 76:10 76:12 76:14 76:17 77:12 77:24 78:3 78:14 78:24 78:25 79:5 79:21 85:3 85:7 85:12 86:5 86:14 86:16 86:22 87:10 87:15 87:19 88:6 88:9 88:12 88:16 88:18 90:20 92:4 93:7 93:10 93:11 96:8 96:14 96:23 97:3 97:17 98:12 98:15 98:20 98:22 100:3 102:11 105:12 107:18 109:15 117:15 120:20 122:5 122:16 122:24 123:2 123:16 123:20 124:11 124:22 125:3 125:20 126:2 126:9 126:14 128:24 129:2 129:6 129:8 129:9 130:10 130:13 130:15 131:2 131:4 138:15 138:19 138:23 138:25 142:2 142:8 142:11 142:17 143:2 143:6 143:10 143:15 143:18 149:6 152:20 152:22 152:25 153:2 153:5 153:13 154:3 154:5 154:7 154:9 156:7 157:4 158:22 158:25 159:2 159:6 162:8 170:3 170:7 181:23 181:25 182:15 182:18 182:21 182:23 185:18 185:20 185:22 190:24 191:2 191:4 193:2 193:6 193:8 193:12 193:16 |