IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x   Chapter 11
In re:                                                             :
                                                                   :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                             :
HOLDINGS, INC., a Delaware corporation, et al.,[1]                 :   Jointly Administered
                                                                   :
         Debtors.                                                  :   Hearing Date: January 12, 2011 at 10:00 A.M. (ET)
                                                                   :   Objection Deadline: January 5, 2011 at 4:00 P.M. (ET)
                                                                   :
------------------------------------------------------------------ x

**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363
AND 554 AUTHORIZING THE PLAN TRUSTEE TO RETURN
OR DESTROY ALL HARD COPY LOAN FILES**

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors and debtors-in-possession (the "Debtors"),[2] moves (the "Motion") this Court for entry of an order, pursuant to sections 105, 363 and 554 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Plan Trustee to return or destroy any and all Hard Copy Loan Files in accordance with previous orders of this Court. In support of the Motion, the Plan Trustee respectfully represents and states as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

YCST01:9813373.5                                                                                                   066585.1001

## PRELIMINARY STATEMENT[3]

1.      This Court previously approved a protocol (the "Return Protocol") that authorized the Debtors to (i) permit parties to request Hard Copy Loan Files; (ii) return requested files; and (iii) destroy non-requested files.  Given the broad definition of "Hard Copy Loan Files" in the previous motions and orders, the Plan Trustee believes that the definition encompassed all of the Debtors' loan files and, accordingly, the authority to dispose of the loan files already exists pursuant to those Disposition Orders.[4]  However, the urgency of the relief obtained in the Disposition Orders surrounded the potential financial collapse of the Debtors' main storage facility, ACRC, and to date, the Debtors had focused on Hard Copy Loan Files located at ACRC.  Out of an abundance of caution, the Plan Trustee seeks an order authorizing the Plan Trustee to follow the previous Disposition Orders with respect to all Hard Copy Loan Files, including, but not limited to, those maintained internally and at storage facilities other than ACRC as of the Petition Date.  The majority of the remaining Hard Copy Loan Files are for loans originated in or before 2002.

## JURISDICTION

2.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 363 and 554 of the Bankruptcy Code, as complimented by Rule 6007 of the Federal Rules of Bankruptcy Procedure.

---

[3]     Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to them *infra*.

[4]     The previous motions stated:  "In the ordinary course of the Debtors' prepetition loan origination business, the Debtors maintained individual loan files, including copies of consumer loan applications, closing documents, titles and home appraisals.  The Debtors' loan origination personnel transmitted their mortgage loan files to the Debtors' former headquarters in Melville, NY (collectively, the 'Hard Copy Loan Files') for central storage in compliance with applicable federal and state laws..."

**BACKGROUND**

A.     **General Background**

        3.     On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

        4.     The Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042]. The Plan became effective on November 30, 2010 (the "Effective Date").

        5.     Pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

B.     **The Debtors' Prepetition Retention of Hard Copy Loan Files and Previous Loan File Disposition Orders**

        6.     In the ordinary course of the Debtors' pre-petition loan origination business, the Debtors maintained individual loan files, including copies of consumer loan applications, closing documents, titles and home appraisals. The Debtors' loan origination personnel transmitted their mortgage loan files to the Debtors' headquarters in Melville, NY (collectively, the "Hard Copy Loan Files") for central storage in compliance with applicable federal and state laws. The Debtors utilized American Corporate Record Center, Inc. ("ACRC") as their main storage vendor, with operations located at a warehouse in Melville, NY (the

"ACRC Facility").  In addition to ACRC, Hard Copy Loan Files were maintained at other storage facilities (including, but not limited to Moises Document Storage and GRM Information Management Services) as well as the Debtors' headquarters for employee review and analysis in the ordinary course of their businesses.

7. In September of 2005, the Debtors began imaging the Hard Copy Loan Files and, since that time, have imaged files of approximately 490,000 loans (the "E-Loan Files").  The E-Loan Files are maintained on secure servers, and the Plan Trustee now maintains at least one electronic copy of each E-Loan File.

8. Due to, among other things, the volume of Hard Copy Loan Files and the immediate financial concerns surrounding the ACRC Facility, on December 14, 2007, the Debtors filed their motion [D.I. 2395] (the "Document Destruction/Return Motion") seeking entry of an order, pursuant to sections 105, 363 and 554 of the Bankruptcy Code, authorizing the Debtors to abandon and destroy the Duplicate Hard Copy Loan Files or, alternatively, to return Hard Copy Loan Files (to the extent a request was received prior to destruction of same) to the owner of such loans upon written request (the "Loan File Return Declaration") and payment of all reasonable costs and expenses associated with the retrieval, review and return.

