UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC. ET AL.,<br><br>Debtors | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered |

### SUBORDINATION STATEMENT (CLASS 2C1) OF SOVEREIGN BANK FSB

Pursuant to Article 4(I)(3) of the Amended Chapter 11 Plan of Liquidation of the Debtors dated as of February 18, 2009 (the "Plan"), and confirmed by this Court by order dated February 23, 2009 and pursuant to the Notice of Occurrence of Effective Date of the Plan dated November 30, 2010, Sovereign Bank FSB ("Sovereign"), the holder of a claim in Class 2C(1) of the Plan, submits this Subordination Statement and asserts that it holds a Senior Unsecured Claim entitled to the benefits of subordination as referenced in said Article. The following is submitted as the basis therefor.

1.  Sovereign timely filed two existing proofs of claim, believed to be No. 8529 and 8530, in the sums of $13,558,882.64 and $13,837,333.58, respectively.

2.  Claim No. 8530 is against American Home Mortgage Investment Corp. ("AMHIC")

3.  Claim No. 8530 relates to losses arising from certain swap transactions. A copy of Claim 8530, exclusive of copies of the relevant documents, but inclusive of an extensive discussion of background and loss calculation, is attached hereto and made a part hereof,

4.  The Plan Supplement papers filed in the case show several trust indentures (the "Indentures") in which the securities issued with respect thereto were expressly made subordinate to Senior Debt or Senior Indebtedness of either the Issuer (Company) or, where relevant, the Guarantor of the Issuer of such securities.

5.  The Indentures that are relevant to Sovereign holding a Senior Unsecured Claim under Article 4(I)(3) of the Plan are:

    a.  Junior Subordinated Convertible Debenture Indenture dated as of June 28, 2007 between AMHIC and Wilmington Trust Company, as Trustee

("Wilmington"), relating to the proceeds from the issuance by AHM Capital Trust I of certain securities;

b. Junior Subordinated Indenture dated May 13, 2005 between AHMIC and Wilmington relating to the proceeds from the issuance by Baylis Trust I of certain securities; and

c. Junior Subordinated Indenture dated November 14, 2005 between American Home Mortgage Holdings, Inc., as Issuer, and AHMIC, as Guarantor, and Wilmington relating to the proceeds from the issuance by Baylis Trust III of certain securities.

6. In each Indenture, the indebtedness covered thereby is expressly made subordinate to the Senior Debt or Indebtedness of AHMIC. The relevant definitions of Senior Debt and Debt (or substantially similar terms) clearly embrace the indebtedness to Sovereign arising from the swap transactions described in its proof of claim, and the swap transaction documents did not involve the issuance of securities by AHMIC or any affiliate that rank pari passu with or junior in right of payment to the relevant Indenture.

SOVEREIGN BANK FSB

By its attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: January 4, 2011

/s/ Guy B. Moss
Guy B. Moss (BBO No. 357960)
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108-2003
Telephone: (617) 880-3466
Facsimile: (617) 362-3466
gmoss@riemerlaw.com

1024543.1

2

COPY

## PROOF OF CLAIM

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

In Re: American Home Mortgage Holdings, Inc., et al., Debtors.
Chapter 11
Case No. 07-11047 (CSS)
Jointly Administered

Name of Debtor Against Which Claim is Held: American Home Mortgage Investment Corp.
Case No. of Debtor: 07-11048

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

Sovereign Bank FSB
Attn: Stephen E. Burse, Vice President
75 State Street
MA1-SST-0413
Boston, MA 02109

Telephone number: (617) 346-7290
Email Address: sburse@sovereignbank.com

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☒ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor:

Check here if this claim:
☐ replaces   ☐ amends a previously filed claim, dated:

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☒ Other  Contract: swap party  (explain)

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and compensation (fill out below)
   Last Four Digits of your SS#: ____
   Unpaid compensation for services performed
   from _____ to _____

