IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | ) | Case No. 07-11047 (CSS) |
| a Delaware corporation, *et al.*[2], | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hearing: 2.10.11 @ 10:00 AM EST |
| | ) | Objections Due: 2.3.11 @ 4:00 PM EST |

## MOTION OF LAURA BEALL FOR ALLOWANCE
## AND PAYMENT OF ADMINISTRATIVE CLAIM

Laura Beall ("***Movant***" or "***Beall***"), a creditor of the above-captioned Debtors (the "***Debtors***") pursuant to 11 U.S.C. 503(b)(1)(A) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9014, and hereby moves for allowance and to compel payment of Movant's administrative expense claim (the "***Administrative Expense Claim***"). In support thereof, Movant respectfully states the following:

### BACKGROUND

1.  This Court has jurisdiction to hear and decide this matter pursuant to 28 U.S.C. § 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

2.  On August 4, 2007 (the "***Petition Date***"), Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("***Bankruptcy Code***").

    A.  **Ms. Beall's Loan with Debtors**

---

[2] The Debtors are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; AHM SV, Inc. (f/ka American Home Mortgage Servicing, Inc.), a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability corporation; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation.

3. Ms. Beall applied for a mortgage loan with Eagle Funding Group, LTD ("Eagle"), as agent for American Brokers Conduit ("ABC") on or about March 15, 2004.

4. After the loan was extended, Eagle transferred the loan to Debtor American Home Mortgage ("AHM"). On information and belief, ABC did not shop the loan with other lenders and instead simply referred it to AHM.

5. Further, the original terms of the loan that Ms. Beall was offered were different from what was contained in the final loan.

### B. Ms. Beall's Post-petition Efforts to Obtain Information

6. Pursuant to, *inter alia*, the Truth in Lending Act (15 U.S.C. §§ 1601 *et seq.*, "TILA"), Ms. Beall attempted to obtain information about her loan file from the Debtors. While these efforts may have begun pre-petition, Ms. Beall continued such efforts on a post-bankruptcy basis.

7. These post-petition efforts included attempting to require the Debtors to disclose the identity of the master servicer of her loan.

8. Ms. Beall actively sought information about her loan from Debtors following the Petition Date. These efforts lasted many months and included, without limitation:

   a. Reviewing court records to cross-reference the trust that owned the loan;

   b. Communicating with Debtors' counsel about whether AHM owned the loan (Ms. Beall was originally informed that AHM did own the loan, and then later informed that it didn't);

   c. Communicating third parties in an effort to obtain information requested from Debtors; and

   d. Appearing in Court several times.

9. Ms. Beall spent well over 100 hours of her time attempting to obtain the information requested. In addition, she incurred significant out-of-pocket expenses which she is in the process of documenting.

10. While it is difficult to value Ms. Beall's time as she works on a commission basis, she believes that her time is worth $100.00 per hour at a *minimum* and that she spent approximately 140 hours after the Petition Date attempting to obtain the information requested.

11. Accordingly, Ms. Beall estimates the value of her claim to be in excess of $15,000 (the "Administrative Expense Claim").

C. **Ms. Beall's Pre-Petition Claim**

12. Ms. Beall does not believe that her pre-petition claim is relevant to her administrative claim and includes this discussion in an abundance of caution and by way of full disclosure.

13. On January 29, 2008, Ms. Beall filed a pre-petition claim (claim no. 9845 the "Pre-petition Claim").[3] Ms. Beall filed her claim as secured based on her belief that she held a right of set-off against any claim that Debtors might have against her. However, Debtors subsequently informed Ms. Beall that they had previously sold the loan and that Debtors had no claim against Ms. Beall. Based on that representation, Ms. Beall later agreed to recharacterize her claim as unsecured.[4]

---

[3] Although the Pre-petition Claim was filed one week after the general pre-petition claims bar date, Debtors agreed not to object to the Pre-petition Claim on that basis.

[4] The Pre-Petition Claim did not include a request for priority treatment. It may be noted, however, that the claim form did not have any box or other space to request administrative priority treatment as the form was to relate solely to pre-petition acts of the Debtors. See Bar Date Order (DI 1708). There was no administrative claims bar date set in this bankruptcy prior to the effective date of the Debtors' plan of reorganization.

14. Subsequently, Ms. Beall moved for and, by Order dated April 24, 2008, obtained relief from the automatic stay to liquidate all or some of the claims asserted in the Pre-petition Claim. Ms. Beall then commenced an action, later dismissed, in Virginia federal court to pursue certain of her claims asserted in the Pre-petition Claim.

15. Debtors then objected to the Pre-petition Claim on grounds of *res judicata*.

16. By consent Order dated October 15, 2009 (DI 8186), the Pre-petition Claim was characterized as non-priority and unsecured but the order did not address the allowance of the claim.

17. By way of background only, and without making any admission, Ms. Beall and Debtors had discussed a resolution of the claim objection under which Debtors and Ms. Beall would, among other things, exchange releases. However, that resolution was never finalized. Ms. Beall may or may not still be amenable to an out-of-court resolution, but in any event, files this Motion to preserve her rights.

## RELIEF REQUESTED

18. Section 503(b)(1)(A) of the Bankruptcy Code provides that "the actual, necessary costs and expenses of preserving the estate" shall be allowed as an administrative expense. 11 U.S.C. § 503(b)(1)(A). In the Third Circuit, section 503(b)(1)(A) "has been broadly interpreted to include 'actual, necessary costs and expenses' that benefit the Debtors' estate both directly and indirectly." *Elsom v. Woodward & Lothrop, Inc.*, 1997 WL 476091, *3 (E.D. Pa. 1997)(*citing In re B. Cohen and Sons Caterers, Inc.*, 143 B.R. 27, 28 (E.D. Pa. 1992)). The policy behind section 503(b) is to facilitate the rehabilitation of insolvent Debtors by encouraging third parties to provide those Debtors with necessary goods and services. *See In re B. Cohen and Sons Caterers, Inc.*, 143 B.R. at 28 (citations omitted).

19. Ms. Beall's administrative claim here essentially represents a cost of doing business. Debtors could easily have avoided the claim had they provided information when requested.

20. Accordingly, Movant should be entitled to the Administrative Expense Claim.

**WHEREFORE**, Movant respectfully requests that the Court:

(a) Enter an Order substantially in the form attached hereto allowing an Administrative Expense Claim and directing the Debtors to pay such claim forthwith; and

(b) Grant to Movant such other and further relief as is just and proper.

DATED: January 5, 2011

_____
Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 654-0248
Facsimile:   (302) 654-0728
E-mail:   loizides@loizides.com

*Counsel for Movant.*