**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

In re:                                          : Chapter 11
                                                :
AMERICAN HOME MORTGAGE                          : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1] :
                                                : Jointly Administered
            Debtors.                            :
------------------------------------------------------------- x

**REQUEST OF AMERICAN HOME MORTGAGE SERVICING,**
**INC., FORMERLY KNOWN AS AH MORTGAGE ACQUISITION**
**CO., INC., FOR ALLOWANCE AND PAYMENT OF**
**AN ADMINISTRATIVE EXPENSE CLAIM**

American Home Mortgage Servicing, Inc., a Delaware corporation formerly

known as AH Mortgage Acquisition Co., Inc. (the "Purchaser"), through its undersigned counsel,

hereby files this Request (the "Request") for allowance and payment of an administrative

expense claim pursuant to section 503(a) and (b)(1)(A) and 507(a)(2) of the Bankruptcy Code

against the estates of the above-captioned reorganized debtors (collectively, the "Reorganized

Debtors" and, prior to the effective date of the Reorganized Debtors' plan of liquidation, the

"Debtors"), and in support hereof, respectfully represents as follows:

---

[1]     The above-captioned debtors and debtors in possession in these cases (collectively, the "Debtors"), along
with the last four digits of each Debtor's federal tax identification number, are:  American Home Mortgage
Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914);
American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland
corporation, formerly known as American Home Mortgage Servicing, Inc. (7267); American Home
Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware
limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and
Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538
Broadhollow Road, Melville, New York 11747.

## JURISDICTION AND STATUS OF THE CASE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicate for the relief requested herein is section 503(a) and (b)(1)(A) and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code").

3.      On August 6, 2007, each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      On August 14, 2007, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors.

5.      On February 23, 2009, this Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Amended Chapter 11 Plan of Liquidation of the Debtors dated February 18, 2009* (the "Confirmation Order").  On November 30, 2010, the Reorganized Debtors filed the *Notice of (I) Occurrence of the Effective Date of the Plan; (II) Deadlines to File Administrative Claims, Professional Claims, Rejection Damages Claims, and Subordination Statements, and to Submit Invoices for Indenture Trustee Expenses; and (III) Appointment of Borrower Information Ombudsman* (the "Notice of Effective Date").

6.      Pursuant to the Confirmation Order and Notice of Effective Date, requests for payment of Administrative Claims (as defined in the Notice of Effective Date) must be filed no later than January 5, 2011.

## BACKGROUND

### The Debtors' Mortgage Servicing Business

7.      Prior to the filing of these bankruptcy cases, the Debtors' businesses primarily consisted of the origination, servicing, and sale of mortgage loans, as well as

investment in mortgage loans and mortgage-backed securities resulting from the securitizations

of residential mortgage loans.  The Debtors also invested in securitized mortgage loans

originated by others and originated and sold mortgage loans to institutional investors.

       8.     A large component of the Debtors' businesses was the servicing of loans

(the "Servicing Business"), which the Debtors conducted primarily through SVI.  The Servicing

Business entails, among other things, collecting mortgage payments, administering tax and

insurance escrows, responding to borrower inquiries, and maintaining control over collection and

default mitigation processes.  Many of the loans the Debtors originated were to be serviced by

the Servicing Business, thus assuring that the Servicing Business would obtain additional

servicing rights as existing mortgage loans were repaid in whole or in part.

**The Debtors' Emergency Sale Motion**

       9.     Soon after the Petition Date, the Debtors filed their *Emergency Motion of*

*the Debtors for Orders:  (A)(i) Approving Sale Procedures; (ii) Scheduling a Hearing to*

*Consider Sale of Certain Assets Used In the Debtors' Loan Servicing Business; (iii) Approving*

*Form and Manner of Notice Thereof; and (iv) Granting Related Relief; and (B)(i) Authorizing*

*the Sale of Such Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests;*

*(ii) Authorizing and Approving Purchase Agreement Thereto; (iii) Approving the Assumption*

*and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto; and*

*(iv) Granting Related Relief* [Docket No. 11] (the "Initial Servicing Sale Motion").  By Order

dated August 9, 2007 [Docket No. 113], the Court granted the Initial Servicing Sale Motion.

