IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------------------x
In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et.al.,

      Debtors.

Chapter 11
Case No. 07-11047 (CSS)
Jointly Administered

-----------------------------------------------------------------------x

## SUBORDINATION STATEMENT

1.    This Subordination Statement is submitted in response to the Order by the Bankruptcy Court issued by the Honorable Christopher S. Sontchi, dated November 30, 2010. The Order directs Claimants to file Subordination Statements no later than January 5, 2011 (the "Subordination Statement Bar Date").

## BACKGROUND

2.    On or about March 28, 2008, Claimant Gil Q. Alvarez filed a Claim and Motion for leave to file Late Proof of Claim [Docket No. 3466], pursuant to Rules 3003©)(3) and 9006(b) of the Federal Rules of Bankruptcy Procedure.

3.    On or about September 8, 2008, Counsel for Debtors and Debtors in Possession answered said Motion. Counsel for Debtors ( Nathan Grow, Esq.) did not oppose the Motion or object to the relief requested [Docket No. 5610]. Debtors merely indicated that they did not agree with many of the allegations and statements contained in the Motion (to date, Debtors have NEVER identified or indicated which statements or allegations, if any, they do not agree with, nor can they, given the substantial deceitful paper trail submitted by Debtors and the findings by both the State of Florida Office of Financial Regulation which found the Debtors had engaged in negligence and incompetence with regards to their mortgage transaction with the Claimant and

the findings by the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development who after examining all of the evidence, directed Mr. Strauss, the Chairman, President and CEO of Debtor American Home Mortgage (AHM) to reach a resolution with the Creditor/Claimant and his attorney [which he wrongfully and without just cause failed to do] ).

4.      On September 15, 2008, Claimant appeared before the Honorable Christopher S. Sontchi and was directed by the Court to work together with Debtors counsel i.e. with Mr. Nathan Grow, Esq., so that we could draw up a Form of Order in connection with the Motion.

5.      While Claimant was initially worried in working with Debtors counsel and found the direction of the Court to do so disconcerting, he later appreciated the wisdom of the Court in that it allowed both parties to communicate with each other and find common ground on resolving the issues.

6.      From September 15, 2008 up and until October 6, 2008 Claimant communicated with Mr. Nathan Grow Esq., by way of telephone and e-mail. Claimant objected to any "Reservation of Rights" without knowing specifically what rights were to be reserved. Claimant also informed Mr. Grow that he wanted to know which of the allegations and statements contained in the Claim and Motion Debtors did not agree with since Claimant submitted with his Claim and Motion numerous exhibits which clearly substantiated the claims.

7.      Claimant also pointed out the findings by the State of Florida Office of Financial Regulation which found the Debtors had engaged in negligence and incompetence with regards to their mortgage transaction with the Claimant. The Debtors pled guilty to the charges and paid a $ 5,000.00 fine to the State of Florida (attached hereto as exhibit A, for your information).

8.      Claimant additionally pointed out that on November 21, 2005, the Director of RESPA

and Interstate Land Sales at the U.S. Department of Housing and Urban Development, after examining all of the evidence, directed Mr. Strauss, the Chairman, President and CEO of Debtor American Home Mortgage to reach a resolution with the Creditor/Claimant and his attorney at the time Bonita E. Zelman (attached hereto as exhibit B, for your information). Mr. Strauss and Debtor wrongfully and without just cause refused to do so.

9. It should be noted that Mr. Nathan Grow, Esq., was always professional in his communication with the Claimant and worked diligently with the Claimant in drawing up a proposed Form of Order. Mr. Grow was also instrumental in explaining Court procedure and guidelines to the Claimant.

10. Mr. Grow also reached out (at Claimant's request), to the Debtors to inquire if the Debtors would use their insurance which would cover the misconduct committed by Debtors and their officers/agents. Despite the fact that Debtors had initially indicated to Claimants then attorney, Bonita E. Zelman, that they had insurance in the form of Directors and Officers liability insurance policies to cover Claimants situation and told her to submit a settlement proposal to resolve the matter, they wrongfully and without just cause then claimed to Mr. Grow on or about October 3, 2008, that they did not have such insurance.

11. Enclosed as exhibit C for the Courts information is the written communication between the Claimants then attorney, Bonita E. Zelman, and both Mr. Michael Strauss and AHM. The correspondence clearly shows that Debtors wrongfully led the Claimant to believe that they would settle the matter with their D&O policies when in reality they were only seeking time in order to wrongfully obtain Bankruptcy Court protection. Also enclosed for the Courts review is the e-mail received by Mr. Grow in which the Debtors wrongfully indicated to him that they did not have insurance coverage for the misconduct committed by their Officers/Agents against

Claimant.

