**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------x
In re:                                      :
                                            :
                                            :     Chapter 11
                                            :
AMERICAN HOME MORTGAGE                      :
HOLDINGS, INC., a Delaware corporation, et al., :   Case No. 07-11047 (CSS)
                                            :
                                            :     Jointly Administered
                Debtors.                    :
-----------------------------------------------------x
```

**THIRTY NINTH AND FORTIETH MONTHLY FEE APPLICATIONS AND FINAL FEE APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES DURING THE PERIOD FROM AUGUST 10, 2007 THROUGH NOVEMBER 30, 2010**

| | |
|---|---|
| Name of Applicant: | Quinn Emanuel Urquhart & Sullivan, LLP |
| Authorized to Provide Professional Services to: | Debtors |
| Date of Retention: | September 13, 2007 (nunc pro tunc to August 10, 2007) |
| Final Fee Period for Which Compensation and Reimbursement is Sought: | August 10, 2007 – November 30, 2010[1] |
| Total Amount of Compensation Requested: | $3,260,491.75 |
| Total Amount of Expense Reimbursement Requested: | $192,546.48 |
| Monthly Fee Periods for Which Compensation and Reimbursement is Sought: | October 1, 2010 – November 30, 2010 |
| Monthly Amount of Compensation Requested: | $6,273.00 |
| Monthly Amount of Expense Reimbursements Requested: | $332.93 |

This is an:___X___ interim _X__ final application.

---

[1] This final fee applications includes the fees and expenses incurred in October and November totaling $6,605.93. Fee applications were not filed for the months of October and November so as not to incur further charges creating fee applications. The fees and expenses for those months were incurred in connection with the preparation of this fee application, a letter to the Fee Committee, as well as, the September monthly fee application.

**THIRTY NINTH AND FORTIETH MONTHLY FEE APPLICATIONS AND FINAL FEE APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS (AUGUST 10, 2007 THROUGH NOVEMBER 30, 2010)**

**PRIOR APPLICATIONS:**

| Date Filed/ Docket No. | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| Nov. 21, 2007 / Docket No. 2141 | August 10, 2007 - August 31, 2007 | $217,865.00 | $1,404.26 | $217,865.00 | $1,404.26 |
| Nov. 21, 2007 / Docket No. 2142 | September 1, 2007 - September 30, 2007 | $293,619.00 | $37,757.62 | $293,619.00 | $37,757.62 |
| Dec. 4, 2007 / Docket No. 2277 | October 1, 2007 - October 31, 2007 | $497,748.00 | $36,429.13 | $497,748.00 | $36,429.13 |
| Feb. 7, 2007 / Docket No. 2897 | November 1, 2007 - November 30, 2007 | $287,397.00 | $13,334.64 | $287,397.00 | $13,289.64 |
| Mar. 17, 2008 / Docket No. 3326 | December 1, 2007 - December 31, 2007 | $123,807.25 | $17,100.11 | $123,807.25 | $15,285.06 |
| Mar. 17, 2008 / Docket No. 3327 | January 1, 2008 - January 31, 2008 | $204,209.75 | $7,435.31 | $204,209.75 | $7,112.55 |
| May 19, 2008 / Docket No. 4076 | March 1, 2008 - March 29, 2008 | $172,483.00 | $9,484.53 | $172,483.00 | $9,484.53 |
| May 30, 2008 / Docket No. 4319 | March 1, 2008 - March 31, 2008 | $171,026.25 | $6,421.36 | $171,026.25 | $6,421.36 |
| June 13, 2008 / Docket No. 4626 | April 1, 2008 - April 30, 2008 | $122,547.00 | $4,743.47 | $122,547.00 | $4,743.47 |
| August 21, 2008 / Docket No. 5512 | May 1, 2008 - May 31, 2008 | $210,227.00 | $ 7,320.78 | $210,227.00 | $ 7,320.78 |
| September 12, 2008 / Docket No. 5855 | June 1, 2008 - June 30, 2008 | $233,945.75 | $3,513.35 | $233,945.75 | $3,513.35 |
| September 12, 2008 / Docket No. 5856 | July 1, 2008 - July 31, 2008 | $124,699.50 | $8,811.09 | $124,699.50 | $8,811.09 |
| October 29, 2008 / Docket No. 6471 | August 1, 2008 - August 30, 2008 | $18,508.50 | $3,951.15 | $18,508.50 | $3,951.15 |
| November 26, 2008 / Docket No. 6634 | September 1, 2008 - September 30, 2008 | $39,181.50 | $407.00 | $39,181.50 | $407.00 |
| December 12, 2008 / Docket No. 6713 | October 1, 2008- October 31, 2009 | $64,936.25 | $3,812.94 | $64,936.25 | $3,812.94 |

i

| Date Filed/ Docket No. | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| March 13, 2009 / Docket No. 7005 | November 1, 2008- November 30, 2008 | $12,811.00 | $4,296.32 | $10,248.80 | $4,296.32 |
| March 13, 2009 / Docket No. 7102 | December 1, 2008- December 31, 2008 | $29,893.00 | $648.22 | $29,893.00 | $648.22 |
| March 13, 2009 / Docket No. 7103 | January 1, 2009- January 31, 2009 | $21,954.00 | $430.75 | $21,954.00 | $430.75 |
| April 15, 2009 / Docket No. 7275 | February 1, 2009- February 28, 2009 | $81,855.50 | $3,522.61 | $81,855.50 | $3,522.61 |
| June 10, 2009/ Docket No. 7517 | March 1, 2009- March 31, 2009 | $36,994.50 | $9809.67 | $36,994.50 | $9809.67 |
| June 10, 2009/ Docket No. 7518 | April 1, 2009- April 30, 2009 | $58,816.00 | $2939.45 | $58,816.00 | $2939.45 |
| August 18, 2009// Docket No. 7961 | May 1, 2009 - May 31, 2009 | $42,436.00 | $914.29 | $33,948.80 | $914.29 |
| August 18, 2009/ Docket No. 7962 | June 1, 2009 June 30, 2009 | $15,733.50 | $541.57 | $12,586.80 | $541.57 |
| September 14, 2009 Docket No. 8062 | July 1, 2009 - July 31, 2009 | $18,603.50 | $439.39 | $9,301.75 | $439.39 |
| October 26, 2009 Docket No. 8215 | August 1, 2009 August 31, 2009 | $9,019.50 | $7,713.02 | $7,215.60 | $7,713.02 |
| November 17, 2009 Docket No. 8310 | September 1, 2009 - September 30, 2009 | $9,762.00 | $33.04 | $7,809.60 | $33.04 |
| December 18, 2009 Docket No. 8428 | October 1, 2009 – October 31, 2009 | $6,025.00 | $138.97 | $6,025.00 | $138.97 |
| January 29, 2010 Docket No. 8522 | November 1, 2009 - November 30, 2009 | $11,321.50 | $132.69 | $11,321.50 | $132.69 |
| March 8, 2010 Docket No. 8658 | December 1, 2009 December 31, 2009 | $11,907.00 | $1,465.05 | $11,907.00 | $1,465.05 |
| March 8, 2010 Docket No. 8659 | January 1, 2010 January 31, 2010 | $19,920.50 | $650.26 | $19,920.50 | $650.26 |
| June 9, 2010 Docket No. 8897 | February 1, 2010 February 28, 2010 | $3,663.00 | $30.50 | $3,663.00 | $30.50 |

| Date Filed/ Docket No. | Period Covered | Requested | | Approved | |
|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses |
| June 9, 2010 Docket No. 8898 | March 1, 2010 March 31, 2010 | $6,050.50 | $102.64 | $6,050.50 | $102.64 |
| June 9, 2010 Docket No. 8899 | April 1, 2010 April 30, 2010 | $5,575.00 | $45.74 | $5,575.00 | $45.74 |
| July 27, 2010 Docket No. 9050 | May 1, 2010 May 31, 2010 | $3,502.00 | $53.60 | $3,502.00 | $53.60 |
| July 27, 2010 Docket No. 9051 | June 1, 2010 June 30, 2010 | $2,248.50 | $2.90 | $2,248.50 | $2.90 |
| September 14, 2010 Docket No. 9215 | July 1, 2010 July 31, 2010 | $12,636.00 | $88.18 | $12,636.00 | $88.18 |
| September 28, 2010 Docket No. 9274 | August 1, 2010 August 31. 2010 | $15,063.50 | $798.16 | $15,0563.50 | $798.16 |
| December 7, 2010 Docket No. 9538 | September 1, 2010 September 30, 2010 | $41,573.50 | $469.70 | $41,573.50 | $469.70 |
| INCLUDED HEREIN | October 1, 2010 October 31, 2010 | $468.00 | $46.67 | | |
| INCLUDED HEREIN | November 1, 2010 November 30, 2010 | $5,805.00 | $286.26 | | |

## ATTACHMENT TO FINAL FEE APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS (AUGUST 10, 2007 TO NOVEMBER 30, 2010)

| TIMEKEEPER | POSITION | RATE | HOURS TOTAL | FEES TOTAL |
|---|---|---|---|---|
| Richard A. Schirtzer | Partner | $875.00 | 124.3 | 107,668.75 |
| Susheel Kirpalani | Partner | $760.00 | 560.4 | 422,028.00 |
| Duane Lyons | Partner | $760.00 | 210.0 | 157,890.00 |
| James C. Tecce | Partner/Of Counsel | $720.00/ $605.00 | 1763.8 | 1,070,599.00 |
| Danielle Gilmore | Partner | $720.00 | 24.3 | 17,496.00 |
| Daniel Holzman | Of Counsel | $605.00 | 33.7 | 20,388.50 |
| Joseph Minas | Associate | $415.00 | 39.2 | 16,268.00 |
| Robert Dakis | Associate | $385.00 | 232.9 | 89,666.50 |
| Danielle Brown | Associate | $385.00 | 12.8 | 4,928.00 |
| Jamie Nowaday | Associate | $415.00 | 8.9 | 3,693.50 |
| Aidan McGlaze | Associate/Law Clerk | $365.00/ $275.00 | 484.9 | 150,754.00 |
| Kristelia A. Garcia | Associate | $400.00 | 273.6 | 109,440.00 |
