## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re:                                                          :    Chapter 11
                                                                :
AMERICAN HOME MORTGAGE                                           :    Case No.  07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]              :
                                                                :    Jointly Administered
                                            Debtors.            :
------------------------------------------------------------------ x

### NOTICE OF FILING OF PLAN TRUST AGREEMENT

PLEASE TAKE NOTICE that, on December 21, 2010, the above-captioned

debtors, (the "Debtors") filed the executed Plan Trust Agreement attached as Exhibit A.


Dated: Wilmington, Delaware
       January 18, 2011

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              /s/ Sean M. Beach
                              Sean M. Beach (No. 4070)
                              Margaret B. Whiteman (No. 4652)
                              Patrick A. Jackson (No. 4976)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone: (302) 571-6600
                              Facsimile: (302) 571-1253

                                       - and –

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation (f/k/a American Home Mortgage Servicing, Inc.) (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, NY 10022
Telephone: (212) 478-7200


Counsel for Plan Trust

**Exhibit A**

## PLAN TRUST AGREEMENT

This Plan Trust Agreement (the "Trust Agreement"), dated as of November 30, 2010 (the "Effective Date"), by and between American Home Mortgage Holdings, Inc., a Delaware corporation; American Home Mortgage Investment Corp., a Maryland corporation; American Home Mortgage Acceptance, Inc., a Maryland corporation; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation; American Home Mortgage Corp., a New York corporation; American Home Mortgage Ventures LLC, a Delaware limited liability company; Homegate Settlement Services, Inc., a New York corporation; and Great Oak Abstract Corp., a New York corporation (collectively, the "Debtors") and Steven D. Sass as Plan Trustee (the "Plan Trustee"), is executed in connection with the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of November 25, 2008 (as may be amended from time to time, the "Plan") that was filed by the Debtors in the United States Bankruptcy Court for the District of Delaware (the "Court") and provides for the establishment of a liquidating trust evidenced hereby (the "Plan Trust"). All capitalized terms that are used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

### W I T N E S S E T H

WHEREAS, the Plan Trust is created pursuant to, and to effectuate, the Plan;

WHEREAS, the Plan Trust is established for the purpose of liquidating the Debtors' assets for the benefit of the Holders of Allowed Claims, resolving Disputed Claims and making distributions on Allowed S/A/P Claims and Allowed Unsecured Claims in accordance with the Plan, this Trust Agreement and Section 301.7701-4(d) of the Treasury Regulations, and with no objective or authority to continue or engage in the conduct of a trade or business; and

WHEREAS, the Plan Trust is intended to qualify as a liquidating trust for federal income tax purposes.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Plan Trustee agree as follows:

### ARTICLE I

### ESTABLISHMENT OF THE PLAN TRUST

1.1    Transfer of Property to Plan Trustee; Assignment and Assumption of Claims.

(a)    Pursuant to the Plan, except as provided in Section 1.2 below, each of the Debtors hereby transfers, assigns, and delivers to the Plan Trustee, for the benefit of the Holders of Allowed Claims (whether or not such Claims are Allowed as of the Effective Date), all of its right, title, and interest in and to all its assets free and clear of any Lien, Claim or Interest of any other Person or entity except as provided in the Plan (such assets, the "Trust Assets"). The Plan Trustee agrees to accept and hold the

Trust Assets in trust for the Holders of Allowed Claims subject to the terms of this Trust Agreement and the Plan.

(b)    The Plan Trustee on behalf of the Plan Trust hereby assumes, and agrees that all such Trust Assets will be transferred to the Plan Trust subject to, the following liabilities, if any, which arise out of or relate to any known or unknown claim (as such term is defined in Section 101(5) of the Bankruptcy Code) or cause of action against the Debtors or their respective Estates:  (i) Allowed S/A/P Claims that have not been paid as of the Effective Date; (ii) S/A/P Claims that have not been Allowed as of the Effective Date but which are subsequently Allowed; (iii) all U.S. Trustee Fees until such time as the Court enters a final decree closing each Debtor's Chapter 11 Case; (iv) any expenses incurred and unpaid, or to be incurred, by the Plan Trustee in the performance of his administrative duties in liquidating the Trust Assets and winding up the Debtors' Estates (including the filing of final tax returns and the payment of any taxes shown thereon, and any tax liability determined to be due and owing pursuant to any requests for expedited determinations under Section 505 of the Bankruptcy Code); (v) any obligations owing pursuant to the Plan and unpaid; (vi) payroll taxes owing to federal, state or local tax authorities by the Debtors in respect of payments or distributions on Claims, but only to the extent such payroll taxes constitute S/A/P Claims, and excluding any taxes satisfied through withholding; but (vii) specifically excluding any Claims which have been barred by, or satisfied under, the Plan.

1.2    <u>BofA Mortgage Loans</u>.  The legal ownership of all BofA Mortgage Loans held by either American Home Mortgage Corp. ("<u>AHMC</u>") or American Home Mortgage Acceptance, Inc. ("<u>AHMA</u>" and, together with AHMC, collectively, the "<u>Mortgage Holding Corporations</u>") prior to the Effective Date shall, on the Effective Date, vest in the entity that owned such loans prior to the Effective Date.  Subject to Section 2.2 hereof, the Plan Trustee shall take all necessary actions to keep each Mortgage Holding Corporation in good standing in its state of incorporation and in each state where each Mortgage Holding Corporation is required to be registered to do business and, except as provided in Section 3.3(f) hereof, to continue the corporate existence of AHMC and AHMA; <u>provided</u>, <u>however</u>, that all costs for such actions shall be paid from the proceeds of the BofA Syndicate's collateral in accordance with the BofA Global Settlement Stipulation.  In accordance with the Plan and Confirmation Order, from and after the Effective Date, the Plan Trustee shall be the sole stockholder of each of the Mortgage Holding Corporations and the stock of the Mortgage Holding Corporations shall constitute Trust Assets.  The Plan Trustee shall take all actions necessary as the sole stockholder to cause the person(s) designated by BofA as Administrative Agent to be elected as the director(s) of the Mortgage Holding Corporations and appointed as the President, Secretary, and Treasurer of each of the Mortgage Holding Corporations; <u>provided</u>, <u>however</u>, that the Plan Trustee shall have no obligation to serve as director or officer of a Mortgage Holding Corporation unless BofA as Administrative Agent agrees to provide, on terms acceptable to the Plan Trustee and the Plan Oversight Committee in their reasonable discretion, (i) for reasonable compensation to the Plan

2

Trustee for services rendered to such Mortgage Holding Corporation as director and/or officer, and (ii) for indemnification of the Plan Trustee from and against any losses, expenses (including attorneys' fees), judgments, fines, or other amounts paid or payable as a result of or relating to any threatened, pending or contemplated action, suit or proceeding, ether civil, criminal, administrative, investigative or otherwise, by reason of the fact that the Plan Trustee is or was a director or officer of such Mortgage Holding Corporation.

