IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :  Chapter 11
                                                                 :
                                                                 :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                           :
HOLDINGS, INC., a Delaware corporation, et al.,[1]               :  Jointly Administered
                                                                 :
                                                                 :  Ref. Docket No. 9591
     Debtors.                                                    :
                                                                 :
                                                                 :
---------------------------------------------------------------- x

## LIMITED REPLY AND SUPPLEMENT IN SUPPORT OF MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554 AUTHORIZING THE PLAN TRUSTEE TO RETURN OR DESTROY ALL HARD COPY LOAN FILES

Steven D. Sass, as liquidating trustee (the " Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"),[2] hereby files this limited reply and supplement (the "Reply") in support of his motion for entry of an order, pursuant to sections 105, 363 and 554 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the Plan Trustee to return or destroy any and all Hard Copy Loan Files in accordance with previous orders of this Court [D.I. 9591] (the "Motion"). In support of the Reply and related Motion, the Plan Trustee respectfully represents and states as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

# STATUS OF OBJECTIONS TO MOTION

1. The Plan Trustee has received both formal and informal responses to the Motion and, through his efforts, have resolved a large number of the objections to the Motion. A summary of the objections and resolutions are set forth in the table below:

| PARTY | OBJECTION | STATUS |
|---|---|---|
| Triad [D.I. 9621] | Triad sought assurance that the Plan Trustee will preserve files relating to Triad insured files and the pending action. | Resolved. |
| Broadhollow Funding LLC & Melville Funding LLC [D.I. 9629] | Objection to the destruction of loan files to the extent they relate to loans that were owned by Broadhollow and Melville and sold at the 2007 Auction. | Resolved. |
| James Bostic [D.I. 9644] | Mr. Bostic has requested his loan file in connection with pending litigation. | Mr. Bostic's loan was not originated by the Debtors and, thus, the Debtors do not have a copy of his loan origination file. Accordingly, this objection is moot. |
| JPM Litigation Defendents [D.I. 9650] | Wants loan files held for litigation. | The Plan Trustee believes that a resolution of this objection is forthcoming, as set forth below. |

| PARTY | OBJECTION | STATUS |
|---|---|---|
| Ms. Florence Dandridge [D.I. 9673] | Ms. Dandridge seeks the following limitations (i) only hard copy loan files for loans originated in or before 2002 be permitted to be destroyed; (ii) any such files may be permitted only if the Plan Trustee assures the Court that the hard copies do not contained any original signed notes and/or mortgages; (iii) prior to the destruction of any documents, any hard copy loan files originated after 2002 be preserved in electronic form and made available to the Ombudsman; and (iv) borrowers received individual notice by U.S. Mail. | This matter will be going forward. The Plan Trustee's response is set forth below. |
| Wells Fargo [Informal] | Wells Fargo sought confirmation that previously requested loan files would not be destroyed. | Resolved. |
| Deloitte [Informal] | Deloitte sought confirmation that only individual loan files were subject to the Motion. | Resolved. |
| Perez/Avila [Informal] | Counsel for plaintiff and defendant in a Florida litigation requested the loan file of Mr. Perez. | Resolved. |
| Wyoming Community Development Authority [Informal] | Wyoming Community Development Authority requested loan files regarding bonded loans. | Resolved. |

2. As a result, the sole remaining objections to the Motion are the objections filed by Mr. Bostic, the JPM Litigation Defendants and Ms. Dandridge.

## SUPPLEMENT

3. As noted in the Motion, the landlord for the space in which the Hard Copy Loan Files are located had provided the Plan Trustee with notice that the Fire Marshal for the Town of Huntington ("Fire Marshal") had inspected the Broadhollow Property and determined that the building's sprinkler system is not designed for storage of the volume of paper documents currently stored by the Plan Trustee.

4. Subsequent to the filing of the Motion, the Fire Marshal issued a Notice of Violation ("Notice of Violation") of the Fire Code of New York State and Fire Code of Town of Huntington. Pursuant to the Notice of Violation, the Plan Trustee has been advised to discontinue the storage of records within the lower level parking garage area. The Plan Trustee is continuing to discuss options with the Fire Marshal and landlord to the Broadhollow Property.

## REPLY

### A. Response to Bostic Objection

5. By his objection (the "Bostic Objection"), Mr. Bostic requests that his personal loan file be maintained due to pending litigation in South Carolina, which was stayed as a result of the Debtors' bankruptcy. The Plan Trustee has reviewed the records and determined that Mr. Bostic's loan, although subsequently serviced by AHM SV, Inc., was originated in 1977 by a non-Debtor third party. Accordingly, the Plan Trustee does not possess Mr. Bostic's origination file.

