UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           : Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE                                           : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1]               :
                                                                 : Jointly Administered
                    Debtors.                                     :
---------------------------------------------------------------- x

### DECLARATION OF JASON BURZENSKI IN SUPPORT OF MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554 AUTHORIZING THE PLAN TRUSTEE TO RETURN OR DESTROY ALL HARD COPY LOAN FILES

1. My name is Jason Burzenski. I am over the age of 18 and competent to testify and make this Declaration. I am currently employed by the Plan Trust, as defined in the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 [D.I. 7029] (the "Plan").

2. My current duties for the Plan Trust include primary responsibility for electronic and hardcopy document preservation, storage, return and destruction issues, as well as other IT related functions.

3. I am authorized to submit this Declaration (the "Declaration") on behalf of the Plan Trust in support of the *Motion for an Order Pursuant to 11 U.S.C. §§ 105, 363 and 554 Authorizing the Plan Trustee to Return or Destroy All Hard Copy Loan Files* (the "Motion").[2]

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc., a Maryland corporation (f/k/a American Home Mortgage Servicing, Inc.) (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

4. All facts set forth in this Declaration are based upon my personal knowledge, upon my review of relevant documents, upon my opinion based upon my experience and knowledge of the Debtors' business and document storage issues or upon information provided to me by the Debtors, the Plan Trustee, and the Plan Trustee's advisors. If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

I. **PREPETITION RETENTION OF HARD COPY LOAN FILES AND MAINTENANCE OF RELATED INFORMATION**

5. In the ordinary course of the Debtors' pre-petition loan origination business, the Debtors maintained individual loan files, including copies of consumer loan applications, closing documents, titles and home appraisals. The Debtors' loan origination personnel transmitted their mortgage loan files to the Debtors' headquarters in Melville, NY (collectively, the "Hard Copy Loan Files") for central storage in compliance with applicable federal and state mortgage licensing laws.

6. Upon receipt of the Hard Copy Loan Files, the Debtors reviewed such files for any collateral documents (i.e., original note, mortgage copy (recorded mortgage if received back), title insurance (binder or commitment) related addenda to mortgage or note; and paper assignments). Collateral documents were immediately pulled from the file, copied, and forwarded to the respective custodian for the underlying loan. As a result, I believe that no collateral documents exist in the Hard Copy Loan Files.

7. The Debtors cataloged each Hard Copy Loan File in their loan database and management system, the UNIFI Loan Origination System ("UNIFI"). Through UNIFI, and without the need for the Hard Copy Loan File, the Debtors can access (i) borrower information on a loan application; (iii) the borrower's credit report/credit score; (iii) underwriting information, including the automated underwriting decision, where applicable; (iv) and a regeneration of disclosures/closing documents.

8.  Additionally, in September of 2005, the Debtors began imaging the Hard Copy Loan Files and, since that time, have imaged files of approximately 497,000 complete loans (the "E-Loan Files"). The E-Loan Files are maintained on secure servers, and the Plan Trustee now maintains at least one electronic copy of each E-Loan File. Using UNIFI and the imaging software, the Plan Trustee is able to review E-Loan Files in connection with loans origination after September of 2005. In addition to the Debtors' E-Loan Files, the information contained in such files can also be obtained by alternative sources if necessary.

9.  Once catalogued within the Debtors' systems, and based on the preference of the owner of the underlying loan, the Debtors either (i) sent the original Hard Copy Loan File to storage or (ii) sent the original Hard Copy Loan File to the owner of the loan and created a photocopy of Hard Copy Loan Files to storage (the "Copied Loan Files"). Copied Loan Files were maintained solely as part of the Debtors' records and to remain compliant with federal and state regulations regarding mortgage loan origination and brokerage licensing.

10. The Debtors utilized American Corporate Record Center, Inc. ("ACRC") as their main storage vendor, with operations located at a warehouse in Melville, NY (the "ACRC Facility"). As of the Petition Date, the Debtors had maintained approximately 1.5 million Hard Copy Loan Files in the ACRC Facility.

11. In addition to ACRC, Hard Copy Loan Files were maintained at other storage facilities (including, but not limited to Moises Document Storage and GRM Information Management Services) as well as the Debtors' headquarters for employee review and analysis in the ordinary course of their businesses.

