**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------------- x
In re:                                                                  :    Chapter 11
                                                                        :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                                   :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                                       :
                                                                        :    Jointly Administered
          Debtors.                                                      :
------------------------------------------------------------------------- x

**FINAL APPLICATION OF CADWALADER, WICKERSHAM
& TAFT LLP FOR COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED AS SPECIAL
COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR
THE PERIOD FROM AUGUST 6, 2007 THROUGH OCTOBER 31, 2010**

| | |
|---|---|
| Name of applicant: | Cadwalader, Wickersham & Taft LLP |
| Authorized to provide professional services to: | Debtors and Debtors in Possession |
| Date of retention: | November 14, 2007 nunc pro tunc to August 6, 2007 |
| Fee period for which compensation and reimbursement is sought: | August 6, 2007 -  October 31, 2010 |
| Amount of final compensation sought as actual, reasonable and necessary: | $7,999,809.00 |
| Amount of final expense reimbursement sought as actual, reasonable and necessary: | $1,354,756.48 |

This is a(n):  ____ interim   _X_ final application

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

**INTERIM FEE APPLICATIONS**

| PRIOR APPLICATION | | REQUESTED | | APPROVED | |
|---|---|---|---|---|---|
| **Date Filed / Docket No.** | **Period Covered** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 11-19-2007/ 2084 | August 6, 2007 through October 31, 2007 | $807,207.50 | $37,279.54 | $807,207.50 | $37,279.54 |
| 3-13-2008/3269 | November 1, 2007 through January 31, 2008 | $290,952.00 | $16,093.60 | $286,002.00 | $15,194.20 |
| 6-13-2008/4621 | February 1, 2008 through April 30, 2008 | $124,007.00 | $48,359.21 | $124,007.00 | $48,359.21 |
| 9-12-2008/5854 | May 1, 2008 through July 31, 2008 | $198,689.00 | $610.91 | $198,689.00 | $610.91 |
| 12-12-2008/6712 | August 1, 2008 through October 31, 2008 | $199,942.00 | $9,162.94 | $199,942.00 | $9,162.94 |
| 3-17-2009/7113 | November 1, 2008 through January 31, 2009 | $446,623.00 | $4,994.86 | $446,623.00 | $4,994.86 |
| 6-15-2009/7527 | February 1, 2009 through April 30, 2009 | $1,687,243.00 | $7,312.25 | $1,687,243.00 | $7,312.25 |
| 9-14-2009/8061 | May 1, 2009 through July 31, 2009 | $1,010,638.50 | $43,201.95 | $1,010,638.50 | $43,201.95 |
| 11-13-2009/8302 | August 1, 2009 through September 30, 2009 | $735,112.00 | $29,406.29 | $735,112.00 | $29,406.29 |
| 11-23-2009/8329 | October 1, 2009 through October 31, 2009 | $598,848.50 | $24,460.60 | $598,848.50 | $24,460.60 |
| 2-12-2010/8559 | November 1, 2009 through November 30, 2009 | $396,474.00 | $59,218.72 | $396,474.00 | $59,218.72 |
| 3-16-2010/8686 | December 1, 2009 through January 31, 2010 | $486,793.00 | $32,621.84 | $486,793.00 | $32,621.84 |
| 6-14-2010/8903 | February 1, 2010 through April 30, 2010 | $1,617,846.50 | $332,054.21[2] | $1,617,846.50 | $332,054.21 |

---

[2] This amount includes the Daticon Expenses (as defined below).

| 9-13-2010/9210 | May 1, 2010 through July 31, 2010 | $648,979.50 | $702,757.06[3] | $648,979.50 | $702,757.06 |
| 12-13-2010/9553 | August 1, 2010 through October 31, 2010 | $510,580.50 | $19,432.90 | $510,580.50 | $19,432.90 |
| **TOTAL** | | **$9,759,936.00** | **$1,366,966.88** | **$9,754,986.00** | **$1,366,067.48** |

## COMPENSATION BY INDIVIDUAL

| Name of Professional | Department | Year First Admitted to Practice | Hourly Billing Rate ($) | Total Billed Hours | Total Compensation ($) |
|---|---|---|---|---|---|
| **Partners** | | | | | |
| Gregory Markel | Litigation | 1973 | 900.00-995.00 | 33.4 | 30,468.50 |
| Charles Adelman | Tax | 1974 | 875.00 | 1.5 | 1,312.50 |
| Mark Ellenberg | Financial Restructuring | 1975 | 900.00 | 0.5 | 450.00 |
| Louis Bevilacqua | Corporate | 1978 | 875.00-995.00 | 268.3 | 239,106.50 |
| Bruce Hiler | Litigation | 1978 | 825.00 | 1.6 | 1,320.00 |
| Gregory Petrick | Financial Restructuring | 1983 | 825.00-875.00 | 87.5 | 72,662.50 |
| Karen Gerlant | Capital Markets | 1990 | 850.00 | 2.8 | 2,380.00 |
| David S. Miller | Tax | 1991 | 875.00-995.00 | 11.9 | 11,006.50 |
| Martin Seidel | Litigation | 1991 | 800.00 | 907.3 | 725,840.00 |
| Ronit Setton | Litigation | 1993 | 725.00-825.00 | 119.7 | 98,412.50 |
| Robert Ughetta | Capital Markets | 1994 | 650.00 | 17.8 | 11,570.00 |
| Douglas Koff | Litigation | 1995 | 685.00-800.00 | 191.5 | 138,886.50 |
| **Special Counsel** | | | | | |
| Julius Loeser | Financial Services | 1971 | 725.00 | 1.0 | 725.00 |
| Nancy Eisner | Litigation | 1981 | 585.00 | 2.0 | 1,170.00 |
| Matthew Weber | Financial Restructuring | 1988 | 555.00 | 0.7 | 388.50 |
| Douglas Landy | Funds, Reg., & Eq. Deriv. | 1994 | 690.00 | 15.8 | 10,902.00 |
| Mark Holdsworth | Tax | 1995 | 640.00-720.00 | 34.4 | 23,324.00 |
| Richard Nugent | Tax | 1996 | 555.00 | 1.8 | 999.00 |
| Deborah Piazza | Financial Restructuring | 1997 | 555.00 | 49.5 | 27,472.50 |
| Joshua Weiss | Litigation | 1997 | 555.00 | 25.7 | 14,263.50 |
| Nathan Haynes | Financial Restructuring | 1999 | 555.00-645.00 | 2.9 | 1,645.50 |
| Amanda Kosowsky | Litigation | 1999 | 650.00 | 327.1 | 212,615.00 |

---

[3] This amount includes the BDO Expenses (as defined below).

