IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       :   Chapter 11
                                                             :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                       :   Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[1]                           :   (Jointly Administered)
                                                             :
                                                             :   Response Deadline: March 2, 2011 at 4:00 p.m. (EST)
                    Debtors.                                 :   Hearing Date: March 9, 2011 at 3:00 p.m. (EST)
                                                             :
------------------------------------------------------------ x
                                                                 Ref. Docket Nos. 9592 and 9646

## OBJECTION TO SUBORDINATION STATEMENTS

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan")[2] in connection with the chapter 11 cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), hereby files this objection (the "Objection") to the purported Subordination Statements described herein below, and in support thereof respectfully represents and states as follows:

## GENERAL BACKGROUND

1. On August 6, 2007, each of the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief under chapter 11 of title 11, United States Code (as amended, the "Bankruptcy Code"). Each Debtor operated its business and managed its properties as a debtor-in-possession pursuant to sections 1107(a) and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303) ("AHM Holdings"); American Home Mortgage Investment Corp., a Maryland corporation (3914) ("AHM Investment"); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558) ("AHM Corp."); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

2. The Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 and became effective on November 30, 2010.

3. Prior to the Petition Date, certain Debtors entered into a series of indentures (collectively, the "Subordinated Trust Preferred Indentures")[3] which expressly provided that the payment of the principal of and any premium and interest on the securities issued under each Subordinated Trust Preferred Indenture was subordinate to and subject in right of payment to the prior payment in full of all "Senior Debt" and/or "Senior Indebtedness" as defined therein. *See* Baylis Trust I-VIII, ¶ 12.1; AHM Capital Trust I, ¶ 15.02.

4. In this context, "Debt" and "Indebtedness" is defined as

---

[3] The Indentures are: (i) *Junior Subordinated Indenture between American Home Mortgage Investment Corp. and JPMorgan Chase Bank, National Association, as Trustee, Dated as of May 13, 2005* ("Baylis Trust I"); (ii) *Junior Subordinated Indenture between American Home Mortgage Holdings, Inc. and JPMorgan Chase Bank, National Association, as Trustee, Dated as of July 27, 2005* ("Baylis Trust II"); (iii) *Junior Subordinated Indenture between American Home Mortgage Holdings, Inc., as Issuer, American Home Mortgage Investment Corp., as Guarantor, and Wilmington Trust Company, as Trustee, Dated as of November 14, 2005* ("Baylis Trust III"); (iv) *Junior Subordinated Indenture between American Home Mortgage Holdings, Inc. and JPMorgan Chase Bank, National Association, as Trustee, Dated as of November 30, 2005* ("Baylis Trust IV"); (v) *Junior Subordinated Indenture between American Home Mortgage Holdings, Inc. and JPMorgan Chase Bank, National Association, as Trustee, Dated as of April 27, 2006* ("Baylis Trust V"); (vi) *Junior Subordinated Indenture between American Home Mortgage Holdings, Inc., as Issuer, American Home Mortgage Investment Corp., as Guarantor, and Wilmington Trust Company, as Trustee, Dated as of August 18, 2006* ("Baylis Trust VI"); (vii) *Junior Subordinated Indenture between American Home Mortgage Holdings, Inc., as Issuer, American Home Mortgage Investment Corp., as Guarantor, and Wilmington Trust Company, as Trustee, Dated as of November 10, 2006* ("Baylis Trust VII"); (viii) *Junior Subordinated Indenture between American Home Mortgage Holdings, Inc. and Wells Fargo Bank, N.A., as Trustee, Dated as of December 1, 2006* ("Baylis Trust VIII"); and (ix) *Indenture between American Home Mortgage Investment Corp. and Wilmington Trust Company, as Debenture Trustee, Dated as of July 28, 2007* ("AHM Capital Trust I"). True and accurate copies of the Subordinated Trust Preferred Indentures were filed with the Court at Docket No. 6868.

with respect to any Person, whether recourse is to all or a portion of the assets of such Person, whether currently existing or hereafter incurred and whether or not contingent and without duplication, (i) every obligation of such Person for money borrowed; (ii) every obligation of such Person evidenced by bonds, debentures, notes or other similar instruments, including obligations incurred in connection with the acquisition of property, assets or businesses; (iii) every reimbursement obligation of such Person with respect to letters of credit, bankers' acceptances or similar facilities issued for the account of such Person; (iv) every obligation of such Person issued or assumed as the deferred purchase price of property or services (but excluding trade accounts payable or other accrued liabilities arising in the ordinary course of business); (v) every capital lease obligation of such Person; (vi) all indebtedness of such Person, whether incurred on or prior to the date of this Indenture or thereafter incurred, for claims in respect of derivative products, including interest rate, foreign exchange rate and commodity forward contracts, options and swaps and similar arrangements; (vii) every obligation of the type referred to in clauses (i) through (vi) of another Person and all dividends of another Person the payment of which, in either case, such Person has guaranteed or is responsible or liable for, directly or indirectly, as obligor or otherwise; and (viii) any renewals, extensions, refunding, amendments or modifications of any obligation of the type referred to in clauses (i) through (vii).

