IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x  Chapter 11
In re:                                                       :
                                                             :  Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                       :
HOLDINGS, INC., a Delaware corporation, et al.,[1]           :  Jointly Administered
                                                             :  Ref. D.I. 9632
    Debtors.                                                 :
                                                             :
------------------------------------------------------------ x

## PLAN TRUST'S OBJECTION TO MOTION OF LAURA BEALL FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors and debtors-in-possession (the "Debtors"),[2] objects (the "Objection") to the *Motion of Laura Beall for Allowance and Payment of Administrative Expense Claim* [D.I. 9632] (the "Motion") filed on January 5, 2011. In support of this Objection, the Plan Trustee states as follows:

### PRELIMINARY STATEMENT

1.  By the Motion, Ms. Beall seeks an administrative claim in connection with her personal time and expense incurred in alleged post-petition attempts to ascertain certain information regarding her loan, notably the identity of the master servicer and owner of her loan. As early as October 2007 (i.e., within two (2) months following the Petition Date), Ms. Beall, in

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

YCST01:10599460.3                                                              066585.1001

connection with her Rule 2004 request, represented to this Court that she had already received this very information. This Court, in turn, found that Ms. Beall had received all the information to which she was entitled. In a subsequent pleading with this Court, Ms. Beall also admitted to receiving her loan file on October 31, 2007.

2.  Despite her own admissions and this Court's findings, Ms. Beall inexplicably continued to deny knowledge of the master servicer or owner of her loan and to request such information. As a result, the Debtors have provided such information on multiple occasions. Now, after Ms. Beall's underlying litigation (which she obtained stay relief to pursue) has been dismissed with prejudice, Ms. Beall continues to seek recoveries from the Debtors' estates by requesting payment of arbitrary fees in connection with attempts to obtain information which she already had.

3.  The Motion should be denied because (i) Ms. Beall is not entitled to any payment for time expended for her own benefit, and (ii) even if Ms. Beall was entitled to such payment, Ms. Beall has failed to (a) provide any supporting documentation or time detail regarding such amounts, or (b) show that the fees are reasonable, particularly given Ms. Beall's inconsistent representations, and this Court's previous rulings that she received all of the information to which she was entitled.

## BACKGROUND

A.  **General Background**

4.  On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

5. The Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042]. The Plan became effective on November 30, 2010 (the "Effective Date").

6. Pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

B. **Ms. Beall's Requests for Information and Court Determination that Ms. Beall Had Received All Information to Which She Was Entitled**

7. In response to the Debtors' bankruptcy filing, on or about October 4, 2007, certain borrowers, including Ms. Beall, filed individual *pro se Motions for Disclosure Under 11 U.S.C. § 363, § 1105, and Bankruptcy Rule 2004, Directing Examination of, and Production of Documents By Debtors; Limited Objection to Asset Purchase Agreement; Complaint for Injunction Against the Sale of Mortgage Notes Free and Clear of Liens or Liabilities; and Request for Appointment of Consumer Privacy Ombudsman Pursuant to 11 U.S.C. § 332 and Trustee or Examiner Pursuant to 11 U.S.C. § 1104* [Docket Nos. 1489, 1490, and 1491] (collectively, the "2004 Exam/Trustee Motions"). By her 2004 Exam/Trustee Motion, Ms. Beall sought: (i) an examination of, and production of documents by, the Debtors pursuant to Bankruptcy Rule 2004; (ii) the appointment of a trustee or examiner pursuant to section 1104 of the Bankruptcy Code; (iii) the appointment of a consumer privacy ombudsman pursuant to section 363 of the Bankruptcy Code; and (iv) certain injunctive relief. The Debtors timely responded to the 2004 Exam/Trustee Motions [D.I. 1656].

8. A hearing on the 2004 Exam/Trustee Motions was held on October 31, 2007 (the "Rule 2004 Hearing"), wherein Ms. Rush and Ms. Beall presented arguments to this

Court and cross-examined the Debtors' witness. See Hr'g Tr. [D.I. 1997], pp. 11-78. Copies of the relevant pages of the transcript are attached hereto as Exhibit A.

9. During the Rule 2004 Hearing, Ms. Beall indicated that she had already obtained the name of the master servicer and the owner of her loan:

> Scott Ellerb[ee] finally told me last week that Wells Fargo is the master servicer of my loan, which we also deducted based on what Mr. [James] Patton so kindly handed out in the Bankruptcy Court regarding all the loan pools and which it was originated, yahda, yahda, I'm in [American Home Mortgage Investment Trust] 2004-2…

Hr'g Tr. [D.I. 1997], pp 48:20-24.

