**<u>Exhibit C</u>**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                                . Chapter 11
                                      .
AMERICAN HOME MORTGAGE                . Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware            . (Jointly Administered)
corporation, et al.,                  .
                                      . April 24, 2008
                                      . 10:00 a.m.
       Debtors.                       . (Wilmington)
                                      .

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1   THE CLERK: All rise.

2   THE COURT: Please be seated. Good morning.

3   MR. LUNN: Good morning, Your Honor. Matthew Lunn
4   from Young Conaway on behalf of the Debtors. There's one
5   agenda item, it's the motion for relief from stay filed by
6   Ms. Beall.

7   THE COURT: All right.

8   MR. LUNN: And I will cede the podium to Ms. Beall.

9   THE COURT: Thank you. Ms. Beall.

10  MS. BEALL: Good morning, Your Honor.

11  THE COURT: Good morning.

12  MS. BEALL: The first thing I want to go over, of
13  course, are the three reasons that I should be, three reasons
14  that I should, I'm asking for relief from stay. The
15  prejudice that would be suffered by the Debtors should the
16  stay be lifted, the balance of the hardships facing the
17  parties if the stay is lifted, and the probable cause on the
18  merits if the stay is lifted. I feel that based on the
19  information that I provided to the Court with my request
20  pretty much outlines that I do have merits. And I, I know
21  they're requesting a copy of my lawsuit. It's 95% complete.
22  I stayed up until three in the morning last night trying to
23  finish it, but I didn't feel that it was, you know, concise
24  enough and clear enough. I didn't want it to be wordy, yadda
25  yadda, and you know, cleaning up the spacing. So I am more

1    than happy to provide that to the Debtors' law firm, and also
2    the Creditors Committee on Monday if they so desire.  If that
3    is something that you feel is necessary - -
4            THE COURT: Um-hum.
5            MS. BEALL: - - before making a decision.
6            THE COURT: All right.
7            MS. BEALL: The one thing that I feel is the
8    Debtors, as far as hardships to the Debtors, the Bankruptcy
9    Court is for the honest and unfortunate debtor.  And a debtor
10   cannot hide behind the bankruptcy to do things that are, I
11   don't want to say I'm alleging illegal and abusive and not
12   comply with RESPA, TILA, honor a borrower's rights.  I've had
13   situations where, which is in my filing, they escrowed taxes
14   at my settlement.  They never paid them.
15           THE COURT: Um-hum.
16           MS. BEALL: I had to pay them a year later.  That
17   was, yeah, it was a year later.  And I was, I actually got
18   two late fees, because when they started paying them, they
19   were six months behind, having not paid the first
20   installment.  I was assessed $800 in late fees.  They billed
21   me for it.  They still won't return it.  The other thing that
22   I'm concerned about is my file went to a foreclosure attorney
23   back in December, before I reinstated my loan at that time.
24   Well they told me over the phone that I would be charged $16
25   hundred, automatic, if it went to this person, before I could

1  reinstate.  It's Samuel White.  I'm sure you've seen some of
2  his information on the filings.  When I called, I had an
3  attorney call for my payoff, and they had added the 16
4  hundred.  And I had to go through this whole rigmarole, you
5  know, sending him the Fair Debt Collection Acts, yadda yadda,
6  and asking for a breakdown of what actually I was being
7  charged for.  Well after three weeks, the bill came down to
8  $650.  They would have taken it.  What could I have done?  So
9  my only point is not only, I'm, I am going after, I'm hoping
10 for relief from stay only because American Home Mortgage is
11 an indispensable party in a lawsuit that I would like to
12 file.  As far as the other, I know in their objection they
13 said I'm pulling different, whoever I can pull out of the air
14 that has to do with my loan, adding to my lawsuit.  Well the
15 bottom line is it's none of their business.  It's only about
16 American Home Mortgage.  And the thing that I've discovered,
17 through a year of researching, is that there's a chance that
18 my loan is actually an American Home Mortgage Securities,
19 LLC, which is a separate entity, outside the bankruptcy.  And
20 that could possibly be a shell corporation that's owned by
21 the executives of American Home.  And I may not even have to
22 enjoin them in my lawsuit, or be able to take them off,
23 whatever, until I have an opportunity for discovery - -
24           THE COURT:  Um-hum.
25           MS. BEALL:  - - and for interrogatories because I

