IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                         :  Chapter 11
                                                               :
                                                               :  Case No. 07-11047 (CSS)
American Home Mortgage Holdings, Inc., *et al.*,[1]            :  (Jointly Administered)
                                                               :
                            Debtors.                           :
                                                               :  Re: D.I. 9729
---------------------------------------------------------------x

## OBJECTION OF THE PLAN TRUSTEE TO THE APPLICATION OF ZUCKERMAN SPAEDER LLP FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR SUBSTANTIAL CONTRIBUTION IN THESE CHAPTER 11 CASES

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors and debtors-in-possession (the "Debtors"), hereby files this objection (the "Objection") to the *Application of Zuckerman Spaeder LLP for Allowance of Compensation and Reimbursement of Expenses for Substantial Contribution in these Chapter 11 Cases* (the "Substantial Contribution Application"), and in support thereof respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

## BACKGROUND

### A. General Background

1. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

2. The Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042]. The Plan became effective on November 30, 2010 (the "Effective Date").

3. Pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

### B. The Substantial Contribution Application

4. On September 9, 2008, Tilton Jack, Grace Mullins, Christopher Bilek and Mary Bilek, Sam Acquisto, Delena Lamacchia, and Paula Rush (the "Movants"), through their co-counsel Gilbert Oshinsky LLP (f/k/a Gilbert Randolph LLP) ("Gilbert") and Zuckerman Spaeder LLP ("Zuckerman", collectively with Gilbert, the "Borrowers' Committee Counsel") filed a motion [Docket No. 5675] (the "Appointment Motion") seeking appointment of an official committee of borrowers in the Debtors' chapter 11 cases. In the Appointment Motion, the Movants argued that the cost of the borrowers' committee's professionals "should be minimal"

and that a borrowers' committee's responsibilities "should have little overlap with those of the [Creditors'] Committee". (B. Mot. at 18-19.).

5. The Debtors and Creditors Committee objected to the Appointment Motion [Docket Nos. 6112 and 6115, respectively], specifically disputing that an additional statutory committee would entail "minimal" cost to the Debtors' estates. (Debtors' Obj. at ¶ 55-56; *accord* CC Obj. at ¶ 16 (noting that movants sought a "blank check" with respect to reimbursement of their costs)). At the October 8, 2008 hearing on the Appointment Motion, counsel for the Movants assured the Court that a borrowers' committee would focus narrowly on issues relevant to borrowers, and would not be looking to touch on issues for which the Creditors Committee would be responsible to address.[2]

6. On October 10, 2008, this Court entered an order (the "Appointment Order") [Docket No. 6220] directing the U.S. Trustee to appoint an Official Committee of Borrowers (the "Borrowers' Committee") and scheduling a hearing for October 22, 2008 to consider the scope of the appointment and any limitations that would be imposed on the Borrowers' Committee.

7. By notice dated October 21, 2008 [Docket No. 6407], the U.S. Trustee appointed the Borrowers' Committee. The Court held a hearing on October 22, 2008, at which it made certain rulings with respect to the items left open in the Appointment Order. On November 4,

---

[2] Specifically, counsel stated:

[G]iven that first of all we've got a Borrowers Committee with a relatively narrow focus, we're not looking to – the Committee is not looking to touch on all issues in the case, the Creditors Committee is for that purpose. The [purpose of the] Borrowers Committee would be simply to focus on issues relative to the borrowers. Secondly, like I said, where this case is, the assets have mostly been liquidated. There's a plan on the table. It's just a question of addressing the notice and other problems that we've raised in our papers and getting the case to the finish line.

