IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
A Delaware corporation, et al.,

Debtors,

Chapter 11
Case No. 07-11047 (CSS)
(Jointly Administered)

------------------------------------------------------------------ x

### REPLY TO THE OBJECTION OF THE SUBORDINATION STATEMENT OF GIL QUENTIN ALVAREZ

1. This reply is submitted to the objection filed by Steven D. Sass, as liquidating trustee (the "Plan Trustee") prepared by his counsel, Young Conaway Stargatt & Taylor, LLP [ by Margaret Whitman Greecher, Esq.]. In order for Your Honor to fully understand the basis for this reply, and the importance of this claim, it is important to highlight certain historical events which are relevant and have occurred with regards to this claim.

### GENERAL BACKGROUND

2. On February 5, 2005, Creditor and his wife signed a contract for the sale and purchase of a home in Apopka, Florida. American Home Mortgage (Debtor) represented to Creditor that the interest rate would be 5.25% and agreed to "lock it in".

3. On March 10, 2005, Debtor ambushed Creditor and informed him for the first time, that his mortgage was now 5.75%. Creditor expressed his objections at closing but was forced to close on the home with a 5.75% interest rate because the seller was purchasing a home in Tampa, Florida, that very day. Had Creditor not elected to purchase the home, he would have been subject to legal action from the seller.

4. Creditor then retained an attorney and personally wrote to Michael Strauss who was the

Chairman, President and CEO of Debtor and informed him by way of a "Qualified Written Request" pursuant to Section 6 of the Real Estate Settlement Procedures Act (RESPA 12 U.S.C. 2605), regarding the misconduct which had occurred. Instead of rectifying the misconduct or conducting an investigation as the Debtor was required to do under RESPA, Debtors engaged in a pattern of fraud and deceit, intentionally fabricating several scenarios to investigative bodies ( i.e. the Florida Department of Financial Regulation and the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development) in order to wrongfully deprive the creditor of his rights under the TILA and RESPA and to WRONGFULLY AND ILLEGALLY APPROPRIATE EXCESS FUNDS TO WHICH THEY WERE NOT ENTITLED TO.

5.  On November 21, 2005, after examining all of the fraudulent responses by Debtors, the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development directed Michael Strauss and Debtors to reach a resolution with the Creditor and his attorney within 15 days. Debtors and Mr. Strauss wrongfully refused (See <u>Docket No. 9646, Exhibit B</u>).

6.  On October 17, 2006, the Office of Financial Regulation in the State of Florida took administrative action against Debtor. In a Stipulation and Consent Agreement the State of Florida Office of Financial Regulation fined the Debtor five thousand dollars ($5,000.00) for the misconduct committed against the Creditor (See <u>Docket No. 9646, Exhibit A</u>).

7.  From November of 2006 up to and until April 2007, After numerous calls and letters to settle the matter, Debtors indicated that they would use their insurance, in the form of Directors and Officers liability insurance policies, to settle the matter.

8.  On April 13, 2007, Debtor, after initially indicating their willingness to settle, and upon

information and belief in knowing that they would file for bankruptcy protection, refused to settle (See <u>Docket No. 9646, Exhibit C</u>). A complete background with extensive detailed exhibits was provided to counsel and to the Court with Creditor's claim.

### CLAIMANT FILES A MOTION AND IS DIRECTED BY THE COURT TO WORK WITH DEBTOR'S COUNSEL ON A FORM OF ORDER

9.     On September 15, 2008, Claimant appeared before the Honorable Christopher S. Sontchi and was directed by the Court to work together with Debtor's counsel i.e. with Mr. Nathan Grow, Esq., so that a Form of Order in connection with Claimant's motion be prepared.

10.    While Claimant was initially worried in working with Debtors counsel and found the direction of the Court to do so disconcerting, he later appreciated the wisdom of the Court in that it allowed both parties to communicate with each other and find common ground on resolving the issues.

11.    From September 15, 2008 until October 6, 2008, Claimant communicated and negotiated with Mr. Grow by way of telephone and e-mail. During these negotiations, Claimant pointed out to Mr. Grow the findings by the State of Florida Office of Financial Regulation who had fined the Debtors in regards to Claimants case and the November 21, 2005 letter to Mr. Struass from the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development that directed him to reach a resolution with the Claimant and his attorney in which he then wrongfully refused to do so.

12.    Claimant, during these negotiations, refused to agree to any "reservation of rights" without knowing what specific rights were to be reserved. Claimant wanted complete finality with regards to his claim and informed this to Mr. Grow.

13.    It was during these negotiations that Claimant requested that Mr. Grow reach out to the

Debtors to inquire if the Debtors would use their insurance which would cover the misconduct committed by Debtors and their officers/agents. Despite the fact that Debtors had initially indicated to Claimants then attorney that they had insurance in the form of Directors and Officers liability insurance policies to cover Claimants situation, they wrongfully and without just cause then prevaricated to Mr. Grow on or about October 3, 2008 that they did not have such insurance.

