IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :
                                                             :
AMERICAN HOME MORTGAGE                                        :
HOLDINGS, INC., a Delaware corporation, et al.,¹             :
                                                             :
        Debtors.                                             :
                                                             :
                                                             :
------------------------------------------------------------ x
```

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

**Ref. D.I. 8148, 9632 & 9759**

**PLAN TRUSTEE'S SUPPLEMENT TO (I) OBJECTION TO MOTION OF LAURA BEALL FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM AND (II) REPLY IN SUPPORT OF DEBTORS' FORTY-SECOND OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(B) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1 WITH RESPECT TO CLAIM OF LAURA BEALL**

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors and debtors-in-possession (the "Debtors"), files this supplement (the "Supplement") to (i) his objection [D.I. 9759] (the "Objection")[2] to the *Motion of Laura Beall for Allowance and Payment of Administrative Expense Claim* [D.I. 9632] (the "Motion") and (ii) the *Reply in Support of the Debtors' Forty-Second Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-*

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection.

*1* [D.I. 8148] (the "<u>Reply</u>").[3]  In support of this Supplement and related pleadings, the Plan

Trustee states as follows:

<b><u>PRELIMINARY STATEMENT</u></b>

1.      This Court granted stay relief for Ms. Beall to pursue, among other things,

the alleged post-petition actions described in the Motion; thereafter, Ms. Beall commenced –and

lost – her underlying Virginia Action, which was dismissed with prejudice.  Just as she should be

barred from pursuing the Beall Claim, Ms. Beall should be barred from bringing her Motion by

the doctrines of res judicata, claims splitting, judicial estoppel and/or waiver.  Ms. Beall was

provided the opportunity to select the forum in which to pursue her causes of action against the

Debtors, American Home Mortgage Servicing, Inc., AHMIT 2004-2 and Wells Fargo, which

included the precise facts that she now complains of.  She should not be provided yet another

bite at the apple at the expense of the Debtors' estates and creditors.

2.      The Court should also deny the Motion because Ms. Beall should not be

rewarded for her own choice to circumvent the loss mitigation procedure repeatedly offered to

her by the Debtors.  Ms. Beall was provided ample opportunity to submit the appropriate

documents to determine her loss mitigation options and refused to do so.

<b><u>RELEVANT FACTUAL BACKGROUND</u></b>

3.      In response to Ms. Beall's initial plea on May 29, 2007, for a loan

modification and/or foreclosure alternatives resulting from her inability to comply with the

payment terms, as evidenced by AHM SV's servicing log for Ms. Beall's loan, a copy of which

is attached hereto as <u>Exhibit B</u>, AHM SV sent Ms. Beall a loss mitigation package on May 31,

---

[3]      The Plan Trustee and opposing counsel have agreed to go forward with the legal arguments in connection with the underlying claim objection at the same time as the Motion for administrative expense because, among other things, the threshold issues of res judicata, claims splitting, judicial estoppel and/or waiver are equally applicable to both matters.  This Supplement, among other things, makes clear that these threshold arguments, which were addressed in the Reply and fully incorporated by reference herein, are applicable to Ms. Beall's Motion.  Additionally, this Supplement updates the caselaw in the Reply (which was filed on October 7, 2009) through citation to the affirmation by the Court of Appeals for the Third Circuit of the lower court's dismissal of a borrower's second case where the borrower's first case, which was dismissed with prejudice, included the relevant

2

2007 – over two months' prior to the Debtors' bankruptcy filing. Instead of providing the requested information, on June 5, 2007, Ms. Beall advised AHM SV that she would not be returning the loss mitigation package.

4.      On July 6, 2007, in response to a subsequent inquiry for loss mitigation, AHM SV again sent Ms. Beall a loss mitigation package. Thereafter, on July 9, 2007, Ms. Beall demanded a deed-in-lieu of foreclosure, yet refused to market the property as requested. Ms. Beall further stated that she intended to buy another house before her property went into foreclosure.

5.      On July 20, 2007, Ms. Beall acknowledged that she already had the loss mitigation package, but wanted information about conducting a short sale. On the same day, AHM SV again advised her that they could not address loss mitigation options until her loss mitigation package was received.

6.      On September 22, 2007, AHM faxed Ms. Beall a third loss mitigation package upon her request.

7.      On October 17, 2007, AHM SV again advised Ms. Beall that without filling out the loss mitigation package, AHM SV could not address loan modification.

