## Exhibit C

Relevant Fannie Mae Servicing Guidelines



# Fannie Mae

# 2010 Servicing Guide Update

# Part VII and Part VIII

April 2010

**Fannie Mae Copyright Notice**

(1) © 1994-2010 Fannie Mae. No part of this *Servicing Guide* may be reproduced in any form or by any means without Fannie Mae's prior written permission, except as may be provided herein or unless otherwise permitted by law. Limited permission to reproduce this *Servicing Guide* in print, in whole or in part, and limited permission to distribute electronically parts of this *Servicing Guide*, are granted to Fannie Mae–approved servicers strictly for their own use in the servicing of mortgage loans for Fannie Mae. Fannie Mae may revoke these limited permissions by written notice to any or all Fannie Mae–approved lenders.

Trademarks are the property of their respective owners.

A full version of the *Servicing Guide* is available for purchase on eFannieMae.com (the "Print Version"). *Parts VII* and *VIII* of the *Servicing Guide* are also available for downloading and printing on eFannieMae.com (the "PDF Version"). If there should ever be a difference between (a) the *Servicing Guide* as it appears on the AllRegs® Web site, (b) the Print Version of the *Servicing Guide* published by Fannie Mae, or (c) the PDF Version of the *Servicing Guide* available on eFannieMae.com, the difference is an error. In such event, the Print Version of the *Servicing Guide* published by Fannie Mae shall be deemed the correct authoritative version with the exception of *Parts VII* and *VIII*, for which the PDF Version shall be deemed the correct authoritative version. Material discrepancies between the versions, identified by Fannie Mae or otherwise brought to our attention, may be addressed by Announcement.

(2) Disclaimer: The *Fannie Mae Single Family Servicing Guide* is posted on the AllRegs Web site of Mortgage Resource Center, Inc. ("MRC"), which posts the *Servicing Guide* under license from and with the express permission of Fannie Mae. MRC is the exclusive third-party electronic publisher of the *Servicing Guide*. Fannie Mae makes no representation or warranty regarding availability, features or functionality of the AllRegs Web site.

If you access the *Servicing Guide* through the AllRegs Web site, you acknowledge and agree (individually and on behalf of the entity for which you are accessing the *Servicing Guide*) that you (and the entity for which you are accessing the *Servicing Guide*) may not make any claim against Fannie Mae or MRC for any errors, and (i) neither Fannie Mae nor MRC shall be liable to you (or the entity for which you are accessing the *Servicing Guide*) for any losses or damages whatsoever resulting directly or indirectly from any errors and (ii) MRC expressly disclaims any warranty as to the results to be obtained by you (or the entity for which you are accessing the *Servicing Guide*) from use of the AllRegs Web site, and MRC shall not be liable to you (or the entity for which you are accessing the *Servicing Guide*) for any damages arising directly or indirectly out of the use of the AllRegs Web site by you (or the entity for which you are accessing the *Servicing Guide*).

April 28, 2010

## VII. Delinquency Management and Default Prevention

Introduction ................................................................................................. 700-1

**Chapter 1. Servicing Standards** .............................................................. 701-1
Section 101 Written Procedures ....................................................................... 701-1
Section 102 Quality Assurance Program for Delinquency and Default Prevention ...................... 701-1
Section 103 Staffing and Training .................................................................... 701-2

**Chapter 2. Collection Procedures** ......................................................... 702-1
Section 201 Inbound Call Coverage .................................................................. 702-1
Section 202 Outbound Call Attempts ................................................................ 702-2
Section 203 Letters ............................................................................................ 702-2
Section 204 Late Notices ................................................................................... 702-4
Section 205 Payment Change Notification ....................................................... 702-5
Section 206 Face-to-Face Interviews ................................................................ 702-5
Section 207 Contact With Junior Lienholders ................................................. 702-5
Section 208 Contact With First-Lien Mortgage Loan Servicer ...................... 702-5
Section 209 Notifying Credit Repositories ....................................................... 702-5
Exhibit 1: Outbound Call Attempts Guidelines ............................................... 702-7
Exhibit 2: Letters and Notices Guidelines ....................................................... 702-9
Exhibit 3: Other Contact Types and Acceleration Guidelines ........................ 702-11
Exhibit 4: Payment Change Notification Guidelines ....................................... 702-13
Exhibit 5: Major Credit Repositories ............................................................... 702-15

**Chapter 3. Delinquency Prevention** ...................................................... 703-1
Section 301 Assessing Late Charges ................................................................ 703-2
Section 302 Accepting Partial Payments ......................................................... 703-2
Section 303 Using an Attorney to Collect Payments ....................................... 703-3
Section 304 Collecting Under an Assignment of Rents ................................... 703-3
Section 305 Reapplying Principal Prepayments ............................................... 703-4
Section 306 Listing Property for Sale/Rental .................................................. 703-5
Section 307 Referring to Counseling Agencies ................................................ 703-5
Section 308 Offering Early Delinquency Counseling ...................................... 703-5
  Section 308.01 Choosing the Counselor .......................................................... 703-6
  Section 308.02 Objectives of Counseling ......................................................... 703-7
  Section 308.03 Laying the Groundwork ........................................................... 703-8
  Section 308.04 The Counseling Session ........................................................... 703-9
Section 309 Third-Party Notification for Mortgage Loans Subject to Resale Restrictions or
  Community Land Trust Ground Lease ............................................................ 703-10
Exhibit 1: Borrower's Authorization for Counseling ....................................... 703-11

**Preface**

Contents

April 28, 2010

**Chapter 4. Special Relief Measures**..................................................................................**704-1**
  Section 401 Fannie Mae's Workout Hierarchy ........................................................ 704-3
  Section 402 Temporary Indulgence........................................................................ 704-3
  Section 403 Forbearance....................................................................................... 704-4
    Section 403.01 Payment Reduction Plan .......................................................... 704-9
    Section 403.02 PRP Eligibility ....................................................................... 704-10
    Section 403.03 PRP Process ........................................................................... 704-10
    Section 403.04 PRP Workflow ....................................................................... 704-12
    Section 403.05 PRP Incentive Fee.................................................................. 704-13
    Section 403.06 Use of Suspense Accounts and Application of Payments ............ 704-13
    Section 403.07 Reporting Requirements .......................................................... 704-13
    Section 403.08 Mortgage Insurer Approval..................................................... 704-13
  Section 404 Repayment Plan ................................................................................ 704-14
    Section 404.01 Repayment Plan Incentive Fee................................................. 704-17
  Section 405 Military Indulgence............................................................................ 704-18
  Section 406 Disaster Relief................................................................................... 704-19

