```
                  IN THE UNITED STATES BANKRUPTCY COURT
                     FOR THE DISTRICT OF DELAWARE

IN RE:                        )      Chapter 11
                              )
                              )
AMERICAN HOME MORTGAGE        )      Case No. 07-11047(CSS)
HOLDINGS, INC., a Delaware    )
Corporation, et al.,          )      Courtroom 6
                              )      824 Market Street
         Debtors.             )      Wilmington, Delaware
                              )
                              )      March 9, 2011
                              )      3:00 p.m.
```

                    TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
              UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Plan Trustee:          Young, Conaway, Stargatt &
                           Taylor, LLP
                           BY:  SEAN M. BEACH, ESQ.
                           BY:  MARGARET GREECHER, ESQ.
                           BY:  MICHAEL NEIBURG, ESQ.
                           The Brandywine Building
                           1000 West Street, 17th Floor
                           Wilmington, DE  19801
                           (302) 571-6600


                           Hahn & Hessen, LLP
                           BY:  EDWARD SCHNITZER, ESQ.
                           BY:  CHRISTOPHER JARVINEN, ESQ.
                           488 Madison Avenue
                           New York, NY  10022
                           (212) 478-7200

ECRO:                      LESLIE MURIN

Transcription Service:     DIAZ DATA SERVICES
                           331 Schuylkill Street
                           Harrisburg, Pennsylvania 17110
                           (717) 233-6664
                           www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service

```
1   APPEARANCES:
    (Continued)
2
    For Claimant, Laura Beall:     Loizides, PA
3                                  BY:   CHRISTOPHER LOIZIDES,
                                   ESQ.
4                                  1225 King Street, Suite 800
                                   Wilmington, DE  19801
5                                  (302) 654-0248

6   For Bank of America/           Edwards, Angell, Palmer &
    Countrywide:                   Dodge
7                                  BY:   STUART BROWN, ESQ.
                                   750 Lexington Avenue
8                                  New York, NY  10022
                                   (212) 308-4411
9
                                   Potter, Anderson & Corroon LLP
10                                 BY:   R. STEPHEN MCNEILL, ESQ.
                                   Hercules Plaza
11                                 1313 North Market Street
                                   Wilmington, DE  19801
12                                 (302) 984-6000

13  For Triad Guaranty Ins:        Cozen O'Connor
                                   BY:   BARRY M. KLAYMAN, ESQ.
14                                 Chase Manhattan Centre
                                   1201 North Market Street
15                                 Wilmington, DE  19801
                                   (302) 295-2000
16
    For Certain Saturation         Saul Ewing, LLP
17  Trusts:                        BY:   MARK MINUTI, ESQUIRE
                                   222 Delaware Avenue
18                                 Wilmington, DE  19899
                                   (302) 421-6800
19
    For Freddie Mac:               Reed Smith
20                                 BY:   CORY FALGOWSKI, ESQ.
                                   1201 Market Street
21                                 Suite 1500
                                   Wilmington, DE  19801
22                                 (302) 778-7500

23  For Debtor:                    Zolfo Cooper
                                   BY:   SCOTT MARTINEZ, ESQ.
24                                 Grace Building, 41st Floor
                                   1114 Avenue of the Americas
25                                 New York, NY  10036
                                   (212) 561-4000
```

1    TELEPHONIC APPEARANCES:

2    For Ambac Assurance Corp.:    Patterson, Belknap, Webb
                                   & Tyler
3                                  BY:  LIA BROOKS, ESQ.
                                   1133 Avenue of the Americas
4                                  New York, NY  10036
                                   (212) 336-2000
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  WILMINGTON, DELAWARE, WEDNESDAY, MARCH 9, 2011, 3:09 A.M.

2          THE CLERK:  All rise.

3          THE COURT:  Please be seated.

4          MS. GREECHER:  Good afternoon, Your Honor.

5  Margaret Whiteman Greecher from Young Conaway on behalf of

6  the plan trustee in the American Home Mortgage bankruptcy

7  case.

8          THE COURT:  Okay.

9          MS. GREECHER:  Your Honor, the first twenty-three

10  matters have been adjourned or resolved which brings us to

11  Matter No. 24 which is the debtors' forty-fourth omnibus

12  objection to claims.  This was submitted under CNO, however,

13  an order has not been docketed yet and we wanted to see if

14  Your Honor had any questions with respect to that specific

15  objection.

16          THE COURT:  Well, you filed a COC for Impact,

17  right?  That's all you filed?

18          MS. GREECHER:  Your Honor, I'm going to turn it

19  over to Mr. Neiburg from my office to address your question.

20          THE COURT:  And there is confusion, sorry.

21          MR. NEIBURG:  Good afternoon, Your Honor.

22  Michael Neiburg from Young, Conaway, Stargatt & Taylor on

23  behalf of the plan trustee.

24          I think what happened with respect to Agenda Item

25  No. 24, Your Honor is we filed -- 30 days ago, we did a re-

1  notice of certain of the claims that had been adjourned from

2  the forty-fourth omnibus objection.

3           THE COURT:  Um-hum.

4           MR. NEIBURG:  After the re-notice was filed, we

5  received an informal comment from Impact Funding Corp.,

6  where they just wanted some specific language to them.  So

7  we removed them from the proposed order that was submitted

8  with the re-notice.  And they're the ones that were going to

9  file a cert for a specific order to them under certification

10 in the near future.  And we filed a certification with a

11 revised order which was as filed, but reflects the

12 adjournment as to Impact.  I have a copy of that if you'd

13 like to see that order, Your Honor.

14           THE COURT:  You have the certification?

15           MR. NEIBURG:  Yeah, I do, Your Honor.

16           THE COURT:  Let me see it.

17           MR. NEIBURG:  Sure.  May I approach, Your Honor?

18           THE COURT:  Yeah.  It's on my desk, would you go

19 get it?  Let's skip over that for right now.  I misread the

20 agenda.

21           MR. NEIBURG:  Okay.

22           THE COURT:  So I assumed all I would be getting

23 is a certification in connection with Impact so I'm going to

24 need a minute to figure out what's going on so --

25           MR. NEIBURG:  No problem.

1              THE COURT:  -- we'll come back to that one.

2              MR. NEIBURG:  Item No. 25, Your Honor, was the

3  CNO on the debtor -- or the plan trust seventy-second

4  omnibus objection.  I understand an order was entered.

5              THE COURT:  Um-hum, I sent it up.

6              MR. NEIBURG:  Thank you, Your Honor.  The next

7  item is 26 and we filed a certification of counsel with

8  respect to revised proposed order on the plan trust seventy-

9  third omnibus objection, Your Honor.

10             THE COURT:  Yeah, I signed that earlier today.

11             MR. NEIBURG:  Okay.  Thank you, Your Honor.

12             THE COURT:  I'll have to look at this at a break.

13             MR. NEIBURG:  No problem, Your Honor.  I would

14  like to cede the podium back to my colleague, Ms. Whiteman

15  Greecher.

16             THE COURT:  Okay.

17             MS. GREECHER:  Your Honor, the next matter is

18  Matter No. 27.  It's the debtors' forty-six omnibus

19  substantive objection.  I did speak or left a message with

20  chambers earlier this morning.  I had contact with Ms.

21  Beall's counsel who's indicated that they are withdrawing

22  the Beall claim with prejudice subject to certain limited

23  reservations of rights.  Those reservations of rights are

24  that she reserves her rights with respect to non-debtor

25  third parties.  That she reserves her rights to name the

1   debtors nominally in accordance with the terms of the plan

2   under Article 17 of the plan.  And that she would reserve

3   her rights with respect to Matter No. 28 which is her admin

4   claim.  The debtor -- or excuse me, the plan trustee would

5   obviously then reserve their rights with respect to all

6   three of those reservations.

7            THE COURT:  All right.

8            MS. GREECHER:  The --

9            THE COURT:  Mr. Loizides is here?

10           MR. LOIZIDES:  Yes, good afternoon, Your Honor.

11  For the record, Chris Loizides for Laura Beall.

12           We have agreed to withdraw the unsecured, the

13  pre-petition unsecured claim only.  And it's just subject to

14  a general reservation of rights that would include those

15  that have been put on the record.

16           The only thing I'd want to specifically mention

17  is that we would be reserving our rights in addition to

18  assert any claims against the servicer which is -- or I'm

19  not sure technically what it is, it's a non-debtor entity to

20  purchase the debtors' assets.  I believe it's AHMSI.  It is

21  not a debtor entity, but that would include reserving any

22  claims for which that entity might be liable either directly

23  or as a successor through, excuse me, 363(o) or otherwise.

24  And we would also be reserving all defenses.  And the

25  debtors obviously are generally going to be reserving their

1  rights as well.

2         THE COURT:  All right.

3         MS. GREECHER:  Your Honor, perhaps I may need

4  further clarification because --

5         THE COURT:  I don't.  As far as I'm concerned,

6  the only thing remaining at this point on behalf of Mrs.

7  Beall is Item 28, the admin claim.  All other claims are

8  withdrawn against the debtor and all rights against non-

9  debtor entities are reserved.

10         MS. GREECHER:  And this is withdrawn with

11  prejudice.  Is that correct?

12         THE COURT:  Yes.

13         MS. GREECHER:  Thank you.

14         MR. LOIZIDES:  Your Honor, I don't -- I'm not

15  aware that there are any other claims against the debtor.  I

16  don't mean to keep --

17         THE COURT:  Well, the bar date is past, Mr.

18  Loizides.

19         MR. LOIZIDES:  Yes, it has.  I understand.  I

20  mean, I --

21         THE COURT:  And your client lost in Court and

22  that -- there's a final judgment in place.

23         MR. LOIZIDES:  I understand all of that which is

24  one reason without making an admission, my client disagreed

25  to this.  So, but yeah, I mean, in a sense that is correct.

1        THE COURT:  Well, that's my finding.

2        MS. GREECHER:  Thank you, Your Honor.  That does

3 lead us to -- well, we submit a certification of counsel and

4 a proposed form of order.  We'll work with Mr. Loizides to

5 attempt to draft a consensual form of order?

6        THE COURT:  Do you have a form of order?

7        MS. GREECHER:  I changed -- no.

8        THE COURT:  We don't need a form of order.

9        MS. GREECHER:  Yes, Your Honor.

10        THE COURT:  It's done.

11        MS. GREECHER:  Matter No. 28 is the

12 administrative expense claim motion of Ms. Beall.  We do

13 have oral argument and potentially evidentiary hearing on --

14 in connection with that.  Given the number of attorneys here

15 for other matters that we believe are shorter, we would like

16 to push that to the end of the hearing, if possible.

17        THE COURT:  Any objection?

18            (No audible response heard.)

19        THE COURT:  All right.

20        MS. GREECHER:  That brings us to Matter No. 29,

21 which is the plan trustee's objection to the subordination

22 statements and I'll cede the podium to Mr. Schnitzer from

23 Hahn & Hessen.

24        THE COURT:  Okay.

25        MR. SCHNITZER:  Good afternoon, Your Honor.

1  Edward Schnitzer from Hahn & Hessen on behalf of the plan

2  trustee.

3         Your Honor, pursuant to the notice of effective

4  date, parties had till January 5, 2011 to file certain

5  subordination statements.  These were specific subordination

6  statements which related to a contractual subordination

7  provision which would subordinate a select group of parties,

8  namely certain indenture trustees to certain possible bank

9  claims.

10         On or about January 5, three individuals, as well

11  as, two banks filed subordination statements.  On behalf of

12  the plan trustee, we filed an objection on February 1 to the

13  subordination statements filed by the three individuals.

14  The basis for the objection was that those claims are not

15  claims that are entitled to or have any relationship to this

16  contractual subordination provisions.

17         Since filing an objection, as well as, receiving

18  responses from the three individuals, we have reached out or

19  attempted to reach out to all three of them.  We have had

20  success with two of them, Mr. Daniel Seland who's claim is

21  basically an equity claim.  That's a loss based upon an

22  investment.

23         THE COURT:  Um-hum.

24         MR. SCHNITZER:  A colleague of mine spoke to him.

25  Mr. Seland is actually in Germany.  We were told he was not

1 going to appear today in person or via telephonically,

2 although we did explain to him and give him the information

3 to appear telephonically.  He understood the relief that we

4 were seeking in the objection.  He had no objection to it.

5 His only concern was he didn't want his claim itself

6 expunged.  We told him that is not what we were seeking,

7 just seeking that it did not have the right to benefit this

8 particular subordination.  In addition, we also gave him the

9 information on a particular securities class action that was

10 brought against American Home should that be something he's

11 entitled to participate in.

12          The second claimant, Your Honor --

13          THE COURT:  That was Mr. Seland?

14          MR. SCHNITZER:  Yes, that was Mr. Seland.

15 Correct.

16          THE COURT:  Seland.  Is there anyone here on his

17 behalf?

18               (No audible response heard.)

19          THE COURT:  All right, go ahead.  I'll accept

20 your representations of course.

21          MR. SCHNITZER:  Thank you, Your Honor.

22          The second claimant, Your Honor, was Ms. Joann

23 Noir [ph].  Again, we also reached out and spoke to her.

24 Her claim is similar to Mr. Seland.  It's based upon an

25 investment loss.  She was also explained the essence of the

1  objection, why we didn't believe her claim had a right to

2  this contractual subordination.  She understood it.  She

3  also stated that she had no objection to relief.  She just

4  wanted to make sure her claim itself was not going to be

5  expunged.  We also informed her her claim would not be

6  affected by this objection.  She was also given the

7  information as to how to telephonically appear.  It was

8  indicated she would not appear here in person or

9  telephonically.  I don't know if she is or isn't.  And

10 similarly, to Mr. Seland, based upon her claim relating to

11 securities, we also gave her the information the securities

12 class action to the extent that she may qualify for that.

13          THE COURT:  Okay.  Is there anyone on Ms. Noir's

14 behalf present?

15              (No audible response heard.)

16          THE COURT:  All right.  I'll accept your

17 representation.

18          MR. SCHNITZER:  Thank you, Your Honor.

19          The third statement for which our objection

20 related to was a statement filed by a Mr. Gill Alvarez.  His

21 claim appears to be based on a -- he was a borrower and he

22 asserted certain statutory claims such as TILA.  We objected

23 to his subordination statement for the same reasons as Mr.

24 Seland and Ms. Noir in that it didn't -- does not fit within

25 this provision was for.  These -- again, like I said, this

1  is a contractual subordination, not something that this

2  particular individual is entitled to.  We've reached out to

3  him or attempted to reach out to him on two occasions based

4  upon the phone number listed on his statement.  My colleague

5  left a detailed message essentially explaining the same

6  things that were explained to Mr. Seland and Ms. Noir.  We

7  did not receive a return call.  We did explain his ability

8  to appear telephonically and/or in person.  I do not know if

9  Mr. Alvarez is here in person or --

10         THE COURT:  Is there anyone here on behalf of Mr.

11  Alvarez in the phone or --

12         MR. ALVAREZ:  Yes, Your Honor.

13         THE COURT:  Yes?  Okay.  We'll get to you in just

14  a moment, sir.  Go ahead.

15         MR. SCHNITZER:  Your Honor, for the reasons

16  stated in our objection, we would continue our objection and

17  we would seek an order from the Court sustaining that

18  objection with respect to all three claims including Mr.

19  Alvarez.  Again, specifically Mr. Alvarez's claim is a

20  borrower claim.

21         As we explained in our objection, this is a

22  contractual subordination provision.  It's not a provision

23  that applies -- it only applies to a few entities who

24  specifically agreed contractually to be subordinated to

25  other claims.  If Mr. Alvarez has a claim he believes

1  himself in which other parties claim should be subordinated

2  to his, he of course has his rights under the code, and

3  particularly under Bankruptcy Rule 7018.

4          To bring such a claim by an adversary proceeding,

5  a matter that's not before you here today nor are we seeking

6  obviously a ruling on it since it's not here, but simply

7  this provision and what this was put forward in the plan

8  does not apply to Mr. Alvarez' claim.

9          THE COURT:  All right, thank you.

10          MR. SCHNITZER:  Thank you, Your Honor.

11          THE COURT:  Counsel?  Sir?

12          MR. ALVAREZ:  Good afternoon, Your Honor.  My

13  name is Gil Alvarez.  I'm the claimant in this matter.  I

14  have heard what the counsel has said regarding my claim and

15  I basically wrote -- I responded, Your Honor, and I sent a

16  reply.

17          THE COURT:  Um-hum.

18          MR. ALVAREZ:  And there were basically three

19  points that I had brought out in my response and I'd like to

20  mention quickly.

21          THE COURT:  Okay.

22          MR. ALVAREZ:  As far as bringing an adversarial

23  proceeding, Your Honor, when I was here last time in October

24  of 2008 --

25          THE COURT:  Um-hum.

1        MR. ALVAREZ:  -- Your Honor directed that I work

2   with the debtors and come up with a form of order.  When I

3   worked with the debtors, Your Honor, we had agreed that they

4   would resolve my claim and we would work together and

5   resolve my claim amicably.  I have the order right here that

6   was signed by you.  But to this date, they haven't reached

7   out to me or they haven't resolved this case or worked with

8   me to resolve this case.  This is a violation of this order,

9   Your Honor.  And now for them to tell me to bring an

10  adversarial proceeding when we had agreed back in October of

11  2008 that we wouldn't have an adversarial proceeding that

12  we'd resolve it in good faith, I believe is wrong.

13        THE COURT:  Can I see the order, please, sir?

14        MR. ALVAREZ:  May I bring it up to you?

15        THE COURT:  Yes, you may.  Thank you, sir.  Okay,

16  go ahead.

17        MR. ALVAREZ:  There is actually three other

18  points I want to bring out, Your Honor.

19        THE COURT:  Yes, please do.

20        MR. ALVAREZ:  Everything that I've read has told

21  me that a trustee cannot forward illicit moneys received

22  from creditors.  So if the trustee receives unlawful funds,

23  he's not supposed to forward it to other creditors.  That's

24  what I've been able to find out.

25        And my claim is I was basically cheated by

1  American Home Mortgage.   I was promised a 5.25 percent

2  interest rate and then they ambushed me on the day closing

3  and they told me it was 5.75.   And my claim is different

4  from other -- you know, my claim is not an investment loss.

5  And I brought my case to the U.S. Department of Housing and

6  to the office of Florida, the State of Florida Office of

7  Financial Regulation.   And the debtors had a chance to

8  appear there.

9          And I have a factual finding of everything that I

10  say in my claim that they cheated me out of this interest

11  rate.   So these moneys are, you know, illegal.   I'm saying,

12  I'm claiming that they're wrongfully and unlawfully obtained

13  funds and that they cannot transfer them to these other

14  creditors.

15          THE COURT:   Um-hum.

16          MR. ALVAREZ:   That's my second point.   And that

17  these funds should separated and I've Your Honor to look

18  into a constructive trust or have them put it in escrow just

19  the amount of my claim and not forward it to these gentlemen

20  that they want to forward these claims to or these entities.

21          And my third point, Your Honor is that by them

22  taking the funds that were unlawfully obtained and are the

23  subject of this Court order that they said that they'd

24  resolve, by them putting these moneys together and then

25  distributing them to these entities that they're comingling

1  funds in violation of Article 3 of the plan trust agreement.

2  The debtor is -- the trustee is not supposed to comingle

3  funds.  He's not supposed to comingle funds.  And by putting

4  these funds that should have been separated or given to me,

5  he's comingling funds.

6           And there's another -- there's one other area

7  that I just recently found, Your Honor.  And that's called

8  the Uniform Fraudulent Transfer Act.  That for -- prohibits

9  a debtor from, you know, transferring funds to other

10  creditors that he's obtained unlawfully.  I haven't briefed

11  that, but I'd ask Your Honor to direct the debtors to comply

12  with this Court's order.

13           And I know that the Court has the power to punish

14  or fine or sanction people who lawfully violate mandates of

15  the Court, but I'm asking the Court to direct them if they

16  could just resolve my claim as they indicated back in

17  October of 2008, then I wouldn't be here requesting that

18  they put these moneys in escrow or into a constructive

19  trust.  But I'm asking that Your Honor direct them, please,

20  to comply with the order and not to transfer any funds until

21  this order is complied with.

22           THE COURT:  All right, thank you.

23           MR. SCHNITZER:  Your Honor, Edward Schnitzer.  If

24  I could just briefly reply.

25           Your Honor, with respect to the order at issue,

1  the order as you know states that the debtors and Mr.

2  Alvarez will work together in good faith to resolve Mr.

3  Alvarez's claim in a manner that is satisfactory to both

4  parties.  As I stated before, we did reach out to Mr.

5  Alvarez on two recent occasions.  We did not receive a

6  return communication either --

7          THE COURT:  October 2008 was two and a half years

8  ago.

9          MR. SCHNITZER:  I understand that.

10         THE COURT:  That's recently calling him and

11 leaving messages, that don't fly.

12         MR. SCHNITZER:  Your Honor, I understand your

13 concern.  I believe part of the issue is the claim that was

14 filed is a -- it's approximate a $47,000 claim.  I believe

15 at the time and I don't believe until recently there was --

16 and I could be mistaken, Your Honor, an understanding as to

17 what Mr. Alvarez has now stated he was -- he is seeking.

18         As an unsecured claim, what the debtors, what the

19 trustee at this point would do is whether to consider

20 whether to object to or not.  I would think it's very likely

21 that the trustee would not object, would consider not

22 objecting to a claim of this amount, Your Honor.  But as

23 opposed to what Mr. Alvarez is now talking about which is

24 effectively paying his claim in full, aside from the

25 distributions to unsecured creditors, that some type of --

1    as he called it, a trust claim which, Your Honor, I would

2    submit I don't believe the plan trustee believes he has a

3    basis for.

4            I do note as far as I understand, this is a claim

5    based upon a loan from 2005.  I don't believe those funds

6    would have been held separately.  So to the extent this

7    trust fund or comingling, you have a situation back from

8    2005 where the funds would have gone wherever they went.

9            THE COURT:  Stop.  He's here.  You're here.  Go

10   out in the hall, settle this today.

11           MR. SCHNITZER:  Understood, Your Honor.

12           THE COURT:  Anything else on the specific motion?

13   I take it you're not objecting to the JP Morgan or the, I

14   think it's HSCB --

15           MR. SCHNITZER:  Sovereign.

16           THE COURT:  -- Sovereign Bank.  Is that right?

17           MR. SCHNITZER:  That is correct, Your Honor.

18           THE COURT:  All right.  Well, I'll approve the

19   claim objection in connection with the two persons who did

20   not appear based on your representations.  In connection

21   with Mr. Alvarez on the merits of what he's asking for in

22   response to the claim objection -- or as to the

23   subordination claim, I will sustain that.  However, I am

24   directing you to settle his unsecured claim today.

25           MR. SCHNITZER:  Understood, Your Honor.

1          THE COURT:  And I want an answer to that.

2          MR. SCHNITZER:  I have a form of order.  Can I

3    approach the Court?

4          THE COURT:  Yes, you may.  Mr. Alvarez, hang

5    around, they're going to have a discussion with you out in

6    the hallway.

7          MR. ALVAREZ:  Thank you, Your Honor.

8          THE COURT:  And if you reach an impasse, let me

9    know and we'll figure it out.  All right, I'm signing this

10   order.

11         MS. GREECHER:  Your Honor, the matter is Matter

12   No. 30.  It's Triad Guarantee Insurance Corp vs. American

13   Home Mortgage Investment Corp.  This matter is going forward

14   as a status conference and I believe counsel for Triad is

15   behind me.

16         THE COURT:  It's so good to see you guys again.

17         MR. KLAYMAN:  Good afternoon, Your Honor.  My

18   name is Barry Klayman from Cozen O'Connor.  I represent the

19   plaintiff, Triad Guarantee Insurance Corp.  This was sent in

20   as a status conference per your request I believe at the

21   omnibus -- the second to last omnibus hearing you suggested

22   that we have a status conference.

23         THE COURT:  I think it was after I signed the

24   422nd stipulation extending the time to answer, I believe.

25         MR. KLAYMAN:  Yes, it was, Your Honor.  Let me

1  explain what the status of the matter is and where the

2  matter is going certainly in the short run.

3          THE COURT:  Okay.

4          MR. KLAYMAN:  On March 4, we filed an amended

5  complaint.  The response to that amended complaint would

6  otherwise have been due on, I believe March -- I'm sorry,

7  March 14.  But in any event, the -- we were contacted by a

8  representative speaking on behalf of the all the defendants

9  requesting that we agree to an extension until March 25

10  only.  That's a one week extension actually for the

11  defendants to respond to the complaint.

12          We've all executed a stipulation which I'm

13  prepared to hand up if Your Honor will receive it, or else

14  we can file it under certification of counsel, if you would

15  prefer.  We anticipate that on March 25, the defendants will

16  probably all file motions to dismiss in one form or another.

17  We will then go into a briefing phase and the pleadings will

18  then be -- Your Honor will have to rule on the motions and

19  at that point, the pleadings will be closed and we'll see

20  where the case goes from that point.

21          In the meantime, we are still engaging in some

22  settlement discussions with some of the Defendants and we

23  have provided some information by means of an informal

24  exchange of information.  At this time, I can't say with any

25  degree of certainty that the matter will go away as a result

1  of those negotiations.  And most likely, the Court will have

2  to rule on the motions and see what the Court -- what will

3  be left before the Court as a result of those motions.

4         There is one open matter which Your Honor could

5  resolve.  There is a motion to intervene that was filed on

6  December 7 by a second group of securitized trusts.  I think

7  it was at Docket Number 66.  A certification of counsel was

8  filed because we did not oppose that motion to intervene and

9  that is still pending and we're waiting for the Court just

10 to sign the order on that.

11        THE COURT:  That means I don't have it.  If I'd

12 had it, I would have signed it.

13        MR. KLAYMAN:  Okay.  Well --

14        THE COURT:  Mr. Minuti?

15        MR. MINUTI:  Your Honor, maybe I can clarify

16 that, Your Honor.  Your Honor, Mark Minuti from Saul Ewing.

17 I'm the counsel for the interveners.

18        The holdup has been, Your Honor, is that these

19 are all specific trusts and we've discovered that one of the

20 trusts was incorrectly named.  We're trying to get to the

21 bottom of that.  So that was the holdup with me filing a

22 certification of completion of briefing.  So, Your Honor,

23 hasn't done anything incorrect, you're waiting on me.  I

24 hope to do that very shortly, Your Honor.

25        THE COURT:  Okay.

1          MR. MINUTI:  And get that done.

2          THE COURT:  All right.

3          MR. MINUTI:  Thank you.

4          THE COURT:  Just if there's no objection and just

5  do it as a COC as opposed to a certification of completion

6  or briefing because they go into different piles and I look

7  at the COC pile a lot more often than I do the completion of

8  briefing file.

9          MR. MINUTI:  I will, Your Honor, thank you.

10          MR. KLAYMAN:  And -- Your Honor, Barry Klayman

11  again.  There will be no objection on our part to --

12          THE COURT:  Okay.

13          MR. KLAYMAN:  -- that motion to intervene.

14  That's where the matter stands.  We are again not proceeding

15  with yet the 147th continuance of the -- to keep the

16  pleadings open.  We do expect that the --

17          THE COURT:  Well --

18          MR. KLAYMAN:  There will be things for the Court

19  to rule on and that will cause the case to move forward.

20          THE COURT:  All right.  Well, I don't like to --

21  I mean, I'm being sarcastic and probably unfairly.  I don't

22  want to unfairly pressure counsel to move forward if there's

23  an opportunity to settle, but when something's been open as

24  long as this, I think at some point I got to move it along

25  which is why I wanted this status conference and which I,

1   even though it means potentially work for me, I think we're

2   better off starting the process.

3         MR. KLAYMAN:  And probably that will help

4   facilitate -- the results of the rulings obviously will --

5   one way or another will obviously move the case forward and

6   perhaps result in some resolution of it after those motions

7   are decided.  May I hand up to the Court the stipulation

8   just regarding the --

9         THE COURT:  Yes.

10        MR. KLAYMAN:  -- extension?

11        THE COURT:  Why don't you do that and then

12   counsel wishes to be heard, I believe so, please approach.

13   Yes, sir.  Thank you.  Yes, sir?

14        MR. JARVINEN:  Good afternoon, Your Honor.

15   Christopher Jarvinen from Hahn & Hessen on behalf of the

16   plan trustee.

17        The plan trustee was in the middle of drafting

18   its response to the original complaint when last Friday as

19   counsel for Triad indicated, they filed a substantially

20   amended complaint.  And believing that clarity and

21   transparency are generally best for both case management and

22   the expectations of multi-parties in a litigation, we

23   reached out as we have before to the other defendant,

24   interveners, and Triad to see whether or not we could come

25   to a specific date for a response.

1          And although the plan trustee disagrees with

2    Triad's statement that the response deadline would have been

3    March 14 for the amended complaint, that's the point of

4    reaching out and having communications and setting up what

5    the parties believe is the appropriate response time, in

6    this case, March 25.

7          So with that said, the plan trustee respectfully

8    requests the Court to approve the stipulation, thank you.

9          THE COURT:  Okay, thank you.

10         MR. BROWN:  Good afternoon, Your Honor, Stuart

11   Brown, Edwards, Angell, Palmer & Dodge on behalf of Bank of

12   America, Countrywide.

13         I'd like to echo the plan trustee's counsel's

14   comments.  Also, we entered into the stipulation to extend

15   and set the dates for briefing with full reservation of

16   rights, meaning we have not waived with response to -- with

17   respect to what we may include in a motion to dismiss, a

18   motion to strike the amended complaint.

19         THE COURT:  All right.

20         MR. BROWN:  Thank you, Your Honor.

21         THE COURT:  Anything else?

22              (No audible response heard.)

23         THE COURT:  I've signed the stipulation, thank

24   you.

25         ALL:  Thank you, Your Honor.

1          MS. GREECHER:  Your Honor, Margaret Greecher

2    again.  I believe that that leaves us with the

3    administrative expense motion filed by Ms. Beall, as well

4    as, to the extent that you have an opportunity to review the

5    forty-fourth omnibus objection and --

6          THE COURT:  All right.  Well, let's take Ms.

7    Beall and then I'll at some point whenever I take a recess -

8    -

9          MS. GREECHER:  Sure.

10          THE COURT:  I'll have a look at that.  And anyone

11    that's here who wishes to leave is more than welcome to do

12    so.

13          MR. BROWN:  Thank you, Your Honor.

14          THE COURT:  And that includes people on the

15    phone.

16          MS. GREECHER:  Your Honor, with respect to the

17    administrative expense motion, the plan trustee has

18    indicated several what we would consider threshold issues to

19    discuss prior to Ms. Beall's evidentiary portion of the

20    hearing.  Specifically, we would argue that there are waiver

21    law of the case, res judicata, claim splitting, and judicial

22    estoppel theories that would preclude Ms. Beall from

23    bringing her administrative expense claim.  What I would

24    suggest is taking a moment to discuss those through oral

25    argument and address those.  And if Your Honor believes that

1  an evidentiary hearing is still necessary, we would put the

2  witnesses on.

3              THE COURT:  So it may be, I mean -- any comments?

4              MR. LOIZIDES:  Your Honor, I think while it may

5  be difficult for the Court to assess some of these defenses

6  without an evidentiary hearing, obviously, if the Court

7  believes it's very clear based on the records thus far, I

8  don't want to take up time, everybody's time making a record

9  if it's not necessary.  So I'm happy to do whatever the

10 Court would think is most efficient.

11             THE COURT:  Well, I think I'd actually -- let's

12 get to the evidence.  Let's get to the merits and then we'll

13 deal with -- and not that the other arguments are

14 meritorious, but let's build the factual record first and

15 then I can make those kind of rulings.  Is Mr. Beach

16 handling that?

17             MS. GREECHER:  He's going to handle Ms. Beall's

18 cross.  I can hand up the exhibit binders that we have.  We

19 can get through some of that.  Mr. or Ms. Beall has the

20 burden of proof with respect to her claim, so I would

21 anticipate that she would be put on first.

22             MR. LOIZIDES:  Yes, Your Honor.

23             THE COURT:  All right, well let's care of the

24 exhibits --

25             MS. GREECHER:  I can --

1              THE COURT:  -- and then we'll obviously since I

2    gave Mr. Beach a mission, I won't hold it against him.  All

3    right, these are your exhibits?

4              MS. GREECHER:  Yes.

5              THE COURT:  All right.  And this is your

6    exhibits.  All right.  Are there any objections to any of

7    these?

8              MR. LOIZIDES:  I'm sorry, Your Honor.

9              THE COURT:  Are there going to be any objections

10   do we know?  Are they --

11             MR. LOIZIDES:  I don't think so, Your Honor.

12             MS. GREECHER:  I don't anticipate that, Your

13   Honor.  I know that Mr. Beach took a look at those.  With

14   respect to ours, I believe that all but one or two of them

15   are actually docketed items.  The only two that I believe

16   are non-docketed items are the servicing log which Mr.

17   Loizides and I have spoken about and have agreed that that

18   is a business record of the debtors, as well as, a Fannie

19   Mae servicing guideline matter.  It's a lengthy document,

20   but really the only reason that we're using it and we did

21   attach it to our supplement was for a short excerpt of that

22   issue.  And I believe Mr. Loizides may have concerns on that

23   one.

24             MR. LOIZIDES:  No, Your Honor.  I think

25   additionally we had some concerns over whether it was the

1    correct date or not.  And they pointed out something that

2    suggests that it was effective in 2006.  I'm not even

3    honestly quite sure what the relevance of it is at this

4    point, but I'm not going to object to the admission of it.

5              THE COURT:  All right.  Then --

6              MR. LOIZIDES:  So.

7              THE COURT:  So --

8              MS. GREECHER:  Your Honor, and just so you're

9    clear, I believe it is Item No. 2 in our evidence binder.

10   It is a lengthy document. It's the Fannie Mae servicing

11   guidelines for 2010.  However, as Your Honor will hear, this

12   matter originated -- well, excuse me, Ms. Beall's loan

13   originated in 2004 and her servicing concerns did happen in

14   approximately 2007.  The relevant portion which was provided

15   in the supplement, does say that the portions that we're

16   citing to were effective in 2006.

17             THE COURT:  Okay.  Shall we take care of

18   admission or do you want to do that at the end?

19             MR. LOIZIDES:  I suggest frankly, Your Honor, I

20   don't plan to use -- I normally wouldn't have done this,

21   Your Honor, but we may not actually use every single exhibit

22   in our binder.

23             THE COURT:  Right.

24             MR. LOIZIDES:  So I would suggest we maybe defer

25   that to the end.  I don't think there's going to be any

1  significant issues as to --

2            THE COURT:  That's fine.

3            MR. LOIZIDES:  -- admissibility.

4            THE COURT:  That's fine.

5            MS. GREECHER:  We can do it at the same time.  I

6  believe that we are going to move the admission of all of

7  our documents, even though we may not use them.  And the

8  live testimony, they are relevant to our --

9            THE COURT:  All right.

10            MS. GREECHER:  -- threshold issues.

11            THE COURT:  And we'll have Ms. Beall or do the --

12  will the trustee have a witness?

13            MS. GREECHER:  Yes, she will.  I'm sorry, yes he

14  will.  Ms. Wanerka from the plan trust will be handling

15  that.

16            THE COURT:  All right.  Anything other than Ms.

17  Beall?

18            MR. LOIZIDES:  No, Your Honor, I guess I just --

19  if the Court would like to testimony at this point, I can

20  call Ms. Beall to the stand.

21            THE COURT:  Well, let's --

22            MS. GREECHER:  We can take a five minute resource

23  --

24            THE COURT:  Yeah, let's a recess --

25            MS. GREECHER:  -- recess.

1          MR. LOIZIDES:  Okay.

2          THE COURT:  -- and figure out where Mr. Beach is

3  --

4          MR. LOIZIDES:  Oh, okay, I'm sorry.

5          THE COURT:  -- in connection with what I asked

6  him to do.  And in the meantime, I'll look at the other

7  matter that I haven't had a chance to look at during the

8  recess.

9          MR. LOIZIDES:  Your Honor, can I just -- I'm

10  sorry.

11          MS. GREECHER:  Sure.

12          MR. LOIZIDES:  If we could just go back a second.

13  I may have just misheard you.  On the unsecured claim, did

14  you say you don't want an order on that?

15          THE COURT:  I don't think one's necessary.  I

16  think my ruling is sufficient, but if you want to negotiate

17  an order, negotiate an order.

18          MR. LOIZIDES:  Your ruling is clear.  The only

19  reason I'd ask for it and I'd hate to cause extra work for

20  anybody is I'm pretty sure my Virginia counsel was going to

21  ask for something and ordering the transcript probably isn't

22  what they're going, you know -- an order is just going to be

23  a lot clearer for whatever Judge is handling it down there.

24          THE COURT:  All right.

25          MR. LOIZIDES:  So that would be -- I don't think

1  there's any disagreement about that.

2          THE COURT:  All right.

3          MR. LOIZIDES:  Okay, thank you.

4          THE COURT:  Submit an order.  If you can't agree,

5  submit dueling orders.

6          MS. GREECHER:  Thank you, Your Honor.

7          THE COURT:  We're in recess.

8            (Recess from 3:44 p.m. to 4:03 p.m.)

9          THE CLERK:  All rise.

10          THE COURT:  Please be seated.

11          MR. SCHNITZER:  Good afternoon, Your Honor.

12  Edward Schnitzer from Hahn & Hessen on behalf of the plan

13  trustee.

14          Your Honor, I am sorry to report that we have not

15  been able to resolve it satisfactorily to both sides.  What

16  we offered and what we explained to Mr. Alvarez is that

17  we're prepared to allow his claim in the full amount that's

18  listed on the claim which $47,618.50 as a general unsecured

19  claim against American Home Corp.

20          We explained to Mr. Alvarez the nature of what

21  that would be and what that mean in terms of, you know, how

22  distributions work and in terms of, you know, what the

23  expected distributions are in this case.  That was not

24  satisfactory to Mr. Alvarez.  We did discuss with Mr.

25  Alvarez our belief that -- why that's all this claim could

1  be to Mr. Alvarez.  We discussed specifically Mr. Alvarez's

2  I believe belief that either it could be something other

3  than a general unsecured claim.  We explained our belief,

4  why we don't believe it's entitled to either priority or to

5  be a secured claim or to be an admin claim.  Unfortunately,

6  that was not satisfactory to Mr. Alvarez.

7         So other than our ability to allow it as a claim

8  in the amount that was filed as I mentioned as a general

9  unsecured claim against American Home and withdraw it, I

10 don't think there are any objections against this claim, but

11 to the extent there were, withdraw any pending objections.

12         THE COURT:  All right.

13         MR. SCHNITZER:  That is where it was left, Your

14 Honor.

15         THE COURT:  Okay.  Well, Mr. Alvarez, I don't

16 have anything specific in front of me, a motion by you or

17 anything like that.  You filed a unsecured claim.  The

18 debtors have agreed the plan trust -- you may approach.  The

19 plan trustee had agreed not to object to that claim and to

20 allow it as a general unsecured claim.  Frankly, I don't

21 believe you're entitled to anything else and I don't see how

22 it gets any better for you.

23         MR. ALVAREZ:  Your Honor, I believe if I would

24 have brought in an adversary proceeding, I would have been

25 entitled to -- if you give me a minute, Your Honor, an

1  administrative priority claim because of the misconduct

2  committed by the debtors.  In addition, as I spoke to  the

3  counselor, I told him that I feel that these funds should be

4  kept in a constructive trust or an escrow.  They shouldn't

5  be distributed to banks or any other creditors, Your Honor,

6  because they're elicited gotten gains.

7          THE COURT:  Well, the problem is that there's a

8  plan reorganization in place that provides for the very

9  relief that they're seeking.  And I mean, I confirmed that

10  well over almost two years ago.  I mean, the time to object

11  to that has come and gone.  I'm going to hold the plan

12  trustee to allowing your claim in the amount asserted as a

13  general unsecured claim against the appropriate debtor.  And

14  if you want to take further action in this Court, you're

15  going to need to file a motion.

16          MR. ALVAREZ:  I'm sorry, Your Honor, if I could

17  just get some clarification.  You mean to start an adversary

18  proceeding, you mean?

19          THE COURT:  Well, whatever -- I'm not going to

20  advise you what to do or what you can or can't do, but if

21  you want me to do anything for you, you're going to need to

22  file an appropriate pleading, either a motion or an

23  adversary proceeding asserting whatever claim you think you

24  have.  But for purposes of your pre-petition general

25  unsecured -- the prepetition claim that you filed, they're

1  agreeing that it's an allowed claim as unsecured claim.

2  That's all you're entitled to.  That's all you asked for.

3           MR. ALVAREZ:  Okay, Your Honor, thank you.

4           THE COURT:  Thank you.  All right, Mrs. Beall,

5  Ms. Beall, I apologize.  Mr. Loizides, do you want to call

6  your witness?

7           MR. LOIZIDES:  Yes, Your Honor, I'd like to call

8  Ms. Laura Beall to the stand.

9           MR. NEIBURG:  Your Honor, can I be excused?  I'm

10  sorry, Your Honor.  I understand that you did enter that

11  order.

12           THE COURT:  Yeah.

13           MR. NEIBURG:  Okay, sorry.

14           THE COURT:  Oh, yes, I'm sorry, I apologize.

15  Yes, I did enter the forth-fourth.  I meant to say that, I

16  apologize.

17           MR. NEIBURG:  No problem, Your Honor, thank you.

18           THE COURT:  Ms. Beall, please remain standing by

19  the microphone.

20           MS. BEALL:  Okay.

21           LAURA ANN BEALL, CLAIMANT WITNESS SWORN

22                   DIRECT EXAMINATION

23  BY MR. LOIZIDES:

24  Q    Good afternoon, Ms. Beall.  For the record, Chris

25  Loizides.  Can you just tell the Court where you live?

1    A    Yeah, I live in Oakton, Virginia.

2    Q    And what's your profession?

3    A    A real estate broker.

4    Q    Okay.  How long have you lived at your current house?

5    A    Since 1986.

6    Q    All right.  In early 2004, did you become involved --

7    did you become interested in obtaining the refinancing for

8    your home mortgage?

9    A    Yes, it was actually March of '04.

10    Q    And can you tell the Court in general what happened?

11    A    Yes.  I was refinancing out of a loan and I --

12    unfortunately, my ex-husband's a loan officer who I never

13    used and wanted the business so as a courtesy, I went to him

14    and he -- they promised me a very good loan at the beginning

15    of May.  May 3 I got a truth in lending and a good faith

16    estimate for completely different terms than what was at the

17    settlement table when I arrived on May 20.  And I -- through

18    years and years of researching loan files and so on, the

19    bottom line was it was for a large kickback that went to his

20    company.  So I was not given the loan that I had applied for

21    or was promised and that's why we're here today.

22    Q    And what was the difference between what you were

23    promised and what you got?

24    A    The actual loan that I was promised was a -- it was a

25    -- we were toying between the different adjustable rate ARM

1  programs.  And the one that I was promised was what's called

2  a 3/1.  And it was -- this particular loan was going to be

3  an interest only loan for 30 years with a balloon at the

4  end.  That's what I was shown with no prepayment penalty.

5  Q    And what was the interest -- what was the fixed

6  interest rate on the loan that you got?

7  A    The one that I -- the first --

8         MR. BEACH:  Objection, Your Honor.  These

9  questions all go to the nature of her loan.  We're here for

10  an administrative expense claim that relates to certain

11  alleged post-petition activity or non activity by the

12  debtor.  So I don't see how this is relevant to the actual

13  claim that's before the Court.

14         MR. LOIZIDES:  Your Honor, I can move -- I can

15  skip over this.  I really was doing this for background and

16  I'm kind of surprised they would object to this testimony

17  given the nature of their objection, but I can move forward.

18  I don't want to spend a lot of time on this.  This is really

19  just for background.

20         THE COURT:  All right, I'll accept it for

21  background.  I've read the pleadings but --

22  BY MR. LOIZIDES:

23  Q    All right, I'll try to move through this quickly.  I

24  don't -- we do not intend to dwell on what happened pre-

25  bankruptcy, it's just really to provide some background.

1  All right.  In any case, what happened during the first

2  three -- let me just skip ahead a little bit.  What happened

3  during the first three years of your -- of the loan that you

4  got?

5  A    The rate was fixed at 5.625.

6  Q    All right.

7  A    And --

8  Q    Well, did you make the payments?

9  A    Yes, never missed one in three years.

10  Q    Okay.  Now what happened after it went into the

11  variable interest rate?

12  A    It adjusted.  The payment went from $3,000 to $4,300

13  the first time and the second time $4,900.  So it basically

14  went from $3,000 to $5,000 within a year.

15  Q    What did you try to do at that point?

16  A    Everything conceivable.  When I -- I didn't -- I

17  called American Home.  I -- stupidly, I didn't know anything

18  about law, submit short sales, any of that kind of stuff

19  back then.  Of course this mortgage meltdown was just

20  beginning.  And I thought that if I explained to them what

21  they had done to me and shown them, that they would just fix

22  it and help me and modify the loan to a market interest

23  rate.

24  Q    When you say them, what do you mean?

25  A    American Home or whoever.  I mean, I called them first

1  because they serviced my loan.  The reason -- the problem in

2  regarding the admin claim was what I call ring around the

3  rosy, where's my loan, Mr. Hosy [ph]?  That I went through

4  for a long, long time.

5  Q      Did something occur that led you to believe that you

6  would not be able to get a refi through American Home?

7  A      Well, the problem -- what happens is they actually

8  started to call me six months before my loan adjusted to try

9  to refinance me out of it.  And I finally was connected to

10  what they call their retention department which is a call to

11  retain good clients.  You know, people like me that made

12  regular mortgage payments.  And they tried to talk me into

13  financing, refinancing into a pay option arm with them and I

14  declined.  And then I at that time, I realized I was stuck

15  because of the second mortgages.  It's I'm upside down with

16  that.  The bottom line is I couldn't get anywhere with them.

17  They told me that they do have loan modifications in the

18  computer.  This kept saying, his name was Paul Messer, he

19  kept saying the computer, the computer, I'll check the

20  computer.  So, but he said, I can't do it till your loan

21  adjusts.  So finally, he checked it on June 5 and he said

22  that I could only get a 9.75.  But that was in the computer.

23  As weird as that sounds, that's what he called it.  So I

24  thought it was some program that was set up for the investor

25  of my particular loan.  He went in and checked whatever.  So

1 after that, I thought this is crazy because the rates were

2 not even close to that high.  So I called Strauss's office

3 and spoke to Jenna.

4 Q    Let me just -- if I could just interrupt you for one

5 second.  Was this about the first time that you began to

6 believe that maybe someone other than American Home might

7 actually own your loan?

8 A    Well that's what I was trying to find out because I'm

9 from the old school or real estate.  We just think that if

10 you get in touch with the person that owns your loan and

11 talk to them, the investor, they'll modify it.  I didn't

12 know anything about trusts, securitizations, any of that.

13 So I was on a mission to find out who owned by loan.  And I

14 -- when I first called and Mr. Portly told me that American

15 Home owned it and serviced it, then I was told later -- of

16 course I'm not going to go off to what everybody, everyone -

17 - different things and different times because it would take

18 all night.  But the bottom line is then I was told by a Joe

19 Borlatta [ph] of American Home that they owned my loan.  I

20 was also told that by Travis Turner who used to work at

21 Young Conaway.  He's gone now.  So I -- and then I was told

22 that it was securitized and that's when all -- I don't want

23 to get ahead of myself.

24        MR. LOIZIDES:  Your Honor, I don't have the

25 exhibit book out, but if could approach the witness?

1             THE COURT:  I'm sorry.

2             MR. LOIZIDES:  I'm sorry, I don't have my exhibit

3   book at the witness stand, if I could approach the witness.

4             THE COURT:  Yes.

5             MS. BEALL:  Thank you.

6             MR. LOIZIDES:  Okay.  I've just handed you a pre-

7   tabbed book of exhibits.  If you could just take a look at I

8   think you mentioned a discussion with a Mr. Portly.

9             MS. BEALL:  Yeah, that was the first call I made

10  to inquire about who owned my loan.

11            MR. LOIZIDES:  If you could look at Tab 1 in the

12  book.

13            MS. BEALL:  Yes.

14            MR. LOIZIDES:  And just identify that document

15  for the record.

16            MS. BEALL:  Yes.

17            THE COURT:  Yes, what?  Oh, this is your log?

18            MR. LOIZIDES:  That is a portion of -- in fact, I

19  think that's one of the exhibits.  That's a portion of the

20  service log.

21            THE COURT:  Okay, thank you.

22  BY MR. LOIZIDES:

23  Q    And -- well, I'll ask the witness.  Does that reflect

24  a conversation that you had with --

25  A    Yes.

1  Q     And if you could then take a look at Exhibit 2 in the

2  book and identify that for the record.

3  A     This is a qualified written request that I sent in to

4  American Home Mortgage Servicing and American Home Mortgage

5  both.

6  Q     Well is that a -- it's a communication from you, isn't

7  it?

8  A     Yes.

9  Q     I'm sorry to lead the witness.

10  A     It's a request for information --

11  Q     Okay.  And among other things, were you seeking

12  information as to who actually owned your loan?

13  A     Yes, that was a part of this.

14  Q     And again, I'm sorry if we've already gone over this,

15  why were you -- why was that important to you?  Why did you

16  care?

17  A     I wanted to resolve the issues and save my house and

18  hope that I could get a loan modification.

19  Q     Why not just deal with American Home?

20  A     Because I didn't trust them.

21  Q     Why not?

22  A     Because I kept getting different information about who

23  owned my loan, who was the master servicer, who wasn't the

24  master servicer.  I was told by Joe Borlatta that they only

25  -- that American Home Mortgage -- the exact words he used

1  were they never modify loans except to 9.75, 30 year fixed.

2  I was also told that by Paul Messer in the retention

3  department.  He was the one that tried to refinance me into

4  the pay option arm.

5  Q    Okay.  If you could look at Exhibit 3 in the book and

6  just identify that for the record.

7  A    Yes, that was the response to the qualified written

8  request.

9  Q    And did you get any further response other than that

10  letter?

11  A    He didn't respond properly, he just put three

12  documents in here and -- but what they had done is they had

13  by the end of October, they did provide our loan file for us

14  through the Court when Paula and I had our hearing on the

15  31st of October --

16  Q    Okay.  I think we're getting --

17  A    Okay.

18  Q    -- a little ahead right now.  Was there some point

19  that you had a discussion with -- did you have discussions

20  with somebody named Scott Ellerby [ph]?

21  A    Yes, quite a few.

22  Q    And did he ever tell you anything about the investor

23  for your loan?

24  A    Yes, Scott's the vice president of the servicing unit

25  I think -- maybe he's still there.  He basically told me

1  flat out that he said that Wells Fargo was the master

2  servicer.  I asked him if my loan was in the trust

3  AHMIT2004-01 or 2 and he just answered yes.  He wouldn't

4  tell me at that time which one of the two it was in.  He

5  also told me that the investor of my loan would want to

6  foreclosure and get paid back because I was in -- they were

7  in an equity position with my house and that if I was in an

8  upside down situation, they would definitely work with me.

9  Q    Did you have -- was your first discussion with Mr.

10 Ellerby, I'm not sure if it's Ellerby or Ellersby, pre or

11 post bankruptcy?

12 A    Post.

13 Q    Post bankruptcy, okay.  So at this point, we're

14 talking about -- you think?

15 A    Yeah, it was post.

16 Q    Okay.  So in any case, but you did have discussions

17 with him after bankruptcy?

18 A    Yes, it was October.

19 Q    Okay.  What did you do after the bankruptcy was filed

20 to try to find out information about your loan?

21 A    I started basically calling everybody.  There's a list

22 on the back of the table of contents of the banks.  I

23 started watching the docket.  Paula and I would watch this

24 docket all the time.

25 Q    Hold on.  When you say Paula, who's Paula?

1  A      Paula Rush and I.  Because we were both trying to find

2  out who owned our loans.  It was a mess.  And so we would

3  like take turns watching the docket and sharing information.

4  We talked on the phone all the time.  And we made a list of

5  all the banks that American Home did business with that were

6  listed at the beginning of the bankruptcy.  So I made a list

7  and I called everyone of them and I --

8  Q      Well, again, why didn't you just go to American Home

9  and get the information from them?

10 A      Because I was getting conflicting information and I

11 didn't trust them.

12 Q      Okay.

13 A      They wouldn't give it to me in writing.  That's really

14 all I wanted.

15 Q      I think you had mentioned previously you had a

16 discussion with Travis Turner.

17 A      Um-hum.

18 Q      And what did Mr. Turner -- well, first of all, who is

19 Mr. Turner?

20 A      Travis Turner was one of the lawyers at Young Conaway.

21 I guess he was helping the borrowers maybe when they first

22 went into bankruptcy.  So I was connected to him about my

23 request.  And I asked him and he called me back and said

24 that American Home Mortgage owned my loan.

25 Q      Okay.  Had you ever received different information

1  from other representatives of American Home?

2  A    I -- about who owns my loan?

3  Q    Yes.

4  A    I would say specifically, I have just been told they

5  wouldn't tell me more than anything.  The only person that's

6  ever even discussed the -- who owned my loan with me, any --

7  that did not say that it was American Home was Scott

8  Ellerby.

9  Q    Okay.  And who did you understand that Mr. Ellerby is?

10  I'm sorry if I already asked you.

11  A    That's okay.  He works under David Freedman in the

12  servicing unit, the vice president.

13  Q    Okay.  At some point, did you contact Wells Fargo?

14  A    Many a time.

15  Q    And why did you contact Wells Fargo?

16  A    Well, the one thing that Paula and I sort of

17  determined because we were trying to understand what

18  securitizations were and we found these things that were

19  being handed out that described master servicers and venture

20  trustees, trustees, owner trustees.  And we were trying to

21  understand exactly what a securitization was and what these

22  roles that the different banks were playing and the

23  different trusts so we could get to the bottom of if we find

24  who owns our loans, can we get a modification, who do we go

25  to, makes the decision, yada yada.  So we figured out that

1 Wells Fargo did have some relationship with the trust that

2 the AHMIT2004-1 and 2.  And also Scott Ellerby had stated

3 that they were the master servicer.  So I contacted a

4 Kathleen Dean first in their corporate trust services.  I

5 got their phone number again from documents on the docket.

6 And she wrote me the letter and said that they were not.

7 Q    Okay.  Well, actually on that subject, if you can look

8 at Exhibit 4 in the book and identify that for the record.

9 A    Yeah, that was the letter from Kathleen where she says

10 that American Home is acting as a trustee for a

11 securitization my loan is in without identifying which

12 securitization it was.

13 Q    And what was that letter in response to?

14 A    I flat out asked her if they were a master servicer

15 because I was still desperately trying to find someone to

16 help me with the loan mod.  And by that time, Paula and I

17 had discovered the mater --

18 Q    If you can just answer my question.

19 A    I'm sorry.

20 Q    What was that letter in response to?

21 A    I called to ask them if they were a master servicer.

22 Q    Okay.

23 A    Yeah.

24 Q    And again was this idle curiosity as to why you were

25 interested in who was the master servicer and who owned the

1  loan?

2  A     Yes, because I was hoping to get a fair shake at a

3  loss -- at, you know, I mean, I was hoping to get a loan

4  modification again.  And you --

5  Q     Just so the record are clear, it was mere -- was it

6  idle curiosity?

7  A     No, no.  This has been the most unpleasant three years

8  of my life.

9  Q     All right.  At some point was a hearing held in this

10  Court about getting the information?

11  A     Yes.  Paula and I motioned the Court for a consumer

12  ombudsman and also discovery.  Her and I and Mona Davin

13  [ph], the three of us did it together, and an investigation

14  into the company.  And we were denied the consumer ombudsman

15  thing because there was already something in place and also

16  the investigation, there was already people investigating.

17  But we got our loan files, yes.  Mr. Dickman [ph] was here

18  from servicing unit.

19  Q     Well, did you prosecute a so called 2004 motion?

20  A     Well, no, they provided us -- I don't quite understand

21  exactly what that means.

22  Q     Okay, I'm sorry.

23  A     I just know that I motioned for my loan file.

24  Q     Well, did you file a motion with this Court seeking

25  documentation?

1   A      Yes, and we got it.

2   Q      Okay.

3   A      Yes.

4   Q      And there was a hearing on that in addition to some

5   other motions?

6   A      Yes.

7   Q      Okay.  If you could just, I don't know that we really

8   need testimony on this, but just if you could take a look at

9   Exhibit 5 and just identify for that -- that for the record?

10  And I can just represent that's a portion of the Court

11  transcript.

12  A      That was -- yeah, that was Mr. Dickman from --

13  Q      And was there some -- were you there on that day?

14  A      Oh, yes.

15  Q      And do you -- I mean, it's in the transcript, I

16  believe on Page 35, but did -- does the transcript reflect

17  what AHM's policy or belief was as to providing --

18  A      Yes.

19  Q      -- information about loan ownership?

20  A      The jest of what he said is that they do not tell the

21  borrowers about the loans, who owns the loans because the

22  investors do not want them to.  And that they work on behalf

23  of the investors to decide whether or not there's basically

24  a loan mod and that the investors do not have direct

25  information on the loan level.  In other words, the loans in

1  the trust which by the way isn't true.

2  Q    Okay.  If you could take now a look at Exhibit 6 in

3  the book and identify that for the record.

4  A    Yeah, that was a letter.  After I got my loan file --

5  Q    If you can identify, state what it is just for the

6  record.

7  A    Just [indiscernible] request.  It was the -- yes, it

8  was.

9  Q    What prompted you to write that letter?

10  A    The information I acquired in my loan file.

11  Q    Okay.  Did you get a response?

12  A    Oh, no, it was ignored.  Ms. Waters said they don't

13  have to respond, they're in bankruptcy.

14         MR. LOIZIDES:  Okay.  I note there is no Exhibit

15  7, Your Honor, just a --

16         THE COURT:  All right.

17  BY MR. LOIZIDES:

18  Q    So I will -- all right, at some point around this

19  time, did you -- well, actually let me just ask you if you

20  could identify Exhibit 8 for the record.

21  A    That was a foreclosure, a reinstatement letter rather

22  I got from a foreclosure attorney named Sam White in

23  November of '07.

24  Q    Okay.  And when you receive that letter?

25  A    I received it November -- it was sent November 13.  It

1  would have been around November 15 --

2  Q     Okay.

3  A     -- of '07.  There's no mention in that of I guess who

4  owns my loan or who --

5  Q     I'm sorry, could you just repeat --

6  A     The reason I put in here, too, is there no mention of

7  in that letter who owns my loan.

8  Q     Right.  Did you have -- looking at Exhibit 10 and I'm

9  skipping 9 intentionally, Your Honor.

10 A     Um-hum.

11 Q     And just identify that for the record.

12 A     That was a letter that I sent to Laura Harrison's

13 office reminding her that they had not complied with my

14 qualified written request still seeking the information on

15 my loan.  And you can -- here, I have the wrong trust --

16 Q     Who is the -- there's a notation on there that says

17 incorrect.

18 A     That was because it was the wrong trust.  At that

19 time, I thought it was --

20 Q     Hold on.  Who -- is that your handwriting?

21 A     Yes.

22 Q     Okay.  Did you believe that information or come to

23 believe that information --

24 A     Yes.

25 Q     -- was incorrect?

1   A     Yes, later.

2   Q     Can you explain why?

3   A     Yeah, the trustee, Mr. Vara [ph] and Joseph is it

4   McMahon [ph]?

5              THE COURT:   McMahon.

6              MS. BEALL:   McMahon.   He offered to help Paula

7   and I in March of '08 to get them to comply to TILA

8   1641(f)(s).   She contacted John Callus, the compliance

9   attorney of American Home and got him to provide letters to

10  us of who actually owned our loans.   Or at least -- I don't

11  know Paula got hers, but I did get mine.

12  BY MR. LOIZIDES:

13  Q     Okay.   Where did you -- but this is your letter, so

14  where did you get that information of the pool number there?

15  A     Pool -- well, with AHMIT?

16  Q     Yes.

17  A     Well, actually, Paula.   What we did, we got our

18  servicing records and again, after hundreds of hours of

19  trying to figure this out.   At the top of the servicing

20  record that it says INV with a number, it's the investor

21  number.   So we were able to match that number with the list

22  in the Bankruptcy Court.   It had the numbers of the

23  different investors.   So that's how we put two and two

24  together and figured out that it was AHMIT2004-2.   Paula did

25  that for me.

1  Q    Okay.  If you could then take a look at Exhibit 11 and

2  identify that for the record?

3  A    That was the letter I got from Kevin Trogan [ph].  I

4  still was confused because again, Scott Ellerby said that

5  Wells Fargo was master servicer.  And I called them again

6  one more time.  Part of the reason was I had offers of help

7  from Sheila Bear's office, the FDIC and from Senator Webb in

8  my state, and also from Jonathan Miller at Sandra Dodd's

9  office.  I had been in close touch with them.  They said

10 they couldn't help me unless we could find out for sure that

11 Wells Fargo owned my loan. So that was another reason I was

12 desperately trying to find out who owned my loan because if

13 they had, they could potentially have helped me with a loan

14 mod.  So I called Kevin again.  I called corporate trust

15 services rather again to inquire a master servicer whatever

16 and this came from him and this time stating they are not

17 master servicer.

18 Q    Did the information in that letter was that different

19 from anything that Mr. Ellersby had ever told you?

20 A    Scott told me they were.  Kevin said they weren't.

21 Jessica Rivera of Standard & Poor, their senior analyst of

22 the trust sent me three emails saying they were a master

23 servicer.  Rowland Miller of their corporate trust services

24 said they were not.  And I finally got a letter from

25 Franklin Tott [ph], Paula and I did, finally confessing

1   April of '08 that they were master servicers.

2   Q     Okay.  That was a little later.

3   A     Yes.

4   Q     Okay.  We'll get to that.  I want to skip 12.  I'm

5   sorry if we're skipping around, Judge, it just -- we decided

6   not to use some of these just to keep things shorter.  And

7   if you could identify Exhibit 13 for the record?

8   A     It was a letter that I sent to I think it was Michael

9   Strauss, yes.

10  Q     And who's that?

11  A     Michael Strauss was the CEO, the guy that started

12  American Home.

13  Q     Did you ever get a response to this letter?

14  A     Not directly from this.

15  Q     Okay.  If you could identify #14.

16  A     This is a letter to Kenneth Enos at Yong Conaway --

17  Q     Okay.

18  A     -- asking him.  I addressed with him the fact that he

19  had stated in Federal Court that TILA 164102 is not a law.

20  And I asked him for help on that.  Not him, the law firm.

21  And I faxed this to him and he called and offered to help

22  me.  He was the one at the time that was working with

23  borrowers.

24  Q     Okay.  Was there a response to that letter?

25  A     No.  He tried.  He did call back one day and he said

1  that Wells Fargo was the indenture trustee and that I'd have

2  to go to them for all of my issues.

3  Q    Okay.  If I could direct you to -- if you could

4  identify Exhibit 15 for the record.

5  A    Those are letters to -- there's a Joanna Weiss.  She's

6  one of Wilbur Ross's assistants.

7  Q    Well was this -- I'm sorry, this was a letter or an

8  email?

9  A    I'm sorry, emails.

10  Q    Okay.

11  A    She -- they actually -- I emailed her when all this,

12  you know, when I was having trouble seeing if they --

13  desperately trying again to seek help and --

14  Q    I'm sorry to interrupt you.  Who was the recipient at

15  least first of this email, Joann?

16  A    Joann, Joanna Weiss.

17  Q    And why were you contacting her?  Who is she?

18  A    I called Wilbur Ross' office and said I was having

19  problems with American Home with the servicing unit and I

20  needed help and she called.  Then she emailed me and I

21  emailed her back and --

22  Q    But why were you contacting WL Ross Company?

23  A    Still trying to find out who owned my loan and if I

24  could possibly get a loan mod or get a fair shake in loss

25  mitigation.

1    Q      But whey them?

2    A      He was in between the economic and final close of the

3    servicing unit.

4    Q      Okay.

5    A      She said that -- to send stuff over to a David

6    Strapper [ph], I think it was which is his assistant and he

7    would look it over, but they didn't think they could help me

8    because they weren't in charge yet basically.  And they

9    didn't.

10   Q      Okay.  And did your inquiry -- was this inquiry part

11   of your effort to find out who owned your loan and who the

12   master servicer was?

13   A      Yes, yes.

14   Q      Okay.  And if you could identify Exhibit 16 for the

15   record.

16   A      Yeah, this was a letter from John Callus that was

17   prompted from the letter that I had sent to Michael Strauss

18   earlier that month and where he's basically blasting me.

19   And at the bottom of the letter, he threatens to take

20   actions me if I speak about the things that I was

21   addressing.

22   Q      And did you respond -- well, actually, if you could

23   turn to Exhibit 17 in the --

24   A      Yes, I did.

25   Q      Is that your response --

1    A     Yep.

2    Q     -- Exhibit 17?  And again, was this part of your

3    effort to discover information including who owned your loan

4    and who the master servicer was?

5    A     Yes.

6    Q     Okay.  If you could identify Exhibit 18.

7    A     Um-hum.  Those are emails between myself and Kenneth

8    Enos.

9    Q     And what -- I think there was a letter previously to

10   Mr. Enos.  What prompted you to have these exchanges?

11   A     There was a hearing on February 1 in this courtroom

12   where they were going to be selling off a bunch of loans.

13   And Paula and I motioned the Court that we wanted to be here

14   to make sure that our loan -- to get verification that our

15   loans were not in that batch.  And also to make sure they

16   were putting in the 363 protections for the borrowers.  And

17   so one of the things that Kenneth Enos did do was he emailed

18   to confirm to me to let me know that my loan was not in that

19   sale.

20   Q     Did you also try to get any other information from Mr.

21   Enos?

22   A     Well, the thing that I was concerned about, this was

23   also the problem, the gentleman that was here that day from

24   Johnson, Johnson, was he here February 1, Sean?

25            MR. BEACH:  Johnson, probably.

```
 1              MS. BEALL:  Oh, Johnson, yeah.  The one thing
 2  that I was just concerned about was that he --
 3              THE COURT:  Can I put you under oath, Mr. Beach?
 4              MS. BEALL:  Oh, no, I apologize.
 5              THE COURT:  That's all right.  Testify, don't ask
 6  questions.
 7              MR. BEACH:  Excuse me, Your Honor.
 8              THE COURT:  Go ahead.  Bob Johnson.
 9              MS. BEALL:  Okay.  I -- he said that they weren't
10  selling my loan and I couldn't figure out if they didn't own
11  it, how could they not be selling it.
12  BY MR. LOIZIDES:
13  Q     Well, did you ask Mr. Enos to gather information about
14  who owned your loan?
15  A     Yes.
16  Q     Do you believe he tried to?
17  A     Yes.
18  Q     And did he give you any information?
19  A     No.
20  Q     And if you could identify #19.
21  A     It was the letter to David Freedman again asking them
22  to comply the 1641(f)(2).
23  Q     And who is Mr. Freedman?
24  A     He's the president of the servicing unit.
25  Q     And again, what prompted you to write this letter?
```

1   A      Trying to find out who owned my loan.

2              MR. LOIZIDES:  Okay.  I'm going to skip 20, Your

3   Honor.  And if I could ask you to identify Exhibit 21?  I'm

4   sorry.  Shall we proceed, Your Honor?

5              THE COURT:  I'm sorry?

6              MR. LOIZIDES:  Should I proceed?

7              THE COURT:  Yeah, you said you wanted her to

8   identify Exhibit 21.

9              MR. LOIZIDES:  Yes.

10             THE COURT:  And then you said you were sorry.  So

11  I didn't know what you were doing.

12             MR. LOIZIDES:  No, I meant that we were skipping

13  20.

14             THE COURT:  Yeah.

15             MR. LOIZIDES:  And I would ask the witness to

16  identify Exhibit 21.

17             THE COURT:  Yeah, that's fine.

18             MR. LOIZIDES:  I'm sorry.

19             THE COURT:  It's okay.

20             MR. LOIZIDES:  I thought -- never mind.

21             THE COURT:  I didn't know you were asking

22  something.  I'm sorry.

23  BY MR. LOIZIDES:

24  Q      If you could identify Exhibit 21 for the record.

25  A      Those are email exchanges between Mr. Vara and Paula

1  and me and to Mr. McMahon about their helping us to find out

2  who owns our loans.

3  Q     And what's your understanding of who Mr. Vara and who

4  Mr. McMahon are or were?

5  A     I'm sorry, trustees.

6  Q     Okay.  What -- well, can you explain what occasion you

7  were contacting the U.S. Trustee's Office?

8  A     I'm sorry, the question again?

9  Q     What occasion -- what -- I'll try to speak in English.

10 Why did you get in contact with the U.S. Trustee's Office?

11 A     Paula did because we were getting frustrated.

12 Q     Did you --

13 A     We wanted help.

14 Q     -- get in touch with the U.S. Trustee's Office?

15 A     He actually emailed me.

16 Q     Okay.  And again, why did you do that?

17 A     To find -- elicit help in finding out who owned our

18 loans.

19 Q     Did they help you out?

20 A     Yes, they did.

21 Q     And what did they --

22 A     He was able to get John Callus to send that letter.

23 Q     Okay.

24 A     Stating who owned it.

25 Q     And if you could look at Exhibit 22.

1  A       Um-hum.

2  Q       And just identify that for the record.

3  A       Yes, that was the letter.

4  Q       When you say --

5  A       From John Callus.

6  Q       In response to what?

7  A       In response to Joseph McMahon's request to provide it

8  to us.

9  Q       Okay.  We may use the remaindering exhibits as

10  rebuttal, if necessary, but I do have a few more questions

11  in addition to that.  Now, we've gone through a number of

12  documents that show some of your efforts to obtain

13  information about your loan.

14  A       Um-hum.

15  Q       Do these documents reflect -- let me see if I -- would

16  there -- did you make efforts other than as reflected in the

17  documents?  In other words, did you make phone calls and

18  other efforts to try to get information?

19  A       Yes, calling all the banks.  I also called all the MI

20  companies thinking that maybe my loan was insured.

21  Q       If you were to estimate the amount of time that you

22  spent from early August 2007 and through March 11, 2008 --

23  A       Hundreds of hours.

24  Q       Okay.  If I could finish the question just so the

25  record is clear.  When you said hundreds of hours as to

1  what?

2  A     Hundreds what, excuse me, as to --

3  Q     What were you spent -- what did you spend hundreds of

4  hours doing?

5  A     The phone calls, the emails, the research, just even

6  knowing where to look, even knowing where to start to look

7  is very hard, piecing things together.

8  Q     But again, in -- this was in relation to getting

9  information about your loan?

10  A     Yes.

11  Q     Okay.  Now you're -- you said you're a real estate

12  broker, right?

13  A     Um-hum.

14  Q     That -- does that mean you're paid on a commission

15  basis?

16  A     Yes.

17  Q     What -- to the best of your ability, could you

18  estimate what your time is worth?

19  A     I am -- the average house that I sell, I earn a 3

20  percent brokerage fee.  So for example if I was to sell a

21  $300,000 house, I would make brokerage fee of $9,000.  And

22  it's between 40, max 60 hours per property that I spend

23  selling.

24  Q     So I can't do the arithmetic in my head, but would you

25  say -- what would you say a low estimate of your hourly

1  would be?

2  A      Way low would be 100 to 150.

3  Q      Okay.

4  A      Way low.

5  Q      Now at some point, did you file a motion for relief

6  from the automatic stay?

7  A      Yes.

8  Q      At the time that you filed that motion, did you have -

9  - did you know what an administrative claim is?

10 A      No.

11 Q      Did you believe at that time that you had a -- well,

12 it's hard to -- did you -- at that point in time, did you

13 believe that you had a claim arising after the bankruptcy?

14 A      No.

15 Q      Did you -- what did you understand --

16 A      My relief was --

17           THE COURT:  What did you understand as to what?

18 I don't understand the question.

19 BY MR. LOIZIDES:

20 Q      Well, maybe I should rephrase.  Well maybe we -- you

21 know, I should take a step back.  At some point, you filed a

22 proof of claim in the bankruptcy, didn't you?

23 A      Yes.

24 Q      And when was that?

25 A      That was June -- in January of '08.

1    Q      That was before you filed the stay relief motion?

2    A      Yes.

3    Q      And I'm sure it will be put into evidence, but what in

4    general was your -- what was the crux of your claim?

5    A      It was for the violations that I felt that had

6    happened and occurred around the origination of my loan.

7    Q      And what sort of --

8    A      Well, the TILA violations, the fraud, the

9    misrepresentations just, you know, on and on.

10   Q      And when did that happen?

11   A      That was back in May of '04.

12   Q      When you filed the stay relief motion, what claims

13   were you trying to bring to some Court?

14   A      Equal opportunity, ECOA and also --

15   Q      I don't want to know the legal claims.

16   A      Oh.

17   Q      What claims -- what was the crux of what you were

18   trying to have litigated?

19   A      Basically, what occurred for my loan -- for the fraud

20   and my -- the origination of my loan.

21   Q      Okay.

22   A      Basically, like trying to prosecute that.

23          MR. LOIZIDES:  I don't believe I have any further

24   questions, Your Honor.

25          THE COURT:  Okay, thank you.  Cross?

1              MR. BEACH:  Good afternoon, Your Honor.  For the

2     record, Sean Beach from Young Conaway on behalf of the

3     debtors.

4                          CROSS EXAMINATION

5     BY MR. BEACH:

6     Q      Good afternoon, Ms. Beall.  Ms. Beall, you testified

7     earlier that you were a real estate broker by trade.

8     Correct?

9     A      Um-hum.

10    Q      And how many years have you been a real estate broker?

11    A      Since 1977.

12    Q      So for over 30 years?

13    A      Um-hum.

14    Q      And in 2007, that was a difficult year for the real

15    estate market.  Correct?

16    A      Starting to be, yes.

17    Q      Yeah.  And would you say that the real estate values

18    started going down in 2007?

19    A      Oh, yes, yes.

20    Q      And there were not a lot of homes being sold in 2007,

21    right?

22    A      That's as compared to?

23    Q      As compared to 2006, 2005.

24    A      Probably not, it depends.

25    Q      And how many -- approximately how many homes did you

1  sell in 2007?

2  A     In 2007?  I don't remember, maybe twelve, ten, twelve.

3  Q     And 2008?

4  A     You know, honestly, I can't remember.  I can get that

5  to you though.

6  Q     Do you think it was under twelve?

7  A     Oh, yeah.

8  Q     Yeah.  And do you know approximately how much money

9  you made as a real estate broker in 2007?

10 A     2007?  My income was -- I think it was a little over

11 $70,000 that year.

12 Q     And in 2008 it was less than that?

13 A     Yes.

14 Q     Would you say about half of that?

15 A     No, 50's.

16 Q     Approximately $50,000?

17 A     Yeah.  If that was the case -- now wait a minute, now

18 I can tell you how many houses I sold.  If that was the

19 case, then I would have sold only four houses, five houses,

20 yeah.

21 Q     So approximately $50,000 --

22 A     Yeah.

23 Q     -- in 2008, okay.

24 A     Yeah.

25 Q     In January 2004, you actually refinanced your prior

1  mortgage with a different mortgage company, not American

2  Home Mortgage, right?

3  A     You mean in February?

4  Q     January or February --

5  A     Yeah, yeah, I did.  I did a cash out to help my son

6  buy a house.

7  Q     So you took over $100,000 out --

8  A     Yes, I did.

9  Q     -- in equity of the home in --

10  A     Yes.

11  Q     -- February --

12         THE COURT:  Ms. Beall, let -- I'm sorry, let him

13  finish before you answer.

14         MS. BEALL:  Oh, I apologize.

15         THE COURT:  If you would.  It's the way people

16  talk in normal life, but it makes for a crazy record.  So go

17  ahead, Mr. Beach.

18         MR. BEACH:  Thank you, Your Honor.

19         MS. BEALL:  I'm sorry, I apologize even asking a

20  question.  I've never done this before so --

21         MR. BEACH:  No worries, please.  If you --

22         MS. BEALL:  I'll shut up.

23  BY MR. BEACH:

24  Q     If my question's not clear, you can certainly ask for

25  a clarification, but please do wait until I've asked the

1  question.  So you said it was February of 2007 that you

2  refinanced to get equity out of your home?

3  A      Wait, wait, no.

4  Q      I'm sorry, February of 2004?

5  A      Yeah.

6  Q      And in -- and you took approximately $100,000 in

7  equity.  Please speak into the microphone when I'm done with

8  the question.  Approximately $100,000 out in equity of the

9  home to help your son purchase a home?

10 A      Yes, I gave it to him for a house and for a big

11 wedding.

12 Q      Okay.  And a few months later, I believe it was May of

13 2004, that's when you again refinanced with American Home

14 Mortgage?

15 A      Correct.

16 Q      And did you take any additional equity out at that

17 point?

18 A      No.

19 Q      But shortly after that, you gained -- you obtained a

20 second mortgage with Wells Fargo.  Correct?

21 A      Years later, yes.

22 Q      Approximately when was that second mortgage taken out?

23 A      You know, honestly I don't remember.

24 Q      Okay.  And how much was that second mortgage?

25 A      $172,000.

1  Q      So over -- between 2004 and would you say 2006, you

2  took an additional $270,000 out in equity by additional

3  loans?

4  A      Yes.

5  Q      You testified earlier that your ex-husband was a loan

6  officer.  Was he a loan officer for Eagle who was the broker

7  in the American Home Mortgage transaction?

8  A      Yes.

9  Q      And was he your ex-husband at the time?

10 A      Yes.

11 Q      And you said you went with Eagle because you wanted to

12 do him a favor?

13 A      Yes.

14 Q      And the favor was to get him a commission on the

15 transaction and then you later sued Eagle?

16 A      They -- the attorney that I had put them in the

17 lawsuit, but he never for some reason, he never I don't know

18 what you call it, served them.  Yeah, the Judge chastised

19 him for that in the federal case as you probably read in the

20 transcript.

21 Q      And I believe you had no communications directly with

22 American Home prior to completing the refinancing of that

23 mortgage.  It was all with Eagle before that.  Correct?

24 A      Yeah, I had never heard of American Home before then.

25 Q      Okay.  So all your contact was with your ex-husband or

1    someone else at Eagle?

2    A      Correct.

3    Q      Prior to the mortgage.

4    A      Correct.

5    Q      Ms. Beall, you testified that your administrative

6    claim is based on the time, primarily on the time you

7    expended in determining who the owner of your loan was.  Is

8    that correct?

9    A      Yes, and the master servicer.

10   Q      And the purpose of obtaining that information was

11   because you wanted to do a loan modification.  Correct?

12   A      Yes.

13   Q      And you spoke with American Home Mortgage Servicing a

14   number of times regarding modifications and refinancings and

15   other options that had when you were having difficulty

16   making your mortgage payments.  Correct?

17   A      Correct.

18   Q      And that was with American Home Mortgage Servicing.

19   Correct?

20   A      Yes.

21   Q      And you knew that American Home Mortgage was the

22   servicer of your loan as soon as you refinanced your

23   mortgage in May of 2004.  Correct?

24   A      It was Columbia National for a couple months.

25   Q      It was Columbia National?

1  A       Yeah.   Then it was American Home.

2  Q       And is it your understanding that Columbia National is

3  a predecessor of American Home Mortgage Services?

4  A       Yes.

5  Q       And you knew that the owner of your loan was American

6  Home Mortgage Investment Trust 2004-2, no later than the

7  hearing in October of 2007.   Is that correct?

8  A       No, that was never confirmed.

9  Q       Ms. Beall, you filed a motion under Rule 2004 to seek

10 certain documents that you testified about earlier.   Do you

11 recall that?

12 A       Yes.

13 Q       And that was approximately in September of 2007?

14 A       Yes.

15 Q       And you attended that hearing on October 31, 2007 in

16 connection with that motion?

17 A       Yes.

18 Q       And during that hearing, you represented to the Court

19 that you knew that AHMIT2004-2 was the owner of your loan.

20 Correct?

21 A       Well, I was thinking it was, but I had not gotten

22 confirmation in writing so I was not 100 percent certain,

23 no.   How could I have been?

24         MR. BEACH:   Your Honor, if I may approach the

25 witness, I'd like to hand her an exhibit binder.   There's

1    one exhibit I'd like to show her.

2            THE COURT:  Yes.

3            MS. GREECHER:  The exhibit binder is not at the

4    witness stand. It's Exhibit 5.

5            MR. LOIZIDES:  She's got it.

6            MR. BEACH:  Oh, Ms. Beall, it's one of the two

7    black --

8            THE COURT:  The blue one.

9            MR. BEACH:  -- exhibit binders that you have

10   other there.  Exhibit 5 if you'd please turn to that.  And

11   if you turn to Page 48.

12           THE COURT:  It should be in Volume 2.

13           MS. BEALL:  Page what?

14           MR. BEACH:  Page 48, please of Exhibit #5.  It

15   should the transcript of that October 31, 2007 hearing.

16           MS. BEALL:  Um-hum.  This is referencing what I

17   asked Scott Ellerby.

18   BY MR. BEACH:

19   Q    What line are you looking at Ms. Beal?

20   A    I'm looking at Number 24.

21   Q    And for the record, would you read starting at Line 20

22   through 25?

23   A    Next question, please.  Scott Ellerby finally told me

24   last week that Wells Fargo was the master servicer of my

25   loan which we also deducted based on what Mr. Patton so

1    kindly handed out in the Bankruptcy Court regarding all the

2    pools and when it was originated, yada, yada.  I'm in 2004-

3    22001 meaning it was one or the other, I did not know.

4    Q     So your testimony is that you referenced that you were

5    -- you've been able to determine that you were in 2004-2,

6    but that this testimony is unclear as to what trust you were

7    in at that point?

8    A     Yes.

9    Q     Then why would you reference 2004-2?

10   A     Well, the reason we -- Paula and I were trying to

11   deduce which trust they were in based on the age of our

12   loans because we couldn't get the information.  So the 2004

13   was the year my loan was originated.  So I thought that

14   that's -- that it was in either -1 or -2, but again, that's

15   why I kept trying to get it in writing because I did not

16   know for sure.  But the question I asked is why did I have

17   to wait until March for that of the next year to get

18   confirmation --

19   Q     Ms. Beall, with all due respect, I'm -- I get to ask

20   the questions and your counsel can ask you questions after

21   I'm done.

22   A     Okay.

23   Q     If there's something further you want to say.

24   A     I didn't know.  I'm sorry.

25   Q     So Ms. Beall, your testimony is that the 2001

1  reference here is that it could have been a trust 2004-2 or

2  it could have been trust 2004-1?

3  A     Yes.

4  Q     Okay.  Ms. Beall, you also knew that Wells Fargo was

5  in the indenture trustee and/or the master servicer for

6  American Home Mortgage Investment Trust 2004-2. Is that

7  correct?

8  A     I was told.

9  Q     When were you told?

10 A     I was told that.  Whether it was true or not was never

11 confirmed until -- I don't know if it really has been.

12 Q     I believe in some of the pleadings you filed with the

13 Court, you indicated that you located that information

14 through a Standard and Poor.  Is that correct?

15 A     Jessica Rivera of Standard and Poor stated that they

16 were, yes.

17 Q     And when approximately did you find that information

18 out?

19 A     I don't know if I have it with me.  Honestly, I can't

20 remember.

21 Q     Okay.

22 A     I know it was between -- I can say it was between

23 August and March.  It was in that timeframe, but I can't

24 remember exactly which month.

25 Q     Okay.  And American Home Mortgage Servicing -- I'm

1  sorry, strike that.  On October 24, 2007, American Home

2  Mortgage provided you with a copy of both your loan file and

3  your servicing file.  Correct?

4  A    Yes.

5  Q    American Home Mortgage Servicing also sent you a

6  number of packages starting from prior to the bankruptcy

7  filing in August 2007 and then also the -- after the

8  bankruptcy filing, packages of -- seeking loan modification

9  information.  Do you recall that?

10  A    I think you're referring to a loss mitigation package.

11  Q    Yes, a loss mitigation package.  Are you familiar with

12  what a loss mitigation package is?

13  A    It was a package that -- asking for financial

14  information.

15  Q    And did you ever fill out a loss mitigation package

16  that was sent to you by American Home?

17  A    I couldn't.

18  Q    You couldn't?

19  A    Well, the first one they wanted was for a deed in lieu

20  of and you can't do a deed in lieu of when you have a second

21  trust on your house.

22  Q    Ms. Beall, the question is did you ever fill out a

23  loss mitigation package, one of the several that American

24  Home --

25  A    No.

1  Q      -- Mortgage Servicing sent to you?

2  A      No.

3  Q      So you chose not to submit those packages.  Correct?

4  A      Correct.

5  Q      And the loss mitigation package was communicated to

6  you by American Home Mortgage Servicing as the information

7  that was required for American Home Mortgage Servicing to

8  assess what your options were in terms of loan modifications

9  and other potential options.  Correct?

10 A      They stated that.

11 Q      They stated that?

12 A      Um-hum.

13 Q      So they did tell you that?

14 A      They stated that, yes.

15 Q      And even though you hadn't filled out a loss

16 mitigation package, American Home Servicing employees had

17 spoken with you about the certain options.  Correct?

18 A      As in?

19 Q      In particular, American Home Mortgage Servicing spoke

20 to you at certain points about the possibility of you

21 getting a refinancing for that mortgage.  Correct?

22 A      You mean when they tried to refinance me into the pay

23 option ARM?  That's the only -- I'm confused.

24 Q      When was that?  Are you talking about in May of 2004

25 or some date subsequent?

1  A      No, that was May of 2007.

2  Q      So American Home Mortgage Servicing did provide you

3  information about refinancing in May of 2007?

4  A      For pay option ARM, yes.

5  Q      And you didn't take that option?

6  A      No.

7  Q      And you were also offered a repayment plan in

8  connection with your loan.  Correct?

9  A      An impossible one that they offered me, yes.

10  Q      Would you explain what that repayment plan was?

11  A      Sure.  You take the $5,000 payment and divide it into

12  three and you add a third which is about $1,600 onto the

13  next $5,000 one, and the next $5,000, and the next $5,000.

14  So in other words, the prepayment would be almost $6,600 a

15  month over three months.

16  Q      So would it be fair to say the repayment plan was to

17  pay the amount of your mortgage that you would typically

18  have for a month and then some catch up payments from

19  amounts that you had from missed payments?

20  A      Yeah, that's what's called a forbearance.  That's what

21  they call a forbearance.

22  Q      So American Home Mortgage Servicing provided you with

23  an option to do catch up payments in lieu if you had agreed

24  to that, then American Home Mortgage Servicing would have

25  forbeared from foreclosing on your house?

1  A      They haven't foreclosed.

2  Q      So you're still living in your same home?

3  A      Yes, I am.

4  Q      And back to the previous question, this repayment

5  option, you said that American Home Mortgage Servicing told

6  you that they would forbear if you had accepted the

7  repayment option.  Correct?

8  A      I guess.  I'm not really -- I'm sorry, I don't really

9  know what that means, forbear.

10 Q      Okay.  I'll clarify.  So American Home Mortgage

11 Servicing did provide you with a repayment option to do some

12 catch up payments on your mortgage.  Correct?

13 A      Yes.

14 Q      Okay.  Ms. Beall, I'd like to talk a little bit about

15 your stay relief motion.  Do you recall that the Court

16 granted your stay relief motion to pursue claims in the

17 Virginia District Court in April of 2008?

18 A      Yes.

19 Q      And you retained counsel to represent you in the

20 Virginia action, right?

21 A      Yes.

22 Q      And counsel did, in fact, represent you in filing that

23 complaint and prosecuting --

24 A      Yes.

25 Q      -- the complaint.  Correct?

1   A      Yes.

2   Q      And the proof of claim that you filed in this

3   Bankruptcy Court was the basis for your stay relief filing.

4   Correct?

5   A      It was for the -- that was filed prior to the stay

6   relief my proof of claim in the Bankruptcy Court.

7   Q      Right.  And there were a number of allegations in your

8   proof of claim.  Correct?

9   A      Yes.

10  Q      And those form the basis of seeking stay relief so you

11  can pursue those claims in the Virginia action.  Correct?

12  A      Yes.

13  Q      And you did pursue those claims in the Virginia

14  action, right?

15  A      Not all of them.

16  Q      And you were advised by your counsel to pursue some of

17  them and not all of them?

18  A      Correct.

19  Q      And you pursued the ones you chose to pursue?

20  A      That he chose, yes.

21  Q      And those were again the same actions, the same causes

22  of action that you could have pursued in the proof of claim,

23  but you chose to pursue after stay relief in Virginia.

24  Correct?

25  A      Yes.

1  Q      And Ms. Beall, you testified earlier that your -- the

2  calculation of your administrative claim is based on

3  approximately $100 an hour of your time.  Correct?

4  A      Yes.

5  Q      And you based that calculation assuming that that was

6  approximately how much you would make if you were selling

7  homes as a real estate broker.  Correct?

8  A      It was that and also expenses that I incurred.

9  Q      And it's based on approximately $100 a week, 40 hours

10 a week?

11 A      I'm sorry?

12 Q      I'm sorry.

13            THE COURT:  You said $100 a week, you mean an

14 hour?

15 BY MR. BEACH:

16 Q      Yeah, I apologize.  Let me rephrase the question.

17 It's based on $100 per hour working a 40 hour work week?

18 A      No, it wasn't based on that.

19 Q      And what was it based on?

20 A      It was based on I get a 3 percent brokerage fee on

21 what I sell and that's -- I used the example of $300,000

22 house, I would earn $9,000 and I spend an average of 40 to

23 60 hours per transaction.  So if you divide that amount by

24 $9,000, it's far more than that.  I just felt that that was

25 an extremely conservative low figure that it was so

1  obviously, I mean, it was so obviously low that I didn't

2  think it would be a concern.  I apologize.

3  Q     Ms. Beall, you don't need to apologize.  I'm just

4  trying to understand how that calculation works.  You're

5  basing it on your anticipated commissions as a real estate

6  broker?

7  A     No, no.

8  Q     You're basing it on what you would have received had

9  you sold houses in 2007 and 2008?

10 A     Considering that I'm asking for an admin claim of well

11 $15,000, that's what I get paid on selling a $500,000 house.

12 I get 3 percent which is $15,000.  And it would take me

13 about 60 hours worth of work.  So I am very confused.

14 Q     As am I.

15        THE COURT:  How did you come up -- you're asking

16 me to award money to compensate you for your time.

17        MS. BEALL:  Um-hum.

18        THE COURT:  And Mr. Beach is trying to get to and

19 I'm trying to get to, I'm right there with him is how did

20 you come up with the number you're asking for?

21        MS. BEALL:  $100 an hour or the $15,000?

22        THE COURT:  The $15,000.

23        MS. BEALL:  Well, this is just a minimal amount

24 and I -- for all the work I had done.  I just came up with

25 the smallest amount that I thought would be honestly that

1  wouldn't be a big concern.

2          THE COURT:  Okay.

3          MS. BEALL:  Personally, I would have wanted -- I

4  would have asked for more, but I honestly didn't think it

5  was that big of a deal.  That is the honest to God truth.

6  It was so low.  And it's barely going to compensate me for

7  what I've done, trips up here.  All the stuff I've had to go

8  through.

9  BY MR. BEACH:

10 Q     Okay, Ms. Beall.  Earlier, you testified that you

11 submitted what you believed was a qualified written RESPA

12 request.  Do you recall that?

13 A     Yes.

14 Q     And that was in I believe in August or September of

15 2007.  Do I have those dates correct?

16 A     Yeah or did you just say the words that I believe that

17 I did?

18 Q     You believed that you submitted a qualified written

19 RESPA request in approximately August or September of 2007.

20 Correct?

21 A     Yes.

22 Q     And I believe you testified earlier that you had not

23 received a response to that request.  Is that correct?

24 A     Not the appropriate required response, no.

25 Q     But you did receive a response?

1  A      A response, yes.

2  Q      So your testimony is just in your opinion, it didn't

3  qualify as a proper response under RESPA?

4  A      That's correct.

5              MR. BEACH:  Your Honor, may I have a moment?

6              THE COURT:  Um-hum.

7              MR. BEACH:  All right, no further questions, Your

8  Honor.

9              THE COURT:  Okay.  Redirect?

10             MR. LOIZIDES:  Your Honor, very briefly.

11                   REDIRECT EXAMINATION

12  MR. LOIZIDES:

13  Q      Some of this we may have been over.  Can you explain

14  to the Court, I think you have, but if you could explain

15  again briefly why you didn't send back the loss mitigation

16  package?

17  A      Yes.  That one of them was for -- I had requested a

18  deed in lieu of and then I found out you can't, cannot do a

19  deed in lieu of without a -- when you have a second lien on

20  a house.  So that was moot.  The other package that they

21  sent me was in the very beginning which was in July of '07

22  and when all this all started and they said I had to become

23  delinquent first before they would even look at it, but to

24  send it back and they would hold it until I actually was --

25  you have to -- at that time, you had to be three or four

1   months behind in your payment before they would start even

2   considering a loan mod and I wasn't willing to do that at

3   that time.  And the other one was regarding the short sale.

4   And I found out that -- well, they're in an equity position

5   with my house, they still are.  It's Wells Fargo on a

6   second, it's not -- so American Home would have nothing to

7   do with the short sale even though were trying to tell me

8   that I had to do it through them, it doesn't affect them.

9   The other reason was is because Arena [ph] Walker in the

10  loss mitigation, he's the manager.  He's the one Scott

11  Ellerby told me to get in touch with, he told me that my

12  loan was too valuable to the hedge fund that it was in

13  because it was over $500,000 and that the investor would

14  most likely want to raise my interest rate which at the time

15  was already 8.625 as opposed to lower it.  And that even if

16  they did consider a loan mod, now this was -- this

17  conversation was in September.  He said this -- even if they

18  did consider a loan mod, it would take until December or

19  January.  It would not be retroactive and they would not

20  stop any foreclosure proceedings or collection actions

21  against me during the time they were processing it.  So I

22  just didn't trust them, no.

23  Q    And well, I think you had testified to this before,

24  but weren't you told something about American Home's policy

25  on doing refi's period?

1  A      Well, I went into the trust and I found that -- in

2  fact, it's in my file.  I know it's not an exhibit, but the

3  end -- in the trust, the CTS link at Wells Fargo which Paula

4  and I discovered is where our loans were, they have a

5  reporting every month of how many loans they actually

6  modify.  And in the month of 2000 -- I just took two months

7  random, August of 2010, they modified five.  And this is out

8  of -- in my trust with thousands and --

9  Q      Well, what I'm asking, didn't somebody tell you

10 something about that?

11 A      Oh, that they don't modify loans?

12 Q      Yes.

13 A      Oh, yeah, it's all over the internet, just use Google.

14 Q      I didn't ask you if it was on the internet.

15 A      Okay.

16 Q      I wanted to know if anybody had told you about.

17 A      Well, the executives at American Home told me they

18 never modify loans.

19 Q      And who was that again?

20 A      That was Joe Borlatta.  He said -- he used the word

21 never.

22 Q      Okay.

23 A      And so did Andrew Blinn, B-L-I-N-N, I think.  And so

24 did Paul Messer in the retention department.

25 Q      Now I think you testified that the real estate market

1  was sliding down in 2007.

2  A      Yeah, um-hum.

3  Q      If you had had the -- I think -- and I think you also

4  testified that you spend hundreds of hours on this in 2007,

5  2008.

6  A      Yeah, it's not just the hours, it's the drama and the

7  trauma.

8  Q      Okay.  Well, let's just talk --

9  A      I mean --

10  Q      -- just about the hours for the moment, okay?

11  A      Yeah.

12  Q      If you had had that time back, would you have had the

13  ability to, you know, seek further real estate sales for

14  your business?

15  A      Absolutely.

16  Q      And how did you -- again, how did you come up -- we

17  had an exhibit on this and I'm not putting my hands on it,

18  but how did you come up with the $100 an hour?

19  A      It was just so low, I just threw it out.  But the real

20  -- the actual real money I make is $350 an hour, at least.

21  Q      Okay.  Well, let's just -- why don't we do a

22  hypothetical.

23  A      Okay.

24  Q      How long does it take you to sell a typical home?

25  About how many hours?

1  A     Forty to sixty hours.

2  Q     Okay.  And that's soup to nuts from getting the

3  business in --

4  A     Yes.

5  Q     -- to completing it?

6  A     Yes.

7  Q     All right.  And what would be your average commission

8  on that?

9  A     The average sale price --

10  Q     I guess what's the average sale price first?

11  A     $12,000.

12  Q     Well --

13  A     $400,000.

14  Q     All right, so your average sale price is about

15  $400,000?

16  A     Yeah.

17  Q     Okay.  And your commission on that 3 percent?

18  A     Yes.

19  Q     Which works out to what?

20  A     $12,000.

21  Q     $12,000.  Okay.  And if you -- you said 40 to 60

22  hours?

23  A     Per transaction, yes.

24  Q     All right.  So if we do 50 hours, that -- I think that

25  comes to $240 an hour.

1  A      Okay.

2  Q      I'm sorry if I got the math wrong, Judge.  Okay.  But

3  again, you believe $100 an hour is a very low estimate?

4  A      Yeah.

5  Q      Okay.

6  A      And if I may say, I also realize the real estate

7  market is slow and because I worked on this stuff and not my

8  real estate, you all aren't responsible for my income, I

9  mean, seriously.

10 Q      Okay.

11 A      If that makes sense.  So I thought that was just a

12 nice low, low figure to get reimbursed for what I really

13 lost.

14         MR. LOIZIDES:  Your Honor, I have no further

15 questions.

16         THE COURT:  Thank you, you may step down.  Ms.

17 Beall, you may step down.  Thank you.  Any other witnesses -

18 -

19         MR. LOIZIDES:  I have none.

20         THE COURT:  -- for the movant?  Should we do your

21 -- let's do your exhibits.

22         MS. GREECHER:  Your exhibits.

23         MR. LOIZIDES:  You don't have a witness --

24         MS. GREECHER:  No, he's just asking you to close

25 your case.  I think he wants to do your exhibits.  We have a

1   witness.

2           MR. LOIZIDES:  Yes, Your Honor, we would move for

3   -- if you'd like, I could go through the list of exhibits

4   we're seeking to have admitted.  I believe it's -- all

5   right, 1 to 6, #8, #10, #11, #13, 14, 15, 16, 17, 18, 19,

6   21, and 22 which were the only ones that were discussed,

7   Your Honor.

8           THE COURT:  All right.  So you're moving the

9   admission of your exhibits 1 through 6, 8, 10, 11, 13

10  through 19, 21 and 22.

11          MR. LOIZIDES:  I believe that's right, Your

12  Honor.

13          THE COURT:  Any objection?

14          MS. GREECHER:  Your Honor, I think just with

15  respect to Exhibit 1.  That's one page out of the servicing

16  log.  The plan trustee has a full copy of the servicing log

17  --

18          MR. LOIZIDES:  I have no problem with that, Your

19  Honor.

20          MS. GREECHER:  -- as an exhibit.  I mean, it's

21  just --

22          THE COURT:  I'm sorry, you want the full copy

23  admitted?

24          MS. GREECHER:  That -- yes, that would be

25  preferable.  And it is going to be admitted in terms of with

1  respect to the plan trustee's binder.

2          THE COURT:  What exhibit is it of yours?

3          MS. GREECHER:  I think it's 1.  Hold on.

4          THE COURT:  All right.  We'll -- I'll admit 2

5  through 6, 8, 10, 11, 13 through 19, 21 and 22, and I'll

6  admit the plan trustee's Exhibit 1 in the alternative.

7          MS. GREECHER:  And then , Your Honor, just before

8  I think we do -- may have one other question.

9          MR. BEACH:  Your Honor, may I just have a moment

10 to talk to Mr. Loizides?

11          THE COURT:  Yes, Rachel, make sure to hit the

12 button.  If you're warm in the audience, if you go to the

13 back, audience, gallery, what do you call it, I forget,

14 pews?  If you go to the back, there's a white thing there,

15 you can press the button and it will make it a little

16 cooler.  If not, don't worry about it.  Since people are

17 usually cold in here, I expect your happy not to have it

18 running.

19          MR. BEACH:  Your Honor --

20          THE COURT:  I can't -- I'm sorry, I can't hear

21 you.

22          MR. BEACH:  I'm sorry, Your Honor.  We're not

23 objecting, but with respect to Exhibit 2, it appears as

24 though there's a letter and then an email attached to it.

25 It doesn't appear to be a full letter.  We're not going to

1  objection to the admission, but just ask Your Honor to give

2  it whatever weight it deserves.  If it -- it seems like it's

3  a  combination of letters and emails.

4          THE COURT:  All right.  I note that.

5          MR. LOIZIDES:  Your Honor, I think that Exhibit 2

6  includes from what I can understand, two emails or

7  communications.  I don't know that the witness spoke about

8  every piece of this, but we would like to have the whole

9  thing admitted.  Again, obviously, this is just what she's

10  saying.  Nobody's stipulating to the truth of anything.

11          THE COURT:  Um-hum.

12          MR. LOIZIDES:  Just that the communications were

13  made.  If I have to, I could ask to recall the witness to

14  discuss the second part of that.  I don't think it's

15  critical.  I think it's just cumulative with the other

16  exhibits, but give the nature of the claim, it just -- I

17  think it's important for us to have it.  Or it's not

18  critical, but I -- it's relevant to the claim.

19          THE COURT:  Well, I'll accept it for what it is.

20  All right, that will close your case.  Ms. Greecher?

21          MS. GREECHER:  Your Honor, we do have one witness

22  here to testify.  We can address the other matter in terms

23  of the exhibits, but we are seeking to admit the transcript

24  of the Rule 2004 hearing where Mr. Dickman testified.  We

25  did try to reach him with servicing.  He's no longer an

1  employee of the trust and -- well was never an employee of

2  the plan trust.  He's no longer an employee of the debtors.

3  And it has come to our attention that he's no longer an

4  employee of American Home Mortgage Servicing.  Accordingly,

5  we would seek to admit his testimony under Rule 804 of the

6  Federal Rules of Evidence.

7              THE COURT:  Which exhibit is that?  It was 5,

8  right?

9              MS. GREECHER:  I believe so.

10              MR. BEACH:  Your Honor, I think the testimony is

11  stipulated to.  That was also an exhibit.  They had part of

12  that transcript just admitted by Your Honor as well as part

13  of their exhibit so --

14              THE COURT:  Any objection?

15              MR. LOIZIDES:  No objection, Your Honor.

16  Obviously, we're not stipulating to the truth of anything,

17  just that it would come in as a -- it would be admitted into

18  evidence.

19              THE COURT:  All right, it's admitted.

20              MS. GREECHER:  Your Honor, the trust would call

21  Ms. Eileen Wanerka to the stand.

22              THE COURT:  All right.  Please take the stand and

23  remain standing.

24          EILEEN WANERKA, PLAN TRUSTEE WITNESS SWORN

25              THE COURT:  I'm sorry, what was the last name?

1          MS. WANERKA:  Wanerka.

2          THE COURT:  Wanerka.

3   BY MS. GREECHER:

4   Q    Ms. Wanerka, by whom are you currently employed?

5   A    American Home Mortgage Liquidating Trust.

6   Q    And how long have you been employed by the trust?

7   A    Since December 1, 2010.

8   Q    What position do you hold with the trust?

9   A    Director of claimant's administration.

10  Q    And what are your roles and responsibilities with

11  respect to that position?

12  A    I am in charge of the claims process.  I assign all

13  the new claims, review operations and tax claims, and then

14  also set them up for the filings from the omnibus

15  objections.

16  Q    Prior to working for the trust, by whom were you

17  employed?

18  A    American Home Mortgage.

19  Q    And what position did you have at American Home

20  Mortgage?

21  A    Assistant vice president.

22  Q    Is that the position you held at the time of American

23  Home Mortgage's bankruptcy filing?

24  A    No.  In the -- it was assistant vice president, but of

25  a division that no longer existed post bankruptcy which was

1  wholesale operations technology.

2  Q    Okay.  What were your roles and responsibilities with

3  respect to your position post bankruptcy?

4  A    I was the go to person for all loan origination issues

5  and enhancements with our unified system which was our loan

6  origination system.  And I was the -- I did workflow changes

7  to make it more efficient for the employees and was the

8  liaison between the business development group, training,

9  policies and procedures for new processes that rolled out

10  and enhancements.

11  Q    To be clear was that prior to the bankruptcy filing or

12  after?

13  A    I'm sorry, prior.

14  Q    Okay.  And what were your positions -- or excuse me.

15  What were your responsibilities after the bankruptcy file?

16  A    The same as today, the claims.  And for a while there,

17  we were doing loan sales so I was building the collateral

18  for that, making sure there were no deficiencies in the docs

19  and preparing those for loan sale and then the claims.

20  Q    Okay.  In your employment at AHM and now with the

21  trust, have you become generally familiar with the servicing

22  practices of American Home Mortgage SV?

23  A    Yes.

24  Q    And to be clear, I'm going to use American Home

25  Mortgage Servicing or servicing to identify the legal term

1  American Home Mortgage SV, Inc., and I just want to make

2  that clear for the record that we're not relating -- or that

3  we're not discussing the purchaser of the debtor servicing

4  business.  Are you generally familiar with the practices

5  regarding servicing's contact with the borrower during the

6  servicing of their loan?

7  A    Yes.

8  Q    Are you familiar with the claims filed by Ms. Beall?

9  A    Yes.

10  Q    And that -- does that include her proof of claim and

11  her administrative claim?

12  A    Yes.

13  Q    What did you do to prepare yourself for today's

14  hearing?

15  A    I reviewed the loan origination file, the image file,

16  and also the claims, the servicing comments, the payment

17  history, and discussions with counsel.

18  Q    Okay.  What happens generally if a borrower has a

19  question regarding the servicing or payment of a loan?

20  A    They would call into the customer service or with

21  American Home Mortgage Servicing, it was the customer care

22  line.

23  Q    And what would happen on that call?

24  A    The agent answering the call would talk to the

25  borrower, find out what they're calling for.  If they could

1  answer the question, they would and if not, they would

2  direct them or transfer them to the proper department.

3  Q     And how are these activities recorded by servicing?

4  A     They're captured in the servicing comments of the

5  LSAMS [ph].

6  Q     I'll direct you to the binders that are before you,

7  the plan trustee binders, it's Volume 1 of 2, Exhibit 1.

8  Are you familiar with the docket -- or I'm sorry, Exhibit 1?

9  A     Yes.

10 Q     And what is it?

11 A     It's -- sorry, it's the servicing comments from LSAMS.

12 Q     And you said LSAMS?

13 A     Yes.

14 Q     What is that?

15 A     LSAMS is the software system that American Home

16 Mortgage Servicing uses to -- it's where all the loan data

17 is stored and where they also capture all the comments and

18 payment histories on the loan.

19 Q     Is the information contained in this report, the type

20 of information that servicing records with respect to each

21 loan?

22 A     Yes.

23 Q     And who enters the information that is contained on

24 this document?

25 A     The employees either answering the phone or in the

1  particular departments where they're in contact with the

2  borrower.

3  Q    And when is that information entered?

4  A    As they're on the phone or as they're doing a task or

5  immediately after.

6  Q    Was this a document that was created and maintained in

7  the course of servicing's regularly conducted business

8  activity?

9  A    Yes.

10  Q    Okay.  You can close that.  Ms. Wanerka, do you know

11  if -- I'm sorry.  Did Ms. Beal make timely payments on her

12  loan?

13  A    From the servicing comments and the payment history

14  that I reviewed, she for the majority made them by the end

15  of the month so they incurred late charges and then there

16  were a couple delinquent payments that I saw which would

17  report to a credit agency as 30 days late.

18  Q    Okay.  When did her loan close?

19  A    May 20, 2004.

20  Q    And when was Ms. Beall's first late payment or when

21  did -- I'm sorry, when was the first time she incurred late

22  charges?

23  A    September '04 and then she was delinquent, 30 days

24  delinquent in October '04.

25  Q    And between the time of the close of her loan and the

1  time in which the debtors sold their servicing business, do

2  you know how many times she received -- or she had late

3  charges?

4  A     About 24, 25 times.

5  Q     Out of how many payments?

6  A     I believe there was 36, 37.

7  Q     Okay.  How did servicing generally handle Ms. failure

8  -- Ms. Beall's failure to make timely payments?

9  A     When you reach the 16th day, like the payment is due

10 on the 1st.  On the 16th, they would -- the late charges

11 would incur and then there's a -- if it reaches past the

12 20th of the month, there's a 20 day letter that's sent to

13 the borrower saying that the loan's delinquent and then they

14 will also reach out to the borrower by phone and try to find

15 out when they plan on payment.

16 Q     And at some point in time, did Ms. Beall seek

17 assistance in connection with an inability to may payments?

18 A     Yes.

19 Q     What, if any, options did servicing provide Ms. Beall

20 at that time?

21 A     Well at one point, she had called and mentioned

22 refinance to the portfolio defense department reached out to

23 her.  That's a department that when they know the borrower

24 is going to try to refinance, they will reach out to them to

25 try to keep it in house.  And then after that, she calls and

1  I believe she inquired about a deed in lieu.

2  Q    Where there any other options provided to her?

3  A    From my review of the servicing comments, there was a

4  payment plan offered, a repayment plan, the deed in lieu,

5  and loss mitigation to try to modify.

6  Q    Okay.  Were any of those options accepted by Ms.

7  Beall?

8  A    No.

9  Q    Okay.  You mentioned portfolio defense.  What was that

10  again?

11  A    It's a -- when a borrower is going to refinance and

12  servicing becomes aware, the portfolio defense department

13  will reach out to them to try to get them to refinance to

14  keep the loan in house with servicing.

15  Q    And why would refinancing be an option for a borrower

16  in connection to avoiding foreclosure?

17  A    Well, refinance if they're eligible based on their

18  credit and all of that, they can refinance and that pays off

19  their original note.

20  Q    Okay.  And I believe you testified that there were

21  repayment plans that were offered, also offered.  What does

22  a repayment plan do?

23  A    What it does is it takes the amount of that they're

24  past due and it will give them a either a three, six months,

25  it depends on the borrower and it will allow them to pay

1  that shortage, that overdue amount over the next few months

2  in addition to their mortgage payment that is still due

3  every month.

4  Q      Did Ms. Beall accept that option?

5  A      No.

6  Q      Okay.  And can you describe what happens in a deed in

7  lieu situation?

8  A      The borrower would deed the property back.

9  Q      Did Ms. Beall seek a deed in lieu of foreclosure?

10  A      She called and inquired about it.

11  Q      And what did servicing -- how did they respond in

12  response -- excuse me.  How did they respond to that

13  request?

14  A      They said that they would send her out a loss

15  mitigation package and also say that the property would need

16  to be marketed for six months.

17  Q      Okay.  Why would servicing require that the property

18  be marketed for six months?

19  A      Because they would prefer to have the property sold

20  and then the note is paid off before taking the property

21  back and then having to market it.

22  Q      Did Ms. Beall agree to market the property?

23  A      No.

24  Q      Okay.  Can you describe --

25            MR. LOIZIDES:  Your Honor, I'm going to object to

1  the extent that this witness's testimony is simply based on

2  a review of the servicing log which I'm not objecting to the

3  admission of that.  It'll save some time.  I'm not, you

4  know, I'm not sure if she's testifying from personal

5  knowledge or just from review of the servicing log and I

6  would ask that that be made clear.  And if it was just from

7  the servicing log, it seems to me that that -- that the

8  document speaks for itself.

9          MS. GREECHER:  Your Honor, one moment, we might

10  be able to speed this up then.

11          Your Honor, a lot of this testimony does provide

12  some context with respect to how the -- how to read the

13  servicing log, what kind of plans would be made available to

14  borrowers, and provide some general background to show that

15  there are options made available to borrowers in situations

16  where they aren't able to make their payments.  Those

17  payments may not be acceptable to a particular borrower, but

18  they are made available to them.  It also provides some

19  testimony which we haven't got into with respect to the need

20  to file a loss mitigation package.

21          THE COURT:  All right, I think we're done with

22  the first.  I think you established that.  Why don't we move

23  on to the loss mitigation package?

24          MS. GREECHER:  Sure.

25  BY MS. GREECHER:

1   Q    Ms. Wanerka, what is a loss mitigation package?

2   A    It's a request to the borrower to provide current

3   paystubs, bank statements, things like that so that they can

4   determine what the borrower would be eligible for with long-

5   terms if they have the ability to pay.  So to determine what

6   is the best way to go.  Is it to modify it?  Is it to offer

7   a repayment plan?  Do a short sale, a deed in lieu.  It's --

8   Q    So does servicing offer a loan modification in

9   situations where a borrower has not provided a loss

10  mitigation package?

11  A    No, they need the loss mitigation package.  They need

12  the documentation requested in that in order to determine

13  the best way to move forward.

14  Q    And had servicing determined that a -- if Ms. --

15  excuse me.  Had servicing determined that a loan

16  modification was appropriate from Ms. Beall, assuming that

17  she had provided a loss mitigation package, does servicing

18  have the final authority to approve that modification?

19  A    No, they would have to go to Wells Fargo on this one.

20  Q    Okay.  Are you aware, did Ms. Beall complete and

21  return any of the loss mitigation packages provided to her?

22  A    No.

23  Q    And how many were provided to her?

24  A    Three.

25  Q    Did servicing ever advise Ms. Beall that she needed to

1   complete a loss mitigation package before they would

2   consider a loan modification?

3             THE COURT:  And I assume your answer is going to

4   be based on your review of the log?

5             MS. WANERKA:  Yes.

6             MS. GREECHER:  Okay.

7             MS. WANERKA:  And several times.

8             MS. GREECHER:  Your Honor, that would conclude

9   our testimony.

10            THE COURT:  All right then, thank you.  Cross?

11            MR. LOIZIDES:  If I could just have a second to

12  confer with my client?

13            THE COURT:  Yes.

14            MR. LOIZIDES:  Thank you, Your Honor.  I'm sorry,

15  is it Ms. Wanerka?

16            MS. WANERKA:  Wanerka.

17            THE COURT:  Wanerka.

18            MR. LOIZIDES:  Wanerka, I am sorry.

19            THE COURT:  Wanerka.

20            MS. WANERKA:  That's okay.  I can't even say it

21  sometimes.

22                      CROSS EXAMINATION

23  BY MR. LOIZIDES:

24  Q     The -- have you ever spoken to Ms. Beall?

25  A     No.

1   Q      Have you ever met her before today?

2   A      No.

3   Q      Did you ever have any email communications with her?

4   A      No.

5   Q      Did you ever have any correspondence with her?

6   A      No.

7   Q      Did you have any other communications with her?

8   A      No.

9              MR. LOIZIDES:  Okay.  Your Honor, in the interest

10  of time, I think that's all I've got, thanks.

11             THE COURT:  All right.  Redirect?

12             MS. GREECHER:  No, Your Honor.

13             THE COURT:  All right, thank you, you may step

14  down.

15             MS. WANERKA:  Thank you.

16             THE COURT:  Any other witnesses, Ms. Greecher?

17             MS. GREECHER:  No, but we would move the

18  admission of all of the exhibits in our evidence binders.  I

19  believe it's 1 through 15, but let me confirm.  That's

20  correct.  We have 1 through 15 and I believe that they are

21  all stipulated.

22             THE COURT:  Any objection?

23             MR. LOIZIDES:  No objection, Your Honor.

24  Obviously, many of these are pleadings and obviously they

25  would come in for the fact that they were on the public

1  record and obviously not for the truth in all cases, but we

2  have no objections.

3          THE COURT:  All right.  They're admitted without

4  objection.  Rebuttal case?

5          MR. LOIZIDES:  You Honor, if I again could have

6  just a second to confer with my client.

7          THE COURT:  All right, let's take a short recess

8  actually, about five minutes or so.

9          MR. LOIZIDES:  I -- okay, thank you.

10          (Recess from 5:36 p.m. to 5:48 p.m.)

11          THE CLERK:  All rise.

12          THE COURT:  Please be seated.  Mr. Loizides?

13          MR. LOIZIDES:  Your Honor, we have no further

14  evidence.

15          THE COURT:  All right.  That will close the

16  evidentiary record, let me hear argument.

17          MR. LOIZIDES:  Yes, Your Honor.  I think I'm not

18  quite sure how to proceed because I think a lot of what I

19  would say sort of goes to the debtors' objections, but I

20  suppose I should sort of deal with the prima facie case at

21  first.

22          THE COURT:  That's fine.

23          MR. LOIZIDES:  Your Honor, I think there is very

24  significant evidence in the record both testimonial and

25  documentary that the claimant here spent an inordinate, I

1    don't want to say an inordinate, but a huge amount of time,

2    a huge amount of unnecessary time trying to get basic

3    information about her loan, including the identity of the

4    servicer and the identity of the actual owner of the loan.

5    That she received conflicting information from various

6    representatives of the debtors and that it was really not

7    until March of 2008, after the U.S. Trustee's Office had

8    brought it -- was brought in that she finally got a

9    definitive response.

10          I guess, you know, one basic issue is benefit to

11   the estate.  I look at this case as falling under the class

12   of cases sort of like post-petition tortes committed by the

13   debtor.  Does -- if the debtors' employee runs somebody

14   over, does that benefit the estate?  Well of course no.  But

15   nevertheless, the Courts have recognized that that's sort of

16   the cost of doing business.  So the benefit of the estate is

17   a sense the way -- in a sense the right to remain in Chapter

18   11.  So that's how I would address that issue, Your Honor.

19          And, you know, I have to confess that, you know,

20   I don't have the history with this case, obviously, and

21   everybody else here does.  I understand that this is not the

22   first time these sorts of issues have come up in this case,

23   but from what I gather, at some point, the Court -- and I

24   don't mean to presume anything, but the Court did believe

25   that, in fact, there was an obligation to turnover some of

1  this information by the debtors and that they, in fact, did

2  not do so.  And again, I'm talking about other cases.

3       So to the extent that the debtors had that

4  obligation, they didn't meet that obligation and they

5  essentially forced the claimant here to write and I don't

6  know how many letters it was two dozen letters, have dozens

7  of phone calls, and spent hundreds of hours trying to get

8  this information.  The burden of that should fall not on the

9  claimant, but on the estate.

10      There was some discussion in cross examination

11 about damages.  Now look, my client, the claimant here is

12 paid on a commission basis.  It's, therefore, difficult to

13 quantify the damages.  That doesn't mean there are no

14 damages, it just means given the nature of how she is paid.

15 We have tried to come up with a conservative estimate based

16 on the time that she spent and what she normally would make

17 through a sale.  Can we prove to a definitive certainty that

18 had she had those hundreds of hours back that she would have

19 gotten another commission or two in?  No, but it could have

20 been maybe three commissions, maybe it would have been zero,

21 but we're trying to come up with a sort of a best estimate

22 of that.  And we think if anything, we've been fairly

23 conservative as to that.

24      So I think that's basically if for the prima

25 facie part of this, Your Honor.  I'm happy either to address

1 ‖ the objections now or let the -- or address any questions

2 ‖ the Court has.

3 ‖          THE COURT:  Well, let me hear from the debtor

4 ‖ then.

5 ‖          MR. LOIZIDES:  Okay, thank you.

6 ‖          THE COURT:  Or excuse me, the plan trustee or

7 ‖ plan administrator, whatever you want to call yourself.

8 ‖          MS. GREECHER:  Margaret Greecher, Your Honor, on

9 ‖ behalf of the plan trustee, although I find myself making

10 ‖ that mistake several times a day.

11 ‖          Your Honor, Ms. Beall has stated these facts at

12 ‖ least three times in previous pleadings with this Court, in

13 ‖ representations to this Court.  Specifically, in connection

14 ‖ with her Rule 2004 motion, her proof of claim, and her stay

15 ‖ relief motion.  These are not new facts that are being

16 ‖ asserted today.  And accordingly -- oh, I'm sorry.  And she

17 ‖ also stated them in her Virginia action outside of this

18 ‖ Bankruptcy Court.

19 ‖          Your Honor has ruled that she was not entitled to

20 ‖ additional documents than what she received in her Rule 2004

21 ‖ motion.  And she -- and Your Honor provided the opportunity

22 ‖ for her to litigate her claim in her Virginia action.  And

23 ‖ she testified today that she chose not to list all of the

24 ‖ causes of action that she could have brought based off

25 ‖ advice of the counsel and she was represented in that

1  Virginia action.

2         Specifically, there are then several threshold

3  matters that should make this administrative claim barred

4  before this Court.  Specifically, with respect to the post-

5  petition actions that she raised in connection with her Rule

6  2004 motion.  By her motion, Ms. Beall requested information

7  regarding her loan, including her loan file.  At the

8  hearing, she represented that she knew who the owner of her

9  loan was and that it was the AHMIT2004-2 trust.  She also

10  testified that she had received a copy of her loan file.

11  She raised issues regarding the confusion of the master

12  servicer of her loan.  The debtors produced a witness, Mr.

13  Dickman who testified regarding the connections between

14  servicers and the master servicers and investors of the

15  loan, as well as, the general requirements on how to obtain

16  loan modifications.

17         In denying Ms. Beall's Rule 2004 motion, this

18  Court specifically found that Ms. Beall was provided all of

19  the information that she was entitled to.  And, Your Honor,

20  I am going to quote from the transcript but --

21         THE COURT:  Uh-oh, are you going to quote me?

22         MS. GREECHER:  I am.

23         THE COURT:  Okay.

24         MS. GREECHER:  Your Honor --

25         THE COURT:  Correct my syntax, please.  Go ahead.

1          MS. GREECHER:  Sure.  It says "I think, frankly,

2   it's simply moot to the extent she's seeking additional

3   information such as who the master servicer is or what

4   policies of the third parties are, who the actual owner of

5   her loan is.  I'm not at all convinced that she's entitled

6   to that.  Her issues are with the servicer.  The servicer is

7   the debtor.  Lawyers have certified to this Court that the

8   loan is no longer owned by a debtor entity.  I think that's

9   sufficient under Rule 2004 and ends the inquiry."  Given

10  this Court's ruling which is the law of the case, Ms.

11  Beall's administrative claim which is premised solely on the

12  idea that the debtors were required to provide the very

13  information requested by Ms. Beall in her 2004 motion should

14  be denied.

15          Ms. Beall fails to cite and the plan trustee

16  could not find any support for the proposition that the

17  unsuccessful Rule 2004 movant is awarded damages for

18  personal time in bringing the motion or in time spent in

19  attempting to obtain the information that was denied to the

20  movant.

21          Ms. Beall subsequently filed her proof of claim

22  and in that proof of claim, raised post-petition

23  allegations, specifically these allegations that she's

24  raising now.  It was claimed in Paragraphs 11, 12, and 28, I

25  believe.  And then she sought stay relief to pursue those

1  actions.

2          In her stay relief motion, Ms. Beall specifically

3  sought relief to file a complaint against the debtors to

4  protect her home which "had been jeopardized by the

5  predatory loan origination and predatory servicing practices

6  of American Home Mortgage."  That's located in her motion

7  introductory paragraph and in Paragraph 10.  The stay relief

8  motion provided and I'm quoting again from the motion "The

9  complaint movant seeks to file originates from debtors'

10 participation in the allegations of violations of movant's

11 rights under one, the *Consumer Protection Act, 15 USC*

12 *Section 1601 et seq.;* two, the *Truth-in-Lending Act,*

13 *Regulation of the Federal Reserve Board, 12 CFR Part 226;*

14 and three, *Real Estate Settlement Procedures Act, 12 USC,*

15 *Section 2601 et seq.*, RECO violations unjust enrichment,

16 breach of fiduciary duty, fraud, negligent

17 misrepresentation, breach of contract, civil conspiracy,

18 violation of the Fair Debt Collection Practices Act.

19          In addition to those potential causes of action

20 that she identified in the stay motion, she included lengthy

21 factual and legal allegations that were part and parcel of

22 her unsecured claim.  Ms. Beall specifically asserted her

23 concerns regarding the post-petition actions of the debtors,

24 including the unknown identify of the true owner and/or

25 master servicer of her loan and the post-petition failure to

1  comply with RESPA.

2          In granting Ms. Beall's stay relief motion and

3  I'm going to quote you again, the Court found "The reality

4  is someone's going to have to decide this issue", excuse me,

5  "decide this claim at some point in the future.  We're

6  waited long enough.  Ms. Beall has a right as the Plaintiff

7  to choose her forum.  She's chosen her forum and the method

8  of proceeding.  I don't think the debtors would be

9  substantially prejudiced in any way in defending the case in

10  Virginia as opposed to here."  Your Honor, that's Docket

11  Number 4100, Pages 17 to 18.  And I believe it is Exhibit #8

12  to our documents.

13          Following relief from stay, Ms. Beall

14  subsequently retained counsel and commenced her litigation

15  against the debtors, Wells Fargo, the AHMIT2004-2 trust,

16  Omsy [ph] which is the purchaser of the debtors' servicing

17  entities, and others.  Ms. Beall's amended complaint was

18  denied with prejudice.  Thereafter, until today, Ms. Beall

19  argued that the claims non-identified in the Virginia action

20  were still viable through her proof of claim.

21          And for the same reasons that the Beall claim was

22  withdrawn, we believe that the administrative claim should

23  be denied.  Specifically, in her Virginia action, Ms. Beall

24  included precise post-petition allegations in the Beall

25  claim, the stay relief motion, and the current motion for

1  administrative expense.  The Virginia Court determined that

2  the alleged actions did not affect Ms. Beall's opportunity

3  to bring her litigation and as a result, we believe that

4  finding should be carried over here to eliminate any damage

5  assertions by Ms. Beall.

6         Moreover, Ms. Beall's failure to raise all of her

7  causes of action does not allow her to resurrect them here.

8  The doctrine of res judicata does not stop at those actions

9  that were dismissed.  But the doctrine also gives

10  dispositive effect to a prior judgment of a particular

11  issue, although not litigated, could have been raised in

12  earlier proceeding.  And, Your Honor, I'm quoting from the

13  Third Circuit case, *Taggart vs. Chase Bank*.  I did provide a

14  copy as an exhibit with the debtor -- or excuse me, the plan

15  trustee's supplement to this motion.  And I do want to take

16  a moment.  I know we're getting late in the day, to discuss

17  *Taggart* because I do believe that it is directly on point.

18         In *Taggart*, this is a situation where a pro se

19  borrower initiated an action which was removed to Federal

20  Court asserting violations of TILA regarding his mortgage

21  closing on July 20, 2005.  The District Court dismissed the

22  complaint with prejudice because his action was time barred

23  and not actionable.  Thereafter, the borrower filed a

24  subsequent complaint, also removed to Federal Court which

25  involved 17 claims, including the claims brought under TILA,

1    as well as, the Fair Credit Reporting Act, the Real Estate

2    Settlement Procedures Act, and the Fair Debt Collections

3    Practices Act.  The District Court dismissed the complaint

4    with prejudice, finding that although the borrower had

5    asserted different causes of action, both lawsuits concerned

6    the same mortgage and loan transaction.

7            Because these causes of action could have been

8    raised in the first complaint, the second complaint was

9    barred by res judicata.

10           THE COURT:  Um-hum.

11           MS. GREECHER:  The borrower appealed to the Third

12   Circuit which affirmed the District Court.  In doing so, the

13   Third Circuit ruled that a dismissal on statute of

14   limitations grounds is a dismissal on the merits for res

15   judicata purposes.  The Third Circuit also stated that the

16   thrust of the two complaints is the same as *Taggart* seeks

17   redress for allegedly wrongful conduct in connection with

18   the same underlying event, the July 20, 2004 mortgage.  Even

19   though his second complaints relies on new violations and

20   different legal theories under the Fair Credit Reporting

21   Act, the Real Estate Settlement Procedures Act, and the Fair

22   Debt Collection Act, *Taggart* is merely attempting to split a

23   cause of action which he is not permitted to do.  And, Your

24   Honor, that is at *375 Fed Appx 268*.

25           Your Honor, the facts here are identical to the

1    *Taggart* case, if not more egregious.  Here, Ms. Beall

2    identified all of the causes of action in her proof of claim

3    and stay motion, clearly admitting that the causes of

4    actions could have been brought in the Virginia action.  In

5    fact, the Debtor in this Court, expected them to be brought

6    in the Virginia action.  Of the claims brought, the equal

7    credit opportunity claim was specifically dismissed with

8    prejudice as being barred by the applicable statute of

9    limitations.

10          Specifically, the Virginia District Court stated

11   "And again, We're way beyond the scope of the complaint

12   itself, but I mean, on the face of the complaint, the ECOA

13   claim is time barred.  It is.  And I don't think you can use

14   a complaint to argue a motion against a motion to dismiss.

15   I just don't see the necessary allegations that would get

16   you around the problem the claim is time barred and,

17   therefore, I'm going to grant the motion to dismiss. The

18   ECOA claim is out."  And, Your Honor, that's at the hearing

19   on February 6, 2009 in the Virginia action, Page 7, Line 7

20   through 14.

21          Following *Taggart* and the Third Circuit cases

22   cited therein, the dismissal of the ECOA claim as time

23   barred is a dismissal on the merits for res judicata

24   purposes.  Accordingly, the claims and causes of actions

25   that could have been brought in her Virginia action are now

1   barred because Ms. Beall cannot split her causes of action.

2   Because both the proof of claim and her stay relief motion

3   contemplated the very same post-petition actions that are

4   now being brought her administrative motion, the

5   administrative expense claim should be barred.

6           Your Honor, I just went through a lot of detail

7   with respect to our res judicata argument.  And essentially,

8   for the same reasons, we believe that the administrative

9   motion should be denied based on judicial estoppel

10  arguments.  Here, Ms. Beall represented to this Court that

11  her complaint in the Virginia action would include those

12  causes of action in her proof of claim and those identified

13  in her stay relief motion.  The debtors and the committee

14  raise concerns about not having a complaint to view and this

15  Court intended Ms. Beall to select her forum.  When it did,

16  it was clear that it was an either or proposition.  Ms.

17  Beall obtained counsel, moved forward with only certain

18  causes of action in the Virginia action and only after Ms.

19  Beall lost in the Virginia action did she return to this

20  Court seeking to litigate her omitted claims and filing her

21  administrative expense claim.

22          It's undeniable that the debtors' estates are

23  being prejudiced by defending itself twice, if not three

24  times; first in the Virginia action, second in connection

25  with the objections to the Beall claim which were only

1  withdrawn today, and third, now in connection with the
2  administrative expense motion.  Given the representations by
3  Ms. Beall to this Court, there are inconsistent actions
4  taken in the Virginia action and the prejudice to the
5  debtors' estates by virtue of expending the costs and
6  resources to defend itself in multiple forums, the Court
7  should deny the administrative expense motion on judicial
8  grounds.

9           Your Honor, that is everything with respect to
10 the motions to dismiss.  I do have a couple of comments on
11 the merits.  Specifically, we would argue that Ms. Beall
12 failed to meet her damages.  There appears to be no evidence
13 of lost profits, no evidence of expenses that she incurred,
14 and no evidence of hourly detail or any sort of true
15 indication of how that calculation was made about.  I know
16 there was a lot of testimony that I think Mr. Loizides said
17 it correctly when he said that, you know, it was based on a
18 maybe.  That there may be a house or two houses that could
19 have been lost, but there's no evidence here with respect to
20 that.

21          And it's important to note that Ms. Beall
22 testified that she chose not to pursue the loss mitigation
23 efforts that were provided to her by the servicer.  The
24 servicing log, Mr. Dickman's testimony all show that she was
25 advised the appropriate party was the servicer and she made

1  the decision not to follow the servicer's protocols,

2  rejected the potential opportunities that were given to her

3  with respect to avoiding foreclosure and as a result, should

4  not be rewarded for trying to circumvent the servicer's

5  policies.  I think that's everything.

6          THE COURT:  Thank you.  Mr. Loizides?

7          MR. LOIZIDES:  Yes, Your Honor, I know it's

8  getting late and I do appreciate the Court taking this

9  amount of time on what is, you know, not exactly a Supreme

10  Court issue, I suppose, but it is nevertheless important to

11  my client.

12          On the -- let me just hit the -- there seems to

13  be basically three point, the damages, the state -- I keep

14  calling it -- the Federal Court action, and the 2004 motion.

15  Let me deal with the first one first, the 2004 motion.

16          It had been my impression and if I'm wrong, I may

17  have a problem here.  That at that hearing, the debtors'

18  position, well in fact, Mr. Dickman testified to this, that

19  it was not the debtors' policy to give borrowers information

20  about who the master servicer and who the owner was.  And at

21  that point, Ms. Beal had done a heck of lot of research on

22  her own to get this information.  But she did not know this.

23  She believe it based on her own efforts.  And it was my

24  understanding the Court later took a different view in

25  February hearing that, in fact, the debtors did have that

1   obligation.   Now if I'm wrong about that, I'm wrong about

2   that.   I wasn't here at the time.   I'm not trying to make

3   excuses.

4            THE COURT:   Are you talking about the *Dobbins*

5   case?

6            MR. LOIZIDES:   What?

7            THE COURT:   Are you talking about *Mona Dobbins*?

8   I assume.   You're talking about the *Mona Dobbins* case, I

9   assume?

10           MR. LOIZIDES:   The -- well, yes, I mean, I think

11  it arose in that context, Your Honor.   As I said, I've

12  looked at the transcript.   I was not even -- I don't think I

13  was even involved in this case at that point.

14           THE COURT:   Um-hum.

15           MR. LOIZIDES:   I would like to turn to the res

16  judicata judicial estoppel kind of argument.   And again,

17  some of this is, you know, based on where I am now and that

18  is this.

19           Ms. Beal filed of course as a pro se litigant,

20  she filed an unsecured pre-petition claim.   That's what it

21  was.   She filed this claim as a proof of claim, not as an

22  administrative claim.   She testified she didn't know what an

23  administrative claim was.   There is some discussion in that

24  claim in talking about the whole history about some stuff

25  that happened post-petition.   But to say that that was an

1  administrative claim, I think would be a stretch.

2         I don't -- I can't say what the Court's intention

3  was, but I can certainly say that there certainly is nothing

4  in the record to suggest that this claimant had the right to

5  liquidate a post-petition admin claim in any other forum.

6  At least in my experience, that would be unusual, especially

7  in the absence of something pretty express.  And if you're

8  debtors' counsel, there's a huge difference between dollars

9  if you got to take out of the estate and pay over to

10  somebody and dollars that really don't do anything, they

11  just dilute the bottom line by a millionth of a percent or

12  something like that.  I think the distribution to unsecured

13  creditors here is less than 1 percent.  Now they chose to

14  litigate it anyway for whatever reason, but it certainly

15  wasn't for financial reasons in the sense that the value of

16  the claim was not -- couldn't have been what they were

17  worried about.

18         Maybe it was the Court's intention or

19  understanding to have both administrative and non-

20  administrative claims liquidated at another forum or maybe

21  you'd come back and have them apportioned.  It certainly

22  could not have been my client's understanding.  She

23  testified she had no idea what an administrative claim was.

24         Now in terms of what was at issue in the Virginia

25  lawsuit.  There is discussion in the amended complaint in

1  the beginning about equitable tolling on the basis of

2  fraudulent concealment.  And in that context, there is

3  discussion about some of the things that happened pre-

4  bankruptcy and post bankruptcy as to Ms. Beal's efforts to

5  get information.  There is no cause of action anywhere for

6  equitable tolling.  That's not a claim.  That's sort of

7  anticipating the defense of statute of limitations.  And

8  that was the only reason that was put in there. There is

9  nothing in the complaint about the -- there's no cause of

10 action based on the post-petition conduct.  Her claim as she

11 testified was about fraud associated with her mortgage, with

12 the mortgage origination.  And that's the crux of her pre-

13 petition claim.

14          The post-petition claim, I'm not going to say

15 it's totally unrelated, it's -- there is a connection there.

16 But the post-petition claim is based on things that she had

17 to do after the bankruptcy case to try to get this

18 information as a freestanding claim.  And I don't see how

19 the Third Circuit case applies in this instance because

20 first of all, she didn't bring any claims in the Virginia

21 action based on post-petition conduct.  She made an argument

22 based on equitable tolling to pursue other claims that were

23 based entirely on the original transaction.

24          I would just note, I don't know if we should get

25 to this level of detail, that the argument on statute of

1  limitations was not a continuing course of fraud.  It's not

2  as if they continued to, you know, get more and more

3  refinances each of which was fraudulent.  It was equitable

4  tolling based on concealment which was -- which isn't a

5  cause of action in any sense.

6           So I don't think that the Third Circuit case

7  applies because of that and also because I don't believe it

8  was -- it certainly wasn't my client's understanding that

9  she had been given the right to liquidate an administrative

10 claim in another forum.

11          On the damages issue, I don't see why a claimant

12 in this situation should be penalized because she's paid on

13 a commission rather than an hourly basis.  That's just the

14 nature of it.  You have to come up with an expected value,

15 we've done that.  We've tried to come up with a conservative

16 number.  There just isn't any other way to do it, but I

17 don't see why someone who is paid in that fashion should be

18 penalized based on circumstances like this.  It would sort

19 of be -- well, I mean, you know, you could have sort of

20 false precision in that sort of situation.  We've come up

21 with a good faith conservative estimate.

22          I'm happy to answer any other questions.  I don't

23 want to take up more of the Court's time.

24          THE COURT:  I don't have any, thank you.

25 Anything further from the plan administrator?

1          MS. GREECHER:  No, Your Honor.

2          THE COURT:  Okay, thank you.  Well, there are a

3    number of issues, legal issues raised and let me just deal

4    with those first.  Actually, I may not deal -- let me deal

5    with the factual issues first.

6          I believe and find that Ms. Beall really got as I

7    said in the end of October, all she was entitled to at the

8    time.  She got her loan file.  She got the information that

9    was mentioned at that hearing.  Now she then spent six more

10   months asking for information that she wasn't entitled to.

11   And even though she was told many times, she chose not to

12   believe the answers and continued to ask the questions.  I

13   have no doubt in my mind that it took a lot of time and

14   effort and was extremely important to her as I believe

15   probably all of our homes are to us.  But the question is

16   whether that gives rise to some sort of claim against the

17   debtors to reimburse her for her time and expenses in

18   pursuing those -- that course of conduct and I don't think

19   it does under the law or under the facts.

20         Under the administrative expense claim analysis,

21   I do like Mr. Loizides -- I like your analysis with the

22   connection with the post-petition torte for example.  If you

23   required every admin claim against a debtor to specifically

24   provide direct benefit to that debtor, you'd really be

25   signing a blank check for a debtor to do whatever they

1  wanted and that's clearly not the case.

2          But in this case, I really don't see that analogy

3  ultimately being applicable to the facts here because the

4  debtor didn't do anything wrong.  They attempted through

5  various people to answer these questions.  They got -- some

6  answered X, some answered Y, some answered Z.  They weren't

7  necessarily trying to help them.  Correspondence with Mr.

8  Enos is a good example of a lot of attempt to provide the

9  answers.

10          I spoke earlier in the *Mona Dobbins* case with

11  some frustration as to the specific facts there, but this is

12  not the *Dobbins* case.  Now for instance, *Ms. Dobbins* won on

13  the merits and ultimately Ms. Beall did not.  And the

14  damages were related not just to conduct on a post-petition

15  basis and failing to give somebody the idea of a loan

16  servicer or something like that.  There was a lot of stuff

17  that went on that case and there was a factual record to

18  support it and none of that's here.

19          The debtor didn't do anything wrong here.  So we

20  really don't meet the cost of doing business aspect because

21  again, there was no damage to Ms. Beall because she was

22  voluntarily pursuing a course of conduct that she wanted

23  information, but she really had no legal right to it.  So,

24  you know, if it took her a lot of time and effort, that's

25  fine, but that's her choice.

1          Just remember a broader principle here that
2    claimants generally unless there is some contractual basis
3    otherwise, are responsible for their own expenses and time
4    in pursuing their claims in a bankruptcy.  But general
5    unsecured creditors, trade creditors, vendors, when they
6    come in here and they make a motion, they're paying for it
7    themselves.  Certainly, some kinds of -- some creditors get
8    paid such as pre-petition secured creditors,  but again,
9    there's a contractual and legal basis to do that, not here.
10          So all that said, I find that on the merits of
11   the actual substantive dispute in front of me, that there's
12   no entitlement to an administrative expense claim here.
13   Moreover, I agree with Ms. Greecher that the -- what we
14   spent today talking about really has already been decided.
15   I believe it's res judicata.  I believe it's law of the
16   case.  I believe it's judicial estoppel.  All are applicable
17   here.
18          These issues have been dealt with.  Ms. Beall got
19   her day in Court.  She went to Virginia and she lost.  It is
20   what it is.  She asked for information from the debtor in
21   2004 and I made them give it to her and she got it.  It is
22   what it is.  That's all she was entitled to.  She tried to
23   get more, so be it.  I'm not here to say she shouldn't have,
24   but bottom line, she was on her own dime at that time.  So
25   I'm going to deny the motion on the merits and on the

1    alternative under the Doctrine of Res Judicata, Law of the

2    Case, and Judicial Estoppel.

3              And Ms. Greecher, why don't you submit an order?

4    Is that all right?  You got one?

5              MS. GREECHER:  Your Honor, we may have one if you

6    don't.

7              THE COURT:  Aren't you confident?

8              MS. GREECHER:  That was Mr. Beach.  May I

9    approach?

10             THE COURT:  Yes.  Just well prepared, thank you.

11   Let me have a look at it.  It looks pretty vanilla.

12             MS. GREECHER:  Mr. Loizides did just say that

13   this is fine.

14             THE COURT:  All right.  I've signed it.  Thank

15   you.  We're adjourned.

16             MS. GREECHER:  Thank you, Your Honor.

17             MR. LOIZIDES:  Thank you.

18             MR. BEACH:  Thank you, Your Honor.

19        (Whereupon at 6:19 p.m., the hearing was adjourned.)

20

21

22

23

24

25

1                          <u>CERTIFICATION</u>

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter.

5

6

7

8    _____          <u>13 March 2011</u>
     Traci L. Calaman                              Date
9    Transcriber

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX

| WITNESSES | Direct | Cross | Redirect | Recross | Further Redirect |
|---|---|---|---|---|---|
| CLAIMANT: | | | | | |
| Laura Beall | 36 | 66 | | | |
| PLAN TRUSTEE: | | | | | |
| Eileen Wanerka | 99 | 104 | | | |

EXHIBITS

| CLAIMANT: | MARKED | ADMITTED |
|---|---|---|
| Exhibit List: | | |
| 1-6, 8, 10, 11, 13-19, 21-22 | 90 | 91 |

| PLAN TRUSTEE: | MARKED | ADMITTED |
|---|---|---|
| Exhibit List: | | |
| 1-15 | 105 | 106 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**07-11047(css**(1) 1:7

**1641(f)(2**(1) 58:22
**1641(f)(s**(1) 52:8

**a.m**(1) 4:1
**ability**(5) 13:7 33:7 62:17 86:13 102:5
**able**(8) 15:24 32:15 39:6 52:21 60:22 73:5 101:10 101:16

**about**(64) 10:10 18:23 28:17 32:1 38:18 40:5 40:12 41:10 42:22 43:22 44:14 44:20 45:22 46:2 48:10 49:19 49:21 56:20 57:22 58:2 58:13 60:1 61:13 62:9 66:14 71:10 76:17 76:20 76:24 77:3 77:12 78:14 81:1 84:24 85:10 85:16 86:10 86:25 87:14 90:16 91:7 98:4 99:1 100:10 105:8 106:3 107:2 107:11 116:14 117:15 118:20 119:1 119:1 119:4 119:7 119:8 119:24 119:24 120:17 121:1 121:3 121:9 121:11 125:14

**aboveentitled** (1) 127:4
**absence**(1) 120:7
**absolutely**(1) 86:15
**accept**(5) 111:19 12:16 37:20 91:19 100:4
**acceptable**(1) 101:17
**accepted**(2) 78:6 99:6
**accordance**(1) 7:1
**accordingly**(3) 92:4 108:16 115:24
**acquired**(1) 50:10
**act**(11) 17:8 111:11 111:12 111:14 111:18 114:1 114:2 114:3 114:21 114:21 114:22

**acting**(1) 47:10
**action**(38) 11:9 12:12 34:14 78:20 79:11 79:14 79:22 108:17 108:22 108:24 109:1 111:19 112:19 112:23 113:7 113:19 113:2 114:5 114:7 114:23 115:2 115:4 115:6 115:19 115:25 116:1 116:11 116:12 116:17 116:18 116:19 116:24 117:4 118:14 121:5 121:10 121:21 122:5

**actionable**(1) 113:23
**actions**(12) 56:20 79:21 84:20 109:5 111:1 111:23 113:2 113:8 115:4 115:24 116:3 117:3
**activities**(1) 96:3
**activity**(3) 37:11 37:11 97:8
**actual**(6) 36:24 37:12 86:20 106:4 110:4 125:11

**actually**(22) 10:25 15:17 21:10 27:11 28:15 29:21 36:9 39:7 40:7 42:12 47:7 50:19 52:10 52:17 55:11 56:22 60:15 66:25 83:24 85:5 105:8 123:4

**add**(1) 77:12
**addition**(7) 7:17 11:8 34:2 49:4 61:11 100:2 111:19
**additional**(5) 68:16 69:2 69:2 108:20 110:
**additionally**(1) 28:25
**address**(6) 4:19 26:25 91:22 106:18 107:25 108:1

**addressed**(1) 54:18
**addressing**(1) 56:21
**adjourned**(4) 4:10 5:1 126:15 126:19
**adjournment**(1) 5:12
**adjustable**(1) 36:25
**adjusted**(2) 38:12 39:8
**adjusts**(1) 39:21
**admin**(7) 7:3 8:7 33:5 39:2 81:10 120:5 123:23

**administration**(1) 93:9
**administrativ**(29) 9:12 26:3 26:17 26:23 34:1 37:10 63:9 70:5 80:2 95:11 109:3 110:11 112:22 113:1 116:4 116:5 116:8 116:21 117:2 117:7 119:22 119:23 120:1 120:19 120:20 120:23 122:9 123:25 125:1

**administrator**(2) 108:7 122:25
**admissibility**(1) 30:3
**admission**(8) 8:24 29:4 29:18 30:6 89:5 91:1 101:3 104:18

**admit**(4) 90:4 90:6 91:23 92:5
**admitted**(10) 89:4 89:23 89:25 91:9 91:12 92:17 92:19 105:3 128:13 128:17

**admitting**(1) 115:3
**adversarial**(3) 14:22 15:10 15:11
**adversary**(4) 14:4 33:24 34:17 34:23
**advice**(1) 108:25
**advise**(2) 34:20 102:25
**advised**(2) 79:16 117:25
**affect**(2) 84:8 113:2
**affected**(1) 12:6
**affirmed**(1) 114:12
**after**(21) 5:4 20:23 24:6 38:10 40:1 44:17 44:19 50:4 52:18 63:13 68:19 73:20 75:7 79:23 94:12 94:15 97:5 98:25 106:7 116:18 121:17

**afternoon**(12) 4:4 4:21 7:10 9:25 14:12 20:17 24:14 25:10 32:11 35:24 65:1 65:6

**again**(41) 11:23 12:25 13:19 20:16 23:11 23:14 26:2 42:14 45:8 47:5 47:24 48:4 52:18 53:4 53:5 53:14 53:15 55:13 57:22 58:21 58:25 60:8 60:16 62:8 68:13 73:14 79:21 83:15 85:19 86:16 88:3 91:9 99:10 105:5 107:2 111:8 112:3 115:11 119:16 124:21 125:8

**against**(16) 7:18 8:8 8:8 8:15 11:10 28:2 32:19 33:9 33:10 34:13 84:21 111:3 112:15 115:14 123:16 123:23

**age**(1) 73:11
**agency**(1) 97:17
**agenda**(2) 4:24 5:20
**agent**(1) 95:24
**ago**(3) 4:25 18:8 34:10
**agree**(4) 21:9 32:4 100:22 125:13
**agreed**(8) 7:12 13:24 15:3 15:10 28:17 33:18 33:19 77:23

**agreeing**(1) 35:1
**agreement**(1) 17:1
**ahead**(9) 11:19 13:14 15:16 38:2 40:23 43:18 58:8 67:17 109:25

**ahm**(1) 94:20
**ahm's**(1) 49:17
**ahmit**(1) 52:15
**ahmit2004-1**(1) 47:2
**ahmit2004-2**(4) 52:24 71:19 109:9 112:15
**ahmsi**(1) 7:20
**all**(120) 4:2 4:17 5:22 7:5 7:7 7:24 8:2 8:7 8:8 8:23 9:19 10:19 11:19 12:16 13:18 14:9 17:22 19:18 20:9 21:8 21:12 21:16 22:19 23:2 23:20 25:19 25:25 26:6 27:23 28:2 28:5 28:6 28:14 29:5 30:6 30:9 30:16 31:24 32:2 32:9 32:25 33:12 35:2 35:2 35:4 36:6 37:9 37:20 37:23 38:1 38:6 40:18 40:22 44:24 45:4 45:5 45:14 45:18 48:9 50:16 50:18 55:2 55:11 58:5 61:19 61:19 69:23 69:25 73:1 73:19 79:15 79:17 81:24 82:7 83:7 83:22 83:22 85:13 87:7 87:14 87:24 88:8 89:4 89:8 90:4 91:4 91:20 92:19 92:22 93:12 94:4 96:16 96:17 99:18 101:21 103:10 104:10 104:11 104:13 104:18 104:21 105:1 105:3 105:7 105:11 105:15 108:23 109:18 110:5 113:6 115:2 117:24 121:20 123:7 123:15 125:10 125:16 126:22 126:4 126:14

**allegations**(7) 79:7 110:23 110:23 111:10 111:21 112:24 115:15

**alleged**(2) 37:11 113:2
**allegedly**(1) 114:17
**allow**(5) 32:17 33:7 33:20 99:25 113:7
**allowed**(1) 35:1
**allowing**(1) 34:12
**almost**(2) 34:10 77:14
**along**(1) 23:24
**already**(6) 42:14 46:10 48:15 48:16 84:15 125:14

**also**(43) 7:24 11:8 11:23 11:25 12:3 12:5 12:6 12:11 25:14 40:20 43:2 44:5 47:2 48:12 48:15 53:8 57:15 57:20 57:23 61:15 64:14 72:25 74:4 75:5 75:7 77:7 80:8 86:3 88:6 92:11 93:14 95:16 96:17 98:14 99:21 100:15 101:18 108:17 109:9 113:9 113:14 114:15 122:7

**alternative**(2) 90:6 126:1
**although**(5) 11:2 25:1 108:9 113:11 114:4
**alvarez**(33) 12:20 13:9 13:11 13:12 13:19 13:25 14:8 14:12 14:13 14:18 14:22 15:1 15:14 15:17 15:20 16:16 18:2 18:5 18:17 18:23 19:21 20:4 20:7 32:16 32:20 32:24 32:25 33:1 33:6 33:15 33:23 34:16 35:3

**alvarez's**(3) 13:19 18:3 33:1
**ambac**(1) 3:3
**ambushed**(1) 16:2
**amended**(7) 21:4 21:5 24:20 25:3 25:18 112:17 120:25

**america**(2) 2:11 25:12
**american**(65) 4:6 11:10 16:1 20:12 32:19 33:9 38:17 38:25 39:6 40:6 40:14 40:19 42:2 42:4 42:19 42:25 45:5 45:8 45:24 46:1 46:7 47:10 52:9 54:12 55:19 67:1 68:13 69:7 69:22 69:24 70:13 70:18 70:2 71:1 71:3 71:5 74:6 74:25 75:1 75:5 75:16 75:23 76:6 76:7 76:16 76:19 77:2 77:22 77:24 78:5 78:10 84:6 84:24 85:17 92:4 93:5 93:18 93:19 93:22 94:22 94:24 95:1 95:21 96:15 111:6

**americas**(2) 2:48 3:6
**amicably**(1) 15:5
**among**(1) 42:11
**amount**(15) 16:19 18:22 32:17 33:8 34:12 61:21 77:17 80:23 81:23 81:25 99:23 100:1 106:1 106:2 118:9

**amounts**(1) 77:19
**analogy**(1) 124:2
**analysis**(2) 123:20 123:21
**analyst**(1) 53:21

**and**(301) 4:13 4:20 5:8 5:10 6:7 7:2 7:13 7:24 7:24 8:8 8:10 8:21 8:21 9:3 9:13 9:22 11:2 11:23 12:9 12:21 12:24 13:6 13:16 14:2 14:7 14:14 14:15 14:18 14:19 15:2 15:4 15:14 15:9 15:25 16:2 16:3 16:3 16:5 16:5 16:7 16:9 16:12 16:13 16:16 16:17 16:19 16:21 16:22 16:24 17:3 17:6 17:7 17:13 17:20 18:1 18:7 18:10 18:15 18:16 20:1 20:8 20:9 20:14 21:1 21:17 21:18 21:19 21:22 22:1 22:2 22:8 22:9 22:19 23:1 23:4 23:6 23:10 23:19 23:21 23:25 24:3 24:5 24:11 24:20 24:20 24:21 24:24 25:1 25:4 25:4 25:15 26:5 26:7 26:10 26:14 26:21 26:25 26:25 27:12 27:13 27:14 28:1 28:5 28:17 28:17 28:20 28:22 29:1 29:8 29:13 30:7 30:11 31:2 31:6 31:19 31:21 32:16 32:21 32:22 33:9 33:19 33:21 34:9 34:11 34:13 36:2 36:10 36:11 36:13 36:14 36:15 36:17 36:18 36:18 36:21 36:22 36:23 37:1 37:2 37:5 37:15 38:7 38:13 38:20 38:21 38:22 38:22 39:9 39:12 39:13 39:14 39:21 39:25 40:3 40:10 40:13 40:14 40:15 40:17 40:21 40:22 41:14 41:23 42:1 42:2 42:4 42:11 42:14 42:17 42:17 43:5 43:9 43:12 43:14 43:22 44:3 44:6 44:7 44:23 45:1 45:2 45:3 45:5 45:4 45:7 45:7 45:9 45:10 45:18 45:23 45:25 45:23 46:9 46:15 46:16 46:18 46:19 46:20 46:21 46:22 47:2 47:2 47:6 47:6 47:8 47:13 47:16 47:16 47:24 47:25 48:4 48:11 48:12 48:12 48:12 48:13 48:14 48:15 49:1 49:4 49:9 49:10 49:13 49:15 49:22 49:24 50:3 50:24 51:8 51:11 51:15 52:3 52:7 52:9 52:18 52:22 52:24 53:1 53:5 53:7 53:8 53:16 53:16 53:24 53:25 54:6 54:10 54:20 54:21 54:21 54:21 54:25 55:1 55:13 55:17 55:18 55:19 55:20 55:20 55:21 55:23 56:2 56:6 56:8 56:10 56:11 56:14 56:18 56:19 56:22 57:2 57:4 57:7 57:9 57:13 57:15 57:17 57:16 58:10 58:18 58:20 58:23 58:25 59:3 59:10 59:15 59:25 60:1 60:1 60:3 60:3 60:16 60:21 60:25 61:2 61:17 61:22 62:21 63:24 64:3 64:6 64:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **and**(301) 64:9 64:10 64:14 64:20 65:10 65:14 65:17 65:20 65:25 66:3 66:8 66:12 68:6 68:6 68:10 68:12 68:16 68:24 69:1 69:9 69:11 69:14 69:15 69:21 70:9 70:10 70:13 70:14 70:14 70:18 70:21 71:2 71:5 71:13 71:15 71:18 72:10 72:21 73:2 73:10 73:20 74:14 74:15 74:17 74:23 74:25 75:7 75:15 75:20 76:5 76:9 76:15 77:5 77:7 77:11 77:12 77:13 77:13 77:18 78:4 78:19 78:22 78:23 79:2 79:7 79:10 79:13 79:16 79:17 79:19 79:21 80:1 80:5 80:8 80:9 80:19 80:21 80:22 81:9 81:12 81:18 81:18 81:24 82:6 82:14 82:22 83:18 83:22 83:22 83:24 84:2 84:3 84:4 84:13 84:15 84:19 84:23 85:1 85:4 85:6 85:7 85:8 85:19 85:23 85:23 86:3 86:6 86:16 86:17 87:2 87:7 87:17 87:21 88:6 88:7 88:7 89:6 89:10 89:25 90:5 90:5 90:7 90:15 90:24 91:3 92:1 92:3 92:22 93:6 93:10 93:10 93:13 93:13 93:19 94:2 94:5 94:6 94:7 94:9 94:10 94:14 94:16 94:19 94:19 94:20 94:24 95:1 95:10 95:10 95:16 95:17 95:23 96:1 96:3 96:10 96:12 96:17 96:17 96:23 97:3 97:6 97:13 97:15 97:20 97:23 97:25 97:25 98:11 98:13 98:14 98:16 98:21 98:25 98:25 99:5 99:11 99:15 99:18 99:18 99:20 99:24 99:25 100:6 100:10 100:11 100:15 100:20 100:21 101:5 101:6 101:14 102:14 102:20 102:23 103:3 103:7 104:20 104:24 105:1 105:24 106:4 106:6 106:19 106:20 106:23 107:1 107:2 107:4 107:5 107:7 107:16 107:22 108:14 108:16 108:16 108:21 108:22 108:25 109:1 109:14 109:14 109:19 110:9 110:15 110:22 110:24 110:25 111:5 111:7 111:8 111:14 111:21 111:21 111:25 112:2 112:7 112:11 112:14 112:17 112:21 112:25 113:1 113:12 113:15 113:23 114:2 114:6 114:19 114:21 114:23 115:3 115:11 115:13 115:15 115:18 115:21 115:24 116:2 116:7 116:12 116:13 116:14 116:18 116:20 117:1 117:4 117:5 117:14 117:21 117:25 118:3 118:8 118:14 118:16 118:20 118:20 118:23 119:16 119:17 120:7 120:9 120:10 120:19 120:21 121:2 121:14 121:7 121:12 121:18 122:2 122:7 123:3 123:6 123:11 123:12 123:13 123:14 123:17 123:18 | | **and**(16) 124:1 124:13 124:13 124:15 124:17 124:18 124:24 125:3 125:6 125:9 125:19 125:21 125:21 125:25 126:2 126:3 | | | | | |
| **and/or**(3) 13:8 74:5 111:24 **anderson**(1) 2:18 **andrew**(1) 85:23 **angell**(2) 2:11 25:11 **ann**(1) 35:21 **another**(7) 17:6 21:16 24:5 53:11 107:19 120:20 122:10 **answer**(8) 20:1 20:24 47:18 67:13 96:1 103:3 122:22 124:5 | | | | | | | |
| **answered**(4) 44:3 124:6 124:6 124:6 **answering**(2) 95:24 96:25 **answers**(2) 123:12 124:9 **anticipate**(3) 21:15 27:21 28:12 **anticipated**(1) 81:5 **anticipating**(1) 121:7 **any**(53) 4:14 7:18 7:21 8:15 9:17 10:15 17:20 21:7 21:24 27:3 28:6 28:6 28:9 29:25 32:1 33:10 33:11 33:22 34:5 38:1 38:18 40:12 43:9 44:16 46:6 57:20 58:18 64:23 68:16 84:20 88:17 89:13 92:14 98:19 99:2 99:6 102:21 104:3 104:5 104:7 104:16 104:22 108:1 110:16 112:9 113:4 117:14 120:15 121:20 122:5 122:16 122:22 122:24 **anybody**(2) 31:20 85:16 **anyone**(4) 11:16 12:13 13:10 26:10 | | | | | | | |
| **anything**(21) 19:12 22:23 25:21 30:16 33:16 33:17 33:21 34:21 38:17 40:12 43:22 46:5 53:19 91:10 92:16 106:24 107:22 120:10 122:25 124:4 124:19 **anyway**(1) 120:14 **anywhere**(2) 39:16 121:5 **apologize**(9) 35:5 35:14 35:16 58:4 67:14 67:19 80:16 81:2 81:3 | | | | | | | |
| **appealed**(1) 114:11 **appear**(8) 11:1 11:3 12:7 12:8 13:8 16:8 19:20 90:25 **appearances**(1) 3:1 **appears**(3) 12:21 90:23 117:12 **applicable**(3) 115:8 124:3 125:16 **applied**(1) 36:20 **applies**(4) 13:23 13:23 121:19 122:7 **apply**(1) 14:8 **apportioned**(1) 120:21 **appreciate**(1) 118:8 **approach**(8) 5:17 20:3 24:12 33:18 40:25 41:3 71:24 126:9 **appropriate**(6) 25:5 34:13 34:22 82:24 102:16 117:25 **approve**(3) 19:18 25:8 102:18 **approximate**(1) 18:14 **approximately**(14) 29:14 65:25 66:8 66:16 66:21 68:6 68:8 68:22 71:13 74:17 80:3 80:6 80:9 82:19 **appx**(1) 114:24 **april**(2) 54:1 78:17 **are**(72) 6:21 6:23 7:25 8:7 8:9 8:15 9:15 10:14 10:15 14:5 16:11 16:22 21:21 22:19 23:14 24:7 24:21 26:20 27:13 28:3 28:6 28:9 28:10 28:15 28:16 28:16 30:6 30:8 32:23 33:10 48:5 53:16 55:5 57:7 59:25 60:4 72:19 75:11 76:24 84:5 90:16 91:23 93:4 93:10 95:4 95:8 96:3 96:6 96:8 101:15 101:18 102:20 104:20 104:24 107:13 108:15 108:15 109:2 109:21 110:4 110:6 114:25 115:25 116:3 116:22 117:3 119:4 119:7 123:2 123:15 125:3 125:6 **area**(1) 17:6 **aren't**(3) 88:8 101:16 126:7 **arena**(1) 84:9 **argue**(3) 26:20 115:14 117:11 **argued**(1) 112:19 **argument**(7) 9:13 26:25 105:16 116:7 119:16 121:21 121:25 **arguments**(2) 27:13 116:10 **arising**(1) 63:13 **arithmetic**(1) 62:24 **arm**(5) 36:25 39:13 43:4 76:23 77:4 **arose**(1) 119:11 **around**(7) 20:5 39:2 50:18 51:1 54:5 64:6 115:16 **arrived**(1) 36:17 **article**(2) 7:2 17:1 **aside**(1) 18:24 **ask**(18) 17:11 31:19 31:21 41:23 47:21 50:19 58:5 58:13 59:3 59:15 67:24 73:19 73:20 85:14 91:1 91:13 101:6 123:12 **asked**(12) 31:5 35:22 44:2 45:23 46:10 47:14 54:20 67:25 72:17 73:16 82:4 125:20 **asking**(14) 17:15 17:19 19:21 54:18 58:21 59:21 67:19 75:13 81:10 81:15 81:20 85:9 88:24 123:10 **aspect**(1) 124:20 **assert**(1) 7:18 | | | | | | | |
| **asserted**(5) 12:22 34:12 108:16 111:22 114:5 **asserting**(2) 34:23 113:20 **assertions**(1) 113:5 **assess**(2) 27:5 76:8 **assets**(1) 7:20 **assign**(1) 93:12 **assistance**(1) 98:17 **assistant**(3) 56:6 93:21 93:24 **assistants**(1) 55:6 **associated**(1) 121:11 **assume**(3) 103:3 119:8 119:9 **assumed**(1) 5:22 **assuming**(2) 80:5 102:16 **assurance**(1) 3:3 **attach**(1) 28:21 **attached**(1) 90:24 **attempt**(2) 9:5 124:8 **attempted**(3) 10:19 13:3 124:4 **attempting**(2) 110:19 114:22 **attended**(1) 71:15 **attention**(1) 92:3 **attorney**(3) 50:22 52:9 69:16 **attorneys**(1) 9:14 **audible**(4) 9:18 11:18 12:15 25:22 **audience**(2) 90:12 90:13 **august**(6) 61:22 74:23 75:7 82:14 82:19 85:7 **authority**(1) 102:18 **automatic**(1) 63:6 **available**(3) 101:13 101:15 101:18 **avenue**(5) 1:37 2:14 2:34 2:48 3:6 **average**(6) 62:19 80:22 87:7 87:9 87:10 87:14 **avoiding**(2) 99:16 118:3 **award**(1) 81:16 **awarded**(1) 110:17 **aware**(3) 8:15 99:12 102:20 **away**(1) 21:25 **b-l-i-n-n**(1) 85:23 **back**(24) 6:1 6:14 15:10 17:16 19:7 31:12 38:19 44:6 44:22 45:23 54:25 55:21 63:21 64:11 78:4 83:15 83:24 86:12 90:13 90:14 100:8 100:21 107:18 120:21 **background**(5) 37:15 37:19 37:21 37:25 101:14 **balloon**(1) 37:3 **bank**(6) 2:11 10:8 19:16 25:11 102:3 113:13 **bankruptcy**(30) 1:1 1:19 4:6 14:3 37:25 44:11 44:13 44:17 44:19 45:6 45:22 50:1 52:22 63:13 63:22 73:1 75:6 75:8 79:3 79:6 93:23 93:25 94:3 94:11 94:15 108:18 121:4 121:4 121:17 125:4 **banks**(6) 10:11 34:5 44:22 45:5 46:22 **bar**(1) 8:17 **barely**(1) 82:6 **barred**(9) 109:3 113:22 114:9 115:8 115:13 115:16 115:23 116:1 116:5 **barry**(3) 2:26 20:18 23:10 **based**(34) 10:21 11:24 12:10 12:21 13:3 19:5 19:20 27:7 70:6 72:25 73:11 80:2 80:5 80:9 80:17 80:18 80:19 80:20 99:17 101:1 103:4 107:15 108:24 116:9 117:17 118:23 119:17 121:10 121:16 121:21 121:22 121:23 122:4 122:18 **basic**(2) 106:2 106:10 | | **basically**(14) 10:21 14:15 14:18 15:25 38:13 43:25 44:21 49:23 56:8 56:18 64:19 64:22 107:24 118:13 **basing**(2) 81:5 81:8 **basis**(11) 10:14 19:3 62:15 79:3 79:10 107:12 121:11 123:12 124:15 125:2 125:9 **batch**(1) 57:15 **beach**(32) 1:26 27:15 28:2 28:13 31:2 37:8 57:25 58:3 58:7 65:1 65:2 65:5 67:17 67:18 67:21 67:23 71:24 72:6 72:9 72:14 72:18 80:15 81:18 82:9 83:5 83:7 90:9 90:19 90:22 92:10 126:8 126:18 **beal**(4) 72:19 97:11 118:21 119:19 **beal's**(1) 121:4 **beall**(92) 2:4 6:22 7:11 8:7 9:12 26:3 26:7 26:22 27:19 30:11 30:17 30:20 35:4 35:5 35:8 35:18 35:20 35:21 35:24 41:5 41:9 41:13 41:16 52:6 58:1 58:4 58:9 65:6 65:6 67:12 67:14 67:19 67:22 70:5 71:9 72:6 72:13 72:16 73:19 73:25 74:4 75:22 78:14 80:1 81:3 81:7 81:18 81:21 81:23 82:3 82:10 88:17 95:8 98:16 98:19 99:7 100:4 100:9 100:22 102:16 102:20 102:25 103:24 108:11 109:6 109:18 110:13 110:15 110:21 111:2 111:22 112:6 112:13 112:18 112:21 112:23 112:24 113:5 115:1 116:1 116:10 116:15 116:17 116:19 116:25 117:3 117:11 117:21 123:6 124:13 124:21 125:18 128:6 **beall's**(12) 6:21 26:19 27:17 29:12 97:20 98:8 109:11 112:11 112:17 113:2 113:6 **bear's**(1) 53:7 **because**(46) 8:4 22:8 23:6 34:1 34:6 39:1 39:15 40:1 40:8 40:17 42:20 42:22 44:6 45:1 45:10 46:17 47:15 48:2 48:15 49:21 51:18 53:4 53:12 56:8 60:11 69:11 70:11 73:12 73:15 84:9 84:13 88:7 100:19 105:18 113:17 113:22 114:7 116:1 116:2 121:19 122:7 122:7 122:12 124:3 124:20 124:21 **become**(4) 36:6 36:7 83:22 94:21 **becomes**(1) 99:12 **been**(40) 4:10 4:13 5:1 7:15 15:24 17:4 19:6 21:6 22:18 23:23 25:2 32:15 33:24 46:4 48:7 51:1 53:9 65:10 71:23 73:5 74:1 74:2 74:11 83:13 93:6 107:20 107:20 107:22 114:4 113:11 114:7 115:4 115:25 117:19 118:16 120:16 120:22 122:9 125:14 125:18 **before**(21) 1:18 14:5 18:4 22:3 24:23 37:13 39:8 64:1 67:13 67:20 69:23 69:24 83:23 84:1 84:23 90:7 96:6 100:20 103:1 104:1 109:4 **began**(1) 40:5 **beginning**(5) 36:14 38:20 45:6 83:21 121:1 **behalf**(15) 4:5 4:23 8:6 10:1 10:11 11:17 12:14 13:10 21:8 24:15 25:11 32:12 49:22 65:2 108:9 **behind**(2) 20:15 84:1 **being**(8) 23:21 46:19 65:20 108:15 115:8 116:4 116:23 124:3 **belief**(4) 32:25 33:2 33:3 49:17 **believe**(64) 7:20 9:15 12:1 15:12 18:13 18:14 18:15 19:2 19:5 20:14 20:20 20:24 21:6 24:12 25:5 26:2 28:14 28:15 28:22 29:9 30:6 33:2 33:4 33:21 33:23 39:5 40:6 49:16 51:22 53:13 58:16 63:11 63:3 64:23 68:12 69:21 74:12 82:14 82:16 82:22 88:3 89:4 89:11 92:9 98:6 99:1 99:20 104:19 104:20 106:24 110:25 112:17 112:22 112:23 113:7 113:11 113:18 113:22 122:7 123:6 123:12 123:14 125:15 125:15 125:16 |

Word Page:Line

**believed**(2) 82:11 82:18
**believes**(4) 13:25 19:2 26:25 27:7
**believing**(1) 24:20
**belknap**(1) 3:3
**benefit**(5) 11:7 106:10 106:14 106:16 123:24

**best**(5) 24:21 62:17 102:6 102:13 107:21
**better**(2) 24:2 33:22
**between**(13) 36:22 36:25 56:2 57:7 59:25 62:22 69:1 74:22 74:22 94:8 97:25 109:13 120:8

**beyond**(1) 115:11
**big**(3) 68:10 82:1 82:5
**binder**(5) 29:9 29:22 71:25 72:3 90:1
**binders**(5) 27:18 72:9 96:6 96:7 104:18
**bit**(2) 38:2 78:14
**black**(1) 72:7
**blank**(1) 123:25
**blasting**(1) 56:18
**blinn**(1) 85:23
**blue**(1) 72:8
**board**(1) 111:13
**bob**(1) 58:8
**book**(8) 40:25 41:3 41:7 41:12 42:2 43:5 47:8 50:3

**borlatta**(3) 40:19 42:24 85:20
**borrower**(21) 12:21 13:20 95:5 95:18 95:25 97:2 98:13 98:14 98:23 99:11 99:15 99:25 100:8 101:17 102:2 102:4 102:9 113:19 113:23 114:4 114:11

**borrowers**(7) 45:21 49:21 54:23 57:16 101:14 101:15 118:19

**both**(10) 18:3 24:21 32:15 42:5 45:1 75:2 105:24 114:5 116:2 120:19

**bottom**(8) 22:21 36:19 39:16 40:18 46:23 56:19 120:11 125:24

**brandywine**(1) 1:29
**breach**(2) 111:16 111:17
**break**(1) 6:12
**briefed**(1) 17:10
**briefing**(5) 21:17 22:22 23:6 23:8 25:15
**briefly**(3) 17:24 83:10 83:15
**bring**(7) 14:4 15:9 15:14 15:18 64:13 113:3 121:20

**bringing**(3) 14:22 26:23 110:18
**brings**(2) 4:10 9:20
**broader**(1) 125:1
**broker**(8) 36:3 62:12 65:7 65:10 66:9 69:6 80:7 81:6

**brokerage**(3) 62:20 62:21 80:20
**brooks**(1) 3:5
**brought**(13) 11:10 14:19 16:5 33:24 106:8 106:8 108:24 113:25 115:4 115:5 115:6 115:25 116:4

**brown**(5) 2:13 25:10 25:11 25:20 26:13
**build**(1) 27:14
**building**(3) 1:29 2:47 94:17
**bunch**(1) 57:12
**burden**(2) 27:20 107:8
**business**(11) 28:18 36:13 45:5 86:14 87:3 94:8 95:4 97:7 98:1 106:16 124:20

**but**(97) 5:11 7:21 8:25 14:6 15:6 17:11 17:15 17:19 18:22 21:7 23:23 27:14 28:14 28:20 29:4 29:21 31:16 33:10 34:20 34:24 37:17 37:21 39:20 39:22 40:18 40:25 43:12 44:16 48:17 49:8 49:16 52:11 52:13 55:22 56:1 56:7 61:10 62:8 62:24 64:3 67:16 67:25 68:19 69:17 71:21 73:6 73:14 73:16 74:23 79:23 82:4 82:25 83:14 83:23 84:24 85:2 86:18 86:19 88:2 90:23 91:1 91:8 91:16 91:18 91:23 93:24 101:17 104:17 104:19 105:1 105:19 106:1 106:14 106:23 106:24 107:9 107:19 107:21 109:2 113:9 115:12 117:19 118:10 118:22 119:25 120:3 120:14 121:16 122:16 123:1 124:2 124:11 124:23 124:25 125:4 125:8 125:24

**button**(2) 90:12 90:15
**buy**(1) 67:6
**calaman**(1) 127:9
**calculation**(4) 80:2 80:5 81:4 117:15
**call**(18) 13:7 30:20 35:5 35:7 39:2 39:8 39:10 39:10 41:9 54:25 69:18 77:21 90:13 92:20 95:20 95:23 95:24 108:7

**called**(22) 17:7 19:1 37:1 38:17 38:25 39:23 40:2 40:14 45:7 45:23 47:21 48:19 53:5 53:14 53:14 54:21 55:18 55:20 61:19 77:20 98:21 100:10

**calling**(5) 18:10 44:21 61:19 95:25 118:14
**calls**(4) 61:17 62:5 98:25 107:7
**callus**(4) 52:8 56:16 60:22 61:5
**came**(2) 53:16 81:24
**can**(46) 15:13 20:2 21:14 22:15 27:15 27:18 27:19 27:25 30:5 30:19 30:22 31:9 34:20 35:9 35:25 36:10 37:14 37:14 37:17 46:24 47:7 47:18 49:10 50:5 51:15 52:2 58:3 60:6 66:4 66:18 67:24 73:20 74:22 79:11 83:13 90:15 91:6 91:22 97:10 99:18 100:6 100:24 102:3 107:17 115:13 120:3

**can't**(14) 21:24 32:4 34:20 39:20 62:24 66:4 74:19 74:23 75:20 83:18 90:20 90:20 103:20 120:2

**cannot**(4) 15:21 16:13 83:18 116:1
**capture**(1) 96:17
**captured**(1) 96:4
**care**(4) 27:23 29:17 42:16 95:21
**carried**(1) 113:4
**case**(41) 1:7 4:7 15:7 15:8 16:5 21:20 23:19 24:5 24:21 25:6 26:21 32:23 38:1 44:16 66:17 66:19 69:19 88:25 91:20 105:4 105:20 106:11 106:20 106:22 110:1 112:9 113:13 115:1 119:5 119:8 119:13 121:17 121:19 122:6 124:1 124:2 124:10 124:12 124:17 125:16 126:2

**cases**(4) 105:1 106:12 107:2 115:21
**cash**(1) 67:5
**catch**(3) 77:18 77:23 78:12
**cause**(6) 23:19 31:19 114:23 121:5 121:9 122:5

**causes**(12) 79:21 108:24 111:19 113:7 114:5 114:7 115:2 115:3 115:24 116:1 116:12 116:18
**cede**(2) 6:14 9:22
**centre**(1) 2:27
**ceo**(1) 54:11
**cert**(1) 5:9
**certain**(13) 2:32 5:1 6:22 10:4 10:8 10:8 12:22 37:10 71:10 71:22 76:17 76:20 116:17
**certainly**(8) 21:2 67:24 120:3 120:3 120:14 120:21 122:8 125:7

**certainty**(2) 21:25 107:17

**certification**(11) 5:9 5:10 5:14 5:23 6:7 9:3 21:14 22:7 22:22 23:5 127:1

**certified**(1) 110:7
**certify**(1) 127:2
**cfr**(1) 111:13
**chambers**(1) 6:20
**chance**(2) 16:7 31:7
**changed**(1) 9:7
**changes**(1) 94:6
**chapter**(2) 1:4 106:17
**charge**(2) 56:8 93:12
**charges**(4) 97:15 97:22 98:3 98:10
**chase**(2) 2:27 113:13
**chastised**(1) 69:18
**cheated**(2) 15:25 16:10
**check**(2) 39:19 123:25
**checked**(2) 39:21 39:25
**choice**(1) 124:25
**choose**(1) 112:7
**chose**(8) 76:3 79:19 79:20 79:23 108:23 117:22 120:13 123:11

**chosen**(1) 112:7
**chris**(2) 7:11 35:24
**christopher**(4) 1:18 1:36 2:5 24:15
**circuit**(7) 113:13 114:12 114:13 114:15 115:21 121:19 122:6

**circumstances**(1) 122:18
**circumvent**(1) 118:4
**cite**(1) 110:15
**cited**(1) 115:22
**citing**(1) 29:16
**civil**(1) 111:17
**claim**(127) 6:22 7:4 7:13 8:7 9:12 10:20 10:21 11:5 11:24 12:1 12:4 12:5 12:10 12:21 13:19 13:20 13:25 14:1 14:4 14:8 14:14 15:4 15:5 15:25 16:3 16:4 16:10 16:19 17:16 18:3 18:13 18:14 18:18 18:22 18:24 19:1 19:4 19:19 19:22 19:23 19:24 26:21 26:23 27:20 31:13 32:17 32:18 32:19 32:25 33:3 33:5 33:5 33:7 33:9 33:10 33:17 33:19 33:20 34:1 34:12 34:13 34:23 34:25 35:1 35:1 37:10 37:13 39:2 63:9 63:13 63:22 64:4 70:6 79:2 79:6 79:8 79:22 80:2 81:10 91:16 91:18 95:10 95:11 108:14 108:22 109:3 110:11 110:21 110:22 111:22 112:5 112:20 112:21 112:2 112:25 115:2 115:7 115:13 115:16 115:18 115:22 116:2 116:5 116:12 116:21 116:25 119:20 119:21 119:21 119:22 119:23 119:24 120:1 120:5 120:16 120:23 121:6 121:10 121:13 121:14 121:16 121:18 122:10 123:16 123:20 123:23 125:12

**claimant**(13) 2:4 11:12 11:22 14:13 35:21 105:25 107:5 107:9 107:11 120:4 122:11 128:5 128:13

**claimant's**(1) 93:9
**claimants**(1) 125:2
**claimed**(1) 110:24
**claiming**(1) 16:12
**claims**(36) 4:12 5:1 7:18 7:22 8:7 8:15 10:9 10:14 10:15 12:22 13:18 13:25 16:20 64:12 64:15 64:17 78:16 79:11 79:13 93:12 93:13 93:13 94:16 94:19 95:8 95:16 112:19 113:25 113:25 115:6 115:24 116:2 120:20 121:20 121:22 125:4

**clarification**(3) 8:4 34:17 67:25
**clarify**(2) 22:15 78:10
**clarity**(1) 24:20
**class**(3) 11:9 12:12 106:11
**clear**(11) 27:7 29:9 31:18 48:5 61:25 67:24 94:11 94:24 95:2 101:6 116:16

**clearer**(1) 31:23
**clearly**(2) 115:3 124:1

**clerk**(3) 4:2 32:9 105:11
**client**(6) 8:21 8:24 103:12 105:6 107:11 118:11

**client's**(2) 120:22 122:8
**clients**(1) 39:11
**close**(9) 40:2 53:9 56:2 88:24 91:20 97:10 97:18 97:25 105:15

**closed**(1) 21:19
**closing**(2) 16:2 113:21
**cno**(2) 4:12 6:3
**coc**(3) 4:16 23:5 23:7
**code**(1) 14:2
**cold**(1) 90:17
**collateral**(1) 94:17
**colleague**(3) 6:14 10:24 13:4
**collection**(3) 84:20 111:18 114:22
**collections**(1) 114:2
**columbia**(3) 70:24 70:25 71:2
**combination**(1) 91:3
**come**(20) 6:1 15:2 24:24 34:11 51:22 81:15 81:20 86:16 86:18 92:3 92:17 104:25 106:22 107:15 107:21 120:21 122:14 122:15 122:20 125:6

**comes**(1) 87:25
**comingle**(2) 17:2 17:3
**comingling**(3) 16:25 17:5 19:7
**commenced**(1) 112:14
**comment**(1) 5:5
**comments**(9) 25:14 27:3 95:16 96:4 96:11 96:17 97:13 99:3 117:10

**commission**(7) 62:14 69:14 87:7 87:17 107:12 107:19 122:13

**commissions**(2) 81:5 107:20
**committed**(2) 34:2 106:12
**committee**(1) 116:13
**communicated**(1) 76:5
**communication**(2) 18:6 42:6
**communications**(6) 25:4 69:21 91:7 91:12 104:3 104:7

**companies**(1) 61:20
**company**(4) 36:20 48:14 55:22 67:1
**compared**(2) 65:22 65:23
**compensate**(2) 81:16 82:6
**complaint**(24) 21:5 21:5 21:11 24:18 24:20 25:3 25:18 78:23 78:25 111:3 111:9 112:17 113:22 113:24 114:3 114:8 114:8 115:11 115:12 115:14 116:11 116:14 120:25 121:9

**complaints**(2) 114:16 114:19
**complete**(2) 102:20 103:1
**completely**(1) 36:16
**completing**(2) 69:22 87:5
**completion**(3) 22:22 23:5 23:7
**compliance**(1) 52:8
**complied**(2) 17:21 51:13
**comply**(5) 17:11 17:20 52:7 58:22 112:1
**computer**(5) 39:18 39:19 39:19 39:20
**conaway**(7) 1:24 4:5 4:22 40:21 45:20 54:16 65:2

**concealment**(2) 121:2 122:4
**conceivable**(1) 38:16
**concern**(4) 11:5 18:13 81:2 82:1
**concerned**(4) 8:5 57:22 58:2 114:5
**concerns**(5) 28:22 28:25 29:13 111:23 116:14

**conclude**(1) 103:8
**conduct**(6) 114:17 121:10 121:21 123:18 124:14 124:22

**conducted**(1) 97:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**confer**(2) 103:12 105:6
**conference**(4) 20:14 20:20 20:22 23:25
**confess**(1) 106:19
**confessing**(1) 53:25
**confident**(1) 126:7
**confirm**(2) 57:18 104:19
**confirmation**(2) 71:22 73:18
**confirmed**(3) 34:9 71:8 74:11
**conflicting**(2) 45:10 106:5
**confused**(3) 53:4 76:23 81:13
**confusion**(2) 4:20 109:11
**connected**(2) 39:9 45:22
**connection**(16) 5:23 9:14 19:19 19:20 31:5 71:16 77:8 98:17 99:16 108:13 109:5 114:17 116:24 117:1 121:15 123:22

**connections**(1) 109:13
**consensual**(1) 9:5
**conservative**(5) 80:25 107:15 107:23 122:15 122:21

**consider**(6) 18:19 18:21 26:18 84:16 84:18 103:2
**considering**(2) 81:10 84:2
**conspiracy**(1) 111:17
**constructive**(3) 16:18 17:18 34:1
**consumer**(3) 48:11 48:14 111:11
**contact**(7) 6:20 46:13 46:15 60:10 69:25 95:5 97:1

**contacted**(3) 21:7 47:3 52:8
**contacting**(3) 55:17 55:22 60:7
**contained**(2) 96:19 96:23
**contemplated**(1) 116:3
**contents**(1) 44:22
**context**(3) 101:12 119:11 121:2
**continuance**(1) 23:15
**continue**(1) 13:16
**continued**(3) 2:2 122:2 123:12
**continuing**(1) 122:1
**contract**(1) 111:17
**contractual**(7) 10:6 10:16 12:2 13:1 13:22 125:2 125:9

**contractually**(1) 13:24
**conversation**(2) 41:24 84:17
**convinced**(1) 110:5
**cooler**(1) 90:16
**cooper**(1) 2:45
**copy**(6) 5:12 75:2 89:16 89:22 109:10 113:14

**corp**(6) 3:3 5:5 20:12 20:13 20:19 32:19
**corporate**(3) 47:4 53:14 53:23
**corporation**(1) 1:9
**correct**(46) 8:11 8:25 11:15 19:17 29:1 65:8 65:15 68:15 68:20 69:23 70:2 70:4 70:8 70:11 70:16 70:17 70:19 70:23 71:7 71:20 74:7 74:14 75:3 76:3 76:4 76:9 76:17 76:21 77:8 78:7 78:12 78:25 79:4 79:8 79:11 79:18 79:24 80:3 80:7 82:15 82:20 82:23 83:4 104:20 109:25 127:2

**correctly**(1) 117:17
**correspondence**(2) 104:5 124:7
**corroon**(1) 2:18
**cory**(1) 2:39
**cost**(2) 106:16 124:20
**costs**(1) 117:5

**could**(63) 17:16 17:24 18:16 22:4 24:24 31:12 32:25 33:3 34:16 39:22 40:4 40:25 41:3 41:7 41:11 42:1 42:18 43:5 46:23 49:7 49:8 50:2 50:20 51:5 53:1 53:10 53:13 54:7 54:15 55:3 55:3 55:24 56:7 56:14 56:22 57:6 58:11 58:20 59:3 59:24 60:25 61:24 62:17 71:23 74:1 74:2 79:22 83:14 89:3 91:13 95:25 103:11 105:5 107:19 108:24 110:16 113:11 114:7 115:4 115:25 117:18 120:22 122:19
**couldn't**(7) 39:16 53:10 58:10 73:12 75:17 75:18 120:16

**counsel**(22) 6:7 6:21 9:3 14:11 14:14 20:14 21:14 22:7 22:17 23:22 24:12 24:19 31:20 73:20 78:19 78:22 79:16 95:17 108:25 112:14 116:17 120:8

**counsel's**(1) 25:13
**counselor**(1) 34:3
**countrywide**(2) 2:12 25:12
**couple**(3) 70:24 97:16 117:10
**course**(10) 11:20 14:2 38:19 40:16 97:7 106:14 119:19 122:1 123:18 124:22

**court**(255) 1:1 4:3 4:8 4:16 4:20 5:3 5:14 5:16 5:18 5:22 6:1 6:5 6:10 6:12 6:16 7:7 7:9 8:2 8:5 8:12 8:17 8:21 8:21 9:1 9:6 9:8 9:10 9:17 9:19 9:24 10:23 11:13 11:16 11:19 12:13 12:16 13:10 13:13 13:17 14:9 14:11 14:17 14:21 14:25 15:1 15:15 15:19 16:15 16:23 17:13 17:15 17:15 17:22 18:7 18:10 19:9 19:12 19:16 19:18 20:1 20:3 20:4 20:8 20:16 20:23 21:3 22:1 22:2 22:3 22:9 22:11 22:14 22:25 23:2 23:4 23:12 23:17 23:18 23:20 24:7 24:9 24:11 25:8 25:9 25:19 25:21 25:23 26:6 26:10 26:14 27:3 27:5 27:6 27:10 27:11 27:23 28:1 28:5 28:9 29:5 29:7 29:17 29:23 30:2 30:4 30:9 30:11 30:16 30:19 30:21 30:24 31:2 31:5 31:15 31:24 32:2 32:4 32:7 32:10 33:12 33:15 34:7 34:14 34:19 35:4 35:12 35:14 35:18 35:25 36:10 37:13 37:20 41:1 41:4 41:17 41:21 43:14 48:10 48:11 48:24 49:10 50:16 52:5 52:22 54:19 57:13 58:3 58:5 58:8 59:5 59:7 59:10 59:14 59:17 59:19 59:21 63:17 64:13 64:25 67:12 67:15 71:18 72:2 72:8 72:12 73:1 74:13 78:15 78:17 79:3 79:6 80:13 81:15 81:18 81:22 82:2 83:6 83:9 83:14 88:16 88:9 89:13 89:22 90:2 90:4 90:11 90:20 91:4 91:11 91:19 92:7 92:14 92:19 92:22 92:25 93:2 101:21 103:3 103:10 103:13 103:17 103:19 104:11 104:13 104:16 104:22 105:3 105:7 105:12 105:15 105:22 106:23 106:24 108:2 108:3 108:6 108:12 108:13 108:18 109:4 109:18 109:21 109:23 109:2 110:7 112:3 113:1 113:20 113:21 113:24 114:3 114:10 114:12 115:5 115:10 116:10 116:15 116:20 117:3 117:6 118:6 118:8 118:10 118:14 118:24 119:4 119:7 119:14 122:24 123:2 125:19 126:7 126:10 126:14

**court's**(5) 17:12 110:10 120:2 120:18 122:23

**courtesy**(1) 36:13
**courtroom**(2) 1:9 57:11
**courts**(1) 106:15
**cozen**(2) 2:25 20:18
**crazy**(2) 40:1 67:16
**created**(1) 97:6
**credit**(5) 97:17 99:18 114:1 114:20 115:7
**creditors**(11) 15:22 15:23 16:14 17:10 18:25 34:5 120:13 125:5 125:5 125:7 125:8
**critical**(2) 91:15 91:18

**cross**(7) 27:18 64:25 65:4 103:10 103:22 107:10 128:3

**crux**(3) 64:4 64:17 121:12
**cts**(1) 85:3
**cumulative**(1) 91:15
**curiosity**(2) 47:24 48:6
**current**(3) 36:4 102:2 112:25
**currently**(1) 93:4
**customer**(2) 95:20 95:21

**damage**(2) 113:4 124:21
**damages**(8) 107:11 107:13 107:14 110:17 117:12 118:13 122:11 124:14

**daniel**(1) 10:20
**data**(2) 1:43 96:16
**date**(7) 8:17 10:4 15:6 24:25 29:1 76:25 127:9

**dates**(2) 25:15 82:15
**david**(3) 46:11 56:5 58:21
**davin**(1) 48:12
**day**(9) 16:2 49:13 54:25 57:23 98:9 98:12 108:10 113:16 125:19
**days**(3) 4:25 97:17 97:23
**deadline**(1) 25:2
**deal**(8) 27:13 42:19 82:5 105:20 118:15 123:3 123:4 123:4

**dealt**(1) 125:18
**dean**(1) 47:4
**debt**(3) 111:18 114:2 114:22
**debtor**(24) 2:45 6:3 7:4 7:21 8:8 8:9 8:15 17:2 17:9 34:13 37:12 95:3 106:13 108:3 110:7 110:8 113:14 115:5 123:23 123:24 123:25 124:4 124:19 125:20

**debtors**(39) 1:11 4:11 6:18 7:1 7:20 7:25 15:2 15:3 16:7 17:11 18:1 18:18 28:18 33:18 34:2 65:3 92:2 98:1 105:19 106:13 106:13 107:1 107:3 109:12 110:12 111:3 111:9 111:23 112:8 112:15 112:16 116:3 116:22 117:5 118:17 118:19 118:25 120:2 123:17

**december**(3) 22:6 84:18 93:7
**decide**(3) 49:23 112:4 112:5
**decided**(3) 24:7 54:5 125:14
**decision**(2) 46:25 118:1
**declined**(1) 39:14
**deduce**(1) 73:11
**deducted**(1) 72:25
**deed**(10) 75:19 75:20 83:18 83:19 99:1 99:4 100:6 100:8 100:9 102:7
**defend**(1) 117:6
**defendant**(1) 24:23
**defendants**(4) 21:8 21:11 21:15 21:22
**defending**(2) 112:9 116:23
**defense**(4) 98:22 99:9 99:12 121:7
**defenses**(2) 7:24 27:5
**defer**(1) 29:24
**deficiencies**(1) 94:18
**definitely**(1) 44:8
**definitive**(2) 106:9 107:17
**degree**(1) 21:25
**delaware**(5) 1:2 1:8 1:11 2:34 4:1
**delinquent**(5) 83:23 97:16 97:23 97:24 98:13

**denied**(6) 48:14 110:14 110:19 112:18 112:23 116:9

**deny**(2) 117:7 125:25
**denying**(1) 109:17
**department**(6) 16:5 39:10 43:3 85:24 96:2 98:22 98:23 99:12

**departments**(1) 97:1

**depends**(2) 65:24 99:25
**describe**(2) 100:6 100:24
**described**(1) 46:19
**deserves**(1) 91:2
**desk**(1) 5:18
**desperately**(3) 47:15 53:12 55:13
**detail**(3) 116:6 117:14 121:25
**detailed**(1) 13:5
**determine**(4) 73:5 102:4 102:5 102:12
**determined**(4) 46:17 102:14 102:15 113:1
**determining**(1) 70:7
**development**(1) 94:8
**diaz**(1) 1:43
**dickman**(5) 48:17 49:12 91:24 109:13 118:18

**dickman's**(1) 117:24
**did**(139) 4:25 6:19 11:2 11:7 13:7 13:7 18:4 18:5 19:19 22:8 28:20 29:13 31:13 32:24 35:10 35:15 36:6 36:7 38:8 38:15 39:5 42:15 43:9 43:13 43:19 43:22 44:9 44:16 44:19 45:5 45:18 46:7 46:9 46:13 46:15 47:1 48:8 48:24 49:16 50:11 50:19 51:8 51:22 52:11 52:13 52:14 52:17 52:24 53:18 53:23 54:13 54:25 56:10 56:10 60:11 60:12 60:16 60:19 60:20 60:21 61:16 61:17 62:3 63:5 63:8 63:9 63:11 63:12 63:12 63:15 63:15 63:17 64:10 65:25 67:5 67:5 67:8 68:16 73:3 73:15 73:16 74:17 75:15 75:22 76:13 77:2 78:11 78:22 79:13 81:15 81:19 82:16 82:17 82:25 84:16 84:18 85:23 85:24 86:16 86:16 86:18 91:25 93:19 94:6 95:13 97:11 97:18 97:21 98:7 98:16 98:19 100:4 100:9 100:11 100:11 100:12 100:22 102:25 104:3 104:5 104:7 106:24 107:1 113:2 113:13 116:15 116:19 118:22 118:25 124:13 126:12

**didn't**(30) 11:5 12:1 12:24 38:16 38:17 40:11 42:20 43:11 45:8 45:11 56:7 56:9 58:10 59:11 59:21 63:22 73:24 77:5 81:1 82:4 83:2 83:15 84:22 85:9 85:14 107:4 119:22 121:20 124:4 124:19

**difference**(2) 36:22 120:8
**different**(16) 16:3 23:6 36:16 36:25 40:17 40:17 42:22 45:25 46:22 46:23 52:23 53:18 67:1 114:5 114:20 118:24

**difficult**(3) 27:5 65:14 107:12
**difficulty**(1) 70:15
**dilute**(1) 120:11
**dime**(1) 125:24
**direct**(10) 17:11 17:15 17:19 35:22 49:24 55:3 96:2 96:6 123:24 128:3

**directed**(1) 15:1
**directing**(1) 19:24
**directly**(4) 7:22 54:14 69:21 113:17
**director**(1) 93:9
**disagreed**(1) 8:24
**disagreement**(1) 32:1
**disagrees**(1) 25:1
**discover**(1) 57:3
**discovered**(3) 22:19 47:17 85:4
**discovery**(1) 48:12
**discuss**(5) 26:19 26:24 32:24 91:14 113:16
**discussed**(3) 33:1 46:6 89:6
**discussing**(1) 95:3
**discussion**(9) 20:5 41:8 43:19 44:9 45:16 107:10 119:23 120:25 121:3

**discussions**(4) 21:22 43:19 44:16 95:17
**dismiss**(5) 21:16 25:17 115:14 115:17 117:10

**dismissal**(4) 114:13 114:14 115:22 115:23
**dismissed**(4) 113:9 113:21 114:3 115:7

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **dispositive**(1) 113:10 | | **economic**(1) 56:2 | | **estimate**(8) 36:16 61:21 62:18 62:25 88:3 107:15 107:21 122:21 | | **extent**(7) 12:12 19:6 26:4 33:11 101:1 107:3 110:2 | |
| **dispute**(1) 125:11 | | **ecro**(1) 1:41 | | | | | |
| **distributed**(1) 34:5 | | **edward**(4) 1:35 10:1 17:23 32:12 | | **estoppel**(5) 26:22 116:9 119:16 125:16 126:2 | | **extra**(1) 31:19 | |
| **distributing**(1) 16:25 | | **edwards**(2) 2:11 25:11 | | | | **extremely**(2) 80:25 123:14 | |
| **distribution**(1) 120:12 | | **effect**(1) 113:10 | | | | **face**(1) 115:12 | |
| **distributions**(3) 18:25 32:22 32:23 | | **effective**(3) 10:3 29:2 29:16 | | **even**(19) 24:1 29:2 30:7 40:2 46:6 62:5 62:6 67:19 76:15 83:23 84:1 84:7 84:15 84:17 103:20 114:18 119:12 119:13 123:23 | | **facie**(2) 105:20 107:25 | |
| **district**(6) 1:2 78:17 113:21 114:3 114:12 115:10 | | **effectively**(1) 18:24 | | | | **facilitate**(1) 24:4 | |
| | | **efficient**(2) 27:10 94:7 | | | | **fact**(10) 41:18 54:18 78:22 85:2 104:25 106:25 107:1 115:5 118:18 118:25 | |
| **divide**(2) 77:11 80:23 | | **effort**(4) 56:11 57:3 122:14 124:24 | | | | | |
| **division**(1) 93:25 | | **efforts**(6) 61:12 61:16 61:18 117:23 118:23 121:4 | | **event**(2) 21:7 114:18 | | **facts**(6) 108:11 108:15 114:25 123:19 124:3 124:11 | |
| **dobbins**(6) 119:4 119:7 119:8 124:10 124:12 124:12 | | | | **ever**(12) 43:22 45:25 46:6 53:19 54:13 75:15 75:22 102:25 103:24 104:1 104:3 104:5 | | | |
| | | **egregious**(1) 115:1 | | | | **factual**(5) 16:9 27:14 111:21 123:5 124:17 | |
| **docket**(7) 22:7 44:23 44:24 45:3 47:5 96:8 112:10 | | **eileen**(3) 92:21 92:24 128:9 | | **every**(5) 29:21 85:5 91:8 100:3 123:23 | | **failed**(1) 117:12 | |
| | | **either**(10) 7:22 18:6 33:2 33:4 34:22 73:14 96:25 99:24 107:25 116:16 | | **everybody**(3) 40:16 44:21 106:21 | | **failing**(1) 124:15 | |
| **docketed**(2) 4:13 28:15 | | | | **everybody's**(1) 27:8 | | **fails**(1) 110:15 | |
| **docs**(1) 94:18 | | **electronic**(2) 1:49 127:3 | | **everyone**(2) 40:16 45:7 | | **failure**(4) 98:7 98:8 111:25 113:6 | |
| **doctrine**(3) 113:8 113:9 126:1 | | **elicit**(1) 60:17 | | **everything**(5) 15:20 16:9 38:16 117:9 | | **fair**(8) 48:2 55:24 77:16 111:18 114:1 114:2 114:20 114:21 114:21 | |
| **document**(6) 28:19 29:10 41:14 96:24 97:6 101:8 | | **elicited**(1) 34:6 | | **evidence**(12) 27:12 29:9 64:3 92:6 92:18 104:18 105:14 105:24 117:12 117:13 117:14 117:19 | | | |
| | | **eligible**(2) 99:17 102:4 | | | | **fairly**(1) 107:22 | |
| **documentary**(1) 105:25 | | **eliminate**(1) 113:4 | | | | **faith**(5) 15:12 18:2 36:15 122:21 | |
| **documentation**(2) 48:25 102:12 | | **ellerby**(10) 43:20 44:10 44:10 46:8 46:9 47:2 53:4 72:17 72:23 84:11 | | **evidentiary**(5) 9:13 26:19 27:1 27:6 105:16 | | **falgowski**(1) 2:39 | |
| **documents**(9) 30:7 41:12 47:5 61:12 61:15 61:17 71:10 108:20 112:12 | | | | | | **fall**(1) 107:8 | |
| | | **ellersby**(2) 44:10 53:19 | | **ewing**(2) 2:32 22:16 | | **falling**(1) 106:11 | |
| **dodd's**(1) 53:8 | | **else**(6) 19:12 21:13 25:21 33:21 70:1 | | **ex-husband**(3) 69:5 69:9 69:25 | | **false**(1) 122:20 | |
| **dodge**(2) 2:12 25:11 | | **email**(5) 55:8 55:15 59:25 90:24 104:3 | | **ex-husband's**(1) 36:12 | | | |
| **does**(9) 9:2 12:24 14:8 29:15 41:23 49:16 62:14 86:24 95:10 99:21 99:23 101:11 102:8 102:17 106:13 106:14 106:21 113:7 113:8 123:19 | | **emailed**(5) 55:11 55:20 55:21 57:17 60:15 | | **exact**(1) 42:25 | | **familiar**(5) 75:11 94:21 95:4 95:8 96:8 | |
| | | **emails**(5) 53:22 55:9 57:7 62:5 91:3 91:6 | | **exactly**(4) 46:21 48:21 74:24 118:9 | | **fannie**(2) 28:18 29:10 | |
| | | **employed**(3) 93:4 93:6 93:17 | | **examination**(5) 35:22 65:4 83:11 103:22 107:10 | | **far**(5) 8:5 14:22 19:4 27:7 80:24 | |
| | | **employee**(5) 92:1 92:1 92:2 92:4 106:13 | | | | **fargo**(14) 44:1 46:13 46:15 47:1 53:5 53:11 55:1 68:20 72:24 74:4 84:5 85:3 102:19 112:15 | |
| **doesn't**(3) 84:8 90:25 107:13 | | **employees**(3) 76:16 94:7 96:25 | | **example**(4) 62:20 80:21 123:22 124:8 | | | |
| **doing**(9) 37:15 59:11 62:4 84:25 94:17 97:4 106:16 114:12 124:20 | | **employment**(1) 94:20 | | **except**(1) 43:1 | | **fashion**(1) 122:17 | |
| | | **end**(8) 9:16 29:18 29:25 37:4 43:13 85:3 97:14 123:7 | | **excerpt**(1) 28:21 | | **favor**(2) 69:12 69:14 | |
| **dollars**(2) 120:8 120:10 | | | | **exchange**(1) 21:24 | | **faxed**(1) 54:21 | |
| **don't**(77) 8:5 8:14 8:16 9:8 12:9 18:11 18:15 19:2 19:5 22:11 23:20 23:21 24:11 27:8 28:11 28:12 29:20 29:25 31:14 31:15 31:25 33:4 33:10 33:15 33:20 33:21 37:12 37:18 37:24 40:22 40:24 41:2 48:20 49:7 50:12 52:10 58:5 63:18 64:15 64:23 66:2 68:23 69:17 74:11 74:19 78:8 81:3 85:11 86:21 88:23 90:16 91:7 91:14 101:22 106:1 106:20 106:24 107:5 112:8 115:13 115:15 119:12 120:2 120:10 121:18 121:22 122:6 122:7 122:11 122:17 122:22 122:24 123:18 124:2 124:20 126:3 126:6 | | **ends**(1) 110:9 | | **exchanges**(2) 57:10 59:25 | | **fdic**(1) 53:7 | |
| | | **engaging**(1) 21:21 | | **excuse**(11) 7:4 7:23 29:12 58:7 62:2 94:14 100:12 102:15 108:6 112:4 113:14 | | **february**(10) 50:12 57:11 57:24 67:3 67:4 67:11 68:1 68:4 115:19 118:25 | |
| | | **english**(1) 60:9 | | | | | |
| | | **enhancements**(2) 94:5 94:10 | | **excused**(1) 35:9 | | **fed**(1) 114:24 | |
| | | **enos**(7) 54:16 57:8 57:10 57:17 57:21 58:13 124:8 | | **excuses**(1) 119:3 | | **federal**(5) 54:19 69:19 92:6 111:13 113:19 113:24 118:14 | |
| | | | | **executed**(1) 21:12 | | | |
| | | **enough**(1) 112:6 | | **executives**(1) 85:17 | | **fee**(3) 62:20 62:21 80:20 | |
| | | **enrichment**(1) 111:15 | | **exhibit**(48) 27:18 29:21 40:25 41:2 42:1 43:5 47:8 49:9 50:2 50:14 50:20 51:8 53:1 54:7 55:4 56:14 56:23 57:2 57:6 59:3 59:8 59:16 59:24 60:25 71:25 72:1 72:3 72:4 72:9 72:10 72:14 85:3 86:17 89:15 89:20 90:2 90:6 90:23 91:5 92:7 92:11 92:13 96:7 96:8 112:11 113:14 128:14 128:18 | | **feel**(1) 34:3 | |
| **done**(14) 9:10 22:23 23:1 29:20 38:21 43:12 67:20 68:7 73:21 81:24 82:7 101:21 118:21 122:15 | | **enter**(2) 35:10 35:15 | | | | **felt**(2) 64:5 80:24 | |
| | | **entered**(3) 6:4 25:14 97:3 | | | | **few**(5) 13:23 43:21 61:10 68:12 100:1 | |
| | | **enters**(1) 96:23 | | | | **fiduciary**(1) 111:16 | |
| | | **entirely**(1) 121:23 | | | | **figure**(5) 5:24 20:9 31:2 52:19 58:10 80:25 88:12 | |
| **doubt**(1) 123:13 | | **entities**(5) 8:9 13:23 16:20 16:25 112:17 | | | | | |
| **down**(8) 31:23 39:15 44:8 65:18 86:1 88:16 88:17 104:14 | | **entitled**(13) 10:15 11:11 13:2 33:4 33:21 33:25 35:2 108:19 109:19 110:5 123:7 123:10 125:22 | | | | **figured**(2) 46:25 52:24 | |
| | | | | **exhibits**(15) 27:24 28:3 28:6 41:7 41:19 61:9 88:21 88:22 88:25 89:3 89:9 91:16 91:23 104:18 128:12 | | **file**(25) 5:9 10:4 21:14 21:16 23:8 34:15 34:22 43:13 48:23 48:24 50:4 50:10 63:5 75:2 75:3 85:2 94:15 95:15 95:15 101:20 109:7 109:10 111:3 111:9 123:8 | |
| **dozen**(1) 107:6 | | **entitlement**(1) 125:12 | | | | | |
| **dozens**(1) 107:6 | | **entity**(4) 7:19 7:21 7:22 110:8 | | | | | |
| **draft**(1) 9:5 | | **equal**(2) 64:14 115:6 | | **existed**(1) 93:25 | | | |
| **drafting**(1) 24:17 | | **equitable**(4) 121:1 121:6 121:22 122:3 | | **expect**(2) 23:16 90:17 | | | |
| **drama**(1) 86:6 | | **equity**(9) 10:21 44:7 67:9 68:2 68:7 68:8 68:16 69:2 84:4 | | **expectations**(1) 24:22 | | **filed**(35) 4:16 4:17 4:25 5:4 5:10 5:11 6:7 10:11 10:12 10:13 12:20 18:14 21:4 22:5 22:8 24:19 24:23 33:8 33:17 34:25 44:19 63:8 63:21 64:1 64:12 71:9 74:12 79:2 79:5 95:8 110:21 113:23 119:19 119:20 119:21 | |
| **due**(5) 21:6 73:19 98:9 99:24 100:2 | | | | **expected**(3) 32:23 115:5 122:14 | | | |
| **dueling**(1) 32:5 | | **escrow**(3) 16:18 17:18 34:4 | | **expended**(1) 70:7 | | | |
| **during**(6) 31:7 38:1 38:3 71:18 84:21 95:5 | | **especially**(1) 120:6 | | **expending**(1) 117:5 | | | |
| **duty**(1) 111:16 | | **esq**(12) 1:26 1:27 1:28 1:35 1:36 2:6 2:13 2:19 2:26 2:39 2:46 3:5 | | **expense**(12) 9:12 26:3 26:17 26:23 37:10 113:1 116:5 116:21 117:2 117:7 123:20 123:22 | | | |
| **dwell**(1) 37:24 | | | | | | **files**(2) 36:18 48:17 | |
| **each**(2) 96:20 122:3 | | **esquire**(1) 2:33 | | **expenses**(4) 80:8 117:13 123:17 125:3 | | **filing**(9) 10:17 22:21 75:7 75:8 78:22 79:3 93:23 94:11 116:20 | |
| | | **essence**(1) 11:25 | | **experience**(1) 120:6 | | | |
| **eagle**(5) 69:6 69:11 69:15 69:23 70:1 | | **essentially**(13) 13:5 107:5 116:7 | | **explain**(8) 11:2 13:7 21:1 52:2 60:6 77:10 83:13 83:14 | | **filings**(1) 93:14 | |
| **earlier**(6) 61:10 61:20 56:18 65:7 69:5 71:10 80:1 82:10 82:22 113:12 124:25 | | **established**(1) 101:22 | | | | **fill**(2) 75:15 75:22 | |
| | | **estate**(22) 36:3 40:9 62:11 65:7 65:10 65:15 65:17 66:9 80:7 81:5 85:25 86:13 88:6 88:8 106:11 106:14 106:16 107:9 111:14 114:1 114:21 120:9 | | **explained**(7) 11:25 13:6 13:21 32:16 32:20 33:3 38:20 | | **filled**(1) 76:15 | |
| | | | | | | **final**(3) 8:22 56:2 102:18 | |
| **early**(2) 36:6 61:22 | | | | **explaining**(1) 13:5 | | **finally**(6) 39:9 39:21 53:24 53:25 72:23 106:8 | |
| **earn**(2) 62:19 80:22 | | | | **express**(1) 120:7 | | | |
| **echo**(1) 25:13 | | **estates**(2) 116:22 117:5 | | **expunged**(2) 111:6 12:5 | | | |
| **ecoa**(4) 64:14 115:12 115:18 115:22 | | | | **extend**(1) 25:14 | | **financial**(3) 16:7 75:13 120:15 | |
| | | | | **extending**(1) 20:24 | | **financing**(1) 39:13 | |
| | | | | **extension**(3) 21:9 21:10 24:10 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **find**(21) 15:24 40:8 40:13 44:20 45:1 46:23 47:15 53:10 53:12 55:23 56:11 59:1 60:1 60:17 74:17 95:25 98:14 108:9 110:16 123:6 125:10 | | **found**(7) 17:7 46:18 83:18 84:4 85:1 109:18 112:3 | | **going**(42) 4:18 5:8 5:23 5:24 7:25 11:1 12:4 20:5 20:13 21:2 27:17 28:9 29:4 29:25 30:6 31:20 31:22 31:22 34:11 34:15 34:19 34:21 37:2 40:16 57:12 59:2 65:18 82:6 89:25 90:25 94:24 98:24 99:11 100:25 103:3 109:20 109:21 112:3 112:4 115:17 121:14 125:25 | | **harrisburg**(1) 1:45 |
| | | **four**(2) 66:19 83:25 | | | | **harrison's**(1) 51:12 |
| **finding**(5) 9:1 16:9 60:17 113:4 114:4 124:25 126:13 | | **franklin**(1) 53:25 | | | | **has**(24) 4:13 8:19 13:25 14:2 14:14 15:20 17:13 18:17 19:2 22:18 26:17 27:19 34:11 48:7 74:11 89:16 92:3 95:18 102:9 108:2 |
| **fine**(7) 17:14 30:2 30:4 59:17 105:22 | | **frankly**(3) 29:19 33:20 110:1 | | | | 108:11 108:19 112:6 125:14 |
| 124:25 126:13 | | **fraud**(5) 64:8 64:19 111:16 121:11 122:1 | | **gone**(5) 19:8 34:11 40:21 42:14 61:11 | | |
| | | **fraudulent**(3) 17:8 121:2 122:3 | | **good**(20) 4:4 4:21 7:10 9:25 14:12 15:12 | | **hasn't**(1) 22:23 |
| **finish**(2) 61:24 67:13 | | **freddie**(1) 2:38 | | 18:2 20:16 20:17 24:14 25:10 32:11 35:24 | | **hate**(1) 31:19 |
| **firm**(1) 54:20 | | **freedman**(3) 46:11 58:21 58:23 | | 36:14 36:15 39:11 65:1 65:6 122:21 124:1 | | **have**(156) 4:10 5:12 5:14 6:12 7:12 7:15 |
| **first**(31) 4:9 27:14 27:21 37:7 38:1 38:3 | | **freestanding**(1) 121:18 | | | | 9:6 9:13 10:15 10:18 10:19 11:7 14:14 |
| 38:13 38:25 40:5 40:14 41:9 44:9 45:18 | | **friday**(1) 24:18 | | **google**(1) 85:13 | | 15:5 15:11 16:9 16:18 17:4 19:6 19:7 |
| 45:21 47:4 55:15 75:19 83:23 87:10 97:20 | | **from**(77) 4:5 4:19 4:22 5:1 5:5 5:7 9:22 | | **got**(28) 23:24 36:15 36:23 37:6 38:4 47:5 | | 19:8 20:2 20:5 20:22 21:6 21:18 21:23 |
| 97:21 101:22 105:21 106:22 114:8 116:24 | | 10:1 10:18 13:17 15:22 16:4 17:9 18:24 | | 48:17 49:1 50:4 50:22 52:9 52:11 52:17 | | 22:1 22:11 22:12 24:23 25:2 25:16 26:4 |
| 118:15 118:15 121:20 123:4 123:5 | | 19:5 19:7 20:18 21:20 22:16 24:15 26:22 | | 53:3 53:24 72:5 88:2 101:19 104:10 106:3 | | 26:10 27:18 28:17 28:17 28:22 29:20 |
| | | 30:14 32:8 32:12 38:12 38:14 40:9 42:6 | | 120:9 123:6 123:8 123:8 124:5 125:18 | | 30:11 30:12 31:3 32:14 33:16 33:18 |
| **fit**(1) 122:4 | | 45:9 46:1 47:5 47:9 48:18 49:12 50:22 | | 125:21 126:4 | | 33:24 33:24 34:24 36:4 39:17 40:24 41:2 |
| **five**(4) 30:22 66:19 85:7 105:8 | | 53:3 53:7 53:8 53:16 53:19 53:24 | | | | 43:19 44:9 44:16 44:22 44:23 45:1 45:3 |
| **fix**(1) 38:21 | | 54:14 56:16 56:17 57:20 57:23 61:5 61:22 | | **gotten**(3) 34:6 71:21 107:19 | | 51:1 51:8 51:15 53:13 55:1 57:10 61:10 |
| **fixed**(3) 37:5 38:5 43:1 | | 63:6 65:2 75:6 77:18 77:19 77:25 87:2 | | **grace**(1) 2:47 | | 63:8 64:18 64:23 65:10 66:19 71:23 72:9 |
| **flat**(2) 44:1 47:14 | | 91:6 93:14 96:11 97:13 99:3 101:4 101:5 | | **grant**(1) 115:17 | | 73:16 74:1 74:2 74:19 75:20 77:18 77:24 |
| **floor**(2) 1:30 2:47 | | 101:6 102:16 105:10 106:5 106:23 108:3 | | **granted**(1) 78:16 | | 79:22 81:8 82:3 82:4 82:15 83:5 83:13 |
| **florida**(2) 16:6 16:6 | | 109:20 111:8 111:9 112:13 113:12 122:25 | | **granting**(1) 112:2 | | 83:14 83:19 83:25 84:6 85:4 86:2 88:14 |
| **fly**(1) 18:11 | | 125:20 127:3 | | **greecher**(67) 1:27 4:4 4:5 4:9 4:18 6:15 | | 88:19 88:23 88:25 89:4 89:18 90:8 90:9 |
| **follow**(1) 118:1 | | | | 6:17 7:18 8:3 8:10 8:13 9:2 9:7 9:9 9:11 | | 90:17 91:3 91:13 91:17 91:21 93:6 93:19 |
| **following**(2) 112:13 115:21 | | **front**(2) 33:16 125:11 | | 9:20 20:11 26:1 26:1 26:9 26:16 27:17 | | 94:21 100:19 102:5 102:18 102:19 103:11 |
| **for**(173) 1:2 1:24 2:4 2:11 2:25 2:32 2:38 | | **frustrated**(1) 60:11 | | 27:25 28:4 28:12 29:8 30:5 30:10 30:13 | | 103:24 104:1 104:3 104:5 104:7 104:20 |
| 2:45 3:3 4:16 5:9 5:19 7:11 7:11 7:22 | | **frustration**(1) 124:11 | | 30:22 30:25 31:11 32:6 72:3 88:22 88:24 | | 105:2 105:5 105:13 106:15 106:19 106:20 |
| 9:15 10:14 12:12 12:19 12:23 12:25 15:11 | | **full**(6) 18:24 25:15 32:17 89:16 89:22 | | 89:14 89:20 89:24 90:9 91:20 91:21 | | 106:22 107:6 107:15 107:18 107:19 107:20 |
| 15:9 17:8 19:3 19:21 20:14 21:10 22:9 | | **fund**(2) 19:7 84:12 | | 92:9 92:20 93:3 101:9 101:24 101:25 | | 108:24 110:7 112:4 113:11 114:7 115:4 |
| 22:17 23:18 24:1 24:19 24:21 24:25 25:3 | | **funding**(1) 5:5 | | 103:6 103:8 104:12 104:16 104:17 108:8 | | 115:25 117:10 117:19 118:17 118:25 |
| 25:15 27:5 28:21 29:11 31:19 31:19 31:22 | | **funds**(14) 15:22 16:13 16:17 16:22 17:1 | | 108:8 109:22 109:24 110:1 114:11 123:1 | | 120:16 120:19 120:21 120:22 122:14 |
| 31:23 33:22 34:8 34:21 34:24 35:2 35:24 | | 17:3 17:3 17:4 17:5 17:9 17:20 19:5 19:8 | | 125:13 126:3 126:5 126:8 126:12 126:16 | | 122:19 122:24 123:13 125:18 125:23 126:5 |
| 36:7 36:16 36:19 36:20 37:3 37:9 37:15 | | 34:3 | | | | 126:11 |
| 37:19 37:20 39:4 39:24 40:4 41:15 42:2 | | **further**(11) 8:4 34:14 43:9 64:23 73:23 | | **grounds**(2) 114:14 117:8 | | |
| 42:10 43:6 43:13 43:23 47:8 47:10 48:11 | | 83:7 86:13 88:14 105:13 122:25 128:2 | | **group**(3) 10:7 22:6 94:8 | | **haven't**(6) 15:6 15:7 17:10 31:7 78:1 |
| 48:23 49:9 49:9 50:3 50:5 50:20 51:11 | | | | **guarantee**(2) 20:12 20:19 | | 101:19 |
| 52:25 53:2 53:10 54:7 54:20 55:2 55:4 | | **future**(2) 5:10 112:5 | | **guaranty**(1) 2:25 | | |
| 56:14 57:16 59:24 61:2 62:20 63:5 64:5 | | **gained**(1) 68:19 | | **guess**(6) 30:18 45:21 51:3 78:8 87:10 | | **having**(6) 25:4 55:12 55:18 70:15 100:21 |
| 64:19 64:19 65:1 65:12 65:14 67:16 67:24 | | **gains**(1) 34:6 | | 106:10 | | 116:14 |
| 68:10 68:10 69:6 69:17 69:19 70:24 72:25 | | **gallery**(1) 90:13 | | | | |
| 73:16 73:17 74:5 75:13 75:19 76:7 76:21 | | **gather**(2) 58:13 106:23 | | **guideline**(1) 28:19 | | **he's**(18) 11:10 15:23 17:3 17:5 17:10 19:9 |
| 77:4 77:18 79:3 79:5 81:10 81:16 81:20 | | **gave**(4) 11:8 12:11 28:2 68:10 | | **guidelines**(1) 29:11 | | 19:21 27:17 40:21 43:25 56:18 58:24 |
| 81:24 82:4 82:6 83:17 86:10 86:13 88:8 | | **general**(12) 7:14 32:18 33:3 33:8 33:20 | | **guy**(1) 54:11 | | 84:10 84:10 88:24 91:25 92:2 92:3 |
| 88:12 88:20 89:2 91:17 91:19 93:14 93:16 | | 34:13 34:24 36:10 64:4 101:14 109:15 | | **guys**(1) 20:16 | | |
| 94:4 94:7 94:9 94:16 94:18 94:19 95:2 | | 125:4 | | **had**(84) 4:14 5:1 6:20 10:4 10:19 11:4 | | **head**(1) 62:24 |
| 95:13 95:25 97:14 99:15 100:16 100:18 | | **generally**(7) 7:25 24:21 94:21 95:4 95:18 | | 12:1 12:3 14:19 15:3 15:10 16:7 22:12 | | **hear**(4) 29:11 90:20 105:16 108:3 |
| 101:8 102:4 104:25 105:1 107:24 108:22 | | 98:7 125:2 | | 28:25 31:7 33:19 36:20 38:21 41:24 43:12 | | **heard**(7) 9:18 11:18 12:15 14:14 24:12 |
| 110:16 110:17 112:21 112:25 114:14 | | | | 43:12 43:14 43:19 45:15 45:15 45:25 47:7 | | 25:22 69:24 |
| 114:17 115:23 116:8 118:4 120:14 120:15 | | **gentleman**(1) 57:23 | | 47:17 51:13 52:22 53:6 53:9 53:13 53:19 | | |
| 121:5 123:10 123:17 123:22 123:25 124:1 | | **gentlemen**(1) 16:19 | | 54:19 56:17 63:14 64:5 64:9 66:16 69:2 | | **hearing**(22) 9:13 9:16 20:21 26:20 27:1 |
| 125:3 125:6 125:20 | | **germany**(1) 10:25 | | 69:24 70:15 71:21 76:16 77:19 77:23 78:4 | | 27:6 43:14 48:9 49:4 57:11 71:7 71:15 |
| | | **get**(60) 5:19 13:13 22:20 23:1 27:12 27:17 | | 81:8 81:24 82:7 82:22 83:17 83:22 83:25 | | 71:18 72:15 91:24 95:14 109:8 115:18 |
| **forbear**(2) 78:6 78:9 | | 27:19 34:17 39:6 39:16 39:22 40:10 40:25 | | 84:8 84:23 85:16 86:3 86:3 86:12 86:12 | | 118:17 118:25 123:9 126:19 |
| **forbearance**(2) 77:20 77:21 | | 42:18 43:9 44:6 45:9 46:23 46:24 48:2 | | 86:12 86:17 92:11 98:2 98:21 102:14 | | |
| **forbeared**(1) 77:25 | | 48:3 50:11 52:7 52:11 52:14 54:4 54:13 | | 102:15 102:17 106:7 107:3 107:18 107:18 | | **heck**(1) 118:21 |
| **forced**(1) 107:5 | | 55:24 55:24 57:14 57:20 60:10 60:14 | | 109:10 111:4 114:4 118:16 118:21 120:4 | | **hedge**(1) 84:12 |
| **foreclosed**(1) 78:1 | | 60:22 61:18 66:4 68:2 69:14 73:12 73:15 | | 120:23 121:16 122:9 124:23 | | **held**(3) 19:6 48:9 93:22 |
| **foreclosing**(1) 77:25 | | 73:17 73:19 80:20 81:11 81:12 81:18 | | | | **help**(17) 24:3 38:22 47:16 52:6 53:6 53:10 |
| **foreclosure**(7) 44:6 50:21 50:22 84:20 | | 81:19 84:11 88:12 99:13 106:2 107:7 | | **hadn't**(1) 76:15 | | 54:20 54:21 55:13 55:20 56:7 60:13 60:17 |
| 99:16 100:9 118:3 | | 115:15 118:22 121:5 121:17 121:24 122:2 | | **hahn**(5) 1:34 9:23 10:1 24:15 32:12 | | 60:19 67:5 68:9 124:7 |
| | | 125:7 125:23 | | **half**(2) 18:7 66:14 | | |
| **foregoing**(1) 127:2 | | | | **hall**(1) 19:10 | | **helped**(1) 53:13 |
| **forget**(1) 90:13 | | **gets**(1) 33:22 | | **hallway**(1) 20:6 | | **helping**(2) 45:21 60:1 |
| **form**(8) 9:4 9:5 9:6 9:8 15:2 20:2 21:16 | | **getting**(11) 5:22 42:22 43:16 45:10 48:10 | | **hand**(4) 21:13 24:7 27:18 71:25 | | |
| 79:10 | | 60:11 62:8 76:21 87:2 113:16 118:8 | | **handed**(3) 41:6 46:19 73:1 | | |
| | | | | **handle**(2) 27:17 98:7 | | |
| **forth-fourth**(1) 35:15 | | **gil**(1) 14:13 | | **handling**(3) 27:16 30:14 31:23 | | |
| **forty**(1) 87:1 | | **gill**(1) 12:20 | | **hands**(1) 86:17 | | |
| **forty-fourth**(3) 4:11 5:2 26:5 | | **give**(10) 11:2 33:25 45:13 58:18 91:1 | | **handwriting**(1) 51:20 | | |
| **forty-six**(1) 6:18 | | 91:16 99:24 118:19 124:15 125:21 | | **hang**(1) 20:4 | | |
| **forum**(6) 112:7 112:7 116:15 120:5 120:20 | | | | **happen**(3) 29:13 64:10 95:23 | | |
| 122:10 | | **given**(10) 9:14 12:6 17:4 36:20 37:17 | | **happened**(9) 4:24 36:10 37:24 38:1 38:2 | | |
| | | 107:14 110:9 117:2 118:2 122:9 | | 38:10 64:6 119:5 121:3 | | |
| **forums**(1) 117:6 | | | | | | |
| **forward**(12) 14:7 15:21 15:23 16:19 16:20 | | **gives**(2) 113:9 123:16 | | | | |
| 20:13 23:19 23:22 24:5 37:17 102:13 | | **god**(1) 82:5 | | **happens**(5) 39:7 95:18 100:6 | | |
| 116:17 | | **goes**(2) 21:20 105:19 | | **happy**(4) 27:9 90:17 107:25 122:22 | | |
| | | | | **hard**(2) 62:7 63:12 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **her**(101) 6:24 6:25 7:3 7:3 11:23 11:24 12:1 12:4 12:5 12:10 12:11 26:23 27:20 29:13 37:9 47:14 48:12 51:13 55:17 55:21 59:7 71:25 72:1 95:10 95:11 97:11 97:18 97:25 98:23 99:2 100:14 102:21 102:23 104:1 104:3 104:5 104:7 106:3 108:14 108:14 108:14 108:17 108:22 108:22 108:22 109:5 109:6 109:7 109:8 109:10 109:12 110:5 110:6 110:13 110:21 111:2 111:4 111:6 111:22 111:25 112:7 112:7 112:14 112:20 112:23 113:3 113:6 113:7 115:2 115:25 116:1 116:2 116:4 116:11 116:12 116:13 116:15 116:20 116:20 117:12 117:23 118:7 118:22 118:23 121:10 121:11 121:12 123:8 123:14 123:17 123:17 124:24 124:25 125:19 125:21 125:24 | | **honor**(163) 4:4 4:9 4:14 4:18 4:21 4:25 5:13 5:15 5:17 6:2 6:6 6:9 6:11 6:13 6:17 7:10 8:3 8:14 9:2 9:9 9:25 10:3 11:12 11:21 11:22 12:18 13:12 13:15 14:10 14:12 14:15 14:23 15:1 15:3 15:9 15:18 16:7 16:21 17:7 17:11 17:19 17:23 17:24 18:12 18:16 18:22 19:1 19:11 19:17 19:17 20:7 20:11 20:17 20:25 21:13 21:18 22:4 22:15 22:16 22:18 22:22 22:24 23:10 23:10 24:14 25:10 25:20 25:25 26:1 26:11 26:16 26:25 27:4 27:22 28:8 28:11 28:13 28:24 29:8 29:11 29:19 29:21 30:18 31:9 32:6 32:11 32:14 33:14 33:23 33:25 34:5 34:13 34:15 35:7 35:9 35:10 35:17 37:8 37:14 40:24 50:15 51:9 58:7 59:3 59:4 64:24 65:1 67:18 71:24 83:5 83:8 83:10 88:14 89:2 89:7 89:12 89:14 89:19 90:7 90:9 90:19 90:22 91:1 91:5 91:21 92:10 92:12 92:15 92:20 100:25 101:9 101:11 103:8 103:14 104:9 104:12 104:23 105:5 105:13 105:17 105:23 106:18 107:25 108:1 108:11 108:19 108:21 109:19 109:24 112:10 113:12 114:24 114:25 115:18 116:7 117:9 118:7 119:11 123:1 126:5 126:16 126:18 | | **i'm**(107) 4:18 5:23 7:18 8:5 8:14 14:13 16:11 16:12 17:15 17:19 20:9 21:6 21:12 21:17 23:21 27:9 28:8 29:2 29:4 30:13 31:4 31:9 31:20 34:11 34:16 34:19 35:9 35:14 37:16 39:15 40:8 40:16 41:1 41:2 42:9 42:14 44:10 46:10 47:19 48:22 51:5 54:4 55:7 55:9 55:14 59:2 59:3 59:5 59:18 59:22 60:5 60:8 64:3 67:12 67:19 68:4 68:7 72:20 73:2 73:19 73:21 73:24 74:25 76:23 78:8 78:8 80:11 80:12 81:10 81:19 81:19 85:9 86:17 88:2 89:22 90:20 90:22 92:5 94:13 94:24 96:8 97:1 97:21 100:25 101:2 101:3 101:4 103:14 105:17 107:2 107:25 108:16 110:5 111:8 112:3 113:12 115:17 118:16 119:1 119:1 119:2 121:14 122:22 125:23 125:25 | | **inordinate**(2) 105:25 106:1 **inquire**(2) 41:10 53:15 **inquired**(2) 99:1 100:10 **inquiry**(3) 56:10 56:10 110:9 **ins**(1) 2:25 **instance**(2) 121:19 124:12 **insurance**(2) 20:12 20:19 **insured**(1) 61:20 **intend**(1) 37:24 **intended**(1) 116:15 **intention**(2) 120:2 120:18 **intentionally**(1) 51:9 **interest**(9) 16:2 16:10 37:3 37:5 37:6 38:11 38:22 84:14 104:9 |
| | | | | **i've**(13) 15:20 15:24 16:17 23:23 37:21 41:6 67:20 67:25 82:7 82:7 104:10 119:1 126:14 **idea**(3) 110:12 120:23 124:15 **identical**(1) 16:11 **identified**(3) 111:20 115:2 116:12 **identify**(23) 41:14 42:2 43:6 47:8 49:9 50:3 50:5 50:20 51:11 53:2 54:7 54:15 55:4 56:14 57:6 58:20 59:3 59:8 59:16 59:24 61:2 94:25 111:24 | | **interested**(2) 36:7 47:25 **internet**(2) 85:13 85:14 **interrupt**(1) 40:4 55:14 **intervene**(3) 22:23 23:13 **interveners**(2) 22:17 24:24 **into**(19) 16:18 17:18 21:17 23:6 25:14 38:10 39:12 39:13 43:3 45:22 48:14 64:3 68:7 76:22 77:11 85:1 92:17 95:20 101:19 |
| **hers**(1) 52:11 | | | | **identifying**(1) 47:11 **identity**(2) 106:3 106:4 **idle**(2) 47:24 48:6 **ignored**(1) 50:12 **illegal**(1) 16:11 **illicit**(1) 15:21 **image**(1) 95:15 **immediately**(1) 97:5 **impact**(4) 4:16 5:5 5:12 5:23 **impasse**(1) 20:8 **important**(4) 42:15 91:17 117:21 118:10 123:14 | | **introductory**(1) 111:7 **inv**(1) 52:20 **investigating**(1) 48:16 **investigation**(4) 48:13 48:16 **investment**(6) 10:22 11:25 16:4 20:13 71:6 74:6 |
| **hessen**(5) 1:34 9:23 10:1 24:15 32:12 **high**(1) 40:2 **him**(30) 10:24 11:2 11:2 11:6 11:8 13:3 13:3 18:10 28:2 31:6 34:3 36:13 44:2 44:17 45:22 45:23 52:9 53:16 54:18 54:18 54:20 54:20 54:21 67:12 68:10 69:12 69:14 69:19 81:19 91:25 | | | | | | **investor**(6) 39:24 40:11 43:22 44:5 52:20 84:13 |
| **himself**(1) 14:1 **his**(19) 11:5 11:5 11:16 12:20 12:23 13:4 13:7 14:2 14:2 18:24 19:24 32:17 36:19 39:18 56:6 63:1 113:20 113:22 114:19 | | **honorable**(1) 1:18 **hope**(2) 22:24 42:18 **hoping**(2) 48:2 48:3 **hosy**(1) 39:3 **hour**(9) 80:3 80:14 80:17 80:17 81:21 86:18 86:20 87:25 88:3 | | **impossibl**(1) 77:9 **impression**(1) 118:16 **inability**(1) 98:17 **inc**(2) 1:8 95:1 | | **investors**(5) 49:22 49:23 49:24 52:23 **involved**(3) 36:6 113:25 119:13 **isn't**(6) 12:9 31:21 42:6 50:1 122:4 122:16 **issue**(10) 11:5 11:3 28:22 106:10 106:18 112:4 113:11 118:10 120:24 122:11 |
| **histories**(1) 96:18 **history**(4) 95:17 97:13 106:20 119:24 **hit**(2) 90:11 118:12 **hmit2004-01**(1) 44:3 **hold**(5) 28:2 34:11 44:25 51:20 83:24 90:1 93:8 | | **hourly**(2) 62:25 117:14 122:13 **hours**(17) 52:18 61:23 61:25 62:4 62:22 80:9 80:23 81:13 86:4 86:6 86:10 86:25 87:1 87:22 87:24 107:7 107:18 | | **include**(5) 7:14 7:21 25:17 95:10 116:11 **included**(2) 111:20 112:24 **includes**(2) 26:14 91:6 **including**(5) 13:18 57:3 106:3 109:7 111:24 113:25 | | **issues**(13) 26:18 30:1 30:10 42:17 55:2 94:4 106:22 109:11 110:6 123:3 123:3 123:5 125:18 **it'll**(1) 101:3 **it's**(73) 5:18 6:18 7:13 7:19 7:20 9:10 11:24 13:22 14:6 18:14 18:20 19:14 20:12 20:16 27:7 27:9 28:19 29:10 33:4 35:1 37:25 39:15 42:6 42:10 44:10 49:15 52:20 59:19 62:22 63:12 67:15 72:4 72:6 80:9 80:17 80:24 82:6 84:5 84:6 85:2 85:2 85:13 86:6 86:6 89:4 89:20 90:3 91:2 91:14 91:15 91:17 91:17 91:18 92:19 96:7 96:11 96:11 96:16 99:11 102:2 102:7 104:19 107:12 110:2 116:22 117:21 118:7 121:15 121:15 122:1 125:15 125:15 125:16 |
| **holdings**(1) 1:8 **holdup**(2) 22:18 22:21 **home**(73) 1:7 4:6 11:10 16:1 20:13 32:19 33:9 36:8 38:17 38:25 39:6 40:6 40:15 40:19 42:4 42:4 42:19 42:25 45:5 45:8 45:24 46:1 46:7 47:10 52:9 54:12 55:19 67:2 67:9 68:2 68:9 68:9 68:13 69:7 69:22 69:24 70:13 70:18 70:21 71:1 71:3 76:6 76:7 76:16 76:19 77:2 77:22 77:24 78:2 78:5 78:10 84:6 85:17 86:24 92:4 93:5 93:18 93:19 93:23 94:22 94:24 95:1 95:21 96:15 111:4 111:6 | | **however**(5) 4:12 19:23 29:11 **hscb**(1) 19:14 **huge**(3) 106:1 106:2 120:8 **hundreds**(8) 52:18 61:23 61:25 62:2 62:3 86:4 107:7 107:18 | | **income**(2) 66:10 88:8 **inconsistent**(1) 117:3 **incorrect**(3) 22:23 51:17 51:25 **incorrectly**(1) 22:20 **incur**(1) 98:11 **incurred**(4) 80:8 97:15 97:21 117:13 **indenture**(3) 10:8 55:1 74:5 **index**(1) 128:1 **indicated**(6) 6:21 12:8 17:16 24:19 26:18 74:13 | | **item**(5) 4:24 6:2 6:7 8:7 29:9 **items**(2) 28:15 28:16 **its**(1) 24:18 **itself**(6) 11:5 12:4 101:8 115:12 116:23 117:6 |
| **home's**(1) 84:24 **homes**(4) 65:20 65:25 80:7 123:15 **honest**(1) 82:5 **honestly**(6) 29:3 66:4 68:23 74:19 81:25 82:4 | | **hypothetical**(1) 86:22 **i'd**(13) 7:16 14:19 17:11 22:11 25:13 27:11 31:19 31:19 35:7 55:1 71:25 72:1 78:14 **i'll**(19) 6:12 9:22 11:19 12:16 19:18 26:7 26:10 31:6 37:20 37:23 39:19 41:23 60:9 67:22 78:10 90:4 90:5 91:19 96:6 | | **indication**(1) 117:15 **indiscernible**(1) 117:3 **individual**(1) 13:2 **individuals**(3) 10:10 10:13 10:18 **informal**(2) 5:5 21:23 **information**(59) 11:2 11:9 12:7 12:11 21:23 21:24 42:10 42:12 42:22 44:20 45:9 45:10 45:25 48:10 49:19 49:25 50:10 51:14 51:22 51:23 52:14 53:18 57:3 57:20 58:13 58:18 61:13 61:18 62:9 70:10 73:11 74:13 74:17 75:9 75:14 76:6 77:3 96:19 96:20 96:23 97:3 106:3 106:5 107:1 107:8 109:6 109:19 110:3 110:13 110:19 118:19 118:22 121:5 121:18 123:8 123:10 124:23 125:20 **informed**(1) 12:5 **initiated**(1) 113:19 | | **january**(6) 10:4 10:10 63:25 66:25 67:4 84:19 **jarvinen**(3) 1:36 24:14 24:15 **jenna**(1) 40:3 **jeopardized**(1) 111:4 **jessica**(2) 53:21 74:15 **jest**(1) 49:20 **joann**(3) 11:22 55:15 55:16 **joanna**(2) 55:5 55:16 **joe**(3) 40:18 42:24 85:20 **john**(4) 52:8 56:16 60:22 61:5 **johnson**(5) 57:24 57:24 57:25 58:1 58:8 **jonathan**(1) 53:8 **joseph**(2) 52:3 61:7 **judge**(5) 1:19 31:23 54:5 69:18 88:2 **judgment**(2) 8:22 113:10 |

| Word | Page:Line |
|---|---|
| judicata(9) | 26:21 113:8 114:9 114:15 115:23 116:7 119:16 125:15 126:1 |
| judicial(6) | 26:21 116:9 117:7 119:16 125:16 126:2 |
| july(3) | 83:21 113:21 114:18 |
| june(2) | 39:21 63:25 |
| just(104) | 5:6 7:13 11:7 12:3 13:13 16:18 17:7 17:16 17:24 22:9 23:4 23:4 24:8 29:8 30:18 31:9 31:12 31:13 31:22 34:17 35:25 37:19 37:25 38:2 38:19 38:21 40:4 40:4 40:9 41:6 41:7 41:14 42:19 43:6 43:11 44:3 45:8 46:4 47:18 48:5 48:23 49:7 49:8 49:9 49:10 50:5 50:7 50:15 50:19 51:5 51:11 54:5 54:6 58:2 61:2 61:24 62:5 64:9 80:24 81:3 81:23 81:24 82:16 83:2 84:22 85:6 85:13 86:6 86:8 86:10 86:19 86:19 86:21 88:11 88:24 89:14 89:21 90:7 90:9 91:1 91:9 91:12 91:15 91:16 92:12 92:17 95:1 101:5 103:11 105:6 107:14 115:15 116:6 118:12 120:11 121:24 122:13 122:16 123:3 124:1 125:1 126:10 126:12 |
| kathleen(2) | 43:4 47:9 |
| keep(6) | 8:16 22:15 54:6 98:25 99:14 |
| kenneth(3) | 54:16 57:7 57:17 |
| kept(5) | 34:4 39:18 39:19 42:22 73:15 |
| kevin(3) | 53:3 53:14 53:20 |
| kickback(1) | 36:19 |
| kind(5) | 27:15 37:16 38:18 101:13 119:16 |
| kindly(1) | 73:1 |
| kinds(1) | 125:7 |
| king(1) | 2:7 |
| klayman(12) | 2:26 20:17 20:18 20:25 21:4 22:13 23:10 23:10 23:13 23:18 24:3 24:10 |
| knew(5) | 70:21 71:5 71:19 74:4 109:8 |
| know(63) | 12:9 13:8 16:4 16:11 17:9 17:13 18:1 20:9 28:10 28:13 31:22 32:21 32:22 38:17 39:11 40:12 48:3 48:23 49:7 52:11 55:12 57:18 59:11 59:21 63:9 63:21 64:9 64:15 66:4 66:8 68:23 69:17 73:3 73:16 73:24 74:11 74:19 74:22 78:9 85:2 85:16 86:13 91:7 97:10 98:2 98:23 101:14 106:10 106:19 106:19 107:6 107:14 116:1 117:15 117:1 117:8 118:7 118:9 118:22 119:17 119:22 121:24 122:2 122:19 124:24 |
| knowing(2) | 62:6 62:6 |
| knowledge(1) | 101:5 |
| language(1) | 5:6 |
| large(1) | 36:19 |
| last(5) | 14:23 20:21 24:18 72:24 92:25 |
| late(8) | 97:15 97:17 97:20 97:21 98:2 98:10 113:16 118:8 |
| later(8) | 40:15 52:1 54:2 68:12 68:21 69:15 71:6 118:24 |
| laura(6) | 2:4 7:11 35:8 35:21 51:12 128:6 |
| law(8) | 26:21 38:18 54:19 54:20 110:10 123:19 125:15 126:1 |
| lawfully(1) | 17:14 |
| lawsuit(2) | 69:17 120:25 |
| lawsuits(1) | 114:5 |
| lawyers(2) | 45:20 110:7 |
| lead(2) | 9:3 42:9 |
| least(5) | 52:10 55:15 86:20 108:12 120:6 |
| leave(1) | 26:11 |
| leaves(1) | 26:2 |
| leaving(1) | 18:11 |
| led(1) | 39:5 |
| left(4) | 6:15 13:5 22:3 33:13 |
| legal(7) | 64:15 94:25 111:21 114:20 123:3 124:23 125:9 |
| lending(1) | 36:15 |
| lengthy(3) | 28:19 29:10 111:20 |
| leslie(1) | 1:41 |
| less(2) | 66:12 120:13 |
| let(20) | 5:16 20:8 20:25 38:2 40:4 50:19 57:18 61:15 67:12 67:12 80:16 104:19 105:16 108:1 108:3 118:12 118:15 123:3 123:4 126:11 |
| let's(12) | 5:19 26:6 27:11 27:12 27:14 27:23 30:21 30:24 86:8 86:21 88:21 105:.. |
| letter(31) | 43:10 47:6 47:9 47:13 47:20 50:4 50:9 50:21 50:24 51:7 51:12 52:13 53:3 53:18 53:24 54:8 54:13 54:16 54:24 55:7 56:16 56:17 56:19 57:9 58:21 58:25 60:22 61:3 90:24 90:25 98:12 |
| letters(5) | 52:9 55:5 91:3 107:6 107:6 |
| level(2) | 49:25 121:25 |
| lexington(1) | 2:14 |
| lia(1) | 3:5 |
| liable(1) | 7:22 |
| liaison(1) | 94:8 |
| lien(1) | 83:19 |
| lieu(10) | 75:19 75:20 77:23 83:18 83:19 99:1 99:4 100:7 100:9 102:7 |
| life(2) | 48:8 67:16 |
| like(28) | 5:13 6:14 9:15 12:25 14:19 23:20 25:13 30:19 33:17 35:7 39:11 45:3 64:22 71:25 72:1 78:14 89:3 91:2 91:8 98:9 102:3 106:12 119:15 120:12 122:18 123:2 123:21 124:16 |
| likely(3) | 18:20 22:1 84:14 |
| limitations(4) | 114:14 115:9 121:7 122:1 |
| limited(1) | 6:22 |
| line(9) | 36:19 39:16 40:18 72:19 72:21 95:22 115:19 120:11 125:24 |
| link(1) | 85:3 |
| liquidate(2) | 120:5 122:9 |
| liquidated(1) | 120:20 |
| liquidating(1) | 93:5 |
| list(8) | 44:21 45:4 45:6 52:21 89:3 108:23 128:14 128:18 |
| listed(3) | 13:4 32:18 45:6 |
| litigant(1) | 119:19 |
| litigate(3) | 108:22 116:20 120:14 |
| litigated(2) | 64:18 113:11 |
| litigation(3) | 24:22 112:14 113:3 |
| little(6) | 38:2 43:18 54:2 66:10 78:14 90:1.. |
| live(3) | 30:8 35:25 36:1 |
| lived(1) | 36:4 |
| living(1) | 78:2 |
| llp(4) | 1:25 1:34 2:18 2:32 |
| loan(118) | 19:5 29:12 36:11 36:12 36:14 36:18 36:24 37:2 37:3 37:6 37:9 38:3 38:22 39:1 39:3 39:8 39:17 39:20 39:25 40:7 40:10 40:13 40:19 41:10 42:1 42:18 42:23 43:13 43:23 44:2 44:5 44:20 45:24 46:2 46:6 47:11 47:16 48:1 48:3 48:17 48:23 49:19 49:24 49:25 50:4 50:15 51:4 51:7 51:15 53:11 53:12 53:13 55:23 55:24 56:11 57:3 57:14 57:18 58:10 58:11 59:1 61:13 61:20 62:9 64:6 64:19 64:20 69:5 69:6 70:7 70:11 70:22 71:5 71:19 72:25 73:13 75:2 75:8 76:8 77:8 84:2 84:12 84:16 84:18 94:4 94:5 94:7 94:17 95:6 95:15 95:19 96:16 96:18 96:21 97:1 97:18 97:25 99:14 102:8 102:15 103:2 106:3 106:4 106:7 109:7 109:9 109:10 109:12 109:15 109:16 110:5 110:8 111:5 111:25 114:6 123:8 124:15 |
| loan's(1) | 98:13 |
| loans(17) | 43:1 45:2 46:24 49:21 49:21 49:25 52:10 57:12 57:15 60:2 60:18 69:3 73:12 85:4 85:5 85:11 85:18 |
| located(2) | 74:13 111:6 |
| log(11) | 28:16 41:17 41:20 89:16 89:16 101:2 101:5 101:7 101:13 103:4 117:24 |
| loizides(92) | 2:4 2:5 7:9 7:10 7:11 8:14 8:18 8:19 8:23 9:4 27:4 27:22 28:8 28:11 28:17 28:22 28:24 29:6 29:19 29:24 30:3 30:18 31:1 31:4 31:9 31:12 31:18 31:25 32:3 35:5 35:7 35:23 35:25 37:14 37:22 40:24 41:2 41:6 41:11 41:14 41:18 41:22 42:5 42:15 43:1 44:15 44:18 44:21 45:24 50:17 52:12 58:12 59:2 59:6 59:9 59:12 59:15 59:18 59:20 59:23 63:19 64:23 72:5 83:10 83:12 88:14 88:19 88:23 89:2 89:11 89:18 90:10 91:5 91:12 92:15 100:25 103:11 103:14 103:18 103:23 104:1 104:23 105:5 105:9 105:12 105:13 105:17 105:23 108:5 117:16 118:6 118:7 119:6 119:10 119:15 123:21 126:12 126:17 |
| long(8) | 23:24 36:4 39:4 39:4 86:24 93:6 102:4 112:6 |
| longer(5) | 91:25 92:2 92:3 93:25 110:8 |
| look(23) | 6:12 16:17 23:6 26:10 28:13 31:6 31:7 41:7 41:11 42:1 43:5 47:7 49:8 50:23 53:1 56:7 60:25 62:6 62:6 82:23 106:11 107:11 126:11 |
| looked(1) | 119:12 |
| looking(3) | 51:8 72:19 72:20 |
| looks(1) | 126:11 |
| loss(25) | 10:21 11:25 16:4 48:3 55:24 75:10 75:11 75:12 75:15 75:23 76:5 76:15 83:15 84:10 99:5 100:14 101:20 101:23 102:1 102:9 102:11 102:17 102:21 103:1 117:22 |
| lost(6) | 8:21 88:13 116:19 117:13 117:19 125:19 |
| lot(13) | 23:7 31:23 37:18 65:20 101:11 105:18 116:6 117:16 118:21 123:13 124:8 124:16 124:24 |
| low(10) | 62:25 63:2 63:4 80:25 81:1 82:6 86:19 88:3 88:12 88:12 |
| lower(1) | 84:15 |
| lsams(4) | 96:5 96:11 96:12 96:15 |
| mac(1) | 2:38 |
| made(15) | 39:11 41:9 45:4 45:6 66:9 91:13 97:14 101:6 101:13 101:15 101:18 117:15 117:25 121:21 125:21 |
| madison(1) | 1:37 |
| mae(2) | 28:19 29:10 |
| maintained(1) | 97:6 |
| majority(1) | 97:14 |
| make(21) | 12:4 27:15 38:8 57:14 57:15 61:16 61:17 62:21 80:6 86:20 90:11 90:15 94:7 95:11 97:1 98:8 101:16 107:16 109:.. 119:2 125:6 |
| makes(3) | 46:25 67:16 88:11 |
| making(5) | 8:24 27:8 70:16 94:18 108:9 |
| management(1) | 24:21 |
| manager(1) | 84:10 |
| mandates(1) | 17:14 |
| manhattan(1) | 2:27 |
| manner(1) | 18:3 |
| many(13) | 46:14 65:10 65:25 65:25 66:18 85:5 86:25 98:2 98:5 102:23 104:24 107:.. 123:11 |
| march(16) | 1:13 4:1 21:4 21:6 21:7 21:9 21:15 25:3 25:6 36:9 52:7 61:22 73:17 74:23 106:7 127:8 |
| margaret(4) | 1:27 4:5 26:1 108:8 |
| mark(2) | 2:33 22:16 |
| marked(2) | 128:13 128:17 |
| market(10) | 1:10 2:21 2:28 2:40 38:22 65:15 85:25 88:7 100:21 100:22 |
| marketed(2) | 100:16 100:18 |
| martinez(1) | 2:46 |
| master(23) | 42:23 42:24 44:1 46:19 47:3 47:14 47:21 47:25 53:5 53:15 53:17 53:22 54:1 56:12 57:4 70:9 72:24 74:5 109:11 109:14 110:3 111:25 118:20 |
| match(1) | 52:21 |
| mater(1) | 47:17 |
| math(1) | 88:2 |
| matter(21) | 4:11 6:17 6:18 7:3 9:11 9:20 14:5 14:13 20:11 20:11 20:13 21:1 21:2 21:25 22:4 23:14 28:19 29:12 31:7 91:22 127:4 |
| matters(3) | 4:10 9:15 109:3 |
| max(1) | 62:22 |
| may(42) | 5:17 8:3 12:12 15:14 15:15 20:4 24:7 25:17 27:3 27:4 28:22 29:21 30:7 31:13 33:18 36:15 36:15 36:17 61:9 64:11 68:12 70:23 71:24 76:24 77:1 77:3 83:5 83:13 88:6 88:16 88:17 90:8 90:9 97:19 98:17 101:17 104:13 117:18 118:16 123:4 126:5 126:8 |
| maybe(14) | 22:15 29:24 40:6 43:25 45:21 61:20 63:20 63:20 66:2 107:20 107:20 117:18 120:18 120:20 |
| mcmahon(5) | 52:4 52:5 52:6 60:1 60:4 |
| mcmahon's(1) | 61:7 |
| mcneill(1) | 2:19 |
| mean(27) | 8:16 8:20 8:25 23:21 27:3 32:21 34:9 34:10 34:17 34:18 38:24 38:25 48:3 49:15 62:14 67:3 76:22 80:13 81:1 86:9 88:9 89:20 106:24 107:13 115:12 119:10 122:19 |
| meaning(2) | 25:16 73:3 |
| means(6) | 21:23 22:11 24:1 48:21 78:9 107:14 |
| meant(2) | 35:15 59:12 |
| meantime(1) | 21:21 31:6 |
| meet(3) | 107:4 117:12 124:20 |
| meltdown(1) | 38:19 |
| mention(4) | 7:16 14:20 51:3 51:6 |
| mentioned(6) | 33:8 41:8 45:15 98:21 99:9 123:9 |
| mere(1) | 48:5 |
| merely(1) | 114:22 |
| merican(1) | 1:7 |
| meritorious(1) | 27:14 |
| merits(8) | 19:21 27:12 114:14 115:23 117:11 124:13 125:10 125:25 |
| mess(1) | 45:2 |
| message(2) | 6:19 13:5 |
| messages(1) | 18:11 |
| messer(3) | 39:18 43:2 85:24 |
| met(1) | 104:1 |
| method(1) | 112:7 |
| michael(5) | 1:28 4:22 54:8 54:11 56:17 |
| microphone(2) | 35:19 68:7 |
| middle(1) | 24:17 |
| might(3) | 7:22 40:6 101:9 |
| miller(2) | 53:8 53:23 |
| millionth(1) | 120:11 |
| mind(2) | 59:20 123:13 |
| mine(2) | 10:24 52:11 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **minimal**(1) 81:23 | | **move**(12) 23:19 23:22 23:24 24:5 30:6 | | **not**(151) 4:13 7:19 7:21 8:14 10:14 10:25 | | **offered**(8) 32:16 52:6 54:21 77:7 77:9 | |
| **minute**(4) 5:24 30:22 33:25 66:17 | | 37:14 37:17 37:23 89:2 101:22 102:13 | | 11:6 11:17 12:4 12:5 12:8 12:24 13:1 13:7 | | 79:4 99:21 99:21 | |
| **minutes**(1) 105:8 | | 104:17 | | 13:8 13:22 14:5 14:6 14:8 15:23 16:4 | | | |
| **minuti**(7) 2:33 22:14 22:15 22:16 23:1 | | **moved**(1) 116:17 | | 16:19 17:2 17:3 17:20 18:5 18:20 18:21 | | **offers**(1) 53:6 | |
| 23:3 23:9 | | **moving**(1) 89:8 | | 18:21 19:13 19:20 22:8 23:14 24:24 25:16 | | **office**(12) 4:19 16:6 16:6 40:2 51:13 53:7 | |
| | | **mrs**(2) 8:6 35:4 | | 27:9 27:13 29:1 29:2 29:4 29:21 30:7 | | 53:9 55:18 60:7 60:10 60:14 106:7 | |
| **misconduct**(1) 34:1 | | **much**(3) 66:8 68:24 80:6 | | 32:14 32:23 33:6 33:19 34:19 36:20 37:24 | | | |
| **misheard**(1) 31:13 | | **multi-parties**(1) 24:22 | | 39:6 40:2 40:16 42:19 42:21 44:10 46:7 | | **officer**(3) 36:12 69:6 69:6 | |
| **misread**(1) 5:19 | | **multiple**(1) 117:6 | | 47:6 49:20 49:22 49:23 49:24 51:13 53:16 | | **often**(1) 23:7 | |
| **misrepresentation**(1) 111:17 | | **murin**(1) 1:41 | | 53:24 54:6 54:14 54:19 54:20 57:15 57:18 | | **okay**(21) 4:8 5:21 6:11 6:16 9:24 12:13 | |
| **misrepresentation**(1) 64:9 | | **myself**(3) 40:23 57:7 108:9 | | 58:11 65:20 65:24 67:1 67:24 71:21 71:22 | | 13:13 14:21 15:15 21:3 22:13 22:25 23:12 | |
| **missed**(2) 38:9 77:19 | | **name**(5) 6:25 14:13 20:18 39:18 92:25 | | 72:3 73:3 73:15 74:10 76:3 78:8 79:15 | | 25:9 29:17 31:1 31:4 32:3 33:15 35:3 | |
| **mission**(2) 28:2 40:13 | | **named**(3) 22:20 43:20 50:22 | | 79:17 82:22 82:24 84:6 84:19 84:19 85:2 | | 35:13 35:20 36:4 38:10 41:6 41:21 42:11 | |
| **mistake**(1) 108:10 | | **namely**(1) 10:8 | | 86:6 86:17 88:7 90:16 90:17 90:22 90:25 | | 43:5 43:16 43:17 44:13 44:16 44:19 45:12 | |
| **mistaken**(1) 18:16 | | **national**(3) 70:24 70:25 71:2 | | 91:17 92:16 95:2 95:3 96:1 101:2 101:3 | | 45:25 46:9 46:11 46:13 47:7 47:22 48:22 | |
| | | **nature**(6) 32:20 37:9 37:17 91:16 107:14 | | 101:4 101:17 102:9 105:1 105:17 106:6 | | 49:2 49:7 50:2 50:11 50:14 50:24 51:2 | |
| **mitigation**(21) 55:25 75:10 75:11 75:12 | | 122:14 | | 106:21 107:2 107:8 108:15 108:19 108:23 | | 51:22 52:13 53:1 54:2 54:4 54:15 54:17 | |
| 75:15 75:23 76:5 76:16 83:15 84:10 99:5 | | | | 110:5 110:16 113:2 113:7 113:8 113:11 | | 54:24 55:3 55:10 56:4 56:10 56:14 57:6 | |
| 100:15 101:20 101:23 102:1 102:10 102:11 | | **near**(1) 5:10 | | 113:23 114:23 115:1 116:14 116:23 117:25 | | 58:9 59:2 59:19 60:6 60:16 60:23 61:9 | |
| 102:17 102:21 103:1 117:22 | | **necessarily**(1) 124:7 | | 118:1 118:4 118:9 118:19 118:22 119:2 | | 61:24 62:11 63:3 64:21 64:25 66:23 68:12 | |
| | | **necessary**(5) 27:1 27:9 31:15 61:10 115:5 | | 119:12 119:21 120:16 120:22 121:6 121:15 | | 68:24 69:25 73:22 74:4 74:21 74:25 78:10 | |
| **mod**(7) 47:16 49:24 53:14 55:24 84:2 | | **need**(11) 5:24 8:3 9:8 34:15 34:21 49:8 | | 122:1 122:1 123:4 123:11 124:1 124:12 | | 78:14 82:2 82:10 83:9 85:15 85:22 86:8 | |
| 84:16 84:18 | | 81:3 100:15 101:19 102:11 102:11 | | 124:13 124:14 125:9 125:23 | | 86:10 86:21 86:23 87:2 87:17 87:21 88:1 | |
| | | | | | | 88:2 88:5 88:10 94:2 94:14 94:20 95:18 | |
| **modification**(9) 42:18 46:24 48:4 70:11 | | **needed**(2) 55:20 102:25 | | **notation**(1) 51:16 | | 97:10 97:18 98:7 99:6 99:9 99:20 100:6 | |
| 75:8 102:8 102:16 102:18 103:2 | | **negligent**(1) 116:16 | | **note**(7) 19:4 50:14 91:4 99:19 100:20 | | 100:17 100:24 102:20 103:6 103:20 104:9 | |
| | | **negotiate**(2) 31:16 31:17 | | 117:21 121:24 | | 105:9 108:5 109:23 123:2 | |
| **modifications**(4) 39:17 70:14 76:8 109:16 | | **negotiations**(1) 22:1 | | | | | |
| **modified**(1) 85:7 | | **neiburg**(16) 1:28 4:19 4:21 4:22 5:4 5:15 | | **nothing**(3) 84:6 120:3 121:9 | | **old**(1) 40:9 | |
| **modify**(8) 38:22 40:11 43:1 43:1 85:6 85:11 | | 5:17 5:21 5:25 6:2 6:6 6:11 6:13 35:9 | | **notice**(2) 5:1 9:12 | | **ombudsman**(2) 48:12 48:14 | |
| 85:18 99:5 102:6 | | 35:13 35:17 | | **november**(4) 50:23 50:25 50:25 51:1 | | **omitted**(1) 116:20 | |
| | | | | **now**(28) 5:19 15:9 18:17 18:23 38:10 | | **omnibus**(9) 4:11 5:2 6:4 6:9 6:18 20:21 | |
| **moment**(7) 13:14 26:24 83:5 86:10 90:9 | | **never**(13) 36:12 38:9 43:1 59:20 67:20 | | 40:21 43:18 50:2 61:11 62:11 63:5 66:17 | | 20:21 26:5 93:14 | |
| 101:9 113:16 | | 69:17 69:17 69:24 71:8 74:10 85:18 85:2 | | 66:17 84:16 85:25 94:20 107:11 108:1 | | | |
| | | 92:1 | | 110:24 115:25 116:4 117:1 119:1 119:17 | | **omsy**(1) 112:16 | |
| **mona**(4) 48:12 119:7 119:8 124:10 | | | | 120:13 120:24 123:9 124:12 | | **one**(47) 6:1 8:24 17:6 21:10 21:16 22:4 | |
| **money**(3) 66:8 81:16 86:20 | | **nevertheless**(2) 106:15 118:10 | | | | 22:19 24:5 28:14 28:23 37:1 37:7 38:9 | |
| **moneys**(4) 15:21 16:11 16:24 17:18 | | **new**(8) 1:38 2:15 2:49 3:7 93:13 94:9 | | **number**(17) 9:14 13:4 22:7 47:5 52:14 | | 40:4 41:19 43:3 44:4 45:20 46:16 53:6 | |
| **month**(9) 56:18 74:24 77:15 77:18 85:5 | | 108:15 114:19 | | 52:20 52:21 54:21 61:11 70:14 72:20 75:6 | | 54:22 54:25 55:6 57:17 58:1 72:1 72:6 | |
| 85:6 97:15 98:12 100:3 | | | | 79:7 81:20 112:11 122:16 123:3 | | 72:8 73:3 75:19 75:23 77:9 77:13 83:17 | |
| | | **next**(8) 6:6 6:17 72:23 73:17 77:13 77:13 | | | | 84:3 84:10 89:15 90:8 91:21 98:21 101:9 | |
| **months**(11) 39:8 68:12 70:24 77:15 84:1 | | 77:13 100:11 | | **numbers**(1) 52:22 | | 102:19 106:10 111:11 118:15 126:4 126:5 | |
| 85:6 99:24 100:1 100:16 100:18 123:10 | | | | **nuts**(1) 87:2 | | | |
| | | **nice**(1) 88:12 | | **o'connor**(2) 2:25 20:18 | | **one's**(1) 31:15 | |
| **moot**(2) 83:20 110:2 | | **night**(1) 40:18 | | **oakton**(1) 36:1 | | **ones**(3) 5:8 79:19 89:6 | |
| **more**(14) 23:7 26:11 46:5 53:6 61:10 | | **nobody's**(1) 91:10 | | **oath**(1) 58:3 | | **only**(20) 7:13 7:16 8:6 11:5 13:23 21:10 | |
| 80:24 82:4 94:7 115:1 122:2 122:2 122:2 | | **noir**(3) 11:23 12:24 13:6 | | **object**(7) 18:20 18:21 29:4 33:19 34:10 | | 28:15 28:20 31:18 37:3 39:22 42:24 46:5 | |
| 123:9 125:23 | | **noir's**(1) 12:13 | | 37:16 100:25 | | 66:19 76:23 89:6 116:17 116:18 116:25 | |
| | | **nominally**(1) 7:1 | | | | 121:8 | |
| **moreover**(2) 113:6 125:13 | | **non**(3) 8:8 37:11 120:19 | | **objected**(1) 12:22 | | **onto**(1) 77:12 | |
| **morgan**(1) 19:13 | | **non-debtor**(2) 6:24 7:19 | | **objecting**(4) 18:22 19:13 90:23 101:2 | | **open**(3) 22:4 23:16 23:23 | |
| **morning**(1) 6:20 | | **non-docketed**(1) 28:16 | | **objection**(35) 4:12 4:15 5:2 6:4 6:9 6:19 | | **operations**(2) 93:13 94:1 | |
| **mortgage**(60) 1:7 4:6 16:1 20:13 36:8 | | **non-identified**(1) 112:19 | | 9:17 9:21 10:12 10:14 10:17 11:4 11:4 | | **opinion**(1) 83:2 | |
| 38:19 39:12 42:4 42:4 42:25 45:24 67:1 | | **none**(2) 88:19 124:18 | | 12:1 12:3 12:6 12:19 13:16 13:16 13:18 | | **opportunities**(1) 118:2 | |
| 67:1 67:2 68:16 68:20 68:22 68:24 69:7 | | **nor**(1) 14:5 | | 13:21 19:19 19:22 23:4 23:11 26:5 37:8 | | **opportunity**(6) 23:23 26:4 64:14 108:21 | |
| 69:23 70:3 70:13 70:16 70:18 70:21 70:22 | | **normal**(1) 67:16 | | 37:17 89:13 91:1 92:14 92:15 104:22 | | 113:2 115:7 | |
| 71:3 71:6 74:6 74:25 75:2 75:5 76:1 76:6 | | **normally**(2) 29:20 107:16 | | 104:23 105:4 | | | |
| 76:7 76:19 76:21 77:2 77:17 77:22 77:24 | | **north**(2) 2:21 2:28 | | | | **oppose**(1) 22:8 | |
| 78:5 78:10 78:12 92:4 93:5 93:18 93:20 | | | | **objections**(9) 28:6 28:9 33:10 33:11 93:15 | | **opposed**(4) 18:23 23:5 84:15 112:10 | |
| 94:22 94:25 95:1 95:21 96:16 100:2 111:6 | | | | 105:2 105:19 108:1 116:25 | | **option**(11) 39:13 43:4 76:23 77:4 77:5 | |
| 113:20 114:6 114:18 121:11 121:12 | | | | | | 77:23 78:5 78:7 78:11 99:15 100:4 | |
| | | | | **obligation**(4) 106:25 107:4 107:4 119:1 | | | |
| **mortgage's**(1) 93:23 | | | | **obtain**(3) 61:12 109:15 110:19 | | **options**(8) 70:15 76:8 76:9 76:17 98:19 | |
| **mortgages**(1) 39:15 | | | | **obtained**(5) 16:12 16:22 17:10 68:19 | | 99:2 99:6 101:15 | |
| **most**(4) 22:1 27:10 48:7 84:14 | | | | **obtaining**(2) 36:7 70:10 | | | |
| **motion**(53) 9:12 19:12 22:5 22:8 23:13 | | | | **obviously**(15) 7:5 7:25 14:6 24:4 24:5 | | **oral**(2) 9:13 26:24 | |
| 25:17 25:18 34:6 34:10 34:16 34:15 34:22 | | | | 27:6 28:1 81:1 81:1 91:9 92:16 104:24 | | **order**(33) 4:13 5:7 5:9 5:11 5:13 6:4 6:8 | |
| 48:19 48:24 63:5 63:8 64:1 64:12 71:9 | | | | 104:24 105:1 106:20 | | 9:4 9:5 9:6 9:8 13:17 15:2 15:5 15:8 | |
| 71:16 78:15 78:16 108:14 108:15 108:21 | | | | | | 15:13 16:23 17:12 17:20 17:21 17:25 18:1 | |
| 109:6 109:6 109:17 110:13 110:18 111:2 | | | | **occasion**(2) 60:6 60:9 | | 20:2 20:10 22:10 31:14 31:17 31:17 31:22 | |
| 111:6 111:8 111:10 111:20 112:2 112:25 | | | | **occasions**(2) 13:3 18:5 | | 32:4 35:11 102:12 126:3 | |
| 112:25 113:15 115:3 115:14 115:14 115:17 | | | | **occur**(1) 39:5 | | | |
| 116:2 116:4 116:9 116:13 117:2 117:7 | | | | **occurred**(2) 64:6 64:19 | | **ordering**(1) 31:21 | |
| 118:14 118:15 125:6 125:25 | | | | **october**(13) 14:23 15:10 17:17 18:7 43:13 | | **orders**(1) 32:5 | |
| | | | | 43:15 44:18 71:7 71:15 72:15 75:1 97:24 | | **original**(3) 24:18 99:19 121:23 | |
| **motioned**(3) 48:11 48:23 57:13 | | | | 123:7 | | **originated**(4) 29:12 29:13 73:2 73:13 | |
| **motions**(7) 21:16 21:18 22:2 22:3 24:6 | | | | **off**(6) 24:2 40:16 57:12 99:18 100:20 | | **originates**(1) 111:9 | |
| 49:5 117:10 | | | | 108:24 | | **origination**(7) 64:6 64:20 94:4 94:6 95:15 | |
| | | | | | | 111:5 121:12 | |
| **movant**(4) 88:20 110:17 110:20 111:9 | | | | **offer**(2) 102:6 102:8 | | | |
| **movant's**(1) 111:10 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**other**(48) 8:7 8:15 9:15 13:25 14:1 15:17 15:23 16:4 16:13 17:6 17:22 24:21 27:13 30:16 31:6 33:2 33:7 34:5 40:6 42:11 43:9 46:1 49:5 49:25 57:20 61:16 61:17 61:18 70:15 72:10 73:3 76:9 77:14 83:20 84:3 84:9 88:17 90:8 91:15 91:22 99:2 104:7 104:16 107:2 120:5 121:22 122:16 122:22

**others**(1) 112:17

**otherwise**(3) 7:23 21:6 125:3

**our**(35) 7:17 12:19 13:16 13:16 13:21 23:11 28:21 29:9 29:22 30:7 30:8 32:25 33:3 33:7 43:13 43:14 45:2 46:24 48:17 52:10 52:17 57:14 57:14 60:2 60:17 73:1 85:4 92:3 94:5 94:5 103:9 104:18 112:12 116:7 123:15

**ours**(1) 28:14

**out**(70) 5:24 10:18 10:19 11:23 13:2 13:3 14:19 15:7 15:18 15:24 16:12 18:4 19:10 20:5 20:9 24:23 25:4 29:1 31:2 36:11 39:9 40:8 40:13 40:25 44:1 44:20 45:2 46:19 46:25 47:14 52:19 52:24 53:10 53:12 55:23 56:11 58:10 59:1 60:1 60:17 60:19 67:5 67:7 68:2 68:8 68:16 68:22 69:2 73:1 74:18 75:15 75:22 76:15 83:18 84:4 85:7 86:19 87:19 89:15 94:9 95:25 98:5 98:14 98:15 98:22 98:24 99:13 100:14 115:18 120:9

**outside**(1) 108:17

**over**(20) 4:19 5:19 28:25 34:10 37:15 42:14 56:5 56:7 65:12 66:10 67:7 69:1 77:15 83:13 84:13 85:13 100:1 106:14 113:4 120:9

**overdue**(1) 100:1

**own**(6) 40:7 58:10 118:22 118:23 125:3 125:24

**owned**(21) 40:13 40:15 40:19 41:10 42:12 42:23 45:2 45:24 46:6 47:25 52:10 53:11 53:12 55:23 56:11 57:3 58:14 59:1 60:17 60:24 110:8

**owner**(9) 46:20 70:7 71:5 71:19 106:4 109:8 110:4 111:24 118:20

**ownership**(1) 49:19

**owns**(7) 40:10 46:2 46:24 49:21 51:4 51:7 60:2

**p.m**(6) 1:14 32:8 32:8 105:10 105:10 126:19

**package**(18) 75:10 75:11 75:12 75:13 75:15 75:23 76:5 76:16 83:16 83:20 100:15 101:20 101:23 102:1 102:10 102:1 102:17 103:1

**packages**(4) 75:6 75:8 76:3 102:21

**page**(6) 49:16 72:11 72:13 72:14 89:15 115:19

**pages**(1) 112:11

**paid**(9) 44:6 62:14 81:11 100:20 107:12 107:14 122:12 122:17 125:8

**palmer**(2) 2:11 25:11

**paragraph**(2) 111:7 111:7

**paragraphs**(1) 110:24

**parcel**(1) 111:21

**part**(12) 18:13 23:11 42:13 53:6 56:10 57:2 91:14 92:11 92:12 107:25 111:13 111:21

**participate**(1) 11:11

**participation**(1) 111:10

**particular**(9) 11:8 11:9 13:2 37:2 39:25 76:19 97:1 101:17 113:10

**particularly**(1) 14:3

**parties**(7) 6:25 10:4 10:7 14:1 18:4 25:5 110:4

**party**(1) 117:25

**past**(3) 8:17 98:11 99:24

**patterson**(1) 3:3

**patton**(1) 72:25

**paul**(3) 39:18 43:2 85:24

**paula**(18) 43:14 44:23 44:25 44:25 45:1 46:16 47:16 48:11 52:6 52:11 52:17 52:24 53:25 57:13 59:25 60:11 73:10 85:3

**pay**(8) 39:13 43:4 76:22 77:4 77:17 99:25 102:5 120:9

**paying**(2) 18:24 125:6

**payment**(12) 38:12 77:11 84:1 95:16 95:19 96:18 97:13 97:20 98:9 98:15 99:4 100:2

**payments**(14) 38:8 39:12 70:16 77:18 77:19 77:23 78:12 97:11 97:16 98:5 98:8 98:17 101:16 101:17

**pays**(1) 99:18

**paystubs**(1) 102:3

**penalized**(2) 122:12 122:18

**penalty**(1) 37:4

**pending**(2) 22:9 33:11

**pennsylvania**(1) 1:45

**people**(7) 17:14 26:14 39:11 48:16 67:15 90:16 124:5

**per**(5) 20:20 62:22 80:17 80:23 87:23 87:17 120:11 120:13

**percent**(8) 16:1 62:20 71:22 80:20 81:12 87:17 120:11 120:13

**perhaps**(2) 8:3 24:6

**period**(1) 84:25

**permitted**(1) 114:23

**person**(7) 11:1 12:8 13:8 13:9 40:10 46:5 94:4

**personal**(2) 101:4 110:18

**personally**(1) 82:3

**persons**(1) 19:19

**petition**(2) 109:5 121:13

**pews**(1) 90:14

**phase**(1) 21:17

**phone**(11) 13:4 13:11 26:15 45:4 47:5 61:17 62:5 96:25 97:4 98:14 107:7

**piece**(1) 91:8

**piecing**(1) 62:7

**pile**(1) 23:7

**piles**(1) 23:6

**place**(3) 8:22 34:8 48:15

**plaintiff**(2) 20:19 112:6

**plan**(49) 1:24 4:6 4:23 6:3 6:8 7:1 7:2 7:4 9:21 10:12 10:12 14:7 17:1 19:2 24:16 24:17 25:11 25:7 25:13 26:17 29:20 30:14 32:12 33:18 33:19 34:8 34:11 77:7 77:10 77:16 89:16 90:1 90:6 90:2 92:24 96:7 98:15 99:4 99:4 99:22 102:7 108:6 108:7 108:9 110:15 113:14 122:25 128:8 128:17

**plans**(2) 99:21 101:13

**playing**(1) 46:22

**plaza**(1) 2:20

**pleading**(1) 34:22

**pleadings**(7) 21:17 21:19 23:16 37:21 74:12 104:24 108:12

**please**(16) 4:3 15:13 15:19 17:19 24:12 32:10 35:18 67:21 67:25 68:7 72:10 72:1 72:23 92:22 105:12 109:25

**podium**(2) 6:14 9:22

**point**(30) 8:6 16:16 16:21 18:19 21:19 21:20 23:24 25:3 26:7 29:4 30:19 38:15 43:18 44:13 46:13 48:9 50:18 63:5 63:12 63:21 68:17 73:7 98:16 98:21 106:23 112:5 113:17 118:13 118:21 119:13

**pointed**(1) 29:1

**policies**(3) 94:9 110:4 118:5

**policy**(3) 49:17 84:24 118:19

**pool**(2) 52:14 52:15

**pools**(1) 73:2

**poor**(3) 53:21 74:14 74:15

**portfolio**(3) 98:22 99:9 99:12

**portion**(5) 26:19 29:14 41:18 41:19 49:10

**portions**(1) 29:15

**portly**(2) 40:14 41:8

**position**(8) 44:7 84:4 93:8 93:11 93:19 93:22 94:3 118:18

**positions**(1) 94:14

**possibility**(1) 76:20

**possible**(2) 9:16 10:8

**possibly**(1) 55:24

**post**(8) 44:11 44:12 44:13 44:15 93:25 94:3 109:4 121:4

**post-petition**(15) 37:11 106:12 110:22 111:23 111:25 112:24 116:3 119:25 120:5 121:10 121:14 121:16 121:21 123:22 124:14

**potential**(3) 76:9 111:19 118:2

**potentially**(3) 9:13 24:1 53:13

**potter**(1) 2:18

**power**(1) 17:13

**ppearances**(2) 1:22 2:1

**practices**(5) 94:22 95:4 111:5 111:18 114: **pre**(5) 37:24 41:6 44:10 121:3 121:12

**pre-petition**(4) 7:13 34:24 119:20 125:8

**precise**(1) 112:24

**precision**(1) 122:20

**preclude**(1) 26:22

**predatory**(2) 111:5 111:5

**predecessor**(1) 71:3

**prefer**(2) 21:15 100:19

**preferable**(1) 89:25

**prejudice**(7) 6:22 8:11 112:18 113:22 114:4 115:8 117:4

**prejudiced**(2) 112:9 116:23

**premised**(1) 110:11

**prepare**(1) 95:13

**prepared**(3) 21:13 32:17 126:10

**preparing**(1) 94:19

**prepayment**(2) 37:4 77:14

**prepetition**(1) 34:25

**present**(1) 12:14

**president**(5) 43:24 46:12 58:24 93:21

**press**(1) 90:15

**pressure**(1) 23:22

**presume**(1) 106:24

**pretty**(3) 31:20 120:7 126:11

**previous**(2) 78:4 108:12

**previously**(2) 45:15 57:9

**price**(3) 87:9 87:10 87:14

**prima**(2) 105:20 107:24

**primarily**(2) 70:6

**principle**(1) 125:6

**prior**(10) 26:19 66:25 69:22 70:3 75:6 79:5 93:16 94:11 94:13 113:10

**priority**(3) 33:4 34:1

**pro**(2) 113:18 119:19

**probably**(8) 21:16 23:21 24:3 31:21 57:25 65:24 69:19 123:13

**problem**(10) 5:25 6:13 34:7 35:17 39:1 39:7 57:23 89:18 115:16 118:17

**problems**(1) 55:19

**procedures**(4) 94:9 111:14 114:2 114:21

**proceed**(3) 59:4 59:6 105:18

**proceeding**(10) 14:4 14:23 15:10 15:11 23:14 33:24 34:18 34:23 112:8 113:12

**proceedings**(4) 1:17 1:49 84:20 127:4

**process**(2) 24:2 93:12

**processes**(1) 94:9

**processing**(1) 84:21

**produced**(2) 1:50 109:12

**profession**(1) 36:2

**profits**(1) 117:13

**program**(1) 39:24

**programs**(1) 37:1

**prohibits**(1) 17:8

**promised**(6) 16:1 36:14 36:21 36:23 36:24 37:1

**prompted**(4) 50:9 56:17 57:10 58:25

**proof**(15) 27:20 63:22 79:2 79:6 79:8 79:22 95:10 108:14 110:21 110:22 112:20 115:2 116:2 116:12 119:21

**proper**(2) 83:3 96:2

**properly**(1) 43:11

**property**(7) 62:22 100:8 100:15 100:17 100:19 100:20 100:22

**proposed**(3) 5:7 6:8 9:4

**proposition**(2) 110:16 116:16

**prosecute**(2) 48:19 64:22

**prosecuting**(1) 78:23

**protect**(1) 114:4

**protection**(1) 111:11

**protections**(1) 57:16

**protocols**(1) 118:1

**prove**(1) 107:17

**provide**(14) 37:25 43:13 52:9 61:7 77:2 78:11 98:19 101:11 101:14 102:2 110:12 113:13 123:24 124:8

**provided**(14) 21:23 29:14 48:20 75:2 77:22 99:2 102:9 102:17 102:21 102:23 108:21 109:18 111:8 117:23

**provides**(2) 34:8 101:18

**providing**(1) 49:17

**provision**(5) 10:7 12:25 13:22 13:22 14:7

**provisions**(1) 10:16

**public**(1) 104:25

**punish**(1) 17:13

**purchase**(2) 7:20 68:9

**purchaser**(2) 95:3 112:16

**purpose**(1) 70:10

**purposes**(3) 34:24 114:15 115:24

**pursuant**(1) 10:3

**pursue**(9) 78:16 79:11 79:13 79:16 79:19 79:23 110:25 117:22 121:22

**pursued**(2) 79:19 79:22

**pursuing**(3) 123:18 124:22 125:4

**push**(1) 9:16

**put**(13) 7:15 14:7 16:18 17:18 27:1 27:21 43:11 51:6 52:23 58:3 64:3 69:16 121:8

**putting**(4) 16:24 17:3 57:16 86:17

**qualified**(5) 42:3 43:7 51:14 82:11 82:18

**qualify**(2) 12:12 83:3

**quantify**(1) 107:13

**question**(17) 4:19 47:18 60:8 61:24 63:18 67:20 68:1 68:8 72:23 73:16 75:22 78:4 80:16 90:8 95:19 96:1 123:15

**question's**(1) 67:24

**questions**(13) 4:14 37:9 58:6 61:10 64:24 73:20 73:20 83:7 88:15 108:1 122:22 123:12 124:5

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**quickly**(2) 14:20 37:23

**quite**(4) 29:3 43:21 48:20 105:18

**quote**(2) 109:20 109:21 112:3

**quoting**(2) 111:8 113:12

**rachel**(1) 90:11

**raise**(3) 84:14 113:6 116:14

**raised**(6) 109:5 109:11 110:22 113:11 114:8 123:3

**raising**(1) 110:24

**random**(1) 85:7

**rate**(8) 16:2 16:11 36:25 37:6 38:5 38:11 38:23 84:14

**rates**(1) 40:1

**rather**(3) 50:21 53:15 122:13

**re-notice**(2) 5:4 5:8

**reach**(9) 10:19 13:3 18:4 20:8 91:25 98:9 98:14 98:24 99:13

**reached**(6) 10:18 11:23 13:2 15:6 24:23 98:22

**reaches**(1) 98:11

**reaching**(1) 25:4

**read**(5) 15:20 37:21 69:19 72:21 101:12

**real**(19) 36:3 40:9 62:11 65:7 65:10 65:14 65:17 66:9 80:7 81:5 85:25 86:13 86:19 86:20 88:6 88:8 111:14 114:1 114:21

**reality**(1) 112:3

**realize**(1) 88:6

**realized**(1) 39:14

**really**(18) 28:20 37:15 37:18 37:25 45:13 49:7 74:11 78:8 78:8 88:12 106:6 120:10 123:6 123:24 124:2 124:20 124:23 125:14

**reason**(12) 8:24 28:20 31:19 39:1 51:6 53:6 53:11 69:17 73:10 84:9 120:14 121:8

**reasons**(5) 12:23 13:15 112:21 116:8

**rebuttal**(2) 61:10 105:4

**recall**(5) 71:11 75:9 78:15 82:12 91:13

**receive**(5) 13:7 18:5 21:13 50:24 82:25

**received**(10) 5:5 15:21 45:25 50:25 81:8 82:23 98:2 106:5 108:20 109:10

**receives**(1) 15:22

**receiving**(1) 10:17

**recent**(1) 18:5

**recently**(3) 17:7 18:10 18:15

**recess**(8) 26:7 30:24 30:25 31:8 32:7 32:8 105:7 105:10

**recipient**(1) 55:14

**reco**(1) 111:15

**recognized**(1) 106:15

**record**(33) 7:11 7:15 27:8 27:14 28:18 35:24 41:15 42:2 43:6 47:8 48:5 49:9 50:3 50:6 50:20 51:11 52:20 53:2 54:7 55:4 56:15 59:24 61:2 61:25 65:2 67:16 72:21 95:2 105:1 105:16 105:24 120:4 124:17

**recorded**(2) 1:49 96:3

**recording**(2) 1:49 127:3

**records**(3) 27:7 52:18 96:20

**recross**(1) 128:3

**redirect**(5) 83:9 83:11 104:11 128:3 128:3

**redress**(1) 114:17

**reed**(1) 2:38

**reference**(2) 73:9 74:1

**referenced**(1) 73:4

**referencing**(1) 72:16

**referring**(1) 75:10

**refi**(1) 39:6

**refi's**(1) 84:25

**refinance**(9) 39:9 43:3 76:22 98:22 98:24 99:11 99:13 99:17 99:18

**refinanced**(4) 66:25 68:2 68:13 70:22

**refinances**(1) 122:3

**refinancing**(7) 36:7 36:11 39:13 69:22 76:21 77:3 99:15

**refinancings**(1) 70:14

**reflect**(3) 41:23 49:16 61:15

**reflected**(1) 61:16

**reflects**(1) 5:11

**regarding**(13) 14:14 24:8 39:2 70:14 73:1 84:3 95:5 95:19 109:7 109:11 109:13 111:23 113:20

**regular**(1) 39:12

**regularly**(1) 97:7

**regulation**(2) 16:7 111:13

**reimburs**(1) 123:17

**reimbursed**(1) 88:12

**reinstatement**(1) 50:21

**rejected**(1) 118:2

**related**(3) 10:6 12:20 124:14

**relates**(1) 37:10

**relating**(2) 12:10 95:2

**relation**(1) 62:8

**relationship**(2) 10:15 47:1

**relevance**(1) 29:3

**relevant**(4) 29:14 30:8 37:12 91:18

**relief**(23) 11:3 12:23 34:9 63:5 63:16 64:1 64:12 78:15 78:16 79:3 79:6 79:10 79:23 108:15 110:25 111:2 111:3 111:7 112:2 112:13 112:25 116:2 116:13

**relies**(1) 114:19

**remain**(3) 35:18 92:23 106:17

**remaindering**(1) 61:9

**remaining**(1) 8:6

**remember**(6) 66:2 66:4 68:23 74:20 74:24 125:1

**reminding**(1) 51:13

**removed**(3) 5:7 113:19 113:24

**reorganization**(1) 34:8

**repayment**(10) 77:7 77:10 77:16 78:4 78:7 78:11 99:4 99:21 99:22 102:7

**repeat**(1) 51:5

**rephrase**(2) 63:20 80:16

**reply**(2) 14:16 17:24

**report**(3) 32:14 96:19 97:17

**reporting**(3) 85:5 114:1 114:20

**represent**(4) 20:18 49:10 78:19 78:22

**representation**(2) 12:17

**representations**(4) 11:20 19:20 108:13

**representative**(1) 21:8

**representatives**(2) 46:1 106:6

**represented**(4) 71:18 108:25 109:8 116:10

**request**(13) 20:20 42:3 42:10 43:8 45:23 50:7 51:14 61:7 82:12 82:19 82:23 100:1 102:2

**requested**(4) 83:17 102:12 109:6 110:13

**requesting**(2) 17:17 21:9

**requests**(1) 25:8

**require**(1) 100:17

**required**(4) 76:7 82:24 110:12 123:23

**requirements**(1) 109:15

**res**(9) 26:21 113:8 114:9 114:14 115:23 116:7 119:15 125:15 126:1

**research**(2) 62:5 118:21

**researching**(1) 36:18

**reservation**(2) 7:14 25:15

**reservations**(5) 6:23 6:23 7:6

**reserve**(3) 7:2 7:5 111:13

**reserved**(1) 8:9

**reserves**(2) 6:24 6:25

**reserving**(4) 7:17 7:21 7:24 7:25

**resolution**(1) 24:6

**resolve**(10) 15:4 15:5 15:8 15:12 16:24 17:16 18:2 22:5 32:15 42:17

**resolved**(2) 4:10 15:7

**resource**(1) 30:22

**resources**(1) 117:6

**respa**(4) 82:11 82:19 83:3 112:1

**respect**(26) 4:14 4:24 6:8 6:24 7:3 7:5 13:18 17:25 25:17 26:16 27:20 28:14 73:19 89:15 90:1 90:23 93:11 94:3 96:20 101:12 101:19 109:4 116:7 117:19 118:3

**respectfully**(1) 25:7

**respond**(6) 21:11 43:11 50:13 56:22 100:11 100:12

**responded**(1) 14:15

**response**(29) 9:18 11:18 12:15 14:19 19:22 21:5 24:18 24:25 25:2 25:5 25:16 25:22 43:7 43:9 47:13 47:20 50:11 54:13 54:24 56:25 61:6 61:7 82:23 82:24 82:25 83:1 83:3 100:12 106:9

**responses**(1) 10:18

**responsibilities**(3) 93:10 94:2 94:15

**responsible**(2) 88:8 125:3

**result**(5) 21:25 22:3 24:6 113:3 118:3

**results**(1) 24:4

**resurrect**(1) 113:7

**retain**(1) 39:11

**retained**(2) 78:19 112:14

**retention**(3) 39:10 43:2 85:24

**retroactive**(1) 84:19

**return**(4) 13:7 18:6 102:21 116:19

**review**(6) 26:4 93:13 99:3 101:2 101:5 103:4

**reviewed**(2) 95:15 97:14

**revised**(2) 5:11 6:8

**rewarded**(1) 118:4

**right**(76) 4:17 5:19 7:7 8:2 9:19 11:7 11:19 12:1 12:16 14:9 15:5 17:22 19:16 19:18 20:9 23:2 23:20 25:19 26:6 27:23 28:3 28:5 28:6 29:5 29:23 30:9 30:16 31:24 32:2 33:12 35:4 36:6 37:20 37:23 38:1 38:6 43:18 48:9 50:16 50:18 51:8 58:5 62:12 65:21 67:2 78:20 79:7 79:14 81:19 83:7 87:7 87:14 87:24 89:5 89:8 89:11 90:4 91:4 91:20 92:8 92:19 92:22 101:21 103:10 104:11 104:13 105:3 105:7 105:15 106:17 112:6 120:4 122:9 124:23 126:4 126:14

**rights**(13) 6:23 6:23 6:24 6:25 7:3 7:5 7:14 7:17 8:1 8:8 14:2 25:16 111:11

**ring**(1) 39:2

**rise**(4) 4:2 32:9 105:11 123:16

**rivera**(2) 53:21 74:15

**roles**(3) 46:22 93:10 94:2

**rolled**(1) 94:9

**ross**(2) 55:18 55:22

**ross's**(1) 55:6

**rosy**(1) 39:3

**rowland**(1) 53:23

**rule**(13) 14:3 21:18 22:2 23:19 71:9 91:24 92:5 108:14 108:20 109:5 109:17 110:9 110:17

**ruled**(2) 108:19 114:13

**rules**(1) 92:6

**ruling**(4) 14:6 31:16 31:18 110:10

**rulings**(2) 24:4 27:15

**run**(1) 21:2

**running**(1) 90:18

**runs**(1) 106:13

**rush**(1) 45:1

**said**(38) 12:25 14:14 16:23 25:7 39:20 39:21 44:1 45:23 47:6 49:20 50:12 53:4 53:9 53:20 53:24 54:25 55:18 56:5 58:9 59:7 59:10 61:25 62:11 68:1 69:11 78:5 80:13 83:22 84:17 85:20 87:21 96:12 100:14 117:16 117:17 119:11 123:7 125:10

**sale**(9) 57:19 84:3 84:7 87:9 87:10 87:14 94:19 102:7 107:17

**sales**(3) 38:18 86:13 94:17

**sam**(1) 50:22

**same**(13) 12:23 13:5 30:5 78:2 79:21 79:21 94:16 112:21 114:6 114:16 114:18 116:3 116:8

**sanction**(1) 17:14

**sandra**(1) 53:8

**sarcastic**(1) 23:21

**satisfactorily**(1) 32:15

**satisfactory**(3) 18:3 32:24 33:6

**saturation**(1) 2:32

**saul**(2) 2:32 22:16

**save**(2) 42:17 101:3

**saw**(1) 97:16

**say**(30) 16:10 21:24 29:15 31:14 35:15 38:24 44:25 46:4 46:7 61:4 62:25 62:25 65:17 66:14 69:1 73:23 74:22 77:16 82:16 88:6 100:15 103:20 105:19 106:1 119:25 120:2 120:3 121:14 125:23 126:12

**saying**(6) 16:11 39:18 39:19 53:22 91:10 98:13

**says**(4) 47:9 51:16 52:20 110:1

**schnitzer**(22) 1:35 9:22 9:25 10:1 10:24 11:14 11:21 12:18 13:15 14:10 17:23 17:23 18:9 18:12 19:11 19:15 19:17 19:25 20:2 32:11 32:12 33:13

**school**(1) 40:9

**schuylkill**(1) 1:44

**scope**(1) 115:11

**scott**(9) 2:46 43:20 46:7 47:2 53:4 53:20 72:17 72:23 84:10

**scott's**(1) 43:24

**sean**(3) 1:26 57:24 65:2

**seated**(3) 4:3 32:10 105:12

**second**(21) 11:12 11:22 16:16 20:21 22:6 31:12 38:13 39:15 40:5 68:20 68:22 68:24 75:20 83:19 84:6 91:14 103:11 105:6 114:8 114:19 116:24

**section**(2) 111:12 111:15

**secured**(2) 33:5 125:8

**securities**(3) 11:9 12:11 12:11

**securitization**(3) 46:21 47:11 47:12

**securitizations**(2) 40:12 46:18

**securitized**(2) 22:6 40:22

**see**(16) 4:13 5:13 5:16 15:13 20:16 21:19 22:2 24:24 33:21 37:12 61:15 115:15 121:18 122:11 122:17 124:2

**seeing**(1) 55:12

**seek**(7) 13:17 55:13 71:9 86:13 92:5 98:16 100:9

**seeking**(15) 11:4 11:6 11:7 14:5 18:17 34:9 42:11 48:24 51:14 75:8 79:10 89:4 91:23 110:12 116:20

**seeks**(2) 111:9 114:16

**seems**(3) 91:2 101:7 118:12

**seland**(9) 10:20 10:25 11:13 11:14 11:16 11:24 12:10 12:24 13:6

**select**(2) 10:7 116:15

**sell**(5) 62:19 62:20 66:1 80:21 86:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **selling**(6) 57:12 58:10 58:11 62:23 80:6 81:11 | | **shortage**(1) 100:1 | | **sought**(2) 110:25 111:3 | | **submit**(7) 9:3 19:2 32:4 32:5 38:18 76:3 126:3 | |
| | | **shorter**(2) 9:15 54:6 | | **sound**(2) 1:49 127:3 | | | |
| **senator**(1) 53:7 | | **shortly**(2) 22:24 68:19 | | **sounds**(1) 39:23 | | **submitted**(4) 4:12 5:7 82:11 82:18 | |
| **send**(5) 56:5 60:22 83:15 83:24 100:14 | | **should**(24) 11:10 14:1 16:17 17:4 34:3 59:6 63:20 63:21 72:12 72:15 88:20 105:20 107:8 109:3 110:13 112:22 113:4 116:5 116:9 117:7 118:3 121:24 122:12 122:17 | | **soup**(1) 87:2 | | **subordinate**(1) 10:7 | |
| **senior**(1) 53:21 | | | | **sovereign**(2) 19:15 19:16 | | **subordinated**(2) 13:24 14:1 | |
| **sense**(6) 8:25 88:11 106:17 106:17 120:15 122:5 | | | | **speak**(4) 6:19 56:20 60:9 68:7 | | **subordination**(13) 9:21 10:5 10:5 10:6 10:11 10:13 10:16 11:8 12:2 12:23 13:1 13:22 19:23 | |
| | | | | **speaking**(1) 21:8 | | | |
| **sent**(14) 6:5 14:15 20:19 42:3 50:25 51:12 53:22 54:8 56:17 75:5 75:16 76:1 83:21 98:12 | | **shouldn't**(2) 34:4 125:23 | | **speaks**(1) 101:8 | | **subsequent**(2) 76:25 113:24 | |
| | | **show**(4) 61:12 72:1 101:14 117:24 | | **specific**(9) 4:14 5:6 5:9 10:5 19:12 22:19 24:25 33:16 124:11 | | **subsequently**(2) 110:21 112:14 | |
| | | **shown**(2) 37:4 38:21 | | | | **substantially**(2) 24:19 112:9 | |
| **separated**(2) 16:17 17:4 | | **shut**(1) 67:22 | | **specifically**(18) 7:16 13:19 13:24 26:20 33:1 46:4 108:13 109:2 109:4 109:18 110:23 111:2 111:22 112:23 115:7 115:10 117:11 123:23 | | **substantive**(2) 6:19 125:11 | |
| **separately**(1) 19:6 | | **sides**(1) 32:15 | | | | **success**(1) 10:20 | |
| **september**(5) 71:13 82:14 82:19 84:17 97:23 | | **sign**(1) 22:10 | | | | **successor**(1) 7:23 | |
| | | **signed**(6) 6:10 15:6 20:23 22:12 25:23 126:14 | | | | **such**(4) 12:22 14:4 110:3 125:8 | |
| **seq**(2) 111:12 111:15 | | | | **speed**(1) 101:10 | | **sued**(1) 69:15 | |
| **seriously**(1) 88:9 | | **significant**(2) 30:1 105:24 | | **spend**(5) 37:18 62:3 62:22 80:22 86:4 | | **sufficient**(2) 31:16 110:9 | |
| **served**(1) 69:18 | | **signing**(2) 20:9 123:25 | | **spent**(8) 61:22 62:3 105:25 107:7 107:16 110:18 123:9 125:14 | | **suggest**(4) 26:24 29:19 29:24 120:4 | |
| **service**(1) 1:43 1:50 41:20 95:20 | | **similar**(1) 11:24 | | | | **suggested**(1) 20:21 | |
| **serviced**(2) 39:1 40:15 | | **similarly**(1) 12:10 | | **split**(2) 114:22 116:1 | | **suggests**(1) 29:2 | |
| **servicer**(28) 7:18 42:23 42:24 44:2 47:3 47:14 47:21 47:25 53:5 53:15 53:17 53:23 56:12 57:4 70:9 70:22 72:24 74:5 106:4 109:12 110:3 110:6 110:6 111:25 117:23 117:25 118:20 124:16 | | **simply**(3) 14:6 101:1 110:2 | | **splitting**(1) 26:21 | | **suite**(2) 2:7 2:41 | |
| | | **since**(7) 10:17 14:6 28:1 36:5 65:11 90:16 93:7 | | **spoke**(8) 10:24 11:23 34:2 40:3 70:13 76:19 91:7 124:10 | | **supplement**(3) 28:21 29:15 113:15 | |
| | | | | | | **support**(2) 110:16 124:18 | |
| | | **single**(1) 29:21 | | **spoken**(3) 28:17 76:17 103:24 | | **suppose**(2) 105:20 118:10 | |
| | | **sir**(6) 13:14 14:11 15:13 15:15 24:13 24:1 122:12 122:20 | | **stand**(6) 30:20 35:8 41:3 72:4 92:21 92:22 | | **supposed**(3) 15:23 17:2 17:3 | |
| **servicer's**(2) 118:1 118:4 | | | | **standard**(3) 53:21 74:14 74:15 | | **supreme**(1) 118:9 | |
| **servicers**(4) 46:19 54:1 109:14 109:14 | | **situation**(6) 19:7 44:8 100:7 113:18 122:12 122:20 | | **standing**(2) 35:18 92:23 | | **sure**(20) 5:17 7:19 12:4 26:9 29:3 31:11 31:20 44:15 53:10 57:14 57:15 64:3 73:16 77:11 90:11 94:18 101:4 101:24 105:18 110:1 | |
| **services**(5) 1:43 47:4 53:15 53:23 71:3 | | | | **stands**(1) 23:14 | | | |
| **servicing**(66) 28:16 28:19 29:10 29:13 42:4 43:24 46:12 48:18 52:18 52:19 55:15 56:3 58:24 70:13 70:18 74:25 75:3 75:5 76:1 76:16 76:16 76:19 77:2 77:22 77:24 78:5 78:11 89:15 89:16 91:25 92:4 94:21 94:25 94:25 95:3 95:6 95:16 95:19 95:21 96:3 96:4 96:11 96:16 96:20 97:13 98:1 98:7 98:19 99:3 99:12 99:14 100:11 100:17 101:2 101:5 101:7 101:13 102:8 102:14 102:15 102:17 102:25 111:5 112:1 117:24 | | **situations**(2) 101:15 102:9 | | **stargatt**(2) 1:24 4:22 | | | |
| | | **six**(5) 39:8 99:24 100:16 100:18 123:9 | | **start**(3) 34:17 62:6 84:1 | | **surprised**(1) 37:16 | |
| | | **sixty**(1) 87:1 | | **started**(6) 39:8 44:21 44:23 54:11 65:18 83:22 | | **sustain**(1) 19:23 | |
| | | **skip**(5) 5:19 37:15 38:2 54:4 59:2 | | | | **sustaining**(1) 13:17 | |
| | | **skipping**(3) 51:9 54:5 59:12 | | | | **sworn**(2) 35:21 92:24 | |
| | | **sliding**(1) 86:1 | | **starting**(4) 24:2 65:16 72:21 75:6 | | **syntax**(1) 109:25 | |
| | | **slow**(1) 88:7 | | **state**(4) 16:6 50:5 53:8 118:13 | | **system**(3) 94:5 94:6 96:15 | |
| | | **smallest**(1) 81:25 | | **stated**(14) 12:3 13:18 14:4 18:17 47:2 54:19 74:15 76:10 76:11 76:14 108:11 108:17 114:15 115:10 | | | |
| | | **smith**(1) 2:38 | | | | **tab**(1) 41:11 | |
| | | **software**(1) 96:15 | | | | **tabbed**(1) 41:7 | |
| | | **sold**(6) 65:20 66:18 66:19 81:9 98:1 98:1 | | **statement**(5) 12:19 12:20 12:23 13:4 25:2 | | **table**(2) 36:17 44:22 | |
| **servicing's**(2) 95:5 97:7 | | **solely**(1) 110:11 | | **statements**(6) 9:22 10:5 10:6 10:11 10:13 102:3 | | **taggart**(7) 113:13 113:17 113:18 114:16 115:1 115:21 115:21 | |
| **set**(3) 25:15 39:24 93:14 | | **some**(54) 5:16 18:25 21:21 21:22 21:23 23:24 24:6 26:7 27:5 27:19 28:25 34:17 37:25 39:24 43:18 46:13 47:1 48:9 49:4 49:13 50:18 54:6 61:12 63:5 63:21 64:13 69:17 74:12 76:25 77:18 78:11 79:16 83:13 98:16 101:3 101:12 101:14 101:16 106:23 106:25 107:10 112:5 119:17 119:2 119:24 121:3 123:16 124:6 124:6 124:11 125:2 125:7 125:7 | | | | | |
| **setting**(1) 25:4 | | | | **states**(3) 1:1 1:19 18:1 | | **take**(27) 19:13 26:6 26:7 27:8 29:17 30:22 34:14 40:17 41:7 42:1 45:3 49:8 50:2 53:1 56:19 63:4 68:16 77:5 77:11 81:12 84:18 86:24 92:22 105:7 113:25 120:9 122:23 | |
| **settle**(3) 19:10 19:24 23:23 | | | | **stating**(2) 53:16 60:24 | | | |
| **settlement**(5) 21:22 36:17 111:14 114:2 114:21 | | | | **status**(5) 20:14 20:20 20:22 21:1 23:25 | | | |
| | | | | **statute**(4) 114:13 115:8 121:7 121:25 | | **taken**(2) 68:22 117:4 | |
| **seventy**(1) 6:8 | | | | **statutory**(1) 12:22 | | **takes**(1) 99:23 | |
| **seventy-second**(1) 6:3 | | **somebody**(5) 43:20 85:9 106:13 120:10 124:15 | | **stay**(20) 63:6 64:1 64:12 78:15 78:16 79:3 79:5 79:10 79:23 108:14 110:25 111:2 111:7 111:20 112:2 112:13 112:25 115:3 116:2 116:13 | | **taking**(4) 16:22 26:24 100:20 118:8 | |
| **several**(5) 26:18 75:23 103:7 108:10 109:2 | | | | | | **talk**(7) 39:12 40:11 67:16 78:14 86:8 90:10 95:24 | |
| **shake**(2) 48:2 55:24 | | **someone**(4) 40:6 47:15 70:1 122:17 | | | | | |
| **shall**(2) 29:17 59:4 | | **someone's**(1) 112:4 | | **step**(4) 63:21 88:16 88:17 104:13 | | **talked**(1) 45:4 | |
| **sharing**(1) 45:3 | | **something**(14) 11:10 13:1 29:1 31:21 33:2 39:5 48:15 59:22 73:23 84:24 85:10 120:7 120:12 124:16 | | **stephen**(1) 2:19 | | **talking**(9) 18:23 44:14 76:24 107:2 119:4 119:7 119:18 119:24 125:14 | |
| **she**(94) 6:24 6:25 7:2 11:25 12:2 12:2 12:3 12:3 12:6 12:8 12:9 12:12 27:21 30:13 47:6 47:9 52:8 55:11 55:17 55:20 55:20 56:5 97:14 97:21 97:23 98:2 98:2 98:21 98:25 99:1 100:10 102:17 102:25 106:5 106:8 107:14 107:16 107:16 107:18 107:18 108:16 108:19 108:20 108:21 108:23 108:23 108:24 108:25 109:5 109:8 109:8 109:9 109:10 109:11 109:19 110:25 111:20 111:20 116:19 117:13 117:22 117:24 117:25 118:22 118:23 119:20 119:21 119:22 119:22 120:22 120:23 121:10 121:16 121:20 121:21 121:22 123:7 123:8 123:8 123:9 123:10 123:11 123:11 124:21 124:22 124:23 125:19 125:19 125:20 125:21 125:22 125:22 125:23 125:24 | | | | **still**(12) 21:21 22:9 27:1 43:25 47:15 51:14 53:4 55:23 78:2 84:5 100:2 112:20 | | **task**(1) 97:4 | |
| | | | | | | **tax**(1) 93:13 | |
| | | **something's**(1) 23:23 | | **stipulated**(2) 92:11 104:21 | | **taylor**(2) 1:25 4:22 | |
| | | **sometimes**(1) 103:21 | | **stipulating**(2) 91:10 92:16 | | **technically**(1) 7:19 | |
| | | **son**(2) 67:5 68:9 | | **stipulation**(6) 20:24 21:12 24:7 25:8 25:14 25:23 | | **technology**(1) 94:1 | |
| | | **sontchi**(1) 1:18 | | | | **telephonic**(1) 3:1 | |
| | | **soon**(1) 70:22 | | **stop**(3) 19:9 84:20 113:8 | | **telephonically**(5) 11:1 11:3 12:7 12:9 13:8 | |
| | | **sorry**(51) 4:20 21:6 28:8 30:13 31:4 31:10 32:14 34:16 35:10 35:13 35:14 41:1 41:2 42:9 42:14 46:10 47:19 48:22 51:5 54:5 55:7 55:9 55:14 59:4 59:5 59:10 59:18 59:22 60:5 60:8 67:12 67:19 68:4 73:24 75:1 78:8 80:11 80:12 88:2 89:22 90:7 90:22 92:25 94:13 96:8 96:11 97:11 97:2 103:14 103:18 108:16 | | **stored**(1) 96:17 | | **tell**(11) 15:9 35:25 36:10 43:22 44:4 46:5 49:20 66:18 76:13 84:7 85:9 | |
| | | | | **strapper**(1) 96:6 | | | |
| **she's**(9) 55:5 72:5 91:9 101:4 110:2 110:5 110:23 112:7 122:12 | | | | **strauss**(3) 54:9 54:11 56:17 | | **ten**(1) 66:2 | |
| | | | | **strauss's**(1) 40:2 | | **term**(1) 94:25 | |
| | | | | **street**(7) 1:10 1:30 1:44 2:7 2:21 2:28 | | **terms**(9) 7:1 32:21 32:22 36:16 76:8 89:25 91:22 102:5 120:24 | |
| **sheila**(1) 53:7 | | | | **stretch**(1) 120:1 | | | |
| **short**(7) 21:2 28:21 38:18 84:3 84:7 102:7 105:7 | | **sort**(13) 46:16 64:7 105:19 105:20 106:12 106:15 107:21 117:14 121:6 122:18 122:1 122:20 123:16 | | **strike**(2) 25:18 75:1 | | | |
| | | | | **stuart**(2) 2:13 25:10 | | **testified**(20) 65:6 69:5 70:5 71:10 80:1 82:10 82:22 83:23 85:25 86:4 91:24 99:20 108:23 109:10 109:13 117:22 118:18 119:22 120:23 121:11 | |
| | | | | **stuck**(1) 39:14 | | | |
| | | | | **stuff**(6) 38:18 56:5 82:7 88:7 119:24 | | | |
| | | | | **stupidly**(1) 38:17 | | **testify**(2) 58:5 91:22 | |
| | | **sorts**(1) 106:22 | | **subject**(4) 6:22 7:13 16:23 47:7 | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**testifying**(1) 101:4

**testimonial**(1) 105:24

**testimony**(16) 30:8 30:19 37:16 49:8 73:4 73:6 73:25 83:2 92:5 92:10 101:1 101:11 101:19 103:9 117:16 117:24

**than**(16) 23:7 26:11 30:16 33:3 33:7 36:16 40:6 43:9 46:5 61:16 66:12 71:6 80:24 108:20 120:13 122:13

**thank**(45) 6:6 6:11 8:13 9:2 11:21 12:18 14:9 14:10 15:15 17:22 20:7 23:3 23:9 24:13 25:8 25:9 25:20 25:23 25:25 26:13 32:3 32:6 35:3 35:4 35:17 41:5 41:21 64:25 67:18 88:16 88:17 103:10 103:14 104:13 104:15 105:9 108:5 118:6 122:24 123:2 126:10 126:14 126:16 126:17 126:1

**thanks**(1) 104:10

**that**(301) 4:14 5:1 5:7 5:8 5:12 5:13 5:19 6:1 6:10 6:21 6:24 6:25 7:2 7:14 7:15 7:17 7:21 7:22 8:11 8:15 8:22 8:23 8:25 9:2 9:14 9:15 9:16 9:20 10:14 10:15 11:3 11:6 11:7 11:9 11:10 11:13 11:14 12:3 12:12 12:12 12:24 13:1 13:6 13:17 13:23 14:19 15:1 15:3 15:5 15:11 15:11 15:20 15:21 16:9 16:10 16:12 16:13 16:16 16:20 16:21 16:22 16:23 16:23 16:25 17:4 17:17 17:8 17:10 17:11 17:13 17:17 17:19 18:1 18:3 18:9 18:11 18:13 18:21 18:25 19:16 19:17 19:23 20:1 20:22 21:5 21:9 21:15 21:19 21:20 21:25 22:5 22:8 22:9 22:20 22:11 22:16 22:18 22:19 22:21 22:21 22:24 23:1 23:13 23:16 23:19 24:3 24:11 24:20 25:2 25:7 26:2 26:2 26:4 26:10 26:14 26:20 26:22 26:25 27:13 27:16 27:18 27:19 27:21 28:12 28:13 28:14 28:15 28:17 28:17 28:20 28:21 28:22 29:2 29:15 29:15 29:18 29:25 30:6 30:15 31:7 31:14 31:25 32:1 32:14 32:16 32:21 32:21 32:23 32:25 33:2 33:6 33:8 33:13 33:17 33:19 34:3 34:3 34:7 34:8 34:9 34:9 34:11 34:25 35:1 35:10 35:10 35:15 36:19 36:20 36:24 37:1 37:6 37:7 37:10 38:3 38:15 38:18 38:20 38:21 39:3 39:5 39:5 39:11 39:14 39:16 39:17 39:20 39:23 39:24 40:1 40:2 40:5 40:6 40:9 40:10 40:12 40:14 40:19 40:20 40:22 41:9 41:14 41:18 41:23 41:24 42:2 42:3 42:6 42:13 42:15 42:18 42:24 42:25 43:2 43:3 43:6 43:7 43:9 43:19 44:1 44:1 44:4 44:5 44:7 45:5 45:5 45:24 46:7 46:7 46:9 46:16 46:18 46:19 46:22 46:25 47:1 47:3 47:6 47:7 47:8 47:9 47:10 47:13 47:16 47:20 48:21 48:23 49:4 49:7 49:9 49:9 49:12 49:12 49:13 49:20 49:20 49:24 50:3 50:4 50:9 50:21 50:24 51:3 51:7 51:11 51:12 51:12 51:13 51:16 51:18 51:18 51:20 51:22 51:23 52:14 52:20 52:21 52:24 52:25 52:3 53:3 53:4 53:10 53:11 53:18 53:18 53:19 54:1 54:2 54:4 54:8 54:10 54:11 54:18 54:19 54:20 54:22 54:24 55:1

**that**(301) 55:1 56:5 56:16 56:17 56:18 56:20 56:25 57:13 57:14 57:14 57:15 57:17 57:18 57:18 57:22 57:23 57:23 58:2 58:9 59:12 60:16 60:22 61:2 61:3 61:11 61:12 61:20 61:21 62:14 62:14 62:19 62:22 63:8 63:8 63:11 63:11 63:12 63:13 63:24 63:25 64:1 64:5 64:5 64:10 64:11 64:22 65:7 65:14 65:17 66:4 66:5 66:12 66:14 66:17 66:18 68:1 68:16 68:15 68:22 68:24 69:5 69:16 69:19 69:22 69:23 70:5 70:8 70:10 70:15 70:18 70:21 71:2 71:5 71:7 71:8 71:10 71:11 71:13 71:15 71:16 71:18 71:19 71:19 72:9 72:10 72:15 72:24 73:4 73:4 73:5 73:6 73:7 73:13 73:14 73:17 73:25 74:1 74:4 74:6 74:10 74:13 74:13 74:14 74:15 74:17 74:23 75:1 75:9 75:13 75:16 75:23 76:7 76:10 76:11 76:13 76:14 76:21 76:24 77:1 77:5 77:9 77:10 77:17 77:19 77:24 78:5 78:6 78:9 78:15 78:22 79:2 79:5 79:20 79:22 80:1 80:5 80:5 80:5 80:8 80:8 80:18 80:23 80:24 80:24 80:24 80:25 81:1 81:4 81:10 81:25 81:25 82:5 82:5 82:10 82:12 82:14 82:16 82:18 82:22 82:23 82:23 83:17 83:20 83:20 83:25 84:2 84:3 84:4 84:8 84:11 84:12 84:13 84:15 85:1 85:10 85:11 85:19 85:20 85:25 86:4 86:12 87:8 87:17 87:24 87:24 88:11 88:11 89:6 89:18 89:24 89:24 91:4 91:5 91:7 91:12 91:14 92:3 92:5 92:7 92:11 92:12 92:17 93:11 93:22 93:25 94:9 94:11 94:18 95:2 95:2 95:2 95:10 95:10 95:23 96:6 96:14 96:15 96:20 96:23 97:3 97:6 97:10 97:14 97:16 98:13 98:20 98:23 98:25 99:9 99:18 99:18 99:21 99:20 99:21 99:23 100:1 100:1 100:2 100:4 100:12 100:14 100:17 101:1 101:3 101:6 101:6 101:7 101:7 101:7 101:14 101:22 102:3 102:3 102:12 102:15 102:16 102:18 102:25 103:8 104:2 104:25 105:15 106:5 106:6 106:8 106:14 106:15 106:18 106:19 106:21 106:25 107:1 107:3 107:3 107:4 107:8 107:13 107:16 107:17 107:18 107:22 107:23 108:10 108:15 108:19 108:23 108:24 108:25 109:3 109:5 109:8 109:9 109:10 109:18 109:19 110:5 110:6

**that**(99) 110:7 110:12 110:16 110:19 110:22 110:23 111:20 111:21 112:19 112:21 112:22 113:1 113:3 113:9 113:17 114:4 114:13 114:15 114:24 115:3 115:15 115:25 116:3 116:8 116:10 116:16 116:22 117:9 117:11 117:13 117:15 117:16 117:17 117:18 117:18 117:20 117:21 117:22 117:23 117:24 118:2 118:17 118:17 118:18 118:21 118:25 118:25 119:1 119:2 119:11 119:13 119:17 119:23 119:25 119:25 119:25 120:3 120:4 120:6 120:10 120:12 120:15 121:2 121:3 121:8 121:8 121:16 121:22 121:25 122:6 122:7 122:8 122:15 122:17 122:20 123:6 123:8 123:9 123:10 123:13 123:16 123:18 123:24 124:2 124:11 124:17 124:17 124:22 125:1 125:9 125:10 125:10 125:11 125:13 125:24 126:4 126:8 126:12 127:2

**that's**(70) 4:17 9:1 10:21 14:5 15:23 16:16 17:7 18:10 21:10 23:14 25:3 26:11 30:2 30:4 32:17 32:25 35:2 35:2 36:21 37:4 37:13 39:23 40:8 40:22 41:19 41:19 45:13 46:5 46:11 49:10 52:23 58:5 59:17 65:22 68:13 73:14 73:14 76:23 77:20 77:20 80:21 81:11 83:4 87:2 89:11 89:15 98:12 98:23 103:20 104:10 104:19 105:22 106:15 106:18 107:24 110:8 111:6 112:10 115:18 118:5 119:20 121:6 121:6 121:12 122:13 124:1 124:18 124:24 124:25 125:22

**the**(301) 1:1 1:2 1:18 1:29 2:48 3:6 4:2 4:3 4:6 4:6 4:8 4:9 4:11 4:16 4:20 4:23 5:1 5:2 5:3 5:4 5:7 5:8 5:8 5:10 5:11 5:14 5:14 5:16 5:18 5:19 5:22 6:1 6:2 6:3 6:5 6:6 6:8 6:10 6:12 6:14 6:16 6:17 6:18 6:22 6:25 7:1 7:1 7:2 7:4 7:4 7:7 7:8 7:9 7:11 7:12 7:12 7:15 7:16 7:18 7:20 7:24 8:2 8:5 8:6 8:7 8:8 8:12 8:15 8:17 8:17 8:21 9:1 9:6 9:8 9:10 9:11 9:12 9:16 9:17 9:19 9:21 9:21 9:22 9:24 10:1 10:3 10:12 10:12 10:13 10:14 10:14 10:18 10:23 11:2 11:3 11:4 11:7 11:8 11:12 11:13 11:16 11:19 11:22 11:25 11:25 12:6 12:11 12:11 12:12 12:13 12:16 12:19 12:23 13:4 13:5 13:10 13:11 13:13 13:15 13:17 14:2 14:7 14:9 14:11 14:13 14:14 14:17 14:21 14:25 15:2 15:3 15:5 15:13 15:13 15:15 15:15 15:19 15:22 16:2 16:5 16:6 16:6 16:7 16:15 16:19 16:22 16:22 17:1 17:2 17:2 17:8 17:11 17:13 17:13 17:15 17:15 17:20 17:22 17:25 18:1 18:1 18:7 18:10 18:13 18:13 18:15 18:18 18:18 18:21 18:24 19:2 19:6 19:8 19:9 19:10 19:12 19:12 19:13 19:13 19:16 19:18 19:18 19:19 19:21 19:22 19:22 20:1 20:3 20:4 20:6 20:8 20:11 20:16 20:20 20:20 20:21 20:23 20:23 20:24 21:1 21:1 21:1 21:11 21:15 21:17 21:18 21:19 21:20 21:21 21:22 21:25 22:1 22:2 22:2 22:3 22:9 22:10 22:11 22:14 22:17 22:17 22:18 22:19 22:20 22:21 22:25 23:2 23:4 23:7 23:7 23:12 23:14 23:15 23:15 23:15 23:14 24:5 24:7 24:7 24:8 24:9 24:11 24:15 24:17 24:17 24:18 24:22 24:23 25:1 25:2 25:3 25:3 25:5 25:5 25:7 25:8 25:8 25:9 25:13 25:14 25:15 25:18 25:19 25:21 25:23 25:23 26:2 26:4 26:4 26:6 26:10 26:14 26:14 26:16 26:17 26:19 26:21 27:12 27:3 27:5 27:6 27:7 27:9 27:11 27:12 27:12

**the**(301) 27:13 27:14 27:18 27:19 27:23 27:23 28:1 28:5 28:9 28:15 28:16 28:18 28:20 28:25 29:3 29:4 29:5 29:7 29:10 29:14 29:15 29:15 29:17 29:18 29:23 29:25 30:2 30:4 30:5 30:6 30:7 30:9 30:11 30:11 30:12 30:14 30:16 30:19 30:20 30:21 30:24 31:2 31:5 31:6 31:6 31:7 31:13 31:15 31:18 31:21 31:24 32:2 32:4 32:7 32:9 32:10 32:12 32:17 32:18 32:20 32:22 33:8 33:11 33:12 33:15 33:17 33:18 33:18 34:1 34:2 34:2 34:7 34:7 34:8 34:10 34:11 34:12 34:13 34:19 34:25 35:4 35:8 35:12 35:14 35:15 35:18 35:19 35:24 35:25 36:7 36:10 36:13 36:14 36:16 36:18 36:20 36:22 36:24 36:25 37:1 37:3 37:5 37:5 37:6 37:7 37:7 37:9 37:11 37:12 37:13 37:17 37:20 37:21 38:1 38:3 38:3 38:5 38:8 38:10 38:12 38:13 38:13 38:22 39:1 39:1 39:2 39:2 39:7 39:15 39:16 39:17 39:19 39:19 39:19 39:22 39:24 40:1 40:5 40:9 40:10 40:11 40:18 40:24 40:25 41:1 41:3 41:3 41:4 41:9 41:11 41:15 41:17 41:19 41:19 41:21 41:23 42:1 42:2 42:9 42:17 42:23 42:23 42:25 43:2 43:3 43:4 43:5 43:6 43:7 43:7 43:13 43:14 43:14 43:22 43:24 43:24 44:1 44:2 44:4 44:5 44:19 44:22 44:22 44:22 44:23 44:24 45:3 45:4 45:4 45:5 45:6 45:6 45:9 45:20 45:21 46:5 46:6 46:11 46:12 46:16 46:22 46:22 46:23 46:25 47:1 47:2 47:3 47:5 47:6 47:8 47:9 47:16 47:17 47:25 47:25 48:5 48:7 48:10 48:11 48:14 48:14 48:16 48:19 49:10 49:15 49:16 49:20 49:20 49:21 49:21 49:21 49:23 49:24 49:25 49:25 50:1 50:1 50:3 50:3 50:5 50:7 50:10 50:16 50:20 51:6 51:11 51:14 51:15 51:16 51:18 52:3 52:5 52:8 52:14 52:19 52:19 52:20 52:21 52:22 52:22 53:2 53:3 53:6 53:7 53:18 53:22 54:7 54:11 54:14 54:19 54:20 54:22 54:22 55:1 55:4 55:14 55:19 56:2 56:2 56:11 56:14 56:17 56:19 56:20 56:23 57:4 57:13 57:16 57:16 57:17 57:22 57:23 57:23 58:1 58:3 58:5 58:8

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **the**(301) 58:21 58:22 58:24 58:24 59:5 59:7 59:10 59:14 59:15 59:17 59:19 59:22 59:24 60:7 60:8 60:10 60:14 61:2 61:3 61:9 61:16 61:19 61:19 61:21 61:24 61:24 62:5 62:5 62:5 62:17 62:19 62:24 63:6 63:8 63:13 63:17 63:18 63:22 64:1 64:4 64:5 64:6 64:8 64:8 64:8 64:12 64:15 64:17 64:19 64:20 64:25 65:1 65:2 65:14 65:17 66:17 66:18 67:9 67:12 67:15 67:19 67:25 68:7 68:8 68:8 69:6 69:7 69:9 69:14 69:14 69:16 69:16 69:18 69:19 69:19 69:22 70:3 70:6 70:6 70:7 70:9 70:10 70:21 71:5 71:6 71:18 71:19 71:24 72:2 72:3 72:3 72:6 72:8 72:8 72:12 72:15 72:21 72:24 73:1 73:1 73:3 73:10 73:11 73:12 73:12 73:13 73:16 73:17 73:20 73:25 74:5 74:5 74:12 74:12 75:6 75:7 75:7 75:19 75:22 75:23 76:5 76:6 76:17 76:20 76:22 76:23 77:11 77:12 77:13 77:13 77:14 77:16 77:17 78:4 78:6 78:15 78:16 78:19 78:25 79:2 79:3 79:5 79:5 79:6 79:10 79:11 79:13 79:19 79:21 79:21 79:22 80:1 80:13 80:16 80:21 81:1 81:18 81:20 81:21 81:22 81:22 81:24 81:25 82:2 82:5 82:7 82:16 82:24 83:9 83:9 83:14 83:15 83:20 83:21 84:3 84:3 84:7 84:9 84:9 84:10 84:10 84:12 84:13 84:14 84:21 85:1 85:2 85:3 85:3 85:6 85:13 85:14 85:17 85:20 85:24 85:25 86: 86:6 86:6 86:6 86:6 86:10 86:12 86:18 86:19 86:20 87:2 87:9 87:10 88:2 88:6 88:16 88:20 88:20 89:3 89:6 89:8 89:8 89:13 89:15 89:16 89:16 89:22 89:22 90: 90:2 90:4 90:6 90:6 90:11 90:12 90:12 90:14 90:15 90:20 91:1 91:4 91:7 91:8 91:10 91:11 91:12 91:13 91:14 91:15 91:16 91:16 91:18 91:19 91:22 91:23 91:23 91:24 92:1 92:2 92:2 92:5 92:7 92:10 92:14 92:16 92:19 92:20 92:21 92:22 92:22 92:25 92:25 93:2 93:6 93:8 93:12 93:13 93:14 93:14 93:16 93:22 93:22 93:24 94:4 94:6 94:7 94:7 94:8 94:11 94:15 94:16 94:16 94:17 94:18 94:19 94:20 94:21 94:25 95:2 95:3 95:3 95:4 95:5 95:5 | | **the**(301) 95:8 95:15 95:15 95:16 95:16 95:16 95:19 95:20 95:21 95:24 95:24 95:24 96:1 96:2 96:4 96:4 96:6 96:7 96:16 96:19 96:23 96:25 96:25 96:25 97:1 97:4 97:13 97:13 97:13 97:14 97:14 97:15 97:22 97:25 97:25 97:25 98:1 98:9 98:9 98:10 98:10 98:10 98:11 98:12 98:13 98:13 98:14 98:22 98:23 99:3 99:4 99:12 99:14 99:23 99:25 100:1 100:8 100:8 100:15 100:17 100:19 100:20 100:20 100:22 101: 101:2 101:2 101:5 101:7 101:7 101:12 101:12 101:19 101:21 101:22 101:23 102: 102:4 102:5 102:6 102:11 102:12 102:13 102:18 102:21 103:3 103:4 103:10 103:13 103:17 103:19 103:24 104:9 104:11 104: 104:16 104:17 104:18 104:22 104:25 104:25 105:1 105:3 105:7 105:11 105:12 105:15 105:15 105:19 105:20 105:22 105:24 105:25 106:3 106:3 106:4 106:4 106:4 106:6 106:7 106:11 106:11 106:12 106:16 106:16 106:15 106:16 106:16 106:16 106:17 106:17 106:20 106:21 106:23 106:24 107:1 107:3 107:5 107:8 107:8 107:9 107:11 107:13 107:14 107:16 107:24 108:1 108:1 108:2 108:3 108:3 108:6 108:6 108:9 108:21 108:23 109:4 109:7 109:8 109:9 109:11 109:11 109:12 109:13 109:14 109:15 109:19 109:20 109:21 109:23 109:25 110:2 110:3 110:4 110:4 110:6 110:6 110:7 110:7 110:9 110:10 110:10 110:10 110:16 110:18 110:19 110:19 111:3 111:4 111:7 111:8 111:10 111:11 111:12 111:13 111:18 111:20 111:23 111:23 111:24 111:24 111:25 112:3 112:3 112:5 112:6 112:7 112:8 112:9 112:15 112:15 112:16 112:16 112:19 112:19 112:21 112:21 112:22 112:24 112:25 113: 113:2 113:8 113:9 113:12 113:14 113:14 113:16 113:21 113:21 113:23 113:25 114:1 114:1 114:4 114:3 114:4 114:6 114:8 114:8 114:10 114:11 114:11 114:12 114:12 114:14 114:15 114:16 114:16 114:18 114:20 114:21 114:21 114:25 114:25 115:2 115:3 115:4 115:5 115:6 115:6 115:6 115:8 115:10 115:11 115:11 115:12 115:12 115:15 115:16 115:16 115:17 115:17 115:18 115:19 115:21 115:22 115:22 115:23 115:24 116:2 116:3 | | **their**(18) 7:5 7:25 37:17 39:10 47:4 47:5 53:21 53:23 60:1 92:13 95:6 98:1 99:17 99:19 100:2 101:16 125:3 125:4 | | **thing**(8) 7:16 8:6 46:16 48:15 57:22 58:1 90:14 91:9 |
| | | | | **them**(59) 5:6 5:7 5:9 10:19 10:20 15:9 16:13 16:18 16:21 16:24 16:25 17:15 17:19 28:14 30:7 38:20 38:21 38:24 38:25 39:13 39:16 40:11 42:20 45:7 45:9 45:11 47:21 49:22 52:7 53:5 53:9 55:2 56:1 58:21 69:16 69:18 79:15 79:17 79:17 83:17 84:8 84:8 84:22 93:14 96:2 96:2 97:14 98:24 99:11 99:13 99:24 99:25 101:18 108:17 113:7 115:5 120:21 124:7 125:21 | | **things**(12) 13:6 23:18 40:17 42:11 46:18 54:6 56:20 57:17 62:7 102:3 121:3 121:16 |
| | | | | | | **think**(70) 4:24 18:20 19:14 20:23 22:6 23:24 24:1 27:4 27:10 27:11 28:11 28:24 29:25 31:15 31:16 31:25 33:10 34:23 40:9 41:8 41:19 43:16 43:25 44:14 45:15 54:8 56:6 56:7 57:9 66:6 66:10 75:10 81:2 82:4 83:14 84:23 85:23 85:25 86:3 86:3 87:24 88:25 89:14 90:3 90:8 91:5 91:14 91:15 91:17 92:10 101:21 101:22 104:10 105:17 105:18 105:23 107:22 107:24 110: 110:8 112:8 115:13 117:16 118:5 118:19 119:2 120:12 122:6 123:18 |
| | | **themselves**(1) 125:7 | | | | | |
| | | **then**(47) 7:5 16:2 16:24 17:17 21:17 21:18 24:11 26:7 27:12 27:15 28:1 29:5 38:19 39:14 40:15 40:18 40:21 42:1 53:1 55:20 59:10 66:19 69:15 69:24 71:1 73:9 75:7 77:18 77:24 83:18 90:7 90:24 93:13 94:19 97:15 97:23 98:11 98:13 98:25 100:20 100:21 101:10 103:10 108:4 109:2 110:25 123:9 | | | | **thinking**(2) 61:20 71:21 |
| | | | | | | **third**(14) 6:9 6:25 12:19 16:21 77:12 110:4 113:11 114:13 114:13 114:15 115:2 117:1 121:19 122:6 |
| | | **theories**(2) 26:22 114:20 | | | | | |
| | | **there**(73) 4:20 8:15 11:16 12:13 13:10 14:18 15:17 16:8 18:15 22:4 22:5 23:11 23:18 26:20 28:6 28:9 31:23 33:10 33:11 33:18 43:25 48:15 48:16 49:4 49:13 49:13 50:14 51:6 51:16 52:14 54:24 57:9 57:11 61:16 65:20 72:10 79:7 81:19 90:14 94:1 94:18 97:15 98:6 99:2 99:3 99:20 101:15 105:23 106:25 107:10 107:13 109:2 117:3 117:12 117:16 117:18 118:12 119:23 120:5 120:25 121:2 121:5 121:8 121:8 121:15 121:15 122:16 123:2 124:11 124:16 124:15 124:21 125:2 | | | | **this**(156) 4:12 6:12 6:20 8:6 8:10 8:25 10:15 11:7 12:2 12:6 12:25 12:25 13:1 13:21 14:7 14:7 14:13 15:6 15:7 15:8 15:8 15:8 16:10 16:23 17:12 17:21 18:19 18:22 19:4 19:6 19:10 20:9 20:13 20:19 21:24 23:24 23:25 25:6 28:5 29:3 29:4 29:20 30:9 32:23 32:25 33:10 34:14 37:7 37:12 37:15 37:15 37:16 37:18 37:18 37:23 38:19 39:4 40:1 40:5 41:17 42:3 42:13 42:14 44:13 44:23 47:24 48:7 48:9 48:24 49:8 50:18 52:13 52:19 53:16 53:18 54:13 54:14 54:16 54:21 55:7 55:7 55:11 55:15 56:10 56:16 57:2 57:11 57:22 58:25 62:8 67:20 72:16 73:6 78:4 79:2 81:23 83:13 83:22 84:16 84:16 84:17 84:23 85:7 86:4 86:17 88:7 91:8 91:9 96:19 96:24 97:6 101:1 101:10 101:11 102:12 106:11 106:20 106:21 106:22 107:1 107:8 107:25 108:12 108:13 108:17 109:3 109:4 109:17 110:7 110:10 112:4 112:5 113:15 113:18 115:5 116:10 116:14 116:19 117:3 118:8 118:18 118:22 118:22 119:13 119:17 119:18 119:21 120:14 121:17 121:19 121:25 122:12 122:18 122:4 124:1 123:13 |
| | | **there's**(24) 8:22 17:6 17:6 23:4 23:22 29:25 32:1 34:7 44:21 49:23 51:3 51:16 55:5 71:25 73:23 90:14 90:24 98:11 98:12 117:19 120:8 121:9 125:9 125:11 | | | | | |
| | | **thereafter**(2) 112:18 113:23 | | | | | |
| | | **therefore**(2) 107:12 115:17 | | | | | |
| | | **therein**(1) 81:17 | | | | | |
| | | **these**(32) 10:5 12:25 16:11 16:13 16:17 16:19 16:20 16:20 16:24 16:25 17:4 17:18 22:18 27:5 28:3 28:7 34:3 37:8 46:18 46:21 54:6 57:10 61:15 96:3 104:24 106:22 108:11 108:15 110:23 114:7 124:5 125:18 | | | | **those**(32) 6:23 7:6 7:14 10:14 19:5 22:1 22:3 24:6 26:24 26:25 27:15 28:13 55:5 57:7 59:25 76:3 79:10 79:11 79:13 79:21 82:15 94:19 99:6 101:16 107:18 110:25 111:19 113:8 116:11 116:12 123:4 123:18 |
| | | **they**(145) 5:6 6:21 15:3 15:6 15:7 16:2 16:3 16:10 16:13 16:20 16:23 17:15 17:16 17:18 19:8 23:6 24:19 28:10 29:1 30:8 34:4 36:14 37:16 38:21 38:21 39:1 39:7 39:10 39:12 39:17 39:17 40:19 42:24 43: 43:12 43:12 43:13 44:6 44:8 45:13 45:21 46:4 47:3 47:6 47:14 47:21 48:20 49:20 49:22 50:12 51:13 53:9 53:10 53:13 53:17 53:16 53:20 53:20 53:22 53:24 54:1 55:1 55:12 56:7 56:7 56:8 56:8 57:12 57:15 58:9 58:10 58:11 60:19 60:20 60:21 69:19 73:11 74:15 75:19 76:10 76:11 76:13 76:14 76:22 77:9 77:21 78:1 78:6 83:20 83:22 83:23 83:24 84:1 84:5 84:16 84:17 84:19 84:21 85:4 85:5 85:7 85:11 85:17 92:11 95:20 95:25 96:1 96:1 96:17 97:15 98:10 98:13 98:15 98:23 98:24 99:18 100:11 100:12 100:14 100:14 100:19 101:16 101:18 102:3 102:5 102:11 102:11 102:19 103:1 104:20 104:24 104:25 107:1 107:4 107:4 120:10 120:13 120:16 122:2 123:25 124:4 124:5 124:6 125:5 125:6 | | | | **though**(8) 24:1 30:7 66:5 76:15 84:7 90:24 114:19 123:11 |
| | | | | | | **thought**(8) 38:20 39:24 40:1 51:19 59:20 73:13 81:25 88:11 |
| | | | | | | **thousands**(1) 85:8 |
| | | | | | | **threatens**(1) 56:19 |
| | | | | | | **three**(25) 7:6 10:10 10:13 10:18 10:19 13:18 14:18 15:17 38:2 38:3 38:9 43:11 48:7 48:13 53:22 77:12 77:15 83:25 99:24 102:24 107:20 108:12 111:14 116:23 118:13 |
| | | | | | | **threshold**(3) 26:18 30:10 109:2 |
| | | | | | | **threw**(1) 86:19 |
| | | | | | | **through**(26) 7:23 26:24 27:19 36:17 37:23 39:3 39:6 43:14 61:11 61:22 72:22 74:14 82:8 84:8 89:3 89:9 89:10 90:5 90:5 104:19 104:20 107:17 112:20 115:20 116:6 124:4 |
| | | | | | | **thrust**(1) 114:16 |
| | | | | | | **thus**(1) 27:7 |
| | | **they'd**(1) 16:23 | | | | | |
| | | **they'll**(1) 40:11 | | | | **tila**(6) 12:22 52:7 54:19 64:8 113:20 |
| | | **they're**(19) 5:8 16:12 16:25 20:5 31:22 34:6 34:9 34:25 50:13 84:4 95:25 96:4 97:1 97:4 97:4 99:17 99:23 105:3 125:6 | | | | **till**(2) 10:4 39:20 |
| **the**(138) 116:4 116:8 116:8 116:11 116:13 116:13 116:18 116:19 116:22 116:24 116:25 116:25 117:1 117:2 117:4 117:4 117:4 117:5 117:6 117:7 117:10 117:11 117:22 117:23 117:23 117:25 117:25 118: 118:1 118:2 118:4 118:6 118:8 118:12 118:12 118:13 118:13 118:14 118:14 118:15 118:15 118:17 118:19 118:20 118:20 118:24 118:25 119:2 119:4 119:4 119:7 119:8 119:10 119:10 119:12 119:14 119:15 119:24 120:2 120:4 120:4 120:7 120:9 120:11 120:12 120:15 120:15 120:16 120:18 120:24 120:25 121:1 121:1 121:3 121:7 121:8 121:9 121:14 121:16 121:17 121:19 121:20 121:23 121:25 122:6 122:9 122:11 122:13 122:23 122:24 122:25 123:2 123:5 123:7 123:7 123:8 123:12 123:12 123:15 123:16 123:19 123:19 123:20 123:21 123:22 124:1 124:3 124:3 124:8 124:10 124:11 124:12 124:13 124:13 124:15 124:19 124:20 125:10 125:11 125:13 125:15 125:20 125:25 125:25 125:25 126:1 126:7 126:10 126:14 126:19 127:2 127:3 127:3 127:4 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **time**(67) 14:23 18:15 20:24 21:24 25:5 27:8 27:8 30:5 34:10 37:18 38:13 38:13 39:4 39:14 40:5 44:4 44:24 45:4 46:14 47:16 50:19 51:19 53:6 53:16 54:22 61:2 62:18 63:8 63:11 63:12 69:9 70:6 70:6 80:3 81:16 83:25 84:3 84:14 84:21 86:12 93:22 97:21 97:25 98:1 98:16 98:20 101:1 104:10 106:1 106:2 106:22 107:16 110:18 110:18 113:22 115:13 115:16 115:22 118:7 119:2 122:23 123:8 123:13 123:17 124:24 125:3 125:24 | | **trustee**(33) 1:24 4:6 4:23 7:4 10:2 10:12 15:21 15:22 17:2 18:19 18:21 19:2 24:16 24:17 25:1 25:7 26:17 30:12 32:13 33:19 34:12 47:10 52:3 55:1 74:5 89:16 92:24 96:7 108:6 108:9 110:15 128:8 128:17 **trustee's**(9) 9:21 25:13 60:7 60:10 60:14 90:1 90:6 106:7 113:15 **trustees**(5) 10:8 46:20 46:20 46:20 60:5 **trusts**(2) 2:33 22:6 22:19 22:20 40:12 **truth**(5) 36:15 82:5 91:10 92:16 105:1 **truth-in-lending**(1) 111:12 **try**(14) 37:23 38:15 39:8 44:20 57:20 60:9 61:18 91:25 98:14 98:24 98:25 99:5 99:1 121:17 | | **unsuccessful**(1) 110:17 **until**(10) 17:20 18:15 21:9 67:25 73:17 74:11 83:24 84:18 106:7 112:18 **unusual**(1) 120:6 **upon**(5) 10:21 11:24 12:10 13:4 19:5 **upside**(2) 39:15 44:8 **usc**(2) 111:1 111:7 **use**(8) 29:20 29:21 30:7 54:6 61:9 85:13 94:24 115:13 **used**(5) 36:13 40:20 42:25 80:21 85:20 **uses**(1) 96:16 **using**(1) 28:20 **usually**(1) 90:17 **valuable**(1) 84:12 **value**(2) 120:15 122:14 **values**(1) 65:17 **vanilla**(1) 126:11 **vara**(3) 52:3 59:25 60:3 **variable**(1) 38:11 **various**(2) 106:5 124:5 **vendors**(1) 125:5 **venture**(1) 46:19 **verification**(1) 57:14 **very**(13) 18:20 22:24 27:7 34:8 36:14 62:7 81:13 83:10 83:21 88:3 105:23 110:12 116:3 **via**(1) 11:1 **viable**(1) 112:20 **vice**(4) 43:24 46:12 93:21 93:24 **view**(2) 116:14 118:24 **violate**(1) 17:14 **violation**(3) 15:8 17:1 111:18 **violations**(6) 64:5 64:8 111:10 111:15 113:20 114:19 **virginia**(27) 31:20 36:1 78:17 78:20 79:11 79:13 79:23 108:17 108:22 109:1 112:10 112:19 112:23 113:1 115:4 115:6 115:10 115:19 115:25 116:11 116:18 116:19 116:24 117:4 120:24 121:20 125:19 **virtue**(1) 117:5 **volume**(2) 71:12 96:7 **voluntarily**(1) 124:22 **wait**(5) 66:17 67:25 68:3 68:3 73:17 **waited**(1) 112:6 **waiting**(2) 22:9 22:23 **waived**(1) 25:16 **waiver**(1) 26:20 **walker**(1) 84:9 **wanerka**(20) 30:14 92:21 92:24 93:1 93:1 93:2 93:4 97:10 102:1 103:5 103:7 103:15 103:16 103:16 103:17 103:18 103:19 103:20 104:15 128:9 **want**(27) 7:16 11:5 15:18 16:20 20:1 23:22 27:8 29:18 31:14 31:16 34:14 34:21 35:5 37:18 40:22 44:5 44:22 54:4 64:15 73:23 84:14 89:22 95:1 106:1 108:7 113:15 122:23 **wanted**(17) 4:13 5:6 12:4 23:25 36:13 42:17 45:14 57:13 59:7 60:13 69:11 70:1 75:19 82:3 85:16 124:1 124:22 **wants**(1) 88:25 **warm**(1) 90:12 | | **was**(301) 4:12 5:4 5:7 5:11 6:2 6:4 10:14 10:25 11:5 11:9 11:13 11:14 11:22 11:25 12:4 12:6 12:7 12:20 12:21 12:25 14:7 14:23 15:6 15:25 16:1 16:3 18:7 18:13 18:15 18:17 20:19 20:23 20:25 22:5 22:7 22:7 22:20 22:21 24:17 28:21 28:25 29:2 29:14 31:20 32:23 33:6 33:8 33:13 36:9 36:11 36:16 36:19 36:19 36:20 36:21 36:22 36:24 36:24 36:24 37:1 37:1 37:2 37:2 37:4 37:5 37:15 37:15 38:5 38:19 39:2 39:9 39:14 39:18 39:22 39:24 39:24 40:5 40:8 40:13 40:15 40:18 40:20 40:21 40:22 41:9 42:13 42:15 42:23 42:24 43:2 43:3 43:7 43:18 44:1 44:2 44:4 44:6 44:7 44:9 44:15 44:18 44:19 45:2 45:10 45:20 45:21 45:22 46:7 46:7 46:21 47:9 47:12 47:13 47:15 47:20 47:24 47:25 48:2 48:3 48:5 48:5 48:9 48:15 48:16 48:17 49:4 49:12 49:12 49:13 49:17 50:4 50:7 50:8 50:12 50:21 50:25 51:12 51:18 51:18 51:19 51:25 52:24 53:3 53:4 53:5 53:6 53:11 53:11 53:18 54:2 54:8 54:8 54:11 54:22 54:22 54:24 55:1 55:7 55:7 55:21 55:14 55:18 56:2 56:6 56:10 56:12 56:16 56:16 56:20 57:2 57:4 57:9 57:11 57:17 57:18 57:22 57:22 57:23 57:24 58:2 58:2 58:21 60:22 61:3 61:20 62:8 62:20 63:16 63:24 63:25 64:1 64:4 64:4 64:5 64:11 64:17 65:14 66:6 66:10 66:10 66:12 66:17 66:18 68:1 68:12 68:22 68:24 69:5 69:6 69:6 69:9 69:19 69:23 69:25 70:7 70:10 70:18 70:21 70:24 70:25 71:1 71:5 71:8 71:13 71:19 71:21 71:21 71:22 72:24 73:2 73:3 73:13 73:13 73:14 74:4 74:8 74:10 74:10 74:14 74:22 74:22 74:23 75:13 75:16 75:19 76:5 76:7 76:24 77:1 77:10 77:16 79:3 79:5 79:5 80:5 80:8 80:19 80:20 80:24 80:25 81:1 82:5 82:6 82:11 82:14 83:17 83:20 83:21 83:21 83:24 84:3 84:9 84:12 84:12 84:13 84:15 84:16 84:17 85:14 85:19 85:20 86:1 86:19 88:11 92:1 92:7 92:11 92:25 93:24 93:25 94:4 94:5 94:6 94:7 94:11 94:17 95:21 97:6 97:6 97:20 97:21 **was**(65) 97:23 98:6 99:3 99:9 101:6 102:16 106:6 106:8 106:25 107:6 107:10 108:19 108:25 109:9 109:9 109:18 109:18 110:19 110:24 112:17 112:21 113:19 113:22 114:8 115:7 116:16 116:16 117:15 117:16 117:17 117:24 117:25 118:19 118:20 118:23 119:12 119:13 119:21 119:23 119:25 120:3 120:16 120:18 120:23 120:24 121:8 121:8 121:11 122:1 122:3 123:13 124:16 124:17 124:21 124:21 125:22 125:24 126:8 126:19 **wasn't**(7) 42:23 80:18 84:2 119:2 120:15 122:8 123:10 **watch**(1) 44:23 **watching**(2) 44:23 45:3 **waters**(1) 50:12 **way**(11) 24:5 50:1 63:2 63:4 67:15 102:6 102:13 106:17 112:9 115:11 122:16 **we'd**(1) 15:12 **we'll**(10) 6:1 9:4 13:13 20:9 21:19 27:12 28:1 30:11 54:4 90:4 **we're**(24) 22:9 22:20 24:1 28:20 29:15 32:7 32:17 36:21 37:9 43:16 44:13 54:5 89:4 90:22 90:25 92:16 95:2 95:3 101:21 107:21 112:5 113:16 115:11 126:1 **we've**(9) 13:2 21:12 22:19 42:14 61:11 107:22 122:15 122:15 122:20 **webb**(2) 3:3 53:7 **wedding**(1) 68:11 |
| **timeframe**(1) 74:23 **timely**(2) 97:11 98:8 **times**(9) 40:17 70:14 98:2 98:4 103:7 108:10 108:12 116:24 123:11 | | | | | | | |
| **today**(13) 6:10 11:1 14:5 19:10 36:9 36:21 94:16 104:1 108:16 108:23 112:18 117:1 125:14 **today's**(1) 95:13 **together**(6) 15:4 16:24 18:2 48:13 52:24 62:7 | | | | | | | |
| **told**(29) 10:25 11:6 15:20 16:3 34:3 39:17 40:14 40:15 40:18 40:20 40:21 42:24 43:7 43:25 44:5 46:4 53:19 53:20 72:23 74:8 74:9 74:10 78:5 84:11 84:11 84:24 85:16 85:17 123:11 | | | | | | | |
| **tolling**(4) 121:1 121:6 121:22 122:4 **too**(2) 51:6 84:12 **took**(8) 28:13 67:7 68:6 69:2 85:6 118:24 123:13 124:24 | | | | | | | |
| **top**(1) 52:19 **torte**(1) 123:22 **tortes**(1) 106:12 **totally**(1) 121:15 **tott**(1) 53:25 **touch**(4) 40:10 53:9 60:14 84:11 **toying**(1) 36:25 **traci**(1) 127:9 **trade**(2) 65:7 125:5 **training**(1) 94:8 **transaction**(6) 69:7 69:15 80:23 87:23 114:6 121:23 | | | | | | | |
| **transcriber**(1) 127:10 **transcript**(13) 1:17 1:50 31:21 49:11 49:15 49:16 69:20 72:15 91:23 92:12 109:20 119:12 127:3 | | | | | | | |
| **transcription**(2) 1:43 1:50 **transfer**(4) 16:13 17:8 17:20 96:2 **transferring**(1) 17:9 **transparency**(1) 24:21 **trauma**(1) 86:7 **travis**(3) 40:20 45:16 45:20 **triad**(6) 2:25 20:12 20:14 20:19 24:19 24:24 | | | | | | | |
| **triad's**(1) 25:2 **tried**(8) 39:12 43:3 54:25 58:16 76:22 107:15 122:15 125:22 | | | | | | | |
| **trips**(1) 82:7 **trogan**(1) 53:3 **trouble**(1) 55:12 **true**(4) 50:1 74:10 111:24 117:14 **trust**(42) 6:3 6:8 16:18 17:1 17:19 19:1 19:7 30:14 33:18 34:4 42:22 44:2 45:11 47:1 47:4 50:1 51:15 51:18 53:14 53:22 53:23 71:6 73:6 73:11 74:1 74:2 74:6 75:21 84:22 85:1 85:3 85:8 92:1 92:2 92:20 93:5 93:6 93:8 93:16 94:21 109:7 112:15 | | | | | | | |
| | | **trying**(26) 22:20 40:8 45:1 46:17 46:20 47:15 52:19 53:12 55:13 55:23 59:1 64:11 64:18 64:22 73:10 73:15 81:4 81:18 81:18 84:7 106:2 107:7 107:21 118:4 119:2 124:7 **turn**(5) 4:18 56:23 72:10 72:11 119:15 **turner**(5) 40:20 45:16 45:18 45:19 45:20 **turnover**(1) 106:25 **turns**(1) 45:3 **twelve**(3) 66:2 66:2 66:6 **twenty-three**(1) 4:9 **twice**(1) 116:23 **two**(20) 10:11 10:20 13:3 18:5 18:7 19:19 28:14 28:15 34:10 44:4 52:23 52:23 72:6 85:6 91:6 107:6 107:19 111:12 114:16 117:18 **tyler**(1) 84:24 **type**(2) 18:25 96:19 **typical**(1) 86:24 **typically**(1) 77:17 **u.s**(5) 16:5 60:7 60:10 60:14 106:7 **uh-oh**(1) 109:21 **ultimately**(2) 124:3 124:13 **um-hum**(22) 5:3 6:5 10:23 14:17 14:25 16:15 45:17 51:10 57:7 61:1 61:14 62:13 65:9 65:13 72:16 76:12 81:17 83:6 86:2 91:11 114:10 119:14 **unclear**(1) 73:6 **undeniable**(1) 116:22 **under**(21) 4:12 5:9 7:2 14:2 14:3 21:14 46:11 58:3 66:6 71:9 83:3 92:5 106:11 110:9 111:11 113:25 114:20 123:19 123:1 123:20 126:1 **underlying**(1) 114:18 **understand**(17) 6:4 8:19 8:23 18:9 18:12 19:4 35:10 46:9 46:17 46:21 48:20 63:15 63:17 63:18 81:4 91:6 106:21 **understanding**(7) 18:16 60:3 71:2 118:24 120:19 120:22 122:8 **understood**(4) 11:3 12:2 19:11 19:25 **unfairly**(2) 23:21 23:22 **unfortunately**(2) 33:5 36:12 **unified**(1) 94:5 **uniform**(1) 118:21 **unit**(6) 43:24 46:12 48:18 55:19 56:3 **united**(2) 1:1 1:19 **unjust**(1) 111:15 **unknown**(1) 111:24 **unlawful**(1) 15:22 **unlawfully**(3) 16:12 16:22 17:10 **unless**(2) 53:10 125:2 **unnecessary**(1) 106:2 **unpleasant**(1) 48:7 **unrelated**(1) 121:15 **unsecured**(18) 7:12 7:13 18:18 18:25 19:24 31:13 32:18 33:3 33:9 33:17 33:20 34:13 34:25 35:1 111:22 119:20 120:12 125:5 | | | | | | |

| Word | Page:Line |
|---|---|
| **wednesday**(1) 4:1 | |
| **week**(6) 21:10  72:24  80:9  80:10  80:13 80:17 | |
| **weight**(1) 91:2 | |
| **weird**(1) 39:23 | |
| **weiss**(2) 55:5  55:16 | |
| **welcome**(1) 26:11 | |
| **well**(73) 4:16  8:1  8:17  9:1  9:3  10:10 10:17  19:18  22:13  23:17  23:20  26:3  26:6 27:11  27:23  28:18  29:12  30:21  33:15  34:3 34:10  34:19  38:8  39:7  40:8  41:23  42:6 45:8  45:18  46:16  47:7  48:19  48:20  48:24 50:19  52:15  52:17  55:7  56:22  57:22  58:13 60:6  63:11  63:20  63:20  64:8  71:21  73:10 75:19  81:10  81:23  84:4  84:23  85:1  85:9 85:17  86:8  86:21  87:12  91:19  92:1  92:12 98:21  99:17  106:14  108:3  109:15  114:1 118:18  119:10  122:19  123:2  126:10 | |
| **wells**(14) 44:1  46:13  46:15  47:1  53:5 53:11  55:1  68:20  72:24  74:4  84:5  85:3 102:19  112:15 | |
| **went**(14) 19:8  36:13  36:19  38:10  38:12 38:14  39:3  39:25  45:22  69:11  85:1  116:6 124:17  125:19 | |
| **were**(97) 5:8  10:5  10:25  11:4  11:6  13:6 14:18  16:22  21:7  29:4  33:11  36:22  36:25 40:1  42:11  42:15  43:1  44:6  45:1  45:5 46:17  46:18  46:18  46:20  46:22  47:3  47:6 47:14  47:21  47:24  48:14  49:13  52:21 53:20  53:22  53:24  54:1  55:17  55:22  57:12 57:15  57:16  59:10  59:11  59:12  59:21  60:4 60:7  60:11  61:21  62:3  64:13  64:17  65:7 65:20  70:15  73:4  73:5  73:6  73:10  73:11 74:9  74:16  76:8  77:7  79:7  79:16  79:21 80:6  84:7  84:21  85:4  89:6  89:6  91:12 93:16  94:2  94:14  94:15  94:17  94:18  97:16 99:6  99:20  99:21  102:23  104:25  110:12 111:21  112:20  113:9  116:25  117:23  118:2 120:16  121:22  124:14 | |
| **weren't**(5) 53:20  56:8  58:9  84:24  124:6 | |
| **west**(1) 1:30 | |
| **what**(158) 4:24  7:19  11:6  14:7  14:14 15:24  18:17  18:18  18:18  18:23  19:21  21:15 22:2  22:2  25:4  25:17  26:18  26:23  29:3 31:5  31:22  32:15  32:16  32:20  32:21  32:22 34:20  34:20  36:10  36:16  36:22  36:22 36:23  37:4  37:5  37:5  37:24  38:1  38:2 38:10  38:15  38:20  38:24  39:2  39:7  39:10 39:23  40:8  40:16  41:17  43:12  44:19  45:18 46:17  46:21  46:21  47:13  47:20  48:21 49:17  49:20  50:5  50:9  52:17  57:9  57:10 58:25  59:11  60:6  60:6  60:9  60:9  60:21 61:6  62:1  62:2  62:3  62:3  62:17  62:18 62:25  63:9  63:15  63:17  63:17  64:3  64:4 64:7  64:12  64:17  64:17  64:17  64:19  69:17 72:13  72:16  72:19  72:25  73:6  75:12  76:8 77:10  77:20  78:9  80:19  80:21  81:8  81:11 82:7  82:11  85:9  87:7  87:19  88:12  90:2 90:13  91:6  91:9  91:19  92:25  93:8  93:10 93:19  94:2  94:14  94:15  95:13  95:18  95:22 95:25  96:10  96:14  98:19  99:9  99:21  99:22 100:6  100:11  100:13  102:1  102:4  102:5 105:18  106:23  107:16  108:20  110:3  118:9 119:6  119:20  119:22  120:2  120:16  120:23 120:24  125:13  125:20  126:11 | |
| **what's**(6) 5:24  36:2  37:1  60:3  77:20  87:10 | |
| **whatever**(10) 27:9  31:23  34:19  34:23 39:25  53:15  91:2  108:7  120:14  123:25 | |

| Word | Page:Line |
|---|---|
| **when**(45) 14:23  15:2  15:10  23:23  24:18 36:17  38:16  38:24  40:14  40:22  43:14 44:25  45:21  50:24  55:11  55:12  61:4  61:25 63:24  64:10  64:12  68:7  68:13  68:22  70:11 73:2  74:9  74:17  75:20  76:22  76:24  83:19 83:22  97:3  97:18  97:20  97:20  97:21  98:9 98:15  98:23  99:11  116:15  117:17  125:5 | |
| **whenever**(1) 26:7 | |
| **where**(25) 5:6  19:8  21:1  21:20  23:14  31:2 33:13  35:25  47:9  52:13  52:14  56:18  57:11 62:6  62:6  85:4  91:24  96:16  96:17  97:1 99:2  101:16  102:9  113:18  119:17 | |
| **where's**(1) 39:3 | |
| **whereupon**(1) 126:19 | |
| **wherever**(1) 19:8 | |
| **whether**(7) 18:19  18:20  24:24  28:25  49:23 74:10  123:16 | |
| **whey**(1) 56:1 | |
| **which**(55) 4:10  4:11  5:11  7:3  7:18  7:22 8:23  9:21  10:6  10:7  12:19  14:1  18:23 19:1  21:12  22:4  23:25  23:25  28:16  29:14 32:18  39:10  44:4  47:11  50:1  56:6  72:25 73:11  74:24  77:12  81:12  83:21  84:14  85:1 87:19  89:6  92:7  93:25  94:5  97:16  98:1 101:2  101:19  110:10  110:11  111:4  112:16 113:19  113:24  114:12  114:23  116:25  122:1 122:4  122:4 | |
| **while**(2) 27:4  94:16 | |
| **white**(2) 50:22  90:14 | |
| **whiteman**(2) 4:5  6:14 | |
| **who**(55) 13:23  17:14  19:19  26:11  36:12 40:13  40:20  41:10  42:12  42:22  42:23 42:23  45:2  45:18  46:2  46:6  46:9  46:24 46:24  47:25  47:25  49:21  51:3  51:4  51:7 51:16  51:20  52:10  53:2  53:14  55:17 55:23  56:11  56:11  57:3  57:4  58:14  58:23 59:1  60:2  60:3  60:3  60:17  60:24  69:6 70:7  85:19  96:23  109:8  109:13  110:3 110:4  118:20  118:20  122:17 | |
| **who's**(4) 6:21  10:20  44:25  54:10 | |
| **whoever**(1) 38:25 | |
| **whole**(2) 91:8  119:24 | |
| **wholesale**(1) 94:1 | |
| **whom**(2) 93:4  93:16 | |
| **why**(30) 12:1  23:25  24:11  32:25  33:4 42:15  42:15  42:15  42:15  42:21  45:18 46:15  47:24  52:2  55:17  55:22  60:10  60:17 73:9  73:15  73:16  83:15  86:21  99:15 100:17  101:22  122:11  122:17  126:3 | |
| **wilbur**(2) 55:6  55:18 | |
| **will**(33) 18:2  19:23  21:13  21:15  21:17 21:17  21:18  21:19  21:25  22:1  22:2  23:9 23:11  23:18  23:19  24:3  24:4  25:24  25:25 30:12  30:13  30:14  30:14  50:18  64:3  90:15 91:20  98:14  98:24  99:13  99:24  99:25 105:15 | |
| **willing**(1) 84:2 | |
| **wilmington**(8) 1:11  1:31  2:8  2:22  2:29 2:35  2:42  4:1 | |
| **wishes**(2) 24:12  26:11 | |

| Word | Page:Line |
|---|---|
| **with**(174) 4:14  4:24  5:8  5:10  5:23  6:7 6:19  6:20  6:22  6:24  7:1  7:3  7:5  8:10  9:4 9:14  10:20  13:18  15:2  15:2  15:3  15:7 17:12  17:20  17:21  17:25  19:19  19:21  20:5 21:22  21:24  22:21  23:15  25:1  25:7  25:15 25:16  25:16  26:2  26:16  27:13  27:20  28:1 31:5  32:24  37:3  37:4  39:13  39:15  39:16 40:10  41:8  41:24  42:19  43:19  43:20  44:7 44:8  44:9  44:17  45:5  45:16  46:6  47:1 47:16  48:24  51:13  52:15  52:20  52:21  53:9 53:13  54:18  54:22  55:19  55:19  60:10 60:14  67:1  68:7  68:13  68:20  69:11  69:21 69:23  69:25  70:13  70:18  71:16  73:19 74:12  74:19  75:2  75:16  76:17  77:8  77:22 78:11  81:19  81:20  81:24  84:5  84:7  84:11 85:8  86:18  89:14  89:18  89:25  90:23  91:15 91:25  93:8  93:10  94:2  94:5  94:20  94:21 95:4  95:5  95:8  95:17  95:20  96:8  96:20 97:1  98:17  99:14  101:12  101:19  101:21 102:4  103:12  104:3  104:5  104:7  105:6 105:20  106:20  107:15  107:21  108:12 108:14  109:4  109:5  110:6  112:1  112:18 113:14  113:22  114:4  114:17  115:7  116:7 116:17  116:25  117:1  117:9  117:19  118:3 118:15  121:11  121:11  122:14  122:15 122:21  123:4  123:5  123:21  123:22  124:7 124:10  125:13  125:18 | |
| **withdraw**(3) 7:12  33:9  33:11 | |
| **withdrawing**(1) 6:21 | |
| **withdrawn**(4) 8:8  8:10  112:22  117:1 | |
| **within**(2) 12:24  38:14 | |
| **without**(5) 8:24  27:6  47:11  83:19  105:3 | |
| **witness**(18) 30:12  35:6  35:21  40:25  41:3 41:3  41:23  42:9  59:15  71:25  72:4  88:23 89:1  91:7  91:13  91:21  92:24  109:12 | |
| **witness's**(1) 101:1 | |
| **witnesses**(4) 27:2  88:17  104:16  128:3 | |
| **won**(1) 124:12 | |
| **won't**(1) 28:2 | |
| **word**(1) 85:20 | |
| **words**(5) 42:25  49:25  61:17  77:14  82:16 | |
| **work**(13) 9:4  15:1  15:4  18:2  24:1  31:19 32:22  40:20  44:8  49:22  80:17  81:13  81:24 | |
| **worked**(3) 15:3  15:7  88:7 | |
| **workflow**(1) 94:6 | |
| **working**(3) 54:22  80:17  93:16 | |
| **works**(3) 46:11  81:4  87:19 | |
| **worried**(1) 120:17 | |
| **worries**(1) 67:21 | |
| **worry**(1) 90:16 | |
| **worth**(2) 62:18  81:13 | |
| **would**(134) 5:18  5:22  6:13  7:2  7:4  7:14 7:17  7:21  7:24  15:4  18:19  18:20  18:21  18:21 19:1  19:6  19:8  21:5  21:14  22:12  25:2 26:18  26:20  26:22  26:23  27:1  27:10  27:20 27:21  29:24  30:19  31:25  32:21  33:23 33:24  37:16  38:21  39:6  40:17  44:5  44:8 44:23  45:2  46:4  51:1  56:7  59:15  61:15 62:21  62:24  62:25  63:1  63:2  65:17  66:14 66:19  67:15  69:1  72:21  73:9  77:10  77:14 77:16  77:17  77:24  78:6  80:6  80:22  81:2 81:8  81:12  81:25  82:3  82:4  83:23  83:24 84:1  84:6  84:13  84:18  84:19  84:19  86:12 87:7  89:2  89:24  91:8  92:5  92:17  92:17 92:20  95:20  95:23  95:24  96:1  96:1  97:16 98:10  98:11  99:15  100:8  100:14  100:15 100:17  100:19  101:6  101:13  102:4  102:19 103:1  103:8  104:17  104:25  105:19  106:18 107:16  107:18  107:20  112:8  115:15  116:1 117:11  119:15  120:1  120:6  121:24  122:18 | |
| **wouldn't**(7) 15:11  17:17  29:20  44:3  45:13 46:5  82:1 | |
| **write**(3) 50:9  58:25  107:5 | |
| **writing**(3) 45:13  71:22  73:15 | |

| Word | Page:Line |
|---|---|
| **written**(5) 42:3  43:7  51:14  82:11  82:18 | |
| **wrong**(9) 15:12  51:2  51:15  51:18  88:2  118:16 119:1  119:1  124:4  124:19 | |
| **wrongful**(1) 114:17 | |
| **wrongfully**(1) 16:12 | |
| **wrote**(2) 14:15  47:6 | |
| **www.diazdata.com**(1) 1:47 | |
| **yada**(4) 46:25  46:25  73:2  73:2 | |
| **yeah**(41) 5:15  5:18  6:10  8:25  30:24  35:12 36:1  41:9  44:15  47:9  47:23  49:12  50:4 52:3  56:16  58:1  59:7  59:14  59:17  65:17 66:7  66:8  66:17  66:20  66:22  66:24  67:5 67:5  68:5  69:18  69:24  71:1  77:20  80:16 82:16  85:13  86:2  86:6  86:11  87:16  88:4 | |
| **year**(6) 38:14  43:1  65:14  66:11  73:13 | |
| **years**(11) 18:7  34:10  36:18  36:18  37:3 38:3  38:9  48:7  65:10  65:12  68:21 | |
| **yep**(1) 57:1 | |
| **yes**(133) 7:10  8:12  8:19  9:9  11:14  13:12 13:13  15:15  15:19  20:4  20:25  24:9  24:13 24:13  27:22  28:4  30:13  30:13  35:7  35:14 35:15  36:9  36:11  38:9  41:4  41:13  41:16 41:17  41:25  42:8  42:13  43:7  43:21  43:24 44:3  44:18  46:3  48:2  48:11  48:17  49:1 49:3  49:6  49:14  49:18  50:7  51:21  51:24 52:1  52:16  54:3  54:6  56:13  56:13  56:24 57:5  58:15  58:17  59:9  60:20  61:3  61:9 62:10  62:16  63:7  63:23  64:2  65:16  65:19 65:19  66:13  67:8  67:10  68:10  68:21  69:4 69:8  69:10  69:13  70:9  70:12  70:20  71:4 71:12  71:14  71:17  72:2  73:8  74:3  74:16 75:4  75:11  76:14  77:4  77:9  78:3  78:13 78:18  78:21  78:24  79:1  79:9  79:12  79:20 79:25  80:4  82:13  82:21  83:1  83:17  85:12 87:4  87:6  87:18  87:23  89:2  89:24  90:11 94:23  95:7  95:9  95:12  96:9  96:13  96:22 97:9  98:18  103:5  103:13  105:17  118:7 119:10  126:10 | |
| **yet**(3) 4:13  23:15  56:8 | |
| **yong**(1) 54:16 | |
| **york**(4) 1:38  2:15  2:49  3:7 | |

| Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|

**you**(301) 4:16 4:17 5:14 5:18 6:6 6:11 8:13 9:2 9:6 11:21 12:18 13:13 14:5 14:9 14:10 15:6 15:14 15:15 15:15 16:4 16:11 17:9 17:22 18:1 19:7 19:24 20:4 20:5 20:7 20:8 20:16 20:21 21:14 23:3 23:9 24:11 24:13 25:8 25:9 25:20 25:24 25:25 26:4 26:13 29:18 31:13 31:14 31:14 31:16 31:22 32:3 32:4 32:6 32:21 32:22 33:16 33:17 33:18 33:22 33:25 34:14 34:17 34:18 34:20 34:20 34:21 34:21 34:23 34:23 34:25 35:2 35:3 35:4 35:5 35:10 35:17 35:25 35:25 36:4 36:6 36:7 36:10 36:22 36:23 37:6 38:3 38:8 38:15 38:24 38:24 39:5 39:5 39:11 40:4 40:5 40:10 41:5 41:6 41:7 41:8 41:11 41:21 41:24 42:1 42:6 42:11 42:15 42:15 42:15 43:5 43:9 43:19 43:19 43:22 44:9 44:14 44:16 44:19 44:25 45:8 45:15 45:15 45:25 46:9 46:10 46:13 46:15 47:7 47:18 47:24 48:3 48:4 48:19 48:24 49:7 49:8 49:13 49:15 50:2 50:5 50:9 50:11 50:19 50:19 50:19 50:24 51:5 51:8 51:15 51:22 52:2 52:13 52:14 53:1 53:19 54:7 54:13 54:15 55:3 55:3 55:12 55:14 55:17 55:22 56:14 56:27 56:22 57:6 57:10 57:20 58:3 58:13 58:16 58:18 58:20 58:25 59:3 59:7 59:7 59:10 59:10 59:11 59:21 59:24 60:6 60:6 60:10 60:12 60:16 60:19 60:25 61:4 61:16 61:17 61:21 61:21 61:25 62:3 62:3 62:11 62:17 62:24 62:25 63:5 63:8 63:8 63:9 63:11 63:11 63:12 63:12 63:13 63:15 63:15 63:17 63:20 63:21 63:22 64:1 64:9 64:12 64:13 64:17 64:25 65:6 65:7 65:10 65:17 65:25 66:4 66:5 66:6 66:8 66:9 66:14 66:18 66:25 67:3 67:7 67:13 67:15 67:18 67:21 67:24 68:1 68:1 68:6 68:13 68:16 68:19 68:19 68:23 69:1 69:1 69:5 69:11 69:11 69:11 69:15 69:18 69:19 69:21 70:5 70:6 70:11 70:13 70:15 70:21 70:22 71:5 71:9 71:10 71:10 71:15 71:18 71:19 72:9 72:11 72:19 72:21 73:4 73:4 73:5 73:6 73:9 73:20 73:23 74:4 74:9 74:12 74:13 74:13 74:17 75:2 75:5 75:9 75:11 75:15 75:16 75:18 75:20

**you**(171) 75:20 75:22 76:1 76:3 76:6 76:13 76:15 76:17 76:20 76:20 76:22 76:24 77:2 77:5 77:7 77:10 77:11 77:12 77:17 77:19 77:22 77:23 78:5 78:6 78:6 78:11 78:15 78:19 78:19 78:22 79:2 79:10 79:13 79:16 79:19 79:19 79:22 79:23 80:1 80:5 80:6 80:6 80:13 80:13 80:23 81:3 81:8 81:9 81:15 81:16 81:20 82:10 82:10 82:11 82:12 82:16 82:18 82:18 82:22 82:22 82:25 83:13 83:14 83:14 83:15 83:18 83:19 83:25 83:25 84:23 84:24 85:9 85:14 85:16 85:25 86:3 86:3 86:4 86:12 86:12 86:13 86:16 86:16 86:18 86:24 87:21 87:21 88:3 88:8 88:16 88:16 88:17 88:17 88:23 88:24 89:22 90:12 90:13 90:14 90:15 90:21 93:4 93:6 93:8 93:16 93:19 93:22 94:21 95:4 95:8 95:13 96:6 96:6 96:8 96:12 97:10 97:10 98:2 98:9 99:9 99:20 100:6 100:24 101:3 101:22 102:20 103:10 103:14 103:24 104:1 104:3 104:5 104:7 104:13 104:13 104:15 105:5 105:9 106:10 106:19 106:19 108:5 108:7 109:21 112:3 115:13 115:16 117:17 118:6 118:9 119:4 119:7 119:17 120:9 122:2 122:14 122:19 122:19 122:24 123:2 123:22 124:24 126:3 126:4 126:5 126:7 126:10 126:15 126:16 126:17 126:18

**you'd**(5) 5:12 72:10 89:3 120:21 123:24
**you're**(21) 19:9 19:13 22:23 29:8 33:21 34:14 34:21 35:2 62:11 62:11 62:14 75:10 78:2 81:4 81:8 81:15 81:20 89:8 90:12 119:8 120:7

**you've**(1) 73:5
**young**(6) 1:24 4:5 4:22 40:21 45:20 65:2

**your**(266) 4:4 4:9 4:14 4:18 4:19 4:21 6:17 7:10 8:3 8:14 8:21 9:2 9:9 9:25 10:3 11:12 11:20 11:21 11:22 12:16 12:18 13:12 13:15 14:10 14:12 14:15 14:23 15:1 15:3 15:9 15:18 16:17 16:21 17:7 17:11 17:19 17:23 17:25 18:12 18:12 18:16 18:22 19:1 19:11 19:17 19:20 19:25 20:7 20:11 20:17 20:20 20:25 21:13 21:18 22:4 22:15 22:16 22:16 22:18 22:22 22:24 23:9 23:10 24:14 25:10 25:20 25:25 26:1 26:13 26:16 26:25 27:4 27:22 28:3 28:5 28:8 28:11 28:12 28:24 29:8 29:11 29:19 29:21 30:18 31:9 31:18 32:6 32:11 32:14 33:13 33:23 33:25 34:5 34:12 34:16 34:24 35:3 35:6 35:7 35:9 35:10 35:17 36:2 36:4 36:8 37:8 37:14 38:3 39:20 40:7 40:10 40:24 41:17 42:12 43:23 44:9 44:20 50:15 51:9 51:20 52:13 56:10 56:11 56:11 56:25 57:2 57:3 58:7 58:14 59:2 59:4 60:3 61:12 61:13 62:9 62:17 62:18 62:25 64:4 64:4 64:24 65:1 66:25 67:18 68:2 68:9 69:5 69:9 69:25 69:25 70:5 70:7 70:16 70:22 70:22 71:2 71:5 71:9 71:19 71:24 73:4 73:20 73:25 75:2 75:3 75:21 76:8 77:8 77:17 77:25 78:2 78:12 78:15 78:16 79:3 79:7 79:16 80:1 80:2 80:3 81:5 81:16 83:2 83:2 83:5 83:7 83:10 84:1 86:14 87:7 87:14 87:17 88:14 88:20 88:21 88:22 88:25 88:25 89:2 89:7 89:9 89:11 89:14 89:18 90:7 90:9 90:17 90:19 90:22 91:1 91:5 91:20 91:21 92:10 92:12 92:15 92:20 93:10 94:2 94:3 94:14 94:15 94:20 100:25 101:9 101:11 103:3 103:4 103:8 103:14 104:9 104:12 104:23 105:13 105:17 105:23 106:18 107:25 108:8 108:11 108:19 108:21 109:19 109:24 112:10 113:12 114:23 114:25 115:18 116:6 117:9 118:7 119:11 123:1 123:21 126:5 126:16 126:18

**yours**(1) 90:2
**yourself**(2) 95:13 108:7
**zero**(1) 107:20
**zolfo**(1) 2:45