FORM 104 (10/06)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|

| **PLAINTIFFS** GIL QUENTIN ALVAREZ | **DEFENDANTS** AMERICAN HOME MORTGAGE MICHAEL STRAUSS WELLS FARGO BANK |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) AHM - YOUNG CONAWAY, STARGATT & TAYLOR STRAUSS - Kenneth S. Ziman - Simpson Thacher Bartlett WELLS Fargo - Franklin Top - Chapman & Cutler |
|---|---|

**PARTY** (Check One Box Only)

☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☑ Creditor    ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)

☑ Debtor    ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Equitable Subordination for 1) Fraud & Deceit 2) Fraud & Deceit; 3) Fraud & Deceit; 4) Fraud & Deceit Post-Petition; 5) Misrepresentation 6) Misrepresentation; 7) Misrepresentation; 8) Negligent Misrep. 9) TILA; 10) RESPA; 11) Negligence; 12) Rescission; 13) Breach of implied covenant of Good Faith & Fair dealing 14) Breach of contract; 15) Breach of impl. cov. 15) Declaratory Judgment 16) AD. Proc. 17) Subordination Fraudulent Concealment.

**NATURE OF SUIT** 18) Unjust Enrichment 19) Conversion 20) UFTA

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| **FRBP 7001(1) - Recovery of Money/Property** | **FRBP 7001(6) - Dischargeability (continued)** |
|---|---|
| [4] 11-Recovery of money/property - §542 turnover of property | ☐ 61-Dischargeability - §523(a)(5), domestic support |
| ☐ 12-Recovery of money/property - §547 preference | ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury |
| [2] 13-Recovery of money/property - §548 fraudulent transfer | ☐ 63-Dischargeability - §523(a)(8), student loan |
| [5] 14-Recovery of money/property - other | ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other |
| **FRBP 7001(2) - Validity, Priority or Extent of Lien** | than domestic support) |
| ☐ 21-Validity, priority or extent of lien or other interest in property | ☐ 65-Dischargeability - other |
| **FRBP 7001(3) - Approval of Sale of Property** | **FRBP 7001(7) - Injunctive Relief** |
| ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | ☐ 71-Injunctive relief - reinstatement of stay |
| **FRBP 7001(4) - Objection/Revocation of Discharge** | ☐ 72-Injunctive relief - other |
| ☐ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest** |
| **FRBP 7001(5) - Revocation of Confirmation** | [1] 81-Subordination of claim or interest |
| ☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment** |
| **FRBP 7001(6) - Dischargeability** | [3] 91-Declaratory judgment |
| ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims | **FRBP 7001(10) Determination of Removed Action** |
| ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud | ☐ 01-Determination of removed claim or cause |
| ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny **(continued next column)** | **Other** ☐ SS-SIPA Case - 15 U.S.C. §§78aaa et.seq. ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case) |
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ 341,600.00 plus 47,618.50 |

Other Relief Sought    Pre + Post Judgment interest, fees, costs + damages.

*[vertical stamp:]* 2011 MAR 28 A... U.S. BANKRUPTCY DIST... CLERK

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>American Home Mortgage | | **BANKRUPTCY CASE NO.**<br>07-11047 |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Delaware | **DIVISIONAL OFFICE** | **NAME OF JUDGE**<br>Christopher S. Sonchi |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| **PLAINTIFF** | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** | | |
| **DATE**<br>3/28/2011 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>Gil Q. Alvarez | |

Print Form

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et. al., | Case No: 07-11047 (CSS) |
| Debtors, | Jointly Administered |
| Gil Quentin Alvarez | |
| Plaintiff, | |
| v. | Adv. Proc. No. 11-_____ (CSS) |
| American Home Mortgage Corp., Michael Strauss, Wells Fargo Bank, N.A. | |
| Defendants. | |

## ADVERSARY PROCEEDING TO SUBORDINATE CLAIMS, FOR DECLARATORY AND OTHER RELIEF

## COMPLAINT

1.    Plaintiff, Gil Quentin Alvarez, pursuant to Federal Rule of Bankruptcy Procedure 7001,

section 105 of Title 11 of the United States Code, 11 U.S.C. sections 101 et. seq. (the

"Bankruptcy Code") and 28 U.S.C. sections 2201, files this complaint/adversary proceeding for

Declaratory Judgement and Equitable Subordination and other relief against the Defendants,

American Home ("AHM"), Michael Strauss ("STRAUSS") and Wells Fargo Bank ("WELLS")

because of the bad faith actions of defendants in their refusal to settle this claim in good faith

both pre and post petition, and the malicious actions by Defendant AHM post petition in lying to Plaintiff regarding their D&O policies and needlessly prolonging in bad faith this claim.

2.    Plaintiff requests that these Defendants claims be subordinated to Plaintiff's claim.  Part of this adversary proceeding relates to wrongful actions taken by bankruptcy participants during the bankruptcy .

### JURISDICTION

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157, 1334 and 2201, and 11 U.S.C. section 105.

