# EXHIBIT A

 **American Home Mortgage**

## Executive Biographies

### Michael Strauss
### Chief Executive Officer

Mr. Strauss founded American Home Mortgage in 1987 and currently serves as Chairman of the Board of Directors, President and Chief Executive Officer. He is responsible for strategic directions as well as overseeing day-to-day operations. Mr. Strauss was previously the Vice President and Director of the Empire State Mortgage Bankers Association, and a member of a number of mortgage and advisory councils. He holds a B.A. in Business Administration from Washington University in St. Louis, Missouri.

### Ronald Bergum
### Executive Vice President, Western Retail Division

Mr. Bergum serves as Executive Vice President of the Western Retail Division. He joined American Home Mortgage through the acquisition of Marina Mortgage in December of 1999. Prior to the acquisition he served as President of Marina Mortgage, and earlier as Senior Vice President of Plaza Home Mortgage. Mr. Bergum is a licensed California real estate broker and holds a B.A. in Real Estate Financial Services from San Diego State University.

### Robert Bernstein
### Senior Vice President and Controller

Mr. Bernstein serves as the Company's Senior Vice President and Controller. Mr. Bernstein joined the Company in December 2002. Prior to that, he served as Chief Financial Officer of GreenPoint Mortgage. Mr. Bernstein has more than 15 years of experience in the thrift banking and mortgage banking sectors at GreenPoint Mortgage and GreenPoint Bank.

### Christopher J. Cavaco
### Executive Vice President and Chief Information Officer

Mr. Cavaco serves as Executive Vice President and Chief Information Officer. He joined American Home Mortgage in November 2000. He previously worked for MCI WorldCom Wireless as the Applications Development Manager and earlier as the Network and Systems Manager. Earlier in his career Mr. Cavaco was self-employed as an information systems consultant. He holds a B.B.A. in Finance from Hofstra University in New York, and is a Microsoft Certified Systems Engineer.

### Doug Douglas
### Executive Vice President, Business Processes

Mr. Douglas serves as Executive Vice President of Business Processes. He joined American Home Mortgage through the acquisition of Columbia National in June 2002. He has responsibilities in technology and business processes. Mr. Douglas formerly served as the CFO and technology leader at Columbia National. He has also worked in secondary marketing, commercial and multi-family loan origination, and as the President of a publicly-traded mortgage Real Estate Investment Trust. Mr. Douglas is a graduate of Antioch College in Ohio.

## Thomas Fiddler
## Executive Vice President, Eastern Retail Division

Mr. Fiddler serves as Executive Vice President for the Eastern Retail Division. He joined American Home Mortgage through the acquisition of First Home Mortgage in June 2000, where he served as Executive Vice President of First Home. Mr. Fiddler previously worked as a branch manager, area manager, and owner of a mortgage broker firm. He is a graduate of Wheaton College in Illinois.

## Mark Filler
## Executive Vice President, Mergers and Acquisitions

Mr. Filler serves as Executive Vice President of Mergers and Acquisitions. He joined American Home Mortgage in January 2003. He manages all matters related to acquiring new companies. Mr. Filler previously served as President and CEO of Prism Financial Corporation. He holds a B.A. from the University of Michigan and J.D. from Harvard Law School.

## Kathleen Heck
## Executive Vice President, Eastern Retail Division

Ms. Heck serves as Executive Vice President for the Eastern Retail Division. She joined American Home Mortgage in October 2004 from Washington Mutual where she was Senior Vice President and Area Sales Manager. Prior to that, Ms. Heck assumed the roles of Producing Manager, Branch Manager, and District Manager for PNC Mortgage. Earlier in her career, she served as a Loan Officer with Sears Mortgage Corp. Ms. Heck has several degrees in Mathematics, Business and Education.

## Donald Henig
## President, Wholesale and DTC Division

Mr. Henig serves as President for the Wholesale and DTC Division. He joined American Home Mortgage in March 2001. He is responsible for the MortgageSelect.com, Wholesale and Consumer Direct divisions. Prior to joining the Company, Mr. Henig served as Senior Vice President at LoanTrader, Inc. He has served as the President of the National Association of Mortgage Brokers, and founded the New York Association of Mortgage Brokers. Mr. Henig holds a B.A. in Finance.

## Alan B. Horn
## Executive Vice President, General Counsel and Secretary

Mr. Horn serves as Executive Vice President, General Counsel and Secretary. He joined American Home Mortgage in January, 2003. He manages all legal matters for the company. Mr. Horn previously served as a shareholder, and Chair of the New York Financial Institutions practice at Greenberg Traurig, LLP. Previously, he served for 12 years as Senior Vice President, General Counsel, Chief Compliance Officer and Secretary for European American Bank in Uniondale, NY. He holds a B.A. from Syracuse University and a J.D. from Temple University School of Law.

## Stephen A. Hozie
## Executive Vice President and Chief Financial Officer

Mr. Hozie serves as Executive Vice President and Chief Financial Officer. He joined American Home Mortgage in March 2002. He previously served as acting CFO of Fleet Mortgage Corp. He has over fifteen years of financial management experience at mortgage companies and thrifts, and four years experience in public accounting at Touche Ross. Mr. Hozie holds a B.A. in Accounting from Northern Illinois University, and has passed the uniform Certified Public exam.

## John A. Johnston
## President, Western Retail Division

Mr. Johnston serves as President for the Western Retail Division. He joined American Home Mortgage through the acquisition of Marina Mortgage in December 1999. He has been a Director of American Home Mortgage since March 2000. Prior to the acquisition, Mr. Johnson served as the Chief Executive Officer of Marina Mortgage, and President of PPB Financial Affiliates. He is a licensed California real estate broker and holds a B.S. in Biological Sciences from the University of California at Irvine.

# EXHIBIT B

# Gil Alvarez
542 Mt. Argyll Ct.
Apopka, FL 32712

April 7, 2005

By Certified Mail Return Receipt Requested No.70041160000004188813

American Home Mortgage
Attn: Customer/Consumer Relations Department
Corporate Headquarters
520 Broadhollow Road
Melville, NY 11747

Re: American Home Mortgage Loan No. 1000769615; Qualified written request for
relief pursuant to Section 6 of the Real Estate Settlement Procedures Act (RESPA
12 U.S.C. 2605).

To Whom it May Concern,

I am writing to respectfully request that my loan not be sold or transferred from
American Home Mortgage to Wells Fargo bank, NA since I was the victim of
misrepresentation, fraud, and/or negligence in the processing of my loan request.

On February 2, 2005, my wife and I signed a contract for the sale and purchase
of a home in Apopka, Florida. Shortly thereafter, I spoke with your loan officer, Lynette
Warren and inquired about obtaining a loan from your company. Ms. Warren initially
quoted me a rate of 5.75%. After searching other companies I discovered that I could
obtain a loan for 5.25%. When I spoke to Ms. Warren, she indicated that she could
provide me with this very rate. I then told her that based upon her representation, I
would agree with her request to be "locked in" for a loan from American Home
Mortgage at 5.25%.

On several occasions, I spoke with Ms. Warren, who indicated that all was well
with my mortgage request and that we would be closing ahead of schedule since the
sellers wanted to sell their home quickly so that they could purchase another home.

On March 10, 2005, I was contacted by my real estate broker, who indicated to
me that my mortgage was 5.75%, I told the broker that this was incorrect since Ms.
Warren had represented that she had locked me in at 5.25%.

On March 10, 2005, Ms. Warren called me and apologized profusely, stating
that she "totally messed up" and "screwed up". Ms. Warren further indicated that this
was the first time in "24 years" that she failed to lock in a rate at the percentage agreed
to with a consumer. She also stated that in order for her to obtain the 5.75% rate that
she was currently offering she was giving up her commission and paying $136 of her
own funds. I asked Ms. Warren to put these facts in writing in order to document her
misrepresentation, fraud, and negligence in handling my account.

In an attempt to rectify this matter, Ms. Warren indicated that she would provide me with a letter with which I could obtain a $600 discount towards the purchase of my next home.

Ms. Warren committed misrepresentation, fraud, and negligence by deceiving me into believing that she had locked me in at a rate of 5.25%. I had numerous conversations with Ms. Warren in which we both contacted my previous employer and she never indicated that she had failed to lock in our agreed upon interest rate. I believe that the pathetic attempt by American Home Mortgage and Ms. Warren to compensate me $600 in lieu of the thousands of dollars in interest that I am forced now to pay as a result of this misconduct is improper and unlawful.

I have contacted the law firm of Bonita E. Zelman located at 2001 Marcus Avenue, Suite S150, Lake Success, NY 11042 to assist me in this matter. Their telephone number is 516-616-0707. Please direct all correspondence regarding this matter to my attorney with a copy sent to me at the above address. Please accept this letter as a qualified written request pursuant to section 6 of the Real Estate Settlement Procedures Act (RESPA 12 U.S.C. 2605). I hope that your company will rectify this wrongful failure to lock in the agreed upon interest rate committed against myself and my family in an amicable, correct, and expedient manner. Awaiting your reply, I remain,

Very truly yours,

Gil Alvarez

cc:   Wells Fargo Bank, NA
      Att: Mac #X2803-1C
      4800 W. Wabash Ave.
      Springfield, IL 62711
      By Certified Mail Return Receipt Requested No.70041160000004188820

American Home Mortgage
7142 Columbia Gateway drive
Columbia, MD 21046
By Certified Mail Return Receipt Requested No.70041160000004188837

Branch Manager
American Home Mortgage
7575 Dr. Philips Blvd.
Suite 365
Orlando, Fl 32819
By Certified Mail Return Receipt Requested No.70041160000004188844

LAW OFFICES OF

## *Bonita E. Zelman*

2001 MARCUS AVENUE
SUITE S150
LAKE SUCCESS, N.Y. 11042
516-616-0707
FAX: 516-616-0761

By Certified Mail Return Receipt Requested No. 70033110000138497188
April 11, 2005

Chairman Michael Strauss
President and CEO
American Home Mortgage
Corporate Headquarters
520 Broadhollow Road
Melville, NY 11747

Dear Chairman Strauss:

I have been retained by Gil Alvarez, a customer of American Home Mortgage who recently obtained a home loan through your company. Mr. Alvarez entered into an agreement with your loan officer, Lynette Warren, to lock him in on a home mortgage rate of 5.25%. Ms. Warren had first quoted Mr. Alvarez the rate of 5.75% but when he told her another mortgage company had quoted at the rate of 5.25%, Ms. Warren said she could meet that rate. Ms Warren then informed Mr. Alvarez that she had in fact locked him in at the rate of 5.25%. Unfortunately Ms. Warren then failed to lock in at the 5.25% rate. This misrepresentation and failure to act on the part of your loan officer has now cost Mr. Alvarez and his family a substantial monetary loss since he is now forced to pay at the much higher rate of 5.75%, amounting to thousands of dollars more in interest payments.

By a letter dated March 24, 2005 your company is transferring and or selling Mr. Alvarez's loan with American Home Mortgage to Wells Fargo Bank, NA.

I am writing to you to respectfully request that the transfer of this loan be rescinded since the interest rate was obtained in an unlawful manner. By having the transfer of this loan completed it will be difficult for your company to rectify its misconduct to Mr. Alvarez and his family. I am enclosing a copy of Mr. Alvarez's letter to your company, which contains the facts and circumstances of his interactions with the agents of your company.

Please contact me so that we can resolve this matter without the need for judicial intervention. I trust that your desire will be to rectify the unfair practices engaged in by members of your company. Thanking you in advance for your attention to this matter, I await your reply.

Very truly yours,

*Bonita E Zelman*

Bonita E. Zelman

*Bonita E. Zelman*
PAGE 2


BEZ/pm
enc.
cc:      Wells Fargo Bank (with enclosures)
         Att: Mac #X2803-1C
         4800 W. Wabash Ave.
         Springfield, IL 62711

LAW OFFICES OF

## *Bonita E. Zelman*

2001 MARCUS AVENUE
SUITE S150
LAKE SUCCESS, N.Y. 11042
516-616-0707
FAX: 516-616-0761

By Certified Mail Return Receipt Requested No. 70031680000558067404

April 13, 2005

Wells Fargo Bank, NA
Attn: MAC # X2803-1C
4800 W. Wabash Ave.
Springfield, IL 62711

Re: American Home Mortgage Loan No. 10000769615, transferred to Wells Fargo
Bank

To whom it may concern:

Enclosed please find a courtesy copy of a letter that I have mailed to Chairman
Michael Strauss of American Home Mortgage requesting that the sale and/or transfer of
Mr. Gil Alvarez's mortgage not be transferred to your company. Also enclosed is a copy
of a letter Mr. Alvarez sent to your company on April 7, 2005.

Please accept these letters as a qualified written request pursuant to section 6 of
the Real Estate Settlement Procedures Act (RESPA 12 U.S.C. 2605).

Thank you for your attention. I await your reply.

Very truly yours,

*Bonita E Zelman*
Bonita E. Zelman

BEZ/pm
enc.

Mr. Gil Alvarez
542 Mt. Argyll Ct.
Apopka, FL 32712

April 22, 2005

By Certified Mail Return Receipt Requested No. 70042890000232919198

Leesa Whitt-Potter
Vice President-Customer Operations
Wells Fargo Home Mortgage
P.O. Box 9337
Des Moines, IA 50306-9337

Re: Wells Fargo Home Mortgage No. 0197014558;
    American Home Mortgage Loan No. 1000769615;
    Qualified written request for relief pursuant to Section 6 of the Real Estate Settlement
    Procedures Act (RESPA 12 U.S.C. 2605).

Dear Vice President Leesa Whitt-Potter,

    Thank you for your letter dated March 30, 2005 indicating that my loan was being transferred to your company effective May 1, 2005. I am writing to you to respectfully request that Wells Fargo Home Mortgage not assume responsibility for this mortgage as I was the victim of misrepresentation, fraud, and/or negligence in the processing of my loan request.

    I retained the Law Office of Bonita Zelman to assist me in this matter. Ms. Zelman wrote to your company on April 13, 2005 but unfortunately her correspondence has not been answered. I am enclosing a copy of her correspondence to Wells Fargo Bank as well as my correspondence to American Home Mortgage and your company. As you can imagine, this ordeal has been extremely stressful. Please contact my attorney so that my family and I can be assured that this matter is being resolved. I trust that your desire will be to rectify this matter. Thanking you in advance for your attention to this matter, I await your reply.

