UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

Chapter 11

In re:

Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.

Related to Claim No.: 10384

(Jointly Administered)

Debtors,

MOTION OF GIL QUENTIN ALVAREZ FOR AN ORDER
TO FILE AN ADDITIONAL LATE PROOF OF CLAIM

1.     Gil Quentin Alvarez, Movant, moves this Honorable Court for an Order to file an

additional Proof of Claim (Related Claim No.: 10384). In support of this Motion, Gil Q. Alvarez

respectfully incorporates his original claim in its entirety. In support of his Motion, Movant

states as follows:

2.     Movant, Gil Quentin Alvarez, and his wife signed a contract for the sale and purchase of a

home in Apopka, Florida on February 5, 2005. Debtor/Defendant [in a related adversary

proceeding] AHM assured Movant that they would obtain a 5.25% fixed rate and "lock it in".

3.     On the day of closing Movant was ambushed with a higher interest rate of 5.75% rather

than the one that Debtor had originally represented, i.e. 5.25%. Movant was forced to close

on the home with a 5.75% interest rate because the seller was purchasing a home in Tampa,

Florida that very day. Had Movant not elected to purchase the home, he would have been

subject to legal action from the seller.

4.     In April 2005, Movant consulted with an attorney, Bonita E. Zelman, who agreed to assist

Movant at a reduced rate on a claim only basis in his dispute with AHM.

5.      On April 7, 2005, Movant wrote a "Qualified Written Request" for relief pursuant to

Section 6 of the Real Estate Settlement and Procedures Act (RESPA 12 U.S.C. 2605).

6.      Shortly thereafter Debtor AHM knowing full well the misconduct associated with the

mortgage, sold the mortgage to the Defendant [in a related adversarial proceeding], Wells Fargo

Home Mortgage.  The transfer became effective May 1, 2005.

7.      It is the basis of this unlawful sale of a fraudulently and negligently obtained mortgage that

this additional proof of claim is filed.

8.      On April 11, 2005 attorney Bonita Zelman contacted Defendant [in a related adversarial

proceeding], Michael Strauss and informed him regarding the unlawful misconduct which had

occurred to the Movant.

9.      On April 13, 2005 attorney Zelman also sent a "Qualified Written Request" to Defendant

Wells Fargo requesting inter alia, that they not go through with the transfer of the mortgage.

10.     Instead of conducting an investigation into the misconduct committed as they are required

by RESPA, or make the appropriate corrections to the account, Defendant's AHM, Michael

Strauss and Wells Fargo, embarked upon a pattern of deceit and fraud by fabricating different

accounts and scenarios all in order to deprive the Movant of his rights under the TILA and

RESPA, and, failed to provide Movant with the information he requested in order to hinder

his access to justice and to wrongfully appropriate excess interest to which they were not entitled

to.

11.     Defendant AHM, among many fabricated scenarios, also intentionally lied to Defendant

Wells Fargo that Movant's father-in-law had used a $600.00 credit offered by Defendant to

2

Plaintiff to settle this matter.

12.    This $600.00 credit which was unilaterally proffered by Debtors because of their unlawful actions, is also the subject of this additional Proof of Claim.

13.    Defendant Wells Fargo after initially indicating that they would investigate the matter, then refused to do so in order to reap the benefits and wrongfully appropriate excess interest to which they were not entitled to and to hinder Movant from asserting his rights under the law.

14.    Since Defendant AHM and Defendant Strauss showed no inclination to act appropriately, professionally or to comply with the law, Movant was forced to file complaints with the U.S. Department of Housing and Urban Development and the State of Florida Office of Financial Regulation.

15.    In response to inquiries sent by the U.S. Department of Housing and Urban Development and the Florida Office of Financial Regulation, Defendant AHM and Defendant Strauss who was Chairman, President and CEO of Debtor and responsible for "strategic directions as well as overseeing day-to-day operations", continued in their pernicious pattern of deceit and fraud by continuing to fabricate intentional falsehoods and lies in regards to their commercial interaction with the Movant.

16.    On November 21, 2005, the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development directed Defendant AHM and Defendant Strauss to reach a resolution with the Movant and his attorney within 15 days.  Defendant AHM and Defendant Strauss wrongfully refused to do so.

17.    On October 17, 2006 the Office of Financial Regulation in the State of Florida took administrative action against Defendant AHM.  In a Stipulation and Consent Agreement the State

3

of Florida fined the Defendant five thousand dollars ($5,000.00) for their misconduct against the Movant. This document is signed by Mr. Alan B. Horn, the General Counsel of Defendant AHM and who reported directly to Defendant Strauss.

