## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| _____ | **Chapter 11** |
| **In re:** | **Case No. 07-11047 (CSS)** |
| **AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.** | **(Jointly Administered)** |
| **Debtors,** | |
| _____ | |

### MOTION FOR SANCTIONS AGAINST DEBTOR AMERICAN HOME MORTGAGE

Movant, Gil Quentin Alvarez files this Motion seeking sanctions against the Debtor, American Home Mortgage ("AHM").

## I.    SUMMARY OF ARGUMENT

1.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    Despite the fact that Debtor AHM and its then Chairman, President and CEO Michael Strauss were aware of Movant's claim, they wrongfully and without just cause chose not to notice him or list him as a potential creditor.

3.    On September 15, 2008, Movant appeared before this Honorable Court and was directed by the Court to work together with Debtor's counsel, i.e. Mr. Nathan Grow, Esq., so that a proposed Form of Order in connection with Movant's motion be prepared.

1

4.   While Movant was initially worried in working with Debtor's counsel and found the direction of the Court to do so disconcerting, he later appreciated the wisdom of the Court in that it allowed both parties to communicate with each other and find common ground on resolving the issues.

5.   From September 15, 2008 until October 6, 2008 Movant communicated and negotiated with Mr. Grow by way of telephone and e-mail. During these negotiations, Movant pointed out to Mr. Grow the findings by the State of Florida Office of Financial Regulation who had fined the debtors in regards to Movant's case and the November 21, 2005 letter to Mr. Strauss from the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development that directed Mr. Strauss and AHM to reach a resolution with the Movant and his then attorney which they then wrongfully refused to do.

6.   Movant, during these negotiations, refused to agree to any "reservation of rights" without knowing what specific rights were to be reserved. Movant wanted complete finality with regards to his claim and informed this to Mr. Grow.

## DEBTOR AHM ENGAGES IN BAD FAITH BY PREVARICATING TO AN OFFICER OF THE COURT AND MOVANT REGARDING THEIR D&O POLICIES

7.   During these negotiations, Movant requested that Mr. Grow reach out to Debtors to inquire if they would use their insurance which would cover the misconduct committed by Debtors and their officers/agents. Despite the fact that Debtors had initially indicated to Movant's then attorney that they had insurance in the form of Directors and Officers liability insurance policies to cover Movant's situation, and in fact had asked her to submit a written claim so that they may submit it to their D&O policy, they then wrongfully and without just cause prevaricate to Mr.

2

Grow, an officer of the court, and by extension to the Movant, on or about October 3, 2008 that they did not have such insurance.

8.    As this Court is aware, after prevaricating to Mr. Grow that they did not have insurance to cover their unlawful actions against the Movant, Debtors requested that this Court allow Debtors to use their D&O policies to fund Settlements and Stipulation and Agreements against AHM and Michael Strauss (See Docket No. 7934, dated 8/11/09).

9.    Irrespective of the fact that Movant knew that Debtors had prevaricated to Mr. Grow, Movant was very clear with Mr. Grow that he did not want Debtors to maintain rights in perpetuity which they would later attempt to use in any adversary proceeding against him and wanted to settle this matter.  Indeed on three occasions Movant indicated to Mr. Grow that he would reach out to Your Honor because he was not satisfied with the adverse language being drafted in the proposed Form of Order and because he wanted a Form of Order that would bring finality to his claim.

10.    After extensive back and forth negotiations, it was agreed that Debtors and Movant would resolve his claim in good faith.  On October 10, 2008 the Order was signed by Your Honor which ordered inter alia, that Debtors and Movant will work in good faith to resolve his claim.  See Docket No. 6189 and 6219.

**DESPITE THE FACT THAT DEBTORS AGREED TO RESOLVE THE CLAIM IN GOOD FAITH, AND IN FACT WERE ORDERED TO DO SO BY THIS COURT, DEBTORS ENGAGE IN BAD FAITH BY REFUSING TO NEGOTIATE OR RESOLVE THE CLAIM WITH MOVANT.**

11.    Despite the fact that Movant wanted to resolve his claim absent an adversarial proceeding, Debtors continued their pattern of disdain toward Movant and his claim by refusing to abide by

3

their agreement and refusing to comply with the Order issued by this Court to resolve the claim.

