UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al. | Case No. 07-11047 (CSS) (Jointly Administered) |
| Debtors, |  |

**MEMORANDUM OF LAW IN SUPPORT OF MOVANT'S MOTION FOR
SANCTIONS AGAINST DEBTOR AMERICAN HOME MORTGAGE**

TO THE HONORABLE CHRISTOPHER S. SONTCHI:

Movant, Gil Quentin Alvarez, files this memorandum of law ("Memorandum") in support of his motion for sanctions under the Court's inherent power to sanction bad faith conduct and 11 U.S.C. section 105(a) ("Motion"). The Motion seeks sanctions against the Debtor, American Home Mortgage ("AHM").

**I.    SUMMARY OF ARGUMENT**

1.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    Despite the fact that Debtor AHM and its then Chairman, President and CEO Michael Strauss were aware of Movant's claim, they wrongfully and without just cause chose not to notice him or list him as a potential creditor.

1

3. On September 15, 2008, Movant appeared before this Honorable Court and was directed by the Court to work together with Debtor's counsel i.e. Mr. Nathan Grow, Esq., so that a proposed Form of Order in connection with Movant's motion be prepared.

4. While Movant was initially worried in working with Debtor's counsel and found the direction of the Court to do so disconcerting, he later appreciated the wisdom of the Court in that it allowed both parties to communicate with each other and find common ground on resolving the issues.

5. From September 15, 2008 until October 6, 2008 Movant communicated and negotiated with Mr. Grow by way of telephone and e-mail. During these negotiations, Movant pointed out to Mr. Grow the findings by the State of Florida Office of Financial Regulation who had fined the debtors in regards to Movant case and the November 21, 2005 letter to Mr. Strauss from the Director of RESPA and Interstate Land Sales at the U.S. Department of Housing and Urban Development that directed Mr. Strauss and AHM to reach a resolution with the Movant and his then attorney in which he then wrongfully refused to do so.

6. Movant, during these negotiations, refused to agree to any "reservation of rights" without knowing what specific rights were to be reserved. Movant wanted complete finality with regards to his claim and informed this to Mr. Grow.

**DEBTOR AHM ENGAGES IN BAD FAITH BY PREVARICATING TO AN OFFICER OF THE COURT AND MOVANT REGARDING THEIR D&O POLICIES**

7. During these negotiations, Movant requested that Mr. Grow reach out to debtors to inquire if they would use their insurance which would cover the misconduct committed by debtors and their officers/agents. Despite the fact that debtors had initially indicated to Movant's then

attorney that they had insurance in the form of Directors and Officers liability insurance policies to cover Movant's situation, and in fact had asked her to submit a written claim so that they may submit it to their D&O policy, they then wrongfully and without just cause prevaricate to Mr. Grow, an officer of the court, and by extension to the Movant, on or about October 3, 2008, that they did not have such insurance.

8. As this Court is aware, after prevaricating to Mr. Grow that they did not have insurance to cover their unlawful actions against the Movant, Debtors requested that this Court allow Debtors to use their D&O policies to fund Settlements and Stipulation and Agreements against AHM and Michael Strauss (See Docket No. 7934, dated 8/11/09).

9. Debtors in the course of their business, profession and employment, supplied false information to the Movant which Movant justifiably relied upon. Debtors failed to exercise reasonable care and competence in obtaining, verifying and communicating said information regarding the existence of D&O policies to the Movant.

10. Irrespective of the fact that Movant knew that Debtors had prevaricated to Mr. Grow, Movant was very clear with Mr. Grow that he did not want debtors to maintain rights in perpetuity which they would later attempt to use in any adversary proceeding against him and wanted to settle this matter. Indeed on three occasions Movant indicated to Mr. Grow that he would reach out to Your Honor because he was not satisfied with the adverse language being drafted in the proposed Form of Order and because he wanted a Form of Order that would bring finality to his claim.

11. After extensive back and forth negotiations, it was agreed that Debtors and Movant would resolve his claim in good faith. On October 10, 2008 the Order was signed by Your Honor which

ordered inter alia, that Debtors and Movant will work in good faith to resolve his claim. See Docket No. 6189 and 6219).

**DESPITE THE FACT THAT DEBTORS AGREED TO RESOLVE THE CLAIM IN GOOD FAITH, AND IN FACT WERE ORDERED TO DO SO BY THIS COURT, DEBTORS ENGAGE IN BAD FAITH BY REFUSING TO NEGOTIATE OR RESOLVE THE CLAIM WITH MOVANT.**

12. Despite the fact that Movant wanted to resolve his claim absent an adversarial proceeding, Debtors continued their pattern of disdain toward Movant and his claim by refusing to abide by their agreement and refusing to comply with the Order issued by this Court to resolve the claim.

