Exhibit D

## Appraisal Update and/or Completion Report

File # 1721993
070627G

The purpose of this report form is to provide the lender/client with an accurate update of an appraisal and/or to report a certification of completion. The appraiser must identify the service(s) provided by selecting the appropriate report type.

| | |
|---|---|
| Property Address Lot # 6, Requa Road (1104 Black Road) | Unit # |
| City Cherryville | State NC | Zip Code 28021 |
| Legal Description Lot # 6, Plat Book 69, Page 47, Deed Book 4220, page 222, Gaston County Registry | County Gaston |
| Borrower Lamacchia   Contract Price $ N/A   Date of Sale N/A | Effective Date of Original Appraisal April 9, 2007 |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | Original Appraised Value $ 209,000 |
| Original Appraiser Tina Patterson Melvin | Company Name Cleveland Appraisal Service |
| Original Lender/Client American Home Mortgage | Address 538 Broadhollow Road, Melville, NY 11747 |

**☐ SUMMARY APPRAISAL UPDATE REPORT**

**INTENDED USE:** The intended use of this appraisal update is for the lender/client to evaluate the property that is the subject of this report to determine if the property has declined in value since the date of the original appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal update is the lender/client.

**SCOPE OF WORK:** The appraiser must, at a minimum: (1) concur with the original appraisal, (2) perform an exterior inspection of the subject property from at least the street, and (3) research, verify, and analyze current market data in order to determine if the property has declined in value since the effective date of the original appraisal.

**HAS THE MARKET VALUE OF THE SUBJECT PROPERTY DECLINED SINCE THE EFFECTIVE DATE OF THE PRIOR APPRAISAL?**    ☐ Yes ☐ No

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:
1. I have, at a minimum, developed and reported this appraisal update in accordance with the scope of work requirements stated in this appraisal update report and concur with the analysis and conclusions in the original appraisal.
2. I performed this appraisal update in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal update was prepared.
3. I have updated the appraisal by incorporating the original appraisal report.
4. I have summarized my analysis and conclusions in this appraisal update and retained all supporting data in my work file.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:
1. I directly supervised the appraiser for this appraisal update assignment, have read the appraisal update report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.
2. I accept full responsibility for the contents of this appraisal update report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

**☒ CERTIFICATION OF COMPLETION**

**INTENDED USE:** The intended use of this certification of completion is for the lender/client to confirm that the requirements or conditions stated in the appraisal report referenced above have been met.

**INTENDED USER:** The intended user of this certification of completion is the lender/client.

**HAVE THE IMPROVEMENTS BEEN COMPLETED IN ACCORDANCE WITH THE REQUIREMENTS AND CONDITIONS STATED IN THE ORIGINAL APPRAISAL REPORT?** ☒ Yes ☐ No   If No, describe any impact on the opinion of market value. The improvements appear complete with the exception of the living area flooring, the garage roof, and a small section of siding above the garage on the main improvements. Cost to cure appears to be approximately $3,000 as all materials appear to be onsite and ready for installation. See attached photographs.

**APPRAISER'S CERTIFICATION:** I certify that I have performed a visual inspection of the subject property to determine if the conditions or requirements stated in the original appraisal have been satisfied.

**SUPERVISORY APPRAISER'S CERTIFICATION:** I accept full responsibility for this certification of completion.

**E-SIGNATURES**

**ADDITIONAL CERTIFICATION:** I/we certify that if this report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this report containing a copy or representation of my signature, the report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature *Tina Patterson Melvin* | Signature |
| Name Tina Patterson Melvin | Name |
| Company Name Cleveland Appraisal Service | Company Name |
| Company Address 217 N. Lafayette Street, Shelby, North Carolina 28150 | Company Address |
| Telephone Number (704) 480-1411 | Telephone Number |
| Date of Signature and Report June 28, 2007 | Date of Signature |
| Effective Date of Appraisal Update | State Certification # |
| Date of Inspection June 28, 2007 | or State License # |
| State Certification # A4597 | or Other |
| or State License # | State |
| or Other (describe) ____ State # | Expiration Date of Certification or License |
| State North Carolina | |
| Expiration Date of Certification or License June 30, 2008 | SUPERVISORY APPRAISER |
| CURRENT LENDER/CLIENT | ☐ Did not inspect subject property |
| Name | ☐ Did inspect exterior of subject property from street |
| Company Name American Home Mortgage | Date of Inspection |
| Company Address 538 Broadhollow Road, Melville, NY 11747 | ☐ Did inspect interior and exterior of subject property |
| | Date of Inspection |

Form 1004D — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

JUN. 27. 2007   6:12PM    AMERICAN HOME MORTGAGE                    NO. 1345——P. 3
                  underwriting/Closing Stipulation(s)

Application # 0001721993

The following documents or conditions must be satisfied and/or presented at time of closing.  In the event
you are unsure of the acceptability of any document(s) you must contact the Lender.  In no event may you
accept any alternative document(s) or unilaterally waive any requirement unless written authorization is
provided to you by the Lender.

All of the documents provided herewith are required to be signed, regardless of
whether they appear to be duplicates previously provided to the borrower(s).

Stipulations to be satisfied:
If a Power of Attorney is to be used in connection with this loan closing, you must
follow the document execution instructions set forth on ADDENDUM "E".

# Please read all Conditions:

1. ALTA  6 or 6.1 (PA 710)

2. ALTA 8.1 (PA 900)

3. Receipt of Signed Commitment.

4. Documents start expiring on 07/20/07.  If loan does not close by this date
you may be required to provide more current information or assistance.

5. HUD-1 to evidence payoff of Yorktown    with an outstanding balance of
$173,481.

6. The maximum amount of cash the borrower may receive is the lesser of 2% or
$2,000.

7. All borrowers and interviewer to sign and date initial loan application.

8. Verify Proof of Delivery for initial Truth-in-Lending Disclosure Statement in
accordance with Regulation-Z.

9. Estimated HUD 1 subject to lender review and approval. Proposed HUD 1 to be
faxed to American Home Mortgage - Colleen @ 847-394-5300 Ext. 469   at
847-394-9654 If any fee changes on the HUD-I from our closing
instructions, please alert American Home Mortgage as a new TIL/HELOC Agreement
will need to be issued for borrower's signature(s,).  If Title/Escrow fails to
notify the Lender of these changes, they will be responsible for any fees or
changes required as a result of compliance issues caused by the unreported fee
changes.

10. Fax the completed HUD-1 - SIGN FINAL HUD, TIL & FINAL INSPECTION to Colleen
@ 847-394-5300 Ext. 469 for review and approval, to 847-394-9654 . THIS LOAN
WILL NOT FUND UNTIL THESE DOCUMENTS HAVE BEEN REVIEWED AND DEEMED ACCEPTABLE.

11. Short Form ALTA must be issued in place of standard ALTA and RETURNED AS
PART OF THE CLOSED LOAN FILE.

12. Settlement Company must contact Colleen @ 847-394-5300 Ext. 469 Fax
847-394-9654 if the loan does not close as scheduled.

13. Return executed closing package within 24 hours of funding via overnight
mail to American Home Mortgage, 520 Broadhollow Road, Mail Stop 100, File
Management Group, Melville, NY 11747

14. Satisfactory final inspection to be completed by original appraiser on form
1004D showing subject property is 100% completed.

15. Title Insurance coverage must equal 110% of the original mortgage amount to
reflect potential negative amortization.

16. Taxes must be current and up to date.

17. Subject Property is located in a state having regulations on predatory
lending associated to a prepayment penalty amount.  Please complete the Prepay
Penalty Amount field if the loan being originated has this feature.

18. IRS form 4506T is required to be signed by all borrowers at closing.

Document No. 971208          rev. 10/04

Attachment F



(16)

# THE FOLLOWING ITEMS WILL BE REQUIRED
# WHEN YOUR LOAN IS CONVERTED
# TO A PERMANENT MORTGAGE.

These items will need to be forwarded (faxed) to our office in order to set up the Permanent Mortgage Closing.

1.     House Location Survey.

2.     Certificate of Occupancy.

3.     Water test. (For well water only)

4.     Septic Approval. (If applicable)

The original items will need to be brought to settlement when your Loan is Assigned/Converted to a Permanent Mortgage.

