## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x

In re:                                                                                 :    Chapter 11

                                               :

AMERICAN HOME MORTGAGE HOLDINGS, INC., :    Case No. 07-11047 (CSS)
a Delaware corporation, <u>et al.</u>,[1]                                    :

                                               :     Jointly Administered

                               Debtors.            :

                                               :

----------------------------------------------------------------- x

                                               :

STEVEN D. SASS, as PLAN TRUSTEE of the               :
AMERICAN HOME MORTGAGE PLAN TRUST           :    Adv. Proc. No. 11-_____ (CSS)

                                     Plaintiff,            :

         v.                                                                        :

BARCLAYS BANK PLC and                                          :
BARCLAYS CAPITAL INC.                                          :

                                  Defendants.            :

----------------------------------------------------------------- x

## <u>COMPLAINT AND OBJECTION TO CLAIMS</u>

        Plaintiff, Steven D. Sass, as Plan Trustee (the "<u>Plan Trustee</u>" or "<u>Plaintiff</u>") of the

American Home Mortgage Plan Trust (the "<u>Plan Trust</u>"), for his complaint against the above-

captioned defendants Barclays Bank PLC ("<u>Barclays</u>") and Barclays Capital Inc. ("<u>Barclays</u>

<u>Capital</u>" and together with Barclays, the "<u>Defendants</u>"), and for his objection to (i) claim number

8979 (the "<u>Swap Claim</u>") filed by Barclays, (ii) claim number 8980 (the "<u>Repurchase Claim</u>")

---

[1]      The Debtors, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The Debtors' mailing address is 538 Broadhollow Road, Melville, New York 11747.

filed by Barclays Capital, and (iii) claim numbers 8976, 8977, 8978 & 8981 (collectively, the "Whole Loan Repo Claims") filed by Barclays, hereby alleges upon knowledge with respect to the above-captioned debtors (the "Debtors") and their acts, and upon information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION[2]

1.    This adversary proceeding asserts both affirmative claims against Barclays and Barclays Capital and objections to the Swap Claim, Repurchase Claim and the Whole Loan Repo Claims, all arising from related transactions.  Specifically, Plaintiff's affirmative claims arise from: (i) the continuing breaches by Barclays of the Swap Agreement that provided for, among other things, the return to AHM Investment of the excess collateral remaining (the "Swap Collateral Surplus") after any amounts owed by AHM Investment to Barclays under the Swap Agreement and Whole Loan Repo Agreement, respectively, were offset against the Swap Collateral; and (ii) the impermissible triangular setoff(s) that Barclays and/or Barclays Capital purported to effectuate against the Swap Collateral held by Barclays under the Swap Agreement on account of Barclays Capital's alleged damages under the Repurchase Agreement.

2.    In particular, Barclays has breached its obligations under the Swap Agreement because it continues to hold the Swap Collateral Surplus notwithstanding the fact that (i) Barclays has already setoff its alleged damages under the Swap Agreement and Whole Loan Repo Agreement against the Swap Collateral, and (ii) Barclays Capital has no deficiency claim under the Repurchase Agreement and, moreover, neither Barclays nor Barclays Capital are entitled to setoff any of Barclays Capital's alleged damages under the Repurchase Agreement against the Swap Collateral under applicable law.

---

[2]    Capitalized terms used but not otherwise defined in the Summary of the Action section shall have the meanings ascribed to such terms in the body of the Complaint and Objection to Claims.

3.    Moreover, by offsetting Barclays Capital's alleged damages under the Repurchase Agreement against the Swap Collateral held by Barclays under the Swap Agreement, Barclays and/or Barclays Capital performed impermissible triangular setoffs in violation of the automatic stay since Barclays Capital was not a party to the Swap Agreement and AHM Investment had no obligations to Barclays Capital relating to the Swap Agreement.  As a result, Plaintiff is entitled to the immediate return of the Swap Collateral Surplus and such additional amounts as is determined by the Court in order to sufficiently and fully compensate Plaintiff for the damages and losses suffered as result of Defendants' actions.

## JURISDICTION AND VENUE

4.    On August 6, 2007 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

5.    The Court has jurisdiction over this adversary proceeding pursuant to Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 28 U.S.C. §§157(b)(2)(A), (B) and (C) and 1334.

6.    Venue is proper in this district pursuant to 28 U.S.C. §1409 because this proceeding arises in a case commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and such case is presently pending before this Court.  This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (B) and (C).

## PARTIES

7.    Plaintiff is the Plan Trustee of the American Home Mortgage Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* [Docket No. 7029] (the "Plan"), the order confirming the Plan [Docket No.

3

7042] (the "Confirmation Order"), and the Plan Trust Agreement [Docket No. 6944], filed in connection with the Chapter 11 cases of the Debtors.

        8.      Upon information and belief, Defendant Barclays is a global financial services firm organized as a public limited company under the laws of the United Kingdom. Upon information and belief, Barclays' principal place of business within the United States is located at 200 Park Avenue, New York, New York. Upon information and belief, at all relevant times, Barclays conducted its business of financial services in its own right and through its agents, employees and other authorized representatives.

