## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE | ) |
| HOLDINGS, INC., a Delaware corporation, | ) Case No. 07-11047 (CSS) |
| et al.[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) **Ref. Docket No. 9912** |
| -------------------------------------------------------- | ) |

## PLAN TRUSTEE'S OBJECTION TO (I) MOTION OF DELENA LAMACCHIA FOR ALLOWANCE OF LATE FILING ADMINISTRATIVE EXPENSE CLAIM, AND (II) MOTION OF DELENA LAMACCHIA FOR A LATE FILING OF EQUITABLE SUBORDINATION OF WELLS FARGO'S CLAIMS

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust

established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of*

*February 18, 2009* (the "Plan") in connection with the Chapter 11 cases of the above-captioned

debtors and debtors-in-possession (the "Debtors"),[2] submits this objection (the "Objection") to (i)

Motion of Delena Lamacchia for Allowance of Late Filing Administrative Expense Claim (the

"Late Admin Claim Motion"), and (ii) Motion of Delena Lamacchia for a Late Filing of

Equitable Subordination of Wells Fargo's Claims (the "Late Subordination Motion" and as filed

in combination with the Late Admin Claim Motion as D.I. 9912, the "Late Filed Motions"), and

requests an order denying the Late Filed Motions. In support of this Objection, the Plan Trustee

respectfully represents as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHMA"), a Maryland corporation (1979); AHM SV, Inc., f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), in that it is a matter concerning the administration of the Debtors' estates.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 502(b) and 503 of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007.

## BACKGROUND

**A.      General Background**

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").  Each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.      The Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042].  The Plan became effective on November 30, 2010 (the "Effective Date").

4.      Pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust.  Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust.  The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

2

## B.    Relevant Background

### 1.    *Ms. Lamacchia's Loan Transaction*

5.    In May 2006, Ms. Lamacchia obtained title to Lot #6 Requa Road, Cherryville, NC (n/k/a 1104 Black Road, Cherryville, NC) (the "Property"), an undeveloped property.[3]

6.    In February of 2007, Ms. Lamacchia submitted a loan application (the "First Loan Application") for financing from AHMA.  The transaction regarding the First Loan Application was not completed because the appraised value was insufficient for funding. Thereafter, on about April 3, 2007, Ms. Lamacchia again sought financing from AHMA.

7.    On April 6, 2007, AHMA approved Ms. Lamacchia's loan request.

8.    On or about April 27, 2007, Ms. Lamacchia and her former husband, Mr. Joseph Brian Lamacchia ("Mr. Lamacchia") borrowed approximately $188,100.00 (the "Yorktown Loan Amount") from Yorktown Funding, Inc. ("Yorktown") and executed a Deed of Trust (the "Yorktown Deed of Trust") for the benefit of Yorktown for the Property.  The Deed of Trust was recorded on April 30, 2007, a copy of which was retrieved by the Plan Trustee from the county's website and is attached hereto as Exhibit A.  Pursuant to the terms of the Yorktown Deed of Trust, the Yorktown Loan Amount was due and payable on October 27, 2007.

9.    Upon information and belief, Ms. Lamacchia intended Yorktown to finance the construction, purchase and transport of a modular home to the Property; thereafter, Ms. Lamacchia would close on the requested loan from AHMA creating a "permanent" loan.

10.    On June 28, 2007, Ms. Lamacchia's loan funded by AHMA (the "Lamacchia Loan") closed.  The Settlement Statement, a copy of which is attached hereto as Exhibit B, provides that the proceeds of the loan paid off the balance of the Yorktown Loan, as

---

[3]    The Property was initially identified to AHMA as 8 Requa Road, however, it was later changed to Lot #6, Requa Road.  The Property was subsequently identified by its permanent street address of 1104 Black Road.

3

well as amounts owing directly to Mr. Johnny Freeman.  Upon information and belief, Mr.

Freeman was an agent of Bessemer City Housing Center and may have facilitated the Yorktown

funding loan.

11.     On August 1, 2007, prior to the Petition Date, the Lamacchia Loan was

sold to Bear Stearns/EMC on a "servicing-released" basis (i.e., the Debtors did not maintain

servicing rights following the sale).  Ms. Lamacchia was provided notice that the servicing

transfer would become effective on August 20, 2007.

12.     To the best of the Plan Trustee's knowledge, EMC Mortgage Corporation

continues to be the servicer of the Lamacchia Loan.

13.     Pursuant to records Ms. Lamacchia attached to Late Filed Motions, on

March 21, 2010, Ms. Lamacchia and EMC Mortgage Corporation entered into a Home

Affordable Modification Agreement (the "EMC Modification Agreement").  Pursuant to

paragraph 4.E. of the EMC Modification Agreement, Ms. Lamacchia agreed that Ms.

Lamacchia's mortgage and note "are composed of duly valid, binding agreements, enforceable in

accordance with their terms and are hereby reaffirmed."

14.     Upon information and belief, Ms. Lamacchia continues to reside at the

Property and is current on her payments under the terms of the EMC Modification Agreement.

*2.     Ms. Lamacchia's Involvement in the Debtors' Bankruptcy, Previous Permission
to File Late Claims, Notice of the Deadlines to File an Administrative Expense
Motion and Subordination Statement, and Settlement Negotiations*

15.     On September 9, 2008, Ms. Lamacchia, as well as certain other individual

borrowers, filed a motion [D.I. 5675] (the "Borrowers Committee Motion") for an order

appointing an official committee of borrowers pursuant to section 1102(a)(2) of the Bankruptcy

Code.  On October 10, 2008, the Court entered an order granting the Borrowers Committee

Motion [D.I. 6220, as supplemented by D.I. 6905].

4

16.      On or about October 21, 2008, Ms. Lamacchia was appointed to the Official Committee of Borrowers [D.I. 6407] (the "Borrowers Committee"). Ms. Lamacchia served on the Borrowers Committee until it was disbanded by order of this Court on August 16, 2010 [D.I. 9147]. Upon request through the Borrowers Committee, the Debtors provided Ms. Lamacchia a copy of her loan file through counsel to the Borrowers Committee on February 24, 2009.

17.      On or about January 26, 2009, Ms. Lamacchia filed claim numbered 10651 ("Claim 10651") against all Debtor-entities in the aggregate amount of $600,000. In support of Claim 10651, Ms. Lamacchia attached a Motion of Delena Lamacchia for Order Deeming Proofs of Claims [sic] Timely Filed or, in the Alternative, Allowing Proofs of Late Filed Claims (the "Initial Late Claims Motion").

18.      On or about January 29, 2009, Ms. Lamacchia filed the Initial Late Claims Motion with the Court [D.I. 6915]. By her Initial Late Claims Motion, Ms. Lamacchia essentially sought an order permitting the filing of proofs of claim against all Debtor entities.

19.      Following discussions between Debtors' counsel and Ms. Lamacchia, the parties consented to a form of order regarding the Initial Late Claims Motion, which was entered by this Court on March 9, 2009 [D.I. 7085] (the "Consent Order"), a copy of which is attached hereto as Exhibit C. Pursuant to the Consent Order, Ms. Lamacchia was permitted to file proofs of claims only against (i) AHM Holdings, (ii) AHM Acceptance, (iii) AHM SV, and (iv) AHM Corp. (the "Lamacchia Claims") within ten (10) business days of entry of the Consent Order. The Debtors reserved their rights, as well as the rights of any and all parties in interest, to contest the merits of the claims on any and all grounds, and their rights to all defenses and counterclaims against Ms. Lamacchia.

20.      The Consent Order further provided that "other than the Lamacchia Claims, no claims shall be filed against any of the Debtors on behalf of Ms. Lamacchia."

21.     In accordance with the Consent Order, Ms. Lamacchia filed the Lamacchia Claims on March 12, 2009, which were assigned a single claim number of 10686.

