**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------ x

In re:                                                  :   Chapter 11

                               :

AMERICAN HOME MORTGAGE HOLDINGS, INC.,    :   Case No. 07-11047 (CSS)
a Delaware corporation, <u>et al.</u>,[1]                    :

                               :   Jointly Administered

      Debtors.                                          :

                               :   **Ref. Docket Nos. 6610 & 7084**

------------------------------------------------------------------ x

**SUPPLEMENTAL DECLARATION OF EILEEN WANERKA IN SUPPORT OF**
**DEBTORS' TWENTY-FIFTH AND THIRTY-FIRST OMNIBUS OBJECTIONS**
**TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE,**
**BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1**

        I, Eileen Wanerka, pursuant to 28 U.S.C. §1746, declare:

    1.      I am the Director of Claims Administration for the above-captioned debtors (the

"Debtors") and the AHM Liquidating Trust (the "Plan Trust"), which was established pursuant to

the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the

"Plan").    In this capacity, I am one of the persons responsible for overseeing the claims

reconciliation and objection process in the Debtors' chapter 11 cases.  I submit this Supplemental

Declaration to supplement the declarations filed in support of (i) the Debtors' Twenty-Fifth

Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code,

Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 [Docket No. 6610] (the "Twenty-Fifth

Objection") and (ii) the Debtors' Thirty-First Omnibus (Substantive) Objection to Claims

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The mailing address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 [Docket No. 7084] (the "Thirty-First Objection") (collectively, the "Objections").

2.      This Supplemental Declaration is intended to provide additional legal, factual and documentary support for the relief requested in the Objections with respect to certain proofs of claim that are addressed herein (the "Claims"). The Objections have been previously adjourned with respect to these Claims. The Plan Trust has conducted a further review of (i) the Debtors' books and records and/or (ii) information in the control of the claimants (as applicable), and have identified several facts and documents that lend additional support to the Objections, true and correct copies of which are attached hereto as exhibits. Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust reserves the right to supplement this declaration and the right to further object to the proofs of claims discussed herein on any substantive or non-substantive grounds.

A.      **Riverside County Treasurer - Tax Collector – POC No. 10504**

3.      On September 10, 2008, the Riverside County Treasurer – Tax Collector ("Riverside County") filed claim number 10504 ("Claim 10504") pursuant to which Riverside County asserts a secured claim for $638,855.31 on account of unpaid real property taxes. A copy of Claim 10504 is attached as Exhibit A.

4.      Pursuant to the Twenty-Fifth Objection, the Debtors objected to Claim 10504 on the basis that Riverside County provided insufficient documentation to enable the Debtors to determine its validity. On September 7, 2009, Riverside County filed a response [Docket No. 8019] to the Twenty-Fifth Objection, a copy of which is attached as Exhibit B, pursuant to which Riverside County asserted, among other things, that additional time was needed for Riverside

County to determine which properties are in the Debtors' names and require the payment of taxes by the Debtors.

5.    On October 1, 2009, Riverside County filed its supplemental response [Docket No. 8121] (the "Supplemental Response") to the Objection, a copy of which is attached as Exhibit C. Pursuant to the Supplemental Response, Riverside County admitted that the highest amount potentially owed by the Debtors on account of Claim 10504 was $52,603.92. *See* Exh. C, p. 11 lines 12-14. The Supplemental Response identifies eleven (11) parcels for which the taxes claimed through Claim 10504 had not been paid as of October 2009. The deeds to the first two parcels (3122990021-6 and 316220003-1) noted in the Supplemental Response were held in the name of non-debtor American Home Mortgage Servicing, Inc. ("AHMSI") and these properties were subsequently sold to third-parties. Any taxes owing on account of these parcels should have been paid upon the sale of the property. The Debtors have no liability for taxes owed on account of these parcels. The remaining nine (9) parcels were purportedly held in the name of the Debtors. As stated below, all applicable taxes claimed through Claim 10504 on account of these parcels have been paid in full.

6.    After the Supplemental Response was filed, the parties entered into discussions in an attempt to reach a consensual resolution of Claim 10504. As a result of such discussions, the parties agreed to cap the amount potentially owing to Riverside County on account of Claim 10504 at $52,603.92 (the "Remaining Amount"). The parties further agreed to reserve all rights with respect to the validity of the taxes represented by the Remaining Amount. The parties' agreement was stated on the record during the October 14, 2009 omnibus hearing before this Court. A copy of the relevant portions of this transcript is attached as Exhibit D.

YCST01:11037628.1                                    066585.1001

7.      The Debtors (and more recently the Plan Trust) have reviewed information available on Riverside County's website and the Debtors' records relating to the real property parcels for which Riverside County contends the Debtors remain liable in connection with Claim 10504. Based on the review of this information, the Plan Trustee submits the Debtors have no liability for the Remaining Amount claimed on account of Claim 10504. As shown on the summary chart attached as Exhibit E, the claimed taxes have been paid in full. In addition, the screenshots from Riverside County's website show that no taxes claimed by Claim 10504 remain due and owing to Riverside County. Copies of the screenshots from Riverside County's website with respect to the parcels identified in Exhibit E are attached as Exhibit F.

8.      Moreover, I am informed by counsel to the Plan Trustee, and have viewed email communications between counsel for the Plan Trustee and Riverside County, that Riverside County has been provided with documentation concerning the Remaining Amount claimed by Riverside County, which demonstrates that the Debtors have no liability to Riverside County in connection with Claim 10504. The documentation provided to Riverside County includes the summary chart attached as Exhibit E, the screenshots from Riverside County's website attached as Exhibit F and an email to counsel for Riverside County dated May 2, 2011, all of which show the Debtors have no liability for Claim 10504. I am informed that a version of the summary chart and the Riverside County website screenshots were provided to Riverside County by email dated January 25, 2011. Copies of the referenced January 25, 2011 and May 2, 2011 emails are attached as Exhibit G.

9.      Lastly, to the extent Riverside County alleges that any taxes for subsequent tax years are owed in connection with the parcels applicable to Claim 10504, the Debtors have no liability because the Debtors are not the record owner of any of these loans and, moreover, the

4

servicing rights for these loans were sold to non-debtor AHMSI, with the final closing occurring in April 2008.

10.    Based on the foregoing, the Debtors do not owe any taxes to Riverside County on account of Claim 10504 and this claim should be disallowed and expunged in its entirety.  In the event the Court determines that the Debtors have some liability to Riverside County in connection with Claim 10504, the Plan Trustee requests entry of an order modifying and reducing Claim 10504 to an amount determined by the Court.

**B.     Douglas Huston – POC No. 2196**

11.    On November 15, 2007, Douglas Huston filed claim number 2196 ("Claim 2196"), a copy of which is attached as Exhibit H.  Pursuant to Claim 2196, Mr. Huston asserts a claim for $18,049.12 on account of unpaid Overrides for the time period of June 1, 2007 through July 30, 2007.  Mr. Huston asserts that $10,950 of the total amount claimed by Claim 2196 is entitled to priority status.

12.    Pursuant to the Thirty-First Objection, the Debtors objected to Claim 2196 on the grounds the Debtors' books and records indicated no amounts were owed to Mr. Huston and, moreover, there was insufficient documentation attached to the claim form to allow the Debtors to assess the validity of this claim.  Mr. Huston filed a response [Docket No. 7353] (the "Huston Response"), a copy of which is attached as Exhibit I.   Pursuant to the Huston Response, Mr. Huston contends that the Debtors did not pay him for his semi-monthly overrides earnings for June and July, 2007.  Mr. Huston attached a chart (the "Chart") to his response and alleged the Chart supports the validity of Claim 2196.  A true and correct copy of the Chart is attached as Exhibit J.

YCST01:11037628.1                                                                                                          066585.1001

13.     Contrary to Mr. Huston's assertions, the Debtors' records reflect he was owed only $15,832.78 in Overrides at the time his employment ended with AHM.  Moreover, as indicated on the attached pay history document, a copy of which is attached as Exhibit K, he received his final paycheck on August 7, 2007 (chk# 00321200) in the gross amount of $15,832.78, which compensated him in full for the amounts owed to him by the Debtors.  As such, no amounts are owed to Mr Huston for the alleged unpaid Overrides and this claim should be disallowed in its entirety.

14.     In the alternative, to the extent that the Court determines that the Debtors should have paid Mr. Huston $18,049.12 rather than $15,832.78, the Plan Trustee submits that Claim 2196 should be modified and reduced from $18,049.12 to $2,216.34 on the grounds that the Debtors paid Mr. Huston $15,832.78 for Overrides in his final paycheck on August 7, 2007.  Thus, Mr. Huston would only be entitled to an allowed claim of $2,216.34, priority unsecured, on account of unpaid Overrides and Claim 2196 should be modified and reduced accordingly.

15.     Lastly, since Mr. Huston did not indicate the debtor entity against which this claim was being asserted, in the event Claim 2196 is allowed in any amount the Plan Trustee requests that the Court reassign/assign Claim 2196 to Debtor American Home Mortgage Corp. (Case No. 07-11051), which is the debtor entity that employed Mr. Huston.

## C.     David Michaud – POC No. 7184

16.     On January 7, 2008, David Michaud filed claim number 7184 ("Claim 7184"), a copy of which is attached as Exhibit L.  Pursuant to Claim 7184, Mr. Michaud asserts a claim for $54,402.  Mr. Michaud asserts that $10,950 of the total amount claimed by Claim 7184 is entitled to priority status.

YCST01:11037628.1                                        066585.1001

17.    Pursuant to the Thirty-First Objection, the Debtors objected to Claim 7184 on the grounds that the amounts claimed by Mr. Michaud were greater than the liabilities reflected per the Debtors' books and records.  The Debtors sought an order modifying and reducing Claim 7184 to a general unsecured claim in the amount of $27,390.10.  Mr. Michaud filed a response [Docket No. 7352] (the "Michaud Response"), a copy of which is attached as Exhibit M, in which he asserts that he is entitled to the full amount claimed on account of unpaid (i) Deferred Compensation, (ii) override payments, and (iii) bonuses.  The Michaud Response also had the Chart (Exh. J) attached as Exhibit A thereto.  For the reasons set forth below, the Plan Trustee requests that Claim 7148 be modified and reduced from $54,402.00 to $28,305.74 as well as reclassified so the entirety of the allowed claim is general unsecured.

18.    Although Claim 7184 purportedly consists of three portions, neither Claim 7184 nor the Michaud Response specifies the amounts claimed with respect to each portion.  However, in accordance with the account summary attached to Claim 7184, it appears that the first portion consists of a claim for $28,305.74 on account of unpaid Deferred Compensation due to Mr. Michaud.  The Plan Trustee agrees to allow this portion of Claim 7184 in the amount of $28,305.74, general unsecured.

19.    With respect to the remaining portions of Claim 7184, however, the Plan Trustee submits that the Debtors have no liability.  In particular, the Debtors' records reflect that Mr. Michaud received all amounts due to him on account of Overrides and commissions.  Specifically, on August 7, 2007, he was paid $9,091.17 on account of commissions and $3,195.07 for Overrides.  A copy of the pay voucher reflecting these payments is attached as Exhibit N.  As such, no amounts are owed to Mr. Michaud for the alleged unpaid Overrides and commissions and this portion of the claim should be disallowed in its entirety.

YCST01:11037628.1                                                                                      066585.1001

20.     Lastly, Mr. Michaud asserts that he is entitled to an unspecified amount for bonuses that are allegedly owed to him.   This portion of Claim 7184 should be disallowed pursuant to the terms of the compensation plan applicable to Mr. Michaud, a signed copy of which is attached as Exhibit O.   Specifically, section A of the compensation plan entitled "Branch Manager Compensation" (See Exh. O, p. 4) provides that, exclusive of personal production (which is not applicable to this claim), all compensation for branch managers ends as of the effective date of the termination of the branch manager's employment.   Mr. Michaud's employment was terminated in August 2007 and the scheduled payment date for 2007 annual bonuses was March 2008.   Mr. Michaud's earning statement, attached as Exhibit P, demonstrates that year end annual bonuses are not paid until March of the year following the year in which the bonus was earned.   See Exh. N, p. 2 voucher # 00124008 dated 3/23/07.   Because Mr. Michaud was not employed on the scheduled payment date for the claimed 2007 bonus, he is not entitled to it pursuant to the terms of his compensation plan.

21.     Based on the foregoing, the Plan Trustee requests that Claim 7184 be modified and reduced to a general unsecured claim in the amount of $28,305.74.

*[Signature page follows]*

8

066585.1001

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 6, 2011

Eileen Wanerka
AHM Liquidating Trust
Director of Claims Administration

# EXHIBIT A

## Riverside County POC No 10504


**ORIGINAL**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>American Home Mortgage Claims Processing Center<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re:<br>American Home Mortgage Holdings, Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered |
|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Martha E. Romero
Paul McDonnell
Riverside County Treasurer-Tax Collector
6516 Bright Ave.
Whittier, CA 90601

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., El Al.
07-11047 (CSS)    0000010504

Telephone number:  (562) 907-6800
Email Address:     Romero@mromerolawfirm.com

| Account or other number by which creditor identifies debtor: | Check here if this claim:<br>☐ replaces   ☐ amends a previously filed claim, dated:_____ |
|---|---|

**1.  Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☑ Taxes
- ☐ Other_____(explain)

☐ Retire benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last Four Digits of your SS#:  ___  ___  ___  ___

Unpaid compensation for services performed

from _____ to _____
     (date)           (date)

**2.  Date debt was incurred:**

**3.  If court judgment, date obtained:**

**4.  Total Amount of Claim at Time Case Filed:**  $_____ + $ 638,855.31 + _____ = $ 638,855.31
     (unsecured nonpriority)    (secured)    (unsecured priority)    (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5.  Secured Claim.**
☑ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☑ Real Estate    ☐ Motor Vehicle
☐ Other_____

Value of Collateral:  $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____

**6.  Unsecured Nonpriority Claim:** $_____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7.  Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
- ☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
- ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
- ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**8.  Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9.  Supporting Documents:**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.

    **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10**  Date-Stamped Copy:  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

FILED / RECEIVED

SEP 10 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date<br>9/8/08 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):  *Martha ...* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

1          UNITED STATES BANKRUPTCY COURT

2             DISTRICT OF DELAWARE

3

4    In re                          )  Case No. 07-11047
                                    )
5    AMERICAN HOME MORTGAGE HOLDINGS,  )  Chapter 11
     INC., a Delaware corporation, et )
6    al.,                           )  CERTIFICATE OF SERVICE TO
                                    )  PROOF OF CLAIM FILED BY
7              Debtors.            )  SECURED CREDITOR RIVERSIDE,
                                    )  CALIFORNIA
8                                    )
                                    )
9

10   ─────────────────────────────────

11             CERTIFICATE OF SERVICE

12   I certify that a true and correct copy of the foregoing has been

13   served via first class U.S. Mail (fed ex) on EPIQ Bankruptcy

14   Solutions, LLC, Attn: American Home Mortgage Claims Processing, 757

15   Third Avenue, 3rd Floor, New York, NY 10017 this 9th day of September

16   2008.

17                            Respectfully submitted,

18
                             ROMERO LAW FIRM
19

20
                             By._____
21                           MARTHA E. ROMERO, State Bar No. 128144
                             ROMERO LAW FIRM
22                           BMR Professional Building
                             6516 Bright Avenue
23                           Whittier, California 90601
                             Phone (562) 907-6800
24                           Facsimile (562)907-6820
                             Attorneys for SECURED CREDITORS
25                           COUNTY OF RIVERSIDE, CALIFORNIA

26

27

28



**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| **PROOF OF CLAIM** |

In Re:
American Home Mortgage Holdings, Inc., et al.
Debtors.

