**EXHIBIT B**

## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aigproducercompensation.com or by calling AIG at 1-800-706-3102.

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

91222 (7/06)

POLICY NUMBER:
673-84-28
R/N    494-00-39

# **AIG** AMERICAN INTERNATIONAL COMPANIES

☐ AIU Insurance Company
☐ American Home Assurance Company
☐ American International Pacific Insurance Company
☐ American International Specialty Lines Insurance Co.
☐ Birmingham Fire Insurance Company of Pennsylvania

☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pittsburgh, Pa.
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

---

### DIRECTORS, OFFICERS AND CORPORATE LIABILITY/GENERAL PARTNERS AND LIMITED PARTNERSHIP LIABILITY INSURANCE POLICY

### PARTNERSHIP GOLD℠

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND; HOWEVER, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

### DECLARATIONS

ITEM 1(a).    NAMED ENTITY:              AMERICAN HOME MORTGAGE INVESTMENT CORP.

MAILING ADDRESS:              538 BROADHOLLOW ROAD
MELVILLE, NY  11747-3604

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:  NEW YORK

ADDITIONAL LIMITED PARTNERSHIPS:    N/A

ITEM 1(b):    INSURED'S REPRESENTATIVE:    AMERICAN HOME MORTGAGE HOLDINGS, INC

MAILING ADDRESS:              538 BROADHOLLOW ROAD
MELVILLE, NY  11747-3604

**NOTICE.** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

73063(4/99)                                                                1

ITEM 2.    SUBSIDIARY COVERAGE:   any past, present or future Subsidiary of any Named Entity, Limited Partnership or General Partner

ITEM 3.    POLICY PERIOD:    From: September 27, 2006 To:    September 27, 2007
(12:01 A.M. at the address stated in Item 1.)

ITEM 4.    LIMIT OF LIABILITY: $10,000,000        aggregate for Coverages A and B combined (including Defense Costs)

ITEM 5.    RETENTION:

SECURITIES CLAIMS:

Judgments & Settlements (all coverages)        None

Defense Costs (non-Indemnifiable Loss)        None

Defense Costs (entity General Partner,
Coverage B(i) and Indemnifiable Loss )        $500,000
for Loss arising from Claims
alleging the same Wrongful
Act or related Wrongful Acts
(waivable under Clause 6 in
certain circumstances)

OTHER CLAIMS:

Judgments, Settlements and Defense Costs
(non-Indemnifiable Loss)        None

Judgments, Settlements and Defense Costs
(entity General Partner and Indemnifiable Loss)        $300,000
for Loss arising from Claims
alleging the same Wrongful
Act or related Wrongful Acts

ITEM 6.    CONTINUITY DATES:

A. All Coverages (other than Outside Entity Coverage) September 27, 2002

B. Outside Entity Coverage: Per Outside Entity:        September 27, 2002

NOTICE.    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

ITEM 7.      PREMIUM: $270,000

Premium for Certified Acts of Terrorism Coverage under the Terrorism Risk Insurance Act of 2002: $7,864 included in policy premium.

Any coverage provided for losses caused by an act of terrorism as defined by TRIA ("TRIA Losses") may be partially reimbursed by the United States of America under a formula established by TRIA as follows: 90% of TRIA losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism. A copy of the TRIA disclosure sent with the original quote is attached hereto.

ITEM 8.      NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
(This policy is issued only by the insurance company indicated below.)

**National Union Fire Insurance Company of Pittsburgh, Pa.**
**175 Water Street**
**New York, NY 10038**

IN WITNESS WHEREOF, we have caused this policy to be signed by our president and secretary, and signed on the declarations by our duly authorized representative or countersigned in states where applicable.

*Elizabeth M. Tuck*

**SECRETARY**                              **PRESIDENT**

AUTHORIZED REPRESENTATIVE

| COUNTERSIGNATURE | DATE | COUNTERSIGNED AT |
|---|---|---|

HILB, ROGAL & HOBBS OF NEW YORK, LLC
100 PARK AVE
NEW YORK, NY 10017-0390

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

73063(4/99)                          3                          **COPY**

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage.    The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act.   Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

**COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE**

Insured Name: *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

Policy Number: *673-84-28*
Policy Period Effective Date From: *September 27, 2006*   To: *September 27, 2007*

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*
81285 (1/03)

**DIRECTORS, OFFICERS AND CORPORATE LIABILITY/GENERAL PARTNERS AND LIMITED PARTNERSHIP LIABILITY INSURANCE POLICY**

**PARTNERSHIP GOLD<sup>SM</sup>**

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the "Insurer", agrees as follows:

### 1. INSURING AGREEMENTS

#### COVERAGE A: NATURAL PERSON INSURED AND GENERAL PARTNER INSURANCE

This policy shall pay the Loss of each and every Natural Person Insured and General Partner of an Organization arising from a Claim first made against such Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in his, her or its capacity as a Natural Person Insured or a General Partner of an Organization, except when and to the extent that the Organization has indemnified the Natural Person Insured or General Partner. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

#### COVERAGE B: ORGANIZATION LIABILITY INSURANCE

This policy shall pay the Loss of the Organization arising from a:

(i) Securities Claim first made against the Organization, or

(ii) Claim first made against a Natural Person Insured or General Partner

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only to the extent that the Organization has indemnified the Natural Person Insured or General Partner for such Loss pursuant to law, common or statutory, or contract, or the charter, by-laws, partnership agreement or trust agreement of the Organization duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### 2. DEFINITIONS

(a) "Additional Limited Partnership" means:

(1) any past or present limited partnership listed as such by endorsement to this policy;

(2) automatically any limited partnership: (i) whose assets total less than 15% of the total consolidated assets of the Organization as of the inception date of this policy, (ii) of which the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first becomes the sole

general partner during the Policy Period and (iii) whose partnership interests have not been sold in a public offering. The Insured's Representative shall provide the Insurer with full particulars of the new Additional Limited Partnership before the end of the Policy Period;

(3) any limited partnership (other than a limited partnership described in paragraph (2) above) of which the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first becomes the sole general partner or which is otherwise first sponsored by or affiliated with the Named Entity, Insured's Representative, the Company or a General Partner during the Policy Period, but only upon the condition that within 90 days of the date of first sponsorship or affiliation, the Insured's Representative shall have provided the Insurer with full particulars of the new Additional Limited Partnership and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Additional Limited Partnership. Further, coverage as shall be afforded to a new Additional Limited Partnership is conditioned upon the Insured's Representative paying when due any additional premium required by the Insurer relating to such Additional Limited Partnership.

In all events, coverage as is afforded under this policy with respect to a Claim made against an Additional Limited Partnership or any General Partner or Natural Person Insured thereof, shall only apply for Wrongful Acts committed or allegedly committed after the effective time that the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first became the sole general partner of the Additional Limited Partnership or the effective time such Additional Limited Partnership was otherwise first sponsored by or affiliated with the Named Entity, the Insured's Representative, the Company or a General Partner and prior to the effective time: (1) the Additional Limited Partnership or any entity General Partner thereof consolidates with or merges into, or sells all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or (2) any person or entity or group of persons and/or entities acting in concert acquires an amount of the outstanding securities representing more than 50% of the voting power for the election of general partners or directors of the Additional Limited Partnership or entity General Partner thereof, or acquires the voting rights of such an amount of such securities; or (3) the Additional Limited Partnership engages in a liquidation, "roll-up" or "roll-over"; or (4) the General Partner(s) of the Additional Limited Partnership are different than the Additional Limited Partnership's General Partner(s) when it first became an Additional Limited Partnership; provided, that this subsection (4) shall not apply if the sole general partner of such Additional Limited Partnership is and remains at all times either the Named Entity, an Additional Limited Partnership, the Company or any Natural Person Insured.

(b) "Claim" means:

(1) a written demand for monetary or non-monetary relief;
(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:
   (i) service of a complaint or similar pleading; or
   (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or
   (iii) receipt or filing of a notice of charges; or

(3) a civil, criminal, administrative or regulatory investigation (including a Securities and Exchange Commission, Equal Employment Opportunity Commission or grand jury investigation) of a Natural Person Insured but only after such Natural Person Insured is identified in writing by the investigating authority as a person against whom a proceeding described in clause (2) above may be commenced, or in the case of a securities investigation, after the service of a subpoena on such Natural Person Insured.

The term "Claim" shall include a Securities Claim; provided, however, that with respect to Coverage B(i) only, Claim or Securities Claim shall not mean an administrative or regulatory proceeding against, or investigation of, the Organization.

(c) "Company" means the Named Entity (if a corporation or limited liability company) and any Subsidiary and any other limited liability company specifically listed as such in an endorsement to this policy; and, in the event any bankruptcy proceeding shall be instituted by or against such Named Entity, Subsidiary or such limited liability company, the Debtor in Possession (or equivalent status outside the United States), if any.

(d) "Continuity Date" means the date set forth in:

(1) Item 6A of the Declarations with respect to all coverages (other than Outside Entity Coverage); or

(2) Item 6B of the Declarations with respect to a Claim against a Natural Person Insured arising out of such Natural Person Insured serving as a director, officer, trustee or governor of an Outside Entity.

(e) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding the compensation of any Director, Officer or Employees of the Organization.

(f) "Director(s) or Officer(s)" means any past, present or future duly elected or appointed directors, officers, trustees, management committee members or members of the Board of Managers of an Organization. In the event the Named Entity or any other Organization operates outside the United States, then the term "Director(s) or Officer(s)" shall also mean those titles, positions or capacities in such foreign Named Entity or Organization which is equivalent to the position of Director or Officer in a for-profit organization incorporated or formed within the United States. Coverage will automatically apply to all new Directors and Officers after the inception date of this policy.

(g) "Employee(s)" means any past, present or future employee in their capacity as such, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee.

The term "Employee" shall not include any Director, Officer or General Partner.

73064(4/99)                               3                    **COPY**

(h)    "Employment Practices Violation(s)" means any actual or alleged:

    (1)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

    (2)    harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

    (3)    discrimination (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

    (4)    retaliation (including lockouts);

    (5)    employment-related misrepresentation(s) to an Employee or applicant for employment with the Organization or Outside Entity;

    (6)    employment-related libel, slander, humiliation, defamation, invasion of privacy;

    (7)    wrongful failure to employ or promote;

    (8)    wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference, negligent hiring or negligent retention;

    (9)    wrongful discipline;

    (10)   failure to grant tenure;

    (11)   violation of the Family Medical Leave Act

    (12)   failure to provide or enforce adequate or consistent corporate policies and procedure relating to any of the above;

    (13)   violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to: (1) an Employee of or an applicant for employment with an Organization or an Outside Entity; or (2) an Officer of an Organization, whether direct, indirect, intentional or unintentional.

With respect to any natural person customer or client of the Organization, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(i)    "General Partner" means:

    (i)    the Named Entity;

    (ii)   any Subsidiary or Limited Partnership;

    (iii)  any Director, Officer or Employee of an Organization; or

    (iv)  any other person or entity listed as such in an endorsement attached hereto,

acting in the capacity as a general partner of a Limited Partnership.

The term "General Partner" shall also include any director, officer, member of the Board of Managers, trustee or Employee of an entity General Partner described above, but only if such individual is acting on behalf of such entity General Partner in its capacity as a General Partner for a Limited Partnership.

(j)    "Indemnifiable Loss" means Loss for which the Organization or General Partner has indemnified or is permitted or required to indemnify a Natural Person Insured or natural person General Partner.

(k)   "Insured(s)" means:

    (1)  each Natural Person Insured;
    (2)  each General Partner; and
    (3)  each Organization, but solely with respect to Securities Claims.

(l)   "Insured's Representative" means the natural person or entity designated in Item 1(b) of the Declarations.

(m)  "Limited Partnership" means the Named Entity (if formed as a limited partnership) and any Additional Limited Partnership; and, in the event any bankruptcy proceeding shall be instituted by or against such Named Entity or any Additional Limited Partnership, the Debtor in Possession (or equivalent status outside the United States), if any.

(n)  "Loss" means damages, judgments, pre-judgment and post-judgment interest, settlements and Defense Costs; however, Loss shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, the multiplied portion of multiplied damages, taxes and any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds.

In the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all of the stock issued by or assets owned by any entity is inadequate or excessive, Loss with respect to such Claim shall not include any amount of any judgment or settlement by which such price or consideration is increased or decreased, directly or indirectly; provided, however, that the foregoing shall not apply to any non-Indemnifiable Loss resulting from any judgment (other than a stipulated judgment) against a Natural Person Insured.

Notwithstanding the foregoing, with respect to Securities Claims only and subject to the other terms, conditions and exclusions of the policy, Loss shall include punitive or exemplary damages imposed upon any Insured. It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages.

(o)  "Natural Person Insureds" means:

(1) any Director or Officer, with respect to all Claims; and
(2) any Employee of the Organization, but solely with respect to Securities Claims.

(p)  "Named Entity" means the organization designated in Item 1(a) of the Declarations whether a corporation, limited liability company or partnership.

(q)  "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(r)  "Organization" means each Company and each Limited Partnership.

(s)   "Outside Entity" means:

(1)   any not-for-profit organization; or

(2)   any other corporation, partnership, joint venture or other organization listed as such by endorsement to this policy.

(t)   "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(u)   "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by any governmental body) made against an Insured and brought anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

(1)   brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale of or offer or solicitation of an offer to purchase or sell, any securities of the Organization; or

(2)   in the form of a securities holder derivative claim brought on the behalf of the Organization; or

(3)   brought by a securities holder of the Organization, with respect to such securities holder's interest in such securities of such Organization, whether directly or by class action.

(v)   "Subsidiary" means:

(1)   (A) a corporation or limited liability company of which the Named Entity, a Limited Partnership or a General Partner owns, on or before the inception of the Policy Period, more than a 50% equity ownership interest directly, or indirectly through one or more of its Subsidiaries or (B) a corporation or limited liability company of which the Named Entity, a Limited Partnership or a General Partner owns on or before the inception of the Policy Period exactly a 50% equity ownership interest and which, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% equity ownership interest, solely controls such corporation or limited liability company (a "Controlled Joint Venture"), in each case either directly or indirectly through one or more of its Subsidiaries;

(2)   automatically a corporation or limited liability company whose assets total less than 15% of the total consolidated assets of the Organization as of the inception date of this policy, which corporation or limited liability company becomes a Subsidiary during the Policy Period. The Insured's Representative shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period;

(3)   a corporation or limited liability company which becomes a Subsidiary during the Policy Period (other than a corporation or limited liability company described in paragraph (2) above) but only upon the condition that within 90 days of its becoming a Subsidiary, the Insured's Representative shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium and/or

73064(4/99)                                   6                         COPY

amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Insured's Representative paying when due any additional premium required by the Insurer relating to such new Subsidiary;

(4) a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an Organization.

A corporation or limited liability company becomes a Subsidiary when the Named Entity, a Limited Partnership or a General Partner directly or indirectly through one or more of its Subsidiaries: (1) owns more than a 50% equity ownership interest in such corporation or limited liability company; or (2) in the case of a Controlled Joint Venture, owns exactly a 50% equity ownership interest and, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% equity ownership interest, solely controls such corporation or limited liability company, in each case either directly, or indirectly through one or more of its Subsidiaries. A corporation or limited liability company ceases to be a Subsidiary when such Named Entity, Limited Partnership or General Partner: (1) ceases to own more than a 50% equity ownership interest in such corporation or limited liability company, either directly, or indirectly through one or more of its Subsidiaries; or (2) in the case of a Controlled Joint Venture, ceases to own exactly a 50% equity ownership interest or solely to control, pursuant to or in connection with a written agreement with the owner(s) of the remaining 50% equity ownership interest, in each case either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary or any Natural Person Insured thereof shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

In all events, coverage as is afforded with respect to a Claim made against a Subsidiary of a General Partner or any Natural Person Insured of such Subsidiary shall only apply for Wrongful Acts committed or allegedly committed while such Subsidiary is acting on behalf of such General Partner in its capacity as a General Partner for a Limited Partnership.

(w) "Wrongful Act" means:

(1) with respect to any Director or Officer of the Organization, any actual or alleged Employment Practices Violation or any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Director or Officer in his or her respective capacity as such, or any matter claimed against such Insured solely by reason of his or her status as a Director or Officer of the Organization; or with respect to service on an Outside Entity, any matter claimed against a Director or Officer arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Organization;

(2) with respect to any Employee of the Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Employee in his or her respective capacity as such, or any matter claimed against

such Employee solely by reason of his or her status as an Employee of the Organization, but solely as respects a Securities Claim;

(3) with respect to any General Partner, any actual or alleged Employment Practices Violation or any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such General Partner in his, her or its capacity as such, or any matter claimed against such General Partner by reason of his, her or its status as a General Partner of a Limited Partnership;

(4) with respect to any Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Organization in its capacity as such, but solely as respects a Securities Claim.

