## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,[1]

                   Debtors.

------------------------------------------------------------------ x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

**Objection Deadline: August 9, 2011 at 4:00 p.m. (ET)**
**Hearing Date: August 16, 2011 at 10:00 a.m. (ET)**

### PLAN TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND 11 U.S.C. § 105(a) FOR AN ORDER APPROVING AND AUTHORIZING THE SETTLEMENT AGREEMENT BY AND AMONG THE PLAN TRUSTEE AND U.S. BANK, N.A. RESOLVING CLAIMS AND REQUEST FOR 506(c) CLAIM

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the plan trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), hereby moves (the "Motion") this Court, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order approving the settlement agreement (the "Settlement Agreement"),[2] attached as Exhibit 1 to the proposed form of order (the "Proposed Order"), attached hereto as Exhibit A, by and among the Plan Trustee and U.S. Bank, N.A. (f/k/a Park National Bank) ("U.S. Bank", and

---

[1]    The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); AHM Investment, a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); AHM Corp., a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]    Capitalized terms not defined in the Motion or the Settlement Agreement shall have the meanings ascribed to such terms in the Plan.

together with the Plan Trustee, the "Parties").    In support of the Motion, the Plan Trustee

respectfully represents as follows:

**JURISDICTION**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is

proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates

for the relief requested is section 105(a) of the Bankruptcy Code along with Bankruptcy Rule

9019(a).

**GENERAL BACKGROUND**

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with

this Court a voluntary petition commencing the above captioned cases under chapter 11 of the

Bankruptcy Code (the "Bankruptcy Cases").    As of the Petition Date, the Debtors were

authorized to continue to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On February 23, 2009, the Court entered an order confirming the Plan

[Docket No. 7042] (the "Confirmation Order").  The Effective Date of the Plan (as defined in the

Plan) occurred on November 30, 2010.

4.      Pursuant to the Plan and Plan Trust Agreement [Docket No. 6944], the

Plan Trustee is permitted to, among other things, prosecute, abandon, collect, compromise and

settle any Causes of Action (as such term is defined in the Plan).

**RELEVANT BACKGROUND**

A.      **The Note And Claim No. 1871 Filed By Park National**

5.      On August 9, 2005, debtor American Home Mortgage Corp. ("AHM

Corp.") made a note (the "Note") in the principal amount of $1,007,000 payable to the order of

Park National Bank and Trust of Chicago ("Park National"). The Note was secured by a mortgage (the "Mortgage") made by AHM Corp. to Park National dated August 9, 2005, which created a mortgage lien on the real property located at 950 North Elmhurst Road/150 West Rand Road, Mount Prospect, Illinois (the "Property").

6.      On or about November 1, 2007, Park National proof of claim number 1871 ("Claim 1871") against AHM Corp. asserting a secured claim in the amount of $872,531 (plus attorneys' fees) on account of amounts asserted to be due pursuant to the Note.

**B.      The Debtors' Efforts To Sell The Property**

7.      After the Petition Date, the Debtors retained CB Richard Ellis, Inc. ("CBRE") as their real estate broker to market the Property. With the assistance of the Debtors, CBRE developed and executed an extensive campaign to market and sell the Property. While CBRE and the Debtors actively marketed and negotiated offers for the sale of the Property, Park National and the Debtors entered into two loan modification agreements (the "First Loan Modification Agreement" and "Second Loan Modification Agreement," and collectively referred to hereinafter as the "Loan Modification Agreements"), each of which, among other things, extended the maturity date under the Note. Executed on July 28, 2009, the First Loan Modification Agreement extended the maturity date to February 9, 2009. The Second Loan Modification Agreement was executed on February 3, 2009 and extended the maturity date to August 9, 2009.

