IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x
:
In re:                                                     :  Chapter 11
                                                           :
American Home Mortgage Holdings, Inc., *et al.*,[1]        :  Case No. 07-11047 (CSS)
                                                           :
                        Debtors.                           :  (Jointly Administered)
                                                           :
                                                           :  Response Deadline: Sept. 1, 2011 at 4:00 p.m. (ET)
                                                           :  Hearing Date: Sept. 9, 2011 at 10:00 a.m. (ET)
---------------------------------------------------------- x

## OBJECTION OF THE PLAN TRUSTEE TO EMPIRE HEALTHCHOICE ASSURANCE, INC., D/B/A EMPIRE BLUE CROSS BLUE SHIELD'S REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the chapter 11 cases of the above-captioned debtors and debtors-in-possession (the Debtors")[2], submits this objection (the "Objection"), pursuant to 11 U.S.C. §§ 502(b) and 503(b), Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to Empire HealthChoice Assurance, Inc., d/b/a Empire Blue Cross Blue Shield's ("Empire") *Request for Payment of Administrative Expense* (the "Application").[3] In support of the Objection, the Plan Trustee respectfully represents as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[3] The Application has been designated by the claims agent as claim numbered 10844.

## BACKGROUND

1. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

2. The Plan was confirmed under section 1129 of the Bankruptcy Code by order dated February 23, 2009 [D.I. 7042] (the "Confirmation Order"). The Plan became effective on November 30, 2010 (the "Effective Date").

3. Pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

**General Bar Date**

4. By order dated October 30, 2007 (the "Bar Date Order"), the Bankruptcy Court established January 11, 2008 at 4:00 p.m. (prevailing Eastern Time) as the last date and time for the filing of proofs of claim for prepetition claims in these chapter 11 cases (the "General Bar Date"). Pursuant to the Bar Date Order, the Bankruptcy Court required that "any entity holding a prepetition claim against the Debtors [was required to] file a proof of claim …on or before January 11, 2008." (Bar Date Order, ¶ 5). In addition, the Bankruptcy Court held that any entity which failed to abide by the Bar Date Order "shall not be treated as a creditor for purposes of

voting upon, or receiving distributions under, any chapter 11 plan or plans in these chapter 11 cases in respect of that claim." (Bar Date Order, ¶ 15).

5. On or about November 6, 2007, the Debtors' court-approved claims and noticing agent, Epiq Bankruptcy Solutions, LLC (the "Claims Agent" or "Epiq") (a) mailed a Bar Date Notice Package (including a copy of the Bar Date Notice and a Proof of Claim Form) to all known entities holding potential pre-petition claims and their counsel (if known), all parties that have requested notice in these cases, all equity holders, all indenture trustees, the Office of the United States Trustee and all taxing authorities for the jurisdictions in which the Debtors conducted business; and (b) published the Bar Date Notice in the Dallas Morning Star, Saint Louis Post-Dispatch, and the national edition of The New York Times.

**Administrative Bar Date**

6. The Plan provides that: "requests for payment of Administrative Claims must be Filed and served...no later than (a) thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court and served." (Plan, Art. 3(B)(2)). On the Effective Date, the Debtors filed the Notice of (I) Occurrence of the Effective Date of the Plan; (II) Deadlines to File Administrative Claims, Professional Claims, Rejection Damages Claims, and Subordination Statements, and to Submit Invoices for Indenture Trustee Expenses; and (III) Appointment of Borrower Information Ombudsperson [Docket No. 9519] (the "Effective Date Notice"). The Effective Date Notice clearly provides that requests for payment of Administrative Claims were to be filed and served no later than Wednesday, January 5, 2011 (the "Administrative Bar Date").

## THE EMPIRE CLAIM

7. Prior to the Petition Date, and during a portion of the Debtors' cases, Empire was the plan administrator for the Debtors' self-funded health benefits plan for the Debtors'

employees (the "Health Plan"). The Debtors cancelled the Health Plan on January 1, 2008, which triggered a refund to the Debtors of approximately $120,000 that was being held on reserve by Empire to fund any medical claims submitted by the Debtors' employees for payment. Empire voluntarily returned the refund by check dated June 15, 2009.

8. However, at the time of the refund, there remained an unresolved appeal on a claim submitted by an employee of the Debtors for payment in accordance with the Health Plan (the "Employee Claim"). Upon information and belief, the Plan Trustee has been informed that the Employee Claim arose from a pre-petition medical claim allegedly incurred by an employee of the Debtors from December 2006 through February 2007.[4]

9. Prior to Effective Date, and following Empire's voluntary return of the $120,000 refund to the Debtors, Empire sought return of the funds from the Debtors. However, the Debtors concluded there was no legal basis upon which the Debtors could return the refund to Empire, and informed Empire's counsel of same at that time.

