# EXHIBIT 1

## Settlement Agreement

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMERICAN HOME MORTGAGE<br>HOLDINGS, INC., a Delaware corporation, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 07-11047 (CSS)<br><br>Jointly Administered<br><br>Ref. Docket Nos. 8226, 8325, 8480, 8665, 8724, 9153, 9229, 9230, & 9278 |

SETTLEMENT AGREEMENT BY AND AMONG
PLAN TRUSTEE AND U.S. BANK, N.A.
RESOLVING CLAIMS AND REQUEST FOR 506(c) CLAIM

This settlement agreement (the "Settlement Agreement") is entered into by and between Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the plan trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"),[1] and U.S. Bank, N.A. (f/k/a Park National Bank) ("U.S. Bank" and together with the Plan Trustee, the "Parties"). The Parties, by and through their undersigned counsel, hereby stipulate and agree as follows:

## RECITALS

A.   **General Background**

WHEREAS, on August 6, 2007 (the "Petition Date"), each of the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

WHEREAS, the Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [Docket No. 7042]. The Plan became effective on November 30, 2010 (the "Effective Date");

WHEREAS, pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement;

**B.     Relevant Background**

WHEREAS, on August 9, 2005, American Home Mortgage Corp. ("AHM Corp."), one of the Debtors, made a note (the "Note") in the principal amount of $1,007,000 payable to the order of Park National Bank and Trust of Chicago ("Park National"). The Note was secured by a mortgage (the "Mortgage") made by AHM Corp. to Park National dated August 9, 2005, which created a mortgage lien on the real property located at 950 North Elmhurst Road/150 West Rand Road, Mount Prospect, Illinois (the "Property");

WHEREAS, on or about November 1, 2007, Park National filed a proof of claim, which was assigned claim number 1871, asserting a secured claim in the amount of $872,531 (plus attorneys' fees) against AHM Corp. on account of amounts asserted to be due pursuant to the Note ("Claim 1871");

WHEREAS, subsequent to the Petition Date, the Debtors retained CB Richard Ellis, Inc. ("CBRE") as their real estate broker to market the Property. With the assistance of the Debtors, CBRE developed and executed an extensive campaign to market and sell the Property;

WHEREAS, while CBRE and the Debtors actively marketed and negotiated offers for the sale of the Property, Park National and the Debtors entered into two loan modification agreements (the "First Loan Modification Agreement" and "Second Loan Modification Agreement," and collectively referred to hereinafter as the "Loan Modification Agreements"), each of which, among other things, extended the maturity date under the Note. Executed on July 28, 2009, the First Loan Modification Agreement extended the maturity date to February 9, 2009. The Second Loan Modification Agreement was executed on February 3, 2009 and extended the maturity date to August 9, 2009;

WHEREAS, despite a full marketing effort, extensive negotiations with a potential purchaser over the terms of a purchase and sale agreement, and an auction conducted by CBRE, the Debtors were unable to sell the Property. As a result, on or about August 1, 2009, the Debtors communicated to Park National that they would be unable to pay the balance of the Note;

WHEREAS, on September 28, 2009, Park National filed its *Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection* [Docket No. 8101] (the "Stay Relief Motion"), which sought, among other things, to obtain relief from the automatic stay to foreclose on the Property;

WHEREAS, in response and opposition to the Stay Relief Motion, the Debtors filed the *Debtors' (I) Limited Objection to Motion of Park National Bank for Lifting the Automatic Stay, Objecting to Debtor's Use of Cash Collateral, and Requesting Adequate Protection and (II) Request for Allowance and Payment of Section 506(c) Claim, dated October 28, 2009* [Docket No. 8226] (the "Section 506(c) Motion"). The Section 506(c) Motion responded to the Stay Relief Motion and asserted a claim against Park National pursuant to section 506(c) of the

Bankruptcy Code in the amount of $274,920.36 on account of the *ad valorem* property tax payments made by the Debtors with respect to the Property;

WHEREAS, on November 25, 2009, the Debtors filed a motion seeking authorization to abandon the Property [Docket No. 8340]. The Debtors and Park National thereafter entered into an agreed order [Docket No. 8423] (the "Agreed Order"), entered on December 17, 2009, whereby the Debtors agreed to consent to stay relief and to abandon the Property. The Court thereafter entered an Order that abandoned the Property effective as of December 31, 2009 [Docket No. 8413];

WHEREAS, on November 20, 2009, Park National filed its *Opposition of Park National Bank to the Motion* [Docket No. 8325] (the "Objection"). On January 7, 2010, the Debtors filed a reply to the Objection [Docket No. 8480];

WHEREAS, by agreement of the parties, on January 12, 2010, the Court held a hearing (the "Hearing") relating only to the issue of whether section 506(c) of the Bankruptcy Code, as amended, as a matter of law, entitles the Debtors to reimbursement for amounts expended on account of *ad valorem* taxes. At the Hearing, the Court deferred ruling and directed the parties to confer regarding a discovery schedule and date to conduct an evidentiary hearing related to the Debtors' claims against Park National under section 506(c) of the Bankruptcy Code;

