IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:

AMERICAN HOME MORTGAGE
HOLDINGS, INC., a Delaware corporation, et al.,[1]

Debtors.

---------------------------------------------------------- x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

Ref. D.I. 10148, 9692 & 9693

## PLAN TRUST'S OMNIBUS OBJECTION TO (I) MOTION FOR JUDGMENT AS A MATTER OF LAW OF ADMINISTRATIVE CLAIM ENTERED; (II) MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM WITH BRIEF IN SUPPORT; AND (III) CLAIMS NUMBERED 10870, 10875 AND 10887 FILED BY HUSSAIN KAREEM

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust

established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of*

*February 18, 2009* (the "Plan") in connection with the Chapter 11 cases of the above-captioned

debtors (the "Debtors"),[2] objects (the "Objection") to (i) *Motion for Judgment as a Matter of*

*Law of Administrative Claim Entered* [D.I. 10148]; (ii) *Motion for Entry of Administrative Claim*

*with Brief in Support* [D.I. 9692]; and (iii) claims numbered 10870, 10875 and 10887 filed by

Mr. Hussain Kareem.  In support of this Objection, the Plan Trustee states as follows:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

066585.1001

## PRELIMINARY STATEMENT[3]

1.     Mr. Kareem requests rescission of the Kareem Loan and allowance of an administrative claim in the amount of $19,175.71, which appears to be the principal and interest amounts paid on the Kareem Loan during the Debtors' bankruptcy.  Mr. Kareem states that the requested administrative claim amount does not include interest and filed a later administrative claim for an undetermined amount.  Mr. Kareem has been informed that the Debtors have no right or authority to rescind the Kareem Loan as of the date he made such a request because the Kareem Loan was not owned or serviced by any of the Debtors at or since that time.  In addition, the Debtors made a settlement offer to Mr. Kareem that he determined not to counter and the Debtors offered to mediate the dispute and Mr. Kareem declined.

2.     By way of background, in 2006, Mr. Kareem refinanced his home loan with American Brokers Conduit (a d/b/a of AHM Corp.).  During the loan process, Mr. Kareem received multiple disclosures regarding the terms of his loan, including that the interest rate was adjustable and that the loan could result in negative amortization, as well as notice of his right to rescind the loan within three days after closing.  Having full disclosure, Mr. Kareem moved forward with the refinancing and did not take objection to the terms of the Kareem Loan until he began to fall behind on his payments in 2008 (after the Debtors no longer had any interest in the Kareem Loan).

3.     Mr. Kareem first disputed the terms of the Kareem Loan only after he received a notice of default from AHMSI (the purchaser of the Debtors' servicing business) in August 2008.  After numerous letters did not garner what Mr. Kareem viewed as an acceptable resposne, he commenced litigation in three different forums and has appealed his latest defeat to the United States Court of Appeals for the Fifth Circuit.  Given the Court's ruling in the Texas

---

[3]     Capitalized terms not defined in the Preliminary Statement shall have the meanings ascribed to such terms *infra.*

2

Action, most, if not all, of his current claims could be disposed of through the doctrine of issue preclusion following an affirmation by the Fifth Circuit, and the Plan Trustee requests that, in the interests of judicial economy, the Court adjourn deciding the matter until the Fifth Circuit makes its ruling.

4.    Despite Mr. Kareem's citation to multiple federal and state laws, Mr. Kareem fails to cite a cognizable cause of action.  The origination of Mr. Kareem's loan was in accordance with applicable federal and state laws, and, the subsequent servicing of the Kareem Loan was equally proper.  As best stated by the Magistrate Judge in the Texas Action, "if anyone breached the agreement, it was [Mr. Kareem], who all but admits that he has failed to perform or tender performance under the note." (Texas Action, D.I. 112).

## BACKGROUND

A.    **The Kareem Loan**

5.    In May 2006, Mr. Kareem sought a cash-out refinance on his home through a third-party broker, Global Mortgage.

6.    On June 26, 2006, Global Mortgage submitted Mr. Kareem's loan application to American Home Mortgage Corp. (d/b/a American Brokers Conduit) ("AHM Corp.") through AHM Corp.'s online portal for brokers.  On June 28, 2006, AHM Corp. received a hard copy of the loan application.  A copy of his loan application is attached hereto as Exhibit A.  In his application, Mr. Kareem asserted that he was self-employed as a property manager with a stated base monthly income of $8,000.  In reliance on the information set forth by Mr. Kareem in his application, AHM Corp. approved the proposed refinancing.

7.    On June 29, 2006, AHM Corp. mailed Mr. Kareem his "three-day docs" to his current mailing address.  Included in these "three-day docs" were (i) a copy of his loan application in which his monthly income is stated as $8,000.00, (ii) disclosure of credit score information, (iii) privacy policy notices, (iv) initial Truth-in-Lending Statements, and (v)

3

disclosures regarding the type of loan product Mr. Kareem selected including a Fixed Payment ARM Disclosure (defined below) and a disclosure regarding payment option ARMs (the "Payment Option ARM Disclosure" attached hereto as Exhibit B).

8.      On July 7, 2006, Mr. Kareem closed on his loan (the "Kareem Loan") in the amount of $159,200.00.  The Kareem Loan was secured by the property located at 2197 Carlysle Creek Drive, Lawrenceville, Georgia 30044 (the "Kareem Property").  At closing, Mr. Kareem received cash in the amount of $2,314.40.  See HUD-1 Statement, attached hereto as Exhibit C.

