## Exhibit N

**Magistrate Judge Findings and Recommendations to Texas District Court**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HUSSAIN KAREEM | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | NO. 3-10-CV-0762-B-BD |
| VS. | § | |
| | § | |
| AMERICAN HOME MORTGAGE | § | |
| SERVICING, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

## FINDINGS AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Defendants American Home Mortgage Servicing, Inc. ("AHMS"), Mortgage Electronic Registration Systems, Inc. ("MERS"), R.K. Arnold ("Arnold"), and David Friedman ("Friedman") have filed a motion for summary judgment in this *pro se* civil action brought by Hussain Kareem arising out of foreclosure proceedings initiated against his property in Lawrenceville, Georgia. As best the court can decipher his pleadings,[1] plaintiff generally complains that defendants did not recognize his unilateral rescission of the loan agreement, did not have authority to foreclose on his property, unlawfully altered the loan by assigning it a new number, incorrectly reported credit information, and engaged in similar acts of wrongdoing in other foreclosure actions. Among the federal claims asserted by plaintiff are violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and unspecified federal civil rights violations. Plaintiff also asserts a number of claims under Georgia law, including

---

[1] Plaintiff's operative pleading is a Corrected Amended Verified Complaint consisting of 77 enumerated paragraphs with multiple attachments. (*See* Doc. #36).

fraud, breach of contract, wrongful foreclosure, rescission, credit libel, and violations of the Geogia statute related to the alteration of loan documents. Defendants now move for summary judgment as to all claims and causes of action. Plaintiff has filed a response to the motion, and this matter is ripe for determination.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id., quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.), *cert. denied*, 113 S.Ct. 98 (1992). Once the movant meets this burden, the nonmovant who has the burden of proof at trial must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir), *cert. denied*, 113 S.Ct. 82 (1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

Plaintiff's claims under the TILA, whether for rescission or actual damages, are barred by limitations. With limited exceptions not applicable here, the right to rescind a residential mortgage transaction expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. § 1635(f); *see also Dabney v. Chase Manhattan Mortg.*, No. 3-10-CV-0259-N, 2010 WL 4502155 at *2 (N.D. Tex. Oct. 4, 2010), *rec. adopted*, 2010 WL 4502116 (N.D. Tex. Oct. 29, 2010). A civil action to recover actual damages for violations of the TILA must be brought "within one year from the date of the occurrence of the violation[.]" *Id.*

§ 1640(e); *see also Bagwell v. Countrywide Home Loans Serv., LP*, No. 3-09-CV-1358-P, 2011 WL 1120261 at *3 (N.D. Tex. Mar. 24, 2011). Plaintiff filed this action in federal court on November 18, 2009 -- more than three years after the July 7, 2006 loan transaction made the basis of his TILA claim. As a result, that claim is time-barred.

Nor can plaintiff maintain a cause of action under the FDCPA. That statute applies only to a "debt collector," which is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A mortgage servicing company is not considered a "debt collector" as long as the debt was not in default at the time it was assigned. *See Bagwell*, 2011 WL 1120261 at *3, *citing Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985). Plaintiff offers no evidence that defendants, all of whom were involved in servicing his mortgage, are "debt collectors" under the FDCPA.

Plaintiff also alleges that defendants violated RESPA by refusing to respond to correspondence related to the assignment of a new number to his account. RESPA provides, in pertinent part:

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). Not later than 60 days after receipt of a "qualified written request" from the borrower, the servicer must, *inter alia*, conduct an investigation and provide the borrower with: (1) a written explanation of why the servicer believes the account information is correct; and (2) the

name and telephone number of someone employed by the servicer who can provide assistance to the borrower. *Id.* § 2605(e)(2)(B). The summary judgment evidence shows that on September 18, 2009, AHMS acknowledged receipt of plaintiff's September 7, 2009 correspondence inquiring about his account. (*See* Def. MSJ App. at 178). Less than two months later, on November 11, 2009, the firm of Moss Codilis, LLP, on behalf of AHMS, provided plaintiff with a written explanation of the results of its investigation and the reasons why AHMS believed the account information was correct. (*Id.* at 49). Plaintiff was told he could contact the Moss Codilis firm at its toll-free number if he had any questions. (*Id.*). Other than his September 7, 2009 letter, which was timely and properly acknowledged by AHMS, plaintiff points to no other "qualified written request" for information about his loan account.[2] The court therefore concludes that defendants have complied with their obligations under RESPA.

Although plaintiff asserts a claim for civil rights violations under 42 U.S.C. §§ 1983 & 1985, he adduces no evidence that any defendant acted under "color of state law" or that their conduct was "fairly attributable to the State." *Bass v. Parkwood Hospital*, 180 F.3d 234, 241 (5th Cir. 1999). Nor has plaintiff sufficiently alleged, much less proved, the existence of a civil rights conspiracy, any overt act committed by defendants in furtherance of such a conspiracy, or that the conspiracy was motivated by class-based animus. *See Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994)

---

[2]  A "qualified written request" is defined by RESPA as written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--

> (i)      includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

> (ii)     includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Plaintiff's letter to AHMS dated March 31, 2009, does not satisfy the requirements of this statute because it does not include a statement of reasons why plaintiff believes his account is in error or request other information pertaining to his account. (*See* Plf. Am. Compl., Exh. B).

(discussing elements of civil rights conspiracy under section 1985). Defendants are entitled to summary judgment as to this claim.

Most of plaintiff's claims under Georgia law are based on the belief that he was entitled to unilaterally rescind the loan and avoid the debt owed to defendants. However, Georgia law precludes rescission as a remedy where the plaintiff is still enjoying the benefits of the contract. *See* GA. CODE ANN. § 13-4-60; *Carpenter v. Curtis*, 395 S.E.2d 653, 655 (Ga. Ct. App. 1990) ("Critical to rescission is the tender of benefits, the prompt restoration or offer to restore whatever the complaining party received by virtue of the contract."). Here, plaintiff still lives in the house purchased with the proceeds of the mortgage loan he wants to rescind. There is no evidence that plaintiff has returned, or offered to return, the benefit he received from the contract. Because plaintiff has no right to rescission, he is not entitled to relief under the Georgia Code.

Similarly, plaintiff cannot sue for wrongful foreclosure or credit libel. His wrongful foreclosure claim fails because no foreclosure sale has occurred. *See Roper v. Parcel of Land*, No. 1-09-CV-0312-RWS, 2010 WL 1691836 at *2 (N.D. Ga. Apr. 23, 2010) (no claim for wrongful foreclosure under Georgia law where defendants did not proceed with foreclosure sale). Plaintiff has no cause of action for credit libel because there is no evidence he was denied a loan or charged a higher rate of interest as a result of derogatory information reported by defendants to a credit agency. *See Burch v. Chase Manhattan Mortg. Corp.*, No. 1-07-CV-0121-JOF, 2008 WL 4265180 at *15 (N.D. Ga. Sept. 15, 2008).

