IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x
In re:                                                           :  Chapter 11
                                                                 :
AMERICAN HOME MORTGAGE                                           :  Case No. 07-11047 (CSS)
HOLDINGS, INC., et al.,[1]                                       :
                                                                 :  Jointly Administered
        Debtors.                                                 :
                                                                 :  Hearing Date: November 18, 2011 at 11:00 a.m.
                                                                 :  Objection Deadline: November 11, 2011 at 4:00 p.m.
---------------------------------------------------------------- x

**MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE
AND BANKRUPTCY RULE 9019 FOR AN ORDER AUTHORIZING AND APPROVING
(I) THE STIPULATION AND SETTLEMENT AGREEMENT BY AND AMONG THE
PLAN TRUSTEE, JPMORGAN CHASE BANK, N.A., AND J.P. MORGAN SECURITIES
INC., (II) THE RELEASES CONTAINED THEREIN, AND (III) RELEASE OF
PROCEEDS FROM, AND TERMINATION OF, ESCROW ACCOUNT**

Steven D. Sass, as liquidating trustee (the "Trustee") for the Plan Trust established pursuant to the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors and debtors-in-possession hereby moves (the "Motion") for an order, pursuant to sections 105 and 363 of title 11 of the U.S. Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to authorize and approve (i) the Stipulation and Settlement Agreement attached hereto as Exhibit 1 to the proposed form of order (the "Settlement Agreement") by and among the Trustee and JPMorgan Chase Bank, N.A.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).

11474881-4

("JPMC") and J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.) ("JPMS"), (ii) the releases contained in the Settlement Agreement and (iii) release of proceeds from, and termination of, the Escrow Account (as defined below). In support of the Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and the within Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## GENERAL BACKGROUND

3. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. The Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042]. The Plan became effective on November 30, 2010 (the "Plan Effective Date").

5. Pursuant to the Plan, as of the Plan Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Trustee

2

for the Plan Trust. The Trustee is vested with the rights, powers, and benefits set forth in the Plan, Confirmation Order, and Plan Trust Agreement.

## BACKGROUND

6.  Pursuant to the "1/06 Senior Secured Credit Agreement," dated January 24, 2006 (together with amendments to it, the "Credit Agreement"), JPMC provided $200 million in a revolving line of credit to the American Home Mortgage Corp. and American Home Mortgage Investment Corp. (the "Debtors"), to be secured by mortgage loans that were originated and/or owned by the Debtors (the "Warehouse Facility"). Article VII of the Credit Agreement states that the Debtors grant to JPMC a first-priority lien and security interest in the collateral described in the Credit Agreement (collectively, the "Warehouse Facility Collateral"). JPMC recorded UCC-1 Financing Statements describing the collateral pledged under the Warehouse Facility.

7.  On December 22, 2007 the Debtors filed their "*Motion of the Debtors for Orders: (A)(I) Approving Sale Procedures; (II) Approving Payment of Expense Reimbursement; (III) Scheduling a Hearing to Consider Sale of Certain Non-Performing Loans; (IV) Approving Form and Manner of Notice Thereof; and (V) Granting Related Relief; and (B)(I) Authorizing the Sale of Non-Performing Loans Free and Clear of Liens, Claims, Encumbrances and Other Interests; (II) Authorizing and Approving Sale Agreement Thereto; (III) Authorizing the Distribution of the Proceeds; and (IV) Granting Related Relief*" [D.I. 2490] (the "Sale Motion").

8.  On March 14, 2008 the Court entered the "*Order Pursuant to Sections 105 and 363 of the Bankruptcy Code: (I) Authorizing the Sale of JPM Non-Performing Loans and REO Property Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (II) Authorizing and Approving Sale Agreement Thereto; (III) Authorizing the Distribution of the Proceeds; and (IV) Granting Related Relief*" [D.I. 3314] (the "Escrow Order"). Paragraph 10(iv) of this Escrow

3

Order provided that proceeds attributable to the sale of parcels of real property that had been acquired by the Debtors through foreclosure (or deed in lieu of foreclosure) of Warehouse Facility Collateral (hereinafter the "REO Assets") in which JPMC claimed a security interest would be deposited in a segregated escrow account (the "Escrow Account"), pending a further order of the Court (collectively with any other obligations or requirements contained in the Escrow Order, the Stipulated Order (as defined below) and any other document or Court order regarding the administration of the Escrow Account, the "Escrow Obligations").

