## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------- x   Chapter 11
In re:                                                        :
                                                              :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                        :
a Delaware corporation, et al.,[1]                            :
                                                              :   Jointly Administered
                                                              :   Ref/ Docket No. 10184, 10183 & 10182
                                   Debtors.                   :
                                                              :
------------------------------------------------------------- x
```

### Claimant's Opposition to The Plan Trustee's Objections to Administrative Claims Numbered 10870, 10875, and 10887

1.

Comes now Claimant, Hussain Kareem, enters his Opposition to the

Plan Trustee's Objections to Administrative Claim and contemporaneously

files his notice of requested discovery for interrogatories and production of

documents pursuant to the Federal Rules of Evidence and under the Federal

Rules of Civil Procedures and applicable Federal Bankruptcy Rules.

2.

Counsel for the Plan Trustee, provided  information which, if true,

validates the Claims brought into this proceeding for Breach of Contract,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

10238
11/14/2011

Breach of Fiduciary Duty, failure to disclose, unjust enrichment and other

unfair and deceptive business practices under applicable Georgia laws.

3.

The information was offered during the course of conversations by the

law firm of **YOUNG CONAWAY STARGATT & TAYLOR, LLP,**

**counsel for The Plan Trustee.** The information about the Trust contradicts

statements made in the Objections to Administrative Claims 10870, 10875

and 10887 paragraph 12 on page 6. Other interested parties, namely the

"New Loan Servicer" American Home Mortgage Servicing , Inc.

('AHMSI'), did not deny that they had identified another Mortgage Backed-

Security Trust ('MBST') in the U.S. District for the Northern District of

Texas, Case No. 3:10-CV-00762 and during the Department of H.U.D.

Office of RESPA investigation.

Extracted statements from the documents presented to Mr. Kareem are

the key to a pattern of deception that must be determined in this contested

matter. The statements below form the basis for more discovery and the

impact of his contractual rights and damages, as follows:

4.
**[Extracted from Proposed Settlement]**

**Relevant Background**

F. In May 2006, Mr. Kareem applied for a cash-out refinance on his
home through American Home Mortgage Corp. (d/b/a American
Brokers Conduit)[2].

G. On July 7, 2006, Mr. Kareem closed on his loan (the "Kareem
Loan") in the amount of $159,200.00. The Kareem Loan was
secured by the property located at 2197 Carlysle Creek Drive,
Lawrenceville, Georgia, 30044 (the "Kareem Property"). AHM
SV was servicer of the Kareem Loan [001350490].

H. On July 28, 2006, the Kareem Loan was sold to securitization trust
entitled AHWL06-163 (the "Trust").[3]

I. On October 30, 2007, the Bankruptcy Court entered an order (the
"Servicing Sale Order") approving the Debtors' sale (the "Sale")
of the mortgage servicing business to AH Mortgage Acquisition
Co.[4], Inc. (now known as American Home Mortgage Servicing,
Inc., "AHMSI") [D.I. 1711]. Following the final closing of the

---

[2] The loan transaction was known as a "limited cash-out" that less than $2500.00 was taken out of the equity of his home. The primarily purpose of the transaction was for rate and terms. "American Business Conduit" was a brand name used by American Home Mortgage Corp. to originate the loan. Later, AHMC acted as the Sponsor of the MBST under a planned Prospectus and Pooling and Servicing Agreement (See Exhibit 100 Securitization Chart). This trust no longer exists and failed to be become a statutory entity.

[3] During a U.S. HUD, Department of RESPA investigation for transfer of notice violation, American Home Mortgage Servicing', Inc. "the New Loan Servicer" revealed that the Mortgage-Backed -Security Trust was AHM 2006-3. This has been confirmed by a Securitization audit through Bloomberg and the Security and Exchange Commission database. This is materially significant due to binding contract covenants under Section 20 of the Security Deed and by Federal law which provided that it is mandatory for the Lender to notify Mr. Kareem within 30 days. Under 12 USC §2605 (a-c) and under 24 C.F.R. 3500.21(d) the transfer of Master Servicer should have been made. The underlying Note has an electronic CUSIP No. 0660265UAA8. Therefore the instrument was changed into a shareable stock certificate undisclosed to the Mortgagor.

