## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re:

AMERICAN HOME MORTGAGE HOLDINGS, INC.,
a Delaware corporation, et al.,[1]

Debtors.

------------------------------------------------------------------ x

Chapter 11

Case No. 07-11047 (CSS)

Jointly Administered

Ref. Docket No. 10182

## NOTICE OF FILING OF REDACTED CONFIDENTIAL EXHIBITS TO THE PLAN TRUST'S OMNIBUS OBJECTION TO (I) MOTION FOR JUDGMENT AS A MATTER OF LAW OF ADMINISTRATIVE CLAIM ENTERED, (II) MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM WITH BRIEF IN SUPPORT; AND (III) CLAIMS NUMBERED 10870, 10875 AND 10887 FILED BY HUSSAIN KAREEM

TO:   (I) THE U.S. TRUSTEE; (II) HUSSAIN KAREEM; AND (III) ALL OTHER PARTIES REQUIRED TO RECEIVE SERVICE UNDER LOCAL RULE 2002-1(b).

**PLEASE TAKE NOTICE** that on September 30, 2011 the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed the **PLAN TRUST'S OMNIBUS OBJECTION TO (I) MOTION FOR JUDGMENT AS A MATTER OF LAW OF ADMINISTRATIVE CLAIM ENTERED, (II) MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM WITH BRIEF IN SUPPORT; AND (III) CLAIMS NUMBERED 10870, 10875 AND 10887 FILED BY HUSSAIN KAREEM** [D.I. 10182] (the "Kareem Objection"), which attached multiple exhibits that contained Mr. Kareem's

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

personally identifiable information (the "Confidential Exhibits"). You were already provided a

copy of the Kareem Objection.

**PLEASE TAKE FURTHER NOTICE** that the Plan Trustee sought to maintain

the Confidential Exhibits under seal [D.I. 10183] (the "Seal Motion"). At the hearing to

consider the Seal Motion, the Court ruled that the Confidential Exhibits should be filed in

redacted form.

**PLEASE TAKE FURTHER NOTICE** that the Plan Trust has filed the attached

Confidential Exhibits consistent with the Court's ruling.

Dated: January 6, 2012          YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
       Wilmington, Delaware

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Patrick A. Jackson (No. 4976)
Michael S. Neiburg (No. 5275)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*

**Exhibit 1**

**Exhibit A**

**Loan Application**

066585.1001

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

X _Hussain Vae_ _____  
Borrower

_____  
Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA    ☒ Conventional    ☐ Other (explain): | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|
| | ☐ FHA    ☐ USDA/Rural Housing Service | | | |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate    ☐ Other (explain): |
|---|---|---|---|---|
| $ 159,200.00 | 1.900 % | 360 | | ☐ GPM    ☒ ARM (type): (RM) 1 MO.MTA 110%cap |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| | No. of Units |
|---|---|
| Subject Property Address (street, city, state, & ZIP) | 1 |
| 2197 Carlyale Creek Drive, Lawrenceville, GA 30044 | |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE EXHIBIT A AS ATTACHED HEREIN AND MADE A PART HEREOF | 1998 |

| Purpose of Loan | ☐ Purchase    ☐ Construction | Property will be: |
|---|---|---|
| | ☒ Refinance    ☐ Construction-Permanent    ☐ Other (explain): | ☒ Primary Residence    ☐ Secondary Residence    ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☒ made ☐ to be made |
|---|---|---|---|---|
| 1999 | $ 145,000.00 | $ 152,000.00 | CASH OUT | EXTERIOR & INTERIOR UPGRADES Cost: $ 21,000.00 |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | | ☒ Fee Simple    ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) |
|---|
| |

