# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
----------------------------------------------- x
In re:                                          : Chapter 11
                                                :
AMERICAN HOME MORTGAGE                          : Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, et al.,[1] :
                                                : Jointly Administered
          Debtors.                              :
----------------------------------------------- x Ref. Docket Nos. 4828, 9636, 9637
```

## OBJECTION OF AMERICAN HOME MORTGAGE SERVICING, INC. TO IRON MOUNTAIN INFORMATION MANAGEMENT, INC.'S (I) PURCHASER CURE CLAIM AND (II) ADMINISTRATIVE CLAIMS

American Home Mortgage Servicing, Inc., a Delaware corporation formerly

known as AH Mortgage Acquisition Co., Inc. (the "Purchaser"), hereby objects to (i) the Notice

of Iron Mountain Information Management, Inc.'s ("Iron Mountain") Interim Cure Claim [D.I.

4828] filed on June 25, 2008 (the "Purchaser Cure Claim"), (ii) Iron Mountain's Request for

Allowance and Payment of Administrative Expenses (Hardcopy) [D.I. 9636] filed on January 5,

2011 (the "Hardcopy Claim") and (iii) Iron Mountain's Request for Allowance and Payment of

Administrative Expenses (Data) [D.I. 9637] filed on January 5, 2011(the "Data Claim" and,

together with the Hardcopy Claim, the "Admin Claims").

### PRELIMINARY STATEMENT

In connection with the sale of the servicing business of the above-captioned

debtors (collectively, the "Debtors") to the Purchaser, the Debtors assumed and assigned a single

Iron Mountain contract to the Purchaser regarding the storage of tape data in Baltimore,

Maryland.  The Debtors proposed a purchaser cure claim of $0 for the contract.  Although Iron

---

[1]     The Debtors in these cases, are:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc.; American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

Mountain filed the Purchaser Cure Claim presumably seeking to challenge the proposed cure amount, Iron Mountain fails in its Purchaser Cure Claim to dispute the proposed cure amount or otherwise provide the information required to assert a valid objection.  Accordingly, the purchaser cure amount for the Iron Mountain contract assumed and assigned to the Purchaser is $0.

Iron Mountain also asserts the Hardcopy Claim against the Purchaser and alleges in the Data Claim that it is allegedly owed  amounts under the tape data contract assumed by the Purchaser.  As an initial matter, it is procedurally improper for Iron Mountain to assert claims against the Purchaser in a request for allowance of administrative expenses in these chapter 11 cases and, on that basis alone, both Admin Claims should be denied.  Furthermore, the Purchaser simply has no liability for the Hardcopy Claim, which seeks payment for amounts allegedly incurred for storage of the Debtors' documents unrelated to the servicing business under a contract that the Purchaser did not assume.  In addition, the Purchaser disputes liability for the amounts asserted in the Data Claim and respectfully submits that this Court does not have jurisdiction to determine that dispute between Iron Mountain and the Purchaser.  Accordingly, the Admin Claims should be denied to the extent Iron Mountain seeks to hold the Purchaser liable for them.

## BACKGROUND

### The Sale of the Servicing Business to the Purchaser

1.    On October 30, 2007, the Court entered an order [D.I. 1711] (the "Sale Order"),[2] approving the sale of the Debtors' mortgage loan servicing business to the Purchaser

---

[2]        A copy of the Sale Order, without exhibits, is attached hereto as Exhibit A.

pursuant to the terms of an Asset Purchase Agreement dated as of September 25, 2007 (as amended, the "APA") among certain of the Debtors and the Purchaser.[3]

2.    Because the Purchaser was not yet licensed to service mortgage loans in the various jurisdictions necessary to operate the servicing business, the APA and the Sale Order provide for a two step closing process designed so that the sale could close from an "economic" perspective while the Purchaser obtained the necessary regulatory approvals and licensing.  At the "economic" close, which occurred on November 16, 2007 (the "Initial Closing"), the Purchaser paid the purchase price in the manner and to the parties in interest as contemplated by the APA, but the Debtors retained ownership of the servicing business.  From the Initial Closing until the date upon which the ownership of the servicing business was transferred to Purchaser (the "Final Closing"), the Debtors were required to operate the servicing business in the ordinary course of business for the economic benefit (and risk) of the Purchaser.  The Final Closing occurred on April 11, 2008.

