IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
In re:                                                       : Chapter 11
                                                             :
AMERICAN HOME MORTGAGE                                       : Case No. 07-11047 (CSS)
HOLDINGS, INC., et al.,[1]                                   :
                                                             : Jointly Administered
            Debtors.                                         :
                                                             : Ref. D.I. 10323
------------------------------------------------------------ x

PLAN TRUST'S OBJECTION TO MOTION OF JPMORGAN CHASE
BANK, NATIONAL ASSOCIATION FOR AN ORDER (I) ENFORCING
THE TERMS OF THE STAY RELIEF ORDER AND (II) DIRECTING
THE TRUSTEE TO TURNOVER FUNDS

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan")[2] in connection with the Chapter 11 cases of the above-captioned debtors (the "Debtors"), objects (the "Objection") to the *Motion of JPMorgan Chase Bank, National Association for an Order (i) Enforcing the Terms of the Stay Relief Order and (ii) Directing the Plan Trustee to Turnover Funds* filed by JPMorgan Chase Bank, National Association ("JPMC") on January 31, 2012 [D.I. 10323] (the "Motion"). In support of this Objection, the Plan Trustee submits the declaration of Scott Martinez (the "Martinez Decl."), attached hereto as Exhibit A and incorporated by reference herein. In further support of this Objection, the Plan Trustee states as follows:

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).

[2] Capitalized terms used but not otherwise define herein shall have the meaning ascribed to them in the Plan.

## PRELIMINARY STATEMENT[3]

1. JPMC asserts that the Plan Trustee has "failed and refused" to turn over funds belonging to JPMC as required by the terms of the Stipulated Order. The sole basis for this allegation is a comment by AHMSI that the Additional Funds are attributable to collections relating to the Warehouse Facility. The reason for AHMSI's belief, however, is apparently based only on the fact that the Additional Funds were located in a JPMC investor account prior to being wired by AHMSI to the Debtors.

2. Upon receipt of the wire transfer containing the Additional Funds, the Debtors contacted AHMSI requesting a reconciliation of the wire in order to determine the source of such funds. The months of follow-up efforts by the Debtors (and more recently, the Plan Trustee) to obtain sufficient information from AHMSI to substantiate its comment and to determine the source of the Additional Funds proved unsuccessful. As a result, the Plan Trustee provided the information it received from AHMSI to JPMC and requested that JPMC reconcile the Additional Funds. Specifically, the Plan Trustee provided JPMC with the very documents that it received from AHMSI and requested that JPMC attempt to identify the loans involved to determine whether the Additional Funds should be paid, in whole or in part, to JPMC on account of its secured claim. The Motion is noticeably devoid of any reference to the documents that were provided to JPMC and fails to provide any additional support for the contention that the Additional Funds relate to the Warehouse Facility.

3. Both JPMC and AHMSI have failed to provide sufficient information to allow for a determination that the Additional Funds relate to the Warehouse Facility in the first instance and, if they do, whether the funds relate to collections from mortgage loans pledged to

---

[3] Capitalized terms used in the Preliminary Statement shall have the meaning ascribed to them in the body of the Objection.

JPMC under the Warehouse Facility, as opposed to REO Assets. To the extent any portion of the Additional Funds derive from collections on mortgage loans under the Warehouse Facility, the Plan Trustee has affirmatively stated that it would turn over such funds to JPMC. On the other hand, to the extent the Additional Funds derive from REO Assets, the Plan Trustee has asserted that those funds belong to the Plan Trust since JPMC does not have a valid, perfected security interest in the funds.

4. Because AHMSI and JPMC have failed to provide information to support the position that the Additional Funds relate to the Warehouse Facility, JPMC has not met its burden to establish its entitlement to the Additional Funds. Thus, the Motion should be denied.

5. Even if JPMC could establish that some portion (or all) of the Additional Funds derives from mortgage loans related to the Warehouse Facility, the Motion should be denied to the extent such Additional Funds constitute REO Proceeds because JPMC does not have a valid security interest in REO Assets or their proceeds.

