IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x
In re:                                                         :    Chapter 11
                                                               :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                          :    Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                                :
                                                               :    Jointly Administered
      Debtors.                                                 :
                                                               :    **Ref. Docket Nos.  9692, 10148,**
----------------------------------------------------------------- x  **10182**

## PLAN TRUST'S POST-TRIAL ANSWERING BRIEF (A) IN OPPOSITION TO (I) MOTION FOR JUDGMENT AS A MATTER OF LAW OF ADMINISTRATIVE CLAIM ENTERED; (II) MOTION FOR ENTRY OF ADMINISTRATIVE CLAIM WITH BRIEF IN SUPPORT; AND (III) CLAIMS NUMBERED 10870, 10875 AND 10887 FILED BY MR. HUSSAIN KAREEM, AND (B) IN FURTHER SUPPORT OF THE PLAN TRUSTEE'S OMNIBUS OBJECTION THERETO

| | |
|---|---|
| YOUNG, CONAWAY, STARGATT & TAYLOR, LLP | HAHN & HESSEN LLP |
| Sean M. Beach (No. 4070) | Mark S. Indelicato |
| Margaret Whiteman Greecher (No. 4652) | Edward L. Schnitzer |
| Rodney Square | 488 Madison Avenue |
| 1000 North King Street | New York, New York 10022 |
| Wilmington, Delaware 19801 | Telephone: (212) 478-7200 |
| Telephone: (302) 571-6600 | Facsimile: (212) 478-7400 |
| Facsimile: (302) 571-1253 | |

*Co-Counsel to the Plan Trustee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND.............................................................................................4

ARGUMENT......................................................................................................................9

I.   Mr. Kareem's Claims Should Be Disallowed Under the Doctrine of Issue Preclusion ......9

II.  The Evidentiary Record Is Complete, and Mr. Kareem Failed  to Meet His Burden in Proving His Claims Against the Debtors' Estates ............................................................10

    A.   Mr. Kareem's Claims Do Not Accurately Reflect the State of the Law, the Facts In Evidence or the Debtors' Obligations to Mr. Kareem .................................................11

        i.   Breach of Contract ...........................................................................................11

        ii.   Breach of Fiduciary Duty.................................................................................14

        iii.   Unfair and Deceptive Business Practices........................................................15

        iv.   Breaches Under Prospectus and 2006-3 PSA ..................................................19

        v.   Failure to Meet "Good Faith Obligation" under UCC § 11-1-203 .........................20

        vi.   Predatory Lending Practices ............................................................................20

    B.   Even Had the Debtors Committed a Breach or Violation, Mr. Kareem Has Failed to Show Any Causal Link or Damages..........................................................................21

III.  To The Extent that Mr. Kareem Is Entitled to a Claim Against the Debtors, the Claims Should Be Reclassified as a General Unsecured Claim Against AHM Corp. ..................24

ADMISSION OF EXHIBITS...........................................................................................26

OBJECTIONS TO PLAINTIFF'S EXHIBITS ...............................................................26

RESERVATION OF RIGHTS.........................................................................................26

CONCLUSION ................................................................................................................27

APPENDIX 1

APPENDIX 2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Allen v. McCurry,
  449 U.S. 90 (1980) ...............................................................................9

Burch v. Chase Manhattan Morg. Corp.,
  Case No. 1:07-cv-121 (JOF), 2008 U.S. Dist. LEXIS 76595 (N.D. Ga. Sept. 15, 2008) ...........
  ..............................................................................................21, 22, 23, 24

Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),
  181 F.3d 527 (3d Cir. 1999) ..............................................................24, 25

Dupont Flooring Sys., Inc.v. Discovery Zone, Inc.,
  No. 98 Civ. 5101(SHS), 2004 WL 1574629 (S.D.N.Y. July 14, 2004) ...................................21

Farash & Robbins, Inc. v. Fleet Bank,
  326 F. App'x 77 (3d Cir. 2009) ..............................................................21

Graham v. MERS,
  Case No. 2:11-cv-253 (RWS), 2012 U.S. Dist. LEXIS 20704 (N.D. Ga. Feb. 17, 2012)...............................................................................23

Habib v. Bank of Am. Corp.,
  No. 1:10-cv -4079, 2011 U.S. Dist. LEXIS 69858 (N.D. Ga. Mar. 15, 2011)........................23

Heritage Creek Dev. Corp. v. Colonial Bank,
  601 S.E.2d 842 (Ga. App. Ct. 2004)...........................................................20

Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,
  585 F. Supp. 2d 623 (D. Del. 2008) ...........................................................9

Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.,
  602 F.3d 237 (3d Cir. 2010) ..............................................................9, 10

In re Allegheny Int'l, Inc.,
  954 F.2d 167 (3d Cir. 1992) ..............................................................10

In re Bernard Techs., Inc.,
  342 B.R. 174 (Bankr. D. Del. 2006) (Walrath, J.).............................................24

In re Fidelity Mortgage Holding Co.,
  837 F.2d 696 (5th Cir. 1988) ..............................................................11, 21

In re Unidigital, Inc.,
  262 B.R. 283 (Bankr. D. Del. 2001)...........................................................25

i

Jenkins v. BAC Home Loan Servicing, LP,
    Case No. 7:11-cv-73 (HL), 2011 U.S. Dist. LEXIS 111235
    (M.D. Ga. Sept. 29, 2011) ...................................................................................11, 12, 15, 21

Kliesh v. Select Portfolio Servicing, Inc.,
    419 Fed. Appx. 268 (3d Cir. 2011)................................................................................10

Kuritzy v. Emory Univ.,
    669 S.E.2d 179 (Ga. Ct. App. 2008)..............................................................................12

Montana v. United States,
    440 U.S. 147 (1979) .........................................................................................................9

Moore v. Bank of Fitzgerald,
    483 S.E.2d 135 (Ga. Ct. App. 1997)..............................................................................14

Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank,
    392 F.3d 520 (2d Cir. 2004) ..........................................................................................21

Nelson v. Bank of Am., N.A.,
    Case No. 11-CV-3890, 2012 U.S. Dist. LEXIS 12159 (N.D. Ga. Jan. 31, 2012)..................16

Richards v. First Union Nat'l Bank,
    405 S.E.2d 705 (Ga. Ct. App. 1991)..............................................................................14

White v. Ams. Servicing Co.,
    Case No. 11-13101, 2012 U.S. App. LEXIS 1800 (11th Cir. Feb. 1, 2012) ...........................14

Zzehinskyj v. Attorney Gen. of the United States,
    432 F.3d 253 (3d Cir. 2005) ..........................................................................................10

**STATUTES**

11 U.S.C. § 503 ....................................................................................................24, 25

11 U.S.C § 1129 .........................................................................................................6

12 U.S.C. § 2601 *et seq.* ..........................................................................................13

12 U.S.C. § 3500.21(d)...............................................................................................12

15 U.S.C. § 1604(b)....................................................................................................16

15 U.S.C. § 1635 ...................................................................................................18, 23

Ga. Ann. Code §§ 11-1-203.........................................................................................20

Ga. Ann. Code §§ 11-3-201 *et seq.* ..........................................................................14, 15

Ga. Ann. Code §§ 11-3-203 .......................................................................................... 14

Ga. Ann. Code §§ 11-3-204 .......................................................................................... 14

Ga. Ann. Code §§ 11-3-205(b) ...................................................................................... 14

Ga. Ann. Code §§ 11-3-307 .......................................................................................... 14

**OTHER AUTHORITIES**

24 C.F.R. 3500.21(d) ..................................................................................................... 12

## INTRODUCTION

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors (the "Debtors"), hereby submits this post-trial brief (the "Post-trial Brief") (a) in opposition to (i) Motion for Judgment as a Matter of Law of Administrative Claim Entered [D.I. 10148]; (ii) Motion for Entry of Administrative Claim with Brief in Support [D.I. 9692]; and (iii) claims numbered 10870, 10875 and 10887 filed by Mr. Hussain Kareem; (b) in further support of the Plan Trustee's omnibus objection thereto [D.I. 10182] (the "Objection"); and (c) in response to Mr. Kareem's post-trial brief.   In support of this Post-trial Brief, the Plan Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

While the facts appear to be relatively uncontested, the legal implications of those facts are certainly in dispute.  In 2006, Mr. Kareem sought and received a cash-out refinance, which was funded by American Brokers Conduit, a d/b/a of AHM Corp.  In connection with that refinance, AHM Corp. sent multiple disclosures to Mr. Kareem prior to the closing of the loan; disclosures that Mr. Kareem again received - and executed - at the closing of his loan.  In addition to the disclosures, Mr. Kareem executed a promissory note, rider and security instrument which set forth the terms of the loan and provided AHM Corp. with a security interest in Mr. Kareem's property.

