UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                          : Chapter 11
                                                                :
AMERICAN HOME MORTGAGE HOLDINGS, INC., : Case No. 07-11047 (CSS)
a Delaware corporation, et al.,[2]                              :
                                                                : Jointly Administered
                                                                :
     Debtors.                                                   : Hearing Date: June 5, 2012 at 11:00 a.m. (ET)
                                                                : Obj. Deadline: May 29, 2012 at 4:00 p.m. (ET)
---------------------------------------------------------------x

**PLAN TRUST'S MOTION FOR THE ENTRY OF AN ORDER APPROVING THE FOURTH STIPULATION BY AND AMONG THE PLAN TRUST AND CERTAIN CURRENT AND FORMER DIRECTORS AND OFFICERS OF THE DEBTORS FOR AN ORDER GRANTING RELIEF FROM THE PLAN INJUNCTION AND STAY TO ENFORCE INSURANCE POLICY IN FAVOR OF INSURED PARTIES**

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the Chapter 11 cases of the above-captioned debtors (the "Debtors"), by this motion (the "Motion") hereby moves this Court for entry of an order approving the fourth stipulation (the "Fourth Stipulation")[3] by and among the Plan Trust and certain present and former directors, officers, and employees of the Debtors (together with all other present and former directors, officers and employees of any of the Debtors who are now, or in the future, named or otherwise required to incur legal and related expenses covered by the Insurance Policies, the "Insured Persons") and granting relief from the injunction and stay set

---

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc., a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

[3] All terms not otherwise defined herein shall be given the meanings ascribed to them in the Stipulation.

01:11902191.3

forth in Article 12 of the Plan and paragraphs 7 and 8 of the Confirmation Order (defined below) (collectively, the "Plan Stay") to enforce the Insured Persons' rights to receive payments of up to $4,321,937.55, in the aggregate for all Insured Persons, of the policy proceeds under the Plan Trust's primary directors, officers, and corporate-liability insurance policy ("Primary Insurance Policy") with Chartis Insurance, National Union Fire Insurance Company of Pittsburgh, Pa. (the "Primary Insurer") and of the policy proceeds payable under the excess insurance policies (collectively, the "Excess Policies").[4] A copy of the Fourth Stipulation is attached as Exhibit 1 to the Order annexed hereto.

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1134 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2). The basis for the relief requested herein is sections 105(a), 363(b)(1) and 503(c)(3) of the Bankruptcy Code.

## GENERAL BACKGROUND

2. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Between the Petition Date and the Plan Effective Date (defined below), each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the

---

[4] The Plan Trust assumed the Primary Insurance Policy and the Excess Policies from the Debtors under Article 11(E) and paragraph 38 of the Confirmation Order. The assumed policies were set forth in a Supplemental Plan Documents. *See Notice of Filing of Appendix of Supplemental Plan Documents Pursuant to the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of November 25, 2008.*

Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3. On February 23, 2009, the Court entered an order [D.I. 7042] (the "Confirmation Order") confirming the Plan. The Plan became effective on November 30, 2010 (the "Plan Effective Date").

4. Pursuant to the Plan, as of the Plan Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers, and benefits set forth in the Plan, Confirmation Order, and Plan Trust Agreement.

## THE ACTIONS

5. Prior and subsequent to the Petition Date, certain of the Insured Parties were named as defendants in twenty complaints, which complaints generally fall into the category of Class Action Securities Litigation. On December 19, 2007, the Judicial Panel on Multidistrict Litigation (the "Panel") transferred nineteen actions then pending to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1407, where they have been assigned to the Honorable Thomas C. Platt. The Consolidated Amended Class Action Complaint was filed on June 4, 2008. On April 2, 2008, an additional class action complaint was filed against certain of the Insured Parties, and on October 8, 2008, that action was transferred to the Eastern District of New York for coordinated or consolidated pretrial proceedings before the Honorable Thomas C. Platt. These twenty actions shall be referred to collectively as the "Actions."

