**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**



--------------------------------------------------------- x  Chapter 11

In re:                                  :

                                        :  Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE HOLDINGS, INC.,  :
a Delaware corporation, et al.,         :  Jointly Administered

                                        :   Ref/ Docket No. 9692, 10148, 10183, 10182

                    Debtors.            :

                                        :  10384, 10384, 10410,& 104411
--------------------------------------------------------- :
                                        x

## OPPOSITION TO PLAN TRUST'S OBJECTION TO AMENDED MOTION TO COURT FOR FINAL ARGUMENT AND MOTION TO STRIKE AND OPPOSITION TO PLAN TRUST'S POST TRIAL BRIEF AND POST TRIAL REPLY BRIEF INCLUDING DECLARATION OF MARGARET WHITEMAN GREECHER

### TABLE OF CONTENT FOR EXHIBITS

I.    *Claimants Answer to Plan Trust's Objection and Motion to Strike* .......................................................pg. 4

II.   *Claimant's Request for Leniency* ..........................pg. 5

III.  *Importance for Clarification on Facts and Testimonies* .....pg.6

IV.   *Summary of Claimant's Testimony* ......................... .pg.11

V.    *Relevance of Facts for Legal Determinations* ........... ..pg.12

VI.   *Plan Trust's Legal Discussion Arguments Fail* ............pg 18

VII.  *Accommodation Indorsement Provides Reasonable Presumption* ............................................pg.19

VIII. *Plan Trust's Arguments Fail against Claimant's Pursuit of Justice* .......................................................pg.23

IX.   *Plan Trust's Allegation that Evidentiary Record is Complete has Fatal flaws* ...........................................pg.26

X.    *Compliance Issues Supports Ab Initio Breach of Contract Claim* .......................................................pg.26

*XI.    Claimants Additional Proofs of Predatory Lending by AHMH*

.................................................................................pg.27

*XII.    Objections Fails and Defies Logic....................................pg.28*

*XIII.   Summary of Objections to Plan Trust's Motions to Strike;*

*Relevance to Trial Discussions ...................................pg.29*

*XIV.    Counsel Argues Against The Use Of Website Data.............pg.31*

*XV.     Analyzing Claimant's and Plan Trust's Motion to Strike...pg.32*

*XVI.    Delayed Filing.................................................................pg.33*

*XVII.   Summary......................................................................pg.35*

XVIII.     Exhibit 400 APR Disclosure Test through APR WIN
version 6.2.0.......................................................................pgs. 9, 22

XIX.    Exhibit 1400 Motion in Limine ....................................pg.11

XX.     Exhibit D3 RESPA Servicing Disclosure.......................pg.12

XXI.    Exhibit 300 Form 15 Filing.................................pgs.15,36

XXII.  Exhibit 500 AMA Trust 2007-SD-2 Active Registration pg.15

XXIII.     Exhibit 700- Global Mortgage Inc. Revoked License
2/02/07 ..............................................................................pg.26

XXIV.     Exhibit 800- America Home Mortgage Corp. Lender
License Withdrawn 09/05/07

XXV. Exhibit 900-  Loan Mod Forensics Compliance Findings on
Global Mortgage and AHM Corp...........................pg.25

XXVI.      Exhibit 1000- Verification by Walter Fordham on
Compliance Findings........................................................pg.25

