**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------x  Chapter 11

In re:

                               :  Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE       :
HOLDINGS, INC., a Delaware corporation, et al.,  :  Jointly Administered

                          :
      Debtors.[1]                    :  **Hearing Date: September 18, 2012 at 10:00 a.m. (ET)**
                          :  **Objection Deadline: September 11, 2012 at 4:00 p.m. (ET)**
                          :

------------------------------------------------------------x

**PLAN TRUST'S MOTION FOR AN ORDER ESTIMATING THE**
**CLAIMS OF CIFG ASSURANCE NORTH AMERICA, INC. FOR PURPOSES**
**OF ALLOWANCE AND DISTRIBUTION UNDER THE PLAN**

Steven D. Sass, as liquidating trustee (the " Plan Trustee") for the Plan Trust

established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of*

*February 18, 2009* (the "Plan") in connection with the chapter 11 cases of the above-captioned

debtors (the "Debtors"), moves (the "Motion") this Court for entry of an order, pursuant to

section 502(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

Code"), estimating the claims numbered 8706, 8708, 9963, and 10926 (the "Claims")[2] filed by

CIFG Assurance North America, Inc. ("CIFG") for purposes of allowance and distribution under

the Plan.  In support of this Motion, the Plan Trustee relies upon the Declaration of Simon

Sakamoto attached hereto as **Exhibit B** (the "Sakamoto Declaration").  In further support of this

Motion, the Plan Trustee respectfully represents as follows:

---

[1]  The Debtors in these cases, are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp. ("AHM Investment"); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"); AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc.; American Home Mortgage Corp. ("AHM Corp."); American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

[2]  Copies of the Claims are attached hereto as **Exhibits C-F**, respectively.  Claim 10926 amended a previously filed claim numbered 8707, which was disallowed as amended and superseded but is included in Exhibit F for reference purposes.

**JURISDICTION; VENUE**

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334 and the *Amended Standing Order of Reference* from the United States District Court

for the District of Delaware dated as of February 29, 2012.  Venue of this case and this Motion in

this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article

III of the United States Constitution.  The statutory predicates for the relief requested herein are

§§ 105(a) and 502(b) and (c) of the Bankruptcy Code and Rule 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

**BACKGROUND**

A.      **General Background**

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court

a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors had ceased

all or substantially all business operations other than their mortgage loan servicing business (the

"Servicing Business") prior to the Petition Date.  Between the Petition Date and the Plan

Effective Date (as defined below), each Debtor managed its properties as a debtor in possession

pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases have been

consolidated for procedural purposes only and are being jointly administered pursuant to an

order of this Court.

3.      The Plan was confirmed under § 1129 of the Bankruptcy Code on February 23,

2009.  The Plan became effective on November 30, 2010 (the "Plan Effective Date").

4.      Pursuant to the Plan, as of the Plan Effective Date, a plan trust (the "Plan Trust")

was established and all of the Debtors' assets, causes of action, claims, rights, and interests

vested in the Plan Trust.  Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust.

The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan,

Confirmation Order, and Plan Trust Agreement.  The Plan contemplates that the Plan Trust will

continue to exist only until November 30, 2015, unless extended by order of this Court.

5.      Pursuant to the Plan, January 5, 2011, was established as the deadline to assert

administrative expense claims against the Debtors' estates (the "Administrative Bar Date").

CIFG did not file a request for payment of an administrative expense.

**B.      Relevant Background**

6.      CIFG is a monoline insurance company that provides insurance coverage related

to the Class V-A Securities (as defined in the Claims) issued by American Home Mortgage

Investment Trust 2006-2 (the "Securitization Trust") in connection with the AHMIT 2006-2

Transaction (as defined in the Claims).  The Class V-A Securities are backed by certain home

equity lines of credit (the "HELOCs") originated by Debtor American Home Mortgage

Acceptance Inc. ("AHM Acceptance").  The HELOCs underlying the Class V-A Securities do

not finally mature until April 30, 2031.

