## EXHIBIT B

**Sakamoto Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------------- x

In re:  :  Chapter 11

  :

AMERICAN HOME MORTGAGE HOLDINGS, INC.,  :  Case No. 07-11047 (CSS)

a Delaware corporation, et al.,  :

  :  Jointly Administered

    Debtors.  :

--------------------------------------------------------------------- x

### DECLARATION OF SIMON SAKAMOTO IN SUPPORT OF THE
### PLAN TRUST'S MOTION FOR AN ORDER ESTIMATING THE CLAIMS
### OF CIFG ASSURANCE NORTH AMERICA, INC. FOR PURPOSES
### OF ALLOWANCE AND DISTRIBUTION UNDER THE PLAN

I, Simon Sakamoto, pursuant to 28 U.S.C. § 1746, declare:

1.    I am a Portfolio Consultant for the AHM Liquidating Trust (the "Plan Trust"), which was established pursuant to the chapter 11 plan of liquidation (the "Plan") of the above-captioned debtors (collectively, "AHM" or the "Debtors") on November 30, 2010 (the "Effective Date"). In this capacity, I am one of the persons responsible for overseeing the claims reconciliation and objection process in the Debtors' chapter 11 cases. I also work as a consultant for Recovco Mortgage, which serves institutional clients by managing contract claims relating to residential mortgage-backed securities ("RMBS") and whole-loan portfolios.

2.    Between September 2003 and January 2008, I was the Senior Portfolio Manager for American Home Mortgage Investment Corp. ("AHM Investment") and managed a team of traders and analysts who bought and sold securities for the Debtors' main RMBS portfolio. After January 2008, my main focus became assisting in resolving pending litigation and claims related to the securities portfolio, repurchase agreements, swaps, warehouse facilities and AHM securitizations. Prior to working for AHM Investment, I worked for Lehman Brothers for approximately thirteen years as a trader and product manager for several fixed-income

businesses, and for Credit Suisse First Boston for approximately four-and-a-half years as a mortgage trader.

3.      I have read proofs of claim numbered 8706, 8708, 9963, and 10926 (the "POCs") filed by CIFG Assurance North America, Inc. ("CIFG") and the *Plan Trust's Motion for an Order Estimating the Claims of CIFG Assurance North America, Inc. for Purposes of Allowance and Distribution under the Plan* (the "Motion"), and am directly, or by and through my personnel or agents, familiar with the information contained therein and the exhibits attached thereto. The factual allegations in the Motion are true and correct to the best of my knowledge. Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

4.      I have also read the POCs and am generally familiar with the "AHMIT 2006-2 Transaction" and the "Transaction Documents" and "Operative Documents" described therein, including particularly the Indemnity Agreement and the Insurance and Indemnity Agreement. True and accurate copies of these contracts are attached hereto as **Exhibits 1** and **2**, respectively.

5.      CIFG is a monoline insurance company. Monoline insurers provide guarantees to bond issuers, often in the form of credit wraps, that enhance the credit rating of the issuer. In the context of RMBS, monoline insurers assume the risk of borrower default, leaving bondholders only with the residual risk of the insurer's default. This reduces the risk premium on the RMBS, reducing the return that must be paid to investors in order to entice them to purchase the RMBS. It also makes the RMBS easier to market because investors are given an additional level of protection from losses arising from borrower default. In exchange for its assumption of the risk of borrower default, the insurer receives a monthly premium from the issuer (i.e., the securitization trust), which is payable from the cash flows on the underlying mortgages via the distribution waterfall provisions in the securitization documents. These waterfall provisions

typically provide for excess cash flows on the underlying mortgages to be paid to the insurer to the extent of any payments made by the insurer in previous periods.

6.     As stated in the POCs, CIFG is the insurer of the Class V-A Securities issued by the American Home Mortgage Investment Trust 2006-2 (the "Securitization Trust"). The Class V-A Securities are backed by home equity lines of credit (the "HELOCs") originated by AHM Acceptance. Facts pertinent to each of the POCs follow.

### *Claim #8706*

7.     I believe the purpose of the Indemnity Agreement was to protect CIFG against third-party actions against it for securities law violations relating to information provided by AHM Investment and included in the prospectus for the AHMIT 2006-2 Transaction. To my knowledge, CIFG has not been sued in any such action. And so far as I am aware, AHM Investment did not breach any representation or warranty to CIFG under the Indemnification Agreement or made any misstatements of material fact in connection with the Underwriters Information. Accordingly, I do not believe it likely that AHM Investment will have any liability to CIFG in the future under the Indemnity Agreement.

### *Claim #8708*

8.     There is no ongoing business relationship between the Debtors and the Securitization Trust. Accordingly, I do not believe it likely the Securitization Trust will in the future have any right to payment from AHM Acceptance to which CIFG could become subrogated.

9.     I am unaware of any provision in the "Transaction Documents" referenced in claim #8708 that would provide CIFG a right to reimbursement from AHM Acceptance of

administration and monitoring costs. Accordingly, I do not believe AHM Acceptances has, or will have in the future, any obligation to reimburse CIFG such costs.

### *Claim #9963*

10.    The transition of servicing for the AHMIT 2006-2 Transaction to GMAC occurred, and was completed, in the first quarter of 2008. Accordingly, I do not believe the Securitization Trust would in the future incur any additional costs in connection with such transition.

### *Claim #10926*

11.    In claim #10926, CIFG asserts that it has incurred losses of at least $22,886,446 that are entitled to indemnity under the Insurance and Indemnity Agreement. Based on my review of Certificateholder Account Statements prepared and distributed by the Securities Administrator for the AHMIT 2006-2 Transaction, however, I believe these losses are overstated. According to these reports, through July 25, 2012, the Securitization Trust had experienced losses of $16,729,396.53 on the HELOCs, on account of which CIFG had paid $14,456,853.10. The discrepancy between total losses and total payments is the result of excess cash flows received by the Securitization Trust in a given period, which are applied to reduce current losses for that period, leaving CIFG to pay only the net loss.

12.    As of July 25, 2012, the unpaid principal balance ("UPB") of the HELOCs backing the Class V-A Securities was $8,810,432.78. Strictly speaking, it will not be possible to quantify CIFG's total losses on the AHMIT 2006-2 Transaction until these remaining HELOCs have been run off. However, even if the Securitization Trust suffered a total loss on these remaining HELOCs, and did not receive any excess cash flows to reduce such losses, I do not

believe the resulting payments made (and to be made in the future) by CIFG would necessarily constitute "losses" entitled to indemnity from AHM Corp.

13.     As a monoline insurer, CIFG assumed the risk of borrower default. As a business matter, AHM Corp.'s indemnity obligations serve to shift nonsystematic risk relating to defective loans, securities fraud, and the like, to AHM Corp. I do not believe these indemnity obligations were intended to relieve CIFG of the systematic risk it assumed in exchange for its premium. CIFG appears to take the position that all amounts paid by it (or payable in the future) are entitled to indemnity without regard for whether such payments were the result of an act or omission triggering AHM Corp.'s indemnity obligations. I do not believe this is correct as a business matter, and I am advised that, for the reasons set forth in the Motion, it is not correct as a legal matter.

14.     Determining whether AHM Corp.'s indemnity obligations have been triggered with respect to amounts paid by CIFG would require an audit of the defaulted HELOCs to see if they are defective (e.g., as having breached the specific representations asserted by CIFG). I know from personal experience this would be a labor-intensive process which, under the circumstances and in light of the anticipated distributions to creditors in these cases, would not be justifiable from a business perspective for either CIFG or the Plan Trust. Accordingly, the Plan Trust is willing to stipulate for purposes of the Motion to estimation of claim #10926 for purposes of allowance and distribution under the Plan as a general unsecured claim against AHM Corp. in the amount of $4,089,546, for reasons that will be set forth at the hearing on the Motion, to the extent necessary.

*[Signature page follows]*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Dated: Melville, New York
       August 24, 2012

Simon Sakamoto
AHM Liquidating Trust
Portfolio Consultant

## Exhibit 1

**Indemnity Agreement**

CWT DRAFT 6/28/06

CIFG ASSURANCE NORTH AMERICA, INC.,
as Class V-A Note Insurer

and

AMERICAN HOME MORTGAGE INVESTMENT CORP., UBS SECURITIES LLC,
GOLDMAN, SACHS &CO., LEHMAN BROTHERS INC. AND GREENWICH CAPITAL
MARKETS, INC.,
as the Underwriters

INDEMNIFICATION AGREEMENT

AMERICAN HOME MORTGAGE INVESTMENT TRUST 2006-2, MORTGAGE-BACKED
NOTES, SERIES 2006-2

Dated as of June 30, 2006

# TABLE OF CONTENTS

(This Table of Contents is for convenience of reference only and shall not be deemed to be part of this Agreement. All capitalized terms used in this Agreement and not otherwise defined shall have the meanings set forth in Section 1 of this Agreement.)

Page

SECTION 1    DEFINED TERMS ...............................................................................1

SECTION 2    OTHER DEFINITIONAL PROVISIONS..............................................2

SECTION 3    REPRESENTATIONS AND WARRANTIES OF THE UNDERWRITERS .....2

SECTION 4    REPRESENTATIONS AND WARRANTIES OF THE CLASS V-A NOTE INSURER .........................................................................................................3

SECTION 5    INDEMNIFICATION..........................................................................4

SECTION 6    AMENDMENTS, ETC.........................................................................5

SECTION 7    NOTICES.............................................................................................5

SECTION 8    SEVERABILITY ..................................................................................7

SECTION 9    GOVERNING LAW..............................................................................7

SECTION 10   COUNTERPARTS ...............................................................................7

SECTION 11   HEADINGS ..........................................................................................7

INDEMNIFICATION AGREEMENT, dated as of June 30, 2006, by and between CIFG ASSURANCE NORTH AMERICA, INC., as Class V-A Note Insurer, and AMERICAN HOME MORTGAGE INVESTMENT CORP., UBS SECURITIES LLC, GOLDMAN, SACHS & CO., LEHMAN BROTHERS INC. and GREENWICH CAPITAL MARKETS, INC. (the "Underwriters").

Section 1.    Defined Terms.    Unless the context clearly requires otherwise, all capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Financial Guaranty Insurance Policy, No. CIFG NA-[____] issued by the Class V-A Note Insurer in favor of the Trustee (the "Policy") or, if not defined therein, in the Servicing Agreement. For purposes of this Indemnification Agreement, the following terms shall have the following meanings:

"Class V-A Note Insurer" means CIFG Assurance North America, Inc., or any successor thereto, as issuer of the Policy.

"Class V-A Note Insurer Information" means the information in the Offering Document regarding the Class V-A Note Insurer and the Policy set forth under the caption "The Credit Enhancer" and including the financial statements of the Class V-A Note Insurer incorporated therein by reference as of December 31, 2004 and December 31, 2005, for each of the years in the three-year period ended December 31, 2005 and as of March 31, 2006, for the three-month period ended March 31, 2006.

