# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------------- x
In re:                                              :   Chapter 11
                                                    :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,              :   Case No. 07-11047 (CSS)
a Delaware corporation, et al. ,¹                   :
                                                    :   Jointly Administered
      Debtors.                                      :
                                                    :   Ref. Docket No.  5447
                                                    :
-------------------------------------------------------------------- x
```

## SUPPLEMENTAL DECLARATION OF EILEEN WANERKA IN SUPPORT OF DEBTORS' FIFTEENTH OMNIBUS OBJECTIONS TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1

I, Eileen Wanerka, pursuant to 28 U.S.C. §1746, declare:

1.       I am the Director of Claims Administration for the above-captioned debtors (the "Debtors") and the AHM Liquidating Trust (the "Plan Trust"), which was established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan").   In this capacity, I am one of the persons responsible for overseeing the claims reconciliation and objection process in the Debtors' chapter 11 cases.  I submit this Supplemental Declaration to supplement the declaration filed in support of the Debtors' Fifteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 [Docket No. 5447] (the "Objection").

2.       This Supplemental Declaration is intended to provide additional legal, factual and documentary support for the relief requested in the Objection with respect to the claim addressed

---

[1]       The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp. , a New York corporation (8580).  The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

herein. The Objection has been previously adjourned with respect to this Claim (as defined below). The Plan Trust has conducted a further review of (i) the Debtors' books and records and (ii) the information provided in the Claimant's Response to Debtors' Fifteenth Omnibus (Substantive) Objection to Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3003 and 3007, and Local Rule 3007-1 [D.I. 5814] (the "Response"), and have identified several facts and documents that lend additional support to the Objection, true and correct copies of which are attached hereto as exhibits. Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust reserves the right to supplement this declaration and the right to further object to the Claim on any substantive or non-substantive grounds.

3.      On April 30, 2008, Shervonne Powell ("Ms. Powell"), through her counsel, filed claim number 10340 (the "Claim") pursuant to which Ms. Powell asserts a secured claim for $47,514.00 and an unsecured priority claim for $8,200.00 for alleged deficiencies regarding work performed on her home and paid for by the Debtors pursuant to Ms. Powell's construction loan. A copy of the Claim is attached as Exhibit A.

4.      Pursuant to the Objection, the Debtors objected to the Claim on the basis that the Debtors had no liability for the Claim because Ms. Powell authorized all distributions to the contractors.

5.      On September 8, 2008, Ms. Powell, through her counsel, filed the Response, a copy of which is attached as Exhibit B, pursuant to which Ms. Powell asserted, among other things, that the Debtors had distributed funds to the contractor without receiving a copy of the Contractor's permit or obtaining an inspection of the work performed. Ms. Powell further submits that the work performed was completed by an unlicensed contractor, and Ms. Powell suffered damages relating to the work of the unlicensed contractor. Ms. Powell attaches email

requests from American Home Mortgage Corp. ("AHM Corp.") for a copy of the Builder's Permit to her Response.

6.      After the Response was filed, the parties entered into discussions in an attempt to reach a consensual resolution of the Claim. Despite these discussions, the parties did not reach a resolution regarding the Claim.

7.      Contrary to Ms. Powell's assertions, by the Construction Loan Agreement,[2] a copy of which is attached as Exhibit C, Ms. Powell expressly (i) acknowledged that the Lender made no representation or warranty regarding the quality of the work performed, and (ii) released any claims arising from the Lender's inspections. Specifically, section 3.10 of the Construction Loan Agreement provides, in pertinent part:

> **Borrower further acknowledges and agrees that in making or causing to be made any inspections or in making Advances pursuant to inspections, Lender does not make any representation or warranty whatsoever to Borrower or to any other party as to the existence, quality or quantity of the work performed on the Project or the materials incorporated into the Project. Borrower hereby releases Lender from any and all claims Borrower may have, now or in the future, with respect to relating to, or in any way arising out of Lender's inspections of the Project, and Borrower further agrees to save, defend and indemnify Lender from glad [sic] against any such claims or demands of third parties with respect to relating to or in any way arising out of any such inspections.**

8.      Not only did Ms. Powell release this exact type of claim, but Ms. Powell affirmatively requested and facilitated the approval of each of the Advances made by AHM Corp. The Debtors' records indicate that, in addition to the amounts paid out at closing, AHM Corp. made two Advances: (1) $11,199.50 on July 18, 2007, and (2) $10,214.50 on September 19, 2007. A copy of the Debtors' transaction history is attached hereto as Exhibit D. In addition to submitting the requisite Requests for Advance, Ms. Powell worked with AHM Corp. to make sure that the Advances were paid. First, when advised that she needed an email requesting the

---

[2]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Construction Loan Agreement.

use of her contingency funds before the July 18, 2007 Advance could be made, Ms. Powell immediately provided the authorization.   A copy of the e-mail request and subsequent authorization is attached hereto as Exhibit E.   Second, Ms. Powell facilitated the September 19, 2007 Advance by specifically working with AHM Corp. to obtain the required documents.   A copy of the e-mail chain between Ms. Powell and Ms. Tillett of AHM Corp. is attached hereto as Exhibit F.

9.     Ms. Powell's allegation that the Debtors neither performed inspections nor obtained a copy of the contractor's license is inaccurate.   Prior to each Advance being made, AHM Corp. obtained an inspection from the Construction Inspector.   Copies of the inspections are attached hereto as Exhibit G.   As indicated in her Response, Ms. Powell was not privy to, and did not rely on, the inspections when seeking Advances.

10.     Ms. Powell also asserts that AHM Corp. did not have documentation regarding her contractor's license and attaches certain emails of one of the Debtors' employees as support for this allegation.   Ms. Powell appears to confuse the terms constructor's license and a builder's permit.   Prior to the closing of Ms. Powell's loan, Ms. Powell (not the Debtors) selected American Capital Contractors ("ACC") as the contractor for the project.   Also prior to closing, AHM Corp. received a copy of ACC's license.   A true and correct copy of the license, located in the Debtors' loan file, is attached hereto as Exhibit H.   Upon information and belief, ACC was licensed throughout the construction process.

11.     A building permit, which is issued by the municipality and authorizes the work to be performed on a particular property, is required only if requested by the Lender under Section 1.05(b)(vi), and is not a mandatory condition to closing the loan.   The Lender may waive such a request, as it did here.

066585.1001

12.    Finally, Ms. Powell asserts that she was unable to obtain certain loan-related information, including copies of the inspections. To support this allegation, Ms. Powell attaches a complaint letter dated October 18, 2007 (the "Complaint Letter") and also states in her Response that she did not receive copies of the inspections or otherwise receive a response from the Debtors but for an e-mail dated October 23, 2007, requesting a copy of the builder's permit. As a result, Ms. Powell was "left in the dark" regarding monies released to Constractors or whether inspections were done. (Resp., ¶ 5.) The Complaint Letter also asserts that the basis for Ms. Powell's decision to change contractors is directly attributable to the financial issues surrounding the Debtors. Each of these allegations is untrue.

13.    As set forth in the e-mail chain between Ms. Powell and Ms. Tillett beginning October 14, 2007 through October 19, 2007, attached hereto as Exhibit I, Ms. Powell advised Ms. Tillett that her decision to change builders was based on the contractor's "workmanship and work ethics." Contrary to Ms. Powell's claim that she had not heard from Ms. Tillett in two days, the e-mail chain also shows that, on October 16, 2007, Ms. Tillett had requested and received Ms. Powell's fax number to send Ms. Powell certain requested information. The day after the Complaint Letter was sent, Ms. Tillett e-mailed Ms. Powell requesting confirmation that she received copies of the inspections. On the same day, and one day after the Complaint Letter was sent, Ms. Powell confirmed receipt of the inspections.

14.    With respect to Ms. Powell's requests regarding costs, tracking these amounts are the responsibility of the borrower as set forth in sections 1.05(b)(iii), 3.03, 3.04 and 3.15(b) of the Construction Loan Agreement. Additionally, Ms. Powell received monthly interest billing statements, generated on the 20th of each month (as indicated in the AHM letter dated June 16, 2007 attached to her Claim). These billing statements use the outstanding balance of the

construction loan to determine the interest payment, and consequently, Ms. Powell received information regarding her outstanding balance each month.  Moreover, Ms. Powell attached a summary of interested payments and calculation of costs, including construction draws, to her Claim.

15.     For the foregoing reasons, as well as those set forth in the Objection, the Plan Trust submits that the Debtors have no liability to Ms. Powell.

16.     Furthermore, Ms. Powell has incorrectly asserted her claim as either priority or secured and has provided no basis for either.  Ms. Powell paid off her loan on or about June 5, 2008, and has no security interest in any property of the Debtors, their estates or the Plan Trust or any right to setoff.[3]

*[Signature page follows]*

---

[3]     Lastly, Ms. Powell failed to indicate the debtor entity against which this claim was being asserted.  As her construction loan was funded and handled by Debtor American Home Mortgage Corp. (Case No. 07-11051), any claim relating to such loan should be assigned against that Debtor.

01:12408691.3

066585.1001

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct to the best of my knowledge and belief.

Executed on August 30, 2012

Eileen Wanerka
AHM Liquidating Trust
Director of Claims Administration

**EXHIBIT A**

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE<br>American Home Mortgage Claims Processing Center<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |
|---|---|

| In Re: *<br>American Home Mortgage Holdings, Inc., et al.<br>Debtors.<br>Name of Debtor Against Which Claim is Held | Chapter 11<br>Case No. 07-11047 (CSS)<br>Jointly Administered<br>Case No. of Debtor | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

**Name and address of Creditor :** (and name and address where notices should be sent if different from Creditor)

AHM (MERGE2.DBF,SCHED_NO)  SCH #:    80326*****
SHERVONNE POWELL
18902 MILLS CHOICE RD, #4
GAITHERSBURG, MD 20886

*Ellen Opper-Weiner, Esq.*
*3 Bethesda Metro Center - Suite 700*
*Bethesda MD 20814*

Telephone number: *(301) 664-8434*
Email Address: *EOWLAW @ aol.com*

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

Filed: USBC - District of Delaware
American Home Mortgage Holdings, Inc., Et Al.
07-11047 (CSS)          0000010340

0000010340

**Account or other number by which creditor identifies debtor:**

Check here if this claim:
☐ replaces    ☐ amends a previously filed claim, dated:_____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☒ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other *Payments to Custodian for* (explain) *indefinite work payments which must be re-done february call for mortgage loan brokers for contract*

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last Four Digits of your SS#: _7_ _2_ _2_ _4_

Unpaid compensation for services performed

from _____ to _____
       (date)              (date)

**2. Date debt was incurred:** *6/15/07*

**3. If court judgment, date obtained:** _____

**4. Total Amount of Claim at Time Case Filed:** $ _____ + *47,514.00* + *8,200.00* = *55,714.00*
                            (unsecured nonpriority)    (secured)    (unsecured priority)    (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☒ Real Estate    ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $ *170,000*
Amount of arrearage and other charges at time case filed included in
secured claim, if any: $ *0*

**6. Unsecured Nonpriority Claim:** $ _____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(1).
☐ Wages, salaries, or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.
**DO NOT SEND ORIGINAL DOCUMENTS.** If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

**FILED / RECEIVED**

APR 30 2008

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date<br>*4/29/08* | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): *Ellen Opper-Weiner Esq.* |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## Law Offices of Ellen Opper-Weiner

*3 Bethesda Metro Center, Suite 700 ● Bethesda, MD 20814 ● (301) 664-8434*

April 29, 2008

SENT BY FEDERAL EXPRESS

United States Bankruptcy Court For The District Of Delaware
American Home Mortgage Claims Processing Center
FDR Station, P.O. Box 5076
New York, NY 10150-5076

In Re:  American Home Mortgage Holdings, Inc., et al
       Case No. 07-11047 (CSS)

RE:    Claim of Shervonne Powell
       For property:  2705 Barclay Street
                Baltimore, MD 21218

Dear Sir/Madam:

Enclosed is the Proof of Claim form for Ms. Shervonne Powell in the above-referenced case, along with a copy and self-addressed stamped envelope for a date-stamped copy, along with the following documents:

1. Settlement statements for the mortgage with attachments
2. Letter from American Home Mortgage dated 06/19/07
3. Summary of interest payments
4. Summary of payments made to American Capital Contractors by American Home Mortgage for inadequate and incomplete work
5. Proposed Contracts for the work needed to be performed on the subject property

We have many additional documents which we will be happy to provide upon request.  Please do not hesitate to contact me should you need any additional information.

We look forward to hearing from you regarding next steps in this case.

Sincerely,

Ellen Opper-Weiner, Esq.

Enclosures
Cc:    Shervonne Powell

A. # Settlement Statement

B. Type of Loan

U.S. Department of Housing and Urban Development

OMB No. 2502-0265 REV. HUD-1 (3/86)

| 1. ☐FHA   2. ☐FmHA   3. ☒Conv. Unins.<br>4. ☐VA   5. ☐Conv. Ins. | 6. File Number<br>07-35272 | 7. Loan Number<br>0001775465 | 8. Mortgage Insurance Case Number |
|---|---|---|---|

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U. S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 06/15/2007 at 16:37 KAP

| | |
|---|---|
| D. NAME OF BORROWER: | Shervonne Powell |
| ADDRESS: | 2705 Barclay Street, Baltimore, Maryland 21218 |
| E. NAME OF SELLER: | Antoinette Hicks |
| ADDRESS: | |
| F. NAME OF LENDER: | American Home Mortgage |
| ADDRESS: | 538 Broadhollow Road, Melville, NY 11747 |
| G. PROPERTY ADDRESS: | 2705 Barclay Street, Baltimore, Maryland 21218 |
| H. SETTLEMENT AGENT: | Colony Title Group |
| PLACE OF SETTLEMENT: | 10320 Little Patuxent Parkway, Suite 410, Columbia, MD 21044 |
| I. SETTLEMENT DATE: | 06/15/2007 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101.  Contract sales price | 82,000.00 | 401.  Contract sales price | 82,000.00 |
| 102.  Personal Property | | 402.  Personal Property | |
| 103.  Settlement charges to borrower (line 1400) | 9,883.95 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106.  City/town taxes   06/15/07 to 06/30/07 | 15.63 | 406.  City/town taxes   06/15/07 to 06/30/07 | 15.63 |
| 109.  07/08 Taxes | 856.57 | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 92,756.15 | **420. GROSS AMOUNT DUE TO SELLER** | 82,015.63 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201.  Deposit or earnest money | 2,000.00 | 501.  Excess Deposit (see instructions) | |
| 202.  Principal amount of new loans | | 502.  Settlement charges to seller (line 1400) | 6,550.00 |
| 203.  Existing loan(s) taken subject to | | 503.  Existing loan(s) taken subject to | |
| 204.  Loan Amount $140,000.00 | | 504.  Payoff:20134938 | 57,796.52 |
| | | Option One Mortgage Corporatio | |
| 205.  First Draw | 90,063.00 | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208.  Seller Contribution | 2,500.00 | 508.  Seller Contribution | 2,500.00 |
| 209. | | 509.  Ground Rent Escrow | 725.00 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 213. | | 513.  Water/Sewer | 244.51 |
| 214.  Water/Sewer   04/04/07 to 06/15/07 | 192.92 | 514.  Water/Sewer   04/04/07 to 06/15/07 | 192.92 |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 94,755.92 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 68,008.95 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301.  Gross amount due from borrower (line 120) | 92,756.15 | 601.  Gross amount due to seller (line 420) | 82,015.63 |
| 302.  Less amounts paid by/for borrower (line 220) | 94,755.92 | 602.  Less reduction amount due seller (line 520) | 68,008.95 |
| **303. CASH TO BORROWER** | 1,999.77 | **603. CASH TO SELLER** | 14,006.68 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide the Settlement Agent with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

# AMOUNT FINANCED ITEMIZATION

AMOUNTS PAID TO OTHERS ON YOUR BEHALF: (continued)..

