## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------------- x
        :

In re:        :      Chapter 11
        :

American Home Mortgage Holdings, Inc., *et al.,*[1]  :    Case No. 07-11047 (CSS)
        :

        Debtors.      :    (Jointly Administered)
        :

        :  **Response Deadline: October 9, 2012 at 4:00 p.m. (ET)**
          **Hearing Date: October 16, 2012 at 10:00 a.m. (ET)**
----------------------------------------------------------------- x

## OBJECTION OF THE PLAN TRUSTEE TO REQUEST FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM AND RELATED CLAIM 10843

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan")[2] in connection with the chapter 11 cases of the above-captioned debtors and debtors-in-possession (the Debtors"), submits this objection (the "Objection"), pursuant to 11 U.S.C. §§ 502, 503, 510(b), Rules 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to Banc of America Leasing & Capital, LLC's ("BALC") Request for Allowance and Payment of Administrative Expense Claim (the "Application") and BALC's filed proof of claim, Claim 10843. In support of the Objection, the Plan Trustee respectfully represents as follows:

---

[1]   The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747.

[2]   Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

## GENERAL BACKGROUND

1.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

2.      The Plan was confirmed under section 1129 of the Bankruptcy Code by order dated February 23, 2009 [D.I. 7042] (the "Confirmation Order"). The Plan became effective on November 30, 2010 (the "Effective Date").

3.      Pursuant to the Plan, as of the Effective Date, a plan trust (the "Plan Trust") was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded, transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

**General Bar Date**

4.      By order dated October 30, 2007 (the "Bar Date Order"), the Bankruptcy Court established January 11, 2008 at 4:00 p.m. (prevailing Eastern Time) as the last date and time for the filing of proofs of claim for prepetition claims in these chapter 11 cases (the "General Bar Date"). Pursuant to the Bar Date Order, the Bankruptcy Court required that "any entity holding a prepetition claim against the Debtors [was required to] file a proof of claim …on or before January 11, 2008." (Bar Date Order, ¶ 5). In addition, the Bankruptcy Court held that any entity which failed to abide by the Bar Date Order "shall not be treated as a creditor for purposes of

voting upon, or receiving distributions under, any chapter 11 plan or plans in these chapter 11 cases in respect of that claim." (Bar Date Order, ¶ 15).

5.     On or about November 6, 2007, the Debtors' court-approved claims and noticing agent, Epiq Bankruptcy Solutions, LLC (the "Claims Agent" or "Epiq") (a) mailed a Bar Date Notice Package (including a copy of the Bar Date Notice and a Proof of Claim Form) to all known entities holding potential pre-petition claims and their counsel (if known), all parties that have requested notice in these cases, all equity holders, all indenture trustees, the Office of the United States Trustee and all taxing authorities for the jurisdictions in which the Debtors conducted business; and (b) published the Bar Date Notice in the Dallas Morning Star, Saint Louis Post-Dispatch, and the  national edition of The New York Times.

**Administrative Bar Date**

6.     The Plan provides that: "requests for payment of Administrative Claims must be Filed and served...no later than (a) thirty (30) days after a notice of the Effective Date is filed with the Bankruptcy Court and served." (Plan, Art. 3(B)(2)).  On the Effective Date, the Debtors filed the Notice of (I) Occurrence of the Effective Date of the Plan; (II) Deadlines to File Administrative Claims, Professional Claims, Rejection Damages Claims, and Subordination Statements, and to Submit Invoices for Indenture Trustee Expenses; and (III) Appointment of Borrower Information Ombudsperson [Docket No. 9519] (the "Effective Date Notice").   The Effective Date Notice clearly provides that requests for payment of Administrative Claims were to be filed and served no later than Wednesday, January 5, 2011 (the "Administrative Bar Date").

