# EXHIBIT B

## *C-BASS* Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CREDIT-BASED ASSET SERVICING | ) Case No. 10-16040 (ALG) |
| AND SECURITIZATION LLC, *et al.*, | ) |
| | ) (Jointly Administered) |
| Debtors.[1] | ) |
| | ) |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN

## I. RECITALS

A.    On November 12, 2010 (the "Petition Date"), the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, commenced their chapter 11 cases (the "Chapter 11 Cases") in good faith by filing their respective Voluntary Petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court" or the "Bankruptcy Court").  The Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 1, 2010, the Office of the United States Trustee for the Southern District of New York (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee") in the Chapter 11 Cases.  No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    On March 4, 2011, the Debtors filed the *Disclosure Statement With Respect to the Debtors' Amended Joint Chapter 11 Plan* [Docket No. 270] (including the exhibits thereto, the

---

[1]    The other Debtors in these cases are C-BASS CBO Holding LLC, C-BASS Credit Corp., C-BASS Investment Management LLC, NIM I LLC, Pledged Property II LLC, Starfish Management Group LLC, and Sunfish Management Group LLC.

"Disclosure Statement"). On March 3, 2011, the Debtors filed the *Debtors' Amended Joint Chapter 11 Plan* [Docket No. 269] (as may be modified or amended in accordance with the terms of this Confirmation Order (as defined below) or such other final order of the Court duly approved and entered, the "Plan").[2]

C.    On March 4, 2011, after due notice and a hearing held on March 4, 2011, the Court entered an order [Docket No. 274] (the "Disclosure Statement Approval Order") that, among other things, (i) approved the Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable a hypothetical investor of the relevant voting Classes under the Plan to make an informed judgment whether to vote to accept or reject the Plan, (ii) fixed February 23, 2011 as the voting record date (the "Voting Record Date"), (iii) approved solicitation packages (the "Solicitation Packages") and procedures for distribution thereof, (iv) approved the forms of ballots (the "Ballots") and established procedures for voting on the Plan, (v) established April 6, 2011 at 5:00 p.m. (prevailing Eastern Time) as the deadline to vote to accept or reject the Plan (the "Voting Deadline"), (vi) scheduled a hearing for April 11, 2011 at 2:30 p.m. (prevailing Eastern Time) to consider Confirmation of the Plan (the "Confirmation Hearing"), and (vii) established notice and objection procedures in respect of confirmation of the Plan, including a form of confirmation hearing notice (the "Confirmation Hearing Notice").

D.    On March 7, 2011, the Debtors filed the Solicitation Version of the Disclosure Statement [Docket No. 281].

---

[2]    Capitalized terms used herein, but not otherwise defined herein, shall have the meanings ascribed to such terms in the Plan.

E.      The Disclosure Statement Approval Order established 5:00 p.m. (prevailing Eastern Time) on April 6, 2011 as the deadline to file and serve objections to Confirmation of the Plan.

F.      On April 6, 2011, the Debtors filed the *Notice of Presentment of Order Extending Voting Deadline and Adjourning Confirmation Hearing in Connection with the Debtors' Amended Chapter 11 Plan* [Docket No. 343].  On April 8, 2011, the Court entered the *Order Extending Voting Deadline and Adjourning Confirmation Hearing in Connection with Debtors' Amended Chapter 11 Plan* [Docket No. 351] (the "First Presentment Order").  The First Presentment Order extended the Voting Deadline from April 6, 2011 at 5:00 p.m. (prevailing Eastern Time) to April 13, 2011 at 5:00 p.m. (prevailing Eastern Time).  On April 13, 2011, the Debtors filed the *Notice of Presentment of Order Extending Voting Deadline in Connection with Debtors' Amended Chapter 11 Plan* [Docket No. 365 ].  On April 21, 2011, the Court entered the *Order Extending Voting Deadline in Connection with Debtors' Amended Chapter 11 Plan* [Docket No. 388] (the "Second Presentment Order").  The Second Presentment Order extended the Voting Deadline from April 13, 2011 at 5:00 p.m. (prevailing Eastern Time) to April 20, 2011 at 5:00 p.m. (prevailing Eastern Time).

G.      On April 1, 2011, the Creditors' Committee filed the *Notice of Selection of Liquidation Trustee* with the Court naming Clifford A. Zucker as the Liquidation Trustee [Docket No. 330] (the "Trustee Notice").

H.      On April 21, 2011, the Debtors filed the *Declaration of Jung W. Song of Donlin, Recano & Company, Inc. with Respect to the Tabulation of Votes and Certifying the Results of Solicitation on the Debtors' Amended Joint Chapter 11 Plan* [Docket No. 389] (the "Song Declaration") regarding the methodology for the tabulation and certifying the results of the

voting with respect to the Classes of Impaired Claims entitled to vote to accept or reject the Plan. As evidenced by the Song Declaration, Ballots were tabulated in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Approval Order.

      I.      On April 6, 2011, the Debtors filed the *Plan Supplement to the Debtors' Amended Joint Chapter 11 Plan* [Docket No. 345] (the "<u>Plan Supplement</u>"). The Plan Supplement consists of: (1) a list of the Debtors' Insurance Policies that shall be treated as executory contracts and deemed assumed under Section 5.3 of the Plan, (2) the revised Liquidation Trust Agreement, and (3) a blackline of the revised Liquidation Trust Agreement against the original Liquidation Trust Agreement [Docket No. 269] filed on the Court's docket on March 3, 2011.

      J.      On April 21, 2011, the Debtors filed the *Declaration of Andrew Rickert in Support of Confirmation of the Debtors' Amended Joint Chapter 11 Plan* [Docket No. 390] (the "<u>Rickert Declaration</u>").

      K.      On April 21, 2011, the Debtors filed the *Memorandum of Law In Support of Confirmation of the Debtors' Amended Joint Chapter 11 Plan* [Docket No. 391] (the "<u>Memo of Law</u>", and together with the Rickert Declaration and the Song Declaration, the "<u>Confirmation Papers</u>").

      L.      The Confirmation Hearing was held before the Court on April 25, 2011.

      **NOW, THEREFORE**, the Court having reviewed and considered the Disclosure Statement, the Plan, the Plan Supplement, the Plan Documents, and the Confirmation Papers; and the Court having heard statements of counsel in support of Confirmation of the Plan at the Confirmation Hearing; and upon the record of the Confirmation Hearing; and the Court having taken judicial notice of the papers and pleadings on file in the Chapter 11 Cases; and it appearing to the Court that (i) notice of the Confirmation Hearing was adequate and appropriate as to all

parties to be affected by the Plan and the transactions contemplated thereby and hereby, and (ii) the legal and factual bases set forth in the Confirmation Papers and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law and order (this "Confirmation Order"):[3]

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Jurisdiction, Venue and Other Matters

1.      Incorporation of the Recitals.    Each of the Recitals shall be, and hereby is, incorporated herein as a Finding of Fact.

2.      Exclusive Jurisdiction; Venue; Core Proceeding.    The Court has subject matter jurisdiction over this proceeding and the Chapter 11 Cases pursuant to 28 U.S.C. § 1334 and the *Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York* dated July 10, 1984 (Ward, Acting C.J.).    Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O).    The Court has subject matter jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.    Venue in the Southern District of New York was proper as of the Petition Date and remains proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Judicial Notice.    The Court takes judicial notice of (and deems admitted into evidence for Confirmation) the docket in the Chapter 11 Cases maintained by the Clerk of the Court, including without limitation all pleadings and other documents filed, all orders entered,

---

[3]      This Confirmation Order constitutes this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.  All findings of fact shall constitute findings of fact even if stated as conclusions of law, and all conclusions of law shall constitute conclusions of law even if stated as findings of fact.

and evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

4.    <u>Burden of Proof</u>.  The Debtors, as the proponents of the Plan, have met their burden of proving the elements of subsection 1129(a) of the Bankruptcy Code with respect to Classes 1, 2, 3, 4(a)(i) and 4(a)(ii), and section 1129(b) of the Bankruptcy Code with respect to Classes 5, 6, 7 and 8, by a preponderance of the evidence.  Class 4(b) is a vacant class and deemed eliminated from the Plan pursuant to Paragraph 11 of Section III below.

