IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------------------- x

In re:                                                              :    Chapter 11
                                                                    :
AMERICAN HOME MORTGAGE HOLDINGS,                                    :    Case No. 07-11047 (CSS)
INC., a Delaware corporation, *et al.*,[1]                          :    Jointly Administered
                                                                    :
                                              Debtors.              :    Response Deadline: December 28, 2012 at 4:00 p.m.
                                                                    :    (ET)
                                                                    :    Hearing Date: January 7, 2013 at 10:00 a.m. (ET)
------------------------------------------------------------------------------- x

**PLAN TRUST'S OBJECTION TO CLAIM NUMBER 8932 FILED BY ZOA NIELSEN,**
**INDIVIDUALLY AND ON BEHALF OF OTHERS, PURSUANT TO SECTION 502(b)**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 3003 AND 3007**

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the Plan Trust

established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of*

*February 18, 2009* (the "Plan") in connection with the chapter 11 cases of the above-

captioned debtors (the "Debtors"), hereby objects (the "Objection") to claim number 8932,

filed by Zoa Nielsen ("Nielsen"), individually and on behalf of others, pursuant to section

502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3003 and

3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and requests

the entry of an order, substantially in the form annexed hereto as Exhibit A (the "Proposed

Order"), disallowing and expunging claim number 8932 (the "Nielsen Claim") in its

entirety.  In support of this Objection, the Plan Trustee respectfully represents as follows:

---

[1] The Debtors in these cases are:  American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.;
American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.); American Home
Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.
The mailing address for all of the Debtors is:  AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

## PRELIMINARY STATEMENT

1.       As Nielsen has failed to move this Court to exercise its discretionary power to extend the application of Rule 23 to her proof of claim, she has failed to make the threshold showing necessary to authorize the filing of a class proof of claim. Even if such application had been made, it should be denied because the proposed class was never certified pre-petition and the putative class members have already received actual or constructive notice of the Debtors' bankruptcy cases and bar date established by this Court.

2.       Furthermore, class treatment of the Nielsen Claim is inappropriate because Nielsen's wage and hour claims cannot satisfy either the superiority or the predominance requirements of Rule 23(b). In short, class treatment of Nielsen's claims is neither appropriate nor necessary to protect the rights of the putative class members as their rights have already been amply protected by the bankruptcy claims process itself and individualized factual determinations for the putative class members predominate over common questions.

3.       Finally, the Nielsen Claim is not entitled to *prima facie* validity as it lacks any documentation or information to support such claims, which claims are not reflected on the Debtors' books and records. As such, Nielsen has failed to met her burden of proof and her claim should be disallowed.

## JURISDICTION

4.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory

predicates for the relief sought herein are sections 502(b) of the Bankruptcy Code and Bankruptcy Rules 3003 and 3007.

## BACKGROUND

5.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

6.      On August 17, 2007, this Court entered an order appointing Epiq Bankruptcy Solutions, LLC ("Epiq") as claims and noticing agent in these Chapter 11 Cases.

7.      On October 30, 2007, this Court entered an order (the "Bar Date Order") establishing January 11, 2008 at 4:00 p.m. (EST) (the "Bar Date") as the deadline for filing proofs of claim against the Debtors' estates on account of claims arising, or deemed to have arisen, prior to the Petition Date and approving the form and manner of notice of the Bar Date.

8.      Pursuant to the Bar Date Order, actual notice of the Bar Date (the "Bar Date Notice") was sent to (i) all known entities holding potential prepetition claims and their counsel (if known); (ii) all parties that have requested notice in theses Chapter 11 Cases; (iii) all equity security holders; (iv) all indenture trustees; (v) the United States Trustee; and (iv) all taxing authorities for the jurisdictions in which the Debtors did business.  Such service also included the Debtors' current and former employees, including Nielsen and the putative class members, for whom the Debtors had employment records.

*See* Docket Nos. 2439,[2] 2460 and 2461. In addition, notice of the Bar Date was published in the national edition of *The New York Times* on November 6, 2007. *See* Docket No. 3284.

9.    Approximately 11,000 proofs of claim have been filed in these Chapter 11 Cases, including approximately 4,700 from former employees.

10.    Since the Petition Date, the Debtors and/or the Trust has prosecuted over one hundred (100+) omnibus objections to claims and this Court has already entered orders with respect to approximately 10,000 of the claims filed in these Chapter 11 Cases.

