## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x

In re:                                                                        :   Chapter 11
                                                                              :
AMERICAN HOME MORTGAGE HOLDINGS, INC.,   :   Case No. 07-11047 (CSS)
a Delaware corporation, <u>et al.</u>,[1]                                     :
                                                                              :   Jointly Administered
    Debtors.                                                :
                                                                              :
                                                                              :
                                                                              :
---------------------------------------------------------------- x

STEVEN D. SASS, as Plan Trustee of the                                        :
American Home Mortgage Plan Trust,                                            :
                                                                              :
    Plaintiff,                                             :
                                                                              :
v.                                                                            :   Adv. Proc. No. 09-51696 (CSS)
                                                                              :
IRON MOUNTAIN INCORPORATED                                                    :
d/b/a IRON MOUNTAIN RECORDS MANAGEMENT,   :
                                                                              :
    Defendant.                                             :
---------------------------------------------------------------- x

STEVEN D. SASS, as Plan Trustee of the                                        :
American Home Mortgage Plan Trust,                                            :
                                                                              :
    Plaintiff,                                             :
                                                                              :
v.                                                                            :   Adv. Proc. No. 09-51697 (CSS)
                                                                              :
IRON MOUNTAIN OFF-SITE DATA PROTECTION   :   **Hearing Date: January 7, 2013, at**
INC. d/b/a IM OFF SITE DATA PROTECTION,   :     **10:00 a.m. (ET)**
                                                                              :   **Objection Deadline: December 31, 2012,**
    Defendant.                                             :     **at 4:00 p.m. (ET)**
---------------------------------------------------------------- x

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. ("<u>AHM Holdings</u>"), a Delaware corporation (6303); American Home Mortgage Investment Corp. ("<u>AHM Investment</u>"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("<u>AHM Acceptance</u>"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("<u>AHM SV</u>"), a Maryland corporation (7267); American Home Mortgage Corp. ("<u>AHM Corp.</u>"), a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The address for all of the Debtors is 224 Sherwood Road, Farmingdale, NY 11735.

01:13008902.1

**PLAN TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 AND BANKRUPTCY CODE §§ 105(a), 1142, AND 362(d) FOR AN ORDER (I) APPROVING THE STIPULATION BY AND AMONG THE PLAN TRUSTEE, IRON MOUNTAIN INFORMATION MANAGEMENT, LLC, AND HOMEWARD RESIDENTIAL, INC. (F/K/A AMERICAN HOME MORTGAGE SERVICING, INC. (F/K/A AH MORTGAGE ACQUISITION CO., INC.)) RESOLVING CLAIMS RELATING TO THE DEBTORS' ACCOUNTS WITH IRON MOUNTAIN; AND (II) GRANTING RELIEF FROM STAY TO, AND AUTHORIZING DESTRUCTION OF CERTAIN DOCUMENTS HELD BY, IRON MOUNTAIN**

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the plan trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan")[2] in connection with the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), hereby moves (the "Motion") this Court, pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 105(a), 1142, and 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), for entry of an order (i) approving the stipulation (the "Settlement Stipulation") attached as Exhibit 1 to the proposed form of order included herein (the "Proposed Order"), by and among the Plan Trustee, Iron Mountain Information Management, LLC (f/k/a Iron Mountain Information Management, Inc.) (collectively with its affiliated entities, "Iron Mountain"), and Homeward Residential, Inc. (f/k/a American Home Mortgage Servicing, Inc. (f/k/a AH Mortgage Acquisition Co., Inc.)) ("Homeward" and, together with the Plan Trustee and Iron Mountain, the "Parties"), and (ii) granting related from stay to Iron Mountain and authorizing it to destroy the Baltimore Documents (as defined below).  In support of this Motion, the Plan Trustee respectfully represents as follows:

---

[2] Capitalized terms not defined in this Motion have the meanings ascribed to them in the Plan.

## JURISDICTION

1.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested are sections 105(a), 1142, and 362(d) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## GENERAL BACKGROUND

2.     On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition commencing the above-captioned cases under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").  On February 23, 2009, the Court entered an order confirming the Plan [D.I. 7042] (the "Confirmation Order").  The Effective Date of the Plan occurred on November 30, 2010.

3.     Pursuant to the Plan and Plan Trust Agreement [D.I. 6944], the Plan Trustee is permitted to, among other things, prosecute, abandon, collect, compromise and settle any Causes of Action, and resolve Claims against the Debtors' Estates.

