IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICAN HOME MORTGAGE, | ) | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware Corporation, | ) | |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | Related Docket Nos. 9692, 10148 and 10182 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
FOLLOWING TRIAL AND POST-TRIAL BRIEFING**

This matter comes before the Court following a trial conducted on November 18, 2011 (the "Trial") regarding various claims filed against the Debtors by Mr. Kareem.[1]  After due deliberation, and sufficient cause appearing, the Court makes the following findings of fact and conclusions of law with respect to Mr.  Kareem's claims. [2]

**FINDINGS OF FACTS**

### A.     Procedural History

1.      On August 6, 2007, the above-captioned debtors (the "Debtors") each filed a voluntary petition with the Court for relief under chapter 11 of the Bankruptcy Code.

---

[1] Reference to the Trial transcript are noted herein as "Tr." followed by a reference to the page number:line number.   References to the exhibits presented at Trial by the Plan Trustee and Mr. Kareem are noted herein as "Plan Trustee Exh." and "Kareem Exh.," respectively.

[2]  These Findings and Conclusions constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").  Any findings of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

2.      On February 23, 2009, the Court entered an order[3] confirming the

*Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009*[4] (the

"Plan").  The Effective Date of the Plan (as described therein) occurred on November 30,

2010.  Steven D. Sass was appointed as liquidating trustee (the "Plan Trustee") for the

Plan Trust established pursuant to the Plan.

3.      Article 17.F of the Plan states, in part, as follows:

> Prior to objecting to a Borrower Claim,  . . . the Plan Trustee .
> . . . shall (i) use reasonable efforts to contact the borrower-
> claimant to obtain information regarding the factual and
> legal basis of the asserted Claim and (ii) make a reasonable
> offer of settlement as to the Allowed amount of such claim,
> giving due regard for the *prima facie* validity of a properly
> filed proof of claim and the costs and relative hardships
> litigation would impose on the Plan Trust and the borrower-
> claimant. . . .

4.      In January 2011, Mr. Kareem filed the *Motion for Entry of*

*Administrative Claim with Brief in Support*.[5]  Thereafter, in August, 2011, Mr. Kareem filed

his *Motion for Judgment as a Matter of Administrative Claim Entered*.[6]  The Plan Trustee

filed an omnibus objection to both of these motions.[7]

5.      Mr. Kareem filed three claims in these cases, identified as claim

nos. 10870, 10875, and 10887 (collectively, the "Kareem Proofs of Claim").[8]  The Kareem

---

[3] D.I. 7042.

[4] D.I. 7029.

[5] D.I. 9692.

[6] D.I. 10148, and together with D.I. 9692 (the "Motions").

[7] D.I. 10182 (the "Objection").  *See also* Notice of Correction related thereto.  D.I. 5.

[8] *See* Plan Trustee Exh. 21.

Proofs of Claim relate *in toto* to the issues raised in the Motions.  In addition to the Plan Trustee's response to the Motions, the Objection seeks disallowance and expungement of the Kareem Proofs of Claim.

6.    The Court conducted a trial on the Motions and the Objection on November 18, 2011.  At the conclusion of the trial, the Court requested and the parties submitted post trial briefs.[9]  This is the Court's findings and facts and conclusions of law related thereto.

**B.  Factual History**

7.    In 2006, Mr. Kareem sought and received a cash-out refinance mortgage, which was funded by American Brokers Conduit, a d/b/a of AHM Corp. (hereinafter, "American Home Mortgage").[10]

8.    On June 29, 2006, American Home Mortgage sent various disclosures to Mr. Kareem prior to closing, including: (i) a copy of his loan application, (ii) disclosure of credit score information, (iii) privacy policy notices, (iv) initial Truth-In-Lending Statements, and (v) disclosures regarding the type of loan product Mr. Kareem selected including a Fixed Payment ARM Disclosure and a disclosure regarding payment options ARMs.[11]

---

[9]  D.I. 10328, 10360 and 10385.

[10]  Mr. Kareem worked with a mortgage broker Global Mortgage, a broker in American Home Mortgage's wholesale division.   Global Mortgage worked with Mr. Kareem to decide what loan terms Mr. Kareem wanted.   Once the paperwork was completed, Global Mortgage submitted the loan application to American Home Mortgage for approval.

[11]  Tr. 112:4-114:3.  *See also* Plan Trustee Ex. 13.

9.     On, July 7, 2006, Mr. Kareem closed on his loan in the amount of $159,200.00 (the "Loan").   The Loan was secured by the property located at 2197 Carlysle Creek Drive, Lawrenceville, Georgia (the "Property").   At closing, Mr. Kareem's existing mortgage on the Property, as well as other debts, were paid off and Mr. Kareem received cash in the amount of $2,314.40.[12]

10.     At closing, Mr. Kareem executed various documents related to the Loan, including, but not limited to: (i) Adjustable Rate Note (the "Note"), (ii) Adjustable Rate Rider (the "Rider"), (iii) Security Deed, (iv) Final Truth-In-Lending Disclosure Statement, (v) 5 Year Fixed Payment 12-Month MTA Index Power ARM Disclosure ("Fixed Payment ARM Disclosure"), and (vi) Notice of Right to Rescind (the "Right to Rescind Notice").[13]

11.     The Right to Rescind Notice gave Mr. Kareem three business days to rescind the Loan; however, Mr. Kareem did not exercise this option.   As a result, on July 12, 2006, American Home Mortgage funded the Loan.   Upon closing, AHM SV, Inc. ("AHM SV") acted as servicer of the Loan.

12.     On July 28, 2006, the Loan was sold to a securitization trust - AHMA 2006-3 (the "AHMA 2006-3 Trust").   AHM SV continued to act as servicer to the Loan.

13.     On August 6, 2007, each of the Debtors filed bankruptcy.

---

[12] *See* Plan Trustee Exh. 3 (HUD-1 Statement).

[13] *See* Plan Trustee Exhs. 4, 5, 6, 9, 11, and 12.

14.     On October 30, 2007, this Court entered an order (the "Servicing Sale Order") approving the Debtors' sale of the mortgage servicing business to AH Mortgage Acquisition Co., Inc. (now known as American Home Mortgage Servicing, Inc.) ("AHMSI" or the "Purchaser").[14]   AHMSI is a wholly unrelated company to the Debtors.[15]

15.     Mr. Kareem was not provided notice of the Debtors' bankruptcy or the subsequent sale of the Debtors' servicing business.

16.     On April 11, 2008, following the closing of the sale to AHMSI, AHMSI became the servicer of the Loan.  At that time, the payment address, the Loan's account number and name stayed the same.

17.     In or around July 2008, Mr. Kareem received a notice that his account number for the Loan and the payment address had changed.[16]

18.     In July 2008, in response to Mr. Kareem's request, AHMSI provided Mr. Kareem with a copy of his promissory note.

19.     In August 2008, AHMSI sent Mr. Kareem a notice of default for failure to make payments on the Loan (the "Notice of Default").[17]

---

[14]  D.I. 1711.

[15]  *Id.* at p. 6 (Finding F. Non-Collusive, Arm's Length, Good Faith Transaction).

[16]  Tr. 128:16-129:6.  *See also* Tr. 84:2-22.

[17]  Plan Trustee Exh. 20 (*Defendants' Appendix to Brief in Support of Motion for Summary Judgment*) (Bates no. APP -0163).  *See also* Tr. 75:3-19.

20.     In response to the Notice of Default, Mr. Kareem made three demands for rescission, each were denied by AHMSI on August 26, 2008; February 24, 2009; and September 27, 2009, respectively.[18]

21.     In October 2008, Mr. Kareem sent a letter to Michael Strauss, former CEO of the Debtors, demanding rescission of the Loan.[19]   As the Debtors no longer owner or serviced the Loan, the Debtors forwarded this letter to AHMSI.[20]

22.     In February 2009, AHMSI responded to Mr. Kareem's October letter refusing Mr. Kareem's rescission demand.[21]

23.     On November 18, 2009, Mr. Kareem filed a complaint in the United States District Court for the Northern District of Texas against American Home Mortgage, AHMSI, Mortgage Electronic Registration System ("MERS"), R.K. Arnold (CEO of MERS), and David Friedman (CEO of AHMSI) in the Northern District of Texas (Case No. 10-00762) for the alleged illegal foreclosure of the Property ("Texas Action").   Mr. Kareem made numerous claims including: (i) violations of the Truth in Lending Act ("TILA"); (ii) violations of the Real Estate Settlement Procedures Act ("RESPA"); (iii) unspecified civil rights violations; (iv) fraud; (v) breach of contract;

---

[18] Objection at Exh. L (*Kareem v. American Home Mortgage Holdings, Inc.* (Civ. A. No. 109-MI-0403), Federal Complaint: Violation of National Banking Act, TILA and Damage Claims Under 42 U.S.C. 1983, 1985 & 1986, Respectively (N.D. Ga.) at ¶ 25).

[19]  Plan Trustee Exh. 16 (Letter from Hussain Kareem to Michael Strauss, CEO and American Home Mortgage, Inc., AHMSI (Oct. 18, 2008)).

[20]  Tr. 131:8-20.

[21]  Plan Trustee Exh. 20 (*Defendants' Appendix to Brief in Support of Motion for Summary Judgment*) (Bates no. APP -0176).

(vi) wrongful foreclosure; (vii) rescission; (viii) credit libel; and (ix) violations of Georgia law related to the alteration of loan documents.  This action was later stayed as against American Home Mortgage.   Mr. Kareem subsequently amended his complaint, asserting claims only against AHMSI, MERS, R.K. Arnold and David Friedman (the "Texas Defendants").

