## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x   Chapter 11

In re:
: Case No. 07-11047 (CSS)

AMERICAN HOME MORTGAGE HOLDINGS, INC.,    :
a Delaware corporation, et al.,    :   Jointly Administered
:
:   Ref/ Docket No. 9692, 10148, 10183, 10182
:
Debtors.    :
:
---------------------------------------------------------------- :   10384, 10384, 10410,104411 & 10713
:
x

## Motion for Reconsideration of January 2, 2013 Order and Fact Findings

Now comes, Hussain Kareem, Claimant in the above action, moves the court for reconsideration of its January 2, 2013 Order denying his claims and fact findings presented to support a Judgment as a Matter of Law. Motion is filed Pursuant to Federal Rule of Civil Procedures (F. R. C. P.) Rule 59 (f) applied under Bankruptcy Procedure Rules 9023 and Rule 8002 (b)((1)(2)and (3). If the Court choose not to amend its order, then Claimant request a new trial under adversarial proceeding rules. Furthermore, Claimant fully intends to appeal the fact findings and order, unless the recommendations are adopted by the Claimant herein.

Mr. Kareem appreciates and acknowledges that the issues at trial are complex and manifold. Therefore, it is understandable that the Court may have missed, over looked or erred on raised issues. With all due respect to this court, Mr. Kareem respectfully objects to many fact findings and opposes the order. Specific sections of the Fact Findings are opposed by listing of such sections with some brief comments contrary to the findings as found below:

### Claimants Opposition to Fact Findings Sections by Number Referenced

7,8, 17,21, 24-26, 28, 29, 33, 39, 40 and 41. Object to the inference and mischaracterizations.

42. Objection: Failure to render bankruptcy notice is important due to potential contract breach under Covenant Sections 15 and 20 of the security instrument. Slander of title exists, if AHMH does not remove the lien.

43. Objection: Impairment of Note is believed to exists at law.

44. Objection: the Type of Endorsement is accountable under the law. See Black's Law Dictionary on the three types of endorsement, special, accommodation and in-blank.

45. Objection: The reference case law not precedent rulings by the Supreme Court.

46. Objection. Not true according to OCGA 11-3-419 and legal definition endorsement is critical. Accomodation may be subject for a cause of discharge under OCGA 11-3-604.

47. Objection: It is not proven if Owner statutorily exists. This "hide and seek" of where is the note holder is what the Mortgage Notification Bill was designed to prevent. Mr. Kareem has been litigating this case sine 2010 when the bill became effective. However, even now The Plan Trustee and the Court refuse to assist Mr. Kareem's request to know his Note Holder location and contact information.

48. Objection: Mr. Kareem stated repeatedly, that he is eligible to have his loan discharged as a recoupment for damages. Additionally, TILA gives a right for non-response by the creditor.

52. Objection: Generally yes, However the Waiver of Borrower rights gives fiduciary under OCGA10-6-4. This instrument was not introduced into Georgia until about 1989 and in 2012 the General Assembly of legislators made it lawful to use.

54. Objection: Inapplicable to contract terms sub judice.

56-58, 64, and 68. Objections in Genera;.

70-76. Objections: Mr. Kareem was not allowed full discovery but, adequately referenced where the pooling and servicing agreements and provide extracts and the knowledge where the supporting data could be found in the SEC Edgar database. Admittedly, if the data supports what Mr. Kareem is saying, then he should be given the benefit. The sale of the service

unit was never argued by the Plan Trustee. Here the court comes to aide the Plan Trustee over the claimant. The Court lost its position of neutrality in a just adjudication.

83. Objection: Statements are not accurate. Mr. Kareem did not confirm receipt of notices. Furthermore, TILA rescission is not based solely on deficient notices, but the right may be sustained up to 3 years for any reason including fraud.[1] Mainly, what is being attacked is not

---

[1] See Supreme Court Rulings on TILA in DAVID R. BEACH, ET UX., PETITIONERS v. OCWEN FEDERAL BANK, 118 S. Ct. 1408;140 L. Ed. 2d 566, April 21, 1998, Decided. The Honorable Judge Souter delivered opinion of the Court, "[1A] Under the Truth in Lending Act, 82 Stat. 146, **15 U.S.C. § 1601 et seq.**, when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately. See **Mourning v. Family Publications Service, Inc., 411 U.S. 356, 363-368, 36 L. Ed. 2d 318, 93 S. Ct. 1652 (1973)**. Accordingly, the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights. See §§ 1631, 1632, 1635, 1638. Failure to satisfy the Act subjects a lender to criminal penalties for noncompliance, see § 1611, as well as to statutory and actual damages traceable to a lender's failure to make the requisite disclosures, See **15 U.S.C. § 1635**. Under **§ 1635(f)** of the statute, this right of rescission "shall expire" in the usual case three years after the loan closes or upon the sale of the secured property, whichever date is earlier....**§ 1635(a)**. A borrower who exercises this right to rescind "is not liable for any finance or other charge, and any security interest given by [him], including any such interest arising by operation of law, becomes void" upon rescission. **§ 1635(b)**. Within 20 days after receiving notice of rescission, the lender must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction." *Ibid.* The Act provides, however, that the borrower's right of rescission "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first," even if the required disclosures have never been made.[ *EMPHASIS ADDED*] **§ 1635(f)**. n1 [*7] The Act gives a borrower no express permission to assert the right of rescission as an affirmative defense after the expiration of the 3-year period.

