IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ------------------------------------------------------------- x | | Chapter 11 |
| In re: | : | |
| | : | Case No. 07-11047 (CSS) |
| AMERICAN HOME MORTGAGE | : | |
| HOLDINGS, INC., a Delaware corporation, <u>et</u> <u>al.</u>,[1] | : | Jointly Administered |
| | : | **Ref. D.I. 9662** |
| Debtors. | : | |
| | : | |
| ------------------------------------------------------------- x | | |

**PLAN TRUSTEE'S OBJECTION TO PROTECTIVE CLAIM
OF FRED R. HODOVAL ROLLOVER IRA, PERSHING LLC,
<u>CUSTODIAN RECOGNIZED CLAIM NUMBER 1223571</u>**

Steven D. Sass, as liquidating trustee (the "<u>Plan Trustee</u>") for the Plan Trust

established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of*

*February 18, 2009* (the "<u>Plan</u>") in connection with the Chapter 11 cases of the above-captioned

debtors (the "<u>Debtors</u>"),[2] objects (the "<u>Objection</u>") to the *Protective Claim of Fred R. Hodoval,*

*Rollover IRA, Pershing LLC, Custodian, Recognized Claim Number 1223571* [D.I. 9662] filed

on or about January 5, 2011 (the "<u>Protective Claim</u>").  In support of this Objection, the Plan

Trustee states as follows:

## <u>BACKGROUND</u>

**A.     General Background**

1.      On August 6, 2007 (the "<u>Petition Date</u>"), each of the Debtors filed with

this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11

U.S.C. §§ 101-1532 (the "<u>Bankruptcy Code</u>").  The Debtors had ceased all or substantially all

business operations other than their mortgage loan servicing business (the "<u>Servicing Business</u>")

---

[1]      The Debtors in these cases, are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. f/k/a American Home Mortgage Servicing, Inc. ("<u>AHM SV</u>"); American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

[2]      Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

prior to the Petition Date.  Between the Petition Date and the Plan Effective Date (as hereinafter

defined), each Debtor managed its properties as a debtor in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases have been consolidated

for procedural purposes only and are being jointly administered pursuant to an order of this

Court.

2.      On October 30, 2007, this Court entered an order [D.I. 1708] (the "Bar

Date Order") establishing January 11, 2008 at 4:00 p.m. (ET) (the "Bar Date") as the final date

and time for filing proofs of claim against the Debtors' estates on account of claims arising, or

deemed to have arising pursuant to section 501(d) of the Bankruptcy Code, prior to the Petition

Date.

3.      The Plan was confirmed under section 1129 of the Bankruptcy Code on

February 23, 2009 (the "Confirmation Date").  The Plan became effective on November 30,

2010 (the "Plan Effective Date").

4.      Pursuant to the Plan, as of the Plan Effective Date, a plan trust (the "Plan

Trust") was established and all of the Debtors' assets, causes of action, claims, rights and

interests, succeeded, transferred and vested in the Plan Trust.  Steven D. Sass is the duly

appointed Plan Trustee for the Plan Trust.  The Plan Trustee is vested with the rights, powers,

and benefits set forth in the Plan, Confirmation Order, and Plan Trust Agreement, including the

rights of the Debtors and the Committee to object to claims for Sellers' Cure Amounts payable

from the Cure Escrow.

**B.      The Securities Class Action and the Protective Claim**

5.      Beginning on or about July 31, 2007, class action complaints alleging

violations of the federal securities laws on behalf of American Home common and/or preferred

2

stock were filed against certain of the Debtors[3] and their directors and officers (the "Individual Class Action Defendants") in the United States District Court for the Eastern District of New York (the "New York Court").  These actions were consolidated into Case No. 07-MD 1898 (TCP), along with another action pending in the United States District Court for the Eastern District of Virginia, and are hereinafter referred to collectively as the "Class Action."

6.    On August 5, 2009, the New York Court entered an Order Preliminarily Approving Settlements, which, among other things, set a deadline for filing proofs of claim in the Class Action (the "Class Action Bar Date") [Class Action D.I. 79].  The Class Action Bar Date was March 1, 2010.

