**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------ x

In re:                                                    :    Chapter 11
                                                          :
AMERICAN HOME MORTGAGE                    :    Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                       :    Jointly Administered
a Delaware corporation, *et al.*,[1]                :
                                                          :    **Response Deadline:  November 6, 2013 by 4:00 p.m. (ET)**
                                         Debtors.    :    **Hearing Date:  November 13, 2013 at 11:00 a.m. (ET)**
                                                          :
------------------------------------------------------------------ x

**JOINT MOTION TO (I) APPROVE A SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019, (II) CERTIFY A CLASS AND COLLECTIVE OF CLAIMANTS FOR SETTLEMENT PURPOSES ONLY, APPOINT CLASS/COLLECTIVE COUNSEL AND A CLASS/COLLECTIVE REPRESENTATIVE, AND PRELIMINARILY APPROVE THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023, (III) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS/COLLECTIVE MEMBERS OF THE CLASS/COLLECTIVE CERTIFICATION AND SETTLEMENT, (IV) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (V) FINALLY APPROVE THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023 AND 29 U.S.C. § 216(b) AFTER THE FAIRNESS HEARING, AND (VI) GRANT RELATED RELIEF**

Steven D. Sass, as the liquidating trustee (the "Plan Trustee") of the trust (the "Plan Trust") established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), and prospective class and collective representative Zoa Woodward (*f/k/a* Zoa Nielsen) (the "Class Representative"), on behalf of herself and similarly situated prospective class and collective members (together with the Class Representative, the "Class Members"), by and through their respective counsel, hereby move this Court (the "Motion") pursuant to Section 105 of Title 11 of the United States

---

[1]    The Debtors in these cases are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.); American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable hereto by Bankruptcy Rule 7023, for the entry of orders:  (a) approving the *Settlement and Release Agreement* dated as of July 10, 2013 (the "Settlement Agreement" or the "Settlement")[2] among the Plan Trustee and the Class Members (collectively, the "Parties") pursuant to Bankruptcy Rule 9019, (b) certifying a class and collective for settlement purposes only, appointing the law firm of Jon M. Egan, PC as class/collective counsel ("Class Counsel"), appointing Zoa Woodward (*f/k/a* Zoa Nielsen) as Class Representative and preliminarily approving the Settlement Agreement pursuant to Civil Rule 23, (c) approving the form and manner of notice to Class Members of the conditional class and collective certification and settlement, (d) scheduling a fairness hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement pursuant to Civil Rule 23 and 29 U.S.C. §  216(b), (e) after the Fairness Hearing, finally approving the Settlement Agreement pursuant to Civil Rule 23 and 29 U.S.C. §  216(b), and (f) granting related relief.  In support of the Motion, the movants respectfully represent as follows:

## Preliminary Statement

1.      The Court should approve the Settlement Agreement.  The Class Representative has sued Debtor American Home Mortgage Corp. (the "AHM Corp.") under the federal *Fair Labor Standards Act* (the "FLSA") and Oregon's wage and hour laws for, *inter alia*, allegedly misclassifying the Class Members as "exempt" employees and denying them minimum wage and overtime compensation.  The Class Representative seeks to recover unpaid minimum and overtime wages as well as additional amounts for

---

[2] A true copy of the Settlement Agreement is attached hereto as **Exhibit 1**.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

liquidated damages, prejudgment interest and attorneys' fees and costs for herself and each

of the other Class Members.  In exchange for a full release for any wage-related claims

against AHM Corp., the Plan Trustee will grant the Class (defined below) an allowed

unsecured claim in the amount of $615,000, consisting of an allowed $95,000 priority claim

and an allowed $520,000 non-priority claim, distributions on account of which will be used

to fund a settlement fund for the Class Members.  This settlement fund will be paid to Class

Counsel's trust account in accordance with the terms of the Settlement Agreement and the

Plan.  Class Counsel, in turn, will distribute this settlement fund to the Class Members in

accordance with the terms of the Settlement Agreement.

2.      From the perspective of the Plan Trust and its beneficiaries, the

Debtors' creditors, the Settlement Agreement is fair and reasonable.

3.      While AHM Corp. believes that it properly classified the Class

Members as "exempt" employees and compensated them appropriately, the Class

Representative's wage and hour litigation would be protracted and expensive, and its

outcome uncertain.  Class Counsel estimates that the Class Members' damages could be as

high as several million dollars, plus attorneys' fees and costs, if the Class Representative

were to prevail.

4.      The Plan Trustee also asserts additional defenses to any liability

including that any uncompensated overtime worked by a Class Member was preliminary or

postliminary to such Class Member's principal activities, not authorized by or done for the

benefit of AHM Corp., or *de minimis* in nature.  Further, to the extent that the

aforementioned exceptions do not apply, the Plan Trustee asserts that it is entitled to a

reduction of any purported damages based on its good faith belief that all of its actions

complied with the provisions of the FLSA and Oregon's wage and hour laws.  However,

while the Plan Trustee vigorously disputes the allegations asserted against it, the Class

Representative has come forth with some evidence that she contends supports her claims.

Further, while AHM Corp. believes that it has strong defenses to class certification, there

are no assurances.  A trial on the applicability of AHM Corp.'s defenses, following

contested class and/or collective certification, would require both sides to engage in

extensive discovery at significant expense with inherently uncertain results at trial.  Further,

because the Class Representative's claims relate, at least in part, to wages during the one

hundred eight (180) day period prior to the commencement of AHM Corp.'s bankruptcy

case, there is a risk that any adverse judgment could result in a large priority claim pursuant

to 11 U.S.C. § 507.  In light of these factors, the Plan Trustee has determined that the

Settlement is well within the range of reasonableness.  Accordingly, the Court should

approve the Settlement under Bankruptcy Rule 9019.

