## EXHIBIT 1

## SETTLEMENT AGREEMENT

SETTLEMENT AND RELEASE AGREEMENT

between

ZOA WOODWARD (*F/K/A* ZOA NIELSEN), ON BEHALF OF HERSELF AND AS
CLASS REPRESENTATIVE ON BEHALF OF THE OTHER SIMILARLY SITUATED
CLASS MEMBERS AND AS COLLECTIVE REPRESENTATIVE ON BEHALF OF
THE OTHER SIMILARLY SITUATED COLLECTIVE MEMBERS,

and

STEVEN D. SASS, IN HIS CAPACITY AS THE TRUSTEE FOR THE PLAN TRUST
ESTABLISHED PURSUANT TO THE CONFIRMED CHAPTER 11 PLAN OF
LIQUIDATION OF AMERICAN HOME MORTGAGE HOLDINGS, INC. AND ITS
AFFILIATED DEBTORS

Dated as of July 10, 2013

## SETTLEMENT AND RELEASE AGREEMENT

This *Settlement and Release Agreement*, dated as of July 10, 2013 (this "Settlement Agreement" or "Settlement"), is entered into by and between Steven D. Sass, in his capacity as the liquidating trustee (the "Plan Trustee") of the trust (the "Plan Trust") established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") of American Home Mortgage Holdings, Inc. (Case No. 07-11047), American Home Mortgage Investment Corp. (Case No. 07-11048), American Home Acceptance, Inc. (Case No. 07-11049), AHM SV, Inc. (*f/k/a* American Home Mortgage Servicing, Inc.) (Case No. 07-11050), American Home Mortgage Corp. (Case No. 07-11051) ("AHM Corp."), American Home Mortgage Ventures LLC (Case No. 07-11052), Homegate Settlement Services, Inc. (Case No. 07-11053) and Great Oak Abstract Corp. (Case No. 07-11054) (collectively, the "Debtors" and with respect to their bankruptcy cases, the "Chapter 11 Cases"), on the one hand, and Zoa Woodward (*f/k/a* Zoa Nielsen) (the "Class Representative"), on behalf of herself and on behalf of similarly situated class and collective members (together with the Class Representative, the "Class Members"), on the other hand. The Plan Trustee and the Class Members are collectively referred to herein as the "Parties," or, as to each, a "Party."

## RECITALS

**WHEREAS**, on August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court") initiating the Chapter 11 Cases which are being jointly administered as *In re American Home Mortgage Holdings, Inc., et al.* under Case No. 07-11047 (CSS);

WHEREAS, prior to the Petition Date, on August 14, 2006, the Class Representative filed with the United States District Court for the District of Oregon (the "Oregon District Court") a class-action complaint (the "Initial Complaint") commencing an action against AHM Corp. captioned *Zoa Nielsen, individually and on behalf of all others similarly situated, v. American Home Mortgage Corp.,* Case No. 6:06-CV-1161-AA (the "Nielsen Action"), on behalf of herself and purportedly on behalf of the putative Class Members, asserting that AHM Corp. violated Oregon wage and hour laws by allegedly (a) failing to pay the putative Class Members' wages contractually due to them, (b) failing to pay the putative Class Members' wages when such wages were due, and (c) wrongfully deducting fees from the putative Class Members' wages (collectively, the "Initial Claims");

WHEREAS, on or about March 26, 2007, the Class Representative filed a first amended complaint (the "Amended Complaint" and with the Initial Complaint, the "Complaint") asserting, in addition to the Initial Claims, that AHM Corp. also violated the *Fair Labor Standards Act* ("FLSA") and similar Oregon wage and hour laws by allegedly failing to pay the putative Class Members (a) the then-applicable federal and Oregon minimum wage and (b) one and a half times their regular rate of pay for those hours worked in excess of forty (40) hours in any given week (the "Additional Claims" and together with the Initial Claims, collectively, the "Class Claims");

WHEREAS, on or about April 13, 2007, AHM Corp. filed its answer and affirmative defenses (the "Answer") to the Complaint;

WHEREAS, the Answer denied certain material allegations of the Complaint and

3

asserted, among other defenses, that (a) class/collective treatment of the Class Claims was inappropriate because (i) the Class Representative was not similarly situated to the putative Class Members, (ii) the Class Representative was not an adequate representative of the putative Class Members, (iii) individual facts and issues predominate over common facts and law, and (iv) other methods available for resolving the Class Claims are superior; (b) the Class Claims were barred by the "outside sales" exemption; (c) the Class Claims were barred as they were preliminary or postliminary to the putative Class Members' principal activities or *de minimis* in nature; and (d) AHM Corp. acted at all times in good faith and had reasonable grounds for believing its conduct was not in violation of the FLSA or Oregon law;

**WHEREAS**, prior to the Petition Date, AHM Corp. and the Class Representative engaged in discovery and motion practice in the Nielsen Action;

**WHEREAS,** on August 9, 2007, AHM Corp. filed a *Suggestion of Bankruptcy* in the Nielsen Action resulting in a stay of those proceedings during the pendency of the Chapter 11 Cases;

**WHEREAS**, on January 11, 2008, the Class Representative filed a proof of claim against the estate of AHM Corp., which claim is carried on the official claim registry maintained in the Chapter 11 Cases (the "Claims Registry") as claim no. 8932 (the "Nielsen Claim"), asserting the Class Claims individually and purportedly on behalf of the putative Class Members;

**WHEREAS**, on December 4, 2012, the Plan Trustee filed an objection to the Nielsen Claim including, *inter alia*, that (a) the Class Representative failed to move the Bankruptcy Court to exercise its discretion to extend the application of Federal Rule of Civil Procedure 23 ("Rule 23") to the Nielsen Claim authorizing it to be filed on behalf of the putative Class

Members; (b) applying Rule 23 to the Nielsen Claim is inconsistent with the goals of

bankruptcy as it fails to meet each of the factors necessary for the Court to exercise such

discretion; (c) the Nielsen Claim fails to meet the requirements for Rule 23 because, *inter alia*,

(i) class treatment of the Class Claims is not superior to the claims adjudication process

presently operating in the Chapter 11 Cases, (ii) individual facts and issues predominate over

common facts and law, and (iii) the Class Representative may not adequately represent the

putative Class Members; and (d) with respect to the Class Representative's individual claims,

she failed to establish a *prima facie* claim (the "Plan Trust Objection");

WHEREAS, on December 27, 2012, the Class Representative filed a response to the

Plan Trust Objection requesting that the Bankruptcy Court (a) certify her claim as a class

and/or collective claim; (b) grant her full or partial summary judgment on any issues that the

Court deemed to have been adequately established; and/or (c) lift the automatic stay to allow

her claim to be liquidated in Oregon District Court, where discovery and litigation of this

matter were already underway when AHM Corp. filed its bankruptcy petition;

WHEREAS, informal discovery has been conducted by the Parties in connection with

the Nielsen Claim;

WHEREAS, there exist significant, complex legal and factual issues regarding the

application of the FLSA and similar Oregon wage and hour laws, the various cases and

regulations interpreting such laws and regarding the viability of the Nielsen Action, both

individually and as a class or collective claim, including:

