# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al.,[1] | Case No. 07-11047 (CSS) |
| Debtors. | Jointly Administered |
| STEVEN D. SASS, as liquidating trustee for the Plan Trust established pursuant to the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009, as successor in interest to AMERICAN HOME MORTGAGE CORP., AMERICAN HOME MORTGAGE INVESTMENT CORP. and AMERICAN HOME MORTGAGE SERVICING, INC., | |
| Plaintiff, | |
| v. | Adv. Proc. No. |
| HOMEWARD RESIDENTIAL SERVICES, INC. f/k/a American Home Mortgage Servicing, Inc. and f/k/a AH Mortgage Acquisition Co., Inc., | |
| Defendants. | |

## COMPLAINT

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) ("AHM SV"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580). The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

01:14883942.2

**Parties**

1.       Plaintiff, Steven D. Sass, is the liquidating trustee (the "Plan Trustee") for the Plan Trust established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in connection with the chapter 11 cases of the above-captioned debtors and debtors-in-possession ("AHM" or the "Debtors"),

2.       Defendant, HOMEWARD RESIDENTIAL SERVICES, INC. f/k/a American Home Mortgage Servicing, Inc. and f/k/a AH Mortgage Acquisition Co., Inc. ("Homeward" or "Purchaser") was the purchaser of assets of the Debtors as set forth in that certain Asset Purchase Agreement by and among AHM MORTGAGE ACQUISITION CO., INC., AMERICAN HOME MORTGAGE INVESTMENT CORP., AMERICAN HOME MORTGAGE CORP. and AMERICAN HOME MORTGAGE SERVICING, INC.[2] dated as of September 25, 2007, as amended from time to time ("APA").

**Jurisdiction and Venue**

3.       This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and pursuant to paragraphs 21 and 70 of the Servicing Sale Order (and the consent of the parties embodied in the APA).

4.       This is a core proceeding pursuant to 28 U.S.C. § 157(b). To the extent that this action contains both core and non-core claims or contains only non-core claims, Plaintiff consents to the entry of a final order and judgment by this Court.

5.       Venue of these cases and this action in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409 as well as paragraphs 21 and 70 of the Servicing Sale Order (and the consent of the parties embodied in the APA).

---

[2]       The original American Home Mortgage Servicing, Inc. later changed its name to AHM SV, Inc.

01:14883942.2

**General Background**

6. The APA, and the sale of the servicing business of the Debtors that is the subject matter hereof, was authorized and approved by the Court in that certain Servicing Sale Order [D.I. 1711] ("Servicing Sale Order").

7. The APA contemplated both an initial (economic) close ("Initial Closing") and a final (legal) close ("Final Closing"). (APA, § 2.7.)

8. Following the Initial Closing of the APA, services rendered by ordinary course foreclosure professionals (the "Foreclosure Professionals") were to be made by Plaintiff for the economic benefit of the Purchaser, and their fees and expenses (the "Foreclosure Professional Costs") were anticipated to be paid directly from the working capital of the Servicing Business. (APA, §§ 6.1, 6.2.)

9. Given the overlay of the bankruptcy requirements, as anticipated by both parties (APA § 6.1), certain Foreclosure Professional Costs were not yet approved or had yet to be paid prior to the Final Closing of the Servicing Sale.

10. Following the Final Closing of the Servicing Sale, the Purchaser failed to fund the reimbursement of Foreclosure Professional Costs despite the fact that the services were rendered for its benefit during the period between the Initial Closing and the Final Closing.

11. Due to Purchaser's failure and/or refusal, Plaintiff paid such Foreclosure Professional Costs, from its own funds in an amount of at least $1,122,310.29.

12. Plaintiff believes that it may be subject to further liability of approximately $139,788.67 on account of yet unpaid Foreclosure Professional Costs in the future.

13. Purchaser was well-aware of the existence of the Foreclosure Professional

Costs issue as it was expressly carved out of a settlement of other disputes pertaining to the APA between Plaintiff and the Purchaser.  At the time, the Purchaser contended that additional information was needed relating to the Foreclosure Professional Costs in order to determine both issues of liability for and the amount of such liability.  Plaintiff ultimately provided information to Purchaser relating to the Foreclosure Professional Fees sought herein as a result of the information obtained from Foreclosure Professionals in conjunction with the Final Fee/Accounting procedure established by the Court in the order approving final fee applications of Foreclosure Professionals dated May 6, 2011 [D.I. 9983] (the "Final Fee Order").

**Mortgage Servicing Business Practices Relating to Foreclosure Professional Fees**

14.     In the mortgage servicing industry, an established practice exists for compensation and reimbursement of expenses for foreclosure-related services.  Foreclosure professionals who commence and prosecute foreclosure actions on behalf of a mortgage servicer usually remit a single, aggregate invoice following the completion of the foreclosure process.[3]  Accordingly, this single invoice covers fees and expenses incurred over multiple months, if not years, during the foreclosure process.

