## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x

In re:                                              :      Chapter 11
                                                    :
AMERICAN HOME MORTGAGE                              :      Case No. 07-11047 (CSS)
HOLDINGS, INC.,                                     :      Jointly Administered
a Delaware corporation, *et al.*,[1]                :
                                                    :      **Response Deadline:  July 22, 2014 by 4:00 p.m. (ET)**
                                    Debtors.         :     **Hearing Date:  August 6, 2014 at 2:30 p.m. (ET)**
                                                    :

------------------------------------------------------------------ x

## PLAN TRUSTEE'S MOTION FOR AN ORDER APPROVING STIPULATION AND RELEASE AGREEMENT BETWEEN THE PLAN TRUSTEE AND TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA RESOLVING CLAIMS ARISING FROM, AND RELEASE OF CASH COLLATERAL SECURING, DEBTORS' OBLIGATIONS IN CONNECTION WITH SURETY BONDS

Steven D. Sass, as the liquidating trustee (the "Plan Trustee") for the trust (the

"Plan Trust") established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors*

*Dated as of February 18, 2009* (the "Plan") in connection with the chapter 11 cases of the above-

captioned debtors (collectively, the "Debtors"), hereby moves this Court (the "Motion"),

pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"),

for entry of an order approving and authorizing the stipulation and release agreement (the

"Settlement Stipulation"),[2] attached as **Exhibit 1** to the proposed form of order attached

hereto as **Exhibit A** (the "Proposed Order"), by and between the Plan Trustee and Travelers

Casualty and Surety Company of America ("Travelers" and together with the Plan Trustee,

the "Parties").  In support of this Motion, the Plan Trustee respectfully represents as

---

[1]  The Debtors in these cases are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.); American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

[2]  Capitalized terms not otherwise defined in this Motion or the Settlement Stipulation shall have the meanings ascribed to them in the Plan.

follows:

**JURISDICTION**

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Article 14 of the Plan.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal predicates for the relief requested are Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a).

**GENERAL BACKGROUND**

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") commencing these chapter 11 cases (the "Chapter 11 Cases").

3.      On February 23, 2009, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order").

4.      On November 30, 2010 (the "Effective Date"), the Plan became effective.  Pursuant to the terms of the Plan, on the Effective Date, that certain *Plan Trust Agreement* (the "Trust Agreement") was executed, thereby creating the Plan Trust and appointing the Plan Trustee as trustee of the Plan Trust.  Also on the Effective Date, all of the Debtors' assets were transferred to the Plan Trust.

5.      Pursuant to the Plan and Trust Agreement, the Plan Trustee has authority and standing to liquidate the assets of the Plan Trust and to compromise causes of action on behalf of the Debtors and claims against the Debtors.

## RELEVANT BACKGROUND

**A.**     **The Surety Bonds and the Cash Collateral**

6.     Prior to the Petition Date, Travelers issued surety bonds on behalf of one or more of the Debtors (collectively, the "Prepetition Surety Bonds") which bonded the obligations of those Debtors as regulated residential mortgage loan bankers, brokers and/or servicers to comply with certain state laws and regulations.  To the extent that the Debtors violated any such state laws or regulations, consumers, among others, are permitted to file unresolved claims with the state regulator, who in turn could make a claim against the applicable Surety Bond (a "Surety Claim").

7.     On October 31, 2003, Debtor American Home Mortgage Holdings, Inc. ("AHM Holdings") and Travelers entered into that certain *General Contract of Indemnity* (the "AHMH Indemnity Agreement") in favor of Travelers pursuant to which AHM Holdings was obligated to indemnify and reimburse Travelers for all actual losses, costs and damages sustained or incurred in connection with the Surety Bonds including, but not limited to, reasonable counsel fees and expenses (collectively, "Losses").

8.     On March 21, 2007, Debtor American Home Mortgage Investment Corporation ("AHM Investment") and Travelers entered into that certain *General Contract of Indemnity* (the "AHMI Indemnity Agreement" and together with the AHMH Indemnity Agreement, the "Prepetition Indemnity Agreements") in favor of Travelers pursuant to which AHM Investment was obligated to indemnify and reimburse Travelers for all actual Losses.

9.     On July 13, 2007, the Debtors posted $5 million in cash collateral (the "Cash Collateral") with Travelers to secure the payment of any Loss or other obligation under the Prepetition Surety Bonds or the Prepetition Indemnity Agreements.

