# EXHIBIT B

**Sass Declaration**

01:16084886.8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x   Chapter 11
In re:                                                           :
                                                                 :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                           :
HOLDINGS, INC., a Delaware corporation, et al.[1],               :   Jointly Administered
                                                                 :
      Debtors.                                                   :
                                                                 :
---------------------------------------------------------------- x

## DECLARATION OF STEVEN D. SASS IN SUPPORT OF THE PLAN TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO §§ 105 AND 1142 OF THE BANKRUPTCY CODE (I) AUTHORIZING FIRST DISTRIBUTION TO HOLDERS OF ALLOWED GENERAL UNSECURED CLAIMS AND (II) GRANTING RELATED RELIEF, INCLUDING CLARIFICATION OF THE PLAN AND ENFORCEMENT OF CERTAIN PLAN PROVISIONS AND COURT ORDERS

I, Steven D. Sass, pursuant to 28 U.S.C. § 1746, declare:

1.  I am the duly-appointed trustee of the AHM Liquidating Trust (the "Plan Trust"), which was established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan"). In this capacity, I am the sole officer of each of the above-captioned debtors (the "Debtors") and am responsible for, among other things, carrying out the duties set forth in the Plan and the trust agreement concerning the Plan Trust. As a result of my tenure with the Plan Trust, my review of public and non-public documents, and my

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp. , a New York corporation (8580). The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

01:16084886.8

discussions with employees and retained outside professionals of the Debtors and the Plan Trust, I have gained a working knowledge of the Debtors' business, policies and procedures, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Debtors' and the Plan Trust's employees and retained advisors that I interacted with in the ordinary course of my responsibilities. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

2. I submit this Declaration in support of the *Plan Trustee's Motion for an Order Pursuant to §§ 105 and 1142 of the Bankruptcy Code (I) Authorizing First Distribution to Holders of Allowed General Unsecured Claims and (ii) Granting Related Relief, Including Clarification of the Plan and Enforcement of Certain Plan Provisions and Court Orders* filed concurrently herewith (the "Motion"). Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

***Trust's Cash Position; Solvent Estates***

3. Since my appointment, I have overseen the liquidation and monetization of Plan Trust Assets, the payment or other resolution of substantially all S/A/P Claims payable under the Plan, and the litigation or other resolution of substantially all general unsecured claims payable under the Plan. As stated in the most recently filed post-confirmation quarterly summary report as of September 30, 2014 [D.I. 11038], the Plan Trust holds approximately $43 million in cash and cash equivalents.

4. At present, there are no unpaid, Allowed Claims against the Great Oak Estate, and the Zurich Claim is the only unpaid Allowed Claim against the AHM Ventures Estate. I expect that the Zurich Claim will be paid in full, with interest, from the Initial GUC Distribution.

*Non-Debtor Subsidiary Claims*

5.   The Non-Debtor Subsidiaries are (or were) wholly-owned by Debtors AHM Holdings, AHM Investment, and AHM Corp., as applicable. The following Non-Debtor Subsidiary Claims were listed on the Debtors' schedules and were not identified as contingent, unliquidated, or disputed:

| Estate | Non-Debtor Subsidiary | Total Claim Amount |
|---|---|---|
| AHM Investment | American Home Securities, LLC | $2,650,000 |
| AHM Investment | AHM SPV III, LLC | $24,196,644 |
| AHM SV | AHM SPV I, LLC | $7,642,241 |
| AHM Corp. | AHM SPV I, LLC | $14,114,859 |
| AHM Corp. | Melville Reinsurance Corp. | $1,356,873 |
| | **TOTAL** | **$49,960,617** |

6.   I believe there are a number of legal and practical difficulties with making distributions on Non-Debtor Subsidiary Claims at this time. First, I have been unable to validate all of the Non-Debtor Subsidiary Claims based on the Debtors' books and records, and, as a result, I anticipate that I may seek leave of the Court to amend the Debtors' schedules at a later date. Second, American Home Securities, LLC and Melville Reinsurance Corp. have been dissolved in accordance with Delaware and Vermont state law, respectively; thus, any distribution to those Non-Debtor Subsidiaries would presumably go unclaimed and revert to the Plan Trust in accordance with the Plan. Third, given that the other Non-Debtor Subsidiaries are wholly owned by the Plan Trust, it is possible that distributions on their Non-Debtor Subsidiary Claims would simply be returned to the Plan Trust as equity distributions. For these reasons, I believe it is necessary and appropriate to treat the Non-Debtor Subsidiary Claims as "Disputed Claims" under the Plan for purposes of the Initial GUC Distribution, and to reserve any

distributions that would otherwise have been made on account of such claims pending further order of the Court.

