Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3    Case No. 07-11047-CSS

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    AMERICAN HOME MORTGAGE HOLDINGS, INC.

8

9        Debtors.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

11

12                            United States Bankruptcy Court

13                            824 N. Market Street

14                            Wilmington, DE  19801

15

16                            February 20, 2015

17                            2:08 PM

18

19

20

21   B E F O R E :

22   HON. CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:  LESLIE MURIN

1    HEARING re Doc #11058 - Plan Trustee's Motion for an Order

2    Authorizing the Abandonment and Destruction of Documents and

3    Records

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Theresa Pullan

1    A P P E A R A N C E S :

2

3    YOUNG, CONAWAY, STARGATT & Taylor, LLP

4           Attorneys for Debtors

5           1000 North King Street

6           Wilmington, DE  19899

7    BY:   SEAN M. BEACH, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE CLERK:  All rise.

3            THE COURT:  Please be seated.  Good afternoon.

4            MR. BEACH:  Good afternoon, Your Honor.  May it

5    please the court, Sean Beach, Young Conaway Stargatt and Taylor

6    on behalf of the plan trustee.

7            Your Honor, my intention was to start and give Your

8    Honor a brief update in terms of where the plan trust was and

9    its wind down process, then to talk a little bit about the

10   timing issues related to the documents that we have in the

11   warehouse, and then but quickly get to where the status of the

12   objections are.

13           We've resolved I think about half of the objections

14   and then there are still some outstanding.  My understanding is

15   that the primary issue outstanding is the timing as well.  So I

16   think it's generally limited to a timing issue in terms of how

17   much of a review period parties are provided at the end of the

18   day.

19           THE COURT:  All right.

20           MR. BEACH:  So in terms of the general status of the

21   wind down process, the plan trust is envisioning doing two

22   general unsecured distributions.  One should happen at the end

23   of this quarter or at the beginning of the next quarter.  And

24   that will be, the intention is to distribute approximately $20

25   million in connection with that distribution, which is about

1   half of the cash that the plan trust intends to distribute

2   overall, which is a good thing in that we only contemplated

3   having $20 million to distribute in the disclosure statement

4   phase.

5            Now claims have changed in terms of some estates

6   having higher claims than anticipated in the disclosure

7   statement, some having lower.  So not all of the distributions

8   will be materially higher than what's in the disclosure

9   statement, but the good news is we are distributing

10  approximately twice as much cash, or we anticipate distributing

11  twice as much cash assuming we can wind things down as quickly

12  as we anticipate.

13           And we do anticipate doing that final distribution

14  once we see any issues that may arise from the first

15  distribution given that there are over 10,000 creditors in the

16  case, many of those who have allowed claims that'll be getting

17  distributions, and we have some issues with W-9s and the like

18  that will have to be worked out between the first distribution

19  and the final.

20           We do hope to get that final distribution out by the

21  end of 2015.  I think it's probably more realistic that it will

22  be in early 2016 that that final distribution would go out.  So

23  at some point close to that period of time, I would expect that

24  we'll be filing another motion either in connection with any

25  issues related to that distribution or hopefully around that

1    time or shortly after that time closing the cases overall.

2          At this point we have only two or three claims that

3    are outstanding and they're only outstanding because they're

4    trying to document and finalize settlements with those

5    claimants so we don't believe that there are any outstanding

6    claim issues with the estate.  There's no pending or threatened

7    litigation that's out there.  There's one litigation with Mr.

8    Gwynne's client, Ocwen, which we've settled in mediation, and

9    are documenting or it involves negotiations with the

10   predecessor servicer as well.  And so the document I think is

11   now with them or soon to be with them, and hopefully we'll have

12   that finalized soon.

13          With respect to the premises that the plan trust is

14   currently operating in, they're in Farmingdale, New York, and

15   it includes a couple of office spaces as well as a big

16   warehouse space.  As you saw in the document destruction

17   motion, we have about 73, 7400 boxes of documents remaining.

18   And just to give Your Honor some sense of what that looks like,

19   if you take the big 50 foot tractor trailers and take eleven of

20   those, that's about how many boxes of documents that we have.

