## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                       :    Chapter 11

                                :

AMERICAN HOME MORTGAGE      :    Case No. 07-11047 (CSS)

HOLDINGS, INC.,                    :    Jointly Administered

a Delaware corporation, *et al.*,[1]      :

                                :    **Response Deadline: April 10, 2015 by 4:00 p.m. (ET)**

                                :    **Hearing Date: May 1, 2015 at 2:00 p.m. (ET)**

                  Debtors.    :

------------------------------------------------------------ x

## JOINT MOTION FOR ENTRY OF ORDER (I) APPROVING A SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019, (II) CERTIFYING A CLASS AND COLLECTIVE OF CLAIMANTS FOR SETTLEMENT PURPOSES ONLY, APPOINTING CLASS/COLLECTIVE COUNSEL AND CLASS/COLLECTIVE REPRESENTATIVES, AND PRELIMINARILY APPROVING THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023, (III) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS/ COLLECTIVE MEMBERS OF THE CLASS/COLLECTIVE CERTIFICATION AND SETTLEMENT, (IV) SCHEDULING A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT, (V) FINALLY APPROVING THE SETTLEMENT PURSUANT TO FED. R. BANKR. P. 7023 AND 29 U.S.C. 216(b) AFTER THE FAIRNESS HEARING, AND (VI) GRANTING RELATED RELIEF

Steven D. Sass, as the liquidating trustee (the "Plan Trustee") of the trust (the "Plan Trust") established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), prospective class and collective representatives Chris Beckham, Tana Blachly-White, Kimberly A. Blackburn, Marvin R. Bodden, Priscilla Cabanillas-McKee, Bart Castricone, Ryan Chartrand, Jethro Chavez, Kelvin Clarke, Sydney Cooper, Steven W. DeLizza, Phillip Fenton, Sherri Frost, Dewey C. Johnson, Kevin J. Mory, Patti Murphy, Virginia Nolte, Beverly Stout, Maxine A. Sweet and Harry H. Teaford, Jr. (the "Class Representatives"), on behalf of themselves and similarly situated prospective class and collective

---

[1] The Debtors in these cases are: American Home Mortgage Holdings, Inc.; American Home Mortgage Investment Corp.; American Home Mortgage Acceptance, Inc.; AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.); American Home Mortgage Corp.; American Home Mortgage Ventures LLC; Homegate Settlement Services, Inc.; and Great Oak Abstract Corp.

members (together with the Class Representatives, the "Class Members"), and Edward Abram,

Jr., Rosalyn Ceasar, Anthony Faux, Dustin Jones, John Sogluizzo, Najla Waheed and Richard

Zemel (the "Original Plaintiffs" and together with the Plan Trustee and the Class

Representatives, the "Parties"), by and through their respective counsel, hereby move this Court

(the "Motion") pursuant to Section 105 of Title 11 of the United States Code (the "Bankruptcy

Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), made applicable hereto by

Bankruptcy Rule 7023, and 29 U.S.C. § 216(b) for the entry of orders:  (a) approving the

*Settlement and Release Agreement* dated as of March 17, 2015 (the "Settlement Agreement" or

the "Settlement")[2] among the Plan Trustee, the Original Plaintiffs and the Class Members

pursuant to Bankruptcy Rule 9019, (b) certifying a class and collective for settlement purposes

only, appointing the law firms of Outten & Golden LLP and Nichols Kaster PLLP as class and

collective counsel ("Class Counsel"), appointing the Class Representatives as representatives of

the class and collective certified under the Settlement and preliminarily approving the Settlement

Agreement pursuant to Civil Rule 23, (c) approving the form and manner of notice to Class

Members of the conditional class and collective certification and settlement, (d) scheduling a

fairness hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement

pursuant to Civil Rule 23 and 29 U.S.C. § 216(b), (e) after the Fairness Hearing, finally

approving the Settlement Agreement pursuant to Civil Rule 23 and 29 U.S.C. § 216(b), and (f)

granting related relief.  In support of the Motion, the Parties respectfully represent as follows:

---

[2] A true copy of the Settlement Agreement is attached hereto as **Exhibit 1**.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

**Preliminary Statement**

1.      The Court should approve the Settlement Agreement.  The Original

Plaintiffs and Class Representatives have sued and asserted claims against Debtors American

Home Mortgage Investment Corp. ("AHM Investment") and American Home Mortgage Corp.

("AHM Corp.") under the federal *Fair Labor Standards Act* (the "FLSA") and the state wage

and hour laws of Arizona, California, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky,

Maryland, Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina,

Pennsylvania, South Carolina, Tennessee, Virginia and Washington (collectively, the "Subject

States") for, *inter alia*, allegedly misclassifying the Class Members as "exempt" employees and

denying them minimum wage and overtime compensation.  The Original Plaintiffs and Class

Representatives seek to recover unpaid minimum and overtime wages as well as additional

amounts for liquidated damages, prejudgment interest and attorneys' fees and costs for

themselves and each of the other Class Members.  In exchange for a full release for any wage-

related claims against the Debtors and the Trust, the Plan Trustee will grant the Class (defined

below) an allowed priority unsecured claim in the amount of $3,000,000, distributions on

account of which will be used to fund a settlement fund for the Class Members.  This settlement

fund will be distributed in accordance with the terms of the Settlement Agreement and the Plan.

2.      From the perspective of the Plan Trust and its beneficiaries, the Debtors'

creditors, the Settlement is fair and reasonable.

3.      While the Plan Trustee believes that AHM Corp. and AHM Investment

properly classified the Original Plaintiffs and Class Members as "exempt" employees and

compensated them appropriately, the Original Plaintiffs' and Class Representatives' wage and

hour litigation would be protracted and expensive, and its outcome uncertain.  Class Counsel

estimates that the Original Plaintiffs' and Class Members' damages could be in excess of $15

million, plus attorneys' fees and costs, if the Original Plaintiffs and Class Representatives were to prevail.

