**EXHIBIT 1**

**SETTLEMENT AGREEMENT**

SETTLEMENT AND RELEASE AGREEMENT

between

CHRIS BECKHAM, TANA BLACHLY-WHITE, KIMBERLY A. BLACKBURN,
MARVIN R. BODDEN, PRISCILLA CABANILLAS-MCKEE, BART CASTRICONE,
RYAN CHARTRAND, JETHRO CHAVEZ, KELVIN CLARKE, SYDNEY COOPER,
STEVEN W. DELIZZA, PHILLIP FENTON, SHERRI FROST, DEWEY C. JOHNSON,
KEVIN J. MORY, PATTI MURPHY, VIRGINIA NOLTE, BEVERLY STOUT,
MAXINE A. SWEET AND HARRY H. TEAFORD, JR., ON BEHALF OF
THEMSELVES AND AS CLASS REPRESENTATIVES ON BEHALF OF THE OTHER
SIMILARLY SITUATED CLASS MEMBERS AND AS COLLECTIVE
REPRESENTATIVES ON BEHALF THE OTHER SIMILARLY SITUATED
COLLECTIVE MEMBERS,

EDWARD ABRAM, JR., ROSALYN CEASAR, ANTHONY FAUX, DUSTIN JONES,
JOHN SOGLUIZZO, NAJLA WAHEED AND RICHARD ZEMEL,

and

STEVEN D. SASS, IN HIS CAPACITY AS THE TRUSTEE FOR THE PLAN TRUST
ESTABLISHED PURSUANT TO THE CONFIRMED CHAPTER 11 PLAN OF
LIQUIDATION OF AMERICAN HOME MORTGAGE HOLDINGS, INC. AND ITS
AFFILIATED DEBTORS

Dated as of March 17, 2015

## SETTLEMENT AND RELEASE AGREEMENT

This *Settlement and Release Agreement*, dated as of March 17, 2015 (this "Settlement Agreement" or "Settlement"), is entered into by and between Steven D. Sass, in his capacity as the liquidating trustee (the "Plan Trustee") of the trust (the "Plan Trust") established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan") of American Home Mortgage Holdings, Inc. (Case No. 07-11047), American Home Mortgage Investment Corp. (Case No. 07-11048) ("AHM Investment"), American Home Mortgage Acceptance, Inc. (Case No. 07-11049), AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.) (Case No. 07-11050), American Home Mortgage Corp. (Case No. 07-11051) ("AHM Corp."), American Home Mortgage Ventures LLC (Case No. 07-11052), Homegate Settlement Services, Inc. (Case No. 07-11053) and Great Oak Abstract Corp. (Case No. 07-11054) (collectively, the "Debtors", and with respect to their bankruptcy cases, the "Chapter 11 Cases"), and Chris Beckham, Tana Blachly-White, Kimberly A. Blackburn, Marvin R. Bodden, Priscilla Cabanillas-McKee, Bart Castricone, Ryan Chartrand, Jethro Chavez, Kelvin Clarke, Sydney Cooper, Steven W. DeLizza, Phillip Fenton, Sherri Frost, Dewey C. Johnson, Kevin J. Mory, Patti Murphy, Virginia Nolte, Beverly Stout, Maxine A. Sweet and Harry H. Teaford, Jr. (collectively, the "Class Representatives"), on behalf of themselves and on behalf of similarly situated class and collective members (together with the Class Representatives, the "Class Members"), and Edward Abram, Jr., Rosalyn Ceasar, Anthony Faux, Dustin Jones, John Sogluizzo, Najla Waheed and Richard Zemel (collectively, the "Original Plaintiffs").  The Plan Trustee, the Original Plaintiffs and the Class Members are collectively referred to herein as the "Parties," or, as to each, a "Party."

# RECITALS

**WHEREAS**, on August 6, 2007 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") initiating the Chapter 11 Cases which are being jointly administered as *In re American Home Mortgage Holdings, Inc., et al.* under Case No. 07-11047 (CSS);

**WHEREAS**, prior to the Petition Date, on June 20, 2007, the Original Plaintiffs filed with the United States District Court for the Northern District of California (the "California District Court") a complaint (as amended, the "Complaint") commencing a class and collective action against AHM Investment and AHM Corp. captioned *Edward Abram, Jr., et al. v. American Home Mortgage Investment Corp., et al.*, Case No. 07-CV-03252-VRW (the "Beckham Action"), on behalf of themselves and purportedly on behalf of the putative Class Members.  The Complaint asserted that AHM Investment and AHM Corp. violated the *Fair Labor Standards Act* ("FLSA") and the state wage and hour laws of various states by allegedly failing to (a) pay the Original Plaintiffs and the putative Class Members overtime and minimum wage compensation as required by (i) the FLSA and (ii) the wage and hour laws of those subject states, and (b), under California wage and hour laws, (i) provide the Original Plaintiffs and the putative Class Members with itemized wage statements, (ii) provide the Original Plaintiffs and the putative Class Members with and/or authorize them to take meal and rest periods, and (iii) timely pay the Original Plaintiffs' and Class Members' wages (collectively, the "Class Claims");

**WHEREAS**, on January 11, 2008, the Original Plaintiffs filed a proof of claim against the estate of AHM Corp., which claim is carried on the official claim registry maintained in

the Chapter 11 Cases (the "<u>Claims Registry</u>") as claim no. 8936 (the "<u>Beckham Claim</u>"),

asserting the Class Claims on behalf of the Original Plaintiffs and purportedly on behalf of the

putative Class Members.  The Beckham Claim was subsequently amended to substitute the

Class Representatives in the place and stead of the Original Plaintiffs as the prospective class

representatives in the Beckham Action and expand the subject states to include Arizona,

California, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland,

Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina, Pennsylvania,

South Carolina, Tennessee, Virginia and Washington (collectively, the "<u>Subject States</u>") by

including a proposed amended complaint to be filed in the event that the Settlement

Agreement does not become effective;

    **WHEREAS**, the Plan Trustee informally raised objections to the Beckham Claim

with the Class Representatives, denying certain material allegations of the Complaint and

asserting, among other defenses, that (a) class/collective treatment of the Class Claims is

inappropriate because (i) the Class Representatives are not similarly situated to the putative

Class Members, (ii) the Class Representatives are not adequate representatives of the putative

Class Members, and (iii) individual facts and issues predominate over common facts and law;

(b) the Class Claims are barred by the "outside sales" exemption; (c) the Class Claims are

barred as they were preliminary or postliminary to the Original Plaintiffs' and the putative

Class Members' principal activities or *de minimis* in nature; and (d) AHM Investment and

AHM Corp. acted at all times in good faith and had reasonable grounds for believing that

their conduct was not in violation of the FLSA or the wage and hour laws of the Subject

States;

    **WHEREAS**, informal discovery has been conducted by the Parties in connection with

the Beckham Claim;

**WHEREAS**, there exist significant, complex legal and factual issues regarding the

application of the FLSA and similar wage and hour laws of the Subject States, the various

cases and regulations interpreting such laws and regarding the viability of the Beckham

Action, both individually and as a class or collective action, including:

- whether common questions of fact and law predominate over individualized inquiries;

- whether the Class Representatives and the putative Class Members are similarly situated;

- whether the Class Representatives or any of the putative Class Members have interests that are antagonistic to one another;

- whether each Original Plaintiff and putative Class Member can establish the work for which such Original Plaintiff and putative Class Member was not compensated;

- whether each Original Plaintiff and putative Class Member was an "exempt" employee pursuant to the "outside sale exemption" or otherwise;

