**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, *et al.*,[1] | : | Case No. 07-11047 (CSS) |
| | : | |
| Debtors. | : | Jointly Administered |

**MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363 AND 554 (I) ESTABLISHING AN UNRETURNED COLLATERAL DOCUMENT PROTOCOL AND (II) AUTHORIZING THE ABANDONMENT, DESTRUCTION OR OTHER DISPOSITION OF (A) UNRETURNED COLLATERAL DOCUMENTS IN CONNECTION THEREWITH AND (B) CERTAIN SERVERS, ELECTRONIC STORAGE MEDIA AND THE INFORMATION CONTAINED THEREON**

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the trust (the "Plan Trust") established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009* (the "Plan")[2] in connection with the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), hereby moves this Court (the "Motion") for entry of an order, substantially in the form of the proposed order annexed hereto as Exhibit A (the "Proposed Order"), pursuant to Sections 105, 363 and 554 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) establishing a protocol to return or abandon, destroy or otherwise dispose of Unreturned Collateral Documents (as hereinafter defined) (including Unidentified Custodian Collateral Documents (as hereinafter defined)) and (ii) authorizing the Plan Trustee to

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp, a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp., a New York corporation (8580).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

return or abandon, destroy or otherwise dispose of (a) Unreturned Collateral Documents (including Unidentified Custodian Collateral Documents) pursuant to such protocol and (b) certain servers, electronic storage media and the information contained thereon, as more fully set forth below. In support of the Motion, the Plan Trustee respectfully represents and states as follows:

## JURISDICTION AND STATUTORY AUTHORITY

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory bases for the relief sought herein are Sections 105, 363 and 554 of the Bankruptcy Code and Bankruptcy Rule 6007.

## BACKGROUND

### A. General Background

3. On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Between the Petition Date and the Plan Effective Date (as hereinafter defined), each Debtor operated its business and managed its properties as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an Order of this Court.

4. On February 23, 2009, the Court entered an Order confirming the Plan [D.I. 7042] (the "Confirmation Order"). The Plan became effective on November 30, 2010 (the "Plan Effective Date").

5. Pursuant to the Plan, as of the Plan Effective Date, the Plan Trust was established and all of the Debtors' assets, causes of action, claims, rights and interests, succeeded,

transferred and vested in the Plan Trust. Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust. The Plan Trustee is vested with the rights, powers, and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

**B. The Debtors' Prepetition Retention of Hard Copy Loan Files and Previous Loan File Disposition Orders**

6. In the ordinary course of the Debtors' pre-petition loan origination business, the Debtors maintained individual loan files, including copies of consumer loan applications, closing documents, titles and home appraisals. Pre-petition, the Debtors' loan origination personnel transmitted their mortgage loan files to the Debtors' headquarters in Melville, New York (collectively, the "Hard Copy Loan Files") for central storage in compliance with applicable federal and state laws. The Debtors utilized American Corporate Record Center, Inc. ("ACRC") as their main storage vendor, with operations located at a warehouse in Melville, New York (the "ACRC Facility"). In addition to the ACRC Facility, Hard Copy Loan Files were maintained at the Debtors' headquarters as well as other storage facilities (including, but not limited to, Moises Document Storage, Iron Mountain and GRM Information Management Services) for employee review and analysis in the ordinary course of their businesses. All Hard Copy Loan Files have been consolidated and are currently located in the Plan Trustee's facility in Farmingdale, New York.

7. In September of 2005, the Debtors implemented a practice intended to image all new Hard Copy Loan Files and, since that time, have imaged approximately 490,000 loans (the "E-Loan Files"). The E-Loan Files, in addition to other business records of the Debtors, are stored on servers maintained by the Plan Trustee.

8. Due to, among other things, the volume of Hard Copy Loan Files and financial concerns surrounding the ACRC Facility, on December 14, 2007, the Debtors filed their motion

[D.I. 2395] (the "First Disposition Motion") seeking entry of an order, pursuant to Sections 105, 363 and 554 of the Bankruptcy Code, authorizing the Debtors to abandon and destroy those Hard Copy Loan Files that had been imaged (the "Duplicate Hard Copy Loan Files") or, alternatively, to return such files (to the extent a request was received prior to destruction of same) to the owner of the related loans upon written request (the "Loan File Return Declaration") and payment of all reasonable costs and expenses associated with the retrieval, review and return of such files.

