1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
2

3  IN RE:                         )  Case No. 07-11047 (CSS)
                                  )  Chapter 11
4  AMERICAN HOME MORTGAGE HOLDINGS,)
   INC., a Delaware Corporation,  )
5  et al.,                        )
                                  )
6                 Debtors.        )  Courtroom No. 6
                                  )  824 Market Street
7                                 )  Wilmington, Delaware 19801
                                  )
8                                 )  October 30, 2015
                                  )  10:00 A.M.
9
                         TRANSCRIPT OF HEARING
10          BEFORE HONORABLE CHRISTOPHER S. SONTCHI
                 UNITED STATES BANKRUPTCY JUDGE
11
   APPEARANCES:
12

13 For the Plan Trustee:    Young Conaway Stargatt & Taylor LLP
                            By:  MARGARET GREECHER, ESQUIRE
14                          1000 North King Street
                            Wilmington, Delaware 19801
15
                            Hahn & Hessen LLP
16                          By:  JOSEPH ORBACH, ESQUIRE
                            488 Madison Avenue
17                          New York, New York 10022

18 ECRO:                    LESLIE MURIN

19 Transcription Service:   Reliable
                            1007 N. Orange Street
20                          Wilmington, Delaware 19801
                            Telephone:  (302) 654-8080
21                          E-Mail:  gmatthews@reliable-co.com

22
   Proceedings recorded by electronic sound recording:
23 transcript produced by transcription service.

24

25

For Morgan Stanley Mortgage:
                         DLA Piper LLP
                         By:  ASHLEY ALTSCHULER, ESQUIRE
                         1201 North Market Street, Suite 2100
                         Wilmington, Delaware 19801

1                                  INDEX

2                                                               Page

3  NOTICE OF AGENDA MATTERS:
   For the Plan Trustee, by Ms. Greecher                          4
4  For the Plan Trustee, by Mr. Orbach                            7
   For Morgan Stanley Mortgage, by Mr. Altschuler               12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE CLERK:  All rise.

2          THE COURT:  Please be seated.  Good morning.

3          MS. GREECHER:  Good morning, Your Honor.

4          THE COURT:  Sorry for the delay.  I was trying to

5    read Mr. Sass's declaration because I just got it.

6          MS. GREECHER:  Understood, Your Honor, and I do

7    appreciate the time your taking to review it, as we will talk

8    about in a moment.  Hopefully, that will speed up this

9    hearing a little bit.  For the record, Margaret Whitman

10   Greecher on behalf of the Plan Trustee.  Your Honor, the last

11   time we were here was several months ago.  It was in

12   connection with another document destruction motion.  If you

13   give me a moment, I would like to just give you a case status

14   update on where we are.

15         THE COURT:  Sure.

16         MS. GREECHER:  The Plan Trustee did complete its

17   first distribution to unsecured creditors in May of 2015; so

18   May of this year in accordance with Your Honor's distribution

19   order.  The claims reconciliation process is virtually

20   complete.  We just reached a settlement in principal with the

21   last class action Claimants.  So Your Honor should expect to

22   see a motion with respect to that settlement shortly.

23         Additionally, the last remaining large claim is with

24   Bank of America.  It's a $50 million dollar Bank of America

25   syndicate unsecured claim.  We are working with Bank of

1  America.  We do expect to reach a settlement on that as well.

2  We are hopeful that once that settlement is done, we would be

3  in a position to provide a second and final distribution,

4  again, hopeful in the first quarter of 2016.  In preparation

5  for that final distribution, the Court should expect to see

6  filings related to both the distribution and the closing of

7  the cases.

8          Your Honor may recall the distribution order that

9  you have already entered authorized certain claims be treated

10  as disputed.  Those included B of A syndicate unsecured claim

11  that we just talked about, non-Debtor subsidiary claims and

12  certain Claimants who failed to provide the W-9 Forms that

13  the Plan Trustee needs in order to make the distributions.

14  The Plan Trustee continues to work on these claims and you

15  will see either separate or combined motions to address all

16  of those in connection with the final distribution.

17          Since making that first distribution, Your Honor, we

18  did have several Claimants who failed to cash their check or

19  actually returned their distributions to us.  The Plan

20  Trustee has worked diligently to try and make sure those

21  distributions find their way to the rightful owners.  The

22  Plan Trust is required to hold those distributions for six

23  months, which will expire this month, November 16th.  Well,

24  next month, November 16th.  While we are not obligated to do

25  so, we do anticipate filing a more formal notice to provide

1  creditors one last chance to claim those distributions before

2  that deadline.

