**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re:<br><br>AMERICAN HOME MORTGAGE HOLDINGS, INC., *et al*.,<br><br>Debtor. | Chapter 11<br>Case No. 07-11047-(CSS)<br><br>Related to Docket No. 11185<br><br>Hearing Date: April 6, 2016 at 12:15 p.m. |
|---|---|

**OPPOSITION OF DEUTSCHE BANK NATIONAL TRUST COMPANY, FORMERLY KNOWN AS BANKERS TRUST COMPANY CALIFORNIA, N.A., AS TRUSTEE FOR AMERICAN HOME MORTGAGE ASSET TRUST 2007-3, AND OCWEN LOAN SERVICING, LLC, TO THE MOTION OF PETER LAMONICA AND EXINE LAMONICA FOR RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE *NUNC PRO TUNC* TO AUGUST 6, 2007**

Deutsche Bank National Trust Company, Formerly Known as Bankers Trust Company California, N.A., as Trustee for American Home Mortgage Asset Trust 2007-3 ("Deutsche Bank"), and Ocwen Loan Servicing, LLC ("Ocwen, and together with Deutsche Bank, "Creditors"), hereby oppose the Motion of Peter Lamonica and Exine Lamonica (together, "Movants") for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code *Nunc Pro Tunc* to August 6, 2007 ("Motion") and, in support thereof, respectfully state as follows.

**BACKGROUND**

1. On April 6, 2007, John May ("Borrower") obtained a loan ("Loan") and entered into a Deed of Trust, which is secured against the real property located at 223 East 3rd Street, Cloverdale, California 95425 ("Property"), from American Brokers Conduit ("ABC"), one of the captioned debtors herein (collectively, "Debtors"), wherein ABC was the lender, and under which Mortgage Electronic Registration Systems, Inc. ("MERS") was the beneficiary and

nominee of ABC. [1] The Adjustable Rate Note evidencing the Loan and the Deed of Trust securing the Loan are attached as **Exhibit A** and **B** to Exhibit 1 hereto.[2] [3]

2. The Loan funded and closed, which included a payoff of $269,150.68 to Movant, Peter J. LaMonica. A true and correct copy of the Closing Statement concerning the Loan, is attached as **Exhibit C** to Exhibit 1 hereto. *See* Exhibit 1 (Declaration) at ¶ 12.

3. The beneficiary and ownership interest in the Loan, including the Deed of Trust, was subsequently assigned to Deutsche Bank. Exhibit 1 (Declaration) at ¶ 12. Deutsche Bank is the current owner and beneficiary of the Loan and Deed of Trust. Ocwen is the loan servicer. Exhibit 1 at ¶ 3.

4. On July 24, 2007, Debtor American Home Mortgage recorded a Notice of Default in the Official Records of Sonoma County, as Instrument No. 2007082663. A true and correct copy of the Notice of Default is attached as **Exhibit D** to Exhibit 1 hereto. *See* Exhibit 1 (Declaration) at ¶ 13. The Notice of Default also listed MERS as the beneficiary under the Deed of Trust. *See* Exhibit D to Exhibit 1, p. 2. Hence, the name of the beneficiary was recorded not just once, but twice.

5. On August 6, 2007, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, thereby commencing the above-captioned chapter 11

---

[1] Debtor American Home Mortgage Holdings, Inc., a/k/a American Home Mortgage Corp. ("AHMC") was licensed to do business and originate mortgage loans in California under the trade name ABC, which is a fictions "dba" name.

[2] Exhibit 1, titled *Declaration of Howard Handville in Support of Defendants Ocwen Loan Servicing, LLC's and Deutsche Bank as Trustee's Notice of Motion and Motion for Summary Judgment, of, in the Alternative, Motion for Summary Adjudication of the Issue*s ("Declaration"), was filed by Creditors' in the Litigation (as defined in the Motion) on September 18, 2015. Pursuant to Fed. R. Evid. 201, this Honorable Court may take Judicial Notice of Exhibit 1, and each of the exhibits attached thereto.

[3] MERS is noted as the beneficiary and nominee of ABC on page 2, paragraph (E) of the Deed of Trust. *See* Exhibit B to Exhibit 1 at p. 2, ¶ (E).

Case (the "Chapter 11 Case"). Subsequent to the Petition Date, the Court entered an order jointly administering the Debtors' cases for procedural purposes.

