## **EXHIBIT 1**



1  ERIC D. HOUSER (SBN 130079)
2  JASON K. BOSS (SBN 228147)
   HOUSER & ALLISON, APC
3  9970 Research Drive
   Irvine, California 92618
4  Telephone:    (949) 679-1111
   Facsimile:    (949) 679-1112
5  Email: jboss@houser-law.com

6  Attorneys for Defendants Deutsche Bank National Trust Company, as Trustee for American
7  Home Mortgage Asset Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-
   3 and Ocwen Loan Servicing, LLC
8

**ENDORSED**
**FILED**

SEP 18 2015

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

9            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10                      **COUNTY OF SONOMA**

11  PETER J. LaMONICA and                )  Case No.: SCV 256149
    EXINE LaMONICA, individuals,         )
12                                       )  <u>Honorable Elliot Daum</u>
                  Plaintiffs,            )
13                                       )  **DECLARATION OF HOWARD**
14  vs.                                  )  **HANDVILLE IN SUPPORT OF**
                                         )  **DEFENDANTS OCWEN LOAN**
15  JOHN MAY, an individual, DEUTSCHE    )  **SERVICING, LLC'S AND DEUTSCHE**
    BANK NATIONAL TRUST COMPANY          )  **BANK AS TRUSTEE'S NOTICE OF**
16  FORMERLY KNOWN AS BANKERS            )  **MOTION AND MOTION FOR**
    TRUST COMPANY OF CALIFORNIA N.A.,    )  **SUMMARY JUDGMENT, OR, IN THE**
17  AS TRUSTEE FOR AMERICAN HOME         )  **ALTERNAVIVE, MOTION FOR**
    MORTGAGE ASSET TRUST 2007-3, a       )  **SUMMARY ADJUDICATION OF THE**
18  National Banking Association, OCWEN  )  **ISSUES**
19  LOAN SERVICING, LLC, a Delaware      )
    Limited Liability Company, WESTERN   )  Hearing Date: December 9, 2015
20  PROGRESSIVE, LLC, a Delaware Limited )  Hearing Time: 3:00 p.m.
    Liability Company, and DOES 1-15, inclusive, )  Dept.:          16
21                                       )
22                Defendants.            )
                                         )
23

24  ///

25  ///

26  ///

27  ///

28

1  ERIC D. HOUSER (SBN 130079)
   JASON K. BOSS (SBN 228147)
2  HOUSER & ALLISON, APC
   9970 Research Drive
3  Irvine, California 92618
   Telephone:     (949) 679-1111
4  Facsimile:     (949) 679-1112
   Email: jboss@houser-law.com
5
6  Attorneys for Defendants Deutsche Bank National Trust Company, as Trustee for American
   Home Mortgage Asset Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-
7  3 and Ocwen Loan Servicing, LLC

8                **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9                          **COUNTY OF SONOMA**

10

11  PETER J. LaMONICA and          )   Case No.: SCV 256149
    EXINE LaMONICA, individuals,   )
12                                 )   **Honorable Elliot Daum**
                 Plaintiffs,       )
13                                 )   **DECLARATION OF HOWARD
    vs.                            )   HANDVILLE IN SUPPORT OF
14                                 )   DEFENDANTS OCWEN LOAN
    JOHN MAY, an individual, DEUTSCHE )  SERVICING, LLC'S AND DEUTSCHE
15  BANK NATIONAL TRUST COMPANY    )   BANK AS TRUSTEE'S NOTICE OF
    FORMERLY KNOWN AS BANKERS      )   MOTION AND MOTION FOR
16  TRUST COMPANY OF CALIFORNIA N.A., )  SUMMARY JUDGMENT, OR, IN THE
    AS TRUSTEE FOR AMERICAN HOME   )   ALTERNAVIVE, MOTION FOR
17  MORTGAGE ASSET TRUST 2007-3, a )   SUMMARY ADJUDICATION OF THE
    National Banking Association, OCWEN )  ISSUES
18  LOAN SERVICING, LLC, a Delaware )
    Limited Liability Company, WESTERN )   Hearing Date:  December __, 2015
19  PROGRESSIVE, LLC, a Delaware Limited )  Hearing Time: _____ __.m.
20  Liability Company, and DOES 1-15, inclusive, )  Dept.:        16
                                   )
21                                 )
                 Defendants.       )
22  _____ )

23

24  ///

25  ///

26  ///

27  ///

28

_____
    **Declaration of Ocwen Loan Servicing, LLC in support of Motion for Summary Judgment**
                                        1

### DECLARATION OF HOWARD HANDVILLE

1.      I am a Loan Analyst employed by Ocwen Financial Corporation, whose indirect subsidiary is Defendant Ocwen Loan Servicing, LLC ("Ocwen").

2.      As a Loan Analyst at Ocwen, I have personal knowledge of the facts stated herein, and I am authorized to make this declaration on behalf of Ocwen and Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Asset Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 (the "Trust") in support of this Motion for Summary Judgment, or in the alternative, Motion for Summary Adjudication of the Issues as to Plaintiffs Peter J. LaMonica and Exine LaMonica's ("Plaintiffs") Complaint.

3.      Ocwen is the Loan Servicer and the Trust is the owner and beneficiary of a March 22, 2007 $342,000.00 loan to John May ("Borrower" and/or "May") secured against real property located at 223 East 3rd Street, Cloverdale, California 95425 ("Property") via a Deed of Trust recorded in the Sonoma County Official Records on April 6, 2007 which is described in more detail below (hereinafter "the 2007 Loan"), a loan that is the subject of this litigation.

4.      Ocwen is also an attorney-in-fact for Deutsche Bank National Trust Company, as Trustee for American Home Mortgage Asset Trust 2007-3, Mortgage-Backed Pass-Through Certificates Series 2007-3 (the "Trust"), as it holds a power of attorney for the Trust.

5.      In my capacity as a Loan Analyst at Ocwen, I have access to the business records in the custody and control of Ocwen as they relate to the documents and facts referred to herein. I am familiar with Ocwen's business records and loan servicing systems, including system notes and/or comment logs of Ocwen and prior servicers and/or beneficiaries of loans serviced by Ocwen. I make this declaration based upon my personal knowledge, my experience as a loan analyst, and my knowledge and review of Ocwen's record-keeping systems and business records created and kept in the regular course of Ocwen's business. The records upon which I base this declaration are made in the ordinary course of business by persons who have a business duty to make such records on behalf of Ocwen, and by prior loan

9.      The Deed of Trust and Note both list the "Lender" as "American Brokers Conduit."

10.      The Deed of Trust lists "MERS" as "Mortgage Electronic Registration Systems, Inc." The Deed of Trust continues by defining MERS as "**MERS is the beneficiary under this Security Instrument.**" (bold included in the Deed of Trust [Exhibit B], p. 2 (E)).

11.      The 2007 Loan funded and closed, which included a payoff of $269,150.68 to Peter J. LaMonica, a person whom I am informed and believe was a lienholder on the Property at the time of the 2007 Loan.   A true and correct copy of the Closing Statement concerning the 2007 Loan, which shows the funding of the transaction involving the 2007 Loan and the Payoff to Peter J. LaMonica is attached as **Exhibit "C."**  Peter J. LaMonica is a Plaintiff in the above entitled lawsuit.

12.      The beneficiary and ownership interest in the 2007 Loan, including the Deed of Trust, was transferred to the Trust prior to June 6, 2007.

13.      On or about July 24, 2007, John May was in default on the 2007 Loan in an amount totaling no less than $10,629.51.  As a result, a Notice of Default concerning the 2007 Loan was recorded in the Official Records of Sonoma County on July 24, 2007 as Instrument No. 2007082663, a true and correct copy of which is attached as **Exhibit "D."**

14.      American Home Mortgage Holdings, Inc., a/k/a American Home Mortgage Corp. ("AHMC") was licensed to do business and originate mortgage loans in California under the fictitious doing business as ("dba") name American Brokers Conduit ("ABC").

15.      On August 6, 2007, American Home Mortgage Holdings, Inc., a/k/a AHMC, doing business as ABC, filed for Chapter 11 Bankruptcy.  A true and correct copy of American Home Mortgage Holdings, Inc., a/k/a AHMC dba ABC's Voluntary Petition filed in the United States Bankruptcy Court, District of Delaware in case number 07-11047-CSS on August 6, 2007 is attached as **Exhibit "E."**

16.      On August 27, 2007, the United States Bankruptcy Court for the District of Delaware issued a Notice of Commencement of Chapter 11 Bankruptcy in American Home

Mortgage Holdings, Inc., a/k/a AHMC, dba American Brokers Conduit's bankruptcy case, a true and correct copy of which is attached as **Exhibit "F"**, advising of an automatic stay being in place.

17.     On December 27, 2012, Judge Christopher S. Sontchi of the United States Bankruptcy Court for the District of Delaware in American Home Mortgage Holdings, Inc., a/k/a AHMC, dba American Brokers Conduit's bankruptcy case (case no. 07-11047) issued an Order finding that "American Home Mortgage Corp. ("AHMC") was licensed to do business in various states, including California, under the doing business as, or d/b/a, designation American Brokers Conduit ("ABC")" and the Bankruptcy Court presiding over American Home Mortgage Holdings, Inc., a/k/a AHMC, dba American Brokers Conduit's bankruptcy case ordered that that the bankruptcy stay and any claims in connection with the Chapter 11 case of AHMC apply to ABC.  A true and correct copy of Judge Christopher S. Sontchi's December 27, 2012 Order issued in United States Bankruptcy Court for the District of Delaware Case Number 07-11047 (Document No. 10706) is attached as **Exhibit "G."**

18.     Ocwen and the Trust have learned that on or about August 14, 2007, John May filed a Complaint concerning the 2007 Loan in Sonoma County Superior Court having case number SCV 241302 ("May Lawsuit").   A true and correct copy of the Summons and Complaint in the May Lawsuit is attached as **Exhibit "H."**

19.     John May's Summons and Complaint names "America**'s** Broker Conduit" and others as defendants in the May Lawsuit, but does not name any of the parties to the Deed of Trust related to the 2007 Loan. Specifically, the Lender in the 2007 Loan - Americ**an** Broker**s** Conduit, and the beneficiary of the 2007 Loan - Mortgage Electronic Registration Systems, Inc. ("MERS"), are both NOT defendants in the May Lawsuit.

20.     Ocwen and the Trust have learned that a Default Judgment and Order Dismissing All Doe Defendants ("Default Judgment") was entered (and subsequently recorded) in the May Lawsuit against "America**n's** Broker Conduit" and another defendant (see page 3, ln. 16 and 20 of Exhibit I), none of which were parties, successors, or assigns of

the Deed of Trust related to the 2007 Loan (as the Lender was America**n** [no " 's"] Brokers [plural] Conduit and MERS was the beneficiary). The Default Judgment also "order[ed] that all DOE defendants were dismissed as well."

21.    Ocwen and the Trust have learned that an Amended Default Judgment was also entered (and subsequently recorded) in the May Lawsuit against "America**n's** Broker Conduit" and another defendant (see page 2, line 15-16 of Exhibit I), none of which were parties, successors, or assigns of the Deed of Trust related to the 2007 Loan (as the Lender was America**n** [no " 's"] Brokers [plural] Conduit and MERS was the beneficiary). True and correct copies of the Default Judgment and Amended Default Judgment in the May Lawsuit that were recorded are attached as **Exhibit "I."** The caption of the Default and Amended Default Judgment, like the Summons and Complaint in the May Lawsuit (Exhibit H), listed "Americ**a's** Broker Conduit" as a defendant, which is not a party to the Deed of Trust related to the 2007 Loan.

