# EXHIBIT C

Loan Number : 082633

*Mt 12439*

[Space Above This Line For Recording Data]

# DEED OF TRUST

# THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS DEED OF TRUST ("Security Instrument") is made on November 25, 1998
The grantor is   Deno Fidelis Bocchi and Mary M. Bocchi, Husband and wife

("Borrower"). The trustee is

Transcontinental-Towson, MD

("Trustee"). The beneficiary is

AmeriGroup Mortgage Corporation a division of Mortgage Investors Corporation
which is organized and existing under the laws of Ohio
6090 Central Avenue, St. Petersburg, FL  33707
, and whose address is

("Lender"). Borrower owes Lender the principal sum of

One Hundred Nine Thousand Six Hundred Ten Dollars And 00/100
Dollars (U.S. $     109,610.00        ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
January  1, 2029                    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by
the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with
power of sale, the following described property located in  Prince Georges

County, Maryland:

SEE EXHIBIT A ATTACHED AND MADE A PART HEREOF.

IMP FD SURE $           5.
RECORDING FEE          20.
TOTAL                  25.
Rest PG83    Rcpt # 3172
Bladensburg LJ3    Blk $ 6427
70  (City)    Blk $ 6427
Mar 16, 1999          01:25

which has the address of  4103-55th Avenue

[Street]

Maryland                    20710            ("Property Address");
                         [Zip Code]

□Eastern
Software
CORPORATION

MARYLAND -- Single Family -- Uniform Instrument

ITEM 2495L1 (9801)                    *(Page 1 of 7 pages)*

GREATLAND ■
To Order Call: 1-800-530-9393  [F] 616-791-1131

# EXHIBIT "A"

The land referred to in this Commitment is situated in the County of PRINCE GEORGES, State of Maryland, and described as follows:

LOT NUMBERED ONE (1), IN BLOCK LETTERED "C" IN THE SUBDIVISION KNOWN AS "SECTION 1, WASHINGTON SUBURBAN HOMES", AS PER PLAT THEREOF RECORDED I PLA BOOK BB 9, AT PLAT 78, AMONG THE LAND RECORDS OF PRINCE GEORGE'S COUNTY, MARYLAND. BEING IN THE 2ND ELECTION DISTRICT OF SAID COUNTY.

A/K/A 4103 55TH AVENUE BLADENSURG, MD 20710

Trustee on the addresser but

grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 23, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 23 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 17, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

ITEM 2495L3 (9801)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

sums secured by this Security Instrument immediately prior to the ~~taking~~, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. If the indebtedness secured hereby is guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of the parties hereto, and any provisions of this or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations are hereby amended to conform thereto.

In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Transfer of the Property.** This loan may be declared immediately due and payable upon transfer of the Property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**17. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 16.

**18. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also

ITEM 2495L4 (9801)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

**19.** Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 19, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 19, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**20. Funding Fee.** A fee equal to one-half of one percent of the balance of this loan as of the date of transfer of the Property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729(c).

**21. Processing Charge.** Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

**22. Indemnity Liability.** If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 23, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale,

ITEM 2495L5 (9801)

GREATLAND ■
To Order Call: 1-800-530-9393☐Fax 616-791-1131

the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 23 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

24. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs.

25. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

26. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 21 of this Security Instrument.

27. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider       ☐ Other(s) [specify]

☐ Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Deno Fidelis Bocchi_ _____ (Seal)        _Mary M. Bocchi_ _____ (Seal)
Deno Fidelis Bocchi                -Borrower         Mary M. Bocchi                -Borrower

_____ (Seal)        _____ (Seal)
                                   -Borrower                                         -Borrower

Witness:                                          Witness:

_____              _____

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

I Further Certify, That on the date and year shown above before me, the subscriber, personally appeared

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time not later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.



_Geraldine L. Tipton_
Notary Public

My Commission expires: 5/1/82

Complete the following as appropriate:

This is to certify that this instrument was prepared by or under the supervision of

an attorney admitted to the practice of law by the Court of Appeals by the State of Maryland.

_____

or

This is to certify that this instrument was prepared by _American MASC Corp_ one of the parties named in this instrument.

