**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| AMERICAN HOME MORTGAGE | : | Case No. 07-11047 (CSS) |
| HOLDINGS, INC., a Delaware corporation, et al.[1], | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | **Obj. Deadline: October 28, 2016 at 4:00 p.m. (ET)** |
| | : | **Hr'g Date:  November 7, 2016 at 10:00 a.m. (ET)** |

------------------------------------------------------------- x

**PLAN TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 363
AND 554 AUTHORIZING THE ABANDONMENT
AND DESTRUCTION OF DOCUMENTS AND RECORDS**

Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the trust (the "Plan

Trust") established pursuant to the *Amended Chapter 11 Plan of Liquidation of the Debtors*

*Dated as of February 18, 2009* (the "Plan")[2] in connection with the Chapter 11 cases of the

above-captioned debtors (collectively, the "Debtors"), moves (the "Motion") this Court for entry

of an order (the "Document Destruction Order"), pursuant to sections 105, 363 and 554 of title

11 of the United States Code (the "Bankruptcy Code"), authorizing the Plan Trustee to abandon

and destroy or otherwise dispose of certain documents and records in accordance with the form

of order annexed hereto as Exhibit "A".  In support of the Motion, the Plan Trustee respectfully

relies on the declaration of Steven D. Sass, in his capacity as Plan Trustee, annexed hereto as

Exhibit "B", and represents and states as follows:

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp. , a New York corporation (8580).  The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

[2]  Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

## JURISDICTION

1.      The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105, 363 and 554 of the Bankruptcy Code, as complemented by Rule 6007 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

**A.      General Background**

2.      On August 6, 2007 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Thereafter, each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

3.      The Plan was confirmed under section 1129 of the Bankruptcy Code on February 23, 2009 [D.I. 7042].  The Plan became effective on November 30, 2010 (the "Effective Date").

4.      Pursuant to the Plan, as of the Effective Date, the Plan Trust was established and all of the Debtors' assets, causes of action, claims, rights and interests succeeded and transferred to, and vested in, the Plan Trust.  Steven D. Sass is the duly appointed Plan Trustee for the Plan Trust.  The Plan Trustee is vested with the rights, powers and benefits set forth in the Plan, Confirmation Order and Plan Trust Agreement.

**B.**      **The Debtors' Pre-petition Retention of Hard Copy Loan Files
and Previous Loan File Disposition Orders**

5.      In the ordinary course of the Debtors' pre-petition loan origination

business, the Debtors maintained individual loan files, including copies of consumer loan

applications, closing documents and home appraisals.  Pre-petition, the Debtors' loan origination

personnel transmitted mortgage loan files to the Debtors' headquarters in Melville, NY

(collectively, the "Hard Copy Loan Files") for central storage in compliance with applicable

federal and state laws.  The Debtors utilized American Corporate Record Center, Inc. ("ACRC")

as their main storage vendor, with operations located at a warehouse in Melville, NY (the

"ACRC Facility").  In addition to the ACRC Facility, Hard Copy Loan Files were maintained at

the Debtors' headquarters as well as other storage facilities (including, but not limited to, Moises

Document Storage, Iron Mountain and GRM Information Management Services) for employee

review and analysis in the ordinary course of their businesses.

6.      In September of 2005, the Debtors implemented a practice intended to

image all new Hard Copy Loan Files and, since that time, have imaged approximately 490,000

loans (the "E-Loan Files").  The E-Loan Files are stored on servers maintained by the Plan

Trustee.

7.      Due to, among other things, the volume of Hard Copy Loan Files and

financial concerns surrounding the ACRC Facility, on December 14, 2007, the Debtors filed

their motion [D.I. 2395] (the "First Disposition Motion") seeking entry of an order, pursuant to

sections 105, 363 and 554 of the Bankruptcy Code, authorizing the Debtors to abandon and

destroy those Hard Copy Loan Files that had been imaged (the "Duplicate Hard Copy Loan

Files") or, alternatively, to return such files (to the extent a request was received prior to

destruction of same) to the owner of the related loans upon written request (the "Loan File

Return Declaration") and payment of all reasonable costs and expenses associated with the retrieval, review and return of such files.

