IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------ x
In re:                                                             :   Chapter 11
                                                                   :
AMERICAN HOME MORTGAGE                                             :   Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, *et al.*[1],               :
                                                                   :   Jointly Administered
  Debtors.                                               :
                                                                   :   **Obj. Deadline: October 28, 2016 at 4:00 PM (ET)**
                                                                   :   **Hr'g Date: November 7, 2016 at 10:00 AM (ET)**
                                                                   :
------------------------------------------------------------------ x

**PLAN TRUSTEE'S MOTION FOR AN ORDER PURSUANT TO §§ 105
AND 1142 OF THE BANKRUPTCY CODE (I) AUTHORIZING SECOND
DISTRIBUTION TO HOLDERS OF ALLOWED GENERAL
UNSECURED CLAIMS AND (II) GRANTING RELATED RELIEF,
INCLUDING CLARIFICATION OF THE PLAN AND ENFORCEMENT
OF CERTAIN PLAN PROVISIONS AND COURT ORDERS**

  Steven D. Sass, as liquidating trustee (the "Plan Trustee") for the trust (the "Plan Trust") established pursuant to the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 (the "Plan")[2] in connection with the chapter 11 cases of the above-captioned debtors (the "Debtors"), hereby moves (the "Motion") this Court, pursuant to Articles 14(A)(8), 14(A)(12), and 14(P) of the Plan and sections 105(a) and 1142 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), for entry of an order (i) authorizing the Plan Trustee to make a second distribution to holders of Allowed General Unsecured Claims,

---

 [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp. , a New York corporation (8580).  The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

 [2] All terms used but not defined herein shall have the meaning ascribed to such terms under the Plan.

and (ii) granting related relief, including clarification of the Plan and enforcement of certain Plan provisions and Court orders, all as discussed further below. In support of this Motion, the Plan Trustee relies on the declaration of Steven D. Sass attached as <u>Exhibit B</u> hereto. In further support of this Motion, the Plan Trustee respectfully represents as follows:

## JURISDICTION AND STATUTORY AUTHORITY

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware. In addition, Article 14(A)(12) of the Plan, which was incorporated by reference in the Court's order confirming the Plan [D.I. 7042] (the "<u>Confirmation Order</u>"), provides that the Court shall retain post-confirmation jurisdiction "to issue orders in aid of execution, implementation, or consummation of the Plan." (Plan Art. 14(A)(12); *see* Conf. Ord. ¶ 68). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. The statutory bases for the relief sought herein are sections 105(a) and 1142 of the Bankruptcy Code.

## BACKGROUND

**A.    General Background**

3. On August 6, 2007 (the "<u>Petition Date</u>"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Between the Petition Date and the Plan Effective Date (as hereinafter defined), each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

4. On February 23, 2009, the Court entered the Confirmation Order. The Plan became effective on November 30, 2010 (the "Plan Effective Date").

5. Pursuant to the Plan, as of the Plan Effective Date, the Plan Trust was established, which succeeded to all of the Debtors' assets, causes of action, claims, rights and interests. Steven D. Sass is the duly appointed Plan Trustee and, in this capacity, is vested with the rights, powers, and benefits set forth in the Plan, Confirmation Order, and Plan Trust Agreement.

6. Since his appointment, the Plan Trustee has overseen the liquidation and monetization of Plan Trust Assets, the payment or other resolution of substantially all secured, administrative, and priority claims ("S/A/P Claims") payable under the Plan, and the litigation or other resolution of substantially all general unsecured claims payable under the Plan. As of September 30, 2016, the Plan Trust holds $17,888,924 in cash and cash equivalents, including reserved amounts for Disputed Claims and Plan Trust expenses.

**B.    The Initial GUC Distribution and Proposed Second GUC Distribution**

7. The Plan authorizes the Plan Trustee to make interim distributions on account of Allowed General Unsecured Claims, subject to Plan Oversight Committee approval, provided that the Plan Trust retains (i) sufficient reserves for Plan Trust Operating Expenses, Disputed S/A/P Claims and Unsecured Claims, and (ii) "amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Plan Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Plan Trust in accordance with th[e] Plan or the Plan Trust Agreement." (Plan Art. 9(A)(2)).

