## EXHIBIT B

**Sass Declaration**

01:19093147.6

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
In re:                                                              :    Chapter 11
                                                                    :
AMERICAN HOME MORTGAGE                                              :    Case No. 07-11047 (CSS)
HOLDINGS, INC., a Delaware corporation, *et al.*[1],                :
                                                                    :    Jointly Administered
    Debtors.                                     ::
                                                                    :
---------------------------------------------------------------- x

**DECLARATION OF STEVEN D. SASS IN SUPPORT OF HIS
MOTION FOR AN ORDER PURSUANT TO §§ 105 AND 1142
OF THE BANKRUPTCY CODE (I) AUTHORIZING SECOND
DISTRIBUTION TO HOLDERS OF ALLOWED GENERAL
UNSECURED CLAIMS AND (II) GRANTING RELATED RELIEF,
INCLUDING CLARIFICATION OF THE PLAN AND ENFORCEMENT
OF CERTAIN PLAN PROVISIONS AND COURT ORDERS**

1.  My name is Steven D. Sass. I am over the age of 18 and competent to testify and make this Declaration (the "Declaration"). I am the Plan Trustee, as defined in the Amended Chapter 11 Plan of Liquidation of the Debtors Dated as of February 18, 2009 [D.I. 7029] (the "Plan").

2.  In my capacity as Plan Trustee, I am responsible for, among other things, the reconciliation of claims against the Debtors and their estates, and the distribution of assets of the AHM Liquidating Trust (the "Plan Trust") to creditors in accordance with the Plan and subject to applicable orders of this Court.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: American Home Mortgage Holdings, Inc. (6303); American Home Mortgage Investment Corp., a Maryland corporation (3914); American Home Mortgage Acceptance, Inc., a Maryland corporation (1979); AHM SV, Inc. (f/k/a American Home Mortgage Servicing, Inc.), a Maryland corporation (7267); American Home Mortgage Corp., a New York corporation (1558); American Home Mortgage Ventures LLC, a Delaware limited liability company (1407); Homegate Settlement Services, Inc., a New York corporation (7491); and Great Oak Abstract Corp. , a New York corporation (8580). The mailing address for all of the Debtors is: AHM Liquidating Trust, P.O. Box 10550, Melville, New York 11747.

01:19093147.6

3.       I am authorized to submit this Declaration on behalf of the Plan Trust in support of the *Motion for an Order Pursuant to §§ 105 and 1142 of the Bankruptcy Code (I) Authorizing Second Distribution to Holders of Allowed General Unsecured Claims and (II) Granting Related Relief, Including Clarification of the Plan and Enforcement of Certain Plan Provisions and Court Orders* (the "Motion").[2]

4.       All facts set forth in this Declaration are based upon my personal knowledge, upon my review of relevant documents, upon my opinion based upon my experience and knowledge of the Debtors' businesses, the claims filed against the Debtors in these chapter 11 cases, and the assets of the Trust, or upon information provided to me by Plan Trust employees or advisors.  If I were called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

**A.       The Initial GUC Distribution and Proposed Second GUC Distribution**

5.       On December 12, 2014, the Court entered its *Order Pursuant to §§ 105 and 1142 of the Bankruptcy Code (I) Authorizing First Distribution to Holders of Allowed General Unsecured Claims and (II) Granting Related Relief, Including Clarification of the Plan and Enforcement of Certain Plan Provisions and Court Orders* [D.I. 11050] (the "Initial Distribution Order"), in accordance with which I distributed (or reserved, as applicable) approximately $22 million to Holders of Allowed General Unsecured Claims beginning in May 2015 (the "Initial GUC Distribution").

6.       Subject to the approval of the Plan Oversight Committee, I propose to make a second distribution to Holders of Allowed General Unsecured Claims (the "Second GUC

---

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Distribution"). The ultimate distribution amount is not yet determined, and will be at my discretion in consultation with the Plan Oversight Committee.

