# EXHIBIT A

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of New York

| | |
|---|---|
| Royal Park Investments SA/NV, | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No.  14-cv-02590-VM |
| U.S. Bank National Association, | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         American Home Mortgage Investment Corp.
CSC-Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 820, Baltimore, MD  21202
*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see attached Schedule A.

| Place: Robbins Geller Rudman & Dowd LLP<br>1701 K Street N.W., Suite 350<br>Washington, DC  20036 | Date and Time:<br><br>12/04/2015 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      10/30/2015

*CLERK OF COURT*

                                                                    OR      *Hillary B Stakem*
_____                              _____
   *Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiff
Royal Park Investments SA/NV_____, who issues or requests this subpoena, are:

 Hillary B. Stakem, Esq., Robbins Geller Rudman & Dowd LLP, 655 W. Broadway, Ste. 1900, San Diego, CA 92101,
 619/231-1058, HStakem@rgrdlaw.com

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   14-cv-02590-VM

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A
### (American Home Mortgage Investment Corp.)

## I.    DEFINITIONS

1.      "AHM," "you" or "your" refers collectively to American Home Mortgage Investment Corp. and any of its affiliates, predecessors-in-interest through merger or acquisition, successors, divisions, direct or indirect subsidiaries, including American Home Mortgage Corp. and American Home Mortgage Servicing Inc., present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Servicer, Originator and/or Transferor of Subject Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.      "All" shall include the term "each" and vice versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3.      "And" shall include the term "or," and the term "or" shall include the term "and," such that each document request calls for the production of the greatest number of documents.

4.      "Any" shall be understood either in its most or least inclusive sense as will bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

5.      "Assignment Agreement" means any assignment and assumption agreement between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

6.      "Certificate(s)" refers collectively to any of the certificates issued by the Trusts.

- 1 -

7.     "Certificate Account" means the separate trust account created and maintained with the Trustee, the depository, or any other bank or trust company acceptable to the Rating Agencies which is incorporated under the laws of the United States or any state thereof pursuant to the PSAs.

8.     "Certificateholder" means any person that has purchased mortgage pass-through certificates issued pursuant to the Trusts.

9.     "Charge off" means a determination that a mortgage is unlikely to be collected.

10.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

11.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

12.     "Depositor" means any financial institution defined in the Governing Agreements for any Trust as a depositor, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

13.     "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence.

14.     "Due Diligence Provider(s)" refers collectively to Clayton Services, Inc., IngletBlair, LLC, The Bohan Group LLC, Lydian Data Services LLC, Watterson Prime, or any other entity that provided any credit risk or due diligence services in connection with the Trusts, the Certificates and/or the Subject Loans.

15.     "Governing Agreements" means all agreements governing the Trusts and exhibits, schedules and appendices thereto, including the PSAs, indentures, Trust Agreements,

1087332_1

Assignment Agreements, MLPAs, Transfer and Servicing Agreements, and Servicing Agreements.

16.    "Governmental Entity" means any state or federal law enforcement or regulatory agency including, but not limited to, any state's office of attorney general, the United States Department of Justice, the United States Securities and Exchange Commission ("SEC"), the Federal Reserve Bank, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Federal Housing Finance Agency, the United States Department of Housing and Urban Development, the Federal Bureau of Investigation, any state or federal banking regulatory authority, or any other state or federal agency or law enforcement authority.

17.    "Government-Sponsored Enterprise" means the Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, and Government National Mortgage Association.

18.    "Improper execution" means the signing of the name of another person to affidavits or other mortgage-related documents to be filed in state and/or federal courts or in local land records offices, or as part of an assignment of a Subject Loan or of real property that is or was collateral to a Subject Loan.

19.    "Improper foreclosure" means litigating foreclosure proceedings and/or initiating non-judicial foreclosure proceedings without ensuring that either the promissory note or the mortgage document of a Subject Loan was properly endorsed or assigned and, if legally necessary, in the possession of the appropriate party at the appropriate time.

20.    "Improper notarization" means filing or causing to be filed in state and/or federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents

that were not properly notarized, including those not signed or affirmed in the presence of a notary or of a person different than the signatory.

21.    "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

22.    "Loan File" means all documents that are maintained in the ordinary course of originating, underwriting, approving and funding any Subject Loan, including, but not limited to, documents completed or submitted by a borrower or mortgagor or his or her agent when applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

23.    "Loan Servicing File" means all documents that are maintained and/or used in the course of servicing a Subject Loan, and includes the following: (i) the complete loan Originator, Servicer, and Master Servicer file, including, but not limited to, documents completed or submitted by a borrower or mortgagor, or his or her agent, when applying for a Subject Loan; (ii) origination credit reports, underwriting work sheets, underwriting exceptions granted, appraisal or valuation results, title commitment and policy, AUS findings, loan approval, loan application (Form 1008 and all supporting documents), mortgage note, mortgage or deed of trust, mortgage insurance certificate, HUD 1, etc.; (iii) applicable underwriting guidelines; (iv) closing loan tapes and mortgage loan schedules; (v) evidence of all conveyances and assignments; (vi) all loan servicing records, including, without limitation, call notes, foreclosure files and communications, and loss mitigation files; (vii) all mortgage insurance rescission-related documents; (viii) all

- 4 -

records relating to repurchase analyses, demands, investigations and communications; and (ix) servicing guidelines and procedures.

24.     "Loan Tape" means any electronic spreadsheet or other document containing a loan-by-loan description of the Subject Loans (which descriptions may include information concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral information, borrower income, and/or other information about the borrower or the loan).

25.     "Loss mitigation" means any efforts by you to collect amounts past due relating to any Subject Loan.

26.     "Master Servicer" means any financial institution defined in the Governing Agreements for any Trust as a master servicer, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

27.     "MLPA" means any mortgage loan purchase agreement, sale agreement, or representations and warranties agreement between an Originator and a Sponsor, or an Originator and a Depositor, in which the Originator conveys loans to the Sponsor or the Depositor for securitization in any of the Trusts.

28.     "Mortgage" has the same meaning ascribed to it in Article I under "Definitions" in the PSAs.

29.     "Origination Practices" refers to the actual underwriting and appraisal practices, processes, procedures and guidelines used in connection with the origination of any residential mortgage loan, as well as any stated or published underwriting and appraisal practices, processes, procedures, and guidelines intended or supposed to be used in connection with the origination of such residential mortgage loan.

- 5 -

30.    "Originator" has the same meaning ascribed to it in the relevant Governing Agreements or Prospectus Supplement for each Trust, and any other entity that originated one or more of the mortgage loans in the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on their behalf.

31.    "Periodic Servicing Reports" means all periodic reports generated by you at the loan level or securitization level for the Subject Loans and/or Trusts, including fresh loss summaries, liquidated loss summaries, reconciliation reports, compliance reports and assessment reports.

32.    "Person(s)" refers to natural persons, proprietorships, governmental agencies, corporations, partnerships, trusts, joint ventures, groups, associations, organizations and all other entities.

