```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                    .     Chapter 11
IN RE:                              .
                                    .     Case No. 07-11047 (CSS)
AMERICAN HOME MORTGAGE              .
HOLDINGS, INC., et al,              .     Courtroom No. 6
                                    .     824 Market Street
                                    .     Wilmington, Delaware 19801
               Debtors.             .
. . . . . . . . . . . . . . . . . . .     Monday, November 7, 2016


                        TRANSCRIPT OF HEARING
              BEFORE THE HONORABLE CHRISTOPHER S. SONTCHI
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Plan Trustee:         Sean M. Beach, Esq.
                              YOUNG, CONAWAY, STARGATT
                               & TAYLOR, LLP
                              1000 North King Street
                              Wilmington, Delaware 19899

                              Edward L. Schnitzer, Esq.
                              Joseph Orbach, Esq.
                              HAHN & HESSEN, LLP
                              488 Madison Avenue
                              New York, New York 10022

For the FDIC:                 Brian L. Arban, Esq.
                              HILLER & ARBAN, LLC
                              1500 North French Street, 2nd Floor
                              Wilmington, Delaware 19801

(Appearances Continued)

Audio Operator:               Electronically Recorded
                              by Leslie Murin, ECRO

Transcription Company:        Reliable
                              1007 N. Orange Street
                              Wilmington, Delaware 19801
                              (302)654-8080
                              Email:  gmatthews@reliable-co.com


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

APPEARANCES VIA TELEPHONE:

For Royal Park
Investments:                    Juan Carlos Sanchez, Esq.
                                ROBBINS, GELLER, RUDMAN & DOWD, LLP

ALSO APPEARING VIA TELEPHONE:

                                Carlo Colagiacomo
                                AMERICAN HOME MORTGAGE

INDEX

|  | Page |
|---|---|
| RESOLVED MATTERS | 4 |
| MOTION RE: DOCUMENTATION DESTRUCTION | 5 |

| Exhibit | Evid. |
|---|---|
| Sass Declaration | 12 |

1       (Proceedings commence at 10:09 a.m.)

2       (Call to order of the Court)

3             THE COURT:  Please be seated.  Good morning.

4             MR. BEACH:  Good morning, Your Honor.  May it please

5    the Court, Sean Beach from Young Conaway Stargatt & Taylor, on

6    behalf of the plan trust.

7             It's been a while since we've been before you, and I

8    hope -- I think we agree --

9             THE COURT:  That's okay, by the way.  No apology is

10   necessary.

11      (Laughter)

12            MR. BEACH:  Understood.  We'll try to keep going with

13   the same trend.

14            Your Honor, I believe you have entered orders, with

15   respect to the first three items on the agenda.  There was a

16   stay relief motion filed by Colonial Savings -- we resolved

17   that consensually -- the plan trustee's motion to make a second

18   distribution and the plan trustee's motion to extend the trust

19   for another year.  And we do hope that that will be the final

20   time we ask for a trust extension, which, unless Your Honor has

21   any questions about those items, brings us to the fourth item

22   on the agenda, which is the documentation destruction motion.

23            THE COURT:  Right.

24            MR. BEACH:  And I'll cede the podium to Joseph Orbach

25   from Hahn & Hessen to address that.

1               THE COURT:  Okay.

2               MR. ORBACH:  Good morning, Your Honor.  Joseph Orbach,

3   Hahn & Hessen, on behalf of the plan trustee.

4               The plan trustee filed the motion, pursuant to

5   Bankruptcy Code Sections 105, 363 and 554, seeking to destroy

6   and abandon all remaining records that are currently held in

7   their Farmingdale facility.

8               There were three formal objections to this motion.

9   There were a couple informal objections, which we addressed

10  through revised language.  I'm happy to report to the Court

11  that we have resolved two of those objections and we have

12  revised language, which I will detail to the Court.

13              The plan trustee's reason for filing the motion, as

14  Mr. Beach alluded to, we're seeking to wrap up this case in

15  2017.  In connection with that, we're seeking to vacate the

16  Farmingdale facility when the lease expires on February 28th,

17  2017, and everything we've done with respect to records is

18  geared around getting out by that date.

19              It's essential to the trustee to minimize costs to the

20  estate, while balancing the fact that lots of third parties

21  want copies of our loan files; they have numerous litigations

22  working their way in various stages through state and federal

23  courts.  And the trustee is cognizant of that and is trying to

24  assist, and as he has assisted throughout these cases, we have

25  received over 125 subpoenas.  We've produced over 85 separate

1   document productions to parties requesting loan files and we've

2   actually been deposed -- had witnesses deposed on two

3   occasions.

4   Pursuant to the prior document destruction orders,

5   this -- we've returned hundreds of thousands of loan files and

6   collateral documents and at this point, we're looking to get

7   rid of what is left.  If it pleases the Court, I have revised

8   orders with respect to the two objectors, how we've resolved

9   those objections and I can walk the Court through that.