9. On January 14, 2008, the Court entered an order (the "First Disposition Order") authorizing the immediate abandonment and destruction of only those Duplicate Hard Copy Loan Files for loan applications that did not close (i.e., files related to withdrawn, canceled or rejected loans) (the "Imaged Withdrawn/Denied Files") [Docket No. 2724].  Consistent with the First Disposition Order, the Debtors destroyed the hard copies of approximately 130,945 Imaged Withdrawn/Denied Files.

10. After the Debtors supplemented the Document Destruction/Return Motion, the Court entered a second order on February 19, 2008 [Docket No. 3010] (the "Second Disposition Order"), which, among other things, authorized the Debtors to return Hard Copy

4

Loan Files to the legal owners and/or Master Servicers (each, a "Requesting Party") of the underlying loans upon request, upon the filing a Loan File Return Declaration by March 14, 2008 (the "Return Protocol").  The Second Disposition Order expressly provided that the Requesting Party shall be responsible for the reasonable costs and expenses (the "Return Costs") associated with the return of the requested loan files depending upon the preferred delivery method.

11. On June 25, 2008, the Court authorized the Debtors to destroy the Non-Requested Loan Files [Docket No. 4858] (the "Third Disposition Order" and collectively with the First and Second Disposition Orders, the "Disposition Orders").

12. The return of Hard Copy Loan Files pursuant to the Return Protocol and the destruction of non-requested Hard Copy Loan Files has been essentially completed[5] for those files located at the ACRC Facility.

C. **Settlement Regarding Occupation and Use of the Debtors' Headquarters**

13. In November 2003, the Debtors, through AHM SPV, II (the "SPV"), a non-debtor, Delaware limited liability company wholly owned by AHM Corp., undertook a series of transactions to acquire ownership of their corporate headquarters located at 538 Broadhollow Road, Melville, New York (the "Broadhollow Property").

14. Contemporaneously with the acquisition of the Broadhollow Property, the SPV (i) sold the property to the Suffolk County Industrial Development Authority (the "IDA"), (ii) leased the property from the IDA pursuant to that certain Lease Agreement dated November

---

[5] The Debtors received fourteen (14) timely Loan File Return Declarations, requesting approximately 278,995 Hard Copy Loan Files in the aggregate. See D.I. 3271, 3275, 3289, 3290, 3291, 3294, 3297, 3300, 3302, 3304, 3305, 3307, 3327, and 3347.  Of those fourteen Loan File Return Declarations, three did not comply with the terms of the Second Order.  Pursuant to their respective Loan File Return Declarations, Deutsche Bank National Trust Company [D.I. 3305] and LaSalle Bank National Association [D.I. 3347] have agreed to pay applicable Return Costs "only to the extent that sufficient funds are made available from the respective Trusts." In lieu of a Loan File Return Declaration, Wells Fargo Bank, N.A. filed an objection and reservation of rights to the Return Request Deadline established pursuant to the Second Order [D.I. 3307].  The Plan Trustee reserves all of rights with

5

1, 2003 (the "Master Lease") for a term ending on January 31, 2015, and (iii) subleased the property to AHM Corp. pursuant to that certain Agreement of Lease dated November 24, 2003 (the "Sublease").

15. Since the Petition Date, AHM Corp. has continued to occupy a portion of the Broadhollow Property. In an attempt to avoid costly litigation concerning various issues surrounding the Broadhollow Property, the relevant parties engaged in good-faith, arm's-length settlement negotiations to attempt to reconcile their positions and, as a result of such negotiations, reached an agreement. The agreement was memorialized by stipulation (the "Broadhollow Stipulation") and was approved by this Court on August 10, 2009 [Docket No. 7923].

16. Pursuant to (and as set forth more fully in) the Broadhollow Stipulation, and attendant license agreement (the "License Agreement"), AHM Corp. is entitled to use and occupy approximately 8,896 square feet of office space and approximately 13,000 square feet of storage space in the basement parking garage, together with the exclusive use of twenty parking spaces as described more fully in the License Agreement. In exchange for such entitlement, SPV is entitled to a monthly license fee of $15,000.

17. The License Agreement may now be terminated by the landlord upon thirty days' notice.

**D.    Borrower Discovery Requests**

18. On July 28, 2010, the Official Borrowers Committee and certain individual borrower movants (the "Individual Movants") filed their Official Borrowers Committee's and Certain Individual Borrowers' Motion to Allow Borrowers to Pursue Discovery In Furtherance of Claims and Defenses Against Non-Debtor Third Parties and, If

---

respect to these Loan File Return Declarations, including, but not limited to, refusal to deliver Hard Copy Loan Files requested pursuant to the non-compliant Loan File Return Declarations.