2. **Date debt was incurred:** June 7, 2005

3. **If court judgment, date obtained:** N/A

4. **Total Amount of Claim at Time Case Filed:** $13,837,333.58 + _____ + _____ = $13,837,333.58 Plus accruing losses, fees & expenses after date below
   (unsecured nonpriority) (secured) (unsecured priority) (Total)
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate   ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $ _____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

6. **Unsecured Nonpriority Claim:** $ 13,837,333.58
   ☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim
   Amount entitled to priority $ _____
   Specify the priority of the claim:
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
   ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  SEE ATTACHED
   DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

Date: Jan. 7, 2008

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Stephen E. Burse, Vice President

FILED / RECEIVED
JAN 10 2008
EPIQ BANKRUPTCY SOLUTIONS, LLC

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# ATTACHMENT TO PROOFS OF CLAIM
# FILED BY SOVEREIGN BANK FSB

Re: American Home Mortgage Holdings, Inc. et al. (the "Debtors"), Chapter 11 No. 07-11047 (CSS) Jointly Administered (the "Proceedings")

## A. Background

1. Broadhollow Funding, LLC ("Broadhollow"), American Home Mortgage Corp. ("American Home"), American Home Mortgage Investment Corp. ("AHMIC"), and American Home Mortgage Servicing, Inc. ("Servicer") are parties to a certain Mortgage Loan Purchase and Servicing Agreement dated as of May 27, 2004 (the "Broadhollow Purchase Agreement") pursuant to which Broadhollow from time to time purchased mortgage loans from American Home.

2. Melville Funding, LLC ("Melville"), American Home, and others are parties to a certain Mortgage Loan Purchase and Servicing Agreement dated as of May 27, 2004 (together with the Broadhollow Purchase Agreement, the "Purchase Agreements") pursuant to which Melville from time to time purchased mortgage loans from American Home.

3. Various entities acting as swap providers (a "Swap Provider"), including Calyon New York Branch ("Calyon"), are parties to ISDA Master Agreements respectively between such Swap Provider and Broadhollow, and between such swap provider and Melville, in each case as identified on Exhibit "A" attached hereto (a "Front-end Swap Agreement"), pursuant to which, among other things, each Swap Provider has exposure, to certain fluctuations in the value of mortgage loans purchased by Broadhollow and Melville, as the case may be, pursuant to the Purchase Agreements (the "Market Exposure").

4. Calyon and Sovereign Bank FSB ("Sovereign") entered into an ISDA Master Agreement pursuant to which, among other things, Sovereign would pay Calyon a specified portion of Calyon's Market Exposure.

5. Each Swap Provider is also a party to ISDA Master Agreements, respectively, between such Swap Provider and AHMIC and between such Swap Provider and Servicer, in each case as identified on Exhibit "B" attached hereto (a "Back-end Swap Agreement"), pursuant to which, among other things, AHMIC or Servicer, as applicable, is obligated to pay to each Swap Provider such Swap Provider's Market Exposure to the extent funded by such Swap Provider as well as such Swap Provider's fees, costs and expenses relating to any defaults thereunder.

6. With respect to the Broadhollow facility, Servicer is directly obligated to Sovereign under a Back-end Swap Agreement, and AHMIC guaranteed Servicer's performance thereunder.

7. With respect to the Melville facility, AHMIC is directly obligated to Sovereign under a Back-end Swap Agreement.

8. In order to reduce the Market Exposure, i.e. to maximize the value of the mortgage loans involved and minimize the Swap Providers' claims, the Debtors sought and obtained a court order in the Proceedings (the "Sale Order") dated August 22, 2007, providing for a sale (the "Sale") under 11 U.S.C. § 363 of substantially all of the mortgage loans owned by Broadhollow and Melville that were part of the Purchase Agreements. That Sale has taken place and, on information and belief, has been fully consummated. Notwithstanding the Sale, there still remained Market Exposure under the Front-end Swap Agreements and, accordingly, losses were sustained by the Swap Providers as discussed below. In addition, approximately $8.4 million of high-cost mortgage loans were excluded from the Sale and hence remain unsold. They are in the process of being liquidated. On information and belief, there is a substantial likelihood that they are valueless and will be written down to zero, resulting in claims of that amount against the Swap Providers under the facility.