       10.     Thereafter, the Debtors concluded, in the exercise of their business

judgment, that having a stalking horse bidder for the sale would be in the best interests of their

estates, and commenced good faith arm's length negotiations with the Purchaser with respect to a

transaction whereby the Purchaser would agree to purchase the Servicing Business and become

the stalking horse for the sale process. Accordingly, on September 21, 2007, the Debtors filed their *Motion of the Debtors for Order Pursuant to Sections 105(a), 363, 364, 365, and 503(b) of the Bankruptcy Code and Rules 2002, 4001, 6004, 6006, 7062, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving Revised Procedures for the Sale of the Debtors' Mortgage Servicing Business; (B) Approving Certain Protections for the Stalking Horse Bidder in Such Sale; (C) Directing that Certain Notices of Such Sale and Deadline be Given; and (D) Authorizing, on an Interim Basis, the Debtors to Grant Certain Liens and Other Protections for the Purchaser's Collateral Effective After the Initial Closing* [Docket No. 865]. The Court approved the revised motion by order dated September 25, 2007 [Docket No. 937].

11. No other qualified bids were received for the Servicing Business, and on October 15, 2007, the Court conducted a sale hearing. Thereafter, on October 30, 2007, the Court entered the *Order Pursuant to Sections 105, 363, 364, 365, and 503(B) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (i) the Sale of the Debtors' Mortgage Servicing Business Free and Clear of Liens, Claims and Interests, (ii) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief* [Docket No. 1711] (the "Servicing Sale Order") authorizing the sale of the Servicing Business to the Purchaser and approving the Asset Purchase Agreement dated as of September 25, 2007 (as subsequently amended, the "APA") by and between the Purchaser and AHM SV, Inc., a Maryland corporation formerly known as American Home Mortgage Servicing, Inc.

("SVI"),[2] SVI's parent company, American Home Mortgage Investment Corp. ("Parent") and American Home Mortgage Corp. (collectively with SVI and Parent, the "Sellers").

**The First Administrative Claim filed by Purchaser**

        12.    On May 23, 2008, the Purchaser filed the *Motion of American Home Mortgage Servicing, Inc., Formerly Known as AH Mortgage Acquisition Co., Inc., for an Order Granting the Allowance and Payment of an Administrative Expense Claim for Breaches by Certain Debtors of the Asset Purchase Agreement for the Sale of the Debtors' Mortgage Servicing Business* [Docket No. 4233] (the "Original Motion"), seeking the allowance and payment of an administrative expense claim for certain breaches of the APA by the Sellers. Thereafter, the Purchaser filed an *Amended Motion of American Home Mortgage Servicing, Inc., Formerly Known as AH Mortgage Acquisition Co., Inc., for an Order Granting the Allowance and Payment of an Administrative Expense Claim for Breaches by Certain Debtors of the Asset Purchase Agreement for the Sale of the Debtors' Mortgage Servicing Business,* amending and superseding the Original Motion [Docket No. 4338] (the "Amendment" and together with the Original Motion, the "First Administrative Claim").  On May 14, 2010, this Court entered an *Order Approving Settlement Agreement With American Home Mortgage Servicing, Inc.* (the "First Administrative Claim Settlement Order"), approving the *Release and Settlement Agreement* (the "First Administrative Claim Settlement Agreement") attached thereto as Exhibit 1, which settled the First Administrative Claim.

---

[2]    SVI was formerly known as American Home Mortgage Servicing, Inc.  Following the final closing on the APA, Debtor American Home Mortgage Servicing Inc. changed its name to AHM SV, Inc.

**The Contract with Iron Mountain**

13.    In accordance with the APA and the Servicing Sale Order, the Purchaser took assumption and assignment of certain executory contracts of the Debtors, including the *Customer Agreement, dated as of November 1, 2001, by and between Iron Mountain and Columbia National, Incorporated* (the "Iron Mountain Agreement").  Iron Mountain maintains that the Iron Mountain Agreement relates to its account number M070K.  The Iron Mountain Agreement provides for the storage of certain documents that the Purchasers purchased from the Debtors pursuant to the APA and Servicing Sale Order; however, the Iron Mountain Agreement also covered the storage of certain documents that remain the property of the Debtors under the APA and were not purchased by the Purchaser.  Iron Mountain is seeking from the Purchaser payment for not only the storage of the records it now owns, but also the storage of the Debtors' records, which the Purchaser does not own.[3]

### RELIEF REQUESTED

14.    Pursuant to sections 503(a) and (b) and 507 of the Bankruptcy Code, the Purchaser respectfully requests entry of an order (a) granting the Purchaser an allowed claim against the Sellers' estates, entitled to administrative expense priority, for any post-petition costs that the Purchaser has incurred or may be required to pay to Iron Mountain for storage of the

---

[3]    Although the Iron Mountain Agreement was assumed and assigned to the Purchaser under the APA and Scheduling Sale Order, to the extent that documents stored under that contract belong to the Debtors, the Purchaser did not take an assignment of the obligation to pay for storage of the Debtors' records contained in that contract, since the Purchaser did not obtain all rights under the Iron Mountain Agreement (most importantly, the right to authorize destruction of the Debtors' records) with respect to documents the Purchaser does not own and which remained property of the estate.  See, e.g., Allegheny Health, Education & Research Found. v. AFL-CIO, 383 F.3d 169, 177 (3d Cir. 2004) (noting that "[a] partial assignment does not suffice to effect a novation, releasing the original obligor from its duties under the contract"); American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999) (noting that 365(k) effects a novation relieving a debtor of liability on an assigned contract only when the assignee takes the entire bundle of rights and obligations under the contract).  Accordingly, the Purchaser does not agree it is obligated to pay Iron Mountain for costs associated with the storage of the Debtors' records.