12. It should be noted that by wrongfully indicating to Mr. Grow that they did not have insurance to cover their unlawful actions against Claimant, they (Debtors and whoever prevaricated to Mr. Grow) committed serious misconduct because in subsequent proceedings before this Court the Debtors requested that the Court allow the Debtor the use to use their D&O Policies to fund Settlements and Stipulation and Agreements against AHM and Mr. Michael Strauss. See Docket No. 7934 dated 8/11/09.

13. On or about October 6, 2008, Mr. Grow and Claimant agreed to a Form of Order in which it was agreed, inter alia, that both parties would work together to resolve the claim.

14. Despite this written agreement to resolve the claim, regrettably, no further communication has been initiated by the Debtors to resolve this claim since October 6, 2008. This is despite the fact that Debtors have settled other claims of lesser and dubious validity.

## SUBORDINATION REQUEST

15. Claimant respectfully requests that the following claims (if any) be held subordinate to that of the Claimant:

16. Any and all claims submitted by Michael Strauss, who was the Chairman, President and CEO of Debtor and was personally aware of the harm being caused upon Claimant and while he was capable of rectifying the problem, and had a duty to do so, regrettably did not, to the severe detriment of the Claimant.

17. Any and all claims submitted by American Home Mortgage Holdings, Inc.

18. Any and all claims submitted by American Home Mortgage Servicing, Inc.

19. American Home Mortgage Holdings and its affiliate/successors  American Home

Mortgage Servicing, Inc., committed serious misconduct as outlined complete with exhibits in Claimant's Claim and Motion and should not be allowed to benefit financially from their serious and unlawful misconduct.

20. AHM has NEVER acted in good faith, NEVER complied with disclosure requests or RESPA requests in an honest or timely manner and in fact, intentionally lied on numerous written communications regarding Claimant's matter. AHM has never engaged in good faith to resolve this claim even though it would be in their best interests to do so.

21. Furthermore, by wrongfully refusing to settle this matter by way of a claim with their D&O policies, both Mr. Strauss and AHM clearly assumed responsibility for the Claimant's claim pending before this Honorable Court.

22. Any and all claims submitted by Wells Fargo Bank, N.A.

23. Any and all claims submitted by Wells Fargo Funding, Inc.

24. Wells Fargo was a substantial business partner of American Home as master servicer and securities administrator on a large number of American Home and third party securitizations. Wells Fargo funded loans and purchased loans from American Home including Claimant's loan.

25. Wells Fargo Bank, N.A. and its affiliate/successor Wells Fargo Funding, Inc., was aware of the harm being caused upon Claimant and were notified by Claimant and his attorney at the time, Bonita E. Zelman, and while capable of rectifying the problem, and having a duty to do so, regrettably did not, to the severe detriment of the Claimant.

26. The Chairman and CEO of Wells Fargo & Co., Mr. Richard Kovacevich was personally furnished with the findings by State of Florida Office of Financial Regulation which found the Debtors (AHM) had engaged in negligence and incompetence with regards to their mortgage

transaction with the Claimant. The Debtors pled guilty to the charges and paid a $ 5,000.00 fine to the State of Florida. Despite this new information, Wells Fargo Bank and Wells Fargo Funding, Inc., et.al., in order to wrongfully accrue additional monies and interest, did not rectify the problem or adhere to its obligation under RESPA to conduct a proper investigation into this misconduct. The communications and responses are attached hereto as exhibit D for your information.

27. Wells Fargo, by wrongfully refusing to properly investigate and settle this matter by simply communicating with both Mr. Strauss and AHM clearly assumed responsibility for the Claimant's claim pending before this Honorable Court. Wells Fargo's motivation was simply to abrogate their responsibilities under the law and shift all blame to Debtors so that they could reap the benefits of a fraudulently obtained mortgage.

28. It would be unjust and unfair for the above mentioned Claimants, who have already reaped substantial monetary recoveries, to seek additional recovery at Claimant's expense and detriment.

29. Claimant respectfully asks this Honorable Court to elevate his claim to priority status as substantial and documented misconduct did occur while using the Bankruptcy Court for cover in order to avoid complying with their obligations under the law.

30. The misconduct outlined by Claimant in his Claim and Motion was taken by AHM and Wells Fargo acting in concert in order to avoid complying with RESPA and avoid rectifying the misconduct directed at Claimant.

**WHEREFORE**, Claimant respectfully requests that this Court enter an Order (I) Finding the above mentioned claims to be subordinate to that of the Claimants; and (ii) declare that

Claimant's claim is an administrative priority due to substantial misconduct both pre and during bankruptcy and (iii) granting the Claimant any further relief that the Court deems just and proper.

Dated: December 30, 2010
      Apopka, Florida

Respectfully submitted,

_____
Gil Quentin Alvarez
Pro-Se Creditor
Address of Creditor
542 Mount Argyll Court
Apopka, FL 32712
Tel: 407-889-4098