| Marc Palladino | Associate | $365.00 | 43.8 | 15,987.00 |
| Harrison Denman | Associate | $375.00 | 1685.4 | 631,087.50 |
| Rebekah Parker | Associate | $375.00 | 11.1 | 4,162.50 |
| Priya Sopori | Associate | $375.00 | 121.2 | 51,510.00 |
| Carlos Rodriguez | Associate | $425.00 | 253.4 | 95,025.00 |
| Matthew R. Scheck | Associate | $365.00 | 2.8 | 1,022.00 |
| Olga M. Urbieta | Associate | $355.00 | 153.5 | 55,943.00 |
| Katherine Silva/Scherling | Associate/Law Clerk | $345.00/ $275.00 | 33.2 | 10,838.00 |
| Christopher Clark | Attorney | $320.00/ $235.00 | 104.8 | 31,887.00 |
| Daniel Allendaer | Law Clerk | $275.00 | 37.9 | 10,422.50 |
| Martine Lacroix | Paralegal | $235.00 | 268.4 | 64,154.00 |
| Shahareen Mehjabeen | Paralegal | $235.00 | 0.9 | 211.50 |
| Morgan Brady | Paralegal | $235.00 | 8.7 | 2,044.50 |
| Jesse Yip | Paralegal | $235.00 | 1.9 | 446.50 |
| S. Tyler Ricci | Paralegal | $235.00 | 120.6 | 28,341.00 |
| Roy Nelson | Managing Clerk | $225.00 | 0.7 | 157.50 |
| Grace Yoon | Paralegal | $235.00 | 278.2 | 65,377.00 |
| Jaan Rannik | Paralegal | $235.00 | 45.5 | 10,692.50 |
| Michael Greenwood | Paralegal | $235.00 | 6.5 | 1,527.50 |
| Elisha Barron | Paralegal | $235.00 | 2.0 | 470.00 |

| TIMEKEEPER | POSITION | RATE | HOURS TOTAL | FEES TOTAL |
|---|---|---|---|---|
| Megan Kerr | Case Assistant | $235.00 | 10.0 | 2,350.00 |
| Sofia Kolidas | Case Assistant | $235.00 | 0.3 | 70.50 |
| Constance Drew | Litigation Support | $90.00 | 16.3 | 1,467.00 |
| Juan Londono | Litigation Support | $150.00 | 8.2 | 1,230.00 |
| Jonathan Land | Litigation Support | $365.00 | 6.6 | 2,409.00 |
| Danny Rose | Litigation Support | $150.00 | 1.3 | 195.00 |
| Raul Vasquez | Litigation Support | $150.00 | 9.9 | 1,485.00 |
| Patricia Chew | Litigation Support | $150.00 | 1.0 | 150.00 |
| Joseph Chan | Litigation Support | $150.00 | 1.0 | 150.00 |
| Joe Liao | Litigation Support | $150.00 | 0.5 | 75.00 |
| Jet Ma | Litigation Support | $150.00 | 4.0 | 600.00 |
| Jeannie Larrea-Manzano | Litigation Support | $250.00 | 2.8 | 700.00 |
| Bo Li | Litigation Support | $70.00 | 19.0 | 1,330.00 |
| Michael Lee | Litigation Support | $150.00 | 10.0 | 1,500.00 |
| TOTALS: | | | 7040.2 | $3,265,838.25 |
| (Adjustment)[2] | | | | ($5,346.50) |
| GRAND TOTAL | | | | $3,260,491.75 |

---

[2]     During the Final Fee Period, certain adjustments were made for non-working travel.

**SUMMARY TABLE OF SERVICES RENDERED DURING FINAL FEE PERIOD OF
QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL INVESTIGATORY,
LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS**

**(AUGUST 10, 2007 TO NOVEMBER 30, 2010)**

| CATEGORY | HOURS TOTAL | FEES TOTAL |
|---|---|---|
| Fee Application/Fee Issues | 885.5 | 277,061.00 |
| Insurance Issues | 659.6 | 312,610.50 |
| Lender Claims | 3,258.70 | 1,559,628.50 |
| Court Hearings | 49 | 26,920.00 |
| Non Working Travel (Less 1/2 time) | 100 | 30,982.25 |
| Recharacterization | 1,995.80 | 1,008,562.00 |
| Rule 2004 Investigation | 12.2 | 8,365.00 |
| Servicing Platform Issues | 25.3 | 17,135.50 |
| Case Management | 30.5 | 7,929.50 |
| Cash Collateral/DIP Financing | 16.6 | 12,058.00 |
| Meetings | 7 | 4,576.00 |
| TOTAL | 7040.2 | $3,265,838.25 |
| (Adjustment) | | ($5,346.50) |
| GRAND TOTAL | | $3,260,491.75 |

---

[3]   During the Final Fee Period, adjustments were made for non-working travel.

**SUMMARY BY CATEGORY TYPE OF DISBURSEMENTS BILLED DURING FINAL FEE PERIOD OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS**

**(AUGUST 10, 2007 TO NOVEMBER 30, 2010)**

| EXPENSE | TOTAL |
|---|---|
| Air Travel | $11,988.34 |
| Car Rental | $947.59 |
| Computer Database Research | $9,367.59 |
| Credit | $2,089.31 |
| Deposition Transcripts | $14,410.30 |
| Document Scanning | $2.30 |
| Electronic Discovery Cost | $3,743.92 |
| Expert retained for purposes of Recharacterzation Trial | $49,100.00 |
| Express Mail | $1,545.83 |
| Hearing Transcripts | $2,711.77 |
| Hotel | $12,650.36 |
| Lexis | $23,792.80 |
| Local Travel (i.e., taxis and trains) | $8,786.75 |
| Meals | $4,118.28 |
| Messenger | $152.00 |
| Other Litigation Support Services | $4,156.05 |
| Outside Photocopies | $1,598.92 |
| Parking | $192.00 |
| PACER | $11.68 |
| Photocopies/Printing | $18,581.26 |
| Postage | $20.45 |
| Professional Research | $107.76 |
| Professional Services | $9,851.47 |
| Publication | $80.04 |
| Telecopier | $47.00 |
| Telephone | $1,890.76 |
| Westlaw | $19,448.48 |
| Word Processing | $312.00 |
| **TOTALS:** | **$197,526.39** |
| **(Adjustment)[5]** | **$4,979.91** |
| **GRAND TOTAL** | **$192,546.48** |

---

[4]    Quinn Emanuel inadvertently charged the estate $.13 per copy from February 1, 2008 through August 31, 2008.  These charges have been reduced to $.10.  As such, Quinn Emanuel has deducted its printing/photocopying charges by $157.10.

[5]    During the Final Fee Period, adjustments were made for word processing fees, trial preparation meals, and hotel charges.

**ATTACHMENTS TO THIRTY NINTH AND FORTIETH MONTHLY FEE
APPLICATIONS OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL
INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS**
October 1, 2010 – November 30, 2010

| NAME | POSITION; EXPERIENCE | HOURLY RATE | TOTAL HOURS | TOTAL COMPENSATION |
|---|---|---|---|---|
| Olga M. Urbieta | Associate | $390.00 | 2.30 | 897.00 |
| Christopher Clark | Attorney | $320.00 | 16.80 | 5,376.00 |
| **TOTAL** | | | 19.10 | $6,273.00 |

**SUMMARY TABLE OF SERVICES RENDERED DURING MONTHLY FEE PERIODS
OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL
INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS**

| ACTIVITY | HOURS | FEES |
|---|---|---|
| Fee Application Preparation/Fee Issues | 19.10 | 6,273.00 |
| **Total** | 19.10 | $6,273.00 |

**SUMMARY BY CATEGORY TYPE OF DISBURSEMENTS BILLED DURING
MONTHLY FEE PERIODS OF QUINN EMANUEL URQUHART & SULLIVAN, LLP,
SPECIAL INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE
DEBTORS**

| DISBURSEMENTS | AMOUNT |
|---|---|
| Printing @ $.10 | 17.60 |
| PACER | 11.68 |
| Express Mail | 18.33 |
| Travel (Amtrak fee) | 280.80 |
| Conference Fee | 4.52 |
| **TOTAL** | 332.93 |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................2

II. BACKGROUND ...............................................................................................4

    A.    Retention Of Quinn Emanuel And Billing History..................................5

III. APPLICATION ..............................................................................................8

IV. SUMMARY OF PROFESSIONAL SERVICES RENDERED .......................................10

    A.    Lender Claims:  (Final Fee Period- Total Hours: 3,258.7; Total Fees: $1,559,628.50) ................................................................................11

    B.    Recharacterization (Calyon, Credit Suisse, Bear Stearns):  (Final Fee Period- Total Hours: 1,995.80; Total Fees: $1,008,562.00) .....................................22

    C.    Insurance Issues:  (Final Fee Period- Total Hours: 659.6; Fees: $312,610.50) ............................................................................26

V. FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES.................28

VI. ALLOWANCE OF COMPENSATION.......................................................29

VII. EXPENSES.....................................................................................31

VIII. CONCLUSION.................................................................................34

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
In re:                                     :
                                           :          Chapter 11
                                           :
AMERICAN HOME MORTGAGE                      :
HOLDINGS, INC., a Delaware corporation, et al.,  :     Case No. 07-11047 (CSS)
                                           :
                                           :          Jointly Administered
                        Debtors.           :
-----------------------------------------------------x
```