      1.3    Title to Trust Assets.

      (a)    The Debtors shall transfer such Trust Assets to the Plan Trust in exchange for beneficial ownership interests in the Plan Trust (the "Beneficial Interests") for the benefit of Holders of Allowed Claims in accordance with the Plan. The Plan Trustee will then distribute the Beneficial Interests to the record holders of Allowed Claims and will hold in a reserve those interests for the benefit of Holders of Disputed Claims in exchange for their Claims (the "Disputed Claims Reserve Trust"). Upon the transfer of the Trust Assets, the Plan Trustee shall succeed to all of the Debtors' right, title and interest in the Trust Assets and neither the Debtors nor their Estates will have any interest in, or with respect to, the Trust Assets or this Plan Trust.

      (b)    For all federal income tax purposes, all parties (including, without limitation, the Debtors, the Plan Trustee and the Holders of Allowed Claims) shall treat the transfer of Trust Assets to the Plan Trust, as set forth in this Section 1.3 and in accordance with the Plan, as a transfer to the Holders of Allowed Claims (and, as provided in the Plan, in respect of any Disputed Claims, to the Plan Trustee to be held in the Disputed Claims Reserve Trust), followed by a transfer by such Holders to the Plan Trust, and the beneficiaries of this Plan Trust shall be treated as the grantors and owners hereof.

      1.4    Appointment of the Plan Trustee. The Plan Trustee shall be Steven D. Sass.

## ARTICLE II

## BENEFICIAL INTERESTS

      2.1    Identification of Holders of Beneficial Interests. The record holders of Beneficial Interests shall be recorded and set forth in a register maintained by the Plan Trustee expressly for such purpose. All references in this Trust Agreement to holders shall be read to mean holders of record as set forth in the register maintained by the Plan Trustee. Unless expressly provided herein, the Plan Trustee may establish a record date that it deems practicable for determining the holders for a particular purpose. The distribution of Beneficial Interests to either a holder of an Allowed Claim or to the Disputed Claims Reserve Trust shall be accomplished as set forth in this Trust Agreement and in the Plan.

2.2    Transferability of Beneficial Interests.

(a)    All Beneficial Interests shall be uncertificated and issued to Holders of Allowed Claims by book entry only in the register maintained by the Plan Trustee. The Plan Trustee shall not be required to send any notice to Holders of Allowed Claims upon the issuance of the Beneficial Interests. Notwithstanding the foregoing, upon request made to the Plan Trustee in writing by a Holder of an Allowed Claim or a Disputed Claim, the Plan Trustee shall confirm the amount of Beneficial Interests thus issued in the name of such Holder.

(b)    Subject to the provision of Section 2.3(c) below, the Beneficial Interests shall be non-transferable by the Holders of Allowed Claims upon and after issuance. Any purported assignment, pledge, mortgage, sale, transfer or other disposition other than as permitted in Section 2.3(c) shall be void and will not be registered on the register maintained by the Plan Trustee.

(c)    The Beneficial Interests may be transferred by an individual solely by will or the laws of descent and distribution. Any such transfer, however, shall not be effective until and unless the Plan Trustee receives written notice of such transfer.

## ARTICLE III

## PURPOSE, AUTHORITY, LIMITATIONS, AND DISTRIBUTIONS

3.1    Purpose of the Plan Trust. The Plan Trust shall be established for the sole purpose of liquidating the Trust Assets, resolving Disputed Claims and making distributions on Allowed S/A/P Claims and Allowed Unsecured Claims in accordance with the Plan, this Trust Agreement and Section 301.7701-4(d) of the Treasury Regulations, and with no objective to continue or engage in the conduct of a trade or business. Accordingly, the Plan Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Trust Assets of the Plan Trust, make timely distributions and not unduly prolong the duration of the Plan Trust. The liquidation of the Trust Assets may be accomplished either through the sale of Trust Assets (in whole or in combination), including the sale of Causes of Action or through the prosecution or settlement of Causes of Action, or otherwise.

3.2    Authority of Plan Trustee. In connection with the administration of the Plan Trust, the Plan Trustee is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the Plan Trust except as set forth in this Trust Agreement. All acts performed by the Plan Trustee shall be subject to Plan Oversight Committee oversight as set forth in Section 4.2, unless stated otherwise herein. Without limiting, but subject to, the foregoing and to Section 3.4, the Plan Trustee shall be expressly authorized, but shall not be required, to:

4

(a)     prosecute, abandon, collect, compromise and settle any Causes of Action in accordance herewith, subject to any limitations as may be determined by the Plan Oversight Committee, without further approval of, or application to, the Bankruptcy Court;

(b)     file, prosecute, compromise and settle objections to Claims, and in his sole discretion and without the prior approval of the Plan Oversight Committee and without further approval of, or application to, the Bankruptcy Court, compromise, settle, decline to object to, and/or allow any Disputed Claim asserted in an amount less than (i) $250,000 for an S/A/P Claim or (ii) $2,500,000 for an Unsecured Claim;

(c)     recover and compel turnover of the Debtors' property as may be permitted by the Bankruptcy Code or applicable state law, including, without limitation, those identified in the Disclosure Statement;

(d)     open and maintain bank accounts in the name of the Plan Trust, draw checks and drafts thereon on the sole signature of the Plan Trustee, and terminate such accounts as the Plan Trustee deems appropriate;

(e)     sell or liquidate any Trust Assets, without further approval of or application to the Bankruptcy Court or the Plan Oversight Committee, except as otherwise provided herein;

(f)     execute any documents, file any pleadings, and take any other actions related to, or in connection with, the liquidation of the Trust Assets and the exercise of the Plan Trustee's powers granted herein, including the exercise of the Debtors' or the Creditors Committee's respective rights to conduct discovery and oral examination of any party under Rule 2004 of the Federal Rules of Bankruptcy Procedure;

(g)     hold legal title to any and all rights of the beneficiaries in or arising from the Trust Assets, including, but not limited to, collecting and receiving any and all money and other property belonging to the Plan Trust and the right to vote any claim or interest in an unrelated case under the Bankruptcy Code and receive any distribution thereon;

(h)     protect and enforce the rights to the Trust Assets by any method it deems appropriate, including by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

(i)     deliver distributions as may be authorized by the Plan;