6. Additionally, the Plan Trustee has reviewed the claim filed by Mr. Bostic and has determined that Mr. Bostic's claim will be accepted (subject to a potential "wrong debtor" objection) as a general unsecured claim. The Plan Trustee has reached out to counsel for Mr. Bostic and believe that a resolution is forthcoming. However, to the extent that the Bostic Objection is not withdrawn or resolved, the Plan Trustee asserts that the objection is mooted by

the fact that (i) the Plan Trustee does not possess Mr. Bostic's file, and (ii) the underlying South Carolina action is unnecessary due to the Plan Trustee's acceptance of Mr. Bostic's claim.

**B.     Response to JPM Objection**

7.    By their objection (the "JPM Objection"), the JPM Litigation Defendants (as defined in the JPM Objection) have requested that the Plan Trustee maintain Hard Copy Loan Files relating to loans that were sold to the JPM Litigation Defendants and are the subject of the Litigations against the JPM Litigation Defendants.

8.    To date, the JPM Litigation Defendants have been unable to provide the Plan Trustee with a complete list of AHM-originated loans that are the subject of the Litigations. However, the Plan Trustee has affirmatively compiled a list of all loans that were sold to entities identified by the JPM Litigation Defendants. The Plan Trustee proposes to provide any such potentially relevant Hard Copy Loan Files to the JPM Litigation Defendants to the extent that the JPM Litigation Defendants comply with the requirements of the Return Protocol, including, without limitation, (i) attesting that they are entitled to the particular Hard Copy Loan Files and (ii) paying Return Costs in accordance with their preferred delivery method.

**C.     Response to Dandridge Objection**

9.    As an initial matter, Ms. Dandridge, a former member of the Borrower's Committee, received a copy of her loan file nearly two (2) years ago. Ms. Dandridge, instead, purports to be stepping into the role of the disbanded Borrower's Committee. Since she lacks standing to represent the interests of other borrowers, her objection should be overruled in its entirety.

10.   Moreover, the objections set forth by Ms. Dandridge essentially seek reconsideration of previous orders of this Court – or are already set forth within the proposed order.

11. Indeed, Ms. Dandridge's request that the Plan Trustee provide "assurance" to the Court that the Hard Copy Loan Files do not contained any original signed notes and/or mortgages is expressly addressed in the fourth and fifth ordered paragraphs of the proposed order:

> ORDERED that collateral documents (i.e., original note, mortgage copy (recorded mortgage if received from the applicable recording agency), title insurance (binder or commitment); related addenda to mortgage or note; and paper assignments) (the "Collateral Documents") shall continue to be maintained by the respective custodian; and it is further
>
> ORDERED that, in the event that the Plan Trustee discovers any original Collateral Documents in the Hard Copy Loan Files during their review of such files pursuant to this Order or other order of the Court, the Plan Trustee shall forward such Collateral Documents to the respective custodian; and it is further

(Proposed Ord. at p. 2.)

12. Second, Ms. Dandridge's request that this Court only authorize the destruction of Hard Copy Loan Files for loans originated in or before 2002 is in direct contravention of the previous Disposition Orders, which provided authorization to destroy any and all Hard Copy Loan Files (not otherwise requested) located at the ACRC Facility (i.e., the main facility used by the Debtors for document storage after 2002). Indeed, the Debtors have previously destroyed the vast majority, if not all, of such non-requested Hard Copy Loan Files in accordance with these Disposition Orders.

13. Third, the issue of notice to borrowers – and what loan files should be preserved and provided to borrowers - has been at the forefront of these cases, being raised not only by the Borrowers Committee at confirmation, but also by individual borrowers and the Office of the United States Trustee. As a result, the Disposition Orders – as well as the Confirmation Order – already set forth all requirements for the Plan Trustee regarding the

provision of loan files to borrowers. Any further notice or obligations is tantamount to improper reconsideration of those orders.

### 1. *Previous Orders Adequately Address Notice and Provision of Loan Files to Borrowers*

14. This *exact* notice issue – notice of destruction of loan files to homeowners – was raised by the United States Trustee prior to the appointment of a Borrowers Committee through the *Objection of the United States Trustee to the Debtors' Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363, and 554 Authorizing the (I) Abandonment of Destruction of Certain Duplicate Mortgage Loan Fiels or (II) Return of Mortgage Loans Files to the Owner of Such Loans Upon Payment of Reasonable Costs and Expenses* [D.I. 2927] (the "UST Objection"). In resolution of the UST Objection, the Debtors agreed to publish notice of the destruction of documents in the *New York Times* (which was completed on February 25, 2008) and to provide borrowers with a copies of their loan file if obligated to do so under applicable law. (2/14/08 Hr'g Tr. 8-25.) Notably, neither the United States Trustee nor Ms. Dandridge cite to any law or regulation that requires such turnover of loan files.