## II. PREVIOUS DISPOSITION ORDERS AND COMPLIANCE THEREWITH

12. Prior to the Effective Date, the Court issued several Disposition Orders that set forth the Debtors' authorization to return or destroy the approximately 1.5 million Hard Copy Loan Files located in the ACRC Facility. Each of the Hard Copy Loan Files were shipped to the

Debtors' former headquarters (i.e., the Broadhollow Property) to be returned or destroyed using the process set forth herein.

13. In compliance with the Disposition Orders, the Debtors created a software program (the "Customized Software") to interface with UNIFI's existent document management barcoding system (the "Barcode System"), which the Debtors had used to coordinate the storage of the Hard Copy Loan Files.

14. Using the Customized Software, the Debtors were able to scan the barcodes on the Hard Copy Loan Files to determine whether the specific Hard Copy Loan File had been requested, was otherwise subject to continued maintenance due to, among other things, post-petition sales or settlements and pending litigation, or was authorized for destruction. To the extent that a Hard Copy Loan File predated the Debtors' use of the Barcode System, the Debtors were able to manually enter the loan number into the Customized Software for processing purposes.

15. Using this Customized Software, the Debtors reviewed each of the 1.5 million Hard Copy Loan Files and sorted them into appropriate physical piles and created inventory manifests. Requested Hard Copy Loan Files were then prepared based upon the Requesting Party's preferred method of delivery (i.e., pick-up, delivery or DVD). Prior to the release of a shipment to a particular Requesting Party, the inventory manifests were cross-checked using the Debtors' Customized Software to confirm that the Hard Copy Loan Files were appropriately sorted and being sent to the correct location.

16. To the extent that a Hard Copy Loan File had not been requested, prior to its destruction, the Debtors cross-checked the Non-Requested Loan File through the Customized Software to confirm that the particular file was not erroneously slated for destruction or was not subsequently requested during the elongated process.

17. Following nine (9) months, the Debtors had substantially completed the return or destruction of the Hard Copy Loan Files recovered from the ACRC Facility.

### III. THE REMAINING HARD COPY LOAN FILES AND PROPOSED DESTRUCTION

18. The Plan Trust currently maintains nearly 11,000 boxes of documents (the "Documents"), which occupies approximately 13,000 square feet of storage space in the Broadhollow Property.

19. Of the 11,000 boxes of Documents, approximately 4,100 boxes are comprised of Hard Copy Loan Files which were previously maintained at other storage facilities (including Moises Document Storage and GRM Information Management Services) or left on employees' desks upon the abrupt cessation of the Debtors' business and termination of the Debtors' main workforce. Nearly all of the remaining Hard Copy Loan Files are from the GRM Information Management Services facility and all such Hard Copy Loan Files are more than 8 years old.

20. Consistent with the previous Disposition Orders and as outlined above, the Plan Trustee proposes to review any and all remaining Hard Copy Loan Files to determine whether such file has been previously requested by a Loan File Declaration, previous court order, sale or settlement. Each Requested Loan File will be returned to the Requesting Party pursuant to the Disposition Orders, and any Hard Copy Loan Files will be destroyed in compliance with applicable consumer privacy regulations.

### IV. REASONABLENESS AND NECESSITY FOR IMMEDIATE APPROVAL OF LOAN FILE RETURN OR DESTRUCTION

21. On December 7, 2010, the landlord for the Broadhollow Property provided the Plan Trustee with notice that the Fire Marshal for the Town of Huntington inspected the Broadhollow Property and determined that the building's sprinkler system is not designed for storage of the volume of paper documents currently stored by the Plan Trustee at the Debtors' previous headquarters.

22. The Plan Trustee's decision to return or destroy the Hard Copy Loan Files is warranted given that the Plan Trustee has no need for the Hard Copy Loan Files for the administration of the Debtors' estates. Specifically, the Debtors' shut down their loan origination business and sold their servicing business over three (3) years ago and were originally maintaining many of the files solely for mortgage license requirements that the Debtors are no longer holding.

23. Moreover, the Hard Copy Loan Files represent an unnecessary and costly burden to the Debtors' estates. The Plan Trustee analyzed alternative storage options (and related transportation costs) and has determined that such options not in the best interests of the Debtors' estates. As such, the Plan Trustee has determined that any continuing expense to store the Hard Copy Loan Files is an unnecessary administrative burden on the estate.

*[Remainder of Page Left Intentionally Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: January 19, 2011

_____
Jason Burzenski