| Associates | | | | | |
|---|---|---|---|---|---|
| Rosalie Yee | Funds, Reg., & Eq. Deriv. | 1999 | 540.00 | 0.5 | 270.00 |
| Joo Kim | Capital Markets | 2000 | 640.00 | 0.5 | 320.00 |
| Colman Welby | Capital Markets | 2000 | 550.00 | 3.2 | 1,760.00 |
| Gregory Zimmer | Litigation | 2000 | 550.00-615.00 | 1,174.4 | 693,963.00 |
| Joshua Smith | Corporate | 2001 | 640.00 | 1.5 | 960.00 |
| Ngoc Hulbig | Litigation | 2002 | 540.00 | 2.5 | 1,350.00 |
| Peter Isajiw | Litigation | 2003 | 525.00-600.00 | 95.5 | 50,962.50 |
| Shlomo Boehm | Tax | 2004 | 630.00 | 1.3 | 819.00 |
| Nathan Bull | Litigation | 2004 | 535.00-630.00 | 2,503.7 | 1,503,181.50 |
| Albert Soler | Litigation | 2004 | 500.00 | 74.9 | 37,450.00 |
| Scott Spencer | Litigation | 2004 | 640.00 | 32.3 | 20,672.00 |
| Jeffrey Weissmann | Corporate | 2004 | 500.00-630.00 | 568.1 | 302,257.00 |
| Hanh Huynh | Financial Restructuring | 2005 | 500.00 | 9.1 | 4,550.00 |
| Karen Walny | Tax | 2005 | 545.00-615.00 | 54.0 | 31,725.50 |
| David Ward | Litigation | 2005 | 475.00 | 5.6 | 2,660.00 |
| Anthony Antonelli | Litigation | 2006 | 450.00-480.00 | 481.7 | 227,892.00 |
| Patrick Oh | Litigation | 2006 | 450.00 | 4.9 | 2,205.00 |
| Jared Perez | Litigation | 2006 | 425.00-510.00 | 310.5 | 137,060.50 |
| Sal Astorina | Litigation | 2007 | 175.00-570.00 | 3,025.7 | 1,314,317.50 |
| Kawezya Burris | Litigation | 2007 | 355.00 | 56.8 | 20,164.00 |
| David Flamholz | Litigation | 2007 | 355.00 | 89.6 | 31,808.00 |
| Joshua Shapiro | Litigation | 2007 | 355.00 | 2.1 | 745.50 |
| Christopher Updike | Financial Restructuring | 2007 | 355.00-450.00 | 25.8 | 9,736.00 |
| Kaitlin Walsh | Financial Restructuring | 2007 | 355.00 | 0.9 | 319.50 |
| Jennifer Wetzel | Tax | 2007 | 375.00 | 2.3 | 862.50 |
| Penny Williams | Corporate | 2007 | 355.00-570.00 | 568.3 | 231,846.50 |
| Sasha Grinberg | Litigation | 2008 | 400.00 | 252.1 | 100,840.00 |
| Peter Halpin | Litigation | 2008 | 175.00-400.00 | 942.3 | 303,795.00 |
| Jeremy Jones | Corporate | 2008 | 310.00 | 13.0 | 4,030.00 |
| Elizabeth Mattern | Corporate | 2008 | 310.00-420.00 | 36.4 | 12,472.50 |
| Larry Rosenthal | Litigation | 2008 | 570.00 | 26.6 | 15,162.00 |
| Charles Weiser | Corporate | 2008 | 310.00 | 9.5 | 2,945.00 |
| Joshua Arnold | Litigation | 2009 | 175.00-335.00 | 1,053.3 | 269,367.50 |
| Ryan Blumel | Capital Markets | 2009 | 355.00 | 6.8 | 2,414.00 |
| Justin Brenner | Litigation | 2009 | 175.00-335.00 | 824.6 | 225,665.00 |
| Brian Capitummino | Litigation | 2009 | 420.00 | 39.3 | 16,506.00 |
| Taylor Ebling | Litigation | 2009 | 420.00 | 114.8 | 48,216.00 |
| Bradley Pensyl | Litigation | 2009 | 175.00-505.00 | 3,540.7 | 1,334,882.50 |
| Jared Stanisci | Litigation | 2009 | 400.00 | 0.2 | 80.00 |

| | | | | | |
|---|---|---|---|---|---|
| Matthew Stempler | Corporate | 2009 | 420.00 | 5.5 | 2,310.00 |
| Jean Troast | Litigation | 2009 | 175.00-335.00 | 933.7 | 238,485.50 |
| Heather Webb | Corporate | 2009 | 400.00 | 16.6 | 6,640.00 |
| Gregory Beaman | Litigation | 2010 | 335.00-420.00 | 271.8 | 91,214.50 |
| Keala Chan | Litigation | 2010 | 335.00 | 6.5 | 2,177.50 |
| Nicholas Kennedy | Litigation | 2010 | 335.00 | 30.0 | 10,050.00 |
| Aliza Pescovitz | Litigation | 2010 | 335.00 | 32.7 | 10,954.50 |
| Trevor Wilson | Litigation | 2010 | 335.00 | 13.3 | 4,455.50 |
| Benjamin Zogby | Litigation | 2010 | 335.00 | 25.5 | 8,542.50 |
| Maria Marinakis | Summer Associate | N/A | 250.00 | 47.5 | 11,875.00 |
| **Paralegals / Other Timekeepers** | | | | | |
| Frank Caiazzo | Corporate | N/A | 250.00-265.00 | 1.8 | 472.50 |
| Lori Dillon | Litigation | N/A | 235.00-265.00 | 14.8 | 3,805.00 |
| Man Wai Lau | Capital Markets | N/A | 250.00 | 1.7 | 425.00 |
| Doreen Cusumano | Financial Restructuring | N/A | 235.00-250.00 | 48.9 | 11,824.50 |
| James Dalcero | Litigation | N/A | 235.00 | 146.9 | 34,521.50 |
| Shelly Noorhasan | Litigation | N/A | 220.00-235.00 | 1.5 | 345.00 |
| Cynthia Ballard | Litigation | N/A | 175.00-250.00 | 694.1 | 154,374.50 |
| Santina Uribe | Financial Restructuring | N/A | 205.00 | 2.3 | 471.50 |
| Stephen Bincarowsky | Litigation | N/A | 205.00 | 13.0 | 2,665.00 |
| Kelly Bougere | Litigation | N/A | 175.00-210.00 | 1,597.3 | 314,070.00 |
| Agnes Wysoczanski | Financial Restructuring | N/A | 185.00 | 1.7 | 314.50 |
| Henry Parkin | Capital Markets | N/A | 180.00 | 4.8 | 864.00 |
| Daniel Streim | Litigation | N/A | 175.00-180.00 | 118.3 | 20,712.50 |
| Vanessa Pagnani | Litigation | N/A | 170.00 | 4.0 | 680.00 |
| Katie Seno | Corporate | N/A | 150.00-195.00 | 20.4 | 3,444.00 |
| Megan McMahon | Litigation | N/A | 150.00 | 42.4 | 6,360.00 |
| Jennifer Reynolds | Litigation | N/A | 150.00 | 61.6 | 9,240.00 |
| Lindsay Thomas | Litigation | N/A | 150.00 | 14.7 | 2,205.00 |
| Anthony Wong | Corporate | N/A | 100.00 | 142.5 | 14,250.00 |
| Poppy Quattlebaum | Managing Attorney | N/A | 425.00-480.00 | 1.5 | 698.00 |
| Allison DiPasqua | Managing Attorney | N/A | 185.00 | 0.8 | 148.00 |
| Gregory Tomey | Managing Attorney | N/A | 185.00 | 1.0 | 185.00 |
| David Moura | Managing Attorney | N/A | 175.00 | 14.6 | 2,555.00 |
| Jesse Raspler | Litigation Support | N/A | 145.00-250.00 | 39.3 | 9,587.50 |
| Gloria Li | Litigation Support | N/A | 210.00 | 2.0 | 420.00 |
| Eduardo Toro | Litigation Support | N/A | 205.00 | 43.2 | 8,856.00 |
| Vishnu Deonandan | Litigation Support | N/A | 175.00-215.00 | 802.2 | 160,302.00 |
| Indira Kinsella | Litigation Support | N/A | 175.00-215.00 | 58.3 | 11,638.50 |
| Roscoe Chong | Litigation Support | N/A | 195.00 | 7.0 | 1,365.00 |
| Joseph Biagiotti | Library | N/A | 175.00-185.00 | 2.7 | 491.50 |
| Cathy Backes | Library | N/A | 155.00-185.00 | 9.1 | 1,641.50 |