Baylis Trust I-VIII, ¶1.1 ("Debt"); AHM Capital Trust I, ¶1.01 ("Indebtedness"). "Senior Debt" and "Senior Indebtedness" refer to the principal of and any premium and interest on all such Debt and/or Indebtedness.[4] *See* Baylis Trust I-VIII, ¶1.1 ("Senior Debt"); AHM Capital Trust I, ¶1.01 ("Senior Indebtedness").

---

[4] Such debt does not constitute Senior Debt or Senior Indebtedness if it is provided in the instrument creating or evidencing the same or pursuant to which the same is outstanding, that such obligations are not superior in right of payment to the securities issued under the Subordinated Trust Preferred Indenture. See Baylis Trust I-VIII, ¶1.1 ("Senior Debt"); AHM Capital Trust I, ¶1.01 ("Senior Indebtedness"). Further, Senior Debt and Senior Indebtedness shall not be deemed to include any other debt securities issued to any trust other than the trust created by the Subordinated Trust Preferred Indenture (or a trustee of any such trust), partnership or other entity affiliated with the affected Debtor that is a financing vehicle of the affected Debtor (a "financing entity") in connection with the issuance by such financing entity of equity securities or other securities pursuant to an instrument that ranks *pari passu* with or junior in right of payment to the Subordinated Trust Preferred Indenture. *Id.*

## THE SUBORDINATION STATEMENTS

5.  In accordance with the Plan, the *Notice of (I) Occurrence of the Effective Date of the Plan; (II) Deadlines to File Administrative Claims, Professional Claims, Rejection Damage Claims, and Subordination Statements, and to Submit Invoices for Indenture Trustee Expenses; and (III) Appointment of Borrower Information Ombudsperson* (the "Effective Date Notice"), set January 5, 2011 as the bar date for any holder of a Class 1(C)(1) or 2(C)(1) Claim asserting that it holds a Senior Unsecured Claim to file and serve upon the Plan Trustee and the applicable Indenture Trustee(s) for Subordinated Trust Preferred Claims against the applicable estate(s) a Subordination Statement.

6.  The Plan defines Class 1(C)(1) Claims as "Unsecured Claims against AHM Holdings other than the BofA Syndicate Unsecured Claim, Subordinated Trust Preferred Claims, and Borrower Claims" and Class 2(C)(1) Claims as "Unsecured Claims against AHM Investment other than the BofA Syndicate Unsecured Claim, Subordinated Trust Preferred Claims, and Borrower Claims." Plan, at 18.

7.  The following claimants filed and/or served the Plan Trustee with purported Subordination Statements as set forth below:[5]

   a. Docket No. 9592: Mr. Daniel C. Seland ("Seland"), holder of claim no. 5652 asserted against AHM Investment in the amount of $25,275.98 arising from the purchase of preferred stock (the "Seland Claim"), which claim is classified as a Class 2(D) Claim (Subordinated Claims against AHM Investment). Mr. Seland, however, has not asserted any right to obtain the benefits of subordination set forth in an applicable Subordinated Trust Preferred Indenture (the "Seland Subordination Statement");

   b. Docket No. 9646: Mr. Gil Q. Alvarez ("Alvarez"), holder of claim no. 10384 against AHM Corp. in the amount of $47,618.50, asserting damages arising from purported TILA and RESPA violations (the "Alvarez Claim"), which claim is classified as a Class 5(C)(3) Claim (Borrower Claims against AHM Corp.). Mr.

---

[5] By this Objection, the Plan Trustee makes no admission or representation with respect to the validity of the underlying claims asserted in the Subordination Statements and reserves all rights with respect thereto.

Alvarez, however, has not asserted any right to obtain the benefits of subordination set forth in an applicable Subordinated Trust Preferred Indenture. Instead, Mr. Alvarez seeks to have certain claims subordinated to the Alvarez Claim on other grounds (the "Alvarez Subordination Statement"); and

c. (Non-docketed): Ms. JoAnn Knorr ("Knorr"), holder of claim nos.: (i) 8040 in the amount of $3,066.75, and (ii) 8041 in the amount of $16,147.06, both filed against AHM Corp. and asserting damages arising from losses on purchase of stock (the "Knorr Claim"), which Claim is classified as a Class 5(D) Claim (Subordinated Claim against AHM Corp.). Ms. Knorr, however, has not asserted any right to obtain the benefits of subordination set forth in an applicable Subordinated Trust Preferred Indenture(s) (the "Knorr Subordination Statement", annexed hereto as Exhibit A).