10. Moreover, she indicated that her search for relevant information was not for her own benefit, but rather for the benefit of Wells Fargo in its capacity as a junior mortgage holder:

> No problem, I can afford a bigger better house and save two grand a month, but I don't want to do that to Wells Fargo[3], it's not right. Because they're going to take a hit.
>
> ***
>
> Could I just request something in writing from American Home stating that it is in fact up to the master servicer so I can provide that to Wells Fargo? If that's what they're claiming. I'd really appreciate it. That's the only reason I wanted to know who my noteholder was, and again, I can't stress, it doesn't matter to me any more. I mean, I'm doing a short sale. I'm going to make out like a bandit, unfortunately, and Wells Fargo is going to take – they're going to lose a lot of money.

Hr'g Tr. [D.I. 1997], p. 49:17-20, p. 58:1-10.

11. Upon consideration of the pleadings and evidence presented at the Rule 2004 Hearing, the Court denied the 2004 Exam/Trustee Motions [D.I. 1779]. Specifically, this Court determined that the Debtors had already provided Ms. Beall with all required information:

> In connection with Ms. [] Beall and Ms. Dobben, where they don't have pending lawsuits, again I think that the debtor has already provided all the information that I would require them to provide in the event that I were to grant the [2004 Motion]. So, I think, …, frankly, it's simply moot to the extent she's seeking additional information such as, you know, who the master servicer is or, you know, what policies of third parties are, who the actual owner of the loan is, I'm not at all convinced that she's entitled to

---

[3] Upon information and belief, Wells Fargo acts in the capacity as master servicer of Ms. Beall's first lien loan as well as owner of her second lien loan.

that. Her issues are with the servicer. The servicer is the debtor. Lawyers have certified to the Court that the loan is no longer owned by a debtor entity. I think that's sufficient under Rule 2004 and ends the inquiry. And as a result, I'm going to deny the motion.

\*\*\*

I'm not going to require the debtors to make a statement to that effect. I think you've got the information that you're entitled to, and I'm not going to require them to make some sort of affirmative representation to you.

\*\*\*

I am not in any way unsympathetic or belittling [Ms. Beall's] position, however, there's only so much that you're entitled to in a commercial real estate or residential real estate transaction. You're a party to a contract. It is heavily regulated. You're entitled to what you're entitled to. I'm not going to expand those rights, and I think it would be harmful to thousands if not tens of thousands of creditors, to the other 200,000 loans service personnel to continue to distract this debtor by requiring it to do anything other than it's required to do under the law. I'm not going to expand under the Bankruptcy Code their responsibilities to provide you with additional information. I think it would be harmful to the greater good of the bankruptcy case.

Hr'g Tr. [D.I. 1997], pp 57:6-20, 59:3-7; 59-60.

**B.     The Beall Claim, Stay Relief and Dismissal, With Prejudice, of Underlying Action**

12.    On January 29, 2008, Ms. Beall filed claim numbered 9845 (the "Beall Claim") against the Debtors, a copy of which is attached hereto as Exhibit B. In support of the Beall Claim, Ms. Beall submitted a document entitled Complaint in Support of Proof of Claim (the "Supporting Documentation"). Pursuant to the Supporting Documentation, Ms. Beall enumerated approximately twenty (20) causes of action by which she contends the Debtors are collectively liable. All of the causes of action arise out of a single loan transaction with Ms. Beall which closed on or about May 20, 2004 (over three years prior to the Debtors' bankruptcy filing).

13.    Despite already admitting to this Court that she knew the master servicer and owner of her loan, in and by her claim, Ms. Beall represented that the Debtors refused to provide her with such information (Beall Claim, ¶¶ 12, 28) and that her servicer and owner remained "unknown" (Beall Claim, ¶ 45).

5

14. On or about April 8, 2008, Ms. Beall filed her *Emergency Motion of Laura Beall for an Order for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code* [D.I. 3585] (the "Stay Motion"). Pursuant to the Stay Motion, Ms. Beall requested relief from the automatic stay to permit her to file a complaint in the United States District Court for the Eastern District of Virginia, Richmond Division, against American Home Mortgage Corp. Specifically, Ms. Beall sought permission to file a complaint alleging violations of Ms. Beall's rights under (1) the Consumer Protection Act, 15 U.S.C. § 1601, et seq.; (2) the Truth in Lending Act – Regulation Z of the Federal Reserve Board, 12 C.F.R. Part 226; and (3) the Real Estate Settlements Procedures Act, 12 U.S.C. § 2601 et seq., RICO violations, unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, civil conspiracy, and violation of the Fair Debt Collections Act. (Stay Motion, ¶ 1.)