1   can't get anywhere with them.  I have statements from them
2   that Wells Fargo is the master servicer.
3           THE COURT: Um-hum.
4           MS. BEALL: I have two letters from Wells Fargo that
5   says they're not the master servicer.  Back in September, I
6   got another one in December.  And I finally got a letter, I
7   know that, you know, that Debtors' attorneys said that
8   they've been cooperating with me, that I've been in touch
9   with the Trustee, that I've been in touch with, well, Kenneth
10  Enos at their law firm.  It's more cordial.  I sent him my
11  relief from stay request early, and you know, as a courtesy.
12  That kind of thing.  And he was also trying to find out who
13  the trustee, the Indentured Trustee was for my loan pool when
14  I, you know, challenged him on them stating they didn't have
15  to comply to 1641(f)(2).  And so he was willing to call
16  Callus (phonetic) in American Home to get that information
17  for me.  Pretty much.  So the bottom line is I, I really, the
18  origination issues that I brought up in my relief from stay
19  are very serious.  I had very, very good, very good
20  qualifications to get this loan.  I had a 75% percent loan to
21  value, good credit score, 27 years at the same job, not one
22  30 day late, whatsoever, on my credit report, and I went in
23  and applied for a completely different loan.  And six weeks
24  later I was told that this was the only loan that I could
25  get.  That I didn't qualify for anything else.

1        THE COURT: Um-hum.

2        MS. BEALL: And that it was what's called a
3   traditional three one. Which it was not. And I was shown
4   the LIBOR, 1.3, at settlement. I don't know what a LIBOR is.
5   I have two friends that are millionaires, including my
6   stepfather, invested in the stock market, they don't know
7   what a LIBOR is. Because I asked him. I thought, maybe I
8   should have known. But the arms that I always dealt with
9   were. . .(microphone not recording) district cost of funds, T
10  bills, and treasury securities, so that was a new one on me.

11       THE COURT: Um-hum.

12       MS. BEALL: But they, they told me it was a good
13  index. It had become the preferable index of the mortgage
14  lenders because it was so low. That's the one thing. The,
15  and the reason being that this happened was because of the
16  YSP. I called, actually, the mortgage, the mortgage broker
17  - -

18       THE COURT: What's the YSP?

19       MS. BEALL: That's the Yield Spread Premium.

20       THE COURT: All right.

21       MS. BEALL: Basically what they do is they, they
22  give broker sheets. And I have one if you want to see it.
23  They give broker sheets, American Home, which American
24  Brokers Conduit at the time, in their incentive sheets. And
25  what it is, it outlines how much you can get paid based on

1  the loan that you put a borrower into.

2  THE COURT: Um-hum.

3  MS. BEALL: And they get extra money for adding pre-
4  payment penalties, for example. In my case, they charged me
5  the two points. One was a loan origination for their
6  services, the other was a discount point, which was supposed
7  to buy the par down. The actual par was 5¼.

8  THE COURT: Um-hum.

9  MS. BEALL: It should have been brought down to 5.
10 One point normally buys a rate down a quarter of a percent.
11 In general. Instead they raised it to 5.625 in order to make
12 up the yield to pay the broker the yield spread premium,
13 which was around $65 hundred in my case.

14 THE COURT: Um-hum.

15 MS. BEALL: In addition, the discount point they
16 just pocketed. But that's what they do. They, it's just
17 back end broker sheet. And we're not, it's, the public isn't
18 generally privy to it.

19 THE COURT: Um-hum.

20 MS. BEALL: But what you do when you go in to apply
21 for a loan, which is what I did, you get, they have you sign
22 what's called a broker's origination. You know, just a form
23 that describes what their services are. And it point blank
24 says in that document that a borrower has two choices. They
25 can either have the mortgage company pay them directly for

1  their services, or the borrower can pay directly. If the
2  borrower chooses to have the mortgage company pay, because
3  they do not want to pay the two points, for example, in my
4  case $11 thousand, approximately. Then the borrower has the
5  option to say, Okay, I'll pay the higher rate. Save the up
6  front closing, and then the lender can pay you the YSP.
7  That's how it works. And they're supposed to disclose that
8  up front. And it says it in the agreements that I had with
9  the broker, and you know, unfortunately, I've been a Remax
10 broker for 30 years, so I know how this works. And if they
11 got me, they could get anybody. So anyway, that's the
12 incentive based, that's the big controversy right now that
13 Senator Dodd is trying to get made illegal. In that, because
14 it's, unfortunately, it steers lenders into doing things to
15 borrowers that are for their profit.
16         THE COURT: Let me ask you a couple questions - -
17         MS. BEALL: Sure.
18         THE COURT: - - if I could. What's, is there
19 anything that's - - this is just a basic question just to
20 explain. Why do you want to bring, why do you want to bring
21 the lawsuit now? What's - - is there imminent - -
22         MS. BEALL: Yeah.
23         THE COURT: - - risk to losing the house?
24         MS. BEALL: Yes there is.
25         THE COURT: Okay.