(10/8/08 Hr'g Tr. [Docket No. 6529] at 20:10-20.) Later in the hearing, counsel for the movants reiterated that the borrowers' committee "would not be seeking to do all the things that you normally have a committee look into, preference actions, that sort of thing, but there are some issues on which borrower interests and interest[s] of general unsecured creditors diverge, and on those issues, a Borrowers Committee would be active ...." (*Id.* at 70:12-17.) Counsel went on to state that "the suggestion that a Borrowers Committee's role should be narrow is one that the borrowers completely understand and accept, and we think it would be appropriate to go forward on that basis". (*Id.*

- 3 -

2008, the Court entered an order supplementing the Appointment Order [Docket No. 6495] (the "Retention Order") consistent with its rulings at the hearing, which ordered, *inter alia*, that (i) the scope of the Borrowers' Committee's rights and responsibilities was limited to matters relating to the Plan, global stay relief on behalf of all borrowers in foreclosure and any incidental related issues, (ii) the Borrowers' Committee was not authorized to retain any professionals other than counsel and (iii) the compensation and reimbursement of expenses of counsel for the Borrowers' Committee was capped at $250,000 (the "Fee Cap").

8. On November 25, 2008, the Disclosure Statement was approved and confirmation of the Plan was initially scheduled for January 28, 2009 (the "Confirmation Hearing").[3]

9. On January 22, 2009, the Borrowers Committee filed an objection to the Plan (the "Plan Objection") [Docket No. 6883] challenging, among other things: (i) the adequacy of notice of the bar dates established previously in the Bankruptcy Cases, (ii) the extension of the automatic stay post-confirmation, (iii) the alleged conflicts of interest of the Plan Trustee and the Plan Oversight Committee (as defined in the Plan), (iv) the Plan's exculpation provisions, (v) the proposed mechanism for the estimation, liquidation, and allowance of EPD/Breach Claims (as defined in the Plan) (such mechanism, the "EPD/Breach Claims Protocol"), (vi) the proposed comprehensive settlement of inter-debtor claims and potential inter-estate disputes in the Plan (the "Stipulated Asset Allocation"), and (vii) whether the Plan satisfied the "best interests of creditors" test of Bankruptcy Code section 1129(a)(7). Given that the EPD/Breach Claims Protocol, the Stipulated Asset Allocation, and hypothetical chapter 7 liquidation analysis did not

---

at 70:22-25.)

[3] Based in part on the Borrowers' Committee's intent to present expert testimony at the Confirmation Hearing, the Debtors adjourned the Confirmation Hearing to February 9, 2009, so as to provide time to review the Borrowers' Committee's expert report and depose the Borrowers' Committee's expert.

implicate "borrower" interests as such,[4] the Creditors Committee and the Debtors believed that the Borrowers' Committee was using its objection to these critical elements of the Plan solely to obtain negotiation leverage.

10. The Debtors and the Creditors Committee made a number of modifications to the Plan specifically to address anticipated borrower concerns. When the Debtors and Creditors Committee were unwilling to accede to the Borrowers' Committee's demands with respect to Plan amendments, the Borrowers Committee pressed the Plan Objection, which was overruled *in toto* at the conclusion of the three-day hearing on confirmation of the Plan held February 9-11, 2009 (the "Confirmation Hearing").

11. On April 16, 2009, the Borrowers' Committee Counsel submitted the *First Interim Application of Gilbert Oshinsky LLP for Allowance of Fees and Reimbursement of Expenses as Co-Counsel to the Official Committee of Borrowers for the Period of October 22, 2008 through February 28, 2009* [Docket No. 7286] (the "First Gilbert Application") and the *First Interim Fee Application of Zuckerman Spaeder LLP for Interim Approval and Allowance of Compensation and Reimbursement of Expenses* [Docket No. 7287] (the "First Zuckerman Application", collectively with the First Gilbert Application, the "First Interim Applications").