14. As this Court is aware, after prevaricating to Mr. Grow that they did not have insurance to cover their unlawful actions against Claimant, Debtors requested that this Court allow Debtors to use their D&O Policies to fund Settlements and Stipulation and Agreements against AHM and Michael Strauss (See Docket No. 7934, dated 8/11/09)

15. Irrespective of the fact that Claimant knew that Debtors had prevaricated to Mr. Grow, Claimant was very clear with Mr. Grow that he did not want Debtors to maintain rights in perpetualty which they would later attempt to use in any adversary proceeding against him and wanted to settle this matter. Indeed on three occasions Claimant indicated to Mr. Grow that he would reach out to Your Honor because he was not satisfied with the adverse language being drafted in the proposed Form of Order and because he wanted a Form of Order that would bring finality to his claim.

16. After extensive back and forth negotiations, it was agreed that Debtors and Mr. Alvarez would resolve his claim in good faith. Enclosed as Exhibit A is the October 10, 2008 Order, signed by Your Honor, which ordered that the Debtors and Mr. Alvarez will work in good faith to resolve Mr Alvarez's claim (See also Docket No. 6189 and 6219).

**POINT ONE. THE ALVAREZ SUBORDINATION STATEMENT SHOULD BE CONSIDERED A SENIOR UNSECURED CLAIM ENTITLED TO THE BENEFIT OF SUBORDINATION BECAUSE A "PROCEDURAL" DEFECT THAT WAS THROUGH NO FAULT OF THE PRO-SE CLAIMANT, SHOULD NOT BE AN IMPEDIMENT TO DENY CLAIMANT OF HIS SUBORDINATION RIGHTS.**

17.     The Plan Trustee and his counsel at Young Conaway Stargatt & Taylor, LLP claim in paragraph 12 of their objection that should "...Alvarez seek subordination on some other basis, the ...Alvarez subordination Statement(s) are procedurally deficient. A proceeding to subordinate a claim or interest is properly brought as an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure."

18.     The Trustee and counsel however fail to consider the fact that on October 6, 2008 the Creditor and the Debtor entered into a binding agreement by way of a certificate of counsel and a proposed Form of Order in which it was agreed, inter alia, that they both would work together in good faith to settle this matter.

19.     This agreement which was entered into by Debtors and Claimant orders that Debtors work in good faith in order to resolve the claim. Debtors have not complied with this Order signed by Your Honor.

20.     By now requesting that Creditor bring an adversary proceeding, the Debtors, Trustee and Counsel for the Debtors are not complying with their agreement of October 10, 2008 to settle Creditors' case in good faith. The Trustee cannot unilaterally repudiate Debtors counsel agreement to settle this matter. In a case arising under federal law, an attorney's authority to bind his client to a settlement is governed by federal law. See <u>In re Artha Mgmt., Inc.,</u> 91 F.3d 326, 328 (2d cir. 1996).

21.     An agreement is an agreement and it should be binding on the Trustee. Should this Honorable Court disagree with Claimant Alvarez, and find that there is no agreement to settle the matter in good faith, contrary to the very clear language of this Court's October 10, 2008 Order,

then Claimant should be allowed the opportunity to correct any procedural defect given the fact that Debtors counsel agreed to settle the matter in good faith, i.e. absent an adversarial proceeding. It is incomprehensible that Debtors counsel would agree to settle the Claimant's matter amicably and then turn around to not only object to his subordination statement, but to renege on their agreement to work in good faith to resolve Mr. Alvarez's claim and request that he commence an adversarial proceeding, contrary to their agreement and the Order of this Court. Any so-called procedural defect was the fault of Debtors not acting in good faith or complying with the Court's October 10, 2008 Order. This inaction and disregard by Debtors should not be an impediment to deny Claimant of his subordination rights.

**POINT TWO. THE ALVAREZ SUBORDINATION STATEMENT SHOULD BE CONSIDERED A SENIOR UNSECURED CLAIM ENTITLED TO THE BENEFIT OF SUBORDINATION BECAUSE ASSETS WRONGFULLY AND UNLAWFULLY OBTAINED FROM ONE CREDITOR SHOULD NOT BE USED TO BY THE TRUSTEE TO SATISFY OTHER CREDITORS.**

22.     In a Chapter 11 case, the Debtor usually remains in possession of its assets and assumes the duties of a trustee. The Debtor in possession is a fiduciary for the Creditors of the estate, and owes them the highest duty of care and loyalty.

23.     Property acquired through fraud or other wrongdoing should be treated as it is held in trust by the Trustee for the benefit of the party wronged. Since the value of the wrongfully and unlawfully obtained funds of Creditor Alvarez passed to the Trustee, he should rightfully return these funds to Claimant Alvarez or at the very least separate these funds as they are the subject of a court Order by this Court.