8.      On October 18, 2007, Ms. Beall called regarding a potential loan modification. AHM SV followed-up the following day requesting a completed loss mitigation package. On October 22, 2007, Ms. Beall refused to return the loss mitigation package to AHM SV because she intended to do a short sale with the junior lienholder.

---

facts and limited causes of action. Taggart v. Chase Bank USA, N.A., 375 Fed. Appx. 266 (3d Cir. 2010). A copy of the Taggart decision is attached hereto for the Court's convenience as Exhibit A.

9.    On October 23, 2007, Ms. Beall conferenced AHM SV into a call with

Wells Fargo[4] regarding a potential loan modification.  Ms. Beall was again advised to send in a

loss mitigation package before a loan modification request could be sent to Wells Fargo for

approval.

10.    In connection with Ms. Beall's Rule 2004 Motion, Mr. Steve Dickman,

then-Senior Vice President of Loan Administration for AHM SV, expressly testified regarding

AHM SV's loan modification process:

> [Dickman]:  If [a borrower] wanted to request a loan modification,
> they would be sent a loss mitigation package which the customer
> would have to complete that package, and that package is
> information regarding the customer's current financial situation
> which the customer then has to return to the loan counselor or loss
> mitigation specialist so they can review that to determine what
> options might be available for that customer.
>
> ***
>
> AHM has some latitude in regards to dealing with individual
> borrowers.  Again, it's on an individual case basis and it depends
> on that customer's situation, but they have the ability to offer
> repayment plans or offer loss mitigation options.  Again, with the
> loss mitigation options that they can offer, they need approval by
> either the master servicer or the investor.

Hr'g Tr. [D.I. 1997], pp. 33-34.

11.    Specifically in connection with Ms. Beall's cross examination, Mr.

Dickman advised Ms. Beall of the general requirements of AHM SV, as servicer, to gather

---

[4]    Upon information and belief, Wells Fargo was brought into the call as servicer of Ms. Beall's second lien loan. On the call, Scott Ellerbee, an employee of AHM SV, advised Ms. Beall that Wells Fargo, as master servicer of her first lien loan, needed to approve any loan modification between AHM SV and Ms. Beall. The Plan Trustee has determined that AHM SV is identified as the master servicer in the governing documents, but acts as primary servicer with respect to the loans securitized in the AHMIT 2004-2 Trust. AHM SV was required to obtain approval of the loan modification from Wells Fargo, in its capacity as Indenture Trustee, following the receipt and analysis of the borrower's loss mitigation package. See Hr'g Tr. [D.I. 1997], pp 34-36, 48-49 (Mr. Dickman testifying that loss mitigation packages must be completed to allow the servicer to determine what options are available for that particular borrower given servicing guidelines and that such modifications must be approved by the master servicer *or investor* who rely on the information provided to them by the servicer).  Accordingly, despite the inadvertent error in terminology, AHM SV provided Ms. Beall with the names of all relevant parties in connection with her loan and was advised of her requirement to complete the loss mitigation package not only in her telephonic discussion with AHM SV, but before this Court. Moreover, this issue was expressly included in her Amended Complaint in the Virginia Action, which was dismissed with prejudice (Am. Compl. ¶¶ 29 and 41.).

information surrounding a potential loan modification before seeking approval from the

appropriate oversight party:

> [Dickman]: [I]n general nature, at the beginning of loss mitigation
> there is a standard procedure that we would follow which is along
> the lines of Fannie Mae guidelines in gathering that information.
> Once it is determined that a loan modification is the proper way to
> go forward, then that request has to go to the master servicer for
> their review and approval. Again, I do not know the details of
> each one of these specific servicing agreements, but those
> agreements would state out what the requirements of us would be
> needed to deliver to the master servicer or the investor to get that
> approved.

Hr'g Tr. [D.I. 1997], pp. 48:9-19. A copy of the relevant Fannie Mae guidelines (Section

601.01, effective as of September 30, 2006, and related provisions) are attached hereto as Exhibit

C.

   12.   On or about April 8, 2008, Ms. Beall filed her *Emergency Motion of Laura*

*Beall for an Order for Relief from the Automatic Stay Under Section 362 of the Bankruptcy Code*

[Docket No. 3585] (the "Stay Motion"), a copy of which is attached hereto as Exhibit D.