**Chapter 5. Bankruptcy Proceedings** ...........................................................................**705-1**
  Section 501 Selection of Bankruptcy Attorneys and Avoiding Delays in Case Processing........... 705-1
    Section 501.01 Fannie Mae–Retained Attorneys............................................... 705-2
    Section 501.02 Servicer-Retained Bankruptcy Attorneys ................................. 705-4
    Section 501.03 Allowable Attorney Fees ......................................................... 705-5
    Section 501.04 Reimbursement of Expenses .................................................... 705-6
  Section 502 Bankruptcy Management Process........................................................ 705-7
    Section 502.01 Confirming Bankruptcy Information .......................................... 705-8
    Section 502.02 Establishing Documentation Files ............................................ 705-9
    Section 502.03 Referring Case to Bankruptcy Attorney .................................... 705-9
    Section 502.04 Suspending Debt Collection Efforts .......................................... 705-13
    Section 502.05 Bankruptcy Notices and Filing a Notice of Appearance ................ 705-13
    Section 502.06 Obtaining and Reviewing Statements and Schedules....................... 705-14
    Section 502.07 Reviewing Bankruptcy Reorganization Plans .............................. 705-15
    Section 502.08 Preparing and Filing a Proof of Claim....................................... 705-16
    Section 502.09 Attending Initial Meeting of Creditors ...................................... 705-17
    Section 502.10 Monitoring Borrower Payments and Critical Dates........................ 705-18
    Section 502.11 Foreclosure Prevention Opportunities ....................................... 705-18
    Section 502.12 Delays in the Bankruptcy Process.............................................. 705-21
  Section 503 Managing Chapter 7 Bankruptcies ..................................................... 705-22
    Section 503.01 Current Mortgage Loan........................................................... 705-23
    Section 503.02 Delinquent Mortgage Loan ...................................................... 705-23

April 28, 2010

Section 504 Managing Chapter 11 Bankruptcies ....................................................705-24
    Section 504.01 The Reorganization Plan ..........................................................705-24
    Section 504.02 Delinquent Payments .............................................................705-25
    Section 504.03 Servicing after Confirmation of Plan .....................................705-26
Section 505 Managing Chapter 12 Bankruptcies ....................................................705-29
Section 506 Managing Chapter 13 Bankruptcies ....................................................705-30
    Section 506.01 The Reorganization Plan ..........................................................705-30
    Section 506.02 Pre-Petition and Post-Petition Payments ...............................705-31
Section 507 Special Circumstance Bankruptcies.....................................................705-35
    Section 507.01 Abusive Filers .........................................................................705-35
    Section 507.02 Individuals with Fractional Interests in a Security Property....705-38
    Section 507.03 Cramdowns of the Mortgage Debt..........................................705-38
    Section 507.04 Mortgage Loans Secured by Investment Properties ................705-45
    Section 507.05 Balloon Mortgage Loans.........................................................705-45
    Section 507.06 Multiple Fannie Mae Mortgage Loans ...................................705-46
    Section 507.07 Post-Foreclosure Filings .........................................................705-47
    Section 507.08 Cross-Border Insolvency Proceedings.....................................705-48
Exhibit 1: Expected Servicer/Attorney Interactions and Required Documents .........705-49
Exhibit 2: Mortgage Loan Status Data for Bankruptcy Referrals ............................705-53
Exhibit 3: Allowable Bankruptcy Attorney Fees......................................................705-57
Exhibit 4: Electronic Public Access Providers .........................................................705-59
Exhibit 5: Bankruptcy Referral and Completion Timelines ......................................705-61

**Chapter 6. Foreclosure Prevention Alternatives...........................................................706-1**
Section 601 Determining a Borrower's Eligibility for Foreclosure Prevention Alternatives..........706-3
    Section 601.01 Requesting Preliminary Financial Information.........................706-4
    Section 601.02 Using HomeSaver Solutions Network ....................................706-5
Section 602 Mortgage Modifications .......................................................................706-6
    Section 602.01 Modifying Government Mortgage Loans .................................706-8
    Section 602.02 Modifying Conventional Mortgage Loans...............................706-10
    Section 602.03 Reporting to Fannie Mae ........................................................706-16
Section 603 Mortgage Assumptions .........................................................................706-17
Section 604 Preforeclosure Sales.............................................................................706-19
    Section 604.01 Identifying Potential Candidates..............................................706-20
    Section 604.02 Contacting Selected Borrowers...............................................706-20
    Section 604.03 Determining Market Value of Property ...................................706-23
    Section 604.04 Discussing Sale With the Mortgage Insurer ...........................706-23
    Section 604.05 Requesting Fannie Mae's Approval.........................................706-23
    Section 604.06 Mortgage Insurance Claims ....................................................706-24
    Section 604.07 Accounting and Reporting ......................................................706-25

**Preface**

Contents

Section 605 Assignments to the Insurer or Guarantor ........................................706-26
    Section 605.01 FHA Mortgage Loans ..........................................................706-26
    Section 605.02 FHA Title I Loans ................................................................706-27
    Section 605.03 HUD Section 184 Mortgage Loans .....................................706-28
    Section 605.04 VA Mortgage Loans ............................................................706-28
    Section 605.05 Conventional Mortgage Loans ...........................................706-29
Section 606 Deeds-in-Lieu of Foreclosure ........................................................706-30
    Section 606.01 Deed-for-Lease Program ....................................................706-33
Section 607 VA No-Bid Buydowns .....................................................................706-37
Section 608 Second-Lien Mortgage Loan Charge-Offs ....................................706-38
Section 609 HomeSaver Advance ......................................................................706-39
    Section 609.01 Eligibility Criteria ...............................................................706-39
    Section 609.02 Servicing Options ...............................................................706-42
    Section 609.03 Legal Requirements and HSA Loan Documents ................706-43
    Section 609.04 HSA Required Note Provisions ..........................................706-43
    Section 609.05 Correction of HSA Funding Errors ....................................706-45
    Section 609.06 Servicer Responsibilities ....................................................706-46
    Section 609.07 Submitting HSA Loans to Fannie Mae ...............................706-47
    Section 609.08 Fannie Mae's Response to Submitted Cases ......................706-47
    Section 609.09 Delivery of Documents and Funding ..................................706-48
    Section 609.10 Servicer's Receipt of Funds ...............................................706-49
    Section 609.11 Additional Servicer Responsibilities...................................706-49
    Section 609.12 Third-Party Servicer of HSA Notes ...................................706-50
    Section 609.13 HSA Note Repurchase and Cancellation Policies .............706-50
Section 610 Home Affordable Modification Program ........................................706-53
    Section 610.01 HAMP Eligibility................................................................706-55
    Section 610.02 HAMP Documents..............................................................706-59
    Section 610.03 Underwriting .......................................................................706-60
    Section 610.04 Modification Process ..........................................................706-80
    Section 610.05 Monthly Statements ............................................................706-99
    Section 610.06 Redefault and Loss of Good Standing ................................706-99
    Section 610.07 Servicer Delegation, Duties, and Responsibilities..............706-99
    Section 610.08 Reporting Requirements ....................................................706-101
    Section 610.09 Fees and Compensation .....................................................706-106
    Section 610.10 FHA HOPE for Homeowners ............................................706-110
Exhibit 1: NPV Versioning Requirements...........................................................706-111
Exhibit 2: Model Clauses for Borrower Notices .................................................706-115