4.    Venue is proper in this Court pursuant to 28 U.S.C. section 1409.

5.    This matter is a core proceeding pursuant to 28 U.S.C. section 157.

### PARTIES

6.    Plaintiff, Gil Quentin Alvarez is the Creditor/Claimant/Movant in this matter.

7.    Defendant American Home Mortgage was and is a mortgage company with its principal offices in Melville, New York, which is located in the Eastern District of New York and has filed for bankruptcy in Wilmington, Delaware,

8.    Defendant Michael Strauss was the Chairman, President and CEO of Debtor American Home Mortgage.  According to the Debtor American Home Mortgage's Executive Biography (attached hereto as exhibit A), Defendant Strauss was responsible for "strategic directions as well as overseeing day-to-day operations."

9.    As part of his overseeing day-to-day operations, Defendant Strauss employed, directed, oversaw and approved the work of Stephanie Alagna who handled and answered all correspondence directed to Defendant Strauss with his instructions and/or review.

10.     On September 12, 2008 Defendant Michael Strauss filed proof of claim #10507 for one million dollars.

11.     Defendant Strauss paid a 2.25 million dollar fine to the Securities and Exchange Commission SEC to settle charges against him and was sanctioned. Defendant Strauss paid this fine with Defendant's Directors and Officers liability insurance policies (the "D&O Policies").

12.     Defendant Wells Fargo Home Mortgage was a substantial business partner of American Home Mortgage as master servicer and securities administrator on a large number of American Home securitizations. Defendant Wells Fargo funded loans and purchased loans from American Home Mortgage including Plaintiff's loan.

## STATEMENT OF FACTS

13.     Plaintiff, Gil Quentin Alvarez, and his wife signed a contract for the sale and purchase of a home in Apopka, Florida on February 5, 2005. Defendant AHM assured Plaintiff that they would obtain a 5.25% fixed rate and "lock it in".

14.     On the day of closing Plaintiff was ambushed with a higher interest rate of 5.75% rather than the one that Defendant had originally represented, i.e. 5.25%. Plaintiff was forced to close on the home with a 5.75% interest rate because the seller was purchasing a home in Tampa, Florida that very day. Had Plaintiff not elected to purchase the home, he would have been subject to legal action from the seller.

15.     In April 2005, Plaintiff consulted with an attorney, Bonita E. Zelman, who agreed to assist Plaintiff at a reduced rate on a claim only basis in his dispute with AHM.

16.     On April 7, 2005, Plaintiff wrote a "Qualified Written Request" for relief pursuant to Section 6 of the Real Estate Settlement and Procedures Act (RESPA 12 U.S.C. 2605).

3

17. Shortly thereafter Defendant AHM knowing full well the misconduct associated with the mortgage, sold the mortgage to Defendant Wells Fargo Home Mortgage. The transfer became effective May 1, 2005.

18. On April 11, 2005 attorney Bonita Zelman contacted Defendant Michael Strauss and informed him regarding the unlawful misconduct which had occurred to the Plaintiff.

19. On April 13, 2005 attorney Zelman also sent a "Qualified Written Request" to Defendant Wells Fargo requesting inter alia, that they not go through with the transfer of the mortgage.

20. Instead of conducting an investigation into the misconduct committed as they are required by RESPA, or make the appropriate corrections to the account, Defendant's AHM, Michael Strauss and Wells Fargo, embarked upon a pattern of deceit and fraud by fabricating different accounts and scenarios all in order to deprive the Plaintiff of his rights under the TILA and RESPA, and, failed to provide Plaintiff with the information he requested in order to wrongfully appropriate excess interest to which they were not entitled to.

21. Defendant AHM, among many fabricated scenarios, also intentionally lied to Defendant Wells Fargo that Plaintiff's father-in-law had used a $600.00 credit offered by Defendant to Plaintiff to settle this matter.

22. Defendant Wells Fargo after initially indicating that they would investigate the matter, then refused to do so in order to reap the benefits and wrongfully appropriate excess interest to which they were not entitled to.

23. Since Defendant AHM and Defendant Strauss showed no inclination to act appropriately, professionally or to comply with the law, Plaintiff was forced to file complaints with the U.S. Department of Housing and Urban Development and the State of Florida Office of Financial

4

Regulation.

24.    In response to inquiries sent by the U.S. Department of Housing and Urban Development

and the Florida Office of Financial Regulation, Defendant AHM and Defendant Strauss who was

Chairman, President and CEO of Debtor and responsible for "strategic directions as well as

overseeing day-to-day operations", continued in their pernicious pattern of deceit and fraud by

continuing to fabricate intentional falsehoods and lies in regards to their commercial interaction

with the Plaintiff (Attached hereto as exhibit B, are written communications between Plaintiff,

Defendant AHM, Defendant Strauss, Defendant Wells Fargo and other parties)

25.    On November 21, 2005, the Director of RESPA and Interstate Land Sales at the U.S.

Department of Housing and Urban Development directed Defendant AHM and Defendant

Strauss to reach a resolution with the Plaintiff and his attorney within 15 days. Defendant AHM

and Defendant Strauss wrongfully refused to do so. See exhibit C.