Very truly yours,

Gil Alvarez

enc.



# American Home Mortgage
### The American Home Building
538 Broadhollow Road
Melville, NY 11747

Stephanie Alagna, Paralegal
Phone Number 631-622-6476
Fax Number 516-495-5418
Email: s.alagna@americanhm.com

**Sent UPS, overnight mail.**

**April 29, 2005**

Mr. Gil Alvarez
542 Mt. Argyll Ct.
Apopka, FL 32712

RE: Loan # 1000769615

Dear Mr. Alvarez:

I am writing this letter in response to the correspondence that I received on April 19, 2005 in reference to your loan.

You had previously brought the issues raised in your letter to the attention of Ms. Warren the loan officer on your account. At the time of closing you would accept the interest rate at 5.75% and a $600.00 credit on any future dealings with American Home Mortgage and proceeded with the closing. Ms. Warren also reduced her commission to maintain the rate of 5.75%.

Since you proceeded with the closing of your loan, you accepted the resolution of this matter.

Very truly yours,

Stephanie Alagna

WELLS FARGO
Wells Fargo Home Mortgage
PO Box 9337
Des Moines, IA 50306-9337

Phone#: (866) 234-8271
TTY Deaf/Hard of Hearing (800) 934-9998

| | |
|---|---|
| **Date:** | 03/30/05 |
| **Loan Number:** | 0197014558 |
| **Payment Due Date:** | 05/01/05 |
| **Payment Amount:** | $1,934.39 |

000377/PHP- 427

Gil Alvarez
Raquel Alvarez
542 Mt Argyll Court
Apopka FL 32712-4738

Dear Customer:

Welcome to Wells Fargo Home Mortgage. As you may know, your loan was recently transferred from American Home Mortgage. We would like to welcome you as a customer and assure you that our goal is to give you the highest level of quality service. Let us assure you that the transfer of your mortgage does not affect any of its terms or conditions other than terms directly related to the servicing of your loan. We are required by the Real Estate Settlement Procedures Act (RESPA) to notify you of this transfer (see the Notice of Assignment, Sale or Transfer of Servicing Rights on the reverse side of this letter).

The servicing of your loan will be transferred to us effective May 1, 2005. Your current payment is $1,934.39. Your first payment to Wells Fargo Bank, N.A. is due 05/01/05. Any payments due on your loan prior to the effective transfer date should be paid to the previous servicer. Soon you'll begin receiving in the mail a concise, easy-to-read monthly mortgage statement that includes a financial breakdown of your account.

If you would like the convenience of having your mortgage payment automatically deducted from your checking or savings account each month, call us at (866) 234-8271 to enroll. The Automatic Mortgage Payment Program is available to you at no cost. Relax knowing your payment will be on time, every time.

If your previous servicer had mortgage life, disability, or other optional insurance premiums included in your mortgage payment, we are sorry to inform you Wells Fargo Home Mortgage is currently unable to continue this service. If you wish to maintain your current optional insurance coverage, please contact your present insurer to make the necessary arrangements for continuation of your premium payments.

If you have any questions regarding the transfer from the previous servicer, please contact their Customer Service Department toll-free or collect at (800) 444-7963.

Once again, welcome to Wells Fargo Home Mortgage. We look forward to a long and successful relationship. If we may be of any assistance or if you have any questions concerning your mortgage loan, please contact our Customer Service Department Monday through Thursday 6 a.m. to 10 p.m., Friday 6 a.m. to 9 p.m. and Saturday 8 a.m. to 2 p.m., Central Time. Our toll-free number is (866) 234-8271. Send your written inquiries to the attention of Customer Service at Wells Fargo Home Mortgage, PO Box 10335, Des Moines, IA 50306-0335.

Sincerely,

Leesa Whitt-Potter

Leesa Whitt-Potter
Vice President
Customer Operations

Keep upper portion for your records.
Please mail us coupon at bottom on by the due date.

Gil Alvarez
Raquel Alvarez
542 Mt Argyll Court
Apopka FL 32712-4738

Loan Number  0197014558

Payment Due Date  05/01/05

Law Offices of
# BONITA E. ZELMAN
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel. No. (516) 616-0707
Fax: (516) 616-0761

By Certified Mail Return Receipt Requested No. 7003 3110 0001 3849 7201

May 10, 2005

Chairman Michael Strauss
President and CEO
American Home Mortgage
Corporate Headquarters
520 Broadhollow Road
Melville, NY 11747

Re: American Home Mortgage Loan No. 10000769615

Dear Chairman Strauss:

I am in receipt of a letter sent to my client, Gil Alvarez, by your company dated April 29, 2005. I am writing to you because your company was required to respond to the qualified written request forwarded to your company and my correspondence to you of April 11, 2005. Instead, what my client received was an unresponsive letter which:

a) Did not address the issues which he raised in his qualified written request;

b) Acknowledged that he raised the misconduct issues at the time of closing but fails to say what if any disciplinary action would be taken against Ms. Warren or what corrective action your company will take to rectify the matter;

c) Misrepresents that Mr. Alvarez accepted the interest rate of 5.75% in exchange for a $600.00 credit. Mr. Alvarez, a retired and respected New York City Police Sergeant, emphatically denies that he ever agreed or requested the $600.00 credit. Indeed, Mr. Alvarez had no plans to purchase another property or refinance. Additionally, nowhere on the credit does it say that Mr. Alvarez accepted the terms. What it does state is that Mr. Alvarez wanted to make changes to the Mortgage Note because of the miscalculation of interest rate and that he was denied the opportunity;

d) Fails to indicate whether American Home Mortgage will address and rectify the admitted miscalculation of interest rate.

Please be further advised that once my client appeared in this matter through counsel, all communications are to be through counsel. The letter was wrongfully addressed to my client when your company was on notice that he was represented by counsel. Please advise your legal department that all future communication on this matter is to be through this law office.

I am writing directly to you once again in an attempt to settle this matter and obtain some form of satisfaction for my client without the need for judicial intervention. Please contact me

directly or have your chief counsel contact me so that we can resolve this matter fairly and expeditiously. It is not in either parties interest to have this matter prolonged by litigation since according to your April 29, 2005 letter, your loan officer, Ms. Warren acknowledged that she deprived Mr. Alvarez of the benefit of the lower interest rate in miscalculating the rate. We trust that as CEO of such a large, reputable mortgage company you will accept responsibility for the error of your representative and take measures to rectify the situation.

Thank you in advance for your personal attention to this matter.

Very truly yours,

*Bonita E Zelman*

Bonita E. Zelman

cc: Gil Alvarez
Wells Fargo Bank

Law Offices of
**BONITA E. ZELMAN**
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel. No. (516) 616-0707
Fax: (516) 616-0761

By Certified Mail Return Receipt Requested No. 7003 1680 0005 5806 7497

May 10, 2005

Leesa Whitt-Potter
Vice President-Customer Operations
Wells Fargo Home Mortgage
P.O. Box 9337
Des Moines, IA 50306-9337

Re: American Home Mortgage No. 1000769615

Dear Vice President Whitt-Potter

Enclosed please find a courtesy copy of a letter written to Chairman Michael Strauss of American Home Mortgage. Mr. Alvarez's mortgage payment for the month of May has been sent to American Home Mortgage and he will continue to send them there until there is a satisfactory resolution to this matter.

I would expect that your company will lend assistance in the resolution of this matter. If you have any questions please do not hesitate to contact me.

Thank you for your attention. I await your reply.

Very truly yours,

Bonita E. Zelman

enc.



Wells Fargo Home Mortgage
1 Home Campus
Des Moines, IA 50328-0001

May 25, 2005

Ms. Bonita Zelman
2001 Marcus Avenue
Suite S150
Lake Success, NY 11042

Re:    Wells Fargo Home Mortgage ("WFHM") Loan Number 0197014558
       Your Client's Name:  Gil Alvarez

Dear Ms Zelman:

This letter is in response to your correspondence dated April 13, 2005 addressed to Wells
Fargo Bank.  You had requested that Mr. Alvarez' loan not be service transferred to
WFHM because of a dispute with American Home Mortgage regarding the rate that Mr.
Alvarez received.

Enclosed is a copy of the letter from  American Home Mortgage confirming that the rate
of 5.75% is accurate and WFHM will continue to service Mr. Alvarez' loan in accordance
with these terms.

If you have further questions, please contact Ms. Alagna at (631) 622-6476.  WFHM
apologizes for any inconvenience this may have caused.

Sincerely,

John R Petermeier
Executive Communications Coordinator
Wells Fargo Home Mortgage
(800) 840-5812

Enclosure:    American Home Mortgage letter

Law Offices of
**BONITA E. ZELMAN**
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel. No. (516) 616-0707
Fax: (516) 616-0761

By Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2011

May 27, 2005

Leesa Whitt-Potter
Vice President-Customer Operations
Wells Fargo Home Mortgage
P.O. Box 9337
Des Moines, IA 50306-9337

Re: American Home Mortgage Loan No. 10000769615

Dear Vice President Whitt-Potter,

    I am writing to you to thank you for having Mr. John Petermeyer contact me with regards to the above mentioned mortgage. I have tried to get American Home Mortgage to contact me to no avail. I have again written to Chairman Strauss in an attempt to settle this matter. Enclosed is a courtesy copy of a letter I mailed indicating that your company has contacted me, is looking into the matter, and requesting his assistance in settling this matter.

    Again I look forward to the assistance your company will lend in the resolution of this matter. Thank you in advance for your personal attention to this matter.

Very truly yours,

*Bonita E Zelman*

Bonita E. Zelman

cc: Gil Alvarez
    American Home Mortgage

Law Offices of
**BONITA E. ZELMAN**
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel. No. (516) 616-0707
Fax: (516) 616-0761

By Certified Mail Return Receipt Requested No. 7003 3110 0001 3849 7355

May 27, 2005

Chairman Michael Strauss
President and CEO
American Home Mortgage
Corporate Headquarters
520 Broadhollow Road
Melville, N.Y. 11747

Re: American Home Mortgage Loan No. 10000769615

Dear Chairman Strauss,

I am writing to you to once again because I have not received a response to my letter dated May 10, 2005 (a copy of which is enclosed for easy reference). I wrote to Leesa Whitt-Potter of Wells Fargo Home Mortgage (a copy of which is also enclosed for your review), and she was kind enough to have Mr. John Petermeyer of Executive Resolutions for Wells Fargo Home Mortgage contact me. Mr. Petermeyer has indicated that a vice-president of Wells Fargo Home Mortgage would be working with American Home Mortgage to resolve this matter. He further indicated that they would like to resolve this matter and suggested that I contact you so that together we can settle this matter. Unfortunately, to date, I have not had the pleasure of speaking with you.

I am writing to you once again in an attempt to settle this matter. Please contact me directly or have your chief counsel contact me with directions from you so that we can resolve this matter fairly and expeditiously. I have directed Mr. Alvarez to continue to make his payments to American Home Mortgage until there is a satisfactory resolution to this matter. I have communicated this fact to Wells Fargo Home Mortgage.

Thank you in advance for your personal attention to this matter.

Very truly yours,

Bonita E. Zelman

cc: Gil Alvarez
    Wells Fargo Home Mortgage

TRANSMISSION VERIFICATION REPORT

```
                              TIME : 06/01/2005 17:27
                              NAME : BONITA E ZELMAN ESQ
                              FAX  : 212-587-0828
                              TEL  : 212-587-0707
```

```
DATE,TIME                06/01  17:15
FAX NO./NAME             15152137377
DURATION                 00:11:50
PAGE(S)                  08
RESULT                   OK
MODE                     FINE
                         ECM
```

LAW OFFICES OF

## Bonita E. Zelman

2001 MARCUS AVENUE, SUITE S150
LAKE SUCCESS, NEW YORK 11042
(516) 616-0707
FAX: (516) 616-0761

# FACSIMILE TRANSMISSION

| |
|---|
| **Date: June 1, 2005** |
| **To:  Mr. John Petermeier** |
| **Fax No.:  (515) 213-7377** |
| **From:   Bonita E. Zelman** |
| **Re:  American Home Mortgage No. 10000769615** |
| **Number of Pages: (  8  ) including cover page.** |

**Message:**

Please see annexed correspondence and attachements.

Law Offices of
**BONITA E. ZELMAN**
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel. No. (516) 616-0707
Fax: (516) 616-0761

By facsimile to (515) 213-7377

Mr. John R. Petermeier
Executive Communications Coordinator
Wells Fargo Home Mortgage
1 Home Campus
Des Moines, IA 50328-0001

Re: American Home Mortgage No. 10000769615

Dear Mr. Petermeier,

Thank you for taking my call to discuss the unfortunate circumstances surrounding Gil Alvarez's negative interactions with American Home Mortgage. I have investigated your questions to me based upon the misrepresentations made to Wells Fargo Home Mortgage by American Home Mortgage and respond with the following:

1) Based on Ms. Warren's representation that she had locked in Mr. Alvarez at a rate of 5.25%, Mr. Alvarez signed a binding obligation to purchase a home. When he appeared for closing, Ms. Warren stated that she had made a terrible mistake and failed to lock him in at the 5.25% rate. Ms. Warren had plenty of opportunity to inform Mr. Alvarez prior to closing that she had failed to lock-in the 5.25% rate. Ms. Warren on the day of closing, unilaterally signed her own document saying Mr. Alvarez could have $600.00 toward the purchase of another home, which is ridiculous since he was not purchasing another home. If Mr. Alvarez had elected not to purchase the home, he would have been subject to legal action from the seller who was purchasing a home on that very day in Tampa.

2) The fact that Mr. Alvarez's account is the truthful version is clear from American Home Mortgage's failure to deny that Ms. Warren agreed to lock in the lower rate of 5.25%, which must be construed as an admission on their part.

3) A further admission on their part is in American Home Mortgage telling Wells Fargo Home Mortgage a complete falsehood that Mr. Alvarez's father-in-law used the $600.00 credit.

We ask that you conduct a full investigation which would mandate your requiring a response from American Home Mortgage as to why Ms. Warren waived her fee and unilaterally issued a $600.00 credit and the proof that my client's father-in-law used the $600.00 credit. I can assure you that there will be no such proof, which should indicate to you American Home

Mortgage's complicity in the fraud committed against Mr. Alvarez by Ms. Warren. which I trust Wells Fargo Home Mortgage wants no part of. Accordingly, we ask that Wells Fargo intercede in this matter to rectify the unfair practice of American Home Mortgage by requesting that American Home Mortgage reduce the rate to 5.25% as represented to Mr. Alvarez.