18.    Among the factual findings by the Florida Office of Financial Regulation were the following: **a) The loan originator acting for the Respondent (i.e. Defendant AHM) promised Mr. Alvarez (Movant) a 5.25% interest rate, and at closing, the rate had increased to 5.75%. Mr. Alvarez alleges that he had to accept a mortgage loan at 5.75% interest or face legal action. b) over the thirty-year life of the mortgage, Mr. Alvarez (Movant) will incur financial loss (emphasis added).**

19.    As this Honorable Court is aware, this Stipulation and Consent Agreement entered into by the State of Florida Office of Financial Regulation and Defendant AHM effectively estops the Defendant's AHM, Wells Fargo or Defendant Strauss of creating or generating any further implausible or factually challenged scenarios regarding the misconduct they committed against Movant or that the money they are receiving or have received are lawfully obtained.

20.    On December 4, 2006 attorney Zelman requested that Defendant Strauss and Defendant AHM set up a meeting with Defendant Wells Fargo so as to settle this matter. As has been the custom and practice, Defendants Strauss, AHM and Wells Fargo refused to settle this matter.

21.    After receiving no response to repeated requests for a resolution to this matter, attorney Zelman contacted Defendant Strauss and Defendant AHM to request a settlement. Defendant AHM informed attorney Zelman that they had D&O policies and to indicate Movant's losses in the form of a letter so that they could submit a claim to their D&O policies. Movant's attorney mailed said letter on April 5, 2007.

4

22.     On April 13, 2007 Defendant AHM, after initially indicating their willingness to settle and

upon information and belief in knowing that they would file for bankruptcy protection and the

need to preserve D&O policies for the benefit of Defendant's  Strauss and AHM

for the misconduct later alleged by the SEC and other entities, wrongfully refused settle with the

Movant.

.

### MISCONDUCT COMMITTED POST PETITION FILING

23.     On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a

voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy

Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor

in possession pursuant to sections 1107(a) and 1108 of the bankruptcy Code.

24.     Despite the fact that Defendant AHM and Defendant Strauss were personally aware of

Movant's claim, they wrongfully and without just cause chose not to notice him or list him as a

potential creditor.

25.     On September 15, 2008, Movant appeared before the Honorable Christopher S. Sontchi

and was directed by the Court to work together with Defendant's counsel i.e. with Mr. Nathan

Grow, Esq., so that a proposed Form of Order in connection with Movant's motion be prepared.

26.     While Movant was initially worried in working with Defendant's counsel and found the

direction of the Court to do so disconcerting, he later appreciated the wisdom of the Court in that

it allowed both parties to communicate with each other and find common ground on resolving

the issues.

27.     From September 15, 2008 until October 6, 2008 Movant communicated and negotiated

with Mr. Grow by way of telephone and e-mail.  During these negotiations, Movant pointed out

to Mr. Grow the findings by the State Office of Financial Regulation who had fined the

Defendants in regards to Movant's case and the November 21, 2005 letter to Defendant Strauss

from the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and

Urban Development that directed Defendant Strauss to reach a resolution with the Movant and

his then attorney in which he then wrongfully refused to do so.

28.     Movant, during these negotiations, refused to agree to any "reservation of rights" without

knowing what specific rights were to be reserved.  Movant wanted complete finality with regards

to his claim and informed this to Mr. Grow.

## DEFENDANT AHM ENGAGES IN BAD FAITH BY PREVARICATING TO AN OFFICER OF THE COURT AND MOVANT REGARDING THEIR D&O POLICIES

29.     During these negotiations, Movant requested that Mr. Grow reach out to Defendants to

inquire if they would use their insurance which would cover the misconduct committed by

Defendants and their officers/agents.  Despite the fact that Defendants had initially indicated to

Movant's then attorney that they had insurance in the form of Directors and Officers liability

insurance policies to cover Movant's situation, and in fact told her to submit her demand in the

form of a letter so that they may file a claim with their D&O policies, they then wrongfully and

without just cause prevaricate to Mr. Grow on October 3, 2008 that they did not have such

insurance.

30.     As this Court is aware, after prevaricating to Mr. Grow that they did not have insurance to

cover their unlawful actions against the Movant, Defendant's requested that this Court allow

them to use their D&O policies to fund Settlements and Stipulation and Agreements against

Defendant AHM and Defendant Michael Strauss (See Docket No. 7934, dated 8/11/09).