12.    On December 20, 2010 Movant submitted a Subordination Statement to this Court which outlined all of the issues mentioned in this Motion.

13.    Prior to March 9, 2011 the date set by this Court for a hearing on the Subordination Statements, counsel to the Trustee reached out to Movant not to settle this matter but to convince him to drop his Subordination Statement.  In response, Debtors, contrary to their written agreement and the Order of this Court, indicated that any subordination rights should be "...properly brought as an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure."  See Docket No. 9748 dated 2/1/2011.

14.    On March 9, 2011 Movant appeared before Your Honor and objected to his  funds being transferred by the trustee that were the subject of a Court Order.  Movant pointed out that his case was different from the other claims in that he had factual findings against the Debtors by the State of Florida Office of Financial Regulation, and that he had an agreement to settle this matter in good faith outside an adversary proceeding.

15.    In response, Debtors futilely attempted to state that they complied with the Court's Order by ridiculously calling Movant at home prior to the hearing in order to persuade him to drop his subordination statement.  It was at this juncture that Your Honor directed Debtors to go out into the hallway and reach an agreement with the Movant.

**DEFENDANTS "ONE AND ONLY" COURT DIRECTED "GOOD FAITH NEGOTIATION" WAS A THREE MINUTE TAKE IT OR LEAVE IT OFFER OF ABOUT ONE PERCENT OF PLAINTIFFS CLAIM**

16.    Debtors made what was a take it or leave it offer in that Movant accept about one percent of his claim.  When Movant suggested other relief, Debtors disingenuously indicated that they

4

could not offer anything more and that any further relief would have to come from Your Honor. Movant is aware that Debtors have in other cases after good faith negotiations, settled claims for more than one percent of their claims. Debtors unwillingness to negotiate in good faith and inflexibility left Movant with no alternative but to file a complaint/adversary proceeding as Debtors all but urged him to do, and this Motion for sanctions. It was apparent from Plaintiffs brief "good faith negotiation" that Debtors, after almost two and a half years, had absolutely no clue as to Plaintiffs claim therefore rendering any "settlement offer" devoid of any analysis of the facts or conclusions of law. It is indeed deplorable that Debtors would treat a Pro-se Movant and his wife in such a demeaning, uncaring and despicable manner as they did on March 9, 2011.

17.    The conduct displayed by Debtor AHM must be sanctioned to ensure the efficient administration of justice and to protect the bankruptcy process. The bankruptcy system relies on the candor and accuracy of information presented by all parties, creditors, debtors and lawyers alike. To ensure candor before this Court and to protect the integrity of the bankruptcy system, this Court should impose on AHM monetary sanctions and other non-monetary relief as this Court deems appropriate pursuant to its inherent authority to sanction abusive litigants coming before the Court, and pursuant to 11 U.S.C. section 105(a).

18.    The court system is dependent on all parties engaged in litigation abiding by the orders of the court. The failure to comply with orders not only impairs the efficient functioning of the court and adjudication of claims, but breeds disrespect for the dictates of the bankruptcy Code and a culture in which cases can linger for years without resolution. If the integrity of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity.

19.    AHM in the course of their business, profession and employment, supplied false information to the Movant which Movant justifiably relied upon.  AHM failed to exercise reasonable care and competence in obtaining, verifying and communicating said information regarding the existence of D&O policies to the Movant.

20.    AHM has acted in bad faith in ignoring court orders and presenting Movant with misleading information regarding the existence of D&O policies.  Their conduct needlessly protracted the litigation in this case and caused Movant further harm, expenses and needless litigation contrary to their October 2008 agreement and this Court's October 10, 2008 Order. Therefore, sanctions tailored to deter such conduct in the future are clearly warranted.


Dated:   March 18, 2011
            Apopka, FL 32712



                                                    Respectfully submitted,



                                                    Gil Quentin Alvarez
                                                    Movant, Pro-se
                                                    542 Mount Argyll Court
                                                    Apopka, FL 32712
                                                    407-731-5670

6