13. On December 20, 2010 Movant submitted a Subordination Statement to this Court which outlined all of the issues mentioned in this Motion.

14. Prior to March 9, 2011, the date set by this Court for a hearing on the Subordination Statements, counsel to the Trustee reached out to Movant not to settle this matter but to convince him to drop his Subordination Statement. In response, Debtors, contrary to their written agreement and the Order of this Court, indicated that any subordination rights should be "...properly brought as an adversary proceeding under Part VII of the Federal Rules of Bankruptcy Procedure." See Docket No. 9748 dated 2/1/2011.

15. On March 9, 2011 Movant appeared before Your Honor and objected to his funds being transferred by the trustee that were the subject of a Court Order. Movant pointed out that his case was different from the other claims in that he had factual findings against the debtors by the State of Florida Office of Financial Regulation, and that he had an agreement to settle this matter in good faith outside an adversary proceeding.

16. In response, Debtors futilely attempted to state that they complied with the Court's Order

by ridiculously calling Movant at home prior to the hearing in order to persuade him to drop his subordination statement. It was at this juncture that Your Honor directed Debtors to go out into the hallway and reach an agreement with the Movant.

**DEFENDANTS "ONE AND ONLY" COURT DIRECTED "GOOD FAITH NEGOTIATION" WAS A THREE MINUTE TAKE IT OR LEAVE IT OFFER OF ABOUT ONE PERCENT OF PLAINTIFF'S CLAIM**

17. Debtors made what was a take it or leave it offer in that Movant accept one percent of his claim. When Movant suggested other relief Debtors disingenuously indicated that they could not offer anything more and that any further relief would have to come from Your Honor. Movant is aware that Debtors have in other cases after good faith negotiations, settled claims for more than one percent of their claims. Debtors unwillingness to negotiate in good faith and inflexibility left Movant with no alternative but to file a complaint/adversary proceeding as Debtors all but urged him to do, and this Motion for sanctions. It was apparent from plaintiffs brief "good faith negotiation" that Debtors after almost two and a half years, had absolutely no clue as to plaintiffs claim therefore rendering any "settlement offer" devoid of any analysis of the facts or conclusions of law. It is indeed deplorable that Debtors would treat a Pro-se Movant and his wife in such a demeaning, uncaring and despicable manner as they did on March 9, 2011.

18. The conduct displayed by Debtor AHM must be sanctioned to ensure the efficient administration of justice and to protect the bankruptcy process. The bankruptcy system relies on the candor and accuracy of information presented by all parties, creditors, debtors and lawyers alike. To ensure candor before this Court and to protect the integrity of the bankruptcy system, this Court should impose on AHM monetary sanctions and other non-monetary relief as this Court deems appropriate pursuant to its inherent authority to sanction abusive litigants coming

before the Court, and pursuant to 11 U.S.C. section 105(a).

## II. JURISDICTION

19. This Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334; 11 U.S.C. section 105 (a); Fed. R. Bankr. P. 9014; and this Court's inherent authority. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A). Venue is proper and consistent with 28 U.S.C. section 1409 because the instant case is being administered in this District.

## III. AHM SHOULD BE SANCTIONED PURSUANT TO THIS COURT'S INHERENT POWERS TO PREVENT MISCONDUCT AND UNDER 11 U.S.C. SECTION 105 TO PREVENT ABUSE OF PROCESS

### A. The Court's Authority to Sanction

It is well established that the federal courts, including bankruptcy courts, possess the inherent powers necessary to sanction litigants for misconduct occurring before the Court. Chambers v. NASCO, Inc., 501 U.S. 32, 45-48; see also In re Evergreen Security, Ltd. 570 F.3d 1257, 1263 (11th Cir. 2009)(noting that bankruptcy courts are federal courts that have the inherent power to sanction); In re Yorkshire, LLC, 540 F.3d 328, 332 (5th Cir. 2008)(affirming sanctions under bankruptcy court's inherent powers). Further, the fact that conduct may arguably fall afoul of, or be governed by, other rules and statutes does not deprive a court of its inherent power to sanction bad faith conduct. Chambers, 501 U.S. at 46-47. To invoke its inherent powers, a court must find that the party being sanctioned acted in bad faith. Yorkshire, 540 F.3d at 332 (citing Elliot v. Tilton, 64 F.3d 213, 217 (5th Cir. 1995); see also Fink v. Gomez, 239 F.3d 989, 993-94 (9th Cir. 2001)(reckless statements made to the court coupled with an improper purpose, such as the manipulation of proceedings, was tantamount to bad faith and sufficient to impose sanctions under the court's inherent authority). The Fifth Circuit has affirmed a bankruptcy court's power