_____                    _____
Delena Sigmon Lamacchia, Buyer                                                    , Buyer


_____
Bessemer City Housing, Builder


_____
Authorized Signature

707-024-987

Attachment G

GASTON COUNTY
128 W MAIN AVE.
P.O.BOX 1578
GASTONIA NC 28053

mk
wh.

C E R T I F I C A T E   O F   O C C U P A N C Y

P E R M A N E N T

Issue Date . . . . . .    9/27/07  ← it was suppose to be
                                     before closing on 6/28/07

Parcel Number . . . . .   12 023  017.00 000
Property Address . . .    1104 BLACK RD
                          CHERRYVILLE        NC 28021          12
Subdivision Name . . .
Legal Description . . .
Property Zoning . . . .   RESIDENTIAL

Owner . . . . . . . . .   LAMACCHIA, DELENA & JOSEPH

Contractor . . . . . .    BESSEMER HOUSING NO GC LIC.

Application number . .    07-00001381 000 000
Description of Work . .   MODULAR HOMES - NC STATE CERTIFIED
Construction type . . .
Occupancy type . . . .
Flood Zone . . . . . .    NOT APPLICABLE

Approved . . . . . . .    _____            _____
                          Building Official

VOID UNLESS SIGNED BY BUILDING OFFICIAL

*received in mail*

*Attachment H*

American Home Mortgage Acceptance, Inc.
538 Broadhollow Road
Melville , NY  11747

MONTHLY PAYMENT INFORMATION LETTER

Application Number: 1001721993


BORROWER(S):
Delena S. Lamacchia
PROPERTY ADDRESS:
1104 Black Road
Cherryville, NC   28021




Dear Borrower(s):

We wish to congratulate you on the purchase/refinance of your residence and
sincerely hope that you will enjoy the many benefits of home ownership.

In accordance with the terms of the Note and Mortgage, your first monthly
payment is due on the 1st of every month.  Your payments should be mailed to
the Bank at the following address:


American Home Mortgage Servicing, Inc. ← *proof that AHM Servicing has to do with my loan.*
ATT: Payment Processing
PO Box 660029
Dallas, TX 75266-0029

During the term of your loan you may expect the amount of your monthly payment
to fluctuate because of changing requirements for taxes, insurance and
assessments.  Your payment must be received by the Bank prior to the 16th of
each month in order to avoid a late charge.  At present and until further
notice, your monthly payment is as follows:


INTEREST ONLY:                     $622.91

MONTHLY ESCROW DEPOSITS:
Real Estate Taxes        $90.00
Fire Insurance           $43.33

TOTAL MONTHLY ESCROW:        $133.33

TOTAL MONTHLY PAYMENT:       $756.24

In case you do not receive the regular monthly coupons before your first
payment is due, kindly use the enclosed temporary coupon when making that
payment.  Should you have any questions regarding your payment please contact
the Customer Service Department at (877) 304-3100, please reference your loan
number, 1001721993.

*Attachment I*

**AMERICAN HOME MTG SERVICING**
**DETAIL TRANSACTION HISTORY**

SR497CR-02
HTUCKER

LOAN# 1001721383        INV# 502          POOL# 0000031                     RENT DUE 9/01/07    INTEREST RATE 9.305        PRIN BAL   .00
BRWR1 DeLena LaMacchia   TYPE: 05-00 Conv Lnsr                               INV PD TO 9/01/07   P&I SHORT        .00        ESC BAL    .00
PROP: 1104 Black Road    MAIL: 1104 Black Road                                                                             CORP AD    .00

   Charryville NC 28021          Charryville      NC 28021          8/20/07 10:11:28  JOB DT: 8/20/07  PAGE: 1

| LINE# | TRANSACTION DESCRIPTION | DATE DUE | AFTER TRANS. PRINCIPAL | REMAINING ESCROW | TOTAL AMOUNT | PRINCIPAL | APPLIED INTEREST | ESCROW | SUSPENSE/CD | MISC. FEES |
|---|---|---|---|---|---|---|---|---|---|---|
| 17 | 8/20/07 3103 PAYOFF MCCASH | 9/07 | .00 | .00 | 188938.31 | 188938.31 | .00 | .00 | .00 | .00 |
| 16 | 8/20/07 2643 ESCROW ADV S/P ER KE# | 9/07 | 188938.31 | .00 | 133.33- | .00 | 133.33- | 133.33 | .00 | .00 |
| 15 | 8/16/07 02 PAYMENT S/P ER KE# | 9/07 | 188938.31 | 133.33 | 756.24 | 838.31 | 1461.22 | 133.33 | .00 | .00 |
|    | Int pd to: 8/01/07 | | | | | | | | | |
| 14 | 8/02/07 B/P LE KE# | 8/07 | 188100.00 | .00 | 188100.00- | 188100.00- | .00 | .00 | .00 | .00 |
| 13 | 8/02/07 $199 NEW INV 502/0000031 | 8/07 | .00 | .00 | 188100.00 | 188100.00 | .00 | .00 | .00 | .00 |
| 12 | 7/02/07 2392 FIREHELD INVEREST S/P TR KE# 011/0000001 | 8/07 | 188100.00 | .00 | 39.58 | .00 | .00 | 39.58 | .00 | .00 |
|    | Effective date: 6/28/07 B/P LE KE# | | | | | | | | | |
| 11 | 7/02/07 5101 NEW LOAN MCCASH | 8/07 | 188100.00 | .00 | 188100.00- | 188100.00- | .00 | .00 | .00 | .00 |
|    | Effective date: 6/28/07 | | | | | | | | | |

* * * * TOTALS * * * *            .00   1500.80   .00   .00   .00

REPRESENTATION OF PRINTED DOCUMENT

**EMC** *Mortgage Corporation*
*Proven Performance*
P.O. Box 293150
Lewisville, TX 75029-3150

August 10, 2007

*received in the mail*

*Attachment J*

23788 0000392 001
Delena S Lamacchia
1104 BLACK RD
CHERRYVILLE NC 28021

RE:   EMC Loan Number: 0022466767

Property Address:   1104 Black Road
Cherryville NC 28021

Dear Mortgagor(s):

We are pleased to advise you the servicing of your mortgage was transferred from American Home Mortgage Servicing (AMERICAN) to EMC Mortgage Corporation (EMC) effective August 20, 2007. The assignment, sale, or transfer of the servicing of your mortgage is a part of your original loan agreement and does not affect any of the terms or conditions of the mortgage instruments other than terms directly related to the servicing of your loan. Except in limited circumstances, the law requires AMERICAN to send you notice of this transfer at least 15 days before the effective date of transfer. EMC must also send you this notice no later than 15 days after the the effective date. To ensure a smooth transfer, please review the following information.

*Para una explicacion en Espanol, del contenido de esta carta, por favor llama a nuestro Departamento de Servicios Al Cliente al 1-800-723-3004, los lunes a jueves durante las horas de 7:00 a.m. a 9:00 p.m. y viernes durante las horas de 7:00 a.m. a 7:00 p.m. Hora Central.*

**CUSTOMER SERVICE INFORMATION:**
Your present servicer is AMERICAN. If you have any questions relating to the transfer of servicing from your present servicer, call AMERICAN at 1-800-444-7963.

Your new servicer will be EMC. The business address for EMC is: P.O.Box 293150, Lewisville, TX 75029-3150. The toll-free number for EMC is 1-800-723-3004. If you have any questions relating to the transfer of servicing to your new servicer, call Customer Service between 7:00 a.m. and 9:00 p.m. CST Monday through Thursday, and between 7:00 a.m. and 7:00 p.m. CST on Friday. You can also access mortgage information online at www.emcmortgageservicing.com.

**PAYMENT INFORMATION:**
The date that AMERICAN will stop accepting your payments is on August 19, 2007. The date that EMC will start accepting payments from you is August 20, 2007. Send all payments made on or after August 20, 2007 to EMC. Any payments received by, but not due to AMERICAN will be forwarded to EMC.

Use the payment coupon below to make your first payment to EMC and include your new loan number on your check or money order. Soon, EMC will begin sending you monthly statements that will include a remittance coupon and return envelope. You can make a payment anytime:

Pay by Mail: EMC Mortgage Corp., PO Box 660753, Dallas, TX 75266-0753. Include your loan number on your check or money order.
Pay Online: www.speedpay.com
Pay by Phone: 1-800-723-3004 and select the Speedpay option.

**PREAUTHORIZED PAYMENTS (ACH):**
If your loan was automatically drafted by AMERICAN, you will need to make new arrangements with EMC. Look for enrollment information on your first monthly statement.