        9.      Upon information and belief, Defendant Barclays Capital is the investment banking division of Barclays and is a corporation organized under the laws of the state of Connecticut. Upon information and belief, Barclays Capital's principal place of business within the United States is located at 200 Park Avenue, New York, New York. Upon information and belief, at all relevant times, Barclays Capital conducted its business of investment banking in its own right and through its agents, employees and other authorized representatives.

## FACTUAL BACKGROUND

### I.    Debtors' Bankruptcy Cases

        10.     As of the Petition Date, the Debtors were authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

        11.     On February 23, 2009, the Court entered the Confirmation Order. The Effective Date of the Plan (as defined in the Plan) occurred on November 30, 2010. Pursuant to the Confirmation Order and Plan Article 8, certain of the Debtors' assets were transferred to the Plan Trust upon the Effective Date.

4

12.     Pursuant to the Plan and Plan Trust Agreement, the Plan Trustee is permitted to, among other things, prosecute Causes of Action and object to Claims (as each term is defined in the Plan).

## II.    Claim No. 8980

### A.    The Repurchase Agreement

13.     Debtor American Home Mortgage Investment Corp. ("AHM Investment") and Barclays Capital are parties to that certain Master Repurchase Agreement dated as of February 8, 2006 (together with all annexes, confirmations and schedules thereto and as amended, supplemented and/or modified, the "Repurchase Agreement").[3]

14.     The Repurchase Agreement provides that, among other things, AHM Investment, as seller, agrees to transfer to Barclays Capital, as buyer, various securities and other assets (including any Additional Purchased Securities [as that term is defined in the Repurchase Agreement] transferred to Barclays Capital during the term of the Repurchase Agreement, the "Purchased Securities") in exchange for the transfer of funds from Barclays Capital, with a simultaneous agreement by Barclays Capital to transfer to AHM Investment such Purchased Securities at a date certain or on demand in exchange for the transfer of funds from AHM Investment (the "Repurchase Price").    Barclays Capital and Plaintiff nearly agree on the value of the Repurchase Price.    Barclays Capital asserts the Repurchase Price was $148,541,730 on August 3, 2007 and Plaintiff asserts the Repurchase Price was $148,540,906 on August 3, 2007.

### B.    Defaults Under The Repurchase Agreement And Termination Thereof

15.     On August 3, 2007 (the "Repo Termination Date"), Barclays Capital sent AHM Investment a letter captioned as "Declaration of Event of Default / Notice of Repurchase

---

[3]     A copy of the Repurchase Agreement is attached hereto as Exhibit A.

YCST01:10806191.11    066585.1001

Date / Notice of Termination" (the "Repo Termination Notice"),[4] pursuant to which Barclays Capital: (i) asserted that AHM Investment was in default under the Repurchase Agreement; (ii) accelerated the obligations under the Repurchase Agreement such that AHM Investment was required to immediately repurchase all of the Purchased Securities in Barclays Capital's possession under the Repurchase Agreement as of August 3, 2007; and (iii) terminated the Repurchase Agreement. The Debtors did not respond to the Repo Termination Notice.

16.    On August 6, 2007, the Debtors filed for relief under chapter 11 of the Bankruptcy Code. Pursuant to Section 11 of the Repurchase Agreement, the filing of the bankruptcy constituted an event of default.

C.    **The Repurchase Claim**

17.    On January 11, 2008, Barclays Capital filed the Repurchase Claim against AHM Investment asserting a general unsecured claim in the total amount of not less than $45,064,682 under the Repurchase Agreement.[5] The Repurchase Claim consists of several portions including, without limitation: (i) an alleged $45,043,020 unsecured deficiency claim (the "Deficiency Claim"); (ii) an asserted $21,662 claim on account of legal expenses incurred by Barclays Capital in connection with or as a result of AHM Investment's default under the Repurchase Agreement; and (iii) contingent claims for all indemnities of Barclays Capital set forth in the Repurchase Agreement.

18.    Pursuant to Exhibit C to the Repurchase Claim, Barclays Capital apparently values the Deficiency Claim at $45,043,020 by first calculating the difference between (i) the alleged market values of the Purchased Securities (minus Additional Purchased Securities) and one Swap Collateral Surplus position (a portion of AHM 2006-1 1M6 Note) as

---

[4]    A copy of the Repo Termination Notice is attached hereto as Exhibit B.

[5]    A copy of the Repurchase Claim is attached hereto as Exhibit C.

determined by Barclays Capital and (ii) the Repurchase Price of $148,541,730 (as asserted by Barclays Capital) of these securities as of August 3, 2007. The net result of this calculation was a purported deficiency in favor of Barclays Capital in the amount of $58,062,662.

19.    Next, Barclays Capital "credited" AHM Investment for the value of the Additional Purchased Securities that AHM Investment had provided to Barclays Capital as margin payments under the Repurchase Agreement. Barclays Capital also "credited" AHM Investment for the value of remaining Swap Collateral Surplus which included two notes (AHM 2005-SD1 2M2, AHM 2005-SD1) and remaining cash. Finally, Barclays Capital made other adjustments to arrive at an alleged Deficiency Claim of $45,043,020.