22.     Ms. Lamacchia was served a copy of the Notice of (I) Occurrence of the Effective Date of the Plan; (II) Deadlines to File Administrative Claims, Professional Claims, Rejection Damages Claims, and Subordination Statements, and to Submit Invoices for Indenture Trustee Expenses; and (III) Appointment of Borrower Information Ombudsperson [D.I. 9519] (the "Notice of Effective Date").[4]  The Notice of Effective Date provided that January 5, 2011 was both the Administrative Bar Date and Subordination Statement Bar Date (each as defined in the Notice of Effective Date).

23.     On February 11, 2011, the Plan Trustee, through counsel, provided Ms. Lamacchia a reasonable settlement offer by phone.  Following Ms. Lamacchia's rejection of the offer, Plan Trustee's counsel invited a counteroffer and provided that, although the Plan Trustee did not yet have an obligation regarding discovery matters, if Ms. Lamacchia provided a list of additional information that she wanted, the Plan Trustee would work with her on appropriate requests and timeframes for production of such information.[5]  Ms. Lamacchia subsequently provided a counteroffer, and the Plan Trustee recently provided a lengthy discussion of facts and law and further counteroffer.

24.     On April 4, 2011, Ms. Lamacchia filed the Late Filed Motions.

---

[4]     Pursuant to the Affidavit of Mailing [D.I. 9541], Ms. Lamacchia actually received multiple copies of the Notice of Effective Date.  See Pages 676 & 1380 of 2644 of Exhibit A (served on December 2, 2010), as well as Page 3 of 17 on Exhibit B (served on December 3, 2010).  Copies of the relevant pages of the Affidavit of Mailing are attached hereto as Exhibit D.

[5]     The Plan Trustee has not attached the relevant e-mails regarding these negotiations due to Fed. R. Evid. 408.  However, the Plan Trustee will make such documents available at the hearing or otherwise if requested by the Court.

## OBJECTION

A.    **Ms. Lamacchia's Late Admin Claim Motion Should Be Denied**

   *1.    Ms. Lamacchia Is Barred From Asserting Any
        Further Claims Against the Debtors' Estates*

   25.    As a threshold matter, Ms. Lamacchia, in connection with the filing of the

tardy Lamacchia Claims, affirmatively waived any rights to seek further claims against the

Debtors' estates.  Accordingly, the timeliness and merits of the administrative claim are merely a

red herring:  the Court need only interpret and enforce the agreed upon plain language of the

Consent Order and bar Ms. Lamacchia from asserting any further claims against the Debtors.

   26.    "When construing an agreed or negotiated form of order, the Court

approaches the task as an exercise of contract interpretation rather than the routine enforcement

of a prior court order.  At bottom, the goal is to determine the rights, duties, and reasonable

expectations of the parties, as disclosed to and blessed by the Court." In re Trico Marine

Services, Inc., 2011 Bankr. LEXIS 1308, *19-20, Case No. 10-12653 (BLS) (Bankr. D. Del.

Apr. 15, 2011) (internal citations omitted); see also City of Covington v. Covington Landing Ltd.

P'ship, 71 F.3d 1221, 1227 ("An agreed order, like a consent decree, is in the nature of a

contract, and the interpretation of its terms presents a question of contract interpretation.");

Rifken v. Capital Source Fin., LLC (In re Felt Mfg. Co., Inc.), 402 B.R. 502, 511 (Bankr. D.N.H.

2009) ("The terms of court orders, plans of reorganizations, and stipulations between parties are

typically examined under principles of contract interpretation.").

   27.    The Third Circuit Court of Appeals has held that "[t]he paramount goal of

contract interpretation is to determine the intent of the parties." In re Trico, 2011 Bankr. LEXIS

at *20 (citing Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 587 (3d Cir. 2009)

(internal citations omitted). The Third Circuit has further established that "[t]he strongest

066585.1001

manifestation of that intent is the wording of the agreement itself." Id. (citing NOVA Chems.,

Inc. v. Sekisui Plastics Co., Ltd., 579 F.3d 319, 323 (3d Cir. 2009)) (internal citations omitted).

 28. Here, the language of the Consent Order is unambiguous: "[O]ther than

the Lamacchia Claims, *no claims* shall be filed against any of the Debtors on behalf of Ms.

Lamacchia." (Consent Ord.) (emphasis added). The "Lamacchia Claims" were expressly defined

and limited in the Consent Order as only those claims which Ms. Lamacchia could file against (i)

AHM Holdings, (ii) AHM Acceptance, (iii) AHM SV, and (iv) AHM Corp. within ten (10)

business days of entry of the Consent Order.[6]

 29. Accordingly, this Court should apply the plain language of the Consent

Order and deny Ms. Lamacchia's attempts to file additional claims against the Debtors' estates.

See, e.g., Delta Mills, Inc. v. GMAC Commer. Fin. LLC (In re Delta Mills, Inc.), 404 B.R. 95,

106 (Bankr. D. Del. 2009) ("Where the intention of the parties is clearly and unambiguously set

forth, effect must be given to the intent as indicated by the language used.") (internal citations

omitted); see also Six Flags, Inc. v. Parc Management, LLC (In re Premier International

Holdings, Inc.), 443 B.R. 320, 334 (Bankr. D. Del. 2010) (language that has a plain meaning

'does not become ambiguous merely because the parties urge different interpretations in the

litigation.') (internal citations omitted).[7]

---

[6] To the extent procedurally necessary, the Plan Trustee affirmatively moves to enforce the language of the Consent Order pursuant to section 105 of the Bankruptcy Code and this Court's inherent powers. Indeed, it is well-established that bankruptcy courts, based on the reference of the inherent power of the district court contained in section 157(c) of title 28 of the United State Code, and on the broad statutory grant of equitable powers in section 105 of the Bankruptcy Code, have the inherent authority to enforce compliance with their lawful orders, to the extent such power is not restricted by statute. United States Lines, Inc. v. GAC Marine Fuels Ltd. (In re McLean Indus.), 68 B.R. 690, 695-97 (Bankr. S.D.N.Y. 1986); Johns-Manville Sales Corp. v. Doan (In re Johns-Manville Corp.), 26 B.R. 919, 924 (Bankr. S.D.N.Y. 1983).

[7] Prior to the hearing, counsel to the Plan Trustee reminded Ms. Lamacchia of the terms of the Consent Order and requested Ms. Lamacchia withdraw her Late Admin Claim Motion. Ms. Lamacchia refused to withdraw the motion. Accordingly, the Plan Trustee reserves his rights with respect to costs that the Trust may seek to recover in connection with defending the Late Admin Claim Motion. Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir. 1995) (failure to comply with a bankruptcy court order may also result in the issuance of a civil contempt order upon the showing of the following three elements: (i) the existence of a valid, final court order; (ii) contemnor had actual knowledge of the order; and (iii) contemnor disobeyed the order); see also In re Continental Airlines Inc., 236 B.R. 318, 331 (Bankr. D. Del. 1999) (Walrath, J.) (same).

   

2.    ***Ms. Lamacchia Fails To Meet the Appropriate
Standard For Filing a Late Claim***

30.    Even if Ms. Lamacchia were not already barred from pursuing additional

claims, Ms. Lamacchia provides no legitimate basis for her failure to adhere to the deadlines set

forth in the Plan, Confirmation Order, and Notice of Effective Date.

31.    In the Third Circuit, claims bar dates are deadlines to which creditors must

strictly adhere.  See In re Trump Taj Mahal Assocs., 156 B.R. 928, 936 (Bankr. D.N.J. 1993)

("The well-established law of this Circuit is that bar dates for filing Proofs of Claim are strictly

construed.").  A bar date is critically important to the administration of a successful chapter 11

case because it

> serves the important purpose of enabling parties to a bankruptcy
> case to identify with reasonable promptness the identity of those
> making claims against the bankruptcy estate and the general
> amount of the claims, a necessary step in achieving the goal of
> successful reorganization . . . . *Thus, a bar order does not
> "function merely as a procedural gauntlet," . . . but as an integral
> part of the reorganization process.*

In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (emphasis added) (quoting First

Fidelity Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.), 937 F.2d 833, 840 (2d Cir.