Name of Debtor Against Which Claim is Held

Chapter 11
Case No. 07-11047 (CSS)
Jointly Administered

Case No. of Debtor

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Martha E. Romero
Paul McDonnell
Riverside County Treasurer-Tax Collector
6516 Bright Ave.
Whittier, CA 90601

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone number: (562) 907-6800
Email Address:    Romero@mromerolawfirm.com

Account or other number by which creditor identifies debtor:

Check here if this claim: ☐replaces   ☐amends a previously filed claim, dated:_____

| 1. | **Basis for Claim** |
| | ☐ Goods sold |
| | ☐ Services performed |
| | ☐ Money loaned |
| | ☐ Personal injury/wrongful death |
| | ☑ Taxes |
| | ☐ Other_____(explain) |

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last Four Digits of your SS#:   ___ ___ ___ ___
Unpaid compensation for services performed
from _____to_____
        (date)              (date)

2.  Date debt was incurred:

3.  If court judgment, date obtained:

4.  **Total Amount of Claim at Time Case Filed:**  $_____ + $ 638,855.31 + _____ = $ 638,855.31
        (unsecured nonpriority)   (secured)   (unsecured priority)   (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5.  **Secured Claim.**
☑ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☑ Real Estate   ☐ Motor Vehicle
☐ Other_____
Value of Collateral: $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6.  **Unsecured Nonpriority Claim:** $_____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7.  **Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $_____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

8.  **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9.  **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
**DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

10  Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

FILED / RECEIVED

SEP 1 0 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date 9/8/08 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) |
| | *Martha een* |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**FedEx** Express **US Airbill**

fedex.com 1.800.GoFedEx 1.800.463.3339

RECIPIENT: PEEL HERE

8544 7529 8290

1 From This portion can be removed for Recipient's records.

Date 9/4/8

Sender's Name Martha Romero

Company ROMERO LAW FIRM

Address 6516 BRIGHT AVE

City WHITTIER    State CA    ZIP 90601-4503

Phone 562 907-6800

FedEx Tracking Number 8544 7529 8290

2 Your Internal Billing Reference Riverside

3 To
Recipient's Name EPIQ Bankruptcy Solutions

Company American Home Mortgage Claims Processing

Address 757 Third Avenue 3rd Floor

City New York    State NY    ZIP 10017

0324693591

Total Weight 1.0

519

Recipient's Copy

# **EXHIBIT B**

## **Riverside County Response**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | )    Case Number: 07-11047 |
| | ) |
| AMERICAN HOME MORTGAGE HOLDINGS, | )    Chapter 11 |
| INC., a Delaware corporation, <u>et</u> | ) |
| <u>al.</u>, | )    RESPONSE TO OBJECTION TO |
| | )    CLAIM OF RIVERSIDE COUNTY |
| | )    TAXING AUTHORITY, ONE OF |
| | )    THE  CALIFORNIA TAXING |
| Debtors. | )    AUTHORITY AND THE |
| | )    DECLARATION OF MARTHA E. |
| | )    ROMERO IN SUPPORT |
| | )    THEREOF (TWENTY-FIFTH |
| | )    OMNIBUS OBJECTION) |
| _____ | ) |

Date: September 8, 2009
Time: 11:30 a.m. ET

TO THE HONORABLE CHRISTOPHER S. SONTCHI UNITED STATES BANKRUPTCY JUDGE AND TO INTERESTED PARTIES:

Riverside County, one of the California Taxing Authorities hereby file its response to the Objection of its claim (Twenty Fifth Omnibus Objection).

The California Taxing Authorities objected to the Disclosure Statement and to the Amended Plan of Reorganization in order to obtain language regarding payment of the secured real property taxes in each taxing jurisdiction.  (This is discussed in more detail below)

Riverside County Taxing Authority requests a further extension to review the current properties still in the name of the debtor versus those properties that have been resold to a third property. This task is cumbersome as explained below but necessary to determine which properties are in the debtor's names and require the payment of taxes.

1

1    This is the first formal request for an extension from this

2  court.   The parcels have not been able to be reconciled with

3  debtor's counsel.   This is a long and arduous process but counsel

4  is committed to resolution of this claim and requests additional

5  time to do so.

6              **MEMORANDUM OF POINTS AND AUTHORITIES**

7                 **I. PROCEDURAL POSTURE.**

8    In California as in many other jurisdictions, real property

9  taxes are secured by real estate.   These type of taxes are secured

10  by an automatic lien on the property by operation of law.   Real

11  property cannot be sold in California without the payment of the

12  automatic taxes or release of the tax lien by payment.

13    Additionally, real property tax revenue funds mandated

14  services by counties including police, fire services, schools and

15  hospitals.   These services are required to be provided to the

16  general public.

17    The California Taxing Authorities objected to the Amended Plan

18  of Reorganization because payment of these secured real property

19  taxes was not clear in the plan.   The California Taxing

20  Authorities obtained language in the disclosure statement which

21  stated:

22          Illustration: Assume a State taxing authority has a claim

23          for real property taxes secured by a first-priority lien

24          on REO property that is transferred from a Debtor to the

25          Plan Trust on the Effective Date.

26          Because the claim is not specifically identified in the

27          Plan, the claim is a Miscellaneous Secured Claim.   To the

28          extent there is value in the REO in excess of the taxes

owed, the Allowed Miscellaneous Secured Claim will
include interest and any reasonable fees, costs, or
charges payable under the State statute giving rise to
the claim.  Under the Plan, the Plan Trustee may elect
between reinstating the tax claim as it existed prior to
the Effective Date and paying the real property taxes in
accordance with State law (e.g., upon closing of a sale
of the REO), paying the tax claim in full (either in a
lump sum on the Effective Date, or over time, with
interest), or tendering the REO satisfaction of the tax
claim.  If the Plan Trustee chooses to pay the tax claim
over time, the tax lien will continue in the property
until the claim is paid in full.  If the Plan Trustee
chooses to reinstate the tax claim as it existed prior to
the Effective Date, then the rights of the taxing
authority will be unimpaired by the Plan, and the taxing
authority will be entitled to exercise any remedies
available to it under applicable State law to obtain
timely payment of the real estate taxes.

Debtor's counsel also confirmed that the confirmation order
also included language as follows:

"Notwithstanding any provisions to the contrary in the
Plan or this order, solely with respect tot he claims of
the Objection California Taxing Authorities (1) the
allowed pre-petition secured claims of the OCTA will be
paid with interest from the petition date through the
Effective Date pursuant to 11 U.S.C. Section 506(b) at
their statutory rate as required under 11 U.S.C. Section

3

1    511 and to the extent allowed will be paid with interest

2    from the Effective Date through the date of payment at

3    the statutory rate.  Such claims of the OCTA may be paid

4    at any time including during the ordinary course of

5    business when the real property is sold and or

6    transferred and if not objections have been filed, such

7    claims will be paid on the later of the claim objection

8    bar date or, if a timely objection is filed within 10

9    business days after entry of an order of the Court

10   allowing such claim. The OLTTA shall retain their liens

11   for such claims on the collateral or the proceeds

12   therefrom, until such time as the taxes are paid in full'

13   and (ii) the debtors shall timely pay the allowed ad

14   valorem taxes of the OCTA incurred post petition in the

15   ordinary course of business. If such taxes are not timely

16   paid, them the Debtor's or the Plan Trustee shall pay

17   such taxes and any additional allowed penalties and/or

18   interest arising pursuant to applicable non-bankruptcy

19   law.  Further the OCTA shall retain their liens on their

20   collateral or the proceeds therefrom if such collateral

21   has been sold until such time as the post-petition taxes

22   have been paid in full."

23

24   In the wake of this economy thousands of real property have

25   gone into foreclosure.  The debtor has taken title to numerous

26   properties upon foreclosure. The phenomena is that as the economy

27   worsened more real property was foreclosed upon and in the title of

28   the debtor.  For example, at the beginning of this case Placer

4

1   County, Taxing Authority, California had approximately (4)

2   properties in the name of the debtor.  As the foreclosures

3   continued and the bankruptcy case continued over 200 properties

4   ended up being in the name of the debtor.  Many of these have since

5   been resold.

6        Title of real property creates the responsibility of payment

7   of the taxes. As the debtor resold foreclosed properties to third

8   properties, the secured real estate taxes were paid, creating a

9   moving target for most taxing authorities on which properties

10  remained in the debtor's names and those that were resold.

11       Due to the numerous amount of properties within the county, it

12  was a cumbersome task to update which properties were sold or

13  remained in the debtor's name.

14       This objection must not be sustained just because the parties

15  have not reconciled the parcels.  This would be extremely

16  prejudicial to Riverside County Taxing Authority.

17       Riverside requests a short extension to reexamine the

18  properties to ascertain which properties may have been resold.

19  Originally there were ninety-two **(92)** parcels for a total of

20  $638,855.31 dollars. After reconciling the parcels, the amount

21  remaining is $193,498.62.

22       This amount has continued to accrue statutory interest under

23  state law. Section 11 U.S.C. Section 511 which provides for

24  interest at the state statutory interest rate.

25       The dollar amount is substantial and it would be prejudicial

26  to Riverside County for the objection to be sustained given this

27  revenue funds the county services as previously discussed.

28       Counsel for Riverside has been working with an associate

1  counsel but that counsel has now left the firm.  Counsel for

2  Riverside was contacted by a new contact person and would like to

3  work with this person to resolve the objection.  Declaration of

4  Martha E. Romero filed simultaneously.

5      Counsel for Riverside has submitted its list to counsel

6  regarding the parcels in questions and will resubmit its list to

7  counsel again for the purpose of resolving this dispute (especially

8  since a new contact has been assigned.)  Further documentation

9  including secured tax bills and title can be provided but has not

10  been formally requested in order to resolve the objection.

11                    **II.   INTRODUCTION.**

12      The subject property is comprised of real property in

13  Riverside County, California.  The debtor American Home Mortgage

14  has acquired real property interests in certain real property in

15  this county. The real property is subject to the assessment of

16  local property taxes under California State law.

17      If the real property is in the name of the debtor it doesn't

18  matter whether or not escrows have been waived or whether other

19  people have agreed to pay the taxes.  The secured real property

20  taxes must be paid.

21      **III. THIS COURT MUST LOOK AT CALIFORNIA STATE LAW WHEN**

22          **APPLYING WHEN DETERMINING TAX LIABILITY.**

23      It is well settled law that the bankruptcy court must apply

24  California state law and California tax principles when determining

25  the tax liability.

26      In In Re Fairchild Aircraft Corp, 124 B.R. 488 (Bankr. W. D.

27  Tex. 1991), the court held that the bankruptcy court's valuation of

28  property for purposes of determining property taxes must be

consistent with state law principles as the valuation is merely part and parcel of adjudication of a tax due and owing, which is a question controlled by state law. Id. at 492.

The bankruptcy court, additionally, must give full faith and credit to the law of the state upon which the tax is based. Id. at 492.  Also see In re Quality Beverage Co., Inc., 170 B.R. 310 (Bankr. S. D. Tex. 1994).

Likewise, in Arkansas Corp. Commission v. Thompson, 313 U.S. 132 (1941), the Supreme Court has held for 64 years, that whether or not taxes are legally due and owing to a state depends upon the valid laws of the state. Id. at 142.

This court then must apply California State law to determine the taxes.

## IV.   REAL PROPERTY TAX ASSESSMENTS ARE MANDATED UNDER CALIFORNIA LAW.

_____Under California State Law, every piece of real property is subject to taxation.[1]  California Revenue and Taxation Code section 401 states: "Every assessor shall assess all property subject to general property taxation at its full value."

Under California State Law, real property is to be assessed at the same percentage of fair market value.[2]

California Revenue and Taxation Code Section 401.3 provides

_____

[1] California Revenue and Taxation Code section 104 states: "Real estate or real property includes: (a) The possession of, claim to, ownership of or right to the possession of land."

[2] In California, property tax assessments consist of two components.  The first component is the assessed value.  The second is the tax rate.  The latter is applied against the former to calculate the amount of taxes due.  This equation is sometimes known as the tax ratio. For taxable real property, the assessed value is determined at the same percentage of fair market value. California Constitution Article XIII section 1.

7

that: "The assessor shall assess all property subject to general property taxation on the lien date as provided in Articles XIII and XIIIA of the Constitution. . . ."

Real property taxes are assessed as of January 1 ("lien date") of the year in which taxes become due.[3]

In California, property taxes are <u>in rem</u> and are payable only through sale proceeds.  California Revenue and Taxation Code Section 2187 states: " Every tax on real property is a lien against the property assessed."  See <u>Long Beach v. Aistrap,</u> 164 Cal. App. 2d 41 (1958).

Additionally, the real property taxes are a first lien on the property. California Revenue and Taxation Code Section 2192.1 states:

> Every tax declared in this chapter to be a lien on real
> property . . . have priority over all other liens on the
> property, regardless of the time of their creation.  Any tax .
> . . described in the preceding sentence shall be given
> priority over matters including but not limited to any
> recognizance, deed, judgment, debt, obligation, or
> responsibility with respect to which the subject real property
> may become charged or liable.

---

[3] California Revenue and Taxation Code, section 117 states: "Lien date is the time when taxes for any fiscal year become a lien on the property." California Revenue and Taxation Code Section 118 defines assessment year as "the period beginning with a lien date and ending immediately prior to the succeeding lien date for taxes levied by the same agency."

Revenue and Taxation Code section 2192 states:" . . . all tax liens attach annually as of 12:01 a.m. on the first day of January preceding the fiscal year for which the taxes are levied..."

1    Since the taxes a first priority lien on the property they are

2    a secured claim.

3    Additionally, California law requires that upon sale the taxes

4    be paid first.   California Revenue and Taxation Code Section

5    2192.1 states:

6    Every tax declared in this chapter to be a lien on real

7    property . . . have priority over all other liens on the

8    property, regardless of the time of their creation.  Any tax .

9    . . described in the preceding sentence shall be given

10   priority over matters including but not limited to any

11   recognizance, deed, judgment, debt, obligation, or

12   responsibility with respect to which the subject real property

13   may become charged or liable.

14   Riverside respectfully requests that this court either allow

15   counsel to continue to work on the list of properties still in the

16   debtor's name or order that all the secure tax liens be paid.

17                   **V.    CONCLUSION.**

18   Riverside respectfully requests that this court order that the

19   payment of the tax liens be paid from the estate or directly from

20   each sale of the real property to the third party as explained

21   above.

22

23

24   Dated: September 7, 2009          ROMERO LAW FIRM

25                                     By. /s/ Martha E. Romero
                                       MARTHA E. ROMERO, State Bar No.
26                                     128144
                                       ROMERO LAW FIRM
27                                     BMR Professional Building
                                       Whittier, California 90601
28                                     Phone (562) 907-6800
                                       Facsimile (562)907-6820

                                9

1    Attorneys for SECURED CREDITOR
     COUNTY OF RIVERSIDE, CALIFORNIA
2    TAXING AUTHORITY

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**UNITED STATES BANKRUPTCY COURT**

2

**DISTRICT OF DELAWARE**

3

4

| | |
|---|---|
| In re )                               | Case Number: 07-11047 |
| )                                     | |
| AMERICAN HOME MORTGAGE HOLDINGS, )    | Chapter 11 |
| INC., a Delaware corporation, et )    | |
| al., )                                | DECLARATION OF MARTHA E. |
| )                                     | ROMERO IN SUPPORT OF |
| )                                     | RESPONSE TO OBJECTION TO |
| )                                     | CLAIM OF RIVERSIDE COUNTY |
| Debtors. )                            | TAXING AUTHORITY, ONE OF |
| )                                     | THE  CALIFORNIA  TAXING |
| )                                     | AUTHORITY IN SUPPORT |
| )                                     | THEREOF(TWENTY-FIFTH |
| )                                     | OMNIBUS OBJECTION) |

Date: September 8, 2009
Time: 11:30 a.m. ET

TO THE HONORABLE CHRISTOPHER S. SONTCHI UNITED STATES
BANKRUPTCY JUDGE AND TO INTERESTED PARTIES:

I, Martha E. Romero declare as follows:

1.    I am counsel to Riverside County, California Taxing
      Authority. Riverside is one of the California Taxing
      Authorities that objection to the Disclosure Statement
      and to the Amended Plan of Reorganization.

2.    I make this declaration in support of the response to the
      objection of the claim of Riverside County.  The facts
      set forth are of my own personal knowledge and if called
      to testify in a court of law I could and would
      competently testify thereto.

3.    Riverside County Taxing Authority was one of other
      California Taxing Authorities that objected to the
      Disclosure Statement and to the Plan of Reorganization.

4.    Originally Imperial, Nevada, Placer, Riverside, San

1

1    Bernardino and Yuba counties were the objecting

2    California Taxing Authorities.

3    4.   Counsel has worked with debtor's counsel to resolve

4    substantially all of the tax claims involved.

5    5.   Counsel for Riverside has been corresponding with a

6    contact person at debtor's firm since late December 2008

7    to try and resolve this claim.