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the estates, heirs, or legal representatives of deceased Natural Person Insureds, and the legal representatives of Natural Person Insureds in the event of incompetency, insolvency or bankruptcy, who were Natural Person Insureds at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from a Claim made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of a Natural Person Insured for a Claim arising solely out of his or her status as the spouse of a Natural Person Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Natural Person Insured and the spouse, or property transferred from the Natural Person Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of a Natural Person Insured, subject to the policy's terms, conditions and exclusions.

## 4. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the Insured was not legally entitled;

(b) arising out of, based upon or attributable to payments to an Insured of any remuneration without the previous approval of the stockholders, limited partners or members of the Organization, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the Insured;

[For the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c), the facts pertaining to and knowledge possessed by any Insured shall not be

imputed to any Natural Person Insured or General Partner; only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer or chief financial officer of the Organization or any entity General Partner shall be imputed to the Organization or entity General Partner.]

(d)   alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related Wrongful Acts alleged or contained, in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)   alleging, arising out of, based upon or attributable to any pending or prior litigation as of the Continuity Date, or alleging or derived from the same or essentially the same facts as alleged in such  pending or prior litigation;

(f)   for emotional distress or for injury from libel, slander, defamation, disparagement, or a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Claim alleging an Employment Practices Violation;

(g)   with respect to serving as a director, officer, trustee or governor of an Outside Entity, for any  Wrongful Act occurring prior to the Continuity Date if the Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy;

(h)   alleging, arising out of, based upon or attributable to any actual or alleged act or omission of a Natural Person Insured or General Partner serving in any capacity, other than as a Natural Person Insured or General Partner of an Organization or as a director, officer, trustee or governor of an Outside Entity;

(i)   which is brought by any Insured, by the Organization or any general partner thereof; or which is brought by any security holder, limited partner or member of the Organization or any entity General Partner, whether directly or derivatively, unless such security holder's, limited partner's or member's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Organization; provided, however, this exclusion shall not apply to:

     (1)   any Claim brought by a Natural Person Insured in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

     (2)   any Claim alleging an Employment Practices Violation brought by any past or present Natural Person Insured other than a past or present Natural Person Insured who is or was a General Partner or a member of the board of Directors of either the Organization or a General Partner or, in the case of an LLC, the Board of Managers; or

     (3)   any Claim brought by an Employee of the Organization; or

     (4)   in any bankruptcy proceeding by or against the Organization, any Claim brought by the Examiner or Trustee of the Organization, if any, or any assignee of such Examiner or Trustee;

(j)     for any Wrongful Act arising out of the Insured serving as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or by any director or officer thereof; or which is brought by any security holder of the Outside Entity, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the Outside Entity, any director or officer thereof, the Organization or any Insured;

(k)     for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(l)     alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

(1)     the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

(2)     any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

including but not limited to a Claim alleging damage to the Organization or any entity General Partner or any security holder, limited partner or member of any of the foregoing, provided, however, that this exclusion shall not apply to non-Indemnifiable Loss arising from a Claim brought by a shareholder, limited partner or member of the Organization or entity General Partner alleging damage to the Organization, any entity General Partner or any shareholder, limited partner or member of any of the foregoing.

Pollutants include (but is not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

(m)     for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state statutory law or common law

(n)     alleging, arising out of, based upon or attributable to any commingling of funds;

(o)     for the return or reimbursement of fees paid by the Limited Partnership to a General Partner or an affiliate thereof in connection with services performed for the Limited Partnership; provided, however, that this exclusion shall not apply to Defense Costs.

## 5.   LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverages A and B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or

Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one aggregate Limit of Liability stated in Item 4 of the Declarations.

**Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.**

## 6. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Organization and/or the Insureds and shall remain uninsured, with regard to: (i) all Indemnifiable Loss; (ii) Loss of the entity General Partner; and (iii) Loss under Coverages B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

Notwithstanding the foregoing, solely with respect to a Securities Claim, the Retention shall only apply to Defense Costs. Further, solely with respect to a Securities Claim, no Retention shall apply to Loss arising from such Claims and the Insurer shall reimburse Defense Costs otherwise covered hereunder and paid by the Insured, in the event of:

(1)     a determination of No Liability of all Insureds in a Securities Claim; or

(2)     a dismissal or a stipulation to dismiss all Insureds in a Securities Claim without prejudice and without the payment of any consideration by any Insured,

provided, however, that in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such Claim is not brought again (or any other Claim which is subject to the same single retention by virtue of this Clause 6 is not brought) within that time, and further subject to an undertaking by the Organization in a form acceptable to the Insurer that such reimbursement shall be paid back by the Organization to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of this Clause 6) is brought after such 90-day period and before the expiration of the statute of limitations for such Claim.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

**Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice .**

(a)     The Organization, the Insured's Representative or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured as soon as practicable after the Insured's Representative, any General Partner or any risk manager or general counsel of the Organization or of the General Partner first becomes aware of the Claim but in all events either:

(1)     anytime during the Policy Period or during the Discovery Period (if applicable); or

73064(4/99)                                    11                          **COPY**

(2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c) If during the Policy Period or during the Discovery Period (if applicable) the Organization, the Insured's Representative or the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then a Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under both Coverage A and Coverage B of this policy, except as hereinafter stated, the Insurer shall advance excess of the applicable retention amount, at the written request of the Insured, covered Defense Costs no later than every ninety (90) days. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds or the Organization, severally according to their respective interests, in the event and to the extent that the Insureds or the Organization shall not be entitled under the terms and conditions of this policy to payment of such Loss.

The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer.

The Insurer shall have the right to effectively associate with the Organization and the Insureds in the defense and prosecution of any Claim that involves or appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Organization and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all Insured defendants are able to dispose of all Claims which are subject to one retention amount for an amount not exceeding such retention amount (inclusive of Defense Costs), then the Insurer's consent shall not be required for such disposition.

The Organization is not covered in any respect under Coverage A; the Organization is covered, subject to the policy's terms and conditions, only with respect to its indemnification of its Natural Person Insureds and General Partners under Coverage B(ii) as respects a Claim against such Natural Person Insureds and General Partners, and subject to the policy's terms and conditions, under Coverage B(i) for a Securities Claim made against the Organization. Accordingly, the Insurer has no obligation under this policy for covered Defense Costs incurred by, judgments against or settlements by the Organization arising out of a Claim made against the Organization other than a covered Securities Claim, or any obligation to pay Loss arising out of any legal liability that the Organization has to a claimant except as respects a covered Securities Claims against the Organization.

With respect to (i) Defense Costs jointly incurred by, (ii) any joint settlement entered into by and/or (iii) any judgment of joint and several liability against: the Organization and/or the General Partner and/or any Natural Person Insured in connection with any Claim other than a Securities Claim, the Organization, the General Partner and the Natural Person Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between the Organization and/or the General Partner and/or the Natural Person Insureds and the Insurer taking into account the relative legal and financial exposures, and the relative benefits obtained by, the Natural Person Insureds, the General Partner and the Organization.

In the event that a determination as to the amount of Defense Costs to be advanced under the policy cannot be agreed to, then the Insurer shall advance such Defense Costs which the Insurer states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

In the event of Loss arising from a Claim or Claims for which payment is due under the provisions of this policy, then the Insurer shall:

(a)     first, pay such non-Indemnifiable Loss for which coverage is provided under Coverage A of this policy; and

(b)     then, with respect to whatever remaining amount of the Limit of Liability is available after payment of such non-Indemnifiable Loss, at the written request of the chief executive officer of the Insured's Representative, the Named Entity or any General Partner thereof, either pay or withhold payment of such other Loss for which coverage is provided under this policy.

In the event the Insurer withholds payment pursuant to subparagraph (b) above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the Insured's Representative, Named Entity or any General Partner thereof, remit such payment to such Insured's Representative, Named Entity or General Partner or directly to or on behalf of a Natural Person Insured.

## 9. PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS

Only with respect to a Securities Claim:

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("Panel Counsel Firms"). The list provides the Insured a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of the Claim made against them.

The Insureds shall select a Panel Counsel Firm to defend the Claim made against the Insureds in the jurisdiction in which the Claim is brought. In the event the Claim is brought in a jurisdiction not included on the list, the Insureds shall select a Panel Counsel Firm in the listed jurisdiction which is the nearest geographic jurisdiction to either where the Claim is brought or where the corporate headquarters of the Named Entity is located. In such instance the Insureds also may, with the express prior written consent of the Insurer, which consent shall not be unreasonably withheld, select a non-Panel Counsel Firm in the jurisdiction in which the Claim is brought to function as "local counsel" on the Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Securities Claim.

With the express prior written consent of the Insurer, an Insured may select a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity. The Insurer may in its discretion add to the attached list of Panel Counsel Firms for the purposes of defending the Claim made against the Insured in any specified jurisdiction (including a jurisdiction not originally included in the Panel Counsel list) a Panel Counsel Firm not originally listed for such jurisdiction. The Insurer may in its discretion waive, in part or in whole, the provisions of this clause as respects a particular Claim.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the Insurer or the Insured's Representative shall cancel or refuse to renew this policy, the Insured's Representative shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") upon payment of the applicable "Additional Premium Amount" described below in which to give to the Insurer written notice pursuant to Clause 7(a) of Claims first made against the Insureds during said Discovery Period or pursuant to Clause 7(c) of circumstances of which the Insured's Representative, the Organization or the Insureds shall become aware during said Discovery Period, in each case with respect to any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy.

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years shall be a reasonable premium amount to be mutually agreed upon by the Insured and the Insurer. As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer

73064(4/99)                                    14                                    COPY

within 60 days of the effective date of cancellation or nonrenewal. The Additional Premium Amount for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

Notwithstanding the first paragraph of Clause 5, if the Insurer or the Insured's Representative gives notice of its intention to cancel or non-renew this policy, then the Insured's Representative shall also have the right, within 60 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the end of the Policy Period) for a period of one, two or three years with an aggregate limit of liability applicable to Claims made against the Insured during such Discovery Period which is in addition to, and not part of, the applicable Limit of Liability set forth in Item 4 of the Declarations. The Insurer shall quote such a Discovery Period pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a Transaction, as defined in Clause 12, or the confirmation of a Bankruptcy Plan of Reorganization of the Insured's Representative or the Limited Partnership, the Insured's Representative shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction or such confirmation) for a period of no less than three years or for such longer or shorter period as the Insured's Representative may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions, exclusions and additional premium as the Insurer may reasonably decide. In the event of a Transaction or such a confirmation, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Insured's Representative at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. This policy may also be canceled by or on behalf of the Insurer by delivering to the Insured's Representative or by mailing to the Insured's Representative, by registered, certified, or other first class mail, at the address of the Insured's Representative as shown in Item 1(c) of the Declarations, written notice stating when, not less than 60 days thereafter (15 days in the case of cancellation for non-payment of premium), the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender.

If this policy shall be canceled by the Insured's Representative, the Insurer shall retain the customary short rate proportion of the premium herein.

If this policy shall be canceled by the Insurer, the Insurer shall retain the pro rata proportion of the premium herein.

Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice as set forth above is also set forth in any law controlling the construction thereof, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

## 12. TERMINATION OF COVERAGE FOR WRONGFUL ACTS AFTER CERTAIN TRANSACTIONS

If during the Policy Period:

1. the Insured's Representative shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert; or

2. any person or entity or group of persons and/or entities acting in concert shall acquire an amount of the outstanding securities representing more than fifty percent (50%) of the voting power for the election of directors, general partners, members of the board of managers or trustees of the Insured's Representative, or acquires the voting rights of such an amount of such securities; or

   (if the Named Entity is a Limited Partnership the following subsections 3, 4 and 5 shall also apply)

3. the Insured's Representative (if the Insured's Representative is a Limited Partnership) shall engage in a liquidation, "roll-up" or "roll-over," or if any of the General Partners of the Insured's Representative shall be different from its General Partners as of the inception date of this policy; or

4. the Insured's Representative, if a natural person, dies or is declared incompetent; or

5. the Insured's Representative, if a General Partner, withdraws, resigns or is terminated;

   (any of the above events herein referred to as the "Transaction")

then, this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Insured's Representative shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Insured's Representative shall give the Insurer written notice of the Transaction as soon as practicable, but not later than 30 days after the effective date of the Transaction.

## 13. SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Organization's and the Insureds' rights of recovery thereof, and the Organization and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Organization and/or the

Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been determined to have in fact committed a deliberate criminal act, a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

In the event of a Claim against a Natural Person Insured arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity, coverage as is afforded by this policy shall be specifically excess of indemnification provided by such Outside Entity and any insurance provided to such Outside Entity with respect to its directors, officers, trustees or governors. Further, in the event such other Outside Entity insurance is provided by the Insurer or any other member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a Claim) then the maximum aggregate Limit of Liability for all Losses combined covered by virtue of this policy as respects any such Claim shall be reduced by the limit of liability (as set forth on the declarations page) of the other AIG insurance provided to such Outside Entity.

## 15. NOTICE AND AUTHORITY

It is agreed that the Insured's Representative shall act on behalf of the Organization and all Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining to exercise any right to a Discovery Period.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17. DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of Loss, shall be submitted to the alternate dispute resolution process ("ADR") set forth in this clause.

Either the Insurer or the Insureds may elect the type of ADR discussed below; provided, however, that the Insureds shall have the right to reject the Insurer's choice of the type of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control.

The Insurer and the Insureds agree that there shall be two choices of ADR: (1) non-binding mediation administered by the American Arbitration Association, in which the Insurer and the Insureds shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American

73064(4/99)                                    17                           COPY

Arbitration Association under or in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator(s) or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator(s) or arbitrators shall also give due consideration to the general principles of the law of the state where the Insured's Representative is incorporated or otherwise formed in the construction or interpretation of the provisions of this policy; provided, however, that the terms, conditions, provisions and exclusions of this policy are to be construed in an even-handed fashion in the manner most consistent with the relevant terms, conditions, provisions and exclusions of the policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided , however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the ADR.

Either choice of ADR may be commenced in either New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(c) of the Declarations page as the mailing address for the Insured's Representative. The Insured's Representative shall act on behalf of all Insureds in deciding to proceed with ADR under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds or the Organization to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or the Organization or their legal representatives. Bankruptcy or insolvency of the Organization or the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 19. WORLDWIDE TERRITORY

This policy shall apply to Claims made against an Insured anywhere in the world.