8.      Despite a full marketing effort, extensive negotiations with a potential purchaser over the terms of a purchase and sale agreement, and an auction conducted by CBRE, the Debtors were unable to sell the Property. As a result, on or about August 1, 2009, the Debtors communicated to Park National that they would be unable to pay the balance of the Note

C.     **Litigation Between The Parties**

9.     On September 28, 2009, Park National filed its *Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection* [Docket No. 8101] (the "Stay Relief Motion"), which sought, among other things, to obtain relief from the automatic stay to foreclose on the Property.   In response, the Debtors filed the *Debtors' (I) Limited Objection to Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection and (II) Request for Allowance and Payment of Section 506(c) Claim*, dated October 28, 2009 [Docket No. 8226] (the "Section 506(c) Motion").  The Section 506(c) Motion responded to the Stay Relief Motion and asserted a claim against Park National pursuant to Bankruptcy Code §506(c) in the amount of $274,920.36 (the "Section 506(c) Claim") on account of the ad valorem property tax payments made by the Debtors with respect to the Property.

10.     On November 25, 2009, the Debtors filed a motion seeking authorization to abandon the Property [Docket No. 8340].  The Debtors and Park National thereafter entered into an agreed order [Docket No. 8423] (the "Agreed Order"), entered on December 17, 2009, whereby the Debtors agreed to consent to stay relief and to abandon the Property.  The Court thereafter entered an Order that abandoned the Property effective as of December 31, 2009 [Docket No. 8423].

11.     On November 20, 2009, Park National filed its *Opposition of Park National Bank to the Motion* [Docket No. 8325] (the "Objection"), pursuant to which Park National asserted that the Debtors' requested Section 506(c) Claim should be denied because, among other reasons: (i) real estate taxes paid by a debtor which is in possession of its real property are not recoverable from a secured creditor's collateral under section 506(c) of the Bankruptcy Code; (ii) even if the taxes are recoverable under section 506(c) of the Bankruptcy

Code, the Debtors have failed to provide sufficient details of their expenditures to carry their burden of proof that the expenses paid were reasonable and necessary; and (iii) the Debtors failed to prove that the payments of the expenses provided a direct benefit to Park National as required by section 506(c) of the Bankruptcy Code.  On January 7, 2010, the Debtors filed a reply to the Objection [Docket No. 8480].

12.     By agreement of the Parties, the Court held a hearing on January 12, 2010 (the "Hearing") relating only to the issue of whether Bankruptcy Code §506(c), as amended, as a matter of law, entitles the Debtors to reimbursement for amounts expended on account of *ad valorem* taxes.  At the Hearing, the Court deferred ruling and directed the parties to confer regarding a discovery schedule and date to conduct an evidentiary hearing related to the Debtors' claims against Park National under Bankruptcy Code §506(c).

13.     On March 9, 2010, the Debtors filed their *Amended Motion for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) from Mount Prospect, Illinois Property* [Docket No. 8665] (the "Amended Motion"), which amended and supplemented the Section 506(c) Motion.  On March 30, 2010, Park National filed its brief in opposition to the Amended Motion [Docket No. 8724].

14.     Following the Hearing, the Parties engaged in extensive discovery, including document discovery and depositions of numerous parties.  Park National's non-expert discovery was, however, incomplete in certain respects prompting the Debtors to file the *Debtors' Motion to Compel* (the "Motion to Compel") [Docket No. 9090].  Following a hearing on the Motion to Compel, the Court entered an order granting the Motion to Compel [Docket No. 9153] (the "Motion to Compel Order").  The Motion to Compel Order, among other things, awarded the Debtors the costs of prosecuting the Motion to Compel, including reasonable attorneys' fees (collectively, the "Costs").

15.     On September 16, 2010, U.S. Bank filed its *Motion by U.S. Bank, N.A. (f/k/a Park National Bank) for Summary Judgment* and an accompanying memorandum of law [Docket Nos. 9229 & 9230] (the "Summary Judgment Motion").  On September 30, 2010, the Debtors responded by filing the *Debtors' Answer Brief in Opposition to Motion by U.S. Bank, N.A. (f/k/a Park National Bank) for Summary Judgment* (the "Summary Judgment Objection") [Docket No. 9278].  U.S. Bank replied to the Summary Judgment Objection on October 7, 2010 [Docket No. 9307].  A request for oral argument was filed by the Debtors, but, as the Parties had entered into negotiations in an attempt to consensually resolve their disputes, no hearing was scheduled by the Court.  U.S. Bank has entered into an agreement for the sale of the Property, which sale is expected to close by the end of August, 2011.