10. On January 3, 2011, Empire filed its Application seeking allowance and payment of a administrative expense claim in the amount of $120,000 (the "Empire Claim"). In the Application, Empire asserts that "[i]f a right to payment of the claim is substantiated vis-à-vis the appeal process, there will be no funds available to satisfy *AHMH's obligation* under the Self-Funded Plan unless AHMH were to return the refund that was previously paid, or otherwise fund the Self-Funded Plan." (emphasis added).[5] Moreover, Empire states that "[while] Empire, as the mere plan administrator, *has no obligation to fund any claims submitted by AHMH's employees from funds that are outside the Self-Funded Plan*, Empire submits this administrative claim and

---

[4] The Plan Trustee expressly reserves all rights and defenses with respect to the Employee Claim.

[5] Upon information and belief, since the filing of the Empire Claim, the Employee Claim was substantiated vis-à-vis the appeal process in the amount of $98,000.

4

demands a return of the prior refund to the [sic] fund the Self-Funded Plan and all employee medical claims that AHMH is required to pay under such plan." (emphasis added).

## JURISDICTION

11. The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

12. The statutory predicates for the relief requested herein are sections 502(b) and 503(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007.

## RELIEF REQUESTED

13. The Plan Trustee objects to the allowance of the Empire Claim as an administrative expense of the estate and seeks the entry of an order pursuant to sections 502(b) and 503(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007 disallowing and expunging the Empire Claim in its entirety.

## BASIS FOR RELIEF REQUESTED

### I. Empire Does Not Have a "Claim" Against the Debtors' Estates Under § 101 of the Bankruptcy Code.

14. Empire has no right to payment from the Debtors, and thus, does not have a claim against the Debtors' estates under § 101(5)(A) of the Bankruptcy Code. Section 101(5)(A) of the Bankruptcy Code provides that the term "claim" means the "right to payment, whether or not such right is reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, or secured." 11 U.S.C. § 101(5)(A). When analyzing the issue of when a claim arises, the Third Circuit Court of Appeals stated that "[a]ny interest cognizable under the Code [] must stem from 'a legal relationship relevant to the purported interest from which that interest may flow.'" In re Remington Rand Corp., 836 F.2d 825, 832 (3d Cir. 1988)

YCST01:11344112.1                                                                                              066585.1001

(citation omitted). Thus, "the *Remington* court recognized there must exist not merely a legal relationship between the pre-petition debtor and the claim, but a legal relationship that gives rise to the asserted right to payment." In re United Merchants & Mfrs., 166 B.R. 234, 238 (Bankr. D. Del. 1994).

15. As Empire plainly acknowledges in the Application, "Empire, as the mere plan administrator, *has no obligation to fund any claims submitted by AHMH's employees from funds that are outside of the Self-Funded Plan...*" (emphasis added). Thus, even if Empire paid the Employee Claim, doing so would be at its own peril as Empire admittedly is under no obligation to fund any employee claims from funds outside of the Health Plan. Accordingly, as Empire does not have any obligation to fund the Employee Claim under the Health Plan, Empire has no conceivable right to payment from the Debtors. Instead, any alleged claim against the Debtors' as a result of the Employee Claim would belong to the employee him or herself, and not Empire.

16. Therefore, as an initial matter, Empire does not have a "claim" against the Debtors' estates under §101(5)(A) of the Bankruptcy Code.

II. **Even if Empire Had a Claim, it Would Not Qualify for Administrative Expense Status Under § 503 of the Bankruptcy Code.**

17. However, even if Empire had a claim against the Debtors under § 101 of the Bankruptcy Code, such claim would not qualify as an administrative expense under § 503 of the Bankruptcy Code. Section 503 of the Bankruptcy Code accords administrative expense priority to claims representing "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To be considered an actual, necessary cost and expense of preserving the estate, a claim "must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the

operation of the business." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (internal citation omitted).

18.      In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed. In re Bernard Techs., Inc., 342 B.R. 174, 177 (Bankr. D. Del. 2006). Accordingly, the movant under section 503(b)(1)(A) carries a "heavy burden of demonstrating that the costs and fees for which it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Id. (quoting Calpine, 181 F.3d at 533); see In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001) ("Claimants who seek payment ahead of other unsecured claims bear the burden of establishing that their claim qualifies for priority status."). Movant must prove its entitlement to an administrative expense claim against the Debtors by a preponderance of the evidence. Bernard Techs., 342 B.R. at 177.

19.      Empire has not met its burden. First, the asserted liability that is the basis of the Empire Claim is the underlying Employee Claim. Accordingly, as the Employee Claim was allegedly incurred from December 2006 through February 2007, the Empire Claim is premised on an asserted pre-petition liability. Second, the allegations underlying the Empire Claim clearly are not an "actual" or "necessary" cost of preserving the estate.

20.      Therefore, as the Empire Claim is premised on an alleged pre-petition liability that did not provide any benefit to the Debtors' estates, the Empire Claim cannot be accorded administrative expense priority under section 503(b)(1)(A). See Calpine, 181 F.3d at 532-533.

066585.1001

## CONCLUSION

For the foregoing reasons, the Plan Trustee respectfully requests that this Court enter an order (i) denying the Application and (ii) disallowing and expunging the Empire Claim in its entirety.

Dated: Wilmington, Delaware
August 10, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Alison M. Ladd
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel for the Plan Trustee*