WHEREAS, on March 9, 2010, the Debtors filed their *Amended Motion for Recovery of Costs and Expenses Pursuant to 11 U.S.C. § 506(c) from Mount Prospect, Illinois Property* [Docket No. 8665] (the "Amended Motion"), which amended and supplemented the Section 506(c) Motion. On March 30, 2010, Park National filed its brief in opposition to the Amended Motion [Docket No. 8724];

WHEREAS, following the Hearing, the Parties engaged in extensive discovery, including document discovery and depositions of numerous parties. Park National's non-expert discovery was, however, incomplete in certain respects prompting the Debtors to file the *Debtors' Motion to Compel* (the "Motion to Compel") [Docket No. 9090]. Following a hearing on the Motion to Compel, the Court entered an order granting the Motion to Compel (the "Motion to Compel Order") [Docket No. 9153]. The Motion to Compel Order, among other things, awarded the Debtors the costs of prosecuting the Motion to Compel, including reasonable attorneys' fees (collectively, the "Costs"). As of the date hereof, the Debtors have not received reimbursement of the Costs awarded pursuant to the Motion to Compel Order;

WHEREAS, on September 8, 2010, the Debtors filed *Debtors' Motion to Exclude Expert Testimony and Report of Steven S. Albert* (the "Motion to Exclude") [Docket No. 9203]. After the Motion to Exclude was filed but before it was decided, the Court granted the Debtors' request to reschedule the trial date on the Section 506(c) Motion during a telephonic status conference on September 16, 2010. At the omnibus hearing held on September 23, 2010, the Court entered an order excluding Park National's expert evidence pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure (the "Motion to Exclude Order") [Docket No. 9258];

WHEREAS, on September 16, 2010, U.S. Bank filed its *Motion by U.S. Bank, N.A. (f/k/a Park National Bank) for Summary Judgment* and an accompanying memorandum of law [Docket Nos. 9229 & 9230] (the "Summary Judgment Motion"). On September 30, 2010, the Debtors responded by filing the *Debtors' Answer Brief in Opposition to Motion by U.S. Bank, N.A. (f/k/a Park National Bank) for Summary Judgment* (the "Summary Judgment Objection") [Docket No. 9278]. U.S. Bank replied to the Summary Judgment Objection on October 7, 2010 [Docket No.

9307]. A request for oral argument was filed by the Debtors, but, as the Parties had entered into negotiations, no hearing was scheduled by the Court;

WHEREAS, U.S. Bank has entered into an agreement for the sale of the Property, which sale is expected to close by the end of August, 2011;

WHEREAS, as a result of the negotiations, the Plan Trustee and U.S. Bank reached a settlement resolving issues between the Parties related to Claim 1871, the Section 506(c) Motion, the Amended Motion, the Summary Judgment Motion and the Costs;

NOW, THEREFORE, in consideration of the foregoing recitals, which the Parties acknowledge are a part of this Settlement Agreement, and the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, in order to resolve fully the issues and controversies between the Parties arising from and related to Claim 1871, the Section 506(c) Motion, the Amended Motion, the Summary Judgment Motion and the Costs, the Parties hereby stipulate and agree as follows:

1. U.S. Bank shall pay the sum of one hundred eighty thousand dollars ($180,000) (the "Settlement Amount") to the Plan Trustee in satisfaction of the claim pursuant to section 506(c) of the Bankruptcy Code asserted by the Debtors through the Section 506(c) Motion, as amended and supplemented by the Amended Motion, and the Costs.

2. The Settlement Amount shall be paid by U.S. Bank by bank check or by wire transfer pursuant to the wire instructions to be provided by counsel for the Plan Trustee upon the execution of this Settlement Agreement. The Settlement Amount shall be received by the Plan Trustee on or before the earlier of (i) the close of business on the date of the closing of the sale of the Property; or (ii) the close of business on the date that is forty (40) days after the entry of an Order by the Court approving this Settlement Agreement. If the Plan Trustee does not receive

the Settlement Amount on or before the applicable aforementioned deadline, without further Order of the Court or notice and hearing, the Plan Trustee shall have a judgment against U.S. Bank in the amount of $274,920.36.

3. Beginning from the submission of the motion to approve this Settlement Agreement until the Settlement Amount is received by the Plan Trustee, counsel for U.S. Bank shall provide counsel for the Plan Trustee with written updates as to the status of the closing on the sale of the Property on at least a weekly basis.

4. Effective upon approval of this Settlement Agreement, U.S. Bank, on behalf of itself and as successor to Park National, shall release, discharge, and forgive the Debtors, the Plan Trust and the Plan Trustee, including and, solely in their capacity as such, each current or former affiliate, director, officer, employee, agent, successor, and assign of the Debtors, the Plan Trust and the Plan Trustee, and any others on their behalf liable, for and from any and all liabilities, actions, suits, claims, administrative claims, demands, damages, injuries and causes of action of whatever kind and nature, including any claims for attorneys' fees, whether known or unknown, whether contingent, liquidated, or otherwise, whether accrued or to accrue, whether asserted by way of claim, counterclaim, cross-claim, third-party action, action for indemnity or contribution, or otherwise, whether in law or in equity, related directly or indirectly, or in any way connected with any transaction, affairs, or occurrences between the parties related to or arising from the matters that are the subject of and or related to the Note, the Mortgage, the Property, Claim 1871, the Section 506(c) Motion, the Amended Motion, and the Summary Judgment Motion (other than those provided for in this Settlement Agreement); _provided, however_, that nothing herein shall constitute a release of any rights of U.S. Bank to enforce the terms of this Settlement Agreement.