9.      At closing, Mr. Kareem executed the documents governing the Kareem Loan, as well as a number of disclosures which advised Mr. Kareem of the salient terms of his loan, including, but not limited to:

(i)     *Adjustable Rate Note* (the "Note"), a copy of which is attached hereto as Exhibit D.  The preamble of the Note provides, in capital letters:

> THIS NOTE CONTAINS PROVISIONS ALLOWING
> FOR CHANGES IN MY INTEREST RATE AND MY
> MONTHLY PAYMENT.  BECAUSE MY INTEREST
> RATE WILL CHANGE MORE FREQUENTLY THAN
> MY MONTHLY PAYMENT, AND BECAUSE THERE
> ARE LIMITATIONS ON MY MONTHLY PAYMENT
> INCREASES, THE AMOUNT OF MY MONTHLY
> PAYMENT MAY NOT FULLY PAY THE INTEREST
> THAT ACCRUES.  AS A RESULT, THE PRINCIPAL
> AMOUNT THAT I MUST REPAY COULD BE LARGER
> THAN THE AMOUNT I ORIGINALLY BORROWED,
> BUT NOT MORE THAN 110.000% OF THE ORIGINAL
> AMOUNT (OR $175,120.00).  MY INTEREST RATE
> CAN NEVER EXCEED THE LIMIT STATED IN THIS
> NOTE OR ANY RIDER TO THIS NOTE.  A BALLOON
> PAYMENT MAY BE DUE AT MATURITY.

(ii)    *Adjustable Rate Rider* (the "Rider"), a copy of which is attached hereto as Exhibit E.  Mr. Kareem initialed each page and executed the Rider, the first page of which expressly provided in block quote and all capital letters:

066585.1001

> THIS RIDER CONTAINS PROVISIONS ALLOWING
> FOR CHANGES IN MY INTEREST RATE AND MY
> MONTHLY PAYMENT. BECAUSE MY INTEREST
> RATE WILL CHANGE MORE FREQUENTLY THAN
> MY MONTHLY PAYMENT, AND BECAUSE THERE
> ARE LIMITATIONS ON MY MONTHLY PAYMENT
> INCREASES, THE AMOUNT OF MY MONTHLY
> PAYMENT MAY NOT FULLY PAY THE INTEREST
> THAT ACCRUES. AS A RESULT, THE PRINCIPAL
> AMOUNT THAT I MUST REPAY COULD BE LARGER
> THAN THE AMOUNT I ORIGINALLY BORROWED,
> BUT NOT MORE THAN 110.000% OF THE ORIGINAL
> AMOUNT (OR $175,120.00). MY INTEREST RATE
> CAN NEVER EXCEED THE LIMIT STATED IN THE
> NOTE AND RIDER. A BALLOON PAYMENT MAY
> BE DUE AT MATURITY.

(iii)    *Security Deed*, which provided American Brokers Conduit (a "d/b/a" of

American Home Mortgage Corp.) with a security interest in the Kareem Property.

A copy of the recorded Security Deed is attached hereto as <u>Exhibit F</u>.

(iv)    *Final Truth-in-Lending Disclosure Statement* ("<u>Final TIL</u>"), a copy of

which is attached hereto as <u>Exhibit G</u>. The Final TIL provides that Mr. Kareem's

loan has a variable rate feature and identifies the Annual Percentage Rate of

7.014% (i.e., 6.832% monthly).

(v)    *5 Year Fixed Payment 12-Month MTA Index Power ARM Disclosure* (the

"<u>Fixed Payment ARM Disclosure</u>"), a copy of which is attached hereto as <u>Exhibit

H</u>. The first paragraph of the Fixed Payment ARM Disclosure expressly provides,

in capital letters, that "THIS LOAN ALLOWS FOR NEGATIVE

AMORTIZATION," and the subsequent pages provide examples of various

payment scenarios, including how monthly payments may change when adjusted

for the maximum interest rate under the loan. Mr. Kareem initialed each page and

executed the Fixed Payment ARM Disclosure.

(vi)    *Notice of Right to Rescind* (the "<u>Right to Rescind Notice</u>"), a copy of

which is attached hereto as <u>Exhibit I</u>. The Right to Rescind Notice is consistent

5

with the requirements under Truth in Lending Act as of the closing of the Kareem Loan and explained his right to rescind his mortgage within three business days of the conclusion of the transaction (the "Rescission Period").

10.    Mr. Kareem did not exercise his right to rescind the Kareem Loan prior to the expiration of the Rescission Period.

11.    Commencing upon closing, AHM SV acted as servicer of the Kareem Loan.

12.    On July 28, 2006, the Kareem Loan was sold into a securitized trust entitled AHMA 2006-3 (the "AHMA 2006-3 Trust") on a "servicing retained" basis (i.e., AHM SV continued to act as servicer to the Kareem Loan).

13.    On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition commencing the above-captioned cases under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").[4]  The Bankruptcy Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

14.    On October 30, 2007, this Court entered an order (the "Servicing Sale Order") approving the Debtors' sale (the "Servicing Sale") of the mortgage servicing business to AH Mortgage Acquisition Co., Inc. (now known as American Home Mortgage Servicing, Inc., "AHMSI") [D.I. 1711].

15.    Following the final closing of the Servicing Sale on April 11, 2008, AHMSI became servicer of the Kareem Loan.  Upon information and belief, AHMSI continues to service the Kareem Loan for the benefit of the AHMA 2006-3 Trust.

---

[4]    The Debtors' Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042].  The Plan became effective on November 30, 2010 (the "Effective Date").  Pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust.  Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust.  The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

066585.1001

16.     In or about July 2008, Mr. Kareem ceased making payments on the Kareem Loan.

17.     On August 7, 2008, AHMSI sent Mr. Kareem a notice of default (the "Notice of Default") for failure to make payments on the Kareem Loan.  See Affidavit of Jose Colon, Texas Action (as defined below) D.I. 85, attached hereto as Exhibit J.

18.     In response to the Notice of Default, on August 26, 2008, Mr. Kareem sent a "Rescission Demand Notice" directly to AHMSI, wherein Mr. Kareem stated that he was rescinding his loan pursuant to Regulation Z of the Truth in Lending Act.  No further payments were made on the Kareem Loan, and AHMSI sent further notices of default to Mr. Kareem in the following months leading up to the filing of the Texas Action.  Upon information and belief, AHMSI refused the rescission request.

19.     In or about October 2008, Mr. Kareem sent a letter to Mr. Michael Strauss, former CEO of the Debtors, demanding rescission of the Kareem Loan.  See Exhibit K, hereinafter the "October 2008 Letter."  The Debtors forwarded the October 2008 Letter to AHMSI, as the Debtors no longer had any servicing or ownership rights to the Kareem Loan. See Affidavit of Jose Colon, attached hereto as Exhibit J.