Plaintiff's remaining claims for breach of contract, breach of private duty, and fraud also fail as a matter of law. All these claims appear to be based on the assignment of a new number to his account. However, there is no evidence that the new number, which is different than the number reflected in the original loan documents, constitutes a material misrepresentation by defendants or

that plaintiff was damaged thereby. *See Golden Atlanta Site Dev., Inc. v. Nahai*, 683 S.E.2d 166, 171 (Ga. Ct. App. 2009) (discussing elements of fraud under Georgia law). Nor does plaintiff identify any "private duty" allegedly owed by defendants, or explain how that duty was breached. *See Burch*, 2008 WL 4265180 at *14, *citing Pardue v. Bankers First Federal Savings & Loan Ass'n*, 175 Ga.App. 814, 334 S.E.2d 926 (1985) (noting that Georgia law does not recognize a fiduciary relationship between a bank and its customers, a lender and borrower, or a mortgagee and mortgagor). Plaintiff also fails to adduce any evidence that defendants breached the loan agreement. If anyone breached the agreement it was plaintiff, who all but admits that he has failed to perform or tender performance under the note.[3]

## RECOMMENDATION

Defendants' motion for summary judgment [Doc. #83] should be granted. All claims against defendants should be dismissed with prejudice.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

---

[3] To the extent plaintiff alleges wrongdoing by defendants in other foreclosure actions, he lacks standing to assert such a claim.

district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,*

79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:  April 12, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

**Exhibit O**

**Order and Judgment From Texas District Court**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| HUSSAIN KAREEM | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | NO. 3-10-CV-0762-B |
| VS. | § | |
| | § | |
| AMERICAN HOME MORTGAGE | § | |
| SERVICING, INC., ET AL. | § | |
| | § | |
| Defendants. | § | |

## ORDER

The United States Magistrate Judge made findings, conclusions and a recommendation in this case. Plaintiff filed objections, and the District Court has made a *de novo* review of those portions of the proposed findings and recommendation to which objection was made. The objections are overruled, and the Court ACCEPTS the Findings, Conclusions and Recommendation of the United States Magistrate Judge.

**SO ORDERED.**

**SIGNED this 13th day of May, 2011.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| HUSSAIN KAREEM | § § § | |
| Plaintiff, | § § | NO. 3-10-CV-0762-B |
| VS. | § § | |
| AMERICAN HOME MORTGAGE SERVICING, INC., ET AL. | § § § | |
| Defendants. | § | |

## JUDGMENT

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered,

It is ORDERED, ADJUDGED and DECREED that:

1.    Defendant's motion for summary judgment [Doc. #83] is granted.  All claims against defendants are dismissed with prejudice.

2.    The Clerk shall transmit a true copy of this Judgment and the Order adopting the Findings and Recommendation of the United States Magistrate Judge to Plaintiff.

SO ORDERED.

SIGNED this 13th day of May, 2011

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

**Exhibit P**

**Kareem Claims**

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | District of Delaware | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: | Case Number: |
|---|---|
| American Home Mortgage Holdings, Inc. | 07-11407 (CSS) |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Hussain Kareem

Name and address where notices should be sent:
2197 Carlysle Creek Dr.
Lawrenceville, GA 30044

Telephone number:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:  Initial entry
*(If known)*

Filed on:  01/05/2011

Name and address where payment should be sent (if different from above):
same as above

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed:    $        250,000.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim:    TILA RESCISSION
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor:

   3a. Debtor may have scheduled account as: 0001350490
       (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:   ☑ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:   Discharged by Accomodation under UCC 3-415 7 TILA Rescission Demand

Value of Property: $  200,000.00    Annual Interest Rate  5.000  %

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $    0.00    Basis for perfection: _____

Amount of Secured Claim: $  200,000.00    Amount Unsecured: $    50,000.00

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)          0000010870

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

Amount entitled to priority:

$

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

| Date:       01/05/2011 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | FOR COURT USE ONLY RECEIVED<br><br>JAN 1 1 2011<br><br>EPIQ BANKRUPTCY SOLUTIONS, LLC |
|---|---|---|
| Hussain Kareem, Mortgagor | | |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



received
1/11/1

## TABLE OF CONTENTS

I.      Proof Of Claim Form

II.     MOTION FOR ENTRY OF ADMINISTRATIVE CLAIM WITH BRIEF IN
        SUPPORT

III.    Verification

IV.     Certificate of Service

V.      Exhibit "A": Adjustable Rate Note pages 1 thru 6

VI.     Exhibits  H.U.D. Settlement Statement 2400 B & 2400 B2

VII.    Exhibit 'C' Rescission Demand Notice

VIII.   Exhibit '4400' Bank of America's Payment Statement with Cover page



**ADJUSTABLE RATE NOTE**

**FIRST YEAR FIXED PAYMENT – 12MTA**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN ___110.000%___ OF THE ORIGINAL AMOUNT (OR $ _175,120.00_ ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

| July 7, 2006 | ATLANTA | Georgia |
|---|---|---|
|  | (City) | (State) |

2197 Carlysle Creek Drive, Lawrenceville, GA 30044
(Property Address)

**1. BORROWER'S PROMISE TO PAY**

   In return for a loan that I have received, I promise to pay U.S. $ _159,200.00_ plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ___American Brokers Conduit___ . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2. INTEREST**

   Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of _1.900%_ until ___July 31, 2006___, and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing _August 1, 2006_ , I will pay interest at a yearly rate of ___6.832%___ (the "Subsequent Rate"). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

   **(A) Time and Place of Payments**

   I will pay Principal and interest by making payments every month. In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

   I will make my monthly payments on ___1st___ day of each month beginning on ___September , 2006___. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on ___August 1, 2036___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

   I will make my monthly payments at PO Box 660029, Dallas, TX 75266-0029 ___, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S.$ 580.51 , unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the  1st  day of  September , 2006 , and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  Two and 400 Thousandths  percentage points  2.400  % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than  Nine and 950 Thousandths  percentage points  9.950  % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective commencing  September 1, 2011 , (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date. My payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of this Note.

*H. K.*

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date following the First Payment Change Date under Section 4(E), will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to _____110.000%_____ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that _____110.000%_____ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

*H.K.*

My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Miscellaneous Fees: I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

*H.X.*

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay

*H₀K*

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note-Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)            _____ (Seal)
Hussain Kareem                    -Borrower                                           -Borrower

_____ (Seal)            _____ (Seal)
                                  -Borrower                                           -Borrower

_____ (Seal)            _____ (Seal)
                                  -Borrower                                           -Borrower

_____ (Seal)            _____ (Seal)
                                  -Borrower                                           -Borrower

DOC #:944873                      APPL #:0001350490

                                  Page 6 of 6                          AHM-2032N(MULT) (0106)

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY AMERICAN BROKERS CONDUIT

LISA PLUCO
ASST. SECRETARY

**FILED UNDER SEAL**

HUD 1



RECEIVED
OCT 30 2008
RESEARCH DEPT

THIS IS NOT A PUBLIC
COMMUNICATION
Notice to Agent is Notice to Principle
Notice to Principle is Notice to Agent
Applicable to all successors and assigns
Silence is Acquiescence/Agreement/Dishonor
This is self-executing contract.