9. On September 10, 2008, JPMC filed its "*Motion of JPMC Chase Bank, National Association for Relief From Automatic Stay, Pursuant to 11 U.S.C. § 362(d)*". The parties reached a stipulated resolution of this motion, and on December 1, 2008, the Court entered the *Order Approving Stipulation Settling Motion of JPMC Chase Bank, N.A. for Relief From the Automatic Stay and Providing for Mediation of Certain Disputes*" [D.I. 6643] (the "Stipulated Order"). Among other things, the Stipulated Order provided that the Debtors would transfer to JPMC substantially all mortgages that then constituted Warehouse Facility Collateral. This transfer was completed in February of 2009.

10. Pursuant to the Stipulated Order all proceeds attributable to REO Assets in which JPMC asserted a security interest were to be deposited in the Escrow Account, pending further order of the Court. As of the date hereof, the total sum of $17,649,831.24 from the disposition of the REO Assets has been deposited in and remains in the Escrow Account. As of August 31, 2011, interest, less wire fees and other charges, has accrued on such funds in the total amount of $365,180.80.

11. The parties then attempted to mediate their disputes. Mediation proved unsuccessful and, on July 31, 2009, AHM Corp., AHM Investment, and the official committee of

unsecured creditors filed a complaint against JPMC to commence an Adversary Proceeding [Adv. Proc. No. 09-51702-CSS] (the "Adversary Proceeding"). JPMC answered the plaintiffs' complaint and filed counterclaims (as amended, the "Counterclaims").

12. The Debtors and the Committee moved to dismiss certain of the Counterclaims for failure to state valid claims for relief [Adv. Proc. D.I. 0016]. On June 30, 2011, after oral argument, the Court denied this motion.

13. Pursuant to the Plan, upon the Plan Effective Date certain of the Debtors' claims, including those at issue in the Adversary Proceeding, became assets of the Plan Trust. In accordance with the Plan and stipulation of the parties, the Trustee was substituted as the Plaintiff in the Adversary Proceeding.

14. On February 7, 2011, the Trustee filed the Amended Complaint [Adv. Proc. D.I. 0077]. On or about February 22, 2011 JPMC filed its "*Answer and Counterclaims of JPMorgan Chase Bank, N.A. to First Amended Complaint*", containing, among other things, the Counterclaims [Adv. Proc. D.I. 0083]. On or about March 8, 2011, Plaintiff filed the "*Answer to Counterclaims Contained in the Answer and Counterclaims of JPMorgan Chase Bank N.A*" [Adv. Proc. D.I. 0084].

15. In addition to the disputes at issue in this Adversary Proceeding, JPMC and JPMS have also filed the following proofs of claim in these chapter 11 cases (collectively and with any corresponding liabilities listed in the Debtors' Schedules of Assets and Liabilities filed on or about October 5, 2007, as they may have been amended or restated, the "Resolved JPM Claims"):

    a. Claim No. 7969 filed by JPMS against AHM Investment in the amount of approximately $88,175;

      b.      Claim No. 8398 filed by JPMS against AHM Investment in the amount of approximately $1,397,266;

      c.      Claim No. 8248 filed by JPMC against Homegate in the amount of approximately $413,567;

      d.      Claim No. 8258 filed by JPMC against AHM Corp. in an unliquidated amount;

      e.      Claim No. 8262 (which corresponds to schedule no. 748000630) filed by JPMC against AHM Investment in an unliquidated amount;

      f.      Claim No. 8383 filed by JPMC against AHM Corp. in the amount of approximately $2,005; and

      g.      Claim No. 8397 filed by JPMC against AHM Corp. in the amount of approximately $160,600.