[4] AH Mortgage Acquisition Co., the purchaser of asset from the Bankruptcy Court, conveniently changed or adopted the "New" name of AHMSI, but its registration is in California. This helped formulate a deceptive plan to service loans under the pretext and confusion that AHMH and its subsidiaries were still in the business of servicing loans. No notice of judicial ongoing dissolution proceedings was given to Mr. Kareem.

Sale on April 11, 2008, the Kareem Loan has been serviced by
AHMSI.

J.  In January 2011, Mr. Kareem filed two (2) separate proofs of
claim in these chapter 11 cases, which are identified by the claims
agent as claims 10870 and 10875.  Subsequently, Kurtzman
Carson Consultants ("KCC") (not the claims agent retained in
these cases) forwarded a proof of claim it received from Mr.
Kareem to Epiq Solutions, which was provided a claims number
of 10887 (together with claims numbered 10870 and 10875, the
"Kareem Claims").  Each of the Kareem Claims asserts a secured
claim in the amount of $200,000 and an unsecured claim in the
amount of $50,000 against AHM Holdings.[5]

K.  On January 20, 2011, Mr. Kareem filed his *Motion for Entry of
Administrative Claim with Brief in Support* [D.I. 9692] (the "First
Administrative Claim Motion") requesting allowance of an
administrative claim.  In the Kareem Motion, Mr. Kareem
requests allowance of an administrative claim in the amount of
$19,175.71, exclusive of interest.

---

[5] Mr. Kareem duly filed a notice into the court with an Exhibit showing U. S. Postal Service
Delivering delays. That the winter storm in Delaware created delays in delivering the first notice.
How documents were forwarded to Kurtzman Carson Consultants ("KCC") is unknown. The
Certificate of Service on the Documents do not support that Mr. Kareem sent anything to KCC.
Exhibits show that both claims were the post marked dates prior to January 11th, 2011. The
second Claims was sent as an attempt to confirm that the claim had been received and to get an
acknowledgement that the documents were not mishandled due to the bar date of January 2, 2011.

L. On or about August 12, 2011, Mr. Kareem filed his *Motion for Judgment as a Matter of Law of Administrative Claim Entered* [D.I. 10148] (the "Second Administrative Claim Motion, and together with the First Administrative Claim Motion, the "Kareem Motions").

5.

**Court Action Did Not Include AHMH or its Subsidiaries**

Notwithstanding that Mr. Kareem entered into this case to meet the final bar date, Claimant has been asserting his rights against known misconduct of alleged successors-in-interests. They are not successors-in-interests to AHMH. These other entities were made business affiliates and agents after the loan closing. AHMH had knowledge of this and allowed the third parties to continue to pursue payments and his property without any legal rights.

Across the country, court records are flooded by the painful national disaster that deceptive lending practices, coupled with deceptive loan servicing practices and fraud are rampant. These material facts are common knowledge and has been supported by Congressional Hearings through the Interagency Foreclosure Review Reports and Federal Consent Orders published on April 13, 2011 (See OCC website  Exhibit 200 New Foreclosure Appeals Announced by Feds).

6.

Mr. Kareem's claims are about Defaults and Contract Breaches made by AHMH in which many occurred prior to the HUD Investigation or any court action. In good faith he has been trying to get to the bottom of the unfair- predatory lending  and deceptive business practices made by AHMH.

**7.**

AHMH failed to adhere to binding performances in the contracts. Insolvency proceedings does not shield the failures. Insolvency proceedings settles the issue that AHMH stopped performing under the contract. What is left after the commencement of dissolution is to determine who has been harmed and by what extent of the damaged?

Claimant enumerates failures by AHMH includes, but are not limited to the following:

1. Contractual Performance Covenants by AHMH to the Note or Security Instrument were suspended. Examples: giving of Notice to Borrower under Section 8 of the Note and Section 15 of the Security Instrument.