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
| Husnain Kareem | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School /00 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| ████████ | | | | | | | |

| ☐ Married    ☐ Unmarried (include single, divorced, widowed)    ☐ Separated | Dependents (not listed by Co-Borrower) no. 0    ages | ☐ Married    ☐ Unmarried (include single, divorced, widowed)    ☐ Separated | Dependents (not listed by Borrower) no.    ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)    ☐ Own    ☒ Rent    /00    No. Yrs. | Present Address (street, city, state, ZIP)    ☐ Own    ☐ Rent    No. Yrs. |
|---|---|
| 2197 Carlyale Creek Drive Lawrenceville, GA 30044 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|
| | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)    ☐ Own    ☐ Rent    No. Yrs. | Former Address (street, city, state, ZIP)    ☐ Own    ☐ Rent    No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer    ☒ Self Employed | Yrs. on this Job 5/00 | Name & Address of Employer    ☐ Self Employed | Yrs. on this Job |
| EMD/MERCANT SERVICES | Yrs. employed in this line of work/profession /00 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| | | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer    ☐ Self Employed | Dates (from - to) | Name & Address of Employer    ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer    ☐ Self Employed | Dates (from - to) | Name & Address of Employer    ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

DOC#:333681  
Freddie Mac Form 65 7/05  
Fannie Mae Form 1003 7/05  
VMP®-21N (0507)  
Page 1 of 4  
VMP Mortgage Solutions, Inc. (800)521-7291  
UA31 0305.01

APP # 0001350490    07/07/2006 11:18 AM

Initials: _H.K._

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | $ | $ |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | |
| Dividends/Interest | | | | Real Estate Taxes | | |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income" below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ | $ |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

| Describe Other Income | Notice: | Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan. | Monthly Amount |
|---|---|---|---|
| B/C | | | $ |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also. Completed [ ] Jointly [X] Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Description | | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| Cash deposit toward purchase held by: | | Name and address of Company | $ Payment/Months | |
| | | WASHINGTON MUTUAL FA | | |
| List checking and savings accounts below | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| boa | | | | |
| | | Name and address of Company | $ Payment/Months | |
| | | WASHINGTON MUTUAL FA | | |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| boa | | | | |
| | | Name and address of Company | $ Payment/Months | |
| | | EMC MORTGAGE | | |
| Acct. no. | $ | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Name and address of Company | $ Payment/Months | |
| | | BARCLAYS BANK DELAWA | | |
| Acct. no. | | | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | |
| | | CAPITAL ONE | | |
| Stocks & Bonds (Company name/number & description) | $ | | | |
| | | Name and address of Company | $ Payment/Months | |
| | | MEDICAL PAYMENT DATA | | |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Payment/Months | |
| | | BENEFICIAL/HFC | | |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: A/CS/SM Total pymt. | | |
| | | Job-Related Expense (child care, union dues, etc.) JR Exp Combined Total pymt. | | |
| Other Assets (itemize) | $ | | | |
| | | Total Monthly Payments | | |
| Total Assets a. | $ | Net Worth (a minus b) ▶ $ | Total Liabilities b. | $ |

DOC #:333682
Freddie Mac Form 65 7/05
Fannie Mae Form 1003 7/05
CMD-21N  (0507)

*H.K.*

Page 2 of 4

APP @ 0001350490    07/07/2006 11:18 AM    Initials: ___

## VI. ASSETS AND LIABILITIES (cont'd)

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 2157 Carlyele Creek Drive Lawrenceville, GA 30044 | N | | | | | | |
| 1921 Fisher Dr Stockbridge, GA 30281 | R | | | | | | |
| Totals | | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s).

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | |
| e. Estimated prepaid items | |
| f. Estimated closing costs | |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | To |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own — principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors, or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date |
|---|---|
| X  *Hussain Ka* | 7/07/06 |

| Co-Borrower's Signature | Date |
|---|---|
| X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | I do not wish to furnish this information. | CO-BORROWER | I do not wish to furnish this information. |
|---|---|---|---|
| **Ethnicity:** Hispanic or Latino  [X] Not Hispanic or Latino | | **Ethnicity:** Hispanic or Latino  Not Hispanic or Latino | |
| **Race:** American Indian or Alaska Native / Asian / [X] Black or African American / Native Hawaiian or Other Pacific Islander / White | | **Race:** American Indian or Alaska Native / Asian / Black or African American / Native Hawaiian or Other Pacific Islander / White | |
| **Sex:** [X] Female  Male | | **Sex:** Female  Male | |