**The Assumed Contract With Iron Mountain**

3.    In accordance with the APA and the Sale Order, the Debtors assumed and assigned certain executory contracts and unexpired leases to the Purchaser, including the Customer Agreement, dated as of November 1, 2001, by and between Iron Mountain and Columbia National, Incorporated (the "Assumed IM Contract").[4]  Although the Debtors maintained several accounts and contracts with Iron Mountain, the only contract with Iron

---

[3]    A copy of the portions of the APA cited in this objection are attached hereto as Exhibit B.

[4]    A copy of the Assumed IM Contract is attached hereto as Exhibit C.  The Assumed IM Contract has been superseded by the Master Service Agreement, dated June 1, 2010, between the Purchaser and Iron Mountain and the Statement of Work No. 001 dated July 1, 2010, issued pursuant to the Master Service Agreement.

Mountain that was assumed and assigned to the Purchaser is the Assumed IM Contract.  (See APA § 2.1(b); Schedule 2.1(b)(i) at 2.)

        4.      The Assumed IM Contract covers tape data storage and related services in Baltimore, Maryland and, upon information and belief, is associated with Iron Mountain account number 55243.021501 (the "21501 Account").  In point of fact, on the first page of the Assumed IM Contract, the account number is identified as "21501."  In addition, Iron Mountain has acknowledged in these chapter 11 cases that the Assumed IM Contract governs the 21501 Account.[5]  The tape data stored pursuant to the Assumed IM Contract is related, at least in part, to the servicing business and was purchased by the Purchaser pursuant to the APA.

        5.      The Debtors and Iron Mountain also maintained account number 04421.0M070K (the "M070K Account") related to hardcopy records storage and other services in Baltimore, Maryland.  Upon information and belief, the M070K Account is governed by the National Business Archives, Inc. Service and Storage Agreement, dated as of April 1, 1993, by and between National Business Archives, Inc. and Painewebber Mortgage Finance (the "M070K Contract").[6]  In point of fact, in its Hardcopy Claim, Iron Mountain concedes that the M070K Contract governs the M070K Account.[7]  While some of the documents stored pursuant to the M070K Contract are related to the servicing business and were purchased by the Purchaser, the majority of the documents stored by Iron Mountain pursuant to the M070K Contract are owned by the Debtors, including various loan origination and human resource documents unrelated to

---

[5]      See Iron Mountain Information Management, Inc.'s Motion to Compel Payment of Administrative Expenses [D.I. 2464], at 2 n.1 and Ex. B.

[6]      A copy of the M070K Contract is attached hereto as Exhibit D.  Upon information and belief, Painewebber Mortgage Finance, Inc. was a predecessor to Columbia National, Incorporated, which was acquired by the Debtors in 2002.

[7]      See Hardcopy Claim ¶ 8.

the servicing business.[8] The Debtors did not assume and assign the M070K Contract to the Purchaser.

**Iron Mountain's Purchaser Cure Claim**

6.    Pursuant to the Sale Order, the Purchaser is responsible for funding cure amounts (the "Purchaser Cure Amounts") related to all unexpired leases, license agreements and executory contracts assumed and assigned or transferred to the Purchaser (collectively, the "Assumed Contracts") arising from defaults based on acts or omission occurring during the period (the "Interim Period") after the Initial Closing on November 16, 2007 to the Final Closing on April 11, 2008. (Sale Order ¶¶ 35, 36.)

7.    On May 9, 2008, the Court entered an order [D.I. 4021] (the "Purchaser Cure Bar Date Order") approving the form of notice of the Debtors' proposed Purchaser Cure Amounts and establishing June 20, 2008 as the bar date for the assertion of the Purchaser Cure Amounts. In accordance with the Purchaser Cure Bar Date Order, on or about May 19, 2008, the Debtors served a notice [D.I. 4084] (the "Purchaser Cure Notice") on the counterparties to the Assumed Contracts, including Iron Mountain, of the proposed Purchaser Cure Amounts.[9] The Debtors proposed a Purchaser Cure Amount of $0 for the Assumed IM Contract.

8.    On June 25, 2008, Iron Mountain filed its Purchaser Cure Claim asserting "an interim cure claim in the amount of $74,939.40, for the period between November of 2007 and April of 2008, with a total cure claim of $211,654.84." (Purchaser Cure Claim at 1.) The Purchaser Cure Claim asserts amounts allegedly owing under "the 16 Iron Mountain accounts which have yet to be assumed as of June 4, 2008." (Id.) (emphasis added). Iron Mountain did

---

[8]    The Purchaser has paid in full Iron Mountain for the storage of documents related to the servicing business that were purchased by the Purchaser.

[9]    A copy of the Purchaser Cure Notice is attached hereto as Exhibit E.

not specify in its Purchaser Cure Claim how much, if any, was allegedly owed in respect of the Assumed IM Contract.