## FACTUAL BACKGROUND

### A. General Background

6. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Between the Petition Date and the Plan Effective Date (defined below), each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

7. On February 23, 2009, the Court entered an order [D.I. 7042] (the "Confirmation Order") confirming the Plan. The Plan became effective on November 30, 2010 (the "Plan Effective Date").

8. Pursuant to the Plan, as of the Plan Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers, and benefits set forth in the Plan, Confirmation Order, and Plan Trust Agreement.

**B.     The Credit Agreement Between JPMC And Certain Debtors**

9. Prior to the Petition Date, JPMC and certain Debtors entered into that certain "1/06 Senior Secured Credit Agreement," dated January 24, 2006 (together with amendments to it, the "Credit Agreement"), pursuant to which JPMC provided up to $200 million in a revolving line of credit to those Debtors (the "Warehouse Facility"), to be secured by mortgage loans that were owned by the Debtors (the "JPMC Collateral Mortgages").[4]

10. As contemplated by the parties, the JPMC Collateral Mortgages were "Scratch and Dent" mortgage loans that the Debtors originated or otherwise acquired. This "Scratch and Dent" Warehouse Facility was, therefore, by definition secured by mortgage loans that had become risky debt investments. Pursuant to Section 7.4 of the Credit Agreement, JPMC *could* have also obtained a security interest in "each lot, parcel, tract or leasehold estate (as the case may be) of present or future real property owned by [the Debtors] after foreclosure or conveyance in lieu of foreclosure" by obtaining an appropriate mortgage or other security document. However, no mortgages, deeds of trust or security deeds were ever executed by the Debtors (or their agents) or recorded in any real property records by either the Debtors or JPMC.

---

[4] The foregoing allegation is intended only to provide background facts and no admission or concession is made by the Plan Trustee regarding the perfection of the security interest of JPMC (or any of its affiliates) in any of the JPMC Collateral Mortgages.

### C. Defaults By Borrowers Under Certain Of The JPMC Collateral Mortgages And The Resulting REO Assets

11. Prior to and following the Petition Date, borrowers under certain of the JPMC Collateral Mortgages defaulted in their obligations (collectively, such mortgages are the "Defaulted Mortgages"). As a result of such defaults, the Debtors and/or their authorized agent acquired the real property that previously secured the Defaulted Mortgages either through foreclosure or a deed in lieu of foreclosure from the borrowers under the Defaulted Mortgages. The parcels of real property acquired from the borrowers under the Defaulted Mortgages by the Debtors and/or their authorized agent through foreclosure or deed in lieu of foreclosure are each referred to as a "REO Asset" and, collectively, as the "REO Assets".[5]

12. The Debtors and their agents have never executed any mortgages, deeds of trust, security deeds or similar instruments granting JPMC any security interest in the REO Assets and, accordingly, no such instruments granting a security interest in such real property to JPMC have been recorded in any real property records. As such, all proceeds from the disposition of the REO Assets (the "REO Proceeds") are property of the Plan Trust.

### D. Disputes Relating to the REO Assets

13. As noted in the Motion at ¶¶ 10-14, JPMC and the Debtors (and more recently, the Plan Trustee) have engaged in disputes relating to, among other things, the REO Assets and any proceeds resulting therefrom. In particular, on September 10, 2008, JPMC filed a motion [D.I. 5791] (the "Stay Relief Motion") seeking relief from the automatic stay to permit JPMC to exercise its purported rights relating to the JPMC Collateral Mortgages. The parties reached a stipulated resolution of the Stay Relief Motion, and on December 1, 2008, the Court

---

[5] To the extent a Debtors' agent acquired title to such REO Assets, prior to the Plan Effective Date such agent held only legal title on behalf of the Debtors and the Debtors owned equitable title to, and ownership of, such REO Assets. Since the Plan Effective Date, such agent holds (or held) only legal title on behalf of the Plan Trust and the Plan Trust owns equitable title to, and ownership of, such REO Assets.

entered the *Order Approving Stipulation Settling Motion of JPMC Chase Bank, N.A. for Relief From the Automatic Stay and Providing for Mediation of Certain Disputes* [D.I. 6643] (the "Stipulated Order").