Subsequent to the closing of the loan, and a full year before the Debtors' bankruptcy, AHM Corp. sold Mr. Kareem's loan to the AHMA 2006-3 Trust.  Following the sale

---

[1]    Capitalized terms not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them *infra*.

of the loan, AHM SV (who was the original servicer of the loan) remained as servicer. Following the Debtors' bankruptcy and pursuant to this Court's order, the Debtors' sold their servicing business to AHMSI. Mr. Kareem was not provided notice of the Debtors' bankruptcy or the subsequent sale of the Debtors' servicing business.

Following the sale of the servicing business, Mr. Kareem defaulted on his loan, and AHMSI commenced collection efforts. Only after collection efforts began did Mr. Kareem attempt to rescind his loan or otherwise contest the validity of the loan and mortgage.

Mr. Kareem's legal arguments are flawed as a result of misinterpretations or misapplications of the law. As a threshold matter, the elements of his current action overlap with those facts that he was required to prove – and failed to prove – as part of the elements of his action against, among others, MERS and the current servicer of his loan (*i.e.,* the Texas Action). Indeed, the Texas District Court adopted the findings of the Magistrate Judge, which included (i) no breach of the Note, (ii) no ability for Mr. Kareem to rescind his Note, (iii) AHMSI, the current servicer of the loan, complied with RESPA, (iv) there was no violation or resulting damages relating to AHMSI changing the account number related to Mr. Kareem's loan. While Mr. Kareem is correct that neither the Plan Trustee nor any of the Debtors were parties to the Texas Action, issue preclusion does not require that the current defendants be parties to the action – only that the person in which the doctrine is being applied against was a party and had a full opportunity and reason to address the issues.

Mr. Kareem's notice claims are without merit because the contract and applicable law (at the time of the particular actions) did not require such notice. At all times, Mr. Kareem's loan was serviced by a company named American Home Mortgage Servicing, Inc. located in Irving, Texas (although ownership of that company changed hands post-petition). Mr. Kareem

was in direct contact with the servicing entity throughout the term of his loan and was provided all requested information. Even had Mr. Kareem been required to receive notice of various changes in the ownership of the loan, Mr. Kareem failed to provide any evidence of how such failure resulted in any damages to Mr. Kareem.

Mr. Kareem also attempts to place fiduciary obligations on the Debtors and/or MERS as the Debtors' nominee under the Security Deed. First, Mr. Kareem included MERS in his Texas Action, which was dismissed. Mr. Kareem may not collaterally attack the Texas District Court's order though this proceeding. Moreover, Georgia courts have consistently held that (i) no fiduciary duties exist between a borrower and the lender and (ii) MERS is a proper nominee in circumstances such as these.

Mr. Kareem asserts additional claims against the Debtors for failure to provide Mr. Kareem with information regarding the terms of his Note, however, the evidence presented at trial showed that Mr. Kareem was sent multiple disclosures regarding the terms of his loans – including the adjustable rate and potential negative amortization – both prior to and at the closing of his loan. Moreover, the Note, Rider, and Security Deed that Mr. Kareem executed (in addition to the specific disclosures) all provided – on the first page, in large capital letters, and block quote indentation – that Mr. Kareem could end up owing more than the original amount of his loan. The terms of the loan, including the costs associated with the loan, were in compliance with applicable laws. Moreover, the evidence shows that Mr. Kareem received benefits from the refinance, including, among other things, (i) payoff of his existing mortgage, (ii) payment of certain debts, (iii) cash out, (iv) a fixed minimum payment (which had not expired prior to his default), and (v) an adjustable rate with a reasonable margin tied to a stable index. Indeed, if Mr. Kareem were current on his loan today, his interest rate would be an enviable 2.6%. Not only

has Mr. Kareem failed to show that the terms of his loan were hidden, but he fails to allege (i) what terms he thought he was getting and how they differed from what he received, (ii) how such differences impacted his current situation (particularly in light of the fact that Mr. Kareem failed to perform under the Note during the time of minimum payments), and (iii) how he has been damaged as a direct result of such impact.

Because the remaining claims appear to be premised on the erroneous assertions above - such as the Debtors' alleged failure to acknowledge that Mr. Kareem's loan was discharged or to stop the current owner and servicer of the Note from acting against Mr. Kareem – they must also be denied.

## FACTUAL BACKGROUND[2]

In May 2006, Mr. Kareem sought a cash-out refinance on his home through a third-party broker, Global Mortgage. (Br. 2; Ex. 1; Tr. 92:14-17, 93:5-9.)

On June 26, 2006, Global Mortgage submitted Mr. Kareem's loan application to American Home Mortgage Corp. (d/b/a American Brokers Conduit) ("AHM Corp."), which was received in hard copy on June 28, 2006. (Ex. 1.)

On June 29, 2006, AHM Corp. mailed Mr. Kareem his "three-day docs" package to his current mailing address. (Tr. 113:12-22.) Included in these "three-day docs" were (i) a copy of his loan application, (ii) disclosure of credit score information, (iii) privacy policy notices, (iv) initial Truth-in-Lending Statements, and (v) disclosures regarding the type of loan product Mr. Kareem selected including a Fixed Payment ARM Disclosure (defined below) and a disclosure regarding payment option ARMs. (Ex. 13; Tr. 121-126.)

---

[2]     Hearing exhibits will be referred to as Ex. ___ at ___, and references to the transcript will be noted as Tr. at ___.

On July 7, 2006, Mr. Kareem closed on his loan (the "Kareem Loan") in the amount of $159,200.00. (Ex. 3-6; Tr. 32:7-8; Tr. 42:10-11; Tr. 102-104.)  The Kareem Loan was secured by the property located at 2197 Carlysle Creek Drive, Lawrenceville, Georgia 30044 (the "Kareem Property").  (Ex. 6.)   At closing, Mr. Kareem's existing mortgage, as well as other debts, were paid off, and Mr. Kareem received cash in the amount of $2,314.40. (Ex. 3; Tr. 105:8-9.)

At closing, Mr. Kareem executed the documents governing the Kareem Loan, as well as a number of disclosures which advised Mr. Kareem of the salient terms of his loan, including, but not limited to: *Adjustable Rate Note* (the "Note") (Ex. 4), *Adjustable Rate Rider* (the "Rider") (Ex.5), *Security Deed* (Ex. 6)*, Final Truth-in-Lending Disclosure Statement* ("Final TIL") (Ex. 11), *5 Year Fixed Payment 12-Month MTA Index Power ARM Disclosure* (the "Fixed Payment ARM Disclosure") (Ex. 9), and *Notice of Right to Rescind* (the "Right to Rescind Notice") (Ex. 12).  (Tr. 112-113.)

Mr. Kareem did not exercise his right to rescind the Kareem Loan prior to the expiration of the Rescission Period, (Tr. 111:22-24) and, on July 12, 2006, AHM Corp. funded the loan (Tr. 119:16-21).

Commencing upon closing, AHM SV acted as servicer of the Kareem Loan. (Tr. 126-27.)

On July 28, 2006, the Kareem Loan was sold to a securitization trust entitled AHMA 2006-3 (the "AHMA 2006-3 Trust") on a "servicing retained" basis (*i.e.*, AHM SV continued to act as servicer to the Kareem Loan).  (Tr. 126-27.)

On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition commencing the above-captioned cases under chapter 11 of the Bankruptcy

Code (the "Bankruptcy Cases").[3]  The Bankruptcy Cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to an order of this Court.

On October 30, 2007, this Court entered an order (the "Servicing Sale Order")

approving the Debtors' sale (the "Servicing Sale") of the mortgage servicing business to AH

Mortgage Acquisition Co., Inc. (now known as American Home Mortgage Servicing, Inc.,

"AHMSI") [D.I. 1711].  (Ex. 31.)