6. Subsequent to the Petition Date, on July 27, 2009, certain of the Insured Parties were named as defendants in an action generally falling into the category of securities litigation by Utah Retirement Systems. The case, *Utah Retirement Systems v. Strauss, et al.*, No. 09 Civ. 3221 (TCP) was filed in the Eastern District of New York. The action shall be referred to as the "Utah Retirement Action." The parties have since resolved the matter and agree to voluntarily dismiss the case, and the court entered an order dismissing the case with prejudice on June 30, 2011 [D.I. 87].

7. On July 30, 2009, Judge Platt issued an Order preliminarily approving settlement of the Actions. Pursuant to the terms of the settlement agreement, defendants, including certain Insured Parties, agreed to pay a settlement amount of $24 million. On September 8, 2009, this Court authorized the settling defendants to utilize the proceeds of the Insurance Policies to fund the settlement amount [D.I. 8030].

8. On September 4, 2009, this Court also approved a settlement on behalf of certain Insured Parties and the Creditors Committee for $5.625 million. The Court authorized the settlement amount to be paid from the proceeds of the Insurance Policies [D.I. 8009].

9. Subsequent to the Petition Date, on April 28, 2009, certain of the Insured Parties were named as defendants in an enforcement action filed by the Securities and Exchange Commission in the Southern District of New York (the "SEC Action").

10. Subsequent to the Petition Date, on May 5, 2011, certain of the Insured Parties were named as defendants in an action generally falling into the category of securities litigation by Massachusetts Mutual Life Insurance Co. The case, *Massachusetts Mutual Life Insurance Co. v. Goldman Sachs Mortgage Co., et al.*, No. 3:11-cv-30126 (MAP) is currently

pending in the District of Massachusetts. The action shall be referred to as the "<u>Mass Mutual Action</u>."

11.  The defendants in the Actions, the Utah Retirement Action, and the Mass Mutual Action are certain of the Insured Parties. Currently, because of the Plan Stay, the Actions are stayed as against AHM. However, the Actions, the Utah Retirement Action, the Mass Mutual Action, and certain Other Actions are proceeding as against certain of the other Insured Parties. Accordingly, certain of the Insured Persons are incurring legal and related expenses in connection with defending themselves in those proceedings. Although they believe that the allegations in the Actions, the Utah Retirement Action, the Mass Mutual Action, and those certain Other Actions that are currently proceeding are without merit, the Insured Persons face exposure with respect to costs of defense.

## THE INSURANCE POLICIES

12.  Prior to the Petition Date, the Debtors purchased: (i) the Primary Insurance Policy, which provides up to $10 million in coverage, (ii) three excess insurance policies, providing an additional $30 million in coverage, specifically for the benefit of the Debtors and the Insured Persons, and (iii) one excess insurance policy, providing an additional $10 million coverage for the benefit of the Insured Persons. The Plan Trust subsequently assumed the Primary Insurance Policy and the Excess Policies from the Debtors under Article 11(E) and paragraph 38 of the Confirmation Order.

13.  Pursuant to the Insurance Policies, the Insured Persons are entitled to have certain legal fees and expenses incurred by them in the defense of the Actions, the Utah Retirement Action, the SEC Action, the Mass Mutual Action and Other Actions, and covered by the Insurance Policies, advanced to them by the Insurers, subject to the Insurers' right to be

repaid by an Insured Person any amount advanced to or on behalf of such Insured Person in the event and to the extent such Insured Person shall not be entitled under the terms and conditions of the Insurance Policies to payment of such legal fees and expenses.

14. In accordance with the Insurance Policies, the Insured Persons have made, and will continue to make, demands on the Insurers to advance the Defense Costs (as defined in the Insurance Policies) they have and will continue to incur in defending themselves in the Actions, the Utah Retirement Action, the SEC Action, the Mass Mutual Action and in Other Actions.