XXVII.      Exhibit 1100- Titan Lenders Corp. Press Release pg.6, 25

XXVIII.    Exhibit 1200- Order to Cease and Desist Citing OCGA

§7-1-242...........................................................pg.27

**XXIX.** Exhibit 1300- U.S. Postal Priority Mail Post Marked .....pg.31

**XXX.**   Exhibit 1300B- U.S. Postal Service Processing Delays ..pg.32

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------------ x   Chapter 11
In re:                                                             :
                                                                   :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                              :
a Delaware corporation, et al.,[1]                                 :
                                                                   :   Jointly Administered
                                                                   :    Ref/ Docket Nos.9692, 10148, 10183, 10182
                               Debtors.                            :   10384, 10385 10410 & 10411
                                                                   :
------------------------------------------------------------------ x
```

## OPPOSITION TO PLAN TRUST'S OBJECTION TO AMENDED MOTION TO COURT FOR FINAL ARGUMENT AND MOTION TO STRIKE AND OPPOSITION TO PLAN TRUST'S POST TRIAL BRIEF AND POST TRIAL REPLY BRIEF INCLUDING DECLARATION OF MARGARET WHITEMAN GREECHER

1.

Comes now Claimant, Hussain Kareem in his opposition to the above

entitled caption. The  actions arises from the evidentiary trial held before this

Honorable Court on November 18, 2011.  The Court is asked to determine

the truth from the facts and pleadings and not just naked allegations made by

Counsels.

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

2.

### Claimant's Request for Leniency

The Plan Trust motions are extreme measures and if the Court were to

follow their motions, then many relevant facts would suffer in explaining

relevant testimonies and cross examinations. Noticeably, only the Ms.

Wanerka, a former employee, was used as a witness at trial for the Debtors-

in-possession. All other pleadings are now being done by attorneys who are

trying to provide their opinions, allegations, hearsay and by bending

predetermined rulings to distort the facts. As such, Claimant asks the court

to look beyond the tactics to win at all costs[2] and to provide, if necessary,

equitable tolling on any procedural lapse in delivery of his Reply Brief.

Under Georgia's law on evidence, which is consistent with the

Federal Rules of Evidence, OCGA §24-1-2 provides, "Object of rules of

---

[2] In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) The Court opined that "[A] plaintiff's (Claimant's) obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .". The relevance with respect to the instant action in the above case law, is the required due diligence that the court and Claimant must foreclose on raised and unresolved issues at the trial on Nov. 18, 2011. Issues of fact remained after the trial with respect to predatory lending claims against AHM Corp. and the veracity of Wiz Sentential (AHM Corp's in-house audit) compliance test system. The Plan Trust alleged fact findings from their in-house testing that there were no TILA compliance issues which emerged from Mr. Kareem's Loan. Additionally, there were unresolved compliance issues related to AHM Corp. and its authorized brokers under Georgia's Banking and Finance regulatory agency. For those reasons, Claimant enhanced his discussion on the content and context of compliance and predatory lending by timely demonstrating his opposition to the fact findings presented at trial. His objection shows an audit from an independent and industry known as Mavent System. Mavent System is known to specialize in Lender Compliance Audits as attested in the Exhibit 110 Titan Lender's press release article. Also, Mr. Kareem's due diligence included reasonable search of supportive data from neutral government websites to collaborate the MAVENT findings. The results were to show conclusively that his arguments were supported by facts and not just mere allegations.

evidence, are stated as follows:

*"The object of all legal investigation is the discovery of truth. The rules of evidence are framed with a view to this prominent end, seeking always for pure sources and the highest evidence[3]."*

Relevant to uncover the truth, Claimant asks the court to be cautious with respect that "striking" his motions to strike, Post Trial Brief and Reply Briefs. Claimant would in effect be deprived key supporting evidences. Whereas, Mr. Kareem opposes and objects to The Plan Trust's motions, as stated in the above caption, in its entirety.

3.

### Importance for Clarification on Facts and Testimonies

Whereas, among other things, Mr. Kareem has stayed within the content and contest of the hearing held before the court. It is worthy to re-state before the Honorable Court that there are genuine disputes over the key interpretations about the factual testimonies made at the evidentiary hearing from the live witnesses. Factually, there were only two persons who

---

[3] Under OCGA §24-1-1.  Evidence Definitions. As used in this title, the term:
(1) "Competent evidence" means evidence which is admissible.
(2) "Cumulative evidence" means evidence which is additional to other evidence already obtained.
(3) "Direct evidence" means evidence which immediately points to the question at issue.
(4) "Indirect evidence" or "circumstantial evidence" means evidence which only tends to establish the issue by proof of various facts, sustaining by their consistency the hypothesis claimed.
(5) "Preponderance of evidence" means that superior weight of evidence upon the issues involved, which, while not enough to free the mind wholly from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other.
(6) "Presumptive evidence" means evidence which consists of inferences drawn by human experience from the connection of cause and effect and from observations of human conduct.
(7) "Sufficient evidence" means evidence which is satisfactory for the purpose.
Whereas, the Court and the Claimant would be deprived of the quantifying, under Rules of Evidence, relevant documents presented for said purpose by arbitrarily striking them.

testified, Mr. Kareem and Ms. Wanerka. What became apparent from Ms.
Wanerka's testimonials were her sole reliance on her ability to make
database queries from records, reports, and documents purportedly
maintained from the computer systems once-owned by the Debtors.  There
were no first-hand knowledge of the transaction. In as much, Ms. Wanerka
could not confirm, verify or swear to the following:

1. That the Debtor's data base had never been corrupted, never lost
   data or never was the information compromised, changed,
   destroyed or altered due to system crashes, or electrical brown-outs
   or electrical black-outs.

2. Ms. Wanerka could not certify that documents were sent and
   delivered by either first class mail, certified mail, priority mail or
   that the delivery of key disclosures or examples were received by
   Mr. Kareem. On many of occasions, the example documents
   required  no signature or acknowledgement by the borrower. It is
   therefore questionable about the full compliance of AHM Corp. to
   make said disclosures as required under the applicable law. The
   explanations or examples never proved that Mr. Kareem, the
   borrower, thoroughly understood finance, the performance features
   of the "Power MTA Adjustable Rate Note." Nor were there any
   proof that a telephone or in-person interview was conducted to
   verify the program features to Mr. Kareem.

3. Ms. Wanerka could not certify that an average borrower could fully understand the loan features which performed recasting calculations. As explained in the court hearing by Ms. Wanerka, each recast involved adjusting the interests rate and then a another calculation would be needed to show the effects of a minimum or normal payments made on the balance due. By applying the recast results to the balance due on the loan, the recast would affect a ongoing adjustment on the equity of the home. The loan had great potential for negative amortization. Mr. Kareem was rate sensitive, so the start rate was an extremely attractive inducement. The benefit from the hearing was a through demonstration by cross examination of the loan feature, above and beyond the advertised "low" interest rate. The payment option selections had a direct affect on negative amortization on the ultimate payoff balance owned on the Note.

4. The low "teaser" rate was explained by Ms. Wanerka, if selected, actually worked against any net-tangible benefit over a fix-interest-rate payment. Mr. Kareem questioned if the finance charge was accurate. At the hearing, Mr. Kareem submitted Exhibit 400 APR Disclosure Test through APR WIN version 6.2.0 calculation . The test is featured and performed on the website of the Office of Comptroller of Currency under APR tests. It was part of Mr.

Kareem's objection and opposition aimed at refuting Ms.

Wanerka's testimonies.

5. Ms. Wanerka testified that she was not a compliance officer, so she
   was not able to verify many legal compliance issues related to the
   Monthly Treasury Arm (MTA) disclosures applicable to either
   Federal or State Laws (Therefore, showing APR compliance tests
   under applicable Federal and Georgia laws were relevant factual
   concerns to be expounded upon).

6. Ms. Wanerka  knowledge and testimonies were construed limited
   to only documents scanned into the data base systems and what she
   thought should have happen with those documents, as a standard
   business practice of the AHMH loan originations. Wiz Sentinel
   Reports (used by AHMH for in-house compliance testing) were
   generated and purported to be an accurate in-house software
   compliance test system.  Purportedly, the test showed that TILA
   compliance, high-costs tests and other lending compliances passed
   on the loan offered to Mr. Kareem. Whereas, any communications
   with respect to the mortgage compliance results performed by
   AHM Corp. would have been shared solely or made through AHM
   Corp.'s authorized broker channel.  Global Mortgage of
   Clearwater, Florida was identified as an authorized broker who
   originated the loan for AHM Corp. on Mr. Kareem's Loan.

7. Although the contract had obligations that AHMH would communicate directly to Mr. Kareem, communications were solely done through third-party relationships established by AHM Corp. Even when direct communications were made to AHM Corp. by Mr. Kareem, those communications were delayed and passed on to others like AHMSI to address and answer.

8. Ms. Wanerka testified that she had no knowledge of any compliance issues affecting Global Mortgage, but she confirmed that she had knowledge of the broker's authorization from AHMH and companies list of approved brokers.

9. Lastly, Counsel relies on inserting the Affidavit by Jose Colon and the District Court Magistrate Judges Recommendations. Neither were at trial for cross-examination. At trial, Claimant submitted his Motion in Limine (See Exhibit 1400 Doc. No. 10260) to prohibit the entries of such documents. The Court conducted a hearing on the motion and made its determination on November 18[th.] The Court determined and limited the admissible documents and statements from the U.S. District Court's Texas trial record. The magistrate Recommendations and Jose Colon's affidavit were explicitly were not admissible. In fact, those are trial issues being reviewed before the U.S. Fifth Circuit Court of Appeals. The Fifth Circuit is the proper court for reviewing the record on those issues.

The issues did not involve AHM Corp., but were germane to

AHMSI, the Acquisition Loan Servicer and MERS behavior[4].

### 4.

## Summary of Claimant's Testimony

Whereas, Mr. Kareem testified from his personal knowledge, first-

hand actions, beliefs and his attempt to tendered AHMH to rescind his loan.

He stated affirmatively that he was seeking a lower interest rate and lower

payments as his primary objective. He got a teaser-rate that changed

monthly and produced negative amortization.  He testified that he was

---

[4] Noticeably, there is a heavy reliance by Counsel to show and monitor other court records and rulings which does not raise many direct issues of contract breach and AHMH's good faith obligations. Attorney filed in Doc. No. 10411 Exhibits E which displays motions from the other court cases to establish some loose allegation. In citing Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, 1454 (11th Cir. 1985) (Fay, J., concurring) ("The courts of this nation cannot function without the full support of all members of the bar. Attorneys are officers of the court. It is their *primary* responsibility to see that our system of jurisprudence works." (emphasis in original).); Matherne v. United States, 391 F.2d 449, 454 (5th Cir. 1968) ("A lawyer at all times owes the utmost devotion to the interests of his client and his professional responsibilities as an officer of the Court."). The question is the overreaching and unprofessional effort to try and discredit the Claimant on any grounds alleged. Counsel has abandoned all pleadings on the merits of the case. There is a concerted effort to portray that Claimant did not pay on his note to AHMSI. That argument is not the questions before the court. If Counsel were making an affirmative defense that Claimant did not pay AHM Corp. then that is believed to be relevant and within the scope of affirmative defenses. It is believed that AHMSI accounting record time-barred and is outside the scope of this trial. No valid accounting records were made to cross examine payment history or reconcilement of accounting systems. Claimant believes that some of the underlying questions being avoided are; Did AMH Corp. Breach the Contract in any way to Mr. Kareem? Did AHM Corp. receive full satisfaction from the securitization sale and accommodation made by Mr. Kareem? Were there a reasonable cause for Mr. Kareem to invoke his TILA rescission demand? Even if AHM Corp sold the note, then under 15 USC §1641 the liabilities from the Rescission were to have been passed on to the Assignee. Did AHMSI acquire true servicing rights from the Asset Purchasing Agreement? Is AHMA 2006-3 a defunct loan pool? In fact, Counsel keeps providing answers or pleadings outside of the complaint which may be grounds for the Court to convert their responses into a judgment on the pleadings or summary judgment.

confused by the performance and complexity of the MTA Adjustable Rate

Note. He testified that he felt that AHMH lending practices were deceptive

and predatory.

He made several attempts to rescind the loan under applicable TILA

right of action, because of his belief that the loan was predatory, deceptive

and high costs, in that he could end of paying more by loosing equity.  His

several attempts to rescind has been acknowledged by the Plan Trustee.

Those attempts of written communications occurred on or about the dates of

August 26, 2008, February 24, 2009 and September 27, 2009, respectively[5].

5.

### Relevance of Facts for Legal Determinations

The Claimant asserts his positions on outstanding issues to be

determined by this Court, where he believes that the Plan Trustee has

conceded or where there remains no factual basis to dispute the

preponderance of facts from evidentiary hearing.

The Plan Trust's objects to Mr. Kareem's expanded discussion on the

relevant issues before the court.  Mr. Kareem opposes and counter objects

due to the following reasons:

---

[5] The Plan Trustee's Post Trial Answering Brief... Omnibus Objections cites their