7.      Monoline insurers provide guarantees to bond issuers, often in the form of credit

wraps, that enhance the credit rating of the issuer.  In the context of residential mortgage-backed

securities ("RMBS"), monoline insurers assume the risk of borrower default, leaving

bondholders only with the residual risk of the insurer's default.  This reduces the risk premium

on the RMBS, reducing the return that must be paid to investors in order to entice them to

purchase the RMBS.  It also makes the RMBS easier to market because investors are given an

additional level of protection from losses arising from borrower default.  In exchange for its

assumption of the risk of borrower default, the insurer receives a monthly premium from the

01:12379683.2

issuer (i.e., the securitization trust), which is payable from the cash flows on the underlying

mortgages via the distribution waterfall provisions in the securitization documents. These

waterfall provisions typically provide for excess cash flows on the underlying mortgages to be

paid to the insurer to the extent of any payments made by the insurer in previous periods.

       8.     As insurer of the AHMIT 2006-2 Transaction, CIFG has common law and

contractual rights of subrogation to any claims of the Trust against the Debtors relating to that

transaction. However, Deutsche Bank National Trust Company, the Trustee of the Securitization

Trust (in such capacity, the "Securitization Trustee"), settled all such claims of the Securitization

Trust against the Debtors pursuant to two Court-approved settlement stipulations [D.I. 8842 &

10276] with the Debtors and the Plan Trust, respectively.[3]

## RELIEF REQUESTED

       9.     Pursuant to section 502(c) of the Bankruptcy Code, the Plan Trustee hereby seeks

the entry of an order, in the form attached hereto as **Exhibit A** establishing the priority and

estimating the maximum amount of each of the Claims for purposes of allowance and

distribution under the Plan as set forth in the following table:

| Claim # | Priority | Debtor | Allowed Amount |
|---------|----------|--------|----------------|
| 8706 | General Unsecured | AHM Investment | $0.00 |
| 8708 | General Unsecured | AHM Acceptance | $0.00 |
| 9963 | General Unsecured | AHM Acceptance | $0.00 |
| 10926 | General Unsecured | AHM Corp. | $4,089,546 |

---

[3] For ease of reference, copies of these stipulations are attached hereto as **Exhibits G** and **H**, respectively.

## BASIS FOR RELIEF REQUESTED

10. Section 502(c) of the Bankruptcy Code provides in pertinent part that:

> There shall be estimated for purpose of allowance under this section . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.

11 U.S.C. § 502(c)(1).

11. Neither the Bankruptcy Code nor the Bankruptcy Rules provide procedures or guidelines for the estimation of claims. However, the Third Circuit has held that Congress intended bankruptcy courts to use "whatever method is best suited to the particular contingencies at issue," giving primary consideration to "the underlying purposes of the [Bankruptcy] Code." Bittner v. Borne Chemical Co., 691 F.2d 134, 135 (3d Cir. 1982).

12. Estimation of a claim is not a binding legal determination as to the ultimate validity of the amount of a claim, nor a binding determination of a cause of action before a non-bankruptcy court. In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 774 (Bank. S.D.N.Y. 1996). It does, however, "conclusively set[] the outer limits of a claimant's right to recover" from the estate. In re Baldwin-United Corp., 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985). The estimation of a claim is a court's best estimate for the purpose of permitting the administration of the case to go forward and not cause undue delay. See, e.g., In re Chateaugay Corp., 10 F.3d 944, 957 (2d Cir. 1993).

13. Estimation of the Claims is necessary to prevent undue delay to the administration of the chapter 11 cases. Given the life span of the AHMIT 2006-2 Transaction, it will not be possible, strictly speaking, to liquidate the Claims in due course within the Plan Trust's contemplated lifetime. Thus, unless the Claims are estimated as requested, the fixing or liquidation of those Claims would unduly delay the distributions contemplated by the Plan. The basis for the proposed estimation of each of the Claims is set forth below.