"Closing Date" means June 30, 2006.

"Depositor" means American Home Mortgage Securities LLC, a Delaware limited liability company, or any successor thereto, as Depositor under the Servicing Agreement.

"Indenture Trustee" means Deutsche Bank Trust Company Americas, as trustee under the Servicing Agreement, and any successor thereto under the Servicing Agreement.

"Insurance Agreement" means the Insurance and Indemnity Agreement (as the same may be amended, modified or supplemented from time to time), dated as of June 30, 2006, by and among the Class V-A Note Insurer, American Home Mortgage Acceptance, Inc., as sponsor, and the Depositor.

"Offering Document" means the Base Prospectus, dated April 21, 2006, as supplemented by the Prospectus Supplement, dated June 30, 2006, as may be further amended by additional supplements that have been reviewed and approved by the Class V-A Note Insurer, in respect of the Certificates.

"Owner Trustee" means Wilmington Trust Company, as trustee under the Servicing Agreement, and any successor thereto under the Servicing Agreement.

"Person" means an individual, joint stock company, trust, unincorporated association, joint venture, corporation, business or owner trust, partnership or other organization or entity (whether governmental or private).

"Securities Act" means the Securities Act of 1933, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Securities Exchange Act" means the Securities Exchange Act of 1934, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Servicing Agreement" means the HELOC Servicing Agreement, dated as of June 30, 2006, by and among the Sponsor, the Indenture Trustee and American Home Mortgage Acceptance, Inc. (as the same may be amended, modified or supplemented from time to time as set forth therein, the "Servicing Agreement").

"Underwriters" means American Home Mortgage Investment Corp., UBS Securities LLC, Goldman, Sachs & Co., Lehman Brothers Inc. and Greenwich Capital Markets, Inc.

"Underwriters Information" has the meaning given such term in Section 3.

**Section 2.    Other Definitional Provisions.**    The words "hereof," "herein" and "hereunder" and words of similar import when used in this Indemnification Agreement shall refer to this Indemnification Agreement as a whole and not to any particular provision of this Indemnification Agreement, and Section, subsection, Schedule and Exhibit references are to this Indemnification Agreement unless otherwise specified.    The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms.    The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."

**Section 3.    Representations and Warranties of the Underwriters.**    The Underwriters represent and warrant as of the Closing Date as follows:Offering Document.    The Underwriters will not use, or distribute to other broker-dealers for use, any Offering Document in connection with the offer and sale of the Class V-A Notes unless such Offering Document includes such information relating to the Class V-A Note Insurer as has been furnished by the Class V-A Note Insurer for inclusion therein and has been approved by the Class V-A Note Insurer.

(b)    Underwriters Information.    As to the Underwriters, all material provided in writing to the Depositor for inclusion in the Offering Document (as revised from time to time, and as included in such Offering Document or any other Offering Document), such information being the paragraph immediately preceding the penultimate paragraph on the cover page of the Prospectus Supplement relating to the Notes, and any supplement thereto; and the second paragraph under the heading "Method of Distribution" in the Prospectus Supplement relating to the Notes, and any supplement thereto (the "Underwriters Information"), insofar as such information relates to the Underwriters, shall be true and correct in all material respects.

(c)  Compliance with Laws.  The Underwriters will comply in all material respects with all legal requirements in connection with its offers and sales of the Class V-A Notes and will make such offers and sales in the manner provided in the Offering Document.

**Section 4.**  **Representations and Warranties of the Class V-A Note Insurer.**  The Class V-A Note Insurer represents and warrants to the Underwriters as follows:

(a)  Organization and Licensing.  The Class V-A Note Insurer is a stock insurance company duly formed, validly existing and in good standing under the law of the State of New York with power and authority under applicable law to conduct its insurance business in the manner in which it is being conducted.

(b)  Corporate Power.  The Class V-A Note Insurer has the corporate power and authority to issue the Policy and execute and deliver this Indemnification Agreement and the Insurance Agreement and to perform all of its obligations hereunder and thereunder.

(c)  Authorization: Approvals.  All licenses, orders, consents or other authorizations or approvals of any governmental boards or bodies legally required for the enforceability of the Policy have been obtained; any licenses, authorizations or approvals not obtained are not material to the enforceability of the Policy.

(d)  Enforceability.  The Policy, when issued, and this Indemnification Agreement and the Insurance Agreement, when executed and delivered by the parties thereto, will each constitute a legal, valid and binding obligation of the Class V-A Note Insurer, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium, receivership and other similar laws affecting creditors' rights generally and by general principles of equity and subject to principles of public policy limiting the right to enforce the indemnification provisions contained therein and herein.

(e)  Financial Information.  The balance sheet of the Class V-A Note Insurer as of December 31, 2005 and 2004 and the related statements of income, stockholder's equity and cash flows for the three fiscal years ended December 31, 2005, and the accompanying footnotes, together with an opinion of Price Waterhouse Coopers, independent certified public accountants, a copy of which is incorporated by reference into the Offering Document, fairly present in all material respects the financial condition of the Class V-A Note Insurer as of such dates and for the periods covered by such statements in accordance with generally accepted accounting principles consistently applied.  The balance sheet of the Certificate Insurer as of March 31, 2006, and the related statements of operations, stockholder's equity and cash flows for the three-month period ended March 31, 2006, fairly present in all material respects the financial condition of the Class V-A Note Insurer as of such date and for such three-month period in accordance with generally accepted accounting principles consistently applied.  Since March 31, 2006, there has been no material change in such financial condition of the Class V-A Note Insurer that would materially and adversely affect its ability to perform its obligations under the Policy.

(f)  Insurer Information.  The Class V-A Note Insurer Information is true and correct in all material respects and do not contain any untrue statement of a material fact.

(g)    No Litigation. There are no actions, suits, proceedings or investigations pending or, to the best of the Class V-A Note Insurer's knowledge, threatened against it at law or in equity or before or by any court, governmental agency, board or commission or any arbitrator which, if decided adversely, would materially and adversely affect its ability to perform its obligations under the Policy or this Insurance Agreement.

**Section 5.    Indemnification.** (a) The Underwriters agree to pay, and to protect, indemnify and save harmless, the Class V-A Note Insurer and its officers, directors, shareholders, employees, agents and each Person, if any, who controls the Class V-A Note Insurer within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act from and against, any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or by reason of any untrue statement of a material fact contained in the Underwriters Information or a breach of any of the representations and warranties of the Underwriters contained in Section 3.

(b)    The Class V-A Note Insurer agrees to pay, and to protect, indemnify and save harmless, the Underwriters and its officers, directors, shareholders, employees, agents and each Person, if any, who controls the Underwriters within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act from and against, any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or by reason of any untrue statement of a material fact contained in the Class V-A Note Insurer Information or a breach of any of the representations and warranties of the Class V-A Note Insurer contained in Section 4.

(c)    if any action or proceeding (including any governmental investigation) shall be brought or asserted against any Person (individually, an "Indemnified Party" and, collectively, the "Indemnified Parties") in respect of which the indemnity provided in this Section 5(a) or (b) may be sought from the Underwriters, on the one hand, or the Class V-A Note Insurer, on the other (each, an "Indemnifying Party") hereunder, each such Indemnified Party shall promptly notify the Indemnifying Party in writing, and the Indemnifying Party shall assume the defense thereof, including the employment of counsel satisfactory to the Indemnified Party and the payment of all expenses. The Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof at the expense of the Indemnified Party; provided, however, that the fees and expenses of such separate counsel shall be at the expense of the Indemnifying Party if (i) the Indemnifying Party has agreed to pay such fees and expenses, (ii) the Indemnifying Party shall have failed to assume the defense of such action or proceeding and employ counsel reasonably satisfactory to the Indemnified Party in any such action or proceeding or (iii) the named parties to any such action or proceeding (including any impleaded parties) include both the Indemnified Party and the Indemnifying Party, and the Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the Indemnifying Party (in which case, if the Indemnified Party notifies the Indemnifying Party in writing that it elects to employ separate counsel at the expense of the Indemnifying Party, the

-4-

Indemnifying Party shall not have the right to assume the defense of such action or proceeding on behalf of such Indemnified Party, it being understood, however, that the Indemnifying Party shall not, in connection with any one such action or proceeding or separate but substantially similar or related actions or proceedings in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys at any time for the Indemnified Parties, which firm shall be designated in writing by the Indemnified Party). The Indemnifying Party shall not be liable for any settlement of any such action or proceeding effected without its written consent to the extent that any such settlement shall be prejudicial to the Indemnifying Party, but, if settled with its written consent, or if there is a final judgment for the plaintiff in any such action or proceeding with respect to which the Indemnifying Party shall have received notice in accordance with this subsection (c), the Indemnifying Party agrees to indemnify and hold the Indemnified Parties harmless from and against any loss or liability by reason of such settlement or judgment.

(d) To provide for just and equitable contribution if the indemnification provided by the Indemnifying Party is determined to be unavailable or insufficient to hold harmless any Indemnified Party (other than due to application of this Section), each Indemnifying Party shall contribute to the claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) incurred by the Indemnified Party on the basis of the relative fault of the Indemnifying Party, on the one hand, and the Indemnified Party, on the other hand. In no event shall the Underwriters be required to contribute an amount in excess of the underwriting discounts and commissions received by it.

The relative fault of each Indemnifying Party, on the one hand, and each Indemnified Party, on the other, shall be determined by reference to, among other things, whether the breach of, or alleged breach of, any of its representations and warranties set forth within the control of, the Indemnifying Party or the Indemnified Party, and the parties relative intent, knowledge, access to information and opportunity to correct or prevent such breach.

No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.

Section 6.    Amendments, Etc.  This Indemnification Agreement may be amended, modified, supplemented or terminated only by written instrument or written instruments signed by the parties hereto.

Section 7.    Notices.  All demands, notices and other communications to be given hereunder shall be in writing (except as otherwise specifically provided herein) and shall be mailed by registered mail or personally delivered and telecopied to the recipient as follows:

(a)     To the Class V-A Note Insurer:

      CIFG Assurance North America, Inc.
      825 Third Avenue, 6th Floor
      New York, New York 10022
      Attention:  General Counsel
      Facsimile:  (212) 909-3959

(b)     To the Underwriters:

      American Home Mortgage Investment Corp.
      [PLEASE PROVIDE]

      Attention:
      Telephone:
      Facsimile:

      UBS Securities LLC
      [PLEASE PROVIDE]

      Attention:
      Telephone:
      Facsimile:

      Goldman, Sachs & Co.
      [PLEASE PROVIDE]

      Attention:
      Telephone:
      Facsimile:

      Lehman Brothers Inc.
      [PLEASE PROVIDE]

      Attention:
      Telephone:
      Facsimile:

      Greenwich Capital Markets, Inc.
      [PLEASE PROVIDE]

      Attention:
      Telephone:
      Facsimile:

A party may specify an additional or different address or addresses by writing mailed or delivered to the other parties as aforesaid.  All such notices and other communications shall be effective upon receipt.