| AMOUNT | PAYEE/FOR |
|--------|-----------|
| $ 92.00 | Tax Service |
| $ 19.00 | Flood Hazard Fee |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |
| $ | |

06/19/07

# American Home Mortgage

Shervonne Powell
18902 Mills Choice Road, #4
Gaithersburg, MD 20886

538 Broadhollow Road
Melville, New York 11747

Re: 2705 Barclay Street
    Baltimore, MD 21218

Loan Number: **1775465**

Tel: (866) 418-9400
Fax: (866) 268-6256
www.americanhm.com

Dear Shervonne Powell:

We would like to welcome you to American Home Mortgage and look forward to assisting you with the construction/renovation of your home. For your convenience we are enclosing the following forms:

**For the Draw Process** we have enclosed 6 copies each of the Draw Funds Disbursement Authorizations, and the Waiver of Lien Materials or Labor forms. Each time you request a draw, against your loan funds, you will submit the request by filling out one set of these documents.

The **Draw Funds Disbursement Authorization Form**, states that you list the amount of fund requested for the draw along with the borrowers signatures on the document. Include a written list of items that the funds are paying off

The **Waiver of Lien Materials or Labor** provides AHM with assurances that to the best of your knowledge there have been no liens placed against the construction project. Please have this form signed by your contractor/builder and have it notarized.

**Interest Payments**: Your interest billing statement will be generated on the 20th of each month. You will receive your statement with a self addressed return envelope. All interest payments are to be sent to American Home Mortgage, P.O Box 13684, Newark, NJ 07188-3684. If you should choose to make an electronic payment, the following information will be necessary in order for the payment to reach this department

Payee:  American Home Mortgage

Address:  538 Broadhollow Road
          **Attn: Construction Lending Department**
          Melville, NY 11747

If you should have any questions please do not hesitate to contact us.

**Your draw administrator through the course of construction will be: Marva Tillet**

**800 Number#: 866-418-9400**          **Ext.: 2423**

Contact Information:
          **Construction Lending Center:**
          American Home Mortgage
          Attn: Construction Lending Department – Mail Stop 500
          538 Broadhollow Road
          Melville, NY 11747

          Phone: 866-418-9100 (Toll Free number)
          Fax:    866-268-6256

Sincerely,

American Home Mortgage

Licensed Or Authorized Mortgage Lender Throughout The Fifty States And The District of Columbia
An American Home Mortgage Investment Corp. Company
New York Stock Exchange Listing Symbol - AHM



**American Home Mortgage Interest Payments**

| Date | Amount | Description |
|---|---|---|
| 7/1/2007 | $ 313.90 | Interest Payment |
| 8/1/2007 | $ 636.20 | Interest Payment |
| 9/1/2007 | $ 681.53 | Interest Payment |
| 10/1/2007 | $ 663.96 | Interest Payment |
| 11/1/2007 | $ 759.03 | Interest Payment |
| 12/1/2007 | $ 739.46 | Interest Payment |
| 1/1/2008 | $ 767.72 | Interest Payment |
| 2/1/2008 | $ 767.72 | Interest Payment |
| 3/1/2008 | $ 718.16 | Interest Payment |
| 4/1/2008 | $ 767.46 | Interest Payment |
| 5/1/2008 | $ 742.58 | Interest Payment |
| | | |
| | $ 7,557.72 | |
| | | |
| | $ 140,000.00 | Mortgage Note |
| | $ (80,000.00) | Land |
| | $ (10,063.00) | Closing Costs & Fees |
| | $ (21,514.00) | Construction Draws |
| | $ (7,557.72) | Interest Payments |
| | | |
| | $ (29,071.72) | Costs Incurred / Paid |



green building
alternatives

30 Greenway, NW Suite 11
Glen Burnie, Maryland 21061
tel 410.528.8899
fax 410.558.6312
www.gbalternatives.com

# ESTIMATE –RENOVATION

THIS AGREEMENT, Made as of April 17 In the Year of 2008,

Between the Contractor: Green Building Alternatives, LLC
30 Greenway NW, Suite 11
Glen Burnie, MD 21061
Ph: 410-528-8899
Fax: 410-558-6312
Laura Steensen
MHIC# 93291

And the Owner :        Shervonne Powell
18902 Mills Choice Rd, #4
Gaithersburg, MD 20086
202-286-8920

For the Project:        2705 Barclay St., Baltimore MD 21218

## ARTICLE 1.    ESTIMATE DOCUMENT

1.1      This document is an estimate. If you wish to accept it, please sign it and return via fax or email.
Once your estimate is received, a contract outlining the draw schedule will be forwarded to you.

## ARTICLE 2.    SCOPE OF WORK

2.1      The Contractor agrees to provide all permits, labor and materials, unless otherwise noted to renovate the
above-mentioned project according to the specifications listed below. Materials to be supplied by Owner are
specified.

### Specifications

INTERIOR
1. Demo all drywall on walls and ceilings.
2. Demo all doors and frames.
3. Re-frame front bedroom closet to 24" deep for clothes.
4. Frame new closet in rear bedroom.
5. Frame new wall in rear bedroom to bathroom for larger rear bedroom.
6. Install new ½" drywall on all walls and ceilings.
7. Tape and finish all drywall.
8. Sand drywall ready for paint.
9. Install new 6 panel hallow core doors on interior with jambs and casing.
10. Install new front entrance door with lock.



green building
alternatives

30 Greenway, NW Suite 11
Glen Burnie, Maryland 21061
tel 410.528.8699
fax 410.588.8312
www.gbalternatives.com

11. Install new brass lock sets on all doors.
12. Install 3 ¼" colonial wood base on all walls thru out.
13. Install window trim with sills and skirts on all windows.
14. Install ½" duro rock on kitchen, powder room and 2nd floor bathroom.
15. Install ceramic tile on kitchen, powder room and bathroom floors, tile will be standard contractors grade 12" x 12".
16. Grout new ceramic tile.
17. Install new kitchen cabinets with Formica countertops.
18. Owner to supply all appliances.
19. Install ¾" tongue and groove pre-finished hardwood floors in living room and dining room.
20. Install carpet on steps, hallway and all bedrooms.
21. Install chrome toilet paper holder and towel bars in bathroom and powder room.
22. Install white medicine cabinets in bathroom and powder room.
23. Install closet poles and shelves in all closets.
24. Prime and paint all walls, ceilings, trim and doors two coats, owner to pick color.
25. Includes 10 hours of General Contracting services. Should additional hours of general contracting services be required, they will be billed at a rate of $100.00/hour.

MECHANICALS
Complete systems for all three mechanical trades. The following is an overview/spec sheet for mechanicals to be installed:

Electrical Specifications: Complete rewire of town home to include incoming 200 amp service, all interior wiring to NEC requirements, purchase of approximately 14 builder grade lighting fixtures for interior and exterior, dedicated circuits for all necessary utilities and all necessary permits and coordination with BGE.

HVAC Specifications: Furnish and install complete HVAC system to include gas-fired furnace, outdoor A/C unit. Includes all ductwork, flues, and thermostats. Furnish and install 2 bathroom exhaust fans. All necessary permits and inspections.

Plumbing Specifications: Complete interior water and waste system to accommodate 1 shower, 2 toilets, 2 vanity sinks, 1 kitchen sink w/ disposal, 1 dishwasher, 1 electric water heater, gas connections for 90k BTU furnace, 30K BTU stove. All necessary permits included. This quote includes the purchase of all plumbing fixtures and vanities needed at builder grade quality.

Mechanical Exclusions: The repair/replacement of main outdoor water line coming into the home from



green building
alternatives

3B Greenway, NW Suite 11
Glen Burnie, Maryland 21061
tel 410.528.8899
fax 410.668.6312
www.gbalternatives.com

the street or meter. In older homes there is a possibility that this line has deteriorated and is no longer viable. In general the replacement in Baltimore town homes is between $1,000.00 to $1,500.00.

**EXTERIOR**
1. Install new white vented vinyl soffit on front porch ceiling.
2. Cover all window frames and porch box beam with white aluminum.
3. Remove entire existing slab and tree in the back yard
4. Pour a new concrete slab.
5. Add flower bed in yard


Total: $45,325.00

Price subject to change if a contract is not executed within 30 days from date of estimate. Contractor will remove all job related debris. Any work not described to be an extra. Work will proceed only after receipt of signed Contract. Contractor will obtain building permit and oversee project. Owner to pay difference if materials exceed allowances.

Owner Signature _____ Date_____

2008-04-10 02:19        NIXON CONSTRUCTION    3014902085 >>    3233131562



## NIXON CONSTRUCTION CO LLC
8508 PORTSMOUTH DR
LAUREL, MD 20708
CELL:301-803-8805
FAX: 301-490-2085

# FAX COVER SHEET

Date: April 10, 2008
Attn: Shervonne Powell
Fax #: 323-313-1562
Pages: 5 including cover sheet

⊗ **URGENT**     | |            | | **PLEASE COMMENT**  ⊔ **PLEASE REPLY**

COMMENTS:
The complete Contract is attached. Should you have any questions or concerns,
please contact me at 301-803-8805 or 240-643-5226. Thank you.

Sincerely,
Nixon Elvir
Project Manager

## CONSTRUCTION CONTRACT

Nixon Construction Co LLC                                          Client:
8508 Portsmouth Drive                                      Shervonne Powell
Laurel, MD 20708                                             2705 Barclay St
301-803-8805                                             Baltimore, MD 21218
240-643-5226
FAX: 301-490-2085
MHIC License #: 125742                                        April 8, 2008

## CONSTRUCTION CONTRACT

*Scope of Work:*

| | |
|---|---|
| **1.** Drywall on walls and ceiling. | |
|    *A.* Remove all existing drywall of walls and ceiling and remove from premises. | |
| **TOTAL: $2,100.00** | |
|    *B.* Hang, tape, plaster, sand down and apply Primer. | |
| **TOTAL: $2,100.00** | |
| **2.** Rewire electricity of town house completely. | |
|    A. Rewire incoming 200 amp service. | |
|    B. All interior wiring to NEC requirements. | |
|    C. Purchase approximately 14 light fixtures for interior and exterior. | |
| **TOTAL: $9,000.00** | |
| **3.** HVAC | |
|    A. Furnish and install complete HVAC system including gas fired furnace and outdoor A/C unit. | |
|    B. Work includes all ductwork, flues, thermostats, etc. | |
|    C. Install two bathroom exhaust fans. | |
| **TOTAL: $9,000.00** | |
| **4.** Plumbing | |
|    A. Connect house plumbing to 1 shower, 2 toilets, 2 vanity sinks, 1 kitchen sink w/ garbage disposal, 1 dishwasher, 1 electrical water heater, furnace and range. | |
| **TOTAL: $9,000.00** | |
| **5.** Insulation | |
|    A. Put R 13 Insulation on front and back walls. | |
| **TOTAL: $1,300.00** | |
| **6.** Demolish all existing doors. | |
|    A. Install new doors including casing. | |
|    B. Use regular doors from either Home Depot or Lowe's. | |

## CONSTRUCTION CONTRACT

| | |
|---|---|
| C.  Install new door locks. | |
| **TOTAL: $2,427.00** | |
| 7.  Closets in bedrooms. | |
| A.  Demolish existing closets of bedrooms. | |
| B.  Build new closets according to Regulations. | |
| C.  Install 2 doors to each closet. | |
| D.  Install 1 shelf in each closet. | |
| **TOTAL: $1,375.00** | |
| 8.  Install wood baseboard in: | |
| A.  Bedrooms. | |
| B.  Bathroom. | |
| C.  Kitchen. | |
| D.  Hallways. | |
| **TOTAL: $975.00** | |
| 9.  Install wood trim: | |
| A.  On windows and around doors. | |
| **TOTAL: $500.00** | |
| 10. Bathroom in 2nd floor. | |
| A.  Remove 1 wall. | |
| B.  Install sub-flooring using plywood. | |
| C.  Install 1 toilet. | |
| D.  Install ceramic tile on walls and floor. | |
| E.  Install 1 bath tub. | |
| F.  Install 1 vanity sink and 1 mirror. | |
| **TOTAL: $4,200.00** | |
| 11. Bathroom in 1st floor. | |
| A.  Install ceramic tile on floor. | |
| B.  Install 1 vanity sink and 1 mirror. | |
| C.  Install 1 toilet and accessories. | |
| **TOTAL: $1,753.00** | |
| 12. Kitchen | |
| A.  Install kitchen cabinets. | |
| B.  Install regular countertop. | |
| C.  Install regular sink. | |
| D.  Install ceramic tile on floor. | |
| E.  Install 1 new door by patio. | |
| **TOTAL: $7,600.00** | |
| 13. Install carpet and padding in: | |
| A.  3 bedrooms of 2nd floor. | |

## CONSTRUCTION CONTRACT

| | |
|---|---|
| B.  Hallway of 2nd floor. | |
| C.  Steps leading towards 1st floor. | |
| **TOTAL: $2,000.00** | |
| 14. Dining Room | |
| A.  Install Hardwood flooring. | |
| B.  Install recessed lights. | |
| **TOTAL: $2,200.00** | |
| 15. Main Living Room | |
| A.  Install Hardwood flooring. | |
| B.  Install recessed lights. | |
| C.  Install 1 door at main entrance. | |
| D.  Install a handrail on stairway. | |
| **TOTAL: $2,895.00** | |
| 16. Apply 2 coats of paint on: | |
| A.  Bedrooms. | |
| B.  Bathrooms. | |
| C.  Kitchen. | |
| D.  Living Room. | |
| E.  Dining Room. | |
| F.  Doors | |
| G.  Baseboard and trim. | |
| **TOTAL: $2,600.00** | |
| 17. Remodel Patio | |
| A.  Clean and level out. | |
| B.  Remove trees. | |
| C.  Put concrete. | |
| D.  Install wood fence all around. | |
| **TOTAL: $2,800.00** | |
| 18. Repair front Porch. | |
| A.  Install plywood. | |
| B.  Apply Primer and Paint. | |
| **TOTAL: $600.00** | |
| 19. Install new appliances. | |
| **TOTAL: $4,000.00** | |

## CONSTRUCTION CONTRACT

## <u>TERMS AND CONDITIONS FOR CONTRACT</u>

**Project Price: $68,425.00**
**TERMS:**
50% down ($34,212.50), 25% at 1/2 progress ($17,106.25) and 25% on completion of the project ($17,106.25).

*Down payment due to start construction ($34,212.50)*

_____

_____

Date

Client signature agrees to terms and conditions described above by **NIXON CONSTRUCTION CO., LLC.**

## CONDITIONS

Upon making payment on any completed phase of the project, and before making any further payments, if you desire to implement any changes on the contracted project please be aware of the extras and changes describe below:

**EXTRAS & CHANGES**
Contracting is per drawing and notes. Any changes or additions may affect cost. Changes to be billed to the client including labor plus materials. All change orders must be in writing and signed by both client and **NIXON CONSTRUCTION CO., LLC.**

**CANCELLATION**
Under no circumstances may a contract be canceled. Refunds are not given after signed contract. Business and Personal checks may not be canceled after acceptance of contract.

**INSTALLATION**
Installation is for contracted work only. Under no circumstances will **NIXON CONSTRUCTION CO., LLC** will be responsible for the removal of existing furniture or the installation of any customer component not included in the actual work contracted. Customer will provide installation space ready and clear for installation of contracted work. NIXON CONSTRUCTION CO, LLC will under separate agreement remove customer furniture if customer is unable to do so at the extra hourly rate.