## EQUIPMENT LEASE REJECTION MOTIONS

7.     On August 30, 2007, the Debtors filed the Second Motion for an Order, Pursuant to Sections 105, 365 and 554 of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007, Authorizing the Debtors to Reject Certain Executory Contracts and Unexpired Leases and to

Abandon Certain Furniture, Fixtures and Equipment [D.I. 510] (the "Second Lease Rejection Motion"). By the Second Lease Rejection Motion, the Debtors sought to reject, as of August 31, 2007, (i) certain unexpired nonresidential real property leases and (ii) reject *all* of the Debtors' unexpired equipment leases, other than those equipment leases relating to the property located at the 16 locations specifically identified on Exhibit "B" to the Second Lease Rejection Motion.[3]

8.       On September 10, 2007, BALC filed the Limited Objection of Banc of America Leasing and Capital, LLC to the Second Lease Rejection Motion [D.I. 658] (the "Limited Objection to the Second Lease Rejection Motion"), whereby BALC asserted that the Second Lease Rejection Motion did not "describe with particularity the equipment that is subject to the rejection." Accordingly, BALC requested that "the Debtors provide it with a more detailed description of the lease equipment being rejected and abandoned as well as that being exempted from rejection." Notably, however, BALC conceded that its "records indicate the last known location of the equipment…". A true and correct copy of the Limited Objection to the Second Lease Rejection Motion is attached hereto as **Exhibit A.**

9.       On September 17, 2007, the Court entered an Order granting the Second Lease Rejection Motion [D.I. 779] (the "Second Lease Rejection Order").

10.      On September 13, 2007, the Debtors filed the Third Motion for an Order, Pursuant to Sections 105, 365 and 554 of the Bankruptcy Code and Bankruptcy Rules 6006 and

---

[3]      The 16 locations identified on Exhibit "B" to the Second Lease Rejection Motion include: 1707 Cole Blvd., Suite 350, Golden CO 80401 (the "Golden Location"); 5151 Beltline Road, Dallas TX, 75254 (the "Dallas Location"); 304 Harper Drive, Moorestown, NJ 08054 (the "Moorestown Location"); 601 South Florida Avenue, #1, Lakeland, FL 33801 (the "Lakeland Location"); 1307 Franklin Road, Yuba City, CA 95993 (the "Franklin Road Yuba City Location"); 642 Bridge Street, Yuba City, CA 95991 (the "Bridge Street Yuba City Location"); 34 South Broad Street, Woodbury, NJ 08096 (the "Woodbury Location"); 1799 Michelle Lane, Greenwood, IN 46142 (the "Greenwood Location"); 400 Skokie Blvd., Northbrook, IL 60062 (the "Northbrook Location"); 17744 Skypark Circle Irvine, CA 92614 (the "Irvine Location"); 538 Broadhollow Road, Melville, NY 11747 (the "Melville Location"); 4600 Regent Blvd, Irving, TX 75063 (the "4600 Irving Location"); 4650 Regent Blvd, Irving, TX 75063 (the "4650 Irving Location"); 220 West Huron Street, Chicago, IL 60610 (the "Chicago Location"); 5818 Archer Road, #3RL, Summit, IL 60501 (the "Summit Location"); 950 North Elmhurst Road, Mount Prospect, IL 60056 (the "Mount Prospect Location", and together, the "Remaining Locations").

6007, Authorizing the Debtors to Reject Certain Executory Contracts and Unexpired Leases and to Abandon Certain Furniture, Fixtures and Equipment [D.I. 742] (the "Third Lease Rejection Motion"). By the Third Lease Rejection Motion, the Debtors sought to reject, as of September 30, 2007, (i) certain unexpired non residential real property leases and (ii) certain of the unexpired equipment leases (as identified on Exhibit "B" to the Third Lease Rejection Motion) at the Remaining Locations, including the Golden Location, the Dallas Location, the Northbrook Location, the Irvine Location, the Lakeland Location, the Franklin Road Yuba City Location, the Bridge Street Yuba City Location, the Woodbury Location, the Greenwood Location and the Moorestown Location.[4]

11.      On September 28, 2007, BALC filed the Limited Objection of Banc of America Leasing & Capital, LLC to the Third Lease Rejection Motion [D.I. 994] (the "Limited Objection to the Third Lease Rejection Motion", whereby BALC raised many of the same arguments set forth in the Limited Objection to the Second Lease Rejection Motion.

12.      On October 1, 2007, the Court entered an Order granting the Third Lease Rejection Motion [D.I. 1018] (the "Third Lease Rejection Order").