5.    <u>Transmittal of Solicitation Packages</u>.  The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as the same may be applicable (collectively, the "<u>Bankruptcy Rules</u>") and the Disclosure Statement Approval Order as evidenced by the *Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages Respective of the Disclosure Statement with Respect to the Debtors' Amended Joint Chapter 11 Plan*, dated March 16, 2011, [Docket No. 307] and the *Affidavit of Service by Muhammed Habib*, dated March 25, 2011 [Docket No. 317] (collectively, the "<u>Solicitation Affidavits</u>").  Such transmittal and service of the Solicitation Packages was adequate and sufficient.

6.    <u>Notice of the Confirmation Hearing</u>.  As evidenced by the Solicitation Affidavits, notice of the Confirmation Hearing was mailed to Holders of Claims against the Debtors, Holders of Interests in the Debtors and other parties in interest.  As evidenced by the Affidavit of Publication filed with the Court on March 17, 2011 [Docket No. 308] (the "<u>Publication Affidavit</u>"), the Confirmation Hearing Notice was published timely in the national edition of *The Wall Street Journal* on March 15, 2011.  Accordingly, adequate and sufficient notice of the

Confirmation Hearing was given in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Approval Order, and no other or further notice was, is or shall be required.

7.      <u>Votes on the Plan</u>.    Votes for acceptance or rejection of the Plan were solicited in good faith and such solicitation complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code, and the Disclosure Statement Approval Order.  As evidenced by the Song Declaration, Ballots were tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Approval Order.

8.      <u>Certain Holders of Impaired Claims in Classes 4(a)(i), 4(a)(ii), 5 and 6 Have Exercised the Release Opt-Out Election</u>.  As evidenced by the Solicitation Affidavits, Holders of Impaired Claims in Classes 4(a)(i), 4(a)(ii), 5 and 6 received Ballots upon which they may indicate their acceptance or rejection of the Plan and exercise the Release Opt-Out Election should they choose to do so.  As evidenced by the Song Declaration, certain Holders of Impaired Claims in Classes 4(a)(i), 4(a)(ii), 5 and 6 exercised the Release Opt-Out Election.

**B.      Compliance with the Applicable Provisions of the Bankruptcy Code**

9.      <u>The Plan's Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  As set forth below, the Plan complies with all, and is not inconsistent with, the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)      <u>Proper Classification of Claims and Interests (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  In addition to Administrative Claims and Priority Claims, which need not be classified, the Plan designates nine Classes of Claims and one Class of Interests.  *See* Plan at Article IV.  The Claims or Interests placed in each Class are substantially similar to the other Claims or Interests, as the case may be, in such Class.  Valid business, factual and legal reasons exist for separately classifying the various categories of

Claims and Interests created under the Plan, the classifications were not done for any improper purpose and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests. Thus, the Plan satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)     Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article IV of the Plan specifies that Classes 1 and 3 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)     Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article IV of the Plan specifies that Classes 2, 3, 4(a)(i), 4(a)(ii), 5, 6, 7 and 8 are Impaired and specifies the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)     Equal Treatment within Classes (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtors for each Claim or Interest in a particular Class, as the case may be, unless the Holder of a particular Claim or Interest in such Class has agreed to less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan and Plan Supplement provide adequate and proper means for implementation of the Plan, including but not limited to (i) substantive consolidation of certain Debtors solely for purposes of voting, confirmation and making distributions, (ii) formation and capitalization of the Liquidation Trust, including but not limited to the contribution of the Senior Lender Cash Contribution and the release by the Administrative Agent (on behalf of the Senior Lenders) of the liens securing the Senior Lender Claims, (iii) establishment of a Disputed Claims Reserve, (iv) dissolution of the Debtors, (v) dissolution of the Creditors' Committee, (vi) implementation of the Management Incentive Plan, (vii) the assumption or rejection of executory contracts and unexpired leases, (viii) assumption of the Insurance Policies, (ix) the cancellation of existing Interests in the Debtors and certain existing agreements, obligations, indentures and instruments, and (x) sources of consideration for Plan distributions.  Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

(f)     Prohibition on Issuance of Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). The Plan provides that the Debtors shall be dissolved and contains no provision for the issuance of non-voting equity securities. Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(g)    The Plan's Provisions Regarding the Liquidation Trustee are Consistent with the Interests of Creditors and Interest Holders and Public Policy (11 U.S.C. § 1123(a)(7)). Section 6.1 of the Plan provides for the formation of the Liquidation Trust, and the Liquidation Trustee shall become the representative of the Estate. In accordance with Section 6.1 of the Plan, on April 1, 2011, the Creditors' Committee filed the Trustee Notice. The Liquidation Trust Agreement provides for the resignation, removal and appointment of a successor Liquidation Trustee, if necessary. The provisions of the Plan for the selection of the Liquidation Trustee are consistent with the interests of Creditors and Interest Holders and public policy as to the manner and selection of any trustee or successor thereto. Thus, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

(h)    Future Income (11 U.S.C. § 1123(a)(8)). Section 1123(a)(8) of the Bankruptcy Code is not applicable to the Plan because none of the Debtors are individuals.

10.    The Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, (a) the Debtors are proper debtors under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code, (b) the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and (c) as stated above the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules and the Disclosure Statement Approval Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

11.    The Debtors' Compliance with Bankruptcy Rule 3016. The Plan is dated and identifies the entities submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Clerk of the Court satisfies Bankruptcy Rule 3016(b).

12.    The Debtors' Compliance with Bankruptcy Rule 3017. The Debtors have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d) and the Disclosure

Statement Approval Order.  The transmittal and service of the Solicitation Packages was (i) in compliance with the Disclosure Statement Approval Order, and (ii) sufficient under the Bankruptcy Rules and the circumstances surrounding the Chapter 11 Cases.

13.    <u>The Debtors' Compliance with Bankruptcy Rule 3018</u>.  The solicitation of votes to accept or reject the Plan solely from Holders of Allowed Claims in Classes entitled to vote to accept or reject the Plan as of the Voting Record Date satisfies Bankruptcy Rule 3018.  Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Approval Order.

14.    <u>The Debtors Proposed the Plan in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself and the process leading to its formulation.  The Chapter 11 Cases were filed and the Plan was proposed with the legitimate and honest purpose of dissolving the Debtors, and expeditiously making distributions to Creditors in accordance with the distribution priorities of the Bankruptcy Code.  The Debtors, the Administrative Agent, the Senior Lenders, the Creditors' Committee and their respective members, employees, officers, directors, LLC managers, agents, accountants, business consultants, representatives, attorneys and advisors, through their participation in arm's-length negotiations and preparation of the Plan and related documents, including the Disclosure Statement, have participated in the Chapter 11 Cases in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

15.     <u>Bankruptcy Court Approval of Certain Payments as Reasonable (11 U.S.C. § 1129(a)(4))</u>.  The Plan complies with section 1129(a)(4) of the Bankruptcy Code because any payment made or to be made by the Debtors for services or goods in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by the Court or is subject to the approval of the Court as reasonable.