11.    On February 23, 2009, the Court entered an order confirming the Plan.

12.    On November 30, 2010 (the "Effective Date"), the Plan became effective, and pursuant to the terms thereof, that certain *Plan Trust Agreement* (the "Trust Agreement") was executed, thereby creating the Trust and appointing the Trustee as trustee of the Trust.

12.    Pursuant to the terms of the Plan and the Trust Agreement, as of the Effective Date, the Plan Trustee has authority and standing to prosecute objections to claims. *See* Plan, Art. 10.B; Trust Agreement, ¶3.2(b).

## THE NIELSEN ACTION AND CLAIM

13.    On August 14, 2006, Nielsen filed a putative class action on behalf of herself and other current and former employees of Debtor American Home Mortgage Corp. ("AHMC") in the United States District Court for the District of Oregon (Case No. 6:06-CV-1161-AA, the "Nielsen Action"), alleging that AHMC violated various federal and Oregon state wage and hour laws. Nielsen's *First Amended Collective and Class Action Allegation Complaint* asserts federal and Oregon state law claims for alleged failure to pay

---

[2] Nielsen is identified on page 1939 of this service list.

01:12972202.1

minimum wages and overtime wages, failure to pay wages, failure to timely pay wages and

for taking wrongful deductions from wages.  Nielsen did not seek class certification.

14.    While the parties did engage in some formal discovery in the Nielsen

Action, discovery was not completed and no notification of the Nielsen Action was ever

sent to the putative class members.  The Nielsen Action is currently stayed as a result of

these bankruptcy proceedings.

15.    On January 11, 2008, Nielsen filed the Nielsen Claim, both on behalf

of herself and other putative class members, asserting an unliquidated, priority unsecured

claim against the estate of AHMC arising from the claims asserted in the Nielsen Action.

**OBJECTION**

**A.    The Nielsen Claim Should Not Be Treated as a Class Proof of Claim**

16.    The Nielsen Claim should not be treated as a class proof of claim as it

fails each and every factor that courts consider when deciding whether to allow a class proof

of claim.

17.    "[B]ankruptcy significantly changes the balance of factors to be

considered in determining whether to allow a class action" and renders class-based claims

"less desirable in bankruptcy than in ordinary civil litigation." *In re Bally Fitness of Greater

N.Y., Inc.* ("Bally I"), 402 B.R. 616, 620-21 (Bankr. S.D.N.Y. 2009) (quoting *In re Ephedra

Prods. Liab. Litig.,* 329 B.R. 1, 5 (S.D.N.Y. 2005)).  By their very nature, bankruptcies

perform many of the functions of a class action, i.e., providing notice to potential claimants,

consolidating claims in a single forum and allowing for the efficient litigation of common

issues. *Id.* at 621.  Unlike class actions, however, bankruptcies allow claimants to file proofs

01:12972202.1

of claim without counsel, at virtually no cost, and are arguably more efficient than class actions. *Id.*

18.    Moreover, class actions can interfere with the uniform application of bankruptcy bar dates by preserving the claims of class members who failed to assert claims within the time limits applicable to similarly situated creditors. This impact effectively dilutes the value of claims asserted by timely filers and implicates due process concerns. *See In re Sacred Heart Hosp. of Norristown*, 177 RR. 16, 23 (Bankr. E.D. Pa. 1995) ("an action which expands the bar date for notified creditors may . . . violate due process"). Further, the additional "layers of procedure and factual complexity that accompany class-based claims" siphon estate resources and potentially interfere with the orderly progression of the reorganization. *In re Bally I*, 402 B.R. at 621. "[A] bankruptcy case can proceed no faster than its slowest matter . . . and a class action may 'gum up the works' because until complete, the bankruptcy court cannot determine the entitlement of other creditors." *Id.* (quoting *In re Woodward & Lothrop Holdings, Inc.*, 205 RR. 365, 376 (Bankr, S.D.N.Y. 1997)).