## RELEVANT BACKGROUND

4.     Prior to the Petition Date, certain of the Debtors contracted with Iron Mountain for the provision of document and data storage, and document shredding services, at various locations around the United States.  The Debtors and Iron Mountain maintained several accounts (collectively, the "Iron Mountain Accounts"), including, but not limited to (i) the accounts numbered 55243.021501 (the "215 Account") and 04421.0M070K (the "M070K Account" and, together with the 215 Account, the "Disputed Accounts").

01:13008902.1

A.      **The Servicing Sale and the IM Cure Claim**

5.      On the Petition Date, the Debtors filed an emergency motion [D.I. 11] (the "Sale Motion") to authorize the sale of the assets used in their mortgage loan servicing business (the "Servicing Business"), including the assumption and assignment of certain executory contracts.

6.      On October 30, 2007, the Court entered an order [D.I. 1711] (the "Sale Order") approving the Sale Motion and authorizing the sale of the Servicing Business and the assumption and assignment of certain executory contracts (the "Assumed Contracts") pursuant to that certain Asset Purchase Agreement (as subsequently amended, the "APA") by and among AHM Investment, AHM Corp., and AHM SV (the "Sellers"), one the one hand, and Homeward, on the other hand.

7.      The Assumed Contracts included a certain contract with Iron Mountain (the "Assumed IM Contract").  The Plan Trust contends that the Assumed IM Contract governs both of the Disputed Accounts and, therefore, that (i) all documents stored by Iron Mountain under the Disputed Accounts were "Purchased Assets" under the APA and became the financial responsibility of Homeward on November 16, 2007, the date of the initial, "economic" closing under the APA, and (ii) the Debtors were relieved of any further liability with respect to the Disputed Accounts on April 11, 2009, the date of the final, "legal" closing under the APA, at which time the Assumed IM Contract was legally assumed and assigned to Homeward. Homeward disputes these contentions, and contends that (i) the Assumed IM Contract governs only the 215 Account and (ii) the documents stored by Iron Mountain under the M070K Account were not otherwise "Purchased Assets" under the APA.

8.      Pursuant to the Sale Order, a reserve of $10 million (the "Cure Escrow") was established on or about November 16, 2007, for the payment of certain cure amounts in

01:13008902.1

connection with the Assumed Contracts; the Cure Escrow is currently held by Capital One, N.A., successor by merger to North Fork Bank, as escrow agent (the "Escrow Agent") pursuant to the terms of the Cure Escrow Agreement (as defined in the APA).

9.      On June 25, 2008, Iron Mountain filed its *Notice of Iron Mountain Information Management, Inc's Interim Cure Claim* [D.I. 4828] (the "IM Cure Claim"), asserting cure claims totaling $211,654.84 against the Debtors and/or Homeward.

10.     On December 12, 2011, the Plan Trust filed an objection to the IM Cure Claim [D.I. 10274]. Homeward filed an objection to the IM Cure Claim on February 10, 2012 [D.I. 10326]. The IM Cure Claim will be resolved by the Settlement Stipulation.

**B.      The IM Proof of Claim and the Avoidance Actions**

11.     On or about November 30, 2007, Iron Mountain timely and properly filed proof of claim #3852 (the "IM Proof of Claim") against AHM Holdings, asserting claims totaling $95,579.29 secured, in part, by a warehouseman's lien on the documents stored in Iron Mountain's facilities (including the Baltimore Documents (as defined below)). No party in interest has objected to the IM Proof of Claim. The IM Proof of Claim will be resolved by the Settlement Stipulation.

12.     On July 30, 2009, the Official Committee of Unsecured Creditors of the Debtors (the "Committee") commenced the above-captioned adversary proceedings (the "Avoidance Actions") seeking avoidance and recovery of approximately $147,000 transferred from the Debtors to Iron Mountain prior to the Petition Date. On the Effective Date of the Plan, the Committee was dissolved and the Plan Trust succeeded to the Committee's rights vis-à-vis the Avoidance Actions. The Avoidance Actions will also be resolved by the Settlement Stipulation.

C.      **The IM Admin Requests**

13.     On December 20, 2007, Iron Mountain filed a motion to compel payment of administrative expenses [D.I. 2465] (the "Motion to Compel") consisting of $140,208.99 in postpetition invoices (through December 17, 2007) under the Iron Mountain Accounts, plus interest and fees.

14.     On January 7, 2008, the Debtors wired Iron Mountain $128,471.07 as partial payment of Iron Mountain's asserted administrative claim, subject to reservations of certain rights.

15.     On October 17, 2008, the Court approved a stipulation [D.I. 6275] between the Debtors and Iron Mountain resolving the Motion to Compel and outstanding payments for all services performed by Iron Mountain between the Petition Date and December 17, 2007; Iron Mountain was subsequently paid $7,500 pursuant to the stipulation and, accordingly, withdrew the Motion to Compel [D.I. 6479].