24.    The Texas Action was referred to United States Magistrate Judge Jeff Kaplan.   In April 2011, the Magistrate Judge entered his Findings and Recommendations to the District Court in the Texas Action, finding that summary judgment should be granted in favor of the Texas Defendants and that the complaint should be dismissed with prejudice.[22]  The Magistrate Judge found that (i) Mr. Kareem's claims under the Truth in Lending Act were barred by the statute of limitations; (ii) that Mr. Kareem could not maintain an action under the Fair Debt Collection Practice Act because the statute only applies to a "debt collector" and a mortgage servicing company is not considered a "debt collector;" (iii) Mr. Kareem's claim under the Real Estate Settlement Procedures Act could not be maintained because Mr. Kareem's September 2009 letter was timely and properly acknowledged by AHMSI; (iv) Mr. Kareem provided no evidence of the alleged civil rights violations, among other related rulings; (v) Mr. Kareem's claims under Georgia law are based on the belief that Mr. Kareem was entitled to unilaterally rescind the loan and avoid the debt owed to the Texas

---

[22] *Kareem v. Am. Home Mortg. Servicing, Inc.*, 3-10-CV-0762-B-BD, 2011 WL 1869419 (N.D. Tex. Apr. 12, 2011) *report and recommendation adopted*, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) *aff'd*, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012).  *See also* Plan Trustee Exh. 25.

Defendants; however, Georgia law precludes rescission as a remedy where the plaintiff is still enjoying the benefits of the contract (i.e. there was no evidence that Mr. Kareem returned, or offered to return, the benefit he received from the contract); (vi) that Mr. Kareem's claims for wrongful foreclosure or credit libel also failed because no foreclosure sale had occurred and Mr. Kareem offered no evidence that he was denied a loan or charged a higher rate of interest as a result of derogatory information reported by the Texas Defendants to a credit agency; (vii) Mr. Kareem's remaining claims for breach of contract, breach of private duty and fraud also failed as a matter of law because the claims were based on the assignment of a new number to his Loan and there was no evidence that such number change constituted a material misrepresentation by the Texas Defendants or that Mr. Kareem was damaged thereby. The Magistrate Judge stated: "If anyone breached the agreement it was [Mr. Kareem], who all but admits that he failed to perform or tender performance under the note."[23]

25.     Thereafter, the Texas District Court accepted the Magistrate Judge's findings, conclusions and recommendations.[24]

26.     Mr. Kareem appealed the Texas District Court's Judgment and Order to the United States Court of Appeals for the Fifth Circuit.[25]   The Fifth Circuit

---

[23] *Id.*

[24] *Kareem v. Am. Home Mortg. Servicing, Inc.*, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) *aff'd*, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012). *See also* Plan Trustee Exh. 26.

[25] *Kareem vs. Am. Home Mortgage Servicing, Inc.*, et al., 5th Cir. Case No. 11-10701.

filed an unpublished Opinion and Judgment affirming the Texas District Court.[26]  Mr.

Kareem did not petition the United States Supreme Court for a *writ of certiorari*,[27] as

such the Fifth Circuit's opinion is considered final.

27.    As noted above, Mr. Kareem filed the Kareem Proofs of Claim.[28]

The Kareem Proofs of Claim relate *in toto* to the claims set forth in the Motions.

Thereafter, Mr. Kareem filed his Motions.  The Plan Trustee objected to the Motions and

the Kareem Proofs of Claim.  As set forth above, on November 18, 2011, this Court held

an evidentiary hearing on the Kareem Motions and at the conclusion of that evidentiary

hearing, this Court requested post-trial briefing.  The post-trial briefing is now complete

and is ripe for this Court's consideration.

## CONCLUSIONS OF LAW

### A.  Issue Preclusion

28.    As a threshold matter, the Plan Trustee asserts that a majority of

Mr. Kareem's claims and arguments have been previously addressed by the Fifth

Circuit.[29]  The Plan Trustee urges this Court to bar Mr. Kareem's claims pursuant to the

doctrine of collateral estoppel.  Mr. Kareem responded that issue preclusion is not

---

[26]  *Kareem v. Am. Home Mortg. Servicing, Inc.*, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012) (unpublished opinion and judgment).  Collectively, the proceedings in the Texas District Court and the appeal there from, including the Magistrate Judge's recommendations, the Texas District Court's opinion, and the Fifth Circuit opinion are referred to herein as the "Texas Litigation").

[27] *See* http://www.supremecourt.gov/docket/docket.aspx.

[28]  *See* Plan Trustee Ex. 21.  The Plan Trustee objected to the Kareem Proofs of Claim in its Objection.  *See* D.I. 10182.

[29]  At the time of the post-trial briefing submitted by the parties, the Fifth Circuit Court had not yet issued its ruling.  However, as the Fifth Circuit has, subsequently, issued its opinion and order, this Court will extrapolate the Plan Trustee's argument to the circuit court's ruling. *See Kareem v. Am. Home Mortg. Servicing, Inc.*, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012).

applicable because neither American Home Mortgage Holdings nor the Plan Trustee were involved in the Texas Litigation and none of the Texas Defendants are present in the litigation between the Plan Trustee and Mr. Kareem.  Mr. Kareem urges that the Texas Litigation and this bankruptcy litigation are only tangentially related.  Mr. Kareem also argues that the Texas Litigation had additional causes of action which further distinguishes these matters.  Mr. Kareem continues with the following: (i) the Texas courts' jurisdiction did not cover American Home Mortgage and it would not encompass the contract matters related between the loan origination, compliance issues and broker defects; and (ii) that he is allowed to maintain consistent or inconsistent remedies against the same person or different person until he obtains satisfaction.[30]

29.    "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."[31]  "Issue preclusion protects a *defendant* from the burden of litigating an issue that has been fully and fairly tried in a prior action and decided against the plaintiff."[32]

> In the Third Circuit, the requirements for the application of issue preclusion are: "(1) the identical issue was previously

---

[30] Mr. Kareem also asserts that the Texas Litigation had not come to a final, non-appealable order and that his appeal to the Fifth Circuit could be meritorious.  The Court will not address this argument as it is moot.  The Fifth Circuit has since issued its opinion and order.  The Fifth Circuit's docket does not reflect a further appeal by Mr. Kareem and Mr. Kareem's motion to extend time to file a motion for rehearing was denied.  *See* 5th Cir. Case No. 11-10701, *Court Order Denying Motion to Extend the Time to File a Petition for Rehearing* (July 10, 2012).

[31] *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (*citing Montana v. United States*, 440 U.S. 147, 153 (1979)).

[32] *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 628 (D. Del. 2008) (emphasis added) (*citing Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313 (1971)).

adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." In other words, to have issue preclusion apply, a defendant has to establish that the party against whom estoppel is sought had a full and fair opportunity to litigate the issue in the prior action; the issue was actually litigated; the controlling facts and applicable legal rules were the same in both actions; resolution of the particular issue was essential to the final judgment in the first action; and the identical issue was decided in the first action.[33]

The Court only need discuss the first of the four prongs:

### Identity of Issues in the Texas Litigation and this Court

30.    The Court must first determine whether identical issues were litigated in the Texas courts.  Mr. Kareem asserted the following claims in Texas: violations of (i) the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, (ii) the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, (iii) the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, (iv) unspecified civil rights violations, and (v) the following Georgia state law claims: (a) fraud, (b) breach of contract, (c) wrongful foreclosure, (d) rescission, (e) credit libel, and (f) violations of the Georgia statute related to the alteration of loan documents.[34]

31.    In comparison, Mr. Kareem has asserted the following Georgia state law claims in this Court: (i) breach of contract for failure to provide notice upon

---

[33] *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 629 (D. Del. 2008) (citations omitted).

[34] *Kareem v. Am. Home Mortg. Servicing, Inc.*, 3-10-CV-0762-B-BD, 2011 WL 1869419 (N.D. Tex. Apr. 12, 2011) *report and recommendation adopted*, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) *aff'd*, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012).

filing for bankruptcy, conversion of the promissory note into stock certificate, unjust enrichment; and for violating the notice provisions in the Adjustable Rate Note and the Security Instrument; (ii) breach of fiduciary duty by allowing a third party to change Mr. Kareem's loan number, not timely responding to written notices sent by Mr. Kareem, and for abandoning American Home Mortgage's interests in the Kareem Loan; (iii) unfair and deceptive business practices by allowing third-parties to make claims against Mr. Kareem, assigning MERS as an unlawful fiduciary to administer properties and the Adjustable Rate Note, failing to adequately disclose that the Adjustable Rate Note could result in negative amortization; (iv) breach of contract related to AHMA 2006-3 prospectus and pooling and servicing agreement and asserting a material fact as to whether AHMSI actually purchased Mr. Kareem's loan; and (v) commercial code violations for failing to respond to Mr. Kareem's rescission demands and failure to give RESPA Transfer of Notice.[35]

      32.    In determining whether the issues asserted in the Texas Litigation are "identical" for the purposes of issue preclusion, the Court should ask the following:

> Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first? and How [sic] closely related are the claims involved in the two proceedings?[36]

---

[35] *Claimant's Post Trial Brief Administrative Claims Numbers Including Related Objections 9692, 9693, 10870, 10875, 10887, 10148, and 10182* (D.I. 10328) (hereinafter, the "Kareem Post-Trial Brief").

[36] *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 623, 630 (D. Del. 2008) (citations and internal quotation marks omitted).

33.    At first blush, there appears to be a substantial overlap in the evidence and arguments asserted by Mr. Kareem in the Texas Litigation – however, the issues are not identical.  For example, in the Texas Litigation, Mr. Kareem asserted that the Texas Defendants violated RESPA by refusing to respond to correspondence related to the assignment of a new account number and breach of contract based on the assignment of a new account number.  Here, Mr. Kareem's claim is for breach of fiduciary duties related to allowing AHMSI to change his account number.  The Magistrate Judge found that there was no evidence that the new Loan account number constitutes a material misrepresentation by the Texas Defendants or that Mr. Kareem was damaged thereby.  However, the issue of breach of fiduciary duty related to the change in the account number was not squarely decided.  This is not to say that the Magistrate Judge's findings and conclusions, which were adopted by the Texas District Court, or the Fifth Circuit's opinion are not highly persuasive and, as a result, will be adopted herein as set forth *infra*.