 **Comments**: Here this court wants to depend on the lower Fifth Circuit ruling which is erroneous. In the instant action, the Lender is the rightful party to commence the demand for the rescission. If the Lender sold the Note, then the liability lies with the Assignee. Here the Lender and the Plan Trustee may be obstructing justice by not to assisting the borrower to his entitlement and full identification, address and contact information of the Assignee, AHMA 2006-3. Testimony provided and acknowledge that Michael Straus received Mr. Kareem's notice, but AHMH sent it to the Loan Servicer and not the Assignee. The result is the improper party responded and did not unwind the transaction. The question before the court is, is AHMSI's response to Mr. Kareem binding and legal? According to controlling case laws, AHMSI was not a binding party to respond to Mr. Kareem. Furthermore, AHMSI response never asserted who the Note Holder was and that it was responding on behalf of the Note Holder. The Third-party responder jeopardized his rights to know who the knowledge of his Assignee and deterred him from executing his right of rescission.

the right of rescission or the veracity of rescission buy the failure by AHMH to respond in a timely matter under Regulation Z and Under 15 USC 1635 (b).[2]

---

[2] Under **12 CFR § 226.23 Right of rescission. The clear guidelines for determination at law are as follows:**

(a) *Consumer's right to rescind.* (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[4]

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act.

(d) *Effects of rescission.* (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

Comments: The events in the case sub judice is very similar to *WILLIAMS, v. HOMESTAKE MORTGAGE CO.,* 968 F.2d 1137 (1992), 11th Cir. Background: Unhappy with the larger monthly payments, Williams eventually sought legal advice and on September 21, 1987, filed this action alleging numerous disclosure violations of the Truth in Lending Act, 15 U.S.C. §§ 1601-1662 (1988) ("TILA" or "Act"), and **Regulation Z**, 12 C.F.R. §§ 226.1-.1002 (1992). Williams delivered a letter to Homestake

purporting to rescind the September 23, 1986 agreement. Homestake [similar to AHMH action] did not respond to the rescission letter, took no action to reflect the termination of the mortgage, and returned no part of the monthly payments made by Williams.

[The action brought into the district court was decided on summary judgment].The district court entered an order in which Williams' motion for summary judgment was granted and Homestake's motion was denied. The court found that Homestake had committed "three distinct [TILA] disclosure violations: (a) improper disclosure of the **effects** of rescission, (b) under-statement of the finance charge and (c) failure to disclose all security interests taken." (R41 at 9). Relying on 12 C.F.R. § **226.23(d)(1)**, *Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120 (5th Cir.), *cert. denied,* 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980), and *Gerasta v. Hibernia Nat'l Bank,* 575 F.2d 580 (5th Cir.1978), the district court then determined that Homestake's "'status quo ante' argument was addressed and foreclosed by the holdings in the *Harris* and *Gerasta* cases, and by 12 C.F.R. § **226.23(d)**."

The Eleventh Circuit Concluded:

"The sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission. Under common law rescission, the rescinding party must first tender the property that he has received under the agreement before the contract may be considered void. 17A Am.Jur.2d *Contracts* § 590, at 600-01 (1991). Once the rescinding party has performed his obligations, the contract becomes void and the rescinding party may then bring an action in replevin or assumpsit to insure that the non-rescinding party will restore him to the position that he was in prior to entering into the agreement, i.e., return earnest money or monthly payments and void all security interests. *Id.* § 604, at 610-13. Under § 1635(b), however, all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first. Thus, rescission under § 1635 "place[s] the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission." Note, *Truth-in-Lending: Judicial Modification of the Right of Rescission,* 1974 Duke L.J. 1227, 1234 (1974). Furthermore, because rescission is such a painless remedy under the statute (placing all burdens on the creditor), it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements.

Though one goal of the statutory rescission process is to place the consumer in a much stronger bargaining position, another goal of § 1635(b) is to return the parties most nearly to the position they held prior to entering into the transaction. The addition of the last sentence of § 1635(b), stating that "[t]he procedures prescribed by this subsection shall apply except when otherwise ordered by a court," was added by the Truth in Lending Simplification and Reform Act, Pub.L. No. 96-221, tit. VI, § 612(a)(4), 94 Stat. 168, 175 (1980) (codified as amended at 15 U.S.C. § 1635(b) (1988)) ("Simplification and Reform Act"), and is a reflection of this equitable goal. Prior to the statute's amendment,[6] the majority of circuit courts that addressed this issue permitted judicial modification of the statutory rescission process."