7.    On January 14, 2010, the New York Court entered an Order Approving Plan of Allocation of Net Settlement Funds [Class Action D.I. 98], which incorporated certain settlement stipulations with the various Class Action defendants (also approved on the same day) [Class Action D.I. 95-97] and approved the proposed plan of allocation (the "Plan of Allocation").

8.    On or about January 5, 2011, Mr. Hodoval, through his attorney in fact, L. Tracy Teiger, filed his Protective Claim.  The Protective Claim is based "on purchases by the Claimant of shares in one or more of the Debtor corporations being, more particularly, a purchase of 26 shares on August 4, 2006, and a purchase of 470 shares, on May 9, 2007, for an aggregate purchase price of $10,795.60" and expressly references Mr. Hodoval's class action claim number (1223571) (the "Class Action Claim").

9.    On or about August 12, 2011, distribution checks from the Class Action were mailed to "Authorized Claimants."  Upon information and belief, Mr. Hodoval was an

---

[3]    The Debtors' bankruptcy automatically stayed any action commenced against the Debtors prior to the Petition Date, and class action complaints which were filed post-petition did not name the Debtors.  The consolidated amended class action complaint filed on June 4, 2008 did not name any of the Debtors as a defendant.

Authorized Claimant (as defined in the Plan of Allocation) and received a distribution from the

Class Action.

## OBJECTION

**A.    The Protective Claim Is Not Prima Facie Valid, Late-Filed, and
Appears to Be Duplicative of Mr. Hodoval's Class Action Claim.**

10.    The Protective Claim is not a properly filed proof of claim under section

502(b) of the Bankruptcy Code and Bankruptcy Rule 3001, and thus is not prima facie valid.

Moreover, the Protective Claim appears to be essentially a reiteration of Mr. Hodoval's Class

Action Claim, which was paid pursuant to the Class Action Plan of Allocation.

11.    While a properly filed proof of claim constitutes prima facie evidence of

the validity and amount of the claim, the claim must indeed be "properly filed."  Here, the

Protective Claim – a six paragraph pleading filed three years after the Debtors' Bar Date - is not

proper because it (i) fails to conform to the appropriate form; (ii) fails to attach any supporting

documentation; and (iii) is late-filed.[4]  *See* Bankruptcy Rule 3001(a) (requiring that a proof of

claim "conform substantially to the appropriate Official Form); Bankruptcy Rule 3001(c)(1)

(requiring that a claim based on a writing include a copy of the writing); Local Rule 3007-

1(d)(vi) (recognizing "no documentation" and late-filed objections to claims as non-substantive);

Bankruptcy Rule 3007(d)(4) (permitting omnibus objections for late filed claims), Local Rule

3007-1(iv) (identifying late-filed claim objections to be non-substantive).

12.     Moreover, a claim must allege "facts sufficient to support a legal liability

to the claimant" before it is entitled to any presumption of validity.  *See In re Allegheny Int'l,*

*Inc.* 954 F.2d 167, 173 (3d Cir. 1992).  Mr. Hodoval's limited statement that the claim is based

on the purchase of shares is insufficient as it (i) fails to identify any cause of action against or

---

[4]    Although the Protective Claim references an earlier claim made in accordance with the Bar Date Order, no
such claim exists on the claims register.   Upon information and belief, the "Recognized Claim" referenced in
paragraph 1 of the Protective Claim is Mr. Hodoval's Class Action Claim.

01:14173280.4

legal liability of the Debtors and/or (ii) fails to allege sufficient facts that form a basis for any legal liability.

13.    Instead, Mr. Hodoval expressly refers to the Protective Claim by his class action claim number.  The Plan Trustee believes that Mr. Hodoval has incorrectly combined these chapter 11 cases with the Class Action and has essentially filed a claim duplicative of his Class Action Claim.   Upon information and belief, Mr. Hodoval has already received a distribution from the Class Action for his class action claim, and thus no protection – here or otherwise – is necessary.

14.    Accordingly, the Plan Trustee respectfully requests that the Court enter an order disallowing in full and expunging the Protective Claim.