5.      Given the risk factors described, the Settlement Agreement is also fair

and reasonable to the Class Members.  Without the settlement, the Class Members would

wait years for any payment on their alleged wage and hour claims, even if they prevail on

trial and appeal, and risk depletion of the Debtors' estates through continued administrative

and litigation costs.

6.      It is appropriate to certify the Class for settlement purposes and

appoint Class Counsel.  As set forth below, for purposes of settlement, the Parties agree that

the Class meets all of the requirements of Civil Rule 23 and 29 U.S.C. §  216(b), and that

Class Counsel is competent and experienced.

7.      The Parties request a two-step approval process to facilitate notice to

Class Members.  After preliminary approval of the Settlement Agreement and the form of

notice to be given to the Class Members, Class Counsel will provide notice ("Class Notice")

via first-class mail to each Class Member that describes the Settlement Agreement, informs

the Class Members of their right to opt out of the Class (or, with respect to their FLSA

claims, to opt in) or object to the Settlement Agreement and of the deadlines and procedures

for doing so.

8.    After service of the Class Notice, the Parties request that the Court

hold a Fairness Hearing to consider final approval of the Settlement Agreement.

9.    Based on the foregoing, and as set forth more fully below, the Parties

submit that the Court should approve the Settlement Agreement and the procedures

proposed in this Motion.

## Jurisdiction

10.    The Court has jurisdiction over the Motion under 28 U.S.C. § 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought

herein are Section 105 of the Bankruptcy Code, Bankruptcy Rule 9019, Civil Rule 23 and 29

U.S.C. §  216(b).

## Background

**A.    General Background**

11.    On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

12.    The Debtors' bankruptcy cases (the "Chapter 11 Cases") are being

jointly administered pursuant to Bankruptcy Rule 1005(b) as *In re American Home Mortgage*

*Holdings, Inc., et al.* under Case No. 07-11047 (CSS).

13.    On February 23, 2009, the Court entered an order confirming the Plan.

14.    On November 30, 2010 (the "Effective Date"), the Plan became effective, and pursuant to the terms thereof, that certain *Plan Trust Agreement* (the "Trust Agreement") was executed, thereby creating the Trust and appointing the Plan Trustee as trustee of the Trust.

15.    Pursuant to the Plan, as of the Effective Date, the Plan Trustee was authorized to, among other things, pursue and compromise causes of action on behalf of the Debtors and object to and compromise claims against the Debtors.

**B.    Oregon Wage Litigation**

16.    On August 14, 2006, the Class Representative filed with the United States District Court for the District of Oregon (the "Oregon District Court") a class-action complaint (the "Initial Complaint") commencing an action against AHM Corp. captioned *Zoa Nielsen, individually and on behalf of all others similarly situated, v. American Home Mortgage Corp.,* Case No. 6:06-CV-1161-AA (the "Nielsen Action"), on behalf of herself and purportedly on behalf of the putative Class Members, asserting that AHM Corp. violated Oregon wage and hour laws by allegedly (a) failing to pay the putative Class Members' wages contractually due to them, (b) failing to pay the putative Class Members' wages when such wages were due, and (c) wrongfully deducting fees from the putative Class Members' wages (collectively, the "Initial Claims").

17.    On March 26, 2007, the Class Representative filed a first amended complaint (the "Amended Complaint" and with the Initial Complaint, the "Complaint") asserting, in addition to the Initial Claims, that AHM Corp. also violated the FLSA and similar Oregon wage and hour laws by allegedly failing to pay the putative Class Members (a) the then-applicable federal and Oregon minimum wage and (b) one and a half times their regular rate of pay for those hours worked in excess of forty (40) hours in any given week

(the "<u>Additional Claims</u>" and together with the Initial Claims, collectively, the "<u>Class Claims</u>").

18.    On April 13, 2007, AHM Corp. filed its answer and affirmative defenses to the Complaint denying certain material allegations of the Complaint and asserted, among other defenses, that (a) class/collective treatment of the Class Claims was inappropriate because (i) the Class Representative was not similarly situated to the putative Class Members, (ii) the Class Representative was not an adequate representative of the putative Class Members, (iii) individual facts and issues predominate over common facts and law, and (iv) other methods available for resolving the Class Claims are superior; (b) the Class Claims were barred by the "outside sales" exemption; (c) the Class Claims were barred as they were preliminary or postliminary to the putative Class Members' principal activities or *de minimis* in nature; and (d) AHM Corp. acted at all times in good faith and had reasonable grounds for believing its conduct was not in violation of the FLSA or Oregon law.

19.    On August 9, 2007, AHM Corp. filed a *Suggestion of Bankruptcy* in the Nielsen Action resulting in a stay of those proceedings.

**C.    <u>Bankruptcy Claims</u>**

20.    On January 11, 2008, the Class Representative filed a proof of claim against the estate of AHM Corp., which claim is carried on the official claim registry maintained in the Chapter 11 Cases as claim no. 8932 (the "<u>Nielsen Claim</u>"), asserting the Class Claims individually and purportedly on behalf of the putative Class Members.