- whether authorizing the filing of the Nielsen Claim as a class and/or collective
  proof of claim would be consistent with the goals of bankruptcy;
- whether class and/or collective treatment of the Nielsen Claim would be
  superior to the claims resolution process presently operating in the Chapter 11
  Cases;

5

- whether common questions of fact and law predominate over individualized inquiries;
- whether the Class Representative and the putative Class Members are similarly situated;
- whether the Class Representative or any of the putative Class Members have interests that are antagonistic to one another;
- whether any deduction taken from a putative Class Member's wages was done with the authorization and consent of such putative Class Member;
- whether each putative Class Member can establish the work for which such putative Class Member was not compensated;
- whether each putative Class Member was an "exempt" employee pursuant to the "outside sale exemption" or otherwise;
- whether AHM Corp. has other defenses to the application of the FLSA or similar Oregon wage and hour laws;
- whether AHM Corp. acted in good faith and is entitled to a reduction or elimination of damages under the FLSA or similar Oregon wage and hour laws;
- whether any overtime worked by a putative Class Member was authorized by, and done for the benefit of, AHM Corp.;
- whether any overtime worked by a putative Class Member was preliminary or postliminary to such putative Class Member's principal activities;
- whether any of the time for which any putative Class Member was not compensated was for *de minimis* work;
- whether AHM Corp.'s actions were willful;
- the computation of the amount of damages;
- whether attorneys' fees are to be awarded to the Class Representative and the putative Class Members if they prevail; and
- whether and to what extent the alleged damages are entitled to wage priority under Section 507(a)(4) of the Bankruptcy Code.

**WHEREAS**, the Class Representative has the burden of proof on some of these issues and the Plan Trustee has the burden on others, and the trial of this matter would likely be lengthy and complex, adding to the cost and potential delay;

**WHEREAS**, all Parties recognize that the outcome of the litigation with respect to all of the issues is uncertain;

**WHEREAS**, to avoid extensive, costly and uncertain litigation over these issues, the Parties have engaged in significant good-faith, arm's-length negotiations regarding a possible consensual liquidation and resolution of the Nielsen Claim, the Plan Trust Objection, the Complaint, the Class Claims and any and all related or similar settleable claims, counterclaims and/or causes of action based on or arising out of any federal, state or local statute, ordinance or regulation, contract or otherwise (collectively sometimes referred to herein as the "Nielsen Litigation"). As a result of these negotiations, the Parties desire to enter into a final settlement and release of all settleable demands, claims, damages and causes of action arising from or relating to the Nielsen Litigation, whether known or unknown; and

**WHEREAS**, the Parties have agreed to settle any and all claims relating to or arising out of the Nielsen Litigation in accordance with the terms of this Settlement.

**NOW, THEREFORE**, as material consideration and inducement to the execution of this Settlement Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged and intended to be binding, the Parties hereby agree as follows:

1.    **Hearings.** The Parties shall file a joint motion for approval of the Settlement through a bifurcated hearing process (the "Motion"). The Motion shall request an initial hearing (the "Initial Hearing") at which time the Parties shall seek entry of an order from the Bankruptcy Court preliminarily approving the Settlement and approving the form and manner of notice to the Class Members of the Settlement, including, among other things, their right to opt out of the Class, object to the Settlement in person or appear by counsel. The Parties shall also request that the Court designate dates thereafter as deadlines for opting out of the Class (defined below) or objecting to the Settlement, as well as a date for a fairness hearing (the

"Fairness Hearing"). The date of the Fairness Hearing shall be no earlier than the earliest date for entry of a binding order under 28 U.S.C. § 1715(a)-(d). At the Fairness Hearing, the Bankruptcy Court will consider the final approval of the Settlement, including the award of Class Counsel's Fees and the Service Payment (each as defined below) as well as the authority of the Plan Trustee to enter into the Settlement Agreement.

2. **Class Certification; Class Counsel; Class Representative**.

(a)        Class Certification.  Upon execution of this Settlement Agreement, the Parties stipulate and agree to define and certify a class and collective (together, the "Class") in connection with the Nielsen Litigation and the Motion, comprised of all persons who (i) were employed by AHM Corp. in the State of Oregon at any time between August 7, 2005 through August 6, 2007, (ii) held the position and performed the duties of a Loan Officer, whether by that title or any other, (iii) were classified by AHM Corp. as an "exempt" employee, and (iv) do not file a timely request to opt-out of the Class; provided, however, that such a class and collective shall be certified for settlement purposes only and without any admission on the part of the Plan Trust that class and/or collective certification is proper.[1]

(b)        The Plan Trustee represents that, to the best of his knowledge, information and belief, the former employees listed on **Exhibit A** satisfy the criteria set forth in Sections (2)(a)(i)-(iii) above.

(c)        Class Counsel.  Jon M. Egan, PC shall be appointed as counsel ("Class Counsel") for the Class created under this Settlement Agreement.

(d)        Class Representative.  Zoa Woodward (who at the time of the commencement

---

[1] The Plan Trust expressly reserves its right to oppose class and/or collective certification should this Settlement not become effective.

of the Nielsen Action and the filing of the Nielsen Claim was named Zoa Nielsen) shall be appointed as Class Representative for the Class created under this Settlement Agreement.

3.    **The Settlement Fund.**

(a)        The Nielsen Claim shall be settled hereby and as provided herein and deemed liquidated in the gross amount of six hundred fifteen thousand dollars ($615,000). The now-liquidated Nielsen Claim shall be deemed to be filed on behalf of the Class and allocated as follows: (a) an allowed priority unsecured claim in the amount of ninety-five thousand dollars ($95,000) and (b) an allowed non-priority unsecured claim in the amount of five hundred twenty thousand dollars ($520,000), against the estate of AHM Corp. and treated in accordance with the terms of the Plan (such Plan distributions on account of the Nielsen Claim, collectively, the "Settlement Fund"). The Settlement Fund represents the maximum amount that the Plan Trust will pay pursuant to this Settlement, inclusive of the allocation of the Settlement Fund to Class Members, Class Counsel's Fees, the Service Payment, settlement expenses and any tax obligations, including, but not limited to, FICA and FUTA taxes on the Settlement Fund disbursements, if any. The Plan Trust shall not be called upon or required to contribute additional monies above the Settlement Fund under any circumstance whatsoever.

(b)        Distribution of the Settlement Fund shall be made to Class Counsel's attorney trust account pursuant to the Plan. Distribution of the priority component of the Settlement Fund shall be made by the Plan Trust only when the Plan Trust makes distributions to holders of priority unsecured claims on account of such claims, and distribution of the non-priority component of the Settlement Fund shall be made by the Plan Trust only when the Plan Trust makes distributions to holders of non-priority unsecured claims on account of such claims. Class Counsel will calculate the relative percentages and distributions of the

Settlement Fund that are allocable to Class Counsel's Fees, reimbursement of Class Counsel's expenses, and to each Class Member on an individualized basis, in accordance with the terms of this Agreement.