15.     Following receipt of an invoice, servicers advance funds to the foreclosure professionals to compensate and reimburse them for necessary foreclosure-related services and costs (such advances, together with other advances made to preserve or rehabilitate the mortgaged real property, the "Servicing Advances").

16.     While servicers are directly obligated to the Foreclosure Professional,

---

[3] While the closing of a foreclosure sale will typically trigger the billing of a sole invoice for a Foreclosure Professional, some professionals submit invoices to the mortgage servicer after the occurrence of certain critical events in the foreclosure process which may include, but are not limited to, the filing of a foreclosure complaint, the completion of a foreclosure action, the reinstatement of a mortgage or a borrower's bankruptcy filing (each, a "Critical Event").  Regardless of the number of invoices, each invoice submitted to the mortgage loan servicer covers the fees earned and the expenses advanced by the Foreclosure Professional for the time period before and up to the occurrence of the Critical Event, which could be several months' worth of fees and expenses.

Foreclosure Professional Costs are ultimately chargeable to the owner of the underlying loan pursuant to the applicable servicing agreements. While servicers typically reimburse themselves for servicing advances prior to remitting the liquidation proceeds for the particular loan, servicers may seek reimbursement following liquidation as well. These post-liquidation reimbursements are considered "trailing expenses."

17. In the ordinary course of the Servicing Business, AHM SV was involved in hundreds of foreclosure-related proceedings throughout the country. To conduct such foreclosures, the services of professionals, including, but not limited to, attorneys, trustee services and real estate brokers (i.e., the Foreclosure Professionals) were regularly and customarily called upon in conformity with common industry practice.

**The Asset Purchase Agreement**

18. The APA contemplated a two-step closing process whereby there would be an Initial Closing (i.e. the economic closing) followed by a Final Closing after, *inter alia*, Purchaser obtained necessary licensing as a mortgage servicer.

19. The Initial Closing occurred on November 16, 2007.

20. The Final Closing occurred on April 11, 2008.

**Unliquidated or Unpaid Foreclosure Professional Costs at Time of Final Closing**

21. At the time of the Final Closing, certain Foreclosure Professional Costs remained unknown, unliquidated and/or unpaid.

22. While the Debtors anticipated that the unpaid Foreclosure Professional Costs were being paid in the normal course or as "trailing expenses," they had no way of knowing whether such payments were actually being made.

23. Despite the Debtors' efforts and their expectation that Purchaser would

make direct payment of the Foreclosure Professional Costs as it was obligated to do, the Purchaser has wrongfully, and in contravention of its contractual obligations under the APA, failed or refused to pay multiple Foreclosure Professionals.

24.    Initially, the Purchaser did not satisfy these Foreclosure Professional Costs claiming it first needed detailed information in order to allocate the Foreclosure Professional Costs to the correct loan, and thus ultimately charge the advances to the owners of the loan (the "Mortgage Holders").

25.    In an effort to obtain the requested information, the Plan Trustee requested and the Court required in the Final Fee Order that Foreclosure Professionals provide an accounting of all outstanding balances by AHM loan number or subject property address prior to any further payments being made. This information was gathered by the Foreclosure Professionals and the Plan Trustee and provided to Purchaser in an effort to permit them to fully analyze the Foreclosure Professional Costs sought by Plaintiff.

26.    The Plan Trustee and/or the Debtors have paid $1,122,310.29 in Foreclosure Professional Costs that are the liability and obligation of Purchaser under the APA.

27.    Additionally, further requests or demands in the amount of approximately $139,788.67 have been made on the Plan Trustee and/or the Debtors to pay Foreclosure Professional Costs that are the liability and obligation of the Purchaser under the APA.

28.    Despite representations that the information from the Foreclosure Professionals relating to the Foreclosure Professional Costs was being reviewed and that a prompt response was forthcoming from Purchaser, the Plaintiff has yet to receive a formal response as to whether or not Purchaser concedes that such Foreclosure Professional Costs are the liability and obligation of the Purchaser under the APA.

29. Given the failure to respond, and the failure to reimburse or pay the Foreclosure Professional Costs that are its sole liability and obligation under the APA, Plaintiff brings this action as the dispute is now ripe for adjudication.

30. The nature and interplay of the foreclosure process, the Foreclosure Professional invoicing timing and systems, and the bankruptcy process necessary for actual liability and authority to pay (or for the Foreclosure Professionals to retain any advance payment) Foreclosure Professionals, including the Foreclosure Professional Costs, creates a continuous obligation or account between Plaintiff and Purchaser.

31. Plaintiff has fully performed its obligations under the APA.

## COUNT I
## (DECLARATORY JUDGMENT)

32. Paragraphs 1-31 are expressly incorporated herein, along with any and all documents referenced or discussed in any of the foregoing paragraphs, as if they were fully set out.

33. Plaintiff is entitled to a declaratory judgment that the Foreclosure Professional Costs are the obligation of Purchaser under the APA.