01:15687812.1

10.     On October 1, 2007, the Bankruptcy Court entered its *Order (I) Approving and Authorizing Term Sheet with Travelers Insurance; (II) Authorizing Debtors to Obtain Surety Bonds; and (III) Granting Administrative Claims*, approving a term sheet (the "Term Sheet") and a *General Contract of Indemnity* (the "<u>Postpetition Indemnity Agreement</u>" and together with the Prepetition Indemnity Agreements, the "<u>Indemnity Agreements</u>") between the Debtors and Travelers with respect to the issuance of additional surety bonds with an aggregate penal amount of $1.5 million on behalf of one or more of the Debtors (collectively, the "<u>Postpetition Surety Bonds</u>" and together with the Prepetition Surety Bonds, the "<u>Surety Bonds</u>").

11.     On October 16, 2007, Travelers issued the Postpetition Surety Bonds and Debtor American Home Mortgage Servicing, Inc. ("<u>AHM Servicing</u>") and Travelers entered into the Postpetition Indemnity Agreement in favor of Travelers pursuant to which AHM Servicing was obligated to indemnify and reimburse Travelers for all Losses.

12.     The Surety Bonds were validly terminated and cancelled pursuant to notices of termination sent by Travelers to the appropriate parties.  Notwithstanding, the possibility remains that a Surety Claim arising prior to such termination may still be asserted against Travelers under a Surety Bond until the expiration of all applicable statute of limitations periods in states in which the Surety Bonds were issued (the "<u>Liability Period</u>").

13.     On or about January 10, 2008, Travelers filed five (5) proofs of claim asserting contingent, unliquidated claims arising from or relating to the Surety Bonds and the Indemnity Agreements against the Debtors, which claims were assigned claim nos. 8357, 8358, 8359, 8360 and 8363 ("<u>Claim Nos. 8357, 8358, 8359, 8360</u> and <u>8363</u>,"

respectively, and collectively, the "Travelers Claims"), which claims Travelers asserts are secured to the extent of the value of the Cash Collateral.

14.    On or about December 6, 2013, the Plan Trustee made a demand upon Liberty Mutual to account for all charges taken against the Cash Collateral and return the balance to the Plan Trust asserting that no further liability existed under the Surety Bonds as the Debtors had ceased and/or sold all business operations close to seven (7) years earlier.

15.    Travelers refused, asserting, among other things, that (a) the Liability Period for certain Surety Bonds ran through 2029 based on its analysis of the various applicable state statutes of limitations; (b) the potential liability under the Surety Bonds exceeded the amount of the Cash Collateral, and; (c) pursuant to the terms of the Term Sheet, it is entitled to retain the Cash Collateral, in its sole and absolute discretion, through the expiration of the Liability Period to secure the payment of any potential Losses.

16.    The Parties have participated in lengthy, good faith and arm's-length negotiations and agreed on the terms for the resolution of the Travelers Claims and the release of the excess Cash Collateral in accordance with and subject to the terms of the Settlement Stipulation.

### THE SETTLEMENT STIPULATION

17.    The principal terms of the Settlement Stipulation are set forth below:[3]

(1)    This Stipulation shall be effective upon the entry of a final, non-appealable order of the Bankruptcy Court approving the Stipulation and authorizing the Parties to take any and all actions that are necessary or appropriate to implement this Settlement (the "Stipulation Effective Date").

(2)    Within five (5) business days of the occurrence of the Stipulation

---

[3] The terms of the Settlement Stipulation set forth herein are a summary only. To the extent of any inconsistency between this summary and the Settlement Stipulation, the terms of the Settlement Stipulation shall govern.

Effective Date, Travelers will release and remit to the Plan Trustee $3,860,000 of the Cash Collateral (the "Released Collateral") by wire transfer of immediately available funds to the account designated in the Settlement Stipulation.

(3)     Upon the Stipulation Effective Date and receipt of the Released Collateral by the Plan Trustee, the Trust hereby conveys, transfers and assigns all of its right, title and interest in and to the Account including the balance of the Cash Collateral (of approximately $958,000), free and clear of any claim or interest, to Travelers in full and final satisfaction of any and all contingent liabilities that may arise on account of potential Surety Claims and other Losses.  For the sake of clarity, the Trust irrevocably waives any right or claim to any amounts conveyed, transferred and assigned herein notwithstanding the actual amounts of Losses sustained after the Stipulation Effective Date.  The Plan Trustee hereby agrees to execute such documents as are necessary to effectuate the foregoing.