*BofA Syndicate Unsecured Claim*

7. With respect to the BofA Syndicate Unsecured Claim, I and my professionals are reviewing data and documentation provided by BofA as Administrative Agent regarding the application of the proceeds of collateral to the BofA Syndicate Secured Claim, so as to determine the deficiency amount that will be allowed under the BofA Global Settlement Stipulation. If I am unable to make this determination prior to the Initial GUC Distribution, I believe it is necessary and appropriate to treat the BofA Syndicate Unsecured Claim as a "Disputed Claim" under the Plan for purposes of the Initial GUC Distribution, and to reserve for it based upon the $50,000,000 maximum amount allowable under the BofA Global Settlement Stipulation.

*Indenture Trustees and Subordinated Trust Preferred Claims*

1. Following the Plan Effective Date, (i) Law Debenture timely submitted invoices for Indenture Trustee Expenses in the amount of $320,652.08 relating to the Baylis Trust I, Baylis Trust II, Baylis Trust IV, and Baylis Trust V transactions, and (ii) Wilmington Trust timely submitted invoices for Indenture Trustee Expenses in the amount of $390,572.24 relating to the Baylis Trust III, Baylis Trust VI, Baylis Trust VII, and Baylis Trust VIII transactions. Because the invoiced Indenture Trustee Expenses exceed the $254,451 and $245,549 amounts set forth in the Plan vis-à-vis the Estates of AHM Holdings and AHM Investment, the Indenture Trustees will share those amounts pro rata in proportion to the relevant Allowed Subordinated Trust Preferred Claims they represent against each Estate. (*See* Plan Art. 4(I)(3)). Below is a table of the relevant Allowed Subordinated Trust Preferred Claims represented by each of the Indenture Trustees vis-à-vis the Estates of AHM Holdings and AHM

Investment, and the resulting payout for each Indenture Trustee from the first distributions on Allowed Subordinated Trust Preferred Claims in each Estate:

| AHM Holdings | | | | |
|---|---|---|---|---|
| **Indenture Trustee** | **SPE Issuer** | **Allowed Claims Represented** | **Pro Rata %** | **Payment Amount** |
| Law Debenture | Baylis Trust II | $52,746,454 | 17.12% | $43,573.70 |
| | Baylis Trust IV | $52,696,336 | 17.11% | $43,532.30 |
| | Baylis Trust V | $51,986,698 | 16.88% | $42,946.07 |
| Wilmington Trust | Baylis Trust III | $62,401,845 | 20.26% | $51,549.99 |
| | Baylis Trust VI | $31,181,335 | 10.12% | $25,758.82 |
| | Baylis Trust VII | $20,787,893 | 6.75% | $17,172.82 |
| | Baylis Trust VIII | $36,215,222 | 11.76% | $29,917.30 |
| | | | Total | $254,451.00 |

| AHM Investment | | | | |
|---|---|---|---|---|
| **Indenture Trustee** | **SPE Issuer** | **Allowed Claims Represented** | **Pro Rata %** | **Payment Amount** |
| Law Debenture | Baylis Trust I | $52,746,454 | 31.56% | $77,501.38 |
| Wilmington Trust | Baylis Trust III | $62,401,845 | 37.34% | $91,688.23 |
| | Baylis Trust VI | $31,181,335 | 18.66% | $45,815.34 |
| | Baylis Trust VII | $20,787,893 | 12.44% | $30,544.05 |
| | | | **TOTAL** | $245,549.00 |

8. At present, the Senior Unsecured Claims against AHM Investment consist only of the Sovereign Claim and the BofA Syndicate Unsecured Claim, both of which will share pro rata in all distributions upon Allowed Subordinated Trust Preferred Claims against AHM Investment in excess of the $245,549 that is due to the Indenture Trustees. The BofA Syndicate Unsecured Claim is the only Senior Unsecured Claim against AHM Holdings, so it will receive, once determined and allowed (see paragraph 16 of the Motion), all distributions upon Allowed Subordinated Trust Preferred Claims against AHM Holdings in excess of the $254,451 that is due to the Indenture Trustees.