21   So eleven of the big 50 foot tractor trailers is what we're

22   talking about in terms of general order of magnitude of

23   documents that we are still holding in that warehouse.  Now

24   that's not to say that we haven't dealt with many of the

25   documents in connection with the prior document destruction

1    orders that Your Honor has authorized, but they had certain

2    contingencies so they, we couldn't dispose of all of the

3    documents in connection with those.

4           And so in the current document destruction motion, it

5    would contemplate destroying about 6800 of those 7300 boxes of

6    documents.  The only hard copy documents that would remain are

7    the collateral files, original signature types of documents

8    that we haven't been able to locate the parties to send them

9    to, so we're still holding on to them.  And those would have to

10   be part of the last document destruction order which would

11   probably be filed in connection with the closing of the

12   bankruptcy cases.

13          We think, assuming that Your Honor is inclined to

14   authorize the relief we're asking for today, it would take us

15   several months to get those destroyed.  And since we have a

16   lease that runs next February, we've got about a year from now

17   to figure out what to do with these documents.  We have to give

18   three months' notice prior to the termination of that lease if

19   we want to seek to extend it.  The landlord has already

20   indicated to us that he's got interest in the property so it's

21   not even clear that we would be able to extend the lease for

22   the warehouse space beyond February.  So what we certainly like

23   to do is try to wrap up everything by then and be out of the

24   lease and not have to lease other space after next February.

25   And that's what we're working towards.  If we do have to lease

1    other space, we would certainly prefer not to have to lease the

2    giant warehouse space that could fit these eleven tractor

3    trailers in it to store these documents by this time next year.

4              So with respect to the revised order and the

5    objections, Your Honor has probably seen from the agenda that

6    we received approximately twelve objections.  It's interesting,

7    we filed four or five of these document destruction motions,

8    now we get objections from different parties every time, and I

9    think that's related to third party litigations that arise at

10   various different times and what party may be interested, many

11   of these parties never objected to the first several motions,

12   but they have now.

13             None of the objections go to the plan trustee's

14   business judgment as to the need from the plan trust

15   perspective to destroy these documents.  So I don't think

16   there's any objection challenging the plan trustee's business

17   judgment.  What all of these objections relate to are third

18   party litigations or third party interest in the documents, or

19   more specifically the possibility that a third party might have

20   an interest in these documents down the road.

21             So then to remind Your Honor, this is something very

22   similar that we had to deal with approximately a year ago in

23   connection with the Iron Mountain facility and there were

24   several parties that came in and objected there.  And at that

25   point, it was all related to third party litigation as well,

1    and we gave those parties a period of time to come in to the

2    facility and Your Honor granted that, it was a settlement in

3    that context, but granted the settlement over the objections of

4    JPMorgan and I think a few other parties indicating that they

5    had a period of time to go into the facility and look at the

6    documents and copy what they needed if they want the documents.

7    And to be clear, Your Honor, we're not trying to keep people

8    from reviewing these documents, we just don't have a need for

9    them, we don't want to spend the plan's trust resources further

10   keeping them, but we have provided what we think is a

11   reasonable resolution for parties to come in and review these

12   documents.

13           And keep in mind, Your Honor, these documents have

14   been kept for eight years now.  Parties have had the

15   opportunity to come in and look at them throughout that period

16   of time.  We've received over 50 subpoenas and complied with

17   those subpoenas for parties that have been interested in

18   reviewing these documents.

19           But to be clear, almost all of those parties have

20   been fine with taking the electronic data that we've provided

21   to them.  One party came in to the facility three or four years

22   ago, Amback, and copied a number of the underwriting files and

23   certain other documents, and we have a database from that

24   review and most parties just accept that database and perhaps a

25   few other documents in connection with any subpoena that they

1    may issue on us, though we haven't had any parties looking at

2    the hard copy documents in the facility in I believe it's about

3    three years or so.  So there hasn't been much of interest in

4    the hard copy files.  I get when these types of motions are

5    filed, people may, you know, get some interest in them, and

6    that's why we have proposed as Your Honor may have seen in the

7    reply, a three month or 90 day period of time for parties to

8    come in and review the documents.