4.     The Plan Trustee also asserts additional defenses to any liability including that any uncompensated overtime worked by an Original Plaintiff or a Class Member was preliminary or postliminary to such Original Plaintiff's or Class Member's principal activities, not authorized by or done for the benefit of AHM Corp. or AHM Investment, or *de minimis* in nature.  Further, to the extent that the aforementioned exceptions do not apply, the Plan Trustee asserts that the estate is entitled to a reduction of any purported damages based on AHM Corp.'s and AHM Investment's good faith belief that all of their actions complied with the provisions of the FLSA and Subject States' wage and hour laws.  However, while the Plan Trustee vigorously disputes the allegations asserted against AHM Corp. and AHM Investment, the Original Plaintiffs and Class Representatives have come forth with some evidence that they contend supports their claims.  Further, while the Plan Trustee believes that strong defenses to class or collective certification exist, there are no assurances.  A trial on the applicability of AHM Corp's. and AHM Investment's defenses, following contested class and/or collective certification, would require both sides to engage in extensive discovery at significant expense with inherently uncertain results at trial.  Further, because the Class Representatives' claims relate, at least in part, to wages earned during the one hundred eight (180) day period prior to the commencement of AHM Corp. and AHM Investment's bankruptcy cases, there is a risk that any adverse judgment could result in a large priority claim pursuant to 11 U.S.C. § 507.  In light of these factors, the Plan Trustee believes that the Settlement is well within the range of reasonableness and submits that the Court should approve the Settlement under Bankruptcy Rule 9019.

5.      Given the risk factors described, the Settlement Agreement is also fair and reasonable to the Original Plaintiffs and Class Members.  Without the Settlement, the Original Plaintiffs and Class Members would wait years for any payment on their alleged wage and hour claims, even if they prevail on trial and appeal, and risk depletion of the Debtors' estates through continued administrative and litigation costs.

6.      It is appropriate to certify the Class for settlement purposes and appoint Class Counsel.  As set forth below, for purposes of settlement, the Parties agree that the Class meets all of the requirements of Civil Rule 23 and 29 U.S.C. § 216(b), and that Class Counsel is competent and experienced.

7.      The Parties request a two-step approval process to facilitate notice to Class Members.  After preliminary approval of the Settlement Agreement and the form of notice to be given to the Class Members, Class Counsel will provide notice ("Class Notice") via first-class mail to each Class Member that describes the Settlement Agreement, informs the Class Members of their right to opt out of the Rule 23 Class (or, with respect to their FLSA claims, to decline to opt in to the Collective) or object to the Settlement Agreement and of the deadlines and procedures for doing so.

8.      After service of the Class Notice, the Parties request that the Court hold a Fairness Hearing to consider final approval of the Settlement Agreement.

9.      Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Motion.

## **Jurisdiction**

10.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334, the *Amended Standing Order of Reference* dated February 29, 2012 of the United States District

Court for the District of Delaware, and Article 14 of the Plan. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

11.    Venue is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Section 105 of the Bankruptcy Code, Bankruptcy Rule 9019, Civil Rule 23 and 29 U.S.C. § 216(b).

## Background

### A.    General Background

12.    On August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

13.    The Debtors' bankruptcy cases (the "Chapter 11 Cases") are being jointly administered pursuant to Bankruptcy Rule 1005(b) as *In re American Home Mortgage Holdings, Inc., et al.* under Case No. 07-11047 (CSS).

14.    On February 23, 2009, the Court entered an order confirming the Plan.

15.    On November 30, 2010 (the "Effective Date"), the Plan became effective, and pursuant to the terms thereof, that certain *Plan Trust Agreement* was executed, thereby creating the Trust and appointing the Plan Trustee as trustee of the Trust.

16.    Pursuant to the Plan, as of the Effective Date, the Plan Trustee was authorized to, among other things, object to and compromise claims against the Debtors.

### B.    FLSA and State Law Wage Litigation

17.    On June 20, 2007, the Original Plaintiffs filed with the United States District Court for the Northern District of California (the "California District Court") a complaint (as amended, the "Complaint") commencing a class and collective action against AHM Investment and AHM Corp. captioned *Edward Abram, Jr., et al. v. American Home Mortgage Investment Corp., et al.*, Case No. 07-CV-03252-VRW (the "Beckham Action"), on behalf of

themselves and purportedly on behalf of the putative Class Members.  The Complaint asserted

that AHM Investment and AHM Corp. violated the FLSA and the state wage and hour laws of

the Subject States by allegedly failing to (a) pay the Original Plaintiffs and putative Class

Members overtime and minimum wage compensation as required by (i) the FLSA and (ii) the

wage and hour laws of various states, and (b), under California wage and hour laws, (i) provide

the Original Plaintiffs and the putative Class Members with itemized wage statements, (ii)

provide the Original Plaintiffs and putative Class Members with and/or authorize them to take

meal and rest periods, and (iii) timely pay the Original Plaintiffs' and Class Members' wages

(collectively, the "Class Claims").

18.      On the Petition Date, the Beckham Action was stayed as a result of the

commencement of the Chapter 11 Cases.

**C.      Bankruptcy Claims**

19.      On January 11, 2008, the Original Plaintiffs filed a proof of claim against

the estate of AHM Corp., which claim is carried on the official claim registry maintained in the

Chapter 11 Cases (the "Claims Registry") as claim no. 8936 (the "Beckham Claim"), asserting

the Class Claims on behalf of the Original Plaintiffs and purportedly on behalf of the putative

Class Members.  The Beckham Claim was subsequently amended to substitute the Class

Representatives in the place and stead of the Original Plaintiffs as the prospective class

representatives in the Beckham Action and expand the subject states to include the Subject

States.

20.      Thereafter, the Plan Trustee informally raised objections to the Beckham

Claim with the Class Representatives, denying certain material allegations of the Complaint and

asserting, among other defenses, that (a) class/collective treatment of the Class Claims is

inappropriate because (i) the Class Representatives are not similarly situated to the putative Class

Members, (ii) the Class Representatives are not adequate representatives of the putative Class

Members, and (iii) individual facts and issues predominate over common facts and law; (b) the

Class Claims are barred by the "outside sales" exemption; (c) the Class Claims are barred as they

were preliminary or postliminary to the Original Plaintiffs' and putative Class Members'

principal activities or *de minimis* in nature; and (d) AHM Investment and AHM Corp. acted at all

times in good faith and had reasonable grounds for believing that their conduct was not in

violation of the FLSA or the wage and hour laws of the Subject States (the "<u>Plan Trust</u>

<u>Objection</u>").

### D.      <u>Settlement Negotiations</u>

21.     The Parties engaged in protracted negotiations regarding the settlement of

the Beckham Action and all related claims.  During this process, they informally exchanged a

substantial amount of information regarding the facts and documents supporting the Plan

Trustee's defenses, as well as payroll information and various damage analyses.