- whether AHM Investment and AHM Corp. have other defenses to the application of the FLSA or similar wage and hour laws of the Subject States;

- whether AHM Investment and AHM Corp. acted in good faith and are entitled to a reduction or elimination of damages under the FLSA or similar wage and hour laws of the Subject States;

- whether any overtime worked by an Original Plaintiff or a putative Class Member was authorized by, and done for the benefit of, AHM Investment or AHM Corp.;

- whether any overtime worked by an Original Plaintiff or a putative Class Member was preliminary or postliminary to such Original Plaintiffs' or putative Class Member's principal activities;

- whether any of the time for which any Original Plaintiff or putative Class Member was not compensated was for *de minimis* work;

- the computation of the amount of damages;

- whether attorneys' fees are to be awarded to the Original Plaintiffs, Class Representatives and the putative Class Members if they prevail;

- whether and to what extent the alleged damages are entitled to wage priority under Section 507(a)(4) of the Bankruptcy Code; and

- whether any liability of AHM Investment or AHM Corp. would attach to the estates of the non-defendant Debtors;

**WHEREAS**, the Original Plaintiffs and the Class Representatives have the burden of proof on some of these issues and the Plan Trustee has the burden on others and the trial of this matter would likely be lengthy and complex, adding to the cost and potential delay;

**WHEREAS**, all Parties recognize that the outcome of the litigation with respect to all of the issues is uncertain;

**WHEREAS**, to avoid extensive, costly and uncertain litigation over these issues, the Parties have engaged in significant good-faith, arm's-length negotiations regarding a possible consensual liquidation and resolution of the Beckham Claim, the Plan Trustee's objections, the Complaint, the Class Claims and any and all related or similarly settleable claims, counterclaims and/or causes of action based on or arising out of any federal, state or local statute, ordinance or regulation, contract or otherwise (collectively sometimes referred to herein as the "Beckham Litigation").  As a result of these negotiations, the Parties desire to enter into a final settlement and release of all settleable demands, claims, damages and causes of action, present and future, arising from or relating to the Beckham Litigation, whether known or unknown; and

**WHEREAS**, the Parties have agreed to settle any and all claims relating to or arising out of the Beckham Litigation in accordance with the terms of this Settlement.

**NOW**, **THEREFORE**, as material consideration and inducement to the execution of this Settlement Agreement, and in consideration of the mutual promises and agreements set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intended to be binding, the Parties hereby agree as follows:

1.    **Hearings.**  The Parties shall file a joint motion for approval of the Settlement through a bifurcated hearing process (the "Motion").  The Motion shall request an initial hearing at which time the Parties shall seek entry of an order from the Bankruptcy Court preliminarily approving the Settlement and approving the form and manner of notice to the Class Members of the Settlement, including, among other things, their right to opt out of the Rule 23 Class (defined below), not opt in to the Collective (defined below) or object to the Settlement in person or appear by counsel.  The Parties shall also request that the Bankruptcy Court designate dates as deadlines for opting out of the Rule 23 Class or objecting to the Settlement, as well as a date for a fairness hearing (the "Fairness Hearing").  The date of the Fairness Hearing shall be no earlier than the earliest date for entry of a binding order under 28 U.S.C. § 1715 (a)-(d).  At the Fairness Hearing, the Bankruptcy Court will consider the final approval of the Settlement, including the award of Class Counsel's Fees and the Service Payments (each as defined below) as well as the authority of the Plan Trustee to enter into the Settlement Agreement.

2.    **Class Certification; Class Counsel; Class Representatives.**

(a)    **Class Certification.**  Upon execution of this Settlement Agreement, the Parties stipulate and agree to define and certify, in connection with the Beckham Litigation,:

    (i)    a class comprising all persons who have been employed by the Debtors as loan officers and were misclassified as exempt, and therefore erroneously denied overtime, minimum wage, meal and rest period compensation as required by state wage and hour laws within the States of Arizona, California, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia and Washington at any time between February 7, 2007 through August 6, 2007 (the "Rule 23 Class"); and

    (ii)    a collective comprising all persons who have been employed by the Debtors as loan officers and were misclassified as exempt, and therefore erroneously denied overtime and minimum wage compensation as required by federal wage and

hour laws, within the United States (other than the State of Oregon) at any time between February 7, 2007 through August 6, 2007 (the "Collective" and together with the Rule 23 Class, the "Class");

provided, however, that such Class shall be certified for settlement purposes only and without any admission on the part of the Plan Trustee that certification of the Class is proper.[1]  The Plan Trustee represents that, to the best of his knowledge, information and belief, the former employees listed on **Exhibit A** satisfy the criteria set forth in Sections 2(a)(i)-(ii) above.

(b)        **Class Counsel.**  The law firms of (i) Outten & Golden LLP and (ii) Nichols Kaster PLLP shall be appointed as counsel for the Class created under the Settlement Agreement (collectively, "Class Counsel").

(c)        **Class Representatives.**  The Class Representatives, Chris Beckham, Tana Blachly-White, Kimberly A. Blackburn, Marvin R. Bodden, Priscilla Cabanillas-McKee, Bart Castricone, Ryan Chartrand, Jethro Chavez, Kelvin Clarke, Sydney Cooper, Steven W. DeLizza, Phillip Fenton, Sherri Frost, Dewey C. Johnson, Kevin J. Mory, Patti Murphy, Virginia Nolte, Beverly Stout, Maxine A. Sweet and Harry H. Teaford, Jr., shall be appointed as representatives for the Class created under this Settlement Agreement.

3.    **The Settlement Fund.**

(a)        The Beckham Claim shall be settled hereby and as provided herein and deemed liquidated in the gross amount of three million dollars ($3,000,000).  The now-liquidated Beckham Claim shall be deemed to be filed on behalf of the Class and allowed as a priority unsecured claim in the amount of three million dollars ($3,000,000) against the estate of AHM Corp. and treated in accordance with the terms of the Plan (such

---

[1] The Plan Trustee expressly reserves his right to oppose class and/or collective certification should this Settlement not become effective.

Plan distributions on account of the Beckham Claim, collectively, the "Settlement Fund").

The Settlement Fund represents the maximum amount that the Plan Trust will pay pursuant

to this Settlement, inclusive of the allocation of the Settlement Fund to Class Members, Class

Counsel's Fees and the Service Payments; provided, however, that the Plan Trust shall also

be responsible for the payment of the employer portion of withholding taxes on the

Settlement Fund disbursements, if any, which payment shall not be deducted from the

Settlement Fund.  Other than set forth herein, the Plan Trust shall not be called upon or

required to contribute additional monies above the Settlement Fund under any circumstance

whatsoever.

(b)        Distribution of Settlement Fund payments to the Class Members will be

made pursuant to the Plan based on the Class Members' individualized percentage amounts of

the Settlement Fund as calculated by Class Counsel in accordance with the terms of this

Settlement Agreement; provided, however, that any de minimis distribution procedures

contained in the Plan shall not apply to the Settlement Fund payments.  Distribution of

Settlement Fund payments shall be made by the Plan Trust only when the Plan Trust makes

distributions to holders of priority unsecured claims on account of such claims.