9. On January 14, 2008, the Court entered an order (the "First Disposition Order") authorizing the immediate abandonment and destruction of only those Duplicate Hard Copy Loan Files for loan applications that did not close (i.e., files related to withdrawn, canceled or rejected loans) [Docket No. 2724].

10. The Debtors supplemented the First Disposition Motion on February 5, 2008 [D.I. 2888], seeking to establish a method by which Hard Copy Loan Files could be returned to the owners of the loans. On February 19, 2008, the Court entered an order granting the Debtors' motion subject to certain restrictions and limitations [Docket No. 3010] (the "Second Disposition Order"). The Second Disposition Order authorized the Debtors to, among other things, return Hard Copy Loan Files to the legal owners and/or master servicers of the underlying loans (each, a "Requesting Party") to the extent such party filed a Loan File Return Declaration by March 14, 2008 (the "Return Protocol"). The Second Disposition Order expressly provided that the Requesting Party shall be responsible for the reasonable costs and expenses (the "Return Costs") associated with the return of its requested Hard Copy Loan Files, the amount of such Return Costs being dependent upon the preferred delivery method. The collateral documents such as original notes, mortgage copies, title insurance, etc. (the "Collateral Documents") found during

the Debtors' review of the Hard Copy Loan Files and the recorded documents received from recording agencies (the "Trailing Documents") were required to be forwarded to the proper loan custodians or owners at the Debtors' expense and were not subject to the Return Protocol.

11. On June 5, 2008, the Debtors filed a motion [D.I. 4387] (the "Third Disposition Motion") seeking authorization to destroy the Hard Copy Loan Files that were not subject to a Loan File Return Declaration, postpetition stipulation, or an order to return (the "Non-Requested Loan Files").

12. On June 25, 2008, the Court authorized the Debtors to destroy the Non-Requested Loan Files [Docket No. 4858] (the "Third Disposition Order"),[3] except for documents relating to pending or threatened litigation against or relating to the Debtors or claims filed against the Debtors (the "Claim Hold Documents"). The Plan Trustee has been the recipient of numerous third-party subpoenas which have sought loan files and other Debtor documents. As of today's date, the Plan Trustee is in compliance with any and all outstanding subpoenas, producing such documents exclusively from the information contained on the Active Servers and certain of the Retained Backup Tapes (both as hereinafter defined).

13. On December 22, 2010, the Plan Trustee filed a motion seeking application of the Second and Third Disposition Orders to all mortgage loan files and not just those stored in the ACRC Facility [D.I. 9591] (the "Fourth Disposition Motion"). On January 31, 2011, the Court entered an order granting the Fourth Disposition Motion [D.I. 9727] (the "Fourth Disposition Order").

[3] At the hearing held on June 25, 2008 with respect to the Third Disposition Motion, the Debtors agreed they would not destroy the Non-Requested Loan Files insured by Triad Guaranty Insurance Corporation because such files were related to pending litigation. Additionally, the Debtors also represented to the Court that they would not destroy any files related to two individual borrowers, Elisabeth Jackson and Edmund Andrews.

14. The Fourth Disposition Order authorized the Plan Trustee to return all requested Hard Copy Loan Files in accordance with the Return Protocol set forth in the Second Disposition Order and to destroy any Non-Requested Loan Files in accordance with the Third Disposition Order. The Fourth Disposition Order contained certain additional restrictions not set forth in the Second and Third Disposition Orders, including, *inter alia*, a requirement to maintain the mortgage loan files for mortgages originated in and after 2003; however, such files could be maintained electronically.