3          Then, finally, as we have addressed throughout this

4  case, the last remaining issue that will be before Your Honor

5  before the lights go out are related to the Debtors' large

6  volume of hard copy documents, most of which have been

7  destroyed, and electronic data.  Since this case was filed,

8  the Debtors and the Plan Trustee have provided copies of loan

9  files to borrowers, sought returns to return files to current

10  owners or subsequent purchasers of those loans and has

11  responded to many subpoenas to third parties.

12          As these cases have aged, the Debtor and Plan

13  Trustee have sought, in a systematic fashion, to either

14  return those and to destroy them, leaving open the most

15  accessible and most requested data until last.  Your Honor is

16  well aware we are reaching its ninth year of this case.  It

17  is anticipated to be its final year and so the Plan Trustee

18  has filed the current motion, which you are going to hear,

19  which talks about getting rid of, for the first time,

20  electronic data. It is dormant servers and then Your Honor

21  should expect to see another motion in which we present

22  protocol in order to turn down the active servers and provide

23  everyone one last chance to get information that they may

24  need.

25          With that, does Your Honor have any questions on the

1  status?

2           THE COURT:  No.

3           MS. GREECHER:  With that, I will turn the podium

4  over to my co-counsel Joseph Orbach from Hahn & Hessen to

5  handle the motion.

6           THE COURT:  Okay.  Thank you.  Good morning, Mr.

7  Orbach.

8           MR. ORBACH:  Good morning, Your Honor, Joseph

9  Orbach, Hahn & Hessen, on behalf of the Plan Trustee.  The

10  Plan Trustee filed its motion for an order pursuant to

11  Sections 105, 363 and 544 of the Bankruptcy Code to

12  established the unreturned collateral of document protocol

13  and authorize the destruction or disposition of unreturned

14  collateral documents and certain servers and electronic

15  storage media, and the information contained thereon.

16           We have received some informal comments and there

17  was one formal objection filed by Morgan Stanley.  Yesterday,

18  we filed an amended proposed order as well as the declaration

19  of Mr. Sass.  Your Honor, Mr. Sass the Plan Trustee is with

20  me in the Courtroom this morning.  Before I begin, does Your

21  Honor have any questions with respect to the motion?

22           THE COURT:  No.

23           MR. ORBACH:  As Your Honor is well aware and as was

24  just described, this is not the first document destruction

25  motion we filed before Your Honor or that the Debtors have

1  filed before Your Honor.  In fact, in February of this year

2  we were in front of you and there were a slew of objections

3  from many parties.  That is not the case today.  I think the

4  reason for that, for the most part is laid out in the motion

5  and in even more detail in Mr. Sass's declaration is that the

6  documents and electronic information slated to be destroyed

7  are not the documents or data which have ever been used to

8  respond to any third party subpoenas.  The information which

9  has been provided, in response to subpoenas, will remain the

10 Plan Trustee at this time and that information is all

11 contained on the active servers and the retained back-up

12 tapes.

13       The motion addresses two main categories of

14 information.  The first set of information is the unreturned

15 collateral documents.  This comprises approximately 19,000

16 hard copy collateral and trailing documents, and of that

17 amount approximately 2,000 are documents which we refer to as

18 the unidentified custodian collateral documents which are

19 documents that the Plan Trustee cannot identify the proper

20 custodian either due to the incompleteness of the Debtors'

21 records, the fact that certain financial institutions have

22 merged, have gone out of business or have changed their name.

23       The Plan Trustee has proposed a protocol which would

24 attempt to return the 17,000 documents where it believes it

25 knows the proper custodian and as described in the motion and

1    in the Exhibit C, the Plan Trustee proposes to send a letter

2    to those parties informing them that we have documents that

3    we believe belong to them.  They would have 30 days to either

4    state affirmatively they want the documents at the address we

5    specified, they want the documents at a different address

6    they designate or either not respond or respond in the

7    negative that they don't want the documents.  Again, the

8    documents will go back to these parties at the Plan Trustees'

9    expense.