6. On August 14, 2007, in violation of the automatic stay in this Chapter 11 Case, Borrower filed a Complaint against, *inter alia*, "America's Broker Conduit" and American Home Mortgage Servicing, case number SCV 241302 ("State Court Action").[4] A true and correct copy of the Complaint is attached as **Exhibit H** to Exhibit 1 hereto. In pertinent part, the Complaint sought to rescind the Loan and Deed of Trust, "such that the plaintiff and defendants are returned to the status *quo ante*." *See* **Exhibit H** to Exhibit 1 at p. 8, ¶ 47. However, whether by design or inadvertence, the Complaint failed to name MERS, the party named on the Deed of Trust and in the Notice of Default as ABC's beneficiary. The Complaint also failed to name Deutsche Bank, MERS' assignee.

7. One year later, on August 12, 2008, in violation of the automatic stay in this Chapter 11 Case, Borrower obtained a default judgment against "America's Broker Conduit" and American Home Mortgage Servicing in the State Court Action ("Original Judgment"). The Judgment failed to name MERS. An Amended Judgment was subsequently entered on March 13, 2009 to correct the instrument number of the recording of the Deed of Trust ("Amended Judgment" and, together with the Original Judgment, "Judgments"). A true and correct copy of each of the Judgments are attached as **Exhibit J** to Exhibit 1 hereto. *Id*. The Judgments purported to ***rescind*** both the Loan and the Deed of Trust to which Borrower agreed. However,

[4] In the Complaint, Borrower appears to have attempted to name ABC, rather than AHMC. Further, pursuant to that certain Order dated December 27, 2012 entered in the Chapter 11 Case by this Honorable Court, a true and correct copy of which is attached as **Exhibit G** to Exhibit 1 hereto, "claims asserted against ABC are effectively claims made against AHMC for purposes of treatment under the Amended Chapter 11 Plan of Liquidation of the Debtors . . . and otherwise in connection with the Chapter 11 cases . . . , including with respect to application of the Plan injunctions and bankruptcy stay." *See* **Exhibit G** to Exhibit 1.

the Borrower never returned the money loaned by the Debtors to either the Debtors or to MERS or its assignee, Deutsche Bank. ***Thus, the rescission was never effective***.

8. Subsequent to the entry of the Judgments, the Movants purportedly lent the Borrower money against the Property. Movants subsequently foreclosed on the Property.

9. On or about April 30, 2012, the Borrower reached an agreement with Debtors to vacate the Judgments. Consequently, on May 4, 2012, the California court vacated the Judgments and dismissed the State Court Action, with prejudice, as evidenced by the *Stipulation to Set Aside Default Judgment Order* attached as **Exhibit J** to Exhibit 1 hereto, which was filed and entered in the State Court Action.

10. In 2014, Movants commenced Litigation (as defined in the Motion) in the Superior Court of the State of California against Creditors to quiet title to the Property, case number SCV 256149. On September 17, 2015, Creditors moved for summary judgment in the Litigation. That summary judgment motion is due to be heard on March 30, 2016. One of the grounds for the motion is that the Judgments were void when entered because they were entered in violation of the automatic stay.

11. On March 2, 2016, five and one-half months after Creditors moved for summary judgment in the State Court Action, Movants filed the instant Motion.

12. In the Motion, Movants seek "relief from the automatic stay *Nunc Pro Tunc* to the Petition Date, thus validating the [Judgments] obtained [in the State Court Action] and allowing Movants to pursue their lawsuit [against Creditors] to judgment or other resolution." Motion at ¶ 11. However, to validate the Judgments, Movants would not only have to obtain relief *nunc pro tunc* from the automatic stay, they would have to (i) reform the Judgments to name MERS and/or

its assignee Deutsche Bank, (ii) reinstitute the Judgments because they were vacated, and (iii) consummate the rescission by returning the money loaned to Borrower by the Debtors.

## ARGUMENT

### I. The Motion Should Be Denied Because Movants Do Not Have Standing to File It

13. The Movants do not have standing to file the Motion because the Court cannot redress the harm alleged by the Movants. Hence, the Motion should be denied.

#### A. Movants must show that they meet the requirements of Article III to have standing to file the Motion

14. Standing is a "threshold question in every federal case, determining the power of the court to entertain suit." *In re W.R. Grace & Co.*, 475 B.R. 34 (D. Del. 2012) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484 (3d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). There are two types of standing in the context of bankruptcy litigation: (1) bankruptcy standing; and (2) appellate standing. *Id*. (citing *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) ("*GIT*").