22.    The Court presiding over the May Lawsuit issued a subsequent Order that "the default judgment entered on about August 12, 2008 and amended default judgment entered on March 13, 2009, collectively recorded on April 30, 2009 in the Sonoma County Recorder's Office as Instrument Number 2009040513, is vacated." That Order, a true and correct copy of which is attached as **Exhibit "J,"** was recorded in the Sonoma County Recorder's Office as Instrument No. 20120066080.

///

///

///

/// ·

///

///

1      23.    John May remains in default on the 2007 Loan in an amount totaling no less

2    than $283,688.44.  As a result, in compliance with the terms of the Deed of Trust securing the

3    2007 Loan, foreclosure by the Trust was and is appropriate and proper.

4       I declare under penalty of perjury under the laws of the State of California that the

5    foregoing is true and correct.

6    Executed this _15th_ day of September, 2015, at Palm Beach County, Florida.

7

8

9                        Name: Howard R. Handville

10                      Title: Senior Loan Analyst of Ocwen Financial

11                      Corporation, whose indirect subsidiary is Ocwen Loan

12                      Servicing, LLC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# ADJUSTABLE RATE NOTE
(6-Month LIBOR Index - Rate Caps)
(Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

March 22, 2007                    Cloverdale                    California
[Date]                              [City]                         [State]


223 East 3rd Street, Cloverdale, CA  95425
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 342,000.00                    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is American Brokers Conduit

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.125 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  May 1, 2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  April 1, 2037                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    PO Box 660029, Dallas, TX  75266-0029

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  2,315.62                    . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

DOC #:319091                              APPL #:0001674600
MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT

VMP-815N (0404)          UM51 0404          Form 5520 3/04
          VMP Mortgage Solutions (800)521-7291
Page 1 of 4                              Initials _____

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of April, 2012 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five percentage point(s) ( 5.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 13.125 % or less than 5.000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

DOC #:319892                        APPL #:0001674600

 VMP-815N (0404)                        Page 2 of 4                        Form 3520 3/04
Initials 

**DB/Ocwen 00057**

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

DOC #:319893                    APPL #:0001674600

VMP-815N (0401)                 Page 3 of 4

Form 3520 3/03
Initials

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
John May                          -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

PAY TO THE ORDER OF

[Sign Original Only]

WITHOUT RECOURSE
AMERICAN BROKERS CONDUIT

ROSA MONTELLA
ASST. SECRETARY

DOC #:319894            APPL #:0001674600

VMP-815N (0404)         Page 4 of 4          Form 5520 3/04

DB/Ocwen 00059

# ADDENDUM TO NOTE

This addendum is made <u>March 22nd, 2007</u> and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

<u>223 East 3rd Street, Cloverdale, CA  95425</u>

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than <u>13.125</u>% or less than <u>5.000</u> %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than <u>1.000</u> percentage point(s) (<u>1.000</u> %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than <u>13.125</u>%. My interest rate will never be less than <u>5.000</u> %.

## UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. This loan is not assumable. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

1201 LIBOR Addendum to Note
Doc # 944276/ Image: 944276.prn  App# 0001674600

AHM-2010R(MULT) (10/05)

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

To the extent the provisions of this addendum conflict with the provisions of the Note, Security Instrument or Adjustable Rate Rider, this Addendum shall control.

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_____
March 22, 2007
Date

_____
Borrower Signature    John May

1201 LIBOR Addendum to Note
Doc # 944539/ Image: 944539.prn  App# 0001674600

AHM-2010R(MULT) (10/05)

DB/Ocwen 00061

## INTEREST-ONLY ADDENDUM
### ADJUSTABLE RATE NOTE

THIS INTEREST-ONLY ADDENDUM is made this __22nd__ day of __March__, __2007__, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") and the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to __American Brokers Conduit__ ("Lender") of the same date and covering the property described in the Security Instrument and located at:
__223 East 3rd Street, Cloverdale, CA 95425__.
[Property Address]

THIS ADDENDUM SUPERSEDES Section 3(A) and (B), and adds Section 4(G) of the Note. Section 4C of the Note is subject to the new section 4(G) below. None of the other provisions of the Note are changed by this addendum.

3.    PAYMENTS

(A)    Time and Place of Payments
I will make a payment on the first day of every month beginning __May 1, 2007__. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as describe in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on __April 1, 2037__, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at: __PO Box 660029, Dallas, TX 75266-0029__ or at a different place if required by the Note Holder.

(B)    Amount of My Initial Monthly Payments
My monthly payment will be in the amount of U.S. $ __2,315.62__ before the First Principal and Interest Payment Due Date, and thereafter will be in amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(G)    Date of First Principal and Interest Payment
The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be __May 1, 2017__.

AHM-2021A (04/06)

DB/Ocwen 00062

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest-Only Addendum.

_____ (Seal)
John May                              -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

*[Sign Original Only]*

AHM-2021A (04/06)

DB/Ocwen 00063

# EXHIBIT B

Recording Requested By:

Return To:
American Brokers Conduit
4550 Regent Blvd., Suite 100
Irving, TX 75063-2250

Prepared By:
Tawana Simmons
75 Rowland Way
Suite 250
Novato, CA
94945

1000B199663LHL

1674600

2007039079

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

24 PGS

FINANCIAL TITLE CO.
04/06/2007 08:00 TRD
RECORDING FEE: 75.00
PAID



342'

————————— [Space Above This Line For Recording Data] —————————

## DEED OF TRUST

MIN 100024200016746006

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided
in Section 16.

(A) "Security Instrument" means this document, which is dated March 22, 2007
together with all Riders to this document.
(B) "Borrower" is John May, A Single Man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is American Brokers Conduit

Lender is a Corporation
organized and existing under the laws of State of New York

DOC #:324541                          APPL #:0001674600
CALIFORNIA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3005 1/01

-6A(CA) (0005).01
UM31 9905.01      Initials:
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is  538 Broadhollow Road, Melville, NY  11747

(D) "Trustee" is Financial Title Company

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  March 22, 2007
The Note states that Borrower owes Lender  Three Hundred Forty Two Thousand and
No/100                                                                    Dollars
(U.S. $342,000.00              ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   April 1, 2037
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

DOC  #:324342              APPL #:0001674600

VMP -6A(CA) (0005).01                    Page 2 of 15                    Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County          of Sonoma     :

            [Type of Recording Jurisdiction]                  [Name of Recording Jurisdiction]

SEE ATTACHED LEGAL DESCRIPTION

Parcel ID Number:  001-182-004            which currently has the address of
223 East 3rd Street                                      [Street]
Cloverdale            [City] , California 95425       [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

DOC #:324543             APPL #:0001674600

VMP -6A(CA) (0005).01            Page 3 of 15                   Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

DOC   #:324544            APPL #:0001674600

-6A(CA) (0005).01              Page 4 of 15              Form 3005  1/01

Initials [signature]

DB/Ocwen 0004

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

DOC  #1324545                    APPL #10001674600

VMP®-6A(CA) (0005).01                Page 5 of 15                    Form 3005  1/01

DB/Ocwen 0005

days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

DOC  #:324546                          APPL #:0001674600

-6A(CA) (0005).01                          Page 6 of 15                          Form 3005  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

DOC  #:324547                    APPL #:0001674600

-6A(CA) (0005).01                    Page 7 of 15                    Form 3005  1/01

DB/Ocwen 0007

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage Insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

DOC  #:324946                          APPL #:0001674600

-6A(CA) (0005).01                     Page 8 of 15                          Form 3005  1/01

DB/Ocwen 0006

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

DOC  #:324849                          APPL #:0003674600

@D-6A(CA) (0005).01                     Page 9 of 15                          Form 3005  1/01

DB/Ocwen 0009

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC  #:324580                          APPL #:0001674600

-6A(CA) (0005).01                      Page 10 of 15                          Form 3005  1/01

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC  #:324551                          APPL: #:0001074600

-6A(CA) (0005).01                    Page 11 of 15                          Initials                          Form 3005  1/01

DB/Ocwen 00011

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC  #:324332                    APPL #:0001674600

-6A(CA) (0205).01                 Page 12 of 15                    Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324883                    APPL #:0001674600

D**-6A(CA) (0005).01                    Page 13 of 15                    Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
John May                        -Borrower

_____          _____ (Seal)
                                                                -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)   _____ (Seal)
                       -Borrower                                -Borrower

DOC  #:324584                APPL #:0001674600                Form 3005  1/01
-6A(CA) (0005).01            Page 14 of 15

State of California·
County of ~~Sonoma~~ *Del Norte*                     } ss.

On *March 26, 2007* before me, *Esther E. Burley, Notary Public*
                                                    personally appeared
John May

                                                    , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



*Esther E. Burley* (Seal)
NOTARY PUBLIC

DOC #:324555              APPL #:0001674600

-6A(CA) (0305).01          Page 15 of 15                           Form 3005  1/01

10008199-LHK

### Legal Description

All that certain real property situated in the City of Cloverdale, County of Sonoma, State of California, described as follows:

Lot number 34 in Block numbered 42, as numbered and designated upon the Official Map entitled "Map of the Town of Cloverdale, Sonoma County, California, made and compiled by J.C. Parson's", and recorded in the Office of the Sonoma County Recorder on September 7, 1918 in Book 29 of Maps, page 14, Sonoma County Records said portion being more particularly described as follows:

Beginning at a point on the South line of Third Street in said Town of Cloverdale, distant two hundred and fifty-nine (259) feet Easterly from the southeast corner of Main and Third Streets, and running thence Easterly along the South line of Third Street Fifty (50) feet; thence at right angles Southerly Ninety (90) feet; thence at right angles Westerly and parallel with Third Street Fifty (50) feet; thence at right angles Northerly Ninety (90) feet to the South line of Third Street and place of beginning.

DB/Ocwen 00016

# ADJUSTABLE RATE RIDER
## (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

THIS ADJUSTABLE RATE RIDER is made this 22nd day of March, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to American Brokers Conduit

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
223 East 3rd Street, Cloverdale, CA 95425

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 8.125 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of April, 2012 and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

DOC #:319901        APPL #:0001674600
MULTISTATE ADJUSTABLE RATE RIDER 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT    UM51 0404
VMP-815R (0404)    Form 5120 3/04
Page 1 of 4        Initials: [signature]
VMP Mortgage Solutions
(800)521-7291

DB/Ocwen 00017

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal . The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    Five
percentage point(s) (                5.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       13.125 % or less than           5.000 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
One              percentage point(s) (                1.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than         13.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

DOC #:319902           APPL #:0001674600

Initials:

-815R  (0404)           Page 2 of 4           Form 5120 3/04

DB/Ocwen 00018

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

DOC #:319903          APPL #:0001674600

VMP-815R (0404)          Page 3 of 4          Initials: _____          Form 5120 3/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
John May                        -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

DOC #:319904          APPL #:0001674600

-815R (0404)                    Page 4 of 4                    Form 5120 3/04

DB/Jewell 00028

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made _____ March 22nd, 2007 _____ and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

223 East 3rd Street  Cloverdale, CA  95425

**AMENDED PROVISIONS**

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
    **Limits on Interest Rate Changes**
    The interest rate I am required to pay at the first Change Date will not be greater than _13.125_% or less than _5.000_%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than _1.000_ percentage point(s) ( _1.000_%) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than _13.125_%. My interest rate will never be less than _5.000_%.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. This loan is not assumable. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

1202 LIBOR Addendum to Rider
Doc # 944277/ Image: 944277.prn   App# 0001674600

AHM-2011R(Mult) (10/05)

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

To the extent the provisions of this addendum conflict with the provisions of the Note, Security Instrument or Adjustable Rate Rider, this Addendum shall control.