_J. J. Taylor, VP Closing_
J. T. Taylor

**STATE RECORDATION TAX - PRINCIPAL RESIDENCE**

_DB MMB_ Initial here if the document presented is a refinancing of a debt for which you are the original mortgagor, or you assumed from the original mortgagor, AND the property is your principal residence. The debt instrument being refinanced is at Liber __8860__, Folio __463__ and has an unpaid principal balance of $__102,001.91__ (NOTE: B-1 or B-2 must also be used)

## B. COUNTY TRANSFER TAX - PRINCIPAL RESIDENCE

1. _DB , MMB_ Initial here if the document presented is new financing or refinancing of existing debt on your principal residence, for which you are the original mortgagor (or assumed from the original mortgagor), on a purchase money mortgage/deed of trust AND more than 12 months have passed since it was recorded. (NOTE: If refinancing, A must also be used)

2. _____ Initial here only if this is a refinancing of debt on your principal residence AND you do not meet BOTH the purchase money and 12-month requirements described in B-1. The debt instrument being refinanced is at Liber _____, Folio _____, and the amount of debt shown on that instrument is $_____ (NOTE: A must also be used)

## C. COUNTY TRANSFER TAX - NOT PRINCIPAL RESIDENCE

_____ Initial here only if this is a refinancing of existing debt, for which you were the original mortgagor (or assumed from the original mortgagor) on property that is NOT your principal residence. The debt instrument being refinanced is at Liber _____, Folio _____, and the amount of debt shown on that instrument is $_____

I/We understand that if I/we fail to truthfully answer or provide information to avoid collection of County Transfer and Recordation Tax, I/we may be found guilty of a misdemeanor and, on conviction, may be subject to a fine not exceeding $5,000.00 or imprisonment not exceeding eighteen (18) months or both; and I/we authorize Prince George's County to take the appropriate steps necessary to confirm and verify the information made on this affidavit.

_Dino Fidelis Bocchi_
Signature of Borrower                    Social Security Number          Signature of Borrower                    Social Security Number

_Mary M Bocchi_
Signature of Borrower                    Social Security Number          Signature of Borrower                    Social Security Number

State of _Maryland_

County of _Baltimore_

RECORDATION TAX PAID
OFFICE OF FINANCE
PRINCE GEORGE'S COUNTY, MD.

On this _25th_ day of _November_, 19_98_, before me, a Notary Public of the State and County aforesaid, personally appeared _____ known to me to be, or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within affidavit, and who acknowledged that he/she/they executed the same for the purposes therein contained.

My Commission Expires: _5/1/02_

_Geraldine A. Septam_
Notary Public

NOTARY PUBLIC BALTIMORE COUNTY, MD. GERALDINE A. SEPTAM

01A03#01                              $35.20
PGCG 01:09PM03-16-99                  #1

| 1 | Type(s) of Instruments | (Type or Print in Black Ink Only - All Copies Must Be Legible) |
|---|---|---|

State of Maryland Land Instrument Intake Sheet

| 1 | Type(s) of Instruments | Deed ☐ | Mortgage ☐ | Other ☐ _____ | Other ☐ _____ |
|---|---|---|---|---|---|
| | | Deed of Trust ☑ | Lease ☐ | | |

| 2 | Conveyance Type Check Box | Improved Sale ☐ Arms-Length [1] | Unimproved Sale ☐ Arms-Length [2] | Multiple Accounts ☐ Arms-Length [3] | Not an Arms-Length Sale [9] ☐ |
|---|---|---|---|---|---|

| 3 | Tax Exemptions (if Applicable) Cite or Explain Authority | Recordation | |
|---|---|---|---|
| | | State Transfer | |
| | | County Transfer | |

| 4 | Consideration and Tax Calculations | Consideration Amount | | Finance Office Use Only | |
|---|---|---|---|---|---|
| | | Purchase Price/Consideration | $ | Transfer and Recordation Tax Consideration | |
| | | Any New Mortgage | $ 109610.00 | Transfer Tax Consideration | $ |
| | | Balance of Existing Mortgage | $ 102,001.91 | X ( ) % = | $ |
| | | Other: | $ | Less Exemption Amount = | $ |
| | | | | Total Transfer Tax = | $ |
| | | Other: | $ | Recordation Tax Consideration | $ |
| | | | | X ( ) per $500 = | $ |
| | | Full Cash Value | $ 7608.09 | TOTAL DUE | $ |

| 5 | Fees | Amount of Fees | Doc. 1 | Doc. 2 | Agent: |
|---|---|---|---|---|---|
| | | Recording Charge | $ 20 | $ | |
| | | Surcharge | $ 5 | $ | Tax Bill: |
| | | State Recordation Tax | $ 35.20 | $ | |
| | | State Transfer Tax | $ | $ | C.B. Credit: |
| | | County Transfer Tax | $ | $ | |
| | | Other | $ | $ | Ag. Tax/Other: |
| | | Other | $ | $ | |

| 6 | Description of Property | District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LO |
|---|---|---|---|---|---|---|---|
| | SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | 2 | 0189844 | | | | ☐ |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR(3c) | Plat Ref. | SqFt/Acreage |
|---|---|---|---|---|---|
| WASHington Suburban Homes | 1 | C | | BB 9/78 | |

Location/Address of Property Being Conveyed (2)
4103 55ᵗʰ Ave, Bladensburg, MD. 20710

Other Property Identifiers (if applicable) | Water Meter Account No.