8.      On January 14, 2008, the Court entered an order (the "First Disposition Order") authorizing the immediate abandonment and destruction of only those Duplicate Hard Copy Loan Files for loan applications that did not close (i.e., files related to withdrawn, canceled or rejected loans) (the "Imaged Withdrawn/Denied Files") [Docket No. 2724].

9.      The Debtors supplemented the First Disposition Motion on February 5, 2008 [D.I. 2888], seeking to establish a method by which Hard Copy Loan Files could be returned to the owners of the loans.  On February 19, 2008, the Court entered an order granting the Debtors' motion subject to certain restrictions and limitations [Docket No. 3010] (the "Second Disposition Order").  The Second Disposition Order authorized the Debtors to, among other things, return Hard Copy Loan Files to the legal owners and/or Master Servicers of the underlying loans (each, a "Requesting Party") to the extent such parties filed a Loan File Return Declaration by March 14, 2008 (the "Return Protocol").  The Second Disposition Order expressly provided that each Requesting Party shall be responsible for the reasonable costs and expenses (the "Return Costs") associated with the return of its requested Hard Copy Loan Files, the amount of such Return Costs being dependent upon the preferred delivery method.  The collateral documents such as original notes, mortgage copies, title insurance, etc. (the "Collateral Documents") found during the Debtors' review of the Hard Copy Loan Files and the recorded documents received from recording agencies (the "Trailing Documents") were required to be forwarded to the proper custodians or owners of the loans at the Debtors' expense and were not subject to the Return Protocol.

10.      On June 5, 2008, the Debtors filed a motion [D.I. 4387] (the "Third Disposition Motion") seeking authorization to destroy the Hard Copy Loan Files that were not

subject to a Loan File Return Declaration, postpetition stipulation, or an order to return (the

"Non-Requested Loan Files").

11.    On June 25, 2008, the Court authorized the Debtors to destroy the Non-

Requested Loan Files [Docket No. 4858] (the "Third Disposition Order"),[3] except for documents

relating to pending or threatened litigation against or relating to the Debtors or claims filed

against the Debtors (the "Claim Hold Documents")[4].

12.    On December 22, 2010, the Plan Trustee filed a motion seeking

application of the Second and Third Disposition Orders to all Hard Copy Loan Files and not just

those stored in the ACRC Facility [D.I. 9591] (the "Fourth Disposition Motion").  On January

31, 2011, the Court entered an order granting the Fourth Disposition Motion [D.I. 9727] (the

"Fourth Disposition Order").

13.    The Fourth Disposition Order authorized the Plan Trustee to return all

requested Hard Copy Loan Files in accordance with the Return Protocol set forth in the Second

Disposition Order and to destroy any Non-Requested Loan Files in accordance with the Third

Disposition Order.  The Fourth Disposition Order contained certain additional restrictions not set

forth in the Second or Third Disposition Orders, including, *inter alia*, a requirement to maintain

the mortgage loan files for mortgages originated in and after 2003; however, such files could be

maintained electronically.

14.    Thus, following the Fourth Disposition Order, the Plan Trustee had

authority to destroy all Non-Requested Loan Files that (i) were Duplicate Hard Copy Loan Files

or (ii) related to loans that were (A) originated prior to 2003 or (B) separately imaged or had a

---

[3]  At the hearing held on June 25, 2008, with respect to the Third Disposition Motion, the Debtors agreed they would not destroy the Non-Requested Loan Files insured by Triad Guaranty Insurance Corporation because such files were related to pending litigation.  Additionally, the Debtors also represented to the Court that they would not destroy any files related to two individual borrowers, Elisabeth Jackson and Edmund Andrews.

corresponding E-Loan File, provided that in either case such Non-Requested Loan Files were not

Claim Hold Documents.