8. On December 12, 2014, the Court entered its *Order Pursuant to §§ 105 and 1142 of the Bankruptcy Code (I) Authorizing First Distribution to Holders of Allowed General Unsecured Claims and (II) Granting Related Relief, Including Clarification of the Plan and Enforcement of Certain Plan Provisions and Court Orders* [D.I. 11050] (the "Initial Distribution Order"), in accordance with which the Plan Trustee distributed (or reserved, as applicable) approximately $22 million to Holders of Allowed General Unsecured Claims beginning in May 2015 (the "Initial GUC Distribution").

9. Subject to the approval of the Plan Oversight Committee, the Plan Trustee proposes to make a second distribution to Holders of Allowed General Unsecured Claims (the "Second GUC Distribution").[3] The ultimate distribution amount is not yet determined, and will be at the discretion of the Plan Trustee in consultation with the Plan Oversight Committee.

**C.    Distributions to Wholly-Owned Non-Debtor Subsidiaries**

10. Non-debtors American Home Securities, LLC, AHM SPV III, LLC, AHM SPV I, LLC, and Melville Reinsurance Corp. (collectively, the "Non-Debtor Subsidiaries") are (or were) wholly-owned by Debtors AHM Holdings, AHM Investment, and AHM Corp., as applicable. On the Debtors' schedules of assets and liabilities, Non-Debtor Subsidiaries were scheduled as having approximately $50 million in the aggregate of unsecured, non-priority claims (collectively, the "Non-Debtor Subsidiary Claims"), as set forth in the following table:

---

[3] Information regarding the Allowed General Unsecured Claims against each Estate is available on the claims agent's website at http://dm.epiq11.com/AHM/Claim.

| Estate | Non-Debtor Subsidiary | Total Claim Amount |
|---|---|---|
| AHM Investment | American Home Securities, LLC | $2,650,000 |
| AHM Investment | AHM SPV III, LLC | $24,196,644 |
| AHM SV | AHM SPV I, LLC | $7,642,241 |
| AHM Corp. | AHM SPV I, LLC | $14,114,859 |
| AHM Corp. | Melville Reinsurance Corp. | $1,356,873 |
| | **TOTAL** | **$49,960,617** |

11. The Non-Debtor Subsidiary Claims were not scheduled as contingent, unliquidated, or disputed, and, as a result, are presently "Allowed" under the Plan. (*See* Plan Art. 1(A) (definition "Allowed")). Owing to the legal and practical difficulties with making distributions on Non-Debtor Subsidiary Claims at the time of the Initial GUC Distribution, however, the Initial Distribution Order authorized and directed the Plan Trustee to treat the Non-Debtor Subsidiary Claims as "Disputed Claims" under the Plan, and to reserve any distributions that would otherwise have been made on account of such claims pending further order of the Court. (Init. Distrib. Ord. ¶ 7).

12. American Home Securities, LLC and Melville Reinsurance Corp. have been dissolved in accordance with Delaware and Vermont state law, respectively (each entity having no known creditors and being a wholly-owned subsidiary of the Plan Trust at the time of its respective dissolution); thus, any distribution to those Non-Debtor Subsidiaries would presumably go unclaimed and revert to the Plan Trust in accordance with the Plan. The other Non-Debtor Subsidiaries are wholly owned by the Plan Trust and do not have any creditors that

the Plan Trustee is aware of,[4] so it is likely that any distributions on their Non-Debtor Subsidiary Claims would simply be returned to the Plan Trust as equity distributions. Accordingly, for purposes of the Second GUC Distribution and any further distributions under the Plan, the Plan Trustee proposes to deem the Non-Debtor Subsidiary Claims satisfied and allocate any distributions that would otherwise have been made on account of such claims to the Plan Trust.

### D.  Undeliverable and Uncashed Distributions

13. The Plan permits the Plan Trustee to make distributions by mailing checks to Holders of Allowed Claims. (Plan Art. 9(E) & (G)). Article 9(H) of the Plan (governing undeliverable distributions) provides that if a distribution is returned "for lack of a current address for the Holder [of an Allowed Claim] or otherwise, the Plan Trustee shall file with the Bankruptcy Court the name, if known, and last known address of the Holder and the reason for its inability to make payment." (*Id.* Art. 9(H)). If the distribution still cannot be made after 90 days thereafter, that distribution "*and any further payment or distribution to the Holder*" of the Allowed Claim

> shall be distributed to the Holders of Allowed Claims in the appropriate Class or Classes, and the Allowed Claim shall be deemed satisfied and released, with no recourse to the Plan Trust, the Plan Trustee or the Plan Trust Assets, to the same extent as if payment or distribution had been made to the Holder of the Allowed Claim.