**B.    Distributions to Wholly-Owned Non-Debtor Subsidiaries**

7.    Non-debtors American Home Securities, LLC, AHM SPV III, LLC, AHM SPV I, LLC, and Melville Reinsurance Corp. (collectively, the "Non-Debtor Subsidiaries") are (or were) wholly-owned by Debtors AHM Holdings, AHM Investment, and AHM Corp., as applicable. On the Debtors' schedules of assets and liabilities, Non-Debtor Subsidiaries were scheduled as having approximately $50 million in the aggregate of unsecured, non-priority claims (collectively, the "Non-Debtor Subsidiary Claims"), as set forth in the following table:

| Estate | Non-Debtor Subsidiary | Total Claim Amount |
|---|---|---|
| AHM Investment | American Home Securities, LLC | $2,650,000 |
| AHM Investment | AHM SPV III, LLC | $24,196,644 |
| AHM SV | AHM SPV I, LLC | $7,642,241 |
| AHM Corp. | AHM SPV I, LLC | $14,114,859 |
| AHM Corp. | Melville Reinsurance Corp. | $1,356,873 |
|  | **TOTAL** | **$49,960,617** |

8.    The Non-Debtor Subsidiary Claims were not scheduled as contingent, unliquidated, or disputed, and, as a result, are presently "Allowed" under the Plan. (*See* Plan Art. 1(A) (definition "Allowed")). Owing to the legal and practical difficulties with making distributions on Non-Debtor Subsidiary Claims at the time of the Initial GUC Distribution, however, the Initial Distribution Order authorized and directed me to treat the Non-Debtor Subsidiary Claims as "Disputed Claims" under the Plan, and to reserve any distributions that would otherwise have been made on account of such claims pending further order of the Court. (Init. Distrib. Ord. ¶ 7).

9.  American Home Securities, LLC and Melville Reinsurance Corp. have been dissolved in accordance with Delaware and Vermont state law, respectively (each entity having no known creditors and being a wholly-owned subsidiary of the Plan Trust at the time of its respective dissolution); thus, any distribution to those Non-Debtor Subsidiaries would presumably go unclaimed and revert to the Plan Trust in accordance with the Plan. The other Non-Debtor Subsidiaries are wholly owned by the Plan Trust and do not have any creditors that I am aware of,[3] so it is likely that any distributions on their Non-Debtor Subsidiary Claims would simply be returned to the Plan Trust as equity distributions. Accordingly, for purposes of the Second GUC Distribution and any further distributions under the Plan, I propose to deem the Non-Debtor Subsidiary Claims satisfied and allocate any distributions that would otherwise have been made on account of such claims to the Plan Trust.

**C. Undeliverable and Uncashed Distributions**

10. On or about October 15, 2013, I began making distributions under the Plan to holders of Allowed Priority Claims by mailing checks in accordance with Articles 9(E) and (G) of the Plan. Of these distributions (the "Priority Distributions"), (i) as of October 15, 2014, approximately 206 checks with net payments totaling $220,200 were returned as undeliverable for lack of a current address or otherwise (the "Undeliverable Priority Distributions"), and, (ii) as of October 15, 2014, approximately 205 checks with net payments totaling $147,012 had not

---

[3] AHM SPV I, LLC was a nominal defendant, along with the Plan Trustee, in a 2013 adversary proceeding in an individual bankruptcy case in Ohio. However, the debtor-plaintiff's chapter 7 trustee has since settled the suit (subject to bankruptcy court approval) and, in connection with that settlement, released claims against all defendants, including AHM SPV I, LLC and the Plan Trustee. Accordingly, the Plan Trustee does not believe there are any creditors having claims against AHM SPV I, LLC.

been cashed or otherwise presented for collection (the "Uncashed Priority Distributions").[4] On September 3, 2014, I filed a *Notice of Undeliverable Distributions* [D.I. 11030] including the name and last known address of the claimants to whom the Undeliverable Priority Distributions were directed.

11.     The Initial Distribution Order authorized and directed me to allocate the funds underlying any Undeliverable Priority Distributions that remained undeliverable as of December 2, 2014, among the Estates in accordance with the Plan's Stipulated Asset Allocation. (Init. Distrib. Ord. ¶ 11). The order also determined that the Uncashed Priority Distributions were "unclaimed distributions" subject to section 3.13 of the Plan Trust Agreement; accordingly, I was authorized and directed to stop payment on such distributions and to allocate the underlying funds among the Estates in accordance with the Plan's Stipulated Asset Allocation. (*Id.* ¶ 12).