33.    "Professional Services" refers to any work or services performed, including, but not limited to, any due diligence reviews or analysis, loan review, underwriting compliance review, non-performing collections activity, performance monitoring, quality control, servicer operational reviews, credit and risk analytics or management, property valuations, title checks, portfolio strategy analysis, surveillance services, consulting and independent pricing.

34.    "Prospectus Supplement" means the relevant prospectus supplement for any Trust.

35.    "PSA" means any pooling and servicing agreement, Trust Agreement, or servicing and sale agreement governing the Trusts and defining the rights and obligations of the parties to such PSA.

36.    "Rating Agencies" means any Nationally Recognized Statistical Rating Organization that rated or evaluated (or was ever asked to rate or evaluate) any of the Certificates, including Moody's Corp., Standard & Poor's (a division of McGraw-Hill Companies, Inc.) and Fitch Ratings, Inc., as well as their officers, directors, employees, partners, corporate parents, subsidiaries, affiliated, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on their behalf.

37.    "Refer" or "relate" or "referring" or "relating" means all documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

38.    "Regulation AB" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust or, in the event not so defined, then shall mean Subpart 229.1100— Asset Backed Securities (Regulation AB), 17 C.F.R. §§229.1100-229.1123, as such may be amended from time to time, and subject to such clarification and interpretation as have been provided by the SEC in the adopting release (Asset-Backed Securities, Securities Act Release No. 33-8518, 70 Fed. Reg. 1,506, 1,531 (Jan. 7, 2005)) or by the staff of the SEC, or as may be provided by the SEC from time to time.

39.    "Representations and Warranties" means any representation or warranty by any Sponsor, Originator, Depositor, Servicer, Master Servicer, or Trustee concerning the quality of the loans underlying or collateralizing the Certificates, including the accuracy of mortgage loan schedules, compliance with local, state and federal laws, loan-to-value ratios, debt-to-income ratios, defaults and delinquencies, appraisals, FICO scores and underwriting guidelines.

- 7 -

40. "Repurchase and Servicing Claims" means contractual claims associated with breaches of Representations and Warranties on Subject Loans or with deficient servicing of Subject Loans.

41. "Robo-signing" means filing or causing to be filed in state and/or federal courts an affidavit executed by an employee of a Servicer or by an employee of a third-party service provider who made various assertions in the affidavit (*e.g.*, ownership of a loan's mortgage note and mortgage/deed of trust, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower) that the affiant represented were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when some or all of the assertions were not based on such personal knowledge or such review of the relevant books and records.

42. "Service" or "servicing" means, in accordance with Regulation AB, the act of servicing and administering the Subject Loans or any other assets of the Trusts by an entity that meets the definition of "servicer" set forth in Item 1101 of Regulation AB and is subject to the disclosure requirements set forth in Item 1108 of Regulation AB.

43. "Servicer" means the entities identified as a Servicer (or any successor Servicer), Master Servicer (or any successor Master Servicer), or subservicer (or any successor subservicer) in the relevant Governing Agreements for each Trust, and any other entity that services loans and/or is responsible for any portion of the servicing functions performed, or required to be performed, with respect to each of the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on their behalf.

1087332_1

44.    "Servicer Advance" means any advance of any principal or interest on a delinquent Subject Loan, the method of those advances, the outstanding cumulative balance advanced, and how those advances were subsequently reimbursed, if at all.

45.    "Servicing Agreement" means any servicing agreement or servicing and sale agreement between a Servicer and a Sponsor, or a Servicer and a Depositor, in which the parties define the duties and obligations of the Servicer for the loans underlying or collateralizing the Certificates.

46.    "Sponsor" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, and any other financial institution that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

47.    "Subject Loan(s)" refers collectively to any of the loans underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all mortgage loans identified on any Loan Tape provided in connection with the offer or sale of Certificates issued pursuant to the Trusts.

48.    "Subservicing Agreement" means all servicing agreements you entered into relating to the Subject Loans or Trusts, including, but not limited to, all Flow Mortgage Loan Purchase, Warranties and Servicing Agreements, Mortgage Loan Purchase and Warranties Agreements, Mortgage Loan Flow Purchase, Sale & Servicing Agreements and Mortgage Loan Sale Agreements.

49.    "Transfer and Servicing Agreement" means any transfer and servicing agreement entered into in connection with the Trusts and the securitization of loans therein.

- 9 -

50.     "Trust(s)" refers collectively to the issuing entities of the Certificates, as identified in Appendix 1.

51.     "Trust Agreement" means any transfer and servicing agreement entered into in connection with the Trusts and the securitization of loans therein.

52.     "Underwriter" means any financial institution defined in the Governing Agreements for any Trust as an underwriter, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

53.     "U.S. Bank" or "Trustee" refers collectively to U.S. Bank National Association and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other persons acting or purporting to act on their behalf, including their attorneys.

54.     "Warrantor" means any financial institution that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

55.     The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

## II.     INSTRUCTIONS

1.     Documents shall be produced as they are kept in the usual course of business, or the documents shall be organized and labeled to correspond to the categories in these requests. In the case of documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests,

- 10 -

investigations, subpoenas or otherwise, those documents should be produced in the same manner as they were previously produced by you.

2.      Documents shall be produced in such fashion as to identify the department, branch, office, or central file or document repository in which each such document was located and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

3.      You are required to produce the original of each document requested, together with all non-identical copies and drafts of each document.  If the original of any document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.      Documents attached to each other in their original form should not be separated when produced.  Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

5.      If you are unable to respond fully to any document request, respond to the extent possible, and specify the reasons for your inability to respond in full and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document that are not being produced.

6.      When an objection is made to any request, the objection shall state with specificity all corresponding grounds.

7.      If any document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest,

confidentiality, or trade secret, you shall provide a privilege log setting forth separately with respect to each such document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of document; (c) the authors of the document, including title and affiliation; (d) the addressees of the document, including title and affiliation; (e) all persons who received copies of the document, including titles and affiliations; (f) the date of the document; (g) the subject matter of the document; and (h) the Bates and/or control number(s) assigned to the document.

8.    If a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, you must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

9.    If a document responsive to the requests was at any time in your possession, custody or control, but is no longer available for production, state as to each such document the following information whether:

(a)    the document is missing or lost;

(b)    the document has been destroyed;

(c)    the document has been transferred or delivered to another person or entity and if so, to whom and at whose request;

(d)    the document has been otherwise disposed of; and

(e)    a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

- 12 -

10.    Documents not otherwise responsive to these requests shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by these requests, or if such documents are attached to documents called for by the requests, including routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.    FORM OF PRODUCTION – HARD COPY

Hardcopy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN."  The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI, color JPG images.  Multi-page Optical Character Recognition ("OCR") text for each document should also be provided.  The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.    FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format.  All ESI should be produced with a delimited, database load file that contains the

metadata fields listed in Table 1, attached hereto.  An .opt image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document.  For example, TIFF images of e-mail messages should include the BCC line.  PowerPoint documents should be processed with hidden slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image.  If an original document contains color, the document should be produced as single-page, 300 DPI, color JPG images.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided.  If documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the parties should meet and confer in good faith.

Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates.  An e-mail that includes content in the BCC or other blind copy field should

- 14 -

not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical.  Removal of near-duplicate documents is not acceptable.  De-duplication should be done across the entire collection (*i.e.*, global level) and the CUSTODIAN field should list each Custodian, separated by a semicolon, who was a source of that document.  To accommodate for rolling productions, for ESI that is removed as duplicate from earlier productions, the producing party should provide an overlay file no later than three days after the date of each rolling production that includes the duplicate custodian names.

Prior to use, the parties should meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced (*i.e.*, file type culling, near de-duplication, e-mail thread suppression or technology assisted review).  Use of these technologies to reduce the reviewable collection or production, other than as described within this document, requires the consent of the receiving party.

## V.    RELEVANT TIME PERIOD

All requests herein refer to the period of January 1, 2006, through the date of your response (the "relevant time period"), unless otherwise specifically indicated, and shall include all documents and information that relate to such period, even though prepared or published outside of the relevant time period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## VI.    DOCUMENTS REQUESTED

REQUEST NO. 1:

All documents or communications with, copying, or concerning U.S. Bank relating to the Subject Loans or Trusts, including, but not limited to, communications relating to:

- 15 -

(a)    the quality of the Subject Loans;

(b)    any defect in the Loan File for any Subject Loan;

(c)    any actual or suspected breach of Representations and Warranties;

(d)    any repurchase request or claim;

(e)    any decision to accept, reject, substitute, repurchase or cure; and

(f)    any tolling, forbearance, or other agreement purporting to toll or otherwise address the statute of limitations for any Subject Loan repurchase claims.

REQUEST NO. 2:

Documents and communications you provided to or received from U.S. Bank relating to the Subject Loans or Trusts.

REQUEST NO. 3:

Loan Files for each Subject Loan.

REQUEST NO. 4:

All documents and communications concerning your Origination Practices in connection with the Subject Loans and/or any loan programs used to originate any Subject Loan, including, but not limited to, any reports, charts, memoranda, studies, opinions, valuations, stated guidelines or other documentation associated with the origination of such loans. This request includes, but is not limited to, all documents concerning any appraisals, loan-to-value ratios, loan delinquencies, loan kickouts, early payment defaults, credit downgrades or any other loan quality metrics associated with the Subject Loans, including any draft versions of such documents and any documents that AHM may have reviewed or relied upon in the preparation of such documentation.

REQUEST NO. 5:

All documents and communications concerning the purchase by any entity of any Subject Loan or any groups or pools of loans containing any Subject Loan. This request includes, but is not limited to, any agreements regarding such transactions, any drafts thereof, any due diligence conducted on the groups or pools of loans containing any Subject Loan, and any documents or communications concerning negotiations regarding any rebates, discounts, price changes and the purchase price, size and/or make-up of such loans or groups or pools of loans.

REQUEST NO. 6:

All documents and communications concerning the transfer of the Subject Loans and associated Loan Files to the Trusts.

REQUEST NO. 7:

All documents and communications concerning the results of any mortgage re-underwriting performed by or on behalf of any person with regard to the Subject Loans.

REQUEST NO. 8:

All documents and communications related to any Professional Services provided by any Due Diligence Provider concerning the Subject Loans and/or any groups or pools of loans containing any Subject Loan, including, but not limited to, all data, reports and presentations related to such Professional Services, as well as any internal analysis and/or communications concerning such Professional Services.

REQUEST NO. 9:

All documents and communications concerning any business relationship between you and U.S. Bank, including, but not limited to, any warehouse lending arrangements.

- 17 -

REQUEST NO. 10:

Audits, reports, memoranda, summaries, appraisals or analyses concerning the Subject Loans, including, but not limited to:

    (a)    the owner-occupancy status of residential properties securing the Subject Loans;

    (b)    the loan-to-value ratios of the residential properties securing the Subject Loans;

    (c)    the borrowers' debt-to-income ratios or stated income for residential properties securing the Subject Loans;

    (d)    the underwriting standards, guidelines, procedures and policies used to originate the Subject Loans;

    (e)    any borrowers' ability to repay the Subject Loans, including any exception to any underwriting guideline;

    (f)    the ability to enforce the Subject Loans if the borrowers default;

    (g)    rejections, kick-outs, repurchases, replacements and buy-backs for the Subject Loans; and

    (h)    the purported transfer and/or assignment of right, title and interest to the Subject Loans to the Trusts, including guidelines, procedures, policies and standards for the completion and transfer of mortgage documentation.

REQUEST NO. 11:

Communications and documents concerning the performance of the Trusts or the quality of the Subject Loans, including documents reflecting delinquencies, defaults, modifications, foreclosures, recognized losses, expected losses or credit downgrades.

- 18 -

REQUEST NO. 12:

Communications and documents provided to, or received from, any Master Servicers, Servicers, Sponsors, Warrantors or Underwriters concerning the Subject Loans, including those concerning loan servicing failures or breaches of Representations and Warranties of the Subject Loans and those concerning requests to repurchase, substitute or cure.

REQUEST NO. 13:

All documents produced and transcripts of any testimony given, as well as any exhibits referenced therein, in connection with any civil litigation concerning AHM's Origination Practices or its servicing of the Subject Loans and/or any of your business interactions with the Trustee.

REQUEST NO. 14:

All documents and communications related to any internal or external investigation of AHM's Origination Practices in connection with the Subject Loans and/or any of the loan programs used to originate the Subject Loans, including, but not limited to, any internal quality control reviews or due diligence, any post-purchase loan review and/or surveillance, and any regulatory reviews or complaints.

REQUEST NO. 15:

All documents and communications concerning or copying U.S. Bank relating to any RMBS trustee litigation.

REQUEST NO. 16:

The Loan Servicing Files for the Trusts.

REQUEST NO. 17:

All documents concerning your review, assessment or analysis of the Loan Servicing Files for the Trusts, including but not limited to, reviews to determine whether any Loan Servicing File contains the documentation required in the Governing Agreements.

REQUEST NO. 18:

All communications and documents relating to the transfer of Loan Servicing Files to U.S. Bank.

REQUEST NO. 19:

Documents relating to the servicing of the Subject Loans, including, but not limited to:

(a)     complete data extracts from each servicing system that details servicing history (including, but not limited to, payment histories and collection histories) for every Subject Loan;

(b)     documents relating to any servicing fees or other compensation received by you or other Servicers in connection with the servicing of the Subject Loans, including, but not limited to, any Master Servicer and/or subservicer fees;

(c)     Servicer Advance histories;

(d)     Subject Loan payment transaction history;

(e)     Subject Loan modifications or requests for Subject Loan modifications; and

(f)     Charge offs.

REQUEST NO. 20:

Communications and documents relating to the transfer of servicing of any Subject Loan from one entity to you or from you to another entity.

REQUEST NO. 21:

Documents sufficient to identify the persons responsible for servicing the Subject Loans.