10   THE COURT:  Okay.

11   MR. ORBACH:  Was the Court able to review the -- would

12   you prefer a blackline against the version we filed on Thursday

13   or the original version?

14   THE COURT:  You can do the Thursday one if you have --

15   if you've got it, because I did review what you submitted under

16   certification of counsel.

17   MR. ORBACH:  Perfect.  May I approach?

18   THE COURT:  Yes.  Go ahead.

19   MR. ORBACH:  Okay.  The biggest change that we

20   incorporated into this order at the request of Royal Park and

21   the FDIC is we're giving parties until December 31st, with

22   respect to loan files or any other documents they want, and the

23   other documents would be the Ambac database and the

24   underwriting CDs that we detail in the order.

25   The Court should note that with respect to subpoenas,

1    we get subpoenas all the time.  Typically a subpoena comes in

2    and says, give us all loan files, with respect to

3    securitization ABC20071 and the trust has no idea which of our

4    loans are in that securitization, so that's why we made clear

5    in the requirement, it's not just getting us a subpoena; if you

6    want electronic loan files, the parties have to give us either

7    American Homes' six- or seven-digit loan number, or a borrower

8    name and property address, and then we can search the system

9    and locate and produce those loan files.

10            With respect to the proposed order, I did agree to

11   make two representations on the record, which are minor

12   exceptions to what's spelled out in the order.  And the first

13   is with respect to Royal Park.  Royal Park is seeking -- and

14   they're one of the only parties to seek this -- emails.  The

15   trust has produced emails that I've been involved in on only

16   one other occasion in response to the 125 subpoenas we've

17   responded to.

18            Emails is a very involved process.  We don't have an

19   active email system from when American Home operated.  To

20   restore emails we have to go to backup tape.  We have to find

21   the custodian.  We have to restore it.  We then have to run a

22   search within the restored email box for targeted emails that

23   they're requesting, pursuant to the subpoena.

24            Again, nobody else who's objected, formally or

25   informally, is seeking emails.  The only one is Royal Park and

1   we're actually pretty far along in negotiating the proper

2   custodians, the proper storage point, and the proper search

3   terms, and it's fairly expensive.  The last email production we

4   did cost $15,000 and that's just consultant time.  That's not

5   my time in negotiating it; it's the actual time in restoring.

6           So, with respect to Royal Park, the subpoenas that

7   they've already issued which seek emails, the plan trustee will

8   produce responsive emails in its possession if and only if, on

9   or before November 30th, 2016, Royal Park, A, provides the plan

10  trustee in writing with custodian names for such emails,

11  restore points for such emails, and relevant search terms for

12  such emails and, B, agrees to pay the costs associated with

13  producing such requested emails.  So if they get us that by

14  November 30th, we will produce whatever we have that's

15  responsive, after which point, we're going to destroy all the

16  email backup tapes and the order would authorize us to do that.

17          With respect to FDIC, they're in a little bit of a

18  unique situation, with respect to one of their cases.  One of

19  their cases was dismissed in the Southern District of New York.

20  It's up on appeal, as I understand, before the Second Circuit.

21  There was a similarly situated case that went up to the Second

22  Circuit which was reversed, which FDIC believes will happen in

23  their case as well.

24          So, at this point, they don't have an active case.

25  They have an issue that they can't issue us a subpoena, so with

1  respect solely to loan files requested on or before December
2  31st, 2016, by FDIC as receiver for Citizens National Bank, and
3  receiver for Strategic Capital Bank in Case Number 12-CV-4000
4  pending in SDNY, their requirement to serve a validly issued
5  subpoena is extended until February 28th, 2017.
6        So the FDIC would still have to get us loan numbers.
7  They would still have to agree to pay the costs by December
8  31st, but the requirement for a subpoena would be delayed two
9  months.  They can get us the subpoena.  We'll hold the loan
10 files.  We're not going for destroy the copy of the loan files
11 we make for them.  We're not going to produce it without a
12 subpoena, but we're not going to destroy it, pursuant to this
13 order, such is that they're out of luck, due to the situation
14 that they find themselves in.
15       That leaves us with the one remaining objection and
16 that was the one filed by attorney Jens-Peter Gieschen, who I
17 understand is a lawyer in Germany.  His objection is a general
18 objection on behalf of investors and taxpayers of European
19 banks.  He -- in his pleading, as I understand it, he wants a
20 60-day stay.
21       We've essentially given a fifty-four-day stay from now
22 until year-end for parties to seek loan files.  More
23 importantly, besides from the fact that it's not clear that he
24 has standing, he is concerned about, you know, Deutsche Bank
25 and HSBC; both those parties have been actively involved in

1   this case.

2            The truth has returned over 113,000 hard copy loan
3   files and collateral documents to Deutsche Bank and that's
4   approximately six full truckloads worth the documents.