Necessary, For Relief from the Automatic Stay, and Request for Inspection of Debtors' Documents and Examinations Concerning Debtors' Records Pursuant to Federal Rule of Bankruptcy Procedure 2004 [D.I. 9053] (the "Borrower Discovery Motion").

19.  The Debtors and the Official Committee of Unsecured Creditors (the "Creditors Committee") objected to the Borrower Discovery Motion [D.I. 9099 and 9094, respectively].

20.  The Debtors, Creditors Committee, Official Borrowers Committee, and Individual Movants entered into good faith negotiations and settled their disputes with respect to the Borrower Discovery Motion, the terms of which were embodied in, and approved by this Court pursuant to, the Order Regarding the Official Borrowers Committee's and Certain Individual Borrowers' Motion to Allow Borrowers to Pursue Discovery In Furtherance of Claims and Defenses Against Non-Debtor Third Parties and, If Necessary, For Relief from the Automatic Stay, and Request for Inspection of Debtors' Documents and Examinations Concerning Debtors' Records Pursuant to Federal Rule of Bankruptcy Procedure 2004 [D.I. 9259] (the "Borrower Discovery Order").

21.  Pursuant to the Borrower Discovery Order entered on September 23, 2010,[6] counsel for the Individual Movants were permitted access to the Debtors' facilities for inspection of the Debtors' hard copy files. To the extent that counsel for the Individual Movants designate documents for preservation on or before April 22, 2011, the Plan Trustee will preserve and maintain such documents in electronic form and will provide such materials to other borrowers upon their request until further order of the Court.

---

[6] The summary of the Borrower Discovery Order is for background purposes only and is qualified in its entirety by the actual terms of the order. If there are any inconsistencies between the summary contained herein and Borrower Discovery Order, the Borrower Discovery Order shall control

7

E.  **Notice of Potential Fire Hazard for the Broadhollow Property**

22. On December 7, 2010, the landlord for the Broadhollow Property provided the Plan Trustee with notice that the Fire Marshal for the Town of Huntington inspected the Broadhollow Property and determined that the building's sprinkler system is not designed for storage of the volume of paper documents currently stored by the Plan Trustee at the Debtors' previous headquarters. The Plan Trustee reserves all rights with respect to such assertions, but recognizes that there is a risk that the landlord could terminate the month-to-month License Agreement. As a result, it is likely that the Plan Trustee may be required to relocate the 11,000 boxes of Documents currently stored at the facility.

## THE DOCUMENTS

23. As noted above, the Plan Trustee currently maintains nearly 11,000 boxes of documents (the "Documents"), which occupies approximately 13,000 square feet of storage space in the Broadhollow Property.

24. Of the 11,000 boxes of Documents, approximately 4,100 boxes are comprised of Hard Copy Loan Files which were previously maintained at other storage facilities (including Moises Document Storage and GRM Information Management Services) or left on employees' desks upon the abrupt cessation of the Debtors' business and termination of the Debtors' main workforce. As noted previously, the Plan Trustee believes that the Disposition Orders already authorize the Plan Trustee to dispose of these Hard Copy Loan Files through the return of such documents to Requesting Parties or through the destruction of any Non-Requested Loan Files. The Plan Trustee seeks the authority, out of an abundance of caution, to follow the previous Disposition Orders with respect to all Hard Copy Loan Files.

25. The remaining 6,800 boxes of Documents (the "Remaining Documents") include (1) broker packages; (2) construction lending; (3) corporate real estate; (4) employee desk contents; (5) Great Oak storage; (6) payroll files; (7) department reports; (8) risk

8

management vendor files; (9) employee time and expense reports; (10) accounting records; (11) human resources files; (12) legal files; (13) money room/wire documentation; (14) treasury files; (15) documentation relating to an acquired mortgage company, Waterfield; and (16) documents relating to shortfall transactions.  Such Remaining Documents will be maintained subject to further order of this Court.

## RELIEF REQUESTED

26. By this Motion, the Plan Trustee requests entry of an order authorizing the Plan Trustee to return or destroy any and all Hard Copy Loan Files in accordance with the Disposition Orders.

## BASIS FOR RELIEF

### A. Applicable Statutory Authority

27. Section 554 of the Bankruptcy Code provides that "[a]fter notice and a hearing, the Plan Trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  Additionally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction."  2 Collier on Bankruptcy, ¶ 105.01 at 105-6 (15th ed. rev. 1999).

28. As is the case with a Plan Trustee's decision to reject an executory contract,[7] the Court should apply the business judgment standard in reviewing the Plan Trustee's decision to abandon property that is either of inconsequential value, stored electronically, or burdensome to the estate.  See In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The

---

[7] The decision to reject an executory contract is subject to the court's finding that such decision is a product of the debtor in possession's sound business judgment. See Sharon Steel Corp. v. National Fuel Gas Distr. Corp., 872 F.2d 36, 39 (3d Cir. 1989).