9. The Broadhollow and Melville purchase and swap programs referenced above involved $3.25 billion. Of that sum, the original notional exposure of Calyon, as one of the Swap Providers, in regard to the Front-end Swap Agreements, was $1 billion. Sovereign's notional exposure to Calyon is 25% of Calyon's Market Exposure (capped at $250 million), accounting indirectly for 7.69% of the total facility. This proof of claim relates solely to Sovereign's share of Calyon's Market Exposure and, on information and belief, is not duplicated by any action taken separately by Calyon or any other party.

B. **Documents**

1. The following documents relate to so-called back-end swap arrangements and the swap arrangement between Sovereign and Calyon. So-called front-end swap arrangements provided credit enhancements in connection with the sale of mortgage loans by American Home to Broadhollow and Melville pursuant to the Purchase Agreements, which entities generated the respective purchase price therefor by issuing commercial paper pending the sale or securitization of such loans to third party purchasers while the servicing of the loans remained with Servicer.

2. The back-end swap arrangements enabled the respective Swap Providers, subject to credit risk, to recoup their swap losses from one or another of the American Home Mortgage entities which entered into Back-end Swap Agreements or guarantees thereof.

3. The documents relating to the facility are voluminous. Sovereign will attach hereto those establishing its most direct contractual relationship with one or another of the Debtors. All others are available upon request.

4. <u>Calyon/Sovereign swap documents (Exhibit "C" attached).</u>

   a. Master Agreement dated as of June 7, 2005 by and between Calyon and Sovereign;

   b. Credit Support Annex to Schedule to Master Agreement;

   c. Confirmation dated June 7, 2005 to Sovereign from Calyon relating to an underlying swap transaction dated May 27, 2004 by and between Calyon and Melville as Reference Counterparty; and

   d. Confirmation dated June 7, 2005 to Sovereign from Calyon relating to an underlying swap transaction dated May 27, 2004 by and between Calyon and Broadhollow as Reference Counterparty.

5. <u>Back-end swap documents (Melville) (Exhibit "D" attached).</u>[1]

   a. Master Agreement dated as of June 7, 2005 by and between Sovereign and AHMIC;

   b. Credit Support Annex to Schedule to Master Agreement; and

   c. Confirmation dated June 7, 2005 to AHMIC from Sovereign relating to an underlying swap transaction dated as of May 27, 2004 by and between Calyon as Reference Counterparty and Melville as underlying Swap Counterparty.

6. <u>Back-end swap documents (Broadhollow) (Exhibit "E" attached).</u>

   a. Master Agreement dated as of June 7, 2005 by and between Sovereign and Servicer;

   b. Credit Support Annex to Schedule to Master Agreement;

   c. Confirmation dated June 7, 2005 to Servicer from Sovereign relating to an underlying swap transaction dated as of May 27, 2004 by and between Calyon as Reference Underlying Swap Counterparty and Broadhollow as Underlying Swap Counterparty; and

   d. Guarantee dated June 7, 2005, of Servicer's obligations to Sovereign under Master Agreement.

7. <u>2000 ISDA Definitions</u> (Adopted by each Master Agreement. See Art. V(2) thereof) (Exhibit "F" attached).

---

[1] Exhibit D is not attached to the Proof of Claim filed against Servicer.

C. **Loss Calculations**

1. <u>General Swap Losses</u>

   a. The chart attached hereto as Exhibit "G" evidences actual swap losses sustained by Sovereign to date of $12,983,363.93 arising from both the Broadhollow and Melville facilities.

   b. Of that sum, $12,709,281.20 (or 97.9%) is attributable to Broadhollow and $274,082.73 (or 2.1%) is attributable to Melville.

2. <u>Unliquidated Anticipated Swap Loss</u>

   a. As noted above, $8,400,000 in high-cost mortgage loans (the "High-Cost Loans") in the general facility were not sold in the Sale and are still in the process of being liquidated. Because of problems associated therewith, there is a substantial basis to believe that these loans are worthless and will prove not saleable. Sovereign's exposure is, as noted above, 7.69% of the total $3.25 billion program and, therefore, the anticipated claim to be made against it in respect to such a loss on final disposition of the High-Cost Loans will be $645,960.00, of which 100% is attributable to Broadhollow.