Debtors' books and records at facilities maintained by Iron Mountain, (b) directing the Sellers to

pay that administrative claim as soon as reasonably practicable and (c) granting such other and

further relief as the Court deems just and proper.

### BASIS FOR RELIEF REQUESTED

15.    Section 503(a) of the Bankruptcy Code provides that "[a]n entity may

timely file a request for payment of an administrative expense," and section 503(b) provides that

"[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the

actual, necessary costs and expenses of preserving the estate . . . ."[4]  It is well-settled in this

Court and in the Third Circuit that, in order for a claim to be allowed as an administrative

expense, the claimant "must demonstrate that the claimed expense (i) arose out of a postpetition

transaction with the debtor-in-possession and (ii) directly and substantially benefited the estate."

In re Mid-American Waste Systems, Inc., 228 B.R. 816, 821 (Bankr. D. Del. 1999); see also In

re O'Brien Environmental Energy, Inc., 181 F.3d 527, 523-33 (3d Cir. 1999) (same); In re

Continental Airlines, Inc., 146 B.R. 520, 526 (Bankr. D. Del. 1992) (stating that a claim qualifies

as an administrative expense under § 503(b) where it confers a benefit that "run(s) to the debtor

in possession and it is typically fundamental to the conduction of its business").  Purchaser here

meets both of these criteria.

16.    Purchaser has a claim against the Sellers for any amounts Purchaser owes

to Iron Mountain for the post-petition storage of the Debtors' records pursuant to the Iron

Mountain Contract.  Under applicable law as noted above, the Purchaser's claim is entitled to

administrative expense priority.  The records of the Debtors were stored at Iron Mountain and

provided a benefit to the estate post-petition.  The storage of the Debtors' documents provided a

---

[4]    11 U.S.C. §§ 503(a) and (b).

substantial value to the Debtors' estates by preserving and maintaining books and records of the Debtors that are property of the estate and that the Debtors' were required to maintain during the bankruptcy cases.  Iron Mountain is seeking to require the Purchaser to pay for the storage of the Debtors' records since they are included in the Iron Mountain Agreement.  To the extent the Purchaser is required to pay Iron Mountain, the Purchaser is therefore entitled to a claim against the Debtors' estates to reimburse it for those storage fees.  The Purchaser is therefore entitled to an administrative claim for the amount of post-petition storage costs that the Purchaser is required to pay to Iron Mountain under the Iron Mountain Agreement for storage of the Debtors' records.

## RESERVATION OF RIGHTS

17.    The Purchaser specifically reserves the right to modify or amend this motion, file additional papers in support of this motion or take other appropriate actions, including to:  (a) respond to any allegation, legal theory or defense that may be raised in a response by or on behalf of the Sellers; and (b) raise any additional argument in support of the relief requested herein based on additional information that may be discovered upon further review by the Purchaser or through discovery pursuant to the applicable provisions of the Bankruptcy Rules.

WHEREFORE, for all the foregoing reasons, the Purchaser respectfully requests entry of an order, substantially in the form attached hereto:  (i) granting the Purchaser an allowed claim entitled to administrative expense priority in the amount the Purchaser is required to pay for the storage fees of the Debtors' records (the "Allowed Administrative Claim"), (ii) directing the Debtors to pay the Allowed Administrative Claim as soon as reasonably practicable; and (iii) granting the Purchaser such other and further relief as is just and appropriate.

Dated:  January 5, 2011
       Wilmington, Delaware

GREENBERG TRAURIG, LLP

*/s/ Victoria W. Counihan* _____
Victoria W. Counihan (DE Bar #3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000

and

JONES DAY
Keith C. McDole (TX 13533740)
Daniel P. Winikka (TX 00794873)
2727 North Harwood Street
Dallas, Texas 75201-1515
(214) 220-3939

COUNSEL FOR AMERICAN HOME
MORTGAGE SERVICING, INC., FORMERLY
KNOWN AS AH MORTGAGE ACQUISITION
CO., INC.