**THIRTY NINTH AND FORTIETH MONTHLY FEE APPLICATIONS AND FINAL FEE APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN, LLP, SPECIAL INVESTIGATORY, LITIGATION AND CONFLICTS COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES DURING THE PERIOD FROM AUGUST 10, 2007 THROUGH NOVEMBER 30, 2010**

Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"), special

investigatory, litigation and conflicts counsel to American Home Mortgage Holdings, Inc., a

Delaware Corporation, and its affiliated debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors" or "American Home"), hereby submits its

application (the "Application") to this Court pursuant to sections 330 and 331 of chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), the Court's Administrative Order Establishing

Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Pursuant

To Sections 331 and 105(a) of the Bankruptcy Code, entered on October 3, 2007 (the

"Compensation Order"), and the Court's Order Under 11 U.S.C. §327(a) and Fed. R. Bankr. P.

2014, the Retention of Quinn Emanuel Urquhart, Oliver & Hedges LLP, Nunc Pro Tunc, as

Special Investigatory, Litigation and Conflicts Counsel for the Debtors (Docket No. 741) (the

"Retention Order") seeking (i) allowance of monthly compensation of $6,273.00 for actual,

1

reasonable and necessary professional services rendered; (ii) allowance and payment of $332.93 for 100% of actual, reasonable and necessary expenses incurred during the period from October 1, 2010 through November 30, 2010 (the "Monthly Fee Periods"); (iii) final allowance of compensation of $3,260,491.75 for actual, reasonable and necessary professional services rendered; and (iv) allowance and payment of $192,546.48 for 100% of actual, reasonable and necessary expenses incurred during the period from August 10, 2007 through November 30, 2010 (the "Final Fee Period") in the above captioned cases (the "Chapter 11 Cases"), and represents as follows:

## I.    INTRODUCTION

1.    As special investigatory and litigation counsel to the Debtors, Quinn Emanuel was tasked with investigating myriad transactions among the Debtors and their various lenders.  Over the course of three years, Quinn Emanuel was involved in multiple litigations involving rights and obligations under repurchase agreements and other securities contracts, recharacterization of financing agreements, and insurance issues.  Quinn Emanuel's significant contribution to the American Home cases yielded successful results for the Debtors.

2.    Quinn Emanuel initially represented American Home in litigation against three repurchase agreement counterparties (Calyon New York Branch, Credit Suisse First Boston and Bear Stearns), who tried to terminate their agreements and foreclose on the underlying mortgage loans and servicing rights.  Following an expedited trial on the question of whether the repurchase agreements were subject to recharacterization as secured loans, the Bankruptcy Court also determined that the servicing rights were severable from the underlying loans and were not subject to the Bankruptcy Code safe harbors.

2

3.      Quinn Emanuel also represented American Home in a separate dispute against Bear Stearns concerning entitlement to principal and interest payments payable on a trust certificate issued by an American Home securitization trust.  Specifically, in the Wells Fargo Bank N.A. ("Wells Fargo") litigation, which involved a complaint in the nature of interpleader where there were competing claims asserted by the Debtors and Bear Stearns to a monthly payment, Quinn Emanuel, on behalf of American Home, successfully argued that the monthly payment belonged to the Debtors.  Indeed, the Bankruptcy Court found in American Home's favor and Bear Stearns appealed all the way up to the Third Circuit Court of Appeals, where that Court also found for American Home.  As such, the payment in contention in the Wells Fargo litigation was returned to the estate.

4.      In a similar proceeding involving U.S. Bank, N.A. ("U.S. Bank"), Quinn Emanuel attorneys negotiated with Bear Stearns and agreed that the outcome of the Wells Fargo litigation would govern the U.S. Bank proceeding.  As such, the successful outcome of the Wells Fargo litigation dictated the return of another monthly payment totaling approximately $1.3 million to American Home by stipulation and consent order filed on September 23, 2010.

5.      Quinn Emanuel also initiated suit, on American Home's behalf, against Bank of America, N.A. ("BofA"), arguing BofA failed to honor its obligations under swap agreements and pay no less than $40 million due following the Broadhollow mortgage loan auction.  After BofA moved to dismiss the complaint, Quinn Emanuel attorneys defended the motion and defeated BofA's arguments that the Bankruptcy Court lacked subject matter jurisdiction over the dispute.

6.    Quinn Emanuel also commenced suit on American Home's behalf against Lehman Brothers Inc. concerning its termination of a repurchase agreement with American Home.  It also litigated against Triad Guaranty Insurance Corp. ("Triad") when Triad refused coverage under certain of its policies.

7.    As exemplified in these litigations, Quinn Emanuel generated substantial value to the estates.  Indeed, as a direct result of the work of Quinn Emanuel and the Debtors' other professionals, American Home was able to effectively investigate, prosecute and defend against a multitude of claims involving its various warehouse and repurchase lenders as well as its swap counterparties.  Quinn Emanuel now seeks approval of the fees and expenses incurred in generating significant value to American Home.

## II.    BACKGROUND

8.    Bankruptcy Filing.  On August 6, 2007, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.    Jurisdiction.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of the Debtors' chapter 11 cases and this Application is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and Local Rule No. 2016-2.  This Application is made pursuant to the Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals Pursuant To Sections 331 and

4

105(a) of the Bankruptcy Code (the "Compensation Order"), entered on October 3, 2007 by this Court.

A.    **Retention Of Quinn Emanuel And Billing History**

10.    On September 13, 2007, the Court authorized Quinn Emanuel's retention as special investigatory, litigation and conflicts counsel to American Home nunc pro tunc to August 10, 2007, pursuant to the Order Pursuant to Section 327(a) of The Bankruptcy Code and Bankruptcy Rule 2014(a) Approving the Retention of Quinn Emanuel Urquhart, Oliver & Hedges LLP, Nunc Pro Tunc, as Special Investigatory, Litigation and Conflicts Counsel for the Debtors (Docket No. 741) (the "Retention Order").  The Retention Order authorized Quinn Emanuel to be compensated pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and Orders of this Court, including the Compensation Order.

11.    On December 17, 2007, Quinn Emanuel filed the First Interim Quarterly Fee Requests of Debtors' Professionals (the "First Interim Fee Application") seeking $1,009,232.00 in fees and $75,591.01 in expenses for the period of August 10, 2007 to October 31, 2007.  On January 14, 2008, the Court awarded Quinn Emanuel $1,009,232.00 in fees and $75,591.01 in expenses for the First Interim Fee Period.

12.    On March 17, 2008, Quinn Emanuel filed the Second Interim Quarterly Fee Requests of Debtors' Professionals (the "Second Interim Fee Application") seeking $615,414.00 in fees and $37,870.06 in expenses for the period of November 1, 2007 to January 31, 2008.  On April 14, 2008, the Court awarded Quinn Emanuel $615,414.00 in fees and $37,870.06 in expenses for the Second Interim Fee Period.

13.     On June 16, 2008, Quinn Emanuel filed the Third Interim Quarterly Fee Requests of Debtors' Professionals (the "Third Interim Fee Application") seeking $466,056.25 in fees and $20,649.36 in expenses for the period of February 1, 2007 to April 30, 2008.  On April 14, 2008, the Court awarded Quinn Emanuel $466,056.25 in fees and $20,649.36 in expenses for the Third Interim Fee Period.