(j)     file, on behalf of the Debtors, all tax returns of the Debtors;

5

(k)    file, if necessary, any and all tax returns with respect to the Plan Trust; pay taxes, if any, properly payable by the Plan Trust; and make distributions to the beneficiaries net of such taxes in accordance with the requirements hereof;

(l)    make all necessary filings in accordance with any applicable law, statute or regulation;

(m)    except as otherwise provided herein, dissolve any corporate entities, terminate joint ventures, or otherwise wind up any corporate entity owned by the Plan Trust;

(n)    execute offsets against Claims as provided for in the Plan;

(o)    assert or waive any privilege or defense on behalf of the Plan Trust or the Debtors;

(p)    pay all U.S. Trustee Fees until such time as the Court enters a final decree closing each Debtor's Chapter 11 Case;

(q)    determine and satisfy any and all liabilities created or incurred or assumed by the Plan Trust;

(r)    invest moneys received by the Plan Trust or otherwise held by the Plan Trust in accordance with Section 4.5 hereof;

(s)    in the event that the Plan Trustee determines that the beneficiaries or the Plan Trustee may, will or have become subject to adverse tax consequences, take such actions that will, or are intended to, alleviate such adverse tax consequences;

(t)    utilize the Trust Assets to purchase or create and carry all appropriate insurance policies and pay all insurance premiums and costs necessary or advisable to insure the acts and omissions of the Plan Trustee, and the Plan Oversight Committee and its members;

(u)    obtain insurance coverage with respect to real and personal property which may become Trust Assets, if any;

(v)    obtain unsecured or secured credit to fund Plan Trust administration or litigation, or for any other purpose consistent with this Trust Agreement;

(w)    create one more Entities for the purpose of holding or managing Trust Assets, or in connection with the sale or other disposition thereof, or for any other purpose consistent with the Plan, Confirmation Order, or this Trust Agreement;

6

(x)    retain and pay law firms, subject to the pre-approval of the Plan Oversight Committee, as counsel to the Plan Trust to aid in the prosecution of any claims that constitute the Trust Assets, and to perform such other functions as may be appropriate. The Plan Trustee shall pay such law firms reasonable compensation for services rendered and expenses incurred. A law firm shall not be disqualified from serving as independent counsel to the Plan Trust solely because of its prior retention as counsel to the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases;

(y)    retain and pay, subject to the pre-approval of the Plan Oversight Committee, an independent public accounting firm to perform such reviews and/or audits of the financial books and records of the Plan Trust as may be appropriate and to prepare and file any tax returns or information returns for the Plan Trust as may be required. The Plan Trustee shall pay such independent public accounting firm reasonable compensation for services rendered and expenses incurred. An accounting firm shall not be disqualified from being retained by the Plan Trust solely because of its prior retention by the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases;

(z)    retain and pay, subject to the pre-approval of the Plan Oversight Committee, third parties to assist the Plan Trustee in carrying out its powers and duties under this Trust Agreement. The Plan Trustee shall pay all such persons or entities reasonable compensation for services rendered and expenses incurred. The Plan Trustee may commit the Plan Trust to indemnify any such parties in connection with the performance of services subject to the approval of the Plan Oversight Committee. A third party shall not be disqualified from being retained by the Plan Trust solely because of such party's prior retention by the Debtors, the Committee, or any of the individual members of the Committee in the Chapter 11 Cases;

(aa)    employ employees, subject to the pre-approval of the Plan Oversight Committee, to assist the Plan Trustee in carrying out its powers and duties under this Trust Agreement. The Plan Trustee shall pay all such employees reasonable salary in the amounts it shall determine to be appropriate. If the Plan Trustee employs employees pursuant to this section, the Plan Trustee shall establish payroll procedures and pay any and all federal, state or local tax withholding required under applicable law with respect to any such employees, obtain workers' compensation insurance, and take all other actions it deems necessary to effectuate the provisions of this section;

(bb)    preserve and maintain all documents and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred to or otherwise acquired by the

7

Plan Trust or the Plan Trustee in accordance with the Plan and this Trust Agreement or, in the Plan Trustee's sole discretion and without the prior approval of the Plan Oversight Committee or the Bankruptcy Court, abandon or destroy such Records in accordance with, and to the extent permitted by, prior Orders of the Bankruptcy Court concerning the preservation and destruction of documents generally or with respect to certain third parties [including, without limitation, Docket Nos. 2724, 3010 and 4858] (collectively, the "Destruction Orders"), each of which Destruction Orders shall be preserved and shall continue in effect against the Plan Trustee as successor to the Debtors, unless the Plan Trustee files a motion on notice to interested Persons seeking to modify any such Destruction Order; provided, however, that notwithstanding anything to the contrary in the Plan, this Trust Agreement, or the Confirmation Order, except as authorized by the Destruction Orders, the Plan Trustee shall not destroy or otherwise abandon any Records absent further Order of the Bankruptcy Court after a hearing upon notice to all interested Persons with an opportunity to be heard;

(cc)    prepare and file post-Confirmation quarterly reports in conformance with the U.S. Trustee guidelines and prepare and report telephonically, and if requested by the Plan Oversight Committee, in writing or in person, a quarterly report of the status of the process of winding down the Estates including Causes of Action;

(dd)    exercise any and all rights afforded a debtor under Section 505 of the Bankruptcy Code to request a determination of the state and federal tax liabilities of the Debtors, whether such liabilities were incurred prior to the Petition Date or during the pendency of the Chapter 11 Cases including, but not limited to, requesting an expedited determination of taxes of the Plan Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust;

(ee)    take or refrain from taking any and all actions as may be necessary or helpful to accomplish the purposes of the Plan, including, without in any manner limiting any of the foregoing, dealing with the Trust Assets or any part or parts thereof in all other ways as would be lawful and prudent for any person or entity owning the same to deal therewith; provided, however, that any such actions shall be limited to those that are consistent with maintaining the Plan Trust's status as a liquidating trust within the meaning of Section 301.7701-4(d) of the Treasury Regulations; and

(ff)    enforce the rights and perform the obligations of the Debtors under the BofA Global Settlement Stipulation.

8

3.3    Limitation of Plan Trustee's Authority.

(a)    Notwithstanding anything herein to the contrary, the Plan Trustee shall not be authorized to engage in any trade or business, or vary any investment with respect to the Trust Assets or any proceeds therefrom (other than as provided in Section 4.5, herein), and shall take such actions consistent with the orderly liquidation of the Trust Assets as are required by applicable law, and such actions permitted under Sections 3.2, 3.5, 3.6 and 4.5 hereof. Notwithstanding any authority granted by Section 3.2 or otherwise within this Trust Agreement, the Plan Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Plan Trust as a liquidating trust and a fixed investment trust within the meaning of Treasury Regulation Sections 301.7701-4(d) and (c), respectively, or inconsistent with Section 345 of the Bankruptcy Code.