15. Notice to borrowers – as well as the provision of specific loan files - took center stage in connection with the confirmation of the Debtors' Plan. On January 22, 2009, the Borrowers Committee filed an objection to the Plan (the "Plan Objection") [D.I. 6883] challenging, among other things, the adequacy of notice of the bar dates established previously in the Cases.

16. Prior to confirmation, the Debtors voluntarily made modifications to the Plan to address borrower specific issues, including the inclusion of the Borrower Information Ombudsperson. (See Plan § 17.H.) Article 17.H. provides, in pertinent part:

> To facilitate the Borrower Information Ombudspserson's performance of its duties, the Plan Trustee shall provide the Borrower Information Ombudsperson (i) a copy of all loan files which are *in electronic format* and within the Plan Trust's

> possession or control on the Effective Date, and (ii) a copy of the Debtors' records of loan sales and loan servicing transfers which are *in electronic format* and within the Plan Trust's possession or control on the Effective Date. *For the avoidance of doubt, the Plan Trustee shall not be required to provide the Borrower Information Ombudsperson with loan files or other records in hard copy.*

(Id., § 17.H.)

17. Despite the amendments by the Debtors to address borrower issues, the Borrowers Committee pressed the Plan Objection – ultimately the only unsettled Plan objection, resulting in a three-day hearing on confirmation of the Plan held February 9-11, 2009 (the "Confirmation Hearing"). At the Confirmation Hearing, the Borrowers Committee argued their issues regarding, among other things, the Borrower Information Ombudsperson and the potential destruction of documents relevant to borrower litigation against third parties.

18. At the conclusion of the Confirmation Hearing, the Court overruled the Plan Objection *in toto*. With respect to the document issues, the Court stated "[t]hat's an issue as to previous orders of this Court. I assume the Debtors are complying with it. There is some processes available in Article 17 that deal with helping borrowers get access to information. Borrowers always had the ability to try to work through their servicers although I understand that is an very imperfect way to get information." (2/11/09 Hr'g Tr. 151: 1-10.)

### 2. *Coordination of Efforts with Borrower Information Ombudsperson*

19. Prior to the Effective Date, the Debtors had been diligently attending to the requests of third party litigants, including borrowers and their counsel, whether through informal or formal requests, subpoenas, or in response to various complaints. Since the fourth quarter of 2008, documents have been provided with respect to over 300 borrowers. Few requests have been made by individual borrowers or their counsel.

20. As of the Effective Date, Mr. Robert Semple was appointed the Borrower Information Ombudsman and has been addressing borrower requests for loan information. To

the extent a particular request has been sent to the Plan Trustee or his professionals, the Plan Trustee has either responded directly to the request or coordinated the response with the Borrower Information Ombudsperson.

### 3. *Providing Notice to Individual Borrowers Would Be Unduly Burdensome to the Debtors' Estates*

21. Put simply, the practical obstacles with Ms. Dandridge's request far outweigh any potential benefit to a particular homeowner. This is particularly true where, as here, (i) the Plan Trustee has no knowledge of pending or threatened litigation with respect to borrowers (outside of those persons who filed claims against the Debtors) and (ii) publication notice of mortgage loan destruction has been previously provided.

22. First, requiring the Plan Trustee to provide notice to individual borrowers regarding the potential destruction of their Hard Copy Loan Files would impose additional time constraints on the Plan Trustee that would essentially eviscerate the goals of the Motion. Indeed, the Plan Trustee would be required to review each Hard Copy Loan File to determine a manifest of borrowers with a potential interest in the Hard Copy Loan Files. Given the limited resources of the Plan Trustee, this undertaking will likely take months to complete, not including the time required to provide borrowers with an opportunity to request such files. Moreover, while waiting for the request deadline to elapse, the Plan Trustee will likely be forced to relocate the Hard Copy Loan Files to prevent further administrative expenses related to fire concerns and incur additional costs to transport and store the unnecessary Hard Copy Documents.

23. Second, the Plan Trustee has no assurances that the addresses maintained in the Debtors' database are current. Given that the vast majority of the remaining Hard Copy Loan Files relate to loans originated eight (8) or more years ago, it would be mere speculation as to whether the addresses identified in the loan documentation would result in actual notice to the borrower.

# CONCLUSION

WHEREFORE, the Plan Trustee respectfully requests that this Court enter an order (i) overruling any and all remaining objections; (ii) authorizing the Plan Trustee to return or destroy any and all Hard Copy Loan Files in accordance with the Disposition Orders; and (iii) granting the Plan Trustee any further relief that the Court deems just and proper.

Dated: January 19, 2010
Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*