| Elizabeth Whittington | Library | N/A | 175.00 | 1.7 | 297.50 |
|---|---|---|---|---|---|
| Josephine Gregorio | Library | N/A | 150.00-175.00 | 5.1 | 847.50 |
| **TOTAL** | | | | **23,364.3** | **9,759,936.00[4]** |
| **BLENDED RATE** | | | **461.85[5]** | | |

## COMPENSATION BY PROJECT CATEGORY

| Project Category | Project Code | Total Hours | Total Fees ($) |
|---|---|---|---|
| Administrative | AHM-A | 3132.0 | 738,144.00 |
| SEC Investigation | AHM-S | 578.6 | 253,723.00 |
| Waterfield Litigation | AHM-W | 18,036.1 | 7,925,827.00 |
| Sale of Servicing Business | AHM-X | 1,617.6 | 842,242.00 |
| **TOTAL** | | **23,364.3** | **9,759,936.00[6]** |

---

[4] This amount includes fees in the amount of $4,950.00 sought in the Second Application (as defined below) that were not allowed by the Court.

[5] This amount reflects the blended hourly rate of CWT's attorneys, and excludes paralegals and other timekeepers.

[6] This amount includes fees in the amount of $4,950.00 sought in the Second Application (as defined below) that were not allowed by the Court.

**EXPENSE SUMMARY**

| Expense Category | Total Expenses ($) |
|---|---|
| Process Service | 4,345.09 |
| Copying | 37,021.41 |
| Outside Printing | 78,853.50 |
| Telephone | 1,525.90 |
| Online Research | 204,268.32 |
| Delivery Services/Messengers | 7,905.90 |
| Postage | 88.65 |
| Local Travel | 28,733.25 |
| Out of Town Travel | 43,310.54 |
| Meals | 8,938.64 |
| Litigation Support Vendors | 6,740.52 |
| Deposition Transcripts | 70,169.41 |
| Other Professionals | 632.00 |
| Good Standing Certificate | 65.00 |
| Managing Attorney's Charges | 1,675.00 |
| Supplies | 2,880.05 |
| Other | 1,643.09 |
| Publications | 515.40 |
| Filing Fees | 90.00 |
| Notary Fees | 294.50 |
| Electronic Discovery Services Vendor | 229,356.12 |
| Expert Professional Consulting Services | 637,914.59 |
| **TOTAL** | **1,366,966.88**[7] |

---

[7] This amount includes expenses in the amount of $899.40 sought in the Second Application (as defined below) that were not allowed by the Court.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------------- x
In re:                                                                          :     Chapter 11
                                                                                :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                                           :     Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                                              :
                                                                                :     Jointly Administered
        Debtors.                                                                :
------------------------------------------------------------------------- x

**FINAL APPLICATION OF CADWALADER, WICKERSHAM
& TAFT LLP FOR COMPENSATION FOR SERVICES RENDERED
AND REIMBURSEMENT OF EXPENSES INCURRED AS SPECIAL
COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION FOR
THE PERIOD FROM AUGUST 6, 2007 THROUGH OCTOBER 31, 2010**

Cadwalader, Wickersham & Taft LLP ("CWT"), as special counsel to American

Home Mortgage Holdings, Inc. and certain of its direct and indirect affiliates and subsidiaries

that are debtors and debtors in possession (collectively, the "Debtors") in the above-captioned

cases (the "Bankruptcy Cases"), hereby submits its final application (the "Final Application")

pursuant to sections 330 and 331 of title 11, United States Code, 11 U.S.C. §§ 101, et seq. (the

"Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), and rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules") seeking final allowance

of compensation for professional services rendered to the Debtors in connection with the

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings") (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

Bankruptcy Cases during the period from August 6, 2007 through October 31, 2010 (the "Entire Compensation Period") in the amount of $7,999,809.00, and reimbursement of actual and necessary costs and expenses incurred during the Entire Compensation Period in connection with such services in the amount $1,354,756.48.   In support of this Final Application, CWT respectfully represents as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this Final Application pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rule 2016-2.

## BACKGROUND

**A.  The Chapter 11 Cases**

2.     On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

3.     On August 14, 2007, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee").  See D.I. 156.

4.     On February 23, 2009 (the Confirmation Date"), the Court entered an order (as amended on June 23, 2009, the "Confirmation Order", see D.I. 7042, 7555) confirming the "Amended Chapter 11 Plan of Liquidation of the Debtors, dated as of February 18, 2009" (the "Plan", see D.I. 7029).  On November 30, 2010 (the "Effective Date"), the Plan became

effective and the Debtors filed a notice of the occurrence of the Effective Date.  See D.I. 9519.