8. Article 4(I)(3) of the Plan requires that objections to any Subordination Statement be filed and served no later than thirty (30) days after filing and service of such Subordination Statement or such Putative Senior Unsecured Claim asserted in the Subordination Statement will be deemed to constitute a Senior Unsecured Claim to the extent that such Claim is ultimately allowed against the applicable Estate.

9. In compliance therewith, the Plan Trustee files this Objection.

## OBJECTION

### A. THE SELAND, KNORR AND ALVAREZ SUBORDINATION STATEMENTS DO NOT ASSERT SENIOR UNSECURED CLAIMS ENTITLED TO THE BENEFIT OF SUBORDINATION

10. The Plan Trustee objects to the Seland, Knorr and Alvarez Subordination Statements insofar as each claimant fails to assert a Senior Unsecured Claim that is entitled to the benefit of subordination under a Subordinated Trust Preferred Indenture.

11. Seland and Knorr assert claims against the Trust based on damages arising from losses associated with the their respective purchase of the Debtors' stock. *See* Seland and Knorr Claim. Alvarez, on the other hand, asserts a claim against the Trust arising from purported TILA and RESPA violations. *See* Alvarez Claim. As such, the Seland, Knorr and Alvarez Claims do

not assert claims for Senior Debt and/or Senior Indebtedness and are therefore <u>not</u> entitled to the benefit of subordination set forth in any Subordinated Trust Preferred Indentures.

12. Similarly, to the extent that Seland, Knorr and/or Alvarez seek subordination on some other basis, the Seland, Knorr and Alvarez Subordination Statements are procedurally deficient.[6] A proceeding to subordinate a claim or interest is properly brought as an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7001(8); *see also, Protarga, Inc. v. Webb (In re Protarga, Inc.)*, No. 03-12564 (PJW), 2004 Bankr. LEXIS 1255, at *11 (Bankr. D. Del. Aug. 25, 2004) ("Claims for equitable subordination must be brought as a separate adversary proceeding....").

## NOTICE

13. Notice of this Objection will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to the Plan Oversight Committee; (iii) parties that files the Subordination Statements subject to this Objection; (iv) the Indenture Trustees for the Subordinated Trust Preferred Claims; and (v) all parties entitled to notice under Del. Bankr. L.R. 2002-1(b). In light of the nature of the relief requested herein, the Plan Trustee submits that no other or further notice is required.

*Remainder of Page Left Blank By Intention*

---

[6] Alvarez seeks to subordinate the claims of several persons, entities and Debtors to the Alvarez Claim. *See* Alvarez Subordination Statement, ¶¶15-30.

## CONCLUSION

WHEREFORE, the Plan Trustee respectfully request that this Court enter an order (i) denying any request for subordination set forth in the Seland, Knorr and/or Alvarez Subordination Statements; and (ii) granting any further relief that the Court deems just and proper.

Dated: Wilmington, Delaware
January 31, 2011

                                 YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                 */s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Jeffrey Zawadzki
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Plan Trustee*

**EXHIBIT A**

To: American Home Mortgage Claims Processing
    PO Box 5076
    FDR Station
    New York, NY 10150-5076

January 2, 2011

Copy To: Counsel for the Plan Trustee
    HAHN & HESSEN LLP
    Mark S. Indelicato
    Edward L. Schnitzer
    488 Madison Avenue
    New York, NY 10022

    The Plan Trustee
    Steven D Sass
    AHM Liquidating Trust
    PO Box 10550
    Melville, NY 11747

From: JoAnn Knorr
    4112 Converse Drive
    Raleigh NC 27609
    Phone: 919-607-4869

Re: Subordination Statements and Further claims administration, professional and damages for Claim number 8040 and 8041

I am a share holder trying to recover claims in the AHM class action. I am in class J which may not be significant to you but is very significant to me. I have to accounts one with Fidelity and one with bank of America. The secured amounts are $1974.75 and $8,147.06. I object to all decision not to repay me and fellow investors. I want all of my money back and the standard 8% interest on monies owed.

I am having economic hardships and in danger of losing more than I already have lost. This money would and could help. I paid it and they sole it. Plain and simple, the money is mine. They fraudulently took it and I want it back. I researched them and they falsified their information.

Also, the timing of this last notice was unlawful. Sent out and given less than 30 days to respond. Really, less than a week and over the holidays. No one could get back to me and receptionists have been rude and evasive.

Thank you and will look forward to my check,

JoAnn Knorr