15. In her Stay Motion, Ms. Beall stated that (i) Wells Fargo is the indenture trustee and/or master servicer for American Home Mortgage Investment Trust 2004-2 (Stay Motion, ¶ 4); (ii) by letter dated March 11, 2008, the Debtors had again advised Ms. Beall that the owner of her loan was the American Home Mortgage Investment Trust 2004-2 (Stay Motion, ¶ 6); and (iii) she received her loan file as early as October 31, 2007 (Stay Motion, ¶ 8).

16. On or about April 22, 2008, the Debtors filed their *Limited Objection to Emergency Motion of Laura Beall for an Order for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code* [D.I. 3796] (the "Debtors' Stay Objection"). Pursuant to the Debtors' Stay Objection, the Debtors objected to Ms. Beall's Stay Motion on the basis that the Stay Motion failed to provide adequate information regarding the details of the planned lawsuit and requested that a draft complaint be provided prior to stay relief being granted. The Official Committee of Unsecured Creditors joined in the Debtors' Stay Objection [D.I. 3800] and, in addition, argued that Ms. Beall failed to articulate why stay relief is granted rather than resolving such claim as part of the claims resolution process.

17.     On April 24, 2008, the Court held a hearing (the "Stay Hearing") to consider the Stay Motion. At the Stay Hearing, the Court determined to grant the relief requested in the Stay Motion on the basis that Ms. Beall should have the opportunity to choose her forum to address the merits of her claim:

> I would add that, you know, were we in a full litigation in connection with this proof of claim and the Court was faced with deciding the issue I don't know what I would do in connection with abstaining from deciding it and allowing the judges in Virginia to deal with it, but I would be very open to that kind of approach. And I think the reality is somebody's going to have to decide this claim at some point in the future. We've waited long enough. Ms. Beall has a right, as the plaintiff, to choose her forum. She's chosen the forum and the method of proceeding. I don't think the Debtors would be substantially prejudiced in any way in defending the case in Virginia as opposed to here.

4/28/08 Hr'g Tr. [D.I. 4100], pp. 16-18. A copy of the transcript are attached hereto as Exhibit C.

18.     On April 24, 2008, the Court entered an *Order Granting Emergency Motion for Relief from the Automatic Stay* [D.I. 3844] (the "Stay Relief Order") whereby the Court modified the automatic stay to permit Ms. Beall to initiate her claims against the Debtor (as defined in the Motion); and to satisfy any judgment awarded or settlement reached from the Debtors' insurance.

19.     Following entry of the Stay Relief Order, Ms. Beall retained the J.E. Bowman Law Firm and, on July 30, 2008, commenced her action against the Debtors in the Eastern District of Virginia, Richmond Division, case number 3:08-cv-482-RLW[4] (the "Virginia Action").

20.     On October 8, 2008, the Debtors' counsel in the underlying litigation filed their *Motion to Dismiss Plaintiff's Complaint* and related *Memorandum of Law In Support of their Motion to Dismiss Plaintiff's Complaint* (the "Memo in Support of Motion to Dismiss").

---

[4]     Following a transfer of venue to the Alexandria Division, the Virginia District Court Action was docketed as 08-cv-1307.

21.  On or about December 17, 2008, Ms. Beall, through her counsel, filed an amended complaint (the "Amended Complaint"). By the Amended Complaint, Ms. Beall voluntarily removed several causes of action from the Virginia Action, including violations of the Real Estate Settlement Procedures Act (RESPA), violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and violations of the Truth in Lending Act (TILA). The causes of action remaining against the Debtors in the Amended Complaint were based on (i) fraudulent concealment; (ii) breach of fiduciary duty; (iii) Equal Credit Opportunity Act (ECOA); and (iv) negligence.

22.  On February 6, 2009, the Virginia District Court held a hearing regarding the Memo in Support of Motion to Dismiss and subsequently dismissed, with prejudice, all counts of the Amended Complaint against the Debtors.

C. **Objection to the Beall Claim and Related Settlement**

23.  On September 11, 2009, following the rejection of a settlement offer by the Debtors, the Debtors filed a claim objection [D.I. 8049] (the "Claim Objection") with respect to, among others, the Beall Claim. As noted in the Claim Objection, Ms. Beall was provided a full opportunity to litigate her claims in the Virginia Action.