1    MS. BEALL: My mortgage went up. My mortgage was $3
2    thousand for three years. No problem. And it's gone up to
3    5.
4    THE COURT: Okay. Are you in an option arm? Is
5    that what you're in? Or - -
6    MS. BEALL: No. I'm in a 327.
7    THE COURT: 327. All right.
8    MS. BEALL: Yeah. That's classified as one of the
9    predatory loans under the Federal Reserve and Sheila Bear
10   (phonetic) claim, you know - -
11   THE COURT: All right.
12   MS. BEALL: - - stating that - -
13   THE COURT: Okay. And that's happened? You're - -
14   MS. BEALL: Oh, yeah.
15   THE COURT: - - your payment has gone up.
16   MS. BEALL: Yeah.
17   THE COURT: Okay.
18   MS. BEALL: Your Honor, if I - -
19   THE COURT: Are you, are you current?
20   MS. BEALL: No.
21   THE COURT: All right. Okay. That's, I really
22   don't need to hear more from you, unless you - -
23   MS. BEALL: No.
24   THE COURT: Mr. Lunn. Sounds like prejudice to me.
25   MR. LUNN: Well Your Honor, to the last point, the

1  payment's already gone up, Your Honor. As you heard in
2  connection with Ms. Hawthorne's relief from stay, if I
3  remember those facts correctly, the payment hadn't gone up
4  yet. There, it was going to go up in a number of months, in
5  so that she needed to commence the law suit at that time to
6  avoid the amounts going up.
7          THE COURT: Um-hum.
8          MR. LUNN: If I can just back up, Your Honor. And I
9  think the paper, our papers at least try to make clear that
10 we're not trying to be difficult. We're not trying to
11 unreasonably delay. We just feel that it's unreasonable,
12 inequitable, and potentially prejudicial to the Debtors
13 without knowing the underlying basis of the action - -
14         THE COURT: Okay.
15         MR. LUNN: - - the underlying parties - -
16         THE COURT: Well, but, you, she, you had the proof
17 of claim with the rather lengthy attachment setting forth the
18 various grounds. The motion itself is 20 pages.
19         MR. LUNN: And I would submit that it's somewhat
20 lengthy at 20 pages and somewhat confusing to determine - -
21         THE COURT: Well.
22         MR. LUNN: - - what exactly is at issue. And if
23 Your Honor really focuses on what's at issue - -
24         THE COURT: But you have a, you have a *pro se*
25 movant. You, you can't, you're not going to be able to hold

1    a, I'm not going to hold a pro se movant – –

2              MR. LUNN: I'm not – –

3              THE COURT: – – to an attorney's level of drafting.

4              MR. LUNN: I'm not suggesting that, Your Honor. And

5    I believe that some deference should be given. But that

6    deference shouldn't be given if it's going to be, ultimately

7    prejudice the Debtors. And once – –

8              THE COURT: How is it going to prejudice the

9    Debtors? I want you to be very specific. What prejudice is

10   there for you having to defend a lawsuit in Virginia, as

11   opposed to fighting a proof of claim in Delaware? What's the

12   prejudice?

13             MR. LUNN: Well the prejudice, Your Honor, is there

14   could be a number of causes of actions that the Debtors

15   ultimately would have to respond to that are or are with not,

16   are or with not – – excuse me. Without basis.

17             THE COURT: You talking about a slippery slope,

18   other than Ms. Beall?

19             MR. LUNN: There are others, Your Honor, that are

20   similarly situated, yes. But if this lawsuit's commenced,

21   who knows, Debtors don't know who's going to be named. Are

22   all the officers and directors going to be named? Are all

23   the Debtors going to be named? The actions – –

24             THE COURT: The officers and directors don't have

25   the automatic stay.