12. In the First Interim Applications, the Borrowers' Committee Counsel requested legal fees totaling $540,174.25 and expenses totaling $25,489.20. This request was for the period from October 2008 to February 2009 for Gilbert and from October 2008 to March 2009 for Zuckerman (together, the "First Application Period"). This request was more than double the

---

[4] The Borrowers' Committee's challenge to the EPD/Breach Claims Protocol was that it would purportedly allow EPD/Breach Claims at inflated values, thus diluting the recoveries of other creditors of the respective Debtors' estates. The challenge to the Stipulated Asset Allocation was that it purportedly disadvantaged AHM Corp., resulting in diminished recoveries for AHM Corp.'s creditors. The Borrowers' Committee went on to argue that AHM Corp.'s creditors would fare better in a chapter 7 liquidation than they would fare under the Plan, thus implicating section 1129(a)(7) of the Bankruptcy Code. The Debtors believe that objections to the Plan based on the

Fee Cap established by the Court and far exceeded even the $400,000 increased cap requested by the Borrowers Committee.

13. On May 5, 2009, the Debtors and the Creditors Committee objected to the First Interim Applications by the *Joint Objection of the Official Committee of Unsecured Creditors and the Debtors to the Applications of the Official Committee of Borrowers for Payment of Fees and Expenses of their Legal Professionals in Excess of the Court Determined Cap* [Docket No. 7345] (the "First Fee Objection").

14. Following a hearing on October 14, 2009, the Court granted the First Zuckerman Application in full by order dated December 10, 2009 [Docket No. 8393] and the First Gilbert Application in full by order dated January 11, 2010 [Docket No. 8489] (together, the "First Interim Fee Orders").

15. On August 16, 2010, the Court entered an order disbanding the Borrowers' Committee and requiring Borrowers' Committee Counsel to file final fee applications within 60 days.

16. Accordingly, on October 15, 2010, the Borrowers' Committee Counsel submitted the *Second and Final Application of Gilbert LLP for Allowance of Fees and Reimbursement of Expenses as Co-Counsel to the Official Committee of Borrowers for the Period of March 1, 2009 through August 16, 2010* [Docket No. 9332] (the "Final Gilbert Application") and the *Second Interim and Final Fee Application of Zuckerman Spaeder LLP for Approval and Allowance of Compensation and Reimbursement of Expenses* [Docket No. 9333] (the "Final Zuckerman Application", collectively with the Final Gilbert Application, the "Final Applications").

---

Plan's general fairness to "creditors" obviously exceeded the narrow scope of the Borrowers' Committee's appointment and strayed significantly into territory properly reserved for the Creditors Committee.

YCST01:10766072.1    066585.1001

17. In the Final Applications, the Borrowers' Committee Counsel sought (i) interim compensation in the amount of $126,843.00 and expense reimbursements in the amount of $12,992.49 for the period during March 1, 2009 through August 16, 2010 for Gilbert and April 1, 2009 through August 16, 2010 for Zuckerman and (ii) final compensation in the amount of $662,104.90 and final expense reimbursements in the amount of $38,224.77 for the period during October 22, 2008 through August 16, 2010. Specifically, the Final Zuckerman Application sought final compensation in the amount of $236,473.64, comprised of legal fees totaling $221,776 and expenses totaling $14,697.63.

18. On November 8, 2010, the Debtors and the Creditors' Committee filed the *Joint Objection of the Debtors and the Committee to the Second Interim and Final Applications of the Official Committee of Borrowers' Legal Professionals for Payment of Fees and Expenses* [D.I. 9426] (the "Joint Objection"). In the Joint Objection, the Debtors and Creditors' Committee argued that the Final Applications should be denied pursuant to the Retention Order, as over $565,000 in Borrower Committee Counsel fees and expenses had already been approved by the Court at that point, far in excess of the Fee Cap. The Court has not yet ruled on the Final Applications.

19. Now, while couched as a substantial contribution motion, Zuckerman is really filing an additional fee application seeking to recover fees of $81,560.50 together with expenses incurred in the amount of $1,067.73 for the three month period prior to Zuckerman's official retention, August 25, 2008 through and including October 21, 2008 (the "Pre-Retention Application Period").