24.     Here, the Trustee and Debtor's counsel want this Honorable Court to distribute assets which were wrongfully and unlawfully obtained by the Debtor from the Claimant in a despicable

and deceitful manner and to distribute them to other Creditors. Ill-gotten assets cannot convert to legitimate property of the Trustee. The funds wrongfully and illegally obtained from Claimant Alvarez should not be part of the Debtor's estate. Claimant respectfully asks this Honorable Court to direct the Trustee not to transfer the funds wrongfully obtained from the Creditor to others.

25. This case calls out for Your Honor to create a constructive trust with regards to the Alvarez claim. A constructive trust is a court-imposed trust relationship, created ex post facto, to return property to its rightful owner. Generally, a constructive trust may be imposed when one party (here the Plan Trustee) has acquired legal title to property under circumstances that such party could not, in good conscience, retain the beneficial interest thereto 76 Am. Jur. 2d Trusts 168.

26. In order to prevail in an action to impose a constructive trust, a claimant must demonstrate that another party (1) holds an identifiable res and (2) is subject to an equitable duty to convey or return such res to the claimant. See Yohe v Yohe, 466 Pa. 405, 411 (Pa. 1976). This "equitable duty" may arise out of circumstances, including fraud, bad faith, duress, coercion or undue influence. See 76 Am. Jur. 2d 169.

27. Here, the Trustee is in possession of funds which were wrongfully and illegally obtained by the Debtors. Claimants case, unlike many others, is supported by the factual findings by a governmental agency, i.e. the State of Florida Office of Financial Regulation. Indeed, Debtors themselves signed off on the factual findings and paid a five thousand dollar ($5,000.00) fine to the State of Florida.

28. Some bankruptcy courts have imposed a constructive trust where as here, "the party in

whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealing with the other and remain [sic] from using his position to the other's detriment and his own advantage. See. In re Visiting Nurse Ass'n, 143 B.R. 633, 639 (Bankr. W.D. Penn 1992) The Court in the above case even after recognizing that constructive trusts are used "sparingly" in bankruptcy, imposed a constructive trust on certain funds to prevent unjust enrichment. Id. At 641.

29.     Claimants case is different from the other Subordination Statements objected to by the Trustee. Claimant Alvarez's case, as indicated above, is supported by the factual findings of the State of Florida Office of Financial Regulation, The Direction by the Director of the Office of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development to the Debtors, and the numerous intentional deceptive and deceitful communications by Debtors attached to Creditor's Claim and provided to Trustees attorneys. The Indenture Trustees for the Subordinated Trust Preferred Claims should not receive assets that were (a) the subject of a court Order to be settled exclusively with Creditor Alvarez, and (b) the proceeds of unjust enrichment passed on to the Trustee.

**POINT THREE. THE ACTIONS OF THE PLAN TRUSTEE IN REQUESTING AN ADVERSARIAL PROCEEDING BY CLAIMANT, CONTRARY TO THIS COURT'S ORDER, AND DISTRIBUTING ASSETS ACQUIRED BY DEBTORS UNLAWFULLY, VIOLATES ARTICLE III OF THE PLAN TRUST AGREEMENT**

30.     The Plan Trust was established, inter alia, for the purpose of liquidating the Debtors' assets for the benefit of resolving "Disputed Claims" (See Plan Trust Agreement, Article III, at 3.1). To that extent, the Plan Trustee should determine and satisfy any and all liabilities created or incurred or assumed by the Plan Trust (See Plan Trust Agreement, Article III, at 3.2 at q.).

31. By seeking to distribute monies wrongfully acquired by Debtors from Creditor Alvarez to other creditors, without first complying with this Court's Order of October 11, 2008 or in establishing the merits of the Alvarez Claim and the liability to the Trust of such a claim, the Plan Trustee, by distributing the disputed Alvarez share will in effect be commingling assets with the property of another person in violation of section 3.3 (d) of the Plan Trust Agreement.

32. Claimant respectfully requests that this Court request that the Plan Trustee place any disputed amount relating to the Alvarez Claim into an escrow account or constructive trust to be held in trust until the October 10, 2008 Order is complied with.

**WHEREFORE**, Claimant respectfully requests that this Court enter an Order (1) Finding that the Alvarez Subordination should be allowed or in the alternative, (2) Allowing Alvarez to correct any procedural defect set forth in his subordination request; (3) Finding that the Debtors have acted in bad faith in not settling the Alvarez claim as Ordered by this Court on October 10, 2008; (4) Given the findings by the State of Florida Office of Financial Regulation that the Debtors wrongfully obtained funds they were not entitled to, Direct the Trustee not to distribute funds relating to the Alvarez Claim, to the Indenture Trustees for the Subordinated Trust Preferred Claims, but to maintain said amount in escrow or constructive trust, until Debtors comply with this Courts Order dated October 10, 2008 to settle the claim in good faith and (5) declare that the Claimants claim is an administrative priority due to substantial misconduct both pre and during bankruptcy and (6) granting any further relief that the Court deems just and proper.

Dated: 2/25, 2011

Apopka, Florida

Respectfully submitted,

_____
Gil Quentin Alvarez
Pro-Se Creditor
542 Mount Argyll Court
Apopka, Florida 32712
407-889-4098