Pursuant to the Stay Motion, Ms. Beall requested relief from the automatic stay to permit her to

file a complaint in the United States District Court for the Eastern District of Virginia, Richmond

Division, against American Home Mortgage Corp. Specifically, Ms. Beall sought permission to

file a complaint alleging violations of Ms. Beall's rights under the Consumer Protection Act, 15

U.S.C. § 1601, et seq.; the Truth in Lending Act – Regulation Z of the Federal Reserve Board, 12

C.F.R. Part 226; the Real Estate Settlements Procedures Act, 12 U.S.C. § 2601 et seq., RICO

violations, unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation,

breach of contract, civil conspiracy, and violation of the Fair Debt Collections Act. (Stay

Motion, ¶ 1.)

   13.   Following this Court's grant of stay relief, a copy of the relevant order is

attached hereto as Exhibit E, Ms. Beall retained counsel and, on July 30, 2008, commenced her

Virginia Action. The statute of limitations applicable to certain of her underlying claims in the

Virginia Action expired prior to the Petition Date. Ms. Beall argued in the Virginia Action that the applicable statutes of limitation were tolled based on a pattern of fraudulent concealment – using the same alleged actions that she is arguing now supports her administrative expense claim.

14.    Her Amended Complaint, which is attached hereto as <u>Exhibit F</u>, expressly alleges as the crux of her fraudulent concealment allegation that "American Home Mortgage Securities LLC and American Home Mortgage Servicing, as servicer for AHMIT 2004-2 trust obfuscated the true owner of [sic] note or master servicer by failing to comply to repeated requests by Ms. Beall made pursuant to TILA 1641(f)(2)." (Am Compl., ¶ 41.) Even though Ms. Beall admitted at her Rule 2004 Hearing in October 2007 that she knew the owner of her loan was the AHMIT 2004-2 Trust (Hr'g Tr. [D.I. 1997], pp 48:20-24), she implied her knowledge didn't occur until months later, stating that "only after the intervention of AHM Bankruptcy trustee did AHM identify the owner of the loan and the AHMIT [2004]-2 trust in April 2008" (Am. Compl., ¶ 42). Ms. Beall also made allegations in her Amended Complaint regarding receipt of her loan file, stating that "AHM actively obstructed Ms. Beall by intentionally refusing to provide Ms. Beall's loan application until or about October 31, 2007 prevented Ms. Beall from ascertaining the type of loan she was given vis a vis the type she applied for." (Am. Compl., ¶ 78).

15.    The Amended Complaint was dismissed with prejudice. Judge Leonie M. Brinkema, of the United States District Court for the Eastern District of Virginia, found that Ms. Beall failed to allege facts or evidence that "would indicate some fraudulent covering of any of the relevant information" as to the action in which the statute of limitations had expired (i.e., Ms. Beall's claim under the Equal Credit Opportunity Act ("<u>ECOA</u>")). As a result, Judge Brinkema dismissed the ECOA claim as time-barred:

> [Judge Brinkema]:  And again, we're way beyond the scope of the
> complaint itself, but, I mean, on the fact of the complaint, the
> ECOA claim is time-barred.  It is.  And I don't think you can use a

complaint to argue a motion to – against a motion to dismiss. I just don't see the necessary allegations that would get you around the problem that that claim is time-barred, and therefore, I am going to grant the motion to dismiss. The ECOA count is out.

2/6/09 Virginia Action Hr'g Tr. p. 7:7-14, a copy of which is attached hereto as

Exhibit G.

16.    As to Ms. Beall's other causes of actions, Judge Brinkema addressed Ms.

Beall's experience in the industry as a real estate agent and the clear language of the loan

documents:

> [Judge Brinkema]: This clearly was an adjustable rate mortgage, with the first three years locked in. There was also an interest-only addendum which gave your client, I think, the first two years of the three-year lock-in period the benefit of just having to pay interest only. There was an absolute cap on the total interest that she would ever have to pay.
>
> The floating, the floating amount that would go into effect after the third year is clearly described, and your client is an experienced person in the real estate industry, who clearly knows what a 327 – or however you call it – mortgage is like. She would know what the – I think I'm mispronouncing it – the LIBOR index is, and a lot of these mortgages go to different types of indexes. That's actually, I think, a fairly low index compared to prime rate and some of the other ones.
>
> ***
>
> And, of course, as these defendants also point out, the real culprit, if there is a culprit here, would seem to be Eagle, the party that's not here. These defendants come in behind Eagle. They're the lenders. They're the people who now hold the note, and they were the lenders, but from what I can see, it was with Eagle that she was dealing continuously.
>
> Is there any evidence that you've got that your client ever dealt directly with any of the other defendants?