April 28, 2010

**Chapter 7. Delinquency Status Reporting** ..................................................................**707-1**
   Section 701 Delinquency Status and "Reason for Delinquency" Codes ......................... 707-1
   Section 702 Reporting Monthly Mortgage Loan Status .................................................. 707-2
   Section 703 Transmitting Status Information .................................................................. 707-4
   Exhibit 1: Delinquency Status Codes .............................................................................. 707-5
   Exhibit 2: "Reason for Delinquency" Codes ................................................................... 707-9
   Exhibit 3: Delinquency Status Code File Layout ........................................................... 707-13

**VIII. Foreclosures, Conveyances and Claims, and Acquired Properties**

**Introduction** ..........................................................................................................................**800-1**

**Chapter 1. Foreclosures** ......................................................................................................**801-1**
   Section 101 Routine vs. Nonroutine Litigation .............................................................. 801-2
   Section 102 Initiation of Foreclosure Proceedings ......................................................... 801-3
      Section 102.01 Effect of Servicemembers Civil Relief Act ...................................... 801-5
      Section 102.02 Effect of Environmental Hazards ..................................................... 801-5
      Section 102.03 FHA Mortgage Loans ....................................................................... 801-7
      Section 102.04 Conventional and Rural Development First Mortgage Loans ........... 801-7
      Section 102.05 Conventional Second Mortgage Loans .............................................. 801-8
      Section 102.06 VA Mortgage Loans ......................................................................... 801-11
   Section 103 Reinstatements ............................................................................................. 801-11
   Section 104 Referral to Foreclosure Attorney/Trustee .................................................. 801-13
      Section 104.01 Fannie Mae–Retained Attorneys ...................................................... 801-14
      Section 104.02 Special Rules for Arizona, California, and Washington Foreclosures ........... 801-16
      Section 104.03 Servicer-Retained Attorneys/Trustees and Special Rules for Nevada .............. 801-17
      Section 104.04 Attorney (or Trustee) Fees ................................................................ 801-18
      Section 104.05 Allowable Time Frames for Completing Foreclosure ....................... 801-25
      Section 104.06 Filing IRS Form 1099—MISC .......................................................... 801-26
   Section 105 Conduct of Foreclosure Proceedings .......................................................... 801-26
      Section 105.01 Servicer-Initiated Temporary Suspension of Proceedings ................ 801-29
      Section 105.02 Communication Regarding Workout Agreements .............................. 801-30
      Section 105.03 Bankruptcy Referrals ......................................................................... 801-31
      Section 105.04 Bidding Instructions ........................................................................... 801-31
      Section 105.05 Suspension or Reduction of Redemption Period ............................... 801-35
      Section 105.06 Title Evidence .................................................................................... 801-36
      Section 105.07 Pursuit of Deficiency Judgment ....................................................... 801-36
   Section 106 Property Maintenance and Management ..................................................... 801-37
   Section 107 Eviction Proceedings .................................................................................. 801-39
   Section 108 Expenses During Foreclosure Process ........................................................ 801-40

**Preface**

Contents

April 28, 2010

Section 108.01 Delinquent Tax Late Fees or Penalties ............................................ 801-41
Section 108.02 Claims Shortfall for Government Mortgage Loans ........................... 801-41
Section 108.03 Other Reimbursable Expenses ......................................................... 801-41
Section 108.04 Requests for Reimbursement .......................................................... 801-43
Section 109 Accounting for Rental Income ............................................................. 801-44
Section 110 Third-Party Sales ................................................................................ 801-44
Section 111 Hazard Insurance Coverage ................................................................. 801-46
Section 111.01 FHA Mortgage Loans .................................................................... 801-47
Section 111.02 VA Mortgage Loans ...................................................................... 801-47
Section 111.03 Conventional First Mortgage Loans ............................................... 801-48
Section 111.04 Conventional Second Mortgage Loans ........................................... 801-49
Section 111.05 Rural Development Mortgage Loans ............................................... 801-51
Section 112 Flood Insurance Coverage ................................................................... 801-51
Section 113 Notifying Credit Bureaus ..................................................................... 801-56
Section 114 Notice of Property Acquisition ............................................................ 801-56
Section 114.01 Submitting the *REOgram* .............................................................. 801-57
Section 114.02 Reporting Action Codes ................................................................. 801-60
Section 115 Notifying IRS About Abandonments or Acquisitions ........................... 801-61
Section 115.01 Preparing IRS Form 1099-A ........................................................... 801-62
Section 115.02 Reporting via Magnetic Media ....................................................... 801-63
Section 115.03 Reporting via Manually Prepared Reports ....................................... 801-63
Section 116 Notifying IRS About Cancellations of Indebtedness ............................. 801-65
Section 116.01 Determining When a Debt Is Cancelled .......................................... 801-65
Section 116.02 Preparing IRS Form 1099-C ........................................................... 801-66
Section 116.03 Exceptions to IRS Form 1099-C Reporting ..................................... 801-68
Section 116.04 Coordination with Reporting Abandonments or Acquisitions ........... 801-68
Section 116.05 Reporting via Magnetic Media ....................................................... 801-68
Exhibit 1: Mortgage Loan Status Data for Foreclosure Proceedings ........................ 801-69
Exhibit 2: Expected Servicer/Attorney (or Trustee) Interaction ............................... 801-73
Exhibit 3: Attorney's and Trustee's Fees ................................................................. 801-75
Exhibit 4: Daily Journal Corporation Newspapers for Trustee's Sale Publications .... 801-79

**Chapter 2. Conveyances and Claims ......................................................................... 802-1**
Section 201 Conveyance Documents ....................................................................... 802-2
Section 201.01 Foreclosure Conducted in Fannie Mae's Name ............................... 802-3
Section 201.02 Foreclosure Conducted in Servicer's Name ..................................... 802-3
Section 202 Conveying the Property ........................................................................ 802-4
Section 202.01 FHA Mortgage Loans .................................................................... 802-5
Section 202.02 VA Mortgage Loans ...................................................................... 802-5
Section 202.03 Insured Conventional Mortgage Loans ........................................... 802-5

April 28, 2010

Section 203 Filing Claims for FHA Mortgage Loans.................................................802-5
Section 204 Filing Claims for FHA Coinsured Mortgage Loans ...................................802-7
Section 205 Filing Claims for FHA Title I Loans .....................................................802-8
Section 206 Filing Claims for VA Mortgage Loans...................................................802-9
Section 207 Filing Claims for Rural Development Mortgage Loans ...........................802-10
Section 208 Filing Claims for Conventional Mortgage Loans ...................................802-11
Section 209 Filing Claims for HUD Section 184 Mortgage Loans..............................802-14
Section 210 Settlements for MBS Regular Servicing Option Pool Mortgage Loans .................802-16