26.    On October 17, 2006 the Office of Financial Regulation in the State of Florida took

administrative action against Defendant AHM. In a Stipulation and Consent Agreement the State

of Florida fined the Defendant five thousand dollars ($5,000.00) for their misconduct against the

Plaintiff. This document is signed by Mr. Alan B. Horn, the General Counsel of Defendant

AHM and who reported directly to Defendant Strauss.   See exhibit D.

27.    Among the factual findings by the Florida Office of Financial Regulation were the

following: **a) The loan originator acting for the Respondent (i.e. Defendant AHM) promised**

**Mr. Alvarez (Plaintiff) a 5.25% interest rate, and at closing, the rate had increased to**

**5.75%. Mr. Alvarez alleges that he had to accept a mortgage loan at 5.75% interest or face**

**legal action. b) over the thirty-year life of the mortgage, Mr. Alvarez (Plaintiff) will incur**

5

**financial loss (emphasis added).**

28.    As this Honorable Court is aware, this Stipulation and Consent Agreement entered into by

the State of Florida Office of Financial Regulation and Defendant AHM effectively estops the

Defendant's AHM, Wells Fargo or Defendant Strauss of creating or generating any further

implausible or factually challenged scenarios regarding the misconduct they committed against

Plaintiff or that the money they are receiving or have received are lawfully obtained.

29.    On December 4, 2006 attorney Zelman requested that Defendant Strauss and Defendant

AHM set up a meeting with Defendant Wells Fargo so as to settle this matter.  As has been the

custom and practice, Defendants Strauss, AHM and Wells Fargo refused to settle this matter.

30.    After receiving no response to repeated requests for a resolution to this matter, attorney

Zelman contacted Defendant Strauss and Defendant AHM to request a settlement.  Defendant

AHM informed attorney Zelman that they had D&O policies and to indicate Plaintiff's losses in

the form of a letter so that they could submit a claim to their D&O policies.  Plaintiff's attorney

mailed said letter on April 5, 2007. See exhibit E.

31.    On April 13, 2007 Defendant AHM, after initially indicating their willingness to settle and

upon information and belief in knowing that they would file for bankruptcy protection and the

need to preserve D&O policies for the benefit of Defendant's  Strauss and AHM

for the misconduct later alleged by the SEC and other entities, wrongfully refused settle with the

Plaintiff.  See exhibit F.

## MISCONDUCT COMMITTED POST PETITION FILING

32.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a

voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy

6

Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the bankruptcy Code.

33.    Despite the fact that Defendant AHM and Defendant Strauss were personally aware of Plaintiff's claim, they wrongfully and without just cause chose not to notice him or list him as a potential creditor.

34.    On September 15, 2008, Plaintiff appeared before the Honorable Christopher S. Sontchi and was directed by the Court to work together with Defendant's counsel i.e. with Mr. Nathan Grow, Esq., so that a proposed Form of Order in connection with Plaintiff's motion be prepared.

35.    While Plaintiff was initially worried in working with Defendant's counsel and found the direction of the Court to do so disconcerting, he later appreciated the wisdom of the Court in that it allowed both parties to communicate with each other and find common ground on resolving the issues.

36.    From September 15, 2008 until October 6, 2008 Plaintiff communicated and negotiated with Mr. Grow by way of telephone and e-mail. During these negotiations, Plaintiff pointed out to Mr. Grow the findings by the State Office of Financial Regulation who had fined the Defendants in regards to Plaintiff's case and the November 21, 2005 letter to Defendant Strauss from the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development that directed Defendant Strauss to reach a resolution with the Plaintiff and his then attorney in which he then wrongfully refused to do so.

37.    Plaintiff, during these negotiations, refused to agree to any "reservation of rights" without knowing what specific rights were to be reserved. Plaintiff wanted complete finality with regards to his claim and informed this to Mr. Grow.

7

**DEFENDANT AHM ENGAGES IN BAD FAITH BY PREVARICATING TO AN OFFICER OF THE COURT AND PLAINTIFF REGARDING THEIR D&O POLICIES**

38.    During these negotiations, Plaintiff requested that Mr. Grow reach out to Defendants to inquire if they would use their insurance which would cover the misconduct committed by Defendants and their officers/agents.  Despite the fact that Defendants had initially indicated to Plaintiff's then attorney that they had insurance in the form of Directors and Officers liability insurance policies to cover Plaintiff's situation, and in fact told her to submit her demand in the form of a letter so that they may file a claim with their D&O policies (exhibit E), they then wrongfully and without just cause prevaricate to Mr. Grow on October 3, 2008 that they did not have such insurance.

39.    As this Court is aware, after prevaricating to Mr. Grow that they did not have insurance to cover their unlawful actions against the Plaintiff, Defendant's requested that this Court allow them to use their D&O policies to fund Settlements and Stipulation and Agreements against Defendant AHM and Defendant Michael Strauss (See Docket No. 7934, dated 8/11/09).