Again I look forward to the assistance your company will lend in the resolution of this matter. Thank you again for your personal attention to this matter.

Very truly yours,

Bonita E Zelman

Bonita E. Zelman

BEZ/jk
enclosures

# American Home Mortgage

The American Home Building
538 Broadhollow Road
Melville, NY 11747

Stephanie Alagna, Paralegal
Phone Number 631-622-6476
Fax Number 516-495-5418
Email: s.alagna@americanhm.com

June 2, 2005

Bonita E. Zelman, Esq.
2001 Marcus Avenue   Suite S150
Lake Success, New York 11042

RE:  American Home Mortgage Loan No.  1000769615

Dear Ms. Zelman:

This is to acknowledge the fact that I received your letter today that is dated May 27, 2005.

I will be working on this file and will have a response back to you by June 16th, 2005.

If you have any questions, please contact me at 631 622 6476.

Very truly yours,

Stephanie Alagna

*No response received*

Law Offices of
## BONITA E. ZELMAN
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel: (516) 616-0707
Fax: (516) 616-0761

By facsimile to (515) 213 7377 and
  Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2035

June 21, 2005

Leesa Whitt-Potter
Vice President-Customer Operations
Wells Fargo Home Mortgage
1 Home Campus
Des Moines, IA 50328-0001

Re: Gil Alvarez, American Home Mortgage No. 10000769615

Dear Vice President Leesa Whitt-Potter,

    I am writing to you once again concerning Gil Alvarez, a customer of American Home Mortgage (AHM) whose company has attempted to have you service a fraudulently obtained mortgage. On June 1, 2005 I spoke with Mr. John Petermeier of your company who asked me to investigate some questions he had concerning the above mentioned mortgage. Enclosed find the letter sent to Mr. Petermeier for your review.

    On June 2, 2005 I was contacted by AHM who indicated that they will have a response to the numerous letters I mailed to Chairman, President and CEO Michael Strauss ( See enclosure). As has been the custom of AHM, to date, I have not received a response to my letters or more importantly to the "qualified written request" submitted on April 7, 2005 by my client to AHM.

    I am submitting my last letter to Chairman Strauss requesting that we settle this matter (See enclosure). If I do not receive a response within three (3) business days, I will have no choice but to file a formal complaint with the Florida Department of Financial Services Office of Consumer Financial Affairs.  As you are aware, the Department has the authority to issue administrative actions and seek injunctive relief against violators of Florida Statutes.  Any action taken by the above agency will only complement any private causes of action taken we intend to take on behalf of Mr. Alvarez.  I believe that AHM cannot and will not treat the State Department inquiries with the same disdain and indifference that they have treated Mr. Alvarez.

Page 2, Wells Fargo Home Mortgage

    Again I look forward to the assistance your company will lend in the resolution of this matter. Thank you in advance for your and Mr. Petermeier's personal attention to this matter.

                               Very truly yours.

                               Bonita E. Zelman

cc: Gil Alvarez

Law Offices of
# BONITA E. ZELMAN
2001 Marcus Avenue-Suite S150
Lake Success. New York 11042
Tel: (516) 616-0707
Fax: (516) 616-0761

By Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2042

June 21, 2005

Chairman Michael Strauss
President and CEO
American Home Mortgage
Corporate Headquarters
520 Broadhollow Road
Melville. New York 11747

Re: Gil Alvarez, American Home Mortgage No. 10000769615

Dear Chairman Strauss,

Please be advised that this letter is my final attempt to receive satisfaction from your company, American Home Mortgage (AHM), for the fraudulent misrepresentation of your loan officer to my client Gil Alvarez. As you must be well aware, based on my previous letters to you, Lynette Warren, failed to lock in Mr. Alvarez's home mortgage at the 5.25% rate she quoted him forcing him into a 5.75% mortgage rate to his extreme and costly detriment. Unfortunately, neither you nor AHM has taken my complaint letters and/or the "qualified written request" seriously, and to date, I have not received a response.

This letter is written as my last attempt to settle this matter. In the event I do not receive a response within three (3) business days from your receipt of this letter, I will be compelled, as a last resort, to file a formal complaint with the Florida Department of Financial Services Office of Consumer Financial Affairs. As you are aware, the Department has the authority to issue administrative actions and seek injunctive relief against violators of Florida Statutes. Any action taken by the above agency will only complement any private causes of action we intend to take on behalf of Mr. Alvarez. I believe that AHM cannot and will not treat the State's inquiries with the same disdain and indifference that you have treated Mr. Alvarez.

Again, please contact me directly or have your chief counsel contact me with directions from you so that we can resolve this matter fairly. In thirty years of practicing law, I have never encountered a firm who like AHM, has refused to accept responsibility for the admitted misconduct of its employee and take measures to rectify the situation.

Page 2. American Home Mortgage

Thank you in advance for your personal attention and response in this regard.

Very truly yours,

*Bonita E Zelman*

Bonita E. Zelman

cc: Gil Alvarez
     Wells Fargo Home Mortgage

**Law Offices Of**
**Bonita E. Zelman**
**2001 Marcus Avenue**
**Suite S150**
**Lake Success, N.Y. 11042**
**516-616-0707**
**FAX: 516-616-0761**

By Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2134

July 7, 2005

Department of Financial Services
Division of Consumer Services
Office of Consumer Financial Affairs
200 E. Gaines Street
Tallahassee, Florida 32399-0362

Re: Consumer Gil Alvarez's Complaint against American Home Mortgage

To whom it may concern:

     I am writing to you concerning Gil Alvarez, a consumer of the State of Florida and a customer of American Home Mortgage (AHM) who recently obtained a home loan with their company. Mr. Alvarez entered into an agreement with a loan officer of AHM, Lynette Warren, to lock him in on a home mortgage rate of 5.25%. Ms. Warren had first quoted Mr. Alvarez the rate of 5.75% but when he told her that another mortgage company had quoted the rate of 5.25%, Ms. Warren said she could meet that rate. Ms. Warren then informed Mr. Alvarez that she had in fact locked him in at the rate of 5.25%. Unfortunately, Ms. Warren then failed to lock in at the 5.25% rate.

     On the day before the closing, Ms. Warren called Mr. Alvarez and admitted to him that she "totally messed up" and "screwed up" in that she failed to lock him into the 5.25% interest rate she initially quoted. Ms. Warren also informed Mr. Alvarez that in order to obtain the 5.75% rate that she was currently offering she had to give up her commission and pay $136 of her own funds. Mr. Alvarez asked Ms. Warren to put these facts in writing in order to document her fraud, misrepresentation and negligence. On the day of closing Mr. Alvarez wanted to make changes on the mortgage note and was told that he could not do so. In a futile attempt to reconcile her own wrongdoing, Ms. Warren then unilaterally signed her own document saying Mr. Alvarez could have $600.00 toward the purchase of another home and stating that she issued the letter "because of [her] miscalculation of interest rate" (See enclosure). Mr. Alvarez at no time requested or accepted this $600.00 credit and he was never even considering purchasing another home. If Mr. Alvarez had elected not to purchase the home, he would have been subject to legal action from the seller who was purchasing a home on that very day in Tampa.

Office of Consumer Financial Affairs
July7, 2005
Page 2

On March 24, 2005 AHM notified Mr. Alvarez that they are selling Mr. Alvarez's loan to Wells Fargo Bank, N.A.

On April 7, 2005 Mr. Alvarez filed a "Qualified Written Request" for relief pursuant to section 6 of the Real Estate Settlement Procedures Act (RESPA 12 U.S.C. 2605). As you are aware, under RESPA, AHM was required to conduct an investigation and provide the borrower with a written explanation to include what if any corrective action would be taken. Mr. Alvarez filed "Qualified Written Requests" with both AHM and Wells Fargo Home Mortgage requesting that the transfer/sale of his mortgage not be completed and raised the above mentioned issues (See enclosures).

Despite numerous letters to Chairman Michael Strauss of AHM, no suspension of the transfer pending the investigation was undertaken, nor was any investigation undertaken. The only response Mr. Alvarez received was essentially a "drop dead, too bad" letter dated April 29, 2005 (See enclosure). While I have been in communication with Wells Fargo Home Mortgage, AHM has refused to discuss this matter, interview Mr. Alvarez, or review the paperwork we have submitted to you as an enclosure regarding Ms. Warren's misconduct in this matter.

On June 2, 2005 I was contacted by AHM who indicated that they will have a response to the numerous letters I mailed to Chairman, President and CEO Michael Strauss ( See enclosures). As has been the custom of AHM, to date, I have not received a response to my letters or more importantly to the "qualified written request" submitted on April 7, 2005 by my client to AHM.

More incredible, are the outright lies AHM is communicating to Wells Fargo Home Mortgage in an attempt to have them service this fraudulently obtained mortgage. Mr. John R. Petermeier informed me on June 1, 2005 that AHM had indicated to them that Mr. Alvarez's father-in-law used the $600.00 credit. This is a complete falsehood and is shocking considering that this is done with respect to a RESPA investigation on the part of Wells Fargo Home Mortgage.

I believe that because of the misconduct by AHM in (1) failing to lock in the 5.25% rate after they agreed to do so and (2) in refusing to adhere to the requirements of RESPA by failing to conduct an investigation, failing to meet or interview Mr. Alvarez to review his paperwork and properly address his complaint and by lying to another financial institution who was trying to investigate this matter, mandates that AHM be compelled to rewrite the mortgage loan adhering to the 5.25% interest they agreed to lock in or return the excess interest amount my client is now wrongfully forced to pay. I further believe that AHM's refusal to investigate consumer complaints and lying on RESPA investigations requires that you suspend their right to do business in your State pending the outcome of your inquiry. Furthermore, Ms. Warren's right to use her license should be suspended pending a review of whether she is qualified to practice given her misconduct and negligence in this matter and in the practice of obtaining interest rates in general.

Enclosed please find all of our communications to AHM and Wells Fargo Home Mortgage. While Wells Fargo Bank has been in steady communication with me regarding the unfortunate circumstances noted above, AHM has refused to do so. With regards to my June 21,

Office of Consumer Financial Affairs
July 7, 2005
Page 3

2005 letter, I received a call from Stephanie Alagna of AHM, who inquired as to what Mr. Alvarez was looking for. I informed her that Mr. Alvarez only wanted the 5.25% interest rate that was represented to him. Although Ms. Alagna stated that she would respond in writing, we have not received any such response. I believe that AHM cannot and will not treat your inquiries with the same disdain and indifference that they have treated Mr. Alvarez.

Thanking you in advance for your attention to this matter, I await your reply.

Very truly yours,

Bonita E. Zelman

BEZ/pm
encs.
cc: Gil Alvarez

**Law Offices Of**
# Bonita E. Zelman
**2001 Marcus Avenue**
**Suite S150**
**Lake Success, N.Y. 11042**
**516-616-0707**
**FAX: 516-616-0761**

By Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2158

July 7, 2005

Director, Office of RESPA and Interstate Land Sales
US Department of Housing and Urban Development
Room 9154
451 7th Street, SW
Washington, DC 20410

Re: Customer Gil Alvarez's RESPA Complaint against American Home Mortgage

To whom it may concern:

     I am writing to you concerning Gil Alvarez, a customer of American Home Mortgage (AHM) who recently obtained a home loan with their company. Mr. Alvarez entered into an agreement with a loan officer of AHM, Lynette Warren, to lock him in on a home mortgage rate of 5.25%. Ms. Warren had first quoted Mr. Alvarez the rate of 5.75% but when he told her that another mortgage company had quoted the rate of 5.25%, Ms. Warren said she could meet that rate. Ms. Warren then informed Mr. Alvarez that she had in fact locked him in at the rate of 5.25%. Unfortunately, Ms. Warren failed to lock in at the 5.25% rate.

     On the day before the closing, Ms. Warren called Mr. Alvarez and admitted to him that she "totally messed up" and "screwed up" in that she failed to lock him into the 5.25% interest rate she initially quoted. Ms. Warren also informed Mr. Alvarez that in order to obtain the 5.75% rate that she was currently offering she had to give up her commission and pay $136 of her own funds. Mr. Alvarez asked Ms. Warren to put these facts in writing in order to document her fraud, misrepresentation and negligence. On the day of closing Mr. Alvarez wanted to make changes on the mortgage note and was told that he could not do so. In a futile attempt to reconcile her own wrongdoing, Ms. Warren then unilaterally signed her own document saying Mr. Alvarez could have $600.00 toward the purchase of another home and stating that she issued the letter "because of [her] miscalculation of interest rate" (See enclosure). Mr. Alvarez at no time requested or accepted this $600.00 credit and he was never even considering purchasing another home. If Mr. Alvarez had elected not to purchase the home, he would have been subject to legal action from the seller who was purchasing a home on that very day in Tampa.

Director, Office of RESPA and Interstate Land Sales
July 7, 2005
Page 2

On March 24, 2005 AHM notified Mr. Alvarez that they are selling Mr. Alvarez's loan to Wells Fargo Bank, N.A.

On April 7, 2005 Mr. Alvarez filed a "Qualified Written Request" for relief pursuant to section 6 of the Real Estate Settlement Procedures Act (RESPA 12 U.S.C. 2605). As you are aware, under RESPA, AHM was required to conduct an investigation and provide the borrower with a written explanation to include what if any corrective action would be taken. Mr. Alvarez filed "Qualified Written Requests" with both AHM and Wells Fargo Home Mortgage requesting that the transfer/sale of his mortgage not be completed and raised the above mentioned issues (See enclosures).

Despite numerous letters to Chairman Michael Strauss of AHM, no suspension of the transfer pending the investigation was undertaken, nor was any investigation undertaken as was required by RESPA. The only response Mr. Alvarez received was essentially a "drop dead, too bad" letter dated April 29, 2005 (See enclosure). While I have been in communication with Wells Fargo Home Mortgage, AHM has refused to discuss this matter, interview Mr. Alvarez, or review the paperwork we have submitted to you as an enclosure regarding Ms. Warren's misconduct in this matter.

On June 2, 2005 I was contacted by AHM who indicated that they will have a response to the numerous letters I mailed to Chairman, President and CEO Michael Strauss ( See enclosures). As has been the custom of AHM, to date, I have not received a response to my letters or more importantly to the "qualified written request" submitted on April 7, 2005 by my client to AHM.