6

31.    Irrespective of the fact that Movant knew that Defendants had prevaricated to Mr. Grow, Movant was very clear with Mr. Grow that he did not want Defendants to maintain rights in perpetuity which they would later attempt to use in any adversary proceeding against him and wanted to settle this matter.  Indeed on three occasions Movant indicated to Mr. Grow that he would reach out to Your Honor because he was not satisfied with the adverse language being drafted in the proposed Form of Order and because he wanted a Form of Order that would bring finality to his claim.

32.    After extensive back and forth negotiations, it was agreed that Defendant AHM and Movant would resolve his claim in good faith.  On October 10, 2008 the Order was signed by Your Honor which ordered inter alia, that Defendant and Movant will work in good faith to resolve his claim.  See Docket No. 6189 and 6219.

**DESPITE THE FACT THAT DEFENDANT AHM AGREED TO RESOLVE THE CLAIM IN GOOD FAITH, AND IN FACT WERE ORDERED TO DO SO BY THIS COURT, DEFENDANT AHM ENGAGES IN BAD FAITH BY REFUSING TO NEGOTIATE OR RESOLVE THE CLAIM WITH MOVANT.**

33.    Despite the fact that Movant wanted to resolve his claim absent an adversarial proceeding, Defendants continued their pattern of disdain toward Movant and his claim by refusing to abide by their agreement and refusing to comply with the Order issued by this Court to resolve the claim.

34.    On December 20, 2010 Movant submitted a Subordination Statement to this Court which outlined all of the issues mentioned in this Motion.

35.    Prior to March 9, 2011 the date set by this Court for a hearing on the Subordination Statements, counsel to the trustee reached out to Movant not to settle this matter but to convince

7

him to drop his Subordination Statement. In response, Defendant and counsel to the trustee

indicated, contrary to their written agreement and the Order of this Court that any subordination

rights should be "**...properly brought as an adversary proceeding under Part VII of the**

**Federal Rules of Bankruptcy Procedure." Emphasis added.** See Docket No. 9748 dated

2/1/2011.

36.    On March 9, 2011 Movant appeared before Your Honor and objected to his funds being

transferred by the trustee that were the subject of a Court Order. Movant pointed out that his

case was different from the other claims in that he had factual findings against the Defendants by

the State of Florida Office of Financial Regulation and that he had an agreement to settle this

matter in good faith outside an adversary proceeding.

37.    In response Defendants futilely attempted to state that they complied with the Courts Order

by ridiculously calling Movant at home prior to the hearing in order to persuade him to drop his

subordination statement. It was at this juncture that Your Honor directed Defendant AHM to go

out into the hallway and reach an agreement with the Movant.

**DEFENDANTS "ONE AND ONLY" COURT DIRECTED "GOOD FAITH
NEGOTIATION" WAS A THREE MINUTE TAKE IT OR LEAVE IT OFFER OF
ABOUT ONE PERCENT OF MOVANT'S CLAIM**

38.    After almost two and a half years of wrongfully and without just cause prolonging

resolution of Movant's claim, Defendants arrogant offer was that Movant accept about one

percent of his claim. When Movant suggested other relief Debtors disingenuously indicated that

they could not offer anything more and that any further relief would have to come from Your

Honor. Movant is aware that Defendants have in other cases, after good faith negotiations,

settled claims for more than one percent. Defendants unwillingness to negotiate in good faith

8

and inflexibility left Movant with no alternative but to file an adversary proceeding as Defendants all but urged him to do, a Motion for Sanctions and this Motion. It was apparent from Movant's brief "good faith negotiation" that Defendant's after almost two and a half years, had absolutely no clue as to Movant's claim therefore rendering any "settlement offer" devoid of any analysis of the facts or conclusions of law. It is indeed deplorable that Defendants would treat a Pro-se Movant and his wife in such a demeaning, uncaring and despicable manner as they did on March 9, 2011.

39.    It would be in the best interests of justice that the proof of claim attached hereto be filed in this bankruptcy so that Movant may proceed to prosecute his claim in accordance to the law and the express desire of the Debtors/Defendants. The Debtor will not be harmed or injured by the filing of this claim at this time since they have had notice of all of the issues and events leading up to this filing. This proof of claim would have been filed in 2008 had the Debtors not lied to Movant into believing that they would work in good faith to resolve this claim or had they not prevaricated that they did not have D&O policies to settle Movant's claim.

40.    To allow debtor not to answer for their misconduct in this forum would allow them to benefit from their unacceptable and illegal conduct.

Dated:   March 18, 2011
         Apopka, Florida

                                        Respectfully submitted,

                                        Gil Quentin Alvarez
                                        Movant, Pro-se
                                        Address of Movant:
                                        542 Mount Argyll Court
                                        Apopka, Florida 32712
                                        Tel: 407-731-5670

9