to issue monetary sanctions if the sanction is "what is sufficient to deter repetition of such conduct by others similarly situated. Yorkshire, 540 F.3d at 332-33. The bankruptcy court in Yorkshire specifically looked to Rule 9011©) for guidance on imposing sanctions under the court's inherent powers and rejected the notion that an award of attorneys fees was the sole remedy available. Rule 9011 ©)(2) permits the imposition of monetary sanctions "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." In the instant matter the conduct displayed by the Debtors in lying to Movant that no D&O policies were available when in fact they were planing to use them later on Docket No. 7934 date 8/11/09, is actually of greater harm since false representations such as this, there is less opportunity for the parties and the Court to ensure that a miscarriage of justice does not occur based on those false representations.

Further, pursuant to section 105(a), this "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title...or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. section 105(a). Section 105(a) has granted "broad authority" to bankruptcy courts. Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 375 (2007). It is well established that section 105(a) may be invoked to protect the bankruptcy process from abuse. See Campbell v. Countrywide Home Loans, Inc., 545 F.3d 348, 365 n.1 (5th Cir. 2008)(noting that section 105 is available to discipline parties who "attempt to abuse the procedural mechanisms with the bankruptcy court"); see also Walton v. LaBarge (In re Clark), 223 F.3d 859, 864(8th Cir. 1999); In the Matter of Volpert, 110 F.3d 494, 500 (7th Cir. 1997); Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.), 77 F.3d 278, 283-84 (9th Cir.

1996); Jones v. Bank of Sante Fe (In re Courtesy Inns, Ltd. Inc.), 40 F.3d 1084, 1089 (10th Cir. 1994). In Re Barron, 264 B.R. 833, 844 (Bankr. E.D. Tex 2001) the court observed that "the scope of that restriction should not be exaggerated to the point at which bankruptcy courts feel powerless to act unless a party can present a specific textual quotation which precisely identifies the availability of a specific remedy."

**B.     AHM Conduct Warrants the Imposition of Sanctions**

In this case, remedial sanctions, including a monetary fine, should be ordered to deter such future conduct by similarly situated parties. AHM misled the Movant, an officer of the court and ultimately this Court in regards to the existence of D&O policies which they indicated as far back as 2007 that they had and then lied that they did not have in order not to settle Movant's claim. AHM negotiated with Movant and agreed to resolve his claim in good faith in October 2008 and then failed to do so. They then with contemptuous cynicism go out into the hallway and offer Movant about one percent of his claim in a take it or leave it manner. **NEVER did the Court revoke its October 10, 2008 Order and not surprisingly, since that day no further effort has been undertaken to resolve Movant's claim. Emphasis added.** . In fact, the posture of AHM has been to disregard the Court Order and for Movant to go ahead and file an adversary proceeding. It is indeed sad when such ambivalence and hubris overcome the requirement of attorneys to seek negotiation, settlement and rule of law. The bankruptcy system requires that creditors, their agents and attorneys exercise a degree of candor with this court necessary for the swift adjudication of claims required by the bankruptcy code and rules. AHM by engaging in such misconduct has moved away from the well defined concept that "The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is

encouraged."

The court system is dependent on all parties engaged in litigation abiding by the orders of the court. The failure to comply with orders not only impairs the efficient functioning of the court and adjudication of claims, but breeds disrespect for the dictates of the bankruptcy Code and a culture in which cases can linger for years without resolution. If the integrity of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity.

AHM has acted in bad faith in ignoring court orders and presenting Movant with misleading information regarding the existence of D&O policies. Their misconduct needlessly protracted the litigation in this case and caused Movant extensive harm, expenses and needless litigation contrary to their October 2008 agreement and this Court's October 10, 2008 Order. Therefore, Court action and sanctions tailored to deter such conduct in the future and place Movant in the position had the misconduct not occurred, are clearly warranted.

**WHEREFORE**, Movant requests that this Court:

1. Grant the Motion and enter an order imposing on the respondents sanctions or other monetary or non-monetary relief as this Court deems appropriate.

2. Grant the Movant such additional general relief to which Movant may be entitled including an award for fees and costs as may be allowed by law.

Respectfully submitted,

_____
Gil Quentin Alvarez
Movant, Pro-se
542 Mount Argyll Court
Apopka, Fl 32712
407-731-5670