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE

Delena S Lamacchia

| LOAN NUMBER | MONTHLY PAYMENT |
|---|---|
| 0022466767 | $    756.24 |

PAYMENT $

*OTHER/FEES/ADVANCES $

ADDITIONAL ESCROW $

ADDITIONAL PRINCIPAL $

TOTAL ENCLOSED $

EMC PAYMENT PROCESSING
PO BOX 660530
DALLAS TX 75266-0530

*Please be sure and designate how you would like extra funds applied.

PAGE 1 OF 2    REPRESENTATION OF PRINTED DOCUMENT

**EMC** *Mortgage Corporation*
*Proven Performance*

P.O. Box 293150
Lewisville, TX 75029-3150

*Attachment K*

28319-0002162-001

DELENA S LAMACCHIA
1104 BLACK RD
CHERRYVILLE NC 28021

### BILLING STATEMENT

Statement Date: 08/29/07
Loan Number: 0022466767

☎ Automated Information Line:
1-800-723-3004

Visit our Web Site:
www.emcmortgageservicing.com

**WESTERN UNION** Pay by Phone:
1-877-472-9362 or 1-866-472-9362
*Pay by phone at no cost!*

☐ Check here if your address or phone numbers have changed and complete the form on the reverse side

PROPERTY ADDRESS:    1104 BLACK RD
CHERRYVILLE NC 28021

## ACCOUNT INFORMATION

| | |
|---|---|
| Interest Rate | 9.3050% |
| Original Principal Balance | 188,100.00 |
| Current Principal Balance* | 188,938.31 |
| Maximum Principal Balance | 206,910.00 |
| Current Escrow Balance | 133.33 |
| Late Charge Fee (per month) | 30.25 |

**Year-to-Date**

| | |
|---|---|
| Principal Paid | 0.00 |
| Interest Paid | 0.00 |
| Taxes Paid | 0.00 |
| Hazard Insurance Paid | 0.00 |

*This is your Principal Balance only, not the amount required to pay your loan in full.

## PAYMENT SUMMARY

| | |
|---|---|
| Payment Due Date | 09/01/07 |
| Minimum Payment Due | $622.91 |
| Escrow Payment | 133.33 |
| Total Amount Due | 756.24 |

## PAYMENT OPTIONS

| OPTION | DESCRIPTION | AMOUNT |
|---|---|---|
| 1 | Minimum Payment | $756.24 |
| 2 | Interest Only Payment | $1,598.39 |
| 3 | Fully Amortized Payment | $1,635.53 |
| 4 | 15 Yr Amortized Payment | $2,089.13 |

* For additional information on each **PAYMENT OPTION**, please read the information provided on the back of this statement. Each **PAYMENT OPTION** includes a monthly Escrow payment, if applicable.

## IMPORTANT MESSAGES

**NEW EXPANDED CUSTOMER SERVICE HOURS 7 AM to 11 PM and Fridays 7 AM to 7 PM Central Standard Time.**

Nuevo horas de servicio extendidas para el departamento de Servicio al Cliente son, 7:00 a.m. a 11:00 p.m. lunes a jueves y viernes 7:00 a.m. a 7:00 p.m. hora Central.

## PAYMENT ACTIVITY

| TRANSACTION DESCRIPTION | DUE DATE | TRAN DATE | TOTAL RECEIVED | PRINCIPAL | INTEREST | ESCROW | OPTIONAL PRODUCTS | OTHER | SUSPENSE |
|---|---|---|---|---|---|---|---|---|---|
| Loan Principal | | 08/23 | 0.00 | -188,938.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Payment | 09/07 | 08/24 | 133.33 | 0.00 | 0.00 | 133.33 | 0.00 | 0.00 | 0.00 |

PLEASE DETACH AND RETURN BOTTOM PORTION WITH PAYMENT IN THE ENCLOSED ENVELOPE

**EMC** *Mortgage Corporation*
*Proven Performance*

DELENA S LAMACCHIA

| LOAN NUMBER | DUE DATE | OPTION 1 MINIMUM AMOUNT | OPTION 2 INTEREST ONLY | OPTION 3 PRIN & INT | OPTION 4 PRIN & INT 15 YR |
|---|---|---|---|---|---|
| 0022466767 | 09/01/07 | $756.24 | $1,598.39 | $1,635.53 | $2,089.13 |

Please indicate which option you are paying by checking the applicable box.

☐ Option 1   ☐ Option 2
☐ Option 3   ☐ Option 4

| LATE CHARGE - IF RECEIVED AFTER | |
|---|---|
| 30.25 | 09/16/07 |

EMC PAYMENT PROCESSING (OPTION ARM)
PO BOX 660530
DALLAS TX 75266-0530

PROPERTY ADDRESS:    1104 BLACK RD, CHERRYVILLE NC 28021

| | |
|---|---|
| PAYMENT $ | . |
| LATE CHARGES $ | . |
| *OTHER/FEES/ADVANCES $ | . |
| *ADDITIONAL ESCROW $ | . |
| *ADDITIONAL PRINCIPAL $ | . |
| TOTAL ENCLOSED $ | . |

* Monies may not be applied as you instruct if the Note and Security Instrument provide for different application of funds.

INTERNET REPRINT

## JAMES, McELROY & DIEHL, P.A.
### ATTORNEYS AT LAW
600 SOUTH COLLEGE STREET
CHARLOTTE, NORTH CAROLINA 28202

FILE COPY

| | | |
|---|---|---|
| J. MITCHELL ABERMAN* | DAVID H. KERN | |
| CATHERINE A. BARNES | IRENE P. KING | OF COUNSEL |
| JOHN W. BEDDOW | G. RUSSELL KORNEGAY, III | HENRY JAMES, JR. |
| SARAH H. BRADY | JEFFREY A. LONG* | MARY KAY BAYNARD |
| MARTHA B. BULLOCK | PENDER R. MCELROY | B. FREDERIC WILLIAMS |
| JOHN R. BURIC | FRED B. MONROE | |
| JON P. CARROLL | PRESTON O. ODOM. III | |
| J.P. DAVIS | FRED P. PARKER IV | TELEPHONE 704 372-9870 |
| WILLIAM K. DIEHL, JR. | MARY FRANCES PROSSER | 800 247-9870 |
| RICHARD A. ELKINS | ADAM L. ROSS | |
| JONATHAN D. FEIT | ROBERT H. SHEPPARD | FACSIMILE 704 333-5508 |
| RICHARD B. FENNELL* | BRUCE M. SIMPSON | |
| JARED E. GARDNER | PATRA A. SINNER | |
| GARY S. HEMRIC | CHARLES M. VISER | |
| LAWRENCE W. HEWITT | N. NEYA WARREN | |
| EDWARD T. HINSON, JR. | RICHARD S. WRIGHT | |
| KATHERINE S. HOLLIDAY | | |

*ALSO ADMITTED IN S.C.

September 20, 2007

ENC Mortgage Corporation
P.O. Box 141358
Irving, TX 75014-1358

> **Re:** **_My client: Delena S. Lamacchia_**
> **_Loan number: 0022466767_**
> **_Property address: 1104 Black Road, Cherryville, North Carolina, 28021_**

Dear Sir or Madam:

I and the law firm of James, McElroy & Diehl, P.A. have been retained by Delena S. Lamacchia with regard to a mortgage underwritten and originated by American Home Mortgage, which you now service. For easier reference, I have included the loan number above.

Currently, I am exploring the facts and circumstances regarding the origination and closing of Mrs. Lamacchia's loan because it appears her loan (like so many others that were originated and underwritten by American Home Mortgage), was procured by fraud with the promise of low or "teaser" rate to induce Mrs. Lamacchia to sign up for a mortgage that, ultimately, forces astronomically high monthly payments or prohibits homeowners from establishing equity in their homes. At the current point in time, it appears the latter circumstance is the case at issue here.

Although I understand American Home Mortgage originated and underwrote the loan, you have purchased it and, under North Carolina law, I believe you may be liable for damages associated with American Home Mortgage's predatory lending practices. To date, my client has made all necessary payments and her mortgage is current. However, Mrs. Lamacchia is, in the very near future, going to be "upside down" in her home. We believe her negative equity is the direct result of American Home Mortgage's conduct and, by extension, your insistence that Mrs. Lamacchia abide by the terms of a voidable promissory note.