20.    Notwithstanding Barclays Capital's apparent use of the Swap Collateral Surplus (which consists of cash collateral, AHM 2005-SD1 2M2, AHM 2005-SD1 2M4 and part of AHM 2006-1 1M6) to reduce its purported deficiency under the Repurchase Agreement, only a portion of AHM 2006-1 1M6 was a Purchased Security under the Repurchase Agreement, while the remainder of this note was pledged as part of the Swap Collateral. The remaining cash collateral and the other two notes, AHM 2005-SD1 2M2 and AHM 2005-SD1 2M4, are part of the Swap Collateral and were not provided to or otherwise made available to Barclays Capital in connection with the Repurchase Agreement or any other agreement entered into between AHM Investment and Barclays Capital.

21.    Plaintiff asserts that the value of the Purchased Securities as of the Repo Termination Date exceeds the sum of the Repurchase Price on the Repo Termination Date and all other allowed damages (collectively, the "AHM Repo Obligations") under the Repurchase Agreement. In sum, Plaintiff values the AHM Repo Obligations as $148,562,568 on the Repo Termination Date. As such, there are no damages under the Repurchase Agreement or other

amounts owed to Barclays Capital pursuant to the Repurchase Claim and this claim should be disallowed in its entirety.

22.     In addition, upon information and belief, Barclays Capital has effectuated a post-petition setoff of the alleged amounts owed to Barclays Capital under the Repurchase Agreement against the Swap Collateral held by Barclays under the Swap Agreement without first seeking relief from the automatic stay.   However, the Swap Collateral was not provided to or otherwise made available to Barclays Capital in connection with the Repurchase Agreement and, moreover, AHM Investment had no obligations to Barclays Capital relating to the Swap Agreement.   Thus, upon information and belief, Barclays Capital has performed a triangular setoff not permitted by applicable law and in violation of the automatic stay.   As a result, this setoff should be declared void *ab initio* and the notes and remaining cash comprising the Swap Collateral Surplus (or their aggregate value) against which Barclays Capital offset its alleged damages should be immediately turned over to Plaintiff.

## III.   Claim No. 8979

### A.     The Swap Agreement And The Cap Transactions

23.     In March of 2006, AHM Investment created the securitization trust AHM Investment Trust 2006-1 (the "Trust") with Deutsche Bank National Trust Company acting as Indenture Trustee.   Barclays was chosen to underwrite the Trust's securitization of various adjustable rate mortgage loans (the "Trust Mortgages") whose rates were tied to the 1-year Treasury Index.   The Trust issued floating rate notes (the "Trust Securities") based on these underlying Trust Mortgages.

24.     The Trust Mortgages have an approximate average interest rate cap of 10%, with an effective interest rate cap of approximately 9% after netting out Trust expenses. The floating rate of the Trust Securities, however, is not capped.   The lack of an interest rate cap

on the Trust Securities means that an increase in market interest rates over 9% could lead to an inability to service the Trust Securities with payments from the underlying Trust Mortgages.

25.    As part of the underwriting of the Trust Securities, the Trust, Barclays and AHM Investment entered into a series of interest rate cap transactions to hedge against the possibility that prevailing interest rates on the Trust Securities would increase over the effective interest rate cap on the Trust Mortgages.    In order for the Trust Securities to be eligible for a AAA rating, the interest rate cap transactions were set up so that Barclays – which was rated AAA at the relevant time – sold an interest rate cap option (the "Front Cap") to the Trust and AHM Investment simultaneously sold an interest rate cap option to Barclays (the "Back Cap").

26.    The Front Cap would protect the Trust in the event that the interest rate on the Trust Securities increased beyond the interest rate of the underlying Trust Mortgages and the Back Cap would cover Barclays's liability in the event that the Front Cap was exercised by the Trust.    The Front Cap and the Back Cap were structured in such a way that they were nearly identical and would have substantially similar values at any given time.    Barclays also entered into two interest rate cap options ("Hedge Cap 1" and "Hedge Cap 2", collectively the "Hedge Caps") with AHM Investment.    These corridor cap transactions were intended to hedge AHM Investment's potential exposure relating to the Back Cap.

27.    The Back Cap and Hedge Caps transactions were governed by that certain ISDA Master Agreement (Multicurrency-Cross Border), dated as of March 13, 2006 (the "Master Agreement"), that certain ISDA Credit Support Annex (Bilateral Form), dated as of March 13, 2006 ("Credit Support Annex"), and certain related Confirmations,[6] and other related

---

[6]    Copies of the Master Agreement, Credit Support Annex and the referenced Confirmations are attached hereto as Exhibit D.

transactional documents, as amended, supplemented and modified (collectively, the "Swap Agreement").

28.    The Swap Agreement, among other things, provides that margin protection in the form of cash collateral or securities be delivered to the Swap Agreement counterparty upon demand and under certain circumstances.    During the term of the Swap Agreement, AHM Investment provided Barclays with cash and certain securities (collectively, the "Swap Collateral") pursuant to the requirements of the Swap Agreement.