1991)) (citations omitted).  Indeed, a bar date is akin to a statute of limitations and must be

strictly construed.  See Berger v. Trans World Airlines, Inc.  (In re Trans World Airlines, Inc.),

96 F.3d 687, 690 (3d Cir. 1996) (noting that bar date means "a 'drop-dead date' that bars all

prepetition claimants who received the required notice"); In re The Grand Union Co., 204 B.R.

864, 871 (Bankr. D. Del. 1997) ("In short, the claims bar date operates as a federally created

statute of limitations, after which the claimant loses all of her rights to bring an action against the

debtor.").

32.    For cause shown, a bankruptcy court "may extend the time within which

proofs of claim or interest may be filed." Fed. R. Bankr. P. 3003(c)(3).  Read in conjunction

with Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

Bankruptcy Rule 3003(c)(3) permits an act to be done after the deadline has expired "where the

failure to act was the result of excusable neglect." Trump Taj Mahal, 156 B.R. at 936.

33.    The claimant, however, bears the burden of demonstrating excusable

neglect by a preponderance of the evidence. See, e.g., Jones v. Chemetron Corp., 212 F.3d 199,

205 (3d Cir. 2000) (citing Trump Taj Mahal, 156 B.R. at 936); In re Cable & Wireless USA,

Inc., 338 B.R. 609, 613 (Bankr. D. Del. 2006). Further, to preserve the integrity of the

bankruptcy system and the claims administration process, courts consistently have held that

permission to file late proofs of claim should not be granted lightly. Trump Taj Mahal, 156 B.R.

at 936.

34.    The United States Supreme Court held that the following four factors are

relevant in considering whether a movant has demonstrated that its neglect is excusable:

(a)    the length of the delay and its potential impact on judicial proceedings;
(b)    the reason for the delay, including whether it was within the reasonable control of the movant;
(c)    whether the movant acted in good faith; and
(d)    the danger of prejudice to the debtor;

Pioneer Inv. Servs. Co. v. Brunswick Assocs., L.P., 507 U.S. 380, 395 (1993); see also In re

O'Brien Envtl. Energy, Inc., 188 F.3d 116, 125–126 (3d Cir. 1999) (analyzing the Pioneer

factors to determine excusable neglect). A review of these factors indicates that the relief sought

by Ms. Lamacchia should be denied.

35.    First, Ms. Lamacchia's knowledge of the Debtors' bankruptcy case dates

back to as early as October 2007 - over three years ago. Nearly a year later (and over two years

ago), Ms. Lamacchia sought the appointment of a Borrowers Committee, was appointed to the

Borrowers Committee whose narrow scope of authority was to address Plan related issues, in

which the Administrative Claims Bar Date was contained. The primary focus of the Borrowers

Committee involved contesting the notice of the general claims bar dates to borrowers. Despite

066585.1001

Ms. Lamacchia's initial delay, the Debtors agreed to allow the late filing of the Lamacchia

Claims based upon, among other things, the agreement that Ms. Lamacchia would not assert any

further claims against the Debtors' estates.  Given Ms. Lamacchia's length of knowledge of the

bankruptcy case and particular knowledge of issues with respect to the Plan and bar dates,

combined with actual notice of the Administrative Claims Bar Date, Ms. Lamacchia's lengthy

delay in filing an administrative expense claims is inexcusable.

      36.    Second, Ms. Lamacchia's sole allegation regarding her delay is untenable.

Ms. Lamacchia argues that the Debtors inhibited Ms. Lamacchia's ability to pursue legal claims

by denying answers and access to critical documents.  See Late Admin Claim Motion, ¶¶ 6-7.

Ms. Lamacchia's support for such an allegation is alleged interactions with non-Debtor third

parties that occurred in or prior to September 2007 – over two years prior to Ms. Lamacchia

filing the Lamacchia Claims.[8]  Ms. Lamacchia has provided no explanation as to why she was

unable to include those allegations in her Lamacchia Claims as required or why she failed to file

a separate administrative expense claim on or before January 5, 2011 – a date that was three

years after such contact.  Moreover, as early as September 20, 2007, Ms. Lamacchia had retained

counsel and was dealing directly with EMC Mortgage Corporation, the appropriate servicer of

her loan.  See 9/20/07 Letter from Mr. Jeffrey Long to EMC Mortgage Corporation, Attachment

L to the Late Filed Motions.  Ms. Lamacchia's failure to file an administrative claim by the

Administrative Claim Bar Date is entirely of her own doing.  See, e.g., In re American Classic

Voyages Co., 405 F.3d 127, 134 (3d Cir. 2005) (refusing to extend the bar date for a late filed

claim  where delay in filing a proof of claim that was "entirely avoidable and within [the

movant's] control").

---

[8]    Only one of these phone call statements have American Home Mortgage's name on it.  The statement
appears to be dated the day after Ms. Lamacchia's loan closed, inquiring only whether the loan had funded yet.

11

37.    Three, given that Ms. Lamachia previously agreed not to file further claims against the Debtors' estates and such consent agreed was approved by this Court, the filing of the Late Admin Claim Motion is not the result of a good faith error.

38.    Four, the potential prejudice to the Debtors' estates, and their creditors, is significant. Allowing Ms. Lamacchia to pursue a late administrative claim, in contravention of this Court's Consent Order regarding Ms. Lamacchia's ability to file claims and its Confirmation Order specifically providing the deadline to file administrative claims, would be tantamount to eviscerating the Administrative Bar Date. See American Classic Voyages Co., 405 F.3d at 133 (allowing movant to file late could "render the bar order meaningless"). Such an action would undoubtedly open the floodgates for other parties to file late administrative claims, leaving the Plan Trustee unable to calculate reserves and make distributions pursuant to the Plan. Indeed, the Plan Trustee's ability to effectuate the terms of the Plan hinge on his ability to quantify administrative and other claims and provide creditors with the appropriate allocation of the Debtors' estate assets. Id. (determining that if movant, who had notice of the bar date, is allowed to file late, every single other late filer will be able to make essentially the same argument that their late claims should also be allowed).[9] Beyond effectively nullifying this Court's Consent Order and Bar Date Order and opening the estate up to a sea of late administrative claims, the allowance of such potential late claims could not just dilute the projected distribution to the Debtors' unsecured creditors, but could effectively eliminate any distribution.

---

[9]    Other similarly situated creditors have filed motions to file administrative claims in spite of the fact that the creditor had notice of the Administrative Bar Date and failed to file a timely proof of claim. See, e.g., Motion of Gil Quentin Alvarez for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. 503 [D.I. 9914]. Additionally, this is not the first time that unsecured creditors have attempted to elevate their alleged pre-petition claims to administrative priority status in an effort to obtain a higher distribution under the plan. See, e.g., Motion of Laura Beall for Allowance and Payment of Administrative Claim [D.I. 9632]; Motion of Deborah Mills for Order to (i) Amend Proof of Claim and (ii) Motion for Order of Allowed Administrative Expense Priority Against the Estate Pursuant to Section 503(b) of the Bankruptcy Code in Immediately Available Funds and (iii) Order of Right to Protection of Certain Property Interests Under Section 361or (iv) Avoidance Action Against Debtors Pursuant to Section 549 [D.I. 8812].

066585.1001

39.    The Third Circuit's discussion in the <u>American Classic Voyages</u> case is instructive on this point:

Applying the first and second *Pioneer* factors, we conclude that Debtors will be prejudiced by exposure to a late claim and that the length of the delay would have a substantial impact on the bankruptcy proceedings. [The late claim was filed] two days after Debtors filed their Joint Plan of Liquidation with the Bankruptcy Court. A policy that would allow proof of claims at that late date would have disrupted Debtors' reorganization.