8    6.   Numerous emails have been exchanged in order to resolve

9    the objection, often with long lapses of time while each

10    counsel obtaining information.  It has been a difficult

11    and arduous process.

12    7.   Riverside County Taxing Authority requests a further

13    extension to review the current properties still in the

14    name of the debtor versus those properties that have been

15    resold to a third property. This task is cumbersome as

16    explained below but necessary to determine which

17    properties are in the debtor's names and require the

18    payment of taxes.

19    8.   This is the first formal extension requested from this

20    court.

21    9.   The California Taxing Authorities objected to the Amended

22    Plan of Reorganization because payment of these secured

23    real property taxes was not clear in the plan.   The

24    California Taxing Authorities obtained language in the

25    disclosure statement which stated:

26

27    Illustration: Assume a State taxing authority has a claim

28    for real property taxes secured by a first-priority lien

1      on REO property that is transferred from a Debtor to the

2      Plan Trust on the Effective Date.

3      Because the claim is not specifically identified in the

4      Plan, the claim is a Miscellaneous Secured Claim.  To the

5      extent there is value in the REO in excess of the taxes

6      owed, the Allowed Miscellaneous Secured Claim will

7      include interest and any reasonable fees, costs, or

8      charges payable under the State statute giving rise to

9      the claim.  Under the Plan, the Plan Trustee may elect

10      between reinstating the tax claim as it existed prior to

11      the Effective Date and paying the real property taxes in

12      accordance with State law (e.g., upon closing of a sale

13      of the REO), paying the tax claim in full (either in a

14      lump sum on the Effective Date, or over time, with

15      interest), or tendering the REO satisfaction of the tax

16      claim.  If the Plan Trustee chooses to pay the tax claim

17      over time, the tax lien will continue in the property

18      until the claim is paid in full.  If the Plan Trustee

19      chooses to reinstate the tax claim as it existed prior to

20      the Effective Date, then the rights of the taxing

21      authority will be unimpaired by the Plan, and the taxing

22      authority will be entitled to exercise any remedies

23      available to it under applicable State law to obtain

24      timely payment of the real estate taxes.

25   10.  Debtor's counsel also confirmed that the confirmation

26      order also included language as follows:

27      "Notwithstanding any provisions to the contrary in the

28      Plan or this order, solely with respect tot he claims of

1    the Objection California Taxing Authorities (1) the

2    allowed pre-petition secured claims of the OCTA will be

3    paid with interest from the petition date through the

4    Effective Date pursuant to 11 U.S.C. Section 506(b) at

5    their statutory rate as required under 11 U.S.C. Section

6    511 and to the extent allowed will be paid with interest

7    from the Effective Date through the date of payment at

8    the statutory rate.  Such claims of the OCTA may be paid

9    at any time including during the ordinary course of

10   business when the real property is sold and or

11   transferred and if not objections have been filed, such

12   claims will be paid on the later of the claim objection

13   bar date or, if a timely objection is filed within 10

14   business days after entry of an order of the Court

15   allowing such claim. The OLTTA shall retain their liens

16   for such claims on the collateral or the proceeds

17   therefrom, until such time as the taxes are paid in full'

18   and (ii) the debtors shall timely pay the allowed ad

19   valorem taxes of the OCTA incurred post petition in the

20   ordinary course of business. If such taxes are not timely

21   paid, them the Debtor's or the Plan Trustee shall pay

22   such taxes and any additional allowed penalties and/or

23   interest arising pursuant to applicable non-bankruptcy

24   law.  Further the OCTA shall retain their liens on their

25   collateral or the proceeds therefrom if such collateral

26   has been sold until such time as the post-petition taxes

27   have been paid in full."

28   11.  In the wake of this economy thousands of real property

4

have gone into foreclosure.  The debtor has taken title
to numerous properties upon foreclosure. The phenomena is
that as the economy worsened more real property was
foreclosed upon and in the title of the debtor.  For
example, at the beginning of this case Placer County,
Taxing Authority, California had approximately (4)
properties in the name of the debtor.  As the
foreclosures continued and the bankruptcy case continued
over 200 properties ended up being in the name of the
debtor.  Many of these have since been resold.

12.   The contact person that counsel for Riverside was trying
to resolve claims with is no longer with the firm.
The last time counsel for Riverside corresponded with
debtor's contact person was June 2009.  One of the last
emails was a status that debtor's counsel was reviewing
certain claims with his client.

13.   On or about August 5, 2009, debtor's counsel informed
counsel for Riverside that a new contact person had been
assigned to deal with the claim.

14.   Counsel for Riverside initially attempted to contact that
person but there was no response until August 14, 2009.
Counsel for Riverside requested what else was needed to
resolve the claim and was on vacation until August 18,
2009.

15.   Riverside has provided a list of the 92 parcel in which
title is listed as debtor.  Riverside requests further
time in order to supply tax bills and title reports as
the real property may has been sold or transferred

5

according with the language in both the Disclosure
Statement and Confirmation Order.

16. Title of real property creates the responsibility of
payment of the taxes. As the debtor resold foreclosed
properties to third properties, the secured real estate
taxes were paid, creating a moving target for most taxing
authorities on which properties remained in the debtor's
names and those that were resold.

17. Due to the numerous amount of properties within the
county, it was a cumbersome task to update which
properties were sold or remained in the debtor's name.

18. Real property revenue is especially important to the
county coffers as its funds the important service the
county must provide including police, fire services,
schools and hospitals.

19. The amount originally at issue was approximately
$638,855.31 dollars with ninety-two (92) parcels at
issue. After reconciling the parcels, the amount
remaining is $193,498.62. This is a substantial amount
for the taxing authority to lose because the parcels
cannot be reconciled.

20. Counsel for Riverside stands willing and able to provide
the secured tax bills (debtor however, should have these
records) and title history if necessary.
Such records have not been requested prior to this
hearing.

21. Riverside respectfully requests that this court grant a
short extension to reconcile the parcels. In the

1    alternative to overrule the objection to the claim

2    because all of the parcels currently at issue have

3    defaulted secure real property taxes due and must be paid

4    to clear tax liens and title.

5    I declare under penalty of perjury that the foregoing is true

6    and correct.  Executed on this 7th day of September 2009 at

7    Whittier, California.

8                                    ROMERO LAW FIRM

9                                    By. /s/ Martha E. Romero
                                     MARTHA E. ROMERO, State Bar No.
10                                   128144
                                     ROMERO LAW FIRM
11                                   BMR Professional Building
                                     Whittier, California 90601
12                                   Phone (562) 907-6800
                                     Facsimile (562)907-6820
13                                   Attorneys for SECURED CREDITOR
                                     COUNTY OF RIVERSIDE, CALIFORNIA
14                                   TAXING AUTHORITY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT C

## Riverside County Supplemental Response

1  **UNITED STATES BANKRUPTCY COURT**

2  **DISTRICT OF DELAWARE**

3

4

In re                                      )    Case Number: 07-11047
5                                          )
AMERICAN HOME MORTGAGE HOLDINGS,           )    Chapter 11
6  INC., a Delaware corporation, <u>et</u> )
<u>al.</u>,                                )    SUPPLEMENTAL
7                                          )    RESPONSE TO OBJECTION TO
                                           )    CLAIM OF RIVERSIDE COUNTY
8                                          )    TAXING AUTHORITY, ONE OF
                Debtors.                   )    THE  CALIFORNIA TAXING
9                                          )    AUTHORITY AND THE
                                           )    DECLARATION OF MARTHA E.
10                                         )    ROMERO IN SUPPORT
_____   )    THEREOF(TWENTY-FIFTH
11                                              OMNIBUS OBJECTION)

12                                              Date: October 13, 2009
                                                Time: 11:30 a.m. ET
13

14       TO THE HONORABLE CHRISTOPHER S. SONTCHI UNITED STATES

15  BANKRUPTCY JUDGE AND TO INTERESTED PARTIES:

16       Riverside County, one of the California Taxing Authorities

17  hereby file its Supplemental Response to the Objection of its claim

18  (Twenty Fifth Omnibus Objection).

19       Riverside's original response was filed on September 7, 2009.

20       Originally there were ninety-two **(92)** parcels for a total of

21  $638,855.31 dollars. A proof of claim was filed in this amount.

22  The majority of these parcels have been paid and currently only 11

23  parcels remained as more particularly discussed below.

24       One of the debtors in the original petition filing is American

25  Home Mortgage Servicing Inc.  Attached hereto and made a part

26  thereof as Exhibit A us a true and correct copy of Schedule I to

27  the petition for the court's convenience indicated the name of this

28  particular debtor.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS.

Riverside Taxing Authority is mandated by the Constitution in Article XIII to collect all real property taxes on any real property in its jurisdiction.  The Riverside County Taxing Authority is the proper authority that collects the taxes.  It does not determine ownership.  Nor does it review title ownership reports.

In the Declaration of Melissa Johnson, concurrently filed with this supplemental response she states under penalty of perjury that the Taxing Authority does not determine title or ownership. Paragraph 6, page 2.  Further that such responsibilities are that of the Office of the Assessor to determine the responsibility party for the purposes of real property tax assessment.  Paragraph 6, page 2.  Once the responsibility party is determined, that party is placed on the tax roll.  Declaration of Johnson, paragraph 7, page 2.  The Taxing Authority subsequently collects the real property taxes and sends out bills. Declaration of Johnson, paragraph 8, page 2.

The responsible party that owns a particular piece of property as of January 1 of any given year ("The lien date" under California state law) is responsibility for the payment of real property taxes. Declaration of Johnson, paragraph 9, page 2.

Lastly, Ms. Johnson states that the Taxing Authority does not maintain records of title or ownership.  It does not have any access to public records of title or ownership. Declaration of Johnson, paragraph 10, page 2.

2

## II.  REAL PROPERTY TAX ASSESSMENTS ARE MANDATED

### UNDER CALIFORNIA LAW.

_____Under California State Law, every piece of real property is subject to taxation.[1]  California Revenue and Taxation Code section 401 states: "Every assessor shall assess all property subject to general property taxation at its full value."

Under California State Law, real property is to be assessed at the same percentage of fair market value.[2]

California Revenue and Taxation Code Section 401.3 provides that: "The assessor shall assess all property subject to general property taxation on the lien date as provided in Articles XIII and XIIIA of the Constitution. . . ."

In this particular case, assessment includes determination of the responsible party as noted above in the Declaration of Johnson. Paragraphs 6 and 7, page 2.

Real property taxes are assessed as of January 1 ("lien date") of the year in which taxes become due.[3]

---

[1] California Revenue and Taxation Code section 104 states: "Real estate or real property includes: (a) The possession of, claim to, ownership of or right to the possession of land."

[2] In California, property tax assessments consist of two components.  The first component is the assessed value.  The second is the tax rate.  The latter is applied against the former to calculate the amount of taxes due.  This equation is sometimes known as the tax ratio. For taxable real property, the assessed value is determined at the same percentage of fair market value. California Constitution Article XIII section 1.

[3] California Revenue and Taxation Code, section 117 states: "Lien date is the time when taxes for any fiscal year become a lien on the property." California Revenue and Taxation Code Section 118 defines assessment year as "the period beginning with a lien date and ending immediately prior to the succeeding lien date for taxes levied by the same agency."

Revenue and Taxation Code section 2192 states:" . . . all tax liens attach annually as of 12:01 a.m. on the first day of

3

1    In California, property taxes are _in rem_ and are payable only

2  through sale proceeds.  California Revenue and Taxation Code

3  Section 2187 states: " Every tax on real property is a lien against

4  the property assessed."  See _Long Beach v. Aistrap,_ 164 Cal. App.

5  2d 41 (1958).

6    Additionally, the real property taxes are a first lien on the

7  property. California Revenue and Taxation Code Section 2192.1

8  states:

9      Every tax declared in this chapter to be a lien on real

10     property . . . have priority over all other liens on the

11     property, regardless of the time of their creation.  Any tax .

12     . . described in the preceding sentence shall be given

13     priority over matters including but not limited to any

14     recognizance, deed, judgment, debt, obligation, or

15     responsibility with respect to which the subject real property

16     may become charged or liable.

17    Since the taxes a first priority lien on the property they are

18  a secured claim.

19    Additionally, California law requires that upon sale the taxes

20  be paid first.   California Revenue and Taxation Code Section

21  2192.2 states:

22    **Upon the sale**. . . conducted under judicial process or

23  otherwise by any sheriff, constable, trustee, receiver, or other

24  ministerial officer, **of any real property upon which ad valorem**

25  **property taxes . . . are due and unpaid at the time of sale**, the

26  _____

27    January preceding the fiscal year for which the taxes are
   levied..."
28

4

1  proceeds from that shall, after the payment of

2  necessary and incidental sale expenses, **be first applied to**

3  **the amount of those ad valorem property taxes** . . . and be

4  transmitted by the conducting officer to the office

5  responsible for the collection of those taxes and assessments.

6  Emphasis added.

7  **III.   ELEVEN PARCELS REMAIN THAT ARE PART OF THE CLAIM (81 PARCELS**

8  **HAVE BEEN PREVIOUSLY PAID.**

9  Only eleven properties remain in the Riverside Jurisdiction.

10  The debtors have not discovered deeds or title ownership for any of

11  the parcels listed below.

12  Counsel for Riverside has done and independent search of

13  property profiles on each property and each property profile is

14  hereby identified as an exhibit and is filed under separate cover.

15  The parcels are identified as follows:

16  Parcel No.          Amount    as of 9/3/0/09

17  312290021-6         $5255.04  American Home Mortg. Servicing

18  This property is in the name of one of the other debtors.

19  (Exhibit A) This primary owner is listed on the North American

20  Title Company Profile.   The report further reveals that the

21  trustee's deed upon sale was recorded on July 2, 2008.  The profile

22  is made a part thereof of this response as Exhibit B and filed

23  under separate cover.

24  Since the property taxes were due on January 1, the lien date

25  under California Revenue and Taxation Code Section 2192, the

26  property taxes were due on that date.

27  The 2008-09 secured real property taxes have not been paid. R

28  Additionally, the sale is subject to the lien and subject to

1  California Revenue and Taxation Code 2192.2

2      316220003-1           $2791.64   American Home Mortg. Servicing

3      This property is in the name of one of the other debtors.

4  (Exhibit A) This primary owner is listed on the North American

5  Title Company Profile.   The owner now shows Aida Debronia.   The

6  report further reveals that the trustee's deed upon sale was

7  recorded on July 29, 2008.   The seller was American Home Mortgage

8  Servicing Inc. Incidently Ms. Debaraona just purchased the property

9  from the debtor on September 24, 2009. The profile is made a part

10 thereof of this response as Exhibit B and filed under separate

11 cover.

12     Since the property taxes were due on January 1, the lien date

13 under California Revenue and Taxation Code Section 2192, the

14 property taxes were due on that date.

15     Riverside is not in the position to know whether or not an

16 agreement was made with the new owner Aida Debarona to pay the

17 2008-09 secured real property taxes, but they have not been paid.

18 Additionally, the sale is subject to the lien and subject to

19 California Revenue and Taxation Code 2192.2

20     389691001-7        $17,619.50   American Home Mortg.

21     This property is in the name of one of the other debtors.

22 (Exhibit A) This primary owner is listed on the North American

23 Title Company Profile.   The report further reveals that the

24 trustee's deed upon sale was recorded on February 7, 2008 to

25 American Home Mortgage.   The profile is made a part thereof of this

26 response as Exhibit D and filed under separate cover.

27     Subsequently American Home Mortgage deeded the property to

28 American Home Mortgage Servicing, Inc. on August 24, 2009.

6

1   Since the property taxes were due on January 1, the lien date
2   under California Revenue and Taxation Code Section 2192, the
3   property taxes were due on that date. The sales/transfers are
4   subject to the liens.

5   In this case the fiscal year taxes are due for fiscal tax
6   years 2006-07, 2007-08 and 2008-09. Riverside is not in the
7   position to know whether or not agreements were made with the prior
8   owners to pay these secured real property taxes, but they have not
9   been paid. Additionally, the sale is subject to the lien and
10  subject to California Revenue and Taxation Code 2192.2

11  *   447174010-2          $ 839.79  American Home Mortg. Servicing

12  This property is in the name of one of the other debtors.
13  (Exhibit A) This primary owner is listed on the North American
14  Title Company Profile.   The report further reveals that the
15  trustee's deed upon sale was recorded on June 27, 2008 to American
16  Home Mortgage Servicing.   The profile is made a part thereof of
17  this response as Exhibit E and filed under separate cover.