## 20. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**ALASKA**

**Davis Wright Tremaine**
*David W. Oesting*
701 W. Eighth Avenue, Suite 800, Anchorage, AK 99501-3468 (907)257-5300

**Foster Pepper & Shefelman**
*Tim J. Filer*
1007 W. Third Ave., Ste. 100, Anchorage, AK 99501 (907)222-7100

**CALIFORNIA**

**Bingham McCutchen, LLP**
*David M. Balabanian / Dale E. Barnes*
3 Embarcadero Center, San Francisco, CA 94111 (415)393-2626

*Mary T. Huser*
1900 University Avenue, East Palo Alto, CA 94303-1212 (650)849-4914

*Susan L. Hoffman*
355 South Grand Avenue, Los Angeles, CA 90071-1560 (213)680-6416

**Cooley Godward, LLP**
*\*Paul A. Renne (415)693-2073 / John C. Dwyer (650)843-5228*
One Maritime Plaza, 20th Floor, San Francisco, CA 94111-3580 (415)693-2000

*\*William E. Grauer (858)550-6050 / Philip C. Tencer (858)550-6068 / Koji F. Fukumura (858)550-6008*
4401 Eastgate Mall, San Diego, CA 92121-1909 (858)550-6000

*\*Stephen C. Neal (650)843-5182 / \*William S. Freeman (650)843-5037 / John C. Dwyer (650)843-5228*
3175 Hanover Street, Palo Alto, CA 94304-1130 (650)843-5000

**Davis Wright Tremaine**
*Martin Fineman*
One Embarcadero Center, Suite 600, San Francisco, CA 94111-3834 (415)276-6500

**DLA Piper Rudnick Gray Cary US, LLP**
*Shirli Fabbri Weiss / David Priebe*
2000 University Avenue, East Palo Alto, CA 94303 (650)833-2000

*Shirli Fabbri Weiss / Robert Brownlie*
4365 Executive Drive, Suite 1100, San Diego, CA 92121 (858)677-1400

**Fenwick & West, LLP**
*Susan S. Muck*
Embarcadero Center West, 275 Battery Street, San Francisco, CA 94111 (415)875-2300

**Gibson, Dunn & Crutcher, LLP**
*Dean J. Kitchens*
333 S. Grand Avenue, Los Angeles, CA 90071-3197 (213)229-7543

Revised (8/06)                    Page 1

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

Jonathan C. Dickey
1881 Page Mill Road, Palo Alto, CA 94304 (650)849-5300

Wayne W. Smith / Meryl L. Young
Jamboree Center, 4 Park Plaza, Suite 1400, Irvine, CA 92614-8557 (949)451-3800

**Heller, Ehrman, White & McAuliffe**
Douglas M. Schwab / M. Laurence Popofsky / Michael J. Shepard
333 Bush Street, San Francisco, CA 94104-2878 (415)772-6000

Darryl L. Snider / Jerry L. Marks
601 South Figueroa Street, 40th Floor, Los Angeles, CA 90017-5758 (213)689-0200

Norman J. Blears
275 Middlefield Road, Menlo Park, CA 94025-3506 (650)324-7000

David E. Kleinfeld
4350 La Jolla Village Drive, 7th Floor, San Diego, CA 92122-1246 (858)450-8400

**Irell & Manella, LLP**
David Siegel / Daniel P. Lefler
1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067-4276 (310)277-1010

**Katten Muchin Rosenman, LLP**
Bruce Vanyo (310)788-4401
2029 Century Park, East, Suite 2600, Los Angeles, CA 90067-3012 (310)788-4400

**Latham & Watkins**
Michael J. Weaver (619)238-3012 / Peter H. Benzian (619)236-1234 / Julia E. Parry (619)236-1234
600 West Broadway, Suite 1800, San Diego, CA 92101-3375 (619)236-1234

Paul H. Dawes (650)463-2626 / John C. Tang (650)328-4600
135 Commonwealth Drive, Menlo Park, CA 94025-1105 (650)328-4600

Miles N. Ruthberg (213)891-8754 / Pamela S. Palmer (213)891-8435 / Mark W. Rappel (213)891-8156 /
Peter W. Devereaux (213)891-8622 / Charles W. Cox (213)891-8178 / Jamie L. Wine (213)485-1234
633 West Fifth Street, Suite 4000, Los Angeles, CA 90071 (213)485-1234

Paul H. Dawes (650)463-2626 / Peter A. Wald (415)395-8006 / Darius C. Ogloza (415)391-0600 /
James K. Lynch (415)395-8265 / Michele F. Kyrouz
505 Montgomery Street, Suite 1900, San Francisco, CA 94111-2562 (415)391-0600

Miles N. Ruthberg (213)891-8754 / Peter W. Devereaux (213)891-8622 / Pamela S. Palmer
(213)891-8435 / Jon D. Anderson (714)755-8217 / Virginia S. Grogan (714)755-8206
650 Town Center Drive, 20th Floor, Costa Mesa, CA 92626 (714)540-1235

**Morgan, Lewis & Bockius, LLP**
Franklin Brockway Gowdy / Vincent Paul Finigan, Jr. / Kent M. Roger
One Market, Spear Street Tower, San Francisco, CA 94105 (415)442-1000

John F. Hartigan / Richard S. Odom
300 South Grand Avenue, 22nd Floor, Los Angeles, CA 90071-3132 (213)612-2500

Revised (8/06)                    Page 2

Please visit our website at www.briefbase.com to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**Morrison & Foerster, LLP**
*Melvin R. Goldman (415)268-7311 / Paul T. Friedman (415)268-7444 / Jordan D. Eth (415)268-7176 /*
*Darryl P. Rains (650)813-5866*
425 Market Street, San Francisco, CA 94105 (415)268-7000

*Robert S. Stern (213)892-5484 / Mark R. McDonald (213)892-5810*
555 West 5th Street, Suite 3500, Los Angeles, CA 90013 (213)892-5200

**Munger, Tolles & Olson**
*Dennis L. Kinnaird (213)683-9264 / John W. Spiegel (213)683-9152 / George M. Garvey (213)683-9153*
355 South Grand Avenue, 35th Floor, Los Angeles, CA 90071-1560 (213)683-9100

**O'Melveny & Myers, LLP**
*Seth Aronson (213)430-7486 / Amy J. Longo (213)430-8351*
400 South Hope St., 15th Floor, Los Angeles, CA 90071-2899 (213)430-6000

*Michael G. Yoder (949)823-7936 / Phillip R. Kaplan*
610 Newport Center, 17th Floor, Newport Beach, CA 92660 (949)760-9600

*Daniel H. Bookin (415)984-8786 / Michael F. Tubach*
275 Battery Street, San Francisco, CA 94111 (415)984-8700

**Orrick Herrington & Sutcliffe, LLP**
*William F. Alderman*
Old Federal Reserve Bank Building, 400 Sansome Street, San Francisco, CA 94111
(415)392-1122

*W. Reece Bader*
1000 Marsh Road, Menlo Park, CA 94025 (650)614-7400

**Paul, Hastings, Janofsky & Walker, LLP**
*Howard M. Privette / William F. Sullivan / John A. Reding / Peter M. Stone / Christopher H. McGrath*
515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071 (213)683-6000

**Pillsbury Winthrop Shaw Pittman, LLP**
*Richard M. Segal*
101 West Broadway, Suite 1800 (SBC Building), San Diego, CA 92101 (619)234-5000

*Bruce A. Ericson (415)983-1560*
50 Fremont Street, San Francisco, CA 94105 (415)983-1000

*Bruce A. Ericson (415)983-1560*
2475 Hanover Street, Palo Alto, CA 94304-1114 (650)233-4500

*Robert L. Wallan*
725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017 (213)488-7100

**Shearman & Sterling**
*Jeffrey S. Facter (415)616-1205 / Stephen D. Hibbard (415)616-1174*
555 California Street, San Francisco, CA 94104 (415)616-1100

Revised (8/06)                    Page 3

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Simpson Thacher & Bartlett**
*Chet Kronenberg / Seth A. Ribner*
1999 Avenue of the Stars, 29th Floor, Los Angeles, CA 90067 (310)407-7500

*George M. Newcombe / James G. Kreissman*
3373 Hillview Avenue, Palo Alto, CA 94304 (650)251-5000

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*James E. Lyons (415)984-6470*
Four Embarcadero Center, San Francisco, CA 94111 (415)984-6400

**Sullivan & Cromwell**
*Robert A. Sacks*
1888 Century Park East, Los Angeles, CA 90067-1725 (310)712-6600

**Wilson, Sonsini, Goodrich & Rosati**
*Boris Feldman / Steven M. Schatz / Jerome Birn (650)320-4858 / Nina Locker (650)320-4888 / Douglas Clark (650)320-4824 / Keith Eggleton (650)320-4893*
650 Page Mill Road, Palo Alto, CA 94304-1050 (650)493-9300

**COLORADO**

**Cooley Godward, LLP**
*James E. Nesland*
380 Interlocken Crescent, Suite 900, Broomfield, CO 80021-8023 (720)566-4000

**Gibson, Dunn & Crutcher, LLP**
*George Curtis*
1801 California Street, Suite 4100, Denver, CO 80202 (303)298-5700

**Hogan & Hartson**
*Daniel F. Shea*
One Tabor Center, 1200 Seventeenth St., Suite 1500, Denver, CO 80202 (303)899-7300

**DELAWARE**

**Blank Rome, LLP**
*Thomas P. Preston / Neal C. Belgam*
Chase Manhattan Centre, 1201 Market Street, Suite 800, Wilmington, DE 19801 (302)425-6473

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Barry Klayman*
Wilmington Trust Center, 1100 N. Market Street, Suite 1001, Wilmington, DE 19801
(302)777-5860

**DISTRICT OF COLUMBIA**

**Arnold & Porter**
*Scott B. Schreiber (202)942-5672*
555 Twelfth Street, N.W., Washington, DC 20004-1206 (202)942-5000

Revised (8/06)                    Page 4

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Cahill Gordon & Reindel**
*Donald J. Mulvihill*
1990 K Street, N.W., Suite 950, Washington, DC 20006 (202)862-8900

**DLA Piper Rudnick Gray Cary US, LLP**
*David Clarke, Jr. (202)861-6300 / Robert J. Mathias (410)580-4209 / James D. Mathias / Mark Muedeking (202)861-3900 / Deborah R. Meshulam (202)861-6470*
1200 Nineteenth Street, NW, Washington, DC 20036-2412 (202)861-3900

**Fulbright & Jaworski, LLP**
*Stephen M. McNabb*
Market Square, 801 Pennsylvania Ave., NW, Washington, DC 20004-2623 (202)662-0200

**Gibson, Dunn & Crutcher, LLP**
*F. Joseph Warin / John C. Millian*
1050 Connecticut Ave., N.W., Washington, DC 20036-5306 (202)955-8500

**Greenberg Traurig, LLP**
*Joe R. Reeder*
800 Connecticut Avenue, NW, Suite 500, Washington, DC 20006 (202)331-3100

**Hogan & Hartson**
*Ty Cobb*
555 Thirteenth Street, NW, Washington, DC 20004 (202)637-5600

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / William R. Baker III (202)637-1001 / Everett C. (Kip) Johnson, Jr. (202)637-2260 / Christian Word (703)456-5226*
555 Eleventh Street, NW, Suite 1000, Washington, DC 20004-1304 (202)637-2200

**LeBoeuf, Lamb, Greene & MacRae, LLP**
*Ralph C. Ferrara (202)986-8020*
1875 Connecticut Avenue, NW, Suite 1200, Washington, DC 20009-5715 (202)986-8000

**O'Melveny & Myers, LLP**
*Jeffrey Kilduff (202)383-5383*
1625 Eye Street, NW, Washington, DC 20006 (202)383-5300

**Patton Boggs, LLP**
*Ronald S. Liebman*
2550 M Street, N.W., Washington, DC 20037 (202)457-6000

**Shearman & Sterling**
*Jonathan L. Greenblatt (202)508-8070 / Thomas S. Martin (202)508-8040*
801 Pennsylvania Ave., N.W., Washington, DC 20004-2604 (202)508-8000

**Sidley Austin Brown & Wood, LLP**
*Thomas C. Green (202)736-8069 / Mark D. Hopson (202)736-8188 / Michael D. Warden (202)736-8080*
1501 K Street, N.W., Washington, DC 20005 (202)736-8000

**Sullivan & Cromwell**
*Daryl A. Libow / Margaret K. Pfeiffer*
1701 Pennsylvania Avenue, N.W., Washington, DC 20006-5805 (202)956-7500

Revised (8/06)                                    Page 5

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Williams & Connolly, LLP**
*John K. Villa*
725 Twelfth Street, N.W., Washington, DC 20005 (202)434-5000

**Willkie Farr & Gallagher**
*Kevin B. Clark (202)303-1105*
1875 K Street, N.W., Washington, DC 20006-1238 (202)303-1000

**WilmerHale**
*Charles A. Davidow / David P. Donovan*
2445 M Street, N.W., Washington, DC 20037 (202)663-6000

**FLORIDA**

**Akerman Senterfitt & Eidson, PA**
*Brian P. Miller (305)982-5626*
SunTrust International Center, 28th Floor, Miami, FL 33131 (305)374-5600

*J. Thomas Cardwell*
Citrus Center, 17th Floor, 255 South Orange Ave., Orlando, FL 32801 (407)843-7860

**Carlton Fields**
*Steven J. Brodie (305)539-7302 / Nancy H. Henry*
4000 International Place, 100 S.E. 2nd Street, Suite 4000, Miami, FL 33131 (305)530-0050

*Gary L. Sasso*
One Harbour Place, Tampa, FL 33602-5790 (813)223-7000

*Gary L. Sasso*
One Progress Plaza, 200 Central Avenue, Suite 2300, St. Petersburg, FL 33701-4352 (727)821-7000

*Steven J. Brodie (305)539-7302*
4221 West Boy Scout Boulevard, 10th Floor, Tampa, FL 33607 (813)223-7000

**Greenberg Traurig, LLP**
*Bradford D. Kaufman*
777 South Flagler Drive, Suite 300, East, West Palm Beach, FL 33401 (561)650-7900

*Hilarie Bass, Esq.*
1221 Brickell Avenue, Miami, FL 33131 (305)579-0500

**Holland & Knight, LLP**
*Tracy A. Nichols / George E. Schulz, Jr.*
50 North Laura Street, Suite 3900, Jacksonville, FL 32202 (904)353-2000

*Tracy A. Nichols / Mitchell Eliot Herr / Gregory A. Baldwin / Louise Brais*
701 Brickell Avenue, Suite 3000, Miami, FL 33131 (305)374-8500

*Tracy A. Nichols / Michael L. Chapman*
100 North Tampa Street, Suite 4100, Tampa, FL 33602 (813)227-8500

Revised (8/06)                          Page 6

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

*Robert R. Feagin, III / Elizabeth L. Bevington*
315 South Calhoun Street, Suite 600, Tallahassee, FL 32301 (850)224-7000

*Tracy A. Nichols / Scott Newman*
625 North Flagler Drive, Suite 700, West Palm Beach, FL 33401 (561)833-2000

*William Wilson*
200 South Orange Avenue, Suite 2600, Orlando, FL 32801 (407)425-8500

**McGuireWoods, LLP**
*\*David M. Wells / Stephen D. Busch (804)775-4378*
Bank of America Tower, 50 North Laura Street, Jacksonville, FL 32202 (904)798-3200

**Squire Sanders & Dempsey, LLP**
*Lewis F. Murphy (305)577-2957 / Wendy Leavitt (305)577-2894*
200 South Biscayne Boulevard, Suite 4000, Miami, FL 33131-2398 (305)577-7000

**White & Case, LLP**
*Charles C. Kline, Esq.*
Wachovia Financial Center, 200 S. Biscayne Blvd., Suite 4900, Miami, FL 33131-2352
(305)371-2700

### GEORGIA

**Alston & Bird, LLP**
*Peter Q. Bassett (404)881-7343 / Todd R. David (404)881-7357*
One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424 (404)881-7000

**King & Spalding**
*M. Robert Thornton / Michael R. Smith*
1188 Peachtree Street, Atlanta, GA 30309 (404)572-4600

**Paul, Hastings, Janofsky & Walker, LLP**
*J. Allen Maines*
600 Peachtree Street, N.E., Twenty-Fourth Floor, Atlanta, GA 30308-2222 (404)815-2400

**Smith, Gambrell & Russell, LLP**
*John G. Despriet*
Promenade II, Suite 3100, 1230 Peachtree Rd., N.E, Atlanta, GA 30309-3592 (404)815-3730

**Womble, Carlyle, Sandridge & Rice**
*Robert R. Ambler, Jr. (404)879-2424 / Nisbet S. Kendrick (404)888-7488*
One Atlantic Center, 1201 West Peachtree, Suite 3500, Atlanta, GA 30309 (404)872-7000

### ILLINOIS

**DLA Piper Rudnick Gray Cary US, LLP**
*Samuel B. Isaacson / Michael S. Poulos*
203 North LaSalle Street, Suite 1800, Chicago, IL 60601-1293 (312)368-4000

Revised (8/06)                    Page 7

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Pamela G. Smith / Leah J. Domitrovic / Steven L. Bashwiner / Mary Ellen Hennessy / Bonita L. Stone*
525 W. Monroe Street, Suite 1600, Chicago, IL 60661-3693 (312)902-5200

**Kirkland & Ellis**
*Robert J. Kopecky*
200 East Randolph Drive, Chicago, IL 60601 (312)861-2000

**Sidley Austin Brown & Wood, LLP**
*Hillie R. Sheppard / Eugene A. Schoon / Walter C. Carlson*
Bank One Plaza, 10 South Dearborn Street, Chicago, IL 60603 (312)853-7734

**Sonnenschein, Nath & Rosenthal**
*Christopher Q. King*
8000 Sears Tower, Chicago, IL 60606 (312)876-8224

**MARYLAND**

**DLA Piper Rudnick Gray Cary US, LLP**
*Mark Muedeking (410)580-3000*
6225 Smith Avenue, Baltimore, MD 21209 (410)580-3000