16.     As a result of the negotiations, the Parties entered into the Settlement Agreement, which, subject to approval of the Court, resolves the issues between the Parties related to Claim 1871, the Section 506(c) Motion, the Amended Motion, the Summary Judgment Motion and the Costs.

## THE SETTLEMENT AGREEMENT

17.     The principal terms of the Settlement Agreement are set forth below:[3]

(1)     Claim 1871:  Upon approval of the Settlement Agreement by the Court, Claim 1871 shall be deemed withdrawn with prejudice without further order of the Court.  U.S. Bank, on behalf of itself and as successor to Park National, shall be prohibited from filing or asserting any further Claim (as defined in Bankruptcy Code §101(5)) against the Debtors or the Plan Trust.

(2)     Settlement Payment:  U.S. Bank shall pay the sum of one hundred eighty thousand dollars ($180,000) (the "Settlement Amount") to the Plan Trustee in satisfaction of the claim pursuant to section

---

[3]     The terms of the Settlement Agreement set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Settlement Agreement.  To the extent of any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

506(c) of the Bankruptcy Code asserted by the Debtors through the Section 506(c) Motion, as amended and supplemented by the Amended Motion, and the Costs. The Settlement Amount shall be received by the Plan Trustee on or before the earlier of (i) the close of business on the date of the closing of the sale of the Property; or (ii) the close of business on the date that is forty (40) days after the entry of an Order by the Court approving this Settlement Agreement. If the Plan Trustee does not receive the Settlement Amount on or before the applicable aforementioned deadline, without further Order of the Court or notice and hearing, the Plan Trustee shall have a judgment against U.S. Bank in the amount of $274,920.36.

(3)   Mutual Releases:   (a) Effective upon Court approval of the Settlement Agreement, U.S. Bank, on behalf of itself and as successor to Park National, shall release, discharge, and forgive, among others, the Debtors, the Plan Trust and the Plan Trustee for and from any and all liabilities, actions, suits, claims, administrative claims, demands, damages, injuries and causes of action related to the Note, the Mortgage, the Property, Claim 1871, the Section 506(c) Motion, the Amended Motion, and the Summary Judgment Motion (other than those provided for in the Settlement Agreement) and (b) effective upon receipt of the Settlement Amount, the Debtors, the Plan Trust and the Plan Trustee shall release, discharge, and forgive, among others, U.S. Bank, in its capacity as successor to Park National Bank, for and from any and all liabilities, actions, suits, claims, administrative claims, demands, damages, injuries and causes of action related to the Note, the Mortgage, the Property, Claim 1871, the Section 506(c) Motion, the Amended Motion, and the Summary Judgment Motion (other than those provided for in the Settlement Agreement).

(4)   Closing on the Sale of the Property:   Beginning from the submission of the Motion until the Settlement Amount is received by the Plan Trustee, counsel for U.S. Bank shall provide counsel for the Plan Trustee with written updates as to the status of the closing on the sale of the Property on at least a weekly basis.

### RELIEF REQUESTED

18.    By this Motion, and in accordance with section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan Trustee respectfully requests entry of an order approving the Settlement Agreement and authorizing the Plan Trustee to enter into the same.

The Plan Trustee weighed the costs, risks and disruption that would arise from litigating the numerous matters identified above against the compromises contained within the Settlement Agreement. In the Plan Trustee's judgment, the Settlement Agreement is reasonable and serves the best interests of the Debtors, their estates and creditors, particularly when compared with the costs and disruption of further litigation.

## BASIS FOR RELIEF REQUESTED

19.     Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'") (*quoting In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

20.     In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1153 (3d Cir. 1979); *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (quoting, *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'").

21.     The Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved.  The four enumerated factors are:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); accord *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

22.     The decision to approve a settlement "is within the sound discretion of the bankruptcy court."  *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in *Meyers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996).  The bankruptcy court should not substitute its judgment for that of the debtors, or in this case, the Plan Trustee.  *See Neshaminy Office Bldg.*, 62 B.R. at 803.  The court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness.  *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

23.     The Plan Trustee respectfully requests that the Court approve the Settlement Agreement because its terms lie well above the lowest point in the range of reasonable potential litigation possibilities.  In addition, each of the applicable *Martin* factors weighs in favor of approving the Settlement Agreement.  Accordingly, the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