5. Effective upon receipt of the Settlement Amount, the Debtors, the Plan Trust and the Plan Trustee shall release, discharge, and forgive U.S. Bank, in its capacity as successor to Park National Bank, including and, solely in their capacity as such, each current or former affiliate, director, officer, employee, agent, successor, and assign of U.S. Bank, and any others on their behalf liable, for and from any and all liabilities, actions, suits, claims, administrative claims, demands, damages, injuries and causes of action of whatever kind and nature, including any claims for attorneys' fees, whether known or unknown, whether contingent, liquidated, or otherwise, whether accrued or to accrue, whether asserted by way of claim, counterclaim, cross-claim, third-party action, action for indemnity or contribution, or otherwise, whether in law or in equity, related directly or indirectly, or in any way connected with any transaction, affairs, or occurrences between the parties related to or arising from the matters that are the subject of and or related to the Note, the Mortgage, the Property, Claim 1871, the Section 506(c) Motion, the Amended Motion, and the Summary Judgment Motion (other than those provided for in this Settlement Agreement); *provided, however*, that nothing herein shall constitute a release of any rights of the Debtors, the Plan Trust or the Plan Trustee to enforce the terms of this Settlement Agreement.

6. Upon approval of this Settlement Agreement by the Court, Claim 1871 shall be deemed withdrawn with prejudice without further Order of the Court. U.S. Bank, on behalf of itself and as successor to Park National, shall be prohibited from filing or asserting any further Claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Plan Trust in connection with or related to the Note, the Mortgage, the Property, Claim 1871, the Section 506(c) Motion, the Amended Motion, and the Summary Judgment Motion (except in connection with the enforcement of the terms of this Settlement Agreement).

7. This Settlement Agreement is subject to Court approval.

8. This Settlement Agreement shall be binding upon and inure to the benefit of the parties hereto, their parents, subsidiaries and affiliated corporations, their successors and assigns (including any third party purchaser) and each of their agents, representatives, and successors and assigns, including but not limited to any subsequently appointed Chapter 7 or Chapter 11 Trustees or Examiners.

9. The Court shall retain jurisdiction to interpret, enforce, and resolve any disputes arising under or related to this Settlement Agreement. Any motion or application brought before the Court to resolve any dispute arising under or related to this Settlement Agreement shall be brought on proper notice in accordance with the relevant Federal Rules of Bankruptcy Procedure and the Local Rules of the Court.

10. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signature transmitted by facsimile shall be deemed an original signature for purposes of this Settlement Agreement.

11. The undersigned counsel represent that he or she is counsel to that party on whose behalf he or she signed, and that party has reviewed this Settlement Agreement and consented to its terms, and that counsel is authorized by his or her client to sign this Settlement Agreement.

12. This Settlement Agreement shall constitute the entire agreement between the Parties with respect to the subject matter hereof and shall supersede any previous negotiations, commitments, writings, orders or judgments with respect to such subject matter and no provision of this Settlement Agreement may be changed except by a written instrument executed by the parties hereto.

13. This Settlement Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware without reference to its conflicts of laws rules, and the Parties hereto consent to the exclusive jurisdiction of the Court for all matters concerning this Settlement Agreement to the fullest extent that the Court has jurisdiction under 28 U.S.C. § 1334.

14. It is acknowledged that each Party has participated in and jointly consented to the drafting of this Settlement Agreement and that any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

**AGREED AND ACCEPTED**

| | |
|---|---|
| Dated: July 26, 2011 | Dated: July 26, 2011 |
| YOUNG CONAWAY STARGATT & TAYLOR, LLP | WOMBLE CARLYLE SANDRIDGE & RICE, PLLC |
| /s/ Matthew B. Lunn | /s/ Michael Busenkell |
| Sean M. Beach (No. 4070)<br>Matthew B. Lunn (No. 4119)<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 571-6600 | Michael Busenkell (No. 3933)<br>222 Delaware Avenue, Suite 1501<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4324 |
| -and- | -and- |
| HAHN & HESSEN LLP<br>Mark S. Indelicato<br>Edward L. Schnitzer<br>488 Madison Avenue<br>New York, New York 10022<br>Telephone: (212) 478-7200 | ARONAUER, RE & YUDELL, LLP<br>Kenneth S. Yudell<br>444 Madison Avenue, 17th Floor<br>New York, New York 10022<br>Telephone: (212) 755-6000 |
| *Co-Counsel to the Plan Trustee* | *Co-Counsel to U.S. Bank* |