20.     AHMSI refused Mr. Kareem's rescission demand set forth in the October 2008 Letter.  Thereafter, AHMSI provided a formal, written response to the October 2008 Letter on February 6, 2009.  See Affidavit of Jose Colon attached hereto as Exhibit J.

21.     On September 7, 2009, Mr. Kareem sent a letter to AHMSI disputing the validity of the Kareem Loan and denying his indebtedness.   In accordance with section 6 of the Real Estate Settlement Procedures Act, on September 18, 2009, AHMSI sent an acknowledgement of receipt of his letter, and, on November 11, 2009, AHMSI's outside counsel sent Mr. Kareem verification of the disputed debt in the form of a breakdown of the delinquent

amounts and associated fees and costs owed under the Note, a copy of the original Note, and Mr. Kareem's payment history.

22.    Upon Mr. Kareem's failure to work with AHMSI to reinstate the Kareem Loan or participate in a loan modification process, AHMSI began the foreclosure process. A foreclosure sale was scheduled for January 5, 2010, but was halted due to the litigations described below.

**B.    Mr. Kareem's Litigations Relating to the Kareem Loan**

23.    On September 22, 2009, Mr. Kareem filed a complaint against AHM Holdings, AHMSI, and Mortgage Electronics Registration Systems, Inc. ("MERS") in the Northern District of Georgia, Case No. 09-MI-0403 for violations of the National Banking Act, Truth-in-Lending Act and damage claims under 42 U.S.C. § 1983, 1985 & 1986 (the "Georgia Action").

24.    Pursuant to his Complaint in the Georgia Action, Mr. Kareem acknowledged AHMSI's continued responses to Mr. Kareem's alleged RESPA and rescission requests, citing response dates of July 7, 2008, August 26, 2008, February 24, 2009 and "on or about September 27, 2009 [*sic*]."[5] (Georgia Action Compl. ¶ 25-26, a copy of which is attached hereto as Exhibit L).

25.    Mr. Kareem voluntarily dismissed the Georgia Action following commencement of the Texas Action, discussed below.

26.    On November 13, 2009, Mr. Kareem also filed a lawsuit in the Southern District of Texas – Houston Division, Case No. 09-552, which he voluntarily dismissed on December 28, 2009.

---

[5]    The date provided is subsequent to the filing of the Complaint.

066585.1001

27.     On November 18, 2009, Mr. Kareem filed a complaint against AHM Holdings, AHMSI, MERS, R.K. Arnold, CEO of MERS, and David Friedman, CEO of AHMSI in the Northern District of Texas (the "Texas District Court"), Case No. 10-00762 for the alleged illegal foreclosure of the Kareem Property (the "Texas Action"). Mr. Kareem made numerous claims including the following: (i) violations of the Truth in Lending Act; (ii) violations of the Real Estate Settlement Procedures Act; (iii) unspecified civil rights violations; (iv) fraud; (v) breach of contract; (vi) wrongful foreclosure; (vii) rescission; (viii) credit libel; and (ix) violations of Georgia law related to the alteration of loan documents.

28.     Due to the pendency of the Bankruptcy Cases, the Texas Action was stayed as against AHM Holdings. Mr. Kareem subsequently amended his complaint, asserting claims only against AHMSI, MERS, R.K. Arnold and David Friedman (collectively, the "Texas Action Defendants"). A copy of the Third Amended Complaint is attached hereto as Exhibit M.

29.     The Texas Action was referred by the Texas District Court to Jeff Kaplan, United States Magistrate Judge (the "Magistrate Judge").

30.     On April 12, 2011, the Magistrate Judge entered his Findings and Recommendations to the District Court in the Illegal Foreclosure Action, finding that summary judgment should be granted in favor of the Texas Action Defendants and that the complaint should be dismissed with prejudice. [Texas Action D.I. 112, attached hereto as Exhibit N. Specifically, the Magistrate Judge found that Mr. Kareem's TILA claims were timed barred, and furthermore, "[t]here is no evidence that [Mr. Kareem] has returned, or offered to return, the benefit he received from the contract." The Magistrate Judge also noted that, if there was any breach of the agreement, it was on the part of Mr. Kareem who "all but admits he failed to perform or tender performance" under the Kareem Loan.

31.     Thereafter, on May 13, 2011, the Texas District Court adopted the Findings, Conclusions and Recommendations of the Magistrate Judge and dismissed all claims

9

against the Texas Action Defendants with prejudice. [Texas Action D.I. 115 & 116, attached hereto as Exhibit O].

32.    On June 20, 2011, Mr. Kareem filed a motion for a new trial, which was subsequently denied by the Texas District Court on June 29, 2011. [Texas Action D.I. 118 & 119].

33.    On July 20, 2011, Mr. Kareem appealed the Texas District Court's orders dismissing the Texas Action and denying Mr. Kareem a new trial. The appeal (the "Texas Appeal") is currently pending before the Fifth Circuit Court of Appeals, Case Number 11-10701.

## C.    Mr. Kareem's Filings in the Instant Bankruptcy

34.    In January 2011, Mr. Kareem filed two separate proofs of claim in these Bankruptcy Cases, which are identified by the claims agent as claims 10870 and 10875. Subsequently, Kurtzman Carson Consultants ("KCC") (not the claims agent retained in these cases) forwarded a proof of claim it received from Mr. Kareem to Epiq Solutions (the claims agent in these cases), which was provided a claim number of 10887[6] (together with claims numbered 10870 and 10875, the "Kareem Claims"). Each of the Kareem Claims asserts a secured claim in the amount of $200,000 and an unsecured claim in the amount of $50,000 against AHM Holdings. The Kareem Claims are attached hereto as Exhibit P. Mr. Kareem cited his Note and TILA rescission as the basis for each of his secured and unsecured claims.[7]

35.    On January 20, 2011, Mr. Kareem filed his *Motion for Entry of Administrative Claim with Brief in Support* [D.I. 9692] (the "First Administrative Claim Motion") requesting allowance of an administrative claim. In the First Administrative Claim

---

[6]    Claim No. 10887, forwarded from KCC, does not include supporting documentation, and upon information and belief, is duplicative of, or is superseded by, those claims appropriately submitted to Epiq Solutions. Accordingly, the Plan Trust further objects to Claim 10887 on these non-substantive bases.