DATE: Oct. 18, 2008

Hussain L Kareem, without prejudice
2197 Carlysle Creek Dr
Lawrenceville, GA 30044

Sent Certified Mail # 7008 1800 0001 2343 0907
Re:  Rescision Demand Notice

With proof of service to:
Michael Strauss, CEO individually and
American Home Mortgage, Inc., AHMSI, and  ET AL
538 Broadhollow Rd.
Melville, NY 11747

OCT 21 2008

0031256902

RE: Alleged Loan # 1001350490  Property Address: 1927 Carlysle Creek Drive , GA 30044

Dear Sir:
In response to my most recent letters from you dated 07/08/2008 regarding my property, I am rescinding
your alleged Loan Number 1001350490, as related to the above subject property. You, your bank and your
Servicing Company, AHMSI, have received my Affidavit of Non- Response for Debt Validation and my
Affidavit Of Security Deed Illegality respectively (see Exhibits), pursuant to , but not limited, to my rights
under the Fair Debt Collection Practices Act (FDCPA), and the Uniform Commercial Code (UCC), State
Commercial Code, Contract Law, Fair Credit Billing Act (FCBA) and the State of Georgia Statues
O.C.G.A. § 44-14-236 and O.C.G.A. § 9-13-27, respectively. You and your interested parties are
in default and dishonor. You will have to cease and desist from any collection activities. My
rights should not allow you as a debtor, under Federal Bankruptcy protection, Chapter 11, Case
No. 07-11047 (CSS) from adhering to the Federal Rescission Demand.

Furthermore, please be advised that I am exercising my rights under Regulation Z of the Truth In Lending
Act (TILA) to rescind my mortgage loan transaction (Reg. Z §§ 226.15(a)(2), 226.23(a)(2), Official Staff
Commentary §226.23(a)(2)-1) and 15 U.S.C. §1635(b).

FAILURE of the Lender to take necessary and appropriate action to reflect the fact that the
security interest was automatically terminated by the rescission within twenty (20) days of
creditor's receipt of the rescission notice, is a violation of 15 USC
1635(b);Reg.215(d)(2),226.23(d)(2), ( also see "Ameriquest Mortgage Company Mortgage
Lending Practices Litigation," M.D.L. No. 1715, Lead Case No. 05-cv07097 (N.D.Ill.)

Therefore, my demand is for you to uphold the all the laws and statues cited and to comply with this
rescission demand notice, immediately. Please forward to me a complete accounting of all payments
that I have made toward the promissory note. Non compliance shall result in our pursuit of all civil
and criminal remedies against all parties, with prejudice.

Sincerely,

Hussain Kareem
All Rights Reserved.

Notary

JAMES T. OWENS
COMMISSION EXPIRES
JAN.
7
2012
GWINNETT CO. GEORGIA
NOTARY PUBLIC

APP 0174

 

**TO:** H KAREEM
Company:
        Fax: **678.987.0576**
Phone:

## FROM:
    Fax:
    Phone:

## NOTES:

Per request by H Kareem this is the payment history for American
Home Mortgage made through the Bank of America Bill Pay system

Date and time of transmission: Tuesday, November 16, 2010 3:32:38 PM
Number of pages including this cover sheet: 02

Document 100     Page 19 of 20    PageID 1021



**Bank of America**

Bank of America
Interactive Banking
P.O. Box 655961
Dallas, TX 75265-9961

November 16, 2010

| Payment Date | Payee Name | Account#(Masked) | Payment Amount | DDA#(Masked) |
|---|---|---|---|---|
| 4/16/2008 | AMERICAN HOME MO | | $609.54 | .1140 |
| 5/22/2008 | AMERICAN HOME MO | | $609.54 | .1140 |
| 6/24/2008 | AMERICAN HOME MO | | $610.00 | .1132 |
| 7/18/2008 | AMERICAN HOME MO | | $610.00 | .1132 |
| 8/18/2008 | AMERICAN HOME MO | | $610.00 | .1132 |
| 9/10/2008 | AMERICAN HOME MO | | $610.00 | .1132 |
| 10/21/2008 | AMERICAN HOME MO | | $610.00 | .1132 |
| 11/19/2008 | AMERICAN HOME MO | | $610.00 | .1132 |
| 12/23/2008 | AMERICAN HOME MO | | $610.00 | .1140 |
| 1/21/2009 | AMERICAN HOME MO | | $610.00 | .1132 |
| 2/20/2009 | AMERICAN HOME MO | | $610.00 | .1132 |
| 4/1/2009 | AMERICAN HOME MO | | $610.00 | .1140 |
| 5/1/2009 | AMERICAN HOME MO | | $613.00 | .1140 |
| 5/28/2009 | AMERICAN HOME MO | | $615.00 | .1140 |
| 7/2/2009 | AMERICAN HOME MO | | $615.00 | .1132 |
| 8/11/2009 | AMERICAN HOME MO | | $610.00 | .1140 |

BANK OF AMERICA, N.A.
CRUSE ROAD INSTORE
BANKING CENTRE
950 HERRINGTON ROAD
LAWRENCEVILLE, GA 30044
GA7-775-01-01

IN THE UNITED STATES BANKRUPTCY COURT

FOR TE DISTRICT OF DELAWARE

IN RE:                                                    Chapter 11

AMERICAN HOME MORTGAGE                    Case No. 07-11047 (CSS)

HOLDINGS, INC.  et al

A Delaware corporation

Debtors

## MOTION FOR ENTRY OF ADMINISTRATIVE CLAIM WITH BRIEF IN SUPPORT

Comes Now Hussain Kareem, Mortgagor/Creditor/Claimant moves this honorable court to

address his administrative claim against the debtors the instant action for reasons enumerated

below:

1.

Claimant addresses this court to meet the bar date of January 5, 2011 to address any

supplemental or administrative claims by creditors being timely entered under the plan and

before relief is granted to all parties of interests.

2.

Claimant submits his proof of claim authorizing this court to review and determine entitlement

for Breach of Contract, receiving notice for Rescission/Cancellation of the Note and Mortgage,

and failure to give notice of insolvency under RESPA transfer of servicing rights.

3.

Claimant has suffered actual monetary and tort damages related to the insolvency and the lack of

notification that proceedings had been and is about to discharge all claims. Claimant cites the

facts surrounding his absence from the proceedings as follows:

4.

### Undisputed Facts For Admitting Administrative Claim

Claimant entered into a contractual obligation to refinance his home under loan number

001350490 on July 7, 2006 through the subsidiary American Home Mortgage Holdings

(hereinafter referred to as "AHMH") American Brokers Conduit ( hereinafter known as

'ABC'). The property is located at 2197 Carlysle Creek Drive, Lawrenceville GA 30044. (See

Exhibits Promissory Note 'A' and U.S. Department of HUD Settlement Statement 2400 B &

2400B2 ).

5.

The loan was serviced through AHMH's subsidiary American Home Mortgage Servicing, Inc., a

Maryland Corporation, and a participant in the above plan proceeding. Claimant never received

official notification from neither AHMH, ABC, nor AHMSVI that insolvency proceeding had

been sought under Chapter 11 in the Bankruptcy Court for the District of Delaware (**emphasis

added**). As such, Claimant had to discover that proceeding had been ongoing from second-hand

sources. Fortunately, Claimant is able to present his claim before the final bar date.

6.

### Claims for Discharge & Damages

On or about October 21, 2008, Claimant sent his Rescission Demand of the Note and Security
interests to Michael Straus, CEO of American Home Mortgage, Inc. hereinafter referred to as
AHM, another subsidiary of AHMH and is a participant under the above plan (see Exhibit C).

Claimant action preserved all of his rights and entitlements under TILA, 16 U.S.C. 1601 et Seq. The Rescission Demand Notification was delivered by U.S. Certified Mail No. 70081300000127430907.