16. On or about August 18, 2006, at the request of AHM Corp. as applicant and account party, JPMC established that certain $160,600.00 irrevocable letter of credit no. TBPS-278100 (the "L/C") for the benefit of STWB Inc. (c/o Smith Kline Beecham PLC as agent to STWB Inc.) (the "Beneficiary"). As collateral to support the establishment of the L/C, AHM Corp. provided $160,600.00 cash to JPMC which amount continues to be held by JPMC. By letter dated January 23, 2008, AHM Corp. notified JPMC that it elected not to renew the L/C and instructed JPMC to notify the Beneficiary that the L/C will terminate and not be renewed in accordance with the terms of the L/C agreement. On or about May 2, 2008, JPMC confirmed to AHM Corp. that the L/C was terminated and that JPMC intended to retain the AHM Corp. cash collateral as the Beneficiary had not drawn on the L/C prior to the termination date. The JPMC asserted interest in the L/C is also described in Claim No. 8397 filed against AHM Corp. in these chapter 11 proceedings.

17. The Plan Trustee received funds from non-debtor American Home Mortgage Servicing, Inc. ("AHMSI") that are being held (and will continue to be held) in a segregated,

interest bearing account and which, as of September 30, 2011, total $728,819.80 (the "Additional Funds"). Since receiving the Additional Funds, (i) the Trustee requested additional information from AHMSI, (ii) AHMSI has informed the Trustee that the Additional Funds are funds attributable to the Warehouse Facility, (iii) AHMSI has not identified any loans or REO under the Warehouse Facility from which the Additional Funds were derived, and (iv) AHMSI has not provided additional information which the Trustee deems sufficient to determine whether any portion of such Additional Funds is due and owing to JPMC.

18.     On July 14, 2011, the parties again attempted to mediate the disputes in the Adversary Proceeding. While not initially successful, that mediation led to continuing settlement discussions between the parties. The parties hereto have now reached the following settlement of all disputes contained in this Adversary Proceeding, and certain other matters including the resolution of the Resolved JPM Claims.

## THE STIPULATION AND SETTLEMENT AGREEMENT

19.     The principal terms of the Settlement Agreement are set forth below:[2]

    a.    <u>Distribution of Escrow Account and Effective Date</u>. Upon the settlement Effective Date, the funds in the Escrow Account shall be disbursed as follows:

        The sum of $10,200,000 shall be transferred to the Trustee; and

        The remainder of the Escrow Account shall be transferred to JPMC.

    b.    <u>Distribution of JPMC Cash Collateral</u>. Upon the settlement Effective Date, the Trustee relinquishes any claim of any kind to the sum of $160,600, representing funds in JPMC's possession which JPMC contends is its cash collateral pursuant to claim no. 8397.

---

[2] The terms of the Settlement Agreement set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Settlement Agreement. To the extent of any inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall govern.

7

c.     <u>Disallowance/Withdrawal of Certain Claims.</u> Upon the occurrence of the settlement Effective Date, the Resolved JPMC Claims shall be deemed to be disallowed in their entirety without right to amend or supplement, and JPMC and JPMS shall be deemed to have withdrawn, waived, released and relinquished all rights to payment, reimbursement or recovery from the Debtors, the Plan Trust or the Trustee on account of the Resolved JPMC Claims, except with respect to the Escrow Account distribution and cash collateral described above.

d.     <u>Treatment of Additional Funds.</u> The Trustee and JPMC both reserve all rights related to the disposition and payment of the Additional Funds. For the avoidance of doubt, none of the releases shall have any force or effect with respect to the rights of either the Trustee or JPMC with respect to the Additional Funds or any other funds attributable to the Warehouse Facility that AHMSI may hereafter advise that it has in its possession and/or that AHMSI turns over to the Trustee.