2. Under Section 22 of the Security Instrument, when AHMH commenced in a judicial proceeding , without notifying the Borrower was a violation of requirements  under section 15 of the same instrument and under Section 8 of the Promissory Note.
3. AHMH failed to communicate , evidence shows that they received the TILA rescission demand), but elected not to respond in the 20 days required under Federal Law. AHMH made no attempt to unwind the transaction and return the borrower to his *status quo ante*. This unwinding procedure is settled under TILA 15 U.S.C. §§1635 through 1640, so that, the borrower can tender the payoff.

4. AHMH's employee, LISA FURCO endorsed the note on the face of the instrument, constituting an accommodation endorsement and cause for discharge of the maker's debt obligation[6].

5. AHMH never disclosed that securitization would bind the property over to another Note Holder, a Custodian of the Mortgage-Backed-Security Trust (MBST) or that the instrument would be used in an unauthorized manner

6. AHMH never disclosed or noticed that the Master Servicer of the MBST was not a subsidiary of itself. The deceit occurred upon entry of the loan into the Pooling and Servicing Agreement as noted by counsel on or about July 28, 2006. This was within 21 days of closing. This was apparently an anticipated undertaking and may be determined as a RESPA transfer notice violation[7]. As of July 28,

---

[6] See *Bank of the University v. Tuck*, 101 Ga. 104, 111 (28 SE 168), where the action was between a bank, as pledgee of a note which had been indorsed to it by the payee, and the maker, the court reiterated: "*It [the bank] being a pledgee for value of the note, and the money having confessedly not been paid to it, but to the original payee, it follows that to excuse the maker from liability to the pledgee, he is bound to prove the agency of the person to whom he paid the money, and the competency of that person for and on behalf of the bank to receive it.*"[emphasis applied]

[7] Under 24 C.F.R. § 3500.21. Mortgage servicing transfers;

(a) Definitions. As used in this section: *Master servicer* means the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer.

*Subservicer* means a servicer who does not own the right to perform servicing, but who does so on behalf of the master servicer.

*Mortgage servicing loan* means a federally related mortgage loan, as that term is defined in § 3500.2, subject to the exemptions in § 3500.5, when the mortgage loan is secured by a first lien.

Debtors are not exempted under 24 C.F.R. § 3500.21 (d) [which provides in relevant part] Notices of Transfer; loan servicing The following transfers are not considered an assignment, sale, or transfer of mortgage loan servicing for purposes of this requirement **if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due:** and under subsection,

2006, The Master servicing function was not held by AHMH or its entities.

7. AHMH sold or deposited Claimants Promissory Note into a bank or investment facilities. This has two legal ramifications. (A) Under Georgia's Banking laws OCGA 7-6A-2(6) provides that a purchaser, assignee or transferee is not the Creditor over Mr. Kareem's loan. The MBST nor any of its affiliates or agents can thereafter act like Creditors for enforcement purposes. (B) The legal definition under Georgia Law forbades using the Promissory note as a depositable instrument under OCGA 11-9-102(64). (C) The note is altered and forever more has the electronic markings of the CUSIP identifying the original loan number. It is to be determined if this addition of letters or numbers alters the instrument and is eligible for discharge under the Georgia's Commercial Code OCGA 11-3-407.

8. All of the above AHMH Breaches occurred before any payment concerns were raised by the "New" Loan Servicer, who came into the picture on or about April 7, 2008.

9. These are not preclusionary issues with respect to AHMH, because the U.S. District Judge did not allow AHMH to be brought in as a party of interest (See Exhibit Order 13)and the Plaintiff amended

_____

(C) Transfers between master servicers, where the subservicer remains the same.. In the instant action, Claimants espouses that the above exemptions do not apply for reasons opined:

1. The subservicer, the "New" AHMSI owned by AH Mortgage Acquisition Co., is not the same legal entity as AHM SV, the original subservicer under the Prospectus and PSA. There is no evidence that the MBST filed a change with the SEC to this effect. In fact, the MBST filed a Form 15 to the SEC showing that the MBST ceased to exist (See Exhibit 300).