| To be Completed by Interviewer | | |
|---|---|---|
| This application was taken by: | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
| Face-to-face interview | Lindel Strong | Global Mortgage |
| [X] Mail | Interviewer's Signature | 4005 Wetherburn Way |
| Telephone | | Suite F |
| Internet | Interviewer's Phone Number (incl. area code) | Norcross, GA 30092 |

## CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION

| Use this continuation sheet if you need more space to complete the Residential Loan Application.   Mark B for Borrower  or C for Co-Borrower. | Borrower: Hussain Kareem | Agency Case Number: |
|---|---|---|
| | Co-Borrower: | Lender Case Number: |

| Additional Liabilities | Account # | Pat/Mon | Unpaid Bal |
|---|---|---|---|
| FIRST PREMIER BANK | | | |
| DELL FINANCIAL SVCS/ | | | |
| Total Printed Liabilities: | | | |

I/We fully understand  that  it is a Federal  crime  punishable  by fine or imprisonment,  or both, to knowingly  make  any false  statements  concerning  any  of the above  facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X *Hussain Ka* | Date 4/04/06 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

Page 4 of 4
APP # 0001350490          07/07/2006 11:18 AM

## Exhibit C

**HUD-1 Statement**



| A. Settlement Statement | U.S. Department of Housing and Urban Development | OMB No. 2502-0265 |
|---|---|---|

**B. Type of Loan**

| 1.☐ FHA   2.☐ FmHA   3.☒ Conv. Unins. | 6. File Number HO5-0716 | 7. Loan Number 0001350490 | 8. Mortgage Insurance Case Number |
|---|---|---|---|
| 4.☐ VA   5.☐ Conv. Ins. | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| HUSSAIN KAREEM 2197 CARLYSLE CREEK DRIVE LAWRENCEVILLE, GA 30044 | | AMERICAN BROKERS CONDUIT 225 TOWN PARK DRIVE, STE. 450 KENNESAW, GA 30144 |

| G. Property Location 2197 CARLYSLE CREEK DRIVE LAWRENCEVILLE, GA 30044 | H. Settlement Agent GA CLOSING ASSOC, INC.-MICHAEL C. OBERTONE, ESQ PC | |
|---|---|---|
| | Place of Settlement 3815 Presidential Parkway, Suite 100 Atlanta, GA 30340 | I. Settlement Date 07/07/05 DD: 07/12/05 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 4,273.30 | 403. | |
| 104. PAYOFF WAMU 0075472241 | 152,325.30 | 404. | |
| 105. PAY BENEFICIAL/HFC | 287.00 | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes           to | | 406. City/town taxes          to | |
| 107. County taxes              to | | 407. County taxes            to | |
| 108. Assessments               to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 156,885.60 | 420. GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 159,200.00 | 502. Settlement charges to seller (line 1400) | 0.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loans taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes           to | | 510. City/town taxes          to | |
| 211. County taxes              to | | 511. County taxes            to | |
| 212. Assessments               to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY / FOR BORROWER | 159,200.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 156,885.60 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 159,200.00 | 602. Less reduction amount due to seller (line 520) | |
| 303. CASH          TO   BORROWER | 2,314.40 | 603. CASH          TO   SELLER | 0.00 |

RESPA, HB 4305.2 - REV. HUD1 (3/86)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT
PAGE 2