**Iron Mountain's Admin Claims**

9.     On January 5, 2011, Iron Mountain filed two requests for payment of alleged administrative expenses. First, Iron Mountain filed the Hardcopy Claim in respect of the M070K Account asserting administrative expenses in the amount of $473,527.57, plus interest, fees and costs. Notwithstanding the fact that Iron Mountain concedes that the M070K Contract governs the M070K Account and the Purchaser did not assume the M070K Contract, Iron Mountain asserts that "the Debtors appear to have assumed and assigned the [M070K Account] to [the Purchaser] in conjunction with [the Purchaser's] acquisition of certain assets of the Debtors." (Hardcopy Claim at 1.) Iron Mountain requests that the Court require either the Purchaser or the Debtors to pay the Hardcopy Claim. (Id. at 4.)

10.     Second, Iron Mountain filed the Data Claim in respect of the 21501 Account asserting administrative expenses in the amount of $17,139.85, plus interest, fees and costs. The alleged charges on the 21501 Account relate to invoices dated February 29, 2008 through March 31, 2010.

11.     On December 12, 2011, Steven D. Sass, the liquidating trustee (the "Plan Trustee") appointed pursuant to the Debtors' plan of reorganization, filed an omnibus objection to Iron Mountain's Purchaser Cure Claim and Iron Mountain's Admin Claims [D.I. 10274].

## OBJECTION TO IRON MOUNTAIN'S PURCHASER CURE CLAIM

12.     Pursuant to the APA and the Sale Order, the Purchaser is obligated to fund only those cure amounts arising from defaults under Assumed Contracts, including the Assumed IM Contract, during the Interim Period (i.e., between the Initial Closing and the Final Closing). (See Sale Order ¶ 36.) Iron Mountain fails to allege in its Purchaser Cure Claim, however, that

any amounts are owed under the Assumed IM Contract based on defaults during the Interim

Period. In fact, the Purchaser Cure Claim asserts only amounts allegedly owed under "the 16

Iron Mountain accounts which have yet to be assumed as of June 4, 2008 . . . ." (Purchaser Cure

Claim ¶ 2) (emphasis added.) In other words, Iron Mountain fails to challenge the proposed cure

amount of $0 for the Assumed IM Contract but instead asserts amounts allegedly owed under

other contracts with the Debtors that were not assumed and assigned to the Purchaser.

        13.     Pursuant to the Purchaser Cure Bar Date Order, Iron Mountain was

required to include certain information in its Purchaser Cure Claim. In particular, the Purchaser

Cure Bar Date Order provides that:

> For any Objection to be validly and properly filed and served, each
> Objection must (a) be in writing; (b) set forth, in a schedule or
> exhibit attached thereto, (i) the name of the Counterparty to the
> Assumed Contract, (ii) the title or nature of the Assumed Contract
> subject to the Objection, (iii) the Proposed Purchaser's Cure
> Amount for such Assumed Contract, (iv) the Counterparty's
> asserted Purchaser's Cure Amount for such Assumed Contract,
> which amount shall be a liquidated amount, . . . and (v) the basis
> for the Purchaser's Cure Amount asserted in such Objection;
> (c) comply with the Bankruptcy Rules and the Local Rules; (d) be
> filed with the clerk of the Court . . . on or before 4:00 p.m.
> (prevailing Eastern Time) on June 20, 2008; and (e) be served so
> as to be received on or before 4:00 p.m. (prevailing Eastern Time)
> on the same day, upon (i) . . . counsel to the Debtors, (ii) . . .
> counsel to the Purchaser, and (iii) counsel to the Committee.

(Purchaser Cure Bar Date Order ¶ 8.) Because Iron Mountain's Purchaser Cure Claim fails to

assert any cure amounts under the Assumed IM Contract or otherwise comply with the Purchaser

Cure Bar Date Order, the Purchaser respectfully submits that Iron Mountain's Purchaser Cure

Claim should be denied.

## OBJECTION TO IRON MOUNTAIN'S ADMIN CLAIMS

        14.     Iron Mountain asserts the Hardcopy Claim against the Purchaser and

alleges in the Data Claim that it is owed amounts under the Assumed IM Contract. For the

reasons set forth below, Iron Mountain's assertion of the Admin Claims against the Purchaser is misguided and should be denied.