14. The Stipulated Order provided, among other things, that the Debtors would transfer to JPMC substantially all mortgages that then constituted Warehouse Facility Collateral (as such term is defined in the Stay Relief Motion). This transfer was completed in February of 2009.

15. The Stipulated Order further provided that all proceeds attributable to REO Assets in which JPMC asserted a security interest were to be deposited in a segregated escrow account, pending further order of the Court. The parties then attempted to mediate their disputes related to the REO Assets and any resultant proceeds.

16. Mediation was not successful and, on July 31, 2009, certain of the Debtors and the Committee initiated Adv. Proc. No. 09-51702 (CSS) (the "Adversary Proceeding") by filing a complaint (the "Complaint")[6] against JPMC (i) to determine the validity and extent, if any, of JPMC's lien on the REO Assets and/or REO Proceeds, (ii) to avoid JPMC's lien, if any, on the REO Assets and REO Proceeds, and (iii) to avoid and recover certain pre- and post-petition transfers made to JPMC.

17. The parties eventually entered into a settlement agreement (the "Settlement Agreement") that provided for, *inter alia*, the release of over $10 million of the REO Proceeds held in escrow to the Plan Trust and the release and distribution of the remaining amounts held in the escrow account to JPMC, the waiver of multiple JPMC claims, and the

---

[6] A copy of the Complaint *without exhibits* is attached hereto as Exhibit B and incorporated by reference herein. Pursuant to the Plan and stipulation of the parties, the Plan Trustee was substituted as plaintiff in the Adversary Proceeding.

exchange of mutual releases between the Plan Trustee and JPMC. A copy of the Settlement Agreement is attached hereto as <u>Exhibit C</u> and incorporated by reference herein.

18.     On November 18, 2011, this Court entered an order [D.I. 10258] approving the Settlement Agreement in its entirety.

### E.     The Carve-Out In The Settlement Agreement With Respect To The Additional Funds

19.     The Settlement Agreement resolved nearly all disputed issues, however, the parties were unable to resolve, and expressly preserved, all issues related to the approximately $728,819.90 (the "<u>Additional Funds</u>") that is the subject of the pending Motion.

20.     By way of background, on or about October 5, 2010, the Debtors received $942,440.01 via wire transfer from non-debtor American Home Mortgage Servicing, Inc. ("<u>AHMSI</u>"), which funds were supposed to be the final remittance by AHMSI of certain principal and interest amounts. *See* Martinez Decl., at ¶ 4. The Additional Funds were part of this wire transfer and are being held in a segregated, interest-bearing account.

21.     As discussed in detail below, although AHMSI has indicated that the Additional Funds are purportedly attributable to the Warehouse Facility, AHMSI did not and still has not provided information sufficient to support its statement, or even to identify any loans, REO Assets or REO Proceeds from which the Additional Funds were derived. Thus, despite numerous requests from the Debtors, and more recently the Plan Trustee, over the course of many months, AHMSI did not (or could not) provide a true, accurate, and comprehensive reconciliation of the Additional Funds.

22.     Given his responsibilities to all parties with an interest in the Plan Trust (as assignee of the Debtors' estates pursuant to the Plan), the Plan Trustee cannot simply turnover the Additional Funds without such supporting information. Therefore, the Additional

Funds were specifically carved out from the terms of the Settlement Agreement. *See* Settlement Agreement, at ¶ 5. In particular, the Settlement Agreement provides, in relevant part, as follows:

> a. The [Plan] Trustee represents that he has received funds from [AHMSI] that are being held (and will continue to be held) in a segregated interest bearing account and which, as of September 30, 2011, total $728,819.80 (the "Additional Funds"). The [Plan] Trustee further represents that since receiving the Additional Funds, (1) the [Plan] Trustee has requested additional information from AHMSI regarding the Additional Funds, (2) AHMSI has informed the [Plan] Trustee that the Additional Funds are funds attributable to the Warehouse Facility, (3) AHMSI has not identified any loans or REO under the Warehouse Facility from which the Additional Funds were derived and (4) AHMSI has not provided additional information which the [Plan] Trustee deems sufficient to determine whether any portion of such Additional Funds are due and owing to JPMC. *See id.*, at ¶ K.
>
> b. <u>Treatment of Additional Funds</u>. The [Plan] Trustee and JPMC both reserve all rights related to the disposition and payment of the Additional Funds. For avoidance of doubt, none of the releases contained in paragraphs 7 and 8 herein shall have any force or effect with respect to the rights of either the [Plan] Trustee or JPMC with respect to the Additional Funds.... *Id.*, at ¶ 5.