Following the final closing of the Servicing Sale on April 11, 2008, AHMSI

became servicer of the Kareem Loan.  (Tr. 128:1-5.)  Upon information and belief, AHMSI

continues to service the Kareem Loan for the benefit of the AHMA 2006-3 Trust.  (Ex. 20.)

On or about July 7, 2008, in response to Mr. Kareem's request, AHMSI provided

Mr. Kareem with a copy of his promissory note.  (Tr. 58-59 (addressing party admissions).)

On August 7, 2008, AHMSI sent Mr. Kareem a notice of default (the "Notice of

Default") for failure to make payments on the Kareem Loan.  (See Exhibit 1 to Ex. 20).

In response to the Notice of Default, Mr. Kareem made three demands for

rescission and, each were denied by AHMSI on or about August 26, 2008, February 24, 2009

and September 27, 2009.  (Tr. 58-59 (Court admitting certain party admissions regarding such

facts).)

In or about October 2008, Mr. Kareem sent a letter to Mr. Michael Strauss, former

CEO of the Debtors, demanding rescission of the Kareem Loan. (Ex. 16.)  The Debtors

---

[3]      The Debtors' Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I.
7042].  The Plan became effective on November 30, 2010 (the "Effective Date").  Pursuant to the Plan, as of the
Effective Date, the Plan Trust was established and all of the Debtors' assets, causes of action, claims, rights and
interests, succeeded, transferred and vested in the Plan Trust.  Steven D. Sass is the duly appointed Plan Trustee for
the Plan Trust.  The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation
Order and Plan Trust Agreement.

forwarded the October 2008 Letter to AHMSI, as the Debtors no longer had any servicing or ownership rights to the Kareem Loan. (Tr. 131:5-20.)

AHMSI refused Mr. Kareem's rescission demand set forth in the October 2008 Letter. Thereafter, AHMSI provided a formal, written response to the October 2008 Letter on February 6, 2009. (Exhibit 3 to Ex. 20.)

On November 18, 2009, Mr. Kareem filed a complaint against AHM Holdings, AHMSI, MERS, R.K. Arnold, CEO of MERS, and David Friedman, CEO of AHMSI in the Northern District of Texas (the "Texas District Court"), Case No. 10-00762 for the alleged illegal foreclosure of the Kareem Property (the "Texas Action").[4] Mr. Kareem made numerous claims including the following: (i) violations of the Truth in Lending Act; (ii) violations of the Real Estate Settlement Procedures Act; (iii) unspecified civil rights violations; (iv) fraud; (v) breach of contract; (vi) wrongful foreclosure; (vii) rescission; (viii) credit libel; and (ix) violations of Georgia law related to the alteration of loan documents.

Due to the pendency of the Bankruptcy Cases, the Texas Action was stayed as against AHM Holdings. Mr. Kareem subsequently amended his complaint, asserting claims only against AHMSI, MERS, R.K. Arnold and David Friedman (collectively, the "Texas Action Defendants").

The Texas Action was referred by the Texas District Court to Jeff Kaplan, United States Magistrate Judge. On April 12, 2011, the Magistrate Judge entered his Findings and Recommendations to the District Court in the Illegal Foreclosure Action, finding that summary judgment should be granted in favor of the Texas Action Defendants and that the complaint should be dismissed with prejudice. (Ex. 25 [Texas Action D.I. 112].) Specifically, the

---

[4] This Court may take judicial notice of the actions in the Texas Action and the orders entered therein. The Plan Trustee provides the Plan Trustee exhibit numbers for reference only.

Magistrate Judge found that Mr. Kareem's TILA claims were timed barred, and furthermore, "[t]here is no evidence that [Mr. Kareem] has returned, or offered to return, the benefit he received from the contract." The Magistrate Judge also noted that, if there was any breach of the agreement, it was on the part of Mr. Kareem who "all but admits he failed to perform or tender performance" under the Kareem Loan. (Ex. 25.)

Thereafter, on May 13, 2011, the Texas District Court adopted the Findings, Conclusions and Recommendations of the Magistrate Judge and dismissed all claims against the Texas Action Defendants with prejudice. (Ex. 26 [Texas Action D.I. 115 & 116].)

On July 20, 2011, Mr. Kareem appealed the Texas District Court's orders dismissing the Texas Action and denying Mr. Kareem a new trial. The appeal (the "Texas Appeal") is fully briefed and currently pending before the Fifth Circuit Court of Appeals, Case Number 11-10701.

In January 2011, Mr. Kareem filed two separate proofs of claim in these Bankruptcy Cases, which are identified by the claims agent as claims 10870 and 10875. Subsequently, Kurtzman Carson Consultants ("KCC") (not the claims agent retained in these cases) forwarded a proof of claim it received from Mr. Kareem to Epiq Solutions (the claims agent in these cases), which was provided a claim number of 10887[5] (together with claims numbered 10870 and 10875, the "Kareem Claims").[6]

---

[5]      Claim No. 10887, forwarded from KCC, does not include supporting documentation, and upon information and belief, is duplicative of, or is superseded by, those claims appropriately submitted to Epiq Solutions. Accordingly, the Plan Trust further objects to Claim 10887 on these non-substantive bases.

[6]      Mr. Kareem also filed a pleading titled *Judicial Notice: Second Attempt to Deliver Proof of Claim* [D.I. 9693], which appears to be a request to allow the Kareem Claims as late-filed due to mailing difficulties. The Plan Trustee does not object to the Kareem Claims or either Motion as late-filed.

On January 20, 2011, Mr. Kareem filed his *Motion for Entry of Administrative Claim with Brief in Support* [D.I. 9692] (the "First Administrative Claim Motion") requesting allowance of an administrative claim.

On or about August 12, 2011, Mr. Kareem filed his *Motion for Judgment as a Matter of Law of Administrative Claim Entered* [D.I. 10148] (the "Second Administrative Claim Motion, and together with the First Administrative Claim Motion, the "Kareem Motions").

On September 30, 2011, the Plan Trustee objected to the Kareem Motions and Kareem Claims.  [D.I. 10182]

This Court held a hearing to consider the Kareem Motions and Kareem Claims and related Objection on November 18, 2011.

## ARGUMENT

I.     **Mr. Kareem's Claims Should Be Disallowed Under the Doctrine of Issue Preclusion**[7]

Issue preclusion, formerly called collateral estoppel, provides that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigating the issue. Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., 585 F. Supp. 2d 623, 628 (D. Del. 2008) (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)).  Under the doctrine, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 247 (3d Cir. 2010) (citing Montana v. United States, 440 U.S. 147 (1979)).  Four elements must exist for the doctrine to apply: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision;  and

---

[7]     The facts subject to issue preclusion were included, in chart form, in the Plan Trustee's Objection, which is fully incorporated herein by reference.

(4) the party being precluded from relitigating the issue was fully represented in the prior

action." Id. at 248 (citing Zzehinskyj v. Attorney Gen. of the United States, 432 F.3d 253, 255

(3d Cir. 2005)).

Assuming the Fifth Circuit affirms the orders in the Texas Action,[8] all four factors

will have been met for this Court to apply the findings of fact and conclusions of law set forth by

the Magistrate Judge and adopted by the Texas District Court to the relevant facts of this matter.

The relevant issues of fact and law were actually litigated through the summary judgment

process in the Texas District Court. See Kliesh v. Select Portfolio Servicing, Inc., 419 Fed.

Appx. 268, 271 (3d Cir. 2011) (Third Circuit determined that borrower's subsequent federal

action was barred by principles of issue preclusion where state court granted summary judgment

for defendant servicer for related state law actions).  Mr. Kareem had a full opportunity to

provide sufficient evidence to withstand a motion for summary judgment regarding claims

essentially identical to those now being asserted against AHM Holdings (and were predicated

upon a showing of the Debtors' wrongdoing under successor liability theories).  As a result, Mr.

Kareem should be precluded from attempting to relitigate these same issues, but against a

different party.  Accordingly, the Plan Trustee respectfully requests that this Court adjourn

determination of the Kareem Motions and Claims until the Texas Appeal is completed and, upon

affirmance of the orders in the Texas Action, deny Mr. Kareem's claims here.