15. On April 13, 2008, this Court entered an Order Approving Stipulation By and Among the Debtors, Certain Current and Former Directors and Officers of the Debtors, the Primary Insurer, and the Official Committee of Unsecured Creditors for an Order Granting Relief from the Automatic Stay, to Enforce Insurance Policy in Favor of Insured Persons [D.I. 3520] (the "First Order"). The First Order permitted the Insured Persons to receive up to $5.0 million in the aggregate for all Insured Persons combined under the Primary Insurance Policy for any past, present or future Defense Costs (as defined in the Primary Insurance Policy) incurred or to be incurred by any Insured Person in connection with the Actions or Other Actions.

16. On January 9, 2009, this Court entered an Order Approving Second Stipulation By and Among the Debtors, Certain Current and Former Directors and Officers of the Debtors, the Primary Insurer, and the Official Committee of Unsecured Creditors for an Order Granting Relief from the Automatic Stay, to Enforce Insurance Policy in Favor of Insured Persons [D.I. 6828] (the "Second Order"). The Second Order permitted the Insured Persons to receive up to $10 million in the aggregate for all Insured Persons combined under the Primary Insurance Policy for any past, present or future Defense Costs (as defined in the Primary

Insurance Policy) incurred or to be incurred by any Insured Person in connection with the Actions or Other Actions.

17. On December 18, 2010, this Court entered an Order Approving Third Stipulation By and Among the Debtors, Certain Current and Former Directors and Officers of the Debtors, the Primary Insurer, and the Official Committee of Unsecured Creditors for an Order Granting Relief from the Automatic Stay, to Enforce Insurance Policy in Favor of Insured Persons [D.I. 8322] (the "Third Order"). The Third Order permitted the Insured Persons to receive up to $15 million in the aggregate for all Insured Persons combined under the Primary Insurance Policy for any past, present or future Defense Costs (as defined in the Primary Insurance Policy) incurred or to be incurred by any Insured Person in connection with the Actions or Other Actions.

18. At this time however, the defense costs incurred by the Insured Parties in connection with the Actions, the Utah Retirement Action, the SEC Action, the Mass Mutual Action, and the Other Actions have exceeded the $15.0 million, in the aggregate, authorized under the First, Second, and Third Orders.

19. Therefore, the parties have entered into the Fourth Stipulation requesting relief from the Plan Stay to enforce the Insured Persons' rights and/or receive payments of Defense Costs (as that term is defined in the Primary Insurance Policy) under the Primary Insurance Policy and the Excess Policies, up to an additional $4,321,937.55 in the aggregate for all Insured Persons. As such, the Insured Persons will be able to access up to an additional $4,321,937.55 and, because of the approval of the Fourth Stipulation, a total of $19,321,937.55 in coverage out of the $50.0 million in coverage available under the Plan Trust's various directors, officers and corporate liability policies.

20.     The Plan Trust submits that the resolution embodied in the Fourth Stipulation adequately protects the rights of the Insured Parties, while at the same time protecting the creditors of the Plan Trust. Accordingly, the Plan Trust believes that the Fourth Stipulation is a fair, reasonable and appropriate manner in which to apportion the Insurance Proceeds at this time.

## RELIEF REQUESTED

21.     By this Motion, the Plan Trust requests entry of an order approving the Fourth Stipulation.

## BASIS FOR THE RELIEF REQUESTED

22.     Section 362(a) of the Bankruptcy Code provides that the commencement of a bankruptcy case operates as an "automatic stay" of any act to obtain property of the debtor's estate.[5] 11 U.S.C. § 362(a). Here, the automatic stay is expressly linked to the existence of the Plan Trust, which is the operative vehicle for administering the Debtors' estates and in which all of the Debtors' assets, causes of action, claims, rights, and interests have vested. See Plan, Art. 12B ("[A]ll injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code . . . shall remain in full force and effect until the later of (i) entry of the Final Decree or (ii) the dissolution of the Plan Trust."); Confirmation Order ¶ 7 (same). Additionally, in Article 12A of the Plan and Paragraph 8 of the Confirmation Order, the Court has imposed a stay (the "Plan Injunction") enjoining those acts that would violate the automatic stay, were they taken against the Debtors, from being taken against the Plan Trust. See Plan, Art. 12A; Confirmation Order ¶ 8. In essence, the court-ordered Plan Injunction serves to extend the

---

[5] Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

protections of the automatic stay to the entity actually responsible for the Debtors' assets. Thus, even though the Plan Injunction may find its authority in this Court's order rather than the automatic injunction under 362(a), the Plan Injunction is a mere extension of the automatic stay, and accordingly, the same law and analysis apply with respect to both.