knowledge of Rescission Demands on Page 6, Tr. 58-59 pursuant to the Court admitting
certain party admissions regarding such facts. However, it is factually a determinable
issue if AHMSI, the Loan Servicer by acquisition, could unilaterally respond to the
borrower Mr. Kareem on AHMH behalf or on behalf of a defunct loan pool. Mr. Kareem
had no contract with AHMSI and AHMSI never referenced their authority to answer the
TILA rescission matter as representing the interest of the Assignee or the AHMA 20063
REMIC Trust. It is questionable if AHMSI received loan servicing rights through the
Asset Purchase Agreement. Deutsche Bank Structured Securities were not loans
serviceable under AHMSI's acquisition terms.

A.  The required RESPA Servicing Disclosure (see Exhibit D3) made by

AHMH and companies was incomplete and not in compliance with

the applicable RESPA law.   It is a reasonable presumption that in

order for AHMH companies to have been in full compliance with the

RESPA law, an update should have come by way of a full disclosure

on the underlying question, "who would service Mr. Kareem's Loan

**(emphasis supplied)**?

By inspecting the RESPA Servicing Disclosure (see Exhibit D3),

the section entitled,  "Servicing Transfer Estimates", reveals that the

following boxes were checked off (indicated by X marks) as

applicable to Mr. Kareem's Loan  that reads in  the following way:

*X- We may assign, sell or transfer the servicing of your loan while*

*the loan is outstanding . X-We are able to service your loan and*

*we  X- haven't decided whether to service your loan* (**Emphasis**

**Added**)[6].

B.   On or about July 28, 2006, as confirmed in testimonies  at trial,  the

Kareem Loan was deposited or sold into a securitization trust, AHMA

2006-3 [(the REMIC or " Mortgage-Backed-Security Trust"

---

[6] At some reasonable time, AHMH would have been required by law to let Mr. Kareem
know about the long-term servicing of a loan servicer of his loan. Also, contractually, the
knowledge of the loan servicer or the need to provide a notification of change of loan
servicer was made a part of Section 20 of the Security Deed (See in Exhibit B submitted
with Claimant's Post Trial Brief).

(MBST)].[7] AHM SV was retained as the sub-servicer for the MBST.

The Trust was dissolved on January 29, 2007, as noted by the

Securities and Exchange Commission records (see Exhibit 300 Form

15-15D filings) prior to any Bankruptcy Proceedings.[8]

C.  If the timeline above  is considered true, then, Mr. Kareem has a

prima facie claim for an unenforceable instruments by abandonment

and by renunciation under Georgia Commercial Code §11-3-604[9].

AHMH is not claiming the instruments and the AHMA 2006-3 does

not exist statutorily to proceed in any court action against Mr.

Kareem. This begs the Honorable Court to consider that holders of a

stock certificate have no individual right of action against a

---

[7] During a U.S. HUD, Department of RESPA investigation for transfer of notice violation, American Home Mortgage Servicing[3], Inc. "the New Loan Servicer" the beneficiary form the APA, revealed that the Mortgage-Backed -Security Trust was AHM 2006-3. This has been confirmed by a Securitization audit through Bloomberg and the Security and Exchange Commission database (see Exhibits 100- 100 D submitted with Claimant's Post Trial Brief). The facts are materially significant due to binding contract covenants under  Section 20 of the Security Deed (See Exhibit B submitted with Claimant's Post Trial Brief) and by Federal law which provided that  it is mandatory for the Lender to notify Mr. Kareem within 30 days. Under 12 USC §2605 (a-c) and under 24 C.F.R.3500.21(d) the transfer notice to the Master Servicer, Wells Fargo, should have been made known to Mr. Kareem. The underlying Note has an electronic CUSIP No. 0660265UAA8. Therefore the instrument was changed into a shareable stock certificate undisclosed to the Mortgagor.

[8] See Exhibit 300 Form 15 termination filed with the Securities and Exchange Commission on January 29, 2007. Delaware Secretary of State records shows no active trusts registered under the AHMA 2006-3. The only active trust registered is American Mortgage Assets Trust 2007-SD-2 (See Exhibit 500). This fact was shown by Mr. Kareem in his Post Trial Brief and in his Post Trial Answer Reply Brief.

[9] Under Georgia's Commercial Code affecting negotiable instruments, OCGA §11-3-604 provides in relevant parts. Discharge by cancellation or renunciation
(a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (ii) agreeing not to sue or otherwise renouncing rights against the party by a signed writing

homeowner for any reason without a registered Statutory Trust to represent their common interests.

Therefore in consideration of the above subsections A through C, Mr. Kareem has stated clear damages with respect to the full value of the security instrument lien held over on his estate.  It would be unreasonable and inequitable for AHMH to wrap-up and unwind their affairs by dissolution and leave an unenforceable lien for other entities to claim an interest to Mr. Kareem's estate.   The loan has been satisfied by accommodation as admitted at trial and no refutation of the transaction being sold to the REMIC Trust.  AHMH should give equity and release Mr. Kareem from his of lien obligation with respect his loan transaction and AHMH's consideration received (**emphasis added**).  His property title should not be encumbered by an entity undergoing dissolution that has admittedly been satisfied or has been paid off.

Claimant construes that it is unreasonable for the AHMH lien to exist in land records in Georgia that shows that AHMH may potentially have a future claim in which they have failed to enforce. In fact, AHMH has received full satisfaction to Mr. Kareem's loan by its sell to the defunct loan pool. Testimonies and actions have already granted relief by this Court and the Plan Trustee to Deutsche Bank and to Citibank for their claims affecting the defunct securitization

loan pools. The settlements or relief granted in this Chapter 11

proceedings have confirmed the veracity of the above matter.

Evidence shows that AHMH made an administrative filing with

the Securities and Exchange Commission noticing the termination of

AHMA 2006-3 (See Form 15D Filing). It would presume to follow

that AHMH had full knowledge and responsibility for their

administrative actions. Therefore presumptively, it would be

unreasonable for AHMH to show concern for AHMA 2006-3 rights

and no rights to Mr. Kareem. Presumably, rights have been settled by

this court with respect to Deutsche Bank and Citibank, N.A.

adversarial proceedings. Those issues are or will have been settled

with respect to those entities in their claims for securitization

breaches.

D.        Mr. Kareem has not engaged in any contract with other parties

with respect to the underlying instrument. Therefore, the failure by

AHMH through the Plan Trustee to issue the release of lien obligation

would be unreasonable. The matter appears to be a simple to resolve.

His purpose by entering his proof of claim was for recoupment,

restitution, set-off and to clear his land title as the results of AHMH

failed administrative actions.  Part of his claim sought is the amount

required to balance the books against the Note and to give "notice to

all the world" that $159,000.00 no longer remains outstanding to

AHMH and companies.

E.   As acknowledged, AHMH was given consideration by the evidence of

their endorsement and satisfaction received.   Evidenced is before the

Cour of the stamped copy of the Note "Pay to the Order of American

Business Conduit" signed by Lisa Furco (a former employee of AHM

Corp. see Exhibit A submitted in Claimant's Post Trial Brief on or

about February 13, 2012 Doc. No. 10328). This was not an action for

indorsement in blank[10] that is now being alleged by the Plan Trustee.

This was clearly an action done by AHMH and companies for

endorsement by accommodation under the applicable law[11].

F.   On or about January 5th, 2011, Mr. Kareem filed two (2) separate proof

of claim in these chapter 11 cases, which are identified by the claims

agent as claims 10870 and 10875.   Each of the Kareem Claims asserts

a secured claim in the amount of $200,000 and an unsecured claim in

the amount of $50,000 against AHM Holdings is undisputed as

administrative claims. Above, Mr. Kareem sets forth his reasons for

validity  of his claims. Bankruptcy rules defines that the Proof of Claim

is valid unless the Debtors prove otherwise. The Debtors have not

entered any such proof.

---

[10] Blacks Law Dictionary 6th Edition defines Blank indorsement as,"One made by the mere writing of the indorser's name on the back of the note or bill, without mention of the name of any person in whose favor the indorsement is made, but with the implied understanding that any lawful holder may fill in his own name above the indorsement if he so chooses."

[11] Blacks Law Dictionary 6th Edition defines Accomodation indorsement as. "one made by the third party person without any consideration, but merely for the benefit of the holder of the instrument, or to enable the maker to obtain money or credit on it **(emphasis supplied).**

6.

## Plan Trust's Legal Discussion Arguments Fail

### *Indorsement in Blank versus Indorsement by Accommodation*

The Plan Trustee has invented a "wild explanation" for the

endorsement signature by Lisa Furco displayed on the face of the

instrument. Their statements fail and they have provided no proof for their

defenses.  As noted in the above foot notes 6 and 7, the legal definitions does

not fit the set of actions done by AHMH and companies, with respect to the

instruments. For purposes of legal clarity, the Claimant shows how the

applicable definition on indorsement laws favors the claimant, as reasoned

below:

#### *Indorsement in Blank Fails to Provide Reasonable Presumption*

If we adopted the strict legal definition of "indorsement in blank" is

found in Black's Law Dictionary. According to the definition, it would be

unreasonable for the instrument to be "indorsement in blank" because

clearly, it was not indorsed by signature on the "back (side) of the

Instrument". Contrarily, the instrument shows that it is endorsed on the face

(front of the instrument) just under the signature of the Borrower. Whereas,

legally and technically, the transaction made by AHMH cannot be

reasonably described as a transaction done by "indorsement in blank".

An example of "indorsement in blank" would be an action to transfer

a car title from one owner to another for the purpose of future registration or

proof ownership through the Department of Motor Vehicle. Whereas, the

seller endorses the instrument on the back and the new owner may endorse it

above the seller's signature or transfer it to another. This is a classic

illustration of action to explain an "indorsement in blank" transaction. In the

instant action, the MBST compensated in-full the depositor (AHMH) for the

notes or mortgages to be sold and held as performing assets through

indorsements  on the face of the instrument indicating "Pay to the Order of".

Hence, the words, "pay to the order of" was used to receive consideration.

7.

### *Accommodation Indorsement Provides Reasonable Presumption*

By adopting the definition of "accommodation endorsement" from

Black's Law Dictionary, we find the role of each party and their relative

relationship and who benefitted from the transaction. Firstly,

Accommodation must have a third party.  The third party receives **no**

**consideration** from the transaction. This perfectly describes Mr. Kareem

status  in the transaction (**emphasis added**).  Presumptively, AHMH solely

benefitted from the Note proceeds and not Mr. Kareem. The Note Holder

was American Business Conduit, the subsidiary of AHMH who benefitted

in-full either by receiving cash or credit. This perfectly describes AHMH

and companies role to the transaction and their business objective.

Additionally, under Section 9 Obligations Under the Note found in

the Adjustable Rate Note (See Exhibit A), the section clearly indicates that

by any persons signing the Note fully obligates themselves under the terms,

to pay in full the obligation whether they are surety or endorser. This is

apparently a more precise explanation of the action done by the Note Holder

involving the negotiation with the Trustee as prescribed in the pooling and

servicing agreement. Notes were required to be endorsed and the depositor

was compensated under the Securitization process. AHMH and companies

were obligated deliver the mortgages "free and clear" from the depositor

claim of ownership and to act as surety to the Trustee under the REMIC

terms.[12]

The above factual background has not been denied during the course

of the trial or by post- trial answers provided by counsel for The Plan

Trustee. The Plan Trustee is not denying that AHMH benefitted from Mr.

Kareem's Mortgage or that they didn't receive consideration for their loans

by the securitization. Thus, AHMH was fully satisfied. Therefore, AHMH

has abandoned and renounced any interest in recovery from Mr. Kareem's

---

[12] See page 18 of 375 in the Prospectus that requires the sub servicer [AHM SV].. "to make delinquent payments of scheduled interests and principal on mortgage loans. .. If the servicer fails to make any required advances, the Master Servicer, as successor servicer may be obligated to do so". This clause presupposed that even if AHMSI took over the loan servicing role of AHM SV, then an amended Prospectus or PSA would have had to reflect the change and reported through the SEC, so that, a "new" servicer was declared to investors. Since the ORDER allowing APA was not authorized until about April 1, 2008, then AHMSI could not have been replaced into the loan servicing role, because the trust no longer existed per the termination filing of AHMA 2006-3 **(emphasis)**. Additionally, the APA agreement did not resolve the servicing right issues as witnessed by Exhibit 200-**Contracts Not Provided by Seller** (submitted with Claimant's Post Trial Brief) affecting the securitization servicing agreements.

Mortgage. Mr. Kareem maintains his right to discharge from AHMH as a matter of law.

8.

## Plan Trust's Arguments Fail against Claimant's Pursuit of Justice

### *Doctrine of Preclusion Fails*

I.   The Plan Trustee have made a consorted effort to try and deflect the claims by trying to establish a basis for *res judicata* or collateral estoppel. In the instant action, it simply does not work. Whereas, the four threshold elements that The Plan Trustee are trying to convince the court that exists for preclusion does not exists at all. Whereas, the Plan Trustee presumptions are flawed as stated sequentially below:

A.   Element (1) requires that *the identical issues were previously adjudicated* fails. Reasons unsupported by The Plan Trust are cited below:

B.   The defendants in the Texas Case were AHMSI, MERS and the executives of the respective firms. Neither AHMH nor the Plan Trust were involved in the Texas litigation. Neither are AHMSI or MERS are being represented in the instant action. Although, there may be tangential discussions on the residual effect from actions done by AHMH and companies, the right of action arose in the Texas action, came from a RESPA transfer of notice investigation

made by HUD. HUD has not invested AHMH. All correspondence and investigation were directed at AHMSI. HUD gave a right to sue letter to Mr. Kareem to establish a cause of action against AHMSI. AHMSI failed to prove that they had the servicing rights when HUD investigated their service authority. Never did AHMSI purport that their rights came from the APA agreement emanating from this court (***emphasis added***). Testimonies from the instant action confirms that no such transfer service notification was given by neither AHMH nor AHMSI.