*Claim #8706 ($0.00)*

14.    Claim #8706 asserts contingent, unliquidated claims against AHM Investment

"for indemnification and/or reimbursement" under a certain Indemnification Agreement dated as

of June 30, 2006, by and among CIFG, AHM Investment, UBS Securities LLC, Goldman, Sachs

& Co., Lehman Brothers Inc., and Greenwich Capital Markets, Inc. (the "Indemnification

Agreement"). (Claim #8706, Attachment at ¶ 5). Claim #8706 also purports to assert an

administrative claim "for misapplication of funds arising from or related to the occurrence of a

'Rapid Amortization Event' after the commencement of the Debtors' bankruptcy cases" (a "RAE

Claim").[4] (Id. at ¶ 7).

15.    A true and accurate copy of the Indemnification Agreement is attached as

Exhibit 1 to the Sakamoto Declaration.  Under the Indemnification Agreement, and subject to the

specific terms and conditions thereof, AHM Investment agreed to indemnify CIFG from and

against any losses "arising out of or by reason of any untrue statement of a material fact

contained in the Underwriters Information or a breach of any of the representations or warranties

of the Underwriters contained in Section 3." (Indemn. Agmt. § 5(a)). The "Underwriters

Information" consisted of two discrete paragraphs in the offering documents for the AHMIT

2006-2 Transaction. (Id. at § 3(b).)  And the representations and warranties of the Underwriters

under section 3 were as follows: (i) not to use or distribute offering documents for the Class V-A

---

[4] RAE Claims relate to the Debtors' continued honoring of borrower draws under the
HELOCs for a time post-petition. Borrower draws under the HELOCs were generally processed
by the servicer and paid using principal and interest ("P&I") collected from the other HELOCs.
Under the transaction documents, the servicer had the right to apply P&I in this manner unless
and until a "Rapid Amortization Event" ("RAE") occurred, at which point the servicer would be
required to retain and hold all P&I for the benefit of the Securitization Trust. CIFG and others
asserted that a RAE occurred on or about the Petition Date, which prohibited the Debtors from
honoring further draws under the HELOCs. The Debtors disputed that an RAE had occurred and
took the position that, to the extent a RAE did occur, it was without legal effect because the RAE
provisions of the transaction documents constituted unenforceable *ipso facto* provisions.

Securities that did not include certain information to be provided by CIFG (id. at § 3(a)), (ii) that

all information provided to American Home Mortgage Securities LLC ("AHM Securities"), the

Depositor of the AHMIT 2006-2 Transaction, for inclusion in the Underwriters Information was

"true and correct in all material respects" insofar as it related to the Underwriters (id. at § 3(b)),

and (iii) that the Underwriters "will comply in all material respects with all legal requirements in

connection with its [sic] offers and sales of the Class V-A Notes and will make such offers and

sales in the manner provided in the Offering Document" (id. § 3(c)).

16.     The Plan Trustee has not been provided any evidence or information to suggest

that AHM Investment breached any representation or warranty to CIFG under the

Indemnification Agreement or made any misstatements of material fact in connection with the

Underwriters Information. Even if it had, the Plan Trustee has not been provided any

information suggesting that CIFG has suffered any losses as a result (as distinct from losses

experienced by CIFG as a result of its assumption of the risk of borrower default).[5] Accordingly,

the Plan Trustee does not believe it likely that AHM Investment will have any obligation to

CIFG under the Indemnity Agreement in the future.

17.     With respect to the RAE Claim, as indicated on the proof of claim form that was

approved by this Court, a proof of claim is not the appropriate procedural mechanism for

asserting an administrative expense request under § 503(b) of the Bankruptcy Code. The

Administrative Bar Date has passed, and CIFG has not asserted the RAE Claim in a procedurally

---

[5] In its claim #10926, CIFG references a securities fraud complaint filed on May 5, 2011, by certain purchasers of RMBS from the AHMIT 2006-2 Transaction. However, CIFG is not named as a defendant.

proper manner. Accordingly, the Plan Trust does not believe any amount for the RAE Claim should be included in the estimate for claim #8706.[6]

18.     In light of the foregoing, the Plan Trust submits that claim #8706 should be classified as a general unsecured claim and estimated at $0.00 for purposes of allowance and distribution.