**Section 8.    Severability.**  In the event that any provision of this Indemnification Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the parties hereto agree that such holding shall not invalidate or render unenforceable any other provision hereof The parties hereto further agree that the holding by any court of competent jurisdiction that any remedy pursued by any party hereto is unavailable or unenforceable shall not affect in any way the ability of such party to pursue any other remedy available to it.

**Section 9.    Governing Law.**  This Indemnification Agreement shall be governed by and construed in accordance with the laws of the State of New York (without giving effect to the conflict of laws provisions thereof).

**Section 10.    Counterparts.**  This Indemnification Agreement may be executed in counterparts by the parties hereto, and all such counterparts shall constitute one and the same instrument.

**Section 11.    Headings.**  The headings of Sections and the Table of Contents contained in this Indemnification Agreement are provided for convenience only.  They form no part of this Indemnification Agreement and shall not affect its construction or interpretation.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

CIFG ASSURANCE NORTH AMERICA,
    INC., as Class V-A Note Insurer

By:_____
    Name:
    Title:       Robert M. Drillings
          Managing Director and Assistant Secretary

AMERICAN HOME INVESTMENT CORP.,
    as Underwriter

By:_____
    Name:
    Title:

UBS SECURITIES LLC
    as Underwriter

By:_____
    Name:
    Title:

GOLDMAN, SACHS & CO., as Underwriter

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

CIFG ASSURANCE NORTH AMERICA, INC., as Class V-A Note Insurer

By:_____
    Name:
    Title:

AMERICAN HOME INVESTMENT CORP., as Underwriter

By:_____
    Name:    Alan B. Horn
                Executive Vice President
    Title:     General Counsel & Secretary

UBS SECURITIES LLC as Underwriter

By:_____
    Name:
    Title:

GOLDMAN, SACHS & CO., as Underwriter

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

CIFG ASSURANCE NORTH AMERICA,
    INC., as Class V-A Note Insurer


By:_____
    Name:
    Title:


AMERICAN HOME INVESTMENT CORP.,
    as Underwriter


By:_____
    Name:
    Title:


UBS SECURITIES LLC
    as Underwriter


By:_____
    Name:    **Paul Scialabba**
    Title:    **Executive Director**
                    **Patrick Fitzsimonds**
                          Director

GOLDMAN, SACHS & CO., as Underwriter


By:_____
    Name:
    Title:

LEHMAN BROTHERS INC., as Underwriter

By:_____

    Name: *Michael Hitemann*

    Title: *SVP*

GREENWICH CAPITAL MARKETS, INC., as
    Underwriter

By:_____

    Name:

    Title:

LEHMAN BROTHERS INC., as Underwriter

By:_____
    Name:
    Title:

GREENWICH CAPITAL MARKETS, INC., as
    Underwriter

By:_____
    Name:
    Title:

## Exhibit 2

**Insurance and Indemnity Agreement**

CWT DRAFT 6/30/06

CIFG ASSURANCE NORTH AMERICA, INC.,
as Class V-A Note Insurer,

AMERICAN HOME MORTGAGE CORP.,
as Sponsor

and

AMERICAN HOME MORTGAGE SECURITIES LLC,
as Depositor

INSURANCE AND INDEMNITY AGREEMENT

AMERICAN HOME MORTGAGE INVESTMENT TRUST 2006-2, MORTGAGE-BACKED
NOTES, SERIES 2006-2

Dated as of June 30, 2006

# TABLE OF CONTENTS

(This Table of Contents is for convenience of reference only and shall not be deemed to be part of this Agreement. All capitalized terms used in this Agreement and not otherwise defined shall have the meanings set forth in Article I of this Agreement.)

Page

ARTICLE I DEFINITIONS .................................................................................................1

| Section 1.01 | Defined Terms. .....................................................................1 |
| Section 1.02 | Other Definitional Provisions. ............................................4 |

ARTICLE II REPRESENTATIONS, WARRANTIES AND COVENANTS................................4

| Section 2.01 | Representations and Warranties of the Sponsor and the Depositor....................................................................4 |
| Section 2.02 | Affirmative Covenants of the Sponsor and the Depositor....................7 |
| Section 2.03 | Negative Covenants of the Sponsor and the Depositor. ......................10 |
| Section 2.04 | Representations, Warranties and Covenants of the Class V-A Note Insurer. ..................................................10 |

ARTICLE III THE POLICY; REIMBURSEMENT .................................................................12

| Section 3.01 | Issuance of the Policy. ......................................................12 |
| Section 3.02 | Payment of Fees and Premium. .........................................13 |
| Section 3.03 | Reimbursement Obligation. ..............................................13 |
| Section 3.04 | Indemnification. ...............................................................14 |
| Section 3.05 | Payment Procedure. ..........................................................16 |

ARTICLE IV FURTHER AGREEMENTS .............................................................................16

| Section 4.01 | Effective Date; Term of the Insurance Agreement. .............................16 |
| Section 4.02 | Further Assurances and Corrective Instruments. .................................17 |
| Section 4.03 | Obligations Absolute. .......................................................17 |
| Section 4.04 | Assignments; Reinsurance; Third-Party Rights..................................18 |
| Section 4.05 | Liability of the Class V-A Note Insurer.............................................19 |
| Section 4.06 | Subrogation. .....................................................................19 |

ARTICLE V DEFAULTS AND REMEDIES............................................................................19

| Section 5.01 | Defaults....................................................................19 |
| Section 5.02 | Remedies; No Remedy Exclusive.....................................20 |
| Section 5.03 | Waivers. ............................................................................21 |

ARTICLE VI MISCELLANEOUS ................................................................................21

    **Section 6.01**    Amendments, Etc. ..............................................................21
    **Section 6.02**    Notices. ..............................................................................21
    **Section 6.03**    Severability. .......................................................................22
    **Section 6.04**    Governing Law. ..................................................................22
    **Section 6.05**    Consent to Jurisdiction.......................................................23
    **Section 6.06**    Consent of the Class V-A Note Insurer. .............................23
    **Section 6.07**    Counterparts.......................................................................23
    **Section 6.08**    Headings. ...........................................................................23
    **Section 6.09**    Trial by Jury Waived. ........................................................23
    **Section 6.10**    Limited Liability. ...............................................................24
    **Section 6.11**    Entire Agreement. ..............................................................24

INSURANCE AND INDEMNITY AGREEMENT (as may be amended, modified or supplemented from time to time, this "Insurance Agreement"), dated as of June 30, 2006 by and among CIFG ASSURANCE NORTH AMERICA, INC., as Class V-A Note Insurer, AMERICAN HOME MORTGAGE CORP., as Sponsor, and AMERICAN HOME MORTGAGE SECURITIES LLC, as Depositor.

WITNESSETH:

WHEREAS, pursuant to a mortgage loan purchase agreement, dated as of June 30, 2006 (the "MLPA"), between the Sponsor and the Depositor, the HELOC Mortgage Loans are being transferred by the Sponsor to the Depositor;

WHEREAS, pursuant to an Indenture, dated as of June 30, 2006, by and among the Issuing Entity, Deutsche Bank Trust Company Americas, as Indenture Trustee and Wells Fargo Bank, National Association, as Securities Administrator (as the same may be amended, modified or supplemented from time to time as set forth therein, the "Indenture"), HELOC Mortgage Loans are being transferred by the Depositor to the Trustee for the benefit of the Class V-A Noteholders and the Class V-A Note Insurer;

WHEREAS, pursuant to the HELOC Servicing Agreement, dated as of June 30, 2006, by and among the Sponsor, the Indenture Trustee and American Home Mortgage Servicing Inc. (as the same may be amended, modified or supplemented from time to time as set forth therein, the "Servicing Agreement") (the "HELOC Servicer") has been engaged to service the HELOC Mortgage Loans by the HELOC Servicer and the issuance of notes representing directly or indirectly the entire ownership of the Trust Fund (collectively, the "Notes");

WHEREAS, the Class V-A Note Insurer has agreed to issue the Policy as described in Article III hereof, pursuant to which it will agree to pay in favor of the Trustee for the benefit of the Holders of the Class V-A Notes the amount specified therein;

WHEREAS, the Class V-A Note Insurer shall be paid a Premium as set forth herein; and

WHEREAS, each of the Sponsor and the Depositor has undertaken certain obligations in consideration for the Class V-A Note Insurer's issuance of its Policy.

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

ARTICLE I<br>DEFINITIONS

**Section 1.01** *Defined Terms.* Unless the context clearly requires otherwise, all capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Indenture and Servicing Agreement or, if not defined therein, in the Policy described below. For purposes of this Insurance Agreement, the following terms shall have the following meanings:

"Class V-A Note Insurer" means CIFG Assurance North America, Inc., or any successor thereto, as issuer of the Policy.

"Class V-A Note Insurer Information" means the information in the Offering Document regarding the Class V-A Note Insurer set forth under the caption "The Credit Enhancer" and including the financial statements of the Class V-A Note Insurer incorporated therein by reference as of December 31, 2004 and December 31, 2005, for each of the years in the three-year period ended December 31, 2005 , and as of March 31, 2006, for the three-month period ended March 31, 2006.

"Closing Date" means June 30, 2006.

"Default" means any event which results, or which with the giving of notice or the lapse of time or both would result, in an Event of Default.

"Depositor" means American Home Mortgage Securities LLC, a Delaware limited liability company, or any successor thereto, as Depositor under the Servicing Agreement.

"Documents" has the meaning given such term in Section 2.01(i) herein.

"Event of Default" means any event of default specified in Section 5.01 of this Insurance Agreement.

"Fitch" means Fitch, Inc., and any successor thereto.

"Indenture Trustee" means Deutsche Bank Trust Company Americas, and its successor and assigns or any successor indenture trustee appoint pursuant to the terms of the Indenture.

"Investment Company Act" means the Investment Company Act of 1940, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Issuing Entity" means American Home Mortgage Investment Trust 2006-2, a Delaware statutory trust, or its successor in interest created pursuant to the Indenture.

"Late Payment Rate" means an amount equal to the lesser of (a) the greater of (i) the per annum rate of interest, publicly announced from time to time by JPMorgan Chase Bank at its principal office in New York, New York, as its prime or base lending rate (any change in such rate of interest to be effective on the date such change is announced by JPMorgan Chase Bank) plus 3%, and (ii) the then applicable highest rate of interest on the Class V-A Notes and (b) the maximum rate permissible under applicable usury or similar laws limiting interest rates. The Late Payment Rate shall be computed on the basis of the actual number of days elapsed over a year of 360 days.