## ACCEPTANCE

YOU ARE HEREBY AUTHORIZED NIXON CONSTRUCTION CO, LLC TO COMPLETE ALL DESCRIPTION OF WORK PROVIDED ABOVE. YOU ALSO AGREE TO PAY THE AMOUNT MENTIONED IN SAID PROPOSAL, AND ACCORDING TO THE TERMS THEREOF.

Accepted by: _____

Signature of Responsible Person          Date

_____

Nixon Elvir          Date

**FedEx** Express

US Airbill

8647 0277 0630    0200    FedEx Retrieval Copy

1 From
Date
Sender's Name

Sender's FedEx
Account Number

Company

Address

City                          State        ZIP

2 Your Internal Billing Reference

3 To
Recipient's Name                          Phone

Company

Recipient's
Address

Address

City                          State        ZIP

4a Express Package Service                    *Packages up to 150 lbs.
4b Express Freight Service                    *Packages over 150 lbs.
5 Packaging
6 Special Handling
7 Payment    Bill to:
8 Residential Delivery Options

Total Packages    Total Weight

520

FedEx Express

US Airbill

Fedx Tracking Number  8647 0277 0630

**1 From**

Date

Sender's Name

Phone

Company

Address

City                    State              ZIP

**2 Your Internal Billing Reference**

**3 To**

Recipient's Name                                          Phone

Company

Address

City                    State              ZIP

8647 0277 0630

**4 Express Package Service**                    Packages up to 150 lbs.

**4a Express Package Service**

FedEx Priority Overnight

FedEx Standard Overnight

FedEx First Overnight

FedEx 2Day

FedEx Express Saver

**4b Express Freight Service**          Packages over 150 lbs.

FedEx 2Day Freight

FedEx 3Day Freight

**5 Packaging**

FedEx Envelope    FedEx Pak    FedEx Box    FedEx Tube    Other

**6 Special Handling**

SATURDAY Delivery

HOLD Weekday at FedEx Location

HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

No        Yes        Yes

Dry Ice

Cargo Aircraft Only

**7 Payment**  Bill to:

Sender    Recipient    Third Party    Credit Card    Cash/Check

Total Packages    Total Weight    Total Declared Value

**8 Residential Delivery Signature Options**

No Signature Required

Direct Signature

Indirect Signature

520

fedex.com 1.800.GoFedEx 1.800.463.3339

Recipient's Copy

**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | ) Case No. 07-11047 (CSS) |
| A Delaware corporation, et al. | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) Objection Deadline: |
| | ) September 8, 2008 |
| | ) Hearing Date: |
| | ) September 15, 2008 |

CLAIMANT'S RESPONSE TO DEBTORS' FIFTEENTH OMNIBUS
(SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF
THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL
RULE 3007-1

COMES NOW, Claimant, Shervonne Powell, by and through her counsel, Ellen

Opper-Weiner, Esq., and files Claimant's Response To Debtors' Fifteenth Omnibus

(Substantive) Objection To Claims Pursuant To Section 502(b) of The Bankruptcy Code,

Bankruptcy Rules 3003 and 3007, And Local Rule 3007-1, and respectfully states as

follows:

1.      That Claimant has not received a copy of the Exhibit which was not even

identified and which apparently applies to her specific claim, allegedly Claim

Number 10340, and, therefore, the Claimant cannot properly and thoroughly respond

to the Debtors' objection.

2.      That the Debtors assert that: "Borrower's claim is based on payments to

contractors, however, borrower authorized all distributions to contractors and

therefore the debtors have no liability from this claim". That what is missing from

that statement is that the Lender, American Home Mortgage, released monies to the

Contractor without ever having received a copy of the contractor's permit. See e-mails from Marva Tillett, American Home Mortgage Construction Lending Specialist, which are attached hereto and incorporated herein as Exhibit # 1.

3.      That the Borrower was told by her Contractor that a copy of the permit was sent to the Lender after the Borrower received the July 18, 2007 notice from Marva Tillett.

4.      That at no time did the Lender inform the Borrower until October 23, 2007, that a copy of the Contractor's permit had NOT been received by the Lender. Nevertheless, the Lender released funds on three (3) occasions to the Contractor, between July 18, 2007 and October 23, 2007, which the Lender should not have released because the Lender did not have the requisite proof that the Lender itself required in order to release monies to the Contractor, including the lack of inspections of the work performed, in addition to the lack of a Contractor's permit.

5.      That the Borrower attempted to determine from the Lender the actual status of her construction loan by making numerous telephone calls and finally writing a letter on October 18, 2007, which is attached hereto and incorporated herein as Exhibit # 2. The only response she received was the e-mail sent to her on October 23, 2007, which left the Borrower completely in the dark regarding the monies released to the Contractor and whether or not inspections had been performed by the Lender pursuant to the parties' loan agreement.

6.      That the work performed by the unlicensed Contractor was not inspected nor did the Lender have the proper documentation to show that the Contractor was licensed.

7.      That the result of the Lender's negligence was to cause the Claimant to

suffer financial damages in the amount of $55,714.00.

WHEREFORE, the above premises considered the Claimant, Shervonne Powell,

respectfully requests that the Debtors' Objection to her Claim be DENIED and her claim

not be expunged in the instant case, and grant such additional and further relief to which

this Honorable Court appears just and reasonable.

Sincerely,

Ellen Opper-Weiner, Esq.
3 Bethesda Metro Center, Suite 700
Bethesda, MD 20814
(301) 664-8434
Counsel for Shervonne Powell


### CERTIFICATE OF SERVICE

I HEREBY certify that on the 6th day of September, 2008, a copy of the foregoing
was sent by Federal Express priority delivery to:  Young, Conaway, Stargatt & Taylor,
LLP, c/o James L Patton, Jr., The Brandywine Building, 1000 West Street, 17th Floor,
Wilmington, Delaware 19801

Ellen Opper-Weiner, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                                    ) Chapter 11
                                                          )
AMERICAN HOME MORTGAGE HOLDINGS, INC.,                    ) Case No. 07-11047 (CSS)
A Delaware corporation, et al.                            )
                                                          ) Jointly Administered
                                                          )
            Debtors.                                      ) Objection Deadline:
                                                          ) September 8, 2008
                                                          ) Hearing Date:
                                                          ) September 15, 2008

## ORDER

Upon consideration of the NOTICE OF DEBTORS' FIFTEENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3003 AND 3007, AND LOCAL RULE 3007-1, and Claimant Shervonne Powell's opposition filed thereto, it is on this _____ day of _____, 2008, be and is hereby

ORDERED, that the Debtors' Objection as to Claimant Shervonne Powell, be and is hereby DENIED, and it is further

ORDERED, that the Debtors are to provide Claimant Shervonne Powell with a copy of the Exhibit which is relevant to her claim no later than _____, and it is further

ORDERED, that the Claimant Shervonne Powell reserves the right to amend, modify or supplement her response to the Debtors' Objection after receipt of and an opportunity to review of the relevant Exhibit related to her claim, and it is further

ORDERED, that the case be removed to the United States Bankruptcy Court most convenient to the Claimant's residence in the State of Maryland, namely, Gaithersburg,

Maryland, or in the alternative to the United States Bankruptcy Court most convenient to

the location of the subject property which is located in Baltimore, Maryland.

     SO ORDERED.

Dated: Wilmington, Delaware

     _____, 2008

                    _____

                    CHRISTOPHER S. SONTCHI
                    UNITED STATES BANKRUPTCY JUDGE

Subject: L-1775465 (Building Permit)
Date: Wed, 18 Jul 2007 13:06:36 -0400
From: Marva.Tillett@americanhm.com
To: shevygp@hotmail.com

Hi Ms. Powell,
Per our conversation today, I am still waiting for a copy of the **Building Permit** along with a email from
you advising me to use part of your Contingency.    If these items are not received, I cannot disburse the
wire.
Thank you.

**Marva Tillett**
**American Home Mortgage**
**Construction Lending Specialist**
**538 Broadhollow Road**
**Melville, NY 11747**
**Telephone: (631)-622-2423**
**Direct Fax: (866) 316-7688**
**Marva.Tillett@americanhm.com**

Get more out of the Web. Learn 10 hidden secrets of Windows Live. <u>Learn Now</u> =

Exhibit #.1

Subject: Need copy of Building Permit
Date: Tue, 23 Oct 2007 10:57:38 -0400
From: Marva.Tillett@americanhm.com
To: shevygp@hotmail.com

Hi Shervonne,
Please have builder fax a copy of his Building Permit ASAP to the number below........it is missing
from the file.
Thanks.

**Marva Tillett**
**American Home Mortgage**
**Construction Lending Specialist**
**538 Broadhollow Road**
**Melville, NY 11747**
**Telephone: (631)-622-2423**
**Direct Fax: (866) 316-7688**
**Marva.Tillett@americanhm.com**

Stay up to date on your PC, the Web, and your mobile phone with Windows Live. See Now =

October 18, 2007

Shervonne Powell
18902 Mills Choice Rd, #4
Gaithersburg, MD 20886
Daytime: (703)206-2688
Evening: (202)286-8020
Fax: (703)206-3543
shevygp@hotmail.com

Joanne Vlaun
American Home Mortgage
538 Broadhollow Rd
Mailstop: 510
Melville, NY 11747

VIA FAX

Dear Ms. Vlaun,
I currently have a construction loan with American Home Mortgage and have Marva Tillett as a Loan Administrator. I am writing to express my extreme disappointment and discontent with my experience with Ms. Tillett and the lack of communication concerning my loan.

Ms. Tillett's professionalism and commitment to customer service is grossly poor and she is very rude. Due to the financial problems of American Home Mortgage and the absence of consistent and competent direction to me from the bank, my home rehab project has suffered a number of setbacks. Resultantly, I now must bring a new builder onto my project.

I emailed Ms. Tillett on Monday, 10/15/2007, to ask for copies of inspection reports, copies of the building permits sent over by the current builder, and an account statement that shows what has been paid from my account to the current builder, in addition to what is remaining in my budget.

Because I did not receive an acknowledgement from my email, I called Ms. Tillett on Tuesday, 10/16/2007 just to ask if she would be able to provide this information to me. She was extremely rude to me and asked me why I planned to change builders when my loan was to be sold on the 24th. Then she proceeded to tell me she wasn't sure she would be able to provide any of the things I asked for and she would have to see.

I have not heard nor have I received anything from Ms. Tillett. I would greatly appreciate any assistance you can provide to me. The information I would like to receive are copies of the inspection reports, copies of the building permits the current builder faxed over, and an account statement that shows draws that were made to the current builder.

My loan number and contact information is provided at the top of this letter.

Thanks in advance,

Shervonne Powell

Exhibit #2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | ) Case No. 07-11047 (CSS) |
| A Delaware corporation, et al. | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| | ) |

## CLAIMANT'S MOTION TO LIFT STAY

COMES NOW, Claimant, Shervonne Powell, by and through her counsel, Ellen Opper-Weiner, Esq., and files Claimant's Motion To Lift Stay, and respectfully states as follows:

1. That Claimant, Shervonne Powell, intends to file a lawsuit for claims against the Contractor for negligence and American Home Mortgage is a necessary party to that cause of action

2. That American Home Mortgage did not inspect the work performed by the Contractor in direct violation of the contract between the Borrower and Lender, and also remitted payments to the Contractor even though he was unlicensed to perform the work in the contract, which the Lender knew or should have known before remitting payments to the Contractor on behalf of the Claimant.

3. That the Claimant, Shervonne Powell hereby incorporates by reference Claimant's Response To Debtors' Fifteenth Omnibus (Substantive) Objection To Claims Pursuant To Section 502(b) Of The Bankruptcy Code, Bankruptcy Rules 3003 and 3007, And Local Rule 2007-1, filed on this Court on or about September 8, 2008.

WHEREFORE the above premises considered, Claimant, Shervonne Powell, respectfully requests that her Motion To Lift Stay in the instant case be GRANTED, because she will suffer undue harm and prejudice in pursing her cause of action in the Circuit Court for Montgomery County, Maryland, if the current Stay against the Debtors is not lifted, and grant such further and additional relief to which this Honorable Court appears just and reasonable.

Sincerely,

_____

Ellen Opper-Weiner, Esq.
3 Bethesda Metro Center, Suite 700
Bethesda, MD 20814
(301) 664-8434
Counsel for Shervonne Powell

## CERTIFICATE OF SERVICE

I HEREBY certify that on the 6th day of September, 2008, a copy of the foregoing was sent Federal Express priority delivery to: Young, Conaway, Stargatt & Taylor, LLP, c/o James L Patton, Jr., The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801

_____

Ellen Opper-Weiner, Esq.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | ) Case No. 07-11047 (CSS) |
| A Delaware corporation, et al. | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) |
| | ) |
| | ) |

## ORDER

Upon consideration of Claimant Shervonne Powell's Motion To Lift Stay, and any opposition filed thereto, it is on this _____ day of _____, 2008, be and is hereby

ORDERED, that Claimant Shervonne Powell's Motion To Lift Stay, be and is hereby GRANTED, and it is further

ORDERED, that the current Stay in the instant case, be and is hereby Lifted so that Claimant Shervonne Powell is able to pursue her civil claims against the Debtors.

SO ORDERED.

Dated: Wilmington, Delaware

_____, 2008

_____
CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

Loan Number:    0001775465

Date:           06/15/07

Lender:         American Home Mortgage

Borrower(s):    SHERVONNE POWELL



## CONSTRUCTION LOAN AGREEMENT

THIS CONSTRUCTION LOAN AGREEMENT is made and entered into on the date written above by and between Borrower(s) and Lender.

### RECITALS:

A. Borrower has applied to Lender for a loan in the principal amount set forth below (the "Loan").
B. Lender has agreed to make the Loan to Borrower on the terms, and subject to the conditions and agreements hereinafter set forth.

### AGREEMENT

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of all of which is hereby acknowledged, Borrower and Lender hereby covenant and agree as follows:

**ARTICLE I. LOAN, COLLATERAL, ETC.**

**SECTION 1.01. Loan Terms.**

The following terms shall be applicable to the loan.

**(a) Principal amount of the Loan:** $ 140,000.00          .

**(b) Conversion Date:** The first day of the first month following the expiration of ten (10) days from the delivery to the Lender of the last of the items required under subsections (a), (b), (c), (d), (e), (f), (g), (h), (i), and (j) of Section 3.14 (the "Conversion Date"); provided, however, that the Conversion Date shall not be later than  December 1, 2007          .

**(c) Interest rate:** The Loan will be evidenced by the Promissory Note, and any addenda or riders thereto, (the "Note") that Borrower has signed in connection with the Loan and will bear interest) according to the terms set forth in the Note. The amount of the Loan will be disbursed to, or on behalf of Borrower, in one or more installments, called "advances." Borrower will pay interest on the amount that has been advanced from the date of each advance. Advances will be made as provided in this Agreement.

**(d) Payments:** Interest only shall be payable monthly until the Conversion Date. Commencing on the Conversion Date, principal and interest will be due monthly under the terms of the Note and Security Instrument and shall be payable in consecutive monthly installments, with such installments to be payable on the first day of the first month following the Conversion Date and on the first day of each month thereafter as provided in the Note and Security Instrument.

**(e) Inspection Fees:** Unless otherwise prohibited by applicable law, Borrower shall pay $100.00 for each Inspection (as defined in Section 1.05 hereof) requested by Borrower and performed by the Construction Inspector. Unless otherwise prohibited by applicable law, fees for six Inspections ($600.00) shall be collected at closing to be applied against each Inspection actually made. If less than six Inspections are actually made by the Construction Inspector, the excess Inspection fee or fees shall be applied to the loan amount or refunded to Borrower upon Borrower's written request. If more than six Inspections are actually made, additional fees of $100.00 for each Inspection shall be due and payable at the time each such Inspection in excess of six is requested. Lender may, at its option, withhold such additional Inspection fees from the next Advance.