13.      On September 27, 2007, the Debtors Filed the Fourth Motion for an Order, Pursuant to Sections 105, 365 and 554 of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007, Authorizing the Debtors to Reject Certain Executory Contracts and Unexpired Leases and to Abandon Certain Furniture, Fixtures and Equipment [D.I. 967] (the "Fourth Lease Rejection Motion"). By the Fourth Lease Rejection Motion, the Debtors sought to reject, as of September 30, 2007, (i) certain unexpired non residential real property leases and (ii) certain of the unexpired equipment leases (as identified on Exhibit "B" to the Fourth Lease Rejection Motion)

---

[4]      No equipment leases with Pitney Bowes, US Bank or Xerox were rejected with respect to the Lakeland Location, the Franklin Road Yuba City Location, the Bridge Street Yuba City Location, the Woodbury Location, the Greenwood Location and the Moorestown Location.

at the Remaining Locations not previously rejected pursuant to the Third Lease Rejection Order, including the Mount Prospect Location.

14.     On October 10, 2007, BALC filed the Reservation of Rights of Banc of America Leasing & Capital, LLC to the Fourth Lease Rejection Motion [D.I. 1430] (the "Reservation of Rights to the Fourth Lease Rejection Motion"), whereby BALC identified specific equipment by contract number which it believed was located at the Remaining Locations identified on Exhibit "B" to the Fourth Lease Rejection Motion, and reserved its right to "object to any rejection of equipment leases by debtor other than those identified [in the Reservation of Rights to the Fourth Lease Rejection Motion]."

15.     On October 17, 2007, the Court entered an Order granting the Fourth Lease Rejection Motion [D.I. 1600] (the "Fourth Lease Rejection Order").

## SERVICING SALE

16.     On October 30, 2007, the Court entered an Order [D.I. 1711] (the "Sale Order") approving the sale of the Debtors' mortgage loan servicing business to AH Mortgage Acquisition Co., Inc, n/k/a American Home Mortgage Servicing, Inc. (the "Purchaser" or "AHMSI") pursuant to the terms of that certain Asset Purchase Agreement dated September 25, 2007 (as amended and together with all exhibits and schedules thereto, the "APA").

17.     Pursuant to the APA, the Purchaser identified certain unexpired leases, license agreements and executory contracts (the "Assumed Contracts") to be assumed and assigned pursuant to 11 U.S.C. §365(b)(1)(A).

18.     In the APA, the Purchasers identified the Debtors' "Copier Lease" for the Irving Location with BALC as Assumed Contracts.

19.     In connection with the servicing sale, BALC filed a number of Limited Objections[5] (together, the "Limited Sale Objections") whereby it asserted, *inter alia*, that (i) the Debtors failed to provide sufficient information in the APA for BALC to identify which of its equipment leases were being assumed and assigned to the Purchaser and (ii) as a result, it objected to the proposed "zero" cure amount listed by the Debtors with respect to such leases.

20.     Subsequently, Debtors counsel and BALC's counsel engaged in email communications whereby the three specific copier leases being assumed and assigned to the Purchaser as part of the servicing sale were identified by serial and contract number and the parties agreed upon a cure amount of $11,230.44.   A true a correct copy of these email communications are attached hereto as **Exhibit B**.

21.     Pursuant to Schedule "1" to the Sale Order, this Court established a cure amount of $11,230.44 with respect to the "Copier Lease" with BALC.

22.     The Initial Close (as defined in the Sale Order) occurred on November 16, 2007, and the Final Closing (as defined in the Sale Order) occurred on April 11, 2008.  Pursuant to the Notice of Interim Period Cure Schedule [D.I. 2166], the Debtors proposed a $0 cure amount for BALC for the period between October 30, 2007 and the Initial Close.  Pursuant to the Notice of (i) Debtors' Proposed Purchaser's Cure Amounts and (II) Deadline for Filing Objections to the Proposed Purchaser's Cure Amounts [D.I. 4084], the Debtors proposed a $0 cure amount for BALC for the period between the Initial Close and Final Close.  BALC did not object to either cure amount.