16.     <u>Disclosure of All Necessary Information Regarding Liquidation Trustee, as Successor to the Debtors, is Consistent with the Interests of Creditors and Interest Holders and Public Policy (11 U.S.C. § 1129(a)(5))</u>.  Immediately after the Effective Date, any of the Debtors' remaining officers, members, managers, and directors shall cease to serve the Debtors. The Plan provides for the appointment of a Liquidation Trustee to serve after the Effective Date. The Creditors' Committee disclosed via the Trustee Notice that Clifford A. Zucker, CPA, a partner in the Business Investigation Services (BIS) Group of J.H. Cohn LLP shall serve as the Liquidation Trustee.  Mr. Zucker shall employ Hahn & Hessen LLP as his counsel.  Mr. Zucker is not an "insider" of the Debtors (as defined in section 101(31) of the Bankruptcy Code), and he will be compensated at the rate of $650.00 per hour.  The service of the Liquidation Trustee is consistent with the interests of Creditors and Interest Holders and public policy.  Accordingly, the Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.

17.     <u>Government Regulatory Control over Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code does not apply because the Plan does not provide for any changes in rates over which a governmental regulatory commission has jurisdiction.

18.     <u>Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis contained in the Disclosure Statement and any other evidence proffered or adduced at the Confirmation

Hearing (i) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented or proffered, (ii) utilize reasonable and appropriate methodologies and assumptions, (iii) have not been successfully challenged or controverted by other evidence, (iv) establish that each Holder of a Claim or Interest in an Impaired Class either (x) has voted to accept the Plan (as evidenced by the Song Declaration) or (y) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would have received if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

19.    Acceptance or Rejection of the Plan by Certain Classes (11 U.S.C. § 1129(a)(8)). As set forth in the Song Declaration, the percentage of Holders of Claims in Impaired Classes entitled to vote on the Plan that voted to accept or reject the Plan is as follows:

| Impaired Class of Claims | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) |
|---|---|---|
| Class 2 | 100% | 100% |
| Class 4(a)(i) | 68.92% | 88% |
| Class 4(a)(ii) | 100% | 100% |
| Class 5 | 10.39% | 77.78% |
| Class 6 | 12.10% | 16.67% |

Accordingly, Classes 2, 4(a)(i) and 4(a)(ii) have accepted the Plan pursuant to section 1126(c) of the Bankruptcy Code. Classes 5 and 6 voted to reject the Plan. Classes 1 and 3, which are Unimpaired, are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Securities Litigation Claims in Class 7 and Allowed Interests in Class 8, however, are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Plan, therefore, does not comply with section 1129(a)(8) of the Bankruptcy Code with respect to Classes 5, 6, 7 and 8. Notwithstanding the lack of compliance with Classes 5, 6, 7 and 8, the Plan is confirmable

because it satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as set forth in paragraph 30 below.

20.     <u>Treatment of Claims Entitled to Priority (11 U.S.C. § 1129(a)(9))</u>.     The Plan complies with section 1129(a)(9) of the Bankruptcy Code because it provides for treatment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims entitled to priority pursuant to section 507 of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

21.     <u>Acceptance of at Least One Impaired Class (11 U.S.C. § 1129(a)(10))</u>.     As set forth in the Song Declaration, Class 2, whose members are Impaired, has voted to accept the Plan and has accepted the Plan in requisite numbers and amounts without the need to include any acceptance of the Plan by any insider (as defined by the Bankruptcy Code).     With respect to Sunfish Management Group, LLC, there are no impaired classes.     Thus, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

22.     <u>Feasibility of the Plan (11 U.S.C. § 1129(a)(11))</u>.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code because the Debtors will have sufficient funds and other financial wherewithal on the Effective Date to allow the Debtors to substantially consummate the Plan which provides for the liquidation of all of the Debtors' assets.     The Debtors have sufficient monies and assets available and existing on the Effective Date to pay in accordance with the Plan or enable the Debtors to reserve in full for the payment of, all Allowed Administrative Claims, Allowed Priority Non-Tax Claims and Allowed Priority Claims.     Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

23.     <u>Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12))</u>.     In accordance with section 1129(a)(12) of the Bankruptcy Code, the Debtors have paid, or will pay on or before the

Effective Date, all fees payable under 28 U.S.C. § 1930 and 31 U.S.C. § 3717.  The Debtors and

the Liquidation Trustee, as applicable, shall file quarterly operating reports and pay all fees due

and payable under 28 U.S.C. § 1930 and 31 U.S.C. § 3717 until a final decree and order is

entered closing the Chapter 11 Cases.  Accordingly, the Plan satisfies section 1129(a)(12) of the

Bankruptcy Code.

      24.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The evidence

adduced or proffered at the Confirmation Hearing established that the Debtors are not obligated

now, nor will they become obligated in the future, to pay "retiree benefits" (as defined in section

1114 of the Bankruptcy Code) as described in section 1129(a)(13) of the Bankruptcy Code.

Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11

Cases.

      25.    <u>Postpetition Domestic Support Obligations and Disposable Income (11 U.S.C.</u>
<u>§ 1129(a)(14) and (15))</u>.  Sections 1129(a)(14) and (15) of the Bankruptcy Code impose certain

requirements on individual chapter 11 debtors.  The Debtors are limited liability companies and a

corporation.  Accordingly, sections 1129(a)(14) and (15) of the Bankruptcy Code are not

implicated by the Plan.

      26.    <u>Transfers of Property by Nonprofit Entities (11 U.S.C. § 1129(a)(16))</u>.  Section

1129(a)(16) of the Bankruptcy Code imposes certain requirements on corporations or trusts that

are not a moneyed, business or commercial corporation.  One of the Debtors is a moneyed,

business or commercial corporation and the other Debtors are limited company companies that

are engaged in business and commercial operations.  Accordingly, section 1129(a)(16) of the

Bankruptcy Code is not implicated by the Plan.

27.    <u>Satisfaction of Confirmation Requirements</u>.  For all of the above reasons, the Plan satisfies the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code other than subsection (a)(8) with respect to Classes 5, 6, 7 and 8.

28.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933 (the "<u>Securities Act</u>"), and no Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) has requested that the Court deny Confirmation of the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

29.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based upon the record before the Court, the Debtors and their agents, officers, directors, LLC managers, employees, counsel and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the releases and exculpatory and injunctive provisions set forth in Article X of the Plan.

30.    <u>Confirmation of the Plan Over Nonacceptance of Impaired Classes (11 U.S.C. § 1129(b))</u>.  As described in paragraphs 9 through 27 above, the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code other than subsection (a)(8) with respect to Classes 5, 6, 7 and 8.  Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that Classes 5, 6, 7 and 8 have not voted to accept the Plan.  Based upon the Rickert Declaration and the evidence proffered, adduced, or presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly

and is fair and equitable, as required by section 1129(b)(1) of the Bankruptcy Code, with respect to the members of Classes 5, 6, 7 and 8.  Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code in connection with Classes 5, 6, 7 and 8.  After the entry of this Confirmation Order and upon the occurrence of the Effective Date, the Plan shall be binding upon the members of Classes 5, 6, 7 and 8.