19.    For these and other reasons, courts have repeatedly emphasized that the class proof of claim device should be used "most sparingly." *In re Sacred Heart*, 177 B.R. at 22; *see also In re Musicland Holding Corp.*, 362 RR. 644, 651 (Bankr. S.D.N.Y. 2007) (same); *In re FirstPlus Fin., Inc.*, 248 B.R. 60, 73 (Bankr. N.D. Tex. 2000) ("In the bankruptcy context, class actions should be rare."). "There is no absolute right to file a class proof of claim." *In re Bally I*, 402 B.R. at 619. Rather, a movant must seek to have the bankruptcy court exercise its discretion to allow a class proof of claim by applying Rule 23 to the proof

of claim.[3]  Bankruptcy courts will exercise their discretion to permit class claims only where

the movant has met its burden of demonstrating that that such treatment is appropriate. *See*

*In re United Cos. Fin. Corp.*, 277 B.R. 596, 601 (Bankr. D. Del. 2002) ("The burden of proof is

on the claimant to establish each element.").

20.    "In determining whether to exercise [their] discretionary power [to

allow class proofs of claim], courts primarily look at:  a) whether the class claimant moved

to extend the application of Rule 23 to its proof of claim; b) whether the benefits derived

from the use of the class claim device are consistent with the goals of bankruptcy; and c)

whether the claims which the proponent seeks to certify fulfill the requirements of Rule 23."

*In re Bally I*, 402 B.R. at 620 (internal quotations and citations omitted).

21.    As a threshold matter, Nielsen has failed to move this Court to

exercise its discretion to apply Rule 23 to the Nielsen Claim since filing that claim close to

five (5) years ago.  However even if Nielsen had moved this Court, Nielsen would still be

unable to meet her burden.  Indeed, as explained below, the Nielsen Claim fails each and

every factor that courts have considered when deciding whether to allow a class proof of

claim.

(1)    **Authorizing the Filing of Nielsen's Class Proof of Claim Would be Inconsistent with the Goals of Bankruptcy**

22.    Courts have concluded that the filing of class proofs of claim is

consistent with the Bankruptcy Code "in two principle situations:  (i) where a class has been

certified pre-petition by a non-bankruptcy court; and (ii) where there has been no actual or

constructive notice to the class members of the bankruptcy case and Bar Date." *In re Bally I*,

---

[3] The Court has the discretion to apply Rule 23 to a class proof of claim by virtue of Bankruptcy Rule 9014, which allows the Court to "direct that one or more of the other rules in Part VII shall apply." FED. R. BANKR. P. 9014(c).  Bankruptcy Rule 7023 adopts Rule 23. *See* FED. R. BANKR. P. 7023.

402 B.R. at 620; *see also In re Musicland*, 362 B.R. at 654; *Bailey v. Jamesway Corp. (In re Jamesway Corp.)*, Case No. 95-B-44821, Adv. Pro. No. 96-8389A, 1997 Bankr. LEXIS 825, at *16 (Bankr. S.D.N.Y. June 11, 1997); *In re Sacred Heart*, 177 B.R. at 22. These two factors "are critical. For this reason, putative members of an uncertified class who received actual notice of the bar date but did not file timely claims are the least favored candidates for class action treatment." *In re Musicland*, 362 B.R. at 655 (emphasis added). In addition to these primary factors, courts also consider "whether class certification will adversely affect the administration of the case[,]" i.e., whether permitting the class claims risks "undue delay." *Id.* at 654-55 (quoting *In re Ephedra*, 329 B.R. at 5).

23.    Nielsen's class claim plainly fails all of these factors. The United States Court for the District of Oregon has made no certification decision in the Nielsen Action. Indeed, Nielsen never even sought such relief in the year that the case was pending prior to the imposition of the automatic stay in these bankruptcy proceedings. Accordingly, the putative class members could "not have a reasonable expectation that a class claim would be filed that would protect their rights, or that they did not have to comply with the bar date." *In re Musicland*, 362 B.R. at 656; *see also In re Jamesway Corp.*, 1997 Bankr. LEXIS 825, at *35-36 ("No class was pre-certified such that purported class members who did not choose to file a proof of claim should or could have had any reasonable expectation that they need not comply with the Bar Date Order. As such, this is not a case justifying an exception to the enforcement of the Bar Date Order in accordance with its express and unequivocal terms.").