16.     On October 24, 2008, Iron Mountain filed a second motion to compel payment of administrative expenses [D.I. 6460] (the "Second Motion to Compel") consisting of $170,585.51 in postpetition invoices (from December 18, 2007, through September 22, 2008), plus interest, fees, and costs, under various Iron Mountain Accounts.

17.     On January 5, 2011, Iron Mountain filed requests for payment of alleged administrative expenses (collectively with the Second Motion to Compel, the "IM Admin Requests") with respect to (i) the 215 Account [D.I. 9637], in the amount of $17,139.85, plus continuing interest, fees, and costs; and (ii) the M070K Account [D.I. 9636], in the amount of $473,527.57, plus continuing interest, fees, and costs.

18.     On December 12, 2011, the Plan Trust filed an objection to the IM Admin Requests [D.I. 10274], asserting that Iron Mountain could not meet its burden of establishing a

transaction with and a benefit to the Debtors' Estates because, among other reasons, the contract the Plan Trust contends governs the Disputed Accounts had been assumed and assigned to Homeward on April 11, 2008, after which the Debtors' Estates no longer had an interest in the documents stored under the Disputed Accounts. Homeward filed an objection to the IM Admin Requests (to the extent they could be construed as directed at Homeward) on February 10, 2012 [D.I. 10326], disputing the Plan Trust's contention that Homeward is responsible for the M070K Account. The IM Admin Requests will be resolved by the Settlement Stipulation.

**D.      The Homeward Admin Requests**

19.      On May 23, 2008, Homeward filed a motion for allowance of an administrative expense claim of approximately $17 million for alleged breaches of the APA [D.I. 4233] (as subsequently amended by D.I. 5495, the "First Homeward Admin Request").

20.      The First Homeward Admin Request was resolved by that certain Release and Settlement Agreement between the Sellers and Homeward dated as of March 16, 2010 (the "Homeward-AHM Settlement Agreement"), which was approved by order of the Court on May 11, 2010 [D.I. 8844].

21.      On January 5, 2011, Homeward filed the *Request of American Home Mortgage Servicing, Inc., Formerly Known as AH Mortgage Acquisition Co., Inc., for Allowance and Payment of an Administrative Expense Claim* [D.I. 9640] (the "Second Homeward Admin Request"), asserting a contingent and unliquidated claim for indemnification for any amounts Homeward may be required to pay Iron Mountain relating to the M070K Account.

22.      On December 12, 2011, the Plan Trust filed an objection to the Second Homeward Admin Request [D.I. 10273], asserting that any purported indemnification claim relating to the Iron Mountain Accounts had been released under the Homeward-AHM Settlement

Agreement.  The Second Homeward Admin Request was resolved by the Settlement Stipulation and the Homeward-Iron Mountain Settlement Agreement (as defined below).

**E.      The Abandonment Motion and the Scheduling Order**

23.      On May 31, 2012, the Plan Trust filed the *Plan Trust's Motion for an Order Authorizing the Abandonment of Certain Documents Held by Iron Mountain, to the Extent that the Plan Trust has any Interest Therein* [D.I. 10467] (the "Abandonment Motion"), authority to abandon any remaining documents stored by Iron Mountain, out of an abundance of caution in the event that it were determined by the Court that the Plan Trust owned these documents and that Iron Mountain's continued storage of them gave rise to an administrative expense claim.  In the Abandonment Motion, the Plan Trustee reiterated his position that the documents at issue were owned by Homeward.

24.      Several parties filed an objection or a response to the Abandonment Motion, including: (i) National Credit Union Administration [D.I. 10482], (ii) Triad Guaranty Insurance Corporation [D.I. 10483], (iii) U.S. Bank National Association, as Trustee [D.I. 10484], (iv) the JPM Litigation Defendants [D.I. 10494], (v) Federal Deposit Insurance Corporation [D.I. 10497], (vi) Federal Home Loan Bank of Seattle [D.I. 10498], (vii) Federal Home Loan Bank of Chicago [D.I. 10500], (viii) Federal Home Loan Bank of San Francisco [D.I. 10502], (ix) Massachusetts Mutual Life Insurance Company [D.I. 10515], and (x) Federal Housing Finance Agency [D.I. 10518].  For ease of reference, these objections and responses are summarized on Exhibit B hereto.

25.      On June 22, 2012, Homeward filed a response to the Abandonment Motion [D.I. 10495], in which Homeward disputed the Plan Trust's contention that Homeward owned the documents subject to the Abandonment Motion.