34.    As the identity of issues in the Texas Litigation is not identical, the Court will not discuss the other factors necessary for issue preclusion to apply.

## B.  The Merits of Mr. Kareem's Motions and Claims

### A.  *Burden of Proof*

35.    The claimant seeking allowance of an administrative claim, Mr. Kareem, bears the initial burden of proof.[37]  Once the claimant meets his initial burden

---

[37] *In re SemCrude, L.P.*, 416 B.R. 399, 403 (Bankr. D. Del. 2009);  *In re Goody's Family Clothing Inc.*, 401 B.R. 131, 137 (Bankr. D. Del. 2009) (*citing In re Insilco Techs., Inc.*, 309 B.R. 111, 114 (Bankr. D. Del. 2004). ("An

of proof, the burden shifts to the Plan Trustee to rebut or negate the *prima facie* valid claim.[38]

### B. Breach of Contract

36.     Mr. Kareem asserts several claims for breach of contract under Georgia state law.  More specifically, he asserts that American Home Mortgage: (i)  did not provide him notice of their bankruptcy proceedings; (ii) did not disclose conversion of the Note into a stock certificate as such conversion changed the mortgagor/mortgagee relationship; (iii) impaired the Note through the endorsement by former Assistant Secretary for American Home Mortgage, which also made American Home Mortgage an obligor under the contract; and (iv) failure to maintain communications under the notice provision of the Note and Security Deed.  The Plan Trustee objects to each of these claims.

37.     In Georgia, the elements of a breach of contract claim are: "'(1) breach and (2) resultant damages (3) to the party who has the right to complain about the contract being broken.'"[39] "'The breach must be more than *de minimus* and substantial compliance with the terms of the contract is all that the law requires.'"[40]

---

administrative expense claimant bears the burden of establishing that its claim qualifies for priority status.").

[38] *In re SemCrude, L.P.*, 416 B.R. 399, 403 (Bankr. D. Del. 2009) (*citing VFB LLC*, 482 F.3d 624, 636 (3d Cir. 2007) ("Once a creditor alleges facts sufficient to support a claim, the claim is prima facie valid.... [T]he burden shifts to the debtor to produce evidence sufficient to negate the prima facie valid claim.")).

[39] *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1379 (M.D. Ga. 2011) (*quoting Norton v. Budget Rent A Car Sys., Inc.*, 705 S.E.2d 305, 306 (Ga. App. Ct. 2010)).

[40] *Jenkins*, 822 F. Supp. 2d at 1379 (*quoting Kuritzky v. Emory Univ.*, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008)).

38.    First, the Court will address Mr. Kareem's notice arguments to determine if American Home Mortgage breached the Note or Security Deed by (i) failing to give Mr. Kareem notice of the bankruptcy or (ii) failing to give notice of the securitization of the Loan or the sale of the Loan.

39.    The Note, which Mr. Kareem signed, states:

> [The borrower understands] that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."[41]

40.    Furthermore, the Security Deed, which Mr. Kareem signed, states:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Agreement, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to the sale of the Note.  If there is a change in the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.[42]

41.    Furthermore, RESPA does not require notice of the sale of a loan.[43]

However, *even if*, RESPA required notice[44] the Fifth Circuit held "Kareem points to no

---

[41]  Plan Trustee Ex. 4 (Note at ¶ 1).

[42]  Plan Trustee Ex. 6 (Security Deed at ¶ 20).

[43]  RESPA states: "The following transfers are not considered an assignment, sale of transfer of mortgage loan servicing for the purposes of this requirement if there is **no** change in the payee, address to which

evidence that the [Texas Defendants] filed to comply with [the RESPA] requirement. Moreover, even if we assume that he did not receive the notice, he does not explain what actual damages he suffered."[45]

42.     Nothing in the Note nor the Security Deed require general notice of a servicer's bankruptcy.  Furthermore, this Court has held:

> Borrowers who have not asserted or threatened to assert claims against the Debtors are not known creditors. . . . The publication notice of the Bar Date was reasonably calculated to reach all unknown creditors of the Debtors, reasonably conveyed all the required information, and permitted a reasonable time for response.[46]

The Debtors were not made aware of nor did they have reason to know of Mr. Kareem's claims until October 2008, as a result, this Court did not require the Debtors to provide Mr. Kareem with any notices prior to October 2008.  As such, American Home Mortgage did not breach the Note of Security Deed by not providing notice of the Debtors' bankruptcy or the securitization/sale if the Loan to Mr. Kareem.

---

payment must be delivered, account number, or amount of payment due . . . transfers resulting from . . . acquisitions of servicers . . . ."  24 C.R.R. §3500.21(d)(i)(B) (emphasis added).

[44] RESPA states:

> The Notice of Transfer shall be delivered to the borrower by the transferor servicer or the transferee servicer not more than 30 days after the effective date of the transfer of the servicing of the mortgage servicing loan in any case in which the transfer of servicing is preceded by:
>
> . . .
>
> (B) Commencement of proceedings for bankruptcy of the servicer . . .

24 C.F.R. § 3500.21(d)(ii)(B)

[45] *Kareem v. Am. Home Mortg. Servicing, Inc.*, Case No. 11-10701, 2012 WL 2384143, *1 (5th Cir. June 26, 2012).

[46] *Findings of Fact, Conclusions of Law and Order Confirming the Amended Chapter 11 Plan of Liquidation of the Debtors Dated February 18, 2009*, ¶ Q (D.I. 7042).

43.     Second, the Court will address whether American Home Mortgage impaired the Notice when the Note was endorsed.  When the Debtors sold the Loan to AHMA 2006-3 Trust, the Debtors indorsed the Note in blank and then delivered the Note to the AHMA 2006-3 Trust and/or its custodian.[47]  Mr. Kareem argues that by the Debtors indorsing the Note on the "face" or "front" of page 6 of the Note, rather than the "back," was not only not a proper endorsement but also made the Debtor a co-obligor and/or surety under the Note.  Mr. Kareem continues, in the alternative, that the endorsement was an "accommodation endorsement" and when American Home Mortgage sold the Note it did so free and clear of any obligations, including Mr. Kareem's.

44.     When the Debtors sold the Note to the AHMA 2006-3 Trust, the Debtors endorsed the Note in blank, and subsequently delivered the Note to the AHMA

---

[47]  Plan Trustee Exh. 4 (Note at p. 6).

2006-3 Trust and/or its custodians.    Such action is required by Georgia law.[48]

Furthermore, it is of no consequence *where* on the Note the endorsement is made.[49]

  45. With remarkably similar facts the bankruptcy court in *In re Ndhlovu*

observed and held:

> Plaintiff's Complaint asserts that the Security Deed he signed with SouthStar Funding was never properly assigned to Residential Funding. Georgia law provides that: "If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement.' When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."
>
> The Original Note provides that the Plaintiff "understand[s] that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under the Note is called the 'Note Holder.' "The Security Deed also provided that it might be transferred.  Paragraph 19 of the Security Deed states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower."

---

[48]  *Tallahassee Bank & Trust Co. v. Raines*, 187 S.E.2d 320, 321 (1972) ("Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement . . . An indorsement must be written . . . on the instrument or on a paper so firmly affixed thereto as to become a part thereof." (citations and internal quotations omitted)). Ga. Code Ann. § 11-3-205(b) (West) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a "blank indorsement." When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."). *See also Provident Bank v. MorEquity, Inc.*, 585 S.E.2d 625, 627 (2003) (citation omitted)  (The Georgia Uniform Commercial Code "§ 11-3-302(a)(2) provides in part that a holder in due course is a holder who takes the instrument for value, in good faith, and without notice of any claim to the instrument."); *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 458 (5th Cir. 1971) ("Possession establishes a *prima facie* case of ownership.  And proof of possession by production of the instrument entitles the holder to recover on it unless the opposing party establishes a defense." (citations omitted))

[49]  *See* Ga. Code Ann. § 11-3-204 (West) ("For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.").

> The record reveals that SouthStar Funding assigned the Security Deed to Bank One and that Bank One, in turn, assigned its interest in the Security Deed to Residential Funding. Residential Funding has been in possession of the Original Note and the attached Allonge since at least November of 2007.    Thus, Residential Funding, by possessing the Note and the Allonge which has been endorsed "in blank," is the holder of the Note.[50]

46.    There is nothing in the record to indicate that American Home Mortgage's endorsement was for the purpose of obligating American Home Mortgage as a borrower under the Note or that the Note was being transferred free and clear of Mr. Kareem's obligations and rights.  In fact, there is every indication that American Home Mortgage's endorsement of the Note was intended to transfer the Note to AHMA 2006-3 Trust.

47.    Furthermore, the sale of the Debtors' servicing business did not change the owner of the loan, but changed the servicer of the loan.  Similarly, the order authorizing the servicing sale expressly preserved the rights and defenses of both AHMSI *and* the borrower, including Mr. Kareem.[51]

48.    As a result, the Debtors did not breach the Note or the Security Deed.  *Even if*, the Debtors breached the Note and the Security Agreement, Mr. Kareem

---

[50]  *Ndhlovu v. Southstar Funding, LLC (In re Ndhlovu)*, 08-10053, 2011 WL 2270923 (Bankr. E.D. Tenn. June 3, 2011) (citations and citations to record omitted).  *See also, Dewberry v. Bank of America (In re Dewberry)*, No. 10–60155–WLH, 2010 WL 4882016, at *2 (Bankr.N.D.Ga. Oct. 21, 2010) (noting that "[t]he Note was endorsed in blank by [the mortgage corporation], thereby making it payable to bearer. As such, it could be negotiated by transfer of possession alone.") (citations omitted).