*Gerasta v. Hibernia Nat'l Bank,* 575 F.2d 580, 583-84 (5th Cir. 1978). Once the creditor has completed his obligations, it is incumbent upon the obligor to return any value received from the creditor.

**Comments:** This fact is without any contest. Mr. Kareem show that this Court can not protect Neither AHMH,AHMSI or AHMA 2006-3 Trust has completed their obligation. Neither the Fifth Circuit Ruling address this fundamental fact.[Emphasis added].

85. Objection: Endorsement obligates the Lender under the Note covenant terms.

92. Objection: Mr. Kareem was not aware who owns his loan. Even now, Mr. Kareem believes that AHMA is not a statutory trust. The Address of servicer has changed. The Address of the note Holder remains unknown. This violates the Section 15 and 20 of the Security Instrument and the Shelby-Boxer Mortgage Notification Bill. The address was in Lewisville. Texas, now purportedly Coppell, Texas

94, 101,102. Objection: The Court could have ruled on the matters to strike before its final ruling. The matters were not ruled upon with leniency for a pro se's ability to have equal access to the facts or records. Additionally, Mr. Kareem re-asserts where his claims were materially omitted. The fact findings were not administered fairly.

Whereas, Mr. Kareem supports his timely motions to amend and reconsider the order along with the fact findings due to errors and omission by reasons enumerated below:

## Breach of Contract Covenants Under Note and Securitization

Under applicable laws related to securitization failures by AHMH and its subsidiaries, commercial codes violations for endorsement by accommodation and alteration of his loan number that was testified by Ms. Wanerka at trial[3]. Testimony confirmed that Lisa Furco, a

---

In *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120 (5th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980). "The district court properly cancelled the deed of trust and awarded a $1000 statutory penalty."

[3] Under OCGA §13-7-12. Grounds for allowance of recoupment generally ,
Recoupment lies for overpayments by the defendant or for payments by fraud, accident, or mistake.
**Comments:** Mr. Kareem states where he overpaid at the instant that AHMA became insolvent and breached their obligation as a surety or guarantor for his accommodating the loan into the Trust. Comments: In the case Sub judice, Mr. Kareem stated at trial and which was proven by Ms. Wanerka's testimony that AHMH was dependant on their Broker, Global Mortgage to deliver and communicate disclosure notices and illustrations of the Adjustable Rate Arm. However, there was no proof of delivery but only a notation in the computer record that the notices were delivered. The notices did not require Mr. Kareem's Signature. The Broker did not testify at trial. In fact, the Broker is insolvent. Therefore, there is

former officer endorsed the promissory note. The Question remains if the endorsement was in blank or by accommodation.  This Court only ruled on the purported endorsement in blank by unprecedented rulings found in Georgia Courts. However, those cases did not assert that the endorsement was by accommodation as Mr. Kareem has explained by the legal definition of the different endorsements under OCGA §11-3-419.  This court only ruled what it thought had happen and did not rule on why endorsement by accommodation would not describe the transaction involving the deposit. Sale or transfer of Mr. Kareem's Note to AHMA 2006-3 Trust. Mr. Kareem humbly ask the court for  a more clearer and definite statement on the fact finding to include the court's reasoning on why endorsement by accommodation was not contemplated by AHM with respect to Mr. Kareem's loan.

Whereas notwithstanding the above concerns,  admittedly AHMH was required to serve as guarantor to Mr. Kareem's loan under the terms of the Pooling and Servicing Agreement of AHMA 2006-3. Wherefore, there are two contracts in which shows AHMH's endorsement of his instrument, the companies became the obligor, guarantor and surety. If this theory is factually incorrect, then, Mr. Kareem begs the court to explain, why are members of the AHMA 2006-3 Trust and other REMIC trusts offered by AHMH entities suing in this court for claims of breaches and defaults related to their failures under their respective securitization role? Can this court or the Plan Trustee deny under oath that AHMH companies did not make themselves guarantors under a "buy –back" clause contained in the pooling and servicing agreement?

Among other things, this court ruling fails to account for Georgia's judicial requirement that contract covenants must be reviewed for a just adjudication under OCGA 13-8-54[4]. As such,

---

no live credible  testimony from a person with personal knowledge that Mr. Kareem received the notices that explained the recast calculations presented by Ms. Wanerka. Mr. Kareem stated that he did not receive and there is "no" proof that he did, therefore, the creditor AHMH failed to disclosed under the law. Even if AHMH was no longer the borrower's creditor then it was AHMH responsibility to respond within 20 days [See 12 CFR §226.23 (3)]. Furthermore, it is reasonable to presume that AHMH should have known who the assignee and forward the demand to the Note Holder and not loan Servicer.