**B.    Even if the Protective Claim is Valid Against AHM Investment, It Should be Subordinated Pursuant to Section 510(b) of the Bankruptcy Code and Article 4.K of the Debtors' Plan**

15.    Even if the Protective Claim were not prima facie invalid, the Protective Claim arises from Mr. Hodoval's investment in AHM Investment and, thus, is subordinated pursuant to the Plan and section 510(b) of the Bankruptcy Code.  Under the Plan, Interests[5] in AHM Investment are classified in Class 2E.  Article 4.K. of the Plan provides that:

> Each of Classes 1D, 2D, 3D, 4D, 5D, 6D, 7D, 8D, 1E, 2D, 3E, 4E, 5E, 6E, 7E, and 8E, which are Impaired, consist of Subordinated Claims against all of the Debtors and Interests in all of the Debtors.
>
> Holders of Claims or Interests in Classes 1D, 2D, 3D, 4D, 5D, 6D, 7D, 8D, 1E, 2D, 3E, 4E, 5E, 6E, 7E, and 8E shall receive no distribution or dividend on account of such Claims or Interests.  The entry of the Confirmation Order shall act as an order approving and effecting the cancellation of all Interests (and all securities convertible or exercisable for or evidencing any other right in or with respect to the Interests) outstanding immediately prior to the Effective Date without any conversion thereof or distribution with respect thereto.
>
> Plan at Article 4.K.

---

[5]    Interest means, with respect to any Debtor, any "equity security" as such term is defined in Bankruptcy Code Section 101(16).  Interests shall also include, without limitation, all stock, partnership, membership interest, warrants, options, or other rights to purchase or acquire any equity interest in any Debtor.  Plan, Article 1.A.

01:14173280.4

16.     Subordinated Claim is defined in the Plan as:

> Any Claim (other than a Subordinated Trust Preferred Claim) that (i) is subordinate in right of payment to another Class of claims by (a) an agreement that is enforceable pursuant to § 510(a) of the Bankruptcy Code or (b) Order of the Bankruptcy Court pursuant to §§ 509(c) or 510(c) of the Bankruptcy Code, (ii) *arises from rescission of a purchase or sale of a security of any Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement of contribution allowed under §502 of the Bankruptcy Code on account of such a Claim*, or (iii) is for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages arising before the Petition Date, to the extent such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim.

Plan at Article 1.A. (emphasis added); see also 11 U.S.C. § 510(b) (providing for the subordination of claims for (i) rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, (ii) damages arising from the purchase or sale of such security, and (iii) reimbursement or contribution allowed under section 502 on account of any such claims).

17.     According to the Protective Claim, Mr. Hodoval's claim is based "on purchases by the Claimant of shares in one or more of the Debtor corporations being, more particularly, a purchase of 26 shares on August 4, 2006, and a purchase of 470 shares, on May 9, 2007, for an aggregate purchase price of $10,795.60." Thus, as set forth above, any claim Mr. Hodoval may have for damages arising from the purchase of AHM Investment is subordinated pursuant to the Plan and section 510(b) of the Bankruptcy Code. Additionally, Article 4.K. of the Plan provides that Interests in Class 2E shall not receive any distribution in these chapter 11 cases, and the entry of the Confirmation Order effected the cancellation of such Interests.

18.     Accordingly, Mr. Hodoval is not entitled to any distribution from the Plan Trust on account of his alleged Interest in AHM Investment, and any claims Mr. Hodoval may have for damages arising from such Interest are subordinated under the terms of the Plan and section 510(b) of the Bankruptcy Code.

6

**RESERVATION OF RIGHTS**

19.     Nothing contained in this Objection shall be deemed an admission by the Plan Trustee of liability on any claims against the Debtors' estates or the Plan Trust, and the Plan Trustee does not waive any rights against any party.  The Plan Trustee expressly reserves the right to amend, modify or supplement this Objection in response to any information obtained from Mr. Hodoval.

**CONCLUSION**

For the foregoing reasons, the Plan Trustee requests that this Court disallow and expunge the Protective Claim and grant the Plan Trustee such other and further relief as is just and proper.

Dated: October 11, 2013
　　　　Wilmington, Delaware

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Margaret Whiteman Greecher*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Joseph Orbach
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Plan Trustee*

01:14173280.4