21.    On December 4, 2012, the Plan Trustee filed an objection to the Nielsen Claim asserting, *inter alia*, that (a) the Class Representative failed to move the Bankruptcy Court to exercise its discretion to extend the application of Civil Rule 23 ("<u>Rule

23") to the Nielsen Claim authorizing it to be filed on behalf of the putative Class Members; (b) applying Rule 23 to the Nielsen Claim is inconsistent with the goals of bankruptcy as it fails to meet each of the factors necessary for the Court to exercise such discretion; (c) the Nielsen Claim fails to meet the requirements for Rule 23 because, *inter alia*, (i) class treatment of the Class Claims is not superior to the claims adjudication process presently operating in the Chapter 11 Cases, (ii) individual facts and issues predominate over common facts and law, and (iii) the Class Representative may not adequately represent the putative Class Members; and (d) with respect to the Class Representative's individual claims, she failed to establish a *prima facie* claim (the "Plan Trust Objection").

22.    On December 27, 2012, the Class Representative filed a response to the Plan Trust Objection requesting that the Court (a) certify her claim as a class and/or collective claim; (b) grant her full or partial summary judgment on any issues that the Court deemed to have been adequately established; and/or (c) lift the automatic stay to allow her claim to be liquidated in the Oregon District Court, where discovery and litigation of this matter were already underway when AHM Corp. filed its bankruptcy petition.

D.    **Settlement Negotiations**

23.    In order to facilitate negotiations regarding the settlement of the Nielsen Action and all related claims, the Parties agreed to numerous adjournments of hearing on the Plan Trust Objection. During that time, the Parties informally exchanged a substantial amount of information regarding the facts and documents supporting the Plan Trustee's defenses, as well as payroll information and various damage analyses.

E.    **Essential Terms of the Proposed Settlement**

24.    In July 2013, the Parties reached a tentative agreement, the terms of which were later memorialized in the Settlement Agreement. In general, the Settlement

Agreement provides for the certification of a class and collective (together, the "Class")
compromised of all persons who (i) were employed by AHM Corp. in the State of Oregon at
any time between August 7, 2005 through August 6, 2007, (ii) held the position and
performed the duties of a loan officer, whether by that title or any other, (iii) were classified
by AHM Corp. as an "exempt" employee, and (iv) do not file a timely request to opt-out of
the Class; provided, however, that such a class and collective shall be certified for settlement
purposes only and without any admission on the part of the Plan Trust that class and/or
collective certification is proper.  The Settlement Agreement provides the Class with a total
allowed unsecured claim in the amount of six hundred fifteen thousand dollars ($615,000),
consisting of an allowed priority unsecured claim of ninety-five thousand dollars ($95,000)
and an allowed general unsecured claim of five hundred twenty thousand dollars
($520,000), against the estate of AHM Corp. in settlement of the Class Claims.  The
Settlement Agreement provides that the distributions on account of these allowed claims
will be made to the trust account of Class Counsel concurrently with distributions to holders
of the same priority claims pursuant to the Plan.  Class Counsel will administer the
distribution of these funds to the Class Members on an individual basis.  The essential terms
of the Settlement Agreement are as follows:[3]

    a.   Class Certification; Class Counsel; Class Representative.

        i.   Class Certification.  Upon execution of this Settlement Agreement, the
Parties stipulate and agree to define and certify a class and collective
(together, the "Class") in connection with the Nielsen Litigation and the
Motion, comprised of all persons who (i) were employed by AHM Corp. in
the State of Oregon at any time between August 7, 2005 through August 6,
2007, (ii) held the position and performed the duties of a loan officer,
whether by that title or any other, (iii) were classified by AHM Corp. as an

---

[3] This summary is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent that there are any inconsistencies between this summary and the terms and the provisions of the Settlement Agreement, the Settlement Agreement shall control.

"exempt" employee, and (iv) do not file a timely request to opt-out of the Class; provided, however, that such a class and collective shall be certified for settlement purposes only and without any admission on the part of the Plan Trust that class and/or collective certification is proper.

    ii.   Class Counsel.  Jon M. Egan, PC shall be appointed as counsel ("Class Counsel") for the Class created under this Settlement Agreement.

   iii.   Class Representative.  Zoa Woodward (who at the time of the commencement of the Nielsen Action and the filing of the Nielsen Claim was named Zoa Nielsen) shall be appointed as Class Representative for the Class created under this Settlement Agreement.

b.   The Settlement Fund:  The Nielsen Claim shall be settled hereby and as provided herein and deemed liquidated in the gross amount of six hundred fifteen thousand dollars ($615,000).  The now-liquidated Nielsen Claim shall be deemed to be filed on behalf of the Class and allocated as follows: (a) an allowed priority unsecured claim in the amount of ninety-five thousand dollars ($95,000) and (b) an allowed non-priority unsecured claim in the amount of five hundred twenty thousand dollars ($520,000), against the estate of AHM Corp. and treated in accordance with the terms of the Plan (such Plan distributions on account of the Nielsen Claim, collectively, "Settlement Fund").  The Settlement Fund represents the maximum amount that the Plan Trust will pay pursuant to this Settlement, inclusive of the allocation of the Settlement Fund to Class Members, Class Counsel's Fees, the Service Payment, settlement expenses and any tax obligations, including, but not limited to, FICA and FUTA taxes on the Settlement Fund disbursements, if any.  The Plan Trust shall not be called upon or required to contribute additional monies above the Settlement Fund under any circumstance whatsoever.