4.    **Responsibilities of Class Counsel.**  In addition to calculating the relative percentages and distributions allocable to Class Counsel's Fees, reimbursement of Class Counsel's expenses, and the individualized percentage amount of the Settlement Fund to be distributed to Class Members in accordance with the terms of this Agreement, Class Counsel shall pay the cost (to be reimbursed from the Settlement Fund pursuant to Section 5) and bear the ultimate responsibility for the preparation and distribution of checks, IRS Form 1099-MISC ("1099 Forms")[2] and the production and mailing of all notices to be required for the Class Members (the "Class Notices").  In addition, Class Counsel shall certify that such 1099 Forms have been properly mailed to Class Members on or before February 1 of the year following each of their Settlement Fund disbursements.  The address of Class Counsel will be used as the return address for the Class Notices and Class Counsel will respond to all inquiries of the Class arising from or related to this Settlement.  Class Counsel shall have the option to engage a third party acceptable to the Parties to issue all Class Notices, disbursement checks and/or 1099 Forms, the cost of which shall constitute accrued expenses subject to the Section 5 below.

---

    [2] Within ten (10) business days after the preliminary approval of this Settlement by the Bankruptcy Court, the Plan Trust shall provide Class Counsel with the social security number, name, street address, city or town, province or state, country, ZIP or foreign postal code and telephone number of each Class Member listed on **Exhibit A**, as set forth in the Debtors' books and records, as well as the Payer's name, street address, city or town, province or state, country, ZIP or foreign postal code, telephone number and tax identification number to assist Class Counsel in issuing 1099 Forms, as required by the Settlement.  Class Counsel shall keep all such information strictly confidential, shall not use it for any purpose other than issuing 1099 Forms and locating Class Members in connection with this Settlement.

5.     **Class Counsel's Fees.**  Class Counsel is directly awarded attorney fees and reimbursement of accrued expenses in this Settlement Agreement; such award is directly to Class Counsel and no Class Member shall be deemed, by any taxing authority or otherwise, to have (or have ever had) any ownership interest therein.  Specifically, Class Counsel is awarded all accrued expenses, not to exceed ten thousand dollars ($10,000.00), in addition to attorneys' fees in the amount of one third (1/3) of each gross Settlement Fund claim identified in paragraph 3(a) above, as payment in full for Class Counsel's work in connection with this matter (collectively, "Class Counsel's Fees").  This agreed one third (1/3) figure is used for ease of calculation purposes and does not represent a contingent-fee recovery; instead, the one third (1/3) figure is awarded in lieu of the lodestar and/or other statutory fee-shifting attorney fees to which Class Counsel asserts he would otherwise be entitled under a successful resolution of the underlying claims via litigation.  Class Counsel's Fees will be distributed contemporaneously with each distribution of the Settlement Fund payments to Class Members.[3]

6.     **The Allocation of the Settlement Fund and Disbursement of the Settlement Fund Payments to Class Members.**

(a)          Allocation of the Net Settlement Fund.  Each net Settlement Fund payment (i.e., after being first reduced by Class Counsel's Fees and accrued expenses and the Service Payment to be made to the Class Representative) shall be allocated to the individual Class Members as calculated by Class Counsel in accordance with the terms of this Agreement; provided, however, that no such individual allocation shall exceed the maximum

---

[3] Notwithstanding, Class Counsel shall be entitled to recoup its total accrued expenses, subject to the cap set forth in Section 5, from the initial disbursement of the Settlement Fund.

11

priority claim allowed pursuant to Section 507 of the Bankruptcy Code after first taking into

account any and all other allowed priority claims of, and/or other priority distributions made

to, such Class Members.  The method used to calculate the Settlement Fund payments due to

each Class Member is described in detail in **Exhibit B** and the percentage of the projected

aggregate net Settlement Fund payments allocable to each Class Member is listed on **Exhibit**

**A**.

      (b)        Returned Settlement Checks.  In the event that any Settlement Fund

disbursement is returned as undeliverable, Class Counsel shall promptly re-mail the returned

settlement check to the corrected address of the intended recipient as determined by Class

Counsel through a search of a national database or as may otherwise be obtained by the

Parties.  If a corrected address cannot be obtained for the intended recipient, or if the

disbursement is returned a second time as undeliverable, such returned disbursement will be

deemed to be Residual Funds (defined below) and treated in accordance with Section 6(c)

below.

      (c)        Distribution of Residual Funds.  In the event that there are any

Settlement Funds remaining for any reason, including settlement checks which are not

deposited or negotiated within six (6) months of their date of issuance (the "Residual Funds"),

such Residual Funds will be (i) first, used to make Settlement Fund distributions to additional

Class Members, if any, that may be identified after Class Counsel has made distributions of

the Settlement Fund but prior to the final distribution of such Residual Funds according to

Section 6(c)(ii) (the "Additional Class Members"), and (ii) if any Residual Funds remain after

the Settlement Fund distributions to Additional Class Members, then second, donated to The

National Employment Law Project, a 501(c)(3) non-profit organization dedicated to

employee rights.  No portion of the Residual Funds shall revert to the Plan Trust for any reason or, other than as set forth herein, be disbursed to Class Counsel.

> (d)         Notification of Possible Tax Consequences to Class Members.

> (i)         The ultimate amounts of the net Settlement Fund payments allocated to each Class member are aggregate figures resulting from and reflecting the Parties' good-faith negotiations regarding a number of unliquidated (and in some cases unknowable) categories of potential damages.  As such, the amounts of the payments may include provision for alleged unpaid back wages, prejudgment interest, liquidated damages, penalty wages,  punitive damages and any and all other categories of potential recovery resulting from the Nielsen Litigation.  As such, and due to the inability to fix the relative amounts of such damage categories without further litigation, Class Counsel will issue IRS Form 1099s to Class Members, with the net amount of their Settlement Fund payments designated as "Other Income" in Box 3 of such forms—no tax withholdings from such funds will be made by either the Plan Trustee or Class Counsel.  Class Counsel will also provide each Class Member with a notice advising each Class Member to seek his or her own personal tax advice regarding the potential tax consequences of the net Settlement Fund payment and an explanation of the deduction of Class Counsel's fees and accrued expenses.  This notice will be included with each net Settlement Fund payment to the Class Members. No Party makes any representation to any other Party as to the possible tax treatment of any payment hereunder.

> (ii)         In the event that it is subsequently determined by the United States Internal Revenue Service or any other appropriate taxing authority (each a "Taxing

13

Authority") that any Party owes any additional taxes with respect to any money distributed under this Settlement, it is agreed that the determination of any tax liability shall be between such Party and the Taxing Authority, and that no other Party shall be responsible for the payment of such taxes, including any interest and penalties.

(e)        Service Payment to Class Representative.  The Class Representative shall receive a one time payment of seven thousand five hundred dollars ($7,500) for her service in this matter, the time and effort she has contributed to the case, her participation in discovery,  and the financial risks she undertook by asserting statutory claims on behalf of the Class Members (the "Service Payment").  Class Counsel shall distribute this Service Payment to the Class Representative from the priority component of the settlement fund.

(f)        Released Claims of Class Members.  For the purposes of this Settlement, the term released claims ("Released Claims") shall include both "FLSA Claims" and "Non-FLSA Claims."

(i)        "FLSA Claims" shall mean all claims, counterclaims and/or causes of action under the FLSA that have been alleged or that have an identical factual predicate to the claims alleged in the Nielsen Litigation, for each Party and such Party's predecessors, successors and assigns, whether presently known or unknown, fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, matured or unmatured, disputed or undisputed, legal or equitable; provided, however, that nothing contained herein shall be deemed to waive or release any claims which are allowed pursuant to this Settlement or any of the Parties' rights or obligations under this Settlement.