WHEREFORE, Plaintiff demands judgment in its favor and against Purchaser in the determination that the Foreclosure Professional Costs are the obligation of Purchaser under the APA together with costs and such other or further relief as the Court may deem just and proper.

## COUNT II
## (BREACH OF CONTRACT)

34. Paragraphs 1-33 are expressly incorporated herein, along with any and all documents referenced or discussed in any of the foregoing paragraphs, as if they were fully set

out.

35. Purchaser's refusal and/or failure to pay the Foreclosure Professional Costs is a breach of Purchaser's obligations under the APA.

36. Purchaser owes Plaintiff the sum of $1,122,310.29 as reimbursement for Foreclosure Professional Costs previously paid by Plaintiff.

WHEREFORE, Plaintiff demands judgment for the sum of $1,122,310.29 in its favor and against Purchaser representing Foreclosure Professional Costs paid by Plaintiff together with costs and such other or further relief as the Court may deem just and proper.

## COUNT III
## (UNJUST ENRICHMENT)

37. Paragraphs 1-36 are expressly incorporated herein, along with any and all documents referenced or discussed in any of the foregoing paragraphs, as if they were fully set out.

38. To the extent that Purchaser has received reimbursement from third parties, such as owners of the underlying mortgages that were in connection with the Foreclosure Professional Costs that were incurred, Purchaser has been unjustly enriched by such reimbursement/payment to the extent of such reimbursement/payment.

39. Plaintiff is entitled to be paid the amounts reimbursed/paid to Purchaser for Foreclosure Professional Costs under such circumstances since it actually paid such Foreclosure Professional Costs.

WHEREFORE, Plaintiff demands judgment in its favor and against Purchaser in an amount equal to the amount that Purchaser received from any third parties on account of, or as reimbursement or payment for, Foreclosure Professional Costs actually paid by Plaintiff together with costs and such other or further relief as the Court may deem just and proper.

## COUNT IV
## (CONTRACTUAL INDEMNIFICATION)

40. Paragraphs 1-39 are expressly incorporated herein, along with any and all documents referenced or discussed in any of the foregoing paragraphs, as if they were fully set out.

41. The Foreclosure Professional Costs paid by Plaintiff as well as all attorneys' fees and expenses relating to the Foreclosure Professional Costs incurred by Plaintiff constitute "Losses" within the meaning of the APA.

42. These Losses were incurred by Plaintiff not as a result of any bad faith, willful misconduct or gross negligence of Debtors in the operation of the servicing business during the period between the Initial Closing and the Final Closing (irrespective of when such Losses were actually paid).

43. Purchaser agreed to indemnify Plaintiff for such Losses in paragraph 6.2(c) of the APA.

44. Purchaser owes Plaintiff the sum of $1,122,310.29 for indemnification of Losses representing the Foreclosure Professional Costs paid by Plaintiff.

WHEREFORE, Plaintiff demands judgment in its favor and against Purchaser for the sum of $1,122,310.29 together with attorneys' fees, costs and such other and further relief as the Court may deem just and proper.

## COUNT V
## (CONTEMPT OF COURT)

45. Paragraphs 1-44 are expressly incorporated herein, along with any and all documents referenced or discussed in any of the foregoing paragraphs, as if they were fully set out.

46. The obligation of Purchaser to pay or reimburse Plaintiff for the Foreclosure Professional Costs is embodied in the Servicing Sale Order.

47. Purchaser's continued failure, without explanation, to pay or reimburse Plaintiff for the Foreclosure Professional Costs violates the Servicing Sale Order.

48. Purchaser's conduct is willful, reckless and/or an intentional disregard of the Servicing Sale Order and has forced Plaintiff to seek the Court's intervention.

49. The Court should find Purchaser in civil contempt of Court and sanction Purchaser for its conduct, including awarding Plaintiff his costs and attorneys' fees.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, Plaintiff requests the Court find Purchaser in civil contempt of the Servicing Sale Order and impose an appropriate sanction for its conduct including, but not limited to, awarding Plaintiff his costs and attorneys' fees, together with such other or further relief as the Court may deem just and proper.

Dated:  Dated: February 7, 2014
        Wilmington, Delaware

        YOUNG CONAWAY STARGATT & TAYLOR, LLP

        */s/ Margaret Whiteman Greecher*
        Sean M. Beach (No. 4070)
        Curtis J. Crowther (No. 3238)
        Margaret Whiteman Greecher (No. 4652)
        Rodney Square
        1000 North King Street
        Wilmington, Delaware 19801
        Telephone: (302) 571-6600
        Facsimile: (302) 571-1253

        -and-

        HAHN & HESSEN LLP
        Mark S. Indelicato
        Edward L. Schnitzer
        488 Madison Avenue
        New York, New York 10022
        Telephone: (212) 478-7200
        Facsimile: (212) 478-7400

        *Co-Counsel to the Plan Trustee*