(4)     Upon the occurrence of the indefeasible disposition of the Account including the balance of the Cash Collateral to Travelers as set forth in the preceding paragraph, each of the Travelers Claims shall be disallowed and expunged in their entirety.

(5)     Effective upon the occurrence of the Stipulation Effective Date and receipt of the Released Collateral by the Plan Trustee, (a) Travelers shall be deemed to have forever waived and released any and all claims and/or causes of action of any kind or nature that it may have against any of the Debtors, their estates, the Plan Trustee, in his capacity as such, or the Plan Trust arising from or relating to the Surety Bonds or the Indemnity Agreements whether any such claim and/or cause of action is known or unknown at this time, fixed or contingent, liquidated or unliquidated, and (b) the Plan Trustee, solely in his capacity as such, for and on behalf of the Debtors and the Plan Trust, shall be deemed to have forever waived and released any and all claims and/or causes of action of any kind or nature that the Debtors or the Plan Trust may have against Travelers arising from or relating to the Surety Bonds or the Indemnity Agreements, whether any such claim and/or cause of action is known or unknown at this time, fixed or contingent, liquidated or unliquidated. Notwithstanding the foregoing, (a) Travelers will continue to investigate, administer and, if required, pay Surety Claims, and the rights of Travelers and holders of Surety Claims shall not be impaired by this Stipulation, (b) the Plan Trustee, the Debtors and their estates, to the extent that the Plan Trust is still in existence, shall reasonably cooperate with such actions and continue to perform their respective non-financial obligations under the Indemnity Agreements, and (c) the Parties' rights or obligations expressly set forth in this Stipulation shall not be waived or released.

## RELIEF REQUESTED

18.    By this Motion, and in accordance with Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the Plan Trustee respectfully requests the entry of an order approving and authorizing the Settlement Stipulation.  The Plan Trustee has weighed the costs, risks and disruption that would arise from litigating the numerous issues identified above against the compromises contained within the Settlement Stipulation.  In the Plan Trustee's reasonable business judgment, the terms and conditions of the Settlement Stipulation are fair and equitable and serve the best interests of the Plan Trust and the Debtors' creditors, the holders of the beneficial interests in the Trust, particularly when compared with the costs and disruption of litigation.  By entering into the Settlement Stipulation, the Plan Trustee will be able to liquidate the excess Cash Collateral for distribution with other Plan Trust assets to the beneficiaries of the Plan Trust.

## BASIS FOR RELIEF REQUESTED

### A.    Approval of the Settlement Stipulation

19.    The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)).  Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate." 11 U.S.C. § 105(a).

20.    "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005).  The court should not, however, substitute its judgment for that of the debtors, or

in this case, the Plan Trustee. *See Neshaminy Office Bldg.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

When exercising such discretion, the bankruptcy court must determine whether the compromise

is "fair, reasonable, and in the best interests [sic] of the estate." *Key3Media Group*, 336 B.R. at

92.

21.     The court need not decide the numerous questions of law or fact

raised by the litigation, but rather should canvas the issues to see whether the settlement

falls below the lowest point in the range of reasonableness. *See Cosoff v. Rodman (In re W.T.*

*Grant and Co.)*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *see also In re*

*World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2000) (stating that "the

court does not have to be convinced that the settlement is the best possible compromise.

Rather, the court must conclude that the settlement is within the reasonable range of

litigation possibilities.") (internal citations and quotations omitted).

22.     In making this determination, Courts consider the following four factors:

(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the

matter of collection; (c) the complexity of the litigation involved, and the expense,

inconvenience and delay necessarily attendant thereto; and (d) the paramount interest of the

creditors and a proper deference to their reasonable opinions. *See Martin*, 91 F.3d at 393.

1.     **Application of the Martin Factors**

a.     ***The Results of Trial are Uncertain***

23.     While the Plan Trustee believes he has a strong litigation position and

would ultimately prevail, such litigation (as with any litigation) has an inherent level of risk

and uncertainty.   Indeed, the Plan Trustee would face several challenges such as

establishing that the Cash Collateral may not rightfully be held by Travelers for the duration

of the Liability Period or, if permitted to do so, that Travelers has no potential liability

during the Liability Period or any such potential liability is substantially less than the amount of the Cash Collateral being held and/or the Liability Period is significantly less than that asserted by Travelers.