*Undeliverable and Uncashed Distributions*

9. On or about October 15, 2013, I began making distributions under the Plan to holders of Allowed Priority Claims by mailing checks in accordance with Articles 9(E) and (G) of the Plan. Of these Priority Distributions, as of October 15, 2014, approximately (i) 206 checks with net payments totaling $220,200 were returned as undeliverable for lack of a current address or otherwise (the "Undeliverable Distributions"), and (ii) 205 checks with net payments totaling $147,012 have not been cashed or otherwise presented for collection (the "Uncashed Distributions").[2] On September 3, 2014, I filed a *Notice of Undeliverable Distributions* [D.I. 11030] including the name and last known address of the claimants to whom the Undeliverable Distributions were directed. If these Undeliverable Distributions cannot be delivered before December 2, 2014, I intend to allocate the underlying funds to the respective Estates in accordance with the Stipulated Asset Allocation. With respect to Uncashed Distributions, I believe it is necessary and appropriate to treat these checks as "unclaimed distributions" within the meaning of Section 3.13 of the Plan Trust Agreement, stop payment on them, and allocate the underlying funds to the respective Estates in accordance with the Stipulated Asset Allocation.

*Missing W-9 Claims*

10. I am required to file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) (Plan Tr. Agmt. § 3.7), which requires that I have taxpayer identification numbers for the beneficiaries of the Plan Trust. I am also advised that failure to comply with IRS reporting requirements could lead to penalties that would be payable from the corpus of the Plan Trust to the detriment of general unsecured creditors.

---

[2] As these Priority Distributions were on account of employee wages, the Plan Trust made required tax withholdings and payroll deductions prior to disbursing the funds.

11.  I have sent numerous requests to Holders of Allowed Claims to provide their taxpayer identification number on an IRS Form W-9. To date, a number of Holders have not remitted executed Forms W-9. I will keep trying to obtain those forms prior to the Initial GUC Distribution, but failing that, I believe it is necessary and appropriate to treat these Holders' Claims as "Disputed Claims" under the Plan for purposes of the Initial GUC Distribution, and to reserve any distributions that otherwise would have been made on account of such Claims pending receipt of Forms W-9 from the Holders of such Claims or further order of the Court.

***Initial GUC Distribution***

12.  Subject to the approval of the Plan Oversight Committee, I propose to make an interim distribution to Holders of Allowed General Unsecured Claims, and to reserve the remainder of the Plan Trust's assets pending a final distribution. The ultimate distribution amount is not yet determined, but at present, I anticipate distributing (or reserving, as applicable) approximately $20 million.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: _Columbia_, Maryland

November 25, 2014

_____
Steven D. Sass

# EXHIBIT C

**Martinez Declaration**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x   Chapter 11
In re:                                                           :
                                                                 :   Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE                                           :
HOLDINGS, INC., a Delaware corporation, *et al.*[1],             :   Jointly Administered
                                                                 :
    Debtors.                                                     :
                                                                 :
---------------------------------------------------------------- x

### DECLARATION OF SCOTT MARTINEZ IN SUPPORT OF THE PLAN TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO §§ 105 AND 1142 OF THE BANKRUPTCY CODE (I) AUTHORIZING FIRST DISTRIBUTION TO HOLDERS OF ALLOWED GENERAL UNSECURED CLAIMS AND (II) GRANTING RELATED RELIEF, INCLUDING CLARIFICATION OF THE PLAN AND ENFORCEMENT OF CERTAIN PLAN PROVISIONS AND COURT ORDERS

I, Scott Martinez, pursuant to 28 U.S.C. § 1746, declare:

1.  I am currently employed by Zolfo Cooper, LLC ("ZC"), the financial advisor to the above-captioned debtors (the "Debtors") and the AHM Liquidating Trust (the "Plan Trust"), which was established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan"). As a Director with ZC, and in connection with its retention by the Debtors and the Plan Trust, I am responsible for, among other things, assisting with resolving disputes, including litigation and the claims reconciliation process. As a result of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580). The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

01:16084886.8

my tenure with the Debtors and the Plan Trust, my review of public and non-public documents, and my discussions with employees and retained outside professionals of the Debtors and the Plan Trust, I have gained a working knowledge of the Debtors' business, policies and procedures, and books and records. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Debtors' and the Plan Trust's employees and retained advisors that I interacted with in the ordinary course of my responsibilities. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