9            We have had negotiations since the filing of that

10   reply with a few parties who have agreed that the language was

11   acceptable with a few additions.  In particular we added an

12   extra sentence to the 90 day paragraph saying that if a party,

13   effectively if a party shows good cause and has demonstrated

14   that they made an effort to do the document review within that

15   90 day period of time, that they can file a motion with the

16   Court and seek an extension or they can talk to the plan

17   trustee and seek a consensual extension of that period of time.

18           And, Your Honor, it may be useful if I hand up a

19   blackline to show you the changes, well, I should ask first --

20   has Your Honor had a chance to look at the revised form of

21   order that was attached to the reply?  And I'll apologize at

22   the outset that we didn't attach a blackline to that.

23           THE COURT:  Yes, I read the reply, I read the chart,

24   I looked at the order.

25           MR. BEACH:  Okay.

1            THE COURT:  If you have a further blackline.

2            MR. BEACH:  I do, Your Honor.

3            THE COURT:  Okay.

4            MR. BEACH:  It's slightly confusing because I have a

5     blackline from the version of the reply and then I have a

6     further blackline based on a resolution that we've reached with

7     Ocwen since we made that blackline, so I'm going to hand up two

8     blacklines.

9            THE COURT:  Yes, that's fine.

10           MR. BEACH:  May I approach?

11           THE COURT:  Yes.  Thank you.  Okay.

12           MR. BEACH:  Your Honor, there was a resolution with,

13    well I'll just walk through the order.  In the third or fourth

14    so ordered paragraph, it's a resolution with Wells Fargo in

15    connection with the return.  They had, their files were

16    included in the unreturned loan file categories where they

17    filed the loan file declaration pursuant to a protocol that was

18    in place several years ago.  We weren't able to get those

19    documents to them because we didn't have the proper forwarding

20    address and they needed to pay the return costs.  They now

21    agreed to do that, they've agreed to a deadline of March 30th,

22    2015 to get us not only an address but the payment and then

23    we'll make the shipment.  If they fail to do that, then we

24    would be authorized under this order to destroy those

25    documents, I think about 6,000 loan files.

1           The next so ordered paragraph, if you see the latest

2    blackline that I provided to you, there are a few other changes

3    in it.  The one change that will not be made that's reflected

4    in that order, it says 120 days instead of 90 days, but we have

5    agreed with Ocwen that for purposes of this order, we can keep

6    it at 90 days and we'll continue discussions about what the

7    timing of their document review will be, you know, in terms of

8    number of boxes that they need to look at and the time that's

9    going to be required for that review.  And then you'll see that

10   there was an addition to the extent that the parties agree

11   consensually to extend that period.

12           THE COURT:  All right.  Yep.

13           MR. BEACH:  The next paragraph is language that was

14   added to resolve the U.S. Bank objection.  It also resolved or

15   helped to resolve the Ocwen objection and it resolved another

16   set of objections related to the Federal Home Loan Banks and

17   the joinder that were filed, and it provides that after the 90

18   day period parties will have five days to make that motion I

19   indicated to you earlier to seek to extend the period for good

20   cause so long as they've been in there and they've made an

21   effort to review the files and copy what they needed during

22   that 90 day period of time.

23           The paragraphs, I think two so ordered paragraphs

24   below that relate to, well the first so ordered paragraph

25   provides that the review request shall constitute a lawfully

1    issued subpoena, and then the next paragraph is effectively

2    protective order language that we would be asking Your Honor to

3    approve which protects the plan trust from the issue of some of

4    these objectors coming in and looking at files that they may

5    not own or have a legal interest in.  But since a lot of the

6    files are combined in boxes, they may have access to personally

7    identifiable information and other protected information that

8    the plan trust wants to make sure it's not going to be exposed

9    on.  So that is typical protective order language.

10              I recognize the context that we're putting it in is

11   slightly different because we're asking that we don't

12   necessarily rely on protective orders in various other

13   litigations, otherwise we'd have to, the problem we were trying

14   to avoid is making every party issue us a subpoena and then

15   proving that they have a protective order.  This is only part

16   of the protective order language as Your Honor can appreciate,

17   it basically says that they can't use this information, this

18   combined with the following paragraph says that the parties can

19   look at the information, they can copy the information, but

20   they can't use it or disclose it for any purpose unless they go

21   out and seek a protective order from presumably another court.