### E.      <u>Essential Terms of the Proposed Settlement</u>

22.     In October 2013, the Parties reached a tentative agreement, the terms of

which were later memorialized in the Settlement Agreement.  In general, the Settlement

Agreement provides for the certification of (a) a class comprising all persons who have been

employed by the Debtors as loan officers and were misclassified as exempt, and therefore

erroneously denied overtime, minimum wage, meal and rest period compensation as required by

state wage and hour laws within the States of Arizona, California, Delaware, Florida, Georgia,

Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Jersey, New

York, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia and Washington, at

any time between February 7, 2007 through August 6, 2007 (the "<u>Rule 23 Class</u>"), and (b) a

collective comprising all persons who have been employed by the Debtors as loan officers and

were misclassified as exempt, and therefore erroneously denied overtime and minimum wage

compensation as required by federal wage and hour laws, within the United States (other than the

State of Oregon) at any time between February 7, 2007 through August 6, 2007 (the "Collective"

and together with the Rule 23 Class, the "Class"), for settlement purposes only and without any

admission on the part of the Plan Trust that class and/or collective certification is proper.  The

Settlement Agreement provides this Class with an allowed priority unsecured claim in the

amount three million dollars ($3,000,000) against the estate of AHM Corp. in settlement of all

Class Claims.  The Settlement Agreement also provides that the distribution of this settlement

fund will be made to Class Members pursuant to the Plan, individual allocations of which will be

calculated by Class Counsel in accordance with the terms of the Settlement Agreement.   The

essential terms of the Settlement Agreement are as follows:[3]

    a.   Class Certification; Class Counsel; Class Representative.

> **Class Certification**.  Upon execution of this Settlement Agreement, the parties stipulate and
> agree to define and certify, in connection with the Beckham Litigation,:  (i) a class
> comprising all persons who have been employed by the Debtors as loan officers and were
> misclassified as exempt, and therefore erroneously denied overtime, minimum wage, meal
> and rest period compensation as required by state wage and hour laws within the States of
> Arizona, California, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland,
> Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina, Pennsylvania,
> South Carolina, Tennessee, Virginia and Washington at any time between February 7, 2007
> through August 6, 2007 (the "Rule 23 Class"); and (ii) a collective comprising all persons
> who have been employed by the Debtors as loan officers and were misclassified as exempt,
> and therefore erroneously denied overtime and minimum wage compensation as required
> by federal wage and hour laws, within the United States (other than the State of Oregon) at
> any time between February 7, 2007 through August 6, 2007 (the "Collective" and together
> with the Rule 23 Class, the "Class"); provided, however, that such Class shall be certified
> for settlement purposes only and without any admission on the part of the Plan Trustee that
> certification of the Class is proper.

>   i.  **Class Counsel**.  The law firms of (i) Outten & Golden LLP and (ii) Nichols Kaster PLLP
> shall be appointed as counsel for the Class created under the Settlement Agreement
> (collectively, "Class Counsel").

>   ii.  **Class Representatives**.  The Class Representatives, Chris Beckham, Tana Blachly-White,
> Kimberly A. Blackburn, Marvin R. Bodden, Priscilla Cabanillas-McKee, Bart Castricone,

---

[3] This summary is qualified in its entirety by the terms and provisions of the Settlement Agreement.  To the extent
that there are any inconsistencies between this summary and the terms and the provisions of the Settlement
Agreement, the Settlement Agreement shall control.

Ryan Chartrand, Jethro Chavez, Kelvin Clarke, Sydney Cooper, Steven W. DeLizza, Phillip Fenton, Sherri Frost, Dewey C. Johnson, Kevin J. Mory, Patti Murphy, Virginia Nolte, Beverly Stout, Maxine A. Sweet and Harry H. Teaford, Jr., shall be appointed as representatives for the Class created under this Settlement Agreement.

b.    The Settlement Fund:

i.    (a)    The Beckham Claim shall be settled hereby and as provided herein and deemed liquidated in the gross amount of three million dollars ($3,000,000). The now-liquidated Beckham Claim shall be deemed to be filed on behalf of the Class and allowed as a priority unsecured claim in the amount of three million dollars ($3,000,000) against the estate of AHM Corp. and treated in accordance with the terms of the Plan (such Plan distributions on account of the Beckham Claim, collectively, the "Settlement Fund"). The Settlement Fund represents the maximum amount that the Plan Trust will pay pursuant to this Settlement, inclusive of the allocation of the Settlement Fund to Class Members, Class Counsel's Fees and the Service Payments; provided, however, that the Plan Trust shall also be responsible for the payment of the employer portion of withholding taxes on the Settlement Fund disbursements, if any, which payment shall not be deducted from the Settlement Fund. Other than set forth herein, the Plan Trust shall not be called upon or required to contribute additional monies above the Settlement Fund under any circumstance whatsoever.

ii.    Distribution of Settlement Fund payments to the Class Members will be made pursuant to the Plan based on the Class Members' individualized percentage amounts of the Settlement Fund as calculated by Class Counsel in accordance with the terms of this Settlement Agreement; provided, however, that any de minimis distribution procedures contained in the Plan shall not apply to the Settlement Fund payments. Distribution of Settlement Fund payments shall be made by the Plan Trust only when the Plan Trust makes distributions to holders of priority unsecured claims on account of such claims. Class Counsel will calculate the relative percentages and distributions of the Settlement Fund that are allocable to reimbursement of Class Counsel's expenses, Class Counsel's Fees and to each Class Member on an individualized basis, in accordance with the terms of this Settlement Agreement.

c.    The Settlement Fund, after first deducting Service Payments, Expense Reimbursements and then the Fee Component of Class Counsel's Fees (the "Net Settlement Fund"), shall be allocated to the individual Class Members as calculated by Class Counsel in accordance with the terms of this Settlement Agreement; provided, however, that no such individual allocation shall exceed the maximum priority claim allowed pursuant to Section 507 of the Bankruptcy Code after first taking into account any and all other allowed priority claims of, and/or other priority distributions made to, such Class Members.

d.    The Net Settlement Fund payment of each Class Member will be calculated according to the following formula:

Key Assumptions:

Total Settlement Fund: $3,000,000

Class Counsel's Fees, Expense Reimbursements and Service Payments: $1,079,000

Total Available for Distribution: $1,921,000

Base/Bonus Ratio: 3/1 (75%/25%)

Calculation:

- The split between the Wage Earners and Non-wage Earners is determined by calculating a theoretical owed amount for each Class Member based on the 2007 minimum wage for the state they worked in and a 40 hour work week during the Class period.

01:16872242.1

10

- The total for each category is then divided into the theoretical total to find the percentage allocation for the two categories:  Wage Earners make up 94% and Non-wage Earners make up 6%.