4.        **Responsibilities of Class Counsel.**  Class Counsel will calculate the relative

percentages and distributions of the Settlement Fund that are allocable to reimbursement of

Class Counsel's expenses, Class Counsel's Fees and to each Class Member on an

individualized basis, in accordance with the terms of this Settlement Agreement.  In addition

to making those calculations, Class Counsel shall pay the cost (to be reimbursed from the

Settlement Fund pursuant to Section 5) and bear the ultimate responsibility for the production

and mailing of all notices to be required for the Class Members (the "Class Notices").  The

address of Class Counsel will be used as the return address for the Class Notices and Class

Counsel will respond to all inquiries of Class Members arising from or relating to this

Settlement.

      5.    **Class Counsel's Fees**.

      (a)      <u>Class Counsel's Fees and Expenses</u>.  Class Counsel is directly awarded

attorney fees and reimbursement of accrued expenses in this Settlement Agreement and no

Class Member or Original Plaintiff shall be deemed, by any taxing authority or otherwise, to

have (or have ever had) any ownership interest therein.  Specifically, Class Counsel is

awarded (i) all accrued and reasonably expected expenses, not to exceed twenty two

thousand dollars $22,000 (the "<u>Expense Reimbursements</u>") and (ii) attorneys' fees in an

amount of up to one third (1/3) of the Settlement Fund (net of the Expense Reimbursements

and the Service Payments (defined below)) (the "<u>Fee Component</u>"), as payment in full for

Class Counsel's work in connection with this matter (collectively, "<u>Class Counsel's Fees</u>")

and determined as set forth below.  This agreed one third (1/3) figure is used for ease of

calculation purposes and does not represent a contingent-fee recovery; instead, the one third

(1/3) figure is awarded in lieu of the lodestar and/or other statutory fee-shifting attorney fees

to which Class Counsel asserts they would otherwise be entitled under a successful resolution

of the Class Claims via litigation.

      (b)      <u>Fee Holdback</u>.

      (i)      Class Counsel's Fees will be distributed to Outten & Golden LLP on

behalf of Class Counsel[2] contemporaneously with the initial distribution of the

---

[2] Outten & Golden LLP shall be responsible for distributing Class Counsel's Fees among itself and its co-counsel Nichols Kaster PLLP as agreed between those parties.

Settlement Fund payments to Class Members and Original Plaintiffs; provided, however, that the Fee Component of Class Counsel's Fees will be subject to a percentage holdback (the "Fee Holdback") and Section 6(d) below.

(ii)    For the purposes of calculating the Fee Holdback:  (a) if a Class Member is issued a settlement check compromising both Non-FLSA and FLSA Claims (each as defined below) but does not deposit or negotiate such check within the two hundred and seventy (270) day period set forth in Section 6(d) (the "Section 6(d) Period"), then the fee that Class Counsel would otherwise have been paid on account of this Class Member's settlement amount under Section 5(a)(ii) above will be deemed to be reduced by twenty-five (25%) percent, and (b) if a Class Member is issued a settlement check compromising only a FLSA Claim but does not deposit or negotiate such check within the Section 6(d) Period, then the fee that Class Counsel would otherwise have been paid on account of this Class Member's settlement amount under Section 5(a)(ii) above will be deemed to be reduced by fifty (50%) percent.  As a result of these reductions, the Parties estimate that as much as ten (10%) percent of Class Counsel's Fees may be abated.   The Plan Trustee shall therefore be entitled to withhold a Fee Holdback of ten (10%) percent of the total Fee Component distributed contemporaneously with the initial distribution of the Settlement Fund payments to Class Members and Original Plaintiffs.

(iii)    The Fee Holdback shall be paid to Outten & Golden LLP on behalf of Class Counsel at the conclusion of the Section 6(d) Period after being first reduced by an amount representing the total deductions for settlement checks not deposited or negotiated at that time based on the percentages set forth in Section 5(b)(ii)

(collectively, the "Fee Reduction"); provided, however, that if the amount of the Fee Reduction exceeds the amount of the Fee Holdback, Outten & Golden LLP on behalf of Class Counsel shall return to the Plan Trust the difference between Fee Reduction and the Fee Holdback (the "Fee Overpayment") within five (5) business days of the Plan Trust providing Class Counsel with a worksheet evidencing the Fee Overpayment due.

6.    **The Allocation of the Net Settlement Fund and Disbursement of the Settlement Fund Payments to Class Members; Service Payments.**

(a)           Allocation of the Net Settlement Fund.  The Settlement Fund, after first deducting Service Payments, Expense Reimbursements and then the Fee Component of Class Counsel's Fees (the "Net Settlement Fund"), shall be allocated to the individual Class Members as calculated by Class Counsel in accordance with the terms of this Settlement Agreement; provided, however, that no such individual allocation shall exceed the maximum priority claim allowed pursuant to Section 507 of the Bankruptcy Code after first taking into account any and all other allowed priority claims of, and/or other priority distributions made to, such Class Members.  The method used to calculate the Net Settlement Fund payment due to each Class Member is described in detail in **Exhibit B**.  The Plan Trustee represents that to the best of his knowledge, information and belief, he has provided to Class Counsel for all those individuals listed on **Exhibit A** the contents of the Debtors' books and records as to each Class Member, as follows:  (i) the last known mailing address at the time of termination (unless the Class Member has provided a change of address to the Trustee); (ii) the aggregate 2007 compensation as of the date of termination of employment; and (iii) the date such Class Member was terminated.  It is understood Class Counsel shall rely on these books and records in calculating the settlement amounts to be paid under the Settlement.

(b)        Disbursement of Settlement Fund Payments.  The Plan Trust shall be

responsible for the preparation and mailing of the individual settlement checks to Class

Members in the amount as calculated by Class Counsel in accordance with the terms of this

Settlement Agreement.  Prior to the mailing of the settlement checks, Class Counsel shall

provide the Plan Trust with any corrected (or bad) Class Member addresses obtained by way

of returned Class Notices or otherwise.

(c)        Returned Settlement Checks.  For the two hundred and seventy-day

(270) period after the Plan Trust makes the initial distribution of the Settlement Fund, the

Plan Trust shall provide Class Counsel no less frequently than monthly with the names of

those Class Members or Original Plaintiffs whose settlement checks have been returned as

undeliverable.  Class Counsel shall conduct a search of a national database for the correct

address of the intended recipient.  Upon Class Counsel's written notice of the intended

recipient's correct address or as the Parties may otherwise obtain, the Plan Trust shall

promptly re-mail the returned settlement check to the intended recipient at such corrected

address.  If the settlement check is returned a second time as undeliverable, and Class

Counsel cannot obtain a corrected address for the intended recipient before two hundred and

forty one (241) days after the Plan Trust makes the initial distribution of the Settlement Fund

payments, such returned disbursement will be deemed to be Residual Funds (as defined

below) and treated in accordance with Section 6(d) below.

(d)        Reversion of Residual Funds.  In the event that there are any Settlement

Funds remaining for any reason two hundred and seventy one (271) days after the Plan Trust

makes the initial distribution of the Settlement Fund payments, including settlement checks

which are not deposited or negotiated within that time, any Fee Holdback that has not been

previously designated for release to Class Counsel or any Fee Overpayment (the "Residual Funds"), such Residual Funds will immediately revert back to the Plan Trust and neither Class Counsel nor any Class Member or Original Plaintiff shall have any claim to or interest in such funds; provided, however, that the Plan Trustee, in his sole and absolute discretion, may use such Residual Funds to make Settlement Fund distributions to additional Class Members, if any, that may be identified after he has made the initial distribution of the Settlement Fund, or to Class Members or Original Plaintiffs who have provided correct addresses after the periods set forth in Section 6(c) above.