15. On January 30, 2015, the Plan Trustee filed a motion seeking authorization to destroy (a) the Debtors' miscellaneous business records ("Miscellaneous Business Records"), (b) Hard Copy Loan Files for loans originated in 2003, 2004 and prior to September 2005, which were not the subject to a Loan File Return Declaration, and (c) Hard Copy Loan Files subject to a Return Protocol but unreturnable due to either (i) the related Requesting Party had not provided the Plan Trustee with sufficient delivery instructions and/or refused to pay the Return Costs as required under the Second Disposition Order, or (ii) the related Requesting Party no longer wanted the Hard Copy Loan Files and had not withdrawn its Loan File Return Declaration (collectively, "Unreturned Loan Files") [D.I. 11058] (the "Fifth Disposition Motion"). On February 20, 2015, the Court entered an order granting the Fifth Disposition Motion [D.I. 11091] (the "Fifth Disposition Order").

16. As set forth more fully above, the Debtors currently have authority pursuant to the First Disposition Order, Second Disposition Order, Third Disposition Order, Fourth Disposition Order and Fifth Disposition Order to destroy all (a) Non-Requested Loan Files that (i) are Duplicate Hard Copy Loan Files or (ii) relate to loans that were originated prior to September 2005 or (iii) that are separately imaged or have a corresponding E-Loan File, provided that in

any case such Non-Requested Loan Files are not Claim Hold Documents, (b) Unreturned Loan Files and (c) Miscellaneous Business Records.

17. Paragraph 67 of the Confirmation Order provides, in relevant part, that

> [F]rom and after the Effective Date, the Plan Trustee shall preserve and maintain all document files, records and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred by the Debtors to or otherwise acquired by the Plan Trust in accordance with the Plan and/or Plan Trust Agreement, provided, however, that the Plan Trustee may, in its sole discretion and without the prior approval of the Plan Oversight Committee or the Bankruptcy Court (i) abandon or destroy Records in accordance with, and to the extent permitted by the Orders previously entered into by the Bankruptcy Court concerning the destruction of documents [D.I. 2724, 3010 and 4858] (the "Destruction Orders"), each of which Destruction Order shall be preserved and shall continue in full effect against the Plan Trustee as successor to the Debtors, unless the Plan Trustee files a motion on notice to all interested Parties (including, but not limited to, the Teachers' Retirement System of Oklahoma and the Oklahoma Police Pension and Retirement System (collectively, the "Securities Plaintiffs") seeking to modify any such Destruction Order and (ii) abandon or transfer Records in accordance with, and to the extent permitted by, prior Orders of the Bankruptcy Court concerning the preservation and/or transfer of Records with respect to certain third parties. Except as permitted by the Destruction Orders, the Plan Trustee shall not destroy any Records absent further Order of the Bankruptcy Court after notice to all interest Parties (including, but not limited to, the Securities Plaintiffs) with an opportunity to be heard.

*See also* Plan, Article 8(F)(5)(xvii).

## C. Relevant Background

### *i. Unreturned Collateral Documents*

18. The Plan Trust is in possession of approximately nineteen thousand (~19,000) Collateral Documents and Trailing Documents which have not yet been forwarded to the proper loan custodians or owners (collectively, the "Unreturned Collateral Documents") pursuant to the Second Disposition Order. Since the entry of that Order, the Debtors and the Plan Trust have engaged in an extensive due diligence review and used their best efforts to identify the proper

custodians or owners of the Unreturned Collateral Documents from more than six (600+) hundred known, unique initial purchasers of the related loans, a process hampered by the fact that many of the known initial purchasers no longer exist as a result of merger, acquisition or other reasons, or the Debtors' records do not reflect the initial purchaser of the related loan. As a result of those extensive efforts, the entities listed on **Exhibit B** hereto represent, to the best of the Plan Trust's knowledge, information and belief, the identities of the initial purchasers of the related loans or their successors and, therefore, the proper custodians or owners of certain Unreturned Collateral Documents.