10          Additionally, the letter will inform these parties

11   that the Plan Trustee is in possession of 2,000 additional

12   collateral and trailing documents, which we have not

13   identified the custodian.  To the extent these parties

14   believe they may be the proper custodian on our servicer,

15   they can fill out the declaration we have attached to the

16   proposed motion and we would provide them a list of

17   information which would enable them to determine whether, in

18   fact, they are the proper custodian for those documents.

19          The three parties who contacted me to discuss this

20   motion would issue third party subpoenas.  They have

21   requested that they might have an interest in those

22   unreturned collateral documents and we have agreed with them,

23   if they fill out the affidavit, the declaration that we have

24   attached to the proposed order as Exhibit 2, we would give

25   them the same listing of follower level data to enable them

1    to determine if, in fact, these collateral documents relate

2    to any of the loans that are at issue in their underlying

3    litigations.   To the extent it does, we can produce those

4    documents pursuant to the already outstanding subpoenas that

5    they have issued to the Trust; otherwise, the documents are

6    slated to be destroyed.   So that is the first category of

7    information under this motion.

8         The second category of information we are seeking to

9    destroy is 24 back-up servers, approximately 5,000 back-up

10   tapes and approximately 5,000 hard drives of former

11   employees.   We are not seeking, at this time, to destroy the

12   active servers or the 5,000 retained back-up tapes, which is

13   where employee e-mails are stored.   As detailed in the motion

14   and in Mr. Sass's declaration, when the Plan Trustee responds

15   to third party subpoenas, the Trust has never looked to the

16   back-up servers, the designated back-up tapes or the hard

17   drives.   Moreover, I am the primary point person for the

18   Trust in responding to all third party subpoenas, which is

19   one of the reasons I am in front of you today.

20        The Trustee has gone to great lengths to satisfy

21   third parties involved in litigation to the best of the

22   Trusts' ability, taking into account the fact that the Trust

23   has a limited number of employees, the fact that information

24   requested at this point is at least eight years old and no

25   party has sought to bring a motion to compel the Trustee to

1   produce documents beyond what the Trustee has and at this

2   time will continue to produce.  That said, there are several

3   open subpoenas where the parties still need to determine

4   which American Home Loan members are issued before the Trust

5   can actually respond to those subpoenas.  We are continuing

6   to work with those parties.

7          So that brings us to the Morgan Stanley objection.

8   Morgan Stanley's objection, as I understand it, is they are

9   concerned that we are going to destroy documents which may be

10  relevant in various litigations they are a participant in.

11  Morgan Stanley is not saying, nor could it, that the Plan

12  Trust has not complied with the subpoena it issued.  In fact,

13  Morgan Stanley has not issued any subpoena to the Plan Trust.

14  Additionally, Morgan Stanley is not saying that the Plan

15  Trust is obligated to keep the materials it is seeking to

16  destroy pursuant to any subpoena.

17         The fact is all parties how issued subpoenas to the

18  Trust received notice of the motion and none of those parties

19  objected to the destruction of the hard drives, back-up

20  servers or designated loan tapes. The reason for this is

21  simple.  The parties have subpoenaed the Trust, gotten the

22  documents they requested with the full cooperation of the

23  Trustee.  No one is seeking the hard drives because no one

24  believes it contains relevant discoverable data.  No one is

25  seeking the designated back-up tapes because they have no use

1  for old application data from an eight and a half year old

2  bankruptcy company.

3          Finally, in the motion, we state that the active

4  server contains all the information which is on the backup

5  servers.  The backup servers, is as its name implies, simply

6  a backup; it's a redundancy.  In response to the objection

7  and in further support of the motion we filed yesterday, and

8  we apologize again for the lateness in getting that

9  declaration on file, a declaration from Mr. Sass to address

10  some of the issues raised in the objection.  I understand

11  Your Honor has received it.  Has Your Honor reviewed it?

12          THE COURT:  I did.

13          MR. ORBACH:  Would Your Honor be willing to permit

14  me to enter that declaration into evidence or would you

15  prefer I proceed by proffer or direct examination.

16          THE COURT:  Is there any objection to admitting the

17  declaration into evidence?

18          MR. ALTSCHULER:  Your Honor, I just received the

19  declaration last night, so I have not had a chance to

20  consider whether we need to have the cross examination of Mr.

21  Sass.  It's the first time I am seeing him here today, but if

22  I could request, I would first like to have argument on that

23  issue and then see if we believe that, thereafter, there is

24  still some need for some factual evidence to then have more

25  of a hearing on that issue.  I would request that of the

1  Court.

2          THE COURT:  All right, well we will hold that in

3  abeyance for now.