15. Bankruptcy standing requires a plaintiff or movant to make the same showing that he would under Article III of the U.S. Constitution. In *GIT*, the Third Circuit found that "Article III standing and standing under the Bankruptcy Code are effectively coextensive." *GIT,* 645 F.3d at 211 (internal citations omitted); *see also In re Black, Davis, & Shue Agency, Inc.*, 460 B.R. 407, 414 (Bankr. M.D. Pa. 2011) (citing *GIT*). "Obviously, satisfying the Article III 'case or controversy' requirement is the 'irreducible constitutional minimum' of standing." *Trump*, 140 F.3d at 484 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

16. In *In re W.R. Grace & Co.*, 475 B.R. 34, 177 (D. Del. 2012), this Court noted:

> In order to have constitutional standing under Article III of the Constitution, a party must first satisfy three requirements. *See Bennett v. Spear*, 520 U.S. 154, 167, 117 S. Ct. 1154, 137 L. Ed. 2d 281 (1997); *Ne. Fl. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 508 U.S. 656, 663, 113 S. Ct. 2297, 124 L. Ed. 2d 586 (1993). **Specifically, the party seeking constitutional standing must show that it has: (1) suffered an "injury in fact" that is "real and immediate" and not merely "conjectural or hypothetical,"** *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992); (**2) that the injury is fairly traceable to the defendant's conduct,** *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984); *United States v. Hays*, 515 U.S. 737, 743, 115 S. Ct. 2431, 132 L. Ed. 2d 635 (1995**); and *(3) that a favorable federal court decision is likely to redress the injury.*** *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18, 93 S. Ct. 1146, 35 L. Ed. 2d 536 (1973); *Warth v. Seldin*, 422 U.S. 490, 505-06, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45-46, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976).

475 B.R. 34, 177 (D. Del. 2012) (emphasis added). Based on the foregoing, Movants must show that they can meet the Article III test for standing.

B. **Movants cannot show that they meet the requirements of Article III to have standing to file the Motion**

17. Movants seek the following relief: "relief from the automatic stay *Nunc Pro Tunc* to the Petition Date, **thus validating the [Judgments] obtained [in the State Court Action]** and allowing Movants to pursue their lawsuit [against Creditors] to judgment or other resolution." Motion at ¶ 11 (emphasis added). Thus, to have standing under Article III, the Movants must show that granting the relief sought in will validate the default and Judgments. This they cannot do.

18. To be clear, the Judgments are void *ab initio* because of the automatic stay in effect in this Chapter 11 Case at the time the State Court Case was commenced and at the time the Judgments were entered. *In re Myers*, 491 F.3d 120, 127 (3d Cir. 2007) (citing *In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994); *Raymark Indus., Inc. v. Lai*, 973 F.2d 1125, 1131 (3d

Cir. 1992); *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991). Movants seek to resuscitate the void Judgments by obtaining relief from the automatic stay *nunc pro tunc*. *Id*.

19. However, even if the Court were inclined to grant the Motion, relief from the automatic stay will not and cannot "validat[e] the [Judgments] obtained in the [State Court Action]." That is, granting the Motion would not redress the injury or conduct complained of by the Movants. Even if the Motion is granted, the Judgments will remain void for other reasons, as discussed below.

**i. Granting the Motion will not validate the Judgments because the rescission was never consummated**

20. "It is the purpose of rescission to restore both parties to their former position as far as possible." *Runyan v. Pac. Air Indus.*, 2 Cal. 3d 304 .(1970) (citations omitted); *see also Gardiner Solder Co. v. SupAlloy Corp., Inc.*, 232 Cal. App.3d 1537, 1544 (1991); *Nelson v. Pearson Ford Co.*, 186 Cal. App. 4th 983 (2010). **"[U]pon rescission the law implies an obligation to return the money paid.**" *Landry v. Marshall*, 243 Cal. App. 2d 170 (1966) (emphasis added).

21. Borrower never consummated the rescission by returning the money he borrowed to the Debtors or to MERS or its assignee, Deutsche Bank. As a consequence, the rescission never occurred. Likely, Borrower did not have the money (having spent it to buy the Property), which is the reason that Borrower would have agreed to vacate the Judgments.

22. Hence, because the granting the Motion will not redress the injury Movants complaint of, the Motion should be denied.

**ii. Granting the Motion will not validate the Judgments because they were subsequently vacated, and therefore void**

23. The Judgments are void because the California court vacated them. Hence, granting the Motion will not redress the injury of which the Movants complained. While Movants complained that they never received notice of the stipulation to vacate, they were not a party to the State Court Action case in which the Judgments were obtained and were therefore not entitled to notice. Although improvidently granted and entered by the California court, the Judgments were obtained by Borrower, not by the Movants. Thus, Borrower, and only Borrower, had the power to agree that the Judgments should be vacated. Borrower did so agree, which resulted in the California court vacating the Judgments.