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_____March 22, 2007_____         _____
Date                                  Borrower Signature   John May

1201 LIBOR Addendum to Rider
Doc # 944840/ Image: 944840.prn  App# 0001674600

AHM-2010R(MULT) (10/05)

DB/Ocwen 00022

## INTEREST-ONLY ADDENDUM
### ADJUSTABLE RATE RIDER

THIS INTEREST-ONLY ADDENDUM is made this ___22nd___ day of ___March___ ___2007___, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") and the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to ___American___ ___Brokers Conduit___ ("Lender") of the same date and covering the property described in the Security Instrument and located at: ___223 East 3rd Street, Cloverdale, CA___ ___95425___.

[Property Address]

THIS ADDENDUM SUPERSEDES Section 3(A) and (B), and adds Section 4(G) of the Note. Section 4C of the Note is subject to the new section 4(G) below. None of the other provisions of the Note are changed by this addendum.

3.    PAYMENTS

   (A)    Time and Place of Payments

   I will make a payment on the first day of every month beginning ___May 1, 2007___. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

   I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as describe in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on ___April 1, 2037___, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

   I will make my monthly payments at: ___PO Box 660029, Dallas, TX 75266-0029___ _____ or at a different place if required by the Note Holder.

   (B)    Amount of My Initial Monthly Payments

   My monthly payment will be in the amount of U.S. $ ___2,315.62___ before the First Principal and Interest Payment Due Date, and thereafter will be in amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

   (G)    Date of First Principal and Interest Payment

   The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be ___May 1, 2017___.

# EXHIBIT C



**FINANCIAL TITLE COMPAN**
235 Healdsburg Ave, Ste 201, Healdsburg, CA 95448
(707) 431-9700
SELLERS CLOSING STATEMENT
Estimated

| | | |
|---|---|---|
| Seller: | Barralyn Property Solutions, LLC | Escrow No: 10008199-663 LHK |
| | WE CERTIFY THIS TO BE A TRUE AND EXACT COPY OF THE ORIGINAL FINANCIAL TITLE COMPANY BY_____ | Close Date: 03/30/2007 |
| | | Proration Date: |
| | | Date Prepared: 03/27/2007 |
| Property: | 223 East Third Street Cloverdale, CA 95425 | |

| Description | Debit | Credit |
|---|---|---|
| **TOTAL CONSIDERATION:** | | |
|   Total Consideration | | 380,000.00 |
| **PAYOFFS:** | | |
|   Payoff to Peter La Monica | 269,150.68 | |
|     $250,000.00   Principal Balance | | |
|     $19,150.68   Interest From 08/09/2006 to 03/30/2007 | | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
|   County Taxes        From 03/30/07 To 07/01/07 | | 761.27 |
|     Based on the Semi - Annual amount of $1,505.81 | | |
|   Seller Credit | 7,600.00 | |
| **TITLE CHARGES:** | | |
|   Resale Binder Fee Refund to Financial Title Company | (905.00) | |
| **ESCROW CHARGES:** | | |
|   Document,Preparation to Financial Title Company | 100.00 | |
|   Notary Fee to Financial Title Company | 20.00 | |
| **RECORDING FEES:** | | |
|   City Transfer Tax to Financial Title Company | 418.00 | |
|   County Transfer Tax to Financial Title Company | 418.00 | |
| **ADDITIONAL CHARGES:** | | |
|   Property Taxes Due to Sonoma County Tax Collector | 3,162.19 | |
| | | |
|   Sub Totals | 279,963.87 | 380,761.27 |
|   Proceeds Due Seller | 100,797.40 | |
|   Totals | $380,761.27 | $380,761.27 |

Barralyn Property Solutions, LLC

_____

Joseph B.T. Reitor, Operations Manager

# EXHIBIT D

Branch :LP0,User :AFER          Order: 776327739  Title Officer: 27  Comment:                    Station Id :EUPE



**2007082663**

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON

Recording requested by:

GENERAL PUBLIC
07/24/2007 13:37 NTDF          **2** PGS
RECORDING FEE: 10.00
PAID

When recorded mail to:
NORTHWEST TRUSTEE SERVICES, INC.
505 N. Tustin Avenue, Suite 243
Santa Ana, CA 92705



Space above this line for Recorder's use

File No. 7983.20977          Loan No.1001674600      MIN No. 100024200018746006

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED
## OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$10,629.51** as of **07/24/07**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICAN HOME MORTGAGE**
**C/O Northwest Trustee Services, Inc.**
**505 N. Tustin Avenue, Suite 243 Santa Ana, CA 92705**
**Telephone (714) 277-4888**
**Reinstatement and Pay-Off Request Line (866) 387-NWTS**

TS No.: 7983.20977
Loan No. 1001674600
Notice of Default and Election to Sell Under Deed of Trust

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.    Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:   That the undersigned is either the original Trustee, the duly appointed substituted trustee or acting as agent for the trustee or beneficiary under a Deed of Trust dated **03/22/07**, executed by **JOHN MAY, A SINGLE MAN**, as Trustor(s), to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, as Beneficiary, recorded **04/06/07**, as Book No. ,  Page No. ,  and Instrument No. **2007039079**, of Official Records in the Office of the Recorder of **Sonoma** County, California, describing land therein as more fully described in said Deed of **Trust**.

Said obligations including (1) NOTE(S) FOR THE ORIGINAL sum of  **$342,000.00**, that the beneficial interest under such Deed of trust and the obligation secured thereby are presently held by the undersigned;  that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:
**The monthly installment of principal and interest which became due on 05/01/07, and all subsequent installments**, together with late charges as set forth in said Note and Deed of Trust, advances, assessments and attorney fees. Nothing in this notice shall be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms of the loan documents

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  07/24/07          Northwest Trustee Services, Inc.
                          As Agent For Beneficiary
                          By: First American Title Insurance Company, as Agent

                          By: _____  STEVEN LIM
                              Authorized Signatory

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY
INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# EXHIBIT E

Official Form 1 (04/07)

| United States Bankruptcy Court DISTRICT OF DELAWARE | Voluntary Petition |
|---|---|
| Name of Debtor (if Individual, enter Last, First, Middle): American Home Mortgage Holdings, Inc. | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax I.D. No. (if more than one, state all): 13-4066303 | Last four digits of Soc. Sec./Complete EIN or other Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State): 538 Broadhollow Road Melville, NY                 ZIP CODE  11747 | Street Address of Joint Debtor (No. and Street, City, and State):                 ZIP CODE |
| County of Residence or of the Principal Place of Business: Suffolk, NY | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):                 ZIP CODE | Mailing Address of Joint Debtor (if different from street address):                 ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above):                 ZIP CODE | |

| Type of Debtor (Form of Organization) (Check one box.) | Nature of Business (Check one box.) | Chapter of Bankruptcy Code Under Which the Petition is Filed (Check one box.) |
|---|---|---|
| ☐ Individual (includes Joint Debtors) See Exhibit D on page 2 of this form. ☒ Corporation (includes LLC and LLP) ☐ Partnership ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B) ☐ Railroad ☐ Stockbroker ☐ Commodity Broker ☐ Clearing Bank ☒ Other | ☐ Chapter 7          ☐ Chapter 15 Petition for ☐ Chapter 9               Recognition of a Foreign ☒ Chapter 11             Main Proceeding ☐ Chapter 12          ☐ Chapter 15 Petition for ☐ Chapter 13             Recognition of a Foreign                              Nonmain Proceeding |
| | Tax-Exempt Entity (Check box, if applicable.) ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | Nature of Debts (Check one box.) ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or house-hold purpose."        ☒ Debts are primarily business debts. |

| Filing Fee (Check one box.) | Chapter 11 Debtors |
|---|---|
| ☒ Full Filing Fee attached. ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A. ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box: ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). ☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D). Check if: ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000. -------------------------------------------------------------- Check all applicable boxes: ☐ A plan is being filed with this petition. ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors. ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors*

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,000-100,000 | Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

Estimated Assets*

| ☐ $0 to $10,000 | ☐ $10,000 to $100,000 | ☐ $100,000 to $1 million | ☐ $1 million to $100 million | ☒ More than $100 million |
|---|---|---|---|---|

Estimated Liabilities*

| ☐ $0 to $50,000 | ☐ $50,000 to $100,000 | ☐ $100,000 to $1 million | ☐ $1 million to $100 million | ☒ More than $100 million |
|---|---|---|---|---|

* The estimated number of creditors, assets and liabilities is on a consolidated basis.

DB02:6150011.3

Official Form 1 (04/07)                                                      Form B1, Page 2

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): American Home Mortgage Holdings, Inc. |
|---|---|

### All Prior Bankruptcy Cases Filed Within Last 8 Years (If more than two, attach additional sheet.)

| Location<br>Where Filed: Not Applicable | Case Number: | Date Filed: |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |

### Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet.)

| Name of Debtor: See Attached Schedule 1 | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| Exhibit A<br><br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐   Exhibit A is attached and made a part of this petition. | Exhibit B<br>(To be completed if debtor is an individual<br>whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.  I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>    Signature of Attorney for Debtor(s)     (Date) |
|---|---|

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐   Yes, and Exhibit C is attached and made a part of this petition.

☒   No.

### Exhibit D

(To be completed by every individual debtor.  If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐   Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐   Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

### Information Regarding the Debtor – Venue
(Check any applicable box.)

☒   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

### Statement by a Debtor Who Resides as a Tenant of Residential Property
(Check all applicable boxes.)

☐   Landlord has a judgment against the debtor for possession of debtor's residence.  (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐   Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

Official Form 1 (04/07)

Form B1, Page 3

| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s): American Home Mortgage Holdings, Inc. |
|---|---|

**Signatures**

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br><br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br><br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>    Signature of Debtor<br><br>X _____<br>    Signature of Joint Debtor<br><br>_____<br>Telephone Number (if not represented by attorney)<br><br>_____<br>Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>    (Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative)<br><br>_____<br>Date |
| **Signature of Attorney**<br><br>*Pauline K. Morgan*<br>Signature of Attorney for Debtor(s)<br><br>James L. Patton, Jr., Esq.<br>Pauline K. Morgan, Esq.<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, Delaware 19801<br>Telephone (302) 571-6600 and Facsimile (302) 571-1253<br><br>8-6-07<br>Date | **Signature of Non-Attorney Bankruptcy Petition Preparer**<br><br>I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |
| **Signature of Debtor (Corporation/Partnership)**<br><br>I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>    Signature of Authorized Individual<br><br>Michael Strauss<br>Printed Name of Authorized Individual<br><br>Chief Executive Officer<br>Title of Authorized Individual<br><br>8/6/07<br>Date | _____<br>Address<br><br>_____<br>Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social Security number is provided above.<br><br>Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156. |

## SCHEDULE 1

Including the debtor in this chapter 11 case, the following affiliated debtors simultaneously have filed voluntary chapter 11 petitions in this Court. Contemporaneously with the filing of these petitions, such entities filed a motion requesting that their chapter 11 cases be consolidated for procedural purposes only and jointly administered.