Residential ☐ or Non-Residential ☑   Fee Simple ☑ or Ground Rent ☐   Amount:
Partial Conveyance? ☐ Yes ☑ No   Description/Amt. of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

| 7 | Transferred From | Doc. 1 - Grantor(s) Name(s) | Doc. 2 - Grantor(s) Name(s) |
|---|---|---|---|
| | | Deno Fidelis Bocchi | |
| | | Mary M. Bocchi | |
| | | Doc. 1 - Owner(s) of Record, if Different from Grantor(s) | Doc. 2 - Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc. 1 - Grantee(s) Name(s) | Doc. 2 - Grantee(s) Name(s) |
|---|---|---|---|
| | | Americorp Mortgage Corp. | |

New Owner's (Grantee) Mailing Address
4103 55ᵗʰ Ave, Bladensburg, Md. 20710

| 9 | Other Names to Be Indexed | Doc. 1 - Additional Names to be Indexed (Optional) | Doc. 2 - Additional Names to be Indexed (Optional) |
|---|---|---|---|

| 10 | Contact/Mail Information | Instrument Submitted By or Contact Person | Return to Contact Person ☐ |
|---|---|---|---|
| | | Name: Ralph | |
| | | Firm: Transcontinental Title | Hold for Pickup ☐ |
| | | Address: 10 West Rd # 360 Towson, Md. 21204 | |
| | | Phone: (410) 823-2903 | Return Address Provided ☑ |

| 11 | Assessment Information | IMPORTANT: BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER |
|---|---|---|

Yes ☐ No ☑ Will the property being conveyed be the grantee's principal residence?
Yes ☐ No ☑ Does transfer include personal property? If yes, identify: _____
Yes ☐ No ☑ Was property surveyed? If yes, attach copy of survey (if recorded, no copy required).

Assessment Use Only - Do Not Write Below This Line

| Terminal Verification ☐ | Agricultural Verification ☐ | Whole ☐ | Part ☐ | Tran. Process Verification |
|---|---|---|---|---|
| Transfer Number: | Date Received: | Deed Reference: | Assigned Property No.: | |
| Year 19 | 19 | Geo. | Map | Sub | Block |

## Patricia Magee (x4574)

| | |
|---|---|
| **From:** | Susan Sherman <ssherman@rahaimsaints.com> |
| **Sent:** | Monday, May 16, 2016 9:51 AM |
| **To:** | Patricia Magee (x4574) |
| **Cc:** | Brenna Dolphin (x4342); Adam Singer (x4342) |
| **Subject:** | [SPAM]  FW: Tuesday hearings |
| **Attachments:** | novosel proof of payments.pdf; cushing loan mod.pdf |

Hello All,
I am following up on the hearings for this month:

Novosel  11-12332        They have the funds to pay the deficiency in full and we will be sending the funds, (proof of which is attached)

Fields 12-12019        I previously let your office know that he has secured the funds to pay in full.  We were waiting to hear from your office the balance due.   We sent payment to ALG for April and  May sent on 5/3/136

Pierce 12-13371        I cannot pull up calendar at the moment but hopefully, this has been withdrawn since we withdrew our response

*Cont'd to 6-28*

Cushing 13-13049        This is an MFR where Debtor is trying to get a loan modification. Payments sent to ALG on 4/15 and 5/3/2016, can we pass to September for her to make her trial period payments,  which start in June, directly to bank. (Attached is her load mod. trial period information)

Donahue 14-10903 – this is an MFR where we had already put post-petition arrears in plan prior to MFR being filed. So I think the post-petition amount currently in plan is close but waiting to hear from you the correct/exact figure? We have been sending payment to ALG, with last one on 4/15/16.

We look forward to hearing from you. Thanks

Best,
Susan Sherman
Paralegal for T. Poole, Esquire
Rahaim & Saints
2055 Limestone Rd
Wilmington, DE 19808
(p)302-892-9200
(f) 302-892-9209