       15.     On January 30, 2015, the Plan Trustee filed a motion [D.I. 11058] (the

"Fifth Disposition Motion") seeking to abandon and destroy approximately 7,400 boxes of

documents containing:

    a.   Miscellaneous Business Records (as defined in the Fifth Disposition
       Motion);

    b.   Hard Copy Loan Files for loans originated in 2003, 2004 and prior to
       September of 2005, which were not subject to a Loan File Return
       Declaration (the "2003/2004/2005 Loan Files"); and

    c.   Hard Copy Loan Files subject to the Return Protocol but unreturnable
       because either (i) the related Requesting Party had not provided the
       Plan Trustee with sufficient delivery instructions and/or refused to pay
       the Return Costs as required under the Second Disposition Order, or
       (ii) the related Requesting Party no longer wanted the Hard Copy Loan
       Files and had not withdrawn its Loan File Return Declaration
       (collectively, the "Unreturned Loan Files").

       16.     On February 20, 2015, the Court authorized the Plan Trustee to destroy (i)

the Miscellaneous Business Records, (ii) the 2003/2004/2005 Loan Files and (iii) Unreturned

Loan Files [D.I. 11091] (the "Fifth Disposition Order"), subject to certain conditions including

the "review period" protocol set forth therein.

       17.     On October 9, 2015, the Plan Trustee filed a motion [D.I. 11146] (the

"Sixth Disposition Motion") seeking to destroy (1) any of the approximately 19,000 Collateral

Documents and Trailing Documents (the "Unreturned Collateral Documents") the Plan Trustee

was unable to successfully return to the respective custodians or owners thereof subject to the

protocol specified therein and (2) certain servers and other electronic storage media, namely, the

Designated Servers, Designated Backup Tapes and Hard Drives (each, as defined in the Sixth

---

[4]  The Trustee has been the recipient of numerous third-party subpoenas which have sought loan files and
other Debtor Documents.  As of today's date, the Trustee is in compliance with any and all outstanding
subpoenas.

Disposition Motion).   On November 5, 2015, the Court granted the Sixth Disposition Motion [D.I. 11162] (the "Sixth Disposition Order"), subject to a 90-day review period for the MS Plaintiffs (as defined in the Sixth Disposition Order).

18.    Thus, the Plan Trustee currently has authority to destroy – and in fact has destroyed – all of its documents and records **except** its remaining servers and electronic storage media comprised of: (i) forty-eight active servers and four dormant servers and (ii) approximately 5,000 server back-up tapes which contain copies of the applications and data stored on the servers dating back to 2002 (collectively, the "Remaining Records").  The Remaining Records have been consolidated and are currently located in the Plan Trustee's facility in Farmingdale, New York (the "Farmingdale Facility").

19.    Paragraph 67 of the Confirmation Oder provides, in relevant part, that

[F]rom and after the Effective Date, the Plan Trustee shall preserve and maintain all documents, files, records and electronic data (including, but not limited to, emails and email server back-up tapes) (collectively, the "Records") transferred by the Debtors to or otherwise acquired by the Plan Trust in accordance with the Plan and/or Plan Trust Agreement, provided, however, that the Plan Trustee may, in its sole discretion and without the prior approval of the Plan Oversight Committee or the Bankruptcy Court (i) abandon or destroy Records in accordance with, and to the extent permitted by the Orders previously entered by the Bankruptcy Court concerning the destruction of documents [D.I. 2724, 3010 and 4858] (the "Destruction Orders"), each of which Destruction Orders shall be preserved and shall continue in full effect against the Plan Trustee as successor to the Debtors, unless the Plan Trustee files a motion on notice to all interested Parties (including, but not limited to, the Teachers' Retirement System of Oklahoma and the Oklahoma Police Pension and Retirement System (collectively, the "Securities Plaintiffs") seeking to modify any such Destruction Order and (ii) abandon or transfer Records in accordance with, and to the extent permitted by, prior Orders of the Bankruptcy Court concerning the preservation and/or transfer of Records with respect to certain third parties.  Except as permitted by the Destruction Orders, the Plan Trustee shall not destroy any Records absent further Order of the Bankruptcy Court after notice to all interest Parties (including, but not limited to, the Securities Plaintiffs) with an opportunity to be heard.