(*Id.* (emphasis added)).

---

[4] AHM SPV I, LLC was a nominal defendant, along with the Plan Trustee, in a 2013 adversary proceeding in an individual bankruptcy case in Ohio. However, the debtor-plaintiff's chapter 7 trustee has since settled the suit (subject to bankruptcy court approval) and, in connection with that settlement, released claims against all defendants, including AHM SPV I, LLC and the Plan Trustee. Accordingly, the Plan Trustee does not believe there are any creditors having claims against AHM SPV I, LLC.

14. Section 3.13 of the Plan Trust Agreement provides that if distributions to holders of Beneficial Interests in the Plan Trust are not claimed within six months after the distribution date,

> the holders of Beneficial Interests theretofore entitled to such unclaimed distributions shall cease to be entitled thereto and the unclaimed distributions for each such holders [*sic*] shall then be distributed on a Pro Rata basis to the Holders of Allowed Claims who have received and have claimed distributions and who are otherwise entitled to further distributions hereunder.

(Plan Tr. Agmt. § 3.13(b)).

15. On or about October 15, 2013, the Plan Trustee began making distributions under the Plan to holders of Allowed Priority Claims by mailing checks in accordance with Articles 9(E) and (G) of the Plan. Of these distributions (the "Priority Distributions"), (i) as of October 15, 2014, approximately 206 checks with net payments totaling $220,200 were returned as undeliverable for lack of a current address or otherwise (the "Undeliverable Priority Distributions"), and, (ii) as of October 15, 2014, approximately 205 checks with net payments totaling $147,012 had not been cashed or otherwise presented for collection (the "Uncashed Priority Distributions").[5] On September 3, 2014, the Plan Trustee filed a *Notice of Undeliverable Distributions* [D.I. 11030] including the name and last known address of the claimants to whom the Undeliverable Priority Distributions were directed.

16. The Initial Distribution Order authorized and directed the Plan Trustee to allocate the funds underlying any Undeliverable Priority Distributions that remained undeliverable as of December 2, 2014, among the Estates in accordance with the Plan's Stipulated Asset Allocation. (Init. Distrib. Ord. ¶ 11). The order also determined that the Uncashed Priority Distributions were "unclaimed distributions" subject to section 3.13 of the Plan Trust Agreement; accordingly,

---

[5] As these Priority Distributions were on account of employee wages, the Plan Trust made required tax withholdings and payroll deductions prior to disbursing the funds.

the Plan Trustee was authorized and directed to stop payment on such distributions and to allocate the underlying funds among the Estates in accordance with the Plan's Stipulated Asset Allocation.  (*Id.* ¶ 12).

17. On or about May 15 and June 24, 2015, the Plan Trustee made Initial GUC Distributions by mailing checks in accordance with Articles 9(E) and (G) of the Plan.  Of these distributions, approximately 642 checks with net payments totaling $456,198.25 either (i) were returned as undeliverable for lack of a current address or otherwise (the "Undeliverable GUC Distributions") or (ii) have not been cashed or otherwise presented for collection (the "Uncashed GUC Distributions").  On November 4 and December 10, 2015, respectively, the Plan Trustee filed a *Notice of Unclaimed Distributions* [D.I. 11061] and a *Notice of Uncashed Distributions* [D.I. 11075], which together included the name and last known address of the claimants to whom the Undeliverable GUC Distributions and Uncashed GUC Distributions were directed.  In response to these notices, certain claimants reached out to the Plan Trustee and were reissued checks.  Of these reissued checks, all of which were issued more than six months ago, approximately nine with net payments totaling $9,023.24 have not been cashed or otherwise presented for collection by the claimants.

18. Claims on account of which Undeliverable Priority Distributions, Uncashed Priority Distributions, Undeliverable GUC Distributions, and Uncashed GUC Distributions were made and remain outstanding are identified on Exhibit C attached hereto, which includes the claimant's name, claim number, and claim amount.  For purposes of the Second GUC Distribution and any further distributions under the Plan, the Plan Trustee proposes to treat the Claims on Exhibit C as disallowed and expunged, as discussed further below, and to allocate the Distributions that were attempted to be made on account of such claims to the Plan Trust.