12.     On or about May 15 and June 24, 2015, I made Initial GUC Distributions by mailing checks in accordance with Articles 9(E) and (G) of the Plan. Of these distributions, approximately 642 checks with net payments totaling $456,198.25 either (i) were returned as undeliverable for lack of a current address or otherwise (the "Undeliverable GUC Distributions") or (ii) have not been cashed or otherwise presented for collection (the "Uncashed GUC Distributions"). On November 4 and December 10, 2015, respectively, I filed a *Notice of Unclaimed Distributions* [D.I. 11061] and a *Notice of Uncashed Distributions* [D.I. 11075], which together included the name and last known address of the claimants to whom the Undeliverable GUC Distributions and Uncashed GUC Distributions were directed. In response to these notices, certain claimants reached out to me and were reissued checks. Of these reissued

---

[4] As these Priority Distributions were on account of employee wages, the Plan Trust made required tax withholdings and payroll deductions prior to disbursing the funds.

checks, all of which were issued more than six months ago, approximately 9 with net payments totaling $9,023.24 have not been cashed or otherwise presented for collection by the claimants.

13. Claims on account of which Undeliverable Priority Distributions, Uncashed Priority Distributions, Undeliverable GUC Distributions, and Uncashed GUC Distributions were made and remain outstanding are identified on Exhibit C attached to the Motion, which includes the claimant's name, claim number, and claim amount. For purposes of the Second GUC Distribution and any further distributions under the Plan, I propose to treat the Claims on Exhibit C to the Motion as disallowed and expunged, and to allocate the Distributions that were attempted to be made on account of such claims to the Plan Trust.

14. In addition, going forward, I propose to follow a single, uniform protocol for the handling of undeliverable, unclaimed, and uncashed Distributions, whereby (i) Distributions that cannot be successfully delivered or that remain uncashed within thirty (30) days after the filing of a notice on the docket will revert to the Plan Trust, and (ii) Claims on account of which Distributions have reverted to the Plan Trust will be deemed disallowed and expunged without further notice to any party or order of this Court.

**D.    Missing W-9 Forms**

15. I am required to file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) (Plan Tr. Agmt. § 3.7), which requires me to have taxpayer identification numbers for the beneficiaries of the Plan Trust. *See* 26 U.S.C. § 6034A(a)(1) & Treas. Reg. § 1.671-4(a) (requiring trustee to file a separate statement with the trust's tax return for each beneficiary receiving a distribution in a tax year). I understand that failure to comply with IRS reporting requirements could lead to penalties that would be payable from the corpus of the Plan Trust to the detriment of general unsecured creditors.

16. I have caused to be sent numerous requests to Holders of Allowed Claims to provide their taxpayer identification number on an IRS Form W-9. In the Initial Distribution Order, the Court authorized and directed me to treat the Claims of Holders who had not provided executed Forms W-9 as "Disputed Claims" for purposes of the Initial GUC Distribution, and to reserve any distributions that would otherwise have been made on account of such Claims (the "Missing W-9 Distributions") pending receipt of executed Forms W-9 or further order of the Court.

17. To date, approximately 137 Holders of Allowed General Unsecured Claims entitled to Distributions under the Plan, all of whom are identified on Exhibit D to the Motion, still have not remitted executed Forms W-9.[5] I propose that if such Holders do not provide executed Forms W-9 by November 30, 2016, then (i) the Missing W-9 Distributions should revert to the Plan Trust, and (ii) Claims on account of which the Missing W-9 Distributions have reverted to the Plan Trust should be deemed disallowed and expunged.

18. I believe that the relief requested in the Motion is in the best interests of the Plan Trust and the Debtors' estates and their creditors.

---

[5] There are a number of Allowed General Unsecured Claims that are *not* entitled to a Distribution under the Plan, either because they are subordinated to other General Unsecured Claims or because the total amount of the Distributions to the Holders of such Claims would not exceed the $50 De Minimis Distribution threshold under the Plan. I am missing Forms W-9 from several Holders of such Claims; however, unless and until Distributions are anticipated on account of such Claims, I do not intend to follow up with such Holders to obtain executed Forms W-9.

19. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  October 14, 2016

*/s/ Steven D. Sass*
Steven D. Sass