REQUEST NO. 22:

Documents relating to the Subservicing Agreements.

REQUEST NO. 23:

The Periodic Servicing Reports.

REQUEST NO. 24:

Documents concerning any certification created or provided by you relating to the Subject Loans, including, but not limited to, any document exception reports, certifications relating to the payoff of a Subject Loan, and certifications relating to the deposits into and withdrawals from the Certificate Account.

REQUEST NO. 25:

Documents relating to your policies, practices or procedures for serving as Servicer (or subservicer) of the Trusts, including policies, practices or procedures relating to:

(a)     your foreclosure of any property securing one or more of the Subject Loans;

(b)     your identification and/or resolution of borrower misrepresentation, fraud and/or failure to comply with mortgage documents;

(c)     notifying trustees of borrower and/or third-party misrepresentations;

(d)     your obligations under the Governing Agreements;

(e)     Subject Loan modifications or requests for Subject Loan modifications; and

(f)     your determination of whether to charge off a mortgage.

REQUEST NO. 26:

Communications and documents concerning the delinquency and/or workout of any Subject Loans.

REQUEST NO. 27:

Communications and documents concerning efforts, whether successful or not, to foreclose upon any property securing any Subject Loan, including, but not limited to, communications with providers of foreclosure-related services, foreclosure files and related court documents.

REQUEST NO. 28:

Communications and documents concerning investor, guarantor or insurer curtailments of interest or Servicer Advances on the Subject Loans.

REQUEST NO. 29:

Communications and documents concerning any report of fraud, potential fraud or other misconduct relating to the Subject Loans, including, but not limited to, communications to or from any fraud hotline or reporting system and communications with mortgagors or borrowers regarding any irregularities, inaccuracies or representations in a loan application.

REQUEST NO. 30:

Communications and documents concerning breaches of Representations and Warranties for any Subject Loan, including, but not limited to, any Repurchase and Servicing Claims.

REQUEST NO. 31:

Communications and documents concerning the repurchase of any Subject Loan, including, but not limited to, any Repurchase and Servicing Claims.

REQUEST NO. 32:

Communications and documents from your servicing systems or data document files relating to your loss mitigation efforts concerning the Subject Loans, including, but not limited to:

(a)    communications or attempted communications with the borrower of any Subject Loan;

(b)    the reason a Subject Loan defaulted;

(c)    investigations performed by you for any Subject Loan;

(d)    loss mitigation notes, records, documents, and underwriting assessments regarding borrower eligibility for forbearance, loss mitigation plans or loan modifications for any Subject Loan;

(e)    all data and/or documentation received by you from the borrower of any Subject Loan;

(f)    all data and/or documentation received by you from any third party for any Subject Loan;

(g)    all final decisions made by you regarding the eligibility for any collections, loss mitigation or default management plan for the borrower of any Subject Loan;

(h)    any Subject Loan modifications or requests for Subject Loan modifications; and

(i)    all decisions made by you to charge off any Subject Loan.

REQUEST NO. 33:

Documents concerning your relationships or affiliations with any entity that holds second liens on any property securing any Subject Loan.

- 23 -

REQUEST NO. 34:

Documents concerning your relationships or affiliations with any other Originators or Sponsors of any Subject Loan.

REQUEST NO. 35:

To the extent not already covered by the requests above, your internal communications concerning any Subject Loan or Trust.

REQUEST NO. 36:

Your board meeting, board committee meeting, management committee meeting, and/or risk management meeting minutes relating to any Subject Loan or Trust, including, but not limited to, any reports of improper loan servicing or fraud relating to any Subject Loan or the origination of any Subject Loan.

REQUEST NO. 37:

To the extent not already covered by the requests above, communications with, copying, or concerning AHM relating to internal and external audits or reviews of servicing-related activities performed by you for the Subject Loans or Trusts, including any of the following servicing actions or inactions:

      (a)     robo-signing;

      (b)     improper notarization;

      (c)     improper foreclosure;

      (d)     improper execution;

      (e)     failing to devote sufficient financial, staffing and/or managerial resources to ensure proper administration of your foreclosure processes;

- 24 -

(f)    failing to devote to your foreclosure processes adequate oversight, internal controls, policies and procedures, compliance risk management, internal audit, third-party management and training; and

(g)    failing to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

REQUEST NO. 38:

Communications with, and documents you provided to or received from, any Certificateholder relating to the Loan Servicing Files, Subject Loans or Trusts.

REQUEST NO. 39:

Communications with, and documents you provided to or received from, any Governmental Entity, Government-Sponsored Enterprise, bankruptcy trustee, bankruptcy examiner, private investor, or any financial guarantee insurer or monoline insurer, as well as their employees, agents, affiliates, representatives or successors, concerning any litigation, investigation, or dispute of any kind (including threatened or potential litigation, arbitration or mediation) relating to the Subject Loans or Trusts, including, but not limited to:

(a)    litigation or investigation concerning your performance as Servicer for one or more of the Trusts;

(b)    investigations of U.S. Bank or any Servicer or Originator;

(c)    litigation or investigations regarding judicial or non-judicial foreclosure, the transfer of Subject Loans, and the execution and notarization of affidavits, affirmations and similar documents;

(d)    the Office of the Inspector General, U.S. Department of Housing and Urban Development's ("OIG") review of your foreclosure and claims processes; and

- 25 -

(e)    the Federal Reserve Board's April 13, 2011 consent orders and/or the

(f)    Amendment thereto; and the Mortgage Foreclosure Multistate Group and/or Attorney General investigations into "robo-signing" or other servicing actions.

REQUEST NO. 40:

Communications with, and documents you provided to or received from, Rating Agencies concerning your performance as Servicer, Originator and/or Warrantor for one or more of the Trusts.

REQUEST NO. 41:

All Communications and documents concerning your settlement of any lawsuits with respect to the Trusts.

- 26 -

**Appendix 1**

| Abbreviated Trust Name | Issuing Trust | Approx. Issue Date | Approx. Principal Amount | CUSIPs |
|---|---|---|---|---|
| BSABS 2006-AC2 | Bear Stearns Asset Backed Securities I Trust 2006-AC2 | 2/28/2006 | $527,017,479 | 07387UGB1; 07387UGC9; 07387UGG0; 07387UGH8; 07387UGJ4; 07387UGK1; 07387UGN5; 07387UGD7; 07387UGE5; 07387UGF2; 07387UGM7; 07387UGL9; 07387UHM6; 07387UHN4; 07387UGP0; 07387UGQ8; 07387UGR6; 07387UGS4; 07387UGT2; 07387UGU9; 07387UHJ3; 07387UHK0; 07387UGV7; 07387UGW5; 07387UGX3; 07387UGY1; 07387UHB0; 07387UHC8; 07387UHD6; 07387UHE4; 07387UHF1; 07387UHG9; 07387UHH7; 07387UHA2; 07387UGZ8 |
| LXS 2006-15 | Lehman XS Trust 2006-15 | 9/29/2006 | $864,436,000 | 52523MAA8; 52523MAB6; 52523MAC4; 52523MAD2; 52523MAE0; BCC0TDJ67; BCC0TDJF7; 52523MAF7; 52523MAQ3; 52523MAG5; 52523MAH3; 52523MAJ9; 52523MAK6; 52523MAL4; 52523MAM2; 52523MAN0; 52523MAP5; BCC0TDIM3; BCC0TDJG5; BCC0TDJ75 |
| LXS 2007-7N | Lehman XS Trust, Series 2007-7N | 5/31/2007 | $2,167,194,000 | 52524GAA0; 52524GAB8; 52524GAC6; 52524GAW2; 52524GAZ5; 52524GAH5; 52524GAJ1; 52524GAK8; 52524GAL6; 52524GBA9; 52524GAX0; BCC0YHEG5; 52524GAM4; 52524GAN2; 52524GAP7; 2524GAQ5; 52524GAR3; 52524GAS1; 52524GAT9; 52524GAU6; 52524GAV4; BCC0YHEH3; BCC0YHED2 |