5   Moreover, HSBC and Deutsche Bank are both represented by
6   counsel who have subpoenaed the trust both, as plaintiffs and
7   as defendants, in at least ten cases.  Counsel for Deutsche
8   Bank and HSBC, in those cases, received notice of this motion
9   and they did not object to the relief we sought either,
10  formally or informally.

11           Does Your Honor have any questions, with respect to --
12           THE COURT:  Is there anyone present in court or on the
13  phone for Mr. Gieschen?
14     (No verbal response)
15           THE COURT:  Okay.  Yeah, I read this and look, you
16  know, it's 2016.  This company went bankrupt in 2007.  The
17  financial crisis was over in 2009.  This company needs to wind
18  up its affairs.  The trust needs to wind up it's various
19  affairs.

20           Anybody who is remotely interested in anything the
21  debtors have in their possession, custody and control has had
22  more than a fair opportunity to pursue it.  We've had numerous
23  rounds of document destruction, document preservation.  The
24  trust has gone above and beyond the call of duty to preserve
25  documents on behalf of objectors, many of whom come in with

1      quite amorphous claims or concerns and no actual detail and

2      want to preserve optionality for years and years to come.

3              It's simply not fair or appropriate to continue to

4      burden this estate with these financial drains involved in

5      keeping these records on *infinitum*, and I think our sole

6      remaining objector fails to consider that in his objection and

7      I think, you know, not to be overly pejorative, I don't really

8      view him as asserting in sort of valid, present-detailed claim

9      for anything, other than an amorphous, how could you destroy

10     documents?

11             Well, documents are going to be destroyed.  This

12     company cannot, and this estate, reorganized estate, trust

13     estate, cannot continue to keep these things on *infinitum*.

14     They come with a cost and that cost comes out of the return to

15     creditors and the Court is not going to countenance continued

16     blank check on behalf of, you know, amorphous, contingent,

17     possible claims.

18             Added to that, as counsel just noted, truckloads of

19     documents that might be relevant to this person's concerns have

20     already been produced to the banks and he can, of course,

21     proceed as he wishes against those banks.  So, absent -- and I

22     would add, he hasn't appeared, even by telephone, which, of

23     course, he was more than capable of appearing by telephone --

24     it's 4:00 in the afternoon in Germany; it's not any kind of

25     problem or burden to -- an undue burden to have him appear by

1  phone to follow up on an objection.

2          So, for all those reasons, I overrule the objection

3  and approve the revised procedures and the revised order.

4          MR. ORBACH:  Thank you, Your Honor.

5          THE COURT:  You're welcome.

6          MR. ORBACH:  Just one piece of housekeeping.  I just

7  want to note for the record Mr. Sass is in the courtroom and I

8  would ask that his declaration be admitted into evidence to

9  support Your Honor's conclusion.

10         THE COURT:  Yeah, any objection?

11     (No verbal response)

12         THE COURT:  All right.  Do you have a docket item

13 number for that?  Was it attached to the motion?

14         MR. ORBACH:  It was attached to the motion, yes.

15         THE COURT:  All right.  So Mr. Sass' declaration

16 attached to the motion at Docket Item 11244 -- nice big number

17 -- is admitted without objection.

18     (Sass Declaration received in evidence)

19         MR. ORBACH:  Thank you, Your Honor.

20         THE COURT:  You're welcome.

21         MR. ORBACH:  May I approach with a clean version of

22 the order?

23         THE COURT:  Yes.

24         MR. ORBACH:  Your Honor, we have nothing further for

25 the Court this morning.

```
1              THE COURT:  Well, I would be thrilled -- when my
2    oldest son was in second grade you filed this case.  He
3    graduates high school in June, so hopefully this case will beat
4    him to his graduation, but I'm very happy to hear that it might
5    close in 2017.  I know it's been a long journey and I
6    appreciate how hard everyone's worked to try to get it done,
7    but, you know, hopefully 2017 will be a good year.
8              Anything further?
9              MR. ORBACH:  Nothing further, Your Honor.
10             MR. BEACH:  Thank you.
11             THE COURT:  You're welcome.
12             I've signed the order.  We're adjourned.
13             MR. ORBACH:  Thank you.
14             MR. BEACH:  Thank you, Your Honor.
15        (Proceedings concluded at 10:23 a.m.)
16                              *****
```

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | CERTIFICATION                                                |
| 2  | I certify that the foregoing is a correct transcript         |
| 3  | from the electronic sound recording of the proceedings in the|
| 4  | above-entitled matter to the best of my knowledge and ability.|
| 5  |                                                              |
| 6  |                                                              |
| 7  |                                                              |
| 8  | /s/ William J. Garling              November 11, 2016        |
| 9  | William J. Garling                                           |
| 10 | Certified Court Transcriptionist                             |
| 11 | For Reliable                                                 |