9

trustee's power to abandon property is discretionary. . . . The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.") (internal citations omitted); Reich v. Burke (In re Reich), 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985) ("[I]f a trustee feels an asset is of inconsequential value and benefit to the estate *or* that it is 'burdensome to the estate,' he may abandon it." (emphasis in original)).

29. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the trustee's or debtor's reasonable business judgment. See e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991) (same).

**B.    This Court Should Authorize the Plan Trustee to Return or Destroy Any and All Hard Copy Loan Files in Accordance With the Disposition Orders**

30. Given the broad language of the Disposition Orders, the Plan Trustee believes that this Court has already provided the relief requested with respect to the disposition of <u>all</u> Hard Copy Loan Files. However, out of an abundance of caution, the Plan Trustee seeks authority to dispose of the <u>all</u> Hard Copy Loan Files, including those files not located at the ACRC Facility at the time the Disposition Orders were entered.

31. Given that the Debtors shut down the loan origination business over three years ago, sold the servicing business, and liquidated most of their assets prior to the Effective

Date, combined with the fact that the Hard Copy Loan Files relate to loans originated over eight years ago, the Plan Trustee has no need for the Hard Copy Loan Files in the remaining administration of the chapter 11 cases. Any continuing expenses relating to the Hard Copy Loan Files is an unnecessary administrative burden on these estates.

32. Moreover, the Plan Trustee submits that utilizing the Return Protocol for the Hard Copy Loan Files will not adversely affect any parties in interest in these cases. The Debtors provided ample notice and opportunity for parties in interest to request the return of wanted loan files. The Plan Trustee will review each Hard Copy Loan File to determine whether such file is a Requested Loan File pursuant to the previously submitted Loan File Declarations. Each Requested Loan File will be returned to the Requesting Party pursuant to the Disposition Orders, and any Hard Copy Loan Files will be destroyed in compliance with applicable regulations. Given that each loan file has been reviewed to limit the possibility that the Plan Trustee is not destroying files related to the Requested Loan Files, the destruction of all Hard Copy Loan Files that have not been requested at this time is warranted and will not prejudice any parties in interest.

33. More significantly, failure of the Plan Trustee to minimize the volume of paper stored at the Broadhollow Property may result in fire safety concerns at the Broadhollow Property. The Plan Trustee may also be forced to incur transportation and storage expenses to move the unnecessary documents – or if the landlord terminates the License Agreement, the Plan Trustee would be forced to seek temporary office and storage space and relocate the remaining employees and assets (including electronic servers). By simply authorizing the Plan Trustee to dispose of the Hard Copy Loan Files, the Plan Trustee will reduce the volume of paper files by over 35%. This reduction will greatly reduce landlord concerns and provide additional space for Access Requesting Parties to inspect the Remaining Documents.

11

## **NOTICE**

34. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) all claimants whose claims have not been resolved; (iii) counsel to the Individual Movants; (iv) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (v) counsel to the Agent for the Debtors' Postpetition Lender; (vi) the offices of the attorneys general of the fifty states and the District of Columbia; (vii) the Federal Trade Commission; (viii) counsel to American Home Mortgage Servicing, Inc.; (ix) the Securities and Exchange Commission; (x) the SPV; and (xi) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Plan Trustee submits that no other or further notice is required.

## **CONCLUSION**

WHEREFORE, the Plan Trustee respectfully requests that this Court enter an order (i) authorizing the Plan Trustee to return or destroy any and all Hard Copy Loan Files in accordance with the Disposition Orders; and (ii) granting the Plan Trustee any further relief that the Court deems just and proper.

| | |
|---|---|
| Dated: December 22, 2010<br>Wilmington, Delaware | YOUNG, CONAWAY, STARGATT & TAYLOR, LLP<br><br>*/s/ Margaret Whiteman Greecher*<br>Sean M. Beach (No. 4070)<br>Margaret Whiteman Greecher (No. 4652)<br>The Brandywine Building<br>1000 West Street - 17th Floor<br>P.O. Box 391<br>Wilmington, Delaware  19899<br>Telephone: (302) 571-6600<br>Facsimile: (302) 571-1253<br><br>-and-<br><br>HAHN & HESSEN LLP<br>Mark S. Indelicato<br>Edward L. Schnitzer<br>488 Madison Avenue<br>New York, New York 10022<br>Telephone: (212) 478-7200<br>Facsimile: (212) 478-7400<br><br>*Co-Counsel to the Plan Trustee* |

13

YCST01:9813373.5                                                                                                                   066585.1001