3. <u>Fees, Costs and Expenses</u>

   a. Mortgage Data Management Corporation ("MDMC") was hired by the Swap Providers in August, 2007, in order to better understand the Debtors' mortgage loan portfolio and formulate a sale proposal to the Debtors, which effort helped produce the Sale Order and the Sale. MDMC billed CitiCorp Global Markets, Inc. and that entity was reimbursed pro-rata by each Swap Provider and Sovereign. With an allocable share of 7.69%, Sovereign's share of the total bill was $77,241.86, of which $75,619.78 is attributable to Broadhollow and $1,622.08 is attributable to Melville.

   b. Sovereign hired Riemer & Braunstein LLP ("R&B"), Three Center Plaza, Boston, MA 02108, to represent it in connection with the Debtors' defaults. Commencing July 30, 2007 and through January 7, 2008 R&B's billings, including as yet unbilled work-in-process, have been:

      (1) September 20, 2007 statement (includes July 30 - August 31, 2007 time charges) $69,723.00 fees, plus $168.22 expenses, for a total of $69,891.22.[2]

---

[2] This figure excludes time charges on the invoice prior to July 30, 2007 and also reflects a 10% client discount accounted for in a later R&B invoice dated November 13, 2007.

-4-

  (2) November 13, 2007 statement (includes September 1 - November 6, 2007 time charges) $53,487.00 fees, plus $484.32 expenses, for a total of $53,971.32.
  (3) Work-in-process (calculated at 90% of standard hourly rates) for November 7, 2007 - January 7, 2008 involves time charges of $6,905.25.
  (4) Total R&B billings, including net time charges remaining to be billed, from July 30, 2007 through January 7, 2008 are $130,767.79, of which $128,021.66 is attributable to Broadhollow and $2,746.13 is attributable to Melville.

4. <u>Loss Calculation Re-cap</u>

 a. <u>Broadhollow</u>

| | | | |
|---|---|---|---:|
| | (1) | Swap Losses (confirmed) | $ 12,709,281.20 |
| | (2) | Swap Loss (unliquidated) | 645,960.00 |
| | (3) | Fees and expenses | |
| | | (i) MDMC | 75,619.78 |
| | | (ii) Legal | <u>128,021.66</u> |
| | | | $ 13,558,882.64 |

 b. <u>Melville</u>

| | | |
|---|---|---:|
| (1) Swap Losses (confirmed) | | $  274,082.73 |
| (2) Fees and Expenses | | |
|  (i)  MDMC | | 1,622.08 |
|  (ii) Legal | | <u>2,746.13</u> |
| | $ | 278,450.94 |

 c. <u>Broadhollow and Melville</u>  $ 13,837,333.58

**D.** <u>**Reservation of Rights**</u>

   In addition to the high-end mortgage loan exposure identified in sections A.7 and C.2 above, Sovereign may sustain other and further swap-related losses under the applicable Front-end and Back-end Swap Agreements. Accordingly, it reserves the right to amend this claim to add such damages, if they arise, as well as to add any other and further fees, costs and expenses arising after January 7, 2008 and relating to the swap program described in this proof of claim.

**NOTE: Any communications concerning this Proof of Claim must also be noticed to:**

Guy B. Moss, Esq.<br>
Riemer & Braunstein LLP<br>
3 Center Plaza<br>
Boston, MA 02108<br>
Tel: 617-880-3466