14.     On September 16, 2008, Quinn Emanuel filed the Fourth Interim Quarterly Fee Requests of Debtors' Professionals (the "Fourth Interim Fee Application") seeking $568,872.25 in fees and $19,645.22 in expenses for the period of May 1, 2008 to July 31, 2008. On April 14, 2008, the Court awarded Quinn Emanuel $568,872.25 in fees and $19,645.22 in expenses for the Fourth Interim Fee Period.

15.     On December 15, 2008, Quinn Emanuel filed the Fifth Interim Quarterly Fee Requests of Debtors' Professionals (the "Fifth Interim Fee Application") seeking $122,626.25 in fees and $8,171.09 in expenses for the period of August 1, 2008 to October 31, 2008.  On January 13, 2009, the Court awarded Quinn Emanuel $122,626.25 in fees and $8,171.09 in expenses for the Fifth Interim Fee Period.

16.     On March 17, 2009, Quinn Emanuel filed the Sixth Interim Quarterly Fee Requests of Debtors' Professionals (the "Sixth Interim Fee Application") seeking $64,658.00 in fees and $5,375.29 in expenses for the period of November 1, 2008 to January 31, 2009.  On August 11, 2009, the Court awarded Quinn Emanuel $64,658.00 in fees and $5,375.29 in expenses for the Sixth Interim Fee Period.

17.     On June 15, 2009, Quinn Emanuel filed the Seventh Interim Quarterly Fee Requests of Debtors' Professionals (the "Seventh Interim Fee Application") seeking $177,666.00 in fees and $16,271.73 in expenses for the period of February 1, 2009 to April 30, 2009.  On

August 11, 2009, the Court awarded Quinn Emanuel $177,666.00 in fees and $16,271.73 in expenses for the Seventh Interim Fee Period.

18.     On September 14, 2009, Quinn Emanuel filed the Eighth Interim Quarterly Fee Requests of Debtors' Professionals (the "Eighth Interim Fee Application") seeking $76,773.00 in fees and $1,895.25 in expenses for the period of May 1, 2009 to July 31, 2009.  On October 14, 2009, the Court awarded Quinn Emanuel $76,773.00 in fees and $1,895.25 in expenses for the Eighth Interim Fee Period.

19.     On January 8, 2010, Quinn Emanuel filed the Amended Ninth Interim Quarterly Fee Requests of Debtors' Professionals (the "Ninth Interim Fee Application") seeking $24,806.50 in fees and $7,885.03 in expenses for the period of August 1, 2009 to October 31, 2009.  On March 9, 2010, the Court awarded Quinn Emanuel $24,806.50 in fees and $7,885.03 in expenses for the Ninth Interim Fee Period.

20.     On March 17, 2010, Quinn Emanuel filed the Tenth Interim Quarterly Fee Requests of Debtors' Professionals (the "Tenth Interim Fee Application") seeking $43,149.00 in fees and $2,248.00 in expenses for the period of November 1, 2009 to January 31, 2010.  On May 4, 2010, the Court awarded Quinn Emanuel $43,149.00 in fees and $2,248.00 in expenses for the Tenth Interim Fee Period.

21.     On June 14, 2010, Quinn Emanuel filed the Eleventh Interim Quarterly Fee Requests of Debtors' Professionals (the "Eleventh Interim Fee Application") seeking on behalf of Quinn Emanuel $15,288.50 in fees and $178.88 in expenses for the period of February 1, 2010 to April 30, 2010.  On July 19, 2010, the Court awarded Quinn Emanuel $15,288.50 in fees and $178.88 in expenses for the Eleventh Interim Fee Period.

22.     On September 14, 2010, Quinn Emanuel filed the Twelfth Interim Quarterly Fee Requests of Debtors' Professionals (the "Twelfth Interim Fee Application") seeking on behalf of Quinn Emanuel $18,386.50 in fees and $144.68 in expenses for the period of May 1, 2010 to July 31, 2010.  On October 20, 2010, the Court awarded Quinn Emanuel $18,386.50 in fees and $144.68 in expenses for the Twelfth Interim Fee Period.

23.     The Final Fee Period covers the entire period from August 10, 2007 through and including November 30, 2010.[6]  Quinn Emanuel seeks approval of all fees and expenses incurred during the Final Fee Period and any other fees and expenses requested herein that remain unpaid pursuant to sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, and the Compensation Order.

24.     Quinn Emanuel has not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

25.     No promises have been received by Quinn Emanuel or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## III.     APPLICATION

26.     By this Application, Quinn Emanuel is seeking (a) allowance of reasonable compensation for actual and necessary professional services rendered by Quinn Emanuel, as special investigatory, litigation and conflicts counsel to the Debtors during the Monthly Fee Periods and Final Fee Period, and (b) reimbursement of actual, reasonable and

---

[6]     This final fee applications includes the fees and expenses incurred in October and November totaling $6,347.93.  Fee applications were not filed for the months of October and November so as not to incur further charges creating fee applications.  The fees and expenses for those months were incurred in connection with the preparation of this fee application, a letter to the Fee Committee, as well as, the September monthly fee application.

necessary expenses incurred by Quinn Emanuel in connection with such services during the Monthly Fee Periods and Final Fee Period.

27.     Quinn Emanuel rendered to the Debtors all services for which compensation is sought solely in connection with these cases, in furtherance of the duties and functions of the Debtors and the estates.

28.     Quinn Emanuel maintains written records of the time expended in the rendition of the professional services required by the Debtors. These records are maintained in the ordinary course of Quinn Emanuel's practice. Attached hereto as part of the cover sheet is a billing summary for the Final Fee Period, setting forth the name of each attorney and paraprofessional for whose work on these cases compensation is sought, each attorney's year of bar admission, the aggregate of the time expended by each such attorney and paraprofessional, the hourly billing rate for each such attorney and paraprofessional at Quinn Emanuel's current billing rates, and an indication of the individual amounts requested as part of the total amount of compensation requested. Also, set forth in the billing summary is additional information indicating whether each attorney is a partner or associate, and how many years each attorney has held such position. The compensation requested by Quinn Emanuel is based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

29.     The time entry records in the monthly fee applications were broken down in tenths of an hour by project category, in accordance with the U.S. Trustee Guidelines, setting forth detailed descriptions of services performed by each attorney and paraprofessional on behalf of the Debtors.

30.     Quinn Emanuel also maintains records of all actual and necessary expenses incurred in connection with the performance of professional services, a summary of which also is attached hereto as part of the cover sheet.  The summary lists the amounts and categories of expenses for which reimbursement is sought.  The monthly fee applications contain a summary of the expenses, including the date the expense was incurred or posted and the charge.

## IV.    SUMMARY OF PROFESSIONAL SERVICES RENDERED

31.     To provide an orderly and meaningful summary of the services rendered on behalf of the Debtors by Quinn Emanuel, in accordance with the U.S. Trustee Guidelines, Quinn Emanuel has established the following project billing categories in connection with these cases:

a)     Bank/Thrift Issues
b)     Cash Collateral and DIP Financing
c)     Case Management/Calendar Maintenance/Service of
d)     Class Actions
e)     Court Hearings
f)     Creditor Inquiries
g)     Employee Issues
h)     Fee Application Preparation/Fee Issues
i)     Government Issues/Investigations
j)     Insurance Issues
k)     Lender Claims
l)     Meetings
m)     Non-Working Travel (Only 50% Requested)
n)     Other Conflicts
o)     Plan and Disclosure Statement
p)     Recharacterization
q)     Retention of Professionals
r)     Rule 2004 Investigations
s)     Servicing Platform Issues
t)     Stay Relief Matters
u)     Travel Time

10

32.    Attached as Exhibit A is a detailed statement of fees incurred during the Monthly Fee Periods showing the amount of $6,273.00 due for fees.  Exhibit B is a detailed statement of expenses paid during the Monthly Fee Periods showing the amount of $332.93 for reimbursement of expenses.

33.    Fee applications were not filed for the months of October and November so as not to incur further charges creating fee applications.  The fees and expenses for those months were incurred in connection with the preparation of this fee application, a letter to the Fee Committee, as well as, the September monthly fee application.

34.    The following summary of the Final Fee Period is intended to highlight a number of the services rendered by Quinn Emanuel where Quinn Emanuel expended a considerable number of hours on behalf of the Debtors.  It is not meant to be a detailed description of all of the work performed by Quinn Emanuel during the Final Fee Period.  Such detailed descriptions show that Quinn Emanuel was heavily involved in the performance of services for the Debtors on a daily basis, including late night/early morning and weekend work, often under extreme time pressure to meet the needs of the Debtors in these cases.

A.    **Lender Claims:  (Final Fee Period- Total Hours: 3,258.70; Total Fees: $1,559,628.50)**

35.    As special investigatory and litigation counsel to the Debtors, one of Quinn Emanuel's principal tasks was to review and analyze the myriad transactions among the Debtors and their various lenders.  In addition to warehouse financing arrangements, the Debtors also were party to a number of ISDA "swap" agreements with various financial institutions. Quinn Emanuel attorneys dedicated time to reviewing and analyzing various financial relationships and agreements with these institutions, with an eye toward identifying the Debtors'

11

claims (if any) and rights under these agreements. Quinn Emanuel also reviewed these various agreements with a particular focus on agreements with BofA and Lehman Brothers, Inc., and Lehman Brothers Commercial Paper (together, "Lehman").