(b)    The Plan Trustee shall not make the election described in Section 1.468B-9(c)(ii) of the Treasury Regulations to treat any portion of the Plan Trust subject to disputed claims as a "disputed ownership fund."

(c)    Neither the Plan Trust nor the Plan Trustee shall take any action that would result in the Plan Trust becoming subject to registration as an "investment company" pursuant to the Investment Company Act of 1940, as amended.

(d)    The Plan Trustee shall not commingle any of the plan Trust Assets with his or her own property or the property of any other person.

(e)    The Plan Trustee shall not transfer the stock of a Mortgage Holding Corporation until the earlier of (i) the termination of the Plan Trust and (ii) such time as such Mortgage Holding Corporation no longer holds legal title to any mortgage loans. If the Plan Trust terminates with one or both Mortgage Holding Corporations holding legal title to mortgage loans, the stock of such Mortgage Holding Corporations shall be distributed by the Plan Trustee as directed by BofA as Administrative Agent.

(f)    The Plan Trustee shall not terminate, dissolve, or permit the termination or dissolution of, a Mortgage Holding Corporation without the written consent of BofA as Administrative Agent.

(g)    Notwithstanding anything contained in this Trust Agreement to the contrary, the Plan Trustee may, but is not required to, submit a proposed settlement to a court of competent jurisdiction, including the Bankruptcy Court, for its approval, and may comply with any settlement approved by such court, and shall have no obligation to submit any such action to the procedures set forth in this Section 3.3 hereof.

9

3.4    <u>Books and Records</u>.  The Plan Trustee shall maintain books and records relating to the Trust Assets, the income of the Plan Trust and the payment of expenses of, and liabilities of claims against or assumed by, the Plan Trust in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof in accordance with Article VI hereof and to comply with applicable provisions of law.  Such books and records shall be maintained on a modified cash or other comprehensive basis of accounting necessary to facilitate compliance with the tax reporting requirements of the Plan Trust.  Except as otherwise specifically provided for herein, nothing in this Trust Agreement requires the Plan Trustee to file any accounting or seek approval of any court with respect to the administration of the Plan Trust, or as a condition for managing any payment or distribution out of the Trust Assets.  Holders of the Beneficial Interests shall have the right upon thirty (30) days' prior written notice delivered to the Plan Trustee to inspect such books and records (including financial statements), subject, however, to the requesting Person entering into a confidentiality agreement, satisfactory in form and substance to the Plan Trustee, prior to such inspection. Nothing in this Trust Agreement provides any holder of a Beneficial Interest with a right to review, inspect, seek discovery of or otherwise obtain any information that is privileged or subject to a third party's rights of privacy or confidentiality.

3.5    <u>Additional Powers</u>.  Except as otherwise set forth in this Trust Agreement or in the Plan, and subject to the Treasury Regulations governing liquidating trusts and fixed investment trusts and the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Plan Trustee may control and exercise authority over the Trust Assets and over the protection, conservation and disposition thereof.  No Person dealing with the Plan Trust shall be obligated to inquire into the authority of the Plan Trustee in connection with the protection, conservation or disposition of the Trust Assets.

3.6    <u>Application of Trust Assets and Other Property</u>.  The Plan Trustee shall apply all Trust Assets and any proceeds therefrom in accordance with the Plan.

3.7    Reporting Duties; Federal Income Tax. The Plan Trustee shall file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a). The Plan Trustee shall also file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by any governmental authority.

3.8    Winding Up Debtors. The Plan Trustee shall complete the wind up of the Estates, including filing tax returns of the Debtors through any tax year that may end on the Effective Date, settling or satisfying S/A/P Claims and completing any sales of assets that are not completed as of the Effective Date. The Plan Trustee shall wind up the remaining affairs of the Debtors, including the filing of all required tax returns and the handling of audits and shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Effective Date through, and including, the dissolution of the Debtors.

3.9    Compliance with Laws. Any and all distributions of Trust Assets and proceeds of borrowings, if any, shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

3.10    De Minimis Distributions. Notwithstanding anything to the contrary contained in the Plan or this Trust Agreement, the Plan Trustee shall not be required to distribute Cash to the holder of an Allowed Claim if the amount of Cash to be distributed on account of such Claim is less than $50 (such distribution, a "De Minimis Distribution"). All De Minimis Distributions will be held by the Plan Trust for the benefit of the Holders of Allowed Claims entitled to De Minimis Distributions. When the aggregate amount of De Minimis Distributions held by the Plan Trust for the benefit of a Creditor exceeds $50.00, the Plan Trust shall distribute such De Minimis Distributions to such Creditor. If, at the time that the final distribution under the Plan is to be made, the De Minimis Distributions held by the Plan Trust for the benefit of a Creditor total less than $50.00, such funds shall not be distributed to such Creditor, but rather, shall constitute Trust Assets to be allocated among the Estates in accordance with the Stipulated Asset Allocation.

3.11    Setoffs. The Plan Trustee may, to extent permitted by sections 502(h), 553, and 558 of the Bankruptcy Code or by applicable non-bankruptcy law, but shall not be required to, set off against any distributions to be made hereunder to a Holder of an Allowed Claim, any or all claims, rights and Causes of Action of any nature that the Plan Trustee may at any time hold against such Holder; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim under or in accordance with the Plan shall constitute a waiver or release by the Plan Trustee of any such claim, right and Causes of Action that the Plan Trustee may at any time possess against such Holder.

3.12    Disputed Payments. If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Plan Trustee may, in lieu of making such distribution to such Person, make such distribution into an escrow account to be held in trust for the benefit of such Holder, whereupon such distribution shall not constitute property of the Plan Trust. Such distribution shall be held in escrow until the disposition thereof shall by

11

determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement among the interested parties to such dispute.

    3.13   <u>Unclaimed Distributions</u>.

      (a)   Any unclaimed distributions, and all interest, dividends, and other earnings thereon, shall be held and segregated in sub-accounts of the Plan Trust for the benefit of Holders of Allowed Claims. All such unclaimed distributions shall be held for a period of six (6) months following the applicable distribution date and during such period shall be released from the Plan Trust and delivered to such Holders entitled thereto only upon presentation of proper proof by such Holders of such entitlement. The Plan Trustee shall pay, or cause to be paid, out of the funds held in any sub-account, all taxes imposed by any federal, state and local taxing authorities on the income generated by the funds held in such sub-account. The Plan Trustee shall also file, or cause to be filed any tax or information return related to any sub-account. All Cash held in such sub-accounts shall be invested in accordance with section 345 of the Bankruptcy Code. The earnings on such investments shall be held in trust as an addition to the balance of the sub-accounts for the benefit of Holders entitled to such unclaimed distributions, and shall not constitute property of the Plan Trust.