5.     On February 24, 2009, the Court entered an order directing the Debtors and the Committee to confer regarding the appointment of a fee examiner and the establishment of related procedures concerning the fee examiner's review of professional claims, and submit a proposed order regarding the same, no later than March 27, 2009.  See D.I. 7047.

6.     On April 1, 2009, the Court entered its "Order Appointing Fee Examiner and Establishing Procedures for the Review of Professional Claims" (the "Fee Examiner Order", see D.I. 7218), which, among other things, appointed M. Jacob Renick as the fee examiner in the Bankruptcy Cases (the "Fee Examiner") and set forth the duties and compensation for the Fee Examiner.

7.     Pursuant to the Confirmation Order, as amended, all professionals or other persons requesting compensation or reimbursement of expenses pursuant to any of sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Confirmation Date shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than sixty (60) days after a notice of the Effective Date is filed with the Court and served.  See Confirmation Order, ¶ 47 (as amended); see also Plan, Article 3.B.3(i).

**B.  Retention of CWT**

8.     On August 10, 2007, the Debtors filed an application with the Court (the "Employment Application", see D.I. 133) seeking entry of an order authorizing and approving the employment and retention of CWT as special counsel to the Debtors.

9.     On September 4, 2007, the Court entered an order (the "Interim Compensation Order", see D.I. 547) establishing procedures for interim compensation and

reimbursement of expenses of professionals retained in the Bankruptcy Cases.

10.     On November 14, 2007, the Court entered an order (the "<u>Retention</u> <u>Order</u>", <u>see</u> D.I. 2000) authorizing the Debtors to employ and retain CWT under a general retainer as special counsel to the Debtors, effective as of the Petition Date, in connection with the following matters:

(i)     from the Petition Date through September 26, 2007, non-bankruptcy transactional work with respect to the sale of the Debtors' servicing business;

(ii)    non-bankruptcy transactional work with respect to the sale of a non-debtor bank entity;

(iii)   from the Petition Date through September 3, 2007, representation of the Debtors in connection with the inquiry of the Securities and Exchange Commission; and

(iv)    representation of AHM Corp. in the connection with a prepetition litigation entitled <u>American Home Mortgage Corp. v. Union Federal Bank of Indianapolis</u>, Case No. 06-CV-7864 (JGK) (RLE) (S.D.N.Y. filed Sept. 29, 2006) (the "<u>Waterfield Litigation</u>").[2]

11.     The Retention Order authorized CWT to be compensated on an hourly basis and to be reimbursed for actual and necessary costs and expenses.  All services for which compensation is requested by CWT were performed for or on behalf of the Debtors.

**C.  Prepetition Representation of the Debtors**

12.     CWT represented the Debtors prior to the Petition Date in connection with various matters.  On July 31, 2007, CWT received a retainer for its services in the amount of $2,000,000.00 (the "<u>Retainer</u>").  After applying the Retainer to CWT's prepetition fees and expenses, the balance of the Retainer totaling $1,080,899.46 was then applied to the fees and expenses sought in CWT's subsequent fee applications.

---

[2]  The Retention Order granted the Employment Application in part; the Debtors' application to employ CWT in connection with the securities class action litigation matters referenced in paragraph 20(f) of the Employment Application was adjourned by the Retention Order to a date to be determined by the Debtors, in consultation with the U.S. Trustee and the Committee, but ultimately was never considered by the Court.

**D.  Interim Fee Applications**

13.    During the Entire Compensation Period, in compliance with the Interim Compensation Order, CWT filed fifteen applications requesting interim approval of compensation for services rendered and reimbursement of expenses incurred.

14.    On November 19, 2007, CWT filed its "First Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period August 6, 2007 through October 31, 2007" (the "First Application", see D.I. 2084), which sought interim allowance of fees in the amount of $807,207.50 and interim reimbursement of expenses in the amount of $37,279.54.  On December 12, 2007, a Certificate of No Objection was filed with respect to the First Application.  See D.I. 2371.  On January 15, 2008, the Court entered an order (see D.I. 2725) granting, among other things, the First Application and approving CWT's fees in the amount of $807,207.50 and expenses in the amount of $37,279.54.

15.    On March 13, 2008, CWT filed its "Second Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period November 1, 2007 through January 31, 2008" (the "Second Application", see D.I. 3269), which sought interim allowance of fees in the amount of $290,952.00 and interim reimbursement of expenses in the amount of $16,093.60.  On May 2, 2008, the Court entered an order (see D.I. 3948) granting the Second Application and approving adjusted fees in the amount of $286,002.00 and adjusted expenses in the amount of $15,194.20.

16.    On June 13, 2008, CWT filed its "Third Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for

Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period February 1, 2008 through April 30, 2008" (the "Third Application", see D.I. 4621), which sought interim allowance of fees in the amount of $124,007.00 and interim reimbursement of expenses in the amount of $48,359.21.  On August 11, 2008, a Certificate of No Objection was filed with respect to the Third Application.  See D.I. 5350.  On August 18, 2008, the Court entered an order (see D.I. 5459) granting, among other things, the Third Application and approving CWT's fees in the amount of $124,007.00 and expenses in the amount of $48,359.21.

17.    On September 12, 2008, CWT filed its "Fourth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period May 1, 2008 through July 31, 2008" (the "Fourth Application", see D.I. 5854), which sought interim allowance of fees in the amount of $198,689.00 and interim reimbursement of expenses in the amount of $610.91.  On October 6, 2008, a Certificate of No Objection was filed with respect to the Fourth Application.  See D.I. 6188.  On October 23, 2008, the Court entered an order (see D.I. 6446) granting, among other things, the Fourth Application and approving CWT's fees in the amount of $198,689.00 and expenses in the amount of $610.91.

18.    On December 12, 2008, CWT filed its "Fifth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period August 1, 2008 through October 31, 2008" (the "Fifth Application", see D.I. 6712), which sought interim allowance of fees in the amount of $199,942.00 and interim reimbursement of expenses in the amount of $9,162.94.  On January 6, 2009, a Certificate of No Objection was filed with respect to the Fifth Application.  See D.I. 6806.  On January 13, 2009, the Court

6

entered an order (see D.I. 6838) granting, among other things, the Fifth Application and approving CWT's fees in the amount of $199,942.00 and expenses in the amount of $9,162.94.

19.    On March 17, 2009, CWT filed its "Sixth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period November 1, 2008 through January 31, 2009" (the "Sixth Application", see D.I. 7113), which sought interim allowance of fees in the amount of $446,623.00 and interim reimbursement of expenses in the amount of $4,994.86.  On April 20, 2009, a Certificate of No Objection was filed with respect to the Sixth Application.  See D.I. 7296, as amended by D.I. 7298.  On August 11, 2009, the Court entered an order (see D.I. 7938) granting, among other things, the Sixth Application and approving CWT's fees in the amount of $446,623.00 and expenses in the amount of $4,994.86.