24.  On October 5, 2009, Ms. Beall, through counsel different than counsel representing her during the Virginia Action, filed her *Response to Debtors' Objection to Claim* [D.I. 8137] (the "Response"). By the Response, Ms. Beall essentially argues that the Supporting Documentation should trump all subsequent actions by Ms. Beall following the entry of the Stay Relief Order and that the Beall Claim should be permitted to advance to final disposition.

25.  The Debtors filed their Reply [D.I. 8148] to the Ms. Beall's Response on October 7, 2009.

26. By consent order dated October 15, 2009 [D. I. 8186], the Beall Claim was characterized as non-priority and unsecured, but left open the issue of validity and amount for consideration by this Court.

27. Ms. Beall filed her sur-reply on February 26, 2010 [D.I. 8629].

28. Oral argument on the Claim Objection was scheduled for March 9, 2010.

29. Immediately prior to the hearing, the parties agreed to a settlement of the Beall Claim, which included a voluntary withdrawal of the Beall Claim, with prejudice, and a waiver and release of any and all other claims, demands, rights or causes of action that have been or could be asserted by Ms. Beall. As a result of the settlement, the parties advised the Court that oral argument was unnecessary and that a consent order would be filed shortly.

30. The Debtors engaged in good faith negotiations to finalize the consent order; however, despite ultimately agreeing to the revised language of the consent order by Ms. Beall, Ms. Beall has refused to authorize the submission of the consent order to the Court.

C. **The Motion**

31. On January 5, 2011, Ms. Beall filed the instant Motion. By the Motion, Ms. Beall seeks allowance and payment of an administrative expense claim in an undetermined amount in excess of $15,000 related to post-petition, personal time spent seeking to obtain certain information from the Debtors regarding her loan file.

**OBJECTION**

32. Section 503 of the Bankruptcy Code accords administrative expense priority to claims representing "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To be considered an actual, necessary cost and expense of preserving the estate, a claim "must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-

9

possession in the operation of the business." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (internal citation omitted).

33. In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed. In re Bernard Techs., Inc., 342 B.R. 174, 177 (Bankr. D. Del. 2006) (Walrath, J.). Accordingly, the movant under section 503(b)(1)(A) carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Id. (quoting Calpine, 181 F.3d at 533); see In re Unidigital, Inc., 262 B.R. 283, ("Claimants who seek payment ahead of other unsecured claims bear the burden of establishing that their claim qualifies for priority status."). Movant must prove its entitlement to an administrative expense claim against the Debtors by a preponderance of the evidence. Bernard Techs., 342 B.R. at 177.

34. Here, Ms. Beall does not appear to even allege that her actions provided any benefit to the estate.[5] Even if such actions would have provided some benefit to the estate – which it did not – Ms. Beall's actions were primarily for her own benefit (or purportedly for the benefit of her junior lienholder by whom she was not retained), not for the benefit of the Debtors' estates. As a result, Ms. Beall is not entitled to compensation. See, e.g., In re Summit Metals, Inc., 379 B.R. 40 (Bankr. D. Del. 2007) (parties who act "*primarily* to serve their own interests and . . . [who would have acted] absent an expectation of reimbursement from the estate" cannot be compensated under section 503(b)(3)(D)) (emphasis in original), citing Lebron v. Mechem Fin. Inc., 27 F.3d 937, 944 (3d Cir. 1994); see also In re Gimelson, 2004 U.S. Dist. LEXIS 23879, 72-73 (E.D. Pa. Nov. 23, 2004) (no authority could be found for the premise that

---

[5] By the Motion, Ms. Beall sole assertion is that "Debtors could easily have avoided the claim had they provided information when requested." (Motion, at ¶19.). However, Ms. Beall fails to acknowledge that the Debtors did, in fact, provide her with the information that was required, as was found by this Court in connection with the Rule 2004 Motion.

section 503(b) provides a basis to compensate a creditor[6] for his own personal time devoted to a matter).

35.  Not only does Ms. Beall have no basis for an administrative expense claim, Ms. Beall fails to provide any actual support for her claim. Specifically, she fails to (a) provide any supporting documentation or time detail regarding such amounts, (b) evidence that such time was reasonable, or (c) evidence to support a charge of $100 per hour for her purported work. Without such information, her claim should not be considered.

---

[6]  The Plan Trustee denies that Ms. Beall is a creditor of the estate pending final decision regarding the validity of the Beall Claim and reserves all his rights regarding the same.

## CONCLUSION

For the foregoing reasons, the Plan Trustee requests that this Court deny the Motion in its entirety.

Dated: February 3, 2011
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*