1  MR. LUNN: But we couldn't move for an injunction
2  under 105, Your Honor.
3  THE COURT: And you'd have to show irreparable harm.
4  MR. LUNN: We would, Your Honor. But that issue is
5  not before you, and what we're suggesting, Your Honor, is
6  that we be provided with a copy of the complaint. If it's
7  succinct, if we know who the parties are, we'll turn around
8  to Ms. Beall and say, Your Honor, or Ms. Beall, this is okay.
9  We will consent to the relief from stay. If it, however, it
10 has numerous broad allegations, the Debtors would want to
11 reserve their right to come back before Your Honor, and then
12 at that point argue whether or not there cause exists to
13 modify the automatic stay.
14 THE COURT: Well, why can't you have that argument
15 in Virginia in front of a Federal Judge there on a 12(b)(6)
16 or 12(c), or you know a motion to restate the cause of
17 action? I mean, ultimately all you're entitled to in a
18 complaint is notice pleading. The standard is not
19 particularly high. It doesn't need to be overly
20 particularized. Although if there are allegations of fraud,
21 obviously Rule 9 would kick in. But doesn't that go to
22 whether the claim, whatever it is, has been articulated in a
23 way that states a claim for relief, and not really cause for
24 relief from the automatic stay?
25 MR. LUNN: It does, Your Honor. But you have to

1  view this in the context of an, I've said it before in
2  connection with even the Gloria Kirk motion last week. We
3  have very few remaining employees at American Home. We are
4  focusing now on formulating a Chapter 11 plan.
5          THE COURT: You've had eight, you know, my response
6  to that is you've had eight months. I mean, how long do
7  these people have to wait? And I'm not being critical. I
8  know you've had a lot to do. And you've accomplished a
9  tremendous amount in eight months. Don't get me wrong. I
10 know it's complicated business. You sold the servicing unit.
11 That's closed. You've been involved in the construction loan
12 issues. You've had a very contentious, well not a very
13 contentious, but a, you've had issues with your bank. I
14 understand, when I say this, it's not, I'm not being
15 pejorative, but it's been eight months. And at some point,
16 you know, these people, if they wait so long that there are
17 no employees left, how do they prosecute their claim. And
18 you've had eight months of breathing space, isn't that enough
19 time? And at some point, don't I have to turn it over to the
20 litigants, and allow them to take discovery and do what they
21 have to do to save their, preserve their homes or preserve
22 their claims?
23         MR. LUNN: Well in this instance, Your Honor, the
24 payments have already gone up. Two, the underlying action,
25 as I hear it and as I read through the motion, really goes to

1   the origination of the loan. Debtors didn't have any
2   involvement in the origination. American, or is it Eagle
3   Lending is not - -
4           THE COURT: Well but her argument is that that was
5   your agent, and you had a, you had sweetheart deal with the
6   agent, and he was really acting on your behalf in any event.
7   And that goes to the merits that you say haven't been
8   particularly well articulated, perhaps. But that's your
9   defense, but you know, that's not, that's a defense on the
10  merits, it's not a defense to stay relief, is it?
11          MR. LUNN: I think it is, Your Honor.
12          THE COURT: Because it goes to likelihood of success
13  on the merits?
14          MR. LUNN: It does, Your Honor.
15          THE COURT: And how do I decide whether or not you
16  were part, part of that conspiracy?
17          MR. LUNN: There are no facts before Your Honor. I
18  don't believe - -
19          THE COURT: Well if I've decided she's made a *prima*
20  *facie* case, the argument could be that the facts, the - -
21          MR. LUNN: Burden.
22          THE COURT: - - burden shifts to you.
23          MR. LUNN: It does, Your Honor. And I would concede
24  that. Also, Your Honor has to look at too, what are the
25  damages that would result from this litigation. At best, the

1   Debtors would submit that the loan would be rescinded. What
2   does that mean? It doesn't mean that Ms. Beall gets the loan
3   for free, Your Honor. She would have to pay the principle
4   amount of the loan. Interest would be waived, fees and costs
5   also likely could be waived, there could be some small
6   monetary damages depending on who, ultimately, would be at
7   fault. But the loan doesn't go away. She would still have
8   to pay the principle.
9               THE COURT: All right. Okay. Does the Committee
10  wish to be heard?
11              MR. CARICKHOFF: Good morning, Your Honor. David
12  Carickhoff of Blank Rome on behalf of the Creditors
13  Committee. Your Honor, we did file a joinder in connection
14  with the Debtors' objection to the stay relief request. I
15  guess similar to the Debtors, we are sympathetic to Ms.
16  Beall's position. We understand that. I think that our
17  issues are aligned with the Debtors in that in looking at the
18  proof of claim, in looking at the stay relief motion, there
19  were numerous issues raised by Ms. Beall and I guess trying
20  to defend or to understand what you would potentially have to
21  defend against was difficult, and it made it hard to
22  understand, really, the costs that would be necessary to
23  defend against this type of litigation. I think Your Honor
24  recognizes that, but I also, we also appreciate the fact that
25  she is a *pro se* movant, and should not be held to the same