## ARGUMENT

I. **Zuckerman is not authorized to file an application for attorneys' fees on its own behalf under sections 503(b)(3) and (4) of the Bankruptcy Code.**

20. Under the majority view and the plain language of sections 503(b)(3)(D) and (4) of the Bankruptcy Code, Zuckerman may not seek reimbursement of compensation and expenses on its own behalf, particularly when the Movants have not paid, nor are obligated to pay, the compensation requested.

21. Sections 503(b)(3)(D) and (4) of the Bankruptcy Code provide:

> After notice and a hearing, there shall be allowed, administrative expenses other than claims allowed under section 502(f) of this title, including -
>
> (3) the *actual and necessary expenses*, other than compensation specified in paragraph (4) of this subsection, *incurred by* -
>
> > (D) a creditor, an indenture trustee, an equity security holder, or *committee representing creditors or equity security holders* other than a committee appointed under section 1102 of this title, *in making a substantial contribution* in a case under chapter 9 or 11 of this title;
>
> (4) *reasonable compensation for professional services rendered by an attorney or accountant of an entity whose expense is allowable under paragraph (3) of this subsection*, based on the time, the nature, the extent and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. §503(b)(3) and (4) (emphasis added).

22. The plain language of sections 503(b)(3)(D) and (4) of the Bankruptcy Code dictate that these provisions be read in conjunction. Lebron v. Mechem Fin. Inc., 27 F.3d 937, 944 (3d Cir. 1994) (stating that "§ 503(b)(4) authorizes awards of legal and accounting fees only in situations coming within the scope of § 503(b)(3)."); In re Glickman, Berkowitz, Levinson & Winer, 196 B.R. 291, 295 (Bankr. E.D. Pa. 1996) (same). Accordingly, the "natural reading of these provisions is that the 'entity' who may file a request for payment under…subsection (b)(4)

- 8 -

is the same 'entity' whose expense is allowable under subsection (b)(3)(D), i.e., the creditor." In re Olsen, 334 B.R. 104, 106 (Bankr. S.D.N.Y. 2005) (citing Worldcom, Inc., No. 02-13533, ex. A, at 6-7 (July 8, 2005) (Order Denying the Request of Akin Gump Strauss Hauer & Feld LLP for Post-Petition Pre-Appointment Fees Pursuant to Section 11 U.S.C. Section 503(b)). Thus, the right to request compensation under section 503(b)(4) belongs to the client and not to the attorney, and only the client may apply for reimbursement of fees and expenses from the estate. Id.; see also Lebron, 27 F.3d at 944 (stating that "four categories of persons may apply for reimbursement of expenses: (1) creditors, (2) indenture trustees, (3) equity security holders, and (4) creditor and equity holder committees other than official committees appointed under § 1102 of the Bankruptcy Code."); Glickman, 196 B.R. at 295 n.3 (Bankr. E.D. Pa. 1996) (stating that "[o]nly creditors (indenture trustees, equity security holders and creditor and equity holder committees other than official committees appointed under 11 U.S.C. § 1102) may apply for reimbursement of expenses."); In re American Preferred Prescription, Inc., 194 B.R. 721 (Bankr. E.D.N.Y. 1996) (holding that a "firm is not a creditor of the Debtor, and does not have standing to apply for fees pursuant to § 503(a)(3)D) and (4).").

23.     Furthermore, section 503(b)(3) expressly covers "the *actual*, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, *incurred by*...a committee representing creditors....in making a substantial contribution in a case under chapter 9 or 11 of this title." 11 U.S.C. § 503(b)(3)(D). Thus, "the statute contemplates that the fees covered by subsection (b)(4), like those costs covered by subsection (b)(3), will have been 'incurred by' a creditor." Olsen, 334 B.R. at 107. This reading is consistent with the plain language interpretation of sections 503(b)(3) and (4) by the Third Circuit in Lebron. 27 F.3d at 944.