>
> [Beall's Counsel]: Only after the loan was completed, not – basically, every, every contact she had after the loan was closed was with American Home Mortgage.
>
> ***
>
> [Judge Brinkema]: I see allegations in here that make absolutely no sense, and I don't see any way in which as to these defendants

7

there's any basis to keep them in this case. … So I'm giving you one last chance to explain to me if there's anything that I'm missing here.

[Beall's Counsel]:  I don't have anything additional to offer at this time.

[Judge Brinkema]:  All right.  Well, then I'm going to go ahead and grant the motion [to dismiss with prejudice].

2/6/09 Virginia Action Hr'g Tr. pp. 8-11.

## SUPPLEMENTAL OBJECTION

**A.    Ms. Beall Was Provided Stay Relief to Litigate These Allegations in the Virginia Action, Which Was Dismissed With Prejudice**

17.    Notwithstanding the ruling in the Virginia Action, Ms. Beall seeks another bite at the apple by raising the same alleged facts regarding fraudulent concealment here.   Ms. Beall should be estopped from attempting to resurrect the same allegations included in her unsuccessful Virginia Action through the instant Motion.  Even if this Court were to accept Ms. Beall's argument – which the Plan Trustee contests - that the particular causes of action were not expressly denied with prejudice in the Virginia Action, the Court must still deny any award of damages because Ms. Beall was required to include those actions in her Virginia Action given (i) Ms. Beall's representations to this Court that such actions would be included in her underlying action when she obtained stay relief and (ii) the allegations here involve the same parties and arose out of the same transaction and occurrence or series of transactions as those alleged and dismissed in the Virginia Action.

18.    "The judicially created doctrine of res judicata rests upon public policy considerations which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent the harassment of parties. The doctrine prevents 'relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies.' Bill Greever Corp. v. Tazewell Nat'l Bank, 504 S.E.2d 854, 856 (Va.

1998). Here, Ms. Beall's administrative expense claim is essentially the same claim of fraudulent concealment as was brought in the Virginia Action.

19.    Even if Ms. Beall raises another cause of action not expressly dismissed with prejudice in the Virginia Action, such attempts are nothing more than improper claim splitting. E.g., Taggart v. Chase Bank USA, N.A., 375 Fed. Appx. 266 (3d Cir. 2010) (affirmation of dismissal of borrower's second action, which included new causes of action including RESPA and fair debt collecting, because such actions should have been included borrower's first action, which was dismissed with prejudice as time-barred); see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 273 Fed. Appx. 256, 265 (4th Cir. 2008) (The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.) (internal citations omitted).

20.    In a claim splitting situation, the second suit will be barred if the claim involves the same parties and arises out of the same transaction and occurrence or series of transactions as the first claim. See generally Bill Greever Corp. v. Tazewell Nat'l Bank, 504 S.E.2d 854, 856 (Va. 1998) (Courts have imposed a rule prohibiting claim-splitting based on public policy considerations similar to those underlying the doctrine of res judicata: avoiding a multiplicity of suits, protecting against vexatious litigation, and avoiding the costs and expenses associated with numerous suits on the same cause of action.). Applying the doctrine of res judicata enforces the rule against claim-splitting by barring further litigation of claims which could have been litigated between the parties in an earlier proceeding. Taggart, 375 Fed. Appx. at 268.

21.    Here, the facts and actions alleged in the Amended Complaint involved the same parties and arise out of the same transaction – the origination and service of a single loan to Ms. Beall - as those now being asserted in the Motion. Compare Am. Compl., ¶20 ("American Home Mortgage refused to disclose the master servicer or true owner of Ms. Beall's

9

note…") and ¶ 42 (citing AHM's unwillingness to comply with Ms. Beall's Qualified RESPA

Written Request to turn over Ms. Beall's loan file, and her subsequent "requirement" to petition

this bankruptcy court and AHM's "failure" to identify the owner of the loan until April 2008)

with Motion, ¶ 7 (citation of post-petition efforts including attempting to require the Debtors to

disclose the identity of the master servicer of her loan) and ¶ 8 (alleging Ms. Beall's appearances

in this Court and communications with Debtors' counsel regarding ownership of her loan).

     22.    Because each of these facts are *exactly* those facts raised by Ms. Beall

now, they undeniably relate to the same transaction and/occurrence with Ms. Beall.  Ms. Beall

should have brought all of her claims in the Virginia Action and should not now be permitted to

split her claims between the Virginia Action and this Court.  Taggart v. Chase Bank USA, N.A.,

375 Fed. Appx. at 268, citing CoreStates Bankr. N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d

Cir. 1999) ("The doctrine of res judicata 'gives dispositive effect to a prior judgment if a

particular issue, although not litigated, *could have been raised* in the earlier proceeding.'")