**Chapter 3. Acquired Properties................................................................803-1**
Section 301 Underwriting/Servicing Review Files ...................................................803-1
Section 301.01 Underwriting Review File.......................................................803-2
Section 301.02 Servicing Review File............................................................803-3
Section 302 Property Management.........................................................................803-4
Section 302.01 Servicer's Responsibilities.....................................................803-4
Section 302.02 Broker's, Agent's, or Property Management Company's Responsibilities.........803-5
Section 303 Consideration of Purchase Offers .......................................................803-5
Section 304 Reimbursement for Expenses ..............................................................803-5
Section 305 Filing IRS Form 1099-MISC................................................................803-6
Section 306 Excess Proceeds from a Foreclosure Sale for Resale Restricted Properties................803-6
Exhibit 1: Servicing Review File...........................................................................803-7

April 28, 2010

If a servicer learns about the issuance of a lead-based paint citation, obtains other evidence of lead-based paint law violations, or becomes aware of threatened or pending lead-based paint litigation for any mortgage loan secured by a one-unit investment property or a two- to four-unit property for which it is considering a foreclosure prevention alternative, the servicer must send Fannie Mae a copy of any documentation it has related to lead-based paint law violations or threatened or pending lead-based paint litigation. The servicer must notify Fannie Mae about the current value of the property, the amount of Fannie Mae's outstanding debt, and the number of children under eight years of age who are residing in the property (giving the exact age of each child). If the security property is located in Massachusetts, the servicer must conduct an actual search to determine whether there are any outstanding lead-based paint citations against the property or the property owner before it recommends a foreclosure prevention alternative to Fannie Mae.

Fannie Mae's workout hierarchy outlined in the introduction to this *Part* recommends the preferred order of consideration for the use of special relief measures and foreclosure prevention options to resolve a delinquency.

**Section 601 Determining a Borrower's Eligibility for Foreclosure Prevention Alternatives (06/01/09)**

Fannie Mae believes that it is very important for the servicer to establish an open line of communication with a borrower early in the delinquency resolution process since a borrower generally will be more forthcoming after he or she has had several contacts with the servicer's personnel. This is one of the reasons Fannie Mae requires the servicer to include in the first foreclosure prevention solicitation letter it sends to a borrower between the 35th and 45th day of delinquency (as discussed in *Section 203, Letters (01/01/11)*) information about the different options that are available to help the borrower cure the delinquency, including HAMP.

The servicer also must make sure that the borrower understands that offers of foreclosure prevention alternatives are just that—offers—and that he or she is under no obligation to agree to one of the offers. A servicer must handle workouts that involve the borrower's relinquishing ownership of the property (assumptions, preforeclosure sales, deeds-in-lieu of foreclosure) carefully to ensure that the borrower's rights are appropriately protected. It also is important that both the servicer and the borrower understand that Fannie Mae's foreclosure prevention workout alternatives are designed to assist a borrower who is experiencing a financial

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 601                                                             April 28, 2010

hardship—particularly (but not exclusively) one whose property is in an economically distressed area. Fannie Mae expects a borrower who has the ability to meet his or her financial obligations to continue to do so. In addition, Fannie Mae requires a borrower who agrees to a foreclosure prevention workout alternative to contribute some funds to reduce Fannie Mae's loss on the mortgage loan if he or she has the financial ability to do so.

Section 601.01
Requesting Preliminary
Financial Information
(09/30/06)

A servicer often will include in its foreclosure prevention solicitation letter a request for the borrower to submit preliminary financial information. Collecting a minimal amount of financial information when foreclosure prevention alternatives are first discussed with a borrower will help the servicer get a general understanding about which alternative appears to be the most appropriate for the borrower. The servicer has the option of collecting the financial information through a customized financial form on the servicer's letterhead or through the *Borrower's Financial Statement* (Form 1020 or 1020(S)). The Form 1020/1020(S) is a one-page financial information form that is designed to collect the minimal amount of financial information needed to evaluate whether to offer a foreclosure prevention alternative to a borrower. If a servicer's customized financial form is used, the form must include all information required on Form 1020/1020(S).

Each borrower who signs the servicer's customized financial form or Form 1020/1020(S) will need to provide some personal identifying information (name, address, telephone number(s), and Social Security number; the number of persons living on the property; and the number of dependents living on the property). In addition, the borrowers must jointly respond to questions about the property (whether it is listed for sale and, if so, the agent's name and telephone number), the number of cars owned, whether a credit counseling service has been contacted, the combined monthly income (from both wages and other identified sources), the estimated value of certain types of assets, the monthly payment and balance due for certain types of liabilities, and the reason for the delinquency. As supporting documentation, each borrower must attach to the servicer's customized financial form or Form 1020/1020(S) his or her most recent paystub (or, for a self-employed borrower, the most recent federal income tax return).

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 601

April 28, 2010

The servicer must use the information from the servicer's customized financial form or Form 1020/1020(S), along with a credit report for each borrower, to determine the total assets, liabilities, monthly income, and monthly expenses. In some cases, it may be necessary to gather additional information to support the preliminary financial information or there may be instances in which the documentation Fannie Mae generally requires will not apply. A servicer must contact its Servicing Consultant, Portfolio Manager, or Fannie Mae's National Servicing Organization's Servicing Solutions Center at (888) 326-6435 to discuss any special documentation that may be needed to adequately support the financial information provided by the borrower(s). After the total financial picture has been developed for the borrowers, the servicer should be able to reach a preliminary conclusion about which foreclosure prevention workout alternative(s) will be effective. At this point, the servicer must send Fannie Mae information about the mortgage loan through HSSN (as discussed in *Section 601.02, Using HomeSaver Solutions Network (01/31/03)*).

**Section 601.02
Using HomeSaver
Solutions Network
(01/31/03)**

HSSN enables a servicer to access Fannie Mae's Web site and electronically submit its foreclosure prevention cases for conventional mortgage loans to Fannie Mae for consideration. The servicer can provide the facts for any given delinquency and the borrower's financial data, and the application will recommend which workout options are most appropriate to the particular circumstances. After logging in, all the servicer needs to do is to enter and save the data for each foreclosure prevention case or request for reclassification that it wants to report, and the information will be automatically available to Fannie Mae. (The servicer can save any information that it has gathered to the network as a draft if its recommendation is not yet ready for Fannie Mae's consideration.) Once an approved foreclosure prevention alternative has been finalized (or closed), the servicer can report that information to Fannie Mae through HSSN. A servicer also may use HSSN to produce loan-level status reports for all of the mortgage loans that it has submitted to Fannie Mae through HSSN.