40.    Irrespective of the fact that Plaintiff knew that Defendants had prevaricated to Mr. Grow, Plaintiff was very clear with Mr. Grow that he did not want Defendants to maintain rights in perpetuity which they would later attempt to use in any adversary proceeding against him and wanted to settle this matter.  Indeed on three occasions Plaintiff indicated to Mr. Grow that he would reach out to Your Honor because he was not satisfied with the adverse language being drafted in the proposed Form of Order and because he wanted a Form of order that would bring finality to his claim.

41.    After extensive back and forth negotiations, it was agreed that Defendant AHM and

8

Plaintiff would resolve his claim in good faith. On October 10, 2008 the Order was signed by

Your Honor which ordered inter alia, that Defendant and Plaintiff will work in good faith to

resolve his claim. See Docket No. 6189 and 6219.

**DESPITE THE FACT THAT DEFENDANT AHM AGREED TO RESOLVE THE
CLAIM IN GOOD FAITH, AND IN FACT WERE ORDERED TO DO SO BY THIS
COURT, DEFENDANT AHM ENGAGES IN BAD FAITH BY REFUSING TO
NEGOTIATE OR RESOLVE THE CLAIM WITH PLAINTIFF.**

42.     Despite the fact that Plaintiff wanted to resolve his claim absent an adversarial proceeding,

Defendants continued their pattern of disdain toward Plaintiff and his claim by refusing to abide

by their agreement and refusing to comply with the Order issued by this Court to resolve the

claim.

43.     On December 20, 2010 Plaintiff submitted a Subordination Statement to this Court which

outlined all of the issues mentioned in this complaint.

44.     Prior to March 9, 2011 the date set by this Court for a hearing on the Subordination

Statements, counsel to the trustee reached out to Plaintiff not to settle this matter but to convince

him to drop his Subordination Statement. In response, Defendant and counsel to the trustee

indicated, contrary to their written agreement and the Order of this Court that any subordination

rights should be "...properly brought as an adversary proceeding under Part VII of the Federal

Rules of Bankruptcy Procedure." See Docket No. 9748 dated 2/1/2011.

45.     On March 9, 2011 Plaintiff appeared before Your Honor and objected to his funds being

transferred by the trustee that were the subject of a Court Order. Plaintiff pointed out that his

case was different from the other claims in that he had factual findings against the Defendants by

the State of Florida Office of Financial Regulation and that he had an agreement to settle this

9

matter in good faith outside an adversary proceeding.

46.     In response Defendants futilely attempted to state that they complied with the Courts Order
by ridiculously calling Plaintiff at home prior to the hearing in order to persuade him to drop his
subordination statement. It was at this juncture that Your Honor directed Defendant AHM to go
out into the hallway and reach an agreement with the Plaintiff.

## DEFENDANTS "ONE AND ONLY" COURT DIRECTED "GOOD FAITH NEGOTIATION" WAS A THREE MINUTE TAKE IT OR LEAVE IT OFFER OF ABOUT ONE PERCENT OF PLAINTIFF'S CLAIM

47.     After almost two and a half years of wrongfully and without just cause prolonging
resolution of Plaintiff's claim, Defendants arrogant offer was that Plaintiff accept about one
percent of his claim. When Plaintiff suggested other relief Debtors disingenuously indicated that
they could not offer anything more and that any further relief would have to come from Your
Honor. Plaintiff is aware that Defendants have in other cases, after good faith negotiations,
settled claims for more than one percent. Defendants unwillingness to negotiate in good faith
and inflexibility left Plaintiff with no alternative but to file this complaint/adversary proceeding
as Defendants all but urged him to do. It was apparent from Plaintiff's brief "good faith
negotiation" that Defendant's after almost two and a half years, had absolutely no clue as to
Plaintiff's claim therefore rendering any "settlement offer" devoid of any analysis of the facts or
conclusions of law. It is indeed deplorable that Defendants would treat a Pro-se Plaintiff and his
wife in such a demeaning, uncaring and despicable manner as they did on March 9, 2011.

## COUNT 1 FRAUD AND DECEIT AGAINST DEFENDANT AHM

48.     Plaintiff repeats and realleges each allegation in paragraphs 1 through 47 as though fully
set forth herein.

10

49.    By deliberately lying to the Plaintiff that his interest rate would be 5.25% and waiting until the closing to ambush him with a higher 5.75%, Defendant AHM committed fraud and deceit against Plaintiff.

50.    As a result of the Defendant AHM deliberate fraudulent and deceitful acts, Plaintiff has suffered and will continue to suffer actual monetary damages.

## COUNT 2 FRAUD AND DECEIT AGAINST DEFENDANTS AHM AND MICHAEL STRAUSS

51.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 50 as though fully set forth herein.

52.    By engaging in deceit, trickery and breach of confidence in their responses to the Qualified Written Requests of the Plaintiff, Defendants AHM and Michael Strauss perpetrated said false and fraudulent responses in order to wrongfully gain an unfair and dishonest advantage and so as to keep monies to which they were not entitled to.

53.    As a result of the Defendants deliberate fraudulent and deceitful acts, Plaintiff has suffered and will continue to suffer actual monetary damages.

## COUNT 3 FRAUD AND DECEIT AGAINST DEFENDANT WELLS FARGO

54.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 53 as though fully set forth herein.