More incredible, are the outright lies AHM is communicating to Wells Fargo Home Mortgage in an attempt to have them service this fraudulently obtained mortgage. Mr. John R. Petermeier informed me on June 1, 2005 that AHM had indicated to them that Mr. Alvarez's father-in-law used the $600.00 credit. This is a complete falsehood and is shocking considering that this is done with respect to a RESPA investigation on the part of Wells Fargo Home Mortgage.

I believe that because of the misconduct by AHM in (1) failing to lock in the 5.25% rate after they agreed to do so; (2) in intentionally misleading Mr. Alvarez until right before closing that his mortgage rate of 5.25% was locked-in; (3) in refusing to adhere to the requirements of RESPA by failing to conduct an investigation, failing to meet or interview Mr. Alvarez to review his paperwork and properly address his complaint and (4) by lying to another financial institution who was trying to investigate this matter, mandates that AHM be compelled to rewrite the mortgage loan adhering to the 5.25% interest they agreed to lock in or return the excess interest amount my client is now wrongfully forced to pay. I further believe that AHM's intentional refusal to investigate consumer complaints and lying on RESPA investigations requires that you apply the strongest administrative sanctions you can to prevent AHM and/or other banks from engaging in this type of misconduct. Furthermore, Ms. Warren's right to use her license should be suspended pending a review of whether she is qualified to practice given her misconduct and negligence in this matter and in the practice of obtaining interest rates in general.

Enclosed please find all of our communications to AHM and Wells Fargo Home Mortgage. While Wells Fargo Bank has been in steady communication with me regarding the

Director, Office of RESPA and Interstate Land Sales
July 7, 2005
Page 3

unfortunate circumstances noted above, AHM has refused to do so.  With regards to my June 21, 2005 letter, I received a call from Stephanie Alagna of AHM, who inquired as to what Mr. Alvarez was looking for.  I informed her that Mr. Alvarez only wanted the 5.25% interest rate that was represented to him.  Although Ms. Alagna stated that she would respond in writing, we have not received any such response.    I believe that AHM cannot and will not treat your inquiries with the same disdain and indifference that they have treated Mr. Alvarez.

Thanking you in advance for your attention to this matter, I await your reply.


Very truly yours,

*Bonita E Zelman*

Bonita E. Zelman


BEZ/pm
encs.
cc: Gil Alvarez

# American Home Mortgage

### The American Home Building
### 538 Broadhollow Road
### Melville, NY 11747

Stephanie Alagna, Paralegal
Phone Number 631-622-6476
Fax Number 516-495-5418
Email: s.alagna@americanhm.com

July 11, 2005

Bonita E. Zelman, Esq.
2001 Marcus Avenue – Suite S150
Lake Success, New York 11042

**RE: Gil Alvarez, American Home Mortgage No. 1000769615**
   **542 Mt. Argyll Ct.  Apopka, FL 32712**

Dear Ms. Zelman:

I am sorry for the delay in my response to you on the above referenced file; the following is the information that I have on this situation.

Enclosed please find a form signed by Lynette M. Warren, and given to Mr. & Mrs. Alvarez at the closing. The additional wording on this form was requested by Mr. Alvarez and was added by Ms. Warren. The form was also notarized. After speaking to Ms. Warren, she advised me of the following:

   a. This loan started with a pre-approval in early February.
   b. On February 14th rates were reviewed with Mr. Alvarez. The rates that were available were 5.75% with 0 points and we had 5.25% with .50 point. He said he would think it over and get back to me. He did and he did want to lock in the rate of 5.75% with 0 points.
   c. Somehow this is where the problem started and the rate was not locked.
   d. There was never any signed lock-in agreement and no lock in fee was sent to us.
   e. February 28th the appraisal came in at $341,000.00 with the sales price at $350,000.00. Mr. Alvarez was not happy and it was unclear if Mr. Alvarez was going to continue with the transaction.
   f. A few days before the contract was due to expire the seller and buyer renegotiated the price and at that time the rate was locked in at 5.75% and Ms. Warren paid the .50% point to lock in the rate and also the .125% for a 15 day lock.
   g. We notified Mr. Alvarez of the different lock options at that time; he agreed to take the 5.75% with 0 points to him.   I faxed him proof that he was not paying anything.
   h. This was the time that we agreed on the certificate and I advised him if the rates dropped again we would refinance his loan and give him $600.00 credit he agreed.

As you can see we did discuss the issue of the rate with Mr. and Mrs. Alvarez on several occasions. The loan was locked in and the customer was advised before the date of the closing. If Mr. Alvarez was unhappy with the details of his loan he could have cancelled his application and not closed.

Very truly yours,

Stephanie Alagna

**WELLS FARGO HOME MORTGAGE**

Wells Fargo Home Mortgage
1 Home Campus
Des Moines, IA 50328-0001

July 18, 2005

Ms. Bonita Zelman
2001 Marcus Avenue
Suite S150
Lake Success, NY 11042

Re:     Wells Fargo Home Mortgage ("WFHM") Loan Number 0197014558
        Office of the Comptroller of Currency ("OCC") Case Number 576532
        Your Client's Name:  Gil Alvarez

Dear Ms Zelman:

This letter is in response to your correspondence dated July 11, 2005 addressed to the OCC and forwarded to the WFHM Executive Resolution department on July 14, 2005. In your letter, you have stated the originating lender, American Home Mortgage ("AHM"), and yourself entered into a contractual agreement whereas you signed all the loan documentation after becoming aware the loan documents were the same as previously examined.  You also stated you had requested your loan not be service transferred to WFHM because of a dispute with American Home Mortgage. You have requested you want the 5.25% interest rate.

WFHM is merely the servicer of this loan.  WFHM cannot become involved with the contractual agreement between the mortgager and the originator, AHM.  Enclosed is a copy of the letter from American Home Mortgage confirming that the rate of 5.75% is accurate and WFHM will continue to service Mr. Alvarez' loan in accordance with these terms.

If you have further questions, please contact Ms. Alagna at (631) 622-6476.  WFHM apologizes for any inconvenience this may have caused.

Sincerely,

John R Petermeier
Executive Communications Coordinator
Wells Fargo Home Mortgage
(800) 840-5812

Enclosure:     American Home Mortgage letter

cc:     OCC

Wells Fargo Home Mortgage
is a division of Wells Fargo Bank, N.A.

Law Offices of
# BONITA E. ZELMAN
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel: (516) 616-0707
Fax: (516) 616-0761


By Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2110

July 25, 2005


Chairman Michael Strauss
President and CEO
American Home Mortgage
Corporate Headquarters
520 Broadhollow Road
Melville, New York 11747

Re: Gil Alvarez, American Home Mortgage No. 10000769615

Dear Chairman Strauss,

I am in receipt of a letter sent to me by your company dated July 11, 2005. The letter was written in response to numerous letters that I have been forced to write because of the bad faith and misconduct exercised by your company in regard to my client. More importantly, the letter is still unresponsive and purports to be a response to the Qualified Written Request written pursuant to the Real Estate Settlement Procedures Act (RESPA 12 U.S. C. 2605), filed on April 11, 2005, and my follow-up letters.

On June 21, 2005 I wrote to you again requesting your assistance in settling this matter. I received a call from Stephanie Alagna of AHM, whom I believed was working on your behalf and who inquired as to what Mr. Alvarez was looking for (in terms of settlement). I informed her that Mr. Alvarez only wanted the 5.25% interest rate that was represented to him. Ms. Alagna then indicated that she would respond in writing, and a letter was finally received on July 12, 2005. What we received, however, were not the results of an investigation concerning the issues raised in the Qualified Written Request, or my letter dated May 10, 2005. Ms. Alagna's letter was replete with inaccuracies and outright falsities. Instead of conducting an investigation as you were required to do under RESPA, your company commits misconduct by submitting a contrived, fabricated scenario which makes absolutely no sense and is in conflict with your previous letter. According to Ms. Alagna, AHM's current position is that my client's preference was to lock in the rate of "5.75% with 0 points." If this is the truth why did it take three months for your company to reply with their position? Furthermore, Ms. Alagna's version of the facts makes absolutely no sense as Mr. Alvarez could have obtained a 5.25% rate at the time elsewhere. Additionally, when I spoke to Ms. Alagna following my June 21st letter, believing

Chairman Michael Strauss
July 12, 2005
Page 2.

that she was working on your behalf to resolve this matter, and told her that Mr. Alvarez only wanted the 5.25% rate, she never indicated to me that the rate was with a ".50 point" or that "no lock in fee was sent (to AHM)."

Being that the letter submitted on behalf of AHM is full of misrepresentations, I am sure that the regulatory agencies and eventually a jury will agree, that from the very beginning my client has indicated that the rate represented was 5.25% and that his version of the events are more truthful.   What is even more disconcerting is that this apparently is not the first time AHM has distorted the truth with regards to a RESPA investigation.  According to John R. Petermeier, Executive Communications Coordinator for Wells Fargo Home Mortgage, AHM falsely represented to WFHM that my client's father-in-law used the $600.00 credit wrongfully issued by Ms. Warren.  This is especially shocking considering that this outright fabrication on the part of AHM was done with regard to a RESPA investigation conducted by WFHM.  Additionally, in response to AHM's frivolous position that my client could have "cancelled his application and not closed" on the day of closing, AHM and Ms. Warren are fully aware that had my client elected not to purchase the home, he would have been subject to legal action by the seller who was purchasing a home that very day in Tampa.

I am informing you that my client completely denies that he ever requested or accepted the 5.75% interest rate and that Ms. Warren is completely prevaricating in her responses to you in regard to this very serious misconduct allegation.  If AHM should chose to continue to participate and engage in the above mentioned misconduct, please have the statements in your July 11, 2005 response confirmed and notarized by Ms. Warren.  Since Ms. Warren was transacting business on behalf of your company, it is necessary that she attest to the validity of the statements contained in your letter.  Without Ms. Warren confirming these events, your letter is effectively meaningless.  Also, in a continued effort to reach a reasonable resolution to this matter, please provide the following information:

1) A copy of your investigative file into this matter.
2) The name(s) of the individual(s) who investigated and prepared your April 29, 2005 response.
3) The names of the individual(s) at your company who assisted Ms. Warren in the preparation of the contrived and fabricated statements in your July 11, 2005 response.
4) The name(s) of the individual(s) involved in the investigation into this matter at your company and the name(s) of the individual(s) they spoke to at WFHM.
5) The name(s) of the individual(s) at your company who misinformed WFHM that my client's father-in-law had used the $600,00 credit.
6) The responses in your July 11, 2005 letter confirmed and notarized by Ms. Warren.

I am writing directly to you once again in an attempt to settle this matter and obtain some form of satisfaction for my client without the need for judicial intervention.  It is my understanding that you founded AHM in 1987 and are responsible for strategic directions as well

Chairman Michael Strauss
July 12, 2005
Page 3.

as overseeing day-to-day operations.  The responses of AHM so far have been unprofessional, self-serving and in violation of State and Federal Statutes including RESPA (12 U.S.C. 2605). Having received and reviewed AHM's contrived letter dated July 11, 2005, which took three months to devise, I certainly believe it would now be in the best interest of your company and my client if we settle this matter before AHM continues to produce communications which are replete with inaccuracies and outright fabrications.  Such communications damage your reputation and that of your company and open the company up to liability and damages.

Thank you in advance for your personal attention and response in this regard.

Very truly yours,

Bonita E. Zelman

cc: Gil Alvarez
    Wells Fargo Home Mortgage

Law Offices of
## BONITA E. ZELMAN
2001 Marcus Avenue-Suite S150
Lake Success, New York 11042
Tel: (516) 616-0707
Fax: (516) 616-0761

By Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2080

July 25, 2005

Leesa Whitt-Potter
Vice President-Customer Operations
Wells Fargo Home Mortgage
P.O. Box 9337
Des Moines, IA 50306-9337

Re: American Home Mortgage Loan No. 10000769615

Dear Vice President Whitt-Potter,

On July 21, 2005, I wrote to you indicating that I had spoken to Mr. John Petermeier of your company who asked me to investigate some questions he had concerning the above mentioned mortgage (a copy of which is enclosed for easy reference). On July 18, 2005, Mr. Petermeier wrote to me in response to the administrative complaint I filed against AHM inadvertently misstating the events which transpired between AHM and my client. The letter is silent as to the questions he raised to me on June 1, 2005, does not indicate what investigative action he took upon receiving the responses to his inquiries and does not respond to the Qualified Written Request mailed to your company. On May 10, 2005, I indicated to you that Mr. Alvarez will continue to make his payments to AHM until this matter is resolved. I have noticed that Mr. David M. Friedman, an Executive Vice President has become involved in this matter and has endorsed Mr. Alvarez's checks made out to AHM to WFHM "Without Recourse."

While I understand the inconvenience and dismay WFHM may find itself by accepting a fraudulently obtained mortgage from AHM, your company simply cannot take the position that it will not become involved. Mr. Alvarez immediately notified your company by way of a Qualified Written Request and we have mailed you a copy of all of our correspondence to AHM. As you are aware, upon receipt of a Qualified Written Request, your company was required to undertake an investigation of the issues raised by Mr. Alvarez. Simply forwarding the response of AHM without conducting an investigation of your own is improper. We also responded immediately to the inquiries posed by Mr. Petermeier and had been awaiting your response since he indicated to me that the matter would be handled by two vice-presidents at your company.

While Mr. Alvarez continues to hold out hope that Mr. Strauss will rectify the misconduct caused by his company, we expect your company to live up to its legal obligations to assist Mr.

Leesa Whitt-Potter
July 25, 2005
Page 2.

Alvarez and not simply wash your hands and reap the benefits of a fraudulently obtained
mortgage. In a continued effort to reach a reasonable resolution to this matter, please
mail me copies of your investigation into this matter, conclusions regarding Mr. Petermeier's
questions to me on June 1, 2005, the individuals you have communicated with at AHM regarding
this matter, the individual at AHM who misinformed WFHM that my client's father-in-law had
used the $600.00 credit and the names of the individuals in your company involved with this
investigation and any persons they have spoken to at AHM. The last time I spoke with Mr.
Petermeier, he indicated to me that this matter is being handled by two vice presidents at your
company.