ENC Mortgage Corporation
September 20, 2007
Page 2

My client is a reasonable person and wishes to come to an agreement that is consistent with her understanding of the loan American Home Mortgage sold her and your expectation for payment under the terms of her note. We welcome the opportunity to discuss these matters and hope, in light of all the facts that surround American Home Mortgage's legal and financial troubles, that you will be willing to address these matters with us very soon. Please contact me on or before October 5, 2007 so that we may discuss these matters and how to amend, change or alter Mrs. Lamacchia's mortgage obligations to prevent any further claim in the future.

Sincerely,

Jeffrey A. Long

JAL/dac

cc:    Delena Lamacchia



**EMC**
*Mortgage Corporation*

October 24, 2007

Jeffrey A. Long
James, McElroy & Diehl, P.A.
Attorneys at Law
600 South College Street
Charlotte, NC  28202

RE:    Mortgagor(s):         Delena S. Lamacchia
       Loan Number:          0022466767
       Property Address:     1104 Black Road
                             Cherryville, NC  28021

Dear Mr. Long:

This is to acknowledge receipt of your letter dated September 20, 2007 regarding the above-referenced loan.

Please be advised that EMC Mortgage Corporation (EMC) is the servicer and can only service the loan in accordance with the loan documents from closing. We sincerely sympathize with Ms. Lamacchia, however, any fraudulent allegations regarding the origination of the loan will need to be disputed directly against American Home Mortgage in a court of law.  At the same time, we would like to reach an amicable solution.

Pursuant to continuous communications with Ms. Lamacchia, we have diligently worked to pursue a Loan Modification proposal.  We advised Ms. Lamacchia that EMC is servicing the loan for an investor and the loan modification is subject to investor approval.

Please be advised that the enclosed Loan Modification Agreement has been approved.  Please have Ms. Lamacchia sign and return the Agreement by no later than October 31, 2007, at which time the Agreement will expire.  I have enclosed a UPS return envelope for her convenience.

In addition, I have also enclosed the loan documents we received from the prior servicer, per Ms. Lamacchia's request.

Mr. Jones, should you or Ms. Lamacchia have any additional questions regarding this loan, please don't hesitate to contact me directly at 214-626-5518.

Sincerely,

Crystal Williams
Executive Office
EMC Mortgage Corporation

Enclosures:    Loan Modification Agreement; UPS return envelope

2780 Lake Vista Drive, Lewisville, Texas 75067-3884
MAILING ADDRESS: P.O. Box 292190, Lewisville, Texas 75029-2190

*Attachment N*

**From:** cherryvilleaream@bellsouth.net (cherryvilleaream@bellsouth.net)
**To:** lpedelty@bellsouth.net;
**Date:** Thu, September 27, 2007 3:30:08 PM
**Cc:**
**Subject:** FW: Appraisal

-------------- Forwarded Message: --------------
From: "Cleveland Appraisal Service" <susan@clevelandappraisalservice.com>
To: <cherryvilleaream@bellsouth.net>
Subject: Appraisal
Date: Thu, 27 Sep 2007 13:26:58 +0000

Delena,

I'm sorry that it took so long to get back with you. There is a certain protocol that must be followed when giving out appraisal copies. We did not receive a response from American Home Mortgage.

It was very nice to speak with you this morning on the phone. I will definitely tell my mom that you all have books. What are your hours?

To read this file, you will need adobe acrobat reader. If it is not already installed on your computer you can go to the adobe website and download the reader for free.

Appraisals are printed on legal size paper.

If you have any problems reading the file, let me know and I will see what I can do to help you out.

Have a great day!

Susan
Office Manager
Cleveland Appraisal Service LLC

Attachment O

**PHONE CALL**

FOR
M. Coleen

OF ⟨469⟩

PHONE/
MOBILE 847-394-5300 FAX

DATE 6/28/07 TIME 9:10 P.M.

MESSAGE Lamacchia
pkg
Needs Hud so
she can send TI.

☐ TELEPHONED
☐ RETURNED YOUR CALL
☐ PLEASE CALL
☐ WILL CALL AGAIN
☑ CAME TO SEE YOU
☐ WANTS TO SEE YOU

SIGNED

---

vm

**PHONE CALL**

FOR
M. Joan?

OF American Home Mort

PHONE/
MOBILE 516-620-1019 FAX

DATE 6/29/07 TIME 10 A.M.

MESSAGE Lamacchi
Checking to see,
if it has closed
+ funded

☐ TELEPHONED
☐ RETURNED YOUR CALL
☐ PLEASE CALL
☐ WILL CALL AGAIN
☐ CAME TO SEE YOU
☐ WANTS TO SEE YOU

SIGNED

**PHONE CALL**

FOR M: Deleana Lamacchia
DATE 9-12-07   TIME 4:45 A.M.

OF / PHONE / MOBILE:

FAX:

MESSAGE: EMC Mortgage said to send them all information <faxed>
Phone 1-800-723-3004
Fax 972-402-7367

- [ ] TELEPHONED
- [ ] RETURNED YOUR CALL
- [x] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

SIGNED:

---

**PHONE CALL**

Fax 435-3866

FOR M: Deleana
DATE 9-13-07   TIME 15 A.M.

Will fax info with sub-contractor Permits etc.

OF / PHONE / MOBILE:

MESSAGE: Inspector did not pass. Said to let him know when work is done to their satisfaction + he will come back out.

- [ ] TELEPHONED
- [ ] RETURNED YOUR CALL
- [ ] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

SIGNED:

---

**PHONE CALL**

Her payment is due and she does not know what to do to save her credit.

FOR M: Deleana
DATE 9-13-07   TIME 2:38 A.M.
1-877-373-8344

OF / PHONE / MOBILE:

FAX:

MESSAGE: Tim Callea Sr. Palmer will need to get court order stating loan should not have happened because there was no "cut"
Occupancy - Loan need to be voided.

- [ ] TELEPHONED
- [ ] RETURNED YOUR CALL
- [ ] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

SIGNED:

---

**PHONE CALL**

Faxed 9-17-07
11:41 AM

FOR M: Deleana
DATE 9-17-07   TIME 10:10 P.M.

OF / PHONE / MOBILE:

FAX: 435-3866

MESSAGE: Needs copy of Hud + name of Title Ins Co.

- [ ] TELEPHONED
- [ ] RETURNED YOUR CALL
- [ ] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

SIGNED:

**PHONE CALL**

FOR: Deleana
M
OF
PHONE/MOBILE: 435-3816   FAX
MESSAGE: Johnny is not licensed Contractor Assurity Bond – (Performance Bond)

- [ ] TELEPHONED
- [ ] RETURNED YOUR CALL
- [ ] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

SIGNED

DATE 9/12   TIME ___ P.M.

---

**PHONE CALL**

T-5144

FOR: Deleana
M
OF
PHONE/MOBILE: 980-241-8122   FAX
MESSAGE: No Final Insp Approved filed No cert of occupancy filed – They were supposed to close th_____ without these.

- [x] TELEPHONED
- [ ] RETURNED YOUR CALL
- [ ] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

DATE 9-12-07   TIME 5 A.M.

---

**PHONE CALL**

Gaston

FOR: Deleana
M
OF
PHONE/MOBILE: ___   FAX
MESSAGE: 125 Wire was passed Johnny got electricity on but it was not supposed to be done. No certificate of occupancy was done. No final inspection has been done.
They told her they may have to stop the loan because there was No Cert of Occupancy. Resource person at PMC will need documents. ___ is stating we did Not receive Cert of Occupancy. Cert of Compliance

- [ ] TELEPHONED
- [ ] RETURNED YOUR CALL
- [ ] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

DATE 9-13-07   TIME 8:05 A.M.

---

**PHONE CALL**

RP Tim Erwin – 214-626-7270
PMC

FOR: Deleana
M
OF
PHONE/MOBILE: ___   FAX
MESSAGE: PMC said her Atty will have to go before Judge to tell them what happened to get loan stopped immediately

- [ ] TELEPHONED
- [ ] RETURNED YOUR CALL
- [ ] PLEASE CALL
- [ ] WILL CALL AGAIN
- [ ] CAME TO SEE YOU
- [ ] WANTS TO SEE YOU

SIGNED

DATE 9-13-07   TIME A.M. P.M.