29.    In particular, on March 29, 2006, AHM Investment transferred various bonds with an aggregate value of $18,994,056 to Barclays as Swap Collateral.    The specific bonds held as Swap Collateral changed during the course of the Swap Agreement, as AHM Investment had the right to substitute bonds on an as-needed basis.    On April 20, 2007, AHM Investment provided $5,336,536 in cash to Barclays to be held as a portion of the Swap Collateral in exchange for the return of JPMMT 2005-ALT1 2A1 (Cusip 466247XG3).    Plaintiff reserves any and all rights related to the turnover of proceeds if any Swap Collateral was liquidated prior to the Swap Termination Date.

30.    In addition, the Swap Agreement also contains a broad setoff provision that purports to authorize Barclays to perform cross-obligation setoffs (*i.e.*, setoff for obligations between Barclays and AHM Investment in connection with agreements beyond the Swap Agreement) and cross-affiliate setoffs (*i.e.*, allowing Barclays to setoff its obligations to AHM Investment under the Swap Agreement against any obligations owed by AHM Investment to Barclays' affiliates such as Barclays Capital).

31.    Specifically, Section 5(b) of the Schedule to the Master Agreement (the "Setoff Provision") states, in pertinent part:

10

Rights of Set-off.  In addition to any rights of set-off a party may have as a matter of law or otherwise, upon the occurrence of an Event of Default with respect to a party. . . (in each case, "Party X"), the other party ("Party Y") will have the right (but not the obligation) without prior notice to Party X or any other person to set-off any obligation of Party X owing to Party Y or any of Party Y's Affiliates, branches or offices (whether or not arising under this Agreement, whether or not matured, whether or not contingent. . .) against any obligation of Party Y or any of Party Y's Affiliates, branches or offices owing to Party X (whether or not arising under this Agreement, whether or not matured, whether or not contingent. . .).

32.    Thus, the Setoff Provision, among other things, purports to permit Barclays to effectuate a "triangular setoff" of its obligations to AHM Investment under the Swap Agreement against amounts AHM Investment allegedly owes to Barclays Capital under the Repurchase Agreement despite the fact that the debts are not mutual under the circumstances. This portion of the provision is not enforceable because it is contrary to the Bankruptcy Code and applicable case law which condition the right of setoff on the existence of mutual obligations.

**B.    Defaults Under The Master Agreement And Early Termination Thereof**

33.    On August 2, 2007 (the "Swap Termination Date"), Barclays sent AHM Investment a letter captioned as "Notice of Early Termination / Notice of Set-off" (the "Swap Termination Notice"),[7] pursuant to which Barclays: (i) asserted that AHM Investment was in default under the Master Agreement; (ii) designated August 2, 2007 as the Early Termination Date (as defined in the Master Agreement) with respect to all outstanding transactions under the Swap Agreement; and (iii) notified AHM Investment of Barclays' exercise of its right under the Master Agreement to set off any amounts payable by Barclays to AHM Investment against AHM

---

[7]    A copy of the Swap Termination Notice is attached hereto as Exhibit E.

066585.1001

Investment's unsatisfied obligations to Barclays Capital under the Repurchase Agreement discussed *supra*. The Debtors did not respond to the Swap Termination Notice.

34.     On August 6, 2007, the Debtors filed for relief under chapter 11 of the Bankruptcy Code.  Pursuant to Section 5(a)(vii) of the Master Agreement, the filing of the bankruptcy constituted an event of default.

### C.     The Swap Claim

35.     On January 11, 2008, Barclays filed the Swap Claim against AHM Investment asserting a general unsecured claim in an amount not less than $10,830 pursuant to the Swap Agreement.[8]  The Swap Claim consists of several portions, including (i) $10,830 on account of legal expenses purportedly incurred by Barclays in connection with the enforcement and protection of its rights under the Swap Agreement or by reason of the early termination of the transactions contemplated by the Swap Agreement, and (ii) contingent claims for all indemnities of Barclays set forth in the Swap Agreement.

36.     In addition, Barclays, among other things, asserts that the Swap Claim was secured to the extent of any collateral the Debtors granted to Barclays or Barclays' right of setoff under applicable law.  Barclays further reserves the right to assert by way of setoff, counterclaim and/or recoupment, all obligations and liabilities of AHM Investment against any liability that may be asserted against Barclays.

37.     The Swap Claim should be disallowed because, among other reasons, Barclays is in possession of sufficient Swap Collateral – both cash collateral and securities – to set off against even the inflated termination value of the Swap Agreement determined by Barclays and other amounts owed under the Swap Agreement.  In fact, as discussed *supra*, the alleged value of the Deficiency Claim set forth in the Repurchase Claim is premised on the fact

that surplus Swap Collateral exists for setoff against amounts owed to Barclays Capital under the Repurchase Agreement.