Thousands of individual claims are outstanding against Debtors; the sheer scale presents a formidable problem of management. The strict bar date provided by the Bankruptcy Court was intended, in part, to facilitate the equitable and orderly intake of those claims. Debtors argue, with some persuasive effect, that, in view of the large number of post-bar date claims filed, allowing appellant to file late might 'render the bar order meaningless.' Debtors allege, upon information and belief, that other prospective claimants have filed late claims for a total value of almost $5 million, and that counsel for both Debtors and the Official Committee of Unsecured Creditors continue to receive numerous inquiries from prospective claimants. In the context of this massive bankruptcy proceeding, [movant's] late claim would be prejudicial. (citations omitted)

405 F.3d at 133-34. The current circumstances are similar to, if not more egregious than, those addressed by the Third Circuit in <u>American Classic Voyages</u>. Here, over 10,000 claims have been filed against the Debtors. See <u>id.</u> at 133 ("Thousands of individual claims are outstanding against the Debtors; the sheer scale presents a formidable problem of management.").

40.    Indeed, numerous other courts have condemned attempts to extend the bar date for creditors who received actual notice, because of the prejudice to debtors and the orderly progress of their reorganization efforts, as well as the unfairness towards other creditors who timely filed and due process concerns. As one court in this Circuit has explained,

Tinkering with an established bar date may raise due process claims of parties who have timely filed claims by originally-established bar dates, since it gives late filers a second bite at an apple which is likely to be less than fully satisfying, and thus effect unfair diminution of the timely filer's share of a distribution.

<u>In re Sacred Heart Hosp. of Norristown</u>, 177 B.R. 16, 23-24 (Bankr. E.D. Pa. 1995); <u>see also</u> <u>In re Musicland Holding Corp.</u>, 362 B.R. 644, 655 (Bankr. S.D.N.Y. 2007) (noting "the irony" of "extending the bar date for the benefit of those who sat on their rights . . . at the expense of the

vigilant creditors who observed the bar date"; "unfair to permit 'a second bite at the apple for those creditors who received notice of the bankruptcy filing and of the Claims Bar Date, and who chose not to file'"); In re FirstPlus Fin., Inc., 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) ("[A] creditor who has received actual notice of the claims bar date, and who does not file a proof of claim, is barred and has no claim.").

3.    *Permitting Ms. Lamacchia to File a Late Administrative Claim Would Result in the Estates' Unnecessary Expense of Litigating a Meritless Claim*

41.    Importantly, Ms. Lamacchia provides no support for administrative expense priority. Section 503 of the Bankruptcy Code governs the allowance of administrative expenses in a bankruptcy case, providing (in part), that "after notice and a hearing, there shall be allowed administrative expenses . . ., including the actual and necessary costs and expenses of preserving the estate." 11 U.S.C. §503(b)(1)(A). Claimants who seek to have their claims paid ahead of general unsecured creditors bear the burden of establishing that their claim qualifies for priority status. In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr.D.Del. 2001).

42.    Courts generally apply a two-prong test to determine whether a claim qualifies as an administrative expense: (1) the expense must have arisen from a post-petition transaction between the creditor and the debtor, and (2) the expense must have been "actual and necessary" to preserve the estate. Id., In re DBSI, Inc., 407 B.R. 159, 165 (Bankr. D. Del. 2009).

43.    Here, the facts surrounding Ms. Lamacchia's loan transaction occurred entirely pre-prepetition. The Lamacchia Loan was sold to Bear Stearns/EMC on August 1, 2007, five days prior to the Debtors' bankruptcy filings. Accordingly, the Debtors did not own the loan post-petition. Although the related servicing transfer was not effective until August 20, 2007, Ms. Lamacchia provides no evidence of any servicing errors or omissions by AHM SV (or any other Debtor entity) during the 14-days in which AHM SV serviced Ms. Lamacchia's loan on a post-petition basis. Moreover, to the extent that Ms. Lamacchia asserts that her loan

14

documents were somehow fabricated or invalid, Ms. Lamacchia ratified her loan documents in her Modification Agreement, wherein Ms. Lamacchia agreed that her mortgage and note "are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed." See, e.g., In re New Century TRS Holdings, Inc., 2011 Bankr. LEXIS 1186, *10-11, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr. 11, 2011) (denying a *pro se* borrower's administrative claim where claim arose out of the origination of loan and Debtors' sale of the loan, all of which occurred pre-petition).

44.    To the extent that Ms. Lamacchia is asserting grievances with EMC's servicing of the loan and her November 2007 loan modification with EMC, such grievances should be addressed directly to EMC and provide no basis for an administrative claim against the Debtors.

**B.    Ms. Lamacchia's Late Subordination Motion Should Also Be Denied**

45.    Ms. Lamacchia's Late Subordination Motion appears to seek approval to file a late Subordination Statement (as defined in the Plan).  However, as the Court previously found when another borrower attempted to file a Subordination Statement, she is not a proper party to file such a statement.  In accordance with the Plan, the Notice of Effective Date set January 5, 2011 as the bar date for any holder of a Class 1(C)(1) or 2(C)(1) Claim asserting that it holds a Senior Unsecured Claim to file and serve upon the Plan Trustee and the applicable Indenture Trustee(s) for Subordinated Trust Preferred Claims against the applicable estate(s) a Subordination Statement.  The Plan defines Class 1(C)(1) Claims as "Unsecured Claims against AHM Holdings other than the BofA Syndicate Unsecured Claim, Subordinated Trust Preferred Claims, and Borrower Claims" and Class 2(C)(1) Claims as "Unsecured Claims against AHM Investment other than the BofA Syndicate Unsecured Claim, Subordinated Trust Preferred Claims, and Borrower Claims." Plan, at 18.  Accordingly, for the same reasons that this Court sustained [D.I. 9824] the Plan Trustee's Objection to Subordination Statements [D.I. 9748] with

15

respect to other borrowers' subordination statements, this Court should not permit Ms.

Lamacchia to submit an untimely and meritless Subordination Statement.

## CONCLUSION

WHEREFORE, the Plan Trustee respectfully requests that this Court enter an

order (i) denying the relief requested in the Late Filed Claims, and (ii) granting any further relief

that the Court deems just and proper.

Dated: Wilmington, Delaware
      May 4, 2011

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Plan Trustee*

YCST01:10930140.5                              066585.1001

# **Exhibit A**

Yorktown Deed of Trust



Doc ID: 011789540008 Type: CRP
Recorded: 04/30/2007 at 02:47:00 PM
Fee Amt: $85.00 Page 1 of 8
Instr# 200700052604
Gaston, NC
Susan S. Lockridge Register of Deeds

BK 4316 PG 730-737

RECORDING FEE   3500

Drawn by and return to:
Yorktown Funding Inc.
1104 Fernwood Ave, Ste 301
Camp Hill PA 17011

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on   April 27, 2007.    The grantor is Delena
Sigmon Lamacchia & Joseph Brian Lamacchia, wife & husband ("Borrower").  The trustee is David Neill,
Elizabeth B. Ells, Cecelia Stemple and Brian Simmons, Attorneys of Mecklenburg County ("Trustee").
The beneficiary is Yorktown Funding, Inc., which is organized and existing under the laws of Pennsylvania, and
whose address is 1104 Fernwood Avenue, Suite 302, Camp Hill, PA  17011   ("Lender").  Borrower owes
Lender the principal sum of
One Hundred Eighty Eight Thousand One Hundred and ————— 00/100 Dollars ($ 188,100.00 USD)
This debt is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on   October 27, 2007 This Security
Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7
to protect the Security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements
under this Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's
successors and assigns, in trust, with power of sale, the following described property located in   Gaston County,
North Carolina:

See Attachment "A" attached hereto and made a part hereof.

which has the address of     Lot #6 Requa Road, Cherryville,
                                          [Street, City]

North Carolina        28021  ("Property Address");

Page 1 of 7 Pages                                    Form 3034   9/90
                                                     Initials:

ATTACHMENT "A"

Lying and being situate in Gaston County, North Carolina and being more particularly described as follows:

Being all of LOT #6, ALVIN LEE MCSWAIN, JR. SUBDIVISION, according to the plat thereof, recorded in PLAT BOOK 69, PAGE 4, in THE Office of the Register of Deeds of Gaston County, North Carolina.