18  Since the property taxes were due on January 1, the lien date
19  under California Revenue and Taxation Code Section 2192, the
20  property taxes were due on that date. The sales/transfers are
21  subject to the liens.

22  In this case the fiscal year taxes are due for fiscal tax
23  years 2008-09. Riverside is not in the position to know whether or
24  not agreements were made with the prior owners to pay these secured
25  real property taxes, but they have not been paid.  Additionally,
26  the sale is subject to the lien and subject to California Revenue
27  and Taxation Code 2192.2

28  547212022-1          $1721.77  American Home Mortg. Servicing

7

1    This property is in the name of one of the other debtors.
2  (Exhibit A) This primary owner is listed on the North American
3  Title Company Profile.   The report further reveals that the
4  trustee's deed upon sale was recorded on May 12, 2008 to American
5  Home Mortgage.   The profile is made a part thereof of this response
6  as Exhibit F and filed under separate cover.

7    Since the property taxes were due on January 1, the lien date
8  under California Revenue and Taxation Code Section 2192, the
9  property taxes were due on that date. The sales/transfers are
10 subject to the liens.

11   In this case the fiscal year taxes are due for fiscal tax
12 years 2008-09. Riverside is not in the position to know whether or
13 not agreements were made with the prior owners to pay these secured
14 real property taxes, but they have not been paid.   Additionally,
15 the sale is subject to the lien and subject to California Revenue
16 and Taxation Code 2192.2

17   657082011-4      $14,005.80  American Home Mortg.

18   This property is in the name of the debtor. This primary owner
19 is listed on the North American Title Company Profile.   The report
20 further reveals that the trustee's deed upon sale was recorded on
21 May 30, 2007 to American Home Mortgage.   The profile is made a part
22 thereof of this response as Exhibit G and filed under separate
23 cover.

24   Since the property taxes were due on January 1, the lien date
25 under California Revenue and Taxation Code Section 2192, the
26 property taxes were due on that date. The sales/transfers are
27 subject to the liens.

28   In this case the fiscal year taxes are due for fiscal tax

8

years 2005-06, 2007-08 and 2008-09. It appears that the 2006-07
taxes were paid.

Riverside is not in the position to know whether or not
agreements were made with the prior owners to pay these secured
real property taxes, but they have not been paid.  Additionally,
the sale is subject to the lien and subject to California Revenue
and Taxation Code 2192.2

677302207-6              $2033.95  American Home Mortg. Servicing

This property is in the name of one of the other debtors.
(Exhibit A) This primary owner is listed on the North American
Title Company Profile.   The report further reveals that the
trustee's deed upon sale was recorded on July 17, 2008 to American
Home Mortgage Servicing.   The profile is made a part thereof of
this response as Exhibit H and filed under separate cover.

Since the property taxes were due on January 1, the lien date
under California Revenue and Taxation Code Section 2192, the
property taxes were due on that date. The sales/transfers are
subject to the liens.

In this case the fiscal year taxes are due for fiscal tax
years 2008-09. Riverside is not in the position to know whether or
not agreements were made with the prior owners to pay these secured
real property taxes, but they have not been paid.  Additionally,
the sale is subject to the lien and subject to California Revenue
and Taxation Code 2192.2

916500042-7              $3242.16  American Home Mortg. Servicing

This property was in the name of one of the other debtors.
(Exhibit A) This primary owner is listed on the North American
Title Company Profile. It is now Olive Alfonso, however the

9

property was acquired just recently on August 28, 2009.   The
report further reveals that the trustee's deed upon sale was
recorded on July 16, 2008 to American Home Mortgage Servicing.   The
profile is made a part thereof of this response as Exhibit I and
filed under separate cover.

Since the property taxes were due on January 1, the lien date
under California Revenue and Taxation Code Section 2192, the
property taxes were due on that date. The sales/transfers are
subject to the liens.

In this case the fiscal year taxes are due for fiscal tax
years 2008-09. Riverside is not in the position to know whether or
not agreements were made with the new owners to pay these secured
real property taxes, but they have not been paid.   Additionally,
the sale is subject to the lien and subject to California Revenue
and Taxation Code 2192.2

*     964330029-2     $2940.81   American Home Mortg. Servicing
This property is in the name of one of the other debtors.
(Exhibit A) This primary owner is listed on the North American
Title Company Profile.   The report further reveals that the
trustee's deed upon sale was recorded on July 29, 2008 to American
Home Mortgage Servicing.   The profile is made a part thereof of
this response as Exhibit J and filed under separate cover.

Since the property taxes were due on January 1, the lien date
under California Revenue and Taxation Code Section 2192, the
property taxes were due on that date. The sales/transfers are
subject to the liens.

In this case the fiscal year taxes are due for fiscal tax
years 2008-09. Riverside is not in the position to know whether or

1   not agreements were made with the prior owners to pay these secured

2   real property taxes, but they have not been paid.  Additionally,

3   the sale is subject to the lien and subject to California Revenue

4   and Taxation Code 2192.2

5        000229551-8              $1215.82   American Home Mortg.

6        000229551-8              $ 937.64   American Home Mortg.

7        This property is a multi-suite office building and there are

8   numerous owners to these parcel numbers. It does not appear that

9   the debtor owns this property but may have a business at this

10  location.  Riverside is currently obtaining additional information

11  as to the tax liability as it may be on personal property.

12       The grand total of the secured real property taxes is

13  $52,603.92.  This amount is subject to interest under 11 U.S. C.

14  Section 511 and California Revenue and Taxation Code Section 4103.

15       The debtor has provided the following comments:

16       The owners of two properties 447174010-2 and 964330029-2 did

17  not waive escrow. These loans were sold by AHM in 2005. It is my

18  understanding, however, that the AHM servicing company did collect

19  real estate taxes for these properties, and did, in fact, pay the

20  first installments of the real estate taxes for these

21  properties. When AHM sold its servicing business in 2007, the

22

23  servicing for these loans was transferred to the Wilbur Ross entity

24  that purchased the servicing business. Any outstanding taxes that

25  are due should be addressed to them, as they would have the funds

26  that were withheld for payment of the taxes.

27       **Query:** if the loan were sold in 2005, why are the tax bills

28  still reflected in their name as owners.

Response to 447174010-2

The report, Exhibit E for 447174010-2 reveals that the trustee's deed upon sale was recorded on June 27, 2008 to American Home Mortgage Servicing.   The proper procedure for changing the name on these bills is to prepare the proper notice to the Assessor. The Assessor determines the responsible party.

Riverside shall provide additional time for the new entity Wilbur Ross and the old entity AHM Servicing to clear up the records with the Assessor.

In addition the real property secured taxes at stake are for the 2008-09 fiscal tax year and AHM Servicing acquired it on June 27, 2008.

Response to 964330029-2

*   964330029-2   $2940.81  American Home Mortg. Servicing

This property is in the name of the servicing company and listed on the North American Title Company Profile.   The report further reveals that the trustee's deed upon sale was recorded on July 29, 2008 to American Home Mortgage Servicing.   See Exhibit J. The loan company may have sold the loans but the title to the real property is in the name of the debtor.

The debtors further stated with respect to the remaining properties for which statements were provided the property owners for these six of the properties waived escrows, meaning that AHM never collected the real estate taxes from these property owners. As a result, AHM has no funds to pay Riverside for these

12

properties and has no obligation, in the absence of proof of ownership, to pay these taxes.

**Query:** Nine parcels still exist with secured delinquent property taxes. (Not only six)

Again the bills are in the name of the debtor entity.  Once the Assessor determines the responsible party the name appears on the tax bill until the taxpayer changes the record.

Again, Riverside will give the debtor ample time to change the record so that title will be reflected in other than the debtor's name.

### IV.   RIVERSIDE IS WILLING TO RESOLVE THE OBJECTION BY STIPULATING THAT THE SECURED REAL PROPERTY TAXES CAN BE PAID UPON SUBSEQUENT TRANSFERS OF THE PROPERTY IN THE NORMAL AND ORDINARY COURSE OF SALE/TRANSFER.

The type of situation that has existed in this case is that properties have been foreclosed without the payment of secured real property taxes. However, the foreclosures are subject to the lien. This is exactly what was contemplated in the Disclosure statement wherein it provided for payment in the normal and ordinary course of subsequent transfer and/or sale.

The California Taxing Authorities obtained language in the disclosure statement which stated:

> Illustration: Assume a State taxing authority has a claim
> for real property taxes secured by a first-priority lien
> on REO property that is transferred from a Debtor to the

13

1  Plan Trust on the Effective Date.

2  Because the claim is not specifically identified in the

3  Plan, the claim is a Miscellaneous Secured Claim.  To the

4  extent there is value in the REO in excess of the taxes

5  owed, the Allowed Miscellaneous Secured Claim will

6  include interest and any reasonable fees, costs, or

7  charges payable under the State statute giving rise to

8  the claim.  Under the Plan, the Plan Trustee may elect

9  between reinstating the tax claim as it existed prior to

10  the Effective Date and paying the real property taxes in

11  accordance with State law (e.g., upon closing of a sale

12  of the REO), paying the tax claim in full (either in a

13  lump sum on the Effective Date, or over time, with

14  interest), or tendering the REO satisfaction of the tax

15  claim.  If the Plan Trustee chooses to pay the tax claim

16  over time, the tax lien will continue in the property

17  until the claim is paid in full.  If the Plan Trustee

18  chooses to reinstate the tax claim as it existed prior to

19  the Effective Date, then the rights of the taxing

20  authority will be unimpaired by the Plan, and the taxing

21  authority will be entitled to exercise any remedies

22  available to it under applicable State law to obtain

23  timely payment of the real estate taxes.

24  The trustee has the full right to have the taxes paid upon the

25  closing of the REO and/or as if they were unimpaired under the plan

26  ie in the normal course of sale/transfer.

27

28

14

This was confirmed in the confirmation order and further confirms that the secured real property taxes can be paid in the ordinary course of transfer/sale:

"Notwithstanding any provisions to the contrary in the Plan or this order, solely with respect tot he claims of the Objection California Taxing Authorities (1) the allowed pre-petition secured claims of the OCTA will be paid with interest from the petition date through the Effective Date pursuant to 11 U.S.C. Section 506(b) at their statutory rate as required under 11 U.S.C. Section 511 and to the extent allowed will be paid with interest from the Effective Date through the date of payment at the statutory rate. **Such claims of the OCTA may be paid at any time including during the ordinary course of business when the real property is sold** and or transferred and if no objections have been filed, such claims will be paid on the later of the claim objection bar date or, if a timely objection is filed within 10 business days after entry of an order of the Court allowing such claim. The OLTTA shall retain their liens for such claims on the collateral or the proceeds therefrom, until such time as the taxes are paid in full' and (ii) the debtors shall timely pay the allowed ad valorem taxes of the OCTA incurred post petition in the ordinary course of business. If such taxes are not timely

15

paid, them the Debtor's or the Plan Trustee shall pay such taxes and any additional allowed penalties and/or interest arising pursuant to applicable non-bankruptcy law.  Further the OCTA shall retain their liens on their collateral or the proceeds therefrom if such collateral has been sold until such time as the post-petition taxes have been paid in full."

Riverside requests assurance that these taxes will be paid in the normal course but the taxes do not need to be paid from the plan.

## V.   CONCLUSION.

Riverside respectfully requests that this court order that the payment of the tax liens be paid from the estate or directly from each sale of the real property to the third party as explained above.

Dated: October 1, 2009          ROMERO LAW FIRM

By. /s/ Martha E. Romero
MARTHA E. ROMERO, State Bar No. 128144
ROMERO LAW FIRM
BMR Professional Building
Whittier, California 90601
Phone (562) 907-6800
Facsimile (562)907-6820
Attorneys for SECURED CREDITOR
COUNTY OF RIVERSIDE, CALIFORNIA
TAXING AUTHORITY

16

1              UNITED STATES BANKRUPTCY COURT

2                 DISTRICT OF DELAWARE

3

4

|  |  |
|---|---|
| In re | Case Number: 07-11047 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al., | Chapter 11 |
| | SUPPLEMENTAL DECLARATION OF MELISSA JOHNSON IN SUPPORT OF RESPONSE TO OBJECTION TO CLAIM OF RIVERSIDE COUNTY TAXING AUTHORITY, ONE OF THE CALIFORNIA TAXING AUTHORITY AND THE DECLARATION OF MARTHA E. ROMERO IN SUPPORT THEREOF (TWENTY-FIFTH OMNIBUS OBJECTION) |
| Debtors. | |

Date: OCTOBER 13, 2009
Time: 11:30 a.m. ET

TO THE HONORABLE CHRISTOPHER S. SONTCHI UNITED STATES BANKRUPTCY JUDGE AND TO INTERESTED PARTIES:

Riverside County, one of the California Taxing Authorities hereby files the Declaration of Melissa Johnson in support of the Supplemental Response to the Objection of its claim (Twenty Fifth Omnibus Objection).

I, Melissa Johnson declare:

1.     I am employed by the County of Riverside, Office of the Treasurer and Tax Collector.  I am aware of the facts in the case.  My title is Chief Deputy Treasurer-Tax Collector. I am employed by the County of Riverside, Office of the Treasurer and Tax Collector. My responsibilities include overseeing the payment of both real property and personal property taxes.

1

2.   I make this declaration in support of the Supplemental
     Response to the Objection of its claim (Twenty Fifth
     Omnibus Objection).

3.   The facts set forth are of my own personal knowledge and
     if called to testify in a court of law, I could and
     would, competently testify thereto.

4.   The Office of the Treasurer and Tax Collector is mandated
     to collect real and personal property taxes.

5.   The real property taxes are secured upon the real estate
     value at approximately 1% of the value.

6.   This office does not determine title or ownership.  Such
     responsibilities are that of the Office of the Assessor
     to determine the responsibility party for the purposes of
     real property tax assessment.

7.   Once the responsibility party is determined, that party
     is placed on the tax roll.

8.   The Office of the Treasurer and Tax Collector
     subsequently collects the real property taxes and sends
     out bills.

9.   The responsible party that owns a particular piece of
     property as of January 1 of any given year ("The lien
     date" under California state law) is responsible for the
     payment of real property taxes.

10.  The Office of the Treasurer and Tax Collector does not
     maintain records of title or ownership.  It does not have
     any access to public records of title or ownership
     without paying for those records just as the general
     public would.

2

1      I declare under penalty of perjury that the foregoing is true

2  and correct. Executed on the 1st day of October 2009 at Riverside,

3  California

4

5  By_____

6  Melissa Johnson
    Declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

**Portion of October 14, 2009 hearing transcript**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF DELAWARE

```
IN RE:                        )
                             )
                             )          Bankruptcy Action
AMERICAN HOME MORTGAGE        )          07-11047-CSS
HOLDINGS, INC., a            )
Delaware Corporation,        )          Chapter 11
et als.,                     )
              Debtors,       )
                             )          Wilmington, DE
                             )          October 14, 2009
                             )          9:00 a.m.
```

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          SEAN M. BEACH, ESQUIRE
                         MARGARET WHITEMAN GREECHER, ESQUIRE
                         MICHAEL S. NEIBURG, ESQUIRE
                         Young, Conaway, Stargatt & Taylor
                         The Brandywine Building
                         1000 West Street, 17th Floor
                         Wilmington, Delaware 19801

For Triad Guaranty:      MICHAEL BUSENKELL, ESQUIRE
                         Womble, Carlyle
                         222 Delaware Avenue
                         Wilmington, Delaware 19801

                         RICHARD RICE, ESQUIRE
                         Womble, Carlyle
                         One West Fourth Street
                         Winston-Salem, NC 27101

Audio Operator:          Leslie Murin

Transcribed by:          DIANA DOMAN TRANSCRIBING
                         P.O. Box 129
                         Gibbsboro, New Jersey   08026-129
                         PHONE:  (856)435-7172
                         FAX:    (856) 435-7124
                         Email:  Dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

Claims Objections                           Page 8

1    claimant?  All right.  I'll grant the objection as modified.

2           MR. NEIBURG:  Thank you, Your Honor.  May I approach

3    with the order, Your Honor?

4           THE COURT:  Yes.

5                           (Pause)

6           THE COURT:  Thank you.

7           MR. NEIBURG:  Next is agenda matter number 23, Your

8    Honor, which pertains to the debtors' twenty-fifth omnibus

9    objection and claims.