**MASSACHUSETTS**

**Bingham McCutchen, LLP**
*Jordan D. Hershman*
150 Federal Street, Boston, MA 02110-1726 (617)951-8000

**Edwards Angell Palmer & Dodge, LLP**
*John D. Hughes*
101 Federal Street, Boston, MA 02110-1800 (617)951-3373

**Foley Hoag, LLP**
*Nicholas C. Theodorou (617)832-1163 / Lisa C. Wood (617)832-1117*
Seaport World Trade Center West, 155 Seaport Boulevard, Boston, MA 02210-2600 (617)832-1000

**Goodwin Procter, LLP**
*Stephen D. Poss / Brian E. Pastuszenski / R. Todd Cronan / James S. Dittmar / Carl E. Metzger*
Exchange Place, 53 State Street, Boston, MA 02109-2881 (617)570-1000

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**
*Peter M. Saparoff / Patrick J. Sharkey*
One Financial Center, Boston, MA 02111 (617)542-6000

**Ropes & Gray**
*John D. Donovan, Jr.*
One International Place, Boston, MA 02110-2624 (617)951-7566

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Thomas J. Dougherty*
One Beacon Street, Boston, MA 02108 (617)573-4820

Revised (8/06)                    Page 8

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

**COPY**

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**WilmerHale**
*Jeffrey B. Rudman / William H. Paine / Andrea J. Robinson*
60 State Street, Boston, MA 02109 (617)526-6000

**MINNESOTA**

**Dorsey & Whitney, LLP**
*Brian E. Palmer / Edward J. Pluimer / J. Jackson / Peter W. Carter / Roger J. Magnuson*
50 South Sixth Street, Suite #1500, Minneapolis, MN 55402-1498 (612)340-2600

**Faegre & Benson, LLP**
*Robert L. Schnell / Thomas L. Kimer*
90 South Seventh Street, Minneapolis, MN 55402-3901 (612)336-3000

**Winthrop & Weinstine, PA**
*David P. Pearson (612)604-6692 / Thomas H. Boyd*
Suite 3500, 225 South 6th Street, Minneapolis, MN 55402-4629 (612)604-6400

**NEW YORK**

**Arnold & Porter**
*Kent A. Yalowitz / Scott B. Schreiber (202)942-5672*
399 Park Avenue, New York, NY 10022-4690 (212)715-1000

**Blank Rome, LLP**
*Robert J. Mittman (212)885-5555*
The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 (212)885-5555

**Cadwalader, Wickersham & Taft**
*Gregory A. Markel / Howard R. Hawkins, Jr. / Jonathan M. Hoff*
One World Financial Center, New York, NY 10281 (212)504-6000

**Cahill Gordon & Reindel**
*Charles A. Gilman / Immanuel Kohn / Thomas J. Kavaler*
Eighty Pine Street, New York, NY 10005 (212)701-3000

**Clifford Chance US, LLP**
*James B. Weidner / John K. Carroll / Mark Holland*
31 West 52nd Street, New York, NY 10019-6131 (212)878-8000

**Cravath, Swaine & Moore**
*Evan R. Chesler / Francis P. Barron / Julie A. North / Keith R. Hummel / Paul C. Saunders / Peter T. Barbur / Richard W. Clary / Robert H. Baron / Ronald S. Rolfe / Rory O. Millson / Thomas G. Rafferty*
Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019-7475 (212)474-1000

**DLA Piper Rudnick Gray Cary US, LLP**
*Joseph G. Finnerty, III / Keara M. Gordon / David E. Nachman / John J. Clarke*
1251 Avenue of the Americas, New York, NY 10020-1104 (212)835-6000

**Fried, Frank, Harris, Shriver & Jacobson**
*William G. McGuinness / Alexander R. Sussman / Debra M. Torres / Douglas H. Flaum / John A. Borek*
One New York Plaza, New York, NY 10004 (212)859-8000

Revised (8/06)                    Page 9

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Fulbright & Jaworski, LLP**
*Robert D. Owen*
666 Fifth Avenue, New York, NY 10103-3198 (212)318-3000

**Gibson, Dunn & Crutcher, LLP**
*Wesley G. Howell / Robert F. Serio / Mitchell A. Karlan (212)351-3827*
200 Park Avenue, New York, NY 10166-0193 (212)351-4000

**Greenberg Traurig, LLP**
*Robert A. Horowitz / Brian S. Cousin (212)801-9200*
885 Third Avenue, 21st Floor, New York, NY 10022 (212)801-3134

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Robert W. Gottlieb / Joel W. Sternman*
575 Madison Avenue, New York, NY 10022-2585 (212)940-8800

**Kaye, Scholer, Fierman, Hays & Handler**
*Fredric W. Yerman*
425 Park Avenue, New York, NY 10022 (212)836-8663

**Kirkland & Ellis**
*Yosef J. Riemer*
Citicorp Center, 153 East 53rd Street, New York, NY 10022-4675 (212)446-4800

**Kramer Levin Naftalis & Frankel, LLP**
*Gary P. Naftalis / Alan R. Friedman / Robert N. Holtzman / Jonathan M. Wagner*
1177 Avenue of the Americas, New York, NY 10036 (212)715-9100

**Mayer, Brown Rowe & Maw**
*Dennis P. Orr / Richard A. Spehr / Steven Wolowitz*
1675 Broadway, New York, NY 10019 (212)506-2500

**Milbank, Tweed, Hadley & McCloy**
*Michael L. Hirschfeld / Scott A. Edelman*
1 Chase Manhattan Plaza, New York, NY 10005 (212)530-5149

**Morgan, Lewis & Bockius, LLP**
*Leslie Caldwell / Stuart M. Sarnoff*
101 Park Avenue, New York, NY 10178-0060 (212)309-6000

**Morrison & Foerster, LLP**
*Anthony M. Radice (212)468-8020 / Jack C. Auspitz (212)468-8046*
1290 Avenue of the Americas, New York, NY 10104 (212)468-8000

**Paul, Hastings, Janofsky & Walker, LLP**
*Barry Sher / James D. Wareham*
Park Avenue Tower, 75 E. 55th Street, New York, NY 10022 (212)318-6000

**Paul, Weiss, Rifkind, Wharton & Garrison**
*Daniel J. Beller / Martin Flumenbaum / Claudia Hammerman / Brad S. Karp / Daniel J. Kramer / Mark F. Pomerantz / Richard A. Rosen*
1285 Avenue of the Americas, New York, NY 10019-6064 (212)373-3000

Revised (8/06)                    Page 10

Please visit our website at www.briefbase.com to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**Proskauer Rose, LLP**
*Gregg M. Mashberg*
1585 Broadway, New York, NY 10036–8299 (212)969–3000

**Schulte Roth & Zabel, LLP**
*Betty Santangelo / Howard O. Godnick / Irwin J. Sugarman / Robert M. Abrahams*
919 Third Avenue, New York, NY 10022 (212)756–2000

**Shearman & Sterling**
*Jeremy G. Epstein (212)848-4169 / Steven F. Molo (212)848-7456 / Brian H. Polovoy (212)848-4703 / Stuart J. Baskin (212)848-4974*
599 Lexington Avenue, New York, NY 10022 (212)848–8000

**Sidley Austin Brown & Wood, LLP**
*Theodore N. Miller (213)896-6646 / Barry W. Rashkover / Steven M. Bierman / Robert Pietrzak*
787 Seventh Avenue, New York, NY 10019 (212)839–5300

**Simpson Thacher & Bartlett**
*Bruce D. Angiolillo / Michael J. Chepiga / Paul C. Curnin / Roy L. Reardon*
425 Lexington Avenue, New York, NY 10017 (212)455–2000

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Jonathan J. Lerner*
Four Times Square, New York, NY 10036 (212)735–2550

**Stroock & Stroock & Lavan, LLP**
*Laurence Greenwald / Melvin A. Brosterman / Robert Lewin*
180 Maiden Lane, New York, NY 10038 (212)806–5400

**Sullivan & Cromwell**
*D. Stuart Meiklejohn / Gandolfo V. DiBlasi / John L. Hardiman / John L. Warden / Philip L. Graham, Jr. / Richard H. Klapper*
125 Broad Street, New York, NY 10004–2498 (212)558–4000

**Wachtell, Lipton, Rosen & Katz**
*Paul Vizcarrondo (212)403-1208 / Ted Mirvis*
51 W. 52nd Street, 29th Floor, New York, NY 10019 (212)403–1000

**Weil, Gotshal & Manges, LLP**
*Greg A. Danilow / Irwin H. Warren / Joseph Allerhand / Jonathan D. Polkes (212)310-8881*
767 Fifth Avenue, New York, NY 10153 (212)310–8000

**Willkie Farr & Gallagher**
*Michael R. Young / Richard L. Posen / Stephen W. Greiner*
787 Seventh Avenue, New York, NY 10019–6099 (212)728–8000

**WilmerHale**
*Peter Vigeland / Robert B. McCaw*
520 Madison Ave., New York, NY 10022 (212)230–8800

Revised (8/06)                    Page 11

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**OHIO**

**Jones, Day, Reavis & Pogue**
*John M. Newman, Jr. / John W. Edwards, II*
North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (216)586-3939

**OREGON**

**Davis Wright Tremaine**
*John F. McGrory*
2300 First Interstate Tower, 1300 S.W. Fifth Avenue, Portland, OR 97201 (503)241-2300

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
101 S.W. Main Street, 15th Floor, Portland, OR 97204-3223 (503)221-0607

**Lane Powell Spears Lubersky, LLP**
*Milo Petranovich / Robert E. Maloney*
601 S.W. Second Avenue, Suite 2100, Portland, OR 97204 (503)778-2100

**Stoel Rives, LLP**
*Lois O. Rosenbaum*
900 SW 5th Avenue, Suite 2600, Portland, OR 97204 (503)224-3380

**PENNSYLVANIA**

**Blank Rome, LLP**
*Ian M. Comisky / Alan J. Hoffman*
One Logan Square, Philadelphia, PA 19103 (215)569-5500

**Buchanan Ingersoll, PC**
*John R. Leathers*
One Oxford Centre, 20th Floor, 301 Grant Street, Pittsburgh, PA 15219-8800 (412)562-8800

**Dechert, LLP**
*Jeffrey G. Weil (215)994-2538 / Seymour Kurland (215)994-2235*
4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, PA 19103-2793 (215)994-4000

**Morgan, Lewis & Bockius, LLP**
*Marc J. Sonnenfeld*
1701 Market Street, Philadelphia, PA 19103-2921 (215)963-5000

**Pepper Hamilton, LLP**
*Barbara W. Mather / Jon A. Baughman / Laurence Z. Shiekman (215)981-4347 / M. Duncan Grant / Robert L. Hickok (215)981-4583 / Thomas E. Zemaitis*
3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799 (215)981-4000

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Jay A. Dubow / Jerome J. Shestack / M. Norman Goldberger / Mark L. Alderman*
1650 Arch Street, 22nd Floor, Philadelphia, PA 19103-2097 (215)977-2058

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**TEXAS**

**Akin, Gump, Strauss, Hauer & Feld, LLP**
*Paul R. Bessette (512)499-6250 / Edward S. Koppman / Orrin L. Harrison, III*
1700 Pacific Avenue, Suite 4100, Dallas, TX 75201 (214)969-2800

*Paul R. Bessette (512)499-6250*
Pennzoil Place–South Tower, 711 Louisiana Street, Suite 1900, Houston, TX 77002
(713)220–5800

**Beirne, Maynard & Parsons, LLP**
*Jeffrey R. Parsons (713)960-7302*
1300 Post Oak Boulevard, Suite 2500, Houston, TX 77056–3000 (713)623–0887

**Carrington, Coleman, Sloman & Blumenthal, LLP**
*Fletcher L. Yarbrough / Bruce W. Collins / Tim Gavin*
901 Main Street, Suite 5500, Dallas, TX 75202 (214)855-3000

**Fulbright & Jaworski, LLP**
*Frank G. Jones / Robert S. Harrell / Gerard G. Pecht*
1301 McKinney, Suite 5100, Houston, TX 77010 (713)651-5151

*Karl G. Dial / Michael A. Swartzendruber*
2200 Ross Avenue, Suite 2800, Dallas, TX 75201 (214)855-8000

**Jenkens & Gilchrist, PC**
*John Gilliam, Esq.*
1100 Louisiana, Suite 1800, Houston, TX 77002–5214 (713)951–3300

*John Gilliam, Esq.*
1445 Ross Avenue, Suite 3200, Dallas, TX 75202 (214)855-4306

**King & Spalding**
*Mark K. Glasser*
1100 Louisiana, Suite 4000, Houston, TX 77002 (713)751-3212

**Locke Liddell & Sapp, LLP**
*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
2200 Ross Avenue, Suite 2200, Dallas, TX 75201–6776 (214)740–8000

*Charles R. Parker (713)226-1469*
3400 JPMorgan Chase Tower, 600 Travis, Houston, TX 77002 (713)226-1200

*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
100 Congress Avenue, Suite 300, Austin, TX 78701–4042 (512)305–4700

**Thompson & Knight, LLP**
*Timothy R. McCormick*
1200 Smith Street, Suite 3600, Houston, TX 77002 (713)654-8111

*Timothy R. McCormick*
Burnett Plaza, Suite 1600, 801 Cherry Street, Unit #1, Fort Worth, TX 76102–6881
(817)347–1700

Revised (8/06)                    Page 13

Please visit our website at **www.briefbase.com** to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

*Timothy R. McCormick*
1700 Pacific Avenue, Suite 3300, Dallas, TX 75201 (214)969-1103

*Timothy R. McCormick*
98 San Jacinto Boulevard, Suite 1200, Austin, TX 78701 (512)469-6100

**Vinson & Elkins, LLP**
*Walter B. Stuart / N. Scott Fletcher*
First City Tower, 1001 Fannin St., Suite 2300, Houston, TX 77002-6760 (713)758-2222

**Weil, Gotshal & Manges, LLP**
*Ralph I. Miller*
100 Crescent Court, Dallas, TX 75201 (214)746-7700

*Ralph I. Miller*
700 Louisiana-Suite 1600, Houston, TX 77002 (713)546-5000

**VIRGINIA**

**Cooley Godward, LLP**
*\*Robert R. Vieth, Partner*
One Freedom Square, Reston Town Ctr., 11951 Freedom Dr., Reston, VA 20190-5656
(703)456-8000

**Greenberg Traurig, LLP**
*Joe R. Reeder / John Scalia (703)749-1300*
1750 Tysons Boulevard, 12th Fl., Tysons Corner, VA 22102 (703)749-1300

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / Christian Word (703)456-5226*
Two Freedom Square, 11955 Freedom Drive, Suite 500, Reston, VA 20190-5651 (703)456-1000

**McGuireWoods, LLP**
*Stephen D. Busch (804)775-4378*
One James Center, 901 East Cary Street, Richmond, VA 23219 (804)775-1000

Stephen D. Busch (804)775-4378 / *Charles McIntyre
1750 Tysons Boulevard, Suite 1800, McLean, VA 22102 (703)712-5000

**WilmerHale**
*David P. Donovan*
1600 Tysons Boulevard, 10th Floor, Tysons Corner, VA 22102 (703)251-9700

**Wilson, Sonsini, Goodrich & Rosati**
*Lyle Roberts / Trevor Chaplick (703)734-3100*
2 Fountain Square, Reston Town Ct., 11921 Freedom Drive, Suite 600, Reston, VA 20190-5634
(703)734-3100

**WASHINGTON**

**Davis Wright Tremaine**
*Stephen M. Rummage / Ladd B. Leavens*
2600 Century Square, 1501 Fourth Avenue, Seattle, WA 98101-1688 (206)622-3150

Revised (8/06)                    Page 14

Please visit our website at www.briefbase.com to view additional firms that may have
been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**DLA Piper Rudnick Gray Cary US, LLP**
*Stellman Keehnel*
701 Fifth Avenue, Suite 7000, Seattle, WA 98104 (206)839–4800

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
1111 Third Avenue, Suite 3400, Seattle, WA 98101–3299 (206)447–8998

**Heller, Ehrman, White & McAuliffe**
*George E. Greer*
701 Fifth Avenue, Suite 6100, Seattle, WA 98104–7098 (206)447–0900

**Lane Powell Spears Lubersky, LLP**
*James B. Stoetzer (206)277-9511 / Rudy A. Englund / Larry S. Gangnes / Christopher B. Wells*
1420 Fifth Avenue, Suite 4100, Seattle, WA 98101–2338 (206)223–7000

**Perkins Coie, LLP**
*Harry H. Schneider, Jr. / Ronald L. Berenstain*
1201 Third Avenue, Ste. 4800, Seattle, WA 98101–3099 (206)583–8888

**Wilson, Sonsini, Goodrich & Rosati**
*Barry M. Kaplan*
701 Fifth Avenue, Suite 5100, Seattle, WA 98104 (206)883–2500

Revised (8/06)                Page 15

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## ENDORSEMENT# 1

This endorsement, effective *12:01 am    September 27, 2006*    forms a part of
policy number  *673-84-28*
issued to   *AMERICAN HOME MORTGAGE HOLDINGS, INC*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### D&O 2/2000 AMENDMENTS
### PARTNERSHIP GOLDSM

In consideration of the payment of the premium it is hereby understood and agreed that
the policy is hereby amended as follows:

(1) All the terms and conditions of policy form 73063 (4/99) and 73064 (4/99) shall
apply to coverage as is afforded by this endorsement unless specifically stated
otherwise herein or in any endorsement attached hereto.