A.    **The Probability Of Success In Litigation**

24.    While the Plan Trustee believes he has a strong litigation position and would ultimately prevail, litigation over Claim 1871, the Section 506(c) Motion, the Amended Motion, the Summary Judgment Motion and the Costs (as with any litigation) has an inherent level of risk and uncertainty. U.S. Bank has vigorously defended its position and has filed a dispositive motion seeking a denial of the Amended Motion. In light of the litigation risks, costs and distraction from the Plan Trustee's efforts to effectuate a liquidation of the Debtors in accordance with the terms of the Plan, the Plan Trustee believes that the terms of the Settlement Agreement are reasonable. The resolution of these matters under the terms of the Settlement Agreement, without the need for further litigation, is a favorable outcome because it will save the Plan Trustee considerable time and effort, the Debtors' estates will be spared the expense attendant with litigation and, moreover, the settlement avoids any further distraction to the Plan Trustee's efforts to maximize value for the Debtors' creditors.

B.    **The Likely Difficulties In Collection**

25.    If the Plan Trustee is successful in prosecuting the Amended Motion, it is unclear how difficult collection of any judgment would be. Plus, under the Settlement Agreement, the Plan Trustee is receiving $180,000 and, if U.S. Bank does not timely pay the Settlement Amount, the Plan Trustee shall have a judgment against U.S. Bank in the amount of $274,920.36. However, given U.S. Bank's actions in defending against the Amended Motion and the possibility of an appeal, a significant period of time could elapse before the Plan Trustee obtains access to any judgment which would benefit the Debtors' creditors.

C.      **The Complexity Of The Litigation Involved And The Expense, Inconvenience And Delay Necessarily Attending It**

26.      The Settlement Agreement satisfies the third factor in *Martin's* four-factor test largely for the reasons set forth above. In determining whether to enter into the Settlement Agreement, the Plan Trustee, in consultation with his professionals, analyzed the likely cost of litigating Claim 1871, the Section 506(c) Motion, the Amended Motion, and the Summary Judgment Motion. These costs would likely include, among other things, further motions practice and trial preparation. As a result of such consultations, the Plan Trustee believes the Settlement Agreement is a cost effective and efficient resolution of all matters.

D.      **The Paramount Interest Of Creditors**

27.      Entry into the Settlement Agreement serves the paramount interest of the Debtors' creditors. The Settlement Agreement's resolution of the claims and defenses asserted among the Parties represents a savings for the Debtors' creditors by obviating further litigation. Moreover, as noted above, the Settlement Agreement provides creditors with a recovery of $180,000 – the Settlement Amount. Therefore, the "paramount interest of creditors" factor of *Martin's* four-factor test is satisfied and weighs in favor of the Court approving the Settlement Agreement.

E.      **Summary**

28.      In sum, the resolution of the matters embodied in the Settlement Agreement represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes, obviates the expense, delay, and inconvenience attendant in any litigation, and advances the paramount interests of creditors. Therefore, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

## NO PREVIOUS REQUEST

29.     No prior request for the relief sought in this Motion has been made to this or any other court.

## NOTICE

30.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to U.S. Bank, N.A. (f/k/a Park National Bank); (iii) counsel to the Plan Oversight Committee; and (iv) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Plan Trustee submits that no other or further notice is required.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Plan Trustee respectfully requests that this Court enter the Proposed Order, attached hereto as Exhibit A, pursuant to Bankruptcy Rule 9019 and section 105(a) of the Bankruptcy Code, (i) approving the Settlement Agreement, (ii) authorizing the Plan Trustee to take any and all actions necessary to effectuate the Settlement Agreement, and (iii) granting such other and further relief as may be just and proper.

Dated: July _____, 2011  
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

Sean M. Beach (No. 4070)  
Matthew B. Lunn (No. 4119)  
Michael S. Neiburg (No. 5275)  
The Brandywine Building  
1000 West Street - 17th Floor  
P.O. Box 391  
Wilmington, Delaware 19899  
Telephone: (302) 571-6600  
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP  
Mark S. Indelicato  
Edward L. Schnitzer  
488 Madison Avenue  
New York, New York 10022  
Telephone: (212) 478-7200  
Facsimile: (212) 478-7400

Co-Counsel for the Plan Trustee