[7]    Mr. Kareem also filed a pleading titled *Judicial Notice: Second Attempt to Deliver Proof of Claim* [D.I. 9693], which appears to be a request to allow the Kareem Claims as late-filed due to mailing difficulties. The Plan Trustee does not object to the Kareem Claims or either Motion as late-filed.

Motion, Mr. Kareem requests rescission of the Kareem Loan and allowance of an administrative

claim in the amount of $19,175.71, which appears to be the amounts paid on the Kareem Loan

during the Debtors' bankruptcy. Mr. Kareem states that this amount does not include interest,

but does not provide any basis for his demand for interest.

36.    On or about August 12, 2011, Mr. Kareem filed his *Motion for Judgment*

*as a Matter of Law of Administrative Claim Entered* [D.I. 10148] (the "Second Administrative

Claim Motion, and together with the First Administrative Claim Motion, the "Kareem

Motions"). By his Second Administrative Claim Motion, Mr. Kareem reiterates his arguments

from the First Administrative Claim Motion, as well as asserts a new argument regarding the

Plan Trust's alleged failure to timely respond to the First Administrative Claim Motion.

## CERTIFICATION REGARDING COMPLIANCE WITH ARTICLE 17 OF THE PLAN

37.    Prior to filing the instant objection, undersigned counsel for the Plan

Trustee certifies that the Objection complies in all respects with Article 17 of the Debtors' Plan

and Confirmation Order. Specifically, the Plan Trustee (i) contacted Mr. Kareem to obtain

information regarding the factual and legal bases of his claims and motions, and (ii) made a

reasonable offer of settlement as to the Allowed amount of such Claim, giving due regard for the

*prima facie* validity of a properly filed proof of claim and the costs and relative hardships

litigation would impose on the Plan Trust and the borrower-claimant. When Mr. Kareem

declined the offer, counsel for the Plan Trust invited Mr. Kareem to make a counter-offer and to

continue settlement discussions. Mr. Kareem declined to do so.

38.    In addition to the foregoing, counsel for the Plan Trustee offered Mr.

Kareem an opportunity to resolve his claims and motions through mediation. Mr. Kareem did

not respond to the offer to mediate.

39.     The undersigned further certifies that Mr. Kareem is apprised of his right to appear telephonically at the hearing on this Objection, and the Objection is being accompanied by a copy of this Court's procedures regarding telephonic appearances.

## OBJECTION

### A.     This Objection is Timely Filed

40.     As an initial matter, Mr. Kareem's most recent argument (that the Plan Trust failed to meet the applicable deadline to object to Mr. Kareem's claims) is without merit. The Plan Trust has fully complied with the deadlines set forth in the Plan and Confirmation and by further orders of this Court.

41.     Pursuant to Article 3, Section B(2)(ii) of the Plan, all objections to allowance of Administrative Claims (excluding Professional Claims) must be filed by any parties in interest no later than ninety days after the Administrative Claims Bar Date (the "Administrative Claims Objection Deadline"). The Administrative Claims Objection Deadline was extended to July 4, 2011 by the filing of a notice [D.I. 9884] in accordance with the terms of the Plan. The Plan further provides that "the Administrative Claims Objection Deadline may be further extended by an Order of the Bankruptcy Court, which Order may be granted *without notice to any creditors*." Plan, Art. 3B(2)(ii) (emphasis added). Following a motion by the Plan Trustee, this Court entered an order further extending the Administrative Claims Objection Deadline to October 6, 2011. [8] See D.I. 10093.

42.     Additionally, the deadline to object to the Kareem Claims, which appear to be asserted as secured and unsecured nonpriority status claims, is not until November 30, 2011.

---

[8]     The Plan Trustee reserves his rights to request further extension of any deadlines as contemplated by the Plan and Confirmation Order.

YCST01: 10767494.5                                                                                          066585.1001

43.     Following Mr. Kareem's filing of this Second Administrative Claim Motion, this Court set an objection deadline for the Second Administrative Claim Motion of September 30, 2011.  Accordingly, this Objection is being filed consistent with applicable deadlines set forth by the Court.

**B.     Courts Have Already Ruled on Most, if Not All, of Mr. Kareem's Arguments**

44.     The vast majority, if not all, of Mr. Kareem's arguments have been previously addressed by this Court or in the Texas Action.  Accordingly, this Court should abide by its earlier rulings and adopt the findings of the Texas District Court.  To the extent that the Texas District Court's rulings are not "final" due to the pending appeal, the Plan Trustee requests that the Court adjourn determination of the instant matter until the appeal is resolved.

1.     *The Plan Trustee Is Not Objecting to the Timeliness of Mr. Kareem's Claims, Thus No Damages Exist, and Event If They Could, This Court Has Previously Addressed the Notice Issues for Borrowers*

45.     Mr. Kareem asserts that he was damaged as a result of the Debtors' failure to provide Mr. Kareem notice of the Debtors' bankruptcy filing; however, he fails to articulate how such failure has harmed him.  The Plan Trustee does not object to the Kareem Claims as late-filed and, thus, no damages could arise out of any purported failure to notify Mr. Kareem of the bankruptcy.

46.     Even assuming that Mr. Kareem had resulting damages – which the Plan Trustee contests - this Court has previously ruled that actual notice to all borrowers was not required.  The ruling followed vigorous litigation in these Bankruptcy Cases by the Official Committee of Borrowers (the "Borrowers' Committee") which spanned three days, and included expert testimony regarding the nature of the Debtors' loan products and the potential for litigation.  The Court confirmed the Debtors' Plan, and the Confirmation Order specifically provides that borrowers who had not asserted or threatened litigation against the Debtors were unknown creditors because, among other things, the Debtors neither knew nor should have

13

known that it was reasonably foreseeable such borrowers have claims against the Debtors.