Under 15 USC 1635 (b), AHM had twenty calendar days to unwound the asset and restore borrower/ claimant back to *status quo ante. See Trimmel*, 555 F. Supp. at 268 n. 3 (goal of 15 U.S.C. § 1635 is restoration of "*status quo ante*"). When a mortgagee properly rescinds a mortgage under TILA, the rescission defeases the mortgagee of its interest in the mortgaged property.

AHM failed to acknowledge or unwind, as required under the law, the Note and its Security interests. By AHM's inactions, Claimant has established prima facie evidence for actual damage and right of discharge. AHM was still functioning as a business entity albeit under Chapter 11 when in 2008, the CEO Michael Straus received the Mortgagor/Claimant's Rescission Demand Notice (see Exhibit C). AHM had every obligation to disclose to this honorable court, to its trustees and administrators that rescission of the Note had been made by the Claimant and as an operation of law, should have been a executed for relief. The claimant and debtors were intertwined in a financial transaction which occurred prior to insolvency. Notably, the TILA remedy was made during the administrative phase of the Chapter 11 proceeding. Thus, Claimant asserts that he is entitled to have the Note discharged through this administrative proceeding.

7.

### Legal Discussion: Supporting Citation of Authorities

TILA rescission voids the original conveyance of legal title to the mortgagee. The TILA rescission process restores the parties to their relationship prior to becoming mortgagor and mortgagee. Because TILA rescission restores legal title to the consumer, it is effectively an alternate method of redemption in the instant matter context. The classic method of redemption is to extinguish the debt set by the judgment by paying it in full. Under TILA the owner of the equity of redemption extinguishes the debt by rescinding the underlying transaction. When the

transaction, including the promissory note memorializing the debt, is rescinded, it follows that the mortgage is no longer enforceable either. If the debt is void it follows that the mortgage is void. Therefore, if the mortgage is void, it follows that legal title is restored to the mortgagor.

Under 12 C.F.R. § 226.23(d), the process is as follows: .

226.23(d)(1): *"When a consumer rescinds a transaction, the*

*security interest . . . becomes void" 226.23(d)(2): "Within 20 calendar days . . . the creditor shall return any money . . . that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest."226.23(d)(3): "When the creditor has complied with [paragraph (d)(2)], the consumer shall tender the money or property to the creditor"* As the Appellate Court has held, under 15 U.S.C. § 1635(b), *"all that the [borrower] need do is notify the creditor of her intent to rescind. The agreement is then automatically rescinded* (emphasis added).

Courts have expressly recognized that statutory rescission under TILA works differently than common law rescission. In *Velazquez v. America's Servicing Company Credit, Inc., d/b/a Overland Mortgage*, the Northern District of Illinois recognized that *"TILA's scheme is contrary to the rule under common law rescission, where the rescinding party must tender first."* Velazquez v. America's Servicing Company Credit, Inc., d/b/a Overland Mortgage, 254 F. Supp. 2d 1043, 1045 (N.D. Ill. 2003). Under the TILA scheme for rescission, the mortgagor does not become obligated to return the proceeds of the loan until the mortgagee acts first as described in 12 C.F.R. § 226.23(d)(1) and (2). 12 C.F.R. § 226.23(d)(3) ("When the creditor has complied with [paragraph (d)(2)], the consumer shall tender the money or property to the creditor"). The 1st Circuit has similarly held that under the statutory rescission process created by TILA and Regulation Z, the lender must go first rather than the rescinding mortgagor.

*Also See, Large v. Conseco Finance Servicing Corp., 292 F.3d 49, 55-56 (1st Cir. 2002) ("in contrast to common law rescission, the borrower need not first return the loan proceeds received*

*under the agreement to effect a rescission.").* *"The purpose of the TILA's reordering of common law rescission rules is to put the consumer in a stronger bargaining position" because the lender has violated the law. Id. (Emphasis supplied).*

A consumer *"need not prove that they were mislead or suffered any actual damages from the purported TILA violations." In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.,* 2006 U.S. Dist. LEXIS 35316 at * 8 (N.D. Ill. 2006) (citing *Brown v. Marquette Sav. & Loan Assoc.,* 686 F.2d 608, 614 (7th Cir. 1982)). Also se, *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig., 2006 U.S. Dist. LEXIS at \*3-4 ("If a borrower rescinds a mortgage, he or he is no longer responsible for finance or other charges, and the lender loses its security interest.").*

### 8.

Further claims arose by AHM's acquiescence to the TILA Demand Notice. Claimant submits prima facie evidence from bank statements certified by Bank Of America , that least sixteen (16) payments were made to American Home Mortgage related to the original Promissory Note obligation beginning from April 2008 through September 2009 (see Exhibit 4400). Unbeknownst to the claimant, AHMH had started its proceeding under the plan, so the failure to disclose or respond materially damaged the Claimant.  Whereas, in "good faith" his monies were sent to servicing parties allegedly benefitting AHMH or the Trustee under this Plan.

### 9.

AHM had acquiesced and Borrower is entitled to preserve all rights under TILA due to default by the principal.  Under Georgia law on acquiescence under OCGA 24-4-23 expresses, as follows:

*"In the ordinary underline course of underline business, when underline good faith requires an answer, it is the duty of the underline party underline receiving a letter from underline another to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent and to adopt them."*

Relevant Georgia's case law on acquiescence expresses,

*"...a waiver of rights by failing to perform in a timely by acquiescence, makes it clear of intent."*
*"Under Georgia law, failure to respond to a business letter may raise a presumption that the*
*recipient admits "the propriety of the acts mentioned in the letter."See* STRONGHAVEN, INC.
v. INGRAM; Case no. A01A1613. (252 Ga. App. 124), (555 SE2d 49), (2001), Pearson v.
George, Georgia Supreme Court, Id."

As such in the instant matter, Claimant must recover from such damage and asserts that he is

entitled to recovery of all payments made associated with the transaction by virtue of his TILA

Rescission.

10.

Lastly, prima facie evidence shows that on page 6 of 6 of the Adjustable Rate Note (See Exhibit

A) that Lisa Furco, Assistant Secretary for ABC, indorsed the Note.  The indorsement is known

as an act to impair the collateral, which proves that ABC enjoyed full benefit and satisfaction by

accommodation from the borrower/claimant. Thus, the Note was discharged upon

accommodation  by ABC. We find under Georgia's Commercial Code (UCC) OCGA 11-3-407

Alteration  and OCGA 11-3-601 Discharge, respectively shows merit for discharge in the instant

matters as follows:

Under Georgia's Commercial Code,  OCGA 11-3-601 in relevant part expresses,

Discharge and effect of discharge.

> (a) *The* _obligation_ *of a* _party_ *to pay the* _instrument_ *is* _discharged_ *as stated in this* _article_ *or*
> *by an act or* _agreement_ *with the* _party_ *which would* _discharge_ *an* _obligation_ *to pay* _money_
> *under a simple* _contract. Citing Cases in support :_

Under Georgia's Commercial Code,  OCGA 11-3-407  expresses,

(a) _"Alteration"_ *means (i) an* _unauthorized_ *change in an* _instrument_ *that purports to modify in*
*any respect the* _obligation_ *of a* _party;_ *or (ii) an* _unauthorized_ *addition of words or numbers or*
*other change to an* _incomplete instrument_ *relating to the* _obligation_ *of a* _party._

*(b) Except as provided in subsection (c) of this Code section, an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.*

See *SPILLERS v. FIRST SOUTH BANK, N.A. (185 Ga. App. 580) (365 SE2d 151) (1988),*

*"if the co-maker shows at trial that he is discharged from liability because the bank completed the instrument of debt in an unauthorized manner (see OCGA 11-3-407 (1) (b) and 11-3-601 (1) (f)), then defendant, if he is shown to be an accommodation party, would be discharged also. See Griswold v. Whetsell, 157 Ga. App. 800 (3) (278 SE2d 753) (1981). The rationale for such a discharge of the accommodation party is that his right of recourse against the discharged co-maker would be impaired."*

By the preponderance of evidence, Claimant shows good cause that neither AHMH nor its subsidiaries disclosed to Claimant that the indorsement did convert the Promissory Note into a Bill of Exchange for the benefit of ABC coupled with the failure to Rescind under TILA has given the Claimant all rights for relief and recovery by discharging of the Note.