e.     <u>Destruction of Discovery Materials.</u> Consistent with paragraph 18 of the Stipulated Consumer Protection Order entered by the Court on April 12, 2010 [Adv. Proc. D.I. 47], within ninety (90) days after the Effective Date, all documents designated as Confidential or Highly Confidential Consumer Information and received by a party in connection with this adversary proceeding shall be destroyed. In addition, within ninety (90) days after the Effective Date, counsel for each party shall destroy all work-product containing or describing documents it received designated as Confidential or Highly Confidential Consumer Information.

f.     <u>Release by JPMC and JPMS.</u> Except with respect to the obligations under the Settlement Agreement, effective upon the settlement Effective Date, JPMC and JPMS forever waive, release and discharge any and all claims of any nature whatsoever (including, without limitation, administrative claims, secured claims, unsecured claims, tort claims, and contract claims), causes of action, obligations, suits, judgments, damages, demands, debts, interests and liabilities that have been brought, asserted, threatened or could have been brought or asserted, whether liquidated or unliquidated, fixed or contingent, at law or in equity, known or unknown (collectively, the "<u>JPM Claims</u>") against the Plan Trust, the Trustee, the Debtors and each of their respective estates, affiliates, predecessors, successors, agents, assigns, professionals, attorneys, employees, officers and directors arising in any way out of, or from the facts and circumstances related to (a) the Credit Agreement, any and all amendments thereto, the 1/06 Custody Agreement dated as of January 24, 2006 and all amendments thereto (the "<u>Custody Agreement</u>"), the Warehouse Facility, the Warehouse Facility Collateral and any and all other agreements and documents entered into in connection with the Credit Agreement, including, without limitation, all promissory notes,

8

security agreements, and other agreements, covenants, representations, warranties or any other matter whatsoever arising therefrom, (b) the Counterclaims alleged by JPMC in this adversary proceeding, (c) the Escrow Account and (d) the Resolved JPM Claims ((a) through (d) collectively, the "JPM Released Claims"). For the avoidance of doubt, nothing in the Settlement Agreement shall be construed as a release by JPMC, JPMS or any subsidiary or affiliate of either of any claim against the Plan Trust, the Trustee or the Debtors other than the JPM Released Claims.

g. Releases by the Plan Trust, Trustee and Debtors. Except with respect to the obligations under the Settlement Agreeemnt, effective upon the settlement Effective Date, the Plan Trust, the Trustee, acting in his capacity as the Trustee of the Plan Trust, and the Debtors, hereby forever waive, release and discharge any and all claims of any nature whatsoever (including, without limitation, administrative claims, secured claims, unsecured claims, tort claims, and contract claims), causes of action, obligations, suits, judgments, damages, demands, debts, interests and liabilities that have been brought, asserted, threatened or could have been brought or asserted, whether liquidated or unliquidated, fixed or contingent, at law or in equity, known or unknown (collectively, the "Trustee Claims") against JPMC and JPMS and each of their respective estates, affiliates, predecessors, successors, agents, assigns, professionals, attorneys, employees, officers and directors arising in any way out of, or from the facts and circumstances related to, (a) the Credit Agreement, any and all amendments thereto, the Custody Agreement, the Warehouse Facility, the Warehouse Facility Collateral and any and all other agreements and documents entered into in connection with the Credit Agreement, including, without limitation, all promissory notes, security agreements, and other agreements, covenants, representations, warranties or any other matter whatsoever arising therefrom, (b) the claims for relief alleged by the Trustee, the Committee, American Home Mortgage Corp. and American Home Mortgage Investment Corp in this adversary proceeding and (c) the Escrow Account. ((a) through (c) collectively, the "Trustee Released Claims"). For the avoidance of doubt, nothing in the Settlement Agreement shall be construed as a release by the Plan Trust, the Trustee or the Debtors of any claim against JPMC, JPMS or any subsidiary or affiliate of either of them other than the Trustee Released Claims.

h. Dismissal. Upon the settlement Effective Date, the Amended Complaint and the Amended Counterclaims filed in the adversary proceeding shall be dismissed with prejudice and the parties hereto shall execute such additional documents or pleadings reasonably necessary to accomplish such dismissals.