2. The Loan number and addressed of location did changed as mentioned above. The original loan number remains not referenced by the "New" Loan Servicer (See Exhibit D2).Notwithstanding, HUD investigation issued a right to sue on this violation. AHMSI never sought to oppose, vacate or amend the RESPA findings issued by Ivy Jackson ( See Exhibit D Letter RESPA Case No. 09-1699).

his petition not to prosecute AHMH. The District case for all practical purposes is moot on the issue of AHMH.

10. Predatory lending claims exist under the negative amortization product, failure on Annual Percentage Rate calculation and questionable alteration of documents . The Disclosure and Loan performance were not accurately described by AHMH as required under applicable laws (See APR WIN 6. 2.0 APR Calculation done through the Office of Comptroller of Currency).[8]

**8.**

AHMH insolvency status was made known to the Borrower after AHMH had been summoned and served. On or before, January 2010 Counsel representing the Debtors filed a Suggestion of Bankruptcy on Behalf of AHMH (See Doc No. 13) Federal Stay for Bankruptcy proceeding was granted and the case was transferred and proceeded in the U.S. District Court in the Northern District Of Texas Case No. 3:10-CV 00762. There was no attempt to bring AHMH into the District Court action after this fact was made known. The case proceeded with the remaining Defendants.

**9.**

There remained plenty of deceptions and torts by the hands of "the New" AHMSI and MERS by falsely purporting that they were successors-in-interests to AHMH while AHMH was insolvency proceedings. The third-parties hid and concealed the affect of the securitization had on Mr.

---

[8] Claimant has ordered a more in-depth forensic audit by independent auditors to show the extent of harm. The findings would be applicable under TILA and RESPA violations. Any statements or findings by counsel for the Debtors is unverified. They have no personal knowledge or professional knowledge to testify about the transaction with certainty. If there is a claim that they are expert witnesses, then they shall have to commit themselves to cross-examination.

Kareem's contract rights. The fundamental question and his right to know

who is benefitting from his mortgage payments[9] were unanswered.  Mr.

Kareem is not purporting that securitization is illegal, but concealing the

material facts with respect to the Note Holder Status and the  knowledge of

who the Master Servicer is created confusion and deceptive business

practices.

### 10.

Failing to pass on who the Note Holder is a violation under the

Shelby-Boxer Amendment of the Truth-in-Lending Disclosure Section 1035

made effective since January, 2010.

It is not conjecture that if the Holder of the Note was the Custodian of

the MBST (See Exhibit 200 Securitization Chart). AHMH had responsibility

and first-hand knowledge to convey this to the Mortgagor upon receiving a

claim for rescission under the contract terms. To go silent is illegal and

breaks the contract terms. The failure to give notice is a determinable issue

of fact.

### 11.

Counsel stated with respect to the rescission demand that AHMSI

contacted Mortgagor and provided their opinion about the right to rescind

---

[9] Under Georgia's Trade Practices O.C.G.A. §10-1-372 (2010) provides:
(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
(b) In order to prevail in an action under this part, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

the loan. <u>AHMSI is not t the Assignee under 15 U.S.C .§1641 (c )</u> with all

the liabilities as the original lender. Nor has the "New AHMSI" claimed to

be the Assignee, nor have they produced agreements from the MBST that

they were agents to the Master Servicer. These are issues of fact yet to be

determined in greater details.

12.

### Loan Servicing Rights: Duty of Payor/Maker to Know who is the Lawful Payee

The Lender's action to not disclose their back door dealings is at their

discretion until it creates conflict of interests or violations under applicable

laws.  In a relevant case law, C. W. GROOVER v. Erick PETERS 231 Ga.

531 (1973), 202 S.E.2d 413, the Georgia Supreme Court opined :

*"that the borrower must be as careful in repaying the debt as the lender presumptively was in making the loan. "*

The relatively simple decision follows:

*"The maker of a negotiable note and security deed must determine at the time of payment whether the payee is the holder of the instrument or the authorized agent of the holder in order to protect himself against liability for double payment. If the original grantee has assigned the instrument to another, who is  a holder in due course, <u>the burden rests with the maker to determine same and pay only the holder or his authorized agent</u>... The long and short of the matter is that the borrower must be as careful in repaying the debt as the lender presumptively was in making the loan. "* [emphasis added].