File Number: HG5-0716

| L. SETTLEMENT CHARGES: | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ | @ = | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | P.O.C. | | |
| 801. Loan Origination Fee  % GLOBAL MORTGAGE | | 350.24 | |
| 802. Loan Discount  % | | | |
| 803. Appraisal Fee  to | | | |
| 804. Credit Report  to | | | |
| 805. Lender's Inspection Fee  to | | | |
| 806. Underwriting Fee  to | | | |
| 807. Assumption Fee  to | | | |
| 808. Processing Fee  GLOBAL MORTGAGE | | 495.00 | |
| 809. Tax Service Fee  AMERICAN BROKERS CONDUIT | | 92.00 | |
| 810. Flood Cert.  AMERICAN BROKERS CONDUIT | | 19.00 | |
| 811. GA Res Mtg. Fee  AMERICAN BROKERS CONDUIT | | 6.50 | |
| 812. COMMITMENT FEE  AMERICAN BROKERS CONDUIT | | 480.00 | |
| 813. BROKER FEE  GLOBAL MORTGAGE | | 1,000.00 | |
| 814. BROKER PREM. PD BY LENDER  PD BY AMERICAN BROKERS TO GLOBAL MTG. | 597.00L | | |
| 815. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest from  07/12/06 to 08/01/06  @$ 8.40 /day  20 day(s) | | 168.04 | |
| 902. Mortgage Insurance Premium  to | | | |
| 903. Hazard Insurance Premium  1 yrs. to  ALLSTATE | 614.00B | | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | |
| 1001. Hazard Insurance  mo. @$  / mo. | | | |
| 1002. Mortgage Insurance  mo. @$  / mo. | | | |
| 1003. City property taxes  mo. @$  / mo. | | | |
| 1004. County property taxes  mo. @$  / mo. | | | |
| 1005. Annual Assessments  mo. @$  / mo. | | | |
| 1006.  mo. @$  / mo. | | | |
| 1007.  mo. @$  / mo. | | | |
| 1008. Aggregate Reserve for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee  to | | | |
| 1102. Abstract or title search  to | | | |
| 1103. Title examination  to  GEORGIA CLOSING ASSOCIATES, INC. | | 150.00 | |
| 1104. Title Insurance binder  to | | | |
| 1105. Document preparation  to | | | |
| 1106. Notary fees  to | | | |
| 1107. Attorney's fees  to  MICHAEL O. OBERTONE, ESQ., P.C. | | 100.00 | |
| (Includes above item No:  ) | | | |
| 1108. Title Insurance  to  GCA AS AGENT FOR FIRST AMERICAN TITLE INC. | | 719.02 | |
| (Includes above item No:  ) | | | |
| 1109. Lender's coverage  175,120.00 — 719.02 | | | |
| 1110. Owner's coverage | | | |
| 1111. Courier Fee  GEORGIA CLOSING ASSOCIATES, INC. | | 45.00 | |
| 1112. Tax Search Fee  GEORGIA CLOSING ASSOCIATES, INC. | | 15.00 | |
| 1113. PAYOFF OVERNIGHT  GEORGIA CLOSING ASSOCIATES, INC. | | 15.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording fees  Deed $  ; Mortgage $  ; Releases $ | | | |
| 1202. City/county/stamps  Deed $  ; Mortgage $ | | | |
| 1203. State tax/stamps  Deed $  ; Mortgage $ 478.50 | | 478.50 | |
| 1204. | | | |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey  to | | | |
| 1302. Pest Inspection  to | | | |
| 1303. Record Documents  GEORGIA CLOSING ASSOCIATES, INC. | | 70.00 | |
| 1304. Record Satisfactions  GEORGIA CLOSING ASSOCIATES, INC. | | 20.00 | |
| 1305. QUITCLAIM DEED  GEORGIA CLOSING ASSOCIATES, INC. | | 50.00 | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | 4,273.30 | 0.00 |

## ACKNOWLEDGEMENT AND RECEIPT OF SETTLEMENT STATEMENT

LENDER: AMERICAN BROKERS CONDUIT                                    DATE: 07/07/06

PURCHASER/BORROWER: HUSSAIN KAREEM

SELLER:

PROPERTY ADDRESS: 2197 CARLYSLE CREEK DRIVE, LAWRENCEVILLE, GA 30044

Purchaser and Seller acknowledge that each has received, reviewed, and approved the entries appearing on the Settlement Statement, and each acknowledge receipt of a copy of same. Purchaser acknowledges receipt of a copy of the Truth in Lending Disclosures, if any, prior to consummation of the loan transaction. Purchaser further acknowledges receipt and disbursement on his behalf of the loan proceeds in full. Seller acknowledges receipt and payment in full of the proceeds due Seller from the settlement. Seller warrants the correctness of all payoff amounts for outstanding liens and encumbrances; if any deficiency occurs, Seller shall promptly remit the same to the settlement agent.

If the proration of taxes and assessments was made based on estimated amounts prior to receipt of current actual bills, Purchaser and Seller agree to adjust the prorations shown on the Settlement Statement between themselves when current actual bills are received. The payment of all outstanding taxes and assessments not paid at settlement are assumed by Purchaser.

Purchaser and Seller acknowledge that settlement agent and Lender make no representations as to the status of any outstanding or past due water, sewerage or other utility bills applicable to the property. The status of such items shall be determined by and are the responsibility of the Purchaser and Seller.

Purchaser and Seller agree that should any inadvertent errors or omissions later be discovered in any documents executed at settlement, they shall promptly execute such corrective documents and remit such sums as may be required to adjust or correct such errors or omissions.

Purchaser hereby acknowledges that a real property tax return and application for homestead exemption is required by law and is to be filed with the county tax collector in which the property lies, between January 1 and March 31 of the year immediately following settlement and that such filings are the sole responsibility of Purchaser. Seller warrants that all required tax returns and applicable exemption applications have been filed for the current tax year. Seller further agrees to reimburse Purchaser for any penalties caused by Seller's failure to file a proper and timely tax return.

As part of the consideration of this sale, the contract between the parties is by reference incorporated herein and made a part hereof; the terms and conditions contained therein shall survive the closing and shall not merge upon delivery of the Warranty Deed.

BORROWER'S MONTHLY PAYMENT:                          FIRST PAYMENT DUE:

| | | | |
|---|---|---|---|
| Principal and Interest | $ | 580.51 | September 1st, 2006 |
| Hazard Insurance | | 0.00 | |
| State and County Taxes | | 0.00 | Payments made to: |
| City Taxes | | 0.00 | AMERICAN BROKERS CONDUIT |
| FHA MIP or PMI | | 0.00 | |
| Other | | | 225 TOWN PARK DRIVE, STE. 450 |
| TOTAL: | $ | 580.51 | KENNESAW, GA 30144 |

_____          _Hussain Kew_
                                    HUSSAIN KAREEM
SELLER                                             PURCHASER/BORROWER

_____          _____
SELLER                                             PURCHASER/BORROWER

_____          _____
SELLER                                             PURCHASER/BORROWER

GEORGIA CLOSING ASSOCIATES, INC./
MICHAEL C. OBERTONE, ESQ., P.C.

BY: _____
        Settlement Agent

**Exhibit D**

**Adjustable Rate Note**

066585.1001

**ADJUSTABLE RATE NOTE**

**FIRST FIVE YEAR FIXED PAYMENT – 12MTA**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 110.000% OF THE ORIGINAL AMOUNT (OR $ 175,120.00 ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

| July 7, 2006 | ATLANTA | Georgia |
|---|---|---|
| | (City) | (State) |

2197 Carlysle Creek Drive, Lawrenceville, GA  30044
(Property Address)

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 159,200.00 plus any amounts added in accordance with Section 4 (G) below, (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Brokers Conduit
. I will make all payments under this Note in form of cash, check or money order. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

**2. INTEREST**

Interest will be charged on unpaid Principal until the full amount has been paid. I will pay interest at a yearly rate of 1.900% until July 31, 2006 , and the initial monthly payment provided for in Section 3(B) of this Note will be based on this rate (the "Initial Rate"). Commencing August 1, 2006 , I will pay interest at a yearly rate of 6.832% (the "Subsequent Rate"). Thereafter, the interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the interest rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay Principal and interest by making payments every month. In this Note, unless otherwise specified "payment" refers to the Principal and interest payment only, although other charges such as taxes, insurance and/or late charges may also be payable with the monthly payment.