### A.    The Purchaser Is Not Liable for the Hardcopy Claim Because It Did Not Assume the M070K Contract

15.    Iron Mountain asserts that the Purchaser is liable for the amounts allegedly owed under the M070K Contract because "the Plan Trustee contends that the [M070K] Account was assumed and assigned to [the Purchaser] in conjunction with [the Purchaser's] acquisition of Debtors assets in October 2007." (Hardcopy Claim ¶6.) The Plan Trustee similarly alleges that "the Debtors' records indicated that" the M070K Account was assumed and assigned to the Purchaser. (See D.I. 10274 ¶¶ 16-17.) But, the Purchaser simply did not assume the M070K Contract or the M070K Account.

16.    As an initial matter, although the Debtors had several contracts and maintained numerous accounts with Iron Mountain, it is beyond dispute that pursuant to the APA the Purchaser took assignment of only one contract with Iron Mountain, the Assumed IM Contract. In point of fact, Schedule 2.1(b)(i) to the APA, which identifies the vendor contracts assumed and assigned to the Purchaser, lists only one contract with Iron Mountain, the "Customer Agreement, dated November 1, 2001, by and between Iron Mountain and Columbia National, Incorporated." (See APA § 2.1(b); Schedule 2.1(b)(i) at 2.) This description matches the title, date and parties to the Assumed IM Contract precisely. In contrast, the M070K Contract has a different (a) title (National Business Archives, Inc. Service and Storage Agreement), (b) date (April 1, 1993) and (c) set of parties (National Business Archives, Inc. and Painewebber Mortgage Finance) than the Iron Mountain contract listed in Schedule 2.1(b)(i) to the APA. Simply put, the Debtors did not assume and assign the M070K Contract to the Purchaser.

17.    Although the Plan Trustee appears to concede that the M070K Contract was not assumed and assigned to the Purchaser, he alleges without support that the Debtors' records indicate that the M070K Account was governed by the Assumed IM Contract. (See D.I. 10274 ¶¶ 16-17.)  This is incorrect.  Iron Mountain acknowledges in its Hardcopy Claim that the M070K Contract — not the Assumed IM Contract — governs the M070K Account.[10]  In addition, in the Assumed IM Contract itself, the only account identified as being associated with the Assumed IM Contract is the 21501 Account.  This, as previously noted, is consistent with Iron Mountain's prior admission in these chapter 11 cases.  (See supra note 5.)

**B.    It is Improper For Iron Mountain To Assert the Admin Claims Against the Purchaser**

18.    As an initial matter, it is procedurally improper for Iron Mountain to assert claims against the Purchaser in a request for allowance of administrative expenses against the Debtors' estates.  The purposes of a request for allowance of administrative expenses pursuant to section 503(b)(1) of the Bankruptcy Code is to establish the actual, necessary costs and expenses of preserving the Debtors' estates, not to assert claims against third parties.  In addition, to the extent that Iron Mountain seeks payment from the Purchaser in its Data Claim for services allegedly provided post-Final Closing (i.e., after April 11, 2008), the Purchaser disputes liability for those amounts and respectfully submits that this Court lacks jurisdiction to hear the dispute between two third parties.  See, e.g., Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154 (3d Cir. 2004).  Finally, to the extent Iron Mountain asserts any Purchaser Cure Amounts in its Data Claim, the claim is barred by the Purchaser Cure Claim Bar Date

---

[10]    See Iron Mountain Information Management, Inc.'s Request for Allowance and Payment of Administrative Expenses (Hardcopy) [D.I. 9636] at ¶ 8.)

Order. The deadline for asserting purchaser cure claims has long passed, and Iron Mountain has

not sought leave to file a late purchaser cure claim or otherwise established excusable neglect.[11]

### Conclusion

19.     For the foregoing reasons, the Purchaser respectfully requests that the

Court enter an order (a) finding that the Purchaser Cure Amount for the Assumed IM Contract is

$0 and (b), to the extent the Admin Claims are asserted against the Purchaser, denying the

Admin Claims.

Dated: February 10, 2012         GREENBERG TRAURIG, LLP
       Wilmington, Delaware

*Victoria W. Counihan*

Victoria W. Counihan (DE Bar #3488)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
counihanv@gtlaw.com

    and

JONES DAY
Dan B. Prieto (TX 24048744)
Paul M. Green (TX 24059854)
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939

COUNSEL FOR AMERICAN HOME
MORTGAGE SERVICING, INC., FORMERLY
KNOWN AS AH MORTGAGE ACQUISITION
CO., INC.

---

[11]     It does not appear that Iron Mountain is seeking the repayment of expenses for periods prior to the Initial Closing. To the extent that Iron Mountain is seeking payment for services provided prior to the Initial Closing, the Purchaser further objects on the basis that it has no liability for those expenses. (See, e.g., Sale Order ¶¶ 32-39.)