**F.    The Receipt Of The Additional Funds And Subsequent Efforts By The Debtors And Plan Trustee To Determine The Lawful Owner Of These Funds**

23.    By way of background, between July and early October, 2010, Scott Martinez, on behalf of the Debtors, sent several emails to AHMSI seeking information on the status of various investor reconciliations and requesting the remittance of funds to the Debtors on account of certain unencumbered assets. *See* Martinez Decl., at ¶ 3 & Exhibit 1.[7]

---

[7] The exhibits to the Martinez Decl. are comprised of various emails between and among representatives of the Plan Trust, AHMSI and/or JPMC and contain personal contact information of certain individuals on the emails. To avoid the unnecessary public disclosure of such extraneous information, the Plan Trust has redacted certain personal contact information such as phone numbers and personal email addresses. In addition, a portion of the email identified as Exhibit 7 to the Martinez Decl. contains settlement discussions between the Plan Trustee and JPMC which is protected from disclosure pursuant to F.R.E. § 408. Such portion has likewise been redacted. Copies of these emails in unredacted format will be provided to JPMC upon request and brought to the hearing on the Motion.

24. On October 5, 2010, Mr. Martinez received notice of a wire from AHMSI to the Debtors in the amount of $942,440.01, which amount includes the approximately $728,000 of Additional Funds at issue. *Id.*, at ¶ 4.

25. Since receiving the Additional Funds, the Debtors, the Plan Trustee and their representatives engaged in extensive good faith efforts to reconcile the funds in order to determine whether the Plan Trust or some other party was entitled to them. These efforts involved written communications by Mr. Martinez with both AHMSI and JPMC business representatives and included, without limitation, the following:

    a. On October 5, 2010, after receiving the wire from AHMSI, Mr. Martinez asked AHMSI to send reconciliations for the wire. In response, an AHMSI representative sent an email, dated October 5, 2010, with an attached summary spreadsheet that contains little detail. *Id.*, at ¶ 5 & Exhibit 2.

    b. Given the lack of detail on the spreadsheet, Mr. Martinez almost immediately sent the AHMSI representative a follow-up email seeking the "loan level breakdown" supporting the information on the spreadsheet. *Id.*, at ¶ 6 & Exhibit 3.

    c. Another AHMSI representative responded by email stating that they would provide everything AHMSI has at the loan level. The AHMSI representative further noted, however, that AHMSI would not have loan level details on some investors "due to monies being wired out without reconciling to reports" and that she was "unable to back in to the old numbers." *Id.*, at ¶ 7 & Exhibit 4.

d. On October 6, 2010, an AHMSI representative sent Mr. Martinez an email with a pdf attachment that was purportedly a reconciliation for the investor account relating to JPMC or its affiliates. *Id.*, at ¶ 8. That same day, Mr. Martinez requested and received via email a native excel version of the pdf. *Id.* & Exhibit 5.

e. On February 10, 2011, an AHMSI representative sent Mr. Martinez an email with an attached native excel file that purportedly was a revised reconciliation relating to the Additional Funds. The AHMSI representative noted in her email that they identified loan level to the extent possible. *Id.*, at ¶ 9 & Exhibit 6.

f. On September 27, 2011, the Plan Trustee and Mr. Martinez exchanged emails with a JPMC business representative stating the Plan Trust could not sufficiently identify or confirm that the Additional Funds belonged to JPMC and requesting that JPMC attempt to identify the loans involved to confirm whether the funds potentially belong, in whole or in part, to JPMC. *Id.*, at ¶ 10 & Exhibit 7.

g. On October 13, 2011, Mr. Martinez received an email from a Debtor employee seeking assistance in answering a question posed by AHMSI concerning inquiries received by AHMSI from JPMC relating to the Additional Funds. Specifically, by email, dated September 27, 2011, a JPMC representative, Seth Fenton, asked about the remittance of the Additional Funds and "can [AHMSI] provide backup data as to what this