## II.    The Evidentiary Record Is Complete, and Mr. Kareem Failed
to Meet His Burden in Proving His Claims Against the Debtors' Estates

Mr. Kareem – not the Plan Trustee - has the initial and ultimate burden of proof to

support his claim, including each element of each cause of action. See In re Allegheny Int'l,

Inc., 954 F.2d 167, 173 (3d Cir. 1992) (The initial burden is on the claimant to allege facts

---

[8]    Briefing on the appeal was completed on January 20, 2012. Pursuant to the Clerks Frequently Asked
Questions, the Fifth Circuit strives to issue an opinion within 60 days of submission.

sufficient to support its claim, and, if the averments in such claim fail to meet the standard of sufficiency, it is not '*prima facie*' valid.); In re Fidelity Mortgage Holding Co., 837 F.2d 696, 698 (5th Cir. 1988) (If an objection to a proof of claim is made, as it is here, the ultimate burden of proof still remains upon the creditor.).

Mr. Kareem was provided a full opportunity to present evidence supporting his claims at the hearing on November 18, 2011, however, such evidence falls short of meeting his burden for any of his claims for the reasons herein. As he had his opportunity at a hearing that he demanded, Mr. Kareem cannot now argue any "potential" breaches or violations, allege facts not in evidence, or assert that additional evidence may be forthcoming.[9]

### A.   Mr. Kareem's Claims Do Not Accurately Reflect the State of the Law, the Facts In Evidence or the Debtors' Obligations to Mr. Kareem

Throughout his papers, Mr. Kareem cites to multiple provisions of his Note and related documents, as well as numerous statutes – none of which provide a basis for liability against any of the Debtors. Put simply, the citations are either irrelevant to the current action or their effects are misinterpreted.

#### i.   Breach of Contract

"In Georgia, the elements of a breach of contract claim are '(1) breach and (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'" Jenkins v. BAC Home Loan Servicing, LP, Case No. 7:11-cv-73 (HL), 2011 U.S. Dist. LEXIS 111235, at *20 (M.D. Ga. Sept. 29, 2011). "The breach must be more than de minimus and substantial compliance with the terms of the contract is all that the law requires."

---

[9]   *E.g.,* Br. 8 (asserting that Debtors "may" be grossly negligent), Br. 9, 13 (asserting that Mr. Kareem's Note was converted into a stock certificate), Br. 13 n.8 (inquiring whether "AHMH" permitted MERS to assign over documents), Br. 16 (arguing a "material issue of fact" rearding whether the servicing was assigned), Br. 25-26 (enumerating more "potential" defaults and violations and asserting that "a more extensive independent audit is forthcoming), Br. 22 n.29 ("Claimant is prepared for more of an in-depth forensic audit findings relevant to all issues at hand.")

Id. (citing Kuritzy v. Emory Univ., 669 S.E.2d 179, 181 (Ga. Ct. App. 2008)).  Mr. Kareem's claim for breach of contract essentially stems from two legal theories: (1) the Debtors failed to provide notice of various actions related to Mr. Kareem's loan, and (2) the effect of the sale of the Note to the AHMA 2006-3 Trust.[10]  As set forth below, no such notice was required under applicable law or contract, and the sale of the Note was in full compliance with the Georgia Code.

First, Mr. Kareem was not entitled to notice of the sale of his Note or the transfer of servicing rights.  By executing the Note, Mr. Kareem acknowledged that AHM Corp., as lender, may transfer the Note. (Ex. 4, ¶ 1 ("I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder"").)  Moreover, the Security Deed expressly provides, not only for the ability of the Note to be sold, but that Mr. Kareem is not entitled to notice of such a sale. (Ex. 6, ¶ 20 ("The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times *without prior notice to Borrower*.") (emphasis added).)  With respect to the transfer of servicing rights, which was sold pursuant to a Court-approved sale process, because the name of the servicer, address to which payment must be delivered, account number[11] and amount due did not change  (Tr. 128:9-129:6), Mr. Kareem was not entitled to notice.  12 U.S.C. § 3500.21(d); 24 C.F.R. 3500.21(d) (RESPA exemption for

---

[10]     Mr. Kareem appears to baldly assert a claim for "unjust enrichment" under his breach of contract claim and alleges the Plan Trustee does not oppose such a claim.  As Mr. Kareem has never raised the theory of unjust enrichment and fails to articulate a discernible claim under such a theory in his current brief, it must fail.  See, e.g. Jenkins v. BAC Home Loan Servicing, LP, Case No, 7:11-cv-73 (HL), 2011 U.S. Dist. LEXIS 111235, at *10 (M.D. Ga. Sept. 29, 2011) (no unjust enrichment claim when there is an actual contract between the parties).

[11]     Several months following the final closing of the Servicing Sale, AHMSI changed servicing platforms, which resulted in the change of borrower account numbers.  (Tr. 60:14-61:2 , 83:6-14, 128:9-129:6.)  Accordingly, to the extent any claim exists with respect to the change of account numbers, it should be (and was) brought against AHMSI, not any of the Debtorsas the Debtors had no part in this change.  As determined by the Texas District Court, the account number change did not result in a material change in the Kareem Loan, and Mr. Kareem was not harmed by such change.

12

servicing transfer resulting from acquisition of servicer where cited information remains same).

(Ex. 6, ¶ 20 (notice of change in servicer limited to changes of name, address of new servicer,

where payments should be sent and anything RESPA requires)).

Mr. Kareem's demand for notice regarding the Debtor's bankruptcy is equally

unavailing. Mr. Kareem's citation to language of certain documents, including his Note,

regarding notices do not provide any requirement to provide Mr. Kareem with notice of the

Bankruptcy Cases, but rather for notice of (i) changes in amount of Mr. Kareem's monthly

payment (Ex. 4, ¶ 4(J); Ex. 5, ¶), and (ii) notice and opportunity to cure prior to acceleration of the

Note and commencing litigation against Mr. Kareem (Ex. 6, ¶ 22). While Mr. Kareem also

appears to cite RESPA generally, there is simply no provision of RESPA that requires notice to

borrowers in the event of a bankruptcy of a lender, current owner/investor (which the Debtor was

not) or current servicer. See generally 12 U.S.C. § 2601 et seq. Moreover, this Court has

previously held that notice of the bar dates in the Debtors' bankruptcy cases was not required to

borrowers. (D.I. 7042, ¶ Q (Court finding that borrowers who were not known creditors were not

entitled to notice of the bar dates); D.I. 1708 (Court established general bar date of January 11,

2008 in these cases); Tr. 130-131 (Mr. Kareem did not dispute his loan until October 2008 [over

a year after the bankruptcy and approximately 10 months after the general bar date in these cases

of January 11, 2008]).)

Second, Mr. Kareem erroneously alleges that the Debtors converted Mr.

Kareem's loan into a stock certificate. This allegation is most likely the result of a

misunderstanding of the securitization process, however, the record is clear:  the Debtors sold

Mr. Kareem's loan to the AHMA 2006-3 Trust. (Br., ¶ 2(B), p. 28; Ex. 100, 100-B; Tr. 41-42,

126:15-18.) In doing so, the Debtors indorsed the Note in blank, which was subsequently

13

delivered to the AHMA 2006-3 Trust and/or its custodian. (Ex. 4; Tr. 41:6-10; 106:1-13.) Such

acts are entirely consistent with Georgia laws. Ga. Ann. Code §§ 11-3-201(b) (transfer of a

negotiable instrument which is payable to an identified person (*i.e.*, AHM Corp.) can only be

accomplished through both transfer of possession and indorsement by the holder), 11-3-204

(defining indorsement as a signature made "on an instrument" for purpose of negotiating (*i.e.*,

transferring) the Note); 11-3-205(b) (permitting "blank indorsement" and the transfer of such by

possession alone); 11-3-203 (transfer of an instrument vests the transferee any rights of the

transferor to enforce the instrument).

### ii.    Breach of Fiduciary Duty

Mr. Kareem's argument for breach of fiduciary duty fails because the Debtors did

not (and do not) have a fiduciary relationship with Mr. Kareem.  See White v. Ams. Servicing

Co., Case No. 11-13101, 2012 U.S. App. LEXIS 1800 (11th Cir. Feb. 1, 2012) (unpublished)

("Georgia court have held that as a matter of law, no fiduciary relationship exists merely because

of two parties' relative relationships as lender and borrower."), citing Moore v. Bank of

Fitzgerald, 483 S.E.2d 135, 139 (Ga. Ct. App. 1997); see also Richards v. First Union Nat'l

Bank, 405 S.E.2d 705, 706 (Ga. Ct. App. 1991) ("bank's management of trust or agency

accounts on behalf of a customer 'does not create a confidential or fiduciary relationship. . . .'").