23.  In In re Allied Digital Technologies Corp., 306 B.R. 505 (Bankr. D. Del. 2004), the court considered whether and to what extent the proceeds of directors and officers insurance policies constitute property of the estate. In conducting this analysis, the court explained that there are essentially three types of insurance policies that a corporation may purchase. The insurance policy may provide direct, unsubordinated coverage to the debtor corporation. In these instances, the court stated that the proceeds of the policy are clearly property of the estate. Allied, 306 B.R. at 512. Alternatively, the insurance policy may provide direct coverage solely to the directors and officers; providing only indemnification coverage to the debtor. In these instances, the court stated that the proceeds of the policy are not property of the estate. Id. Lastly, and in between these extremes, are insurance policies in which coverage exits for the directors and officers, as well as the debtor. In this instance, the court stated that, "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." Id.

24.  Assuming insurance proceeds are property of the estate, section 362(d) of the Bankruptcy Code provides, in relevant part, as follows:

> (d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including lack of adequate protection of an interest in property;

01:11902191.3

9

11 U.S.C. § 362(d). The policy at issue in Allied provided direct coverage to directors and officers, and limited coverage to the debtor for indemnification for amounts paid to defendants. Allied, 306 B.R. at 513. Under those circumstances, the court held that the proceeds of the policies were not property of the estate, but that, even if they were, cause existed to grant relief from the stay to permit payment to the directors and officers. Id. The court went on to state that, "it is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers. ..." Id. Finally, the court explained that, "without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the Trustee's claims and may suffer substantial and irreparable harm. The directors and officers bargained for this coverage." Id. at 515.

25. In In re Arter & Hadden L.L.P., the insurance policy at issue covered the debtor, as well as certain of the debtor's officers and employees, who demanded coverage. Arter, 335 B.R. 666 (Bankr. N.D. Ohio 2005). The Bankruptcy Court for the Northern District of Ohio held that the proceeds were property of the estate. Arter, 335 B.R. at 674. However, it found that there was "cause to lift the automatic stay because the Executive and Management Committee members may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments to fund their defense of the Trustee's Complaint." Id.

26. In these cases, the Plan Trustee has determined in its business judgment, that the benefit to the Plan Trust from distributing the proceeds of the Insurance Policies on an ongoing basis on the terms and conditions set forth in the Fourth Stipulation warrant lifting the Plan Stay without determining whether or to what extent the proceeds of the policies may constitute property of the estates. Indeed, if such relief is not granted, and the Insured Persons do not receive access to the proceeds of the Insurance Policies, they may face irreparable harm. The

Parties believe that the negotiated Fourth Stipulation is fair, reasonable and in the best interests of the Plan Trust and its creditors. See In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998); see also Cosoff v. Rodman (In re W. T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (stating that the court should only reject negotiated compromise where it falls "below the lowest point in the range of reasonableness").

27. Accordingly, the Plan Trust requests that the Court enter an Order approving the Fourth Stipulation.

### NOTICE

28. Notice of this Motion will be provided to: (i) the Office of the United States Trustee; (ii) counsel for the Plan Oversight Committee; (iii) the Insured Persons identified in the Fourth Stipulation; and (iv) all parties entitled to notice under Del. Bankr. LR 2002-1(b). In light of the nature of the relief requested herein, the Plan Trust submits that no other or further notice is required.

29. No previous motion for the relief sought herein has been made to this or another Court.

WHEREFORE, the Plan Trust respectfully requests that the Court enter an Order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: April 24, 2012
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
The Brandywine Building
1000 West Street - 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*