C. The Texas action had additional causes for FDCPA, Request for Accounting, wrongful foreclosure, and a false assignment recordation of an instrument made into Georgia's land records. These are not identical issues argued before this court nor were there testimonies made on these issues made at trial.

AHMH negligence actions may have given rise to the other third-parties action, but the current action has its own merits.

D. Element (2) requires that the actions were litigated and settled. Claimant has pursued his due process rights with the U.S. Fifth Circuit Court of Appeals. There are solid grounds for success and reversal. Therefore, the issue of litigation in that action is not settled. Even if the Fifth Circuit rules adverse to Mr. Kareem,

AHMH was not a party to the action. Therefore, Element (2) fails as a basis to grant the Plan Trustee relief.

E. Element (3) does not comply because Elements (1) and (2) are inapplicable. Any decision would be mutually exclusive of the Claimants rights in this action.

F. Element (4) fails because AHMH was never represented in the Texas action. Therefore, regardless of the Fifth Circuit Court of Appeals rulings, its jurisdiction did not cover AHMH as a party and it would not encompass the contract matters relevant with respect to the loan origination, compliance issues, and broker defaults.

G. Besides, under Georgia's law on contracts provides the following:

"A plaintiff may pursue any number of consistent or inconsistent remedies against the same person or different persons until he shall obtain a satisfaction from some of them." (Emphasis supplied). OCGA §9-2-4. See Saunders, Stuckey & Mullis, Inc. v. Citizens Bank & Trust Company, (265 Ga. 453), (458 SE2d 337), (1995). Also see, Supreme Court of Georgia's ruling in Beiter v. Decatur Fed. S & L Assn., 222 Ga. 516, 518 (2) (150 SE2d 687) (1966) "Right to recover unsecured claims".

Apparently, Mr. Kareem is well within his legal rights to pursue his remedies to protect his estate, homestead and interests in multiple forums

until he receives satisfaction. It is reasonable for this court to presume that

multiple parties injured Mr. Kareem in different ways[13].

9.

## II. **Plan Trust's Allegation that Evidentiary Record is Complete has Fatal flaws.**

The Plan Trustee wants to rush to conclusion on the evidence, when the key

witness, Ms. Wanerka, left many unanswered questions of fact as noted

above in this reply sections 3 through 5 entitled *"Importance of*

*Clarification on Facts and Testimonies"* and *"Relevance of Facts for Legal*

*Determinations"*. Claimant entered supporting evidence to support his

assertions on predatory lending and breach of contract were factual claims

and not mere allegations.

10.

## Compliance Issues Supports *Ab Initio* Breach of Contract Claim

In testimonies made by Ms. Wanerka, much dialogue and cross-

examinations purported that AHMH and Companies loan origination

followed lending guidelines. Mr. Kareem opposes and objects to this

argument by showing through his due diligence findings from the

---

[13]  Under Georgia law, damages are compensated 'Whether such damages as are here sued for arise by reason of a tort or the breach of a contract, they are given to the injured party as compensation for the injury sustained. (Cits.) . . .' [Cit.]" *England v. Ga.-Fla. Co.*, 198 Ga. App. 704, 706 (2) (402 SE2d 783) (1991). " ' "Damages are given as compensation for the injury done." "There can be but one satisfaction of the same damage or injury." ' [Cit.]" *Nannis Terpening &c. v. Mark Smith Constr. Co.*, 171 Ga. App. 111, 113 (1) (318 SE2d 89) (1984).

www.OCC.gov website, provides an Annual Percentage Rate calculation

test. When the APR test form the OCC.gov website was done, it found non-

compliance (See Exhibit 400 WIN 6.20 APR submitted by Claimant in his

Post Trial Brief). To settled the matter more favorable for Mr. Kareem, he

obtained additional proofs to show that his claims were not just mere

allegations.

11.

### *Claimants Additional Proofs of Predatory Lending by AHMH*

1.      Claimant submitted his Mavent Systems Compliance Report findings

and Verification ( See Exhibits  900-Loan MOD Forensic, 1000-

Verification by No Predatory Lending Auditor Walter Fordham). Press

Release (Exhibit 1100 by Titan Lenders shows why the Mavent Systems

platform is known and adopted as a Lending Industry Compliance Leader.

The reports speak for themselves. However, it is interesting how Counsel

wants to critic the reports and discredit the findings. The independent report

substantiates that AHMH loan was engaged in predatory lending directly

affecting Mr. Kareem's Loan, *ab initio*. The summary of failures, detailed

from the compliance audit were summarized, as follows:

   a.   The TILA- Tolerance failed for the 12-month MTA adjustable rate.
        The finance charge was $4,658.82 below the actual finance

charged over the life of the loan. This is a cause of failure under

12 U.S.C. §1635 (i)(2) and under 12 CFR §226.23(g)

b.  State Rules Review: Lender and Broker results failed. The Lender

and broker were required a Georgia Residential Mortgage Act

License or Registration is needed to make or broker loans before

July 1. 2009 secured by a 1-4 unit dwelling (Ga. Code 7-1-

1000(9). (12), (13) ; 7-1001(2.1). Noticeably, Global Mortgage

license was revoked on 02-07-2007. There was an apparent

ongoing investigation prior to the full revocation. Whereas, a

suspension or Cease and Desist Order (See Example of Liberty's

Exhibit 1200 based on unlawful fiduciary) may have been

rendered prior to the revocation.  Significantly, the full Revocation

of Global Mortgage license (See Exhibit 700) occurred within 7

months of Mr. Kareem's loan origination (emphasis supplied).

c.  The audit failures rejects any of AHMSI's contention that Mr.

Kareem had no legal basis for his attempt to rescind the loan or

the liabilities from the toxic loan being passed on to the Assignees

under 15 USC §1641 et seq.

12.

**Objections Fails and Defies Logic**

Counsel argues in brevity that the Court should not allow the

Claimant to "expound, give supportive explanation or evidence". That such

documents  produced by the Claimant are inadmissible. The Plan Trust

supports this by two main reasons:

> 1. They are late,  and

> 2. They involve, "causes of actions, facts or evidence that were not

presented at Trial…". Claimant opposes and disagrees by objection to their

allegations in its entirety.

13.

**Summary of Objections to Plan Trust's Motions to Strike;**

**Relevance to Trial Discussions.**

As discussed in Section 2 *Claimant's Request for Leniency*

above,  the transcript record and hearing were with respect to unfair

business and deceptive practices, predatory lending, breach of contract, and

supplemental testimonies were made on lender and broker compliance.  Mr.

Kareem believed and understood that the intents and purposes for the Post

Trial Briefs were to bring finality and closure on all open ended discussions

and issues of fact. As discussed in the *Bell Atlantic Corp. v. Twombly*  case law,

the burden shifts to the Claimant to show that he was not engaged in mere

allegations. This is particularly true when faced with Bankruptcy claims.

Before trial, Mr. Kareem had little time or no open discussion with the Plan

Trust's  Counsel to know which documents would be relevant at trial. This

was one of his reasons to enter his Motion in Limine.  Neither was he given

a witness list, so that, he could prepare for cross examination of a former

employee. There were no notices or exchange of key witnesses to consider

prior to coming to trial. The record will show (see Doc. No. 10244) that

Claimant made motions for discovery, but they were denied. So, the element

of a surprise witness favored the Plan Trust and the Debtor's in possession.

14.

Mavent System Compliance Report is relevant to trial discussions. It

is a direct comparison  and opposition to the results purportedly obtained

from WIZ Sentinel. One cannot effectively counter argue with credibility

about a program unless it does the exactly or approximately the same thing

or kind of test. In Mavent's case, it tested for the loan documents and

disclosures and Georgia's Regulatory status on Brokers and lenders. The

auditor placed in his verification to its veracity. If there is a need to cross-

examine, then a final oral argument could have been used for that purpose.

15.

Under the Rules of Evidence the Mavent System reports finds favor.

Georgia Rules of Evidence OCGA §24-4-9 provides,

"*Inferences from evidence or lack thereof*. In arriving at a verdict, the jury, from facts
proved, and sometimes from the absence of counter evidence, may infer the existence of
other facts reasonably and logically consequent on those proved."

Whereas, both the Mavent Systems and the OCC website tests

revealed some level that lender disclosures were not in compliance.

Whatever concerns or questions that Counsel raised with the data could have

28

very well been addressed by cross-examination at an oral hearing.  The Plan

Trust opposes the hearing and now the Court has withdrawn it.

### 16.

### *Counsel Argues Against The Use Of Website Data.*

Among other things objected to by the counsel, is the use of websites.

Claimant objects and opposes. If Counsel is inferring that the website data is

not highest and best use, then that's plausible. However, the Court may find

under the rules of evidence that it is still admissible as secondary evidence,

competent evidence, direct evidence, Cumulative evidence, sufficient

evidence, preponderance of evidence and more rules under evidence for

consideration. But, for Counsel to assert that it is entirely inadmissible defies

logic[14].

Among other things is the shear logic that there are competent

websites that provide valuable first-hand independent collaboration of

factual data. There are the SEC websites, which provides proof of registered

securities and filings.  There is the OCC website which provides proof of

---

[14] Under OCGA §24-5-1. Primary and secondary evidence distinguished
(a) Primary evidence is such as in itself does not indicate the existence of other and better
proof. (b) Secondary evidence is such as from necessity in some cases is substituted for
stronger and better proof.
Under OCGA §24-5-2. Showing to admit secondary evidence
In order to admit secondary evidence, it shall appear that the primary evidence for some
sufficient cause is not accessible to the diligence of the party. This showing shall be made
to the court, who shall hear the party himself on the question of diligence and the
inaccessibility of the primary evidence.

certified federal banks and financial institutions. There are the Secretary of

State websites that provide corporation searches and their registered agents

information. Authentication is only one additional step to get the seal from

the agency for its data. Then, the same data would qualify for highest and

best use. The questions raised before the court is, does the lack of

authentication infer that legitimate  from the websites has no validity? Are

such websites such as the IRS, and on and on and on not valid for

information, forms or instructions?. Is counsel suggesting that because the

data comes from one of these websites, then the data is unreliable?

17.

### Analyzing Claimant's and Plan Trust's Motion to Strike

A motion to strike under the Fed.R. Civ. Proc. Rule 12(f) is an extreme remedy

with well-settled limitations. The requests may have been misplaced by the Plan Trust.

Generally, Courts have agreed on the application to strike as follows:

> *"Rule 12(f) provides that a court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." "[T]he function of a 12(f) **motion** to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...."* [15]

---

[15] See *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." Also see, Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706-07 (1990). "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 711. Also see Superfluous historical allegations are a proper subject of a motion to strike. *See, e.g., Healing v. Jones,* 174 F.Supp. 211, 220 (D.Ariz.1959).

In consideration of the above, Counsel wants this court to cast out factual arguments, data, and verifications related to the subject-matters discussed at trial. Claimant opposes and objects to the Plan Trust's Motion to strike in its entirety.

On the other hand, Claimant requested in his Motion in Limine, specific documents to be withdrawn, retracted or disallowed from pleadings from other cases, as a cause to potentially prejudice the court. A hearing was held on the matter and yet, counsel continues the pattern of bringing in outside court cases into this matter. Those cases have their own remedies. There may be some tangential issues, but this proceeding is decisively between the Mortgagor and the Mortgagee.

Claimant's Motion to strike is supported by' the Court's previous court hearing held on November 18, 2011 with clear determinations made on admissibility. It may considered abusive actions by counsel to continue to bring in other pleadings that is outside the Bankruptcy action in itself. Claimant believes that he has an open and shut case for his motion to strike. Counsel intends to bring in pleadings that are redundant, immaterial, impertinent or scandalous. These adjectives describes the intent to bring in Jose Colon 's affidavit and the Magistrate Judge's recommendation. Whereas, Claimant's request for relief by striking portions of the Plan Trust's answer is well supported for the court's consideration in the instant action.

18.

### *Delayed Filing*

Even if the court determines that Claimants April 26, deadline was exceeded, the mistake may be shown to be inadvertent. Claimant submits a copy of his postmarked Priority Mail envelope (See Exhibit 1300) that he

used to mail into the court his Original Reply Brief before he sent within

days, his Amended Reply Brief.

Noticeably, Counsel fails to add the "mail box rule" for delivery

time.[16] Claimant shows the Postal website delivery handling of the certified

mail into the U.S. Bankruptcy Court. The transaction speaks for itself (See

Exhibit 1300B). Noticeably March 28th, was the expected delivery date well

within the three days. March 30th, 2012 would have been Friday, before the

weekend.  However, delivery was not completed until April 2, 2012.

The mail sent to Counsel was delayed until the March 29th as

postmarked. When he discovered that he was amending his Reply, he waited

until the Amended version was completed before sending by mail to

Counsel. However, Claimant thought that Counsel would get an electronic

filing notice from the court of the original Reply Answer Brief.  This may

have been an oversight. Typically, Claimant sends an electronic version, too,

but that during the week for completion, he was weaken and experienced

health problems.  He had reduced access his computer.

Claimant is at the mercy of the court, with respect to the three day

rule. The Postal service delivery does suggest that it took more than three

---

[16] *See Jeffery l. Major, Sr. v. Cooper Lightning,LLC,  et al* , Case 1:10-cv-00094-WLS
Document 12 , U.S.D.Ct. MD. Dst. GA (11/23/10)  cited in *Jones v. Dillard's, Inc.,* 331
F.3d 1259, 1269 (11th Cir. 2003), "Eleventh Circuit  policy extends the ninety (90) day
filing period to ninety-three (93) days from the date stamped on the EEOC Right to Sue