### Claim #8708 ($0.00)

19.     Claim #8708 asserts contingent and unliquidated claims against AHM Acceptance by way of subrogation to the rights of the Trust vis-à-vis the AHMIT 2006-2 Transaction and the Transaction Documents (as defined in claim #8708). (See Claim #8708, Attachment at ¶ 4 ("CIFG hereby asserts any and all claims against the Debtors that have been asserted or will be asserted by the [Securitization] Trustee, as detailed in the proofs of claim which have been filed or may be filed by the [Securitization] Trustee.")). Claim #8708 also asserts contingent and unliquidated claims against AHM Acceptance "under the Transaction Documents for fees, costs and expenses . . . incurred in connection with administering, monitoring and preserving rights thereunder." (Id. at ¶ 5). Finally, Claim #8708 purports to assert an RAE Claim as an administrative claim. (Id. at ¶ 7).

20.     As noted above, the Securitization Trustee settled all existing claims of the Securitization Trust against the Debtors on account of the AHMIT 2006-2 Transaction. Given that there is no ongoing business relationship between the Debtors and the Securitization Trust,

---

[6] To the extent the Court concludes that CIFG's proofs of claim were procedurally adequate to assert an administrative claim, the Plan Trust requests that any administrative claim on account of the RAE Claims be estimated at $0.00 for purposes of allowance and distribution because (i) CIFG asserts the RAE Claims by way of subrogation to the rights of the Securitization Trust, and (ii) the RAE Claims were already compromised by the Securitization Trustee on behalf of the Securitization Trust.

there are not likely to be any claims against the Debtors to which CIFG may become subrogated in the future. With respect to the claim for reimbursement of administration and monitoring costs, the Plan Trust is unaware of any provision of the Transaction Documents that provide CIFG a reimbursement right, and none is cited in Claim #8708. Finally, as noted above, the RAE Claim was not asserted by the Administrative Bar Date. Accordingly, the Plan Trust submits that claim #8708 should be classified as a general unsecured claim and estimated at $0.00 for purposes of allowance and distribution.

### *Claim #9963 ($0.00)*

21.     Claim #9963 asserts contingent and unliquidated claims against AHM Acceptance relating to the transition of the servicing of the AHMIT 2006-2 Transaction from AHM Acceptance to GMAC Mortgage Corporation ("GMAC"). (Claim #9963, Attachment at ¶ 1). It appears this claim is asserted by way of subrogation to the rights of the Securitization Trust. However, as noted above, all claims of the Securitization Trust against the Debtors have been settled by the Securitization Trustee, and there is no ongoing business relationship between the Debtors (or the Plan Trust) and the Securitization Trust. In addition, the transition of the servicing for the AHMIT 2006-2 Transaction to GMAC has been complete for some time, so it is not likely that any additional transition costs could arise in the future. Accordingly, the Plan Trust submits that claim #9963 should be classified as a general unsecured claim and estimated at $0.00 for purposes of allowance and distribution.

### *Claim #10926 ($4,089,546)*

22.     Claim #10926, which incorporates by reference and supplements a previous claim #8707, asserts contingent and unliquidated claims against AHM Corp. for "contractual, statutory or common law indemnification and/or reimbursement and/or damages . . . in an amount not less

than $22,886,446 plus interest at the Late Payment Rate." (Claim #10926, Addendum at ¶ 2).

More specifically, Claim #10926 asserts claims arising under a certain Insurance and Indemnity

Agreement dated as of June 30, 2006 (the "Insurance and Indemnity Agreement"), by and among

CIFG, AHM Corp., and non-debtor AHM Securities. (Id. at ¶ 4; Claim #8707, Attachment at

¶ 5).