"Material Adverse Change" means, in respect of any Person, a material adverse change in (i) the ability of such Person to perform its obligations under any of the Operative Documents to which it is a party or (ii) the business, financial condition, results of operations or properties of such Person. References to a "Material Adverse Change" herein which do not refer to a

particular Person mean a Material Adverse Change with regard to the Sponsor, the Depositor or the Trust Estate.

"Moody's" means Moody's Investors Service, Inc., and any successor thereto.

"Noteholder" has the meaning given such term in the Policy.

"Offering Document" means the Base Prospectus, dated April 21, 2006 and the Prospectus Supplement, dated June 30, 2006, as may be further amended by additional supplements that have been reviewed and approved by the Class V-A Note Insurer, in respect of the Notes.

"Operative Documents" means this Insurance Agreement, the Notes, the Indenture, the Servicing Agreement and the Trust Agreement.

"Owner Trustee" means Wilmington Trust Company and its successors and assigns or any which consists of items referred to in Section 3.01 of the Trust Agreement.

"Person" means an individual, joint stock company, trust, unincorporated association, joint venture, corporation, business or owner trust, partnership or other organization or entity (whether governmental or private).

"Policy" means the Financial Guaranty Insurance Policy, No. CIFG NA-1041, together with all endorsements thereto, issued by the Class V-A Note Insurer in favor of the Trustee, for the benefit of the Holders of the Class V-A Notes.

"Premium" means the premium payable monthly in accordance with the Policy which shall be an amount equal to 1/12th of the product of (i) the Premium Percentage and (ii) the aggregate Note Principal Balance of the Class V-A Notes on the preceding Distribution Date (after giving effect to any distributions of principal to be made on such Distribution Date).

"Premium Percentage" shall mean .14% per annum.

"S&P" means Standard & Poor's, a division of The McGraw-Hill Companies, Inc., and any successor thereto.

"Securities Act" means the Securities Act of 1933, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Securities Exchange Act" means the Securities Exchange Act of 1934, including, unless the context otherwise requires, the rules and regulations thereunder, as amended from time to time.

"Servicing Agreement" has the meaning given such term in the recitals.

"Sponsor" means American Home Mortgage Corp., a Maryland corporation, as a sponsor under the Servicing Agreement and the MLPA.

"Transaction" means the transactions contemplated by the Operative Documents, including the transactions described in the Offering Document.

"Trust Agreement" means the Amended and Restated Trust Agreement dated as of June 28, 2006, among the Owner Trustee, the Depositor and Deutsche Bank Trust Company Americas.

"Underwriters" means American Home Mortgage Investment Corp., UBS Securities LLC, Goldman, Sachs & Co., Lehman Brothers Inc. and Greenwich Capital Markets, Inc. in its capacity as underwriter under the Offering Document.

"Underwriters Information" means all material provided in writing by the Underwriters to the Depositor for inclusion in the Offering Document (as revised from time to time, and as included in such Offering Document or any other Offering Document), such information being the paragraph immediately preceding the penultimate paragraph on the cover page of the Prospectus Supplement relating to the Notes, and any supplement thereto, and the second paragraph under the heading "Method of Distribution" in the Prospectus Supplement relating to the Notes, and any supplement thereto.

**Section 1.02** *Other Definitional Provisions.* The words "hereof," "herein" and "hereunder" and words of similar import when used in this Insurance Agreement shall refer to this Insurance Agreement as a whole and not to any particular provision of this Insurance Agreement, and Section, subsection, Schedule and Exhibit references are to this Insurance Agreement unless otherwise specified. The meanings given to terms defined herein shall be equally applicable to both the singular and plural forms of such terms. The words "include" and "including" shall be deemed to be followed by the phrase "without limitation."

ARTICLE II
REPRESENTATIONS, WARRANTIES AND COVENANTS

**Section 2.01** *Representations and Warranties of the Sponsor and the Depositor.* Each of the Sponsor and Depositor represents and warrants to the Class V-A Note Insurer as of the Closing Date, as follows:

(a) *Due Organization and Qualification.* The Sponsor is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation or incorporation. The Depositor is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation or incorporation. Each of the Sponsor and the Depositor is duly qualified to do business, is in good standing and has obtained all necessary licenses, permits, charters, registrations and approvals (together, "approvals") necessary for the conduct of its business as currently conducted and as described in the Offering Document and the performance of its obligations under the Operative Documents to which it is a party in each jurisdiction in which the failure to be so qualified or to obtain such approvals would render any Operative Document to which it is a party unenforceable in any material respect or would have a material adverse effect upon the Transaction.

(b)    *Power and Authority.*  Each of the Sponsor and the Depositor has all necessary corporate or other power and authority to conduct its business as currently conducted and as described in the Offering Document, to execute and deliver, and to perform its obligations under, the Operative Documents to which it is a party and to consummate the Transaction.

(c)    *Due Authorization.*  The execution, delivery and performance of the Operative Documents to which it is a party by each of the Sponsor and the Depositor have been duly authorized by all necessary corporate action and do not require any additional approvals or consents, or other action by or any notice to or filing with any Person, including any governmental entity or any of the stockholders or other owners of the Sponsor or the Depositor, which have not previously been obtained or given by the Sponsor or the Depositor.

(d)    *Noncontravention.*  The execution and delivery by each of the Sponsor and the Depositor of the Operative Documents to which it is a party, the consummation of the Transaction and the satisfaction of the terms and conditions of the Operative Documents do not and will not:

(i)    conflict with or result in any breach or violation of any provision of the applicable organizational documents of the Sponsor or the Depositor or any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award currently in effect having applicability to the Sponsor or the Depositor or any of their respective material properties, including regulations issued by any administrative agency or other governmental authority having supervisory powers over the Sponsor or the Depositor, which conflict, breach or violation reasonably could be expected to result in a Material Adverse Change;

(ii)    constitute a default by the Sponsor or the Depositor under, result in the acceleration of any obligation under, or breach any provision of any loan agreement, mortgage, indenture or other agreement or instrument to which the Sponsor or the Depositor is a party or by which any of their respective properties is or may be bound or affected, which default, acceleration or breach reasonably could be expected to result in a Material Adverse Change; or

(iii)    result in or require the creation of any lien upon or in respect of any assets of the Sponsor or the Depositor, which lien reasonably could be expected to result in a Material Adverse Change, except as otherwise contemplated by the Operative Documents.

(e)    *Legal Proceedings.*  There is no action, proceeding or investigation by or before any court, governmental or administrative agency or arbitrator against or affecting the Sponsor or the Depositor or any of their respective subsidiaries, any properties or rights of the Sponsor or the Depositor or any of their respective subsidiaries pending or, to the Sponsor's or the Depositor's knowledge threatened, which, in any case, if decided adversely to the Sponsor or the Depositor or any such subsidiary could result in a Material Adverse Change.

(f)    *Valid and Binding Obligations.*  The Operative Documents (other than the Notes) to which it is a party, when executed and delivered by the Sponsor, the Depositor and the

other parties thereto, will constitute the legal, valid and binding obligations of the Sponsor and the Depositor, as applicable, enforceable in accordance with their respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium, receivership or other similar laws affecting creditors' rights generally and general equitable principles and public policy considerations as to rights of indemnification for violations of federal securities laws. The Class V-A Notes, when executed, authenticated and delivered in accordance with the Servicing Agreement and when delivered and paid for by the Underwriter as provided in the Underwriting Agreement, will be validly issued and outstanding and entitled to the benefits of the Servicing Agreement.

(g)    *Financial Information.* The financial information of the Sponsor and the Depositor, copies of which have been furnished to the Class V-A Note Insurer, (i) is, as of the dates and for the periods referred to therein, complete and correct in all material respects, (ii) presents fairly the financial condition and results of operations of the Sponsor and the Depositor as of the dates and for the periods indicated and (iii) has been prepared in accordance with generally accepted accounting principles consistently applied, except as noted therein (subject as to interim statements to normal year-end adjustments). Since the date indicated in the financial information provided to the Class V-A Note Insurer, there has been no Material Adverse Change in respect of the Sponsor or the Depositor.

(h)    *Taxes.* Each of the Sponsor and the Depositor has filed prior to the date hereof all federal and state tax returns that are required to be filed by it and has paid all taxes, including any assessments received by it that are not being contested in good faith, to the extent that such taxes have become due, except with respect to any failures to file or pay that, individually or in the aggregate, would not result in a Material Adverse Change with respect to the Sponsor or the Depositor.

(i)    *Accuracy of Information.* Neither the Operative Documents nor other material information relating to the HELOC Mortgage Loans, the Sponsor or the Depositor (collectively, the "Documents"), as amended, supplemented or superseded, furnished to the Class V-A Note Insurer in writing or in electronic form by the Sponsor or the Depositor in connection with the Transaction contains any statement of a material fact which was untrue or misleading in any material respect when made. Neither the Sponsor or the Depositor has any knowledge of any circumstances that could reasonably be expected to cause a Material Adverse Change with respect to the Sponsor or the Depositor. Since the furnishing of the Documents, there has been no change nor any development or event involving a prospective change known to the Sponsor or the Depositor that would render any of the Documents untrue or misleading in any material respect.

(j)    *Compliance With Securities Laws.* The offering of the Class V-A Notes complies in all material respects with the requirements of the Securities Act and the regulations thereunder. Without limiting the foregoing, the Offering Document does not contain any untrue statement of a material fact and does not omit to state a material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading; *provided, however,* that no representation is made with respect to the Class V-A Note Insurer Information or the Underwriter Information.

(k)    *Operative Documents.* Each of the representations and warranties of the Sponsor and the Depositor contained in the applicable Operative Documents is true and correct in all material respects and each of the Sponsor and the Depositor hereby makes each such representation and warranty to, and for the benefit of, the Class V-A Note Insurer as if the same were set forth in full herein.

(l)    *Solvency; Fraudulent Conveyance.* Each of the Sponsor and the Depositor is solvent and will not be rendered insolvent by the Transaction and, after giving effect to the Transaction, neither of the Sponsor or the Depositor will be left with an unreasonably small amount of capital with which to engage in the ordinary course of its business, and neither of the Sponsor or the Depositor intends to incur, nor does the Sponsor or the Depositor believe that it has incurred, debts beyond its ability to pay as they mature. Neither the Sponsor or the Depositor contemplate the commencement of insolvency, liquidation or consolidation proceedings or the appointment of a receiver, liquidator, conservator, trustee or similar official in respect of the Sponsor or the Depositor or any of their respective assets. The amount of consideration being received by the Depositor upon the sale of the Notes constitutes reasonably equivalent value and fair consideration for the Notes. The Depositor is not transferring the HELOC Mortgage Loans to the Trustee nor is the Depositor selling the Notes, as provided in the Operative Documents, with any intent to hinder, delay or defraud any of the Depositor's creditors.