**(f) Contractors** ( American Capitol Contractors _____ , "Contractor") or another person satisfactory to Lender shall be the general contractor for the construction of the Project described in Section 1.04 hereof.

**(g) Construction Inspector:** The construction inspector for the Project (the "Construction Inspector") will be designated by the Lender for that purpose.

**(h) Construction Period:** The Project is to be fully completed in accordance with the Plans and Specifications described in Section 1.04 hereof on or before the Conversion Date (the period of time beginning on the date of this agreement and ending on the Conversion Date is hereinafter called the "Construction Period").

**(i) Permanent Loan Term:** The term of the permanent phase of this Loan (the "Permanent Loan Term") will extend from the Conversion Date until June 1, 2037 _____ .

**(j) Borrower's Equity:** The amount of equity Borrower is required to inject into the Project pursuant to Section 3.13 hereof ("Borrower's Equity") is $ _____ .

**(k) Appraised Value:** The value of the Project as reflected by the final appraisal required under Section 3.14(e) hereof ("Appraised Value"), which shall not be less than $ 180,000.00 _____ .

**(l) Holdback Amount:** The amount which will not be advanced by Lender until all of the conditions precedent contained in Section 3.14 hereof shall have been fulfilled. The Holdback Amount shall be equal to ten percent (10%) of the principal amount of the Loan.

**(m) Grantors:** The following person(s) (hereinafter called the "Grantors," whether one or more) will execute the Security Instrument described in Section 1.04 hereof to Lender as security for the Loan:

**(n) Guarantors:** The following person(s) (hereinafter called the "Guarantors," whether one or more) will guarantee the Loan pursuant to guaranty agreements (the "Guaranty Agreements") satisfactory to Lender.

**(o) Borrower's Address:** The Borrower's address for the purpose of receiving notices under this agreement is:  18902 MILLS CHOICE RD., #4, Gaithersburg, MD  20886           .

**(p)    Construction    Site:    The    construction    site    is    located    at**
2705 Barclay Street, Baltimore                                                              ,
County of    BALTIMORE CITY        , State of    Maryland           .

**SECTION 1.02.    Definitions.**    For the purposes of this agreement, except as otherwise expressly provided or unless the context otherwise requires:

The terms defined in this Article shall have the meanings assigned to them in this Article and include the plural as well as the singular, and vice versa.

All references in this agreement to designated "Articles," "Sections" and other subdivisions are to the designated Articles, Sections and subdivisions of this agreement as originally executed.

The terms "herein," "hereof" and "hereunder" and similar words refer to this agreement as a whole and not to any particular Article, Section or other subdivision.

The term "person" shall include any individual, corporation, partnership, joint venture, association, trust, sole proprietorship, unincorporated organization and any Governmental Authority.

"Event of Default" has the meaning assigned to that term in Section 4.01.

"Governmental Requirements" means any federal, state, county, municipal or other government, domestic or foreign, and any agency, authority, department, commission, bureau, board, court or other instrumentality thereof.

"Lien" means any mortgage, pledge, security interest, assignment, lien, charge, encumbrance or other preferential arrangement of any kind.

"Loan Documents" means and includes this agreement, the Note, the Security Documents, and all other instruments and documents given to Lender in connection with or pursuant to this agreement.

"Obligor" means Borrower, the Guarantors, the Mortgagors and any other maker, endorser, surety or guarantor of the Loan, or any part thereof, and any person otherwise obligated to Lender under any of the Loan Documents.

**SECTION 1.03. Note and Modification Agreement.**

(a) Note: During the Construction Period, the Loan shall be evidenced by a promissory note (the "Note" payable to the order of Lender, duly executed by Borrower, dated the date of this agreement, in the principal amount of the Loan.

(b) Modification Agreement: On the Conversion Date, the Construction Period shall automatically end and the Permanent Loan Term will begin without the necessity of execution of further documentation. In any event, at the request and in the discretion of Lender, Borrower will execute any and all documentation on or ten days prior to the Conversion Date, including, but not limited to, a Modification Agreement (to be effective as of the Conversion Date), and deliver

such documentation to Lender and pay all costs and expenses of the same. Borrower shall also furnish Lender with an endorsement to the mortgagee title insurance policy obtained pursuant to Section 1.06 of this agreement insuring the continued priority lien of the Security Instrument, as modified by the recorded Modification Agreement (if a Modification Agreement is applicable). During the Permanent Loan Term, the Loan shall be evidenced by the Note as modified by a modification agreement (the "Modification Agreement"), if applicable, duly executed ·by Borrower, dated as of the Conversion Date, in the principal amount of the Loan. The Modification Agreement, if applicable, shall modify and amend the Note to specify the interest rate on the Loan ("Note Rate") and the monthly installment payments of principal and interest on the Loan during the Permanent Loan Term, as those terms are calculated in accordance with the terms of this agreement and the Note. Borrower and Lender expressly understand and agree that the execution and delivery of the Modification Agreement shall not constitute or be construed as a novation, it being the express intention of the parties hereto that the Modification Agreement and the execution thereof shall constitute a true modification and amendment of the Loan terms in accordance with and as provided for in this agreement. Unless otherwise specifically provided, the term "Note" as hereafter used in this agreement shall mean the Note as modified by the Modification agreement, if the Modification Agreement has been executed and delivered at the relevant time.

**SECTION 1.04. Security Documents.**    As security for the Loan, the Grantors shall, concurrently with the execution of this agreement, execute and deliver to Lender a mortgage, deed of trust, security deed or other security instrument, together with a rider or riders thereto, satisfactory to Lender (such security instrument and rider or riders are hereinafter called the "Security Instrument") covering (among other things) the real estate described on Exhibit A attached hereto (the "Real Estate"), the improvements, buildings and fixtures now or hereafter situated thereon, including without limitation those to be constructed with the proceeds of the Loan (the "Improvements"), and the other real and personal property described therein. The Mortgage and all other documents now or hereafter securing the Loan (or any part thereof) are hereinafter sometimes collectively called the "Security Documents." The Real Estate, the Improvements and all other property that now or hereafter secures the Loan under any of the Security Documents are hereinafter collectively referred to as the "Collateral". A copy of the plans and specifications (the "Plans and Specifications") for the Improvements to be built on the Real Estate with the Loan proceeds has been delivered to Lender (the Improvements called for by the Plans and Specifications are herein called the "Project").

**SECTION 1.05. Advances.** (a) So long as no Event of Default has occurred hereunder, during the Construction Period Lender shall, upon the terms and subject to the conditions set forth in this agreement, advance the proceeds of the Loan ("Advances") from time to time (but not more frequently than monthly unless Lender otherwise consents) as, in the opinion of Lender, funds are needed by Borrower or the payment of the costs ("Project Costs") of acquiring, constructing and equipping the Project, as reflected in the construction budget for the Project approved by Lender (the "Project Budget"), except that Lender shall have no duty or obligation to advance the Holdback Amount until all of the conditions enumerated in Section 3.14 hereof have been completely satisfied and fulfilled; and the Security Instrument and the other Security Documents shall be and remain valid and binding as security for the aggregate amount so advanced at any time, whether or not the full amount of the Loan is advanced. Lender shall make Advances of the proceeds of the Loan, on not less than three business day's prior written notice from Borrower, by draft payable to Borrower or, at Lender's option, by joint draft payable to Borrower and Contractor, or to the closing agent; provided, however, that nothing contained in this agreement shall be construed as imposing any duty on Lender to pay bills incurred in connection with the Project or to see that they are paid. Lender's obligation to make Advances

hereunder shall terminate, if not sooner terminated pursuant to the provisions of this agreement, on the Conversion Date.

(b) Each request for an Advance (Request for Advance") must be supported by the following, each of which must be satisfactory inform and content to Lender.

(i) An inspection sheet in a form acceptable to Lender duly completed by the Construction Inspector based on a personal inspection of the Project (an "Inspection") conducted prior to the date of the requested Advance showing that the percentage of completion of the construction of the Project will equal or exceed the percentage of total Loan proceeds disbursed after taking into account the requested Advance.

(ii) If all or any portion of the requested Advance is to be paid to the Contractor, Lender must be provided with (A) a Lien waiver or similar document executed by the Contractor acknowledging that the Contractor has been paid all that is due to the Contractor under the construction contract for work performed prior to the date of the most recent payment made to the contractor and waiving any Lien on the Collateral for such work, and (B) the Contractor's sworn statement on AIA Document 6702 (Application and Certificate for Payment) certified by the Construction Inspector, who shall inspect the Project on Lender's behalf. However, Lender may, in its discretion, make Advances without requiring the Construction Inspector's certification under this paragraph (ii) and paragraph (i) above or without requiring any of the other items under this paragraph (ii); and by making one or more Advances without such certifications or items, Lender shall not waive its right to require such certifications or items for any subsequent Advance.

(iii) If requested by Lender, an updated Sources and Uses of Funds Statement showing that the undisbursed Sources of Funds as shown on said statement equal or exceed the then-remaining cost to complete the Project in accordance with the Plans and Specifications. Should such costs exceed the then remaining Sources of Funds, Borrower must immediately inject Borrower's own funds into the Project in an amount sufficient to cause the Sources of Funds and such costs to balance prior to requesting any additional Advances.

(iv) A written statement from Borrower that there have been no changes in the Project Budget or a written certification specifying the changes that have been made in the Project Budget.

(v) If all or any portion of the Advance is to be used to pay any costs of constructing the foundation of the Project or if the costs of constructing the foundation of the Project have already been paid, a survey made and certified by a surveyor approved by Lender, showing compliance with all building line and other restrictions, the Plans and Specifications, and all Governmental requirements.

(vi) Such additional certificates of progress, FHA compliance inspection reports, proofs as to the payment of construction bills and subcontracts, lien waivers, lien and privilege certificates, inspection reports, architects and/or engineers' certificates, and such other proofs as Lender may require from time to time to establish the progress of development and construction of the Project, the current status of accounts of contractors, subcontractors, materialmen and laborers furnishing labor, materials or services to the Project, the compliance with applicable Governmental Requirements, and the basis for requested Advances.

(vii) If requested by Lender, an endorsement to Lender's title policy bringing down the effective date thereof to the date of such Advance and showing no additional Liens on the Project or the Real Estate. On the date of each Request for Advance hereunder, the representations and warranties set forth in Article II hereof shall be true and correct on and as of such date with the same effect as though such representations and warranties had been made on and as of such date, except to the extent that such representations and warranties expressly relate to an earlier date. On and as of the date hereof and on and as of the date of each Request for Advance hereunder, Borrower shall be in compliance with all the terms and provisions set forth in this agreement on Borrower's part to be observed or performed, and no Event of Default, nor any event which upon notice or lapse of time or both would constitute such an Event of Default, shall have occurred and be continuing.

**SECTION 1.06. Title Insurance.** Prior to the first Advance, Borrower agrees to furnish to Lender at Borrower's expense a current mortgagee's title insurance policy in a form satisfactory to Lender (with such endorsements and provisions as may required by Lender) and in an amount equal to the maximum principal amount of the Loan, issued by a title insurance company acceptable to Lender and showing the Security Instrument to be a valid first Lien on the fee simple title to the Real Estate, subject only to the current year's taxes and to such other exceptions as shall be acceptable to Lender.

**SECTION 1.07. Escrow Deposits**

(a) Escrow Deposits: On the Conversion Date, Borrower shall deposit with Lender funds for the payment of (i) taxes and assessments which may attain priority over the Security Instrument, (ii) ground rents on the Real Estate, if any, (iii) the yearly premium installments for each hazard insurance policy, and (iv) the yearly premium installments for mortgage insurance, if any, all as reasonably estimated by Lender on the basis of assessments and bills and Lender's reasonable estimates thereof.

On the Conversion Date, the provisions of the Security Instrument or applicable law shall govern Escrow Deposits and Escrow Items.

**SECTION 1.08 No Agency Relationship.** Borrower understands and agrees that Lender is not the agent or representative of Borrower, and this agreement shall not be construed to make Lender liable to materialmen, subcontractors, craftsmen, laborers or others for goods or services delivered by them to the Project, or for debts or claims accruing to said persons against Borrower, and it is distinctly understood and agreed that there is no contractual relation, either express or implied, between Lender and any materialmen, subcontractors, craftsmen, laborers, or other persons supplying any work, labor or materials to the Project.

## ARTICLE II. REPRESENTATIONS AND WARRANTIES OF BORROWER

Borrower represents and warrants to Lender as follows (with each Request for Advance being deemed the making of the following representations and warranties):

**SECTION 2.01. No Violation, etc.** The execution, delivery and performance of this agreement, the borrowings hereunder and the execution and delivery of the other Loan Documents by Borrower will not violate any Governmental Requirement, or any instrument to which Borrower is a party, or by which Borrower or any of Borrower's properties (including, without limitation, the Collateral) are bound, or constitute a breach of, or default under, any

such instrument, or result in the creation or imposition of any Lien upon any such properties except as contemplated by this agreement and the Security Documents.

**SECTION 2.02. Information Furnished by Borrower.** (a) The documents furnished in support of the Loan request are true and correct and accurately set out the facts contained therein; (b) the financial statements provided in support of the Loan request were prepared in accordance with good accounting practice and are correct and complete and fairly present the financial position of each person that said financial statements purport to reflect; and (c) the financial positions so reflected have not suffered any material adverse changes prior to the date hereof.

**SECTION 2.03. Taxes.** Borrower has filed or caused to be filed all federal, state and local tax returns that are required to be filed by Borrower, and has paid all taxes, assessments and other charges due.

**SECTION 2.04. Title to Properties.** Borrower has good and marketable title to all the properties and assets (including, without limitation, the Collateral) reflected as being owned by Borrower on the financial statements referred to in Section 2.02 hereof. All such properties and assets (including, without limitation, the Collateral) are free and clear of Liens except as otherwise permitted or required by the provisions of this agreement or the Security Documents.

**SECTION 2.05. Litigation.** Except as disclosed in writing to lender, there are no actions, suits or proceedings (whether or not purportedly on behalf of Borrower) pending or, to the best knowledge of Borrower, threatened against or affecting Borrower or the Collateral; and Borrower is not, to the best knowledge of Borrower, in default with respect to any Governmental Requirement.

**SECTION 2.06. Agreements.** Borrower is nor a party to any agreement or instrument, materially and adversely affecting Borrower's business, properties or assets (including, without limitation, the Collateral), operations or condition, financial or otherwise, and Borrower is not in default under any material agreement or instrument to which Borrower is a party.

**SECTION 2.07. Mechanics' Liens.** On and as of the date of this agreement there is no visible commencement of work incident to the construction of the Improvements on the Real Estate or, if commencement of work has begun, any mechanics' and materialmen's Liens will be covered by title insurance, surety bond or other security satisfactory to Lender.

## ARTICLE III. COVENANTS AND AGREEMENTS OF BORROWER

**SECTION 3.01. Construction of Project.** Borrower shall cause (a) construction of the Project to be commenced within ten (10) days after the date hereof, (b) work on the Project to be carried on continuously and with diligence until completed, and (c) the Project to be fully completed in accordance with the Plans and Specifications on or before the Conversion Date. Borrower will devote all reasonable efforts and energy to the construction of the Project. Borrower shall locate and construct the Project strictly in accordance with the Plans and Specifications and with all applicable Governmental Requirements.

**SECTION 3.02. Changes in Plans and Specifications; No Cost Overruns.** The Plans and Specifications shall not be changed or added to without the prior written consent of Lender. If any changes in the Plans and Specifications shall be consented to, Borrower shall immediately

deposit the additional cost thereof with the Lender (such deposit to be disbursed by Lender upon the completion of the changes). Borrower shall not, without the prior written consent of Lender, permit the cost of the Project to the Borrower to exceed the amount allocated to the cost of the Project in the Project Budget.