---

[5]  *Limited Objection of Banc of American Leasing & Capital, LLC to Debtor's notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if Any (D.I. 403); Modified Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations If Any (D.I. 674) and Supplemental Notice of (I) Possible Assumption and Assignment of Certain Leases, License Agreements, and Executory Contracts; and (II) Proposed Cure Obligations, if Any (D.I. 962)* dated September 28, 2007 [D.I. 995]; and *Limited Objection of Banc of America Leasing & Capital, LLC to Debtors' Notice of Auction Sale and Sale Hearing* dated October 2, 2007 [D.I. 1051].

23.    Upon information and belief, the Debtors' escrow agent paid BALC $11,230.44 on account of its undisputed cure amount with respect to the "Copier Lease".

### BALC CLAIMS

24.    Prior to the Petition Date, BALC was an equipment lessor to American Home Mortgage Corp. ("AHM Corp."). According to the Application, "[o]n various dates, Debtor entered into numerous Equipment Lease Agreements (together with all individual leasing records, schedules, riders and other attachments thereto, the "Leases") with Ricoh Customer Finance Corp. for copiers and related office equipment that were assigned to BALC."

25.    BALC asserts that, "[i]n accordance with the terms of the Plan, the Leases were deemed rejected effective as of February 23 2009, unless they expired on their own terms prior to that date or were rejected earlier. Some of the Leases here expired on their own terms prior to February 23, 2009. *None of the Leases here were specifically rejected earlier*." (emphasis added).

26.    On January 4, 2011, BALC filed the Application (i) asserting lease rejection damages in the amount of $1,118,114 and (ii) seeking the immediate allowance and payment of $236,665.32 of this amount, which BALC asserts is entitled to priority under 11 U.S.C. §507(a)(2), as it relates to post-petition rent from the 61st day after the Petition Date (i.e., October 6, 2007) through January 31, 2008[6]. BALC argues that this amount is recoverable under 11 U.S.C. §365(d)(5).

27.    On January 5, 2011, BALC also filed a proof of claim against AHM Corp. in the amount of $1,118,114, which claim was assigned number 10843 by the Claims Agent ("Claim No. 10843", and together with the Application, the "BALC Claims"). On the proof of claim

---

[6]    The Application alleges that the Debtors ceased operating on January 31, 2008.

form, BALC indicated that $236,665.32 of Claim No. 10843 is entitled to priority status pursuant to 11 U.S.C. §507(a)(2).

28.    The supporting documentation indicates that the Application and Claim No. 10843 are duplicative as they are premised on the same alleged liability.

<u>**JURISDICTION**</u>

29.    The Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

30.    The statutory predicates for the relief requested herein are sections 502, 503 and 510(b) of the Bankruptcy Code and Rules 3003 and 3007 of the Bankruptcy Rules.

<u>**RELIEF REQUESTED**</u>

31.    The Plan Trustee objects to the allowance of any portion of the BALC Claims as an administrative expense of the estate and seeks the entry of an order (i) expunging Claim 10843 as duplicative of the Application and (ii) reclassifying the alleged administrative priority portion of the Application as a general unsecured claim.

<u>**BASIS FOR RELIEF REQUESTED**</u>

I.       **Claim No. 10843 Should Be Expunged as Duplicative of the Application**

32.    As noted above, Claim No. 10843 and the Application are duplicative as they are filed in the exact same amount and are premised on the same alleged liability.    Accordingly, Claim No. 10843 should be expunged in full since it seeks relief that is duplicative of the Application.

II.      **The Administrative Priority Portion of the Application Should Be Reclassified as a General Unsecured Claim.**

33.    The administrative priority portion of the Application should be reclassified as a general unsecured claim since all but three of the Leases in question were rejected as of

01:12513052.1

9

September 30, 2007, and the remaining three Leases were assumed and assigned to AHMSI in connection with the servicing sale.

34.     First, all but twelve of the Leases were rejected pursuant to the Second Lease Rejection Order. As set forth above, pursuant to the Second Lease Rejection Order, the Debtors rejected all of their unexpired equipment leases, other than those equipment leases located at the Remaining Locations, effective as of August 31, 2007. In fact, despite BALC's statement that "[n]one of the Leases here were specifically rejected earlier [than February 23, 2009]," BALC identified many of the Leases they seek administrative expenses on in their own Limited Objection to the Second Lease Rejection Motion. Based upon the Debtors' records, only twelve of the Leases identified in the attachment to the Application were located at the Remaining Locations.[7]  Accordingly, all but twelve of the Leases identified by BALC in the Application were rejected as of August 31, 2007 pursuant to the terms of the Second Lease Rejection Order.