###### C.    <u>Other Findings</u>

31.    <u>Non-Material Modifications to the Plan</u>.  Any and all modifications to the Plan set forth in this section below (the "<u>Non-Material Plan Modifications</u>") constitute technical or non-material changes that do not materially adversely affect or change the treatment of any Claims or Interests, and do not modify the Plan so that the Plan, as modified, fails to meet the requirements of section 1122 and 1123 of the Bankruptcy Code.  Because the Non-Material Plan Modifications are technical or non-material changes that do not materially adversely affect the treatment of any Claims or Interests, the Non-Material Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the solicitation of votes under section 1126 of the Bankruptcy Code.  The Non-Material Plan Modifications are as follows:

a.    The definition of "Trust Oversight Committee" in Section 1.3(iiii) of the Plan is deleted, and all references to the Trust Oversight Committee in the Plan are deleted in their entirety, including without limitation the entirety of the second paragraph of Section 6.5 of the Plan.

b.    Section 9.2 of the Plan shall be modified to read as follows:

9.2    ***Cancellation of Existing Agreements and Securities***

Except for the purposes of evidencing a right to receive a distribution under the Plan or as otherwise provided hereunder, on the Effective Date, all the agreements or other documents evidencing any Claims or rights of any Holder of a Claim against the Debtors, including all indentures, credit agreements, security agreements and notes evidencing such Claims, and any Interests, options or warrants (regardless of whether exercised) to purchase Interests, shall be deemed automatically cancelled, surrendered to the Debtors, and of no further force or effect;

provided ***that except as otherwise provided herein with respect to Claims against the Debtors and obligations and duties of the Debtors, nothing in this Plan shall impair, cancel, affect, or adversely affect the continuation of securitization transactions, the related documents evidencing the same, and the rights and duties of non-Debtor parties impacted thereby, including without limitation, any trustees' lien and indemnity rights;*** provided, further, that (A) the Senior Credit Facility shall continue in effect for the purposes of permitting the Administrative Agent to (i) make distributions to the Senior Lenders in accordance with the Plan and perform such other functions as are contemplated by the Plan and (ii) maintain and assert any rights or Liens; and (B) nothing herein shall impact the ability of the Indenture Trustees to assert charging liens under the applicable indenture; provided, further, that (A) nothing herein shall be deemed to impair or discharge any rights of the Administrative Agent vis-à-vis the Senior Lenders or any other Person or Entity (other than the Debtors and those parties described in clause (i) of the definition of "Released Parties") under the Senior Credit Facility, including without limitation any indemnification obligations of the Senior Lenders; and (B) nothing herein shall be deemed to impair the rights of the Indenture Trustee vis-à-vis the TruPs Claims Holders under the applicable indenture.  On the Effective Date, the Debtors shall be deemed to have no authorized Interests.  (emphasis added to inserted language).

      c.     Section 12.17 of the Plan (Notice and Service of Documents) is supplemented with the following additional service party:

> J.H. Cohn LLP
> 333 Thornall Street, 6th Floor
> Edison, New Jersey 08837
> Attn:  Clifford A. Zucker

      32.    <u>Retention of Causes of Action</u>.  Except as otherwise provided in the Plan or the Confirmation Order (including, without limitation, with respect to any Claims or Causes of Action released hereby or pursuant to Article X of the Plan), in accordance with section 1123(b) of the Bankruptcy Code, the Liquidation Trust shall retain and have the exclusive standing to commence litigation with respect to, prosecute, settle, compromise, withdraw or abandon all Causes of Action that the Debtors or their Estates may hold against any Person or Entity.  No Bankruptcy Court approval shall be required for any such action by the Liquidation Trust after the Confirmation Date.

      33.    <u>Conditions to Confirmation</u>.  Entry of this Confirmation Order shall satisfy the conditions set forth in section 8.1 of the Plan.

34.    <u>Releases, Exculpation, and Injunction</u>.  The releases, exculpations, and injunction provisions set forth in Article X of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Each of the release, exculpation, and injunction provisions set forth in Article X of the Plan:  (a) is within the jurisdiction of the Court under 28 U.S.C. § 1334; (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the dissolution of the Debtors and the resolution of the Chapter 11 Cases in accordance with the Plan and the failure to effect such provision would seriously impair the Debtors' ability to confirm the Plan; (d) confers material benefits on, and is in the best interests, of the Debtors, the Debtors' Estates, and Holders of Claims and Interests; (e) is, *inter alia*, supported by the extensive consideration provided by the Administrative Agent on behalf of the Senior Lenders, which consideration includes the Senior Lender Cash Contribution and the release of the liens securing the Senior Lender Claims; (f) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors; and (f) is consistent with sections 105, 1123, 1129, and other applicable sections of the Bankruptcy Code.  The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the release, exculpation, and injunction provisions contained in Article X of the Plan.

35.    <u>Third-Party Releases by Holders of General Unsecured Claims</u>.  The Third-Party Releases described in Section 10.1(b) of the Plan are an integral component of the Plan.  The Third-Party Releases provide for the release by Holders of General Unsecured Claims that vote to accept or reject the Plan and do not opt out of providing the Third-Party Releases or who abstain from voting on the Plan.  The Third-Party Releases are purely consensual.  Only four (4) Holders of General Unsecured Claims chose to opt out of the Third-Party Releases.  The Ballots

that were sent to Holders of General Unsecured Claims explicitly stated that such Holders of General Unsecured Claims could opt out of the Third-Party Releases by checking the "opt out" box provided on the Ballot, and directed Holders of General Unsecured Claims to Article X of the Plan for further information about the release provisions.    Thus, Holders of General Unsecured Claims were given due and adequate notice that they could opt out of the Third Party Releases.  The Holders of General Unsecured Claims who did not exercise the option to opt out of the Third-Party Releases have manifested their consent to, and are contractually bound by, the Third Party Releases, including, without limitation releases of direct claims against non-debtors to the extent set forth in Section 10.1(b) of the Plan.  Further, the Administrative Agent and the Senior Lenders compensated the Holders of General Unsecured Claims for these Third-Party Releases with extensive consideration, including the Senior Lender Cash Contribution and the release of the liens securing the Senior Lender Claims.

36.    Direction to Administrative Agent.  The Ballots that were sent to Holders of Class 2 Claims explicitly stated that each vote of a Senior Lender to accept the Plan shall be deemed to be an authorization and direction by such Senior Lender to the Administrative Agent to (a) contribute the Senior Lender Cash Contribution, on behalf of the Senior Lenders, to the Liquidation Trust pursuant to Section 6.2 of the Plan, (b) release all liens securing the Senior Lender Claims as contemplated in the Plan and (c) take any and all other actions necessary or, in the Administrative Agent's sole discretion, advisable to effectuate the terms of the Plan.

37.    Executory Contracts and Unexpired Leases.    The executory contract and unexpired lease provisions of Article V of the Plan are approved.  Pursuant to the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, each executory contract and unexpired lease of the Debtors not previously assumed or rejected, other than the Insurance

Policies listed in the Plan Supplement, is hereby rejected by the Debtors.  The Debtors have exercised reasonable business judgment in determining to reject all remaining executory contracts and unexpired leases as set forth in Article V of the Plan.  Subject to Section III., D., ¶15 below, each rejection of an executory contract or unexpired lease in accordance with Article V of the Plan shall be, and hereby is, legal, valid, and binding upon the applicable Debtors, the Liquidation Trust and all non-debtor Persons and Entities that are party to such executory contract or unexpired lease, all to the same extent as if such rejection had been authorized and effected pursuant to a separate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code prior to Confirmation.

38.    <u>Implementation of the Plan</u>.  Pursuant to section 1142(b) of the Bankruptcy Code, no action of any of the Debtors' boards of managers, board of directors, or Liquidation Trustee will be required (a) to authorize the Debtors (or any of their officers, employees or agents acting on their behalf) to effectuate and carry out the Plan or any order of the Court relating thereto, (b) to consummate the transactions contemplated by the Plan or this Confirmation Order, or (c) to take any other action contemplated by the Plan or this Confirmation Order as may be necessary and appropriate to fully effectuate the interests and purposes thereof, and all such actions hereby are or will be deemed to have been taken or done with like effect as if they have been duly authorized or approved by unanimous actions of the boards of managers, board of directors and Liquidation Trustee, as appropriate.