24.    Moreover, as described above, the Debtors mailed the Bar Date Notice, along with a proof of claim form, to each identifiable putative class member at their

last known address. In addition, the Debtors published the Bar Date Notice in accordance with the Bar Date Order. Thus, actual or constructive notice has been provided to all of the putative class members. As courts have recognized, where "the putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date, denial of the implementation of the class proof of claim device appears advisable." *In re Sacred Heart*, 177 B.R. at 22; *see also In re First Interregional Equity Corp.*, 227 B.R. 358, 371 (Bankr. D.N.J. 1998) (same).[4]

25.    Although pre-petition certification and notice are the two "critical" factors courts consider in deciding whether to allow class treatment of bankruptcy claims, *In re Musicland*, 362 B.R. at 655, courts have identified the potential for delay or disruption of the bankruptcy proceedings as also "bear[ing] on the exercise of the discretion whether to apply Rule 23." *Id.* at 652. Indeed, "a pervasive theme" in the "court's exercise of this discretion . . . is avoiding undue delay in the administration of the case." *In re Ephedra*, 329 B.R. at 5. Thus, "a court sitting in bankruptcy may decline to apply Rule 23 if doing so would . . . 'gum up the works' of distributing the estate." *Id.* (quoting *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997)). This analysis "often

---

[4] Even assuming, *arguendo*, that some of the putative class members did not receive actual notice—because the mailing address that the Debtors had for those members was invalid or employment records could not be located— such circumstance would be "irrelevant" as a matter of law. "[T]he fact that these plaintiffs or other Proposed Class members may not have received [the] Package that was mailed to them or read published notice of the Bar Date is irrelevant as a matter of due process. When litigation threatens to deprive individuals of their property, 'notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections' satisfies due process requirements." *In re Jamesway*, 1997 Bankr. LEXIS 825, at *30 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The proper inquiry is whether the Debtors "acted reasonably in selecting means likely to inform persons affected by the Bar Date and these chapter 11 proceedings, not whether each claimant actually received notice." *Id.* As in *Jameway*, "by complying with the terms of the Bar Date Order, mailing a Claim Package to every known creditor and publishing notice of the Bar Date," the Debtors' notices here "satisfy due process." *Id.* at *31; *see also In re Bally Fitness of Greater N.Y., Inc. (In re Bally II)*, 411 B.R. 142, 146 (S.D.N.Y. 2009) (the fact that a "smaller part of the putative class . . . received only notice by publication . . . was still legally adequate" (citing cases)).

centers on (a) the timing of the motion for certification, ... and (b) whether a plan has been

negotiated, voted on or confirmed." *Musicland*, 362 B.R. at 655 (citing cases).

Consideration of these additional factors similarly weighs heavily against allowing Nielsen

to file a class proof of claim.

26.     First, it has been over five (5) years since Nielsen filed the Nielsen

Claim (and six (6) years since she commenced the Nielsen Action) and Nielsen has still not

moved for certification.  Courts have considered a motion for class certification to be timely

when filed with a proof of claim. *See In re First Interregional Equity Corp.*, 227 B.R. 358, 366

(Bankr. D. N.J. 1998); *cf. In re Ephreda Prods.*, 329 at 5 ("although no waiver was involved,

counsel for the class claimants bears primary responsibility for the 'gumming up' by not

affirmatively moving under Rule 9014(c) for class certification."); *In re Computer Learning

Ctrs., Inc.*, 344 B.R. 79, 89 (Bankr. E.D. Va. 2006) ("A Rule 7023 motion should be filed as

soon as practicable and should be denied if it comes so late as to prejudice any party."); *In re

Craft*, 321 B.R. 189, 199 (Bankr. N.D. Tex. 2005) (putative class representatives waited too

long to invoke Rule 23); *Woodward & Lothrop*, 205 B.R. at 370 ("As the case moves toward

conclusion, it is more likely that a delay in resolving the certification issue will interfere with

the administration of the estate."); *Sacred Heart*, 177 B.R. at 23 ("Timing is also significant.

The most propitious time for filing a motion for class recognition is before a bar date is

established, since the bar date is effectively uprooted in part by an extension of the bar date

for a favored class of creditors.").

27.     Second, the Plan was the product of protracted negotiations between

the Debtors, the official committee of unsecured creditors appointed in the Chapter 11

Cases and other parties in interest.  On the basis of those negotiations and the underlying

assumptions, the Plan was voted on by the creditor body, approved and confirmed. The Plan went effective almost two (2) years ago. Introducing an unliquidated (but potentially substantial) priority claim at this late stage in the case would severely prejudice the creditors' expectations under the Plan and completely disrupt the economic model upon which the Plan was formulated.