26.     On June 28, 2012, Iron Mountain filed a response to the Abandonment Motion [D.I. 10506] attaching a complete inventory of all documents (spanning several locations around the country) in which Iron Mountain believed either Homeward or the Plan Trust may have an interest, and requesting that Homeward identify which documents it owns and which it contends are owned by the Plan Trust.  Among the documents identified by Iron Mountain were documents stored by Iron Mountain in one or more locations in the Baltimore-Washington region under the M070K Account (the "Baltimore Documents"), which, as noted below, are the only documents in which the Plan Trust believes it could have an interest.

27.     The Baltimore Documents comprise approximately 17,500 boxes, the bulk of which appear to be records of Columbia National, Inc., a Maryland-based loan servicer that was acquired by the Debtors in 2001.  It does not appear likely that these documents would be pertinent to any pending or future litigation involving the litigants (or potential litigants) who objected to the Abandonment Motion.  For instance, all but approximately 2,300 boxes of the documents appear to relate to time periods prior to 2004.  Of these, only approximately 1,100 boxes appear to have been generated by business departments that would be of interest to the litigants ("Quality Control," "Project Review," "Bankruptcy & Foreclosure," or "Human Resources & Training").  And of these, all but approximately 600 boxes appear to contain business records completely unrelated to the Debtors' mortgage loan origination practices.[3]

28.     Nevertheless, in light of the various responses to the Abandonment Motion, the Plan Trustee continued it to a date and time to be determined, subject to the filing and service of notice upon the objecting parties.

---

[3]  Prior to the hearing on this Motion, representatives of the Plan Trustee will review some of these documents on-site at Iron Mountain's facility to verify the preliminary findings with respect to the Baltimore Documents; if necessary, the Plan Trustee will supplement this Motion in light of such review.

29.     On October 15, 2012, the Parties entered into a *Stipulated Scheduling Order* governing discovery with respect to the IM Cure Claim, the IM Admin Requests, the Second Homeward Admin Request, and the Abandonment Motion, which was entered by the Court on October 16, 2012 [D.I. 10622] (as subsequently amended by D.I. 10653, the "Scheduling Order").  The Parties subsequently exchanged informal discovery and negotiated in good faith in an attempt to reconcile their positions.

30.     As a result of such negotiations, the Parties agreed upon a compromise they believe is fair and reasonable in light of the risks and costs inherent in any litigation, which was memorialized in a term sheet on December 5, 2012 (the "Settlement Term Sheet," a true and accurate copy of which is attached as Exhibit C hereto), subject to further documentation by means of the Settlement Stipulation and the Homeward-Iron Mountain Settlement Agreement (as defined below).  The Plan Trustee believes that approval of the Settlement Stipulation will moot the Abandonment Motion; however, out of an abundance of caution in the event this Motion is not approved, the Plan Trustee will re-notice the Abandonment Motion for hearing at the same time as this Motion.

## THE SETTLEMENT STIPULATION

31.     The principal terms of the Settlement Stipulation are set forth below:[4]

(1)    **Effectiveness**.  Except as otherwise provided therein, the Settlement Stipulation shall be effective upon entry of an order by the Court (the "Approval Order") (i) approving the Settlement Stipulation, and (ii) granting Iron Mountain relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code and authorizing Iron Mountain to destroy the Baltimore Documents, at its own cost, and to retain any proceeds from the sale of the resulting shredded materials, unless it receives current payment of all Storage Costs and Access Costs (as

---

[4] The terms of the Settlement Stipulation set forth herein are a summary only, and all terms not defined herein shall be given the meanings ascribed to them in the Settlement Stipulation.  To the extent of any inconsistency between this summary and the Settlement Stipulation, the terms of the Settlement Stipulation govern.

defined below) in accordance with paragraph 8 of the Settlement Stipulation.

(2)    **Homeward-Iron Mountain Settlement Agreement.**    Effective immediately upon execution of the Settlement Stipulation by all Parties, the Second Homeward Admin Request was withdrawn, with prejudice. Homeward and Iron Mountain acknowledge that they have entered into that certain Settlement Agreement and Release of Claims dated December 13, 2012 (the "Homeward-Iron Mountain Settlement Agreement"), and that the Homeward-Iron Mountain Settlement Agreement was effective immediately upon execution thereof by Homeward and Iron Mountain, and is not in any way be contingent upon entry of the Approval Order.    In the Homeward-Iron Mountain Settlement Agreement, among other things:[5]

(a) Homeward agreed to pay Iron Mountain $130,000, no later than December 31, 2012, in full compromise satisfaction of all amounts due or alleged to be due from Homeward through November 12, 2012;