[51]  *See Order Pursuant To Sections 105, 363, 364, 365, and 503(B) of the Bankruptcy Code, and Rules 2002, 4001, 6004, 6006, 7062, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (A) Approving (I) the Sale of the Debtors' Mortgage Servicing Business Free and Clear Of Liens, Claims and Interests, (II) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (B) Granting Certain Related Relief* (D.I. 711) ("Servicing Sale Order"); definition of "servicing business" (p. 3); Asset Purchase Agreement at §5.6(d) (attached as Exhibit A to the Servicing Sale Order).

has not set forth the damages he suffered as a result.  Mr. Kareem's claims for breach of

contract listed and discussed above fail as a matter of law.

### C.  Breach of Fiduciary Duty

49.    Mr. Kareem asserts claims for breach of fiduciary duty based on the

following: (i) allowing third parties to continue to falsely bill without providing full

reconciliation on conflicting account numbers, which was a material modification of the

Loan; (ii) failure to timely respond to written notices received from Mr. Kareem;

(iii) abandonment of the Loan, which discharges Mr. Kareem's obligations under the

Loan.

50.    Mr. Kareem argues that the fiduciary relationship with the Debtors

arises from the Waiver of Borrower's Rights[52] which states, in part:

> By Execution of this paragraph, Grantor expressly:
> (1) acknowledges that right to accelerate the debt and the
> power of attorney given herein to lender to sell the premises
> by nonjudicial foreclosure upon default by grantor without
> any judicial hearing and without any notice other than such
> notice as is required to be given under the provisions hereof
> . . .

Mr. Kareem argues that the above-quoted language creates an expressed "attorney-in-

fact agency agreement."

51.    To state a claim for breach of fiduciary duty, a plaintiff must allege

facts that establish "(1) the existence of a fiduciary duty; (2) breach of that duty; and

---

[52]  Plan Trustee Exh. 6 (*Security Deed*); *see also Amended: Claimant's Post Trial Reply Brief* (D.I. 10385).
Kareem Exh. 600.

(3) damage proximately caused by that breach."[53]  "The party asserting the existence of a fiduciary or confidential relationship bears the burden of establishing its existence."[54]

52.    Georgia courts have held that as a matter of law, no fiduciary relationship exists merely because of two parties' relative relationships as lender and borrower.[55]

53.    Furthermore, the Waiver of Borrower's Rights does not create an "attorney in fact" relationship.  The Waiver of Borrower's Rights is an *acknowledgment* of the (i) right to accelerate the debt and (ii) the power of attorney given therein to the lender.

---

[53] *Habib v. Bank of Am. Corp.*, 1:10-CV-04079-TWT, 2011 WL 5239723, *3 (N.D. Ga. Sept. 29, 2011) report and recommendation adopted, 1:10-CV-4079-TWT, 2011 WL 5239713 (N.D. Ga. Oct. 28, 2011) (citations omitted).

[54] *Id.* (citations omitted).

[55] *White v. Americas Servicing Co.*, 461 F. App'x 841, 843 (11th Cir. 2012) (*citing Moore v. Bank of Fitzgerald*, 483 S.E.2d 135, 139 (1997) (holding that "absent special circumstances . . . there is "particularly no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests...." (citations omitted)); *See Anderson v. Deutsche Bank Nat. Trust Co.*, 1:11-CV-4091-TWT-ECS, 2012 WL 3756512, *9 (N.D. Ga. Aug. 6, 2012) report and recommendation adopted, 1:11-CV-4091-TWT, 2012 WL 3756435 (N.D. Ga. Aug. 27, 2012)  ("It is clear that under Georgia law no fiduciary relationship arises between a lender and a borrower that would give rise to any fiduciary duty."); *Kareem v. Am. Home Mortg. Servicing, Inc.*, 3-10-CV-0762-B-BD, 2011 WL 1869419, *3 (N.D. Tex. Apr. 12, 2011) report and recommendation adopted, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) *aff'd*, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012); *Burch v. Chase Manhattan Mortg. Corp.*, CIV.A.1:07CV0121JOF, 2008 WL 4265180, *14 (N.D. Ga. Sept. 15, 2008) ("The mere fact that one reposes trust and confidence in another does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." (citations and internal quotations omitted)); *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 696 F. Supp. 57, 75 (D. Del. 1988) *aff'd*, 988 F.2d 386 (3d Cir. 1993) ("[C]ourts in the plaintiffs' states limit the application of fiduciary standards to situations where "one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." (citations and internal quotations omitted); *Dixie Diners Atlanta, Inc. v. Gwinnett Fed. Bank, FSB*, 439 S.E.2d 53, 56 (Ga. App. 1993); *Pardue v. Bankers First Fed. Sav. & Loan Ass'n*, 334 S.E.2d 926, 927 (Ga. App. 1985); *Baker v. Campbell*, 565 S.E.2d 855, 859 (Ga. App. 2002) ("The primary duty of a lending bank is to protect the assets of its members or depositors and not to protect the assets of its borrowers." (citations omitted)).

54.    Under similar circumstances, the Eastern District of Pennsylvania court in *Hunter v. Sterling Bank* observed and held:

[T]he Hunters claim that because Osborne Construction defaulted under the Agreements by failing to complete construction within nine months of closing, Sterling became Osborne Construction's "attorney-in-fact" and assumed Osborne Construction's obligations. The Hunters rely on the Construction Agreement, which provides:

...

In the event of a default by Borrower(s) or Contractor under the terms of this Agreement, Sterling ... may take steps to protect and complete the improvements .... Pursuant to this right, Borrower(s) hereby designate Lender as their Attorney-in-fact with full power of substitution ... to take any action required under the terms of a surety bond and to do any other act Borrower(s) might do in connection with said construction.

This language does not obligate Sterling to do anything. Rather, the clause is permissive, stating that "Sterling ... may take steps to protect and complete the improvements." Sterling is designated Osborne Construction's Attorney-in-fact, but only "[p]ursuant to [Sterling's] right" to protect its investment and complete construction. In other words, the Construction Agreement empowers Sterling to act as Osborne Construction's Attorney-in-fact, but does not obligate Sterling to do so. By not assuming Osborne Construction's role upon default, Sterling thus did not violate any contractual duty, and I will dismiss this claim as to Sterling.[56]

---

[56] *Hunter v. Sterling Bank*, 750 F. Supp. 2d 530, 541-42 (E.D. Pa. 2010).

55.    Similarly, the Waiver of Borrower's Rights empowers American Home (or subsequent owners of the loan) to protect its investment by foreclosing on a property in default.

56.    *Even if*, the Debtors owed a fiduciary duty to Mr. Kareem, which they did not, Mr. Kareem's claims would fail.   As stated above, the sale of the Loan was contemplated within the Loan and Security Deed, as well as the sale of the servicing rights which was approved by this Court.  The purchaser of the Loan and the servicing rights stepped into the shoes of the Debtors, as such, the Purchaser had the right to bill Mr. Kareem in accordance with the Loan.  Furthermore, as Texas District Court held (and as affirmed by the Fifth Circuit and as adopted by this Court) there is no evidence that a new account number, which is different than the number reflected in the original loan documents, constitutes a material modification or that Mr. Kareem was damaged thereby.[57]

57.    Furthermore, there is nothing in the record to indicate that the Debtors did not respond to Mr. Kareem's correspondence.   In fact, Ms. Wanerka testified that when the Debtors received Mr. Kareem's letter in October of 2008, they forwarded the letter to the Purchaser.  At the time of the October 2008 letter, the Debtors did not own or service the Loan and therefore were unable to take any action requested by Mr. Kareem in that correspondence.[58]   The record reflects that Mr.

---

[57]  *See* Kareem v. Am. Home Mortg. Servicing, Inc., 3-10-CV-0762-B-BD, 2011 WL 1869419, * 3 (N.D. Tex. Apr. 12, 2011) report and recommendation adopted, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) aff'd, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012).

[58]  Tr. 131:5-20.

Kareem's October 2008 letter was replied to by the Purchaser.[59] Furthermore, the Texas District Court held that the Texas Defendants responded timely to Mr. Kareem's correspondence.[60]

58.    Mr. Kareem's last argument that the Debtors abandoned the Loan which would discharge Mr. Kareem's obligations is also unavailing.  Prior to the Petition Date in these cases and pursuant to the terms of the Loan and Security Deed, American Home Mortgage sold the Loan.  Thereafter, and pursuant to this Court's order, the Debtors sold the servicing rights to the Loan.  There is no evidence in the record to suggest that the Debtors abandoned their interest in the Loan.

59.    Lastly, Mr. Kareem has not suggested any damages as a result of the alleged breaches.  As a result, Mr. Kareem's claims for breaches of fiduciary duty fail.

### D. Unfair and Deceptive Business Practices

60.    Mr. Kareem claims the following as unfair and deceptive business practices (also referred to as "FBPA"):[61] (i) knowingly allowing third-parties to make claims against Mr. Kareem of an "impaired promissory note endorsed by [American Home Mortgage]," (ii) by converting the Loan into a stock certificate and deposited into

---

[59]  Plan Trustee Exh. 20 Defendants' Appendix to Brief in Support of Motion for Summary Judgment, Affidavit of Jose D. Colon at Ex. 3 ("Colon Affidavit"), Letter from Timothy Navarro of American Home Mortgage Servicing, Inc. to Hussain Kareem, dated February 6, 2009 (Bates No. APP 0176).

[60]  *Kareem v. Am. Home Mortg. Servicing, Inc.*, 3-10-CV-0762-B-BD, 2011 WL 1869419, * 2 (N.D. Tex. Apr. 12, 2011) report and recommendation adopted, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) *aff'd*, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012).

[61]  Ga. Code Ann. §10-1-390 *et seq.*

AHMA 2006-3; (iii) assigning MERS as an unlawful fiduciary to administer properties and because MERS was an unregistered corporation in Georgia and MERS is an electronic database provider, which made it unable to act or represent any legal standing with respect to the Loan; and (iv) failing to disclose that the Note would or could result in negative amortization.