[4] Under OCGA 13-8-54 (a) A court shall construe a restrictive covenant to comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement.

the Adjustable Rate Note under Section 9. *Obligation of Parties Under the Note,* clearly indicates the consequences for endorsement of the instrument and the obligation of parties who endorse the note. Under the express terms of the Note, AHM became a guarantor for the obligation to the AHMA 2006-3. Equally, under the express terms and agreement as the guarantor to the AHMA 2006-3 under the Prospectus and Pooling and Servicing Agreement (PSA), AHM's action carried forward its obligation under the Note into the securitization transaction. These are facts interrelated to Mr. Kareem's transaction. Wherefore, Mr. Kareem's claim before this court is to get the lien removed and recoupment for his damages by AHM's failure under both contracts. To the extent that the court states that the PSA and Prospectus are not before the court is disingenuous. Claimant believes that AHMA series trusts have and had very similar requirements under and buy back clauses. The Plan Trustee never raised a defense, to the allegation, so the Court steps in to rescue the Plan Trustee. The Court should have stayed neutral if it did not want to ask or require the PSA or Prospectus for review.

Whereas, the PSA is but a commercial secured transaction, which is regulated and defined under Uniform Commercial Codes (indentified under Georgia's Commercial Code  at trial). Mr. Kareem questioned the veracity if his Promissory Note original number was testified to have been changed without his assent to such change. This tort is defined at law under OCGA §11-3-407.  This court did not provide any guidance on the veracity of the potential misuse of Mr. Kareem's Note under the applicable law. Mr. Kareem therefore, asks the court to amend its fact findings and order accordingly.

Whereas, the Plan Trustee and Bankruptcy records supports the fact that AHMH deposited Mr. Kareem's Promissory Note (Note) and with the Security Instrument (Security Deed) by a certain cutoff date , typically no more than six months is allowed under unsual circumstances. Not some three and one-half years later.  There is a material fact of controversy if the Note ever made it into the loan pool.  This was witnessed prima facie due to the Assignment, purportedly made by MERS on or about January 10, 2010, where MERS filed a belated transfer of assignment to the CitiBank, N.A., as Trustee for AHMA 2006-3 some three and half years later   If this is true, then the REMIC's tax exemptions for the REMIC Trust, organized under the IRC  tax code was then violated by the late assignment.  If this is true, then the Claimant will have the belated transfer investigated by the Internal Revenue Commission. The belated transfer

draws into question if the AHMH entities have liabilities for a defective sale of Mr. Kareem's Mortgage to the AHMA 2006-3 Trust and how this defect affects his land title. Mr. Kareem was made to be involved by AHMH for its surety role that was undertaken by their action to endorse his note by accommodation to facilitate the transfer to AHMA 2006-3. The January 2, order fails to address the veracity of AHM's breach of duty under the PSA and the Note. Accordingly, hhis court is asked to amend its fact findings and order to reflect the obvious facts known to this court and to the Plan Trustee.

Whereas, upon information and belief, Mr. Kareem believes that AHMA 2006-3 Trust is not an active statutory trust. Irrespective that Form 15 cease reporting Trust activities, the trust is not registered in Delaware or in New York, as required under the PSA. Mr. Kareem entered where the only existing AHMA trust exists in Delaware is not the underlying trust in question. His inquiry has legal requirements under the 2010 Mortgage Notification Bill, 1035 Shelby Boxer Amendment to the Truth-in-Lending Act. What is clear, is that Mr. Kareem believes that this court in redressing his issues, should ensure that He has full disclosures of entities who may have anything to do with his Note. Those records are before this court. In fairness, this court should assist in the truth gathering and not turn Mr. Kareem away empty, particularly if this Court is stating that AHMH is innocent of his claims asserted. Accordingly, this court is asked to amend its fact findings and order to reflect the obvious facts known to this court and to the Plan Trustee.

### Concerns for Basic Fairness:

Notwithstanding the concerns asserted above, Mr. Kareem has been faced with an uphill battle in this proceeding for factual concerns. AHMH is being jointly administered by:

The Plan Trustee, The Bankruptcy Administrator Eileen Warneka is the Bankruptcy Administrator , Key Witness and former AHM employee.

MS. Warneka testimony is critical to prove and support the following:

- Predatory Lending compliances under Federal and  Georgia Banking regulations were probable causes of action upon discovery of signature defects presented by the loan application unsigned by the Broker, Global Mortgage.

- The accuracy of Wiz Sentinel audits  used internally by AHM, were not accurate lending practices. Mr. Kareem contested the accuracy having the disclosure documents reviewed by an outside audit group. The third-party audit provided affidavits and reports which showed predatory lending  practices and lender broker compliance issues as found from Georgia's Banking and Finance records.

- Critical disclosure documents were not certified to have been mailed to Mr. Kareem. There were no proof of delivery and AHM did not send the documents directly to Mr. Kareem. The documents, were supposed to have been delivered through a third party broker, which is now defunct and sanctioned for lending violations. Therefore, the credibility of the Broker, Global Mortgage is unreliable at best to vouchsafe for AHM.