c.   Distribution of the Settlement Fund shall be made to Class Counsel's attorney trust account pursuant to the Plan.  Distribution of the priority component of the Settlement Fund shall be made by the Plan Trust only when the Plan Trust makes distributions to holders of priority unsecured claims, and distribution of the non-priority component of the Settlement Fund shall be made by the Plan Trust only when the Plan Trust makes distributions to holders of non-priority unsecured claims.

d.   Each net Settlement Fund payment (i.e., after being first reduced by Class Counsel's Fees and accrued expenses and the Service Payment to be made to the Class Representative) shall be allocated to the individual Class Members as calculated by Class Counsel in accordance with the terms of this Agreement; provided, however, that no such individual allocation shall exceed the maximum priority claim allowed pursuant to Section 507 of the Bankruptcy Code after first taking into account any and all other allowed priority claims of, and/or other priority distributions made to, such Class Members.

e.   Class Counsel shall calculate the percentage amount of the aggregate net Settlement Fund that will be distributed to each Class Member on an individualized basis in the following manner.  The net Settlement Fund will be allocated to each Class Member according to the following formula:

i. A percentage of the net priority payment will be distributed to each Class Member equal to the number of days that Class Member worked during the priority period divided by the total number of days worked by all of the Class Members during the priority period (all calculations to be performed using the information contained in Exhibit A).

ii. A percentage of the net non-priority payment will be distributed to each Class Member equal to the number of days that Class Member worked during the non-priority period divided by the total number of days worked by all of the Class Members during the non-priority period (all calculations to be performed using the information contained in Exhibit A).

f. Class Counsel is directly awarded attorney fees and reimbursement of accrued expenses in this Settlement Agreement; such award is directly to Class Counsel and no Class Member shall be deemed, by any taxing authority or otherwise, to have (or have ever had) any ownership interest therein. Specifically, Class Counsel is awarded all accrued expenses, not to exceed ten thousand dollars ($10,000.00), in addition to attorneys' fees in the amount of one third (1/3) of each gross Settlement Fund claim identified in paragraph 3(a) above, as payment in full for Class Counsel's work in connection with this matter (collectively, "Class Counsel's Fees"). This agreed one third (1/3) figure is used for ease of calculation purposes and does not represent a contingent-fee recovery; instead, the one third (1/3) figure is awarded in lieu of the lodestar and/or other statutory fee-shifting attorney fees to which Class Counsel asserts he would otherwise be entitled under a successful resolution of the underlying claims via litigation. Class Counsel's Fees will be distributed contemporaneously with each distribution of the Settlement Fund payments to Class Members.

g. Service Payment to Class Representative. The Class Representative shall receive a one-time payment of seven thousand five hundred ($7,500) for her service in this matter, the time and effort she has contributed to the case, her participation in discovery, and the financial risks she undertook by asserting statutory claims on behalf of the Class Members (the "Service Payment"). Class Counsel shall distribute this Service Payment to the Class Representative from the priority component of the Settlement Fund.

h. Issuance of Notice of Class Certification and the Settlement: Class Counsel shall mail the Class Notices by first-class mail to the Class Members at the addresses listed on **Exhibit A** indicating:

- that each Class Member has the right to opt out of the Class and preserve all of his or her rights against the Debtors, if any, including the Released Claims (all such Class Members timely electing to opt out of the Class, the "Opt-Outs"), and the procedure for doing so;

- that the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

- that, if so approved, the Settlement shall be effective as to all Class Members who did not timely elect to opt out of the Class;

- the projected percentage of the aggregate net Settlement Fund that such Class Member would receive under the Settlement;

- the proposed Class Counsel's Fees and Class Representative's Service Payment;

- that such Class Member has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing; and

- that upon Final Approval (for Non-FLSA Claims) and/or negotiation of his or her settlement check (for FLSA Claims), all Released Claims (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

i.  Distribution of Residual Funds:  In the event that there are any Settlement Funds remaining for any reason, including settlement checks which are not deposited or negotiated within six (6) months of their date of issuance (the "Residual Funds"), such Residual Funds will be (i) first, used to make Settlement Fund distributions to additional Class Members, if any, that may be identified after Class Counsel has made initial distributions of the Settlement Fund (the "Additional Class Members"), and (ii) if any Residual Funds remain after the Settlement Fund distributions to Additional Class Members, then second, donated to The National Employment Law Project, a 501(c)(3) non-profit organization dedicated to employee rights.

j.  The Waiver and Release of any Released Claims by All Class Members if the Settlement Becomes Effective:

i.  Upon the Final Approval Date, the Class Representative and her respective predecessors, successors and assigns, and the Plan Trustee, in his capacity as such, the Plan Trust, the Debtors and their estates, and each of their respective predecessors, successors and assigns (collectively, the "Plan Trust Releasing Parties"), shall be deemed to have settled, released and extinguished completely any and all claims that they have, had, might have or might have had against each other.

ii.  Upon the Final Approval Date, all other Class Members and their respective predecessors, successors and assigns, and the Plan Trust Releasing Parties shall be deemed to have settled, released and extinguished completely any and all Non-FLSA Claims that they have, had, might have or might have had against each other.

iii.  Upon any Class Member's negotiation of his or her settlement check, that Class Member shall be deemed to have affirmatively opted in to the collective and this Settlement, and that Class Member and his or her respective predecessors, successors and assigns, and the Plan Trustee Releasing Parties shall thereby be deemed to have settled, released and extinguished completely any and all FLSA Claims that they have, had, might have or might have had against each other.

iv.  Within fifteen (15) business days of the Final Approval Date, the Class
Representative shall file a joint motion to dismiss the Nielsen Action with
prejudice in the Oregon District Court.