14

(ii)    "Non-FLSA Claims" shall mean any and all other claims, counterclaims and/or causes of action of any kind or nature that have been alleged, or that have an identical factual predicate to the claims alleged in the Nielsen Litigation, for each Party and such Party's predecessors, successors and assigns, whether presently known or unknown, fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, matured or unmatured, disputed or undisputed, legal or equitable, including, but not limited to, any claims and/or causes of action under, pursuant to or derived from (i) any state law regulating hours of work, wages, the payment of wages and/or the payment of overtime compensation; (ii) any contract; (iii) any state common law, including, but not limited to, claims for unjust enrichment and quantum meruit; and (iv) *The Employee Retirement Income Security Act of 1974* ("ERISA") including, but not limited to, claims for benefits under any benefit plans subject to ERISA that arise from any act or omission that has been alleged or based upon an identical factual predicate to the claims alleged in the Nielsen Litigation; provided, however, that nothing contained herein shall be deemed to waive or release any claims which are allowed pursuant to this Settlement or any of the Parties' rights or obligations under this Settlement.

(g)    Reservation of Rights. The Plan Trust expressly reserves the right to object to, offset or oppose any and all claims, obligations or causes of action, of any type, except those expressly allowed under this Settlement.

7.    **The Class Notice.**

(a)    As noted above, Class Counsel shall pay the cost (to be reimbursed from the Settlement Fund pursuant to Section 5) and bear the responsibility of the preparation of

15

the Class Notices. Class Counsel's address will be used as the return address for the Class

Notices so that any returned Class Notices will be returned to Class Counsel. Class Counsel

shall mail the Class Notices by first-class mail to the Class Members at the addresses listed on

**Exhibit A** no later than ten (10) business days after the entry of an order by the Bankruptcy

Court preliminarily approving this Settlement. The Class Notice shall be in substantially the

form annexed hereto as **Exhibit C** or such substantially similar form as may be approved by

the Bankruptcy Court. In the event that a Class Notice is returned as undeliverable, Class

Counsel shall re-mail the Class Notice to the corrected address of the intended Class Member

recipient as determined by Class Counsel through a search of a national database or as may

otherwise be obtained by the Parties.

      (b)      <u>Contents of the Class Notice</u>. The Class Notice shall contain the

following information, which shall be individualized for each Class Member, as appropriate:

- that each Class Member has the right to opt out of the Class and preserve all of his or her rights against the Debtors, if any, including the Released Claims (all such Class Members timely electing to opt out of the Class, the "<u>Opt-Outs</u>"), and the procedure for doing so;

- that the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

- that, if so approved, the Settlement shall be effective as to all Class Members who did not timely elect to opt out of the Class;

- the projected percentage of the aggregate net Settlement Fund that such Class Member would receive under the Settlement;

- the proposed Class Counsel's Fees and Class Representative's Service Payment;

- that such Class Member has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing; and

- that upon Final Approval (for Non-FLSA Claims) and/or negotiation of his or her settlement check (for FLSA Claims), all Released Claims (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

(c)         Representation and Covenant as to **Exhibit A**.  The Plan Trustee represents that to the best of his knowledge, information and belief, the information contained in **Exhibit A** accurately reflects the contents of the Debtors' books and records as to each Class Member, as follows: (i) the last known mailing address at the time of termination (unless the employee has provided a change of address to the Debtors or the Plan Trustee); and (ii) the dates that such Class Member's employment with the Debtors commenced and terminated.

8.     **Objection to Settlement Procedures**.  At or before such time as may be fixed by the Bankruptcy Court, a Class Member may object to this Settlement by delivering timely written notice of such objection (a "Notice of Objection") to Class Counsel and counsel to the Plan Trustee at the addresses set forth in Section 17(c) below and filing such Notice of Objection with the Bankruptcy Court.  The Notice of Objection shall clearly specify the basis for such objection, the relief sought and the grounds for such relief.

9.     **Right of Employee to Opt Out of Class.**

(a)         Any Class Member may opt out of the Class by timely delivering to Class Counsel a signed and dated written notice of his or her wish to do so (including their name, address, telephone number and social security number).   Any such Class Member whose signed and dated written notice (including his or her name, address, telephone number and social security number) is received by Class Counsel by the date fixed by the Bankruptcy Court shall be classified as an Opt-Out.  Class Counsel shall provide the Plan Trustee with a list of all Opt-Outs.  Otherwise, if and when the Settlement becomes effective, all Class Members shall be bound by the terms of this Settlement.  For the avoidance of doubt, the

17

negotiation of a settlement check shall constitite affirmatively opting in to the collective by such Class Member for FLSA settlement purposes.

(b)      Notwithstanding anything to the contrary in this Settlement, nothing contained herein shall release, impair or expand the rights and claims, if any, of any Opt-Out, or any FLSA rights and claims of any Class Member who does not opt in by negotiating his or her settlement check, nor shall anything contained herein affect the defenses and offsets that the Plan Trust may have against any such rights or claims including, without limitation, the Plan Trustee's right to object to the timeliness of any claim asserted by an Opt-Out.

(c)      Any portion of the Settlement Fund attributable to the claims of any Opt-Out shall revert back to the Plan Trust.

10.    **Acceptance and Effectiveness of the Settlement.**

(a)      Bankruptcy Court Approval.  The effectiveness of this Settlement shall be subject to and contingent upon the entry of an order of the Bankruptcy Court at the Fairness Hearing approving this Settlement and upon such order having become final and non-appealable (the date of such order becoming final and non-appealable, the "Final Approval Date"); provided, however, in the event that the Bankruptcy Court or a court with competent jurisdiction determines that the Service Payment and/or Class Counsel's Fee provisions are unreasonable, the Parties shall amend such Service Payment and/or Class Counsel's Fee provisions so as to render the same reasonable to such court without modifying the liquidated amount of the Nielsen Claim set forth in Section 3(a).

(b)      Effective Date.  The effective date of this Settlement is the Final Approval Date.

11.    **The Waiver and Release of any Released Claims by All Class Members if the Settlement Becomes Effective.**

(a)        Upon the Final Approval Date, the Class Representative and her respective predecessors, successors and assigns (collectively, the "Class Representative Releasing Parties"), and the Plan Trustee, in his capacity as such, the Plan Trust, the Debtors and their estates, and each of their respective predecessors, successors and assigns (collectively, the "Plan Trust Releasing Parties"), shall be deemed to have settled, released and extinguished completely any and all claims that they have, had, might have or might have had against each other, including all Released Claims and any and all other common-law, statutory, equitable or other claims, whether or not such claims are or were based upon an identical factual predicate to the claims alleged in the Nielsen Litigation.

(b)        Upon the Final Approval Date, all other Class Members and their respective predecessors, successors and assigns (the "Class Member Releasing Parties"), and the Plan Trust Releasing Parties (and together with the Class Representative Releasing Parties and the Class Member Releasing Parties, the "Releasing Parties") shall be deemed to have settled, released and extinguished completely any and all Non-FLSA Claims that they have, had, might have or might have had against each other.

(c)        Upon any Class Member's negotiation of his or her settlement check, that Class Member shall be deemed to have affirmatively opted in to the collective and this Settlement, and that Class Member and his or her respective predecessors, successors and assigns, and the Plan Trustee Releasing Parties shall thereby be deemed to have settled, released and extinguished completely any and all FLSA Claims that they have, had, might have or might have had against each other.