24.     The Settlement Stipulation, on the other hand, removes any such uncertainty and provides for the immediate release of $3.86 million of excess Cash Collateral to the Plan Trust, the release of the estate from all claims arising from or relating to the Surety Bonds and the Indemnity Agreements, and Travelers continued investigation, administration and, if required, payment of Surety Claims through the remainder of the Liability Period.  As such, this factor weighs in favor of approval.

**b.    _No Foreseeable Difficulty in Collection_**

25.     Assuming that the Plan Trustee was ultimately successful in the litigation (and any subsequent appeals), he does not anticipate there would be any difficulty in collecting on a judgment against Travelers.  As such, this factor is neutral.

**c.    _The Litigation would be Complex and Result in Unnecessary Expense, Inconvenience and Delay for the Estate_**

26.     In determining whether to enter into the Settlement Stipulation, the Plan Trustee, in consultation with his professionals, analyzed the nature and likely cost of litigating the return of the excess Cash Collateral.  These costs would likely include, among other things, retaining an expert to conduct an actuarial analysis on the potential claims, commencing litigation, engaging in motions practice, discovery, trial preparation and a trial on the merits.  The litigation itself is likely to be complex as the Plan Trustee would have to establish that Travelers has no potential liability under the Surety Bonds (or at least substantially less liability than the amount of the Cash Collateral), which liability may differ under the terms of each individual Surety Bond (100+) as well as the various applicable

state statute of limitations.   Further, the Plan Trustee recognizes that in the event of litigation, Travelers would likely seek to recover its litigation expenses from the Cash Collateral pursuant to the Indemnification Agreements, further reducing the amount of the excess Cash Collateral ultimately available for distribution.

27.     As a result of such consultations and in light of the litigation risks, costs and distraction from the Plan Trustee's efforts to effectuate an efficient liquidation of the Debtors' estates in accordance with the terms of the Plan, the Plan Trustee believes that the resolution of these matters under the terms of the Settlement Stipulation, without the need for protracted and complex litigation, represents a favorable outcome that is both cost effective and efficient.   The proposed settlement will save the Plan Trustee considerable time and effort, spare the Plan Trust the expense attendant with such litigation, and avoid any further distraction to the Plan Trustee's efforts to maximize and expedite recoveries for the Debtors' creditors.   As such, this factor weighs in favor of approval.

**d.**     ***The Settlement is in the Best Interest of Creditors***

28.     For the same reasons, entry into the Settlement Stipulation also serves the paramount interest of the Debtors' creditors, the holders of beneficial interests in the Plan Trust.   The Settlement Stipulation's resolution of the claims and defenses asserted among the Parties represents a significant savings for the Debtors' creditors in both time and expense by obviating the need for any litigation regarding resolution of the Travelers Claims and release of the excess Cash Collateral, which funds will be immediately available for distribution to creditors under the Plan.   As such, this factor weighs in favor of approval.

**e.**     ***Summary***

29.     In sum, the resolution of the matters embodied in the Settlement Stipulation represents a settlement whose terms rest well above the lowest point in the

reasonable range of potential litigation outcomes, obviates the expense, delay, and inconvenience attendant in any litigation, and advances the paramount interests of the Debtors' creditors.  Accordingly, the Plan Trustee contends that the Settlement Stipulation satisfies the requirements of Bankruptcy Rule 9019 and should be approved by the Court.

## NOTICE

30.     Notice of this Motion has been be provided to (a) the Office of the United States Trustee for the District of Delaware; and (b) all other parties that have filed a notice of appearance and demand for service of papers in the Chapter 11 Cases.  The Plan Trustee asserts that such notice is appropriate and no other or further notice is necessary.

## NO PREVIOUS REQUEST

31.     No prior request for the relief sought in this Motion has been made to this or any other court.

**WHEREFORE**, the Plan Trustee respectfully requests that this Court enter an order, substantially similar to the Proposed Order, (a) approving and authorizing the Settlement Stipulation and (b) granting such other and further relief as may be just and proper.

Dated: July 8, 2014

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*/s/ Sean M. Beach*
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Patrick A. Jackson (No. 4976)
Michael S. Neiburg (No. 5275)
1000 North King Street
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Jeffrey Zawadzki
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Plan Trustee*

01:15687812.1