2. I submit this Declaration in support of the *Plan Trustee's Motion for an Order Pursuant to §§ 105 and 1142 of the Bankruptcy Code (I) Authorizing First Distribution to Holders of Allowed General Unsecured Claims and (ii) Granting Related Relief, Including Clarification of the Plan and Enforcement of Certain Plan Provisions and Court Orders* filed concurrently herewith (the "Motion"). Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

### *The Stipulated Asset Allocation*

3. A central feature of the Plan was its global settlement of intercompany claims and other potential inter-Estate disputes by means of a Stipulated Asset Allocation, which permits the Plan Trustee to divide the proceeds of the liquidation of any Plan Trust Asset between the respective Estates in accordance with a pre-set formula. (*See generally* Plan Art. 6). The underlying premise of the Stipulated Asset Allocation was that, so long as the Estates agreed upon and stipulated to (i) the residual value of the Assets being contributed by each Estate to the Plan Trust (i.e., gross asset value, net of S/A/P Claims payable by such Estate), and (ii) the percentage share of Plan Trust Operating Expenses that should be borne by each Estate, it would

be possible for the Estates to share in the proceeds of all Plan Trust Assets while at the same time respecting entity separateness.

4. The Plan's Stipulated Asset Allocation, however, contains a scrivener's error, in that it requires the Plan Trustee to divide the liquid assets of the Plan Trust between the Estates in proportions totaling 100.01%. This was the result of a rounding error when the financial analysis underlying the Stipulated Asset Allocation (which was prepared by ZC, and had expressed percentages to the *n*-th decimal point) was conformed to the drafting conventions of the Plan (which was prepared by Young Conaway, and expressed percentages in the hundredths). This rounding error can be remedied by expressing the percentages in the thousandths, as illustrated in the following table:

| Estate | Plan % Share | Corrected % Share |
| --- | --- | --- |
| AHM Holdings | 30.67% | **30.670%** |
| AHM Investment | 15.18% | **15.182%** |
| AHM Acceptance | 12.68% | **12.676%** |
| AHM SV | 3.27% | **3.270%** |
| AHM Corp. | 37.30% | **37.299%** |
| AHM Ventures | 0.43% | **0.425%** |
| Homegate | 0.11% | **0.109%** |
| Great Oak | 0.37% | **0.369%** |
| **TOTAL** | 100.01% | **100.000%** |

5. The Plan is silent as to what happens to cash in an Estate (i) after all Allowed General Unsecured Claims are paid in full, with interest, or (ii) if there are no Allowed General Unsecured Claims. As discussed in the Motion, the Plan Trustee proposes that any cash balances in the AHM Ventures and Great Oak Estates be reallocated to the other Estates pro rata in the proportions set forth in the Stipulated Asset Allocation. The following table illustrates each

Estate's pro rata share of AHM Ventures and Great Oak assets, based upon its respective share of all Plan Trust Assets per the Stipulated Asset Allocation (as corrected):

| Estate | Corrected % Share of All Plan Trust Assets | % Share of AHM Ventures/Great Oak Assets |
|---|---|---|
| AHM Holdings | 30.670% | 30.915% |
| AHM Investment | 15.182% | 15.304% |
| AHM Acceptance | 12.676% | 12.777% |
| AHM SV | 3.270% | 3.296% |
| AHM Corp. | 37.299% | 37.598% |
| Homegate | 0.109% | 0.110% |
| **TOTAL** | 99.206% | 100.000% |

*Designated REO Assets*

6. All Designated REO Assets have now been liquidated, with the net liquidation proceeds totaling $7,675,950. The proceeds of Designated REO Assets are commingled with other cash of the Plan Trust, but are identifiable and traceable as an accounting matter. In accordance with the Plan, the amount of these proceeds will be excluded from the calculation of BofA Syndicate Net Distributable Assets for the applicable Estates.

*Foreclosure Professionals' Fees*

7. All of the foreclosure professionals other than the White Firm have provided a sufficient Accounting to support the amounts claimed as outstanding and, accordingly, were paid.

8. The Accounting provided by the White Firm did not comply with the Fee Order because it failed to match up amounts claimed as outstanding against invoices that had previously been included in the White Firm's fee applications. Without this information, I am unable to determine what amount, if any, of the claimed fees and expenses were actually

approved by the Court, much less the amount that remains outstanding. The White Firm acknowledged the deficiency in its Accounting and indicated it would send a revised Accounting. Despite several requests from the Plan Trust for a revised Accounting, the White Firm has failed to provide one.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: New York, New York
November 25, 2014

_____
Scott Martinez