22   And based on that request to seek the protective order, that

23   court may or may not grant the request, may grant some portion

24   of the request, but the plan trustee won't be exposed to the

25   use of that information because it'll be governed by another

1    party.  And you will see there were some changes that we agreed

2    to do with Ocwen in connection with the paragraph that follows

3    the big block paragraph related to that issue.

4              Your Honor, Mr. Schnitzer just reminded me that some

5    of the parties that we resolved with, in particular the Federal

6    Home Loan Bank parties, I think there were four of them, wanted

7    to make it clear that this, that they do have existing

8    protective orders and they don't want this paragraph to be read

9    as them having to go out and get a separate protective order

10   because they already have one covering them.

11             THE COURT:  Of course not.

12             MR. BEACH:  Right.  So, Your Honor, unless you have

13   questions about the form of order, I would suggest that maybe

14   the right approach would be to walk through the ones that, the

15   objections that I believe are resolved and let those parties

16   agree or disagree and then the ones, the objections that I

17   don't believe are resolved, I think it may be useful to

18   understand what exactly their issues are.  We have tried to

19   communicate with parties but haven't been uniformly successful

20   in being able to get in touch with each of the objectors or to

21   get clarity on what their issue is.

22             THE COURT:  Okay.  Let's go through them.  Can we use

23   your chart or do you want to use the agenda?

24             MR. BEACH:  Why don't we use the agenda, Your Honor?

25             THE COURT:  That's probably easier.

1          MR. BEACH:  I have the amended agenda that was filed,

2    it may have been filed this morning, so I know there are issues

3    on getting the documents filed.

4          THE COURT:  I have the original agenda, there

5    probably isn't any difference.

6          MR. BEACH:  Yeah, the only real thing is the addition

7    of the joinder on the end.  So we can either --

8          THE COURT:  I waved.  Let the record reflect I made

9    the wavy wavy sign.  All right.

10          MR. BEACH:  All right.  So A, B and C, Your Honor, I

11    believe are open objections.  I'll run through what I believe

12    is resolved first.  D is Federal Home Loan Bank of San

13    Francisco, Federal Home Loan Bank of Seattle and the Federal,

14    the FDIC, those objections I think have been resolved by the

15    addition of in particular the sentence saying that those

16    parties can file a motion to extend to the extent that they

17    can't get the review done within the 90 day period.  But I

18    would ask that those parties confirm that.

19          THE COURT:  Yes sir.

20          MR. ARBON:  Good morning, Your Honor, Brian Arbon

21    appearing on behalf of the FDIC and Federal Home Loan Banks of

22    Seattle and San Francisco.  I can confirm that we have reached

23    a resolution with respect to the limited objection had been

24    filed in this case, including with respect to the I guess the

25    additional terms that were added most recently.

1          THE COURT:  Okay.  Excellent.  Thank you.

2          MR. BEACH:  With respect to the limited objection of

3    U.S. Bank which is E on the agenda, that issue has also been

4    resolved based on the revised language in the agreement, in

5    particular the language allowing them to file a motion if they

6    can't get the review done within the 90 day period of time.  I

7    believe that the U.S. Bank representative may be appearing

8    telephonically.

9          THE COURT:  Is anyone on the phone on behalf of U.S.

10   Bank?  I don't hear anyone.  I'll take your representation it's

11   resolved.

12         MR. BEACH:  Thank you, Your Honor.  Item number F is

13   the objection of Ocwen Loan Servicing and Ocwen Financial Corp.

14   The objection is I believe resolved based on the issues related

15   to the protective order language as well as the extension

16   language that was included in the order.  But Mr. Gwynne is

17   here and they may want to make a statement.