- The 25% bonus allocation is subtracted from the Total Available for Distribution.

- The remaining 75% is divided amongst the two categories based on the calculated allocation as a fraction of the theoretical total (94%/6%).

- Each Class Member's theoretical amount owed is divided into the total category theoretical amount owed to find the individual percentage owed.

- The Class Member's percentage is multiplied by the base allocation to their respective category to obtain the dollar amount owed.

- The bonus is only awarded to Wage Earners.

- A four category tier determines the bonus allocation amount based on 2007 earned wages (rounded to the nearest dollar) as follows:

    o  $120,000 and above:  4 points

    o  $60,000 to $119,999:  3 points

    o  $40,000 to $59,999:  2 points

    o  $0 to $39,999:  1 point

- Each Wage Earner's point award is divided into the total point amount to find the percentage allocation.

- The Wage Earner's individual percentage is multiplied by the bonus pool total to obtain their individual dollar amount.

- The Wage Earner's base award and bonus award are added to find the total award dollar amount.

e.  <u>Class Counsel's Fees.</u>

   i.  <u>Class Counsel's Fees and Expenses.</u>  Class Counsel is directly awarded attorney fees and reimbursement of accrued expenses in this Settlement Agreement and no Class Member or Original Plaintiff shall be deemed, by any taxing authority or otherwise, to have (or have ever had) any ownership interest therein.  Specifically, Class Counsel is awarded (i) all accrued and reasonably expected expenses, not to exceed twenty two thousand dollars $22,000 (the "<u>Expense Reimbursements</u>") and (ii) attorneys' fees in an amount of up to one third (1/3) of the Settlement Fund (net of the Expense Reimbursements and the Service Payments (defined below)) (the "<u>Fee Component</u>"), as payment in full for Class Counsel's work in connection with this matter (collectively, "<u>Class Counsel's Fees</u>") and determined as set forth below.  This agreed one third (1/3) figure is used for ease of calculation purposes and does not represent a contingent-fee recovery; instead, the one third (1/3) figure is awarded in lieu of the lodestar and/or other statutory fee-shifting attorney fees to which Class Counsel asserts they would otherwise be entitled under a successful resolution of the Class Claims via litigation.

  ii.  <u>Fee Holdback</u>.

  1.  Class Counsel's Fees will be distributed to Outten & Golden LLP on behalf of Class Counsel  contemporaneously with the initial distribution of the Settlement Fund payments to Class Members and Original Plaintiffs; provided, however, that the Fee Component of Class Counsel's Fees will be subject to a percentage holdback (the "<u>Fee Holdback</u>") and Section 6(d) below.

  2.  For the purposes of calculating the Fee Holdback:  (a) if a Class Member is issued a settlement check compromising both Non-FLSA and FLSA Claims (each as defined below) but does not deposit or negotiate such check within the two hundred and seventy

(270) day period set forth in Section 6(d) (the "Section 6(d) Period"), then the fee that Class Counsel would otherwise have been paid on account of this Class Member's settlement amount under Section 5(a)(ii) above will be deemed to be reduced by twenty-five (25%) percent, and (b) if a Class Member is issued a settlement check compromising only a FLSA Claim but does not deposit or negotiate such check within the Section 6(d) Period, then the fee that Class Counsel would otherwise have been paid on account of this Class Member's settlement amount under Section 5(a)(ii) above will be deemed to be reduced by fifty (50%) percent. As a result of these reductions, the Parties estimate that as much as ten (10%) percent of Class Counsel's Fees may be abated. The Plan Trustee shall therefore be entitled to withhold a Fee Holdback of ten (10%) percent of the total Fee Component distributed contemporaneously with the initial distribution of the Settlement Fund payments to Class Members and Original Plaintiffs.

3.      The Fee Holdback shall be paid to Outten & Golden LLP on behalf of Class Counsel at the conclusion of the Section 6(d) Period after being first reduced by an amount representing the total deductions for settlement checks not deposited or negotiated at that time based on the percentages set forth in Section 5(b)(ii) (collectively, the "Fee Reduction"); provided, however, that if the amount of the Fee Reduction exceeds the amount of the Fee Holdback, Outten & Golden LLP on behalf of Class Counsel shall return to the Plan Trust the difference between Fee Reduction and the Fee Holdback (the "Fee Overpayment") within five (5) business days of the Plan Trust providing Class Counsel with a worksheet evidencing the Fee Overpayment due.

f.      Service Payments to Class Representatives. For their service in this matter, the time and effort they have contributed to the case and the financial risks that they undertook by asserting statutory claims on behalf of the Class Members, (i) the Class Representatives shall each receive a one-time payment of two thousand five hundred dollars ($2,500) (the "Class Representative Service Payments") in addition to their allocation of the Net Settlement Fund as set forth in Section 6 above, and (ii) the Original Plaintiffs shall each receive a one-time payment of one-thousand dollars ($1,000) (the "Original Plaintiffs Service Payments" and together with the Class Representative Service Payments, the "Service Payments") but shall not participate in the Net Settlement Fund allocation. The Plan Trustee shall distribute the Service Payments to the Class Representatives and the Original Plaintiffs without taking any deductions.

g.      Issuance of Notice of Class Certification and the Settlement: Class Counsel shall mail the Class Notices by first-class mail to the Class Members at the addresses listed on **Exhibit A** tl the Settlement Agreement indicating:

•       that each Class Member has the right to decline to opt in to the Collective or opt out of the Rule 23 Class (all such Class Members timely electing to opt out of the Rule 23 Class, the "Opt-Outs") and preserve all of his or her rights against the Debtors, if any, including the Released Claims, and the procedure for doing so;

•       that the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

•       that, if so approved, the Settlement shall be effective as to Class Members who did not timely elect to opt out of the Rule 23 Class, with respect to Non-FLSA Claims, or who elected to opt in to the Collective, with respect to FLSA Claims;

•       the estimated settlement payment that such Class Member would receive under the Settlement;

•       the proposed Class Counsel's Fees and Class Representatives' and Original Plaintiffs' Service Payments;

- that such Class Member has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing; and