(e)        Notification of Potential Tax Consequences to Class Members.  The Class Notice (defined below) shall advise each Class Member to seek his or her own personal tax advice regarding the potential tax consequenes of any Settlement Fund payment that such Class Member may receive prior to acting in response to the Class Notice.  The Plan Trustee shall be responsible for filing the appropriate employment tax returns arising from disbursement of the Settlement Fund payments.

(f)        Withholding Taxes and Related Filings.

(i)        The amount of the Net Settlement Fund allocable to each individual Class Member shall be reported as wages to the United States Internal Revenue Service and to other appropriate taxing authorities (each a "Taxing Authority" and collectively, the "Taxing Authorities") on an I.R.S. Form W-2 issued to the Class Member with his or her taxpayer identification number and shall be subject to deductions for applicable taxes and withholdings as required by federal, state and local law.

(ii)     The payments provided for in <u>Section 5</u> of this Settlement Agreement shall be considered a direct award of attorneys' fees and, together with the reimbursement of expenses, shall be reported to the Taxing Authorities on behalf of Class Counsel on an I.R.S. Form 1099 issued to Class Counsel with Class Counsel's taxpayer identification number.

(iii)     In the event that it is subsequently determined by any Taxing Authority that any Party owes any additional taxes with respect to any money distributed under this Settlement Agreement, it is agreed that the determination of any tax liability shall be between such Party and the Taxing Authority, and that no other Party shall be responsible for the payment of such taxes, including any interest and penalties.

(g)          <u>Service Payments to Class Representatives and Original Plaintiffs</u>.  For their service in this matter, the time and effort they have contributed to the case and the financial risks that they undertook by asserting statutory claims on behalf of the Class Members, (i) the Class Representatives shall each receive a one-time payment of two thousand five hundred dollars ($2,500) (the "<u>Class Representative Service Payments</u>") in addition to their allocation of the Net Settlement Fund as set forth in <u>Section 6</u> above, and (ii) the Original Plaintiffs shall each receive a one-time payment of one-thousand dollars ($1,000) (the "<u>Original Plaintiffs Service Payments</u>" and together with the Class Representative Service Payments, the "<u>Service Payments</u>") but shall not participate in the Net Settlement Fund allocation.  The Plan Trustee shall distribute the Service Payments to the Class Representatives and the Original Plaintiffs without taking any deductions.  The Service Payments shall be characterized as non-employee compensation to the Class Representatives and the Original Plaintiffs and shall be reported to the Taxing Authorities on behalf of each

Class Representative and Original Plaintiff on an I.R.S. Form 1099 issued to the Class

Representative or Original Plaintiff with his or her taxpayer identification number.

(h)         <u>Released Claims of Class Members and Original Plaintiffs</u>.  For the

purposes of this Settlement, the term released claims ("<u>Released Claims</u>") shall include both

"FLSA Claims" and "Non-FLSA Claims" (each as defined below).

(i)         "<u>FLSA Claims</u>" shall mean any and all claims, counterclaims and/or

causes of action under the FLSA that have been alleged or that have a similar factual

predicate to the claims alleged in the Beckham Litigation, for each Party and such

Party's predecessors, successors and assigns, whether presently known or unknown,

fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or

unasserted, matured or unmatured, disputed or undisputed, legal or equitable;

<u>provided</u>, <u>however</u>, that nothing contained herein shall be deemed to waive or release

any claims which are allowed pursuant to this Settlement or any of the Parties' rights

or obligations under this Settlement Agreement.

(ii)         "<u>Non-FLSA Claims</u>" shall mean any and all other claims,

counterclaims and/or causes of action of any kind or nature that have been alleged or

that have a similar factual predicate to the claims alleged in the Beckham Litigation,

for each Party and such Party's predecessors, successors and assigns, whether

presently known or unknown, fixed or not, contingent or non-contingent, liquidated

or unliquidated, asserted or unasserted, matured or unmatured, disputed or

undisputed, legal or equitable, including, but not limited to, any and all claims and or

causes of action under, pursuant to or derived from (A) any state law regulating hours

of work, wages, the payment of wages and/or the payment of overtime compensation,

(B) any contract, (C) any state common law, including, but not limited to, claims for unjust enrichment and quantum meruit, and (D) *The Employee Retirement Income Security Act of 1974* ("ERISA") including, but not limited to, claims for benefits under any benefit plans subject to ERISA that arise from any act or omission that has been alleged or based upon a similar factual predicate to the claims alleged in the Beckham Litigation; provided, however, that nothing contained herein shall be deemed to waive or release any claims which are allowed pursuant to this Settlement or any of the Parties' rights or obligations under this Settlement Agreement.

(i)        Reservation of Rights.  The Plan Trust expressly reserves its right to object to, offset or oppose any and all claims, obligations or causes of action, of any type, except those expressly allowed under this Settlement.

(j)        Civil Code § 1542 Waiver.  As to the matters released pursuant to this Settlement, each Original Plaintiff and Class Member hereby expressly waives all rights under the provisions of Section 1542 of the Civil Code of the State of California and any similar rights in any state or territory or under any similar statute or regulation of the United States or any of its agencies.  Section 1542 of the California Civil Code provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Class Member and Original Plaintiff acknowledges that the significance of this waiver of Section 1542 of the California Civil Code and its equivalents is that even if he or she should eventually suffer additional damages arising out of the matters released pursuant to this Settlement, he or she will not be able to make any claim for those damages.  Each Party

represents, warrants and agrees that this waiver is a material term of this Settlement, without which no Party would have entered into this Settlement Agreement.

7. **The Class Notice.**

(a)      As noted above, Class Counsel shall pay the cost (to be reimbursed from the Settlement Fund pursuant to <u>Section 5</u> above) and bear the responsibility of the preparation and service of the Class Notices. Class Counsel's address will be used as the return address for the Class Notices so that any returned Class Notices will be returned to Class Counsel. Class Counsel shall mail the Class Notices by first-class mail to the Class Members at the addresses listed on **Exhibit A** no later than ten (10) business days after the entry of an order by the Bankruptcy Court preliminarily approving this Settlement. The Class Notice shall be in substantially the form annexed hereto as **Exhibit C** or such substantially similar form as may be approved by the Bankruptcy Court. In the event that a Class Notice is returned as undeliverable, Class Counsel shall re-mail the Class Notice to the corrected address of the intended Class Member recipient as may be determined by Class Counsel through a search of a national database or as may otherwise be obtained by the Parties.

(b)      <u>Contents of the Class Notice</u>. The Class Notice shall contain the following information, which shall be individualized for each Class Member, as appropriate:

- that each Class Member has the right to decline to opt in to the Collective or opt out of the Rule 23 Class (all such Class Members timely electing to opt out of the Rule 23 Class, the "<u>Opt-Outs</u>") and preserve all of his or her rights against the Debtors, if any, including the Released Claims, and the procedure for doing so;

- that the Settlement shall become effective only if it is finally approved by the Bankruptcy Court;

- that, if so approved, the Settlement shall be effective as to Class Members who did not timely elect to opt out of the Rule 23 Class, with respect

to Non-FLSA Claims, or who elected to opt in to the Collective, with respect to FLSA Claims;

- the estimated settlement payment that such Class Member would receive under the Settlement;[3]

- the proposed Class Counsel's Fees and Class Representatives' and Original Plaintiffs' Service Payments;

- that such Class Member has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing; and

- that upon the Final Approval Date (defined below) (for Non-FLSA Claims) and/or negotiation of his or her settlement check (for FLSA Claims), all Released Claims (other than those claims to be paid under the terms of this Settlement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

8.    **Objection to Settlement Procedures**.  At or before such time as may be fixed by the Bankruptcy Court, a Class Member may object to this Settlement by delivering timely written notice of such objection (a "Notice of Objection") to Class Counsel and counsel to the Plan Trustee at the addresses set forth in Section 18(d) below and filing such Notice of Objection with the Bankruptcy Court.  The Notice of Objection shall clearly specify the basis for such objection, the relief sought and the grounds for such relief.