19. Notwithstanding these best efforts, the Debtors and the Plan Trustee were unable to identify the proper custodian or owner for approximately two thousand (~2,000) Unreturned Collateral Documents (this subset, collectively, the "Unidentified Custodian Collateral Documents"). While the Plan Trustee seeks the authority to abandon, destroy or otherwise dispose of the Unidentified Custodian Collateral Documents, the Plan Trustee is willing to make available to any party upon request (an "Unidentified Custodian Collateral Document Request") by written sworn declaration from such party to the Plan Trust (the form of which is annexed hereto as **Exhibit D,** an "Unidentified Custodian Collateral Document Declaration") within fifteen (15) days of the entry of the Proposed Order, a list containing the borrower name, subject property address and date and amount of mortgage for the underlying loans related to the Unidentified Custodian Collateral Documents for purposes of identifying the proper custodian or owner thereof. Moreover, in order to provide any such requesting party with sufficient time to establish its entitlement to any Unidentified Custodian Collateral Document, the Plan Trustee will not abandon, destroy or otherwise dispose of the Unidentified Custodian Collateral Documents until forty-five (45) days after the entry of the Proposed Order.

***ii. The Servers and Other Electronic Storage Media***

20. Prior to the Petition Date, the Debtors stored certain document files, records and electronic data, including, without limitation, the E-Loan Files, UNIFI loan origination system, network drives, intranet and emails, on servers and back-up tapes, all of which were transferred to the Plan Trust on the Effective Date. Presently, the Plan Trust maintains forty-eight (48) active servers (the "Active Servers") containing this information. In addition to the Active Servers, the Plan Trust also maintains twenty-four (24) dormant servers at its Farmingdale facility (the "Dormant Servers") and has four (4) racks of servers in varying types and sizes different from those currently at its Farmingdale facility in storage at a warehouse in Centereach, New York (the "Stored Servers" and together with the Active and Dormant Servers, the "Servers"). The Active Servers contain all of the information stored on the Dormant and Stored Servers.

21. In addition to the Servers, the Plan Trust is also in possession of (a) approximately ten thousand (~10,000) Server back-up tapes, which tapes contain copies of the applications and data stored on the Servers dating as far back as 2002 (the "Backup Tapes") and (b) approximately five thousand (~5,000) workstation hard drives which were removed from employees' computers prior to the Debtors' sale of substantially all of its assets in November 2007 (the "Hard Drives").

22. As previously noted, the Plan Trustee has been the recipient of numerous third-party subpoenas which have sought loan files and other Debtor documents. Also as previously noted, as of today's date, the Plan Trustee is in compliance with any and all outstanding subpoenas. While the Plan Trustee seeks the authority to abandon, destroy or otherwise dispose

of (i) twenty (20) of the twenty (24) Dormant Servers[4] and all of the Stored Servers (collectively, the "Designated Servers"), (ii) five (5,000) thousand of the ten (10,000) thousand Backup Tapes which have never been used to respond to any third-party subpoena (the "Designated Backup Tapes" and the remaining Backup Tapes, the "Retained Backup Tapes") and (iii) the Hard Drives, in the five (5) years since the Effective Date, the Plan Trustee has not once had to use the Designated Servers, Designated Backup Tapes or Hard Drives to respond to any such subpoena. Productions to such subpoenas have been made exclusively from information contained on the Active Servers and certain of the Retained Backup Tapes.

**RELIEF REQUESTED**

23. By this Motion, the Plan Trustee requests entry of an order pursuant to Sections 105, 363, and 554 of the Bankruptcy Code and Bankruptcy Rule 6007 (i) establishing a protocol to return or abandon, destroy or otherwise dispose of Unreturned Collateral Documents, and (ii) authorizing the Plan Trustee to return or abandon, destroy or otherwise dispose of (a) Unreturned Collateral Documents and Unidentified Custodian Collateral Documents pursuant to such protocol, as set forth below, and (b) the Designated Servers, Designated Backup Tapes and Hard Drives.

24. The Plan Trustee proposes the following protocol for the return or destruction of the Unreturned Collateral Documents and Unidentified Custodian Collateral Documents (the "Unreturned Document Protocol"):

> a) The Plan Trustee is hereby authorized to send a customized letter, substantially in the form attached to the Motion as **Exhibit C** (an "Unreturned Document Letter"), as well as the form of Unidentified Custodian Collateral Document Declaration, to any custodian or owner of a loan relating to an Unreturned Collateral Document including, without limitation, those custodians and owners listed on **Exhibit B** to the Motion.