4          MS. GREECHER:  Okay.  So that is all I have.

5          THE COURT:  And you need not put Mr. Sass on for

6  now, but, obviously, those rights are fully reserved.

7          MR. ORBACH:  Thank you.

8          THE COURT:  Your welcome.

9          MR. ALTSCHULER:  May I please the Court, Your Honor,

10  Ashley Altschuler from DLA Piper on behalf of Morgan Stanley

11  Mortgage Capital Holdings, LLC.  I am with my associate

12  Kaitlin Edelman here today, also from DLA Piper.  As Mr.

13  Orbach pointed out Morgan Stanley, my client, objects to the

14  Plan Trustees' request to destroy an incredible amount of

15  documents that are relevant to 43 litigations that are

16  currently pending that my client, Morgan Stanley, is

17  currently a Defendant in.

18          THE COURT:  Well, if they are relevant, why haven't

19  you issued a subpoena?

20          MR. ALTSCHULER:  They're not relevant to the request

21  that Morgan Stanley as a Defendant is subpoenaing those

22  records.

23          THE COURT:  Right.

24          MR. ALTSCHULER:  That Morgan Stanley is fully aware,

25  as seven Plaintiffs already have done, that Morgan Stanley is

1  a Defendant by which the Plaintiffs are making requests as

2  third parties requesting all materials from AHM.  We are the

3  Defendant in those actions.  We do not possess custody or

4  control of the documents, but we fully are aware that at

5  least seven of the 43 Plaintiffs, which are significant

6  investors, some of these cases are at their infancy, some of

7  these cases have gone through some discovery, so we are aware

8  that these types of documents are relevant.

9         Our issue that we are also under obligations,

10  pursuant to the discovery orders and the discovery rules in

11  those cases, which are around the country, Your Honor.  In

12  addition, Morgan Stanley is the subject of confidential

13  government agency investigations where Morgan Stanley has an

14  obligation pursuant to those orders in those cases and those

15  investigations to request of third parties, like AHM, and

16  require that documents that could be relevant with regard to

17  the mortgage loans that were purchased are not destroyed.  We

18  need to comply with those orders.

19         So, therefore, we object to the destruction of those

20  materials.  We are fully aware that the active servers

21  contain documents that Plaintiffs to date have used to

22  subpoena and request materials from there.  But, again,

23  because many of the cases that my client is a Defendant in

24  are at their infancy.  We do not know what one day one

25  Plaintiff will request.  The scenario that Morgan Stanley

1  fears is that what will happen is a Plaintiff will say we are

2  looking for document loans A, B and C that happen to not be

3  contained on the active server, then what will happen is they

4  will say well you have the designated servers, you have 5,000

5  backup tapes, you have hard drives; let's look in those

6  materials to see whether those materials exist and the answer

7  will be they have been destroyed.

8         Presently, Mr. Sass, nor has counsel, has provided

9  us, Morgan Stanley, with any of the relevant e-discovery

10 material information that would be required for Morgan

11 Stanley, my client, and its litigation counsel to go through

12 those listings and to see, one, whether any of those

13 materials are, in fact, relevant, or could be relevant or,

14 two, whether its correct, as Mr. Sass stated in his statement

15 --

16         THE COURT:  Well, have you asked for this

17 information?

18         MR. ALTSCHULER:  Have we asked it of who?

19         THE COURT:  Of the Debtor.  Have you asked for the

20 e-discovery information you say you don't have?

21         MR. ALTSCHULER:  In our negotiations I made it clear

22 that what we would like to do is to put this request on a

23 delay period so that we can find out at Morgan Stanley what

24 we might need to do to see whether those information's

25 mature.

1          THE COURT:  How much time do you need?

2          MR. ALTSCHULER:  I would ask that if Your Honor

3    provides the same 90 days that you provided in the February

4    2015 hearing, what we would prefer to do, Your Honor,

5    because, again, we are not requesting the material, what we

6    would like to do, we think is more efficient, is to provide

7    notice to the 43 Plaintiffs that we are aware of, to say we

8    are going to order, if you wish to seek these materials you

9    hereby have notice to go seek those materials, maybe they

10   don't request them at all, which is not our prerogative and

11   not our problem.  If they do request them, then at least they

12   will have notice and an opportunity for 90 days to request

13   those materials and then those materials could be destroyed

14   if Your Honor would so rule.  But we would still contend

15   that's in the alternative that we think that until our cases

16   are terminated, that they should not be destroyed.