24. Because the Judgments were vacated, and hence void, granting the Motion *nunc pro tunc* would not and cannot validate them. Hence, because the granting the Motion will not redress the injury Movants complaint of, the Motion should be denied.

**iii. Granting the Motion will not validate the Judgments because they were obtained against the wrong parties, and therefore void**

25. The Judgments are void because they did not name MERS or its assignee, Deutsche Bank, who had and have the rights under the Deed of Trust. "A void judgment is one which, from its inception, was a complete nullity and without legal effect." *Marshall v. Bd. of Ed.*, 575 F.2d 417, 422 n.19 (3d Cir. 1978). Personal jurisdiction is an elementary requirement in every case before a court has power to render any judgment. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982); *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-701 (3d Cir. 1991). A judgment is void "if the court that rendered it lacked jurisdiction of the subject matter or the parties or entered 'a decree which is not within the powers granted to it by the law.'" *Id*. at 422 (citations omitted).

26. The California court never had personal jurisdiction over MERS or Deutsche Bank. A court obtains personal jurisdiction over parties when the complaint and summons are

properly served upon them. Effective service of process is therefore a prerequisite to proceeding further in a case. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963); *Royal Lace Paper Works v. Pest-Guard Products*, 240 F.2d 814, 816 (5th Cir. 1957); *Hemmerich Indus., Inc. v. Moss Brown & Co., Inc.*, 114 F.R.D. 31, 32 (E.D. Pa. 1987). ***Indeed, if the defendant was not properly made a party to the action by effective service, he would not be bound by any judgment rendered.*** *Hansberry v. Lee*, 311 U.S. 32, 40, 85 L. Ed. 22, 61 S. Ct. 115 (1940) (emphasis added).

27. Here, the parties with the rights under the Deed of Trust, MERS and its assignee Deutsche Bank, who were indispensable parties to the State Court Action under California law, were not named in the State Court Action.

28. California law is clear, "[a]n indispensable party is not bound by a judgment in an action in which he was not joined." *Save Our Bay, Inc. v. San Diego Unified Port Dist.*, 42 Cal.App.4th 686, 693 (1996) (quoting *Grief v. Dullea*, 66 Cal.App.2d 986, 995 (1944)); *see also Washington Mut. Bank v. Blechman,* 157 Cal.App.4th 662, 667-668 (2007).

29. The California Court of Appeals explained in *Washington Mut. Bank*, "[b]ecause WAMU and CRC [the indispensable parties] always maintained the right to obtain the relief granted to them in the instant action, ***the default judgment was essentially illusory***." (emphasis added). Thus, the California Civil Code mandates that the persons materially interested in the subject of an action must be joined as parties so that they may be heard and so that the Court may make a complete disposition of the matter. *Deltakeeper v. Oakdale Irrig. Dist.,* 94 Cal.4th 1092, 1100 (2001).

30. Under California law, the controlling test for determining whether a person is an indispensable party is whether, if the affirmative relief sought by the plaintiff is granted, this

relief would injure or affect this person's interest. *Bradley v. Dep't of Corrections and Rehabilitation,* 158 Cal.4th 1612, 1628. (2008) "'A person is an indispensable party if his or her rights must necessarily be affected by the judgment [citations below].'" *Save Our Bay, Inc.*, 42 Cal.App.4th at 692-693 (*quoting Bank of Calif. v. Superior Court,* 16 Cal.2d 516, 522 (1940), and *Hartman Ranch Co. v. Assoc. Oil Co.,* 10 Cal.2d 232, 262 (1937)). In *Bank of Calif.,*16 Cal.2d at 521-522, the California Supreme Court stated that indispensable parties are those "persons whose interests, rights, or duties will inevitably be affected by any decree which can be rendered in the action. ***Typical are the situations where a number of persons have undetermined interests in the same property.*** An attempt to adjudicate their rights without joinder is futile." *Id*. (emphasis added).

31. MERS was an indispensable party in the State Court Action. MERS is specifically identified in bold lettering in the Deed of Trust as "**the beneficiary under this Security Instrument**." *See* Exhibit B to Exhibit 1 hereto at p. 2, paragraph (E) (emphasis in original). MERS is further identified in the Deed of Trust as "a nominee for Lender and Lender's successor's and assigns." *Id*. As the beneficiary of the Deed of Trust, MERS was a party "whose interests are so directly involved that the court could not render a fair adjudication in their absence." C.C.P. §389(a). The State Court Action sought to rescind the very Deed of Trust in which MERS was the listed beneficiary and nominee. Thus, any judgment entered in the State Court Action would have necessarily affected MERS' interest in and rights as the beneficiary of the Deed of Trust. As a result, MERS was an indispensable party in the State Court Action. Only an Order addressed to MERS and Deutsche Bank could have rescinded Borrower's Deed of Trust. However, the Judgments were not so addressed, thus the Judgments were "illusory" and void *ab initio*.