American Home Mortgage Acceptance, Inc.
American Home Mortgage Corp.
American Home Mortgage Holdings, Inc.
American Home Mortgage Investment Corp.
American Home Mortgage Servicing, Inc.
American Home Mortgage Ventures LLC
Great Oak Abstract Corp.
Homegate Settlement Services, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al. | : | Case No. 07-[____] (___) |
| Debtors. | : | Jointly Administered |

## CONSOLIDATED LIST OF CREDITORS HOLDING
### 40 LARGEST UNSECURED CLAIMS

American Home Mortgage Holdings, Inc. ("AHM Holdings"), a Delaware corporation, and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above cases (collectively, the "Debtors"),[1] filed a voluntary petition in this Court for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq.  This list of creditors holding the 40 largest unsecured claims (the "Top 40 List") has been prepared on a consolidated basis, from the Debtors' books and records as of August 3, 2007. The Top 40 List was prepared in accordance with rule 1007(d) of the Federal Rules of Bankruptcy Procedure for filing in the Debtors' chapter 11 cases.  The Top 40 List does not include: (1) persons who come within the definition of an "insider" set forth in 11 U.S.C. § 101(31); or (2) secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 40 largest unsecured claims.  The information presented in the Top 40 List shall not constitute an admission by, nor is it binding on, the Debtors.  The information presented herein, including, without limitation (a) the failure of the Debtors to list any claim as contingent, unliquidated, disputed or subject to a setoff or (b) the listing of any claim as unsecured, does not constitute an admission by the Debtors that the secured lenders listed hold any deficiency claims, nor does it constitute a waiver of the Debtors' rights to contest the validity, priority, nature, characterization and/or amount of any claim.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: AHM Holdings (6303); American Home Mortgage Investment Corp. ("AHM Investment"), a Maryland corporation (3914); American Home Mortgage Acceptance, Inc. ("AHM Acceptance"), a Maryland corporation (1979); American Home Mortgage Servicing, Inc. ("AHM Servicing"), a Maryland corporation (7267); American Home Mortgage Corp. ("AHM Corp."), a New York corporation (1558); American Home Mortgage Ventures LLC ("AHM Ventures"), a Delaware limited liability company (1407); Homegate Settlement Services, Inc. ("Homegate"), a New York corporation (7491); and Great Oak Abstract Corp. ("Great Oak"), a New York corporation (8580).  The address for all of the Debtors is 538 Broadhollow Road, Melville, New York 11747, except for AHM Servicing, whose address is 4600 Regent Blvd., Suite 200, Irving, Texas 75063.

DB02:6150011.3

| Rank | Name of creditor | Telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | CONTINGENT | UNLIQUIDATED | DISPUTED | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|---|---|---|
| 1 | Deutsche Bank | 31 West 52nd Street 3rd Floor NYC01-0304 New York, NY 10019 Tel: (212) 250-7675 Fax: (212) 797-0521 | Loan Repurchase Request | | X | | Unliquidated |
| 2 | Wilmington Trust Company, as Debenture Trustee | Rodney Square North, 100 North Market Street, Wilmington, Delaware 19890 Telecopy: (302) 636-4140 Telephone: (302) 651-1000 Attention: Corporate Capital Markets - AHM Capital Trust I | Convertible Trust Preferred - AHM Capital Trust I | | X | | Unliquidated |
| 3 | JPMorgan Chase Bank, NA | 194 Wood Avenue South Floor 3 Iselin, NJ 08830 Tel: (732) 452-8781 Fax: (732) 352-7511 | Loan Repurchase Request | | X | | Unliquidated |
| 4 | Countrywide Capital | 20 N. Acoma Blvd. Lake Havasu City, AZ 86403 Tel: (928) 505-1628 Fax: (928) 505-4466 | Loan Repurchase Request | | X | | Unliquidated |
| 5 | Wilmington Trust Company, as Trustee | Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890-0001 Attn: Corporate Capital Markets | Trust Preferred - Baylis Trust III | | X | | Unliquidated |
| 6 | Bank of America, N.A. | 901 Main Street, 66th Fl. Dallas, TX 75202 Tel: (214) 209-9170 Fax: (214) 209-0338 | Loan Repurchase Request | | X | | Unliquidated |
| 7 | JPMorgan Chase Bank, National Association, as Trustee | 600 Travis, 50th Floor Houston, Texas 77019 Attn: Institutional Trust Services - Baylis Trust I | Trust Preferred - Baylis Trust I | | X | | Unliquidated |
| 8 | JPMorgan Chase Bank, National Association, as Trustee | 600 Travis, 50th Floor, Houston, Texas 77019 Attn: Institutional Trust Services - Baylis Trust II | Trust Preferred - Baylis Trust II | | X | | Unliquidated |

---

[1] As noted above, the Debtors reserve their rights to dispute the claims on this schedule on any basis.

DB02:6159132.2

| Rank | Name of creditor | Telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | CONTINGENT | UNLIQUIDATED | DISPUTED | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|---|---|---|
| 9 | JPMorgan Chase Bank, National Association, as Trustee | 600 Travis, 50th Floor, Houston, Texas 77019 Attn: Institutional Trust Services - Baylis Trust IV | Trust Preferred - Baylis Trust IV | | X | | Unliquidated |
| 10 | JPMorgan Chase Bank, National Association, as Trustee | 600 Travis, 50th Floor, Houston, Texas 77002, Attn: Baylis Trust V, Madassir Mohamed tel: (713) 216-2826 | Trust Preferred - Baylis Trust V | | X | | Unliquidated |
| 11 | Citigroup | 390 Greenwich Street, 6th Fl. New York, NY 10013 Tel: 212-733-6353 Fax: 212-723-8613 | Loan Repurchase Request | | X | | Unliquidated |
| 12 | Countrywide Capital | 20 N. Acoma Blvd. Lake Havasu City, AZ 86403 Tel: (928) 505-1628 Fax: (928) 505-4466 | Loan Repurchase Request | | X | | Unliquidated |
| 13 | Morgan Stanley | 1585 Broadway New York, NY 10036 Tel: (212) 761-4000 Fax: (212) 507 4622 | Loan Repurchase Request | | X | | Unliquidated |
| 14 | Wells Fargo Bank, N.A., as Trustee | 919 North Market Street Suite 700 Wilmington, Delaware 19801 Attn: Corporate Trust Department - Baylis Trust VIII | Trust Preferred - Baylis Trust VIII | | X | | Unliquidated |
| 15 | SunTrust Asset Funding, LLC | Mail Code 3950 303 Peachtree Street, 23rd Floor Atlanta, Georgia 30308 Attn: Tony D. Atkins Tel: (404) 813-5244 Fax: (404) 813-5000 with a copy to: SunTrust Banks, Inc. 303 Peachtree Street, 36th Floor Atlanta, Georgia 30308 Attn: Woodruff A. Polk Tel: (404) 813-7094 Fax: (404) 581-1637 | Loan Repurchase Request | | X | | Unliquidated |
| 16 | Impac Funding Corporation | 1401 Dove Street, Suite 100, Newport Beach, CA 92660, Attn: Client Administration Tel: (800) 597-4101 Fax: (949) 260-4504 | Loan Repurchase Request | | X | | Unliquidated |

DB02:6159132.2

| Rank | Name of creditor | Telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | CONTINGENT | UNLIQUIDATED | DISPUTED | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|---|---|---|
| 17 | Wilmington Trust Company, as Trustee | Rodney Square North 1100 North Market Street Wilmington, Delaware 19890-0001 Attn: Corporate Capital Markets | Trust preferred - Baylis Trust VI | | X | | Unliquidated |
| 18 | Bear, Stearns & Co. Inc. | Government Operations 1 Metrotech Center North 7th Floor Brooklyn, New York 11201-3859 Attn: Sr. Managing Director Tel: (212) 272-1203 | Master Repurchase Agreement | | X | | Unliquidated |
| 19 | Bank of America, N.A. | Agency Management Mail Code: CA5-701-05-19 1455 Market Street, 5th Floor San Francisco, CA 94103 Attention: Anthea Del Bianco Vice President Telephone No.: (415) 436-2776 Facsimile No.: (415) 503-5101<br><br>Bank of America, N.A. Portfolio Management Mail Code: TX1-492-66-01 901 Main Street, 66th Floor Dallas, TX 75202-3714 Attention: Elizabeth Kurilecz Senior Vice President Telephone No.: (214) 209-0975 Facsimile No.: (214) 209-1027 | Warehouse Facility | | X | | Unliquidated |
| 20 | Citigroup Global Markets Realty Corp | 390 Greenwich Street, 6th Floor New York, New York 10013 Attn: Peter Steinmetz | Loan Repurchase Request | | X | | Unliquidated |

| Rank | Name of creditor | Telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff[4] | | | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|---|---|---|
| | | | | CONTINGENT | UNLIQUIDATED | DISPUTED | |
| 21 | Bank of America, N.A. | Sears Tower 233 South Wacker Drive, Suite 2800 Chicago, IL 60606 Attention: Swap Operations Facsimile No.: 312-453-2787 Bank of America, N.A., 1133 Avenue of the Americas, 17th Floor New York, NY 10036 Attn: Ronald Jost Tel: 646-216-5311 Fax: 646-733-4090 | Swap Counterparty (Commercial Paper Facility) | | X | | Unliquidated |
| 22 | Wilmington Trust Company, as Trustee | Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890-0001, Attn: Corporate Capital Markets | Trust preferred - Baylis Trust VII | | X | | Unliquidated |
| 23 | Wells Fargo | 420 Montgomery Street San Francisco, CA 94104 | Loan Repurchase Request | | X | | Unliquidated |
| 24 | Countrywide Capital | 20 N. Acoma Blvd. Lake Havasu City, AZ 86403 Tel: (928) 505-1628 Fax: (928) 505-4466 | Loan Repurchase Request | | X | | Unliquidated |
| 25 | Nomura Credit & Capital, Inc. | 2 World Financial Center, Building B, 21st Floor, New York, New York 10281, Attn: Dante LaRocca, Managing Director; with a copy to NCCI Legal, 18th Floor Fax: (212) 667-1024 | Loan Repurchase Request | | X | | Unliquidated |

DB02:6159132.2

| Rank | Name of creditor | Telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | CONTINGENT | UNLIQUIDATED | DISPUTED | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|---|---|---|
| 26 | Liquid Funding, Ltd. | Canon's Court 22 Victoria Street Hamilton HM 12 Bermuda Attn: Corporate Secretary With a copy in all cases to: Bear Stearns Bank plc, Investment Manager of Liquid Funding, Ltd., Block 8, Harcourt Centre Charlotte Way Dublin 2, Ireland Attn: Jerome Schneider / Patrick Phelan Tel: (353-1) 402-6358, Fax: (353-1) 402-6308 | Master Repurchase Agreement | | X | | Unliquidated |
| 27 | EMC | 383 Madison Avenue New York, NY Tel: 212) 272-6458 Fax: (212) 272-7382 | Loan Repurchase Request | | X | | Unliquidated |
| 28 | Greenwich Capital Financial Products, Inc. | 600 Steamboat Road Greenwich, Connecticut 06830 Attn: Mortgage Finance With copies to: Greenwich Capital Financial Products, Inc. 600 Steamboat Road Greenwich, Connecticut 06830 Attn: Legal and to: Greenwich Capital Financial Products, Inc., 600 Steamboat Road Tel: (203) 625-2700 | Loan Repurchase Request | | X | | Unliquidated |
| 29 | Lehman Brothers Inc. and Lehman Commercial Paper Inc. | 745 Seventh Avenue 28th Floor New York, New York 10019 Attn: Robert Guglielmo, Senior Vice President Transaction Management Tel: (212) 526-7121 Fax: (212) 526-7672 | Master Repurchase Agreement | | X | | Unliquidated |
| 30 | HSBC Bank | 452 Fifth Avenue, 10th Fl. New York, NY 10018 Tel: (212) 525-5040 Fax: (646) 366-3826 | Loan Repurchase Request | | X | | Unliquidated |