See also Article 8(F)(5)(xvii) of Plan.

## RELIEF REQUESTED

20.    By this Motion, the Plan Trustee requests entry of an order pursuant to sections 105, 363, and 554 of the Bankruptcy Code authorizing the Plan Trustee to abandon and destroy or otherwise dispose of the Remaining Records at the Farmingdale Facility. The Plan Trustee requests that he be authorized to destroy such documents in a manner consistent with the standard set forth in 16 C.F.R. § 682.3 and that he be exempt from any other inconsistent federal or state laws or regulations, including with respect to the disposal or retention of non-public consumer information.

## BASIS FOR RELIEF

### A.    Applicable Statutory Authority

21.    Section 554 of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Further, section 363 of the Bankruptcy Code permits a trustee to "use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Additionally, section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy court's power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).

22.    The destruction or other disposal of the Remaining Records currently maintained by the Plan Trustee for which the Plan Trustee is requesting authorization herein to

abandon and destroy or otherwise dispose of is also governed by Bankruptcy Rule 6007, which

provides, in pertinent part, as follows:

> Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States Trustee, all creditors, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code.  A party in interest may file and serve an objection within 15 days of the mailing of the notice, or within the time fixed by the court.  If a timely objection is made, the court shall set a hearing on notice to the United States Trustee and to the other entities as the court may direct.

Fed. R. Bankr. P. 6007.

23.    "The abandonment power embodied in Section 554 enables the trustee to

rid the estate of burdensome or worthless assets, and so speeds the administration of the estate …

and also protects the estate from diminution.  In such manner, abandonment serves the creditors'

interest in expeditiously obtaining a fair amount on settlement of their claims."  In re Quanta

Resources Corp., 739 F.2d 912, 916 (3d Cir. 1984).

24.    A trustee's decision to abandon property of the estate is discretionary.  See

In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003).  As is the case with a trustee's decision to

reject an executory contract,[5] the business judgment standard applies to a trustee's decision to

abandon property that is either of inconsequential value or burdensome to the estate.  Id.  ("The

trustee's power to abandon property is discretionary . . . .  The Court only needs to find the

trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4)

within the trustee's scope of authority.") (internal citations omitted); Mele v. First Colony Ins.

Co., 127 B.R. 82, 85 (D.D.C. 1991) ("[A]bandonment provisions are designed to allow the

trustee to relinquish assets that would be a financial drain on the estate, or relieve the trustee of

---

[5]  The decision to reject an executory contract is subject to the court's finding that such decision is a product of the debtor in possession's sound business judgment.  See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp., 872 F.2d 36, 39 (3d Cir. 1989); see also In re Fleming Companies, Inc., 308 B.R. 689, 691 (Bankr. D. Del. 2004).

the financial burden of administering inconsequential assets that would cost more than they are worth to the estate.").

**B.      The Plan Trustee Should Be Permitted To Destroy The Remaining Records In Connection With The Closing Of These Chapter 11 Cases**

             25.      The Plan Trustee's abandonment of the Remaining Records is warranted under section 554(a) of the Bankruptcy Code, and their destruction (including the incurrence of costs associated with destruction) is permitted under sections 363 and 105 of the Bankruptcy Code.

             26.      The Plan Trustee no longer needs the Remaining Records for any business operations or for completing the wind-down of these chapter 11 cases, which the Plan Trustee anticipates will be substantially concluded by the end of 2017.  Specifically, the Plan Trustee is preparing to make a second distribution to creditors in the first quarter of 2017 and will be exiting from the Farmingdale Facility when the existing lease concludes on February 28, 2017[6].  Given the imminent close of these cases and exit from the Farmingdale Facility which houses the Remaining Records, the Plan Trustee needs authority to abandon and destroy the Remaining Records as soon as possible so he can undertake an orderly disposal of the servers and storage media over the next several months.