19.     In addition, going forward, the Plan Trustee proposes to follow a single, uniform protocol for the handling of undeliverable, unclaimed, and uncashed Distributions, whereby (i) Distributions that cannot be successfully delivered or that remain uncashed within thirty (30) days after the Plan Trustee's filing of a notice on the docket will revert to the Plan Trust, and (ii) Claims on account of which Distributions have reverted to the Plan Trust will be deemed disallowed and expunged without further notice to any party or order of this Court.

**E.     Missing W-9 Forms**

20.     The Plan Trustee is required to file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) (Plan Tr. Agmt. § 3.7), which requires the Plan Trustee to have taxpayer identification numbers for the beneficiaries of the Plan Trust. *See* 26 U.S.C. § 6034A(a)(1) & Treas. Reg. § 1.671-4(a) (requiring trustee to file a separate statement with the trust's tax return for each beneficiary receiving a distribution in a tax year). Failure to comply with IRS reporting requirements could lead to penalties that would be payable from the corpus of the Plan Trust to the detriment of general unsecured creditors.

21.     The Plan Trustee has sent numerous requests to Holders of Allowed Claims to provide their taxpayer identification number on an IRS Form W-9. In the Initial Distribution Order, the Court authorized and directed the Plan Trustee to treat the Claims of Holders who had not provided executed Forms W-9 as "Disputed Claims" for purposes of the Initial GUC Distribution, and to reserve any distributions that would otherwise have been made on account of such Claims (the "Missing W-9 Distributions") pending receipt of executed Forms W-9 or further order of the Court.

22.     To date, approximately 137 Holders of Allowed General Unsecured Claims entitled to Distributions under the Plan, all of whom are identified on Exhibit D hereto, still have

not remitted executed Forms W-9.[6] The Plan Trustee proposes that if such Holders do not provide executed Forms W-9 by November 30, 2016, then (i) the Missing W-9 Distributions should revert to the Plan Trust, and (ii) Claims on account of which the Missing W-9 Distributions have reverted to the Plan Trust should be deemed disallowed and expunged. **Executed Forms W-9 should be directed to the AHM Liquidating Trust, Attn: Lynn K. Smalley, by mail to P.O. Box 10550, Melville, New York 11747, or email to general@americanhm.com.**

## RELIEF REQUESTED

23. By this Motion, the Plan Trustee seeks entry of an order, substantially in the form of the proposed order attached as Exhibit A hereto (the "Proposed Order"), (i) authorizing the Plan Trustee to make the Second GUC Distribution, and (ii) granting related relief, including the following:

- authorization and direction to treat the Non-Debtor Subsidiary Claims as satisfied and to allocate any Distributions that would otherwise have been made on account of such Claims to the Plan Trust;

- disallowance and expungement of the Claims identified on Exhibit C (Undeliverable Priority Distributions, Uncashed Priority Distributions, Undeliverable GUC Distributions, and Uncashed GUC Distributions), and authorization and direction to allocate the funds currently reserved on account of such Claims to the Plan Trust;

- authorization and direction to follow a single, uniform protocol for the handling of undeliverable, unclaimed, and uncashed Distributions, whereby (i) Distributions that cannot be successfully delivered or that remain uncashed within thirty (30) days after the Plan Trustee's filing of a notice on the docket will revert to the Plan Trust, and (ii) Claims on account of which Distributions have reverted to the Plan Trust will be

---

[6] There are a number of Allowed General Unsecured Claims that are *not* entitled to a Distribution under the Plan, either because they are subordinated to other General Unsecured Claims or because the total amount of the Distributions to the Holders of such Claims would not exceed the $50 De Minimis Distribution threshold. The Plan Trustee is missing Forms W-9 from several Holders of such Claims; however, unless and until Distributions are anticipated on account of such Claims, the Plan Trustee does not intend to follow up with such Holders to obtain executed Forms W-9.

- deemed disallowed and expunged without further notice to any party or order of this Court; and

- a determination that, with respect to any Holder of an Allowed Claim who is entitled to a Distribution and who has not remitted an executed Form W-9 to the Plan Trustee by November 30, 2016, (i) the Missing W-9 Distributions reserved for the benefit of such Holder will revert to the Plan Trust, and (ii) Claims on account of which the Missing W-9 Distributions have reverted to the Plan Trust shall be deemed disallowed and expunged without further notice to any party or order of this Court.

## BASIS FOR RELIEF REQUESTED

24. Section 1142(a) of the Bankruptcy Code provides that "any entity organized . . . for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court." 11 U.S.C. § 1142(a). Section 1142(b) of the Bankruptcy Code provides that "the court may direct . . . any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). In addition, § 105(a) of the Bankruptcy Code provides, in pertinent part, that the Court may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of th[e Bankruptcy Code]." 11 U.S.C. § 105(a).