| Abbreviated Trust Name | Issuing Trust | Approx. Issue Date | Approx. Principal Amount | CUSIPs |
|---|---|---|---|---|
| SARM 2006-9 | Structured Adjustable Rate Mortgage Loan Trust, Series 2006-9 | 9/29/2006 | $650,553,100 | 86361PAA4; 86361PAB2; 86361PAC0; 86361PAD8; 86361PAE6; 86361PAH9; 86361PAF3; 86361PAG1; 86361PAL0; 86361PAM8; 86361PAJ5; 86361PAK2; 86361PAN6; 86361PAP1; 86361PAQ9; 86361PAT3; 86361PAR7; 86361PAU0; 86361PAS5; 86361PAV8; 86361PAZ9; 86361PAW6; 86361PBA3; 86361PAX4; 86361PBB1; 86361PAY2; 86361PBC9; 86361PBD7; 86361PBE5; BCC0TEQY6; BCC0TEQZ3; BCC0TER09; 86361PBF2 |

## TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH-ALL | i.e. /JSmith.pst/Inbox /JSmith.pst/Deleted Items /Network Share/Accounting/... /JSmithPC/Users/JSmith/My Documents/... | The file paths from the locations from which the items were stored in the usual course of business. This field should be populated for both e-mail and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

# EXHIBIT B

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Southern District of New York

| | | |
|---|---|---|
| Royal Park Investments SA/NV, | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   14-cv-06502-GHW |
| The Bank of New York Mellon, | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:              American Home Mortgage Investment Corp.
CSC-Lawyers Incorporating Service Co., 7 St. Paul Street, Suite 820, Baltimore, MD  21202

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Please see attached Schedule A.

| Place: Robbins Geller Rudman & Dowd LLP<br>1701 K Street N.W., Suite 350<br>Washington, DC  20036 | Date and Time:<br><br>12/14/2015 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      11/12/2015

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Plaintiff
Royal Park Investments SA/NV                                              , who issues or requests this subpoena, are:

Cody R. LeJeune, Esq., Robbins Geller Rudman & Dowd LLP, 655 W. Broadway, Ste. 1900, San Diego, CA 92101,
619/231-1058, clejeune@rgrdlaw.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  14-cv-06502-GHW

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**
**(American Home Mortgage Investment Corp.)**

## I.    DEFINITIONS

1.      "AHM," "you" or "your" means American Home Mortgage Investment Corp. and any of its affiliates, predecessors, successors, divisions, direct or indirect subsidiaries, present or former officers, directors, partners, employees, representatives, agents and intermediaries, and all other persons acting or purporting to act on its behalf, including its attorneys, in its capacity as Originator of Mortgage Loans underlying or collateralizing the Certificates issued pursuant to one or more Trusts.

2.      "All" shall include the term "each" and vice versa, as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

3.      "And" shall include the term "or," and the term "or" shall include the term "and," such that each document request calls for the production of the greatest number of documents.

4.      "Any" shall be understood either in its most or least inclusive sense as will bring within the scope of the request all responses that might otherwise be construed to be outside the scope of the request.

5.      "Assignment Agreement" means any assignment and assumption agreement between the Sponsor and Depositor, or the Depositor and the Trustee, conveying the loans for securitization in the Trusts.

6.      "BNY Mellon" or "Trustee" refers to The Bank of New York Mellon and its predecessors, successors, corporate parents, subsidiaries, affiliates, divisions or branch offices, including their directors, officers, employees, partners, agents, and any person acting or purporting to act on behalf of the entities above.

- 1 -

1086411_1

7.      "Certificate(s)" refers collectively to any of the certificates issued pursuant to the Trusts.

8.      "Communication" (or any variant thereof) means the transmittal of information in the form of facts, ideas, inquiries or otherwise, including, but not limited to, any contact between or among two or more persons, including written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mail, Bloomberg message, instant message, or any other document; the transmittal of information by any means; any oral contact such as face-to-face meetings or telephone conversations; and any writings memorializing such oral contact.

9.      "Concerning" means relating to, referring to, describing, evidencing or constituting.

10.     "Depositor" means any financial institution defined in the Governing Agreements for any Trust as a depositor, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

11.     "Document(s)" is intended to have the broadest possible meaning under Rule 34 of the Federal Rules of Civil Procedure and Rule 1001 of the Federal Rules of Evidence.

12.     "Due Diligence Firm" means any person engaged to review and evaluate loans that were included (or considered for inclusion) in the Trusts (*e.g.*, Clayton Holdings, The Bohan Group LLC, Mortgage Data Management Corporation, Hanover Capital Partners, Lydian Data Services LLC, Watterson Prime), including any present or former officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on their behalf.

- 2 -

13.    "Governing Agreements" means all agreements governing the Trusts and exhibits, schedules and appendices thereto, including the PSAs, Trust Agreements, Assignment Agreements, MLPAs, Transfer and Servicing Agreements, and Servicing Agreements.

14.    "Governmental Entity" means any state or federal law enforcement or regulatory agency, including, but not limited to, any state's office of attorney general, the United States Department of Justice, the United States Securities and Exchange Commission, the Federal Reserve Bank, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Federal Housing Finance Agency, the United States Department of Housing and Urban Development, the Federal Bureau of Investigation, any state or federal banking regulatory authority, or any other state or federal agency or law enforcement authority.

15.    "Government-Sponsored Enterprise" means the Federal National Mortgage Association, Federal Home Loan Mortgage Corporation and Government National Mortgage Association.

16.    "Investigation" refers to any internal or external analysis, review, inquiry, probe, audit, examination, research, survey, study, enumeration or follow-up thereto, whether formal or informal.

17.    "Loan File" means all documents that are maintained in the ordinary course of originating, underwriting, approving and funding any Mortgage Loan, including, but not limited to, documents completed or submitted by a borrower or mortgagor or his or her agent when applying for a mortgage loan, origination credit reports, underwriting worksheets, underwriting exception applications and/or decisions, appraisal or valuation results, title commitment and policy, loan approvals, mortgage notes, mortgage or deeds of trust, mortgage insurance certificates, applicable origination guidelines, and evidence of all conveyances or assignments.