-6-

Fax: 617-692-3466
Email: gmoss@riemerlaw.com

58025.523.1055416.5



## SCHEDULE IA TO AGREEMENT

## FRONT-END SWAP AGREEMENT INFORMATION

| Swap Provider | Counterparty | Date |
|---|---|---|
| Citibank, N.A. | Broadhollow Funding, LLC | June 7, 2005 |
| Citibank, N.A. | Melville Funding, LLC | June 7, 2005 |
| ABN Amro Bank N.V. | Broadhollow Funding, LLC | May 27, 2004 |
| ABN Amro Bank N.V. | Melville Funding, LLC | May 27, 2004 |
| Calyon New York Branch | Broadhollow Funding, LLC | May 27, 2004 |
| Calyon New York Branch | Melville Funding, LLC | March 9, 2004[1] |
| Bank of America, N.A. | Broadhollow Funding, LLC | May 27, 2004 |
| Bank of America, N.A. | Melville Funding, LLC | May 27, 2004 |

---

[1] The ISDA Master Agreement between Calyon New York Branch and Melville Funding, LLC is dated March 9, 2004, however, the Schedule, Credit Support Annex and Confirmation thereto are each dated May 27, 2004.

DB02:6189775.1


"B"

## SCHEDULE IB TO AGREEMENT

### BACK-END SWAP AGREEMENT INFORMATION

| Swap Provider | Counterparty | Date |
|---|---|---|
| Citibank, N.A. | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | June 7, 2005 |
| Citibank, N.A. | American Home Mortgage Investment Corp. | June 7, 2005 |
| ABN Amro Bank N.V. | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | May 27, 2004 |
| ABN Amro Bank N.V. | American Home Mortgage Investment Corp. | May 27, 2004 |
| Calyon New York Branch | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | May 27, 2004, as amended and extended |
| Calyon New York Branch | American Home Mortgage Investment Corp. | May 27, 2004 |
| Sovereign Bank FSB | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | June 7, 2005 |
| Sovereign Bank FSB | American Home Mortgage Investment Corp. | June 7, 2005 |
| Bank of America, N.A. | American Home Mortgage Servicing, Inc. (f/k/a Columbia National Incorporated) | May 27, 2004 |
| Bank of America, N.A. | American Home Mortgage Investment Corp. | May 27, 2004 |

| CLAIM 1/3/08 | | | | | | |
|---|---|---|---|---|---|---|
| Value Date | Payment Type | Swap Transaction | Amount Received | | Amount Paid | Actual Amount Paid to Calyon | Payment Date |
| 8/1/2007 | Margin Call -paid to Calyon | AHMSI | | | -$400,000.00 | -$400,000.00 | 8/1/2007 |
| | | | | | | | |
| 10/4/2007 | Partial Termination | Broadhollow | | | $ (11,381,765.13) | | |
| 10/4/2007 | Partial Termination | Melville | | | $ (237,878.58) | | |
| | | Total | $ | - | $ (11,619,643.71) | | |
| | | | | | | | |
| | | Net | | | $ (11,619,643.71) | Paid to Calyon 95% $ (11,038,661.52) | 10/15/2007 |
| | | | | | | | |
| 8/1/2007 | Partial Termination | Broadhollow | $ | 4,386.97 | | | |
| 8/2/2007 | Partial Termination | Broadhollow | | | $ (30,671.71) | | |
| 8/3/2007 | Partial Termination | Broadhollow | | | $ (371.33) | | |
| 8/9/2007 | Partial Termination | Broadhollow | | | $ (3,271.24) | | |
| 8/13/2007 | Partial Termination | Broadhollow | | | $ (929.47) | | |
| 8/20/2007 | Partial Termination | Broadhollow | $ | 254.36 | | | |
| 8/22/2007 | Partial Termination | Broadhollow | | | $ (78.27) | | |
| 8/23/2007 | Partial Termination | Broadhollow | | | $ (371.33) | | |
| 8/24/2007 | Partial Termination | Broadhollow | | | $ (39.52) | | |
| 8/27/2007 | Partial Termination | Broadhollow | | | $ (26.44) | | |
| 8/28/2007 | Partial Termination | Broadhollow | $ | 69.36 | $ (32.49) | | |
| 8/30/2007 | Partial Termination | Broadhollow | | | $ (23.46) | | |
| 9/13/2007 | Partial Termination | Broadhollow | | | $ (4,030.31) | | |
| 9/18/2007 | Partial Termination | Broadhollow | | | $ (14.65) | | |
| 9/19/2007 | Partial Termination | Broadhollow | | | $ (60.60) | | |
| 9/28/2007 | Partial Termination | Broadhollow | | | $ (26.16) | | |
| 10/11/2007 | Partial Termination | Broadhollow | | | $ (1,164.63) | | |
| | | Total | $ | 4,710.69 | $ (40,740.28) | | |
| | | | | | | | |
| | | Net A | | | $ (36,029.59) | | |
| | | | | | | | |
| 8/20/2007 | Issuer Cost of Funds | Broadhollow | | | $ (406,312.94) | | |
| 8/20/2007 | Interest Collections | Broadhollow | $ | 607,755.38 | | | |
| 8/20/2007 | Issuer Cost of Funds | Melville | | | $ (12,087.99) | | |
| 8/20/2007 | Interest Collections | Melville | $ | 1,493.15 | | | |
| | | Total | $ | 609,248.53 | $ (418,400.93) | | |
| | | | | | | | |
| | | Net B | | | $ 190,847.60 | | |