### *Lehman*

36.     Following Quinn Emanuel's review of various purported repurchase agreements entered into between the Debtors and Lehman, and both factual and legal research regarding potential claims and causes of action, Quinn Emanuel attorneys prepared and filed a complaint against Lehman on October 24, 2007. In the complaint, Quinn Emanuel, on behalf of the Debtors, alleged, among other things, that Lehman (i) breached the purported repurchase agreement by improperly devaluing the securities held as collateral, (ii) made improper margin calls based on the flawed valuation, (iii) improperly foreclosed on the collateral; and (iv) should turn over excess value above the amounts owed under the agreement under section 559 of the Bankruptcy Code.

37.     On November 26, 2007, Lehman filed a motion to dismiss the Debtors' complaint (the "Motion to Dismiss"). Quinn Emanuel attorneys extensively reviewed and analyzed Lehman's arguments, and prepared a comprehensive response to Lehman's motion to dismiss. In so doing, Quinn Emanuel attorneys expended time and effort conducting legal research in support of its arguments against Lehman. Ultimately, Quinn Emanuel attorneys filed a response to Lehman's Motion to Dismiss on December 10, 2007. The Court scheduled a hearing for oral argument on March 13, 2008.

38.     Quinn Emanuel attorneys prepared for the oral argument, which efforts included extensive research and analysis of both of the parties' positions and arguments. On March 13, 2008, Quinn Emanuel attorneys participated in oral argument before the Court on Lehman's Motion to Dismiss. On May 23, 2008, the Court granted in part Lehman's Motion to

Dismiss and (i) dismissed with prejudice the first four counts of American Home's Complaint, and four out of the five claims in the Complaint's fifth and final count; and (ii) dismissed without prejudice the portion of the Complaint's first count that alleged a pre-petition breach of contract (the "May 23rd Order").

39.     Quinn Emanuel attorneys analyzed and reviewed their appellate options with respect to the May 23rd Order and drafted a motion to alter and amend the May 23rd Order (the "Motion to Amend the May 23rd Order") to render it a final decision subject to immediate appeal by American Home.  On June 2, 2008, Quinn Emanuel attorneys, on behalf of American Home, filed the Motion to Amend the May 23rd Order and a brief in support thereof.  On June 16, 2008, Lehman objected to the Motion to Amend the May 23rd Order ("Lehman Objection").  Thereafter, Quinn Emanuel attorneys reviewed the Lehman Objection and extensively researched arguments in response thereto.  On June 23, 2008, Quinn Emanuel attorneys filed a reply to the Lehman Objection.  On June 30, 2008, the Court granted the Motion to Amend the May 23rd Order.

40.     Quinn Emanuel attorneys extensively reviewed and researched the relevant procedural requirements to appeal the Court's decision.  Thereafter, Quinn Emanuel attorneys prepared a request for certification for direct appeal to the United States Court of Appeals For The Third Circuit (the "Certification Request"), which was filed with the Court on July 10, 2008.  Lehman objected to the Certification Request on August 1, 2008, and the Court dismissed the Certification Request as moot on August 7, 2008, subject to American Home's rights to pursue the request with the District Court.  Quinn Emanuel attorneys then prepared a renewed request for certification of the May 23rd Order for submission to the District Court filing the same on August 18, 2008.

41.     On September 19, 2008, Lehman Brothers Inc. ("LBI") commenced a SIPA liquidation proceeding which, among other things, resulted in the imposition of section 362(a)'s automatic stay, halting this proceeding.  Noting the Lehman Bankruptcy Cases, the District Court entered an order denying the renewed request for certification and stayed the appellate proceeding on August 25, 2009.  Pursuant to American Home's chapter 11 plan, control of the instant action will be transferred to the plan trust.

### *Broadhollow and Melville*

42.     Prior to their bankruptcy filings, American Home funded a portion of their mortgage origination through structured financing techniques using special purpose entities ("SPEs").  Debtor American Home Mortgage Corp. is the sole member manager of SPEs such as Broadhollow Funding LLC ("Broadhollow") and Melville Funding LLC ("Melville").  Quinn Emanuel attorneys dedicated considerable time to reviewing and analyzing issues and considerations concerning the estate's interests in Broadhollow and Melville.  On October 22, 2007, Quinn Emanuel attorneys, on behalf of American Home Mortgage Servicing, Inc. ("AHMSI"), and the Broadhollow and Mellville special purpose entities (the "American Home Parties"), filed a complaint against BofA alleging, among other things, that BofA breached two "swap" agreements by failing to make allegedly required payments.  Quinn Emanuel attorneys filed, on behalf of the American Home Parties, an amended complaint on November 16, 2007.  The parties entered into a stipulated briefing schedule on December 11, 2007.

43.     On January 7, 2008, BofA filed a motion to dismiss the complaint, alleging that the Bankruptcy Court lacked subject matter jurisdiction to hear the dispute.  Quinn Emanuel attorneys extensively reviewed and analyzed BofA's motion to dismiss and researched their responsive arguments.  Quinn Emanuel attorneys prepared and filed on January 28, 2008 an answer to BofA's motion to dismiss.

14

44.    On February 21, 2008, BofA filed a reply brief in support of its motion to dismiss. Quinn Emanuel attorneys reviewed and analyzed BofA's reply and prepared, on American Home's behalf, a citation of subsequent authority, which was filed on February 14, 2008. Quinn Emanuel attorneys reviewed and analyzed BofA's arguments and defenses in preparation for oral argument on BofA's motion to dismiss, which took place on May 2, 2008.

45.    Following oral argument, the Court entered an order on June 27, 2008 granting in part and denying in part BofA's motion to dismiss. The Court dismissed AHMSI, but found it did have jurisdiction over the action and allowed it to proceed.

46.    On May 11, 2009, a group of noteholders filed a motion seeking to intervene in the Broadhollow Action (the "Noteholders' Intervention Motion"). Quinn Emanuel attorneys reviewed the relief requested in the Noteholders' Intervention Motion to ascertain its implications, if any, for the Debtors and the estate. After spending considerable time drafting an objection to the Noteholders' Intervention Motion (the "Noteholders' Reply"), Quinn Emanuel attorneys filed the objection on June 15, 2009. In the Noteholders' Reply, Quinn Emanuel attorneys argued *inter alia* that the noteholders cannot satisfy the standards applicable to intervention requests.

47.    On June 22, 2009, the noteholders filed a reply to Quinn Emanuel's objection and argued that the noteholders have non-contingent, concrete, and legally protectable interest in the adversary proceeding. Thereafter, Quinn Emanuel attorneys engaged in negotiations with the Noteholders' counsel concerning the Noteholders' Intervention Motion and potential resolution of the Noteholders requests. Quinn Emanuel attorneys negotiated a resolution of the Noteholders' Intervention Motion that involved the sale of American Home's equity interests in Broadhollow to the noteholders. As the new owners of Broadhollow, the

15

noteholders continued prosecuting the lawsuit against BofA.  On March 2, 2010, Quinn Emanuel attorneys filed a notice of substitution of counsel in the Broadhollow and Melville proceeding. Rosenthal Monhait & Goddess, P.A. and Diamond McCarthy LLP continue to represent Broadhollow.

### Wells Fargo

48.     On October 25, 2007, Wells Fargo Bank N.A. ("Wells Fargo") filed a complaint in the nature of interpleader against the Debtors and several Bear Stearns entities and affiliates ("Bear Stearns").  In its complaint, Wells Fargo sought to resolve competing claims asserted by the Debtors and Bear Stearns to a monthly payment (the "August Payment") on account of a certain trust certificate owned by the Debtors and allegedly foreclosed upon by Bear Stearns.  Quinn Emanuel attorneys extensively reviewed and analyzed the transaction documents governing the disputed payment.  Quinn Emanuel attorneys also analyzed Bear Stearns' arguments in support of its claim to the disputed payment.  Ultimately, Quinn Emanuel attorneys, on behalf of the Debtors, filed an answer to Wells Fargo's complaint on December 11, 2007.

49.     Thereafter, Quinn Emanuel attorneys reviewed, revised and negotiated a proposed scheduling stipulation with counsel for Wells Fargo and Bear Stearns governing the issues to be addressed and resolved in the proceeding (and reserving the estates' rights with respect to certain claims).  The parties entered into the finalized scheduling stipulation on January 14, 2008.