      (b)   At the end of six (6) months following the relevant distribution date, as set forth above, the holders of Beneficial Interests theretofore entitled to such unclaimed distributions shall cease to be entitled thereto and the unclaimed distributions for each such holders shall then be distributed on a Pro Rata basis to the Holders of Allowed Claims who have received and have claimed distributions and who are otherwise entitled to further distributions hereunder.

ARTICLE IV

THE PLAN OVERSIGHT COMMITTEE

    4.1   <u>Formation</u>. The Plan Oversight Committee is established pursuant to the terms of the Plan and shall function consistent with the Plan. The Plan Oversight Committee's role shall be to advise and approve the actions of the Plan Trustee. As of the Effective Date, the initial members of the Plan Oversight Committee shall be:

      (a)   Deutsche Bank National Trust Co.; and

      (b)   Nomura Credit & Capital, Inc.

    4.2   <u>Duties and Powers</u>. The Plan Oversight Committee shall represent the interests of the holders of Beneficial Interests during the existence of the Plan Trust, and shall have the obligation to undertake in good faith each of the acts and responsibilities set forth for

12

the Plan Oversight Committee in this Trust Agreement and in the Plan, for the benefit of the Beneficiaries. The Plan Oversight Committee shall have such powers, rights and duties as set forth in this Trust Agreement and in Article 8.G. of the Plan.

      4.3    <u>Vacancies</u>. Vacancies on the Plan Oversight Committee shall be filled by a Person designated by the remaining members of the Plan Oversight Committee from among the Holders of Unsecured Claims and the Plan Oversight Committee shall use reasonable efforts to maintain such composition of the members of the Plan Oversight Committee as existed prior to the resignation of such member. Upon appointment of a successor member of the Plan Oversight Committee, notice of such appointment will be filed with the Court. Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership.

      4.4    <u>Voting</u>. The Plan Oversight Committee shall create such by-laws (if any) as it deems necessary or convenient. The passage of such by-laws, and all other decisions and actions of the Plan Oversight Committee, except as otherwise set forth in this Trust Agreement, shall be by majority vote of the Plan Oversight Committee. The Plan Oversight Committee may meet and vote in person or telephonically and each member shall be entitled to receive reasonable notice of any such meeting. A majority of the members of the Plan Oversight Committee shall constitute a quorum for all purposes.

      4.5    <u>Objections to Post-Effective Date Professional Fees</u>. The Plan Oversight Committee and the Plan Trustee are each authorized to file with the Bankruptcy Court an objection to any invoice submitted by a professional retained by the Plan Trustee or a sub-agent employed by the Plan Trustee seeking the payment of fees or expenses incurred after the Effective Date and to be paid from the Trust Assets. The objector shall have twenty (20) days, or such other period as determined by the Plan Oversight Committee and the Plan Trustee, from the delivery of a fee statement to object to the fees of any professional retained by either the Plan Trust or the Plan Oversight Committee by giving notice of any such objection to the professional seeking compensation or reimbursement. For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. Any objection that remains unresolved fifteen (15) days after it is made, or such later period as the parties may agree, shall be submitted to the Bankruptcy Court for resolution. The uncontested portion of each invoice shall be paid within thirty (30) days after its delivery to the Plan Oversight Committee and the Plan Trustee.

      4.6    <u>Compensation</u>. Each member of the Plan Oversight Committee shall be entitled to receive from the Plan Trust reimbursement for its necessary out-of-pocket expenses reasonably incurred in connection with the performance of such member's duties with respect to the Plan Trust or the Trust Assets, which reimbursement shall include the expenses for fees paid to either counsel or financial advisors retained by the individual members of the Plan Oversight Committee subject to a cap to be established by the Plan Oversight Committee in its discretion. The Plan Oversight Committee shall otherwise serve without compensation.

13

## ARTICLE V

## THE PLAN TRUSTEE

5.1    <u>Generally</u>.  The Plan Trustee's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of this Plan Trust and not otherwise, except as permitted by Section 4.7 hereof.

5.2    <u>Responsibilities of Plan Trustee</u>.

(a)    As soon as possible after the Effective Date the Plan Trustee shall (i) determine the fair market value, as of the Effective Date, of the Trust Assets based on its own good-faith determination, <u>provided</u> that nothing herein shall be construed to prevent the Debtors (if prior to the Effective Date) or the Plan Trustee (if on or after the Effective Date) from seeking a judicial valuation of the Trust Assets as of the Effective Date by the Bankruptcy Court, and (ii) apprise the Holders of Unsecured Claims in writing of such valuation (and indicate in such writing each Holder's percentage ownership interest in the Plan Trust based on each such Holder's relative beneficial interest in the Plan Trust or portion thereof as of the Effective Date).  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Plan Trustee, and Holders of Unsecured Claims) for all federal income tax purposes.

(b)    The Plan Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Trust Assets, make timely distributions and not unduly prolong the duration of the Plan Trust.  In so doing, the Plan Trustee shall exercise its reasonable business judgment in liquidating the Trust Assets.  The liquidation of the Trust Assets may be accomplished through the sale of Trust Assets (in whole or in combination), including the sale of any or all of the Causes of Action or through the prosecution or settlement of any or all of the Causes of Action, or otherwise.  In connection therewith, and subject to the limitations of Section 2.2 hereof, the Plan Trustee will have the power to (i) prosecute for the benefit of the Plan Trust any or all of the Causes of Action transferred to the Plan Trust, whether such suits are brought in the name of the Plan Trust, the Debtors or otherwise for the benefit of the holders of Beneficial Interests, (ii) liquidate the Trust Assets, and (iii) otherwise perform the functions and take the actions permitted or required by the Plan, under applicable law, pursuant to this Trust Agreement.  Any and all proceeds generated from such Trust Assets shall be held by the Plan Trust.  The Plan Trustee may incur any reasonable and necessary expenses in liquidating the Trust Assets.