20.    On June 15, 2009, CWT filed its "Seventh Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period February 1, 2009 through April 30, 2009" (the "Seventh Application", see D.I. 7527), which sought interim allowance of fees in the amount of $1,687,243.00 and interim reimbursement of expenses in the amount of $7,312.25.  On July 10, 2009, a Certificate of No Objection was filed with respect to the Seventh Application.  See D.I. 7611, as amended by D.I. 7618.  On August 11, 2009, the Court entered an order (see D.I. 7938) granting, among other things, the Seventh Application and approving CWT's fees in the amount of $1,687,243.00 and expenses in the amount of $7,312.25.

21.    On September 14, 2009, CWT filed its "Eighth Application of

Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period May 1 through July 31, 2009" (the "Eighth Application", see D.I. 8061), which sought interim allowance of fees in the amount of $1,010,638.50 and interim reimbursement of expenses in the amount of $43,201.95.  On October 13, 2009, a Certificate of No Objection was filed with respect to the Eighth Application.  See D.I. 8177.  On October 14, 2009, the Court entered an order (see D.I. 8179) granting, among other things, the Eighth Application and approving CWT's fees in the amount of $1,010,638.50 and expenses in the amount of $43,201.95.

22.    On November 13, 2009, CWT filed its "Ninth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period August 1 through September 30, 2009" (the "Ninth Application", see D.I. 8302), which sought interim allowance of fees in the amount of $735,112.00 and interim reimbursement of expenses in the amount of $29,406.29.  On December 10, 2009, a Certificate of No Objection was filed with respect to the Ninth Application.  See D.I. 8302.  On March 10, 2010, the Court entered an order (see D.I. 8676) granting, among other things, the Ninth Application and approving CWT's fees in the amount of $735,112.00 and expenses in the amount of $29,406.29.

23.    On November 23, 2009, CWT filed its "Tenth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period October 1 through October 31, 2009" (the "Tenth Application", see D.I. 8329), which sought interim allowance of fees in the amount of $598,848.50 and interim reimbursement of expenses

in the amount of $24,460.60.  On December 23, 2009, a Certificate of No Objection was filed with respect to the Tenth Application.  See D.I. 8434.  On March 10, 2010, the Court entered an order (see D.I. 8676) granting, among other things, the Tenth Application and approving CWT's fees in the amount of $598,848.50 and expenses in the amount of $24,460.60.

24.    On February 12, 2010, CWT filed its "Eleventh Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period November 1 through November 30, 2009" (the "Eleventh Application", see D.I. 8559), which sought interim allowance of fees in the amount of $396,474.00 and interim reimbursement of expenses in the amount of $59,218.72.  On March 16, 2010, a Certificate of No Objection was filed with respect to the Eleventh Application.  See D.I. 8688.  On May 4, 2010, the Court entered an order (see D.I. 8820) granting, among other things, the Eleventh Application and approving CWT's fees in the amount of $396,474.00 and expenses in the amount of $59,218.72.

25.    On March 16, 2010, CWT filed its "Twelfth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period December 1, 2009 through January 31, 2010" (the "Twelfth Application", see D.I. 8686), which sought interim allowance of fees in the amount of $486,793.00 and interim reimbursement of expenses in the amount of $32,621.84.  On April 12, 2010, a Certificate of No Objection was filed with respect to the Twelfth Application.  See D.I. 8765.  On May 4, 2010, the Court entered an order (see D.I. 8820) granting, among other things, the Twelfth Application and approving CWT's fees in the amount of $486,793.00 and expenses in the amount of $32,621.84.

26.    On June 14, 2010, CWT filed its "Thirteenth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period February 1, 2010 through April 30, 2010" (the "Thirteenth Application", see D.I. 8903), which sought interim allowance of fees in the amount of $1,617,846.50 and interim reimbursement of expenses in the amount of $332,054.21.[3]    On July 9, 2010, a Certificate of No Objection was filed with respect to the Thirteenth Application.  See D.I. 8996.  On July 19, 2010, the Court entered an order (see D.I. 9027) granting, among other things, the Thirteenth Application and approving CWT's fees in the amount of $1,617,846.50 and expenses in the amount of $332,054.21.

27.    On September 13, 2010, CWT filed its "Fourteenth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period May 1, 2010 through July 31, 2010" (the "Fourteenth Application", see D.I. 9210), which sought interim allowance of fees in the amount of $648,979.50 and interim reimbursement of expenses in the amount of $702,757.06.[4]    On October 8, 2010, a Certificate of No Objection was filed with respect to the Fourteenth Application.  See D.I. 9314.  On October 20, 2010, the Court entered an order (see D.I. 9360) granting, among other things, the Fourteenth Application and approving CWT's fees in the amount of $648,979.50 and expenses in the amount of $702,757.06.

28.    On December 13, 2010, CWT filed its "Fifteenth Application of Cadwalader, Wickersham & Taft LLP as Special Counsel to the Debtors and Debtors in

---

[3] This amount includes the Daticon Expenses (as defined below).
[4] This amount includes the BDO Expenses (as defined below).

Possession for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period August 1, 2010 through October 31, 2010" (the "Fifteenth Application", see D.I. 9553), which sought interim allowance of fees in the amount of $510,580.50 and interim reimbursement of expenses in the amount of $19,432.90.  On January 5, 2011, a Certificate of No Objection was filed with respect to the Fifteenth Application.  See D.I. 9633.  On January 11, 2011, the Court entered an order (see D.I. 9657) granting, among other things, the Fifteenth Application and approving CWT's fees in the amount of $510,580.50 and expenses in the amount of $19,432.90.

29.    CWT did not provide any services to the Debtors in connection with the Bankruptcy Cases from November 1, 2010 through the Effective Date.

**E.  The Daticon Expenses**

30.    Pursuant to a Services Agreement dated December 31, 2008 (the "Daticon EED Agreement"), Electronic Evidence Discovery Incorporated, predecessor in interest to Daticon EED ("Daticon EED"), agreed to provide the Debtors with certain electronic discovery services necessitated by the Waterfield Litigation, as well as access to Daticon EED's hosted online discovery platform.  In connection therewith, during the Bankruptcy Cases, Daticon EED (i) consulted on best practices for document review and production, (ii) processed over 100 gigabytes of electronic data provided by the parties to the Waterfield Litigation, (iii) trained CWT associates and staff on Discovery Partner, Daticon EED's document review program, (iv) provided follow up technical support on Discovery Partner, and (v) coordinated the production of all documents determined by CWT to be responsive to discovery requests of the parties to the Waterfield Litigation.