1  standard as law firms that practice in this field every day.
2  So we are sympathetic. We appreciate the fact that it's a
3  *pro se* movant. But we, we do find ourself in a situation
4  where the, we don't believe that the claims have been
5  concisely articulated enough to really know what's at risk
6  here. Thank you.
7     THE COURT: Mr. McMahon, any comments?
8     MR. McMAHON: Your Honor, with respect to Ms.
9  Beall's communications with our office, we did receive some
10 information from Ms. Beall, and we did, about, I believe on
11 or about April 10th, emailed a letter to Debtors' counsel
12 asking for documentation of American Home's response, if any,
13 to Ms. Beall's requests under the Truth in Lending Act for
14 identification of the, of the owner and master servicer on
15 the loan. And we did receive a letter dated March 11th from
16 John Callus of American Home's legal department addressed to
17 Ms. Beall, which apparently provided that information. So I
18 just wanted to note that for the record.
19    THE COURT: Okay. Thank you. All right. I'm going
20 to grant Ms. Beall's motion. I think that the facts as
21 presented, the proof of claim, and the motion itself
22 certainly establish at least a *prima facie* case that there
23 may be a claim sufficiently articulated that would survive a
24 motion to dismiss. Whether she'll actually prevail on the
25 merits of the underlying lawsuit or not, I don't particularly

1  know. In addition, I think that the balance of harms and
2  prejudice clearly fall in favor of Ms. Beall. I don't think
3  the Debtors would be particularly prejudiced by defending
4  this lawsuit in Virginia. I understand they have a limited
5  number of employees, but they have legal counsel and they
6  have, they're still operating, at least on a basis of
7  managing what assets are left. Including, including their
8  files, and including their, their loan portfolio. The
9  problem with further delay is that it serves to prejudice Ms.
10 Beall in a number of ways. One, obviously, the possibility,
11 or probability that she could lose her home for failure to
12 make the payments. Second, the continued wind down of the
13 Debtors' business could make it more difficult for her to get
14 the discovery she needs in the future than she could
15 currently get today with some people still there who have
16 some institutional memory as to what the files mean, and what
17 the situation is. The Debtors have had a breathing spell of
18 eight months. They've accomplished a tremendous amount. I
19 am in no way being pejorative in, in stating that. But eight
20 months is enough of a breathing spell, I think in this
21 particularized situation, that requiring them to respond to
22 the merits at this time is not particularly prejudicial.
23 They've had their breathing spell that the automatic stay is
24 designed to provide. I would add that, you know, were we in
25 a full litigation in connection with this proof of claim and

1  the Court was faced with deciding the issue I don't know what
2  I would do in connection with abstaining from deciding it and
3  allowing the judges in Virginia to deal with it, but I would
4  be very open to that kind of approach. And I think the
5  reality is somebody's going to have to decide this claim at
6  some point in the future. We've waited long enough. Ms.
7  Beall has a right, as the plaintiff, to choose her forum.
8  She's chosen the forum and the method of proceeding. I don't
9  think the Debtors would be substantially prejudiced in any
10 way in defending the case in Virginia as opposed to here.
11 Ms. Beall has traveled numerous times from Richmond, or
12 Oakmont, I believe, in order to attend court. And I don't
13 think it would be appropriate, frankly, to require her to
14 travel any further, any more. So for the, for those reasons,
15 I will enter an order lifting the automatic stay to allow Ms.
16 Beall to proceed with her lawsuit in Virginia. And Ms.
17 Beall, I don't know if you attached a form of order or not.
18         MS. BEALL: (Microphone not recording.)
19         THE COURT: Did you? Well, let me see if I can find
20 it. Oh, here it is. All right. I'll, I'll sign the form of
21 order attached. Anything further for today?
22         MR. LUNN: No, Your Honor.
23         THE COURT: All right. Thank you very much.
24 Hearing is adjourned.
25         MR. LUNN: Thank you, Your Honor.

1        MS. BEALL: Thank you.

2        (Whereupon at 10:31 a.m. the hearing in this matter was

3   concluded for this date.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I, Jennifer Ryan Enslen, approved transcriber for

19   the United States Courts, certify that the foregoing is a

20   correct transcript from the electronic sound recording of the

21   proceedings in the above entitled matter.

22

23   _/s/Jennifer Ryan Enslen_                    ___05/15/08___
     Jennifer Ryan Enslen
24   43 Bay Boulevard
     Newark, DE 19702
25   (302)836-1905