24.     "[U]nder certain circumstances, it may be appropriate to consider counsel's application to have been made 'on behalf of' his or her creditor client so that the court may proceed directly to its merits without multiplying proceedings on standing formalities." Olsen, 334 B.R. at 107 (quoting In re Oxford Homes, Inc., 204 B.R. 264, 267-68 (Bankr. D. Me. 1997)); In re Glickman, Berkowitz, Levinson & Winer, 196 B.R. 291 (Bankr. E.D. Pa. 1996) (expressing concern that attorneys and not creditor filed request for payment but stating that "to the extent Fox Rothschild is acting on [the creditor's] behalf, the Court has determined that consideration of the substantive issues underlying their request is appropriate."). However, where the client has incurred no obligation to pay his attorney, "that attorney cannot be said to be seeking fees from the estate 'on the creditor's behalf.'" Olsen, 334 B.R. at 107; but see In re Western Asbestos Co., 318 B.R. 527 (Bankr. N.D. Cal. 2004) (holding that counsel could seek reimbursement under section 503(b)(4) even if client has not paid and is not obligated to pay the fees); In re Mirant, 354 B.R. 113, 140 (Bankr. N.D. Tex. 2006) (same).

25.     Here, while the Substantial Contribution Application has technically been made by the named borrowers listed therein, in effect, it is an application for reimbursement of compensation and expenses filed by Zuckerman on its own behalf. The Application seeks an order allowing Zuckerman, not the Movants, compensation for a substantial contribution made in their chapter 11 cases. Furthermore, the Movants have not paid, nor are obligated to pay, the compensation and expenses requested by Zuckerman in the Substantial Contribution Application. This fact is plainly acknowledged by Zuckerman in the Substantial Contribution Application. See Sub. Cont. App. at 6 ("Zuckerman has received no payment and no promise for payment from any source for services rendered, or to be rendered, in any capacity whatsoever in

connection with these cases."). Accordingly, Zuckerman cannot be said to be seeking fees from the estate on the behalf of the Movants.

26. Therefore, the Substantial Contribution Application--which is nothing more than an attorney's application seeking compensation on its own behalf under sections 503(b)(3) and (4) of the Bankruptcy Code--should be denied.

II. Even if the Court finds that Zuckerman is entitled to file an application for attorneys' fees on its own behalf, there was no "substantial contribution" by Movants during the Pre-Retention Application Period, thus Zuckerman is not entitled to compensation and reimbursement of expenses under 503(b)(3)(D) for that period.

27. Even if the Court finds that Zuckerman has standing to file an application for attorneys' fees on its own behalf, Zuckerman is not entitled to compensation for legal services rendered during the Pre-Retention Application Period under section 503(b)(3)(D) of the Bankruptcy Code as there was no "substantial contribution" by Movants during that time.

28. A court may award an applicant actual, necessary expenses, including professional fees of an attorney, which were incurred in making a "substantial contribution" in a case under chapter 9 or 11. 11 U.S.C. §503(b)(3)(D) and (4); see also Lebron v. Mechem Fin., Inc., 27 F.3d 937, 943 (3d Cir. 1994). In determining whether there has been a substantial contribution pursuant to section 503(b)(3)(D), "the applicable test is whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." Id. (quoting In re Lister, 846 F.2d 55, 57 (10th Cir. 1988)). Because creditors are presumed to act primarily in their own interest and not for the benefit of the estate as a whole, they have the burden of proving by a preponderance of the evidence that they have met the requisite substantial contribution. In re Buckhead American Corporation, 161 B.R. 11, 15 (Bankr. D. Del. 1993). Furthermore, "[c]ompensation based on substantial contribution is designed to promote meaningful participation in the reorganization process, but at the same time, discourage

mushrooming administrative expenses...Accordingly, the substantial contribution provisions must be narrowly construed." Buckhead, 161 B.R. at 122 (quoting In re Granite Partners, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997)).