(emphasis in original).

     23.    Ms. Beall also had an obligation to bring these causes of action in the

Virginia Action given her Stay Relief Motion and related order by this Court incorporated these

causes of action.  This Court granted stay relief to Ms. Beall particularly to permit her to initiate

claims against the Debtors "as defined in the [Stay Relief] Motion."  (Stay Order, ¶ 2.)  In her

Motion, Ms. Beall stated that the complaint was to include, among other things, violations of

TILA and RESPA, fraud, negligent misrepresentation and civil conspiracy.  (Stay Relief Motion,

¶ 1), and Ms. Beall specifically referenced the post-petition actions regarding the Debtors'

identification of the owner of Ms. Beall's loan (Stay Relief Motion, ¶¶ 6, 7, 9-11) and alleged

post-petition violations of RESPA, including purported failures to provide Ms. Beall with her

loan file (Id., ¶ 8).

     24.    To the extent Ms. Beall argues that her alleged failure to bring such causes

of action in the Virginia Action allows her to litigate them in this Court, Ms. Beall should be

denied such an "opportunity" on grounds of judicial estoppel. "[A]bsent any good explanation, a party should not be allowed to gain an advantage by litigation in one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003). Courts have applied the doctrine of judicial estoppel when: (i) a party's assertion is irreconcilably inconsistent with a position it asserted in a prior proceeding, (ii) the party changed its position in bad faith, and (iii) no lesser sanction would adequately remedy the damage done by the party's misconduct. Krystal, 337 F.3d at 319 (internal citations omitted). Here, Ms. Beall expressly represented to this Court that her yet-to-be drafted Complaint would include the facts and causes of action now raised herein (Stay Relief Motion, ¶¶ 1, 6, 7, 8 & 10). Ms. Beall was granted stay relief from this Court – requiring the Debtors to litigate outside of their bankruptcy process – and, only after Ms. Beall lost her Virginia Action, did she reappear before this Court. Requiring the Debtors' estates to incur further costs to relitigate with Ms. Beall prejudices all other creditors, and no sanction lesser than full denial of Ms. Beall's claims would remedy her misconduct.

25.    Finally, given this Court's order for Ms. Beall to pursue these claims outside the bankruptcy forum and her purported failure to do so, Ms. Beall has voluntarily waived such actions. See 28 Am. Jur. 2d *Estoppel and Waiver* § 160, at 845-46 (1966) ("Mere silence . . . is no waiver *unless there is an obligation to speak*.") (emphasis added)

**B.    Ms. Beall Should Not Be Rewarded for Her Refusal to Cooperate with AHM SV to Address Her Loan Modification Requests**

26.    Inherent in Ms. Beall's request for administrative expenses is that AHM SV hindered Ms. Beall's ability to obtain a loan modification or other loss mitigation possibilities and, as a result, Ms. Beall was required to expend over 100 hours address the potential foreclosure of her home. The AHM SV's servicing log, reveals that Ms. Beall consistently refused to cooperate with AHM SV in loss mitigation efforts by failing to provide AHM SV with a loss mitigation package – the fundamental document used to determine the

appropriateness of a loan modification. (Hr'g Tr. [D.I. 1997], pp. 34-36, 48-49) (Mr. Dickman testifying that loss mitigation packages must be completed to allow the servicer to determine what options are available for that particular borrower given servicing guidelines and that such modifications must be approved by the master servicer or investor who rely on the information provided to them by the servicer). Indeed, AHM SV consistently advised Ms. Beall that a completed loss mitigation package was needed to review her file for potential loan modifications and provided Ms. Beall with a copy of the package to complete on no less than three separate occasions.

27.    Accordingly, to the extent that Ms. Beall expended significant (or any) time determining the identity of the owner or master servicer of her loan or otherwise pursuing loss mitigation, the expenditure was the result of Ms. Beall's own refusals to cooperate with AHM SV. See, e.g., Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l, 593 F. Supp. 2d 840, 847 (E.D. Va. 2008) (plaintiff can be denied relief if the plaintiff has been "guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on.")

*Remainder of Page Left Blank By Intention*

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Objection, the Plan

Trustee requests that this Court deny the Motion in its entirety.

Dated: March 4, 2011
Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*