To use HSSN, a servicer must first complete and submit certain registration forms to Fannie Mae. The forms are available from eFannieMae.com. To obtain forms from eFannieMae.com, a servicer must select the "Single Family," then the "Default Management" function, and then under "Technology Tools and Applications," select "*HomeSaver Solutions Network*," then "HSSN Registration." The servicer should return

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602                                                          April 28, 2010

the required completed forms to Fannie Mae by faxing them to (703) 833-5680 or by mailing them to Fannie Mae; Technology Registration; Mail Stop 9H-202; 11600 American Dream Way; Reston, VA 20176; email scanned forms to product_rollout_fax@fanniemae.com. Fannie Mae will send the servicer notification of the applicable userid and password approximately one week after receiving the completed forms. As soon as the servicer receives Fannie Mae's notification, it may access HSSN (using the same path it used to obtain the registration materials, but choosing the "Log in to HSSN via Asset Management Network" option instead of the "HSSN Registration" option).

**Section 602
Mortgage Modifications
(01/01/09)**

There may be times when the only way to provide relief to a deserving borrower is to change some of the terms of a mortgage loan. A servicer must consider modification of a mortgage loan that is delinquent or for which default is reasonably foreseeable (imminent) under circumstances similar to the following:

- a borrower who was granted military indulgence cannot cure his or her delinquency within three months after being discharged from the military service;

- a borrower who has experienced a permanent or long-term reduction in income is unable to continue making the mortgage payments;

- the terms of the mortgage loan (such as those imposed by a nonstandard adjustable-rate mortgage loan) contribute toward a greater risk of borrower default; or

- any other situation in which changing the terms of the mortgage loan would cure the present delinquency, avoid acquisition of the property, or prevent future delinquencies.

The servicer of a *whole mortgage loan or a participation pool mortgage loan that Fannie Mae holds in its portfolio* may recommend modifications that extend the term of the mortgage loan, provide for reamortization of the outstanding debt, change adjustable-rate mortgage loans to fixed-rate mortgage loans (using the current market interest rate for the term of the mortgage loan), allow an adjustable-rate mortgage loan to retain the adjustable rate features as provided in the original mortgage loan documents, capitalize delinquent interest (and costs, if allowed by

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602

April 28, 2010

state law), reduce the existing interest rate to the current market rate, use below-market interest rates, temporarily reduce the interest rates of fixed-rate mortgage loans in which the reduced interest rate increases in a series of steps to a fixed, current market interest rate, or increase the interest rate of adjustable-rate mortgage loans in a series of steps to a fixed, current market interest rate. Fannie Mae's approval is required for any of the foregoing.

A change in the terms of a mortgage loan may not become effective while it remains in its MBS pool. This applies to all mortgage loans in MBS pools, including all Pooled from Portfolio mortgage loans purchased as whole loans for Fannie Mae's portfolio that Fannie Mae subsequently securitizes. However, if the mortgage loan has been in a continuous state of delinquency for four consecutive monthly payment due dates (or at least eight consecutive payment due dates in the case of a biweekly mortgage loan) without a full cure of the delinquency during that period, then the mortgage loan may be modified after it is purchased from the MBS pool (in the case of a regular servicing option mortgage loan) or through Fannie Mae's standard reclassification procedures for delinquent special servicing option mortgage loans. However, performing MBS mortgage loans are ineligible for purchase from the related MBS pool for the purpose of modifying the mortgage loan.

There is a limited exception whereby an MBS mortgage loan with a pool issue date on or after January 1, 2009, can be removed from an MBS pool after the mortgage loan has been delinquent for at least one monthly payment, if the delinquency has not been fully cured on or before the next payment date (for example, 30-days delinquent). While there is an expectation that the standard removal requirements after a continuous state of delinquency for four consecutive monthly payment due dates without a full cure of the delinquency during that period will apply in most cases, Fannie Mae recognizes that there may be extraordinary circumstances relating to a particular mortgage loan that may justify removing the mortgage loan from an MBS pool to offer a foreclosure prevention alternative before the mortgage loan is in a continuous state of delinquency for at least four consecutive monthly payment due dates (or at least eight consecutive payment due dates in the case of a biweekly mortgage loan) without a full cure of the delinquency during that period.

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602

Therefore, on an exception basis, servicers may seek Fannie Mae's prior written consent to remove an MBS mortgage loan with a pool issue date on or after January 1, 2009 after the mortgage loan has been as little as one monthly payment delinquent, if the delinquency has not been fully cured on or before the next payment date (for example, 30 days delinquent), if the servicer has determined that a loan modification is the appropriate foreclosure prevention option and that the extraordinary circumstances relating to the mortgage loan justify the earlier removal of the mortgage loan from the MBS pool to facilitate the loan modification.

Except as otherwise specified, MBS mortgage loans that are current (or have less than four full monthly payments past due, measured by the last paid installment) are ineligible for purchase or reclassification for the purpose of modifying the mortgage loan. Purchase or reclassification to modify an MBS mortgage loan is only permitted to facilitate a loan modification of an MBS mortgage loan that meets the applicable foreclosure prevention criteria and is subject to the timing rules stated above.

Regular servicing option MBS mortgage loans, and shared-risk special servicing option MBS mortgage loans for which the servicer's shared risk liability has not expired, that have been removed from an MBS pool, and have been modified are not eligible for redelivery to Fannie Mae unless Fannie Mae agrees otherwise.

The servicer must prepare the *Agreement for Modification or Extension of Mortgage* (Form 181), *Loan Modification Agreement (Fixed Interest Rate)* (Form 3179), *Loan Modification Agreement (Adjustable Interest Rate)* (Form 3161), or *Loan Modification Agreement (Step Interest Rate)* (Form 3162).

**Section 602.01
Modifying Government
Mortgage Loans
(05/01/10)**

A change to the terms of a government mortgage loan may not become effective while it remains in its MBS pool. However, if the mortgage loan has been in a continuous state of delinquency for four consecutive monthly payment due dates (or at least eight consecutive payment due dates in the case of a biweekly mortgage loan) without a full cure of the delinquency during that period, then the mortgage loan may be modified after it is purchased from its related MBS pool (as a repurchase in the case of a regular servicing option mortgage or through Fannie Mae's standard reclassification procedures for delinquent special servicing option

April 28, 2010

mortgage loans). MBS mortgage loans that are current (or have been in a continuous state of delinquency for less than four consecutive monthly payment due dates without a full cure of the delinquency during that period) are ineligible for purchase from the MBS pool for the purposes of modifying the mortgage loan. Regular servicing option MBS mortgage loans, and shared-risk special servicing option MBS mortgage loans for which the servicer's shared risk liability has not expired, that have been removed from an MBS pool and have been modified are not eligible for redelivery to Fannie Mae unless Fannie Mae agrees otherwise. The following procedures apply to all government mortgage loans in Fannie Mae's portfolio, including those that were purchased from an MBS pool. Fannie Mae's prior approval—and that of the mortgage insurer or guarantor—is required for all proposals to change the terms of a government mortgage loan. Before recommending a modification or extension to Fannie Mae, the servicer must first obtain the approval of FHA, HUD, VA, or the RD, using any documentation the mortgage insurer or guarantor requires. After all applicable approvals are obtained, the servicer must prepare the *Agreement for Modification or Extension of Mortgage* (Form 181), have the form signed by the borrower(s) and any co-makers or endorsers of the note, and have its authorized representative sign the completed form to indicate the servicer's approval of the modification or extension. The servicer must submit the information pertaining to the modification through HSSN, and the executed Form 181 must be uploaded into the case in HSSN.