55.    By engaging in deceit, trickery and breach of confidence in their responses to the Qualified Written Requests of the Plaintiff, Defendant Wells Fargo perpetrated said false and fraudulent responses in order to wrongfully gain an unfair and dishonest advantage and so as to keep monies to which they were not entitled to.

11

56.    Specifically, Wells Fargo promised to investigate the misconduct committed against Plaintiff and then failed and refused to do so.

57.    Also, Defendant Wells Fargo, in response to a December 4, 2006 letter to Mr. Richard Kovacevich, Defendant Wells Fargo intentionally lied in indicating that no new information was supplied to them by the Plaintiff despite the fact that the findings by the State of Florida Office of Financial Regulation was submitted to them for the first time. See exhibit G.

58.    Defendant Wells Fargo also wrongfully and without just cause refused to provide the information provided to them by Defendants AHM and Strauss despite the fact that said information rightfully belonged to Plaintiff in violation of the TILA and RESPA. See exhibit G.

59.    As a result of Defendant Wells Fargo deliberate fraudulent and deceitful acts, Plaintiff has suffered and will continue to suffer actual monetary damages.

**COUNT 4 FRAUD AND DECEIT AGAINST DEFENDANT AHM - POST PETITION**

60.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 59 as though fully set forth herein.

61.    By prevaricating to the Plaintiff that they did not have D&O policies to cover the misconduct by Defendants Strauss and AHM, despite the fact that they had previously indicated to Plaintiff's then attorney that they did (exhibit E), Defendant AHM perpetrated said false and fraudulent response in order to wrongfully gain an unfair and dishonest advantage and so as to keep monies they were not entitled to and to use said policies to fund other lawsuits against Defendant AHM and Defendant Strauss.

62.    As a result of the Defendant's deliberate fraudulent and deceitful acts, Plaintiff has suffered and will continue to suffer actual monetary damages.

12

## COUNT 5 MISREPRESENTATION AGAINST DEFENDANT AHM

63.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 62 as though fully set forth herein.

64.    By deliberately lying to the Plaintiff that his interest rate would be 5.25% and waiting until the closing to ambush him with a higher 5.75% rate, Defendant AHM committed misrepresentation against Plaintiff.

65.    As a result of Defendant AHM deliberate act, Plaintiff has suffered and will continue to suffer actual monetary damages.

## COUNT 6 MISREPRESENTATION AGAINST DEFENDANT'S AHM AND MICHAEL STRAUSS

66.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 65 as though fully set forth herein.

67.    By engaging in deceit, trickery and breach of confidence in their responses to the Qualified Written Requests of the Plaintiff, Defendant's AHM and Michael Strauss perpetrated said false and fraudulent responses in order to wrongfully gain an unfair and dishonest advantage and so as to keep monies to which they were not entitled to.

68.    As a result of Defendant's AHM and Michael Strauss's deliberate acts, Plaintiff has suffered and will continue to suffer actual monetary damages.

## COUNT 7 MISREPRESENTATION AGAINST DEFENDANT WELLS FARGO

69.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 68 as though fully set forth herein.

70.    By engaging in deceit, trickery and breach of confidence in their responses to the Qualified

13

Written Requests of the Plaintiff, Defendant Wells Fargo perpetrated said false and fraudulent responses in order to wrongfully gain an unfair and dishonest advantage and so as to keep monies to which they were not entitled to.

71.    Specifically, Wells Fargo misrepresented to Plaintiff that they would investigate the misconduct committed against Plaintiff and then failed and refused to do so.

72.    Also, Defendant Wells Fargo, in response to a December 4, 2006 letter to Mr. Richard Kovacevich, Wells Fargo lied in indicating that no new information was supplied to them despite the fact that the findings of the State of Florida Office of Financial Regulation, fining Defendant AHM, was submitted for the first time.  See exhibit G

73.    Defendant Wells Fargo also wrongfully refused to provide the information provided to them from the Defendant AHM despite the fact that said information rightfully belonged to the Plaintiff and in violation of the TILA and RESPA.  See exhibit G.

74.    Defendant has repeatedly refused to provide information which Plaintiff cannot obtain through due diligence.  Defendant's affirmative acts of concealment have wrongfully deprived the Plaintiff of his rights under the law.

75.    As a result of Defendant Wells Fargo's deliberate acts, Plaintiff has suffered and will continue to suffer actual harm by way of loss of rights and actual monetary damages.

## COUNT 8 NEGLIGENT MISREPRESENTATION AGAINST DEFENDANT AHM - POST PETITION

76.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 75 as though fully set forth herein.

77.    By prevaricating to the Plaintiff that they did not have D&O policies, Defendant AHM

14

perpetrated said fraudulent and misrepresentative response in order to wrongfully gain an unfair
and dishonest advantage and so as to keep monies they were not entitled to and to use said
policies to fund other lawsuits against Defendant's AHM and Michael Strauss.