Again I look forward to the above information and to the assistance your company will
lend in the resolution of this matter. Thank you again for your personal attention in this regard.

Very truly yours,

Bonita E. Zelman
Bonita E. Zelman

BEZ/jk
enclosures
cc: Office of the Comptroller of the Currency
    David M. Friedman
    John Petermeier
    Gil Alvarez

**Law Offices Of**
**Bonita E. Zelman**
**2001 Marcus Avenue**
**Suite S150**
**Lake Success, N.Y. 11042**
**516-616-0707**
**FAX: 516-616-0761**

By Certified Mail Return Receipt Requested No. 7005 0390 0003 0582 2097

August 31, 2005

Office of Financial Regulation
Attn: Mr. Ron Hoover
4900 Bayou Blvd.
Suite 103
Pensacola, Florida 32503

Re: Consumer Gil Alvarez's Complaint against American Home Mortgage

Dear Mr. Hoover,

Thank you for responding to our letter dated August 26, 2005 regarding the complaint we have filed against American Home Mortgage. Pursuant to your request, enclosed please find a copy of the complaint we submitted on July 7, 2005, along with all of our correspondence to AHM (annexed as Exhibit A). We have also enclosed the fabricated and contradictory responses filed by AHM (annexed as Exhibit B).

As you can see, on March 11, 2005, Ms. Warren admits, under oath, that she miscalculated the interest rate. On April 29, 2005, AHM acknowledges that Mr. Alvarez raised the issues he presented in his "Qualified Written Request" on April 7, 2005, but falsely claim that "At the time of closing you would accept the interest rate at 5.75% and a $600.00 credit on any future dealings with American Home Mortgage ..." Then more than three (3) months later, they fabricate a new scenario in their July 11, 2005 response, that now disingenuously claims that Mr. Alvarez all along wanted the 5.75% interest rate. Our response dated July 25, 2005, to this specious letter by AHM is submitted for your review. We have put AHM on notice that these statements are false and have requested that AHM have Ms. Warren attest to the validity of the statements by notarizing these fabricated and contrived statements. Not surprisingly, we have not received a response to our request.

AHM believes that in lieu of conducting an investigation, as they are required to do under RESPA, they can fabricate responses and reap the benefits of a fraudulently obtained mortgage (See July 25, 2005, letter submitted to Chairman Michael Strauss which not surprisingly, has not been answered).

If I can be of any further assistance in terms of your investigation, please do not hesitate to contact me. In addition, as requested today, please provide me with a copy of your communications with AHM and their responses in view of their contrived misrepresentations so

Office of Financial Regulation
Attn: Mr. Ron Hoover
August 31, 2005
Page 2.

that we have an opportunity to set the record straight.

Thanking you in advance for your attention to this matter, I await your reply.


Very truly yours,

Bonita E. Zelman


BEZ/jk
encs.
cc: Gil Alvarez



# American Home Mortgage
### The American Home Building
### 538 Broadhollow Road
### Melville, NY 11747

Stephanie Alagna, Paralegal
Phone Number 631-622-6476
Fax Number 516-495-5418
Email: Stephanie.alagna@americanhm.com

September 30, 2005

R. L. Hoover, Area Financial Manager
Office of Financial Regulation
4900 Bayou Blvd, Ste 103
Pensacola, Florida 32503

RE:  Case File Number CP 2005 08 00594
    Alvarez Vs American Home Mortgage Acceptance, Inc.

Dear Mr. Hoover:

Thank you for giving me the time to respond to Ms. Zelman's letter on behalf of Mr. Alvarez.  I have written several letters to both Ms. Zelman and to Mr. Alvarez and have tried to the best of my ability to explain what happened on this transaction.

It may be that Ms. Warren did not lock in the loan when she should have but there were some misunderstandings between Ms. Warren and Mr. Alvarez.  When Ms. Warren first quoted the rates to Mr. Alvarez she did quote 5.25% with .50% in points or 5.75% with no points at this point Mr. Alvarez said he would think about it and call back.  A few days letter he called back and said another company could get him the 5.25% rate and Ms. Warren said that she would match it and in all sincerity she intended to do so.  She did not commit any fraud nor did she try to misrepresent the company.  In Ms. Zelman's words she totally messed up and the loan was not locked in.

During this time the appraisal came back on the property for a lower amount than the sales price and Mr. Alvarez informed Ms. Warren that he may not go through with the deal.  So at that point she did not go and lock in the rate.  After a few days Mr. Alvarez come back to Ms. Warren and said the he and the seller had come to an agreement and he was buying the home.  It was now two late to lock in the rate of 5.25% so Mr. Alvarez agreed to the 5.75% and Ms. Warren paid the .50% plus pay $136.00 to lock it in for 15 days.  She then printed on March 9, 2005 a Rate Lock Confirmation and also our Float/Lock-in-election and mailed them to Mr. Alvarez to show him what the rate was and that it would not cost him anything extra.

At closing Mr. Alvarez started to question her about the rate again and she then agreed to give him a coupon for $600.00 and advised him that at any time if the rates went down she would do a refinance for him and that $600.00 would be applied to any cost.  The information in the coupon is what Mr.



# American Home Mortgage

### The American Home Building
### 538 Broadhollow Road
### Melville, NY 11747

Alvarez wanted added to the Note and he was told that could not be done. He agreed to the terms and continued with his closing.

I hope this letter has been helpful in understanding this situation. We are sorry for any problems this may have caused Mr. Alvarez. If you have any questions, please contact me at 631 622 6476.

Very truly yours,

Stephanie Alagna

Encl:3
CC:  Bonita E. Zelman, ESQ
    2001 Marcus Avenue, Suite S150
    Lake Success, N>Y< 10042

**Law Offices Of**
**Bonita E. Zelman**
**2001 Marcus Avenue**
**Suite S150**
**Lake Success, N.Y. 11042**
**516-616-0707**
**FAX: 516-616-0761**

By Certified Mail Return Receipt Requested No. 7005 0390 0002 4541 5298

October 28, 2005

Mr. Ron L. Hoover, Area Financial Manager
Office of Financial Regulation
4900 Bayou Blvd., Suite 103
Pensacola, Florida 32503

Re: Case File Number CP 2005 08 00594
    Alvarez v. American Home Mortgage Acceptance, Inc.

Dear Mr. Hoover:

       I am in receipt of the letter sent to you from American Home Mortgage.  Thank you for allowing me the opportunity to respond and set the record straight regarding this newly created third version by AHM surrounding the misconduct committed against Gil Alvarez, a consumer of the State of Florida.

       AHM's April 29, 2005 letter written in response to Mr. Alvarez's April 7, 2005 "Qualified Written Request" for relief pursuant to Section 6 of the Real Estate Settlement Procedures Act (RESPA 12 U.S.C. 2605) was essentially a "too bad, drop dead" letter with absolutely no investigation conducted by AHM.  As you are aware, AHM was required to conduct an investigation upon receipt of a "Qualified Written Request."  Significantly, however, in this letter AHM agreed with Mr. Alvarez's truthful version of his interaction with AHM.

       On July 11, 2005 we received a letter from AHM that was replete with inaccuracies and outright falsities.  I advised AHM that my client completely denied that he ever requested or accepted the 5.75% interest rate and that Ms. Warren was completely prevaricating in her responses to AHM in regard to this very serious misconduct allegation.  I further wrote that should AHM chose to continue to participate and engage in the above mentioned misconduct, to please have the statements in their July 11, 2005 response confirmed and notarized by Ms. Warren.  Since Ms. Warren was transacting business on behalf of AHM, it was necessary that she attest to the validity of the statements contained in AHM's letter dated July 11, 2005.  Without Ms. Warren confirming these events, their letter was effectively meaningless.

       Also, in a continued effort to reach a reasonable resolution to this matter, I requested the following information:

1) A copy of their investigative file into this matter.
2) The name(s) of the individual(s) who investigated and prepared their April 29, 2005 response.

Mr. Ron L. Hoover, Area Financial Manager
Office of Financial Regulation
October 28, 2005
Page 2.

3) The name(s) of the individual(s) at their company who assisted Ms. Warren in the preparation of the contrived and fabricated statements in their July 11, 2005 response.

4) The name(s) of the individual(s) involved in the investigation into this matter at AHM and the name(s) of the individual(s) they spoke to at WFHM.

5) The name(s) of the individual(s) at AHM who misinformed WFHM that my client's father-in-law had used the $600,00 credit.

6) The responses in their July 11, 2005 letter confirmed and notarized by Ms. Warren.

AHM, not surprisingly, never bothered to respond to my July 25, 2005 letter.

On September 30, 2005 as a result of your inquiry into this matter, and perhaps our request that Ms. Warren notarize her fabricated statements in AHM's July 11, 2005 response, AHM now comes clean and admits that Ms. Warren did indicate to Mr. Alvarez that she would get him the rate of 5.25% (Paragraph 2). The remainder of the letter is a self serving but poor attempt to minimize their misconduct. Mr. Alvarez was told he would be receiving a 5.25% interest rate and one day before the closing he was wrongfully coerced into a higher 5.75% interest rate. Contrary to the false and contrived statements contained in their new response, Mr. Alvarez NEVER indicated to Ms. Warren that he would not go through with the deal. Ms. Warren's duty and obligation was to lock in the 5.25% rate she now admits telling Mr. Alvarez she would do and not to involve herself with the real estate transaction. This one-sided confusion on the part of AHM and Ms. Warren is a self serving attempt to justify their wrongful overcharging of Mr. Alvarez on his mortgage. Only AHM and Ms. Warren would think it normal to deceive a consumer by agreeing to lock-in a rate of 5.25% in early February 2005 and then get around to obtaining and locking in a higher rate only two days before the closing (See worksheets provided by AHM).

Additionally, Mr. Alvarez NEVER agreed to accept the $600.00 coupon. The coupon clearly indicates that it was issued because a miscalculation of interest rate on the part of AHM and Ms. Warren, and that it was agreed to by AHM, the loan officer, Lynette Warren and the Title Company because no entries could be made on the Mortgage Note. Also, AHM and Ms. Warren were fully aware that had my client elected not to purchase the home, he would have been subject to legal action by the seller who was purchasing a home that very day in Tampa.

The September 30, 2005 letter finally admits that AHM and Ms. Warren indicated to Mr. Alvarez that he was to receive a 5.25% interest rate. If they are truly "sorry for any problems this may have caused Mr. Alvarez" (last paragraph), then they should provide him with the 5.25% rate indicated to him instead of wrongfully engaging in a cover-up by submitting fabricated statements and contrived scenarios. The "bait and switch" tactics employed against Mr. Alvarez is clearly fraud and misrepresentation and AHM cannot in a self-serving manner rectify this matter by simply saying "sorry." The very fact that Ms. Warren paid .50% , paid the" lock in" and prepared her own $600.00 credit clearly indicates the misconduct directed at Mr. Alvarez in not obtaining the indicated 5.25% interest rate. Additionally, the complete fabrication by AHM in prevaricating to Wells Fargo Home Mortgage that Mr. Alvarez's father-in-law had used the $600.00 credit clearly illustrates their attempt to deceive and obstruct any meaningful

Mr. Ron L. Hoover, Area Financial Manager
Office of Financial Regulation
October 28, 2005
Page 3.

investigation by WFHM into this misconduct. AHM should not reap the benefits of a
fraudulently obtained mortgage. It is indeed deplorable that Mr. Alvarez who is represented by
counsel has to endure intentional fabrications, contrived misrepresentations and a higher interest
rate which is costing him thousands of dollars more in interest. The very fact that Mr. Michael
Strauss the Chairman, President and CEO of AHM has been apprized of this situation and has
done nothing to rectify this matter, shows the indifference AHM has toward customers after they
fall victim to their illegal tactics.

    Thanking you for your attention to this matter, I await your reply.

Very truly yours,

Bonita E. Zelman
Bonita E. Zelman

BEZ/jk
cc: Chairman Michael Strauss, By Certified Mail Number 7005 0390 0002 4541 5304
    Stephanie Alagna, By First Class Mail
    Gil Alvarez, By First Class Mail



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

November 21, 2005

Chairman Michael Strauss
President & CEO
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747

Subject: RESPA Case # R-05-1142
         Gil Alvarez
          American Home Mortgage Loan # 10000769615

Dear Mr. Strauss:

     The Department of Housing and Urban Development's Office of RESPA and Interstate
Land Sales (Office) is responsible for enforcing the Real Estate Settlement Procedures Act
(RESPA). The Office has received a complaint from Attorney Bonita E. Zelman, counsel for Gil
Alvarez, a copy of which is attached. Ms. Zelman has informed the Office that American Home
Mortgage has failed to answer Mr. Alvarez's complaints. Mr. Alvarez also alleges that he was
misled as to the interest rate of his loan in addition to the failure to respond to the qualified
written request pursuant to Section 6 of RESPA.

     This Office would remind you that Section 6(e) of RESPA imposes a duty upon loan
servicers to respond to borrower inquiries. Loan servicers have 20 business days to
acknowledge a qualified written request and must take action to resolve the matter within 60
business days. During the 60-day period relating to a dispute regarding a borrower's payments, a
loan servicer may not provide adverse information relating to the dispute to a credit bureau.

     We would also remind you that by the terms of Section 16 of RESPA (12 U.S.C. Section
2614), a borrower may bring an action for damages in the United States District Court within
three years from the date of a violation of Section 6's provisions. In addition, please remember
that the Secretary of Housing and Urban Development is authorized by Section 2617(c)(1) of
Title 12 of the United States Code to investigate any facts, conditions, practices or matters
deemed necessary to determine whether any person has violated or is about to violate any
provision of the Act or any rule or regulation prescribed pursuant thereto, or to secure
information, including issuing subpoenas, to serve as a basis for recommending further
legislation concerning real estate settlement practices.

Please contact Ms. Zelman immediately to resolve this matter. If an acceptable resolution is not reached within 15 days of the receipt of this letter, this complaint will also be forwarded to the Federal Reserve Board of Governors for an investigation into possible Truth in Lending Act violations.

Please inform this Office of the resolution of this matter. A copy of any correspondence with Ms. Zelman or Mr. Alvarez should be sent to:

> U.S. Department of Housing and Urban Development
> Office of RESPA and Interstate Land Sales
> 451 7th, SW, Room 9154
> Washington, DC 20410
> Attn: Deborah Denton

If you have any questions, please contact Ms. Denton at (202) 708-0502.