*Attachment P*

# Western District of North Carolina
# Claims Register

### 08-32357 Joseph Brian Lamacchia and Delena Sigmon Lamacchia **Closed** 03/22/2010, **Converted** 08/31/2009

| | | |
|---|---|---|
| **Judge:** J. Craig Whitley | **Chapter:** 7 | |
| **Office:** Charlotte | **Last Date to file claims:** | |
| **Trustee:** R. Keith Johnson | **Last Date to file (Govt):** | |

| | | |
|---|---|---|
| *Creditor:* (3761118)<br>Wells Fargo Bank, N.A.<br>Attn: Bankruptcy Dept.<br>PO Box 293150<br>Lewisville, TX 75029-3150 | **Claim No: 2**<br>*Original Filed*<br>*Date:* 11/24/2008<br>*Original Entered*<br>*Date:* 11/24/2008 | *Status:*<br>*Filed by:* CR<br>*Entered by:* eDkt,<br>*Modified:* |

| | | | |
|---|---|---|---|
| Unsecured claimed: | $0.00 | Unsecured allowed: | $0.00 |
| Secured claimed: | $199320.84 | Secured allowed: | $0.00 |
| Priority claimed: | $0.00 | Priority allowed: | $0.00 |
| Unknown claimed: | $0.00 | Unknown allowed: | $0.00 |
| **Total** claimed: | $199320.84 | allowed: | $0.00 |

*History:*
Details   2-1   11/24/2008 Claim #2 filed by Wells Fargo Bank, N.A., total amount claimed: $199320.84 (eDkt)

*Description:*

*Remarks:* (2-1) Account Number (last 4 digits):6767

## Claims Register Summary

**Case Name:** Joseph Brian Lamacchia and Delena Sigmon Lamacchia
**Case Number:** 08-32357
**Chapter:** 7
**Date Filed:** 10/31/2008
**Total Number Of Claims:** 1

| | Total Amount Claimed | Total Amount Allowed |
|---|---|---|
| **Unsecured** | $0.00 | $0.00 |
| **Secured** | $199320.84 | $0.00 |
| **Priority** | $0.00 | $0.00 |
| **Unknown** | $0.00 | $0.00 |
| **Administrative** | | |
| **Total** | $199320.84 | $0.00 |

## PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 10/22/2010 08:26:03 | | | |
| PACER Login: | dl2610 | Client Code: | |
| Description: | Claims Register | Search Criteria: | 08-32357 Creditor Type: cr Creditor Name: wells fargo Filed or Entered From: 10/1/2008 Filed or Entered To: 10/1/2010 |
| Billable Pages: | 1 | Cost: | 0.08 |

*Attachment Q*

## JPMC Separation Page

### Loan Info:

| | | |
|---|---|---|
| | | Recordable?  N |
| Customer ID: | JPMC-EMC | |
| Loan Number: | 0022466767 | MERS?  Y |
| LOB: | EMC | |
| Borrower Name: | DELENA S LAMACCHIA | |
| Property Address: | 1104 BLACK RD CHERRYVILLE | NORTH CAROLINA    28021 |

**To:**

| | |
|---|---|
| Borrower Name: | DELENA S LAMACCHIA |
| Mailing Address: | 1104 BLACK RD CHERRYVILLE    NORTH CAROLINA 28021 |

**From:    EMC**

| | |
|---|---|
| Company Name: | EMC Fulfillment Services |
| Contact Name: | EMC Fulfillment Services |
| Contact Phone: | 303-226-8101 |
| Address: | 4500 Cherry Creek Dr South, Ste 100 Mail Stop - Final Mod CS-CO    08 Glendale 80246-1531 |

## From:  EMC

**Package Type:**

# HMP_MOD_FINAL_COUNTERSIGN

*** Needs Countersignature ***

**Number of Envelopes:  0**



3 + 6 4 + 0 0 2 2 4 6 6 7 6 7 + 1 + 5 5 v

0 0 2 2 4 6 6 7 6 7

# USPS

Ship Date: **MARCH 26, 2010**

873106

Loan Number 0022466767

Investor Loan # **17347494**

# HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN
## (Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: **DECEMBER 01, 2009**
Borrower ("I")[1]: **DELENA S LAMACCHIA**
Lender or Servicer ("Lender"): **EMC MORTGAGE CORPORATION**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **June 28, 2007**
Loan Number: **0022466767**
Property Address ("Property"): **1104 BLACK RD, CHERRYVILLE, NORTH CAROLINA 28021**

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return one copy of this Plan to the Lender, the Lender will review my modification package and send me written notice if I do not qualify for the Offer.

1.　　**My Representations**. I certify, represent to Lender and agree:

　　A.　　I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

　　B.　　I live in the Property as my principal residence, and the Property has not been condemned;

　　C.　　There has been no change in the ownership of the Property since I signed the Loan Documents;

　　D.　　I am providing or already have provided documentation for **all** income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

　　E.　　Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

　　F.　　If Lender requires me to obtain credit counseling, I will do so.

　　G.　　If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN** – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3156   3/09 (rev. 8/09) [CHF modified] *(page 1 of 4 pages)*



1+E_EMC+0022466767+H2A+46+1+4?

873106

2. **The Trial Period Plan**. On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. **$747.10**.

| Trial Period Payment # | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1* | $747.10 | 12/01/2009 |
| 2 | $747.10 | 01/01/2010 |
| 3 | $747.10 | 02/01/2010 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which may be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different.

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than DECEMBER 01, 2009 or I may not be accepted into the Home Affordable Modification Program.**

I agree that during the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan. This means I must make all payments on or before the days that they are due;

B. Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action. All rights to such notices are hereby waived by me to the extent permitted by applicable law;

C. If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. If a foreclosure sale occurs pursuant to this Section 2.C., this Plan shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me interest on the amounts held in the account. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be



refunded to me; and

G.  I understand that this Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if the Lender determines that I do not qualify or if I fail to meet any one of the requirements under this Plan If, under the Lender's procedures, a title endorsement(s) and/or subordination agreement(s) are required to ensure that the modified Loan Documents retain first lien position and are fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Lender has not received an acceptable title endorsement(s) and/or subordination agreement(s) from other lien holders, as Lender determines necessary.

3.  **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If (1) my representations in Section 1 were and continue to be true in all material respects; (2) I comply with the requirements in Section 2; (3) I provide the Lender with all required information and documentation; and (4) the Lender determines that I qualify, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. The Modification Agreement will provide that, as of the Modification Effective date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the loan unless permitted by applicable State or Federal law, rules or regulations. This Plan shall terminate the day before the Modification Effective Date and the Loan Documents, as modified by a fully executed Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan. . Provided I make timely payments during the Trial Period and both the Lender and I execute the Modification Agreement, I understand that my first modified payment will be due on the Modification Effective Date (i.e., on the first day of the month following the month in which the last Trial Period Payment is due).

4.  **Additional Agreements.** I agree to the following:

    A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Plan (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B.  To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my loan.

    C.  If Lender may establish an escrow account under applicable law, this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, I have been advised of the amount needed to fund my escrow account and I agree to the establishment of an escrow account. If the Loan Documents do not currently have escrow account provisions that govern, among other things, the collection, posting and payment of Escrow Items to and from the escrow account, the Lender will include provisions in my Modification Agreement that are similar to the escrow account provisions in the Fannie Mae/Freddie Mac Uniform Instrument for the state in which I live.

    D.  That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

    E.  That I will execute such other and further documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Plan; or (ii) correct the terms and conditions of this Plan



873106

if an error is discovered.

F. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.    I understand and consent to the disclosure of my personal information and the terms of this Trial Period Plan and the Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

G. That, as of the Trial Period Plan Effective Date, I understand that the Lender will only allow the transfer and assumption of this Trial Period Plan to a transferee of my property in the case of my death, divorce or marriage to the same extent as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3.  This Plan may not, under any other circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

In Witness Whereof, the Lender and I have executed this Plan.

X_____ (Seal)    Date: _____/_____/_____

Borrower -    **DELENA S LAMACCHIA**

1 + E _ E M C + 0 0 2 2 4 6 6 7 6 7 + H 2 A + 4 6 + 4 + 4 )

Loan Number    0022466767

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

MIN: 100024200017219938

Borrower ("I"):[1] DELENA S LAMACCHIA
Lender or Servicer ("Lender"): EMC MORTGAGE CORPORATION, AS SERVICER FOR Wells
Fargo Bank, National Association as Trustee for the Certificateholders of Structured Asset
Mortgage Investments II Inc.Structured Asset Mortgage Investments II Trust 2007-AR4,
Mortgage Pass-Through Certificates, Series 2007-AR-4
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): JUNE 28,
2007
Loan Number: 0022466767
Property Address ("Property"): 1104 BLACK RD, CHERRYVILLE, NORTH CAROLINA 28021

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026,
Flint, MI 48501-2026, (888) 679-MERS.