**D.      The Swap Collateral Far Exceeds The Swap Damages**

38.      Although Barclays failed to discuss any valuation in the Swap Claim, in a letter dated September 19, 2007 (the "Barclays' Valuation Letter"),[9] Barclays has previously claimed a value of $3,852,000 (the "Barclays Swap Termination Value"), which is the net of a $3,910,000 valuation of the Back Cap in favor of Barclays and an aggregate valuation of the Hedge Caps of $58,000 in favor of AHM Investment.  Plaintiff maintains that the Barclays Swap Termination Value is highly inflated and unreasonable.

39.      Plaintiff has determined that Barclays' total damages under the Swap Agreement is $478,352 (the "Swap Damages").  The Swap Collateral held by Barclays is more than enough to offset the $478,382 in Swap Damages.  On the Swap Termination Date, Barclays held cash collateral plus unpaid accrued interest totaling $5,250,979 and three notes that Plaintiff values at $7,765,397 as of that date.  Thus, the total value of the collateral held by Barclays on the Swap Termination Date was $13,016,376.  After using the Swap Collateral to setoff against the Swap Damages, the Swap Collateral Surplus is valued at $12,537,994.  To the extent that Barclays liquidated any of these notes held as Swap Collateral prior to the Swap Termination Date, the Plaintiff reserves any and all rights to seek turnover of any proceeds from this liquidation.

40.      Accordingly, the Swap Claim should be disallowed in its entirety and, for the reasons set forth herein, Barclays breached the Swap Agreement by failing to return the Swap

---

[8]      A copy of the Swap Claim is attached as Exhibit F.

[9]      A copy of the Barclays' Valuation Letter is attached as Exhibit G.

Collateral Surplus despite the fact that all amounts owed to Barclays have been setoff against the Swap Collateral.

41.    Moreover, as noted *supra*, by the Swap Termination Notice, Barclays notified AHM Investment of its intent to set off any amounts payable by Barclays to AHM Investment against AHM Investment's unsatisfied obligations to Barclays Capital under the Repurchase Agreement.  Upon information and belief, Barclays has effectuated a post-petition setoff of the alleged amounts owed to Barclays Capital under the Repurchase Agreement against the Swap Collateral without first seeking relief from the automatic stay.  However, the Swap Collateral was not provided to or otherwise made available to Barclays Capital in connection with the Repurchase Agreement and, moreover, AHM Investment had no obligations to Barclays Capital relating to the Swap Agreement.  Thus, upon information and belief, Barclays has performed a triangular setoff not permitted by applicable law and in violation of the automatic stay.  As a result, this setoff should be declared void *ab initio* and the Swap Collateral Surplus (or the aggregate value of the Swap Collateral Surplus) against which Barclays offset the alleged damages of Barclays Capital under the Repurchase Agreement should be immediately turned over to Plaintiff.

IV.    **Claim Nos. 8976, 8977, 8978 & 8981**

A.    **The Whole Loan Repo Agreement**

42.    Debtors American Home Mortgage Acceptance, Inc., American Home Mortgage Corp., AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) and AHM Investment (collectively, the "Whole Loan Repo Debtors") and Barclays are parties to that certain Master Repurchase Agreement dated as of November 14, 2006 and other related transactional documents (as amended, supplemented and modified from time to time, collectively, the "Whole Loan Repo Agreement").

YCST01:10806191.11                    066585.1001

43.     The Whole Loan Repo Agreement provides that, among other things, the Whole Loan Repo Debtors, as sellers, agree to transfer to Barclays, as buyer, various Mortgage Loans (as that term is defined in the Whole Loan Repo Agreement) in exchange for the transfer of funds from Barclays, with a simultaneous agreement by Barclays to transfer to the Whole Loan Repo Debtors such Mortgage Loans at a date certain or on demand in exchange for the transfer of funds from the Whole Loan Repo Debtors.    The Whole Loan Repo Debtors repurchased all of the Mortgage Loans which Barclays held as collateral pursuant to the Whole Loan Repo Agreement on July 19, 2007 and no further transactions were entered into under this agreement after this date.

44.     Although Barclays contends in the Whole Loan Repo Claims that no transactions were ever entered into under the Whole Loan Repo Agreement, it is undisputed that the Whole Loan Repo Debtors had no repurchase obligations remaining under the Whole Loan Repo Agreement after July 19, 2007.

**B.     Early Termination Of The Whole Loan Repo Agreement**

45.     On August 1, 2007, Barclays sent each of the Whole Loan Repo Debtors a letter captioned as "Notice of Event of Default / Notice of Termination Date" (the "Whole Loan Repo Termination Notice"),[10] pursuant to which Barclays, (i) asserted, among other things, that the Whole Loan Repo Debtors were in default of the Whole Loan Repo Agreement on account of AHM Investment's default under the Repurchase Agreement, and (ii) terminated the Whole Loan Repo Agreement.    The Debtors did not respond to the Whole Loan Repo Termination Notice.

---

[10]     A copy of the Whole Loan Repo Termination Notice is attached hereto as Exhibit H.

YCST01:10806191.11                                                                                            066585.1001

46.     On August 6, 2007, the Debtors filed for relief under chapter 11 of the Bankruptcy Code.  Pursuant to Section 18 of the Whole Loan Repo Agreement, the filing of the bankruptcy constituted an event of default.