For title reference see Book 4073, Page 671 and Book 638, Page 152, Gaston County Registry.



**NORTH CAROLINA - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT**

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2.    Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any, (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et. seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds, Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.    Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, charges due under the Note.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts

Form 3034    9/90
Initials:

(Page 4 of 8)

to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.    **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the property is acquired by lender, borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.    **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the property, allow the property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.    **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs,

Page 3 of 7 Pages

Form 3034    9/90
Initials

Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.     **Mortgage Insurance.**  If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9.     **Inspection.**  Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.    **Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.    **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.    **Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security

Form 3024   9/98
Initials: _____

Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or

Page 5 of 7 Pages

Form 3034   9/90
Initials ___

(Page 7 of 8)

Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum product, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21.     Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of    5 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

22.     Release. Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

23.     Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24.     Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider          ☐ Condominium Rider                    ☐ 1-4 Family Rider

☐ Graduated Payment Rider        ☐ Planned Unit Development Rider       ☐ Biweekly Payment Rider

☐ Balloon Rider                  ☐ Rate Improvement Rider              ☐ Second Home Rider

Form 3818
Initials:

(Page 8 of 8)

☐ V.A. Rider            ☐ Other(s) [specify]        **Description Rider**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witness:

_____ (Seal)
Delena Sienna Lamacchia                 -Borrower

_____ (Seal)
Joseph Brian Lamacchia

_____

**STATE OF NORTH CAROLINA,**        Gaston        **County ss:**

On this, the _27th_ day of _April_, 20_07_, before me, the subscriber, the undersigned officer, personally appeared _Delena Sienna Lamacchia and Joseph Brian Lamacchia_ known to me (or satisfactorily proven) to be the person(s) whose name(s) _are_ subscribed to the within instrument and acknowledged that _they_ executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires: 02/06/2009

_Jane Propst_

Notary or certifying officer) of
the foregoing certificate(s) of
Notary Public whose seal is certified to be correct. This instrument and this certificate are duly registered at the date and time and in the book and page shown on the first page hereof.

By: _____
Assistant Deputy Register of Deeds

Page 7 of 7 Pages

Form 3034  9/90
Initials DL

**<u>Exhibit B</u>**

Settlement Statement

# Settlement Statement    Transactions without Sellers

U.S. Department of Housing and Urban Development
HUD-1A (3/94)  OMB No. 2502-0491

| Name and Address of Borrower | Property Location | Name and Address of Lender |
|---|---|---|
| Delena S. Lamacchia | 1104 Black Rd<br>Cherryville, NC 28021 | American Home Mortgage Acceptance, Inc.<br>538 Broadhollow Rd<br>Melville, NY 11747 |

| Place of Settlement | Settlement Date | Disbursement Date | Loan Number |
|---|---|---|---|
| 106 North Cherry Street<br>Cherryville, NC 28021-2903 | 06/28/07 | 06/28/07 | 0001721993 |
| | File Number<br>T-5144C | Settlement Agent<br>Palmer E. Huffstetler, Jr., Attorney at Law | |

| L. Settlement Charges | | M. Disbursement to Others | |
|---|---|---|---|
| **800. Items Payable In Connection With Loan** | | 1501. Payoff | 159,955.98 |
| 801. Loan origination fee1.0% to American Home Mortgage Acce | 1,881.00 | to Yorktown Funding, Inc. | |
| 802. Loan discount to American Home Mortgage Acceptance, Inc. | 3,526.88 | 1502. | |
| 803. Appraisal fee to American Home Mortgage Acceptance, Inc. | 410.00 | | |
| 804. Credit report to American Home Mortgage Acceptance, Inc. | 8.25 | 1503. | |
| 805. Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee to | | 1504. | |
| 807. Mortgage broker fee | | | |
| 808. DU/LP Fee to American Home Mortgage Acceptance, Inc. | 21.70 | 1505. Final Draw | 21,312.76 |
| 809. MERS Registration Fee to American Home Mortgage Accept | 3.95 | to Johnny Freeman | |
| 810. Tax Service Fee to American Home Mortgage Acceptance, In | 92.00 | 1506. | |
| 811. Flood Hazard Fee to American Home Mortgage Acceptance, I | 19.00 | | |
| 812. | | 1507. | |
| 813. | | | |
| 814. | | 1508. | |
| **900. Items Required by Lender to be Paid in Advance** | | | |
| 901. Interest from 06/28/07 to 07/01/07 @ $ 13.1931    /day | 39.58 | 1509. | |
| 902. Mortgage insurance premium for    months to | | | |
| | | 1510. | |
| 903. Hazard Insurance Premium for    year(s) to | 0.00 | | |
| | | 1511. | |
| 904. | | | |
| **1000. Reserves Deposited with Lender** | | 1512. | |
| 1001. Hazard insurance    4 mos. @ $ 43.33    per mo. | 173.32 | | |
| 1002. Mortgage insurance    mos. @ $    per mo. | | 1513. | |
| 1003. City property taxes    mos. @ $    per mo. | | | |
| 1004. County property taxes    1 mos. @ $ 90.00    per mo. | 90.00 | 1514. | |
| 1005. Annual assessments    mos. @ $    per mo. | | | |
| 1006.    mos. @ $    per mo. | | 1515. | |
| 1007.    mos. @ $    per mo. | | | |
| 1008. Aggregate adjustment | -263.32 | 1520. TOTAL DISBURSED | 181,268.74 |
| **1100. Title Charges** | | (enter on line 1603) | |
| 1101. Settlement or closing fee to | | | |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to | | | |
| 1107. Attorney's fees to Palmer E. Huffstetler, Jr., Attorney | 400.00 | **N. NET SETTLEMENT** | |
| (includes above items numbers:            ) | | | |
| 1108. Title insurance to Chicago Title Insurance Company | 247.90 | 1600. Loan Amount | $  188,100.00 |
| (includes above items numbers:            ) | | | |
| 1109. Lender's coverage $188,100.00 | | | |
| 1110. Owner's coverage $188,100.00 | | 1601. PLUS Cash/Check from Borrower | $        0.00 |
| 1111. Courier Fee (loan payoff #1) to Palmer E. Huffstetler, Jr., Att | 30.00 | | |
| 1112. Courier Fee (loan payoff #2) to Palmer E. Huffstetler, Jr., Att | | 1602. MINUS Total Settlement Charges | $     6,831.26 |
| 1113. Electronic Doc Delivery Fee to Palmer E. Huffstetler, Jr., Att | 25.00 | (line 1400) | |
| **1200. Government Recording and Transfer Charges** | | 1603. MINUS Total Disbursements to Others | $  181,268.74 |
| 1201. Recording fees Mortgage:71.00 | 71.00 | (line 1520) | |
| 1202. City/county tax/stamps | | 1604. EQUALS Disbursements to Borrower | $        0.00 |
| 1203. State tax/stamps | . | (after expiration of any applicable | |
| 1204. | | rescission period required by law) | |
| 1205. | | | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. Courier Fee (loan pkg-lender) to Palmer E. Huffstetler Jr., Att | 30.00 | | |
| 1304. Courier Fee (loan pkg-broker) to Palmer E. Huffstetler Jr., Att | | | |
| 1305. Wire Fee to Palmer E. Huffstetler Jr., Attorney | 25.00 | | |
| 1306. | | | |
| 1307. | | | |
| **1400. Total Settlement Charges (enter on line 1602)** | 6,831.26 | | |

This page is attached to and made part of the Settlement Statement in the matter described on Page 1 of the Settlement Statement.