10          The debtors had intended on moving forward with

11   respect to the objection of Riverside County.  Prior to the

12   hearing, the parties have agreed to cap the amount at -- so it

13   would be no greater than $52,603.92.

14          But the parties have reserved all rights at the next

15   hearing to address the merits of the claim.  And we'll submit

16   an order reflecting this agreement to Your Honor.

17          THE COURT:  Okay.  Does anyone wish to be heard on

18   that?  All right.  That's fine with the Court.

19          MR. NEIBURG:  Thank you, Your Honor.  And at this

20   time, for agenda matter number 24, Your Honor, I'd like to cede

21   the podium to my colleague Margaret Greecher.

22          THE COURT:  Good morning.

23          MS. GREECHER:  Good morning, Your Honor.  Margaret

24   Whiteman Greecher from Young, Conaway on behalf of the debtors.

25   The next matter on the agenda is the forty-second omnibus

# EXHIBIT E

## Summary Chart

| Assessment Number | Property | Claimed Tax Years | AHM Loan # | Escrows Waived | Date Sold | Securitization | Foreclosure Date | REO Status | REO Sale Completed | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| 3896911001-7 | 3369 Fir Circle Lake Elsinore, CA 92530 | 2006-2007; 2007-2008; 2008-2009 | 1469361 | Yes | 5/15/2007 | AHMIT 2007-SD2 | 7/7/2008 | Completed REO | 9/30/2010 | Taxes are current. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 9/30/2010. |
| 391402026-3 | 26738 Kicking Horse Dr. Corona, CA 92883 | 2008-2009 | 1257704 | Yes | 3/13/2007 | AHMIT 2007-SD1 | 4/17/2007 | Completed REO | 12/31/2008 | Taxes are current. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 12/31/2008. |
| 4471174010-2 | 616 S Santa Fe St Hemet, CA 92543 | 2008-2009 | 841744 | No | 6/22/2005 | AHMIT 2005-2 | 6/20/2008 | Completed REO | 1/5/2010 | Taxes are current. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 1/05/2010. |
| 547212022-1 | 1822 Rue Chenin Blanc San Jancinto, CA 92583 | 2008-2009 | 786316 | Yes | 6/22/2005 | AHMIT 2005-2 | 5/5/2008 | Completed REO | 10/29/2009 | Taxes are current. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 10/29/2009. |
| 6570822011-4 | 16465 Via El Rancho Desert Hot Springs, CA 92240 | 2005-2006; 2007-2008; 2008-2009 | 1194926 | Yes | 12/28/2006 | AHMIT 2005-3 | 5/17/2007 | Completed REO | 9/25/2009 | The claimed taxes have been paid. There are outstanding taxes, however, the Debtors sold this loan to AHMIT 2006-3 on 12/28/06. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 9/25/2009. |
| 6773022007-6 | 30456 San Antonio Dr. Cathedral City, CA 92234 | 2008-2009 | 764295 | Yes | 3/31/2005 | AHMIT 2005-2 | 7/9/2008 | Completed REO | 11/3/2009 | Taxes are current. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 11/03/2009. |

| Assessment Number | Property | Claimed Tax Years | AHM Loan # | Escrows Waived | Date Sold | Securitization | Foreclosure Date | REO Status | REO Sale Completed | Status |
|---|---|---|---|---|---|---|---|---|---|---|
| 916500042-7 | 40183 Albany Ct Temecula, CA 92591 | 2008-2009 | 1456192 | Yes | 12/11/2006 | MARM 2007-1 | 7/8/2008 | Completed REO | 8/28/2009 | Taxes are current. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 8/28/2009. |
| 964330029-2 | 36841 Pebley Ct Winchester, CA 92596 | 2008-2009 | 876373 | No | 7/27/2005 | AHMIT 2005-2 | 7/16/2008 | Completed REO | 10/30/2009 | Taxes are current. Moreover, non-debtor AHMSI is not the current owner as the REO sale was completed 10/30/2009. |
| 1235500015-2 | 3221 Cutting Horse Road Norco, CA 92860 | 2005-2006; 2006-2007; 2007-2008 | 1535281 | Yes | 6/6/2007 | AHMA 2007-3 Core Deal | 12/12/2007 | Completed REO | 8/25/2009 | The claimed taxes have been paid. There are outstanding taxes however neither the Debtors nor non-debtor AHMSI are the owners for the tax years for which taxes are due. The REO sale was completed 8/25/2009. |

# EXHIBIT F

## Screenshots from Riverside County Website



Riverside County, California
## Office of the Treasurer-Tax Collector

Home | New Search | Latest Search Results | Installment Payments | FAQ | Contact Us | Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 389591001-7 | 1st | 12-10-2010 | Paid | $4,403.87 | Add To List |
| | | 2nd | 04-11-2011 | Due | $4,403.87 | Add To List |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment with the stub in the envelope provided. Payment must be postmarked on or before the extended date. If you choose to make your payment online by credit card or electronic check, the amount will include penalty which will NOT be subsequently waived or refunded.

Riverside County, California
# Office of the Treasurer-Tax Collector

| Home | Search | Tax Sale Auctions | Payments | FAQ | Contact Us | Property Tax Portal |

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|--------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 391402026-3 | 1st | 12-10-2010 | Paid | $1,728.53 | Paid |
|  |  | 2nd | 04-11-2011 | Paid | $1,571.23 | Paid |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment with the stub in the envelope provided. Payment must be postmarked on or before the extended date. If you choose to make your payment online by credit card or electronic check, the amount will include penalty which will NOT be subsequently waived or refunded.

Riverside County, California
## Office of the Treasurer-Tax Collector

[ Home | Search | About General Results | Payment Results | FAQs | Contact Us | Unclaim Tax | Portal ]

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

#### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|-------------|
| View Tax Bill | 443174010-2 | 1st | 12-10-2010 | Paid | $192.27 | Add To List |
|  |  | 2nd | 04-11-2011 | Due | $192.27 | Add To List |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment with the stub in the envelope provided. Payment must be postmarked on or before the extended date. If you choose to make your payment online by credit card or electronic check, the amount which will include penalty which will NOT be subsequently waived or refunded.

Property Tax Payments - Search Results - Windows Internet Explorer

https://taxpayments.co.riverside.ca.us/SearchResults.aspx

File Edit View Favorites Tools Help

Favorites

Riverside County, California

## Office of the Treasurer-Tax Collector

Home | Search | View Search Results | Payment List | FAQ | Contact Us | Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|-------------|
| View Tax Info | 547212023-1 | 1st | 12-10-2010 | Paid | $183.73 | Add To Link |
| | | 2nd | 04-11-2011 | Due | $183.73 | Add To List |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment with the stub in the envelope provided. Payment must be postmarked on or before the extended date. If you choose to make your payment online by credit card or electronic check, the amount which will include penalty which will NOT be subsequently waived or refunded.

Internet    100%



Riverside County, California
## Office of the Treasurer-Tax Collector

Home | Search | Index | Search Results | Payment List | FAQ | Contact Us | Property View | Print

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

#### Secured Assessments

| View | Assessment # | Installment # | Due Date | Status | Amount | Payment List |
|------|--------------|---------------|----------|--------|--------|--------------|
| View Tax Info | 657082011-4 | 1st | 12-10-2010 | Due | $791.31 | Add To List |
|  |  | 2nd | 04-11-2011 | Due | $719.39 | Add Both |

#### Secured Prior Year Assessments

| View | Assessment # | Status | Amount | Payment List |
|------|--------------|--------|--------|--------------|
| Payment Options | 657082011-4 | Due | $1,466.59 | Options |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment with the stub in the envelope provided. Payment must be postmarked on or before the extended date. If you choose to make your payment online by credit card or electronic check, the amount will include penalty which will NOT be subsequently waived or refunded.



Riverside County, California
## Office of the Treasurer-Tax Collector

Home | Search | New Search | Search Results | Payments | FAQs | Contact | Property Tax Portal

### Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

#### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|-------------|
| View Tax Info | 677302007-6 | 1st | 12-10-2010 | Paid | $766.46 | Add To List |
|  |  | 2nd | 04-11-2011 | Due | $766.46 | Add To List |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment with the stub in the envelope provided. Payment must be postmarked on or before the extended date. If you choose to make your payment online by credit card or electronic check, the amount which include penalty which will NOT be subsequently waived or refunded.



Property Tax Payments - Search Results - Windows Internet Explorer

https://taxpayments.co.riverside.ca.us/SearchResults.aspx

Treasurer & Tax Collector (County

File   Edit   View   Favorites   Tools   Help

Search the web

Favorites   Click here to go to Search S...

Wholesale   Click here to go to Search S...   Suggested Sites   AHM Citrix   AHM Intranet   AHM Outlook Web Access   Web Site

Riverside County, California

## Office of the Treasurer-Tax Collector

Home | Search | Last Search Results | Payment List | FAQs | Contact Us | Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|--------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 916500042-7 | 1st | 12-10-2010 | Paid | $1,677.40 | Add To List |
| | | 2nd | 04-11-2011 | Due | $1,677.40 | Add To List |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment



Property Tax Payments - Search Results - Windows Internet Explorer

https://taxpayments.co.riverside.ca.us/SearchResults.aspx

File    Edit    View    Favorites    Tools    Help

Riverside County, California

## Office of the Treasurer-Tax Collector

Home | Search | Tax Search Results | Payment List | FAQ | Comments | Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 964330029-2 | 1st | 12-10-2010 | Paid | $1,676.07 | Paid |
| | | 2nd | 04-11-2011 | Paid | $1,676.07 | Paid |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment



Property Tax Payments - Search Results - Windows Internet Explorer

https://taxpayments.co.riverside.ca.us/SearchResults.aspx

File   Edit   View   Favorites   Tools   Help

Search the web

Favorites   Click here to go to Search S...   Suggested Sites ▼   Wholesale   Page ▼   Safety ▼   Tools ▼

Create PDF   AHM Citrix   AHM Intranet   AHM Outlook Web Access   Foxit Messages ▼   Foxit Online Services ▼   Products ▼   CNN   Web Slice

Identified by Ent



Riverside County, California

## Office of the Treasurer-Tax Collector

Home | Search | Last Search Results | Payment List | FAQ | Contact Us | Property Tax Portal

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|--------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 123550015-2 | 1st | 12-10-2010 | Due | $63.43 | Add To List |
|  |  | 2nd | 04-11-2011 | Due | $57.67 | Add Both |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment

# EXHIBIT G

## Emails b/w counsel re:
## no liability on taxes claimed by POC No. 10504

**Bradley, Eileen**

| | |
|---|---|
| **From:** | Neiburg, Michael |
| **Sent:** | Monday, May 02, 2011 11:29 AM |
| **To:** | 'Martha Romero' |
| **Subject:** | FW: AHM - claim 10504 filed by Riverside County |

Ms. Romero,

Please see the email below for the Debtors' position on POC No 10504. When you have a moment, kindly review after which may I ask that you call me to discuss. As I indicated during our call last month, we need to resolve POC No 10504 as soon as possible.

Thanks

Michael S. Neiburg
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: 302-576-3590
Facsimile: 302-576-3559
MNeiburg@ycst.com

---

**From:** Eileen Wanerka [mailto:eileen.wanerka@americanhm.com]
**Sent:** Monday, April 04, 2011 4:12 PM
**To:** Neiburg, Michael
**Subject:** RE: AHM - claim 10504 filed by Riverside County

See below.

The assessments highlighted in yellow are all included in Riverside County's administrative claim, 10854, and will be addressed in that claim.

The assessment highlighted in red has no outstanding taxes due as per the claimant's website. Screen shot evidencing this is below.

The assessments highlighted in green are for 2009 taxes and the debtor's have no interest in these properties as AHMSI was sold in April 2008.

We still find that claim 10504 should be expunged in its entirety. We will address claim 10854 in an upcoming omnibus.





### Riverside County, California
### Office of the Treasurer-Tax Collector

| Home | Search | Last Search Results | Payment List | FAQ | Contact Us | Property Tax Portal |

## Property Tax Payments - Search Results

Listed below are all taxes related to the assessment number you entered that are due at this time. If you entered a supplemental number and it is not listed below, it may be included in the Secured Prior Year Assessment or already paid.

To make a payment, select an option in the Payment List column.

For Secured and Supplemental property taxes the first installment must be paid on the Payment List before a second installment can be added.

### Secured Assessments

| View | Assessment # | Installment | Due Date | Status | Amount | Payment List |
|------|-------------|-------------|----------|--------|--------|--------------|
| View Tax Info | 391402026-3 | 1st | 12-10-2010 | Paid | $1,728.33 | Paid |
| | | 2nd | 04-11-2011 | Paid | $1,571.23 | Paid |

Proceed to Payment List

If you received a corrected bill which gives an extended date allowing payment without penalty, you must mail your payment with the stub in the envelope provided. Payment must be postmarked on or before the extended date. **If you choose to make your payment online by credit card or electronic check, the amount will include penalty which will NOT be subsequently waived or refunded.**

---

Thank you,
Eileen Wanerka
AHM Liquidating Trust
Direct Line: 631-622-2414
ewanerka@americanhm.com

-----Original Message-----
From: Neiburg, Michael [mailto:MNeiburg@ycst.com]
Sent: Monday, March 14, 2011 8:15 PM
To: 'eileen.wanerka@americanhm.com'
Subject: Fw: AHM - claim 10504 filed by Riverside County

See below...seems they are trying to say we owe 2010 taxes. Let's touch base after you've had to time to review. Thanks.

----- Original Message -----
From: Robert Guerra [mailto:guerra@mromerolawfirm.com]
Sent: Monday, March 14, 2011 04:44 PM
To: Neiburg, Michael
Subject: RE: AHM - claim 10504 filed by Riverside County

Here's the updated list of taxes that have NOT been paid --

Assessment:     000-229-551-8
Situs: 3739 Adams St., Riverside, CA 92504
Amount: $1,439.38 (2008)
                $1,276.36 (2009)
                $1,118.45 (2010)

Assessment:     052-842-837-1
Situs: 30145 Hardrock Dr., Romoland, CA 92585
Amount: $97.11 (2008)

Assessment:    001-195-857-8
Situs:  45146 Riverstone Ct., Temecula, CA 92592
Amount: $101.45 (2008)

Assessment:    001-197-323-8
Situs:  25272 Billie Dr., Moreno Valley, CA 92553
Amount: $93.85 (2009)

Assessment: 052-783-971-6
Situs:  39540 Corbett Canyon Cir., Murrieta, CA 92563
Amount: $19.20 (2008)

Assessment:  052-796-089-0
Situs:  937 Montague Cir., Corona, CA 92879
Amount:         $1,031.41 (2007)

Assessment:  052-885-970-0
Situs:  25401 Yolanda Ave., Moreno Valley, CA 92551
Amount: $230.67 (2009)

Parcel: 130-491-010-7
Situs:  8001 Slate Creek Rd., Corona, CA 92880
Amount: $4,360.02 (2010- 2nd Installment)

Parcel: 164-445-001-3
Situs:  6015 Larry Dean St., Corona, CA 92880
Amount: $3,051.79 (2010- 2nd installment)

Parcel: 419-424-011-0
Situs:  1132 Sandpiper Dr., Beaumont, CA 92223
Amount: $5,181.71 (2010)
                $5,713.30 (2009)
                $3,167.51 (2008)

Parcel: 774-134-017-6
Situs:  53645 Avenida Navarro, La Quinta, CA 92253
Amount: $2,109.63 (2010)







Robert Guerra
ROMERO LAW FIRM
6516 Bright Ave.
Whittier, CA 90601
(562) 907-6800 ph
(562) 907-6820 fax
Email: Guerra@mromerolawfirm.com

-----Original Message-----
From: Martha Romero
Sent: Monday, March 14, 2011 12:20 PM
To: Robert Guerra
Subject: FW: AHM - claim 10504 filed by Riverside County

-----Original Message-----
From: Neiburg, Michael [mailto:MNeiburg@ycst.com]
Sent: Monday, March 07, 2011 8:44 AM
To: Martha Romero
Subject: RE: AHM - claim 10504 filed by Riverside County

Sounds good. Thanks.