(2) Items 4, 5 and 6 of the Declarations are hereby deleted in their entirety and replaced
by the following:

| 4 | **LIMIT OF LIABILITY** (hereinafter "Limit of Liability") For all Loss, in the aggregate, under this policy including Defense Costs: | | | | $10,000,000 |
|---|---|---|---|---|---|
| 5 | **RETENTION:** Not applicable to Non-Indemnifiable Loss and certain Defense Costs - (See Clause 6 for details.) | | | | |
| 5(a) | Securities Claims: | $500,000 | 5(b) | Employment Practices Claims: | $300,000 |
| 5(c) | All other Claims: | $300,000 | | | |
| 6 | **CONTINUITY DATE** (herein "Continuity Date"): | | | | |
| 6(a) | Coverages A and B, other than Outside Entity Executive coverage: | 9/27/2002 | 6(b) | Outside Entity Executive coverage, including Coverage C: | The date on which the Director or Officer first served as an Outside Entity Executive of such Outside Entity. |
| 6(c) | Coverage D: | 9/27/2002 | | | |

(3) The following additional Item is hereby added to the Declarations as Item 8.

| 8 | CRISISFUND<sup>SM</sup> limit: | | | | |
|---|---|---|---|---|---|
| 8(a) | Crisis Loss: | $50,000 | 8(b) | Additional CRISISFUND<sup>SM</sup> for Delisting Crisis Loss: | $25,000 |

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

*COPY*        *END 1*

## ENDORSEMENT# *1*   (Continued)

This endorsement, effective *12:01 am*   | *September 27, 2006*   forms a part of
policy number   *673-84-28*
issued to   *AMERICAN HOME MORTGAGE HOLDINGS, INC*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

(4)   Clause 1. INSURING AGREEMENTS is hereby deleted in its entirety and replaced by
the following:

### 1.   INSURING AGREEMENTS

With respect to Coverage A, B C and E, solely with respect to Claims first made
against an Insured during the Policy Period or the Discovery Period (if applicable)
and reported to the Insurer pursuant to the terms of this policy, and subject to
the other terms, conditions and limitations of this policy, this policy affords the
following coverage:

#### COVERAGE A: NATURAL PERSON INSUREDS AND GENERAL PARTNER LIABILITY INSURANCE

This policy shall pay the Loss of any Natural Person Insured and General Partner
of an Organization arising from a Claim made against such Natural Person
Insured for any Wrongful Act of such Natural Person Insured or General Partner
of an Organization, except when and to the extent that the Organization has
indemnified such Natural Person Insured or General Partner. Coverage A shall
not apply to Loss arising from a Claim made against an Outside Entity Executive.

#### COVERAGE B: ORGANIZATION LIABILITY INSURANCE

*(i)*   *Organization Securities Claim Liability*: This policy shall pay the Loss of any
Organization arising from a Securities Claim made against such
Organization for any Wrongful Act of such Organization.

*(ii)*   *Indemnification of a Natural Person Insured or General Partner*: This policy
shall pay the Loss of an Organization arising from a Claim made against a
Natural Person Insured or General Partner (including an Outside Entity
Executive) for any Wrongful Act of such Natural Person Insured or General
Partner, but only to the extent that such Organization has indemnified such
Natural Person Insured or General Partner.

#### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the Loss of any Outside Entity Executive arising from a
Claim made against such Outside Entity Executive for any Wrongful Act of such
Outside Entity Executive but only excess of any indemnification provided by an
Outside Entity and any insurance coverage afforded to an Outside Entity or its
directors, officers, trustees, governors, management committee members or
members of the management board (or equivalent position) applicable to such
Claim, except when and to the extent that a Company has indemnified such
Outside Entity Executive.   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

*COPY*   *END 1*

**ENDORSEMENT# 1**    **(Continued)**

This endorsement, effective *12:01 am*     *September 27, 2006*     forms a part of
policy number  *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COVERAGE D: CRISISFUNDSM INSURANCE

This policy shall pay the Crisis Loss (including Delisting Crisis Loss) of an Organization solely with respect to a Crisis (including a Delisting Crisis) occurring during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy, up to the amount of the respective CrisisFundSM, from first dollar; provided that payment of any Crisis Loss under this policy shall not waive any of the Insurer's rights under this policy or at law. This Coverage D shall apply regardless of whether a Claim is ever made against an Insured arising from such Crisis and, in the case where a Claim is made, regardless of whether the amount is incurred prior to or subsequent to the making of the Claim.

### COVERAGE E: UNDERWRITERS PUBLIC OFFERING LIABILITY INSURANCE

This policy shall pay the Loss of the Underwriters arising from a Securities Claim made against them, for any actual or alleged Wrongful Act in connection with a Public Offering, only if and to the extent that an Insured Person or the Organization is required to indemnify the Underwriters pursuant to the Underwriting Agreement but does not in fact indemnify due to Financial Insolvency. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

(5)    Clause 2. DEFINITIONS (b), (c), (e) (f), (g), (h), (i), (j), (k), (n), (o), (q), (s), (u), (v), and (w) are hereby deleted and replaced by the following:

(b)    "Claim" means:

(1)    a written demand for monetary, non-monetary or injunctive relief;

(2)    a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

(3)    a civil, criminal, administrative or regulatory investigation of an Insured Person or the Underwriter:

(i)    once such Insured Person or Underwriter is identified in writing by such investigating authority as a person against whom a proceeding

NOTICE: Definitions (b)(2) may have been added or APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

END 1

2-14176

*COPY*

## ENDORSEMENT# *1*   (Continued)

This endorsement, effective  *12:01 am*   :   *September 27 , 2006*   forms a part of
policy number   *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

> (ii)  in the case of an investigation by the SEC or a similar state or
> foreign government authority, after the service of a subpoena upon
> such Insured Person or Underwriter.

The term "Claim" shall include any Securities Claim, and any Employment
Practices Claim.

(c)  "Company" means:

   (1)  the Named Entity (if a corporation, limited liability company, or joint
   venture);

   (2)  each Subsidiary; and

   (3)  in the event a bankruptcy proceeding shall be instituted by or against the
   foregoing entities, the resulting debtor-in-possession (or equivalent status
   outside the United States), if any.

(e)  "Defense Costs" means reasonable and necessary fees, costs and expenses
consented to by the Insurer (including premiums for any appeal bond,
attachment bond or similar bond arising out of a covered judgment, but without
any obligation to apply for or furnish any such bond) resulting solely from the
investigation, adjustment, defense and/or appeal of a Claim against an Insured,
but excluding any compensation of any Insured Person, Underwriter, or any
Employee of an Organization.

(f)  "Director(s) or Officer(s)" means any:

   (1)  past, present and future duly elected or appointed director, officer, trustee
   or governor of a Company formed as a corporation, management
   committee member of a Company formed as a joint venture and member
   of the management board of a Company formed as a limited liability
   company (or equivalent position);

   (2)  past, present and future person in a duly elected or appointed position in a
   Company organized and operated in a Foreign Jurisdiction that is
   equivalent to an executive position listed in Definition (f)(1); or

   (3)  past, present and future General Counsel and Risk Manager (or equivalent
   position of the Company.

**NOTICE.**   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

**COPY**            *END 1*

**ENDORSEMENT#** *1*     **(Continued)**

This endorsement, effective *12:01 am*     *September 27, 2006*     forms a part of
policy number    *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

    (g)  "Employee" means any past, present or future employee of the Organization, other than any Director or Officer, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee.

    (h)  "Employment Practices Violation" means any actual or alleged:

        (1)  wrongful dismissal, discharge or termination, either actual or constructive, of employment;

        (2)  harassment (including but not limited to sexual harassment);

        (3)  discrimination;

        (4)  retaliation;

        (5)  employment-related misrepresentation;

        (6)  employment-related libel, slander, humiliation, defamation or invasion of privacy;

        (7)  wrongful failure to employ or promote;

        (8)  wrongful deprivation of career opportunity, wrongful demotion or negligent Employee evaluation;

        (9)  wrongful discipline;

        (10) failure to grant tenure; or

        (11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to a Director or Officer of, an Employee of or an applicant for employment with an Organization or an Outside Entity, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, "Employment Practices Violation" shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

*COPY*     *END 1*

<u>ENDORSEMENT# *1*</u>   **(Continued)**

This endorsement, effective *12:01 am*   :   *September 27, 2006*   forms a part of
policy number   *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

(i)   "General Partner" means:

    (i)   the Named Entity;

    (ii)   any Subsidiary or Limited Partnership;

    (iii)   any Director, Officer or Employee of an Organization; or

    (iv)   any other person or entity listed as such in an endorsement attached
    hereto,

acting in the capacity as a general partner of a Limited Partnership.

The term "General Partner" shall also include any director, officer, member of
the Board of Managers, trustee, Employee, or past, present, and future General
Counsel and Risk Manager (or equivalent position) of an entity General Partner
described above, but only if such individual is acting on behalf of such entity
General Partner in its capacity as a General Partner for a Limited Partnership.

(j)   "Indemnifiable Loss" means Loss for which an Organization or General Partner
has indemnified or is permitted or required to indemnify a Natural Person
Insured or natural person General Partner pursuant to law or contract or the
charter, bylaws, operating agreement or similar documents of an Organization.

(k)   "Insured(s)" means:

    (1)   each Natural Person Insured;

    (2)   each General Partner; and

    (3)   each Organization, but solely with respect to Securities Claims.

    (4)   Underwriters, but only with respect to a Securities Claim; or

(n)   "Loss" means damages, settlements, judgments (including pre/post-judgment
interest on a covered judgment), Defense Costs and Crisis Loss; however,
"Loss" (other than Defense Costs) shall not include: (1) civil or criminal fines or
penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied
portion of multiplied damages; (5) any amounts for which an Insured is not
financially liable or which are without legal recourse to an Insured; and (6)
matters ~~which may be deemed uninsurable under the law~~ pursuant to which
this policy shall be construed.

**NOTICE.**   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

*COPY*   <u>END 1</u>

**ENDORSEMENT# *1***    **(Continued)**

This endorsement, effective *12:01 am*      *September 27, 2006*      forms a part of
policy number *673-84-28*
issued to      *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

Notwithstanding the foregoing paragraph, Loss shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any Natural Person Insured pursuant to Section 2(g) (2)(C) of the Foreign Corrupt Practices Act, 15 U.S.C. ' 78dd-2(g)(2)(C); and (2) solely with respect to Securities Claims, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a Claim alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, Loss with respect to such Claim shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to Defense Costs or to any Non-Indemnifiable Loss in connection therewith.

(o)   "Natural Person Insured" means any:

(1)   Director or Officer;

(2)   Employee; and

(3)   Outside Entity Executive.

(q)   "No Liability" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every Insured named in the Claim, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every Insured named in the Claim. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(s)   "Outside Entity" means any: (1) not-for-profit entity; or (2) other entity listed as an "Outside Entity" in an endorsement attached to this policy.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*END.1*

*2-14176*

**COPY**

ENDORSEMENT# 1    (Continued)

This endorsement, effective  *12:01 am*  ,  *September 27, 2006*    forms a part of
policy number  *673-84-28*
issued to  *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

(u)  "Securities Claim" means a Claim, other than an administrative or regulatory
proceeding against, or investigation of an Organization, made against any
Insured:

(1)  alleging a violation of any federal, state, local or foreign regulation, rule or
statute regulating securities (including but not limited to the purchase or
sale or offer or solicitation of an offer to purchase or sell securities) which
is:

(a)  brought by any person or entity alleging, arising out of, based upon
or attributable to the purchase or sale or offer or solicitation of an
offer to purchase or sell any securities of an Organization; or

(b)  brought by a security holder of an Organization with respect to such
security holder's interest in securities of such Organization; or

(2)  brought derivatively on the behalf of an Organization by a security holder
of such Organization.

Notwithstanding the foregoing, the term "Securities Claim" shall include an
administrative or regulatory proceeding against an Organization, but only if and
only during the time that such proceeding is also commenced and continuously
maintained against a Natural Person Insured.

(v)  "Subsidiary" means:

(1)  any for-profit entity that is not formed as a partnership of which the
Named Entity, a Limited Partnership or a General Partner has Management
Control on or before the inception of the Policy Period either directly or
indirectly through one or more other Subsidiaries;

(2)  any for-profit entity that is not formed as a partnership of which the
Named Entity, a Limited Partnership or a General Partner first had
Management Control during the Policy Period, whether directly or
indirectly through one or more other Subsidiaries, and:

(i)  whose assets total less than 25% of the total consolidated assets of
each and every Organization as of the inception date of this policy;

NOTICE:    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

2-14176

*COPY*        END 1

**ENDORSEMENT# _1_** **(Continued)**

This endorsement, effective _12:01 am_        _September 27, 2006_        forms a part of
policy number  _673-84-28_
issued to  _AMERICAN HOME MORTGAGE INVESTMENT CORP._

by    _National Union Fire Insurance Company of Pittsburgh, Pa._

> (ii)    whose assets total 25% or more than the total consolidated assets
> of each and every Organization as of the inception date of this
> policy, but such entity shall be a "Subsidiary" only: (i) for a period of
> sixty (60) days from the date the Named Entity, Limited Partnership
> or General Partner first had Management Control of such entity; or
> (ii) until the end of the Policy Period, which ever ends or occurs first
> (hereinafter "Auto-Subsidiary Period");
>
> provided that the Named Entity, Limited Partnership, General Partner or
> any other Insured shall report such Subsidiary to the Insurer, in writing,
> prior to the end of the Policy Period; and
>
> (3)    any not-for-profit entity under section 501(c)(3) of the Internal Revenue
> Code of 1986 (as amended) sponsored exclusively by an Organization.
>
> The Insurer shall extend coverage for any Subsidiary described in Clause
> 2(v)(2)(ii) above, and any Natural Person Insured thereof, beyond its respective
> Auto-Subsidiary Period if during such Auto-Subsidiary Period, the Insured's
> Representative shall have provided the Insurer with full particulars of the new
> Subsidiary and agreed to any additional premium and amendment of the
> provisions of this policy required by the Insurer relating to such Subsidiary.
>
> Further, coverage as shall be afforded to any Subsidiary and any Natural Person
> Insured thereof is conditioned upon the Insured's Representative paying when
> due any additional premium required by the Insurer relating to such Subsidiary.

In all events, coverage as is afforded under this policy with respect to a Claim made
against any Company and/or any Natural Person Insured thereof shall only apply for
Wrongful Acts committed or allegedly committed after the effective time such
Company became a Company and such Natural Person Insured became a Natural
Person Insured, and prior to the effective time that such Company ceases to be a
Company or such Natural Person Insured ceases to be a Natural Person Insured. A
Subsidiary ceases to be an Company when the Named Entity, Limited Partnership or
General Partner no longer maintains Management Control of such Subsidiary either
directly or indirectly through one or more of its other Subsidiaries.

**NOTICE:**    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

_END 1_

2-14176

*COPY*

**ENDORSEMENT# *1*    (Continued)**

This endorsement, effective *12:01 am*   *September 27, 2006*    forms a part of policy number *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*


(w) "Wrongful Act" means:

(1)    any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged Employment Practices Violation:

(i)    with respect to any Director or Officer, by such Director or Officer in his or her capacity as such or any matter claimed against such Director or Officer solely by reason of his or her status as such;

(ii)    with respect to any Employee of an Organization, by such Employee in his or her capacity as such, but solely in regard to any: (a) Securities Claim; or (b) other Claim so long as such other Claim is also made and continuously maintained against a Director or Officer of an Organization; or

(iii)   with respect to any Outside Entity Executive, by such Outside Entity Executive in his or her capacity as such or any matter claimed against such Outside Entity Executive solely by reason of his or her status as such; or

(2)    with respect to an Organization, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Organization, but solely in regard to any Securities Claim.