Accordingly, publication notice was sufficient.  See Confirmation Order [D.I. 7042], ¶ Q.

47.    At the time of the bankruptcy filing, Mr. Kareem was an "unknown

creditor" and asserts no evidence that he advised the Debtors that he believed he had claims

against them.  Mr. Kareem's first contact with the Debtors regarding his disputes began in

October 2008, when he sent the letter demanding rescission of his loan – a time when the

Debtors no longer had any interest in the Kareem Loan – and at a time when he clearly had

actual knowledge of the Bankruptcy Cases.  See October 2008 Letter (stating that "[Mr.

Kareem's] rights should not allow you as a debtor, under Federal Bankruptcy protection, Chapter

11, Case No. 07-11047 (CSS) from adhering to the Federal Rescission Demand").[9]

> ### 2.   *Mr. Kareem's Remaining Arguments Can Be Disallowed Under the Doctrine of Issue Preclusion*

48.    The Kareem Motions and Claims essentially reiterate many, if not all, of

the facts, causes of action and related arguments made in the Texas Action, which were

dismissed with prejudice as to the Texas Action Defendants and are now pending appeal before

the Fifth Circuit.  The findings of fact and conclusions of law issued by the Magistrate Judge and

adopted by the Texas District Court should be extended to the identical facts and issues

surrounding the elements of the current claims against AHM Holdings through the doctrine of

issue preclusion.  As a result, a final order on the Texas Action – through affirmance by the Fifth

Circuit - can provide a conclusive resolution of the Kareem Motions and Claims without further

need for a trial in this Court.

---

[9]    Mr. Kareem also appears to assert that the Debtors were obligated to provide him notice of the bankruptcy filing pursuant to RESPA or under the provisions of his contract.  Put simply, neither RESPA nor the Note requires such notice.  The cited provisions of the Note provide that notice is required only under two circumstances: (i) changes in amount of Mr. Kareem's monthly payment, and (ii) notice and opportunity to cure prior to commencing litigation against Mr. Kareem.

YCST01: 10767494.5                                                                                          066585.1001

49.     Specifically, the Texas District Court made the following relevant findings and conclusions that should be applied to preclude Mr. Kareem's from furthering his current arguments[10] against AHM Holdings:

| Truth in Lending Claims (Rescission and Actual Damages) | Mr. Kareem's TILA claims relating to the Kareem Loan, both actual and rescission damages are time-barred. (Op., p. 2-3)<br><br>Mr. Kareem failed to provide any evidence that defendants breached the loan agreement and "if anyone breached the agreement it was plaintiff, who all but admits that he has failed to perform or tender performance under the note." (Op., p. 6) |
| --- | --- |
| State Law Claims for Rescission | Mr. Kareem's claims for rescission under Georgia law were precluded because Mr. Kareem continued to live in the property purchased with the proceeds of the mortgage loan he wants to rescind and, thus, was "still enjoying the benefits of the contract." (Op., p. 5)<br><br>Mr. Kareem failed to provide any evidence that defendants breached the loan agreement and "if anyone breached the agreement it was plaintiff, who all but admits that he has failed to perform or tender performance under the note." (Op., p. 6) |
| Claims Surrounding the October 2008 Letter | The October 2008 Letter does not satisfy the requirements of a "qualified written request" under RESPA – the only correspondence that Mr. Kareem sent that did qualify as a "qualified written request" was the letter to AHMSI dated September 2009. (Op., p. 4)<br><br>Texas Action Defendants, including AHMSI in its capacity as current servicer of Mr. Kareem's Loan, have complied with their obligations under RESPA. (Op., p. 4)<br><br>There was no RESPA violation for refusing to respond to correspondence related to the assignment of a new number to his account. (Op., p. 3) |

---

[10]     The Plan Trustee provides the following list based upon his understanding of Mr. Kareem's current arguments as a result of Mr. Kareem's pleadings and subsequent discussions with Mr. Kareem. To the extent that Mr. Kareem asserts additional arguments, the Plan Trustee reserves his right to argue issue preclusion, and to otherwise supplement this Objection, with respect to such newly-raised arguments.

YCST01: 10767494.5                                                                      066585.1001

| Claims Regarding AHMSI's Change of Account Number | AHMSI's assignment of a new account number does not constitute a material misrepresentation. (Op., p. 5)

There was no RESPA violation for refusing to respond to correspondence related to the assignment of a new number to his account. (Op., p. 3)

Mr. Kareem has no evidence that he was damaged by AHMSI's change in account number. (Op., p. 6) |

50.    Issue preclusion, formerly called collateral estoppel, provides that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigating of the issue. Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 585 F. Supp. 2d 623, 628 (D. Del. 2008) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)). Under the doctrine, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 247 (3d Cir. 2010) (citing Montana v. United States, 440 U.S. 147 (1979)). Four elements must exist for the doctrine to apply: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision;[11] and (4) the party being precluded from relitigating the issue was fully represented in the prior action." Id. at 248 (citing Zzehinskyj v. Attorney Gen. of the United States, 432 F.3d 253, 255 (3d Cir. 2005)).

51.    Assuming the Fifth Circuit affirms the orders in the Texas Action, all four factors will have been met for this Court to apply the findings of fact and conclusions of law set forth by the Magistrate Judge and adopted by the Texas District Court to the relevant facts of this

---

[11]    In determining whether the issue was essential to the judgment, we must look to whether the issue was critical to the judgment or merely dicta." Dentsply, 602 F.3d at 248. Notably, the Third Circuit has provided that "multiple findings also may figure in declaratory judgment actions. Since the very purpose of declaratory relief is to achieve a final and reliable determination of legal issues, there should be no quibbling about the necessity principle. Every issue that the parties have litigated and that the court has undertaken to resolve is necessary to the judgment, and should be precluded." Henglein v. Colt Indus., 260 F.3d 201, 212 (3d Cir. 2001) (citation omitted).