## 11.

## Relief Sought

Claimant seeks by moving this Competent Court and the Administrators for the following administrative rights under the current plan:

* Admit this claim for administrative claims against the debtors under the plan.

*Discharge the Promissory Note and Security Deed for Loan Number 001350490. This court should protect Claimant rights and has the jurisdictional authority under TILA or any other applicable laws to render the debt discharged.

* For Negligence Claim on part of AHMH and under TILA a return of all payments made pre and post proceedings. AHMH failure to disclose its insolvency materially harmed the claimant

to an amount estimated at $19,175.71 without interests. A more exact accounting shall be determined with forthcoming support by evidence from records.

*This court should apply judicial leniency for claimant against any defects, as this court standard should follow case laws citing *"Pro Se Litigants pleadings are not to held to the same high standards of perfection as lawyers." See Haines v. Kerner, 92 S. Ct. 594; Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Picking v. Penna. Rwy. Co. 151 F. 2d 240; Puckett v. Cox, 456 F. 2d 233.*

*If this court rules in whole or in part adversely to the claimant demands, then this court is requested to offer fact finding under FRCP Rule 52 to state with clear and concise reasons for rejection.

Claimant sayeth no more. With all due respects to this Court,

Submitted on or about January 5, 2011.

Hussain Kareem, Pro Se , A.R.R.

2197 Carlysle Creek Drive

Lawrenceville, GA 30044

Tel: 678-250-5753

U.S. Certified Mail No: 71969006982039039760

**Verification**

l, Hussain Kareem, Claimant/Mortgagor/TitleHolder in the foregoing matter, deposes that all

statements, exhibits, and claims are true and correct to the best of my personal knowledge and

beliefs. I affirm under the penalty of perjury under 28 USC 1746.

Executed this day 5th of January, 2011.

_____

Hussain Kareem, Affiant

2197 CARLYSLE CREEK DRIVE

LAWRENCEVILLE, GA 30044

Tel: 678-250-5753

## Certificate of Service

I, Hussain Kareem do ceritify that I have mailed by first class U.S. Mail the foregoing to the following at his/her address below:

Counsel For Debtors:

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Sean M. BEACH

Patrick A. Jackson

1000 West St., 17th Floor

P.O. Box 391

Wilmington, DE 19801

Tel: (302) 571-6600

Counsel for the Plan Trustee:

**HAHN & HAESSEN LLP**

Mark S. Indelicato

Edward L. Schnitzer

488 Madison Avenue

New York, N.Y. 10022

Tel: (212) 478-7200

**The Plan Trustee:**

Steven D. Stass          U.S. **Certified Mail No:** <u>71969006982061052287</u>

AHM Liquidating Trust

P.O. Box 10550

Melville, NY 11747

*H. Latash*
*1/5/2011*

Mathis K. Wright, President

NAACP CHAPTER #5160

P.O. BOX 1296

AMERICUS, GA 31709

B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | District of Delaware | PROOF OF CLAIM |
| --- | --- | --- |

| Name of Debtor:<br>American Home Mortgage Holdings, Inc. | Case Number:<br>07-11407 (CSS) |
| --- | --- |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
| --- | --- |
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Hussain Kareem | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br><br>2197 Carlysle Creek Dr.<br>Lawrenceville, GA 30044 | Court Claim Number: __initial entry__<br>*(If known)* |
| Telephone number:<br>▬▬▬▬▬▬ | Filed on:____01/05/2011____ |
| Name and address where payment should be sent (if different from above):<br><br>same as above<br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | | |
| --- | --- | --- |
| 1. Amount of Claim as of Date Case Filed:      $_____250,000.00_____ | | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |
| If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>✓ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | | Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 2. Basis for Claim:   __TILA RESCISSION__<br>(See instruction #2 on reverse side.) | | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 3. Last four digits of any number by which creditor identifies debtor: ▬▬▬▬▬<br><br>3a. Debtor may have scheduled account as: __0001350490__<br>(See instruction #3a on reverse side.) | | |
| 4. Secured Claim (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. | | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). |
| Nature of property or right of setoff: ✓ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:  Discharged by Accomodation under UCC 3-415 7 TILA Rescission Demand | | ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). |
| Value of Property: $ __200,000.00__ Annual Interest Rate __5.000__ %<br><br>Amount of arrearage and other charges as of time case filed included in secured claim, | | |
| if any: $ ____0.00____   Basis for perfection: _____ | | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |
| Amount of Secured Claim: $ __200,000.00__ Amount Unsecured: $ __50,000.00__ | | |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | | ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts,<br>You may also attach a summary. Attach redacted copies of a security interest. You may also attach a summary. (See<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | Filed: USBC - District of Delaware<br>American Home Mortgage Holdings, Inc., Et AL<br>07-11047 (CSS)          0000010875<br><br>[barcode] | Amount entitled to priority:<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| | |
| --- | --- |
| Date:<br>01/05/2011 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
| Hussain Kareem, Mortgagor | H. [signature] |

FOR COURT USE ONLY

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

IN THE UNITED STATES BANKRUPTCY COURT

FOR TE DISTRICT OF DELAWARE

IN RE:                                                    Chapter 11

AMERICAN HOME MORTGAGE                   Case No. 07-11047 (CSS)

HOLDINGS, INC.  et al

A Delaware corporation

Debtors

## MOTION FOR ENTRY OF ADMINISTRATIVE CLAIM WITH BRIEF IN SUPPORT

Comes Now Hussain Kareem, Mortgagor/Creditor/Claimant moves this honorable court to

address his administrative claim against the debtors the instant action for reasons enumerated

below:

1.

Claimant addresses this court to meet the bar date of January 5, 2011 to address any

supplemental or administrative claims by creditors being timely entered under the plan and

before relief is granted to all parties of interests.

2.

Claimant submits his proof of claim authorizing this court to review and determine entitlement

for Breach of Contract, receiving notice for Rescission/Cancellation of the Note and Mortgage,

and failure to give notice of insolvency under RESPA transfer of servicing rights.

3.

Claimant has suffered actual monetary and tort damages related to the insolvency and the lack of notification that proceedings had been and is about to discharge all claims. Claimant cites the facts surrounding his absence from the proceedings as follows:

4.

**Undisputed Facts For Admitting Administrative Claim**

Claimant entered into a contractual obligation to refinance his home under loan number 001350490 on July 7, 2006 through the subsidiary American Home Mortgage Holdings (hereinafter referred to as "AHMH" ) American Brokers Conduit ( hereinafter known as 'ABC'). The property is located at 2197 Carlysle Creek Drive, Lawrenceville GA 30044. (See Exhibits Promissory Note 'A' and U.S. Department of HUD Settlement Statement 2400 B & 2400B2 ).