**RELIEF REQUESTED**

20. By this Motion, the Debtors are seeking, pursuant to sections 105(a) and 363(b) of Bankruptcy Code and Bankruptcy Rule 9019(a), this Court's authorization and approval of the Settlement Agreement, the releases contained therein, and the release of proceeds from, and the termination of, the Escrow Account.

**BASIS FOR THE RELIEF REQUESTED**

A. **The Settlement Agreement, Including the Releases and Release of Escrow Proceeds Should Be Approved Pursuant To Bankruptcy Rule 9019(a)**

21. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

22. This Court has the power, pursuant to Bankruptcy Rule 9019, to authorize the Trustee to enter into the settlement described in the Settlement Agreement. Rule 9019(a) provides that "on motion by the trustee and after a hearing, the Court may approve a compromise or settlement." The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged. *In re Penn Central Transp. Co.*, 596 F.2d 1002 (3d Cir. 1979); *see also In re Sassalos*, 160 B.R. 646, 653 (D. Or. 1993) (stating that "compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise . . . rests in the sound discretion of the judge."). The Supreme Court has recognized that "in administering a reorganization proceeding in an economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts." *In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414 (1986).

23. Approval of a proposed settlement is within the "sound discretion" of the Bankruptcy Court. *In re Neshaminy Office Building Associates*, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). The court must determine whether the proposed settlement is in the "best interests of the estate." *See In re Energy Cooperative, Inc.*, 886 F.2d 921, 927 (7th Cir. 1989). In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the complexity, expense and likely duration of such litigation, and other factors relevant to a full and fair assessment of the [claims]." *In re Penn Central Transportation Co.*, 596 F.2d 1127, 1153 (3d Cir. 1979); *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (quoting *In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether 'the compromise is fair, reasonable, and in the interest of the estate.'")).

24. In particular, the Third Circuit Court of Appeals has enumerated four factors that should be considered in determining whether a settlement should be approved, namely: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); *accord Will v. Northwestern Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

25. In deciding whether to approve a settlement, the bankruptcy court should not substitute its judgment for that of the debtor. *Neshaminy*, 62 B.R. at 803. Nor should it decide the numerous questions of law or fact raised by litigation. Rather, it should canvass the issues to

11

see whether the settlement falls below the lowest point in the range of reasonableness. *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (stating that "the court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

26. The resolutions embodied in the Settlement Agreement are reasonable and in the best interest of the Plan Trust and its creditors. The Settlement Agreement provides for a fair and practical resolution of numerous disputed issues which, if litigated to their conclusion, would consume a portion of the Plan Trust's resources. The Settlement Agreement was the product of significant discussions and negotiations with JPMC and JPMS, and the settlement embodied therein falls well above the lowest point in the range of reasonableness. In addition, as discussed below, the applicable *Martin* factors weigh in favor of approving the Settlement Agreement.

    a. *The Probability of Success in Litigation*

27. As with all litigation, the probability that the Trustee will prevail in litigating the many claims and Counterclaims involved in this Adversary Proceeding, as well as the Resolved JPM Claims and other matters resolved by the Settlement Agreement, is uncertain. Although the Trustee believes that the Plan Trust has valid defenses to the Resolved JPM Claims and Counterclaims, the litigation is complicated, involves certain issues of first impression, and no litigation result is assured. Absent the Settlement Agreement, the Adversary Proceeding and the Resolved JPM Claims would have to be litigated before this Court—and, potentially, on appeal—with no guarantees of a more favorable outcome for the Plan Trust. In contrast to the uncertainty and inherent risk in litigating these matters and the unavoidable expenditures related

thereto, the Settlement Agreement provides the Plan Trust with an immediate recovery of $10,200,000 and the release of the Resolved JPM Claims which have a potential distribution value, based on the estimates in the disclosure statement filed with the Plan, of over $1 million. This outcome is well above the lowest point in the range of reasonableness—particularly in light of the uncertainty of success through further litigation. Accordingly, the Trustee submits that the Settlement Agreement meets the first factor of the *Martin* test.