Thus, by the precedent ruling, it is inferred that every borrower in the

state of Georgia should be entitled to question and demand from the

transferee, assignee and servicers, the necessary documents, data, and

evidence of their affiliations and relationships.  Prudence requires the

payor/maker to meet the requirements for "the borrower must be as careful

in repaying the debt as the lender presumptively was in making the loan!" [10]

13.
## Misdirecting Default Toward Claimant

Claimant fully incorporated in paragraphs 1 through 12, supra.

Counsel has made statements that alleges that the Mortgagor missed or

delinquent payments are the source of his own complaint.  Counsel opined

from excerpted statement to this court, with the obvious intent to divert

blame of the breaches.  The relevant excerpted statement is as follows:

*"In or about July 2008, Mr. Kareem ceased making timely payments on the
Kareem Loan. Upon information and belief, no payments have been made on
the Kareem loan for months commencing July 1, 2009 to present."*

Claimant feels that the above statement is inaccurate and counsel has

not presented a preponderance of evidence to come to a legal conclusion on

this issue. This statement should be stricken from the record for several

reasons:

_____

[10] It is well settled that payment of a promissory note to a person not in possession of it is
at the peril of the payer. Eastern Acceptance Corporation v. Henry, D.C. Mun.App., 62
A.2d 309, citing Davis v. Casey, 70 App.D.C. 27, 103 F.2d 529. To this rule there is an
exception when "the conduct and course of dealings of the holder are such as to engender
in the mind of the payer a justifiable belief that the payee or the party receiving the
money is the agent of the holder for that purpose." Sherrill v. Cole, 144 Okl. 301, 291 P.
54, 55.[2] This exception was recognized in Davis v. Casey, supra, but there it was held
that there was no "holding out of agency which might have misled the defendants." [70
App.D.C. 27, 103 F.2d 534.] [emphasis added].

12

A. The statement is not accompanied by a verification or affidavit.
B. Information and belief is hearsay and without personal knowledge. What authenticated information would warrant for Counsel to make this "wild" allegation? Is counsel referring to a partial Bank Statement Report issued by Bank America that shows some of my payments?
C. Has Counsel failed to consider that payments were possibly made on behalf of the Mr. Kareem or that other payments have come by wire transfer or by other means?
D. Counsel is completely ignoring AHMH's duty and responsibilities and abandonment of the note. AHMH has not sought to accelerate an indebtedness as required under Security Instrument covenants Section 22 Acceleration Remedies. So, who is benefitting or have been harmed from any payments, late or otherwise not made by Mr. Kareem?
E. Was the MBST assets to be made a part of the ongoing insolvency case of AHMH? If yes, then how can third parties continue their billing and servicing practices affecting the legitimate rights of the mortgagor without full disclosure of their legal standing?
F. If the MBST is dissolved, then who has legal standing against the promissory notes? Which the Stock Certificates is tied to Mr. Kareem's Note?
G. Has Standard & Poors downgraded the MBST due to Mr. Kareem's asset performance?
H. If Mr.Kareem elects not pay mortgage payments to agents of the MBST, what law or contract has he broken?
I. Mr. Kareem is following the law and legal advice as espoused by the Supreme Court of Georgia as stated in section 12, supra. He has already documented some overpayments given to third parties, who have not properly identifying themselves or their contractual rights to bill him.

Claimant objects to and opposes all inferences to the above statements

made by the Counsel for the Debtors and the Plan Trustee.


**Counsel for the Plan Trustee have failed to find Facts Consistent with Deceptive and Predatory Lending Practices:**

Claimant brought action by notice pleading into this Court . Now,

enumerates other discoverable defaults and violations made by AHMH as,

follows:

1. The Office of the Comptroller of Currency APR calculator Apr WIN – Version 6.2.0 finds that the APR was overstated.  A more extensive independent audit is forthcoming. The findings points to the fact that federally required disclosures given to Mr. Kareem were inaccurate (See Exhibit 400 APR Disclosure Documentation).