I Will make my monthly payments on 1st day of each month beginning on September, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on August 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at PO Box 660029, Dallas, TX  75266-0029
, or at a different place if required by the Note Holder.

DOC #:944866          APPL #:0001350490                                    Rev. 1/27/06

Page 1 of 6                                     ARM-2032N(MULT) (0106)

*N.L.*

**(B) Amount of My Initial Monthly Payments**

Each of my monthly payments until the first Payment Change Date will be in the amount of U.S.$ 580.51 _____, unless adjusted at an earlier time under Section 4(H) of this Note.

**(C) Payment Changes**

My monthly payment will be recomputed, according to Sections 4(E)(F)(G)(H) and (I) of this Note, to reflect changes in the Principal balance and interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the ___1st___ day of __September___, __2006___, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as the 15 days before each interest rate Change Date is called the "Current Index". If the Index is no longer available, the Note holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _____ Two and 400 Thousandths _____ percentage points __2.400___ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than __Nine and 950 Thousandths_____ percentage points __9.950___ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective commencing _____September 1, 2011_____, (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected principal balance I am expected to owe as of the Payment Change Date in full on the Maturity Date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date. My payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of this Note.

*H. K.*

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amounts of my new monthly payment, beginning with a Payment Change Date following the First Payment Change Date under Section 4(E), will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated Amortization**

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to _____110.000%__ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that __110.000%__ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___Five_____ anniversary of the due date of the first monthly payment, and on that same day every ___Five_____ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(K) Failure to Make Adjustments**

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.


**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will apply all of my prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

DOC #:944860                                      APPL #:0003350490                                      Rev 1/27/06

Page 3 of 6                                                                          ABM-2032N(MULT) (0105)

*H.K.*

My partial prepayment may have the effect of reducing the amount of my monthly payments, but only after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

### 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Miscellaneous Fees: I understand that the Note Holder will also charge a return item charge in an amount permitted and otherwise in accordance with Applicable Law in the event a payment that I make in connection with repayment of this loan is not honored by the financial institution on which it is drawn. Lender reserves the right to change the fee from time to time without notice except as may be required by law.

### 7. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once for each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 10 days after the date on which the notice is delivered or mailed to me (or, if the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation buys all or part of Lender's rights under the Security Instrument, in which case the notice will specify a date, not less than 30 days from the date the notice is given to Borrower).

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

### 8. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

DOC #:944869                      APPL #:0001350490                Rev 1/27/06

Page 4 of 6                      AHM-2032N(MULT) (0105)

*H. Ł.*

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety, or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower.

If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) the request to assume is made after one year following recordation of the Deed of Trust, (b) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (c) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument or other obligations related to the Note or other loan document is acceptable to Lender, (d) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (e) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption and Lender may increase the maximum rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written Assumption Agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay

DOC #:944670

APPL #:0001350490

Rev 1/27/06

AHM-2032N(MULT) (0106)

*H. K.*

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 12. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
Hussain Kareem                          -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                    -Borrower

_____ (Seal)                    _____ (Seal)
                                        -Borrower                                                    -Borrower

DOC #:944871                          APPL #:0001350490

Page 6 of 6                                               AHM-2032N(MULT) (0106)

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY: AMERICAN BROKERS CONDUIT

LISA FUNGO
ASST. SECRETARY

**<u>Exhibit E</u>**

**Adjustable Rate Rider**

**ADJUSTABLE RATE RIDER**

**FIRST FIVE YEAR FIXED PAYMENT – 12MTA**

THIS ADJUSTABLE RATE RIDER is made this _7th_ day of _July, 2006_ _____,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to_____
_American Brokers Conduit_____
(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:

_2197 Carlysle Creek Drive, Lawrenceville, GA  30044_____

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY
INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY
MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY
MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY
PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A
RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER
THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN
_110.000%_ OF THE ORIGINAL AMOUNT (OR $_175.120.00_ ).
MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE
NOTE AND RIDER.  A BALLOON PAYMENT MAY BE DUE AT
MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay
interest at a yearly rate of _1.900_ % until _July 31, 2006_ , and the initial monthly payment
provided for in the Note will be based on this rate.  Commencing _August 1, 2006_ , I will pay
interest at a yearly rate of _6.832_ %.  Thereafter, the interest rate I will pay may change in
accordance with Section 4 of the Note.

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

Page 1 of 5                                    AHM-2032R(Mult) (01/06)

Document # 944929/ Image: 944929.prn  App# 0001350490

*H.K.*

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates .

The interest rate I will pay may further change on the ____1st____ day of
____September, 2006____, and on that day every month thereafter. Each such date
on which my interest rate could change is called a "Change Date".

### (B) The Index

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Interest Rate Change

Before each Change Date, the Note Holder will calculate my new interest rate by adding
____Two and 400 Thousandths____ percentage points
____2.400____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

### (D) Interest Rate Limit

My interest rate will never be greater than ____9.950____ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

### (E) Payment Change Dates

Page 2 of 5

AHM-2032R(Mult) (01/06)

Document # 944930/ Image: 944930.prn    App# 0001350490

*H.K.*

Effective commencing ___September 1st, 2011_____, (the "First Payment Change Date") and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date. My Payments can change at any time, before or after the First Payment Change Date or any Payment Change Dates under Section 4(H) of the Note.

**(F) Monthly Payment Limitations**

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date following the First Payment Change Date under Section 4(E), will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the Principal Payment and does not apply to any escrow payments Lender may require under the Security Instrument.

**(G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated**

    **Amortization**

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the Maturity Date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

**(H) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to ___110.000%___ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___110.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid principal in full on the Maturity Date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

**(I) Required Full Monthly Payment**

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

**(J) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my

AHM-2032R(Mult) (01/05)

Document # 944931/ Image: 944931.prn  App# 0001350490

*H. K.*

monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

### (IC) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid "Principal."

## B.  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this

AHM-2032R(Mult) (01/05)

Document || 944932/ Image: 944932.prn  App# 0001350490

*H. K.*

Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.  Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

_____ (Seal)          _____ (Seal)
Hussain Kareem                   -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                        -Borrower

                                                 AHM-2032R(Mult) (01/06)

Document # 944933/ Image: 944933.prn  App# 0001350490

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 37 OF THE 7TH DISTRICT, OF GWINNETT COUNTY, GEORGIA, AND BEING LOT 68, BLOCK A OF CARLYSLE, UNIT FOUR, AS PER PLAT RECORDED IN PLAT BOOK 75, PAGE 97 OF GWINNETT COUNTY, GEORGIA, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

H.K.

## Exhibit G

**Final Truth-in-Lending Statement**

JUL-07-06  12:50  FROM-ABC                    770 580 0874      T-812  P.004/005  F-009

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

LENDER OR LENDER'S AGENT:  American Brokers Conduit
225 Town Park Drive Suite 450.
Kennesaw, GA  30144

☐ Preliminary    ☒ Final
DATE: 07/07/06
LOAN NO.:
Type of Loan: Conventional
APP NO.: 0001350490

BORROWERS:  Hussain Kareem

ADDRESS:  2197 Carlysle Creek Drive
CITY/STATE/ZIP: Lawrenceville, GA  30044
PROPERTY:  2197 Carlysle Creek Drive
Lawrenceville, GA 30044

| ANNUAL PERCENTAGE RATE  The cost of your credit as a yearly rate. | FINANCE CHARGE  The dollar amount the credit will cost you. | Amount Financed  The amount of credit provided to you or on your behalf. | Total of Payments  The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.014 % | $ 248,209.24 | $ 155,929.22 | $ 404,138.46 |

**PAYMENT SCHEDULE:**

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 44 | $580.51 | September 1, 2006 | 315 | $1,198.08 | May 1, 2010 |

DEMAND FEATURE: ☒ This loan does not have a Demand Feature.   ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE: ☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: 2197 Carlysle Creek Drive Lawrenceville, GA 30044

ASSUMPTION: Someone buying this property ☐ cannot assume the remaining balance due under original mortgage terms ☒ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $

PROPERTY INSURANCE: ☒ Property hazard insurance in the amount of $ 159,200.00 with a mortgage clause to the lender is a required condition of this loan. Borrower may purchase this insurance from any insurance company acceptable to the lender. Hazard Insurance ☐ is ☒ is not available through the lender at an estimated cost of N/A for a   year term.

LATE CHARGES: If your payment is more than 15 days late, you will be charged a late charge of 5.000 % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☐ may ☒ will not have to pay a penalty.
☐ may ☒ will not be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding nonpayment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.

I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Hussain Ka_ _____ 7/07/06
Hussain Kareem          BORROWER / DATE

_____ BORROWER / DATE

_____ BORROWER / DATE

_____ BORROWER / DATE

DOC #:060401 /.rev. 06/2005    APPL #:0001350490  LOAN #:0000000000
788 (0211)    VMP MORTGAGE FORMS - (800)521-7291
© 1999 CDF Systems, Inc.    Page 1 of 2    5/96

JUL-07-06   12:51   FROM-ABC                   770 580 9974        T-812   P.005/005   F-008

## DEFINITION OF TRUTH-IN-LENDING TERMS

### ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

### PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower. Non-inclusive examples of such charges are: Loan origination fee, "Points", or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

### FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

### AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate/Settlement Statement (HUD-1 or 1A). For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

### TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable) over the life of the loan.

### PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable) over the life of the loan. These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

788 (000)   1001 0003.00

DOC #:060402   APPL #:0001350490

**<u>Exhibit I</u>**

**Right to Rescind Notice**

**NOTICE TO CUSTOMERS REQUIRED BY FEDERAL LAW FEDERAL RESERVE REGULATION Z**
**NOTICE OF RIGHT TO RESCIND (GENERAL)**

**NOTICE OF RIGHT TO CANCEL**

Conventional                                        ACCOUNT NO.   0001350490
(Identification of Transaction)

**1. Your Right to Cancel**

You are entering into a transaction that will result in a (mortgage/lien/security interest) (on/in) your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

(1)   The date of the transaction, which is      July 7, 2006                  ; or
(2)   The date you received your Truth in Lending disclosures; or
(3)   The date you received this notice of your right to cancel.

If you cancel the transaction, the (mortgage/lien/security interest) is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the (mortgage/lien/security interest) (on/in) your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

**2. How to Cancel**

If you decide to cancel this transaction, you may do so by notifying us in writing, at
                American Home Mortgage
                520 Broadhollow Road
                Melville, NY 11747  Attn. Mail Stop 800

You may use any written statement that is signed and dated by you and states your intention to cancel, and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of
July 11, 2006     (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____      _____
SIGNATURE                                                DATE

The undersigned each acknowledge receipt of two copies of NOTICE of RIGHT TO CANCEL and one copy of the Federal-Truth-In-Lending Disclosure Statement.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

_Hussein Kareem_              07/07/2006      _____      _____
BORROWER/OWNER   Hussain Kareem      DATE      BORROWER/OWNER                DATE


_____      _____      _____      _____
BORROWER/OWNER            DATE      BORROWER/OWNER                DATE

DOC #:942349                      APPL #:0001350490
^-68 (7111)   6433 9713.01        12/97
VMP MORTGAGE FORMS - (800)521-7291