10

remittance related to. Ideally loan level detail is available." *Id.*, at ¶ 11 & Exhibit 8.

  h.  On October 13, 2011, Mr. Martinez reached out to AHMSI via email with respect to JPMC's inquiry and informed AHMSI that JPMC could contact him directly. Mr. Martinez further noted that the files attached to his email were "the only files we received with respect to an investor 7 reconciliation. Since AHM has not received sufficient loan level documentation it was decided that it would not be prudent for AHM to take any action with respect to the funds without such documentation." *Id.*, at ¶ 12 & Exhibit 9.

  i.  On October 20, 2011, Mr. Martinez sent JPMC's representative, Seth Fenton, an email attaching the files that the Debtors received from AHMSI with respect to the Additional Funds and inviting Mr. Fenton to contact him directly with any questions. That same day, Mr. Fenton sent Mr. Martinez an email confirming receipt of the information and indicating that JPMC would review such information. *Id.*, at ¶ 13 & Exhibits 10 and 11.

26.  To the best of his knowledge, information and belief, neither Mr. Martinez nor any other business representative of the Plan Trustee received additional information from AHMSI or JPMC relating to the Additional Funds. *Id.*, at ¶ 15.

27.  The information provided to date by AHMSI is not sufficient to enable the Plan Trustee or JPMC to determine the origin of the Additional Funds and, therefore, the Plan Trustee has been unable to determine whether the funds are even related to the Warehouse

Facility and, if they do, whether they are REO Proceeds which constitute property of the Plan Trust since JPMC does not have a properly perfected security interest in such proceeds.

### G.    The Motion filed by JPMC

28.    Notwithstanding the uncertainty surrounding the entitlement to the Additional Funds, JPMC filed the Motion alleging, among other things, that it is entitled to the Additional Funds since such funds represent collections from mortgage loans pledged to JPMC under the Warehouse Facility and JPMC has a first-priority lien and security interest in the collateral from which the Additional Funds were derived. JPMC's assertions are not supported by the known facts or applicable law.

## **OBJECTION**

29.    Pursuant to sections 105(a), 362, 363, 541, 544, 547 and 552 of the Bankruptcy Code, the Motion should be denied because (i) JPMC has not met its burden to establish its entitlement to the Additional Funds, and (ii) to the extent that any portion of the Additional Funds was derived from REO Assets, JPMC cannot establish that it has a valid security interest in those assets or their proceeds.

30.    Alternatively, the Plan Trustee submits that the Court should defer rendering a decision on the Motion to allow for formal discovery of AHMSI by the parties in order to develop a more complete factual record upon which the Court can base its decision.

### A.    JPMC Has Not Established Its Entitlement To Any Portion Of The Additional Funds

31.    The Motion should be denied because JPMC has failed to establish its entitlement to any portion of the Additional Funds. JPMC notes that AHMSI has "informed" the Plan Trustee that the Additional Funds are attributable to collections from mortgage loans pledged to JPMC under the Warehouse Facility. *See* Motion, at ¶ 14. AHMSI has indicated

only that it believes the Additional Funds relate to the Warehouse Facility – not that they relate to proceeds of mortgage loans – and has been unable to support even that general belief. The indisputable fact remains that neither AHMSI nor JPMC have substantiated the contention that the Additional Funds relate to the Warehouse Facility. And in fact, in the Settlement Agreement, the Plan Trustee represented that "AHMSI has not identified any loans or REO under the Warehouse Facility from which the Additional Funds were derived." Settlement Agreement, at ¶ K. No substantiating information has been provided to the Plan Trustee or has otherwise come to light.

32.     So, while JPMC seeks to have this Court compel the turnover of the Additional Funds, it does not point to any newfound authority or supporting documentation that would suggest it is entitled to the Additional Funds. Rather, JPMC's assertion merely parrots the exact language that appeared previously in the Settlement Agreement. Moreover, JPMC fails to discuss, let alone even mention, the AHMSI documents that Mr. Martinez provided to JPMC. If these documents shed any light on the entitlement to the Additional Funds, JPMC would surely have, at the very least, referenced them in the Motion. JPMC's silence in this regard is telling.