Moreover, the plain language of section 11-3-307 of the Georgia Annotated Code (cited by Mr.

Kareem) provides for *notice* of a breach of fiduciary claim, but does not create a fiduciary

relationship.

Even if a fiduciary relationship had existed, Mr. Kareem fails to identify any

breach by the Debtors or damages relating thereto.  While Mr. Kareem appears to reference the

change in servicing account numbers, such actions were taken by AHMSI following sale of the

servicing business – and the Texas Court found that there was nothing improper by the change of

14

account number and that Mr. Kareem was not damaged by the change. (Ex. 25, 26.) Even had

such actions been made improperly, the Mr. Kareem's claims would be against AHMSI, not the

Debtors, and Mr. Kareem cannot collaterally attack those findings in this Court.

### iii.    Unfair and Deceptive Business Practices

As a threshold issue, given that mortgage transactions are heavily regulated

through other statutes, Georgia courts generally dismiss claims under the Georgia Fair Business

Practices Act that allege injury based on mortgage transactions. Jenkins v. BAC Home Loan

Servicing, LP, Case No, 7:11-cv-73 (HL), 2011 U.S. Dist. LEXIS 111235, at *10 (M.D. Ga.

Sept. 29, 2011) (denying borrower claim under FBPA because act was only intended to provide

relief to individuals who suffer harm in the unregulated consumer marketplace). Even if this

claim were permitted, Mr. Kareem essentially alleges three ways[12] by which the Debtors engaged

in unfair and deceptive business practices – each of which fails.

First, Mr. Kareem re-avers that the Debtors converted Mr. Kareem's loan into a

stock certificate. As noted above, such allegations misconstrue the acts and legal implications of

selling the Note to the AHMA 2006-3 Trust, which were completed in accordance with

applicable Georgia laws. Ga. Ann. Code §§ 11-3-201 *et seq.*

Second, Mr. Kareem's argument regarding the propriety of MERS's involvement

is contradicted by the express terms of the Security Deed:

---

[12]    In a footnote under this heading, Mr. Kareem appears to re-allege his claim regarding whether Mr. Kareem's loan was a "high cost" loan. The Plan Trustee believes that the record is clear regarding the Debtors' policies not to originate high cost loans and the reports run under such policies regarding Mr. Kareem's loan that indicate it was not a high cost loan. (Ex. 14, 15; Tr. 117-19). Moreover, the terms of the loan do not constitute a high cost loan, as was fully briefed in the Plan Trustee's Objection which is incorporated herein. Finally, the statute cited by Mr. Kareem requires a comparison of his original loan and the instant loan – Mr. Kareem did not present any evidence regarding his original loan for such a comparison. There is, however, evidence that (i) he was attracted to the current loan due to a decrease in his monthly payments (Tr. 73:6-14); (ii) his monthly payments decreased from 1,229 to $580 (Ex. 3, 4; Tr. 97-98, 100:5-7); (iii) by the current loan, Mr. Kareem paid off the existing loan as well as additional debts owing and received cash out at closing (Ex 3).

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, right to foreclose and sell the Property; and to tak any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

(Ex. 6, p. 3.)   The usage of MERS under these circumstances has been upheld in Georgia courts.

See, e.g., Nelson v. Bank of Am., N.A., Case No. 11-CV-3890, 2012 U.S. Dist. LEXIS 12159,

at *3-6 (N.D. Ga. Jan. 31, 2012) (dismissing claim where MERS, as nominee for lender,

assigned security deed before foreclosure).  As here, Plaintiff in the Nelson case argued that

MERS could not transfer the relevant Security Deed, yet Plaintiff had executed the Security

Deed which expressly provided for Plaintiff's acknowledgment and agreement to MERS to act

as nominee for the lender.  Id. at *4.  Because Nelson "explicitly recognized that MERS had

authority to exercise the interests granted in the Security Deed, including the authority to assign

the Security Deed[,]" the assignment was valid.  Id. at *5.

Third, Mr. Kareem claims that the Debtors did not disclose that the terms of his

Note permitted negative amortization.  Such claim is belied by the record.  AHM Corp. provided

Mr. Kareem with copies of the model disclosure regarding Interest-Only Mortgage Payments and

Payment Option Arms (Ex. 10) within the "three-day" package (discussed below) and at closing.

(Ex. 10, 13; Tr. 112-114, 121-126.)   Lenders who use such model forms, as AHM Corp. did

here, are deemed to be in compliance with the applicable disclosure provisions of the Truth-in-

Lending Act. 15 U.S.C. § 1604(b).

In addition, the "three-day" package that AHM Corp. mailed to Mr. Kareem on

June 29, 2006 included (among other things and in addition to the Power Option ARM

Disclosure), (i) a copy of his loan application (Ex. 1), (ii) disclosure of credit score information,

(iii) RESPA Servicing Disclosure (Ex. 7), (iv) initial Truth-in-Lending Statements, (v) a Fixed

Payment ARM Disclosure (Ex. 9). (Ex. 13; Tr. 121-26.)

      At closing, Mr. Kareem executed the documents governing the Kareem Loan, as

well as a number of disclosures which advised Mr. Kareem of the salient terms of his loan,

including, but not limited to:

      (i)    *Adjustable Rate Note.* The preamble of the Note provides, in capital

letters:

> THIS NOTE CONTAINS PROVISIONS ALLOWING
> FOR CHANGES IN MY INTEREST RATE AND MY
> MONTHLY PAYMENT. BECAUSE MY INTEREST
> RATE WILL CHANGE MORE FREQUENTLY THAN
> MY MONTHLY PAYMENT, AND BECAUSE THERE
> ARE LIMITATIONS ON MY MONTHLY PAYMENT
> INCREASES, THE AMOUNT OF MY MONTHLY
> PAYMENT MAY NOT FULLY PAY THE INTEREST
> THAT ACCRUES. AS A RESULT, THE PRINCIPAL
> AMOUNT THAT I MUST REPAY COULD BE LARGER
> THAN THE AMOUNT I ORIGINALLY BORROWED,
> BUT NOT MORE THAN 110.000% OF THE ORIGINAL
> AMOUNT (OR $175,120.00). MY INTEREST RATE
> CAN NEVER EXCEED THE LIMIT STATED IN THIS
> NOTE OR ANY RIDER TO THIS NOTE. A BALLOON
> PAYMENT MAY BE DUE AT MATURITY.

(Ex. 4.)

      (ii)    *Adjustable Rate Ride.* Mr. Kareem initialed each page and executed the

Rider, the first page of which expressly provided in block quote and all capital

letters:

> THIS RIDER CONTAINS PROVISIONS ALLOWING
> FOR CHANGES IN MY INTEREST RATE AND MY
> MONTHLY PAYMENT. BECAUSE MY INTEREST
> RATE WILL CHANGE MORE FREQUENTLY THAN
> MY MONTHLY PAYMENT, AND BECAUSE THERE
> ARE LIMITATIONS ON MY MONTHLY PAYMENT
> INCREASES, THE AMOUNT OF MY MONTHLY
> PAYMENT MAY NOT FULLY PAY THE INTEREST

> THAT ACCRUES.  AS A RESULT, THE PRINCIPAL
> AMOUNT THAT I MUST REPAY COULD BE LARGER
> THAN THE AMOUNT I ORIGINALLY BORROWED,
> BUT NOT MORE THAN 110.000% OF THE ORIGINAL
> AMOUNT (OR $175,120.00).  MY INTEREST RATE
> CAN NEVER EXCEED THE LIMIT STATED IN THE
> NOTE AND RIDER.  A BALLOON PAYMENT MAY
> BE DUE AT MATURITY.

(Ex. 5.)

(iii)    *Security Deed*, which provided American Brokers Conduit (a "d/b/a" of American Home Mortgage Corp.) with a security interest in the Kareem Property. (Ex. 6.)

(iv)    *Final Truth-in-Lending Disclosure Statement*.  The Final TIL provides that Mr. Kareem's loan has a variable rate feature and identifies the Annual Percentage Rate of 7.014% (i.e., 6.832% monthly).[13]  (Ex. 11.)