Letter to account for the time it typically takes such letters to reach".. Also see, *See
Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1341-42 (11th Cir. 1999) (stating
policy's similarity to Fed. R. Civ. P. 6(e)'s "mailbox rule" and explaining that
"[p]roviding a three-day period also provides a clear rule that will enable parties to be
aware of when they must act".

days to deliver and longer than the postal service had projected. To that degree, Claimant's filing by postal delivery was outside of his control. In retrospect, Claimant could have used overnight delivery. However, the postal carriers assured him of a time that the mail would have been delivered within the mail box rule.

## Summary

For reasons fully incorporated above, including citation of authorities contain herein, Claimant has demonstrated his legal basis to support that his loan was discharged, impaired and that he was harmed by AHMH actions, which contained were dilatory and deceptive practices[17]. These were issues were raised in his Post Trial Brief. Notwithstanding Claimants Reply Brief and Motion to Strike, the Post Trial Brief are rich with factual evidences at law that must be overcome by the Plan Trust.

AHMH actions and damages were confirmed at trial for Breach of Contract and  failure to rescind. There are at minimum of actual damages of $19,000.00. Mr. Kareem made payments. He challenged the false accounting by AHMSI who in turn suspended billing him. His actions to defend errant billings are supported by law but is not the relevant contractual issues between the Mortgagor and Mortgagee. Those issues are preserved for another court's jurisdiction.

Claimant incorporates his loan contract value, credit reporting harms, and the costs to maintain lengthy litigation justifies his administrative claim

---

[17] O.C.G.A. §10-1-372 When trade practices are deceptive; common-law and other remedies unaffected
(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.
(b) In order to prevail in an action under this part, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

balance of $231,000.00. AHMH administration has failed to give him equity when it was their good faith obligation to do equity.

Tort damages are available for negligence and acquiescence under applicable Georgia law for treble amount. AHMH and companies Contract Breach and Good faith obligations includes the following:

a.      Knowingly allowed third-parties relationships to make claims against Mr. Kareem's impaired security instrument.

b.      Assigning MERS as an unlawful fiduciary to administer properties and a note under OCGA §7-1-242[18]. MERS was and remains an unregistered

---

[18] Under The O.G.C.A. § 7-1-242 statute provides:

(a). No corporation, partnership, or other business association may lawfully act as a fiduciary in this state except:

(1) A financial institution authorized to act in such capacity pursuant to the provisions of Georgia law;

(2) A trust company;

(3) A national bank or a state bank lawfully doing a banking business in this state and authorized to act as a fiduciary under the laws of the United States or another state;

(4) A savings bank or savings and loan association lawfully doing a banking business in this state and authorized to act as a fiduciary under the laws of the United States or another state;

(5) Attorneys at law licensed to practice in this state, whether incorporated as a professional corporation or otherwise;

(6) An investment adviser registered pursuant to the provisions of 15 U.S.C. Section 80b-3 or Chapter 5 of Title 10, provided this exception shall not authorize an investment adviser to act in any fiduciary capacity subject to the provisions of Title 53, relating to wills, trusts, and the administration of estates; or

(7) A securities broker or dealer registered pursuant to the provisions of 15 U.S.C. Section 78o or Chapter 5 of Title 10 acting in such fiduciary capacity incidental to and as a consequence of its broker or dealer activities.

(8) A nonprofit corporation. .....

(b) (2) Administering real or tangible personal property located in Georgia or elsewhere. For the purposes of this paragraph, "administer" means to possess, purchase, sell, lease, insure, safekeep, manage, or otherwise oversee;

Whereas, MERS does not meet the legal definition of a fiduciary for purposes on being on a Security Instrument without being properly licensed as such. Even if MERS had standing, then AHMH's insolvency would have changed or altered or canceled MERS ability to act as AHMH's sole agency. Did the Plan Trustee permit MERS to assign over to CITIBANK, as Trustee, the NOTE and Security Deed on Jan. 25, 2010 into Georgia's

corporation in Georgia. MERS was and maintains itself as an electronic database provider. The MERS corporate structure does not fit the legal definition of as "fiduciary" to act in any capacity with respect to a financial instrument or administering a property.  MERS fiduciary role conflicts with the current Plan Trustee's role. Exhibit 1200 shows how Georgia's Banking and finance have cited that as a legal basis to suspend, cease or band lenders (like Liberty) from operating as an unlawful fiduciary.

c.     Failing to adequately disclose that the Monthly Treasury Adjustable Rate Note contract performance would or could yield a negative amortization.

d.     Failing to inadequately disclose finance charges.

e.     Failing to provided net tangible benefit under Georgia's finance law.

f.     Failing to maintain a licensed good standing broker in Georgia as discovered by an independent industry compliance Mavent Systems Audit[19].

---

Land Records? Georgia Law requires only executors or administrators to act on behalf of a deceased mortgagee. Under Georgia's law on mortgagee's OCGA §44-14-181, deceased mortgagees can only maintain proceeding against the Mortgagor by the executor or administer. Thus, under the applicable law would prohibit others from staking their interests claim or to administer documents without the Plan Trustee's permission.

[19] At trial, Ms. Eileen Wanerka testified that she was not employed as a lending compliance officer with her former employee AHMH. She could not factually determine if the loan was in compliance under applicable banking and finance laws (see Page 139 lines (1-14) from the transcript).  Claimant had to submit his own Audit findings into the instant action pursuant to the right of determining facts are supported and  not mere allegations.

Relevance to the instant action: Mr. Kareem testified at trial that he was confused about the loans performance during the admission phase of the trial to determine admissible

g.   Breaches under their Prospectus and Pooling and Servicing

Agreement for AHMA 2006-3 Mortgaged Backed Security Trust

affecting Mr. Kareem's contract status by:

1.   As guarantor, AHM Corp. failed to perform under a buy-back of

"unrecoverable asset" as a duty of the Depositor under the

securitization agreements or its rule as the servicer.

2.   Knowingly failing to give notice that the AHMA 2006-3

Certificates is not a statutory entity go to against Mr. Kareem's

estate (See Exhibit Form 15 filing)[20]. In fact, the entity does not

exists under either New York State's or Delaware State's statutory

requirements for trusts.

**Relief Sought**

Claimant objects to and moves this court to strike Jose Colon's

Affidavit and the Magistrate Judge Order. These documents violate the

Motion In Limine Order by this Court. This is a mere attempt to prejudice

this court.

Claimant seeks leniency for his filing delay if it is determined that it

exceeded the mail box rule. Claimant turns to this Honorable Court for

---

content for cross examination.  Apparently, the negative amortization would deprived
him of a net tangible benefit in preserving his equity accumulation and the finance charge
was understated. He did not have the potential negative amortization feature in his
previous mortgage. Surely, the negative amortization and the rate potentially rising up to
9.95% did not benefit his search for a stable low interest rate loan. Global Mortgage was
found to be in violation of lending practices in Georgia affecting Mr. Kareem's brokered
loan.

[20] See Exhibit 300 Form 15 entered into the U.S. Securities and Exchange Commission
found in Section 37 (submitted in Claimant's Post Trial Brief).

36

common law equitable tolling, where the Court may use its discretion when a mishap was not of purposeful intent[21].

Claimant seeks the Court to accept his motion for Out of time filing to render cure from the inadvertent mistake.

Claimant seeks the court to deny The Plan Trusts Motions to Strike the Amended Post Trial Reply Brief and supporting trial reports.

Claimant withdraws his request for final oral argument and leaves it to the Court discretion on post hearings.


**EXECUTED THIS DAY ON OR ABOUT APRIL 30, 2012**

Hussain Kareem, Pro Se

**404-0907-0177 (Phone Line)**

---

[21] Thus, "hardships to plaintiffs can be accommodated by the equitable tolling rules." Zillyette, 179 F.3d at 1342. plaintiff's favor is that the Eleventh Circuit "view[s] filing within the ....period as a condition precedent subject to equitable tolling or waiver, rather than as a jurisdictional bar." Jones v. Wynne, 266 Fed. App'x 903, 905 (11th Cir. 2008) (citing Fouche v. Jekyll Island-State Park Auth.,

## CERTIFICATE OF SERVICE

I, the undersign, certify that on or about March 30, 2012 I filed the foregoing document with the opposing counsel filed electronically with electronic signature and by certified mail, prepaid first class mail without using the electronic email of the counsel *to the following:*

Counsel for Debtors:
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Margaret Whiteman Greecher
Rodney Square
1000 North King Street
Wilmington, DE 19801
P 302.571.6753
F 302.576.3416
mgreecher@ycst.com Counsel for the Plan Trustee:


**HAHN & HAESSEN LLP**
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, N.Y. 10022
Tel: (212) 478-7200
**The Plan Trustee:**
Steven D. Stass
AHM Liquidating Trust
P.O. Box 10550
Melville, NY 11747


**EXECUTED THIS DAY ON APRIL 30, 2012**

/S/

Hussain Kareem, Pro Se
2197 Carlysle Creek Drive
Lawrenceville, GA 30044
404-907-0177: Phone Line

38

Exhibits

Delaware.gov | Text Only

Governor | General Assembly | Courts | Elected Officials | State Agencies

Exhibit 500

✗ Photo: Featured Delaware Photo

## Department of State: Division of Corporations

HOME
About Agency
Secretary's Letter
Newsroom
Frequent
Questions
Related Links
Contact Us
Office Location

SERVICES
Pay Taxes
File UCC's
Delaware Laws
Online
Name Reservation
Entity Search
Status
Validate
Certificate
Customer Service
Survey

INFORMATION
Corporate Forms
Corporate Fees
UCC Forms and
Fees
Taxes
Expedited
Services
Service of Process
Registered Agents
Get Corporate
Status
Submitting a
Request  How to
Form a New
Business Entity
Certifications,
Apostilles &
Authentication of
Documents

Frequently Asked Questions   View Search Results

### Entity Details

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
|---|---|---|---|
| File Number: | 4351362 | Incorporation Date / Formation Date: | 05/14/2007 (mm/dd/yyyy) |
| Entity Name: | AMERICAN HOME MORTGAGE ASSETS TRUST 2007-SD2 | | |
| Entity Kind: | STATUTORY TRUST | Entity Type: | GENERAL |
| Residency: | DOMESTIC | State: | DE |

*Only Active Trust with S.O.S.*

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | WILMINGTON TRUST COMPANY | | |
| Address: | RODNEY SQUARE NORTH 1100 N. MARKET STREET | | |
| City: | WILMINGTON | County: | NEW CASTLE |
| State: | DE | Postal Code: | 19890 |
| Phone: | (302)636-6543 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⊙ Status ○ Status,Tax & History Information  [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

site map  |  about this site  |  contact us  |  translate  |  delaware.gov

Exhibit 500

Frequently Asked Questions   View Search Results   Summary of Charges   Logout

## Entity Details

| File Number: | **4351362** | Incorporation Date / Formation Date : | **05/14/2007** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **AMERICAN HOME MORTGAGE ASSETS TRUST 2007-SD2** | | |
| Entity Kind. | **STATUTORY TRUST** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |
| Status: | **GOOD STANDING** | Status Date: | **05/14/2007** |

**TAX INFORMATION**

| Last Annual Report Filed: | **NO REPORTS ON FILE** | Tax Due: | **$ 0.00** |
|---|---|---|---|
| Annual Tax Assessment: | **$ 0.00** | Total Authorized Shares: | **0** |

**REGISTERED AGENT INFORMATION**

| Name: | **WILMINGTON TRUST COMPANY** | | |
|---|---|---|---|
| Address: | **RODNEY SQUARE NORTH 1100 N. MARKET STREET** | | |
| City: | **WILMINGTON** | County: | **NEW CASTLE** |
| State: | **DE** | Postal Code: | **19890** |
| Phone: | **(302)636-6543** | | |

**FILING HISTORY (Last 5 Filings)**

| Seq | Document Code | Description | No. of pages | Filing Date (mm/dd/yyyy) | Filing Time | Effective Date (mm/dd/yyyy) |
|---|---|---|---|---|---|---|
| 1 | 0102B | Register Statutory Trust | 1 | 05/14/2007 | 11:57 | 05/14/2007 |

Back to Entity Search

To contact a Delaware Online Agent click here.

https://dbfweb.dbf.state.ga.us/cgi-bin/WebMB.exe?NameName

**Exhibit 700**

**19642  Global Mortgage of Delaware, Inc.**
Broker dba : Global Mortgage, Inc.
14440 Myer Lake Circle
Clearwater, FL 33760-2813

**Broker license**
**REVOKED 02-07-2007**

Other DBA's List

Subject to Consent Agreement
Eff Date: 02-07-2007
Reason: 7-1-1002; 7-1-1013(1)(2)(6)(11);
7-1-1006;7-1-1004

**19642  Global Mortgage of Delaware, Inc.**
Broker 14440 Myer Lake Circle
Clearwater, FL 33760-2813

**Broker license**
**REVOKED 02-07-2007**

Other DBA's List

Subject to Consent Agreement
Eff Date: 02-07-2007
Reason: 7-1-1002; 7-1-1013(1)(2)(6)(11);
7-1-1006;7-1-1004

**22108  Global Mortgage Financial Group, Inc.**
Broker dba : Global Mortgage Financial Group Inc
6568 Cobia Circle
Boynton Beach, FL 33437

**Broker license**
**EXPIRED 07-01-2009**

Other DBA's List

**22108  Global Mortgage Financial Group, inc.**
Broker 6568 Cobia Circle
Boynton Beach, FL 33437

**Broker license**
**EXPIRED 07-01-2009**

Other DBA's List

**19067  Global Mortgage Group, Inc. (SC)**
Lender 669 Marina Drive Suite A3
Charleston, SC 29492

**Lender license**
**EXPIRED 07-01-2007**

Other DBA's List

**7455  Global Mortgage, Inc.**
Broker 5161 Brook Hollow Parkway Suite 200A
Norcross, GA 30093

**Broker license**
**EXPIRED 07-01-2001**

Other DBA's List

*Not Same Company Not Address of Claimant*

**22009  Global Mortgage Lenders, LLC**
Broker 911 Duluth Highway Suite D3275
Lawrenceville, GA 30043

**Broker license**
**EXPIRED 10-02-2008**

**No additional dba names.**

Ga Mortgage Licensee Search - Search by Name, Sort by Name

*Exhibit 800*

# Department of
# Banking & Finance

*"Safeguarding Georgia's Financial Services"*

## Your selection criteria was : name contains 'American Brokers Con'

**Information as of 03/27/2012 6:13:12 PM**

License name, dba name, or primary contact name appear in bold if the criteria you selected found a match in that name type.

Back

| =Broker | =Processor | =Lender | =Registrant | =Not a valid license |
|---|---|---|---|---|

**LIC#**
14650

**Lender**
dba : American Brokers Conduit
538 Broadhollow Road
Melville, NY 11747

**LICENSEE**
American Home Mortgage Corp.

**CONTACTS**
Lender license
**WITHDRAWN 09-05-2007**

**LISTS**
Other DBA's List

Back

3/27/2012 8:46 PM

1 of 1

Exhibit 900



| | |
|---|---|
| **Customer:** No Predatory Lending (0148031709) | **Review Status:** FAIL |
| **Loan ID:** 0001350490 | **Review Date:** 2012-03-27 |
| **Review ID:** 014803170900013504908181848820120327215005460 | **State:** GA |
| **Location:** Main | |
| **Borrower:** Hussain  Kareem | |