      23.    A true and accurate copy of the Insurance and Indemnity Agreement is attached

as Exhibit 2 to the Sakamoto Declaration. Under the Insurance and Indemnity Agreement, AHM

Corp. agreed to indemnify CIFG for any losses "arising out of or relating to the breach by [AHM

Corp.] or [AHM Securities] of any of the representations or warranties made by it in Section 2.01

or arising out of or relating to the transactions contemplated by the Operative Documents by

reason of" certain enumerated acts or omissions. (Ins. & Indemn. Agmt. § 3.04). CIFG cites

three of the § 2.01 representations and warranties in claim #10926, to wit: (i) that none of the

information relating to the HELOCs provided to CIFG by AHM Corp. or AHM Securities

"contains any statement of a material fact which was untrue or misleading in any material respect

when made"; (ii) that the offering of the Class V-A Securities "complies in all respects with"

federal securities law; and (iii) that "the representations of [AHM Corp.] and [AHM Securities]

contained in the applicable Operative Documents is true and correct in all material respects."

(Claim #10926, Addendum ¶ 9; Ins. & Indem. Agmt. § 2.01(i)-(k). CIFG asserts that these

representations and unspecified "others" were false/and or materially misleading so as to trigger

AHM Corp.'s indemnity obligations. By way of example (though of no evidentiary significance)

CIFG cites a securities fraud complaint brought by Mass Mutual Life Insurance Co. against

certain parties to the AHMIT 2006-2 Transaction (other than AHM Corp. and CIFG, which are

not defendants), which alleges that the weighted average combined loan-to-value ("CLTV")

ratios for the HELOCs[7] was higher than represented in the offering documents.

24.    The Insurance and Indemnity Agreement is governed by New York law. (Ins. &

Indemn. Agmt. § 6.04).  Under New York law, contractual indemnity provisions are narrowly

construed.  Hooper Associates, Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989).

As explained by the New York Court of Appeals:

> Words in a contract are to be construed to achieve the apparent purpose of
> the parties.  Although the words might seem to admit of a larger sense, yet
> they should be restrained to the particular occasion and to the particular
> object which the parties had in view.  This is particularly true with
> indemnity contracts.  When a party is under no legal duty to indemnify, a
> contract assuming that obligation must be strictly construed to avoid
> reading into it a duty which the parties did not intend to be assumed.  The
> promise should not be found unless it can be clearly implied from the
> language and purpose of the entire agreement and the surrounding facts
> and circumstances.

Id.  Against this backdrop, the Plan Trust submits that CIFG cannot rely on generalized

allegations of unspecified breaches of representations at the loan pool level to establish its

entitlement to indemnification from AHM Corp. "arising out of or relating to" such breaches.  At

a minimum, under New York law, it would have to set forth the specific breaches it complains

of, and establish that its asserted loss "arises out of or relat[es] to" such breach as required by the

plain language of the contract.  Claim #10926 does not meet this standard.

25.    In claim #10926, CIFG asserts that it has incurred losses of at least $22,886,446

that are entitled to indemnity under the Insurance and Indemnity Agreement.  As set forth in the

Sakamoto Declaration, however, based on the Certificateholder Account Statements prepared

and distributed by the Securities Administrator for the AHMIT 2006-2 Transaction, these alleged

---

[7]  The CLTV for a HELOC is the ratio of the combined UPB of the HELOC and the
senior mortgage, on the one hand, to the value of the collateral property, on the other hand.  The
underlying transaction documents generally prohibited the CLTV from exceeding 100%.

losses are overstated.  According to these reports, through July 25, 2012, the Trust had

experienced losses of $16,729,396.53 on the HELOCs, on account of which CIFG had paid

$14,456,853.10 (net of excess cash flows returned to CIFG).  As of July 25, 2012, the unpaid

principal balance ("UPB") of the HELOCs backing the Class V-A Securities was $8,810,432.78.