**Section 2.02** *Affirmative Covenants of the Sponsor and the Depositor.* Each of the Sponsor and the Depositor hereby agrees that during the term of this Insurance Agreement, unless the Class V-A Note Insurer shall otherwise expressly consent in writing:

(a)    *Compliance With Agreements and Applicable Laws.* Each of the Sponsor and the Depositor shall comply in all material respects with the terms and conditions of and perform its obligations under the Operative Documents to which it is a party in all cases in which failure to so comply or perform would result in a default thereunder and each of the Sponsor and the Depositor shall comply with all material requirements of any law, rule or regulation applicable to it in all circumstances where noncompliance reasonably could be expected to result in a Material Adverse Change with respect to the Sponsor or the Depositor.

(b)    *Corporate Existence.* Each of the Sponsor and the Depositor and their respective successors and assigns shall maintain its corporate existence and shall at all times continue to be duly organized under the laws of their respective jurisdictions of incorporation or organization and duly qualified and duly authorized (as described in subsections 2.01(a), (b) and (c) hereof) and shall conduct its business in accordance with the terms of its applicable organizational documents.

(c)    *Financial Statements; Accountants' Reports; Other Information.* Each of the Sponsor and the Depositor shall keep or cause to be kept in reasonable detail books and records of account of its assets and business relating to the Transaction, and shall, as applicable, clearly reflect therein the sale of the HELOC Mortgage Loans to the Depositor as sale of the HELOC Mortgage Loans by the Sponsor to the Depositor.

(d)    *Closing Documents; Post Closing Matters.* The Depositor shall cause to be delivered within 60 days of the Closing Date or such later date as agreed by the Class V-A Note Insurer and the Depositor two closing sets to the Class V-A Note Insurer and one closing set to its counsel, which closing sets shall include execution copies of each of the Operative Documents other than the Notes. All closing conditions contained herein and in any Operative Document which are temporarily waived pursuant to a written letter signed by the Class V-A Note Insurer shall be satisfied within the period set forth in such letter or if no date is specified in such letter, within 30 days from the Closing Date. No closing condition may be waived except pursuant to a written letter signed by the Class V-A Note Insurer.

(e)    *Access to Records; Discussions with Officers and Accountants.* On an annual basis, or if the Class V-A Note Insurer reasonably believes that a Material Adverse Change may have occurred, each of the Sponsor and the Depositor shall, upon the reasonable request of the Class V-A Note Insurer, permit the Class V-A Note Insurer or its authorized agents, or cause the Class V-A Note Insurer or its authorized agents to be permitted (in the case of the Issuing Entity):

(i)    to inspect the books and records of the Sponsor and the Depositor as they may relate to the Class V-A Notes, the obligations of the Sponsor and the Depositor under the Operative Documents to which it is a party and the Transaction;

(ii)    to discuss the affairs, finances and accounts of the Sponsor as they relate to the HELOC Mortgage Loans, the Transaction or the Sponsor's ability to perform its obligations under the Operative Documents; and

(iii)    a Material Adverse Change has occurred and with the Sponsor's consent, as applicable, which consent shall not be unreasonably withheld or delayed, to discuss the affairs, finances and accounts of the Sponsor with such party's independent accountants; *provided, however,* that officers of the Sponsor shall have the right to be present during such discussions and that any associated fee charged by such independent accountants shall be paid by the Class V-A Note Insurer.

Such inspections and discussions shall be conducted during normal business hours and shall not unreasonably disrupt the business of the Sponsor or the Depositor. The books and records of the Sponsor and the Depositor shall be maintained at the address of the Sponsor designated herein for receipt of notices, unless the Sponsor shall otherwise advise the parties hereto in writing.

(f)    *Notice of Material Events.* The Sponsor and the Depositor shall be obligated (which obligation shall be satisfied as to each if performed by the Sponsor or the Depositor) promptly to inform the Class V-A Note Insurer in writing of the occurrence of any of the following:

(i)    the submission of any claim or the initiation of any legal process, litigation or administrative or judicial investigation, or rule making or disciplinary proceeding by or against the Sponsor or the Depositor that (A) would be required to be disclosed to the Commission or (B) could result in a Material Adverse Change, or the

initiation of any proceeding or the promulgation of any proposed or final rule (but only to the extent the Depositor has actual knowledge thereof) which would likely result in a Material Adverse Change;

        (ii)    any change in the organizational or formation jurisdictions of the Sponsor or the Depositor;

        (iii)    the occurrence of any Default or Event of Default or any Material Adverse Change;

        (iv)    the commencement of any proceedings by or against the Sponsor or the Depositor under any applicable bankruptcy, reorganization, liquidation, rehabilitation, insolvency or other similar law now or hereafter in effect or of any proceeding in which a receiver, liquidator, conservator, trustee or similar official shall have been, or may be, appointed or requested for the Sponsor or the Depositor or any of their respective assets; or

        (v)    the receipt of notice that (A) the Sponsor or the Depositor is being placed under regulatory supervision, (B) any license, permit, charter, registration or approval materially necessary for the conduct of the Sponsor's or the Depositor's business is to be, or may be, suspended or revoked or (C) the Sponsor or the Depositor is to cease and desist any practice, procedure or policy employed by the Sponsor or the Depositor in the conduct of their respective business, and such suspension, revocation or cessation may reasonably be expected to result in a Material Adverse Change with respect to the Depositor or the Sponsor.

        (g)    *Further Assurances.* Each of the Sponsor and the Depositor shall, upon the reasonable request of the Class V-A Note Insurer, from time to time, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, within thirty days of such request, such amendments hereto and such further instruments and take such further action as may be reasonably necessary to effectuate the intention, performance and provisions of the Operative Documents. In addition, each of the Sponsor and the Depositor agrees reasonably to cooperate with S&P, Fitch and Moody's in connection with any review of the Transaction that may be undertaken by S&P, Fitch and Moody's after the date hereof.

        (h)    *Maintenance of Licenses.* The Sponsor and any successors thereof, shall maintain all material licenses, permits, charters and registrations the loss or suspension of which, or the failure to hold which, could reasonably be expected to result in a Material Adverse Change.

        (i)    *Third-Party Beneficiary.* Each of the Sponsor and the Depositor agrees that the Class V-A Note Insurer shall have all rights provided to the Class V-A Note Insurer in the Operative Documents and that the Class V-A Note Insurer shall constitute a third-party beneficiary with respect to such rights in respect of the Operative Documents. The Class V-A Note Insurer agrees that the rights it shall have as a third-party beneficiary under the Servicing Agreement shall be limited to the rights granted to it and/or to the Class V-A Noteholders in the Servicing Agreement.

**Section 2.03** *Negative Covenants of the Sponsor and the Depositor.* Each of the Sponsor and the Depositor hereby agrees that during the term of this Insurance Agreement, unless the Class V-A Note Insurer shall otherwise expressly consent in writing:

(a) *Impairment of Rights.* Neither the Sponsor nor the Depositor shall take any action, or fail to take any action, if such action or failure to take action may result in a material adverse change as described in clause (i) of the definition of Material Adverse Change, nor interfere in any material respect with the enforcement of any rights of the Class V-A Note Insurer under or with respect to any of the Operative Documents. The Sponsor and the Depositor shall give the Class V-A Note Insurer written notice when any event, action or, to the knowledge of the Sponsor or the Depositor, omission to act, may result in a material adverse change as described in clause (i) of the definition of Material Adverse Change, on the earlier of: (i) the date upon which any publicly available filing or release is made with respect to such event, action or omission to act and (ii) promptly prior to the date of occurrence of such event, action or failure to act. Each of the Sponsor and the Depositor shall furnish to the Class V-A Note Insurer all information reasonably requested by it that is necessary to determine compliance with this paragraph.

(b) *Waiver, Amendments, Etc.* Except as provided in and in accordance with the Operative Documents, neither the Sponsor nor the Depositor shall modify, waive or amend, or consent to any modification, waiver or amendment of, any of the terms, provisions or conditions of the Operative Documents to which it is a party (other than any amendment to the Offering Document required by law) without the prior written consent of the Class V-A Note Insurer thereto, which consent shall not be unreasonably withheld, conditioned or delayed, excluding any modifications, waivers or amendment to which the Class V-A Note Insurer's consent is not required pursuant to the Operative Document.

**Section 2.04** *Representations, Warranties and Covenants of the Class V-A Note Insurer.* The Class V-A Note Insurer represents, warrants and covenants to the Sponsor and the Depositor as follows:

(a) *Organization and Licensing.* The Class V-A Note Insurer is a stock insurance company duly formed, validly existing and in good standing under the law of the State of New York with power and authority under applicable law to conduct its insurance business in the manner in which it is being conducted.

(b) *Corporate Power.* The Class V-A Note Insurer has the corporate power and authority to issue the Policy and execute and deliver this Insurance Agreement and to perform all of its obligations hereunder and thereunder.

(c) *Authorization; Approvals.* Proceedings legally required for the issuance and execution of the Policy and the execution, delivery and performance of this Insurance Agreement have been taken and licenses, orders, consents or other authorizations or approvals of any governmental boards or bodies legally required for the enforceability of the Policy and the conduct by the Class V-A Note Insurer of the business and activities contemplated by the Transaction have been obtained; any proceedings not taken and any licenses, authorizations or approvals not obtained are not material to the enforceability of the Policy.

(d)     *Enforceability.* The Policy, when issued, and this Insurance Agreement will each constitute a legal, valid and binding obligation of the Class V-A Note Insurer, enforceable in accordance with its terms, subject to bankruptcy, insolvency, reorganization, moratorium, receivership and other similar laws affecting creditors' rights generally and to general principles of equity and subject to principles of public policy limiting the right to enforce the indemnification provisions contained therein and herein.

(e)     *Financial Information.* The balance sheet of the Class V-A Note Insurer as of December 31, 2005 and 2004 and the related statements of income, stockholder's equity and cash flows for the three fiscal years ended December 31, 2005 and the accompanying footnotes, together with an opinion of Price Waterhouse Coopers, independent certified public accountants, a copy of which is incorporated by reference into the Offering Document, fairly present in all material respects the financial condition of the Class V-A Note Insurer as of such dates and for the periods covered by such statements in accordance with generally accepted accounting principles consistently applied. Since December 31, 2005, there has been no material change in such financial condition of the Class V-A Note Insurer that would materially and adversely affect its ability to perform its obligations under the Policy.

(f)     *Class V-A Note Insurer Information.* The Class V-A Note Insurer Information is true and correct in all material respects and does not contain any untrue statement of a material fact.

(g)     *No Litigation.* There are no actions, suits, proceedings or investigations pending or, to the best of the Class V-A Note Insurer's knowledge, threatened against it at law or in equity or before or by any court, governmental agency, board or commission or any arbitrator which, if decided adversely, would materially and adversely affect its ability to perform its obligations under the Policy or this Insurance Agreement.