**SECTION 3.03. Use of Loan Proceeds.** Borrower shall use the Loan proceeds only for the purpose of paying Project Costs and shall not allow any of the Loan Proceeds or any of the funds of Borrower that are to be invested in the Project to be commingled with the proceeds of other lenders or other loans or use any of the Loan Proceeds for the construction of other improvements or another project. Lender reserves the right, at any time, to require satisfactory proof as to the disposition made of any Advances. Nothing contained herein shall be construed to require Lender to follow the disposition, or to monitor the proper application, of any Advances. If the Project Costs include any "soft" costs, such as sewer impact fees, permits, real estate commissions, etc., the amount of such costs may, in Lender's sole discretion, be disbursed at the closing of the Loan. If such "soft" costs are disbursed at the closing of the Loan, they will be withheld from the amount of the next Advance made under the Loan on the basis of work-in-place.

**SECTION 3.04. Payment of Bills, etc.** Borrower shall pay or cause to be paid promptly all bills for labor and materials going into the construction of the Project and all other charges related to the Project, and shall submit to Lender all such receipts, affidavits, canceled checks or other evidence of payment of all debts connected with the Project as may be requested by Lender from time to time. Borrower shall, on each check used to pay costs related to the Project, identify the bill, invoice or statement being paid and the Project by a reference to the lot and block number or other identification of the Real Estate satisfactory to Lender.

**SECTION 3.05. Sale or Encumbrance of Collateral, Assumption of Loan.**

(a) The Security Instrument may prohibit sales, leases, transfers, assignments, conveyances or other disposals of all or part of the Collateral without the consent of Lender. Any such provisions of the Security Instrument are hereby incorporated in this agreement by reference and made a part hereof. Borrower should refer to the Security Instrument for further information.

(b) Borrower will not, without the prior written consent of Lender, grant any Lien on any of the Collateral (whether superior or inferior to or on a parity with, the Liens of the Security Documents), and Borrower will not permit or suffer any Liens, statements of Lien or suits seeking to establish or enforce a Lien to be filed against any of the Collateral. (c) Notwithstanding any provisions to the contrary contained in any of the other Loan Documents (any such provisions being hereby declared null and void to the extent they conflict with this paragraph) Borrower's rights and obligations under this agreement and the other Loan Documents may not be assigned to, or assumed by, any other person until after the Conversion Date and, then, only in accordance with the terms of the Security Instrument and the Note.

**SECTION 3.06. Payment of Expenses, etc.** Borrower shall pay all taxes, insurance premiums, recording fees, title insurance premiums, title examination fees, survey fees, appraisal costs, fees and expenses of the Construction Inspector, attorneys' fees (including the reasonable fees and disbursements of Lender's counsel) and all other expenses and costs of every kind reasonably incurred by Lender in connection with (a) the making or collecting of the Loan, (b) the preparation and review of this agreement (whether or not the transactions contemplated by this agreement shall be consummated) and the other Loan Documents, (e) the enforcement of this agreement and the other Loan Documents, (d) maintaining unimpaired Lender's Lien under the

Security Documents, and (e) otherwise connected with, or growing out of, this transaction, including any such expenses and costs incurred in connection with the successful defense of any action, counterclaim, cross-claim or other claim asserted by any other party against Lender in connection with any of the foregoing. The provisions of this Section 3.06 shall survive (i) the payment in full of the principal and interest on the Loan and all fees, charges and expenses related thereto and (ii) the termination of this agreement.

**SECTION 3.07 Payment of Taxes, etc.** Borrower shall promptly pay and discharge, to the extent Funds are not otherwise available for such payment, any taxes assessments, indebtedness and claims against the Collateral, or any part thereof, that may become due and payable during the existence of the Loan.

**SECTION 3.08. Performance and Payment bonds.** If requested by Lender, Borrower agrees to require the Contractor and all other contractors with whom Borrower may contract for construction of any substantial portion of the Project to furnish a bond or bonds covering the faithful performance of his contract and the payment of all obligations for labor and materials arising thereunder. Each such bond shall be in a form and with a surety acceptable to Lender and shall name Lender as a dual obligee.

**SECTION 3.09. Insurance.** Borrower shall keep all Improvements fully insured at all times during construction and after completion, and shall keep fully insured all Personal property included in the Collateral, including, without limitation, all building materials at any time located on the Real Estate. In addition, Borrower shall cause the Contractor to maintain such workmen's compensation insurance in connection with the Project as may be required by law and Borrower shall, and shall cause the Contractor to, maintain general liability insurance in such amounts as Lender may reasonably require. All such insurance policies shall be issued by such companies and insure against such hazards (including flood) as Lender may reasonably require, and, if requested by Lender, such policies shall contain appropriate loss payable clauses in favor of Lender and the originals thereof shall be deposited with Lender.

**SECTION 3.10. Lender's Right of Access, etc,** Lender, its agents and the Construction Inspector shall, at all reasonable times during the construction of the Project, have the right of entry and free access to the Project and the right to inspect all work done, labor performed and materials furnished in, on or connected with the Project, to inspect all books, contracts, subcontracts and records of Borrower relating to the Project, and to demand and receive from Borrower, the Contractor, and Borrower's agents and employees any information regarding the Project and the finances connected therewith. Borrower acknowledges and agrees that any inspections made by or on behalf of Lender are for the sole use and benefit of Lender in administering the Loan. Borrower further acknowledges and agrees that in making or causing to be made any inspections or in making Advances pursuant to inspections, Lender does not make any representation or warranty whatsoever to Borrower or to any other party as to the existence, quality or quantity of the work performed on the Project or the materials incorporated into the Project. Borrower hereby releases Lender from any and all claims Borrower may have, now or in the future, with respect to relating to, or in any way arising out of Lender's inspections of the Project, and Borrower further agrees to save, defend and indemnify Lender from glad against any claims or demands of third parties with respect to relating to or in any way arising out of any such inspections.

**SECTION 3.11. Sign.** Borrower agrees that Lender may at Lender's expense and prior to the Conversion Date, have a sign satisfactory to Lender constructed and placed on the Real

Estate in a location satisfactory to Lender stating that the Project is being built with the proceeds of a construction loan by Lender.

**SECTION 3.12. Construction Contract.**   Borrower's construction contract with the Contractor must provide for all work required to complete the Project and must contain the following items: (a) a Completion Date _____?_____ (specified by day, month and year) which shall be prior to the Conversion Date; (b) a provision that no change in the scope of the work, no increases or decreases in the contract amount (by change order or otherwise), and no extension of the completion date may be made without the prior written consent of Lender; (c) a specified amount; and (d) an itemized budget. Borrower shall deliver a copy of said contract to Lender.

**SECTION 3.13. Borrower's Equity and Undisbursed Proceeds.**  Borrower agrees to pay all Project Costs until an amount equal to Borrower's Equity has been injected into the Project before requesting an Advance. No portion of Borrower's Equity maybe withdrawn from the Project prior to payment of the Loan in full. At all times, Borrower will leave as the undisbursed portion of the Loan an amount that will be sufficient to complete the Project in accordance with the Plans and Specifications and to pay all bills and charges in connection therewith. If Lender at any time is of the opinion that the undisbursed portion of the Loan is inadequate under the formula set forth in the immediately preceding sentence, Borrower will, upon Lender's request, pay out of Borrower's own funds all costs of tine Project until such time as the undisbursed portion of the Loan is, in Lender's opinion, sufficient under that formula.

**SECTION 3.14. Conversion to Permanent Loan.**   Borrower covenants and agrees that Borrower shall furnish, or cause to be furnished, to Lender, at least 10 days prior to the Conversion Date, the following documents, all in form and content satisfactory to Lender:

(a) A final as-built survey showing the location of all improvements, rights of way, easements, encroachments, encumbrances and other matters (either of record or visible) on or affecting the Real Estate, such survey to be certified in favor of Lender, its successors and assigns. (b) An endorsement, in form and content satisfactory to Lender, to the mortgagee title insurance policy obtained pursuant to Section 1.06 of this agreement deleting any "pending disbursements" clause, any exception for mechanics' and materialness liens, any other language generally applicable to construction loans and any survey exception, and containing no exceptions other than those contained in the original mortgagee title insurance policy obtained pursuant to said Section 1.06; (c) A paid-up original hazard insurance policy or policies meeting the requirements of Section 3.09 of this agreement; (d) If applicable, a Certificate of Occupancy and an approval of any private or community well or septic system from the appropriate Governmental Authority, all of which must be in form and content satisfactory to Lender; (e) A final appraisal from an independent appraiser acceptable to Lender indicating the value of the Project as completed with walks/drives and landscaping to be at least equal to the Appraised Value, which final appraisal shall be ordered by Lender; (f) the sum required to be paid to the Lender by the Borrower on the Conversion Date pursuant to Section 1.07 of this agreement; (g) A termite bond and a soil treatment letter in form and content acceptable to Lender and from a reputable pest control company acceptable to Lender and from a reputable pest control company acceptable to Lender; (h) If the yearly taxes and assessments which may attain priority over the Security Instrument or the yearly ground rents on the Real Estate, if any, have come due since the date of this agreement, evidence satisfactory to Lender that the same have been paid (i) Lien waiver from builder/borrower; and (j) Any other conditions of loan conversion. Unless and until Borrower has completely satisfied and fulfilled all of the conditions and requirements of this

Section 3.14, Lender shall have no duty or obligation to disburse the Holdback Amount. On the Conversion Date, the Construction Period shall automatically end and the Permanent Loan Term will begin without the necessity of execution of further documentation. In any event, at the request and in the discretion of Lender, Borrower will execute any and all documentation on or ten days prior to the Conversion Date, including, but not limited to, a Modification Agreement (to be effective as of the Conversion Date), and deliver such documentation to Lender and pay all costs and expenses of the same. Borrower shall also furnish Lender with an endorsement to the mortgagee title insurance policy obtained pursuant to Section 1.06 of this agreement insuring the continued priority lien of the Security Instrument, as modified by the recorded Modification Agreement (if a Modification Agreement is applicable).

**SECTION 3.15. General Covenants.** Borrower covenants and agrees that from the date hereof and until payment in full of the principal of and interest on the Note and all fees and charges with respect thereto, and the termination of this agreement by Lender in writing, unless Lender shall otherwise consent in writing, Borrower will:

(a) Do all things necessary to comply with all Governmental Requirements; at all times maintain, preserve and protect all of the Collateral and keep the same in good repair, working order and condition, and from time to time make all needful and proper repairs, replacements and improvements thereto.

(b) Furnish to Lender at such times or intervals as Lender may reasonably request, reports of the progress of construction of the Project, the actual cost of the Improvements compared to estimates, and such other information regarding the Project as Lender may reasonably request.

(c) Promptly notify Lender in writing of any action, suit or proceeding against any Obligor or any of the Collateral by or before any Governmental Authority.

(d) Promptly give notice in writing to Lender of the occurrence of any Event of Default, or any event that upon notice or lapse of time or both would constitute an Event of Default.

(e) (i) Make full and timely payment of the principal of, and interest on, the Loan and all other indebtedness, obligations and liabilities of Borrower to Lender, whether now existing or hereafter arising, and (ii) duly comply with all the terms and covenants contained in this agreement and the other Loan Documents, all at the times and places and in the manner set forth therein.

(f) At Borrower's cost and expense, upon request of Lender, duly execute and deliver, or cause to he duly executed and delivered, to Lender such further instruments and do and cause to be done such further acts as may be reasonably necessary or proper in the opinion of Lender or its counsel to carry out more effectively the provisions and purposes of this agreement and the other Loan Documents.

(g) (i) Except as has been heretofore disclosed in writing to Lender with specific reference to this section, (1) there are not now and shall not in the future be any toxic substances, hazardous wastes or other hazardous materials on or under the Real Estate or in the improvements, and no toxic or hazardous substances or materials will be stored upon or utilized in operations on the Real Estate, and no such substances or materials have been or will be utilized in the construction of the Improvements, (2) there are no underground storage tanks, whether in use or not in use, located in, on or under any part of the Real Estate, (3) there are no pending claims or threats of claims by private or governmental or administrative authorities relating to

environmental impairment, conditions, or regulatory requirements with respect to the Real Estate, (4) the Real Estate and its use fully complies with all applicable building and zoning codes and other land use regulations, any applicable environmental laws or regulations, and any other applicable laws or regulations, (5) no part of the Real Estate has been artificially filled, and (6) Borrower shall give immediate oral and written notice to Lender of its receipt of any notice of a violation of any law, rule or regulation covered by this paragraph, or of any notice of any other claim or of its discovery of any matter which would make the representations, warranties and/or covenants herein inaccurate or misleading in any respect.

(ii) Borrower hereby agrees to indemnify and hold Lender harmless from all loss, cost, damage, claim and expense incurred by Lender on account of (1) the violation of any representation, warranty or covenant set forth in Section 3.15(g)(i) above, (2) Borrower's failure to perform any obligations of said Section 3.15(g)(i), (3) Borrower's or the Real Estate's or Improvements' failure to fully comply with all environmental laws, rules and regulations, or with all occupational health and safety laws, rules and regulations, or (4) any other matter related to environmental conditions on, under or affecting the Real Estate or Improvements. This indemnification shall survive the closing of the Loan, payment of the indebtedness evidenced by the Notes, the exercise of any right or remedy under any Loan Documents, any subsequent sale or transfer of the Real Estate or the Improvements, and all similar or related events or occurrences.

## ARTICLE IV. DEFAULT AND REMEDIES

**SECTION 4.01. Events of Default.** The following shall constitute Events of Default under this agreement:

(a) if Borrower fails to pay to Lender when due the principal or interest on the Loan or any other sum due under this agreement or any of the other Loan Documents, or any other debt secured thereby; or (b) if in the judgment of Lender any of the proceeds of the Loan are being, or at any time have been, diverted to a purpose other than payment or discharge of Project Costs; or (c) if Borrower fails to comply with any of the provisions of this agreement (including, without limitation, the requirements in Section 3.14) or any of the other Loan Documents or if any other default or event of default occurs thereunder; or (d) if any statement, representation or warranty contained herein, in any of the other Loan Documents or in any report, certificate or other instrument delivered to Lender under this agreement or any of the other Loan Documents shall be untrue in any material respect as of the time made; or (e) if Borrower at any time prior to the completion of the Project abandons the Project, or ceases work thereon for a period of more than ten consecutive calendar days, or fails diligently to prosecute the work on the Project; or (f) if any unreasonable delay in the construction and development of the Project and the Improvements occurs, whether as the result of energy shortages, any Governmental Requirement relating to environmental protection, sewage treatment, zoning, energy conservation or other matter, lack of utilities (including but not limited to gas, electricity, water and sewage treatment), or other reason whatsoever, or if it reasonable appears to Lender that, upon completion of the Project there will not be adequate access to the Project or that utilities will not be available in sufficient quantities to permit the operation of the Project; or (g) if any Obligor fails to pay such Obligor's debts generally as they come due, or if a receiver, trustee, liquidator or other custodian is appointed for any Obligor or for any of the property of any Obligor, or if a petition in bankruptcy (whether for liquidation, reorganization, arrangement, wage earner's plan or otherwise) is filed by or against any Obligor, or if any Obligor applies for the benefits of, or takes advantage of, any law for relief of debtors, or enters into an arrangement or composition with, or makes an assignment for the benefit of, creditors;

or (h) if any Obligor dies, if an individual; or dissolves, if a corporation or partnership; or, if a partnership, if any general partner becomes insolvent, dies or is replaced or withdraws; or if a corporation, if any principal officer thereof becomes insolvent, dies or ceases to be employed by such Obligor; or (i) if any law is passed imposing, or authorizing the imposition of, any specific tax (other than existing recording fees and taxes) upon this agreement, any of the other Loan Documents, the principal of or interest on, the Loan, or permitting or authorizing the deduction of any such tax from the principal of, or interest on, the Loan, or by virtue of which any tax, Lien or assessment upon the Collateral shall be chargeable against Lender; or (j) if any of the material stipulations contained in this agreement or any of the other Loan Documents is declared invalid or inoperative by any Governmental Authority; or (k) if any Guarantor terminates or defaults in the performance of his obligations under his Guaranty Agreement; or (l) if any Governmental Authority institutes forfeiture proceedings against the Real Estate or the Improvements as a result of a violation or alleged violation of any Governmental requirement or any other applicable federal, state or local law, rule or regulation; or (m) if any Lien (except Liens permitted by the Security Instrument), statement of Lien or suit to enforce a Lien is filed against any of the Collateral and such Lien is not satisfied or suit dismissed or the payment of the amount claimed thereby is not secured by a bond, letter of credit, or other security satisfactory to Lender within ten days after the filing thereof; or (n) if Lender at any time in good faith deems itself insecure for any reason with respect to the Loan or the Collateral.