35.     Next, nine of the remaining twelve Leases were rejected as of September 30, 2007 pursuant to the Third and Fourth Rejection Orders. The Debtors' records indicate that nine of the remaining twelve Leases were located at the Woodbridge Location, Irvine Location, Franklin Road Yuba City Location and Mount Prospect Location. Accordingly, these nine Leases were rejected as of September 30, 2007 pursuant to the terms of the Third and Forth Rejection Orders, leaving only 3 remaining Leases at the Debtors' Irving Location.[8]

---

[7]   These Leases include: Contract #008-1671554-001 (Woodbury Location); Contract #004-2186931-001 (Irvine Location); Contract #004-2216547-000 (4600 Irving Location); Contract #004-2222295-000 (Franklin Road Yuba City Location); Contract #004-2216546-000 (4600 Irving Location); Contract #004-2210904-000 (Mount Prospect Location); Contract #404-2153923-000 (Mount Prospect Location); Contract #404-2157447 (4600 Irving Location); Contract #008-1671554-000 (Woodbury Location); Contract #004-2184747-000 (Mount Prospect Location); Contract#004-2196165 (Mount Prospect Location); Contract #004-2196167 (Mount Prospect Location).

[8]   Contract #004-2216547-000 (4600 Irving Location); Contract #004-2216546-000 (4600 Irving Location); Contract #404-2157447 (4600 Irving Location).

36.     Finally, as set forth above, the Debtors assumed and assigned a number of unexpired leases and contracts to AHMSI in connection with the servicing sale. Among these assumed and assigned unexpired leases and contracts were the remaining 3 Leases located at the Irving Location. In connection with the assumption and assignment of these 3 Leases to AHMSI, the Debtors' paid BALC a cure payment of $11,230 out of the cure escrow for outstanding amounts due under such Leases. Accordingly, the Debtors have no liability to BALC on account of these three Leases.

37.     Accordingly, since all of the Leases identified in the Application were either rejected as of or prior to September 30, 2007 or otherwise assumed and assigned to AHMSI as part of the servicing sale, the Debtors cannot have any administrative liability with respect to such Leases for the period from October 6, 2007 through January 31, 2007. Instead, these amounts should be included as part of BALC's rejection damages claim, and thus only entitled to general unsecured status pursuant to 11 U.S.C. §365(g).

## RESERVATION OF RIGHTS

38.     Nothing contained in this Objection shall be deemed an admission by the Plan Trustee of liability on any claims against the Debtors' estates or the Plan Trust, and the Plan Trustee does not waive any rights against any party. The Plan Trustee expressly reserves the right to amend, modify or supplement this Objection in response to any information obtained from BALC.

01:12513052.1

## CONCLUSION

For the foregoing reasons, the Plan Trustee respectfully requests that this Court enter an order, substantially in the form attached hereto, (i) expunging Claim 10843 as duplicative of the Application (i) denying the administrative expenses requested under the Application and (ii) reclassifying the alleged $236,665.32 administrative priority portion of the Application as a general unsecured claim.

Dated:    Wilmington, Delaware
          September 14, 2012

                              YOUNG CONAWAY STARGATT & TAYLOR,
                              LLP

                              */s/ Margaret Whiteman Greecher*
                              Sean M. Beach (No. 4070)
                              Margaret Whiteman Greecher (No. 4652)
                              The Brandywine Building
                              1000 West Street, 17th Floor
                              Wilmington, Delaware 19801
                              Telephone:    (302) 571-6600
                              Facsimile:    (302) 571-1253

                              -and-

                              HAHN & HESSEN LLP
                              Mark S. Indelicato
                              Alison M. Ladd
                              488 Madison Avenue
                              New York, New York 10022
                              Telephone:    (212) 478-7200
                              Facsimile:    (212) 478-7400

                              *Co-Counsel for the Plan Trustee*

01:12513052.1