### III.  ORDER

**A.    <u>Confirmation of the Plan</u>**

1.    <u>Approval and Confirmation of the Plan</u>.  The Plan, which is annexed hereto as **<u>Exhibit A</u>** and modified as set forth herein, shall be, and hereby is, **APPROVED** and **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code.

2.      The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall control and take precedence.   The provisions of this Confirmation Order are integrated with each other and are non-severable and are mutually dependant.

3.      The Debtors, the Liquidation Trustee and all other appropriate parties shall be, and hereby are, authorized and directed to:  (a) take all actions necessary or appropriate to enter into, implement and consummate the Plan and any other contracts, instruments, releases, indentures and other agreements created in connection with the Plan or referred to therein, all of which such Plan documents and such other contracts, instruments, releases, indentures and other agreements shall be, and hereby are, approved, (b) to take such other steps to perform such other acts as may be necessary to implement and effectuate the Plan and such other contracts, instruments, releases, indentures and other agreements, and (c) to execute and deliver any instrument and perform any other act that is necessary for the consummation of the Plan and such other contracts, instruments, releases, indentures and other agreements, in accordance with section 1142(b) of the Bankruptcy Code, without further application to, or order of the Court, or further action by the respective officers, boards of managers, board of directors or Liquidation Trustee, as appropriate, and with the effect that such actions have been taken by unanimous action of such officers, boards of managers, board of directors or Liquidation Trustee, as appropriate.   Without in any way limiting the foregoing, in the event that any Person or Entity that has filed financing statements, mortgages, *lis pendens*, or other documents or agreements

evidencing interests with respect to the Debtors or their Assets shall not have delivered to the Debtors, after request therefore, on or before the Effective Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, release of all liens, claims or interests that such Holder may have with respect to the Debtors or their Assets or otherwise, then each of the Debtors or the Liquidation Trustee shall be, and hereby is, authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the Person or Entity with respect to the Assets.

4.      <u>Non-Material Plan Modifications</u>.  The Court approves the Non-Material Plan Modifications, pursuant to sections 1127 and 1129 of the Bankruptcy Code, without a re-solicitation of votes under section 1126 of the Bankruptcy Code or additional disclosure under section 1125 of the Bankruptcy Code.  Upon entry of this Confirmation Order, the Debtors or the Liquidation Trustee, as the case may be, may, without further order of the Court, amend the Plan, in accordance with section 1127(b) of the Bankruptcy Code, in such manner as may be necessary to effectuate the purpose and intent of the Plan, provided that each such modification is filed on the docket.

5.      <u>Execution by Third Parties</u>.  Each and every federal, state and local governmental agency or department shall be, and hereby is, directed to accept, and lessors and holders of liens are directed to execute, any and all documents, instruments or amendments necessary and appropriate to consummate the transactions contemplated by the Plan, including without limitation, documents, instruments or amendments for recording in county and state offices in order to effectuate the Plan.

6.      <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any

other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any other documents, instruments or agreements contained therein, and any amendments or modifications of any of the foregoing.

**B.      Liquidation Trust**

7.      The vesting in the Liquidation Trust of the Assets transferred thereto in accordance with Section 6.2 of the Plan is an essential element of the Plan and is appropriate and in the best interests of the Debtors, their Estates and their Creditors.  The Liquidation Trust Agreement is fair and reasonable and is approved.  Pursuant to the Plan, on or as soon as is reasonably practicable after the Effective Date (i) the then-existing amount of Residual Cash, any Cash that thereafter becomes Residual Cash, all Causes of Action (other than those, if any, against the Administrative Agent or any Senior Lender, in each case, in any capacity), the Look-Back Rights and all other Assets shall be transferred to the Liquidation Trust and (ii) the Administrative Agent, on behalf of the Senior Lenders, shall contribute the Senior Lender Cash Contribution to the Liquidation Trust.  The Liquidation Trustee, on behalf of the Liquidation Trust, shall have all of the rights and powers set forth in the Plan and the Liquidation Trust Agreement.  Furthermore, the best interests of the Debtors, their Estates and their Creditors are served by, effective as of the Effective Date, the appointment of Clifford A. Zucker, as Liquidation Trustee, and he is hereby approved and appointed as the Liquidation Trustee and shall serve in such capacity and receive compensation at the rate of $650.00 per hour.

8.      Liquidation Trust as Successor.  As of the Effective Date, the Liquidation Trust shall be the successor to the Debtors and the Estates for the purposes of sections 1123, 1129 and 1145 of the Bankruptcy Code and with respect to all pending Causes of Action and other

litigation-related matters (other than those released hereby or pursuant to the Plan), and may use, acquire and dispose of property and settle and compromise such Claims and Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

9.    <u>Direction to the Administrative Agent</u>.  Pursuant to Section 4.3(b) of the Plan, each vote of a Senior Lender to accept the Plan is hereby deemed to be an authorization and direction by such Senior Lender to the Administrative Agent to (a) contribute the Senior Lender Cash Contribution, on behalf of the Senior Lenders, to the Liquidation Trust as contemplated herein, (b) release all liens securing the Senior Lender Claims as contemplated herein or in the Plan as of the Effective Date and (c) take any and all other actions necessary or, in the Administrative Agent's sole discretion, advisable to effectuate the terms of the Plan.  The Administrative Agent is hereby fully exculpated and shall have no liability to the Debtors or any other party for any actions taken or not taken in reliance upon this Confirmation Order or the Plan, including, without limitation, the contribution of the Senior Lender Cash Contribution and the release of all liens securing the Senior Lender Claims.

**C.    Substantive Consolidation**

10.    Substantive consolidation of the Sub-Con Debtors and their respective Estates is appropriate based upon (a) the substantial identity among the Sub-Con Debtors, (b) the joint and overlapping secured debt obligations, (c) the benefit to Creditors, (d) the absence of an equitable or cost effective method to divide and distribute the Assets among the Allowed General Unsecured Claims held against each Sub-Con Debtor, and (e) the overall absence of any harm to Creditors.  Therefore, the entry of this Confirmation Order shall constitute the approval by the Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, the Plan and this

Confirmation Order, effective as of the Effective Date, of the substantive consolidation of the Sub-Con Debtors and their respective Estates in accordance with Article II of the Plan; provided, however, substantive consolidation shall not affect or change any Cause of Action that any Sub-Con Debtor would possess, or any defenses that any defendant in respect of any Cause of Action would have in connection therewith, in the absence of such substantive consolidation.

11.     Elimination of Class 4(b) - General Unsecured Claims Against Sunfish Management Group LLC.  Pursuant to Section 12.2 of the Plan, Class 4(b) - General Unsecured Claims Against Sunfish Management Group LLC is deemed eliminated from the Plan as a vacant class.  As of the Confirmation Hearing, there are no Allowed Claims or any Claims temporarily Allowed for voting purposes by the Bankruptcy Court against Debtor Sunfish Management Group LLC, and the Song Declaration provides that no ballots have been received for Class 4(b) by the Voting Deadline.

        D.      **Effects of Plan Confirmation**

12.     The Injunction.  Except as otherwise provided in the Plan or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person or Entity, directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released or exculpated pursuant to the Plan, including without limitation the Claims and Causes of Action released in Sections 10.1 and 10.2 of the Plan.