28.     Moreover, litigation of the Nielsen Action would require substantial and expensive class certification discovery, followed by class briefing and a hotly contested certification hearing. If a class were certified, notice and an opportunity to "opt out" would have to be given to the class members, followed by merits discovery and a complex and lengthy trial. Such a process would result in delay adversely affecting the administration of the estate, plainly gumming up the works of making distributions and siphoning the Trust's limited resources. *See In re Bally I*, 402 B.R. at 621.

29.     Simply put, substantial delay, distraction, and depletion of the Trust is the inevitable outcome of allowing the Nielsen Claim to proceed on a class basis at this stage of the Chapter 11 Cases. Courts have consistently rejected class proofs of claim where, like here, no class was certified pre-petition, actual or constructive notice was provided to the putative class members, and treatment of the claims on a class basis threatens to disrupt and delay the bankruptcy proceedings. *See, e.g., In re Bally I*, 402 B.R. at 620-21 (denying class proof of claim for state wage and hour claims where actual or constructive notice had been given to putative class members, class certification would adversely affect the administration of the case as such relief was not consistent with the goals of bankruptcy); *In re Musicland*, 362 B.R. at 656 (denying state wage and hour class proof of claim where class was not certified pre-petition, notice of the bar date was provided

01:12972202.1

11

to putative class members, and "the class claim would seriously delay the administration of the case"); *In re Jamesway*, 1997 Bankr. LEXIS 825, at *35 (denying class proof of claim where no class was certified pre-petition and most of the putative class members had received actual notice of the bar date); *In re Sacred Heart*, 177 B.R. at 23-24 (same).

30.     As such, this Court need not even reach the issue of whether the Nielsen Claim can survive scrutiny under Rule 23 as the Nielsen Claim should be denied class status because it is inconsistent with the goals of bankruptcy. *See In re Musicland*, 362 B.R. at 654 ("It is unnecessary to resolve [the Rule 23(b) requirements], however, because I decline to exercise my discretion to extend the application of Rule 23 to the class claim ...."); *In re Jamesway*, 1997 Bankr, LEXIS 825, at *36 ("We need not and do not consider whether the plaintiffs can satisfy Rule 23(a) and (b)(1) or (b)(3) herein."); *In re Sacred Heart*, 177 B.R. at 23-24 (denying class proof of claim without reaching Rule 23); *In re Ephedra*, 329 B.R. at 4 ("In exercising [its] discretion, the bankruptcy court first decides under Rule 9014 whether or not to apply Rule 23 . . . [to] the purported class claim; if and only if the court decides to apply Rule 23, does it then determine whether the requirements of Rule 23 are satisfied.").

(2)     **Nielsen Can Not Satisfy the Requirements of Rule 23**

31.     Even if this Court determines that the Nielsen Claim is not inconsistent with the goals of bankruptcy, the Nielsen Claim should be denied because it cannot satisfy Rule 23.

a.    **Class Treatment of the Nielsen Claim is Not Superior**[5]

32.    Among other things, Rule 23(b) requires as a prerequisite to certifying

a class that "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." FED. R. CIV. P. 23(b)(3).  Courts have frequently recognized

that the advantage of class treatment in consolidating the adjudication of common issues

"disappears in the context of a bankruptcy." *In re Bally I*, 402 B.R. at 621-22.  As the *Ephedra*

court explained, the "superiority of the class action vanishes when the 'other available

method' is bankruptcy, which consolidates all claims in one forum and allows claimants to

file proofs of claim without counsel and at virtually no cost." 329 B.R. at 9.

33.    Nielsen cannot show that class treatment of her claims would be

superior.  In fact, class treatment of the Nielsen Claim would be inferior to the bankruptcy

process already made available to the putative class members.  As courts have recognized:

> Bankruptcy provides the same procedural advantages as a class action.  In
> fact, it provides more advantages.  Creditors, even corporate creditors, don't
> have to hire a lawyer, and can participate in the distribution for the price of a
> stamp.  They need only fill out and return the proof of claim sent with the Bar
> Date Notice.  Furthermore, claims are "deemed allowed" under § 502(a) in
> the absence of an objection, in which case discovery and fact-finding are
> avoided altogether.