(b) Homeward acknowledged that it currently owns and stores documents with Iron Mountain in Los Angeles, California; Dallas, Texas; and currently owns and is storing tapes with Iron Mountain in Irvine, California; Las Vegas, Nevada; Dallas, Texas; and Jacksonville, Florida;

(c) Homeward and Iron Mountain agreed that Homeward has no responsibility for storage costs, destruction costs, or for any other costs or claims of any kind relating to the Baltimore Documents, any documents stored in Georgia or New Jersey, or any documents stored in Los Angeles, California for "Sand Canyon";[6] and

(d) Homeward and Iron Mountain agreed to terminate any existing Master Service Agreements and to enter into a new Master Service Agreement governing Homeward's account(s) with Iron Mountain going forward.

(3)    **Allowed Cure Claim.**    The IM Cure Claim shall be allowed in the aggregate amount of $50,000 (the "Allowed Cure Claim").    The Allowed

---

[5]  The terms of the Homeward-Iron Mountain Settlement Agreement set forth herein are a summary only.  To the extent of any inconsistency between this summary and the Homeward-Iron Mountain Settlement Agreement, the terms of the Homeward-Iron Mountain Settlement Agreement govern.

[6]  The Debtors did not have any operations in Georgia or Los Angeles for which they would have used Iron Mountain's storage facilities; thus, it appears the categorization of these documents under the M070K Account was in error.  The Plan Trust has requested that the eight boxes in New Jersey (and one box in Minnesota) included in the inventory Iron Mountain filed with the Court be transferred to the location of the Baltimore Documents. Accordingly, the Plan Trustee believes that the Baltimore Documents are the only documents included in the Iron Mountain inventory in which the Plan Trust could have an interest.

Cure Claim shall be paid to Iron Mountain from the Cure Escrow within five (5) business days following entry of the Approval Order, pursuant to wire instructions to be provided by Iron Mountain

(4)     **Allowed IM Admin Claim.**  The IM Admin Requests shall be allowed in the aggregate amount of $65,000 (the "<u>Allowed Admin Claim</u>").  The Allowed Admin Claim shall be paid to Iron Mountain by the Plan Trust within five (5) business days following entry of the Approval Order, by wire transfer or check as is customary for the Plan Trustee.

(5)     **Dismissal of Avoidance Actions.**  The Avoidance Actions shall be dismissed with prejudice, with each side to bear its own costs and expenses.  The Plan Trustee shall file stipulations of dismissal in the Avoidance Actions memorializing the foregoing within five (5) business days following entry of the Approval Order.

(6)     **The IM Proof of Claim.**  The IM Proof of Claim shall be (i) withdrawn, with prejudice, to the extent it asserts general unsecured claims, and (ii) deemed satisfied in full, to the extent it asserts secured claims.

(7)     **Baltimore Documents.**  Beginning December 1, 2012, Iron Mountain shall be entitled to payment (i) at the current contract rate for storage of the Baltimore Documents (but not including any charges relating to documents not actually present in Iron Mountain's facilities), but in no event more than $8,000 per month (the "<u>Storage Costs</u>"), and (ii) at its customary rates for on-site access to and retrieval/replacement of the Baltimore Documents ("<u>Access Costs</u>"), <u>provided</u> that Iron Mountain shall provide the Plan Trustee and his designee(s), on no less than two (2) business days' notice, free of charge, on-site access to the Baltimore Documents for up to two days as requested by the Plan Trustee, during which time the Plan Trustee and his designee(s) may retrieve/replace and inspect up to 10% of the Baltimore Documents, free of charge.  Prior to the hearing on this Motion, the Plan Trustee and Iron Mountain shall stipulate to, and file with the Court a notice of, the monthly Storage Costs and Iron Mountain's customary rates for Access Costs.  The Plan Trust shall pay Iron Mountain any Storage Costs accruing from December 1, 2012, until the Court has held a hearing to consider this Motion.

(8)     **Release by Iron Mountain.**  Effective upon Iron Mountain's receipt of payment of the Allowed Cure Claim and the Allowed Admin Claim, Iron Mountain, on behalf of itself and any affiliates, successors, assigns, officers, directors, employees, or agents, shall be deemed to have forever waived and released any and all claims and/or causes of action of any nature that it may have against the Debtors, the Plan Trustee, the Plan Trust, or the Cure Escrow arising out of or relating to the Iron Mountain Accounts, whether any such claim and/or cause of action is known or unknown at this time, fixed or contingent, liquidated or unliquidated. Notwithstanding the foregoing, Iron Mountain will <u>not</u> waive or release

any claims allowed pursuant to, or otherwise arising under, the Settlement Stipulation.