61.    As a threshold matter, the Georgia Fair Business Practices Act does not apply to mortgage transactions.[62]  Mr. Kareem's claims are dismissed on this basis.

62.    However, *even if* the FBPA applied, as noted above, American Home Mortgage did not impair the Note or the Security Deed by selling these documents or the servicing of these documents.

63.    Furthermore, Mr. Kareem explicitly recognized MERS had authority to exercise the interests granted in the Security Deed.[63]  Similarly, in *Nelson v.*

---

[62] *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1376 (M.D. Ga. 2011) ("Plaintiff's claims all arise from a private mortgage transaction. Mortgages are heavily regulated under both state and federal law, and also do not affect the public consumer marketplace. The FBPA was only intended to provide relief to individuals who suffer harm within the context of the unregulated consumer marketplace, and therefore, Plaintiff's claims are exempt from the FBPA."); *Jackman v. Hasty*, 1:10-CV-2485-RWS, 2011 WL 854878 (N.D. Ga. Mar. 8, 2011) on reconsideration, 1:10-CV-2485-RWS, 2011 WL 5599075 (N.D. Ga. Nov. 15, 2011) (dismissing complaint in its entirety) (the FBPA does "not apply to conduct subject to rules and regulations promulgated by a regulatory agency of Georgia or the United States. Because the servicing of mortgages and foreclosure sales are regulated by other state and federal rules and statutes, claims relating to either are exempt from the UDTPA and FBPA." (citations omitted)); *Chancellor v. Gateway Lincoln-Mercury, Inc.*, 502 S.E.2d 799, 805 (Ga. App. 1998) ("The FBPA does not 'provide an additional remedy for private wrongs which do not and could not affect the consuming public generally.'" (citations omitted)); *Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1336 (N.D. Ga. 2000) (The Georgia legislature "intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that the FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." (citations and internal quotations omitted)).

[63] Security Deed at p. 3 states, in relevant part:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if

*Bank of America, N.A.*,[64] the Georgia District Court held that as the plaintiff recognized that MERS has authority to exercise the interests granted in the Security Deed, including the authority to assign the Security Deed, the assignment was valid.[65]

64.    In his reply, Mr. Kareem argues that American Home Mortgage impaired the Security Deed by placing MERS on the instrument because MERS could not act as a fiduciary for American Home Mortgage.[66]  Mr. Kareem relies on *In re Agard*[67] in support of his position.  However, what Mr. Kareem fails to recognize is that the portions of *In re Agard* upon which he relies were vacated by the Eastern District of New York.[68]  *Even if In re Agard* was applicable, which it is not, it is distinguishable from the case *sub judice*.  *Agard* stood for the proposition that MERS, as the nominee of the lender under a deed of trust, does not possess the underlying promissory note and

---

necessary to comply with law or costume, MERS (as nominee for lender and Lender's successors and assigns) has the right: to exercise any and all of those interests, including, but not limited to, right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

Plan Trustee Exh. 6 at p. 3.

[64] *Nelson v. Bank of Am., N.A.*, 1:11-CV-3890-TWT, 2012 WL 315400, *2 (N.D. Ga. Jan. 31, 2012).

[65] *Id.*

[66] MERS maintains an electronic database that is intended to track the identities of the current servicers and owners of the mortgage loans for which it serves as mortgagee/nominee, and the MERS Rules require that it may act only on behalf, and at the direction of the holders of the promissory notes or their servicers.  MERS does not own any of the mortgage loans associated with the mortgages registered in its system and is not entitled to receive payments from borrowers. *See In re Marron*, 455 B.R. 1, 4 (Bankr. D. Mass. 2011) *reconsideration denied*, 10-45395-MSH, 2011 WL 3800040 (Bankr. D. Mass. Aug. 29, 2011) (citations omitted).

[67] 444 B.R. 231 (Bankr. E.D.N.Y 2011) *vacated in part by Agard v. Select Portfolio Servicing, Inc.*, BR 8-10-77338 REG, 2012 WL 1043690 (E.D.N.Y. Mar. 28, 2012).

[68] *Agard v. Select Portfolio Servicing, Inc.*, BR 8-10-77338 REG, 2012 WL 1043690 (E.D.N.Y. Mar. 28, 2012).

cannot assign it, absent evidence of an explicit authorization from the original lender.[69]

Here, American Home Mortgage produced a copy of the Note and was the original

noteholder; furthermore, there is evidence that American Home Mortgage delivered the

Note and the Security Deed to the Purchaser.[70]

        65.    Contrary to the assertions in Mr. Kareem's brief, *Agard* stood for

the position that a party who received a mortgage by way of an assignment from MERS

lacks the power to foreclose that mortgage.[71]  However, American Home Mortgage did

---

[69] *Agard*, 444 B.R. at 231.

[70] Furthermore, there have been have upheld MERS's ability to assign a mortgage:

> This court finds that where, as here, an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment. In such cases, MERS is acting as the nominee of the owner of the note and of the mortgage, in which MERS is additionally designated as the mortgagee of record. No disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender or a successor owner or holder of the note and mortgage. Consequently, a MERS assignment does not violate this State's long standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void

*US Bank, N.A. v. Flynn*, 897 N.Y.S.2d 855, 859 (N.Y. Sup. Ct. 2010) (citations omitted).

[71] *But see Rutter v. Mortg. Electronic Registration Systems,* Nos. PC 10-4756, PD 10-4418, 2012 WL 894012 (R.I . Super. Mar. 12, 2012) (A lender's relationship with MERS does not terminate when the lender goes into receivership.  Whatever financial entity currently holds the beneficial interest of the Note, MERS is designated the nominee of that entity based upon the broad language contained in the Mortgage Agreement. When the FDIC properly transfers rights and assets of the entity in receivership to a new entity, the new entity acquires all of the rights of the note holder and mortgagee. (citations and internal quotations omitted)); *In re Marron*, 455 B.R. 1, 5 (Bankr. D. Mass. 2011) reconsideration denied, 10-45395-MSH, 2011 WL 3800040 (Bankr. D. Mass. Aug. 29, 2011) ("In Massachusetts, however, courts have generally held that MERS may both foreclose and assign mortgages held in its name."); *Perry v. Nat'l Default Servicing Corp.*, 2010 WL 3325623, *4 (N.D.Cal. Aug. 20, 2010) (MERS had authority to assign based on the language of the mortgage); *Agard*, 444 B.R. 231 (assignment from MERS was invalid without express authorization from the lender); *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (2009) (MERS was not a party in interest because of its status as nominee for a lender); *Jackson v. MERS*, 770

not seek to foreclose on the Property and nothing in *Agard* states that electing MERS as nominee is in-and-of-itself an impairment of the Note or Security Deed.

66.    Mr. Kareem continues that American Home Mortgage failed to disclose that the term of his Note permitted negative amortization.   However, the record reflects that such disclosure was made to Mr. Kareem: three days after receiving Mr. Kareem's loan application, American Home Mortgage sent the following documents to Mr. Kareem: (i) a copy of his loan application, (ii) disclosure of credit score information, (iii) RESPA Servicing Disclosure, (iv) initial Truth-in-Lending Statements, (v) a Fixed Payment ARM Disclosure, (vi) Interest-Only Mortgage Payments and Payment-Options ARMS disclosures; and (vii) Power Option ARM Disclosure.[72]

67.    At the closing, Mr. Kareem executed the documents governing the Kareem Loan, as well as many of the disclosures, including the Adjustable Rate Note,[73]

---

N.W.2d 487 (Minn. 2009) (unrecorded assignments of beneficial interests in a mortgage held by MERS were enforceable); *Bank of New York v. Silverberg*, 926 N.Y.2d 532 (N.Y.App.Div. 2011) (assignment of a mortgage from an entity that never owned the note was invalid); *U.S. Bank, N.A. v. Flynn*, 897 N.Y.S.2d 855, 859 (N.Y.Sup.Ct. 2010) (note holder with assignment of a mortgage from MERS had standing to foreclose).

[72] *See* Plan Trustee Exhs. 1, 7, 9, 10 and 13; Tr. 112-114, 121-126.

[73] The Adjustable Rate Note states:

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT.  BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES.  AS A RESULT, THE PRINCIPAL AMOUNT THAT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 110.000% OF THE ORIGINAL AMOUNT (OR $175,120.00).   MY INTEREST RATE CAN NEVER

the Adjustable Rate Rider,[74] the Security Deed, the final Truth-in-Lending Disclosure

Statement,[75] the 5 Year Payment 12-Month MTA Index Power ARM Disclosure,[76] and

the Notice of the Right to Rescind.[77]

    68.  Furthermore, Mr. Kareem was given a 3 business days after the

closing to rescind the transaction.[78] As such, Mr. Kareem had three additional days to

review the Loan documents and cancel the Loan, which he did not do.[79]

---

> EXCEED THE LIMIT STATED IN THIS NOTE OR ANY RIDER TO THIS
> NOTE. A BALLOON PAYMENT MAY BE DUE AT MATURITY.

Plan Trustees Exh. 4 (Note at p. 1 (preamble)).

[74] The Adjustable Rate Rider provides:

> THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGE IN
> MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY
> INTEREST RATE WILL CHANGE MORE REQUENTLY THAN MY
> MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS
> ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY
> MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT
> ACCRUSE. AS A RESULT, THE PRINCIPAL AMOUNT THAT I MUST
> REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY
> BORROWED, BUT NOT MORE THAN 110.000% OF THE ORIGINAL
> AMOUNT (OR $175,120.00). MY INTEREST RATE CAN NEVER
> EXCEED THE LIMIT STATED IN THE NOTE AND RIDER. A
> BALLOON PAYMENT MAY BE DUE AT MATURITY.

Plan Trustee Exh. 5 (Adjustable Rate Rider, p. 1).