- Ms. Warneka was not a compliance officer as a former employee of AHM. Therefore, she did not and could not have first-hand knowledge related to AHM's failure to comply under any laws.

- Since, Ms. Warneka is the current bankruptcy administrator making testimonies and affidavits in the AHMH court proceedings, Mr. Kareem believes that it was an embarassing moment to have her cross-examined. The court must be reminded that the Plan Trustee chose Ms. Warneka as their critical witness. Now, that her testimony backfired, the court should not run away from her testimony in open court, but should embrace the truth.  Upon information and belief, Ms. Warneka provided what any reasonable person could discern that AHM had committed some if not many, lending breaches.

Notwithstanding the evidentiary hearing, the Court denied critical motions by Mr. Kareem. Whereas, his request to proceed in adversarial proceeding, was denied.

- His motion to for Discovery Request were denied. If the Court wanted Mr. Kareem to prove certain facts in a one day hearing, then an appropriate discovery should have been provided.

- His motion in limine was denied in part and granted in part. Yet, in the January 2, 2013, the Court re-raised and reversed the use affidavits by Jose Colon that was stricken at the hearing on the motion in limine.  Mr. Kareem Protested by objection and did not need to deny. The Fifth Circuit court case was not decided on Jose Colon's Affidavit. Therefore, it was only entered in the instant action, sub judice, to prejudice the court.

Whereas, the Court conclusions could have only been drawn to yield a result favorable to the Plan Trustee and unsupported or omitted key applicable laws and testimonies. Mr. Kareem believes that the testimonies could prove to damage the credibility of the Plan Trust Administrator presiding over the Chapter 11 affairs:

Wherefore, findings were used to disprove or discredit Mr. Kareem's claims. Fairness was not shown for his well-pled arguments and adverse testimonies to the Plan Trustee enumerated as follows:

* The court made no effort to show where Mr. Kareem would have the right of claim under any set of circumstances and even his right to enforce his contract.[5]

* The Court exercised "Every" effort to support the Plan Trustee's argument for res judicata "preclusionary". In the twelfth hour, the court wanted to use outside court case of the fifth circuit that has nothing to do with AHM or AHMA 2006-3 Trust the purported Assignee. The Fifth Circuit action were different parties and for different reasons as admitted by this court.

*The motion in limine rulings should have settled those concerns, but apparently it did not. The court have sufficient facts about the contract, PSA, lending practices, and TILA to prove the claims sub juduice.

*The Court failed to acknowledge or was not made aware of at least three counter settlement offers, and left it to infer that Mr. Kareem was being unreasonable (See email Messages).

*The Court evaded the "Strict construction" of the contract (note and Security Deed) where AHM defaulted in duty to perform. Namely, sections under Covenant Section 9. of the Adjustable Rate Note and Covenant Sections 15 & 20 in the security deed instrument, were abandoned by the court to rule on the raised issues provided in Mr. Kareem's briefs.

Whereas, Georgia Law under OCGA 13-8-54, requires any judicial court to make a strict construction of the contract covenants. This fact was raised by Mr. Kareem, however, the court failed in its duty to correctly interpret the underlying covenants above which would support a breach of contract by AHM.

### TILA Rulings are Erroneous:  Misguided by other Courts and Chose not to be guided by the Supreme Court Precedent Rulings on TILA

*The Court overreached and drew conclusions that were not part of testimony or record from the trial:

---

[5] Under OCGA 13-8-55, provides, " Requirements of person seeking enforcement of covenants " The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant. If a person seeking enforcement of the restrictive covenant establishes by prima-facie evidence that the restraint is in compliance with the provisions of Code Section 13-8-53, then any person opposing enforcement has the burden of establishing that the contractually specified restraint does not comply with such requirements or that such covenant is unreasonable.  Comments: Here, Mr. Kareem sought enforcement of his interest in Note under the restrictive covenants under Section 9 and under Sections 15 and 20 of the Security Deed, respectively.

Namely, the Court inferred "What Mr. Kareem understood", or when it inferred that "certain notices were delivered to Mr. Kareem", or that "Mr. Kareem acknowledged his signature". These inferences are plain errors and were not a part of the testimony and the transcript on Nov. 18, 2011, completely contradicts these inferences. Most importantly, like in the *Williams v, Homesake* case , AHMH entities failed to meet their obligation. It is not about Mr. Kareem's knowledge or understanding. The issues of provable fact is that AHMH did not respond to the TILA Notice timely as required under Reg. Z and TILA.

- The Court failed to correctly apply  TILA disclosures and TILA rescission Notices. Even If AHM sold the loan, Mr. Kareem never knew to deliver the demand to the AHMA 2006-3 Trust.  Mr. Kareem was never given a clear and concise statements if AHMH intended to service his loan and the requisite lending documents. Those documents were not certified delivered to Mr. Kareem about the loan and how it performed. The loan offered a teaser rate but then adjusted to a negative amoritization.  Mr. Kareem did not understand this featured and he testified in court to that fact and again herein.