**Relief Requested**

25.    By this Motion, the Parties request that the Court enter orders,

substantially in the form annexed hereto as **Exhibits 3** and **4**:  (a) authorizing the Parties to

enter into the Settlement Agreement; (b) certifying the Class for settlement purposes only,

appointing Class Counsel and the Class Representative and preliminarily approving the

Settlement Agreement; (c) approving the form and manner of Class Notice; (d) scheduling a

Fairness Hearing to consider final approval of the Settlement Agreement; and (e) approving

the Settlement Agreement on a final basis.

**A.    The Court Should Approve the Settlement
Pursuant to Bankruptcy Rule 9019**

26.    The Third Circuit has emphasized that "to minimize litigation and

expedite the administration of a bankruptcy estate 'compromises are favored in

bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9

COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)).  Bankruptcy Rule 9019 authorizes a

bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R.

BANKR. P. 9019(a), and Section 105 of the Bankruptcy Code empowers a court to issue any

order that is "necessary or appropriate". 11 U.S.C. § 105(a).

27.    "[T]he authority to approve a compromise settlement is within the

sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92

(Bankr. D. Del. 2005).  When exercising such discretion, the bankruptcy court must

determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the

estate." *Id.*

28.    The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *See Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)).  Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983).  In this respect, it is unnecessary for the court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *Martin*, 212 B.R. 316, 319 (8th Cir. B.A.P. 1997)).

### 1.    Standard for Approval of the Settlement Agreement

29.    Courts consider the following four factors when determining whether a settlement is in the best interest of the estate: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (d) the paramount interest of the creditors and a proper deference to their reasonable opinions. *See Martin*, 91 F.3d at 393.

### a.    Application of the Martin Factors

#### i.    *The Results of a Trial are Uncertain and the Litigation is Complex*[4]

30.    The results of a trial are uncertain and the litigation is complex.  The Nielsen Action involves the application of numerous legal issues regarding the FLSA and Oregon's wage and hour laws to complex facts.  These issues include, *inter alia*, (a) whether

---

[4] This section discusses both the first and third *Martin* factors – uncertainty of success and complexity of litigation – because in this case these issues are intertwined.  The second factor – difficulty with collection – does not apply because Debtor AHM Corp. is the defendant.

AHM Corp. properly classified the Class Members as "exempt" employees; (b) whether

AHM Corp. is entitled to a defense of "good faith"; (c) whether AHM Corp.'s actions were

willful; (d) the number of uncompensated hours worked by the Class Members; (e) the

computation of the amount of damages; (f) whether attorneys' fees are to be awarded to the

Class Members if they prevail; and (g) whether and to what extent the alleged damages are

entitled to wage priority under 11 U.S.C. § 507(a)(4).

31.    In addition, continued litigation would be costly and time-consuming

and would expose the estate to significant litigation risks.  Class Counsel has asserted that

damages could be as high as several million dollars, a portion of which may be entitled to

wage priority treatment.  The Settlement, on the other hand, provides the Class with a total

allowed unsecured claim of six hundred fifteen thousand dollars ($615,000), consisting of an

allowed priority unsecured claim of ninety-five thousand dollars ($95,000) and an allowed

general unsecured claim of five hundred twenty thousand dollars ($520,000) against the

estate of AHM Corp.  As such, the Class Members will share the credit risk equally with the

estates' unsecured creditors in that they will receive each respective portion of the

Settlement Fund contemporaneously with distributions from the Plan Trust on account of

similarly classified unsecured claims.  The Settlement resolves the Nielsen Litigation and all

related claims, thereby eliminating the accrual of what would undoubtedly be substantial

litigation expenses.  Accordingly, the Parties respectfully submit that approval of the

Settlement is warranted.[5]

---

[5] In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

ii.    *The Settlement is in the Best Interest of Creditors and the Estates*

32.    The Plan Trustee submits that the Settlement is in the best interest of the Debtors' creditors and the estate.  "When determining whether a compromise is in the best interest of the estate, the Court must 'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" *Key3Media Group*, 336 B.R. at 93 (quoting *Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))).  To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel Entm't Grp.*, 222 B.R. 243 (D. Del. 1998) (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424).

33.    Here, a potential multi-million dollar claim, a portion of which may be entitled to priority treatment as a wage claim pursuant to 11 U.S.C. § 507, is being resolved with an allowed unsecured claim of six hundred fifteen thousand dollars ($615,000).  The Settlement is comprehensive and includes the Plan Trust's portion of payroll taxes, if any, administration expenses and attorney's fees and costs.  Moreover, as set forth above, the Settlement Agreement spares the Plan Trust the significant expense and uncertainty associated with the litigation of the myriad of issues in the Nielsen Litigation.  Since the Class needs to be certified and there would be material costs to the Plan Trust associated with administering any distributions to Class Members, who are former employees, the Plan Trustee believes that there will be a material savings in time and expense by making an all-inclusive, lump-sum distribution to Class Counsel to resolve these claims.

34.    Accordingly, in light of each of the *Martin* factors, the Settlement Agreement should be approved.

**B.** **The Court Should Certify the Class and Appoint Class Counsel and the Class Representative as a Class Pursuant to Rule 23 and a Collective Pursuant to 29 U.S.C. § 216(b)[6]**

**1.** **Class Certification pursuant to Rule 23**

35.     Where the Court has not already certified a class, the Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23. *See Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3d Cir. 2005).