(d)        Upon the Final Approval Date, any claim filed by, or scheduled or filed

19

on behalf of, a Class Member asserting any Non-FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such Non-FLSA Claim and Epiq Bankruptcy Solutions LLC, as the official claims agent in the Chapter 11 Cases ("Epiq"), shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such Non-FLSA Claims.  Upon the negotiation of any Class Member's settlement check, any claim filed by, or scheduled or filed on behalf of, that Class Member asserting any FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such FLSA Claim and Epiq shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such FLSA Claims.

(e)        Within fifteen (15) business days of the Final Approval Date, the Class Representative shall file a joint motion to dismiss the Nielsen Action with prejudice in the Oregon District Court.

12.    **Right to Withdraw from the Settlement Agreement**.  In the event that more than ten (10%) percent of the Class Members timely exercise their right to opt out of this Settlement, the Plan Trustee may elect to terminate this Settlement Agreement by providing written notice to Class Counsel within five (5) business days after receipt of the list of Opt-Outs from Class Counsel pursuant to Section 9(a).  Upon withdrawal from this Settlement by the Plan Trustee, (a) the terms of this Settlement shall not be binding upon any of the Parties, (b) nothing contained in this Settlement, the Motion or any other pleading seeking approval of the Settlement, or any correspondence or other communication relating to the negotiations, drafting or approval of the Settlement shall be used or referred to in any subsequent proceeding in or relating to the Nielsen Litigation, and (c) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of the Parties.

13.    **Protection of Class Members' Confidential Information.**  In order to protect the privacy of the Class Members, it is presently contemplated that the Parties shall seek to file **Exhibit A** with the Bankruptcy Court under seal.  However, this schedule has been made available to and reviewed by Class Counsel, on the condition that Class Counsel is bound by an agreement not to disclose the contents thereof except as required to perform the duties herein; provided, however, that Class Counsel may disclose the information relating to a given Class Member to that Class Member or use the information to locate a Class Member as contemplated in Sections 6(b) and 7(a).

14.    **No Litigation.**  Except as may be necessary to enforce the terms of this Settlement, each of the Releasing Parties agrees that she or he shall not commence or proceed with any action, claim, suit, proceeding or litigation against any other Party, directly or indirectly, regarding or relating to the matters described herein, or take any action inconsistent with the terms of the Settlement.

15.    **No Admission of Liability or Non-Liability.**  This Settlement is intended to settle and dispose of the Released Claims.  Nothing herein shall be construed as an admission by any Party of any facts or liability or non-liability of any kind.

16.    **Representations and Warranties**.  Each Party represents and warrants that upon Bankruptcy Court approval of this Settlement it will have the legal right and authority to enter into this Settlement and the transactions and releases contemplated hereby.

17.    **Miscellaneous**.

(a)            Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction over this Settlement and any dispute or controversy arising from or related to the interpretation or enforcement of this Settlement.

21

(b)         <u>Confidentiality; Public Announcement of Settlement</u>. The Parties and their counsel agree that prior to the filing of the Motion with the Bankruptcy Court, they shall keep the fact, amount and terms of the Settlement confidential.  Furthermore, prior to the final approval of the Settlement, they will not issue any press releases, initiate any contact with the press, respond to any press inquiry or have any communication with the press about this case and/or the fact, amount or terms of the Settlement, and, prior to the Bankruptcy Court-approved mailing of the Class Notice, any communication about the Settlement to a Class Member, other than the Class Representative, will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Bankruptcy Court-approved notice.

(c)         <u>Notices</u>.  Except as otherwise specifically provided herein, any notice or other communication required or permitted to be delivered under this Settlement shall be (i) in writing, (ii) delivered personally, by courier service or by certified or registered mail, first-class postage prepaid and return receipt requested, (iii) deemed to have been received on the date of delivery, and (iv) addressed as follows (or to such other address as the Party entitled to notice shall hereafter designate by a written notice filed with the Bankruptcy Court):

**If to the Plan Trustee, to:**

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York  10022
Attention:  Edward L. Schnitzer, Esq.

**If to Class Members or Class Counsel, to:**

JON M. EGAN, PC
240 Sixth Street
Lake Oswego, OR 97034-2931
Attention:  Jon M. Egan, Esq.

(d)         Amendments.  This Settlement may not be modified, altered, amended or supplemented by the Parties except by a written instrument that the Parties have signed with any required approval of the Bankruptcy Court.

(e)         Integration.  The provisions contained in this Settlement constitute the entire agreement between the Parties with regard to the subject matter hereof.  This Settlement supersedes any and all agreements, whether written or oral, that may have previously existed between the Parties with respect to the matters set forth herein.  Except as expressly provided herein, no statements, promises or representations have been made by any Party to any other, or relied upon, and no consideration has been offered, promised, expected or held out other than as may be expressly provided herein.

(f)         No Construction Against the Drafter.  The Parties agree that each of them has had the full opportunity to participate in the drafting of this Settlement and, accordingly, any claimed ambiguity shall neither be construed for nor against any of the Parties.

(g)         No Third-Party Beneficiaries.  This Settlement does not constitute a contract for the benefit of any third parties, any prior creditors or claimants of the Parties, or any nonparty, other than Class Members in relation to the provisions of this Settlement.

(h)         Headings.  The headings of this Settlement are for convenience only and are not part of the Settlement and do not in any way define, limit, extend, describe or amplify the terms, provisions or scope of this Settlement and shall have no effect on its

23

interpretation. Where appropriate, the use of the singular shall include the plural, and vice versa, and any use of the masculine, feminine and/or neuter genders shall include the others as well.

(i)        Counterparts. This Settlement may be executed by the Parties in separate counterparts, each of which when so executed shall be deemed an original, and all of which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of a signature page of this Settlement by facsimile or electronic means (in PDF file or comparable format) shall be effective as delivery of an original executed copy of this Settlement.

(j)        Binding Nature of Settlement. This Settlement shall be binding upon and shall inure to the benefit of the Parties and their respective successors, transferees, assigns, heirs and estates.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

HAHN & HESSEN LLP

on behalf of the Plan Trustee

By: _____

     Name:  Edward L. Schnitzer, Esq.

     Title:   Counsel to the Plan Trustee

JON M. EGAN, PC

on behalf of the Class Representative and Class Members

By: _____

     Name:  Jon M. Egan, Esq.

     Title:   Class Counsel

25

# EXHIBIT A

## CLASS LIST

## TO BE FILED UNDER SEAL

## EXHIBIT B

## Method Used to Calculate Settlement Fund Payments Due to Class Members

Class Counsel shall calculate the percentage amount of the aggregate net Settlement Fund that will be distributed to each Class Member on an individualized basis in the following manner. The net Settlement Fund (after first being reduced by seven thousand five hundred dollars ($7,500) on account of the Service Payment to be paid to the Class Representative as well as Class Counsel's Fees and reimbursement of accrued expenses as provided in the Agreement) will be allocated to each Class Member according to the following formula:

A percentage of the net priority payment will be distributed to each Class Member equal to the number of days that Class Member worked during the priority period divided by the total number of days worked by all of the Class Members during the priority period (all calculations to be performed using the information contained in **Exhibit A**).