18         THE COURT:  Good afternoon, Mr. Gwynne.

19         MR. GWYNNE:  Good afternoon, Your Honor, Kurt Gwynne

20   from Reed Smith on behalf of Ocwen.  First of all thank you to

21   Mr. Beach and [indiscernible] for the flexibility in working

22   this out.  And our objection is resolved consistent with the

23   terms of the redlines that were handed up.  Thank you, Your

24   Honor.

25         THE COURT:  Thank you.

1    MR. BEACH:  And similarly, Your Honor, item J is

2    resolved, that is the objection of Donald G and Shaun Rosene.

3    We have been in contact with their counsel and confirm that the

4    only thing they want is a copy of their mortgage loan files.

5    They had three mortgages that they wanted files on and we

6    simply requested that they send us a letter making the request

7    form and that we would provide them with that information and

8    it was represented to us that that would resolve their

9    objection.

10    THE COURT:  Okay.

11    MR. BEACH:  There was an informal objection or an

12    informal response filed by Wells Fargo.

13    THE COURT:  You've taken care of that.

14    MR. BEACH:  Yeah, that's been resolved based on the

15    language we addressed earlier.  Item L is an informal response

16    to the Federal Home Loan Mortgage Corporation which is resolved

17    by the language added to the order.

18    And then finally the joinder of the Federal Home Loan

19    Bank of Boston and we received confirmation that the resolution

20    with the other Federal Home Loan Banks resolved their issues as

21    well.  So I'll just give those parties an opportunity if they

22    want to make any statements.

23    THE COURT:  Does anyone wish to be heard on behalf of

24    Wells Fargo, the Federal Home Loan Mortgage Corporation or the

25    Federal Home Loan Bank of Boston?  Okay.  I hear none.

1          MR. BEACH:  One clarification on the Federal Home

2     Loan Mortgage Corporation.  We shipped those documents to the

3     parties so there is no language that resolves their objection

4     in the form of order which I think I may have just said.  But

5     we have shipped them their documents, they were part of the

6     unreturned group that have now been resolved as a result of

7     that.

8          THE COURT:  Okay.

9          MR. BEACH:  So that leaves Your Honor A, B, C, G, H

10    and I.  A, B and C I think are represented by the same counsel,

11    National Credit Union Administration board's objection, Western

12    and Southern's objection, and Phoenix Light's objection.  And

13    then I think it may also be the case that the other three

14    objections are represented by the same counsel, it's the

15    limited objection and reservation of rights of, it's a Texas

16    entity, it says TCRS here and a Tennessee entity, it says TCDRS

17    in the agenda as well as the Commonwealth of Virginia.  So Your

18    Honor I would ask those parties to indicate whether or not

19    their issues are resolved with the language in the revised form

20    of order, and if not, would ask those parties to articulate

21    what objections that remain.

22          THE COURT:  All right.  Let me hear first from

23    National Credit Union counsel and whatever other clients that

24    counsel is representing in connection with the objection.

25          MR. SHEN:  Good morning, Your Honor, this is Andy

1   Shen from Kellogg Huber representing NCUA as liquidating agent

2   for a number of failed credit unions.  I have in the courtroom,

3   in your courtroom local counsel who is appearing on our behalf

4   as well.

5          The NCUA is, it is a little bit differently situated

6   than the other objectors who have resolved their objections.

7   The NCUA is actively litigating a set of RMBS (phonetic) cases

8   and their, they've also brought suit in other RMBS cases that

9   haven't yet begun discovery.  And because those cases haven't

10  yet begun discovery, the NCUA is not aware of which particular

11  loan files from AHM that we need to get in order to prove our

12  case.  And so the issue with the proposal that's put forward is

13  that within the next 90 days, the NCUA isn't going to have

14  proceeded sufficiently in discovery to know which loan files

15  specifically that we'll need to seek or subpoena from AHM.  And

16  so that 90 day period doesn't provide sufficient protection for

17  our clients.

18          THE COURT:  Well, how, what's your solution?  I can't

19  keep this estate open for the next five years waiting for your

20  litigation to proceed to discovery.

21          MR. SHEN:  I think I heard counsel for the trustee

22  suggest that the lease on the facility is open until February.

23  It's our hope at least that our litigation will progress

24  efficiently before that time that we can actually issue

25  subpoenas for particular loan files.  And so if there is some

1    period of time beyond 90 days that the Court allows those

2    documents to be preserved I think that would satisfy our

3    concerns.