- that upon the Final Approval Date (defined below) (for Non-FLSA Claims) and/or negotiation of his or her settlement check (for FLSA Claims), all Released Claims (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

h.   Reversion of Residual Funds.  In the event that there are any Settlement Funds remaining for any reason two hundred and seventy one (271) days after the Plan Trust makes the initial distribution of the Settlement Fund payments, including settlement checks which are not deposited or negotiated within that time, any Fee Holdback that has not been previously designated for release to Class Counsel or any Fee Overpayment (the "Residual Funds"), such Residual Funds will immediately revert back to the Plan Trust and neither Class Counsel nor any Class Member or Original Plaintiff shall have any claim to or interest in such funds; provided, however, that the Plan Trustee, in his sole and absolute discretion, may use such Residual Funds to make Settlement Fund distributions to additional Class Members, if any, that may be identified after he has made the initial distribution of the Settlement Fund, or to Class Members or Original Plaintiffs who have provided correct addresses after the periods set forth in Section 6(c) above.

i.   The Waiver and Release of any Released Claims by All Class Members if the Settlement Becomes Effective:

   i.   Upon the Final Approval Date, all Class Members and their respective predecessors, successors, heirs and assigns (the "Class Member Releasing Parties"), and the Plan Trustee, in his capacity as such, the Plan Trust, the Debtors and their estates, and each of their predecessors, successors and assigns (collectively, the "Plan Trust Releasing Parties") shall be deemed to have settled, released and extinguished completely any and all Non-FLSA Claims that they have, had, might have or might have had against each other.

   ii.   Upon any Class Member's negotiation of his or her settlement check (whether Service Payment or Net Settlement Fund allocation), that Class Member shall be deemed to have affirmatively opted in to the Collective and this Settlement and that Class Member and his or her respective predecessors, successors, heirs and assigns, and the Plan Trustee Releasing Parties shall thereby be deemed to have settled, released and extinguished completely any and all FLSA Claims that they have, had, might have or might have had against each other.

   iii.   Upon any Original Plaintiff's negotiation of his or her settlement check, that Original Plaintiff and his or her respective predecessors, successors, heirs and assigns (the "Original Plaintiff Releasing Parties") and the Plan Trustee Releasing Parties shall be deemed to have settled, released and extinguished completely any and all FLSA and Non-FLSA Claims that they have, had, might have or might have had against each other.

   iv.   Upon the Final Approval Date, any claim filed by, scheduled or filed on behalf of, a Class Member asserting any Non-FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such Non-FLSA Claim and Epiq Bankruptcy Solutions, LLC, as the official claims agent in the Chapter 11 Cases ("Epiq"), shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such Non-FLSA Claims.  Upon the negotiation of any Class Member's settlement check (whether Service Payment or Net Settlement Fund allocation), any claim filed by, or scheduled on behalf of, that Class Member asserting any FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such FLSA Claim and Epiq shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such FLSA Claims.  Upon the

negotiation of any Original Plaintiff's settlement check, any claim filed by, or scheduled on behalf of, that Original Plaintiff asserting any FLSA or Non-FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such FLSA or Non-FLSA Claim and Epiq shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such FLSA or Non-FLSA Claims.

v.   Within fifteen (15) business days of the Final Approval Date, Class Counsel shall dismiss the Beckham Action with prejudice.

## Relief Requested

23.   By this Motion, the Parties request that the Court enter orders, substantially in the form annexed hereto as **Exhibits 3** and **4**:  (a) authorizing the Parties to enter into the Settlement Agreement; (b) certifying the Class for settlement purposes only, appointing Class Counsel and the Class Representatives and preliminarily approving the Settlement Agreement; (c) approving the form and manner of Class Notice; (d) scheduling a Fairness Hearing to consider final approval of the Settlement Agreement; and (e) approving the Settlement Agreement on a final basis.

**A.    The Court Should Approve the Settlement
Pursuant to Bankruptcy Rule 9019**

24.   The Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)).  Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, FED. R. BANKR. P. 9019(a), and Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate". 11 U.S.C. § 105(a).

25.   "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D.

01:16872242.1

Del. 2005).  When exercising such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the estate." *Id.*

26.    The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *See Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004)).  Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983).  In this respect, it is not necessary for the court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *Martin*, 212 B.R. 316, 319 (8th Cir. B.A.P. 1997)).

### 1.    Standard for Approval of the Settlement Agreement

27.    Courts consider the following four factors when determining whether a settlement is in the best interest of the estate: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (d) the paramount interest of the creditors and a proper deference to their reasonable opinions. *See Martin*, 91 F.3d at 393.

### a.    Application of the Martin Factors

### i.    *The Results of a Trial are Uncertain and the Litigation is Complex*[4]

28.    The results of a trial are uncertain and the litigation is complex.  The Abram Action involves the application of numerous legal issues regarding the FLSA and the

Subject States' wage and hour laws to complex facts. These issues include, *inter alia*, (a) whether AHM Corp. and AHM Investment properly classified the Class Members as "exempt" employees; (b) whether AHM Corp. and AHM Investment are entitled to a defense of "good faith"; (c) whether AHM Corp. and AHM Investment's actions were willful; (d) the number of uncompensated hours worked by the Class Members; (e) the computation of the amount of damages; (f) whether attorneys' fees are to be awarded to the Class Members if they prevail; and (g) whether and to what extent the alleged damages are entitled to wage priority under 11 U.S.C. § 507(a)(4).

29.    In addition, continued litigation would be costly and time-consuming and would expose the estate to significant litigation risks. Class Counsel has asserted that damages entitled to wage priority treatment could be as high as $15 million dollars. The Settlement, on the other hand, provides the Class with an allowed priority unsecured claim of $3 million against the estate of AHM Corp. As such, the Class Members will share the credit risk equally with the estates' priority unsecured creditors in that they will receive their Net Settlement Fund payments contemporaneously with distributions from the Plan Trust on account of similarly classified unsecured claims. The Settlement resolves the Beckham Litigation and all related claims, thereby eliminating the accrual of what would undoubtedly be substantial litigation expenses. Accordingly, the Parties respectfully submit that approval of the Settlement is warranted.[5]

---

[4] This section discusses both the first and third *Martin* factors – uncertainty of success and complexity of litigation – because in this case these issues are intertwined. The second factor – difficulty with collection – does not apply because Debtors AHM Corp. and AHM Investment are the defendants.

[5] In the event that the Settlement Agreement is not approved by the Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

ii.    *The Settlement is in the Best Interest of Creditors and the Estates*

30.    The Plan Trustee submits that the Settlement is in the best interest of the
Debtors' creditors and the estate.  "When determining whether a compromise is in the best
interest of the estate, the Court must 'assess and balance the value of the claim that is being
compromised against the value to the estate of the acceptance of the compromise proposal.'"
*Key3Media Group*, 336 B.R. at 93 (quoting *Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry,
Inc. v. Anderson*, 390 U.S. 414, 424 (1968))).  To properly balance these values, the Court should
consider all factors "relevant to a full and fair assessment of the wisdom of the proposed
compromise." *In re Marvel Entm't Grp.*, 222 B.R. 243 (D. Del. 1998) (quoting *TMT Trailer
Ferry, Inc.*, 390 U.S. at 424).