9.    **Right of Class Member to Opt Out of Rule 23 Class or Decline to Opt In to the Collective.**

(a)        A Class Member may opt out of the Rule 23 Class by timely delivering to Class Counsel a signed and dated written notice of his or her wish to do so (including his or her name, address, telephone number and social security number).  Any such Class Member whose signed and dated written notice (including his or her name, address, telephone number

---

[3] The individual settlement payment estimates provided for in the Class Notice were determined by applying the allocation formula set forth in **Exhibit B** and then reducing the resulting amount by twenty (20%) percent to account for potential variances in current information and estimates.

and social security number) is received by Class Counsel by the date fixed by the Bankruptcy Court shall be classified as an Opt-Out. An Opt-Out shall neither be a member of the Rule 23 Class nor the Collective. Class Counsel shall provide the Plan Trustee with a list of all Opt-Outs within one (1) business day after the date established by the Bankruptcy Court for Class Members to opt out. Additionally, a Class Member may decline to opt in to the Collective by refusing to negotiate his or her settlement check. Otherwise, if and when the Settlement becomes effective, all Class Members shall be bound by the terms of this Settlement. For the avoidance of doubt, the negotiation of a settlement check (whether a Service Payment or Net Settlement Fund allocation) shall constitute affirmatively opting in to the Collective by such Class Member for FLSA settlement purposes.

(b)         Notwithstanding anything to the contrary in this Settlement, nothing contained herein shall release, impair or expand the rights and claims, if any, of any Opt-Out or any Class Member who does not opt in to the Collective by negotiating his or her settlement check, nor shall anything contained herein affect the defenses and offsets that the Plan Trust may have against such rights or claims including, without limitation, the Plan Trustee's rights to object to the timeliness of any claim asserted by an Opt-Out or any Class Member who does not opt in to the Collective.

(c)         Any portion of the Settlement Fund attributable to the claims of any Opt-Out (including Class Counsel's Fees) shall immediately revert back to the Plan Trust.

10.    **Acceptance and Effectiveness of the Settlement.**

(a)         <u>Bankruptcy Court Approval</u>. The effectiveness of this Settlement shall be subject to and contingent upon the entry of an order of the Bankruptcy Court at the Fairness Hearing approving this Settlement and upon such order having become final and

non-appealable (the date of such order becoming final and non-appealable, the "Final Approval Date"); provided, however, in the event that the Bankruptcy Court or a court with competent jurisdiction determines that the Service Payments and/or Class Counsel's Fee provisions are unreasonable, the Parties shall amend such Service Payments and/or Class Counsel's Fee provisions so as to render the same reasonable to such court without modifying the liquidated amount of the Beckham Claim as set forth in Section 3(a) above.

(b)      Effective Date.  The effective date of this Settlement is the Final Approval Date.

11.      **The Waiver and Release of any Released Claims by All Class Members and Original Plaintiffs if the Settlement Becomes Effective.**

(a)      Upon the Final Approval Date, all Class Members and their respective predecessors, successors, heirs and assigns (the "Class Member Releasing Parties"), and the Plan Trustee, in his capacity as such, the Plan Trust, the Debtors and their estates, and each of their predecessors, successors and assigns (collectively, the "Plan Trust Releasing Parties") shall be deemed to have settled, released and extinguished completely any and all Non-FLSA Claims that they have, had, might have or might have had against each other.

(b)      Upon any Class Member's negotiation of his or her settlement check (whether Service Payment or Net Settlement Fund allocation), that Class Member shall be deemed to have affirmatively opted in to the Collective and this Settlement and that Class Member and his or her respective predecessors, successors, heirs and assigns, and the Plan Trustee Releasing Parties shall thereby be deemed to have settled, released and extinguished completely any and all FLSA Claims that they have, had, might have or might have had against each other.

(c)        Upon any Original Plaintiff's negotiation of his or her settlement check, that Original Plaintiff and his or her respective predecessors, successors, heirs and assigns (the "Original Plaintiff Releasing Parties") and the Plan Trustee Releasing Parties shall be deemed to have settled, released and extinguished completely any and all FLSA and Non-FLSA Claims that they have, had, might have or might have had against each other.

(d)        Upon the Final Approval Date, any claim filed by, scheduled or filed on behalf of, a Class Member asserting any Non-FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such Non-FLSA Claim and Epiq Bankruptcy Solutions, LLC, as the official claims agent in the Chapter 11 Cases ("Epiq"), shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such Non-FLSA Claims.  Upon the negotiation of any Class Member's settlement check (whether Service Payment or Net Settlement Fund allocation), any claim filed by, or scheduled on behalf of, that Class Member asserting any FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such FLSA Claim and Epiq shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such FLSA Claims.  Upon the negotiation of any Original Plaintiff's settlement check, any claim filed by, or scheduled on behalf of, that Original Plaintiff asserting any FLSA or Non-FLSA Claim shall be deemed to be withdrawn with prejudice with respect to such FLSA or Non-FLSA Claim and Epiq shall be authorized and directed to amend the Claims Registry to reflect the withdrawal of such FLSA or Non-FLSA Claims.

(e)        Within fifteen (15) business days of the Final Approval Date, Class Counsel shall dismiss the Beckham Action with prejudice.

12.     **Right to Withdraw from Settlement Agreement.**  In the event that more than five (5) percent of the Class Members timely exercise their right to opt out of the Rule 23

Class certified under this Settlement, the Plan Trustee may, in his sole and absolute discretion, elect to terminate this Settlement Agreement by providing written notice to Class Counsel within two (2) business days after receipt of the final list of Opt-Outs pursuant to Section 9(a) above.  Upon withdrawal from the Settlement by the Plan Trustee, (a) the terms of this Settlement shall not be binding upon any of the Parties, (b) nothing contained in this Settlement, the Motion or any other pleading seeking approval of the Settlement, or any correspondence or other communication relating to the negotiations, drafting or approval of the Settlement shall be used or referred to in any subsequent proceeding in or relating to the Beckham Litigation, and (c) none of the provisions hereof shall prejudice or impair any rights, remedies or defenses of the Parties.

13.    **Protection of Class Members' Confidential Information.**  In order to protect the privacy of the Class Members, it is presently contemplated that the Parties shall seek to file **Exhibit A** with the Bankruptcy Court under seal.  However, this schedule has been made available to and reviewed by Class Counsel, on the condition that Class Counsel is bound by an agreement not to disclose the contents thereof except as required to perform the duties herein; provided, however, that Class Counsel may disclose the information relating to a given Class Member to that Class Member or use the information to locate a Class Member as contemplated in Sections 6(c) and 7(a) above.

14.    **No Litigation.**  Except as may be necessary to enforce the terms of this Settlement, each of the Original Plaintiff Releasing Parties, Class Member Releasing Parties and Plan Trust Releasing Parties agrees that she or he shall not commence or proceed with any action, claim, suit, proceeding or litigation against any other Party, directly or indirectly,

regarding or relating to the matters described herein, or take any action inconsistent with the terms of the Settlement.