[4] In the short term, the Plan Trust intends to retain four (4) of the Dormant Servers to serve as spare servers.

b) For purposes of the Unreturned Document Protocol, the "custodian or owner" of any given loan shall be the party or servicer to which the Debtors sold or transferred such loan.

c) The Unreturned Document Letter will provide each loan custodian or owner (each, a "Receiving Party") with thirty (30) days to provide the Plan Trustee with either confirmation of the address to which the Plan Trustee should deliver the related Unreturned Collateral Documents or a new address to which such documents should be delivered.

d) In the event that the Receiving Party fails to provide the Plan Trustee with either confirmation of the address to which the Plan Trustee should deliver such Unreturned Collateral Documents or a new address to which such documents should be delivered within that thirty (30) day period, at the end of such thirty (30) day period, the Plan Trustee shall be authorized to immediately abandon, destroy or otherwise dispose of the related Unreturned Collateral Documents without any further order of the Court.

e) In the event that an Unreturned Document Letter is returned as undeliverable, the Plan Trustee shall be authorized to immediately abandon, destroy or otherwise dispose of the related Unreturned Collateral Documents without any further order of the Court.

f) The Plan Trustee is authorized to abandon, destroy or otherwise dispose of the Unidentified Custodian Collateral Documents on or after forty-five (45) days following the entry of this Order.

## BASIS FOR RELIEF

25. This Court has the authority to establish the Unreturned Document Protocol pursuant to Section 105(a) of the Bankruptcy Code, which provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In doing so, the Court is not precluded from "taking any action or making any determination necessary or appropriate to enforce or implement court orders [such as the Second Disposition Order] or rules, or to prevent an abuse of process." *Id*.

26. Additionally, Section 554 of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C.

§ 554(a). Further, Section 363 of the Bankruptcy Code permits a trustee to "use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

27. The return, destruction or other disposal of the Unreturned Collateral Documents, the Designated Servers, Designated Backup Tapes and Hard Drives is also governed by Bankruptcy Rule 6007, which provides, in relevant part, that:

> [u]nless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, all creditors, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code. A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to the other entities as the court may direct.

FED. R. BANKR. P. 6007.

28. As noted by the Third Circuit Court of Appeals, "[t]he abandonment power embodied in Section 554 enables the trustee to rid the estate of burdensome or worthless assets, and so speeds the administration of the estate … and also protects the estate from diminution. In such manner, abandonment serves the creditors' interest in expeditiously obtaining a fair amount on settlement of their claims." *In re Quanta Resources Corp.*, 739 F.2d 912, 916 (3d Cir. 1984).

29. A trustee's decision to abandon property of the estate is discretionary. *See In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003). As is the case with a trustee's decision to reject an executory contract,[5] the business judgment standard applies to a trustee's decision to abandon property that is either of inconsequential value or burdensome to the estate. *Id.* ("The trustee's power to abandon property is discretionary . . . . The Court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.") (internal citations omitted); *Mele v. First Colony Ins. Co.*, 127

B.R. 82, 85 (D.D.C. 1991) ("[A]bandonment provisions are designed to allow the trustee to relinquish assets that would be a financial drain on the estate, or relieve the trustee of the financial burden of administering inconsequential assets that would cost more than they are worth to the estate.").

**D. Unreturned Document Protocol**

30. Here, establishing the Unreturned Document Protocol will aid in the implementation of the Second Disposition Order, facilitate the orderly disposition of the Unreturned Collateral Documents and the Unidentified Custodian Collateral Documents and move the Plan Trustee one step closer to completing his administration of the Plan Trust and the Debtors' estates.

31. As these chapter 11 cases near their conclusion, the Plan Trustee needs finality with respect to the Unreturned Collateral Documents and Unidentified Custodian Collateral Documents, which in most instances, relate to loans that are more than ten (10) years old and have likely been paid off or otherwise refinanced. The Unreturned Document Protocol will give parties-in-interest an opportunity to claim such documents and provide the Plan Trustee with the information he needs to deliver them, solely at the estate's cost, prior to their destruction. The appropriate disposition of the Unreturned Collateral Documents, including the Unidentified Custodian Collateral Documents, whether through return or abandonment and destruction, will relieve the estate of expending any more resources on their continued storage and maintenance, expenditures and efforts which have become burdensome to the estate.