17          THE COURT:  I can tell you that's not happening.  I

18   am not holding this bankruptcy up for the next 15 years while

19   litigation grinds its way through the Federal system and

20   investigations grind their way through the Federal system.  I

21   have a duty to wrap this case up for the benefit of my

22   creditors in my case.  Parties who think they might need

23   information and had every opportunity to come to the Debtor

24   and the Liquidating Trustee and figure out, you know, whether

25   they need something.  The evidence that has been put in front

1   of me in other cases is that the Debtor and the Trust have

2   been nothing but open to providing that information.  So I

3   may give you some more time to try to wrap this up, but there

4   is no way I am going to indefinitely hold open these

5   documents and require the Debtor to continue to maintain

6   these servers.  It has been nine years.

7          Look, we all remember 2008 and 2009.  We will never

8   forget it.  I know a lot of this litigation took a long time

9   to work its way through the system and will take a long time

10  to work its way through the system, but there are limits to

11  what this Debtor can afford.  Every dollar that goes to

12  preserving theoretical documents that might theoretically

13  need to be made available in other litigation is a dollar out

14  of the creditor's pocket.  So I would be open to giving you

15  an opportunity to give further notice to make sure your basis

16  are covered because I know you are in an awkward situation.

17         Would these Plaintiffs have already received notice,

18  do we know?

19         MR. ALTSCHULER:  Your Honor, I am aware that seven

20  of the 43 Plaintiffs, of which we know of, currently pending

21  actions, have received notice of this motion because the

22  Debtor previously received a subpoena to obtain those

23  materials.  There is numerous additional parties that to our

24  knowledge do not know that there is a proposed destruction.

25         MR. ORBACH:  I would just add to that, Your Honor.

1  Joseph Orbach.  Not only have those seven received it, pretty

2  much every major Plaintiffs firm who does this type of

3  litigation has received it, not necessarily because of a

4  litigation involving Morgan Stanley, but they have issued

5  subpoenas in other cases.  So, so to speak, the universe or

6  most of the universe of third party litigations involving

7  mortgage backed securities is aware of the motion.

8           THE COURT:  All right.

9           MR. ALTSCHULER:  And what I fear, Your Honor, is

10  that the Plaintiff that doesn't know comes up one day and

11  says Morgan Stanley permitted these materials to be destroyed

12  because they didn't notify us that they would be destroyed.

13           THE COURT:  All right, let's do this, let's set

14  something along the lines of the alternative relief that is

15  being requested by Morgan Stanley which is period of time so

16  that a formal notice can go out to all these 43 Plaintiffs

17  that make it clear what is going to happen and what their,

18  you know, opportunities are to try to preserve these

19  materials.  I am happy to sign an order that says that that

20  is what's happening so that Morgan Stanley has the protection

21  of Court order and that people understand this is important

22  and serious.  I can sign that under certification.

23           Ninety days seems reasonable to me, given we are

24  shooting for first quarter 2016.  So I don't want to hold

25  things up indefinitely, but that gets us to the end of

1  January and I will set a date before we leave for a final

2  hearing on this.  At that time I will enter the order

3  allowing for the destruction of anything that is still open

4  as a result of this sort of 90 day window for people to come

5  in and request documents, if that is going to be acceptable

6  to Mr. Sass.

7       MS. GREECHER:  Your Honor, could you just us one

8  minute?

9       THE COURT:  Yeah, of course.  It might make sense to

10  -- that's my ruling, so let's work around the practicalities

11  of making it happen.  Why don't we take a recess and you guys

12  can talk about a formal way to do that that makes some sense.

13  You can talk internally and if you need to talk to each

14  other, of course you can do that.  Then, we can figure out

15  what to do about an evidentiary basis for today when we come

16  back in, but I am not going to hold the case up indefinitely,

17  but I will give you what you have asked for in the

18  alternative, which is 90 days to provide a formal notice,

19  pursuant to a Court order that says, look, this is it.