32. Because neither MERS nor its assignee, Deutsche Bank, were served with or named in the Complaint, the California court did not have personal jurisdiction over MERS and Deutsche Bank, and the Judgments were void.

33. Because the Judgments were void from their inception, there was no injury to Movants caused by the automatic stay. Whether or not the automatic stay was in place at the time the Judgments were issued, the Judgments were void. Thus, granting the Motion would not redress the injury complained of by Movants, *i.e.*, the lack of validity of the Judgments. The Judgments will remain invalid and void even if the Court were to grant Motion.

34. Movants therefore fail to show that they have satisfied both the second and third requirements of standing under Article III to file the Motion. Because the Movants do not have standing to bring the Motion, the Court need not read any further. However, the Movants have also failed to substantively show that they qualify for the relief requested.

## II. Movants Do Not Attempt to Show that They Qualify for *Nunc Pro Tunc* Relief

35. In considering whether to lift the automatic stay, a court "may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties." *Langlais v. Pennmont Benefit Servs.*, 2014 U.S. Dist. LEXIS 45945 (E.D. Pa. Apr. 3, 2014) (quoting *In re Brown*, 311 B.R. 409, 413 (E.D. Pa. 2004)).

36. There is an important Congressional policy behind the automatic stay that demands that courts be especially hesitant to validate acts committed during the pendency of the stay. *See In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984). "Undoing the stay retroactively should require a measurably greater showing [than finding cause]" because "[i]f retroactive relief becomes commonplace, creditors--anticipating *post facto* validation--will be tempted to pursue claims against bankrupts heedless of the stay"); *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 977 (1st Cir. 1997).

> The statements in the statute's legislative history amplify the underlying public policy in federal bankruptcy law that a debtor's bankruptcy estate should be maximized for the benefit of both the debtor and all of its creditors. This policy is particularly important in reorganization cases, where the automatic stay is utilized to maintain the status quo and avoid piecemeal liquidation while the debtor formulates a reorganization plan.

*In re W.R. Grace & Co.*, 468 B.R. 81 (D. Del. 2012). Obtaining relief from the automatic stay "hinder[s] two fundamental policy objectives of the automatic stay: preventing one creditor from obtaining an advantage over other creditors, and providing for the efficient and orderly distribution of a debtor's assets to all creditors in accordance with their relative priorities." *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 309 (3d Cir. 2013) (citations omitted).

37. Thus, the Third Circuit imposes a distinct test comprising three factors to award relief from the stay *nunc pro tunc, i.e.*, to annul the stay. *In re Myers*, 491 F.3d 120, 129 (3d Cir. 2007). To annul the stay, the Court must evaluate the following factors: "(1) whether the creditor was aware of the filing or encouraged violation of the automatic stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be prejudiced." *Del. Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.)*, 533 B.R. 106 (Bankr. D. Del. 2015) (quoting *Myers*, 491 F.3d at 129). The Motion fails to address any of those factors.

38. Movants have not argued that they meet any of these factors, let alone all of them. Therefore, the Court must deny the Motion.

## III. Movants Do Not Qualify for *Nunc Pro Tunc* Relief

39. Even if Movants had argued that they meet the standard for the Court to annul the stay, they do not meet the standard.

40. Whether or not the Borrower was innocent in his violation of the automatic stay, Movants have not argued, nor could they argue, that the Debtors engaged in inequitable,

unreasonable, or dishonest behavior. Nor is there any evidence of such. Also, Movants cannot argue that they would be prejudiced by the Court's denial of the Motion. As discussed, *supra*, the Judgments are void and would be void whether or not the automatic stay was in effect.

41. Hence, because the Movants cannot show that they satisfy the required factors, the Court must deny the Motion.

**Conclusion**

For all the foregoing reasons, Creditors respectfully request that the Court deny the Motion.

Dated: March 21, 2016

DUANE MORRIS LLP

*/s/ Sommer L. Ross*
Sommer L. Ross (DE 4598)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: (302) 657-4951
Facsimile: (215) 689-4943
Email: slross@duanemorris.com

*Attorneys for Deutsche Bank National Trust Company, Formerly Known as Bankers Trust Company California, N.A., as Trustee for American Home Mortgage Asset Trust 2007-3, and Ocwen Loan Servicing, LLC*