DB02:6159132.2

| Rank | Name of creditor | Telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff[1] | | | Amount of claim [if secured also state value of security] |
|------|------------------|------|------|------|------|------|------|
| | | | | CONTINGENT | UNLIQUIDATED | DISPUTED | |
| 31 | UBS | 1251 Avenue of the Americas New York, NY 10019 Tel: (212) 713-3734 Fax: (212) 882-3597 | Loan Repurchase Request | | X | | Unliquidated |
| 32 | Lehman Brothers Special Financing, Inc | c/o Lehman Brothers Transaction Management 745 Seventh Avenue, 28th Floor New York, NY 10019 Attn: Documentation Manager Tel: 212-526-7187 Fax: 212-526-7672 | Derivative Transaction (Swap) | | X | | Unliquidated |
| 33 | FNMA | 3900 Wisconsin Avenue, NW Washington, DC 20016-2892 Tel: (202) 752-7000 | Loan Repurchase Request | | X | | Unliquidated |
| 34 | Washington Mutual Bank, FA | 3200 Southwest Freeway Houston, TX 77027 Tel: (713) 543-6141 Fax: (713) 543-6727 | Loan Repurchase Request | | X | | Unliquidated |
| 35 | Luminent Mtg (Barclays) | Suite 1350 101 California St. San Francisco CA 94111 Tel: (415) 217-4500 | Loan Repurchase Request | | X | | Unliquidated |
| 37 | IndyMac Bank, F.S.B. | 3465 East Foothill Boulevard, Pasadena, California 91107 | Loan Repurchase Request | | X | | Unliquidated |
| 38 | Morgan Stanley Capital Services Inc. | Transaction Management Group 1585 Broadway New York, NY 10036-8293 Attn: Chief Legal Officer Fax: (212) 507 4622 | Derivative Transaction (Swap) | | X | | Unliquidated |
| 39 | Credit Suisse First Boston | Eleven Madison Avenue New York, NY 10010 Tel: (212) 325-2000 Fax: (212) 325-6665 | Loan Repurchase Request | | X | | Unliquidated |
| 40 | GMAC | 600 Galleria Parkway, 15th Fl Atlanta, GA 30339 Tel: (678) 324-2146 Fax: (770) 859-0148 | Loan Repurchase Request | | X | | Unliquidated |

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., a Delaware corporation, et al. | Case No. 07-[____] (___) |
| Debtors. | Jointly Administered |

### DECLARATION CONCERNING THE DEBTORS' CONSOLIDATED LIST OF CREDITORS HOLDING THE 40 LARGEST UNSECURED CLAIMS

I, Michael Strauss, Chief Executive Officer of American Home Mortgage Holdings, Inc., a Delaware corporation, and the entity named as the debtor in this case, declare under penalty of perjury under the laws of the United States of America that I have reviewed the foregoing Consolidated List of Creditors holding the 40 Largest Unsecured Claims submitted herewith and that the information contained therein is true and correct to the best of my information and belief.

Date: August 6, 2007

Michael Strauss
Chief Executive Officer

-3-

### ACTION BY WRITTEN CONSENT
### OF THE
### SOLE DIRECTOR
### OF
### AMERICAN HOME MORTGAGE HOLDINGS, INC.

#### (Adopted by the Sole Director on August 5, 2007)

The undersigned, being the sole director (the "Director") of American Home Mortgage Holdings, Inc. (the "Company"), a Delaware corporation, acting pursuant to applicable law, hereby consents to the adoption of the following recitals and resolutions and to the actions set forth herein as of the date set forth above:

WHEREAS, the Director has reviewed and considered the financial and operational condition of the Company and the Company's business on the date hereof, including the historical performance of the Company, the assets of the Company, the current and long-term liabilities of the Company, the market for the Company's products and services, and mortgage industry and credit market conditions;

WHEREAS, the Director has received, reviewed and considered the recommendations of the senior management of the Company and the Company's legal, financial and other advisors as to the relative risks and benefits of pursuing a bankruptcy proceeding under the provisions of Chapter 11 of Title 11 of the United States Code ("Chapter 11");

NOW, THEREFORE, BE IT RESOLVED that, in the judgment of the Director, it is desirable and in the best interests of the Company, its creditors, stockholders and other interested parties, that a voluntary petition be filed by the Company under the provisions of Chapter 11;

RESOLVED FURTHER that the officers of the Company be, and they hereby are, authorized to execute and file on behalf of the Company all petitions, schedules, lists and other papers or documents, and to take any and all action which they deem necessary or proper to obtain such relief;

RESOLVED FURTHER that the officers of the Company be, and they hereby are, authorized and directed to employ the law firm of Young Conaway Stargatt & Taylor, LLP as general bankruptcy counsel, to the Company to represent and assist the Company in carrying out its duties under Title 11 of the United States Code (the "Bankruptcy Code"), and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the Chapter 11 proceeding, and in connection therewith, the officers of the Company are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 case, and to cause to be filed appropriate applications for authority to retain the services of Young Conaway Stargatt & Taylor, LLP;

RESOLVED FURTHER that the officers of the Company be, and they hereby are, authorized and directed to enter into that certain management services agreement between Kroll Zolfo Cooper LLC and the Company, and pursuant thereto and hereto, Stephen F. Cooper

DB02:6150011.3

and Kevin Nystrom, of Kroll Zolfo Cooper LLC, be and hereby are, authorized, empowered and directed to represent the Company, as its Chief Restructuring Officer and Director of Restructuring, respectively, in connection with any case commenced by it under the Bankruptcy Code;

RESOLVED FURTHER, that the officers of the Company be, and they hereby are, authorized and directed to employ Milestone Advisors, LLC, as investment banker, with regard to the Chapter 11 proceeding, and in connection therewith, the officers of the Company are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 case, and to cause to be filed an appropriate application for authority to retain the services of Milestone Advisors, LLC;

RESOLVED FURTHER, that the officers of the Company be, and they hereby are, authorized and directed to employ Phoenix Capital, Inc., as investment banker, with regard to the Chapter 11 proceeding, and in connection therewith, the officers of the Company are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 case, and to cause to be filed an appropriate application for authority to retain the services of Phoenix Capital, Inc.;

RESOLVED FURTHER that the officers of the Company be, and they hereby are, authorized and directed to employ any other individual and/or firm as professionals or consultants or financial advisors to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and in connection therewith, the officers of the Company are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to and immediately upon the filing of the Chapter 11 case, and to cause to be filed an appropriate application for authority to retain the services of such firms;

RESOLVED FURTHER that the officers of the Company be, and they hereby are, authorized and empowered to obtain post-petition financing according to terms negotiated, or to be negotiated, by management of the Company, including under debtor-in-possession credit facilities or relating to the use of cash collateral; and to enter into any guarantees and to pledge and grant liens on its assets as may be contemplated by or required under the terms of such post-petition financing or cash collateral agreements; and in connection therewith, the officers of the Company are hereby authorized and directed to execute appropriate loan agreements, cash collateral agreements and related ancillary documents;

RESOLVED FURTHER that the officers of the Company be, and they hereby are, authorized and empowered for, in the name of, and on behalf of the Company, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver and file any and all such instruments as each, in his or her discretion, may deem necessary or advisable in order to carry out the purpose and intent of the foregoing resolutions; and

RESOLVED FURTHER that all of the acts and transactions relating to matters contemplated by the foregoing resolutions of management and the Director of the Company, in the name and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken prior to the execution of these resolutions, are hereby in all respects confirmed, approved and ratified.

DB02:6150011.3

-2-

IN WITNESS WHEREOF, the undersigned, being the sole Director of the Company, has hereto signed his name and adopted the above resolutions as of the above date and hereby directs a fully signed copy of this Action by Written Consent of the Sole Director to be filed with the minutes of proceedings of the Board of Directors of the Company.

Michael Strauss
Sole Director and
Chief Executive Officer

# EXHIBIT F

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| --------------------------------------------------------- x | | |
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE HOLDINGS, INC., | : | Case No. 07-11047 (CSS) |
| a Delaware corporation, et al., | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| --------------------------------------------------------- x | | |

### NOTICE OF COMMENCEMENT OF CHAPTER 11 BANKRUPTCY CASES, MEETING OF CREDITORS AND FIXING OF CERTAIN DATES

On **August 6, 2007**, American Home Mortgage Holdings, Inc., *et al.*, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532 (the "Bankruptcy Code"). The Debtors and their respective addresses, case numbers and federal tax identification numbers are as follows:

| DEBTORS (Other names, if any, used by the Debtors in the last 6 years) | Address | Case No. | EID No. |
|---|---|---|---|
| American Home Mortgage Holdings, Inc. | 538 Broadhollow Road Melville, NY 11747 | 07-11047 | 13-4066303 |
| American Home Mortgage Investment Corp. | 538 Broadhollow Road Melville, NY 11747 | 07-11048 | 20-0103914 |
| American Home Mortgage Acceptance, Inc. AHM Acceptance, Inc. | 538 Broadhollow Road Melville, NY 11747 | 07-11049 | 20-0201979 |
| American Home Mortgage Servicing, Inc. American Home Mtg Servicing American Home Mortgage Servicing AHM Servicing, Inc. Columbia National, Inc. Columbia National Incorporated CNI National Mortgage Co. Columbia National Mortgage CNI National | 4600 Regent Blvd., Suite 200 Irving, TX 75063 | 07-11050 | 52-0957267 |
| American Home Mortgage Corp. | 538 Broadhollow Road Melville, NY 11747 | 07-11051 | 13-3461558 |
| American Home Mortgage Ventures LLC All Pro Mortgage, LLC AHM Equity Credit Lines, LLC American Home Mortgage V Elite Lending Partners, LLC HSS Mortgage Peak Experience Mortgage Private Mortgage Group Silcon Mortgage TDG Equities US Lending Company, LLC | 538 Broadhollow Road Melville, NY 11747 | 07-11052 | 36-4571407 |

DB02:6184157.1

066585.1001

| DEBTORS (Other names, if any, used by the Debtors in the last 6 years) | Address | Case No. | EID No. |
|---|---|---|---|
| Homegate Settlement Services, Inc. | 538 Broadhollow Road Melville, NY 11747 | 00-11053 | 20-0167491 |
| Oak Abstract Corp. | 520 Broadhollow Road Melville, NY 11747 | 07-11054 | 11-3628580 |

<u>DATE, TIME AND LOCATION OF MEETING OF CREDITORS.</u> **SEPTEMBER 18, 2007 AT 10:00 A.M. (ET), 2ND FLOOR, ROOM 2112, J. CALEB BOGGS FEDERAL BUILDING, 844 NORTH KING STREET, WILMINGTON, DELAWARE.**

<u>DEADLINE TO FILE A PROOF OF CLAIM.</u>   Notice of this deadline will be sent by and through a separate notice.

<u>NAME, ADDRESS AND TELEPHONE NUMBER OF TRUSTEE.</u>  None appointed to date.

<u>COUNSEL FOR THE DEBTORS.</u>

**James L. Patton, Jr.**
**Joel A. Waite**
**Pauline K. Morgan**
**Sean M. Beach**
**Matthew B. Lunn**
**Kara Hammond Coyle**
**Kenneth J. Enos**
**Young Conaway Stargatt & Taylor, LLP**
**The Brandywine Building**
**P.O. Box 391**
**Wilmington, DE 19899-0391**
**Telephone: (302) 571-6600**

<u>COMMENCEMENT OF CASES.</u>  A petition for reorganization under chapter 11 of the Bankruptcy Code has been filed in this Court by each of the Debtors listed above, and orders for relief have been entered.  You will not receive notice of all documents filed in these cases.  All documents filed with the Court, including lists of the Debtors' property and debts, are available for inspection at the Office of the Clerk of the Bankruptcy Court.  In addition, such documents may be available at www.deb.uscourts.gov.

<u>PURPOSE OF CHAPTER 11 FILING.</u>   Chapter 11 of the Bankruptcy Code enables a debtor to reorganize pursuant to a plan.  A plan is not effective unless approved by the court at a confirmation hearing.  Creditors will be given notice concerning any plan, or in the event the case is dismissed or converted to another chapter of the Bankruptcy Code.  The Debtors will remain in possession of their property and will continue to operate any business unless a trustee is appointed.