---

[6]  To the extent the Plan Trustee must renew the lease at the Farmingdale Facility, he must provide notice to the landlord on or before November 1, 2016.  During the previous renewal, the Farmingdale Facility landlord was not amenable to a month-to-month lease arrangement.

27.     The Remaining Records are not related to any known pending litigations against the Debtors, nor are they necessary for any third-party litigations as the Plan Trustee has complied with all outstanding subpoena requests to the best of his ability based on the information provided by the subpoenaing party.[7]  Moreover, the small group of parties who expressed interest with respect to the Debtors' remaining documents and records in connection with the Fifth and Sixth Disposition Motions were given an opportunity to (and did) review and copy any remaining documents and records in the Farmingdale Facility which they deemed relevant.

28.     Given that the Plan Trustee must dispose of the Remaining Records in order to close these cases, and because the Remaining Records provide no benefit to the limited remaining administration of these estates nor are they subject to any outstanding third-party requests, the Plan Trustee seeks immediate authority to abandon and dispose of the Remaining Records.  The Plan Trustee anticipates it will complete the destruction process over a several month period in connection with its exit from the Farmingdale Facility and the final wind-down and closing of these cases.

**NOTICE**

29.     Notice of this Motion will be provided to (i) the United States Trustee for the District of Delaware; (ii) all claimants whose claims have not been resolved; (iii) all known parties to threatened or pending litigation involving the Debtors; (iv) counsel to Bank of America, N.A., as Administrative Agent for the lenders under that certain Second Amended and

---

[7] For all third-party subpoenas seeking loan files in which the subpoenaing party has provided the Plan Trustee with Debtor loan numbers and/or sufficient information on the borrower and/or property address, all available imaged loan files have been produced in response to the subpoena.  In instances where the subpoenaing party has not provided the Plan Trustee with Debtor loan numbers and/or sufficient information on the borrower and/or property address, despite request for such information, the Plan Trustee has been unable, and is unable, to provide copies of any available imaged loan files. While some subpoenaing parties have reserved the right to request additional loan files or seek other documents from the Remaining Records, there are no pending specific requests for such additional loan files/documents.

Restated Credit Agreement dated August 10, 2006; (v) counsel to the Agent for the Debtors'

Postpetition Lender; (vi) the offices of the attorneys general of the fifty states and the District of

Columbia; (vii) the Federal Trade Commission; (viii) counsel to Homeward Residential

Mortgage Servicing, Inc.; (ix) the Securities and Exchange Commission; (x) Staten Island Legal

Services; (xi) all parties entitled to notice under Del. Bankr. LR 2002-1(b); (xii) Securities

Plaintiffs (see Paragraph 67 of the Confirmation Order); and (xiii) parties who have served a

third-party subpoena on the Plan Trustee.  In light of the nature of the relief requested herein, the

Plan Trustee submits that no other or further notice is required.


*[The remainder of this page has been left intentionally blank]*

## CONCLUSION

WHEREFORE, the Plan Trustee respectfully requests that this Court enter an

order (i) authorizing the Plan Trustee to immediately abandon and destroy or otherwise dispose

of the Remaining Records and (ii) granting the Plan Trustee any further relief that the Court

deems just and proper.


Dated: October 14, 2016             YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
        Wilmington, Delaware

                                */s/ Patrick A. Jackson*
                                Sean M. Beach (No. 4070)
                                Patrick A. Jackson (No. 4976)
                                Rodney Square
                                1000 North King Street
                                Wilmington, Delaware 19801
                                Telephone: (302) 571-6600
                                Facsimile: (302) 571-1253

                                -and-

                                HAHN & HESSEN LLP
                                Mark S. Indelicato
                                Edward L. Schnitzer
                                488 Madison Avenue
                                New York, New York 10022
                                Telephone: (212) 478-7200
                                Facsimile: (212) 478-7400

                                *Co-Counsel to the Plan Trustee*