25. These statutory provisions are borne out in the Plan, which requires the Plan Trust to "execute such documents, and take such other actions, as are necessary to effectuate the transactions provided for in th[e] Plan" (Plan Art. 14B), and expressly contemplates that the Court may enter

> an order directing any Person to execute or deliver or to join in the execution and delivery of any instrument or document reasonably necessary or reasonably appropriate to effect a transfer of properties dealt with by th[e] Plan, and to perform any other act . . . that is *reasonably necessary or reasonably appropriate for the consummation of the Plan*.

01:19093147.6                                    11

(*Id.* Art. 14(P) (emphasis added)).  To the latter end, the Plan's retention of jurisdiction provision specifically authorizes the Plan Trustee to "seek orders of the Bankruptcy Court approving the sale, transfer, assignment or other disposition of Plan Trust Assets *as appropriate to facilitate such transactions*," (*id.* Art. 14(A)(8) (emphasis added)), and reserves in this Court the jurisdiction "to issue orders in aid of execution, implementation, or consummation of the Plan" (*id.* Art. 14(A)(12)).

26.     As noted above, the Plan Trustee is authorized to make an interim distribution to Holders of Allowed General Unsecured Claims provided that the Plan Trust retains (i) sufficient reserves for Plan Trust Operating Expenses, Disputed S/A/P Claims and Unsecured Claims, and (ii) "amounts reasonably necessary to meet contingent liabilities, to maintain the value of the Plan Trust Assets during liquidation, and to satisfy other liabilities or expenses incurred by the Plan Trust in accordance with th[e] Plan or the Plan Trust Agreement." (Plan Art. 9(A)(2)).  The proposed Second GUC Distribution is proper.  For the reasons discussed below, the relief requested in this Motion will facilitate the making of this distribution, and is thus reasonably necessary or reasonably appropriate for the consummation of the Plan as contemplated by sections 105(a) and 1142 of the Bankruptcy Code and Article 14 of the Plan.

### I.     Approval of Distribution Mechanics

27.     The provisions of the Plan and Plan Trust Agreement relating to undeliverable and unclaimed distributions are all self-effectuating.  However, in the interest of full disclosure, and to provide parties in interest an opportunity to be heard with respect to the proposed distribution methodology, the Plan Trustee believes it appropriate to seek approval of the same, as contemplated by the Plan.  In addition, there are some practical and legal issues presented by the Second GUC Distribution that are not clearly spelled out in the Plan, including whether (and

if so, how) to go about making distributions to dormant Non-Debtor Subsidiaries with no current management.  The relief requested in the Motion on these and other issues pertaining to distribution mechanics will facilitate the Second GUC Distribution and, accordingly, is proper under sections 105(a) and 1142 of the Bankruptcy Code.

28.     <u>Undeliverable Distributions</u>.  As noted above, the Plan provides a procedure for the reversion of undeliverable distributions to the Plan Trust.  (Plan Art. 9(H)).  The Plan Trustee has complied with this procedure with respect to the Undeliverable Priority Distributions and Undeliverable GUC Distributions by filing notices of the same on the docket of these chapter 11 cases.  [D.I. 11030 & 11061].  Accordingly, under the Plan, these Distributions reverted to the Plan Trust and no further Distributions need be made on account of the underlying Claims.  (Plan Art. 9(H)).  The Proposed Order's decrees regarding the same will facilitate and maximize Distributions to other Creditors by (i) removing any doubt as to the Plan Trustee's right to allocate these undeliverable Distributions to the Plan Trust, (ii) providing that Claims for which Distributions were returned as undeliverable are disallowed, expunged, and entitled to no further distribution under the Plan, and (iii) providing a streamlined protocol for dealing with any Distributions that are returned as undeliverable in the future.