- 3 -

18.    "Loan Tape" means any electronic spreadsheet or other document containing a loan-by-loan description of the Mortgage Loans (which descriptions may include information concerning, *e.g.*, delinquencies, locations of mortgaged properties, occupancy status, collateral information, borrower income, and/or other information about the borrower or the loan).

19.    "Master Servicer" means any financial institution defined in the Governing Agreements for any Trust as a master servicer, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

20.    "MLPA" means any mortgage loan purchase agreement, sale agreement, or representations and warranties agreement between an Originator and a Sponsor, or an Originator and a Depositor, in which the Originator conveys loans to the Sponsor or the Depositor for securitization in any of the Trusts.

21.    "Mortgage Loan(s)" means any or all mortgage loans underlying or collateralizing the Certificates issued pursuant to the Trusts, including any or all mortgage loans identified on any Loan Tape provided in connection with the offer or sale of the Certificates issued pursuant to the Trusts.

22.    "Origination Practices" refers to the actual underwriting and appraisal practices, processes, procedures and guidelines used in connection with the origination of any residential mortgage loan, as well as any stated or published underwriting and appraisal practices, processes, procedures, and guidelines intended or supposed to be used in connection with the origination of such residential mortgage loan.

23.    "Originator" has the same meaning ascribed to it in the relevant Governing Agreements or Prospectus Supplement for each Trust, and any other entity that originated one or

- 4 -

more of the Mortgage Loans in the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on their behalf.

24. "Person(s)" means all natural persons or legal entities, including corporations, sole proprietorships, unincorporated businesses, professional corporations, partnerships, associations, governmental agencies, and all other organizations or entities.

25. "Professional Services" refers to any work or services performed, including, but not limited to, any due diligence reviews or analysis, loan review, underwriting compliance review, non-performing collections activity, performance monitoring, quality control, servicer operational reviews, credit and risk analytics or management, property valuations, title checks, portfolio strategy analysis, surveillance services, consulting and independent pricing.

26. "Prospectus Supplement" means the relevant prospectus supplement for any Trust.

27. "PSA" means any pooling and servicing agreement, Trust Agreement, or servicing and sale agreement governing the Trusts and defining the rights and obligations of the parties to such PSA.

28. "Refer" or "relate" or "referring" or "relating" means all documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

29. "Representations and Warranties" means any representation or warranty by any Sponsor, Originator, Depositor, Servicer, Master Servicer, or Trustee concerning the quality of

- 5 -

the loans underlying or collateralizing the Certificates, including the accuracy of mortgage loan schedules, compliance with local, state and federal laws, loan-to-value ratios, debt-to-income ratios, defaults and delinquencies, appraisals, FICO scores and underwriting guidelines.

30.    "RMBS" means residential mortgage-backed security.

31.    "Servicer" means the entities identified as a Servicer (or any successor Servicer), Master Servicer (or any successor Master Servicer), or subservicer (or any successor subservicer) in the relevant Governing Agreements for each Trust, and any other entity that services loans and/or is responsible for any portion of the servicing functions performed, or required to be performed with respect to each of the Trusts, as well as their officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on their behalf.

32.    "Servicing Agreement" means any servicing agreement or servicing and sale agreement between a Servicer and a Sponsor, or a Servicer and a Depositor, in which the parties define the duties and obligations of the Servicer for the loans underlying or collateralizing the Certificates.

33.    "Sponsor" has the same meaning ascribed to it in the relevant Governing Agreements for each Trust, and any other financial institution that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

34.    "Trust(s)" refers collectively to the issuing entities of the Certificates, as identified in Appendix 1.

35.    "Transfer and Servicing Agreement" means any transfer and servicing agreement entered into in connection with the Trusts and the securitization of loans therein.

36.    "Trust Agreement" means any transfer and servicing agreement entered into in connection with the Trusts and the securitization of loans therein.

37.    "Underwriter" means any financial institution defined in the Governing Agreements for any Trust as an underwriter, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

38.    "Warrantor" means any financial institution that securitized the loans underlying or collateralizing the Certificates, as well as its officers, directors, employees, corporate parents, predecessors, successors, subsidiaries, affiliates, divisions, branch offices, agents, representatives, and all other persons acting or purporting to act on its behalf.

39.    The singular shall include the plural, and the disjunctive shall include the conjunctive, and vice versa.

## II.    INSTRUCTIONS

1.    Documents shall be produced as they are kept in the usual course of business, or the documents shall be organized and labeled to correspond to the categories in these requests. In the case of documents that have already been produced to any federal, state or local government entity (including regulatory entities), whether pursuant to administrative requests, investigations, subpoenas or otherwise, those documents should be produced in the same manner as they were previously produced by you.

2.    Documents shall be produced in such fashion as to identify the department, branch, office, or central file or document repository in which each such document was located

1086411_1

and, where applicable, the natural person in whose possession it was found and the business address of each document's custodian(s).

3.    You are required to produce the original of each document requested, together with all non-identical copies and drafts of each document.  If the original of any document cannot be located and/or produced, provide a copy in lieu thereof, which shall be legible and bound or stapled in the same manner as the original, and produce all other non-identical copies that differ from the original and from the other copies produced for any reason, including, without limitation, the making of notes thereon.

4.    Documents attached to each other in their original form should not be separated when produced.  Any attachments to e-mail messages shall be produced with, and linked to, the attaching e-mail.

5.    If you are unable to respond fully to any document request, respond to the extent possible, and specify the reasons for your inability to respond in full and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document that are not being produced.

6.    When an objection is made to any request, the objection shall state with specificity all corresponding grounds.

7.    If any document is withheld, in whole or in part, for any reason, including, but not limited to, any claim of privilege, whether work product or attorney-client, common interest, confidentiality or trade secret, you shall provide a privilege log setting forth separately with respect to each such document: (a) the nature of the privilege or the ground of confidentiality claimed; (b) the type of document; (c) the authors of the document, including title and affiliation; (d) the addressees of the document, including title and affiliation; (e) all persons who received

- 8 -

copies of the document, including titles and affiliations; (f) the date of the document; (g) the subject matter of the document; and (h) the Bates and/or control number(s) assigned to the document.

8.      If a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the maximum extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, you must clearly indicate the portions as to which the privilege is claimed in accordance with the procedure outlined above.

9.      If a document responsive to the requests was at any time in your possession, custody or control, but is no longer available for production, state as to each such document the following information whether:

(a)      the document is missing or lost;

(b)      the document has been destroyed;

(c)      the document has been transferred or delivered to another person or entity and, if so, to whom and at whose request;

(d)      the document has been otherwise disposed of; and

(e)      a precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

10.      Documents not otherwise responsive to these requests shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by these requests, or if such documents are attached to documents called for by the requests, including routing slips, transmittal memoranda or letters, comments, evaluations or similar materials.