| Value Date | Payment Type | Swap Transaction | Amount Received | | Amount Paid | | | Actual Amount Paid to Calyon | Payment Date |
|---|---|---|---|---|---|---|---|---|---|
| 9/20/2007 | Issuer Cost of Funds | Broadhollow | | | $ | (608,387.93) | | | |
| 9/20/2007 | Interest Collections | Broadhollow | $ | 447,121.62 | | | | | |
| 9/20/2007 | Issuer Cost of Funds | Melville | | | $ | (8,828.06) | | | |
| 9/20/2007 | Interest Collections | Melville | $ | 6,810.89 | | | | | |
| | | Total | $ | 453,932.51 | $ | (617,215.99) | | | |
| | | | Net C | | $ | (163,283.48) | | | |
| 10/4/2007 | Partial Termination | BH Performing | | | $ | (443,093.84) | | | |
| 10/4/2007 | Partial Termination | Broadhollow Non-Performing (Mkt Loss Only) | | | $ | (916,920.94) | | | |
| | | Net D (BH PTs) | | | $ | (1,360,014.58) | | | |
| 10/4/2007 | Partial Termination | Melville Performing | | | $ | (10,748.33) | | | |
| 10/4/2007 | Partial Termination | Melville Non-Performing (Mkt Loss Only) | | | $ | (20,083.60) | | | |
| | | Net E (Melville PTs) | | | $ | (30,831.93) | | | |
| | | Collateral Posted to Calyon Deduction-refer to payment made on 8/1/07 | Net F | | $ | 400,000.00 | | | |
| | | | | | | | Paid to Calyon Net A,B,C,D,E,F | $ (999,311.98) | 10/25/2007 |
| 10/22/2007 | Issuer Cost/Interest Collections | Broadhollow | | | $ | (541,045.16) | Sovereign share 25% | | |
| 10/22/2007 | Issuer Cost/Interest Collections | Melville | | | $ | (4,345.27) | Sovereign share 25% | $ (545,390.43) | 11/19/2007 |
| | | | | | | | TOTAL PAYMENTS MADE TO CALYON FINANCIAL | -$12,983,363.93 | |

3

## CERTIFICATE OF SERVICE

    I, Guy B. Moss, certify that on January 4, 2011, I served a copy of the foregoing Subordination Statement (Class 2C1) of Sovereign Bank FSB on the following by (i) Federal Express next day delivery and (ii) first class mail, return receipt requested.

    Steven D. Sass
    AHM Liquidating Trust
    P.O.Box 10550
    Melville, NY 11747
                (the Plan Trustee)

    Hahn & Hessen LLP
    Att'n: Mark S. Indelicato, Esq.
    488 Madison Avenue
    New York, NY 10022
                (counsel to the Plan Trustee)

    Wilmington Trust Company
    Att'n:  Patrick Healy, Vice-President
    400 Madison Avenue
    4th Floor
    New York, NY 10017
                (Indenture Trustee)

                                                /s/  Guy B. Moss
                                                Guy B. Moss

1143354.2