50.     Quinn Emanuel attorneys also engaged in the discovery process with Wells Fargo and Bear Stearns.  In particular, Quinn Emanuel attorneys drafted American Home's initial disclosures and requests for production of documents from Wells Fargo and Bear Stearns.  American Home's initial disclosures and requests for production were served on

February 6, 2008 and February 11, 2008, respectively (the "<u>American Home Requests</u>"). Bear Stearns served American Home with its requests for the production of documents on February 11, 2008 (the "<u>Bear Requests</u>"). Quinn Emanuel attorneys prepared responses to the Bear Requests and began the process of reviewing responsive non-privileged documents. Indeed, on March 3, 2008, Quinn Emanuel attorneys produced documents responsive to the Bear Requests and concurrently served American Home's response to the Bear Requests.

51.     Quinn Emanuel attorneys reviewed documents produced by Wells Fargo and Bear Stearns in response to the American Home Requests. Quinn Emanuel attorneys also drafted and prepared American Home's first set of contention interrogatories, which it served on Bear Stearns on March 17, 2008. Moreover, Quinn Emanuel attorneys drafted and prepared American Home's response to Bear Stearns' first set of contention interrogatories, which American Home served on Bear Stearns on March 31, 2008.

52.     On April 4, 2008, Bear Stearns requested that American Home produce additional documents and agree to extend the discovery schedule beyond the dates originally agreed upon ("<u>Bear's Supplemental Document Request</u>"). In response to Bear's Supplemental Document Request, Quinn Emanuel attorneys extensively searched and reviewed American Home's files for responsive non-privileged documents. On April 25, 2008, Quinn Emanuel attorneys produced additional responsive documents to Bear Stearns. Moreover, Quinn Emanuel attorneys also drafted and served American Home's second set of contention interrogatories on Bear Stearns on April 11, 2008.

53.     While reviewing American Home's production, Quinn Emanuel attorneys reviewed and catalogued all privileged and redacted documents that it produced to Bear Stearns during the discovery period (the "<u>Privilege Log</u>").  Indeed, Quinn Emanuel attorneys, on behalf of the Debtors, produced the Privilege Log to Bear Stearns on June 2, 2008.

54.     The discovery process with Wells Fargo and Bear Stearns consumed a significant amount of time over several months.  Indeed, on May 15, 2008, Bear Stearns served American Home with a deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "<u>Deposition Notice</u>").  On May 23, 2008, Bear Stearns also served American Home with a notice of deposition of a former employee.  Moreover, Quinn Emanuel attorneys drafted a notice of deposition for Bear Stearns' witness, which Quinn Emanuel attorneys served on Bear Stearns on May 19, 2008.

55.     Quinn Emanuel attorneys reviewed documents and prepared extensively for the deposition of Bear Stearns' hearing witness.  Quinn Emanuel attorneys deposed Bear Stearns' hearing witness on June 4, 2008.  Quinn Emanuel attorneys also prepared extensively for the deposition of American Home's hearing witness.  Ultimately, Quinn Emanuel attorneys defended American Home's witness at a deposition on June 6, 2008.

56.     Throughout the discovery period, Quinn Emanuel attorneys also prepared a motion for summary judgment on its claim to the disputed monthly payment (the "<u>American Home Summary Judgment Motion</u>"), and extensively researched related legal issues and extensively reviewed documents related thereto.  On July 2, 2008, Quinn Emanuel attorneys, on American Home's behalf, filed the American Home Summary Judgment Motion.  That same day Bear Stearns filed a motion for summary judgment on its claim to the disputed payment (the "<u>Bear Stearns Summary Judgment Motion</u>").  Quinn Emanuel attorneys prepared a response to

18

the Bear Stearns Summary Judgment Motion (the "Summary Judgment Response"), and

extensively researched related legal issues and reviewed documents related thereto. On July 16,

2008, Quinn Emanuel attorneys, on behalf of American Home, filed the Summary Judgment

Response.

57.     Quinn Emanuel attorneys worked closely with American Home in

reviewing the factual and legal issues presented by each party's summary judgment motions in

preparation for oral argument before the Court. The Court held a hearing on both summary

judgment motions on October 14, 2008 (the "Hearing"). At the Hearing, Quinn Emanuel

attorneys participated in oral argument before the Court on American Home's behalf. On

October 30, 2008, the Court entered an order and issued an opinion granting summary judgment

in favor of American Home and against Bear Stearns (the "Bankruptcy Court Opinion").

58.     On November 10, 2008, Bear Stearns appealed the Bankruptcy Court

Opinion (the "Appeal"). Ultimately, as required by the District Court's local rules, Quinn

Emanuel attorneys submitted a confidential mediation statement to the Appeal's designated

mediator on February 2, 2009. On February 10, 2009, Quinn Emanuel attorneys prepared for

and participated in the mediation with representatives of Bear Stearns (now JPMorgan Chase &

Co.), American Home, and the mediator. The parties did not reach agreement to settle the

Appeal, which proceeded to the District Court.

59.     On March 2, 2009, Bear Stearns and American Home entered into a

stipulated briefing schedule, which was approved by the Court on March 3, 2009 ("Scheduling

Stipulation"). Quinn Emanuel attorneys, on behalf of the Debtors, researched and analyzed

caselaw and arguments relating to Bear Stearns Appeal of the Bankruptcy Court Opinion to the

United States District Court. On April 2, 2009, Bear Stearns filed its amended statement of

issues, and appellate brief in support of its Appeal ("Bear Appellate Brief"). Thereafter, Quinn Emanuel attorneys, on behalf of the Debtors, reviewed the Bear Appellate Brief, researched and analyzed caselaw and arguments in opposition to the Bear Appellate Brief, and drafted American Home's response which was filed on April 27, 2009. Ultimately, On May 7, 2009, Bear Stearns filed its answering brief (the "Answering Brief") to American Home's response. Quinn Emanuel attorneys reviewed Bear Stearns' Answering Brief and also evaluated options with respect to whether to submit a sur-reply (which ultimately was not filed). On July 31, 2009, the District Court affirmed the Bankruptcy Court Opinion.

60.     Bear Stearns then appealed to the Third Circuit Court of Appeals (the "Third Circuit"). Quinn Emanuel attorneys reviewed the status of the appeal to the Third Circuit and prepared relevant disclosures in the Third Circuit appeal. Quinn Emanuel attorneys engaged and discussed with the Third Circuit mediator concerning the subject matter of the appeal. Quinn Emanuel received and analyzed appellant's opening brief filed on December 14, 2009 and filed its answering brief on January 14, 2010. The Third Circuit affirmed the lower court opinions in July 2010.

### U.S. Bank Litigation

61.     On April 21, 2008, U.S. Bank National Association ("U.S. Bank") filed a complaint in the nature of interpleader against the Debtors and several Bear Stearns entities and affiliates ("Bear Stearns"). In its complaint, U.S. Bank sought to resolve competing claims asserted by the Debtors and Bear Stearns to a monthly payment owing on account of a trust certificate owned by the Debtors and allegedly foreclosed upon by Bear Stearns.

62.     In light of the Bankruptcy Court Opinion holding for American Home in the Wells Fargo litigation, Quinn Emanuel attorneys, on American Home's behalf, reviewed and analyzed the relevant provisions of the trust certificate and related securitization documents

underlying the U.S. Bank litigation. Concluding that the facts and relevant legal documents underlying the U.S. Bank litigation were substantively identical to those underlying the Wells Fargo litigation, Quinn Emanuel attorneys, on American Home's behalf initiated a campaign to compel U.S. Bank to immediately pay the disputed payment to American Home (the "Demand Letter"). On December 8, 2008, Quinn Emanuel attorneys sent the Demand Letter to counsel for U.S. Bank and Bear Stearns. On December 9, 2008, U.S. Bank responded to American Home's requests by stating its intention to refrain from making the disputed payment. Thereafter, Quinn Emanuel attorneys prepared a final response on December 23, 2008.

63.     Quinn Emanuel attorneys, on behalf of the Debtors, then engaged in negotiations with counsel for U.S. Bank and Bear Stearns. Concluding that the U.S. Bank litigation related in many respects to the Wells Fargo litigation, the parties ultimately entered into a stipulation extending the Debtors and Bear Stearns' time to answer or otherwise respond to U.S. Bank's complaint, which was entered by the Court on June 9, 2008. Moreover, given the similarities between the Wells Fargo and U.S. Bank proceedings, American Home and Bear Stearns agreed that the outcome of the Wells Fargo proceeding would govern the instant proceeding.

64.     Since the competing claims to the August Payment have been resolved, a stipulation providing for the dismissal of the instant proceeding was filed. The Court approved the stipulation following a hearing on September 23, 2010. It also directed U.S. Bank to make the disputed monthly payment to American Home.

21

### Calyon Claim Objections

65.     The estates engaged in litigation with Calyon New York Branch concerning, *inter alia*, its claims under its repurchase agreement with American Home (and the estate's objections thereto).  Quinn Emanuel attorneys assisted American Home in responding to certain of Calyon's document demands and gathering responsive, non-privileged documents.

### Lender Claims

66.     Prior to the Petition Date, the Debtors were party to various agreements with financial institutions, including purported repurchase and secured loan agreements.  Many of these lenders made margin calls totaling hundreds of millions of dollars immediately prior to the Petition Date and began exercising remedies.  Quinn Emanuel, on behalf of the Debtors, reviewed these events and the facts and circumstances surrounding them to determine whether they gave rise to any estate claims or causes of action.