5.3    <u>Liability of Plan Trustee; Indemnification</u>.  Neither the Plan Trustee, the Plan Oversight Committee, their respective members, designees or professionals, or any duly

14

designated agent or representative of the Plan Trustee or the Plan Oversight Committee, nor their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of such Plan Trustee or Plan Oversight Committee, nor shall such Plan Trustee, or any member of the Plan Oversight Committee, be liable for any act taken or not taken in its capacity as Plan Trustee, or as a member of the Plan Oversight Committee, respectively, other than for specific acts or omissions resulting from such Plan Trustee's or such member's willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty. The Plan Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee and the Plan Oversight Committee shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors. The Plan Trustee, or the Plan Oversight Committee, may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with its attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, not taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Plan Trustee nor the Plan Oversight Committee shall be under any obligation to consult with its attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Plan Trustee or Plan Oversight Committee or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence, or fraud. The Plan Trust shall indemnify and hold harmless the Plan Trustee, the Plan Oversight Committee and their members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, without limitation, reasonable attorneys' fees, disbursements, and related expenses) which such parties may incur or to which such parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such parties arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Plan Trust or the Plan or the discharge of their duties hereunder; provided, however, that no such indemnification will be made to such persons for actions or omissions as a result of willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty.

    5.4    <u>Reliance by Plan Trustee</u>. Except as otherwise provided in Section 5.3:

    (a)    the Plan Trustee may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Plan Trustee to be genuine and to have been signed or presented by the proper party or parties;

    (b)    Persons or entities dealing with the Plan Trustee shall look only to the Trust Assets to satisfy any liability incurred by the Plan Trustee or the Plan Oversight Committee to any such Person in carrying out the terms of this Trust Agreement, and neither the Plan Trustee nor the Plan Oversight Committee shall have any personal obligation to satisfy any such liability.

15

5.5    <u>Investment and Safekeeping of Trust Assets</u>. All moneys and other property received by the Plan Trustee shall, until distributed or paid over as herein provided, be held in trust for the benefit of the holders of the Beneficial Interests, but need not be segregated from other Trust Assets, unless and to the extent required by law. The Plan Trustee shall be under no liability for interest or producing income on any moneys received by it hereunder, except as such interest shall actually be received by the Plan Trustee. Investments of any moneys held by the Plan Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; <u>provided, however</u>, that the right and power of the Plan Trustee to invest the Trust Assets, the proceeds thereof, or any income earned by the Plan Trust, shall be limited to the right and power to invest such Trust Assets (pending periodic distributions in accordance with Section 3.6 hereof) in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as Treasury bills; and <u>provided further</u>, that the scope of any such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust and a fixed investment trust, within the meaning of Treasury Regulation Section 301.7701-4, may be permitted to invest in, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise, or the investment guidelines of Bankruptcy Code section 345. The Plan Trustee shall not "vary the investment" within the meaning of Treasury Regulation Section 301.7701-4(c). Any investment made as provided for herein must mature prior to the date of the next scheduled distribution, but in no event shall such investment have a maturity date in excess of twelve (12) months from the date of the acquisition of such investment.

5.6    <u>Authorization to Expend Trust Assets</u>. The Plan Trustee may expend the Trust Assets (i) as reasonably necessary to meet contingent liabilities and to maintain the value of the Trust Assets during liquidation, (ii) to pay all administrative expenses of the Plan Trust (including, but not limited to, any taxes imposed on the Plan Trust), and (iii) to satisfy all other liabilities incurred or assumed by the Plan Trust (or to which the Trust Assets are otherwise subject) in accordance with the Trust Agreement or the Plan, including, without limitation, those liabilities set forth in Section 1.4 hereof.

5.7    <u>Expense Reimbursement and Compensation</u>.

(a)    The Trust Assets shall be subject to the claims of the Plan Trustee and the Plan Trustee shall be entitled to reimburse itself out of any available Cash in the Plan Trust, for any actual out-of-pocket expenses and any indemnity or hold-harmless claims of the Plan Trustee against the Plan Trust for all loss, liability, expense, or damage which the Plan Trustee or any such member of the Plan Oversight Committee may sustain in good faith and without willful misconduct, gross negligence, fraud, or breach of the fiduciary duty of loyalty in the exercise and performance of any of the powers and duties of the Plan Trustee or the Plan Oversight Committee under this Trust Agreement. As compensation for the performance of its duties, the Plan Trustee will be entitled to bill hourly for the services (and at the specific rate) of the individuals listed on

16

Exhibit A attached hereto, and to such additional compensation that may be agreed upon by the Plan Trustee and the Plan Oversight Committee, subject to objection by the Plan Oversight Committee pursuant to the Plan.

(b)    If the Cash in the Plan Trust shall be insufficient to compensate and reimburse the Plan Trustee, including any professionals retained by the Plan Trustee, or the members of the Plan Oversight Committee, as the case may be, for any amounts that they are entitled to hereunder and if the Plan Trustee shall be unable to borrow funds sufficient for such compensation and reimbursement in accordance with the terms of this Trust Agreement, then the Plan Trustee is hereby authorized, subject to Sections 3.3(b) and 3.3(c) hereof, to reduce to Cash that portion of the Trust Assets necessary so as to effect such compensation and reimbursement.

5.8    Insurance; Bond.  The Plan Trustee shall obtain insurance coverage with respect to the liabilities and obligations of the Plan Trustee and the Plan Oversight Committee under this Trust Agreement (in the form of an errors and omissions policy or otherwise) unless both the Plan Trustee and Plan Oversight Committee unanimously agree that such insurance shall not be required.  The Plan Trustee shall at all times maintain a bond acceptable to the Plan Oversight Committee and approved by the Bankruptcy Court, and the cost and expense of which shall be paid by the Plan Trust.

5.9    Compliance with Laws.  Except as otherwise provided in the Confirmation Order, any and all distributions to holders of Beneficial Interests shall be in compliance with applicable state and federal laws, including, but not limited to, applicable state and federal securities laws and any state laws regulating insurance companies and insurance holding companies.

5.10    Confidentiality.  The Plan Trustee shall, during the period that it serves as Plan Trustee under this Trust Agreement and following the termination of this Trust Agreement or following the Plan Trustee's removal or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Entity to which any of the Trust Assets relates or of which the Plan Trustee has become aware in its capacity as Plan Trustee.

ARTICLE VI

SUCCESSOR PLAN TRUSTEE

6.1    Removal.  The Plan Trustee may be removed with or without cause by the unanimous vote of the Plan Oversight Committee.

6.2    Resignation.  The Plan Trustee may resign by giving not less than ninety (90) days' prior written notice to the Plan Oversight Committee.  Such resignation shall become effective on the later to occur of: (i) the day specified in such notice; and (ii) the appointment of a successor by the Plan Oversight Committee and the acceptance by such successor of such

17

appointment. If a successor Plan Trustee is not appointed or does not accept its appointment within ninety (90) days following delivery of notice of resignation, the Plan Trustee may petition any court of competent jurisdiction for the appointment of a successor Plan Trustee.