31.    The services provided by Daticon EED were critical for the Debtors to

efficiently and effectively process and produce documents and electronic data in response to the discovery requests of the parties to the Waterfield Litigation. These expenses are reasonable in light of the volume of data and documents provided to the Debtors and CWT, the expedited discovery schedule, and the magnitude of the damages sought in the Waterfield Litigation. Absent the electronic discovery services provided by Daticon EED, the discovery process would have required significant additional time and costs for the Debtors and their professionals in addressing the voluminous discovery materials.

32.    As set forth in the declaration of Karin S. Hansen, Senior Corporate Counsel of Daticon EED, in support of the Thirteenth Application (see D.I. 8904), the services provided by Daticon EED to the Debtors and their counsel were necessitated by the Waterfield Litigation and all items and charges, expenses, billing rates and fees related to such services are consistent with the Daticon EED Agreement and comparable to those charged by similar vendors.

33.    In the Thirteenth Application, CWT requested interim approval for payment of services provided by Daticon EED in the amount of $229,356.12 (the "Daticon Expenses"). Following approval of the Thirteenth Application on July 19, 2010, the Debtors paid the full amount of the Daticon Expenses to CWT. CWT remitted such amount to Daticon EED, subject to disgorgement until final allowance by the Court.

**F.  The BDO Expenses**

34.    Pursuant to an engagement letter dated October 6, 2009 (the "Engagement Letter"), BDO Seidman, LLP ("BDO") (now BDO USA, LLP) agreed to provide certain professional consulting services necessitated by the Waterfield Litigation. Specifically, Anthony Lendez and Jeffrey Katz, partners at BDO, with the assistance of other BDO professionals,

developed expert opinions regarding key issues in the Waterfield Litigation, including (i) the accounting treatment associated with the mortgage loans sold by Waterfield Financial Corporation ("WFC") to EMC Mortgage Corp. and the related repurchase obligations under Generally Accepted Accounting Principles ("GAAP"), and (ii) calculation of the post-closing purchase price adjustment pursuant to the Purchase Agreement by and among AHM Corp., Union Federal Bank of Indianapolis, and WFC, dated January 12, 2006.  In connection therewith, Mr. Lendez, Mr. Katz and other BDO professionals, among other things, (i) met with CWT attorneys and reviewed relevant documents to gain an understanding of the methodology used by WFC to calculate its repurchase obligations and the purchase price adjustment, (ii) reviewed relevant GAAP provisions pertaining to the determination of appropriate reserves for repurchase obligations, (iii) prepared and revised expert reports, (iv) prepared for and provided deposition testimony, (v) reviewed and summarized observations regarding the reports filed by experts for WFC, and (vi) provided declarations in support of AHM Corp.'s Opposition to Defendants' Motion for Summary Judgment, filed in the Waterfield Litigation on April 29, 2010.

35.    The services provided by BDO were essential to the Waterfield Litigation. These expenses are reasonable in light of the work necessary for this assignment and the complexity of and issues addressed in the expert reports.

36.    As set forth in the declaration of BDO partner Anthony M. Lendez in support of the Fourteenth Application (see D.I. 9211), the services provided by BDO to the Debtors and their counsel were necessitated by the Waterfield Litigation and all items and charges, expenses, billing rates and fees related to such services are consistent with the Engagement Letter and comparable to those charged by similar consultants.

37.    In the Fourteenth Application, CWT requested interim approval for

payment of services provided by BDO in the amount of $637,914.59 (the "BDO Expenses"). Following approval of the Fourteenth Application on October 20, 2010, the Debtors paid the full amount of the BDO Expenses to CWT.  CWT remitted such amount to BDO, subject to disgorgement until final allowance by the Court.

**G.  Payments Made to CWT During the Bankruptcy Cases**

38.    With respect to the Entire Compensation Period, the Court has approved, on an interim basis, payment of CWT's fees in the amount of $9,754,986.00 and reimbursement of CWT's expenses in the amount of $1,366,067.48.[5]  As of the date of this Final Application, the Debtors have paid CWT fees in the amount of $7,999,809.00 and reimbursed CWT for expenses in the amount of $1,354,756.48.[6]

**H.  Settlement Agreement**

39.    In late December 2010, CWT reached a settlement agreement with the Fee Examiner and Steven D. Sass as Plan Trustee of the American Home Mortgage Plan Trust (the "Plan Trustee") regarding CWT's compensation pursuant to which CWT agreed to (i) discount its fees and expenses in an amount equal to $1,766,488.00, which represents the difference between the fees and expenses that have been approved by the Court on an interim basis and the amounts paid by the Debtors to CWT as of the date of this Final Application, and (ii) seek no additional compensation under this Final Application.  In exchange, the Fee Examiner and the Plan Trustee agreed not to object to final allowance of the fees and expenses previously paid to CWT and the Plan Trustee released any and all claims against CWT regarding avoidance of certain payments made to CWT prior to the Petition Date.

---

[5] This amount includes the Daticon Expenses and the BDO Expenses.

[6] This amount includes the Daticon Expenses and the BDO Expenses, which were remitted by CWT to Daticon EED and BDO, respectively.

## SUMMARY OF SERVICES RENDERED

40.    Since the Petition Date, CWT has rendered professional services to the Debtors as requested and as necessary and appropriate in furtherance of the interests of the Debtors and their estates and creditors.  The variety and complexity of the issues involved in the Bankruptcy Cases and the need to act or respond on an expedited basis has required the expenditure of time by personnel from several legal disciplines, on an as-needed basis.

41.    The following is a summary of the significant professional services rendered by CWT as special counsel to the Debtors during the Entire Compensation Period, according to the four project categories created by CWT for the Bankruptcy Cases:

## A.  The Waterfield Litigation (Project Code AHM-W)

42.    CWT served as special counsel to the Debtors during the Entire Compensation Period.  This representation involved:

- On September 29, 2006, AHM Corp. filed a complaint (the "Complaint") against Union Federal Bank of Indianapolis ("Union Federal") that asserted (i) a claim for a purchase price adjustment with respect to that certain Stock and Mortgage Loan Purchase Agreement, dated as of January 12, 2006 (the "Purchase Agreement") and (ii) claims for indemnification based on Union Federal's breaches of certain representations and warranties in the Purchase Agreement.

- On October 23, 2006, Union Federal filed motions to dismiss AHM Corp.'s Complaint (the "Motion to Dismiss") and to substitute Waterfield Shareholder LLC ("Waterfield LLC", and together with Union Federal, the "Defendants") in place of Union Federal as the defendant in the Waterfield Litigation (the "Motion to Substitute").  On November 7, 2006, CWT attorneys, on behalf of AHM Corp. filed oppositions to Union Federal's Motion to Dismiss and Motion to Substitute.  The court scheduled a hearing for oral argument on August 21, 2007.