29. In determining whether a creditor has met this burden, "courts consider the following factors: 1) whether the services were rendered solely to benefit the client or to benefit all parties in the case; 2) whether the services provided a direct, significant and demonstrable benefit to the estate; and, 3) whether the services were duplicative of services rendered by attorneys for the committee, the committees themselves, or the debtor and its attorneys." In re Worldwide Direct, Inc., 334 B.R. 112, 122 (Bankr. D. Del. 2005) (quoting In re Buckhead Am. Corp., 161 B.R. 11, 15 (Bankr. D. Del. 1993)).

30. In considering the first factor, section 503(b) compensation has been consistently denied where the creditor seeking compensation acted primarily for its own benefit, and any benefit to other creditors, the debtor or the estate was merely incidental. Id. at 16; see also In re Labron, 27 F.3d at 946 ("A creditor should be presumed to be acting in his or her own interest unless the court is able to find that his or her actions were designed to benefit others who would foreseeably be interested in the estate"); In re U.S. Lines, 103 B.R. 427 (Bankr. S.D.N.Y. 1989) (denying compensation because attorney's participation in settlement negotiations was to benefit counsel's clients and any benefit to the estate was incidental); In re American Plumbing & Mech., Inc., 327 B.R. 273 (Bank. W.D. Tex. 2005) (denying substantial contribution of indenture trustee for bondholders because protecting the rights of bondholders in plan negotiations and litigation was not a contribution that benefited the estate). For example, in Buckhead, the unofficial committee of noteholders' application for reimbursement of attorneys' fees and expenses was denied largely because the attorneys' participation in pre-petition work-out

negotiations were directed towards obtaining the best possible result for the noteholders, and any benefit to other parties in the case was merely incidental. 161 B.R. at 16.

31. The Movants' participation in obtaining court approval of the Borrowers' Committee, including the filing of the Appointment Motion, was directed solely at protecting borrowers' interests vis-à-vis other creditors. See In re Hooker Investments, Inc., 188 B.R. 117 (S.D.N.Y. 1995) (affirming bankruptcy court's ruling denying compensation under 503(b) to attorneys for trade creditor group that performed services prior to its retention as special counsel, because "the firms' earlier services, resulting in their appointment by the bankruptcy court as special counsel, primarily benefitted the Trade Creditor Group rather than 'all parties in the case.'"). As such, any benefit to other creditors, the Debtors or the estates as a result of the appointment of the Borrowers' Committee was merely incidental. Notably, in the Appointment Motion, the Movants openly acknowledged that their efforts were directed towards obtaining the best possible result for borrowers. See B. Mot. at 1 (stating that "[w]ith borrowers excluded from negotiations over the Plan, American Home has proposed terms that would improperly impair borrowers' rights in numerous respects, minimize or eliminate their claims without due process, and make it much more difficult for them to protect themselves and their families in the event of foreclosure proceedings.").

32. As to the second factor, the Movants actions must have provided direct, significant and demonstrable benefit to the estate. For example, compensation has been allowed where "extraordinary actions by a creditor resulted in actual and demonstrable benefit to the estate." Buckhead, 161 B.R. at 16. However, where efforts are not "extraordinary or unusual efforts, in any way directed toward providing a tangible benefit to the estate or other creditors, but rather [are] normal creditor efforts directed to protecting the creditors' interests to the

greatest extent possible," compensation under section 503(b)(3)(D) should be denied. Id. at 17; In re Columbia Gas Sys., Inc., 224 B.R. 540, 548 (Bankr. D. Del. 1998) (holding that expected or routine activities in a chapter 11 case do not constitute substantial contribution).

33.     Here, Zuckerman's efforts during the Pre-Retention Application Period were not extraordinary or unusual in any way, but instead were efforts directed at achieving the appointment of an official committee at the direction of certain individual borrowers. As stated above, Zuckerman was concerned first and foremost with assuring that borrowers' interests were protected in the plan process. Accordingly, the activities performed by Zuckerman during the Pre-Retention Application Period, including seeking appointment of the Borrowers' Committee and addressing strictly borrower issues, were performed for the Movants' self-interest and did not provide any substantial, demonstrable benefit to the estates. See Worldwide Direct, 334 B.R. at 125.