If Fannie Mae identifies any discrepancies between the information entered into HSSN and Fannie Mae's investor reporting system, Fannie Mae will work with the servicer to identify the proper corrective action required to resolve the issue(s). If the servicer determines that the data entered into HSSN was incorrect, the servicer must cancel the case in HSSN, correct the data, and resubmit the corrected case via HSSN. If the Loan Activity Record (LAR) data was incorrect, the servicer must submit a corrected LAR. After the servicer has completed the appropriate corrective action, the servicer must notify Fannie Mae. Fannie Mae will then resolve the error in its investor reporting system. The servicer can confirm that the investor reporting system accurately applied the modified terms after the error is resolved.

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602

- If the servicer or MERS is the mortgagee of record—or if Fannie Mae is the mortgagee of record and Fannie Mae has given the servicer a limited power of attorney that allows it to execute this type of modification on Fannie Mae's behalf—the servicer may execute the Agreement and, if applicable, submit it for recordation. The servicer must send a copy of the executed Agreement to the borrower and to the mortgage insurer or guarantor, submit the original executed (and recorded, if applicable) Form 181 to the appropriate custodian, and place a copy in the servicer's individual mortgage loan file.

- If Fannie Mae is the mortgagee of record, but Fannie Mae has **not** given the servicer a limited power of attorney that allows it to execute this type of modification on Fannie Mae's behalf, the servicer must send the original Agreement to Fannie Mae for execution (using the following address: Fannie Mae; Attn: Vendor Oversight; 13150 Worldgate Drive; Herndon, VA 20170). The servicer must send the Agreement under cover of a transmittal letter that specifies the type of action being requested, indicates whether the Agreement will need to be recorded in the public records after it is executed, and provides an address to which the executed Agreement should be returned.

Fannie Mae will execute the Agreement and return it to the servicer (regardless of whether the executed Agreement needs to be recorded). If the Agreement needs to be recorded, the servicer must submit it for recordation. The servicer must send a copy of the executed Agreement to the borrower and to the mortgage insurer or guarantor, submit the original executed (and recorded, if applicable) Form 181 to the document custodian, and place a copy in the servicer's individual mortgage loan file.

Section 602.02
Modifying Conventional
Mortgage Loans
(04/21/09)

Fannie Mae's prior approval—and that of the mortgage insurer, if applicable—is required for all proposals to change the terms of a conventional first- or second-lien mortgage loan. Fannie Mae does not permit mortgage modifications while a mortgage loan is in an MBS pool (including Pooled from Portfolio mortgage loans). When Fannie Mae's mortgage loan is in the second-lien position and both the first- and second-lien mortgage loans need to be modified, it may be more appropriate to consider consolidating and refinancing the total debt; the servicer must submit to Fannie Mae for prior approval any proposals to consolidate and refinance the existing debt in lieu of modifying the outstanding mortgage loans.

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602

April 28, 2010

Before Fannie Mae agrees to modify a delinquent conventional mortgage loan, Fannie Mae requires the borrower to make a cash contribution if financially feasible toward reducing the delinquency.

The servicer must ensure that its communications with the borrower clearly convey that the loan modification will not be binding, enforceable, or effective unless and until the borrower delivers the executed loan modification agreement and any required payments to the servicer and the servicer signs the loan modification agreement. This applies to all mortgage loans in MBS pools, including all Pooled from Portfolio mortgage loans purchased as whole loans for Fannie Mae's portfolio that it subsequently securitizes. A modification of any mortgage loan in an MBS pool can only become effective after it has been removed from the MBS pool.

The servicer may charge the borrower the actual out-of-pocket expenses for a credit report, any required title bringdown, or other documented expenses. The servicer must ensure that any costs charged to the borrower are permitted under the terms of the note, security instrument, and applicable law. If the borrower is unable to pay all or a portion of the servicer's processing fee, Fannie Mae will consider reimbursing the servicer for the difference between what the borrower can pay and the amount of the servicer's fee or, for a portfolio mortgage loan, capitalizing all or part of the fee as part of the modified mortgage loan amount. (The servicer must advise Fannie Mae of the collection of its fee in the next monthly activity report it transmits through Fannie Mae's investor reporting system.)

The servicer does not need to obtain the mortgage insurer's approval before it recommends a modification to Fannie Mae, nor does it need to submit the borrower's actual application to Fannie Mae. Instead, the servicer should transmit general summary information from the application, a description of the borrower's financial circumstances, a property market value analysis, if obtained, and its proposed recommendation to Fannie Mae through HSSN (as discussed in *Section 601.02, Using HomeSaver Solutions Network (01/31/03)*).

Mortgage modifications must be signed by an authorized representative of the servicer and must reflect the actual date of signature by the servicer's representative. Signature by the servicer's authorized representative must

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602

not occur until after the mortgage loan has been removed from the MBS pool and either reclassified as a Fannie Mae portfolio mortgage loan or purchased by the servicer.

Although a modification may not become effective until after the mortgage loan has been removed from the MBS pool, the servicer can begin the process leading up to a loan modification prior to the removal of the mortgage loan from the MBS pool. For example, during the period prior to the removal of a mortgage loan from an MBS pool, a servicer may analyze the borrower's suitability for a loan modification and may negotiate with the borrower regarding the terms of a loan modification.

The servicer may agree to the terms of a modification and accept payments from the borrower in anticipation of a modification becoming effective after the removal of the mortgage loan from an MBS pool. In accordance with *Part III, Section 102.06*, and, if permitted by the applicable mortgage loan documents, servicers may accept and hold as "unapplied funds" (held in a T&I custodial account) amounts deposited pending a proposed modification that is in negotiation and anticipated to be approved after removal of the mortgage loan from an MBS pool. Once the request for a loan modification is approved, the appropriate entry is made on Fannie Mae systems and the servicer has signed and dated the modification, the servicer immediately must apply any amounts held as unapplied funds as one or more scheduled payments and remit the funds to Fannie Mae. If the request is not approved, the servicer immediately must apply the unapplied funds to any scheduled contractual payments that are due and contact the borrower to determine what should be done with any remaining funds. Servicers must have appropriate policies, procedures, and controls to ensure compliance with Fannie Mae's requirements regarding loan modifications.