78.    Defendant AHM in the course of their business, profession or employment, supplied false
information for the guidance of Plaintiff in regards to his transactions with Debtors.  Plaintiff
justifiably relied upon the information supplied.  Defendant AHM failed to exercise reasonable
care and/or competence in obtaining,verifying or communicating the information provided to the
Plaintiff.

79.    As a result of Defendant AHM's deliberate acts, Plaintiff has suffered and will continue to
suffer actual monetary damages.

### COUNT 9 TRUTH-IN LENDING ACT 15 U.S.C. 1640 & 1641 et.seq. (TILA)

80.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 79 as though fully
set forth herein.

81.    TILA is to be liberally construed in favor of consumers, with creditors [here defendants
AHM, Michael Strauss and Wells Fargo] who fail to comply with TILA in any respect becoming
liable to the consumer [here Plaintiff].

82.    By failing to disclose key terms of the lending arrangement and all costs of the mortgage,
or having information regarding said misconduct committed, and failing to act in regards to the
non-disclosure of key terms of the lending arrangement and the costs of the mortgage,
Defendants AHM, Michael Strauss and Wells Fargo did violate the TILA.  All Defendants were
fully aware of the irregularities and illegalities concerning Plaintiff's mortgage and wrongfully
chose to accept said misconduct in order to wrongfully benefit financially.

15

83.     As a result of the Defendants wilful violation of the TILA, Plaintiff has suffered and will continue to suffer actual monetary damages.

## COUNT 10 REAL ESTATE SETTLEMENT AND PROCEDURES ACT 12 U.S.C. 2605, 2614 et.seq. (RESPA)

84.     Plaintiff repeats and realleges each allegation in paragraphs 1 through 83 as though fully set forth herein.

85.     RESPA requires that consumers receive disclosures of various terms in the transaction. Its purpose is to prevent inflating the cost of real estate transactions and obscuring price competition by facilitating bait and switch tactics such as those which were committed against the Plaintiff in the instant matter.

86.     If the borrower [here Plaintiff] believes there is an error in the mortgage account, he or she can make a "Qualified Written Request" to the loan servicer.

87.     The servicer [here defendants AHM, Michael Strauss and Wells Fargo] must acknowledge receipt of the request within 20 days and then has 60 business days (from the request) to take corrective action on the request. During this 60 day period, RESPA requires that the servicer conduct an investigation and provide the borrower with a written explanation or clarification.

88.     By failing to disclose key terms of the transaction and all costs of the mortgage, Defendants AHM, Michael Strauss and Wells Fargo did violate the RESPA.

89.     By failing to conduct a good faith investigation as required by section 6 of RESPA, Defendants AHM, Michael Strauss and Wells Fargo did violate the RESPA.

90.     As a result of Defendant's AHM, Michael Strauss and Wells Fargo's violation of the RESPA, Plaintiff has suffered and will continue to suffer actual monetary damages.

16

## COUNT 11 NEGLIGENCE

91.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 90 as though fully set forth herein.

92.    By failing to exercise due care and to provide Plaintiff with the 5.25% interest rate as was represented to him, Defendant's AHM, Michael Strauss and Wells Fargo, who had a duty of care to the Plaintiff, displayed conduct that fell short of what a reasonable person would do to protect Plaintiff from the foreseeable risk of harm.

93.    As a result of Defendant's AHM, Michael Strauss and Wells Fargo's negligence, Plaintiff has suffered and will continue to suffer actual monetary damages.

## COUNT 12 RESCISSION

94.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 93 as though fully set forth herein.

95.    Because of the fraud and deceit exercised by Defendants under which the loan agreement was executed under, and the violations of the TILA and RESPA, and the negligence and misrepresentation directed at Plaintiff, Plaintiff is entitled to Rescission of his loan and/or the value thereof from the Defendants AHM and Wells Fargo.

96.    Under TILA, if a lender fails to make a material disclosure in originating a loan, a borrower may assert a claim seeking rescission of the loan against the current holder, i.e. Wells Fargo, regardless of whether the current holder was involved in the origination of the loan. 15 U.S.C. section 1641 (2010). Here, Wells Fargo was advised of the misconduct committed by the Defendant's AHM and Michael Strauss, was served with a qualified written request and chose to accept the loan irrespective of the findings submitted to them from the State of Florida Office of

17

Financial Regulation. Wells Fargo was fully aware of the irregularities and illegalities concerning Plaintiff's mortgage and wrongfully chose to accept said misconduct in order to wrongfully benefit financially.

97.    If rescission is not granted or the value thereof, Plaintiff has and will continue to suffer actual harm in the loss of his rights and actual monetary damages.

## COUNT 13 BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

98.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 97 as though fully set forth herein.

99.    The implied covenant of good faith and fair dealing is a general assumption of the law of contracts that people will act in good faith and deal fairly without breaking their word, using shifty means to avoid obligations [as was done here by Defendants], or denying what the other party obviously understood.

100.    By failing to exercise due care and to provide Plaintiff with the 5.25% interest rate as was represented to him, Defendant's AHM, Michael Strauss and Wells Fargo, who had a duty of care to the Plaintiff, displayed conduct that fell short of what a reasonable person would do to protect Plaintiff from the foreseeable risk of harm.