Sincerely

Ivy M. Jackson
Director
Office of RESPA and
   Interstate Land Sales

Enclosure
cc: Bonita E. Zelman
   Gil Alvarez

Sincerely,

*Ivy M Jackson*

Ivy M. Jackson
Director
Office of RESPA and
 Interstate Land Sales



# American Home Mortgage Corp.

### The American Home Building
### 538 Broadhollow Road
### Melville, NY 11747

Stephanie Alagna, Paralegal
Phone Number 631-622-6476
Fax Number 516-495-5418
Email: Stephanie.alagna@americanhm.com

December 9, 2005

Ivy M. Jackson
U.S. Department of Housing and Urban Development
Washington, D.C. 20410-8000

**RE: RESPA Case # R-05-1142**
   **Gil Alvarez**
   **American Home Mortgage Loan # 1000769615**

Dear Ms. Jackson:

I am writing this letter in response to correspondence we received from HUD on the above referenced mortgagor.

Mr. Alvarez essentially complains that American Home Mortgage Corp did not close the loan at the rate that was quoted to him at the beginning of the application.   When American Home Mortgage Corp. first spoke to him we gave him two different rates one with .50% points and the second rate a little bit higher but with no points.  He advised us at that time he would have to think about it and get back to us.  When he called back a few days later he told us another company offered him 5.25%, American Home Mortgage advised him we would try to match that rate.   He subsequently advised, American Home Mortgage that he wanted the "no point loan".

I have enclosed several letters responding to this complaint to Mr. Alvarez, Ms. Zelman and to the Banking Department for the State of Florida.

If you should have any questions please contact this office.

Very truly yours,

Stephanie Alagna

CC:  Ms. Bonita Zelman
     Mr. Gil Alvarez

LAW OFFICES OF

## Bonita E. Zelman

2001 MARCUS AVENUE
SUITE S150
LAKE SUCCESS, N.Y. 11042
516-616-0707
FAX: 516-616-0761

By Certified Mail Return Receipt Requested No. 7005 0390 0002 4541 5342

December 23, 2005

Honorable Ivy M. Jackson
Director, Office of RESPA and Interstate Land Sales
U.S. Department of Housing and Urban Development
Room 9154
451 7th Street, SW
Washington, DC 20410

RE: RESPA Case # R-05-1142
Gil Alvarez
American Home Mortgage Loan #10000769615

Dear Ms. Jackson:

I am in receipt of the letter sent to you from American Home Mortgage (AHM). The letter was intentionally misleading, unresponsive to your inquiries regarding their wilful violation of RESPA and constitutes their fourth version of the events surrounding their misconduct committed against Gil Alvarez.

The Office of Financial Regulation in Florida is investigating violations of Florida State Statutes by AHM. Enclosed for your review is a copy of our correspondence to their office. We are requesting that action be taken against AHM to remedy the financial losses sustained by Mr. Alvarez in having to pay the higher interest rate of 5.75% and that the interest rate of 5.25% be imposed on AHM .

On September 30, 2005, as a result of the inquiry by the Florida Office of Financial Regulation, and perhaps our request that Ms. Warren notarize her fabricated statements in AHM's July 11, 2005 response, AHM came clean and admitted that Ms. Warren did indicate to Mr. Alvarez that she would get him the rate of 5.25% (Paragraph 2 of September 30, 2005 letter, third version). The remainder of the letter was a self serving but poor attempt to minimize their misconduct. Mr. Alvarez was told he would be receiving a 5.25% interest rate and one day before the closing he was wrongfully coerced into a higher 5.75% interest rate. Only AHM and Ms. Warren would think it normal to deceive a consumer by agreeing to lock-in a rate of 5.25% in early February 2005 and then get around to obtaining and locking in a higher rate only two days before the closing (See worksheets provided by AHM and enclosed for your review).

The December 9, 2005 letter shows that Mr. Michael Strauss, an individual who holds the

*Bonita E. Zelman*
PAGE 2

important titles of Chairman, President and Chief Executive Officer (CEO) of AHM, refuses to acknowledge the harm caused to Mr. Alvarez by the fraud, misrepresentation and negligence of his company and in fact perpetrates the harm by directing the production of false, misleading and illegal communications. Certainly the agencies given the important task of enforcing the consumer protection laws them should be provided with truthful and accurate information. The December 9, 2005 letter, their fourth version of events, now claims that AHM "advised him [Gil Alvarez] we would try to match that rate [i.e. the 5.25%]" (second paragraph). Compare this new version to their September 30, 2005 letter (third version) in which they stated to the Office of Financial Regulation " A few days letter (sic) he called back and said another company could get him the 5.25% rate and *Ms. Warren said that she would match it* and in all sincerity she intended to do so." (Second paragraph, emphasis added). NOWHERE in their September 30, 2005 letter did they state, as they do now, that Ms. Warren would "try to match" the 5.25% interest rate. They specifically and clearly stated that she indicated that she would "match it"! They go on to state in a self-serving manner that Ms. Warren did not commit fraud nor did she try to misrepresent the company.

After the production of AHM's July 11, 2005 letter (second version) I wrote to Mr. Strauss requesting in a continued effort to reach a reasonable resolution to this matter, that I be provided with the following information:

1) A copy of their investigative file into this matter.

2) The name(s) of the individual(s) who investigated and prepared their April 29, 2005 response.

3) The name(s) of the individual(s) at their company who assisted Ms. Warren in the preparation of the contrived and fabricated statements in their July 11, 2005 response.

4) The name(s) of the individual(s) involved in the investigation into this matter at AHM and the name(s) of the individual(s) they spoke to at WFHM.

5) The name(s) of the individual(s) at AHM who misinformed WFHM that my client's father-in-law had used the $600,00 credit.

6) The responses in their July 11, 2005 letter confirmed and notarized by Ms. Warren.

AHM, not surprisingly, never bothered to respond to my July 25, 2005 letter. It is clear that they did not respond because they failed to adhere to the requirements of RESPA and intentionally misled another lending institution.

What is more shocking is that now as the Director of the Office of RESPA and Interstate Land Sales of the Department of Housing and Urban Development directs the parties to resolve this matter in good faith, Mr. Strauss submits yet that another version of events so as to attempt to minimize AHM's misconduct in this matter and mislead your office. The "bait and switch" tactics employed against Mr. Alvarez is clearly fraud and misrepresentation and AHM cannot in a self-serving manner rectify this matter by simply saying "sorry." The very fact that Ms. Warren paid 50% , paid the" lock in" and prepared her own $600.00 credit clearly indicates the misconduct directed at Mr. Alvarez in not obtaining the indicated 5.25% interest rate. Additionally, the complete fabrication by AHM in prevaricating to Wells Fargo Home Mortgage,

## *Bonita E. Zelman*
PAGE 3

who purportedly were conducting their own RESPA investigation, that Mr. Alvarez's father-in-law had used the $600.00 credit clearly illustrates their attempt to deceive and obstruct any meaningful investigation by WFHM into this misconduct. AHM should not reap the benefits of a fraudulently obtained mortgage. It is indeed deplorable that Mr. Alvarez who is represented by counsel has to endure intentional fabrications, contrived misrepresentations and a higher interest rate which is costing him thousands of dollars more in interest. The very fact that Mr. Michael Strauss the Chairman, President and CEO of AHM has been apprized of this situation and has done nothing to rectify this matter, but chooses to compound the problem by creating yet another version of events, shows the indifference AHM has toward customers after they fall victim to their illegal tactics.

It is respectfully requested that your Office take the strongest possible enforcement action against AHM. AHM's wilful violation of RESPA by failing to conduct a good faith investigation into misconduct via a "qualified written request" and intentionally prevaricating to another lending institution who purportedly were conducting their own RESPA investigation, their attempts to intentionally obstruct justice by the production of false and misleading communications and Truth in Lending Act violations all warrant the strongest possible penalty, and remedial actions on behalf of Mr. Alvarez.

Thanking you for your attention to this matter, I await your reply.

Very truly yours,

Bonita E. Zelman

BEZ/jk

cc: Ms. Denton, Office of RESPA and Interstate Land Sales,
With enclosures, By Certified Mail #
Mr. Ron Hoover, Florida Office of Financial Regulation,
With enclosures, By Certified Mail #
Chairman Michael Strauss, By Certified Mail #
Stephanie Alagna, By First Class Mail
Gil Alvarez, By First Class Mail

LAW OFFICES OF

## Bonita E. Zelman

2001 MARCUS AVENUE
SUITE S150
LAKE SUCCESS, N.Y. 11042
516-616-0707
FAX: 516-616-0761

By Certified Mail Return Receipt Requested No. 7005 0390 0002 4541 5335

December 23, 2005

Mr. Ron L. Hoover, Area Financial Manager
Office of Financial Regulation
4900 Bayou Blvd., Suite 103
Pensacola, Florida 32503

Re: Case File Number CP 2005 08 00594
Alvarez v. American Home Mortgage Acceptance, Inc.

Dear Mr. Hoover:

I am in receipt of the letter dated December 9, 2005 sent to the U.S. Department of Housing and
Urban Development from American Home Mortgage by its paralegal Stephanie Alagna. I would
like to forward to you the request by the Director of the Office of RESPA and Interstate Land
Sales that directed that AHM contact me immediately to resolve this matter, which they failed to.
I am also including AHM's new fourth version surrounding the misconduct committed against
Gil Alvarez, a consumer of the State of Florida (See Enclosures).

On September 30, 2005, as a result of the inquiry by the Florida Office of Financial Regulation,
and perhaps our request that Ms. Warren notarize her fabricated statements in AHM's July 11,
2005 response, AHM came clean and admitted that Ms. Warren did indicate to Mr. Alvarez that
she would get him the rate of 5.25% (Paragraph 2 of September 30, 2005 letter, third version).
The remainder of the letter was a self serving but poor attempt to minimize their misconduct. Mr.
Alvarez was told he would be receiving a 5.25% interest rate and one day before the closing he
was wrongfully coerced into a higher 5.75% interest rate. Only AHM and Ms. Warren would
think it proper practice to deceive a consumer by agreeing to lock-in a rate of 5.25% in early
February 2005 and then get around to obtaining and locking in a higher rate only two days before
the closing (See worksheets previously provided by AHM for your review).

The December 9, 2005 letter shows that Mr. Michael Strauss, an individual who holds the
important titles of Chairman, President and Chief Executive Officer (CEO) of AHM, refuses to
acknowledge the harm caused to Mr. Alvarez by the fraud, misrepresentation and negligence of
his company and in fact perpetrates the harm by directing the production of false, misleading and
illegal communications. Certainly, consumer protection agencies given the important task to
enforce consumer protection laws should be provided with truthful and accurate information. The
December 9, 2005 letter, their fourth version of events, now claims that AHM "advised him [Gil
Alvarez] we would try to match that rate [i.e. the 5.25%]" (second paragraph). Compare this new

*Bonita E. Zelman*
PAGE 2

version to their September 30, 2005 letter (third version) in which they stated to the Office of Financial Regulation " A few days letter (sic) he called back and said another company could get him the 5.25% rate and *Ms. Warren said that she would match it* and in all sincerity she intended to do so." (Second paragraph, emphasis added). NOWHERE in their September 30, 2005 letter did they state, as they do now, that Ms. Warren would "try to match" the 5.25% interest rate. They specifically and clearly stated that she indicated that she would "match it"! They go on to state in a self-serving manner that Ms. Warren did not commit fraud nor did she try to misrepresent the company.

It is apparent that Mr. Strauss and AHM have no intention of rectifying this matter and instead choose to produce false and misleading communications aimed at obstructing justice. It is respectfully requested that your Office take the strongest possible enforcement action against AHM including remedial measures available to place Mr. Alvarez in the position he would have had, a mortgage at 5.25% absent AHM's disturbingly deceitful conduct. AHM's wilful violation of RESPA by failing to conduct a good faith investigation into misconduct via a "qualified written request" and intentionally prevaricating to another lending institution who purportedly were conducting their own RESPA investigation, their attempts to intentionally obstruct justice by the production of false and misleading communications and Truth in Lending Act violations all warrant the strongest possible penalty. We believe that AHM's and Ms. Warren's right to do business in the State of Florida should be suspended pending a resolution to this matter.

Thanking you for your attention to this matter, I await your reply.

Very truly yours,

*Bonita E. Zelman*
Bonita E. Zelman

BEZ/jk
cc: Chairman Michael Strauss, By Certified Mail #
Stephanie Alagna, By First Class Mail
Gil Alvarez, By First Class Mail

LAW OFFICES OF

## *Bonita E. Zelman*

2001 MARCUS AVENUE
SUITE S150
LAKE SUCCESS, N.Y. 11042
516-616-0707
FAX: 516-616-0761

By Certified Mail Return Receipt Requested No. 7006 2760 0001 4607 7616

December 4, 2006

Chairman Richard M. Kovacevich
Chief Executive Officer
Wells Fargo & Company
Wells Fargo Home Mortgage
1 Home Campus
Des Moines, IA 50328-0001

Re: Wells Fargo Home Mortgage's service of a fraudulently obtained mortgage for
client Gil Alvarez and WFHM's failure to respond to a Qualified Written Request
pursuant to Section 6 of RESPA by failing to conduct a proper investigation.
AHM loan#10000769615; WFHM loan# 0197014558.

Dear Chairman Kovacevich,

I am writing to you requesting that you rectify a fraudulently obtained mortgage
which was obtained by your company from American Home Mortgage (AHM).
Enclosed for your information and review, is a copy of the correspondence I have
mailed to your company regarding this matter.

On April 13, 2005 Mr. Gil Alvarez contacted Wells Fargo Home Mortgage and
submitted a Qualified Written Request pursuant to Section 6 of the Real Estate
Settlement Procedures Act (RESPA 12 U.S.C. 2605) in which he requested that your
company not service a fraudulently obtained mortgage. Instead of conducting an
investigation into this matter as RESPA requires, Mr. John Petermeier of WFHM
wrongfully took AHM's fabricated responses that the loan was properly obtained. When
I contacted Mr. Petermeier and informed him that WFHM could not simply take the
position that it will not become involved, he asked me to investigate some questions he
had concerning Mr. Alvarez's interaction with AHM. Incredibly, instead of investigating
this matter as RESPA requires, he again dismisses the RESPA request without any
investigation and wrote "WFHM considers this matter closed unless new information is
presented" (See September 16, 2005 letter enclosed for your review).