If my representations in Section 1 continue to be true in all material respects, then this Home
Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and
supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.
The Mortgage and Note together, as they may previously have been amended, are referred to as the
"Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given
to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will
send me a signed copy of this Agreement.  This Agreement will not take effect unless the
preconditions set forth in Section 2 have been satisfied.

1.    **My Representations**. I certify, represent to Lender and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the
          Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid
          assets to make the monthly mortgage payments now or in the near future;
    B.    I live in the Property as my principal residence, and the Property has not been
          condemned;
    C.    There has been no change in the ownership of the Property since I signed the Loan
          Documents;
    D.    I have provided documentation for **all** income that I receive (and I understand that I
          am not required to disclose child support or alimony unless I chose to rely on such
          income when requesting to qualify for the Home Affordable Modification program
          ("Program"));
    E.    Under penalty of perjury, all documents and information I have provided to Lender in
          connection with this Agreement, including the documents and information regarding
          my eligibility for the Program, are true and correct;

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 03_08_2010_11_09_37    Form 3157    3/09 (rev. 2-23-10)
                                                                              (page 1 of 6 pages)

3 + 64 + 0 0 2 2 4 6 6 7 6 7 + 1 + 5 0 y

Loan Number    0022466767

F.    If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.    I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.    TIME IS OF THE ESSENCE under this Agreement. This means I must make all payments on or before the days that they are due;

B.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

D.    I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this debt modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3.    **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on MAY 01, 2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **MAY 01, 2010.**

A.    The new Maturity Date will be: **AUGUST 01, 2047.**

B.    The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$216,566.91** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.    **$30,900.00** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$185,666.91**. Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **APRIL 01, 2010** and

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 03_08_2010_11_09_37    Form 3157    3/09 (rev. 2-23-10)
                                                                            *(page 2 of 6 pages)*



Loan Number    0022466767

the first new monthly payment on the Interest Bearing Principal Balance will be due on **MAY 01, 2010**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 2.000% | 04/01/2010 | $562.25 | $185.21 may adjust periodically | $747.46 may adjust periodically | 05/01/2010 | 60 |
| 6 | 3.000% | 04/01/2015 | $653.20 | May adjust periodically | May adjust periodically | 05/01/2015 | 12 |
| 7 | 4.000% | 04/01/2016 | $749.21 | May adjust periodically | May adjust periodically | 05/01/2016 | 12 |
| 8-38 | 5.000% | 04/01/2017 | $849.49 | May adjust periodically | May adjust periodically | 05/01/2017 | 364 |

Notwithstanding the foregoing schedule, I agree that unless sooner paid, I will have a final balloon payment in the amount of **$17,504.35** due and payable on the New Maturity Date.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of:  (i) the date I sell or transfer an interest in

3 + 64 + 0 0 2 2 4 6 6 7 6 7 + 1 + 5 0 y

Loan Number   0022466767

the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the New Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any

Loan Number    0022466767

addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4. N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

P. I acknowledge and agree that if the Lender executing this Agreement is not the current holder or owner of the Note and Mortgage, that such party is the authorized servicing

3 + 6 4 + 0 0 2 2 4 6 6 7 6 7 + 1 + 5 0 y

Loan Number   0022466767

agent for such holder or owner, or its successor in interest, and has full power and authority to bind itself and such holder and owner to the terms of this modification.

[Space Below This Line For Borrower Acknowledgement]_____

*Delena S. Lamacchia*                         Date: 3 /21 /2010

Borrower -   **DELENA S LAMACCHIA**

[Space Below This Line For Corporate Acknowledgement]_____

**EMC MORTGAGE CORPORATION, AS SERVICER FOR Wells Fargo Bank, National Association as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc.Structured Asset Mortgage Investments II Trust 2007-AR4, Mortgage Pass-Through Certificates, Series 2007-AR-4**

BY: **EMC MORTGAGE CORPORATION, ITS ATTORNEY-IN-FACT**

**EMC MORTGAGE CORPORATION**

By: *Patricia E Mercher*

Date: 3.25.10

Mortgage Electronic Registration Systems, Inc. – Nominee For Lender

By: *Patricia E Mercher*

Date: 3.25.10

I, Gail M. Ford, am a notary in the County of Gaston, state of North Carolina. Delena S. Lamacchia appeared before on March 21, 2010 and signed the above document. Gail M. Ford

My Comm. expires 7-26-10

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT      ver. 03_08_2010_11_09_37      Form 3157      3/09 (rev. 2-23-10)

(page 6 of 6 pages)

3 + 64 + 0022466767 + 1 + 50 y

Attachment K

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
In re:                                                        )  Chapter 11
                                                              )
AMERICAN HOME MORTGAGE                                        )  Case No. 07-11047
HOLDINGS, INC., a Delaware corporation, et. al.              )  Jointly Administered
                                                              )
                                                              )  Objection Deadline : September 13, 2007 at 4:00 p.m
                                                              )  Hearing Date: September 17, 2007 at 11:00 am
                             Debtors.                         )  Related Docket Nos. 11, 113, 403 and 674
-------------------------------------------------------------- x

**OBJECTION OF BEAR STEARNS MORTGAGE CAPITAL
CORPORATION AND EMC MORTGAGE CORPORATION TO THE EMERGENCY
MOTION OF THE DEBTORS FOR AN ORDER: (I) AUTHORIZING THE SALE OF
SUCH ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND
OTHER INTERESTS; (II) AUTHORIZING AND APPROVING PURCHASE
AGREEMENT THERETO; (III) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Bear Stearns Mortgage Capital Corporation ("BSMCC") and EMC Mortgage

Corporation ("EMC"), by their undersigned attorneys, hereby submit this objection (the

"Objection") to the (i) Motion of the above captioned debtors (the "Debtors") pursuant to

sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy

Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedures

(the "Bankruptcy Rules") for entry of an order authorizing, among other things, the sale of the

Debtors' mortgage loan serving business (the "Servicing Business") free and clear of liens,

claims, encumbrances, and other interests filed on August 6, 2007 [Docket No. 11] (the

"Motion"), and (ii) notice of proposed cure amounts filed on September 10, 2007 [Docket No.

674] (the "Cure Notice"), and in support of the Objection, respectfully represent as follows:

## PRELIMINARY STATEMENT

The Court must now step in and stop the efforts of these runaway Debtors to trample the ownership rights of BSMCC and EMC – as well as a host of other parties similarly situated – in their property and bargained for rights as a party to a protected repurchase agreement under section 559 of the Bankruptcy Code.  Simply put, by their Motion, the Debtors seek to assume and assign certain servicing rights that do not belong to them as a result BSMCC's lawful closeout under the underlying repurchase agreement pursuant to section 559 and to assume such agreement which is incapable of assumption by virtue of its termination in accordance with section 559.  To add insult to injury, while this Motion is pending, the Debtors have withheld collection payments from BSMCC and EMC which should have been flowing to them under their contractual rights.

These acts are simply not permitted under the Bankruptcy Code and non-bankruptcy law.  The Debtors' request for approval of the Motion puts this Court at odds with the clear and unambiguous language of section 559 that restricts this Court from entering any order that will interfere with the rights of a repo participant.  Congress clearly did not contemplate that a debtor can commandeer the auspices of the Bankruptcy Court to violate the property and protected repurchase agreement rights of a third party.

Having received no cooperation from the Debtors to amicably resolve their dispute, BSMCC and EMC commenced an adversary proceeding in order to protect their interest and compel the return of their property.  Yet, even in the face of a formal complaint – as well as similar complaints from several other parties – the Debtors have refused to alter their sale strategy and have ignored the property rights of those who dispute that the Debtors have actual title in what they seek to sell.  Accordingly, the Motion must be denied or alternatively, the

2

Motion should be deferred until a full and final resolution can be made with respect to true title of the assets in question.