### C.     The Whole Loan Repo Claims

47.     On January 11, 2008, Barclays filed the Whole Loan Repo Claims against the Whole Loan Repo Debtors.  The Whole Loan Repo Claims are identical claims asserted against the Whole Loan Repo Debtors and are comprised of the following: (i) claim number 8976 filed against AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) (Case No. 07-11050); (ii) claim number 8977 filed against American Home Mortgage Acceptance, Inc. (Case No. 07-11049); (iii) claim number 8978 filed against AHM Investment (Case No. 07-11048); and (iv) claim number 8981 filed against American Home Mortgage Corp. (Case No. 07-11051).

48.     Pursuant to the Whole Loan Repo Claims, Barclays asserts (i) a $1,770 claim in connection with Barclays' enforcement of the Whole Loan Repo Agreement, and (ii) contingent claims for all indemnities of Barclays set forth in the Whole Loan Repo Agreement.

49.     Plaintiff admits that Barclays is entitled to $1,770 for legal expenses incurred.  Plaintiff, however, denies that Barclays is entitled to $1,770 from each of the Whole Loan Repo Debtors.  Moreover, while Plaintiff agrees to this value for legal expenses in the Whole Loan Repo Claims, it denies that Barclays is entitled to anything for its alleged "contingent claims."  Barclays has set forth no proof in the Whole Loan Repo Claims that any contingent claims exist or will ever mature.  The Whole Loan Repo Agreement was terminated more than three years ago and there is no indication that any contingent claims will mature in the future.

50.    Thus, Barclays' total damages under the Whole Loan Repo Agreement is $1,770 (the "Whole Loan Repo Damages") and Barclays' right to setoff of this amount against the Swap Collateral provides for the full satisfaction of the amounts owed to Barclays under the Whole Loan Repo Agreement.  The Whole Loan Repo Claims should therefore be disallowed in their entirety.

51.    Based on the foregoing, Barclays breached the Swap Agreement by failing to return the Swap Collateral Surplus to AHM Investment as required by the Swap Agreement. Accordingly, Barclays should be required to immediately turnover the Swap Collateral Surplus to Plaintiff.

## COUNT I
### (Against Barclays Bank PLC — Breach of Contract)

52.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

53.    The Swap Agreement constitutes a valid and enforceable agreement between Barclays and AHM Investment.

54.    Barclays breached the Swap Agreement by failing to return the Swap Collateral Surplus to AHM Investment despite the fact that (i) Barclays has already offset all amounts owed to it under the Swap Agreement and Whole Loan Repo Agreement against the Swap Collateral, and (ii) Barclays and Barclays Capital are not permitted under applicable law to setoff any amounts allegedly owed to Barclays Capital under the Repurchase Claim against the Swap Collateral held by Barclays in connection with the Swap Agreement.

YCST01:10806191.11                                                                          066585.1001

## COUNT II

### (Against Barclays Bank PLC – Turnover of Property of the Estate – 11 U.S.C. §542)

55.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

56.    In retaining possession of the Swap Collateral Surplus, Barclays is in possession, custody and control of property that the Plaintiff (as assignee of AHM Investment pursuant to the Plan) may use, sell or lease under section 363 of the Bankruptcy Code.

57.    The Swap Collateral Surplus and their proceeds, if any, constitute property of the Plaintiff (as assignee of AHM Investment pursuant to the Plan) under section 541 of the Bankruptcy Code.

58.    For the reasons set forth above, Barclays has no claim or right to the Swap Collateral Surplus.

59.    Barclays should be compelled to deliver the Swap Collateral Surplus, or the aggregate value of the Swap Collateral Surplus, to Plaintiff pursuant to 11 U.S.C. §542(a).

## COUNT III

### (Against Barclays Capital Inc. – Turnover of Property of the Estate – 11 U.S.C. §542)

60.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

61.    In retaining possession of the Swap Collateral Surplus, Barclays Capital is in possession, custody and control of property that Plaintiff (as assignee of AHM Investment pursuant to the Plan) may use, sell or lease under section 363 of the Bankruptcy Code.

62.    The Swap Collateral Surplus and their proceeds, if any, constitute property of the Plaintiff (as assignee of AHM Investment pursuant to the Plan) under section 541 of the Bankruptcy Code.

63.    For the reasons set forth above, Barclays Capital has no claim or right to the Swap Collateral Surplus.

64.    Barclays Capital should be compelled to deliver the Swap Collateral Surplus, or the aggregate value of the Swap Collateral Surplus, to Plaintiff pursuant to 11 U.S.C. §542(a).

**COUNT IV**

**(Against Barclays Bank PLC – Declaratory Judgment Regarding Barclays' Prohibited Triangular Setoff)**

65.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

66.    Barclays and AHM Investment were parties to the Swap Agreement.

67.    The Swap Collateral was provided to Barclays by AHM Investment pursuant to the Swap Agreement.

68.    Barclays Capital was not a party to the Swap Agreement and AHM Investment had no obligations to Barclays Capital relating to the Swap Agreement.