I have carefully reviewed this Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.  I further certify that I have received a copy of the Settlement Statement.

_Delena S. Lamacchia_   06/28/07

The Settlement Statement which I have prepared is a true and accurate account of funds received and funds disbursed or to be disbursed for this transaction.

06/28/07 _____   Palmer E. Huffstetler Jr., Attorney, Settlement Agent

WARNING:  It is a crime to knowingly make false statements to the United States on this form.  Penalties upon conviction can include a fine and imprisonment.  For details see: Title 18 U.S. Code Section 1001 and Section 1010.

## **Exhibit C**

Consent Order [D.I. 7085]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------- x
In re:                              :    Chapter 11

AMERICAN HOME MORTGAGE HOLDINGS, INC.,    :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[2]             :

                                          :    Jointly Administered

    Debtors.                             :    Ref. Docket No. 6915
-------------------------------------------------------------- x

**ORDER REGARDING THE MOTION OF DELENA LAMACCHIA FOR ORDER
DEEMING PROOFS OF CLAIM TIMELY FILED OR, IN THE ALTERNATIVE,
ALLOWING PROOFS OF LATE FILED CLAIMS [DOCKET NO. 6915]**

Upon consideration of the Motion of Delena LaMacchia for Order Deeming

Proofs of Claim Timely Filed or, in the Alternative, Allowing Proofs of Late Filed Claims

[Docket No. 6915] (the "Motion"); and upon the agreement of the parties set forth in the

certification of counsel regarding the Motion; and after due deliberation, it is hereby

ORDERED that the Motion is granted to the extent set forth herein; and it is

further

ORDERED that Ms. LaMacchia is granted leave to file claims (the "LaMacchia

Claims") against (i) AHM Holdings, (ii) AHM Servicing, (iii) AHM Acceptance; and (iv) AHM

Corp.; provided, however, that this Order shall not affect the allowability, amount or priority of

the LaMacchia Claims; and it is further

---

[2] The debtors in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., ("AHM Investment") a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp., ("AHM Corp.") a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. , a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

ORDERED that Ms. LaMacchia must file the LaMacchia Claims with the

Debtors' claims agent within ten (10) business days of entry of this Order at the appropriate

address: (i) if by first-class mail: American Home Mortgage Claims Processing, P.O. Box 5076,

FDR Station, New York, NY 10150-5076 or (ii) if by hand delivery or overnight mail: Epiq

Bankruptcy Solutions, LLC, Attn: American Home Mortgage Claims Processing, 757 Third

Avenue, 3rd Floor, New York, NY 10017; and it is further

ORDERED that, if Ms. LaMacchia fails to file the LaMacchia Claims within ten

(10) business days of entry of this Order, Ms. LaMacchia shall be forever barred from asserting

any claims against the Debtors; and it is further

ORDERED that, other than the LaMacchia Claims, no claims shall be filed

against any of the Debtors on behalf of Ms. LaMacchia; and it is further

ORDERED that the Debtors' and any and all parties-in-interest's rights to contest

the asserted merits of the LaMacchia Claims and their rights to all defenses and counterclaims

against Ms. LaMacchia are hereby reserved.  Furthermore, any and all rights pursuant to section

502(b) of the Bankruptcy Code to object to such claims on any and all grounds, including,

without limitation, objections as to the amount, classification and status of the claims, are hereby

reserved; and it is further

ORDERED that this Court shall retain jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Order.