Michael S. Neiburg
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Phone: (302) 576-3590
Facsimile: (302) 576-3559
MNeiburg@ycst.com

-----Original Message-----
From: romero@mromerolawfirm.com [mailto:romero@mromerolawfirm.com]
Sent: Monday, March 07, 2011 11:25 AM
To: Neiburg, Michael
Subject: Re: AHM - claim 10504 filed by Riverside County

I am in court all day but I will get back to you Sent via BlackBerry by
AT&T

-----Original Message-----
From: "Neiburg, Michael" <MNeiburg@ycst.com>
Date: Fri, 4 Mar 2011 10:08:12
To: 'Martha Romero'<Romero@mromerolawfirm.com>
Subject: RE: AHM - claim 10504 filed by Riverside County

Ms. Romero,

Sorry to bother. Any updates on confirming with your client that taxes
have been paid in full?

Thanks

Michael S. Neiburg
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Phone: (302) 576-3590
Facsimile: (302) 576-3559
MNeiburg@ycst.com

-----Original Message-----
From: Martha Romero [mailto:Romero@mromerolawfirm.com]
Sent: Wednesday, February 09, 2011 2:01 AM
To: Neiburg, Michael
Subject: RE: AHM - claim 10504 filed by Riverside County

I am still working on this.


Martha E. Romero
Romero Law Firm
6516 Bright Avenue
Whittier, CA 90601
(562) 907-6800 phone
(562) 907-6820 facsimile



-----Original Message-----
From: Neiburg, Michael [mailto:MNeiburg@ycst.com]
Sent: Tuesday, January 25, 2011 4:04 PM
To: Martha Romero
Subject: AHM - claim 10504 filed by Riverside County

Dear Miss Romero,

As you will recall, the Debtors and Riverside County had previously
agreed in Oct. 2009 to cap the amount claimed by Riverside County on
account of claim no. 10504 at $52,603.92 (the "Remaining Amount"), with
the parties reserving all rights with respect to the Remaining Amount.
A recent review of the relevant records indicates that the taxes claimed
on account of the remaining parcels have been paid.  For your review,
please see the attached spreadsheet, which also includes screenshots
from the county's website showing that as of this date, no taxes claimed
by claim no. 10504 remain due and owing to Riverside County.  That being
said, absent word to the contrary from Riverside County, the AHM
Liquidating Trust will seek entry of an order disallowing the Remaining
Amount at the next omnibus hearing.

Do not hesitate to contact me with any questions or concerns.

Regards,

Michael S. Neiburg
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
Phone: (302) 576-3590
Facsimile: (302) 576-3559
MNeiburg@ycst.com

To ensure compliance with requirements imposed by the Internal Revenue
Service in Circular 230 on tax practitioners, we inform you that, unless
we expressly state otherwise in this communication (including any
attachments), any federal tax advice contained in this communication is
not intended or written to be used, and cannot be used, for the purpose
of (i) avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing, or recommending to another party any transaction
or other matter addressed herein.
This message may contain confidential attorney-client communications or
other protected information.  If you believe you are not an intended
recipient (even if this message was sent to your e-mail address), you
may not use, copy, or retransmit it.  If you believe you received this
message by mistake, please notify us by return e-mail, and then delete
this message.  Thank you for your cooperation.

# EXHIBIT H

## Douglas Huston – POC No. 2196

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: | Chapter 11 |
|---|---|
| American Home Mortgage Holdings, Inc., et al. Debtors. | Case No. 07-11047 (CSS) Jointly Administered |

Name of Debtor Against Which Claim is Held
Douglas W. Huston

Case No. of Debtor

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

Douglas Huston

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)     0000002196

Telephone numbe
Email Address:

Account or other number by which creditor identifies debtor: 0601

Check here if this claim:
☐ replaces    ☐ amends a previously filed claim, dated:

| 1. | Basis for Claim | |
|---|---|---|
| | ☐ Goods sold | |
| | ☐ Services performed | |
| | ☐ Money loaned | |
| | ☐ Personal injury/wrongful death | |
| | ☐ Taxes | |
| | ☐ Other_____ (explain) | |

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☒ Wages, salaries, and com _____ (fill out below)
Last Four Digits of your SS#:
Unpaid compensation for services performed
from 6/1/07 (date) to 7/30/07 (date)   override

2. Date debt was incurred:

3. If court judgment, date obtained:

4. Total Amount of Claim at Time Case Filed:  $ 7,099 12 (unsecured nonpriority) + _____ (secured) + 10,950 (unsecured priority) = 18,049 12 (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle
☐ Other _____
Value of Collateral: $ _____
Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

6. **Unsecured Nonpriority Claim:** $ 7,099 12
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

EPIQ BANKRUPTCY SOLUTIONS, LLC
NOV 15 2007
FILED / RECEIVED

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| 11/12/07 | |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

|  |  | 2 bp override | paid on Aug 3rd | owed |
|---|---|---|---|---|
| June Closings | $ 64,491,191 | $ 12,898.24 | $ 6,449.12 | $ 6,449.12 |
| July Closings | $ 58,000,000 | $ 11,600.00 |  | $ 11,600.00 |
|  |  |  |  | $ 18,049.12 |

# EXHIBIT I

## Huston Response

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------x

In re:                                                                    Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE HOLDINGS,                      Chapter 11
INC., et al.,
                                                                          Objection Deadline: May 8, 2009
                              Debtors.                                    Related Docket Nos. 6825 & 7084

----------------------------------------------------------x

### RESPONSE OF DOUGLAS HUSTON TO DEBTORS' THIRTY-FIRST AND TWENTY-EIGHTH OMNIBUS OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1 (DOCKET NOS. 6825 AND 7084)

Douglas Huston ("Huston"), by and through his counsel, responds to the *Debtors'
Thirty-First Omnibus Objection to Claims Pursuant to Section 502(b) of the Bankruptcy
Code, Bankruptcy rules 3003 and 3007, and Local Rule 3007-1* ("31st Objection") and
*Twenty-Eighth Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code,
Bankruptcy rules 3003 and 3007, and Local Rule 3007-1* ("28th Objection", and
collectively with the 31st Objection, the "Objections"; D.I. 6825 and 7084) and states as
follows:

### FACTUAL BACKGROUND

1.      Huston was an employee of American Home Mortgage.

2.      Huston's employment was controlled by an employment contract which
was executed by Huston and American Home Mortgage.

3.      Huston was laid off suddenly.

4.      On August 6, 2007, the Debtor and its debtor-affiliates (the "Debtors")
filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court.

## THE CONTRACT

5.     Pursuant to the terms of Huston's employment contract, upon information and belief, he was to receive (i) deferred compensation from the Debtor, (ii) semi-monthly basis point payments from the Debtor and (iii) a yearly bonus based on the basis point compensation from the Debtor.

## THE DEBTOR'S TERMINATION OF THE CONTRACT

6.     The Debtor terminated Huston's employment contract leaving Huston with unpaid deferred compensation, semi-monthly salary payments and bonuses.

## THE PROOFS OF CLAIM AND THE OBJECTIONS

7.     On November 12, 2007, Huston filed a proof of claim (POC 2196), seeking payment for unpaid semi-monthly wages which he suffered as a result of the Debtor's termination of his employment. In the proof of claim, Huston asserted a priority claim in the amount of $10,950.00 and an unsecured non-priority claim in the amount of $7,099.12.

8.     On March 6, 2009, the Debtors filed their 31st Objection to Huston's claim no. 2196. In the 31st Objection, the Debtors asserted that the unpaid semi-monthly wages indicated by Huston were not supported by sufficient documentation. Debtors are requesting the Court's permission to expunge Huston's entire claim.

9.     On November 12, 2007, Huston filed a proof of claim (POC 2197), seeking payment for an unpaid bonus which he suffered as a result of the Debtor's termination of his employment. In the proof of claim, Huston asserted an unsecured non-priority claim in the amount of $96,200.00.

10.     On January 9, 2009, the Debtors filed their 28th Objection to Huston's claim no. 2197. In the 28th Objection, the Debtors asserted that the proof of claim was filed without correlation to a debtor entity. Debtors are requesting the Court's approval to assign the claim to a specific debtor entity.

11.     On November 12, 2007, Huston filed a proof of claim (POC 2196), seeking payment for unpaid semi-monthly wages which he suffered as a result of the Debtor's termination of his employment. In the proof of claim, Huston asserted a priority claim in the amount of $10,950.00 and an unsecured non-priority claim in the amount of $7,099.12.

12.     On January 9, 2009, the Debtors filed their 28th Objection to Huston's claim no. 2196. In the 28th Objection, the Debtors asserted that the proof of claim was filed without correlation to a debtor entity. Debtors are requesting the Court's approval to assign the claim to a specific debtor entity.

## RESPONSE TO THE OBJECTIONS

13.     Pursuant to Fed. R. Bankr. P. 3001(f) the filing of a proof of claim with proper documentation provides prima facie evidence of the validity and amount of the claim. Huston has previously provided the Debtors with proper documentation to support his claim no. 2196. Attached to Huston's claim no. 2196 was a spreadsheet indicating the amounts for which he claimed a pre-petition claim for and the months for which each amount was related. Additionally, the Debtors' own books and records should reflect that they have not paid Huston for his semi-monthly earnings for June and July. Attached hereto as Exhibit "A" is additional documentation supporting Huston's claim.

14.    It should also be noted that "the mere filing of a proof of claim is prima facie evidence of its validity, with the burden of disproving it upon the objector." *Sloan's Furriers v. Bradley*, 146 F.2d 757 (C.C.A.6 1945).    The Debtors have presented no evidence to prove their basis for their objection. Furthermore, "the Court will not sustain objections to claims based simply on the fact that the claim disagrees with the debtor's books and records. More evidence is needed to overcome the prima facie validity of a proof of claim." *In re American Business Financial Services, Inc.*, 2008 WL 1702095 (April 10, 2008 Bankr. D. Del.) (footnote).    The Debtors have not provided the Court with proper evidence to overcome the prima facie validity of the proof of claim.

15.    The Debtors' 28th Objection seeks to assign Huston's claim no. 2196 and claim no. 2197, however, the Debtors do not indicate which debtor entity they wish to assign these claims.    Therefore, without further information of assignment, Huston objects to such assignment.

WHEREFORE, Huston respectfully requests that this Court enter an order (i) overruling the Objections, (ii) allowing Huston's proof of claim no. 2196 as submitted, (iii) requiring the Debtors to identify the debtor entity assignment of claim no. 2196 and claim no. 2197, and (iv) granting such other and further relief to Huston as is appropriate.

Wilmington, Delaware
Dated: May 8, 2009

> Respectfully submitted,
> MARGOLIS EDELSTEIN
>
> _____/s/James E. Huggett_____
> James E. Huggett (No. 3956)
> 750 Shipyard Drive, Suite 102
> Wilmington, DE  19801
> Telephone: (302) 888-1112
> Facsimile: (302) 888-1119
> Counsel to Douglas Huston

# EXHIBIT J

## Chart attached as Exh. A to Huston Response

| Area Drilldown | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4030 Huston | 370,609,927 | 64,491,191 | 69,130,681 | 63,573,902 | 68,716,823 | 52,037,267 | 52,660,063 | 54,450,629 | 51,953,971 | 55,067,834 | 60,072,593 | 68,148,173 | 62,158,746 |
| Array | 60,947,403 | 7,130,755 | 11,548,519 | 12,744,091 | 11,820,161 | 7,861,129 | 9,842,748 | 13,796,500 | 14,810,422 | 12,758,867 | 15,531,023 | 15,149,390 | 14,543,092 |
| Grand Total | 431,557,330 | 71,621,946 | 80,679,200 | 76,317,993 | 80,536,984 | 59,898,396 | 62,502,811 | 68,247,129 | 66,764,393 | 67,826,701 | 75,603,616 | 83,297,563 | 76,701,838 |

| LO Branch Drilldown | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Array Hampton Roads VA 2310 | 24,424,970 | 3,430,250 | 5,052,324 | 5,743,305 | 4,913,060 | 2,547,629 | 2,738,402 | 6,112,738 | 3,656,605 | 5,408,748 | 7,022,701 | 5,587,762 | 3,836,727 |
| Array Paden Team VA 2306 | 2,362,843 | 302,815 | 815,000 | 364,300 | 426,050 | 226,773 | 227,905 | 229,500 | 405,000 | 224,627 | 209,000 | 864,585 | 995,671 |
| Array Richmond VA 2312 | 4,645,155 | 1,219,201 | 961,895 | 560,959 | 734,400 | 722,400 | 446,300 | 632,900 | 991,174 | 216,000 | 1,102,750 | 1,484,250 | 926,700 |
| Array Roanoke VA 2303 | 1,889,937 | 112,824 | 61,925 | 272,000 | 449,571 | 243,677 | 749,940 | 344,058 | 512,459 | 519,475 | 1,374,192 | 1,191,012 | 846,734 |
| Array Will Carder VA 2307 | 6,220,122 | 1,298,665 | 1,031,728 | 659,127 | 819,660 | 1,877,950 | 532,992 | 621,204 | 691,174 | 418,640 | 1,252,191 | 1,632,931 | 411,460 |
| Grand Total | 39,543,027 | 6,363,755 | 7,922,872 | 7,599,691 | 7,342,741 | 5,618,429 | 4,695,539 | 7,940,400 | 6,256,412 | 6,787,490 | 10,960,834 | 10,760,540 | 7,017,292 |

| LO Branch Drilldown | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Array Hampton Roads VA 2310 | 24,424,970 | 3,430,250 | 5,052,324 | 5,743,305 | 4,913,060 | 2,547,629 | 2,738,402 | 6,112,738 | 3,656,605 | 5,408,748 | 7,022,701 | 5,587,762 | 3,836,727 |
| Array Paden Team VA 2306 | 2,362,843 | 302,815 | 815,000 | 364,300 | 426,050 | 226,773 | 227,905 | 229,500 | 405,000 | 224,627 | 209,000 | 864,585 | 995,671 |
| Array Richmond VA 2312 | 4,645,155 | 1,219,201 | 961,895 | 560,959 | 734,400 | 722,400 | 446,300 | 632,900 | 991,174 | 216,000 | 1,102,750 | 1,484,250 | 926,700 |
| Array Roanoke VA 2303 | 1,889,937 | 112,824 | 61,925 | 272,000 | 449,571 | 243,677 | 749,940 | 344,058 | 512,459 | 519,475 | 1,374,192 | 1,191,012 | 846,734 |
| Array Will Carder VA 2307 | 6,220,122 | 1,298,665 | 1,031,728 | 659,127 | 819,660 | 1,877,950 | 532,992 | 621,204 | 691,174 | 418,640 | 1,252,191 | 1,632,931 | 411,460 |
| Grand Total | 39,543,027 | 6,363,755 | 7,922,872 | 7,599,691 | 7,342,741 | 5,618,429 | 4,895,539 | 7,940,400 | 6,256,412 | 6,787,490 | 10,960,834 | 10,760,540 | 7,017,292 |