(3)    with respect to any General Partner, any actual or alleged Employment Practices Violation or any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such General Partner in his, her or its capacity as such, or any matter claimed against such General Partner by reason of his, her or its status as a General Partner of a Limited Partnership;

(4)    with respect to the Underwriters, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in its/their respective capacity as such or any matter claimed against them solely by reason of its/their status as Underwriters, but solely as respects a Securities Claim in connection with a Public Offering (including any negotiations, discussions or decisions in connection with a Public Offering that occurred prior to the filing of the Registration Statement):

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

**COPY**    *END 1*

**ENDORSEMENT# _1_**   **(Continued)**

This endorsement, effective  _12:01 am_        _September 27, 2006_       forms a part of
policy number   _673-84-28_
issued to     _AMERICAN HOME MORTGAGE INVESTMENT CORP._

by      _National Union Fire Insurance Company of Pittsburgh, Pa._

(6)   Clause 2. DEFINITIONS is hereby amended by adding the following additional
      definitions:

    (x)   "Crisis" has the meaning as defined in Appendix B attached to this policy.

    (y)   "CrisisFundSM" means:

        (1)   in the case of all Crisis Loss, other than Delisting Crisis Loss, the dollar
              amount set forth in Item 10(a) of the Declarations; and

        (2)   in the case of Delisting Crisis Loss the dollar amount set forth in Item
              10(a) of the Declarations plus the additional dollar amount set forth in
              Item 10(b) of the Declarations, combined.

    (z)   "Crisis Loss" has the meaning as defined in Appendix B attached to this policy.
          "Delisting Crisis Loss" means a Crisis Loss resulting solely from a Delisting
          Crisis (as defined in Appendix B).

    (aa)  "Employment Practices Claim" means a Claim alleging any Employment
          Practices Violation.

    (bb)  "Foreign Jurisdiction" means any jurisdiction, other than the United States or
          any of its territories or possessions.

    (cc)  "Foreign Policy" means the Insurer's or any other member company of
          American International Group, Inc.'s (AIG) standard directors and officers or
          executive managerial liability policy (including all mandatory endorsements, if
          any) approved by AIG to be sold within a Foreign Jurisdiction that provides
          coverage substantially similar to the coverage afforded under this policy. If
          more than one such policy exists, then "Foreign Policy" means the standard
          policy most recently registered in the local language of the Foreign Jurisdiction,
          or if no such policy has been registered, then the policy most recently
          registered in that Foreign Jurisdiction. The term "Foreign Policy" shall not
          include any partnership managerial, pension trust or professional liability
          coverage.

    (dd)  "Management Control" means: (1) owning interests representing more than
          50% of the voting, appointment or designation power for the selection of a
          majorit~~y of the Board of Directors of a corporation;~~ the management
          commi~~ttee members of~~ a joint venture; or the members o~~f~~ the management
          board o~~f a limited liability company; POLICY HAVING the right,~~ pursuant to written

APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

_COPY_       _END 1_

## ENDORSEMENT# *1*    (Continued)

This endorsement, effective  *12:01 am*  :   *September 27 , 2006*    forms a part of
policy number   *673—84—28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by     *National Union Fire Insurance Company of Pittsburgh , Pa .*

contract or the by-laws, charter, operating agreement or similar documents of
an Organization, to elect, appoint or designate a majority of: the Board of
Directors of a corporation; the management committee of a joint venture; or the
management board of a limited liability company.

(ee) "Non-Indemnifiable Loss" means Loss for which an Organization has neither
indemnified nor is permitted or required to indemnify a Natural Person Insured or
natural person General Partner pursuant to law or contract or the charter,
bylaws, operating agreement or similar documents of an Organization.

(ff) "Outside Entity Executive" means any: (1) Director or Officer who is or was
acting at the specific written request or direction of an Organization as a
director, officer, trustee, governor, management committee member or member
of the management board (or equivalent position) of an Outside Entity; or (2)
any other person listed as an Outside Entity Executive in an endorsement
attached to this policy.

(gg) "Pollutants" means, but is not limited to, any solid, liquid, gaseous or thermal
irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis,
chemicals and Waste. "Waste" includes, but is not limited to, materials to be
recycled, reconditioned or reclaimed.

(hh) "Public Offering" means any actual or proposed offering of securities of the
Organization described in a Registration Statement filed pursuant to the
Securities Act of 1933 (as amended) (or similar state or foreign securities
laws), including but not limited to a filed Registration Statement which does not
become effective, and an effective Registration Statement for securities that
are not to be presently offered to the public (otherwise known as a
shelf-registration).

(ii) "Registration Statement" means: (1) the registration statement listed in Item 10
of the Declarations (including any amendments thereto); and (2) any registration
statement filed with the Securities and Exchange Commission (or similar state
or foreign agency) after the effective date of this policy, in connection with a
Public Offering.

**NOTICE:**   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 1

*2-14176*

**COPY**

**ENDORSEMENT# *1*** **(Continued)**

This endorsement, effective *12:01 am*     *September 27, 2006*     forms a part of
policy number  *873-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*


by ·    *National Union Fire Insurance Company of Pittsburgh, Pa.*


(jj) " Underwriters" means the underwriter(s) designated in a Registration Statement and named in the Underwriting Agreement (including any partners, directors, officers and employees of such underwriter(s)), any person who controls the underwriters within the meaning of Section 15 of the Securities Act of 1933 (as amended) and any other individuals of the underwriters who are indemnified pursuant to the Underwriting Agreement.

(kk) "Underwriting Agreement" means any written obligation, which is referred to in a Registration Statement, by an Insured Person and/or the Organization to indemnify the Underwriters from liabilities in connection with a Public Offering.

(7) Clause 2. DEFINITIONS (d) "Continuity Date" is hereby deleted in its entirety.

(8) Clause 4. EXCLUSIONS (e), (f), (i), (k), (l) and (m) are deleted in their entirety and replaced by the following:

(e) alleging, arising out of, based upon or attributable to, as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an Employment Practices Claim;

(i) which is brought by or on behalf of an Organization or any general partner thereof or any Natural Person Insured, other than an Employee of an Organization; or which is brought by any security holder, limited partner, member of an Organization, or entity General Partner, whether directly or derivatively, unless such security holder's, limited partner's, or member's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of an Insured; provided, however, this exclusion shall not apply to:

(1) any Claim brought by a Natural Person Insured in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from, a Claim that is covered by this policy;

(2) any Employment Practices Claim brought by a Natural Person Insured, other than a Natural Person Insured who is or was a member of the Board

COPYRIGHT© THESE POLICY FORMS AND THE
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 1

COPY

**ENDORSEMENT# *1*     (Continued)**

This endorsement, effective *12:01 am*     *September 27 , 2006*     forms a part of
policy number *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

of Directors (or equivalent governing body) of an Organization;

  (3)   in any bankruptcy proceeding by or against an Organization, any Claim brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such Organization, if any;

  (4)   any Claim brought by any past Director or Officer of a Company or past natural person General Partner who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, general partner, General Counsel or Risk Manager (or equivalent position) of or consultant for an Organization for at least four (4) years prior to such Claim being first made against any person; or

  (5)   any Claim brought by a Director or Officer of a Company formed and operating in a Foreign Jurisdiction against such Company or any Director or Officer thereof, provided that such Claim is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

  (6)   any Claim brought by an Underwriter;

(k)   for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(l)   alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, (including but not limited to a Claim alleging damage to an Organization or its securities holders); provided, however, that this exclusion shall not apply to Non-Indemnifiable Loss, other than Non-Indemnifiable Loss constituting Cleanup Costs;

"Cleanup Costs" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of Pollutants.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*END 1*

*2-14176*

*COPY*

**ENDORSEMENT# 1**    **(Continued)**

This endorsement, effective  *12:01 am*        *September 27, 2006*      forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

   (m)   for violation(s) of any of the responsibilities, obligations or duties imposed upon
         fiduciaries by the Employee Retirement Income Security Act of 1974 or
         amendments thereto, or any similar provisions of any state, local or foreign
         statutory or common law; and

(9)  Clause 4. EXCLUSIONS is hereby amended by deleting the bracketed paragraph
     following exclusion (c) that reads "(For the purpose of determining the applicability of
     the foregoing exclusions 4(a) through 4(c), the facts pertaining to and knowledge
     possessed by any Insured shall not be imputed to any Natural Person Insured; only
     facts pertaining to and knowledge possessed by any past, present or future chairman
     of the board, president, chief executive officer, chief operating officer, chief financial
     officer of the Organization, or any entity General Partner shall be imputed to the
     Organization or entity General Partner)."

(10) Clause 4. EXCLUSIONS is hereby amended by adding the following:

   (p)   alleging, arising out of, based upon or attributable to, any selling or offering
         materials other than a Registration Statement, prospectus or any supplement or
         amendment to a Registration Statement or a prospectus contained therein,
         unless such supplement or amendment was submitted to the representative of
         the Underwriters designated in the Registration Statement prior to being used
         or filed.

(11) Clause 4. EXCLUSIONS is hereby amended by adding the following at the end
     thereof:

     For the purpose of determining the applicability of the foregoing Exclusions 4(a)
     through 4(c) and Exclusion 4(g): (1) the facts pertaining to and knowledge possessed
     by any Insured shall not be imputed to any other Natural Person Insured or natural
     person General Partner; and (2) only facts pertaining to and knowledge possessed by
     any past, present or future chairman of the board, president, chief executive officer,
     chief operating officer, chief financial officer or General Counsel (or equivalent
     position) of an Organization or entity General Partner shall be imputed to an
     Organization or natural person General Partner.

     This Clause 4. EXCLUSIONS, shall not be applicable to Crisis Loss.

**NOTICE:**    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*END 1*

*2-14176*

*COPY*

**ENDORSEMENT# *1*** **(Continued)**

This endorsement, effective *12:01 am* : *September 27, 2006* forms a part of
policy number *673-84-28*
Issued to *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by *National Union Fire Insurance Company of Pittsburgh, Pa.*

(12) Clause 5. LIMIT OF LIABILITY is hereby deleted in its entirety and replaced by the
following:

### 5. LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)

The Limit of Liability stated in Item 4 of the Declarations is the aggregate limit of
the Insurer's liability for all Loss, under Coverages A, B, C, D and E combined,
arising out of all Claims first made against each and every Insured, and all Crisis
Loss occurring, during the Policy Period and the Discovery Period (if applicable).
The Limit of Liability for the Discovery Period and the CrisisFundSM shall be part
of, and not in addition to, the Limit of Liability for the Policy Period. Further, a
Claim which is made subsequent to the Policy Period or Discovery Period (if
applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the
Policy Period or Discovery Period shall also be subject to the one aggregate Limit
of Liability stated in Item 4 of the Declarations. The limit of the Insurer's liability
for Crisis Loss and Delisting Crisis Loss arising from all Crises occurring during
the Policy Period, in the aggregate, shall be the amounts set forth as the
CrisisFundSM. The CrisisFundSM shall be the aggregate limit of the Insurer's
liability for all Crises under this policy regardless of the number of Crises
occurring during the Policy Period.

The amounts referred to in all of the foregoing shall be part of and not in addition
to the Limit of Liability stated in Item 4 of the Declarations and shall in no way
be construed to increase such limit.

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability.
Defense Costs are part of Loss and as such are subject to the Limit of Liability
for Loss.**

(13) Clause 6. RETENTION CLAUSE is hereby deleted in its entirety and replaced by the
following:

### 6. RETENTION CLAUSE

For each Claim, the Insurer shall only be liable for the amount of Loss arising
from a Claim which is in excess of the applicable Retention amounts stated in
Items 5(a), 5(b), 5(c) of the Declarations, such Retention amounts to be borne by
the Insureds and remain uninsured, with regard to all Loss other than
Non-Indemnifiable Loss. The Retention amount specified in:

(i)     Item 5(a) applies to Defense Costs that arise out of a Securities Claim;

**NOTICE.** THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*END 1*

*2-14176*

*COPY*

**ENDORSEMENT#** *1*    **(Continued)**

This endorsement, effective *12:01 am*    *September 27, 2006*    forms a part of
policy number *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

(ii)   Item 5(b) applies to Loss that arises out of an Employment Practices Claim; and

(iii)  Item 5(c) applies to Loss that arises out of any Claim other than a Securities Claim or Employment Practices Claim.

A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or related Wrongful Acts.

In the event a Claim triggers more than one of the Retention amounts stated in Items 5(a), 5(b), and 5(c) of the Declarations, then, as to that Claim, the highest of such Retention amounts shall be deemed the Retention amount applicable to Loss (to which a Retention is applicable pursuant to the terms of this policy) arising from such Claim.

Further, with respect to all Claims, other than Employment Practices Claims, no Retention shall apply to Loss arising from such Claims and the Insurer shall reimburse Defense Costs otherwise covered hereunder and paid by the Insured, in the event of: (1) a determination of No Liability of each and every Insured against whom the same Claim or related Claims have been made; or (2) a dismissal or a stipulation to dismiss each and every Insured against whom the same Claim or related Claims have been made without prejudice and without the payment of any consideration by or on behalf of any Insured. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such Claim is not brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an Organization in a form acceptable to the Insurer that such reimbursement shall be paid back by such Organization to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period.

No Retention amount is applicable to Crisis Loss or Non-Indemnifiable Loss.

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*END-1*

*2-14176*

*COPY*

**ENDORSEMENT#** 1      **(Continued)**

This endorsement, effective  *12:01 am*  |  *September 27, 2006*   forms a part of
policy number   *873-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

(14) Clause 7. NOTICE/CLAIM REPORTING PROVISIONS, paragraph (a) is hereby deleted in its entirety and replaced by the following:

(a) The Organization, the Insured's Representative or the Insured shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a Claim made against an Insured or a Crisis as soon as practicable: (I) after the Named Entity's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim; or (ii) the Crisis commences, but in all events no later than either:

(1) the end of the Policy Period or the Discovery Period (if applicable); or

(2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim was first made against an Insured within the final 30 days of the Policy Period or the Discovery Period (if applicable).

(15) The last paragraph of Clause 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS) which reads:

In the event of Loss arising from a Claim or Claims for which payment is due under the provisions of this policy, then the Insurer shall:

(a) first, pay such Non-Indemnifiable Loss for which coverage is provided under Coverage A of this policy; and

(b) then, with respect to whatever remaining amount of the Limit of Liability is available after payment of such Non-Indemnifiable Loss, at the written request of the chief executive officer of the Insured's Representative, the Named Entity or any General Partner thereof, either pay or withhold payment of such other Loss for which coverage is provided under this policy.

In the event the Insurer withholds payment pursuant to subparagraph (b) above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the Insured's Representative, Named Entity or any General Partner thereof, remit such payment to such Insured's Representative, Named Entity or General Partner or directly to or on behalf of a Natural Person Insured.

is hereby deleted

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

END 1

*2-14176*

**COPY**

**ENDORSEMENT# *1***    **(Continued)**

This endorsement, effective *12:01 am*       *September 27, 2006*    forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is further understood and agreed that Clause 9. PRE-AUTHORIZED SECURITIES
DEFENSE ATTORNEYS is amended as follows:

The following sentence is added to the first paragraph:

The Underwriters may select a Panel Counsel Firm to conduct the defense of the
Securities Claim made against them.

(16) The second paragraph of Clause 10. DISCOVERY CLAUSE is hereby deleted in its
entirety and replaced by the following:

The Additional Premium Amount for: (1) one year shall be 75% of the "full annual
premium"; (2) two years shall be 150% of the "full annual premium"; (3) three years
shall be 225% of the "full annual premium". As used herein, "full annual premium"
means the premium level in effect immediately prior to the end of the Policy Period.
The rights contained in this paragraph shall terminate, however, unless written notice
of such election together with the additional premium due is received by the Insurer
within 60 days of the effective date of cancellation or nonrenewal. The Additional
Premium for the Discovery Period shall be fully earned at the inception of the
Discovery Period. The Discovery Period is not cancelable. This clause and the rights
contained herein shall not apply to any cancellation resulting from non-payment of
premium.

(17) Clause 11. CANCELLATION CLAUSE is hereby deleted in its entirety and replaced by
the following:

**11. CANCELLATION CLAUSE**

This policy may not be canceled by the Insured(s) or by the Insurer, except as
indicated below.