066585.1001

matter.  The relevant issues of fact and law - set forth below - were actually litigated through the summary judgment process in the Texas District Court.  See Kliesh v. Select Portfolio Servicing, Inc., 419 Fed. Appx. 268, 271 (3d Cir. 2011) (Third Circuit determined that borrower's subsequent federal action was barred by principles of issue preclusion where state court granted summary judgment for defendant servicer for related state law actions).  Mr. Kareem had a full opportunity to provide sufficient evidence to withstand a motion for summary judgment regarding claims essentially identical to those now being asserted against AHM Holdings.  As a result, Mr. Kareem should be precluded from attempting to relitigate these same issues, but against a different party.  Accordingly, the Plan Trustee respectfully requests that this Court adjourn determination of the Kareem Motions and Claims until the Texas Appeal is completed.

## C.   Independent of Previous Rulings, Mr. Kareem's Causes of Action Fail

1.   *Mr. Kareem Does Not Assert a Valid Claim Regarding the Origination of The Kareem Loan:  The Kareem Loan Is Not a "High-Cost" Loan, and Mr. Kareem Received All Required Disclosures Regarding the Terms of His Loan*

52.   As a threshold matter, Mr. Kareem seeks rescission of the Kareem Loan, which cannot be provided in this venue.  Put simply, neither the Debtors' estates nor the Plan Trust own the Kareem Loan, and thus rescission is an improper remedy against them.

53.   Mr. Kareem is also time-barred from asserting his claims.  Mr. Kareem's ability to rescind the contract under RESPA expired three business days after his closing.  His time to assert actual damages under the Truth in Lending Act expired one year after his closing (i.e., July 7, 2007), approximately one month prior to the filing of these Bankruptcy Cases.  See 15 U.S.C. § 1640(e) (a civil action to recover actual damages for violations of the Truth in Lending Act must be brought within one year from the date of the occurrence of the violation); see also Bagwell v. Countrywide Home Loan Serv., Case No. 3:09-cv-1358, 2011 U.S. Dist.

LEXIS 36613 (N.D. Tex. Mar. 24, 2011) (dismissing borrower's TILA claims based on the one-year statute of limitations).

54.     Moreover, Mr. Kareem was provided all applicable disclosures, including, but not limited to, the Final TIL, Right to Rescind Notice, Fixed Payment ARM Disclosure, and Payment Option ARM Disclosure.  As a result of these disclosures and the express and conspicuous terms of the governing documents, including the Note and Rider, Mr. Kareem was fully apprised of the transaction he was entering.  See, e.g., Lustig v. Bear Stearns Residential Mortgage Corp., 411 Fed. Appx. 224, 225-26 (11th Cir. 2011) (determining that borrower claims for unfair or deceptive practices failed where documents signed in conjunction with the execution of the note expressly stated that a minimum monthly payment would result in negative amortization).

55.     The Kareem Loan is not a "high-cost home loan" under the terms of the Georgia Fair Lending Act. O.C.G.A. § 7-6A-1 et seq.  To meet the threshold for a "high-cost home loan," (i) the annual percentage rate of the loan must be such that it equals or exceeds that set out in section 152 of the Home Ownership and Equity Protection Act of 1994 [15 U.S.C. § 1602(bb)][12] and the regulations adopted pursuant thereto by the Federal Reserve Board, including 12 C.F.R. 226.32, or (ii) the total points and fees payable in connection with the loan, excluding not more than two bona fide discount points, exceed 5 percent of the total loan amount (if the total loan amount is $20,000 or more).  O.C.G.A. § 7-6A-2(17).  Neither prong of the "threshold" test is met here.

56.     First, to meet the criteria under the applicable federal law (i.e., the first prong of the test), the annual percentage rate at consummation must, "exceed by more than 8 percentage points for first-lien loans, or by more than 10 percentage points for subordinate-lien

---

[12]     The language of the Georgia Act references 15 U.S.C. § 1602(aa); however, subsequent amendments to the federal act changed the relevant provision to paragraph (bb).

loans, the yield on Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor." 15 U.S.C. § 1602(bb)(i). Here, the applicable yield on Treasury securities as of May 15, 2006 was 0.0541, and the annual percentage rate at consummation, as evidenced by the Final TIL, was 7.014%. Moreover, the Note provides that Mr. Kareem's variable interest rate is only 2.4% above the twelve-month average of the annual yields on actively traded Treasury securities, making it improbable – if not impossible, for the terms of the Kareem Loan to exceed the threshold for a high cost loan.

57.     Second, for the Kareem Loan to be a high-cost home loan under the second prong of the Georgia act, the total points and fees payable in connection with the Kareem Loan could not exceed $7,960 (*i.e.*, 5% of $159,200). Here, Mr. Kareem's *entire* closing costs, *plus* prepaid interest and broker's yield spread premium equaled only $4,870.30. See HUD-1 Statement.

58.     Because the federal laws allow for a higher percentage of total points and fees payable (8%) before the application of additional disclosures and regulations, the Kareem Loan is not a covered loan under 15 U.S.C. § 1602(bb) and/or 12 C.F.R. 226.32.

### 2. The Debtors Followed All Applicable Notice Requirements Regarding the Bankruptcy Cases and Subsequent Sale of Servicing Business

59.     First, Mr. Kareem asserts damages for failure to notify him of the Debtors' bankruptcy filing. To that end, Mr. Kareem cites language of certain documents, including his Note, regarding notices. However, these cited provisions do not provide any requirement to provide Mr. Kareem with notice of the Bankruptcy Cases, but rather for (i) changes in amount of Mr. Kareem's monthly payment, and (ii) notice and opportunity to cure prior to commencing litigation against Mr. Kareem. While Mr. Kareem also appears to cite RESPA generally, there is simply no provision of RESPA that requires notice to borrowers in the event of a bankruptcy of a

lender, current owner/investor (which the Debtor was not) or current servicer. To the extent that Mr. Kareem should have received notice of the bankruptcy (or related bar dates) – which the Plan Trustee contests, he has filed his claims and the Plan Trust has not objected on the basis of lateness. Accordingly, Mr. Kareem has not been damaged by any alleged notice defect.