5.

The loan was serviced through AHMH's subsidiary American Home Mortgage Servicing, Inc., a Maryland Corporation, and a participant in the above plan proceeding. Claimant never received official notification from neither AHMH, ABC, nor AHMSVI that insolvency proceeding had been sought under Chapter 11 in the Bankruptcy Court for the District of Delaware **(emphasis added)**. As such, Claimant had to discover that proceeding had been ongoing from second-hand sources. Fortunately, Claimant is able to present his claim before the final bar date.

6.

**Claims for Discharge & Damages**

On or about October 21, 2008, Claimant sent his Rescission Demand of the Note and Security interests to Michael Straus, CEO of American Home Mortgage, Inc. hereinafter referred to as AHM, another subsidiary of AHMH and is a participant under the above plan (see Exhibit C).

Claimant action preserved all of his rights and entitlements under TILA, 16 U.S.C. 1601 et Seq. The Rescission Demand Notification was delivered by U.S. Certified Mail No. 70081300000127430907.

Under 15 USC 1635 (b), AHM had twenty calendar days to unwound the asset and restore borrower/ claimant back to *status quo ante. See Trimmel*, 555 F. Supp. at 268 n. 3 (goal of 15 U.S.C. § 1635 is restoration of ''*status quo ante*''). When a mortgagee properly rescinds a mortgage under TILA, the rescission defeases the mortgagee of its interest in the mortgaged property.

AHM failed to acknowledge or unwind, as required under the law, the Note and its Security interests. By AHM's inactions, Claimant has established prima facie evidence for actual damage and right of discharge. AHM was still functioning as a business entity albeit under Chapter 11 when in 2008, the CEO Michael Straus received the Mortgagor/Claimant's Rescission Demand Notice (see Exhibit C). AHM had every obligation to disclose to this honorable court, to its trustees and administrators that rescission of the Note had been made by the Claimant and as an operation of law, should have been a executed for relief. The claimant and debtors were intertwined in a financial transaction which occurred prior to insolvency. Notably, the TILA remedy was made during the administrative phase of the Chapter 11 proceeding. Thus, Claimant asserts that he is entitled to have the Note discharged through this administrative proceeding.

### 7.

### Legal Discussion: Supporting Citation of Authorities

TILA rescission voids the original conveyance of legal title to the mortgagee. The TILA rescission process restores the parties to their relationship prior to becoming mortgagor and mortgagee. Because TILA rescission restores legal title to the consumer, it is effectively an alternate method of redemption in the instant matter context. The classic method of redemption is to extinguish the debt set by the judgment by paying it in full. Under TILA the owner of the equity of redemption extinguishes the debt by rescinding the underlying transaction. When the

transaction, including the promissory note memorializing the debt, is rescinded, it follows that the mortgage is no longer enforceable either. If the debt is void it follows that the mortgage is void. Therefore, if the mortgage is void, it follows that legal title is restored to the mortgagor.

Under 12 C.F.R. § 226.23(d), the process is as follows:

226.23(d)(1): *"When a consumer rescinds a transaction, the*

*security interest . . . becomes void"226.23(d)(2): "Within 20 calendar days . . . the creditor shall return any money . . . that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest." 226.23(d)(3): "When the creditor has complied with [paragraph (d)(2)], the consumer shall tender the money or property to the creditor"* As the Appellate Court has held, under 15 U.S.C. § 1635(b), *"all that the [borrower] need do is notify the creditor of her intent to rescind. The agreement is then automatically rescinded* (emphasis added).

Courts have expressly recognized that statutory rescission under

TILA works differently than common law rescission. In *Velazquez v. America's Servicing*

*Company Credit, Inc., d/b/a Overland Mortgage*, the Northern District of Illinois recognized that

*"TILA's scheme is contrary to the rule under common law rescission, where the rescinding*

*party must tender first."* Velazquez v. America's Servicing Company Credit, Inc., d/b/a

Overland Mortgage, 254 F. Supp. 2d 1043, 1045 (N.D. Ill. 2003). Under the TILA scheme for

rescission, the mortgagor does not become obligated to return the proceeds of the loan until the

mortgagee acts first as described in 12 C.F.R. § 226.23(d)(1) and (2). 12 C.F.R. § 226.23(d)(3)

("When the creditor has complied with [paragraph (d)(2)], the consumer shall tender the money

or property to the creditor"). The 1st Circuit has similarly held that under the statutory rescission

process created by TILA and Regulation Z, the lender must go first rather than the rescinding

mortgagor.

*Also See, Large v. Conseco Finance Servicing Corp., 292 F.3d 49*, 55-56 (1st Cir. 2002) (*"in contrast to common law rescission, the borrower need not first return the loan proceeds received*

*under the agreement to effect a rescission.''). ''The purpose of the TILA's reordering of common law rescission rules is to put the consumer in a stronger bargaining position'' because the lender has violated the law. Id. (Emphasis supplied).*

**A consumer '*'need not prove that they were mislead or suffered any actual damages from the purported TILA violations.*** *'' In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig.,* 2006 U.S. Dist. LEXIS 35316 at * 8 (N.D. Ill. 2006) (citing *Brown v. Marquette Sav. & Loan Assoc.,* 686 F.2d 608, 614 (7th Cir. 1982)). Also se, *In re Ameriquest Mortg. Co. Mortg. Lending Practices Litig., 2006 U.S. Dist. LEXIS at *3-4 (''If a borrower rescinds a mortgage, he or he is no longer responsible for finance or other charges, and the lender loses its security interest.'').*

8.

Further claims arose by AHM's acquiescence to the TILA Demand Notice. Claimant submits prima facie evidence from bank statements certified by Bank Of America , that least sixteen (16) payments were made to American Home Mortgage related to the original Promissory Note obligation beginning from April 2008 through September 2009 (see Exhibit 4400). Unbeknownst to the claimant, AHMH had started its proceeding under the plan, so the failure to disclose or respond materially damaged the Claimant. Whereas, in "good faith" his monies were sent to servicing parties allegedly benefitting AHMH or the Trustee under this Plan.

9.

AHM had acquiesced and Borrower is entitled to preserve all rights under TILA due to default by the principal. Under Georgia law on acquiescence under OCGA 24-4-23 expresses, as follows:

*"In the ordinary <u>course</u> of <u>business,</u> when <u>good faith</u> requires an answer, it is the duty of the <u>party</u> <u>receiving</u> a letter from <u>another</u> to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent and to adopt them."*

Relevant Georgia's case law on acquiescence expresses,

"*...a waiver of rights by failing to perform in a timely by acquiescence, makes it clear of intent.*"
"*Under Georgia law, failure to respond to a business letter may raise a presumption that the recipient admits "the propriety of the acts mentioned in the letter."See* STRONGHAVEN, INC. v. INGRAM; Case no. A01A1613. (252 Ga. App. 124), (555 SE2d 49), (2001), Pearson v. George, Georgia Supreme Court, Id.*"

As such in the instant matter, Claimant must recover from such damage and asserts that he is entitled to recovery of all payments made associated with the transaction by virtue of his TILA Rescission.

10.