        b.    *The Likely Difficulties in Collection*

28.    The Trustee does not believe that collection of any judgment that could be obtained against JPMC is a significant issue animating the Settlement Agreement; this factor is thus neutral.

        c.    *The Complexity of the Litigation Involved, and the Expense, Inconvenience, and Delay Necessarily Attending It*

29.    The Settlement Agreement satisfies the third factor in *Martin*'s four-factor test because failing to achieve a consensual resolution of matters being settled would add both inconvenience, expense and potential delays to these chapter 11 cases—effects which would be borne by both the Plan Trust and its creditors at large. This Adversary Proceeding and the Resolved JPM Claims involve complex issues. Twice already the substance of this Adversary Proceeding has been the subject of mediation attempts—once before the Honorable Judge Kevin Gross and once before the Honorable Judge Joseph Farnan—and twice the disputes have proven to be too unwieldy for a quick, simple resolution. And while much discovery has already been completed, a significant amount remains to be done: no depositions have been taken, no experts retained, and no expert reports produced. The Trustee also believes that since certain issues in the Adversary Proceeding are matters of first impression in this circuit an appeal would likely follow. Litigating this Adversary Proceeding to completion would be a complex, lengthy,

13

expensive, and burdensome process—a process which the Settlement Agreement would obviate in full. Accordingly, the third factor of *Martin*'s four-factor test is satisfied and weighs in favor of the Court approving the Settlement Agreement.

          d.      *The Paramount Interest of Creditors*

30.      Entry into the Settlement Agreement serves the paramount interest of creditors of the Plan Trust. As noted above, resolution of the Adversary Proceeding and the Resolved JPM Claims provides a certain recovery for creditors of the Plan Trust, while reducing administrative expenses attendant to litigation of the many disputes resolved in the Settlement Agreement. Additionally, the settlement also resolves affirmative claims in the case by settling both the Counterclaims and the Resolved JPM Claims, thus reducing estate risk and the claims pool. The combined effect of the reduction of potential liabilities, on the one hand, and the increase of cash, on the other hand, will be to benefit all creditors of the Plan Trust. Accordingly, the fourth *Martin* factor weighs in favor approving the Settlement Agreement.

          e.      *Summary*

31.      A review of the four factors set forth above clearly demonstrates that the Settlement Agreement is in the best interest of the Plan Trust and its creditors. The resolution and compromise of the disputes and issues between the parties as embodied in the Settlement Agreement: (i) is fair and equitable; (ii) represents a settlement that rests well above the lowest point in the reasonable range of potential litigation outcomes; (iii) obviates the expense, delay, inconvenience, and uncertainty that would attend any litigation of the parties' issues; and (iv) advances the paramount interests of creditors. Therefore, the Settlement Agreement satisfies Bankruptcy Rule 9019 and should be approved by the Court.

14

**B.  The Settlement Agreement, Releases, Release of Escrow Proceeds and Termination of the Escrow Account Should Be Approved Pursuant to Section 363(b) of the Bankruptcy Code**

32.    Pursuant to section 363(b)(1) of the Bankruptcy Code, a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To obtain court approval of a use of property under section 363(b), a debtor needs only to show a legitimate business justification for the proposed action. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (noting that under normal circumstances, courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification) (internal citation omitted); *Computer Sales Int'l, Inc. v. Fed. Mogul Global, Inc. (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) ("As applied in the Third Circuit, a court should approve a debtor's use of assets outside the ordinary course of business if the debtor can demonstrate a sound business justification for the proposed transaction."); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for use of property under section 363(b) of the Bankruptcy Code).