2. Because the Product offered was a Negative Amortization with an Interest only option payment plan. The Truth-in Lending Disclosure supplied at closing did not properly account for the pay-option scenarios given to Mr. Kareem.  Another audit assessment will demonstrate and factor the worst case scenario of the loan performance. AHMH did not project to Mr. Kareem any worst case scenario with the Pay Option Loan Product. Disclosed were only examples and samples ( See Exhibits G-G4 Final Truth-In-Lending Statement, illustration 1 & 2  purportedly included and signed by him on  07/07/06). Borrower specifically notices that the Arabic numerals by his signature are not of his hand writing).

3. The "new" Loan Servicer AHMSI, gave the Borrower a Copy of the Note whereas the on page 6 of 6, Lisa Furco of American Business Conduit endorsed the note[11]. Noticeably, the same version of page 6 of 6 to the Promissory Note was not supplied by Debtors' Counsel.

4. The loan application, disclosures and the closing were apparently conducted on the same day. Noticeably, the interest rate of 1.9%  was promised on the face of the loan application and Lindel Strong of Global Mortgage never signed to witness the loan application (See Exhibit J pages 1 and 3). The Right to Cancel (See Exhibit H) is a typed-in and not hand written [inconsistent] with other documents noticeably hand dated. Claimant has an his issue of authentication of these documents for reasons asserted. These are questions of RESPA settlement breaches.

5.  Presenting documents and signing them on the same day may be considered a predatory lending practice. There must be an excusable reason that these documents were not advanced at least 72 hours prior to closing.

**14.**

**Relief Sought**

---

[11] See footnote 10 Id.

For reasons fully incorporated above including citation of authorities contain herein, Claimant has a legal basis to support that his loan was discharged and that AHMH has created a "cloud" to harm him by their dilatory and deceptive business practices[12].

Claimant believes at trial damages may be assessed more than the amount that claimant has sought and possibly extended upon individuals.

Claimant seeks to move these proceedings by adversarial complaint by leave of the Court with appropriate filing into the U.S. Bankruptcy Court. This request was made conditional in Section of his Motion for Judgment As a Matter of Law, if the Debtors attempted to deny or object the motion.

Claimant opposes any dismissal of claims, as there are genuine issues of fact that must go before the trier of fact by jury demand.

Claimant seeks to mitigate AHMH damages toward me by issuing to me a "Satisfaction and Release of Lien Obligation", as fully described in the attached verification contained on pages 16 and 17 *ante*.

**EXECUTED THIS DAY ON NOVEMBER 10, 2011**

/S/

Hussain Kareem, Pro Se

---

[12] O.C.G.A. §10-1-372 (2010) When trade practices are deceptive; common-law and other remedies unaffected
(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
(b) In order to prevail in an action under this part, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

## CERTIFICATE OF SERVICE

I certify that on November 10, 2011 I filed the foregoing document with the
opposing counsel filed electronically with electronic signature and by certified mail,
prepaid first class mail without using the electronic email of the counsel *to the
following:*

Counsel for Debtors:
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. BEACH
Patrick A. Jackson
1000 West St., 17th Floor
P.O. Box 391
Wilmington, DE 19801
Tel: (302) 571-6600
Counsel for the Plan Trustee:
**HAHN & HAESSEN LLP**
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, N.Y. 10022
Tel: (212) 478-7200
**The Plan Trustee:**
Steven D. Stass
AHM Liquidating Trust
P.O. Box 10550
Melville, NY 11747

Mathis K. Wright, President
NAACP CHAPTER #5160
P.O. BOX 1296
AMERICUS, GA 31709

**EXECUTED THIS DAY ON
NOVEMBER 10, 2011**

/S/

Hussain Kareem, Pro Se
2197 Carlysle Creek Drive
Lawrenceville, GA 30044
~~Phone Line~~: Phone Line

19