33.     Accordingly, JPMC's contention that the Plan Trustee is "withholding" JPMC's property is simply unsupported by the factual record. Motion, at ¶ 14. As noted above, the Plan Trustee has engaged in extensive due diligence to determine the true origin of the Additional Funds. Notwithstanding such efforts, the Plan Trustee has been unable to determine whether JPMC is entitled to any portion of the Additional Funds.

34.     The Plan Trustee has the obligation and the responsibility to administer the Plan Trust and make distributions according to the terms set forth in the Plan, Confirmation Order, and Plan Trust Agreement. Distributing the Additional Funds on the basis of an

unsubstantiated supposition would be inconsistent with that responsibility. AHMSI's allegations with respect to the Additional Funds, without more, is mere conjecture. JPMC has not alleged facts sufficient to prove that the Additional Funds relate to the Warehouse Facility. Even if it had, JPMC has not alleged facts sufficient to prove that the Additional Funds are proceeds of mortgage loans pledged to JPMC under the Warehouse Facility, as opposed to REO Proceeds which constitute property of the Plan Trust. Both issues need to be alleged and proven for JPMC to prevail in its contention that the Plan Trust must turn over the Additional Funds.

35. Given that JPMC has failed to establish its entitlement to the Additional Funds, the Motion should be denied.

B. **The Motion Should Be Denied Because JPMC Has No Valid Security Interest In The REO Assets And The REO Assets And REO Proceeds Thus Constitute Unencumbered Property Of The Plan Trust**

36. Even if, for the sake of argument, JPMC could establish that some portion (or all) of the Additional Funds relate to the Warehouse Facility, the Motion should be denied to the extent such Additional Funds were derived from REO Assets because JPMC does not have a valid security interest in those assets or their proceeds. While the allegations in the Motion are silent on this critical point, the Stipulated Order only provided that the Debtors would transfer Warehouse Facility Collateral to JPMC, not REO Assets or REO Proceeds that are not properly secured under the Warehouse Facility – such proceeds were escrowed under the terms of the Stipulated Order.

37. Since no recordable mortgages, deeds of trust or security deeds were executed, acknowledged or delivered, JPMC never obtained a security interest in the REO Assets or the REO Proceeds. *See In re Seaway Express Corp.*, 912 F.2d 1125 (9th Cir. 1990). In *In re Seaway*, the court squarely held that a secured creditor *does not* have a valid security interest in

real property, even where the real property is received in satisfaction or exchange for personal property in which the secured creditor held a security interest, **unless** the secured creditor records a mortgage in the real property records of the applicable state. *Id.* at 1127-1129. JPMC has not cited any case law holding otherwise and the Plan Trustee is not aware of a contrary case.

38. It is undisputed that JPMC did not record any instruments granting a security interest in the REO Assets. JPMC therefore never acquired a valid, perfected security interest or lien in any of the REO Assets or the REO Proceeds. Consequently, such REO Assets and REO Proceeds, including any portion of the Additional Funds derived from such assets or proceeds, constituted unencumbered property belonging to the Debtors' estates prior to the Plan Effective Date, and now constitute unencumbered property belonging to the Plan Trust (as assignee of the Debtors' estates pursuant to the Plan).

39. The Motion should therefore be denied to the extent the Additional Funds were derived from REO Assets.

*[Remainder of page intentionally left blank]*

## CONCLUSION

For the foregoing reasons, the Plan Trustee respectfully requests that this Court deny the Motion and grant the Plan Trustee such other and further relief as is just and proper. Alternatively, the Plan Trustee submits that the Court should defer rendering a decision on the Motion to allow for formal discovery of AHMSI by the parties in order to develop a more complete factual record upon which the Court can base its decision.

Dated: February 14, 2012

          YOUNG CONAWAY STARGATT & TAYLOR, LLP

          */s/ Sean M. Beach*
          Sean M. Beach (No. 4070)
          Michael S. Neiburg (No. 5275)
          Rodney Square
          1000 North King Street
          Wilmington, Delaware 19801
          (302) 571-6600

          *Counsel to the Plan Trustee*