(v)    *5 Year Fixed Payment 12-Month MTA Index Power ARM Disclosure* (i.e., the "Fixed Payment ARM Disclosure").  The first paragraph of the Fixed Payment ARM Disclosure expressly provides, in capital letters, that "THIS LOAN ALLOWS FOR NEGATIVE AMORTIZATION," and the subsequent pages provide examples of various payment scenarios, including how monthly payments may change when adjusted for the ***maximum*** interest rate under the loan.  Mr. Kareem initialed each page and executed the Fixed Payment ARM Disclosure.  (Ex. 9.)

(vi)    *Notice of Right to Rescind*.  The Right to Rescind Notice is consistent with the requirements under Truth in Lending Act as of the closing of the Kareem

---

[13]    Notably, the disclosure does ***not*** apply the APR based on the initial 1.9% rate, but rather uses the second month's rate of 6.832% monthly thereby providing Mr. Kareem full disclosure of his adjustable interest rate. To the extent that Mr. Kareem argues that this APR disclosure is greater than what the terms of his Note provide (as is suggested by his Exhibit 400), such ***overdisclosure*** is acceptable. *See* 15 USC § 1635(i)(2).

Loan and explained his right to rescind his mortgage within three business days of the conclusion of the transaction. (Ex. 12.)

As was disclosed to him through the Notice of Right to Rescind, Mr. Kareem was provided three additional days after closing to further review his closing documents and to exercise his option to rescind the loan transaction. (Ex. 12.) Mr. Kareem did not exercise his right to rescind the Kareem Loan prior to the expiration of the rescission period, (Tr. 111:22-24) and, on July 12, 2006, AHM Corp. funded the loan (Tr. 119:16-21), paying off his current mortgage as well as other debts and providing Mr. Kareem with additional cash (Ex. 3).

### iv.    Breaches Under Prospectus and 2006-3 PSA

Mr. Kareem asserts a new claim against the Debtors' estates for alleged breach of the prospectus issued in connection with the AHMA 2006-3 Trust (the "Prospectus") and the Pooling and Servicing Agreement ("PSA") in connection with the loans subject to the AHMA 2006-3 Trust.[14] Mr. Kareem, however, failed to provide any evidence regarding these claims – including the Prospectus or PSA – at trial.

Had these documents been provided, it would be evident that neither the Debtors nor Mr. Kareem are parties to them. The Prospectus was issued for the benefit of prospective shareholders and the PSA was by and among American Home Mortgage Assets LLC, Wells Fargo Bank, N.A. and Citibank, N.A. Mr. Kareem is not a third-party beneficiary to either document. PSA, § 11.10 (naming only the "Servicer" as a third-party beneficiary).

For avoidance of doubt, the Debtors' sold its servicing rights related to the AHMA 2006-3 Trust in connection with the sale of the Debtors' servicing business. See D.I. 1711, Schedule 1.1(j)es (Ex. 31). As indicated on the schedule, the servicing rights of the AHM

---

[14]    Mr. Kareem's allegations that AHMA 2006-3 is non-existent is without basis. On January 29, 2007, the AMHA 2006-3 Trust filed a Form 15, which is merely provided for the suspension of SEC reporting requirements due to the limited number of holders of record. It did not terminate or otherwise dissolve the AHMA 2006-3 Trust.

SV (and sold to AHMSI) were not part of the PSA, but rather set forth in a separate Servicing

Agreement (the "Servicing Agreement"), dated as of July 28, 2006, among Wells Fargo

Bank,N.A. as Master Servicer, Citibank, N.A., as Trustee, AHM Corp., as Sponsor, and AHM

SV, as Servicer.  Mr. Kareem is neither a party to the Servicing Agreement nor a third party

beneficiary.  Mr. Kareem's citation to a wholly irrelevant contract on Schedule 2.1(b)(ii) is

unavailing.

> **v.      Failure to Meet "Good Faith Obligation"**
> **under UCC § 11-1-203**

Mr. Kareem's claims that the Debtors failed their good faith obligations is

meritless.  Section 11-1-203 of the Georgia Code provides for an "obligation of good faith" in

performance or enforcement of every contract under Georgia's Commercial Code; however,

Georgia does not recognize an independent cause of action for breach of duty of good faith in

performing a contract governed by its Commercial Code.  See, e.g., Heritage Creek Dev. Corp.

v. Colonial Bank, 601 S.E.2d 842, 847 (Ga. App. Ct. 2004) (granting summary judgment against

borrower's breach of good faith claim because "there is no independent cause of action for

breach of duty of good faith in performing a contract governed by the UCC.").

> **vi.     Predatory Lending Practices**

Mr. Kareem's section on predatory lending does not appear to assert any elements

of a particular claim, but, at most, may be considered a reiteration of his previously outlined

claims.  To the extent that Mr. Kareem is attempting to assert an additional cause of action, by

his own admission, such issues were not addressed at trial. (Br. 25.)  Because Mr. Kareem has

the burden of proving predatory lending in connection with his loan, rather than the Plan Trustee

having the burden of proving that the loan was done correctly, such failure to address them is to

the detriment of Mr. Kareem.  In re Fidelity Mortgage Holding Co., 837 F.2d at 698 (the ultimate

burden of proof remains upon the creditor.).

Even so, the evidence presented at trial shows that the origination of Mr.

Kareem's loan was proper.  As discussed above, Mr. Kareem was provided his "three-day"

documents including all relevant disclosures, was provided the same disclosures at closing, and

executed the operative documents and disclosures which provided for all the terms of his note,

and expressly and conspicuously identified the potential for negative amortization.  Mr. Kareem

was provided his notice of right to cancel, and failed to do so in a timely manner.

**B.      Even Had the Debtors Committed a Breach or Violation, Mr.
            Kareem Has Failed to Show Any Causal Link or Damages**

Even had Mr. Kareem shown a cognizable breach of the applicable contract

documents or violation of law, Mr. Kareem's claims would still fail because he has not met his

burden with respect to causation or damages.  For breach and tort claims, "plaintiffs must be able

to establish causation and damages." E.g., Burch v. Chase Manhattan Morg. Corp., Case No.

1:07-cv-121 (JOF), 2008 U.S. Dist. LEXIS 76595, at *42 (N.D. Ga. Sept. 15, 2008); Farash &

Robbins, Inc. v. Fleet Bank, 326 F. App'x 77, 82 (3d Cir. 2009) (plaintiff cannot prevail on a

cause of action for breach of contract where the claimed damages are speculative or uncertain in

nature); Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank, 392 F.3d 520, 526 (2d Cir. 2004) (it is

black-letter law that the alleged damages must be a foreseeable consequence of the breach, and

that damages that are "the result of other intervening causes" are not allowed.); Dupont Flooring

Sys., Inc.v. Discovery Zone, Inc., No. 98 Civ. 5101(SHS), 2004 WL 1574629, at *5-7, *9

(S.D.N.Y. July 14, 2004) (no liability for destruction of business because of pre-existing and

ongoing business and financial problems); see also Jenkins, 2011 U.S. Dist. LEXIS 111235 at

*11 (internal citation omitted) (To recover damages under RESPA, "the borrower has the

21

responsibility to present 'specific evidence to establish a causal link between the financing institution's violation and their injuries.'"). Because Mr. Kareem has failed to show how any of the alleged breaches or violations caused Mr. Kareem harm, Mr. Kareem's claims cannot succeed.

First, Mr. Kareem stopped making payments on his loan in or around September 2009, approximately a year *prior* to when the fixed payment for Mr. Kareem would have expired. (Ex. 11; Br. 3 (providing that the loan closed on July 7, 2006); Tr. 102:2-14 (testifying that the recast would occur in approximately 47 months after origination), 75:11-18 (testifying that the last payment Mr. Kareem made was in approximately September 2009).) Because Mr. Kareem's failure to make payments intervened before any damages could have arisen due to recasting or other effects of negative amortization, Mr. Kareem cannot show that any alleged disclosure deficiencies by the Debtors caused the delinquencies by Mr. Kareem or any other potential harm under the contract. Burch, 2008 U.S. Dist. LEXIS 76595, at *42 (Wrongful act is proximate cause of injury when the injury would not have resulted "but for" the act).