**Loan Status: FAIL**

| High Cost | Higher Priced | TILA | State Rules | License | NMLS | OFAC | HMDA | GSE | Enterprise Rules | Other |
|---|---|---|---|---|---|---|---|---|---|---|
| PASS | PASS | FAIL | FAIL | FAIL | Not Requested | Not Requested | Not Requested | Not Requested | PASS | WARNING |

### Request Summary    Result: **FAIL**

| | | | |
|---|---|---|---|
| **Borrower:** | Hussain  Kareem | **Seller:** | |
| **Reviewed by:** | Trained Mavent Operator | **Originator:** | Global Mortgage |
| **Location:** | Main | **First Group:** | |
| **Loan ID:** | 0001350490 | **Second Group:** | |
| | | **Third Group:** | |
| | | | |
| **Address 1:** | 2197 Carlyale Creek Drive | **Lien Position:** | 1 |
| **Address 2:** | | **Occupancy Type:** | Primary |
| **City:** | Lawrenceville | **Property Type:** | SFR Detached |
| **County:** | | **Mortgage Type:** | Conventional |
| **State:** | GA | **FHA Section:** | |
| **Zip Code:** | 30044 | **Transaction Type:** | Cash Out Refinance |
| | | **Origination Type:** | Wholesale |
| | | **Documentation Type:** | Full Documentation |
| | | **Appraised Price:** | $ 159,200.00 |
| | | **Sales Price:** | $ 0.00 |
| | | **Loan Amount:** | $ 159,200.00 |
| | | **As-Is Value:** | $ 0.00 |
| | | **After-Improved Value:** | $ 0.00 |
| | | **Total Rehabilitation Cost:** | $ 0.00 |

### TILA-Tolerance    Result: **FAIL**

**Message:** The disclosed finance charge ($248,209.24) is ($4,658.82) below the actual finance charge ($252,868.06). For rescission after initiation of foreclosure, the Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $35 below the actual finance charge. (15 USC Sec. 1635(f)(2)).

**Message:** The disclosed finance charge ($248,209.24) is ($4,658.82) below the actual finance charge($252,868.06). The Truth in Lending Act considers the disclosed finance charge inaccurate if it is more than $100 below the actual finance charge. (12 CFR Sec. 226.18(d)(1)).

**Message:** The disclosed finance charge ($248,209.24) is less than the actual finance charge ($252,861.06) by ($4,658.82). For rescission purposes, the Truth in Lending Act considers the finance charge inaccurate if it is understated by more than half of 1% of the note amount ($796.00) or $100, whichever is greater. (12 CFR Sec. 226.23(g)).

Page 1 of 5

Exhibit 900

| APR | | |
|---|---|---|
| Review: | PASS | |
| Disclosed APR: | 7.014000% | |
| Calculated APR: | 7.0839% | |
| Difference: | (0.0699%) | |

| Finance Charges | | |
|---|---|---|
| Review: | FAIL | |
| Disclosed Finance Charges: | $ 248,209.24 | |
| Calculated Finance Charges: | $ 252,868.06 | |
| Difference: | ($ 4,658.82) | |

**Calculation data**

| Jurisdiction | Finance Charge Amount | Financed Amount | APR | Days of Prepaid Interest | Daily Prepaid Interest Amount |
|---|---|---|---|---|---|
| FED | $ 252,868.06 | $ 156,415.72 | 7.0839% | 20 | $ 8.29 |

| Fees Included | Paid By | Paid To | Amount |
|---|---|---|---|
| Loan Origination Fee: | Borrower | Originator | $ 350.24 |
| Processing Fee: | Borrower | Originator | $ 495.00 |
| Tax Related Service Fee: | Borrower | Lender | $ 92.00 |
| Flood Certification Fee: | Borrower | Lender | $ 19.00 |
| Commitment (Rate Lock) Fee: | Borrower | Lender | $ 480.00 |
| Broker Fees: | Borrower | Originator | $ 1,000.00 |
| Prepaid Interest | Borrower | Lender | $ 168.04 |
| Attorney's Fees: | Borrower | Provider | $ 100.00 |
| Courier Fee: | Borrower | Provider | $ 45.00 |
| Courier Fee: | Borrower | Provider | $ 15.00 |
| Recording Service Fee: | Borrower | Provider | $ 20.00 |
| **Total Fees:** | | | **$ 2,784.28** |

| Fees Excluded | Paid By | Paid To | Amount |
|---|---|---|---|
| GA Residential Mortgage Act Per Loan Fee: | Borrower | Lender | $ 6.50 |
| Yield Spread Premium/Rebate: | Lender | Originator | $ 597.00 |
| Insurance Premium - Hazard: | Borrower | Lender | $ 614.00 |
| Title Examination: | Borrower | Provider | $ 150.00 |
| Title Insurance: | Borrower | Provider | $ 719.02 |
| Tax Status Research Fee: | Borrower | Provider | $ 15.00 |
| Doc Tax Stamps/Transfer Taxes - State: | Borrower | Provider | $ 478.50 |
| Recording Fees-Mortgage/Deed of Trust: | Borrower | Provider | $ 70.00 |
| Filing Fees: | Borrower | Provider | $ 50.00 |
| **Total Fees:** | | | **$ 2,700.02** |

**TILA MDIA Disclosure**

**Disclosed Payment Summary**

**TILA-Right of Rescission**     Result: PASS

Loan Disbursement Date:     2006-07-12



Page 2 of 5

Exhibit 900

| | |
|---|---|
| Right To Cancel Expire Date: | 2006-07-11 |
| Right to Cancel Signed Date: | 2006-07-07 |

## TILA-Payment

| Payment Date | |
|---|---|
| LTV Drop Date. | N/A |
| Sum of Payments: | $ 409,183.78 |

### Payment Stream Worksheet
#### Calculated Data

| Number of Payments | Date | Payment Amount |
|---|---|---|
| 42 | 2006-09-01 | $580.51 |
| 317 | 2010-03-01 | $1,210.39 |
| 1 | 2036-08-01 | $1,208.73 |

## High Cost ( FED )  Second Pass    Result: PASS

Federal Total Loan Amount: $156,415.72

| APR Result | |
|---|---|
| Limit Rate: | 13.1300% |
| Loan Rate: | 7.0839% |
| Difference: | 6.0461% |

| Fee Result | |
|---|---|
| Fee Limit: | $ 12,513.26 |
| Loan Fees: | $ 2,616.24 |
| Difference: | $ 9,897.02 |

| Fees Included | Paid By | Paid To | Amount |
|---|---|---|---|
| Loan Origination Fee : | Borrower | Originator | $ 350.24 |
| Processing Fee : | Borrower | Originator | $ 495.00 |
| Tax Related Service Fee : | Borrower | Lender | $ 92.00 |
| Flood Certification Fee : | Borrower | Lender | $ 19.00 |
| Commitment (Rate Lock) Fee : | Borrower | Lender | $ 480.00 |
| Broker Fees : | Borrower | Originator | $ 1,000.00 |
| Attorney's Fees : | Borrower | Provider | $ 100.00 |
| Courier Fee : | Borrower | Provider | $ 45.00 |
| Courier Fee : | Borrower | Provider | $ 15.00 |
| Recording Service Fee : | Borrower | Provider | $ 20.00 |
| **Total Fees:** | | | **$ 2,616.24** |

| Fees Excluded | Paid By | Paid To | Amount |
|---|---|---|---|
| GA Residential Mortgage Act Per Loan Fee : | Borrower | Lender | $ 6.50 |
| Yield Spread Premium/Rebate : | Lender | Originator | $ 597.00 |
| Prepaid Interest : | Borrower | Lender | $ 168.04 |
| Insurance Premium - Hazard : | Borrower | Lender | $ 614.00 |
| Title Examination : | Borrower | Provider | $ 150.00 |
| Title Insurance : | Borrower | Provider | $ 719.02 |
| Tax Status Research Fee : | Borrower | Provider | $ 15.00 |
| Doc Tax Stamps/Transfer Taxes - State : | Borrower | Provider | $ 478.50 |
| Recording Fees-Mortgage/Deed of Trust : | Borrower | Provider | $ 70.00 |
| Filing Fees : | Borrower | Provider | $ 50.00 |
| **Total Fees:** | | | **$ 2,868.06** |

Page 3 of 5

*Exhibit 900*

| High Cost ( GA )  Second Pass | Result: PASS |
| --- | --- |

Federal Total Loan Amount: $156,415.72

| APR Result | |
| --- | --- |
| Limit Rate: | 13.1300% |
| Loan Rate: | 7.0839% |
| Difference: | 6.0461% |

| Fee Result | |
| --- | --- |
| Fee Limit: | $ 7,820.79 |
| Loan Fees: | $ 3,213.24 |
| Difference: | $ 4,607.55 |

| Fees Included | Paid By | Paid To | Amount |
| --- | --- | --- | --- |
| Loan Origination Fee : | Borrower | Originator | $ 350.24 |
| Processing Fee : | Borrower | Originator | $ 495.00 |
| Tax Related Service Fee : | Borrower | Lender | $ 92.00 |
| Flood Certification Fee : | Borrower | Lender | $ 19.00 |
| Commitment (Rate Lock) Fee : | Borrower | Lender | $ 480.00 |
| Broker Fees : | Borrower | Originator | $ 1,000.00 |
| Yield Spread Premium/Rebate : | Lender | Originator | $ 597.00 |
| Attorney's Fees : | Borrower | Provider | $ 100.00 |
| Courier Fee : | Borrower | Provider | $ 45.00 |
| Courier Fee : | Borrower | Provider | $ 15.00 |
| Recording Service Fee : | Borrower | Provider | $ 20.00 |
| **Total Fees:** | | | **$ 3,213.24** |

| Fees Excluded | Paid By | Paid To | Amount |
| --- | --- | --- | --- |
| GA Residential Mortgage Act Per Loan Fee : | Borrower | Lender | $ 6.50 |
| Prepaid Interest : | Borrower | Lender | $ 168.04 |
| Insurance Premium - Hazard : | Borrower | Lender | $ 614.00 |
| Title Examination : | Borrower | Provider | $ 150.00 |
| Title Insurance : | Borrower | Provider | $ 719.02 |
| Tax Status Research Fee : | Borrower | Provider | $ 15.00 |
| Doc Tax Stamps/Transfer Taxes - State : | Borrower | Provider | $ 478.50 |
| Recording Fees-Mortgage/Deed of Trust : | Borrower | Provider | $ 70.00 |
| Filing Fee : | Borrower | Provider | $ 50.00 |
| **Total Fees:** | | | **$ 2,271.06** |

| Higher-Priced (FED) Review | Result: PASS |
| --- | --- |

| Higher-Rate Review | Result: PASS |
| --- | --- |

| HOEPA Review | Result: PASS |
| --- | --- |

| State Rules Review | Result: FAIL |
| --- | --- |

Message:The System could not complete its State Rules Review because of an issue with the Licensing Reviewer (LIC).

Review Status:    FAIL
Rule:    Mavent Message(10000009)

*Exhibit 900*

## License Review - Lender      Result: FAIL

Message: A Georgia Residential Mortgage Act license or registration is needed to make or broker loans on and after July 1, 2009 secured by a 1-4 unit primary dwelling. (Ga. Code 7-1-1000(17), (20), (21); 7-1-1001(a)(2.1)) A Georgia Residential Mortgage Act license or registration is needed to make or broker loans before July 1, 2009 secured by a 1-4 unit dwelling. (Ga. Code 7-1-1000(9), (12), (13); 7-1-1001(2.1))

|  |  |
|---|---|
| Review Status: | FAIL |
| License Review: | License Review - Lender ( LIC ) |

## License Review - Broker      Result: FAIL

Message:A Georgia Residential Mortgage Act license or registration is needed to make or broker loans on and after July 1, 2009 secured by a 1-4 unit primary dwelling. (Ga. Code 7-1-1000(17), (20), (21); 7-1-1001(a)(2.1)) A Georgia Residential Mortgage Act license or registration is needed to make or broker loans before July 1, 2009 secured by a 1-4 unit dwelling. (Ga. Code 7-1-1000(9), (12), (13); 7-1-1001(2.1))

|  |  |
|---|---|
| Review Status: | FAIL |
| License Review: | Lender is FNB/FSB or > 4 Units or Non-Primary |

## Geocode Data      Result: PASS

| | | | |
|---|---|---|---|
| Address 1: | 2197 Carlysle Creek Dr | Latitude: | 33.951946 |
| Address 2: | | Longitude: | -84.075204 |
| City: | Lawrenceville | CBSA Number: | 12060 |
| County: | Gwinnett County | CBSA Division: | |
| State: | GA | Census Tract: | 0505.34 |
| Zip Code: | 30044-2274 | Match Code: | S88 |
| State FIPS: | 13 | Location Quality Code: | AS0 |
| County FIPS: | 135 | Score: | 1.0925000 |

## Making Home Affordable Enterprise Rules Review      Result: PASS

## LO Compensation (TILA) Review      Result: PASS

## Service Info      Result: WARNING

| | |
|---|---|
| Mavent Transaction ID: | 01460317090001350490518164882012032721500560 |
| Service Code: | DI-ComplianceReview-MHA |
| Received: | 2012-03-27  21: 50: 05: 460 |
| Returned: | 2012-03-27  21: 47: 37: 535 |

| Service | Status |
|---|---|
| ARM Mapper | PASS |
| Geocode | PASS |
| SDS Prepayment Penalty Plan | PASS |
| Index Review | PASS |
| Perform Mortgage Calculations | WARNING |

Message: The (20060707) Application Date provided in this loan file occurs on the same day as the (20060707) Consummation Date.      WARNING

©2001 - 2012 Mavent Inc.

*Page 5 of 5*

FROM :                         FAX NO. :                    Jul. 01 2005 03:11AM P2

# Exhibit 1000

**Verification of Compliance Audit Findings**

**By Walter Fordham, Certified Mavent Compliance Auditor**

For: Hussain Kareem, Mortgagor
2197 Carlysle Creek Drive
Lawrenceville, GA 30044

### General Mortgage Loan Information:

Loan number: 0001350490                    Date of Origination Closing: 07/06/2006
Loan Type: 12-Month Treasury Adjustable Rate Mortgage        Amortization Period: 30 years
Loan Transaction Type: Refinance

### Nationwide and State License Certifications Check:

Lender/Mortgagee: American Home Mortgage Corp., d/b/a American Brokers Conduit, Melville, NY
GA Banking & Finance License No: 14560        Status: Withdrawn As of 9/05/2007
Originator or Broker: Global Mortgage Delaware, Inc., Clearwater, FL
GA Banking & Finance License No: 19642        Status: Revoked As of 2/7/2007
Comments: See Published Reasons for Revocation Under Georgia's Banking Codes Violation Report (Addendum)

### Verification Pursuant to 28 U.S.C. §1746 (2)

I, Walter Fordham, the undersigned, swear that I am older than 18 years if age, competent, law abiding, and I am in good standings. I verify under the penalty of perjury that the foregoing is true and correct under the applicable federal code 28 U.S.C. §1746(2), as follows:

1. I am a certified operator who reviewed the underlying documents which were known to matched to the transaction described above encompassing the refinance and subject property inclusive of the following: H.U.D. Settlement Statement, the Adjustable Rate Mortgage Note, the TILA Disclosure Statement, the 5- Year Fixed Payment 12 Month MTA Index Power ARM Disclosure and the Loan Application.

2. The documents were sufficient for the Mavent System to conduct an independent assessment for lender compliance. The scope of the determination utilizes applicable federal and state regulatory standards, applicable statutes and licensing requirements.

3. The Mavent System and its reports have achieved one of the highest rating credentials and its service is known as a leader in the mortgage industry for compliance audits. Fannie Mae, major top ten banks and other governmental agencies have found Mavent to comply with their

FROM :                              FAX NO. :                    Jul. 01 2005 03:10AM  P1

*Exhibit 1000*

requirements on lending audits. The system and its software tools speaks for themselves (see Attached Press releases).

4.  My company is No Predatory Lending with a Customer No. 0148031709. We performed the audit on March 27, 2012.

5.  Overall, the Lender and the Broker/originator failed the compliance audit test when the data was applied from the underlying documents contained in section 1 above. I am very accustomed to running these tests for I have done these types of audits for more than 5 years.

6.  Specific areas of failure came from, TILA requirements, State Rules requirements, and License requirements. There were other warnings posted from the test.

7.  In my opinion, the underlying loan was determined by Mavent System to be a predatory loan. Accordingly it failed to past the thresholds required for lending practice standards, required disclosures and direct applicable laws cited by the compliance audit.

8.  The results are contained in the reported contemporaneously attached to this verification containing our name, Customer Number, the mortgagor information, loan number and subject property address as stated above.

9.  This verification was made to reflect the facts that the Mavent System findings were based on data derived from the documents, that enough data was sufficient to commence the test and the results reflects the findings relevant to the transaction, the applicable disclosures and applicable laws, statutes and regulations for both federal and the State of Georgia.

10.  Some aspects of the Mavent test were not requested; therefore, the report reflects these factors in its findings, as "Not Requested".

I, Walter Fordham, the undersigned, verify the above statements are true, correct and made with personal knowledge to the best of my beliefs.

Executed to Support the Report Made on March 27, 2012

*[signature]*

Walter Fordham, Licensed Operator
2 Ravina Drive, Suite 500
Atlanta,GA 30346
(Direct) 404-671-9555 ext. 812
walter@nopredatorylending.com

Attachments:
Loan MOD Forensics Report Containing Mavent Findings
Press Release: Titan Lenders Corp. Deploys Mavent Compliance Console (MC2)
Revocation Under Georgia's Banking Code Violations Report

Exhibit 1100



**Media Contact:**  Kerri Milam
Titan Lenders Corp
404.378.0850
kerri@depthpr.com

## Titan Lenders Corp. Deploys Mavent Compliance Console (MC2).
*Partnership Enables Comprehensive, Low Cost Mortgage Loan Compliance Review*