Strictly speaking, it will not be possible to quantify CIFG's total losses on the AHMIT 2006-2

Transaction until these remaining HELOCs have been run off.  However, even if the

Securitization Trust suffered a total loss on these remaining HELOCs, and did not receive any

excess cash flows to reduce such losses, the resulting payments made (and to be made in the

future) by CIFG would not necessarily constitute "losses" entitled to indemnity from AHM Corp.

26.    As noted above, New York law considers the circumstances of the transaction in

assessing the scope of a contractual indemnity provision.  The circumstances are thus: as a

monoline insurer, CIFG assumed the risk of borrower default.  As a business matter, AHM

Corp.'s indemnity obligations serve to shift nonsystematic risk relating to defective loans,

securities fraud, and the like, to AHM Corp.  But these indemnity obligations were never

intended to relieve CIFG of the systematic risk it assumed in exchange for its premium.  CIFG

appears to take the position that all amounts paid by it (or payable in the future) are entitled to

indemnity without regard for whether such payments were the result of an act or omission

triggering AHM Corp.'s indemnity obligations.  But this would not be a narrow construction of

the indemnity obligation as required by New York law, and it would essentially double-

compensate CIFG for the systematic risk it voluntarily underwrote, by awarding CIFG an

allowed claim on top of the premiums already collected.

27.    Determining whether AHM Corp.'s indemnity obligations have been triggered

with respect to amounts paid by CIFG would require an audit of the defaulted HELOCs to see if

they are defective (e.g., as having breached the specific representations asserted by CIFG, such as CLTV ratio). As set forth in the Sakamoto Declaration, this would be a labor-intensive process which, under the circumstances and in light of the anticipated distributions to creditors in these cases, would not be justifiable from a business perspective for either CIFG or the Plan Trust. Accordingly, the Plan Trust is willing to stipulate for purposes of this Motion to estimation of claim #10926 for purposes of allowance and distribution under the Plan as a general unsecured claim against AHM Corp. in the amount of $4,089,546, for reasons that will be set forth at the hearing on this Motion, to the extent necessary.

## RESERVATION OF RIGHTS

28.      The Plan Trustee hereby reserves the right to object to any claims, including the Claims on any ground, and to amend, modify and supplement this Motion. The Plan Trustee is not herein admitting that the Debtors have any liability to CIFG for any obligations, including those asserted in the Claims.

## NOTICE

29.      Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) all claimants whose claims have not been resolved; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and Restated Credit Agreement dated August 10, 2006; (iv) the offices of the attorneys general of the fifty states and the District of Columbia; (v) the Federal Trade Commission; (vi) counsel to AHMSI; (vii) the Securities and Exchange Commission; (viii) counsel to CIFG; and (ix) all parties entitled to notice under Del. Bankr. LR 2002-1(b). No previous request for the relief sought in this Motion has been made to this or any other court.

01:12379683.2

## CONCLUSION

WHEREFORE, the Plan Trust respectfully requests that this Court enter an order substantially in the form attached hereto as Exhibit A (i) estimating the Claims for purposes of allowance and distribution under the Plan, and (ii) granting the Plan Trustee any further relief that the Court deems just and proper.

Dated: August 28, 2012      YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
    Wilmington, Delaware

             /s/ Patrick A. Jackson

             Sean M. Beach (No. 4070)
             Margaret Whiteman Greecher (No. 4652)
             Patrick A. Jackson (No. 4976)
             Rodney Square
             1000 North King Street
             Wilmington, Delaware 19801
             Telephone: (302) 571-6600
             Facsimile: (302) 571-1253

             -and-

             HAHN & HESSEN LLP
             Mark S. Indelicato
             Edward L. Schnitzer
             Joseph Orbach
             488 Madison Avenue
             New York, New York 10022
             Telephone: (212) 478-7200
             Facsimile: (212) 478-7400

             Co-Counsel to the Plan Trustee