(h)     *Compliance with Law, Etc.* No practice, procedure or policy employed, or proposed to be employed, by the Class V-A Note Insurer in the conduct of its business violates any law, regulation, judgment, agreement, order or decree applicable to the Class V-A Note Insurer that, if enforced, could result in a Material Adverse Change with respect to the Class V-A Note Insurer.

(i)     *Regulation AB Reports.* The Class V-A Note Insurer agrees, for so long as the Policy shall be in force and the Issuer shall be subject to the reporting requirements of the Securities Exchange Act of 1934, as amended, (a) to make available to the Issuer on its website consolidated financial statements of CIFG Assurance North America, Inc. and its subsidiaries, which the Issuer is hereby authorized to include in its filings with the Securities and Exchange Commission on Form 8-K, Form 10-D or Form 10-K, solely to the extent required under Regulation AB, and (b) to use its best efforts to obtain from the accountants auditing the Class V-A Note Insurer's annual financial statements such reports and consents as may be required in connection with any such filing.

ARTICLE III
THE POLICY; REIMBURSEMENT

**Section 3.01** *Issuance of the Policy.* The Class V-A Note Insurer agrees to issue the Policy on the Closing Date subject to satisfaction of the conditions precedent set forth below on or prior to the Closing Date:

(a) *Operative Documents.* The Class V-A Note Insurer shall have received a copy of each of the Operative Documents, in form and substance reasonably satisfactory to the Class V-A Note Insurer, duly authorized, executed and delivered by each party thereto;

(b) *Representations and Warranties.* The representations and warranties of the Sponsor and the Depositor dated the Closing Date set forth or incorporated by reference in this Insurance Agreement shall be true and correct on and as of the Closing Date as if made on the Closing Date;

(c) *Opinions of Counsel.* The Class V-A Note Insurer shall have received such opinions of counsel, addressed to the Class V-A Note Insurer and in form and substance acceptable to the Class V-A Note Insurer, addressing such other matters, as the Class V-A Note Insurer may reasonably request;

(d) *No Litigation, Etc.* No suit, action or other proceeding, investigation or injunction, or final judgment relating thereto, shall be pending or threatened before any court, governmental or administrative agency or arbitrator in which it is sought to restrain or prohibit or to obtain damages or other relief in connection with any of the Operative Documents or the consummation of the Transaction;

(e) *Legality.* No statute, rule, regulation or order shall have been enacted, entered or deemed applicable by any government or governmental or administrative agency or court that would make the Transaction illegal or otherwise prevent the consummation thereof;

(f) *Issuance of Ratings.* The Class V-A Note Insurer shall have received confirmation that the Class V-A Notes are rated "AAA" by S&P, "Aaa" by Moody's and "AAA" by Fitch, without regard to the Policy;

(g) *No Default.* No Default or Event of Default shall have occurred;

(h) *Conditions Precedent.* Each of the conditions precedent to closing that are required under the Operative Documents or the underwriting agreement relating to the Notes have been satisfied, with out waiver or modification, unless the Class V-A Note Insurer has consented to such waiver or modification; and

(i) *Satisfactory Documentation.* The Class V-A Note Insurer and its counsel shall have reasonably determined that all documents, certificates and opinions to be delivered in connection with the Notes conform to the terms of the Servicing Agreement, the Offering Document and this Insurance Agreement.

**Section 3.02**  *Payment of Fees and Premium.*

        (a)    *Legal and Accounting Fees.*  The Sponsor shall pay or cause to be paid to the Class V-A Note Insurer, at the Closing Date, legal fees, due diligence fees and accounting fees incurred by the Class V-A Note Insurer in connection with the issuance of the Policy.  The legal fees shall not exceed $30,000 and the due diligence fees shall not exceed $2,000, in connection with the issuance of the Policy.

        (b)    *Premium.*

        (i)    In consideration of the issuance by the Class V-A Note Insurer of the Policy, the Class V-A Note Insurer shall be entitled to receive the Premium, in the amount set forth herein and in the Policy, as and when due and from the funds specified in Section 5.01 of the Servicing Agreement.

        (ii)    The Premium paid under the Servicing Agreement shall be nonrefundable without regard to whether the Class V-A Note Insurer makes any payment under the Policy or any other circumstances relating to the Class V-A Notes or provision being made for payment of the Class V-A Notes prior to maturity.

    **Section 3.03**  *Reimbursement Obligation.*  (a) As and when due in accordance with and from the funds specified in Section 5.01 of the Servicing Agreement, the Class V-A Note Insurer shall be entitled to reimbursement for any payment made by the Class V-A Note Insurer under the Policy, which reimbursement shall be due and payable on the date that any amount is paid under the Policy, in an amount equal to the amount to be so paid and all amounts previously paid that remain unreimbursed, together with interest on any and all such amounts remaining unreimbursed (to the extent permitted by law, if in respect of any unreimbursed amounts representing interest) from the date such amounts became due until paid in full (after as well as before judgment), at a rate of interest equal to the Late Payment Rate.

        (b)    The Trust agrees to pay to the Class V-A Note Insurer any and all reasonable charges, fees, costs and expenses that the Class V-A Note Insurer may reasonably pay or incur, including reasonable attorneys' and accountants' fees and expenses, in connection with (i) the enforcement, defense or preservation of any rights in respect of any of the Operative Documents, including defending, monitoring or participating in any litigation or proceeding (including any insolvency proceeding in respect of any Transaction participant or any affiliate thereof) relating to any of the Operative Documents, any party to any of the Operative Documents (in its capacity as such a party) or the Transaction or (ii) any amendment, waiver or other action with respect to, or related to, any Operative Document, whether or not executed or completed.

        (c)    The Trust agrees to pay to the Class V-A Note Insurer interest (without duplication) on any and all amounts described in subsection 3.03(b) and Section 3.02 from the date such amounts become due or, in the case of subsection 3.03(b) are incurred or paid by the Class V-A Note Insurer until payment thereof in full (after as well as before judgment), at the Late Payment Rate.

(d)     The Class V-A Note Insurer shall have no right to set-off payments to be made under the Policy against payments to be made to the Class V-A Note Insurer by the Trust (or any person or organization acting on their behalf) or any Class V-A Noteholder or any affiliate, officer or director of any of them.

**Section 3.04** *Indemnification.* (a) In addition to any and all of the Class V-A Note Insurer's rights of reimbursement, indemnification, subrogation and to any other rights of the Class V-A Note Insurer pursuant hereto or under law or in equity, the Sponsor agrees to pay, and to protect, indemnify and save harmless, the Class V-A Note Insurer and its officers, directors, shareholders, employees, agents and each Person, if any, who controls the Class V-A Note Insurer within the meaning of either Section 15 of the Securities Act or Section 20 of the Securities Exchange Act from and against, any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or relating to the breach by the Sponsor or the Depositor of any of the representations or warranties made by it contained in Section 2.01 or arising out of or relating to the transactions contemplated by the Operative Documents by reason of:

(i)     any omission or action (other than of or by the Class V-A Note Insurer or the Underwriter) in connection with the offering, issuance or delivery of the Class V-A Notes by the Depositor, other than those covered by subparagraph (v) below;

(ii)     the misfeasance or malfeasance of, or gross negligence or theft committed by, any director, officer, employee or agent of the Sponsor or the Depositor, in connection with any Transaction arising from or relating to the Operative Documents;

(iii)     the violation by the Sponsor or the Depositor of any federal or state law, rule or regulation, or any judgment, order or decree applicable to it, which violation reasonably could result in a material adverse change as described in clause (i) of the definition of Material Adverse Change;

(iv)     the breach by the Sponsor or the Depositor of any representation, warranty, or covenant under any of the Operative Documents or the occurrence, in respect of the Sponsor or the Depositor, under any of the Operative Documents of any "Event of Default"; or

(v)     any untrue statement or alleged untrue statement of a material fact contained in the Offering Document or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading; *provided, however,* that this Section 3.04(a)(v) does not cover the Class V-A Note Insurer Information or the Underwriter Information.

(b)     The Class V-A Note Insurer agrees to pay, and to protect, indemnify and save harmless, the Sponsor and the Depositor and their respective officers, directors, shareholders, employees, agents and each Person, if any, who controls the Sponsor, the Underwriter and the Depositor within the meaning of either Section 15 of the Securities Act or

Section 20 of the Securities Exchange Act from and against, any and all claims, losses, liabilities (including penalties), actions, suits, judgments, demands, damages, costs or expenses (including reasonable fees and expenses of attorneys, consultants and auditors and reasonable costs of investigations) of any nature arising out of or by reason of (i) any untrue statement or alleged untrue statement of a material fact contained in the Class V-A Note Insurer Information or any omission or alleged omission to state in the Class V-A Note Insurer Information a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading; *provided, however,* that the incorporation by reference of the Class V-A Note Insurer's financial statements in the Offering Document shall not constitute an omission from the Class V-A Note Insurer Information for purposes of this paragraph, (ii) any failure of the Class V-A Note Insurer to make a payment required to be made under the Policy or (iii) a breach of any of the representations and warranties of the Class V-A Note Insurer contained in Section 2.04.

(c)     If any action or proceeding (including any governmental investigation) shall be brought or asserted against any Person (individually, an "Indemnified Party" and, collectively, the "Indemnified Parties") in respect of which the indemnity provided in Section 3.04(a) or (b) may be sought from the Sponsor or the Depositor, on the one hand, or the Class V-A Note Insurer, on the other (each, an "Indemnifying Party") hereunder, each such Indemnified Party shall promptly notify the Indemnifying Party in writing, and the Indemnifying Party shall assume the defense thereof, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of all expenses. The omission to so notify the Indemnifying Party will not relieve it from any liability which it may have to any Indemnified Party except to the extent the Indemnifying Party is prejudiced thereby. The Indemnified Party shall have the right to employ separate counsel in any such action and to participate in the defense thereof at the expense of the Indemnified Party; *provided, however,* that the fees and expenses of such separate counsel shall be at the expense of the Indemnifying Party if (i) the Indemnifying Party has agreed in writing to pay such fees and expenses, (ii) the Indemnifying Party shall have failed within a reasonable period of time to assume the defense of such action or proceeding and employ counsel reasonably satisfactory to the Indemnified Party in any such action or proceeding or (iii) the named parties to any such action or proceeding (including any impleaded parties) include both the Indemnified Party and the Indemnifying Party, and the Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or additional to those available to the Indemnifying Party (in which case, if the Indemnified Party notifies the Indemnifying Party in writing that it elects to employ separate counsel at the expense of the Indemnifying Party, the Indemnifying Party shall not have the right to assume the defense of such action or proceeding on behalf of such Indemnified Party, it being understood, however, that the Indemnifying Party shall not, in connection with any one such action or proceeding or separate but substantially similar or related actions or proceedings in the same jurisdiction arising out of the same general allegations or circumstances, be liable for the reasonable fees and expenses of more than one separate firm of attorneys at any time for the Indemnified Parties, which firm shall be designated in writing by the Indemnified Party and shall be reasonably satisfactory to the Indemnifying Party). The Indemnifying Party shall not be liable for any settlement of any such action or proceeding effected without its written consent, which consent shall not be unreasonably withheld, conditioned or delayed, but, if settled with its written consent, or if there is a final judgment for the plaintiff in any such action or proceeding with respect to which the

Indemnifying Party shall have received notice in accordance with this subsection (c), the Indemnifying Party agrees to indemnify and hold the Indemnified Parties harmless from and against any loss or liability by reason of such settlement or judgment. Notwithstanding anything in this paragraph to the contrary, the consent of such Indemnified Party shall not be required if such settlement fully discharges, with prejudice against the plaintiff, the claim or action against such Indemnified Party.