**SECTION 4.02. Remedies.** Upon the happening of any Event of Default hereunder, Lender may at its option, without notice to anyone, take any or all of the following actions:

(a) refuse to make any further Advances; (b) declare the total outstanding Loan and all other indebtedness, obligations and liabilities of Borrower to Lender, whether now existing or hereafter incurred, contracted or arising, immediately due and payable; (c) declare the Note in default and subject to foreclosure and foreclose the Security Instrument by suit in equity or under power of sale and foreclose any other of the Security Documents in such manner as provided for therein and by applicable law; (d) enter into possession of the Real Estate and the Project, perform any work and labor and purchase any materials and fixtures that Lender deems necessary or desirable to complete the Project substantially in accordance with the Plans and Specifications or to protect the Project from damage or destruction, and employ watchmen to protect the Project from injury; and (e) exercise any other remedies or rights that Lender may have hereunder, under any of the other Loan Documents or applicable law, including the right to specific performance.

All sums paid or advanced by Lender in exercising any of the foregoing remedies shall constitute advances to Borrower under the Loan (whether or not in excess of the Loan amount) and shall bear *interest* at the rate set forth in the Note and be secured by the Security Documents. For the purposes set forth in this Section 4.02, Borrower hereby constitutes and appoints Lender its true and lawful attorney-in-fact, with full power of substitution in the premises, to complete the Project in the name of Borrower, and hereby empowers Lender to use any funds of Borrower, including any funds that remain unadvanced under the Loan, for the purpose of completing the Project, and to perform all acts that in the judgement of Lender are desirable or advisable to complete the Project, including, without limitation, the right to make additions, changes or corrections in the Plans and Specifications; to employ contractors, subcontractors, agents, architects and inspectors: to pay, settle and compromise all bills and claims incurred in completing the Project and all existing bills and claims which may be Liens against any of the Collateral; to execute all applications and certificates in the name of Borrower which may be required by any of the documents entered into by Borrower in connection with the construction of the Project; and to do any other act that Borrower could do in Borrower's own behalf in order to enable Lender to complete the Project and pay

the Loan. This power of attorney shall be deemed to be a power coupled with an interest and cannot be revoked, in addition to the other remedies set forth above, during the continuation of any event which upon notice or lapse of time or both would become an Event of Default, Lender shall have no obligation to make any further Advances hereunder.

## ARTICLE V. MISCELLANEOUS

**SECTION 5.01. Notices.** Any request, demand, authorization, direction, notice, consent or other document provided or permitted by this agreement to be made upon, given or furnished to, or filed with, Lender or Borrower shall be sufficient for every purpose hereunder if in writing and mailed, first-class postage prepaid (except as otherwise provided in this agreement), addressed to such person at the address set forth below:

(a) if to Lender, at:

> 538 Broadhollow Rd
> Melville, NY  11747

(b) if to Borrower, at the address set forth in Section 1.01(o) of this agreement.

**SECTION 5.02. Survival of Warranties; etc.** All covenants, agreements, representations and warranties made in this agreement, in any document delivered pursuant to this agreement and the other Loan Documents shall survive the making by Lender of the Loan and the execution and delivery to Lender of this agreement and the other Loan Documents and shall continue in full force and effect so long as the Note, or any part thereof, is outstanding and unpaid and this agreement has not been terminated by Leader in writing. Whenever in this agreement or any of the other Loan Documents any party is referred to, such reference shall be deemed to include the successors and assigns of such party. All covenants, promises and agreements by or on behalf of Borrower which are contained in this agreement or any of the other Loan Documents shall bind Borrower's successors and assigns and shall inure to the benefit of the successors and assigns of Lender.

**SECTION 5.03 Governing Law.** This agreement and the other Loan Documents shall be construed in accordance with and governed by the laws of the state where the Real Estate is located, except as specifically provided therein to the contrary.

**SECTION 5.04. Non-Waiver.** Neither any failure nor any delay on the part of Lender in exercising any right, power or privilege under this agreement or any of the other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege.

**SECTION 5.05. Modification, etc.** No modification, amendment or waiver of any provision of this agreement or any of the other Loan Documents, and no consent to any departure by Borrower therefrom, shall be effective unless the same shall be in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which is given. No notice to or demand on Borrower in any case shall entitle Borrower to any other or further notice or demand in the same, similar or other circumstances.

**SECTION 5.06. Severability.** Any provision of this agreement or any other Loan Document to which Borrower is or is to be a party which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability

without Invalidating the remaining provisions hereof or thereof or affecting the validity or enforceability of such provision in any other jurisdiction.

**SECTION 5.07. Counterparts.** This agreement may be executed in two or more counterparts, each of which shall constitute an original, but when taken together all such counterparts shall constitute but one agreement, and any party may execute this agreement by executing any one or more of such counterparts.

**SECTION 5.08. Lender's Right to Appear in Litigation.** Lender shall have the right, but not the obligation, to appear in, or to defend any action or proceeding purporting to affect the rights or duties of the parties, or any of them, under this agreement or any of the other Loan Documents, and in connection therewith, Lender may pay out of the Loan proceeds all necessary expenses, employ counsel, and pay reasonable attorney's fees and disbursements, for all of which Borrower agrees to repay Lender upon demand.

**SECTION 5.09. Miscellaneous.** Plural or singular words used in this agreement to designate Borrower shall be construed to refer to the person, whether one or more than one, executing this agreement; all covenants and agreements made herein by Borrower shall bind the heirs, personal representatives, successors and assigns of all those undersigned designated as Borrower; and every option, right and privilege herein reserved or secured to Lender shall inure to the benefit of Lender's successors and assigns. Time is of the essence of this agreement.

**SECTION 5.10. Time of the Essence.** Time is of the essence in the performance of each covenant contained in this Agreement or in the Note, the Security Instrument or any other document or instrument executed in connection with the Loan.

**SECTION 5.11. Participations.** Borrower understands that Lender may enter into a participation agreement with a participant (the "Participant"). Under such an agreement, Participant shall be given a participation in the Loan. Borrower acknowledges that Participant may, for the convenience of Lender and Participant, make Advances under this Agreement directly to Borrower from Participant's own funds. Borrower agrees that any and all Advances, whether made by Lender or any Participant, shall be deemed to be Advances under this Agreement, and Borrower shall be obligated to repay such Advances as part of the principal amount of the Loan. Borrower agrees that any Participant may exercise any and all rights of banker's lien or set-off, whether arising by operation of law or given to Lender by the provisions of this Agreement or the Note, with respect to Borrower as fully as if such Participant had made the Loan directly to Borrower. For the purposes of the immediately preceding sentence only, Borrower shall be deemed to directly obligated to each Participant in the amount of its participating interest in the principal of and interest on the Loan.

**SECTION 5.12. Additional Terms.** The additional terms and provisions, if any, set forth in any other document signed by the Lender and Borrower are incorporated herein by reference.

**SECTION 5.13 No Third Party Beneficiaries.** Borrower and Lender hereby acknowledge and agree that this Agreement is for the benefit and convenience of Lender and Borrower only and for no other party. This Agreement shall not be construed as creating any third party beneficiary rights in favor of any other person or entity whatsoever, including, without limitation, the Contractor.

IN WITNESS WHEREOF, Borrower and Lender have executed this agreement.

Lender:  American Home Mortgage

By:_____

Its:_____

_____
Borrower    SHERVONNE  POWELL

_____
Borrower

_____
Borrower

_____
Borrower

Loan Number:    0001775465

Date:    06/15/07

Lender:    American Home Mortgage

Borrower(s):    SHERVONNE POWELL

**EXHIBIT "A"**
(Real Estate Description - print property address and legal)

EXHIBIT A

BEGINNING FOR THE THIRD on the east side of Barclay Street thirty feet northerly from the corner formed by the intersection of the east side of Barclay Street and the north side of Twenty Seventh Street and running thence from said beginning point along the east side of Barclay Street northerly fifteen feet to a point in line with the centre line of a partition wall thence easterly parallel with Twenty Seventh Street and passing through the centre of the said partition wall seventy eight feet to the west side of an alley ten feet wide there situate thence southerly parallel with Barclay Street and binding on the west side of said alley with the use thereof in common fifteen feet to a point in line with the centre line of a partition wall thence westerly parallel with Twenty Seventh Street and passing through the centre of said partition wall seventy eight fee to the place of beginning.

The improvements thereon being known as No. 2705 Barclay Street, Baltimore, Maryland 21218.

**EXHIBIT D**

American Home Mortgage
Construction Lending Department
Transaction History for Note Number : 1775465        Note Unit : 001
Borrower Name: Shervonne Powell
Property Address: 2705 Barclay Street
Legal Desc: Lot 6SC, blk 3845, sec 17

| | Unit | Eff. Date | Input Date | Trans. Memo | TranCode | Amount | Check No | Retained | TranCode Desc | Posted By |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 001 | 06/15/2007 | 06/19/2007 | Rate Change F | | $ .00 | | | (7.) | DBSERVANT |
| 2 | 001 | 06/15/2007 | 06/19/2007 | Land | 1015 | $ 80,000.00 | | | Initial Draw from Commitment | LPASCALE |
| 3 | 001 | 06/15/2007 | 06/19/2007 | Closing Costs | 1015 | $ 7,363.00 | | | Initial Draw from Commitment | LPASCALE |
| 4 | 001 | 06/15/2007 | 06/19/2007 | Construction Admin Fee | 1015 | $ 700.00 | | | Initial Draw from Commitment | LPASCALE |
| 5 | 001 | 06/15/2007 | 06/19/2007 | Refund Of Deposit | 1015 | $ 2,000.00 | | | Initial Draw from Commitment | LPASCALE |
| 6 | 001 | 06/15/2007 | 06/19/2007 | inspections six | 3020 | $ 600.00 | | | Adjustment to Loan Deposit Amount | LPASCALE |
| 7 | 001 | 06/15/2007 | 06/19/2007 | New Loan Commitment (from Pipeli | 6000 | $ 140,000.00 | | | New Loan Commitment | LPASCALE |
| 8 | 001 | 06/15/2007 | 06/20/2007 | INTEREST BILLING - PERIOD END | 9600 | $ 310.90 | | | Interest Receivable | DBSERVANT |
| 9 | 001 | 07/01/2007 | 07/11/2007 | Interest Reserve | 1030 | $ 310.90 | | | Line Item Disb From Commit - Check | MTILLETT |
| 10 | 001 | 07/01/2007 | 07/11/2007 | Interest Reserve | 1030 | ($ 310.90) | | | Line Item Disb From Commit - Check | MTILLETT |
| 11 | 001 | 07/10/2007 | 07/10/2007 | Lock Box Payment | 8650 | $ 310.90 | 1473 | | Interest Receivable Pmt - CK | DBSERVANT |