13.     The foregoing injunction shall extend to the benefit of the successors of the Debtors (including without limitation the Liquidation Trust) and the Entities and Persons entitled to the benefit of the releases and exculpations provided in Sections 10.1 and 10.2 of the Plan, and their respective properties and interests in properties.  Any Person or Entity injured by any

25

willful violation of such injunction may recover actual damages, including attorneys' fees and costs, and, in appropriate circumstances, may recover punitive damages from the willful violator. All injunctions or stays contained in the Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms, or as provided in the Bankruptcy Code.

14.     <u>Administrative Claims Bar Date</u>.   All requests for payment of Administrative Claims (including but not limited to Professional Fees Claims) must be filed with the Bankruptcy Court and served on counsel for the Debtors and the Liquidation Trustee no later than the first Business Day that is **<u>thirty (30) calendar days after the Effective Date</u>**.   Any Person or Entity that is required to file and serve a request for payment of an Administrative Claim and fails to timely file and serve such a request shall be forever barred, estopped and enjoined from asserting such Administrative Claim against the Debtors or participating in distributions under the Plan on account thereof.   The Debtors and the Liquidation Trustee, as applicable, in their sole and absolute discretion, may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.   The Debtors or the Liquidation Trustee, as applicable, and any other party with standing shall have the right to object to any Administrative Claim by filing and serving on the appropriate parties, including the claimant, an objection to such an Administrative Claim on or before the Administrative Claims Objection Deadline.   Unless the Debtors, the Liquidation Trustee or another party with standing objects to an Administrative Claim on or before the first Business Day that is **<u>sixty (60) calendar days after the Effective Date</u>** (unless extended by a Final Order of the Bankruptcy Court) such an Administrative Claim shall be deemed an Allowed Administrative Claim in the amount requested.

15.     <u>Rejection Claims Bar Date</u>.   If the rejection of an executory contract or unexpired lease by any of the Debtors results in a Rejection Claim by the other party or parties to such

executory contract or unexpired lease, such a Rejection Claim shall be disallowed and expunged in its entirety without further order of or process before the Bankruptcy Court unless a proof of claim is filed with the Bankruptcy Court and served on counsel for the Debtors and the Liquidation Trustee on the date that is the later of (i) the first Business Day that is thirty (30) calendar days after service of notice of the Confirmation Date and of the requirement to file a proof of claim and (ii) the first Business Day that is thirty (30) calendar days after the Bankruptcy Court enters an order approving the rejection of the executory contract or unexpired lease that gives rise to the Rejection Claim at issue.

16.    Insurance Policies.    All of the Insurance Policies identified on the Plan Supplement are treated as executory contracts and shall be deemed assumed under the Plan as of the Effective Date.  Nothing in this Confirmation Order shall constitute or be deemed a waiver of any Claims, Tax Refund Claims or Causes of Action that the Debtors may hold against any Entity or Person, including without limitation, under any of the Debtors' Insurance Policies.

17.    Plan Classification Controlling.  The classification of Claims and Interests in the Debtors for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications and amounts of Claims, if any, set forth on the Ballots returned by Holders of Claims in Classes 2, 4(a)(i), 4(a)(ii), 5 and 6 in connection with voting on the Plan:  (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (ii) do not necessarily represent, and in no event, shall be deemed to modify or otherwise affect the actual amount or classification of such Claims under the Plan for distribution purposes; and (iii) shall not be binding on the Debtors or the Liquidation Trust.

18.    Setoffs.  The Debtors or the Liquidation Trustee, as applicable, may, to the extent permitted under applicable law, setoff against any Allowed Claim and the distributions to be

made pursuant to the Plan on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Debtors or the Liquidation Trustee may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidation Trustee of any such claims, rights and Causes of Action that the Debtors or the Liquidation Trustee possess against such Holder.

19.    Notice of Entry of the Confirmation Order.   Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtors (or their agents), shall be, and hereby are, directed to file and serve a notice of entry of this Confirmation Order in substantially the form annexed hereto as **Exhibit B** (the "Confirmation Notice") on all Holders of Claims and Interests as of the Voting Record Date, all Persons and Entities listed on the Debtors' consolidated creditors matrix, the United States Trustee for the Southern District of New York and all parties that filed notices of appearance or requests for notices pursuant to Bankruptcy Rule 2002 in the Chapter 11 Cases no later than five (5) calendar days after the entry of this Confirmation Order on the Court's docket by United States Postal Service, First-Class mail, postage prepaid.  The Confirmation Notice shall also be posted electronically at http://www.donlinrecano.com/cbass.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.

20.    Notice of Effective Date.  The Debtors, shall be, and hereby are, directed to file and serve a notice of the occurrence of Effective Date in substantially the form annexed hereto as **Exhibit C** (the "Notice of Effective Date") on all Holders of Claims and Interests in the Debtors as of the Voting Record Date, the United States Trustee for the Southern District of New York, all persons and entities listed on the Debtors' consolidated creditors matrix, and all parties that filed notices of appearance or requests for notices pursuant to Bankruptcy Rule 2002 in the

Chapter 11 Cases by causing the Notice of Effective Date to be mailed to such parties by United States Postal Service, First-Class mail, postage prepaid, within five (5) calendar days after the Effective Date. The Notice of the Effective Date shall also be posted electronically at http://www.donlinrecano.com/cbass. Such notice is adequate under the particular circumstances and no other or further notice is necessary. The Notice of Effective Date shall also serve as the notice setting forth the Administrative Claims Bar Date. Such notice of the Administrative Claims Bar Date is adequate under the particular circumstances and no other or further notice is necessary.

       **E.**      **Resolution of Claims**

21.      Except as expressly provided for in the Plan or ordered by the Bankruptcy Court prior to the Effective Date, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or by the Bankruptcy Code or the Bankruptcy Court has entered a Final Order allowing such Claim. Any Claim that is not an Allowed Claim shall be determined, resolved or adjudicated in accordance with the terms of the Plan.

       **F.**      **Miscellaneous**

22.      <u>Dissolution of the Creditors' Committee</u>. Notwithstanding anything in the Plan or the Confirmation Order to the contrary, on the Effective Date the Creditors' Committee shall dissolve automatically whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in these Chapter 11 Cases and under the Bankruptcy Code, except that such parties shall continue to have a right to be heard with respect to any and all applications for payment of Professional Fees. On the Effective Date, all reasonable and documented compensation, fees, expenses and disbursements incurred by each constituent member of the Creditors' Committee (including the reasonable and documented compensation, fees, expenses and disbursements of agents and counsel retained by such constituent members) in

relation to the Debtors on or prior to the Effective Date shall be paid in Cash by the Debtors as Administrative Claims, without the need for application to, or approval of, any court.

23.    <u>RMBS Transactions</u>.    With respect to the residential mortgage backed securitization transactions (the "<u>RMBS Transactions</u>"), except to the extent that the RMBS Transaction documents provide to the contrary, the distributions under the Plan (the "<u>Distributions</u>"), after payment of the fees and expenses of the related trustees, shall be deemed to be subsequent recoveries in respect of previously suffered losses, determined as of a monthly determination date immediately preceding the date of such distributions (the "<u>Determination Date</u>"), allocated pro rata in respect of all mortgage loans sold by the Debtors to each RMBS Transaction, based on the amount of the loss on each such mortgage loan, as against the aggregate losses suffered on all such mortgage loans (e.g., if a trust experienced total losses of $10,000,000 through the Determination Date on account of mortgage loans sold by a Debtor and received a Distribution of $100,000, the trust would be deemed to have received $.01 of subsequent recovery on account of each $1 of loss previously suffered on such mortgage loans).