*In re Musicland*, 362 Br. at 644 n.8 (citations omitted); *see also In re Bally I*, 402 B.R. at 622; *In*

*re Ephedra*, 329 B.R. at 9.  In addition, "the *de facto* expansion of the Bar Date for notified

---

[5] The Plan Trustee notes that Nielsen may have difficulty even satisfying the requirements of Rule 23(a), i.e., a
showing of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, *see* FED. R.
CIV. P. 23(a), given, among other things, that "the class representative's failure to move for class certification is
a strong indication that he will not fairly and adequately represent the interests of the class." *In re Woodward &*
*Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997) (citations omitted).  Further, as set forth in
section B *infra*, Nielsen appears to have no viable claims based on minimum or overtime wage laws.

class members who failed to file individual claims in a timely manner will violate due process and prejudice the rights of timely filers." *In re Bally I,* 402 B.R. at 622.[6]

34.    Further, the claims resolution process is already well underway and operating smoothly.  Indeed, the Debtors and/or the Trust have already prosecuted over one hundred omnibus objections to claims and this Court has entered orders with respect to approximately 10,000 of the claims filed in these Chapter 11 Cases.  As such, class litigation "would be inferior to the bankruptcy claims resolution process and would unduly complicate the administration of these cases." *In re Circuit City, Inc.,* Case No. 08-35653, 2010 Bankr. LEXIS 1774, at *23 (Bankr. E.D. Va. May 28, 2010); *see also, In re Movie Gallery, Inc.,* Case No. 10-30696, 2012 Bankr. LEXIS, at *16 (Bankr. E.D. Va. March 15, 2012) (denying to apply Rule 7023 to claim where, among other things, thousands of claims had been resolved by the court, all of the debtors' hard assets had been liquidated and their chapter 11 plan had been confirmed).

**b.    Common Questions Do Not Predominate Over Individualized Determinations**

35.    Where individualized factual determinations will predominate over common questions of law or fact, courts—including courts in this jurisdiction—refuse to allow class treatment of claims. *See, e.g., In re W.R. Grace & Co.,* 389 B.R. 373, 379 (Bankr. D. Del. 2008); *In re United Cos. Fin. Corp.,* 277 RR. at 606-07 (Bankr. D. Del. 2002).  "[I]n most situations when considering the applicability of a class action in a bankruptcy context,

---

[6] Indeed, if the Nielsen Claim was to proceed on a class basis, class counsel could seek payment of their fees from the Trust assets, necessarily diminishing the already limited distributions available to other creditors. The only real beneficiary in that case, especially in light of the fact that all putative class members were provided an opportunity to file individual claims, would be class counsel. *See In re Musicland,* 362 B.R. at 655 (noting the "irony of . . . paying class counsel, at the expense of the vigilant creditors who observed the bar date"); *In re Sacred Heart,* 177 B.R. at 24 (same).

01:12972202.1

. . . 'the claims of the creditors will be sufficiently disparate so that the common question of law or fact will not predominate over the individual issues raised by the claimants.'" 6 NEWBERG ON CLASS ACTIONS § 20:4 (4th ed. 2002) (quoting 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE CIVIL 2D § 1754). Nielsen's class claims are no exception to this general rule. Indeed, courts considering similar wage and hour class claims have deemed such claims unsuitable for class treatment because "the Court would have to engage in a series of highly disputed mini-trials for each class member to resolve the issues . . . making class treatment untenable and implausible." *In re Bally I*, 402 B.R. at 622.

36.     Individual issues pervade Nielsen's claims. Each employee would need to individually demonstrate how much straight and overtime work was allegedly uncompensated. *See Bradley v. Networkers Int'l LLC*, 2009 Cal. App. Unpub. LEXIS 963, at *32-31 (Cal. App. 4th Dist. Feb. 5, 2009) ("to accurately determine the entitlement and amount of overtime pay . . . [would] requir[e] numerous mini-trials on the factual issues"). Additionally, the Court would be required to determine how much of each employee's unpaid time was for "*de minimis* work," which need not be compensated. *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984); *see In re Bally I*, 402 B.R. at 622.

37.     As such, Nielsen's wage and hour claims are especially unsuited to class treatment because individual questions of fact predominate over common questions.

**B.     The Nielsen Claim Lacks Sufficient Support and is Not Entitled to *Prima Facie* Validity**

38.     The Nielsen Claim lacks any documentation or information to support her claims. Nielsen has failed to provide any information or documentation with respect to (a) the amount of straight time and overtime that she allegedly worked without compensation, (b) the amount of time that she worked for which she alleges she was paid

01:12972202.1

15

less than the applicable minimum wage, (c) the amount of any such deficiencies or (d) the

amount of deductions which she alleges were wrongfully taken from her compensation.