(9)    **Release by Homeward.**  Effective upon entry of the Approval Order, Homeward, on behalf of itself and any affiliates, successors, assigns, officers, directors, employees, or agents, shall be deemed to have forever waived and released any and all claims and/or causes of action of any nature that it may have against the Debtors, the Plan Trustee, the Plan Trust, or the Cure Escrow arising out of or relating to the Iron Mountain Accounts, whether any such claim and/or cause of action is known or unknown at this time, fixed or contingent, liquidated or unliquidated. Notwithstanding the foregoing, Homeward will <u>not</u> waive or release any claims (i) allowed pursuant to, or otherwise arising under, the Settlement Stipulation, or (ii) that are identified on <u>Exhibit C</u> to the Homeward-AHM Settlement Agreement.

(10)    **Release by the Plan Trustee.**  Effective upon entry of the Approval Order, the Plan Trustee, on behalf of himself, the Plan Trust, the Debtors, and each of their respective affiliates, successors, assigns, officers, directors, employees, or agents, shall be deemed to have forever waived and released any and all claims and/or causes of action of any nature that it may have against Iron Mountain or Homeward arising out of or relating to the Iron Mountain Accounts, whether any such claim and/or cause of action is known or unknown at this time, fixed or contingent, liquidated or unliquidated.  Notwithstanding the foregoing, the Plan Trustee will <u>not</u> waive or release any claims (i) allowed pursuant to, or otherwise arising under, the Settlement Stipulation, or (ii) that are identified on <u>Exhibit C</u> to the Homeward-AHM Settlement Agreement.

## **RELIEF REQUESTED**

32.    By this Motion, and in accordance with §§ 105(a), 1142, and 362(d) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan Trustee respectfully requests entry of an order (i) approving the Settlement Stipulation and authorizing the Plan Trustee to enter into the same, and (ii) granting Iron Mountain relief from stay and authorizing it to destroy the Baltimore Documents, at its own cost, and to retain any proceeds from the sale of the resulting shredded materials, unless it receives current payment of all Storage Costs and Access Costs in accordance with paragraph 8 of the Settlement Stipulation.  The Plan Trustee weighed the costs, risks and disruption that would arise from litigating the numerous matters identified above against the compromises contained within the Settlement Stipulation.  In the Plan Trustee's judgment, the

Settlement Stipulation is reasonable and serves the best interests of the Plan Trust, and the

Debtors' estates and creditors, particularly when compared with the costs and disruption of

further litigation.

## BASIS FOR RELIEF REQUESTED

### I.        Approval of the Settlement Stipulation

33.        Bankruptcy Rule 9019(a) provides that "on motion by the trustee and after

a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  The

settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is

encouraged and "generally favored in bankruptcy."  *In re World Health Alternatives, Inc.*, 344

B.R. 291, 296 (Bankr. D. Del. 2006); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d

Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it

will often be wise to arrange the settlement of claims . . . .'") (*quoting In re Protective Comm. for

Indep. Stockholders of TMT Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

34.        In determining the fairness and equity of a compromise in bankruptcy, the

United States Court of Appeals for the Third Circuit has stated that it is important that the

bankruptcy court "apprise[] itself of all facts necessary to form an intelligent and objective

opinion of the probabilities of ultimate success should the claims be litigated, and estimate[] the

complexity, expense and likely duration of such litigation, and other factors relevant to a full and

fair assessment of the [claims]."  *In re Penn Cent. Transp. Co.*, 596 F.2d 1127, 1153 (3d Cir.

1979); *see also In re Marvel Entm't Group, Inc.*, 222 B.R. 243 (D. Del. 1998) (quoting, *In re

Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) (describing "the ultimate inquiry to be whether

'the compromise is fair, reasonable, and in the interest of the estate.'")).

35.        The Third Circuit Court of Appeals has enumerated four factors that

should be considered in determining whether a settlement should be approved.  The four

enumerated factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996); accord *Will v. Nw. Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006).

36.    The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alternatives, Inc.*, 344 B.R. at 296; *see also In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in *Meyers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996).  A bankruptcy court should not substitute its judgment for that of the debtors, or in this case, the Plan Trustee.  *See Neshaminy Office Bldg.*, 62 B.R. at 803.  A court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness.  *See In re W.T. Grant and Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re World Health Alternatives, Inc.*, 344 B.R. at 296 (stating that "the court does not have to be convinced that the settlement is the best possible compromise.  Rather, the court must conclude that the settlement is within the reasonable range of litigation possibilities.") (internal citations and quotations omitted).