[75] The final Truth-In-Lending Disclosure Statement states that the annual percentage rate is 7.014% and states that the Loan as a variable rate feature. Plan Trustee Exh. 11.

[76] Which provides, in part: "THIS LOAN ALLOWS FOR NEGATIVE AMORTIZATION." Plan Trustee Exh. 9

[77] *See* Plan Trustee Exhs. 4, 5, 6, 11, 9 and 12.

[78] Plan Trustee Exh. 12.

[79] At trial, Mr. Kareem questioned the Plan Trustee's witness, Ms. Wanerka, concerning the authenticity of the signatures on the above-mentioned documents, whether the Debtors' computer systems ever crashed thereby losing and/or corrupting data, and whether she knew whether or not Mr. Kareem received the documents and disclosures mailed to him ("three-day docs"). Tr. at 144:6-145:13. However, Mr. Kareem did not present any evidence (or make any claims) that (i) the signatures on the documents were not his, (ii) that the computer systems were corrupt or that data was lost, or (iii) that he did not receive the three-day docs. As mentioned above, Mr. Kareem has the burden to prove the *prima facie* validity of his claims. The Court finds that Ms. Wanerka was able to authenticate the documents and computer systems as those kept in the ordinary course of business. The Court is satisfied with the

69.     As a result, Mr. Kareem's allegations that American Home Mortgage did not disclose that the Loan could result in negative amortization is not substantiated by the record and, as result, his claim also fails on substantive grounds.

### E. Breaches Under Prospectus

70.     Mr. Kareem claims the following as breaches under the prospectus issued in connection with the AHMA 2006-3 Trust (the "Prospectus") and the Pooling Servicing Agreement ("PSA") in connection with the loans subject to the AHMA 2006-3 Trust: (i) failing to perform under a buy-back of "unrecoverable asset" as a duty of the depositor under the securitization agreements; (ii) failing to give notice that the AHMA 2006-3 was not a statutory entity; (iii) failing to establish that Mr. Kareem's Loan servicing was actually transferred to the Purchaser; and (iv) impairing the promissory note by conversion of the instrument into stock certificate and assigning MERS as its nominee to the Security Deed.

71.     Mr. Kareem failed to provide evidence regarding these claims, including, but not limited to, introducing either the Prospectus or PSA at trial.  As such, these documents are not in front of the Court so it would be impossible for the Court to make rulings based on these documents, including knowing who were the parties to these documents or the specific terms of these documents.

72.     However, *even if*, the Prospectus and the PSA were introduced at trial, Mr. Kareem's claims are unavailing.  Mr. Kareem has not alleged that he is a party

documents as presented, and as testified to by Ms. Wanerka's, are those kept in the ordinary course of American Home Mortgage's business.

to either the Prospectus or the PSA. The Prospectus was issued for the benefit of prospective investors or shareholders.[80] Furthermore, the PSA is between American Home Mortgage Assets LLC, Wells Fargo Bank, N.A. and Citibank, N.A. and specifically names the "Servicer" (American Home Mortgage Servicing, Inc., or its successor in interest) as the "third party beneficiary."[81]

73. Mr. Kareem also misinterprets the SEC Form 15 that the AHMA 2006-3 Trust filed.[82] Through Form 15 a company with fewer than 300 record holders of the class of securities offered under the SEC registration statement to suspend reporting obligations.[83] This form does not terminate or otherwise dissolve the AHMA 2006-3 Trust.

74. Furthermore, American Home Mortgage sold its servicing rights related to the AHMA 2006-3 Trust.[84] As indicated in the Servicing Sale Order and on Schedule 1.1(j)es to the Purchase Agreement, the servicing rights of the AHM SV (and sold to AHMSI) were not part of the PSA, but were set forth in a separate Servicing Agreement, dated as of July 28, 2006, among Wells Fargo Bank, N.A., as Master Servicer, Citibank, N.A., as Trustee, AHM Corp., as Sponsor, and AHM SV, as Servicer.[85] Again, Mr. Kareem was not a party to or a third party beneficiary of this

---

[80]    *See*    http://www.sec.gov/Archives/edgar/data/1369168/000088237706002629/d546584.htm    and http://www.sec.gov/Archives/edgar/data/1369168/000088237706002613/d539770.htm.

[81]    *See* http://www.sec.gov/Archives/edgar/data/1369168/000088237706002876/d542626_ex4-1.htm.

[82]    *See* Kareem Exh. 300.

[83]    http://www.sec.gov/interps/legal/cfslb18.htm.

[84]    D.I. 1711

[85]    D.I. 1711, Asset Purchase Agreement, Schedule 1.1(j)es.

separate servicing agreement.  Mr. Kareem's reference to contracts not included in the Servicing Sale Order[86] to prove that the servicing of the Loan was not transferred is unavailing – as, in fact, the Debtors sold the servicing rights related to the AHMA 2006-3 Trust as set forth in the Asset Purchase Agreement, Schedule 1.1(j)es.

75.    Mr. Kareem's claim that American Home Mortgage impaired the Note by conversion of the Note into a stock certificate and assigning MERS as its nominee is also unmeritorious.  American Home Mortgage sold the Note to the AHMA 2006-3 Trust, it was not converted into a stock certificate.  Furthermore, as stated above, the assignment of MERS as its nominee did not impair the Note.

76.    As such, Mr. Kareem's claims related to the Prospectus and the PSA fail as a matter of law.

### F.   Good Faith Obligation under Commercial Code

77.    Mr. Kareem claims the following as breaches of American Home Mortgage's good faith obligations under the Georgia commercial code:  (i) failure to give a timely response to Mr. Kareem's October 2008 letter requesting rescission of the Loan; and (ii) failure to give RESPA notice of transfer (presumably related to the sale of the Debtors' servicing business).

78.    In Georgia,

> every contract implies a covenant of good faith and fair dealing in the performance of the terms of the agreement. This duty requires parties to perform substantially within the spirit and letter of a contract.  However, it is well-settled

---

[86]  D.I. 1711, Asset Purchase Agreement, Schedule 2.1(b)(ii).

that the implied duty of good faith does not stand independent of the terms of the underlying contract; instead, the implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract.[87]

79.    However, inasmuch as Mr. Kareem cannot prevail on his breach of contract claims, Mr. Kareem's claims for breach of duty of good faith under the UCC must also fail.  In Georgia, "there is not independent cause of action for breach of duty of good faith in performing a contract governed by the UCC."[88]

80.    As stated above, American Home Mortgage no longer owned or serviced Mr. Kareem's Loan in October 2008, therefore, the Debtors were under no obligation to respond to Mr. Kareem's rescission demand.  Furthermore, Mr. Kareem's claims with respect to failure to give notice of the transfer fail due to the provisions of the Note and Security Deed, lack of evidence from Mr. Kareem concerning the receipt (or non-receipt) of the notice, and lack of damages related thereto.

## G. Predatory Lending Practices

81.    Mr. Kareem continues with claims against the Debtors for predatory lending practices.  More specifically, Mr. Kareem claims: (i) the annual percentage rate ("APR") disclosed by American Home Mortgage was "over-stated;"

---

[87] *Med S. Health Plans, LLC v. Life of S. Ins. Co.*, 4:07-CV-134(CDL), 2008 WL 2119915, *5 (M.D. Ga. May 19, 2008) (citations and internal quotations omitted).

[88] *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 846-47 (Ga. App. Ct. 2004). *See also Med S. Health Plans*, 4:07-CV-134(CDL), 2008 WL 2119915 at *5; *Ryan's Exp. Transp. Services, Inc. v. Caterpillar, Inc.*, 207-CV-0008-KJD-GWF, 2009 WL 803129, *6  (D. Nev. Mar. 24, 2009) (applying Georgia and Nevada law); *Autry Petroleum Co. v. BP Products N. Am., Inc.*, 4:05-CV-113 (CDL), 2008 WL 360628, *3 (M.D. Ga. Feb. 8, 2008) *aff'd*, 334 F. App'x 982 (11th Cir. 2009); *Stuart Enterprises Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. App. Ct. 2001) ("In contracts governed by the UCC, the failure to act in good faith in performing a contract does not create an independent cause of action.").

(ii) the TILA disclosure did not properly disclose the potential for negative amortization; (iii) an employee of the Debtors endorsed the Note; (iv) the loan application, disclosures and closing were conducted on the same day; (v) the Right of Rescission may not be authentic, as it was typed rather than hand-written which is inconsistent with the other documents presented at closing; and (vi) presenting the Loan documents to Mr. Kareem at closing, rather than 72 hours prior to closing, was a predatory lending practice.[89]

82.    All of these claims are addressed above, but for the avoidance of doubt.  Mr. Kareem points to Exhibit 400[90] which reports that the APR disclosed by American Home Mortgage was **overstated** by 0.6746%.  However, "where the APR is

---

[89]  Although not discussed in detail, Mr. Kareem makes a passing reference to whether his Loan was a "high cost" loan under the terms of the Georgia Fair Lending Act, Ga. Code Ann. § 7-6A-1 *et seq.* (West). *See* Kareem Post-Trial Brief at p. 15, fn. 20.  To meet the "threshold" for a "high cost home loan:"

> the annual percentage rate of the loan is annual percentage rate of the loan is such that it equals or exceeds that set out in Section 152 of the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. Section 1602[(bb)], and the regulations adopted pursuant thereto by the Federal Reserve Board, including Section 12 C.F.R. 226.32; or

> (B) The total points and fees payable in connection with the loan, excluding not more than two bona fide discount points, exceed: (i) 5 percent of the total loan amount if the total loan amount is $20,000.00 or more or (ii) the lesser of 8 percent of the total loan amount or $1,000.00 if the total loan amount is less than $20,000.00.