- The knowledge of the "New" Note Holder or Assignee was with AHM and AHMSI and not Mr. Kareem. Therefore, the timely notice and responsibility of passing on the Rescission Notice was with AHM who knew how to correspond with the "New" Holder as an operation of law. Mr. Kareem shall not yield to this fundamental binding legal right under TILA 15 USC 1641(c) AHMH failed to past on his notice to the rightful party[6]. The law specifically is written by congress to carry forward the liability to the ASSIGNEE. Even under the PSA and Prospectus, the limitations of mortgages where disclosed to be subject to TILA rescission rights. This court knows this to be a fact, therefore the ruling is in plain error[7].

---

[6] See 309 F.3d 1161 (2002), *Estrellita G. MIGUEL v. COUNTRY FUNDING CORP, and The Bank of New York Trustee, under the Pooling & Servicing Agreement Series 1995 B; Alliance Bancorp, a corporation,* 9th Circuit  which held. "We hold that it was not. While the Bank's servicing agent, Countrywide, received notice of cancellation within the relevant three-year period, no authority supports the proposition that notice to Countrywide should suffice for notice to the Bank".

**Comments:** In the case sub judice, it was tortuous for AHMH to send Mr. Kareem's  rescission notice to the Loan Servicer, AHMSI and not to the Assignee, allegedly AHMA 2006-3. Wherefore any response by AHMSI with respect to Mr. Kareem' s right to rescind was not that of the Note holder is held by the 9th Circuit in the above case. It was tortutous action, because the rescission right is time sensitive. It expires in three years.  AHMH obstructed justice by not giving the notice where it belonged, rather intentional or by negligence.

---

[7] See Supreme Court Rulings on TILA in DAVID R. BEACH, ET UX., PETITIONERS v. OCWEN FEDERAL BANK,It is useful to look ahead to **§ 1640** with its provisions for recovery of damages.

### Court Failed to Render Ruling on MERS's Status and Standing Based on Georgia's Banking Law

- The Court failed to interpret the security deed instrument under Georgia Banking laws on the lawful exercise of authorities by MERS as a fiduciary for other Financial institutions. Under OCGA 7-1-242 the requirements prohibited MERS from acting in any capacity for AHM with respect to the security instrument. Mr. Kareem challenged the veracity of the impairment as being impaired for the unlawful agency role of MERS made by AHM. Nothing in the January 2, 2013 Order and Fact Findings addresses the Georgia law.

Mr. Kareem supported by example to show that, Georgia's Banking and Finance Department has prosecuted other institutions like Liberty (See Exhibit 1200) for the financial institution failing to maintain their exemption under the law. The Court appeared confused by the example as it relates to MERS's status as having eligible standing under the law. The court could have sought advisement from Georgia's Banking and Finance Department before it failed to understand the law.

It is well known that MERS is a controversial institution. Recently, the State of Washington has struck down the Rights of MERS to pass title in their state. Georgia Supreme Court has not ruled on the MERS issue, as of yet, even though it has been urged by the United States District Judge, the Honorable Amy Totenberg (See Bahaeddin Kharazmi v. Bank of American, NA and the Bank of New York Trustee for CWABS Certificates Trust 2006-24, Case 1:11-cv-02933-AT Document 8 Filed 09/06/11)[8]. Therefore, the current fiduciary law is black

---

Subsection (e) reads that the 1-year limit on actions for damages "does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law." **15 U.S.C. § 1640(e)**. Thus the effect of the 1-year limitation provision on damages actions is expressly deflected from recoupment claims.

[8] In the Kharazmi case, it is closely situated with actions sub judice by AHMH with respect to selling the mortgage into a securitized trust and subsequent actions on an alleged MERS transfer. The Case findings by the Judge supports, "Plaintiff's [Khazarmi] verified complaint contains a series of specific factual allegations in support of his claim that Bank of America is not the actual, lawful owner of the mortgage for the property at issue. (Doc. 1 ~~21-33, 54-55, 56-58 and Exhibit A to Complaint). Plaintiff maintains that Bank of America [like AHMSI] was not a party to the Bank of New York securitization trust to which Countrywide Homes Loans, Inc., the original lender, sold the mortgage in 2006. He further maintains that no documents have been filed with the DeKalb County Superior Court or are available that establish that the promissory note and deed of trust were either delivered to the Bank of New York Trust or transferred in accordance with the exacting requirements of the applicable Pooling

and white law. Any ruling on the matter of MERS outside of the fiduciary law related to MERS database activities, are not conclusive until the Supreme Court of Georgia determines the veracity of MERS standing their business model. Secondly, The OCC has regulated MERS for their deceptive and unsafe business practices. If this court is trying to give MERs a clean bill of health, then in light of the facts relevant to Georgia, it would be unwise for the Court to do such

---

and Servicing Agreement ("PSA"). [Comments. Here the court is asking the financial institutions to prove their case not the borrower. Emphasis added. ]