36.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618; *accord Community Bank*, 418 F.3d at 299.  "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification." *Community Bank*, 418 F.3d at 299; *see General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only … the court preserves the defendant's ability to contest certification should the settlement fall apart.").

37.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Amchem*, 521 U.S. at 621.

**a.** **The Court Should Conditionally Certify the Settlement Class**

38.     To be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. *See* FED.

---

[6] The positions taken in this section of the Joint Motion are those of Class Counsel only.  The Plan Trustee takes no position on these matters other than to support approval of the Settlement Agreement and class/collective certification for purposes of settlement only.  In the event that the Settlement Agreement does not become effective, the Plan Trustee reserves his right to contest class/collective certification.

R. CIV. P. 23; *Community Bank*, 418 F.3d at 302.  In addition, the class must satisfy the

requirements of Rule 23(b)(1), (2) or (3).  In this case, the Parties have agreed to request

conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions."

*Id*.  In order to satisfy a class under Rule 23(b)(3), the court must make two additional

findings, predominance and superiority.  That is, "[i]ssues common to the class must

predominate over individual issues, and the class device must be superior to other means of

handling the litigation." *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa. 2008).

The proposed settlement Class meets each of the foregoing elements.

     **i.**     **The Rule 23(a) Criteria**

     39.     Numerosity requires a finding that the putative class is "so numerous

that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).  "No single magic number exists satisfying the

numerosity requirement." *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 1989).

However, the Third Circuit "typically has approved classes numbering 40 or more." *Gates*,

248 F.R.D. at 440 (*citing Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

     40.     The proposed class of seventy-seven (77) Class Members meets the

numerosity requirement and the Class is sufficiently numerous so as to make joinder of all

Class Members impractical.  Accordingly, the Court should find that the numerosity

requirement has been met.

     41.     The commonality requirement requires existence of at least one

question of law or fact common to the Class. *See* FED. R. CIV. P. 23(a)(2); *Johnston v. HBO*

*Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low, *see*

*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007), and does not require "an

identity of claims or facts among class members." *Behrend*, 245 F.R.D. at 202.  Further, the

existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.

42.    Here, fundamental issues of law and fact regarding classification as an "exempt" employee, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members.[7]

43.    Typicality requires that the "named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (*quoting Baby Neal*, 43 F.3d at 55); *see* FED. R. CIV. P. 23(a)(3). "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236. "Factual differences will not render atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-96 (*quoting Baby Neal*, 43 F.3d at 55).

44.    The Class Representative does not allege that she was singled out; instead, she alleges that she suffered harm as a result of the same conduct that allegedly injured the other Class Members -- that she was misclassified as an "exempt" employee by AHM Corp. and denied minimum wage and overtime compensation. Accordingly, the Court should find that the typicality requirement is met.

45.    With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates*, 248 F.R.D. at

---

[7] Class Counsel recognizes that the amount of damages is particular to each Class Member. However, individualized damage calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same legal theory." *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001).

46. The Court should find that the Class Representative and Class Counsel adequately represent the interests of the Class Members. As demonstrated by the *Declaration of Jon M. Egan*, annexed hereto as **Exhibit 2**, Class Counsel is well qualified and experienced to represent the Class Members. Class Counsel has extensive experience in Oregon class/collective wage and hour litigation having acted as class counsel in at least fourteen (14) such actions.

## ii.    The Rule 23(b)(3) Criteria

47. Common questions of law and fact predominate over the individual issues (which appear to be limited to each Class Member's damages). Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09. The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes." *Community Ban*k, 418 F.3d at 309.

48. Just as typicality exists, predominance also exists. All of the claims arise from alleged violations of the FLSA and Oregon wage and hour law resulting from

AHM Corp.'s classification of the Class Members as "exempt" employees. Accordingly, the Court should find that the predominance requirement is met.

49.    Civil Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443. In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

50.    Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *see Gates*, 248 F.R.D. at 443. However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *See Gates*, 248 F.R.D. at 443.

51.    Here, a class action is superior to individual actions. The FLSA itself notes the propriety of collective treatment for FLSA litigation. *See* 29 U.S.C. § 216(b) (authorizing a FLSA claimant to sue on his/her own behalf "and other employees similarly situated."). The nature of the FLSA and Oregon's wage and hour laws makes it perfectly suited to class treatment in many cases, such as this one, as liability depends on issues of law and fact that affect an entire large group of employees in the same way. Next, as shown by **Exhibit A** to the Settlement Agreement, the amount of each Class Member's claim is relatively small. Individually, there is little incentive in controlling the prosecution of

separate actions. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class

action mechanism is to overcome the problem that small recoveries do not provide the

incentive for any individual to bring a solo action prosecuting his or her rights.  A class

action solves this problem by aggregating the relatively paltry potential recoveries into

something worth someone's (usually an attorney's) labor." (quotation and citation

omitted)).  Further, it is appropriate that all the claims against the Debtors arising from the

Class Representative's allegations should be concentrated in this Court.  In addition,

determining the claims of some Class Members, but not all, could prejudice the claims of

the remaining Class Members.  Accordingly, the Court should find that the superiority

element is met.

52.     Based on the foregoing, the Court should certify the Class for

settlement purposes, appoint Zoa Woodward (*f/k/a* Zoa Nielsen) as the Class

Representative and the law firm of Jon M Egan, PC as Class Counsel.