A percentage of the net non-priority payment will be distributed to each Class Member equal to the number of days that Class Member worked during the non-priority period divided by the total number of days worked by all of the Class Members during the non-priority period (all calculations to be performed using the information contained in **Exhibit A**).

# EXHIBIT C

## PROPOSED FORM OF CLASS NOTICE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------------------------  x

In re:                                                     :  Chapter 11
                                                           :
AMERICAN HOME MORTGAGE HOLDINGS,                           :  Case No. 07-11047 (CSS)
INC.,                                                      :  Jointly Administered
a Delaware corporation, *et al.*,[1]                       :
                                                           :  **Objection Deadline:** _____, 2013 by 4:00 p.m. (ET
                              Debtors.                      :  **Opt Out Deadline:** _____, 2013 by 4:00 p.m. (ET)
--------------------------------------------------------------------------------  x  **Hearing Date:** _____, 2013 at 4:00 p.m. (ET)

**NOTICE TO CLASS OF (I) PROPOSED SETTLEMENT OF CLASS ACTION CONCERNING FLSA
AND RELATED CLAIMS; (II) AWARD OF ATTORNEYS' FEES AND EXPENSES TO CLASS
COUNSEL; (III) DATE OF COURT HEARING FOR FINAL APPROVAL OF PROPOSED
SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES, AND (IV) RIGHT TO
OPT-OUT OR OBJECT TO THE SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR
ATTORNEYS' FEES AND EXPENSES AND TO APPEAR AT COURT HEARING**

TO:  All persons who (i) were employed by Debtor American Home Mortgage Corp. ("AHM Corp.") in the
State of Oregon at any time between August 7, 2005 through August 6, 2007, (ii) held the position and
performed the duties of a Loan Officer, whether by that title or any other, and (iii) were classified by AHM
Corp. as an "exempt" employee (the "Class" or "Class Members").

### Introduction

1.    There is currently pending (a) in the United States District Court for the District of Oregon (the "Oregon
District Court") an action brought under the federal *Fair Labor Standards Act* ("FLSA") and Oregon's wage and
hour laws captioned *Zoa Nielsen, et al. v. American Home Mortgage Corp.*(the "Action") and (b) in the United States
Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a proof of claim filed with respect to
the claims asserted in the Action (the "Proof of Claim" and together with the Action, the "Class Litigation").
The plaintiff, Zoa Woodward (f/k/a Zoa Nielsen) (the "Class Representative") and the Bankruptcy
Court-appointed liquidating trustee (the "Plan Trustee" and together with the Plan Representative, the
"Parties") of the trust (the "Plan Trust") established pursuant to the confirmed chapter 11 plan (the "Plan") of
the above-captioned debtors (the "Debtors"), have reached a proposed settlement to resolve the Class Litigation
memorialized in a *Settlement and Release Agreement* (the "Settlement") under which the benefits described below
will be provided to the members of the Class.

2.    This notice constitutes notice to the Class of (a) the proposed Settlement of the Class Litigation, (b) the
request of Class Counsel (defined below) for the award of attorneys' fees of one-third (1/3) of each gross
Settlement Fund claim, plus accrued expenses of up to $10,000.00, (c) the date of the Bankruptcy Court hearing
for final approval of the proposed Settlement and award of Class Counsel's attorneys' fees and expenses, and (d)
the right of each member of the Class to opt-out, object to or comment on the Settlement and Class Counsel's
request for attorneys' fees and expenses and to appear at the hearing at which the Bankruptcy Court will
consider the final approval of the Settlement and Class Counsel's request for attorneys' fees and expenses, and
the required procedures for doing so.

### Description of the Class Litigation

---

[1]  The Debtors in these cases are: American Home Mortgage Holdings, Inc.; American Home Mortgage
Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home
Mortgage Servicing, Inc.); American Home Mortgage Corp.; American Home Mortgage Ventures LLC;
Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

3.  On August 14, 2006, the Class Representative filed with the Oregon District Court a class-action complaint (the "Initial Complaint") commencing the Action against AHM Corp. on behalf of herself and purportedly on behalf of the Class Members asserting that AHM Corp. violated Oregon wage and hour laws by allegedly (a) failing to pay the Class Members' wages contractually due to them, (b) failing to pay the Class Members' wages when such wages were due, and (c) wrongfully deducting fees from the Class Members' wages (collectively, the "Initial Claims"). On or about March 26, 2007, the Class Representative filed a first amended complaint (the "Amended Complaint" and with the Initial Complaint, the "Complaint") asserting, in addition to the Initial Claims, that AHM Corp. also violated the FLSA and similar Oregon wage and hour laws by allegedly failing to pay the Class Members (d) the then-applicable federal and Oregon minimum wage and (e) one and a half times their regular rate of pay for those hours worked in excess of forty (40) hours in any given week (the "Additional Claims" and together with the Initial Claims, collectively, the "Class Claims"). On January 11, 2008, the Class Representative filed the Proof of Claim against the bankruptcy estate of AHM Corp. asserting the Class Claims, individually and purportedly on behalf of the Class Members.

4.  In general, the FLSA and Oregon wage and hour laws require an employer to compensate its employees for hours worked no less than the prevailing minimum wage and, regarding hours worked in excess of forty (40) in a given workweek, one and a half times such rate, when due. An employer may be relieved of this obligation if the duties of the subject employee satisfy certain criteria to qualify such employee as "exempt" from such laws. Further, an employer who is found liable under such laws can seek reduction of damages on the grounds that it believed in good faith that it was in compliance with such laws and that it had reasonable grounds for that belief. Finally, Oregon law prohibits certain deductions from employees' wages and requires that their final paychecks contain all earned and unpaid wages and be delivered by a statutory deadline.

5.  On or about April 13, 2007, AHM Corp. filed its answer and affirmative defenses (the "Answer") to the Complaint which denied certain material allegations and asserted, among other defenses, that (a) class and/or collective treatment of the Class Claims was inappropriate because (i) the Class Representative was not similarly situated to the Class Members, (ii) the Class Representative was not an adequate representative of the Class Members, (iii) individual facts and issues predominate over common facts and law, and (iv) other methods available for resolving the Class Claims are superior; (b) the Class Claims were barred by the "outside sales" exemption; (c) the Class Claims were barred as they were preliminary or postliminary to the Class Members' principal activities or de minimis in nature; and (d) AHM Corp. acted at all times in good faith and had reasonable grounds for believing its conduct was not in violation of the FLSA or Oregon law. Further, on December 4, 2012, the Plan Trustee filed an objection to the Proof of Claim asserting, among other things, that (a) the Class Representative failed to move the Bankruptcy Court to exercise its discretion to extend the application of Federal Rule of Civil Procedure 23 ("Rule 23") to the Proof of Claim authorizing it to be filed on behalf of the Class Members, (b) applying Rule 23 to the Proof of Claim is inconsistent with the goals of bankruptcy as it fails to meet each of the factors necessary for the Court to exercise such discretion, and (c) the Proof of Claim fails to meet the requirements for Rule 23 because (i) class treatment of the Class Claims is not superior to the claims adjudication process presently operating in the Debtors' bankruptcy cases, (ii) individual facts and issues predominate over common facts and law, and (iii) the Class Representative may not adequately represent the Class Members (the "Objection"). Finally, on December 27, 2012, the Class Representative filed a response to the Objection (the "Response"), responding to the Objection and requesting that the Bankruptcy Court, among other things, (a) certify her Claim as a class and/or collective claim; (b) grant her full or partial summary judgment on any issues that the Court deems to have been adequately established; and/or (c) lift the automatic stay to allow her claim to be liquidated in Oregon District Court, where discovery and litigation of this matter were already underway when AHM Corp. filed its bankruptcy petition.