4            THE COURT:  Well, they need to be out by the end of

5    February, they can't be destroying documents on February 15th

6    and be out of the facility.

7            MR. BEACH:  That's right, Your Honor.  It shouldn't

8    be the estate's responsibility to pay the additional cost

9    either.  Like I indicated before, this is one of several things

10   we are working on to complete by the end of next February, if

11   not earlier.  And the earlier we can do it, the more efficient

12   we can wind down these estates and the better the creditors

13   doing the estates.  So it's not an automatic next February that

14   these cases are open to.

15           And in addition to that, keeping these files has

16   costs associated with them.  If counsel's client really wants

17   these documents, he can go in within these 90 days, copy

18   everyone of the documents at his client's cost to keep those

19   documents.

20           THE COURT:  Well you can't copy eleven tractor

21   trailers' worth of documents in 90 days.

22           MR. BEACH:  Yeah, I don't think he's seeking all of

23   those documents.  There are 6800 in the miscellaneous category,

24   and I suspect that most of those categories his client wouldn't

25   be interested in either.

1              Don't get me wrong, Your Honor, I know that wasn't a

2     practical solution.  We believe that we provided a practical

3     solution for them to come in and see what documents are there

4     that they may be interested in.  They know what their

5     litigation is about, they know what their issues are.

6              THE COURT:  Mr. Shen?

7              MR. SHEN:  Your Honor, the problem for the NCUA is

8     that we just don't know which loan files we need for the

9     litigation until discovery is underway.  Perhaps one practical

10    solution is to keep these files for another six months and we

11    can report back to the Court as to the status of the litigation

12    and take it from there.

13             MR. BEACH:  Your Honor, two points.  One is that

14    there are 231 boxes of the loan files from 2004, 2005 and 2006,

15    so it's 231 boxes out of the 7300 boxes.  So those are a set of

16    boxes that his client can go through and I would presume either

17    copy all of them, image them or determine which categories they

18    might be interested in.  In addition, in terms of the

19    unreturned loan files, that's another category, but it's 291

20    boxes.  We hope to ship some of those to other parties, but we

21    are seeking to destroy the ones that aren't requested in that

22    category.  So out of the 7300 we're talking about five to six

23    hundred.  And if he comes in and diligently looks at these

24    files within the next 90 days and has a legitimate reason for

25    good cause to come before Your Honor and make a motion to

1    extend, we've provided for that.

2          THE COURT:  Well his motion to extend is going to be

3    he doesn't know, until discovery proceeds in this matter, he

4    won't know what he's even looking for.  I can look at boxes and

5    boxes of documents, but if I don't know what I'm looking for

6    there's no point, it's a fruitless exercise.  That's going to

7    be his argument.  I mean that's his argument now, it's going to

8    be his argument in 90 days.

9          MR. BEACH:  Well you may be right, Your Honor, I

10   would think he would have to come in with more, and in

11   particular he should at least review, you know, understand the

12   scope of the boxes of documents he might be interested in,

13   assess what the costs would be to copy all of those or image

14   all of those as opposed to just in a vacuum saying it's

15   impossible to figure out what he needs.  I would think he also

16   needs to say that he's reached out to the other counterparties

17   to the litigation to figure out if he can get the scope of the

18   loan files within that 90 day period of time.  So --

19         MR. SHEN:  Your Honor, this is Andy Shen again.  To

20   the extent possible, we would seek those loan files from the

21   other parties to the litigation, and we would only seek to

22   subpoena those loan files from AHM to the extent that we can't

23   get them from the actual parties in the litigation.  And I

24   think Your Honor hit the nail on the head, we just don't know

25   which loan files we need until we get underway in litigation,

1    figure out which loans are at issue in our case.

2            THE COURT:  Okay.  I understand your position.  Mr.

3    Kane for Western Southern and Phoenix Light.

4            MR. KANE:  Yes, Your Honor, this is Ryan Kane on

5    behalf of Western Southern and Phoenix Light.  We are in the

6    exact same position as the NCUA.  At this time we don't know

7    which loan files we will need in discovery, and we don't expect

8    that we would have that information within 90 days.  So we are

9    in the same situation as the NCUA.