31.    Here, a potential $15 million dollar priority wage claim is being resolved
with an allowed unsecured priority claim of $3 million dollars.  The Settlement is comprehensive
and includes all related expenses, fees and costs, other than the Plan Trust's portion of payroll
taxes, if any.  Moreover, as set forth above, the Settlement Agreement spares the Plan Trust the
significant expense and uncertainty associated with the litigation of the myriad of issues in the
Beckham Litigation.

32.    Accordingly, in light of each of the *Martin* factors, the Settlement
Agreement should be approved.

B.     **The Court Should Certify the Class and Appoint Class Counsel
       and the Class Representatives as a Class Pursuant to Rule 23 and
        a Collective Pursuant to 29 U.S.C. §  216(b)[6]**

1.     **Class Certification pursuant to Rule 23**

33.     Where the Court has not already certified a class, the Court must

determine whether the proposed settlement class satisfies the certification requirements of Civil

Rule 23. *See Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern

Virginia*, 418 F.3d 277, 300 (3d Cir. 2005).

34.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement

classes." *Amchem*, 521 U.S. at 618; *accord Community Bank*, 418 F.3d at 299.  "The settlement

class action device offers defendants the opportunity to engage in settlement negotiations without

conceding any of the arguments they may have against class certification." *Community Bank*,

418 F.3d at 299; *see General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d

768, 786 (3d Cir. 1995) ("By specifying certification for settlement purposes only … the court

preserves the defendant's ability to contest certification should the settlement fall apart.").

35.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a

proposed class has sufficient unity so that absent members can fairly be bound by decisions of

class representatives." *Amchem*, 521 U.S. at 621.

a.     **The Court Should Conditionally Certify the Settlement Class**

36.     To be certified, a class must satisfy the four requirements of Rule 23(a):

(1) numerosity, (2) commonality, (3) typicality and (4) adequacy of representation. *See* FED. R.

CIV. P. 23; *Community Bank*, 418 F.3d at 302.  In addition, the class must satisfy the

---

[6] The positions taken in this section of the Joint Motion are those of Class Counsel only.  The Plan Trustee takes no position on these matters other than to support approval of the Settlement Agreement and class/collective certification for purposes of settlement only.  In the event that the Settlement Agreement does not become effective, the Plan Trustee reserves his right to contest class/collective certification.

requirements of Rule 23(b)(1), (2) or (3).  In this case, the Parties have agreed to request

conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions."  *Id*.  In

order to satisfy a class under Rule 23(b)(3), the court must make two additional findings,

predominance and superiority.  That is, "[i]ssues common to the class must predominate over

individual issues, and the class device must be superior to other means of handling the

litigation." *Gates v. Rohm & Hass Co*., 248 F.R.D. 434, 442-43 (E.D. Pa. 2008).  The proposed

settlement Class meets each of the foregoing elements.

  **i.**    **The Rule 23(a) Criteria**

  37.    Numerosity requires a finding that the putative class is "so numerous that

joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

259 F.3d 154, 182 (3d Cir. 2001).  "No single magic number exists satisfying the numerosity

requirement." *Behrend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 1989).  However, the

Third Circuit "typically has approved classes numbering 40 or more." *Gates*, 248 F.R.D. at 440

(*citing Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

  38.    The proposed class of two thousand six hundred thirty-one (2,631) Class

Members meets the numerosity requirement and the Class is sufficiently numerous so as to make

joinder of all Class Members impractical.  Accordingly, the Court should find that the

numerosity requirement has been met.

  39.    The commonality requirement requires existence of at least one question

of law or fact common to the Class. *See* FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Mgmt.,

Inc.*, 265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low, *see Powers v.

Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007), and does not require "an identity of

claims or facts among class members." *Behrend*, 245 F.R.D. at 202.  Further, the existence of

individual facts and circumstances will not defeat commonality so long as the Class Members

allege harm under the same legal theory.

40.     Here, fundamental issues of law and fact regarding classification as an

"exempt" employee, applicability of several defenses, measure of damages and priority of claims

and attorneys' fees are common to all Class Members.[7]

41.     Typicality requires that the "named plaintiffs' claims are typical, in

common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned

with those of the class." *Beck v. Maximus, Inc*., 457 F.3d 291, 295-296 (3d Cir. 2006) (*quoting*

*Baby Neal*, 43 F.3d at 55); *see* FED. R. CIV. P. 23(a)(3).  "Typicality requires a strong similarity

of legal theories to ensure that the class representatives' pursuit of their own goals will work to

benefit the entire class." *Powers*, 245 F.R.D. at 236.  "Factual differences will not render atypical

if the claim arises from the same event or practice or course of conduct that gives rise to the

claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-

96 (*quoting Baby Neal*, 43 F.3d at 55).

42.     The Class Representatives do not allege that they were singled out;

instead, they allege that they suffered harm as a result of the same conduct that allegedly injured

the other Class Members -- that they was misclassified as an "exempt" employee by AHM Corp.

and AHM Investment and denied minimum wage and overtime compensation.  Accordingly, the

Court should find that the typicality requirement is met.

43.     With respect to adequacy, class representatives must "fairly and

adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates*, 248 F.R.D. at 441.

The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class

and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296.  Thus, the court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001).

44.    The Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members.  As demonstrated by the *Declaration of Jack A. Raisner*, annexed hereto as **Exhibit 2**, Class Counsel is well qualified and experienced to represent the Class Members.  Class Counsel has extensive experience in class/collective wage and hour litigation having acted as class counsel in numerous such actions.  The Class Representatives each reside in a state with wage and hour laws that provide for the payment of overtime wages at the time-and-a-half rate, and each was a loan officer whose claims are typical of, and common to, the putative class members who worked in their state.  Each Class Representative has specifically agreed to carry out the duties required of a Rule 23 Class Representative with respect to the putative class members of their state.

## ii.    The Rule 23(b)(3) Criteria

45.    Common questions of law and fact predominate over the individual issues (which appear to be limited to each Class Member's damages).  Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09.  The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623.  "In this vein a

---

[7] Class Counsel recognizes that the amount of damages is particular to each Class Member.  However, individualized damage calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same

predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes." *Community Ban*k, 418 F.3d at 309.