15.     **No Admission of Liability or Non-Liability.**  This Settlement is intended to settle and dispose of the Released Claims.  Nothing herein shall be construed as an admission by any Party of any facts or liability or non-liability of any kind.

16.     **Representations and Warranties**.  Each Party represents and warrants that upon Bankruptcy Court approval of this Settlement it will have the legal right and authority to enter into this Settlement and the transactions and releases contemplated hereby.

17.     **Further Assurances.**  The Parties shall cooperate fully and shall execute and deliver any and all supplemental papers, documents, instruments and other assurances and shall do any and all acts that may be reasonably necessary or appropriate to give full force and effect to the terms and intent of this Settlement.

18.     **Miscellaneous**.

(a)          Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction over this Settlement and any dispute or controversy arising from or related to the interpretation or enforcement of this Settlement.

(b)          Governing Law.  Except where superseded by applicable federal law, this Settlement shall be governed by the laws of the State of Delaware without regard to the choice of law principles in the State of Delaware which could otherwise require the application of the law of another jurisdiction.

(c)          Confidentiality; Public Announcement of Settlement.  The Parties and their counsel agree that, prior to the filing of the Motion with the Bankruptcy Court, they shall keep the fact, amount and terms of the Settlement strictly confidential.  Furthermore,

prior to the final approval of the Settlement, they will not issue any press releases, initiate any contact with the press, respond to any press inquiry or have any communication with the press about this case and/or the fact, amount or terms of the Settlement, and, prior to the Bankruptcy Court-approved mailing of the Class Notice, any communication about the Settlement to a Class Member, other than the Class Representatives, will be limited to a statement that a settlement has been reached and the details will be communicated in a forthcoming Bankruptcy Court-approved notice.

(d)         Notices.  Except as otherwise specifically provided herein, any notice or other communication required or permitted to be delivered under this Settlement shall be (i) in writing, (ii) delivered personally, by courier service or by certified or registered mail, first-class postage prepaid and return receipt requested, (iii) deemed to have been received on the date of delivery, and (iv) addressed as follows (or to such other address as the Party entitled to notice shall hereafter designate by a written notice filed with the Bankruptcy Court):

**If to the Plan Trustee, to:**

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Attention:  Edward L. Schnitzer, Esq.

**If to the Original Plaintiffs, Class Members or Class Counsel, to:**

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Attention:  Jack A. Raisner, Esq.

and

NICHOLS KASTER PLLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
Attention:  Bryan Schwartz, Esq.

and

NICHOLS KASTER PLLP
80 South Eighth Street, Suite 4600
Minneapolis, Minnesota 55402
Attention:  Paul J. Lukas, Esq.

(e)        Amendments.  This Settlement may not be modified, altered, amended or supplemented by the Parties except by a written instrument that the Parties have signed with any required approval of the Bankruptcy Court.

(f)        Integration.  The provisions contained in this Settlement Agreement constitute the entire agreement between the Parties with regard to the subject matter hereof. This Settlement Agreement supersedes any and all agreements, whether written or oral, that may have previously existed between the Parties with respect to the matters set forth herein. Except as expressly provided for herein, no statements, promises or representations have been made by any Party to any other, or relied upon, and no consideration has been offered, promised, expected or held out other than as may be expressly provided herein.

(g)        No Construction Against the Drafter.  The Parties agree that each of them has had the full opportunity to participate in the drafting of this Settlement and, accordingly, any claimed ambiguity shall neither be construed for nor against any of the Parties.

(h)        No Third-Party Beneficiaries.  This Settlement does not constitute a contract for the benefit of any third parties, any prior creditors or claimants of the Parties, or any non-party, other than Class Members in relation to the provisions of this Settlement.

This Settlement shall not inure to the benefit of any third party purchasers who purport to obtain the Original Plaintiffs' and Class Members' claims through assignment, transfer or otherwise.  Class Counsel and the Plan Trustee shall be under no obligation to distribute any payments made pursuant to this Settlement to anyone other than the Original Plaintiffs and Class Members themselves, or their representatives, heirs, executors, administrators, personal representatives, legal representatives, agents, and attorneys.

(i)     Headings.  The headings of this Settlement are for convenience only and are not part of the Settlement and do not in any way define, limit, extend, describe or amplify the terms, provisions or scope of this Settlement and shall have no effect on its interpretation.  Where appropriate, the use of the singular shall include the plural, and vice versa, and any use of the masculine, feminine and/or neuter gender shall include the others as well.

(j)     Counterparts.  This Settlement may be executed by the Parties in separate counterparts, each of which when so executed shall be deemed an original, and all of which, when taken together, shall constitute one and the same document.  Delivery of an executed counterpart of a signature page of this Settlement Agreement by facsimile or electronic means (in .pdf file or comparable format) shall be effective as delivery of an original executed copy of this Settlement Agreement.

(k)     Binding Nature of Settlement.  This Settlement shall be binding upon and shall inure to the benefit of the Parties and their respective successors, transferees, assigns, heirs and estates.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.

HAHN & HESSEN LLP

on behalf of the Plan Trustee

By: _____ 3/17/15
Name:  Edward L. Schnitzer, Esq.
Title:   Counsel to the Plan Trustee

OUTTEN & GOLDEN LLP

on behalf of the Original Plaintiffs, Class
Representatives and Class Members

By: _____ 3/17/15
Name: Jack A. Raisner, Esq.
Title:   Class Counsel

28

## EXHIBIT A

## CLASS LIST

## TO BE FILED UNDER SEAL

## EXHIBIT B

**Method Used to Calculate Settlement Fund Payments Due to Class Members**
**Based on Current Information and Estimates**

Class Counsel shall calculate the amount of the Net Settlement Fund that will be distributed to each Class Member on an individualized basis in the following manner. The Settlement Fund (after first being reduced by the Service Payments to be paid to the Class Representatives and Original Plaintiffs, Expense Reimbursements and then the Fee Component of Class Counsel's Fees as provided in the Settlement Agreement) will be allocated to each Class Member according to the following formula:

Key Assumptions:

Total Settlement Fund: $3,000,000

Class Counsel's Fees, Expense Reimbursements and Service Payments: $1,079,000

Total Available for Distribution: $1,921,000

Base/Bonus Ratio: 3/1 (75%/25%)

Calculation:

- The split between the Wage Earners and Non-wage Earners is determined by calculating a theoretical owed amount for each Class Member based on the 2007 minimum wage for the state they worked in and a 40 hour work week during the Class period.

- The total for each category is then divided into the theoretical total to find the percentage allocation for the two categories: Wage Earners make up 94% and Non-wage Earners make up 6%.

- The 25% bonus allocation is subtracted from the Total Available for Distribution.

- The remaining 75% is divided amongst the two categories based on the calculated allocation as a fraction of the theoretical total (94%/6%).

- Each Class Member's theoretical amount owed is divided into the total category theoretical amount owed to find the individual percentage owed.

- The Class Member's percentage is multiplied by the base allocation to their respective category to obtain the dollar amount owed.

- The bonus is only awarded to Wage Earners.

- A four category tier determines the bonus allocation amount based on 2007 earned wages (rounded to the nearest dollar) as follows:

  o $120,000 and above: 4 points

  o $60,000 to $119,999: 3 points

  o $40,000 to $59,999: 2 points

  o $0 to $39,999: 1 point

- Each Wage Earner's point award is divided into the total point amount to find the percentage allocation.

- The Wage Earner's individual percentage is multiplied by the bonus pool total to obtain their individual dollar amount.

- The Wage Earner's base award and bonus award are added to find the total award dollar amount.