**E. Designated Servers, Designated Backup Tapes and Hard Drives**

---

[5] The decision to reject an executory contract is subject to the court's finding that such decision is a product of the debtor in possession's sound business judgment. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 39 (3d Cir. 1989); *see also In re Fleming Companies, Inc.*, 308 B.R. 689, 691 (Bankr. D. Del. 2004).

32. For essentially the same reasons, authorizing the abandonment, destruction or other disposition of the Designated Servers, Designated Backup Tapes and Hard Drives is warranted. Here, continuing to maintain and store the Designated Servers, Designated Backup Tapes and Hard Drives at the Farmingdale and Centereach facilities has become burdensome to the estate. As noted, all of the information on the Designated Servers and Designated Backup Tapes are already contained on the Active Servers and, during the five (5) year pendency of the Plan Trust, the Plan Trustee has not once had to use any of the Designated Servers, Designated Backup Tapes or Hard Drives to respond to any third-party subpoena. As such, there is no justification to continue to expend estate resources to maintain and store the Designated Servers, Designated Backup Tapes or Hard Drives. In addition to such relief alleviating the estate from any future costs of maintaining such equipment, any costs associated with the abandonment, destruction or other disposition of the Designated Servers, Designated Backup Tapes or Hard Drives are likely to be wholly offset by the value of the scrap metal such equipment will garner from the third-party contractor hired to conduct their destruction.

33. For all of the foregoing reasons, the Plan Trustee submits that his decision to (a) establish the Unreturned Document Protocol and to return or abandon, destroy or otherwise dispose of the Unreturned Collateral Documents and Unidentified Custodian Collateral Documents and (b) abandon, destroy or otherwise dispose of the Designated Servers, Designated Backup Tapes and Hard Drives is the product of the Plan Trustee's sound business judgment, appropriate and warranted under the circumstances, and should therefore be approved.

**NOTICE**

34. Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) all known parties to threatened or pending litigation involving the

Debtors; (iii) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain *Second Amended and Restated Credit Agreement dated August 10, 2006*; (iv) counsel to the Agent for the Debtors' Postpetition Lender; (v) the offices of the attorneys general of the fifty states and the District of Columbia; (vi) the Federal Trade Commission; (vii) counsel to Homeward Residential Mortgage Servicing, Inc.; (viii) the Securities and Exchange Commission; (ix) Staten Island Legal Services; (x) all parties that have filed a notice of appearance and request for service of papers in these bankruptcy cases; (xi) securities plaintiffs; (xii) parties who have served a third-party subpoena on the Plan Trustee; and (xiii) the loan custodians or owners listed on **Exhibit B** attached hereto who are identified in the Debtors' books and records as the loan custodians or owners of the Unreturned Collateral Documents. In light of the nature of the relief requested, the Plan Trustee submits that no other or further notice need be given.

**CONCLUSION**

WHEREFORE, the Plan Trustee respectfully requests that this Court enter an order (i) establishing the Unreturned Document Protocol, (ii) authorizing the Plan Trustee to return or abandon, destroy or otherwise dispose of the Unreturned Collateral Documents and Unidentified Custodian Collateral Documents pursuant to the Unreturned Document Protocol, (iii) authorizing the Plan Trustee to abandon, destroy or otherwise dispose of the Designated Servers, Designated Backup Tapes and Hard Drives, and (iv) granting the Plan Trustee any further relief that the Court deems just and proper.

Dated: Wilmington, Delaware
October 9, 2015

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: /s/ Margaret Whiteman Greecher
Sean M. Beach (No. 4070)
Margaret Whiteman Greecher (No. 4652)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

- and -

HAHN & HESSEN LLP
Mark S. Indelicato
Edward L. Schnitzer
Jeffrey Zawadzki
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Counsel to the Plan Trustee*