20       If you think you want this stuff, this is the time,

21  come and get it and if you don't come and get it a Judge in

22  Delaware is going to sign an order and it's all going to get

23  destroyed.  Then, you won't be able to come and complain to

24  Morgan Stanley about it and, hopefully, you're not going to

25  be able to try to hold that against Morgan Stanley.  You will

1  have to explain whatever you have to explain in front of

2  whatever Judge you have.  I can't control what other Judges

3  do, but that is what I am willing to do and I think that

4  makes a lot of sense.  Everything else, though, that you have

5  asked for, I am happy to approve.  So I am not quite sure how

6  the logistics of it will all work.  So let's do that.

7          MR. ALTSCHULER:  Yes, Your Honor, and just for the

8  record I, of course, will comply to work with co-counsel to

9  ensure that that process that I raised in the alternative is

10 effectuated, but for the record on behalf of Morgan Stanley

11 we do still object to the destruction of materials, but we

12 will comply with the Court's order.

13         THE COURT:  Okay.  I understand.  Your rights are

14 reserved.  So let's take a recess.  You can talk.  Just let

15 Ms. Murin know when you are ready to go.

16         MR. ALTSCHULER:  Thank you, Your Honor.

17         MS. GREECHER:  Thank you, Your Honor.

18    [Recess 10:26:10 to 10:44:22]

19         THE CLERK:  All rise.

20         THE COURT:  Please be seated.

21 MR. ORBACH:  Thank you, Your Honor, Joseph Orbach for the

22 record, Hahn & Hessen.  We took your ruling.  We think it's a

23 simple fix to the proposed order, which we will submit under

24 certification of counsel.  I just want to put it on the

25 record, the plan to proceed is not going to destroy for 90

1  days from entry of the order, either the unreturned

2  collateral documents and the electronic data that we sought

3  in the motion.  So we have a couple of times where we are

4  going to change different dates to 90 days.

5          We are also going to add an ordered paragraph that

6  the Plan Trustee is going to serve this order on the parties

7  that Morgan Stanley is going to identify to us.  We are

8  hopeful we are going to get that within two business days,

9  were going to get the order out, hopefully, within five

10  business days, everyone is going to have notice at the end of

11  90 days, all this stuff goes away.  If they want to come to

12  us, speak about how to obtain the data, we will discuss that

13  with them, resolve it like we have resolved every other third

14  party subpoena.

15          THE COURT:  Okay.  Do we need another hearing date

16  on that or its going to automatically kick in?

17          MR. ORBACH:  We believe it should automatically kick

18  in.  At the end of 90 days it's going to be destroyed.  If

19  somebody makes a motion that we shouldn't destroy it, then we

20  will need a hearing date.

21          THE COURT:  Then you will get a hearing date from

22  Ms. Gadson.

23          MR. ALTSCHULER:  If I may, Your Honor.

24          THE COURT:  Yes.

25          MR. ALTSCHULER:  Again, Ashley Altschuler for Morgan

1  Stanley.  I agree with the process that's been set up.

2  Again, Morgan Stanley objects to any destruction, but we

3  understand the Court has issued its order.  The only issue

4  that we would like to raise is that in connection with the

5  notice period that its going to occur, hopefully, within the

6  next few days, we request that the Courts order reflect that

7  the 90 day period for the destruction of the documents begins

8  on the date that the Plan Trustee submits that notice or

9  dispatches that notice to these Plaintiffs, so then the

10  Plaintiffs can, at least, have 90 days within which to review

11  it.

12          THE COURT:  I think that's fair.  Very good.  I will

13  await an order under certification of counsel.  If you need a

14  hearing date, you can always contact Ms. Gadson.

15          MS. GREECHER:  Thank you.

16          THE COURT:  This works out to late January, early

17  February and I am out of the office for two weeks, around

18  then, but we will fit you in as soon as we can.

19          MS. GREECHER:  Thank you, Your Honor.  I do

20  understand that you have been busy.  We have talked to Ms.

21  Gadson.  I think you are completely full and booked November

22  through December, so we are working with her to find a

23  January date/February date and, hopefully, by that point we

24  will have some additional motions for you to see.

25          THE COURT:  Great, that's fine.  I will tell her she

1  can give you those dates.  Thank you.  Anything else.  Great.

2  We are adjourned.  Have a good day.

3     (Court Adjourned).

4

5

6

7

8

9

10

11

12

13                         CERTIFICATE

14  I certify that the foregoing is a correct transcript from the

15  electronic sound recording of the proceedings in the above-

16  entitled matter.

17  /s/Mary Zajaczkowski                    November 18, 2015

18  Mary Zajaczkowski, CET**D-531              Date

19

20

21

22

23

24

25