<u>CREDITORS MAY NOT TAKE CERTAIN ACTIONS.</u>  A creditor is anyone to whom a debtor owes money or property.  Under the Bankruptcy Code, a debtor is granted certain protection against creditors.  Common examples of prohibited actions by creditors are contacting a debtor to demand repayment, taking action against a debtor to collect money owed to creditors or to take property of a debtor, and starting or continuing foreclosure actions or repossessions.  If unauthorized actions are taken by a creditor against a debtor, the Court may penalize that creditor.  A creditor who is considering taking action against a debtor or the property of a debtor should review § 362 of the Bankruptcy Code and may wish to seek legal advice.  **The staff of the Clerk of the Bankruptcy Court are not permitted to give legal advice.**

<u>MEETING OF CREDITORS</u>.  The Debtors' representative, as specified in Rule 9001(5) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), is required to appear at the meeting of creditors on the date and at the place set forth above for the purpose of being examined under oath.  Attendance by creditors at the meeting is welcomed, but not required.  At the meeting, the creditors may examine the Debtors and transact such other business as may properly come before the meeting.  The meeting may be continued or adjourned from time to time by notice at the meeting, without further written notice to the creditors.

<u>CLAIMS</u>.  Schedules of creditors will be filed pursuant to Bankruptcy Rule 1007.  Any creditor holding a scheduled claim, which is not listed as disputed, contingent, or unliquidated as to amount, may, but is not required to, file a proof of claim in this case.  Creditors whose claims are not scheduled or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim.  A creditor who desires to rely on the schedule of creditors has the responsibility for determining that the claim is listed accurately.  **Separate notice of the deadlines to file proofs of claim and proofs of claim forms will be provided to the Debtors' known creditors.**  Proofs of claim forms also are available in the clerk's office of any bankruptcy court, on the Court's web site at www.deb.uscourts.gov, and through the website of EPIQ Bankruptcy Solutions, LLC, the claims agent in these cases at www.epiqbankruptcysolutions.com.

<u>DISCHARGE OF DEBTS</u>.  Confirmation of a chapter 11 case may result in a discharge of debts, which may include all or part of your debt.  <u>See</u> Bankruptcy Code § 1141(d).  A discharge means that you may never try to collect the debt from the debtor, except as provided in the plan.

For the Court:  _____/s/ David D. Bird_____
                        Clerk of the U.S. Bankruptcy Court

Dated:  August 27, 2007

# EXHIBIT G

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re:                                              : Chapter 11

AMERICAN HOME MORTGAGE HOLDINGS, INC.,              : Case No. 07-11047 (CSS)
a Delaware corporation, et al.,                     :
                                                    : Jointly Administered
                                                    :
        Debtors.                                    :
---------------------------------------------------------- x   Docket No. _____

## ORDER

Upon consideration of the Declaration of Carlo Colagiacomo, Jr., dated December 20, 2012, attached as Exhibit A to the Certification of Counsel filed on December 21, 2012, it is hereby found and decreed that American Home Mortgage Corp. ("AHMC") was licensed to do business in various states, including California, under the doing business as, or d/b/a, designation American Brokers Conduit ("ABC") and, as such, claims asserted against ABC are effectively claims made against AHMC for purposes of treatment under the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan") and otherwise in connection with the Chapter 11 cases of the above-captioned debtors, including with respect to the application of the Plan injunctions and bankruptcy stays.

_____
CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

01:13010061.1

# EXHIBIT H

03/29/2010 16:36 FAX 14163510407        NATIONWIDE                                    ☒006/017
03/29/2010 17:18 FAX  707 228 7708      NAPA KINKO'S                                   ☒007/020

...FILL... AMENDED
# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAVID PEARLMAN, AMERICA'S BROKER CONDUIT,
AMERICAN HOME MORTGAGE SERVICING, STEVEN SPENCER,
MICHAEL PRITCHARD and DOES 1-10,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOHN MAY



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**

OCT 0 4 2007

SUPERIOR ... ... CALIFORNIA
COUNTY ... ... ...
BY ... ... DEPUTY CLERK

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Sonoma County Superior Court<br>Hall of Justice, 600 Administration Drive 1075<br>Santa Rosa, California 95403 | **CASE NUMBER:**<br>*(Número del Caso):*<br>SCV - 241302 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mark T. Clausen, CSB #196721   18 E. Fulton Road, Santa Rosa, California 95403
Telephone: 415-221-1817  Cell: 707-235-3663  Email: MarkTClausen@SBCGlobal.net

| DATE:<br>*(Fecha)* | OCT 0 4 2007 | DENISE L. GORDON | Clerk, by | _Karina Royer_ | Karina P Royer | , Deputy |
|---|---|---|---|---|---|---|
| | | | *(Secretario)* | | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. January 1, 2004] | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>American LegalNet, Inc.  www.USCourtForms.com |

03/29/2010 16:36 FAX  14163510407        NATIONWIDE                    ☒ 007/017
03/29/2010 17:16 FAX  707 226 7706        NAPA KINKO'S                  ☒ 008/020

# SUMMONS
## *(CITACION JUDICIAL)*

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DAVID PEARLMAN, AMERICA'S BROKER CONDUIT,
AMERICAN HOME MORTGAGE SERVICING, and DOES 1-10

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN MAY

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

# FILED

AUG 1 4 2007

Superior Court of California,
County of Sonoma

By _____ Deputy Clerk

---

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Sonoma County Superior Court
Hall of Justice, 600 Administration Drive
Santa Rosa, California 95403

CASE NUMBER:
*(Número del Caso):*   SCV   241302

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Mark Clausen (CSB#196721)  18 E. Fulton Road, Santa Rosa, CA 95403    Tele: 415-221-1817
Fax: 707-575-3826    Email: MarkTClausen@SBCGlobal.net

DATE:   AUG 1 4 2007        DENISE L. GORDON    Clerk, by _____    Deputy
*(Fecha)*                                        *(Secretario)*                            *(Adjunto)*

JENNIFER ELLIS

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)           ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*                                         Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

03/20/2010 16:36 FAX  14153510407          NATIONWIDE                    ☑008/017
03/20/2010 17:17 FAX  707 228 7708        NAPA KINKO'S                   ☑009/020

1  Mark T. Clausen (Calif. SB# 196721)
   Attorney at Law
2  18 E. Fulton Road
   Santa Rosa, California 95403
3  Telephone: (415) 221-1817
   Facsimile: (707) 575-3826
4  Email: MarkTClausen@SBCGlobal.net

5  Attorney for Plaintiff
   JOHN MAY

6

# FILED

AUG 1 4 2007

Superior Court of California,
County of Sonoma

By _____ Deputy Clerk

7          **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**
                     (An Unlimited Civil Action)

8  JOHN MAY,                              Case No. SCV- 2 4 302

9          Plaintiff,                     COMPLAINT

10 vs.

11 DAVID PEARLMAN, AMERICA'S BROKER
   CONDUIT, AMERICAN HOME MORTGAGE
12 SERVICING, and DOES 1-10,

13         Defendants.

14 _____/

15     Comes now plaintiff John May who hereby alleges, claims and prays as follows:

16                              **PARTIES**

17     1. Plaintiff John May is an individual over the age of 18 and a resident of the County

18 of Sonoma, State of California.

19     2. Defendant David Pearlman ("Pearlman") is an individual over the age of 18,

20 precise residence unknown, who does business in the County of Sonoma, State of

21 California.  Pearlman is believed to be the wholesale loan representative for defendant

22 America's Broker Conduit ("ABC").

23     3. Defendant ABC is a business entity, precise form unknown, located and/or doing

24 business in the County of Sonoma, State of California.  ABC originated the loan to plaintiff

25 which forms the basis for this action.

26     4. Defendant American Homes Mortgage Servicing ("AHMS") is a business entity,

27 precise form unknown, located and/or doing business in the County of Sonoma, State of

28 California.  AHMS has either acquired from or is servicing the loan for ABC which forms the

basis for this action.

1    5.  Plaintiffs is ignorant of the true names and capacities of the defendants sued

2    herein as Does 1-10, inclusive, and therefore sues these defendants, and each of them, by

3    such fictitious names.  Plaintiff will amend this complaint to allege their true names and

4    capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that

5    Does 1 through 10, inclusive, and each of them, are responsible in some manner for the

6    occurrences alleged herein, and that plaintiff's injuries, as alleged herein, were proximately

7    caused by these defendants, and each of them.

8        6.  The defendants, and each of them, were the agents of representatives of the

9    other, and or acted in concert, such that the actions of each are attributable to all.

10                              **JURISDICTION & VENUE**

11       7.  Jurisdiction and venue is appropriate in the Superior Court of the County of

12   Sonoma, as plaintiff and defendants reside and/or do business in Sonoma County and the

13   actions and omissions of defendants, and each of them, giving rise to liability occurred in

14   Sonoma County.  The action is properly filed as an unlimited civil damage case because

15   the damages exceed the jurisdictional minimum and equitable relief is sought.

16                              **GENERAL ALLEGATIONS**

17       8.  On or about April 2007, defendants Pearlman and/or ABC processed, approved

18   and/or originated a loan to plaintiff, John May, loan #1001674600 for certain real property

19   located at 223 E. Third Santa Rosa, Cloverdale, California.  Defendant AHMS thereafter

20   acquired and/or agreed to service the loan, and is currently doing so.

21       9.  The defendants, and each of them, afforded plaintiff the loan when it was known

22   to and/or reasonably foreseeable to them that plaintiff lacked adequate financial means to

23   make payment thereon.  Plaintiff is on disability with a fixed income, has no means of

24   gainful employment, has no significant cash on hands, and has no significant assets other

25   than the real property purchased with the loan.  The real property has a value less than the

26   loan, as the real property sits on a deficient foundation which is not in compliance with code

27   and which would prevent any reasonable, well-intentioned lender from funding or servicing

28   the loan at issue. Plaintiff was ignorant of the deficiency at the time of purchase and when

- 2 -

03/29/2010 18:37 FAX  14153510407          NATIONWIDE                    ☑010/017
                                          NAPA KINKO'S                  ☑011/020

1  securing the loan.

2     10.  Pursuant to the terms of the loan agreement and/or as required by state and/or
3  federal law, the first payment on the loan was not to come due until the month following a
4  30-day period after the close of the loan.  The first payment, therefore, was legally due in
5  June 2007.  Defendants made oral and/or written representations to plaintiff that the first
6  payment would not be due until June 2007. Defendants, however, billed for and demanded
7  payment beginning in May 2007.

8     11.  Plaintiff, through an intermediary, advised the defendants of the error and
9  requested that plaintiff re-write the loan to correct the error.  Defendants failed and/or
10 refused to do so, and instead advised plaintiff that if he failed to make the required
11 payments foreclosure proceedings would be commenced.  Plaintiff refused to make the
12 payments unless defendants re-wrote the loan to comply with state and federal law and/or
13 the oral and/or written representations of the defendants. Defendants thereafter undertook
14 steps to begin the foreclosure process.

15    12.  Plaintiff, through an intermediary, has attempted to confer with defendants in
16 order to reach an acceptable solution, prior to commencing litigation. Defendants, however,
17 have repeatedly failed and refused to refer the matter to their legal representatives, stating
18 that no such referral may occur until litigation is commenced. Plaintiff, therefore, was forced
19 to commence this action.

20                          FIRST CAUSE OF ACTION
21                          [For Elder Financial Abuse]

22    13.  Plaintiff incorporates by reference paragraphs 1-12 as set forth above.

23    14.  At all time relevant hereto plaintiff was an elderly dependent adult within the
24 meaning of Probate Code section 2951 and Penal Code section 368.