29.     <u>Uncashed Distributions</u>.  As noted above in paragraph 14, the Plan Trust Agreement provides for the automatic reversion of "unclaimed distributions" to the Plan Trust after six months.  (Plan Tr. Agmt. § 3.13(b)).  And in the Initial Distribution Order, the Court determined that the Uncashed Priority Distributions were "unclaimed distributions" within the meaning of the Plan Trust Agreement, and it authorized and directed the Plan Trustee to allocate the funds underlying such Uncashed Priority Distributions among the respective Estates in accordance with the Stipulated Asset Allocation.  (Init. Distrib. Ord. ¶ 12).  The Proposed

Order's decrees regarding Uncashed Priority Distributions and Uncashed GUC Distributions will facilitate and maximize Distributions to other Creditors by (i) removing any doubt as to the Plan Trustee's right to allocate the Uncashed GUC Distributions to the Plan Trust, (ii) providing that Claims on account of which Uncashed Priority Distributions and Uncashed GUC Distributions were made are disallowed, expunged, and entitled to no further distribution under the Plan, and (iii) providing a streamlined protocol for dealing with any uncashed Distributions in the future. And while the reversion of unclaimed distributions to the Plan Trust under the Plan Trust Agreement is self-effectuating and does not require prior notice to claimants, the Plan Trustee will serve the affected claimants with this Motion, thus providing them an opportunity to respond to the relief requested herein.

30.    <u>Non-Debtor Subsidiary Claims</u>.  As noted above, American Home Securities, LLC and Melville Reinsurance Corp. have been dissolved in accordance with Delaware and Vermont state law, respectively; thus, any distribution to those Non-Debtor Subsidiaries would presumably go unclaimed and revert to the Plan Trust in accordance with the Plan.  And given that the other Non-Debtor Subsidiaries are wholly owned by the Plan Trust and do not appear to have any creditors, it is likely that distributions on their Non-Debtor Subsidiary Claims would simply be returned to the Plan Trust as equity distributions.  Accordingly, the Plan Trustee submits that it is appropriate for purposes of the Second GUC Distribution and any further distributions under the Plan to deem the Non-Debtor Subsidiary Claims satisfied and allocate any distributions that would otherwise have been made on account of such claims to the Plan Trust.

**II.    Missing W-9 Forms**

31.    As noted above, the Plan Trustee is required to file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) (Plan Tr. Agmt. § 3.7), which

requires the Plan Trustee to have taxpayer identification numbers for the beneficiaries of the Plan Trust.  *See* 26 U.S.C. § 6034A(a)(1) & Treas. Reg. § 1.671-4(a) (requiring trustee to file a separate statement with the trust's tax return for each beneficiary receiving a distribution in a tax year).  Failure to comply with IRS reporting requirements could lead to penalties that would be payable from the corpus of the Plan Trust to the detriment of general unsecured creditors.  Accordingly, the Plan Trustee submits it is in the interest of the Plan Trust and its beneficiaries to set a final deadline of November 30, 2016, by which time Holders of Allowed Claims entitled to Distributions must provide executed Forms W-9 to the Plan Trustee, or else (i) the Missing W-9 Distributions reserved for the benefit of such Holder will revert to the Plan Trust and (ii) Claims on account of which the Missing W-9 Distributions have reverted to the Plan Trust shall be deemed disallowed and expunged without further notice to any party or order of this Court.

### NOTICE

32.     Notice of the Motion has been provided to (i) the United States Trustee for the District of Delaware, (ii) the Plan Oversight Committee, (iii) claimants identified on <u>Exhibit C</u> (at their last known addresses), (iv) claimants who are entitled to receive Distributions under the Plan but from whom the Plan Trustee has not yet received a Form W-9 (at their last known addresses); (v) the Manager of AHM SPV I, LLC and AHM SPV III, LLC; and (vi) those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein and the terms of the Plan, the Plan Trustee submits that no other or further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Plan Trustee respectfully requests entry of an order substantially in the form of the Proposed Order, (i) authorizing the Plan Trustee to make the Second GUC Distribution, (ii) granting related relief set forth in paragraph 23 above, and (iii) granting the Plan Trustee such other and further relief as this Court deems just and proper.

Dated:   Wilmington, Delaware
         October 14, 2016

                YOUNG CONAWAY STARGATT & TAYLOR, LLP

                */s/ Patrick A. Jackson*

                Sean M. Beach (No. 4070)
                Patrick A. Jackson (No. 4976)
                Rodney Square
                1000 North King Street
                Wilmington, Delaware 19801
                Telephone: (302) 571-6600
                Facsimile: (302) 571-1253

                -and-

                HAHN & HESSEN LLP
                Mark S. Indelicato
                Edward L. Schnitzer
                488 Madison Avenue
                New York, New York  10022
                Telephone:  (212) 478-7200
                Facsimile: (212) 478-7400

                *Counsel for the Plan Trustee*