## III.   FORM OF PRODUCTION – HARD COPY

Hardcopy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "BEGATTACH," "ENDATTACH," "PAGES" and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. If an original document contains color necessary to understand the meaning or content of the document, the document should be produced as single-page, 300 DPI, color JPG images. Multi-page Optical Character Recognition ("OCR") text for each document should also be provided. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

## IV.   FORM OF PRODUCTION – ELECTRONICALLY STORED INFORMATION

Electronically stored information ("ESI") should be produced as single-page, Group IV, 300 DPI TIFF images with the exception of source code, audio, video, and spreadsheet-type files, including, but not limited to, Microsoft Excel, CSV – which should be produced in native format. All ESI should be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. An .opt image cross-reference file should also be provided for all TIFF images.

TIFF images should show any and all text and images which would be visible to the reader using the native software that created the document. For example, TIFF images of e-mail messages should include the BCC line. PowerPoint documents should be processed with hidden

- 10 -

slides and all speaker notes unhidden, and should be processed to show both the slide and the speaker's notes on the TIFF image. If an original document contains color, the document should be produced as single-page, 300 DPI, color JPG images.

If a document is produced in native format, a single-page Bates-stamped TIFF image slip-sheet containing the confidential designation and text stating the document has been produced in native format should also be provided. If documents requested in native format require redactions, the parties should meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field. To the extent that either party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the parties should meet and confer in good faith.

Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. An e-mail that includes content in the BCC or other blind copy field should not be treated as a duplicate of an e-mail that does not include content in those fields, even if all remaining content in the e-mail is identical. Removal of near-duplicate documents is not acceptable. De-duplication should be done across the entire collection (*i.e.*, global level) and the CUSTODIAN field should list each Custodian, separated by a semicolon, who was a source of that document. To accommodate for rolling productions, for ESI that is removed as duplicate

from earlier productions, the producing party should provide an overlay file no later than three days after the date of each rolling production that includes the duplicate custodian names.

Prior to use, the parties should meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced (*i.e.*, file type culling, near de-duplication, e-mail thread suppression or technology assisted review).  Use of these technologies to reduce the reviewable collection or production, other than as described within this document, requires the consent of the receiving party.

## V.    RELEVANT TIME PERIOD

All requests herein refer to the period of January 1, 2005, through the date of your response (the "relevant time period"), unless otherwise specifically indicated, and shall include all documents and information that relate to such period, even though prepared or published outside of the relevant time period.  If a document prepared before this period is necessary for a correct or complete understanding of any document covered by a request, you must produce the earlier document as well.  If any document is undated and the date of its preparation cannot be determined, the document shall be produced if otherwise responsive to the request.

## VI.    DOCUMENTS REQUESTED

REQUEST NO. 1:

All documents or communications with, copying, or concerning BNY Mellon relating to the Mortgage Loans or Trusts, including, but not limited to, communications relating to:

> (a)    the quality of the Mortgage Loans;
>
> (b)    any defect in the Loan File for any Mortgage Loan;
>
> (c)    any actual or suspected breach of Representations and Warranties;
>
> (d)    any actual or suspected loan servicing failures;
>
> (e)    any repurchase request or claim;

(f)  any decision to, or not to, accept, reject, substitute, repurchase or cure; and

(g)  any tolling, forbearance, or other agreement purporting to toll or otherwise address the statute of limitations for any Mortgage Loan repurchase claims.

REQUEST NO. 2:

All documents and communications you provided to or received from BNY Mellon relating to the Mortgage Loans or Trusts.

REQUEST NO. 3:

The Loan Files for each Mortgage Loan.

REQUEST NO. 4:

All documents and communications concerning your Origination Practices in connection with the Mortgage Loans and/or any loan programs used to originate any Mortgage Loan, including, but not limited to, any reports, charts, memoranda, studies, opinions, valuations, stated guidelines or other documentation associated with the origination of such loans. This request includes, but is not limited to, all documents concerning any appraisals, loan-to-value ratios, loan delinquencies, loan kickouts, early payment defaults, credit downgrades or any other loan quality metrics associated with the Mortgage Loans, including any draft versions of such documents and any documents that AHM may have reviewed or relied upon in the preparation of such documentation.

REQUEST NO. 5:

All documents and communications concerning the purchase by any entity of any Mortgage Loan or any groups or pools of loans containing any Mortgage Loan. This request includes, but is not limited to, any agreements regarding such transactions, any drafts thereof, any due diligence conducted on the groups or pools of loans containing any Mortgage Loan, and

- 13 -

any documents or communications concerning negotiations regarding any rebates, discounts, price changes and the purchase price, size and/or make-up of such loans or groups or pools of loans.

REQUEST NO. 6:

All documents and communications concerning the transfer of the Mortgage Loans and associated Loan Files to the Trusts.

REQUEST NO. 7:

All documents and communications concerning the results of any mortgage re-underwriting performed by or on behalf of any person with regard to the Mortgage Loans.

REQUEST NO. 8:

All documents and communications related to any Professional Services provided by any Due Diligence Firm concerning the Mortgage Loans and/or any groups or pools of loans containing any Mortgage Loan, including, but not limited to, all data, reports and presentations related to such Professional Services, as well as any internal analysis and/or communications concerning such Professional Services.

REQUEST NO. 9:

All documents and communications concerning any business relationship between you and BNY Mellon, including, but not limited to, any warehouse lending arrangements.

REQUEST NO. 10:

Audits, reports, memoranda, summaries, appraisals or analyses concerning the Mortgage Loans, including, but not limited to:

> (a)    the owner-occupancy status of the residential properties securing the Mortgage Loans;

(b)    the loan-to-value ratios of the residential properties securing the Mortgage Loans;

(c)    the borrowers' debt-to-income ratios or stated income for the residential properties securing the Mortgage Loans;

(d)    the underwriting standards, guidelines, procedures and policies used to originate the Mortgage Loans;

(e)    any borrowers' ability to repay the Mortgage Loans, including any exception to any underwriting guideline;

(f)    the ability to enforce the Mortgage Loans if the borrowers default;

(g)    rejections, kick-outs, repurchases, replacements and buy-backs for the Mortgage Loans; and

(h)    the purported transfer and/or assignment of right, title and interest to the Mortgage Loans to the Trusts, including guidelines, procedures, policies, and standards for the completion and transfer of mortgage documentation.

REQUEST NO. 11:

Communications and documents concerning the performance of the Trusts or the quality of the Mortgage Loans, including documents reflecting delinquencies, defaults, modifications, foreclosures, recognized losses, expected losses or credit downgrades.

REQUEST NO. 12:

Communications and documents provided to, or received from, any Master Servicers, Servicers, Sponsors, Warrantors or Underwriters concerning the Mortgage Loans.

REQUEST NO. 13:

All documents produced and transcripts of any testimony given, as well as any exhibits referenced therein, in connection with any civil litigation concerning AHM's Origination Practices and/or any of your business interactions with the Trustee.

REQUEST NO. 14:

All documents and communications related to any internal or external investigation of AHM's Origination Practices in connection with the Mortgage Loans and/or any of the loan programs used to originate the Mortgage Loans, including, but not limited to, any internal quality control reviews or due diligence, any post-purchase loan review and/or surveillance, and any regulatory reviews or complaints.