**B.**     **Recharacterization (Calyon, Credit Suisse, Bear Stearns):  (Final Fee Period- Total Hours: 1,995.80; Total Fees: $1,008,562.00)**

### Phase I

67.     Prior to the Petition Date, the Debtors were party to various financing agreements with warehouse lenders, including Calyon New York Branch, Credit Suisse First Boston Mortgage Capital LLC, Bear Stearns Mortgage Capital Corporation and others.  Often, these financing agreements took the purported form of "repurchase agreements" which allegedly entitled them to safe harbor protection under section 559 of the Bankruptcy Code.  Each of these three institutions initiated adversary proceedings in August 2007 seeking emergency relief directing the Debtors to turn over certain servicing files and documents.  The warehouse lenders each insisted (a) the automatic stay provisions of the Bankruptcy Code did not apply to these agreements and (b) American Home was required to surrender servicing, including files relating

to servicing, to the lenders.  American Home disputed these assertions, maintaining, among other

things, that each of the purported repurchase agreements were disguised secured financings that

did not fall within the Bankruptcy Code safe harbors (and should be separately recharacterized);

that the automatic stay applied to servicing; and that servicing remained property of the Debtors'

estates after the commencement of the cases.

68.    Quinn Emanuel's attorneys dedicated considerable time researching safe

harbor provisions (and the possible recharacterization of these agreements as disguised

financings).  Quinn Emanuel attorneys also dedicated time to responding to Credit Suisse's

applications for injunctive relief, which included preparing for and attending an expedited

hearing on August 16, 2007 and August 17, 2007 with respect to Credit Suisse's application for

an order directing the Debtors to turn over servicing files.

69.    Quinn Emanuel attorneys negotiated a stipulation governing the expedited

discovery and trial schedule with Credit Suisse, Calyon and Bear Stearns.  The trial would

proceed in two "Phases."  The first related to the character of the repurchase agreement and

would proceed on an expedited basis.

70.    To that end, Quinn Emanuel attorneys dedicated considerable time and

effort to discovery, which included, among other things: (i) preparing and propounding

document demands; (ii) reviewing and analyzing documents produced by Calyon, Credit Suisse

and Bear Stearns; (iii) corresponding with counsel for the defendants regarding various discovery

issues, including, without limitation, supplemental requests for production of documents;

(iv) reviewing and preparing responses and objections to discovery requests, including document

requests for deposition witnesses (e.g., witnesses produced pursuant to Fed. R. Civ. P. 30(b)(6));

(v) preparing for, and attending depositions of both American Home's witnesses and

Defendants' witnesses; and (vi) preparing for and attending a discovery "meet and confer" with plaintiffs.

71.    Quinn Emanuel attorneys also interviewed and identified an expert witness.  In connection with the expert witness, Quinn Emanuel attorneys conducted expert discovery, including the production of documents relied on by the expert in preparing his report and preparing for the expert depositions.  After taking the expert depositions, Quinn Emanuel attorneys spent a significant amount of time reviewing and responding to Credit Suisse First Boston's motion to exclude the testimony of American Home's expert witness.  Finally, Quinn Emanuel attorneys prepared and filed a motion to exclude the testimony of Calyon's expert witnesses.

72.    Calyon filed a motion for summary judgment.  Quinn Emanuel attorneys spent time reviewing and responding to the motion, including, without limitation, researching and preparing a motion to strike the same (which was argued on October 2, 2007).

73.    Quinn Emanuel attorneys spent a significant amount of time preparing for trial.  Preparations included identifying trial witnesses, researching and preparing a pretrial memorandum, identifying exhibits, preparing demonstrative evidence, preparing direct exam outlines, preparing cross exam outlines, and preparing opening statements.

74.    Ultimately, the trial commenced on November 5, 2007 with respect to both Credit Suisse and Calyon (Bear Stearns settled shortly before).  Credit Suisse settled its adversary proceeding prior to the conclusion of trial, which spanned four days until November 8, 2007.  Before trial, Quinn Emanuel attorneys argued motions in limine, specifically to exclude Calyon's expert and to defend against Calyon's motion to exclude American Home's expert.  The Court granted both motions.  At trial, Quinn Emanuel attorneys gave an opening statement,

cross-examined Calyon's witnesses and conducted the direct examination of Debtors' witnesses. Moreover, Quinn Emanuel attorneys prepared and participated in closing arguments on November 26, 2007. After closing arguments were heard, Quinn Emanuel attorneys spent a significant amount of time researching and preparing a post-trial brief. The Court issued its decision on January 4, 2008 (the "Phase I Decision").

75.     Thereafter, Calyon filed a motion to amend the Phase I Decision on January 25, 2008 (the "Calyon Motion"). Quinn Emanuel attorneys spent a significant amount of time reviewing and drafting American Home's response to the Calyon Motion, which was filed on February 8, 2008. The Court denied the Calyon Motion.

### Phase II

76.     Once the first phase of the trial was done, Quinn Emanuel attorneys began reviewing and analyzing issues to be determined during "Phase II," to resolve Calyon's request for payment of post-petition principal and interest payments relating to the mortgage loans. Thereafter, Calyon filed an amended complaint against American Home on February 4, 2008. As such, Quinn Emanuel attorneys spent time researching, drafting and preparing American Home's answer and counterclaims to Calyon's amended complaint, which was ultimately filed on March 3, 2008. Calyon also filed a motion to obtain funds allegedly withheld from Calyon by American Home on March 7, 2008.

77.     Throughout the second phase of the trial, Quinn Emanuel attorneys continued to spend a significant amount of time engaging in discovery, including: (i) drafting and finalizing American Home's request for documents from Calyon relating to Phase II of the Calyon litigation, which was ultimately served on Calyon on March 24, 2008; (ii) preparing written responses and objections to the second Calyon document requests; (iii) engaging in a "meet and confer" with Calyon regarding the scope of document discovery; (iv) extensively

searching and reviewing American Home's files for responsive non-privilege documents in response to the second Calyon document requests ultimately producing responsive documents to Calyon on April 30, 2008; (v) identifying witnesses for Phase II litigation, and drafting notices of deposition and related topics for deposition in the Phase II litigation; and (vi) reviewing Calyon's production of documents responsive to American Home's requests (the "Calyon Production").

78.   During the second phase of the trial, Quinn Emanuel attorneys also spent time preparing for and participating in depositions.  Indeed, Quinn Emanuel attorneys drafted and revised notices of deposition of Calyon, including a subpoena of Robert Love which American Home served on Calyon on May 30, 2008.  Moreover, Quinn Emanuel attorneys responded to Calyon's notice of deposition, served on American Home on May 5, 2008.  In preparation for the depositions, Quinn Emanuel attorneys reviewed and analyzed the Calyon Production, and American Home's production.

79.   Ultimately, Calyon and American Home reached a confidential settlement of the Phase II litigation on July 21, 2008, which the Court approved on August 8, 2008.

C.   **Insurance Issues:  (Final Fee Period- Total Hours: 659.6; Fees: $312,610.50)**

80.   Quinn Emanuel attorneys reviewed and analyzed the Debtors' mortgage insurance agreements with one of its mortgage insurers, Triad.  After repeated attempts by American Home to consensually resolve certain disputes with Triad, it ultimately initiated litigation against Triad relating to insurance coverage for certain mortgage loans.  Quinn Emanuel attorneys reviewed the possible claims and causes of action against Triad, and prepared and filed, on American Home's behalf, a complaint alleging that Triad's cancellations of insurance certifications for fourteen loans originated by the Debtors violated the relevant and applicable policies and agreements among the Debtors and Triad on November 5, 2007.  In

response to the complaint, Triad filed an answer and counterclaim against American Home on December 6, 2007. Quinn Emanuel attorneys then reviewed and analyzed Triad's claim against the estate. Ultimately, on December 26, 2007, Quinn Emanuel attorneys filed, on American Home's behalf, an answer to Triad's counterclaim.

81.    Quinn Emanuel attorneys engaged in various aspects of the discovery process with Triad. Quinn Emanuel attorneys drafted, and negotiated with Triad, a scheduling order governing discovery and Triad in the proceeding. On January 11, 2008, Triad served American Home with its interrogatories and requests for the production of documents (the "Triad Requests"). Thereafter, on February 12, 2008, Quinn Emanuel attorneys, on behalf of American Home, served Triad with its interrogatories and requests for the production of documents (the "American Home Requests"). On March 20, 2008, Triad responded to the American Home Requests and produced documents responsive to the American Home Requests to American Home (the "Triad Response"). Quinn Emanuel attorneys reviewed the documents produced by Triad. In response to the Triad Requests, Quinn Emanuel attorneys also extensively searched and reviewed American Home's files for responsive, non-privileged documents.

82.    On May 15, 2008, Triad amended the answer and counterclaim to enlarge the number of insurance claims at issue in the adversary proceeding from fourteen to forty-two (the "Amended Answer"). Quinn Emanuel attorneys then reviewed and analyzed the allegations in Triad's Amended Answer.

83.    Discovery efforts also included negotiating a schedule to conduct depositions. Quinn Emanuel attorneys then drafted deposition notices and subpoenas of Triad's witnesses. Indeed, Quinn Emanuel attorneys prepared extensively for these depositions, which ultimately occurred on June 9, 2008, June 10, 2008, and June 11, 2008. Quinn Emanuel

attorneys also prepared several American Home witnesses for depositions noticed by Triad. Ultimately, Quinn Emanuel attorneys defended the American Home witnesses during depositions that occurred on June 25, 2008 and June 26, 2008.

84.     Quinn Emanuel attorneys, on behalf of American Home, evaluated potential alternatives for the resolution of the litigation with Triad.  To that end, on September 29, 2008, Triad and American Home entered into a joint stipulation dismissing the adversary proceeding against Triad.  The Court entered an order approving the joint stipulation on September 30, 2008.

## V.     FACTORS TO BE CONSIDERED IN AWARDING ATTORNEYS' FEES

85.     The factors to be considered in awarding attorneys fees have been enumerated in In re First Colonial Corporation of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), cert. denied, 431 U.S. 904, which standards have been adopted by most courts.  See, e.g., In re Lan Assoc., 192 F.3d 109, 123 n.8 (3d. Cir. 1999) (suggesting First Colonial factors apply to § 330 compensation requests).  Quinn Emanuel respectfully submits that a consideration of these factors should result in this Court's allowance of the full compensation sought.

(1)     The Time and Labor Required.  The professional services rendered by Quinn Emanuel on behalf of the Debtors required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends. The services rendered required a high degree of professional competence and expertise in order to be administered with skill and dispatch.

(2)     The Novelty and Difficulty of Questions.  In these cases, as in many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

(3)     The Skill Requisite to Perform the Legal Services Properly.  Quinn Emanuel believes that its recognized expertise in the area of bankruptcy related litigation and its practical approach to the resolution of issues contributed to maximizing the size of the Debtors' estate.

(4)     The Preclusion of Other Employment by Applicant Due to Acceptance of the
        Case. The matters in which Quinn Emanuel's bankruptcy litigation practice
        group were involved needed attention on a continuous basis and required several
        of Quinn Emanuel's attorneys to commit significant portions of their time to these
        cases.

(5)     The Customary Fee. The compensation sought herein is based upon Quinn
        Emanuel's normal hourly rates for services of this kind. Quinn Emanuel
        respectfully submits that the compensation sought herein is not unusual given the
        magnitude and complexity of these cases and the time dedicated to the
        representation of the Debtors. Such compensation is commensurate with fees
        charged by other attorneys of comparable experience.

(6)     Whether the Fee is Fixed or Contingent. Quinn Emanuel charges customary
        hourly rates for the time expended by its attorneys and paraprofessionals in
        representing the Debtors and Quinn Emanuel's fee is not outcome dependent.
        Pursuant to sections 330 and 331 of the Bankruptcy Code, all fees sought by
        professionals retained under section 327 or 1103 of the Bankruptcy Code are
        contingent pending final approval by the Court, and are subject to adjustment by
        the Court depending upon the services rendered and the results obtained.

(7)     Time Limitation Imposed by Client or Other Circumstances. As stated above,
        Quinn Emanuel has been required to attend to various issues as they have arisen
        in these cases. Occasionally, Quinn Emanuel has had to perform those services
        under significant time constraints requiring attorneys and paraprofessionals
        assigned to these cases to work evenings and on weekends.

(8)     The Experience, Reputation and Ability of the Attorneys. Quinn Emanuel's
        attorneys involved in this representation have played a major role in numerous
        complex restructurings. Quinn Emanuel's experience enables it to perform the
        services described herein competently and expeditiously.

(9)     The "Undesirability" of the Case. These cases are not undesirable, but as already
        indicated, have required a significant commitment of time from several of Quinn
        Emanuel's attorneys.

(10)    Nature and Length of Professional Relationship. Quinn Emanuel was selected as
        the Debtors special litigation counsel on August 10, 2007, and was retained nunc
        pro tunc to that date pursuant to an order of this Court dated September 13, 2007.

## VI.   ALLOWANCE OF COMPENSATION

86.     The professional services rendered by Quinn Emanuel have required a

high degree of professional competence and expertise so that the numerous issues requiring

evaluation and action by the Debtors could be addressed with skill and dispatch. It is

29

respectfully submitted that the services rendered to the Debtors were performed efficiently,

effectively and economically, and the actions taken to date have been in furtherance of the

Debtors' interests.

87.     The allowance of compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> Any professional person . . . may apply to the court not more than
> once every 120 days after an order for relief in a case under this
> title, or more often if the court permits, for such compensation for
> services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. This Court has authorized the filing of this Application in the Compensation

Order.

88.     With respect to the level of compensation, section 330(a)(1) of the

Bankruptcy Code provides, in pertinent part, that the Court may award to a professional person:

"reasonable compensation for actual, necessary services rendered."  Section 330(a)(3)(A), in

turn, provides that:

> [i]n determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including –
>
> (A)     the time spent on such services;
>
> (B)     the rates charged for such services;
>
> (C)     whether the services were necessary to the administration
>         of, or beneficial at the time which the service was rendered
>         toward the completion of, a case under this title;
>
> (D)     whether the services were performed within a reasonable
>         amount of time commensurate with the complexity,
>         importance, and nature of the problem, issues or task
>         addressed; and

(E)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a) (3) (A).

89.   The congressional policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases.  See In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts") (citation and internal quotation marks omitted); In re Babcock & Wilcox Co., 526 F.3d 824, 827 (5th Cir. 2008).

90.   Quinn Emanuel spent 19.1 in connection with this matter during the Monthly Fee Periods, which services have a fair market value of $6,273.00.  The total time spent by Quinn Emanuel attorneys and paraprofessionals during the Final Fee Period was 7040.2 hours, which services have a fair market value of $3,260,491.75.  As shown by this Application and supporting exhibits, Quinn Emanuel spent its time economically and without unnecessary duplication of time (or duplication of the efforts of the Debtors' other retained professionals).  In addition, the work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

### VII.   EXPENSES

91.   Quinn Emanuel has expended $332.93 in actual, reasonable and necessary expenses in connection with representing the Debtors during the Monthly Fee Periods.  Quinn Emanuel has expended the total amount $192,546.48 in actual, reasonable and necessary expenses in connection with representing the Debtors during the Final Fee Period.  Quinn Emanuel maintains records of all actual and necessary expenses incurred in connection with the performance of professional services.

31

92.    In connection with the reimbursement of actual, reasonable and necessary expenses, it is Quinn Emanuel's policy to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients. The expenses charged to Quinn Emanuel's clients include, among other things, telephone and telecopier toll and other charges, mail and express mail charges, document word-processing charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research, transcription costs, as well as non-ordinary overhead expenses particularly attributable to an individual client or cases such as secretarial and other overtime.

93.    Quinn Emanuel charges the Debtors' estates for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients. Quinn Emanuel seeks reimbursement from the estate at the following rates for the following expenses: (a) ten cents per page for photocopying;[7] and (b) one dollar per page for out-going facsimiles. In accordance with section 330 of the Bankruptcy Code and with the U.S. Trustee Guidelines, Quinn Emanuel will seek reimbursement only for the actual cost of such expenses to Quinn Emanuel.

94.    In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay, except that the reimbursable cost of photocopying and faxes includes a factor for the cost of equipment.

---

[7]    Quinn Emanuel inadvertently charged the estate $.13 per copy from February 1, 2008 through August 31, 2008. These charges have been reduced to $.10. As such, Quinn Emanuel has deducted its printing/photocopying charges by $157.10.

95.     Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hour fees and expenses for secretarial, library, word processing, and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  Quinn Emanuel has incurred, but has not charged, the Debtors' estate for any word processing or secretarial overtime charges.

## VIII.  CONCLUSION

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, (i) approving and allowing Quinn Emanuel monthly compensation in the amount of $6,273.00 for actual, reasonable and necessary professional services rendered and reimbursement of $332.93 for actual, reasonable and necessary expenses incurred during the Monthly Fee Periods, (ii) approving and allowing Quinn Emanuel compensation in the amount of $3,260,491.75 for actual, reasonable and necessary professional services rendered and reimbursement of $192,546.48 for actual, reasonable and necessary expenses incurred during the Final Fee Period, (iii) authorizing and directing the Debtors to pay to Quinn Emanuel the amount $3,453,038.23, which is equal to the aggregate of such allowed compensation and of such expense reimbursement; and (iv) granting such further relief as is just and necessary.

Dated:  Wilmington, Delaware
      January 11, 2011

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____
        James C. Tecce

      51 Madison Avenue, 22nd Floor
      New York, New York  10010
      Telephone:  (212) 849-7000
      Telecopier: (212) 849-7100