6.3     Appointment of Successor upon Removal, Resignation, Death, Dissolution, Bankruptcy, or Insolvency. If the Plan Trustee is removed pursuant to Section 5.1 hereof, resigns pursuant to Section 5.2 hereof, dies or is declared incompetent (in the case of a Plan Trustee that is a natural person), dissolves (in the case of a Plan Trustee that is an Entity), files for bankruptcy, or becomes insolvent, the Plan Oversight Committee must appoint a successor Plan Trustee.

6.4     Acceptance of Appointment by Successor Plan Trustee. Any successor Plan Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder and shall file such acceptance with the Plan Trust records. Thereupon, such successor Plan Trustee shall, without any further act, become vested with all the rights, powers, and duties of its predecessor in the Plan Trust with like effect as if originally named herein; provided, however, that a removed or resigning Plan Trustee shall (if alive and competent) nevertheless, when requested in writing by the successor Plan Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Plan Trustee under the Plan Trust all the properties, rights, powers, and trusts of such predecessor Plan Trustee. Further, the Plan Oversight Committee shall give written approval to the compensation for the successor Plan Trustee if different from the compensation for the predecessor Plan Trustee.

6.5     Continuance of the Plan Trust. The death, incapacity, resignation, or removal of the Plan Trustee shall not operate to terminate the Plan Trust created by this Trust Agreement or revoke any existing agency (other than the agency of the former Plan Trustee as Plan Trustee) created pursuant to the terms of this Trust Agreement or invalidate any action taken by the Plan Trustee. The Plan Trustee agrees that the provisions of this Trust Agreement shall be binding upon and inure to the benefit of the Plan Trustee and the Plan Trustee's heirs, legal and personal representatives, successors or assigns, as the case may be. In the event of the resignation or removal of the Plan Trustee, the Plan Trustee shall (if alive and competent) promptly (i) execute and deliver by the effective date of resignation or removal such documents, instruments, and other writings as may be reasonably requested by the successor Plan Trustee to effect the termination of the resigning or removed Plan Trustee's capacity under this Trust Agreement; (ii) deliver to the successor Plan Trustee all documents, instruments, records, and other writings relating to the Plan Trust as may be in the possession or under the control of the resigning or removed Plan Trustee; and (iii) otherwise assist and cooperate in effecting the assumption of the resigning or removed Plan Trustee's obligations and functions by the successor Plan Trustee. The resigning or removed Plan Trustee hereby irrevocably appoints the successor Plan Trustee as his or her attorney-in-fact and agent with full power of substitution for and in his or her name, place and stead to do any and all such acts that such resigning or removed Plan Trustee is obligated to perform under this Section 6.5. Such appointment shall not be affected by the subsequent disability or incompetence of the Plan Trustee making such appointment.

18

## ARTICLE VII

## REPORTS TO HOLDERS OF BENEFICIAL INTERESTS

7.1    <u>Securities Laws, Tax and Other Reports to Holders of Beneficial Interests</u>.

(a)    Under section 1145 of the Bankruptcy Code, the issuance and transfer of Beneficial Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable state and local laws requiring registration of securities.  If the Plan Trustee determines, with the advice of counsel, that the Plan Trust is required to comply with the registration and reporting or other requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Plan Trustee shall take any and all actions to comply with, or qualify for exemption from, such reporting or other requirements and to file periodic reports with the Securities and Exchange Commission as necessary.

(b)    The Plan Trustee shall submit to the holders of Beneficial Interests an annual statement setting forth each holder's share of items of income, gain, loss, deduction or credit and provide to all such holders information for reporting such items on the holders' federal income tax returns, as appropriate.  Allocations of the Plan Trust taxable income shall be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distributions described herein) if, immediately prior to such deemed distribution, the Plan Trust had distributed all of the Plan Trust's other assets (valued for this purpose at tax book value) to the holders of the Beneficial Interests of the Plan Trust (treating any Holder of a Disputed Claim, for this purpose, as a current holder of a beneficial interest in the Plan Trust entitled to distributions), taking into account all prior and concurrent distributions from the Plan Trust (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable loss of the Plan Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Trust Assets.  For this purpose, the tax book value of the Trust Assets shall equal the fair market value of the Trust Assets on the Effective Date as determined in Section 4.2, or, if later, the date such assets were acquired by the Plan Trust, adjusted in either case in accordance with tax accounting principles prescribed by the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, and other applicable administrative and judicial authorities and pronouncements.

(c)    Any report required to be distributed by the Plan Trustee under Section 7.1(b) hereof shall also be distributed to the Plan Oversight

19

Committee within ten (10) Business Days of its distribution to holders of Beneficial Interests pursuant to Section 7.1(b) hereof.

(d)     The Plan Trustee shall file (or cause to be filed) any other statements, returns or disclosures relating to the Plan Trust that are required by any governmental authority.

(e)     The Plan Trustee shall prepare, file and/or distribute any additional reports as directed by the Plan Oversight Committee or otherwise required under this Trust Agreement or the Plan.

## ARTICLE VIII

## TERMINATION OF PLAN TRUST

8.1     Termination of Plan Trust.  The Plan Trust will terminate on the earlier of (a) thirty (30) days after the distribution of all of the Trust Assets in accordance with the terms of this Trust Agreement and the Plan and its full performance of all other duties and functions set forth herein or in the Plan; and (b) the fifth (5th) anniversary of the Effective Date; provided, however, that, on or prior to the date six (6) months prior to such termination, the Court, upon motion by a party in interest, may extend the term of the Plan Trust if it is necessary or appropriate for the liquidation of the Trust Assets.  Notwithstanding the foregoing, multiple extensions can be obtained so long as Court approval is obtained at least six (6) months prior to the expiration of each extended term.  The aggregate of all such extensions shall not exceed three (3) years, unless the Plan Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Plan Trust as a liquidating trust within the meaning of Treasury Regulation § 301.7701-4(d) for federal income tax purposes.  The Plan Trustee shall not unduly prolong the duration of the Plan Trust and shall at all times endeavor to resolve, settle or otherwise dispose of all claims that constitute Trust Assets and to effect the distribution of the Trust Assets to the holders of the Beneficial Interests in accordance with the terms hereof and terminate the Plan Trust as soon as practicable.  Prior to and upon termination of the Plan Trust, the Trust Assets will be distributed to the holders of Beneficial Interests, pursuant to the provisions set forth in Section 3.6 hereof.

## ARTICLE IX

## AMENDMENT AND WAIVER

9.1     Amendment.  Any substantive term or provision of this Trust Agreement may be amended or waived by the Plan Trustee, upon notice to the Plan Oversight Committee, with the approval of the Bankruptcy Court.  With the consent of the Plan Oversight Committee, the Plan Trustee may make technical amendments to this Trust Agreement as necessary to clarify this Trust Agreement or enable the Plan Trustee to effectuate the terms of this Trust Agreement.  Notwithstanding this Section 8.1, any amendments to this Trust Agreement shall be consistent with the purpose and intention of the Plan Trust to liquidate in an expeditious but orderly manner the Trust Assets in accordance with Treasury Regulation 301.7701-4(d) and Section 3.1 hereof.

20

ARTICLE X

MISCELLANEOUS PROVISIONS

10.1   Intention of Parties to Establish Plan Trust. This Trust Agreement is intended to create a liquidating trust for federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust and any ambiguity herein shall be construed consistent herewith and, if necessary, this Trust Agreement may be amended to comply with such federal income tax laws, which amendments may apply retroactively.

10.2   Preservation of Privilege and Defenses. Any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Plan Trust in connection with the transfer of the Trust Assets shall vest in the Plan Trustee and its representatives. The Debtors and the Plan Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

10.3   Cooperation and Further Assurances of the Debtors. Each of the Debtors shall provide the Plan Trustee with copies of its books and records so as to enable the Plan Trustee to perform its duties and exercise its powers hereunder. The Debtors shall, upon reasonable request of the Plan Trustee, execute, acknowledge and deliver such further instruments and do such further acts as may be necessary or proper to transfer to the Plan Trustee any portion of the Trust Assets intended to be conveyed in the form and manner provided for in the Plan and to vest in the Plan Trustee the powers, instructions, or funds in trust hereunder. The Debtors shall also, upon reasonable request of the Plan Trustee, provide additional documentation or information necessary to resolve Claims and resolve and prosecute all Causes of Action. The Debtors, for themselves and any predecessor or successor entity, hereby disclaim and waive any and all rights to any reversionary interests in any of the Trust Assets.

10.4   Laws as to Construction. This Trust Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of law.

10.5   Severability. If any provision of this Trust Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and the remainder of this Trust Agreement shall be valid and enforceable to the fullest extent permitted by law.

10.6   Notices. Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended:

If to the Debtors:

American Home Mortgage Corp., *et al.*

21

P.O. Box 10550
Melville, New York 11747
Attn:   General Counsel

with copies (that shall not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE 19801
Attn:   James L. Patton, Jr.
        Robert S. Brady
        Sean M. Beach
        Matthew B. Lunn
        Patrick A. Jackson

If to the Plan Trustee:

Steven D. Sass, Esq.
Steven D. Sass, LLC
P.O. Box 45
Clarksville, MD 21029

with copies (that shall not constitute notice) to:

Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022
Attn:   Mark S. Indelicato
        Mark T. Power


        10.7    <u>Headings</u>.  The section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.

        10.8    <u>Relationship to the Plan</u>.  The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and therefore this Trust Agreement incorporates the provisions of the Plan and Confirmation Order.  To that end, the Plan Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan and Confirmation Order, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Trust Agreement.  If any provision of this Trust Agreement is found to be inconsistent with any provision of the Plan, the provision of this Trust Agreement shall control and take precedence.  If any provision of this Trust Agreement is found to be inconsistent with any provision of the Confirmation Order, the provision of the Confirmation Order shall control and take precedence.

10.9    <u>Exclusive Jurisdiction and Standing</u>.    As provided in Article 14 of the Plan, the Bankruptcy Court has exclusive jurisdiction over all controversies, suits and disputes that may arise under this Trust Agreement.    The Plan Trustee shall have standing in any such proceeding to enforce the rights of the Plan Trust or of the Beneficiaries arising under this Trust Agreement or the Plan, and the Plan Oversight Committee shall have standing in any such proceeding to enforce the rights of the Beneficiaries arising under this Trust Agreement or the Plan.    Any and all claims asserted against, and disputes with, the Plan Trustee or the Plan Oversight Committee, if any, are subject to the exclusive jurisdiction of the Bankruptcy Court.

*{Signature Pages Follow}*

23

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

AMERICAN HOME MORTGAGE HOLDINGS, INC.

Debtor

By: _____
Name: Kevin Nystrom
Title: Chief Restructuring Officer

AMERICAN HOME MORTGAGE INVESTMENT CORP.

Debtor

By: _____
Name: Kevin Nystrom
Title: Chief Restructuring Officer

AMERICAN HOME MORTGAGE ACCEPTANCE, INC.

Debtor

By: _____
Name: Kevin Nystrom
Title: Chief Restructuring Officer

24

AHM SV, INC. (f/k/a American Home Mortgage
Servicing, Inc.)

Debtor

By: _____
Name: *Kevin Nystrom*
Title: *Chief Restructuring Officer*

AMERICAN HOME MORTGAGE CORP.

Debtor

By: _____
Name: *Kevin Nystrom*
Title: *Chief Restructuring Officer*

AMERICAN HOME MORTGAGE VENTURES LLC

Debtor

By: _____
Name: *Kevin Nystrom*
Title: *Chief Restructuring Officer*

HOMEGATE SETTLEMENT SERVICES, INC.

Debtor

By: _____
Name: Kevin Nystrom
Title: Chief Restructuring Officer


GREAT OAK ABSTRACT CORP., INC.

Debtor

By: _____
Name: Kevin Nystrom
Title: Chief Restructuring Officer

STEVEN D. SASS, PLAN TRUSTEE

_____
Name:  Steven D. Sass

**EXHIBIT A**

AHM Liquidating Trust

Liquidating Trustee: Steven D. Sass

The professionals and support personnel listed or referenced hereon shall have involvement in this engagement working for the Trustee. All are current employees of Steven D. Sass LLC.

Please note that personnel may be added or deleted from time to time. In the event of a change of rates or personnel, advance notice shall be provided to the Plan Oversight Committee.

| NAME | TITLE/EXPERIENCE | HOURLY RATE (as of 11/30/2010) |
|---|---|---|
| Steven D. Sass, Esq. | Trustee; J.D., M.B.A; 20 years bankruptcy experience | $425 |
| Lynn K. Smalley | Senior Consultant; CPA Training; 20+ years experience | $325 |
| Dan Seidman | Consultant: 20+ years financial/managerial training experience | $275 |
| Ellen Hagan | Support Staff | $125 |
| Additional Support Staff as needed | | $100 - $200 |