- CWT attorneys prepared for the oral argument, which efforts required extensive legal research and analysis of the parties' positions and arguments.  On August 21, 2007, CWT attorneys participated in oral argument on Union Federal's Motion to Dismiss and Motion to Substitute. On August 21, 2007, the court denied the Motion to Substitute and denied

the Motion to Dismiss with respect to the first seven counts in AHM Corp.'s Complaint.

- On December 20, 2007, CWT attorneys filed a motion to strike the fourth affirmative defense asserted by Union Federal. On January 4, 2008, CWT attorneys filed a motion to dismiss the fifth counterclaim asserted by Union Federal. On February 11, 2008, CWT attorneys filed a motion to dismiss the sixth counterclaim asserted by Waterfield LLC. CWT attorneys prepared the documents filed in support of each of these motions, including multiple memoranda of law. In so doing, CWT attorneys extensively reviewed and analyzed the parties' positions and arguments, and expended significant time and effort conducting legal research in support of its arguments against the Defendants.

- On July 11, 2008, CWT attorneys participated in oral argument before the court on AHM Corp.'s motion to strike the fourth affirmative defense asserted by Union Federal and AHM Corp.'s motion to dismiss the sixth counterclaim asserted by Waterfield LLC. CWT attorneys prepared for the oral argument, which efforts requires extensive legal research and analysis of the parties' positions and arguments.

- On August 7, 2008, CWT attorneys filed an answer and affirmative defenses to the amended answers, counterclaims and affirmative defenses filed by the Defendants, which efforts included extensive review and analysis of the parties' pleadings and positions.

- CWT attorneys conducted fact discovery on behalf of AHM Corp., which included drafting document requests, interrogatories and other discovery requests; responding to the Defendants' discovery requests; collecting, processing, reviewing, analyzing and producing millions of pages of documents provided by the Debtors and reviewing and analyzing millions of pages of documents produced by the Defendants; drafting correspondence with the Defendants with respect to the scope and timing of discovery; drafting confidentiality stipulations and scheduling orders; researching, analyzing and preparing memoranda with respect to various discovery issues; preparing for, taking and defending depositions; and conducting numerous conferences with the Debtors' management as well as internal team conferences in order to discuss strategy for prosecuting the litigation and conducting discovery.

- CWT attorneys conducted expert discovery on behalf of AHM Corp., which included preparing for expert depositions; taking and defending expert depositions; meetings with expert witnesses; reviewing and analyzing financial accounting standards, documents and transcripts; and researching, analyzing and preparing memoranda with respect to various expert discovery issues.

- On April 1, 2010, CWT attorneys filed a motion for partial summary judgment. CWT attorneys prepared the documents filed in support of AHM Corp.'s motion for partial summary judgment, including a memorandum of law and a statement of material facts, a reply memorandum of law, a response to the supplemental statement of material facts filed by the Defendants, and documents in opposition to the Defendants' motion to strike certain evidence submitted by AHM Corp. in support of AHM Corp.'s motion for partial summary judgment. In so doing, CWT attorneys extensively reviewed and analyzed the discovery record, and expended significant time and effort conducting legal research in support of its arguments against the Defendants.

- On April 1, 2010, the Defendants filed a motion for summary judgment. CWT attorneys extensively reviewed and analyzed the Defendants' arguments, and prepared opposition papers to the Defendants' motion. On April 29, 2010, CWT attorneys filed an opposition to the motion for summary judgment filed by the Defendants. CWT attorneys prepared the documents filed in opposition to the Defendants' motion for summary judgment, including a memorandum of law, a response to the statement of material facts filed by the Defendants, and a motion to strike certain evidence submitted by the Defendants in support of their motion for summary judgment.

- On July 22, 2010, CWT attorneys participated in oral argument before the court on AHM Corp.'s motion for partial summary judgment, the Defendants' motion for summary judgment and the motions to strike filed in connection with the parties' summary judgment papers. CWT attorneys prepared for oral argument, which included extensive legal research, review of documents and testimony and analysis of the parties' positions and arguments.

- CWT attorneys prepared for trial, including drafting all required pretrial memoranda, such as the Joint Pretrial Order, Proposed Findings of Fact and Law, and a Pretrial Memorandum, as well as motions in limine and trial outlines. In so doing, CWT attorneys extensively reviewed and analyzed the discovery and summary judgment records, and expended time and effort conducting legal research in support of its arguments against the Defendants.

- On October 5, 2010, AHM Corp. and the Defendants to the Waterfield Litigation entered into a settlement agreement under which CWT attorneys achieved resolution of all claims. In connection therewith, CWT engaged in negotiations with opposing counsel and drafted the settlement agreement and related papers and correspondence.

**B. Transactional Work (Project Code AHM-X)**

43.    During the Bankruptcy Cases, CWT also served as special corporate counsel to the Debtors with respect to non-bankruptcy transactional work in connection with the sale of the Debtors' servicing business and the sale of a non-debtor bank entity.    This representation involved:

- Sale of Debtors' Servicing Business.  The Debtors began marketing the Debtors' servicing business in August 2007.  CWT drafted a form of asset purchase agreement for bidders, including disclosure schedules for use in the marketing process.  CWT also began the process of negotiating a stalking horse bid with W.L. Ross and consulted and coordinated with bankruptcy counsel as well as other advisors to the Debtors.  In addition, CWT revised the asset purchase agreement and disclosure schedules multiple times and drafted other ancillary documentation related to the sale.  On September 25, 2007, the Debtors and W.L. Ross executed an asset purchase agreement.  The transaction was approved by the Court on October 29, 2007.

- Sale of Non-Debtor Bank Entity.  The Debtors began marketing the non-debtor bank entity in August 2007.  CWT drafted a form of stock purchase agreement for bidders, including disclosure schedules, for use in the marketing process.   During the course of the representation, CWT negotiated stalking horse bids for the equity and/or assets of the non-debtor bank with at least four separate bidders and consulted and coordinated with regulatory and bankruptcy counsel, other advisors to the Debtors and the employees and board of directors of the non-debtor bank.  During this process, CWT revised the purchase agreement and disclosure schedules multiple times and drafted various amendments, certificates and other ancillary documentation related to the potential sale.  Each of the initial bidders withdrew from negotiations during advanced stages of negotiations.  On April 1, 2009, the Debtors and The Bancorp executed a stock purchase agreement with respect to the equity of the bank.  The stock purchase agreement terminated by its terms following the failure to satisfy closing conditions relating to the receipt of regulatory approval.

**C. SEC Investigation (Project Code AHM-S)**

44.    Between the Petition Date and September 1, 2007, CWT represented the Debtors in connection with a document production request made by the Securities and Exchange Commission ("SEC").  This representation involved:

- Participating in meetings with the Debtor's employees and board of directors, teleconferences, and on-site visits with the Debtors with respect to the production of documents;

- Preparing presentations and participating in calls and meetings with the SEC officials;

- Gathering and reviewing documents from the Debtors as well as preparing documents for production; and

- Aiding in the transition of this work to successor counsel.

## D. Administrative Work (Project Code AHM-A)

45.     The project code AHM-A covers all administrative work necessary for the services provided by CWT to the Debtors during the Bankruptcy Cases.  This work included:

- General administrative support from paralegals in CWT's Litigation and Corporate Departments.

- Assistance from members of CWT's litigation support team, including assisting with document review and production necessitated by the Waterfield Litigation.  Among other things, members of CWT's litigation support staff processed the documents received from the Debtors in January 2009 and sorted them into databases for review by CWT attorneys in Concordance, CWT's document review platform.  Litigation support also created Concordance indexing tabs, ran diagnostic tests on search results, and processed data received from other parties, in addition to conducting Concordance training sessions and responding to questions from CWT attorneys regarding the platform.

### BASIS FOR RELIEF REQUESTED

46.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. §330(a)(1).  Section 330 of the Bankruptcy Code also sets forth the criteria for the award of such compensation and reimbursement:

In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

47.     CWT respectfully submits that the professional services rendered as special counsel to the Debtors during the Bankruptcy Cases were requested by the Debtors and necessary to address the matters for which CWT was retained.  Such services were performed efficiently, effectively and economically, and the results obtained to date have benefited the Debtors and their estates.  The services rendered by CWT required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and action by the Debtors could be effectively addressed.  The nature and complexity of the legal advice and services provided by CWT to the Debtors during the Bankruptcy Cases required significant time and attention of partners and senior attorneys, and CWT staffed this matter so that the required workload could be distributed among appropriate personnel.  Additionally, the expenses incurred by CWT during the Bankruptcy Cases were actual and necessary to the rendition of the professional services by CWT to the Debtors.

48.     The compensation sought in this Final Application for the services rendered by CWT is fair and reasonable.  As described above, CWT has devoted a substantial

amount of time and effort to the delineated matters.  The rates charged by CWT for the services rendered by its attorneys and paraprofessionals in the Bankruptcy Cases are the same rates that CWT charges for such services rendered in comparable non-bankruptcy related matters and are comparable to those charged by law firms of a similar size and expertise in CWT's relevant market.  Additionally, CWT has agreed to a fee discount in the amount of $1,766,488.00, in order to resolve all issues raised by the Fee Examiner and the Plan Trustee.

49.    A consideration of the factors enumerated in In re First Colonial Corp. of Am., 544 F.2d 1291, 1298-99 (5th Cir. 1977), reh'g denied, 547 F.2d 573, cert. denied, 431 U.S. 904, which standards have been adopted by most courts, including courts in the Third Circuit, see, e.g., In re Lan Assocs., 192 F.3d 109, 123 n.8 (3d Cir. 1999), supports final allowance of the compensation and reimbursement sought herein.

(a)    Time and Labor Required:  The professional services rendered by CWT on behalf of the Debtors have required the expenditure of substantial time and effort, as well as a high degree of professional competence and expertise, in order to deal with the delineated matters on a timely basis.

(b)    Novelty and Difficulty of Questions:  Complex issues have arisen in the course of these matters that required the specialized expertise and skill set of CWT's professionals.

(c)    Customary Fee:  The fees sought herein are based upon CWT's normal hourly rates for services of this kind.  CWT respectfully submits that the fees sought herein are not unusual given the complexity of the matters it was handling.

(d)    Whether the Fee is Fixed or Contingent:  Pursuant to sections 330 and 331 of the Bankruptcy Code, all fees sought by professionals employed under section 327 of the Bankruptcy Code are contingent pending final approval by the Court.

(e)    Experience, Reputation and Ability of the Attorneys:  CWT is one of the largest and most sophisticated law firms in the world and maintains corporate and litigation practices that are regarded as some of the best in the nation.  CWT's experience enables it to perform the services described herein competently and expeditiously.

(f)    <u>Nature and Length of Professional Relationship</u>:  CWT was retained as special counsel to the Debtors pursuant to an order of the Court.  CWT has rendered services continuously to the Debtors as special counsel since the Petition Date.

50.    For the reasons set forth above and in the verification of Gregory M. Petrick in support of the Final Application, attached hereto, CWT respectfully requests that the Court allow the fees and expenses sought in this Final Application on a final basis.

WHEREFORE, CWT respectfully requests that the Court enter an order granting (i) final allowance of compensation for professional services rendered to the Debtors during the Entire Compensation Period in the amount of $7,999,809.00, and reimbursement of actual and necessary costs and expenses incurred by CWT during the Entire Compensation Period in connection with such services in the amount of $1,354,756.48, and (ii) such other and further relief as is just and proper.

Dated: January 31, 2011
        Wilmington, Delaware

CADWALADER, WICKERSHAM & TAFT LLP

  */s/ Gregory M. Petrick*
Gregory M. Petrick
One World Financial Center
New York, New York  10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

*Special Counsel to the Debtors
and Debtors in Possession*

<u>VERIFICATION</u>

STATE OF DELAWARE    )
                            )    SS:
NEW CASTLE COUNTY    )

Gregory M. Petrick, Esquire, after being duly sworn according to law, deposes and says:

1.    I am a Partner at the applicant firm, Cadwalader, Wickersham & Taft LLP.

2.    I am admitted and in good standing as a member of the Bar of New York and the United States District Court for the Southern District of New York and I have been admitted <u>pro</u> <u>hac</u> <u>vice</u> in the above-captioned bankruptcy case of the Debtors pending in the United States Bankruptcy Court for the District of Delaware.

3.    I am familiar with the work performed on behalf of the Debtors by the lawyers in the firm.

4.    I have reviewed the foregoing Final Application, and the facts set forth therein are true and correct to the best of my knowledge, information, and belief.  Moreover, I have reviewed Del. Bankr. L.R. 2016-2, and submit that the Final Application substantially complies with such rule.

Respectfully Submitted,

  _/s/ Gregory M. Petrick_____
GREGORY M. PETRICK

SWORN TO AND SUBSCRIBED before me this 31st day of January.

  _/s/ Jill M. Kaylor_____
Jill M. Kaylor
Notary Public, State of New York
No. 01KA5040839
Qualified in Queens County
My Commission Expires March 20, 2011