34.     Furthermore, the Substantial Contribution Application argues that "many of the objections raised in the Appointment Motion were incorporated by the Debtors into the plan which ultimately the Court confirmed." This argument is flawed for two reasons. First, participation in the plan process and negotiation of plan terms has consistently been regarded as normal creditor activity not rising to the level of substantial contribution under section 503(b)(3)(D). See In re: American Plumb. & Mech., Inc., 327 B.R. 273, 291 (Bankr. W.D. Tex. 2005) (holding that plan negotiation is an expected activity in a chapter 11 case). Second, even if the Borrowers' Committee's participation in the plan process was deemed a substantial contribution to the Debtors' cases, such participation has already been compensated via the First Interim Application. The Debtors and the Committee voluntarily included Article 17 (Special Provisions Concerning Borrowers and Borrower Claims) into the Plan and the Borrowers

Committee nevertheless pressed the entirety of its Plan objection - the only unresolved objection to the Plan - leading to a 3-day trial at significant increased costs to the Debtors' estates. Thus, it is improper for Zuckerman to seek compensation for Plan work supposedly done pre-appointment.

35.     On January 22, 2009, more than three months after Court approval of its appointment, the Borrowers' Committee filed the extensive Plan Objection raising a number of objections to the Plan. While the Plan Objection incorporated certain points raised in the Appointment Motion, the objections were formally presented and developed in the Plan Objection. Furthermore, pursuant to the First Interim Fee Order, Zuckerman has already been paid over $100,000 in compensation (representing over 220 hours of work) for services performed in connection with the Plan and Disclosure Statement. Accordingly, any pre-appointment work done by Zuckerman regarding the Plan was not only discretionary, but also aimed solely at bolstering the Movants' Appointment Motion and preparing Zuckerman for its role Borrowers' Committee counsel--not at providing a substantial, demonstrable benefit to the estates.

36.     Finally, in order to justify compensation as an administrative expense under section 503(b), "something more than 'self-serving statements regarding one's involvement in a case which allegedly resulted in a "substantial contribution" must be presented to the court.'" Buckhead, 161 B.R. at 15 (citing In re 9085 E. Mineral Office Building, Ltd., 119 Bankr. 246, 249 (Bankr. D.Colo. 1990)). Accordingly, "[c]orroborating testimony by a *disinterested* party attesting to a claimant's instrumental acts has proven to be a decisive factor in awarding compensation to activities which might not otherwise constitute a 'substantial contribution.'" Id. Here, the Substantial Contribution Application seeks compensation for legal services provided

by Zuckerman that Movants did not pay for, nor are obligated to pay for. As such, Zuckerman's vague statements regarding the Movant's alleged "substantial contribution" to the Debtors' cases are particularly self-serving and unconvincing.

37. Based upon the relevant factors set forth in <u>Worldwide</u>, the Movants have not demonstrated that their efforts during the Pre-Retention Application Period resulted in an actual and demonstrable benefit to the Debtors' estates and the creditors. Instead Movants' (and Zuckerman's) efforts during the Pre-Retention Application Period were aimed at one purpose only--to obtain court approval of the Borrowers' Committee. Accordingly, for the reasons stated above, compensation to Zuckerman under sections 503(b)(3)(D) and (4) of the Bankruptcy Code should be denied.

III. **Zuckerman's services during the Pre-Retention Application Period should be scrutinized separately to determine whether they independently provided a substantial contribution to the Debtors' estates.**

38. Even if the Court finds that Zuckerman is entitled to file an application for attorneys' fees on its own behalf and that *some* of Zuckerman's pre-retention services arguably constituted a substantial contribution to the estates, it does not follow that the entirety of the pre-retention services performed by Zuckerman rise to the level of substantial contribution and are compensable under sections 503(b)(3)(D) and (4) of the Bankruptcy Code.

39. Each of Zuckerman's time-entries during the Pre-Retention Application Period should be scrutinized individually to determine whether the specific services provided made a substantial contribution to the Debtors' chapter 11 cases. As just one example, Zuckerman appears to have spent close to fifteen (15) hours during the Pre-Retention Application Period researching and drafting a motion on liability of securitizers and warehouse lenders. See Sub. Cont. App., Linda Singer time-entries, 9/5/08-9/7/08. These services were clearly directed at providing a benefit to Zuckerman's client alone, and not the estates. In fact, some of the services

for which compensation is sought go one step further, and were performed solely for Zuckerman's self-interest, including time billed to "calls to counsel for potential clients." See Sub. Cont. App., Linda Singer time-entry on 9/2/08.

40. While the Plan Trustee strongly maintains that the entirety of the Substantial Contribution Application should be denied for the reasons set forth herein, the services provided during the Pre-Retention Application Period should be scrutinized independently and carefully by the Court. Therefore, in the event that the Court determines that *some* of the services provided by Zuckerman during the Pre-Retention Application Period are compensable under sections 503(b)(3)(D) and (4) of the Bankruptcy Code, it should not follow that *all* services provided by Zuckerman during that time should be compensated by the estates.

IV. The Substantial Contribution Application should be denied in light of the Fee Cap and the limited scope of retention established by the Court's Retention Order.

41. In light of the Fee Cap and limited scope of retention established by the Court's Retention Order, the compensation sought in the Substantial Contribution Application should be denied. In the Retention Order, this Court ordered that "compensation and reimbursement of expenses for counsel to the Borrowers' Committee from the estates shall be capped at $250,000." The Fee Cap was established to limit the prejudice to the Debtors' estates as a result of the Borrowers' Committee formation. In their final fee application requests alone, the Borrower Committee attorneys are seeking approximately $700,000.

42. Pursuant to the Interim Fee Order, Zuckerman has already received compensation for professional services and reimbursement of expenses in the amount of $186,669.88 for the period October 22, 2008 through March 31, 2009. Additionally, Zuckerman seeks additional compensation of $49,803.76 for the period April 1, 2009 through August 16, 2010 in the Final Zuckerman Application.

YCST01:10766072.1

066585.1001

43. Despite the fact that Zuckerman is already seeking final compensation as co-counsel to the Borrowers' Committee in the amount of $236,473.64, Zuckerman now seeks additional compensation for fees and expenses in the amount of $82,628.23 for the Pre-Retention Application Period. Thus, if Zuckerman's final fees are approved and the Substantial Contribution Application is granted, Zuckerman's compensation in these cases will rise to $319,101.86, which *alone* is nearly $70,000 in excess of the Fee Cap established in the Retention Order. Moreover, as described above generally, many of the fees sought by Zuckerman in both the Substantial Contribution Application and its final fee application were incurred on tasks outside the very limited scope defined in the Retention Order.

44. Given that the Fee Cap and limited scope of retention were established to significantly limit the expenses imposed by creation of an additional statutory committee, and that Zuckerman's compensation alone will reach $319,101.86 if all of its outstanding fees are granted, the additional and excessive compensation sought by Zuckerman for services provided during the Pre-Retention Application Period should be denied pursuant to the Retention Order.

**Remainder of Page Left Blank By Intention**

**WHEREFORE**, the Plan Trustee respectfully requests that the Court sustain this Objection, deny the Movants' request to award Zuckerman compensation for a substantial contribution in the Debtors' chapter 11 cases under section 503(b)(3)(D) and (4) of the Bankruptcy Code, and grant such other and further relief as it deems just and proper.

Dated: Wilmington, Delaware
February 22, 2011

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*