In reaching a decision about the borrower's application, Fannie Mae will work with the servicer to develop modified mortgage loan terms that address the borrower's financial ability to repay the mortgage debt. As early as possible, the servicer must make sure that the borrower is aware of what to expect (and when), including his or her responsibility for remitting any required cash contribution before the modification can be finalized. Once Fannie Mae approves the modification, a letter including terms and conditions of Fannie Mae's decision will be available to the

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602                                                                                    April 28, 2010

not occur until after the mortgage loan has been removed from the MBS pool and either reclassified as a Fannie Mae portfolio mortgage loan or purchased by the servicer.

Although a modification may not become effective until after the mortgage loan has been removed from the MBS pool, the servicer can begin the process leading up to a loan modification prior to the removal of the mortgage loan from the MBS pool. For example, during the period prior to the removal of a mortgage loan from an MBS pool, a servicer may analyze the borrower's suitability for a loan modification and may negotiate with the borrower regarding the terms of a loan modification.

The servicer may agree to the terms of a modification and accept payments from the borrower in anticipation of a modification becoming effective after the removal of the mortgage loan from an MBS pool. In accordance with *Part III, Section 102.06*, and, if permitted by the applicable mortgage loan documents, servicers may accept and hold as "unapplied funds" (held in a T&I custodial account) amounts deposited pending a proposed modification that is in negotiation and anticipated to be approved after removal of the mortgage loan from an MBS pool. Once the request for a loan modification is approved, the appropriate entry is made on Fannie Mae systems and the servicer has signed and dated the modification, the servicer immediately must apply any amounts held as unapplied funds as one or more scheduled payments and remit the funds to Fannie Mae. If the request is not approved, the servicer immediately must apply the unapplied funds to any scheduled contractual payments that are due and contact the borrower to determine what should be done with any remaining funds. Servicers must have appropriate policies, procedures, and controls to ensure compliance with Fannie Mae's requirements regarding loan modifications.

In reaching a decision about the borrower's application, Fannie Mae will work with the servicer to develop modified mortgage loan terms that address the borrower's financial ability to repay the mortgage debt. As early as possible, the servicer must make sure that the borrower is aware of what to expect (and when), including his or her responsibility for remitting any required cash contribution before the modification can be finalized. Once Fannie Mae approves the modification, a letter including terms and conditions of Fannie Mae's decision will be available to the

April 28, 2010

servicer through HSSN. After receiving this notification, the servicer must request the mortgage insurer's approval (if required).

The servicer must then prepare a *Loan Modification Agreement (Fixed Interest Rate)* (Form 3179), *Loan Modification Agreement (Adjustable Interest Rate)* (Form 3161), or *Loan Modification Agreement (Step Interest Rate)* (Form 3162) to document the agreed-upon terms of the modification. If the servicer (or MERS) is the mortgagee of record (or if Fannie Mae is the mortgagee of record and has given the servicer a limited power of attorney that allows it to execute loan modification agreements on Fannie Mae's behalf), the servicer must execute the Loan Modification Agreement, have the executed Agreement recorded (if required by local law or Fannie Mae), and send the Agreement to the document custodian.

If Fannie Mae's designated document custodian is the custodian, the documents must be annotated with the Fannie Mae loan number and, if applicable, the MERS Mortgage Identification Number, and mailed to The Bank of New York Mellon Trust Company, NA; Attn: Additional Custody Documents; 5730 Katella Ave.; Cypress, CA 90630. If Fannie Mae is the mortgagee of record, but Fannie Mae has not given the servicer a limited power of attorney that allows it to execute loan modification agreements on Fannie Mae's behalf, the servicer must send the Loan Modification Agreement to Fannie Mae for execution. Documents submitted to Fannie Mae for execution must be identified by the Fannie Mae loan number and sent under cover of a letter that provides any special instructions related to execution of the documents and indicates the name and address to which the executed documents should be returned. The documents must be mailed to Fannie Mae; Attn: Vendor Oversight; 13150 Worldgate Drive; Herndon, VA 20170.

For all mortgage loans that are modified, the servicer must ensure that the modified mortgage loan retains its first-lien position and is fully enforceable. The Loan Modification Agreement must be executed by the borrower(s) and, in the following circumstances, must be in recordable form:

- if state or local law requires a modification agreement be recorded to be enforceable;

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602                                                                                April 28, 2010

- if the property is located in the State of New York or Cuyahoga County, Ohio;

- if the amount capitalized is greater than $50,000 (aggregate capitalized amount of all modifications of the mortgage loan completed under Fannie Mae's mortgage modification alternatives);

- if the final interest rate on the modified mortgage loan is greater than the pre-modified interest rate in effect on the mortgage loan;

- if the remaining term on the mortgage loan is less than or equal to ten years and the servicer is extending the term of the mortgage loan more than ten years beyond the original maturity date; or

- if the servicer's practice for modifying mortgage loans in the servicer's portfolio is to create modification agreements in recordable form.

In addition, to retain the first-lien position, servicers must:

- ensure all real estate taxes and assessments that could become a first lien are current, especially those for manufactured homes taxed as personal property, personal property taxes, condominium/HOA fees, utility assessments (such as water bills), ground rent and other assessments;

- obtain a title endorsement or similar title insurance product issued by a title insurance company if the amount capitalized is greater than $50,000 (aggregate capitalized amount of all modifications of the mortgage loan completed under Fannie Mae's mortgage modification alternatives); or if the final interest rate on the modified mortgage loan is greater than the interest rate in effect prior to modification of the mortgage loan; and

- record the executed Agreement if (1) state or local law requires the modification agreement be recorded to be enforceable; (2) the property is located in Cuyahoga County, Ohio; (3) the amount capitalized is greater than $50,000 (aggregate capitalized amount of all modifications of the mortgage loan completed under Fannie Mae's modification alternatives); (4) the final interest rate on the modified mortgage loan is greater than the interest rate in effect prior to

modification of the mortgage loan; or (5) the remaining term on the mortgage loan is less than or equal to ten years and the servicer is extending the term of the mortgage loan more than ten years beyond the original maturity date.

If the mortgage loan is for a manufactured home, and the lien was created, evidenced, or perfected by collateral documents that are not recorded in the land records (see *Part I, Section 404.01* regarding collateral documents), the servicer also must take such action as may be necessary (including any amendment, recording, and/or filing that may be required) to ensure that the collateral documents reflect the modification, if necessary, in order to preserve Fannie Mae's lien status for the entire amount owed. After a modification is approved, the servicer must adjust the mortgage account as follows:

- Add any amounts to be capitalized for a portfolio mortgage loan to the UPB of the mortgage loan as of the date specified in the agreement. Usually, the capitalization date is one month before the new modified payment will be due. (The servicer may request reimbursement from Fannie Mae when any of its costs are capitalized.)

- Revise the borrower's payment records to provide for collection of the modified installment.

- Change the servicing fee if the mortgage loan was modified to reflect a different amortization type. For a portfolio mortgage loan, the new servicing fee must be the lower of the fee the servicer was receiving before the modification and 0.375 percent (if the modified mortgage loan has a fixed interest rate) or 0.5 percent (if the modified mortgage loan has an adjustable interest rate). For an MBS mortgage loan that is removed from the pool in order to modify its terms, the new servicing fee must be either 0.25 percent (if the modified mortgage loan has a fixed interest rate or has an adjustable interest rate under an ARM Plan 750, 751, 975, 1029, 1423, 1437, 2726, 2728, 2729, 3225, 3227, or 3228) or 0.375 percent (if the modified mortgage loan has an adjustable interest rate under any other ARM plan). In either instance, if the mortgage loan has lender-purchased mortgage insurance coverage that is paid for through annual renewals, the new servicing fee also must include a factor for the amount of the mortgage insurance renewal premium.

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 602                                                                          April 28, 2010

- Apply any funds that the borrower deposited with the servicer as a
  condition of the modification or that the mortgage insurer contributed
  in connection with the modification. Amounts due for repayment of
  principal, interest, or advances must be remitted to Fannie Mae
  promptly. The remaining funds may be used to clear any advances
  made by the servicer or to credit the borrower's escrow deposit
  account.

**Section 602.03
Reporting to Fannie Mae
(03/18/10)**

The servicer must report the modification of any mortgage loan in the first
delinquency status information it transmits to Fannie Mae after Fannie
Mae approves the modification.

Existing monthly Loan Activity Record (LAR) reporting requirements for
Fannie Mae servicers will not change for a mortgage loan that has been
modified. Servicers must continue to report the standard LAR format for
loan payment by the 3rd business day and for payoff activity by the 2nd
business day of each month for the prior month's activity (for example,
payoff reporting to be received by April 2nd will contain March activity).
Servicers must report post-modification UPB once the modification is
closed in HSSN (for example, if a modification is closed on March 25, the
post-modification UPB must be reported on the April 3rd LAR). If the
servicer submits a LAR to report the post-modification UPB before the
case is closed in HSSN, an exception will occur.

If the pre-modification UPB or the pre-modification last paid installment
(LPI) reported in HSSN for the closed modification does not agree with
the pre-modification UPB or LPI in Fannie Mae's investor reporting
system, the loan modification will not be processed in Fannie Mae's
investor reporting system until the discrepancy is resolved.

Special procedures are required for MBS mortgage loans that were in
special servicing option pools. The servicer will need to repurchase the
mortgage loan from the MBS pool, but it should not change the terms of
the mortgage loan in Fannie Mae's records until after Fannie Mae
reclassifies it as an actual/actual remittance type mortgage loan. However,
if Fannie Mae does not include the mortgage loan in its list of mortgage
loans due for reclassification before the month in which the modified
terms become effective, the servicer should contact its Servicing
Consultant, Portfolio Manager, or Fannie Mae's National Servicing
Organization's Servicing Solutions Center at (888) 326-6435 to request

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

Section 606                                                                                    April 28, 2010

**Section 606
Deeds-in-Lieu of
Foreclosure (01/31/03)**

The servicer may consider accepting a deed-in-lieu of foreclosure from a borrower who is experiencing a permanent financial hardship if other relief measures or foreclosure prevention alternatives are not feasible. However, the servicer must make every effort to collect some portion of the delinquent installments from the borrower in order to reduce Fannie Mae's loss. The servicer must require the borrower to submit a letter to request acceptance of a deed-in-lieu of foreclosure, to provide documentation related to his or her financial hardship, and to acknowledge that acceptance of a deed-in-lieu of foreclosure would be an accommodation to him or her.

To assist Fannie Mae in evaluating the condition and value of the property, Fannie Mae requires the servicer to obtain an appraisal. (Fannie Mae will reimburse the servicer for the required appraisal report.) If the property inspections reveal that the property has been poorly maintained, needs major repairs, or has structural or foundation problems, Fannie Mae may permit the borrower to discontinue efforts to sell the property since there will be little likelihood of getting a good purchase offer quickly.

The servicer of a seriously delinquent first-lien mortgage loan may recommend that Fannie Mae accept a voluntary deed-in-lieu of foreclosure from the borrower if

- the servicer determines that the pursuit of a deficiency judgment is not practical or warranted;

- the property has been listed for sale at a market value for three months or more without a reasonable sales offer;

- there may be legal impediments to pursuing foreclosure;

- acceptance of the deed-in-lieu of foreclosure will enable Fannie Mae to acquire the property earlier than it would under a foreclosure action;

- the mortgage insurer or guarantor has agreed to the acceptance of a deed-in-lieu of foreclosure;

- the borrower is not paid to deed the property over to Fannie Mae (although Fannie Mae might approve a small payment in special circumstances);

**Delinquency
Management and Default
Prevention**

Foreclosure Prevention
Alternatives

April 28, 2010                                                                 Section 606

- the borrower can convey acceptable marketable title (a title insurance policy will be required);

- the property is vacant (unless eligible for the Deed-for-Lease program or the mortgage insurer or guarantor has agreed to accept an occupied property);

- the property is not subject to liens (subordinate or otherwise) held by others, judgments, or attachments (although Fannie Mae might agree to pay off a lien in special circumstances); and

- the borrower agrees to assign and transfer to Fannie Mae any rents if the property is rented, and the servicer agrees to collect any rental income.

The servicer of a seriously delinquent second-lien mortgage loan must coordinate with the first-lien mortgage loan servicer regarding any proposed action related to the acceptance of a deed-in-lieu of foreclosure. It must determine the status of the first-lien mortgage loan, the intentions of the first-lien mortgage loan servicer, and the possibility of a mutually arranged disposition. The servicer must also order an Owner and Encumbrance Report to ensure that there are no other outstanding liens. If Fannie Mae does not have an interest in the first-lien mortgage loan, the servicer must include with its recommendation an analysis of the first-lien mortgage loan servicer's intentions and the possibility of recovery on the second-lien mortgage loan. If Fannie Mae has an interest in both the first- and second-lien mortgage loans, the servicer may recommend that Fannie Mae accept a voluntary deed-in-lieu of foreclosure from the borrower if the eligibility criteria specified above for a first-lien mortgage loan are met.

The servicer must obtain Fannie Mae's prior approval to accept any offer of a deed-in-lieu of foreclosure. To request Fannie Mae's approval, the servicer must transmit a description of the borrower's financial circumstances, a property valuation, general summary information about satisfaction of the eligibility criteria for deed-in-lieu of foreclosure, an indication of whether the borrower can make a cash contribution to reduce Fannie Mae's loss (or is willing to execute a promissory note for the amount of any required contribution), and its recommendation to Fannie Mae through HSSN.