101.    As a result of the Defendant's AHM, Michael Strauss and Wells Fargo breach of the covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer actual monetary damages.

### COUNT 14 BREACH OF CONTRACT - POST PETITION

102.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 101 as though fully

18

set forth herein.

103.    A breach of contract is a legal cause of action in which a binding agreement or bargained for exchange is not honored by one or more of the parties to the contract by non-performance. If the party does not fulfill his contractual promise, or has given information to the other party that he will not perform his duty as mentioned in the contract, he is said to breach the contract.

104.    Defendant AHM by failing to resolve Plaintiff's claim in good faith as agreed to on October 6, 2008 and later memorialized in an Order by this Honorable Court dated October 10, 2008, displayed conduct that fell short of what a reasonable person would do to protect Plaintiff from the foreseeable risk of harm.

105.    Despite Defendant's take it or leave it offer of about one percent, the Order by this Honorable Court to negotiate in good faith has and still remains in effect. As has been the custom and norm of the Defendant AHM, no further communication or request to settle has been received or directed to Plaintiff.

106.    As a result of Defendant AHM's breach of contract, Plaintiff has suffered and will continue to suffer actual harm in the loss of his rights, and actual monetary damages.

**COUNT 14 BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING - POST PETITION**

107.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 106 as though fully set forth herein.

108.    The implied covenant of good faith and fair dealing is a general assumption of the law of contracts that people will act in good faith and deal fairly without breaking their word, using shifty means to avoid obligations, or denying what the other party obviously understood.

19

109.    Defendant AHM, by failing to resolve Plaintiff's claim in good faith as agreed to on October 6, 2008 and later memorialized in an Order by this Honorable Court, Defendant AHM displayed conduct that fell short of what a reasonable person would do to protect Plaintiff from the foreseeable risk of harm.

110.    Despite Defendant's take it or leave it offer of about one percent, the Order by this Honorable Court to negotiate in good faith has and still remains in effect.  As has been the custom and norm of the Defendant AHM, no further communication or request to settle has been received or directed to Plaintiff.

111.    As a result of Defendant AHM's breach of the covenant of good faith and fair dealing, Plaintiff has suffered and will continue to suffer actual harm in the loss of his rights and actual monetary damages.

## COUNT 15 DECLARATORY JUDGMENT

112.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 111 as though fully set forth herein.

113.    It would be unfair and inequitable for any party who used this bankruptcy to protect themselves from liabilities or assisted others in protecting themselves from liabilities, to retain the fruits of the fraud.

114.  Plaintiff has repeatedly requested documents and communications from the Defendants so as to assert his rights under the law.  Defendants have fraudulently concealed such requests by fabricating responses and by outright refusal.

115.    Plaintiff requests a declaratory judgment that these Defendants claims are subordinated to Plaintiff's claim due to inequitable conduct and unfair advantage acting as insiders of this

bankruptcy and the misconduct complained of herein.

116.    Plaintiff requests a declaratory judgment and order that these Defendants produce all notes, communications, documents produced by them and between them relating to Plaintiff's claim.

117.    As a result of the unlawful actions and bad faith of the Defendant's AHM, Michael Strauss and Wells Fargo, Plaintiff has suffered and will continue to suffer actual monetary damages.

## COUNT 16 ADMINISTRATIVE PRIORITY CLAIM

118.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 117 as though fully set forth herein.

119.    Plaintiff asserts that his proof of claim should be elevated to priority status as substantial misconduct by way of their written agreement to settle in good faith, and violation of this Court's October 10, 2008 Order and lying during negotiations at settlement did occur post petition, while using the bankruptcy court for cover.

120.    By using the D&O policies to settle other misconduct claims against Defendant's AHM and Michael Strauss, post petition, to the exclusion of Plaintiff's claim, Defendant's wrongfully enriched themselves to the detriment of the Plaintiff.

121.    Because of Defendant's unlawful actions post petition, Plaintiff has suffered and will continue to suffer actual harm in the loss of his rights and actual monetary damages.

## COUNT 17 CONSTRUCTIVE TRUST

122.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 121 as though fully set forth herein.

21

123. Because Defendant's have wrongfully acquired funds through fraud and other wrongdoing as alleged above and documented with the attached exhibits, these funds should be treated as it is held in trust by the trustee for the benefit of the party wronged.

124. The findings of the State of Florida Office of Financial Regulation collaterally estops the Defendant's from claiming that the excess monies they received and continue to receive are lawfully obtained. See exhibit D.

125. As a consequence of the Defendants' actions, the Court should impose a constructive trust in favor of the plaintiff on all funds which are the subject of his claim.

## COUNT 18 UNJUST ENRICHMENT

126. Plaintiff repeats and realleges each allegation in paragraphs 1 through 125 as though fully set forth herein.

127. Because Defendant's have wrongfully acquired funds through fraud and other wrongdoing as alleged above and documented with the attached exhibits, Defendants are enriching themselves with funds that rightfully belong to Plaintiff and his family

128. The findings of the State of Florida Office of Financial Regulation collaterally estops the Defendant's from claiming that the excess monies they received and continue to receive are lawfully obtained. See exhibit D.

129. As per the findings of the State of Florida Office of Financial Regulation, the Defendants know that they do not own the excess funds received from plaintiff every month by way of the fraudulent excess of the interest rate.

130. The Defendants have been unjustly enriched by the receipt of these funds.

131. In equity and good conscience, the Defendants should not be allowed to retain the funds

22

relating to the fraudulent excess charged pre-petition and currently being charged monthly post petition.

132.    Based on the foregoing, Plaintiff is entitled to an order directing the Defendants to disgorge the funds received from Plaintiff and all funds which are the subject of Plaintiff's claim.

**COUNT 19 CONVERSION**

133.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 132 as though fully set forth herein.

134.    Because Defendant's have wrongfully acquired funds through fraud and other wrongdoing as alleged above and documented with the attached exhibits, Defendants are enriching themselves with funds that rightfully belong to Plaintiff and his family.

135.    The findings of the State of Florida Office of Financial Regulation collaterally estops the Defendant's from claiming that the excess monies they received and continue to receive are lawfully obtained.  See exhibit D.

136.    As per the findings of the State of Florida Office of Financial Regulation, the Defendants know that they do not own the excess funds received from Plaintiff every month by way of the fraudulent excess of the interest rate.

137.    The Defendants have failed and refused to turnover all funds received by the Plaintiff which related to the fraudulent excess being charged to Plaintiff.

138.    By failing and refusing to comply with Plaintiffs demands to turnover all excess fraudulent funds received from Plaintiff, the Defendants have retained possession of such funds without authorization.

139.    By failing and refusing to comply with Plaintiffs demands to turnover all excess

23

fraudulent funds received from Plaintiff, the Defendants have exercised and assumed an
unauthorized right of ownership and control over property belonging to the Plaintiff.

140.    By failing and refusing to comply with Plaintiffs demands to turnover all funds received
by the Plaintiff, the Defendants have unlawfully converted property owned by Plaintiff, which
has caused injury to Plaintiff.

141.    In equity and good conscience, the Defendants should not be allowed to retain the funds
relating to the fraudulent excess charged pre-petition and currently being charged monthly post
petition.

### COUNT 20 UNIFORM FRAUDULENT TRANSFER ACT (UFTA)

142.    Plaintiff repeats and realleges each allegation in paragraphs 1 through 141 as though fully
set forth herein.

143.    The UFTA section 4 (A)(1)(b)(4) states that a transfer made or obligation incurred by a
debtor is fraudulent as to a creditor, whether the creditors claim arose before or after the transfer
was made or the obligation was incurred, if the debtor made the transfer or incurred the
obligation; (1) with actual intent to hinder, delay or defraud any creditor of the debtor.

144.    (b) In determining actual intent under subsection (a)(1), consideration may be given,
among other factors to whether: (4) before the transfer was made or obligation was incurred, the
debtor had been sued or **threatened with suit. Emphasis added**.

145.    Here, there can be no doubt that Defendant's AHM, Michael Strauss and Wells Fargo,
embarked upon a pattern of deceit and fraud by fabricating different accounts and scenarios all in
order to deprive the Plaintiff of his rights under the TILA and RESPA, and, failed to provide
Plaintiff with the information he requested in order to wrongfully and with actual intent to

24

hinder and, appropriate excess interest to which they were not entitled to.

146.    As this Court is aware, an unsecured creditor may pursue a fraudulent conveyance case claim against a debtors property post discharge consistent with 11 U.S.C. section 524. It is also well established that property wrongfully obtained by Defendants is not part of the debtors estate but properly belongs to the Plaintiff.

147.    Defendant Wells Fargo has a custom policy and practice of utilizing their Communications Department to engage in affirmative acts of concealment, deceit and bad faith so as to deprive customers of their rights under the law.

148.    As a result of the unlawful actions and bad faith of the Defendant's AHM, Michael Strauss and Wells Fargo, Plaintiff has suffered and will continue to suffer actual monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the relief requested herein against all Defendants:

A.    Finding the above mentioned claims to be subordinate to that of the Plaintiff's;

B.    Declare that the Plaintiff's claim is an Administrative priority due to the reasons set forth herein;

C.    A judgment against Defendants on all counts with monetary damages;

D.    For the declaratory relief requested;

E.    A declaration that the Defendants have and continue to be unjustly enriched by the fraudulent interest rate wrongfully obtained by Defendants,

F.    For the imposition of a constructive trust upon all funds that are the subject of this

25

complaint;

G.     An award of compensatory damages to the Plaintiff, including pre and post judgment

interest thereon;

H.     Payment of Plaintiff's fees and expenses against all Defendants in connection with this

adversary proceeding; and

I.     Such other further relief as this Court deems just and proper.

Dated:   March 18, 2011
         Apopka, Florida

                                        Respectfully submitted,



                                        _____

                                        Gil Quentin Alvarez
                                        Pro-se Plaintiff
                                        542 Mount Argyll Court
                                        Apopka, FL 32712
                                        Tel: 407-731-5670

26