On October 12, 2006 the State of Florida, Office of Financial Regulation and AHM
entered into a Consent Agreement which proved among other things, that Mr. Alvarez
was the victim of fraud and misrepresentation and that Mr. Alvarez will incur financial
loss over the thirty year life of the loan (Enclosed is a copy for your review).

We believe that this unfortunate set of circumstances would not have occurred had
your company properly responded to and investigated the Qualified Written Request

*Bonita E. Zelman*

PAGE 2

Mr. Alvarez mailed shortly after he was victimized by AHM.

I am writing to respectfully request that you set up a meeting with AHM, the original servicer of the loan, so that we can come to an agreement which is just, proper and beneficial to all.

Should your company refuse to rectify this fraudulently obtained mortgage I respectfully request that I be provided with the following so that I may show my client that your company fully complied with RESPA:

1) A copy of your investigative file into this matter.
2) The name(s) of the individual(s) who investigated this matter on behalf of WFHM.
3) The name(s) of the individual(s) at WFHM who obtained mis-information from AHM that my client's father-in-law had used the $600.00 credit.
4) All RESPA related investigative actions taken by Mr. John Petermeier, Leesa Whitt-Potter and David M. Friedman.
5) What actions were taken by Mr. Petermeier with the information he requested on June 1, 2005.

Thank you in advance for your personal attention and response in this regard.

Very truly yours,

*Bonita E. Zelman*

Bonita E. Zelman

cc: Chairman Michael Strauss, American Home Mortgage
    Deborah Denton, U.S. Department of Housing and Urban Development
        Office of RESPA and Interstate Land Sales
    Leesa Whitt-Potter, WFHM Vice President- Customer Operations
    John R. Petermeier, WFHM Executive Communications Coordinator
    Gil Alvarez

LAW OFFICES OF

*Bonita E. Zelman*

2001 MARCUS AVENUE
SUITE S150
LAKE SUCCESS, N.Y. 11042
516-616-0707
FAX: 516-616-0761

By Certified Mail Return Receipt Requested No. 7006 2760 0001 4607 7647

December 4, 2006

Chairman Michael Strauss
President and CEO
American Home Mortgage
Corporate Headquarters
520 Broadhollow Road
Melville, New York 11747

Re: Failure of American Home Mortgage to lock-in interest rate for client Gil Alvarez
and failure to respond to a Qualified Written Request pursuant to Section 6 of RESPA
by failing to conduct a proper and ethical investigation.  AHM loan#10000769615.

Dear Chairman Strauss,

   I am in receipt of the consent agreement signed by your company and the Office of
Financial Regulation for the State of Florida, regarding the misconduct committed
against Gil Alvarez (a copy of which is enclosed for your review).  As you are aware,
and as the Consent Agreement points out, Mr. Alvarez will incur financial loss over the
thirty year life of the mortgage.  This unfortunate set of circumstances would not have
occurred had your company responded properly and ethically to the Qualified Written
Request Mr. Alvarez mailed shortly after he was victimized by agents working on behalf
of your company.

   I am writing to respectfully request that you set up a meeting with Wells Fargo Home
Mortgage, the new servicer of this loan, so that we can come to an agreement which
will be beneficial to all of us and we could finally set this unfortunate matter to rest.

   Thank you in advance for your personal attention and response in this regard.

                                        Very truly yours,

                                        *Bonita E Zelman*
                                        Bonita E. Zelman

cc: Wells Fargo Home Mortgage
    Deborah Denton, U.S. Department of Housing and Urban Development
                    Office of RESPA and Interstate Land Sales
    Alan Horn, Esq. General Counsel, AHM
    Gil Alvarez

**FOR INTERNAL USE ONLY**

## Lock Confirmation for  0000769615

**As of:**  06/28/2005

### Borrower Information / Branch Information

**Borrower Name(s):**
Gil Alvarez
Raquel Alvarez

**Subject Property Address:**
542 Mt Argyll Court
Apopka, FL 32712

**Branch:**          **Branch ID:  02820**
Orlando Phillips FL 2820
7009 Dr. Phillips Blvd. Suite 100
Orlando, FL 32819
(407) 363-5121

**Loan Officer:**
Lynette Warren
**Tel:** (407) 760-8404

**Rate Sheet Date:**  03/09/2005

**Rate Sheet Time:**  15:22

### Loan Detail **

**Lock Date:** March 9, 2005

**Lock Expiration:** March 24, 2005

**Product Code:** 00930 (AE) Conforming 30 Yr FRM

**Minimum Required Documentation:** FIFA

**Purpose:** Purchase

**Occupancy:** Primary Home

**Property Type:** PUD

**Tax Waiver:** No

**Insurance Waiver:** No

**Prepay Penalty:** None

**Lowest Middle Score (fico):** 722

**Primary Wage Earner (pfico):** 722

**Application Status:** 64 - Disbursed

**Base Loan Amount:** $272,800.00

**Total Loan Amount:** $272,800.00

**Sales Amount:** $341,000.00

**Estimated Value:** $341,000.00

**LTV:** 80.000%

**CLTV:** 80.000%

**DTI:** 29.349%

**Project Type:** PUD

**Margin:** N/A

**Current Index:*** N/A

**Caps:** N/A

| Secondary Lock Detail | Rate | Price | Margin |
|---|---|---|---|
| **Itemized Adjustments** | | | |
| LOAN SIZE 170001-500000 | | - .250 | |
| LOCK TERM 0-15 | | - .500 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Premium to Borrower | | .000 | |
| Extension Cost | | | |
| Secondary Adjustment | | | |

# FLOAT / LOCK-IN ELECTION

Borrowers: Gil Alvarez, Raquel Alvarez

Property Address:    542 Mt Argyll Court
                     Apopka, FL 32712

Loan Type: __Conventional__    Loan Amount: __$272,800.00__

Loan Term: __360__    Interest Rate: __5.750__ Index: _____

Origination Fees __N/A__    Origination Points: __N/A__

Discount Fees: __N/A__    Discount Points: __N/A__

Lock Date: __03/09/2005__    Lock Expiration Date: __03/24/2005__

Escrow Waiver: __No__    Adjustable Rate _____ Fixed Rate __x__

Margin: _____ Index: _____ Index Description _____

Interest rate and points fluctuate according to market conditions. Such fluctuations may have a serious impact on the borrower. The election to lock-in or float the interest rates and points is entirely your choice. **EMPLOYEES OF THE COMPANY HAVE NO AUTHORITY TO ADVISE ON SUCH MATTERS NOR SHOULD YOU RELY ON SUCH ADVICE.**

This agreement is to confirm either Option A or Option B as indicated and described below.
American Home Mortgage                                    may choose not to honor the commitment unless signed and returned promptly.

____ **OPTION A -LOCK- IN INTEREST RATE AND POINT COMMITMENT.** I/we hereby elect and or accept to lock-in an (initial) annual interest rate __5.750__, origination fee N/A              and discount fee    N/A              according to the above terms.
American Home Mortgage                                    shall make a good faith effort to process my mortgage loan application and stand ready to fulfill the terms of its commitment before the expiration of the lock-in Agreement.

*Your application must be approved and the loan closed and funded within the lock-in period in accordance with the application requirements, conditions, policies, procedures, rules and or regulations of* American Home Mortgage            *and, if applicable, those of any mortgage insurer that may insure or guarantee your loan, and or the investor that may purchase your loan from* American Home Mortgage                *. This Agreement applies only to the borrower and the property referenced above and is NOT transferable or assignable.*

**SHOULD THE LOCK-IN EXPIRE BEFORE THE LOAN IS CLOSED, IT IS UNDERSTOOD THAT IF THE LOAN SHOULD CLOSE AT A LATER DATE, IT WILL BE CLOSED AT THE HIGHER OF (i) THE TERMS STATED ABOVE, OR (ii) THE CURRENT PREVAILING TERMS OFFERED TO THE PUBLIC BY THE COMPANY AT THE TIME OF CLOSING.**

__X__    **OPTION B - FLOATING NO RATE OR POINT COMMITMENT** I/we hereby elect and or accept to float the interest rate and points until a later date. The actual rate of interest and number of discount points will depend upon prevailing market conditions and the terms offered to the public at the time of my lock-in, which rate and points may be higher or lower than the rates and points presently being offered by American Home Mortgage                agrees to process the loan application. This Agreement, however, is not a guarantee or lock-in of the price (i.e. interest rate, loan fee, discount points, margin, caps or index). In order to allow for the preparation of the documents and the orderly closing of the loan, a price must be locked in a minimum of seventy two (72) hours prior to the scheduled date of closing. Should the lock-in for the closing expire before the loan is closed, it is understood and agreed that the loan shall close at the higher of (I) the terms of the expired lock-in or (ii) the current market quoted at the time of closing.

For more information on lock options and current rates, call your loan officer Lynette Warren                                at (407) 760-8404 _____

To:    Mr. and Mrs. Gil Alvarez
Subject: Guarentee for future refinance with Lynette Warren at American Home Mortgage

**To:    Mr. and Mrs. Gil Alvarez**

**From:   Lynette Warren**
**American Home Mortgage**
**East Orlando Office**
**407-760-8404**

**Dated:   March 11, 2005**

This is a certificate to be used by the above named parties, for   a        discount of the Funding and Review Fee that is Charged on a Closing
in the amount of $600.00 and not to exceed $600.00 inwhich, Lynette Warren
at American Home Mortgage will be responsible for that fee.

You will be able to use this certificate for refinancing or purchasing
another property.

This offer is not transferrable to any other parties.

Said Letter is issued because of miscalculation of interest rate. AHM and L.O.,
Lynette Warren and Title Company agree to this agreement because no entries
can be made on Mortgage Note.

Lynette M. Warren

Connie VanZandt

Connie VanZandt
My Commission DD368466
Expires February 23, 2008

3/11/2005

March 24, 2005

GIL ALVAREZ
RAQUEL ALVAREZ
542 MT ARGYLL COURT
APOPKA FL 32712

000050

# NOTICE OF SALE OF SERVICING RIGHTS

RE: American Home Mortgage Loan #: 1000769615

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being sold from American Home Mortgage Servicing to Wells Fargo Bank, NA. The sale of the servicing of your mortgage loan does not affect any term or condition of the loan itself other than terms directly related to the servicing of your loan.

The first payment you should direct to Wells Fargo Bank, NA will be due on 05/01/2005. Please send all payments due on or after this date to Wells Fargo Bank, NA.

Until your first payment is due to Wells Fargo Bank, NA, American Home Mortgage remains your Current servicer. If you have any questions for American Home Mortgage relating to your loan or the transfer of your loan's servicing, please call our Customer Service Department toll free at 1-800-444-7963 between 8:30 am and 6:00 pm (Eastern time), Monday through Friday.

The address for your new servicer is:  Wells Fargo Bank, NA
                                        Att: Mac #X2803-1C
                                        4800 W. Wabash Ave.
                                        Springfield, IL 62711
If you have any questions for your new servicer, please call Wells Fargo Bank, NA toll free at (866) 234-8271.

Any optional insurance plan, such as mortgage life or disability insurance, obtained through American Home Mortgage will not be transferred to Wells Fargo Bank, NA. Your homeowners property insurance will be transferred to Wells Fargo Bank, NA, as it is not considered optional insurance. To maintain any optional insurance coverage, you will need to contact Wells Fargo Bank, NA to receive details about such programs available through them or their affiliates.

During the 60-day period following the effective date of the transfer of the loan servicing (the date the first payment is due to Wells Fargo Bank, NA), a loan payment received by American Home Mortgage before its due date may not be treated by Wells Fargo Bank, NA as late, and a late fee may not be imposed on you.

In addition, Section 6 of the Real Estate Settlement Procedures Act, (RESPA 12 U.S.C 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgement or take the action you request within 20 business days (a day that your servicer is open for business to the public) of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. No later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you

# EXHIBIT C



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
WASHINGTON, D.C. 20410-8000

OFFICE OF THE ASSISTANT SECRETARY
FOR HOUSING-FEDERAL HOUSING COMMISSIONER

November 21, 2005

Chairman Michael Strauss
President & CEO
American Home Mortgage
520 Broadhollow Road
Melville, NY 11747

Subject: RESPA Case # R-05-1142
        Gil Alvarez
        American Home Mortgage Loan # 10000769615

Dear Mr. Strauss:

The Department of Housing and Urban Development's Office of RESPA and Interstate Land Sales (Office) is responsible for enforcing the Real Estate Settlement Procedures Act (RESPA). The Office has received a complaint from Attorney Bonita E. Zelman, counsel for Gil Alvarez, a copy of which is attached. Ms. Zelman has informed the Office that American Home Mortgage has failed to answer Mr. Alvarez's complaints. Mr. Alvarez also alleges that he was misled as to the interest rate of his loan in addition to the failure to respond to the qualified written request pursuant to Section 6 of RESPA.

This Office would remind you that Section 6(e) of RESPA imposes a duty upon loan servicers to respond to borrower inquiries. Loan servicers have 20 business days to acknowledge a qualified written request and must take action to resolve the matter within 60 business days. During the 60-day period relating to a dispute regarding a borrower's payments, a loan servicer may not provide adverse information relating to the dispute to a credit bureau.

We would also remind you that by the terms of Section 16 of RESPA (12 U.S.C. Section 2614), a borrower may bring an action for damages in the United States District Court within three years from the date of a violation of Section 6's provisions. In addition, please remember that the Secretary of Housing and Urban Development is authorized by Section 2617(c)(1) of Title 12 of the United States Code to investigate any facts, conditions, practices or matters deemed necessary to determine whether any person has violated or is about to violate any provision of the Act or any rule or regulation prescribed pursuant thereto, or to secure information, including issuing subpoenas, to serve as a basis for recommending further legislation concerning real estate settlement practices.

Please contact Ms. Zelman immediately to resolve this matter. If an acceptable resolution is not reached within 15 days of the receipt of this letter, this complaint will also be forwarded to the Federal Reserve Board of Governors for an investigation into possible Truth in Lending Act violations.

Please inform this Office of the resolution of this matter. A copy of any correspondence with Ms. Zelman or Mr. Alvarez should be sent to:

U.S. Department of Housing and Urban Development
Office of RESPA and Interstate Land Sales
451 7th, SW, Room 9154
Washington, DC 20410
Attn: Deborah Denton

If you have any questions, please contact Ms. Denton at (202) 708-0502.

Sincerely

Ivy M. Jackson
Director
Office of RESPA and
Interstate Land Sales

Enclosure
cc: Bonita E. Zelman
Gil Alvarez

Sincerely,

*Ivy M Jackson*

Ivy M. Jackson
Director
Office of RESPA and
 Interstate Land Sales

# EXHIBIT D

## STATE OF FLORIDA
## OFFICE OF FINANCIAL REGULATION

In Re:

**AMERICAN HOME MORTGAGE
CORP. OF NEW YORK**
a registrant under Chapter 494, Fla. Stat.,
Mortgage Broker and Lender Code

**Administrative Proceeding
No.: 1529-F-6/06**

       Respondent.
_____/ .

### FINAL ORDER

The Office of Financial Regulation ("Office"), and Respondent,

AMERICAN HOME MORTGAGE CORP. OF NEW YORK, having entered into a

Stipulation and Consent Agreement last dated _October 12_, 2006,

attached hereto, resolving and concluding this matter;

**IT IS ACCORDINGLY ORDERED:**

1.    The Stipulation and Consent Agreement attached hereto is adopted

and incorporated herein by reference as if set forth at length;

2.    The Office and Respondent shall comply with all provisions of the

incorporated Stipulation and Consent Agreement.

**DONE and ORDERED** this _17th_ day of October 2006, in Tallahassee,

Leon County, Florida.

                          _____

                          DON B. SAXON, Commissioner
                          Office of Financial Regulation

## NOTICE OF RIGHT TO JUDICIAL REVIEW

A PARTY WHO IS ADVERSELY AFFECTED BY THIS FINAL ORDER IS ENTITLED TO JUDICIAL REVIEW PURSUANT TO SECTION 120.68, FLORIDA STATUTES.  APPELLATE PROCEEDINGS ARE GOVERNED BY THE FLORIDA RULES OF APPELLATE PROCEDURE.  SUCH PROCEEDINGS ARE COMMENCED BY MAILING A NOTICE OF APPEAL TO:

THE AGENCY CLERK

OFFICE OF FINANCIAL REGULATION

P.O. BOX 8050

TALLAHASSEE, FL 32314-8050

OR HAND DELIVERING TO 101 EAST GAINES ST., TALLAHASSEE, FLORIDA.  A COPY, ACCOMPANIED BY FILING FEES PRESCRIBED BY LAW, MUST BE FILED WITH THE DISTRICT COURT OF APPEAL, FIRST DISTRICT, OR WITH THE DISTRICT COURT OF APPEAL IN THE APPELLATE DISTRICT WHERE THE PARTY RESIDES.  THE NOTICE OF APPEAL MUST BE FILED WITHIN 30 DAYS OF RENDITION OF THE ORDER TO BE REVIEWED.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Final Order was sent by U. S. Mail to Mitchell H. Kider, Esq., attorney for AMERICAN HOME MORTGAGE CORP. OF NEW YORK, at Weiner Brodsky Sidman Kider PC, 1300  19th St. NW, Fifth Floor, Washington, DC 20036-1609 on this _____ day of October 2006.

Robert H. Schott, Esq.
Fla. Bar No.: 0312266
Assistant General Counsel
Office of Financial Regulation
P.O. Box 8050
Tallahassee, FL  32314-8050
(850) 410-9648
Facsimile:  (850) 410-9645

**STATE OF FLORIDA**
**OFFICE OF FINANCIAL REGULATION**

In Re:

**AMERICAN HOME MORTGAGE**                    **Administrative Proceeding**
    **CORP. OF NEW YORK**                    **No.: 1529-F-6/06**
**a registrant under Chapter 494, Fla. Stat.,**
**Mortgage Broker and Lender Code**

     **Respondent.**
_____/

## STIPULATION AND CONSENT AGREEMENT

The State of Florida, Office of Financial Regulation (the "Office" or "OFR"), pursuant to Chapter 494, Florida Statutes, and AMERICAN HOME MORTGAGE CORP. OF NEW YORK ("Respondent") in consideration of the mutual promises herein, recite, stipulate, and agree as follows:

1. **Background:** Respondent's registered address is 538 Broadhollow Road, Melville, New York 11747.

2. **Jurisdiction:** The Office is responsible for the administration and enforcement of Chapter 494, Florida Statutes, and has jurisdiction over Respondent, AMERICAN HOME MORTGAGE CORP. OF NEW YORK, pursuant to Sections 494.0011, 494.0012, 494.0072, and 494.0073, Florida Statutes.

3. **Findings:** On February 9, 2006, in response to a consumer complaint, the Office examined Respondent's processing of mortgage loan to Gil Alvarez. The examiner reviewed the documents and information received from the complainant and the Respondent. Further, the examiner reviewed records

1

obtained by subpoena and interviewed Mr. Alvarez, the loan originator, and the closing agent. As a result of that examination, the Office alleges the discrepancies or violations described in paragraphs 3.a. and 3.b. below. Respondent neither admits nor denies the allegations.

a. The loan originator acting for Respondent, Lynette Warren, promised Mr. Alvarez a 5.25% interest rate on a thirty year fixed mortgage. However, Ms. Warren failed to lock-in that 5.25% rate, and at closing, the rate had increased to 5.75%. Mr. Alvarez alleges that he had to accept a mortgage loan at 5.75% interest or face legal action.

b. Over the thirty-year life of the mortgage, Mr. Alvarez will incur financial loss. Further, the loan originator's failure to lock-in the promised interest rate constituted negligence and incompetence in a mortgage financing transaction within the meaning of Section 494.0072(2)(b), Florida Statutes.

c. Section 494.0072 authorizes the Office to impose penalties including imposition of a fine not exceeding $5000 per offense when a licensee commits an enumerated offense. Those offences include negligence or incompetence in any mortgage financing transaction. See Subsection 494.0072(2)(b), Florida Statutes.

4. **Consideration:**   The parties agree that the issues raised in this matter can be expeditiously resolved without the expense of litigation and/or a hearing. Therefore, in compromise and settlement of the investigation and in consideration of the Office's forbearance from issuance of an administrative complaint and pursuing litigation.

2

a. That Respondent agrees, in the conduct of any and all business affairs requiring registration under the Act, to strictly comply with all provisions of the Act, Chapter 494, Florida States, as it now exists and as they may be amended. Respondent also agrees to strictly comply with Chapter 69V, Florida Administrative Code, adopted by the Office pursuant to the Act, as such rules now exist and as they may be amended.

b. That Respondent is fined five thousand dollars ($5000.00) payable by cashier's check and made payable to the Department of Financial Services, and mailed to the Agency Clerk, Office of Financial Regulation, 200 E. Gaines Street, Fletcher 526, Tallahassee, Florida 32399-0379, and reference Administrative Proceeding No. 1529-F-6/06. Respondent shall submit the check simultaneous with the return of this executed agreement. Respondent understands and agrees that (1) in accordance with Section 215.31, Florida Statutes, regarding the deposit of monies that the tendered fine or settlement check proceeds may be deposited in advance of full execution or acceptance of the proposed settlement agreement and (2) such deposit shall not be construed as a final acceptance of the Stipulation absent full execution thereof and entry of the Final Order adopting same.

5. **FINAL ORDER:** Respondent consents to the entry of a Final Order adopting and incorporating this Stipulation by reference. Respondent understands and agrees that this Stipulation and Consent Agreement is subject to final approval by the Commissioner of the Office and by entry of a Final Order adopting it. In the event the Final Order is not entered, this Stipulation and

3

Consent Agreement shall be null and void. The Final Order incorporating the terms of this Stipulation and Consent Agreement constitutes final agency action by the Office for which the Office may seek enforcement pursuant to the provisions of Chapter 120 and 494, Florida Statutes.

6. **CONSENT AND WAIVER**. By Respondent's consent to the entry of a Final Order with respect to this proceeding, Respondent knowingly and voluntarily waives:

a. Any right to receipt of administrative charges or complaint and a notice of rights pursuant to Chapter 120, Florida Statutes;

b. Any right to an administrative hearing provided by Chapter 120, Florida Statutes;

c. Any requirement that that Office's Final Order contain separately stated findings of fact and conclusions of law or a notice of rights;

d. Any right to issuance of a recommended order by an administrative law judge from the Division of Administrative Hearings or a hearing officer from the Office; and

e. Any and all rights to object to or to challenge in any judicial proceeding including but not limited to, an appeal pursuant to Section 120.68, Florida Statutes, any term, obligation, condition or requirement of the Final Order.

7. **FAILURE TO COMPLY**: Respondent agrees that failure to comply with any of the terms, obligations, and conditions of this Agreement shall be a violation of a Final Order of the Office. Such noncompliance may result in the

4

**WHEREFORE**, in consideration of the foregoing, the Office and

Respondent executes this Stipulation and Consent Agreement to issuance of a

Final Order, as attached hereto, on the last date indicated below:

**OFFICE OF FINANCIAL REGULATION**

RICHARD WHITE,                          10-12-06

Director, Securities and Financial Regulation          Date

**RESPONDENT**
**AMERICAN HOME MORTGAGE CORP. OF NEW YORK**

By Alan Horn, General Counsel              9/18/06

                                          Date

STATE OF ~~FLORIDA~~ New York
COUNTY OF Suffolk

    BEFORE ME, the undersigned authority, personally appeared Alan Horn
as General Counsel of AMERICAN HOME MORTGAGE CORP. OF NEW
YORK, who is personally known to me or has produced adequate identification,
and who, after being duly sworn, states that he has read and understands the
contents of this Stipulation and Consent Agreement and voluntarily executed the
same.

    SUBSCRIBED and SWORN to before me this 18 day of ~~August~~ Sept. 2006.

NOTARY PUBLIC

My Commission Expires: 2008

ARLENE PARKS
Notary Public State of New York
No. 01PA6111185
Qualified in Suffolk County
Commission Expires June 4, 2008

6

# EXHIBIT E



# American Home Mortgage

### The American Home Building
### 538 Broadhollow Road
### Melville, NY 11747

Stephanie Alagna, Paralegal
Phone Number 631-622-6476
Fax Number 516-495-5418
Email: Stephanie.alagna@americanhm.com

**Settlement Privileged**

December 28, 2006

Ms. Bonita E. Zelman
2001 Marcus Ave., Suite S150
Lake Success, NY 11042

**RE: Gil Alverez**

Dear Ms. Zelman:

We are in receipt of your letter dated December 4, 2006 requesting a resolution of the above referenced complaint. We will be sure to expedite this and get a response back to you as soon as we can.

Thank you for your patience and attention to this matter. Please feel free to contact me should you have any questions.

Very truly yours,

Stephanie Alagna

LAW OFFICES OF

## Bonita E. Zelman
2001 MARCUS AVENUE
SUITE S150
LAKE SUCCESS, N.Y. 11042
516-616-0707
FAX: 516-616-0761

By Facsimile to (516) 495-5418

April 6, 2007

John Kalas, Esq.
American Home Mortgage
Corporate Headquarters
520 Broadhollow Road
Melville, New York 11747

Re: Settlement Proposal for Gil Alvarez, AHM Loan#10000769615.

Dear Mr. Kalas,

This letter is to confirm my conversation with Stephanie Alagna on April 5, 2007 with a view toward reaching a settlement in the above referenced claim in order to expeditiously resolve this matter and obviate lengthy and costly litigation. Ms. Alagna informed me that AHM can not obtain the 5.25% interest rate that AHM initially represented it would secure for Mr. Alvarez. We pointed out to Ms. Alagna that AHM entered a Consent Agreement with the Florida Office of Financial Regulation whereby it stipulated as a finding of fact that its loan originator failed to lock-in the promised rate of 5.25% interest for Mr. Alvarez on the thirty year mortgage and that therefore the rate increased to 5.75%. Ms. Alagna requested that we submit our settlement demand in writing for your review.

In order to arrive at this settlement demand we retained a Certified Public Accountant to calculate the difference between the 5.25% mortgage rate AHM promised Mr. Alvarez and the 5.75% he was compelled to accept. The accountant utilized what is known as an Amortization Schedule and calculated that over thirty (30) years Mr. Alvarez would be wrongfully forced to pay $30,806 in additional interest. The Net Present Value of the interest in today's dollars is $15,000.00.

In addition to the interest owed Mr. Alvarez attorney's fees were incurred in the amount of $16,812.50 for handling this case, disbursements of $274.73 for a total settlement demand of $32,087.23. Please telephone me so that we may discuss an amicable resolution to this matter.

Thank you in advance for your personal attention and response in this regard.

Very truly yours,

*Bonita E. Zelman*

Bonita E. Zelman

cc: Stephanie Alagna, Paralegal
    American Home Mortgage

# EXHIBIT F



# American Home Mortgage
### The American Home Building
### 538 Broadhollow Road
### Melville, NY 11747

Stephanie Alagna, Paralegal
Phone Number 631-622-6476

**Settlement Privilege**

**VIA UPS**

**April 13, 2007**


Bonita E. Zelman, Esq.
2001 Marcus Avenue, Suite S150
Lake Success, NY 11042

RE: Settlement Proposal for Gil Alvarez AHM Loan # 10000769615

Dear Ms. Zelman:

This letter is to inform you that we will not be negotiating settlement with Mr. Alvarez.

Very truly yours,

Stephanie Alagna

# EXHIBIT G



1 Home Campus
Des Moines, IA 50328-0001



December 22, 2006

Ms. Bonita Zelman
2001 Marcus Avenue
Suite S150
Lake Success, NY 11042

Re:    Wells Fargo Home Mortgage ("WFHM") Loan Number 0197014558
       Your Client's Name:  Gil Alvarez

Dear Ms Zelman:

This letter is in response to your correspondence dated December 4, 2006 addressed to
Mr. Richard Kovacevich, Wells Fargo & Co., Chairman and CEO, and forwarded to the
WFHM Executive Resolution department on December 20, 2006.  In your letter, you
stated WFHM fraudulently obtained a mortgage from American Home Mortgage
("AHM").

Because you have not supplied any new information, WFHM's position has not changed.

You have requested confidential information that is for WFHM internal use only.

WFHM considers this matter closed unless new information is presented.

Sincerely,

John R Petermeier
Executive Communications Coordinator
Wells Fargo Home Mortgage
(800) 840-5812

Enclosure:    Letter dated September 13, 2006