## BACKGROUND[1]

1.      On June 23, 2004, BSMCC, as buyer, entered into that certain Whole Loan Master Repurchase Agreement (as amended, modified and supplemented from time to time, the "Repurchase Agreement") with American Home Mortgage Acceptance, Inc., as seller ("AHMA"). Pursuant to the Repurchase Agreement, BSMCC purchased, from time to time, certain mortgage loans (the "Purchased Mortgage Loans") from AHMA. Additionally, on June 23, 2004, BSMCC and AHMA entered into a Custody Agreement, together with Deutsche Bank National Trust Company (the "Custodian"), in which the Custodian agreed to act as custodian for BSMCC and AHMA of all notes, mortgages and other documents related to the Purchased Mortgage Loans. The Repurchase Agreement and Custody Agreement were subsequently amended on November 22, 2004 and August 29, 2005, to add American Home Mortgage Investment Corp. ("AHMI") and American Home Mortgage Corp. ("AHMC", and together with AHMA and AHMI, the "Debtor Sellers") as parties to the Repurchase Agreement and to provide that the Debtor Sellers are jointly and severally liable for the obligations under the agreements.

2.      Pursuant to the Repurchase Agreement, BSMCC purchased the Purchased Mortgage Loans from the Debtor Sellers and the Debtor Sellers agreed to repurchase the Purchased Mortgage Loans in the future on demand at a price in excess of what BSMCC paid for the Purchased Mortgage Loans. As of July 30, 2007, BSMCC owned Purchased Mortgage Loans in an amount exceeding $117,000,000. Pursuant to the Repurchase Agreement, it was the

---

[1]  The full factual history of the transaction and the relevant events related thereto and a summary of the operative provisions of the Repurchase Agreement and related agreements are contained in the Complaint (as defined herein).

intent of the parties that the transfers of the Purchased Mortgage Loans constituted purchases and sales of Purchased Mortgage Loans.

3.      The Repurchase Agreement also provides that until and unless there was an Event of Default under the Repurchase Agreement, the Debtor Sellers would cause the Purchased Mortgage Loans to be serviced for the benefit of BSMCC.[2]  Upon information and belief, AHMS performed and continues to perform servicing with respect to the Purchased Mortgage Loans.

4.      On August 2, 2007, in accordance with Paragraph 11(b) of the Repurchase Agreement, BSMCC delivered a notice of default to AHMA resulting from AHMA's failure to meet a margin call under the Repurchase Agreement.  AHMA's failure to timely meet the margin call constituted an Event of Default (as such term is defined in the Repurchase Agreement) pursuant to Paragraph 11(a)(ii) of the Repurchase Agreement.

5.      Upon such notice, pursuant to Paragraph 11(c) of the Repurchase Agreement, the Debtor Sellers were required, among other obligations, to "immediately deliver or cause the Custodian to deliver to [BSMCC] any documents relating to the Purchased Mortgage Loans subject to such Transactions then in Seller's possession."  Paragraph 11(c) also required the Debtor Sellers to remit all such funds thereafter received in connection with the Purchased Mortgage Loans to BSMCC.

6.      On August 6, 2007 (the "Petition Date"), each of the Debtors (which included the Debtor Sellers) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  As provided in Paragraph 11(a)(iii), the Debtors' chapter 11 filing constituted an additional Event of Default under the Repurchase Agreement.

---

[2]  Servicing involves, among other things, collecting principal and interest payments and other income and amounts received in connection with the Purchased Mortgage Loans and maintaining control of the collection process.

7.    On August 6, 2007, BSMCC exercised its remedies under the Repurchase Agreement and conducted an auction of the Purchased Mortgage Loans. The Purchased Mortgage Loans were sold on August 10, 2007 to EMC, a Bear Stearns affiliate, on a servicing released basis, which means that BSMCC sold all rights relating to the Purchased Mortgage Loans, including the servicing rights.[3]

8.    On August 13, 2007, BSMCC sent AHMA a letter (i) notifying the Debtor Sellers of the sale of the Purchased Mortgage Loans and (ii) requesting that the Debtor Sellers transfer, pursuant to the Repurchase Agreement, the servicing rights and related servicing files and documents (the "Servicing Documents") and any amounts received by the Debtor Sellers, including principal and interest payments, escrow amounts and other income and amounts of any kind with respect to Purchased Mortgage Loans (collectively, the "Collections") related to the Purchased Mortgage Loans to EMC. AHMA ignored the request and has not transferred the Servicing Documents nor the Collections.

9.    On August 24, 2007, BSMCC and EMC filed a Complaint For Declaratory and Injunctive Relief (the "Complaint"). In the Complaint, BSMCC and EMC are seeking, among other things, "a declaration from Court that all servicing files, documents and any payments and escrow accounts relating to the Purchased Mortgage Loans are property of EMC, and that EMC is entitled to immediate access to and possession of all servicing files, documents and payments and escrow accounts relating to the Purchased Mortgage Loans." Complaint, ¶ 65.

---

[3] Under Paragraph 12(c)(ii) of the Repurchase Agreement, BSMCC may, "in its sole discretion if an Event of Default shall have occurred and be continuing … sell the Mortgage Loans on a servicing released basis by terminating the respective servicer of the Purchased Mortgage Loans in accordance with the related servicing agreement with or without cause."

## BASIS FOR OBJECTION

10.    The Debtors have no legal ability to either (a) assume and assign the terminated Repurchase Agreement or (b) sell or transfer EMC's property, including its servicing rights under the Repurchase Agreement, the Purchased Mortgage Loans or the Collections. Accordingly, BSMCC and EMC object to the entry of an order on the Motion (the "Sale Order") to the extent that the Debtors seek (x) to sell free and clear of BSMCC and/or EMC's interests in (i) the Purchased Mortgage Loans (as defined herein) and the proceeds related thereto, (ii) the servicing rights related to the Purchased Mortgage Loans, including the Servicing Documents, and (iii) the Collections related to Repurchase Agreement or (y) to otherwise affect the protected rights of BSMCC under the Repurchase Agreement and section 559 of the Bankruptcy Code.[4]

---

[4]   BSMCC is a "repo participant" as that term is defined in section 101(46) because it is an entity that had an outstanding repurchase agreement with the Debtors at some time before the filing of the Debtors' chapter 11 petitions. See 11 U.S.C. § 101(46).  In addition, the Repurchase Agreement constitutes a "repurchase agreement" as that term is defined in section 101(47) of the Bankruptcy Code because it is an agreement, including related terms, which provides for the transfer of one or more mortgage loans and interests in mortgage loans with a simultaneous agreement by the transferee to transfer to the transferor the mortgage loans and interests in mortgage loans on demand, against the transfers of funds.  See 11 U.S.C. § 101(47).  Indeed, section 27 of the Repurchase Agreement expressly states the parties' intent that the transaction described therein are "repurchase agreement[s]" and that "either party's right to liquidate the Mortgage Loans delivered to it in connection with the Transactions hereunder or to exercise any other remedies pursuant to Paragraph 11 hereof, is a contractual right to liquidate such Transaction as described in sections 555 and 559" of the Bankruptcy Code.

### The Terminated Repurchase Agreement is not an Executory Contract that can be Assumed and Assigned under Section 365 of the Bankruptcy Code[5]

11.     The Repurchase Agreement is listed in the Cure Notice as a "Potential

Executory Contract" (as that term is defined in the Cure Notice).  The Debtors cannot assume

and assign the Repurchase Agreement and rights thereunder because the agreement was

terminated, is no longer executory and, therefore, incapable of being assumed and assigned under

section 365 of the Bankruptcy Code.  The Third Circuit has found that "[f]or section 365 to

apply, the contract or lease must be in existence, if the contract or lease has expired by its own

terms or has been terminated prior to the commencement of the bankruptcy case, then there is

nothing left for the trustee to assume or assign."  Kopelman v. Halvajian (In re Triangle

Laboratories), 663 F.2d 463, 467 (3d Cir. 1981) (citations omitted).  "[A]n executory contract or

lease validly terminated prior to the institution of bankruptcy proceedings is not resurrected by

the filing of the petition in bankruptcy, and cannot therefore be included among the debtor's

assets."  Triangle Laboratories, 663 F.2d at 467-68.  Thus, upon the termination of the

Repurchase Agreement it no longer constituted property of the Debtors' estates and, therefore,

the Repurchase Agreement cannot be assumed and assigned pursuant to section 365 of the

Bankruptcy Code.  See Coast Cities Truck Sales, Inc. v. Navistar Int'l Trans. Co. (In re Coast

Cities Truck Sales, Inc.), 147 B.R. 674, 677 (D. N.J. 1992) (finding that a terminated dealership

---

[5] To the extent this Court determines that the Repurchase Agreement is an executory contract and, therefore, can be assumed and assigned by the Debtors pursuant to section 365 of the Bankruptcy Code, before the Debtors can assume and assign the Repurchase Agreement the Debtors must cure all defaults. 11 U.S.C. § 365(b); see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract cum onere and the expenses and liability incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate") (citing In re Italian Cook Oil Corp., 190 F.2d 994, 996 (3d Cir. 1951) ("The trustee, however, may not blow hot or cold. If he accepts the contract he accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other")). BSMCC and EMC object the Debtor's stated cure amount on the Repurchase Agreement of $0.00 and BSMCC and EMC reserve their right to further supplement and object to the cure amount by September 20, 2007, at 4:00 p.m. in accordance with the Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if Any.

agreement could not be assumed by the debtor). Moreover, because the servicing has been sold to EMC, the assets "for sale" are not property of the estate. It is axiomatic that the Debtors cannot sell any property that it does not own or have an interest in.

12.    Furthermore, even assuming that the Repurchase Agreement was still executory (which it is not), it clearly could not be assumed by the Debtors under the plain language of subsection (c)(2) of section 365 because it is beyond dispute that the Repurchase Agreement is a "contract … to … extend other debt financing or financial accommodations, to or for the benefit of the debtor."

## The Servicing Rights were Lawfully Sold to EMC Upon Termination of the Repurchase Agreement

13.    Pursuant to the asset purchase agreement (the "Asset Purchase Agreement") which is exhibited to the Motion, the Debtors purport to be selling, inter alia, "all of the [Debtors'] Servicing Rights[6] and rights to receive Servicing Fees." Asset Purchase Agreement § 2.1(a). BSMCC exercised its protected rights under the Repurchase Agreement and section 559 of the Bankruptcy Code and sold the Purchased Mortgage Loans to EMC on a servicing released basis, thereby terminating any rights the Debtors may have under the Repurchase Agreement. Any right the Debtors might have had to service the Purchased Mortgage Loans was terminated and, therefore, the Purchased Mortgage Loans, the servicing rights and the Collections are not property of the estate under section 541 of the Bankruptcy Code.

14.    Indeed, the Debtors have no legal or equitable interest in the Repurchase Agreement, the Purchased Mortgage Loans, the servicing rights to the Purchased Mortgage

---

[6] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Asset Purchase Agreement.

Loans, or the Collections and, therefore, cannot seek to transfer them. See In re Wey, 854 F.2d 196, 199 (7th Cir. 1988) ("Possession of expired rights is the equivalent of the possession of no rights"). Any rights of the Debtors to service the Purchased Mortgage Loans were extinguished and the servicing rights, Servicing Documents and the Collections became the property of EMC. The mere fact that the Debtors have possession of the Servicing Documents and the Collections does not bestow them with any legal or equitable interests in the property; EMC's property, including, but not limited to, the servicing rights, is not property that the Debtors may sell, use or lease under section 363 of the Bankruptcy Code. In fact, the Debtors' failure to transfer the Servicing Documents and Collections is an act of conversion as set forth in further detail in the Complaint.

### Section 559 of the Bankruptcy Code Prevents the Issuance of Orders that Frustrate the Rights of a Repo Participant in a Repurchase Agreement

15.     In accordance with section 559 of the Bankruptcy Code, BSMCC had the right to sell the Purchased Mortgage Loans along with the servicing rights. Moreover, pursuant to Paragraph 12(c) of the Repurchase Agreement, BSMCC has rightfully sold the Purchased Mortgaged Loans on a servicing released basis to EMC.

16.     Section 559 of the Bankruptcy Code provides that:

> [t]he exercise of a contractual right of a repo participant or financial participant to cause the liquidation, termination, or acceleration of a repurchase agreement because of a condition of the kind specific in section 365(e)(1) of this title shall not be stayed, avoided or otherwise limited by operation of any provision of this title . . .

11 U.S.C. § 559. Pursuant to section 559, BSMCC's exercise of its right to terminate the Repurchase Agreement cannot be stayed, avoided or otherwise limited by operation of any provision of the Bankruptcy Code or order of this Court. Since the Repurchase Agreement was terminated and the Purchased Mortgage Loans were sold servicing released to EMC, the Debtors

cannot assume and assign the Repurchase Agreement or sell the servicing rights thereunder.

Compare In re R.M. Cordova Int'l, Inc., 77 B.R. 441, 446 (Bankr. D. N.J. 1987) (finding that the

exercise of an ipso facto clause was protected under section 556 of the Bankruptcy Code

(relating to forward contracts) and that such termination caused the forward contracts to not be

executory and, therefore, not subject to assumption pursuant to section 365).

17.    Pursuant to section 559 of the Bankruptcy Code, BSMCC's right to the

Servicing Documents and Collections cannot be stayed or otherwise limited by this Court and the

Debtors should be directed to transfer the Servicing Documents and Collections to EMC and to

provide an accounting to EMC of all proceeds that are attributable to EMC's property.

18.    Indeed, Congress intended that the addition of "repo participant" and

"repurchase agreement" and the making of conforming changes in the relevant provisions of the

Bankruptcy Code "afford participants in the repo market the same treatment with respect to the

stay and avoidance provisions of the Code that Public Law 97-22 explicitly provided

stockbrokers, securities clearing agencies, commodity brokers and forward contract merchants in

connection with securities contracts, commodity contracts and forward contracts." 128 Cong.

Rec. H261 (daily ed. February 9, 1982) (statement of Rep. Edwards).

19.    The legislative history also illustrates that Congress realized that:

> [t]he effective functioning of the repo market can only be assured
> if repo investors will be protected against open-ended market loss
> arising from the insolvency of a dealer or other counterparty in the
> repo market. The repo market is complex as it is crucial. It is built
> upon transactions that are highly interrelated. A collapse of one
> institution involved in repo transactions could start a chain
> reaction, putting at risk hundreds of billions of dollars and
> threatening the solvency of many additional institutions.

Senate Report 98-65 (1983). As such, Congress intended:

> intended to reduce "systematic risk" in the banking system and
> financial marketplace. To minimize risk of disruption when parties

> to these transaction become bankrupt or insolvent, the bill amends
> provisions of the banking and investment laws, as well as the
> Bankruptcy Code, to allow the expeditious termination or netting
> of certain types of financial transactions.

H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 20, 44, 127-134 (2005). Indeed, such protections

were designed to prevent a ripple effect which could cripple the markets and Congress' message

is being witnessed first hand in today's market conditions.

    WHEREFORE, without in any way limiting their rights, BSMCC and EMC

specifically request that the Court (i) finds that (a) EMC's property, including, but not limited to,

the Purchased Mortgage Loans and any proceeds related thereto, the servicing rights, including

the Servicing Documents, and the Collections will not be sold, transferred or otherwise

encumbered, because such property is not property of the Debtors' estates; (b) the Debtors are

not permitted to assume and assign the Repurchase Agreement pursuant to section 365 of the

Bankruptcy Code because such contract was terminated and does not constitute an executory

contract; (c) nothing in the Sale Order will affect the rights of BSMCC under the Repurchase

Agreement and section 559 of the Bankruptcy Code; and (ii) grants such other relief that is just

and proper; or alternatively, (iii) adjourns the Sale Motion until a full and final resolution can be

made with respect to true title of the assets in question.

Dated: September 13, 2007

         Respectfully submitted,
         DUANE MORRIS LLP

         Richard W. Riley (DE 4052)
         Frederick B. Rosner (DE 3995)
         1100 North Market Street, Suite 1200
         Wilmington, DE 19801-1246
         Telephone: (302) 657-4943
         Facsimile: (302) 657-4901

and

SIDLEY AUSTIN LLP
William M. Goldman
Geoffrey T. Raicht
Alex R. Rovira
Lori A. Kujawski
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599

*Attachment 5*



**Process Loans, Not Paperwork™**

# 1 record matched your search:

Need help?

MIN:1000242-0001721993-8     Note Date:06/28/2007          MIN Status:Inactive

Servicer: <u>EMC Mortgage Corporation</u>                Phone:(800) 723-3004
Lewisville, TX

Investor: This investor has chosen not to display their information. For assistance, please contact the servicer.

Return to Search

For more information about MERS please go to <u>www.mersinc.org</u>