69.    The Swap Collateral was not provided to or otherwise made available to Barclays Capital in connection with the Repurchase Agreement or any other agreement entered into between Barclays Capital and AHM Investment.

70.    Upon information and belief, Barclays offset the alleged damages of Barclays Capital under the Repurchase Agreement against the Swap Collateral held by Barclays pursuant to the Swap Agreement.

71.    Notwithstanding the Setoff Provision contained in the Swap Agreement, in offsetting the alleged damages of Barclays Capital under the Repurchase Agreement against the Swap Collateral held by Barclays pursuant to the Swap Agreement, Barclays effectuated an

YCST01:10806191.11                                                      066585.1001

impermissible triangular setoff because no mutuality existed under the circumstances as required by Section 553 of the Bankruptcy Code and applicable law.

72.     An actual controversy exists between the parties regarding Barclays' right to offset the damages allegedly incurred by Barclays Capital under the Repurchase Agreement against the Swap Collateral held by Barclays pursuant to the Swap Agreement.

73.     There exists a substantial controversy between Plaintiff and Barclays of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §2201.  A prompt judicial determination of the respective rights and duties of the parties in these respects is necessary and appropriate.

<u>COUNT V</u>

**(Against Barclays Bank PLC – Declaratory Judgment Regarding
Barclays' Violation Of The Automatic Stay)**

74.     Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

75.     Upon information and belief, Barclays offset the alleged damages of Barclays Capital under the Repurchase Agreement against the Swap Collateral held by Barclays pursuant to the Swap Agreement.

76.     Upon information and belief, Barclays performed this setoff after the Petition Date without first seeking relief from the automatic stay set forth in 11 U.S.C. §362(a).

77.     In offsetting the alleged damages of Barclays Capital under the Repurchase Agreement against the Swap Collateral after the Petition Date without first seeking relief from the automatic stay, Barclays effectuated an impermissible triangular setoff in violation of the automatic stay.

066585.1001

78.    As a result, this setoff should be declared void *ab initio* and the Swap Collateral, or the aggregate value of the Swap Collateral, against which Barclays offset the alleged damages of Barclays Capital under the Repurchase Agreement should be immediately turned over to the Plaintiff.

79.    An actual controversy exists between the parties regarding Barclays right to offset the damages Barclays Capital allegedly incurred under the Repurchase Agreement against the Swap Collateral held by Barclays pursuant to the Swap Agreement.

80.    There exists a substantial controversy between Plaintiff and Barclays of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §2201.  A prompt judicial determination of the respective rights and duties of the parties in these respects is necessary and appropriate.

## COUNT VI

### (Against Barclays Capital Inc. – Declaratory Judgment Regarding Barclays Capital Inc.'s Prohibited Triangular Setoff)

81.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

82.    Barclays and AHM Investment were parties to the Swap Agreement.

83.    The Swap Collateral was provided to Barclays by AHM Investment pursuant to the Swap Agreement.

84.    Barclays Capital was not a party to the Swap Agreement and AHM Investment had no obligations to Barclays Capital relating to the Swap Agreement.

85.    The Swap Collateral was not provided to or otherwise made available to Barclays Capital in connection with the Repurchase Agreement or any other agreement entered into between Barclays Capital and AHM Investment.

21

86.    In offsetting its alleged damages under the Repurchase Agreement against the notes comprising a portion of the Swap Collateral held by Barclays pursuant to the Swap Agreement, Barclays Capital effectuated an impermissible triangular setoff because no mutuality existed under the circumstances as required by Section 553 of the Bankruptcy Code and applicable law.

87.    An actual controversy exists between the parties regarding Barclays Capital's right to offset the damages it allegedly incurred under the Repurchase Agreement against the Swap Collateral held by Barclays pursuant to the Swap Agreement.

88.    There exists a substantial controversy between Plaintiff and Barclays Capital of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §2201.  A prompt judicial determination of the respective rights and duties of the parties in these respects is necessary and appropriate.

<u>COUNT VII</u>

**(Against Barclays Capital Inc. – Declaratory Judgment Regarding
Barclays Capital Inc.'s Violation Of The Automatic Stay)**

89.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

90.    Upon information and belief, Barclays Capital offset its alleged damages under the Repurchase Agreement against a portion of the Swap Collateral held by Barclays pursuant to the Swap Agreement.

91.    Upon information and belief, Barclays Capital performed this setoff after the Petition Date without first seeking relief from the automatic stay set forth in 11 U.S.C. §362(a).

22

92.    In offsetting its alleged damages under the Repurchase Agreement against the Swap Collateral after the Petition Date without first seeking relief from the automatic stay, Barclays Capital effectuated an impermissible triangular setoff in violation of the automatic stay.

93.    As a result, this setoff should be declared void *ab initio* and the Swap Collateral, or the aggregate value of the Swap Collateral, against which Barclays Capital offset its alleged damages under the Repurchase Agreement should be immediately turned over to the Plaintiff.

94.    An actual controversy exists between the parties regarding Barclays Capital's right to offset the damages it allegedly incurred under the Repurchase Agreement against the Swap Collateral held by Barclays pursuant to the Swap Agreement.

95.    There exists a substantial controversy between Plaintiff and Barclays Capital of sufficient immediacy and reality to warrant the issuance of a declaratory judgment under 28 U.S.C. §2201.  A prompt judicial determination of the respective rights and duties of the parties in these respects is necessary and appropriate.

## COUNT VIII

### (Against Barclays Capital Inc. – Objection to the Repurchase Claim)

96.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

97.    Barclays Capital filed the Repurchase Claim on January 11, 2008.

98.    Plaintiff hereby objects to the Repurchase Claim pursuant to section 502 of the Bankruptcy Code on the grounds that the Repurchase Claim should be disallowed in its entirety because the total value of the Purchased Securities as of the Repo Termination Date exceeds the AHM Repo Obligations.

99.    Plaintiff is therefore entitled to judgment that the Repurchase Claim is disallowed in its entirety because Barclays Capital has no deficiency claim or other amounts owed to it under the Repurchase Agreement.

## COUNT IX

### (Against Barclays Bank PLC – Objection to the Swap Claim)

100.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

101.    Barclays filed the Swap Claim on January 11, 2008.

102.    Plaintiff hereby objects to the Swap Claim pursuant to section 502 of the Bankruptcy Code on the grounds that the Swap Claim should be disallowed in its entirety because Barclays has offset the Swap Damages against the Swap Collateral in full satisfaction of any amounts owed to Barclays under the Swap Agreement.

103.    Plaintiff is therefore entitled to judgment that the Swap Claim is disallowed in its entirety because Barclays currently has no amounts owed to it under the Swap Agreement.

## COUNT X

### (Against Barclays Bank PLC – Objection to the Whole Loan Repo Claims)

104.    Plaintiff repeats and incorporates by reference its allegations contained in the foregoing paragraphs as if fully set forth herein.

105.    Barclays filed the Whole Loan Repo Claims on January 11, 2008.

106.    Plaintiff hereby objects to the Whole Loan Repo Claims pursuant to section 502 of the Bankruptcy Code on the grounds that the Whole Loan Repo Claims should be disallowed in their entirety because Barclays has offset the Whole Loan Repo Damages against

the Swap Collateral in full satisfaction of any amounts owed to Barclays under the Whole Loan Repo Agreement.

107.    Plaintiff is therefore entitled to judgment that the Whole Loan Repo Claims are disallowed in their entirety because Barclays currently has no amounts owed to it under the Whole Loan Repo Agreement.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiff demands judgment against Defendants as follows:

A.    An award of damages in an amount to be determined at trial incurred as a result of Barclays' breaches of the Swap Agreement and such additional amount as is determined by the Court in order to sufficiently and fully compensate Plaintiff for the damages and losses suffered as result of Barclays' actions.

B.    A declaration that Plaintiff is entitled to the Swap Collateral Surplus.

C.    An order requiring Barclays to immediately turnover the Swap Collateral Surplus, or the aggregate value of the Swap Collateral Surplus, to Plaintiff.

D.    An order requiring Barclays Capital to immediately turnover the Swap Collateral Surplus, or the aggregate value of the Swap Collateral Surplus, to Plaintiff.

E.    An order declaring that Barclays performed an impermissible triangular setoff by offsetting Barclays Capital's alleged damages under the Repurchase Agreement against the Swap Collateral.

F.    An order declaring that Barclays' setoff of Barclays Capital's alleged damages under the Repurchase Agreement against the Swap Collateral violated the automatic stay and void *ab initio*.

066585.1001

G.    An order declaring that Barclays Capital performed an impermissible triangular setoff by offsetting its alleged damages under the Repurchase Agreement against the Swap Collateral Surplus.

H.    An order declaring that Barclays Capital's setoff of its alleged damages under the Repurchase Agreement against the Swap Collateral Surplus violated the automatic stay and is void *ab initio*.

I.    An order declaring that the Repurchase Claim is disallowed in its entirety because Barclays Capital has no deficiency claim or other amounts owed to it under the Repurchase Agreement.

J.    An order declaring that the Swap Claim is disallowed in its entirety because Barclays has offset the Swap Damages against the Swap Collateral in full satisfaction of any amounts owed to Barclays under the Swap Agreement.

K.    An order declaring that the Whole Loan Repo Claims are disallowed in their entirety because Barclays has offset the Whole Loan Repo Damages against the Swap Collateral in full satisfaction of any amounts owed to Barclays under the Whole Loan Repo Agreement.

L.    Payment of Plaintiff's attorneys' fees and expenses incurred in connection with this adversary proceeding.

M.    Such other or further relief as the Court finds just and equitable.

*[Signature page follows]*

YCST01:10806191.11                                        066585.1001

Dated: April 28, 2011
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

/s/ John T. Dorsey
John T. Dorsey (No. 2988)
Sean M. Beach (No. 4070)
Michael S. Neiburg (No. 5275)
Justin P. Duda (No. 5478)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

Co-Counsel to the Plan Trustee

YCST01:10806191.11

066585.1001