Dated: March 9, 2009
       Wilmington, Delaware

_____
Christopher S. Sontchi
United States Bankruptcy Judge

## **Exhibit D**

Relevant Pages of the Affidavit of Mailing [D.I. 9541]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------------------x
In re:                                          :    Chapter 11
                                                :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,          :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                 :
                                                :    Jointly Administered
        Debtors.                                :
-----------------------------------------------------------------------x    Ref. Docket No. 9519
```

**AFFIDAVIT OF MAILING**

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

KONSTANTINA HAIDOPOULOS, being duly sworn, deposes and says:

1.  I am employed as a Noticing Coordinator by Epiq Bankruptcy Solutions, LLC (f/k/a
    Bankruptcy Services, LLC), located at 757 Third Avenue, New York, New York 10017.  I am
    over the age of eighteen years and am not a party to the above-captioned action.

2.  I caused to be served the "Notice of (I) Occurrence of the Effective Date of the Plan; (II)
    Deadlines to File Administrative Claims, Professional Claims, Rejection Damages Claims,
    and Subordination Statements, and to Submit Invoices for Indenture Trustee Expenses; and
    (III) Appointment of Borrower Information Ombudsperson," dated November 30, 2010
    [Docket No. 9519], (the "Notice"), by causing true and correct copies to be enclosed securely
    in separate postage pre-paid envelopes and delivered by first class mail:

    a.  to those parties listed on the annexed Exhibit A, on December 2, 2010,

    b.  to those parties listed on the annexed Exhibit B, on December 3, 2010, and

    c.  to those parties listed on the annexed Exhibit C, on December 6, 2010.

3.  All envelopes utilized in the service of the foregoing contained the following legend:
    "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO ATTENTION OF
    ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

4.  Additionally, on December 3, 2010, I caused to be delivered:

    a.  by next-business day delivery to Broadridge Financial, 51 Mercedes Way, Edgewood, NY 11717, (N38617, N38618, N38619, N38620, N38621,)

    b.  by next-business day delivery to Mediant Communications, Attn: Stephanie Fitzhenry Proxy Mgr, 109 North Fifth Street, Saddlebrook, NJ 07663, and

    c.  by first class mail to the remainder of the brokerage firms, banks and agents, identified on the annexed Exhibit D,

(collectively the "Nominees"), sufficient copies of the Notice, as well as a Memorandum, annexed hereto as Exhibit E, instructing the Nominees to distribute the Notice to the beneficial owners of the Debtors' public securities referenced in the Memorandum.

Konstantina Haidopoulos

Sworn to before me this
8th day of December, 2010

Notary Public

PANAGIOTA MANATAKIS
NOTARY PUBLIC STATE OF NEW YORK
QUEENS COUNTY
LIC. #01MA6221096
COMM. EXP. APRIL 26, 2014

**EXHIBIT A**

AMERICAN HOME MORTGAGE

SERVICE LIST

| Claim Name | Address Information |
|---|---|
| DELCORA | P.O. BOX 999 CHESTER PA 19016 |
| DELENA LAMACCHIA | 1104 BLACK RD CHERRYVILLE NC 28021 |
| DELEO, JAMES T | 4987 GARDEN DR DELRAY BEACH FL 33445 |
| DELEON APPRAISAL SERVICE, INC. | 3004 MITCHELLVILLE RD. BOWIE MD 20716 |
| DELEON APPRAISAL SERVICES INC. | 3004 MITCHELLVILLE ROAD BOWIE MD 20716 |
| DELEON, ARNEL T | 4324 EAST ADDINGTON DRIVE ANAHEIM CA 92807 |
| DELEON, CHARLOTTE | 10320 CRICKETT DR. DALLAS TX 75217 |
| DELEON, LYDIA | 25654 EVERGREEN DR HAYWARD CA 945442656 |
| DELEON, RICHARD | 23852 COSTA MESA WAY MURRIETA CA 92562 |
| DELEV, IOVTCHO M. | 3034 CAROUSEL CIRCLE STOCKTON CA 95219 |
| DELEVAN VILLAGE | TAX COLLECTOR PO BOX 216 DELEVAN NY 14042 |
| DELEVE, GENE A. | 8024 MONROVIA ST LENEXA KS 66215-2727 |
| DELEVE, GENE A., TRUSTEE OF THE GENE A | DELEVE REVOCABLE LIVING TRUST 8024 MONROVIA LENEXA KS 66215 |
| DELEVE, GENE A., TRUSTEE OF THE GENE A. | DELEVE REVOCABLE LIVING TRUST U/A DATED 10/15/02 8024 MONROVIA LENEXA KS 66215 |
| DELEWARE TOWN | PO BOX 129 HORTONVILLE NY 12745 |
| DELFAM INC | 1801 EXCISE AVE STE 108 ONTARIO CA 917618555 |
| DELFAM INC | 2191 5TH ST STE 111 NORCO CA 928601966 |
| DELFS, ERIC DAVID | 1870 127TH AVE NE # 4 LAKE STEVENS WA 982587733 |
| DELGADO REAL ESTATE INC. | PO BOX 1951 SPOTSYLVANIA VA 22553 |
| DELGADO, ANGEL ARTURO | 2175 54TH STREET SAN DIEGO CA 92105 |
| DELGADO, ARMANDO J. | 2536 NORTH 72ND COURT ELMWOOD PARK IL 60707 |
| DELGADO, EDMUND C | 18 WESLEY COURT NEWBURGH NY 12550 |
| DELGADO, EDUARDO | 173 CORNELL AVENUE RAHWAY NJ 07065 |
| DELGADO, ELIAS C | 139 N CEDAR STREET CANBY OR 97013 |
| DELGADO, EMMA | 52B CARLETON AVE ISLIP TERRACE NY 117521519 |
| DELGADO, HUMBERTO | 7741 NW 160 TERRA MIAMI FL 33016 |
| DELGADO, JACINTO | 79790 CAMDEN DR INDIO CA 922034503 |
| DELGADO, JAIME | 4726 EAST MONTE CRISTO AVENUE PHOENIX AZ 85032 |
| DELGADO, JOSE V | 6023 S. NARRAGANSET CHICAGO IL 60638 |
| DELGADO, JOSEPH S | 11 S VILLAGE DR BELLPORT NY 11713 |
| DELGADO, MIGUEL H. | 5416 DELIA WAY LIVERMORE CA 94550 |
| DELGADO, NORMA | 2536 N. 72NC CT. ELMWOOD PARK IL 60707 |
| DELGADO, NORMA I (ISABEL) | 13418 GUNDERSON AVE DOWNEY CA 90242 |
| DELGADO, ROGER S | 8160 GENEVA COURT UNIT 215 DORAL FL 33166 |
| DELGADO, RONALD F. | 5207 SANDTRAP PLACE VALRICO FL 33594 |
| DELGADO, SONYA R | 2132 WESTVIEW TRAIL DENTON TX 76207 |
| DELGALLO, MAGGIE L | 38455 STONE EDEN DRIVE HAMILTON VA 20158 |
| DELGRECO, JOSEPH | 10 SPRING HILL ROAD ANNANDALE NJ 08801 |
| DELGRECO, PHYLLISS | 22 OAK CREST ROAD WEST ORANGE NJ 07052 |
| DELHI CITY | 209 BROADWAY DELHI LA 71232 |
| DELHI CSD/DELHI TOWN | PO BOX 166 DELHI NY 13753 |
| DELHI TOWNSHIP TAX COLLECTOR | DEIHI TWP 2074 AURELIUS RD HOLT MI 48842 |
| DELI WORX | 1790 WALT WHITMAN RD MELVILLE NY 11747 |
| DELIBERTO, KEITH | 8231 DAISY FIELD PATH CLAY NY 13041 |
| DELINA W. VA FIRE & CASUALTY | 1 INSURANCE SQUARE CELINA OH 45822 |
| DELINE, DONALD A. | 53 FLEET STREET ANNAPOLIS MD 21401 |
| DELIZZA, STEVEN W | 38 DES MOINES CT TINTON FALLS NJ 07712 |
| DELL FINANCIAL SERVICES, L.P. | ATTN M.J. WIGGINS, BANKRUPTCY/LEGAL MGR COLLECTIONS/CONSUMER BANKRUPTCY 12234B NORTH I-35 AUSTIN TX 78753-1705 |

AMERICAN HOME MORTGAGE

SERVICE LIST

| Claim Name | Address Information |
|---|---|
| LALIME, KATHERINE | 4040 8TH PL VERO BEACH FL 32960 |
| LALIN, EMELINE R (ROSE) | 1683 ELIKA PLACE KAPAA HI 96746 |
| LALIN, EMELINE R (ROSE) | 5773 KUAMOO RD KAPAA HI 967469635 |
| LALLI, JEANNE | 379 SHERMAN AVE HAWTHORNE NY 10532 |
| LALLI, SHANNON | 379 SHERMAN AVE HAWTHORNE NY 10532 |
| LALUMIERE, JED J | 20 GUNNAR RD BROOKLYN NY 062341707 |
| LAM & ASSOCIATES, LTD | 4220 EVERGREEN LANE ANNANDALE VA 22003 |
| LAM, BOON | 430 ROSLYN RD ROSLYN HEIGHTS NY 11577 |
| LAM, BYRON S. | 794 PORTOLA DRIVE SAN LEANDRO CA 94578 |
| LAM, KARRY | 5834 AUTUMN HARVEST AVENUE LAS VEGAS NV 89142 |
| LAM, MICHAEL | 1446 HUNTER CREEK DRIVE PATTERSON CA 95363 |
| LAM, PHONG QUOC | 2230-2232 GLEASON WAY OAKLAND CA 94606 |
| LAM, TUAN T. | 3910 COLMA AVENUE MERCED CA 95348 |
| LAM, VICKY | 1028 BRANHAM LANE SAN JOSE CA 95136 |
| LAMA, CHOG TSERING | 4110 CAROL DRIVE #A5 FULLERTON CA 92833 |
| LAMACCHIA, DELENA S. | 1104 BLACK ROAD CHERRYVILLE NC 28021 |
| LAMAGNA, FRANCIS THOMAS | 2348 WARWICK DRIVE CLEARWATER FL 33763 |
| LAMAIRE JOHNSON | 3855 E 96TH ST, STE J INDIANAPOLIS IN 46240 |
| LAMANTIA, LORI J | 878 ESTATES STREET LIVERMORE CA 94550 |
| LAMANTIA, LORI J | 5643 CHARLOTTE WAY APT 47 LIVERMORE CA 945503817 |
| LAMAR ADVERTISING COMPANY | ATTN: CREDIT DEPARTMENT PO BOX 66338 BATON ROUGE LA 70896 |
| LAMAR APPRAISAL SERVICES LLC | PO BOX 3695 SPRINGFIELD MO 65808 |
| LAMAR CITY TWP | 1104 BROADWAY LAMAR MO 64759 |
| LAMAR COMPANY | P.O. 96030 BATON ROUGE LA 70896 |
| LAMAR COUNTY | 130 LIBRARY ST. BARNESVILLE GA 30204 |
| LAMAR COUNTY | P.O. BOX 1170 VERNON AL 35592 |
| LAMAR COUNTY | 109 MAIN STREET PURVIS MS 39475 |
| LAMAR COUNTY APPRAISAL DISTRIC | PO BOX 400 PARIS TX 75460 |
| LAMAR H ELLIS III | 1844 WOODLAND HILLS AV ATL GA 30318 |
| LAMAR H METCALF INSURANCE | 4885 SOUTH 900 EAST SALT LAKE CITY UT 84117 |
| LAMAR TWP | 317 NE 20TH RD LAMAR MO 64759 |
| LAMARCA, TIMOTHY J. | 43387 VIA SABINO TEMECULA CA 92592 |
| LAMARTINE TOWN | N6369 COUNTY ROAD Y FOND DU LAC WI 54937 |
| LAMARX FUNDING, INC. | 245 VINE STREET SUITE F RENO NV 89503 |
| LAMB COUNTY | COURTHOUSE ROOM 105 LITTLEFIELD TX 79339 |
| LAMB FINANCIAL CORPORATION | 6815 N. LINCOLN AVENUE LINCOLNWOOD IL 60712 |
| LAMB, CARL | 20 ARONIMINK LANE PINEHURST NC 28374 |
| LAMB, CARL R | 20 ARONIMINK LANE PINEHURST NC 28374 |
| LAMB, CAROL E | 6152 RIDGE RD. PORT RICHEY FL 34668 |
| LAMB, DARLENE C. | FREEDOM APPRAISAL SERVICES 4397 OWENS RD EVANS GA 30809 |
| LAMB, DEBRA A | 9517 ALDWICK DR. DALLAS TX 75238 |
| LAMB, DEBRA A | 2751 WARWICK WAY GRAPEVINE TX 760514773 |
| LAMB, JAMES M. | 712 WILLOW ROAD NAPERVILLE IL 60540 |
| LAMB, LITTLE & CO. | 309 WEST WASHINGTON STREET CHICAGO IL 60606 |
| LAMB, MATTHEW C | 3040 20TH AVENUE WILSON WI 54027 |
| LAMB, PEGGY A | 400 JASINSKI ST MANVILLE NJ 08835 |
| LAMB, RALPH J. | 3009 WHISPERING WILLOW LANE LAS VEGAS NV 89108 |
| LAMB, RICHARD | 5312 BELLEGROVE WAY EL DORADO HILLS CA 95762 |
| LAMBERG, ERNEST J | 1265 N STERLING AVE PALATINE IL 60067 |

**EXHIBIT B**

| Claim Name | Address Information |
| --- | --- |
| CITIBANK, N.A. | C/O SEWARD & KISSEL, LLP ATTN: RONALD COHEN AND ARLENE ALVES ONE BATTERY PARK PLAZA NEW YORK NY 10004 |
| CITIGROUP GLOBAL MARKETS REALTY | 390 GREENWICH STREET, 6TH FLOOR NEW YORK NY 10013 |
| CRISPUS C NIX & | EDNA E NIX JT TEN 1311 MERIWEATHER RD MONTGOMERY AL 36117-3454 |
| DAN R KOEBLER | 890 HARMONY RD SLIPPERY ROCK PA 16057-1716 |
| DAN S HEILIG | 29 PINECONE LANE WESTBURY NY 11590-6204 |
| DANIEL A LEBAR | BOX 4495 METUCHEN NJ 08840-4495 |
| DANIEL L VINCER | 5300 NE 24TH TERR APT 220C FORT LAUDERDALE FL 33308-3932 |
| DANIEL N LEESON | ROSANNE D. LEESONTTEES LEESON LIVING TRUST 1821 GRANGER AVENUE LOS ALTOS CA 94024-6716 |
| DANIEL W HEISCH | 5834 ARAPAHO DRIVE SAN JOSE CA 95123-3221 |
| DANYA D MCGUIRE | SEAN P MCGUIRE JTWROS 577 BEAUFORT COURT CINCINNATI OH 45240-3802 |
| DAVID A BLATE | 2300 AVE E NW WINTER HAVEN FL 33880-2115 |
| DAVID B BOGERT JUDY L BOGERT JTWROS | PO BOX 21 249 CO HWY 20 NEW BERLIN NY 13411-0021 |
| DAVID BONE CLARK III | 1004 EDWARD ST PAPILLION NE 68046-4287 |
| DAVID DANIEL ADMIN | EST OF JAMES DANIEL C/O JOHN M DALTON 406 FOREST AVENUE STATEN ISLAND NY 10301 |
| DAVID DOBSON | 3914 RANDALL LN CARROLLTON TX 75007-1085 |
| DAVID E WALLIN TR | UA 08/02/87 XOOIX TRUST 1009 N MARION ST OAK PARK IL 60302-1374 |
| DAVID K DANIELS | 325 VALLEY BROOK AVENUE LYNDHURST NJ 07071-1808 |
| DAVID L RIGGS | 4090 HODGES BLVD APT 2606 JACKSONVILLE FL 32224-4223 |
| DAVID L RIGGS | 2309 OLD BAINBRIDGE RD TALLAHASSEE FL 32303 |
| DAVID L SHARER & | SARA A SHARER JT TEN 9776 RTE 954 HWY N CREEKSIDE PA 15732-7807 |
| DAVID L WATSON & | DEBRORAH L WATSON JT TEN 2477 COUNTY LINE RD WARRINGTON PA 18976-2326 |
| DAVID R FARMER | CARRIE L FARMER JTWROS 3105 WATERWORKS RD DANVILLE KY 40422-9365 |
| DAVID TAL | 4 ALTERMAN HAIFA 34759 ISRAEL |
| DEAN L KRUG | 531 N RICHMOND ST WICHITA KS 67203-5006 |
| DEBRA SHINKEWICZ | P.O. BOX 171 CALVERTON NY 11933-0171 |
| DELENA SIGMON LAMACCHIA | 1104 BLACK ROAD CHERRYVILLE NC 28021 |
| DELENA SIGMON LAMACCHIA | CHERRYVILLE NC 28021 |
| DENIS BRENNER & | BONNIE BRENNER JT TEN 1635 WALLACE LN LORAIN OH 44053-1213 |
| DENNIS E FILES | 3844 BEDFORD POINTE DR WENTZVILLE MO 63385 |
| DENNIS M ARCHER | 28101 CAMINO DEL RIO SAN JUAN CAPISTRANO CA 92675 |
| DEREK J INZEO | 2033 DONALD DRIVE MORAGA CA 94556-1401 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY | 1761 EAST STREET, ANDREW PLACE SANTA ANA CA 92705 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY | C/O NIXON PEABODY, LLP ATTN: DENNIS DREBSKY, ESQ. 437 MADISON AVENUE NEW YORK NY 10022 |
| DEUTSCHE BANK NATIONAL TRUST COMPANY | C/O NIXON PEABODY, LLP ATTN: JOHN ROSENTHAL, ESQ. ONE EMBARCADERO CENTER SAN FRANCISCO CA 94111 |
| DEUTSCHE BANK TRUST NATIONAL | AMERICAN HOME MORTGAGE INV TRUST, 2005-1 1761 E ST ANDREW PL - TRUST ADMIN SANTA ANA CA 92705 |
| DEUTSCHE BANK TRUST NATIONAL | AMERICAN HOME MORTGAGE INV TRUST, 2005-2 1761 E ST ANDREW PL - TRUST ADMIN SANTA ANA CA 92705 |
| DEUTSCHE BANK TRUST NATIONAL | AMERICAN HOME MORTGAGE INV TRUST, 2005-3 1761 E ST ANDREW PL - TRUST ADMIN SANTA ANA CA 92705 |
| DEUTSCHE BANK TRUST NATIONAL | AMERICAN HOME MORTGAGE ASSETS TRUST, 2005-1 1761 E ST ANDREW PL - TRUST ADMIN SANTA ANA CA 92705 |
| DEUTSCHE BANK TRUST NATIONAL | AMERICAN HOME MORTGAGE ASSETS TRUST, 2005-2 1761 E ST ANDREW PL - TRUST ADMIN SANTA ANA CA 92705 |
| DEUTSCHE BANK TRUST NATIONAL | AMERICAN HOME MORTGAGE INV TRUST, 2005-SD1 1761 E ST ANDREW PL - TRUST ADMIN SANTA ANA CA 92705 |
| DEUTSCHE BANK TRUST NATIONAL | AMERICAN HOME MORTGAGE INV TRUST, 2006-1 1761 E ST ANDREW PL - TRUST ADMIN |