| LO Branch Drilldown | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Durham Lyckan NC 2047 | 7,777,170 | 1,821,075 | 1,162,310 | 1,567,474 | 1,118,339 | 750,665 | 1,357,307 | 2,072,760 | 1,032,160 | 606,854 | 1,432,986 | 2,158,671 | 813,855 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fayetteville Breezewood NC 2048 | 21,145,969 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 747,141 | 740,980 | 1,324,827 | 1,447,850 |
| Raleigh National NC 2050 | 28,923,139 | 3,249,094 | 2,289,393 | 3,096,450 | 5,761,436 | 3,523,020 | 3,226,576 | 2,806,366 | 1,975,704 | 2,735,750 | 4,350,925 | 5,116,245 | 3,459,958 |
| Grand Total | | 5,070,169 | 3,451,703 | 4,663,924 | 6,879,775 | 4,273,685 | 4,583,883 | 4,879,126 | 6,203,839 | 4,089,745 | 6,524,891 | 8,599,743 | 5,721,663 |
| Andrew Jordan | 7,559,843 | 416,127 | 991,644 | 1,447,576 | 1,460,768 | 1,702,219 | 1,541,519 | 1,590,223 | 1,152,051 | 1,650,640 | 1,863,897 | 1,675,339 | 2,427,291 |
| Audrey E. Clement | 3,837,367 | 442,118 | 1,032,921 | 1,170,828 | 577,000 | 471,500 | 143,000 | 812,257 | 920,077 | | 241,071 | 201,235 | 829,400 |
| Bob Crist | 6,489,964 | 812,373 | 1,514,910 | 1,405,950 | 810,229 | 1,071,502 | 875,000 | 1,087,488 | 371,317 | 416,998 | 538,441 | 1,038,617 | 940,270 |
| Ilonka Avila | 382,299 | 0 | 0 | 164,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jennifer Blanks | | 0 | 0 | 137,500 | 218,299 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| John Holda | 3,438,169 | 248,382 | 521,695 | 827,388 | 1,090,947 | 216,448 | 1,223,197 | 634,000 | 192,200 | 460,896 | 826,951 | 786,800 | 756,500 |
| Maryann Bradley | 155,268 | 0 | 0 | 0 | 0 | 155,268 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Michael Mapes | 1,677,296 | 123,068 | 726,840 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Sharon Haywood | 3,620,938 | 86,275 | 816,340 | 1,547,114 | 696,658 | 140,000 | 334,551 | 479,005 | 524,070 | 481,476 | 1,165,176 | 460,800 | 1,373,519 |
| Sue Carden | 1,484,938 | 310,000 | 330,825 | 844,113 | 0 | 0 | 0 | 321,670 | 333,000 | 640,121 | 601,608 | 343,000 | 258,450 |
| Todd Bradley | 4,051,601 | 609,500 | 707,524 | 616,295 | 1,232,250 | 225,767 | 660,265 | 620,687 | 568,298 | 877,850 | 198,500 | 732,989 | 111,650 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Grand Total | 32,697,683 | 3,047,843 | 6,642,699 | 8,160,764 | 6,086,141 | 3,982,704 | 4,777,532 | 5,545,330 | 4,061,013 | 4,527,981 | 5,435,644 | 5,238,780 | 6,697,080 |
| Bill Wood | 296,000 | 0 | 296,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Bob Hausmann | 4,982,231 | 457,525 | 786,309 | 2,231,221 | 704,266 | 251,910 | 551,000 | 347,592 | 570,000 | 1,950,320 | 720,550 | 1,331,750 | 795,250 |
| Bonnie Tenhoeve | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Daniel Rushing | 274,783 | 274,783 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Erik Fink | 278,100 | 0 | 0 | 278,100 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jay Gould | 2,570,013 | 835,051 | 376,000 | 269,250 | 326,200 | 630,512 | 133,000 | 125,000 | 725,348 | 763,750 | 324,000 | 667,100 | 1,010,098 |
| Jenny Cannon | 2,313,137 | 652,673 | 344,500 | 246,189 | 506,725 | 130,050 | 433,000 | 1,169,400 | 652,810 | 1,419,404 | 354,000 | 471,814 | 771,700 |
| Mike Posta | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 674,100 |
| Grand Total | 10,714,264 | 2,220,032 | 1,802,809 | 3,024,760 | 1,537,191 | 1,012,472 | 1,117,000 | 1,641,992 | 1,948,158 | 4,133,474 | 1,398,550 | 2,470,664 | 3,251,148 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dana Lucas | 15,655,297 | 2,334,846 | 4,718,357 | 2,188,532 | 2,867,840 | 3,545,722 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Denise Good-Julian | 1,986,954 | 376,000 | 0 | 160,050 | 1,196,146 | 254,758 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Norman Latva | 125,149 | 0 | 125,149 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Trina Hay | 2,671,203 | 234,990 | 714,415 | 606,067 | 1,015,145 | 100,586 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Grand Total | 20,438,603 | 2,945,836 | 5,557,921 | 2,954,649 | 5,079,131 | 3,901,066 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ALEXANDER SCHULZ | 1,310,320 | 98,000 | 0 | 782,550 | 0 | 274,770 | 155,000 | 674,636 | 131,265 | 0 | 130,935 | 943,762 | 128,000 |
| Cathy Fowler | 4,507,035 | 1,203,337 | 2,033,246 | 1,270,452 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Cecily Hooks | 2,283,551 | 206,374 | 464,134 | 297,607 | 364,451 | 625,980 | 325,005 | 675,622 | 806,676 | 555,332 | 970,811 | 471,933 | 0 |
| Dana Lucas | 1,398,879 | 0 | 0 | 125,875 | 84,118 | 415,821 | 773,085 | 1,367,832 | 2,630,218 | 1,824,791 | 3,405,867 | 2,601,103 | 3,213,619 |
| Dario Romo | 1,094,464 | 217,750 | 0 | 0 | 109,600 | 99,000 | 595,320 | 0 | 0 | 0 | 0 | 0 | 0 |
| Denise Good-Julian | 1,176,423 | 72,794 | 0 | 0 | 265,055 | 0 | 911,368 | 379,729 | 444,081 | 339,255 | 834,415 | 645,473 | 759,717 |
| Eugene Fitzpatrick | 1,355,585 | 809,750 | 121,985 | 0 | 143,000 | 145,000 | 135,850 | 35,000 | 1,035,468 | 0 | 0 | 270,600 | 275,000 |
| JENNIFER SIMMERSON | 889,161 | 133,666 | 364,350 | 215,490 | 0 | 0 | 175,655 | 0 | 615,234 | 95,402 | 353,290 | 517,602 | 276,050 |
| Joseph Keever | 14,601,236 | 2,214,166 | 2,554,922 | 2,031,202 | 3,545,649 | 2,448,770 | 1,806,527 | 504,979 | 707,143 | 148,000 | 469,618 | 195,387 | 145,713 |
| Joseph Klakulak | 6,797,409 | 942,004 | 1,320,900 | 1,460,512 | 1,414,741 | 1,659,252 | 0 | 2,406,508 | 1,215,015 | 1,204,285 | 1,236,585 | 1,362,409 | 1,428,520 |
| Kelly Yanez | 4,183,204 | 791,104 | 343,347 | 1,127,950 | 1,188,485 | 197,333 | 534,985 | 96,000 | 537,649 | 438,948 | 811,474 | 0 | 0 |
| Leslie Idle | 1,351,693 | 0 | 0 | 0 | 100,000 | 570,451 | 681,242 | 655,722 | 363,610 | 345,071 | 1,392,625 | 684,514 | 860,424 |
| Matthew Schoolfield | 4,191,013 | 916,000 | 371,500 | 238,300 | 1,518,303 | 394,400 | 752,510 | 396,247 | 581,927 | 1,327,356 | 867,050 | 925,158 | 2,092,695 |
| Michelle Hines | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Penny Suggs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 258,777 | 88,609 | 224,529 | 150,604 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Ralph Smith | 24,920,041 | 5,008,421 | 4,905,414 | 3,049,979 | 2,974,992 | 3,134,970 | 3,584,976 | 5,846,265 | 3,080,790 | 3,025,161 | 2,459,458 | 2,245,259 | 2,506,876 |
| RICKY DEESE | 3,921,885 | 824,587 | 922,556 | 525,800 | 127,687 | 749,115 | 0 | 772,140 | 1,611,644 | 573,966 | 913,232 | 681,642 | 826,553 |
| Scott Wallace | 0 | 0 | 0 | 0 | 0 | 0 | 985,603 | 0 | 304,662 | 883,661 | 916,139 | 1,117,384 | 1,403,654 |
| SUZANNE DEVINE | 31,330,020 | 6,984,235 | 5,934,688 | 4,660,735 | 5,371,584 | 3,748,881 | 3,180,031 | 4,629,897 | 6,802,499 | 6,638,386 | 6,452,882 | 10,660,196 | 9,587,442 |
| Ted Pappas | 157,250 | 0 | 0 | 0 | 0 | 0 | 157,250 | 642,892 | 717,564 | 839,741 | 868,419 | 502,354 | 1,201,055 |
| Trina Hay | 298,500 | 0 | 0 | 0 | 0 | 93,500 | 205,000 | 161,595 | 0 | 1,433,900 | 429,100 | 587,992 | 384,093 |
| Grand Total | 105,767,669 | 20,204,438 | 19,554,792 | 15,786,452 | 17,207,665 | 14,557,243 | 18,457,079 | 15,747,372 | 21,585,445 | 19,932,032 | 22,600,508 | 24,637,297 | 25,240,015 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Deb Martin | 7,200,254 | 1,938,933 | 2,880,316 | 490,521 | 553,194 | 1,068,790 | 268,500 | 0 | 0 | 0 | 0 | 0 | 0 |
| Eric Storm | 5,684,423 | 1,648,778 | 755,744 | 645,594 | 1,613,930 | 444,462 | 575,915 | 467,210 | 824,000 | 0 | 0 | 0 | 0 |
| Sam Opoku | 228,000 | 0 | 0 | 0 | 0 | 228,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Grand Total | 13,112,677 | 3,587,711 | 3,636,060 | 1,136,115 | 2,167,124 | 1,741,252 | 844,415 | 467,210 | 824,000 | 0 | 0 | 0 | 0 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Brian Morris | 3,973,737 | 1,242,165 | 767,157 | 681,630 | 0 | 993,235 | 289,550 | 175,000 | 179,445 | 290,550 | 385,000 | 0 | 460,500 |
| Chris Shelton | 1,341,005 | 192,555 | 259,050 | 225,000 | 266,700 | 232,700 | 165,000 | 0 | 0 | 258,400 | 0 | 290,350 | 0 |
| Connie Piner | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 189,623 |
| Dan Piner | 447,340 | 0 | 0 | 336,000 | 111,340 | 0 | 0 | 0 | 0 | 241,490 | 0 | 0 | 0 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Debbie Sheets | 4,511,510 | 969,088 | 427,195 | 460,074 | 975,116 | 1,041,507 | 638,530 | 668,324 | 311,000 | 511,720 | 599,742 | 1,261,102 | 1,615,367 |
| Jackie Wampler | 14,326,597 | 1,990,969 | 2,439,179 | 2,805,350 | 2,287,524 | 1,854,878 | 2,948,697 | 2,340,168 | 2,911,734 | 2,541,629 | 3,533,445 | 3,610,357 | 2,442,877 |
| Jason Haley | 12,288,106 | 2,947,303 | 1,259,539 | 1,664,600 | 3,011,748 | 1,473,741 | 1,931,175 | 2,460,977 | 725,710 | 2,340,163 | 3,024,471 | 2,124,123 | 419,732 |
| Jody Fleming | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 310,500 | 0 | 0 |
| John Gates | 2,057,601 | 0 | 0 | 622,550 | 236,000 | 393,090 | 805,961 | 0 | 0 | 0 | 0 | 0 | 229,950 |
| Kristine Broadwell | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Kyle Williams | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Loraine Cooke | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 16,000 | 0 |
| Michael Lassiter | 4,957,391 | 783,791 | 1,035,000 | 336,200 | 1,011,400 | 582,200 | 1,208,800 | 0 | 513,436 | 465,840 | 1,448,243 | 1,877,163 | 153,100 |
| Philip Jawny | 22,646,922 | 3,481,256 | 4,776,121 | 3,218,795 | 4,357,385 | 3,531,315 | 3,282,050 | 3,421,749 | 3,472,419 | 2,328,401 | 2,404,704 | 2,329,299 | 5,298,836 |
| Scott Tilghman | 3,173,079 | 674,450 | 304,000 | 145,432 | 116,303 | 1,643,144 | 289,750 | 810,000 | 0 | 461,500 | 134,000 | 463,500 | 450,500 |
| Zac Cooke | 1,270,070 | 0 | 0 | 159,920 | 490,700 | 108,500 | 510,950 | 270,000 | 270,000 | 293,190 | 297,250 | 144,000 | 734,172 |
| Grand Total | 70,993,358 | 12,281,577 | 11,267,241 | 10,655,551 | 12,864,216 | 11,854,310 | 12,070,463 | 9,876,217 | 8,383,744 | 9,732,883 | 12,137,355 | 12,115,894 | 11,994,657 |
| Darcy J. Coles | 409,200 | 0 | 299,200 | 110,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Marvin Giddens | 1,513,044 | 128,800 | 166,400 | 295,213 | 0 | 429,951 | 492,680 | 518,876 | 803,378 | 63,995 | 720,769 | 0 | 0 |
| Matt DesRoches | 3,081,050 | 159,300 | 324,900 | 742,800 | 1,434,050 | 0 | 420,000 | 1,484,333 | 585,000 | 576,200 | 0 | 0 | 922,127 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Noelle Blythe | 2,074,500 | 345,000 | 296,000 | 0 | 451,900 | 921,600 | 60,000 | 428,313 | 0 | 802,695 | 364,000 | 0 | 0 |
| Pattie Edgerton | 17,307,743 | 5,182,641 | 3,087,437 | 3,903,406 | 1,958,979 | 1,440,280 | 1,735,000 | 2,684,210 | 1,762,841 | 2,661,472 | 1,631,085 | 1,968,373 | 1,046,310 |
| Thomas Fiorillo | 7,086,500 | 650,000 | 0 | 2,641,500 | 3,795,000 | 0 | 0 | 3,803,000 | 0 | 1,019,550 | 595,000 | 0 | 0 |
| Grand Total | 31,472,037 | 6,465,741 | 4,173,937 | 7,692,919 | 7,639,929 | 2,791,831 | 2,707,680 | 8,918,732 | 3,151,219 | 5,123,912 | 3,310,854 | 1,968,373 | 1,968,437 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bill Hagna | 7,450,377 | 216,000 | 1,641,900 | 1,120,022 | | 1,338,550 | 3,133,905 | 1,217,350 | 1,138,000 | 907,000 | 997,800 | 2,670,000 | 922,200 |
| Daniel Rushing | 2,561,853 | 0 | 422,177 | 469,600 | 642,200 | 598,400 | 429,516 | 0 | 253,600 | 515,322 | 782,000 | 0 | 423,439 |
| David Michaud | 11,630,621 | 1,375,283 | 2,750,279 | 2,266,441 | 2,218,420 | 1,442,518 | 1,577,680 | 1,977,990 | 1,497,004 | 2,456,802 | 2,681,941 | 1,753,010 | 1,980,660 |
| Deborah Bruno | 6,540,565 | 1,316,000 | 783,600 | 2,150,845 | 887,081 | 1,078,039 | 325,000 | 977,350 | 514,897 | 510,000 | 855,000 | 979,000 | 775,533 |
| Douglas Huston | 525,500 | | 0 | 500,100 | 0 | 25,400 | 0 | 824,800 | 698,140 | 543,582 | 892,700 | 3,194,394 | 1,345,295 |
| Guy Rogers | 5,076,853 | 351,610 | 1,746,031 | 432,705 | 1,008,000 | 330,000 | 1,208,507 | 957,035 | 813,000 | 726,000 | 0 | 1,747,326 | 815,920 |
| Janine Steckler | 1,138,549 | 0 | 0 | 141,000 | 320,000 | 677,549 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Kathy Brinn | 1,417,474 | 0 | 616,601 | 435,123 | 0 | 0 | 365,750 | 0 | 414,900 | 0 | 254,000 | 779,582 | 317,200 |
| Kyle Gray | 813,105 | 162,055 | 651,050 | | 0 | 0 | 0 | 0 | 0 | 0 | 201,435 | 0 | 0 |
| Lisa Carter | 275,702 | 0 | 0 | 0 | 0 | 275,702 | 0 | 0 | 171,612 | 231,880 | 0 | 0 | 0 |
| Mark Johnson | 1,468,850 | 518,000 | 625,000 | 0 | 325,850 | 0 | 0 | 208,000 | 206,400 | 0 | 333,900 | 0 | 0 |
| Mary Mick | 5,005,773 | 1,711,052 | 875,683 | 262,500 | 1,379,538 | 579,000 | 198,000 | 0 | 0 | 0 | 0 | 0 | 0 |
| Grand Total | 43,905,262 | 5,650,000 | 10,112,321 | 7,778,336 | 6,781,089 | 6,345,158 | 7,238,358 | 6,162,525 | 5,707,553 | 5,890,586 | 6,998,776 | 11,123,312 | 6,580,247 |

| Employee Name | YTD | Last Month $ | Last Month-1 $ | Last Month-2 $ | Last Month-3 $ | Last Month-4 $ | Last Month-5 $ | Last Month-6 $ | Last Month-7 $ | Last Month-8 $ | Last Month-9 $ | Last Month-10 $ | Last Month-11 $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Christine Serio | 353,399 | 353,399 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| J. Mansisidor | 2,051,000 | 897,000 | 442,000 | 0 | 344,000 | 368,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Jennifer Blanks | 1,519,917 | 405,475 | 0 | 238,017 | 243,300 | 447,529 | 185,596 | 394,125 | 89,000 | 640,221 | 566,352 | 244,645 | 630,499 |
| Julie Davis | 1,419,650 | 757,170 | 218,998 | 271,440 | 172,042 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Karla R. Maki | 2,819,909 | 0 | 604,700 | 0 | 1,054,960 | 482,192 | 678,057 | 818,000 | 0 | 997,000 | 0 | 572,500 | 0 |
| Kimberly Loftin | 944,858 | 0 | 360,000 | 584,858 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Maryann Bradley | 953,202 | 0 | 0 | 253,117 | 420,260 | 279,825 | 0 | 0 | 0 | 0 | 335,000 | 0 | 0 |
| Randal Walker | 1,844,800 | 604,800 | 1,000,000 | 0 | 240,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Grand Total | 11,906,735 | 3,017,844 | 2,625,698 | 1,347,432 | 2,474,562 | 1,577,546 | 863,653 | 1,212,125 | 89,000 | 1,637,221 | 901,352 | 817,145 | 630,499 |

# EXHIBIT K

## Pay History

## [FILED UNDER SEAL]

**FILED UNDER SEAL**

# EXHIBIT L

## David Michaud – POC No. 7184

## [PORTIONS FILED UNDER SEAL]

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>American Home Mortgage Claims Processing Center<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | | **PROOF OF CLAIM** |
|---|---|---|
| In Re:<br>American Home Mortgage Holdings, Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered | Filed: USBC - District of Delaware<br>American Home Mortgage Holdings, Inc., Et Al.<br>07-11047 (CSS)    0000007184 |
| Name of Debtor Against Which Claim is Held<br>American Home Mtg Corp | Case No. of Debtor<br>07-11051 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor : (and name and address where notices should be sent if different from Creditor)

AHM (MERGE2.DBF,Txnum2) Txnum2 #: 4000001571*****
MICHAUD, DAVID P.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone number:
Email Address:

Account or other number by which creditor identifies debtor:
**N/A**

Check here if this claim:
☐ replaces ☒ amends a previously filed claim, dated: 10-15-07

1. **Basis for Claim**
   - ☐ Goods sold
   - ☐ Services performed
   - ☐ Money loaned
   - ☐ Personal injury/wrongful death
   - ☐ Taxes
   - ☐ Other_____ (explain)

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☒ Wages, salaries, and compensation (fill out below)
Last Four Digits of your SS#: _____
Unpaid compensation for services performed
from 1-01-04 to 8/5/07

2. **Date debt was incurred:**
   1-1-04 to 8-5-07

3. **If court judgment, date obtained:**
   N/A

4. **Total Amount of Claim at Time Case Filed:** $ 43,452 + _____ + 10,950 = 54,402.00
   (unsecured nonpriority)    (secured)    (unsecured priority)    (Total)
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).
   Brief Description of Collateral:
   ☐ Real Estate  ☐ Motor Vehicle
   ☐ Other _____
   Value of Collateral: $_____
   Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

6. **Unsecured Nonpriority Claim:** $ 43,452
   ☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

7. **Unsecured Priority Claim.**
   ☒ Check this box if you have an unsecured priority claim
   Amount entitled to priority $ 10,950.00
   Specify the priority of the claim:
   ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
   ☒ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
   **DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED / RECEIVED**

**JAN - 7 2008**

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date<br>1/3/08 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any) | |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**THIS PORTION OF CLAIM 7184
FILED UNDER SEAL**

# EXHIBIT M

## Michaud Response

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
```
In re:                                                  Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE HOLDINGS,                        Chapter 11
INC., et al.,

                                                        **Objection Deadline: May 8, 2009**
                          Debtors.                      **Related Docket Nos. 7084**
```
-------------------------------------------------------x
```

**RESPONSE OF DAVID MICHAUD TO DEBTORS' THIRTY-FIRST OMNIBUS
OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE
BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL
RULE 3007-1 (DOCKET NO. 7084)**

David Michaud ("Michaud"), by and through his counsel, responds to the

*Debtors' Thirty-First Omnibus Objection to Claims Pursuant to Section 502(b) of the*

*Bankruptcy Code, Bankruptcy rules 3003 and 3007, and Local Rule 3007-1* ("31ˢᵗ

Objection") and states as follows:

### FACTUAL BACKGROUND

1.      Michaud was an employee of American Home Mortgage.

2.      Michaud's employment was controlled by an employment contract which

was executed by Michaud and American Home Mortgage.

3.      Michaud was laid off suddenly.

4.      On August 6, 2007, the Debtor and its debtor-affiliates (the "Debtors")

filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court.

## THE CONTRACT

5.      Pursuant to the terms of Michaud's employment contract, upon information and belief, he was to receive (i) deferred compensation from the Debtor, (ii) override payments from the Debtor and (iii) earned bonuses from the Debtor.

## THE DEBTOR'S TERMINATION OF THE CONTRACT

6.      The Debtor terminated Michaud's employment contract leaving Michaud with unpaid deferred compensation, overrides and bonuses.

## THE PROOF OF CLAIM AND THE OBJECTION

7.      On January 7, 2008, Michaud filed a proof of claim (POC 7184), seeking payment for unpaid deferred compensation, overrides and bonuses for which he suffered as a result of the Debtor's termination of his employment.  In the proof of claim, Michaud asserted a priority claim in the amount of $10,950.00 and an unsecured non-priority claim in the amount of $43,452.00.

8.      On March 6, 2009, the Debtors filed their 31st Objection to Michaud's claim no. 7184.  In the 31st Objection, the Debtors asserted that the unpaid deferred compensation, overrides and bonuses indicated by Michaud were not consistent with the "debtors' books and records for deferred compensation".  Debtors are requesting the Court's permission to modify Michaud's claim to an unsecured non-priority claim in the amount of $27,390.10.

## RESPONSE TO THE OBJECTION

9.      Pursuant to Fed. R. Bankr. P. 3001(f) the filing of a proof of claim with proper documentation provides prima facie evidence of the validity and amount of the claim.  Michaud has previously provided the Debtors with proper documentation to

support his claim no. 7184. Additionally, the Debtors' own books and records should reflect that they have not paid Michaud for his deferred compensation or his overrides and earned bonuses. Attached hereto as Exhibit "A" is additional documentation supporting Michaud's claim.

10. It should also be noted that "the mere filing of a proof of claim is prima facie evidence of its validity, with the burden of disproving it upon the objector." *Sloan's Furriers v. Bradley*, 146 F.2d 757 (C.C.A.6 1945). The Debtors have presented no evidence to prove their basis for their objection. Furthermore, "the Court will not sustain objections to claims based simply on the fact that the claim disagrees with the debtor's books and records. More evidence is needed to overcome the prima facie validity of a proof of claim." *In re American Business Financial Services, Inc.*, 2008 WL 1702095 (April 10, 2008 Bankr. D. Del.) (footnote). The Debtors have not provided the Court with proper evidence to overcome the prima facie validity of the proof of claim.

WHEREFORE, Michaud respectfully requests that this Court enter an order (i) overruling the Objection, (ii) allowing Michaud's proof of claim no. 7184 as submitted, and (iii) granting such other and further relief to Michaud as is appropriate.

Wilmington, Delaware
Dated: May 8, 2009

Respectfully submitted,
MARGOLIS EDELSTEIN

_____/s/James E. Huggett_____
James E. Huggett (No. 3956)
750 Shipyard Drive, Suite 102
Wilmington, DE 19801
Telephone: (302) 888-1112
Facsimile: (302) 888-1119

Counsel to David Michaud

# EXHIBIT N

**Pay Voucher**

**[FILED UNDER SEAL]**

**FILED UNDER SEAL**

# EXHIBIT O

## Compensation Plan

## COLUMBIA NATIONAL, INCORPORATED
### RETAIL BRANCH MANAGER COMPENSATION PLAN

### Overview

Components of the standard compensation plan for Columbia National, Incorporated ("CNI" or the "Company") retail branch managers include the following: **override** based on branch manager's production as a percentage of total branch volume; **personal production; override** on satellite branch volume; **monthly and annual profitability bonuses;** and **expense reimbursement.** The following compensation information applies to existing branches. Compensation for managers of new branches will initially be based upon prearranged guidelines (which may include a fixed salary component) set forth by the appropriate regional manager; however, in no case will a manager of a new branch be paid a salary for more than two years.

### Retail Branch Manager Override

There are three levels under which a branch manager may be compensated. The levels are based on the branch manager's personal production as a percentage of total branch volume during the month.

### Level 1
If a branch manager's personal production accounts for less than 25% of the monthly branch volume, the branch manager receives 10 basis points on total branch production (including personal production) for that month.

### Level 2
If a branch manager's personal production accounts for between 25% and 75% of the monthly branch volume, the branch manager receives 5 basis points on personal production and 10 basis points on all other branch production for that month.

### Level 3
If a branch manager's personal production exceeds 75% of the monthly branch volume, the branch manager receives 0 basis points on personal production and 10 basis points on all other branch production for that month.

For example if, in May 2000, a manager accounts for 10% of the branch's production during the month, he or she will receive 10 basis points on May's total branch production, paid in July. In July 2000, the May 2000 compensation will be divided by two pay periods, with half paid on May 5, 2000 and half paid on May 19, 2000. In months where there are three pay periods, the applicable month's compensation will be divided by three and paid in equal installments over three pay periods. If in June 2000 that same manager accounts for 40% of the total branch volume, he or she would receive 5 basis points on personal production and 10 basis points on all other June branch production, paid in August.

## Personal Production

Branch managers, satellite managers and sales managers will be compensated under the terms of the Loan Officer Revenue Sharing Compensation Policy on all personal production.

## Satellite Branch Override

Satellite branch compensation is split between the satellite manager and the sponsoring branch manager based on a negotiated percentage split. Calculation of satellite branch compensation is similar to the retail branch manager levels; however, there are some differences because of the negotiated percentage split.

### Level 1
If a satellite manager's personal production accounts for less than 25% of the monthly satellite branch volume, the satellite manager and sponsoring branch manager are eligible to split a total of 10 basis points on total satellite branch production for that month.

### Level 2
If a satellite manager's personal production accounts for between 25% and 75% of the monthly satellite branch volume, the satellite manager and sponsoring branch manager are eligible to split a total of 10 basis points on the satellite branch's production for that month. However, the satellite manager cannot receive more than 5 basis points on his or her personal production.

### Level 3
If a satellite manager's personal production exceeds 75% of the monthly satellite branch volume, the sponsoring branch manager is eligible to receive 10 basis points on the satellite branch's production for that month. However, the satellite manager receives no override for that month.

When a new satellite branch is opened, the option is given for the satellite manager to be paid an agreed upon override amount for a period of time to be designated by the appropriate regional manager (but not to exceed one year.) During this time, the sponsoring manager will receive an agreed upon override amount from the satellite branch.

When a satellite branch has sustained annualized production of $30 million for two calendar quarters, the satellite branch will be considered an independent branch. In calculating this $30 million test, the branch's actual home loan purchase volume plus 20% will be used. This will allow for a normalized volume calculation, rather than what may be seen in a refinance market. At this time, the satellite manager will begin to be compensated under the terms of the Retail Branch Manager Compensation Plan and the heretofore split with the sponsoring branch manager will end. Branch managers who successfully open four or more offices that qualify as independent branches will be eligible for an Area Manager position.

## Monthly Profitability Bonus

An additional two (2) basis points on closed production can be earned monthly. If the branch exceeds 50 basis points of profitability for the month, the branch manager will be paid this bonus.

## Annual Profitability Bonus

Managers are eligible to receive up to 15% of the annual profits (net of all bonuses) of their branch. The percent of profits to be paid is determined by the following slide scale based on the level of profitability as measured in basis points.

Thirty-three and one third (33-1/3%) of all bonus calculations, as shown below, will include a subjective weighting by the regional/area manager on how well the branch manager ranked on their "manager attributes". Manager attributes include team building, motivation, problem solving, sales leadership and integrity. (Example: branch X ends the year with a $200,000 branch profit/net value with 20 basis points. This manager is eligible for up to a $20,000 bonus (10% of net). Two thirds (66-2/3%) of the $20,000 or $13,250 will be paid for achieving 20 basis points. The manager is eligible to receive up to the remaining $6,750. This will be calculated subjectively by the regional manager on how well the branch manager performed/ranked in the five "manager attribute" categories.)

| PROFITABILITY | BONUS |
|---|---|
| 0-20 basis points | up to 5% of branch profits |
| 20-50 basis points | up to 10% of branch profits |
| >50 basis points | up to 15% of branch profits |

*In cases where a branch manager reports to another manager, this bonus may be divided between the two parties, depending upon the arrangement agreed upon at the time of the newer branch manager's hire.

Managers will receive a **credit** to their branch profit and loss statement at year end, in instances where they have added new loan officers. The credit will be paid on the following schedule:

**$20,000** Credit for a loan officer starting in the **first quarter of the year**
**$15,000** Credit for a loan officer starting in the **second quarter of the year**
**$10,000** Credit for a loan officer starting in the **third quarter of the year**
**$ 5,000** Credit for a loan officer starting in the **fourth quarter of the year**

The following criteria must be met in order to receive the credit:

- The loan officer must be employed through the end of the year.
- The **'new'** loan officer must average **$500,000** in monthly closings for the year. Two (2) months will be deducted from the start date prior to calculating the average to allow for the lag in application to closing.
- Because of the short window in the fourth quarter, credits will be based on LO qualifications and require regional manager approval.

**Effective 10/8/02**
**Revised 10/8/02**

This credit allows for the addition of productive loan officers to the branch staff without impacting the Branch P & L or the managers' bonus calculation. There is no limit to the number of productive loan officers or to the credit.

## Expense Reimbursement

Managers are eligible to receive reimbursement for all reasonable travel, entertainment, and other business related expenses up to $350 per month plus $75 for a car phone. Expense reports must be submitted within 60 days of month end or the Company reserves the right not to reimburse the branch manager.

## Other Provisions

A.  **Branch Manager Compensation** - All compensation, exclusive of personal production, for branch managers will be earned when paid. For example, if a branch manager terminates employment with Columbia National, effective May 19, 2000, his or her compensation will end with the May 19, 2000 paycheck that includes compensation based on closings from the month of March.

   **Personal Production Compensation** - In the event of voluntary termination, death or long-term disability, the Company will pay the branch manager, or his or her estate, commissions (above any current deficits to the Company) on personal production on any loan closed and funded up to and including the date of termination, death or long-term disability, except as herein provided. With respect to a voluntary termination, it is the Company's general policy not to pay any commissions on personal production on loans that close and fund after the effective date of the branch manager's termination. However, the regional manager has the discretion to pay all, or a portion of, the commissions on loans that close and fund after the effective date of termination if the regional manager, with the concurrence of the President or CEO of the Company, can document that circumstances warrant such consideration. Those circumstances might include the fact that the branch manager gave adequate advanced notice; was leaving the company for a new career opportunity; or otherwise demonstrated a responsible attitude in his or her dealings with the Company. In the event a branch manager is terminated by the Company for cause (as defined in the Company's Personnel Policy Manual), no further commissions on personal production will be paid to the branch manager. This remedy shall be non-exclusive and shall not preclude the Company's rights to pursue any other legal or equitable remedies it may have against the branch manager.

B.  Neither this policy nor any action taken thereunder shall be construed as giving any participant a right to be retained in the employ of the Company. This is not a contract of employment.

C.  All actions, determinations and interpretations made by the Company pursuant to the policy shall be conclusive as to the rights of the participants.

Effective 10/8/02
**Revised 10/8/02**

D.    In the event the Company suffers a financial loss as a result of inappropriate action or conduct on the part of the branch manager that is contrary to the provisions and intent of this policy, the Company reserves the right, after a review of all the facts and circumstances by the regional manager, to deduct all or any portion of the loss (including all expenses and fees incurred in connection therewith) from any commissions otherwise payable to the branch manager.


**This policy may be amended, suspended, terminated or restated in whole or in part by the Company.**

---

**Acknowledgement**

I have received a copy of the Retail Branch Manager Compensation Plan, have read it thoroughly and fully understand all of its provisions.

_David P Michaud_ _____          _5/08/2003_
Branch Manager's Signature                              Date

_David P Michaud_ _____
Print Name


_____          _____
Regional Manager's Signature                          Date

---

# EXHIBIT P

## Earning Statement

## [FILED UNDER SEAL]

**FILED UNDER SEAL**