Notwithstanding the foregoing, this policy may be canceled by or on the behalf
of the Insurer only in the event of nonpayment of premium by the Insured's
Representative. In the event of non-payment of premium by the Insured's
Representative, the Insurer may cancel this policy by delivering to the Insured's
Representative or by mailing to the Insured's Representative, by registered,
certified, or other first class mail, at the Insured's Representative's address as
shown in item 1 of the Declarations, written notice stating when, not less than
15 days thereafter, the cancellation shall be effective. The mailing of such
notice as aforesaid shall be sufficient proof of notice. the Policy Period

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.   HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 1

*2-14176*

**COPY**

## ENDORSEMENT# *1*    (Continued)

This endorsement, effective  *12:01 am*    *September 27 , 2006*    forms a part of
policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

terminates at the date and hour specified in such notice, or at the date and time
of surrender.

If the period of limitation relating to the giving of notice is prohibited or made
void by any law controlling the construction thereof, such period shall be deemed
to be amended so as to be equal to the minimum period of limitation permitted
by such law.

It is further understood and agreed that the premium set forth on the Declaration
page shall be fully earned as of the inception date of this policy.

This policy is a result of a negotiated agreement, the reliance upon which is
material to the Insurer's acceptance of the risk. Therefore, in the event that this
endorsement is held to be unenforceable for any reason, in part or in whole, this
policy shall become null and void ab initio.

(18) Clause 12. TERMINATION OF COVERAGE FOR WRONGFUL ACTS AFTER CERTAIN
TRANSACTIONS paragraph 2. is hereby deleted in its entirety and replaced by the
following:

2.    any person or entity or group of persons and/or entities acting in concert
shall acquire Management Control of the Insured's Representative;

(19) Clause 14. OTHER INSURANCE AND INDEMNIFICATION is hereby deleted in its
entirety and replaced by the following:

### 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any
other valid and collectible insurance, unless such other insurance is written only
as specific excess insurance over the Limit of Liability provided by this policy.
This policy shall specifically be excess of any other valid and collectible
insurance pursuant to which any other insurer has a duty to defend a Claim for
which this policy may be obligated to pay Loss.

In the event of a Claim made against an Outside Entity Executive, coverage as is
afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be
specifically excess of: (1) any indemnification provided by an Outside Entity; and
(2) any insurance coverage afforded to an Outside Entity or its Executives
applicable to such Claim. Further, in the event such other Outside Entity
insurance is provided by the Insurer or any other member company of American

THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*END 1*

*COPY*

**ENDORSEMENT# 1**    **(Continued)**

This endorsement, effective *12:01 am*      *September 27, 2006*      forms a part of
policy number   *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the Insurer's maximum aggregate Limit of Liability for all Loss under this policy, as respects any such Claim, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such Outside Entity.

(20) The heading of Clause 17. DISPUTE RESOLUTION PROCESS is hereby deleted in its entirety and replaced by the following:

### 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

(21) Clause 19 is hereby deleted.

(22) The following Clauses are hereby added to the policy:

### 21. WORLDWIDE EXTENSION

Where legally permissible, this policy shall apply to any Claim made against any Insured anywhere in the world.

In regard to Claims brought and maintained solely in a Foreign Jurisdiction against a Company formed and operating in such Foreign Jurisdiction or a Natural Person Insured thereof for Wrongful Acts committed in such Foreign Jurisdiction, the Insurer shall apply to such Claim(s) those terms and conditions (and related provisions) of the Foreign Policy registered with the appropriate regulatory body in such Foreign Jurisdiction that are more favorable to such Insured than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1-4, 9-13, 15, 16, 18 and 21 of this policy and the comparable provisions of the Foreign Policy. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, Loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of Loss are stated or incurred in a currency other than United States of America dollars, payment of covered Loss due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the Insurer and if agreeable to the Insured's Representative) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such Loss is established, or if not published on such date, the next publication date of The

REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

**COPY**                    **END 1**

**ENDORSEMENT# *1***     (Continued)

This endorsement, effective  *12:01 am*     *September 27, 2006*    forms a part of
policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Wall Street Journal).

## 22. BANKRUPTCY

Bankruptcy or insolvency of any Organization or any Insureds shall not relieve the Insurer of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the Directors or Officers and natural person General Partners. Further, if a liquidation or reorganization proceeding is commenced by the Named Entity and/or any other Organization (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, in regard to a covered Claim under this policy, the Insureds hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such Bankruptcy Law; and

(b) agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

## 23. ORDER OF PAYMENTS

In the event of Loss arising from a covered Claim for which payment is due under the provisions of this policy, then the Insurer shall in all events:

(a) first, pay Loss for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of Loss has been made pursuant to Clause 23(a) above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the Insured's Representative, either pay or withhold payment of such other Loss for which coverage is provided under Coverage B(ii) of this policy; and then

**NOTICE:** THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

END 1

*COPY*

**ENDORSEMENT#** *1*    **(Continued)**

This endorsement, effective  *12:01 am*      *September 27 , 2006*      forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

(c)   only after payment of Loss has been made pursuant to Clause 23(a) and
Clause 23(b) above, with respect to whatever remaining amount of the
Limit of Liability is available after such payment, at the written request of
the Insured's Representative either pay or withhold payment of such other
Loss for which coverage is provided under Coverages B(i) and D of this
policy.

In the event the Insurer withholds payment pursuant to Clause 23(b) and/or
Clause 23(c) above, then the Insurer shall at such time and in such manner as
shall be set forth in written instructions of the Insured's Representative remit
such payment to an Organization or directly to or on behalf of a Natural Person
Insured or natural person General Partner.

The bankruptcy or insolvency of any insureds shall not relieve the Insurer of any
of its obligations to prioritize payment of covered Loss under this policy pursuant
to this Clause 23.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE:**   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
AUTHORIZED REPRESENTATIVE
END.1

*2-14178*

**COPY**

## ENDORSEMENT# 2

This endorsement, effective *12:01 am      September 27, 2006*    forms a part of policy number  *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONTROLLED REIT ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the policy is amended as follows:

1)   The definition of "Additional Limited Partnership" is deleted in its entirety and replaced with the following:

   (a)   "Additional Limited Partnership" means:

      (1)   any limited partnership, general partnership or joint venture which the Named Entity Controls on or before the inception of the Policy Period;

      (2)   automatically any limited partnership: (i) (a) whose assets total less than 15% of the total consolidated assets of the Organization as of the inception date of this policy, (b) of which the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first becomes the sole general partner during the Policy Period and (c) whose partnership interests have not been sold in a public offering; or (ii) for which the Organization first becomes the sole Controlling "General Partner" during the Policy Period and (ii) whose ownership interests have not been sold to the public. The Insured's Representative shall provide the Insurer with full particulars of the new Additional Limited Partnership before the end of the Policy Period;

      (3)   any limited partnership (other than a limited partnership described in paragraph (2) above) of which the Named Entity, the Insured's Representative, an Additional Limited Partnership, the Company or a Natural Person Insured first becomes the sole general partner or which is otherwise first sponsored by or affiliated with the Named Entity, Insured's Representative, the Company or a General Partner during the Policy Period, but only upon the condition that within 90 days of the date of first sponsorship or affiliation, the Insured's Representative shall have provided the Insurer with full particulars of the new Additional Limited Partnership and agreed to any additional premium and/or amendment of the provisions of this policy required by the Insurer relating to such new Additional Limited Partnership. Further, coverage as shall be afforded to a new Additional Limited Partnership is conditioned upon the Insured's Representative paying when due any additional premium required by the Insurer relating to such Additional Limited Partnership. FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

                        END 2

*2-14176*

**COPY**

**ENDORSEMENT#** *2*     **(Continued)**

This endorsement, effective *12:01 am*    *September 27, 2006*    forms a part of
policy number   *673-84-28.*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

> In all events, coverage as is afforded under this policy with respect to a
> Claim made against an Additional Limited Partnership or any General Partner
> or Natural Person Insured thereof, shall only apply for Wrongful Acts
> committed or allegedly committed after the effective time that the Named
> Entity, the Insured's Representative, an Additional Limited Partnership, the
> Company or a Natural Person Insured first became the sole Controlling
> General Partner, general partner of the Additional Limited Partnership or the
> effective time such Additional Limited Partnership was otherwise first
> sponsored by, Controlled by or affiliated with the Named Entity, the
> Insured's Representative, the Company or a General Partner and prior to the
> effective time: (1) the Additional Limited Partnership or any entity General
> Partner thereof consolidates with or merges into, or sells all or substantially
> all of its assets to any other person or entity or group of persons and/or
> entities acting in concert; or (2) any person or entity or group of persons
> and/or entities acting in concert acquires an amount of the outstanding
> securities representing more than 50% of the voting power for the election
> of general partners or directors of the Additional Limited Partnership or entity
> General Partner thereof, or acquires the voting rights of such an amount of
> such securities; or (3) the Additional Limited Partnership engages in a
> liquidation, "roll-up" or "roll-over"; or (4) the General Partner(s) of the
> Additional Limited Partnership are different than the Additional Limited
> Partnership's General Partner(s) when it first became an Additional Limited
> Partnership; provided, that this subsection (4) shall not apply if the sole
> general partner of such Additional Limited Partnership is and remains at all
> times either the Named Entity, an Additional Limited Partnership, the
> Company or any Natural Person Insured.

2)   Definition (i), General Partner, is deleted in its entirety and replaced by the
     following:

     (i)    "General Partner" means:

            (i)     the Named Entity;
            (ii)    any Subsidiary or Limited Partnership;
            (iii)   any Director, Officer or Employee of an Organization; or
            (iv)    any other person or entity listed as such in an endorsement attached
                    hereto.

**NOTICE:**    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

2-14176

*COPY*     *END 2*

## ENDORSEMENT# 2   (Continued)

This endorsement, effective *12:01 am*      *September 27, 2006*      forms a part of
policy number   *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*


acting in the capacity as a general partner, partnership manager or joint venture
manager of a Limited Partnership.

The term "General Partner" shall also include any director, officer, member of the
Board of Managers, trustee or Employee of an entity General Partner described
above, but only if such individual is acting on behalf of such entity General
Partner in its capacity as a General Partner for a Limited Partnership.

3)   The following definition is added to the policy:

(aa)   "Control" (including the terms "Controlling", "Controlled", "Controlled by"
and "under common Control with") means the possession by the
Organization, directly or indirectly, of the power to direct or cause the
direction of the management and policies of a limited partnership, general
partnership or joint venture, whether through the ownership of voting
securities, by contract, or otherwise.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

2-14176

**COPY**

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

*END 2*

## ENDORSEMENT# 3

This endorsement, effective  *12:01 am*       *September 27, 2006*      forms a part of
policy number  *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NUCLEAR ENERGY LIABILITY EXCLUSIONS ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s):

A.      alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the hazardous properties of nuclear material, including but not limited to:

   (1)     nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Organization, or discharged or dispersed therefrom; or

   (2)     nuclear material contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Organization; or

   (3)     the furnishing by an Insured or the Organization of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

   (4)     Claims for damage or other injury to the Organization or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the hazardous properties of nuclear material.

B.   (1)     which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

   (2)     with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties

**NOTICE:**  THESE POLICY FORMS, AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

*COPY*           *END 3*

## ENDORSEMENT# 3    (Continued)

This endorsement, effective  *12:01 am*  ∶  *September 27, 2006*     forms a part of
policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material"  have the meanings
given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means  any fuel  element or  fuel component, solid  or liquid,  which has  been
used or exposed to radiation in a nuclear reactor;

"waste" means  any waste  material (1)  containing by  product  material and  (2) resulting
from the operation by any person or organization of any nuclear facility included within the
definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a)     any nuclear reactor,

(b)     any equipment or device designed or used for
        (1) separating the isotopes of uranium or plutonium,
        (2) processing or utilizing spent fuel, or
        (3) handling, processing or packaging wastes,

(c)     any equipment or device  used for the  processing, fabricating or  alloying of special
        nuclear material if at  any time the total  amount of such material  in the custody of
        the Insured at the premises  where such equipment or  device is located consists of
        or contains more  than 25 grams  of plutonium or  uranium 233 or  any combination
        thereof, or more than 250 grams of uranium 235,

(d)     any structure, basin, excavation, premises or place prepared or used for the storage
        or disposal of waste, and includes the site on which any of the foregoing is located,
        all operations conducted on such site and all premises used for such operations;

"nuclear reactor"  means any  apparatus designed  or used  to sustain  nuclear fission  in a
self-supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*2-14176*

**COPY**

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS
AUTHORIZED REPRESENTATIVE

*END 3*

### ENDORSEMENT# 4

This endorsement, effective  *12:01 am*     *September 27, 2006*     forms a part of
policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CAPTIVE INSURANCE COMPANY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payments for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon, attributable to the ownership, management, maintenance, operation and/or control by the Organization of any captive insurance company or entity including but not limited to any Claim(s) alleging the insolvency or bankruptcy of the Named Entity or the Insured's Representative as a result of such ownership, operation, management and control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

*END 4*

2-14176

*COPY*

## ENDORSEMENT# 5

This endorsement, effective  *12:01 am* .    *September 27, 2006*    forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### "NO LIABILITY" PROVISION DELETED

In consideration of the premium charged, it is hereby understood and agreed that the policy
is hereby amended as follows:

(1)     The Definition of and all provisions referring to "No Liability" are hereby
deleted in their entirety; and

(2)     The last paragraph of Clause 6 RETENTION CLAUSE which reads:

"No Retention shall apply to a Claim which is in the form of a civil
action for monetary relief and the Insurer shall thereupon reimburse
the Defense Costs paid by the Insured, in the event of:

·(1)     a determination of No Liability of all Insureds; or
(2)     a dismissal or a stipulation to dismiss the civil litigation Claim
without prejudice and without the payment of any
consideration by any Insured,

provided, however, that in the case of (2) above, such reimbursement
shall occur ninety (90) days after the date of dismissal or stipulation
as long as the Claim is not re-brought (or any other Claim which is
subject to the same single retention by virtue of this Clause 6 is not
brought) within that time, and further subject to an undertaking by
the Organization in a form acceptable to the Insurer that such
reimbursement shall be paid back by the Organization to the Insurer in
the event the Claim (or any other Claim which is subject to the same
single retention by virtue of this Clause 6) is brought after such 90
day period and before the expiration of the statute of limitations for
such Claim."

is hereby deleted in its entirety.

(3)     Item 5 of the Declarations is hereby deleted in its entirety and replaced by
the following:

ITEM 5.     RETENTION:

Judgments, Settlements and
Defense Costs (non-Indemnifiable Loss)          None

NOTICE:     THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

*COPY*          END 5

ENDORSEMENT# *5*   (Continued)

This endorsement, effective *12:01 am*   *September 27, 2006*   forms a part of
policy number *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**Securities Claims**
Judgments, Settlements and Defense Costs   $500,000
(Coverage B(i), entity General Partner   for Loss arising from Claims
and Indemnifiable Loss)   alleging the same Wrongful
Act or Related Wrongful
Acts

**All Other Claims**
Judgments, Settlements and Defense Costs   $300,000
(entity General Partner and   for Loss arising from Claims
Indemnifiable Loss)   alleging the same Wrongful
Act or Related Wrongful
Acts

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS

AUTHORIZED REPRESENTATIVE

END 5

2-14176

**COPY**

## ENDORSEMENT# 6

This endorsement, effective  *12:01 am*      *September 27, 2006*      forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DISCOVERY AMENDED BILATERAL – ONE YEAR – PREMIUM NOT TO EXCEED 150%

In consideration of the premium charged, it is hereby understood and agreed that the policy
(and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to
the extent necessary for the policy to provide the following:

1. Clause 10. DISCOVERY CLAUSE is deleted in its entirety and replaced with the
   following:

### 10.  DISCOVERY CLAUSE

Except as indicated below, if the **Insurer or the Insured's Representative** shall
cancel or refuse to renew this policy, the **Insured's Representative** shall have the
right to a period of either one year following the effective date of such
nonrenewal (the " **Discovery Period**"), upon payment of an **Additional Premium
Amount**, in which to give to the **Insurer** written notice pursuant to Clause 7(a)
and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii)
circumstances of which the Insured's **Representative**, the **Organization** or the
**Insureds** shall become aware during said **Discovery Period** and solely with
respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and
otherwise covered by this policy.

The **Additional Premium Amount** for one year shall be no more than 150% of the
**Full Annual Premium.** As used herein, " **Full Annual Premium**" means the
premium level in effect immediately prior to the end of the policy period.

In the event of a **Transaction** as defined in Clause 12(a), the **Insured's
Representative** shall have the right to request an offer from the **Insurer** of a
**Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective
time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant
to such terms, conditions, exclusions and additional premium as the **Insurer** may
reasonably decide. In the event of a **Transaction,** the right to a **Discovery Period**
shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall
be fully earned at inception.   The rights contained in this Clause 10 shall
terminate unless written notice of election of a **Discovery Period** together with
any additional premium due is received by the **Insurer** no later than thirty (30)
days subsequent to the effective date of the nonrenewal or **Transaction**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.
**NOTICE:** THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

AUTHORIZED REPRESENTATIVE

**COPY**          *END 6*

## ENDORSEMENT# 7

This endorsement, effective  *12:01 am*      *September 27, 2006*      forms a part of
policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FINAL DETERMINATION WORDING

In consideration of the premium  charged,  it is hereby  understood and agreed that
Exclusions (a) and (c) are deleted in their entirety and replaced by the following:

(a)    arising out of, based upon or attributable to the gaining of any profit or
advantage to which a judgment or final adjudication or an alternative dispute
resolution proceeding adverse to the Insured(s) establishes the Insured(s)
were not legally entitled to such profit or advantage;

(c)    arising out of, based upon or attributable to the committing of any deliberate
criminal or deliberate fraudulent act if a judgment or final adjudication or an
alternative dispute resolution proceeding adverse to the Insured(s)
establishes such deliberate criminal or deliberate fraudulent act;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS

AUTHORIZED REPRESENTATIVE

END 7

2-14176

*COPY*

## ENDORSEMENT# *8*

This endorsement, effective  *12:01 am*      *September 27, 2006*      forms a part of
policy number   *673-84-28*
issued to     *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FINAL DETERMINATION FOR SUBROGATION

In consideration the premium charged, it is hereby understood and agreed that **Clause 13. SUBROGATION,** has been deleted in its entirety and replaced by the following:

### 13.    SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Organization's and the Insureds' rights of recovery thereof, and the Organization and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of the Organization and/or the Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy **unless a judgment or final adjudication or an alternative dispute resolution proceeding adverse to the Insured(s) establishes such Insured has been determined** to have committed a deliberate criminal act, a deliberate fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THE POLICY REMAIN THE SAME.

2-14176

**COPY**

NOTICE:   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

END 8

**ENDORSEMENT# 9**

This endorsement, effective  *12:01 am*     *September 27, 2006*     forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION
(w/shareholder and Non-Indemnifiable Loss carve-out)

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for Loss in connection with any Claim(s) made against any Insured(s) alleging, arising out of, based upon or attributable to the Organization's, General Partner's or any Insured(s)' performance of or failure to perform professional services, or any act(s), error(s) or omission(s) relating thereto.

Notwithstanding the foregoing, it is further understood and agreed that this endorsement shall not apply to:

(i)     any Claim(s) brought by a shareholder of the Organization in the form of a shareholder class, direct or derivative action alleging failure to supervise those who performed or failed to perform such professional services, provided that such shareholder action is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the Organization, General Partner or any Insured(s); or

(ii)    any Non-Indemnifiable Loss.

ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS REMAIN UNCHANGED.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

*END 9*

2-14176

*COPY*

## ENDORSEMENT# *10*

This endorsement, effective *12:01 am*      *September 27, 2006*      forms a part of policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### RENEWAL APPLICATION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that for the purposes of coverage as is afforded by this policy, the term "Application" or "Renewal Application" shall mean the insurance applications(s) or request(s) made to the Insurer for the insurance as is provided by this policy and incorporates any written statements and materials furnished to the Insurer in conjunction therewith. The term "Application" or "Renewal Application" also incorporates the following public documents produced by the Company within the last twelve (12) months, whether or not furnished to the Insurer, the Company's Annual Report(s), 10K(s) filed with the SEC, 10Q(s) filed with the SEC. In granting coverage under this Policy, it is agreed that the Insurer has relied upon the statements and representations contained in the Application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy. It is agreed that this Renewal Application Endorsement is a supplement to the application(s) which are part of the expiring policy, and that those Application(s) together with this Renewal Application Endorsement, constitute the complete Application that is the basis of this policy and forms a part hereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*2-14176*

**NOTICE:**     THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 10*

## ENDORSEMENT# 11

This endorsement, effective  *12:01 am*      *September 27, 2006*      forms a part of
policy number   *673-84-28*
issued to     *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SEVERABILITY OF THE APPLICATION – TOP 3 WITH NON-RESCINDABLE WORDING**

In consideration of the premium charged, it is hereby understood and agreed that the
following Clause is added to the policy at the end thereof:

### SEVERABILITY

In granting coverage under this policy, it is agreed that the Insurer has relied upon
the statements, warranties and representations contained in the Application as
being accurate and complete. All such statements, warranties and representations
are the basis for this policy and are to be considered as incorporated into this
policy.

The Insureds agree that in the event that the particulars and statements contained
in the Application are not accurate and complete and materially affects either the
acceptance of the risk or the hazard assumed by the Insurer under the policy, then
this Policy shall be void *ab initio* solely with respect to any of the following
Insureds:

(1)   solely with respect to Loss other than Non-Indemnifiable Loss, any Insured
      Person who knew as of the inception date of the Policy Period the facts that
      were not accurately and completely disclosed in the Application,

(2)   an Organization, under Clause 1. Insuring Agreements, COVERAGE B(ii), to
      the extent it indemnifies any Insured Person referenced in (1), above, and

(3)   an Organization, under Clause 1. Insuring Agreement, COVERAGE B(i), if any
      past or present chief executive officer, chief financial officer or chief
      operating officer of the Organization knew as of the inception date of the
      Policy Period, the facts that were not accurately and completely disclosed in
      the Application,

whether or not such Insured Person knew that such facts were not accurately and
completely disclosed in the Application.

Solely with respect to any Non-Indemnifiable Loss of any Insured Person, under no
circumstances shall the coverage provided by this Policy be deemed void, whether
by rescission or otherwise, but such coverage will be subject to all other terms,
conditions and exclusions of the Policy.

NOTICE
THE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

**COPY**          *END 11*

**ENDORSEMENT# *11*    (Continued)**

This endorsement, effective *12:01 am    September 27, 2006*    forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is understood and agreed that this endorsement supersedes any inconsistent
language contained in the **Application.**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

2-14176

*COPY*

**NOTICE:**   THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*END 11*

AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 12

This endorsement, effective  *12:01 am*        *September 27 , 2006*        forms a part of
policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### AUTO-SUBSIDIARY THRESHOLD AMENDED TO 15%

In consideration of the premium  charged, it is hereby  understood and agreed that
paragraph (2) of the  definition of "Subsidiary"  is deleted in  its entirety and  replaced with
the following:

   (2)     automatically a  corporation or  limited liability  company whose  assets total
less than 15% of the total consolidated assets  of the Organization as of the
inception date of this policy, which corporation becomes  a Subsidiary during
the Policy Period. The Insured's Representative shall provide the Insurer with
full particulars of the new Subsidiary before the end of the Policy Period;

. ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:    THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

END 12

AUTHORIZED REPRESENTATIVE

2-14176

**COPY**

## ENDORSEMENT# *13*

This endorsement, effective *12:01 am*     *September 27, 2006*     forms a part of
policy number   *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OUTSIDE ENTITY EXECUTIVE AMENDED TO INCLUDE EMPLOYEES

In consideration of the premium charged, it is hereby understood and agreed that Clause 2.
DEFINITIONS, (ff) of endorsement #1 ÝPARTNERSHIP GOLD D&O  2/2000 AMENDMENTS"
is deleted in its entirety and replaced with the following:

(aa)    "Outside Entity  Executive" means any: (1) Director, Officer or Employee who is or
        was acting at the specific written request or direction of an Organization as a
        director, officer, trustee, employee, governor, management committee member or
        member of the management board (or equivalent position) of an Outside Entity; or
        (2) any other person listed as an Outside Entity Executive in an endorsement
        attached to this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS OF THE POLICY REMAIN
UNCHANGED.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

AUTHORIZED REPRESENTATIVE

END 13

*2-14176*

*COPY*

**ENDORSEMENT# *14***

This endorsement, effective  *12:01 am*      *September 27, 2006*      forms a part of
policy number  *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COSTS OF INVESTIGATION COVERAGE
### FOR LIMITED PARTNERSHIP SECURITYHOLDER DERIVATIVE
### INVESTIGATIONS AGAINST INDIVIDUAL GENERAL PARTNERS

In consideration of the premium charged, it is hereby understood and agreed that this policy is amended to provide Costs of Investigation for Limited Partnership Securityholder Derivative Investigations pursuant to the terms and conditions set forth below:

1.   The Section of the policy INSURING AGREEMENTS is amended to add the following new insuring agreement:

**COVERAGE E:       COSTS OF INVESTIGATION FOR DERIVATIVE CLAIMS**

This policy shall pay the Costs of Investigation of the Limited Partnership arising from a Limited Partnership Securityholder Derivative Investigation first made by the Limited Partnership against one or more of its individual General Partners during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as individual General Partners of the Limited Partnership.

2.   The Section of the policy entitled LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS) is amended to add the following:

The limit of the Insurer's liability for Costs of Investigation arising from all Limited Partnership Securityholder Derivative Investigations occurring during the Policy Period or the Discovery Period (if applicable), in the aggregate, shall be $100,000. This limit shall be the maximum limit of the Insurer under this policy regardless of the number of such Claims occurring during the Policy Period or the Discovery Period (if applicable). Provided, however, that the Costs of Investigation limit shall be part of and not in addition to the Limit of Liability stated in the Item of the Declaration page entitled LIMIT OF LIABILITY, which shall in all events be the maximum liability of the Insurer for all Loss under this policy.

3.   There shall be no Retention amount applicable to Costs of Investigation, and the Insurer shall pay such Loss from first dollar subject to the other terms and conditions of this endorsement.

**NOTICE:**    THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

**COPY**        *END 14*

### ENDORSEMENT# *14*    (Continued)

This endorsement, effective  *12:01 am*  |  *September 27, 2006*    forms a part of
policy number  *673-84-28*
issued to    *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

4.   The term "Loss" as used in the policy (other than for INSURING CLAUSES A and B) shall include "Costs of Investigation".

5.   The term "Claim" shall include any Limited Partnership Securityholder Derivative Investigations (subject to all the terms and conditions of this policy).

6.   It shall be the duty of the Limited Partnership and not the duty of the Insurer to conduct, investigate and evaluate any Limited Partnership Securityholder Derivative Investigation(s) against its own individual General Partner(s), provided that the Insurer shall be entitled to effectively associate in the investigation and evaluation, and the negotiation of any settlement, of any such Limited Partnership Securityholder Derivative" Investigation.

7.   The Section of the policy entitled EXCLUSIONS is applicable to Costs of Investigation.

8.   Nothing in this endorsement shall be construed to afford coverage under this policy for any Claim brought by the Limited Partnership against one or more of its own individual General Partner(s), other than Costs of Investigation incurred in a covered Limited Partnership Securityholder Derivative Investigation.

### PAYMENT PROCEDURES

It is understood and agreed that the Limited Partnership shall be entitled to payment under this endorsement as reimbursement of its covered Costs of Investigation 90 days after a final decision by the Limited Partnership, as a result of the Limited Partnership Securityholder Derivative Investigation, not to bring a civil proceeding in a court of law against any individual General Partner has been communicated to the Complaining Securityholders. Provided further that such payment shall be subject to an undertaking by the Limited Partnership in a form acceptable to the Insurer that such reimbursement shall be paid back by the Limited Partnership to the Insurer in the event the Limited Partnership or the Complaining Shareholders bring a Claim, before the expiration of the statute of limitations for such Claim, against the individual General Partner(s) alleging a Wrongful Act or underlying fact or circumstance the subject of which was part of the Limited Partnership Securityholder Derivative Investigation.

**NOTICE:**   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

*2-14176*

*COPY*    *END 14*

**ENDORSEMENT# 14**   **(Continued)**

This endorsement, effective  *12:01 am*      *September 27, 2006*      forms a part of
policy number  *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

## DEFINITIONS

For the purposes of this endorsement, the following Definitions shall apply:

"Costs of Investigation" means reasonable and necessary costs, charges, fees and expenses (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any regular or overtime wages, salaries or fees of the individual General Partners or Employees of the Limited Partnership) incurred by the Limited Partnership (including its board of directors or any committee of the board of directors of the Limited Partnership) in connection with the Limited Partnership Securityholder Derivative Investigation.

"Limited Partnership Securityholder Derivative Investigation" means the investigation by the Limited Partnership against one or more of its own individual General Partners after written demand by one or more Securityholders of a Limited Partnership ("the Complaining Securityholders") upon the board of directors or such Limited Partnership to bring a civil proceeding in a court of law against any individual General Partners for a Wrongful Act committed, attempted or allegedly committed or attempted by such individual General Partners before or during the Policy Period.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:   THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS

AUTHORIZED REPRESENTATIVE

*2-14176*

*COPY*       *END 14*

## ENDORSEMENT# *15*

This endorsement, effective *12:01 am*       September *27* , *2006*       forms a part of
policy number   *673-84-28*
issued to   *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CLAUSE 7(A)(2) AMENDED
### 60 DAYS

In consideration of the premium charged, it is hereby understood and agreed that Clause
7(a)(2) is hereby deleted in its entirety and replaced by the following:

   (2)      within 60 days after the end of the Policy Period or the Discovery Period (if
            applicable), as long as such Claim is reported no later than 60 days after the
            date such Claim was first made against an Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

NOTICE:      THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT. HOWEVER, SUCH FORMS AND RATES
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS

AUTHORIZED REPRESENTATIVE

*2-14176*

*COPY*       *END 15*

**ENDORSEMENT# 16**

This endorsement, effective 12:01 am September 27, 2006 forms a part of policy number 673-84-28 issued to AMERICAN HOME MORTGAGE INVESTMENT CORP.

by National Union Fire Insurance Company of Pittsburgh, Pa.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE TERRITORY ENDORSEMENT**

Payment of loss under this policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

AUTHORIZED REPRESENTATIVE

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

**ENDORSEMENT#** *17*

This endorsement, effective *12:01 am*      *September 27, 2006*          forms a part of
policy number   *673-84-28*
issued to *AMERICAN HOME MORTGAGE INVESTMENT CORP.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 81285 | 01/03 | *Tria Dec Disclosure Form* |
| *MNSCPT* | | *D&O 2/2000 AMENDMENTS* |
| *MNSCPT* | | *CONTROLLED REIT ENDORSEMENT* |
| *MNSCPT* | | *NUCLEAR ENERGY LIABILITY EXCLUSIONS ENDORSEMENT* |
| *MNSCPT* | | *CAPTIVE INSURANCE COMPANY EXCLUSION* |
| *MNSCPT* | | *"NO LIABILITY" PROVISION DELETED* |
| *MNSCPT* | | *DISCOVERY AMENDED BILATERAL — ONE YEAR — PREMIUM NOT TO EXCEED 15* |
| *MNSCPT* | | *FINAL DETERMINATION WORDING* |
| *MNSCPT* | | *FINAL DETERMINATION FOR SUBROGATION* |
| *MNSCPT* | | *PROFESSIONAL ERRORS & OMISSIONS EXCLUSION* |
| *MNSCPT* | | *RENEWAL APPLICATION ENDORSEMENT* |
| *MNSCPT* | | *SEVERABILITY OF THE APPLICATION — TOP 3 WITH NON-RESCINDABLE WORD* |
| *MNSCPT* | | *AUTO-SUBSIDIARY THRESHOLD AMENDED TO 15%* |
| *MNSCPT* | | *OUTSIDE ENTITY EXECUTIVE AMENDED TO INCLUDE EMPLOYEES* |
| *MNSCPT* | | *COSTS OF INVESTIGATION COVERAGE* |
| *MNSCPT* | | *CLAUSE 7(A)(2) AMENDED* |
| 89644 | 07/05 | *COVERAGE TERRITORY ENDORSEMENT (OFAC)* |
| 78859 | 10/01 | *FORMS INDEX ENDORSEMENT* |
| *MNSCPT* | | *PARTNERSHIP GOLD-DEC-PAGE* |
| *MNSCPT* | | *PARTNERSHIP GOLD-GUTS* |

NOTICE:  THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM THE FILING
REQUIREMENTS OF THE NEW YORK STATE INSURANCE
DEPARTMENT.  HOWEVER, SUCH FORMS
MUST MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

*END-OF*

AUTHORIZED REPRESENTATIVE

*2-14176*

78859 (10/01)  *COPY*

Page 1 of 1