60.    Second, Mr. Kareem asserts that he should have been provided notice of the Debtors' Servicing Sale under RESPA. See 12 U.S.C. § 2605(b) and (c) (requiring notice to borrowers "of any assignment, sale, or transfer of the servicing" of a loan). While RESPA generally requires transferee and transferor servicers to provide "hello" and "goodbye" letters, respectively, the related statute and regulation provide that a transfer resulting from an acquisition of a servicer is not considered "an assignment, sale, or transfer of mortgage loan services for purposes of the [notice of transfer] requirement," and are thus exempt from this requirement. 12 U.S.C. § 3500.21(d); 24 C.F.R. 3500.21(d). For the exception to apply, the following items must not change: (i) payee, (ii) address to which payment must be delivered, (iii) account number, or (iv) amount of payment due. All four items remained the same in connection with the Kareem Loan as of April 11, 2008, the date of the final closing of the Debtors' Servicing Sale.[13]

### 3.   The Debtors Followed the Applicable Laws and Orders Regarding Mr. Kareem's October 2008 Letter

61.    Primary to Mr. Kareem's assertions is the Debtors' alleged failure to directly respond to the October 2008 Letter. At the time of the letter, the Debtors no longer owned or serviced the Kareem Loan so they were not the appropriate party to direct a rescission demand or qualified written request. Nonetheless, the October 2008 Letter was forwarded to

---

[13]    Several months following the final closing of the Servicing Sale, AHMSI changed servicing platforms, which resulted in the change of borrower account numbers. As determined by the Texas District Court, the account number change did not result in a material change in the Kareem Loan, and Mr. Kareem was not harmed by such change. Regardless, damages are calculated as actual damages – which Mr. Kareem asserts none – and additional damages not to exceed $1,000. 12 U.S.C. § 3500.21(f); 24 CFR § 3500.21(f).

AHMSI, the current servicer of the loan, for further action.    AHMSI acknowledges that they received the October 2008 Letter, and subsequently refused the rescission demand.  See Def.'s Br. Summ. J., p. 4 [Texas Action D.I. 84] and Affidavit of Jose Colon, attached hereto as Exhibit I.   In his pleadings, Mr. Kareem admits that he received responses regarding rescission letters and other purported "qualified written requests" from AHMSI, and the October 2008 Letter was presented as evidence within the Texas Action.[14]  Thus, not only are the Debtors' actions consistent with the terms of the Plan and Confirmation Order, which provide that the Plan Trustee forward loan modification request to the party having the power or legal right to modify the loan (if known) and/or the servicer of such loan, but their actions led to the exact intended result of the Plan and Confirmation Order's language (i.e., a response from the appropriate party).  Plan, § 17.G; Confirmation Order ¶ 53.

          62.      Moreover, even if the Debtors had an obligation to respond – which they did not,[15] Mr. Kareem's request for rescission was untimely and failed to provide or offer actual tender, and is thus insufficient to meet the requirements for rescission.   Put simply, the October 2008 Letter requesting rescission pursuant to the Truth in Lending Act (15 U.S.C. § 1635) was

---

[14]      Importantly, the Texas District Court has already found that, in connection with Mr. Kareem's rescission requests and alleged failure to respond to inquiries, (i) Mr. Kareem is time-barred under applicable federal law, (ii) Mr. Kareem failed to meet the criteria of rescission under applicable state law because he continued to enjoy the benefits of the contract, and (iii) the only correspondence that met the criteria for a "qualified written response" was a letter dated September 2009, which received an appropriate response from AHMSI.

[15]      Mr. Kareem alleges that pursuant to Georgia Law, the Debtors had a good faith duty to respond to a letter sent in the ordinary course of business.  See Kareem Motion at 5; see also Ga. Code Ann. § 24-4-23 (2011).  Mr. Kareem further alleges that the Debtors lack of response serves as an acquiescence or admission on the part of the Debtors to the allegations contained in the October 2008 Letter.  Id.  Georgia law provides that "[i]n the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from another to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent and to adopt them."  Ga. Code Ann. § 24-4-23 (2011).  However, this statute is only applicable in cases where there is mutual correspondence by two parties. See Smith v. Freeport Kaolin Co., 687 F. Supp. 1550, 1558 (M.D. Ga. 1988) (internal citations omitted).  Mr. Kareem has not established, or even alleged, there was any communication regarding rescission of the Kareem Loan between himself and the Debtors other than the October 2008 Letter.  He cannot use his unilateral action to establish a mutual correspondence, thereby, claiming acquiescence on the part of the Debtors. See id.  The Debtors were under no obligation to respond as they were unable to take any action on the October 2008 Letter.  The Debtors acted in the only way possible for their current legal status to the Kareem Loan, which was to forward the October 2008 Letter to the proper party, AHMSI.  Moreover, the proper party, AHMSI, did respond to Mr. Kareem's October 2008 Letter.

over two years too late.  Under the Truth in Lending Act, the borrower has the right to rescind

the relevant transaction "until midnight of the third business day following the consummation of

the transaction or the delivery of the information and rescission forms required under this section

together with a statement containing the material disclosures required under this title [15 USCS

§§ 1601 *et seq.*], whichever is later, by notifying the creditor, in accordance with regulations of

the Bureau, of his intention to do so." 15 U.S.C. § 1635(a).  Here, Mr. Kareem received the

required notice of his right to cancel at his closing on July 7, 2006; accordingly, Mr. Kareem's

October 2008 Letter demanding rescission was time-barred.[16]  See, e.g., Mills v. Equicredit

Corp., No. 05-1088, 2006 U.S. App. LEXIS 5023, at *15-16 (6th Cir. Feb. 24, 2006) (Sixth

Circuit held that the borrowers had failed to state a claim for rescission upon which relief could

be granted because they had signed the 'Notice of Right to Cancel' which notified them of the

three day deadline in which to cancel their loan).

      63.     Additionally, Mr. Kareem failed to tender any amounts for the rescission.

Mr. Kareem obtained a cash-out refinance, and has not provided any evidence that he sought to

tender the home, proceeds equaling the loan or even the amount of cash received at closing.  In

fact, in his pleadings, Mr. Kareem erroneously contends that such a tender is unnecessary.[17]  See

Carpenter v. Curtis, 398 S.E.2d 653, 655 (Ga. Ct. App. 1990) ("Critical to rescission is the tender

of benefits, the prompt restoration or offer to restore whatever the complaining party received by

virtue of the contract.").

---

[16]     Even if Mr. Kareem was not provided the Right to Rescind Notice, TILA provides a three year statute of repose for rescission claims, which cannot be tolled.  Because Mr. Kareem failed to file a complaint within the three year time period, Mr. Kareem is barred from relief under TILA.  15 U.S.C. § 1635(f) and 1640(e); Sam v. Am. Home Mortgage Servicing, Inc., Case No. S-09-2177, 2010 U.S. Dist. LEXIS 24881, at *6 (E.D. Cal. Mar. 3, 2010) (denying TILA claim as time-barred because "sending a 'notice of rescission' within the three year period is irrelevant to whether plaintiffs timely filed a claim seeking rescission.'")

[17]     Because Mr. Kareem failed to meet the deadlines for rescission set forth by section 15 U.S.C. § 1635(a), Mr. Kareem's analysis of Section 1635(b) is inapplicable.

64.     To the extent that Mr. Kareem argues that the Debtors should have responded to the October 2008 Letter as a "qualified written request" under RESPA in addition to his argument under TILA, this argument is also without merit.  The plain language of the October 2008 Letter, which Mr. Kareem admits is a rescission demand, fails to meet the requirements of a qualified written request.  Keen v. Am. Home Mortgage Servicing, Inc., 664 F. Supp. 2d 1086, 1097 (E.D. Cal. 2009) (rescission demand pursuant to TILA does not qualify as a "qualified written request" under RESPA); 12 U.S.C. § 2605(e)(1)(B) (for a letter to meet the standards of a qualified written request, it must (i) relate to the servicing of the loan, and (ii) include a statement of the reasons that the borrower believes the account is in error).See also Stein v. Chase Home Fin., LLC, Case No. 09-1995, 1020 U.S. Dist. LEXIS 121131, at *22 (D. Minn. Aug. 13, 2010) (borrower's claim for RESPA violation failed because the letters "[did] not identify purported errors in his account or ask questions related to the servicing of his loan.").

**D.      To The Extent that Mr. Kareem Is Entitled to a Claim Against the Debtors, the Claims Should Be Reclassified as a General Unsecured Claim Against AHM Corp.**

65.     Section 503 of the Bankruptcy Code accords administrative expense priority to claims representing "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).  To be considered an actual, necessary cost and expense of preserving the estate, a claim "must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the operation of the business."  Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (internal citation omitted).

66.     In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed.  In re Bernard Techs., Inc., 342 B.R. 174, 177 (Bankr. D. Del. 2006) (Walrath, J.).  Accordingly, the movant under section 503(b)(1)(A) carries a "heavy burden of demonstrating that the costs and fees for which

23

it seeks payment provided an actual benefit to the estate and that such costs and expenses were necessary to preserve the value of the estate assets." Id. (quoting Calpine, 181 F.3d at 533); see also In re Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001) ("Claimants who seek payment ahead of other unsecured claims bear the burden of establishing that their claim qualifies for priority status."). Movant must prove its entitlement to an administrative expense claim against the Debtors by a preponderance of the evidence. Bernard Techs., 342 B.R. at 177.

67.    Here, Mr. Kareem makes several arguments in the Kareem Motion as to why he is entitled to allowance of an administrative expense claim. As detailed above, each of Mr. Kareem's arguments fail both factually and legally to entitle him to any claim. Mr. Kareem has not suggested, let alone supported, any argument that his administrative claim represents an actual, necessary cost or expense of preserving the Debtors' bankruptcy estates. Indeed, the actions for which Mr. Kareem seeks redress straddle the Debtors' post-petition involvement in Mr. Kareem's Loan. On one side, the crux of Mr. Kareem's complaint is TILA violations in connection with the origination of his loan, which occurred over a year prior to the Debtors' bankruptcy filing. Moreover, the Debtors sold the Kareem Loan on July 28, 2006 and, thus, did not own the Kareem Loan as of the Petition Date. On the other side, following April 11, 2008, the Debtors neither owned nor serviced the Kareem Loan. Accordingly, Mr. Kareem's assertions regarding the failure to comply with his rescission demands begin in October 2008, which is after the final closing of the Debtors' Servicing Sale and are the actions of AHMSI, a non-debtor third party. Accordingly, because there is no post-petition transaction with the Debtors or benefit to their estates, there is no claim that qualifies for administrative expense status.

68.    Additionally, Mr. Kareem alleges that a portion of amounts owing is secured by real estate, however, Mr. Kareem does not have a security interest in any property of the Debtors' estates. To the extent that Mr. Kareem asserts an interest in the Kareem Property or

related mortgage, the Debtors do not own the Kareem Loan, mortgage or property.  Accordingly, the Kareem Claims are not entitled to secured status.

69.    Finally, any claims allowed by this Court should be reassigned from AHM Holdings to AHM Corp.  Put simply, AHM Corp. was the lending party under the Kareem Loan (doing business as American Brokers Conduit).  AHM Holdings was merely a holding company and had no involvement in the origination (or servicing) of the Kareem Loan.

**<u>Remainder of Page Left Blank By Intention</u>**

## RESERVATION OF RIGHTS

70.    The Plan Trustee has diligently attempted to discern and respond to each

allegation set forth by Mr. Kareem in his pleadings against the Debtors' estates, as well as based

on counsel's discussions with Mr. Kareem.  However, to the extent that Mr. Kareem, asserts

additional facts, causes of action and/or theories that were not readily identifiable, the Plan Trust

reserves his right to supplement or amend this Objection.

## CONCLUSION

For the foregoing reasons, the Plan Trustee requests that this Court deny the

Kareem Motion in their entirety and disallow each of the Kareem Claims.

Dated: September 30, 2011
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Morgan Seward (No. 5388)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*

YCST01: 10767494.5                                              066585.1001