Lastly, prima facie evidence shows that on page 6 of 6 of the Adjustable Rate Note (See Exhibit A) that Lisa Furco, Assistant Secretary for ABC, indorsed the Note.  The indorsement is known as an act to impair the collateral, which proves that ABC enjoyed full benefit and satisfaction by accommodation from the borrower/claimant. Thus, the Note was discharged upon accommodation  by ABC. We find under Georgia's Commercial Code (UCC) OCGA 11-3-407 Alteration  and OCGA 11-3-601 Discharge, respectively shows merit for discharge in the instant matters as follows:

Under Georgia's Commercial Code,  OCGA 11-3-601 in relevant part expresses,

Discharge and effect of discharge.

   (a) The *obligation* of a *party* to pay the *instrument* is *discharged* as stated in this *article* or by an act or *agreement* with the *party* which would *discharge* an *obligation* to pay *money* under a simple *contract*. Citing Cases in support :

Under Georgia's Commercial Code,  OCGA 11-3-407  expresses,

(a) "*Alteration*" means (i) an *unauthorized* change in an *instrument* that purports to modify in any respect the *obligation* of a *party;* or (ii) an *unauthorized* addition of words or numbers or other change to an *incomplete instrument* relating to the *obligation* of a *party.*

*(b) Except as provided in subsection (c) of this Code section, an alteration fraudulently made discharges a party whose obligation is affected by the alteration unless that party assents or is precluded from asserting the alteration. No other alteration discharges a party, and the instrument may be enforced according to its original terms.*

See SPILLERS v. FIRST SOUTH BANK, N.A. (185 Ga. App. 580) (365 SE2d 151) (1988),

*"if the co-maker shows at trial that he is discharged from liability because the bank completed the instrument of debt in an unauthorized manner (see OCGA 11-3-407 (1) (b) and 11-3-601 (1) (f)), then defendant, if he is shown to be an accommodation party, would be discharged also. See Griswold v. Whetsell, 157 Ga. App. 800 (3) (278 SE2d 753) (1981). The rationale for such a discharge of the accommodation party is that his right of recourse against the discharged co-maker would be impaired."*

By the preponderance of evidence, Claimant shows good cause that neither AHMH nor its subsidiaries disclosed to Claimant that the indorsement did convert the Promissory Note into a Bill of Exchange for the benefit of ABC coupled with the failure to Rescind under TILA has given the Claimant all rights for relief and recovery by discharging of the Note.

11.

**Relief Sought**

Claimant seeks by moving this Competent Court and the Administrators for the following administrative rights under the current plan:

* Admit this claim for administrative claims against the debtors under the plan.

*Discharge the Promissory Note and Security Deed for Loan Number 001350490. This court should protect Claimant rights and has the jurisdictional authority under TILA or any other applicable laws to render the debt discharged.

* For Negligence Claim on part of AHMH and under TILA a return of all payments made pre and post proceedings. AHMH failure to disclose its insolvency materially harmed the claimant

to an amount estimated at $19,175.71 without interests. A more exact accounting shall be determined with forthcoming support by evidence from records.

*This court should apply judicial leniency for claimant against any defects, as this court standard should follow case laws citing *"Pro Se Litigants pleadings are not to held to the same high standards of perfection as lawyers." See Haines v. Kerner, 92 S. Ct. 594; Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Picking v. Penna. Rwy. Co. 151 F. 2d 240; Puckett v. Cox, 456 F. 2d 233.*

*If this court rules in whole or in part adversely to the claimant demands, then this court is requested to offer fact finding under FRCP Rule 52 to state with clear and concise reasons for rejection.

Claimant sayeth no more. With all due respects to this Court,

Submitted on or about January 5, 2011.

Hussain Kareem, Pro Se , A.R.R.

2197 Carlysle Creek Drive

Lawrenceville, GA 30044

Tel.

**U.S. Certified Mail No:** <u>71969006982039039760</u>

**Verification**

I, Hussain Kareem, Claimant/Mortgagor/TitleHolder in the foregoing matter, deposes that all statements, exhibits, and claims are true and correct to the best of my personal knowledge and beliefs. I affirm under the penalty of perjury under 28 USC 1746.

Executed this day 5th of January, 2011.

Hussain Kareem, Affiant

2197 CARLYSLE CREEK DRIVE

LAWRENCEVILLE, GA 30044

Tel:

## Certificate of Service

I, Hussain Kareem do ceritify that I have mailed by first class U.S. Mail the foregoing to the following at his/her address below:

Counsel For Debtors:

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Sean M. BEACH

Patrick A. Jackson

1000 West St., 17th Floor

P.O. Box 391

Wilmington, DE 19801

Tel: (302) 571-6600

Counsel for the Plan Trustee:

**HAHN & HAESSEN LLP**

Mark S. Indelicato

Edward L. Schnitzer

488 Madison Avenue

New York, N.Y. 10022

Tel: (212) 478-7200

**The Plan Trustee:**

Steven D. Stass          U.S. **Certified Mail No:** 71969006982061052287

AHM Liquidating Trust

P.O. Box 10550

Melville, NY 11747

Mathis K. Wright, President

NAACP CHAPTER #5160

P.O. BOX 1296

AMERICUS, GA 31709



Exhibit "A"

## ADJUSTABLE RATE NOTE
### FIRST FIVE YEAR FIXED PAYMENT – 12MTA

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 110.000% OF THE ORIGINAL AMOUNT (OR $ 175,120.00    ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

July 7, 2006                    ATLANTA                         Georgia
                                        (City)                          (State)

2197 Carlysle Creek Drive, Lawrenceville, GA  30044
                                (Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 159,200.00         plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   American Brokers Conduit                                       . I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of 1.900% until     July 31, 2006      , and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing August 1, 2006    , I will pay interest at a yearly rate of    6.832%    (the "Subsequent Rate"). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month. In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I Will make my monthly payments on     1st      day of each month beginning on September , 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on     August 1, 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at PO Box 660029, Dallas, TX  75266-0029                                    , or at a different place if required by the Note Holder.

N. L.

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S.$ ___580.51_____, unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st_____ day of __September_____, __2006_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ __Two and 400 Thousandths_____ percentage points _2.400____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than ___Nine and 950 Thousandths_____ _____ percentage points _9.950_____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective commencing _____September 1, 2011_____, (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date. My payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of this Note.

*H. K.*

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date following the First Payment Change Date under Section 4(E), will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to _____ 110.000% of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that _110.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___Five_____ anniversary of the due date of the first monthly payment, and on that same day every _Five_____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

*H.K.*

My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Miscellaneous Fees: I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

DOC #:944869                APPL #:0001350490              Rev 1/27/06

Page 4 of 6                AHM-2032N(MULT)(0106)

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Hussain Kareem_ _____ (Seal)
Hussain Kareem                 -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

DOC #:944871                    APPL #:0001350490

Page 6 of 6                                          AHM-2032N(MULT) (0106)

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY: AMERICAN BROKERS CONDUIT

LISA FUMCO
ASSE. SECRETARY

**FILED UNDER SEAL**

HUD-1



THIS IS NOT A PUBLIC                                        DATE: Oct. 18 , 2008
COMMUNICATION
Notice to Agent is Notice to Principle
Notice to Principle is Notice to Agent              Hussain L Kareem, without prejudice
Applicable to all successors and assigns            2197 Carlysle Creek Dr
Silence is Acquiescence/Agreement/Dishonor          Lawrenceville, GA 30044
This is self-executing contract.

                    Sent Certified Mail # 7008 18 00  0001 27 43  0907
With proof of service to:                    Re:  Rescission Demand Notice
Michael Strous, CEO individually and
American Home Mortgage, Inc., AHMSI, and ET AL
538 Broadhollow Rd.                                               OCT 21  2008
Melville, NY 11747

                    0031256902

RE: Alleged Loan # 1001350490  Property Address: 1927 Carlysle Creek Drive , GA 30044

Dear Sir:
In response to my most recent letters from you dated 07/08/2008 regarding my property, I am rescinding
your alleged Loan Number 1001350490, as related to the above subject property. You, your bank and your
Servicing Company, AHMSI, have received my Affidavit of Non-Response for Debt Validation and my
Affidavit Of Security Deed Illegality respectively (see Exhibits), pursuant to , but not limited, to my rights
under the Fair Debt Collection Practices Act (FDCPA), and the Uniform Commercial Code (UCC), State
Commercial Code, Contract Law, Fair Credit Billing Act (FCBA) and the State of Georgia Statues
O.C.G.A. § 44-14-236 and O.C.G.A. § 9-13-27, respectively. You and your interested parties are
in default and dishonor. You will have to cease and desist from any collection activities. My
rights should not allow you as a debtor, under Federal Bankruptcy protection, Chapter 11, Case
No. 07-11047 (CSS) from adhering to the Federal Rescission Demand.

Furthermore, please be advised that I am exercising my rights under Regulation Z of the Truth In Lending
Act (TILA) to rescind my mortgage loan transaction (Reg. Z §§ 226.15(a)(2), 226.23(a)(2), Official Staff
Commentary §226.23(a)(2)-1) and 15 U.S.C. §1635(b).

        FAILURE of the Lender to take necessary and appropriate action to reflect the fact that the
        security interest was automatically terminated by the rescission within twenty (20) days of
        creditor's receipt of the rescission notice, is a violation of 15 USC
        1635(b);Reg.Z15(d)(2),226.23(d)(2), ( also see "Ameriquest Mortgage Company Mortgage
        Lending Practices Litigation," M.D.L. No. 1715, Lead Case No. 05-cv07097 (N.D.Ill.)

Therefore, my demand is for you to uphold the all the laws and statues cited and to comply with this
rescission demand notice, immediately. Please forward to me a complete accounting of all payments
that I have made toward the promissory note. Non compliance shall result in our pursuit of all civil
and criminal remedies against all parties, with prejudice.

                                                    Sincerely,

Notary                                              Hussain Kareem
                                                    All Rights Reserved.

# FAX

Exhibit
4480

**TO:** H KAREEM
Company:
Fax: **678.987.0576**
Phone:

## FROM:
Fax:
Phone:

## NOTES:

Per request by H Kareem this is the payment history for American Home Mortgage made through the Bank of America Bill Pay system

Date and time of transmission: Tuesday, November 16, 2010 3:32:38 PM
Number of pages including this cover sheet: 02





**Bank of America**

Bank of America
Interactive Banking
P.O. Box 655961
Dallas, TX 75265-9961

November 16, 2010

| Payment Date | Payee Name | Account#(Masked) | Payment Amount | DDA#(Masked) |
|---|---|---|---|---|
| 4/16/2008 | AMERICAN HOM E MO | | $609.54 | . 1140 |
| 5/22/2008 | AMERICAN HOM E MO | | $809.54 | . 1140 |
| 6/24/2008 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 7/18/2008 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 8/18/2008 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 9/10/2008 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 10/21/2008 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 11/19/2008 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 12/23/2008 | AMERICAN HOM E MO | | $610.00 | . 1140 |
| 1/21/2009 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 2/20/2009 | AMERICAN HOM E MO | | $610.00 | . 1132 |
| 4/1/2009 | AMERICAN HOM E MO | | $610.00 | . 1140 |
| 5/1/2009 | AMERICAN HOM E MO | | $613.00 | . 1140 |
| 5/28/2009 | AMERICAN HOM E MO | | $615.00 | . 1140 |
| 7/2/2009 | AMERICAN HOM E MO | | $615.00 | . 1132 |
| 8/11/2009 | AMERICAN HOM E MO | | $610.00 | . 1140 |

BANK OF AMERICA, N.A.
CRUSE ROAD INSTORE
BANKING CENTRE
950 HERRINGTON ROAD
LAWRENCEVILLE, GA 30044
GA7-775-01-01

TABLE OF CONTENTS

I.      Proof Of Claim Form

II.     MOTION FOR ENTRY OF ADMINISTRATIVE CLAIM WITH BRIEF IN
        SUPPORT

III.    Verification

IV.     Certificate of Service

V.      Exhibit "A": Adjustable Rate Note pages 1 thru 6

VI.     Exhibits  H.U.D. Settlement Statement 2400 B & 2400 B2

VII.    Exhibit 'C' Rescission Demand Notice

VIII.   Exhibit '4400' Bank of America's Payment Statement with Cover page



B 10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT | District of Delaware | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: american Home Mortgage Holdings, Inc, et al | Case Number: 07-11047 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Hussain Kareem | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent: Hussain Kareem 2197 Carlysle Creek Drive Lawrenceville, GA 30044 Telephone number: ▬▬▬▬▬ | Court Claim Number: initial entry (If known) Filed on: 01/05/2011 |
| Name and address where payment should be sent (if different from above): same as above Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| 1. Amount of Claim as of Date Case Filed: $ 250,000.00 If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. ✓Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | 5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. Specify the priority of the claim. |
| 2. Basis for Claim: mortgage note (See instruction #2 on reverse side.) | ☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| 3. Last four digits of any number by which creditor identifies debtor: ▬▬▬ 3a. Debtor may have scheduled account as: 0001350490 (See instruction #3a on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
| 4. Secured Claim (See instruction #4 on reverse side.) Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information. Nature of property or right of setoff: ✓Real Estate ☐ Motor Vehicle ☐ Other Describe: Discharged by accommodation under UCC 3-415 & Rescission By TILA Value of Property:$ 200,000.00 Annual Interest Rate 5.000 % Amount of arrearage and other charges as of time case filed included in secured claim, if any: $ 0.00 Basis for perfection: discharged Amount of Secured Claim: $ 200,000.00 Amount Unsecured: $ 50,000.00 | ☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5). ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7). ☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). ☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___). |
| 6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | Amount entitled to priority: $ ___ |
| 7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of runn~~ing~~ ~~ag~~reements. You may also attach a summary. Attach red~~acted copies of documents providing evidence of perfection of~~ a security interest. You may also attach a su~~mmary. (See instruction 7 and definition of "redacted" on rev~~erse side.) DO NOT SEND ORIGINAL DOCUMENTS~~. ATTACHED DOCUMENTS MAY BE DESTROYED AFT~~ER SCANNING. If the documents are not available, please exp~~lain:~~ | Filed: USBC - District of Delaware American Home Mortgage Holdings, Inc., Et Al. 07-11047 (CSS) 0000010887 *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| | |
|---|---|
| Date: 01/05/2011 Hussain Kareem, Mortgagor | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *[signature]* 1/5/2011 | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

*Nunc Pro Tunc*



## MEMORANDUM

Date:   January 31, 2011

To:     Court Clerk

From:   Kurtzman Carson

Re:     American Home Mortgage Holdings, Inc.

---

Enclosed please find a claim that was sent to our office by mistake, we do not work on this case.