33.    While the Trustee believes that the settlement can and should be approved solely under the Bankruptcy Rule 9019(a) standard set forth above, the Trustee also meets the "sound business reason" standard of section 363(b) of the Bankruptcy Code with respect to both the grant of releases contained in the Settlement Agreement and the release of escrow proceeds and termination of the Escrow Account.

34.    Here, the Trustee is receiving JPMC and JPMS counter-releases in exchange for the release of its claims against JPMC and JPMS. And although the potential amount of any recoveries by either party cannot be known with certainty, the mutual releases here are roughly

analogous in extent. In fact, the Plan Trust and JPMC are exchanging mutual releases in regards to the Credit Agreement, the Adversary Proceeding, and the Escrow Account, but the Plan Trust is additionally resolving the Resolved JPM Claims in the Debtors' underlying chapter 11 cases. In short, the Plan Trust is releasing its claims against JPMC and JPMS but is itself receiving substantial releases in turn, and obtaining releases of potentially substantial claims against the Plan Trust is plainly an exercise of the Trustee's sound business judgment.

35. In addition, the Debtors and subsequently the Plan Trust and Trustee have administered the Escrow Account since its establishment by the Escrow Order. The release of the escrow proceeds in accordance with the Settlement Agreement and the termination of the Escrow Account and any Escrow Obligations of the Plan Trust or the Trustee, should be approved as an exercise of the Trustee's sound business judgment. The Escrow Account contains approximately $18 million, but the ownership of this money is hotly contested. While the Trustee maintains that the Plan Trust has a strong argument that it is entitled to the proceeds in the Escrow Account, the Trustee also recognizes that JPMC has alleged substantial Counterclaims against the Plan Trust and that litigating the various claims and Counterclaims in this Adversary Proceeding to completion would necessarily entail substantial litigation and administrative expense. Beyond a doubt, the distribution of the Escrow Account proceeds and the termination of the Escrow Account and Escrow Obligations is an exercise of sound business judgment by the Trustee.

36. Thus, the Trustee further submits that the terms and conditions of the Settlement Agreement—including the releases contained therein and the release of proceeds from, and termination of, the Escrow Account—are reasonable and fair to all parties. Moreover, the terms of the Settlement Agreement are the product of arm's-length, good faith negotiations between the

Trustee, JPMC, and JPMS. Accordingly, the Trustee respectfully requests that this Court approve the Settlement Agreement and authorize the Plan Trust, JPMC, and JPMS to implement the various releases and distributions embodied therein pursuant to § 363(b) of the Bankruptcy Code.

## **NOTICE AND PROCEDURE**

37.     The Trustee will serve notice of this Motion and Settlement Agreement on (i) the U.S. Trustee, (ii) all parties to the Settlement Agreement, (iii) the Beneficiary and/or its counsel, (iv) AHMSI, and (v) those parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. In light of the previous notice and the nature of the relief requested herein, the Trustee submits that no further notice of this Motion is necessary or required.

38.     No previous request for the relief sought herein has been made to this or any other Court.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that this Court enter an order, substantially in the form annexed hereto as Exhibit A, authorizing and approving the parties' stipulation and settlement as described herein and granting such other and further relief as may be just and proper.

Dated: October 28, 2011

                               YOUNG CONAWAY STARGATT & TAYLOR, LLP

                               */s/ Sean M. Beach*
                               Sean M. Beach (No. 4070)
                               Erin Edwards (No. 4392)
                               The Brandywine Building
                               1000 West Street, 17th Floor
                               Wilmington, Delaware 19801
                               (302) 571-6600

                               -and –

                               MCKOOL SMITH, P.C.
                               Michael A. Morris  (admitted *pro hac vice* )
                               Jeanne Irving  (admitted *pro hac vice*)
                               865 S. Figueroa Street, Suite 2900
                               Los Angeles, California 90017
                               Telephone    (213) 694-1200
                               Facsimile     (213) 694-1234

                               *Co-Counsel to Plaintiff Steven D. Sass, as Plan Trustee of*
                               *the American Home Mortgage Plan Trust*