Second, with respect to notice issues, Mr. Kareem's concern regarding to whom to make his payments to is incredulous given the fact that all parties are in agreement that Mr. Kareem's loan is owned by the AHMA 2006-3 Trust, and at all times the appropriate contact for Mr. Kareem was his servicer – who has maintained the same name and location throughout the life of his loan. (E.g., Br. 3, 7; Tr. 128:9-15).) Indeed, not only was Mr. Kareem provided with the owner and servicer of his loan as early as September 2009 (Tr. 41-42; Kareem Ex. D2, D), but Mr. Kareem independently confirmed that his loan is an asset of the AHMA 2006-3 Trust through a third-party source, Bloomberg (Br. 7; Kareem Ex. 100B). Not only does Mr. Kareem fail to identify any damages as a result of alleged nondisclosures of assignments, but given his

22

actual knowledge of such transfers, no such damages could exist. See, e.g., Graham v. MERS, Case No. 2:11-cv-253 (RWS), 2012 U.S. Dist. LEXIS 20704, at *10-12 (N.D. Ga. Feb. 17, 2012) (borrower's claim dismissed where borrower failed to allege actual damages from defendants' inadequate response or pattern of noncompliance), citing Habib v. Bank of Am. Corp., No. 1:10-cv -4079 (SCJ-RGV), 2011 U.S. Dist. LEXIS 69858, at *4 (N.D. Ga. Mar. 15, 2011) ("In the absence of any alleged causal link between claimed damages and [defendant]'s alleged RESPA violation, plaintiff has failed to state a RESPA claim").

Third, Mr. Kareem's damages are based on an erroneous theory that Mr. Kareem is entitled to rescission of his loan. (Tr. 48-49.)  As an initial matter, as the Debtors' estates no longer own or service Mr. Kareem's loan, rescission is remedy unavailable to Mr. Kareem.  This relief was properly sought in his Texas Action and denied. (Ex. 25, 26.)  Even if Mr. Kareem were able to seek affirmative monetary damages based on a failure to rescind (a claim which is time-barred), Mr. Kareem fails to take into account that rescission requires *both* parties to be placed in the position they were prior to the transaction. See generally 15 U.S.C. § 1635 (once creditor performs rescission, obligor shall tender property to the creditor or its reasonable value). Accordingly, for AHM Corp. to be placed in its original position, Mr. Kareem would be required to repay the original loan amount, something that has not happened or even been offered by Mr. Kareem.  At a minimum, the amounts allegedly owed to Mr. Kareem as an administrative expense would be completely offset by his own tender requirement.

To the extent that Mr. Kareem asserts additional damages (*i.e.*, $19,000 for post-petition payments; unspecified amounts for credit reporting harms and/or wrongful foreclosure, litigation costs), Mr. Kareem has failed to provide any basis or calculation for such damages. See generally, Burch, 2008 U.S. Dist. LEXIS 76595 (considering expert testimony and other

information to deny damages for, among other things, credit reporting harms). First, Mr. Kareem failed to allege (or provide any evidence) that the $19,000 in post-petition payments were not applied to his account to reduce the balance of his loan. Second, Mr. Kareem failed to allege that the Debtors ever provided any information to the credit reporting agencies, and in fact, admitted that his current servicer, rather than the Debtors, was the party that initiated foreclosure proceedings. (Br. 12(C) (admitting that the Debtors are not seeking to enforce a claim against Mr. Kareem); Tr. 168-69 (Ms. Wanerka testifying that foreclosure proceedings, if commenced by the Debtors, would have shown on the LSAMS report); Ex. 17 (LSAMS Servicing Log showing no foreclosure commenced during the Debtors' ownership or servicing period). Third, Mr. Kareem has failed to provide any evidence supporting or calculating his litigation costs, nor provided any basis for the shifting the general policy that each party pay for their own litigation expenses. See Burch, 2008 U.S. Dist. LEXIS 76595, at *53 (expenses of litgation generally shall not be allowed as damages).

III.    **To The Extent that Mr. Kareem Is Entitled to a Claim Against the Debtors, the Claims Should Be Reclassified as a General Unsecured Claim Against AHM Corp.**

Section 503 of the Bankruptcy Code accords administrative expense priority to claims representing "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To be considered an actual, necessary cost and expense of preserving the estate, a claim "must arise from a transaction with the debtor-in-possession and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the operation of the business." Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 532-33 (3d Cir. 1999) (internal citation omitted).

In order to hold administrative expenses to a minimum and to maximize the value of the bankruptcy estate, section 503(b) is narrowly construed. In re Bernard Techs., Inc., 342

24

B.R. 174, 177 (Bankr. D. Del. 2006) (Walrath, J.).  Accordingly, the movant under section

503(b)(1)(A) carries a "heavy burden of demonstrating that the costs and fees for which it seeks

payment provided an actual benefit to the estate and that such costs and expenses were necessary

to preserve the value of the estate assets."  Id. (quoting Calpine, 181 F.3d at 533); see also In re

Unidigital, Inc., 262 B.R. 283, 288 (Bankr. D. Del. 2001) ("Claimants who seek payment ahead

of other unsecured claims bear the burden of establishing that their claim qualifies for priority

status.").

      As detailed above, each of Mr. Kareem's arguments fails both factually and

legally to entitle him to any claim.  Mr. Kareem has not suggested, let alone supported, any

argument that his administrative claim represents an actual, necessary cost or expense of

preserving the Debtors' bankruptcy estates.  Indeed, the actions for which Mr. Kareem seeks

redress straddle the Debtors' post-petition involvement in Mr. Kareem's Loan.  On one side, the

crux of Mr. Kareem's complaint is origination issues, which occurred over a year prior to the

Debtors' bankruptcy filing.  Moreover, the Debtors sold the Kareem Loan on July 28, 2006 and,

thus, did not own the Kareem Loan as of the Petition Date.  On the other side, following April

11, 2008, the Debtors neither owned nor serviced the Kareem Loan.  Accordingly, Mr. Kareem's

assertions regarding the failure to comply with his rescission demands begin in October 2008,

which is after the final closing of the Debtors' Servicing Sale and are the actions of AHMSI, a

non-debtor third party.  Accordingly, because there is no post-petition transaction with the

Debtors or benefit to their estates, there is no claim that qualifies for administrative expense

status.

      Additionally, Mr. Kareem alleges that a portion of amounts owing is secured by

real estate, however, Mr. Kareem does not have a security interest in any property of the

Debtors' estates.  To the extent that Mr. Kareem asserts an interest in the Kareem Property or related mortgage, the Debtors do not own the Kareem Loan, mortgage or property.  Accordingly, the Kareem Claims are not entitled to secured status.

Finally, any claims allowed by this Court should be reassigned from AHM Holdings to AHM Corp.  AHM Corp. was the lending party under the Kareem Loan (doing business as American Brokers Conduit).  (Ex. 4.)  AHM Holdings was merely a holding company and had no involvement in the origination (or servicing) of the Kareem Loan.

## ADMISSION OF EXHIBITS

The Plan Trustee moves for the admission of the Exhibits as set forth more fully in Appendix 1.

## OBJECTIONS TO PLAINTIFF'S EXHIBITS

The Plan Trustee objects to the admission of certain of Mr. Kareem's exhibits as set forth more fully in Appendix 2.

## RESERVATION OF RIGHTS

The Plan Trustee has diligently attempted to discern and respond to each allegation set forth by Mr. Kareem in his pleadings against the Debtors' estates, as well as allegations made by Mr. Kareem at trial.  To the extent that Mr. Kareem has asserted additional causes of action and/or theories of liability that are not subject to the current brief, the Plan Trustee objects to such actions and/or theories as failing to assert a cognizable claim against the Debtors' estates.

Moreover, to the extent that Mr. Kareem, asserts additional facts, causes of action and/or theories that were not readily identifiable, the Plan Trust reserves his right to supplement or amend this Brief.

## CONCLUSION

For the foregoing reasons, the Plan Trustee respectfully requests that the Court

sustain the Objection and deny the Kareem Motions and expunge all claims of Mr. Kareem.

Alternatively, the Plan Trustee requests that any award of damages granted by this Court be

reclassified as a general unsecured claim against AHM Corp.

Dated: March 12, 2012
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware  19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*

APPENDIX 1

LIST OF PLAN TRUSTEE EXHIBITS TO BE ADMITTED

| Exhibit | Related Kareem Ex. | Description | Basis for Admission |
|---|---|---|---|
| PT 1 | | Final Loan Application | Authentication – Tr. 95:9 – 96:4 |
| | | | Business Record (Rule 803(6)) |
| | | | Party Admission (Rule 801(d)(2)) |
| PT 2 | | Georgia Form – Borrower's Right to Council | Authentication – Tr. 103:6 -19 |
| | | | Business Record (Rule 803(6)) |
| PT 3 | | HUD -1 Statement | Authentication – Tr. 103:20-104:7 |
| | | | Business Record (Loan File) (Rule 803(6)) |
| PT 4 | A | Note | Authentication – Tr. 105:13-25 |
| | | | Records of Documents Affecting an Interest in Property (Rule 803(14)) |
| | | | Statements in Documents Affecting an Interest in Property (Rule 803(15)) |
| | | | Business Record (Rule 803(6)) |
| | | | Party Admission (Rule 801(d)(2)) (Previously attached the Note to his pleadings and claims) |

01: 11843838.1

APPENDIX 1
LIST OF PLAN TRUSTEE EXHIBITS TO BE ADMITTED

| | | |
|---|---|---|
| PT 5 | Rider | Authentication – Tr. 106:14-107:2 |
| | | Records of Documents Affecting an Interest in Property (Attached to Security Deed) (Rule 803(14)) |
| | | Statements in Documents Affecting an Interest in Property (Rule 803(15)) |
| | | Business Record (Part of the Loan File)  (Rule 803(6)) |
| PT 6 | B | Authentication – Tr. 107:3-15 |
| | Recorded Security Deed | Records of Documents Affecting an Interest in Property (Rule 803(14)) |
| | | Statements in Documents Affecting an Interest in Property (Rule 803(15)) |
| | | Business Record (Part of the Loan File) (Rule 803(6)) |
| PT 7 | D3 | Authentication – Tr. 107:16-108:3 |
| | RESPA Servicing Disclosure | Business Record (Rule 803(6)) |
| PT 9 | Fixed Payment ARM Disclosure | Authentication – Tr. 108:5-17 |
| | | Business Record (Rule 803(6)) |
| PT 10 | Payment Option ARM Disclosure | Authentication – Tr. 108:18-109:22 |
| | | Business Record (Rule 803(6)) |

APPENDIX 1
LIST OF PLAN TRUSTEE EXHIBITS TO BE ADMITTED

| | | | |
|---|---|---|---|
| PT 11 | G | Final TIL | Authentication – Tr. 110:10-21<br><br>Business Record (Rule 803(6)) |
| PT 12 | | Right to Rescind Notice | Authentication – Tr. 111:10-21<br><br>Business Record (Rule 803(6)) |
| PT 13 | | UNIFI Screenshots | Authentication – Tr. Tr.121:11-123:3<br><br>Business Record (Rule 803(6)) |
| PT 14 | | Wiz Sentinel Operating Policies | Authentication – Tr. 117:18-118:5<br><br>Business Record (Rule 803(6)) |
| PT 15 | | Wiz Sentinel Reports | Authentication – Tr. 118:22 – 119:8<br><br>Business Record (Rule 803(6)) |
| PT 16 | C | October 2008 Letter | Mr. Kareem's Document<br><br>Business Record through Jose Colon Affidavit (Rule 902(11) and Rule 803(6)) |
| PT 17 | | LSAMS | Authentication – Tr. 129:14-130:13<br><br>Business Record (Rule 803(6))<br><br>Absence of Entry in Records Kept in Accordance with Provisions of Rule 803(6) (Rule 803(7)) |

APPENDIX 1
LIST OF PLAN TRUSTEE EXHIBITS TO BE ADMITTED

| | | | |
|---|---|---|---|
| PT 18 | | Statistical Chart re: Interest Rates | Public Records & Report (Rule 803(8)) |
| | | | Market Reports, Commercial Publications (Rule 803(17)) |
| | | | Court may also take Judicial Notice of interest rates. |
| PT 19 | | Interest Rate History | Authentication – Tr. 167:10-23 |
| | | | Business Record (Rule 803(6)) |
| PT 20 | | Affidavit of Jose Colon [Texas Action, Case No. 3:10-CV-00762-B, D.I. 85] | Authentication – Rule 903(11) (Certified docs) |
| | | | Business Record (Rule 803(6)) |
| PT 25 | | Magistrate Judge Findings [Texas Action, Case No. 3:10-CV-00762-B, D.I. 112] | Publicly Filed (Rule 902(2)) |
| | | | Judicial Notice (Rule 201) |
| PT 26 | | District Court Judgment and Order [Texas Action, Case No. 3:10-CV-00762-B, D.I. 115 & 116] | Publicly Filed (Rule 902(2)) |
| | | | Judicial Notice (Rule 201) |
| PT 29 | | Plan [D.I. 7029] | Publicly Filed (Rule 902(2)) |
| | | | Judicial Notice (Rule 201) |
| PT 30 | | Confirmation Order [D.I. 7042] | Publicly Filed (Rule 902(2)) |
| | | | Judicial Notice (Rule 201) |

01: 11843838.1

APPENDIX 1

LIST OF PLAN TRUSTEE EXHIBITS TO BE ADMITTED

| PT 31 | 200 (Partial) | Servicing Sale Order [D.I. 1711] | Publicly Filed (Rule 902(2)) Judicial Notice (Rule 201) |
| PT 32 | | Signature Affidavit | Authentication – Tr. 166:24 – 167:9 Business Record (Rule 803(6)) |

In addition to the Exhibits identified above, the Plan Trustee relies on the party admissions already admitted into evidence during the trial, as well as the testimony and evidence presented at trial.

APPENDIX 2
OBJECTIONS TO THE ADMISSION OF KAREEM EXHIBITS

| Kareem Ex. No. | Related PT Ex. No. | Description | Objections to Admission |
|---|---|---|---|
| 100 | | Securitization Report & Chart of AHMA 2006-3 | Objection. Incomplete Document. No objection to the admission of the full Prospectus located at http://sec.gov/Archives/edgar/data/1369168/000088 23770602649/d541742_424b5.htm |
| 100-B | | Bloomberg Screen view of loan no. 001345090 in AHMA 2006-3 Pool of Assets | No objection to admission of document, however, objection to the redactions made by Mr. Kareem. Mr. Kareem should provide unredacted copy of document to all parties. |
| 100-C | | AHMA 2006-3 Excerpted Prospectus Key Terms | Objection. Exhibit 100-C is a document put together by Mr. Kareem which apparently includes excerpts from the AHMA 2006-3 Prospectus, as well as various arguments. Plan Trust does not object to its use as a demonstrative, but objects to the admission of the document. |
| 100-D | | Affiliated Business Arrangement Disclosure | None. |
| 200 | 31 | Asset Purchase Agreement Schedule Excerpted 2.1(b)(ii) Contracts not Provided by Seller (relevant to AHMSI) | Objection to the extent only a portion of the document is used. No objection to the admission of the entire Servicing Sale Order [D.I. 1711] and attached Asset Purchase Agreement. |
| 300 | | Form 15 Termination Filed with Security & Exchange Commission on January 29, 2007 | None. |
| 400 | | APR Disclosure Test APR WIN ver. 6.2.0 Calculation | Objection. Not Authenticated. Hearsay. Mr. Kareem did not address this exhibit at trial, which appears to be put together by a third party. The Plan Trust has no knowledge of the software or what data was entered to determine whether the APR or Finance Charges. Moreover, no information is provided as to the origination date used to calculate APR – which is important because state and federal laws have changed since the origination of Mr. Kareem's loan. |
| A | 4 | Adjustable Rate Note (endorsed version) | None. |
| B | 6 | Security Deed | None. |
| C | 16 | Rescission Demand Notice dated Oct. 18, 2008 | None. |

01: 11843336.1

APPENDIX 2

OBJECTIONS TO THE ADMISSION OF KAREEM EXHIBITS

| D | | RESPA Investigation Letter Case No. 09-1699 | None. |
|---|---|---|---|
| D2 | | AHMSI Legal Department Response to RESPA Investigation | None. |
| D3 | 7 | RESPA Servicing Disclosure | None. |
| G | 11 | Final Truth-In-Lending | None. |

01: 11843336.1