**(July 24. 2007) IRVINE, Calif.** -- Mavent Inc., a provider of automated regulatory compliance solutions to the mortgage industry's largest originators and investors, announced today a partnership with Denver-based Titan Lenders Corp., a closing, post closing and mortgage fulfillment outsource services provider.

Enabled by its Cerberyx web-based technology platform, Titan Lenders Corp. can submit its client loan data for quality control and due diligence to the Mavent Compliance Console (MC2) for review with:

* Truth in Lending Act (TILA) calculations, tolerances and right of rescission analysis
* Home Ownership Equality Protection Act (HOEPA)
* State and local high cost thresholds
* State consumer credit laws (beyond high cost)
* Lender and broker licensing
* The approved Fannie Mae points and fees test

MC2 is the front-end, Web-based interface to the Mavent Expert System, a comprehensive automated system that submits loan data for reviews against nearly 300 legislative acts, roughly 200 license types, and the rules and regulations of over 60 regulatory authorities.

"Minimizing compliance risk is a fact of life for lenders and investors alike; requiring in-house expertise and resources is often times impractical for most small to mid-sized lenders," said Mary Kladde, founder and CEO of Titan Lenders Corp. "By utilizing Mavent's MC2 portal, Titan Lenders Corp. gives its clients access to the same sophisticated tool used by the industry's largest institutions, at the same low cost per review."

"Titan's veteran management is committed to providing its clients unsurpassed quality, improved efficiency and cost-reducing services," said Louis Pizante, CEO of Mavent. "Titan's relationship with Mavent is a noteworthy example of this commitment. Our partnership will enable Titan's clients to focus on growing their business while remaining confident that they are originating and purchasing compliant loans, in a manner that is cost effective."

Exhibit 1100

**About Mavent Inc.**

Mavent Inc. is a leading provider of automated regulatory compliance solutions to the mortgage industry's largest originators and investors, as well as medium and small-size institutions. The company is the developer of the patent-pending Mavent Expert System, a comprehensive automated solution that submits loan data for reviews against nearly 300 legislative acts, roughly 200 license types, and the rules and regulations of over 60 regulatory authorities. The Mavent system can be accessed through the front end, Web-based Mavent Compliance Console (MC2) or fully integrated through an organization's loan origination system (LOS). Mavent's legal reviews are jointly developed and supported by Mavent's in-house Legal Team and its network of nationally recognized consumer credit law firms - which includes Hudson Cook, Buckley Kolar and Pierce Atwood.

Mavent's clients include some of the most prominent institutions in the industry, including Fannie Mae, Citimortgage, National City Mortgage Corp., First Franklin (a subsidiary of Merrill Lynch Bank & Trust Co., FSB.), GreenPoint Mortgage (a subsidiary of Capital One Financial Corp.), Credit Suisse, Ocwen Financial Corp., AmTrust Bank and HomeLoanCenter (a division of LendingTree). For more information on Mavent, visit the company Web site at www.mavent.com.

**About Titan Lenders Corp.**

Founded in 2007 by acknowledged industry expert Mary Kladde, Titan Lenders Corp. **is a** Denver, Colorado provider of **mortgage back office** outsource services. Titan was created to meet the mortgage industry's increasing demand for a variable cost solution to managing closing, post closing and **mortgage fulfillment** processes without maintaining personnel or an investment in technology infrastructure. Titan enables mortgage bankers, brokers and investors to decrease risk, increase closing capacity, reduce errors and protect loan profitability by outsourcing process-intensive back office functions while focusing on productive origination strategies. Focused on delivering business process improvement to mortgage lenders through its time-tested and proven back office methodologies, Titan Lenders Corp. emphasizes attentive customer service and the use of its powerful technology to accommodate its customers' unique mortgage lending business objectives.

Titan Lenders Corp. intelligent processes are driven by its proprietary technology, Cerberyx, co-developed with eSys Technologies, Rochester, NY (www.esystechnologies.com). Cerberyx is the evolution of a software technology application developed to replace manual processes required to manage the lender's participation in closing and post-closing functions. As a business solution, the software was developed in the practical laboratory of a closing and post-closing division servicing multiple lenders, investors, and lending business channels. It addresses the needs of all users in the transaction - accountability, visibility, efficiency and ease of use - while never losing sight of the end goal: loan salability.

For more information about Titan Lenders Corp., mortgage fulfillment and outsourced back-office mortgage operations, contact Mary Kladde at mary.kladde@titanlenderscorp.com.

*Exhibit  1200*



# Department of Banking and Finance

*2990 Brandywine Road, Suite 200*
*Atlanta, Georgia 30341-5565*
770-986-1633
*www.gadbf.org*

*Sonny Perdue*
*Governor*

*David G. Sorrell*
*Commissioner*

**January 5, 2004**

**Via U.S. Certified Return Receipt #7002 3150 0003 8020 5882**
**and Facsimile 770-988-8300**

Mr. Londzell Hardy
Officers, Directors and Employees
"First Liberty Savings and Credit Union"
1950 Spectrum Circle
Suite 400-3009
Marietta, Georgia 30067

**RE:    Order to Cease and Desist**

Dear Mr. Hardy, Officers, Directors and Employees:

Since we did not hear from you by Monday, January 5, 2004, we are enclosing the Order to Cease and Desist (Order) as referenced in our letters of December 19 and December 29, 2003. The Order is effective January 5, 2004.

Sincerely,

Grace M. Lurry, CFE, CEM
Deputy Commissioner for Supervision
Phone:  (770) 986-1646
Fax:     (770) 986-1654

mj

Enclosure

cc:    National Credit Union Administration
       Credit Union National Association
       Georgia Credit Union Affiliates
       Federal Deposit Insurance Corporation
       Federal Reserve Board
       Georgia Secretary of State
       Georgia Office of Attorney General
       Mr. Bo Fears

*Cover Page*

*Exhibit 1200*

# FINANCIAL INSTITUTION ORDER TO CEASE AND DESIST

The Department of Banking and Finance of the State of Georgia ("Department") has the authority pursuant to O.C.G.A. Section 7-1-91(d) and O.C.G.A. Section 7-1-5 to issue a Cease and Desist Order to any financial institution which has violated any law of this state or any order or regulation of the Department, to any financial institution which is conducting business in an unsafe or unauthorized manner, or to any person or corporation conducting business as a financial institution without authority under Chapter 1 of Title 7 of the Official Code of Georgia. On December 19 and December 29, 2003, this Department sent a letter to Mr. Londzell Hardy, Officers, Directors and Employees, "First Liberty Savings and Credit Union" ("First Liberty"), informing First Liberty of these concerns and requesting immediate action.

First Liberty is in violation of Georgia Statute and conducting a business in an unauthorized manner as follows:

First Liberty is a company that, according to documentation obtained by the Georgia Department of Banking and Finance, is providing financial services from at least one address in Georgia – 1950 Spectrum Circle, Suite 400-3009, Marietta, Georgia 30067761. This documentation indicates that First Liberty may be conducting a banking or credit union business in Georgia without authority, which is in violation of O.C.G.A. Section 7-1-241.

- First Liberty, by use of the words "Credit Union," purports to be either a state chartered credit union, a federally chartered credit union, or a credit union chartered by a foreign country. The Department has found no evidence that First Liberty is either state or federally chartered. If First Liberty is a credit union chartered and located in a foreign country this credit union has not been authorized pursuant to O.C.G.A. Section 7-1-713 to conduct business in Georgia as an international agency or representative office.

- First Liberty is not authorized pursuant to O.C.G.A. Section 7-1-242 to act lawfully as a corporate fiduciary in the State of Georgia or authorized to conduct a banking business in this state. First Liberty does not meet one of the corporate fiduciary exceptions contained under O.C.G.A. Section 7-1-242. 

Therefore the Georgia Department of Banking and Finance, pursuant to O.C.G.A. Section 7-1-91 and 7-1-5, **does hereby Order First Liberty Savings & Credit Union, its successors and assigns and the officers, employees and directors thereof, to Cease and Desist violations of Georgia Law and the conduct of business in an unsafe or unauthorized manner and to take the following actions:**

1) First Liberty shall immediately cease indicating in any internet website, marketing materials, signage, correspondence, or legal documentation

that could reach Georgia consumers that it is a credit union, and that it is authorized to do business in Georgia.

2) First Liberty shall cease using the name "Credit Union", "Bank", "Banking Company", "Banker", "Banking House" or any similar terminology in the above materials, in reference to activities conducted in the State of Georgia.

3) First Liberty shall not conduct a banking business unless it demonstrates that it is authorized to conduct a banking business in accordance with the provisions of federal or state law. O.C.G.A. Section 7-1-241 specifies that only a state chartered bank, a national bank, a federally chartered thrift, credit union or other agency otherwise authorized by Georgia Law may do a banking business in this state.

4) First Liberty shall not provide financial products or services to the citizens of this State by any delivery system, to include the internet, or other electronic access to financial products or services or alternative methods of delivery which differ from geographically based banking without the authorization of the Georgia Department of Banking and Finance, pursuant to O.C.G.A. Section 7-1-241(c).

5) If First Liberty is a credit union chartered or licensed in a foreign country, this foreign corporation shall not transact a banking business or maintain an office in this State for carrying on such business or any part thereof without the authorization of this activity by the Department in accordance with Section 7-1-713 of the Code of Georgia.

6) **Representatives of First Liberty shall respond to the Department by January 12, 2004, indicating the actions taken regarding compliance with the provisions of this Order. The Department may take further legal action through the State Attorney General as authorized by law.**

The above provisions are effective on the date of issuance of this Order.

## MORTGAGE ORDER TO CEASE AND DESIST

Pursuant to Section 7-1-1018 of the Georgia Residential Mortgage Act, the Georgia Department of Banking and Finance hereby orders First Liberty Savings & Credit Union to cease and desist from engaging in mortgage brokerage activities without a valid license or pursuant to an applicable exemption in violation of O.C.G.A. Section 7-1-1002.

*Exhibit J200*

This part of the Order shall be final thirty days from the date of issuance, per O.C.G.A. Section 7-1-1018. However, if First Liberty Savings & Credit Union provides the Department with evidence of a valid license or applicable exemption within this thirty-day period, the Department may rescind this mortgage part of the Order. Should you have any questions concerning mortgage activities, please contact Carol J. Grafman, Assistant Attorney, at (770) 986-1648.

_____January 5, 2004_____
Date

David G. Sorrell, Commissioner
State of Georgia Department of Banking and Finance

Pull To Open

USPS packaging products have been awarded Cradle to Cradle Certification™ for their ecologically-intelligent design. For more information go to mbdc.com/usps

Cradle to Cradle Certified™ is a certification mark of MBDC.

## UNITED STATES POSTAL SERVICE

# PRIORITY MAIL®

**PLEASE PRESS FIRMLY**

Schedule package pickup right from your home or office at usps.com/pickup

Print postage online - Go to usps.com/postageonline

**PLEASE PRESS FIRMLY**

Any amount of mailable material may be enclosed, as long as the envelope is not modified, and the contents are entirely confined within the envelope with the adhesive provided as the means of closure.

**INTERNATIONAL RESTRICTIONS APPLY:**

**4-POUND WEIGHT LIMIT ON INTERNATIONAL APPLIES**

Customs forms are required. Consult the International Mail Manual (IMM) at pe.usps.gov or ask a retail associate for details.

## Flat Rate
## Mailing Envelope

**For Domesti**

Visit us at us

From/Expedite:

From:
2187 Eastside circle Dr
Lawrenceville
GA
300 4...

# Exhibit 1300

## USPS® PRIORITY MAIL®

SHIP TO:

U.S. Bankruptcy Court
Clerk of the Court
3rd Floor
824 N MARKET ST
**WILMINGTON DE 19801-3024**

0006

ZIP

420 19801 9502 6000 2583 2086 0002 33

**USPS CERTIFIED MAIL**

U.S. POSTAGE
PM FR ENV
30096
Date of sale
03/26/12
1P00
02:
0686797B
APC
PH0068400 105 198
$8.10

Final Response

Stamped
Post marked



PRIORITY MAIL
POSTAGE REQUIRED.

# USPS.COM

| English | Customer Service | USPS Mobile | | Register / Sign |



Exhibit
130 B

## Quick Tools | Ship a Package | Send Mail | Manage Your Mail | Shop | Business Solution

Search USPS.com or Track Package

# Track & Confirm

GET EMAIL UPDATES

PRINT DETAILS

**YOUR LABEL NUMBER**

9505260002583208600233

www.usps.com/redelivery or calling 800-ASK-USPS, or may pick up the item at the Post Office indicated on the notice. If this item is unclaimed after 15 days then it will be returned to the sender. Information, if available, is updated periodically throughout the day. Please check again later.">

| SERVICE |
|---|
| Priority Mail® |

| STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|
| Notice Left | April 02, 2012, 8:49 am | WILMINGTON, DE 19801 | **Expected Delivery** March 28, 2012 Certified Mail™ |
| Arrival at Unit | April 02, 2012, 6:31 am | WILMINGTON, DE 19801 | |
| Processed through USPS Sort Facility | April 01, 2012, 12:45 am | PHILADELPHIA, PA 19116 | |
| Processed at USPS Origin Sort Facility | March 30, 2012, 8:09 pm | ATLANTA, GA 30320 | |
| Acceptance | March 26, 2012, 5:15 pm | DULUTH, GA 30096 | |

## Check on Another Item

What's your label (or receipt) number?



Find

4/11/2012 2:17 PM

**LEGAL**
Privacy Policy ›
Terms of Use ›
FOIA ›
No FEAR Act EEO Data ›

**ON USPS.COM**
Government Services ›
Buy Stamps & Shop ›
Print a Label with Postage ›
Customer Service ›
Site Index ›

**ON ABOUT.USPS.COM**
About USPS Home ›
Newsroom ›
Mail Service Updates ›
Forms & Publications ›
Careers ›

**OTHER USPS SITES**
Business Customer Gateway ›
Postal Inspectors ›
Inspector General ›
Postal Explorer ›

Copyright© 2012 USPS. All Rights Reserved.

**_Exhibit 14_ oo**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------- x   Chapter 11
In re:                                             :
                                                   :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE HOLDINGS, INC.,             :
a Delaware corporation, et al.,[1]                 :   Jointly Administered
                                                   :   Ref/ Docket No. 10184, 10183 & 10182
                          Debtors.                 :
                                                   :
-------------------------------------------------- x
```

## MOTION IN LIMINE CERTAIN DOCUMENTS BY DEFENDANTS

Comes now, Hussain Kareem, the Title Holder/Owner/Mortgagor, herein referred to as

Claimant, moves this court to strike, declare inadmissible, irrelevant for purposes of the

highest and best use of documents relevant to the subject-matter at bar. By virtue of the

plethora of questionable documents entered by the Defendants, the Rules of Evidence

requires a determination to done when raised by a Judicial Notice. Thus, moves the court

as enumerated:

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

1.  Many documents entered or attempted by Defendants in their Objections to Claims relate to court proceedings in the U.S. Fifth Circuit Court of Appeals, Case no. 11-10701 related to rulings and activities not directly related to AHMH Breach of Contract to the Mortgagor of loan number 001350490.

2.  The rulings in the cause of Action in U.S. District are not the outcome effecting AHMH. These many issues were inapposite to the parties of interests in the contract or loan made on July 7, 2006. AHMSI, for example was not in existence as a legal entity  at such time that the transaction occurred.

3.  As Appellant in the above stated appeals case, there is a high likelihood of success to overcome many of the evidentiary and procedural errors made in the course of litigation.

4.  All non original documents are for the most part for the conversation purposes only. Debtors are requested to explain and account for where the genuine originals are being held and  made available for authentication of signatures.

5.   Claimant request the court to declare the relevant use of  as materials before any determination can be cast, in truth on the facts in this case, including the Original Promissory Note, the Adjustable Rate Note, First Five Year Fixed Payment-12 MTA and Security Deed.  Thus, many of the documents are irrelevant or inadmissible.

6.  Claimant finds many unauthenticated documents, no proof of delivery, unsigned documents with an attempt to have an Affidavit like the one by Jose Colon and employee of AHMSI to be used in this proceeding without a personal appearance to testify.

7. Accounting records show no independent audit or testimony from AHMH's employees. It is believed that during the securitization process, the Master Servicer was Wells Fargo. It would stand to reason that records must be reconciled from the Master Servicer. Therefore, Claimant only present his cause to haved authenticated the documents presented . Anything less, without a testimony is a plain error and inappropriate.

8. Entry of documents by the counsel is only an attempt to confuse the court or a jury and must be stricken for failing to meet admissible standards or the ability to cross examine or to be depose properly.

9. Counsel makes many statements in which may persuade the court as though there is personal knowledge to the facts and intent of the Plaintiff. These statements must be deemed hearsay or admitted only if Counsel(s) have been sworn into the record. As counsel for Defendants, have indicated that they seek to be the only expert witnesses for the Defendants. As a rule, attorneys representing their clients in court are *not permitted to testify as to facts about which they have no personal, first-hand knowledge* ... and, if they do so, they should be disqualified as counsel for their client and placed under oath (Emphasis).

10. Plaintiff seeks to have counsel cross-examined or deposed under deposition or subpoena, for purposes of impeachment. Plaintiff wants to remove all immunities on any issues of perjury made by counsel.

## **RELIEF SOUGHT**

11. Plaintiff moves the court to grant his Motion In Liminie as a matter of law, under the Federal Rules of Evidence. For reasons cited above incorporated in paragraphs 1 through 10.

12. Motion is Limine is supported by the fact that **Claimant had Requested for Discovery prior to the Evidentiary Hearing With Brief in Support** , filed in the court record.

13. Claimant notices that the court order denying discovery and request reconsideration in order to fulfill requests made in this motion.

14. Plaintiff seeks evidentiary hearing on all matters related only to support this cause of action at bar before this court.

15. That if this court disagrees with the Plaintiffs right for the hearing, then Plaintiff requests this court by Rule 52 (a)(1) for the fact findings or conclusions for the denial of the motion submitted by the Plaintiff.

Signed on this day 18th of November, 2011.

Hussain Kareem, A.R.R.
2197 Carlysle Creek Drive
Lawrenceville, GA 30044
Phone: 678-887-4965

## Certificate of Service

**I ,the undersigned, certify that I have served the parties in open court or by mail in the cause of action entitled Motion In Limine by First Class, registered or certified mail to the following:**

Counsel for Debtors:
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Sean M. BEACH
Patrick A. Jackson
1000 West St., 17th Floor
P.O. Box 391
Wilmington, DE 19801
Tel: (302) 571-6600
Counsel for the Plan Trustee:
**HAHN & HAESSEN LLP**
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, N.Y. 10022
Tel: (212) 478-7200
**The Plan Trustee:**
Steven D. Stass
AHM Liquidating Trust
P.O. Box 10550
Melville, NY 11747

Mathis K. Wright, President
NAACP CHAPTER #5160
P.O. BOX 1296
AMERICUS, GA 31709

EXECUTED THIS DAY ON
NOVEMBER 18, 2011

/S/

Hussain Kareem, Pro Se
2197 Carlysle Creek Drive
Lawrenceville, GA 30044
678-887-4965: Phone Line

# RESPA SERVICING DISCLOSURE

Exhibit D

Lender: American Brokers Conduit
225 Town Park Drive, Suite 450
Kennesaw, GA 30144

**NOTICE TO FIRST LIEN MORTGAGE LOAN APPLICANTS: THE RIGHT TO COLLECT YOUR MORTGAGE LOAN PAYMENTS MAY BE TRANSFERRED. FEDERAL LAW GIVES YOU CERTAIN RELATED RIGHTS. IF YOUR LOAN IS MADE, SAVE THIS STATEMENT WITH YOUR LOAN DOCUMENTS. SIGN THE ACKNOWLEDGMENT AT THE END OF THIS STATEMENT ONLY IF YOU UNDERSTAND ITS CONTENTS.**

Because you are applying for a mortgage loan covered by the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2601 et seq.) you have certain rights under that Federal law.

This statement tells you about those rights. It also tells you what the chances are that the servicing for this loan may be transferred to a different loan servicer. ``Servicing'' refers to collecting your principal, interest and escrow account payments, if any. If your loan servicer changes, there are certain procedures that must be followed. This statement generally explains those procedures.

**Transfer Practices and Requirements**

If the servicing of your loan is assigned, sold, or transferred to a new servicer, you must be given written notice of that transfer. The present loan servicer must send you notice in writing of the assignment, sale or transfer of the servicing not less than 15 days before the effective date of the transfer. The new loan servicer must also send you notice within 15 days after the effective date of the transfer. The present servicer and the new servicer may combine this information in one notice, so long as the notice is sent to you 15 days before the effective date of transfer. The 15 day period is not applicable if a notice of prospective transfer is provided to you at settlement. The law allows a delay in the time (not more than 30 days after a transfer) for servicers to notify you, upon the occurrence of certain business emergencies.

Notices must contain certain information. They must contain the effective date of the transfer of the servicing of your loan to the new servicer, and the name, address, and toll-free or collect call telephone number of the new servicer, and toll-free or collect call telephone numbers of a person or department for both your present servicer and your new servicer to answer your questions. During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

**Complaint Resolution**

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights, *whether or not your loan servicing is transferred.* If you send a ``qualified written request'' to your servicer, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A ``qualified written request'' is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and the information regarding your request. Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, or must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request.

A Business Day is any day in which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

**Damages and Costs**

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section.

**Servicing Transfer Estimates**

1. The following is the best estimate of what will happen to the servicing of your mortgage loan:

[X] We may assign, sell or transfer the servicing of your loan while the loan is outstanding. We [X] able to service your loan and we [ ] will [ ] will not [X] haven't decided whether to service your loan.

OR

[ ] We do not service mortgage loans, [ ] and we have not serviced mortgage loans in the past three years. We [ ] presently intend to assign, sell or transfer the servicing of your mortgage loan. You will be informed about your servicer.

[ ] We assign, sell or transfer the servicing of some of our loans while the loan is outstanding depending on the type of loan and other factors. For the program you have applied for, we expect to:

[ ] sell all of the mortgage servicing [ ] retain all of the mortgage servicing
[ ] assign, sell or transfer _____ % of the mortgage servicing

2. For all the first lien mortgage loans that we make in the 12-month period after your mortgage loan is funded, we estimate that the percentage of mortgage loans for which we will transfer servicing is:

_____ [0 to 25%] or [NONE]    _____ 26 to 50%    __X__ 51 to 75%    _____ [76 to 100%] or [ALL]

This estimate [ ] does [X] does not include assignments, sales or transfers to affiliates or subsidiaries. This is only our best estimate and it is not binding. Business conditions or other circumstances may affect our future transferring decisions.

3. [ ] We have previously assigned, sold, or transferred the servicing of federally related mortgage loans.

OR

[X] This is our record of transferring the servicing of the first lien mortgage loans we have made in the past:

| Year | Percentage of Loans Transferred | (Rounded to nearest quartile - 0%, 25%, 50%, 75%, or 100%) |
|------|---------------------------------|------------------------------------------------------------|
| 2003 | 75%-100% % | |
| 2004 | 50%-75% % | |
| 2005 | 50%-75% % | |

This information [ ] does [X] does not include assignments, sales or transfers to affiliates or subsidiaries.

June 28, 2006                                    American Brokers Conduit
Date                                             Present Servicer or Lender

**ACKNOWLEDGMENT OF MORTGAGE LOAN APPLICANT**

I/We have read this disclosure form, and understand its contents, as evidenced by my/our signature(s) below. I/We understand that this acknowledgment is a required part of the mortgage loan application.

_Hussain Ka_____ 7/07/06

Applicant    Hussain Kareem                    Date          Applicant                      Date

Applicant                                       Date          Applicant                      Date

U011 9501.03

∧~-532R (9908)    DOC #:54301    APPL #:0001350490    VMP MORTGAGE FORMS - (800)521-7291    12/94

*Handwritten annotations in right margin:* Failure To Disclose