(d)  To provide for just and equitable contribution if the indemnification provided by the Indemnifying Party is determined to be unavailable or insufficient to hold harmless any Indemnified Party (other than due to application of this Section), each Indemnifying Party shall contribute to the losses incurred by the Indemnified Party on the basis of the relative fault of the Indemnifying Party, on the one hand, and the Indemnified Party, on the other hand.

The relative fault of each Indemnifying Party, on the one hand, and each Indemnified Party, on the other, shall be determined by reference to, among other things, whether the breach of, or alleged breach of, any of its representations and warranties set forth within the control of, the Indemnifying Party or the Indemnified Party, and the parties relative intent, knowledge, access to information and opportunity to correct or prevent such breach.

No Person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any Person who was not guilty of such fraudulent misrepresentation.

Section 3.05  *Payment Procedure*.  In the event of any payment by the Class V-A Note Insurer, the Sponsor and the Depositor agree to accept the voucher or other evidence of payment as prima facie evidence of the propriety thereof and the liability, if any, described in Section 3.03 therefor to the Class V-A Note Insurer.  All payments to be made to the Class V-A Note Insurer under this Insurance Agreement shall be made to the Class V-A Note Insurer in lawful currency of the United States of America in immediately available funds at the notice address for the Class V-A Note Insurer as specified in the Servicing Agreement on the date when due or as the Class V-A Note Insurer shall otherwise direct by written notice to the other parties hereto.  In the event that the date of any payment to the Class V-A Note Insurer or the expiration of any time period hereunder occurs on a day that is not a Business Day, then such payment or expiration of time period shall be made or occur on the next succeeding Business Day with the same force and effect as if such payment was made or time period expired on the scheduled date of payment or expiration date.

ARTICLE IV
FURTHER AGREEMENTS

Section 4.01  *Effective Date; Term of the Insurance Agreement*.  This Insurance Agreement shall take effect on the Closing Date and shall remain in effect until the later of (a) such time as the Class V-A Note Insurer is no longer subject to a claim under the Policy and the Policy shall have been surrendered to the Class V-A Note Insurer for cancellation and (b) all amounts payable to the Class V-A Note Insurer by the Sponsor or the Depositor hereunder or from any other source hereunder or under the Operative Documents and all amounts payable

under the Class V-A Notes have been paid in full; *provided, however,* that the provisions of Sections 3.02, 3.03 and 3.04 hereof shall survive any termination of this Insurance Agreement.

**Section 4.02** *Further Assurances and Corrective Instruments.* (a) Except at such times as a default in payment under the Policy shall exist or shall have occurred, none of the Sponsor or the Depositor shall grant any waiver of rights under any of the Operative Documents to which any of them is a party without the prior written consent of the Class V-A Note Insurer, which shall not be unreasonably withheld, conditioned or delayed and any such waiver without prior written consent of the Class V-A Note Insurer shall be null and void and of no force or effect.

(b)    To the extent permitted by law, each of the Sponsor and the Depositor agrees that it will, from time to time, following good faith negotiations in connection therewith, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such supplements hereto and such further instruments as the Class V-A Note Insurer may reasonably request and as may be required in the Class V-A Note Insurer's reasonable judgment to effectuate the intention of or facilitate the performance of this Insurance Agreement.

**Section 4.03** *Obligations Absolute.* (a) The obligations of the Sponsor and the Depositor hereunder shall be absolute and unconditional and shall be paid or performed strictly in accordance with this Insurance Agreement under all circumstances irrespective of:

(i)    any lack of validity or enforceability of any of the Operative Documents or the Notes, or any amendment or other modifications of, or waiver, with respect to any of the Operative Documents or the Notes that have not been approved by the Class V-A Note Insurer;

(ii)    any exchange or release of any other obligations hereunder;

(iii)    the existence of any claim, setoff, defense, reduction, abatement or other right that the Sponsor or the Depositor may have at any time against the Class V-A Note Insurer or any other Person;

(iv)    any document presented in connection with the Policy proving to be forged, fraudulent, invalid or insufficient in any respect or any statement therein being untrue or inaccurate in any respect;

(v)    any payment by the Class V-A Note Insurer under the Policy against presentation of a certificate or other document that does not strictly comply with terms of the Policy;

(vi)    any failure of the Sponsor or the Depositor to receive the proceeds from the sale of the Notes; and

(vii)    any other circumstances, other than payment in full, that might otherwise constitute a defense available to, or discharge of, the Sponsor or the Depositor in respect of any Operative Document.

(b)    The Sponsor and the Depositor and any and all others who are now or may become liable for all or part of the obligations of the Sponsor or the Depositor under this Insurance Agreement, to the extent permitted by law, waive and renounce the right to assert as a defense to the performance of their respective obligations each of the following: (i) any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness and obligations evidenced by any Operative Document or by any extension or renewal thereof; (ii) presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor and notice of protest; (iii) all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default or enforcement of any payment hereunder, except as required by the Operative Documents; and (iv) all rights of abatement, diminution, postponement or deduction, or to any defense other than payment, or to any right of setoff or recoupment arising out of any breach under any of the Operative Documents, by any party thereto or any beneficiary thereof, or out of any obligation at any time owing to the Sponsor or the Depositor.

(c)    The Sponsor and the Depositor and any and all others who are now or may become liable for all or part of the obligations of the Sponsor or the Depositor under this Insurance Agreement, to the extent permitted by law, agree to be bound by this Insurance Agreement and (i) agree that any consent, waiver or forbearance hereunder with respect to an event shall operate only for such event and not for any subsequent event; (ii) consent to any and all extensions of time that may be granted by the Class V-A Note Insurer with respect to any payment hereunder or other provisions hereof and to the release of any security at any time given for any payment hereunder, or any part thereof, with or without substitution, and to the release of any Person or entity liable for any such payment; and (iii) consent to the addition of any and all other makers, endorsers, guarantors and other obligors for any payment hereunder, and to the acceptance of any and all other security for any payment hereunder, and agree that the addition of any such obligors or security shall not affect the liability of the parties hereto for any payment hereunder.

(d)    Nothing herein shall be construed as prohibiting the Sponsor or the Depositor from pursuing any rights or remedies it may have against any Person in a separate legal proceeding.

**Section 4.04**  *Assignments; Reinsurance; Third-Party Rights*.    (a) This Insurance Agreement shall be a continuing obligation of the parties hereto and shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns. The Sponsor and the Depositor may not assign any of their respective rights under this Insurance Agreement, or delegate any of their respective duties hereunder, without the prior written consent of the Class V-A Note Insurer, which consent shall not be unreasonably withheld. Any assignments made in violation of this Insurance Agreement shall be null and void.

(b)    The Class V-A Note Insurer shall have the right to give participations in its rights under this Insurance Agreement and to enter into contracts of reinsurance with respect to the Policy upon such terms and conditions as the Class V-A Note Insurer may in its discretion determine; *provided, however,* that no such participation or reinsurance agreement or arrangement shall relieve the Class V-A Note Insurer of any of its obligations hereunder or under

the Policy, nor shall the Sponsor or the Depositor be required to deal directly with any such parties.

(c)     Except as provided herein with respect to participants and reinsurers, nothing in this Insurance Agreement shall confer any right, remedy or claim, express or implied, upon any Person, including, particularly, any Holder, other than the Class V-A Note Insurer against the Sponsor or the Depositor, or the Sponsor or the Depositor against the Class V-A Note Insurer, and all the terms, covenants, conditions, promises and agreements contained herein shall be for the sole and exclusive benefit of the parties hereto and their successors and permitted assigns. No Holder shall have any right to payment from any Premiums paid or payable hereunder or under the Servicing Agreement or from any amounts paid by the Sponsor pursuant to Sections 3.02 or 3.03.

**Section 4.05** *Liability of the Class V-A Note Insurer*. Neither the Class V-A Note Insurer nor any of its officers, directors or employees shall be liable or responsible for: (a) the use that may be made of the Policy by the Trustee or for any acts or omissions of the Trustee in connection therewith; or (b) the validity, sufficiency, accuracy or genuineness of documents delivered to the Class V-A Note Insurer in connection with any claim under the Policy, or of any signatures thereon, even if such documents or signatures should in fact prove to be in any or all respects invalid, insufficient, fraudulent or forged (unless the Class V-A Note Insurer shall have actual knowledge thereof). In furtherance and not in limitation of the foregoing, the Class V-A Note Insurer may accept documents that appear on their face to be in order, without responsibility for further investigation.

**Section 4.06** *Subrogation*. To the extent of any payments under the Policy, the Class V-A Note Insurer shall be fully subrogated to any remedies against the Sponsor or the Depositor or in respect of the HELOC Mortgage Loans available to the Trustee under the Operative Documents.

ARTICLE V
DEFAULTS AND REMEDIES

**Section 5.01** *Defaults*. The occurrence of any of the following shall constitute an Event of Default hereunder:

(a)     Any representation or warranty made by the Sponsor or the Depositor hereunder or under the Operative Documents, or in any certificate furnished hereunder or under the Operative Documents, shall prove to be untrue or incorrect in any material respect provided that if the Depositor or the Sponsor effectively cures such defect within the related time period, such defect shall not be an Event of Default hereunder;

(b)     (i) the Sponsor or the Depositor shall fail to pay when due any amount payable by the Sponsor or the Depositor hereunder or (ii) a legislative body has enacted any law that declares or a court of competent jurisdiction shall find or rule that this Insurance Agreement or any other Operative Document is not valid and binding on the Sponsor or the Depositor; *provided* that, with respect to any law or judicial action within the scope of this clause (ii), the Sponsor and the Depositor shall have 30 days to reinstate the binding effect of this Insurance

Agreement or any other Operative Document; the Class V-A Note Insurer agrees to take such actions as may be reasonably requested of it to facilitate the reinstatement of such binding effect;

(c)    Any failure on the part of the Sponsor or the Depositor duly to observe or perform in any material respect any other of the covenants or agreements on the part of the Sponsor or the Depositor contained in this Insurance Agreement (other than the covenants or agreements contained in Sections 2.02(a), a breach of any of which shall constitute an immediate Event of Default) which continues unremedied for a period of 30 days after the date on which written notice of such failure, requiring the same to be remedied, shall have been given to the Sponsor by the Class V-A Note Insurer (including, without limitation, any covenants of the Sponsor or the Depositor made as to the Issuing Entity or the Trust Estate);

(d)    A decree or order of a court or agency or supervisory authority having jurisdiction in the premises in an involuntary case under any present or future federal or state bankruptcy, insolvency or similar law or the appointment of a conservator or receiver or liquidator or other similar official in any bankruptcy, insolvency, readjustment of debt, marshaling of assets and liabilities or similar proceedings, or for the winding-up or liquidation of its affairs, shall have been entered against the Sponsor or the Depositor and such decree or order shall have remained in force undischarged or unstayed for a period of 90 consecutive days;

(e)    The Sponsor or the Depositor shall consent to the appointment of a conservator or receiver or liquidator or other similar official in any bankruptcy, insolvency, readjustment of debt, marshaling of assets and liabilities or similar proceedings of or relating to the Sponsor or the Depositor or of or relating to all or substantially all of their respective property;

(f)    The Sponsor or the Depositor shall admit in writing its inability to pay its debts generally as they become due, file a petition to take advantage of or otherwise voluntarily commence a case or proceeding under any applicable bankruptcy, insolvency, reorganization or other similar statute, make an assignment for the benefit of its creditors or voluntarily suspend payment of its obligations.

**Section 5.02** *Remedies; No Remedy Exclusive.* (a) Upon the occurrence of an Event of Default, the Class V-A Note Insurer may exercise any one or more of the rights and remedies set forth below:

(i)    exercise any rights and remedies under the Servicing Agreement in accordance with the terms thereof or direct the Trustee to exercise such rights and remedies in accordance with the terms of the Servicing Agreement; or

(ii)    take whatever action at law or in equity as may appear necessary or desirable in its judgment to collect the amounts, if any, then due under this Insurance Agreement or any other Operative Document or to enforce performance and observance of any obligation, agreement or covenant of the Sponsor or the Depositor under this Insurance Agreement or any other Operative Documents.

(b)    Unless otherwise expressly provided, no remedy herein conferred or reserved is intended to be exclusive of any other available remedy, but each remedy shall be

cumulative and shall be in addition to other remedies given under this Insurance Agreement, the Servicing Agreement or existing at law or in equity. No delay or omission to exercise any right or power accruing under this Insurance Agreement or the Servicing Agreement upon the happening of any event set forth in Section 5.01 shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Class V-A Note Insurer to exercise any remedy reserved to the Class V-A Note Insurer in this Article, it shall not be necessary to give any notice, other than such notice as may be required by this Article.

(c)    The occurrence of an Event of Default shall not affect the obligations of the Class V-A Note Insurer under the Policy.

**Section 5.03**  *Waivers*. (a) No failure by the Class V-A Note Insurer to exercise, and no delay by the Class V-A Note Insurer in exercising, any right hereunder shall operate as a waiver thereof. The exercise by the Class V-A Note Insurer of any right hereunder shall not preclude the exercise of any other right, and the remedies provided herein to the Class V-A Note Insurer are declared in every case to be cumulative and not exclusive of any remedies provided by law or equity.

(b)    The Class V-A Note Insurer shall have the right, to be exercised in its complete discretion, to waive any Event of Default hereunder, by a writing setting forth the terms, conditions and extent of such waiver signed by the Class V-A Note Insurer and delivered to the Sponsor. Unless such writing expressly provides to the contrary, any waiver so granted shall extend only to the specific event or occurrence which gave rise to the Event of Default so waived and not to any other similar event or occurrence which occurs subsequent to the date of such waiver.

## ARTICLE VI
### MISCELLANEOUS

**Section 6.01**  *Amendments, Etc.* This Insurance Agreement may be amended, modified, supplemented or terminated only by written instrument or written instruments signed by the parties hereto. The Depositor agrees to provide a copy of any amendment to this Insurance Agreement promptly to the rating agencies maintaining a rating on the Notes. No act or course of dealing shall be deemed to constitute an amendment, modification, supplement or termination hereof.

**Section 6.02**  *Notices*. All demands, notices and other communications to be given hereunder shall be in writing (except as otherwise specifically provided herein) and shall be mailed by registered mail or personally delivered and telecopied to the recipient as follows:

(a)     To the Class V-A Note Insurer:

> CIFG Assurance North America, Inc.
> 825 Third Avenue, 6th Floor
> New York, New York 10022
> Attention: General Counsel
> Facsimile: (212) 909-3959

> (in each case in which notice or other communication to the Class V-A Note Insurer refers to an Event of Default, a claim on the Policy or with respect to which failure on the part of the Class V-A Note Insurer to respond shall be deemed to constitute consent or acceptance, then a copy of such notice or other communication should also be sent to the attention of the general counsel of the Depositor and, in all cases, both any original and all copies shall be marked to indicate "URGENT MATERIAL ENCLOSED.")

(b)     To the Sponsor:

> American Home Mortgage Corp.
> 538 Broadhollow Road
> Melville, New York  11747
> Attention: General Counsel
> Facsimile: (516) 949-3929

(c)     To the Depositor:

> American Home Mortgage Securities LLC
> 538 Broadhollow Road
> Melville, New York  11747
> Attention: General Counsel
> Facsimile: (516) 949-3929

A party may specify an additional or different address or addresses by writing mailed or delivered to the other parties as aforesaid.  All such notices and other communications shall be effective upon receipt.

**Section 6.03**  *Severability*.  In the event that any provision of this Insurance Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, the parties hereto agree that such holding shall not invalidate or render unenforceable any other provision hereof. The parties hereto further agree that the holding by any court of competent jurisdiction that any remedy pursued by any party hereto is unavailable or unenforceable shall not affect in any way the ability of such party to pursue any other remedy available to it.

**Section 6.04**  *Governing Law*.  This Insurance Agreement shall be construed in accordance with and governed by the substantive laws of the State of New York applicable to agreements made and to be performed in the State of New York and the obligations, rights and remedies of the parties hereto and the Noteholders shall be determined in accordance with such

laws without regard to the conflicts of laws principals thereof (other than Section 5-1401 of the General Obligations Laws).

**Section 6.05** *Consent to Jurisdiction.* (a) The parties hereto hereby irrevocably submit to the non-exclusive jurisdiction of the United States District Court for the Southern District of New York and any court in the State of New York located in the City and County of New York, and any appellate court from any thereof, in any action, suit or proceeding brought against it and to or in connection with any of the Operative Documents or the Transaction or for recognition or enforcement of any judgment, and the parties hereto hereby irrevocably and unconditionally agree that all claims in respect of any such action or proceeding may be heard or determined in such New York state court or, to the extent permitted by law, in such federal court. The parties hereto agree that a final unappealable judgment in any such action, suit or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. To the extent permitted by applicable law, the parties hereto hereby waive and agree not to assert by way of motion, as a defense or otherwise in any such suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such courts, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that the related documents or the subject matter thereof may not be litigated in or by such courts.

(b)     To the extent permitted by applicable law, the parties hereto shall not seek and hereby waive the right to any review of the judgment of any such court by any court of any other nation or jurisdiction which may be called upon to grant an enforcement of such judgment.

(c)     Nothing contained in this Insurance Agreement shall limit or affect any party's right to serve process in any other manner permitted by law or to start legal proceedings relating to any of the Operative Documents against any other party or its properties in the courts of any jurisdiction.

**Section 6.06** *Consent of the Class V-A Note Insurer.* In the event that the consent of the Class V-A Note Insurer is required under any of the Operative Documents, the determination whether to grant or withhold such consent shall be made by the Class V-A Note Insurer in its sole discretion without any implied duty towards any other Person, except as otherwise expressly provided therein.

**Section 6.07** *Counterparts.* This Insurance Agreement may be executed in counterparts by the parties hereto, and all such counterparts shall constitute one and the same instrument.

**Section 6.08** *Headings.* The headings of Articles and Sections and the Table of Contents contained in this Insurance Agreement are provided for convenience only. They form no part of this Insurance Agreement and shall not affect its construction or interpretation.

**Section 6.09** *Trial by Jury Waived.* Each party hereby waives, to the fullest extent permitted by law, any right to a trial by jury in respect of any litigation arising directly or indirectly out of, under or in connection with any of the Operative Documents or any of the transactions contemplated thereunder. Each party hereto (A) certifies that no representative, agent or attorney of any party hereto has represented, expressly or otherwise, that it would not, in

the event of litigation, seek to enforce the foregoing waiver and (B) acknowledges that it has been induced to enter into the Operative Documents to which it is a party by, among other things, this waiver.

Section 6.10 *Limited Liability.* No recourse under any Operative Document or the Underwriting Agreement shall be had against, and no personal liability shall attach to, any officer, employee, director, affiliate or shareholder of any party hereto, as such, by the enforcement of any assessment or by any legal or equitable proceeding, by virtue of any statute or otherwise in respect of any of the Operative Documents or the Underwriting Agreement, the Notes or the Policy, it being expressly agreed and understood that each Operative Document or the Underwriting Agreement is solely a corporate obligation of each party hereto, and that any and all personal liability, either at common law or in equity, or by statute or constitution, of every such officer, employee, director, affiliate or shareholder for breaches of any party hereto of any obligations under any Operative Document is hereby expressly waived as a condition of and in consideration for the execution and delivery of this Insurance Agreement.

Section 6.11 *Entire Agreement.* This Insurance Agreement and the Policy set forth the entire agreement between the parties with respect to the subject matter hereof and thereof, and this Insurance Agreement supersedes and replaces any agreement or understanding that may have existed between the parties prior to the date hereof in respect of such subject matter.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

CIFG ASSURANCE NORTH AMERICA, INC.,
as Class V-A Note Insurer

By:_____
    Name:
    Title:       **Robert M. Drillings**
              **Managing Director and Assistant Secretary**

AMERICAN HOME MORTGAGE CORP.,
as Sponsor

By:_____
    Name:
    Title:

AMERICAN HOME MORTGAGE SECURITIES LLC,
as Depositor

By:_____
    Name:
    Title:

IN WITNESS WHEREOF, the parties hereto have executed this Agreement, all as of the day and year first above mentioned.

CIFG ASSURANCE NORTH AMERICA, INC.,
as Class V-A Note Insurer

By:_____
    Name:
    Title:

AMERICAN HOME MORTGAGE CORP.,
as Sponsor

By:_____
    Name:    Alan B. Horn
    Title:    Executive Vice President
            General Counsel & Secretary

AMERICAN HOME MORTGAGE SECURITIES LLC,
as Depositor

By:_____
    Name:    Alan B. Horn
    Title:    Executive Vice President