| 12 | 001 | 07/18/2007 | 07/18/2007 | Masonry | 1010 | $ 500.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 13 | 001 | 07/18/2007 | 07/18/2007 | Roof | 1010 | $ 400.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 14 | 001 | 07/18/2007 | 07/18/2007 | Interior Doors | 1010 | $ 30.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 15 | 001 | 07/18/2007 | 07/18/2007 | Partition Walls | 1010 | $ 785.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 16 | 001 | 07/18/2007 | 07/18/2007 | Plaster/Drywall | 1010 | $ 1,000.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 17 | 001 | 07/18/2007 | 07/18/2007 | Plumbing | 1010 | $ 350.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 18 | 001 | 07/18/2007 | 07/18/2007 | Electrical | 1010 | $ 1,000.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 19 | 001 | 07/18/2007 | 07/18/2007 | Clean Up | 1010 | $ 1,000.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 20 | 001 | 07/18/2007 | 07/18/2007 | Contingency | 1010 | $ 1,770.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 21 | 001 | 07/18/2007 | 07/18/2007 | Inspections | 1010 | $ 750.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 22 | 001 | 07/18/2007 | 07/18/2007 | Permits | 1010 | $ 300.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 23 | 001 | 07/18/2007 | 07/18/2007 | Contingency | 1010 | $ 3,314.50 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 24 | 001 | 07/31/2007 | 07/20/2007 | INTEREST BILLING - PERIOD END | 9600 | $ 636.20 | | | Interest Receivable | MBURCH |
| 25 | 001 | 08/01/2007 | 08/15/2007 | | 1020 | $ 636.20 | | | Auto-Ded Int. Pymt from Commit. | MBURCH |
| 26 | 001 | 08/01/2007 | 08/15/2007 | | 8680 | $ 636.20 | | | Auto-Ded Int. Receivable Pmt | MBURCH |
| 27 | 001 | 08/06/2007 | 08/06/2007 | Inspection Fee | 3050 | $ 100.00 | | | Inspection Fee from Deposit - No GL | CBRYAN |
| 28 | 001 | 08/06/2007 | 08/06/2007 | Inspection Fee | 3050 | $ 100.00 | | | Inspection Fee from Deposit - No GL | CBRYAN |
| 29 | 001 | 08/06/2007 | 08/06/2007 | Inspection Fee | 3050 | $ 100.00 | | | Inspection Fee from Deposit - No GL | CBRYAN |
| 30 | 001 | 08/31/2007 | 08/21/2007 | INTEREST BILLING - PERIOD END | 9600 | $ 681.53 | | | Interest Receivable | MBURCH |
| 31 | 001 | 09/01/2007 | 09/18/2007 | | 1020 | $ 681.53 | | | Auto-Ded Int. Pymt from Commit. | MBURCH |
| 32 | 001 | 09/01/2007 | 09/18/2007 | | 8680 | $ 681.53 | | | Auto-Ded Int. Receivable Pmt | MBURCH |
| 33 | 001 | 09/16/2007 | 09/18/2007 | LATE FEE | 9700 | $ .00 | | | Late Fee Receivable | MBURCH |
| 34 | 001 | 09/16/2007 | 09/18/2007 | Receivable Adjust (L) 09/16/2007 | 9700 | ($ 34.08) | | | Late Fee Adjustment | MBURCH |
| 35 | 001 | 09/18/2007 | 09/19/2007 | Inspection Fee | 3050 | $ 100.00 | | | Inspection Fee from Deposit - No GL | MTILLETT |
| 36 | 001 | 09/19/2007 | 09/19/2007 | Roof | 1010 | $ 400.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 37 | 001 | 09/19/2007 | 09/19/2007 | Interior Doors | 1010 | $ 240.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 38 | 001 | 09/19/2007 | 09/19/2007 | Wood Trim | 1010 | $ 150.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 39 | 001 | 09/19/2007 | 09/19/2007 | Plumbing | 1010 | $ 6,650.00 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 40 | 001 | 09/19/2007 | 09/19/2007 | Electrical | 1010 | $ 2,774.50 | W | | Line Item Draw from Commit - Wire | MTILLETT |
| 41 | 001 | 09/30/2007 | 09/19/2007 | INTEREST BILLING - PERIOD END | 9600 | $ 663.96 | | | Interest Receivable | MBURCH |
| 42 | 001 | 10/01/2007 | 09/19/2007 | Auto Deduct from Commit | 1020 | $ 26.45 | | | Auto-Ded Int. Pymt from Commit. | DBSERVANT |
| 43 | 001 | 10/01/2007 | 10/05/2007 | | 1020 | $ 663.96 | | | Auto-Ded Int. Pymt from Commit. | MBURCH |

American Home Mortgage
Construction Lending Department
Transaction History for Note Number : 1775465   Note Unit : 001
Borrower Name: Shervonne Powell
Property Address: 2705 Barclay Street
Legal Desc: Lot 65C, blk 3845, sec 17

| | Unit | Eff. Date | Input Date | Trans. Memo | TranCode | Check No | Amount | Retained | TranCode Desc | Posted By |
|---|---|---|---|---|---|---|---|---|---|---|
| 44 | 001 | 10/01/2007 | 09/19/2007 | AUTO DEDUCT | 8680 | | $ 26.45 | | Auto-Ded Int. Receivable Pmt | DBSERVANT |
| 45 | 001 | 10/01/2007 | 10/05/2007 | | 8680 | | $ 663.96 | | Auto-Ded Int. Receivable Pmt | MBURCH |
| 46 | 001 | 10/31/2007 | 09/19/2007 | Interest Bill Adj (I) 09/30/2007 | 9600 | | $ 26.45 | | Interest Receivable | DBSERVANT |
| 47 | 001 | 10/31/2007 | 10/19/2007 | INTEREST BILLING - PERIOD END | 9600 | | $ 759.03 | | Interest Receivable | MBURCH |
| 48 | 001 | 11/01/2007 | 11/05/2007 | | 1020 | | $ 759.03 | | Auto-Ded Int. Pymt from Commit. | MBURCH |
| 49 | 001 | 11/01/2007 | 11/05/2007 | | 8680 | | $ 759.03 | | Auto-Ded Int. Receivable Pmt | MBURCH |
| 50 | 001 | 11/26/2007 | 11/26/2007 | Points Paid | 4500 | | $ 4,200.00 | | Points Paid | JDAUPHIN |
| 51 | 001 | 11/30/2007 | 11/20/2007 | INTEREST BILLING - PERIOD END | 9600 | | $ 739.46 | | Interest Receivable | MBURCH |
| 52 | 001 | 12/01/2007 | 12/04/2007 | Interest Reserve | 1020 | | $ 540.83 | | Auto-Ded Int. Pymt from Commit. | MBURCH |
| 53 | 001 | 12/01/2007 | 12/04/2007 | Interest Reserve | 8680 | | $ 540.83 | | Auto-Ded Int. Receivable Pmt | MBURCH |
| 54 | 001 | 12/16/2007 | 12/16/2007 | LATE FEE | 9700 | | $ .00 | | Late Fee Receivable | MBURCH |
| 55 | 001 | 12/17/2007 | 12/17/2007 | | 8650 | 645 | $ 198.63 | | Interest Receivable Pmt - CK | MBURCH |
| 56 | 001 | 12/31/2007 | 12/19/2007 | INTEREST BILLING - PERIOD END | 9600 | | $ 767.72 | | Interest Receivable | DBSERVANT |
| 57 | 001 | 01/09/2008 | 01/09/2008 | Lock Box Payment | 8650 | 790448 | $ 226.89 | | Interest Receivable Pmt - CK | DBSERVANT |
| 58 | 001 | 01/16/2008 | 01/16/2008 | LATE FEE | 9700 | | $ 27.04 | | Late Fee Receivable | DBSERVANT |
| 59 | 001 | 01/31/2008 | 01/18/2008 | INTEREST BILLING - PERIOD END | 9600 | | $ 767.72 | | Interest Receivable | DBSERVANT |
| 60 | 001 | 02/01/2008 | 02/01/2008 | Lock Box Payment | 8650 | 571772 | $ 540.83 | | Interest Receivable Pmt - CK | DBSERVANT |
| 61 | 001 | 02/01/2008 | 02/01/2008 | Lock Box Payment | 8650 | 571772 | $ 35.17 | | Interest Receivable Pmt - CK | DBSERVANT |
| 62 | 001 | 02/12/2008 | 02/12/2008 | Lock Box Payment | 1050 | 1054304 | $ 8.13 | | Principal Payment - Wire | DBSERVANT |
| 63 | 001 | 02/12/2008 | 02/12/2008 | Lock Box Payment | 8650 | 1054304 | $ 732.55 | | Interest Receivable Pmt - CK | DBSERVANT |
| 64 | 001 | 02/12/2008 | 02/12/2008 | Lock Box Payment | 8700 | 1054304 | $ 27.04 | | Late Fee Receivable Pmt - CK | DBSERVANT |
| 65 | 001 | 02/29/2008 | 02/20/2008 | INTEREST BILLING - PERIOD END | 9600 | | $ 718.16 | | Interest Receivable | DBSERVANT |
| 66 | 001 | 03/12/2008 | 03/12/2008 | Lock Box Payment | 1050 | 2173683 | $ 49.56 | | Principal Payment - Wire | DBSERVANT |
| 67 | 001 | 03/12/2008 | 03/12/2008 | Lock Box Payment | 8650 | 2173683 | $ 718.16 | | Interest Receivable Pmt - CK | DBSERVANT |
| 68 | 001 | 03/31/2008 | 03/20/2008 | INTEREST BILLING - PERIOD END | 9600 | | $ 767.46 | | Interest Receivable | MBURCH |
| 69 | 001 | 04/08/2008 | 04/09/2008 | Lockbox Payment | 8650 | 3204982 | $ 767.46 | | Interest Receivable Pmt - CK | MBURCH |
| 70 | 001 | 04/30/2008 | 04/18/2008 | INTEREST BILLING - PERIOD END | 9600 | | $ 742.58 | | Interest Receivable | DBSERVANT |
| 71 | 001 | 05/16/2008 | 05/16/2008 | Lock Box Payment | 8650 | 650 | $ 742.58 | | Interest Receivable Pmt - CK | DBSERVANT |
| 72 | 001 | 05/31/2008 | 05/20/2008 | INTEREST BILLING - PERIOD END | 9600 | | $ 767.34 | | Interest Receivable | MBURCH |
| 73 | 001 | 06/05/2008 | 06/05/2008 | | 1060 | 85168 | $ 114,527.31 | | Principal Payment - CK/JV | MBURCH |
| 74 | 001 | 06/05/2008 | 06/05/2008 | Prin Pymt - Unused Inspections | 1100 | | $ 200.00 | | Remaining Insp Money to Principal | MBURCH |
| 75 | 001 | 06/05/2008 | 06/05/2008 | Inspection Fee | 3050 | | $ 200.00 | | Inspection Fee from Deposit - No GL | MBURCH |
| 76 | 001 | 06/05/2008 | 06/05/2008 | Recording Fee | 4280 | 85168 | $ 40.00 | | Mod/Extension Fee Income - CK | MBURCH |
| 77 | 001 | 06/05/2008 | 06/05/2008 | Refund of Overpayment | 4501 | 85168 | $ 74.29 | | Refund of Overpayment | MBURCH |
| 78 | 001 | 06/05/2008 | 06/05/2008 | | 7950 | 85168 | $ 25,215.00 | | Reversal of LIP Balance at Pay-Off | MBURCH |
| 79 | 001 | 06/05/2008 | 06/05/2008 | | 8650 | 85168 | $ 123.72 | | Interest Receivable Pmt - CK | MBURCH |
| 80 | 001 | 06/05/2008 | 06/05/2008 | | 8650 | 85168 | $ 767.34 | | Interest Receivable Pmt - CK | MBURCH |
| 81 | 001 | 06/05/2008 | 06/05/2008 | Interest Receivable | 9600 | | $ 123.72 | | Interest Receivable | MBURCH |

**EXHIBIT E**

**From:** Marva Tillett
**Sent:** Wednesday, July 18, 2007 1:07 PM
**To:** 'shevygp@hotmail.com'
**Subject:** L-1775465 (Building Permit)

Hi Ms. Powell,

Per our conversation today, I am still waiting for a copy of the **Building Permit** along with a email
from you advising me to use part of your Contingency.    If these items are not received, I cannot
disburse the wire.

Thank you.

*Marva Tillett*
American Home Mortgage
Construction Lending Specialist
538 Broadhollow Road
Melville, NY 11747
Telephone: (631)-622-2423
Direct Fax: (866) 316-7688
**Marva.Tillett@americanhm.com**

×

```
                          Ex E2 - Authorization.txt
From: Shervonne Powell [shevygp@hotmail.com]
Sent: Wednesday, July 18, 2007 2:49 PM
To: marva.tillett@americanhm.com
Subject: Contingency authorization ...

Hi Marva,
My apologies, my first email bounced back. Per our phone conversation, I am
authorizing half of my contingency funds to be applied to the initial draw.

Thanks very much for all of your help!
Shervonne Powell
1775465
```

http://im.live.com/messenger/im/home/?source=hmtextlinkjuly07

**EXHIBIT F**

**From:** Shervonne Powell
**Sent:** Tuesday, September 18, 2007 3:32 PM
**To:** Marva Tillett
**Subject:** RE: L-1775465

I'll ask him to fax it again, he said he faxed it on Thursday of last week.   No prob! I'll have him send it again.

Thanks!

Subject: RE: L-1775465
Date: Tue, 18 Sep 2007 13:19:44 -0400
From: Marva.Tillett@americanhm.com
To: shevygp@hotmail.com

Hi Shervonne,

I am still waiting for the inspection report to be completed along with a signed/notarized Lien Waiver from your builder; please have him fax it to my attention ASAP at the number below.

Thank you.

Marva Tillett
American Home Mortgage
Construction Lending Specialist
538 Broadhollow Road
Melville, NY 11747
Telephone: (631)-622-2423
Direct Fax: (866) 316-7688
Marva.Tillett@americanhm.com

**From:** Shervonne Powell [mailto:shevygp@hotmail.com]
**Sent:** Tuesday, September 18, 2007 10:21 AM
**To:** Marva Tillett
**Subject:** L-1775465

Good Morning Marva,
I'm just following up on the latest draw request that I submitted last week and trying to get an idea as to when the funds will be wired to my builder. Has the inspector submitted an approval to you yet?

Thanks kindly,

Shervonne Powell

More photos; more messages; more whatever – Get MORE with Windows Live™ Hotmail®. NOW with 5GB storage. Get more!

More photos; more messages; more whatever – Get MORE with Windows Live™ Hotmail®. NOW with 5GB storage. Get more!

**EXHIBIT G**

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/9/2007

## PROPERTY INFORMATION

| | |
|---|---|
| **Lender**: American Home Mortgage | **Builder**: American Capital Contractors |
| **Loan#** : 5465 | **Builder Contact**: Anthony Harris |
| **Borrower**: Shervonne Powell | **Builder Phone**: 301-440-8870 |
| **Phone**: 703-206-2688 | **Builder Cell**: |
| **Address**: | **Builder Email**: |
| 2705 Barclay Street | **Secure Community**: No |
| Baltimore, MD  21218 | |

## DRAW INSPECTION REQUEST

| | |
|---|---|
| **Requested Date**: 7/3/2007 1:42:17 PM | **Requestor**: Tillett, Marva |
| **Inspection Date**: 7/9/2007 | **Secured**: Yes |
| **Budget Type**: Custom Budget | |

## SERVICE COMMENTS

7/3/2007 1:42:19 PM (): According to the appraisal, this is a remodel. We have informed our inspector of this. Please let us know if this is incorrect. 7/5/2007 12:32:57 PM (SKB): Marva~ Our inspector has not been able to reach the builder on 301-440-8870 as his number is unable to accept messages. Please advise of an alternate number for the builder. Thank you 7/5/2007 3:15:22 PM (LAL): Thank you Marva, for the additional contact information of 703-206-2688. We have forwarded it to our inspector.

## SIGNS/PERMITS

| | |
|---|---|
| For-Sale sign present on property. | No |
| Current permit present on property. | No |

## DRAW INSPECTION RESULTS

| | % Item Completed | Item | $ Amount Allocated | % Budget Completed | $ Completed |
|---|---|---|---|---|---|
| Requested | 0.00 % | Masonry | $500.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Roof | $800.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Exterior Doors | $800.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Interior Doors | $300.00 | 0.00 % | $0.00 |
| Requested | 100.00 % | Partition Walls | $785.00 | 1.96 % | $785.00 |
| Requested | 0.00 % | Plaster/Drywall | $1,000.00 | 0.00 % | $0.00 |
| | 0.00 % | Decorating (paint/wallpaper, etc.) | $425.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Wood Trim | $500.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Stairs | $200.00 | 0.00 % | $0.00 |
| | 0.00 % | Wood Floors | $3,500.00 | 0.00 % | $0.00 |
| | 0.00 % | Finished Floors | $4,000.00 | 0.00 % | $0.00 |
| | 0.00 % | Bath Accessories | $1,200.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Plumbing | $7,000.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Electrical | $4,000.00 | 0.00 % | $0.00 |
| | 0.00 % | Heating | $6,200.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Insulation | $200.00 | 0.00 % | $0.00 |
| | 0.00 % | Cabinets | $2,000.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Clean Up | $2,000.00 | 0.00 % | $0.00 |
| | 0.00 % | Contingency | $3,540.00 | 0.00 % | $0.00 |
| | 0.00 % | Inspections | $750.00 | 0.00 % | $0.00 |
| | 0.00 % | Permits | $300.00 | 0.00 % | $0.00 |
| | | **Total:** | $40,000.00 | 1.96 % | $785.00 |

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

**Loan #:** 1775465 Date: 7/9/2007

| NOTES / WORK REMAINING | | |
|---|---|---|
| Item | % Complete | Note |
| Clean Up | 0.00 % | Work has not started. |
| Electrical | 0.00 % | Work has not started. |
| Exterior Doors | 0.00 % | Work has not started. |
| Insulation | 0.00 % | Work has not started. |
| Interior Doors | 0.00 % | Work has not started. |
| Masonry | 0.00 % | Work has not started. |
| Partition Walls | 100.00 % | Complete. |
| Plaster/Drywall | 0.00 % | Work has not started. |
| Plumbing | 0.00 % | Work has not started. |
| Roof | 0.00 % | Work has not started. |
| Stairs | 0.00 % | Work has not started. |
| Wood Trim | 0.00 % | Work has not started. |

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/9/2007

**PHOTOS**



Front View



Partition Walls



Partition Walls



Partition Walls



Partition Walls



Partition Walls

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/9/2007

Rear View

**\*\*Please note that periodically inspectors will add photos after the original inspection has been completed. These photos will appear with a separate background color on the DDN website and the report. Please contact DDN if you have any questions about these additional photos. Thank you.\*\***

DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/9/2007

# DIGITAL DRAW NETWORK

## Invoice

**Client: American Home Mortgage**

**Attention: Marva Tillett**

| Invoice Date | Invoice No. | Invoice Amount | Terms |
|---|---|---|---|
| 07/09/2007 | 484867 | $105.00 | Net 10 Days |

| Date | Loan ID | Borrower | Inspection Fees |
|---|---|---|---|
| 7/9/2007 12:00:00 AM | 1775465 | Shervonne Powell<br>2705 Barclay Street<br>Baltimore MD, 21218 | $105.00 |
| | | | **Total Fees Due:** $105.00 |

Please remit all payments and direct inquiries to:

**Digital Draw Network**
Attn: Accounts Receivable Department
Post Office Box 708146
Sandy, UT 84070-8146

(801)302-3434
(801)302-3600 (fax)

**Quality, Service, Technology**

## DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/16/2007

### PROPERTY INFORMATION

| | |
|---|---|
| **Lender:** American Home Mortgage | **Builder:** American Capital Contractors |
| **Loan#** : 5465 | **Builder Contact:** Anthony Harris |
| **Borrower:** Shervonne Powell | **Builder Phone:** 301-440-8870 |
| **Phone:** 703-206-2688 | **Builder Cell:** |
| **Address:** | **Builder Email:** |
| 2705 Barclay Street | **Secure Community:** No |
| Baltimore, MD  21218 | |

### DRAW INSPECTION REQUEST

| | |
|---|---|
| **Requested Date:** 7/13/2007 2:50:00 PM | **Requestor:** Tillett, Marva |
| **Inspection Date:** 7/16/2007 | **Secured:** Yes |
| **Budget Type:** Custom Budget | |

### SERVICE COMMENTS

7/13/2007 2:50:21 PM (): According to the appraisal, this is a remodel. We have informed our inspector of this. Please let us know if this is incorrect. 7/16/2007 1:44:52 PM (SKW): Marva, following up on my conversation with Ayhan, we will ask our inspector to submit the inspection report with the using the budget that was submitted. Please be advised that the borrower wanted a draw for the demolition and there is no line item for demolition. Please do not hesitate to call wtih any questions. Thank you, Susan

### SIGNS/PERMITS

| | |
|---|---|
| For-Sale sign present on property. | No |
| Current permit present on property. | No |

### DRAW INSPECTION RESULTS

| | % Item Completed | Item | $ Amount Allocated | % Budget Completed | $ Completed |
|---|---|---|---|---|---|
| Requested | 0.00 % | Masonry | $500.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Roof | $800.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Exterior Doors | $800.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Interior Doors | $300.00 | 0.00 % | $0.00 |
| | 100.00 % | Partition Walls | $785.00 | 1.96 % | $785.00 |
| Requested | 45.00 % | Plaster/Drywall | $1,000.00 | 1.13 % | $450.00 |
| Requested | 0.00 % | Decorating (paint/wallpaper, etc.) | $425.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Wood Trim | $500.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Stairs | $200.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Wood Floors | $3,500.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Finished Floors | $4,000.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Bath Accessories | $1,200.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Plumbing | $7,000.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Electrical | $4,000.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Heating | $6,200.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Insulation | $200.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Cabinets | $2,000.00 | 0.00 % | $0.00 |
| Requested | 0.00 % | Clean Up | $2,000.00 | 0.00 % | $0.00 |
| | 0.00 % | Contingency | $3,540.00 | 0.00 % | $0.00 |
| | 0.00 % | Inspections | $750.00 | 0.00 % | $0.00 |
| | 0.00 % | Permits | $300.00 | 0.00 % | $0.00 |
| | | **Total:** | $40,000.00 | 3.09 % | $1,235.00 |

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/16/2007

| NOTES / WORK REMAINING | | |
|---|---|---|
| Item | % Complete | Note |
| Bath Accessories | 0.00 % | Work has not started. |
| Cabinets | 0.00 % | Work has not started. |
| Clean Up | 0.00 % | Work has not started. |
| Decorating (paint/wallpaper, etc.) | 0.00 % | Work has not started. |
| Electrical | 0.00 % | Work has not started. |
| Exterior Doors | 0.00 % | Work has not started. |
| Finished Floors | 0.00 % | Work has not started. |
| Heating | 0.00 % | Work has not started. |
| Insulation | 0.00 % | Work has not started. |
| Interior Doors | 0.00 % | Work has not started. |
| Masonry | 0.00 % | Work has not started. |
| Partition Walls | 100.00 % | Complete. |
| Plaster/Drywall | 45.00 % | Most of the drywall has been hung. Ceiling drywall remains to be hung. All drywall needs to be taped and finished. |
| Plumbing | 0.00 % | Work has not started. |
| Roof | 0.00 % | Work has not started. |
| Stairs | 0.00 % | Work has not started. |
| Wood Floors | 0.00 % | Work has not started. |
| Wood Trim | 0.00 % | Work has not started. |

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/16/2007



# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/16/2007

| Plaster/Drywall | Rear View |
|---|---|

**\*\*Please note that periodically inspectors will add photos after the original inspection has been completed. These photos will appear with a separate background color on the DDN website and the report. Please contact DDN if you have any questions about these additional photos. Thank you.\*\***

DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

Loan #: 1775465 Date: 7/16/2007

# DIGITAL DRAW NETWORK

## Invoice

**Client: American Home Mortgage**
**Attention: Marva Tillett**

| Invoice Date | Invoice No. | Invoice Amount | Terms |
|---|---|---|---|
| 07/17/2007 | 489261 | $105.00 | Net 10 Days |

| Date | Loan ID | Borrower | Inspection Fees |
|---|---|---|---|
| 7/16/2007 12:00:00 AM | 1775465 | Shervonne Powell<br>2705 Barclay Street<br>Baltimore MD, 21218 | $105.00 |
| | | | **Total Fees Due:** $105.00 |

Please remit all payments and direct inquiries to:

**Digital Draw Network**
Attn: Accounts Receivable Department
Post Office Box 708146
Sandy, UT 84070-8146

(801)302-3434
(801)302-3600 (fax)

**Quality, Service, Technology**

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

DDN Inspection: # **4**

Loan #: 1775465          Inspection Complete Date #: 9/17/2007          Invoice #: 513545

## PROPERTY INFORMATION

**Lender:** American Home Mortgage
**Loan#** : 5465
**Borrower:** Shervonne Powell
**Phone:** 703-206-2688
**Address:**
    2705 Barclay Street
    Baltimore, MD 21218

**Builder:** American Capital Contractors
**Builder Contact:** Anthony Harris
**Builder Phone:** 301-440-8870
**Builder Cell:**
**Builder Email:**
**Secure Community:** No

## INSURANCE & LICENSING EXPIRATION DATES

Contractor License:

Flood Insurance:

Performance Bonds:

Builder Risk Insurance:

General Liability Insurance:

Workers Compensation Insurance:

## DRAW INSPECTION REQUEST

**Requested Date:** 9/12/2007 3:20:40 PM
**Inspection Date:** 9/17/2007
**Budget Type:** Custom Budget

**Requestor:** Tillett, Marva
**Secured:** Yes

## SPECIAL NOTES

**Note From Inspector:** No change from last inspection. Per builder, masonry work was done inside prior to drywall installation.
Builder/Borrower contact info: Anthony 301-440-8870

## SIGNS/PERMITS

For-Sale sign present on property?    No

Current permit present on property?    No

| Previous Inspection Date | Days Since Last Inspection | Previous % Complete | This % Complete |
|---|---|---|---|
| 7/30/2007 | 0 day(s) | 30 % | 32 % |

| | % Item Completed | Item | $ Amount Allocated | % Budget Completed | $ Completed |
|---|---|---|---|---|---|
| Requested | 100.00 % | Masonry | $500.00 | 1.25 % | $500.00 |
| | 100.00 % | Roof | $800.00 | 2.00 % | $800.00 |
| Requested | 0.00 % | Exterior Doors | | 0.00 % | $0.00 |
| Requested | 90.00 % | Interior Doors | $300.00 | 0.68 % | $270.00 |
| | 100.00 % | Partition Walls | $785.00 | 1.96 % | $785.00 |
| Requested | 80.00 % | Plaster/Drywall | $1,000.00 | 2.00 % | $800.00 |
| | 0.00 % | Decorating (paint/wallpaper, etc.) | | 0.00 % | $0.00 |
| Requested | 30.00 % | Wood Trim | $500.00 | 0.38 % | $150.00 |
| Requested | 0.00 % | Stairs | | 0.00 % | $0.00 |
| Requested | 0.00 % | Wood Floors | | 0.00 % | $0.00 |
| | 0.00 % | Finished Floors | | 0.00 % | $0.00 |
| | 0.00 % | Bath Accessories | | 0.00 % | $0.00 |
| | 85.00 % | Plumbing | $7,000.00 | 14.88 % | $5,950.00 |
| | 85.00 % | Electrical | $4,000.00 | 8.50 % | $3,400.00 |
| | 0.00 % | Heating | | 0.00 % | $0.00 |
| | 95.00 % | Insulation | $200.00 | 0.48 % | $190.00 |
| | 0.00 % | Cabinets | | 0.00 % | $0.00 |
| | 0.00 % | Clean Up | | 0.00 % | $0.00 |
| | 0.00 % | Contingency | | 0.00 % | $0.00 |
| | 0.00 % | Inspections | | 0.00 % | $0.00 |
| | 0.00 % | Permits | | 0.00 % | $0.00 |
| | | **Total:** | **$40,000.00** | **32.11 %** | **$12,845.00** |

**DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS**

Loan #: 1775465          Inspection Complete Date #: 9/17/2007

DDN Inspection: # 4

Invoice #: 513545

**Note: Line items with % change from last inspection are in Bold**

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

DDN Inspection: # **4**

Loan #: 1775465          Inspection Complete Date #: 9/17/2007          Invoice #: 513545

## LINE ITEM NOTES/WORK REMAINING

| # | Item | % Item Complete | Note |
|---|------|-----------------|------|
| 1 | Decorating (paint/wallpaper, etc.) | 0.00 % | Work has not started. |
| 2 | Exterior Doors | 0.00 % | Work has not started. |
| 3 | Interior Doors | 90.00 % | Two doors remain to be installed. |
| 4 | Masonry | 100.00 % | Complete. |
| 5 | Partition Walls | 100.00 % | Complete. |
| 6 | Plaster/Drywall | 80.00 % | The kitchen drywall remains. All of the sand and texture work remain. |
| 7 | Roof | 100.00 % | Complete. |
| 8 | Stairs | 0.00 % | Work has not started. |
| 9 | Wood Floors | 0.00 % | Work has not started. |
| 10 | Wood Trim | 30.00 % | Most of the door trim is in place. All other work remains. |

## SERVICE COMMENTS HISTORY

9/14/2007 8:44:49 AM (SKB): Marva~ Our inspector has contacted the builder who requested that this inspection be completed on Monday the 17th. We will send the completed report just as soon as we receive it. thank you

9/12/2007 3:20:41 PM (): According to the appraisal, this is a remodel. We have informed our inspector of this. Please let us know if this is incorrect.

# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

**DDN Inspection: #** 4

Loan #: 1775465          Inspection Complete Date #: 9/17/2007          Invoice #: 513545

**PHOTOS**



Front View



Interior Doors
Plaster/Drywall



Plaster/Drywall



Plaster/Drywall





# DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS

DDN Inspection: # 4

Loan #: 1775465          Inspection Complete Date #: 9/17/2007          Invoice #: 513545

Plaster/Drywall

Plaster/Drywall





Plaster/Drywall

Plaster/Drywall
Electrical



Rear View

**Please note that periodically inspectors will add photos after the original inspection has been completed. These photos will appear with a separate background color on the DDN website and the report. Please contact DDN if you have any questions about these additional photos. Thank you.**

**DIGITAL DRAW NETWORK - DRAW INSPECTION RESULTS**

DDN Inspection: # __4__

Loan #: 1775465          Inspection Complete Date #: 9/17/2007

Invoice #: 513545

## DIGITAL DRAW NETWORK

### Invoice

**Client: American Home Mortgage**
**Attention: Marva Tillett**

| Invoice Date | Invoice No. | Invoice Amount | Terms |
|---|---|---|---|
| 09/18/2007 | 513545 | $105.00 | Net 10 Days |

| Date | Loan ID | Borrower | Inspection Fees |
|---|---|---|---|
| 9/17/2007 12:00:00 AM | 1775465 | Shervonne Powell<br>2705 Barclay Street<br>Baltimore MD, 21218 | $105.00 |
|  |  | **Total Fees Due**: $105.00 | |

Please remit all payments and direct inquiries to:

**Digital Draw Network**
Attn: Accounts Receivable Department
Post Office Box 708146
Sandy, UT 84070-8146

(801)302-3434
(801)302-3600 (fax)

**Quality, Service, Technology**

**EXHIBIT H**

06-01-2007  04:05PM  FROM-American Home Mortgage Towson, Maryland    4102962064        T-108  P.016/050  F-078

---

### State of Maryland
#### License

**90 County**

16263092
16054537
12280489

# 07

AMERICAN CAPITAL CONTRACTORS
10111 MARTIN LUTHER KING HIGHWAY
SUITE 111
BOWIE  MD  20720

| CLASS | UNIT | TYPE OF LICENSE | NO OF LIC | COST |
|-------|------|-----------------|-----------|------|
| 77 | 015 | CONSTRUCTION FIRM | 1 | 15.00 |
| 86 | 100 | PLUMBER & GAS FITTER | 1 | 15.00 |

DATE OF ISSUE
MO  DAY  YR
03/23/2007

MONTHS PAID
12

| | | |
|---|---|---|
| ISSUING FEES | | 4.00 |
| TOTAL | | 34.00 |

AMOUNT PAID
34.00

THIS LICENSE MUST BE PUBLICLY DISPLAYED
AND EXPIRES ON **APRIL 30, 2008**

ISSUED BY
PEGGY MAOSE, CLERK OF CIRCUIT COURT
14735 MAIN STREET
UPPER MARLBORO, MARYLAND 20772-9987

BKT

**EXHIBIT I**

**From:** Shervonne Powell [shevygp@hotmail.com]
**Sent:** Friday, October 19, 2007 5:59 PM
**To:** Marva Tillett
**Subject:** RE: L-1775465

Hi Marva,
I have received the fax. Thank you.

Subject: RE: L-1775465
Date: Fri, 19 Oct 2007 15:51:27 -0400
From: Marva.Tillett@americanhm.com
To: shevygp@hotmail.com

Hi Shervonne,

I faxed over the requested inspections, did you received it?

Marva Tillett
American Home Mortgage
Construction Lending Specialist
538 Broadhollow Road
Melville, NY 11747
Telephone: (631)-622-2423
Direct Fax: (866) 316-7688
Marva.Tillett@americanhm.com

**From:** Shervonne Powell [mailto:shevygp@hotmail.com]
**Sent:** Tuesday, October 16, 2007 3:28 PM
**To:** Marva Tillett
**Subject:** RE: L-1775465

My fax number is 703.206.3543

Subject: RE: L-1775465
Date: Tue, 16 Oct 2007 13:22:30 -0400
From: Marva.Tillett@americanhm.com
To: shevygp@hotmail.com

Hi Shervonne,

What is your fax number?

Marva Tillett
American Home Mortgage
Construction Lending Specialist
538 Broadhollow Road
Melville, NY 11747
Telephone: (631)-622-2423
Direct Fax: (866) 316-7688
Marva.Tillett@americanhm.com

**From:** Shervonne Powell [mailto:shevygp@hotmail.com]
**Sent:** Sunday, October 14, 2007 11:15 PM
**To:** Marva Tillett
**Subject:** L-1775465

Hi Marva,
I'm having problems with my current builder with regards to workmanship and work ethics and have identified a new builder that I would like to finish my rehab project. How would I go about getting him approved by the bank?

This new builder that I would like to take over has asked for copies of the inspection reports so that he can have a better idea of where to start and what has passed inspection with regards to the electric, plumbing, roofing, etc. Can I get copies of these reports? He's done a walk through of the property, however, drywall has been put up which prevents him from seeing what was done with the electric and plumbing without cutting into the drywall.

Also, can you please provide me with an update of how much money I have for completing this project?

Thanks in advance,
Shervonne Powell
daytime: 703.206.2688
evening: 202.286.8020

Boo! Scare away worms, viruses and so much more! Try Windows Live OneCare! Try now!

Help yourself to FREE treats served up daily at the Messenger Café. Stop by today!

Climb to the top of the charts! Play Star Shuffle: the word scramble challenge with star power. Play Now!