24.    This Confirmation Order is final, binding, and effective on all current, former, and future beneficial holders and other interested parties (collectively, the "<u>Beneficial Holders</u>") as well as the trustees or successors thereto of trusts (the "<u>Trusts</u>") created pursuant to securitization transactions (the "<u>Trustees</u>").    The Trustees and their current and former officers, directors, shareholders, employees, agents, attorneys, successors, and assigns (the "<u>Trustee Parties</u>") and any Master Servicer, Trust Administrator, or other party that makes distributions on behalf of the Trusts (the "<u>Designated Distribution Agent</u>") that acts in reliance upon this Confirmation Order shall be and hereby is fully exculpated and shall have no liability to the Debtors' Estates or to

any Beneficial Holders or other interested parties arising out of, relating to, or in connection with this Confirmation Order or the Distributions.

25.     The Liquidation Trustee and the Trustees are hereby authorized and empowered to take any and all actions that are reasonably necessary or appropriate to implement and effect this Confirmation Order, including, but not limited to, distribution of funds to the Trusts.

26.     <u>Finality of Confirmation Order</u>.  This Confirmation Order is intended to be a final order and the period in which a notice of appeal must be filed shall commence upon the entry of this Confirmation Order on the docket of the Chapter 11 Cases.

27.     <u>Effectiveness of Confirmation Order</u>.  This Confirmation Order shall be effective upon the date of its entry, and the requirement that this Confirmation Order be stayed for a period of fourteen (14) days under Bankruptcy Rule 3020(e) shall not apply.

28.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and any amendments or modifications thereto, duly made in accordance with the terms hereof, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

29.     <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters, arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction over the matters set forth in Article XI of the Plan.  For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction after entry of this Confirmation Order to enter and enforce any order for the sale of Assets pursuant to section 363

of the Bankruptcy Code and any request by the Liquidation Trustee for discovery pursuant to

Bankruptcy Rule 2004 or otherwise.


Dated:  New York, New York
        April 25, 2011

                        */s/ Allan L. Gropper*

                        THE HONORABLE ALLAN L. GROPPER
                        UNITED STATES BANKRUPTCY JUDGE

# <u>EXHIBIT C</u>

## *Ownit* Order

Case 2:11-cv-06353-2 Filed 10/19/12 Page 35 of 41

1  CHRISTINE M. PAJAK (State Bar No. 217173), and
   GABRIEL I. GLAZER (State Bar No. 246384), Members of
2  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
3  1901 Avenue of the Stars, 12th Floor
   Los Angeles, California 90067
4  Telephone: (310) 228-5600
   Facsimile: (310) 228-5788
5  E-Mail: cpajak@stutman.com
   E-Mail: gglazer@stutman.com
6
   Counsel for the OWNIT Liquidating Trust
7

FILED & ENTERED

JUN 21 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY harraway DEPUTY CLERK

8              UNITED STATES BANKRUPTCY COURT
               CENTRAL DISTRICT OF CALIFORNIA
9              SAN FERNANDO VALLEY DIVISION

10 In re                          ) Case No. 1:06-12579 KT
                                  )
11                                ) Chapter 11
                                  )
12 OWNIT MORTGAGE SOLUTIONS,      )
   INC.,                          )
13                                ) ORDER APPROVING MOTION TO
                                  ) (I) DISALLOW CERTAIN AMENDED
14        Debtor.                 ) CLAIMS (CLAIM NOS. 882.1, 906.1, 907.1,
                                  ) 908.1, 909.1, 910.1, AND 911.1); (II) ESTIMATE
15                                ) CERTAIN REPURCHASE CLAIMS
                                  ) PURSUANT TO THE PROTOCOL
16                                ) ESTABLISHED BY THE OWNIT
                                  ) LIQUIDATING TRUST (CLAIM NOS. 1006.1,
17                                ) 1008.1, 1004.1, 1007.1, 1009.1, 1005.1, 820.2,
                                  ) 822.2, 876.1, 877.1, 878.1, 879.1, 880.1, AND
18                                ) 1010.1); (III) APPROVE THE NOTICE OF
                                  ) THIS MOTION TO THE BENEFICIAL
19                                ) HOLDERS OF UNDERLYING CLAIMANTS;
                                  ) (IV) CLARIFY THE NATURE OF THE
20                                ) DISTRIBUTIONS BEING MADE; AND
                                  ) (V) GRANT OTHER RELATED RELIEF
21                                )
                                  )
22                                )             Hearing
                                  )
23                                ) Date:     June 15, 2010
                                  ) Time:     10:00 a.m.
24                                ) Location: Courtroom 301
                                  )           21041 Burbank Blvd.
25                                )           Woodland Hills, CA
                                  )
26 _____)

27

28

538574v4

1          The Court, having held a hearing on June 15, 2010 at 10:00 a.m. (the "Hearing"), on the

2    "Motion To (I) Disallow Certain Amended Claims (Claim Nos. 882.1, 906.1, 907.1, 908.1, 909.1,

3    910.1, And 911.1); (II) Estimate Certain Repurchase Claims Pursuant To The Protocol Established

4    By The Ownit Liquidating Trust (Claim Nos. 1006.1, 1008.1, 1004.1, 1007.1, 1009.1, 1005.1,

5    820.2, 822.2, 876.1, 877.1, 878.1, 879.1, 880.1, and 1010.1); (III) Approve The Notice Of The

6    Motion To The Beneficial Holders Of The Underlying Claimants; (IV) Clarify The Nature Of The

7    Distributions Being Made; (V) Grant Other Related Relief " (the "Motion")[1], filed by the OWNIT

8    Liquidating Trust (the "Liquidating Trust"), pursuant to which the Liquidating Trust sought an

9    order (the "Order") under 11 U.S.C. §§ 502(b) and 502(c), Fed. R. Bankr. P. 3007, Local

10   Bankruptcy Rule 3007 (i) disallowing the Amended Claims, (ii) requiring the application of the

11   Protocol to estimate the Subject Claims, (iii) finding that the Subject Claims (including the

12   Surviving Subject Claims) should be estimated and allowed in the amounts determined under the

13   Protocol as set forth in the Motion, (iv) approving the notice procedures set forth in the Motion,

14   (v) clarifying the nature of the distributions being made, and (vi) granting such other related relief;

15   and the Court having reviewed and considered the Motion, the Declaration of Amir Agam filed in

16   support of the Motion, the "Declaration of Service on Behalf of U.S. Bank National Association,

17   as Trustee" [Docket No. 4630] (the "1st U.S. Bank Declaration"), "Declaration of Service on

18   Behalf of U.S. Bank National Association, as Trustee" [Docket No. 4631] (the "2nd U.S. Bank

19   Declaration"), "Declaration of Service on Behalf of U.S. Bank National Association, as Trustee"

20   [Docket No. 4632] (the "3rd U.S. Bank Declaration"), "Declaration of Service on Behalf of Wells

21   Fargo Bank, N.A., as Securities Administrator" [Docket No. 4635] (the "Wells Fargo

22   Declaration"), "Declaration of HSBC Bank USA, National Association, as Trustee" [Docket No.

23   4636] (the "HSBC Declaration"),"Declaration of Citibank, N.A. in its Capacity as Trustee of

24   Merrill Lynch Mortgage Investors Trust, Series 2007-HE2" [Docket No. 4640] (the "Citibank

25   Declaration" and, collectively with the 1st U.S. Bank Declaration, 2nd U.S. Bank Declaration, 3rd

26   U.S. Bank Declaration, Wells Fargo Declaration, and HSBC Declaration,  the "Trustee

27   _____
     [1]   Terms not otherwise defined herein shall have the same meanings ascribed to them in the
           Motion.
28

538574v4                                          2

Declarations") each describing how notice of the Motion was made to the Beneficial Holders, the

arguments of counsel made, and the evidence proffered or adduced, at the Hearing; and adequate

and sufficient notice of the Motion having been given to all parties as required by the Federal

Rules of Bankruptcy Procedure, the Plan and Confirmation Order; and all interested parties having

been afforded an opportunity to be heard with respect to the Motion and all relief related thereto;

and after due deliberation thereon; and good and sufficient cause appearing therefor and for the

reasons stated on the record at the time of the Hearing, it is hereby

**FOUND AND DETERMINED THAT**:[2]

A.    This Court has jurisdiction over the Motion under 28 U.S.C. §§ 157 and 1334,

and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue of this case and the

Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.    As evidenced by the declarations of service filed with this Court, along with

the Trustee Declarations, (i) due, proper, timely, adequate and sufficient notice of the Motion and the

Hearing has been provided in accordance with Bankruptcy Rules 23007; (ii) such notice was good,

sufficient and appropriate under the circumstances; and (iii) no other or further notice of the Hearing

is contemplated thereby or hereby is or shall be required.

C.    The procedures described in each of the Trustee Declarations for sending

notice to the Beneficial Holders are fair and reasonable and provide such Beneficial Holders with

fair and reasonable notice of the Motion and this Order and a reasonable opportunity to object, or to

direct the Trustees to object to the Motion.

D.    A reasonable opportunity to object and be heard with respect to the Motion

and the relief requested therein has been afforded to all interested persons and entities, including the

following: (i) Trustees; (ii) the Beneficial Holders; (iii) the Office of the United States Trustee; and

(iv) all other parties requesting post-Effective Date notice in this case.

---

[2]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be
construed as findings of fact when appropriate.  See Fed. R. Bankr. P. 7052.

1    E.    The application of the Protocol to estimate the Subject Claims is fair, prudent

2    and reasonable and represents good, sufficient and sound business purposes and justification.

3    F.    To the extent that each Trustee is not directed by the Beneficial Holders of its

4    respective securitization trust to object to the Motion, it is fair, prudent and reasonable for such

5    Trustee not to object to the Motion.

6    G.    Good and sufficient reasons for approval of the Motion have been articulated.

7    The relief requested in the Motion is in the best interests of the Liquidating Trust and the

8    beneficiaries of the Liquidating Trust, including the Beneficial Holders, who are indirect

9    beneficiaries of the Liquidating Trust, and it is therefore,

10    **ORDERED, ADJUDGED AND DECREED THAT**:

11    1.    The Motion is granted.

12    2.    The Amended Claims (i.e., Claim Nos. 882.1, 906.1, 907.1, 908.1, 909.1,

13    910.1, and 911.1) are disallowed in their entirety.

14    3.    The application of the Protocol to estimate the Subject Claims (including the

15    Surviving Claims) is approved.

16    4.    The Subject Claims (including the Surviving Subject Claims) are estimated

17    and allowed as general unsecured claims in the amounts determined under the Protocol as set forth

18    below:

| Claim No. | Claimant | Original Claim Amount | Allowed Protocol Amount |
|-----------|----------|----------------------|------------------------|
| 1006.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE3 | $138,818.77 | $118,625.00 |
| 1008.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2006-7 | $115,037,330.36 | $14,811,632.97 |
| 1004.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2006-6 | $70,447,851.87 | $12,937,159.88 |

538574v4

| Claim No. | Claimant | Original Claim Amount | Allowed Protocol Amount |
|---|---|---|---|
| 1007.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2006-5 | $63,139,047.96 | $9,272,627.45 |
| 1009.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2006-4 | $73,699,118.76 | $11,465,442.38 |
| 1005.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2006-3 | $44,569,743.08 | $7,339,340.45 |
| 820.2 | US Bank National Association, As Trustee For The Mastr [sic] Asset Backed Securities Trust 2006 HE-4 Mortgage Pass Through Certificates | $1,887,392.50 | $537,240.00 |
| 822.2 | US Bank National Association, As Trustee For The Structured Asset Securities Corporation Mortgage Pass Through Certificates Series 2006-OW1 | $1,293,654.16 | $296,550.00 |
| 876.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2005-5 | $9,964,562.00 | $1,019,361.11 |
| 877.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2005-4 | $23,391,767.66 | $1,464,712.87 |
| 878.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2005-3 | $15,725,482.43 | $1,532,677.01 |
| 879.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2005-2 | $13,821,760.25 | $1,139,046.2 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Claim No. | Claimant | Original Claim Amount | Allowed Protocol Amount |
|---|---|---|---|
| 880.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset-Backed Certificates, Series 2005-1 | $2,505,815.78 | $114,152.69 |
| 1010.1 | Ownit Mortgage Loan Trust, Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-HE2 | $37,562,982.79 | $1,900,000.00 |

5.     The procedures for (i) providing notice of the Motion to the Beneficial Holders as described in the Trustee Declarations and (ii) allowing the Beneficial Holders to object or instruct its respective Trustee to object are found to be fair and reasonable and are approved.

6.     Except to the extent that the securitization documents for each of the Subject Securitization Trusts expressly provide to the contrary, distributions by the Liquidating Trust to each of the Subject Trusts shall be deemed to be subsequent recoveries in respect of previously suffered losses, determined as of monthly determination date immediately preceding the date of such distribution ("Determination Date"), allocated pro rata in respect of all mortgage loans sold by the Debtor to each Subject Securitization Trust, based on the amount of the loss on each such mortgage loan, as against the aggregate losses suffered on all such mortgage loans (e.g., if a securitization trust experienced total losses of $10,000,000 through the Determination Date on account of mortgage loans sold by the Debtor and received a distribution of $100,000 from the Liquidating Trust, the securitization trust would be deemed to have received $.01 of subsequent recovery on account of each $1 of loss previously suffered on such mortgage loans).

7.     All objections, including without limitation, any objection of any Beneficial Holder or future Beneficial Holder to the Motion, or any portion thereof, that have no been withdrawn, waived, settled or specifically addressed in this Order, and all reservations of rights included in such objections, are hereby overruled on the merits.

8.     This Order is final, binding and effective on all current, former and future Beneficial Holders as well as the Trustees or successors thereto.  Each of the Trustees and their respective current and former officers, directors, shareholders, employees, agents, attorneys,

538574v4

1   successors and assigns (the "Trustee Parties"), and any Designated Distribution Agent that acts in

2   reliance upon this Order, shall be and hereby are, fully exculpated and shall have no liability to the

3   Debtor's estate or to any Beneficial Holder or future Beneficial Holders (the "Enjoined Parties")

4   arising out of, relating to, or in connection with the Motion and/or the Subject Claims.  All

5   Enjoined Parties shall be, and hereby are, bound by this Order, and shall be permanently and

6   irrevocably enjoined from commencing or continuing in any manner any action or proceeding

7   against the Trustee Parties arising out of, relating to, or in connection with the Motion and/or the

8   Subject Claims and any actions taken or not taken in connection therewith.

9          9.    The Liquidating Trustee and each of the Trustees are hereby authorized and

10   empowered to take any and all actions that are reasonably necessary or appropriate to implement

11   and effectuate this Order, including, but not limited to, the distribution of funds to the

12   securitization trusts.

13          10.    This Court shall retain jurisdiction to hear and determine all matters arising

14   from or related to the implementation of this Order.

15   Submitted by:

16   /s/ Christine M. Pajak

17   Christine M. Pajak, and
     Gabriel I. Glazer, Members of

18   STUTMAN, TREISTER & GLATT
     PROFESSIONAL CORPORATION

19   Counsel for the OWNIT Liquidating Trust

20                       ###

21

22

23

24

25   DATED: June 21, 2010

_____
United States Bankruptcy Judge

26

27

28