39.    The burden of proof with respect to a proof of claim "rests initially,

and ultimately, with the claimant who must allege facts sufficient to support their claim." *In*

*re Gates*, 214 B.R. 467, 472 (Bankr. D. Md. 1997) (internal quotations and citation omitted).

If a claim fails to set forth the necessary supporting facts, it is "not entitled to the

presumption of *prima facie* validity, and the burdens of going forward and of proving its

claim by a preponderance of the evidence are on [the claimant]." *In re Marino*, 90 B.R. 25,

28 (Bankr. D. Conn. 1988); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)

(claimant is only entitled to have the claim considered "*prima facie* valid" if the claimant

alleges facts "sufficient to support the claim").

40.    Without providing sufficient information for the Plan Trustee to

reconcile the Nielsen Claim against the Debtors' books and records, the Nielsen Claim fails

to satisfy the requirements for a proof of claim. *See In re Chain*, 255 B.R. 278, 280 (Bankr. D.

Conn. 2000); *In re 20/20 Sport, Inc.*, 200 B.R. 972, 978 (Bankr. S.D.N.Y. 1996) ("In

bankruptcy, courts have traditionally analogized a creditor's claim to a civil complaint,

[and] a trustee's objection to an answer ....").

41.    Notwithstanding a complete lack of any information supporting the

conclusory Nielsen Claim, the Plan Trustee has reviewed the Debtors' books and records

and, based on that review, it appears that Nielsen has no viable claims against the Debtors'

estate.  Nielsen asserts an unsecured, priority claim for wages earned within the 180 days

prior to the Petition Date (the "Priority Period").  Per the Debtors' books and records,

Nielsen was paid $23,788.85 during the Priority Period prior to her termination on April 20,

2007. Applying the 2007 minimum wage of $5.15 per hour to the days that Nielsen was employed during the Priority Period (and assuming 8 hour work days), Nielsen was paid $21,440.45 in excess of the then applicable minimum wage during the Priority Period. Given the amount of this excess compensation, it is simply impossible for Nielsen to have worked sufficient hours above the standard 40 hour work week so as to not have been appropriately compensated for any such purported overtime.[7]  For example, while the Nielsen Claim does not assert how many hours she allegedly worked without overtime compensation, assuming that Nielsen never took a day off during the Priority Period, she would have had to have worked sufficient hours to earn at least $376 in overtime compensation each and every single day during her employment in the Priority Period.

## CONCLUSION

42.    Nielsen has not provided a sufficient basis to allow her claim to be treated as a class proof of claim, where no class was certified pre-petition and all of the putative class members received actual or constructive notice of these bankruptcy proceedings and the Bar Date.  In fact, Nielsen has not even sought to have this Court apply Rule 23 to her proof of claim.  Proceeding with the Nielsen Action on a class basis would not be superior to adjudicating the individual claims in these bankruptcy proceedings, but would instead cause considerable and unjustified delay in their orderly resolution. Moreover, the wage and hour claims that Nielsen seeks to adjudicate on a class-wide basis are rife with issues that would need to be decided on an individualized basis, thereby defeating predominance.  Finally, on the basis of Nielsen's individual claims, Nielsen has

---

[7] The Plan Trustee provides this analysis by way of example.  In doing so, the Plan Trustee does not acknowledge, agree or otherwise admit that Nielsen was in fact entitled to receive overtime compensation and reserves all rights in that regard.

01:12972202.1

provided no documentation or information supporting the Nielsen Claim and the Debtors' books and records do not support her claims.

### NOTICE

43.    The Plan Trustee has provided notice of this Objection to:  (a) the U.S. Trustee; (b) counsel to Nielsen; and (c) all persons who have filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  Due to the nature of the relief requested, the Plan Trustee respectfully submits that no further notice of this Objection is required.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

01:12972202.1

WHEREFORE, the Plan Trustee respectfully requests that the Court enter an order, substantially in the form of the Proposed Order annexed hereto as Exhibit A, (a) disallowing and expunging the Nielsen Claim in its entirety, and (b) granting such other and further relief as the Court may deem just and proper.

Dated: December 4, 2012
Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

/s/ Michael S. Neiburg
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Jeffrey Zawadzki
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*

01:12972202.1