37.    The Plan Trustee respectfully requests that the Court approve the Settlement Stipulation because its terms lie within the range of reasonable potential litigation possibilities.  In addition, each of the applicable *Martin* factors weighs in favor of approving the Settlement Stipulation.  Accordingly, the Settlement Stipulation should be approved pursuant to Bankruptcy Rule 9019.

A.       The Probability Of Success In Litigation

38.       The Parties agree that a central question in any litigation of the IM Cure Claims and the IM Admin Requests would be whether the Assumed Iron Mountain Contract in fact governs the M070K Account, such that the Baltimore Documents constitute "Purchased Assets" under the APA with Homeward.  Based on informal discovery from and discussions with Homeward and Iron Mountain, however, it appears that litigation regarding the scope of the Assumed Iron Mountain Contract would be fact-intensive and could require the Plan Trust to proceed on a difficult "mutual mistake of fact" theory with respect to the APA (to the extent the Court were to agree with Homeward that the Assumed Iron Mountain Contract governs only the 215 Account).  If the Plan Trust were unsuccessful in establishing that the Assumed Iron Mountain Contract governs the M070K Account, then any amounts found to be due and owing to Iron Mountain as an administrative expense may be borne by the Plan Trust entirely, as the Cure Escrow is available only to pay cure claims on Assumed Contracts.  Under the Settlement Stipulation, the settlement payment due from the Debtors' Estates is split $50,000 from the Cure Escrow and $65,000 from the Plan Trust, and Iron Mountain agrees to accept less than the amount it asserted in the IM Admin Requests (even after accounting for the $130,000 to be paid to Iron Mountain by Homeward under the Homeward-Iron Mountain Settlement Agreement), which, the Plan Trustee submits, appropriately recognizes the Parties' respective risks in a litigation scenario.

39.       As to the Avoidance Actions, Iron Mountain has raised several potentially viable defenses, and if the matters were litigated to their conclusion there is significant risk that the Plan Trustee would not prevail.

40.       Finally, as to the IM Proof of Claim, as discussed below, Iron Mountain's warehouseman's lien is presumptively valid under Bankruptcy Rule 3001(f), and the Plan Trust

would have the initial burden of coming forward to rebut this presumptive validity, as well as the burden of establishing that Iron Mountain's interest in the Baltimore Documents is adequately protected so as to justify the continued protection of the automatic stay.    Under these circumstances, and given the favorable resolution of the IM Admin Claims and the IM Cure Claims embodied in the Settlement Stipulation, the Plan Trustee believes that the first *Martin* factor militates in favor of approval of the Settlement Stipulation.

### B.    The Likely Difficulties In Collection

41.    While the Plan Trustee does not have any reason to believe it would be difficult to collect any judgment that might be entered against Iron Mountain in the Avoidance Actions, the second *Martin* factor nonetheless militates in favor of approval of the Settlement Stipulation because in the absence of a voluntary settlement it is questionable whether the Plan Trust would be able to compel Homeward to contribute any amount toward satisfaction of the IM Cure Claim or the IM Admin Requests.

### C.    The Complexity Of The Litigation Involved And The Expense, Inconvenience And Delay Necessarily Attending It

42.    The Settlement Stipulation satisfies the third factor in *Martin's* four-factor test largely for the reasons set forth above.  In determining whether to enter into the Settlement Stipulation, the Plan Trustee, in consultation with his professionals, analyzed the likely cost of litigating the IM Cure Claim, the IM Admin Requests, and the Second Homeward Admin Request.  These costs would likely include, among other things, formal discovery of Iron Mountain and Homeward (including several depositions), further motion practice, and trial preparation.  As a result of such consultations, the Plan Trustee believes the Settlement Stipulation is a cost-effective and efficient resolution of all matters.

D.     **The Paramount Interest Of Creditors**

43.     Entry into the Settlement Stipulation serves the paramount interest of the Debtors' creditors.  The Settlement Stipulation's resolution of the claims and defenses asserted among the Parties represents a savings for the Debtors' creditors by obviating further litigation and bringing finality to the Debtors' and the Plan Trust's long, and often confusing, history with the Iron Mountain Accounts.  Therefore, the "paramount interest of creditors" factor of *Martin's* four-factor test is satisfied and weighs in favor of the Court approving the Settlement Agreement.

E.     **Summary**

44.     In sum, the resolution of the matters embodied in the Settlement Stipulation represents a settlement that rests within the reasonable range of potential litigation outcomes, obviates the expense, delay, and inconvenience attendant in any litigation, and advances the paramount interests of creditors.  Therefore, the Settlement Stipulation satisfies Bankruptcy Rule 9019 and should be approved by the Court.

II.     **Relief from Stay and Destruction of the Baltimore Documents**

45.     Bankruptcy Rule 3001(f) provides that a properly filed proof of claim constitutes prima facie evidence of the validity and amount of such claim.  Fed. R. Bankr. P. 3001(f).  Section 502(a) of the Bankruptcy Code provides that a claim, proof of which is properly filed, is deemed allowed unless a party in interest objects.  11 U.S.C. § 502(a).  No party in interest has objected to the IM Proof of Claim, which asserts, among other things, a claim secured by a warehouseman's lien in the Baltimore Documents.

46.     Pursuant to Article 12(B) of the Plan, the automatic stay was continued after the confirmation date and shall remain in full effect until the later of entry of a final decree or dissolution of the Plan Trust.  Accordingly, to the extent the Plan Trust has an interest in the Baltimore Documents, the Baltimore Documents are protected by the automatic stay.  *See* 11

U.S.C. § 362(a)(3) (prohibiting exercise of control over property of the estate) and (4) (prohibiting enforcement of a lien against property of the estate).

47.     Section 362(d) of the Bankruptcy Code provides, in pertinent part, that on the request by a party in interest and after notice and a hearing, the Court "*shall* grant relief from the [automatic] stay (1) for cause, including the lack of adequate protection of an interest in property . . . [and] (2) with respect to a stay of an act against property . . . , if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization."  11 U.S.C. § 362(d) (emphasis added).  The Plan Trustee acknowledges that the Plan Trust is not providing Iron Mountain any adequate protection payments with respect to its warehouseman's lien in the Baltimore Documents.  In addition, the Plan Trustee acknowledges that the Plan Trust does not have "an equity" in the Baltimore Documents, and that the Baltimore Documents are not necessary for the Plan Trust's continued operations.  Accordingly, the Plan Trustee respectfully submits that Iron Mountain is entitled to relief from the automatic stay to exercise its remedies with respect to its warehouseman's lien in the Baltimore Documents, including the destruction of the documents, the sale of the resulting shredded materials, and the application of the proceeds of such sale to satisfaction of the claim secured by the warehouseman's lien.

48.     As an alternative basis for authorizing destruction of the Baltimore Documents, the Plan Trustee notes that Iron Mountain's secured claim constitutes a "Miscellaneous Secured Claim" for purposes of the Plan.  Under Article 4(B)(2) of the Plan, the Plan Trustee is expressly authorized to tender to the holder of an Allowed Miscellaneous Secured Claim "all or any portion of the Assets securing the Miscellaneous Secured Claim," in full satisfaction thereof.  The Baltimore Documents are an "Asset" for purposes of the Plan, and the Settlement Stipulation's provisions permitting Iron Mountain to destroy the Baltimore

Documents and retain the proceeds of the resulting shredded materials in exchange for the deemed satisfaction of the secured claim asserted in the IM Proof of Claim, is consistent with the Plan and should be approved under § 1142(b) of the Bankruptcy Code, which permits the Court to direct any "party . . . to perform any . . . act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b).

49.     To the extent there are objections to the destruction of the Baltimore Documents as contemplated by the Settlement Stipulation, the Plan Trustee respectfully requests that the Court establish procedures for review and retrieval of the Baltimore Documents upon request by the objecting parties, with such parties to bear the Storage Costs and Access Costs accruing from and after the hearing on this Motion.

## NOTICE

50.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) counsel to Iron Mountain; (iii) counsel to Homeward; (iv) counsel to the Administrative Agent; (v) counsel to the parties who objected to the Abandonment Motion; and (vi) all parties entitled to notice under Del. Bankr. LR 2002-1(b).  In light of the nature of the relief requested herein, the Plan Trustee submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Plan Trustee respectfully requests that this Court enter the Proposed Order, attached hereto as Exhibit A, pursuant to Bankruptcy Rule 9019 and §§ 105(a), 1142, and 362(d) of the Bankruptcy Code, (i) approving the Settlement Stipulation and authorizing the Plan Trustee to enter into the same, (ii) granting Iron Mountain relief from stay and authorizing it to destroy the Baltimore Documents, at its own cost, and to retain any proceeds from the sale of the resulting shredded materials, unless it receives current payment of

01:13008902.1

23

all Storage Costs and Access Costs in accordance with paragraph 8 of the Settlement Stipulation,

and (iii) granting such other and further relief as may be just and proper.

Dated: December 17, 2012
      Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Patrick A. Jackson*

_____
Sean M. Beach (No. 4070)
Patrick A. Jackson (No. 4976)
Rodney Square
1000 North King Street
Wilmington, Delaware  19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

Co-Counsel for the Plan Trustee