Ga. Code Ann. § 7-6A-2(17) (West).   There was no evidence presented at Trial that any of these "threshold[s]" were met.  Furthermore, Ms. Wanerka testified, at length, regarding the tests American Home Mortgage performed to ensure that Mr. Kareem's Loan was not a "high cost" loan.  Tr. 117:1-119:21.  *See also* Plan Trustee Ex. 15.  As such, to the extent that Mr. Kareem is arguing that the Loan was a "high cost" loan, the Court finds that the Loan was not.

[90]  *Claimant's Opposition to the Plan Trustee's Obligations to Administrative Claims Numbered 10870, 10875 and 10887*, Exh. 400. D.I. 10238.

overstated, § 1605(f)(1)(B) immunizes a creditor from liability for that technical inaccuracy."[91]  Overstating the APR is allowed under the TILA.[92]

83.    The record is replete with evidence that American Home Mortgage mailed documents to Mr. Kareem three-days before the Loan closing:

> In wholesale, the broker when they take an application from the borrower, they have to send disclosures which would include product disclosures to the borrower.  When American Brokers Conduit which is the wholesale division of American Home Mortgage would get a full file and put in the application, we would re-disclose to the borrower and we would send all of the product disclosures with the other disclosures requires.  And then we also re-disclose at closing. And then on a refinance, they have that three business day to rescind where they can review, too.[93]

---

[91]  *Carmichael v. The Payment Ctr., Inc.*, 336 F.3d 636, 642-43 (7th Cir. 2003) (citations omitted).

[92]  TILA provides for "tolerance in accuracy" related to the disclosure of the Loan's interest rate.  TILA states:

> In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge--
>
> (1) shall be treated as being accurate for purposes of this subchapter if the amount disclosed as the finance charge--
>
>> (A) does not vary from the actual finance charge by more than $100; or
>>
>> (B) is **greater than the amount required to be disclosed** under this subchapter

15 U.S.C.A. § 1605(f)(1)(B) (emphasis added). *See also McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 151 n. 18 (E.D.N.Y. 2009) (the "TILA covered entities have an incentive to over-disclose fees if they have uncertainty about whether it should be included in the finance charge, to avoid potential liability."); *Hopkins v. First NLC Financial Services, LLC (In re Hopkins)*, 372 B.R. 734, 745 (Bankr. E.D. Pa. 2007) ("TILA grants to lenders a variance for accuracy in disclosing the finance charge, so not every error results in liability . . ."); *Douglas v. Found. Funding Group, Inc.*, 1:03-CV-2538-WSD0ECS, 2005 WL 6466539, *3 (N.D. Ga. Feb. 24, 2005); *Carmichael v. The Payment Ctr., Inc.*, 336 F.3d 636, 642 (7th Cir. 2003) ("The [TILA] Act protects consumers only when the stated amount is less than the amount required to be disclosed.").

[93]  Tr. 112:5-15.

84.    American Home Mortgage mailed the disclosures, including disclosures related to the possibility of negative amortization, to Mr. Kareem on June 29, 2006.[94]  Furthermore, Mr. Kareem initialed and/or signed many of these disclosures at the Loan closing.

85.    The endorsement on the Note was required in order to effectuate the sale of the Note to the AHMA 2006-3 Trust, as such, the endorsement does not invalidate or materially alter the Note.

86.    Furthermore, there is nothing in the record to suggest that Notice of the Right to Rescind[95] was not authentic.  In fact, many of the documents signed by Mr. Kareem at closing were type-written.

87.    As such, Mr. Kareem's claims related to predatory lending practices also fail.

### H.  Damages

88.    Mr. Kareem seeks $19,000 which account for the payments he submitted on behalf of his Loan after the "impairment of the instrument [was] made."[96]  Mr. Kareem further asserts that his damages include the Loan contract value, credit reporting harms, and the costs to maintain lengthy litigation for an overall administrative damages claim of $231,000.00.

---

[94]  Tr. 113:14-22-114:20; 121:20 – 126:5.

[95]  Plan Trustee Exh. 12.

[96]  Although Mr. Kareem submitted a list of payments made to American Home Mortgage, *see Motion for Entry of Administrative Claim with Brief in Support* Exh. 4400 (D.I. 9692), such payments total less than $10,000.  Insomuch as Mr. Kareem's claims were meritorious, which they are not, Mr. Kareem has failed to present evidence regarding the amount of his damages.

89.    *Even if*, Mr. Kareem were to establish a breach of contract claim, breach of fiduciary duty claim, breach of the Georgia commercial code, or any unfair and deceptive trade practices related to the Loan, Mr. Kareem has not met his burden of establishing that any such breach caused him damages.

90.    Under Georgia law:

> for their breach of contract, negligence, and damage to reputation claims, Plaintiffs must be able to establish causation and damages. A wrongful act is the proximate cause of an injury when the injury can be directly traced to the act, and the injury would not have resulted "but for" the act. To satisfy its burden of production on the element of proximate cause, a plaintiff must introduce evidence that allows for the reasonable conclusion that it is more likely than not that a defendant's conduct was the cause of the injury.  When there is a mere possibility of causation or the jury would have to speculate, then the plaintiff has failed to meet his burden. [97]

Similarly, to the extent that Mr. Kareem seeks equitable relief under RESPA, it is not available as a matter of law.[98]

91.    The Loan has an adjustable interest rate; however, if the borrower so chose, a five-year fixed payment.  If the borrower were to pay the fixed amount (any excess interest not accounted for in the fixed payment would be added to the loan's

---

[97] *Burch v. Chase Manhattan Mortg. Corp.*, CIV.A.1:07CV0121JOF, 2008 WL 4265180, *15 (N.D. Ga. Sept. 15, 2008) (citations omitted).  *See also Duke Galish, LLC v. Manton*, 662 S.E.2d 880, 884 (Ga. App. Ct. 2008) (citations and internal quotations omitted) ("[A]ny damage claimed to have been suffered by a plaintiff does not proximately result from the defendants' alleged misconduct, if the damage would have occurred notwithstanding their misconduct.").

[98] *Habib v. Bank of Am. Corp.*, 1:10-CV-04079-SCJ, 2011 WL 2580971, *4 (N.D. Ga. Mar. 15, 2011) report and recommendation adopted, 1:10-CV-4079-TWT, 2011 WL 2580780 (N.D. Ga. June 29, 2011) ("In the absence of any alleged causal link between the claimed damages and Bank of America's alleged RESPA violation, plaintiff has failed to state a RESPA claim. Likewise, to the extent plaintiff seeks equitable relief under RESPA, it is not available as a matter of law." (citations omitted)).

principal), the loan would recast when the principal equaled 110% of the loan amount. Ms. Wanerka testified that under this payment scenario, Mr. Kareem's Loan would have recast approximately four years from the closing date (July 7, 2006) or in (approximately) June, 2010.[99]  Mr. Kareem stopped making payments on his Loan in September 2009 (before the Loan was recast),[100] as such, Mr. Kareem was still enjoying the five-year fixed payment when he stopped making payments.

92.    Furthermore, Mr. Kareem was aware that his Loan was owned by the AHMA 2006-3 Trust.  At all times after closing and through the date of the Debtors' servicing business, Mr. Kareem's contact information and information regarding his servicer did not change.[101]  Furthermore, any change in the Loan number or address *after* the Debtors' sale of the servicing business was held not to be a material breach by the Texas District Court, nor did the Court find any damages related thereto.[102]

93.    Any claims Mr. Kareem makes regarding rescission is not a remedy that Mr. Kareem may seek in these proceedings.  At the time Mr. Kareem first requested rescission of the Loan (October 2008), the Debtors did not own the Loan or the servicing

---

[99] Tr. 101:5-103:1.

[100]  Tr. 75:11-18.

[101]  Tr. 127:16-128:14.  Ms. Wanerka testified that the Loan account number did not change until late summer of 2008. Tr. 127:16-129:1.

[102]  *Kareem v. Am. Home Mortg. Servicing, Inc.,* 3-10-CV-0762-B-BD, 2011 WL 1869419, *3 (N.D. Tex. Apr. 12, 2011) report and recommendation adopted, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) *aff'd,* 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012) ("[T]here is no evidence that the new number, which is different than the number reflected in the original loan documents, constitutes a material misrepresentation by defendants or that plaintiff was damaged thereby.").

rights related thereto.[103]   Furthermore, rescission was sought and denied by the Texas Courts.[104]

94.    To the extent that Mr. Kareem is not seeking rescission, he is seeking damages in the full amount of his Loan.   However, Mr. Kareem has never alleged that his prior mortgage was not repaid (benefit he received from the Loan) and he admitted he received cash at the Loan's closing.[105]   Furthermore, it is the Court's understanding, that Mr. Kareem resides at the Property.   Mr. Kareem has presented no evidence that he did not reap the benefits of the Loan, regardless of any alleged defect claims.

95.    The Court could presume that Mr. Kareem is seeking this amount as punitive damages.[106]  Georgia law provides:

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.[107]

---

[103]  Tr. 131:5-20.

[104]  *Kareem v. Am. Home Mortg. Servicing, Inc.*, 3-10-CV-0762-B-BD, 2011 WL 1869419, *3 (N.D. Tex. Apr. 12, 2011) report and recommendation adopted, 3-10-CV-0762-B, 2011 WL 1868413 (N.D. Tex. May 13, 2011) aff'd, 11-10701, 2012 WL 2384143 (5th Cir. June 26, 2012).

[105]  Kareem Post-Trial Brief at p. 2, fn. 2.

[106]  Punitive damages are not available for breach of contract claims.  *Burch v. Chase Manhattan Mortg. Corp.*, CIV.A.1:07CV0121JOF, 2008 WL 4265180 (N.D. Ga. Sept. 15, 2008) (holding that "damages arising out of a breach of contract action must be such as could be traced solely to breach, be capable of exact computation, must have arisen according to the usual course of things, and be such that the parties contemplated as a probable result of such breach." (citations and internal quotations omitted)).

[107]  O.C.G.A. § 51-12-5.1(b).

"Negligence, even gross negligence, is inadequate to support a punitive damage award."[108]  There is nothing in the record to show that American Home Mortgage's actions were willful, wanton, or show the entire want of care.  As such, Mr. Kareem is not entitled to punitive damages.

96.    To the extent that Mr. Kareem is seeking return of his loan payments or unspecified amounts for credit reporting harms and/or wrongful foreclosure litigation costs, Mr. Kareem has not provided any basis or calculation for the requested $19,000 in damages.[109]  First, Mr. Kareem has failed to allege (or provide evidence) that the $19,000 in post-petition payments were not applied to his account to reduce the balance of his loan.  Second, Mr. Kareem presented no evidence from credit reporting agencies showing any decrease or harm caused by the alleged damages.  Lastly, Mr. Kareem has not presented any evidence supporting or calculating his litigations costs.[110]

---

[108]  *Burch v. Chase Manhattan Mortg. Corp.*, CIV.A.1:07CV0121JOF, 2008 WL 4265180, *18 (N.D. Ga. Sept. 15, 2008) (citations and internal quotations omitted).

[109]  *See* note 96, *supra*.

[110]  Section 13-6-11 of the Georgia Code provides as follows:

> The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

Ga. Code Ann. § 13-6-11 (West).  *See also Burch v. Chase Manhattan Mortg. Corp.*, CIV.A.1:07CV0121JOF, 2008 WL 4265180, *18-19 (N.D. Ga. Sept. 15, 2008).

## C. Evidentiary Issues

97.     Post-trial, Mr. Kareem made a motion for final oral argument and a motion to strike various documents including: (i) Plan Trustee's exhibit 20 (*Affidavit of Jose Colon*), (ii) Plan Trustee's exhibit 25 (*Magistrate Judge Findings*), and (iii) Plan Trustee's exhibit 26 (*District Court Judgment and Order*).  Mr. Kareem asserts that these documents could have prejudicial effect and could unnecessarily conflict rulings to made before the Fifth Circuit.  As the Fifth Circuit has already issued its opinion, the Court will only concern itself with Mr. Kareem's arguments regarding prejudice.

98.     The Plan Trustee responds that the Magistrate Judge Findings and the District Court Judgment and Order should be allowed as the Court may take judicial notice of these documents and should utilize the facts and conclusions therein for judicial economy and consistency.

99.     As noted above, the Court does not believe that issues preclusion bars Mr. Kareem's present claims; however, the Court will take judicial notice[111] of these two court documents and has utilized the facts and conclusions therein.

100.    With respect to the *Affidavit of Jose D. Colon* ("Colon Affidavit"), the Plan Trustee asserts that the affidavit is a business record affidavit by Mr. Colon as the

---

[111]  Federal Rule of Evidence 201 authorizes a court to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *In re New Century TRS Holdings, Inc.*, 07-10416 KJC, 2012 WL 38974, *4 n. 4 (Bankr. D. Del. Jan. 9, 2012).  Further, judicial notice may be taken at any stage of the proceeding.  Fed.R.Evid. 201(f).  The Third Circuit Court of Appeals has decided that a court may take judicial notice of an adjudicative fact under Federal Rule of Evidence 201 that is not subject to reasonable dispute "as long as it is not unfair to a party to do so and does not undermine the trial court's factfinding authority." *In re Indian Palms Assoc.*, 61 F.3d 197, 205 (3d Cir.1995).

custodian of certain documents of the Purchaser, which was included as evidence in the underlying Texas Action.  The Plan Trustee seeks to have the documents attached to the affidavit as business records under Fed. R. Evid. 803(6).  Furthermore, the Plan Trustee asserts that the Colon Affidavit and the underlying business records were used in the Texas Litigation.

101.    The documents attached to the Colon Affidavit are letters between the Purchaser and Mr. Kareem.  Mr. Kareem has not argued that these documents are not authentic; rather he argues that such documents are prejudicial to him.   However, as a portion of Mr. Kareem's claims are based on the sale of the Note and the related servicing, the Court finds that the documents attached to the Colon Affidavit are relevant and appear to be accurate business records of the Purchaser.  Furthermore, as the documents were also admitted in the Texas Litigation, the Court also takes judicial notice of these documents.  As a result, the Court denies Mr. Kareem's motion to strike.

102.    Attached to Mr. Kareem's post-trial reply brief is evidence that was *not* presented at the Trial.[112]   In response, the Plan Trustee filed a motion to strike[113] these additional exhibits.

103.    Prior to the submission of the post-trial briefs, Mr. Kareem and the Plan Trustee entered into an agreement regarding scheduling which was memorialized

---

[112] D.I. 10385, Kareem Exhs. 500, 600, 700, 800, 900, 1000, 1100, 1200 and D3.

[113] The Plan Trustee also moved to strike Mr. Kareem's post-trial briefs as untimely.  However, the Court has and will consider the post-trial briefs, as set forth herein.

in an Order entered by the Court (the "Scheduling Order").[114]   The Scheduling Order stated:

> The Opening Post-Trial Brief shall not included causes of action, facts or evidence that were not presented at Trial and/or are not otherwise admissible.
>
> ***
>
> The Reply Brief shall not included causes of action, facts or evidence that were not presented at Trial and/or are not otherwise admissible.[115]

104.    As mentioned above, Mr. Kareem submitted nine (9) additional pieces of evidence with his post-trial briefs.  Each exhibit will be discussed in turn:

a.  **Kareem Exhibit 500**:   Exhibit 500 appears to registered agent information through an on-line search in the Delaware Division of Corporations for American Home Mortgage Assets Trust 2007-SD2.  There is nothing in the record to indicate that Mr. Kareem's Loan was ever owned by the American Home Mortgage Assets Trust 2007-SD2; as such, the Court finds that Exhibit 500 is not relevant to this proceeding.  However, *even if* this document was admissible, it would not change any of the Court's rulings set forth herein.

b.  **Kareem Exhibit 700**: Exhibit 700 appears to be license information regarding Mr. Kareem's broker, Global Mortgage.  There is nothing in the record to

---

[114]  *Scheduling Order Regarding Post-Trial Briefing for (i) Motion for Judgment as a Matter of Law of Administrative Claim Entered [S.I. 10148]; (ii) Motion for Allowance and Payment of Administrative Claim with Brief in Support [D.I. 9692]; and (iii) Claims Numbered 10870, 10875 and 10887 Filed by Hussain Kareem* (D.I. 10306).

[115]  Scheduling Order at ¶¶ 1 and 5.

indicate that the broker named in this document is the same broker that Mr. Kareem had dealings with; however even putting that aside, the exhibit appears to indicate that the broker named in document had its license revoked in February 2007.  The Court finds that Exhibit 700 is not relevant because (i) the broker is not named in these proceedings, (ii) Mr. Kareem has not alleged any wrongdoing with regard to the broker, and (iii) the broker was licensed at the time of Mr. Kareem's closing in July 2006.

c.  **Kareem Exhibit 800:** Exhibit 800 appears to be a web search of license information regarding American Brokers Conduit, a b/d/a of American Home Mortgage.  Exhibit 800 is not relevant because Mr. Kareem has not alleged any license defect with American Home Mortgage.  *Even if* this exhibit was relevant, Mr. Kareem's Loan was originated while American Home Mortgage was licensed to originate loans.

d.  **Kareem Exhibits 900-1100:**  Exhibits 900-1100 appear to be some sort of forensic report related to Mr. Kareem's Loan, dated March 27, 2012.  The Court has many concerns regarding this report: (i) the Court does not know what information was used in preparing this report (notably, in paragraph 1 of the verification, the preparer listed what documents he included in the analysis, based on the Court's review the Adjustable Rate Rider was not among the documents listed), (ii) neither the Plan Trustee nor the Court was able to review the report prior to trial and/or ask questions of the preparer to test the validity of the report, (iii) the report is based in part of the lender and the broker not being licensed (when at the time of the Mr. Kareem's origination, both the lender and the broker were licensed);  and (iv) the report is

44

inconclusive on whether the Loan was compliant with Georgia law.   *Even if* the Court were to look just to the Truth In Lending Act portion of the report which states that the Loan failed the TILA-Tolerance, the Court does not have enough information to be persuaded that the report is accurate, the report considered all of the loan documentation, the report reflects the agreement of the parties at the Loan's closing, there are far too many questions left unanswered by the report to find it admissible at this point in the proceedings.  As such, Exhibit 900-1100 will not be admitted.

e.  **Kareem Exhibit 1200:** Exhibit 1200 appears to be an Order to Cease and Desist by the Georgia Department of Banking and Finance to First Liberty Savings and Credit Union ("First Liberty").   These proceedings relate to American Home Mortgage and not First Liberty.   This document is wholly irrelevant to these proceedings and will not be admitted.

f.  **Kareem Exhibit 1300:**  Exhibit 1300 appears to be a copy of the shipping label.  There are handwritten remarks on this exhibit.  If this exhibit relates to the timeliness of Mr. Kareem's filings, this exhibit is moot, as Mr. Kareem's filings have been considered, regardless of the date of their issuance.

g.  **Kareem Exhibit 1400:** Exhibit 1400 appears to be a copy of a *Motion In Limine Certain Documents by Defendants* [sic].  Exhibit 1400 appears to be a copy of docket item 10260.  The Court will take judicial notice of docket item 10260.[116]

---

[116] *Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991) (taking judicial notice of docket entry dates).

## CONCLUSION

Based on the findings above, Mr. Kareem's *Motion for Entry of Administrative Claim* (D.I. 9692) and *Motion for Judgment as a Matter of Law of Administrative Claim Entered* (D.I. 10148) will be **DENIED.**  Furthermore, Claims No. 10870, 10875 and 10887 (each related to the claims in the Motions filed by Mr. Kareem) will be **DISALLOWED** and **EXPUNGED** in their entirety.

Dated: January 2, 2013

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Court
for the District of Delaware