At the hearing, the Court asked counsel for Defendants whether he had any documentary proof to establish that Bank of America is the lawful holder of his mortgage loan with authority to foreclose under Georgia law. *See* O.C.G.A. §§ 44*14-162 et seq.* Defense counsel indicated he had no such documents at hand but stated that he was certain, based on the June 25, 2011 Assignment of Security Deed attached as Exhibit A to Plaintiff s complaint, that Bank of America must actually be the lawful mortgage owner. However, that assignment merely provided for the transfer by Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Countrywide Home Loan Servicing of the security deed (and debt secured therein) to Bank of America. The assignment itself does not confirm or

prove Bank of America's lawful ownership interest. Countrywide went out of business in 2008, three years prior to the assignment. Additionally, according to Plaintiff's complaint, the assignment occurred five years after the alleged deadline for recording the assignment of the note pursuant to the purported requirements of the Bank of New York investment trust to which the Countrywide mortgage was originally sold.

In total, the evidence and verified allegations at this preliminary juncture establish that Bank of America is attempting to foreclose on Plaintiff's property but that the Bank may not possess the requisite documentation confirming that it is indeed the security creditor and holder of the promissory note authorized to exercise a power of sale pursuant to O.C.G.A. § 44-14-162.

Georgia law authorizes the secured creditor, the holder of the promissory note, to exercise a power of sale. *See* O.C.G.A. §§ 44-14-162 *et seq.; Weems* v. *Coker,* 70 Ga. 746, 749 (1883) ("Could there be a more conclusive defense to the foreclosure than that the party prosecuting it was not the holder of the debt or demand secured by the mortgage, when he failed to produce when called on, and offered nothing to show that he controlled it, or to explain why it was not forthcoming at the trial?"), *cited by Truitt v. Moister,* 11 B.R. 15 (Bankr. N.D. Ga. *1981); Cummings* v. *Anderson,* 173 B.R. 959, 963 (Bankr. N.D. Ga. 1994) (finding that foreclosure was null and void where the entity foreclosing did not have an . actual assignment of the note and security deed), *aj'd,* 112 F.3d 1172 (11th Cir. *1997); Boaz v. Latson,* 580 S.E.2d 572, 578 (Ga. Ct. App. 2003) ("[T]he security deed arose from the indebtedness allegedly established by the promissory note, and the deed's power of sale depended on default under the note."), *rev'd on other grounds,* 598 S.E.2d 485,487 (Ga. 2004).

Georgia law requires "[t]he security instrument or assignment thereof vesting the secured creditor with title to the security instrument" to be "filed prior to the time of sale in the office of the clerk of the superior court in the county in which the real property is located." O.C.G.A. § 44-14-162(b). In the instant case, Plaintiff maintains that the only document Bank of America has filed with the DeKalb County Superior Court is the 2011 <u>assignment by MERS, the validity of which has been thrown into substantial question on the grounds discussed above. MERS' assignment of a security deed, which it may not itself have properly been assigned, would not empower Bank of America to foreclose if the Bank does not hold the promissory note.</u> *Morgan v. Ocwen Loan Servicing,* No.1 :10-CV-3555AT, 2011 WL 2650194, at *4-5 (N.D. Ga. July 7, 2011) (Totenberg, J.). Comments: Mr. Kareem is only requesting this court to assert the same kind of objectivity in a just adjudication related to the title issues and the veracity of who owns Mr. Kareem's note.

without asking the courts in Georgia to certify the question on MERS. However, upon information and belief, the current law is clear. MERS does not qualify as a fiduciary to act in AHM capacity because it does not the exemptions under the law to do so. So the issue of impairment needs this court to amend, vacate or provide substantive fact findings on the veracity of MERS being added to the Security Deed instrument.

### Unenforceable Instrument left Dormant in Georgia's Land Record

Mr. Kareem, has pleaded that AHM is about to be completely dissolved. This is a fact. Therefore, it seems unjustifiable reasons to leave a lien in Georgia land records bearing the rights and privileges that AHM does not intend to enforce? This court has failed to support or justify where the law would support this kind of negligence especially when Mr. Kareem comes and protests about the matter. This is a prima facie example of slander of title and land tort by ignoring all land rights under Reg. Z and applicable State title laws.

Mr. Kareem has provided judicial notice to this court and the Plan Trustee that he has perfected the title interests by legally updating his title through the Secretary of State. Whereas, Mr. Kareem title has been perfected to show that his chain of title was made by the government of Georgia under its Historic Land Grants. Such Judicial notice of filings in the Land Records in Georgia, perfects the title and effectively contests the veracity of the lien for being deficient in its legal description. It is well settled that issues of land patents and land grants issued by governments are superior title. Wherefore, Supreme Court Rulings that superior title supersedes defective title. Yet this court is not willing to support any rights that Mr. Kareem may have between the insolvent lender and the mortgagor related to his title issue, even though AHM is soon to be insolvent. Therefore, AHM title impairment is an issue to be determined.

### Predatory Lending

From the beginning of Mr. Kareem's inquiry, came to the forum for basic fairness and truthfullness. With respect to all the evidence, testimonies, exhibits which supports predatory

lending and that the broker that AHM used and depended on its due diligence to conform to state banking and finance laws was founded guilty of past loan file violations and sanctioned, when Mr. Kareem states that this ruling is with multiple errors. It would have been better for the court to have granted a jury trial, than to overreach and favor the plan trustee. Additionally, it would have been more just for the parties to reach a court supervised settlement than to draw into questions the errors herein.

## Conclusion And Relief Sought

In summary, the Mr. Kareem asks the court to reconsider its ruling  and fact findings in part or in whole.

Mr.  Kareem is open to settle on issues for the sake of reaching an honorable conclusion. However, Mr. Kareem maintains there are many factual errors with the fact findings and the judgment as a matter of law. There are still outstanding issues under application laws unsatisfied or contested.

With respect to the PSA and Prospectus which are germane to the issue at hand, Claimant motions to the court to allow him the opportunity to bring in a certified copy of those documents for fairness on the issue and reconsideration. Mr. Kareem wants to ascertain the true chain of ownership to his Note and the right of TILA liability upon the assignee under 15 USC 1641 (c) and under Reg. Z 12 CFR §226.23 (3) et seq.

With respect to Exhibit 500, the exhibit was used to support that only one AHMA trust has a statutory registration in Delaware. Accordingly, Mr. Kareem requires proof of ownership under the Mortgage Notification Bill Also known as the Shelby-Boxer Amendment of the registration and physical address of AHMA Trust 2006-3. The Exhibit is material to the veracity that AHMH sold his note to a legal entity and that Mr. Kareem has not been given the true knowledge of the alleged Note Holder. Without, the knowledge of the owner to his note, this would leave Mr. Kareem prejudiced about his rights with any bona fide purchaser.

With respect to Exhibit 700, the exhibit directly related to the Broker's identification and role in breach of contract and lending laws on behalf of AHM. This was found during cross examination and  was made known at the trial. The court should admit it as admissible evidence to support Mr. Kareem's Claim of Predatory Lending and in support of the reconsideration or for the basis for a new trial.

With respect to Exhibit 900 through Exhibit 1100, the exhibits were entered to support testimony at trial to be accepted by the court and in support of this motion for reconsideration or alternatively new trial. It would be unjust for the court to consider testimony by Ms. Wanerka on compliance of AHMH loan using their Wiz Sentinel software audit and not allow Mr. Kareem the right to show discrepancies or inaccuracies by a counter program used by industry experts. If the court requires proof , then a hearing and be used for purposes of testimonies and cross-examination.

With respect to Exhibit 1200, it was entered to support Georgia's enforcement action on unlawful fiduciaries under OCGA 7-1-242. It has direct relevance to MERS action under the Security Instrument. The court is asked to admit the exhibit  in support of this motion for reconsideration or for a new trial on the facts.

With respect to Mr. Kareem's Judicial Notice about  his Georgia Historic Land Grant title, Mr. Kareem request the court to honor the relevance that the AHMH lien contains a deficient legal description and is unperfected as an operation lf law. Legal notice published in Georgia was given and made known to the Plan Trustee. The Plan Trustee made no attempt to contest the veracity of the perfected title. If this perfection of title renders security Lien moot, then Mr. Kareem shall consider that part of his just recoupment by a declare from this court. The court order must be reconsidered on this new evidence or alternatively a new trial on the matter.

Alternatively, Mr. Kareem seeks a new trial on the issue by adversarial proceeding.

Mr. Kareem notices the court that he intends to provide more supporting exhibits and Brief in Support within 10 days receipt of this motion.

**EXECUTED THIS DAY ON OR ABOUT JANUARY 15, 2013**

Hussain Kareem, Pro Se

**404-0907-0177 (Phone Line)**

Purposely Left Blank

## CERTIFICATE OF SERVICE

I, the undersign, certify that on or about January 15, 2013 I filed the foregoing document with the opposing counsel filed electronically with electronic signature and by certified mail, prepaid first class mail without using the electronic email of the counsel *to the following:*

Counsel for Debtors:

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Margaret Whiteman Greecher
Rodney Square
1000 North King Street
Wilmington, DE 19801
P 302.571.6753
F 302.576.3416
mgreecher@ycst.com Counsel for the Plan Trustee:


**HAHN & HAESSEN LLP**
Mark S. Indelicato
Edward L. Schnitzer
488 Madison Avenue
New York, N.Y. 10022
Tel: (212) 478-7200
**The Plan Trustee:**
Steven D. Stass
AHM Liquidating Trust
P.O. Box 10550
Melville, NY 11747

**EXECUTED THIS DAY ON JANUARY 15, 2013**

/S/

Hussain Kareem, Pro Se
2197 Carlysle Creek Drive
Lawrenceville, GA 30044
404-907-0177: Phone Line