## 2.   Collective Certification pursuant to 29 U.S.C. § 216(b)

53.     Courts use a two-step analysis in determining whether a suit brought

under 29 U.S.C. § 216(b) should proceed as a collective action. *See Zavala v. Wal-Mart Stores,

Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).  At the initial stage, the plaintiff bears the burden of

producing evidence "beyond pure speculation, of a factual nexus between the manner in

which the employer's alleged policy affected her and the manner in which it affected other

employees" under a "modest factual showing" standard. *Symczyk v. Genesis Healthcare Corp.*,

656 F.3d 189, 193 (3d Cir. 2011).  In the final step, the plaintiff bears the burden of

establishing that the opt-in plaintiffs are similarly situated to the named plaintiffs by a

preponderance of evidence. *See Zavala*, 691 F.3d 537.  Courts consider all relevant factors

and make a factual determination on a case-by-case basis, including: "whether the plaintiffs

are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Id.*

54.    The Class meets all of the requirements for certification as a collective. All of the Class Members were employed under the title or performed the duties of a loan officer in the sales division of AHM Corp.  Each Class Member had similar circumstances of employment and was compensated with a commission-based salary.  The Class Members advance the same wage and hour claims arising from a common policy of AHM Corp. which classified them as "exempt" employees and denied minimum wage and overtime compensation.   Each seeks monetary damages from AHM Corp.

55.    For the foregoing reasons, as well as those set forth in paragraphs 40 through 51 *supra*, the Court should certify the Class for settlement purposes, appoint Zoa Nielsen as the Class Representative and the law firm of Jon M Egan, PC as Class Counsel.

**C.    The Court Should Preliminarily Approve the Settlement Agreement Pursuant to Civil Rule 23**

56.    After class certification, approval of a class settlement generally requires two hearings:  one preliminary approval hearing and one final "fairness" hearing. *See Gates v. Rohm & Hass Co.,* 248 F.R.D. 434, 442-43 (E.D. Pa. 2008).  Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members.  Because the Settlement Agreement in this case will be preliminarily approved pursuant to this Motion, notice of the conditional class certification and proposed settlement can be combined in one notice. *See id.* at 445.  At the subsequent fairness hearing, class members may formally object to the proposed settlement. *See id.* at 439.

57.     At preliminary approval, the Court is not bound to final approval of the Settlement.  Rather, the Court makes a determination that "there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Professional Billing & Mgmt. Servs., Inc.,* No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D. N.J. Nov. 21, 2007)). Specifically, courts consider four factors:  (1) whether the negotiations occurred at arm's length; (2) whether there was sufficient discovery; (3) whether the proponents of the settlement are experienced in similar litigation; and (4) whether any, and what percentage, of the class object to the settlement. *See In re General Motors Corp. Pick Up Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785-86 (3d Cir. 1995).  However, when class certification is sought in conjunction with preliminary approval, then class member objections are not relevant. *See Gates*, 248 F.R.D. at 444.

58.     The Settlement has no obvious deficiencies and falls well within the range of reason.  In addition, each of the above factors favor preliminary approval because the Settlement was negotiated in good faith and at arm's length, significant discovery occurred and the Parties exchanged a significant amount of information during their negotiations, and counsel for each of the Parties have the experience and skill to both vigorously litigate the Class Claims and to determine when and to what extent settlement is appropriate.

59.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

D.    **The Court Should Approve the Form and
      Manner of the Proposed Notice of the Settlement**

60.    Civil Rule 23(c)(2)(B) provides:

For any class certified under Rule 23(b)(3), the court must
direct to class members the best notice that is practicable under
the circumstances, including individual notice to all members
who can be identified through reasonable effort.  The notice
must clearly and concisely state in plain, easily understood
language: (i) the nature of the action; (ii) the definition of the
class certified; (iii) the class claims, issues, or defenses; (iv) that
a class member may enter an appearance through an attorney if
the member so desires; (v) that the court will exclude from the
class any member who requests exclusion; (vi) the time and
manner for requesting exclusion; and (vii) the binding effect of
a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

61.    In addition, Rule 23(e) requires that all members of the class be

notified of the terms of any proposed settlement.  *See* FED. R. CIV. P. 23(e).  The Rule 23(e)

requirement is "designed to summarize the litigation and the settlement and to apprise class

members of the right and opportunity to inspect the complete settlement documents, papers,

and pleadings filed in the litigation." *Krell v. Prudential Ins. Co. of America (In re Prudential)*,

148 F.3d 283, 326-27 (3d Cir. 1998).

62.    The proposed Class Notice, which is attached as __**Exhibit C**__ to the

Settlement Agreement, will be served by Class Counsel upon each Class Member.  Class

Counsel proposes that within ten (10) business days following entry of the order certifying

the Class for settlement purposes and preliminarily approving the Settlement Agreement,

Class Counsel will serve the Class Notice substantially in the form attached to the

Settlement Agreement, upon each Class Member at the last known address of each Class

Member according to the Debtors' books and records (or as updated by Class Counsel's

searches for current addresses or as may otherwise be determined by the Parties) via First-Class U.S. Mail.

63.     The Class Notice includes each of the facts required by Rule 23(c)(2)(B).  The Class Notice also outlines the terms of the Settlement, including the attorneys' fees and costs proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy of the pleadings in the Nielsen Action and a copy of the Settlement Agreement.  The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs each Class Member of their right to appear at the Fairness Hearing, and describes the procedure for opting out of the Class or objecting to the Settlement.  Finally, the Class Notice will contain a personalized attachment for each Class Member setting forth the projected percentage of the aggregate net Settlement Fund that such Class Member would receive under the Settlement.  Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**E.**     **The Court Should Grant Final Approval of the Settlement at the Fairness Hearing Pursuant to Rule 23 and 29 U.S.C. § 216(b)**

**1.**     **Final Approval pursuant to Rule 23**

64.     The Parties request that the Court set a date for the Fairness Hearing that, subject to the Court's calendar, would be heard no sooner than the earliest date for entry of a binding order under 28 U.S.C. § 1715, i.e., no earlier than ninety (90) days after service of notice of the Motion pursuant to the Class Action Fairness Act.  At the Fairness Hearing, the Court should finally approve the Settlement.

65.     Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." FED. R. CIV. P. 23(e).  Final approval of a settlement pursuant to Rule 23(e) turns on

whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). In making this inquiry, the Court must analyze "the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

66.     The Third Circuit has held that the following nine (9) factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate under Rule 23(e): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

67.     The following *Girsh* factors strongly support approval of the Settlement Agreement.

- Litigation will be complicated, protracted and expensive.

- The Class Representative supports the Settlement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement and will not object to it.

- The Settlement was reached after the essential facts had been thoroughly investigated by Class Counsel through fact discovery and disclosures by the Plan Trustee's counsel.

- The risk that the Class Representatives would be unable to establish liability was present because of the numerous defenses asserted by the Debtor-Defendant.

- The risk that the Class Representative would be unable to establish damages was high because of the absence of documentation of hours worked.

- The risk that the Class Representative would be unable to maintain a class action to trial was high because there was a possibility that the Bankruptcy Court would not exercise its discretion to extend the application of Rule 23 to the Nielsen Claim, thereby foreclosing the possibility of a class action in the first instance.

- The Settlement is reasonable when considered in light of the best recovery because while the asserted damages are higher, each Class Member would be required at trial to establish his/her damages with evidentiary proof of the work that was performed with no or less than the statutory minimum compensation. The Settlement, on the other hand, provides the Class Members with a guaranteed recovery alleviating them of that burden.

- The Settlement is particularly reasonable given the risks of litigation, which are normally very high but here, in the context of bankruptcy, are even higher because of the risk, among others, that the Bankruptcy Court would not extend the application of Rule 23 to the Nielsen Claim in the first instance.

68. Based on the foregoing, the Court should finally approve the Settlement Agreement under Rule 23.

**2.    <u>Final Approval pursuant to 29 U.S.C. § 216(b)</u>**

69. The Class Members have also asserted the Class Claims arising under the FLSA as a collective action. FLSA collection actions do not implicate that same due process concerns as an action under Rule 23 because "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984). "Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Beckman v. Keybank, N.A.*, 12-civ-7836, 2013 U.S. Dist. LEXIS 60894, at *18 (Apr. 29, 2013 S.D.N.Y.). "[C]ourts regard the adversarial nature of a litigated FLSA case to be an

adequate indicator of the fairness of the settlement." *Id.*  As such, "[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Id.*

70.     As set forth in paragraphs 69 through 72 *supra*, the Settlement reflects a reasonable compromise of a clear and actual dispute that resulted from vigorous arm's length negotiations and is supported by experienced counsel.  In light of the foregoing, the Settlement is fair and reasonable and should be finally approved by the Court pursuant to 29 U.S.C. §  216(b).

### Notice

71.     Bankruptcy Rule 2002 requires that the Plan Trustee give all creditors not less than twenty (20) days' notice of "the hearing on approval of a compromise or settlement of a controversy unless the court for cause shown directs that the notice be not sent…" FED. R. BANKR. P. 2002(a)(3).

72.     The Parties propose that notice, together with a copy of this Motion (exclusive of the list of individual employees), be provided to: (i) the Office of the United States Trustee for the District of Delaware, and (ii) all parties which have requested notice pursuant to Bankruptcy Rule 2002.  In order to protect the privacy of the Debtors' former employees, the Parties have filed contemporaneously herewith a separate motion seeking authority to submit the employee list annexed to the Settlement Agreement as **Exhibit A** under seal.  In light of the nature of the relief requested, the Parties submit that no other or further notice need be given.

### No Prior Request

73.     No previous application for the relief sought herein has been made to this or any other Court.

## Conclusion

WHEREFORE, the Parties respectfully request that the Court enter orders, substantially in the form of the proposed orders annexed hereto as **Exhibits 3** and **4**: (i) authorizing the Parties to enter into the Settlement Agreement; (ii) certifying the Class for settlement purposes only; (iii) appointing Class Counsel and the Class Representative and preliminarily approving the Settlement; (iv) approving the form and manner of Class Notice; (v) scheduling a Fairness Hearing; (vi) approving the Settlement Agreement on a final basis; and (vii) granting such other relief as the Court deems necessary and appropriate.

Dated:  October 23, 2013

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

JON M. EGAN, PC

*/s/ Sean M. Beach*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Patrick A. Jackson (No. 4976)
Michael S. Neiburg (No. 5275)
1000 North King Street
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*/s/ Jon M. Egan*
Jon M. Egan
240 Sixth Street
Lake Oswego, Oregon 97034
Telephone: (503) 697-3427
Facsimile: (866) 311-5629

*Proposed Counsel for the Prospective Class/Collective Members*

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Jeffrey Zawadzki
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Plan Trustee*