6.  The Complaint, Answer, Objection, Response and other contentions of the Class Representative and Plan Trustee raise the following issues, among others:  (a) whether authorizing the filing of the Proof of Claim as a class and/or collective proof of claim would be consistent with the goals of bankruptcy; (b) whether class and/or collective treatment of the Proof of Claim would be superior to the claims resolution process presently operating in the Debtors' bankruptcy cases; (c) whether common questions of fact and law predominate over individualized inquiries; (d) whether the Class Representative and the Class Members are similarly situated; (e) whether the Class Representative or any of the Class Members have interests that are antagonistic to one another; (f) whether any deduction taken from a Class Member's wages was done with the authorization and consent of such Class Member; (g) whether each Class Member can establish the work for which such Class

5

Member was not compensated; (h) whether each Class Member was an "exempt" employee pursuant to the "outside sale exemption" or otherwise; (i) whether AHM Corp. has other defenses to the application of the FLSA or similar Oregon wage and hour laws; (j) whether AHM Corp. acted in good faith and is entitled to a reduction or elimination of damages under the FLSA or similar Oregon wage and hour laws; (k) whether any overtime worked by a Class Member was authorized by, and done for the benefit of, AHM Corp.; (l) whether any overtime worked by a Class Member was preliminary or postliminary to such Class Member's principal activities; (m) whether any of the time for which any Class Member was not compensated was for *de minimis* work; (n) whether AHM Corp.'s actions were willful; (o) the computation of the amount of damages; (p) whether attorneys' fees are to be awarded to Class Counsel if the Class Representative and/or the Class Members prevail; and (q) whether and to what extent the alleged damages are entitled to wage priority under Section 507(a)(4) of the Bankruptcy Code.

7.    The Class Representative has the burden of proof on some of these issues and the Plan Trustee has the burden on others, and the trial of this matter would likely be lengthy and complex, adding to the cost and potential delay.  All Parties recognize that the outcome of the litigation with respect to all the issues is uncertain. To avoid extensive, costly and uncertain litigation over these issues, the Parties have engaged in significant good-faith, arm's-length negotiations regarding a possible consensual resolution of the Class Litigation any and all related or similar settleable claims based on or arising out of any federal, state or local statute, ordinance or regulation, contract or otherwise which resulted in the proposed Settlement presently being considered by the Bankruptcy Court.

8.    The Plan Trustee has identified you, to the best of his knowledge, information and belief, as one of the individuals that are currently within the Class definition, i.e., who (i) was employed by AHM Corp. in the State of Oregon at any time between August 7, 2005 through August 6, 2007, (ii) held the position and performed the duties of a Loan Officer, whether by that title or any other, and (iii) was classified by AHM Corp. as an "exempt" employee.

9.    In connection with the Action, Class Counsel oversaw discovery, including initial disclosures, document discovery, depositions, and independent factual investigation, as well as motion practice.  In connection with the Claim, Class Counsel has conducted further discovery, including the examination of documents of AHM Corp., evaluated various damage analyses, analyzed the applicable law and weighed the likelihood of success.

## The Proposed Settlement

10.    The following description of the proposed Settlement is only a summary.  In the event of any difference between this summary and the terms of the Settlement, the terms of the Settlement shall control.  You may secure a copy of the complete Settlement from Class counsel Jon M. Egan, PC at the address shown below.  The terms of the Settlement relevant to the Class Members may be summarized as follows:

## The Terms of the Settlement

11.    The Class shall be granted an allowed priority unsecured claim in the amount of $95,000 and an allowed non-priority unsecured claim in the amount of $520,000, against the estate of AHM Corp. and treated in accordance with the terms of the Plan (such Plan distributions on account of the  Proof of Claim, collectively, the "Settlement Fund").  **IT IS IMPORTANT THAT YOU UNDERSTAND THAT THESE AMOUNTS REPRESENT ONLY THE AGREED LIQUIDATED VALUE OF THE UNDERLYING ACTION; THIS DEFENDANT IS IN BANKRUPTCY, AND THE ULTIMATE AMOUNT OF MONEY THAT IS EVENTUALLY PAID AS A RESULT OF THIS SETTLEMENT (IF ANY) IS LIKELY TO BE ONLY A SMALL FRACTION OF THE AMOUNTS YOU SEE HERE; THE ACTUAL AMOUNT OF THE SETTLEMENT FUND AND ANY INDIVIDUAL DISTRIBUTION RESULTING THEREFROM CANNOT BE KNOWN UNTIL THE ACTUAL FINAL DISTRIBUTION UPON COMPLETION OF THE APPLICABLE BANKRUPTCY PROCEEDINGS.**  Class Counsel has calculated the percentage amount of the net Settlement Fund that will be distributed to Class Members on an individualized basis pursuant to the terms of the Settlement Agreement. Distribution of each net Settlement Fund payment (after receipt from the Plan Trustee) will be made according to each Class Member's relative percentage of the total days worked as pertinent to the period involved in that particular payment (for the priority unsecured payment, the 180 days prior to the bankruptcy petition, and for the non-priority unsecured payment, the remainder of the

Class Period). Distribution of the Settlement Fund shall be made by the Plan Trustee to Class Counsel's attorney trust account pursuant to the Plan. Distribution of the priority component of the Settlement Fund shall be made by the Plan Trust only when the Plan Trust makes distributions to holders of priority unsecured claims on account of such claims, and distribution of the non-priority component of the Settlement Fund shall be made by the Plan Trust only when the Plan Trust makes distributions to holders of non-priority unsecured claims on account of such claims. Class Counsel will then receive attorney fees in the amount of one-third (1/3) of each net Settlement Fund claim, as well as reimbursement of all accrued costs, and will thereafter distribute the net Settlement Fund in the form of individualized payment(s) to each Class Member. Class Counsel will also distribute IRS Form 1099s to Class Members, reflecting their Settlement Fund payments. The Settlement shall not become effective if the Bankruptcy Court does not approve it.

12. Jon M. Egan, PC shall be appointed as Class counsel ("Class Counsel") and Zoa Woodward (formerly known as Zoa Nielsen) shall be appointed as Class Representative. The Class Representative shall a one time payment of seven thousand five hundred dollars ($7,500) for her service in this matter in her capacity as such (the "Service Payment").

13. If a settlement check issued to a Class Member is not deposited or negotiated within six (6) months of its date of issuance (the "Residual Funds"), such Residual Funds will be (i) first, used to make Settlement Fund distributions to additional Class Members, if any, that may be identified after Class Counsel has made its distribution of the Settlement Fund according to Section 6(c)(ii) (the "Additional Class Members"), and (ii) if any Residual Funds remain after the Settlement Fund distributions to Additional Class Members, then second, donated to The National Employment Law Project, a 501(c)(3) non-profit organization dedicated to employee rights. No portion of the Residual Funds shall revert to the Plan Trust for any reason or, other than as set forth in the Settlement Agreement, be distributed to Class Counsel.

14. Your projected percentage of the net aggregate Settlement Fund payment(s), after the deduction of attorneys' fees of one-third (1/3) of the Settlement Fund, reimbursement of accrued costs and payment of the Service Payment as described above, is [FIELD1]% of the net priority payment and [FIELD2]% of the net non-priority payment. These percentages were arrived at using the hire date of [FIELD3] and separation date of [FIELD4] that are contained in the Debtor's records for your employment, as a proportion of the [FIELD5] days during the priority period and [FIELD6] days during the non-priority period worked by all Class Members (also determined using the figures in the Debtor's records).

### Class Counsel's Recommendation

15. Class Counsel recommends the Settlement, believing that it is fair, reasonable and adequate to the Class.

### Notice of Possible Tax Consequences of the Settlement Fund Payments

16. The amounts of the net Settlement Fund payments are aggregate figures reflecting the parties' good-faith negotiations regarding a number of unliquidated (and in some cases unknowable) categories of potential damages. As such, the amounts of the payments may include provision for alleged unpaid back wages, prejudgment interest, liquidated damages, penalty wages, punitive damages, and any and all other categories of potential recovery resulting from the underlying litigation. As such, and due to the inability to fix the relative amounts of such damage categories without further litigation, Class Counsel will issue IRS Form 1099s to Class Members, with the net amount of their Settlement Fund payments (i.e., after deduction for Class Counsel's Fees) designated as "Other Income" in Box 3 of such forms—no tax withholdings will be made by either the Debtor or Class Counsel.

### Class Counsel's Fees and Expenses

17. Under the proposed Settlement and subject to final Bankruptcy Court approval, Class Counsel shall be paid attorneys' fees of one third (1/3) of each gross Settlement Fund claim, plus accrued costs of up to $10,000.00. You may object to the request of Class Counsel for attorneys' fees and costs by filing an objection within the time and in the manner specified below.

## Release of Claims and
## Effect of Approval of Settlement Agreement

18.  Upon final approval by the Bankruptcy Court (for non-FLSA Claims) and/or the negotiation of any individual's settlement check (for FLSA claims), the Settlement will result in the filing of a joint motion of dismissal of the Action with prejudice, and shall constitute a release of any and all claims, counterclaims and/or causes of action of any kind or nature in any way related to the facts or claims that were alleged or that had an identical factual predicate to the claims alleged in the Class Litigation, whether class or individual, of each Party and such Party's predecessors, successors and assigns, whether any such Released Claim is presently known or unknown, fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, matured or unmatured, disputed or undisputed, legal or equitable, including, but not limited to, any claims and/or causes of action under, pursuant to or derived from (i) the FLSA and/or any state law regulating hours of work, wages, the payment of wages and/or the payment of overtime compensation; (ii) any contract; (iii) any state common law, including, but not limited to, claims for unjust enrichment and quantum meruit; and (iv) *The Employee Retirement Income Security Act of 1974* ("ERISA") including, but not limited to, claims for benefits under any benefit plans subject to ERISA that arise from any act or omission that have been alleged, or with an identical factual predicate to any act or omission alleged in the Class Litigation. Please note:  This release could apply to any bankruptcy claim(s) that you may have previously filed against the Debtor(s); if so, you may wish to seek independent advice of counsel regarding the best course of action.

### How to Opt-out or Object

19.  If you are satisfied with the proposed Settlement including Class Counsel's requested fees and costs, the Service Payment, and the percentage of your projected claim indicated in paragraph 14 above, you do not need to do anything.  Class Counsel will mail your net Settlement Fund payment(s) in accordance with the Settlement Agreement and the Plan. The payment or payments will be mailed to your last known address as indicated in Debtors' books and records or to such address that you have updated with Class Counsel.  If you are concerned that Class Counsel does not have your current address, please promptly notify Class Counsel as follows:

| | |
|---|---|
| **Via Mail:** | **Jon M. Egan, PC** |
| | **240 Sixth Street** |
| | **Lake Oswego, OR  97034** |
| | |
| **Via Fax:** | **866-311-5629** |
| | |
| **Via Email:** | **jegan@eganlegalteam.com** |

20.  If, on the other hand, you believe that the proposed Settlement is unfair or inadequate or are dissatisfied with the percentages indicated in paragraph 14 above or feel that Class Counsel's request for attorneys' fees and costs and/or the Service Payment should not be approved, you may object to the Settlement and/or Class Counsel's request for attorneys' fees and costs and/or the Service Payment by mailing by certified mail, return receipt requested, a detailed written statement bearing the caption of this action shown above on the first page stating your comment or objection, to (a) the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom #6, Wilmington, Delaware 19801; (b) JON M. EGAN, PC, 240 Sixth Street, Lake Oswego, Oregon 97034, Attention: Jon M. Egan, Esq.; and (c) HAHN & HESSEN LLP, 488 Madison Avenue, New York, New York 10022, Attention:  Edward L. Schnitzer, Esq. **Objections must be mailed so as to be received no later than _____, 2013, and must include the caption of the action and your name, address, and telephone number together with a detailed statement of the basis for your objection and whether you wish to be heard personally or by counsel at the final hearing at which the parties will be requesting binding Bankruptcy Court approval of the Settlement and the award of attorneys' fees and costs, as described above.**

21.  You may also appear in person or by counsel at the final hearing described below.

22.  If you choose not to be bound by this Settlement Agreement and do not wish to share in any of the benefits described herein, you may opt out of the Class by submitting a written, signed and dated statement of your wish

8

to opt out (including your name, address, telephone number and social security number) by certified mail, return receipt requested, to: Jon M. Egan, PC, 240 Sixth Street, Lake Oswego, OR 97034, Attn: Jon M. Egan, Esq. The written, signed and dated opt-out statement (including your name, address, telephone number and social security number) must be received by Mr. Egan no later than _____, 2013 (the "Opt-Out Deadline"). All requests for exclusion received after the Opt-Out Deadline will not be effective and such person will be a member of the Class.

### Final Hearing to Approve Settlement and Award Attorneys' Fees and Costs and Service Payment

23. The hearing for final consideration and approval of the Settlement and the award of attorney's fees and costs to Class Counsel and the Service Payment is scheduled to take place on _____, 2013 at _____ _.m. in Courtroom #6 of the United States Bankruptcy Court for the District of Delaware at 824 North Market Street, 5th Floor, Wilmington, Delaware 19801.  That hearing may be adjourned without further notice.  If you wish to determine if the hearing is adjourned, you may contact Mr. Egan at the address shown above.

### Other Information

24. Any questions from members of the Class concerning this notice or the Class Litigation should be directed to Jon M. Egan, PC, 240 Sixth Street, Lake Oswego, OR 97034, Attn:  Jon M. Egan, Esq.  All requests for more information, including a copy of the Settlement Agreement, should be sent by first-class mail to Mr. Egan to the address indicated above.

25. While the Bankruptcy Court has approved the sending of this notice, that does not indicate, and is not intended to indicate, that the Bankruptcy Court has any opinion as to the respective claims or defenses asserted by the parties in the Class Litigation.

**Please do not write to or call the Bankruptcy Court concerning this matter.**