10           THE COURT:  Okay.  Thank you.  How about -- should we

11   turn it over to I believe --

12           MR. BEACH:  G, H and I on the agenda.

13           THE COURT:  -- Mr. Saldana.

14           MR. SALDANA:  Yes, Your Honor, Scott Saldana for TCRS

15   and TCDRS.  And we've also been working closely with the

16   Commonwealth of Virginia on their case.  And yes, we are in the

17   same position as NCUA and Western and Southern in that we just

18   aren't able at this point in pre-discovery phases of these

19   cases able to identify with the AHM specific loan numbers, the

20   hard copy loan files that we actually require.  So until we get

21   that information from the underwriter banks, we're unable to

22   even identify the boxes that are relevant to our case.

23           THE COURT:  All right.  Well, I can't, this case

24   filed in August 2007, it's February 2015, I know litigation

25   takes time and certainly the issues that underlie this

1   bankruptcy and the collapse of the economy including collapses

2   related to home mortgage instruments took some time to unravel

3   and will continue to take some time to work its way through the

4   courts.  At the same time I can't keep an estate open

5   indefinitely to serve the interest of some possible potential

6   discovery that may or may not be issued at some time in the

7   future.  I would note too that much of the information is

8   available electronically and I don't think there's any desire

9   or request at this time to destroy any electronic files.  Am I

10  correct?

11          MR. BEACH:  That's correct, Your Honor.

12          THE COURT:  And the only real sort of possible bump

13  in the road really has to deal with the fact that there was an

14  unfortunate possible loss or corruption of some data in August

15  2011 during the heat wave.  So I think that 90 days is

16  reasonable, and if you're not in a position to know

17  sufficiently what documents you may or may not need, you're

18  going to have make a difficult choice, whether to ask for more

19  than you possibly want to have to or take a risk and rely on

20  electronic data, or to try to assimilate whatever is going on

21  in your state court litigation or federal litigation in other

22  courts in order to get authority or some narrowing of the

23  issues.  But I can't keep this estate open indefinitely, or

24  even six months.  This thing needs to move to distribution and

25  closing.  As it is it's going to be, if we're into, which we

1    will be, we'll be into 2016, nine years, that's a long time for

2    a bankruptcy to stay open especially one where the plan

3    confirmed in 2010, 2009?

4             MR. BEACH:  2009, it went effective in 2010.

5             THE COURT:  Okay.  Yeah, I remember, we didn't know

6    if it was going to go effective, but it did.

7             MR. BEACH:  Right.

8             THE COURT:  So the objection is overruled, I think

9    the 90 days is more than adequate.

10            MR. BEACH:  Thank you, Your Honor.  May I approach

11   with a form of order?

12            THE COURT:  Yes.  We better make sure you got the

13   right one.

14            MR. BEACH:  We have the right one.  Mr. Gwynne told

15   me [indiscernible].

16            THE COURT:  There we go.  I signed the order.

17            MR. BEACH:  Thanks, Your Honor.  That concludes the

18   agenda unless Your Honor has further questions.

19            THE COURT:  I have no further questions.  Thank you

20   very much, we are adjourned, enjoy your weekend.  Stay warm.

21        (Proceedings concluded at 2:45 PM)

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4   DESCRIPTION                                            PAGE

5   HEARING re Doc #11058 - Plan Trustee's Motion

6   for an Order Authorizing the Abandonment and

7   Destruction of Documents and Records                     25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1                        CERTIFICATION

2            I, Theresa Pullan, certify that the foregoing is a

3      correct transcript from the official electronic sound recording

4      of the proceedings in the above-entitled matter.

5      Theresa Pullan
       Digitally signed by Theresa Pullan
       DN: cn=Theresa Pullan, o, ou,
       email=digital1@veritext.com, c=US
       Date: 2015.03.02 15:55:01 -05'00'

6      AAERT Certified Electronic Transcriber CET**00650

7      Theresa Pullan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22      Veritext Legal Solutions

23      330 Old Country Road

24      Suite 300

25      Mineola, NY  11501