46.    Just as typicality exists, predominance also exists.  All of the claims arise from alleged violations of the FLSA and Subject States' wage and hour law resulting from AHM Corp. and AHM Investment's classification of the Class Members as "exempt" employees. Accordingly, the Court should find that the predominance requirement is met.

47.    Civil Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443.  In effect, "[t]he superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

48.    Rule 23 sets forth several factors relevant to the superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3); *see Gates*, 248 F.R.D. at 443.  However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered. *See Gates*, 248 F.R.D. at 443.

---

legal theory." *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

49.     Here, a class action is superior to individual actions.  The FLSA itself notes the propriety of collective treatment for FLSA litigation.  *See* 29 U.S.C. § 216(b) (authorizing a FLSA claimant to sue on his/her own behalf "and other employees similarly situated").  The nature of the FLSA and the Subject States' wage and hour laws makes it perfectly suited to class treatment in many cases, such as this one, as liability depends on issues of law and fact that affect an entire large group of employees in the same way.  Next, as shown by **Exhibit A** to the Settlement Agreement, the amount of each Class Member's claim is relatively small.  Individually, there is little incentive in controlling the prosecution of separate actions.  *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quotation and citation omitted).  Further, it is appropriate that all the claims against the Debtors arising from the Original Plaintiffs' and Class Representatives' allegations should be concentrated in this Court.  In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members.  Accordingly, the Court should find that the superiority element is met.

50.     Based on the foregoing, the Court should certify the Class for settlement purposes and appoint the Class Representatives as representatives of the Class and Class Counsel as counsel to the Class.

**2.      Collective Certification Pursuant to 29 U.S.C. §  216(b)**

51.     Courts use a two-step analysis in determining whether a suit brought under 29 U.S.C. § 216(b) should proceed as a collective action.  *See Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).  At the initial stage, the plaintiff bears the burden of producing

evidence "beyond pure speculation, of a factual nexus between the manner in which the

employer's alleged policy affected her and the manner in which it affected other employees"

under a "modest factual showing" standard. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189,

193 (3d Cir. 2011).  In the final step, the plaintiff bears the burden of establishing that the opt-in

plaintiffs are similarly situated to the named plaintiffs by a preponderance of evidence. *See*

*Zavala*, 691 F.3d 537.  Courts consider all relevant factors and make a factual determination on a

case-by-case basis, including: "whether the plaintiffs are employed in the same corporate

department, division, and location; whether they advance similar claims; whether they seek

substantially the same form of relief; and whether they have similar salaries and circumstances of

employment." *Id*.

52.     The Class meets all of the requirements for certification as a collective.

All of the Class Members were employed under the title of a loan officer in the sales division of

AHM Corp. and/or AHM Investment.  Each Class Member had similar circumstances of

employment and was compensated with a commission-based salary.  The Class Members

advance the same wage and hour claims arising from a common policy of AHM Corp. and/or

AHM Investment which classified them as "exempt" employees and denied minimum wage and

overtime compensation.   Each seeks monetary damages from AHM Corp. and/or AHM

Investment.

53.     For the foregoing reasons, as well as those set forth in paragraphs 36

through 48 *supra*, the Court should certify the Class for settlement purposes, appoint the Class

Representatives as representatives of the Class and Class Counsel as counsel to the Class.

C.      **The Court Should Preliminarily Approve the**
        **Settlement Agreement Pursuant to Civil Rule 23**

54.      After class certification, approval of a class settlement generally requires

two hearings:  one preliminary approval hearing and one final "fairness" hearing.  *See Gates v.*

*Rohm & Hass Co.,* 248 F.R.D. 434, 442-43 (E.D. Pa. 2008).  Once a settlement is preliminarily

approved, notice of the proposed settlement and of the fairness hearing is provided to class

members.  Because the Settlement Agreement in this case will be preliminarily approved

pursuant to this Motion, notice of the conditional class certification and proposed settlement can

be combined in one notice. *See id.* at 445.  At the subsequent fairness hearing, class members

may formally object to the proposed settlement. *See id.* at 439.

55.      At preliminary approval, the Court is not bound to final approval of the

Settlement.  Rather, the Court makes a determination that "there are no obvious deficiencies and

the settlement falls within the range of reason." *Smith v. Professional Billing & Mgmt. Servs.,*

*Inc.,* No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D. N.J. Nov. 21, 2007)).  Specifically, courts

consider four factors:  (1) whether the negotiations occurred at arm's length; (2) whether there

was sufficient discovery; (3) whether the proponents of the settlement are experienced in similar

litigation; and (4) whether any, and what percentage, of the class object to the settlement. *See In*

*re General Motors Corp. Pick Up Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785-86 (3d Cir.

1995).  However, when class certification is sought in conjunction with preliminary approval,

then class member objections are not relevant. *See Gates*, 248 F.R.D. at 444.

56.      The Settlement has no obvious deficiencies and falls well within the range

of reason.  In addition, each of the above factors favor preliminary approval because the

Settlement was negotiated in good faith and at arm's length, informal discovery occurred and the

Parties exchanged a significant amount of information during their negotiations, and counsel for

each of the Parties have the experience and skill to both vigorously litigate the Class Claims and

to determine when and to what extent settlement is appropriate.

57.    Accordingly, the Court should preliminarily approve the Settlement

Agreement.

## D.    The Court Should Approve the Form and Manner of the Proposed Notice of the Settlement

58.    Civil Rule 23(c)(2)(B) provides:

For any class certified under Rule 23(b)(3), the court must direct to
class members the best notice that is practicable under the
circumstances, including individual notice to all members who can
be identified through reasonable effort.  The notice must clearly
and concisely state in plain, easily understood language: (i) the
nature of the action; (ii) the definition of the class certified; (iii) the
class claims, issues, or defenses; (iv) that a class member may
enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who
requests exclusion; (vi) the time and manner for requesting
exclusion; and (vii) the binding effect of a class judgment on
members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

59.    In addition, Rule 23(e) requires that all members of the class be notified of

the terms of any proposed settlement. *See* FED. R. CIV. P. 23(e).  The Rule 23(e) requirement is

"designed to summarize the litigation and the settlement and to apprise class members of the

right and opportunity to inspect the complete settlement documents, papers, and pleadings filed

in the litigation." *Krell v. Prudential Ins. Co. of America (In re Prudential)*, 148 F.3d 283, 326-

27 (3d Cir. 1998).

60.    The proposed Class Notice, which is attached as **Exhibit C** to the

Settlement Agreement, will be served by Class Counsel upon each Class Member.  Class

Counsel proposes that within ten (10) business days following entry of the order certifying the

Class for settlement purposes and preliminarily approving the Settlement Agreement, Class

Counsel will serve the Class Notice (substantially in the form attached to the Settlement

Agreement) upon each Class Member at the last known address of each Class Member according

to the Debtors' books and records (or as updated by Class Counsel's searches for current

addresses or as may otherwise be determined by the Parties) via First-Class U.S. Mail.

61.     The Class Notice includes each of the facts required by Rule 23(c)(2)(B).

The Class Notice also outlines the terms of the Settlement, including the attorneys' fees and costs

proposed to be paid to Class Counsel and describes how each Class Member may obtain a copy

of the pleadings in the Beckham Action and a copy of the Settlement Agreement.  The Class

Notice also states the date, time, location and purpose of the Fairness Hearing, informs each

Class Member of their right to appear at the Fairness Hearing, and describes the procedure for

opting out of the Rule 23 Class, declining to opt in to the Collective or objecting to the

Settlement.  Finally, the Class Notice will contain a personalized attachment for each Class

Member setting forth the projected Net Settlement Fund payment that such Class Member would

receive under the Settlement.  Accordingly, the form and manner of the Class Notice is sufficient

and should be approved.

**E.      The Court Should Grant Final Approval of the Settlement
          at the Fairness Hearing Pursuant to Rule 23 and 29 U.S.C. § 216(b)**

**1.      Final Approval pursuant to Rule 23**

62.     The Parties request that the Court set a date for the Fairness Hearing that,

subject to the Court's calendar, would be heard no sooner than the earliest date for entry of a

binding order under 28 U.S.C. § 1715, i.e., no earlier than ninety (90) days after service of notice

of the Motion pursuant to the *Class Action Fairness Act*.  At the Fairness Hearing, the Court

should finally approve the Settlement.

63.    Rule 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval." FED. R. CIV. P. 23(e).  Final approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  In making this inquiry, the Court must analyze "the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

64.    The Third Circuit has held that the following nine (9) factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate under Rule 23(e): (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

65.    The following *Girsh* factors strongly support approval of the Settlement Agreement.

- Litigation will be complicated, protracted and expensive.

- The Class Representatives support the Settlement and Class Counsel believes that the bulk of the other Class Members will have a favorable reaction to the Settlement and will not object to it.

- The Settlement was reached after the essential facts had been thoroughly investigated by Class Counsel through informal fact discovery and disclosures by the Plan Trustee's counsel.

- The risk that the Class Representatives would be unable to establish liability was present because of the numerous defenses asserted by the Plan Trustee.

- The risk that the Class Representatives would be unable to establish damages was high because of the absence of documentation of hours worked.

- The risk that the Class Representatives would be unable to maintain a class action to trial was high in light of the factors asserted by the Plan Trustee in favor of decertification.

- The Settlement is reasonable when considered in light of the best recovery because while the asserted damages are higher, each Class Member would be required at trial to establish his/her damages with evidentiary proof of the work that was performed with no or less than the statutory minimum compensation. The Settlement, on the other hand, provides the Class Members with a guaranteed recovery alleviating them of that burden.

66.    Based on the foregoing, the Court should finally approve the Settlement Agreement under Rule 23.

### 2.    Final Approval Pursuant to 29 U.S.C. § 216(b)

67.    The Class Members have also asserted the Class Claims arising under the FLSA as a collective action. FLSA collection actions do not implicate that same due process concerns as an action under Rule 23 because "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984). "Accordingly, the standard for approval of an FLSA settlement is lower than for a class action under Rule 23." *Beckman v. Keybank, N.A.*, 12-civ-7836, 2013 U.S. Dist. LEXIS 60894, at *18 (Apr. 29, 2013 S.D.N.Y.). "[C]ourts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* As such, "[i]f the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Id.*

01:16872242.1

68.     As set forth in paragraphs 27 through 30 *supra*, the Settlement reflects a reasonable compromise of a clear and actual dispute that resulted from vigorous arm's length negotiations and is supported by experienced counsel.  In light of the foregoing, the Settlement is fair and reasonable and should be finally approved by the Court pursuant to 29 U.S.C. §  216(b).

### Notice

69.     Bankruptcy Rule 2002 requires that the Plan Trustee give all creditors not less than twenty (20) days' notice of "the hearing on approval of a compromise or settlement of a controversy unless the court for cause shown directs that the notice be not sent…" FED. R. BANKR. P. 2002(a)(3).

70.     The Parties propose that notice, together with a copy of this Motion (exclusive of the list of individual employees), be provided to: (i) the Office of the United States Trustee for the District of Delaware, and (ii) all parties which have requested notice pursuant to Bankruptcy Rule 2002.  In order to protect the privacy of the Debtors' former employees, the Parties have filed contemporaneously herewith a separate motion seeking authority to submit the employee list annexed to the Settlement Agreement as **Exhibit A** under seal.  In light of the nature of the relief requested, the Parties submit that no other or further notice need be given.

### Conclusion

WHEREFORE, the Parties respectfully request that the Court enter orders, substantially in the form of the proposed orders annexed hereto as **Exhibits 3** and **4**:  (i) authorizing the Parties to enter into the Settlement Agreement; (ii) certifying the Class for settlement purposes only; (iii) appointing Class Counsel and the Class Representatives and preliminarily approving the Settlement; (iv) approving the form and manner of Class Notice; (v) scheduling a Fairness Hearing; (vi) approving the Settlement Agreement on a final basis; and (vii) granting such other relief as the Court deems necessary and appropriate.

01:16872242.1

Dated:  March 27, 2015

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

/s/ Sean M. Beach
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Patrick A. Jackson (No. 4976)
Michael S. Neiburg (No. 5275)
1000 North King Street
Wilmington, Delaware 19899
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Jeffrey Zawadzki
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel for the Plan Trustee*

OUTTEN & GOLDEN LLP

/s/Jack A. Rainser
Jack A. Raisner
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

-and-

NICHOLS KASTER PLLP
Bryan Schwartz
One Embarcadero Center, Suite 720
San Francisco, California 94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

-and-

NICHOLS KASTER PLLP
Paul J. Lukas
80 South Street, Suite 4600
Minneapolis, Minnesota 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

*Counsel to the Original Plaintiffs and*
*Proposed Counsel for the Prospective*
*Class/Collective Members and Representatives*

01:16872242.1