**EXHIBIT C**

**PROPOSED FORM OF CLASS NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | Case No. 07-11-47 (CSS) Jointly Administered |
| A Delaware corporation, *et al.*, Debtors. | |

**[NAME]
[ADDRESS]
[CITY, STATE ZIP]**

---

### *NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT AND FAIRNESS HEARING*

# If you were a Loan Officer employed by American Home Mortgage between February 7, 2007 through August 6, 2007 in the United States (except for the State of Oregon), you may be entitled to a payment from a class action lawsuit settlement.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- This notice pertains to (1) any American Home Mortgage ("AHM") employee who was employed as a Loan Officer at AHM in Arizona, California, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia and Washington between February 7, 2007 and August 6, 2007 **OR** (2) any AHM employee who was employed as a Loan Officer at any time within the United States (except for the State of Oregon) between February 7, 2007 through August 6, 2007.

- The parties have settled the claims asserted against AHM for $3,000,000.  This settlement fund will be used to pay former AHM Loan Officers who qualify for a settlement payment, as well as to pay attorneys' fees and costs, and service awards.

- Based on the formula created under the settlement, you are entitled to receive an estimated settlement payment, free of any deductions except employment taxes, estimated to exceed $_____.  This amount is based on an allocation formula outlined in Paragraph 8 below.

- Your legal rights may be affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DO NOTHING** | Remain part of the case and receive the payment estimated above, subject to applicable taxes and withholdings. You will receive a check which you will need to cash promptly. |
| **EXCLUDE YOURSELF** | If you wish to exclude yourself ("opt-out") from the settlement you must follow the directions outlined in Paragraph 12 below.  If you exclude yourself, you will receive no payment and you cannot object to the settlement.<br><br>**Your exclusion request must be postmarked no later than [DATE TO BE DETERMINED BY BANKRUPTCY COURT], 2015.** |
| **OBJECT** | Write to the Court about why you don't like the settlement.  If you object in writing, you may also ask to speak in Court about the fairness of the settlement. You may only appear in Court to speak about the fairness of the settlement if you file a timely written objection to the settlement and if you do not exclude yourself from the settlement.<br><br>**Your objection must be postmarked no later than [DATE TO BE DETERMINED BY BANKRUPTCY COURT], 2015.** |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

# BASIC INFORMATION

## 1. Why did I get this notice?

AHM's records state that you worked as a Loan Officer between February 7, 2007 and August 6, 2007 in Arizona, California, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South

Carolina, Tennessee, Virginia or Washington, **OR** that you worked as a Loan Officer between February 7, 2007 through August 6, 2007 within the United States (other than the State of Oregon). The Court ordered that you be sent this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement.  If the Court approves the settlement and after objections and appeals are heard, payments will be mailed to class members who do not exclude themselves.

This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing this case is the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or the "Court").  This lawsuit is known as *Chris Beckham, et al. v. American Home Mortgage Investment Corp., et al.*

| **2. What is this lawsuit about?** |
| --- |

This lawsuit is about whether AHM misclassified Loan Officers as exempt from federal and state overtime laws and improperly denied them minimum wage and overtime pay.

On August 6, 2007, American Home Mortgage Holdings, Inc., American Home Mortgage Investment Corp. ("AHM Investment"), American Home Acceptance, Inc., AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), American Home Mortgage Corp. ("AHM Corp."), American Home Mortgage Ventures LLC, Homegate Settlement Services, Inc., and Great Oak Abstract Corp. (collectively, "Debtors" or "AHM"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware.  Due to this bankruptcy filing, a "Plan Trust" was established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009*.  Steven D. Sass was appointed the liquidating trustee and is called the "Plan Trustee."

On June 20, 2007, former AHM Loan Officers ("Original Plaintiffs") sued AHM Investment and AHM Corp.  The Original Plaintiffs' complaint (the "Complaint") asserted that they and other Loan Officers were misclassified as exempt employees and were erroneously denied minimum wage and overtime for hours that they worked over forty in a workweek under the Fair Labor Standards Act (the "FLSA") and/or denied minimum wage, overtime, meal and/or rest period pay under California, Illinois, New York and Wisconsin labor laws. The case is known as *Edward Abram, Jr., et al. v. American Home Mortgage Investment Corp., et al.*, Case No. 07-CV-03252-VRW.

On January 11, 2008, after AHM Corp. filed for bankruptcy, the Original Plaintiffs filed a proof of claim against the estate of AHM Corp. asserting these claims on their behalf and purportedly on behalf of putative class members (the "Proof of Claim").  The Proof of Claim was later amended to substitute the current "Class Representatives" in the place and stead of the Original Plaintiffs as the class representatives in the lawsuit and asserted that AHM Investment and AHM Corp. violated the FLSA and the state wage and hour laws of Arizona, California, Delaware, Florida, Georgia,

Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia and Washington by allegedly failing to (a) pay the Original Plaintiffs and the putative class members overtime and minimum wage compensation as required by the FLSA and the wage and hour laws of the Subject States, and (b), under California wage and hour laws, (i) provide the Original Plaintiffs and the putative class members with itemized wage statements, (ii) provide the Original Plaintiffs and the putative Class Members with and/or authorize them to take meal and rest periods, and (iii) timely pay the Original Plaintiffs and the Class Members' wages.

AHM's Plan Trustee raised objections to the Proof of Claim with the Class Representatives, denying certain material allegations of the Complaint and asserting various defenses. To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the parties have concluded that it is in their best interests to resolve and settle the action by entering into a settlement agreement.

The Plan Trustee, the Class Representatives and the "Class Members" are collectively referred to as the "Parties" and, as to each, a "Party."

**3. Why is this a class action?**

In a class action, one or more people called "Class Representatives" sue on behalf of people who have similar claims. The people together are a "Class" or "Class Members." The Loan Officers who sued are called the Original Plaintiffs. One court resolves the issues for everyone in the Class — except for those who choose to exclude themselves from the Class.

**4. Why is there a settlement?**

The Court did not decide in favor of one party. Both sides believe they would have prevailed in the case, but there was no decision ruling in favor of either party. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, and the people affected will get compensation. The Class Representatives and the attorneys think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

**5. How do I know if I am part of the settlement?**

You are automatically a member of the Class if you worked for AHM as a Loan Officer between February 7, 2007 and August 6, 2007 in Arizona, California, Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Missouri, Nevada, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Virginia or Washington (the "Subject States") **OR** if you worked for AHM as a Loan Officer between February 7, 2007 and August 6, 2007 in the United States (other than the State of Oregon).

If you worked for AHM as a Loan Officer anytime between February 7, 2007 and August 6, 2007 in any of the Subject States, your settlement payment will include amounts under the Fair Labor Standards Act and the applicable state wage law.  If you worked for AHM as a Loan Officer anytime between February 7, 2007 and August 6, 2007 in any state other than the Subject States (or the State of Oregon), your payment will be include an amount under the Fair Labor Standards Act only.

| 6.  I'm still not sure if I am included. |
|---|

If you are still not sure whether you are included, or you need to change your mailing address, you can ask for free help.  You can contact Class Counsel as follows:

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Attention:  Olivia J. Quinto, Esq.
(212) 245-1000
AHMSettlement@outtengolden.com

and

NICHOLS KASTER PLLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
Attention:  Matt Helland, Esq.
(415) 277-7239
helland@nka.com

# THE SETTLEMENT BENEFITS – WHAT YOU GET

| 7.  What does the settlement provide? |
|---|

AHM has agreed to pay up to $3,000,000 into a fund to be divided among former Loan Officers who are covered by the settlement.  The settlement fund shall cover payments to Class Counsel for attorneys' fees and costs, payments to Original Plaintiffs and Class Representatives for their service to the Class, and litigation costs.  The remaining amount, after attorneys' fees and costs and service payments have been deducted, shall be divided among Class Members based on their service for AHM between February 7, 2007 and August 6, 2007.

| 8.  How much will my payment be and how will it be taxed? |
|---|

Based on the formula that has been preliminarily approved by the Court, you will be entitled to receive an estimated settlement payment of at least $_____, subject to applicable taxes and withholdings.  The allocation formula takes into account your service under the applicable federal and state wage laws.  The settlement agreement contains the exact allocation formula. You may obtain a copy of the settlement agreement by following the instructions in Paragraph 22 below.

Your payment will be treated as W-2 wages with taxes withheld.  Neither Class Counsel nor AHM nor its Plan Trustee make any representations concerning the tax consequences of this settlement and you are advised to seek your own personal tax advice regarding the tax implications of the settlement.

# HOW YOU GET A PAYMENT

### 9.  How can I get my payment?

You do not need to do anything to receive the payment identified in Paragraph 8.  You will be sent a settlement check if and when the Court approves the settlement and after all appeals have been exhausted.  If you choose to exclude yourself, then you will not receive a payment.

After receiving your payment, you will have limited period in which to cash the check. Any uncashed checks after that period will revert back to AHM's Plan Trust.

### 10.  When will I get my payment?

The Court will hold a hearing on _____, 2015, at _____.m.  to determine whether to approve the settlement.  If the Court approves the settlement, there may be appeals after that.  It is always uncertain whether these appeals can be resolved, and resolving them can take time.  Please be patient.

### 11.  What am I giving up to get a payment or stay in the Class?

Unless you exclude yourself (as explained in Paragraph 12 below), you will remain in the Class. As a result, upon final approval by the Court of the settlement and/or if you cash in your individual settlement check, you will release any and all claims that were alleged or are similar to what was alleged in this class action lawsuit against AHM and its Plan Trust.  This means that you cannot sue, continue to sue, or be part of any other lawsuit against AHM and its Plan Trust about the legal issues in this case.  It also means that all of the Bankruptcy Court's orders will apply to you and legally bind you.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue AHM, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself — or is sometimes referred to as "opting out" of the settlement class.

### 12.  How do I opt out of the settlement?

To exclude yourself from the settlement, you must send a written, signed and dated letter by certified mail return receipt requested to:  OUTTEN & GOLDEN LLP, Attn: Olivia J. Quinto,

Esq., 3 Park Avenue, 29th Floor, New York, New York 10016, that includes the words, "I opt out of the AHM overtime settlement." You must include your name, address, telephone number, social security number and signature. **Your exclusion request must be postmarked no later than _____, 2015**.

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may also be able to sue (or continue to sue) AHM in the future about some of the legal issues in this case. But speak to a lawyer as soon as possible because your claims are subject to a statute of limitations, which means that they will expire on a certain date.

| 13.  If I don't exclude myself, can I sue AHM for the same thing later? |
|---|

No. Unless you exclude yourself, you give up any rights to sue AHM for the same claims in this case. If you have a pending lawsuit, speak to your lawyer in that case immediately to see if this settlement will affect your other case. **Remember, the exclusion deadline is _____, 2015**.

| 14.  If I exclude myself, can I get money from this settlement? |
|---|

No. If you exclude yourself, you will not receive any money from this lawsuit. But, you may sue, continue to sue, or be part of a different lawsuit against AHM regarding these same claims.

# THE LAWYERS REPRESENTING YOU

| 15.  Do I have a lawyer in this case? |
|---|

The Court has decided that the lawyers at the law firms of Outten & Golden LLP and Nichols Kaster PLLP are qualified to represent you and all Class Members. These lawyers are called "Class Counsel." You will not be charged for these lawyers. You do not need to retain your own attorney in order to participate as a Class Member. If you do not opt out of the Class and want to be represented by your own lawyer, you may hire one at your own expense.

| 16.  How will the lawyers be paid? |
|---|

Class Counsel will ask the Court to approve payment of up to one-third of the settlement fund for attorneys' fees. These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also ask the Court to approve payment of up to $22,000 for their out-of-pocket costs, including administering the notice to the Class of the Settlement. The Court may award less than these amounts. AHM and its Plan Trustee have agreed not to oppose these fees.

Class Counsel will also ask the Court to approve payments of $57,000 in total to the Original Plaintiffs and Class Representatives in recognition of their service to the Class (the "Service Payments"). This amount includes payments of $2,500 to each of twenty Class Representatives

and $1,000 to each of the seven Original Plaintiffs who brought the case and aided in the investigation and prosecution of the case.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

| **17. How do I tell the Court that I don't like the settlement?** |
| --- |

If you're a Class Member, you can object to the settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it, including whether you feel that Class Counsel's requests for attorneys' fees and costs and/or the Service Payments should not be approved. The Court will consider your views. To object, you must send a letter that includes the words "I object to the settlement in the AHM overtime litigation" as well as all reasons for the objection. You must include the caption of the action (as shown above on the first page) and your name, address, and telephone number together with a detailed statement of the basis for your objection and whether you wish to be heard personally or by counsel at the final hearing at which the parties will be requesting binding Court approval of the settlement and the award of attorneys' fees and costs, as described below in Paragraph 21. Mail the objection via certified mail, return receipt requested, to:

THE CLERK OF THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
824 North Market Street, 5th Floor, Courtroom #6
Wilmington, Delaware 19801; and

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Attention: Olivia J. Quinto, Esq.; and

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
Attention: Edward L. Schnitzer, Esq.

**Your objection letter must be postmarked no later than _____, 2015.**

| **18. What's the difference between objecting and excluding?** |
| --- |

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. If you exclude yourself from the settlement, you may not object. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to. If you wish to bring anything to the Court's attention about the settlement, you should provide it in writing to individuals according to Paragraph 17 above.

**19. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on _____, 2015 at _____.m., at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, DE 19801, on the 5th Floor in Courtroom No. 6.

At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**20. Do I have to come to the hearing?**

No. Class Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**21. May I speak at the hearing?**

If you file a timely objection to the settlement, you may ask the Court for permission to speak at the fairness hearing. To do so, you must include the words "I intend to appear at the fairness hearing" in your written objection, which must be filed according to the procedure described in Paragraph 17 above. Your testimony at the fairness hearing will be limited to those reasons that are included in your written objection. You cannot speak at the hearing if you exclude yourself from the settlement.

# GETTING MORE INFORMATION

**22. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the settlement agreement itself. You can get a copy of the settlement agreement by sending a request, in writing, to:

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Attention: Olivia J. Quinto, Esq.
(212) 245-1000
AHMSettlement@outtengolden.com

and

NICHOLS KASTER PLLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
Attention:  Matt Helland, Esq.
(415) 277-7239
helland@nka.com

## 23.  How do I get more information?

If you have other questions about the settlement, you can contact Class Counsel at the addresses and/or telephone numbers below:

OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
Attention:  Olivia J Quinto Esq.
(212) 245-1000
AHMSettlement@outtengolden.com

and

NICHOLS KASTER PLLP
One Embarcadero Center, Suite 720
San Francisco, California 94111
Attention:  Matt Helland, Esq.
(415) 277-7239
helland@nka.com


DATED:          [Insert Date of Mailing], 2015