25    15. Defendants, and each of them, knew or should have known of defendant's elder
26 dependent adult status.

27    16. Defendants, and each of them, with full knowledge of defendant's status or with
28 wilful blindness towards that status, knowingly and intentionally took advantage of plaintiff's

- 3 -

03/29/2010 16:37 FAX 14153510407          NATIONWIDE          ☒011/017
                                          NAPA KINKO'S           ☒012/020

1  status for purposes of financial gain, as herein-above described.

2      17. Defendants, and each of them, intended to and did pray upon plaintiff's status
3  by arranging and advising him to enter into a loan transaction, loan #1001674600, for
4  certain real property located at 223 E. Third Santa Rosa, Cloverdale, California, when
5  defendants, and each of them, knew or should have know that the real property was not of
6  sufficient value to cover the loan because the property sits upon a deficient foundation
7  which is not up to code, and that plaintiff would be unable to make the monthly payments
8  on the loan because he lacks sufficient income and resources and is on a fixed income as
9  a result of disability.

10     18. Defendants, and each of them, intended to and did further pray upon plaintiff's
11 status by falsely representing to him that no payment on the loan would be due until June
12 2007, when defendants knew and intended that the first payment would be due in May
13 2007, and knew or reasonably should have known that plaintiff would be unable to make
14 such payment.

15     19. Predictably, plaintiff was unable to make the May 2007 payment demanded by
16 the defendants, and has been unable to make any further payment since that time.
17 Defendants have therefore advised plaintiff they intend to undertake foreclosure
18 proceedings against the subject property. Defendants have also reported plaintiff as
19 delinquent on his credit report, resulting in significant damage to plaintiff's credit rating.

20     20. Defendants, and each of them, owed plaintiff a duty to refrain from taking
21 advantage of plaintiff's elder dependent status. Defendants, and each of them, breached
22 this duty by engaging in the actions described herein. As a result of defendants' actions,
23 plaintiff has been and/or will be damaged in an amount to be determined at trial, which
24 exceeds the minimum amount for jurisdiction as an unlimited civil action. The damages
25 sustained by plaintiff were the intended and foreseeable consequence of defendants'
26 actions.

27     21. As a result of defendants' actions, the purchase of the real property described
28 herein and/or the loan at issue is/are void and/or voidable and the court should in the

- 4 -

1   exercise of its equitable powers void the purchase and title taken thereto, and/or void the

2   loan at issue and compel defendants, and each of them, to rewrite the loan to comply with

3   federal and/or state law and the representations of the defendants which induced plaintiff

4   to accept the loan.

5                           SECOND CAUSE OF ACTION

6                              [Fraud and Deceit]

7        22.  Plaintiff incorporates by reference paragraphs 1-22 as set forth above.

8        23.  In order to induce plaintiff to purchase the property described herein and to

9   agree to the loan at issue, defendants, and each of them, with the intent to deceive plaintiff,

10  employed a scheme or conspiracy to defraud plaintiff, which was carried out through the

11  material misrepresentations and omissions described herein.

12       24.  Defendants, and each of them, knew the property was not of sufficient value to

13  cover the loan, because the property sits on a deficient foundation which is not up to code.

14  Defendants further knew that plaintiff lacked sufficient financial resources to make

15  payments on the loan.  Defendants, and each of them, intentionally induced plaintiff to

16  accept the loan with the goal of thereafter foreclosing on the property when plaintiff failed

17  to make the monthly payments and was unable to make good on his loan obligations.

18  improving the property for or providing care and attention to the plaintiff.

19       25.  Defendants, and each of them, engaged in this deceitful and fraudulent conduct

20  with the intent to induce plaintiff's reliance so that the defendants would profit at plaintiff's

21  expense and to his detriment.  In reliance on defendants' false representation and

22  omissions, plaintiff was induced to agree to the purchase of the property and accept

23  the loan described herein.

24       26.  As a result of defendants' actions, plaintiff has been and/or will be damaged in

25  an amount to be determined at trial, which exceeds the minimum amount for jurisdiction as

26  an unlimited civil action.  The damages sustained by plaintiff were the intended and

27  foreseeable consequence of defendants' actions.

28       27.  The conduct and actions of defendants was wilful, intentional, malicious and in

                                    - 5 -

1   gross disregard of the harm to be caused to and the rights of plaintiff, for purposes of
2   defendants' financial gain, thereby entitling plaintiff to an award of punitive damages in an
3   amount sufficient to punish defendants for their conduct and to deter them from engaging
4   in similar conduct in the future.

5        28.  As a result of defendants' actions, the purchase of the property and acceptance
6   of the loan described herein and all consent and authority afforded by plaintiff to
7   defendants, is void and unenforceable.

8        29.  The court should in the exercise of its equitable powers void the purchase and
9   title taken thereto, and or the loan at issue, and return plaintiff and defendants to the
10  position they would otherwise have occupied but for defendants' unlawful conduct.

11

12                              THIRD CAUSE OF ACTION

13                                  [Negligence]

14       30.  Plaintiff incorporates by reference paragraphs 1-29 as set forth above.

15       31.  Defendants, and each of them, by virtue of their relationship to plaintiff and
16  plaintiff's elderly dependent status, owed plaintiff a duty to use due care to provide proper
17  and sound advise and to act in accordance with plaintiff's best interests when securing his
18  agreement to the loan and property purchase described herein.  Defendants, and each of
19  them, knew or should have known that plaintiff would rely on them for sound advice and the
20  protection of plaintiff's financial and personal interests and legal rights.

21       32.  In investigating, preparing, distributing information and advising plaintiff
22  concerning the purchase of the property and acceptance of the loan described herein, the
23  defendants were negligent and breached their duty of care owed to plaintiff.

24       33.  Defendants, and each of them, were further negligent in the representations they
25  made to plaintiff and in the failure to ascertain the true facts.  Defendants made
26  representations to plaintiff recklessly, without any basis to believe them to be true, and in
27  a manner not warranted by the information then possessed by the defendants.  Defendants,
28  and each of them, knew or should have known that the representations they made were

                                        - 6 -

1  offered without due care and consideration of the true facts and plaintiff's legal rights and
2  interests.

3      34.    Defendants, and each of them, engaged in this conduct with the intent to
4  induce plaintiff's reliance so that the defendants would profit at plaintiff's expense and to his
5  detriment. In reliance on defendants' false representation and omissions, and erroneous
6  advice, plaintiff was induced to agree to the purchase of the property and accept the loan
7  herein described, to plaintiff's detriment.

8      35.  As a result of defendants' actions, plaintiff has been and/or will be damaged in
9  an amount to be determined at trial, which exceeds the minimum amount for jurisdiction as
10 an unlimited civil action.  The damages sustained by plaintiff were the intended and
11 foreseeable consequence of defendants' actions.

12     36. As a result of defendants' actions, the purchase of the property and acceptance
13 of the loan described herein and all consent and authority afforded by plaintiff to
14 defendants, is void and unenforceable.

15     37.  The court should in the exercise of its equitable powers void the purchase and
16 title taken thereto, and or the loan at issue, and return plaintiff and defendants to the
17 position they would otherwise have occupied but for defendants' unlawful conduct.

18                          **FOURTH CAUSE OF ACTION**

19                   **[VIOLATION OF THE RACKETEER INFLUENCED**
20                     **AND CORRUPT ORGANIZATIONS ACT]**

21     38.  Plaintiff incorporates by reference paragraphs 1-37 as set forth above.

22     39.  At all times mentioned in this complaint, defendants or their employers were an
23 "enterprise" engaged in, or the activities of which affect, interstate commerce as defined in
24 18 U.S.C. §1961.

25     40.  In violation of 18 U.S.C. §1962(c), defendants, singly, or in concert with each
26 other, conducted or participated in a pattern of racketeering activity, as proscribed by 18
27 U.S.C. §1962(c), in that on more than two occasions during the time period in which plaintiff
28 purchased the property or accepted the loan described herein, defendants violated 18

03/29/2010 16:38 FAX  14153510407          NATIONWIDE                    ☒ 015/017
                                          NAPA KINKO'S                   ☒ 016/020

1  U.S.C. §§1341 and 1343 by using mail and wire service to defraud plaintiff or to obtain

2  plaintiff's money by false pretenses, as herein described, and to disseminate information

3  that was materially false and misleading, with the intent to fraudulently and unlawfully

4  induce plaintiff to purchase the property or accept the loan described herein and to tender

5  payments to defendants.

6      41. As a result of defendants' conduct, plaintiff was induced to agree to the purchase

7  of the property and acceptance of the loan described herein, and/or to tender payments to

8  defendants, and was damaged thereby as herein described.

9      42.  As a result of defendants' actions, plaintiff has been and/or will be damaged in

10  an amount to be determined at trial, which exceeds the minimum amount for a unlimited

11  civil damage action, and for which damages are to be trebled pursuant to 18 U.S.C.

12  §1964(c).  The damages sustained by plaintiff were the intended and foreseeable

13  consequence of defendants' actions.

14      43. As a result of defendants' actions, the purchase of the property and acceptance

15  of the loan described herein and all consent and authority afforded by plaintiff to

16  defendants, is void and unenforceable.

17      44.  The court should in the exercise of its equitable powers void the purchase and

18  title taken thereto, and or the loan at issue, and return plaintiff and defendants to the

19  position they would otherwise have occupied but for defendants' unlawful conduct.

### FIFTH CAUSE OF ACTION

### [For Recission and Declaratory Relief]

22      45.  Plaintiff incorporates by reference paragraphs 1-44 as set forth above.

23      46.  By virtue of the conduct of defendants as herein described, plaintiff was

24  wrongfully, fraudulently and unlawfully induced to enter into an agreement to purchase the

25  property and/or accept the loan described herein.

26      47.  Plaintiff is entitled to recission of the agreement to purchase the property and/or

27  the loan, such that plaintiff and defendants are returned, as nearly as possible, to the status

28  quo ante.

03/29/2010 16:38 FAX  14163610407          NATIONWIDE                    ☒016/017
03/29/2010 17:16 FAX  707 226 7709        NAPA KINKO'S                  ☒017/020

48.  Pursuant to California Code of Civil Procedure section 1060, plaintiff seeks a declaration of rights and interests with respect to the rights and interests of the plaintiff and the defendant as to the loan described, and asks the court to issue a declaratory order the written agreement between the parties concerning such loan to be void as fraudulently or unlawfully induced, so as to entitle plaintiff to recision or reformation of the loan and/or loan agreement.

49.  Pursuant to California Code of Civil Procedure section 1060, or as otherwise allowed by law, plaintiff seeks a declaration of rights and interests with respect to the rights and interests of the plaintiff and the defendant as to the status of plaintiff's credit report and defendants' reporting thereon of plaintiff's delinquencies in payment on the loan described herein.  Plaintiff asks the court to issue a declaratory order finding the loan to be void or voidable, or subject to recision or reformation, as fraudulently or unlawfully induced. Plaintiff further asks the court to issue a declaratory and/or injunctive order directing that defendants re-write the loan to comply with federal and/or state law and/or defendants' representations, and to remove from plaintiff's credit report all derogatory or negative entries concerning or relating to the loan at issue, including, specifically, the reporting of delinquent payments and/or non-payment on the loan.

### PRAYER

WHEREFORE plaintiff prays for relief as follows:

A.  For compensatory damages according to proof;

B.  For punitive damages in an amount sufficient to punish defendants for their conduct and deter them from engaging in similar conduct in the future;

C.  For treble damages pursuant to 18 U.S.C. §1964(c), as permitted by law;

D.  For an order of recission and/or declaratory order finding void and unenforceable any agreement between the parties concerning the loan herein, and/or rescinding or reforming the agreement and loan;

E.  For an order directing defendants to forthwith remove from plaintiff's credit report all derogatory or negative entries concerning the loan at issue;

03/29/2010  16:38 FAX  14163510407          NATIONWIDE                    ☒017/017
03/29/2010  17:16 FAX  707 228 7708         NAPA KINKO'S                   ☒018/020



F.  For costs of suit including attorney fees where available by contact or statute; and

G.  For such other relief as the court deems just.

LAW OFFICES OF MARK T. CLAUSEN

Date: _8/9/02_      By: _____

Mark Clausen,
Attorneys for Plaintiff John May

- 10 -

# EXHIBIT I

RECORDING REQUESTED BY:
Fidelity National Title Company
Escrow No.: 09-490112911-FH
Locate No.: CAFNT0949-0949-0001-0490112911
Title No.: 09-490112911

AND WHEN RECORDED MAIL TO
Mr. John May
129 Azalea Drive
Klamath, Ca. 95548



**2009040513**

OFFICIAL RECORDS OF
SONOMA COUNTY
FIDELITY NAT'L TITLE CO. JANICE ATKINSON
04/30/2009 14:32 JDOT
RECORDING FEE: 17.00    **4**    PGS
PAID



SPACE ABOVE THIS LINE FOR RECORDER'S USE

Default Judgment

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

(recoverch)(05-08)

Description: Sonoma,CA Document-Year.DocID 2009.40513 Page: 1 of 4
Order: 2 Comment:

DB/Ocwen 00085



1  Mark T. Clausen (Calif. SB# 196721)
   Attorney at Law
2  18 E. Fulton Road
   Santa Rosa, California 95403
3  Telephone: (415) 221-1817
   Facsimile: (707) 575-3826
4  Email: MarkTClausen@SBCGlobal.net

5  Attorney for Plaintiff
   JOHN MAY

6

**FILED**

ENTERED MAR 1 3 2009

Superior Court of California
County of Sonoma
by_____ Deputy Clerk

Nunc Pro Tunc to
8-12-08

7                 SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA
                              (An Unlimited Civil Action)

8  JOHN MAY,                                    Case No. SCV-241302

9        Plaintiff,                             *AMENDED*
                                                DEFAULT JUDGMENT AGAINST
10 vs.                                          AMERICA'S BROKER CONDUIT
                                                and AMERICAN HOME
11                                              MORTGAGE SERVICING
   DAVID PEARLMAN, AMERICA'S BROKER
12 CONDUIT, AMERICAN HOME MORTGAGE
   SERVICING, STEVEN SPENCER, MICHAEL
13 PRITCHARD and DOES 1-10,

14       Defendants.

15
        On August 12, 2008, the Court entered a default judgment against defendants America's
16
   Broker Conduit and American Home Mortgage Servicing, a copy of which is attached hereto and
17
   incorporated by reference. The default judgment refers to "that certain deed of trust arising from the
18
   contract and recorded with the Sonoma County Recorder on April 6, 2007, against the property
19
   located at 223 E. Third Street, Cloverdale, California, Instrument #2007039078." (Emphasis added.)
20
        By ex-parte motion of plaintiff submitted March 10, 2009, plaintiff has presented evidence
21
   that the correct instrument number is 2007039079.
22
        Accordingly, the default judgment is hereby amended to reflect the correct instrument number
23
   is 2007039079. This amendment is entered *nunc pro tunc* to August 12, 2008; the date of entry of
24
   the default judgment. In all other respects, the judgment remains unchanged.
25
        IT IS SO ORDERED.
26
   Date: 3/13 , 2009            By: _____
27     THE WITHIN INSTRUMENT IS A CORRECT COPY           Robert S. Boyd
       OF THE ORIGINAL ON FILE IN THIS OFFICE.           Judge of the Superior Court, Dept. 21
28

   ATTEST: MAR 2 6 2009
   Clerk of the Superior Court of California
   County of Sonoma
   by_____ Deputy Clerk
   CHRISTINA ORTIZ

DENISE L. GORDON

Description: Sonoma,CA Document-Year.DocID 2009.40513 Page: 2 of 4
Order: 2 Comment:



1  Mark T. Clausen (Calif. SB# 196721)
   Attorney at Law
2  18 E. Fulton Road
   Santa Rosa, California 95403
3  Telephone: (415) 221-1817
   Facsimile: (707) 575-3826
4  Email: MarkTClausen@SBCGlobal.net

5  Attorney for Plaintiff
   JOHN MAY
6

**FILED**

AUG 1 2 2008

Superior Court of California,
County of Sonoma
By: _____ Deputy Clerk

7              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA
                              (An Unlimited Civil Action)

8  JOHN MAY,                                  Case No. SCV- 241302

9         Plaintiff,                          DEFAULT JUDGMENT AGAINST
                                              AMERICA'S BROKER CONDUIT
10 vs.                                        and AMERICAN HOME
                                              MORTGAGE SERVICING; and ORDER
11 DAVID PEARLMAN, AMERICA'S BROKER           DISMISSING ALL DOE
   CONDUIT, AMERICAN HOME MORTGAGE            DEFENDANTS
12 SERVICING, STEVEN SPENCER, MICHAEL
   PRITCHARD and DOES 1-10,
13
         Defendants.
14

15        The Court having entered default on the First Amended Complaint against defendants

16 America's Broker Conduit and American Home Mortgage Servicing, and no appearance or motion

17 to vacate default having been made by said defendants, the Court hereby enters judgment by default

18 against said defendants, as follows:

19        On the Fifth Cause of Action for recision of contract, judgment is entered in favor of plaintiff

20 John May and against defendants America's Broker Conduit and American Home Mortgage

21 Servicing. That certain contract, denoted by the parties as loan #1001674600, is rescinded in full and

22 all rights and interests therein are extinguished, including but not limited to that certain deed of trust

23 arising from the contract and recorded with the Sonoma County Recorder on April 6, 2007, against

24 the property located at 223 E. Third Street, Cloverdale, California, Instrument #2007039078.

25 Defendants America's Broker Conduit and American Home Mortgage Servicing are directed to

26 forthwith take appropriate steps to remove from plaintiff's credit report all derogatory or negative

27 entries concerning the contract at issue.

28        Plaintiff having secured the remedy of recision, plaintiff has elected not to proceed on the First

through Fourth Causes of Action of the complaint or any other relief alleged or prayed for in the First

DB/Ocwen 00087

1  Amended Complaint, including but not limited to damages, attorney fees and costs. Accordingly, the

2  First through Fourth Causes of Action are dismissed and all other claims and prayers for relief, save

3  the claim for rescision, are denied and dismissed in full.

4      Plaintiff has previously filed and the Court has entered dismissal as against defendants

5  DAVID PEARLMAN, STEVEN SPENCER and MICHAEL PRITCHARD. The Court hereby orders

6  that all DOE defendants are dismissed as well.

7      IT IS SO ORDERED.

8  Date: _5/12/_, 2008            By: _____

9                                  Robert S. Boyd
                                    Judge of the Superior Court, Dept. 21
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

DB/Ocwen 00088

# EXHIBIT J

Page 1 of 3

RECORDING REQUESTED BY:

ServiceLink

When recorded mail to:

McCarthy & Holthus, LLP
James M Hester, Esq. (SBN: 122133)
Charles E. Bell, Esq. (SBN: 256848)
Michelle Ann Hoskinson, Esq. (SBN: 265612)
1770 Fourth Avenue
San Diego, CA 92101
Telephone: (619) 685-4800
Facsimile: (619) 685-4811
Email: MHoskinson@McCarthyHolthus.com

 **2012066080**

OFFICIAL RECORDS OF
SONOMA COUNTY
JANICE ATKINSON
**3** PGS

SPL EXPRESS INC
07/12/2012 08:03 ORD
RECORDING FEE: $10.00
PAID



## STIPULATION TO SET ASIDE DEFAULT JUDGMENT ORDER

Case No. SCV-241302
TS # CA10-2969
Order # A584

THIS INSTRUMENT IS RECORDED AT THE
REQUEST OF SERVICELINK AS AN
ACCOMMODATION ONLY. IT HAS NOT BEEN
EXAMINED AS TO ITS EXECUTION OR AS
TO ITS EFFECTS UPON TITLE.

Description: Sonoma,CA Document-Year.DocID 2012.66080 Page: 1 of 3
Order: 2 Comment:

**DB/Ocwen 00089**



Page 2 of 3

1   McCARTHY & HOLTHUS, LLP
    James M. Hester, Esq. (SBN: 122133)
2   Charles E. Bell, Esq. (SBN: 256848)
    Michelle Ann Hoskinson, Esq. (SBN: 265612)
3   1770 Fourth Avenue
    San Diego, CA 92101
4   Telephone:   (619) 685-4800
    Facsimile:   (619) 685-4811
5   Email:        MHoskinson@McCarthyHolthus.com

6   Attorneys for Defendant,
    American Home Mortgage Servicing, Inc

7

8                    SUPERIOR COURT OF CALIFORNIA

9                        COUNTY OF SONOMA

10  JOHN MAY,

11                          Plaintiff,    Case No.  SCV-241302

12  v.                                    STIPULATION TO SET ASIDE
                                          DEFAULT JUDGMENT
    DAVID PEARLMAN, AMERICA'S
13  BROKER CONDUIT, AMERICAN HOME         [PROPOSED] ORDER
    MORTGAGE SERVICING, and DOES 1-10

14                         Defendants.

15

16        Plaintiff John May ("Plaintiff") and Defendant American Home Mortgage Servicing, Inc.

17  ("Defendant") hereby stipulate and agree as follows:

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

MAY - 4 2012

BY_____
        Deputy Clerk

THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE ORIGINAL ON FILE IN
THIS OFFICE.

ATTEST     JUN 2-8 2012

Clerk of the Superior Court of California
County of Sonoma
By_____ Deputy Clerk

STIPULATION AND [PROPOSED] ORDER TO SET ASIDE DEFAULT JUDGMENT

Description: Sonoma,CA Document-Year.DocID 2012.66090 Page: 2 of 3
Order: 2 Comment:

DB/Ocwen 00090

Page 3 of 3

1.    Plaintiff recorded a default judgment against Defendant, originally entered on August 12, 2008 and amended on March 13, 2009, collectively recorded on April 30, 2009 in the Sonoma County Recorder's Office as Instrument Number 2009040513.  Plaintiff and Defendant hereby stipulate and agree to set aside the default judgment.

2.    The parties have reached a settlement of all claims and causes of action.  Pursuant to the settlement the default judgment shall be vacated and the case dismissed in full with prejudice.

Dated: April 30, 2012                                    McCarthy & Holthus LLP

                                                         Michelle Ann Hoskinson, Esq.,
                                                         Attorneys for Defendant
                                                         American Home Mortgage Servicing, Inc.

Dated:                                                   Mark T. Clausen

                                                         Mark T. Clausen
                                                         Attorneys for Plaintiff
                                                         John May

### ORDER

Good cause appearing, the Stipulation is approved and the default judgment entered on about August 12, 2008 and amended default judgment entered on March 13, 2009, collectively recorded on April 30, 2009 in the Sonoma County Recorder's Office as Instrument Number 2009040513, is vacated.

Dated:            5/4/12

                                                         Honorable Judge of the Sonoma County
                                                         Superior Court

**McCARTHY & HOLTHUS, LLP**
ATTORNEYS AT LAW

                                                    2
STIPULATION AND [PROPOSED] ORDER TO SET ASIDE DEFAULT JUDGMENT

Description: Sonoma,CA Document-Year.DocID 2012.66080 Page: 3 of 3
Order: 2 Comment:

DB/Ocwen 00091