REQUEST NO. 15:

All documents and communications concerning or copying BNY Mellon relating to any RMBS trustee litigation.

REQUEST NO. 16:

Communications and documents concerning any report of fraud, potential fraud or other misconduct relating to the Mortgage Loans, including, but not limited to, communications to or from any fraud hotline or reporting system and communications with mortgagors or borrowers regarding any irregularities, inaccuracies or representations in a loan application.

REQUEST NO. 17:

Documents concerning your relationships or affiliations with any other Originators or Sponsors of any Mortgage Loan.

1086411_1

REQUEST NO. 18:

To the extent not already covered by the requests above, your internal communications concerning any Mortgage Loan or Trust.

REQUEST NO. 19:

Your board meeting, board committee meeting, management committee meeting, and/or risk management meeting minutes relating to any Mortgage Loan or Trust, including, but not limited to, any reports of fraud relating to any Mortgage Loan or in the origination of any Mortgage Loan.

REQUEST NO. 20:

Communications with, and documents you provided to or received from, any Governmental Entity, Government-Sponsored Enterprise, bankruptcy trustee, bankruptcy examiner, private investor, or any financial guarantee insurer or monoline insurer, as well as their employees, agents, affiliates, representatives or successors, concerning any litigation, investigation, or dispute of any kind (including threatened or potential litigation, arbitration or mediation) relating to the Mortgage Loans or Trusts, including, but not limited to litigation or investigation concerning your performance as Originator for one or more of the Trusts, and investigations of BNY Mellon or any Servicer or Originator.

REQUEST NO. 21:

Communications and documents concerning your settlement of any lawsuits with respect to the Mortgage Loans or Trusts.

## Appendix 1

| Abbreviated Trust Name | Issuing Trust | Approx. Issue Date | Approx. Principal Amount | CUSIPs |
|---|---|---|---|---|
| ECR 2005-2 | Encore Credit Receivables Trust 2005-2 | 5/27/05 | $1,400,000,000 | 126673H39; 126673H54; 126673H62; 126673H70; 126673H88; 126673J94; 126673M74; 126673M82; 126673H96; 126673J29; 126673J37; 126673J45; 126673J52; 126673J60; 126673J78; 126673J86 |
| GSCC 2006-1 | GSC Capital Corp. Mortgage Trust 2006-1 | 3/22/06 | $421,917,000 | 126670ZC5; 126670ZD3; 126670YY8; 126670ZA9; 126670ZB7; 126670ZE1; 126670ZF8; 126670YW2; 126670YX0; 126670ZG6 |
| NHEL 2006-3 | NovaStar Mortgage Funding Trust, Series 2006-3 | 6/1/06 | $1,089,000,000 | 66988WAA4; 66988WAB2; 66988WAC0; 669WAD8; 66988WAE6; 66988WAF3; 66988WAG1; 66988WAH9; 66988WAJ5; 66988WAK2; 66988WAL0; 66988WAM8; 66988WAN6; 66988WAP1; 66988WAQ9; 66988WAR7; 66988WAV8; 66988WAT3; 66988WAU0; 66988WAW6; 66988WAX4; AY2; |
| NSTR 2007-C | Nationstar Home Equity Loan Trust 2007-C | 6/1/07 | $710,534,000 | 63860KAA0; 63860KAB8; 63860KAC6; 63860KAD4; 63860KAE2; 63860KAF9; 63860KAG7; 63860KAH5; 63860KAJ1; 63860KAK8; 63860KAL6; 63860KAM4; 63860KAN2; 63860KAP7; 63860KAQ5; |
| SAMI 2006-AR4 | Structured Asset Mortgage Investments II Trust 2006-AR4 | 6/1/06 | $1,564,950,000 | 86360QAA3; 86360QAB1; 86360QAC9; 86360QAD7; 86360QAE5; 86360QAF2; 86360QAG0; 86360QAH8; 86360QAJ4; 86360QAK1; 86360QAL9; 86360QAM7; 86360QAN5; 86360QAP0; 86360QAQ8; 86360QAR6; 86360QAS4; 86360QAT2; 86360QAU9; 86360QAV7; 86360QAW5; 86360QAX3; 86360QBC8 86360QBB0; 86360QAY1; 86360QAZ8; 86360QBA2 |

- 18 -

# TABLE 1: METADATA FIELDS

| Field Name | Example / Format | Description |
|---|---|---|
| BEGNO | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| ENDNO | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| BEGATTACH | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| ENDATTACH | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| VOLUME | VOL001 | The name of CD, DVD or Hard Drive. |
| RECORDTYPE | Options: eMail, Attachment, Scanned Doc, Loose eFile | The record type of a document. |
| SENTDATE | MM/DD/YYYY | The date the email was sent. |
| SENTTIME | HH:MM | The time the email was sent. |
| RECEIVEDDATE | MM/DD/YYYY | The date the document was received. |
| RECEIVEDTIME | HH:MM | The time the document was received. |
| CREATEDATE | MM/DD/YYYY | The date the document was created. |
| CREATETIME | HH:MM | The time the document was created. |
| LASTMODDATE | MM/DD/YYYY | The date the document was last modified. |
| LASTMODTIME | HH:MM | The time the document was last modified. |
| MEETING START DATE | MM/DD/YYYY | Start date of calendar entry |
| MEETING START TIME | HH:MM | Start time of calendar entry |
| MEETING END DATE | MM/DD/YYYY | End date of calendar entry |
| MEETING END TIME | HH:MM | End time of calendar entry |
| FILEPATH-ALL | i.e. /JSmith.pst/Inbox /JSmith.pst/Deleted Items /Network Share/Accounting/... /JSmithPC/Users/JSmith/My Documents/... | The file paths from the locations from which the items were stored in the usual course of business. This field should be populated for both e-mail and e-files and separated by semicolons. |
| AUTHOR | jsmith | The author of a document from extracted metadata. |
| LASTEDITEDBY | jsmith | The name of the last person to edit the document from extracted metadata. |
| FROM | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| TO | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail. If only e-mail is given, then just list the e-mail address. An e-mail address should always be provided for every document. |
| SUBJECT | | The subject line of the e-mail. |
| TITLE | | The extracted document title of a document. |
| CUSTODIAN | Smith, Joe; Doe, Jane | All of the custodians / sources of a document from which the document originated, separated by semicolons. |
| ATTACH COUNT | Numeric | The number of attachments to a document. |
| FILEEXT | XLS | The file extension of a document. |
| FILENAME | Document Name.xls | The file name of a document. |
| FILESIZE | Numeric | The file size of a document (including embedded attachments). |
| MD5HASH | | The MD5 Hash value or "de-duplication key" assigned to a document. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| TIMEZONE PROCESSED | PST, CST, EST, etc | The time zone the document was processed in. NOTE: This should be the time zone where the documents were located at time of collection. |
| NATIVELINK | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |
| FULLTEXT | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding bates numbers. Note: E-mails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |